## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

In Re:                          )
PHARMACEUTICAL INDUSTRY    ) CA No. 01-12257-PBS
AVERAGE WHOLESALE PRICE    ) MDL No. 1456
LITIGATION                 ) Pages 1 - 64

MOTIONS HEARING
BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
June 26, 2008, 2:30 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

## Page 2

A P P E A R A N C E S :
     JOANNE M. CICALA, ESQ. and JAMES P. CARROLL, JR., ESQ.,
Kirby McInerney, LLP, 101 College Street, Dripping Springs,
Texas, 78620, for the State of Iowa.
     AARON HOVAN, ESQ., Kirby McInerney, LLP,
825 Third Avenue, New York, New York, 10022,
for the State of Iowa.
     WILLIAM L. BRAUCH, ESQ., Special Assistant Attorney
General, Consumer Protection Division, 1305 E. Walnut Street,
Hoover State Office Building, Des Moines, Iowa, 50319.
     J. ANDREW JACKSON, ESQ., Dickstein Shapiro, LLP,
1825 Eye Street, N.W., Washington, D.C., 20006-5403,
for Baxter International.
     PETER E. GELHAAR, ESQ., Donnelly, Conroy & Gelhaar, LLP,
One Beacon Street, Boston, Massachusetts, 02108,
for Baxter International.
     JONATHAN L. STERN, ESQ., Arnold & Porter, LLP,
555 Twelfth Street, N.W., Washington, D.C., 20004-1206,
for Endo Pharmaceuticals.
     SARAH COOLEYBECK, ESQ., Foley Hoag, LLP,
Seaport World Trade Center West, 155 Seaport Boulevard,
Boston, Massachusetts, 02210-2600, for AstraZeneca
Pharmaceuticals
     MELISSA T. AOYAGI, ESQ., Davis Polk & Wardwell,
450 Lexington Avenue, New York, New York, 10017,
for AstraZeneca Pharmaceuticals LP.
     TINA M. TABACCHI, ESQ., Jones Day,
77 West Wacker, Chicago, Illinois, 60601,
for TAP Pharmaceutical Products, Inc.
     ERICA SMITH-KLOCEK, ESQ., Morga, Lewis & Bockius, LLP,
1701 Market Street, Philadelphia, Pennsylvania, 19103-2921,
for Pfizer, Inc., Pharmacia Corp., and Greenstone Ltd.
     WILLIAM A. DAVIS, ESQ., Mintz Levin Cohn Ferris Glovsky
and Popeo, Inc., 701 Pennsylvania Avenue, N.W., Washington,
D.C., 20004, for Eli Lilly and Company.
     DAVID E. MELAUGH, ESQ., Morrison & Foerster, LLP,
425 Market Street, San Francisco, California, 94105-2482,

## Page 3

A P P E A R A N C E S : (Continued)
     JOSEPH H. YOUNG, ESQ., Hogan & Hartson, LLP,
111 South Calvert Street, Suite 1600, Baltimore, Maryland,
21202, for Amgen, Inc.
     D. JACQUES SMITH, ESQ. and JACKSON DAVID TOOF, ESQ.,
Arent Fox, LLP, 1050 Connecticut Avenue, N.W., Washington,
D.C., 20036-5339, for Chiron Corp.
     NATHAN COHEN, ESQ., Kaye Scholer, LLP,
425 Park Avenue, New York, New York, 10022-3598,
for Novartis Corporation.
     PHILIP D. ROBBEN, ESQ. and MICHAEL T. MALONEY, ESQ.,
Kelley Drye & Warren, LLP, 101 Park Avenue, New York,
New York, 10178-0002, for Dey Laboratories and Mylan
Corporation.
     CYNTHIA L. EBBS, ESQ., Dornbush, Schaeffer, Strongin &
Venaglia, 747 Third Avenue, New York, New York, 10017, for
Forest Pharmaceuticals, Inc. and Forest Laboratories, Inc.
     JOHN M. TOWNSEND, ESQ., Hughes Hubbard & Reed, LLP,
1775 I Street, N.W., Washington, D.C., 20006-2401,
for Merck & Co., Inc
     JOHN P. BUEKER, ESQ., Ropes & Gray, LLP,
One International Place, Boston, Massachusetts, 02110,
for Schering-Plough, Schering, and Warrick Pharmaceuticals.
     RICHARD D. RASKIN, ESQ., Sidley Austin,
One South Dearborn, Chicago, Illinois, 60603,
for Bayer Corporation.
     KATY E. KOSKI, ESQ., Sherin and Lodgen, LLP,
101 Federal Street, Boston, Massachusetts, 02110,
for Watson Pharmaceuticals.

## Page 4

P R O C E E D I N G S
     THE CLERK:  In Re:  Pharmaceutical Industry Average
Wholesale Price Litigation, Civil Action No. 01-12257, will
now be heard before this Court.  Will counsel please identify
themselves for the record.
     MS. CICALA:  I'm Joanne Cicala from the firm of
Kirby McInerney, special counsel to the state of Iowa in this
matter; and with me is Mr. Bill Brauch, Special Assistant
Attorney General from the state of Iowa's Attorney General's
office and Director of the Consumer Protection Division of
the Iowa AG's office.
     THE COURT:  Thank you.
     MR. CARROLL:  James Carroll from Kirby McInerney on
behalf of the state of Iowa.
     MR. HOVAN:  Aaron Hovan, also from Kirby McInerney
and also on behalf of the state of Iowa.
     MR. JACKSON:  Good afternoon, your Honor.  Andy
Jackson representing Baxter International, and we've been
asked to address the crosscutting issues.
     MR. GELHAAR:  And Peter Gelhaar for Baxter.
     MR. STERN:  Good afternoon, your Honor.  Jonathan
Stern for Endo Pharmaceuticals.
     MS. COOLEYBECK:  Sarah Cooleybeck, Foley Hoag, for
AstraZenica.
     MS. AOYAGI:  Melissa Aoyagi, Davis Polk & Wardwell,

Page 5

1  for AstraZenica.
2      MS. TABACCHI:  Tina Tabacchi from Jones Day for
3  TAP.
4      MS. SMITH-KLOCEK:  Erica Smith-Klocek from Morgan
5  Lewis for Pfizer, Pharmacia, and Greenstone.
6      MR. DAVIS:  William Davis, Mintz Levin, for
7  Eli Lilly.
8      MR. MELAUGH:  David Melaugh, Morrison Foerster,
9  Purdue.
10     MR. YOUNG:  Hank Young, Hogan & Hartson, for Amgen.
11     MR. SMITH:  Your Honor, Jacques Smith, Arent Fox,
12  Chiron Corporation.
13     MR. TOOF:  Jackson Toof, Arent Fox, Chiron
14  Corporation.
15     MR. COHEN:  Nathan Cohen, Kaye Scholer, Novartis
16  Pharmaceuticals Corporation.
17     MR. ROBBEN:  Good afternoon.  Philip Robben from
18  Kelley Drye & Warren for the Dey and Mylan defendants.
19     MR. MALONEY:  Michael Maloney from Kelley Drye &
20  Warren on behalf of Dey and Mylan.
21     MS. EBBS:  Cynthia Ebbs, Dornbush, Schaeffer,
22  Strongin & Venaglia, for Forest Pharmaceuticals and Forest
23  Laboratories.
24     MR. TOWNSEND:  May it please the Court, John
25  Townsend from Hughes Hubbard & Reed on behalf of Merck &

Page 6

1  Company.
2      MR. BUEKER:  Good afternoon, your Honor.  John
3  Bueker from Ropes & Gray on behalf of Schering-Plough,
4  Schering, and Warrick.
5      MR. RASKIN:  Good afternoon, Judge.  Richard Raskin
6  on behalf of Bayer Corporation.
7      MS. KOSKI:  Katy Koski from Sherin and Lodgen for
8  the Watson defendants.
9      THE COURT:  Okay.  So as we've done in many of
10  these previous suits, we'll start with the crosscutting
11  issues.  I have received numerous individual motions.  Some
12  of them are quite repetitive of the crosscutting, but may
13  involve unique issues.  So essentially what I'm going to do
14  is only hear from individuals on the unique issues, not the
15  crosscutting issues.  I've also ruled on multiple of these
16  issues before, and I don't know that I'm going to change my
17  mind on any, so I'd like to just deal with the new issues.  A
18  couple of them have to do with Iowa law.
19     So essentially, just to make it clear, I'm going to
20  be consistent with my prior decisions in allowing the motion
21  to dismiss on Count 1, which is basically saying there's no
22  private right of action under 42 U.S.C., Section 1396.  I
23  want to address the issue of whether the complaint is pled
24  with sufficient particularity, et cetera, but the basic
25  bottom line is, I do think that the state is a third-party

Page 7

1  beneficiary.  I do need to at least deal with the pleading
2  issues, but I am going to stick with that prior ruling.
3      I think an open question is whether the Iowa
4  Consumer Fraud Act authorizes, includes, or defines, however
5  you want to say the word, "person" to include the state.
6  That's the open question I'd like to spend some time on.
7      I'm not going to change my mind on the issue of
8  unjust enrichment.
9      And last, but not least, I think issues of
10  knowledge and reliance are typically not resolved on a motion
11  to dismiss.  However, I think the state offered a good
12  solution on the 30 percent yardstick, which is essentially to
13  start -- I mean, the appendix is just overwhelming in what
14  we're talking about, but at least to start with anything over
15  30 percent in terms of discovery.  And I wanted you to think
16  about whether we should do that for both sides in terms of
17  the statute of limitations and things predating what I
18  discussed in my big order.  I don't think that my rulings
19  with respect to knowledge and tolling and all of yardsticks
20  are binding on all the parties under the doctrines of issue
21  preclusion or -- but they certainly inform the way I think
22  about the case in terms of case management and the like, so I
23  think we need to talk about that here today.
24     So the big issues have to do with, in my view,
25  especially since the SMAC has been dropped, is, we're going

Page 8

1  to start with Iowa law, and then I'd like to sort of revisit
2  Federal Upper Limits and what's happened since the last time
3  we talked about this in the New York case.  I feel as if I've
4  never really vetted that issue, and it may get to be time to
5  do that.
6      All right, so you're the moving party.
7      MR. JACKSON:  Yes, your Honor.
8      THE COURT:  Your name again is?
9      MR. JACKSON:  Andy Jackson for Baxter.  Let me try
10  to address some of those prior decisions that you've made,
11  just to try to help you when you go back and start writing.
12  We think that the best price claims that are included in
13  Counts 2, 3, 4, and 5 you've ruled on, that they don't meet
14  the particularity requirements.
15     THE COURT:  Well, wait.  That was in the context of
16  the New York cases.  I want someone, and this is what I'm
17  going to ask you to do is, walk me through these complaints
18  to tell me whether these are any different from what I've
19  seen before.  I mean, the complaint and the appendix look
20  like this, and I have not read it other than little snippets
21  here and there.  I did not sit and read this over the
22  weekend.  So you can't just simply say, because I said it in
23  another case, I'm going to say it again.  I need to be sure
24  they're the same.
25     MR. JACKSON:  Well, I think they've agreed, the

## Page 9

1  plaintiffs have agreed that the allegations on best price are
2  the same in both, so I think your prior analysis applies,
3  your Honor. And I don't think they concede that. I think
4  they would say that as to best price, it shouldn't be
5  dismissed with prejudice. But we've argued that the best
6  price claims don't satisfy the analysis that you required in
7  the New York cases, and that same analysis should apply here,
8  the same counsel for both, your Honor.
9      The SMAC claims, as you recognized, the state
10  maximum allowable cost claims should be dismissed, and the
11  plaintiffs have conceded that. I do think it's important to
12  note, your Honor, that the reason, or maybe the principal
13  reason, that they should be dismissed is because since 2001,
14  the state has had actual information of pharmacy and provider
15  acquisition cost. So the notion that they were somehow
16  misled or confused about what AWP meant or didn't mean or
17  that they just recently learned that it equated to an actual
18  acquisition price can't be true.
19      THE COURT: Right, but they've agreed to it, so we
20  don't have to -- you've won without having argued, so let's
21  just move. We have so much to do today, so much, I just
22  really don't want to -- they've dropped SMAC, it's gone.
23      MR. JACKSON: I just wanted to emphasize that point
24  for one additional argument, and I'll get to it.
25      THE COURT: But that's after 2001.

## Page 10

1      MR. JACKSON: That's after 2001. They make
2  something called WAC and WAC equivalent claims. There is no
3  particularity regarding those claims whatsoever. And that's
4  the phrase in the complaint, "WAC and WAC equivalents." They
5  have not done what you had ordered previously as it relates
6  to AWPs.
7      THE COURT: So you're saying they're not pleading
8  specifically fraudulent wholesale acquisition costs in these
9  appendices?
10      MR. JACKSON: Correct.
11      THE COURT: Okay.
12      MR. JACKSON: Now, as to the Iowa-specific issues,
13  I first want to talk about knowledge. And I appreciate your
14  many prior decisions regarding knowledge defense and that
15  that's not appropriate for motions to dismiss, and that it
16  might be more appropriate for summary judgment, except for
17  one substantial difference here. And I'm not going to rely
18  solely upon all of the knowledge evidence that you have heard
19  about in trial and motion. Instead, in Iowa, in 1986 Iowa
20  changed its reimbursement statute and specifically said,
21  "We're going --"
22      THE COURT: Excuse me. You know what? I'm not
23  going to do this as a matter on a motion to dismiss. I
24  understand you may have a good argument. You may win the
25  day. It is one thing to know about the fact that AWP isn't

## Page 11

accurate and that there's some spread going on, we all know,
20 to 25 percent, right? It may be 30 percent. But what
there is no evidence of is that they knew that it was going
up to 100 percent, 600 percent, 1,000 percent, at least not
on this record.
      MR. JACKSON: Okay, your Honor, but I do think for
this case, which was filed in October, 2007, it is
appropriate for you to consider all of the things that you've
ruled on in terms of what people, sophisticated participants
like the state -- you know, I don't think there could be any
more sophisticated participant in a Medicare/Medicaid, say
for possibly the federal government, than a state that's had
a --
      THE COURT: I would say a pharmacy benefit manager
would be more sophisticated than the state.
      MR. JACKSON: Well, I disagree with your Honor, but
for this case, based upon what you've ruled about the
knowledge in 1997, and certainly about the knowledge in 2000,
I think you should cut the case off. Their damages in the
present complaint, they calculate damages up to 2005. They
reserve in footnotes --
      THE COURT: You know, statute of limitations are
usually handled on summary judgment motions. It may just be
that it might make sense for settlement purposes or just to
move it along to focus discovery, and I'll ask them about

## Page 12

that, but I'm not going to do it as a matter of law because
I'd have to import all my findings from other cases, which
would be inappropriate because they weren't litigating those
other cases. You know, they weren't involved, so --
      MR. JACKSON: Okay, your Honor, but your rulings
regarding the knowledge in 2000 and 2001 was not limited to
those cases. It was all-encompassing.
      THE COURT: They are likely to lose.
      MR. JACKSON: Okay, your Honor.
      THE COURT: But -- but I can't do it on a motion to
dismiss.
      MR. JACKSON: I understand.
      THE COURT: All right? So maybe they're going to
persuade me why Iowa didn't know about the filing of the suit
when there was a perfect storm of information, when this big
suit was filed and all the newspaper articles happened.
Maybe. And it also doesn't deal with the unfair prong
because sometimes a legislature has to change. So, I mean,
you've got a good argument. Would you just get to the one
I'm interested in, which is, can the AG even sue?
      MR. JACKSON: And the answer is "no."
      THE COURT: All right, so now this is the new issue
for me.
      MR. JACKSON: It is. The Consumer Fraud Act of
Iowa specifies that the AG can sue on behalf of persons under

Page 13

1   their Consumer Fraud Act. And keep in mind here, the state
2   is not suing on behalf of Medicaid beneficiaries. They're
3   not suing on behalf of the old and the sick or those folks
4   who are Medicare beneficiaries because they pay a flat fee,
5   no relationship to WAC or AWP or any of these pricing
6   issues. They're flat fee, so they're not suing on behalf of
7   beneficiaries. They're suing on behalf of themselves.
8       The statute defines "person." It does not include
9   the state or a state governmental entity. Other Iowa
10  statutes do also for those particular statutes include a
11  definition of "person" in which the state and governmental
12  entities are included. Not in this.
13      THE COURT: So I was having a debate with my staff
14  about what the word "include" means. And if you look it up
15  in a dictionary, which we did -- we looked it up in three
16  this morning -- while there's some ambiguity about the term,
17  it's generally open-ended.
18      MR. JACKSON: Your Honor, in light of how this
19  statute is worded and written and the statute in Illinois
20  upon which it was based, I don't think that "includes" versus
21  "makes" versus "is" --
22      THE COURT: Well, the two distinctions here are
23  "includes" versus "means" because when you go through that
24  statutory section, sometimes the legislature uses the word
25  "includes," and sometimes it uses the word "means," right,

Page 14

1   if you go through all the statutory definition section? I
2   think there's some ambiguity here, I'd have to agree with
3   that. But we had this debate, what does it mean if you
4   include fifteen people and then don't have a sixteenth
5   there? On the other hand, they could have used the word
6   "means" as they said in so many of the other definitions.
7       Am I right in understanding that the Iowa courts
8   have not ruled on this one way or another?
9       MR. JACKSON: That is correct, your Honor. And the
10  plaintiff, the state seems to make a big deal of the fact
11  that we didn't raise, show you any cases that said, like in
12  Illinois, consumer fraud, Consumer Fraud Act, the state can't
13  sue on behalf of itself. I think that supports our
14  argument. I would have expected in response to our motion to
15  dismiss the state to bring in truckloads and wheelbarrows
16  full of prior cases in which the Attorney General, under the
17  Iowa Consumer Fraud Act, had sued and recovered damages on
18  behalf of itself. They did none of that. I think that's
19  better evidence of our argument that the state has never
20  believed, the Attorney General has never believed that it
21  could use a consumer fraud statute to sue for damages that it
22  suffered.
23      THE COURT: Let me ask you this. There was some
24  debate about the Illinois case and a judge denying the motion
25  to dismiss the parallel case. Was there an opinion written?

Page 15

    MR. JACKSON: The answer is "no." There was an
order. I was sitting at counsel table. I was prepared to
argue a motion that didn't get argued that day. Judge Flynn
and the Boehringer lawyer who was doing what I'm doing now --
    THE COURT: The who?
    MR. JACKSON: Helen Witt was arguing. Most of the
argument -- and, again, I'm sitting there, I've read the
transcript -- most of the argument focused on the Supreme
Court case in 2007, Twombly, about pleading requirements, and
then a very complicated discussion about an Illinois
Procedural Rule 619 and whether certain arguments were more
appropriately under 619 or 615.
    Now, I confess, your Honor, it went right over my
head, but I can tell you that there was no discussion during
that argument about whether the Illinois Consumer Fraud Act
permitted the state of Illinois to sue under that and seek
damages.
    THE COURT: For its own harm?
    MR. JACKSON: For its own harm, and we --
    THE COURT: So that was what was denied. It was
for its own harm, not as parens patriae?
    MR. JACKSON: Correct, for its own harm, and it was
denied in a one-sentence handwritten order.
    THE COURT: I love them. As a colleague of mine on
the court, I should follow his advice: And what is it about

Page 16

the word "denied" you don't understand? So --
    MR. JACKSON: Well, I understand, your Honor, but I
don't think you could -- you should interpret such a
handwritten one-line denial to overrule what we say is
applicable Illinois Supreme Court law and Illinois appellate
Division law that says the state can't use the Illinois
statute to sue on behalf of its own damages. So I can't
explain to you what Judge Flynn was thinking. I can only
tell you that there was no analysis, no discussion during the
hearing, and it's certainly not reflected in that one-page
order. But I think you should look to the Illinois case law
that we cite that says they can't use the CFA, and in
Illinois, for the state to sue for damages. That's what the
Iowa statute --
    THE COURT: But does that essentially leave the
state without any remedy at all?
    MR. JACKSON: Oh, no, your Honor.
    THE COURT: Well, what else is there?
    MR. JACKSON: Well, I'll tell you what the state
could have done here and --
    THE COURT: Is there a False Claims Act?
    MR. JACKSON: I'm not sure, your Honor, but I can
tell you, they could have done what they did back in 1986,
which was change the legislation. They have a remedy.
    THE COURT: But they may not take that well from a

Page 17

1  Federal Judge in Boston to order the legislature to change --
2      MR. JACKSON: Well, your Honor, I also don't think
3  a Federal Judge in Boston wants to make a decision
4  necessarily of, yes, there is this cause of action, when
5  you've not seen a single Iowa case that says it exists.
6      THE COURT: Well, I haven't seen a case one way or
7  another. I'm just looking at the statute basically.
8      MR. JACKSON: No, I understand that, your Honor.
9  Nor do I think a judge in Boston necessarily wants to be
10  involved in issuing injunctions. You didn't want to do that
11  in the First DataBank discussion about enjoining the
12  marketplace, and I don't think you should do that here.
13      THE COURT: Thank you.
14      So let me ask you this. Who's from the Attorney
15  General's office? Welcome. Where are you from, Des Moines?
16      MR. BRAUCH: I am from Des Moines. I'm the
17  Director of the Consumer Protection Division there. My name
18  is Bill Brauch, your Honor.
19      THE COURT: Well, welcome to Boston.
20      MR. BRAUCH: Thank you.
21      THE COURT: So has the Attorney General ever sued
22  before to recoup damages to the state?
23      MR. BRAUCH: Yes. In the tobacco case in the mid
24  to late 1990s, the Attorney General's office filed a number
25  of claims against the tobacco companies, including consumer

Page 18

1  fraud in Count 1 of the state's -- we call them petitions in
2  state court there.
3      THE COURT: And it would be for harm that the state
4  suffered rather than as parens patriae for the citizens?
5      MR. BRAUCH: Correct.
6      THE COURT: And was there motion practice?
7      MR. BRAUCH: There was motion practice. In fact,
8  there is a ruling of the Iowa Supreme Court, but it does not
9  go to that issue. There were other claims that were made
10  that were denied by the district court. They were dismissed
11  by the district court. That went up on appeal to the Iowa
12  Supreme Court, and the Supreme Court affirmed the dismissal
13  of those claims, but the consumer fraud claim remained.
14      THE COURT: All right. Was there a motion to
15  dismiss the consumer fraud claim?
16      MR. BRAUCH: Yes, there was. That was made at the
17  district court, and it was denied.
18      THE COURT: The district court of the state of
19  Iowa?
20      MR. BRAUCH: The state district court.
21      THE COURT: And it was denied?
22      MR. BRAUCH: Yes, your Honor.
23      THE COURT: Is that the equivalent of our superior
24  court here, do you know, like the court of general trial
25  jurisdiction?

Page 19

1      MR. BRAUCH: Yes.
2      THE COURT: Okay. But that one was not appealed?
3      MR. BRAUCH: Correct.
4      THE COURT: And it's not a precedential opinion
5  that I can read or even an unpublished opinion?
6      MR. BRAUCH: We could probably locate that trial
7  court opinion.
8      THE COURT: That would be useful. While it's not
9  precedential, it would be useful at least to know what the
10  thinking was on it.
11      So let me ask the second question: Am I right to
12  say that there's no case on point?
13      MR. BRAUCH: There is no reported case on point,
14  your Honor, but it is our position that the state can file an
15  action on behalf of the state. In fact, in twenty-one years
16  doing this work at the Attorney General's office, my client
17  has always been the state of Iowa, not individual persons.
18  Every action we bring is on behalf of the state of Iowa.
19      THE COURT: Although, you know, when I started
20  reading the cases you cited, true, but you tended to bring
21  them on behalf of consumers who were injured. I mean, most
22  of those cases -- I was reading them this morning, you know,
23  trying to -- you know, they were -- the recovery may have
24  been to the state, but it was on behalf of, you know, natural
25  persons who were injured.

Page 20

1      MR. BRAUCH: That's not how we do it.
2      THE COURT: All right, how do you do it?
3      MR. BRAUCH: And how I view the Consumer Fraud Act
4  and how the rest of my staff does and the Attorney General
5  itself is, it is a tool there to prevent fraud and deception
6  in the marketplace. When you read the statute and you go
7  right to the section which is the heart of the statute, which
8  is Subsection 2(a), it says the act, use, or employment by a
9  person in the marketplace of deception, unfair practices,
10  fraud, false pretense, misrepresentation, intentional
11  omissions, is unlawful if it's in connection with the sale,
12  lease, or advertisement of merchandise, whether in fact the
13  person is damaged.
14      It focuses on the actor. It focuses on the action,
15  or in the case of omissions, lack of action. It does not
16  focus on who the victim is. It is what we refer to as a
17  civil law enforcement statute, and it's designed to prevent
18  fraud.
19      THE COURT: I agree with that, and certainly the
20  Attorney General, as I read the statute, can seek injunctive
21  and equitable relief. At the very least, you get to do
22  that. But when it talks about injury to persons, I still
23  think I have to decide what "persons" means. In terms of
24  monetary damages?
25      MR. BRAUCH: Well, in addition to the injunctive

Page 21

1  relief, there's also civil penalties.  That stands out
2  separately, as does the injunctive relief, as does the
3  restoration of moneys.
4      There are a couple of other types of relief we can
5  get.  One is costs and fees, if we prevail in an action.  And
6  there's also a provision, a general directive that says, "The
7  court may make orders or judgments as necessary to prevent
8  the use or employment by a person of any prohibited
9  practices."  All of that's consistent with being in equity,
10 and every action we file, according to Subsection 7, which is
11 the cause of action, is by equitable proceedings.
12     The language that they are challenging goes to one
13 aspect of the relief here and one only, and that has to do
14 with the ability to get damages for someone who is a victim.
15 And the language there talks about being able to restore to
16 any person in interest moneys or property that has been
17 obtained by the defendant through the unlawful practice.
18 "Persons in interest" is a phrase.  It does in fact employ
19 the use of the word "person."  We believe in fact it probably
20 is broader.  But we also believe, as you were stating, the
21 debate that you had in chambers about "includes" versus
22 "means," we believe that it is an all-inclusive definition;
23 and that in fact you take a look at the original definition
24 of "person" that's in the general section of the Code,
25 Section 4, which does include government and --

Page 22

1      THE COURT:  Are there any Iowa cases defining the
2  word "include" in other contexts?  Have you looked for that?
3      MR. BRAUCH:  I did before this hearing.  I did not
4  find anything on that.
5      One thing that is telling here, and the defendants
6  have attempted to distinguish it, but I think it's important,
7  is the statement of the Iowa Supreme Court and the analysis
8  they did in the Santa Rosa case.
9      THE COURT:  I read that.  It was just so off point.
10     MR. BRAUCH:  Well, not really, in this sense:  It
11 had to do with an enacted appropriations bill that said, "The
12 expenditure of funds appropriated under this subsection is
13 contingent upon the receipt by the general fund of the state
14 of damages awarded to the state by a civil consumer fraud
15 judgment."
16     Now, the Iowa Supreme Court in Santa Rosa said,
17 "Attorney General, you can't take the money that was set
18 aside for consumers in this case and put it in that fund,"
19 even though it was under Section 714.16, the civil consumer
20 fraud law, because it was not damages awarded to the state;
21 it was damages awarded for consumers.  We have to presume,
22 under the rules of statutory construction, the legislature
23 meant something by saying "damages awarded to the state by
24 civil consumer fraud judgment."
25     THE COURT:  Well, how do things work there?  I

Page 23

1  mean, in some states, when there's a parens patriae judgment
2  to the state, the state then redistributes it.  So, I mean,
3  it's hard to figure out whether -- when you're collecting
4  parens patriae, it's often the injury to the consumer rather
5  than the injury to the state, and it was hard for me to parse
6  what they were talking about there.
7      MR. BRAUCH:  Well, what they were talking about
8  there, according to the Supreme Court, was when damages are
9  awarded to the state as opposed to when they are awarded to
10 the state to distribute.  In every case they're awarded to
11 the state.  The consumers are not parties before the court.
12     THE COURT:  All right, so you're saying that that
13 is not a good distinction under your statute because --
14     MR. BRAUCH:  That's correct.
15     THE COURT:  Because you --
16     MR. BRAUCH:  And in fact the legislature had to
17 mean something here.
18     THE COURT:  One last thing is, is it true that your
19 statute is patterned after the Illinois statute?
20     MR. BRAUCH:  Well, there are a number -- the Iowa
21 Supreme Court has said Illinois was one of the models.  The
22 actual model for all of them is the Federal Trade Commission
23 Act, which was enacted in the early part of the last century
24 and then had provisions relating to deception and unfair
25 practices added to it.

Page 24

1      THE COURT:  Well, how does the FTC define
2  "person"?  Do you know?
3      MR. BRAUCH:  I do not.  I do not know.  It is
4  modeled after the Illinois act, yes, and there are a few
5  other states that have statutes that they call consumer fraud
6  acts.  We call them all UDAP statutes generally, unfair and
7  deceptive acts and practices, but there is one model called
8  the Consumer Fraud Act model, and ours is one.  I believe
9  Delaware, New Jersey, Arizona, Illinois are all Consumer
10 Fraud Act model states.
11     THE COURT:  So say that again.  Delaware,
12 New Jersey --
13     MR. BRAUCH:  Delaware, New Jersey --
14     THE COURT:  Illinois.
15     MR. BRAUCH:  Illinois, Arizona, Iowa, and there may
16 be a couple of others out there.
17     THE COURT:  Do you have a False Claims Act statute
18 in Iowa?
19     MR. BRAUCH:  I believe that we do, yes.  We don't
20 generally use it in the context of work in my division.
21     THE COURT:  I see.  And is there any other statute
22 that includes the attorney being able to sue for things like
23 this?
24     MR. BRAUCH:  I'm not aware of it, but it is
25 important to note, this is a very broad statute.  We have a

Page 25

1   couple of statutes that we enforce that are specifically for
2   losses incurred in connection with items purchased or
3   services purchased for personal, family, or household
4   purposes. The Iowa Consumer Credit Code, Chapter 537, the
5   Door to Door Sales Act, Chapter 555(a), that we enforce, both
6   limit it to items purchased for personal, family, or
7   household purposes. That's not the focus here. That's not
8   referenced in this law and by omission. This law is much
9   broader. This covers the marketplace and intends to deter
10  deceptive and unfair conduct in the marketplace, and it does
11  not depend upon who the victim is.
12      THE COURT: Not that it's dispositive here, but
13  most of the states that have been suing have been suing under
14  their False Claims Act statutes. I mean, they pick up common
15  law fraud and the like. But you're pressing forward under
16  this, as I understand it, exclusively, other than the common
17  law causes of action.
18      MR. BRAUCH: That is correct. Ms. Cicala might be
19  able to provide a little more information about their
20  analysis of false claims and whether that was --
21      THE COURT: Well, it's quite clear you have a right
22  to sue for certain equitable relief. I mean, really what
23  they're challenging is the right to -- for compensatory, as I
24  understand it. So the real issue is, does your Supreme Court
25  take certification of questions?

Page 26

1       MR. BRAUCH: Yes.
2       THE COURT: From Federal District Court judges?
3       MR. BRAUCH: Yes.
4       THE COURT: Some courts won't.
5       MR. BRAUCH: Yes, they have in the past. I haven't
6   seen that for quite a while, but --
7       THE COURT: Have you thought about whether that
8   makes sense here?
9       MR. BRAUCH: I think we can certainly be open to
10  that.
11      MS. CICALA: We would have no objection whatsoever
12  to that approach, your Honor.
13      MR. JACKSON: Your Honor, I personally on behalf of
14  Baxter, I'd like to obviously discuss the issue with the rest
15  of my colleagues, and we'll get to the state and get back to
16  you on that issue of certification.
17      THE COURT: Let me just tell you what my sense is.
18  I looked up in the dictionary, not too brilliant, right, what
19  "include" means, and there's some ambiguity, but the primary
20  definition seems to be more open-ended. And the Supreme
21  Court in Sutherland, in statutory construction and the like,
22  distinguished between what "means" means and what "includes"
23  means. There was a recent case, Burgess V. United States in
24  2008, where they literally, the Supreme Court said, "The word
25  'includes' is usually a term of enlargement and not a term

Page 27

of limitation," all right? So it's obviously an incredibly
different statute in that light, but it's --
    So the question that I really -- I'm thinking I'm
going to let it go forward, but I'm also thinking, as you
said, I'm a court sitting in diversity very far away from
Des Moines. I'd hate to have everyone spend a fortune on
this case if I'm wrong. And I think it's part of comity,
really, to let the Iowa Supreme Court be the one who decides,
but I'm willing to hear from you on it, whether you think
this makes sense or not. And you should coordinate with your
folks and you with yours. I mean, even without this, of
course, the AG -- we maybe don't need to do it at this stage
of the proceeding -- the Attorney General has the right to go
forward with equitable causes of action, and they have a
common law fraud, although that has a much tighter leash on
it as to what you have to prove. And I think unjust
enrichment is an uncomfortable fit here, and I don't know
where I'll end up at the end of the day, whether I'd let
those go forward.
    So what do you think makes sense, to get back to me
within, let's say, a week?
    MR. JACKSON: I think that would be fine, your
Honor.
    THE COURT: I know it's July 4. Do you want to say
two weeks because a lot of people go away? They may not be

Page 28

thinking this on the beach. So just let me know what you
think of it, and maybe a model as to how judges in the past
have certified?
    MR. JACKSON: Will do.
    MS. CICALA: We can provide that, your Honor.
    THE COURT: I just think it's better justice where
there's no case law on point and what I actually probably
have is a plain reading of the statute which better favors
the Attorney General. But my hesitation is, Illinois seems
to be going the other way, despite that one Federal District
Court thing, and apparently one court likes to model itself
after another. So those point in different directions. I'd
like to do that, but I'll hear from you, and if you all think
it's a terrible idea, I'll back down. And even if we don't
do it now, we could do it later, you know. But my view is,
we're probably seeing lots of possible expenses in
discovery. I mean, why go forward really on --
    MR. JACKSON: Absolutely.
    THE COURT: You may not be able to prove reliance
and knowledge, and that may not be required under your
statute. So if you're only going under common law fraud, the
case has a different value than it does under the broader
Unfair and Deceptive Trade Practices Act, so think about that
and let me know.
    The one other area on the crosscutting that I

Page 29

1  wanted to deal with was the issue of Federal Upper Limits. I
2  understand it a little better now than I think -- who first
3  raised that? Was it the New York case? I said, "What on
4  earth are you talking about?"
5  MR. JACKSON: That's correct. Your Honor, John
6  Bueker is here, but as I understand it, under CMO 33, we are
7  closely, very rapidly getting to the end of fact discovery on
8  that FUL issue. I think there will be experts and I think
9  there will be summary judgment motions soon-ish. And it
10  seems to me that if that's true and the FUL is based upon the
11  lowest published price, then we should let that New York
12  litigation go to conclusion, and let's not spend time, money,
13  and effort litigating FUL here.
14  THE COURT: You're the same lawyers in that case,
15  right?
16  MS. CICALA: Yes, we are, your Honor.
17  THE COURT: Is that satisfactory to you?
18  MS. CICALA: It seems the efficient approach, and
19  Iowa has no objection to that approach. I had a few remarks
20  on the --
21  THE COURT: So I should reserve on FUL?
22  MS. CICALA: Yes. What your Honor did in the New
23  York case was deny the defendants' motion to dismiss the FUL
24  claims, and then entered CMO 33, which called for expedited
25  discovery on a handful of FUL-designated drugs. And that's

Page 30

1  the discovery which counsel is alluding to right now, which
2  is coming to a close on Monday, June 30.
3  THE COURT: What I don't want to do is spend a ton
4  of money doing discovery on it in Iowa if I think it's not
5  going to fly.
6  MS. CICALA: Understood, your Honor.
7  THE COURT: So everyone's in agreement there.
8  The next issue I thought was a very good
9  suggestion, at least. I don't know what your experts -- do
10  you have an expert sitting there that says that a 20 to
11  25 percent spread would be unconscionable?
12  MS. CICALA: New York will be submitting expert
13  affidavits and documentary evidence in support to address
14  whether a 30 percent threshold is appropriate for the --
15  THE COURT: Right, you're not bound by what
16  Dr. Hartman agreed on.
17  MS. CICALA: We understand.
18  THE COURT: That having been said, I heard such a
19  huge amount of evidence at the last trial that --
20  MS. CICALA: I understand, your Honor, and there's
21  a slight frustration on our part because the time -- you
22  know, notwithstanding that defendants attached all that
23  extraneous material to their motions, which they should not
24  have done under the rules --
25  THE COURT: I didn't read it, so don't worry about

Page 31

1  it. It was all I could do to get through the basic
2  arguments, so --
3  MS. CICALA: There are contemporaneous materials
4  received by the state Medicaid agencies which counter the
5  sort of information the Court has seen thus far in the
6  context of the private class case. We're eager to share that
7  information with your Honor --
8  THE COURT: Sure. I mean, you're not bound by it.
9  I'm just simply saying it was a very -- and in fairness to
10  them, though, in the interim what's happened -- you just
11  alerted me to the fact you know about it -- is this whole
12  case involving McKesson and First DataBank, which took me by
13  surprise, the unilateral jack-up of the 20 to 25. So that's
14  something no one knew about or dreamed about. In fact, it
15  happened after the case was filed. So I don't know whether
16  at least by 5 percent it alters the equation, but I'm not
17  going to rule on it. It's quite clear that everyone knew
18  that there was some markup.
19  MS. CICALA: Yes, and Iowa has pleaded to that
20  effect, your Honor. And the Iowa complaint also addresses
21  the McKesson First DataBank 5 percent markup in the context
22  of the Iowa AWP case, because your Honor is exactly right:
23  There's a nexus there, and there's a question how that
24  unilateral conduct impacts defendants' liability for that
25  percentage, if at all.

Page 32

1  THE COURT: It's, of course, more complicated than
2  that because at the time, as I'm sure you all know, some of
3  them were at 20 percent and some of them were at 25 percent.
4  MS. CICALA: That's right.
5  THE COURT: And then there was a unilateral markup
6  of the ones at 20 up to 25. So while it may be relevant to
7  the McKesson case, it's not clear that that goes to
8  unconscionable conduct on the part of the manufacturer. So,
9  I mean, it's just complicated. I am not going to bar you.
10  I'm just simply saying, I think discovery should start at the
11  30 percent and up drugs.
12  And, also, it's going to be hard for you to
13  persuade me that the statute of limitations shouldn't at
14  least be 1997.
15  MS. CICALA: Understood, your Honor.
16  THE COURT: And so why don't we just --
17  MS. CICALA: If I may, if I may?
18  THE COURT: Yes.
19  MS. CICALA: A few points, and I'm going to circle
20  back to the comment your Honor just made regarding the
21  statute of limitations, but I did want to be heard for just a
22  brief moment on the Iowa Consumer Fraud Act?
23  THE COURT: Oh, all right. I'm sorry.
24  MS. CICALA: No, it's fine. But, you know,
25  important to keep in mind that defendants' assault on that

Page 33

1 particular claim is not on the claim as a whole, but is
2 rather, as your Honor did note, on the actual damages. So
3 the claim may proceed generally. The question would be, what
4 relief would be available at the end of the day? There is no
5 statute of limitations running against -- the statute of
6 limitations cannot be invoked against the state under that
7 particular cause of action.
8      THE COURT: It sounds sweet from your point of
9 view, right? I never heard of a statute with no statute of
10 limitations.
11      MS. CICALA: It is one of the aspects of the
12 statute that plaintiffs enjoy, your Honor, and it is a
13 critical point.
14      And then in addition --
15      THE COURT: I would think so.
16      MS. CICALA: And, indeed, the other critical points
17 are, where the allegation sounds in deception and unfair
18 practice --
19      THE COURT: There must be something, though. You
20 couldn't go back and sue on something in the 1950s, right?
21      MS. CICALA: We needn't ask that question.
22      THE COURT: All right.
23      MS. CICALA: The other aspect, your Honor, where
24 the claim sounds in deception and unfair practices, as Iowa's
25 complaint does, there is no reliance requirement, as you

Page 34

1 pointed out, there is no intent requirement, other aspects of
2 the statute that Iowa feels particularly important in light
3 of when they filed their case.
4      THE COURT: In light of?
5      MS. CICALA: In light of the timing of the action,
6 which has been alluded to by the Court and defendants here
7 today.
8      THE COURT: You agree there's no statute of
9 limitations?
10      MS. CICALA: It's not been briefed, your Honor, I
11 will say that. We haven't litigated the point. The
12 defendants have not raised it, and so we did not raise it,
13 but I agree that --
14      THE COURT: Well, but it's relevant to me for case
15 management because I was going to cut it off; and if there's
16 no statute of limitations, there's no reason to do that.
17      MS. CICALA: If I may conclude my remarks, with
18 regard to Illinois, what counsel said regarding oral argument
19 may in fact be true, but the issue of actual damages and
20 whether they were recoverable by the Illinois Attorney
21 General in the Illinois state AWP case was fully briefed.
22 And we can supply those briefs to the Court if you're
23 interested. I think we have actually attached two of them to
24 our surreply. So it may not have been part of the oral
25 argument, but it was squarely before the Court when the Court

Page 35

1 issued its --
2      THE COURT: You've already given them to me?
3      MS. CICALA: Yes, we have. They're exhibits to our
4 surreply.
5      THE COURT: Thank you.
6      MS. CICALA: Thank you.
7      THE COURT: So at this point, unless you wanted a
8 brief reply, I think we need to get to the individual -- a
9 lot of people have come in from all over the country, so I
10 want to make sure I get to them.
11      MR. JACKSON: That's fine, your Honor.
12      THE COURT: By the way, realistically, I'm going to
13 have to go through this brief by brief by brief, so you've
14 briefed it, and I don't want anybody -- as soon as someone
15 starts rearguing one of these points, I'll tell them to sit
16 down. So please just focus on your drug, your company. Who
17 wants to start?
18      MS. TABACCHI: I'll begin, your Honor. Tina
19 Tabacchi on behalf of TAP. I promise not to reargue, and I
20 will also promise to be brief.
21      Your Honor, we only have two drugs at issue in this
22 case, Lupron and Prevacid. There is a 2001 settlement
23 agreement, your Honor, between TAP and the United States and
24 all fifty states, including the state of Iowa. The goal of
25 that settlement agreement, your Honor, was to achieve

Page 36

1 complete peace. We achieved retrospective peace, your Honor,
2 with a release for all Lupron claims, and in fact in the
3 papers, Iowa has now conceded that they have no Lupron claims
4 through the date of the agreement, which is December 3,
5 2001.
6      We have achieved prospective peace, or we hoped to,
7 your Honor, through an agreement with the United States that
8 applies across the board, and it's been characterized in the
9 complaint as a sweeping corporate integrity agreement, where
10 TAP agreed to provide to the government any pricing
11 information it wanted. And lest you think I'm about to step
12 outside of the complaint, your Honor, I'll refer you to
13 Paragraph 556 where the state of Iowa has alleged that the
14 corporate integrity agreement, TAP's corporate integrity
15 agreement, insures that TAP will report to the Medicare and
16 Medicaid programs the true average sale price for drugs
17 reimbursed by those programs. That is both Lupron and
18 Prevacid, your Honor, the drugs in this case.
19      There is no allegation in the complaint, your
20 Honor, that TAP did not fulfill its obligations. There is
21 no --
22      THE COURT: So stop just so I understand. So as I
23 understand it, is Prevacid included in the settlement
24 agreement?
25      MS. TABACCHI: Your Honor, Prevacid is included

Page 37

1    insofar as TAP's obligations to report pricing going
2    forward. Prevacid was not released, there were no claims
3    with respect to Prevacid, so there's no release for Prevacid
4    going back in time. But there is an obligation on behalf of
5    TAP to provide sales price information to the federal
6    government and all states, including Iowa, with respect to
7    Prevacid in addition to Lupron.
8         The state of Iowa has alleged that we've done
9    that. They have not alleged that we have not done it
10   properly. They have not alleged that the independent review
11   organization that reports to the OIG, who is charged with
12   auditing TAP, has found any problems, that they themselves
13   have ever asked any questions or found any problems with
14   those reports, your Honor.
15        THE COURT: So are you pressing the TAP case?
16        MS. CICALA: We're pressing it with regard to what
17   the significance of the ASPs are, your Honor. The state of
18   Iowa's position is that TAP's provisions of the ASPs,
19   whatever they meant, in no way mooted TAP's obligations to
20   report accurate pricing to the government, particularly in
21   light of the 2003 OIG compliance requirement.
22        THE COURT: Well, I thought that -- do you have any
23   allegations that the ASPs they're providing are inaccurate?
24        MS. CICALA: No. No, we do not, your Honor, nor do
25   we know yet what --

Page 38

1         THE COURT: So you're only looking for Prevacid for
2    2001 to whenever that agreement was?
3         MS. CICALA: The state's position, your Honor, is
4    that there's a question of fact what Iowa should have done
5    with those ASPs and whether the ASPs relieved TAP of its
6    obligations otherwise to report accurate average wholesale
7    prices.
8         THE COURT: Well, this is what I'm going to do:
9    I'm going to stay all discovery having to do with TAP. I
10   think there's a really serious threshold issue there, and I'm
11   not sure we can do it on a motion to dismiss.
12        MS. CICALA: I think there's a fact question --
13        THE COURT: It sounds like a law question.
14        MS. CICALA: Well, in the other cases where your
15   Honor has been presented with settlements where the
16   defendants have argued that they have preclusive effect based
17   on the provision of average sales prices going forward, the
18   Court has acknowledged it is a question of fact as to what
19   the payor should have been doing with those ASPs, whether
20   they should have imported them into their reimbursement
21   formula --
22        THE COURT: Well, I don't remember, but we're going
23   to stay all discovery having to do with TAP until I work out
24   that issue. Maybe you're right. I don't remember. You
25   know, I've been doing this case now for seven years.

Page 39

1         MS. CICALA: Fair enough.
2         THE COURT: And settlements come in at different
3    times. So what you're saying is, as soon as Prevacid was
4    launched, you started providing ASPs?
5         MS. TABACCHI: No, your Honor. We provided ASPs
6    for the fourth quarter of 2001 going forward. There was a
7    release up to 2001 for Lupron. There's no release for
8    Prevacid before 2001.
9         THE COURT: So was there like three months of
10   liability in there or something like that?
11        MS. TABACCHI: Well, we don't believe there's any
12   liability, your Honor. We have 90 percent of our sales at
13   WAC, but that's not an issue I'll trouble you with here on a
14   motion to dismiss.
15        THE COURT: Well, let's figure out the settlement
16   thing. So it sounds like the primary one would be Prevacid,
17   right?
18        MS. TABACCHI: Your Honor, all claims with respect
19   to Lupron should be out of the case. We also have argued in
20   our papers that Judge Stearns entered a class settlement
21   agreement in 2005, and the state of Iowa did not opt out of
22   that settlement. So for that additional reason, there's
23   another release that goes through 2005.
24        THE COURT: I think you've got big problems on
25   Lupron. That's been litigated to death. On Prevacid, there

Page 40

1    may be a window of time before the ASPs were turned over but
2    you launched it where there may be a problem.
3         MS. CICALA: If your Honor were inclined at this
4    point to stay discovery as to TAP on the basis of the ASPs, I
5    would still maintain, just as your Honor has pointed out,
6    that there's no release as to any claims other than Lupron
7    and any claims in that 2001 settlement. So those claims, at
8    least at a minimum, should be allowed to proceed.
9         THE COURT: But as soon as the ASPs are disclosed,
10   you've got the difficult case --
11        MS. CICALA: Possibly, your Honor, possibly.
12        THE COURT: -- as far as deception or unfairness or
13   anything. And the whole world knew at some point,
14   literally. Congress passed a bill in 2003.
15        MS. CICALA: Right, correct.
16        THE COURT: So I don't know why Iowa didn't change
17   its standard. But, in any event, you've got big problems
18   going forward.
19        So why don't I refine what I just said. I'm going
20   to ban all discovery, anything having to do with Lupron. You
21   know what? This takes forever for me. I don't want to do
22   this, I don't want to spend my time on Lupron if there's a
23   good-faith settlement claim. So I want you to think
24   seriously about whether you want to press it because it's
25   going to stay stayed until.

Page 41

1    Now, on Prevacid, there is a window there. There
2  is a window on Prevacid, so I won't stay discovery on
3  Prevacid before you started providing the ASPs. I think
4  that's a better refinement, okay?
5    MS. TABACCHI: Very good. Thank you, your Honor.
6    MS. CICALA: Thank you, your Honor.
7    THE COURT: What's the next one?
8    MS. AOYAGI: My name is Melissa Aoyagi. I'm from
9  law firm of Davis Polk & Wardwell on behalf of AstraZeneca,
10 and I apologize for interjecting, but as our motion is
11 somewhat related to TAP's motion, I thought now would be an
12 appropriate time to address our papers.
13   THE COURT: Okay.
14   MS. AOYAGI: We similarly have a settlement
15 agreement that's dated in 2003. We also have a corporate
16 integrity agreement, and our settlement agreement, again, is
17 with the state of Iowa dated September 4, 2003. As of
18 quarter three, 2003, AstraZeneca was reporting ASPs on the
19 drug, for which we moved to dismiss, Zoladex, with which your
20 Honor is aware.
21   THE COURT: Oh, Zoladex.
22   MS. AOYAGI: It sounds like you're quite familiar.
23 And we would ask for similar relief from the Court.
24   THE COURT: But that only starts in 2003, right?
25   MS. AOYAGI: Correct. The state has already

Page 42

1  conceded that it has no Zoladex claims predating the
2  settlement agreement for anything predating --
3    THE COURT: So is this just barred as well?
4    MS. CICALA: Well, given your Honor's ruling
5  moments ago with regard to the provision of ASPs, then
6  perhaps we're looking at another stay at a minimum with
7  regard to the Zoladex claim.
8    THE COURT: Yes, stay on Zoladex. And is there
9  another? And what other drugs do you have?
10   MS. CICALA: Well, there are other AstraZeneca
11 drugs at issue in the Iowa case that are not covered in any
12 way by the Zoladex settlement, nor do I understand --
13   THE COURT: So you're only talking Zoladex?
14   MS. AOYAGI: Correct. We obviously join in the
15 joint motion.
16   THE COURT: Sure. Good, okay, everything with
17 respect to Zoladex is stayed.
18   MS. AOYAGI: Thank you, your Honor.
19   MR. DAVIS: Good afternoon, your Honor. William
20 Davis for Eli Lilly. One narrow issue: With respect to your
21 instructions to plaintiff's counsel previously that the
22 prices alleged should be typical or median, they alleged a
23 13-day period is the only drug we had over 30 percent in this
24 case. I just want some guidance from the Court that where
25 you cherry-pick 13 days out of more than a decade of data,

Page 43

that's not a good-faith attempt at a typical or median
price --
    THE COURT: Is that one of your drugs or all of
your drugs?
    MR. DAVIS: The only drug in this case in their
exhibit that's over 30 percent is the one they cherry-picked
13 days, and so --
    THE COURT: And everything else is under
30 percent?
    MR. DAVIS: Everything else is under and --
    THE COURT: Well, why don't we do this: We're
going to include that in the stay until they present evidence
to me that under 30 percent is unfair, deceptive, or
whatever; but it's without prejudice to that being reopened
because --
    MR. DAVIS: Thank you, your Honor.
    THE COURT: Fine.
    MS. CICALA: Your Honor, in our surreply opposition
to Eli Lilly's motion, we supplied the Court with an exhibit
that provided longer periods of time spreads for the Lilly --
    THE COURT: Like how long?
    MS. CICALA: A quarter, your Honor.
    THE COURT: Excuse me?
    MS. CICALA: A quarter.
    THE COURT: One quarter where it went to where?

Page 44

    MS. CICALA: One quarter . . . well, your Honor --
    THE COURT: In other words, Johnson & Johnson -- I
mean, I have to inform myself based on it -- there were
certain quarters where they went to 31 percent or something.
    MS. CICALA: We have dozens of Lilly drugs in our
case, your Honor, and we have dozens of spreads over
30 percent for the Lilly drugs, so I don't want the Court to
have a misimpression with regard to --
    THE COURT: You're only talking about one drug,
right?
    MR. DAVIS: Your Honor, there's a misunderstanding
there. They're talking about a new proposed exhibit in a
surreply, not the complaint. This is something they're
saying if you wanted to let them amend.
    THE COURT: Hold it, hold it, chill. How many
drugs are we talking about from your point of view?
    MS. CICALA: There are approximately fifteen Lilly
drugs at issue in the Iowa case.
    THE COURT: Have you put those in the complaint?
    MS. CICALA: Yes, we have, your Honor.
    THE COURT: All right, so where?
    MS. CICALA: It's in Exhibit B.
    THE COURT: Okay, I've got it. I brought this here
because I --
    MR. DAVIS: I've got the exhibit, your Honor.

## Page 45

1      MS. CICALA: Your Honor --

2      THE COURT: Hold on. Let her show me. It's her

3 complaint.

4      MS. CICALA: Your Honor, our Lilly exhibit in the

5 complaint that we filed addresses four Lilly drugs. Counsel

6 is exactly correct that only one of them has a spread over

7 30 percent.

8      THE COURT: I'm not sure I even see the Lilly.

9 Okay, there we are. So --

10      MR. DAVIS: It's Exhibit B-12, your Honor.

11      THE COURT: And is that the Humalog?

12      MR. DAVIS: Yes, your Honor, Humalog.

13      THE COURT: Humalog? What is that?

14      MR. DAVIS: It's an insulin drug.

15      THE COURT: And that goes to 38 percent, and they

16 say only for a few days, is that right?

17      MS. CICALA: Yes. Counsel is absolutely right,

18 your Honor, absolutely right, your Honor.

19      THE COURT: So that's all we've got.

20      MS. CICALA: Well, that's all we had, your Honor.

21      THE COURT: No, no, you can't amend through a

22 surreply.

23      MS. CICALA: No, no, we're not seeking to amend

24 through a surreply, your Honor. We're seeking to respond to

25 defendants' arguments that the claim should be dismissed for

## Page 46

1 the drug by demonstrating --

2      THE COURT: Hold on, hold on. We're not dismissing

3 anything. I'm staying it until you come up with some

4 evidence as to why it would be unfair and unconscionable

5 within that yardstick that Hartman -- I'm not dismissing it.

6 I'm just staying it.

7      MS. CICALA: Now, your Honor, may I ask the Court's

8 position. In the light of the additional discovery that we

9 now obtained, we're able to plead longer spreads for these

10 Lilly products, which is in fact the case. We have spreads

11 now of at least a quarter for the Lilly products, and the

12 chart we attached to our surreply --

13      THE COURT: I know, but all I've got is this.

14      MS. CICALA: Indeed, your Honor, so we could file a

15 motion for leave to amend our Lilly exhibit to include the

16 additional drugs.

17      THE COURT: Maybe, but right now this is what I've

18 got, all right?

19      MS. CICALA: Okay, fair enough, your Honor.

20      THE COURT: All right, so what's the next one?

21      MR. SMITH: Your Honor, Jacques Smith for Chiron.

22 We have a similar situation to the Lilly spread. We're left

23 with two drugs now, Exhibit B-10, Page 132. The spreads on

24 our drugs are 26 percent and 27 percent. There was a

25 four-month period that was cherry-picked that exceeds

## Page 47

30 percent, 30.48 percent, your Honor, so we'd ask for a stay
as well.

     THE COURT: Allowed.

     MR. SMITH: Thank you, your Honor.

     MS. SMITH-KLOCEK: Your Honor, Erica Smith-Klocek
for Pfizer. I just want to make two very brief points. One
is, there has been some discussion about the Illinois case
and the Illinois decision. Pfizer was dismissed from
Illinois because the state acknowledged that it could not
plead that Pfizer either reported, set, or established an
AWP. Instead, all the state can say is that Pfizer reported
a WAC to First DataBank. And to the extent that the state is
relying on a theory of WAC fraud, Pfizer asserts that the
complaint needs to set forth all elements of fraud as to WAC,
which the current complaint does not. In Exhibit B there are
no allegations as far as which WACs were fraudulent or how
much they were inflated, and there's also no allegations as
far as whether Pfizer --

     THE COURT: So Pfizer doesn't report an AWP?

     MS. SMITH-KLOCEK: That's correct, your Honor.

     THE COURT: But it does report a WAC?

     MS. SMITH-KLOCEK: That's correct.

     THE COURT: Well, let me just ask you this. I
mean, obviously I've learned a lot in seven years. There are
many companies that only report a WAC but know that they're

## Page 48

typically marked up 20 to 25 percent by the publishing
companies. Is that what happened to your company?

     MS. SMITH-KLOCEK: Well, your Honor, if that is the
theory on fraud, that Pfizer is somehow on the hook for fraud
because if it new that First DataBank was marking up by
25 percent, then in the complaint they need to allege that
there was a duty to bring this to Iowa's attention,
because for fraud, if the misrepresentation is by omission,
there needs to be a duty to report that, and there's no such
allegation in the complaint.

     THE COURT: Let me just say this: You have not
pled a fraudulent WAC with respect to Pfizer.

     MS. CICALA: No, your Honor, nor should we have.
What we pled, your Honor, is that all the recorded prices the
defendants submit to the publishing compendia that are at
issue in this case were inflated. Iowa reimburses on the
basis of the lower of AWP, usual and customary, SMAC, and
FUL. We have included in Exhibit B fraudulent AWPs for every
one of the Pfizer drugs that are at issue in this case. Your
Court's prior rulings make plain, particularly on the brand
side, given the formulaic relationship between WAC and AWP,
this is what the pleadings should look like to satisfy 9(b).

     Obviously, from your Honor's experience in the
class trial, looking at BMS, just to cite one example, BMS
submitted a list price or a direct price with the knowledge

## Page 49

1 that it would be marked up. Everyone knew that, including
2 Pfizer. So that is the approach Iowa took in light of your
3 Honor's past rulings.
4 　　THE COURT: I think your argument is more
5 appropriately dealt with not on a motion to dismiss but on a
6 motion for summary judgment.
7 　　MS. SMITH-KLOCEK: Your Honor, thank you, but we
8 are just requesting that the elements of fraud be pleaded as
9 to the WAC, so --
10 　　THE COURT: All right, thank you.
11 　　How many people need to speak still? About two or
12 three, is that it?
13 　　MR. YOUNG: Your Honor, Hank Young on behalf of
14 Amgen. Amgen's motion is limited to dismissal of claims with
15 respect to one product only, Epogen, which is a product that
16 the state in its papers acknowledges in the ESRD and chronic
17 kidney disease market, the treatment of those two conditions
18 is reimbursed not based upon AWP but based upon a statutory
19 rate set by the federal government.
20 　　There are really just two simple parts to this:
21 One is, the Iowa regulation is set forth in our papers, but
22 the regulation, and I don't think there's any dispute about
23 this, states that for products or services provided in
24 treatment of chronic kidney disease, you look to how it's
25 reimbursed under Medicare rather than the typically

## Page 50

1 applicable state Medicaid regulations. The Court may recall
2 from the MDL class cases that with respect to Epogen, there
3 is a specific statutory rate under Medicare Part B of $10 per
4 1,000 units. It's not based upon AWP at all but based upon
5 that statutory rate.
6 　　The second part of this argument or the second
7 piece of it then has to do with what Amgen's market is for
8 Epogen. And, again, as the Court may recall from the
9 Track One case, Johnson & Johnson and Amgen had sort of split
10 it, and Amgen has retained the chronic disease/ESRD side, and
11 Johnson & Johnson Ortho has the everything else, which are
12 the uses that the state identifies in its papers as possibly
13 being reimbursed under AWP. So they're separated out at that
14 point.
15 　　You put the two pieces together, the Epogen part of
16 the puzzle is not being reimbursed based upon AWP but is
17 being reimbursed based upon that federal statutory rate. It
18 really doesn't have any role or function in this case.
19 　　THE COURT: So AWP has nothing to do with it or
20 WAC?
21 　　MR. YOUNG: Correct, for the reimbursement.
22 Reimbursement is based solely on that $10 per 1,000 units.
23 　　THE COURT: Is that true?
24 　　MS. CICALA: When Epogen is used in connection with
25 chronic renal disease, your Honor, that's absolutely true.

## Page 51

That's not in dispute. Iowa agrees with counsel.
　　However, the Iowa claims data shows that Epogen is
reimbursed on occasion by Iowa Medicaid on the basis of AWP.
I cannot at this time explain when that occurs or why that
occurs, but it does occur. Iowa Medicaid does reimburse for
Epogen on the basis of AWP on occasion outside of the chronic
renal context, obviously.
　　THE COURT: One thing that's ringing a bell, that
even though there was this market division, they sometimes
competed in one another's markets.
　　MS. CICALA: That's right, your Honor. That's
right.
　　THE COURT: But is it so random that it's worth the
effort? How much money is involved?
　　MS. CICALA: Enough money that it is worth the
effort at this stage, your Honor.
　　THE COURT: So what do you say to that? I mean --
you know, the truth is, we'll carve off the renal care.
　　MS. CICALA: Right. We're not seeking damages in
connection with the expenditures made by the state of Iowa
when Epogen was used for chronic renal disease. We agree
with that. The statute says what it says regarding how those
reimbursements are to be calculated. Our point is simply
that it appears in the claims data on the basis of AWP on
occasion, and to the extent it does and we've alleged the

## Page 52

AWPs were inflated and caused an overpayment, we think it's
appropriately in the case.
　　MR. YOUNG: My response, your Honor, is that it's
nowhere alleged in the complaint. And if we're talking about
some de minimis amount, which is, from what I hear, on
occasion, the bang is not worth the buck, and we have to go
through discovery on that drug. And it's a significant drug.
The Court may recall that for Amgen --
　　THE COURT: There's nothing I can do at this point
if some of it was reimbursed based on AWP. I mean, I know
that drug because, you probably don't know this, but I had
the patent case on that drug in 1986.
　　MR. YOUNG: I did know that.
　　THE COURT: Did you know that? I know all about
Epo. But that having been said, there's nothing I can do on
a pleadings stage. If she says that some was reimbursed at
AWP, she's given the number and it's way above it -- I mean,
maybe that's something that the two of you can carve off and
either figure out an expedited way of resolving it or
settling it if it's really not big money. It may not be
worth the discovery cost.
　　MR. YOUNG: But as I understand, the Court's ruling
would, though, include carving out that part that's related
to the renal disease?
　　THE COURT: Absolutely, you're absolutely right on

Page 53

1  that.
2        MS. CICALA: And, your Honor, we can style it
3  however the Court wishes. It's not a carve-out. We're not
4  seeking damages for those payments in our case. So that the
5  record is clear, we're only seeking damages in connection
6  with the AWP-based reimbursements for Epogen.
7        THE COURT: Okay.
8        MR. YOUNG: And I guess by extension then, there
9  shouldn't be discovery with respect to the marketing.
10        THE COURT: Absolutely not, not with respect to the
11  renal care.
12        All right, who else?
13        MR. MELAUGH: David Melaugh for Purdue, your
14  Honor. We're content to rest on our papers.
15        THE COURT: Okay. Am I that scary, or is it just
16  everyone's getting tired? All right.
17        MR. MELAUGH: Not at all, your Honor.
18        MR. STERN: I wish I could make the Court that
19  happy, your Honor. Jonathan Stern for Endo Pharmaceuticals.
20  Your Honor, we raised two arguments in our individual motion
21  to dismiss. I would ask to submit on the second argument,
22  which has to do with Rule 9(b). The Court, I'm sure, will
23  address those --
24        THE COURT: Tell me what it is.
25        MR. STERN: Our argument, your Honor, is that the

Page 54

1  state has failed to plead with specificity the false WAC that
2  they allege that we have reported.
3        THE COURT: So that's similar to Pfizer, right?
4        MR. STERN: In part, your Honor. The allegation
5  against Endo is that false WACs were reported, not that false
6  AWPs were reported. I understand the state's theory on
7  that.
8        THE COURT: Oh, I see. All right, all right, it's
9  the same thing then. Okay.
10        MR. STERN: I believe it is, your Honor. The only
11  distinction between Endo and the other companies is that with
12  respect to all of the other defendants, the state did allege
13  at least one specific fraudulent AWP in the body of the
14  complaint. They didn't do that with Endo. I really am
15  submitting on papers, however.
16        THE COURT: Okay.
17        MR. STERN: I would like to address the other
18  argument that we made, but I do that with some trepidation,
19  your Honor, because it does relate to the Federal Upper
20  Limit. I endorse Mr. Jackson's agreement with the Court's
21  proposal that the joint defendants' arguments be deferred.
22  I'm familiar, of course, with the Court's order in the
23  counties case and the mechanism for dealing with FUL
24  arguments in that case. All of that --
25        THE COURT: It's a excellent pun.

Page 55

1        MR. STERN: I'm sorry, your Honor?
2        THE COURT: It's a good pun.
3        MR. STERN: Not intended, your Honor. All of that
4  said, it's our respectful submission that the FUL, or F-U-L
5  for our Court Reporter, that the FUL issue that we've raised
6  in our individual submission is a pleading issue, and I'd ask
7  the Court's indulgence to address it for just a few minutes,
8  if I could.
9        THE COURT: Okay.
10        MR. STERN: Your Honor, the state alleges FUL fraud
11  generally as to twenty-three Endo NDCs which represent twelve
12  drugs. And as the Court knows, through Exhibit A, the state
13  has pled FUL fraud by NDC. So we start with that universe of
14  NDCs and drugs.
15        THE COURT: Exhibit A or Exhibit B?
16        MR. STERN: Well, your Honor, Exhibit A is the list
17  of companies that just identifies by a number how many NDCs
18  are the subject of FUL fraud allegations.
19        Your Honor, it's our submission that in order to
20  properly state a claim for FUL fraud, the state has to allege
21  facts sufficient to show that if Endo had reported a
22  so-called "true price," that that price would have affected
23  the FUL. And I'm not hear venturing into the morass of the
24  other issues that are related to that concept, but as a
25  matter of law -- and I don't think this is in dispute -- that

Page 56

1  in order to state a claim for FUL fraud, the state has to
2  allege facts sufficient to believe that if Endo had published
3  a so-called "true price," it would have affected the FUL.
4  The Court has acknowledged as much in its July 30 order. The
5  complaint acknowledges as much. We respectfully submit
6  that's clear.
7        THE COURT: Which one is my July 30 order?
8        MR. STERN: I'm sorry, your Honor. That is the --
9        THE COURT: Do you know how --
10        MR. STERN: I apologize, your Honor.
11        THE COURT: Do you know, the biggest challenge for
12  the Federal Court right now is, we're trying to disaggregate
13  this docket, people will be happy to know, so someone can
14  find things that relate to the other things in like the New
15  York case or the Iowa case. We are trying to disaggregate
16  because it's now unusable. So all I'm saying is, I don't
17  remember what the July 30 order is.
18        MR. STERN: This is the order in which the Court,
19  as Ms. Cicala earlier alluded, denied the defendants' motion
20  in the counties case with respect to FUL fraud, and deferred
21  further consideration of those issues pending the discovery
22  period that the Court has ordered on a limited number of --
23        THE COURT: My problem is, I don't understand FUL
24  well enough even to evaluate the particularity question, so
25  maybe what I should just do is defer deciding your issue

Page 57

1   until I've seen it vetted through New York.
2       MR. STERN: Can I give it a try, your Honor, since
3   this particular issue was not raised in New York. And if I
4   fail, I will fail. Your Honor, I start with the proposition
5   that I did that I don't think is disputed. The next step in
6   the analysis is that in order to plead that the FUL would
7   have been affected by a given Endo price, the state has to
8   allege that that price was eligible to affect the FUL, and
9   the question whether a given price is eligible to affect the
10  FUL is the question whether the drug associated with that NDC
11  meets the requirements of 42 CFR 331. And that's a fairly
12  simple regulation. Again, it's a matter of law, your
13  Honor -- I don't believe it's in dispute -- that in order for
14  a drug, or an NDC related to a drug, to affect the FUL, to be
15  eligible to set the FUL, that drug has to, A, be a
16  therapeutic equivalent, and, B, be sold in quantities of 100,
17  or if not in 100, the commonly available packet size. I'd
18  like to focus on the first of those two elements, your
19  Honor. The definition of what --
20      THE COURT: You attach that whole like a memo that
21  goes through hundreds of drugs and what are therapeutic
22  equivalents, right? Is that what you're saying?
23      MR. STERN: Yes, your Honor, that's the Orange
24  Book.
25      THE COURT: Yes, the Orange Book.

Page 58

1       MR. STERN: That's right, and the Court anticipates
2   where I'm going next, which is to say that whether or not a
3   given drug counts as a therapeutic equivalent and is
4   therefore -- at least that's a necessary, if not sufficient,
5   condition to be eligible to set the FUL, in order for that
6   drug to count, it has to be evaluated as a therapeutic
7   equivalent in the Orange Book. That means --
8       THE COURT: Okay, so before I go through, I read
9   that actually. I tried to read it. I thought that the
10  Red Book and the Blue Book --
11      MR. STERN: These are our colors, your Honor.
12      THE COURT: -- and now I know about the Orange
13  Book. So let me just, so this isn't an academic exercise,
14  are there some in there that you say aren't?
15      MR. STERN: Yes, your Honor. It's not an academic
16  exercise.
17      THE COURT: So are all of yours -- how many drugs
18  do you have at stake, ballpark, ballpark?
19      MR. STERN: We have for FUL fraud, your Honor,
20  twelve drugs, twenty-three NDCs.
21      THE COURT: So how many of those do you say
22  aren't?
23      MR. STERN: I'm looking for my list, your Honor. I
24  can tell the Court from my memory that of the -- now I'll
25  look at my notes -- of the twelve drugs, twenty-three NDCs,

Page 59

1   there are only two drugs with one NDC apiece that are in the
2   current publicly available Orange Book dated December 1,
3   2007, as supplemented by the May, 2008 supplement.
4       THE COURT: So you think you can narrow this case
5   down in a pretty quick way to the two drugs?
6       MR. STERN: Well, two points, your Honor. First,
7   with respect to FUL fraud allegations -- and there are other
8   allegations against Endo. We've asked for those claims to be
9   dismissed, both through our joinder in the joint motion and
10  the rest of our individual motion, but with respect to FUL
11  fraud allegations, your Honor, to flesh that out just a
12  little bit, we start again with twenty-three NDCs, twelve
13  drugs on this FUL fraud list. There are five drugs, eight
14  NDCs, that are listed in the Orange Book as discontinued.
15  They're not listed as therapeutic equivalents. They're
16  listed as discontinued. I'm --
17      THE COURT: How can I do this on a motion to
18  dismiss?
19      MR. STERN: Your Honor, here's how the Court can do
20  it on a motion to dismiss: I don't believe it's necessary
21  for the Court to make findings or reach conclusions.
22      THE COURT: You know what, if I have them amend,
23  then I have a new motion to dismiss. It's paperwork. What I
24  want you to do is, you list the ones that you think aren't
25  eligible, and I'll do like what I did with these settlements,

Page 60

1   because I don't want to go through the motion to amend, and
2   then there's an opposition, and I get a thousand new
3   pleadings, and now we're up to eight thousand docket things.
4   So what I want you to do is, you tell them what you think
5   isn't listed.
6       You check. And I don't want to go through -- I
7   have too much to do, you know. So if they're not in there,
8   you don't want to spin your heels on it either.
9       MS. CICALA: Obviously, your Honor, and I think
10  this is a tempest in a teapot, but --
11      THE COURT: Why is it a tempest in a teapot? If
12  they're not there, they're not there. It should be a matter
13  of going through like this.
14      MS. CICALA: Because, your Honor, we've got
15  twenty-three NDCs subject to FUL fraud in the complaint, not
16  twenty, first of all. We've got allegations -- the 100-count
17  package size is represented by sixteen of the twenty-three,
18  so the numbers that are being thrown out here are simply
19  inaccurate.
20      THE COURT: Right, he's not pressing it. He's
21  pressing therapeutic equivalent.
22      MS. CICALA: Fair enough, your Honor. Obviously,
23  if the drug is subject to a FUL, it's a therapeutic
24  equivalent, so there's a certain typology here.
25      MR. STERN: We disagree with that, your Honor.

Page 61

1  It's our submission that whether or not it's a therapeutic
2  equivalent for purposes of these allegations is a question of
3  whether or not it's evaluated as a therapeutic equivalent in
4  the Orange Book. That's what the regulation says.
5      THE COURT: Yes, but let me put it this way: This
6  is why I wanted to have this briefed first. I don't really
7  have this in my gut, all right? You know, no one did.
8  Truthfully, the only solace I have that I didn't get it is, I
9  think not one attorney in this room understood it, and we
10  basically all came up with this alternative way of actually
11  trying to figure out what it was and how it applied. If
12  you've got something where, slam dunk, they're wrong, file a
13  motion to strike those particular drugs, rather than have me
14  go through the whole motion to amend, and then I have another
15  set of these things or something like that.
16      And then you look in good faith under Rule 11 and
17  work it out.
18      MS. CICALA: Absolutely, your Honor.
19      THE COURT: I think that's a good solution. And
20  then you may agree to disagree, and then I'll fully take it
21  up once I understand it a little better.
22      MR. STERN: That's fine, your Honor, and I
23  appreciate the Court's directing what is an eminently
24  practical solution. We cast our argument this way so that it
25  would be appropriately cast for the pleadings stage, but

Page 62

1  we're certainly prepared, both through informal and formal
2  means, to try to work this out, your Honor.
3      THE COURT: Because they have specifically alleged
4  what the drug is and what is subject to the FUL. You're
5  essentially saying they've made mistakes, and I think this is
6  such a massive case, they don't need to be spending the money
7  on stuff that's going nowhere as well. And I'm sure they
8  have made some mistakes. I mean, it's just too huge. So you
9  just communicate and try and work that out. Otherwise, I'll
10  reserve the thing until I've understood it a little bit
11  better.
12      MR. STERN: Understood, your Honor.
13      THE COURT: All right, thank you very much. Is
14  this it? We're all done? Now, let's talk. I haven't set a
15  scheduling conference yet, have I?
16      MS. CICALA: No, you haven't, your Honor.
17      THE COURT: Have you talked with one another about
18  what makes sense here?
19      MR. JACKSON: No, your Honor.
20      THE COURT: Well, we could do one of two things:
21  You could go out and propose one jointly, or I could set one,
22  and then you could --
23      MR. JACKSON: I might suggest maybe we'd get
24  together in the same two-week period of time, and we'll see
25  if we can propose something jointly.

Page 63

1      THE COURT: Does that make some sense?
2      MS. CICALA: Yes. Yes, it does, your Honor. I was
3  interested in falling lockstep in with the other government
4  cases so the case is not lagging behind; and if Iowa can
5  avail itself to the discovery that's been had in the other
6  cases in the MDL, then there's no reason for this case to lag
7  on a slower schedule than anything else your Honor is hearing
8  on the Medicaid front.
9      THE COURT: Okay. I mean, my goal eventually, you
10  know, I've been remanding cases where possible. So Utah just
11  went home. I'm eager to get all these cases to a place where
12  they're either settled or back in the home district.
13      MS. CICALA: Well, our understanding, your Honor,
14  is we're here for --
15      THE COURT: For trial. In other words, I'm not
16  going to try these.
17      MS. CICALA: No. Iowa filed in Federal Court, and
18  we're here for pretrial purposes, and we look forward to
19  going back to Iowa to try the case in front of an Iowa jury.
20      THE COURT: I couldn't agree more. So you two work
21  on a case management order. Do you want to say by July 15
22  you come up with a --
23      MS. CICALA: Your Honor, if we could roll it a bit,
24  I have some time scheduled in July that I'd rather my
25  family --

Page 64

1      THE COURT: You don't want to do this on the beach?
2      MS. CICALA: For the happiness of my family, if we
3  can put it to the end of July.
4      THE COURT: The 22nd?
5      MS. CICALA: I would appreciate that, your Honor.
6      THE COURT: Okay, the 22nd, just come up with a
7  joint case management order. Now, let me go off the record
8  for a minute.
9      (Discussion off the record.)
10      THE COURT: Have you nice summer, and if there's a
11  difference of opinion on case management orders -- have we
12  followed this protocol before? -- you'll put your version in
13  brackets, and you'll put yours in parentheses, and then I'll
14  just sort of pick and choose.
15      MS. CICALA: Yes, your Honor.
16      THE COURT: Great. Have a wonderful summer.
17      MR. JACKSON: Thank you, your Honor.
18      (Adjourned, 3:50 p.m.)

```
 1         C E R T I F I C A T E
 2
 3
   UNITED STATES DISTRICT COURT )
 4 DISTRICT OF MASSACHUSETTS   ) ss.
   CITY OF BOSTON            )
 5
 6
 7
 8       I, Lee A. Marzilli, Official Federal Court
 9 Reporter, do hereby certify that the foregoing transcript,
10 Pages 1 through 64 inclusive, was recorded by me
11 stenographically at the time and place aforesaid in Civil
12 Action No. 01-12257-PBS, MDL No. 1456, In re:  Pharmaceutical
13 Industry Average Wholesale Price Litigation, and thereafter
14 by me reduced to typewriting and is a true and accurate
15 record of the proceedings.
16       In witness whereof I have hereunto set my hand this
17 30th day of June, 2008.
18
19
20
21       /s/ Lee A. Marzilli
         _____
22       LEE A. MARZILLI, CRR
         OFFICIAL FEDERAL COURT REPORTER
23
24
25
```

**A**

Aaron 2:4 4:15
ability 21:14
able 21:15 24:22 25:19
  28:19 46:9
absolutely 28:18 45:17
  45:18 50:25 52:25,25
  53:10 61:18
academic 58:13,15
accurate 11:1 37:20
  38:6 65:14
achieve 35:25
achieved 36:1,6
acknowledged 38:18
  47:9 56:4
acknowledges 49:16
  56:5
acquisition 9:15,18
  10:8
act 7:4 12:24 13:1
  14:12,17 15:15 16:21
  20:3,8 23:23 24:4,8
  24:10,17 25:5,14
  28:23 32:22
action 4:3 6:22 17:4
  19:15,18 20:14,15
  21:5,10,11 25:17
  27:14 33:7 34:5
  65:12
actor 20:14
acts 24:6,7
actual 9:14,17 23:22
  33:2 34:19
added 23:25
addition 20:25 33:14
  37:7
additional 9:24 39:22
  46:8,16
address 4:19 6:23 8:10
  30:13 41:12 53:23
  54:17 55:7
addresses 31:20 45:5
Adjourned 64:18
advertisement 20:12
advice 15:25
affect 57:8,9,14
affidavits 30:13
affirmed 18:12
aforesaid 65:11
afternoon 4:17,21 5:17
  6:2,5 42:19
AG 12:20,25 27:12
agencies 31:4
ago 42:5
agree 14:2 20:19 34:8
  34:13 51:21 61:20
  63:20
agreed 8:25 9:1,19
  30:16 36:10
agreement 30:7 35:23

35:25 36:4,7,9,14,15
  36:24 38:2 39:21
  41:15,16,16 42:2
  54:20
agrees 51:1
AG's 4:11
alerted 31:11
allegation 33:17 36:19
  48:10 54:4
allegations 9:1 37:23
  47:16,17 55:18 59:7,8
  59:11 60:16 61:2
allege 48:6 54:2,12
  55:20 56:2 57:8
alleged 36:13 37:8,9,10
  42:22,22 51:25 52:4
  62:3
alleges 55:10
allowable 9:10
allowed 40:8 47:3
allowing 6:20
alluded 34:6 56:19
alluding 30:1
all-encompassing 12:7
all-inclusive 21:22
alternative 61:10
alters 31:16
ambiguity 13:16 14:2
  26:19
amend 44:14 45:21,23
  46:15 59:22 60:1
  61:14
Amgen 3:3 5:10 49:14
  50:9,10 52:8
Amgen's 49:14 50:7
amount 30:19 52:5
analysis 9:2,6,7 16:9
  22:7 25:20 57:6
ANDREW 2:8
Andy 4:17 8:9
another's 51:10
answer 12:21 15:1
anticipates 58:1
anybody 35:14
Aoyagi 2:16 4:25,25
  41:8,8,14,22,25 42:14
  42:18
apiece 59:1
apologize 41:10 56:10
apparently 28:11
appeal 18:11
appealed 19:2
appears 51:24
appellate 16:5
appendices 10:9
appendix 7:13 8:19
applicable 16:5 50:1
applied 61:11
applies 9:2 36:8
apply 9:7

appreciate 10:13 61:23
  64:5
approach 26:12 29:18
  29:19 49:2
appropriate 10:15,16
  11:8 30:14 41:12
appropriated 22:12
appropriately 15:12
  49:5 52:2 61:25
appropriations 22:11
approximately 44:17
area 28:25
Arent 3:5 5:11,13
argue 15:3
argued 9:5,20 15:3
  38:16 39:19
arguing 15:6
argument 9:24 10:24
  12:19 14:14,19 15:7,8
  15:15 34:18,25 49:4
  50:6 53:21,25 54:18
  61:24
arguments 15:11 31:2
  45:25 53:20 54:21,24
Arizona 24:9,15
Arnold 2:12
articles 12:16
aside 22:18
asked 4:19 37:13 59:8
aspect 21:13 33:23
aspects 33:11 34:1
ASPs 37:17,18,23 38:5
  38:5,19 39:4,5 40:1,4
  40:9 41:3,18 42:5
assault 32:25
asserts 47:13
Assistant 2:6 4:8
associated 57:10
AstraZeneca 2:15,17
  41:9,18 42:10
AstraZenica 4:24 5:1
attach 57:20
attached 30:22 34:23
  46:12
attempt 43:1
attempted 22:6
attention 48:7
attorney 2:6 4:9,9
  14:16,20 17:14,21,24
  19:16 20:4,20 22:17
  24:22 27:13 28:9
  34:20 61:9
auditing 37:12
Austin 3:17
authorizes 7:4
avail 63:5
available 33:4 57:17
  59:2
Avenue 2:4,17,23 3:5,7
  3:9,11

average 1:4 4:2 36:16
  38:6,17 65:13
awarded 22:14,20,21
  22:23 23:9,9,10
aware 24:24 41:20
AWP 9:16 10:25 13:5
  31:22 34:21 47:11,19
  48:17,21 49:18 50:4
  50:13,16,19 51:3,6,24
  52:10,17 54:13
AWPs 10:6 48:18 52:1
  54:6
AWP-based 53:6

**B**

B 1:9 44:22 47:15
  48:18 50:3 55:15
  57:16
back 8:11 16:23 26:15
  27:20 28:14 32:20
  33:20 37:4 63:12,19
ballpark 58:18,18
Baltimore 3:3
ban 40:20
bang 52:6
bar 32:9
barred 42:3
based 11:17 13:20
  29:10 38:16 44:3
  49:18,18 50:4,4,16,17
  50:22 52:10
basic 6:24 31:1
basically 6:21 17:7
  61:10
basis 40:4 48:17 51:3,6
  51:24
Baxter 2:9,11 4:18,20
  8:9 26:14
Bayer 3:18 6:6
beach 28:1 64:1
Beacon 2:10
behalf 4:14,16 5:20,25
  6:3,6 12:25 13:2,3,6,7
  14:13,18 16:7 19:15
  19:18,21,24 26:13
  35:19 37:4 41:9
  49:13
believe 21:19,20,22
  24:8,19 31:11 54:10
  56:2 57:13 59:20
believed 14:20,20
bell 51:8
beneficiaries 13:2,4,7
beneficiary 7:1
benefit 11:14
best 8:12 9:1,4,5
better 14:19 28:6,8
  29:2 41:4 61:21
  62:11
big 7:18,24 12:15 14:10

39:24 40:17 52:20
biggest 56:11
bill 4:8 17:18 22:11
  40:14
binding 7:20
bit 59:12 62:10 63:23
Blue 58:10
BMS 48:24,24
board 36:8
Bockius 2:20
body 54:13
Boehringer 15:4
Book 57:24,25 58:7,10
  58:10,13 59:2,14 61:4
Boston 1:14,24 2:10,15
  3:15,19 17:1,3,9,19
  65:4
bottom 6:25
Boulevard 2:14
bound 30:15 31:8
brackets 64:13
brand 48:20
Brauch 2:6 4:8 17:16
  17:18,20,23 18:5,7,16
  18:20,22 19:1,3,6,13
  20:1,3,25 22:3,10
  23:7,14,16,20 24:3,13
  24:15,19,24 25:18
  26:1,3,5,9
brief 32:22 35:8,13,13
  35:13,20 47:6
briefed 34:10,21 35:14
  61:6
briefs 34:22
brilliant 26:18
bring 14:15 19:18,20
  48:7
broad 24:25
broader 21:20 25:9
  28:22
brought 44:23
buck 52:6
Bueker 3:15 6:2,3 29:6
Building 2:7
Burgess 26:23
B-10 46:23
B-12 45:10

**C**

C 2:1 3:1 4:1 65:1,1
CA 1:4
calculate 11:20
calculated 51:23
California 2:25
call 18:1 24:5,6
called 10:2 24:7 29:24
Calvert 3:3
care 51:18 53:11
Carroll 2:2 4:13,13
carve 51:18 52:18

carve-out 53:3
carving 52:23
case 7:22,22 8:3,23
    11:7,17,19 14:24,25
    15:9 16:11 17:5,6,23
    19:12,13 20:15 22:8
    22:18 23:10 26:23
    27:7 28:7,22 29:3,14
    29:23 31:6,12,15,22
    32:7 34:3,14,21 35:22
    36:18 37:15 38:25
    39:19 40:10 42:11,24
    43:5 44:6,18 46:10
    47:7 48:16,19 50:9,18
    52:2,12 53:4 54:23,24
    56:15,15,20 59:4 62:6
    63:4,6,19,21 64:7,11
cases 8:16 9:7 12:2,4,7
    14:11,16 19:20,22
    22:1 38:14 50:2 63:4
    63:6,10,11
cast 61:24,25
cause 17:4 21:11 33:7
caused 52:1
causes 25:17 27:14
Center 2:14
century 23:23
certain 15:11 25:22
    44:4 60:24
certainly 7:21 11:18
    16:10 20:19 26:9
    62:1
certification 25:25
    26:16
certified 28:3
certify 65:9
cetera 6:24
CFA 16:12
CFR 57:11
challenge 56:11
challenging 21:12
    25:23
chambers 21:21
change 6:16 7:7 12:18
    16:24 17:1 40:16
changed 10:20
Chapter 25:4,5
characterized 36:8
charged 37:11
chart 46:12
check 60:6
cherry-pick 42:25
cherry-picked 43:6
    46:25
Chicago 2:19 3:17
chill 44:15
Chiron 3:5 5:12,13
    46:21
choose 64:14
chronic 49:16,24 50:10

50:25 51:6,21
Cicala 2:2 4:6,6 25:18
    26:11 28:5 29:16,18
    29:22 30:6,12,17,20
    31:3,19 32:4,15,17,19
    32:24 33:11,16,21,23
    34:5,10,17 35:3,6
    37:16,24 38:3,12,14
    39:1 40:3,11,15 41:6
    42:4,10 43:18,22,24
    44:1,5,17,20,22 45:1
    45:4,17,20,23 46:7,14
    46:19 48:13 50:24
    51:11,15,19 53:2
    56:19 60:9,14,22
    61:18 62:16 63:2,13
    63:17,23 64:2,5,15
circle 32:19
cite 16:12 48:24
cited 19:20
citizens 18:4
CITY 65:4
civil 4:3 20:17 21:1
    22:14,19,24 65:11
claim 18:13,15 33:1,1,3
    33:24 40:23 42:7
    45:25 55:20 56:1
claims 8:12 9:6,9,10
    10:2,3 16:21 17:25
    18:9,13 24:17 25:14
    25:20 29:24 36:2,3
    37:2 39:18 40:6,7,7
    42:1 49:14 51:2,24
    59:8
class 31:6 39:20 48:24
    50:2
clear 6:19 25:21 31:17
    32:7 53:5 56:6
CLERK 4:2
client 19:16
close 30:2
closely 29:7
CMO 29:6,24
Code 21:24 25:4
Cohen 3:6 5:15,15
Cohn 2:22
colleague 15:24
colleagues 26:15
collecting 23:3
College 2:2
colors 58:11
come 35:9 39:2 46:3
    63:22 64:6
coming 30:2
comity 27:7
comment 32:20
Commission 23:22
common 25:14,16
    27:15 28:21
commonly 57:17

communicate 62:9
companies 17:25 47:25
    48:2 54:11 55:17
company 2:23 6:1
    35:16 48:2
compendia 48:15
compensatory 25:23
competed 51:10
complaint 6:23 8:19
    10:4 11:20 31:20
    33:25 36:9,12,19
    44:13,19 45:3,5 47:14
    47:15 48:6,10 52:4
    54:14 56:5 60:15
complaints 8:17
complete 36:1
compliance 37:21
complicated 15:10 32:1
    32:9
concede 9:3
conceded 9:11 36:3
    42:1
concept 55:24
conclude 34:17
conclusion 29:12
conclusions 59:21
condition 58:5
conditions 49:17
conduct 25:10 31:24
    32:8
conference 62:15
confess 15:13
confused 9:16
Congress 40:14
Connecticut 3:5
connection 20:11 25:2
    50:24 51:20 53:5
Conroy 2:10
consider 11:8
consideration 55:21
consistent 6:20 21:9
construction 22:22
    26:21
consumer 2:6 4:10 7:4
    12:24 13:1 14:12,12
    14:17,21 15:15 17:17
    17:25 18:13,15 20:3
    22:14,19,24 23:4 24:5
    24:8,9 25:4 32:22
consumers 19:21 22:18
    22:21 23:11
contemporaneous 31:3
content 53:14
context 8:15 24:20 31:6
    31:21 51:7
contexts 22:2
contingent 22:13
Continued 3:1
Cooleybeck 2:14 4:23
    4:23

coordinate 27:10
Corp 2:21 3:5
corporate 36:9,14,14
    41:15
Corporation 3:7,10,18
    5:12,14,16 6:6
correct 10:10 14:9
    15:22 18:5 19:3
    23:14 25:18 29:5
    40:15 41:25 42:14
    45:6 47:20,22 50:21
cost 9:10,15 52:21
costs 10:8 21:5
counsel 4:4,7 9:8 15:2
    30:1 34:18 42:21
    45:5,17 51:1
count 6:21 18:1 58:6
counter 31:4
counties 54:23 56:20
country 35:9
counts 8:13 58:3
couple 6:18 21:4 24:16
    25:1
course 27:12 32:1
    54:22
court 1:1,13,23,23 4:4
    4:12 5:24 6:9 8:8,15
    9:19,25 10:7,11,22
    11:14,22 12:8,10,13
    12:22 13:13,22 14:23
    15:5,9,18,20,24,25
    16:5,15,18,21,25 17:6
    17:13,19,21 18:2,3,6
    18:8,10,11,12,12,14
    18:17,18,18,20,21,23
    18:24,24 19:2,4,7,8
    19:19 20:2,19 21:7
    22:1,7,9,16,25 23:8
    23:11,12,15,18,21
    24:1,11,14,17,21
    25:12,21,24 26:2,2,4
    26:7,17,21,24 27:5,8
    27:24 28:6,11,11,19
    29:14,17,21 30:3,7,15
    30:18,25 31:5,8 32:1
    32:5,16,18,23 33:1,13
    33:19,22 34:4,6,8,14
    34:22,25,25 35:2,5,7
    35:12 36:22 37:15,22
    38:1,8,13,18,22 39:2
    39:9,15,24 40:9,12,16
    41:7,13,21,23,24 42:3
    42:8,13,16,24 43:3,8
    43:11,17,19,21,23,25
    44:2,7,9,15,19,21,23
    45:2,8,11,13,15,19,21
    46:2,13,17,20 47:3,19
    47:21,23 48:11 49:4
    49:10 50:1,8,19,23
    51:8,13,17 52:8,9,14

52:25 53:3,7,10,15,18
    53:22,24 54:3,8,16,25
    55:2,5,9,12,15 56:4,7
    56:9,11,12,18,22,23
    57:20,25 58:1,8,12,17
    58:21,24 59:4,17,19
    59:21,22 60:11,20
    61:5,19 62:3,13,17,20
    63:1,9,15,17,20 64:1
    64:4,6,10,16 65:3,8
    65:22
Courthouse 1:14,24
Courtroom 1:14
courts 14:7 26:4
Court's 46:7 48:20
    52:22 54:20,22 55:7
    61:23
covered 42:11
covers 25:9
Credit 25:4
critical 33:13,16
crosscutting 4:19 6:10
    6:12,15 28:25
CRR 65:22
current 47:15 59:2
customary 48:17
cut 11:19 34:15
Cynthia 3:11 5:21

                    D

D 3:4,8,17 4:1
damaged 20:13
damages 11:19,20
    14:17,21 15:17 16:7
    16:13 17:22 20:24
    21:14 22:14,20,21,23
    23:8 33:2 34:19
    51:19 53:4,5
data 42:25 51:2,24
DataBank 17:11 31:12
    31:21 47:12 48:5
date 36:4
dated 41:15,17 59:2
David 2:24 3:4 5:8
    53:13
Davis 2:16,22 4:25 5:6
    5:6 41:9 42:19,20
    43:5,10,16 44:11,25
    45:10,12,14
day 2:18 5:2 10:25 15:3
    27:18 33:4 65:17
days 42:25 43:7 45:16
    de 52:5
deal 6:17 7:1 12:17
    14:10 29:1
dealing 54:23
dealt 49:5
Dearborn 3:17
death 39:25
debate 13:13 14:3,24

21:21
decade 42:25
December 36:4 59:2
deception 20:5,9 23:24
   33:17,24 40:12
deceptive 24:7 25:10
   28:23 43:13
decide 20:23
decides 27:8
deciding 56:25
decision 17:3 47:8
decisions 6:20 8:10
   10:14
defendant 21:17
defendants 5:18 6:8
   22:5 29:23 30:22
   31:24 32:25 34:6,12
   38:16 45:25 48:15
   54:12,21 56:19
defense 10:14
defer 56:25
deferred 54:21 56:20
define 24:1
defines 7:4 13:8
defining 22:1
definition 13:11 14:1
   21:22,23 26:20 57:19
definitions 14:6
Delaware 24:9,11,13
demonstrating 46:1
denial 16:4
denied 15:20,23 16:1
   18:10,17,21 56:19
deny 29:23
denying 14:24
depend 25:11
Des 2:7 17:15,16 27:6
designed 20:17
despite 28:10
deter 25:9
Dey 3:9 5:18,20
Dickstein 2:8
dictionary 13:15 26:18
difference 10:17 64:11
different 8:18 27:2
   28:12,22 39:2
difficult 40:10
direct 48:25
directing 61:23
directions 28:12
directive 21:6
Director 4:10 17:17
disaggregate 56:12,15
disagree 11:16 60:25
   61:20
disclosed 40:9
discontinued 59:14,16
discovery 7:15 11:25
   28:17 29:7,25 30:1,4
   32:10 38:9,23 40:4,20

41:2 46:8 52:7,21
   53:9 56:21 63:5
discuss 26:14
discussed 7:18
discussion 15:10,14
   16:9 17:11 47:7 64:9
disease 49:17,24 50:25
   51:21 52:24
disease/ESRD 50:10
dismiss 6:21 7:11 10:15
   10:23 12:11 14:15,25
   18:15 29:23 38:11
   39:14 41:19 49:5
   53:21 59:18,20,23
dismissal 18:12 49:14
dismissed 9:5,10,13
   18:10 45:25 47:8
   59:9
dismissing 46:2,5
dispositive 25:12
dispute 49:22 51:1
   55:25 57:13
disputed 57:5
distinction 23:13 54:11
distinctions 13:22
distinguish 22:6
distinguished 26:22
distribute 23:10
district 1:1,1,9,13,23
   18:10,11,17,18,20
   26:2 28:10 63:12
   65:3,4
diversity 27:5
division 2:6 4:10 16:6
   17:17 24:20 51:9
docket 56:13 60:3
doctrines 7:20
documentary 30:13
doing 15:4,4 19:16 30:4
   38:19,25
Donnelly 2:10
Door 25:5,5
Dornbush 3:11 5:21
dozens 44:5,6
Dr 30:16
dreamed 31:14
Dripping 2:2
dropped 7:25 9:22
drug 35:16 41:19 42:23
   43:5 44:9 45:14 46:1
   52:7,7,11,12 57:10,14
   57:14,15 58:3,6 60:23
   62:4
drugs 29:25 32:11
   35:21 36:16,18 42:9
   42:11 43:3,4 44:5,7
   44:16,18 45:5 46:16
   46:23,24 48:19 55:12
   55:14 57:21 58:17,20
   58:25 59:1,5,13,13

61:13
Drye 3:9 5:18,19
dunk 61:12
duty 48:7,9
D.C 2:8,12,23 3:5,13

_____

E
E 2:1,1,6,10,24 3:1,1,19
   4:1,1 65:1,1
eager 31:6 63:11
earlier 56:19
early 23:23
earth 29:4
Ebbs 3:11 5:21,21
effect 31:20 38:16
efficient 29:18
effort 29:13 51:14,16
eight 59:13 60:3
either 47:10 52:19 60:8
   63:12
elements 47:14 49:8
   57:18
Eli 2:23 5:7 42:20
eligible 57:8,9,15 58:5
   59:25
eminently 61:23
emphasize 9:23
employ 21:18
employment 20:8 21:8
enacted 22:11 23:23
Endo 2:13 4:22 53:19
   54:5,11,14 55:11,21
   56:2 57:7 59:8
endorse 54:20
enforce 25:1,5
enforcement 20:17
enjoining 7:11
enjoy 33:12
enlargement 26:25
enrichment 7:8 27:17
entered 29:24 39:20
entities 13:12
entity 13:9
Epo 52:15
Epogen 49:15 50:2,8,15
   50:24 51:2,6,21 53:6
equated 9:17
equation 31:16
equitable 20:21 21:11
   25:22 27:14
equity 21:9
equivalent 10:2 18:23
   57:16 58:3,7 60:21,24
   61:2,3
equivalents 10:4 57:22
   59:15
Erica 2:20 5:4 47:5
especially 7:25
ESQ 2:2,2,4,6,8,10,12

2:14,16,18,20,22,24
   3:2,4,4,6,8,8,11,13,15
   3:17,19
ESRD 49:16
essentially 6:13,19 7:12
   16:15 62:5
established 47:10
et 6:24
evaluate 56:24
evaluated 58:6 61:3
event 40:17
eventually 63:9
everyone's 30:7 53:16
evidence 10:18 11:3
   14:19 30:13,19 43:12
   46:4
exactly 31:22 45:6
example 48:24
exceeds 46:25
excellent 54:25
exclusively 25:16
Excuse 10:22 43:23
exercise 58:13,16
exhibit 43:6,19 44:12
   44:22,25 45:4,10
   46:15,23 47:15 48:18
   55:12,15,15,16
exhibits 35:3
exists 17:5
expected 14:14
expedited 29:24 52:19
expenditure 22:12
expenditures 51:20
expenses 28:16
experience 48:23
expert 30:10,12
experts 29:8 30:9
explain 16:8 51:4
extension 53:8
extent 47:12 51:25
extraneous 30:23
Eye 2:8

_____

F
F 65:1
fact 10:25 14:10 18:7
   19:15 20:12 21:18,19
   21:23 23:16 29:7
   31:11,14 34:19 36:2
   38:4,12,18 46:10
facts 55:21 56:2
fail 57:4,4
failed 54:1
fair 39:1 46:19 60:22
fairly 57:11
fairness 31:9
faith 61:16
falling 63:3
false 16:21 20:10 24:17
   25:14,20 54:1,5,5

familiar 41:22 54:22
family 25:3,6 63:25
   64:2
far 27:5 31:5 40:12
   47:16,18
favors 28:8
federal 3:19 8:2 11:12
   17:1,3 23:22 26:2
   28:10 29:1 37:5
   49:19 50:17 54:19
   56:12 63:17 65:8,22
fee 13:4,6
feel 8:3
feels 34:2
fees 21:5
Ferris 2:22
fifteen 14:4 44:17
fifty 35:24
figure 23:3 39:15 52:19
   61:11
file 19:14 21:10 46:14
   61:12
filed 11:7 12:16 17:24
   31:15 34:3 45:5
   63:17
filing 12:14
find 22:4 56:14
findings 12:2 59:21
fine 27:22 32:24 35:11
   43:17 61:22
firm 4:6 41:9
first 10:13 17:11 29:2
   31:12,21 47:12 48:5
   57:18 59:6 60:16
   61:6
fit 27:17
five 59:13
flat 13:4,6
flesh 59:11
fly 30:5
Flynn 15:3 16:8
focus 11:25 20:16 25:7
   35:16 57:18
focused 15:8
focuses 20:14,14
Foerster 2:24 5:8
Foley 2:14 4:23
folks 13:3 27:11
follow 15:25
followed 64:12
footnotes 11:21
foregoing 65:9
Forest 3:12,12 5:22,22
forever 40:21
formal 62:1
formula 38:21
formulaic 48:21
forth 47:14 49:21
fortune 27:6
forward 25:15 27:4,14

27:19 28:17 37:2
38:17 39:6 40:18
63:18
found 37:12,13
four 45:5
fourth 39:6
four-month 46:25
Fox 3:5 5:11,13
Francisco 2:25
fraud 7:4 12:24 13:1
14:12,12,17,21 15:15
18:1,13,15 20:3,5,10
20:18 22:14,20,24
24:5,8,10 25:15 27:15
28:21 32:22 47:13,14
48:4,4,8 49:8 55:10
55:13,18,20 56:1,20
58:19 59:7,11,13
60:15
fraudulent 10:8 47:16
48:12,18 54:13
front 63:8,19
frustration 30:21
FTC 24:1
FUL 29:8,10,13,21,23
48:18 54:23 55:4,5,10
55:13,18,20,23 56:1,3
56:20,23 57:6,8,10,14
57:15 58:5,19 59:7,10
59:13 60:15,23 62:4
fulfill 36:20
full 14:16
fully 34:21 61:20
FUL-designated 29:25
function 50:18
fund 22:13,18
funds 22:12
further 56:21
F-U-L 55:4

**G**

G 4:1
Gelhaar 2:10,10 4:20
4:20
general 2:6 4:9 14:16
14:20 17:21 18:24
20:4,20 21:6,24 22:13
22:17 27:13 28:9
34:21
generally 13:17 24:6,20
33:3 55:11
General's 4:9 17:15,24
19:16
getting 29:7 53:16
give 57:2
given 35:2 42:4 48:21
52:17 57:7,9 58:3
Glovsky 2:22
go 8:11 13:23 14:1 18:9
20:6 27:4,13,19,25

28:17 29:12 33:20
35:13 52:6 58:8 60:1
60:6 61:14 62:21
64:7
goal 35:24 63:9
goes 21:12 32:7 39:23
45:15 57:21
going 6:13,16,19 7:2,7
7:25 8:17,23 10:17,21
10:23 11:1,3 12:1,13
27:4 28:10,21 30:5
31:17 32:9,12,19
34:15 35:12 37:1,4
38:8,9,17,22 39:6
40:18,19,25 43:12
58:2 60:13 62:7
63:16,19
good 4:17,21 5:17 6:2,5
7:11 10:24 12:19
23:13 30:8 41:5
42:16,19 55:2 61:16
61:19
good-faith 40:23 43:1
government 11:12
21:25 36:10 37:6,20
49:19 63:3
governmental 13:9,11
Gray 3:15 6:3
Great 64:16
Greenstone 2:21 5:5
guess 53:8
guidance 42:24
gut 61:7

**H**

H 3:2
hand 14:5 65:16
handful 29:25
handled 11:23
handwritten 15:23
16:4
Hank 5:10 49:13
happened 8:2 12:16
31:10,15 48:2
happiness 64:2
happy 53:19 56:13
hard 23:3,5 32:12
harm 15:18,19,21,22
18:3
Hartman 30:16 46:5
Hartson 3:2 5:10
hate 27:6
head 15:14
hear 6:14 27:9 28:13
52:5 55:23
heard 4:4 10:18 30:18
32:21 33:9
hearing 1:8 16:10 22:3
63:7
heart 20:7

heels 60:8
Helen 15:6
help 8:11
hereunto 65:16
hesitation 28:9
Hoag 2:14 4:23
Hogan 3:2 5:10
hold 44:15,15 45:2 46:2
46:2
home 63:11,12
Honor 4:17,21 5:11 6:2
8:7 9:3,8,12 11:6,16
12:5,9 13:18 14:9
15:13 16:2,17,22 17:2
17:8,18 18:22 19:14
26:12,13 27:23 28:5
29:5,16,22 30:6,20
31:7,20,22 32:15,20
33:2,12,23 34:10
35:11,18,21,23,25
36:1,7,12,18,20,25
37:14,17,24 38:3,15
39:5,12,18 40:3,5,11
41:5,6,20 42:18,19
43:16,18,22 44:1,6,11
44:20,25 45:1,4,10,12
45:18,18,20,24 46:7
46:14,19,21 47:1,4,5
47:20 48:3,13,14 49:7
49:13 50:25 51:11,16
52:3 53:2,14,17,19,20
53:25 54:4,10,19 55:1
55:3,10,16,19 56:8,10
57:2,4,13,19,23 58:11
58:15,19,23 59:6,11
59:19 60:9,14,22,25
61:18,22 62:2,12,16
62:19 63:2,7,13,23
64:5,15,17
HONORABLE 1:9
Honor's 42:4 48:23
49:3
hook 48:4
Hoover 2:7
hoped 36:6
household 25:3,7
Hovan 2:4 4:15,15
Hubbard 3:13 5:25
huge 30:19 62:8
Hughes 3:13 5:25
Humalog 45:11,12,13
hundreds 57:21

**I**

idea 28:14
identifies 50:12 55:17
identify 4:4
Illinois 2:19 3:17 13:19
14:12,24 15:10,15,16
16:5,5,6,11,13 23:19

23:21 24:4,9,14,15
28:9 34:18,20,21 47:7
47:8,9
impacts 31:24
import 12:2
important 9:11 22:6
24:25 32:25 34:2
imported 38:20
inaccurate 37:23 60:19
inappropriate 12:3
inclined 40:3
include 7:5 13:8,10,14
14:4 21:25 22:2
26:19 43:12 46:15
52:23
included 8:12 13:12
36:23,25 48:18
includes 7:4 13:20,23
13:25 21:21 24:22
26:22,25
including 17:25 35:24
37:6 49:1
inclusive 65:10
incredibly 27:1
incurred 25:2
independent 37:10
individual 6:11 19:17
35:8 53:20 55:6
59:10
individuals 6:14
indulgence 55:7
Industry 1:4 4:2 65:13
inflated 47:17 48:16
52:1
inform 7:21 44:3
informal 62:1
information 9:14 12:15
25:19 31:5,7 36:11
37:5
injunctions 17:10
injunctive 20:20,25
21:2
injured 19:21,25
injury 20:22 23:4,5
insofar 37:1
instructions 42:21
insulin 45:14
insures 36:15
integrity 36:9,14,14
41:16
intended 55:3
intends 25:9
intent 34:1
intentional 20:10
interest 21:16,18
interested 12:20 34:23
63:3
interim 31:10
interjecting 41:10
International 2:9,11

3:15 4:18
interpret 16:3
invoked 33:6
involve 6:13
involved 12:4 17:10
51:14
involving 31:12
Iowa 2:3,5,7 4:7,11,14
4:16 6:18 7:3 8:1
10:19,19 12:14,25
13:9 14:7,17 16:14
17:5 18:8,11,19 19:17
19:18 22:1,7,16 23:20
24:15,18 25:4 27:8
29:19 30:4 31:19,20
31:22 32:22 34:2
35:24 36:3,13 37:6,8
38:4 39:21 40:16
41:17 42:11 44:18
48:16 49:2,21 51:1,2
51:3,5,20 56:15 63:4
63:17,19,19
Iowa's 4:9 33:24 37:18
48:7
Iowa-specific 10:12
issue 6:23 7:7,20 8:4
12:22 18:9 25:24
26:14,16 29:1,8 30:8
34:19 35:21 38:10,24
39:13 42:11,20 44:18
48:16,19 55:5,6 56:25
57:3
issued 35:1
issues 4:19 6:11,13,14
6:15,16,17 7:2,9,24
10:12 13:6 55:24
56:21
issuing 17:10
items 25:2,6

**J**

J 2:8
Jackson 2:8 3:4 4:17,18
5:13 8:7,9,9,25 9:23
10:1,10,12 11:6,16
12:5,9,12,21,24 13:18
14:9 15:1,6,19,22
16:2,17,19,22 17:2,8
26:13 27:22 28:4,18
29:5 35:11 62:19,23
64:17
Jackson's 54:20
jack-up 31:13
Jacques 3:4 5:11 46:21
James 2:2 4:13
Jersey 24:9,12,13
Joanne 2:2 4:6
John 3:13,15 5:24 6:2
29:5
Johnson 44:2,2 50:9,9

50:11,11
join 42:14
joinder 59:9
joint 42:15 54:21 59:9
  64:7
jointly 62:21,25
Jonathan 2:12 4:21
  53:19
Jones 2:18 5:2
JOSEPH 3:2
JR 2:2
judge 1:9 6:5 14:24
  15:3 16:8 17:1,3,9
  39:20
judges 26:2 28:2
judgment 10:16 11:23
  22:15,24 23:1 29:9
  49:6
judgments 21:7
July 27:24 56:4,7,17
  63:21,24 64:3
June 1:15 30:2 65:17
jurisdiction 18:25
jury 63:19
justice 28:6

_____ K _____
Katy 3:19 6:7
Kaye 3:6 5:15
keep 13:1 32:25
Kelley 3:9 5:18,19
kidney 49:17,24
Kirby 2:2,4 4:7,13,15
knew 11:3 31:14,17
  40:13 49:1
know 6:16 10:22,25
  11:1,10,22 12:4,14
  18:24 19:9,19,22,23
  19:24 24:2,3 27:17,24
  28:1,15,24 30:9,22
  31:11,15 32:2,24
  37:25 38:25 40:16,21
  46:13 47:25 51:18
  52:10,11,13,14,14
  56:9,11,13 58:12
  59:22 60:7 61:7
  63:10
knowledge 7:10,19
  10:13,14,18 11:18,18
  12:6 28:20 48:25
knows 55:12
Koski 3:19 6:7,7

_____ L _____
L 2:6,12 3:11
Laboratories 3:9,12
  5:23
lack 20:15
lag 63:6
lagging 63:4

language 21:12,15
late 17:24
launched 39:4 40:2
law 6:18 8:1 12:1 16:5
  16:6,11 20:17 22:20
  25:8,8,15,17 27:15
  28:7,21 38:13 41:9
  55:25 57:12
lawyer 15:4
lawyers 29:14
learned 9:17 47:24
lease 20:12
leash 27:15
leave 16:15 46:15
Lee 1:22 65:8,21,22
left 46:22
legislation 16:24
legislature 12:18 13:24
  17:1 22:22 23:16
lest 36:11
let's 9:20 27:21 29:12
  39:15 62:14
Levin 2:22 5:6
Lewis 2:20 5:5
Lexington 2:17
liability 31:24 39:10,12
light 13:18 27:2 34:2,4
  34:5 37:21 46:8 49:2
likes 28:11
Lilly 2:23 5:7 42:20
  43:20 44:5,7,17 45:4
  45:5,8 46:10,11,15,22
Lilly's 43:19
limit 25:6 54:20
limitation 27:1
limitations 7:17 11:22
  32:13,21 33:5,6,10
  34:9,16
limited 12:6 49:14
  56:22
Limits 8:2 29:1
line 6:25
list 48:25 55:16 58:23
  59:13,24
listed 59:14,15,16 60:5
literally 26:24 40:14
litigated 34:11 39:25
litigating 12:3 29:13
litigation 1:5 4:3 29:12
  65:13
little 8:20 25:19 29:2
  59:12 61:21 62:10
LLP 2:2,4,8,10,12,14
  2:20,24 3:2,5,6,9,13
  3:15,19
locate 19:6
lockstep 63:3
Lodgen 3:19 6:7
long 43:21
longer 43:20 46:9

look 8:19 13:14 16:11
  21:23 48:22 49:24
  58:25 61:16 63:18
looked 13:15 22:2
  26:18
looking 17:7 38:1 42:6
  48:24 58:23
lose 12:8
losses 25:2
lot 27:25 35:9 47:24
lots 28:16
love 15:24
lower 48:17
lowest 29:11
LP 2:17
Lupron 35:22 36:2,3
  36:17 37:7 39:7,19,25
  40:6,20,22

_____ M _____
M 2:2,18 3:13
MA 1:24
maintain 40:5
Maloney 3:8 5:19,19
management 7:22
  34:15 63:21 64:7,11
manager 11:14
manufacturer 32:8
marked 48:1 49:1
market 2:21,25 49:17
  50:7 51:9
marketing 53:9
marketplace 17:12
  20:6,9 25:9,10
markets 51:10
marking 48:5
markup 31:18,21 32:5
Maryland 3:3
Marzilli 1:22 65:8,21
  65:22
Massachusetts 1:1,14
  2:10,15 3:15,19 65:4
massive 62:6
material 30:23
materials 31:3
matter 4:8 10:23 12:1
  55:25 57:12 60:12
maximum 9:10
McInerney 2:2,4 4:7,13
  4:15
McKesson 31:12,21
  32:7
MDL 1:4 50:2 63:6
  65:12
mean 7:13 8:19 9:16
  12:18 14:3 19:21
  23:1,2,17 25:14,22
  27:11 28:17 31:8
  32:9 44:3 47:24
  51:17 52:10,17 62:8

63:9
means 13:14,23,25 14:6
  20:23 21:22 26:19,22
  26:22,23 58:7 62:2
meant 9:16 22:23 37:19
mechanism 54:23
median 42:22 43:1
Medicaid 13:2 31:4
  36:16 50:1 51:3,5
  63:8
Medicare 13:4 36:15
  49:25 50:3
Medicare/Medicaid
  11:11
meet 8:13
meets 57:11
Melaugh 2:24 5:8,8
  53:13,13,17
Melissa 2:16 4:25 41:8
memo 57:20
memory 58:24
merchandise 20:12
Merck 3:14 5:25
Michael 3:8 5:19
mid 17:23
mind 6:17 7:7 13:1
  32:25
mine 15:24
minimis 52:5
minimum 40:8 42:6
Mintz 2:22 5:6
minute 64:8
minutes 55:7
misimpression 44:8
misled 9:16
misrepresentation
  20:10 48:8
mistakes 62:5,8
misunderstanding
  44:11
model 23:22 24:7,8,10
  28:2,11
modeled 24:4
models 23:21
Moines 2:7 17:15,16
  27:6
moment 32:22
moments 42:5
Monday 30:2
monetary 20:24
money 22:17 29:12
  30:4 51:14,15 52:20
  62:6
moneys 21:3,16
months 39:9
mooted 37:19
morass 55:23
Morga 2:20
Morgan 5:4
morning 13:16 19:22

Morrison 2:24 5:8
motion 6:20 7:10 10:19
  10:23 12:10 14:14,24
  15:3 18:6,7,14 29:23
  38:11 39:14 41:10,11
  42:15 43:19 46:15
  49:5,6,14 53:20 56:19
  59:9,10,17,20,23 60:1
  61:13,14
motions 1:8 6:11 10:15
  11:23 29:9 30:23
move 9:21 11:25
moved 41:19
moving 8:6
multiple 6:15
Mylan 3:9 5:18,20

_____ N _____
N 2:1 3:1 4:1
name 8:8 17:17 41:8
narrow 42:20 59:4
Nathan 3:6 5:15
natural 19:24
NDC 55:13 57:10,14
  59:1
NDCs 55:11,14,17
  58:20,25 59:12,14
  60:15
necessarily 17:4,9
necessary 21:7 58:4
  59:20
need 7:1,23 8:23 27:12
  35:8 48:6 49:11 62:6
needn't 33:21
needs 47:14 48:9
never 8:4 14:19,20 33:9
new 2:4,4,17,17 3:7,7,9
  3:9,11,11 6:17 8:3,16
  9:7 12:22 24:9,12,13
  29:3,11,22 30:12
  44:12 48:5 56:14
  57:1,3 59:23 60:2
newspaper 12:16
nexus 31:23
nice 64:10
note 9:12 24:25 33:2
notes 58:25
notion 9:15
notwithstanding 30:22
Novartis 3:7 5:15
number 17:24 23:20
  52:17 55:17 56:22
numbers 60:18
numerous 6:11
N.W 2:8,12,23 3:5,13

_____ O _____
O 4:1
objection 26:11 29:19
obligation 37:4

obligations 36:20 37:1
37:19 38:6
obtained 21:17 46:9
obviously 26:14 27:1
42:14 47:24 48:23
51:7 60:9,22
occasion 51:3,6,25 52:6
occur 51:5
occurs 51:4,5
October 11:7
offered 7:11
office 2:7 4:10,11 17:15
17:24 19:16
Official 1:23 65:8,22
Oh 16:17 32:23 41:21
54:8
OIG 37:11,21
okay 6:9 10:11 11:6
12:5,9 19:2 41:4,13
42:16 44:23 45:9
46:19 53:7,15 54:9,16
55:9 58:8 63:9 64:6
old 13:3
omission 25:8 48:8
omissions 20:11,15
once 61:21
ones 32:6 59:24
one-line 16:4
one-page 16:10
one-sentence 15:23
open 7:3,6 26:9
open-ended 13:17
26:20
opinion 14:25 19:4,5,7
64:11
opposed 23:9
opposition 43:18 60:2
opt 39:21
oral 34:18,24
Orange 57:23,25 58:7
58:12 59:2,14 61:4
order 7:18 15:2,23
16:11 17:1 54:22
55:19 56:1,4,7,17,18
57:6,13 58:5 63:21
64:7
ordered 10:5 56:22
orders 21:7 64:11
organization 37:11
original 21:23
Ortho 50:11
outside 36:12 51:6
overpayment 52:1
overrule 16:4
overwhelming 7:13

P
P 2:1,1,2 3:1,1,15 4:1
package 60:17
packet 57:17

Page 46:23
Pages 1:5 65:10
papers 36:3 39:20
41:12 49:16,21 50:12
53:14 54:15
paperwork 59:23
Paragraph 36:13
parallel 14:25
parens 15:21 18:4 23:1
23:4
parentheses 64:13
Park 3:7,9
parse 23:5
part 23:23 27:7 30:21
32:8 34:24 50:3,6,15
52:23 54:4
participant 11:11
participants 11:9
particular 13:10 33:1,7
57:3 61:13
particularity 6:24 8:14
10:3 56:24
particularly 34:2 37:20
48:20
parties 7:20 23:11
parts 49:20
party 8:6
passed 40:14
patent 52:12
patriae 15:21 18:4 23:1
23:4
patterned 23:19
PATTI 1:9
pay 13:4
payments 53:4
payor 38:19
peace 36:1,1,6
penalties 21:1
pending 56:21
Pennsylvania 2:21,23
people 11:9 14:4 27:25
35:9 49:11 56:13
percent 7:12,15 11:2,2
11:4,4,4 30:11,14
31:16,21 32:3,3,11
39:12 42:23 43:6,9,13
44:4,7 45:7,15 46:24
46:24 47:1,1 48:1,6
percentage 31:25
perfect 12:15
period 42:23 46:25
56:22 62:24
periods 43:20
permitted 15:16
person 7:5 13:8,11 20:9
20:13 21:8,16,19,24
24:2
personal 25:3,6
personally 26:13
persons 12:25 19:17,25

20:22,23 21:18
persuade 12:14 32:13
Peter 2:10 4:20
petitions 18:1
Pfizer 2:21 5:5 47:6,8
47:10,11,13,18,19
48:4,12,19 49:2 54:3
Pharmaceutical 1:4
2:19 4:2 65:12
Pharmaceuticals 2:13
2:15,17 3:12,16,20
4:22 5:16,22 53:19
Pharmacia 2:21
pharmacy 9:14 11:14
Philadelphia 2:21
Philip 3:8 5:17
phrase 10:4 21:18
pick 25:14 64:14
piece 50:7
pieces 50:15
place 3:15 63:11 65:11
plain 28:8 48:20
plaintiff 14:10
plaintiffs 9:1,11 33:12
plaintiff's 42:21
plead 46:9 47:10 54:1
57:6
pleaded 31:19 49:8
pleading 7:1 10:7 15:9
55:6
pleadings 48:22 52:16
60:3 61:25
please 4:4 5:24 35:16
pled 6:23 48:12,14
55:13
point 9:23 19:12,13
22:9 28:7,12 33:8,13
34:11 35:7 40:4,13
44:16 50:14 51:23
52:9
pointed 34:1 40:5
points 32:19 33:16
35:15 47:6 59:6
Polk 2:16 4:25 41:9
Popeo 2:23
Porter 2:12
position 19:14 37:18
38:3 46:8
possible 28:16 63:10
possibly 11:12 40:11,11
50:12
practical 61:24
practice 18:6,7 21:17
33:18
practices 20:9 21:9
23:25 24:7 28:23
33:24
precedential 19:4,9
preclusion 7:21
preclusive 38:16

predating 7:17 42:1,2
prejudice 9:5 43:14
prepared 15:2 62:1
present 11:20 43:12
presented 38:15
press 40:24
pressing 25:15 37:15
37:16 60:20,21
presume 22:21
pretense 20:10
pretrial 63:18
pretty 59:5
Prevacid 35:22 36:18
36:23,25 37:2,3,3,7
38:1 39:3,8,16,25
41:1,2,3
prevail 21:5
prevent 20:5,17 21:7
previous 6:10
previously 10:5 42:21
price 1:4 4:3 8:12 9:1,4
9:6,18 29:11 36:16
37:5 43:2 48:25,25
55:22,22 56:3 57:7,8
57:9 65:13
prices 38:7,17 42:22
48:14
pricing 13:5 36:10 37:1
37:20
primary 26:19 39:16
principal 9:12
prior 6:20 7:2 8:10 9:2
10:14 14:16 48:20
private 6:22 31:6
probably 19:6 21:19
28:7,16 52:11
problem 40:2 56:23
problems 37:12,13
39:24 40:17
Procedural 15:11
proceed 33:3 40:8
proceeding 27:13
proceedings 21:11
65:15
product 49:15,15
products 2:19 46:10,11
49:23
programs 36:16,17
prohibited 21:8
promise 35:19,20
prong 12:17
properly 37:10 55:20
property 21:16
proposal 54:21
propose 62:21,25
proposed 44:12
proposition 57:4
prospective 36:6
Protection 2:6 4:10
17:17

protocol 64:12
prove 27:16 28:19
provide 25:19 28:5
36:10 37:5
provided 39:5 43:20
49:23
provider 9:14
providing 37:23 39:4
41:3
provision 21:6 38:17
42:5
provisions 23:24 37:18
publicly 59:2
published 29:11 56:2
publishing 48:1,15
pun 54:25 55:2
purchased 25:2,3,6
Purdue 5:9 53:13
purposes 11:24 25:4,7
61:2 63:18
put 22:18 44:19 50:15
61:5 64:3,12,13
puzzle 50:16
p.m 1:15 64:18

Q
quantities 57:16
quarter 39:6 41:18
43:22,24,25 44:1
46:11
quarters 44:4
question 7:3,6 19:11
27:3 31:23 33:3,21
38:4,12,13,18 56:24
57:9,10 61:2
questions 25:25 37:13
quick 59:5
quite 6:12 25:21 26:6
31:17 41:22

R
R 2:1 3:1 4:1 65:1
raise 14:11 34:12
raised 29:3 34:12 53:20
55:5 57:3
random 51:13
rapidly 29:7
Raskin 3:17 6:5,5
rate 49:19 50:3,5,17
reach 59:21
read 8:20,21 15:7 19:5
20:6,20 22:9 30:25
58:8,9
reading 19:20,22 28:8
real 25:24
realistically 35:12
really 8:4 9:22 22:10
25:22 27:3,8 28:17
38:10 49:20 50:18
52:20 54:14 61:6

reargue 35:19
rearguing 35:15
reason 9:12,13 34:16
    39:22 63:6
recall 50:1,8 52:8
receipt 22:13
received 6:11 31:4
recognized 9:9
record 4:5 11:5 53:5
    64:7,9 65:15
recorded 48:14 65:10
recoup 17:22
recoverable 34:20
recovered 14:17
recovery 19:23
Red 58:10
redistributes 23:2
reduced 65:14
Reed 3:13 5:25
refer 20:16 36:12
referenced 25:8
refine 40:19
refinement 41:4
reflected 16:10
regard 34:18 37:16
    42:5,7 44:8
regarding 10:3,14 12:6
    32:20 34:18 51:22
regulation 49:21,22
    57:12 61:4
regulations 50:1
reimburse 51:5
reimbursed 36:17
    49:18,25 50:13,16,17
    51:3 52:10,16
reimbursement 10:20
    38:20 50:21,22
reimbursements 51:23
    53:6
reimburses 48:16
relate 54:19 56:14
related 41:11 52:23
    55:24 57:14
relates 10:5
relating 23:24
relationship 13:5 48:21
release 36:2 37:3 39:7,7
    39:23 40:6
released 37:2
relevant 32:6 34:14
reliance 7:10 28:19
    33:25
relief 20:21 21:1,2,4,13
    25:22 33:4 41:23
relieved 38:5
rely 10:17
relying 47:13
remained 18:13
remanding 63:10
remarks 29:19 34:17

remedy 16:16,24
remember 38:22,24
    56:17
renal 50:25 51:7,18,21
    52:24 53:11
reopened 43:14
repetitive 6:12
reply 35:8
report 36:15 37:1,20
    38:6 47:19,21,25 48:9
reported 19:13 47:10
    47:11 54:2,5,6 55:21
Reporter 1:23 55:5
    65:9,22
reporting 41:8
reports 37:11,14
represent 55:11
represented 60:17
representing 4:18
requesting 49:8
required 9:6 28:20
requirement 33:25
    34:1 37:21
requirements 8:14 15:9
    57:11
reserve 11:21 29:21
    62:10
resolved 7:10
resolving 52:19
respect 7:19 37:3,6
    39:18 42:17,20 48:12
    49:15 50:2 53:9,10
    54:12 56:20 59:7,10
respectful 55:4
respectfully 56:5
respond 45:24
response 14:14 52:3
rest 20:4 26:14 53:14
    59:10
restoration 21:3
restore 21:15
retained 50:10
retrospective 36:1
review 37:10
revisit 8:1
Richard 3:17 6:5
right 6:22 8:6 9:19 11:2
    12:13,22 13:25 14:7
    15:13 18:14 19:11
    20:2,7 23:12 25:21,23
    26:18 27:1,13 29:15
    30:1,15 31:22 32:4,23
    33:9,20,22 38:24
    39:17 40:15 41:24
    44:10,21 45:16,17,18
    46:17,18,20 49:10
    51:11,12,19 52:25
    53:12,16 54:3,8,8
    56:12 57:22 58:1
    60:20 61:7 62:13

ringing 51:8
Robben 3:8 5:17,17
role 50:18
roll 63:23
room 1:24 61:9
Ropes 3:15 6:3
Rosa 22:8,16
rule 15:11 31:17 53:22
    61:16
ruled 6:15 8:13 11:9,17
    14:8
rules 22:22 30:24
ruling 7:2 18:8 42:4
    52:22
rulings 7:18 12:5 48:20
    49:3
running 33:5

                S
s 2:1 3:1 4:1 65:21
sale 20:11 36:16
sales 25:5 37:5 38:17
    39:12
San 2:25
Santa 22:8,16
Sarah 2:14 4:23
SARIS 1:9
satisfactory 29:17
satisfy 9:6 48:22
saying 6:21 10:7 22:23
    23:12 31:9 32:10
    39:3 44:14 56:16
    57:22 62:5
says 16:6,12 17:5 20:8
    21:6 30:10 51:22,22
    52:16 61:4
scary 53:15
Schaeffer 3:11 5:21
schedule 63:7
scheduled 63:24
scheduling 62:15
Schering 3:16 6:4
Schering-Plough 3:16
    6:3
Scholer 3:6 5:15
Seaport 2:14,14
second 19:11 50:6,6
    53:21
section 6:22 13:24 14:1
    20:7 21:24,25 22:19
see 24:21 45:8 54:8
    62:24
seeing 28:16
seek 15:16 20:20
seeking 45:23,24 51:19
    53:4,5
seen 8:19 17:5,6 26:6
    31:5 57:1
sense 11:24 22:10 26:8
    26:17 27:10,20 62:18

63:1
separated 50:13
separately 21:2
September 41:17
serious 38:10
seriously 40:24
services 25:3 49:23
set 22:17 47:10,14
    49:19,21 57:15 58:5
    61:15 62:14,21 65:16
settled 63:12
settlement 11:24 35:22
    35:25 36:23 39:15,20
    39:22 40:7,23 41:14
    41:16 42:2,12
settlements 38:15 39:2
    59:25
settling 52:20
seven 38:25 47:24
Shapiro 2:8
share 31:6
Sherin 3:19 6:7
show 14:11 45:2 55:21
shows 51:2
sick 13:3
side 48:21 50:10
sides 7:16
Sidley 3:17
significance 37:17
significant 52:7
similar 41:23 46:22
    54:3
similarly 41:14
simple 49:20 57:12
simply 8:22 31:9 32:10
    51:23 60:18
single 17:5
sit 8:21 35:15
sitting 15:2,7 27:5
    30:10
situation 46:22
sixteen 60:17
sixteenth 14:4
size 57:17 60:17
slam 61:12
slight 30:21
slower 63:7
SMAC 7:25 9:9,22
    48:17
Smith 3:4 5:11,11
    46:21,21 47:4
Smith-Klocek 2:20 5:4
    5:4 47:5,5,20,22 48:3
    49:7
snippets 8:20
solace 61:8
sold 57:16
solely 10:18 50:22
solution 7:12 61:19,24
somewhat 41:11

soon 35:14 39:3 40:9
soon-ish 29:9
sophisticated 11:9,11
    11:15
sorry 32:23 55:1 56:8
sort 8:1 31:5 50:9 64:14
sounds 33:8,17,24
    38:13 39:16 41:22
South 3:3,17
so-called 55:22 56:3
speak 49:11
special 2:6 4:7,8
specific 50:3 54:13
specifically 10:8,20
    25:1 62:3
specificity 54:1
specifies 12:25
spend 7:6 27:6 29:12
    30:3 40:22
spending 62:6
spin 60:8
split 50:9
spread 11:1 30:11 45:6
    46:22
spreads 43:20 44:6
    46:9,10,23
Springs 2:2
squarely 34:25
ss 65:4
staff 13:13 20:4
stage 27:12 51:16 52:16
    61:25
stake 58:18
standard 40:17
stands 21:1
start 6:10 7:13,14 8:1
    8:11 32:10 35:17
    55:13 57:4 59:12
started 19:19 39:4 41:3
starts 35:15 41:24
state 2:3,5,7 4:7,9,14
    4:16 6:25 7:5,11 9:9
    9:14 11:10,12,15 13:1
    13:9,9,11 14:10,12,15
    14:19 15:16 16:6,13
    16:16,19 17:22 18:2,3
    18:18,20 19:14,15,17
    19:18,24 22:13,14,20
    22:23 23:2,2,5,9,10
    23:11 26:15 31:4
    33:6 34:21 35:24
    36:13 37:8,17 39:21
    41:17,25 47:9,11,12
    49:16 50:1,12 50:20
    54:1,12 55:10,12,20
    55:20 56:1,1 57:7
statement 22:7
states 1:1,9,13,23 23:1
    24:5,10 25:13 26:23
    35:23,24 36:7 37:6

49:23 65:3
state's 18:1 38:3 54:6
stating 21:20
statute 7:17 10:20
　11:22 13:8,19,19
　14:21 16:7,14 17:7
　20:6,7,17,20 23:13,19
　23:19 24:17,21,25
　27:2 28:8,21 32:13,21
　33:5,5,9,9,12 34:2,8
　34:16 51:22
statutes 13:10,10 24:5
　24:6 25:1,14
statutory 13:24 14:1
　22:22 26:21 49:18
　50:3,5,17
stay 38:9,23 40:4,25
　41:2 42:6,8 43:12
　47:1
stayed 40:25 42:17
staying 46:3,6
Stearns 39:20
stenographically 65:11
step 36:11 57:5
Stern 2:12 4:21,22
　53:18,19,25 54:4,10
　54:17 55:1,3,10,16
　56:8,10,18 57:2,23
　58:1,11,15,19,23 59:6
　59:19 60:25 61:22
　62:12
stick 7:2
stop 36:22
storm 12:15
Street 2:2,6,8,10,12,21
　2:25 3:3,13,19
strike 61:13
Strongin 3:11 5:22
stuff 62:7
style 53:2
subject 55:18 60:15,23
　62:4
submission 55:4,6,19
　61:1
submit 48:15 53:21
　56:5
submitted 48:25
submitting 30:12 54:15
subsection 20:8 21:10
　22:12
substantial 10:17
sue 12:20,25 14:13,21
　15:16 16:7,13 24:22
　25:22 33:20
sued 14:17 17:21
suffered 14:22 18:4
sufficient 6:24 55:21
　56:2 58:4
suggest 62:23
suggestion 30:9

suing 13:2,3,6,7 25:13
　25:13
suit 12:14,16
Suite 3:3
suits 6:10
summary 10:16 11:23
　29:9 49:6
summer 64:10,16
superior 18:23
supplement 59:3
supplemented 59:3
supplied 43:19
supply 34:22
support 30:13
supports 14:13
Supreme 15:8 16:5
　18:8,12,12 22:7,16
　23:8,21 25:24 26:20
　26:24 27:8
sure 8:23 16:22 31:8
　32:2 35:10 38:11
　42:16 45:8 53:22
　62:7
surprise 31:13
surreply 34:24 35:4
　43:18 44:13 45:22,24
　46:12
Sutherland 26:21
sweeping 36:9
sweet 33:8

**T**

T 2:16 3:8 65:1,1
Tabacchi 2:18 5:2,2
　35:18,19 36:25 39:5
　39:11,18 41:5
table 15:2
take 16:25 21:23 22:17
　25:25 61:20
takes 40:21
talk 7:23 10:13 62:14
talked 8:3 62:17
talking 7:14 23:6,7
　29:4 42:13 44:9,12,16
　52:4
talks 10:22 21:15
TAP 2:19 5:3 35:19,23
　36:10,15,20 37:5,12
　37:15 38:5,9,23 40:4
TAP's 36:14 37:1,18,19
　41:11
teapot 60:10,11
tell 8:18 15:14 16:9,19
　16:23 26:17 35:15
　53:24 58:24 60:4
telling 22:5
tempest 60:10,11
tended 19:20
term 13:16 26:25,25
terms 7:15,16,22 11:9

20:23
terrible 28:14
Texas 2:3
thank 4:12 17:13,20
　35:5,6 41:5,6 42:18
　43:16 47:4 49:7,10
　62:13 64:17
theory 47:13 48:4 54:6
therapeutic 57:16,21
　58:3,6 59:15 60:21,23
　61:1,3
thing 10:25 22:5 23:18
　28:11 39:16 51:8
　54:9 62:10
things 7:17 11:8 22:25
　24:22 56:14,14 60:3
　61:15 62:20
think 6:25 7:3,9,11,15
　7:18,21,23 8:12,25
　9:2,3,3,11 11:6,10,19
　13:20 14:2,13,18 16:3
　16:11 17:2,9,12 20:23
　22:6 26:9 27:7,9,16
　27:20,22 28:2,6,13,23
　29:2,8,8 30:4 32:10
　33:15 34:23 35:8
　36:11 38:10,12 39:24
　40:23 41:3 49:4,22
　52:1 55:25 57:5 59:4
　59:24 60:4,9 61:9,19
　62:5
thinking 16:8 19:10
　27:3,4 28:1
Third 2:4 3:11
third-party 6:25
thought 26:7 30:8
　37:22 41:11 58:9
thousand 60:2,3
three 13:15 39:9 41:18
　49:12
threshold 30:14 38:10
thrown 60:18
tighter 27:15
time 7:6 8:2,4 29:12
　30:21 32:2 37:4 40:1
　40:22 41:12 43:20
　51:4 62:24 63:24
　65:11
times 39:3
timing 34:5
Tina 2:18 5:2 35:18
tired 53:16
tobacco 17:23,25
today 7:23 9:21 34:7
tolling 7:19
ton 30:3
Toof 3:4 5:13,13
tool 20:5
Townsend 3:13 5:24,25
Track 50:9

Trade 2:14 23:22 28:23
transcript 15:8 65:9
treatment 49:17,24
trepidation 54:18
trial 10:19 18:24 19:6
　30:19 48:24 63:15
tried 58:9
trouble 39:13
truckloads 14:15
true 9:18 19:20 23:18
　29:10 34:19 36:16
　50:23,25 55:22 56:3
　65:14
truth 51:18
Truthfully 61:8
try 8:9,11 57:2 62:2,9
　63:16,19
trying 19:23 56:12,15
　61:11
turned 40:1
Twelfth 2:12
twelve 55:11 58:20,25
　59:12
twenty 60:16
twenty-one 19:15
twenty-three 55:11
　58:20,25 59:12 60:15
　60:17
two 13:22 27:25 34:23
　35:21 46:23 47:6
　49:11,17,20 50:15
　52:18 53:20 57:18
　59:1,5,6 62:20 63:20
Twombly 15:9
two-week 62:24
types 21:4
typewriting 65:14
typical 42:22 43:1
typically 7:10 48:1
　49:25
typology 60:24

**U**

UDAP 24:6
uncomfortable 27:17
unconscionable 30:11
　32:8 46:4
understand 10:24
　12:12 16:1,2 17:8
　25:16,24 29:2,6 30:17
　30:20 36:22,23 42:12
　52:22 54:6 56:23
　61:21
understanding 14:7
　63:13
understood 30:6 32:15
　61:9 62:10,12
unfair 12:17 20:9 23:24
　24:6 25:10 28:23
　33:17,24 43:13 46:4

unfairness 40:12
unilateral 31:13,24
　32:5
unique 6:13,14
United 1:1,9,13,23
　26:23 35:23 36:7
　65:3
units 50:4,22
universe 55:13
unjust 7:8 27:16
unlawful 20:11 21:17
unpublished 19:5
unusable 56:16
Upper 8:2 29:1 54:19
use 14:21 16:6,12 20:8
　21:8,19 24:20
useful 19:8,9
uses 13:24,25 50:12
usual 48:17
usually 11:23 26:25
Utah 63:10
U.S.C 6:22

**V**

V 26:23
value 28:22
Venaglia 3:11 5:22
venturing 55:23
version 64:12
versus 13:20,21,23
　21:21
vetted 8:4 57:1
victim 20:16 21:14
　25:11
view 7:24 20:3 28:15
　33:9 44:16

**W**

WAC 10:2,2,4,4 13:5
　39:13 47:12,13,14,21
　47:25 48:12,21 49:9
　50:20 54:1
Wacker 2:19
WACs 47:16 54:5
wait 8:15
walk 8:17
Walnut 2:6
want 6:23 7:5 8:16 9:22
　10:13 17:10 27:24
　30:3 32:21 35:10,14
　40:21,22,23,24 42:24
　44:7 47:6 59:24 60:1
　60:4,6,8 63:21 64:1
wanted 7:15 9:23 29:1
　35:7 36:11 44:14
　61:6
wants 17:3,9 35:17
Wardwell 2:16 4:25
　41:9
Warren 3:9 5:18,20

**Warrick** 3:16 6:4
**Washington** 2:8,12,23
  3:5,13
**Watson** 3:20 6:8
**way** 1:14,24 7:21 14:8
  17:6 28:10 35:12
  37:19 42:12 52:17,19
  59:5 61:5,10,24
**week** 27:21
**weekend** 8:22
**weeks** 27:25
**welcome** 17:15,19
**went** 15:13 18:11 43:25
  44:4 63:11
**weren't** 12:3,4
**West** 2:14,19
**we'll** 6:10 26:15 51:18
  62:24
**we're** 7:14,25 10:21
  28:16 31:6 37:16
  38:22 42:6 43:11
  45:23,24 46:2,9,22
  51:19 52:4 53:3,5,14
  56:12 60:3 62:1,14
  63:14,18
**we've** 4:18 6:9 9:5 37:8
  45:19 51:25 55:5
  59:8 60:14,16
**whatsoever** 10:3 26:11
**wheelbarrows** 14:15
**whereof** 65:16
**wholesale** 1:4 4:3 10:8
  38:6 65:13
**William** 2:6,22 5:6
  42:19
**willing** 27:9
**win** 10:24
**window** 40:1 41:1,2
**wish** 53:18
**wishes** 53:3
**witness** 65:16
**Witt** 15:6
**won** 9:20
**wonderful** 64:16
**word** 7:5 13:14,24,25
  14:5 16:1 21:19 22:2
  26:24
**worded** 13:19
**words** 44:2 63:15
**work** 19:16 22:25
  24:20 38:23 61:17
  62:2,9 63:20
**world** 2:14 40:13
**worry** 30:25
**worth** 51:13,15 52:6,21
**writing** 8:11
**written** 13:19 14:25
**wrong** 27:7 61:12

**Y**

**yardstick** 7:12 46:5
**yardsticks** 7:19
**years** 19:15 38:25
  47:24
**York** 2:4,4,17,17 3:7,7
  3:9,9,11,11 8:3,16 9:7
  29:3,11,23 30:12
  56:15 57:1,3
**Young** 3:2 5:10,10
  49:13,13 50:21 52:3
  52:13,22 53:8

**Z**

**Zoladex** 41:19,21 42:1
  42:7,8,12,13,17

**$**

**$10** 50:3,22

**0**

**01-12257** 4:3
**01-12257-PBS** 1:4
  65:12
**02108** 2:10
**02110** 3:15,19
**02210** 1:24
**02210-2600** 2:15

**1**

**1** 1:5,14,24 6:21 18:1
  59:2 65:10
**1,000** 11:4 50:4,22
**100** 11:4 57:16,17
**100-count** 60:16
**10017** 2:17 3:11
**10022** 2:4
**10022-3598** 3:7
**101** 2:2 3:9,19
**10178-0002** 3:9
**1050** 3:5
**11** 61:16
**111** 3:3
**13** 42:25 43:7
**13-day** 42:23
**1305** 2:6
**132** 46:23
**1396** 6:22
**1456** 1:4 65:12
**15** 63:21
**155** 2:14
**1600** 3:3
**1701** 2:21
**1775** 3:13
**1825** 2:8
**19** 1:14
**19103-2921** 2:21
**1950s** 33:20
**1986** 10:19 16:23 52:12
**1990s** 17:24
**1997** 11:18 32:14

**2**

**2** 8:13
**2(a)** 20:8
**2:30** 1:15
**20** 11:2 30:10 31:13
  32:3,6 48:1
**2000** 11:18 12:6
**20004** 2:23
**20004-1206** 2:12
**20006-2401** 3:13
**20006-5403** 2:8
**2001** 9:13,25 10:1 12:6
  35:22 36:5 38:2 39:6
  39:7,8 40:7
**2003** 37:21 40:14 41:15
  41:17,18,24
**20036-5339** 3:5
**2005** 11:20 39:21,23
**2007** 11:7 15:9 59:3
**2008** 1:15 26:24 59:3
  65:17
**21202** 3:3
**22nd** 64:4,6
**25** 11:2 30:11 31:13
  32:3,6 48:1,6
**26** 1:15 46:24
**27** 46:24

**3**

**3** 8:13 36:4
**3:50** 64:18
**30** 7:12,15 11:2 30:2,14
  32:11 42:23 43:6,9,13
  44:7 45:7 47:1 56:4,7
  56:17
**30th** 65:17
**30.48** 47:1
**31** 44:4
**3205** 1:24
**33** 29:6,24
**331** 57:11
**38** 45:15

**4**

**4** 8:13 21:25 27:24
  41:17
**42** 6:22 57:11
**425** 2:25 3:7
**450** 2:17

**5**

**5** 8:13 31:16,21
**50319** 2:7
**537** 25:4
**555** 2:12
**555(a)** 25:5
**556** 36:13

**6**

**600** 11:4

**60601** 2:19
**60603** 3:17
**615** 15:12
**617)345-6787** 1:25
**619** 15:11,12
**64** 1:5 65:10

**7**

**7** 21:10
**701** 2:23
**714.16** 22:19
**747** 3:11
**77** 2:19
**78620** 2:3

**8**

**825** 2:4

**9**

**9(b)** 48:22 53:22
**90** 39:12
**94105-2482** 2:25