# Exhibit 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:  **PHARMACEUTICAL INDUSTRY**<br>**AVERAGE WHOLESALE PRICE LITIGATION** | )<br>)<br>)<br>)<br>) | **MDL No. 1456**<br>**Master File No. 01-CV-12257-PBS**<br><br>**Hon. Patti B. Saris** |
| **THIS DOCUMENT RELATES TO:**<br><br>*United States of America ex rel. Ven-A-Care of the*<br>*Florida Keys, Inc., et al. v. Dey, Inc., et al.,*<br>Civil Action No. 05-11084-PBS | )<br>)<br>)<br>)<br>)<br>)<br>) | |

## MEMORANDUM OF LAW IN FURTHER OPPOSITION TO THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER RELATING TO THE REQUESTS BY THE DEY DEFENDANTS FOR DEPOSITIONS UNDER RULE 30(B)(6)

Defendants Dey, Inc., Dey L.P., and Dey L.P., Inc. (collectively, "Dey"), submit this memorandum of law in further opposition to the Plaintiff the United States of America's (the "Government" or "United States") Motion for a Protective Order Relating to the Requests by the Dey for Depositions Under Rule 30(b)(6).

The Government has failed to substantiate by affidavit or evidence any burden or privilege implicated in proffering a 30(b)(6) witness on the challenged topics.  Well-established and undisputed authority holds that these showings are necessary prerequisites to the relief the United States seeks.  The Government's failure to substantiate any undue burden here is particularly telling, as the Government's objections are largely to targeted deposition topics that seek discovery regarding a few specific, identified documents.  Dey is not seeking to "plough the same fields twice," as the Government argues.  Rather, the witnesses proffered by the Government at depositions in which Dey participated generally testified to only passing

knowledge of documents at the heart of the this motion, and then only with the Government

disavowing their status as a corporate representative.

Given the inability of the Government to meet its burdens in seeking a protective order,

this Court should deny the motion for a protective order.

## ARGUMENT

## I.    THE UNITED STATES CANNOT BLOCK DISCOVERY INTO RELEVANT TOPICS BY POINTING TO 30(B)(1) DEPOSITIONS

The Government's argument that Dey should content itself with testimony obtained in the

Abbott case, particularly that of former Administrators of the Centers for Medicare and Medicaid

Services, f/k/a the Health Care Financing Administration ("CMS"), Bruce Vladeck, Thomas

Scully and Nancy DeParle, in lieu of 30(b)(6) testimony from the United States is without merit.

Those depositions are not substitutes for 30(b)(6) testimony in this action, especially where the

Government took the position at those individuals' depositions that they were not 30(b)(6)

designees.  The United States offers no authority indicating that a party can avoid proffering a

30(b)(6) witness simply because 30(b)(1) witnesses have tangentially addressed matters that may

also be topics of the 30(b)(6) examination.  Testimony taken pursuant to Rule 30(b)(6) is binding

on the party proffering the witness.  *Berwind Prop. Group Inc. v. Envtl. Mgmt. Group, Inc.*, 233

F.R.D. 62, 65 (D. Mass. 2005).  Moreover, unlike ordinary witnesses, 30(b)(6) deponents are

required "to review all matters known or reasonably available to it in preparation for the 30(b)(6)

deposition ... in order to make the deposition a meaningful one and to prevent the 'sandbagging'

of an opponent." *Id*.

Dey's concern that the United States will attempt to disown the testimony of CMS's

former administrators is real.  At the depositions of those administrators, the United States stated

that the deponents were not appearing as the Government's designees or experts, and made clear

that the Government was not offering these witnesses as Rule 30(b)(6)-designated witnesses.

Indeed, at the May 18, 2007 deposition of Nancy-Ann Min DeParle, the Government's attorney

Ms. Yavelberg stated that the Government would provide other 30(b)(6) testimony:

> I just want to make clear also that Ms. DeParle is here in her capacity as a former HCFA Administrator.  She is not here as an expert to give personal opinion testimony.  She is not here on behalf of the agency as a corporate designee.  That's obviously being taken care of in other ways.

Declaration of Sarah L. Reid In Further Opposition to the United States' Motion for a Protective

Order Relating to the Requests By Dey Defendants for Depositions Under Rule 30(b)(6)., Ex. A

(DeParle Dep., 5/18/2007, 24:17-25:3); *see also id*. Ex. B (Vladeck Dep., 5/4/2007, 31:9-18) ("I

just wanted it to be very clear at the outset of the deposition, and to state on the record that Dr.

Vladeck … is certainly not here on behalf of the agency as a corporate designee.  He's not

speaking on behalf of the agency, and he's not here as an expert witness to express his opinion.");

*id.* at Ex. C (Scully Dep., 5/15/2007, 124:14-16) ("[Former Administrator Scully] is not here as a

30(b)(6) to testify on behalf of CMS's position on anything.").  Thus, the Government's claim

that these depositions now serve as an adequate substitute for a proper 30(b)(6) deposition is

inconsistent with the position it took on the record at the prior depositions.  Dey is entitled to the

binding testimony from the United States that can only be obtained by a 30(b)(6) deposition.

## II.     THE UNITED STATES' MOTION IS ESSENTIALLY A PREMATURE ARGUMENT FOR SUMMARY JUDGMENT AND SHOULD NOT BE USED TO BLOCK NECESSARY AND TARGETED DISCOVERY

The Government's attempt to block discovery by way of relevance objections into

admissions made in two OIG reports and a set of OIG Compliance Guidelines ignores well-

settled law and essentially asks the this Court to make summary judgment determinations well in

advance of the schedule set forth in the amended CMO, which does not call for opening

summary judgment briefs until February 16, 2009. *See* Dkt. 5284 (granted June 2, 2008).  The

Court should allow discovery to proceed on the topics listed in Dey's deposition notice to allow the parties a full and fair opportunity to build their cases in anticipation of timely and informed summary judgment briefing, rather than effectively contemplate summary judgment on an incomplete record and inadequate briefing. *See Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989) ("[T]he question of relevancy is to be more loosely construed at the discovery stage than at the trial.  A clear distinction must be made between the right to obtain information by discovery and the right to use it at trial.") (internal citation omitted).

A.      **Topic 29 – 2001 HHS-OIG AIDS Drug Expenditures Report**

While the Government now apparently concedes that the HHS-OIG report mentioned in Topic 29 is not limited to AIDS Drugs, but rather contains a lengthy discussion on general issues relating to Medicaid reimbursement, it contests the relevancy of CMS's generalized understanding of pharmaceutical pricing.  However, the Government's argument is based solely on the purported irrelevancy of such generalized knowledge to the scienter element of the Government's False Claims Act claim.  *See* Dkt. 5439-2 (citing *US ex rel. Durcholz v. FKW Inc.*, 189 F,3d 542 (7th Cir. 1999).  Leaving aside the contentious issue of whether generalized knowledge can negate scienter under the False Claims Act, the Government's understanding that AWP was "a manufacturer's suggested list price" (Dkt. 5395-3, Ex. C. at 3) undermines the Government's ability to make out the justifiable reliance element of its claim for common law fraud, as it demonstrates that the Government knew or was on inquiry noticed that the published AWPs for the Subject Drugs did not represent providers' actual acquisition costs.  *See, e.g., Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 370 (7th Cir. 1988) ("In determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account; if ample opportunity existed to discover the truth, then reliance is not

justified.") (citation omitted).  This discovery will also undermine causation under all theories of recovery, as Dey cannot be said to have caused to the Government to overpay providers by its continued AWP-based reimbursement (notwithstanding available alternatives) when the Government was well aware of the disconnect between AWP and actual acquisition costs, and why that disconnect contributed to the maintenance of a pharmacy distribution network.

### B.        Topic 51 – Comment Regarding Provider Acquisition Costs Under Part D

The Government's objection to proffering a witness on Topic 51, based on Dey's purported failure to justify the burden of this discovery and the alleged "general" nature of the discovery Dey seeks continues to be meritless.  The United States is attempting to invert the well-established rules of governing this motion by claiming that Dey cannot justify the burden in seeking this discovery.  The burden is on the Government as the movant and as the party resisting discovery.  *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D.Ill. 2007)  As previously explained by Dey (Dkt. 5394 at 18-19), the Government was required to substantiate its claim of *undue burden* with "specific facts and substantiate its claims with affidavits or other evidence." Tellingly, the United States does not dispute this requirement, and has not attempted to substantiate the purported burden or explain why the burden here is undue.  Dey can only presume that the burden is relatively light, as Topic 51 seeks limited discovery relating to a report made a year ago.  *See* Dkt. 5395-5.  Rather than responding to Dey's explanation of the relevance of this document (*see* Dkt. 5394 at 4-6), the Government's rejoinder that the discovery sought relates to "general information" is effectively a concession of the Medicaid program's efforts to promote the use of generic drugs by maintaining large spreads for those drugs. Apparently it is the Government's position that it can continue to promote such use while simultaneously suing specific generic manufacturers for alleged fraud.  The anomalousness of that position is certainly a proper subject for discovery.

C.      **Topics 61 & 62 - 2003 OIG Compliance Guidelines**

The Government's relevance objections to Topics 61 and 62 are similarly meritless.  As explained in Dey's principal memorandum (*see* Dkt. 5394 at 7-8), and unrebutted by the Government, the meaning that persons in the Government ascribed to AWP is centrally relevant to this action regardless of the meaning ascribed to that term by the Court.[1]  It is irrelevant at this point whether the report underlying Topics 61 and 62 was issued by OIG rather than CMS.  Dey is entitled to develop a record regarding the development of and facts underlying the Guidelines under the liberal standards governing discovery.

III.    **THE GOVERNMENT'S ASSERTIONS OF PRIVILEGE ARE UNSUBSTANTIATED AND PREMATURE**

The Government's assertions of privilege as to topics 32, 33, 40, 42, 61, and 62 are facially insufficient.  Rather than substantiate its claims of privilege with evidence, the Government inverts the applicable standard by arguing that Dey has not made a sufficient showing to overcome the Government's assertions of privilege.  These arguments are irrelevant and seek to distract from the Government's failure to meet its burden to establish the privilege.  Indeed, the Government's inability to put forth anything more than vague speculations reflects the premature nature of the Government's motion.

---

[1]     The Court's opinion in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 460 F.Supp.2d 277 (D. Mass. 2006), does not establish any basis to preclude discovery in this action.  That decision construed AWP in the Medicare context only and is not applicable in the Medicaid context.  *See id.* at 284.  Moreover, that opinion was issued in a class action suit brought on behalf of private third party payors and individual consumers.  The Government was not a party in that action and, at the time of its opinion, the Court did not have the benefit of the extensive evidentiary record developed in this action that demonstrates that CMS understood that AWP was not an average of actual acquisition costs.  Finally, there is no indication the Court intended its decision to foreclose discovery as to a plaintiff's understanding of AWP, particularly discovery in other actions with different parties.

A.      <u>The Government Has Not Met Its Burden to Establish Privilege</u>

As the party asserting the privilege, the Government has the burden of showing by a fair preponderance of the evidence that the privilege applies.  *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004).  The Government has identified no evidence to support its claims that these topics cover privileged matters, and instead makes only incorrect and conclusory statements to demonstrate the existence of  purported privileges.  For example, the assertion that "the [attorney-client and deliberative process] privilege issues here are sufficiently obvious" (Dkt. 5439-2, at 4) with respect to Topics 61 and 62 is unsupported.  While some of the matters covered by these topics may conceivably fall within the *qualified* deliberative process privilege, others, such as the identity of the individuals involved in the drafting of the Guidelines, their understanding of AWP, and the other matters discussed in the guidelines, clearly do not.  Moreover, nothing in Topics 61 and 62 suggest that Dey seeks matters protected by the attorney-client privilege.  The Government's unsubstantiated assertions in its brief that attorneys were involved in drafting the Guidelines are simply not enough to establish the existence of a privilege that would block all questioning on these topics.

The Government's contention that "there is no dispute" that Topics 32, 33, 40, and 42 seek information protected by privilege (Dkt. 5439-2, at 5) is similarly insufficient and wrong.  In its opposition brief, Dey disputed that the various privileges asserted by the Government actually apply by pointing to the Government's failure to put forth any evidence that establishes the existence of the privilege.  That Dey did not offer evidence to demonstrate that those privileges do not apply does not mean that those privileges apply automatically.  The Government has the burden of establishing those privileges and the Government has completely failed to meet its burden.

**B.     The Government's Arguments are Besides the Point**

Instead of putting forth evidence to demonstrate that the privilege actually exists, the Government attacks the grounds on which Dey claims it needs the discovery.  For instance, in response to Dey's argument that potential due process violations associated with the Government's nine year delay in intervening in this action create a compelling need for discovery on these topics, the Government asserts that Dey cannot point to any evidence of prejudice sufficient to overcome the Government's assertion of privilege.  Setting aside that evidence in the record suggests that the Government used its nine year delay to gain an unfair advantage in the litigation, it is the Government who has not put forth any evidence to establish the existence of the privilege.

Likewise, in response to Dey's contention about the potential public disclosure of the allegations in the relators' *qui tam* complaint, the Government launches into a summary judgment-styled argument, countering the basis for a potential public disclosure defense under 31 U.S.C. 3730(e)(4)(A).  Setting aside that the Government's argument on this point is incorrect,[2] the line of argument is completely irrelevant to this motion.  The central issue is whether the Government has established that the discovery Dey seeks is privileged.  It has not.

---

[2]      The OIG report referenced in Dey's Opposition Brief (HHS-OIG, "A Comparison of Albuterol Sulfate Prices" (OEI-03-94-00392) (June 1996) (the "1996 OIG Report") does constitute a public disclosure for purposes of 31 U.S.C. § 3730(e)(4)(A) because it contains both the allegedly false set of facts in the claims at issue, i.e. the allowed reimbursement amount under the Medicare program based on AWPs published by Red Book and other pricing compendia, and allegedly true set of facts, i.e. the actual prices paid by Medicare providers.  *See* 1996 OIG Report at 2, 4-6.  This constitutes the X and the Y of the public disclosure equation adopted by this court in *United States ex rel. O'Keefe v. Sverdup Corp.,* 131 F. Supp.2d 87, 94 (D. Mass. 2001).  Moreover, the Government's assertion that its intervention cured any jurisdiction defect attributable to the relator is wrong.  In *United States ex rel. Stone v. Rockwell,* 549 U.S. __, 127 S. Ct. 1397 (2007), the Supreme Court did not address the issue raised in this case, namely whether the Government's complaint in intervention could relate back nine years to a jurisdictionally defective *qui tam* complaint to preserve claims that would otherwise be barred by the statute of limitations.  In any event, these issues have no bearing on the issue before the Court on this motion.

The relative merits of a potential defense cannot serve as a basis to preclude Dey from developing a evidentiary record to assess the merits of that defense.

      **C.**      **<u>The Government's Assertion of Privilege Is Premature</u>**

The Government's inability to set forth any evidence to establish privilege demonstrates that its motion for a protective order is premature.  The Government cannot set forth the specific bases for its claims of privilege because there are no questions on the record yet.  The preferred approach is to let the deposition proceed and allow objections to specific questions to be established in the record and then allow the court to assess the privilege assertions on a question by question basis.  That way, the Court can understand both the nature of the information sought in each question and the specific factual basis for each assertion of privilege.  Courts faced with motions for protective orders on privilege grounds prior to depositions routinely deny them for precisely this reason.  *See, e.g., United States v. Motorola, Inc.*, No. Civ. A. 94-2331TFH/JMF, 1999 WL 552558, *2 (D.D.C. May 27, 1999); *Evans v. City of Chicago*, 231 F.R.D. 302, 320 (N.D. Ill. 2005).  Alternatively, the course that the Government proposes would foreclose entire areas of inquiry based solely on the Government's unsubstantiated speculation that they may include privileged matters.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Dey's principal opposition (Dkt. 5394) to the United States' motion for a protective order, Dey respectfully requests that the Court deny the Government's motion to for a protective order relating to Topics 29, 32, 33, 40, 42, 51, 60, 61, and 62 of Dey's proposed Rule 30(b)(6) Topics and award any other further relief the Court may deem proper.

Dated: July 15, 2008                              Respectfully Submitted,

                                                  KELLEY DRYE & WARREN LLP

                                                  By: /s Sarah L. Reid
                                                      Paul F. Doyle (BBO # 133460)
                                                      Sarah L. Reid *(pro hac vice)*
                                                      William A. Escobar *(pro hac vice)*
                                                      Neil Merkl *(pro hac vice)*
                                                  101 Park Avenue
                                                  New York, NY 10178
                                                  Telephone: (212) 808-7800
                                                  Facsimile: (212) 808-7897

                                                  *Attorneys for Defendants Dey, Inc.*
                                                  *Dey, L.P., and Dey, L.P., Inc.*