UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> **THIS DOCUMENT RELATES TO:** <br><br> *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS; <br><br> *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; and <br><br> *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS | MDL No. 1456 <br> Civil Action No. 01-12257-PBS <br><br> Hon. Patti B. Saris <br><br> Magistrate Judge Marianne B. Bowler |

**PLAINTIFFS' REPORT IN ADVANCE OF
THE JULY 24, 2008 STATUS CONFERENCE**

**Preliminary Statement**

In response to the comments of the Court at the hearing on June 18, 2008, the United States respectfully submits the accompanying proposed pre-trial scheduling order and supplement to the case management order that would govern future discovery of State Medicaid agencies and partly consolidate briefing on motions for summary judgment in the three above-captioned cases.[1]  *See* Exhibit A, June 18, 2008 Motions Transcript at 32.  Plaintiffs file this

---

[1] Although Abbott Laboratories Inc. was not present at the hearing, the United States notified Abbott of the Court's consideration of the issues discussed herein, provided Abbott a copy of the hearing transcript, and discussed with Abbott the scheduling proposals set forth below.

report which includes three proposals to streamline the separate federal AWP litigations involving the plaintiffs, Abbott Laboratories Inc. (Abbott), Dey, Inc., Dey L.P,, Inc. And Dey L.P. (collectively referred to herein as Dey), and Boehringer Ingelheim Corporation, Boehringer Ingelheim Pharmaceuticals, Inc., Roxane Laboratories, Inc. and Roxane Laboratories, Inc. n/k/a Boehringer Ingelheim Roxane, Inc. (collectively referred to herein as Roxane).

## Discussion

I.      **Consolidating The Discovery/Motions Schedule**

First, plaintiffs propose that dispositive motions in the Abbott, Dey and Roxane cases be filed (1) at the same time and (2) on the same record, with consolidated summary judgment motions on cross-cutting issues.

There are three AWP cases operating under three separate CMOs before this Court involving the federal False Claims Act (FCA).  One involves Abbott.[2] *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS.  The other two cases are against Dey and Roxane. *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS (the "Dey" case), and *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS (the "Roxane" case).

Although these cases involve different drugs and conduct by different defendants, there are certain cross-cutting legal issues common to all of them.  Further, to the extent that

---

[2]  The United States also notes that there is a pending declined qui tam action against Abbott. *United States ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 07-11618-PBS, MDL 1456.  This additional Abbott matter should probably also be put on the same discovery track, for State discovery purposes, as the three cases being prosecuted by the United States.  The United States understands that Relator's counsel will attend the upcoming hearings on July 24, 2008 and will be able to address this case.

2

defendants seek to pursue defenses focusing on the government's actions or inaction, *i.e.*, government knowledge-based or statutory interpretation defenses, it is sensible and practical to insure that there is a common factual record before the Court.

In light of the Court's comments at the June 18th hearing, plaintiffs propose that the discovery/motions deadlines in all the federal FCA AWP cases be harmonized such that (1) a common factual record can be established to serve as the basis for evaluating the cross-cutting legal issues and (2) the summary judgment calendars among the cases can be consolidated to avoid duplication in the Court's consideration of cross-cutting legal issues. To meet these objectives, plaintiffs submit a proposed scheduling order. *See* Exhibit B. Roxane, Dey and plaintiffs have largely reached agreement on consolidation of the pre-trial schedule and the revised pre-trial schedule set forth in Exhibit B.[3] Abbott has informed plaintiffs that it does not want to consolidate the pre-trial schedule, operate from a unified record, or join in the state Medicaid discovery Dey and Roxane will conduct in the coming months.

## II.   Reasonable State Medicaid Discovery Limits

In addition, the Court must also consider the very substantial burdens of discovery, not only on the Court and the parties, but also on state Medicaid agencies. The burden is readily apparent by a review of the attached notice of supoena to the Georgia Department of Community Health, recently served by the Dey. *See* Exhibit C. The cumulative burden on State Medicaid agencies, whose task is to provide assistance to lower income Americans, will be substantial. The public interest suggests that unnecessary discovery be avoided.

---

[3] Counsel for Dey indicated in an email sent shortly before this filing that they "disagree with [plaintiffs] proposed prescription for briefing in the May 30 entry" of the proposed scheduling order. No further clarification was provided.

To this end, plaintiffs are providing an additional proposed supplement to the Case Management Order that would preclude or limit deposition discovery in certain states where significant AWP-related discovery has already occurred, unless the parties agree or the Court determines that additional discovery is warranted. *See* Exhibit D. In other States – where significant AWP-related discovery has not occurred – one Rule 30(b)(6) deposition and one 30(b)(1) deposition would be allowed, unless the parties agree or the Court rules otherwise.

### III.     Litigating The Medicaid Claims

The Court also asked the parties to start considering ways in which to streamline summary judgment briefing on or trial of the state Medicaid claims given the number of state Medicaid programs at issue. Although the United States realizes that the Court will allow the defendants to conduct a reasonable amount of discovery against state Medicaid agencies, the government believes that the great majority of that discovery will ultimately be recognized as futile and of little import.

Evidence from state Medicaid programs is germane to two issues: (1) establishing that defendants' false price reporting caused the overpayments at issue and (2) as a possible basis for building a government knowledge-based scienter defense.

#### A.     Causation

First, the United States does not foresee a need for testimony from each state regarding the state's reimbursement methodology.[4] This is because, by law, each state's reimbursement methodology is described in formal documentation, which is amended from time to time as changes are implemented. Thus, to qualify for federal funding, each state must submit a state plan to the Department of Health and Human Services (HHS) that expressly identifies how the

---

[4] Plaintiffs may call some state Medicaid officials at trial to provide the trier of fact some background on how these programs operated and reimbursed for drugs.

4

state will determine the estimated acquisition cost for drugs. *See* 42 U.S.C. § 1396a; 42 C.F.R. § 447.333.  If the state chooses to amend its reimbursement methodology, it must submit a State Plan Amendment to HHS for approval.  The State Plan Amendments are required for in order for states to be and remain eligible for federal Medicaid funding.  An example of a State Plan Amendment is attached.  *See* Exhibit E.  The United States will prove causation with respect to the Medicaid program in significant part through the work and testimony of the United States' damages expert, Dr. Mark Duggan, an economist and professor at the University of Maryland, assisted by the firm of Myers and Stauffer.[5]  Under the direction of Professor Duggan, and in accordance with the standards of his profession, Myers and Stauffer has assembled all available relevant State Plan Amendments from 1991 forward.  Where there are gaps in the State Plan Amendments, information about a state's reimbursement methodology has been obtained through other reliable sources.

Myers and Stauffer has summarized the state reimbursement methodologies in a series of convenient charts.  Representative examples of these charts, which have been produced to Abbott as part of the United States' expert disclosures, are attached as Exhibit F.  The entire package of charts will be provided to the Dey and Roxane defendants as soon as they can be copied and mailed.[6]  The defendants and their experts will have every opportunity to review and critique these summaries.  The summary evidence will be more than sufficient to prove causation and support a damages determination by a preponderance of the evidence.  In some instances,

---

[5] Dr. Duggan's detailed analysis has been presented in an expert report that was recently served via LexisNexis and made available to all parties.  Myers and Stauffer has decades of consulting experience concerning state Medicaid programs.

[6] The attached summaries describe the state reimbursement methodologies only through 2001 because in the Abbott case the United States seeks damages only through 2001.  The summaries will be updated to include information through the present, because in the Dey and Roxane cases the United States seeks damages through the present.

additional documentation or testimony may clarify certain features of a States' reimbursement methodology. In addition, Professor Duggan's review and analysis of State Medicaid claims data enables him to confirm or clarify a state's methodology, as well as determine the extent to which a state relied on the prices reported by the defendants.

### B. Government Knowledge-Based Defenses

Defendants' government knowledge-based scienter defenses implicate different efficiency considerations. Even assuming that a state Medicaid official's knowledge and approval could be imputed to the federal government, allowing for state-by-state trial of a government knowledge-based defense should be contingent on defendants' demonstrating a sufficient factual basis for proceeding in such a broad and time-consuming manner.

For government knowledge to give rise to a defense in a False Claims Act case, defendants must show (1) that they fully disclosed their price reporting conduct and (2) that the government approved the fully disclosed conduct. *See In re Pharmaceutical Industry Average Wholesale Price Litigation,* 478 F. Supp. 2d 164, 174 (D. Mass. 2007) (denying motion to dismiss California False Claims Act claim, noting that government approval of the particulars is necessary for a government knowledge defense); *United States ex rel. Tyson v. Amerigroup,* 488 F. Supp. 2d 719, 729-730 (N.D. Ill. 2007) (denying defendant's motion for new trial, noting that the proper test is whether the government knew and approved the particulars of defendant's conduct, and that mere acquiescence, rather than approval, by government employees is not sufficient to avoid False Claims Act liability).

Plaintiffs have sought such evidence of disclosure and approval from defendants. Defendants have produced no such evidence. If there is no such evidence, there is simply no basis for an extensive, state-by-state trial on a defense that has no basis in fact. Absent defendants making a *prima facie* case that they can and will show full disclosure of the conduct

6

at issue and government approval in each state for which the defense is invoked, there is no need for wasting briefing or trial time exploring the knowledge of *state* government officials in a *federal* False Claims Act case.

## Conclusion

For the foregoing reasons, plaintiffs respectfully ask this Court to grant the revised scheduling and case management orders submitted with this report. In addition, plaintiffs respectfully submit that there are ways to streamline litigation of the Medicaid claims that might avoid a state-by-state approach to summary judgment or trial proceedings. Plaintiffs anticipate providing a more detailed proposal on litigating the Medicaid claims in advance of the November 2008 status conference.

Respectfully submitted,

For the United States of America,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | GREGORY S. KATSAS<br>ASSISTANT ATTORNEY GENERAL |
| /s/ George B. Henderson, II<br>George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley<br>U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA  02210<br>Phone:  (617) 748-3272<br>Fax:  (617) 748-3971 | /s/ Gejaa T. Gobena<br>Joyce R. Branda<br>Daniel R. Anderson<br>Renée Brooker<br>Justin Draycott<br>Rebecca A. Ford<br>Gejaa T. Gobena<br>Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C.  20044<br>Phone:  (202) 307-1088<br>Fax:  (202) 305-7797 |

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax:  (305) 536-4101


For the relator, Ven-A-Care of the Florida Keys, Inc.,

James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL  33027
Phone:  (954) 874-1635
Fax:  (954) 874-1705


Dated: July 21, 2008

## CERTIFICATE OF SERVICE

     I hereby certify that I have this day caused an electronic copy of the above **PLAINTIFFS' REPORT IN ADVANCE OF THE JULY 24, 2008 STATUS CONFERENCE**, to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: July 21, 2008

/s/   Gejaa T. Gobena  
Gejaa T. Gobena