# Exhibit E

**STATE OF WISCONSIN**       **CIRCUIT COURT**       **DANE COUNTY**
                             **BRANCH 9**

---

STATE OF WISCONSIN,

          Plaintiff,

v.                                                    Case No. 04 CV 1709

ABBOTT LABORATORIES, et al.

          Defendants.



FILED MAY 20 2008 STATE OF WISCONSIN CIRCUIT COURT FOR DANE COUNTY

---

### DECISION AND ORDER ON PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS NOVARTIS, ASTRAZENECA, SANDOZ, AND JOHNSON & JOHNSON

---

#### OVERVIEW

Plaintiff State of Wisconsin moves for partial summary judgment against defendants Novartis, Astra Zeneca, Sandoz, and Johnson & Johnson on the liability issues in its first two claims for relief in the Second Amended Complaint premised upon §100.18(1) and §100.18(10)(b), Stats., respectively. All defendants oppose the motions, and have responded with summary judgment motions of their own. This decision will resolve only the state's motions; defense motions will be addressed in a subsequent decision.

The parties have submitted evidentiary materials and written briefs both for and against the plaintiff's motions, and no party has requested oral argument. Accordingly, the motions are ripe for resolution.

For the following reasons, the motions are denied. The court, however, dismisses **"Count II– Violation of Wis. Stat. §100.18 (10) (b)"** of the Second Amended Complaint, merging it into **"Count I-- Violation of Wis. Stat. §100.18(1)"**, as more fully explained below.

## SOME INITIAL CONSIDERATIONS UNDER §802.08, STATS

Section 802.08, Stats., provides in pertinent part:

> "(1) Availability. A party may ... move for summary judgment on any claim, counterclaim, cross-claim, or 3rd-party claim which is asserted by or against the party. ...
>
> (2) Motion. ... The judgment sought <u>shall</u> be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, <u>may</u> be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

(Underlining added).

At the outset, several considerations pertinent to plaintiff's motions arise under the statute.

First, the motions against the four defendants purportedly seek summary judgment on the issue of liability alone, and then only with respect to two of the state's five claims. Accordingly, whether or not to grant summary judgment is discretionary with the court, given the statute's specific inclusion of the word "may" for partial versus "shall" for full summary judgment. See, e.g., *City of Wauwatosa v. Milwaukee County*, 22 Wis. 2d 184, 191, 125 N.W. 2d 386, 389-90 (1963). Presumably, if there is no genuine issue as to any material fact and the law indisputably favors the movant, the court should exercise its discretion to grant interlocutory partial summary judgment on liability only in those circumstances where to do so would "secure the just, speedy and inexpensive determination of [the] action and proceeding." §801.01 (2), Stats.[1] More on this below.

Secondly, what does §802.08 (2), Stats., mean by "liability"? Of particular relevance to plaintiff's motions, does "liability" include cause? If so, the state's motions must be denied outright, because they expressly and quite candidly do not purport to resolve the causation issues under §100.18, Stats. The summary judgment statute itself is not entirely clear on this point, although it suggests that causation <u>is</u> part of "liability", since partial summary judgment is permissive in those circumstances where there remains a "genuine issue as to the amount of damages." Usually the "amount of damages" is not even a relevant consideration until causation is decided. That is to say, rendering interlocutory summary judgment on liability where only the *amount* of

---

[1] Section 801.01 (2), Stats., provides "... Chapters 801 to 847 shall be construed to secure the just, speedy and inexpensive determination of every action and proceeding."

damages remains to be determined presupposes resolution of the causation issues in the liability analysis.[2]

Caselaw is also less than instructive. In *Physicians Plus Ins.Corp v. Midwest Mutual Ins. Co.*, 254 Wis. 2d 77, 101 (2002), for example, causation was held necessary to establish liability. But *Physicians Plus* is a public nuisance case, and thus less than compelling in its applicability to our case. This is especially true considering that the Supreme Court there upheld a partial summary judgment even though the issue of causation was remanded for trial along with the damages issues. The Supreme Court thus appears unperturbed by the question raised here, which accordingly will be considered no further. More specifically, this court accepts, while not entirely convinced, that it could exercise its discretion to grant partial summary judgment on liability issues in this case notwithstanding genuine material factual issues concerning causation.

## APPLYING PARTIAL SUMMARY JUDGMENT METHODOLOGY UNDER §802.08, STATS.

The prescribed summary judgment methodology is well-described in *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115 *et seq.* (Ct. App. 1983):

> "Summary judgment is governed by sec. 802.08, Stats. Its purpose is to determine whether a dispute can be resolved without a trial. Summary judgment methodology must be followed by an appellate court as well as the trial court. *Board of Regents v. Mussallem*, 94 Wis. 2d 657, 674, 289 N.W 2d 801, 809 (1980).
>
> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint (in these consolidated cases, the notice of the appeal to the circuit court) states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W. 2d 473, 476-77 (1980).

---

[2] Even beyond this frolic into §802.08(2) esoterica is the question of whether or not partial summary judgment on liability can ever be appropriately granted where, as here, the remedies sought do not include common-law "damages", but are purely equitable. See Second Amended Complaint, pages 31-32, and §100.18 (11) (a), Stats. (enforcement actions to be commenced and prosecuted "in any court having equity jurisdiction.") Because the state's motions are decided on other grounds, we need gnaw this bone no further.

> Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment. *Grams*, 97 Wis. 2d at 338-39, 294 N.W. 2d at 477."

Analyzing the state's Second Amended Complaint under this methodology, plaintiff's first claim for relief based on §100.18(1), Stats., ("COUNT I") is legally sufficient, while the second claim for relief under §100.18 (10) (b) Stats.,("COUNT II") is not.

On the first claim, the Court rejects the defense contention that §100.182, not §100.18(1), is the appropriate and exclusive statutory remedy for plaintiff's claims. Plaintiffs allegations relate to fraudulent pricing, while §100.182 is targeted at entirely different types of fraudulent drug advertising, such as deceptive or misleading representations material to the effects of the drug, physical or psychological effects associated with the use of the drug, and deceptive resemblances to controlled substances. Accordingly, defendants cannot fashion a successful defense patterned after *Gallego v. Wal-Mart Stores Inc.*, 288 Wis. 2d 229 (Ct. App. 2005), which featured a global statute prohibiting fraudulent advertising specific to food that, unlike §100.182, largely mirrors a more generic §100.18(1) in the types of conduct prohibited,

As for plaintiff's second claim for relief, §100.18(10)(b) does not create a separate claim for relief, but merely defines one species of conduct that is deceptive and therefore remediable under §100.18(1), Stats. Accordingly, the second claim ("COUNT II") is dismissed, and any conduct by defendants which the state proves transgresses §100.18 (10) (b) will be considered under the first claim for relief.

Finally, the court rejects without further comment the defense position that separation of powers principles prohibit judicial enforcement of §100.18(1) in this case, because the legislature has expressly granted this court jurisdiction in equity to address violations of the statute under §100.18(11), without in any way restricting its reach to pharmaceutical pricing.

## THE STATE'S PRIMA FACIE CASE

While varying in the particulars against each of the four target defendants, plaintiff presents evidence broadly supporting its contention that defendants, in marketing their drugs, falsely reported both wholesale acquisition costs ("WACs") and average wholesale prices ("AWPs") to third parties, such as First DataBank and Red Book, knowing that these third parties would publish pharmaceutical pricing information relied upon by the state in paying or reimbursing retail providers of the drugs through the Wisconsin Medicaid program. The misrepresented WACs and AWPs caused the third parties to publish artificially high drug prices which, in turn, caused, and still causes, the Wisconsin Medicaid program to overpay for defendants' drugs. A *prima facie* case for partial summary judgment on liability under §100.18, Stats., is thus presented.

## DEFENDANTS' RESPONSE TO THE STATE'S EVIDENCE

Defendants present a number of factual and legal arguments against the state's motions, some with merit, some without. The arguments without merit are easily dispatched.

First, defendants argue that providing false information to third parties with whom defendants are in a contractual relationship, such as First DataBank, does not qualify as a misrepresentation to "the public", which is required for liability under §100.18(1), Stats. While defendants' argument is correct as far as it goes, it is beside the point. Section 100.18(1) prohibits not only direct misrepresentations to the public, but misrepresentations which defendants "cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state..." The thrust of plaintiff's *prima facie* case is that, by reporting false prices to third parties, defendants indirectly (and perhaps directly) caused dissemination of misrepresented drug prices to the public, including Wisconsin Medicaid, through the third parties' publications. That defendants had contracts with the third parties is no defense.

Secondly, and closely related, the argument (made by at least one defendant) that no misrepresentation was made "in this state", as required for liability under §100.18(1), ignores these third party publications distributed here.

Thirdly, the defense argument and evidentiary submissions demonstrating that the misrepresentations caused the state no damage would be material if plaintiff were seeking a full summary judgment on its first claim for relief. However, because plaintiff has moved only for partial summary judgment on limited issues concerning liability (excluding causation), they are not directly on point. Nonetheless, because the causation element appears, to the court at least, to require that plaintiff present proof to the fact finder at trial[3] establishing the specific misrepresentations made regarding the particular drugs at issue, granting a partial summary judgment to the extent requested by the state seemingly would accomplish little to further "the just, speedy, and inexpensive determination of the action" [§801.01(2), Stats.] Again, more on this below.

Turning now to the meritorious defense positions, defendants' evidence demonstrates the existence of material factual issues, and competing reasonable inferences derived from the factual record, on whether or not actionable misrepresentations occurred and what role, if any, the defendants played in fomenting these misrepresentations (which, after all, allegedly ripened in third party publications).

---

[3] The court deliberately uses the term "fact finder" because, although this case has been scheduled for jury trial(s) commencing in February, 2009, it does not appear that plaintiff's §100.18 enforcement action entitles it to a jury, given its equitable nature under §100.18(11), Stats. *See also State v. Excel Management Services, Inc.*, 111 Wis. 2d 479, 331 N.W. 2d 312 (1983). There is no jury trial right in equitable actions. *Neff v. Barber*, 165 Wis. 503, 162 N.W. 667(1917). The parties' entitlement to jury trial on this and plaintiff's other claims for relief [unjust enrichment also sounds in equity, *see General Split Corp. v. P & V Atlas Corp.*, 91 Wis. 2d 119, 124, 280 N.W. 2d 765, 768 (1979)] will be addressed at the next status conference.

On this point, the court accepts that context is relevant to the inquiry, as are any mutual understandings between/among the parties to the representations. At the very least, one cannot, on this record, rule out the relevance of context and mutual understanding to these §100.18 (1) claims.

Plaintiff's argument that "[a]n untrue statement is untrue regardless of whether the listener knows it is untrue" (Plaintiff's Reply Brief, p. 6) begs the question. How is a statement "untrue" in the first place, if the speaker and listener are using terms they mutually understand because they have agreed on their meaning— that is, they have together developed the definitions, either expressly or tacitly, such that they have a common understanding? If two parties agree that the term "cat" shall be defined to include a "dog", is the definition "untrue" under §100.18(1)? With such agreed terminology, it seems self-evident that representing a "dog" to be a "cat" cannot, years later, expose one party to a legitimate misrepresentation charge by the other, under §100.18(1) or otherwise. This is essentially the defense position in an admittedly oversimplified nutshell.

The state demurs, citing dictionary definitions which, while relevant, are not dispositive. It also contends that there was no agreement on the definition of AWPs and WACs, let alone one to which the state was a party. This latter point may very well be true, but it is not undisputed. This court's function on summary judgment is not to resolve discrepancies in the proof, nor to favor one inference over another. Rather, the court must accept all reasonable inferences emanating from the evidence in favor of the defense, and end its inquiry where, as here, there are disputed material facts or competing reasonable conclusions that can be drawn from the evidence.

## SOME ADDITIONAL OBSERVATIONS

Even if the evidence and inferences were undisputed, and the law unequivocally favored plaintiff, it is doubtful the court would exercise its discretion to grant plaintiff the interlocutory partial summary judgment requested. This is because it is difficult to see how doing so would advance the just, speedy, and inexpensive determination of this action, which is the overriding goal under §801.01(2), Stats.

As plaintiff emphasizes, this is an enforcement action seeking to enjoin violation of §100.18, Stats., as well as other appropriate relief. But even if we accept the state's summary judgment position as uncontroverted, what conduct would the court enjoin? As defendants point out, the state's motions are devoid of any particulars concerning which particular drugs are at issue and what specific misrepresentations were allegedly pertinent to each. The statute already generically prohibits the misrepresentations which it addresses, and an injunction by this court duplicating these non-specific statutory prohibitions would add little, if anything, to effective enforcement.

For example, violation of §100.18(10)(b) is perhaps the state's strongest case under §100.18(1). Section 100.18(10)(b) provides:

"It is deceptive to represent the price of any merchandise as a manufacturer's or wholesaler's price, or a price equal thereto, unless the price is not more than the price which retailers regularly pay for the merchandise."

What efforts would plaintiff be spared at trial were the court to grant partial summary judgment finding that a defendant or defendants violated this subsection? The state would still have to prove specific misrepresentations/deception concerning specific drugs for the court to fashion appropriate, targeted relief, and so that causation could be determined.

Bottom line, how would the interlocutory summary judgment be anything other than an advisory ruling to the effect that *if* plaintiff proves that the wholesaler's price or manufacturers price on a specific drug or drugs was deceptive within the meaning of §100.18(10)(b), *then* §100.18(1) has been violated by the misrepresenting defendant?

In short, the court finds little advantage to the ultimate resolution of this case at trial in rendering the interlocutory summary judgment plaintiff seeks, even if the plaintiff otherwise qualified for such relief (which, again, it does not). On the other hand, granting the motion might very well create an unlevel playing field by enabling plaintiff to suggest to the jury[4], right out of the gate and devoid of all context, that the court has already found defendant(s) in violation of state law and the rest is just details, when we truly cannot know if a violation has occurred until we see the evidence on specific representations regarding specific drugs.

## CONCLUSION

Plaintiff State of Wisconsin's amended motions for partial summary judgment on liability against defendants Novartis, Astra Zeneca, Sandoz, and Johnson & Johnson are DENIED. Count II of plaintiff's Second Amended Complaint, purporting to allege a separate claim for relief under §100.18(10)(b), Stats., is DISMISSED and merged into plaintiff's claim for relief under §100.18(1), Stats., in Count I.

Dated this 20 day of May, 2008.

BY THE COURT:

Richard G. Niess
Circuit Judge

CC: Attorney William M. Conley

---

[4] If all or any part of this case is heard by a jury, advisory or otherwise.

(for immediate service on all parties per
 usual practice in this case)