

Jul 22 2008
6:39PM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |  |
| The State Of Iowa v. Abbott Laboratories, Inc., *et al.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MDL NO. 1456 Civil Action No. 01-12257-PBS<br><br>Judge Patti B. Saris |

## STATE OF IOWA'S SUBMISSION REGARDING CERTIFICATION

### INTRODUCTION

The Court seeks guidance as to whether the Iowa Attorney General has the right to sue on behalf of the State for compensatory damages under the Iowa Consumer Fraud Act, Iowa Code § 714.16 ("CFA"), and whether this question should be certified for resolution by the Iowa Supreme Court. The Iowa Supreme Court will take certification of questions from a district court of another state under Iowa Code § 684A.[1] However, certification is, in fact, an unnecessary step in this case for multiple reasons. First, certification may cause undue delay and will not meaningfully reduce the scope of discovery in this case given that the Attorney General

---

[1] 684A.1. Power to answer

The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

indisputably can bring suit under the CFA for equitable relief, penalties and fees. Judicial efficiency suggests that discovery should simply proceed now on this cause and the question of the availability of actual damages can be resolved later, if necessary, by the trial court. Second, as discussed in the State's briefing on defendants' motion to dismiss, the plain meaning of the CFA supports the State's claim for compensatory damages. Indeed, and as discussed below, the instant litigation would not mark the first time the Iowa Attorney General has brought a claim for actual damages on behalf of the State under the CFA.

## ARGUMENT

### I.  Certification Is Unnecessary.

#### (a)  Judicial Efficiency Counsels Against Certification

It is undisputed that the Attorney General can seek civil penalties, injunctive relief and costs in connection with the CFA claim. See Iowa Code § 714.16(7).[2]

---

[2] Iowa Code § 714.16(7) provides:

> If it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in a practice declared to be unlawful by this section, the attorney general may seek and obtain in an action in a district court a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the person from continuing the practice or engaging in the practice or doing an act in furtherance of the practice. The court may make orders or judgments as necessary to prevent the use or employment by a person of any prohibited practices, or which are necessary to restore to any person in interest any moneys or property, real or personal, which have been acquired by means of a practice declared to be unlawful by this section … . If a person has acquired moneys or property by any means declared to be unlawful by this section and if the cost of administering reimbursement outweighs the benefit to consumers or consumers entitled to the reimbursement cannot be located through reasonable efforts, the court may order disgorgement of moneys or property acquired by the person by awarding the moneys or property to the state to be used by the attorney general for the administration and implementation of this section.
>
> In addition to the remedies otherwise provided for in this subsection, the attorney general may request and the court may impose a civil penalty not to exceed forty thousand dollars per violation against a person found by the court to have engaged in a method, act, or practice declared unlawful under this section; provided, however, a course of conduct shall not be considered to be separate and different violations merely because the conduct is repeated to more than one person. In addition, on the motion of the attorney general or its own motion, the court may impose a civil penalty of not more than five thousand dollars for each day of intentional violation of a temporary restraining order, preliminary injunction, or permanent injunction issued under authority of this section.

K:\Users\AWP Files\Iowa\Motion to Dismiss Materials\Plaintiffs Opposition Draft Materials\Certification to IA Supreme Court\Certification Submission and exhibits\Certification Submission Final.doc

2

This Court recognized the fact that the statute includes other forms of relief during the June 28, 2008 Motions Hearing on defendants' motion to dismiss:

> THE COURT: … [C]ertainly the Attorney General, as I read the statute, can seek injunctive and equitable relief. At the very least, you get to do that.

Transcript, Motions Hearing at 20:19-22.

> THE COURT: Well, it's quite clear you have a right to sue for equitable relief. I mean, really what they're challenging is the right to – for compensatory, as I understand it.

*Id.* at 25:21-24.

This means that the CFA claim will go forward and discovery will be permitted regardless of whether the statute will also permit the recovery of actual damages. Query then what benefit would result from certification at this stage. Judicial efficiency suggests instead that Iowa's claim should simply proceed and, if the case is ultimately tried, the Iowa trial court could rule on the availability of the compensatory damages remedy.

This approach also makes the most sense given the substantial resources – both of the parties and this Court – that certification would require. The Iowa certification procedures, annexed hereto as Exhibits 1-5, are time-intensive and would require this Court to present to the Iowa Supreme Court not only the legal issues to be addressed, but also a statement of facts which would likely necessitate briefing from the parties. And then of course in addition there would be the briefing to the Iowa Supreme Court itself. In all, given that certification will not impact discovery in any way or the viability of this claim overall, judicial economy and efficiency weigh strongly against certification.

Importantly, and related, should this Court elect to certify this question to the Iowa Supreme Court, that process should not limit or in any way touch on discovery or other matters pertinent to prosecution of the Iowa case. The certification process can take up to 19 months to

conclude, and given the other remedies available to the Attorney General under the CFA, there are no grounds to restrict discovery or delay prosecution of this case in any way. *See also* Point II, *infra*.

### (b) On its Face, The CFA Permits the State to Sue to Recover Damages On Its Own Behalf.

On its face, and as discussed in Iowa's opposition to defendants' motion to dismiss, the Consumer Fraud Act permits the State to sue to recover damages on its own behalf. There can be no reasonable dispute that the State falls within the definition of "person" in the CFA. Although no court in Iowa has explicitly examined the distinction between the words "includes" and "means", the United States Supreme Court has done so in *Burgess v. U.S.*, 128 S. Ct. 1572 (2008). In *Burgess*, the court rejected the defendant's argument that a definition of "felony" in one statute should be incorporated into the definition of "felony drug offense" in a broader statute. The court determined that because the language in the broader statute reads "[t]he term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year …," as opposed to "includes," the language of this statute provided the exclusive definition of the term. *Id.* at 1577. The court went on to examine the distinction between "means" and "includes":

> [T]he word includes is usually a term of enlargement, and not of limitation." 2A Singer sec 47:7, p. 305 (some internal quotation marks omitted). Thus "[a] term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning … than where" . . . "the definition declares what a term 'means.'" *Ibid. See also Groman v. Commissioner*, 302 U.S. 82, 86, 58 S. Ct. 108, 82 L.Ed. 63 (1937) ("[W]hen an exclusive definition is intended the word 'means' is employed … whereas here the word used is 'includes.'").

*Id.* at 1578 n.3.

The statutory construction provision of Iowa law expressly states at the outset:

> In the construction of statutes, the following rules should be observed, *unless such construction would be inconsistent with the manifest intent of the general assembly*, or repugnant to the context of the statute:
>
> . . .
>
> 20. Person.  Unless otherwise provided by law, "person" means individual, corporation, limited liability company, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity.

Iowa Code § 4.1 (emphasis added).  Given that the CFA is intended to be a remedial statute, and is to be "liberally construed" (Iowa Code § 4.2), defendants' proffered construction would effectively negate the plain meaning of "includes," in contravention of the "manifest intent" of the statute.  The CFA clearly permits the State to recover damages on its own behalf.  Certification is unnecessary.

    **(c)    Iowa Has Sought Damages On Its Own Behalf Under the Consumer Fraud Act On Numerous Occasions**.

        **1.    Prescription Drug Manufacturers.**

On at least five occasions, Iowa has asserted claims on behalf of the State under the CFA in connection with antitrust litigation against prescription drug manufacturers (annexed hereto as Exhibits F - J).[3]  For example, on April 13, 2005, all 50 states (including Iowa) filed a claim against SmithKline Beecham for falsely creating and unlawfully enforcing a patent for Relafen and nabumetone, in violation of federal and state antitrust laws, consumer protection, and unfair and deceptive trade practices acts.  *See* Complaint, *In re Relafen*, at p. 9.

---

[3] The States sued SmithKline Beecham for violations of federal and state antitrust laws, consumer protection, and unfair and deceptive trade practices acts regarding Paxil (Complaint, *In re Paxil*, No. 04-5126 (D.N.J. March 27, 2006)); SmithKline Beecham (same) (Relafen and nabumetone) (Complaint, *In re Relafen*, No. 01-CV-12239 (D. Mass. April 13, 2005)); Organon USA Inc. and Akzo Nobel N.V. (same) (Remeron and other mirtazapine-based prescription drug products) (Complaint, *States and Commonwealths of Texas et al. v. Organon USA Inc. and Akzo Nobel N.V.*, No. 04-5126 (D.N.J. Oct. 20, 2004)); Perrigo Co. and Alpharma, Inc. (same) (Children's Motrin) (Complaint, *State of Maryland et al. v. Perrigo Co. and Alpharma, Inc.*, No. 1:04-CV-01398 (D.D.C. Aug. 17, 2004)); and Bristol-Myers Squibb Co. (same) (Taxol and other paclitaxel based anticancer drugs) (Complaint, *State of Ohio et al. v. Bristol-Myers Squibb Co.*, No. 02-CV-01080 (D.D.C. April 24, 2003)).

> The States bring this action by and through their Attorneys General (a) in their proprietary capacities on behalf of represented entities which may include state departments, bureaus, agencies, political subdivisions, and other government entities as direct or indirect purchasers, and/or as assignees of the antitrust causes of action of intermediate purchasers through which they procured or reimbursed for such drugs, or as purchasers under medical or pharmaceutical reimbursement programs, of Relafen or any other nabumetone based drug during the relevant period (hereinafter "State Governmental Entities"), (b) in their capacities as enforcers of state law to enjoin violations, to disgorge unjust profits, and to provide relief for injuries incurred in their states by securing damages and/or restitution, injunctions and other equitable remedies.

Complaint, *In re Relafen*, ¶ 6.  The States alleged that they were injured:

> As a direct and proximate result of the unlawful conduct alleged above, Plaintiff States, including their State Governmental Entities and Illinois consumers, were not able to purchase, or pay reimbursement for purchases of, nabumetone products at prices determined by free and open competition, and consequently have been injured in their business and property in that, inter alia, they have paid more and continue to pay more for nabumetone products than they would have paid in a free and open competitive market..

Complaint, *In re Relafen*, ¶ 52.

As an individual state claim, Iowa alleged that it was entitled to relief under the Iowa Competition Act, Iowa Code sections 553, et seq.; the Iowa Consumer Fraud Act, ***Iowa Code section 714.16***; and Iowa common law.  Complaint, *In re Relafen*, ¶ 98 (emphasis added).

The State has asserted identical causes in each of the cases cited in footnote 3 above.

### 2. Body Armor, Inc.

In May 27, 2005, the State of Iowa filed a claim in bankruptcy against Second Chance Body Armor, Inc. for violations of the Consumer Fraud Act in connection with the manufacture and/or sale of protective vests made in whole or in part from Zylon fiber, contending that it had jurisdiction under the CFA to recover damages and that the state itself was the victim.  The State brought suit for damages on behalf of law enforcement agencies or individuals or other entities in the State of Iowa (and noted that Iowa Department of Transportation might file a claim to

recover as well).  *State of Iowa v. Second Chance Body Armor, Inc.*, Case No. 04-12515 (Bankr. W.D. Mich. May 27, 2005).  The case is ongoing.

        **3.**      **Tobacco**

In their Notice of Supplemental Authority (the "Notice"), defendants contend that Iowa did not seek damages on its own behalf in the Tobacco case.  (Notice at 2).  Therefore, defendants reason, "because Count I of the tobacco case did not seek damages on behalf of Iowa, it follows that the Iowa district court did not rule that the State could seek damages for Medicaid expenditures under the CFA."  *Id*.  This is incorrect, as Exhibit A to the Notice makes plain.  The State clearly was to receive "disgorgement" of any monies retained as a result of the unlawful practices at issue in the Tobacco litigation.

Together the above cases demonstrate this is not a novel claim.  The Attorney General has sued for actual damages on its own behalf numerous times.

**II.**    **Even If The Court Certifies, The Iowa Case Should Proceed Without Limitation**

As stated, the Attorney General's claim under the CFA will proceed regardless of the outcome of certification.  This means that the Attorney General should be entitled to discovery in connection with this claim now and without limitation.  No purpose would be served through the imposition of any stay or restrictions, particularly given that the timeframe for resolution of certified questions averages 11.4 months.[4]

**CONCLUSION**

For all the foregoing reasons, Iowa respectfully submits that certification to the Iowa Supreme Court of the question whether the Attorney General may recover actual damages on

---

[4] The Iowa Supreme Court has been asked by federal district courts to certify a question of Iowa law on 14 occasions from 1994 - 2007.  The delay between the original filing and the court's ultimate ruling has ranged from 7 to 19 months.

K:\Users\AWP Files\Iowa\Motion to Dismiss Materials\Plaintiffs Opposition Draft Materials\Certification to IA Supreme Court\Certification Submission and exhibits\Certification Submission Final.doc

7

behalf of the State under the CFA is unnecessary. In the alternative, and at a minimum, if the Court does certify that question, the Court should nevertheless permit Iowa discovery on its CFA claims given the indisputable other remedies available to the State under this statute.

Dated: July 22, 2008

                                      Respectfully submitted,

                                      TOM MILLER
                                      ATTORNEY GENERAL FOR
                                      THE STATE OF IOWA

                                      By:   C. Roderick Reynolds
                                                 J. Bradley Horn
                                                 Assistant Attorney General
                                                 Iowa Department of Justice
                                                 1305 E. Walnut Street
                                                 Hoover Bldg., 2nd Floor
                                                 Des Moines, IA 50319


                                      KIRBY McINERNEY LLP
                                      Attorneys for the State of Iowa
                                      825 Third Avenue, 16th Floor
                                      New York, New York 10022
                                      (212) 371-6600

                                    By:      /s/_____
                                                 Joanne M. Cicala (JC 5032)
                                                 James P. Carroll Jr. (JPC 8348)
                                                 Aaron D. Hovan (AH 3290)

**Certificate of Service**

I certify that on July 22, 2008 a true and correct copy of the foregoing State of Iowa's Submission Regarding Certification was served on all Counsel of Record by electronic service pursuant to Case Management Order No. 2 by sending a copy to LexisNexis File and Serve for posting and notification to all parties.

    /s/ Aaron D. Hovan
    Aaron D. Hovan