UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF MARYLAND
by Attorney General J. Joseph Curran, Jr.
200 St. Paul Street
Baltimore, Maryland 21202

and

STATE OF COLORADO
by Attorney General Ken Salazar
1525 Sherman Street, Fifth Floor
Denver, Colorado 80203

and

STATE OF OHIO
by Attorney General Jim Petro
Antitrust Section
150 East Gay Street, 20th Floor
Columbus, Ohio 43215

and

STATE OF FLORIDA
by Attorney General Charlie Crist
PL-01 The Capitol
Tallahassee, Florida 32399

and

STATE OF ALABAMA
by Attorney General Troy King
Consumer Affairs/Antitrust Section
11 South Union Street
Montgomery, Alabama 36130

and

STATE OF ALASKA
by Attorney General Gregg D. Renkes
1031 W. 4th Avenue #200
Anchorage, Alaska 99501

CASE NUMBER   1:04CV01398

JUDGE: Rosemary M. Collyer

DECK TYPE: Antitrust

DATE STAMP: 08/17/2004

and

STATE OF ARIZONA
by Attorney General Terry Goddard
1275 West Washington
Phoenix, Arizona 85007-2926

and

STATE OF ARKANSAS
by Attorney General Mike Beebe
323 Center Street, Suite 200
Little Rock, Arkansas 72201

and

STATE OF CALIFORNIA
by Attorney General Bill Lockyer
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102

and

STATE OF CONNECTICUT
by Attorney General Richard Blumenthal
55 Elm Street
Hartford, Connecticut 06106

and

STATE OF DELAWARE
by Attorney General M. Jane Brady
Carvel State Office Building
820 N. French Street
Wilmington, Delaware 19801

and

DISTRICT OF COLUMBIA
by Attorney General Robert J. Spagnoletti
441 Fourth Street, NW, Suite 450N
Washington, District of Columbia 20001

and

STATE OF GEORGIA
by Attorney General Thurbert E. Baker
40 Capitol Square, S.W.
Atlanta, Georgia 30334

and

STATE OF HAWAII
by Attorney General Mark J. Bennett
425 Queen Street
Honolulu, Hawaii 96813

and

STATE OF IDAHO
by Attorney General Lawrence Wasden
650 W. State Street, Lower Level
Boise, Idaho 83720-0010

and

STATE OF ILLINOIS
by Attorney General Lisa Madigan
100 West Randolph Street, 13th Floor
Chicago, Ilinois 60601

and

STATE OF INDIANA
by Attorney General Steve Carter
302 West Washington Street, IGCS 5th Floor
Indianapolis, Indiana 46204

and

STATE OF IOWA
by Attorney General Thomas J. Miller
2nd Floor, Hoover Office Building
East 13th and Walnut
Des Moines, Iowa 50319

and

COMMONWEALTH OF KENTUCKY
by Attorney General Gregory D. Stumbo
1024 Capital Center Drive
Frankfort, Kentucky 40601

and

STATE OF LOUISIANA
by Attorney General Charles C. Foti, Jr.
1885 N. 3rd Street, 4th Floor
Baton Rouge, Louisiana 70802

and

STATE OF MAINE
by Attorney General G. Steven Rowe
6 State House Station
Augusta, Maine 04333-0006

and

COMMONWEALTH OF MASSACHUSETTS
by Attorney General Thomas F. Reilly
One Ashburton Place
Boston, Massachusetts 02108

and

STATE OF MICHIGAN
by Attorney General Michael A. Cox
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48913

and

STATE OF MISSISSIPPI
by Attorney General Jim Hood
Post Office Box 22947
Jackson, Mississippi 39225

and

4

STATE OF MONTANA
by Cort Jensen – Consumer Protection Office
1219 8th Avenue
Helena, Montana 59620

and

STATE OF NEBRASKA
by Attorney General Jon Bruning
2115 State Capitol Building
Lincoln, Nebraska 68509

and

STATE OF NEVADA
by Attorney General Brian Sandoval
100 North Carson Street
Carson City, Nevada 89701-4717

and

STATE OF NEW HAMPSHIRE
by Attorney General Kelly A. Ayotte
33 Capitol Street
Concord, New Hampshire 03301

and

STATE OF NEW JERSEY
by Attorney General Peter C. Harvey
P.O. Box 085
Trenton, New Jersey 08625-0085

and

STATE OF NEW MEXICO
by Attorney General Patricia A. Madrid
111 Lomas Boulevard, Suite 300
Albuquerque, New Mexico 87102

and

STATE OF NEW YORK
by Attorney General Eliot Spitzer
120 Broadway, Suite 26C
New York, New York 10271-0332

5

and

STATE OF NORTH DAKOTA
by Attorney General Wayne Stenehjem
P.O. Box 1054
Bismarck, North Dakota 58502-1054

and

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
by Attorney General Pamela Brown
Caller Box 10007, Capitol Hill
Saipan, Northern Mariana Islands 96950

and

STATE OF OKLAHOMA
by Attorney General W.A. Drew Edmonson
4545 N. Lincoln Boulevard, Suite 260
Oklahoma City, Oklahoma 73105

and

STATE OF OREGON
by Attorney General Hardy Myers
1162 Court Street NE
Salem, Oregon 97301

and

COMMONWEALTH OF PENNSYLVANIA
by Attorney General Gerald J. Pappert
Antitrust Section
Strawberry Square, 14th Floor
Harrisburg, Pennsylvania 17120

and

COMMONWEALTH OF PUERTO RICO
by Secretary of Justice Anabelle Rodriguez
Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192

and

6

STATE OF RHODE ISLAND
by Attorney General Patrick C. Lynch
150 South Main Street
Providence, Rhode Island 02903

and

STATE OF SOUTH CAROLINA
by Attorney General Henry D. McMaster
Rembert C. Dennis Building
1000 Assembly Street, Suite 501
Columbia, South Carolina 29211-1549

and

STATE OF SOUTH DAKOTA
by Attorney General Lawrence E. Long
500 E. Capitol
Pierre, South Dakota 57501-5070

and

STATE OF TENNESSEE
by Attorney General Paul G. Summers
P.O. Box 20207
Nashville, Tennessee 37202-0207

and

STATE OF TEXAS
by Attorney General Greg Abbott
P.O. Box 12548
Austin, Texas 78711

and

TERRITORY OF THE UNITED STATES VIRGIN ISLANDS
by Attorney General Iver A. Stridiron
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, Virgin Islands 00802

and

7

STATE OF UTAH
by Attorney General Mark L. Shurtleff
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84111

and

STATE OF VERMONT
by Attorney General William H. Sorrell
109 State Street
Montpelier, Vermont 05609-1001

and

COMMONWEALTH OF VIRGINIA
by Attorney General Jerry W. Kilgore
900 East Main Street
Richmond, Virginia 23219

and

STATE OF WASHINGTON
by Attorney General Christine O. Gregoire
900 Fourth Avenue, Suite 2000
Seattle, Washington 98164

and

STATE OF WEST VIRGINIA
by Attorney General Darrell V. McGraw, Jr.
P.O. Box 1789
Charleston, West Virginia 25326

and

STATE OF WISCONSIN
by Attorney General Peggy A. Lautenschlager
Wisconsin Department of Justice
17 West Main Street
Madison, Wisconsin 53702

and

STATE OF WYOMING
by Attorney General Patrick J. Crank
123 State Capitol
Cheyenne, Wyoming 82002

PLAINTIFFS,

v.

PERRIGO COMPANY
515 Eastern Avenue
Allegan, Michigan 49010

and

ALPHARMA, INC.
One Executive Drive
Fort Lee, New Jersey 07024

DEFENDANTS.

## COMPLAINT

The states of Maryland, Colorado, Ohio, Florida, Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Louisiana, Maine, Michigan, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming, the commonwealths of Kentucky, Massachusetts, the Northern Mariana Islands, Pennsylvania, and Virginia, the District of Columbia, and the Territory of the United States Virgin Islands, by their Attorneys General; the State of Montana, by its Consumer Protection Office; and the Commonwealth of Puerto Rico, by its Secretary of Justice; (the "Plaintiff States" or "States"), bring this action against Defendants Perrigo Company ("Perrigo") and Alpharma, Inc. ("Alpharma") and make the following allegations:

9

## SUMMARY OF COMPLAINT

1. Perrigo and Alpharma entered into an anticompetitive agreement that destroyed competition in the market for over-the-counter ("OTC") generic versions of Children's Motrin® in the United States.

2. Perrigo is the largest manufacturer in the United States of OTC pharmaceutical and nutritional products for the store brand and contract manufacturing markets.

3. Alpharma is the largest manufacturer in the United States of generic liquid and topical pharmaceuticals.

4. McNeil Consumer & Specialty Pharmaceuticals ("McNeil"), a division of McNeil-PPC, Inc. (in the Johnson & Johnson family of companies), markets OTC and prescription pharmaceuticals including Motrin® products for children and adults.

5. Children's Motrin Suspension Liquid ("Children's Motrin") is a pharmaceutical product, marketed by McNeil, containing ibuprofen suspended in a palatable liquid. Children's Motrin is an anti-inflammatory drug that can be given to children over two years old to reduce fever and relieve mild or moderate pain.

6. Perrigo and Alpharma are the only companies that have filed applications to manufacture generic versions of Children's Motrin.

7. On June 16, 1998, Perrigo and Alpharma entered into an agreement (the "Agreement") to illegally restrain competition and allocate the market for OTC generic versions of Children's Motrin.

8. The Agreement raised costs in the market for OTC generic Children's Motrin.

9. The Agreement forced Plaintiff States and other persons to pay artificially inflated prices for OTC generic Children's Motrin.

10

10. The States request a finding that Perrigo and Alpharma violated state and federal antitrust and related laws, a permanent injunction barring Perrigo and Alpharma from engaging in similar conduct in the future, other equitable relief, civil penalties, and/or other relief for injuries caused by the illegal Agreement.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337. In addition to pleading violations of federal antitrust law, the States also allege violations of state antitrust, consumer protection and/or unfair competition statutes and related state laws. The States seek civil penalties and/or equitable relief under those state laws.

12. All claims under federal and state law are based upon a common nucleus of operative fact, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

13. This Court has jurisdiction of state law claims under 28 U.S.C. §1367(a), as well as under the principles of supplemental jurisdiction. Supplemental jurisdiction will avoid unnecessary duplication and multiplicity of actions and should be exercised in the interests of judicial economy, convenience, and fairness.

14. Venue is proper in this Court under Section 12 of the Clayton Act, 15 U.S.C. § 22 and under 28 U.S.C. §§ 1391(b) and (c), because: (i) Perrigo and Alpharma transact business and are found within this district; and (ii) a substantial portion of the affected trade and commerce described below has been carried out in this district.

11

## PARTIES

15. Defendant Perrigo is a Michigan corporation with its principal place of business at 515 Eastern Avenue, Allegan, Michigan, 49010. Perrigo manufactures and distributes generic OTC drugs. Many of these drugs are sold by supermarket, drug and big box stores under their own store brand or private labels. For the fiscal year ending June 28, 2003, Perrigo reported net sales of approximately $826 million. During that same period, Perrigo reported approximately $17.4 million in net sales of generic Children's Motrin.

16. Defendant Alpharma is a Delaware corporation with its principal place of business at One Executive Drive, Fort Lee, New Jersey, 07024. Alpharma, through its U.S. Human Pharmaceuticals Division ("USHP"), manufactures and distributes generic prescription and OTC drugs. For the full year 2003, Alpharma reported net revenues of approximately $1.297 billion.

17. The Plaintiff States bring this action 1) in their proprietary and/or sovereign capacities, which may include state departments, agencies, political subdivisions, and other instrumentalities as purchasers (either directly, indirectly, or as assignees); and 2) as a civil law enforcement action.

## FACTUAL BACKGROUND

### A.        New Drug Applications

18. A drug manufacturer must obtain approval from the U.S. Food and Drug Administration ("FDA") before the manufacturer may lawfully introduce a new drug in the United States.

19. To have one of its new drugs considered for approval, a manufacturer must file a New Drug Application ("NDA") with the FDA. The NDA must contain information demonstrating that the drug is safe and effective for its intended use.

12

20. A drug that is approved through the NDA application process may be listed by the FDA as a "Reference Listed Drug" in the FDA's publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly referred to as the "Orange Book."

21. The FDA grants a three-year period of market exclusivity to a drug product that contains an active moiety that has been previously approved, when the application contains reports of new clinical investigations (other than bioavailability studies) conducted or sponsored by the sponsor that were essential to approval of the application.

**B.**     **Patents**

22. A specific drug may be protected by one or more patents.  The assignee of a patent has the right to exclude others from making, using, or selling the invention claimed in the patent.

23. An NDA applicant must provide the FDA with the patent number and the expiration date of any patent that claims the drug for which the applicant submitted the application, or which claims a method of using the drug, where a claim of patent infringement could reasonably be asserted against an unauthorized manufacturer, user, or seller of the drug.  Upon FDA approval of the application, all patents identified by the NDA recipient are listed in the Orange Book as relating to that drug.

**C.**     **Generic Drugs**

24. Generic drugs are similar to, but not necessarily identical to, Reference Listed Drugs. A generic drug contains the same active pharmaceutical ingredient(s) (or contains the same therapeutic moiety, but may be a different salt, ester, or complex of that moiety) as the corresponding Reference Listed Drug, but may contain other ingredients (such as colors and flavors) that are different.  A generic drug is comparable to a Reference Listed Drug in dosage

13

form, strength, route of administration, quality, performance characteristics and intended use. A generic drug must be bioequivalent to the corresponding Reference Listed Drug.

25. The Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C. § 355, (the "Hatch-Waxman Act") established a procedure that has often allowed generic drugs to enter the market earlier than had been possible in the past. The Hatch-Waxman Act allows a company to seek FDA approval to market a generic version of a Reference Listed Drug by filing an Abbreviated New Drug Application ("ANDA"). An ANDA is generally not required to include preclinical (animal) and clinical (human) data to establish safety and effectiveness.

26. Because the FDA has already determined that a Reference Listed Drug is safe and effective for use, an ANDA filer may rely on the safety and efficacy data previously provided for a specific Reference Listed Drug, so long as the ANDA filer sufficiently demonstrates to the FDA that its generic drug is bioequivalent to the Reference Listed Drug.

27. Generic versions of Reference Listed Drugs are usually sold at prices substantially below the prices charged for the Reference Listed Drugs. Plaintiff States and other persons save significant amounts of money by purchasing generic drugs.

28. An ANDA filer must include in its ANDA one of four different "certifications" for each patent listed for the Reference Listed Drug in the Orange Book. The four possible certifications are: (i) no patent for the Reference Listed Drug has been filed in the Orange Book ("Paragraph I Certification"), (ii) a patent listed in the Orange Book for the Reference Listed Drug has expired ("Paragraph II Certification"), (iii) the ANDA filer will not seek to market its generic product before the earliest date that a patent listed in the Orange Book for the Reference Listed Drug will actually expire ("Paragraph III Certification"), or (iv) a patent listed in the

14

Orange Book for the Reference Listed Drug is invalid or will not be infringed by the generic company's product ("Paragraph IV Certification").

29. If an ANDA filer makes a Paragraph IV Certification regarding any patent listed for the Reference Listed Drug, the patent assignee has a 45-day window to file a lawsuit alleging that the ANDA filer is infringing the listed patent.

30. If such an infringement suit is filed during the 45-day window, the FDA is automatically prohibited from granting final approval of the ANDA for a period of 30 months, or until there is a final decision in the patent case finding the patent either invalid or not infringed, whichever occurs first.

31. If the patent holder does not file an infringement suit against the ANDA filer within the 45-day period, then the FDA approval process for the ANDA may proceed. Upon receiving final FDA approval, the ANDA filer may begin marketing its generic version of the Reference Listed Drug.

32. The first ANDA filer for the generic version of a Reference Listed Drug is known as the "First Filer." The First Filer who makes a Paragraph IV Certification regarding any patent listed for the Reference Listed Drug is awarded a 180-day period of exclusivity from the FDA. Until that period expires, the FDA may not give final approval to any other ANDA filer seeking to market its own version of the same Reference Listed Drug.

33. The 180-day exclusivity period begins on the date the FDA receives notice from the First Filer that commercial marketing of the drug product approved in that application was initiated.

34. The FDA may grant "tentative approval" to an ANDA filer whose application is in a condition such that final approval could be granted, except that patents and/or exclusivity periods

15

prevent final approval until a later date. A tentative approval does not allow the applicant to market the generic drug product.

**D.       McNeil's Children's Motrin Suspension Liquid**

35. On December 20, 1994, the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 5,374,659 (the " '659 patent") to McNeil. The '659 patent claims certain aqueous ibuprofen pharmaceutical suspension compositions. The '659 patent expires on December 20, 2011.

36. McNeil requested that the FDA include the '659 patent in the Orange Book as a part of its NDA listings for Children's Motrin.

37. The FDA granted a three-year period of exclusivity to McNeil for its OTC Children's Motrin product. That period was originally scheduled to expire on June 16, 1998.

38. The FDA extended McNeil's exclusivity period for its OTC Children's Motrin product for an additional six months as a result of McNeil's pediatric testing of the product. That period expired on December 16, 1998.

**E.       Alpharma's Children's Oral Suspension Ibuprofen**

39. On June 25, 1996, Alpharma filed an ANDA with the FDA ("ANDA 74-916"), and became the First Filer for an OTC generic version of Children's Motrin.

40. ANDA 74-916 contained a Paragraph IV Certification regarding the '659 patent.

41. No action for patent infringement was brought against Alpharma as a result of its Paragraph IV Certification in ANDA 74-916 regarding the '659 patent.

42. On October 9, 1996, Alpharma filed an ANDA with the FDA ("ANDA 74-978"), and became the First Filer for a prescription generic version of Children's Motrin.

43. ANDA 74-978 contained a Paragraph IV Certification regarding the '659 patent.

16

44. No action for patent infringement was brought against Alpharma as a result of its Paragraph IV Certification in ANDA 74-978 regarding the '659 patent.

45. On January 9, 1998, the FDA tentatively approved ANDA 74-916. After submitting a final amendment and receiving final FDA approval (following the expiration of McNeil's exclusivity period), Alpharma would be able to begin marketing its OTC generic version of Children's Motrin.

46. After receiving tentative approval, Alpharma began soliciting customers for its OTC product.

47. Alpharma made plans to launch its OTC generic version of Children's Motrin in June 1998.

48. In February 1998, the FDA tentatively approved ANDA 74-978. After submitting a final amendment and receiving final FDA approval (following the expiration of McNeil's exclusivity period), Alpharma would be able to begin marketing its prescription generic version of Children's Motrin.

49. The FDA granted final approval of Alpharma's ANDA 74-978 on March 25, 1998.

50. Alpharma began distributing its prescription generic version of Children's Motrin after receiving approval.

51. The FDA granted final approval of Alpharma's ANDA 74-916 on April 30, 1999.

52. Alpharma did not begin distribution of its OTC generic version of Children's Motrin as a result of its Agreement with Perrigo to divide the market.

F.        **Perrigo's Children's Oral Suspension Ibuprofen**

53. On July 26, 1996, Perrigo filed an ANDA with the FDA ("ANDA 74-937") for an OTC generic version of Children's Motrin.

17

54. ANDA 74-937 contained a Paragraph IV Certification regarding the '659 patent.

55. No action for patent infringement was brought against Perrigo as a result of its Paragraph IV Certification in ANDA 74-937 regarding the '659 patent.

56. On September 5, 1997, the FDA tentatively approved ANDA 74-937. After submitting a final amendment and receiving final FDA approval (following the expiration of McNeil's exclusivity period), Perrigo would be able to begin marketing its OTC generic version of Children's Motrin.

57. After receiving tentative approval, Perrigo began soliciting customers for its store brand product and set a launch date of June 1998. Perrigo was successful in obtaining commitments from many of its customers to purchase OTC generic Children's Motrin.

58. On June 16, 1998, Perrigo learned that McNeil had obtained an additional six months of exclusivity, and that Perrigo could not obtain final approval of its ANDA until expiration of McNeil's extended exclusivity period on December 16, 1998.

59. The FDA granted final approval of Perrigo's ANDA 74-937 on December 22, 1998.

60. Perrigo began distribution of its OTC generic version of Children's Motrin shortly after receiving final approval of ANDA 74-937.

## G.        Perrigo and Alpharma's Unlawful Acts

61. In early 1998, Perrigo and Alpharma competed vigorously for potential customers of OTC generic Children's Motrin products.

62. Alpharma eventually realized that Perrigo was winning the pre-launch battle for market share. Alpharma responded to the competitive threat by lowering its asking price for OTC generic Children's Motrin by as much as 20% in an effort to secure customers who had not yet agreed to purchase the product from any source.

63. Perrigo reacted to Alpharma's price reductions by lowering its own prices to win new customers or retain previous customer commitments.

64. Customers were aware that Perrigo and Alpharma were competing for business in the market for OTC generic Children's Motrin, and used that competition to obtain lower prices. As an example, one large purchaser was able to obtain a 40% discount for its initial purchase of OTC generic Children's Motrin from Perrigo.

65. In April 1998, Perrigo learned from the FDA that Perrigo's product could not receive final approval until after the expiration of a 180-day exclusivity period that had been awarded to the First Filer.

66. Perrigo believed that any delay in launching its product would disappoint its customers and could adversely affect Perrigo's reputation.

67. Perrigo's management believed that Alpharma was the First Filer. On or about May 20, 1998, a senior executive of Perrigo approached a senior executive of Alpharma with a suggestion that the companies enter into a mutual agreement regarding the marketing of OTC generic Children's Motrin during the First Filer's 180-day exclusivity period.

68. Alpharma indicated to Perrigo that Alpharma would only be interested in entering into an agreement with a longer duration that would include a large up-front payment, and that would provide a continuing royalty stream.

69. Perrigo knew that a long-term agreement would be in its best interests, so long as Alpharma was not competing against Perrigo for customers of OTC generic Children's Motrin.

70. On June 16, 1998, Perrigo and Alpharma entered into the anticompetitive seven-year Agreement that divided the market for generic versions of Children's Motrin product. The Agreement allocated the entire market for OTC generic Children's Motrin to Perrigo.

19

71. The duration of the Agreement was not in any way related to the duration of any exclusivity or patent protection that had been obtained by Alpharma.

72. In exchange for Alpharma's promise not to compete, Perrigo made an initial payment of $3.5 million to Alpharma and agreed to make royalty payments to Alpharma for the duration of the Agreement.

73. Through the Agreement, Alpharma agreed to give Perrigo an exclusive right to market, distribute, and sell Alpharma's generic version of OTC Children's Motrin. Perrigo and Alpharma agreed that Alpharma would retain the right to manufacture, market, distribute, and sell a prescription generic version of Children's Motrin.

74. Alpharma agreed that it would not begin marketing, selling, or distributing any other OTC ibuprofen oral suspension product for pediatric use, whether patented or not, without first giving Perrigo an opportunity to enter into another agreement to jointly pursue the opportunity with Alpharma, and thereby further restrain trade and destroy competition.

75. Perrigo and Alpharma knew that Perrigo was paying a large amount of money in exchange for Alpharma's promise not to compete in the OTC market for generic Children's Motrin.

76. The Agreement provided that Perrigo's per-bottle royalty payment to Alpharma would cease upon final FDA approval of any other party's application for a generic version of Children's Motrin. However, such approval would not end Perrigo's continuing obligation to pay Alpharma a royalty calculated as a percentage of Perrigo's net sales of OTC generic Children's Motrin.

77. At the time that the Agreement was signed, Perrigo and Alpharma both had expectations that Alpharma would receive final approval of ANDA 74-916 no later than August 1998.

78. Shortly after entering into the Agreement, Perrigo and Alpharma learned that the FDA had granted McNeil's request for an additional six-month exclusivity period for pediatric testing. Accordingly, neither company's ANDA could receive final approval until December 18, 1998.

79. On December 14, 1998, Perrigo and Alpharma amended their agreement because of the exclusivity extension, extending certain dates by six months.

80. Perrigo and Alpharma further modified the Agreement on December 17, 1998. Alpharma sent a letter to the FDA relinquishing Alpharma's 180-day exclusivity. This allowed Perrigo to enter the market upon the expiration of McNeil's exclusivity and the final approval of Perrigo's ANDA.

81. Perrigo became the only company marketing OTC generic Children's Motrin shortly after receiving final approval on December 22, 1998. As required by the Agreement, Perrigo paid Alpharma $3.5 million in exchange for Alpharma's agreement not to compete.

82. In the absence of the competitive threat that Alpharma would have provided in a free marketplace, Perrigo began charging its customers higher prices for OTC generic Children's Motrin soon after entering the market as the sole supplier.

83. Alpharma received final approval of ANDA 74-916 in April 1999. Pursuant to the terms of its agreement with Perrigo, Alpharma did not enter the market, thereby destroying the competition that is intrinsic to our market based economy.

84. At all times since executing their June 1998 Agreement, Perrigo and Alpharma have been the only two companies with FDA approval for generic versions of Children's Motrin.

85. In May 2004, after being notified that the situation was being investigated by state and federal authorities, Perrigo and Alpharma rescinded their anticompetitive agreement.

### TRADE AND COMMERCE

86. During the relevant period, OTC generic Children's Motrin was sold throughout the United States. OTC generic Children's Motrin was transported across state lines and sold in each of the Plaintiff States. Perrigo's unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

### RELEVANT MARKET

87. The relevant product market is the manufacture and sale of OTC generic Children's Motrin.

88. The relevant geographic antitrust market is the United States, including all commonwealths, territories and protectorates.

89. At all relevant times, Perrigo has maintained 100% of the market for OTC generic Children's Motrin.

### ANTICOMPETITIVE EFFECTS OF DEFENDANTS' ILLEGAL CONDUCT

90. Perrigo and Alpharma's agreement not to compete was a naked restraint of trade with no purpose except stifling of competition.

91. Even under a broader inquiry, the agreement is anticompetitive.

92. Perrigo and Alpharma's conduct had the purpose and effect of unreasonably and illegally restraining trade and preventing competition between products in the relevant market.

22

93. Perrigo and Alpharma's agreement to eliminate competition is not reasonably necessary to accomplish any procompetitive objective. The agreement was not subsidiary to any procompetitive objective. Eliminating competition from Alpharma was a primary purpose of Perrigo's unlawful agreement with Alpharma.

94. As a direct and proximate result of the illegal conduct alleged above, the Plaintiff States and other persons would have been able to purchase OTC generic Children's Motrin at lower prices.

95. By allocating the market, Perrigo and Alpharma deprived Plaintiff States of the benefits of competition that the federal and state antitrust laws, consumer protection laws and/or unfair competition statutes and related state laws are designed to promote, preserve, and protect.

96. As a direct and proximate result of the unlawful conduct alleged above, Perrigo has unjustly profited from its illegally obtained 100% share of the market for OTC generic Children's Motrin.

97. As a direct and proximate result of the unlawful conduct alleged above, Alpharma has unjustly profited from the Agreement with Perrigo.

## CONSPIRACY IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT

98. On June 16, 1998, Perrigo and Alpharma signed an Agreement that allocated to Perrigo 100% of the market for OTC generic Children's Motrin, the purpose and effect of which was to restrain trade and eliminate competition in the relevant market and to allocate the relevant market between them in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

99. In the absence of Perrigo and Alpharma's antitrust violations, Alpharma would have entered the market with OTC generic Children's Motrin.

100.   As a result of Perrigo and Alpharma's antitrust violations, Plaintiff States and persons within those states spent significantly more for the purchase of generic Children's Motrin than they would have in the absence of antitrust violations.

## SUPPLEMENTAL STATE LAW CLAIMS

101.   Plaintiff State of Alabama repeats and realleges each and every allegation contained in paragraphs 1 through 100.

102.   Defendants' acts violate, and Plaintiff State of Alabama is entitled to relief under, the Deceptive Trade Practices Act, Section 8-19-1, et seq., Code of Alabama 1975.  Section 8-19-11, Code of Alabama 1975 provides for civil penalties and reasonable attorney fees.

103.   Plaintiff State of Alaska repeats and realleges each and every allegation contained in paragraphs 1 through 100.

104.   Defendants' acts violate, and Plaintiff State of Alaska is entitled to relief under, AS 45.50.471 and AS 45.50.562 - .596.

105.   Plaintiff State of Arizona repeats and realleges each and every allegation contained in paragraphs 1 through 100.

106.   Defendants' acts violate, and Plaintiff State of Arizona is entitled to relief under, Arizona Uniform State Antitrust Act, Arizona Revised Statutes section 44-1401 et seq.

107.   Plaintiff State of Arkansas repeats and realleges each and every allegation contained in paragraphs 1 through 100.

108.   Defendants' acts violate, and Plaintiff State of Arkansas is entitled to relief under, the Arkansas Deceptive Trade Practices Act, A.C.A. § 4-88-101, et seq. and the Arkansas Unfair Practices Act, A.C.A. § 4-75-301 et seq.

24

109.  Plaintiff State of California repeats and realleges each and every allegation contained in paragraphs 1 through 100.

110.  Defendants' acts violate, and Plaintiff State of California is entitled to relief under, the Cartwright Act, Business & Professions Code § 16700, et seq., and the California Unfair Competition Act, Bus. & Prof. Code § 17200, et seq.

111.  Plaintiff State of Colorado repeats and realleges each and every allegation contained in paragraphs 1 through 100.

112.  Defendants' acts violate, and Plaintiff State of Colorado is entitled to relief under, the Colorado Antitrust Act of 1992, § 6-4-101, et seq., Colo. Rev. Stat.

113.  Plaintiff State of Connecticut repeats and realleges each and every allegation contained in paragraphs 1 through 100.

114.  Defendants' acts violate, and Plaintiff State of Connecticut is entitled to relief under, the Connecticut Antitrust Act, § 35-24, et seq. of the General Statutes of Connecticut.

115.  Plaintiff State of Delaware repeats and realleges each and every allegation contained in paragraphs 1 through 100.

116.  Defendants' acts violate, and Plaintiff State of Delaware is entitled to relief under, the Delaware Antitrust Act, 6 Del.C. § 2101, et seq.

117.  Plaintiff District of Columbia repeats and realleges each and every allegation contained in paragraphs 1 through 100.

118.  Defendants' acts violate, and Plaintiff District of Columbia is entitled to relief under, D.C. Official Code § 28-4502, et seq. (2001).

119.  Plaintiff State of Florida repeats and realleges each and every allegation contained in paragraphs 1 through 100.

120.  Defendants' acts violate, and Plaintiff State of Florida is entitled to relief under, the Florida Antitrust Act of 1980, § 542.15 Florida Statutes, et seq., and the Florida Deceptive and Unfair Trade Practices Act, § 501.201 Florida Statutes, et seq.

121.  Plaintiff State of Georgia repeats and realleges each and every allegation contained in paragraphs 1 through 100.

122.  Defendants' acts violate, and Plaintiff State of Georgia is entitled to relief under, Official Code of Georgia Annotated (OCGA) § 13-8-2 and Ga. Const. Art. III, Sec. VI, para. 5 (1983).

123.  Plaintiff State of Hawaii repeats and realleges each and every allegation contained in paragraphs 1 through 100.

124.  Defendants' acts violate, and Plaintiff State of Hawaii is entitled to relief under, Hawaii's Monopolies and Restraint of Trade Law, Section 480-1, et seq., Hawaii Revised Statutes.

125.  Plaintiff State of Idaho repeats and realleges each and every allegation contained in paragraphs 1 through 100.

126.  Defendants' acts violate, and Plaintiff State of Idaho is entitled to relief under, the Idaho Competition Act, Idaho Code § 48-101 et seq.

127.  Plaintiff State of Illinois repeats and realleges each and every allegation contained in paragraphs 1 through 100.

128.  Defendants' acts violate, and Plaintiff State of Illinois is entitled to relief under, the Illinois Antitrust Act, 740 ILCS 10/1, et seq.

129.  Plaintiff State of Indiana repeats and realleges each and every allegation contained in paragraphs 1 through 100.

130. Defendants' acts violate, and Plaintiff State of Indiana is entitled to relief under, Indiana's Antitrust law, Ind. Code § 24-1-1-1, et seq., and the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1, et seq.

131. Plaintiff State of Iowa repeats and realleges each and every allegation contained in paragraphs 1 through 100.

132. Defendants' acts violate, and Plaintiff State of Iowa is entitled to relief under, the laws of the State of Iowa, alleging violations of the Iowa Competition Act, Iowa Code sections 553 et seq., and the Iowa Consumer Fraud Act, Iowa Code section 714.16.

133. Plaintiff Commonwealth of Kentucky repeats and realleges each and every allegation contained in paragraphs 1 to 100.

134. Defendant's acts violate, and Plaintiff Commonwealth of Kentucky is entitled to relief under, the Kentucky Antitrust Law, KRS 367.175.

135. Plaintiff State of Louisiana repeats and realleges each and every allegation contained in paragraphs 1 through 100.

136. Defendants' acts violate, and Plaintiff State of Louisiana is entitled to relief under, the Louisiana Antitrust Act, La. R.S. 51: 122, et seq., and La. R.S. 51:1401, et seq.

137. Plaintiff State of Maine repeats and realleges each and every allegation contained in paragraphs 1 through 100.

138. Defendants' acts violate, and Plaintiff State of Maine is entitled to relief under, Maine's Monopolies and Profiteering law, Title 10, Maine Revised Statutes, §§ 1101 and 1104.

139. Plaintiff State of Maryland repeats and realleges each and every allegation contained in paragraphs 1 through 100.

140. Defendants' acts violate, and Plaintiff State of Maryland is entitled to relief under, the Maryland Antitrust Act, Md. Com. Law Code Ann. § 11-201, et seq.

141. Plaintiff Commonwealth of Massachusetts repeats and realleges each and every allegation contained in paragraphs 1 through 100.

142. Defendants' acts violate, and Plaintiff Commonwealth of Massachusetts is entitled to relief under, the Consumer Protection and Antitrust Acts, G.L. c.93A § 2, et seq., and G.L. c.93 § 4, et seq., respectively.

143. Plaintiff State of Michigan repeats and realleges each and every allegation contained in paragraphs 1 through 100.

144. Defendants' acts violate, and Plaintiff State of Michigan is entitled to relief under, the Michigan Antitrust Reform Act, Mich. Comp. Laws Ann. § 445.771, et seq., the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq., and the common law of Michigan.

145. Plaintiff State of Mississippi repeats and realleges each and every allegation contained in paragraphs 1 through 100.

146. Defendants' acts violate, and Plaintiff State of Mississippi is entitled to relief under, its Consumer Protection Act found at Miss. Code Ann. § 75-24-1, et seq. (1972, as amended) and its Antitrust Act found at Miss. Code Ann. § 75-21-1, et seq. (1972, as amended).

147. Plaintiff State of Montana repeats and realleges each and every allegation contained in paragraphs 1 through 100.

148. Defendants' acts violate, and Plaintiff State of Montana is entitled to relief under, M.C.A. 30-14-101, et seq.

149.  Plaintiff State of Nebraska repeats and realleges each and every allegation contained in paragraphs 1 through 100.

150.  Defendants' acts violate, and Plaintiff State of Nebraska is entitled to relief under, the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, et seq., the Nebraska Unlawful Restraint on Trade Act, Neb. Rev. Stat. §§ 59-801, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301, et seq.

151.  Plaintiff State of Nevada repeats and realleges each and every allegation contained in paragraphs 1 through 100.

152.  Defendants' acts violate, and Plaintiff State of Nevada is entitled to relief under, Chapter 598A of the Nevada Revised Statutes.

153.  Plaintiff State of New Hampshire repeats and realleges each and every allegation contained in paragraphs 1 through 100.

154.  Defendants' acts violate, and Plaintiff State of New Hampshire is entitled to relief under, the NH Combinations and Monopolies Act, NH RSA 356, et seq.

155.  Plaintiff State of New Jersey repeats and realleges each and every allegation contained in paragraphs 1 through 100.

156.  Defendants' acts violate, and Plaintiff State of New Jersey is entitled to relief under, the New Jersey Antitrust Act, N.J.S.A. 56:9-1, et seq.

157.  Plaintiff State of New Mexico repeats and realleges each and every allegation contained in paragraphs 1 through 100.

158.  Defendants' acts violate, and Plaintiff State of New Mexico is entitled to relief under, the New Mexico Antitrust Act, Sec. 57-1-1, et seq., N.M.S.A. 1978.

159. Plaintiff State of New York repeats and realleges each and every allegation contained in paragraphs 1 through 100.

160. Defendants' acts violate, and Plaintiff State of New York is entitled to relief under, N.Y. Gen. Bus. Law §§ 340, 342, and 342-a.

161. Plaintiff State of North Dakota repeats and realleges each and every allegation contained in paragraphs 1 through 100.

162. Defendants' acts violate, and Plaintiff State of North Dakota is entitled to relief under, the Uniform State Antitrust Act, N.D. Cent. Code § 51-08.1-01, et seq.

163. Plaintiff Commonwealth of the Northern Mariana Islands repeats and realleges each and every allegation contained in paragraphs 1 through 100.

164. Defendants' acts violate, and Plaintiff Commonwealth of the Northern Mariana Islands is entitled to relief under, the Unfair Business Practices Act, 4 C.M.C. 5201 et seq.

165. Plaintiff State of Ohio repeats and realleges each and every allegation contained in paragraphs 1 through 100.

166. Defendants' acts violate, and Plaintiff State of Ohio is entitled to relief under, Ohio's Antitrust Law, Ohio Revised Code, § 109.81 and 1331.01, et seq.

167. Plaintiff State of Oklahoma repeats and realleges each and every allegation contained in paragraphs 1 through 100.

168. Defendants' acts violate, and Plaintiff State of Oklahoma is entitled to relief under, The Oklahoma Antitrust Reform Act, 79 O.S. 2001 §201, et seq.

169. Plaintiff State of Oregon repeats and realleges each and every allegation contained in paragraphs 1 through 100.

170. Defendants' act violate, and Plaintiff State of Oregon is entitled to relief under, the Oregon Antitrust Act, ORS 646.705, et seq.

171. Plaintiff Commonwealth of Pennsylvania repeats and realleges each and every allegation contained in paragraphs 1 through 100.

172. Defendants' acts violate, and Plaintiff Commonwealth of Pennsylvania is entitled to relief under, Pennsylvania common law doctrines against restraint of trade and unjust enrichment proceeding under 71 Pennsylvania Statutes Annotated § 732-204(c).

173. Plaintiff Commonwealth of Puerto Rico repeats and realleges each and every allegation contained in paragraphs 1 through 100.

174. Defendants' acts violate, and Plaintiff Commonwealth of Puerto Rico is entitled to relief under, Monopolies and Restraint, Act No. 77 as amended, June 25, 1964, 10 laws P.R. Ann. § § 257, et seq.

175. Plaintiff State of Rhode Island repeats and realleges each and every allegation contained in paragraphs 1 through 100.

176. Defendants' acts violate, and Plaintiff State of Rhode Island is entitled to relief under, Rhode Island General Laws Chapter 6-36, entitled the "Rhode Island Antitrust Act."

177. Plaintiff State of South Carolina repeats and realleges each and every allegation contained in paragraphs 1 through 100.

178. Defendants' acts violate, and Plaintiff State of South Carolina is entitled to relief under, the South Carolina Unfair Trade Practices Act, §§ 39-5-10, et seq.

179. Plaintiff State of South Dakota repeats and realleges each and every allegation contained in paragraphs 1 through 100.

180. Defendants' acts violate, and Plaintiff State of South Dakota is entitled to relief under, South Dakota Codified Laws ch. 37-1.

181. Plaintiff State of Tennessee repeats and realleges each and every allegation contained in paragraphs 1 through 100.

182. Defendants' acts violate, and Plaintiff State of Tennessee is entitled to relief under, the Tennessee Antitrust Act, Tenn. Code Ann. §§ 47-25-101, et seq.

183. Plaintiff State of Texas repeats and realleges each and every allegation contained in paragraphs 1 through 100.

184. Defendants' acts violate, and Plaintiff State of Texas is entitled to relief under, the Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com. Code § 15.01, et seq.

185. Plaintiff Territory of the United States Virgin Islands repeats and realleges each and every allegation contained in paragraphs 1 through 100.

186. Defendants' acts violate, and Plaintiff Territory of the United States Virgin Islands is entitled to relief under, Virgin Islands Code 11 V.I.C. §§1503 & 1507.

187. Plaintiff State of Utah repeats and realleges each and every allegation contained in paragraphs 1 through 100.

188. Defendants' acts violate, and Plaintiff State of Utah is entitled to relief under, the Utah Antitrust Act, Sections 76-10-911 through 76-10-925, Utah Code Annotated, as amended.

189. Plaintiff State of Vermont repeats and realleges each and every allegation contained in paragraphs 1 through 100.

190. Defendants' acts violate, and Plaintiff State of Vermont is entitled to relief under, the Vermont Consumer Fraud Act, 9 V.S.A. Section 2451, et seq.

32

191. Plaintiff Commonwealth of Virginia repeats and realleges each and every allegation contained in paragraphs 1 through 100.

192. Defendants' acts violate, and Plaintiff Commonwealth of Virginia is entitled to relief under, the Virginia Antitrust Act, Va. Code Ann. Section 59.1-9.5

193. Plaintiff State of Washington repeats and realleges each and every allegation contained in paragraphs 1 through 100.

194. Defendants' acts violate, and Plaintiff State of Washington is entitled to relief under, the Unfair Business Practices-Consumer Protection Act, Wash. Rev. Code 19.86.

195. Plaintiff State of West Virginia repeats and realleges each and every allegation contained in paragraphs 1 through 100.

196. Defendants' acts violate, and Plaintiff State of West Virginia is entitled to relief under, the West Virginia Antitrust Act, W.Va. Code §§ 47-18-1, et seq.

197. Plaintiff State of Wisconsin repeats and realleges each and every allegation contained in paragraphs 1 through 100.

198. Defendants' acts violate, and Plaintiff State of Wisconsin is entitled to relief under, the Wisconsin antitrust statute, Wis. Stat. §§ 133.01, et seq.

199. Plaintiff State of Wyoming repeats and realleges each and every allegation contained in paragraphs 1 through 100.

200. Defendants' acts violate, and Plaintiff State of Wyoming is entitled to relief under, Wyo. Stat. §§ 40-4-101 to 123.

## REQUEST FOR RELIEF

Accordingly, the Plaintiff States request that this Court:

33

1. Adjudge and decree that Defendants engaged in conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

2. Adjudge and decree that Defendants engaged in conduct in violation of each of the state statutes and common law enumerated in this Complaint;

3. Enjoin and restrain, pursuant to federal and state law, Defendants, their affiliates, assignees, subsidiaries, successors and transferees, and their officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf or in concert with them, from engaging in any conduct and from adopting any practice, plan, program or device having a similar purpose or effect to the anticompetitive actions set forth above;

4. Award to Plaintiff States any other equitable relief as the Court finds appropriate to redress Defendants' violations of state law;

5. Award to each Plaintiff State the maximum civil penalties allowed by law;

6. Award to each Plaintiff State its costs, including reasonable attorneys' fees; and

7. Order any other relief that this Court deems proper.

DATED: August 17, 2004

Respectfully submitted,

PLAINTIFF STATES

STATE OF COLORADO
KEN SALAZAR
Attorney General

DEVIN M. LAIHO
Assistant Attorney General
Consumer Protection Section
Attorneys for the State of Colorado
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: 303-866-5079

STATE OF MARYLAND
J. JOSEPH CURRAN, JR.
Attorney General

MEREDYTH SMITH ANDRUS
Assistant Attorney General
Ellen S. Cooper
Chief, Antitrust Division
Attorneys for the State of Maryland
200 St. Paul Street
Baltimore, Maryland 21202
Telephone: 410-576-6470

STATE OF OHIO
JIM PETRO
Attorney General
Mitchell L. Gentile
Principal Attorney
Jennifer Edwards
Assistant Attorney General
Attorneys for the State of Ohio
Antitrust Section
150 East Gay Street, 20th Floor
Columbus, Ohio 43215
Telephone: 614-466-4328

STATE OF FLORIDA
CHARLES J. CRIST
Attorney General
Patricia A. Conners
Director, Antitrust Division
Nicholas J. Weilhammer
Assistant Attorney General
Attorneys for the State of Florida
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone: 850-414-3600

STATE OF ALABAMA
TROY KING
Attorney General
Deanna Fults
Chief of Consumer Affairs
Attorneys for the State of Alabama

Consumer Protection/Antitrust Division
11 South Union Street
Montgomery, Alabama 36130
Telephone: 334-242-7333

STATE OF ALASKA
GREGG D. RENKES
Attorney General
Clyde E. Sniffen, Jr
Assistant Attorney General
Fair Business and Commercial Section
Attorneys for the State of Alaska
Alaska Attorney General's Office
1031 W. 4th. Avenue # 200
Anchorage, Alaska  99501
Telephone: 907-269-5200

STATE OF ARIZONA
TERRY GODDARD
Attorney General
Nancy M. Bonnell
Antitrust Unit Chief
Public Advocacy Division
Attorneys for the State of Arizona
Office of the Attorney General
1275 West Washington
Phoenix, Arizona 85007-2926
Telephone: 602-542-7752

STATE OF ARKANSAS
MIKE BEEBE
Attorney General of Arkansas
Teresa Marks
Deputy Attorney General for Public Protection
Bradford J. Phelps
Assistant Attorney General
Attorneys for the State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Telephone: 501-682-3625

STATE OF CALIFORNIA
BILL LOCKYER
Attorney General
Richard M. Frank
Chief Deputy Attorney General

J. Thomas Greene
Chief Assistant Attorney General
Kathleen E. Foote
Senior Assistant Attorney General
Attorneys for the State of California
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Telephone: 415-703-5555

STATE OF CONNECTICUT
RICHARD BLUMENTHAL
Attorney General
Michael E. Cole
Department Head, Antitrust Department
Assistant Attorney General
Steven M. Rutstein
Assistant Attorney General
Special Counsel for Multistate Antitrust
Attorneys for the State of Connecticut
55 Elm Street
Hartford, Connecticut 06106
Telephone: 860-808-5169

STATE OF DELAWARE
M. JANE BRADY
Attorney General
Michael A. Undorf
Deputy Attorney General
Attorneys for the State of Delaware
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, Delaware 19801
Telephone: 302-577-8924

DISTRICT OF COLUMBIA
ROBERT J. SPAGNOLETTI
Attorney General
David M. Rubenstein
Deputy Attorney General
Public Safety Division
Bennett Rushkoff (#386925)
Chief, Consumer and Trade Protection Section
Don A. Resnikoff
Assistant Attorney General
Anika Sanders Cooper (#458863)

Assistant Attorney General
Attorneys for the District of Columbia
Office of the Attorney General for the District of Columbia
441 Fourth Street, NW, Suite 450N
Washington, District of Columbia 20001
Telephone: 202-727-6241

STATE OF GEORGIA
THURBERT E. BAKER
Attorney General
Isaac Byrd
Deputy Attorney General
Sidney R. Barrett, Jr.
Senior Assistant Attorney General
Attorneys for the State of Georgia
Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Telephone: 404-656-3202

STATE OF HAWAII
MARK J. BENNETT
Attorney General
Richard T. Bissen, Jr.
First Deputy Attorney General
Michael L. Meaney
Deputy Attorney General
Attorneys for the State of Hawaii
425 Queen Street
Honolulu, Hawaii 96813
Telephone: 808-586-1292

STATE OF IDAHO
LAWRENCE G. WASDEN
Attorney General
Brett T. DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
Attorneys for the State of Idaho
Len B. Jordan Building
650 W. State St., Lower Level
P. O. Box 83720
Boise, Idaho 83720-0010
Telephone: 208-334-2424

STATE OF ILLINOIS
LISA MADIGAN
Attorney General
Robert W. Pratt
Chief, Antitrust Bureau
Attorneys for the State of Illinois
Office of the Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
Telephone: 312-814-3722

STATE OF INDIANA
STEVE CARTER
Attorney General
Terry Tolliver
Deputy Attorney General
Attorneys for the State of Indiana
Office of Attorney General
Indiana Government Center South
302 W. Washington, 5th Floor
Indianapolis, Indiana 46204
Telephone: 317-233-3300

STATE OF IOWA
THOMAS J. MILLER
Attorney General
John. F. Dwyer
Attorney
Layne M. Lindebak
Assistant Attorney General
Attorneys for the State of Iowa
2nd Floor, Hoover Office Building
East 13th & Walnut Street
Des Moines, Iowa 50319
Telephone: 515-281-7054

COMMONWEALTH OF KENTUCKY
GREGORY D. STUMBO
David R. Vandeventer
Assistant Attorney General
Consumer Protection Division
Attorneys for the Commonwealth of Kentucky
1024 Capital Center Dr.
Frankfort, Kentucky 40601
Telephone: 502-696-5389

STATE OF LOUISIANA
CHARLES C. FOTI, JR.
Attorney General
Jane Bishop Johnson
Assistant Attorney General
Attorneys for the State of Louisiana
1885 N. 3rd Street, 4th Floor
Baton Rouge, Louisiana 70802
Telephone: 225-326-6467

STATE OF MAINE
G. STEVEN ROWE
Attorney General
Christina Moylan
Assistant Attorney General
Attorneys for the State of Maine
6 State House Station
Augusta, Maine 04333-0006
Telephone: 207-626-8800

COMMONWEALTH OF MASSACHUSETTS
THOMAS F. REILLY
Attorney General
Judith M. Whiting
Assistant Attorney General
Consumer Protection and Antitrust Division
Attorneys for the Commonwealth of Massachusetts
Office of the Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, Massachusetts 02108
Telephone: 617-727-2200, ext. 2959

STATE OF MICHIGAN
MICHAEL A. COX
Attorney General
Michelle M. Rick
Assistant Attorney General
Special Litigation Division
Antitrust Section
Attorneys for the State of Michigan
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48913
Telephone: 517-373-1123

STATE OF MISSISSIPPI
JIM HOOD
Attorney General
Linda Coston Davis
Special Assistant Attorney General
Attorneys for the State of Mississippi
Post Office Box 22947
Jackson, Mississippi 39225
Telephone: 601-359-4230

STATE OF MONTANA
CORT JENSEN
Special Assistant Attorney General
Consumer Protection Office
Attorney for the State Montana
Department of Administration
1219 8th Ave
Helena, Montana 59620
Telephone: 406-444-5439

STATE OF NEBRASKA
JON BRUNING
Attorney General
Leslie C. Levy
Assistant Attorney General
Director, Consumer Protection & Antitrust Division
Attorneys for the State of Nebraska
2115 State Capitol Building
Lincoln, Nebraska 68509
Telephone: 402-471-2683

STATE OF NEVADA
BRIAN SANDOVAL
Attorney General
Timothy D. Hay
Consumer Advocate
Chief Deputy Attorney General
Attorneys for the State of Nevada
Bureau of Consumer Protection
1000 E. William Street, Ste. 200
Carson City, Nevada 89701-3117
Telephone: 775-687-6300

STATE OF NEW HAMPSHIRE
KELLY A. AYOTTE
Attorney General

David A. Rienzo
Assistant Attorney General
Attorneys for the State of New Hampshire
Consumer Protection and Antitrust Bureau
33 Capitol Street
Concord, New Hampshire 03301
Telephone: 603-271-3643

STATE OF NEW JERSEY
PETER C. HARVEY
Attorney General
Andrew L. Rossner
Assistant Attorney General
New Jersey Division of Criminal Justice
Antitrust and Procurement Fraud Bureau
Attorneys for the State of New Jersey
P.O. Box 085
Trenton, New Jersey  08625-0085
Telephone:  609-984-0020

STATE OF NEW MEXICO
PATRICIA A. MADRID
Attorney General
Deyonna Young
Assistant Attorney General
Attorneys for the State of New Mexico
111 Lomas Boulevard, Suite 300
Albuquerque, New Mexico 87102
Telephone: 505-222-9089

STATE OF NEW YORK
ELIOT SPITZER
Attorney General
Jay L. Himes
Bureau Chief, Antitrust Bureau
Robert L. Hubbard
Director of Litigation, Antitrust Bureau
Attorneys for the State of New York
New York State Department of Law
120 Broadway, Suite 26C
New York, New York 10271-0332
Telephone: 212-416-8267

STATE OF NORTH DAKOTA
WAYNE STENEHJEM
Attorney General

Todd A. Sattler, ID No. 05718
Assistant Attorney General
Consumer Protection and Antitrust Division
Attorneys for the State of North Dakota
Office of Attorney General
P.O. Box 1054
Bismarck, North Dakota 58502-1054
Telephone: 701-328-5570

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
PAMELA BROWN
Attorney General
Benjamin Sachs
Chief, Civil Division
Brian R. Caldwell
Assistant Attorney General
Consumer Protection Section
Attorneys for the Commonwealth of Northern Mariana Islands
Caller Box 10007, Capitol Hill
Saipan, MP 96950
Telephone: 670-664-2338

STATE OF OKLAHOMA
W.A. DREW EDMONDSON
Attorney General
Thomas A. Bates
Julie Bays
Assistant Attorneys General
Attorneys for the State of Oklahoma
4545 N. Lincoln Blvd., Suite 260
Oklahoma City, Oklahoma 73105
Telephone: 405-522-1013

STATE OF OREGON
HARDY MYERS
Attorney General
Michelle Teed
Assistant Attorney General
Attorneys for the State of Oregon
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301
Telephone: 503-947-4333

COMMONWEALTH OF PENNSYLVANIA
GERALD J. PAPPERT

Attorney General
James A. Donahue, III
Chief Deputy Attorney General
Joseph S. Betsko
Deputy Attorney General
Antitrust Section
Attorneys for the Commonwealth of Pennsylvania
Strawberry Square, 14th Floor
Harrisburg, Pennsylvania 17120
Telephone: 717-787-4530

COMMONWEALTH OF PUERTO RICO
ANABELLE RODRIGUEZ
Secretary of Justice
Yumayra Serrano Murcelo
Special Prosecutor
Attorneys for the Commonwealth of Puerto Rico
Departamento de Justicia
Oficina de Asuntos Monopolísticos
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: 787-721-2900 ext. 2224

STATE OF RHODE ISLAND
PATRICK C. LYNCH
Attorney General
Edmund F. Murray, Jr.
Special Assistant Attorney General
Chief, Antitrust Unit
Attorneys for the State of Rhode Island
Rhode Island Department of Attorney General
150 South Main Street
Providence, Rhode Island 02903
Telephone: 401-274-4400 Ext.2401

STATE OF SOUTH CAROLINA
HENRY D. McMASTER
Attorney General
C. Havird Jones, Jr.
Senior Assistant Attorney General
Attorneys for the State of South Carolina
P. O. Box 11549
Columbia, South Carolina 29211
Telephone: 803-734-3680

STATE OF SOUTH DAKOTA

44

LAWRENCE E. LONG
Attorney General
Jeffrey P. Hallem
Assistant Attorney General
Attorneys for the State of South Dakota
500 E. Capitol
Pierre, South Dakota 57501-5070
Telephone: 605-773-3215

STATE OF TENNESSEE
PAUL G. SUMMERS
Attorney General
S. Elizabeth Martin
Senior Counsel
Antitrust Division
Attorneys for the State of Tennessee
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, Tennessee 37202-0207
Telephone: 615-532-5732

STATE OF TEXAS
GREG ABBOTT
Attorney General
Mark A. Levy
Assistant Attorney General
Attorneys for the State of Texas
P.O. Box 12548
Austin, Texas 78711
Telephone: 512-936-1847

TERRITORY OF THE UNITED STATES VIRGIN ISLANDS
IVER A. STRIDIRON
Attorney General
Attorney for the Territory of the United States Virgin Islands
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802
Telephone: 340-774-5666

STATE OF UTAH
MARK L. SHURTLEFF
Attorney General
Ronald J. Ockey
Assistant Attorney General
Attorneys for the State of Utah

160 East 300 South, Fifth Floor
Salt Lake City, Utah 84111
Telephone: 801-366-0359

STATE OF VERMONT
WILLIAM H. SORRELL
Attorney General
Julie Brill
David Borsykowsky
Assistant Attorneys General
Attorneys for the State of Vermont
109 State Street
Montpelier, Vermont 05609-1001
Telephone: 802-828-3658

COMMONWEALTH OF VIRGINIA
JERRY W. KILGORE
Attorney General
Sarah Oxenham Allen
Courtney M. Malveaux
Assistant Attorneys General
Antitrust and Consumer Litigation Section
Attorneys for the Commonwealth of Virginia
900 East Main Street
Richmond, Virginia 23219
Telephone: 804-786-1925

STATE OF WASHINGTON
CHRISTINE O. GREGOIRE
Attorney General
Tina E. Kondo
Senior Assistant Attorney General
Antitrust Division Chief
Brady R. Johnson
Assistant Attorney General
Antitrust Division
Attorneys for the State of Washington
900 Fourth Avenue, Suite 2000
Seattle, Washington 98164
Telephone: 206-464-7589

STATE OF WEST VIRGINIA
DARRELL V. MCGRAW, JR.
Attorney General
Jill L. Miles

46

Deputy Attorney General
Douglas L. Davis
Assistant Attorney General
Attorneys for the State of West Virginia
P.O. Box 1789
Charleston, West Virginia 25326
Telephone: 304-558-8986

STATE OF WISCONSIN
PEGGY A. LAUTENSCHLAGER
Attorney General
Eric J. Wilson
Assistant Attorney General
Attorneys for the State of Wisconsin
Wisconsin Department of Justice
17 West Main Street
Madison, Wisconsin 53702
Telephone: 608-266-8986

STATE OF WYOMING
PATRICK J. CRANK
Attorney General
Peter Free
Assistant Attorney General
Attorneys for the State of Wyoming
Office of the Attorney General
123 State Capitol
Cheyenne, WY 82002
Telephone: 307-777-8781