```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   IN RE:  PHARMACEUTICAL
     INDUSTRY AVERAGE WHOLESALE
 5   PRICE LITIGATION,              Civil Action
                                    No. 01-12257-PBS
 6                                  MDL No. 1456

 7                                  July 24, 2008, 2:10 p.m.
     _____
 8

 9

10           TRANSCRIPT OF MOTION TO DISMISS

11        BEFORE THE HONORABLE PATTI B. SARIS

12            UNITED STATES DISTRICT COURT

13         JOHN J. MOAKLEY U.S. COURTHOUSE

14                 1 COURTHOUSE WAY

15                 BOSTON, MA  02210

16

17

18

19
                   DEBRA M. JOYCE, RMR, CRR
20                   Official Court Reporter
                 John J. Moakley U.S. Courthouse
21                1 Courthouse Way, Room 5204
                       Boston, MA  02210
22                       617-737-4410

23

24

25
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:

 3
     KENNETH J. BRENNAN, ESQ.
 4   SimmonsCooper LLC
     707 Berkshire Blvd
 5   East Alton, IL 62024
     618-259-2222
 6

 7   FOR THE DEFENDANTS:

 8
     SCOTT DAVID STEIN, ESQ. (Via Telephone)
 9   Sidley Austin LLP
     One South Dearborn Street
10   Chicago, IL 60603
     312-853-7520
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                  P R O C E E D I N G S
 2              (The following proceedings were held in open
 3    court before the Honorable Patti B. Saris, United States
 4    District Judge, United States District Court, District
 5    of Massachusetts, at the John J. Moakley United States
 6    Courthouse, 1 Courthouse Way, Boston, Massachusetts, on
 7    July 23, 2008.)
 8              THE CLERK:  In re:  Pharmaceutical Industry
 9    Average Wholesale Price Litigation, 01-12257 will now be
10    heard before this Court.
11              Will counsel please identify themselves for the
12    record.
13              MR. BRENNAN:  Kenneth Brennan for the relator.
14              MR. STEIN:  Scott Stein, Sidley Austin, for
15    Ortho McNeil Pharmaceutical.
16              THE COURT:  I understand you're stuck with the
17    weather.
18              MR. STEIN:  Yes, your Honor.  I sincerely
19    apologize for not being able to be there.
20              I was notified at 2:30 this morning that my
21    flight was cancelled and was then informed there was not
22    a single seat on a flight available that would get me
23    there in time for a hearing.
24              So I apologize to you and Mr. Brennan and
25    appreciate you letting me participate this way.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
1              THE COURT:  Where did you come from?
2              MR. BRENNAN:  St. Louis.  I had quite an
3    adventure last night.
4              THE COURT:  It's an odd time of year, because
5    you think you wouldn't be affected by weather patterns.
6              If you both are satisfied, I'm happy to go
7    forward with you on the phone and you here.  Is that
8    acceptable to both sides?
9              MR. BRENNAN:  It's fine with us.
10             MR. STEIN:  Yes, Judge.
11             THE COURT:  If you don't speak up, he'll never
12   hear you.
13             Can you hear him?
14             MR. STEIN:  Yes, I can hear you both quite well.
15             MR. BRENNAN:  Can you hear me, Judge?
16             THE COURT:  No, you need to speak up a little
17   bit. I guess the mic must just catch it.
18             So there's a motion to dismiss.  Can I just go
19   back and forth and see if I've got this right?
20             MR. STEIN:  That's fine, your Honor.
21             THE COURT:  So, as I understand it, you
22   initially moved to dismiss because hospitals do not
23   reimburse based on AWP, right?
24             MR. STEIN:  That's the subject of this motion,
25   correct.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1            THE COURT:  Right.
 2            You, attorney to relator, don't disagree with
 3   that, at least in the paper, that hospitals, for the
 4   most part, don't reimburse based on AWP; is that right?
 5            MR. BRENNAN:  That's accurate.
 6            THE COURT:  However, you push back and say but
 7   we weren't limited to hospitals, we're limited -- we
 8   make reference to physicians, right?
 9            MR. BRENNAN:  That's correct.
10            THE COURT:  As I understand it, then, the
11   defense comes back and says, well, you barely mention
12   physicians at all, but even if you do mention them,
13   there's no original jurisdiction because there's no
14   showing that he was an original source for the
15   physicians; is that right?
16            MR. STEIN:  Yes.
17            THE COURT:  All right.  So I just wanted to
18   distill it down, because I understand that there is no
19   dispute that the hospital reimbursements, that piece of
20   the claim, comes out because it is not AWP-based.  There
21   are other things related to the hospitals, but at least
22   with respect to the AWP reimbursement, that motion to
23   dismiss must be granted.
24            MR. BRENNAN:  Judge, that is not our position.
25   Our position is that -- on this issue is that the AWP is
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  not the basis for reimbursement but that the AWP
 2  certainly affects the DRG, which is --
 3          THE COURT:  No, I'm not doing that.  Right now,
 4  I think it has -- unless you show me where it says that,
 5  you have not -- that's why I started where I started,
 6  which is that you didn't disagree that hospital
 7  reimbursement was not based on AWP, right?
 8          MR. BRENNAN:  AWP impacts the hospital's
 9  reimbursement, not directly in the way that typically
10  reimbursement is in some circumstances --
11          THE COURT:  I can barely hear you, so you just
12  have to project.
13          MR. BRENNAN:  Your Honor, AWP is not the direct
14  basis for reimbursement for inpatient hospital or
15  outpatient hospital, that is true.  However, the AWP
16  affects the bases of inpatient and outpatient
17  reimbursement.
18          THE COURT:  Is that in your papers anywhere?
19          MR. BRENNAN:  This was not in our papers that we
20  filed.
21          THE COURT:  All right, then I'm not addressing
22  this.  As far as I'm concerned, to the extent it's
23  AWP-based, it's gone on hospitals, because that's what I
24  understood all the briefs have been about.  If there's
25  something else, you'll have to deal with it through an
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   appropriate way.
 2           But now let me get back to physicians.  Is there
 3   any evidence that he is an original source -- that, I
 4   guess -- Mr. West, I guess is his name, is an original
 5   source with respect to physicians?
 6           MR. BRENNAN:  The answer to that question is
 7   yes, Judge.  When the -- when you dismissed with leave
 8   to replead, I understood that we were basically to
 9   replead the seller, the buyer, and the spread, and
10   that's what we did.
11           In the initial or the first amended complaint,
12   we identified not just hospitals, but also physicians as
13   the target of the AWP scheme.  We filed an affidavit
14   from the relator explaining that the allegations in the
15   complaint, the first amended complaint, were based upon
16   his personal knowledge.
17           What you said in your order denying in part,
18   granting in part the initial motion to dismiss, was that
19   the defendants have not sought jurisdictional discovery
20   and that his affidavit is sufficient for purposes of the
21   motion to dismiss.
22           THE COURT:  That's accurate.
23           MR. BRENNAN:  Okay.
24           THE COURT:  And that's why I want to have this
25   hearing.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1            I had focused on this as a hospital-based case.
 2   That was 99.9 percent of what was talked about.
 3   Assuming -- you do mention physicians in a few scattered
 4   places.  But I want to -- I thought he was a hospital
 5   representative.
 6            MR. BRENNAN:  He was a hospital representative,
 7   and he dealt with physicians as well.  And frankly,
 8   Judge, we focused on this as a hospital-based case
 9   originally as well.  The period of 1997 to 2000 is the
10   period, is a period AWP was not used as a direct means
11   of reimbursement.  That was the period that you carved
12   our case down to in your prior order dismissing in part
13   and granting in part.  And the hospital allegations are
14   certainly the center -- central focus of many of the
15   other allegations in the complaint that don't relate
16   directly to AWP.
17            However, there is a slice remaining, and that
18   is, the physicians.
19            THE COURT:  Yes, but I need some evidence -- in
20   other words, I was willing to take his word for it with
21   respect to the hospitals because he was a hospital rep,
22   he was involved with hospitals, so I said, all right,
23   we'll do jurisdictional discovery.
24            I have no information that he would be involved
25   with doctors outside the context of a hospital.  That's
```

PDF created with pdfFactory trial version www.pdffactory.com

1  a serious concern for me.
2          Now, this all came up as part of -- have you
3  started -- let me turn back to defense.
4          Have you started doing any discovery yet?  Have
5  you had Mr. West's deposition taken?
6          MR. STEIN:  No, your Honor.  We have not -- the
7  AWP portion of the case is kind of like the elephant in
8  the living room right now, so I think both sides have
9  been waiting to get final clarification on the scope of
10 this case.  Because, frankly, the AWP -- having AWP-type
11 claims in here I think would dramatically expand the
12 scope of the case, and I suspect -- well, I won't speak
13 for plaintiff's counsel.  But the short answer is no.
14         If I could just say one other thing, your Honor,
15 frankly, I don't think that Mr. West's deposition would
16 be relevant to this.  It certainly may be relevant, but
17 if you remember, Mr. West can only proceed on
18 information that he disclosed to the government prior to
19 filing the suit.  So even if he were to now come back
20 and say, well, nobody asked me about physicians or I
21 didn't think to tell them about physicians at the time,
22 he could not bring those claims.
23         THE COURT:  But here's the problem:  You phrase
24 this as a motion to dismiss based on the fact that it's
25 an alleged AWP case and hospitals aren't reimbursed

PDF created with pdfFactory trial version www.pdffactory.com

1  based on AWP.  There's no response to that, essentially,
2  here other than to say but we also included physicians.
3            And so he's now saying, well, we did mention
4  physicians, which they did in passing, but at least at
5  this point, I'm not prepared to make a jurisdictional
6  analysis.  It wasn't fully vetted enough.
7            MR. STEIN:  Well, your Honor, actually, I should
8  say this is our view:  The statement that there are
9  allegations regarding physicians is correct; however, it
10 is absolutely incorrect to say that there are
11 allegations relating to physicians concerning AWP.  And
12 that is, you know, you can verify that just by going
13 back to look at the complaint, and you need to look no
14 further than the title of the section where AWP is
15 discussed, which is, rebates to lower the Medicaid
16 spread to hospitals.  And the fact that he would be
17 interacting with physicians is not dispositive here,
18 because he undoubtedly was talking to physicians,
19 because physicians are the ones who prescribe this drug,
20 which is an intravenous antibiotic.  So they prescribe
21 it in the hospital, but the fact that he's talking to
22 physicians or, you know, allegedly providing kickbacks
23 to physicians to encourage them to prescribe this drug
24 to their hospitalized patients doesn't in any way state
25 any kind of AWP claim.

```
 1              THE COURT:  I agree with that.  However, he also
 2     says, broadly, I think, an allegation about marketing
 3     the spread to doctors.
 4              MR. BRENNAN:  Your Honor, with --
 5              THE COURT:  So let me ask you to clarify, is
 6     that doctors who have hospitals inpatient or hospitals
 7     outpatient?
 8              MR. BRENNAN:  Both, your Honor.
 9              THE COURT:  Well, it's really, really vague.
10              MR. BRENNAN:  We could certainly make it more --
11              THE COURT:  I know, but I could keep doing this
12     is the problem.  I keep going back and forth and back
13     and forth is the thing.  I mean, we're not going to
14     start with the whole DRG-based -- did you cite -- you
15     didn't even refer to that in your opposition.
16              MR. BRENNAN:  No, correct.
17              THE COURT:  You let it pass.  So I'm dismissing
18     any AWP-based hospital claims.  Gone.
19              Now, going to the physician thing, I couldn't
20     tell from the complaint whether they were physicians in
21     the hospital or physicians in their own practices.
22              MR. BRENNAN:  Your Honor, if we could have leave
23     to replead on that issue, we could do so in short order.
24              THE COURT:  But we keep doing this.  This is
25     what I want:  For purposes of jurisdiction, I think we
```

PDF created with pdfFactory trial version www.pdffactory.com

 1   need at this point to do a jurisdictional deposition so
 2   I don't go back and forth with these affidavits and
 3   these amendments.  I'm not going to decide the
 4   jurisdictional issue with respect to physicians.  You're
 5   going to do a deposition of him and then heave it out if
 6   there's no more -- then you can move to dismiss for lack
 7   of subject matter jurisdiction with respect to that.
 8             MR. BRENNAN:  Now, before we go, you're correct
 9   that the DRG and the actual cost issues were not
10   briefed.
11             THE COURT:  Or alleged, right?
12             MR. BRENNAN:  Or alleged.
13             THE COURT:  Or alleged.  Am I right?  I think.
14   It's the first I heard of it ever, two seconds ago.
15             MR. STEIN:  There's nothing in the complaint
16   about DRGs in any of the complaints.
17             MR. BRENNAN:  That's accurate, Judge, that's
18   accurate.  However, in the interest of the United States
19   being able to recover its fraud, the omission -- it was
20   an omission.  We would like leave to be able to replead
21   that, respectfully, so that the full case could be
22   heard.  I mean, we're here, the case is before the
23   Court, that should have been briefed, it was not, it
24   should have been pled, it was not.  If we're given one
25   opportunity to replead, I think we can make a case that

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  in the interest of the United States --
 2          THE COURT:  Well, they declined to intervene in
 3  this case, didn't they?
 4          MR. BRENNAN:  They did, but they still have a
 5  real party in interest in it and have an interest to
 6  recovery to the extent they've been defrauded.
 7          THE COURT:  I'm disinclined.  Isn't this already
 8  an amended --
 9          MR. STEIN:  Yes, your Honor.  We're already on
10  our second amended complaint.
11          MR. BRENNAN:  This is a second amended
12  complaint, your Honor.  However, A, given the importance
13  of the issues; B, given the fact that most of the
14  complaint was not dismissed, most of the complaint was
15  kept alive, it was the AWP issue that was not kept
16  alive; and at the time we repled, frankly, Judge, our
17  time period was cut down to '97 to 2000 and we were
18  still focused on hospitals being reimbursed based on AWP
19  as opposed to DRG, which is clearly impacted
20  significantly, your Honor, by the AWP.  Because the drug
21  that we're dealing with here, Levaquin, is the most
22  prominently used drug for various respiratory, urinary
23  tract --
24          THE COURT:  What's the formula for DRG?
25          MR. BRENNAN:  The formula for DRG, I couldn't
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  tell you.  It's a sophisticated algorithm, but it
 2  includes the cost of the components of the treatment,
 3  and the primary cost, or a primary cost, I think it's
 4  safer to say at this point, of the cost for treatment
 5  for various forms of pneumonia is the antibiotic, and
 6  the antibiotic most used is Levaquin.  And by inflating
 7  to over 100 percent the cost that the hospital will
 8  report as having been included in the cost of treating a
 9  particular condition --
10            THE COURT:  How do you know that's AWP, the cost
11  of the ingredient that the hospital reports?
12            MR. BRENNAN:  Because the rebates come -- the
13  way this works with Ortho and with Levaquin -- Judge, if
14  you could give us an opportunity --
15            THE COURT:  Listen, I allowed the motion to
16  dismiss.  I'm not going to start with a whole brand new
17  thing.  Whether you want to bring a motion to amend,
18  you're just going to have to deal with it.  I'm going to
19  have to think about it, because it's already at the
20  second amended complaint, and I'm ready to move this
21  case forward.
22            On the physician issue, I deny the motion to
23  dismiss; however, I've got serious reservations about
24  whether there's subject matter jurisdiction over it, and
25  to boot, whether it's pled with particularity, which
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    isn't exactly how this came up.  And I am going to
 2    expect jurisdictional discovery of Mr. West as to
 3    whether he has any, A, original information; or, B, ever
 4    reported it in any kind of separate way, apart from the
 5    hospitals, to the U.S. Attorney's Office.
 6            So when can you -- have we done even a
 7    scheduling conference on this case yet?
 8            MR. BRENNAN:  We have not, Judge.
 9            THE COURT:  When do you want to do discovery?  I
10    mean, we have a whole case of in front of me, some of
11    which has survived.  So when do you want to have all
12    fact discovery done?
13            MR. STEIN:  Your Honor, perhaps I could --
14    Mr. Brennan and I could talk about that.  We haven't had
15    a chance to really sit down --
16            THE COURT:  Why don't I do a discovery order
17    right now, and if you want to change it, you can sit
18    down and move for reconsideration, just so we can start
19    this case.
20            So all automatic disclosures should be made
21    within 30 days and exchange of documents.
22            Two, all fact discovery should be done by -- why
23    don't we say by March 30th of next year.  It's a
24    complicated case and you can do all the fact discovery.
25    So March 30th.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1             So April 30th will be plaintiffs' expert report.
 2             May 30th, defense expert report.
 3             June 30th will be any expert depositions.
 4             July 30th will be any motion for summary
 5   judgment, any opposition comes in in due course.
 6             And a year from September we'll have hearings on
 7   any motions for summary judgment.
 8             MR. BRENNAN:  What was the last date, your
 9   Honor?
10             THE COURT:  Robert will send this to you.
11             So when do you want to do that, in September --
12   do you have a time right now, Robert, so we can --
13             THE CLERK:  Yes.
14             September 15th at 2:00 p.m.
15             THE COURT:  Now, I leave it up to the defense as
16   to when to do -- when you want to move to dismiss that
17   particular claim as barred under jurisdiction.  I've
18   clearly got jurisdiction over the others, I've already
19   ruled that, so I'm not in any rush.
20             MR. STEIN:  Well, I think we'll be interested in
21   getting it done quickly, and here's why -- and this
22   relates to the discovery schedule as well.  I think if
23   this turns into an AWP case, then I think there's real
24   question about what that means in terms of discovery.  I
25   understand your Honor has limited the case theoretically
```

```
 1   to the relator's territory and the time periods he
 2   worked for Ortho-McNeil, although I'm not quite sure if
 3   we've determined what that means really in terms of
 4   limitations on the kind of discovery seen in these cases
 5   of the various companies.
 6             If this isn't -- and we believe this is -- a
 7   kind of run-of-the-mill, you know, you paid money to
 8   doctors, you gave research grants type of case,
 9   obviously, the scope of discovery is much clearer and
10   much narrower.
11             So I think in the interest of getting certainty,
12   we'd like to move the jurisdictional discovery along.
13             What I would propose, frankly, we'll issue
14   discovery requests in 14 days, and hopefully relator can
15   respond in 14 days; I can't imagine that the relator has
16   a lot of documentation.
17             THE COURT:  Well, anything that he has relating
18   to his -- for starters, anything he reported to the U.S.
19   Attorney's Office with respect to physicians outside of
20   a hospital context.
21             MR. STEIN:  Correct.  And then I think we would
22   probably seek to have his deposition taken within 21
23   days of that, and --
24             THE COURT:  I leave it up to you.  There is
25   jurisdiction over three-quarters of the claims, that
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   doesn't mean that's three-quarters of the dollar value.
 2   So I don't know what the dollar value is.  I'm
 3   suspicious of the physician's claim, simply because that
 4   wasn't the thrust of the complaint.  So it may be you
 5   don't have a leg to stand on in terms of -- maybe
 6   outside of the hospital context will maybe just go away.
 7           But, in any event, I'm sick of the back and
 8   forth, there's been too many motions to amend the
 9   complaint, too many motions to dismiss, it's taken too
10   long to get to base one, and I'm going to get to base
11   one, that's what I'm going to do.
12           I've set the discovery schedule, we're going to
13   get going.
14           MR. BRENNAN:  Could I make one point?
15           THE COURT:  Yes.
16           MR. BRENNAN:  Respectfully -- I'm not showing
17   any disrespect here.
18           Because we're going to do jurisdictional
19   discovery in relatively short order and we're going to
20   face a motion to dismiss, I would ask one more time if
21   we could just include a motion to -- if we could quickly
22   replead the DRG issue, which I think is an important
23   issue.
24           THE COURT:  Excuse me.  It may be important, but
25   I'm on my second amended complaint and this was fully
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  teed up and I didn't hear a word of it, either in the
 2  complaint or in your opposition.  I've heard nothing
 3  about it, so I'm very suspicious.  If you want to move
 4  to amend and have a formal record after you've had a
 5  chance to brief it, you can do it, but right now, I've
 6  allowed a motion to dismiss the hospital claims.
 7          So that's where we're at.  If you want to move
 8  to amend, move to amend.  I certainly have received many
 9  motions to amend in my life.
10          MR. BRENNAN:  Okay, fair enough.
11          THE COURT:  But right now, we were fully vetted
12  right here, there will be plenty of time, motion,
13  opposition, reply, the whole thing, and I'm not going to
14  inject a new issue into it.
15          And I've got you a scheduling conference subject
16  to if you both disagree with it, you can move for
17  reconsideration, I think it's plenty of time, and as
18  soon as you want to tee up a jurisdictional dispute, you
19  do it.  But, essentially, you don't have any time
20  deadlines for a while.
21          Okay?  So that's what we're going to do, and I
22  guess on a scheduling conference, I want to just go off
23  the record for one second.
24              (Discussion off the record.)
25              (Court adjourned at 2:38 p.m.)
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                - - - - - - - - - - - -

 2                     CERTIFICATION

 3         I certify that the foregoing is a correct

 4   transcript of the record of proceedings in the

 5   above-entitled matter to the best of my skill and

 6   ability.

 7

 8

 9

10   /s/Debra M. Joyce                    _____
     Debra M. Joyce, RMR, CRR             Date
11   Official Court Reporter
```

PDF created with pdfFactory trial version www.pdffactory.com