## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Magistrate Judge Marianne B. Bowler |
| *Inc., Zachary T. Bentley, and T. Mark Jones* | ) | |
| *v. Abbott Laboratories, Inc.*, | ) | |
| No. 07-CV-11618-PBS | ) | |

### MEMORANDUM IN SUPPORT OF ABBOTT LABORATORIES INC.'S
### MOTION FOR ENTRY OF CASE MANAGEMENT ORDER

Ven-A-Care alone brings this case – another so-called AWP case, but involving only

Abbott's self-administered Erythromycin ("Ery") drugs and the Medicaid program.  Ven-A-

Care's case is fatally flawed in many ways, and the United States had ample reasons not to

intervene.  Two issues, however, particularly merit early disposition here:  the lack of

jurisdiction because Ven-A-Care is not the original source of these allegations and the wholesale

inadequacy of Ven-A-Care's damage methodology.  Abbott seeks a case management order

("CMO") that would permit the parties to address and resolve these two issues early in the case

or, in the alternative, at least would permit an appropriate amount of time for discovery in this

new case.

First, Ven-A-Care, a former home infusion pharmacy now acting solely as a

whistleblower litigant, brought this case in 2001, after there was, according to this Court's own

description, a "perfect storm" of government knowledge concerning the existence of large

spreads between AWP and providers' actual acquisition costs (*see In re Pharm. Indus. Average

Wholesale Price Litig.*, 491 F. Supp. 2d 20, 40 (D. Mass. 2007)).[1]  Indeed, all of the information

---

[1] Ven-A-Care filed its claims against Abbott in 2001 under seal, which was not lifted until August 2007.

upon which the allegations in this case are based was publicly disclosed, and Ven-A-Care, having likely never dispensed the form of self-administered Ery products at issue in this case, was not the original source of that information.  Rather, Ven-A-Care appears to have merely pieced together its allegations from information in the public domain and, therefore, lacks the requisite "direct and independent knowledge of the information on which the allegations are based."  As a result, this Court lacks subject matter jurisdiction under 31 U.S.C. § 3730(e)(4).

Second, Ven-A-Care has indicated that its damages model will not account for the fact that the Ery products at issue here are often subject to state maximum allowable costs ("MACs") or federal upper limits ("FULs").  Medicaid payments for the Ery drugs were often based on MACs and FULs, which were calculated from prices unrelated to Abbott's reported prices.  Accordingly, there would often be no damages even if Ven-A-Care could prove its allegations.  Ven-A-Care, however, has stated that it will apply its usual damages computation to this case – subtracting the EAC recalculated based on what Ven-A-Care claims should have been Abbott's reported prices from the actual Medicaid payment.  This formula is wholly insufficient and does not state the correct "but-for" world.  Ven-A-Care's model fails to account for how its "but-for" prices would affect the MACs and FULs that are often the basis of reimbursement for the Ery products.

These unique facts, which are not present in the similar case currently pending before the Court in which the government *did* choose to intervene, *United States ex rel. Ven-A-Care of the Florida Keys v. Abbott Laboratories Inc.*, No. 06-CV-11337 (the "DOJ case"), warrant a bifurcated discovery and dispositive motion schedule in this case (*see* Mot. Ex. 1) to first address these two threshold issues.  Indeed, Local Rule 26.3 specifically permits the Court to order phased discovery in a case like this.  If the Court declines to exercise its discretion to bifurcate

the discovery and disposition motions in this case, Abbott's alternate proposed CMO (*see* Mot. Ex. 2) allows sufficient time for the parties to complete all necessary discovery and dispositive motions in this case that has just begun.

## BACKGROUND

This Court has recently described the procedural history of this case and the DOJ case in its order dated July 15, 2008, denying Abbott's request for certification of an interlocutory appeal of this Court's denial of Abbott's motion to dismiss and, thus, it is not necessary to repeat all of those same details here. It is helpful, however, for purposes of understanding the context of this motion and the appropriateness of Abbott's proposed CMO to highlight a few key facts.

This case and the DOJ case share allegations – that Abbott fraudulently inflated drug prices in violation of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732. There are also several key differences, however:

- The DOJ has chosen not to intervene in this case;

- The allegations against Abbott in this case were not filed until February 2001, after there was, as this Court has acknowledged, a "perfect storm" of government knowledge concerning the existence of large spreads between AWP and providers' actual acquisition costs (*see In re Pharm. Indus. Average Wholesale Price Litig.,* 491 F. Supp. at 40);

- The federal government had already been investigating Abbott's price reporting practices for several years prior to Ven-A-Care filing this case;

- This case involves only self-administered products, which are not typically dispensed by home infusion pharmacies such as Ven-A-Care;

- The Ery drug products in this case have frequently been subject to state MACs and FULs, which are based on other manufacturers' reported prices; and

- This case involves Medicaid only.

With the foregoing in mind, Abbott conferred with Ven-A-Care on several occasions pursuant to Rule 26(f)(1), to discuss how discovery should proceed in this case. The parties were

unable to reach an agreement with respect to the timing of discovery and agreed to submit competing motions for entry of case management orders.[2]   Ven-A-Care proposed jumping right into requesting additional documents from Abbott and deposing Abbott witnesses and consolidating this case with the schedule in the pending DOJ case (even though this case just started and Ven-A-Care went to great lengths to distinguish the two cases to avoid dismissal under the first-to bar rule).   Abbott proposed that the parties first address, through limited discovery and dispositive motions, Ven-A-Care's claims that it was the "original source" of its allegations and how Ven-A-Care's damages model will account for the fact that the Ery products at issue in this case were often reimbursed on the basis of state MACs and FULs, which were calculated from many sources other than Abbott's reported prices.   Abbott further suggested that after discovery and any summary judgment briefing on these two issues, if necessary there would be a period of time to complete any other discovery unique to this case that is not duplicative of discovery completed in the DOJ case.

## ARGUMENT

The Court has the discretion to front-load discovery and resolution of the original source and damages issues.   *See* Local Rule 26.3 ("In order to facilitate settlement and the efficient completion of discovery, the [Court] has discretion to structure discovery activities by phasing and sequencing the topics which are the subject of discovery."); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (included in the court's discretion is the ability "to tailor discovery narrowly and to dictate the sequence of discovery"); *United States Steel v. M. DeMatteo Constr. Co.*, 315 F.3d 43, 53 (1st Cir. Mass. 2002) ("The management of pretrial discovery lies primarily within the sound discretion of the district court.").   Indeed, limiting discovery initially to

---

[2] Ven-A-Care filed its Motion For Entry Of Case Management Order yesterday, August 6, 2008.

potentially dispositive issues promotes judicial economy and possibly avoids all parties from incurring unnecessary expense and an arduous discovery process.  *See McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1214 (U.S.App.D.C. 1986) (suggesting to the district court that on remand "it would be entirely appropriate for the district court to limit discovery initially to the potentially dispositive issue of falsity."); *Klein v. King*, 132 F.R.D. 525, 528 (N.D. Cal. 1990) (describing the benefits of multi-staged discovery).  Abbott's proposed CMO prioritizes discovery regarding the two key issues described below.

### A.   Is Ven-A-Care the "Original Source" of the Allegations in the Complaint?

Section 3730(e)(4)(A) of the FCA provides that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or [GAO] report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person brining the action is an original source of the information.

Abbott anticipates proving that by 2001 (when Ven-A-Care amended its under-seal complaint to add allegations against Abbott) the transactions and allegations upon which this complaint is based were already publicly disclosed and that Ven-A-Care is not the original source of that information and, thus, the Court lacks subject matter jurisdiction to hear this case. Accordingly, Abbott requests that the parties first conduct limited discovery on this threshold jurisdiction issue.  *See Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34, 38 (1st Cir. 2000) (stating that when a defendant challenges a court's jurisdiction, the court has broad discretion to defer pretrial discovery that is unlikely to be useful in establishing the essential jurisdictional facts).

> 1.   *The Complaint Is Based On Transactions and Allegations That Have Been Publicly Disclosed.*

This Court has previously recognized a "helpful and straightforward framework for applying the jurisdictional bar of § 3730(e)(4)(A)," borrowed from the D.C. Circuit:

> if X + Y = Z, Z represents the allegation of fraud and X and Y represents its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed . . . . [W]hen X [the false set of facts] and Y [the true set of facts] surface publicly, or when Z is broadcast . . . there is little need for qui tam actions.

*United States ex rel. O'Keeffe v. Sverdup Corp.,* 131 F. Supp. 2d 87, 93 (D. Mass. 2001) (Saris, J.) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 654-55 (D.C. Cir. 1994)).  By at least 2001 (and, Abbott contends, significantly earlier), all three elements – the allegedly "false" pricing, the "true" pricing, and the outright allegations of the very scheme alleged here – had been publicly disclosed in one or more of the relevant statutory forums, including congressional hearings, GAO reports, and the news media.

While Abbott contends that these facts were public disclosed with respect to all of its drugs currently in litigation, as this Court has previously acknowledged, the public record is even more clear with respect to self-administered generic drugs, like the Ery products in this case.  Specifically, this Court found:  "At least since [1991], the most knowledgeable industry insiders . . . came to understand that with respect to self-administered drugs, like pills, the AWP of the pill did not reflect the actual average price charged by wholesalers to retail pharmacists." *See In re Pharm. Indus. Average Wholesale Price Litig.,* 491 F. Supp. at 39.  While the Court questioned whether payors understood that there were "mega-spreads" between AWP and the actual average price paid by retailers in the early 1990's for *physician-administered drugs* (*id.* at 43), it found that by 2001 (when the instant complaint was filed against Abbott) "there was a perfect storm of information that reflected the size of the spreads, largely because of the

compelling information collected by the HHS Office of Inspector General ("OIG"). In addition, the press began to report on the rampant abuse of the AWP system." *Id.* at 45-46.

Moreover, by 2001, the federal government had been specifically investigating Abbott's pricing practices for almost six years.[3]  In addition to presumably countless investigations to which Abbott is not privy, during those six years the federal government:

- In February 1996 issued a Civil Investigative Demand to Abbott concerning allegations that Abbott knowingly provided false pricing information concerning AWP, which caused providers to present false claims to state Medicaid agencies;

- In October 1997 served a HHS-OIG subpoena on Abbott concerning Abbott's pricing practices; and

- In July 2000 served a second HHS-OIG subpoena on Abbott concerning Abbott's pricing practices.

Thus, the federal government, on whose behalf Ven-A-Care purports to bring this case, can hardly claim to have been unaware of the allegations in the 2001 complaint filed by Ven-A-Care.

Accordingly, because the information upon which Ven-A-Care's allegations in this case were undoubtedly publicly disclosed when it was filed in 2001,[4] the Court does not have jurisdiction to hear this case unless Ven-A-Care can prove that it was the "original source" of that information.  Abbott believes that with limited discovery it will be able to show that Ven-A-Care is not the original source.

2.   *Abbott Believes That Ven-A-Care Cannot Prove That It Was the "Original Source" of the Information Upon Which the Allegations in the Complaint Are Based.*

Ven-A-Care cannot proceed with its case if it was not the "original source" of the allegations, which is defined as "an individual who has *direct and independent knowledge* of the

---

[3] Notably, the DOJ is not pursing damages after 2001 in the DOJ Case.

[4] To the extent that there remains any question as to whether Ven-A-Care's allegations concerning the Ery products were publicly disclosed prior to its filing of this complaint, that question, too, can be pursued during the Abbott's proposed discovery period for this threshold jurisdictional question.

information on which the allegations are based."  31 U.S.C. § 3730(e)(4)(B) (emphasis added).

Compiling public information to piece together allegations of fraud, which is what Ven-A-Care

did here, does not count.  *See, e.g., United States ex rel. Kennard v. Comstock Res., Inc.*, 363

F.3d 1039 (10th Cir. 2005) (holding that "[a] mere compilation of documents or reports already

in the public domain will not allow a relator to qualify as an original source"*); United States ex

rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997) ("If a relator

merely uses his or her unique expertise or training to conclude that the material elements already

in the public domain constitute a false claim, then a qui tam action cannot proceed.")

     In fact, Ven-A-Care does not have direct or independent knowledge of the information in

this complaint concerning the Ery products.  Ven-A-Care is a home infusion pharmacy that

specializes in providing infusion, inhalation and injectible drugs to patients.  Notably, the Ery

products in this case are self-administered drugs that are not typically sold by home infusion

pharmacies such as Ven-A-Care.  From the face of the complaint, it appears that Ven-A-Care

purports that it is the original source of the information in the complaint because it has access to

wholesaler and GPO catalogues.  (Compl. at ¶ 14)  But, so do thousands of other providers

across the country.  Nor is there any evidence that Ven-A-Care – as a home infusion pharmacy –

has any direct or independent knowledge to support its vague (and, under Rule 9(b) legally

insufficient) allegation that, as to the Ery drugs, "Abbott [] used the public fisc as a marketing

tool, actively promoting government-funded 'spreads' between (1) its fraudulently inflated prices

and (2) its actual sales prices as an inducement to its customers."  (Compl. at Intro ¶.)

     Indeed, all of the pricing information in this case was in the public domain and openly

provided by Abbott and others.  It appears that Ven-A-Care simply collected that publicly known

information and attached a legal label of "fraud."  This is insufficient for Ven-A-Care to qualify

as an original source. *See United States, ex. rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1159 (2d Cir. 1993) ("The fact that Kreindler conducted some collateral research and investigations . . . as would be customary in [] litigation, does not establish direct and independent knowledge of the information on which the allegations are based").

This Court ought to adjudicate this jurisdictional issue before it allows Ven-A-Care to pursue more discovery from Abbott.  Targeting discovery on this threshold issue early in this litigation would provide the evidentiary record necessary to determine whether Ven-A-Care is, in fact, the original source of the information.  If Ven-A-Care is not the original source, this case can be disposed of via summary judgment, without unnecessary expenses expended relating to other discovery or the retention of experts.  If Ven-A-Care is the original source, discovery can proceed expeditiously with respect to remaining issues.

### B. The Sufficiency of Ven-A-Care's Damages Model Should Be Adjudicated Prior To Any Remaining Discovery Proceeding.

Federal Rule of Civil Procedure requires a party to provide initial disclosures that include:

> a *computation* of any category of *damages* claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

FED. R. CIV. P. 26(a)(1)(C) (emphasis added).  Rule 26(a)(1) is "intended to provide an opposing party with an early understanding of the basis and amount of any damages claim it is facing, so that it may conduct meaningful discovery as to the underpinnings of such a claim."  *Hewlett-Packard Co. v. Factory Mut. Ins. Co.*, No. 04 Civ. 2791, 2006 WL 1788946, at *11 (S.D.N.Y. June 28, 2006); *see also City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (Rule 26(a) initial damage disclosures also allow defendants to "understand the contours of its potential exposure and make informed decisions as to settlement

and discovery."). Abbott's proposed CMO prioritizes discovery of Ven-A-Care's forthcoming initial disclosure of its damages computations to enable the parties to adjudicate the sufficiency of its damages calculations early in this case. Ven-A-Care's model must, at a minimum, sufficiently account for the fact that MACs and FULs affected the reimbursement for Abbott's Ery products.

Indeed, a review of publicly available sources indicates that many, if not most, of the products at issue in this case were subject to state MACs and/or FULs for all or part of the time period at issue in this case. *See, e.g.*, HCFA Transmittal No. 36 dated April 2000 (setting FULs for three Ery products) (attached as Ex. A); KY Medicaid Drug Maximum Allowable Cost List Effective August 1, 2003 (setting MACs for 8 Ery products) (attached as Ex. B); Excerpt from Alabama Medicaid Agency Stat Maximum Allowable Cost (MAC) List, last updated August 2006 (listing 13 Ery products on its MAC list) (attached as Ex. C). This fact undercuts Ven-A-Care's allegations that the federal government suffered damages caused by Abbott's alleged price reporting because, when an Ery product is subject to a MAC or a FUL, multiple prices reported by multiple drug manufacturers impact the amount of reimbursement, all of which must be accounted for by Ven-A-Care in its damages computation. Indeed, it is likely that Medicaid reimbursement for the Ery products was often made without reference to Abbott's alleged fraudulent reported pricing – an allegation critical to Ven-A-Care's complaint.

FULs have been set by CMS at 150% of the single lowest price reported in the compendia. *See* 42 C.F.R. § 447.332 (2006). Accordingly, it is very possible that Abbott's reported price or allegedly should-have-been-reported price may not have had any impact on the calculation of FUL and, thus, the Medicaid reimbursement amount. For example, if the pricing compendia had reported prices of $5 and $7 for Abbott's competitors of a particular Ery product

and reported $9 for Abbott's allegedly fraudulent price, FUL would have been set at $7.50 (or

150% of $5) and not based on Abbott's price.  Even if Abbott's "but-for" price, as alleged by

Ven-A-Care would drop to $8, reimbursement would still not be based on Abbott's price, since

the FUL would remain at $7.50.  Moreover, since Ven-A-Care is now alleging that

manufacturers should have reported prices in a manner other than what has been the industry

norm for years, Ven-A-Care cannot apply its "but-for" model to Abbott's reported prices without

also applying that same model to the other prices used to calculate FULs and MACs.  Taking the

example above, if Ven-A-Care's "but-for" model dropped Abbott's price lower than $7.50 to say

$7, there would still be no damages because you must apply the same "but-for" model to the

other manufacturer's prices, which would presumable drop as well.  For example, if the

competitor's prices that were $5 and $8 dropped just $1 to $4 and $7, respectively, the new FUL

would have been $6.00 (150% of $4) – lower than Abbott's "but-for" price of $7.

     The process for setting state MACs varies by state (another complexity which must be

addressed by Ven-A-Care's damages model) but is typically set by looking at various prices

from various sources for all drugs in a therapeutic class and then setting a MAC at a price that is

deemed appropriate.  For example, the State of California chose to set its MAC at the mean of

the wholesale selling prices of drugs (generically equivalent to the particular innovator drug)

derived from data provided by certain wholesale drug distributors – not drug manufacturers.  *See*

CAL. WEL. & INST. CODE § 14105.45 (2003).  The State of Ohio sets its state MACs at the sixty-

fifth percentile of the estimate acquisition cost of all readily available generically equivalent

drugs.  *See* OHIO ADMIN. CODE § 5101:3-9-05(B)(1)(b)(2008).  Moreover, the state MAC was

often used even if an individual NDC's estimated acquisition cost ("EAC") was lower.  *See, e.g.,*

*id.*  (the State of Ohio utilized MAC even if the manufacturer of the particular drug for which

-11-

reimbursement is sought has a lower reported price); 13 CSR 70-20.070(3) (the State of Missouri reimbursed on the basis of a particular manufacturers' reported AWP *only if* a state MAC was not in place).  This Court has previously recognized in a related AWP case that a plaintiff may not have a valid claim when a drug at issue was reimbursed on the basis of a state MAC that was unrelated to defendants' reported prices.  *See California, ex rel. Ven-A-Care of the Fla. Keys., Inc. v. Abbott Labs., Inc. (In re Pharm. Indus. Average Wholesale Price Litig.)*, 478 F. Supp. 2d 164, 180 (D. Mass. 2007) (dismissing the State of California and Ven-A-Care's complaint with respect to drugs subject to California's MAC program).

Ven-A-Care has indicated to Abbott during the Rule 26(f) conferences that it intends to ignore all of the complexities described above and simply utilize a "lowest of" approach to calculating damages in the case.  Specifically, Ven-A-Care indicated that it intends to compare the reimbursement paid for Abbott's drugs to a "but-for" price based on what it claims Abbott should have reported and declare damages whenever the but-for price is lower.  Ven-A-Care's methodology is flawed for many reasons.

First, Ven-A-Care's approach rests on the flawed assumption that state Medicaid reimbursement is based on the "lower of" the state MAC or a particular manufacturer's EAC. Not necessarily so.  As discussed above, the reimbursement paid for Abbott's drugs may have had nothing to do with Abbott's reported price and, therefore, Abbott could not have caused any alleged overpayments and should not be liable for any difference even if the "but-for" reported price is lower than the actual reimbursement paid.  Second, as also discussed above, Ven-A-Care's approach ignores the fact that the reimbursement paid for Abbott's drugs is often based on many manufacturers' reported prices and those other reported prices must be held to the same

standard as Ven-A-Care's "but-for" model that Ven-A-Care proposes applying to Abbott's reported prices.

Abbott is entitled to receive a clear and comprehensive explanation of how VAC plans to seek damages in this case and Abbott should be allowed to challenge that model early in the case before a significant amount of resources are expended on other issues in this case.

**C.    Ven-A-Care's Proposed CMO Is Too Aggressive and Abbott's Alternate Proposed CMO Is More Reasonable for This Case, Which Has Just Begun.**

If the Court does not permit bifurcated discovery, Abbott requests that the Court enter its alternate proposed CMO (*see* Mot. Ex. 2), which allows sufficient time for the parties to complete all necessary discovery and dispositive motions in this case.  Ven-A-Care's proposed CMO, with a fact discovery cut-off of November 28, 2008, is unrealistically aggressive.[5]  Ven-A-Care's attempt to consolidate this case's schedule with the DOJ case and two other cases (the "Dey" case and "Roxane" case) – all of which have been engaging in discovery for two years – should also be rejected.[6]  The parties have agreed to exchange Rule 26(a) initial disclosures on August 22, 2008.  Ven-A-Care proposes that fact discovery close only three months later with summary judgment briefs due in May 2009.  It is completely unrealistic to assume that the parties can exchange initial disclosures, complete all fact and expert discovery and file summary

---

[5] Ven-A-Care asserts in its motion that it has "chosen to adopt" the fact discovery deadline that Abbott had previously proposed.  (*See* VAC Mot. at 3.)  Abbott proposed that deadline in May 2008 under the assumption that discovery would start immediately, not three months later as is now the case.  Accordingly, Abbott proposes a close of discovery of February 27, 2009 – three months later – to account for the fact that the parties are now scheduled to exchange Rule 26(a)(1) initial disclosures on August 22, 2008.

[6] Ven-A-Care's reliance on the Court's comments regarding a summary judgment briefing schedule at the July 24, 2008 status conference for the DOJ, Dey and Roxane cases is misplaced.  (*See* VAC Mot. at 2-3.).  The Court stated that it wanted the DOJ, Dey and Roxane cases aligned for summary judgment purposes and requested that those three cases submit a joint proposed CMO concerning the remaining schedule in those cases.  (VAC Mot. Ex. 1 at 35:12–36:6.)  This case was not discussed until the very end of the hearing when Ven-A-Care's counsel asked the Court if discovery of the state Medicaid programs should be coordinate in this case.  (*Id.*)  The Court did state that it wanted this case to coordinate state Medicaid discovery with the other three cases (which Abbott's proposed CMOs permit), but also acknowledged that this case had just begun and requested that the parties confer and submit a separate CMO for the Ery-only case.  (*Id.*)

judgment briefs in merely nine months, as Ven-A-Care proposes.  That is simply not enough time to explore the new issues raised in this case

As this Court recognized in its July 17, 2008 order in this case:

> The complaint in the [DOJ case] involved different drugs marketed by a different division of Abbott.  Significantly, Erythromycin is primarily a self-administered drug and the other drugs are generally administered by physicians.  Notice of fraud in one drug's pricing is not notice of fraud in another drug's pricing, as Abbott well knows.  This is because drugs are often marketed, reimbursed, sold, and priced in different ways.

7/15/08 Order at 7.  Accordingly, while the parties agree that the discovery taken in the DOJ case need not be duplicated here, there are several important issues in this case that have not been previously explored.  For example, discovery of the federal government knowledge in the DOJ case has often been limited to the home infusion type of solutions at issue in that case and, thus, additional discovery is likely needed concerning the Ery products here.  Additionally, no discovery of whether Ven-A-Care is the original source of allegations concerning Ery has previously been taken.  The discovery of the FUL and state MAC issues also still needs to be explored.  Moreover, the state Medicaid discovery that is currently under way in the DOJ case (and with which the Court asked this case to coordinate) is not anticipated to be completed until October 31, 2008 at the earliest.  It is simply not realistic to expect the parties to be able to complete all other discovery less than a month later.

Abbott's alternate proposed CMO provides a sensible, but efficient, schedule with which to proceed in this case.

## CONCLUSION

For the foregoing reasons, this Court should enter Abbott's proposed CMO attached as Exhibit 1 to its Motion.  Alternatively, Abbott requests that the Court enter its alternate proposed CMO attached as Exhibit 2 to its Motion.

Dated:  August 7, 2008                     Respectfully submitted,

                                           /s/ Brian J. Murray_____
                                           James R. Daly
                                           Eric P. Berlin
                                           Brian J. Murray
                                           Tara A. Fumerton
                                           JONES DAY
                                           77 West Wacker Drive, Suite 3500
                                           Chicago, Illinois  60601
                                           Telephone:  (312) 782-3939
                                           Facsimile:   (312) 782-8585

                                           *Counsel for Defendant Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

I, Tara A. Fumerton, an attorney, hereby certify that I caused a true and correct copy of the foregoing **Memorandum In Support Of Abbott Laboratories Inc.'s Motion For Entry Of Case Management Order** to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 7th day of August, 2008.

/s/  Tara A. Fumerton