UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>BMS CLASS 1 SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION TO
PRELIMINARILY APPROVE PROPOSED PLAN OF DISTRIBUTION
<u>FOR THE BMS CLASS 1 SETTLEMENT</u>**

### I.   INTRODUCTION

Class Counsel and BMS signed a Memorandum of Understanding ("MOU") to settle the Class 1 claims and have been unable to craft a final settlement agreement because BMS believes that it has a right to guide the distribution of the settlement monies and in such a manner as to create a reversion to BMS's benefit. However, the MOU did not provide BMS with any right to veto Class Counsel's distribution plan and left that right to Class Counsel's sole discretion. Moreover, the MOU did not provide BMS with any right to have unclaimed Class 1 monies go to satisfy BMS's obligations to Classes 2 and 3. The Court should rule accordingly. Until the Court resolves this impasse, the parties cannot finalize a settlement agreement, complete drafts of the proposed class notices and seek the Court's preliminary approval of the BMS Class 1 settlement.

### II.   FACTUAL BACKGROUND

**A.   Procedural Background.**

After lengthy negotiations and mediation, on June 25, 2007, Class Counsel and counsel to BMS executed the attached Memorandum of Understanding ("MOU") and, thereby, agreed to

settle the Class 1 claims against BMS, subject to Court approval. In the MOU, BMS agreed to pay $13 million, inclusive of attorneys' fees and costs. In addition, BMS also agreed to pay one-half of the costs of notice to the Class of the settlement, subject to a maximum payment of $1 million. Although the MOU contemplated that the parties would negotiate and execute a formal settlement agreement, the document itself explained that "this MOU shall be binding as of the date below and shall not be contingent upon such future negotiation or execution."

In the course of negotiating the formal settlement agreement, a dispute has developed regarding the methodology to be employed to distribute the "Net Recovery" to Class 1. "Net Recovery" refers to the amount remaining in the common fund after the payment of the costs of notice and claims administration and attorneys' fees and costs.

Class Counsel believe that the MOU does not (i) provide BMS with the right to veto the distribution methodology that Plaintiffs propose to the Court and (ii) create any reversionary rights to BMS's benefit. BMS disagrees and asserts that a proposed distribution methodology was subject to later negotiation.

Notwithstanding Class Counsel's position, they have consulted with BMS in good faith. As required by the MOU, the matter was submitted to mediator Eric Green.[1] Notwithstanding Professor Green's efforts, the parties have been unable to agree; hence, the need for the instant motion.[2]

---

[1] The MOU provides that "[a]ny disputes concerning the terms and conditions of the formal settlement agreement and related documentation shall be resolved through mediation before the court-appointed mediator, Eric Green."

[2] A brief notation is in order regarding the timing of presenting this issue to the Court. Although over a year has passed since the execution of the MOU, the parties have not unduly delayed putting the MOU into action. Initially, Class Counsel wanted to await the Court's review of the motion to preliminarily approve the AstraZeneca Class 1 motion, as the Court's decision on that motion would obviously impact the proposal that Class Counsel would submit to the Court for the BMS Class 1 settlement. Then, the parties renewed settlement talks with respect to Classes 2 and 3. If agreement could have been reached on the claims of all three Classes, a single notice campaign and settlement administration could have occurred, which would be more cost effective than implementing a

**B.     Plaintiffs' Proposed Distribution Plan.**

Under Plaintiffs' proposal, a claims-made process would be employed using a notice and claim card similar to the process that the Court approved for the AstraZeneca Class 1 Settlement and the Track 2 Global Settlement ("Track 2"), with some pertinent variations. As the Court may recall, a claims-made process is necessary so that Medicare beneficiaries who actually made or remain liable for Part B co-payments can be identified. Notice and a claim card would be mailed to Medicare Part B beneficiaries who were administered a drug during the Class Period corresponding to the J-Codes for the relevant BMS drugs.

Each beneficiary who submits a claim would be assigned a "Total Recognized Claim" calculated as the co-pay amounts owed for each administration during the Class Period, similar to the procedure preliminarily approved by the Court in Track 2. The co-pay amounts owed are taken from the CMS data. This methodology thus ties an individual's recovery amount to their co-pay experience.

The Class Period would be 1991 through 2004, the same period certified by the Court and used for the AstraZeneca Class 1 and Track 2 settlements. To encourage claims, the Total Recognized Claim amount is doubled except for the "Heartland Period" of administrations falling into the period December 1, 1997 through December 31, 2003, in which case the Total Recognized Claim amount is trebled. This proposal is a hybrid of the AstraZeneca Class 1 and Track 2 approaches.

Under Class Counsel's proposal, the eligible BMS drugs are Paraplatin, Taxol, Vepesid, and Cytoxan. Blenoxane, Etopophos and Rubex administrations are not eligible for compensation under the proposal, even though they were included in Plaintiffs' claims. Dr.

---

settlement for Class 1 then a later settlement for the other classes. Once it became clear that no agreement would be reached for those other class claims, the parties returned to negotiating the settlement agreement for Class 1.

Hartman did not find any Medicare Part B reimbursements for Blenoxane. And the damages for Etopophos and Rubex are so minimal that notice and settlement administration costs associated with both drugs would exceed any proposed payout.

Each claimant will be required to attest under penalty of perjury that he or she made a full or partial co-pay for at least one administration. The beneficiary would <u>not</u> be required to submit proof that he or she was administered the actual BMS drug under the J-Code.

If total claims exceed what is left in the common fund after the payment of claims, then claims are reduced pro-rata. If total claims are less than the Net Recovery eligible for distribution – that is, there is a remainder – the remainder is distributed to charitable organizations funding cancer research and patient care to be determined later, as provided for in the AstraZeneca Class 1 settlement.

**C.     BMS's Proposal.**

BMS believes that it has the right to approve or disapprove any distribution plan presented by Plaintiffs, even though BMS never bargained for such a right, which is not specified in the MOU. BMS thus has a different distribution proposal that seeks to reduce claims.

For time periods after which the BMS brand drug faced therapeutic competition, Medicare Part B reimbursed for more than one drug under the same J-Code. For example, late in the Class Period, BMS's brand of paclitaxel (Taxol) was reimbursed under the same J-Code (J9265) as generic versions. BMS believes that claimants must submit proof that they were administered BMS's version of the drug under the J-Code in order to be eligible to receive a distribution, or, in the alternative, to receive double damages.

BMS also does not believe that administrations of a BMS drug made at times when the spread was under the 30% threshold should be eligible, and that administrations falling outside

- 4 -

of the Court's liability period of December 1997 to December 2003 should also not be eligible. And BMS asserts that any remainder should be reserved for Classes 2 and 3 in the event that there is a future settlement of the claims of those classes.

### III.     ARGUMENT

During the negotiations leading to execution of the MOU, BMS did not bargain for any right to veto the distribution plan that Plaintiffs would later propose. Nor did the parties ever discuss making any unclaimed Class 1 monies available to reduce any future BMS obligation to pay the claims of the other Classes. Indeed, BMS had the opportunity during those negotiations to settle the claims of Classes 2 and 3 and expressly declined to do so. The Court should reject BMS's efforts to now rewrite the MOU.

### A.     It is Class Counsel's Unilateral Right under the MOU to Propose a Distribution Plan.

Class Counsel retains the sole authority to recommend a distribution plan to the Court and to do so without BMS's interference. The MOU does not grant BMS any rights with regard to the proposed distribution of the settlement amount. And it was made clear during the mediation that Class Counsel would themselves develop and propose to the Court a distribution model, and that BMS would have no right to veto it. Declaration of Steve W. Berman In Support of Class Counsel's Motion to Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement ("Berman Decl."), ¶ 3. Had the parties intended BMS to be able to guide the distribution plan, this would have been specified in the MOU, but it was not. *Id.*

This conclusion is further supported by reference to the AstraZeneca Class 1 proposed settlement, which was pending at the time that BMS agreed to the MOU. The proposed distribution of the AstraZeneca settlement proceeds was agreed to by the parties and made part of the memorandum of understanding. BMS was aware of this during the BMS negotiations, yet

- 5 -

did not seek any agreement on how the monies that it was putting up would be allocated to the Class 1 members. In contrast to the AstraZeneca Class 1 "model," BMS simply agreed to pay $13 million into a common fund.

In sum, BMS did not bargain for, and did not receive, any right to veto a proposed distribution model. Had it wanted a voice in the manner in which the common fund was distributed, it should have bargained for such a right.

**B.     Plaintiffs' Proposed Distribution Plan is Fair and Reasonable.**

**1.     Class members should not be required to submit proof that they were administered the BMS version of the drug.**

Because a claims process is a necessity, Class Counsel believe that the process needs to be made as simple as possible to encourage class members to actually complete and return a claim card. As the Court may recall, we have gone to great lengths to simplify the claims process, utilizing standard distribution formulas that are easy to understand, mailing easy-to-read notices and employing short and simple claim cards that are easy to complete and return. And this process has been honed, with the Court's guidance, to increase simplicity in each successive settlement.

But even a simplified claims process can be daunting for an elderly cancer survivor, and each additional requirement imposed makes it more difficult for them to respond, especially one that requires a class member to obtain from his or her physician written documentation of the specific drug administered. BMS understands this, which is why it wishes to erect hurdles in the claims process. BMS is well acquainted with the difficulty in gathering documentation demonstrating the drug administrations that a given patient received. During the litigation, the named Plaintiffs often encountered difficulty in obtaining from physician offices the documents that were requested during discovery – that is, the documentation proving which drug was

administrated. Physician offices usually make patients complete and submit a medical records release form and can be slow to respond to provide the information, information that a patient may find difficult to understand.

BMS's requirement that the beneficiary present proof that they were administered BMS's version of the drug covered by the J-Code will substantially drive down claims and runs counter to Class Counsel's and the Court's significant and innovative efforts to make the AWP settlement claims process as simple as possible. It is also inconsistent with the GSK, AstraZeneca and Track 2 settlements, where this was not required. Having failed to bargain for this hurdle during the settlement negotiations, Berman Decl., ¶ 4, despite knowing that it had never been required in any prior settlement, BMS should not be permitted to backdoor this onerous requirement – especially in support of a previously un-negotiated effort to reduce BMS's financial liability to other Classes.

**2. Recovery should not be limited to the liability period in the Court's trial ruling or to years in which the Court found spreads exceeding the 30 percent threshold.**

BMS also seeks to reduce the total value of claims paid by asserting that a distribution formula should track the Court's liability rulings as to (i) the time period for eligible claims, and (ii) drug-by-drug liability under the 30% threshold test. This would result in barring claims for administrations prior to December 1997 on the basis that the Court ruled, vis-à-vis Classes 2 and 3, that the Balanced Budget Amendments of 1997 put TPPs on inquiry notice of spreads. *See* Trial Ruling at 6. Administrations after 2003 would also be ineligible under BMS's plan, as BMS relies on the Court's litigation certification ending the Class Period in 2003.

Claims would be further restricted by drug, as BMS seeks to impose the Court's drug-by-drug Trial Ruling on this settlement. This would result in no recovery for Paraplatin; recovery

for Taxol only in 2001 and 2002; for Vepesid in 1998-1999 and 2001-2002; and for Cytoxan in 1998-2002. *See* Trial Ruling at 170-75.

In contrast, Class Counsel propose that all administrations during the period 1991 through December 2004 for Cytoxan, Paraplatin, Taxol and Vepesid be eligible for compensation.

BMS again seeks to impose conditions that it never bargained for during the mediation and to which Class Counsel never agreed. Berman Decl., ¶ 5. Class Counsel do not believe that the settlement period should be restricted to the Court's liability period for Classes 2 and 3. The settlement periods for both the AstraZeneca Class 1 and Track 2 settlements span from 1991 through 2004. Constricting that period to what the Court found for Classes 2 and 3 would be unfair to the BMS Class 1 members.

Nor do Class Counsel believe that recovery should be limited to years in which the Court found liability under each drug. First, this is a compromise settlement, and, as such, the Court's drug-by-drug liability rulings do not apply, especially since BMS failed to bargain for this limitation even though the Trial Ruling was released just a few days before the MOU was signed.

Second, we do not believe that it is appropriate to apply the 30% yardstick to Class 1 in a settlement distribution. Indeed, the Court's decision to apply the 30% yardstick to Class 1 as a matter of law is presently on appeal.

Third, limiting eligible administrations to the "liability" years that BMS advocates would result in only a small amount of the net recovery actually being distributed, as the total damages for the foregoing drug-specific liability years is less than $5 million. Compared to the $13

million settlement amount, this underscores the fact that the parties during the negotiations did not envision such a limited distribution.

Fourth, Class Counsel's approach is consistent with what the Court approved in the AstraZeneca Class 1 and Track 2 settlements, with the distribution formula tied to the payment experience of the class members.[3]

And fifth, Class Counsel's proposal in this regard should help assuage BMS's concerns about settlement funds going to beneficiaries who were not necessarily administered the BMS version of the drug under the J-Code, because it is much more likely that the bulk of beneficiaries receiving notice will have been administered a BMS drug if time periods when the BMS drug was single source are included.

The notion that the parties would follow the Court's liability findings in the Massachusetts Class 2 and 3 trial as BMS now proposes is contrary to the approaches approved by the Court in the other AWP settlements and not bargained for in the MOU. Class Counsel's proposal tracks Ray Hartman's spread calculations, and we have already eliminated three BMS drugs with no or very low damages from eligibility. In negotiating the MOU, BMS did not seek or receive Class Counsel's agreement that Court's Trial Ruling for Classes 2 and 3 would apply to this Class 1 settlement, and BMS should not now be permitted to impose the Trial Ruling's limitations here.

**3.     Any remainder should accrue to the benefit of charitable organizations funding cancer research and patient care.**

---

[3] Plaintiffs are not proposing a distribution formula that is tied to a per-dose calculation of damage like that utilized for the AstraZeneca Class 1 settlement because, unlike the standard dosing schedule for Zoladex, dosing for the BMS chemotherapy drugs at issue varies based on factors that include the particular disease being treated, patient weight and any concurrent therapies. Nonetheless, as in the AstraZeneca Class 1 and Track 2 settlements, the proposed distribution model here is linked to the amounts paid by the class members.

BMS urges the foregoing limitations on class member claims hoping that a larger remainder will result after all claims are processed, a remainder that BMS then seeks to "spillover" to satisfy any judgment or settlement in favor of Classes 2 and 3.  Not only did BMS fail to bargain for this, BMS had the opportunity to settle the Class 2 and 3 claims during the mediation leading to the Class 1 proposed settlement <u>but expressly declined to settle those claims</u>.  Berman Decl., ¶ 6.  BMS quite clearly chose to settle <u>only</u> Class 1 for $13 million, there were no "strings" attached to the payment of the $13 million, and there was no settlement of Classes 2 and 3 despite final proposals being exchanged with respect to those two classes at the end of the mediation.  *Id*.  BMS should not now be permitted to inject itself into the Class 1 distribution process in a ploy to grab monies earmarked for Class 1 in an attempt to satisfy BMS's financial obligations to the other Classes.

If there is any remainder of monies after distribution to Class 1 members filing claims, such remainder should inure to the benefit of Class 1 as a distribution to charitable organizations funding cancer research and patient care.

## IV.   CONCLUSION

For the reasons set forth above, Class Counsel request that the Court (i) rule that BMS does not have a right under the MOU to veto Class Counsel's proposed distribution plan and (ii) adopt Class Counsel's proposed distribution plan, pending an order preliminarily approving the proposed settlement and the form and manner of class notice.  Once the Court rules on this discrete issue, the parties can consummate a final settlement agreement, confer on proposed forms of notice and present a preliminary approval motion to the Court.  A proposed form of order is being submitted herewith.

- 10 -

| | |
|---|---|
| DATED:  August 25, 2008. | By      /s/ Steve W. Berman                    <br>   Thomas M. Sobol (BBO#471770)<br>   Edward Notargiacomo (BBO#567636)<br>Hagens Berman Sobol Shapiro LLP<br>One Main Street, 4th Floor<br>Cambridge, MA  02142<br>Telephone: (617) 482-3700<br>Facsimile: (617) 482-3003 |

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

- 12 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION TO PRELIMINARILY APPROVE PROPOSED PLAN OF DISTRIBUTION FOR THE BMS CLASS 1 SETTLEMENT**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on August 25, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                          **/s/ Steve W. Berman**
                                          Steve W. Berman