UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>) |
| | MDL 1456<br>Civil Action No: 01-12257-PBS<br><br>Hon. Patti Saris |
| THIS DOCUMENT RELATES TO UNITES STATES OF AMERICA, ex rel. VEN-A-CARE OF THE FLORIDA KEYS, INC. v. ABBOTT LABORATORIES, INC., *No. 07-CV-11618-PBS* | )<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' RULE 26(a)(1) DISCLOSURES

Ven-A-Care of the Florida Keys, Inc. ("Relator") for itself and on behalf of the

United States, hereby provides its Rule 26(a)(1) Disclosures:

A. **Witness Disclosures**

The individuals identified on the attached **Exhibit A** may have discoverable

information that the Relator may use to support the claims in this case.[1] **Exhibit A** also

identifies generally the subject matter upon which the identified individuals may be

knowledgeable. If an identified individual is an employee of a corporate entity, the

United States, or a state, the information that each may provide may be subject to the

approval of their employer and/or counsel representing that employer.  Relator reserves

---

[1]To the extent that any document covered by Section B of these disclosures identifies additional persons not named herein who the Plaintiffs later determine may have information supporting their claims, the names of those persons are incorporated in this initial disclosure.

the right to call any witness or use testimony of any witness deposed in the case or otherwise identified in writing.

All contact and/or deposition scheduling of employees of the Government and the Relator identified herein should be coordinated through counsel for the Relator.

## B. Document Disclosures

The Relator and the United States have identified and produced documents in *United States of America, ex rel Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-CV-11337-PBS that may be used to support the claims in this case.  Relator's production encompasses all of Relator's unprivileged documents which pertain to Abbott.  Abbott has produced documents in *The State of Texas ex rel Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Cause No. D-1-GV-04-001286 to Relator that may be used to support claims in this case.

The Relator also reserves the right to supplement the foregoing identified documents and witnesses.

The Relator also reserves the right to assert objections as to the admissibility of any identified or produced documents.

## C. Damages

The Relator seeks the recovery of damages to the Medicaid program arising from Abbott's unlawful conduct. Abbott has not yet fully produced complete pricing and transaction data that is essential to identifying and understanding the amount of the United State's damages. Until then, the Relator will be unable to complete its damages analyses. The Relator will refine its damage calculations as it obtains and analyzes

relevant information from Abbott through discovery and reserves its rights to fully amend and supplement this disclosure as necessary.

As a general matter, based on the information currently in our possession, please be advised of the following:

1.     Damages calculations will cover Medicaid damages for the years 1994 through the present;

2.     Damages calculations will include the federal portion of the damages inflicted by Abbott upon each state Medicaid program and will not include the state portion.

3.     Damages calculations will not include the inflated co-pays or deductibles, if any, paid by Medicaid recipients;

4.     Damages calculations will not include monies paid by Medicaid Programs as dispensing fees;

5.     The damages suffered in connection with Medicaid are not reduced by any amount paid under the Medicaid Rebate Program (the "Rebate Program") mandated by the Federal Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"). The amount of the rebates paid under that program are unaffected by the reimbursement amounts, and are calculated by reference to the Average Manufacturer Price and the Best Price, and the other factors specified in the statute itself, which are independent of the reimbursement amount.

Damages will be calculated based upon the traditional approach of calculating the difference between the actual amounts reimbursed as compared to the estimate of the amounts that would have been reimbursed in the absence of the false statements or

claims caused by Abbott.  The measure of the damages under the False Claims Act is the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful. *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988); *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966).  "A court should ask the question, 'How much would the government have paid for the item at issue 'but for' the fraudulent actions of the defendant?'" *United States ex rel. Roby v. Boeing Co.*, 79 F. Supp. 877 (S.D. Ohio 1999).  "[T]he measure of the government's damages would be the amount that it paid out by reason of the false [claims] over and above what it would have paid if the claims had been truthful." *BMY Combat Systems v. United States*, 44 Fed. Cl. 141, 147 (Ct. Cl. 1999)(quoting *Woodbury*, 359 F.2d at 379).  Moreover, there is "no set formula for determining the government's actual damages [under the False Claims Act]." *United States v. Killough*, 848 F.2d at 1532. "[D]amages under the FCA are to be determined in a flexible manner to ensure proper recovery of direct, and not consequential, damages resulting from the making of a false claim." *BMY-Combat Systems Division of Harsco Corporation v. United States*, 44 Fed.Cl. 141, 148.  Damages do not need to be precisely determined. *United States v. American Packing Corp.*, 113 F. Supp. 223, 224 (D.C.N.J. 1953).

One approach to calculating damages under this methodology will be based upon what is called the tainted claims theory.  Under this theory, the Relator, on behalf of the United States, will seek to recover 100% of the amounts paid by Medicaid in any situation in which the reimbursement amount was based upon a false statement or claim which Abbott caused to be submitted through its dissemination of inflated price information.  Abbott knowingly used the spread as an unlawful inducement in violation

of the federal anti-kickback statute, causing resulting false and fraudulent claims to be submitted.  Thus, the total amount of the payment represents damages.

An alternative method of calculating damages will be to estimate the amount that would have been reimbursed for the Drugs (as identified in the Complaint; see p. 12) had Abbott not reported inflated prices.  The details of this calculation are based upon Abbott transactional data.  The Relator will identify a range of prices Abbott knew were generally and currently paid in the marketplace for its products.  The Relator will then estimate AWP prices that would have been published with, and based upon, prices paid to Abbott by its customers within wholesaler and pharmacy classes of trade.  This estimation will be founded upon known "mark-ups" or formulas used in the setting and publication of AWP information.[2]  The Relator will then estimate the amounts that would have been reimbursed to providers, including pharmacies, using the price information that was not false.  The Relator will then calculate the difference between the actual amounts reimbursed as compared to its estimate of the amounts that would have been reimbursed to providers using the price information that was not false.  At the current time, these calculations are expected to be conducted on a quarter by quarter basis.

In most instances, state Medicaid programs reimbursed pharmacies for drugs dispensed to Medicaid patients based upon reimbursement methodologies utilizing a "lesser of" component in the formula.   For instance, the "lesser of" (a) ceiling prices such as Maximum Allowable Costs or Federal Upper Limits or (b) the Estimated Acquisition Cost ("EAC") constitutes the basis for reimbursement.  In these situations, if the Abbott pricing information that was not false would have resulted in an EAC lower

---

[2] For instance, Abbott PPD personnel knew AWP prices were published at a 25% markup above the Drugs' respective published wholesale prices.

than the reimbursement actually paid, then damages will be calculated.  If the Abbott pricing that was not false would not have resulted in an EAC lower than a MAC, for instance, then no damages will be calculated.

The Relator will factor in patient co-pays, if any.

The Relator will also segregate and claim only the federally funded share of the Medicaid program damages.

The applicable state Medicaid Program dispensing fee, or an estimate thereof, will first be deducted before calculating any damages amount.

Calculations, as set forth above conceptually, will be done for each NDC, for each state, for each quarter from 1994 through the present.  The sum total of those calculations will represent the total Medicaid damages sought by the Relator in this case under this alternative damage methodology.

Lastly, the Relator seeks treble the amount of actual damages under the False Claims Act, plus penalties of between $5,000/$5,500 and $10,000/$11,000 for each false statement or claim submitted or caused to be submitted by Abbott to Medicaid.

DATED: August 27 2008

Respectfully Submitted


/s/: Jarrett Anderson

C. JARRETT ANDERSON
ANDERSON LLC
205 West 14th Street
Suite 203
Austin TX 78703
Tel: 512-469-9191
Fax: 512-532-0585

JAMES J. BREEN
ALISON SIMON
THE BREEN LAW FIRM, P.A.
P.O. Box 297470
Pembroke Pines, FL 33029
Tel: 954-874-1635
Fax: 954-874-1705

SUSAN SCHNEIDER THOMAS
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4636

ATTORNEYS FOR VEN-A-CARE OF THE FLORIDA KEYS, INC.

**CERTIFICATE OF SERVICE**

I do hereby certify that the foregoing PLAINTIFFS' RULE 26(a)(1) DISCLOSURES

upon all parties via ECF and via Lexis Nexis File and Serve on the 27th day of August

2008.

William Mecoli, Paralegal.