UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION:  01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Magistrate Judge Marianne B. Bowler |
| *Inc., Zachary T. Bentley, and T. Mark Jones* | ) | |
| *v. Abbott Laboratories, Inc.*, | ) | |
| No. 07-CV-11618-PBS | ) | |

## THE PARTIES' JOINT RULE 26(F) DISCOVERY PLAN

Defendant Abbott Laboratories Inc. ("Abbott") and Relator Ven-A-Care of the Florida Keys ("Ven-A-Care") hereby submit this discovery plan pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  Abbott and Ven-A-Care have conferred on several occasions pursuant to Rule 26(f) and have agreed upon the discovery limitations set forth herein, except that the scope of some discovery issues remains contested.  A Case Management Order setting out the schedule for the case was entered by the Court on or about September 4, 2008, so this discovery plan does not address the schedule.

### A. INITIAL DISCLOSURES

Ven-A-Care and Abbott provided initial disclosures required by Rule 26(a)(1) on August 22, 2008.

### B. SCOPE AND TIMING OF DISCOVERY

1. The parties agree that the following are subjects on which discovery may be needed:

    a. Drug pricing and marketing.  This subject includes, but is not necessarily limited to: (i) Abbott's policies, if any, and practices concerning pricing of Ery products listed in paragraph 33 of the current Complaint (the "Drugs") and communication of pricing information

for those Drugs to pharmacies, group purchasing organizations, managed care organizations, or wholesalers; and (ii) Abbott's transactional sales data for the Drugs (the parties are negotiating the scope and form of the production of the data).

Ven-A-Care contends that more broad drug pricing and marketing topics and documents are subject to discovery, including but not limited to; (i) Abbott's formulation, use, (and possible discontinuation), or knowledge of Base Deal, WAC, wholesale, Direct, List, AWP, or other pricing; (ii) Abbott's practices and participation in receiving and responding to requests for bids, requests for proposals, or similar customer inquiries; (iii) Abbott's policies, if any, concerning communication of any drug reimbursement information (including AWP or other related information) to customers such as pharmacies, groups of pharmacies, wholesalers, etc.; (iv) Abbott's contract marketing and/or major account and/or other similar group or department's procedures, practices and activities; and (v) price publication services such as First Data Bank, Redbook, and Medispan, including but not limited to, Medicaid program use of pricing information published through these services, Abbott's receipt of any pricing information published through these services, and Abbott's communication of any pricing or other information to these services**.**

Abbott contends that discovery of drug pricing and marketing also includes federal and state government knowledge concerning:  (i) drug industry pricing terms, including but not limited to, Average Wholesale Price ("AWP"), Direct Price ("DP"), Wholesale Acquisition Cost ("WAC"), "chargebacks," and "contract price"; (ii) the prices at which providers and entities purchase drugs; (iii) the existence of a "spread" between manufacturers' published prices and providers' actual acquisition costs or the Medicaid reimbursement amount; (iv) communications with providers concerning industry pricing terms, drug costs, dispensing

2

costs, and complaints concerning the insufficiency of Medicaid reimbursement; and (v) any reports, studies, surveys or other investigations concerning the actual acquisition price of drugs reimbursed by Medicaid.

      b.      Medicaid payment methods and policies.  This subject includes**,** but is not limited necessarily to:  (i) the actual formulas utilized by the state Medicaid programs for reimbursement of drug and dispensing costs; (ii) the rationale behind any formulas utilized by the Medicaid programs; (iii) any reimbursement formulas considered by the Medicaid programs, including the reasons why the Medicaid programs did or did not adopt those formulas; (iv) Medicaid payment formulas or methodology mandated, suggested, or considered by the United States (v) the process by which the state Medicaid programs set Maximum Allowable Costs ("MACs") on drugs, including the rationale behind that process; (vi) the process by which the federal government has set Federal Upper Limits ("FULs"), including the rationale behind that process; (vi) government reports or studies of drug prices paid by pharmacies; and (vii) the provision of access to care for Medicaid recipients which is equal to that of the general population in the geographic region.

      Abbott contends that this subject includes: federal and state government knowledge concerning the topics listed under paragraph a., above, and any reports, studies, surveys or other investigations concerning Medicaid payments for prescription drugs or the actual acquisition price of drugs reimbursed by Medicaid; and the adequacy of the reimbursement of dispensing costs, including providers' costs, in addition to acquisition costs, of dispensing generic self-administered drugs and the extent to which payments for drug costs intentionally or unintentionally subsidized the payments for dispensing costs.

Ven-a-Care contends that this subject includes Abbott communications with government personnel concerning drug pricing or drug reimbursement and Abbott knowledge of Medicaid drug reimbursement laws, regulations, rules, policies, practices, and conduct and any government reports, studies, surveys or other investigations concerning Medicaid payments or reimbursement for prescription drugs.

        c.        Transaction level Medicaid claims and payment data for the Drugs in the Complaint sufficient to identify: (i) utilization; (ii) reimbursement for drug costs; (iii) reimbursement for dispensing fees; and (iv) whether reimbursement was based on a MAC or FUL.

Relator believes Medicaid claims data can be provided to the level of detail set forth above because Relator understands this to be consistent with the data production previously provided to Abbott by the United States in *United States of America, ex rel Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-CV-11337-PBS. Relator does not ultimately control the production of this data by the various state and United States governments who are presumed to be in possession of such data and cannot agree as to how those entities will produce the data.

Abbott believes that additional claims payment data identifying dates of payments, providers who received the reimbursement, MAC and FUL lists, and certain other information is also discoverable.

        d.        Abbott contends that it is entitled to discover whether Ven-A-Care is the original source of the allegations in its Complaint.

        e.        The damage model presented by Ven-a-Care.

2.      Documents and data previously produced and depositions taken in *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.,* Civil Action No. 06-11337-PBS and *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc., et al.*, Civil Action No. GV401286, shall be deemed produced or taken in this case, without waiving the parties' objections to discoverability or admissibility.

**C.      ELECTRONIC INFORMATION**

Any discoverable documents reasonably available in electronic format shall be provided in an electronic format that is feasible, usable and acceptable to both parties. If issues regarding compatibility of computer systems and software arise, the parties shall confer to resolve the matters, including agreeing upon an acceptable format.

**D.      PRIVILEGE LOGS**

Privilege logs shall be provided 30 days after the opposing party provides a request, in written, for their production, and shall provide reasons for each document withheld from production, as well as for each redaction from a document produced. There shall be no redaction of documents by any party on any basis other than a bona fide claim of a recognized lawful privilege or protection. All documents shall be produced in their original size or as currently maintained. No declaration or affidavit, which would otherwise be required to support a claim of privilege regarding a document withheld under such claim, shall be necessary unless the party seeking production serves and files a motion to compel or requests an appropriate hearing.

**E.      DISCOVERY LIMITATIONS**

1.      Unless otherwise stated in this Discovery Plan, later agreed to by the parties, or ordered by the Court, the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts (except the limit on the number of depositions in L.R. 26.1(c)) shall govern.

2. Plaintiff may serve no more than ten (10) deposition notices on Abbott seeking Rule 30(b)(6) testimony from Abbott or testimony of present or former Abbott employees. Defendant shall serve no more than six (6) deposition notices (including notices served under Rule 30(b)(6)) seeking testimony from Ven-a-Care or present or former Ven-a-Care personnel/principles, such as Zach Bentley, Mark Jones, Luis Cobo, or John Lockwood.

3. Depositions shall be subject to the following parameters:

a. Only record time shall count towards the time limits on depositions set forth in this Discovery Plan. Time spent on breaks shall be excluded. These limitations apply only to parties in this case.

b. Unless otherwise ordered by the Court or agreed to by the parties, no deposition of any individual person shall last longer than six (6) hours. The side taking the deposition shall have five (5) hours for questioning, and the side defending the deposition shall have one (1) hour for questioning. The limitations apply only to parties in this case. In unique situations the parties should accommodate reasonable requests by either party for additional time with an individual witness not to exceed one (1) hour.

The deposition parameters for 30(b)(6) witnesses shall be negotiated in good faith between the parties after the parties have tendered respective Deposition Notices and can more specifically approximate the number of persons to be presented on those topics and the length of time each person, in their corporate representative capacity, will need to be deposed. No 30(b)(6) deposition (defined as a deposition based on one notice) will last longer than eleven (11) hours, with ten (10) hours for the party taking the deposition and one (1) hour for the party defending the deposition, except by agreement of the parties.

   c. Videotaped depositions shall be permitted pursuant to Fed. R. Civ. P. 30(b)(2) and (3).  The swearing or affirming of the witness shall be on camera.  The camera shall, at all times, include within its field of vision, only the deponent and/or an exhibit offered into evidence.  The camera shall remain stationary at all times during the deposition and shall not zoom in or out.  The camera shall remain focused on the witness and shall not videotape any other person at the deposition.

   d. 30(b)(1) Depositions of Current Employees of the Parties.  Unless otherwise agreed between the parties, a requesting party wishing to take the deposition of a current employee of a party shall inform the responding party in a letter that identifies the name of the person to be examined.  As soon as practicable, the parties shall confer regarding a mutually convenient time and place and the estimated length of the deposition.  The responding party shall then contact the requesting party with a proposed date or dates for the taking of the deposition, unless the party intends to move for a protective order regarding the deposition.  The parties agree to endeavor in good faith to provide, a proposed date or dates within nine (9) business days from receiving the letter (except as agreed by the parties).  Absent good cause or agreement between the parties, the responding party shall propose the date or dates for the deposition to occur to fall within forty (40) calendar days from the date of the requesting party's initial request.  Any motion for protective order shall be filed no later than twenty (20) calendar days from receiving the requesting party's initial request; any response to the motion for protective order shall be filed within ten (10) calendar days of the filing of the motion for protective order.  The filing of a motion for protective order shall stay the deposition, pending adjudication or other disposition of the motion.

e. 30(b)(1) Depositions of Former Employees of the Parties.  To the extent a former employee is known to likely possess discoverable information that may be used to support the parties' claims or defenses, the party shall follow the requirements set forth in section 3(e) immediately above.  Although Abbott does not understand under what circumstance plaintiff will be contacting a former Abbott employee who has not been disclosed as a witness likely possessing discoverable information, and Abbott reminds plaintiff that former employees may possess information protected by the attorney-client privilege or work-product rule, which the former employee cannot properly waive, Abbott is willing to agree to try this procedure, but reserved the right to withdraw its agreement or seek court intervention if necessary.

f. 30(b)(6) Depositions.  Unless otherwise agreed between the parties, a requesting party wishing to take the deposition of a party under Rule 30(b)(6) shall serve a notice to the responding party that describes with reasonable particularity the matters on which examination is requested, as required by Rule 30(b)(6).  As soon as practicable but no later than thirty (30) calendar days from receiving the letter (except as agreed by the parties), the responding party shall contact the requesting party, identifying the designated witness(es) and providing a proposed date or dates for the taking of the deposition, along with the party's objections to the topics, if any, unless the party intends to move for a protective order regarding the deposition.  The parties shall confer regarding a mutually convenient time and place and the estimated length of the deposition.  Absent good cause or agreement between the parties, the responding party shall propose the date or dates for the deposition to occur which fall within forty-five (45) calendar days from the date of the requesting party's initial requests.  The parties will comply with the Federal Rules of Civil Procedure with respect to any motion for protective order and objections to 30(b)(6) topics.

       g.       Third Party Depositions.  A deposition of a third-party witness shall be initiated through service of subpoena under Rule 45.  The requesting party shall confer with the third-party witness and opposing counsel regarding a mutually convenient time and place and the estimated length of the deposition.

       h.       The depositions limits set forth in Local Rule 26.1 of the Rules for the District of Massachusetts, and the Federal Rules of Civil Procedure, shall not apply to the parties in this matter.

    4.       Cross-Noticed Depositions.  Absent agreement of all affected parties, a party in this case seeking to cross-notice a deposition in another AWP or WAC case (e.g., state AWP or WAC  litigation) shall inform opposing counsel in writing as soon as practicable, preferably at least two weeks before the date of the scheduled deposition.

    5.       Nothing in this Discovery Plan precludes any party from filing in the future an appropriate motion for protective order or for extension of deadlines, or relief from any provision herein for good cause, pursuant to Fed. R. Civ. P. 26(c).

    6.       The parties certify that they have conferred with a view to establishing a budget for the costs of conducting the litigation and have considered the resolution of the case through alternative dispute resolution.  The parties have agreed to certain measures to minimize costs (e.g., limitations on number and hours of party depositions, efforts to avoid unnecessary motion practice), but have not been able to establish a specific budget for the case.  The parties are willing to attend a mediation at an appropriate time after the close of discovery.

Dated: September 15, 2008

Respectfully submitted,

/s/ Eric P. Berlin_____
James R. Daly
Eric P. Berlin
Tara A. Fumerton
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

*Counsel for Defendant Abbott Laboratories Inc.*


/s/ _Jarrett Anderson_____
C. Jarrett Anderson
ANDERSON LLC
208 West 14th, Suite 203
Austin, TX 78701
Telephone: (512) 469-9191
Facsimile: (512) 532-0585

James J. Breen
Alison Simon
THE BREEN LAW FIRM, P.A.
P. O. Box 297470
Pembroke Pines, FL 33029
Telephone: (954) 874-1635
Facsimile: (954) 874-1705

Susan S. Thomas
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4636

*Counsel for Relator Ven-a-Care of the Florida Keys, Inc.*

## **CERTIFICATE OF SERVICE**

      I, Tara A. Fumerton, an attorney, hereby certify that I caused a true and correct copy of the foregoing **The Parties' Joint Rule 26(f) Discovery Plan** to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 15th day of September, 2008.

                                                  /s/  Tara A. Fumerton