# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br> Master File No.: 01-CV-12257-PBS (original S. D. Iowa No. 4:07-cv-00461-JAJ-CFB) |
| THIS DOCUMENT RELATES TO:<br>*State of Iowa v. Abbott Laboratories, et al.* | Judge Patti B. Saris |

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT
### CHIRON CORPORATION TO THE STATE OF IOWA'S COMPLAINT

Defendant Chiron Corporation ("Chiron"), by its undersigned counsel, hereby states as an Answer and Affirmative Defenses to the State of Iowa's Complaint, dated October 9, 2007, on behalf of Chiron only as follows:

### PRELIMINARY STATEMENT

Plaintiff's Complaint (the "Complaint") improperly refers to Chiron, other defendants, and third parties on a collective basis, failing to plead allegations with requisite particularity against Chiron.  This is insufficient to apprise Chiron (let alone each separate entity) of the allegations asserted against it.  Chiron has nevertheless attempted to respond to Plaintiff's allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, Chiron is generally without knowledge or information sufficient to form a belief as to the truth of those allegations.  Chiron states that it is answering Plaintiff's allegations solely on behalf of itself, even when Plaintiff's allegations refer to alleged conduct by Chiron and other persons or entities.

The Complaint also contains purported quotations from a number of sources.   In answering allegations consisting of quotations, Chiron's failure to deny that the material quoted was contained in a document or was uttered by the person or entity quoted or Chiron's reference to the full document instead of the quote shall not constitute an admission that the substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action.

Chiron denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically admitted herein, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole.   In addition, Chiron specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint.   For ease of reference, Chiron has included in this Answer and Affirmative Defenses the main captions used in the Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, those captions.

Chiron states that its answers are based upon, and necessarily limited by, information now available to Chiron as discovery had been stayed while Chiron's individual Motion to Dismiss the Iowa Complaint was pending before the Court, and is currently stayed as a result of said motion.   *See* Iowa Motion to Dismiss Hrg. Tr. (June 26, 2008), at 46:21-47:3 (staying discovery as to all Chiron drugs pled in Plaintiff's Complaint); Iowa Proposed Case Management Order (filed with the Court on August 8, 2008), at 7, ¶ 11 (agreeing that "no discovery shall proceed as to . . . (c) all Chiron drugs in the Iowa complaint and included in the exhibits thereto."); Court's Memorandum and Order Re: Certain Defendants' Motion to Dismiss the Iowa

Complaint (August 19, 2008), at 16, § B.6. (ordering that discovery is stayed "for all drugs with alleged spreads at 30% or less . . .").  Therefore, Chiron hereby gives notice that it reserves its right to amend this Answer should it deem doing so necessary during the discovery process.

Additionally, Chiron states that no response is required to allegations concerning Best Price claims because this Court has already dismissed Best Price claims against certain defendants, including Chiron.  *See* Memorandum and Order (Saris, J.) (Aug. 19, 2008) at 12, ¶ 2 (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  Chiron also states that no response is required to allegations concerning unjust enrichment because Plaintiff conceded that its unjust enrichment claims should be dismissed as to certain defendants and certain drugs.  *See id.* at 14, ¶ 4 (ordering parties to submit a stipulation specifying which defendants and/or drugs "for which they agree that the unjust enrichment claims were not alleged with adequate particularity[]" and are therefore dismissed.).  Furthermore, Chiron states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint against defendants, including Chiron.  *See id.* at 11, ¶ 1.

These comments and objections are incorporated, to the extent appropriate, into each numbered and unnumbered paragraph of this Answer.

## SPECIFIC RESPONSES

To the extent that the unnumbered sentence immediately preceding the Complaint's Introduction ("Introductory Sentence") makes allegations against Chiron, Chiron denies them, except admits that the State of Iowa (the "State"), by and through its Attorney General Tom Miller, has made allegations based on information and belief against a number of defendants, including Chiron, as set forth in the Complaint.

## ANSWER TO INTRODUCTION

1.      Iowa brings this action to recover millions of dollars in damages suffered by the Iowa Medicaid Program ("Iowa Medicaid") as a result of defendant drug manufacturers' unlawful pricing practices, and to halt such practices.

**ANSWER:**    Chiron admits that the State seeks to bring this action as alleged in paragraph 1 of the Complaint, but Chiron denies that there is any basis for the State to do so and denies that the State is entitled to any relief.

2.      The unlawful practices are straightforward.  Defendants purposefully report false and inflated price information for certain prescription drugs covered by Iowa Medicaid.

**ANSWER:**    Chiron denies the allegations in paragraph 2 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "purposefully report[s] false and inflated price information."   Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

3.      Defendants submit this false and inflated pricing information in order to "create a spread" between Medicaid providers' actual acquisition cost ("AAC") for defendants' products and the amount at which the drug is reimbursed by Medicaid and other third party payors.

**ANSWER:**    Chiron denies the allegations in paragraph 3 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it submits "false and inflated pricing information in order to 'create a spread.'"  Chiron further denies the characterization of "spread" in paragraph 3.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

4.      Defendants know that by creating this spread they can incentivize pharmacists (both mail-order and traditional retail), Group Purchasing Organizations ("GPOs"), Hospital Out-Patient Pharmacies, Nursing Homes and various other Medicaid pharmacy providers who select among competing drugs and/or develop formularies to purchase or give preferential treatment to defendants' products.  In other words, defendants compete with each other based on

spread and reimbursement, rather than actual cost or efficacy.

**ANSWER:**   Chiron denies the allegations in paragraph 4 of the Complaint as to Chiron and demands strict proof thereof.   Chiron further denies the characterization of "spread" in paragraph 4.   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

5.      Thus, for example, a retail pharmacy that needs to stock its shelves with a version of a multi-source or generic drug will select the generic with the greatest spread between the pharmacy's AAC for that drug and the reimbursement amount the pharmacy will receive from Medicaid or other third party payors.   Likewise, a GPO that is providing purchase options for its members and needs to select a preferred brand drug like a cholesterol reducing statin will choose among Lipitor, Zocor, Pravachol, Lescol, Mevacor or Crestor based on spread. The fact of this distorted competition is not speculative. GeriMmed [sic], a GPO serving long term care pharmacies, makes clear in its marketing materials to its customers that one of the "Keys to Unlocking Profits" with respect to "Single Source Medications" (or brand-name patented drugs) is to "BUY THE PACKAGE SIZE WITH THE BEST AWP SPREAD," [sic]

**ANSWER:**   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies the same and demands strict proof thereof.

6.      Defendants are able to perpetrate this deception because defendants operate in and purposefully manipulate a market that, by defendants' own design, is extremely complicated and non-transparent.   Defendants know that Medicaid has no practical alternative but to rely on the false pricing information, which defendants report to the publishing compendia and represent to be true.   Defendants know that their pricing practices result in Medicaid paying more for prescription drugs than any other payor.

**ANSWER:**   Chiron denies the allegations in paragraph 6 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it "purposefully manipulate[s] a market that, by defendants' own design, is extremely complicated and non-transparent."   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 as they pertain to other defendants and therefore denies the same and demands

strict proof thereof.

7.      There are two relevant components of the price Iowa Medicaid pays for the prescription drugs at issue in this case.  The first is the price initially paid by Medicaid to the pharmacy provider for the drug.  The second is the federal Medicaid rebate Iowa receives for brand drugs.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and therefore denies the same and demands strict proof thereof.

8.      As to the initial price paid, Iowa, like all states, is required by federal law to reimburse providers at their Estimated Acquisition Cost ("EAC").  To that end, Iowa, like all states, established a formula to calculate EAC based on wholesale price information provided by the manufacturers.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint and therefore denies the same and demands strict proof thereof.

9.      There are four pricing benchmarks relevant to this EAC formula:  wholesale acquisition cost or "WAC"; "average wholesale price" or "AWP"; the federal maximum allowable cost or federal upper limit "MAC" or "FUL"; and, since 2001, the Iowa State Maximum Allowable Cost or "SMAC."  Defendants' unlawful price reporting activity infects all four benchmarks and renders each of them false and inflated.  Thus, regardless which benchmark Iowa utilizes to calculate its Medicaid prescription reimbursements and EAC, the net result is that Iowa overpays.

**ANSWER:**    Chiron denies the allegations in paragraph 9 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it engages in any "unlawful price reporting activity [that] infects all four [pricing] benchmarks and renders each of them false and inflated."  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

10.      The second relevant component is the rebate that brand drug manufacturers pay to the states pursuant to a federal statutory formula set forth in 42 U .S.C. § 1396r-8 (the "Medicaid

Rebate Statute"), and the statutorily-mandated Medicaid rebate contract that each manufacturer executes with the Secretary of Health and Human Services "on behalf of the States.[1]

**ANSWER:**   Chiron admits that it pays Medicaid rebates to Iowa and that such rebates lower the price Iowa Medicaid pays for Chiron's prescription drugs.   Chiron is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of the Complaint and its footnote and therefore denies the same and demands strict proof thereof.   To the extent the allegations in paragraph 10 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

11.   The relevant benchmark with respect to the brand drug Medicaid Rebate is something called "Best Price."   "Best Price" is reported by brand drug manufacturers only and can serve as the basis for the brand manufacturer's rebate payments to the States.   As set forth more fully below, Iowa alleges that certain brand manufacturers named in this complaint do not accurately report the Best Prices for certain of their drugs with the effect being that the manufacturers underpay the rebates they owe to Iowa for those drugs.

**ANSWER:**   Chiron states that no response is required to paragraph 11 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See* Memorandum and Order (Saris, J.) (Aug. 19, 2008) at 12, ¶ 2 (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").   To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations set forth in paragraph 11 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it does not accurately report Best Prices.   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

---

[1] *See* Medicaid Rebate Agreement, 56 Fed. Reg. 7049 (1991); Payment for Drugs under Rebate Agreements, 60 Fed. Reg. 48442 (1995) (codified at 42 CFR 441).   A copy of the current standard Model Rebate Agreement, available at http://www.cms.hhs.gov/medicaid/drugs/drebate.asp, and substantially similar to that executed by each defendant named herein, is Exhibit E hereto.

12. Defendants' unlawful pricing schemes involve both components described above. Their manipulation of the Medicaid program through the improper reporting of false and inflated pricing information that form the bases for each of these two components has resulted in overcharges of many millions of dollars to the Iowa Medicaid Program, as set forth in detail herein.

**ANSWER:** Chiron denies the allegations in paragraph 12 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it engages in "unlawful pricing schemes," the "manipulation of the Medicaid program" or the "improper reporting of false and inflated pricing information" resulting in "overcharges . . . to the Iowa Medicaid Program." Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

13. Defendants' wrongful practices are especially pernicious given their effect on the public fisc and in connection with a government-sponsored, taxpayer-funded means-based entitlement program that was created to provide a social safety net for those who are among the nation's most vulnerable citizens – the poor and infirm.

**ANSWER:** Chiron denies the allegations in paragraph 13 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it engages in "wrongful practices" that have a "pernicious . . . effect on the public fisc." Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

14. As voluntary participants in the Iowa Medicaid program, who seek to have their drugs paid for by the government, defendants are charged with the knowledge and requirements of State and Federal law.

**ANSWER:** To the extent paragraph 14 states conclusions or characterizations of law, no response is required. To the extent a response is deemed required, Chiron admits that it voluntarily participates in the Iowa Medicaid program, but denies that it has violated any State or Federal law. Chiron denies the remaining allegations in paragraph 14 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

15.     It is well settled that those who seek to be paid from the public fisc must "turn square corners" in their dealings with the government.

> This observation has its greatest force when a private party seeks to spend the Government's money.  Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; [such an entity] could expect no less than to be held to the most demanding standard in its quest for public funds.  This is consistent with the general rule that those who deal with the Government are expected to know the law.

*North Mem'l Med. Ctr.* v. *Gomez,* 59 F.3d 735, 739 (8th Cir. 1995) *(citing Heckler* v. *Community Health Servs.,* 467 U.S. 51, 64-65 (1984)).

**ANSWER:**     To the extent paragraph 15 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that it voluntarily participates in the Iowa Medicaid program, but denies that it has violated any State or Federal law.  Chiron denies the remaining allegations in paragraph 15 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraphs 15 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

16.     Defendants ignore this obligation entirely and knowingly, brazenly and intentionally report false prices to the government.  Defendants are liable under federal and state law for these affirmative misrepresentations.

**ANSWER:**     To the extent paragraph 16 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the

allegations in paragraph 16 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it "intentionally report[s] false prices to the government." Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

17.     In all, halting defendants' fraudulent, unfair and deceptive practices and recovering the millions of dollars in damages suffered by Iowa Medicaid is a matter of supreme public importance and the fundamental goal of this litigation.

**ANSWER:**   Chiron denies the allegations in paragraph 17 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it engages in "fraudulent, unfair and deceptive practices." Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

18.     The specific prescription drugs at issue in this litigation are identified by their unique national drug codes, known as "NDCs" (hereinafter the "at issue NDCs") and listed in Exhibit B-1 through B-33 hereto.

**ANSWER:**   Chiron admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiff with respect to any such NDCs contained in Exhibit B to the Complaint. Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO PARTIES

19.     This action is brought for and on behalf of the sovereign State of Iowa, by and through Tom Miller, the duly elected and current Attorney General of the State of Iowa pursuant to, *inter alia,* the Iowa Consumer Fraud Act, Iowa Code § 714.16, and the common law and statutory authority of the Attorney General to represent the State of Iowa.

**ANSWER:**   Chiron is without knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 19 and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 19 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

20.     Defendants are brand (single source) and generic (multi-source) manufacturers and sellers of prescription drugs who have voluntarily agreed to participate in the Iowa Medicaid program and whose unlawful, misleading and deceptive scheme, described in this Complaint, has resulted in drugs being paid for by Iowa Medicaid at false and inflated prices as detailed herein.

**ANSWER:**     Chiron admits that it manufactures and sells prescription drugs and that it participates in the Iowa Medicaid Program.  Chiron denies the remaining allegations in paragraph 20 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 20 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

21.     Each defendant conducts extensive business in the State of Iowa.

**ANSWER:**     Chiron admits that it conducts business in the State of Iowa.

**Paragraphs 22-30 (Allegations concerning various other Defendants)**

**ANSWER:**     The allegations in paragraphs 22-30 are directed to other defendants and require no response from Chiron.  To the extent a response is deemed required, Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 22-30 of the Complaint and therefore denies the same and demands strict proof thereof.

31.     Defendant **CHIRON CORPORATION** is a Delaware Corporation engaged in the business of manufacturing and selling pharmaceuticals.  Chiron Corporation's principal place of business is located at 4560 Horton St., Emeryville, CA  94608-2916.  Chiron Corporation is

also being sued for the conduct of its subsidiaries, divisions and predecessor corporations, including but not limited to Cetus Oncology Corp.  These entities are referred to herein as "Chiron".

**ANSWER:**   Chiron admits that it is a corporation organized under the laws of Delaware, but states that its principal place of business is 350 Massachusetts Avenue, Cambridge, Massachusetts  02139.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 31 and therefore denies the same and demands strict proof thereof.

**Paragraphs 32-54 (Allegations concerning various other Defendants)**

**ANSWER:**   The allegations in paragraphs 32-54 of the Complaint are directed to other defendants and require no response from Chiron.  To the extent a response is deemed required, Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 32-54 of the Complaint and therefore denies the same and demands strict proof thereof.

54.   Various other individuals, partnerships, sole proprietors, business entities, companies, and corporations, currently unknown to Iowa and not named as defendants in this Complaint, participated in the violations alleged in this Complaint and performed acts and made statements in furtherance thereof.   Such unknown persons or entities aided, abetted, or participated with defendants in the commission of the wrongful acts alleged herein or otherwise caused the damages suffered by Iowa.

**ANSWER:**   The allegations in paragraphs 54 of the Complaint are directed to unknown defendants and require no response from Chiron.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 54 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it has engaged in any "wrongful acts" related to drug pricing.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

55.     Except as described herein, Iowa is, as yet, unaware of the true names, capacities, nature and extent of the participation in the course of conduct alleged herein of the persons sued as DOES 1-100 inclusive and, therefore, sue these defendants by such fictitious names.  Iowa will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

**ANSWER:**     The allegations set forth in paragraph 55 of the Complaint explain the nature of Iowa's unawareness and future action to be taken by Iowa to which no response is required.  In addition, the allegations in paragraph 55 are directed to unknown defendants and require no response from Chiron.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 55 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

56.     Defendants unknown at this time may include independent pharmacies, dispensers, and other pharmacy providers who prescribed drugs and received inflated Medicaid reimbursements and engaged in fraudulent billing practices, as well as various other persons, wholesalers, publishers, partnerships, sole proprietors, firms, corporations and individuals that may have participated with defendants in the offenses alleged in this complaint and may have performed acts and made statements in furtherance of the alleged illegal conduct.

**ANSWER:**     The allegations in paragraph 56 of the Complaint are directed to unknown defendants and require no response from Chiron.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 56 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

57.     Each of the defendants designated herein as a Doe defendant is legally responsible in some manner for the unlawful acts referred to herein.

**ANSWER:**    To the extent paragraph 57 of the Complaint states conclusions of law, no response is required.   In addition, the allegations in paragraph 57 are directed to unknown defendants and require no response from Chiron.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 57 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO JURISDICTION AND VENUE

59.    Iowa asserts claims for violation of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* the Iowa Consumer Fraud Act, Iowa Code § 714.16, and for breach of contract, unjust enrichment, and common law fraud.

**ANSWER:**    Chiron admits that Plaintiff claims violations of, *inter alia*, the Social Security Act, 42 U.S.C. § 1396 *et seq.*, the Iowa Consumer Fraud Act, Iowa Code § 714.16, and breach of contract, unjust enrichment, and common law fraud; however, Chiron denies there is any basis for Plaintiff to do so and denies that Plaintiff is entitled to any relief.   Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 of the Complaint and therefore denies the same and demands strict proof thereof.

60.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the action alleges violations of the Social Security Act, 42 U.S.C. § 1396 *et seq.* and breach of the federal Medicaid Rebate Agreement created pursuant to 42 U .S.C. § 1396r-8.  This Court has supplemental jurisdiction over Iowa's state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**    The allegations set forth in paragraph 60 of the Complaint state jurisdictional allegations and legal conclusions to which no response is required.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 60 of the Complaint and

demands strict proof thereof, except admits that the captioned matter has been transferred to this

Court by the Judicial Panel on Multi District Litigation pursuant to 28 U.S.C. § 1407.

61.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).
Defendants do business and are qualified to do business in this district; certain acts giving rise to
the claims asserted in this complaint occurred within this district; and the illegal actions of
defendants, as alleged in this complaint, caused damage to plaintiff within this district.

**ANSWER:**     The allegations set forth in paragraph 61 of the Complaint state

jurisdictional allegations and legal conclusions to which no response is required.  To the extent a

response is deemed required, Chiron denies the allegations in paragraph 61 of the Complaint,

except admits that each of the captioned matter has been transferred to this Court by the Judicial

Panel on Multi District Litigation pursuant to 28 U.S.C. § 1407.

### ANSWER TO ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

62.     Medicaid was established by Title XIX of the Federal Social Security Act (the
"Act"), 42 U.S.C. § 1396 *et seq.* (the "Medicaid Program").  The Act mandates the establishment
of minimum health and safety standards that must be met by providers and suppliers, such as
defendants, participating in the Medicaid Program.

**ANSWER:**     To the extent paragraph 62 of the Complaint states conclusions or

characterizations of law, no response is required.  To the extent a response is deemed required,

Chiron admits that Medicaid was established by Title XIX of the Social Security Act, and states

that the provisions of Title XIX speak for themselves, and any characterizations thereof are

denied.  Chiron is otherwise without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 62 of the Complaint and therefore denies the

same and demands strict proof thereof.   Chiron respectfully refers the Court to 42 U.S.C.

§§ 1396 *et seq*. for a full and complete reading of their provisions.

63.     State participation in Medicaid is voluntary, but once a state agrees to participate,
as Iowa has, the state must comply with all federal statutory requirements.  The Medicaid plan
proposed by each state must be approved by the federal government. *See* 42 U.S.C. §§ 1396a(a)
and (b).  Iowa's Medicaid plan has been expressly approved by the federal government.

**ANSWER:**    To  the  extent  paragraph 63  of  the  Complaint  states  conclusions  or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Complaint and therefore denies the same and demands strict proof thereof, except Chiron admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.   To the extent the allegations in paragraph 63 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.   Chiron respectfully refers the Court to 42 U.S.C. §§ 1396a(a) and (b) for a full and complete reading of the provisions.

64.    Federal Medicaid law requires states and localities to seek recovery of the full amount of any overcharge to the Medicaid program, including the federal and state shares of such overcharges. 42 U.S.C. § 1396a(a)(25)(A) & (B); 42 U.S.C. § 1396b(d)(3)(A).

**ANSWER:**    To the extent paragraph 64 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 and therefore denies the same and demands strict proof thereof.   To the extent the allegations in paragraph 64 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.   Chiron respectfully refers the Court to 42 U.S.C. § 1396a(a)(25)(A) & (B) and 42 U.S.C. § 1396b(d)(3)(A) for a full and complete reading of their provisions.

65.    Medicaid does not require states to cover prescription drugs, but all 50 states and the District of Columbia currently provide such coverage.  42 U.S.C. § 1396d(a)(2).

**ANSWER:**    To the extent paragraph 65 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 65 and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 65 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Chiron respectfully refers the Court to 42 U.S.C. § 1396d(a)(2) for a full and complete reading of their provisions.

66.     In Medicaid, drugs are identified and tracked by 11-digit national drug codes (NDCs).  NDCs identify unique formulations of each drug, including the manufacturer, strength and package size.  Currently there are over 65,000 NDCs.

**ANSWER:**     Chiron admits that national drug codes are assigned to prescription drugs. Chiron is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66 and therefore denies the same and demands strict proof thereof.

67.     Federal regulations require State Medicaid Programs to reimburse providers for Medicaid covered drugs at the "lower of the 1) estimated acquisition costs ["EAC"] plus reasonable dispensing fees established by the [Single State Medicaid Agency] or 2) providers' usual and customary charges to the general public."  42 C.F.R. § 447.331.

**ANSWER:**     To the extent the allegations of paragraph 67 of the Complaint state legal conclusions and/or arguments, no response is required.  To the extent the allegations in paragraph 67 of the Complaint purport to recite and/or interpret laws or regulations, those laws or regulations speak for themselves, and any characterization thereof is denied.  To the extent a response is required, Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint and therefore denies the same and demands strict proof thereof.

68.     Typically, States base EAC on average wholesale price (AWP) minus a discount. According to a report issued by the United States Department of Health and Human Services Office of Inspector General ("OIG") in September 2004, "Variation in State Medicaid Drug Prices, September 2004" (OEI-05-02-00681), the most common EAC formula in 2001 was AWP minus 10 percent.

**ANSWER:**     Chiron is without knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 68 of the Complaint and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 68 refer to an OIG report, the report speaks for itself, and any characterizations thereof are denied.

69.     Iowa's EAC formula was AWP-10% until 2006, when it was changed to AWP-12%.

**ANSWER:**   To the extent paragraph 69 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69 and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 69 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

70.     The OIG has recognized that the States must rely on EAC proxies (such as AWP) because of the difficulty in accessing pharmacies' actual acquisition costs.

**ANSWER:**   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Complaint and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 70 refer to any OIG reports, such reports speak for themselves, and any characterizations thereof are denied.

71.     States have historically reimbursed at a discount off of AWP because States were aware that the AWPs defendants caused to be reported for their products were somewhat higher than what pharmacies actually paid to obtain drugs.  The discount rates were meant to re-capture this inflation and to approximate EAC, as Federal Regulations require.  At no time did Iowa seek to reimburse at a rate higher than EAC.

**ANSWER:**   Chiron denies the allegations in paragraph 71 of the Complaint as to Chiron and demands strict proof thereof.  Chiron states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of

wholesale prices.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

72.     The fact that most states discounted from AWP in the 10% range reveals what States believed the level of AWP inflation to be.  Only recently has Iowa learned that the true levels of AWP inflation were grotesquely higher than what was originally believed.  Only recently has Iowa learned that the reported AWPs often bear no relationship whatsoever to defendants' true prices and can exceed 100%, 200% or even more of what those true prices are.

**ANSWER:**     Chiron denies the allegations in paragraph 72 of the Complaint as to Chiron and demands strict proof thereof.  Chiron states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

73.     Iowa's 2006 Medicaid Provider Manual provides that the amount of payment for prescription drugs is based on several factors, in accordance with 42 C.F.R. § 447.331-447.332 and Iowa Admin. Code 441-79.1(8).

(a) "Estimated acquisition cost" (EAC) is defined as the average wholesale price ("AWP") as published by Medi-Span less 12%.

(b) "Maximum allowable cost" (MAC) is defined as the federal upper limit or "FUL" for multiple-source drugs, established in accordance with the methodology of the Centers for Medicare and Medicaid Services, as described in 42 C.F.R. § 447.332(a)(I)(i) and (ii).

(c) "State maximum allowable cost" (SMAC) reimbursement is price assigned by Iowa Medicaid to certain drug products meeting therapeutic equivalency, market availability, or other criteria determined appropriate by the Department.  Since 2001, Iowa Medicaid established SMAC fees, *inter alia,* through a review of invoices which, in part, reflect or are based on published prices including WACs, AWPs and FULs.  To the extent that defendants falsely report their prices, as described herein, defendants cause false and inflated SMACs to be set.

**ANSWER:**     Chiron is without knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 73 or its subsections and therefore denies the same

and demands strict proof thereof.  To the extent the allegations in paragraph 73 or its subsections

refer to statutes or regulations, those sources speak for themselves, and any characterizations

thereof are denied.

74.     The 2006 Iowa Provider Manual provides further that reimbursement for covered **generic** prescription drugs *shall be the lowest of* the following, as of the date of dispensing:

- The estimated acquisition cost, defined as the average wholesale price as published by Medi-Span less 12 percent, plus the professional dispensing fee.

- The maximum allowable cost (MAC or FUL) plus the professional dispensing fee.

- The state maximum allowable cost (SMAC) plus the professional dispensing fee.

- The submitted charge, representing the provider's usual and customary charge for the drug.

**ANSWER:**   Chiron is without knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 74 or its subsections and therefore denies the same

and demands strict proof thereof.  To the extent the allegations in paragraph 74 or its subsections

refer to statutes or regulations, those sources speak for themselves, and any characterizations

thereof are denied.

75.     Iowa's use of a SMAC began in 2001 when the Department of Human Services established it in response to 2001 Iowa Acts, Chapter 191, section 31. Prior to 2001, there was no Iowa SMAC.

**ANSWER:**    The allegations in paragraph 75 of the Complain require no response from

Chiron on the grounds that the Iowa SMAC claims have been dismissed by the Court.  To the

extent a response is deemed required, Chiron is without knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 75 and therefore denies the same and

demands strict proof thereof.  To the extent the allegations in paragraph 75 refer to statutes or

regulations, those sources speak for themselves, and any characterizations thereof are denied.

76.     Prior to Iowa's use of a SMAC, the Iowa Medicaid provider manual provided that generic drugs would be reimbursed at the lower of EAC, MAC/FUL or the submitted charge (representing the provider's usual and customary charge).

**ANSWER:**     Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 76 refer to statutes, regulations, or the Iowa Medicaid Provider Manual, those sources speak for themselves, and any characterizations thereof are denied.

77.     According to the Iowa 2006 Medicaid Provider Manual, reimbursement for covered **brand name** prescription drugs *shall be the lowest of* the following, as of the date of dispensing:

*   The estimated acquisition cost (AWP-12%) plus the professional dispensing fee.

*   The submitted charge, representing the provider's usual and customary charge for the drug.

**ANSWER:**     Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 or its subsections and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 77 or its subsections refer to statutes, regulations, or the Iowa Medicaid Provider Manual those sources speak for themselves, and any characterizations thereof are denied.

78.     From 1991 to 2005, Iowa defined EAC as AWP-10%.  Throughout that period of time, Iowa's source for WACs, AWPs, FULs and all other published wholesale price information was First Data Bank.

**ANSWER:**     Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 78 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

79. From 1991 to 2005, Iowa reimbursed for brand drugs based on the lower of EAC (AWP-10%) or the submitted charge (representing the provider's usual and customary charge).

**ANSWER:** Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 and therefore denies the same and demands strict proof thereof. To the extent the allegations in paragraph 79 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

80. The Medicaid reimbursements at issue in this litigation are those made on the basis of AWP, MAC/FUL or SMAC. Every drug listed in Exhibit B to this complaint has been reimbursed by Iowa Medicaid based on AWP, MAC/FUL or, since 2001, SMAC.

**ANSWER:** Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 and therefore denies the same and demands strict proof thereof. To the extent the allegations in paragraph 80 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

81. AWPs and FULs are published and reported by non-party publishing compendia such as First Data Bank ("FDB") and Medi-Span based on pricing information supplied by defendant drug manufacturers. Until 2006, Iowa used FDB as its source for FULs, WACs, AWPs and all published prices. Since 2006, Iowa has used Medi-Span for this data.

**ANSWER:** Chiron admits that independent third-party pricing compendia such as First DataBank and Medi-Span publish AWPs and FULs, but denies that Chiron has any control over the information that First DataBank or Medi-Span, which are independent third-parties, publishes. Chiron is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 of the Complaint and therefore denies the same and demands strict proof thereof.

82. States use AWP and MAC/FUL as proxies for EAC in large part because defendants purposefully and fraudulently conceal their true prices claiming they are proprietary trade secrets.

**ANSWER:**   Chiron denies the allegations in paragraph 82 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it has "purposefully and fraudulently conceal[ed]" the "true prices" of its drugs by "claiming they are proprietary trade secrets."  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

83.    At all times, Iowa has intended to reimburse providers for Medicaid covered drugs at the providers' EAC.

**ANSWER:**   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83 and therefore denies the same and demands strict proof thereof.

84.    Defendants have foiled Iowa's attempt to reimburse providers at EAC by fraudulently misrepresenting the true prices at which they sell their drugs and reporting false and inflated prices instead.

**ANSWER:**   Chiron denies the allegations in paragraph 84 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it "fraudulently misrepresent[s]" its true prices or that it reports "false and inflated prices."  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

85.    Thus, despite Iowa's good faith efforts to reimburse providers at EAC, because of defendants' unfair practices, deception and fraud, Iowa has reimbursed at amounts that far exceed EAC.  Iowa Medicaid's total expenditures for the years 1992 through 2005 for those of defendants' drugs for which Iowa asserts claims are set forth in Exhibit A hereto.

**ANSWER:**   Chiron denies the allegations in paragraph 85 of the Complaint as to Chiron and demands strict proof thereof, except that Chiron admits that Exhibit A purports to

identify total expenditures by Defendant. Chiron specifically denies any "unfair practices, deception, and fraud." Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

86.     There are four pricing benchmarks relevant to the Iowa EAC formula and defendants' fraudulent practices have corrupted each.

**ANSWER:**     Chiron denies the allegations in paragraph 86 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies conducting any "fraudulent practices." Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

87.     The first pricing benchmark is wholesale acquisition cost or "WAC." WAC is supposed to represent the price a wholesaler pays a drug manufacturer for its products.

**ANSWER:**     To the extent paragraph 87 of the Complaint states conclusions or characterizations of law, no response is required. To the extent a response is deemed required, Chiron denies the allegations in paragraph 87 of the Complaint as they pertain to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

88.     Iowa alleges that defendants report WACs or WAC equivalents (such as Direct Prices, Book Prices, Wholesale Net Prices, Catalog Prices or List Prices) for their products that are uniformly false and inflated.

**ANSWER:**     Chiron denies the allegations in paragraph 88 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it reports "false and inflated" "WACs or WAC equivalents." Chiron is without knowledge or information sufficient

24

to form a belief as to the truth of the allegations in paragraph 88 of the Complaint as they pertain

to other defendants and therefore denies the same and demands strict proof thereof.

89.    The WACs are false and inflated because they do not, in fact, reflect the actual prices at which defendants sell their drugs to wholesalers.  In fact, wholesalers routinely obtain drugs for prices well below WAC.  One way in which the scheme works is as follows: Defendants enter into contracts with providers, such as large retail chain pharmacies like Walgreens, Walmart, or Costco, or group of providers or group purchasing organization comprised of retailers, to sell their products at certain prices ("contract prices").  The defendants then purport to sell the agreed upon drugs to wholesalers with whom they have a contractual arrangement, at a price defendants call WAC.  In the overwhelming majority of cases, the WAC is higher than the contract price agreed upon by the provider and the drug manufacturer.  The wholesaler then ships the product to the provider, charging the provider the lower contract price. When the wholesaler receives payment from the provider, it charges the manufacturer for the difference between the contract price agreed and the WAC.  The wholesaler then sends a bill to the manufacturer, called a "charge back," for the difference between the WAC and the contract price actually paid by the provider.  These charge backs, (or self adjustments, or other economic inducements) are kept secret, so that it appears that the wholesaler actually purchased the drug at the higher WAC price.  The effect of this practice is to create the impression that the "wholesale price" of the drug is higher than it really is.

**ANSWER:**    Chiron denies the allegations in paragraph 89 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron specifically denies that it reports "false and

inflated" "WACs or WAC equivalents."  Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 89 of the Complaint as they pertain

to other defendants and therefore denies the same and demands strict proof thereof.

90.    Wholesalers also obtain routine discounts off WAC through volume purchases or other special deals with defendants.  In all cases, the effect is that the wholesaler pays some price below WAC for the defendants' products and the WACs (or WAC equivalents) defendants report are false and inflated.

**ANSWER:**    Chiron denies the allegations in paragraph 90 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron specifically denies that it reports "false and

inflated" "WACs or WAC equivalents."  Chiron further states that these allegations wrongly

assume that discounts, chargebacks and other price concessions are supposed to be included in

prices reported to industry compendia.  Chiron is without knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 90 of the Complaint as they pertain to

other defendants and therefore denies the same and demands strict proof thereof.

91.     Given that AWPs are often set pursuant to a standard formula and based on the reported WAC, even a routine overstatement of WAC by a single digit percentage or some other relatively small number is significant given its ripple effect on the AWP.  The inflated WAC triggers the publication of an inflated AWP on which all Iowa Medicaid reimbursements for that particular drug are based.  Thus, even a mere one percent or two percent routine WAC inflation for a single drug can translate into millions of dollars in unlawful overcharges.

**ANSWER:**   Chiron denies the allegations in paragraph 91 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 91 of the Complaint as they pertain

to other defendants and therefore denies the same and demands strict proof thereof.

92.     Given that FULs are often set based on a reported WAC, the inflated WAC likewise triggers the establishment of an inflated FUL.

**ANSWER:**   Chiron denies the allegations in paragraph 92 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 92 of the Complaint as they pertain

to other defendants and therefore denies the same and demands strict proof thereof.

93.     The second pricing benchmark is Average Wholesale Price or "AWP."  AWP is to be construed according to its plain meaning, *to wit*, it is supposed to represent an average of the actual prices charged by wholesalers and/or paid by providers to wholesalers.  An accurate AWP must also take into account discounts and rebates.

**ANSWER:**   To the extent paragraph 93 of the Complaint states conclusions or

characterizations of law, no response is required.  To the extent a response is deemed required,

Chiron denies the allegations in paragraph 93 of the Complaint as they pertain to Chiron and

demands strict proof thereof.  Chiron further states that for years, and at all times relevant to the

Complaint, it has been common knowledge and universally understood, including by the State

and/or its agents, that AWP does not, and is not intended to, reflect an actual average of

26

wholesale prices or have an expected relationship to such an average. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

94.     Iowa alleges that defendants either report or cause to be reported false and inflated AWPs that are not tethered in any way to defendants' actual prices and that do not account for discounts and rebates.

**ANSWER:**     Chiron denies the allegations in paragraph 94 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it "report[ed] or cause[d] to be reported false and inflated AWPs." Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

95.     Defendants cause these false and inflated AWPs to be reported in various ways. Some defendants report false WACs or WAC equivalents, which defendants know will be marked up by FDB or other publishing compendia pursuant to a standard markup formula, to create a false AWP. That standard mark up formula has typically ranged from 20-25%. Iowa alleges that the standard mark up formula is itself deceptive and misleading. There is no justification whatsoever for a mark up between Wholesale Acquisition Cost and Average Wholesale Price of 20-25%. The mark up does not represent wholesaler profit or retailer cost or any other legitimate market activity.

**ANSWER:**     Chiron denies the allegations in paragraph 95 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it "report[ed] false WACs or WAC equivalents." Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State

and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

96.     Some defendants directly report false AWPs.

**ANSWER:**     Chiron denies the allegation in paragraph 96 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "report[ed] false AWPs." Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

97.     Regardless, in all cases defendants alone control the false and inflated AWPs that are published for their drugs.  They do this by (a) directly supplying a false AWP to publishers, (b) supplying publishers with a false wholesale acquisition cost ("WAC") or WAC equivalent such as direct price or list price to which the publisher applies a standard 1.2 or 1.25 mark-up and/or (c) by supplying both false A WP and false WAC or false WAC equivalent.

**ANSWER:**     Chiron admits that it provided AWPs for certain years to certain industry pricing compendia, or publishers, and that these publishers apply their own markups to the reported AWPs.  Further, Chiron avers that its AWPs were not mathematical averages of prices paid by providers to acquire Chiron's drugs.  Chiron denies the remaining allegations in paragraph 97 of the Complaint as they pertain to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 97 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

98.    The false AWPs appear in publishing compendia that are utilized by Medicaid and other payors. Iowa, like most other states, used the publisher First DataBank ("FDB") as its primary source for AWPs until 2006. Throughout the time period in which Iowa utilized FDB, FDB purported to supply Iowa with accurate AWPs, which FDB said that it received from the drug manufacturers themselves. First DataBank defined Average Wholesale Price for its customers in September 1991: "AWP represents an average price which a wholesaler would charge a pharmacy for a particular product."

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of the Complaint and therefore denies the same and demands strict proof thereof.

99.    At some point in 2001-2002, and while Iowa was utilizing its services, FDB increased the reported AWPs for hundreds of the brand drug NDCs for which Iowa Medicaid reimburses. The AWPs for those particular NDCs had previously been reported by FDB to be 20% higher than WAC. In late 2001 or early 2002, FDB increased the AWPs for this group of NDCs so that the AWPs would be 25% higher than WAC. Critically, this increase did not reflect an actual change in the true prices for the NDCs at issue.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint and therefore denies the same and demands strict proof thereof.

100.    Defendants herein were aware of the 5% AWP increase FDB reported for these NDCs and did nothing to stop or correct it. These Defendants did not inform Iowa Medicaid that the FDB AWPs for their drugs were now even less accurate. These defendants did not inform Iowa Medicaid that it should cease to rely on these new AWPs, which were even more inflated than the previous ones, to calculate its Medicaid reimbursements. In short, these defendants sat idly by in complete disregard of their duties to deal honestly with the government and with the knowledge that their silence would result in millions of dollars in further overcharges and damage to Iowa Medicaid.

**ANSWER:**    Chiron denies the allegations in paragraph 100 of the Complaint as to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 100 of the Complaint as they

pertain to other defendants and therefore denies the same and demands strict proof thereof.

101.    The specific NDCs whose AWPs were improperly increased by this additional
5% are set forth in Exhibit C hereto.

**ANSWER:**    Chiron denies the allegations in paragraph 101 of the Complaint and the

exhibit referenced therein as to Chiron and demands strict proof thereof.   Chiron is without

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 101 of the Complaint and the exhibit referenced therein as they pertain to other

defendants and therefore denies the same and demands strict proof thereof.

102.    The third relevant pricing benchmark is the federal maximum allowable cost
("MAC") or Federal Upper Limit ("FUL").  FULs are established by the Center for Medicare
and Medicaid Services ("CMS") for multi-source and generic drugs that have three suppliers or
more. At all times relevant hereto, FULs have been defined as 150% of the lowest published
price for a therapeutic equivalent (using all national compendia) that can be purchased by
pharmacies in quantities of 100 tablets or capsules or, in the case of liquids, the commonly listed
unit. 42 C.F.R. § 447.332.

**ANSWER:**    To the extent the allegations in paragraph 102 of the Complaint purport to

recite and/or interpret laws or regulations, those laws or regulations speak for themselves, and

any characterization thereof is denied.   The allegations in paragraph 102 require no response

from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.

To the extent a response is deemed required, Chiron is otherwise without knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 102 of the

Complaint and therefore denies the same and demands strict proof thereof.

103.    FUL is usually based on the reported WAC.

**ANSWER:**    The allegations in paragraph 103 require no response from Chiron on the

grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a

response is deemed required, Chiron is otherwise without knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 103 of the Complaint and therefore denies the same and demands strict proof thereof.

104.    Iowa alleges that defendants' failure to submit accurate pricing data to the publishing compendia can cause false and inflated FULs to issue.  It is clear that, in many instances, had defendants submitted accurate prices to pricing compendia, the FULs set by CMS would have been lower and the Iowa Medicaid Program would have paid less.  This is because the FUL is set based on the lowest published price, whatever that price may be.  Thus, when defendants intentionally report false and inflated WACs, AWPs and other wholesale prices to the publishing compendia, they cause the FUL to be set at a level higher than it would have been had defendants reported accurate prices in the first place.

**ANSWER:**    The allegations in paragraph 104 require no response from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of the Complaint and therefore denies the same and demands strict proof thereof.

105.    Importantly, the FUL is a per-unit price that applies to all NDCs for a particular multi-source drug.  In other words, if a FUL is in place for a particular multi-source drug, all NDCs for that drug will be reimbursed at that FUL.

**ANSWER:**    The allegations in paragraph 105 require no response from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 of the Complaint and therefore denies the same and demands strict proof thereof.

106.    As a result, each of the generic or multi-source drug manufacturer defendants are vigilantly aware of the reimbursement prices reported by their competitors, the actual price of their generic competitors' products, their own sale prices to Medicaid providers, and the FUL.  Generic drug manufacturer defendants manipulate their own reported reimbursement prices and the secret deep discounts they offer in order to gain or maintain a competitive advantage in the market for their generic products.  The larger the secret discount off the reimbursement price or the FUL, the greater the spread the generic manufacturer can create.

**ANSWER:**   The allegations in paragraph 106 require no response from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106 of the Complaint and therefore denies the same and demands strict proof thereof.

107.   The natural and expected result is that multi-source drugs have some of the highest spreads of any drugs, sometimes resulting in an AWP exceeding actual costs by over 50,000% or greater.

**ANSWER:**   The allegations in paragraph 107 require no response from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 of the Complaint and therefore denies the same and demands strict proof thereof.

108.   Exhibit B to this complaint details many examples where a specific defendant's failure to report an accurate price for its drug resulted in a false and inflated FUL being set.  In each example of "FUL fraud" set forth in Exhibit B, Iowa alleges that defendant's true price (or the "actual acquisition cost" "ACC") for the NDC at issue *was more than 50% lower* than the established FUL. Had the defendant reported its true price for that NDC, the operative FUL would have been based on that defendant's true price and would have been lower than it was.  In such case, and pursuant to Iowa's "lesser of" EAC formula, Iowa's reimbursement may have been less.  Thus, in addition to its allegations of AWP fraud, Iowa alleges FUL fraud for every NDC listed in Exhibit B where the defendant's AAC is more than 50% below the established FUL.

**ANSWER:**   The allegations in paragraph 108 require no response from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Complaint and therefore denies the same and demands strict proof thereof.

109.    The fourth relevant pricing benchmark is the Iowa State Maximum Allowable Cost or "SMAC" which has existed only since 2001 and, even then, only for certain drugs. Iowa sets SMACs for certain multi-source generic and other drugs in an effort to approximate providers' EAC for those drugs. In establishing a SMAC, Iowa, *inter alia,* reviews pharmacist invoices for each drug. These invoices often reflect or are based on defendants' published prices. Thus, to the extent an Iowa SMAC is based on an invoice that reflects or is based on a false published price, the Iowa SMAC is inflated as well.

**ANSWER:**    The allegations in paragraph 109 of the Complain require no response from Chiron on the grounds that the Iowa SMAC claims have been dismissed by the Court. To the extent a response is deemed required, Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of the Complaint and therefore denies the same and demands strict proof thereof.

110.    Federal law requires that any manufacturer of a drug that wishes to have its products paid for by Medicaid must enter into a rebate agreement with the Secretary of Health and Human Services ("HHS"), on behalf of the States pursuant to 42 U.S.C. § 1396r-8 and must pay rebates to the States on a quarterly basis. Congress passed the rebate provision expressly to help reduce state Medicaid drug expenditures.

**ANSWER:**    To the extent paragraph 110 of the Complaint states conclusions or characterizations of law, no response is required. Chiron further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to Chiron. To the extent a response is deemed required, Chiron admits that 42 U.S.C. § 1396r-8 contains certain provisions regarding the circumstances pursuant to which a manufacturer of a drug must enter into a Medicaid rebate agreement with the Secretary of Health and Human Services. Chiron further states that the rebate provision speaks for itself, and any characterizations thereof are denied. Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8 for a full and complete reading of its provisions. Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of the Complaint and therefore denies the same and demands strict proof thereof.

111.    To that end, each defendant herein and the Secretary of HHS "on behalf of the Department of Health and all States" has executed a Rebate Agreement that is in all material respects identical to the Model Rebate Agreement attached hereto as Exhibit E.

**ANSWER:**    To the extent paragraph 111 of the Complaint states conclusions or characterizations of law, no response is required.  Chiron further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to Chiron.  To the extent a response is deemed required, Chiron admits that Plaintiff accurately quotes a select portion of the first paragraph before Section I of the Model Rebate Agreement, which is attached to Plaintiff's Complaint at Exhibit E, and states that the Model Rebate Agreement speaks for itself, and any characterizations thereof are denied, and that it has executed a Rebate Agreement similar to the Model Rebate Agreement attached at Exhibit E.  Chiron further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111 of the Complaint and therefore denies the same and demands strict proof thereof.

112.    State Medicaid Programs, including Iowa's, are express third-party beneficiaries of the Medicaid Rebate Agreements.

**ANSWER:**    To the extent paragraph 112 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112 of the Complaint and therefore denies the same and demands strict proof thereof.

113.    The Federal Medicaid Rebate for brand-name drugs (defined as "single source drugs" or "innovator multiple source drugs") is based on either (a) the difference between what is known as the AMP or "Average Manufacturers Price" and "Best Price", or (b) 15% of the AMP, whichever is greater. 42 U.S.C. § 1396r-8(c)(1) -(2).

**ANSWER:**    To the extent the allegations in paragraph 113 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8(c)(1)-(2) for a full and complete reading of their provisions.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 of the Complaint and therefore denies the same and demands strict proof thereof, except Chiron admits that it pays Medicaid rebates as required by law.

114.    The Federal Medicaid Rebate for non-innovator multi-source drugs (generic drugs) is 11% of AMP. 42 U.S.C. § 1396r-8(c)(3).

**ANSWER:**    To the extent the allegations in paragraph 114 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8(c)(3) for a full and complete reading of their provisions.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of the Complaint and therefore denies the same and demands strict proof thereof, except Chiron admits that it pays Medicaid rebates as required by law.

115.    Iowa's Federal rebate claims concern only those rebates paid by brand manufacturers.  Specifically, Iowa alleges that brand manufacturers routinely *overstate* the Best Price for certain of their products and, as a result, underpay the rebates owed.

**ANSWER:**    Chiron states that no response is required to paragraph 115 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See* Memorandum and Order (Saris, J.) (Aug. 19, 2008) at 12, ¶ 2 (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations set forth in

paragraph 115 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

116.    "Best Price" is defined by statute as "the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, non-profit entity or governmental entity in the United States," with certain enumerated exceptions. 42 U.S.C. § 1396r-8(c)(l)(C)(i).

**ANSWER:**    To the extent paragraph 116 of the Complaint states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 116 of the Complaint because this Court has already dismissed Best Price claims against certain defendants.  *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron admits that Plaintiff accurately quotes a select portion of 42 U.S.C. § 1396r-8(c)(l)(C)(i). Chiron further states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116 and therefore denies the same and demands strict proof thereof.

117.    The Model Rebate Agreement defines Best Price as "the lowest price at which the manufacturer sells . . . to any purchaser in the United Sates in any pricing structure." Model Rebate Agreement, Exhibit at I(d).

**ANSWER:**    To the extent paragraph 117 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that Plaintiff accurately quotes a select portion of paragraph (d) under Section I of the Model Rebate Agreement, which is attached to Plaintiff's Complaint at Exhibit E, and states that the Model Rebate Agreement speaks for itself, and any characterizations thereof are denied.

Chiron further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 117 of the Complaint and therefore denies the same and demands strict proof thereof.

118.    "AMP" is defined as the average price paid to the manufacturer for the drug in the United States by wholesalers for drugs distributed to the retail pharmacy class of trade, after deducting customary prompt pay discounts. 42 U.S.C. § 1396r-8(k)(I).

**ANSWER:**    To the extent paragraph 118 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that 42 U.S.C. § 1396r-8(k)(1) contains certain provisions regarding AMP, and respectfully refers the Court to 42 U.S.C. § 1396r-8(k)(1) for a full and complete reading of its provisions.  Chiron denies the remaining allegations in paragraph 118 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof. To the extent the allegations in paragraph 118 refer to additional statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

119.    To determine the amount of the rebate due, the states are required to report to the manufacturers, as well as to HHS, "information on the total number of units of each dosage strength and package size of each covered outpatient drug . . . for which payment was made under the plan during the period." 42 U.S.C. § 1396r-8(b)(2).

**ANSWER:**    To the extent paragraph 119 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that 42 U.S.C. §§ 1396r-8 contains certain provisions regarding the reporting of information by the states to manufacturers and to the Secretary of Health and Human Services for drugs for which payment has been made, and respectfully refers the Court to 42 U.S.C. § 1396r-8(b)(2) for a full and complete reading of its provisions.  Chiron denies the remaining allegations

in paragraph 119 of the Complaint as to Chiron and demands strict proof thereof. Chiron is

otherwise without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 119 of the Complaint as they pertain to other defendants and therefore

denies the same and demands strict proof thereof. To the extent the allegations in paragraph 119

refer to additional statutes or regulations, those sources speak for themselves, and any

characterizations thereof are denied.

120.     HHS relies entirely on the manufacturers for Best Price and AMP data. Brand
drug manufacturers are required to report their Best Prices and AMPs to the Secretary of HHS.
The Secretary is required to keep this information confidential. 42 U.S.C. §§ 1396r-8(b)(3)(A),
(D).

**ANSWER:**     To the extent paragraph 120 of the Complaint states conclusions or

characterizations of law, no response is required. To the extent a response is deemed required,

Chiron admits that 42 U.S.C. §§ 1396r-8 contains certain provisions regarding the reporting of

pricing information to the Secretary of Health and Human Services and the confidentiality of such

pricing information, and respectfully refers the Court to 42 U.S.C. §§ 1396r-8(b)(3)(A), (D) for a

full and complete reading of their provisions. Chiron denies the remaining allegations in

paragraph 120 of the Complaint as to Chiron and demands strict proof thereof. Chiron is

otherwise without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 120 of the Complaint as they pertain to other defendants and therefore

denies the same and demands strict proof thereof. To the extent the allegations in paragraph 120

refer to additional statutes or regulations, those sources speak for themselves, and any

characterizations thereof are denied.

121.     At all times, the manufacturers have ultimate responsibility to correctly calculate
the rebate. As stated in the federal Model Rebate Agreement:

> A State may, at its option, compute the total rebate anticipated,
> based on its own records, *but it shall remain the responsibility of*

> *the labeler* to correctly calculate the rebate amount based on its
> correct determination of AMP and, where applicable, Best Price.

Model Rebate Agreement, annexed hereto and incorporated herein, at Exhibit E hereto, I(n).

**ANSWER:**   To the extent paragraph 121 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that Plaintiff accurately quotes a select portion of paragraph (n) under Section I of the Model Rebate Agreement, which is attached to Plaintiff's Complaint at Exhibit E, and states that the Model Rebate Agreement speaks for itself, and any characterizations thereof are denied. Chiron further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 121 of the Complaint and therefore denies the same and demands strict proof thereof.

122.    Based on the information received from the states and the manufacturers, the Secretary reports to each state a Unit Rebate Amount ("URA"), which is "the amount calculated by the Health Care Financing Administration (now CMS) to which the Medicaid utilization information may be applied by states in invoicing the Manufacturer for the rebate payment due." The rebate then is paid to the state Medicaid program by the defendant drug manufacturer.

**ANSWER:**   To the extent paragraph 122 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that it pays rebates to the State of Iowa and that these rebates lower the State of Iowa's cost of prescription drugs for Medicaid patients.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 122 of the Complaint and therefore denies the same and demands strict proof thereof.

123.    States thus are provided with URAs, not AMPs or Best Prices.  Like HHS, States are also required to keep confidential the rebate-related information that they receive. 42 U.S.C. § 1396r-8(b)(3)(D).

**ANSWER:**   To the extent paragraph 123 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required,

Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 of the Complaint and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraphs 123 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8(b)(3)(D) for a full and complete reading of its provisions.

124.    States have a direct and compelling interest in accurate Best Price reporting and the rebate program, which helps to reduce the costs the states themselves incurred for drugs purchased by Medicaid patients.  It is within the state's statutory authority to investigate and prosecute Medicaid Best Price violations as alleged in this case.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 of the Complaint and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraphs 124 of the Complaint refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

125.    Under the Medicaid rebate provision, any manufacturer that knowingly provides false information "is subject to a civil money penalty in an amount not to exceed $100,000 for each item of false information."  "[S]uch civil money penalties are in addition to other penalties as may be prescribed by law." 42 U.S.C. § 1396r-8(b)(3)(C)(ii).

**ANSWER:**    To the extent paragraph 125 of the Complaint states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron admits that 42 U.S.C. § 1396r-8(b)(3)(C)(ii) contains certain provisions regarding penalties for the knowing provision of false information, and respectfully refers the Court to 42 U.S.C. § 1396r-8(b)(3)(C)(ii) for a full and complete reading of its provisions.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 125 of the Complaint and therefore denies the same and demands strict proof thereof.

126.    At all relevant times hereto, certain of the brand manufacturers named herein knowingly calculated and reported its Best Prices excluding factors that it was statutorily and/or contractually required to include, resulting in the payment of rebates that were less than required.

**ANSWER**:    To the extent paragraph 126 of the Complaint states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 126 of the Complaint because this Court has already dismissed Best Price claims against certain defendants.  *See* Memorandum and Order (Saris, J.) (Aug. 19, 2008) at 12, ¶ 2 (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 126 of the Complaint as to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

127.    The same routine discounts, rebates, free samples and other inducements offered to providers but excluded in setting AWP are also excluded from defendants' calculations of Best Price.  These include chargebacks, prompt pay discounts, free samples distributed by sales representatives, and other credits, up front and back end rebates off invoice transactions, and hidden discounts and financial incentives.

**ANSWER**:    To the extent paragraph 127 of the Complaint states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 127 of the Complaint because this Court has already dismissed Best Price claims against certain defendants.  *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is

clear."). To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 127 of the Complaint as to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

128.    In addition, defendants routinely bundle deeply discounted or free drugs with other drugs. The Model Rebate Agreement executed by every defendant herein expressly provides that for bundled sales the discount must be allocated proportionately to the dollar value of the units of each drug sold under the bundled arrangement. Defendants do not properly allocate bundled discounts when calculating Best Price.

**ANSWER:**    To the extent paragraph 128 of the Complaint states conclusions or characterizations of law, no response is required. Chiron also states that no response is required to paragraph 127 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear."). To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 128 of the Complaint as to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

129.    Certain defendants also engage in re-labeling schemes to avoid reporting Best Price. Federal law expressly prohibits this practice. 42 U.S.C. § 1396r-8(b)(3)(C)(ii). For example, in 2003, two defendants herein, Bayer and GSK, agreed to pay $344 million to resolve allegations that they engaged in health care fraud against state programs by failing to report their Best Price for certain drugs. In their wrongful scheme, known as "lick and stick," they sold drugs to Kaiser Permanente Medical Care Program (the nation's largest HMO) at deep discounts, but avoided including these discounts in their Best Price calculations by re-labeling the products with new NDC codes before sale.

**ANSWER:**   To the extent paragraph 129 of the Complaint states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 129 of the Complaint because this Court has already dismissed Best Price claims against certain defendants.  *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 129 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraphs 129 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8(b)(3)(C)(ii) for a full and complete reading of its provisions.

130.   As detailed below, a number of the brand manufacturer defendants herein, including Merck, Tap and Eli Lilly, recently were investigated by the Senate Finance Committee for abusing the Nominal Price Exception ("NPE") to Best Price reporting.  That investigation concluded that 12 of the 19 companies reviewed were misusing the NPE.  A January 31, 2007 letter from the Senate Finance Committee to CMS summarizing the results of this investigation is attached hereto as Exhibit F.  All 19 companies investigated are defendants herein. *Id.*

**ANSWER:**   Chiron states that it was not one of the nineteen (19) drug companies referenced in the allegations and averments in paragraph 130, thus no response is required.  Chiron also states that no response is required to paragraph 130 of the Complaint because this Court has already dismissed Best Price claims against certain defendants.  *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron is otherwise

43

without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130 and therefore denies the same and demands strict proof thereof.

131.    The NPE was created by Congress as a public policy exception to Best Price reporting and specifically to encourage drug manufacturers to continue to sell drugs at nominal prices to entities serving the public good, without the manufacturer having to pay increased rebates because of those sales.  The exception allows drug companies to exclude from their Best Price calculations drugs with prices less than 10% of AMP, *unless* such prices are offered contingent on a purchase requirement or to commercial entities. 42 U.S.C. § 1396r-8(c)(l)(C)(ii)(III).  If the nominally priced sales are offered contingent on a purchase requirement or to commercial entities, those sales must be included in the Best Price calculation.  The lower the Best Price, the higher the potential Medicaid rebate.

**ANSWER:**    To the extent paragraph 131 of the Complaint states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 130 of the Complaint because this Court has already dismissed Best Price claims against certain defendants.  *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 131 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8(c)(1)(C)(ii)(III) for a full and complete reading of its provisions.

132.    Iowa alleges that certain defendants herein routinely abuse the NPE.  Defendants, including Merck for its drug Pepcid and TAP for its drug Prevacid (to select just two examples), make unlawful use of the so-called "nominal price" exception by omitting certain deeply discounted commercial sales and other sales from their Best Price calculation.

**ANSWER:**    Chiron states that no response is required to paragraph 132 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various

Best Price claims have been adequately pled so that the record is clear.").   To the extent

Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required,

Chiron denies the allegations in paragraph 132 of the Complaint as to Chiron and demands strict

proof thereof.   Chiron is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 132 as they pertain to other defendants and therefore denies

the same and demands strict proof thereof.

## ANSWER TO ALLEGATIONS THAT
## DEFENDANTS CONCEAL THEIR TRUE PRICES

133.   Defendants have been able to succeed in their drug pricing scheme for more than
a decade by exacerbating the complexities of the incredibly complex drug market, and by
purposely concealing their pricing scheme from Iowa and other payors, as set forth below.

**ANSWER:**   Chiron denies the allegations in paragraph 133 of the Complaint and

demands strict proof thereof.   Chiron specifically denies that it has participated in any "pricing

scheme . . . by exacerbating the complexities of the  . . . drug market."   Chiron is otherwise

without knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 133 of the Complaint as they pertain to other defendants and therefore denies the same

and demands strict proof thereof.

134.   Indeed, States rely on published AWPs and WACs because defendants
purposefully conceal their true prices.   As George M. Reeb, Assistant Inspector General for CMS
explained to the House Energy and Commerce Committee during its December 7, 2004 hearing,
"one reason States continue to rely on AWP . . . is that states lack access to alternate, more
accurate price information." *Medicaid Prescription Drug Reimbursements:   Why The
Government Pays Too Much:  Hearing before the Subcomm. on Oversight and Investigations of
the Comm. on Energy and Commerce House of Representatives,* 108th Cong., (2004).

**ANSWER:**   Chiron denies the allegations in paragraph 134 of the Complaint as to

Chiron and demands strict proof thereof.   Chiron specifically denies that it "purposefully

conceal[s its] true prices."   Chiron is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 134 of the Complaint as they pertain to other

defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 134 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.  Chiron respectfully refers the Court to the House Hearing Transcript to which Plaintiff referred in paragraph 134 of the Complaint for a full and complete reading of its contents.

135.   When the Medicaid rebate provision was enacted, the manufacturers made sure that pricing information reported to CMS would not be disclosed to the states.

**ANSWER:**   Chiron denies the allegations in paragraph 135 of the Complaint as they pertain to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

136.   Defendants consider their drug pricing information proprietary and restrict access to it.  Defendants require providers to agree that the prices contained in their sales agreements with defendants are to be kept absolutely secret, terming them trade secrets to preclude providers from telling others the actual price they paid.   These sales agreements universally offer defendants' products at prices that are deeply discounted from the WACs, AWPs and other wholesale prices that defendants cause to appear in any publishing compendia.

**ANSWER:**   Chiron admits that certain of its contracts are subject to confidentiality agreements and that Chiron does offer discounts to certain of its customers.  Chiron denies the remaining allegations in paragraph 136 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 136 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

137.   Defendants further obscure the true prices for their drugs with their policy of treating different classes of trade differently.  Thus, for the same drug, chain pharmacies are given one price, independent pharmacies another, group purchasing organizations another, hospitals another, clinics another, and doctors yet another.

**ANSWER:**   Chiron denies the allegations in paragraph 137 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "obscure[s] the true prices for [its] drugs with [its] policy of treating different classes of trade differently."  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

138.    Some defendants purposefully maintain two sets of pricing records:  one with the inflated prices and another with the actual prices.  Such industry practice was discussed by Patrick J. O'Connell, Chief of the Civil Medicaid Fraud Section of the Office of the Texas Attorney General, during his testimony before the Senate Finance Committee:

> We also found that some manufacturers actually kept two sets of computer records with prices:  one, with inflated prices that are reported to the price reporting services like First Data Bank or, in Texas' case, directly to the Medicaid program; and another with real contract prices that are used in every day business transactions with the manufacturers' customers.

*Medicaid Waste, Fraud and Abuse:  Threatening the Health Care Safety Net:  Hearings before the Senate Finance Comm.,* 109th Cong. (2005).

**ANSWER:**   Chiron denies the allegations in paragraph 138 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "maintain[s] two sets of pricing records:  one with [] inflated prices and another with [] actual prices."  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraphs 138 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.  Chiron respectfully refers the Court to the Senate Hearing Transcript to which Plaintiff referred in paragraph 138 of the Complaint for a full and complete reading of its contents.

139.    The practice of keeping two sets of books was verified by Schering Plough whistleblower Beatrice Manning at the same hearing.  Ms Manning testified that

> "I want to stress that this scheme did not result from public corruption or inadequate Medicaid auditing.  In essence, two sets of books were kept."

*Id.*

**ANSWER:**    Chiron denies the allegations in paragraph 139 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraphs 139 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.  Chiron respectfully refers the Court to the Senate Hearing Transcript to which Plaintiff referred in paragraph 139 of the Complaint for a full and complete reading of its contents.

140.    In addition, defendants hide their real drug prices by secretly providing free drugs and phony grants to providers as a further means of discounting the overall price of their drugs.

**ANSWER:**    Chiron denies the allegations in paragraph 140 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "hide[s its] real drug prices by secretly providing free drugs and phony grants."  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 140 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

141.    In addition to concealing their true prices, defendants have deliberately concealed why they cause false and inflated AWPs to be published.  Defendants have concealed that they do this to create spreads between actual cost and reimbursement amounts that permit defendants to influence market share.

**ANSWER:**   Chiron denies the allegations in paragraph 141 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it conceals its true prices "to create spreads between actual cost and reimbursement amounts . . . to influence market share."   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

142.    As recently as in 2003, for example, the CEO of defendant GlaxoSmithKline ("GSK") denied any benefit from spread manipulation.  In a conversation with shareholders, GSK CEO J.P. Garnier stated that GSK "[has] never benefited from the spread becoming bigger or smaller."  Garnier stated that the reimbursement system "has a big loophole and can create confusion.  We don't like it one bit."  GSK and its constituent predecessors Glaxo Wellcome and SmithKline Beecham long competed on spread and benefited from the increased market share permitted by the incentives the spread created.

**ANSWER:**   Chiron denies the allegations in paragraph 142 of the Complaint as to Chiron and demands strict proof thereof.   Chiron further denies the characterization of "spread" in paragraph 142.   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 142 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

143.    While the government has been investigating some of defendants' practices since the late 1990s, it has only recently become clear that the OIG, Congressional and other estimates of the extent of defendants' AWP inflation were grossly understated – both as to generic and brand drug spreads – as the data set forth in the Exhibits [sic] B hereto demonstrate.  Thus, it has only recently become clear that States' efforts to estimate EAC through a reimbursement formula that discounted 10, 12 or 15 percent off AWP were ineffective given the extent of defendants' fraud.

**ANSWER:**   Chiron denies the allegations in paragraph 143 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it has engaged in "AWP inflation" or "fraud."   Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State

and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 143 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

144.   No government report has ever addressed the falsity of WAC.  Indeed, the fact that State Medicaid reimbursement formulas have historically been either [WAC + a certain %] or [AWP – a certain %] reveals the traditional belief in the reliability of WAC.  Under either a "WAC plus" or "AWP minus" formula, the States were endeavoring to approximate EAC. Defendants' unlawful and undisclosed manipulation of the price reporting system as a whole has rendered States' efforts in this regard futile.  And, as stated above, the publication of a false WAC leads to the publication of a false AWP and a false FUL.

**ANSWER:**   Chiron denies the allegations in paragraph 144 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it has engaged in any "unlawful and undisclosed manipulation of the price reporting system" or caused the "publication of a false WAC," AWP, or FUL.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

145.   No government report has ever addressed how defendants' false WAC pricing impacts the FUL.

**ANSWER:**   Chiron without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 145 of the Complaint and therefore denies the same and demands strict proof thereof.

## ANSWER TO ALLEGATIONS CONCERNING
## DEFENDANTS' MOTIVATION FOR FALSE PRICE REPORTING

146.   Defendants' motivation for causing false prices to be published is irrelevant in large part, if not entirely, given defendants' obligation to report truthful information to the government.  Nevertheless, Iowa herein explains the "why" behind defendants' scheme because such context provides insight into the complexity of the prescription drug marketplace and

underscores the difficulty any Medicaid payor encounters, given defendants' falsity, as it endeavors to calculate and reimburse at a true EAC.

**ANSWER:**   Chiron denies the allegations in paragraph 146 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it has "caus[ed] false prices to be published."   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 146 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

147.   Defendants submit false and inflated wholesale price information in order to create a spread between acquisition cost and reimbursement.   They use this spread as an unlawful inducement to increase their market share and profits.   Defendants' actual prices for drugs sold to providers, directly or through wholesalers, were much lower than the prices (AWP, direct price ("DP"), FUL, etc.) reported by defendants and used by Iowa Medicaid to calculate reimbursement.   In so doing, defendants caused Iowa Medicaid to reimburse providers' claims for the covered drugs at inflated amounts.   At the same time, providers were able to purchase defendants' drugs at materially lower prices than prices defendants reported, thus increasing the spread.

**ANSWER:**   Chiron denies the allegations in paragraph 147 of the Complaint as to Chiron and demands strict proof thereof.   Chiron specifically denies that it "submit[s] false and inflated wholesale price information in order to create a spread."   Chiron further denies the characterization of "spread" in paragraph 147.   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

148.   Defendants' unlawful scheme has completely corrupted the market for prescription drugs.   Instead of competing on prices and efficacy alone, defendants have deliberately sought to create a powerful financial incentive for providers to prescribe drugs based primarily on the spread between the true price of a drug and its published AWP or WAC, or for those with formulary power to give preferential treatment to defendants' drugs based on such spread.   Creating incentives for providers to prescribe drugs based on spread or for those with formulary power to give preferential treatment for drugs based on spread is inconsistent with Iowa statutes and public policy.

**ANSWER:**   Chiron denies the allegations in paragraph 148 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it has "corrupted the market for prescription drugs" or has "deliberately sought to create a powerful financial incentive for providers to prescribe drugs based primarily on the spread."  Chiron further denies the characterization of "spread" in paragraph 148.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

149.   Defendants' own marketing and sales materials show that defendants market their products based on the spread between reimbursement (based on AWP, WAC or a WAC equivalent) and actual acquisition cost.  Defendants' own marketing documents make clear that they create spread and profitability based on reimbursement whether their products are single or multi-source.  Defendants create spread for their drugs even when they are competing with over-the-counter alternatives.  In short, the motivation to improperly inflate AWP exists whether a drug is brand name, single source, multi-source or generic.

**ANSWER:**   Chiron denies the allegations in paragraph 149 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "market[s its] products based on the spread between reimbursement (based on AWP, WAC, or a WAC equivalent) and actual acquisition cost."  Chiron further denies the characterization of "spread" in paragraph 149.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 149 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

150.   With generic drugs, direct competition among bioequivalents provides an obvious motive to increase the spread.  Defendants compete on reimbursement and profit rather than cost.

**ANSWER:**   Chiron denies the allegations in paragraph 150 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "compete[s] on reimbursement and profit rather than cost."  Chiron further denies the characterization of "spread" in paragraph 150.  Chiron is otherwise without knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 150 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

151.    Brand name drugs protected by patent also face competition from other brand name drugs aimed at similar illnesses or in the same therapeutic class.  For example, Altace, Aceon and Mavik (all ACE inhibitors) treat hypertension and all compete with each other for placement on drug formularies and preferred drug lists.  Merck's Pepcid, GSK's Zantac, TAP's Prevacid and Wyeth's Protonix (all at-issue drugs) likewise compete with each other for placement on formularies.  Such placement ensures access and utilization.  Incentives, discounts, rebates and other forms of consideration – all based on the false and inflated AWPs – are offered to those who create and maintain such formularies and preferred drug lists.

**ANSWER:**    Chiron denies the allegations in paragraph 151 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

152.    As the following congressional testimony bears out, defendants claim they have no choice but to inflate their products AWPs and create spread. Mark Jones President of the Federal Qui Tam Whistleblower, Ven-a-Care of the Florida Keys, Inc., summarized:

> Over the time period we've been investigating this, we've heard drug manufacturers first claim that they didn't know where AWP came front, it wasn't their number, and then that evolved into "Yes, we set the AWPs" and then we heard drug manufacturers say, "We don't know anything about marketing the spread.  We're not interested in marketing the spread.  We're only interested in the price we charge our customer." But we finally evolved into "Yes, there is a spread out there and yes we do market it."   And now we're at the point with this industry where they're saying, "Look its [sic] so messed up, everybody wants to buy drugs based solely on the spread value, and we can't stop it even it we want to."

*Medicaid Prescription Drug Reimbursements:   Why The Government Pays Too Much: Hearings before the Subcomm. on Oversight and Investigations of the Comm. on Energy and Commerce House of Representatives,* 108th Cong., 2nd Sess., (2004).

**ANSWER:**    Chiron denies the allegations in paragraph 152 of the Complaint as to Chiron and demands strict proof thereof.  Chiron further denies the characterization of "spread" in paragraph 152.  Chiron is without knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 152 as they pertain to other defendants and therefore

denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 152

refer to the transcript of a congressional hearing, the transcript speaks for itself, and any

characterizations thereof are denied.  Chiron respectfully refers the Court to the House Hearing

Transcript to which Plaintiff referred in paragraph 152 of the Complaint for a full and complete

reading of its contents.

153.    All defendants have hidden their motives for reporting an inflated AWP from the
public.  One official, a high ranking employee of Dey, even went so far as to lie under oath about
Dey's creation and marketing of its spread.  Only with the disclosure of materials secured by
litigants in recent discovery has it become apparent that one reason defendants were intentionally
manipulating the nation's drug reimbursement system was to compete for market share on the
basis of a phony price spread, instead of the true selling price of their drugs or the medicinal
efficacy of these drugs to their users.

**ANSWER:**    Chiron denies the allegations in paragraph 153 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron specifically denies that it has "intentionally

manipulat[ed] the nation's drug reimbursement system . . . with false and inflated prices."

Chiron is without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 153 as they pertain to other defendants and therefore denies the same

and demands strict proof thereof.

154.    By secretly polluting the entire reimbursement system with false and inflated
prices, defendants improperly and unlawfully have caused the Medicaid Program to subsidize
these improper incentives for the purchase of defendants' products.

**ANSWER:**    Chiron denies the allegations in paragraph 154 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron specifically denies that it has "intentionally

manipulat[ed] the nation's drug reimbursement system . . . with false and inflated prices."

Chiron is without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 154 as they pertain to other defendants and therefore denies the same

and demands strict proof thereof.

### ANSWER TO ALLEGATIONS THAT THE FEDERAL GOVERNMENT HAS SPECIFICALLY DIRECTED DEFENDANTS TO REPORT ACCURATE PRICING DATA

155.    The federal government has emphasized the importance of accurate reported prices.    In its April 2003 report, "Compliance Program Guidance for Pharmaceutical Manufacturers," the HHS OIG reaffirmed that the "government sets reimbursement with the expectation that the data provided are complete and accurate."   The OIG made clear that the AWP, and other reported prices must be meaningful figures that are not artificially inflated:

> Where appropriate, manufacturers' reported prices should accurately take into account price reductions, cash discounts, free goods contingent on a purchase agreement, rebates, up-front payments, coupons, goods in kind, free or reduced-price services, grants, or other price concessions or similar benefits offered to some or all purchasers.  Any discount, price concession, or similar benefit offered on purchases of multiple products should be fairly apportioned among the products (and could potentially raise anti-kickback issues).  Underlying assumptions used in connection with reported prices should be reasoned, consistent, and appropriately documented, and pharmaceutical manufacturers should retain all relevant records reflecting reported prices and efforts to comply with federal health care program requirements.

68 Fed. Reg. 23731 (2003).

**ANSWER:**    Chiron admits that Off. of Inspector Gen., Dep't of Health and Human

Services, *Compliance Program Guidance for Pharmaceutical Manufacturers*, at 12 (2003)

contains a section that discusses "manufacturers' reported prices," and states that to the extent

the allegations in paragraphs 155 refer to HHS OIG reports, the reports speak for themselves,

and any characterizations thereof are denied.  Chiron further states that for years, and at all times

relevant to the Complaint, it has been common knowledge and universally understood, including

by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average

of wholesale prices.  Chiron is otherwise without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 155 and therefore denies the same and demands strict proof thereof.  Chiron respectfully refers the Court to Off. of Inspector Gen., Dep't of Health and Human Services, *Compliance Program Guidance for Pharmaceutical Manufacturers* (2003) for a full and complete reading of its contents.

156.    Defendants routinely and consistently violate this obligation.  They sell the vast majority of their drugs at prices that bear little or no relation to the reimbursement prices they report to the publishing compendia.

**ANSWER:**    Chiron denies the allegations in paragraph 156 of the Complaint as to Chiron and demands strict proof thereof.  Chiron states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 156 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

157.    The OIG has also expressly rejected the notion that purposeful AWP manipulation was a lawful practice:

> The "spread" is the difference between the amount a customer pays for a product and the amount the customer receives upon resale of the product to the patient or other payer.  In many situations under the federal programs, pharmaceutical manufacturers control not only the amount at which they sell a product to their customers, but also the amount those customers who purchase the product for their own accounts and thereafter bill the federal health care programs will be reimbursed.  To the extent that a manufacturer controls the "spread," it controls its customer's profit.

> Average Wholesale Price (AWP) is the benchmark often used to set reimbursement for prescription drugs under the Medicare Part B program.  For covered drugs and biologicals, Medicare Part B generally reimburses at "95 percent of average wholesale price." 42 U.S.C. 1395u(o).  Similarly many state Medicaid programs and other payers base reimbursement for drugs and biologicals on AWP.   Generally,  AWP  or  pricing  information  used  by

commercial price reporting services to determine AWP is reported by pharmaceutical manufacturers.

If a pharmaceutical manufacturer purposefully manipulates the AWP to increase its customers' profits by increasing the amount the federal health care programs reimburse its customers, the anti-kickback statute is implicated.  Unlike bona fide discounts, which transfer remuneration from a seller to a buyer, manipulation of the AWP transfers remuneration to a seller's immediate customer from a subsequent purchaser (the federal or state government).  Under the anti-kickback statute, offering remuneration to a purchaser or referral source is improper if one purpose is to induce the purchase or referral of program business.  **In other words, it is illegal for a manufacturer knowingly to establish or inappropriately maintain a particular AWP if one purpose is to manipulate the "spread" to induce customers to purchase its product.**

In the light of this risk, we recommend that manufacturers review their AWP reporting practices and methodology to confirm that marketing considerations do not influence the process. Furthermore, manufacturers should review their marketing practices.  **The conjunction of manipulation of the AWP to induce customers to purchase a product with active marketing of the spread is strong evidence of the unlawful intent necessary to trigger the anti-kickback statute.**  Active marketing of the spread includes, for example, sales representatives promoting the spread as a reason to purchase the product or guaranteeing a certain profit or spread in exchange for the purchase of a product.

*Id.*. [sic] [emphasis added].

**ANSWER:**    Chiron denies the allegations in paragraph 157 of the Complaint as to Chiron and demands strict proof thereof, except Chiron admits that the Off. of Inspector Gen., Dep't of Health and Human Services, *Compliance Program Guidance for Pharmaceutical Manufacturers*, at 26-27 (2003) contains a section entitled "Average Wholesale Price" that discusses AWP, and states that Plaintiff accurately quotes a select portion from pages 26-27 of the Off. of Inspector Gen., Dep't of Health and Human Services, *Compliance Program Guidance for Pharmaceutical Manufacturers* (2003).  Chiron further states that for years, and at all times

relevant to the Complaint, it has been common knowledge and universally understood, including by the Iowa and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 157 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof. Chiron respectfully refers the Court to Off. of Inspector Gen., Dep't of Health and Human Services, *Compliance Program Guidance for Pharmaceutical Manufacturers* (2003) for a full and complete reading of its contents.

158.    Defendants report wholesale price information that they know does not comply with the HHS OIG's guidelines, in that they do not account for routine discounts off of WAC, bundled discounts, chargebacks, rebates, free samples, off invoice pricing and other discounts and inducements they routinely offer to wholesalers, chain pharmacies, group purchasing organizations, pharmacists and other distributors who are in a position to increase sales of defendants' products.

**ANSWER:**    Chiron denies the allegations in paragraph 158 of the Complaint as to Chiron and demands strict proof thereof. Chiron specifically denies that it reports "price information that . . . does not comply with the HHS OIG's guidelines" by not accounting for various types of discounts. Chiron further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia. Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 158 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

**ANSWER TO ALLEGATIONS THAT DEFENDANTS' CONDUCT WAS INTENTIONALLY IN DISREGARD OF ESTABLISHED LAW**

159.    Defendants want Iowa Medicaid to reimburse providers for defendants' drugs.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 159 and therefore denies the same and demands strict proof thereof, except Chiron admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for Chiron drugs.

160.    Defendants know that Iowa Medicaid is obligated to reimburse providers, and seeks to reimburse providers, based on providers' EAC.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160 and therefore denies the same and demands strict proof thereof, except Chiron admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for Chiron drugs.

161.    Defendants know that Iowa Medicaid is dependent on the pricing benchmarks discussed herein as proxies for EAC.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161 and therefore denies the same and demands strict proof thereof, except Chiron admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for Chiron drugs.

162.    Defendants know that the pricing benchmarks on which Iowa Medicaid relies are based on information that defendants provide.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 162 and therefore denies the same and demands strict proof thereof, except Chiron admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for Chiron drugs.  Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does

not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.

163.    Defendants know that when seeking to have their products paid for by the public fisc, they have a duty to "turn square corners" and submit honest pricing information. Defendants have ignored this duty by submitting false and inflated pricing information.

**ANSWER:**    Chiron denies the allegations in paragraph 163 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "submit[s] false and inflated pricing information."   Chiron states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.   Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 163 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

164.    In addition, it has been the law for over 60 years that it is unlawful for a seller to cause to be circulated a price at which no, or few, sales are actually expected, whether it is called a list price, suggested price, or benchmark price.  *FTC* v. *Colgate-Palmolive Co.,* 380 U.S. 374 (1965); *FTC* v. *Crescent Publ'g Group. Inc.,* 129 F. Supp. 2d 311 (S.D.N.Y. 2001). Defendants either know of this law or act in reckless and willful disregard of it.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 164 and therefore denies the same and demands strict proof thereof.  Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in paragraph 164 refer to judicial opinions, those sources speak for themselves, and any characterizations

thereof are denied.  Chiron respectfully refers the Court to *FTC* v. *Colgate-Palmolive Co.,* 380 U.S. 374 (1965) and *FTC* v. *Crescent Publishing Group. Inc.,* 129 F. Supp. 2d 311 (S.D.N.Y. 2001) for a full and complete reading of their contents.

165.    Congress and the OIG have excoriated the pharmaceutical industry for causing untrue AWPs to be published and directed defendant drug manufacturers to report accurate prices.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 165 and therefore denies the same and demands strict proof thereof.  Chiron further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.

166.    Yet defendants have willfully ignored, and continue to ignore, 1) their duty to Iowa to behave with scrupulous honesty, 2) case law uniformly holding that their pricing practices to be unlawful, and 3) reprimands of Congress and federal agencies overseeing the Medicaid programs.

**ANSWER:**    Chiron denies the allegations in paragraph 166 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 166 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

**ANSWER TO ALLEGATIONS CONCERNING
HARM TO IOWA AND ITS CITIZENS**

167.    The Iowa Medicaid Program spent over $1.6 billion for defendants' drugs between 1992 and 2005 alone.  A substantial portion of this huge sum is the result of the inflation of prescription drug prices pursuant to the fraudulent scheme alleged herein.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 167 the "Iowa Medicaid Program spent over $1.6

billion for defendants' drugs between 1992 and 2005 alone[,]" and therefore denies the same and demands strict proof thereof.  Chiron denies the remaining allegations in paragraph 167 of the Complaint as to Chiron and demands strict proof thereof.   Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 167 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

168.    Applying even the most conservative estimates, defendants' abuses result in millions of dollars in excessive payments by Iowa Medicaid for Medicaid-covered drugs.

**ANSWER:**   Chiron denies the allegations in paragraph 168 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 168 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

169.    At all times, each defendant knew of the reimbursement formula used in the Iowa Medicaid Program.  Each defendant was aware that this formula sought to reimburse providers at EAC and that Iowa Medicaid relied on the defendants' reported prices as proxies for EAC.

**ANSWER:**   Chiron denies the allegations in paragraph 169 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 169 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

170.    By publishing false and inflated wholesale prices and by keeping their true wholesale prices secret, defendants have knowingly interfered with Iowa's ability to reimburse providers at EAC.

**ANSWER:**   Chiron denies the allegations in paragraph 170 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "knowingly interfered with Iowa's ability to reimburse providers at EAC."  Chiron is otherwise without knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 170 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

171.     As a consequence, Iowa's Medicaid program has spent millions of dollars more for prescription drugs than it would have spent if defendants had published their true prices.

**ANSWER:**     Chiron denies the allegations in paragraph 171 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 171 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

172.     Exhibit B hereto lists the drugs and NDCs that are at issue in this litigation. Every drug listed in Exhibit B was paid for by Iowa Medicaid based on either AWP, MAC/FUL or, after 2001, SMAC.  Exhibit B sets forth, for each drug:  (a) the drug's NDC; (b) the drug Name; (c) the reported AWP; (d) the FUL, if one was in place; (e) what Iowa alleges based on actual invoice and transaction data obtained from the nations' largest wholesalers to be the true AWP or "Actual Acquisition Cost" ("AAC") of the drug; and (f) the spread between the AWP or FUL and the AAC.

**ANSWER:**     Chiron admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein. Chiron denies the remaining allegations in paragraph 172 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies the characterization of "spread" in paragraph 172.  Chiron is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 172 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

173.     The AACs in Exhibit B were either obtained from the McKesson Servall price database (which database is comprised of prices offered by the Servall Group Purchasing Organization to its constituent members who are independent retail pharmacies) or through the calculation of a weighted average based on actual invoice prices paid by members of the relevant classes of trade to the wholesalers AmeriSource Bergen or Cardinal.  All three of these "AAC" sources have been blessed by the federal court with jurisdiction over the AWP MDL 1456.

**ANSWER:**   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 173 and therefore denies the same and demands strict proof thereof.

174.   Exhibit B also notes specifically when a defendants' failure to report accurate prices resulted in a false and inflated FUL to be set.

**ANSWER:**   The allegations in paragraph 174 require no response from Chiron on the grounds that Exhibit B does not name any Chiron drugs subject to the FUL.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 174 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 174 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

175.   Exhibit B demonstrates that the prices at which drugs were actually sold to Medicaid providers were much lower than the AWPs, WACs, or other wholesale prices reported or caused to be reported by defendants and used by Medicaid for reimbursement.

**ANSWER:**   Chiron denies the allegations in paragraph 175 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 175 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

176.   The spreads on Exhibit B make clear that even a 10%, 12% or 15% discount off AWP, or reimbursement at the FUL, does not eliminate the damage resulting from defendants' purposeful submission of false and inflated reimbursement price information.  The spreads make clear that, by submitting false and inflated data, defendants entirely undermined Iowa Medicaid's effort to reimburse at EAC.

**ANSWER:**   To the extent paragraph 176 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 176 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies the characterization of "spread" in paragraph 176.  Chiron is without

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 176 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

177.   Exhibit B also demonstrates that defendants routinely submitted false prices for both brand and generic products.

**ANSWER:**   Chiron denies the allegations in paragraph 177 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it "routinely submitted false prices" to pricing compendia.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 177 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO ALLEGATIONS PARTICULAR
## TO IOWA AND THE INDIVIDUAL DEFENDANTS

178.   The following examples are merely illustrative of each defendant's unlawful activity, and are not intended to be an exact or exhaustive recitation of all of such activity engaged in by each defendant.  Instead, these allegations describe the wrongful conduct of each defendant in sufficient detail and particularity to support the liability allegations as to each.  The particular pharmaceutical products identified below are similarly not intended to be an exhaustive list as to all products or NDCs for which each defendant engaged in misconduct. Additional detail is peculiarly within defendants' control pending discovery.

**ANSWER:**   To the extent the allegations of paragraph 178 of the Complaint state legal conclusions and/or arguments and/or characterizations, no response is required.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 178 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 178 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

179.   At all times relevant hereto, each of the following defendants entered into contracts with GPOs, hospitals, PBMs and other purchasers whereby such purchasers were guaranteed a price for defendants' drugs that was deeply discounted off the WACs, DPs, AWPs and/or other reimbursement price information defendants supplied to publishers.  At times these

reduced prices were in the form of upfront discounts. At times, the reduced prices were in the form of guaranteed rebates. The WACs, Direct Prices, AWPs and/or other reimbursement price information defendants supplied to publishers did not take into account these deeply discounted prices. Thus, the WACs, Direct Prices, AWPs and/or other reimbursement price information provided by defendants were false and inflated. The purpose of the inflation was to create the spread referred to herein, which defendants used to increase demand for their products at the expense of those who reimbursed for drugs based on AWP and FUL/MAC, such as Iowa Medicaid.

**ANSWER:**   Chiron denies the allegations in paragraph 179 of the Complaint as to Chiron and demands strict proof thereof, except Chiron admits that its contracts with purchasers sometimes included discounts. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 179 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

180.   Exhibit A hereto presents a defendant-by-defendant summary of (a) the total expenditures at issue for that defendant; (b) the number of NDCs at issue for that defendant; (c) the number of NDCs at issue because of alleged AWP fraud; and (d) the number of NDCs at issue because of alleged FUL/MAC fraud.

**ANSWER:**   Chiron denies the allegations in paragraph 180 of the Complaint and Exhibit A attached thereto as to Chiron and demands strict proof thereof. Chiron specifically denies the accuracy of the data listed in Exhibit A. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 180 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

**Paragraphs 181-318 (Allegations concerning various other Defendants)**

**ANSWER:**   The allegations in paragraphs 181-318 are directed to other defendants and require no response from Chiron. To the extent a response is deemed required, Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 181-318 and therefore denies the same and demands strict proof thereof.

### J.   CHIRON

319.   As summarized in Exhibit A, Iowa Medicaid spent over $1.8 million for the 2 at-issue Chiron NDCs between 1992 and 2005 alone.[13]   The specific Chiron NDCs for which Iowa seeks relief are set forth in Exhibit B-10 hereto.

**ANSWER:**   Chiron admits that the specific NDCs for which Iowa purportedly seeks

relief are set forth only in Exhibit B-10 to the Complaint.  *See, e.g.*, State of Iowa's Omnibus

Opposition to Various Defendants' Individual Motions to Dismiss, at 5 (Mar. 28, 2008) ("The

State of Iowa is asserting claims only for drugs identified in Exhibit B-10.").  Chiron denies the

remaining allegations in paragraph 319 and numbered footnote 13 of the Complaint and the

exhibits referenced therein and demands strict proof thereof.  Chiron specifically denies the

accuracy of the data listed in Exhibit A and Exhibit B-10 as to Chiron and demands strict proof

thereof.

320.   At all times relevant hereto, Chiron has known that it can promote its drugs by selling them at substantial undisclosed discounts, while at the same time maintaining false and inflated reimbursement prices.  As evidenced by Exhibit B-10, Chiron has created such spreads.

**ANSWER:**   Chiron denies the allegations in paragraph 320 of the Complaint and

Exhibit B-10 referenced therein and demands strict proof thereof.  Chiron specifically denies the

accuracy of the data listed in Exhibit B-10 and demands strict proof thereof.  Chiron further

denies the characterization of "spread" in paragraph 320.

321.   Chiron has instructed its sales force to market the spread for its products.  Chiron has specifically instructed sales staff to use the difference between AWP and actual acquisition cost as a selling point, and has prepared worksheets demonstrating the proper calculation of spread.  These worksheets also described the AWPs of the Chiron competitors to demonstrate the advantage of purchasing Chiron products with their inflated AWPs.

**ANSWER:**   Chiron admits that it was aware of the list prices and AWPs of some drugs

made by other manufacturers.  Chiron denies the remaining allegations in paragraph 321 of the

---

[13] Iowa's claims not confined to this time period.

Complaint and demands strict proof thereof.   Chiron further denies the characterization of

"spread" in paragraph 321.

322.    As set forth in the table below, Chiron aggressively sold its products at prices that
were significantly lower than the spread.

| Defendant Chiron's Prices & Spreads From 1995 Contract | | | | | |
|---|---|---|---|---|---|
| Drug | NDC | Contract Price | AWP | Provider's Gross Profit or Spread | Spread as a % of Contract Price |
| Cytarabine, Lyoph | 53905131-10 | $2.88/vial | $62.50 | $59.62 | 2070% |
| Cytarabine, Lyoph | 53905132-10 | $8.75/vial | $250.00 | $241.25 | 2757% |
| Cytarabine, Lyoph | 53905133-01 | $21.50/vial | $508.00 | $486.50 | 2263% |
| Cytarabine, Lyoph | 53905134-01 | $43.00/vial | $98.90 | $55.90 | 130% |
| Doxorubicin Solution | 53905235-10 | $13.92/vial | $47.37 | $33.45 | 240% |
| Doxorubicin Solution | 53905236-10 | $27.26/vial | $94.70 | $67.44 | 247% |
| Doxorubicin Solution | 53905237-01 | $68.15/vial | $236.74 | $168.59 | 247% |
| Doxorubicin Solution | 53905238-01 | $283.50/vial | $945.98 | $662.48 | 234% |
| Leuvocorin, Solution | 53905051-01 | $2.30/vial | $184.38 | $182.08 | 7917% |
| Leuvocorin, Solution | 53905052-01 | $3.75/vial | $350.00 | $346.25 | 9233% |
| Leuvocorin, Solution | 53905053-01 | $9.51/vial | $78.00 | $68.49 | 720% |
| Methotrexate, PFS | 53905031-10 | $2.30/vial | $6.88 | $4.58 | 199% |
| Methotrexate, PFS | 53905032-10 | $3.22/vial | $8.75 | $5.53 | 172% |
| Methotrexate, PFS | 53905033-10 | $4.35/vial | $17.50 | $13.15 | 302% |
| Methotrexate, PFS | 53905034-10 | $4.60/vial | $26.88 | $22.28 | 484% |

**ANSWER:**   Chiron denies the allegations in paragraph 322 of the Complaint and

demands strict proof thereof.  Chiron specifically denies the accuracy of the data and information

contained in the table created by Plaintiff, above, and states that the specific NDCs for which

Iowa purportedly seeks relief are set forth only in Exhibit B-10 to the Complaint.  *See, e.g.*, State

of Iowa's Omnibus Opposition to Various Defendants' Individual Motions to Dismiss, at 5 (Mar.

28, 2008) ("The State of Iowa is asserting claims only for drugs identified in Exhibit B-10.").

Chiron further denies the characterization of "spread" in paragraph 322.

323.    In 1995, Chiron aggressively marketed the spread for subject drugs Leucovorin
Injection 200 mg (NDC 53905-0053-01) and for Doxorubicin HCL, sol, 200 mg MDV (NDC
53905-0238-01).   In an advertisement in 1995, Chiron offered both of these drugs at prices
significantly discounted to AWP.   Chiron caused per vial AWPs of $78.00 and $945.98 to be
reported for Leucovorin 200 mg and Doxorubicin, respectively, and highlighted this fact in their
advertisement.   The advertisement also highlighted acquisition costs of $9.67 for 200 mg
Leucovorin and $259.00 for 200 mg Doxorubicin.   These acquisition costs and AWPs result in
spreads of 706% for Chiron's 200 mg Leucovorin, and 265% for Chiron's 200 mg Doxorubicin.

**ANSWER:**    Chiron denies the allegations in paragraph 323 of the Complaint and

demands strict proof thereof.   Chiron otherwise states that the specific NDCs for which Iowa

purportedly seeks relief are set forth only in Exhibit B-10 to the Complaint.  *See, e.g.*, State of

Iowa's Omnibus Opposition to Various Defendants' Individual Motions to Dismiss, at 5 (Mar.

28, 2008).   Chiron further denies the characterization of "spread" in paragraph 323.

324.    This advertisement granted customers two free vials of Leucovorin 200 mg for
every 10 ordered, and one free vial of Doxorubicin for every 10 ordered.   In addition to this
example, Chiron has utilized other impermissible off-invoice inducements to stimulate sales of
its drugs without accounting for them in its WAC, AWP, or Best Prices.   These inducements
were designed to result in a lower net cost to the provider while concealing the actual wholesale
price beneath a high invoice price.   By utilizing "off-invoice" inducements, Chiron provided
purchasers with substantial discounts meant to gain their patronage while maintaining the fiction
of a higher wholesale price.

**ANSWER:**    To the extent paragraph 324 states conclusions or characterizations of law,

no response is required.   To the extent a response is deemed required, Chiron denies the

allegations in paragraph 324 of the Complaint and demands strict proof thereof.   Chiron

otherwise states that the specific NDCs for which Iowa purportedly seeks relief are set forth only

in Exhibit B-10 to the Complaint.  *See, e.g.*, State of Iowa's Omnibus Opposition to Various

Defendants' Individual Motions to Dismiss, at 5 (Mar. 28, 2008).

325.    Chiron has routinely sold subject drugs Acetylcystine (NDC 53905-0211-03, 53905-0212-03), Doxorubicin (NDC 53905-0213-03, 53905-0214-03), Cytarbine (53905-0131-10, 53905-0131-20), and Doxorubicin HCL (NDC 53905-0231-10, 53905-0232-06) among others at spreads that ranged between 100 and 400 percent.

**ANSWER:**    Chiron denies the allegations in paragraph 325 of the Complaint and

demands strict proof thereof.  Chiron further states that the specific NDCs for which Iowa

purportedly seeks relief are set forth only in Exhibit B-10 to the Complaint.  *See, e.g.*, State of

Iowa's Omnibus Opposition to Various Defendants' Individual Motions to Dismiss, at 5 (Mar.

28, 2008).  Chiron further denies the characterization of "spread" in paragraph 325.

326.    Between 1995 and 1998, Chiron kept its AWP for Mitomycin 20 mg, NDCs 53905-0252-01 and 55390-0252-01 at $434.60, while its wholesale price decreased each year.

| PERCENTAGE OF "SPREAD "BETWEEN CHIRON'S REPORTED AWP AND THE TRUE COST FOR MITOMYCIN 20 MG, NDC #s 53905-0252-01 AND 55390-0252-01 | | | |
|---|---|---|---|
| Year | AWP | TRUE COST | Percent "Spread" |
| 1995 | $434.60 | $338.00 | 28% |
| 1996 | $434.60 | $260.00 | 67% |
| 1997 | $434.60 | $190.00 | 129% |
| 1998 | $434.60 | $152.95 | 184% |

**ANSWER:**    Chiron denies the allegations in paragraph 326 of the Complaint and

demands strict proof thereof.  Chiron further states that the specific NDCs for which Iowa

purportedly seeks relief are set forth only in Exhibit B-10 to the Complaint.  *See, e.g.*, State of

Iowa's Omnibus Opposition to Various Defendants' Individual Motions to Dismiss, at 5 (Mar.

28, 2008).  Chiron further denies the characterization of "spread" in paragraph 326.

327.    If the AWP stayed the same, but the price decreased as set forth below, the reported A WP cannot be an "average" wholesale price.

**ANSWER:**   Chiron states that paragraph 327 appears to be incomplete, as Plaintiff alleges "but the price decreased as set forth below" but fails to actually set forth anything "below" paragraph 327 that is relevant and/or responsive to paragraph 327.   Therefore, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 327 of the Complaint and therefore denies the same and demands strict proof thereof.

**Paragraphs 328-613 (Allegations concerning various other Defendants)**

**ANSWER:**   The allegations in paragraphs 328-613 are directed to other defendants and require no response from Chiron.   To the extent a response is deemed required, Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 328-613 and therefore denies the same and demands strict proof thereof.

## ANSWER TO ALLEGATIONS CONCERNING
## DAMAGES TO IOWA MEDICAID PROGRAMS

614.   Iowa Medicaid spent over $1.6 billion for defendants' drugs in state and federal dollars from 1992 through 2005 alone.  A substantial portion of this huge sum is the result of the inflation of prescription drug prices pursuant to the false price reporting scheme alleged herein, and the failure to pay the full rebate amounts required by law.

**ANSWER:**   To the extent paragraph 614 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegation that Iowa's Medicaid program "spent over $1.6 billion for defendants' drugs in state and federal dollars from 1992 through 2005 alone[,]" and therefore denies the same and demands strict proof thereof.  Chiron denies the remaining allegations in paragraph 614 of the Complaint as to Chiron and demands strict proof thereof.  Chiron specifically denies that it was involved in any "false price reporting scheme."   Chiron is otherwise without knowledge or information sufficient to

form a belief as to the truth of the allegations in paragraph 614 of the Complaint as they pertain

to other defendants and therefore denies the same and demands strict proof thereof.

615.    Applying even the most conservative estimates of improper AWP/FUL spread and failures to report accurate Best Prices or pay proper rebates, these abuses result in millions of dollars in excessive payments by Iowa Medicaid for Medicaid-covered drugs.

**ANSWER:**    Chiron denies the allegations in paragraph 615 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 615 as they pertain to other

defendants and therefore denies the same and demands strict proof thereof.

616.    Iowa now seek [sic], *inter alia*, to recover the excess payments.  Defendants' misconduct has unjustly enriched the defendants at the expense of Iowa's health care system, and ultimately, taxpayers in Iowa and nationwide.

**ANSWER:**    Chiron denies the allegations in paragraph 616 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron specifically denies that it was involved in any

"misconduct," or that it has been "unjustly enriched," and therefore denies the same and

demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 616 as they pertain to other defendants and

therefore denies the same and demands strict proof thereof.

## ANSWER TO ALLEGATIONS CONCERNING
## FRAUDULENT CONCEALMENT

617.    By controlling the process by which the AWPs and other reimbursement price information for covered drugs were inflated and reported falsely to publishers, each defendant concealed its fraudulent conduct from the State of Iowa.  Each defendant prevented Iowa from knowing what the true actual prices for the covered drugs were, and concealed the standard discounts, chargebacks, off-invoice transactions, free samples and other financial incentives routinely provided to lower the actual costs for its drugs.

**ANSWER:**    Chiron denies the allegations in paragraph 617 of the Complaint as to

Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 617 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

618.    Each defendant who reported WAC or Direct Price or AWP or other reimbursement price information to the publishers concealed that the reimbursement prices did not accurately reflect the true prices at which defendants' products were sold.

**ANSWER:**    Chiron denies the allegations in paragraph 618 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 618 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

619.    Each defendant concealed that it sold the vast majority of its drugs at discounts off of WAC and AWP, pursuant to negotiated contracts or otherwise.

**ANSWER:**    Chiron denies the allegations in paragraph 619 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 619 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

620.    Each defendant concealed its fraudulent conduct by instructing drug distribution chain intermediaries not to report the prices they paid for the covered drugs.

**ANSWER:**    Chiron denies the allegations in paragraph 620 of the Complaint as to Chiron and demands strict proof thereof, except admits that Chiron may keep certain competitively sensitive pricing information confidential.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 620 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

621.    Each defendant worked with and motivated provider and drug distribution chain intermediaries to halt investigations or changes in the AWP/ reimbursement price system.

**ANSWER:**    Chiron denies the allegations in paragraph 621 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 621 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

622.    Each defendant concealed that its calculation of Medicaid rebates, based on Best Price and AMP, did not account for all discounts, rebates or incentives as required by law.

**ANSWER:**    To the extent paragraph 622 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 622 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See* Memorandum and Order (Saris, J.) (Aug. 19, 2008) at 12, ¶ 2 (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 622 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 622 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

623.    Each defendant concealed that it was selling substantial quantities of its drugs for less than 10% of AWP to commercial entities to avoid Best Price reporting obligations, an abuse of the Nominal Price exception.  This unlawful practice has only come to light recently, in the wake of a Congressional investigation and a January 2007 report issued by Senator Grassley, and annexed hereto as Exhibit F.

**ANSWER:**    To the extent paragraph 623 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 623 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 623 of the Complaint as to Chiron and demands strict

proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 623 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

624.    Each defendant further concealed the true Best Prices from the federal agencies to which it reports those price indicators.

**ANSWER:**    To the extent paragraph 624 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 624 of the Complaint because this Court has already dismissed Best Price claims against certain defendants. *See id.* (ordering parties to "confer and notify the Court as to the drugs for which the various Best Price claims have been adequately pled so that the record is clear.").  To the extent Plaintiff's Best Price claims are not dismissed as to Chiron and a response is deemed required, Chiron denies the allegations in paragraph 624 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 624 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

625.    Each defendant concealed that it was not paying proper rebates to the states.

**ANSWER:**    Chiron denies the allegations in paragraph 625 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 625 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

626.    Each defendant purposely concealed its pricing structures, promotional practices and sales figures for the covered drugs.

**ANSWER:**    Chiron denies the allegations in paragraph 626 of the Complaint as to Chiron and demands strict proof thereof, except admits that Chiron may keep certain

competitively sensitive pricing information confidential.   Chiron is without knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 626 as they

pertain to other defendants and therefore denies the same and demands strict proof thereof.

627.   Each defendant concealed that it purposely inflated its reimbursement price
information and/or did not disclose its discounting practices in order to create a spread between
reimbursement price and acquisition cost.

**ANSWER:**   Chiron denies the allegations in paragraph 627 of the Complaint as to

Chiron and demands strict proof thereof.   Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 627 as they pertain to other

defendants and therefore denies the same and demands strict proof thereof.

628.   Each defendant's efforts to conceal its pricing structures for the drugs at issue is
evidence that it knew that its conduct was fraudulent.

**ANSWER:**   Chiron denies the allegations in paragraph 628 of the Complaint as to

Chiron and demands strict proof thereof.   Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 628 as they pertain to other

defendants and therefore denies the same and demands strict proof thereof.

629.   Thus, each defendant concealed that (i) its AWPs, WACs and Direct Prices and
other reported wholesale prices were highly inflated and false notwithstanding defendants'
obligations to "turn square corners" when dealing with the government, (ii) it was manipulating
the WACs, AWPs and other reported prices of the covered drugs, (iii) the AWPs bore no
relationship to the actual prices paid for, or the pricing structure of, the subject drugs, and (iv) it
was not accurately reporting its Best Prices and not accurately calculating its Medicaid rebates.

**ANSWER:**   Chiron denies the allegations in paragraph 629 of the Complaint as to

Chiron and demands strict proof thereof.   Chiron is without knowledge or information sufficient

to form a belief as to the truth of the allegations in paragraph 629 as they pertain to other

defendants and therefore denies the same and demands strict proof thereof.

630.    Deutsche Bank's Barbara Ryan, a large-cap pharmaceutical analyst concurs:

"[W]e all look at list price, because it's the only thing that is known to us.  But list price is increasingly absolutely irrelevant. It's [more important] what goes on behind the curtain.  Now we don't know what goes on behind the curtain, we can only imagine, but we can judge the results.  So we see that some companies, like Pfizer, have been more successful behind the curtain than others. The breadth of your product portfolio and the importance of that portfolio to any payor certainly plays a role.  If you have a one-off drug that you're trying to position and it might be in a therapeutic category that's quite crowded, it is very difficult to have any traction."

*The Pink Sheet* 2004/2005 Almanac.

**ANSWER:**    Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 630 and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 630 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

631.    Defendants veiled information vital to the pursuit of these claims, without any fault or lack of diligence on the part of the State of Iowa.  Iowa could not reasonably have discovered the fraudulent nature of all the published prices and of the Medicaid rebate amounts calculated or Best Prices reported by defendants.  Because of their knowing, affirmative, and active concealment of the fraudulent nature of pricing information, defendants are estopped from relying on any statutes of limitations.

**ANSWER:**    To the extent paragraph 631 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 631 of the Complaint as to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 631 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

632.    Any applicable statutes of limitations have been tolled by defendants' knowing and active concealment and denial of the facts alleged herein.  At all times relevant the defendants have been and are under a continuing duty to disclose to the State of Iowa that the AWPs they reported or caused to be reported bear no relationship to the actual prices paid for

their drugs, that defendants manipulated the WACs, AWPs and other published prices to create a spread, and that the Medicaid rebates that defendants pay are reduced by the use of false and inaccurate pricing information and abuse of the Nominal Price exception.

**ANSWER:**   To the extent paragraph 632 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations in paragraph 632 of the Complaint as to Chiron and demands strict proof thereof. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 632 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO CLAIMS FOR RELEF

### ANSWER TO COUNT I
### VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8
### (Failure To Comply With Federal Medicaid Rebate Provision)

633.   Iowa realleges and incorporate the preceding paragraphs as if fully set forth herein.

**ANSWER:**    Chiron repeats and incorporates by reference its responses to paragraphs 1 through 632, above.

634.   Each of the defendant pharmaceutical companies is a manufacturer of a drug covered by Medicaid.

**ANSWER:**   Chiron states that no response is required to paragraph 634 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 634 of the Complaint as to Chiron and demands strict proof thereof, except admits that certain state Medicaid programs have at certain times paid for a portion of certain Chiron drugs prescribed to their beneficiaries.  Chiron is without knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 634 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

635.    Pursuant to 42 U.S.C. § 1396r-8, each of the defendant pharmaceutical manufacturers of single source and brand name innovator drugs entered into a rebate agreement with the Medicaid program pursuant to which the defendant agreed to report its Best Price.

**ANSWER:**    To the extent paragraph 635 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 635 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 635 of the Complaint as to Chiron and demands strict proof thereof, except admits that Chiron is subject to a rebate agreement with the Secretary of the Department of Health and Human Services ("HHS") pursuant to which Chiron reports certain pricing information to the federal government and remits rebate payments to the State of Iowa (and other participating states), and that these rebates lower the State of Iowa's cost of prescription drugs for Medicaid patients.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8 for a full and complete reading of its provisions.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 635 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

636.    In keeping with their artificial price inflation scheme, each defendant did not report the actual Best Price but instead reported incorrect Best Prices by, *inter alia*, excluding routine discounts (*e.g.*, volume and prompt pay discounts and discounts to repackagers), rebates, off-invoice transactions, free samples and other inducements offered to participants in the drug distribution chain and through abuse of the Nominal Price Exception ("NPE") to Best Price Reporting requirements.  As a result, defendants reported false and inflated "Best Prices" to the Medicaid Program and paid lower rebates than they were legally obligated to pay.

**ANSWER:**    Chiron states that no response is required to paragraph 636 of the Complaint because this Court has already dismissed this cause of action.  To the extent a

response is deemed required, Chiron denies the allegations set forth in paragraph 636 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 636 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

637.    Each of the defendants violated 42 U.S.C. § 1396r-8 by their systematic submission of untrue, incomplete, inaccurate, and misleading information used to determine the amount of rebates under the Medicaid program.

**ANSWER:**    To the extent paragraph 637 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 637 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 637 of the Complaint as to Chiron and demands strict proof thereof.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8 for a full and complete reading of its provisions.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 637 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

638.    As set forth herein, acting with the intent to defraud and in order to obtain authorization to qualify as a provider and to provide specific goods, each defendant made or caused to be made false statements and incorrect payments while promising that it would comply with the mandates of 42 U.S.C. § 1396r-8.

**ANSWER:**    To the extent paragraph 638 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 638 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 638 of the Complaint as to Chiron and demands strict proof thereof.  Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8 for a full and complete reading of its provisions.  Chiron is without

knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 638 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

639.    Defendants knew, or by virtue of their position, authority or responsibility should have known, of the falsity of pricing information submitted and that the rebates they were paying were incorrectly calculated.

**ANSWER:**    To the extent paragraph 639 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 639 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 639 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 639 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

640.    As a result of defendants' inaccurate reporting of Best Price, defendants did not comply with their obligations pursuant to the Federal Medicaid rebate provision and the State of Iowa was deprived of a portion of the rebates to which it was entitled.

**ANSWER:**    To the extent paragraph 640 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 640 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 640 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 640 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

641.    Iowa is an express third-party beneficiary of the Federal Rebate Agreement each defendant has signed and is within the class of entities for whose benefit the rebated provision was enacted.

**ANSWER:**    To the extent paragraph 641 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 641 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 641 and therefore denies the same and demands strict proof thereof.

642.    Medicaid pharmacy costs for Iowa are higher than they would have been if defendants had accurately reported Best Price.  Iowa has therefore suffered actual injury as a direct result of defendants' misconduct.  That injury would be redressed through a favorable decision on this claim.

**ANSWER:**    To the extent paragraph 642 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 642 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 642 and therefore denies the same and demands strict proof thereof.

## ANSWER TO COUNT II
## BREACH OF CONTRACT

643.    Iowa realleges and incorporate by reference the preceding paragraphs as if fully set forth herein.

**ANSWER:**    Chiron repeats and incorporates by reference its responses to paragraphs 1 through 642, above.

644.    As required by 42 U.S.C. § 1396r-8, and to effectuate its purpose of reducing state Medicaid drug expenditures, each defendant entered into a Rebate Agreement with the Secretary of HHS.

**ANSWER:**    To the extent paragraph 644 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 644 of the

Complaint because this Court has already dismissed this cause of action. To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 644 of the Complaint as to Chiron and demands strict proof thereof, except admits that Chiron is subject to a rebate agreement with the Secretary of HHS pursuant to which Chiron reports certain pricing information to the federal government and remits rebate payments to the State of Iowa (and other participating states), and that these rebates lower the State of Iowa's cost of prescription drugs for Medicaid patients. Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 644 as they pertain to other defendants and therefore denies the same and demands strict proof thereof. Chiron respectfully refers the Court to 42 U.S.C. § 1396r-8 for a full and complete reading of its provisions.

645. The Secretary of HHS entered into this Rebate Agreement, "on behalf of the States."

**ANSWER:** To the extent paragraph 645 states conclusions or characterizations of law, no response is required. Chiron also states that no response is required to paragraph 645 of the Complaint because this Court has already dismissed this cause of action. To the extent a response is deemed required, Chiron admits that Plaintiff quotes a select portion of the first paragraph before Section I of the Model Rebate Agreement, which is attached to Plaintiff's Complaint at Exhibit E, but denies that the quote is accurate and states that the Model Rebate Agreement speaks for itself, and any characterizations thereof are denied. Chiron further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 645 and therefore denies the same and demands strict proof thereof.

646. The Medicaid statute provides that "the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties for any

overcharges and submit to the Secretary of Health and Human Services a plan for pursuing such claims." 42 U.S.C. § 1396a (a)(25)(A).

**ANSWER:**    To the extent paragraph 646 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 646 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 646 and therefore denies the same and demands strict proof thereof.  Chiron respectfully refers the Court to 42 U.S.C. § 1396a (a)(25)(A) for a full and complete reading of its provisions.

647.    At the time each defendant entered into a Rebate Agreement, the Secretary of HHS expressly had approved Iowa's Medicaid plan.

**ANSWER:**    To the extent paragraph 647 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 647 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 647 of the Complaint as to Chiron and demands strict proof thereof.  Chiron respectfully refers the Court to Iowa's State Medicaid Plan for a full and complete reading of its contents.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 647 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

648.    Iowa is an express intended third-party beneficiary of these rebate agreements. The rebate agreements expressly provide that the Secretary is entering into the agreements "on behalf of the states."  *See* Exhibit E hereto.

**ANSWER:**    To the extent paragraph 648 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 648 of the

Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 648 and therefore denies the same and demands strict proof thereof.

649.    Contrary to the express requirements of the Rebate Agreements, each defendant did not report accurate Best Prices for its drugs or pay correct Medicaid rebates.

**ANSWER:**    To the extent paragraph 649 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 649 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 649 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 649 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

650.    Rather, each defendant reported false and inflated Best Prices that, among other things, excluded routine discounts including prompt pay and bundled discounts, rebates, chargebacks and other inducements and incentives offered to drug selecting entities to create market share, and abused the Nominal Price Exception.

**ANSWER:**    To the extent paragraph 650 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 650 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 650 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 650 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

651.    Defendants have therefore breached their rebate agreements and caused massive foreseeable damage to Iowa, which is and was an express intended third-party beneficiaries [sic] of the rebate agreement.

**ANSWER:**    To the extent paragraph 651 states conclusions or characterizations of law, no response is required.  Chiron also states that no response is required to paragraph 651 of the Complaint because this Court has already dismissed this cause of action.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 651 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 651 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO COUNT III
## IOWA CONSUMER FRAUD ACT, Iowa Code § 714.16

652.    Iowa realleges and incorporate by reference the preceding paragraphs as if fully set forth herein.

**ANSWER:**    Chiron repeats and incorporates by reference its responses to paragraphs 1 through 651, above.

653.    As set forth herein and in the Exhibits hereto, defendants' reporting of inaccurate, false and misleading wholesale pricing information for their drugs constituted deception pursuant to Iowa Code § 714.16(1)(f) and unfair practices pursuant to Iowa Code § 714.16(l)(n) and, therefore, was unlawful pursuant to Iowa Code § 714.16(2)(a).

**ANSWER:**    To the extent paragraph 653 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 653 of the Complaint and the Exhibits referenced therein as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 653 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the

allegations in paragraph 653 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

654.    Defendants' conduct as alleged in this Complaint constitutes deception and unfair practices in connection with the advertisement or sale of merchandise in that:

(a)    Defendants misrepresented that the wholesale pricing information they submit reflects the true wholesale prices of the drug products they sell, and that the Best Prices they report are the actual Best Prices paid;

(b)    Defendants made false and misleading statements regarding the true wholesale pricing information and true Best Prices paid for their medications, which are the bases of Iowa's Medicaid pharmacy cost payments, in order to drive up the prices paid by Iowa through Medicaid and deny Iowa proper Medicaid rebates; and

(c)    Defendants made false representations by representing that the wholesale pricing information provided is an accurate reflection of the wholesale prices paid for their drugs, and that their reported Best Prices are in fact the Best Prices paid for their drugs.

**ANSWER:**    To the extent paragraph 654 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 654 of the Complaint and the sub-parts thereto as to Chiron and demands strict proof thereof.   Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 654 of the Complaint or the sub-parts thereto as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

655.    The wrongful conduct alleged in this Complaint occurs and continues to occur in the ordinary course of defendants' business and has caused great harm to Iowa.   Iowa has overpaid millions of dollars in Medicaid pharmacy costs due to defendants' deceptive and unfair practices.

**ANSWER:**    To the extent paragraph 655 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 655 of the Complaint as to Chiron and demands strict proof thereof.   Chiron is without knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 655 of the Complaint as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

656.     Pursuant to Iowa Code § 714.16(7), except in an action for the concealment, suppression or omission of a material fact with intent that others rely upon it, it is not necessary in an action under section § 714.16 [sic] for reimbursement or an injunction, to allege or to prove reliance, damages, intent to deceive, or that the person who engaged in an unlawful act had knowledge of the falsity of the claim or ignorance of the truth.

**ANSWER:**     To the extent paragraph 656 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 656 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 656 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 656 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied. Chiron respectfully refers the Court to Iowa Code § 714.16 for a full and complete reading of its provisions.

657.     Pursuant to Iowa Code § 714.16(7), Iowa is entitled to full reimbursement of the monies it has unnecessarily paid as a result of defendants' wrongful practices, civil penalties, costs and attorneys' fees.

**ANSWER:**     To the extent paragraph 657 states conclusions or characterizations of law, no response is required.   To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 657 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 657 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.  To the extent the allegations in paragraph 657 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

Chiron respectfully refers the Court to Iowa Code § 714.16 for a full and complete reading of its provisions.

**ANSWER TO COUNT IV**
**FRAUD**

658.   Iowa realleges and incorporate the preceding paragraphs as if fully set forth herein.

**ANSWER:**   Chiron repeats and incorporates by reference its responses to paragraphs 1 through 657, above.

659.   As detailed in the Complaint and Exhibits hereto, defendants have engaged in actual fraudulent reporting of pricing information on which Medicaid reimbursements are based, and have acted intentionally and with actual malice.

**ANSWER:**   To the extent paragraph 659 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 659 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 659 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

660.   Defendants have made false representations with knowledge of their falsity, have concealed material facts with the purpose of overcharging Iowa and Iowa has relied upon such misrepresentations.  Direct, proximate and foreseeable injury has occurred as a result of such foreseeable and intended reliance.

**ANSWER:**   To the extent paragraph 660 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 660 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 660 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

661.     Defendants also had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Iowa and deliberately proceeded to act in conscious or intentional disregard of, or with indifference to, the high probability of this injury.

**ANSWER:**     To the extent paragraph 661 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 661 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 661 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

662.     Defendants' knowing and intentional submission of inflated WACs/AWPs and other wholesale pricing data to publishers for the express purpose of effectuating the WAC/AWP scheme alleged herein, and their knowing and intentional failures to report accurate Best Prices and failure to pay correct Medicaid rebates constitute intentional frauds pursuant to Iowa common law.

**ANSWER:**     To the extent paragraph 662 states conclusions or characterizations of law, no response is required.  To the extent a response is deemed required, Chiron denies the allegations set forth in paragraph 662 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 662 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO COUNT V
## UNJUST ENRICHMENT

663.     Iowa realleges and incorporate by reference the preceding paragraphs as if fully set forth herein.
**ANSWER:**     Chiron repeats and incorporates by reference its responses to paragraphs 1 through 662, above.

664.     To the extent the court determines there is no contractual relationship between Iowa and the defendants, as a direct and proximate result of the unlawful conduct described above, defendants have been and will continue to be unjustly enriched.

**ANSWER:**     To the extent paragraph 664 states conclusions or characterizations of law, no response is required.  Chiron also states that Plaintiff conceded that its unjust enrichment claims should be dismissed as to certain defendants and certain drugs.  *See* Memorandum and Order (Saris, J.) (Aug. 19, 2008) at 14, ¶ 4 (ordering parties to submit a stipulation specifying which defendants and/or drugs "for which they agree that the unjust enrichment claims were not alleged with adequate particularity[]" and are therefore dismissed.)  To the extent Plaintiff's unjust enrichment claim is not dismissed as to Chiron and a response is deemed necessary, Chiron denies the allegations set forth in paragraph 664 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 664 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

665.    Defendants have benefited from their unlawful acts through the increased sale of covered drugs with the greatest spread.  It would be inequitable for defendants to retain any of their ill-gotten gains earned as a result of the scheme alleged herein, which gains would not exist but for the overpayments made by the Iowa Medicaid Programs and other Medicaid payors.

**ANSWER:**     To the extent paragraph 665 states conclusions or characterizations of law, no response is required.  Chiron also states that Plaintiff conceded that its unjust enrichment claims should be dismissed as to certain defendants and certain drugs.  *See id.* (ordering parties to submit a stipulation specifying which defendants and/or drugs "for which they agree that the unjust enrichment claims were not alleged with adequate particularity[]" and are therefore dismissed.)  To the extent Plaintiff's unjust enrichment claim is not dismissed as to Chiron, Chiron denies the allegations set forth in paragraph 665 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 665 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

666.     Iowa is entitled to an accounting and the establishment of a constructive trust consisting of all excess payments made by Iowa' [sic] Medicaid Programs for covered drugs.

**ANSWER:**     To the extent paragraph 666 states conclusions or characterizations of law, no response is required.  Chiron also states that Plaintiff conceded that its unjust enrichment claims should be dismissed as to certain defendants and certain drugs.  *See id.* (ordering parties to submit a stipulation specifying which defendants and/or drugs "for which they agree that the unjust enrichment claims were not alleged with adequate particularity[]" and are therefore dismissed.)  To the extent Plaintiff's unjust enrichment claim is not dismissed as to Chiron, Chiron denies the allegations set forth in paragraph 666 of the Complaint as to Chiron and demands strict proof thereof.  Chiron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 666 as they pertain to other defendants and therefore denies the same and demands strict proof thereof.

## ANSWER TO PRAYER FOR RELIEF

**Paragraphs 667 through 675**.

Chiron denies that the State of Iowa is entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and paragraphs 667-675 of the Complaint.

Each and every allegation of the Complaint not specifically or qualifiedly admitted as set forth herein is hereby denied.

## AFFIRMATIVE DEFENSES

By alleging the matters set forth below, Chiron does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters, or that Plaintiff is relieved of its burdens to prove each and every element of its claims and the damages, if any, to which it is entitled.  Chiron reasserts and incorporates herein by reference the assertions of paragraphs 1 through 675 hereof.  As and for its affirmative defenses, Chiron alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim against Chiron upon which relief may be granted, and the Complaint should be dismissed.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the political question and separation of powers doctrines.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because it did not rely on any alleged misrepresentations or fraud by Chiron.  Plaintiff knew that providers could obtain Chiron drugs at prices below AWP prior to the relevant time period stated in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered, and will not suffer, any injury to a legally protected or cognizable interest by reason of the conduct of Chiron as alleged in the Complaint.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred, in whole or in part, because Plaintiff has not suffered damages as a result of the matters alleged in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiff obtains recovery in any other proceeding predicated on the same factual allegations, Plaintiff is barred from seeking recovery against Chiron based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the filed rate doctrine.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the state action doctrine.

## NINTH AFFIRMATIVE DEFENSE

Any and all actions taken by Chiron with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted, in whole or in part, by federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, Federal Medicare Act and the Federal Medicaid Act, including all amendments to the same and all regulations promulgated thereunder, and by the existence and terms of written rebate agreement(s) with the Secretary of the Department of Health and Human Services ("HHS"), on behalf of HHS and certain States, including the State of Iowa, entitled "Rebate Agreement Between the Secretary of Health and Human Services and the Manufacturers Identified in Section XI of this Agreement" (the "Rebate Agreement"), which was entered pursuant to 42 U.S.C. § 1396r-8 and pursuant to which Chiron reports certain specific pricing information to the federal government and remits rebate payments to the State of Iowa based on that information.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted by the Commerce Clause or the dormant Commerce Clause of the United States Constitution.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred because Chiron has complied with all applicable regulations of the federal and state governments.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel and waiver.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a consumer within the meaning of the Iowa Consumer Fraud Act.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a person within the meaning of the Iowa Consumer Fraud Act.

## SIXTEENTH AFFIRMATIVE DEFENSE

Chiron denies that Plaintiff has a valid consumer protection claim against Chiron under the Iowa Consumer Fraud Act.  However, if such claim is found to exist, Chiron pleads all available defenses under the Act.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims against Chiron arise from Plaintiff's failure to follow its federal and state statutory and regulatory obligation to set reimbursement rates at Estimated Acquisition Cost.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because they violate Chiron's rights under the Due Process and *Ex Post Facto* clauses of the United States Constitution, as well as under the Constitution of the State of Iowa, insofar as Plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

## NINETEENTH AFFIRMATIVE DEFENSE

Chiron's statements or actions were not the proximate cause or cause in fact of any injury to or alleged loss by Plaintiff.

## TWENTIETH AFFIRMATIVE DEFENSE

To the extent that Plaintiff attempts to seek equitable relief against Chiron, it is not entitled to such relief because it has an adequate remedy at law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron for unjust enrichment are barred because the Complaint does not allege that Chiron received any payment or property from the Plaintiff.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron for injunctive relief were mooted by the passage of the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA") in 2003, which requires participating prescription drug manufacturers to report Average Sales Price ("ASP") quarterly and defines ASP as the manufacturer's "sales to all purchasers . . . in the United States for such drug or biological in the calendar quarter; divided by the total number of such units of

such drug or biological sold by the manufacturer in such quarter."  42 U.S.C. §§ 1396r-8(b)(3)42

& 1395w-3a(c)(1).

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred, in whole or in part, due to their failure to join

indispensable parties.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any injuries sustained by

Plaintiff were the result of Plaintiff's own conduct or the intervening or superseding conduct of

third parties.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron for damages are barred, in whole or in part:  (i) because

it failed to mitigate its damages, and its failure to mitigate damages should proportionately

reduce the recovery of Plaintiff and the allocation of any fault, if any exists, attributable to

Chiron; (ii) by the doctrine of consent and/or ratification to the extent that Plaintiff has paid for

products manufactured, marketed and sold by Chiron after the filing of Plaintiff's original

Complaint; and (iii) because they are speculative and remote, and because of the impossibility of

ascertaining and allocating those alleged damages.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Chiron is entitled to a set-off, should any damages be awarded against it, for the

entire amount of all damages or settlement amounts recovered by Plaintiff, with respect to the

same alleged injuries.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Any damages recovered by the Plaintiff from Chiron must be limited by the applicable statutory ceilings on recoverable damages.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff fails to allege facts or a cause of action against Chiron sufficient to support a claim for compensatory damages, attorneys' fees and/or legal fees or costs, enhanced damages, treble damages, or any other relief.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are misjoined with Plaintiff's claims against other defendants and must be severed.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff and/or its agents knew and were aware at all relevant times that AWP was not an average wholesale price or the actual acquisition cost of drugs and made their reimbursement choices with such knowledge.  Legal and equitable principles preclude this action for damages and injunctive relief, and the Due Process Clause of the U.S. Constitution and the Constitution of the State of Iowa, prohibiting the absolute and arbitrary abuse of power, preclude Plaintiff from bringing claims and seeking damages as alleged in the Complaint.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to allege facts or a cause of action against Chiron sufficient to support a claim for prejudgment interest or any other relief.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred, in whole or in part, because Chiron did not make any false statements to Plaintiff or its agents.  As to any statement asserted against Chiron

that Plaintiff alleges to be false or misleading, Chiron had no reasonable grounds to believe, and did not believe at the time such statement was made, that the statement was false or misleading.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff did not rely on the allegedly fraudulent statements or conduct of Chiron.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff fails to state with particularity facts to support the claims of fraudulent conduct against Chiron in the Complaint.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for fraud and fraudulent concealment are barred because Plaintiff cannot predicate a claim for fraud on reliance by a third party.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred because Plaintiff lacks standing or capacity to bring the some or all of the claims asserted against Chiron under Iowa law.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Any discounts that were provided by Chiron were earned discounts and therefore appropriate business decisions.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Any alleged misconduct by Chiron was not a substantial factor in Plaintiff's decision to reimburse for Chiron's products.

## FORTIETH AFFIRMATIVE DEFENSE

The claims alleged herein, based on the facts alleged, are barred in whole or in part by Plaintiff's own negligence or gross negligence and the doctrines of comparative and/or

contributory negligence.  Among other things, the claims disregard Iowa's obligations under federal law.

### FORTY-FIRST AFFIRMATIVE DEFENSE

All rebates paid by Chiron to the State of Iowa should be taken into account in determining the amount of damages, if any, to which Plaintiff is entitled.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims against Chiron are barred in whole or in part by the existence and terms of the written rebate agreement(s) between Chiron and the Secretary of the Department of Health and Human Services ("HHS"), on behalf of HHS and certain States, including the State of Iowa, entitled, "Rebate Agreement Between the Secretary of Health and Human Services and the Manufacturer Identified in Section XI of this Agreement," which was entered into pursuant to 42 U.S.C. §1396r-8 and requires Chiron to report to the federal government the average discounted unit prices for its drugs and to remit rebate payments to the State of Iowa based on those average discounted unit prices.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims for injunctive relief against Chiron are barred by the doctrines of *in pari delicto* and/or unclean hands.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's prayers for relief in the form of restitution are barred, in whole or in part, because Chiron did not retain any money belonging to the Plaintiff as a result of any alleged overpayments, and by the existence of express, written agreements covering the subject matter of Plaintiff's claims.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the voluntary payment doctrine.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by Chiron in judicial, legislative, or administrative proceedings of any kind or at any level of government.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims.

### FORTY-NINTH AFFIRMATIVE DEFENSE

To the extent punitive damages are sought, Plaintiff's punitive damages claims against Chiron:  (i) have no basis in law or fact; (ii) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against Chiron; (iii) cannot be sustained because the laws regarding the standards for determining liability for and the amount of punitive damages fail to give Chiron prior notice of the conduct for which punitive damages may be imposed and the severity of the penalty that may be imposed, and are void for vagueness in violation of Chiron's Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Iowa; (iv) cannot be sustained because any award of punitive damages exceeding the limits authorized by the laws or other comparable laws would violate Chiron's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and

would be improper under the Constitution, common law and laws of the State of Iowa; (v) cannot be sustained because an award of punitive damages in this case, combined with any prior, contemporaneous, or subsequent judgments against Chiron for punitive damages arising from the design, development, manufacture, fabrication, distribution, supply, marketing, sale, or use of Chiron's products would constitute impermissible multiple punishments for the same wrong, in violation of Chiron's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would constitute double jeopardy in violation of the Constitution, common law, and statutory laws of the State of Iowa; (vi) cannot be sustained because any award of punitive damages without the apportionment of the award separately and severally between or among the alleged joint tortfeasors, as determined by the alleged percentage of the wrong committed by each alleged tortfeasor, would violate Chiron's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Iowa; and (vii) cannot be sustained because any award of punitive damages, which are penal in nature, without according Chiron the same protections that are accorded to all criminal defendants, including the protection against unreasonable searches and seizures, the privilege against self-incrimination, and the rights to confront adverse witnesses, a speedy trial, and the effective assistance of counsel, would violate Chiron's rights guaranteed by the Fourth, Fifth, and Sixth Amendment as incorporated into the Fourteenth Amendment to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Iowa.

## FIFTIETH AFFIRMATIVE DEFENSE

To the extent punitive damages are sought, Plaintiff's claims for punitive damages against Chiron cannot be sustained because an award of punitive damages by a jury that: (i) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award; (ii) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (iii) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of Chiron; (iv) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (v) is not properly instructed regarding Plaintiff's burden of proof with respect to each and every element of a claim for punitive damages; and (vi) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards, would violate Chiron's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the Constitution, common law, and public policies of the State of Iowa.

## FIFTY-FIRST AFFIRMATIVE DEFENSE

The "Rebate Agreement Between the Secretary of Health and Human Services and the Manufacturers Identified in Section XI of this Agreement" (the "Rebate Agreement"), which was entered pursuant to 42. U.S.C. § 1396r-8, constitutes the entire agreement with the State of Iowa and governs the relationship between them.

## FIFTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff has no standing or capacity to bring some or all of the claims raised in the Complaint.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

Chiron hereby adopts by reference any additional applicable defense pled by any other Defendant not otherwise pled herein.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

Chiron states that its Affirmative Defenses are based upon, and necessarily limited by, information now available to Chiron as discovery is stayed as to Chiron.  *See, e.g.*, Iowa Motion to Dismiss Hrg. Tr. (June 26, 2008), at 46:21-47:3 (staying discovery as to all Chiron drugs pled in Plaintiff's Complaint); Court's Memorandum and Order Re: Certain Defendants' Motion to Dismiss the Iowa Complaint (August 19, 2008), at 16, § B.6. (ordering that discovery is stayed "for all drugs with alleged spreads at 30% or less . . .").  To that end, Chiron gives notice that it intends to rely upon any other additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserves its right to amend its Answer and Affirmative Defenses to assert such defense should it deem doing so necessary during the discovery process.

.

## **PRAYER**

WHEREFORE, Chiron Corporation prays as follows:

A.    That all claims contained in Plaintiff's Complaint against Chiron be dismissed *with prejudice*;

B.    That it be awarded costs and attorneys' fees; and,

C.    That it have such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____/s/_____

D. Jacques Smith, Esq.
**ARENT FOX LLP**
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
Tel:    (202) 857-6000
Fax:    (202) 857-6395
smith.jacques@arentfox.com

*Attorney for Defendant Chiron Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2008, I caused a true and correct copy of the foregoing to be served on all counsel of record via electronic service by sending a copy to LexisNexis File & Serve for posting and notification to all parties in this action pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ D. Jacques Smith