## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br> Master File No.: 01-CV-12257-PBS (original S. D. Iowa No. 4:07-cv-00461-JAJ-CFB) |
| THIS DOCUMENT RELATES TO:<br>*State of Iowa v. Abbott Laboratories, et al.* | Judge Patti B. Saris |

## ANSWER AND AFFIRMATIVE DEFENSES OF SMITHKLINE BEECHAM CORPORATION, D/B/A GLAXOSMITHKLINE, TO THE STATE OF IOWA'S COMPLAINT

Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), by and through its attorneys, hereby states as an Answer and Affirmative Defenses to the State of Iowa's Complaint, dated October 9, 2007, as follows:

### PRELIMINARY STATEMENT

The State of Iowa's Complaint (the "Complaint") improperly refers to GSK, other Defendants, and third parties on a collective basis, failing to plead with requisite particularity allegations against GSK.  This is insufficient to apprise GSK of the allegations asserted against it.  GSK has nevertheless attempted to respond to Plaintiff's allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, GSK is generally without knowledge or information sufficient to form a belief as to the truth of those allegations.  GSK states that it is

13277147.1

answering Plaintiff's allegations solely on behalf of itself, even when Plaintiff's allegations refer to alleged conduct by GSK and other persons or entities.

The Complaint also contains purported quotations from a number of sources. In answering allegations consisting of quotations, GSK's failure to deny that the material quoted was contained in a document or was uttered by the person or entity quoted or GSK's reference to the full document instead of the quote shall not constitute an admission that the substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action.

GSK denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically herein admitted, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole. In addition, GSK specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint. GSK specifically denies any allegations contained in, or inferences that could be drawn from, captions or headings used in the Complaint.

These comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

## **SPECIFIC RESPONSES**

1.      GSK admits that the State of Iowa (the "Plaintiff" or the "State") seeks to bring this action as alleged in Paragraph 1 of the Complaint, but GSK denies that there is any basis for the State to do so and denies that the State is entitled to any relief.

13277147.1

2.      To the extent the allegations in Paragraph 2 are directed at GSK, GSK denies them.  GSK specifically denies that it "purposefully report[s] false and inflated price information."  To the extent the allegations in Paragraph 2 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

3-4.  To the extent the allegations in Paragraphs 3-4 are directed at GSK, GSK denies them.  GSK specifically denies that it submits "false and inflated pricing information in order to 'create a spread.'"  GSK further denies the characterization of "spread" in Paragraphs 3-4.  To the extent the allegations in Paragraphs 3-4 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

5.      GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.      To the extent the allegations in Paragraph 6 are directed at GSK, GSK denies them.  GSK specifically denies that it "purposefully manipulate[s] a market that, by defendants' own design, is extremely complicated and non-transparent."  To the extent the allegations in Paragraph 6 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

7-8.  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 7-8.

9.      To the extent the allegations in Paragraph 9 are directed at GSK, GSK denies them.  GSK specifically denies that it engages in any "unlawful price reporting

activity [that] infects all four [pricing] benchmarks and renders each of them false and inflated."  To the extent the allegations in Paragraph 9 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

10.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, except that it admits that it pays Medicaid rebates to Iowa and that such rebates lower the price Iowa Medicaid pays for GSK's prescription drugs.  To the extent the allegations in Paragraph 10 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

11.     To the extent the allegations in Paragraph 11 are directed at GSK, GSK denies them.  GSK specifically denies that it does not accurately report Best Prices.  To the extent the allegations in Paragraph 11 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

12.     To the extent the allegations in Paragraph 12 are directed at GSK, GSK denies them.  GSK specifically denies that it engages in "unlawful pricing schemes," the "manipulation of the Medicaid program" or the "improper reporting of false and inflated pricing information" resulting in "overcharges . . . to the Iowa Medicaid Program."  To the extent the allegations in Paragraph 12 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13.     To the extent the allegations in Paragraph 13 are directed at GSK, GSK denies them.  GSK specifically denies that it engages in "wrongful practices" that have a "pernicious . . . effect on the public fisc."  To the extent the allegations in Paragraph 13

are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

14-15.  GSK admits that it voluntarily participates in the Iowa Medicaid program, but denies that it has violated any State or Federal law.  To the extent the allegations in Paragraphs 14-15 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 14-15 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

16.  To the extent the allegations in Paragraph 16 are directed at GSK, GSK denies them.  GSK specifically denies that it "intentionally report[s] false prices to the government."  To the extent the allegations in Paragraph 16 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

17.  To the extent the allegations in Paragraph 17 are directed at GSK, GSK denies them.  GSK specifically denies that it engages in "fraudulent, unfair and deceptive practices" and that the Plaintiff has suffered "millions of dollars in damages."  To the extent the allegations in Paragraph 17 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

18.  GSK admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiff with respect to any such NDCs.  To the extent the allegations in Paragraph 18 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13277147.1

19.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.  To the extent the allegations in Paragraph 19 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

20.     To the extent that the allegations in Paragraph 20 are directed at GSK, GSK denies them, except GSK admits that it manufactures and sells prescription drugs and that it participates in the Iowa Medicaid Program.  To the extent the allegations in Paragraph 20 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

21.     To the extent the allegations in Paragraph 21 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 21 are directed at GSK, GSK admits that it conducts business in the State of Iowa, but denies any characterization of that business in Paragraph 21.

22-36. The allegations in Paragraphs 22-36 are directed to other Defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 22-36.

37.     With respect to the allegations in Paragraphs 37 and the sub-parts thereof, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") admits that it is a Pennsylvania corporation engaged in the manufacturing and selling of pharmaceuticals and that its principal place of business is One Franklin Plaza, 16th and Race Streets, Philadelphia PA, 19102.  With respect to the allegations concerning GlaxoSmithKline,

13277147.1

plc, GSK admits only that GlaxoSmithKline, plc is a foreign holding company that has not been served with process in this action and is not required to respond to this Complaint.  With respect to the allegations concerning Glaxo Wellcome, Inc., GSK admits only that Glaxo Wellcome, Inc. no longer exists because it was merged into GSK in 2001, and that Glaxo Wellcome, Inc. has not been served with process in this action and is not required to respond to this Complaint.  GSK otherwise denies the allegations in Paragraphs 37 of the Complaint.

38-54. The allegations in Paragraphs 38-54 are directed to other Defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 38-54.

55-58. The allegations in Paragraphs 55-58 are directed to unknown defendants and require no response from GSK.  To the extent a response is deemed to be required, GSK denies that it was involved any wrongful activity related to drug pricing with either named or unknown defendants.  GSK also denies that it has engaged in any "wrongful acts" related to drug pricing and that the Plaintiff has "suffered" any damages as alleged in Paragraphs 55-58.

59.  GSK admits that the State seeks to bring this action as alleged in Paragraph 59, but GSK denies there is any basis for the State to do so and denies that the State is entitled to any relief.

60-61. Paragraphs 60-61 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, GSK denies the allegations

13277147.1

in Paragraphs 60-61, and notes that this captioned matter has been transferred to this Court by the Judicial Panel on Multi District Litigation, pursuant to 28 U.S.C. § 1407.

62.     With respect to the allegations in Paragraph 62, GSK admits that Medicaid was established by Title XIX of the Social Security Act.  GSK further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

63.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, except GSK admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the extent the allegations in Paragraph 63 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

64-65.  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 64-65.  To the extent the allegations in Paragraphs 64-65 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

66.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66, except admits that national drug codes are assigned to prescription drugs.

67.     To the extent the allegations in Paragraph 67 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  GSK otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.  To the extent the allegations in Paragraph 68 refer to an OIG report, the report speaks for itself, and any characterizations thereof are denied.

69.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.  To the extent the allegations in Paragraph 69 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

70.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71-72. To the extent the allegations in Paragraphs 71-72 are directed at GSK, GSK denies them.  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 71-72 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

73-80. GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 73-80 or their subsections.  To the extent the allegations in Paragraphs 73-80 or their subsections refer to statutes, regulations, or government publications those sources speak for themselves, and any characterizations thereof are denied.  GSK specifically denies that it "falsely reported" its prices.

13277147.1

81.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, except that it admits that pricing compendia such as First DataBank publish AWPs and FULs. GSK denies that it has any control over published AWPs or FULs.

82.     To the extent the allegations in Paragraph 82 are directed at GSK, GSK denies them.  GSK specifically denies that it "purposefully and fraudulently conceal[s]" the "true prices" of its drugs.  To the extent the allegations in Paragraph 82 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

83.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83.

84.     To the extent the allegations in Paragraph 84 are directed at GSK, GSK denies them.  GSK specifically denies that it "fraudulently misrepresent[s]" its true prices or that it reports "false and inflated prices."  To the extent the allegations in Paragraph 84 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

85.     To the extent the allegations in Paragraph 85 are directed at GSK, GSK denies them, except that GSK admits that Exhibit A purports to identify total expenditures by Defendant.  GSK specifically denies any "unfair practices, deception, and fraud."  To the extent the allegations in Paragraph 85 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13277147.1

86.     To the extent the allegations in Paragraph 86 are directed at GSK, GSK denies them.  GSK specifically denies conducting any "fraudulent practices."  To the extent the allegations in Paragraph 86 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

87-89. To the extent the allegations in Paragraphs 87-89 are directed at GSK, GSK denies them.  GSK specifically denies that it reports "false and inflated" "WACs or WAC equivalents."  GSK further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 87-89 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

90-92. To the extent the allegations in Paragraphs 90-92 are directed at GSK, GSK denies them.  GSK further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 90-92 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

93-98. To the extent the allegations in Paragraphs 93-98 are directed at GSK, GSK denies them, except GSK admits that it has provided the list price of its drugs to certain industry pricing compendia and that publishers apply their own markups to the list prices.  GSK specifically denies that it "either report[s] or caused to be reported false and inflated AWPs," "false WAC or WAC equivalents," or that GSK "alone control[s] the false and inflated AWPs that are published for [its] drugs."  GSK further states that for

13277147.1

years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 93-98 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

99.     GSK admits that First DataBank is solely responsible for the mark-up it applies to GSK's reported WACs and that, at times, First DataBank has unilaterally changed that mark-up. Otherwise, GSK denies the allegations in Paragraph 99.

100.    To the extent the allegations in Paragraph 100 are directed at GSK, GSK denies them. To the extent the allegations in Paragraph 100 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

101.    To the extent the allegations in Paragraph 101 or the exhibit referenced therein are directed at GSK, GSK denies them. To the extent the allegations in Paragraph 101 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

102-108. To the extent the allegations in Paragraphs 102-108 are directed at GSK, GSK denies them, except that GSK admits that FULs are established by CMS pursuant to applicable laws as interpreted by CMS. To the extent the allegations in Paragraphs 102-108 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13277147.1

109.    The allegations in Paragraph 109 require no response from GSK because the Iowa SMAC claims have been dismissed by the Court.

110-128.   To the extent the allegations in Paragraphs 110-128 are directed at GSK, GSK denies them, except GSK admits that it has executed a rebate agreement with HHS.   GSK further states that the Court has dismissed, as not adequately pled, the Medicaid rebate-related allegations in the Complaint as to GSK.   In any event, the rebate agreement speaks for itself, and any characterizations thereof are denied.   To the extent the allegations in Paragraphs 110-128 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.   To the extent the allegations in Paragraphs 110-128 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

129. In response to the allegations in Paragraph 129, GSK admits that it settled, without an admission of liability, a government investigation regarding relabeling issues with relating to Medicaid, Medicare, and the Kaiser Permanente Medical Care Program. GSK denies any and all characterizations of this settlement and any and all other allegations in this paragraph directed at GSK.   To the extent the allegations in Paragraph 129 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth

130-132.   To the extent the allegations in Paragraphs 130-132 are directed at GSK, GSK denies them, and further states that the Court has dismissed, as not adequately pled, the Medicaid rebate-related allegations in the Complaint as to GSK.   To the extent the allegations in Paragraphs 130-132 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.   To the extent the

13277147.1

allegations in Paragraphs 130-132 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

133.     To the extent the allegations in Paragraph 133 are directed at GSK, GSK denies them.  GSK specifically denies that it has participated in any "pricing scheme . . . by exacerbating the complexities of the  . . . drug market."  To the extent the allegations in Paragraph 133 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

134.     To the extent the allegations in Paragraph 134 are directed at GSK, GSK denies them.  GSK specifically denies that it "purposefully conceal[s its] true prices."  To the extent the allegations in Paragraph 134 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 134 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

135.     To the extent the allegations in Paragraph 135 are directed at GSK, they are denied.  To the extent the allegations in Paragraph 135 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

136.     To the extent the allegations in Paragraph 136 are directed at GSK, they are denied, except GSK admits that certain of its contracts are subject to confidentiality agreements and that GSK offers discounts to certain of its customers.  To the extent the allegations in Paragraph 136 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13277147.1

137.     To the extent the allegations in Paragraph 137 are directed at GSK, GSK denies them.  GSK specifically denies that it "obscure[s] the true prices for [its] drugs with [its] policy of treating different classes of trade differently."   To the extent the allegations in Paragraph 137 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

138-139.   To the extent the allegations in Paragraphs 138-139 are directed at GSK, GSK denies them.  GSK specifically denies that it "maintain[s] two sets of pricing records:  one with [] inflated prices and another with [] actual prices."  To the extent the allegations in Paragraphs 138-139 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 138-139 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

140-141. To the extent the allegations in Paragraphs 140-141 are directed at GSK, GSK denies them.  GSK specifically denies that it "hide[s its] real drugs prices by secretly providing free drugs and phony grants" or that it conceals its true prices "to create spreads between actual cost and reimbursement amounts . . . to influence market share."  To the extent the allegations in Paragraphs 140-141 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

142.     In response to the allegations in paragraph 142, GSK admits that J.P. Garnier was the chief executive officer of GSK in 2003 and that Dr. Garnier spoke to shareholders in 2003.  GSK avers that the record of Dr. Garnier's remarks to shareholders speaks for itself.   GSK specifically denies any characterization of these remarks in

paragraph 142.  GSK further denies that it marketed "spreads" and benefited from any such "spreads."

143.     To the extent the allegations in Paragraph 143 are directed at GSK, GSK denies them.   GSK also denies that Exhibit B "demonstrate[s]" any allegation in paragraph 143.   GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraph 143 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

144-145. To the extent the allegations in Paragraphs 144-145 are directed at GSK, GSK denies them.  GSK specifically denies that it has engaged in any "unlawful and undisclosed manipulation of the price reporting system" or caused the "publication of a false WAC," AWP, or FUL.  To the extent the allegations in Paragraphs 144-145 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

146.     To the extent the allegations in Paragraph 146 are directed at GSK, GSK denies them.  GSK specifically denies that it has "caus[ed] false prices to be published." To the extent the allegations in Paragraph 146 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

147.     To the extent the allegations in Paragraph 147 are directed at GSK, GSK denies them.  GSK specifically denies that it "submit[s] false and inflated wholesale price information in order to create a spread."  GSK further denies the characterization of

13277147.1

"spread" in Paragraph 147.  To the extent the allegations in Paragraph 147 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

148.    To the extent the allegations in Paragraph 148 are directed at GSK, GSK denies them.  GSK specifically denies that it has "corrupted the market for prescription drugs" or has "deliberately sought to create a powerful financial incentive for providers to prescribe drugs based primarily on the spread."   GSK further denies the characterization of "spread" in Paragraph 148.  To the extent the allegations in Paragraph 148 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

149-150. To the extent the allegations in Paragraphs 149-150 are directed at GSK, GSK denies them.  GSK specifically denies that it "market[s its] products based on the spread between reimbursement (based on AWP, WAC, or a WAC equivalent) and actual acquisition cost" or that it "compete[s] on reimbursement and profit rather than cost."  To the extent the allegations in Paragraphs 149-150 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

151-152. To the extent the allegations in Paragraphs 151-152 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraphs 151-152 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 151-152 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

13277147.1

153-154.  To the extent the allegations in Paragraphs 153-154 are directed at GSK, GSK denies them.  GSK specifically denies that it has "intentionally manipulat[ed] the nation's drug reimbursement system . . . with false and inflated prices."  To the extent the allegations in Paragraphs 153-154 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

155-157.  To the extent the allegations in Paragraphs 155-157 are directed at GSK, GSK denies them.  GSK specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it engages in "purposeful AWP manipulation."  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 155-157 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 155-157 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

158.     To the extent the allegations in Paragraph 158 are directed at GSK, GSK denies them.  GSK specifically denies that it reports "price information that . . . does not comply with the HHS OIG's guidelines" by not accounting for various types of discounts.  To the extent the allegations in Paragraph 158 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

159-165. GSK denies knowledge or information to form a belief as to the truth of the allegations in Paragraphs 159-165, except, to the extent that the allegations in

13277147.1

Paragraphs 159-165 are directed at GSK, GSK admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for GSK drugs.  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 159-165 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

166.    To the extent the allegations in Paragraph 166 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 166 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

167-171.  To the extent that the allegations in Paragraphs 167-171 are directed at GSK, GSK denies them, except GSK denies knowledge or information sufficient to form a belief as to the truth of the allegation that the "Iowa Medicaid Program spent over $1.6 billion for defendants' drugs between 1992 and 2005 alone."  GSK specifically denies that it "knowingly interfered with Iowa's ability to reimburse providers at EAC."  To the extent the allegations in Paragraphs 167-171 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

172-177. With respect to the allegations in Paragraphs 172-177, GSK admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein.  To the extent the remaining allegations in Paragraphs 172-177 or Exhibit B are directed at GSK, GSK denies them.

13277147.1

GSK specifically denies that it "routinely submitted false prices" to pricing compendia. GSK further denies the characterization of "spread" in Paragraphs 172-177 and Exhibit B.  To the extent the allegations in Paragraphs 172-177 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

178.    To the extent the allegations in Paragraph 178 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 178 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

179.    To the extent the allegations in Paragraph 179 are directed at GSK, GSK denies them, except GSK admits that its contracts with purchasers sometimes included discounts.  To the extent the allegations in Paragraph 179 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

180.    To the extent the allegations in Paragraph 180 or the exhibit referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 180 or the exhibit referenced therein are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

181-381. The allegations in Paragraphs 181-381 are directed to other Defendants and require no response from GSK.  To the extent any allegation in Paragraph 405-613 is deemed to refer to GSK, GSK denies the allegation.  To the extent a response is deemed to be required, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 181-381.

13277147.1

382.     GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 382 or its footnote or the exhibit referenced therein.   No response is required to the Plaintiff's characterizations of their own claims.   GSK specifically denies that the Plaintiff's claims have merit and that it engaged in any "fraud."

383.     GSK denies the allegations in Paragraph 383 and the exhibit referenced therein.

384.     GSK denies the allegations in Paragraph 384.

385.     GSK denies the allegations in Paragraph 385, except that GSK admits that prior to the merger that formed GSK, Glaxo Wellcome, Inc. and SmithKline Beecham Corporation competed in the physician-administered injectible anti-emetic market with the products Zofran and Kytril, that the companies were sometimes aware of the acquisition costs paid by their customers for the anti-emetic they sold them, and that the companies were generally aware of their own and their competitors' published AWPs for such injectible anti-emetics.   GSK further avers that these allegations have nothing to do with this case because the Plaintiff previously settled all claims relating to price reporting and marketing of Zofran and Kytril injectibles.

386.     GSK denies the allegations in Paragraph 386, except that GSK admits that in 1996 Glaxo Wellcome, Inc. increased its list price for Zofran injectibles and offered discounts to some of its customers.   GSK further avers that these allegations have nothing to do with this case because the State of Iowa previously settled all claims relating to price reporting and marketing of Zofran and Kytril injectibles.

13277147.1

387.    GSK denies the allegations in Paragraph 387, except that GSK admits that Glaxo Wellcome, Inc., employees typically considered the potential impact of list price increases prior to implementing them and sometimes communicated their analysis in writings, which speak for themselves.  GSK further avers that these allegations have nothing to do with this case because the Plaintiff previously settled all claims relating to price reporting and marketing of Zofran and Kytril injectibles.

388.    GSK denies the allegations in Paragraph 388, except that GSK admits that Glaxo Wellcome, Inc. employees typically considered the potential impact of list price increases prior to implementing them and sometimes communicated their analysis in writings, which speak for themselves.  GSK further avers that these allegations have nothing to do with this case because the Plaintiff previously settled all claims relating to price reporting and marketing of Zofran and Kytril injectibles.

389.    GSK denies the allegations in Paragraph 389, except that GSK admits that it has settled AWP claims relating to Zofran and Kytril injectibles with the Plaintiff.

390.    GSK denies the allegations in Paragraph 390, except that GSK admits that for certain products it sometimes offered discounts to certain customers.

391.    GSK denies the allegations in Paragraph 391, except that admits that J.P. Garnier was the chief executive officer of GSK in 2003 and that Dr. Garnier spoke to shareholders in 2003.  GSK avers that the record of Dr. Garnier's remarks to shareholders speaks for itself.  GSK specifically denies that GSK or Dr. Garnier "deliberately concealed" facts, and that GSK generally "competed on spread and benefited from spread."

13277147.1

392.     GSK denies the allegations in Paragraph 392, including in particular that it engaged in "wrongdoing," and admits only that GSK has been the subject of lawsuits concerning price reporting issues by the other governmental entities named in Paragraph 392, several of which have been resolved without any admission of liability by GSK.

393.     GSK denies the allegations in Paragraph 393, except that it admits that in 2003, without admitting liability for any of its actions, it entered into civil settlement agreements with the United States and various states, including the State of Iowa, to settle certain civil and administrative claims relating to allegations that GSK failed to report its "best price" under the Medicaid Rebate statute, 42 U.S.C. § 1396r-8, for two of its products (Flonase and Paxil) for certain quarters, which agreements speak for themselves.

394.     GSK denies the allegations in Paragraph 394, except that GSK admits that at the time it entered into the 2003 Settlement described in its answer to Paragraph 393 above, it entered into a Corporate Integrity Agreement ("CIA") with the Office of the Inspector General of the United States Department of Health and Human Services, which CIA speaks for itself.

395.     To the extent the allegations in Paragraph 395 refer to the CIA described in GSK's response to Paragraph 394 above, the CIA speaks for itself, and any characterizations thereof are denied.

396.     To the extent the allegations in Paragraph 396 refer to the CIA described in GSK's response to Paragraph 394 above, the CIA speaks for itself, and any characterizations thereof are denied.

13277147.1

397.    To the extent the allegations in Paragraph 397 refer to the CIA described in GSK's response to Paragraph 394 above, the CIA speaks for itself, and any characterizations thereof are denied.

398.    To the extent the allegations in Paragraph 398 refer to the CIA described in GSK's response to Paragraph 394 above, the CIA speaks for itself, and any characterizations thereof are denied.

399.    GSK denies the allegations in Paragraph 399 and further responds that it is without sufficient information or belief to answer the allegations concerning the House Committee on Energy and Commerce.

400.    GSK denies the allegations in Paragraph 400, except that GSK admits that it has received requests for information from certain Congressional committees concerning drug pricing issues.  GSK further avers that the prices it reported to the commercial price reporting services were list prices that were well-understood not to include discounts and pricing concessions, if any, and that GSK has properly accounted for its sales in its Best Price determinations.  To the extent the allegations in Paragraph 400 refer to Exhibit F to the Complaint, that Exhibit speaks for itself, and any characterizations thereof are denied.

401.    GSK denies the allegations in Paragraph 401, except that GSK admits that in 2000 GSK sold 15mg Zantac tablets to East Jefferson Hospital at the stated price, that First Data Bank published an AWP at that time of $1.79 per pill, and that the Plaintiff makes the allegations set forth in the last sentence.  GSK specifically denies that it engaged in any unlawful activity or that there were "actionable spreads" on Zantac or any of the other products listed in Exhibit B-16 of the Complaint

13277147.1

402.    GSK denies the allegations in Paragraph 402, except that GSK avers that the prices it reported to the commercial price reporting services were list prices that were well-understood not to include discounts and pricing concessions, as were the AWPs published by those services.

403.    GSK denies the allegations in the first sentence of Paragraph 403, including in particular the allegation that the Zantac AWP was "false."  GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 403.

404.    GSK denies the allegations in Paragraph 404 and specifically avers that it considered and treated all sales and prices appropriately for purposes of determining and reporting AMP and Best Price, and further avers that the prices it reported to the commercial price reporting services were list prices that were well-understood not to include discounts and pricing concessions, if any

405-613.    The allegations in Paragraphs 405-613 are directed to other Defendants and require no response from GSK.  To the extent any allegation in Paragraph 405-613 is deemed to refer to GSK, GSK denies the allegation.  To the extent a response is deemed to be required to the remaining paragraphs, GSK denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 405-613.

614-616. To the extent the allegations in Paragraphs 614-616 are directed at GSK, GSK denies them, except GSK denies knowledge or information sufficient to form a belief as to the truth of the allegation that Iowa's Medicaid program "spent over $1.6 billion for defendants' drugs in state and federal dollars from 1992 through 2005 alone."

13277147.1

GSK specifically denies that it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched."  To the extent the allegations in Paragraphs 614-616 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

617-632.   To the extent the allegations in Paragraphs 617-632 are directed at GSK, GSK denies them.  GSK further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 617-632 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 630 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

## COUNT I

### VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8
### (FAILURE TO COMPLY WITH FEDERAL MEDICAID REBATE PROVISION)

633.    In response to Paragraph 633, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 632.

634-642. To the extent the allegations in Paragraphs 634-642 are directed at GSK, GSK states that the Court has dismissed, as not adequately pled, the claim to which these allegations relate.  To the extent that a response is still required, GSK denies the allegations as to itself.  To the extent the allegations in Paragraphs 634-642 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

13277147.1

## COUNT II
## BREACH OF CONTRACT

643.    In response to Paragraph 643, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 642.

644-651.    To the extent the allegations in Paragraphs 644-651 are directed at GSK, GSK states that the Court has dismissed, as not adequately pled, the claim to which these allegations relate.  To the extent that a response is still required, GSK denies the allegations as to itself.  To the extent the allegations in Paragraphs 644-651 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.

## COUNT III
## IOWA CONSUMER FRAUD ACT
### (Iowa Code § 714.16)

652.    In response to Paragraph 652, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 651.

653.    To the extent the allegations in Paragraph 653 and the exhibits referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraph 653 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 653 refers to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

654-657. To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto are directed at GSK, GSK denies them.  To the extent the allegations in

13277147.1

Paragraphs 654-657 and the sub-parts thereto are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto refer to statutes, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto contain legal conclusions, no response is required.

## COUNT IV
## FRAUD

658.    In response to Paragraph 658, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 657.

659-662.        To the extent the allegations in Paragraphs 659-662 and the exhibits referenced therein are directed at GSK, GSK denies them.  To the extent the allegations in Paragraphs 659-662 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 659-662 refer to Iowa law, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 659-662 contain legal conclusions, no response is required.  To the extent this claim, as directed at GSK, does not satisfy Fed. R. Civ. P. 9(b), it has been dismissed and no response is required.

## COUNT V
## UNJUST ENRICHMENT

663.    In response to Paragraph 663, GSK repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 662.

13277147.1

664-666.        To the extent the allegations in Paragraphs 664-666 are directed at GSK, GSK denies them.  To the extent the allegations in Paragraphs 664-666 are directed at parties other than GSK, GSK denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 664-666 contain legal conclusions, no response is required.  To the extent this claim, as directed at GSK, has been dismissed, no response is required.

667-675.        GSK denies that the State is entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 667-675 of the Complaint.

**WHEREFORE**, GSK demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

GSK reasserts and incorporates herein by reference the assertions of paragraphs 1 through 675 hereof.

### First Affirmative Defense

Plaintiff fails to state a claim against GSK upon which relief may be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because it did not rely on any alleged misrepresentations or fraud by GSK.  Plaintiff knew that providers could obtain GSK drugs at prices below AWP prior to the relevant time period stated in the Complaint.

13277147.1

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the political question and separation of powers doctrines.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the filed rate doctrine.

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the state action doctrine.

### Sixth Affirmative Defense

To the extent Plaintiff obtains recovery in any other case predicated on the same factual allegations, Plaintiff is barred from seeking recovery against GSK based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

### Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by GSK in judicial, legislative, or administrative proceedings of any kind or at any level of government.

### Eighth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims.

13277147.1

## Ninth Affirmative Defense

Plaintiff's state law claims are preempted, in whole or in part, by federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, the Federal Medicaid Act, and the Prescription Drug, Improvement and Modernization Act of 2003, including all amendments to the same and all regulations promulgated thereunder.

## Tenth Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

## Eleventh Affirmative Defense

Plaintiff fails to state with particularity facts to support claims of fraudulent conduct, fraudulent concealment and the multi-source allegations against GSK contained in the Complaint.

## Twelfth Affirmative Defense

Any and all actions taken by GSK with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

## Thirteenth Affirmative Defense

GSK's statements or actions were not the proximate cause or cause in fact of any injury to or alleged loss by Plaintiff.

13277147.1

### Fourteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a consumer within the meaning of the Iowa Consumer Fraud Act.

### Fifteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a person within the meaning of the Iowa Consumer Fraud Act.

### Sixteenth Affirmative Defense

Some or all of Plaintiff's claims against GSK arise from Plaintiff's failure to follow its federal and state statutory and regulatory obligation to set reimbursement rates at Estimated Acquisition Cost.

### Seventeenth Affirmative Defense

GSK denies that Plaintiff has a valid consumer protection claim against GSK under the Iowa Consumer Fraud Act.  However, if such claim is found to exist, GSK pleads all available defenses under the Act.

### Eighteenth Affirmative Defense

To the extent that Plaintiff attempts to seek equitable relief against GSK, Plaintiff is not entitled to such relief because Plaintiff has an adequate remedy at law.

### Nineteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

13277147.1

## Twentieth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of consent and/or ratification to the extent that Plaintiff has received and paid for medicines manufactured, marketed and sold by GSK after the filing of the Complaint.

## Twenty-First Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because the damages alleged are speculative and remote and because of the impossibility of ascertaining and allocating those alleged damages.

## Twenty-Second Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, due to their failure to join indispensable parties.

## Twenty-Third Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, because Plaintiff has not suffered damages as a result of the matters alleged in the Complaint.

## Twenty-Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, (1) because Plaintiff failed to mitigate damages, and that failure to mitigate damages should proportionately reduce the recovery of such persons and the allocation of any fault, if any exists, attributable to GSK; (2) because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint; and (3) because damages are speculative and remote and because of the impossibility of ascertaining and allocating alleged damages.

13277147.1

### Twenty-Fifth Affirmative Defense

GSK is entitled to a set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered by Plaintiff, with respect to the same alleged injuries.

### Twenty-Sixth Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, by the First Amendment to the United States Constitution and the analogous provisions of the Iowa Constitution.

### Twenty-Seventh Affirmative Defense

Plaintiff's claims against GSK are preempted by the Commerce Clause and/or the dormant Commerce Clause of the United States Constitution.

### Twenty-Eighth Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, because they violate GSK's rights under the Due Process and *Ex Post Facto* clauses of the United States Constitution, as well as the Iowa Constitution, insofar as Plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Twenty-Ninth Affirmative Defense

Plaintiff's claims against GSK are barred because Plaintiff and/or its agents knew and were aware that AWP was not an actual average of wholesale prices or the actual acquisition cost of pharmaceuticals.  Legal and equitable principles preclude this action for damages and injunctive relief.

13277147.1

### Thirtieth Affirmative Defense

The claims alleged herein, based on the facts alleged, are barred in whole or in part by Plaintiff's own negligence or gross negligence and the doctrines of comparative and/or contributory negligence.  Among other things, the claims disregard Iowa's obligations under federal law.

### Thirty-First Affirmative Defense

Plaintiff's prayers for relief in the form of restitution are barred, in whole or in part, because GSK did not retain any money belonging to Plaintiff as a result of any alleged overpayments.

### Thirty-Second Affirmative Defense

Plaintiff has failed to plead with particularity allegations of fraud by GSK contained in the Complaint.

### Thirty-Third Affirmative Defense

Plaintiff's claims for fraud and fraudulent concealment are barred because the Plaintiff cannot predicate a claim for fraud on reliance by a third party.

### Thirty-Fourth Affirmative Defense

Plaintiff's claims against GSK are barred because Plaintiff lacks standing or capacity to bring the some or all of the claims asserted against GSK under Iowa law.

### Thirty-Fifth Affirmative Defense

Plaintiff's claims against GSK are barred in whole or in part by the doctrine of voluntary payment.

13277147.1

### Thirty-Sixth Affirmative Defense

Plaintiff's claims against GSK for injunctive relief were mooted by the passage of the 2003 Medicare reform legislation.

### Thirty-Seventh Affirmative Defense

Plaintiff's claims against GSK for unjust enrichment are barred because the Complaint does not allege that Defendants received any payment or property from the Plaintiff.

### Thirty-Eighth Affirmative Defense

Plaintiff's claims against GSK for injunctive relief against GSK are barred by the doctrines of *in pari delicto* and/or unclean hands.

### Thirty-Ninth Affirmative Defense

Plaintiff's claims against GSK are misjoined with Plaintiff's claims against other Defendants and must be severed.

### Fortieth Affirmative Defense

Any damages recovered by the Plaintiff must be limited by any applicable statutory ceiling on recoverable damages.

### Forty-First Affirmative Defense

To the extent punitive damages are sought, Plaintiff's punitive damages claims against GSK (1) have no basis in law or fact; (2) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against GSK; (3) cannot be sustained because the laws regarding the standards

for determining liability for, and the amount of, punitive damages fail to give GSK prior notice of the conduct for which punitive damages may be imposed and the severity of the penalty that may be imposed and are void for vagueness in violation of GSK's due process rights guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution; (4) cannot be sustained because any award of punitive damages exceeding the limits authorized by the laws or other comparable laws would violate GSK's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and be improper under the Iowa Constitution and Iowa common law.

### Forty-Second Affirmative Defense

Plaintiff fails to allege facts or a cause of action against GSK sufficient to support a claim for prejudgment interest or any other relief.

### Forty-Third Affirmative Defense

Plaintiff has not suffered, and will not suffer, any injuries to a legally protected or cognizable interest by reason of the conduct of GSK as alleged in the Complaint.

### Forty-Fourth Affirmative Defense

Plaintiff's claims against GSK are barred because GSK has complied with all applicable regulations of the federal and state governments.

13277147.1

## Forty-Fifth Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, because any injuries sustained by Plaintiff were the result of intervening or superseding conduct of third parties.

## Forty-Sixth Affirmative Defense

Plaintiff's claims against GSK are barred, in whole or in part, because GSK did not make any false statements to the Plaintiff.  As to any statement asserted against GSK that Plaintiff alleges to be false or misleading, GSK had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading.

## Forty-Seventh Affirmative Defense

Plaintiff fails to allege facts or a cause of action sufficient to support a claim against GSK for compensatory damages, attorneys' fees, enhanced damages, treble damages and/or legal fees or costs.

## Forty-Eighth Affirmative Defense

Plaintiff fails to allege facts or a cause of action sufficient to support a claim against GSK for compensatory damages, attorneys' fees, enhanced damages, treble damages and/or legal fees or costs.

## Forty-Ninth Affirmative Defense

Plaintiffs are not intended beneficiaries of the Medicaid Rebate Agreement between GSK and the Federal government, and Plaintiffs have no standing to bring any

13277147.1

claims that relate to the calculation or payment of Medicaid rebates.  Such claims may be brought against GSK only by the Federal government.

## Fiftieth Affirmative Defense

To the extent punitive damages are sought, Plaintiffs' damages claims against GSK cannot be sustained because an award of punitive damages would violate the United States Constitution, Excessive Fines Clause of the Eighth Amendment, U.S. Const. amend. VIII and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 and the analogous provisions contained in the Constitutions of the State of Iowa and any other States whose laws are or become relevant in the course of this lawsuit.

## Fifty-First Affirmative Defense

GSK adopts by reference any additional applicable defense pled by any other Defendant not otherwise pled herein.

## Fifty-Second Affirmative Defense

GSK hereby gives notice that it intends to rely upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserve its right to amend its Answer to assert such defense.

Respectfully submitted,

/s/ Frederick G. Herold
   Frederick G. Herold
   DECHERT, LLP
   2440 W. El Camino Real, Ste. 700
   Mountain View, CA 94040-1499
   Tel: (650) 813-4930
   Fax: (650) 813-4848

13277147.1

Mark H. Lynch
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-7566
Tel: (202) 662-6000
Fax: (202) 662-6291

-and-

Brian K. French
NIXON PEABODY, LLP
100 Summer Street
Boston, MA 02110-2131
Tel: (617) 345-1000
Fax: (617) 345-1300

*Attorneys for Defendant SmithKline
Beecham Corporation d/b/a
GlaxoSmithKline*

13277147.1

## <u>CERTIFICATE OF SERVICE</u>

I, Frederick G. Herold, hereby certify that, on September 18, 2008, I caused a copy of **ANSWER AND AFFIRMATIVE DEFENSES OF SMITHKLINE BEECHAM CORPORATION, D/B/A GLAXOSMITHKLINE, TO THE STATE OF IOWA'S COMPLAINT** to be served on all counsel of record by sending a copy to Lexis-Nexis File & Serve for posting and notification to all parties.

/s/ Frederick G. Herold
    Frederick G. Herold

13277147.1