UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | Civil Action No. 01-CV-12257 PBS |
| THE BMS CLASS 1 SETTLEMENT | Hon. Patti B. Saris |

**MEMORANDUM OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY:**

**(1) IN OPPOSITION TO PLAINTIFFS' MOTION TO PRELIMINARILY APPROVE THEIR PROPOSED PLAN OF DISTRIBUTION FOR THE BMS CLASS 1 SETTLEMENT; AND**

**(2) IN SUPPORT OF ITS CROSS-MOTION FOR A CONFERENCE ON A DISTRIBUTION PLAN AND OTHER SETTLEMENT ISSUES**

Preliminary Statement

Class counsels' papers do not explain in any reasonable detail the proposed distribution plan that they are asking this Court to approve preliminarily in Class 1's settlement of claims against Bristol-Myers Squibb Company ("BMS"). That is ground enough to deny their motion. However, the few contours of the plan outlined in plaintiffs' motion papers already show that it is objectionable for several reasons.

For example, Class counsel propose to double or triple claims on <u>single-source</u> BMS drugs, like Paraplatin, that had "spreads" <u>below</u> the 30% "speed limit" and as to which the Court found no liability whatsoever in its June 21, 2007 Findings of Fact and Conclusions of Law (the "July 21 Opinion"). In other words, Class counsel want to double or triple the "claims" of people who were not harmed at all.

Moreover, Class counsel would allow claimants who received <u>multi-source</u> drugs, like injectible etoposide, to recover double or triple a claim without any proof that they even received the BMS version (Vepesid) of the drug. Class counsel cite to the proof of claim forms for other settlements such as AstraZeneca's as precedent, but that settlement involved only one single-source drug (Zoledex) and cannot rationally provide a model for administration of the settlement of the BMS multi-source drugs.

Third, even when a Class member has arguably been damaged and can make a valid claim, the <u>amounts</u> that Class counsel propose to recognize bear no rational relationship to the member's alleged loss. They write that a "Total Recognized Claim" will equal "the [member's] co-payment amounts owed for each administration" based on CMS data.[1] If, by this, counsel intend to recognize claims equal to double or triple a beneficiary's <u>entire</u> co-payment

---

[1] Class Counsel's Memorandum of Law In Support of Motion To Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement ("Class Counsel's Mem.") at 3).

instead of some portion of the co-payment that was allegedly inflated, it must be rejected. Obviously, Medicare beneficiaries were supposed to pay *some* co-payment. Yet, if counsel have some plan to "recognize" only some portion of the co-payment, they have not explained how that is to be calculated and how it rationally relates to a Class member's alleged damages.

Class counsel contend that the parties' single-page Memorandum of Understanding ("MOU") for the Class 1 settlement did not give BMS a "veto" power over Class Counsel's proposed plan of distribution. This is a red herring. Neither did it give Class counsel *carte blanche* to propose windfall amounts to people who did not receive a BMS drug or who paid only the normal co-payment on a drug as to which there were no appreciable spreads beyond the "Publications'" 20%-25% mark-up. The point is that the MOU is silent on these and many other issues and, therefore, they are appropriate subjects of the Court's equitable jurisdiction over class action settlements.

As a result of the Court's decision to apply the 30% speed limit in its July 21 Opinion to Class 1 as well as to Classes 2 and 3, Class counsel have more settlement funds ($13 million) under the MOU than potential viable claims of Class 1 members against BMS. Dr. Hartman's own Class 1 damages analysis adjusted for the 30% speed limit yields maximum damages of $ 4 million. BMS is concerned that Class counsel are therefore looking for ways to "give away" the settlement money to justify a fee application based on the $13 million.

The parties have exhausted their efforts to resolve their differences through the Court-appointed mediator, Eric Green. Accordingly, BMS respectfully requests that the Court deny plaintiffs' motion and instead grant BMS's cross-motion for a conference to discuss distribution and other settlement issues so that the BMS Class 1 settlement may move forward.

Facts

Class 1's claims against BMS were scheduled for trial on July 23, 2007. On the morning of June 21, 2007, Mr. Green telephoned the Court to report the likely settlement of all three Classes' claims against BMS and to request the Court to defer the issuance of its opinion regarding the Massachusetts-only Class 2/3 trial. The Court responded that it had already signed the opinion and that it was in the process of being issued. The June 21 Opinion soon followed.

Four days later, on Monday, June 25, 2007, Class counsel and counsel for BMS, with the continued assistance of Mr. Green, were able to reach a binding MOU for the settlement of Class 1's claims. The single-page document provides for BMS to pay $13 million plus one-half of the cost of notice to the Class up to $1 million. The parties' counsel negotiated the $13 million figure based, in part, on the Class 1 damages calculations of plaintiffs' expert, Dr. Hartman. Those calculations were based on the assumption that the "30% speed limit" for expected spreads that Dr. Hartman had articulated for purposes of Classes 2 and 3 did not apply to Class 1. See Declaration of Lyndon M. Tretter, dated September 17, 2008 ("Tretter Decl."), at ¶ 3.

The next week, at a hearing before the Court on Tuesday, July 3, 2007, the Court made clear to all counsel that its June 21 Opinion had "rejected plaintiffs' position [of] per se liability for Class 1 and that . . . the 30 percent speed limit should apply to Class 1 as well." 7/3/08 Tr. at 9. Class counsel, Steve Berman, expressed surprise. He stated, "[a]t the time that we negotiated [the BMS Class 1] settlement both sides thought that was a risk that could go either way." Id. Under Dr. Hartman's calculations, applying the 30% speed limit to Class 1 would have reduced the Class 1 maximum damages at trial – let alone a negotiated settlement amount – to approximately $4 million. See Tretter Decl. at ¶ 3.

3

Over the past year, Class counsel and BMS have attempted to move from the one-page June 25, 2007 MOU to a formal settlement agreement and the accompanying documentation necessary to present a Class 1 BMS settlement to the Court.  At the same time, counsel have -- without success -- engaged in negotiations aimed at resolving the remaining Class 2 and Class 3 claims that are presently the subject of a pending motion for nationwide class certification.  Having exhausted the good offices of the Court-appointed mediator, BMS believes that it is the parties' disputes need to be resolved by this Court.

### Argument

As Mr. Berman's statement at the July 3, 2007 hearing made abundantly clear, Class counsel and BMS were acting under a "mutual mistake" as to the June 21 Opinion's application of the 30% speed limit to Class 1 claims at the time they entered into the June 25th MOU.  Using plaintiffs' own expert's calculations, Class 1's claims at trial were worth no more than $4 million; yet, they have a settlement fund worth $13 million.

BMS is not trying to rescind the MOU based on mutual mistake.  Nor does it seek a reversion to it of money not claimed by Class 1 members.  BMS simply wants (a) Class 1 members' recoveries to be rationally related to whether or not they were administered a BMS drug that had a spread of greater than 30% and (b) for any unclaimed funds to be available to pay claims of Class 2 or 3 members should there be any future judgment or settlement affecting those Classes.  After that, as Class counsel has proposed, the remaining funds may be distributed to an appropriate charity.

There is no question that this Court has equitable jurisdiction to determine whether a distribution plan is fair (or in this case unduly generous) to class members. In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F.Supp.2d 249, 262 (D.N.H. 2007). Further, under the cy pres doctrine (sometimes also called "fluid recovery" doctrine), the Court has the power to decide what should become of funds that remain after legitimate claims of class members have been satisfied. Id.; see also In re Neurontin Mktg. and Sale Practices Litig., 244 F.R.D. 89, 113 (D. Mass 2007) (Saris, J.) (citing Masters v. Wilhelmina Model Agency, Inc., 473 F.2d 423, 436 (2d Cir. 2007)). This is especially true where, as here, the parties negotiating the settlement were acting under an "erroneous assumption" about the legitimate extent of the losses of suffered by the class. Friedman v. Landsdale Parking Auth., No. Civ. A. 92-7257, 1995 WL 141467, at *4 - 5 (E.D. Pa. March 31, 1995).

As matters now stand, the major "sticking points" for resolution by the Court are these:

1.      Class counsel wish to award the bulk of the $13 million Class 1 BMS settlement to persons who were administered Paraplatin or Taxol, both of which drugs (at least through 2001 for Taxol) the Court noted in its June 21 Opinion had spreads of less than 30% and/or for which BMS achieved 80%-90% of its sales at or close to the published list prices. In re Pharm. Indus. AWP Lit., 491 F.Supp.2d 20, 106 (D. Mass 2007). Thus, Class counsel would distribute most of the settlement funds to persons who, as this Court has ruled as a matter of law in the Johnson & Johnson Class 1 case, suffered no harm whatsoever.

2. Class counsel also wish to award double or triple amounts to Class 1 members who received any manufacturers' version of injectible etoposide or cyclophosphamide. BMS believes that only persons who have some claim to having received the BMS version of the drug (i.e., Vepesid or Cytoxan) should receive compensation and certainly some proof of that fact should be required before they are awarded double or treble damages.

3. Class counsel apparently wish to quantify a class member's claim *before* doubling or trebling in terms of the <u>entire</u> co-payment that he or she made. BMS believes that a Class 1 member's claim cannot logically comprise the entire co-payment amount, but only some portion of the amount that is rationally related to the alleged AWP inflation.

4. BMS wants the settlement documents to make clear that Class counsel will not seek to "double dip" (that is, seek compensation for the same services more than once) in its fee applications between and among (a) the Class 1 settlement; (b) the Massachusetts Class 2/3 trial; and (c) a judgment or settlement of a future Class 2 or 3 case, if any. Class counsel has refused to negotiate on this point.

BMS submits that Class counsel have a conflict: they are trying to exhaust $13 million in the Class 1 settlement to justify a fee application based on that amount instead of allowing for the possibility that any of those funds might be used to settle the claims of or pay judgments to Class 2 or 3 members – for whom Class counsel would like to make a separate fee application. Accordingly, Class counsel has proposed a "distribution plan" for Class 1 that is designed to provide double and treble "damages" to people who were not harmed or who did not even receive a BMS drug.

Conclusion

For all of the above reasons, Plaintiffs' motion to preliminarily approve their proposed plan of distribution for the BMS Class 1 settlement should be denied and the Court should schedule a conference with the parties' counsel to discuss an appropriate distribution plan and other issues relevant to completing the BMS Class 1 settlement agreement.

Dated: Boston, Massachusetts
September 19, 2008

Respectfully submitted,

**DWYER & COLLORA, LLP**
By: /s/ Thomas E. Dwyer (BBO#139660)
    Thomas E. Dwyer (BBO# 139660)
    Jennifer M. Ryan (BBO#661498)
600 Atlantic Avenue
Boston, MA  02210
Tel:  (617) 371-1000
Fax:  (617) 371-1037
tdwyer@dwyercollora.com
jryan@dwyercollora.com


**HOGAN & HARTSON LLP**

Steven M. Edwards, Esq. (SE 2773)
Lyndon M. Tretter (LT 4031)
Thomas J. Sweeney (TS 6557)
875 Third Avenue
New York, NY  10022
Tel:  (212) 918-3640
Fax:  (212) 918-3100

*Attorneys for Defendants Bristol-Myers Squibb Company, Oncology Therapeutics Network Corporation and Apothecon, Inc.*

7

**CERTIFICATE OF SERVICE**

I, Joanna Wasick, hereby certify that on September 19, 2008, I have caused true and correct copies of the foregoing Memorandum of Defendant Bristol-Myers Squibb Company (1) in Opposition to Plaintiffs' Motion to Preliminarily Approve their Proposed Plan of Distribution for the BMS Class 1 Settlement; and (2) in support of its Cross-,motion for a Conference on a Distribution Plan and Other Settlement Issues, with attached exhibits, to be served on all counsel of record by electronic service, pursuant to Paragraph 11 of the Case Management Order No. 2, by sending a copy to Lexis/Nexis for posting and notification to all parties.

Dated:  New York, New York
        September 19, 2008

                                                         /s/  Joanna Wasick