## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <hr> THIS DOCUMENT RELATES TO: *State of Iowa v. Abbott Laboratories, et al.* | MDL No. 1456 <br> Master File No.: 01-CV-12257-PBS <br> (original S. D. Iowa No. 4:07-cv-00461-JAJ-CFB) <br><br> Judge Patti B. Saris |

### ANSWER AND AFFIRMATIVE DEFENSES OF KING PHARMACEUTICALS, INC., KING PHARMACEUTICALS RESEARCH AND DEVELOPMENT, INC. AND MONARCH PHARMACEUTICALS, INC. TO THE STATE OF IOWA'S COMPLAINT

Defendants King Pharmaceuticals, Inc., King Pharmaceuticals Research and Development, Inc. and Monarch Pharmaceuticals, Inc. (referred to hereinafter collectively in the singular as "King"), by and through its attorneys, hereby states as an Answer and Affirmative Defenses to the State of Iowa's Complaint, dated October 9, 2007, as follows:

### PRELIMINARY STATEMENT

The State of Iowa's Complaint (the "Complaint") improperly refers to King, other Defendants, and third parties on a collective basis, failing to plead with requisite particularity the factual and legal allegations against King. Furthermore Plaintiff has not complied with Fed.R.Civ.P. 8, 9, 18, 19 and 20. This is insufficient to apprise King (and each separate defendant) of the allegations asserted against it. King has nevertheless attempted to respond to Plaintiff's allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, King is generally without knowledge or information sufficient to form a belief as to the truth of those allegations, denies those allegations on that basis, and if King's interest are to be affected, King demand strict proof. King states that it is answering Plaintiff's allegations solely on behalf of itself, even when Plaintiff's allegations refer to alleged conduct by King and other persons or entities.

The Complaint also contains purported quotations from a number of sources. In answering allegations consisting of quotations, King's admission or denial that the material quoted was contained in a document or was uttered by the person or entity quoted or King's reference to the full document instead of the quote shall not constitute an admission that the substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action. Furthermore, King is generally without information to admit or deny these quoted statements and denies those statements and quotes on that basis, and, if King's interests are to be affected, King demands strict proof.

King denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically herein admitted, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole. In addition, King specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint. For ease of reference, King has included in this Answer and Affirmative Defenses certain captions used in the

2

Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, those captions.

On or about October 31, 2005, King entered into a settlement with the United States of American and virtually all of the states including the State of Iowa. Attached hereto, incorporated herein by reference and marked Exhibit 1, is the Settlement Agreement with the United States of America. The United States of America Settlement Agreement provides in part the following:

> The United States contends that it has certain civil claims against King as specified in paragraph 4, below, for engaging in the conduct alleged in Sections (i) through (v) of this paragraph during the period January 1, 1994, through December 31, 2002, unless otherwise specified below (the "Covered Conduct") [King was formed in 1994].

> &ast; &ast; &ast;

> In addition, the State Program States contend that the activities alleged in paragraph I(i) through (iii) rendered false King's State Program invoices for the programs listed in Attachment B for the pharmaceutical products listed in Attachment F, for the period January 1, 1994, through December 31, 2002. [The state programs on Attachment B include the Iowa Medicaid Program].

> &ast; &ast; &ast;

> Of the Settlement Amount in Paragraph 1, above, King, the Plaintiff States, the Participating States, and the State Program States (collectively, the "States" [which included Iowa]) have agreed that the sum of $50,637,093, with accrued interest as provided in Paragraph 1, above, shall represent the state share of the Settlement Amount.

> &ast; &ast; &ast;

> The United States, on behalf of itself, its officers, agents, agencies and departments, agrees fully and finally to release King, its past and present parents, corporate affiliates, divisions, and subsidiaries, and each of their predecessors, subsidiaries, successors and assigns ... from any civil or administrative monetary claim that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the Medicaid Rebate Statute, 42 U.S.C. § 1396r-8, the Drug Pricing Program, 42 U.S.C. § 256b, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, § 603 of the

3

Veterans Health Care Act of 1992, 38 U.S.C. § 8126, any statutory provision applicable to the programs in this Agreement for which the Civil Division, United States Department of Justice, has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, § 0.45(d) (1995), **and common law claims, including claims for fraud, unjust enrichment, payment by mistake, or breach of contract, for the Covered Conduct**.

> \*          \*          \*

King has entered into the CIA [Corporate Integrity Agreement] with HHS-OIG, attached as Attachment H, which is incorporated by reference into this Agreement King will immediately upon the execution of the CIA begin to implement its obligations under the CIA.

> \*          \*          \*

King contends that beginning with its calculations and reports for products utilized in the first quarter of 2003 it has been calculating and reporting AMP for its pharmaceutical products using a methodology that has resulted in it overpaying its quarterly rebates to Medicaid and to the State Rebate Programs. Nothing in this Agreement shall limit King's right to pursue recovery of any overpayments that may have resulted from its use of this methodology from the United States, the state Medicaid agencies or the State Rebate Programs ... (emphasis supplied)

The State of Iowa also released King in the State Settlement Agreement attached

hereto and incorporated herein by referenced as Exhibit 2. The State of Iowa,

> "**agrees fully and finally to release King**, its past and present parents, affiliates, divisions, and direct and indirect subsidiaries, and each of their predecessors, successors and assigns (the "King corporate entities") and their past and present directors, officers, agents and employees (together with the King corporate parties, and the King released parties, from any civil or administrative monetary claim that the State has or may have for the covered conduct. The payment of the Individual State Settlement Amount fully discharges King and the other King Released Persons from any obligation to pay Medicaid-related or Supplemental State Rebate Program related restitution, damages and/or any fine or penalty to the State for the Covered Conduct." (Emphasis supplied.)

The Iowa State Settlement Agreement also provided that King has entered into a

Corporate Integrity Agreement ("CIA") with HHS-OIG, in connection with this matter.

Iowa also acknowledged,

> "King contends that beginning with its calculations and reports for products utilized in the first quarter of 2003 has been calculating and reporting AMP for its pharmaceutical products using methodology that has resulted in its **overpaying its quarterly rebates to Medicaid and to Supplemental State Rebate Programs**. Nothing in this Agreement shall limit King's right to recover these overpayments from the State, the State's Medicaid agency or the State's Supplemental State Rebate Programs ..." (Emphasis supplied.)

Consequently, virtually all of the States and the United States have fully reviewed King's transactional data from the beginning of the company in 1994 through 2002, established methodologies for reporting of its various defined pricing during and after that time, the States and the Federal Government acknowledged that King overpaid its rebates pursuant to the Medicaid program from the first quarter 2003 through the first quarter 2005 and King has entered into a Corporate Integrity Agreement that has been in place for several years with the United States and acknowledged by all of the States. According to the CIA, King is required to provide an enormous amount of information to the United States of America. It is a virtual certainty that King would be unable to defraud anyone with the microscopic look at King's policies and procedures and price reporting. For example, King is required to hire an Independent Review Organization ("IRO") that is subject to discharge by HHS-OIG. That IRO is required to investigate and report to HHS-OIG a plethora of information regarding King's transactions with its customers, its price reporting, calculation and payments of rebates, etc. As a result, the United States of America and the States have a full body of knowledge of transactional data, price reporting, policies and procedures at King. The States generally and Iowa specifically are fully aware of this data, information and reporting, as it is reflected in the Settlement Agreement with the State of Iowa.

As a result, the generic collective non-defendant specific allegations made in the current version of the Complaint in this case, are directly contrary to the facts as it relates to King. King respectfully requests this Honorable Court to dismiss this Complaint as to it.

These statements, comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

## SPECIFIC RESPONSES

1.      King admits that the State of Iowa (the "State") filed the Complaint as alleged in Paragraph 1 of the Complaint, but King denies that there is any basis for the State to do so, denies unlawful pricing practices and denies that the State is entitled to any relief.

2.      To the extent the allegations in Paragraph 2 are directed at King, King denies them. King specifically denies that it "purposefully report[s] false and inflated price information." To the extent the allegations in Paragraph 2 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 3 through 4.   To the extent the allegations in Paragraphs 3-4 are directed at King, King denies them. King specifically denies that it submits "false and inflated pricing information in order to 'create a spread.'" King further denies the characterization of "spread" in Paragraphs 3-4.   To the extent the allegations in Paragraphs 3-4 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

5. King denies knowledge or information sufficient to form a belief as to the truth of the allegations as phrased in Paragraph 5, and denies the allegations.

6. To the extent the allegations in Paragraph 6 are directed at King, King denies them. King specifically denies that it "purposefully manipulate[s] a market that, by defendants' own design, is extremely complicated and non-transparent." To the extent the allegations in Paragraph 6 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 7 through 8. King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 7-8 and denies them on that basis, except King admits it pays Rebates to the State of Iowa and CMS; King admits Iowa, with CMS approval, established a formula or set the rate to reimburse providers.

9. To the extent the allegations in Paragraph 9 are directed at King, King denies them. King specifically denies that it engages in any "unlawful price reporting activity [that] infects all four [pricing] benchmarks and renders each of them false and inflated." To the extent the allegations in Paragraph 9 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

10. King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, except that it admits that it pays Medicaid rebates to Iowa and that such rebates lower the price Iowa Medicaid pays for King's prescription drugs. To the extent the allegations in Paragraph 10 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

11.     To the extent the allegations in Paragraph 11 are directed at King, King denies them.  King specifically denies that it does not accurately report Best Prices.  To the extent the allegations in Paragraph 11 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

12.     To the extent the allegations in Paragraph 12 are directed at King, King denies them.  King specifically denies that it engages in "unlawful pricing schemes," the "manipulation of the Medicaid program" or the "improper reporting of false and inflated pricing information" resulting in "overcharges . . . to the Iowa Medicaid Program."  To the extent the allegations in Paragraph 12 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

13.     To the extent the allegations in Paragraph 13 are directed at King, King denies them.  King specifically denies that it engages in "wrongful practices" that have a "pernicious . . . effect on the public fisc."  To the extent the allegations in Paragraph 13 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 14 through 15.  King admits that it voluntarily participates in the Iowa Medicaid program, but denies that it has violated any State or Federal law, denies it has sought funds from Iowa Medicaid and denies that Iowa has paid any funds to it.  To the extent the allegations in Paragraphs 14-15 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 14-15 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

8

16.     To the extent the allegations in Paragraph 16 are directed at King, King denies them.  King specifically denies that it "intentionally report[s] false prices to the government."  To the extent the allegations in Paragraph 16 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

17.     To the extent the allegations in Paragraph 17 are directed at King, King denies them.  King specifically denies that it engages in "fraudulent, unfair and deceptive practices."  To the extent the allegations in Paragraph 17 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

18.     King admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiff with respect to any such NDCs.  To the extent the allegations in Paragraph 18 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

19.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.  To the extent the allegations in Paragraph 19 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

20.     To the extent that the allegations in Paragraph 20 are directed at King, King denies them, except King admits that it manufactures and sells prescription drugs and that it participates in the Iowa Medicaid Program.  To the extent the allegations in Paragraph 20 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

21.     To the extent that the allegations in Paragraph 21 are directed at King, King denies them.

Paragraphs 22 through 40.  The allegations in Paragraphs 22-40 are directed to other Defendants and require no response from King.  To the extent a response is deemed to be required, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 22-40.

41.     With respect to the allegations in Paragraphs 41 (a)-(c), King admits that King Pharmaceuticals, Inc. owns Monarch Pharmaceuticals, Inc. and King Research and Development as wholly owned subsidiaries, is a Tennessee corporation and in the business of manufacturing and selling pharmaceuticals, and has its principal place of business as does Monarch Pharmaceuticals, Inc. at 501 Fifth Street, Bristol, TN 37620. Monarch is in the business of selling pharmaceuticals.  King Pharmaceuticals Research and Development is a Delaware company with its principal place of business in North Carolina, and is a wholly owned subsidiary and a successor to Jones Pharma Incorporated.  King otherwise denies the allegations in Paragraphs 41 (a)-(c) of the Complaint.

Paragraphs 42 through 54.  The allegations in Paragraphs 42-54 are directed to other Defendants and require no response from King.  To the extent a response is deemed to be required, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 42-54.

Paragraphs 55 through 58.    To the extent the allegations in Paragraphs 55-58 are directed at King, King denies them.

59.     King admits that the State seeks to bring this action as alleged in Paragraph 59, but King denies there is any basis for the State to do so and denies that the State is entitled to any relief.

Paragraphs 60 through 61.  Paragraphs 60-61 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, King denies the allegations in Paragraphs 60-61, and notes that this captioned matter has been transferred to this Court by the Judicial Panel on Multi District Litigation, pursuant to 28 U.S.C. § 1407.

62.     With respect to the allegations in Paragraph 62, King admits that Medicaid was established by Title XIX of the Social Security Act.  King further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

63.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, except King admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the extent the allegations in Paragraph 63 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

Paragraphs 64 through 65.  King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 64-65.  To the extent the allegations in Paragraphs 64-65 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

66.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66, except admits that national drug codes are assigned to prescription drugs.

67.     To the extent the allegations in Paragraph 67 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  King otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.  To the extent the allegations in Paragraph 68 refer to an OIG report, the report speaks for itself, and any characterizations thereof are denied.

69.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.  To the extent the allegations in Paragraph 69 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

70.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

Paragraphs 71 through 72.  To the extent the allegations in Paragraphs 71-72 are directed at King, King denies them.  King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 71-72

are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 73 through 80. King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 73-80 or their subsections. To the extent the allegations in Paragraphs 73-80 or their subsections refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

81.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, except that it admits that pricing compendia such as First DataBank and Medi-Span publish AWPs and FULs, and denies that King has any control over such prices.

82.     To the extent the allegations in Paragraph 82 are directed at King, King denies them. King specifically denies that it "purposefully and fraudulently conceal[s]" the "true prices" of its drugs by "claiming they are proprietary trade secrets." To the extent the allegations in Paragraph 82 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

83.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83.

84.     To the extent the allegations in Paragraph 84 are directed at King, King denies them. King specifically denies that it "fraudulently misrepresent[s]" its true prices or that it reports "false and inflated prices." To the extent the allegations in Paragraph 84 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

13

85.     To the extent the allegations in Paragraph 85 are directed at King, King denies them, except that King admits that Exhibit A purports to identify total expenditures by Defendant.  King specifically denies any "unfair practices, deception, and fraud."  To the extent the allegations in Paragraph 85 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

86.     To the extent the allegations in Paragraph 86 are directed at King, King denies them.  King specifically denies conducting any "fraudulent practices."  To the extent the allegations in Paragraph 86 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 87 through 89.  To the extent the allegations in Paragraphs 87-89 are directed at King, King denies them.  King specifically denies that it reports "false and inflated" "WACs or WAC equivalents."  To the extent the allegations in Paragraphs 87-89 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 90 through 92.  To the extent the allegations in Paragraphs 90-92 are directed at King, King denies them.  King further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 90-92 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 93 through 98.  To the extent the allegations in Paragraphs 93-98 are directed at King, King denies them, except King admits that it has provided the list price

of its drugs to certain industry pricing compendia and that publishers apply their own markups to the list prices. King specifically denies that it "either report[s] or caused to be reported false and inflated AWPs," "false WAC or WAC equivalents," or that King "alone control[s] the false and inflated AWPs that are published for [its] drugs." King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 93-98 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

99.     King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99.

100.    To the extent the allegations in Paragraph 100 are directed at King, King denies them. To the extent the allegations in Paragraph 100 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

101.    To the extent the allegations in Paragraph 101 or the exhibit referenced therein are directed at King, King denies them. To the extent the allegations in Paragraph 101 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

102.    To the extent the allegations in Paragraph 102 or the exhibit referenced therein are directed at King, King denies them, except that King admits that CMS has established FULs for certain drugs. King avers that the requirements of the cited statute speak for themselves. To the extent the allegations in Paragraph 102 are directed at

parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

103.    King denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 103, and on that basis denies them.

104.    To the extent the allegations in Paragraph 104 are directed at King, King denies them.  To the extent the allegations in Paragraph 104 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

105.    King denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105, and on that basis denies them.

106.    To the extent the allegations in Paragraph 106 are directed at King, King denies them.  To the extent the allegations in Paragraph 106 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

107.    To the extent the allegations in Paragraph 106 are directed at King, King denies them.  To the extent the allegations in Paragraph 106 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

108.    To the extent the allegations in Paragraph 107 are directed at King, King denies them.  To the extent the allegations in Paragraph 107 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

109.    To the extent the allegations in Paragraph 108 or the exhibit referenced therein are directed at King, King denies them. King avers that the requirements of the cited statute speak for themselves. To the extent the allegations in Paragraph 108 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

109.    The allegations in Paragraph 109 require no response from King on the grounds that the Iowa SMAC claims have been dismissed by the Court.

Paragraphs 110 through 128. To the extent the allegations in Paragraphs 110-128 are directed at King, King denies them, except King admits that it has executed a rebate agreement with HHS. King further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to King. In any event, the rebate agreement speaks for itself, and any characterizations thereof are denied. To the extent the allegations in Paragraphs 110-128 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 110-128 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

Paragraphs 129 through 132. To the extent the allegations in Paragraphs 129-132 are directed at King, King denies them, and further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to King. To the extent the allegations in Paragraphs 129-132 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 129-132 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

133.    To the extent the allegations in Paragraph 133 are directed at King, King denies them.  King specifically denies that it has participated in any "pricing scheme . . . by exacerbating the complexities of the  . . . drug market."  To the extent the allegations in Paragraph 133 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

134.    To the extent the allegations in Paragraph 134 are directed at King, King denies them.  King specifically denies that it "purposefully conceal[s its] true prices."  To the extent the allegations in Paragraph 134 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 134 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

135.    To the extent the allegations in Paragraph 135 are directed at King, they are denied.  To the extent the allegations in Paragraph 135 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

136.    To the extent the allegations in Paragraph 136 are directed at King, they are denied, except King admits that certain of its contracts are subject to confidentiality agreements and that King does offer discounts to certain of its customers.  To the extent the allegations in Paragraph 136 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

137.    To the extent the allegations in Paragraph 137 are directed at King, King denies them.  King specifically denies that it "obscure[s] the true prices for [its] drugs with [its] policy of treating different classes of trade differently."  To the extent the

allegations in Paragraph 137 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 138 through 139. To the extent the allegations in Paragraphs 138-139 are directed at King, King denies them. King specifically denies that it "maintain[s] two sets of pricing records: one with [] inflated prices and another with [] actual prices." To the extent the allegations in Paragraphs 138-139 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 138-139 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

Paragraphs 140 through 141. To the extent the allegations in Paragraphs 140-141 are directed at King, King denies them. King specifically denies that it "hide[s its] real drugs prices by secretly providing free drugs and phony grants" or that it conceals its true prices "to create spreads between actual cost and reimbursement amounts . . . to influence market share." To the extent the allegations in Paragraphs 140-141 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

142. To the extent the allegations in Paragraph 142 are directed at King, King denies them. To the extent the allegations in Paragraph 142 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

143. To the extent the allegations in Paragraph 143 are directed at King, King denies them. King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or

19

its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraph 143 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 144 through 145. To the extent the allegations in Paragraphs 144-145 are directed at King, King denies them. King specifically denies that it has engaged in any "unlawful and undisclosed manipulation of the price reporting system" or caused the "publication of a false WAC," AWP, or FUL. To the extent the allegations in Paragraphs 144-145 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

146. To the extent the allegations in Paragraph 146 are directed at King, King denies them. King specifically denies that it has "caus[ed] false prices to be published." To the extent the allegations in Paragraph 146 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

147. To the extent the allegations in Paragraph 147 are directed at King, King denies them. King specifically denies that it "submit[s] false and inflated wholesale price information in order to create a spread." King further denies the characterization of "spread" in Paragraph 147. To the extent the allegations in Paragraph 147 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

148. To the extent the allegations in Paragraph 148 are directed at King, King denies them. King specifically denies that it has "corrupted the market for prescription drugs" or has "deliberately sought to create a powerful financial incentive for providers

to prescribe drugs based primarily on the spread." King further denies the characterization of "spread" in Paragraph 148. To the extent the allegations in Paragraph 148 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 149 through 150. To the extent the allegations in Paragraphs 149-150 are directed at King, King denies them. King specifically denies that it "market[s its] products based on the spread between reimbursement (based on AWP, WAC, or a WAC equivalent) and actual acquisition cost" or that it "compete[s] on reimbursement and profit rather than cost." To the extent the allegations in Paragraphs 149-150 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 151 through 152. To the extent the allegations in Paragraphs 151-152 are directed at King, King denies them. To the extent the allegations in Paragraphs 151-152 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 151-152 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

Paragraphs 153 through 154. To the extent the allegations in Paragraphs 153-154 are directed at King, King denies them. King specifically denies that it has "intentionally manipulat[ed] the nation's drug reimbursement system . . . with false and inflated prices." To the extent the allegations in Paragraphs 153-154 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 155 through 157. To the extent the allegations in Paragraphs 155-157 are directed at King, King denies them. King specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it engages in "purposeful AWP manipulation." King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 155-157 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 155-157 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

158. To the extent the allegations in Paragraph 158 are directed at King, King denies them. King specifically denies that it reports "price information that . . . does not comply with the HHS OIG's guidelines" by not accounting for various types of discounts. To the extent the allegations in Paragraph 158 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 159 through 165. King denies knowledge or information generally to form a belief as to the truth of the allegations in Paragraphs 159-165, and denies the allegations, except King admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for King drugs. King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its

22

agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average. To the extent the allegations in Paragraphs 159-165 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

166.    To the extent the allegations in Paragraph 166 are directed at King, King denies them. To the extent the allegations in Paragraph 166 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 167 through 171. To the extent that the allegations in Paragraphs 167-171 are directed at King, King denies them, except King denies knowledge or information sufficient to form a belief as to the truth of the allegation that the "Iowa Medicaid Program spent over $1.6 billion for defendants' drugs between 1992 and 2005 alone." King specifically denies that it "knowingly interfered with Iowa's ability to reimburse providers at EAC." To the extent the allegations in Paragraphs 167-171 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 172 through 177. With respect to the allegations in Paragraphs 172-177, King admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein. To the extent the remaining allegations in Paragraphs 172-177 or Exhibit B are directed at King, King denies them. King specifically denies that it "routinely submitted false prices" to pricing compendia. King further denies the characterization of "spread" in Paragraphs 172-177 and Exhibit B. To the extent the allegations in Paragraphs 172-177 are directed

at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

178.    To the extent the allegations in Paragraph 178 are directed at King, King denies them.  To the extent the allegations in Paragraph 178 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

179.    To the extent the allegations in Paragraph 179 are directed at King, King denies them, except King admits that its contracts with purchasers sometimes included discounts.  To the extent the allegations in Paragraph 179 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

180.    To the extent the allegations in Paragraph 180 or the exhibit referenced therein are directed at King, King denies them.  To the extent the allegations in Paragraph 180 or the exhibit referenced therein are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 181 through 434.  The allegations in Paragraphs 181-434 are directed to other Defendants and require no response from King.  To the extent a response is deemed to be required, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 181-434.

435.    King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 435 or its footnote or exhibits referenced therein, except that King denies any and all allegations of wrongful conduct associated therewith. King admits that Exhibit B purports to contain a list of King NDCs as to which the State

24

is asserting claims, but denies the State is entitled to any relief with respect to such claims. King admits that the State's complaint purports to make claims for AWP and FUL fraud against King, but denies that the State is entitled to any relief with respect to such claims.

Paragraphs 436 through 444. King denies the allegations in Paragraphs 436-444 and the exhibit referenced therein, except King is without sufficient information to form a belief as to the truth regarding "published" or "reported" prices as the Complaint fails to identify the source and Iowa's reimbursement paid to providers for King drugs, denies these allegations on this basis and demands strict proof; King admits it entered into a co-promotion agreement with Wyeth and a purchase agreement with Eli-Lilly, and those agreements speak for themselves.

Paragraphs 445 through 449. King admits was investigated by OIG-HHS, Department of Veterans Affairs, Department of Justice, Centers for Medicaid and Medicaid Services (CMS), Public Health Service and the Securities and Exchange Commission (SEC) in connection with its conduct described in the Complaint as alleged in paragraph 445. King admits the SEC investigation of King described in paragraph 446 and states it was a very broad investigation. King admits it received subpoenas and/or demands for documents from OIG-HHS as described in paragraph 447. These investigations included all King drugs and were very broad. King admits that in its Annual Report and in its SEC Form 10K it acknowledged the investigations above and amounts owed and accrued for "its estimated underpayments to Medicaid and other governmental pricing programs and estimated settlement costs with all relevant governmental parties" including Plaintiff as described in paragraphs 448 and 449.

King admits that it reached a settlement with the United States of America, the State of Iowa, and other governmental agencies and departments regarding the entire Medicaid program and the methodology regarding its drug prices and reporting of those prices. King and the United States of America and virtually all of the States including Iowa have agreed on a methodology for reporting prices and calculating rebates and the governmental entities generally and Iowa specifically has entered into Settlement Agreements to release King from any and all claims relating to those regulatory price reporting requirements, Medicaid and other governmental pricing programs, and the calculation and payments of rebates. Furthermore, King has entered into a Corporate Integrity Agreement that assures the governmental entities, Medicaid and other governmental pricing programs, that King's regulatory price reporting, and calculation and payment of Medicaid rebates is constantly monitored and is verified and certified to be correct. Plaintiff has alleged fraud against King, and King vehemently denies those allegations. King incorporates herein by reference Exhibit 1 and Exhibit 2 as if fully stated herein. The Settlement Agreements were, "made in compromise of disputed claims. It is neither an admission of liability by King nor a concession by the United States that its claims are not well founded." King was fully and finally released,

> "from any civil or administrative monetary claim that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the Medicaid Rebate Statute, 42 U.S.C. § 1396r-8, the Drug Pricing Program, 42 U.S.C. § 256b, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, Section 603 of the Veterans Health Care Act of 1992, 38 U.S.C. § 8126, any statutory provision applicable to the programs in this Agreement for which the Civil Division, United States Department of Justice, has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part 0, Subpart I, Section 0.45(d) (1995), **and common law claims, including claims for fraud, unjust enrichment, payment by mistake, or breach of contract, for the Covered Conduct**." (Emphasis supplied.)

The State of Iowa also similarly released King. King admits it paid over $130,000,000 which was split between the United States of America and the States, including Plaintiff, regarding the claims involving regulatory price reporting requirements, the Medicaid Program and other government pricing programs and has been released from those claims.

Paragraphs 450 through 613. The allegations in Paragraphs 450-613 are directed to other Defendants and require no response from King. To the extent Paragraph 605 references King, King admits it entered into a co-promotion agreement with Wyeth. To the extent a response is deemed to be required to the remaining paragraphs, King denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 450-613.

Paragraphs 614 through 616. To the extent the allegations in Paragraphs 614-616 are directed at King, King denies them, except King denies knowledge or information sufficient to form a belief as to the truth of the allegation that Iowa's Medicaid program "spent over $1.6 billion for defendants' drugs in state and federal dollars from 1992 through 2005 alone." King specifically denies that it received any Medicaid money from Iowa and denies it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched." To the extent the allegations in Paragraphs 614-616 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

Paragraphs 617 through 632. To the extent the allegations in Paragraphs 617-632 are directed at King, King denies them. King further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood,

27

including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 617-632 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 630 refer to *The Pink Sheet*, or other report, those documents speak for themselves, and any characterizations thereof are denied.

## COUNT I

### VIOLATION OF FEDERAL MEDICAID STATUTE, 42 U.S.C. 1396r-8
### (FAILURE TO COMPLY WITH FEDERAL MEDICAID REBATE PROVISION)

633.   In response to Paragraph 633, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 632.

Paragraphs 634 through 642.  To the extent the allegations in Paragraphs 634-642 are directed at King, King states that the Court has dismissed the claim to which these allegations relate and these claims have been released as to King.  To the extent that a response is still required, King denies the allegations as to itself.  To the extent the allegations in Paragraphs 634-642 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

## COUNT II

### BREACH OF CONTRACT

643.   In response to Paragraph 643, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 642.

Paragraphs 644 through 651. To the extent the allegations in Paragraphs 644-651 are directed at King, King states that the Court has dismissed the claim to which these allegations relate and these claims have been released as to King. To the extent that a response is still required, King denies the allegations as to itself. To the extent the allegations in Paragraphs 644-651 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.

## COUNT III

### IOWA CONSUMER FRAUD ACT
### (Iowa Code § 714.16)

652.    In response to Paragraph 652, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 651.

653.    To the extent the allegations in Paragraph 653 and the exhibits referenced therein are directed at King, King denies them and these claims have been released as to King. To the extent the allegations in Paragraph 653 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraph 653 refers to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

Paragraphs 654 through 657. To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto are directed at King, King denies them. To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their

truth.  To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto refer to statutes, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 654-657 and the sub-parts thereto contain legal conclusions, no response is required.

## COUNT IV

## FRAUD

658.    In response to Paragraph 658, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 657.

Paragraphs 659 through 662.  To the extent the allegations in Paragraphs 659-662 and the exhibits referenced therein are directed at King, King denies them and these claims have been released as to King.  To the extent the allegations in Paragraphs 659-662 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 659-662 refer to Iowa law, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 659-662 contain legal conclusions, no response is required.

## COUNT V

## UNJUST ENRICHMENT

663.    In response to Paragraph 663, King repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 662.

Paragraphs 664 through 666.  To the extent the allegations in Paragraphs 664-666 are directed at King, King denies them.  King specifically states that Iowa Medicaid did not pay any money to King; King paid money to Iowas Medicaid in rebates and

settlement proceeds. These claims have been released as to King. To the extent the allegations in Paragraphs 664-666 are directed at parties other than King, King denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 664-666 contain legal conclusions, no response is required.

Paragraphs 667 through 675. King denies that the State is entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 667-675 of the Complaint.

**WHEREFORE**, King demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

**KING'S AFFIRMATIVE DEFENSES**

King reasserts and incorporates herein by reference all of the assertions and defenses contained herein. By alleging the matters set forth below, King does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters or that Plaintiff is relieved of its burdens to prove each and every element of the alleged claims and damages, if any, to which it may be entitled. For its affirmative defenses, King alleges as follows:

**First Affirmative Defense**

Plaintiff fails to state a claim against King upon which relief may be granted.

**Second Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, because it did not rely on any alleged misrepresentations or fraud by King. Plaintiff knew that providers could obtain King drugs at prices below AWP and WAC prior to and during the relevant time period stated in the Complaint.

31

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the Federal Rebate Agreement. That Agreement establishes prices that are to be reported and pursuant to the statute establishing the Medicaid Rebate Program, 42 U.S.C. § 1396r-8 and the regulations promulgated thereunder certain terms are regulatorily or statutorily defined such as "Best Price", "AMP" and more recently "ASP" pursuant to the Medicare Prescription Drug, Improvement and Modernization Act of 2003. King has reported those prices correctly as required by the Federal Rebate Agreement and the statutes and regulations cited herein. Plaintiff has alleged that other prices should have been reported differently but those prices, WAC and AWP, are not statutorily or regulatorily defined. Plaintiff alleges definitions that are contrary to the law, are legally incorrect, and do not exist in the relevant statutes and regulations. Thus, Plaintiff's claims are barred because King complied with the statutory and regulatory requirements and the Federal Rebate Agreement, and that compliance has been confirmed in the Settlement Agreements attached hereto and incorporated herein by reference.

### Fourth Affirmative Defense

During the negotiation of the Settlement Agreements attached hereto, incorporated herein by reference, King utilized a methodology that would overpay the rebates to CMS and the States. King, in fact, overpaid rebates to CMS and the States from the first quarter 2003 through first quarter 2005. King is entitled to a set off, accord and satisfaction, from those payments and the payments pursuant to the Settlement Agreement, and asserts all of the defenses in Fed.R.Civ.P. 12 and CPLR 3013 and 3016.

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the political question, separation of powers, primary jurisdiction, and the abstention doctrines.

### Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the filed rate doctrine.

### Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the State action doctrine.

### Eighth Affirmative Defense

Plaintiff has not suffered, and will not suffer, any injury to a legally protected or cognizable interest by reason of the conduct of King as alleged in the Complaint.

### Ninth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the First Amendment to the United States Constitution and the analogous provisions of the Constitutions of the State of Tennessee and Iowa.

### Tenth Affirmative Defense

Plaintiff's claims are preempted by the dormant Commerce Clause of the United States Constitution.

### Eleventh Affirmative Defense

Plaintiff's claims against King are barred because King has complied with all applicable statutes and regulations of the Federal and State governments, and because Iowa has not complied with all applicable statutes and regulations of the Federal and State governments.

### Twelfth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because they violate King's rights under the Due Process and *Ex Post Facto* clauses of the United States Constitution, as well as the Constitution of the States of Tennessee and Iowa, insofar as plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Thirteenth Affirmative Defense

Plaintiff's claims against King for injunctive relief were mooted, in whole or in part, by the passage of the Medicare Prescription Drug, Improvement and Modernization Act of 2003.

### Fourteenth Affirmative Defense

Plaintiff's claims for injunctive relief against King are barred by the doctrines of *in pari delicto* and/or unclean hands.

### Fifteenth Affirmative Defense

Plaintiff's claims against King are barred, in whole or in part, due to Plaintiff's failure to join indispensable parties, including, without limitation, the persons and entities who have received the State of Iowa's reimbursements for King's products. King received no payments from Plaintiff.

### Sixteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because any injuries sustained by plaintiff was the result of its own conduct or the intervening or superseding conduct of third parties.

34

### Seventeenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

### Eighteenth Affirmative Defense

King is entitled to a credit, recoupment, or set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered, rebates, and the overpaid rebates paid by King and received by Plaintiff with respect to the same injuries.

### Nineteenth Affirmative Defense

Plaintiff failed to allege facts or a cause of action against King sufficient to support a claim for compensatory damages, attorneys' fees and/or legal fees, or any other relief.

### Twentieth Affirmative Defense

To the extent punitive damages are sought, Plaintiff's punitive damages claims against King: (1) have no basis in law or in fact; (2) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against King; (3) cannot be sustained because the laws regarding the standards for determining liability for and the amount of punitive damages fail to give King prior notice of the conduct for which the punitive damages may be imposed and the severity of the penalty that may be imposed, and are void for vagueness in violation of King's Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the Constitutions of the State of Tennessee and the State of Iowa; (4) cannot be sustained because any award of punitive damages exceeding the limits

authorized by the laws or other comparable laws would violate King's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law and laws of the State of Tennessee and State of Iowa; (5) cannot be sustained because an award of punitive damages in this case, combined with any prior, contemporaneous, or subsequent judgments against King for punitive damages arising from the design, development, manufacture, fabrication, distribution, supply, marketing, sale, or use of King's products would constitute impermissible multiple punishments for the same wrong, in violation of King's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would constitute double jeopardy in violation of the Constitution, common law, and statutory laws of the State of Tennessee and the State of Iowa; (6) cannot be sustained because any award of punitive damages without the appointment of the award separately and severally between or among the alleged joint tortfeasors, as determined by the alleged percentage of the wrong committed by each alleged tortfeasor, would violate King's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Tennessee and the State of Iowa; and (7) cannot be sustained because any award of punitive damages, which are penal in nature, without according King the same protections that are accorded to all criminal defendants, including the protection against unreasonable searches and seizures, the privilege against self-incrimination, and the right to confront adverse witnesses, a speedy trial, and the effective assistance of counsel, would violate King's rights guaranteed by the Fourth, Fifth, and Sixth Amendment as

36

incorporated into the Fourteenth Amendment to the United States Constitution and would be improper under the Constitution, common law, and public policies of the State of Tennessee and State of Iowa.

### Twenty-First Affirmative Defense

To the extent punitive damages are sought, Plaintiff's claims for punitive damages against King cannot be sustained because an award of punitive damages by a jury that: (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award; (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth, and corporate status of King; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (5) is not properly instructed regarding plaintiff's burden of proof with respect to each and every element of a claim for punitive damages; and (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards, which would violate King's Due Process and Equal Protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would be improper under the Constitution, common law, and public policies of the State of Tennessee and State of Iowa.

37

## Twenty-Second Affirmative Defense

To the extent punitive damages are sought, Plaintiff's claims for punitive damages against King cannot be sustained because an award of punitive damages that is subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount of punitive damages that may be imposed, would: (1) violate King's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; (2) violate King's right not to be subjected to an excessive award; and (3) be improper under the Constitution, common law, and public policies of the State of Tennessee and State of Iowa.

## Twenty-Third Affirmative Defense

King has affirmatively stated on published price lists that the AWP reported was not intended to be a price charged by King for any product to any customer. King thus disclosed that AWPs for King drugs did not, and were not intended to, represent the actual price paid by customers of such products. Accordingly, Plaintiffs are estopped from claiming to have been defrauded by virtue of any action by King.

## Twenty-Fourth Affirmative Defense

Plaintiff's claims are barred because King does not know the actual acquisition costs of the end users in Iowa, and/or the costs of their business otherwise and, therefore, could not and did not report such costs to Plaintiff, State of Iowa, or Iowa Medicaid.

## Twenty-Fifth Affirmative Defense

Plaintiff's unjust enrichment claims are barred, in whole or in part, because King did not receive or retain any money belonging to the State as a result of any alleged overpayments as required under Iowa law.

### Twenty-Sixth Affirmative Defense

Plaintiff's claims against King are misjoined with Plaintiff's claims against other defendants and must be severed. Fed. R. Civ. P. 19, 20, and 21.

### Twenty-Seventh Affirmative Defense

King adopts and incorporates all of the defenses and arguments set forth in all dispositive motions including, but not limited to, the Motions to Dismiss, and in Defendants' supporting memoranda of law.

### Twenty-Eighth Affirmative Defense

All allegations of the Complaint, to the extent not expressly admitted herein, are denied, and King demands strict proof thereof.

### Twenty-Ninth Affirmative Defense

No statement, act or omission by King represents a causal link, proximate cause, cause in fact or but for cause with respect to Iowa Medicaid, or the State of Iowa's alleged damages or injury.

### Thirtieth Affirmative Defense

Plaintiff has failed to allege any specific wrongful act, omission, statement, or other conduct on the part of King and, accordingly, all claims asserted against King must fail as a matter of law.

### Thirty-First Affirmative Defense

King's overpayment of Medicaid rebates to the State of Iowa reduces or eliminates the amount of damages alleged by Iowa Medicaid and the State of Iowa. In some instances, the rebates paid by King actually exceeded the total reimbursements paid by the Plaintiff for certain quarters with respect to certain King drugs. All rebates paid by King to the State of Iowa should be taken into account in determining the amount of damages, if any, to which Plaintiff is entitled.

### Thirty-Second Affirmative Defense

To the extent Plaintiff obtain recovery in any other claim or case predicated on the same factual allegations, Plaintiff is barred from seeking recovery against King based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

### Thirty-Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by King in judicial, legislative, or administrative proceedings of any kind or at any level of government.

### Thirty-Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff, the United States of America, and the State of Iowa have released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims against King; see attached Settlement Agreement (Exhibit 1).

### Thirty-Fifth Affirmative Defense

Plaintiff's state law claims are preempted, in whole or in part, by Federal law, including, without limitation, the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, the Federal Medicaid Act, all other Federal law cited herein, Federal Rebate Agreements, including all amendments to the same and all regulations promulgated thereunder.

### Thirty-Sixth Affirmative Defense

Plaintiff's claims for injunctive relief were mooted by the passage of the Medicare Prescription Drug, Improvement, and Modernization Act (MMA) of 2003, which requires participating prescription drug manufacturers to report Average Sales Price (ASP) quarterly and defines ASP as the manufacturer's "sales to all purchasers . . . in the United States for such drug or biological in the calendar quarter; divided by the total number of such unites of 72 such drug or biological sold by the manufacturer in such quarter."  42 U.S.C. §§ 1396r-8(b)(3)42 and 1395w-3a(c)(1).

### Thirty-Seventh Affirmative Defense

Plaintiff's claims against King are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

### Thirty-Eighth Affirmative Defense

Plaintiff fails to state, with particularity, facts to support claims of fraudulent conduct, fraudulent concealment and the multi-source allegations against King contained in the Complaint and fails to comply with Fed. R. Civ. P. 9(b) and CPLR 3013 and 3016.

### Thirty-Ninth Affirmative Defense

Any and all actions taken by King with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

### Fortieth Affirmative Defense

King denies that Plaintiff has valid consumer protection claims against King under Iowa's Consumer Fraud Act. However, if such claims are found to exist, King pleads all available defenses under the Act.

### Forty-First Affirmative Defense

To the extent that Plaintiff attempts to seek equitable relief against King, Plaintiff is not entitled to such relief because Plaintiff has an adequate remedy at law.

### Forty-Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of consent, ratification and/or waiver to the extent that Plaintiff has received and paid for medicines manufactured, marketed and sold by King after the filing of the complaint.

### Forty-Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because the damages alleged are speculative and remote, because of the impossibility of ascertaining and allocating those alleged damages, and because the alleged damages cannot be ascertained to a reasonable degree of certainty.

### Forty-Fourth Affirmative Defense

Plaintiff's claims are barred because it lacks standing or capacity to bring its alleged claims or seek injunctive relief.

### Forty-Fifth Affirmative Defense

Plaintiff's claims against King are barred, in whole or in part, because Plaintiff has not suffered damages as a result of the matters alleged in the Complaint.

### Forty-Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate damages, and that failure to mitigate damages should proportionately reduce Plaintiff's recovery and the allocation of any fault, if any exists, attributable to King.

### Forty-Seventh Affirmative Defense

To the extent punitive damages are sought, Plaintiff's punitive damages claims against King are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against King.

### Forty-Eighth Affirmative Defense

To the extent punitive damages are sought, Plaintiff's damages claims against King cannot be sustained because an award of punitive damages would violate the United States Constitution, Excessive Fines Clause of the Eighth Amendment, U.S. Const. amend. VIII and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 and the analogous provisions contained in the Constitutions of the State of Tennessee and State of Iowa and any other States whose laws are or become relevant in the course of this lawsuit.

### Forty-Ninth Affirmative Defense

King adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

### Fiftieth Affirmative Defense

Plaintiff's claims are barred by the failure to exhaust applicable administrative remedies.

### Fifty-First Affirmative Defense

Plaintiff's claims are barred because they require resolution of a nonjusticiable controversy.

### Fifty-Second Affirmative Defense

Plaintiff's claims are barred in whole or in part because the amounts claimed as damages were voluntary payments to the State.

### Fifty-Third Affirmative Defense

The State and/or its agents, and the federal government and/or its agents, knew or should have known that AWP was not an average wholesale price or the actual acquisition cost of drugs. Legal and equitable principles preclude this action for damages and injunctive relief and the Due Process Clauses of the United States Constitution and the Iowa Constitution preclude the State from bringing claims and seeking damages as alleged in the Complaint.

### Fifty-Fourth Affirmative Defense

Some or all of Plaintiff's claims arise from Iowa Medicaid's and Plaintiff's failure to follow the federal and state statutory and regulatory obligations to establish appropriate reimbursement rates.

### Fifty-Fifth Affirmative Defense

The State's reimbursement rates for drugs for Medicaid recipients were filed with, reviewed by, and approved by a federal regulatory agency with authority to do so under the Medicaid Act. Actions in court seeking relief, including alleged damages, contending that rates approved by a federal regulatory agency do not apply or are not binding are, as the United States Supreme Court directed, precluded by the Supremacy Clause, This action is barred by the Supremacy Clause of the United States Constitution.

### Fifty-Sixth Affirmative Defense

To the extent that the State obtains, or is barred from, recovery in any other case predicated on the same federal allegations, the State is barred from seeking recovery based on the Complaint pursuant to the doctrines of claim preclusion, issue preclusion, res judicata, collateral estoppel, and the prohibition on double recovery for the same injury.

### Fifty-Seventh Affirmative Defense

The State did not rely on any allegedly fraudulent statements or representation of King.

### Fifty-Eighth Affirmative Defense

Any alleged misconduct by King was not a substantial factor in the State's purchase or reimbursement of any prescription medications.

### Fifty-Ninth Affirmative Defense

The State's claims against King are barred in whole or in part by the State's quarterly receipt of data, known as Unit Rebate Amounts ("URAs"), which were derived from pricing data provided by King to the Centers for Medicare and Medicaid Services ("CMS"), and all data available to plaintiff pursuant to the CIA.

### Sixtieth Affirmative Defense

The State's claims against King are barred in whole or in part by the governmental cost recovery rule, which prevents recovery of the cost of public services by claiming that the negligence of a particular defendant caused a governmental unit to provide such services.

### Sixty-First Affirmative Defense

The State's claims is barred in whole or in part with respect to any alleged overcharge or supracompetitive price because such supracompetitive price, if any, was absorbed in whole or in part by a person and/or entity that purchased the medicine directly, and/or by an intermediate indirect purchaser, and was not passed through the State.

### Sixty-Second Affirmative Defense

Any damages recovered by Plaintiff must be limited to the applicable statutory ceilings to the recoverable damages.

### Sixty-Third Affirmative Defense

King hereby gives notice that it intends to rely upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserve its right to amend its answer to assert such defense.

### Sixty-Fourth Affirmative Defense

The claims alleged herein, based on the facts alleged, are barred, in whole or in part, by the Plaintiff's own negligence or gross negligence.

### Sixty-Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a person or consumer within the meaning of the Iowa Consumer Fraud Act.

### Sixty-Sixth Affirmative Defense

Plaintiff's unjust enrichment claims are barred because King has not accepted or retained any benefits under circumstances where it would be inequitable for King to do so.

### Sixty-Seventh Affirmative Defense

Plaintiff's claims against King are barred, in whole or in part, by the existence and terms of the written rebate agreement between King and the Secretary of the Department of Health and Human Services ("HHS"), on behalf of HHS and all certain States, including Iowa, entitled, "Rebate Agreement Between the Secretary of Health and Human Services and the Manufacturer Identified in Section XI of this Agreement" (the "Rebate Agreement"), which was entered into pursuant to 42 U.S.C. § 1369r-8.  The Rebate Agreement constitutes the entire agreement between King and the State of Iowa and governs the relationship between them.

Dated: Memphis, Tennessee
September 18th, 2008

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

By: /s/  Joshua N. Tropper

Joshua N. Tropper (652921)
BAKER, DONELSON,
BEARMAN,  CALDWELL &
BERKOWITZ, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road
Atlanta, Georgia  30326-1164
(404) 577-6000

Sam Berry Blair (TN 10375)
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
(901) 577-2257

*Attorneys for King Pharmaceuticals,*
*Inc., King Pharmaceuticals Research*
*and Development, Inc. and Monarch*
*Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I, Sam Berry Blair, an attorney, do hereby certify that I caused a true and correct
copy of the foregoing Answer and Affirmative Defenses to be served upon all counsel of
record via Lexis Nexis File & Serve, this 19th day of September, 2008.

/s/ Joshua N. Tropper