## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| --- | --- |
| THIS DOCUMENT RELATES TO:<br><br>*State of Arizona v. Abbott Labs., Inc., et al.,*<br>  *06-CV-11069-PBS* | CIVIL ACTION: 01-CV-12257-PBS |

## SEPARATE MEMORANDUM OF MERCK & CO., INC.
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Merck & Co., Inc. ("Merck") submits this memorandum in support of its

motion to dismiss the First Amended Complaint of the State of Arizona (the "Complaint").

Merck joins in the Defendants' Joint Motion to Dismiss and in the joint memorandum of law

in support of that motion (the "Joint Memorandum"), but also submits this separate

memorandum to address the unique theory of liability alleged as to Merck.

## INTRODUCTION

The State of Arizona seeks to recover from Merck on the basis of allegations that do

not approach the standards articulated by the Court for pleading AWP fraud.[1]  Unlike the

claims against other defendants, Arizona's Merck-specific allegations relate to discounts on

branded, self-administered drugs offered to hospitals through "nominal pricing" programs.

This allegation forms an even more implausible basis for AWP fraud than Plaintiff's general

---

[1]  *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003) (Saris, J.) ("Pharm I"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 209 (D. Mass. 2004) (Saris, J.) ("Pharm. IV"); *County of Suffolk v. Abbott Labs, Inc.*, MDL No. 1456, 2004 WL 2387125 (D. Mass. Oct. 26, 2004); *City of New York v. Abbott Labs, Inc.*, MDL No. 1456, 2007 WL 1051642, at *14 (D. Mass. Apr. 2, 2007) ("Consolidated Counties").

allegations.  Accordingly, while Merck joins in the Joint Motion to Dismiss, it writes separately to highlight the deficiencies of the allegations Arizona makes only against Merck.

*First*, the Complaint does not allege who paid for Merck drugs, who received payment, and at what price.  The most that can be inferred from the Complaint is that unidentified entities in Arizona may have paid other unidentified entities for Merck drugs at unspecified prices that may have been based on an unspecified discount from AWP.  Such a pleading falls woefully short of the particularity required by Rule 9(b); indeed, it fails even to meet notice pleading standards.

*Second*, neither law nor logic can support Arizona's allegations that sales at nominal prices to hospitals of two of Merck's branded, self-administered drugs would constitute AWP fraud.  The hospitals are not even alleged to have been reimbursed for those drugs based on AWP.

*Third*, Plaintiff's claims for restitution on behalf of private Arizona entities are barred by the one-year statute of limitations applicable to such claims, and Plaintiff's claims for injunctive relief are moot.

### THE ALLEGATIONS AGAINST MERCK

Merck is mentioned in the Complaint only in the caption, in the party identifications (Compl. ¶ 80), and in a few paragraphs describing Merck's nominal pricing programs for Zocor® and Vioxx® (*id.* ¶¶ 400-411).  Merck is also mentioned in Appendix C, where several formulations of Vioxx® and Zocor® are listed along with allegedly "false AWPs."  (*Id.* ¶ 400 & App. C.)  Neither the Complaint nor Appendix C discloses a figure that Plaintiff alleges to have been the "correct AWP" for any Merck product, and the most recent allegedly "false AWPs" for Merck's two named drugs are from the third quarter of 2004 – more than a year before Plaintiff commenced this action.

Notwithstanding the Complaint's focus on the use of AWP in the Medicare Part B context, no Medicare Part B claim is asserted against Merck.  (*See* Compl. ¶¶ 9-10, 122-144.) Indeed, the only drugs identified as Merck's in the Complaint – Vioxx® and Zocor® – are described in Appendix C as "tablets" (or, for two NDCs, "oral suspension" formulas).  These are self-administered drugs, which Plaintiff acknowledges are not reimbursed under Medicare Part B.  (*Id.* ¶ 124 ("The Medicare Program generally does not cover the cost of prescription drugs that a Medicare beneficiary self administers (*e.g.,* by swallowing the drug in liquid or pill form).").)  The generic drug allegations (*id.* ¶¶ 152-163) likewise are inapplicable to these brand-name drugs.

## ARGUMENT

### I.       The Complaint Fails To State An AWP Fraud Claim Against Merck.

This Court has made clear that a plaintiff asserting claims for AWP fraud must "clearly and concisely" allege, at a minimum, "(1) the specific drug or drugs that were purchased from defendant, (2) the allegedly fraudulent AWP for each drug, . . . (3) the name of the specific plaintiff(s) that purchased the drug," and (4) "a good faith estimate of an 'actual' market price from which the spread may be calculated."  *E.g.*, *Consolidated Counties*, 2007 WL 1051642, at *14.

The first and most glaring deficiency in the State's pleading against Merck is that it does not allege the name of a single plaintiff or other person that purchased a Merck drug based on AWP.  Alleging that some entities *may* reimburse for self-administered drugs "based on AWP with some discount, typically AWP-15%" (Compl. ¶ 13) is no substitute for alleging that a "specific plaintiff" purchased the drug, as the Court has stated that Rule 9(b) requires. As noted, Arizona has not alleged that Medicare Part B beneficiaries paid for any named Merck drug.  If a health plan paid a PBM for a Merck drug based on AWP, Arizona has not

3

identified even which health plan or which PBM, much less at what rate a health plan may

have paid a PBM or a PBM may have paid a pharmacy under agreements to which Merck is

not alleged to have been a party.[2]  Instead, Arizona essentially alleges that someone,

somewhere in Arizona may possibly have paid someone else for some Merck drug based on

some discount off of AWP.  Merck cannot fairly be forced to defend against a claim that

someone "paid directly or indirectly based upon a published AWP" that was allegedly

deceptive without knowing the identity of that person or entity.

The second glaring shortcoming of Arizona's Complaint is that it makes no allegation

of a spread between AWP and an "actual" market price, much less a good faith basis for

estimating such numbers.  *See Consolidated Counties*, 2007 WL 1051642, at \*14.  This

Court's decisions make clear that failure to allege a good faith basis for an allegation of a

spread is fatal under Rule 9(b).

> **II.      Plaintiff's Attempt To Base AWP Consumer Fraud Claims Against Merck
> On "Nominal Price Discount" Programs Fails Logically And As A Matter
> of Law.**

The only Merck-specific allegations in the Complaint relate exclusively to Merck's

nominal price discounts to hospitals for Zocor® and Vioxx®, under programs known,

respectively, as "SAVE" and "VIP."  These programs are alleged to have involved 92%

discounts for hospitals achieving certain market shares.  (Compl. ¶¶ 402, 410.)  Arizona does

not allege that Merck used these programs to "market a spread" based on AWP or otherwise

to perpetrate any alleged AWP fraud.  Arizona does not even allege that the hospitals were

reimbursed for these drugs based on AWP.  Instead, Plaintiff's core claim is that the

discounted prices for Vioxx® and Zocor® under these programs were not reflected in

---

[2]  Arizona alleges that the agreements between PBMs and pharmacies are confidential (Compl. ¶ 147), and the
Complaint does not allege that Merck was aware or could have learned of the rates at which PBMs reimbursed
pharmacies.

published AWPs.  A purported obligation to include nominal price discounts to hospitals in reported AWPs allegedly derives from "various statutes," apparently including the "Medicaid Rebate Act."  (*Id*. ¶ 411.)

Initially, Plaintiff's claim should be dismissed as defectively vague for failing even to identify the statutory provision alleged to impose an obligation to include nominal prices in calculating AWP.  Indeed, the allegation contradicts the Complaint's assertion elsewhere that "[t]here are no regulations describing how AWPs are to be calculated, nor any regulatory process for approving them."  (*Id*. ¶ 132.)

To the extent Plaintiff purports to base such an obligation on the "Medicaid Rebate Act," its reliance is misplaced.  Arizona has expressly disclaimed a cause of action for Medicaid fraud and Arizona does not participate in the Medicaid rebate program.  Moreover, as this Court is well aware, *the federal Medicaid rebate statute does not refer to AWP*, much less impose obligations as to types of discounts that must be included in AWP.

The federal Medicaid rebate statute did describe how manufacturers should calculate other prices, and explicitly required manufacturers to *exclude* "nominal prices" from those calculations.  Until recently, federal law provided that a manufacturer's reported *Best Price* "shall not take into account prices that are merely nominal in amount."  42 U.S.C. § 1396r-8(c)(1)(C)(ii)(III) (2006).[3]

---

[3]  A limitation on the types of providers to which the nominal price exclusion would apply was enacted as part of the Deficit Reduction Act of 2005.  Effective January 1, 2007, the "nominal price" exclusion from Best Price was limited to only those sales of covered drugs at nominal prices that a manufacturer made to 340B providers, certain state-owned facilities and other facilities designated by the Secretary to be a "safety net provider."  42 U.S.C. §1396r-8(c)(1)(D)(2007).  The statutory change and additional legislative and regulatory materials demonstrating that the "nominal price" exclusion was not restricted prior to 2007 are discussed in the *Memorandum of Merck & Co., Inc. In Response to Plaintiff's "Notice of Supplemental Authority In Opposition to Merck's Motion To Dismiss"* filed (with leave) on December 22, 2006 in the Consolidated New York counties case (ECF Dkt. No. 3501).

In promulgating a standard federal Rebate Agreement for use by each manufacturer participating in the Medicaid Rebate program in 1991, the Secretary of Health and Human Services defined "nominal price" to be "any price less than 10% of the AMP in the same quarter for which the AMP is computed." Rebate Agreement § I(s). Likewise, in 1994, the Centers for Medicare and Medicaid Services ("CMS"), the federal agency charged with administering the Medicaid program, gave express direction to manufacturers on how the nominal price exclusion under the Rebate Act and the Rebate Agreement should be applied:

> Please remember that *any* prices which are nominal in amount, that is, *less than 10% of the AMP* in the same quarter which the AMP is computed, are excluded from the best price calculation. Therefore, if any arrangement results in prices which are nominal, those sales and prices do not affect best price and *must be excluded by the manufacturer*.

CMS Medicaid Drug Rebate Program Release No. 14, at 2 (emphasis added) (ECF Dkt. No. 3501, Ex. B).

These authorities wholly undercut Plaintiff's assertion of a statutory obligation to include nominal prices in calculating Medicaid drug prices, let alone the further stretch required to make this obligation applicable to AWPs used by non-Medicaid entities, such as health plans. The 92% discounts alleged by Plaintiff would result in a price that, by regulation, would have been excluded from a Best Price calculation.

Even if Plaintiff could overcome this legal obstacle to its claim against Merck, there is a significant additional logical lapse in the claims as pleaded. Plaintiff's non-Medicare AWP claims are premised on the alleged use of inflated AWPs by PBMs to reimburse retail pharmacies or, via repackagers, for mail order services that PBMs provide to health plans. (Compl. ¶147.) Yet neither of these types of sales involve the hospitals to which Merck is alleged to have provided the discounts. To make nominal price discount sales to *hospitals*

relevant to retail pharmacy and mail order sales by PBMs, Plaintiff must at minimum allege some causal link between the two.  Plaintiff has failed to allege any such link.

### III.     Plaintiff's Claims For Restitution Are Barred By The One-Year Statute Of Limitations And Plaintiff's Claims For Injunctive Relief Are Moot.

As set forth in the Joint Memorandum, Plaintiff's claims for restitution are governed by the one-year limitations period in A.R.S. § 12-541.  Because Plaintiff commenced this action on December 6, 2005, any claims accruing prior to December 6, 2004 are time barred.  But the few allegations in the Complaint concerning Merck relate to nominal pricing programs in 1998 and 1999, and the allegedly "false AWPs" for the two Merck drugs included in Appendix C all date from the third quarter of 2004 or earlier.  In fact, one of the two Merck drugs identified by Plaintiff – Vioxx® – was voluntarily removed from the world market on September 30, 2004.[4]  Accordingly, no Arizona entities could have paid for the drug based on AWP (or any other price) after that date.  Because Plaintiff has alleged no conduct by Merck within the one-year limitations period, the claims subject to that limitations period should be dismissed as time barred.

Plaintiff's injunctive relief claims also should be dismissed as moot.  The only conduct alleged specifically for Merck relates to its use of nominal pricing discounts to hospitals.  But the Deficit Reduction Act of 2005 substantially narrowed the types of providers within the nominal price exception, effective January 1, 2007.  Today, only sales to 340B hospitals and other "safety net" providers are eligible for the nominal price exclusion (*see supra*, note 3), and there is simply no factual or even logical basis for Plaintiff's allegation that Merck's nominal pricing programs continue.  In any event, the withdrawal of Vioxx® from the world

---

[4]   FDA Announcement dated September 30, 2004 (http://www.fda.gov/cder/drug/infopage/vioxx/vioxxQA.htm).

7

market also moots Plaintiff's claim for injunctive relief with respect to the pricing of that

drug.

### CONCLUSION

For the foregoing reasons, as well as those in Defendants' Joint Memorandum, the

First Amended Complaint should be dismissed as to Merck.

/s/ John M. Townsend
John M. Townsend (Admitted *pro hac vice*)
Robert P. Reznick (Admitted *pro hac vice*)
Robert B. Funkhouser (Admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006
(202) 721-4600

John R. Dacey  AZ Bar #004962
James A. Craft AZ Bar #005145
GAMMAGE & BURNHAM
A Professional Limited Liability Company
Two North Central Avenue, 18th Floor
Phoenix, AZ 85004
(602) 256-0566

*Attorneys for Defendant Merck & Co., Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the Separate Memorandum Of Merck & Co., Inc. In Support Of Its Motion To Dismiss was delivered to all counsel of record by sending a copy to LexisNexis File and Serve, on September 19, 2008, for posting and notification to all parties.


September 19, 2008                                      /s/ Robert B. Funkhouser
                                                        Robert B. Funkhouser