UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:  PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti B. Saris |
| | ) | |
| *United States of America, ex rel. Ven-A-Care* | ) | Magistrate Judge Marianne B. Bowler |
| *of the Florida Keys, Inc. v. Abbott* | ) | |
| *Laboratories, Inc.,* | ) | |
| CIVIL ACTION NO. 06–CV-11337-PBS | ) | |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO REQUIRE
DEFENDANT ABBOTT LABORATORIES, INC. TO COMPLY WITH ITS
DISCOVERY OBLIGATIONS AND RELATED COURT ORDERS**

The United States again seeks the Court's assistance[1] to compel Abbott's compliance

with this Court's prior discovery Orders.  Fact discovery closed on May 23, 2008, yet Abbott still

has not produced the following categories of documents:

-       On May 16, 2007, and again on January 31, 2008, Abbott was ordered to produce
        the relevant personnel file documents of its former Alternate Site sales force.

---

[1] The United States has filed three prior motions to compel the documents at issue in the
instant motion.  Two of those motions resulted in Orders by the Court for Abbott to produce
documents that are the subject of this motion.  (*See* the United States' Second Motion to Compel
the Production of Documents from Abbott, and related Memorandum in Support, filed on April
9, 2007 (Dkt. Nos. 4047 and 4048), and Tr. of May 16, 2007 hearing before Magistrate Bowler at
45-69, attached as Exhibit 21; and the United States' Motion to Compel Abbott to Provide
Deposition Dates for Members of Its Alternate Site Sales Force and to Produce Related
Documents, and related Memorandum in Support, filed on January 7, 2008 (Dkt. Nos. 4984 and
4985), and Tr. of January 31, 2008 hearing before Magistrate Bowler at 58-71, attached as
Exhibit 7).  The third motion, the United States' Motion to Compel Documents and Deposition
Testimony, filed on March 31, 2008 (Dkt. Nos. 5179 and 5180), which addresses some, but not
all of the issues addressed in the instant motion, as well as numerous other categories of
discovery sought by the United States, has yet to be ruled upon.  (*See also,* Abbott's Response to
the United States' March 31, 2008 Motion to Compel Documents and Deposition Testimony
(Dkt. No. 5258), and the United States' Reply (Attachment A to Dkt. No. 5273)).

Abbott has produced only 84 of 153 (54.9%) of those files. Abbott admits that it has not produced relevant personnel documents in its possession for at least 1 member of its sales force; for an additional 48 files, Abbott claims, without more, that the files contain no responsive documents.

- On January 31, 2008, Abbott was ordered to produce the working files of each member of its Alternate Site sales force. It has produced only the working files of 53 of 153 members of the sales force (34.6%). Abbott has refused to produce the working files of 96 members of the sales force – the files of sales force members who are no longer employed by Abbott or Abbott's affiliate, Hospira, and who Abbott now claims are "outside of its possession, custody and control." Many of these sales force members were employed by Abbott during a critical time in this lawsuit – 1991 to 2001 – making their documents of unique importance to this case. Further, and inexplicably, Abbott has also yet to produce the working files of at least 3 members of its sales force who are current employees of Hospira.[2] Abbott was ordered to produce all of these files on January 31, 2008.

- On January 25, 2008, Abbott represented to the United States and to this Court that it had already begun producing completed Certificates of Search for all members of the Alternate Site sales force currently employed by Abbott or Hospira, and that "the remaining verifications will be forthcoming shortly." As of this filing, at least 3 Certificates of Search remain outstanding, and Abbott has yet to affirmatively represent that it has completed its production with respect to the remaining documents in this category.[3]

This case is brought by the United States against Abbott under the False Claims Act ("FCA") and the common law, for reporting inflated prices to pricing compendia for certain drugs (dextrose solutions, sodium chloride solutions, sterile water and Vancomycin products)

---

[2] Abbott has identified the status of the production of 1 additional sales force member only as "Current Hospira", without indicating whether the working files of that sales force member have been produced to the United States.

[3] In this regard, we note that at a June 30, 2008 meet and confer conference on the issues addressed in this motion, Abbott counsel stated that aside from 3 incomplete Certificates of Search, all Certificates of Search had been produced to the United States. However, in correspondence Abbott subsequently sent to the United States on July 10, 2008, updating Abbott's progress on the January 31st Court ordered production of its sale force members' personnel and working files, Abbott counsel indicated that 27 Certificates of Search remained to be produced. In an August 5, 2008 letter to Abbott counsel, the United States requested clarification on the status of the Certificates of Search, to resolve the inconsistency in the information provided by Abbott on June 30th and July 10th. Abbott has not responded to that request, nor has it responded to any of the other information or requests contained in the United States' August 5th letter, including a request that Abbott notify the United States by August 15, 2008, if Abbott believed that further meet and confer conferences could resolve or narrow any issues that are the subject of the instant motion.

knowing that Medicare and Medicaid relied upon the reported prices to set reimbursement rates for those drugs. In addition to reporting inflated prices, the United States alleges that Abbott marketed the spread on these drugs to its customers to increase sales of the drugs, thereby boosting Abbott's profits. The sales force records that are the subject of this motion go to the heart of the Abbott's alleged conduct and are highly relevant to the United States' case.

## I.    BACKGROUND

Over 22 months ago, on November 17, 2006, the United States served a Request for Production on Abbott which called for the production of various documents, including documents likely to be contained in the personnel files and working files of Abbott's Alternate Site sales force. (*See, e.g.,* United States' Second Request for Production to Defendant Abbott, ¶¶ 43-61, attached as Exhibit 2). Abbott timely served its objections to the requests. Thereafter, the parties met and conferred. Abbott refused to produce sales force materials. On April 9, 2007, the United States filed a Motion to Compel (Dkt. No. 4047) to obtain, among other categories of documents, sales force compensation and employment review documents and Alternate Site customer documents, many of which the United States believed to be in the possession of Abbott's Alternate Site sales force. The Court held a hearing on May 16, 2007. At that hearing, the Court ordered Abbott to produce all relevant documents from the sales force personnel files.

Despite the Court's Order, Abbott delayed and avoided production. Even nine months after the Court's first Order, a large volume of the sales force files had not been produced to the United States. Accordingly, the United States filed another motion to compel the sales force records on January 7, 2008. (*See* United States' Motion to Compel Abbott to Provide Deposition Dates for Members of Its Alternate Site Sales Force and to Produce Related Documents (Dkt. Nos. 4984 and 4985), hereinafter "Motion to Compel Sales Force Depositions and Documents").

The Court held a hearing on that motion on January 31, 2008, and again ordered Abbott to produce sale force records, including working files, to the United States.

Despite these two Orders, as of March 31, 2008, the parties' deadline for taking fact depositions in this case,[4] Abbott still had not produced a large volume of the sales force records. The United States filed a third motion to compel the sales force files. (*See* United States' Motion to Compel Documents and Deposition Testimony, filed on March 31, 2008 (Dkt. Nos. 5179 and 5180), Abbott's Response (Dkt. No. 5258), and the United States' Reply (Attachment A to Dkt. No. 5273)). That motion, which addresses related, but not identical, aspects of Abbott's production of sales force records, as well as numerous other categories of discovery, is currently pending before the Court.

A.      **Personnel Files**

At the hearing on the United States' April 9, 2007 Motion to Compel, Magistrate Bowler overruled Abbott's objections related to producing sales force personnel files, and ordered Abbott to produce relevant personnel file documents to the United States. (*See* Tr. of May 16, 2007 hearing before Magistrate Bowler at 45:11-45:12 and 52:18-57:9). In response to that Order, Abbott made two productions of sales force personnel files to the United States – one production in August (approximately 3 months after the Court's Order) and one production in October 2007 (over 5 months after the Court's Order). In the cover letter accompanying Abbott's October production, Abbott counsel stated that it would produce the remainder of the

---

[4] Fact discovery was scheduled to close on March 31, 2008 (*see* Electronic Order dated December 18, 2007). Although the last day for depositions of fact witnesses remained March 31, 2008, the date for document production was extended to April 25, 2008 (*see* Electronic Order dated April 10, 2008, granting Dkt. No. 5206). Subsequently, the Court granted Abbott until May 23, 2008 to complete its document production, and until May 30, 2008 to complete its production of certain data (*see* Electronic Order dated May 16, 2008, granting Dkt. No. 5306).

personnel files by October 31, 2007, however no such production was made.  (*See* October 11, 2007 letter from J. Winchester to R. Brooker, at p. 2; November 2, 2007 letter from R. Ford to J. Winchester and C. Geisler, at p. 1; and November 7, 2007 e-mail from R. Ford to J. Winchester and C. Geisler, attached as Exhibits 3, 4 and 5).  On November 8, 2007, Abbott counsel confirmed that the August 16th and October 11th productions completed Abbott's production of the Alternate Site sales force personnel files.  (*See* November 8, 2007 e-mail from R. Ford to J. Winchester, attached as Exhibit 6).  Only after this Court intervened was it revealed that such production was <u>not</u> complete.

On January 7, 2008, the United States filed its Motion to Compel Sales Force Depositions and Documents (Dkt. Nos. 4984 and 4985).[5]  At a January 31, 2008 hearing on the motion, this Court ordered Abbott to produce, within 30 days, outstanding sales force files, and to "provide information as to all the files.  Either produced, can't be found, so that we know what we are going to get".  (*See* January 31, 2008 Tr. at 67:10-70:19, attached as Exhibit 7).

Abbott continued to produce additional sales force personnel files for many more months, including the production of files in April and May 2008, after the time for taking fact depositions had passed.  (*See, e.g.,* April 25, 2008, May 5, 2008, and May 23, 2008 correspondence from Abbott counsel to counsel for the United States, producing documents from the personnel files of sales force members for whom Abbott had not previously produced personnel files, attached as Exhibit 8 at pp. 2-3, 4, and 13).   Still, Abbott has produced no personnel files or personnel related documents for 69 members of its sales force (45.1%).

---

[5] Despite numerous requests, Abbott did not produce any dates for deposition until the eve of the filing and in anticipation of the United States' Motion to Compel Sales Force Depositions and Documents.

**B.      Working Files**

After the production by Abbott of the personnel files of some members of its Alternate

Site sales force, and in preparation for taking depositions of members of the sales force, it

became apparent to the United States that few documents from the sales force members' files –

documents responsive to numerous discovery requests – had been produced.

Accordingly, at least by November 2007, the United States began to request production of

the sales force members' "working files" by name – meaning those files maintained by Abbott or

the sales force member, either in the sale force members' home office, or at an Abbott location.

(*See, e.g.,* November 20, 2007 letter from R. Ford to Abbott counsel, at p. 4., requesting, among

other things, "all documents from those representatives working files that are responsive to the

United States' discovery requests in this matter", attached as Exhibit 9).

Based upon Abbott's failure to produce many of these files, the United States, in its

January 7th Motion to Compel Sales Force Depositions and Documents, sought the numerous

working files of sales force members that Abbott had yet to produce.  As it did with respect to the

sales force personnel files, on January 31, 2008, the Court ordered Abbott to produce, within 30

days, outstanding sales force working files, and to certify the status of its production related to all

of the sales force files.  (*See* January 31, 2008 Tr. at 67:10-70:19, attached as Exhibit 7).  Abbott

has violated that Order.

**C.      Certificates of Search**

In its January 25, 2008 Response to the United States' Motion to Compel Sales Force

Depositions and Documents (hereinafter "Abbott's response") (Dkt. No. 5018), Abbott stated

that it had asked each of its former Alternate Site sales force members who were then employed

by Hospira to search his or her working files for relevant information.  It further stated that

"[E]mployees whose searches did not produce relevant information have signed verifications to

that effect, many of which have already been produced to the government;[6] the remaining verifications will be forthcoming shortly. Abbott is actively following up with the few individuals who have not yet reported finishing a search of their personal files, and should obtain their responses soon." (Abbott's response at pp. 6-7). Abbott continued to produce Certificates of Search to the United States over the next four months, however, issues with some of the Certificates of Search continue to go unaddressed and uncorrected by Abbott. *(See e.g.,* June 18, 2008 letter from R. Ford to J. Winchester, T. Tabacchi and C. Geisler, attached as Exhibit 12; and August 5, 2008 letter from R. Ford and A. St. Peter-Griffith to J. Winchester and C. Geisler at p. 2, attached as Exhibit 13).

**D.     Abbott's Violations of This Court's Prior Orders**

At the January 31, 2008 hearing on the United States' Motion to Compel Sales Force Depositions and Documents, this Court ordered Abbott to produce to the United States, within 30 days of the hearing, dates for sales force depositions, outstanding sales force working files and personnel files, and for each sales force member disclosed by Abbott, identification of whether their working file and personnel file had been produced. (*See* January 31, 2008 Hrg. Tr. at 58:2-71:9, attached as Exhibit 7).

In response to that Order, on March 3, 2008, Abbott wrote to the United States providing a "status of production of alternate site sales force personnel and personal/working files." *(See* March 3, 2008 letter from J. Winchester to R. Brooker, attached as Exhibit 14). Accompanying

---

[6] Abbott counsel later admitted that the signed verifications (titled and hereinafter referred to as "Certificates of Search") had not in fact been produced to the government prior to the filing of Abbott's response; nor was the United States aware prior to receiving Abbott's response that Abbott had undertaken a process to obtain Certificates of Search from current Hospira employees who had worked for Abbott Alternate Site between 1991 and 2003. (*See* January 28, 2008 e-mail from R. Ford to B. Murray, and February 1, 2008 response e-mail from J. Winchester to R. Ford, attached as Exhibits 10 and 11).

Abbott's March 3rd letter was a chart identifying by name each member of the Alternate Site sales force whom Abbott had disclosed to the United States, columns indicating the status of Abbott's production of the personnel file of each sales force member and the "personal/working file" of each sales force member (hereinafter "Abbott's March 3rd Chart" attached as Exhibit 15).  As shown by the March 3rd Chart, however, Abbott did not complete its production of relevant documents by March 3rd, nor has it done so to date.

By failing to produce the outstanding sales force personnel and working files by March 3, 2008, Abbott violated the Court's second Order.  Abbott's violations of the Court's Orders, including its late production of over 2.2 million pages of discovery after the March 31, 2008 deadline for deposing fact witnesses, and its failure to produce additional relevant evidence sought by the United States in discovery, has severely prejudiced the United States' ability to prepare its case for trial.

Among other issues, Abbott's late production of sales force files and its failure to produce documents in their entirety, resulted in the depositions of a large number of current and former Abbott employees remaining open pending Abbott's completed production.  Further, these late productions and non-productions have prevented the United States from asking witnesses about relevant evidence at their depositions.  By way of example, on June 13, 2008 (after the close of fact discovery), Abbott produced documents from a former Abbott Alternate Site sales force member (a current Hospira District Manager) two-and-a-half months after his deposition.  The documents were called for by a subpoena issued to the deponent by the United States with the return date the same day as his deposition, as well as numerous document requests made by the United States to Abbott.  (*See, e.g.,* requests 35-38, 40, 46, 48-50 and 54 of the United States' Second Request For Production to Abbott, November 17, 2006, attached as Exhibit 2.

Significantly, this sales force member had executed a Certificate of Search months earlier, prior to his deposition, certifying that he had *no* responsive documents in his working files. The late-produced documents which Abbott described as having come from this sales force member's personal working files, are highly relevant to the United States' case. Many of these documents had not previously been produced by Abbott and appear to be formal training materials used to train members of Abbott's Alternate Site sales force (such as ASPS training modules related to Trends in Reimbursement and Selling Injectables in the Alternate Site Market), as well as presentations and other documentation related to Customer Challenges / Trends in the Alternate Site Market, the Senior Care Market, and Exploiting a Competitive Account. Among other things, Abbott's failure to produce these documents prevented the United States' from being able to question Alternate Site sales force members and national sales trainers about these documents and their contents at their depositions. (*See,* June 13, 2008 letter from C. Geisler to R. Ford, attached as Exhibit 16; and June 30, 2008 letter from R. Ford to C. Geisler, J. Winchester and J. Cole, attached as Exhibit 17).

Finally, Abbott's failure to produce relevant documents has prevented the United States from identifying and deposing, at all, potentially knowledgeable individuals with information relevant to its claims – most especially those sales force members who worked for Abbott's Hospital Products Division between 1991-2001, the operative time period of this case.

On July 10, 2008, Abbott provided an updated version of its March 3rd Chart, reflecting its productions since March 3, 2008. The chart, titled "Alternate Site Sales Force Updated as of July 8, 2008" (hereinafter "Abbott's July 8th Chart"), is attached as Exhibit 18. As is clearly evidenced by Abbott's July 8th Chart, Abbott has still yet to complete its production. Abbott's failure to produce these documents and related Certificates of Search is the bases for the United States' requested relief.

9

## II.   LEGAL STANDARD

It is well settled that parties may obtain discovery regarding any matter, not privileged, which is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *Matthews v. Allen*, 2006 WL 2228845 at *1 (D. Mass. 2006). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (quoting *Hickman*). Abbott has not made a meritorious objection with respect to producing the requested Alternate Site sales force documents. It should therefore be ordered to comply with its discovery obligations and this Court's prior Orders, and to produce the requested documents.

## III.   DISCUSSION

### A.   Personnel Files of Members of Abbott's Former Alternate Site Sales Force

Abbott's July 8th Chart indicates that the personnel files for nearly half of the Alternate Site sales force have not been produced to the United States. Of the 153 sales force members listed on Abbott's July 8th Chart, Abbott has produced personnel files for only 83 (54.9%) of those individuals. (*See* Exhibit 18). Abbott admits that it has not produced relevant personnel documents in its possession for at least 1 member of its sales force. This violates the Court's Orders. Abbott should be ordered to produce these files to the United States immediately.

In addition, Abbott continues to make the claim that 48 of the personnel files contain no responsive documents, without providing any information about the types of documents that were located or why they are unresponsive to the United States' requests and this Court's Orders for production. This is especially necessary because each of the sales force personnel files that Abbott has produced contain typical personnel records of the type routinely retained by

10

employers, such as offer letters, employment agreements, performance evaluations, records of raises and promotions, *etc*. Without further details regarding why Abbott claims that the files of 48 out of 153 former Abbott employees contain no such records, neither the United States nor this Court can properly evaluate Abbott's claims of irrelevance, or whether spoliation has occurred.

With respect to the personnel files of an additional 8 members of Abbott's former Alternate Site sales force, Abbott claims, without explanation and without detailing any information regarding its search, that it "cannot locate the file". In an effort to resolve this issue without the Court's assistance, the United States made numerous requests for a description of the measures undertaken by Abbott and Hospira to locate the files, and an answer as to whether Abbott and Hospira are continuing to search for the records. Abbott has not responded to our inquiries. (*See, e.g.,* March 24, 2008 letter from R. Ford to J. Winchester, T. Tabacchi and C. Geisler, attached as Exhibit 19 at p. 2; April 29, 2008 letter from R. Ford to J. Winchester, T. Tabacchi, C. Geisler and J. Cole, attached as Exhibit 20 at p, 2; and August 5, 2008 letter from R. Ford and A. St. Peter-Griffith to J. Winchester and C. Geisler, attached as Exhibit 13 at pp. 3-4).

Accordingly, the United States respectfully requests that the Court again order Abbott to produce in their entirety, no later than October 15, 2008, the Alternate Site personnel files which Abbott claims contain responsive documents. The United States further requests that this Court order Abbott to produce, by October 15, 2008, those files that Abbott claims do not contain responsive documents, or, in the alternative, that the Court order Abbott to produce a representative list of the types of documents contained in those files, and an explanation as to

11

why each category is not responsive.  Finally, with respect to the missing personnel files, the

United States requests that this Court order Abbott to produce, by October 15, 2008,  a

description of the measures undertaken by Abbott and Hospira to locate the missing files, and an

order requiring Abbott and Hospira to continue searching for the missing files and to produce

them, if located.

> **B.**       **Working Files of Members of Abbott's Alternate Site Sales Force**

At the January 31, 2008 hearing on the United States' Motion to Compel Sales Force

Depositions and Documents, this Court ordered Abbott to produce, within 30 days, the working

files of *all* members of Abbott's Alternate Site sales force.  (*See* January 31, 2008 Tr. at 67:10-

68:4, attached as Exhibit 7).  Abbott has violated that Order.

In its rulings, this Court, did not limit the group of sales force members to those

employed by Abbott or its affiliate, Hospira.  Nor did Abbott seek such a limitation.  Indeed,

Abbott counsel stated, they are all "formers"; "not a single one of these people [the Abbott

Alternate Site sales force] still works for Abbott."  (*See* January 31, 2008 Tr. at 67:10-67:14).

Abbott counsel never told the Court that it could not or would not search for former employees or

produce their files.  To the contrary, Abbott counsel represented that it was working diligently to

gather their files from across the country.  (*See* January 31, 2008 Tr. at 67:10-68:1).  The Court

ordered the production of those files within 30 days.  (*See* January 31, 2008 Tr. at 68:2-68:4).

Nearly eight months later, Abbott has not complied with that Order.

In addressing what to do if Abbott could not locate a former employee, the Court

instructed Abbott counsel to "have that put in affidavit form."  (*See* January 31, 2008 Tr. at

70:13-71:2).  Abbott counsel went on to represent that for those former employees whom Abbott

could not locate, Abbott would provide the government with the employees' last known address,

12

so that the government could attempt to locate them, and presumably request their files. (*See* January 31, 2008 Tr. at 71:3-71:5). At the January 31st hearing, Abbott was also ordered to produce within 30 days information regarding the status of each sales force personnel file and working file – indicating whether the file had been produced or could not be found. (*See* January 31, 2008 Tr. at 68:5-70:19).

Thirty days later, on March 3, 2008, when Abbott's production of sales force working files and certifications were due, Abbott, took the position that the working files of former employees, which Abbott redefined as "those employees who are no longer employed by Abbott or Hospira", are "outside Abbott's possession, custody or control". Abbott never sought relief from the Court's Order to make such a distinction. Nonetheless, with respect to those newly defined "former employees", which number 96 of 153 members of the Alternate Site sales force (*see* Abbott's March 3rd and July 8th Charts), Abbott now apparently takes the position that it will not comply with the Court's Order, by refusing to produce those 96 working files. Abbott's position has been confirmed by its counsel in its March 3rd letter to the United States and in the parties' subsequent meet and confer discussions on this issue. (*See* March 3rd letter from J. Winchester to R. Brooker at p. 1 and footnote 1 to Exhibit B to the letter, attached as Exhibit 14).

Abbott's position on whether it has control over former employees and their files shifts at Abbott's convenience. Importantly, Abbott has taken a different position when its former sales force members were deposed by the United States. Abbott counsel represented these individuals during their depositions, accepted service of subpoenas on their behalf, and produced the documents called for by the subpoenas, after reviewing the documents for relevance and privilege. Further, for 2 former Abbott/Hospira employees whom Abbott counsel could not locate, Abbott provided to the United States their full names, last known contact information and

13

social security numbers, to enable the United States to conduct its own search for those individuals.  (*See* March 3, 2008 letter from J. Winchester to R. Brooker, attached as Exhibit 14).

The United States believes that Abbott's current position is contrary, not only to this Court's January 31st Order, but also to the negotiated Case Management Order governing this case, which distinguishes between former employees of a party and other third-parties.  (*See* CMO 29, ¶ 12, making each party responsible for coordinating the depositions of *current and former employees* of that party, and setting forth a process for formally noticing the depositions by Notice of Deposition, rather than by a subpoena.  *See also* CMO 29, ¶ 14, which sets forth a separate procedure for noticing the depositions of other third-parties, following the process set forth in Fed. R. Civ. P. 45).

Despite its prior representations to the Court, Abbott now takes the position that it will not search for the files of former sales force members or provide information to the United States so that it may do so, because, upon leaving Abbott, their documents were passed on to each sales force member's successor.  (*See* August 5, 2008 letter from R. Ford and A. St.Peter-Griffith to J. Winchester and C. Geisler, attached as Exhibit 13).  However, discovery has proved otherwise. Productions made by several witnesses who the United States was able to subpoena included documents that Abbott should have, in the first instance, but did not produce in response to the United States' discovery requests and this Court's Orders.

Finally, with respect to the working files of 3 members of the sales force who are *current* employees of Hospira, Abbott's July 8th Chart states that "collection is ongoing".  (*See* July 8th chart at pp. 1 and 6, attached as Exhibit 18).  According to Abbott's July 8th Chart, one of those current employees is reported to be on family medical leave.  With respect to that employee, Abbott states that "it will consult with her upon her return".  With respect to the working files of

14

the other two employees, the chart simply states, "Current Hospira, collection on-going".

Further, Abbott has identified the status of the production of 1 additional sales force member

only as "Current Hospira", without indicating whether the working files of that sales force

member has been produced to the United States.  Despite requests, Abbott has failed, even to

date, to produce the working files of these individuals, in violation of this Court's January 31,

2008 Order.

      Accordingly, the United States respectfully requests that the Court order Abbott to locate

and produce, no later than October 15, 2008, the working files of the 3 to 4 current Hospira

employees, as well as the working files of those sales force members who are no longer

employed by Abbott or Hospira.  In the alternative, the United States requests an order requiring

Abbott to produce by October 1, 2008, the social security numbers and last known contact

information for each former sales representative, who Abbott, in its July 8th Chart, defines as a

"former employee", so that the United States may attempt to contact them and obtain the relevant

records.  The United States further requests that it be allowed to take a limited number of

additional depositions of these individuals, should the documents in their possession warrant it.

### C.    Certificates of Search

      Certificates of Search executed by 3 Abbott sales force members (current Hospira

employees) fail to indicate whether the sales force members possess responsive documents.  The

United States has requested on several occasions, but Abbott has failed to produce, corrected

Certificates of Search for these individuals.  *(See e.g.,* June 18, 2008 letter from R. Ford to J.

Winchester, T. Tabacchi and C. Geisler, attached as Exhibit 12; and August 5, 2008  letter from

R. Ford and A. St. Peter-Griffith to J. Winchester and C. Geisler, attached as Exhibit 13).  Further,

Abbott has failed to confirm whether it has produced Certificates of Search for all Abbott

Alternate Site sales force members currently employed by Abbott or Hospira.  Although the United States sought this information from Abbott, in an attempt to avoid burdening the Court with this issue, Abbott has failed to respond to the United States' request for this information. (*See* August 5, 2008 letter from R. Ford and A. St. Peter-Griffith to J. Winchester and C. Geisler, attached as Exhibit 13).

We ask that the Court order Abbott to produce, by October 15, 2008, corrected Certificates of Search for 3 members of Hospira's sales force for whom incomplete Certificates of Search were previously produced; any responsive documents in the possession of those Hospira employees; and a certification stating whether it has produced completed Certificates of Search for and all accompanying responsive documents in the possession of Hospira's current Alternate Site sales force.

## III.    CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court order Abbott to comply with its discovery obligations and this Court's prior Orders, and to produce the documents requested herein.

Respectfully submitted,

For the United States of America,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

George B. Henderson, II
Assistant U.S. Attorney
John Joseph Moakley
  U.S. Courthouse
Suite 9200, 1 Courthouse Way
Boston, MA  02210
Phone:  (617) 748-3272
Fax:  (617) 748-3971


R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF
FLORIDA

Mark A. Lavine
Ann St.Peter-Griffith
Special Attorneys for the Attorney
General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax:  (305) 536-4101


For the relator, Ven-A-Care of the
Florida Keys, Inc.,

James J. Breen
The Breen Law Firm, P.A.
3350 S.W. 148th Avenue
Suite 110
Miramar, FL  33027
Phone:  (954) 874-1635
Fax:  (954) 874-1705


Dated:  September 25, 2008

ASSISTANT ATTORNEY GENERAL
GREGORY G. KATSAS

Joyce R. Branda
Daniel R. Anderson
Renée Brooker
Justin Draycott
Rebecca A. Ford
Gejaa T. Gobena
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Phone:  (202) 307-1088
Fax:  (202) 305-7797

17