UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti B. Saris |
| *United States of America, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, CIVIL ACTION NO. 06–CV–11337-PBS | Magistrate Judge Marianne B. Bowler |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO REQUIRE DEFENDANT ABBOTT LABORATORIES, INC. TO COMPLY WITH ITS <u>DISCOVERY OBLIGATIONS AND RELATED COURT ORDERS</u>**

# EXHIBIT 9



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, N.W.*  *Telephone: (202) 514-1511*
*Ninth Floor*  *Telecopier: (202) 305-7797*
*Washington, DC 20004*

November 20, 2007

*Via Electronic Transmission*

| | | |
|---|---|---|
| James R. Daly | R. Christopher Cook | Toni-Ann Citera |
| Carol P. Geisler | David S. Torborg | Jones Day |
| Tina M. Tabacchi | Jones Day | 222 East 41st Street |
| Jason G. Winchester | 51 Louisiana Avenue, N.W. | New York, NY 10017 |
| Jones Day | Washington, DC 20001 | |
| 77 West Wacker | | |
| Chicago, IL 60601-1692 | | |

Re:   *United States ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* 06–CV-11337-PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456/Civil Action No. 01-12257

Dear Counsel:

We write regarding several categories of depositions that the United States intends to take or to resume – to remind you of our outstanding requests and to formally notify you of deposition requests that we have previously discussed with Abbott counsel informally.

First, the United States has requested the depositions of Shelly Bronson and Abbott corporate representatives on the following topics:

> 1. Abbott's lobbying efforts on Medicare or Medicaid (federal or state) drug reimbursement policies or issues, including but not limited to lobbying and advocacy in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991); (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum

-2-

Transmittal AB-00-86 (September 8, 2000); and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

2. Consideration and approval of any positions, opinions or views advocated, advanced or supported by Abbott (or any employee, consultant or agent on Abbott's behalf) in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991); (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000); and (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003).

3. The distribution of, consideration of, and action taken with respect to the October 31, 2000 letter from Congressman Fortney "Pete" Stark to Miles White.

4. All facts related to Abbott's 2001 change in the reporting of its catalog or "list" price for HPD drugs to the public price reporting compendia, including but not limited to: (a) dates and location of meetings regarding the proposed change in Abbott's catalog/list price reporting practices; (b) identification of the individuals involved in discussions or consideration of the change in catalog/list prices; (c) rationales considered for either maintaining the catalog/list prices or lowering them; (d) identification of all documents or types of documents/analyses generated in connection with the 2001 catalog/list price change; and (e) identification of all individuals involved in the decision-making and approval process for the price change.

5. The authorship, utilization, reliance upon, accuracy of content, and distribution of the Contract Marketing Basic Operating Procedures Manual.

6. Abbott's data, databases and computer systems, including databases containing prices (contract, list, RxLink, parameter, catalog, competitive prices, *etc.*), sales/transactions, contracts, discounts, rebates, chargebacks, CHIPS, CAS, prices reported to third parties, IMS data, AMPs, ASPs, e-mails, storage and retention policies, accounting, tax reporting, forecasting and/or projecting revenues.

7. Abbott's corporate integrity or compliance plans and/or agreements, including any actions taken in connection with or as a result of the investigation, prosecution, and resolution of the government's claims against TAP and with regard to Medicare and all state Medicaid programs; compliance with all Medicare and Medicaid statutes, regulations, policies, procedures and requests from any CMS official, intermediary or state Medicaid program for information from Abbott; evaluation and analyses of government regulations and statutes.

-3-

8. Abbott's pricing policies, including procedures for setting prices, pricing impact on Abbott markets and sales, the reporting or other dissemination of any pricing information regarding any of the drugs at issue in this case; AWP practices, policies and procedures Abbott-wide; the existence of AWP related policies in some divisions like Ross but not in other divisions and the reasons therefore; all considerations that factored into price setting, including ability of the provider to recover dispensing fees, co-pays, *etc.*

9. All facts related to Abbott's 1995 changes in the reporting of any of its prices for vancomycin, and 2003 decision by Abbott personnel to lower or raise some retained HPD products pricing on the first day of the Hospira spin-off.

10. Abbott's reasons for the spin-off of Hospira as a separate company.

11. Abbott's Home Infusion operations, including its business model, consignment contracts, pricing policies, reimbursement services and training, and Abbott's reasons for closing its Home Infusion operations.

12. All communications regarding pricing, reimbursement, AWP, or spread with third-parties, including CMS or states, trade/industry groups, consultants, *etc.*

13. Abbott's Hospital Products Division's financial performance from 1991 through the Hospira spin-off in 2004, including but not limited to revenues (both at the division and group/sector level), profits/losses (both at the division and group/sector level) and business plans (both at the division and group/sector level).

We are awaiting a response from Abbott regarding proposed dates for these depositions.[1] As soon as possible, please contact Gejaa Gobena [(202) 307-1088] regarding requests 1-4 and 13 above, and contact Mark Lavine [(305) 961-9393] regarding requests 5-12 above, so that we may schedule these depositions in the near future.

Second, as you know, the United States has sought to take the depositions of the following individuals, for whom Abbott has moved for protective orders: Duane Burnham, Thomas Hodgson, Richard Gonzalez and Miles White. Should the Court allow these depositions to go forward, the United States requests that Abbott propose dates for these depositions within 10 days of any Order by the Court, and that the proposed dates be within the applicable discovery period, and not later than 30 days from the date of any Court Order allowing the United States to take the depositions.

---

[1] By agreement of the parties, Abbott must propose dates for the 30(b)(6) depositions on categories 1-12 no later than November 27, 2007. Pursuant to CMO 29, Abbott must produce dates for category 13 by December 11, 2007. We look forward to receiving proposed dates for the depositions by these dates.

-4-

Third, as previously discussed, numerous depositions remain open, including, but not limited to, the following: Peter Baker, David Harling, Ellen Klaus (30(b)(6) on Abbott's document production), Lynn Leone, Karla Kreklow and Virginia Tobiason. As a starting point for resuming depositions, at this time we request that you please provide dates that we may resume the depositions of the above listed individuals or alternatively, for any of these witnesses represented by separate counsel, please inform us whether you object to dates proposed by their counsel. Please contact Becky Ford [(202) 514-1511] regarding Mr. Harling's deposition. Please contact Ann St. Peter-Griffith [(954) 660-5669] regarding Mr. Baker's, Ms. Klaus', Ms. Leone's, Ms. Kreklow's and Ms. Tobiason's depositions. We would like to avoid having to make numerous trips to Chicago and would appreciate scheduling several reconvened depositions over the course over consecutive days.

Finally, the United States has recently received confirmation that Abbott has produced all documents it intends to produce from the personnel files of the Abbott Alternate Site Product Sales ("ASPS") field sales force. Although we have requested but and are still awaiting confirmation that Abbott has produced the files from each member of the ASPS field sales force from 1991 to 2003, as well as all documents from those representatives working files that are responsive to the United States' discovery requests in this matter, in the interest of time, we are formally notifying you of those sales representatives whom we intend to depose. *See* attached list at Exhibit A. Upon receipt of the requested confirmations and/or additional documents from Abbott, the United States may supplement this list. In the meantime, we ask that, pursuant to Case Management Order 29, Abbott provide proposed dates for the taking of these depositions within 10 days of this request. In addition to proposing dates for these depositions, please notify us if any of these individuals are represented by separate counsel, the attorney with whom we should coordinate the deposition (Jones Day or otherwise) and whether all responsive documents from the sales person's working files have been produced to the United States.

In closing, the United States requests that for each of the witnesses identified above, you provide a written explanation of your efforts to search for documents and electronic data (including whether key word searches were undertaken and, if so, which key words were used). If you are unwilling to provide this written explanation, we request that you provide a witness who can testify to the search for and existence, or lack of existence, of any such electronic documents and/or e-mails. Finally, for all of our deposition requests, we ask that the production of documents (electronic and hard copy) be completed at least five business days before the deposition.

Sincerely,

/s/

Rebecca A. Ford

Cc:   James Breen, Esq.