UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | Hon. Patti B. Saris |
| *United States of America, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* CIVIL ACTION NO. 06–CV-11337-PBS | ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO REQUIRE DEFENDANT ABBOTT LABORATORIES, INC. TO COMPLY WITH ITS <u>DISCOVERY OBLIGATIONS AND RELATED COURT ORDERS</u>**

# EXHIBIT 13



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, N.W.*                                        *Telephone: (202) 514-1511*
*Ninth Floor*
*Washington, DC 20004*

August 5, 2008

*Via Electronic Mail*

Jason G. Winchester
Carol P. Geisler
Jones Day
77 West Wacker Drive
Chicago, Illinois 60601

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, 06–CV-
      11337-PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL
      No. 1456/Civil Action No. 01-12257

Dear Jason and Carol:

      We write to follow-up on certain issues discussed during the June 30, 2008 meet and
confer conference and the parties' July 10, 2008 follow-up call.

      First, for the e-mail messages contained on Abbott's privilege log that identify non-
lawyers as the senders and recipients of those messages, you agreed to provide the names of the
lawyers to whom those messages were forwarded.  We have yet to receive a list of those names.

      Second, we understood that following our June 30th meet and confer, you conducted
another review of the lobbying documents contained on Abbott's privilege log.  Additionally, we
understood that upon further review, for certain of those documents, you agreed to withdraw the
privilege assertions and produce them.  To date, we have yet to receive the additional lobbying
documents or an amended privilege log reflecting the withdrawn privilege assertions as to those
documents that you agreed to produce.

-2-

Third, during the June 30th meet and confer, you agreed to produce corrected Certificates of Search for James T. Jones, Eric French, Sr., and Doug Harris; former members of Abbott's Alternate Site sales force for whom incomplete Certificates of Search were previously produced.[1] (*See* June 18, 2008 letter from R. Ford to J. Winchester, T. Tabacchi and C. Geisler). We have yet to receive corrected Certificates of Search or any responsive documents in Messrs. Jones, French or Harris' possession. Further, we understood from our discussion that upon producing corrected Certificates of Search for Messrs. Jones, French and Harris, you will have produced to the United States completed Certificates of Search for all current members of Hospira's Alternate Site sales force.[2] If our understanding of your representation is incorrect, please let us know.

For all of the above-listed items that you have agreed to produce, please send them to us no later than August 15, 2008.

Fourth, during our June 30th meet and confer, you stated that you were in the process of reviewing the confidentiality designations made by Abbott to transcripts of and exhibits to depositions taken in this case prior to January 1, 2008, as you have already done with respect to transcripts and exhibits from depositions taken after January 1, 2008. This re-designation is needed because Abbott unnecessarily, and over the United States' objections, designated transcripts as "Confidential" or "Highly Confidential" in their entirety. Such wholesale designation of entire transcripts is inappropriate under the terms of the Protective Order, which requires a party to make good faith determinations of the confidential nature of specific information, and complicates the day-to-day workings of this case. During the parties' June 30th meet and confer, you indicated that you would begin forwarding to us, on a rolling basis, revised confidentiality designations for those transcripts and exhibits. We have yet to receive any such revised designations for those depositions taken before January 1, 2008. Please inform us by August 15th, Abbott's anticipated schedule for providing revised confidentiality designations for those deposition transcripts and exhibits.

---

[1] The Certificates of Search of Messrs. Jones, French and Harris that were produced to us do not indicate whether they possess responsive documents in that on each form neither the "I Do Possess" nor the "I Do Not Possess Responsive Documents" box was selected.

[2] In this regard, we note that the verbal representation made by Abbott counsel during the June 30th meet and confer conference differs from information contained in footnote 1 of the updated chart you provided to us on July 10, 2008, detailing Abbott's production of its sale force members' personnel and working files. Footnote 1 states in relevant part, "Abbott requested relevant documents from the current Hospira Alt Site field sales force (44 people). Thus far, 17 of those people have executed confirmations stating that they have no responsive documents, and those confirmations have been produced to DOJ. Abbott is following up with the remaining 27 people." If this, or any other, portion of footnote 1 contains incorrect information, please let us know. Otherwise, please let us know how to square this apparent inconsistency in your representations.

-3-

Finally, during the June 30th meet and confer, you agreed to produce an updated chart detailing Abbott's production of its sale force members' personnel and working files; items (the files and the chart) which Abbott was previously ordered by the Court to produce. (*See* Tr. of May 22, 2007 hearing before Magistrate Judge Bowler, and Tr. of Jan. 31, 2008 hearing before Magistrate Judge Bowler). We received an updated chart from you on July 10, 2008.[3] (*See* July 10, 2008 e-mail from J. Winchester to A. St. Peter-Griffith, and related attachment – the "July 8th chart"), however, several issues remain outstanding. For example, the chart lists three Alternate Site sales force members – Tonita F. Anderson, Catrina R. Smith and Craig D. Smith – for whom collection of their working files is still listed as "ongoing".[4] (*See* July 8th chart at pp. 1 and 6). With respect to Ms. Anderson's working files, the July 8th chart states that she is on family medical leave, and that "[you] will consult with her upon her return". With respect to the working files of Catrina Smith and Craig Smith, the chart simply states, "Current Hospira, collection on-going". Please advise us why the files of each of these employees were not produced during the fact discovery period, and produce the working files of Catrina Smith and Craig Smith. With respect to the working files of Ms. Anderson, please advise us when she began family leave, when she is expected to return, what, if any, steps were taken by Abbott to produce Ms. Anderson's working files in her absence, and the anticipated date by which her files will be produced.

The July 8th chart also indicates that the personnel files for nearly half of the Alternate Site sales force have not been produced to the United States.[5] The chart describes the personnel files that have not been produced as located but containing no responsive documents, or the entries indicate that Abbott cannot locate the file or the file has been destroyed. Despite our long-standing request and your prior offer to do so (*see, e.g.,* July 25, 2007 letter from R. Ford to J. Winchester, summarizing the parties' July 6, 2007 meet and confer conference, p. 1) you have not provided a list of the types of documents contained in the files which you claim contain no responsive documents. This is especially necessary because the files that have been produced by Abbott contain typical personnel records of the type routinely maintained by employers, such as offer letters, employment agreements, performance evaluations, records of raises and promotions, *etc.* Further, nearly every former Abbott Alternate Site sales force member deposed in this matter who was asked, testified that they received an annual, written performance evaluation. To date, you have not explained whether these types of documents exist for the members of the sales force on Abbott's July 8th chart for whom personnel files have not been produced. If such documents exist, please explain why they have not been produced. If they do not exist, please

---

[3] Chart titled "Alternate Site Sales Force Updated As of July 8, 2008".

[4] The United States objects to Abbott's production of these documents after the close of discovery, and reserves its right to depose any Alternate Site sales force member or other employee to whom the late-produced documents relate.

[5] Of the 153 sales force members listed on Abbott's July 8th chart, Abbott has produced personnel files for only 84 of those individuals (54.9 percent).

-4-

describe the general nature of the documents in the un-produced personnel files. Without this information, the United States cannot adequately assess whether Abbott has complied with plaintiffs' discovery requests and the Court's orders. Further, with respect to those files that Abbott claims it cannot locate, please provide an explanation of what Abbott has done to search for the records, and whether any further efforts to locate those records are underway or anticipated.

Further still, as with the previous version of this chart, the July 8th chart continues to list over 60 percent of Abbott's Alternate Site sales force as "Former Employee[s]" for whom Abbott claims are outside of its possession, custody or control.[6] The United States disagrees with Abbott's current position on this matter,[7] and reiterates its request that if Abbott will not attempt to locate the working files of these individuals, that it provide the United States with the full names and last known contact information for each "Former Employee", so that the United States may attempt to do so. In fact, at the January 31, 2008 hearing on the United States' Motion to Compel Deposition Dates for Members of [Abbott's] Alternate Site Sales Force and to Produce Related Documents (Dkt. No. 4984), the Court ordered Abbott to produce the personnel and working files of Abbott's Alternate Site sales force, or for those members of the sales force for whom Abbott could not locate, to provide their last known contact information (*see* Tr. of Jan. 31, 2008 hearing before Magistrate Judge Bowler at pp. 58-71), and Abbott agreed to do so (*see* Tr. at p. 71). At our June 30th meet and confer, you stated that Abbott would not search for the files of former sales force members because, upon leaving Abbott, their documents were passed on to each sales force member's successor. However, subpoenas we have issued to former employees (*see, e.g.,* subpoena productions of J. Less, D. Harling and T. Burchieri) have proved this assertion wrong, as they have resulted in the production of documents that Abbott should have, in the first instance, but did not produce.

---

[6] Of the 153 sales force members listed on Abbott's July 8th chart, 96 of them (62.7 percent) are listed as a "Former Employee" outside of Abbott's possession, custody or control.

[7] Abbott has been, at best, inconsistent in its determinations about whether "Former Employees" are outside of its possession, custody or control. Importantly, Abbott did not take this position with respect to the former sales force members deposed by the United States. In fact, Abbott represented these individuals during their depositions, accepted service of subpoenas on their behalf, and produced the documents called for by the subpoenas. In producing documents responsive to the United States subpoenas to those individuals, Abbott often did so using the Bates prefix used for document productions made by Abbott. Further, for two former Abbott/Hospira employees whom Abbott counsel could not locate, Abbott provided to the United States their full names, last known contact information and social security numbers, to enable the United States to conduct its own search for those individuals, whom Abbott claimed, after a diligent search, that it could not locate.

-5-

We sincerely hope that the parties can resolve these discovery differences without having to file with the Court yet another motion to compel these documents or a motion to enforce the Court's orders. For all of the documents and information which you previously agreed to produce, we ask that they be provided no later than August 15, 2008. For those issues upon which we continue to disagree, please let us know by that date whether you believe another meet and confer conference may help narrow the outstanding issues. If you do not respond to us by August 15th, or respond that another meet and confer will not assist in narrowing the areas of disagreement, we will proceed by seeking relief from the Court.

Sincerely,                                   Sincerely,

/s/                                          /s/

Rebecca A. Ford                              Ann St. Peter-Griffith

Cc:        James J. Breen, Esquire