UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | MDL No. 1456 |
| | Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti B. Saris |
| *United States of America, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, CIVIL ACTION NO. 06–CV-11337-PBS | Magistrate Judge Marianne B. Bowler |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO REQUIRE DEFENDANT ABBOTT LABORATORIES, INC. TO COMPLY WITH ITS DISCOVERY OBLIGATIONS AND RELATED COURT ORDERS**

# EXHIBIT 24



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

601 D Street, N.W.  
Ninth Floor  
Washington, DC 20004

Telephone: (202) 514-1511

March 6, 2008

*Via Electronic & First Class Mail*

Mr. Jason G. Winchester  
Ms. Tina M. Tabacchi  
Ms. Carol Geisler  
Jones Day  
77 West Wacker Drive  
Chicago, Illinois 60601-1692

Re:   *U.S. ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, 06–CV-11337-PBS, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456/Civil Action No. 01-12257

Dear Counsel:

I write concerning the production of documents by Abbott's former Alternate Site sales force in response to subpoenas issued to them by the United States and in response to Certificates of Search sent to them by Hospira.

With respect to subpoenas issued by the United States to members of Abbott's former Alternate Site sales force, we have two primary concerns at this time. First, certain members of the sales force who have produced documents responsive to those subpoenas have testified that the volume of documents provided to Abbott counsel was much greater than the volume of documents produced to the United States. *See e.g.*, 2/13/08 testimony of Frank Genuardi, Tr. at 36:16-41:16. Mr. Genuardi testified that in response to the United States' subpoena, he provided Abbott counsel a box of documents weighing approximately 8 pounds, as well as an 8 inch high stack of documents. Tr. at 37:15-18. With respect to those documents, Mr. Genuardi testified that "[a] lot of them were contracts, really just about everything that I had from that time period." Tr. at 37:22-38:1. Mr. Genuardi further testified that the documents he turned over to Abbott counsel were the working files related to his accounts. Tr. at 37:22-38:1. Despite the volume

and the nature of the documents that Mr. Genuardi provided to Abbott counsel in response to the subpoena – documents which appear to be responsive to requests F - P of the United States' subpoena to Mr. Genuardi and to the United States' Request For Production of Documents ("RFPs") served on Abbott many months ago – Abbott, on Mr. Genuardi's behalf, produced to the United States only approximately 38 pages of documents consisting of Mr. Genuardi's resume, performance appraisals and personnel type information. *See* ABT-DOJ 0377300 - ABT-DOJ 0377337. Abbott did not produce to the United States any of Mr. Genuardi's working files that he gathered in response to the subpoena. The United States requests an explanation for the culled production, and to the extent that any of the documents that Mr. Genuardi turned over to Abbott are responsive to the subpoena or to the United States' RFPs to Abbott, and relate to the time period up to and including 2003, the United States requests production of those documents by March 14, 2008. Due to the short time period left in discovery, the prompt production of any such documents is imperative. If Abbott believes that the documents are not responsive to the United States' subpoena to Mr. Genuardi or its RFPs, we request that by March 14th, Abbott provide a detailed explanation as to why the documents are not responsive, including whether any documents are being withheld from production on the grounds of privilege.

Similarly, at her deposition on February 14, 2008, former Abbott Alternate Site sales representative Kaye Jessup testified that in response to the subpoena duces tecum issued to her by the United States, she provided to Abbott counsel documents including training materials, personnel information and customer files / working files for her accounts. *See* 2/14/08 testimony of Kaye Jessup, Tr. at 170:6-186:1. Ms. Jessup further testified that she produced these materials in paper format, as well as on a "thumb drive" or "flash drive". *See* Tr. at 170:22-174:3. The production made to the United States by Abbott on behalf of Ms. Jessup contained training materials and a copy of Ms. Jessup's resume. The production did not include any of her customer files / working files, either in hard copy or electronic form. *See* KJ 000001 - KJ 001884. Again, the United States requests production of those documents by March 14, 2008. If Abbott believes that the documents provided by Ms. Jessup but withheld from production to the United States are not responsive to the United States' subpoena to Ms. Jessup or its RFPs to Abbott, we request that by March 14th, Abbott provide a detailed explanation as to why the documents are not responsive, including whether any documents are being withheld from production on the grounds of privilege.

Further still, employees of Abbott's former Alternate Site business unit have, in response to the United States' subpoenas, produced documents called for by the United States' RFPs to Abbott. These documents should have, but do not appear to have been, previously produced by Abbott. For example, in response to a subpoena duces tecum issued to former Abbott Alternate Site sales force member Daryl Miser, Mr. Miser produced numerous documents relating to performance bonuses and incentives paid to sales and marketing personnel. *See, e.g.*, ABT-DOJ 0394191-0394206; ABT-DOJ 0394222 - 0394452.[1] These documents were specifically called

---

[1] The production made by Mr. Miser included several documents that appear to have been sent to the entire Abbott Alternate Site sales force between 1998 and 2003 relating to sales

for by RFP 50 of the United States' Second Request For Production of Documents that were issued to Abbott on November 17, 2006.[2] Nearly 16 months after the request was made, the United States appears to have received, for the first time and from a source other than Abbott, important documents requested from Abbott during discovery.[3] The United States has received similar productions in the first instance from former Abbott employees when those productions should have been provided to the United States by Abbott.[4] These productions by former Abbott employees highlight Abbott's discovery failures and call into question the documents in Abbott's possession, custody and control which have yet to be produced to the United States in the more than 18 months of discovery to date. The only other potential explanation for Abbott's failure to produce these documents appears to be that Abbott failed to preserve highly relevant documents even though Abbott admitted in response to a Request for Admission that it has been on notice of the United States' investigation of this case since as early as 1996. *See* Abbott's Response to the United States' Second Requests For Admission, no. 12, 1/18/08.

On March 3, 2008, pursuant to Magistrate Judge Bowler's January 31, 2008 ruling, Abbott provided the "[s]tatus of production of alternate site sales force personnel and personal/working files" (which is the subject of a separate letter to follow). However, Abbott is in violation of that Order which required it to produce all documents by that time or state that certain documents could not be found. *See* 1/31/08 Hearing Tr. at 107:5-7. In Abbott's March 3rd letter, Abbott counsel indicated that it is continuing to collect responsive documents, and that it has yet to complete production with respect to certain of the United States' RFPs. The United States has and continues to be severely prejudiced by Abbott's late production of documents.

---

incentive results, incentive payouts, incentive tracking, and sales incentive plans, including: "Game Plan[s]", "Incentive Program Explanation and Policies", "Incentive Package Account Manager" and "The Package". *See, e.g.*, ABT-DOJ 0394290 - 0394452, and 2/28/08 Testimony of Daryl Miser, Rough Tr. at 114:23-115:24 and 125:6-126:13.

[2] RFP 50 to Abbott states as follows: "Documents relating to performance evaluations and performance based bonuses, promotions, salary increases and incentives paid to sales and marketing personnel, including but not limited to the creation, administration, award or granting of any such performance based bonuses, promotions, salary increases and incentives."

[3] The United States searched all documents produced to date by Abbott to the United States and did not locate any of the several sales incentive plans produced by Mr. Miser (*see, e.g.*, ABT-DOJ 0394255 - 0394256, ABT-DOJ 0394258 and ABT-DOJ 0394290 - 0394452). With respect to only one such plan, Abbott produced a draft version of a similar plan, but Abbott does not appear have to produced a final version of that plan to the United States, or the version of that plan produced to the United States by Mr. Miser (or any of the other plans produced to the United States by Mr. Miser).

[4] *See, e.g.*, productions made by former Abbott employees Bruce Rodman, Trudi Burchieri and David Harling.

-4-

Among other issues, Abbott's late production has resulted in the depositions of a large number of current and former Abbott employees remaining open pending Abbott's completed production. It is imperative that Abbott collect the remaining documents and complete its production so that the United States may continue and complete its depositions of selected members of Abbott's sales force and other witnesses before the close of discovery in 25 days, especially where, at this juncture, Abbott is in violation of the Court's Order. The United States reserves the right to seek additional time from the Court to take the depositions or to reconvene depositions in light of Abbott's failures outlined herein.

I also write with respect to the Certificates of Search sent to certain members of the former Abbott Alternate Site sales force. First, to date, the United States has only received Certificates of Search for 14 former Abbott employees. Despite Abbott's assertion in its January 25, 2008 Response to the United States' Motion To Compel Abbott to Provide Deposition Dates for Members of its Alternate Site Sales Force and to Produce Related Documents that "many of [the certifications had] already been produced to the government; [and that] the remaining verifications will be forthcoming shortly", the United States received its first production of such certifications (14 of them) on February 1, 2008, and to date, has received no additional productions containing certifications.[5] Even had certifications been produced for all members of Abbott's former Alternate Site sales force, such certifications cannot serve as a substitute for Abbott's obligation to ensure the preservation and production of documents, for all members of its sales force, including those employees who left Abbott's employment in or after 1996.

Second, we reiterate our request that a copy of any lists, instructions or guidance provided to those former Abbott Alternate Site employees who received the Certificate of Search be provided to the United States. In deposing many of the members of the sales force for whom completed Certificates of Search were produced to the United States, most could not describe what they understood the term "AWP litigation related documents" – the types of documents for which they were instructed to search for – to mean. *See, e.g.*, 2/7/08 testimony of Angeline Massaro, Tr. at 17:3-18:1; 2/13/08 testimony of Frank Genuardi, Tr. at 19:6-23:6; and 2/14/08 testimony of Kaye Jessup, Tr. at 155:7-160:19. Further, many of the witnesses could not recall whether they received a definition of the term "AWP litigation related documents", a list of the types of documents to search for, or any instructions from Abbott or Hospira on the types of

---

[5] *See* February 1, 2008 letter from C. Geisler to R. Brooker enclosing Certificates of Search from 14 members of Abbott's former Alternate Site sales force (ABT-DOJ 0377286 - 0377299). To our knowledge, no subsequent production of Certificates of Search has been made to the United States, although the letter indicates that the remaining forms would be produced on a rolling basis. If Abbott has produced any Certificate of Search to the United States outside of the formal production process being utilized by both parties (*e.g.*, by providing a Certificate of Search to a DOJ attorney at or shortly before the deposition of a member of the sales force, or any other informal method), please let us know so that we can locate any such documents and ensure they are included with as part of Abbott's production.

-5-

documents to produce in response to the Certificate of Search. Further still, it appears that some former Abbott Alternate Site sales representatives were not provided with Certificates of Search or asked to conduct a search for responsive documents with respect to Abbott's/Hospira's recent round of searches, which Abbott witnesses have testified commenced in our around December 2007. *See, e.g.*, 2/21/08 testimony of Keith Aldy, Rough Tr. at 250:10-20. This testimony along with the widespread testimony given by members of the sales force that they routinely destroyed documents and were not asked to preserve documents or to search for and produce documents, if at all, until 2003 or 2004 (*see, e.g.*, 1/23/08 testimony of John Moran, Tr. at 216:12-224:13; 1/31/08 Testimony of Doris Roach, Tr. at 241:10-246:2; 2/13/08 testimony of Frank Genuardi, Tr. at 279:22-285:1; 2/14/08 testimony of Kaye Jessup, Tr. at 248:5-250:13; 2/27/08 Testimony of Michael Ramsey, Rough Tr. at 10:14-17:22; 2/28/08 Testimony of Daryl Miser, Rough Tr. at 8:24-26:17; and 3/4/08 Testimony of Mark Szewczyk, Rough Tr. at 190:14-192:24), seriously calls into question the value of the Certificates of Search and any reliance that Abbott places upon them, as well as any certifications made by Abbott or Hospira regarding production of the working and/or personnel files of Abbott's former Alternate Site sales force.

As you know, the United States' depositions of former Abbott sales representatives are underway. Accordingly, among the United States' other specific requests made herein, it is imperative that Abbott and Hospira produce the personnel files and working files of all members of the sales force (including those who Abbott described in its March 3, 2008 letter to the United States[6] as "former employees)[7] immediately so that the depositions are no longer constrained by Abbott's failure to produce documents relevant to these witnesses. The Court expressly ordered that these documents be produced within 30 days of the date of the hearing (January 31, 2008), or no later than March 3, 2008. *See* 1/31/08 hearing Tr. at 104:17. Abbott is in violation of that order.

---

[6] *See* 3/3/08 letter from J. Winchester to R. Brooker.

[7] If Abbott takes the position that is not obligated to search for, contact and produce documents in the possession of its former employees, we request that the last known contact information and social security numbers for each such employee be provided to the United States no later than March 14, 2008, so that we may attempt to locate them and obtain responsive documents.

Finally, as stated on previous occasions, the United States reserves its right to depose or to continue depositions of any members of Abbott's former Alternate Site sales force who were belatedly disclosed to the United States (such as the three additional members of the sales force disclosed to the United States for the first time on March 3, 2008 – Jack Miller, Melissa Clark and Charlotte Terhune, as well as those members of the sales force disclosed to the United States for the first time on December 19, 2008, including William Lotz), those members of the sales force for whom personnel or working files were belatedly produced (such as Michael Beck, whose personnel file was produced to the United States on January 17, 2008), or those members of the sales force for whom the production of personnel or working files is ongoing.

Sincerely,

Rebecca A. Ford

Cc:	James Breen, Esquire