```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL No. 1456 ) CIVIL ACTION NO. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) |

**MEMORANDUM AND ORDER RE: REQUESTED FINAL APPROVAL
OF THE ASTRAZENECA CLASS 1 SETTLEMENT**

October 2, 2008

Saris, U.S.D.J.

The parties have moved for Final Approval of the AstraZeneca Class 1 settlement, as amended. The request is **ALLOWED**, subject to certain additional modifications as outlined below. Some background is needed.

1. <u>The initial allocation proposal</u>

On May 1, 2005, the Court heard oral argument on a joint motion for entry of an order granting final approval of the AstraZeneca Class 1 settlement (Docket No. 5218). Named class representative Ms. Joyce Howe objected to the final approval of the national class settlement, as well as to the petition for attorneys' fees, reimbursement of expenses, and compensation to the named class representatives. The brief in support of the objection was filed in an untimely fashion the morning of the hearing. No one appeared to argue on her behalf.

At the hearing, the Court orally rejected the proposed

distribution formula.  Under the original agreement, AstraZeneca agreed to pay (1) double the valid claims of class members and then (2) up to $10 million to mutually acceptable charitable organizations funding cancer research or patient care, subject to a total maximum settlement amount for claims made and cy pres of $24 million (not including attorneys' fees and other costs). Based on the forecasted number of claims, plaintiffs predicted that AstraZeneca would likely pay $10 million to charitable organizations under the terms of the agreement.

The Court expressed two main concerns with the proposed distribution scheme.  First, the proposed formula paid out the same damages to Medicare beneficiaries who had the strongest claims within the so-called "heartland period" from December 31, 1998 to December 1, 2003, as to those class members with weaker claims.  The heartland period begins when the Medicare statute established "Average Wholesale Price" as the statutory benchmark and ends with the passage of the Medicare Modernization Act which changed the statutory standard for Medicare reimbursement.[1] Second, the expected cy pres fund was too high.

2. The amended allocation formula

---

[1] Prior to this, AWP was a regulatory standard.  While plaintiffs have a viable claim under the regulation, under most state statutes of limitations, the claims arising prior to 1997 would be untimely unless there is a state discovery rule.  As such, issues regarding when the cause of action accrued would vary state-to-state.

2

In response to the first criticism, on July 15, 2008, plaintiffs filed an amendment which tripled (instead of doubled) the damages in the heartland period, offsetting this increase with an equivalent decrease in the cy pres fund.  This is the approach taken in the Track 2 settlement.  I find it is a fairer approach.

My remaining concern is still the amount of the likely cy pres fund.  With respect to the final payout under the amended allocation formula, plaintiffs predict that over $6 million will be paid to charities.  That is an unseemly amount.  These extra funds should be divided among the non-heartland claimants pro rata up to the point of trebling the damages.  Any remaining funds can be paid out in cy pres funds to charities, as approved by the Court.  This approach will maximize recovery to the class members themselves and keep the total amount of the agreement constant.

3.  Howe's objections

At the hearing, Plaintiffs addressed, and then briefed, other issues raised by Ms. Howe's objection.  Ms. Howe challenged the amount of fees and expenses.  I find that in light of the high risk and complexity of the litigation, and the contentiousness of the seven-year battle, it is appropriate to pay class counsel 30 percent of the common fund.  Howe encourages the Court to give 25 percent of the fund rather than the

initially requested 33 1/3 percent. Plaintiffs have reduced the request of 33 1/3 percent to 30 percent. I find 30 percent of the common fund is fair. A percentage-of-fund approach makes more sense because this multi-district litigation has many moving pieces with common issues and it would be too difficult to calculate a fair lodestar for this piece of the litigation.

Determining the amount in the common fund is complicated by the way in which the settlement is structured. AstraZeneca has agreed to pay $8.6 million in fees and costs ($6,500,000 for attorneys' fees and $2,100,000 for litigation expenses) "on top of" the settlement award of $19 million in projected claims and cy pres, and $1.0 million in estimated notice and administrative costs. Counsel explains that the total value of the settlement is thus $28.6 million (based on projected claims and cy pres, estimated notice and administrative costs, and the attorneys' fees and costs that AstraZeneca has agreed to pay) and I treat that amount as the common fund. Accordingly, I award attorneys fees' and costs in the amount of $8,580,000 (30% x $28.6 million).

With respect to costs, Plaintiffs estimated $2.1 million in costs by dividing the total amount of ligation costs to date by four because there were four defendants left in Track I. Plaintiffs did not track or allocate expenses by defendant. I find that $2.1 million is not a fair estimated amount of

4

expenses.  This method results in holding the Medicare beneficiary class responsible for the full amount of the costs incurred in the bellwether trial against AstraZeneca, which involved primarily third party payors.  However, this skirmish is much ado about nothing.  The plaintiffs concede they arbitrarily disaggregated the $8.6 million fee and cost amount as a means of "laying the foundation for the requesting counsel to inject the $2.1 million cost 'piece' back into the AWP litigation on a going forward basis."  As stated earlier, I have found that $8,580,000 is the fair amount of attorneys' fees and costs.  Counsel can apportion that amount as a housekeeping matter between fees and costs without the Court's imprimatur (unless there is an objection).

   I reject brevis the other two objections by Ms. Howe for the reasons well stated in plaintiffs' brief.  Ms. Howe argues that all the settlement money should be paid out to the nearly 10,000 class members who have made claims in the actual co-payment amounts provided by the Centers for Medicare Services.  Plaintiffs point out that Ms. Howe's proposal would pay class members three times the full 20 percent Medicare co-pay regardless of whether class members actually made such payments.  As plaintiffs reasonably respond, Ms. Howe's proposed procedure would result in an overpayment of certain class members.  Plaintiffs also plausibly explain why Track I and Track II should

5

be treated differently as a practical matter.

Ms. Howe also argues that the Court should provide adequate protection (through a release, indemnification, or otherwise) to class members to ensure they keep all of their claim money, rather than being threatened by future subrogation claims from third party payors. However, there is little likelihood that the TPPs can seek subrogation rights to monies paid as co-payments.

Finally, counsel objects to the request of co-lead counsel to award them a lump sum fee and cost amount, leaving it wholly to their unfettered discretion as to how to allocate it. The Court will review any challenges to the distribution.

## ORDER

The parties shall revise the proposed distribution formula consistent with this opinion and submit it to the Court within 15 days.

/s/ Patti B. Saris
PATTI B. SARIS
United States District Judge