# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In Re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL DOCKET NO. 1456<br><br>Civil Action No. 06-CV-11337<br>Lead Case No. 01-CV-12257 |
| THIS DOCUMENT RELATES TO: | ) ) | Judge Patti B. Saris |
| *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.* | ) ) | Magistrate Judge Marianne B. Bowler |

## ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S DUPLICATIVE MOTION TO COMPEL DOCUMENTS

In the current motion, (Dkt. No. 5609, 5610) which is duplicative of another motion that was filed at the close of discovery and that is still pending before the Court (*see* Dkt. No. 5179, 5180), the Government returns yet again to the subject of personnel files and the so-called "working files" of those persons who served in the field sales force of Abbott's former Hospital Products Division.[1]  The Court already considered this issue more than a year ago and issued a ruling (Ex. A, 1/31/08 Hr'g Tr. at 107-108), with which Abbot has complied in full – expending considerable time and money locating and producing any responsive personnel or personal files that were within Abbott's possession, custody, or control.  There simply are no more responsive documents to produce.  Abbott has made this clear to the Government, even providing a chart detailing the collection efforts.  For the Government to file yet another motion (on top of the one already pending) on this subject is wasteful of the Court's time and resources.

In addition to rehashing stale disputes over documents, the Government makes an extraordinary (and untimely) request that this Court order up to thirty-one of Abbott's witnesses to submit to another deposition in this matter.  This request should be rejected out of hand.

---

[1] Because the Government's impatience has now led to the filing of two motions seeking the same relief, Abbott responds to this motion and respectfully incorporates herein its response to the Government's previous motion as well.  (Dkt. No. 5258).

Abbott went to great effort to track down and produce these former HPD representatives for deposition – despite the fact that they are scattered across the country, and only 4 of them still work for Abbott. These witnesses have been deposed at length, some for more than a full day. The fact that Abbott produced a handful of additional documents relating to *one* of the former sales representatives after that person's deposition (the sole basis of the Government's request) is not enough to justify another deposition of that witness, much less dozens of others. The Government's motion should be denied in its entirety.

## I.    THE GOVERNMENT'S MOTION SHOULD BE DENIED

### A.    Abbott Has Complied With The Court's Orders And Has Completed Production Of Responsive Personnel And Working Files.

This Court first took up this issue on May 16, 2007, upon the Government's motion to compel the compensation history and employment reviews of Abbott's former Alternate Site sales force. (Dkt. No. 4047, 4048.) At that hearing, the Court ordered Abbott to produce responsive documents from the personnel files of the sales force. As the Court made clear, "that which is not relevant should not be produced and if there is no information in the file relating to the request, the file is not produced." (Ex. B, 5/16/07 Hr'g Tr. at 57.) This issue arose again on January 31, 2008, after the Government filed another motion to compel the production of personnel files of the former HPD Alternate Site sales force. (Dkt. No. 4799, 4800.) At the second hearing, the Court ordered Abbott to provide the Government with summary information about the personnel file production, indicating those individuals for which files were produced and those for whom files either contained no responsive documents or could not be found. (Ex. A, at 107.)

Abbott has complied fully with those orders and has completed its production of responsive documents. Under the guise of "enforcing" those orders, however, the Government

now seeks to twist and expand them beyond anything the Court directed, attempting to compel Abbott to produce non-responsive documents and documents outside its possession, custody and control. This should fail.

### 1. Abbott Has Produced Responsive Documents From All Personnel Files.

Abbott, with the full cooperation of Hospira, has undertaken the time-consuming task of searching for and reviewing documents from all of the personnel files that could be located for the 153 persons who served in the former HPD Alternate Site field sales force from 1991 through 2003.[2] Abbott has produced all responsive documents from those personnel files.[3] Additionally, Abbott produced two electronic spreadsheets that contained the salary histories of all of the relevant individuals. Abbott has also kept the Government informed of its progress toward completion of this project by providing and updating a detailed chart showing the status of production of personnel and working files for each of these 153 individuals. (Ex. C, 3/3/08 Letter from J. Winchester to R. Brooker and 7/10/08 Email from J. Winchester to A. St. Peter-Griffith.)

Unsurprisingly, not all of the personnel files yielded relevant documents. Magistrate Judge Bowler anticipated as much when she initially order Abbott to search the files. When asked whether she was ordering Abbott to produce the entire personnel file or just the responsive documents from those files, Judge Bowler responded: "No, I think what is responsive to the interrogatory [should be produced] because people have all other kinds of information that's totally irrelevant." (Ex. B, at 56.) The Court specifically indicated that documents like resumes

---

[2] Only four of these individuals are current Abbott employees.

[3] The Government complains that Abbott has not produced relevant documents from one personnel file. (Mot. at 10.) Abbott produced the relevant documents from the personnel file of Charlotte Terhune on May 8, 2008. This was the last located personnel file from which documents were to be produced.

and copies of college degrees would not be relevant and would not have to be produced. (*Id.*) Even the Government admitted that it was not interested in these irrelevant documents, stating that "…we don't want irrelevant stuff, … we're happy to specify that." (*Id.*) Abbott followed the Court's instructions to the letter, producing any documents from the personnel files that could remotely be relevant to this case and responsive to the Government's requests, but leaving behind documents like resumes and college degrees. Abbott was transparent in this process and has told the Government on numerous occasions how it conducted the search and what types of documents were produced or not produced. Despite all of this, the Government now demands, based on nothing more than its say-so, that Abbott go back and produce the entire personnel file, which – given Abbott's thorough search and production – would garner only irrelevant, non-responsive documents. This demand is inconsistent with Judge Bowler's orders, and finds no support in the law or logic. It should be rejected.[4]

### B. Abbott Has Produced Responsive Documents From Alternate Site Working Files Within Its Possession, Custody or Control.

As it did with respect to the personnel files, Abbott expended substantial time and resources tracking down and producing responsive documents from all of the so-called "working files" of the former HPD field sales members. Abbott searched all of these files that are within its own possession, custody, or control, and also worked closely with Hospira to search all such files that are now in Hospira's custody (because the vast majority of the former HPD sales force, and their files went to Hospira at the time of the spin-off in 2004). Once again flouting the Federal Rules of Civil Procedure, the Government now asks this Court to compel Abbott to seek out and produce documents that may be in the possession of former HPD sales force members

---

[4] The Government also asks the Court to direct Abbott to continue searching for the eight personnel files it was unable to find. (Mot. at 12.) Respectfully, Abbott has conducted a diligent search for these personnel files, searching in every place where the files might reasonably be located, but to no avail. There is nothing to be gained by forcing Abbott to search again.

who no longer work for either Abbott or Hospira, and are thus outside of Abbott's or Hospira's possession, custody or control. The Government has no proof that such individuals actually have documents – indeed, they should not, since the practice at both Abbott and later Hospira was for departing employees to transfer their files to their replacements, rather than taking them after they left the company – but nevertheless demands that Abbott go to the extraordinary task of investigating this possibility. This is blatant over-reaching, and the record establishes that the burden of this search would far outweigh any possible benefit.

Abbott's search for these working files has been diligent and comprehensive. Abbott searched its archives for responsive files and also contacted all former HPD Alternate Site field sales employees who are still in the employ of either Abbott or Hospira to request responsive documents. In addition, knowing that the Government was seeking information from former HPD sales representatives who are no longer employed by Abbott or Hospira, Abbott investigated where any working files of those former employees would most likely reside. Abbott found, and the record reflects, that the procedure in place at both Abbott and Hospira was for employees who were leaving the company to transfer their files to their successor.[5] In light of this fact, Abbott determined that the most likely location of any working files that may have been maintained by former Abbott HPD field sales representatives who no longer work for either Abbott or Hospira is with the current Alternate Site sales force at Hospira – the people who would have inherited any such files from the departed employees. Abbott and Hospira thus contacted all forty-four members of the Hospira sales force throughout the country, regardless of whether the particular person ever worked for Abbott HPD, and asked them to search their home

---

[5] When asked that specific question during depositions, many of the former Alternate Site sales representatives who were deposed testified that they passed their files on to the person who replaced them or returned them to the company. (Ex. D, Dep. Test. of G. Aldy 22:8-17; R. Blackwell 13:18-22; K. Bukaty 275:3-13; R. Cannon 132:10-133:16; E. French 120:13-17; D. Johnson 25:6-8; E. Joseph 82:16-21; J. Less 324:8-17; D. Paulson 18-1519:12; S.Steenolsen 362:14-363:7; M. Strassner 55:22-56:3; D. Young 15:9-18.).

office files for any responsive documents.  Employees who identified responsive documents submitted the documents to Abbott and the responsive documents were produced.  Employees who had no responsive documents have signed verifications to that effect and those verifications have been provided to the Government.  Four of the employees who signed the verification form initially neglected to indicate whether they had found responsive information.  Those employees later executed revised verifications, however, confirming that they have no responsive documents, and Abbott has provided those revised forms to the Government.

Through this exhaustive search, Abbott has explored all reasonable avenues to locate responsive documents within its possession, custody or control.  There is simply no legal support for the Government's demand that Abbott go further and track down nearly 100 persons no longer in Abbott's or Hospira's employ to discern whether, contrary to the established practice, those persons spirited away documents when they left.  Those persons are outside Abbott's possession, custody or control, and thus Abbott is not required under Federal Rule of Civil Procedure 34(a) to conduct this broad search.  *See In re Flag Telecom Holdings, Ltd. Securities Litigation*, 236 F.R.D. 177, 180 (S.D.N.Y. Apr. 19, 2006.)  Moreover, given the practice of transferring files to a successor upon termination, this exercise would, at best, be a fishing expedition – one whose burden substantially outweighs any potential benefit.  The Government's request should be denied.

### C. The Government Should Not Be Allowed To Re-Depose Thirty-One Witnesses.

Each of the Alternate Site sales force witnesses that were deposed made a diligent effort to search for documents responsive to the subpoenas issued by the Government.  Jomal McNeal, the witness targeted in the Government's present motion, is no different.  A current Hospira employee, Mr. McNeal was recently transferred by the company from Chicago to Los Angeles.

Prior to his deposition in late March 2008, Mr. McNeal searched the files in his Los Angeles home, and responsive documents were produced to the Government at the deposition. Mr. McNeal realized during his deposition, however, that he might have additional documents at his former Chicago residence. He agreed to search for any such documents upon his next trip to Chicago. In mid-June, Mr. McNeal returned to Chicago and located a few additional documents. Counsel reviewed those documents and promptly produced the responsive materials to the Government. Based on this single, supplementary document production – which totaled only *fifteen documents* – the Government now seeks to re-depose not just Mr. McNeal, but all thirty-one of the former Alternate Site employees previously subjected to deposition in this case.

The Government offers no support for this outrageous request, because none exists. Over an eight-week period, the United States deposed thirty-one former members of the HPD Alternate Site sales force.[6] Many of these depositions lasted well past the close of business. In several cases, the questioner indicated that he or she had completed the examination. In a case of this magnitude, where Abbott's production to the Government tops 2 million pages, the late location and production of a mere fifteen documents from a low-level sales force employee who only worked for Abbott for four years is insufficient even to justify re-deposing Mr. McNeal himself, much less thirty *other* individuals.

Certainly, nothing about the fifteen documents in question can support the Government's extraordinary request. Five of the fifteen documents are Mr. McNeal's performance evaluations, a topic that the Government covered with him at length in his deposition and which obviously has no bearing on any of the thirty other witnesses. Two of the remaining documents were

---

[6] Two members of the sales force are deceased. Two former members of the sales force could not be located. On March 31, 2008, Abbott provided last known contact information for these individuals. After initially noticing the deposition of one individual, the Government declined to take his deposition.

already produced to the Government from other sources, well in advance of the depositions of Mr. McNeal and the others. At least one of the remaining eight documents is effectively identical to other documents that were produced in this litigation and the Government already used to question twenty-two of the former sales representatives during their depositions. (*Compare* ABT-DOJ0423303-0423314 (McNeal documents), attached as Ex. E, *with* documents attached as Ex. F, which were used during the deposition of former Alternate Site employee Kelly Bukaty and others.) That leaves at most seven documents upon which the Government grounds its claim to re-depose more than thirty witnesses. And none of them will suffice. Not a single one of the documents in question suggests that Mr. McNeal, or any other Alternate Site sales representative, was marketing Abbott products based on the spread between acquisition cost and reimbursement. This is altogether too thin a reed to put these witnesses to the burden (and Abbott to the expense) of a fresh round of depositions.

## II.     CONCLUSION

For the foregoing reasons, the United States' motion should be denied in its entirety.

Dated:  October 13, 2008

Respectfully submitted,

/s/  Brian J. Murray
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 13, 2008, the foregoing **ABBOTT LABORATORIES INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S DUPLICATIVE MOTION TO COMPEL DOCUMENTS** was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray