**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br> Master File No.: 01-CV-12257-PBS<br>(original S. D. Iowa No. 4:07-cv-00461-JAJ-CFB) |
| THIS DOCUMENT RELATES TO:<br><br>*State of Iowa v.*<br>*Abbott Laboratories Inc., et al.* | Judge Patti B. Saris |

**ANSWER AND AFFIRMATIVE DEFENSES OF**
**TAP PHARMACEUTICAL PRODUCTS INC.**
**TO THE STATE OF IOWA'S COMPLAINT**

Defendant TAP Pharmaceutical Products Inc. ("TAP"), by and through its attorneys, hereby states its Answer and Affirmative Defenses to the Plaintiff State of Iowa's Complaint, dated October 9, 2007, as follows:

**PRELIMINARY STATEMENT**

On September 19, 2007, the Court dismissed the allegations in Plaintiff's Complaint (the "Complaint") relating to Lupron® prior to 2002.  Accordingly, this answer is limited to Plaintiff's remaining claims against TAP.

The Complaint improperly refers to TAP, other Defendants, and third parties on a collective basis, failing to plead with requisite particularity allegations against TAP.  This is insufficient to apprise TAP of the allegations asserted against it.  TAP has nevertheless attempted to respond to Plaintiff's allegations to the extent possible.

To the extent the allegations in the Complaint refer to the knowledge, conduct or actions of other persons or entities, TAP is generally without knowledge or information

sufficient to form a belief as to the truth of those allegations.  TAP states that it is answering Plaintiff's allegations solely on behalf of itself, even when Plaintiff's allegations refer to alleged conduct by TAP and other persons or entities.

The Complaint also contains purported quotations from a number of sources.  In answering allegations consisting of quotations, TAP's failure to deny that the material quoted was contained in a document or was uttered by the person or entity quoted or TAP's reference to the full document instead of the quote shall not constitute an admission that the substantive content of the quote or document is or is not true or that the material is relevant or admissible in this action.

TAP denies each and every allegation contained in the Complaint and the exhibits thereto, except as specifically herein admitted, and any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendos or speculation contained in any particular averment or in the Complaint as a whole.  In addition, TAP specifically denies any allegations contained in headings, footnotes, or unnumbered paragraphs in the Complaint.  For ease of reference, TAP has included in this Answer and Affirmative Defenses certain captions used in the Complaint, but specifically denies any allegations contained in, or inferences that could be drawn from, those captions.

These comments and objections are incorporated, to the extent appropriate, into each unnumbered and numbered paragraph of this Answer.

## SPECIFIC RESPONSES

1.        TAP admits that the State of Iowa (the "State") seeks to bring this action as alleged in Paragraph 1 of the Complaint, but TAP denies that there is any basis for the State to do so and denies that the State is entitled to any relief.

2.        To the extent the allegations in Paragraph 2 are directed at TAP, TAP denies them.  TAP specifically denies that it "purposefully report[s] false and inflated price information."  To the extent the allegations in Paragraph 2 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

3-4.        To the extent the allegations in Paragraphs 3 through 4 are directed at TAP, TAP denies them.  TAP specifically denies that it submits "false and inflated pricing information in order to 'create a spread.'"  TAP further denies the characterization of "spread" in Paragraphs 3 through 4.  To the extent the allegations in Paragraphs 3 through 4 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

5.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.        To the extent the allegations in Paragraph 6 are directed at TAP, TAP denies them.  TAP specifically denies that it  "purposefully manipulate[s] a market that, by defendants' own design, is extremely complicated and non-transparent."  To the extent the allegations in Paragraph 6 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

7-8.            TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 7 through 8.

9.            To the extent the allegations in Paragraph 9 are directed at TAP, TAP denies them.  TAP specifically denies that it engages in any "unlawful price reporting activity [that] infects all four [pricing] benchmarks and renders each of them false and inflated."  To the extent the allegations in Paragraph 9 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

10.            TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, except that it admits that it pays Medicaid rebates to Iowa and that such rebates lower the price Iowa Medicaid pays for TAP's prescription drugs.  To the extent the allegations in Paragraph 10 or its footnote refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

11.            To the extent the allegations in Paragraph 11 are directed at TAP, TAP denies them.  TAP specifically denies that it does not accurately report Best Prices. To the extent the allegations in Paragraph 11 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

12.            To the extent the allegations in Paragraph 12 are directed at TAP, TAP denies them.  TAP specifically denies that it engages in "unlawful pricing schemes," the "manipulation of the Medicaid program" or the "improper reporting of false and inflated pricing information" resulting in "overcharges . . . to the Iowa Medicaid

Program."  To the extent the allegations in Paragraph 12 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

13.           To the extent the allegations in Paragraph 13 are directed at TAP, TAP denies them.  TAP specifically denies that it engages in "wrongful practices" that have a "pernicious . . . effect on the public fisc."  To the extent the allegations in Paragraph 13 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

14-15.           TAP admits that it voluntarily participates in the Iowa Medicaid program, but denies that it has violated any State or Federal law.  To the extent the allegations in Paragraphs 14 through 15 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 14 through 15 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

16.           To the extent the allegations in Paragraph 16 are directed at TAP, TAP denies them.  TAP specifically denies that it "intentionally report[s] false prices to the government."  To the extent the allegations in Paragraph 16 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

17.           To the extent the allegations in Paragraph 17 are directed at TAP, TAP denies them.  TAP specifically denies that it engages in "fraudulent, unfair and deceptive practices."  To the extent the allegations in Paragraph 17 are directed at parties

other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

18.        TAP admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies any liability to Plaintiff with respect to any such NDCs.  To the extent the allegations in Paragraph 18 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

19.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.  To the extent the allegations in Paragraph 19 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

20.        To the extent that the allegations in Paragraph 20 are directed at TAP, TAP denies them, except TAP admits that it manufactures and sells prescription drugs and that it participates in the Iowa Medicaid Program.  To the extent the allegations in Paragraph 20 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

21.        TAP admits that it conducts business in the State of Iowa.  To the extent the allegations in Paragraph 21 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

22-50.      The allegations in Paragraphs 22 through 50 are directed to other defendants and require no response from TAP.  To the extent a response is deemed to be

required, TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 22 through 50.

51.          TAP admits that at all times material to Plaintiff's allegations it was a joint venture between and its stock was half-owned by each of Abbott Laboratories and Takeda Pharmaceutical Company Limited of Osaka, Japan.  TAP further admits that it was "engaged in the business of . . . selling pharmaceuticals," but denies that it was in the "business of manufacturing . . . pharmaceuticals."   TAP further admits that its principal place of business was located at 675 North Field Drive, Lake Forest, IL 60045. TAP denies the remaining allegations in Paragraph 51.

52-58.          The allegations in Paragraphs 52 through 58 are directed to other defendants and require no response from TAP.  To the extent a response is deemed to be required, TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 52 through 58.

59.          TAP admits that the State seeks to bring this action as alleged in Paragraph 59, but TAP denies there is any basis for the State to do so and denies that the State is entitled to any relief.

60-61.          Paragraphs 60 through 61 state legal conclusions as to which no response is required.  To the extent a response is deemed to be required, TAP denies the allegations in Paragraphs 60 through 61, and notes that this captioned matter has been transferred to this Court by the Judicial Panel on Multi District Litigation, pursuant to 28 U.S.C. § 1407.

62.        With respect to the allegations in Paragraph 62, TAP admits that Medicaid was established by Title XIX of the Social Security Act.  TAP further states that the provisions of Title XIX speak for themselves, and any characterizations thereof are denied.

63.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, except TAP admits that state participation in Medicaid is voluntary and that state Medicaid plans must be approved by the federal government.  To the extent the allegations in Paragraph 63 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

64-65.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 64 through 65.  To the extent the allegations in Paragraphs 64 through 65 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

66.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66, except TAP admits that national drug codes are assigned to prescription drugs.

67.        To the extent the allegations in Paragraph 67 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.  TAP otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.         TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.  To the extent the allegations in Paragraph 68 refer to an OIG report, the report speaks for itself, and any characterizations thereof are denied.

69.         TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.  To the extent the allegations in Paragraph 69 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

70.         TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71-72.      To the extent the allegations in Paragraphs 71 through 72 are directed at TAP, TAP denies them.  TAP further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 71 through 72 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

73-80.      TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 73 through 80 or their subsections.  To the extent the allegations in Paragraphs 73 through 80 or their subsections refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

81.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, except that it admits that pricing compendia such as First DataBank and Medi-Span publish AWPs and FULs, and denies that TAP has any control over such prices.

82.        To the extent the allegations in Paragraph 82 are directed at TAP, TAP denies them.  TAP specifically denies that it "purposefully and fraudulently conceal[s]" the "true prices" of its drugs by "claiming they are proprietary trade secrets." To the extent the allegations in Paragraph 82 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

83.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83.

84.        To the extent the allegations in Paragraph 84 are directed at TAP, TAP denies them.  TAP specifically denies that it "fraudulently misrepresent[s]" its true prices or that it reports "false and inflated prices."   To the extent the allegations in Paragraph 84 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

85.        To the extent the allegations in Paragraph 85 are directed at TAP, TAP denies them, except that TAP admits that Exhibit A purports to identify total expenditures by Defendant.  TAP specifically denies any "unfair practices, deception, and fraud."   To the extent the allegations in Paragraph 85 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

86.         To the extent the allegations in Paragraph 86 are directed at TAP, TAP denies them.  TAP specifically denies conducting any "fraudulent practices."  To the extent the allegations in Paragraph 86 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

87-89.      To the extent the allegations in Paragraphs 87 through 89 are directed at TAP, TAP denies them.  TAP specifically denies that it reports "false and inflated" "WACs or WAC equivalents."  To the extent the allegations in Paragraphs 87 through 89 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

90-92.      To the extent the allegations in Paragraphs 90 through 92 are directed at TAP, TAP denies them.  TAP further states that these allegations wrongly assume that discounts, chargebacks and other price concessions are supposed to be included in prices reported to industry compendia.  To the extent the allegations in Paragraphs 90 through 92 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

93-98.      To the extent the allegations in Paragraphs 93 through 98 are directed at TAP, TAP denies them, except TAP admits that it has provided certain pricing information for its drugs to various industry pricing compendia and that publishers apply their own markups to the list prices.  TAP specifically denies that it "either report[s] or caused to be reported false and inflated AWPs," "false WAC or WAC equivalents," or that TAP "alone control[s] the false and inflated AWPs that are published for [its] drugs."  TAP further states that for years, and at all times relevant to the Complaint, it has been

common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices. To the extent the allegations in Paragraphs 93 through 98 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

99.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99.

100.        To the extent the allegations in Paragraph 100 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 100 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

101.        To the extent the allegations in Paragraph 101 or the exhibit referenced therein are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 101 or the exhibit referenced therein are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

102-108.        To the extent the allegations in Paragraphs 102 through 108 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraphs 102 through 108 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 102 through 108 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

109.        The allegations in Paragraph 109 require no response from TAP on the grounds that the Iowa SMAC claims have been dismissed by the Court.

110-128.        To the extent the allegations in Paragraphs 110 through 128 are directed at TAP, TAP denies them, except TAP admits that it has executed a rebate agreement with HHS.   TAP further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to TAP.   In any event, the rebate agreement speaks for itself, and any characterizations thereof are denied.   To the extent the allegations in Paragraphs 110 through 128 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.   To the extent the allegations in Paragraphs 110 through 128 refer to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

129-132.        To the extent the allegations in Paragraphs 129 through  132 are directed at TAP, TAP denies them, and further states that the Court has dismissed all Medicaid rebate-related allegations in the Complaint as to TAP.   To the extent the allegations in Paragraphs 129-132 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.   To the extent the allegations in Paragraphs 129-132 refer to statutes, regulations or reports, those sources speak for themselves, and any characterizations thereof are denied.

133.        To the extent the allegations in Paragraph 133 are directed at TAP, TAP denies them.   TAP specifically denies that it has participated in any "pricing scheme . . . by exacerbating the complexities of the  . . . drug market."   To the extent the

allegations in Paragraph 133 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

134.        To the extent the allegations in Paragraph 134 are directed at TAP, TAP denies them.  TAP specifically denies that it "purposefully conceal[s its] true prices."  To the extent the allegations in Paragraph 134 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraph 134 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

135.        To the extent the allegations in Paragraph 135 are directed at TAP, they are denied.  To the extent the allegations in Paragraph 135 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

136.        To the extent the allegations in Paragraph 136 are directed at TAP, they are denied, except TAP admits that certain of its contracts are subject to confidentiality agreements and that TAP does offer discounts to certain of its customers for certain drugs.  To the extent the allegations in Paragraph 136 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

137.        To the extent the allegations in Paragraph 137 are directed at TAP, TAP denies them.  TAP specifically denies that it "obscure[s] the true prices for [its] drugs with [its] policy of treating different classes of trade differently."  To the extent the

allegations in Paragraph 137 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

138-139.    To the extent the allegations in Paragraphs 138 through 139 are directed at TAP, TAP denies them.  TAP specifically denies that it "maintain[s] two sets of pricing records:  one with [] inflated prices and another with [] actual prices."  To the extent the allegations in Paragraphs 138 through 139 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth. To the extent the allegations in Paragraphs 138 through 139 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

140-141.    To the extent the allegations in Paragraphs 140 through 141 are directed at TAP, TAP denies them.  TAP specifically denies that it "hide[s its] real drugs prices by secretly providing free drugs and phony grants" or that it conceals its true prices "to create spreads between actual cost and reimbursement amounts . . . to influence market share."  To the extent the allegations in Paragraphs 140 through 141 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

142.    To the extent the allegations in Paragraph 142 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 142 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

143.      To the extent the allegations in Paragraph 143 are directed at TAP, TAP denies them.  TAP further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraph 143 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

144-145.      To the extent the allegations in Paragraphs 144 through 145 are directed at TAP, TAP denies them.  TAP specifically denies that it has engaged in any "unlawful and undisclosed manipulation of the price reporting system" or caused the "publication of a false WAC," AWP, or FUL.  To the extent the allegations in Paragraphs 144-145 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

146.      To the extent the allegations in Paragraph 146 are directed at TAP, TAP denies them.  TAP specifically denies that it has "caus[ed] false prices to be published."  To the extent the allegations in Paragraph 146 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

147.      To the extent the allegations in Paragraph 147 are directed at TAP, TAP denies them.  TAP specifically denies that it "submit[s] false and inflated wholesale price information in order to create a spread."  TAP further denies the characterization of "spread" in Paragraph 147.  To the extent the allegations in Paragraph 147 are directed at

parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

148.       To the extent the allegations in Paragraph 148 are directed at TAP, TAP denies them.   TAP specifically denies that it has "corrupted the market for prescription drugs" or has "deliberately sought to create a powerful financial incentive for providers to prescribe drugs based primarily on the spread."   TAP further denies the characterization of "spread" in Paragraph 148.  To the extent the allegations in Paragraph 148 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

149-150.       To the extent the allegations in Paragraphs 149 through 150 are directed at TAP, TAP denies them.   TAP specifically denies that it "market[s its] products based on the spread between reimbursement (based on AWP, WAC, or a WAC equivalent) and actual acquisition cost" or that it "compete[s] on reimbursement and profit rather than cost."  To the extent the allegations in Paragraphs 149 through 150 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

151-152.       To the extent the allegations in Paragraphs 151 through 152 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraphs 151 through 152 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 151 through 152 refer to the transcript of a congressional hearing, the transcript speaks for itself, and any characterizations thereof are denied.

153-154.        To the extent the allegations in Paragraphs 153 through 154 are directed at TAP, TAP denies them.  TAP specifically denies that it has "intentionally manipulat[ed] the nation's drug reimbursement system . . . with false and inflated prices." To the extent the allegations in Paragraphs 153 through 154 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

155-157.        To the extent the allegations in Paragraphs 155 through 157 are directed at TAP, TAP denies them.  TAP specifically denies that it reports "reimbursement prices . . . to the publishing compendia" or that it engages in "purposeful AWP manipulation."  TAP further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 155 through 157 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 155 through 157 refer to HHS OIG reports, the reports speak for themselves, and any characterizations thereof are denied.

158.        To the extent the allegations in Paragraph 158 are directed at TAP, TAP denies them.  TAP specifically denies that it reports "price information that . . . does not comply with the HHS OIG's guidelines" by not accounting for various types of discounts.  To the extent the allegations in Paragraph 158 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

159-165.     TAP denies knowledge or information to form a belief as to the truth of the allegations in Paragraphs 159 through 165, except TAP admits that it participates in the Federal Medicaid Rebate Program through which Iowa Medicaid is obligated to reimburse providers for TAP drugs.  TAP further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices or have an expected relationship to such an average.  To the extent the allegations in Paragraphs 159 through 165 refer to judicial opinions, those sources speak for themselves, and any characterizations thereof are denied.

166.     To the extent the allegations in Paragraph 166 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 166 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

167-171.     To the extent that the allegations in Paragraphs 167 through 171 are directed at TAP, TAP denies them, except TAP denies knowledge or information sufficient to form a belief as to the truth of the allegation that the "Iowa Medicaid Program spent over $1.6 billion for defendants' drugs between 1992 and 2005 alone." TAP specifically denies that it "knowingly interfered with Iowa's ability to reimburse providers at EAC."  To the extent the allegations in Paragraphs 167 through 171 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

172-177.     With respect to the allegations in Paragraphs 172 through 177, TAP admits that Exhibit B to the Complaint purports to identify the prescription drugs at issue in this matter, but denies the accuracy of the data listed therein.  To the extent the remaining allegations in Paragraphs 172 through 177 or Exhibit B are directed at TAP, TAP denies them.  TAP specifically denies that it "routinely submitted false prices" to pricing compendia.  TAP further denies the characterization of "spread" in Paragraphs 172 through 177 and Exhibit B.  To the extent the allegations in Paragraphs 172 through 177 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

178.     To the extent the allegations in Paragraph 178 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 178 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

179.     To the extent the allegations in Paragraph 179 are directed at TAP, TAP denies them, except TAP admits that its contracts with certain purchasers sometimes included discounts.  To the extent the allegations in Paragraph 179 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

180.     To the extent the allegations in Paragraph 180 or the exhibit referenced therein are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 180 or the exhibit referenced therein are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

181-553.        The allegations in Paragraphs 181 through 553 are directed to other Defendants and require no response from TAP.  To the extent a response is deemed to be required, TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 181 through 553.

554.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 554 or the footnote or the exhibit referenced therein.

555.        TAP denies the allegations in Paragraph 555 and the exhibit referenced therein.

556.        TAP admits that at all times material to the Complaint its stock was half owned be each of Takeda Pharmaceutical Company Limited and Abbott Laboratories, that it was investigated by the Department of Justice and that, on October 13, 2001, the Department of Justice announced that TAP had agreed to pay approximately $875 million in settlement of criminal charges and civil claims related to the sale and marketing of the drug Lupron®.  TAP further admits that it pled guilty to an indictment charging a one count conspiracy to violate the Prescription Drug Marketing Act and that it paid a criminal fine of $290 million.  TAP further admits that it paid approximately $560 million in settlement of claims by the United States government related to the sale and marketing of the drug Lupron®.  TAP further admits that it paid approximately $25 million in settlement of claims to the fifty states and the District of Columbia related to the sale and marketing of the drug Lupron ®.  TAP further admits that it entered into a Corporate Integrity Agreement, which provided that it disclose the

Average Sales Prices for all of its products quarterly to the states, CMS and First DataBank.  TAP further states that its plea agreement and civil settlement agreements speak for themselves and denies any allegations or characterizations inconsistent therewith.  TAP denies the remaining allegations in Paragraph 556 and its subparts.

557.        TAP admits that in connection with TAP's guilty plea agreement, Abbott and Takeda entered into side letter agreements with the government in which they agreed to cooperate fully with the then ongoing investigation of TAP's former and current officers and employees.  TAP denies the remaining allegations of Paragraph 557.

558.        TAP admits that TAP employees were indicted on charges related to the sale and marketing of the drug Lupron®, that one employee entered a guilty plea that was later withdrawn and that the others were acquitted in 2004 after trial.  TAP denies the remaining allegations of Paragraph 558.

559.        TAP admits that the allegations in Paragraph 559 purport to quote the cited transcript, but states that the record speaks for itself and denies any characterizations or misstatements thereof.  TAP denies the remaining allegations of Paragraph 559.

560.        TAP admits that it was named as a defendant in the referenced case and that action was settled and dismissed.  TAP specifically denies that there was any basis for that lawsuit and denies the remaining allegations in Paragraph 560.

561.        TAP denies knowledge or information sufficient to form a belief as to the truth of the allegation that "TAP also is the subject of the investigation referred to

above led by Senators Grassley and Baucus of the Senate Finance Committee regarding whether it is abusing the nominal price exception to the Best Price reporting requirements." TAP denies the remaining allegations in Paragraph 561.

562.     TAP admits that it was named as defendant in a qui tam action filed in Louisiana and that the allegations of the complaint in such action speak for themselves and denies any allegation or characterization inconsistent therewith. TAP further denies there was any basis for said action, denies that the plaintiff was entitled to any relief and further states that the action was dismissed by the court. TAP denies the remaining allegations in Paragraph 562.

563.     TAP admits that it was named as defendant in a qui tam action filed in Louisiana and that the allegations of the complaint in such action speak for themselves and denies any allegation or characterization inconsistent therewith. TAP further denies there was any basis for said action, denies that the plaintiff was entitled to any relief and further states that the action was dismissed by the court. TAP denies the remaining allegations in Paragraph 563 and its footnote.

564-566.     TAP denies the allegations in Paragraphs 564-566.

567.     TAP denies the allegations in Paragraph 567, except TAP admits that it has been named as a defendant in lawsuits filed by the States of Alabama, Illinois, Kentucky, Mississippi, Montana, Pennsylvania, and Wisconsin and by the City of New York and 42 New York Counties. TAP specifically denies that there is any basis for those lawsuits.

568-613.      The allegations in Paragraphs 568 through 613 are directed to other Defendants and require no response from TAP.  To the extent a response is deemed to be required, TAP denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 568 through 613.

614-616.      To the extent the allegations in Paragraphs 614 through 616 are directed at TAP, TAP denies them, except TAP denies knowledge or information sufficient to form a belief as to the truth of the allegation that Iowa's Medicaid program "spent over $1.6 billion for defendants' drugs in state and federal dollars from 1992 through 2005 alone."  TAP specifically denies that it was involved in any "false price reporting scheme" or "misconduct," or that it has been "unjustly enriched."  To the extent the allegations in Paragraphs 614 through 616 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

617-632.      To the extent the allegations in Paragraphs 617 through 632 are directed at TAP, TAP denies them.  TAP further states that for years, and at all times relevant to the Complaint, it has been common knowledge and universally understood, including by the State and/or its agents, that AWP does not, and is not intended to, reflect an actual average of wholesale prices.  To the extent the allegations in Paragraphs 617 through 632 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 630 refer to *The Pink Sheet*, that document speaks for itself, and any characterizations thereof are denied.

## COUNT I

633.        In response to Paragraph 633, TAP repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 632.

634-642.        To the extent the allegations in Paragraphs 634 through 642 are directed at TAP, TAP states that the Court has dismissed the claim to which these allegations relate.   To the extent that a response is still required, TAP denies the allegations as to itself.   To the extent the allegations in Paragraphs 634 through 642 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

## COUNT II

643.        In response to Paragraph 643, TAP repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 642.

644-651.        To the extent the allegations in Paragraphs 644-651 are directed at TAP, TAP states that the Court has dismissed the claim to which these allegations relate. To the extent that a response is still required, TAP denies the allegations as to itself.   To the extent the allegations in Paragraphs 644-651 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.

**COUNT III**

652.          In response to Paragraph 652, TAP repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 651.

653.          To the extent the allegations in Paragraph 653 and the exhibits referenced therein are directed at TAP, TAP denies them.  To the extent the allegations in Paragraph 653 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraph 653 refers to statutes or regulations, those sources speak for themselves, and any characterizations thereof are denied.

654-657.          To the extent the allegations in Paragraphs 654 through 657 and the sub-parts thereto are directed at TAP, TAP denies them.  To the extent the allegations in Paragraphs 654 through 657 and the sub-parts thereto are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 654 through 657 and the sub-parts thereto refer to statutes, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 654 through 657 and the sub-parts thereto contain legal conclusions, no response is required.

**COUNT IV**

658.          In response to Paragraph 658, TAP repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 657.

659-662.      To the extent the allegations in Paragraphs 659 through 662 and the exhibits referenced therein are directed at TAP, TAP denies them.  To the extent the allegations in Paragraphs 659 through 662 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 659 through 662 refer to Iowa law, those sources speak for themselves, and any characterizations thereof are denied.  To the extent the allegations in Paragraphs 659 through 662 contain legal conclusions, no response is required.

## COUNT V

663.      In response to Paragraph 663, TAP repeats and incorporates as if fully set forth herein each and every response to the allegations in Paragraphs 1 through 662.

664-666.      To the extent the allegations in Paragraphs 664 through 666 are directed at TAP, TAP denies them.  To the extent the allegations in Paragraphs 664 through 666 are directed at parties other than TAP, TAP denies knowledge or information sufficient to form a belief as to their truth.  To the extent the allegations in Paragraphs 664 through 666 contain legal conclusions, no response is required.

667-675.      TAP denies that the State is entitled to a judgment or any other relief as requested in the unnumbered "WHEREFORE" paragraph and Paragraphs 667 through 675 of the Complaint.

## AFFIRMATIVE DEFENSES

TAP reasserts and incorporates herein by reference the assertions of paragraphs 1 through 675 hereof.

### First Affirmative Defense

Plaintiff fails to state a claim against TAP upon which relief may be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because it did not rely on any alleged misrepresentations or fraud by TAP.  Plaintiff knew that providers could obtain TAP drugs at prices below AWP prior to the relevant time period stated in the Complaint.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the political question and separation of powers doctrines.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the filed rate doctrine.

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the state action doctrine.

### Sixth Affirmative Defense

To the extent Plaintiff obtains recovery in any other case predicated on the same factual allegations, Plaintiff is barred from seeking recovery against TAP based on the Complaint pursuant to the doctrines of *res judicata* and collateral estoppel, and the prohibition on double recovery for the same injury.

### Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent that such claims are premised, in whole or in part, on alleged statements or conduct by TAP in judicial, legislative, or administrative proceedings of any kind or at any level of government.

### Eighth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has released, settled, entered into an accord and satisfaction or otherwise compromised Plaintiff's claims.

### Ninth Affirmative Defense

Plaintiff's state law claims are preempted, in whole or in part, by federal law, including without limitation the Federal Employment Retirement Income and Security Act of 1974, the Federal Medicare Act, the Federal Medicaid Act, and the Prescription Drug, Improvement and Modernization Act of 2003, including all amendments to the same and all regulations promulgated thereunder.

### Tenth Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, by the applicable statutes of limitations and repose, and by the doctrines of laches, estoppel, and waiver.

### Eleventh Affirmative Defense

Plaintiff fails to state with particularity facts to support claims of fraudulent conduct, fraudulent concealment and the multi-source allegations against TAP contained in the Complaint.

## Twelfth Affirmative Defense

Any and all actions taken by TAP with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice.

## Thirteenth Affirmative Defense

TAP's statements or actions were not the proximate cause or cause in fact of any injury to or alleged loss by Plaintiff.

## Fourteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a consumer within the meaning of the Iowa Consumer Fraud Act.

## Fifteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff is not a person within the meaning of the Iowa Consumer Fraud Act.

## Sixteenth Affirmative Defense

Some or all of Plaintiff's claims against TAP arise from Plaintiff's failure to follow its federal and state statutory and regulatory obligation to set reimbursement rates at Estimated Acquisition Cost.

## Seventeenth Affirmative Defense

TAP denies that Plaintiff has a valid consumer protection claim against TAP under the Iowa Consumer Fraud Act.  However, if such claim is found to exist, TAP pleads all available defenses under the Act.

## Eighteenth Affirmative Defense

To the extent that Plaintiff attempts to seek equitable relief against TAP, Plaintiff is not entitled to such relief because Plaintiff has an adequate remedy at law.

### Nineteenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

### Twentieth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of consent and/or ratification to the extent that Plaintiff has received and paid for medicines manufactured, marketed and sold by TAP after the filing of the Complaint.

### Twenty-First Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because the damages alleged are speculative and remote and because of the impossibility of ascertaining and allocating those alleged damages.

### Twenty-Second Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, due to their failure to join indispensable parties.

### Twenty-Third Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, because Plaintiff has not suffered damages as a result of the matters alleged in the Complaint.

### Twenty-Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, (1) because Plaintiff failed to mitigate damages, and that failure to mitigate damages should proportionately reduce the recovery of such persons and the allocation of any fault, if any exists, attributable to TAP; (2) because Plaintiff would be unjustly enriched if allowed to recover any portion

of the damages alleged in the Complaint; and (3) because damages are speculative and remote and because of the impossibility of ascertaining and allocating alleged damages.

### Twenty-Fifth Affirmative Defense

TAP is entitled to a set-off, should any damages be awarded against it, for the entire amount of all damages or settlement amounts recovered by Plaintiff, with respect to the same alleged injuries.

### Twenty-Sixth Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, by the First Amendment to the United States Constitution and the analogous provisions of the Iowa Constitution.

### Twenty-Seventh Affirmative Defense

Plaintiff's claims against TAP are preempted by the Commerce Clause and/or the dormant Commerce Clause of the United States Constitution.

### Twenty-Eighth Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, because they violate TAP's rights under the Due Process and *Ex Post Facto* clauses of the United States Constitution, as well as the Iowa Constitution, insofar as Plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

### Twenty-Ninth Affirmative Defense

Plaintiff's claims against TAP are barred because Plaintiff and/or its agents knew and were aware that AWP was not an actual average of wholesale prices or the actual acquisition cost of pharmaceuticals.  Legal and equitable principles preclude this action for damages and injunctive relief.

### Thirtieth Affirmative Defense

The claims alleged herein, based on the facts alleged, are barred in whole or in part by Plaintiff's own negligence or gross negligence and the doctrines of comparative and/or contributory negligence.   Among other things, the claims disregard Iowa's obligations under federal law.

### Thirty-First Affirmative Defense

Plaintiff's prayers for relief in the form of restitution are barred, in whole or in part, because TAP did not retain any money belonging to Plaintiff as a result of any alleged overpayments.

### Thirty-Second Affirmative Defense

Plaintiff has failed to plead with particularity allegations of fraud by TAP contained in the Complaint.

### Thirty-Third Affirmative Defense

Plaintiff's claims for fraud and fraudulent concealment are barred because the Plaintiff cannot predicate a claim for fraud on reliance by a third party.

### Thirty-Fourth Affirmative Defense

Plaintiff's claims against TAP are barred because Plaintiff lacks standing or capacity to bring the some or all of the claims asserted against TAP under Iowa law.

### Thirty-Fifth Affirmative Defense

Plaintiff's claims against TAP are barred in whole or in part by the doctrine of voluntary payment.

### Thirty-Sixth Affirmative Defense

Plaintiff's claims against TAP for injunctive relief were mooted by the passage of the 2003 Medicare reform legislation.

### Thirty-Seventh Affirmative Defense

Plaintiff's claims against TAP for unjust enrichment are barred because the Complaint does not allege that Defendants received any payment or property from the Plaintiff.

### Thirty-Eighth Affirmative Defense

Plaintiff's claims against TAP for injunctive relief against TAP are barred by the doctrines of *in pari delicto* and/or unclean hands.

### Thirty-Ninth Affirmative Defense

Plaintiff's claims against TAP are misjoined with Plaintiff's claims against other Defendants and must be severed.

### Fortieth Affirmative Defense

Any damages recovered by the Plaintiff must be limited by any applicable statutory ceiling on recoverable damages.

### Forty-First Affirmative Defense

To the extent punitive damages are sought, Plaintiff's punitive damages claims against TAP (1) have no basis in law or fact; (2) are not recoverable because the allegations of the Complaint are legally insufficient to support a claim for punitive damages against TAP; (3) cannot be sustained because the laws regarding the standards for determining liability for, and the amount of, punitive damages fail to give TAP prior notice of the conduct for which punitive damages may be imposed and the severity of the

penalty that may be imposed and are void for vagueness in violation of TAP's due process rights guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution; (4) cannot be sustained because any award of punitive damages exceeding the limits authorized by the laws or other comparable laws would violate TAP's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and be improper under the Iowa Constitution and Iowa common law.

### Forty-Second Affirmative Defense

Plaintiff fails to allege facts or a cause of action against TAP sufficient to support a claim for prejudgment interest or any other relief.

### Forty-Third Affirmative Defense

Plaintiff has not suffered, and will not suffer, any injuries to a legally protected or cognizable interest by reason of the conduct of TAP as alleged in the Complaint.

### Forty-Fourth Affirmative Defense

Plaintiff's claims against TAP are barred because TAP has complied with all applicable regulations of the federal and state governments.

### Forty-Fifth Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, because any injuries sustained by Plaintiff were the result of intervening or superseding conduct of third parties.

### Forty-Sixth Affirmative Defense

Plaintiff's claims against TAP are barred, in whole or in part, because TAP did not make any false statements to the Plaintiff.  As to any statement asserted against TAP that Plaintiff alleges to be false or misleading, TAP had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading.

### Forty-Seventh Affirmative Defense

Plaintiff fails to allege facts or a cause of action sufficient to support a claim against TAP for compensatory damages, attorneys' fees, enhanced damages, treble damages and/or legal fees or costs.

### Forty-Eighth Affirmative Defense

TAP adopts by reference any additional applicable defense pled by any other Defendant not otherwise pled herein.

### Forty-Ninth Affirmative Defense

TAP hereby gives notice that it intends to rely upon any other and additional defense that is now or may become available or appear during, or as a result of the discovery proceedings in this action and hereby reserve its right to amend its Answer to assert such defense.

### JURY DEMAND

TAP hereby demands a trial by jury.

**WHEREFORE**, TAP demands judgment dismissing the Complaint with prejudice, and awarding reasonable expenses and costs incurred herein, and for such further relief as the Court deems just and proper.

Respectfully submitted,

| Dated:  October 20, 2008 | _/s/_  Tara A. Fumerton_____ |
| | Lee Ann Russo |
| | Tara A. Fumerton |
| | JONES DAY |
| | 77 W. Wacker Dr., Suite 3500 |
| | Chicago, IL 60601-1692 |
| | Telephone:  (312) 782-3939 |
| | Facsimile:   (312) 782-8585 |
| | |
| | Brent B. (Chris) Green |
| | DUNCAN, GREEN, BROWN & LANGENESS, P.C. |
| | 400 Locust Street, Suite 380 |
| | Des Moines, IA 50309 |
| | Telephone:  (515) 288-6440 |
| | Facsimile:   (515) 288-6448 |
| | |
| | ***Counsel for Defendant TAP Pharmaceutical Products Inc.*** |

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the **ANSWER AND AFFIRMATIVE DEFENSES OF TAP PHARMACEUTICAL PRODUCTS INC. TO THE STATE OF IOWA'S COMPLAINT** was delivered to all counsel of record by sending a copy to LexisNexis File and Serve, on October 20, 2008, for posting and notification to all parties.

October 20, 2008                                   /s/ Tara A. Fumerton  _____
                                                              Tara A. Fumerton