UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ) ) | Magistrate Judge Marianne B. Bowler s |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,* Civil Action No. 05-11084-PBS ) ) ) ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION FOR AN ORDER TO PRODUCE
PRISON INMATE MICHAEL T. RICKS FOR DEPOSITION**

The United States respectfully submits this memorandum in support of its motion for an order pursuant to Federal Rule of Civil Procedure 30(a)(2)(B) allowing the United States to take the deposition of prison inmate Michael T. Ricks.

## BACKGROUND

The United States has brought this suit against Dey, Inc., Dey L.P., Inc. and Dey L.P. ("Dey") under the False Claims Act, 31 U.S.C. §§ 3729 - 3733, and the common law seeking treble damages and civil penalties for Dey's false reporting of drug pricing information. The United States alleges that Dey reported to pricing compendia prices for certain of its generic drugs that were false, fraudulent and inflated, knowing that the Medicare and Medicaid programs relied upon those reported prices to set reimbursement rates for those drugs, all while selling the drugs to customers at far lower prices. The United States further alleges that Dey marketed the government-funded "spread" between

the reimbursement amounts calculated with the false price and the real price paid by its customers to increase sales of the drugs, thereby boosting Dey's profits.

Evidence obtained in the government's investigation indicates that Dey trained its sales representatives on how to market the spread (see Exhibit 1 hereto), and that at least some of its sales representatives may have used a "Reimbursement Comparison Worksheet" (Exhibit 2 hereto) to present to customers for the purpose of comparing the spread on Dey's albuterol unit dose products with the spread on competitor's products and to help explain the greater profit to be made on Dey's drugs. In answer to interrogatories, Dey has acknowledged that "certain documents suggest that on isolated occasions certain of Dey's sales representatives discussed the term 'spread' and the elements that third party medical benefit payors employed to create a 'spread,' with certain customers with respect to some of the Subject Drugs." See Exhibit 3, Answer to Interrogatory #4. But Dey asserts:

> However, there is no evidence that Dey actually made any sales as a result of this worksheet. There is no evidence that Dey's sales representatives used a similar document to compare any of Dey's other products at issue in this action to a competitor's products; specifically there is no evidence that Dey's sales representatives used a reimbursement comparison worksheet with respect to Dey's albuterol multi-dose, albuterol syrup, albuterol multi-dose inhaler, ipratropium bromide, or cromolyn sodium products.

Id., Response to Interrogatory #4.

Michael Ricks was formerly employed by Dey as a District Sales Manager in the mid-1990s.[1]  Dey has produced approximately thirty "Account Call Records" which appear to have been created by Mr. Ricks to document his sales activities while employed by Dey.  The records appear to show that Mr. Ricks was marketing the spread of Dey's drugs.  Examples of these records are attached as Exhibit 4.

Mr. Ricks is currently serving a lengthy prison term at the Kit Carson Correctional Center in Burlington, Colorado.  It appears that he will not be eligible for parole until the year 2023.  The United States wants to question Mr. Ricks about his role as a district sales manager for Dey; the training he received while at Dey; the strategies and practices he used in marketing Dey's drugs; his use of the "Reimbursement Comparison Worksheet" and other similar documents in promoting Dey's products; whether he made any sales as a result of his use of the worksheet; and the extent to which higher-level managers knew about and encouraged his sales practices.

The deadline for fact discovery is December 15, 2008.  See Joint Scheduling Order entered October 6, 2008 (Dkt entry #5629).

## ARGUMENT

Federal Rule of Civil Procedure 30(a)(2)(B) governs those circumstances when leave of court must be obtained before a party may take a deposition.  It provides in part

---

[1] The United States' claims reach back to 1992.  See Memorandum and Order dated July 17, 2007 (Dkt entry #4484) (denying Dey's motion to dismiss on statute of limitations grounds).

that "[a] party must obtain leave of court and the court must grant leave to the extent consistent with Rule 26(b)(2) . . . if the deponent is confined in prison."

Federal Rule of Civil Procedure 26(b)(2)(C) provides:[2]

> **When Required.** On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The plain language of Rule 30(a)(2)(B) requires "leave of court" when the deponent is confined in prison. Ashby v. McKenna, 331 F.3d 1148, 1150 (10th Cir. 2003). The court should grant leave to depose an incarcerated witness unless the objecting party shows, and the Court determines, that the discovery is unwarranted based on the factors set forth in the Rule. Whittingham v. Amherst College, 163 F.R.D. 170,

---

[2] Subparagraphs (b)(2)(A) and (B) of Rule 26 address limitations on the frequency and extend of depositions. The United States does not understand Dey to object to the Ricks deposition on the ground that the United States seeks to take too many depositions. The proposed deposition of Mr. Ricks is well within the 10-deposition limit of the governing Case Management Order (Dkt entry #4406). The United States has independently noticed only four depositions in this action; Mr. Ricks' deposition would be the fifth.

4

171 (D. Mass. 1995); see also Williams v. Greenlee, 210 F.R.D. 577, 578-579 (N.D. Tex. 2002).

Dey cannot meet its burden under Rule 30(a)(2)(B); indeed, Dey's apparent objection borders on the frivolous. The discovery is plainly not cumulative, duplicative, or obtainable from some other source. Mr. Ricks has never been deposed. Indeed very few of Dey's former field sales representatives have been deposed, and none in this litigation. Dey contends that the marketing of the spread by its employees occurred only on "isolated occasions," and Dey asserts that the use of the "Reimbursement Comparison Worksheet" occurred infrequently and only in connection with one of its products. The United States needs to conduct discovery to find out how and to what extent Dey marketed the spread.

The United States has not had the opportunity to obtain the information it seeks thus far. The United States in Interrogatories No. 4 asked Dey to identify each person who marketed the spread and each document evidencing such conduct. Dey's answer was vague and uninformative, justifying further discovery. Furthermore, the burden to Dey of attending this deposition is not significant in light of the nature and importance of the litigation. Dey has never complained of lack of resources and has itself noticed depositions in numerous states, including Delaware, Louisiana, Arkansas, Wyoming, Kansas, Indiana, Oregon, and North Dakota (in addition to cross-noticing depositions in various other states). The issues in this case are important and the potential recoveries are very large.

There can be no doubt that Dey's marketing of the spread is highly relevant. United States District Judge Saris has made clear that a manufacturer's marketing of the spread is an important consideration in determining liability.  <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, 491 F.Supp.2d 20, 94 (D. Mass. 2007).  In addition, Dey's conduct in marketing the spread is relevant in determining the amount of civil penalties under the False Claims Act.  In short, Dey's objections to this deposition are meritless and deserving of short shrift.

## **CONCLUSION**

For the reasons stated above, the Court should allow the United States' motion and enter an order directing the Warden of the Kit Carson Correctional Center to produce

inmate Michael T. Ricks for deposition questioning on November 20, 2008.

A proposed Order is submitted as Exhibit 5.

                              Respectfully submitted,

                              PETER D. KEISLER
                              ASSISTANT ATTORNEY GENERAL

                              MICHAEL J. SULLIVAN
                              UNITED STATES ATTORNEY

By:    /s/ *George B. Henderson, II*
          GEORGE B. HENDERSON, II
          Assistant U.S. Attorney
          United States Courthouse
          1 Courthouse Way, Suite 9200
          Boston, MA 02210
          (617) 748-3282

          LAURIE A. OBEREMBT
          Civil Division
          Commercial Litigation Branch
          P. O. Box 261
          Ben Franklin Station
Dated: October 23, 2008          Washington, D.C. 20044

### CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above "UNITED STATES' MOTION FOR AN ORDER TO PRODUCE PRISON INMATE MICHAEL T. RICKS FOR RULE 30(a)(2)(B) DEPOSITION." to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: October 23, 2008                            /s/ *George B. Henderson, II*
                                                                       George B. Henderson, II