UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS ) |
| THIS DOCUMENT RELATES TO: *The City of New York, et al.* v. *Abbott Laboratories, Inc., et al.* | ) ) Judge Patti B. Saris ) ) ) ) ) ) |

## *CORRECTED* PLAINTIFF COUNTIES' OBJECTIONS AND RESPONSES TO DEFENDANT BAYER CORPORATION'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court of Massachusetts and the relevant case management orders, Plaintiffs, the City of New York and the New York Counties (hereinafter "plaintiffs"), provide these objections and responses to Defendant Bayer Corporation's ("Bayer") First Set of Interrogatories to Plaintiffs.

### GENERAL OBJECTIONS

1.  Plaintiffs object to the "definitions" and "instructions" to the extent they are vague, confusing and ambiguous.

2.  Plaintiffs object to the "definitions" and "instructions" to the extent they seek to create obligations broader than what is required by the Federal Rules of Civil Procedure, the Local Rules of the Transferor Court(s) and/or the local rules of this Court.

3.  Subject to and without waiving general and specific objections, and objections to Bayer's definitions and instructions, the responses set forth herein are based on information

currently known to plaintiffs and their attorneys, and are made without prejudice to the right of plaintiffs to assert additional objections should grounds for objections be discovered at a later time. Plaintiffs have not completed their discovery of the facts pertaining to this action as discovery is ongoing in this case, and Bayer has not yet fully responded to plaintiffs' discovery requests. Plaintiffs reserve the right to rely on any facts, documents, or other evidence that may be developed by the parties, or come to plaintiffs' attention, and to supplement these Interrogatories when and if appropriate at a later time.

4. Plaintiffs reserve their right to object or answer to part or all of any particular Interrogatory, and the fact that plaintiffs may answer or object to part or all of any particular Interrogatory should not be taken as an admission or acknowledgment of any fact set forth in, assumed by, or inferred from any such Interrogatory.

5. Plaintiffs' responses or objections to these Interrogatories shall not be construed to be a waiver of the right to object on any ground to other discovery requests involving or relating to the subject matter of these Interrogatories.

6. Plaintiffs object to each Interrogatory individually, and taken as a whole, to the extent that they seek information protected from disclosure by privilege or doctrine, including the attorney-client privilege, the work product doctrine, or any other applicable basis for invoking privilege. Plaintiffs reserve the right to object to the introduction into evidence before the Court at any time before or at trial of information that is privileged or otherwise protected under law and that has been revealed or produced inadvertently. Plaintiffs do not, by responding to these Interrogatories, waive any claim of privilege or the protection of any doctrine.

7. Plaintiffs object to each Interrogatory individually, and taken as a whole, to the extent they require plaintiffs to draw legal conclusions or otherwise seek to impose upon

2

plaintiffs any requirements beyond those established by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, or applicable Court Orders.

8. Plaintiffs object to each Interrogatory individually, and taken as a whole, to the extent that: (a) the discovery sought by any Interrogatory is unreasonably cumulative or duplicative of other discovery requests served by defendants in this litigation, or is obtainable from some other source (including but not limited to, a public source) that is more convenient, less burdensome, or less expensive; (b) the discovery sought is in Bayer's possession; (c) the discovery sought is equally available to Bayer; and (d) compliance with any Interrogatory would be unduly burdensome, unduly expensive, harassing, annoying, or oppressive.

9. Plaintiffs object to each Interrogatory individually, and taken as a whole, to the extent that they seek facts known to plaintiffs' counsel rather than plaintiffs. Such facts obtained by counsel through their investigation constitute privileged attorney work-product.

10. These general objections apply to each Interrogatory and thus, for convenience, are not repeated after each Interrogatory, but rather are set forth herein and hereby incorporated into each response. The assertion of the same, similar, or additional objections or the provision of partial responses to individual Interrogatories does not and should not be construed to waive or modify any of plaintiffs' general objections.

11. When plaintiffs state that they will produce documents in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, they will produce such documents to the extent that they exist and can be reasonably obtained, and are within their possession, custody and control. By stating that they will produce documents, plaintiffs do not represent that any such documents or things exist or are within their possession, custody, or control.

12. In providing responses to each interrogatory, plaintiffs do not in any way waive or intend to waive, but rather intend to preserve and are preserving:

(a) All objections as to the competency, relevancy, materiality and admissibility of each interrogatory, the responses and their subject matter;

(b) All objections as to the vagueness, ambiguity or other infirmity in each interrogatory and any objections based on the undue burden imposed by the interrogatory;

(c) All rights to object on any ground to the use of any of the responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;

(d) All rights to object on any ground to any further interrogatory or other discovery requests involving or related to the subject matter of the interrogatory;

(e) The right to supplement responses to the interrogatories prior to trial;

(f) Any and all privileges and/or rights under the applicable Federal Rules of Civil Procedure, the Local Rules of the United States District Court of Massachusetts, the Local Rules of the Transferor Court(s) and other statutes or the common law;

13. Plaintiff's responses are based upon, and therefore limited by, plaintiff's present recollections. Consequently, plaintiffs reserve the right to make any changes in these responses if it appears that at any time, inadvertent errors or omissions have been made or additional information becomes available.

14. Any information or documents supplied in response to these Interrogatories are for use in this litigation and for no other purpose.

## RESPONSES TO
## INTERROGATORIES

1.  Identify all persons with knowledge of, responsibility for, or involvement in:
    a.  Any claim or allegation asserted in the FACC;
    b.  The procurement or purchase of pharmaceutical products by You or on Your behalf, including You[r] sub-agencies, departments, and affiliated health care corporations.
    c.  reimbursement by You for any Subject Drugs, including the processing of payments for Providers' claims for reimbursement for any Subject Drugs;
    d.  the adoption, rejection, amendment to, calculation, consideration, or negotiation of any supplemental rebate program applicable to any Subject Drugs;
    e.  establishing, considering, determining, calculating, or setting of the dispensing fees or co-payments in connection with the supply for administration of Subject Drugs; or
    f.  establishing, considering, determining, calculating, or setting of AWP, AMP, MAC, WAC, EAC, Direct Price, FUL, Usual and Customary Charges, Best Prices, or other prices, costs, reimbursement rates, or other benchmarks for any Subject Drug.

    For each such Person, state the subject of the information that Person is likely to have, and whether you intend to sponsor testimony from that Person in this case.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs object to the extent this interrogatory is a premature request for information at this stage in the proceedings, before Bayer has fully responded to all of plaintiffs' factual discovery requests, before all depositions have been taken, and before significant third-party discovery has been completed.

Plaintiffs also object to this interrogatory on the grounds that the term "all persons" is overly broad and ambiguous. Plaintiffs object to this interrogatory on the grounds that the terms "knowledge of, responsibility for, or involvement in" are overly broad and ambiguous. Plaintiffs

object to this interrogatory on the grounds that it seeks information not accessible to plaintiffs, not relevant to any claim or defense, and not reasonably calculated to lead to the discovery of admissible evidence, in that the only parties represented in this litigation are the County and City of New York governments, and the identity of any other person or persons who might have "knowledge of, responsibility for, or involvement in" the actions addressed by this interrogatory is available to defendant through the discovery and subpoena process.

Plaintiffs object on the grounds that the request is overly broad in that it is vague as to the time period for which information is requested. The interrogatory is not limited to the years between 1997 and 2005, which is the time period subject to discovery pursuant to paragraphs 5 and 7 of Case Management Order No. 33, dated September 14, 2007.

(a) Plaintiffs specifically object to subpart (a) to the extent that the phrase "any claim or allegation" is overly broad and unduly burdensome in that it encompasses the entirety of plaintiffs' claims, and in light of the number of Bayer employers and third party employers who have knowledge of the pattern and practice by defendant that began at least as early as 1997 and continues to the present. Plaintiffs also object to the extent that this information is protected by the attorney client and attorney work product privileges.

(b) Plaintiffs specifically object to subpart (b) in that it is irrelevant, overly broad and not likely to lead to the discovery of admissible evidence. This request is irrelevant to the issues in this lawsuit which concern the New York Counties' Medicaid reimbursement obligations mandated by New York State statute and defendant's obligations to report accurate prices to the pricing compendia for use as the basis for Medicaid reimbursement. The "procurement or purchase of pharmaceutical products" by plaintiffs or on behalf of plaintiffs is not relevant to this lawsuit.

Plaintiffs further object on the ground that subpart (b) is duplicative. Subject to and without waiver of the aforesaid objections, plaintiffs have identified and continue to identify the individual(s) most knowledgeable of prescription drug purchases made by the County. Plaintiffs have agreed to provide this information on or before October 31, 2008 to Defendant Sandoz, Inc. in response to Sandoz Inc.'s First Set of Interrogatories to New York Counties served in the above-captioned action. Defendant Bayer will be served with this response as will all other defendants.

(c)   Plaintiffs specifically object to subpart (c) to the extent that the term "processing" is vague and ambiguous. Plaintiff further objects because Medicaid claims are processed by the New York State's fiscal agent, Computer Sciences Corporation, which processes claims for reimbursement to the Provider based on the New York Statutory reimbursement formula.

Subject to and without waiver of the aforesaid objections, plaintiffs will supplement this response to identify for each county which person(s) are most knowledgeable about County Medicaid Pharmacy reimbursement.

(d)   Plaintiffs specifically object to subpart (d) to the extent that it is unduly burdensome in that it requests information that is beyond the custody and control of plaintiffs. Subject to and without waiver of the aforesaid objections, plaintiffs respond that the supplemental rebate program was established by the New York State Legislature, is not in dispute in this case and information concerning it is publicly available.

(e)   Plaintiffs specifically object to subpart (e) to the extent that it is overly broad and unduly burdensome in that it requests information that is beyond the custody and control of plaintiffs. Subject to and without waiver of the aforesaid objections, the amount of the

7

dispensing fee is established by the New York State Legislature and is beyond the custody and control of plaintiffs.

(f) Plaintiffs specifically object to subpart (f) to the extent it is overly broad and unduly burdensome in that it requests information that is beyond the custody and control of plaintiffs. Subject to and without waiver of the aforesaid objections, plaintiffs respond that AMP and Best Price are set by defendant, as defendant knows; FUL is set by CMS; EAC by the New York State Legislature as AWP – x%; usual and customary charges are submitted by pharmacy providers; and defendant itself establishes the relevant reported AWP, WACs and direct prices. Last, there was no New York State MAC in effect in 1997 – 2005, the operative discovery period here.

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

2. **State what you contend is the definition of the phrase "average wholesale price" in N.Y. Social Service Law § 367, and identify all documents that support your contention, and all witnesses from whom you intend to present testimony to support your contention. Your answer should describe precisely how you contend "average wholesale price" should be calculated, including which prices to which classes of trade are required by the statute to be included in the calculation of "average wholesale price," and what adjustments to price (e.g. discounts, rebates, price reductions for prompt payment) are required to be included.**

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the aforesaid objections, the phrase "average wholesale price" is defined by the pricing compendia, such as First Data Bank ("FDB"), and the National Pharmaceutical Council ("NPC"). Beginning in September of 1991, FDB defined AWP as "an

8

average price which a wholesaler would charge a pharmacy for a particular product." *See* Exhibit Worrell 028, March 26, 2008. In 1999, FDB's Price Alert defined AWP as "the average price a wholesaler would charge a customer for a particular product." *See* Exhibit Worrell 029, March 26, 2008. Then, in 2000, FDB's Price Alert defined AWP as "the average of the prices charged by the national drug wholesaler for a given product (NDC), often referred to by FDB as the Blue Book Price." *See* Exhibit Worrell 030, March 26, 2008. Also in 2000, FDB's Glossary of Terms defined AWP as the "unit or package price of an NDC when sold from wholesaler to the pharmacy." *See* Exhibit Worrell 031, March 26, 2008. FDB's Price Probe from 2002 defined AWP as "the price paid by the pharmacy to the wholesaler." *See* Exhibit Worrell 032, March 26, 2008. In 2003, FDB defined AWP as "the most common wholesaler price charged to the retailer or hospital."

The National Pharmaceutical Council defined AWP in its September, 1995 "Pharmaceutical Benefits Under State Medical Assistance Programs" as: "Average Wholesale Price (AWP): The composite wholesale prices charged on a specific commodity that is assigned by the drug manufacturer and is listed in either the Red or Blue books." *See* Exhibit Galownia 6.

The term AWP was defined by Judge Saris to be "the average price at which wholesalers sell drugs to their customers, including physicians and pharmacies." *See In re Pharm. Indus. AWP Litig.*, 460 F. Supp. 2d 277, 278 (D. Mass. Nov. 2, 2006).

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

  3. **State what you contend is the definition of the phrase "wholesale acquisition cost" (WAC) as You use that phrase in the FACC. If you contend that the definition of "wholesale acquisition cost" is something other than the definition of the phrase set forth at 42 U.S.C. 1395w-3a(c)(6)(B), please provide all legal authority in support of your definition, and describe precisely how you contend "wholesale acquisition cost" should be calculated,**

9

> including which prices to which classes of trade are required by the statute to be included in the calculation of "wholesale acquisition cost," and what adjustments to price (e.g. discounts, rebates, price reductions for prompt payment) are required to be included.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs object on the grounds that this interrogatory is not relevant to any claim or defense in that the statute cited by defendant is for the Medicare Program, which is not at issue in this case.

Subject to and without waiver of the aforesaid objections, the phrase "wholesale acquisition cost" ("WAC") is not defined in the Medicaid statute. It is defined by the FDB as the price paid by a wholesalers (or distributor) to a manufacturer for the purchase of a particular product. *See* FDB-AWP 6290.

The discovery obtained thus far shows that wholesaler contracts provide for product-specific pricing and incentives (including credits and rebates), baseline rebates, chargebacks and other incentives that render the wholesaler's dead net price far below the reported WAC or "list" price.

The HHS OIG Compliance report entitled "OIG Compliance Program Guidance for Pharmaceutical Manufacturers" affirmed that "manufacturers reported prices" "should accurately take into account price reductions, cash discounts, free goods contingent on a purchase agreement, rebates, up-front payments, coupons, goods in kind, free or reduced-price services, grants, or other price concessions or similar benefits offered to some or all purchasers." *See* Fed. Reg. Vol. 68, No. 86, May 5, 2003 p. 23731-23743. The WAC should therefore reflect sales

prices less any chargebacks, rebates, credits, or other incentives that have the effect of decreasing the net cost.

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

4. In paragraph 11 of the FACC, you allege that "[u]ntil recently it was generally accepted that a true WAC should be 20-25% lower that AWP. This was understood to constitute the wholesaler mark up." State the factual basis for this allegation. Your answer should include the identities of the specific representatives of New York State or the Counties who had this understanding, and the basis from which their understanding was derived.

Plaintiffs incorporate by reference their general objections herein.

Subject to and without waiver of the aforesaid objections, in Judge Saris's Findings of Fact and Conclusions of Law in the MDL Trial of Class 2 and Class 3 Claims, the Judge wrote: "Initially, AWP was the average price charged by wholesalers to providers, like doctors and pharmacies. It was derived from the markup charged by wholesalers over their actual acquisition cost, sometimes called the 'Wholesale Acquisition Cost' or 'WAC.' Historically, there was an industry-wide formulaic 20 or 25 percent markup between WAC and AWP." *See In re Pharm. Indus. AWP Litig.*, 491 F. Supp. 2d 20, 33 (D. Mass. June 21, 2007).

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

5. Do you contend that any reimbursement for a Subject Drug that exceeds the price paid by a Provider to acquire such Subject Drug constitutes an unlawful overpayment or "spread"? If your response is anything other than an unqualified "Yes," state, as a percentage of a Provider's acquisition cost, how large the "spread" or difference between the amount reimbursed by You for a Subject Drug and the price paid by a Provider to acquire such Subject Drug must be to constitute an unlawful overpayment or grounds for liability to You for such alleged "overpayment" by the manufacturer of that Subject Drug.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the aforesaid objections, any alleged "overpayment" is the difference between the manufacturer's reported prices to the publishing compendia and what plaintiffs would have paid had defendant honestly and accurately reported the prices for its drugs as required by law and regulation. There is no fixed percentage of a Provider's acquisition cost that determines how large the "spread" or difference is that constitutes an unlawful overpayment. For the purposes of this lawsuit, plaintiffs are seeking damages for all claims where the difference between what was paid and what should have been paid based on AWP is greater than 25% (or 50% for reimbursements based on the FUL).

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

6. **Identify each Provider who actually received alleged "inflated" amounts of reimbursement provided by You on account of any alleged fraud, scheme, misrepresentation, concealment, negligence, or other culpable conduct by any Defendant. For each Provider identified, state whether you have, by action, administrative proceeding, or otherwise, sought to recover alleged overpayments from the Provider and, if so, identify each such action, proceeding or other recovery effort. If you have not sought such recovery, explain why you have not done so.**

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the aforesaid objections, plaintiffs have produced and continue to produce NYS DOH claims data that identifies the providers who dispensed and were reimbursed for the at-issue drugs.

7. In paragraph 166 of the FACC, you allege that "defendants control the published reimbursement prices," i.e., prices published by "First Data Bank and other publishers." Describe all facts supporting this allegation, and state whether you have, by action, administrative proceeding, or otherwise, sought to recover any alleged overpayments from any Publisher. If so, identify each such action, proceeding or other recovery effort. If you have not sought such recovery, explain why you have not done so.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. It cannot reasonably be contested that all defendants control the AWP, WAC and other prices associated with their drugs that appear in the publishing compendia.

The discovery produced by defendants to date confirms this, as do the Findings of Fact and Conclusions of Law issued by the Court in connection the MDL Trial of Class 2 and Class 3 Claims, in which the Judge wrote: "[defendants] effectively controlled the AWP published in the compendia." *See In re Pharm. Indus. AWP Litig.*, 491 F. Supp. 2d 20, 33 (D. Mass. June 21, 2007).

Plaintiffs object further on the grounds that discovery is ongoing and in that regard this interrogatory is premature. Plaintiffs further object because responsive information is within defendant's possession and control.

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

8. In paragraph 842 of the FACC, You allege that "defendants" have made "false representations [on which] the Counties have relied." Identify (a) each such representation made, (b) who made the representation, (c) to whom the representation was made, (d) when the representation was made, (e) the manner in which the representation was "false," (f) which employees of or persons contracted by You were misled or deceived by the representation, and (g) the manner in which You "have relied upon such

> misrepresentations" – in other words, state what You would have done differently had You known the "true" facts.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object on the grounds that this interrogatory is a premature request for information at this stage in the proceedings, before Bayer has fully responded to all of plaintiff's factual discovery requests, before all depositions have been taken, and before significant third-party discovery has concluded.

Plaintiffs object to this interrogatory on the grounds that it is unduly burdensome in that the case involves millions of false representations and defendant is already in possession of all of them, insofar as defendant controls the published AWP, WACs and other prices for their drugs.

Subject to and without waiver of the aforesaid objections, (a) the prices defendant caused to be published in the pricing compendia, such as FDB, are the false representations made; (b) defendant caused and controlled these representations; (c) the representations were made to the publishing compendia with the knowledge that New York State would use the published prices to estimate the EAC; (d) the representations were made from 1992 to the present; (e) the representations were false in that, inter alia, the reported AWPs do not reflect the average price paid by a Pharmacy Provider for defendant's drugs. Published WACs are also false in that they are supposed to be the price paid by a wholesaler to a manufacturer and in reality, very few if any customers pay WAC or any price close to WAC; (f) the New York State Medicaid Program, of which plaintiffs are a part, was misled and deceived by the reported prices to calculate the EAC of Pharmacy Providers; (g) the New York State Medicaid Program, including plaintiffs,

relied on defendant's published prices to estimate EAC for the purpose of determining the amount of Medicaid reimbursement under NYSSL §368-a and §367-a.

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

9. In paragraph 842 of the FACC, You allege that defendants have "concealed material facts with the purpose of overcharging the Counties." Identify (a) the specific facts that you contend were concealed, (b) who concealed the fact, (c) how it was concealed, (d) from whom it was concealed, and (e) how You relied upon that concealment – i.e., what action You would have taken (or refrained from taking) had You known of the allegedly concealed fact.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs object to the extent this interrogatory is a premature request for information at this stage in the proceedings, before Bayer has fully responded to all of plaintiffs' factual discovery requests, before all depositions have been taken, and before significant third-party discovery has concluded.

Plaintiffs object on the grounds that this interrogatory calls for a legal conclusion.

Plaintiffs object to the extent that this interrogatory is unduly burdensome in that it requests information that is not in plaintiffs' possession but is subject to outstanding plaintiffs' discovery requests. Plaintiffs object to the extent that responsive information is within defendant's possession and control.

Subject to and without waiver of the aforesaid objections, in response to subsections (a), (b) and (c), defendant concealed the true average prices paid by its customers, which defendant knew and controlled, and failed to disclose such prices for the Subject Drugs to the pricing compendia; (d) defendant concealed true prices from New York State Medicaid knowing that New York State Medicaid relied on prices published by the pricing compendia to estimate EAC,

15

and defendant concealed its true average prices to Providers; (e) New York State Medicaid relied on the prices published by the pricing compendia as the basis for estimating EAC and calculating Medicaid pharmacy reimbursement.

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

10. In paragraph 788 of the FACC, You allege that You "have been diligent in pursuing an investigation of the claims asserted in this Complaint. Only in the wake of recent Congressional hearings, DOJ, OIG and HHS reports, and settlements have the Counties become informed of or placed on notice regarding the extent of defendants' fraudulent conduct." Describe in detail the investigation referenced in paragraph 788, including who was involved in the investigation, when and how the investigation was conducted, and what information You learned that led You to "become informed of or placed on notice regarding the extent of defendants' fraudulent conduct." Your answer should identify all communications between You and any representative of Ven-A-Care of the Florida Keys, Kirby McInerny [sic], Milberg Weiss LLP, Weitz & Luxembourg or any other law firm, the New York Attorney General's Office, the New York Department of Health, or the Office of the Governor, regarding any of the matters alleged in the FACC or possibility of litigation against any Defendant prior to the date you filed the instant lawsuit, and what information was conveyed in those communications.

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs object to this interrogatory to the extent it is overly broad and unduly burdensome in that it requests "all communications." Plaintiffs object to this interrogatory to the extent it is irrelevant and unlikely to lead to the discovery of admissible evidence. Plaintiffs object further to this interrogatory to the extent it requests privileged attorney-client communication, specifically with respect to its request for "all communications between

16

[plaintiff] and any representative of" "Kirby McInern[e]y, Milberg Weiss LLP, Weitz & Luxembourg" and further that it violates the work product doctrine.

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

11. **In paragraph 790 of the FACC, You allege that "the defendants have been and are under a continuing duty to disclose to the Counties that the AWPs they reported or caused to be reported bear no relationship to the actual prices paid for their drugs [and] that defendants manipulated the AWPs to create a spread." State the legal and factual basis for this purported duty to disclose.**

Plaintiffs incorporate by reference their general objections herein. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object on the ground that it calls for plaintiffs to draw legal conclusions.

Subject to and without waiver of the aforesaid objections, the "OIG Compliance Program Guidance for Pharmaceutical Manufacturers" is one of the many bases for defendant's duty to be honest and forthright in its dealings with the government. Therein, the OIG requires that "manufacturers' published prices should accurately take into account price reductions, cash discounts, free goods contingent on a purchase agreement, rebates, up-front payments, coupons, goods in kind, free or reduced-price services, grants, or other price concessions or similar benefits offered to some or all purchasers." It continues: "pharmaceutical manufacturers are responsible for ensuring the integrity of data they generate that is used for governmental reimbursement purposes." *See* Fed. Reg. Vol. 68, No. 86, May 5, 2003 p. 23731-23743.

Additionally, the United States Supreme Court has found that "Men must turn square corners when they deal with the government":

> This observation has its greatest force when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law ...

See *Heckler v. Community Health Svc.s of Crawford County*, 467 U.S. 51, 63 (1984).

Plaintiffs agree to supplement this response if and when they obtain additional relevant information.

12. **Identify, by department/agency and title, each individual whose files have been searched in an effort to locate documents or obtain information responsive to the defendants' discovery requests. Your answer should specify whether the search encompassed both hard copy documents and electronic documents.**

Plaintiffs incorporate by reference their general objections herein.

Subject to and without waiver of the aforesaid objections, plaintiffs will supplement this response.

Dated: October 30, 2008

        Respectfully submitted,

**City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

**KIRBY McINERNEY, LLP**
825 Third Avenue
New York, New York 10022
(212) 371-6600

By:   /s/ Joanne M. Cicala
      Joanne M. Cicala, Esq.
      James P. Carroll Jr., Esq.
      Aaron D. Hovan, Esq.
      Jocelyn R. Normand, Esq.
      Kathryn B. Allen, Esq.

/s/ Ross B. Brooks
Ross B. Brooks, Esq.
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
*Special Counsel for the County of Nassau*

/s/ Theresa A. Vitello
Theresa A. Vitello, Esq.
LEVY PHILLIPS &
KONIGSBERG, LLP
800 Third Avenue
New York, NY 10022
(212) 605-6205
*Counsel for the County of Orange*

CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the 31th day of October, 2008 she caused a true and correct copy of *Corrected* Plaintiff Counties' Objections and Responses to Defendant Bayer Corporation's First Set of Interrogatories to Plaintiffs to be delivered to counsel of record for defendant by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

/s/ Jocelyn R. Normand
Jocelyn R. Normand
Kirby McInerney LLP
825 Third Avenue
New York, NY 10022
(212) 371-6600