# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | |
| | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) | |
| | ) | Magistrate Judge Marianne B. |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,* Civil Action No. 05-11084-PBS | ) ) ) ) | Bowler |

**UNITED STATES' MOTION FOR AN ORDER TO PRODUCE
MICHAEL T. RICKS FOR RULE 30(a)(2)(B) DEPOSITION**

The plaintiff United States of America, through its undersigned counsel, respectfully

moves this Court for an order pursuant to Federal Rule of Civil Procedure 30(a)(2)(B) directing

the Warden of the Kit Carson Correctional Center, 49777 County Road V, Burlington,

Colorado 80807, to produce inmate Michael T. Ricks, for the taking of his deposition on

November 20, 2008 at 9:00 a.m. MST.  If the Court does not act on this motion before

November 15, 2008, the United States requests that any order provide that the deposition shall

take place approximately 10 days after the date of the order, except as agreed upon by the parties

and the Warden.

The grounds for this motion are set forth in the accompanying memorandum.

Respectfully submitted,

PETER D. KEISLER
ASSISTANT ATTORNEY GENERAL

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:   /s/ George B. Henderson, II
GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3282

LAURIE A. OBEREMBT
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Dated: October 23, 2008          Washington, D.C. 20044

## CERTIFICATION

The undersigned counsel certifies pursuant to LR 7.1(A)(2) that counsel have conferred on the issue raised in this motion, and have been unable to resolve or narrow the issue.

/s/ George B. Henderson, II
George B. Henderson, II

### CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above "UNITED STATES' MOTION FOR AN ORDER TO PRODUCE MICHAEL T. RICKS FOR RULE 30(a)(2)(B) DEPOSITION." to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: October 23, 2008          /s/ George B. Henderson, II
George B. Henderson, II

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) |
| ——————————————— | ) |
| | ) MDL No. 1456 |
| | ) Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) |
| | ) Magistrate Judge Marianne B. |
| *United States of America ex rel. Ven-a-* | ) Bowler s |
| *Care of the Florida Keys, Inc., et al. v.* | ) |
| *Dey, Inc., et al.,* Civil Action No. 05- | ) |
| 11084-PBS | ) |

**UNITED STATES' MEMORANDUM IN SUPPORT OF
MOTION FOR AN ORDER TO PRODUCE
PRISON INMATE MICHAEL T. RICKS FOR DEPOSITION**

The United States respectfully submits this memorandum in support of its motion

for an order pursuant to Federal Rule of Civil Procedure 30(a)(2)(B) allowing the United

States to take the deposition of prison inmate Michael T. Ricks.

**BACKGROUND**

The United States has brought this suit against Dey, Inc., Dey L.P., Inc. and Dey

L.P. ("Dey") under the False Claims Act, 31 U.S.C. §§ 3729 - 3733, and the common law

seeking treble damages and civil penalties for Dey's false reporting of drug pricing

information.  The United States alleges that Dey reported to pricing compendia prices for

certain of its generic drugs that were false, fraudulent and inflated, knowing that the

Medicare and Medicaid programs relied upon those reported prices to set reimbursement

rates for those drugs, all while selling the drugs to customers at far lower prices.  The

United States further alleges that Dey marketed the government-funded "spread" between

the reimbursement amounts calculated with the false price and the real price paid by its customers to increase sales of the drugs, thereby boosting Dey's profits.

Evidence obtained in the government's investigation indicates that Dey trained its sales representatives on how to market the spread (see Exhibit 1 hereto), and that at least some of its sales representatives may have used a "Reimbursement Comparison Worksheet" (Exhibit 2 hereto) to present to customers for the purpose of comparing the spread on Dey's albuterol unit dose products with the spread on competitor's products and to help explain the greater profit to be made on Dey's drugs.  In answer to interrogatories, Dey has acknowledged that "certain documents suggest that on isolated occasions certain of Dey's sales representatives discussed the term 'spread' and the elements that third party medical benefit payors employed to create a 'spread,' with certain customers with respect to some of the Subject Drugs."  See Exhibit 3, Answer to Interrogatory #4.  But Dey asserts:

> However, there is no evidence that Dey actually made any sales as a result of this worksheet.  There is no evidence that Dey's sales representatives used a similar document to compare any of Dey's other products at issue in this action to a competitor's products; specifically there is no evidence that Dey's sales representatives used a reimbursement comparison worksheet with respect to Dey's albuterol multi-dose, albuterol syrup, albuterol multi-dose inhaler, ipratropium bromide, or cromolyn sodium products.

Id., Response to Interrogatory #4.

Michael Ricks was formerly employed by Dey as a District Sales Manager in the mid-1990s.[1] Dey has produced approximately thirty "Account Call Records" which appear to have been created by Mr. Ricks to document his sales activities while employed by Dey.   The records appear to show that Mr. Ricks was marketing the spread of Dey's drugs.  Examples of these records are attached as Exhibit 4.

Mr. Ricks is currently serving a lengthy prison term at the Kit Carson Correctional Center in Burlington, Colorado.  It appears that he will not be eligible for parole until the year 2023.  The United States wants to question Mr. Ricks about his role as a district sales manager for Dey; the training he received while at Dey; the strategies and practices he used in marketing Dey's drugs; his use of the "Reimbursement Comparison Worksheet" and other similar documents in promoting Dey's products; whether he made any sales as a result of his use of the worksheet; and the extent to which higher-level managers knew about and encouraged his sales practices.

The deadline for fact discovery is December 15, 2008.  <u>See</u> Joint Scheduling Order entered October 6, 2008 (Dkt entry #5629).

## **ARGUMENT**

Federal Rule of Civil Procedure 30(a)(2)(B) governs those circumstances when leave of court must be obtained before a party may take a deposition.  It provides in part

---

[1] The United States' claims reach back to 1992.  <u>See</u> Memorandum and Order dated July 17, 2007 (Dkt entry #4484) (denying Dey's motion to dismiss on statute of limitations grounds).

3

that "[a] party must obtain leave of court and the court must grant leave to the extent

consistent with Rule 26(b)(2) . . . if the deponent is confined in prison."

Federal Rule of Civil Procedure 26(b)(2)(C) provides:[2]

> **When Required.** On motion or on its own, the court must
> limit the frequency or extent of discovery otherwise allowed
> by these rules or by local rule if it determines that:
>     (i) the discovery sought is unreasonably cumulative or
> duplicative, or can be obtained from some other source that is
> more convenient, less burdensome, or less expensive;
>     (ii) the party seeking discovery has had ample
> opportunity to obtain the information by discovery in the
> action; or
>     (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of the case,
> the amount in controversy, the parties' resources, the
> importance of the issues at stake in the action, and the
> importance of the discovery in resolving the issues.

The plain language of Rule 30(a)(2)(B) requires "leave of court" when the

deponent is confined in prison. <u>Ashby v. McKenna</u>, 331 F.3d 1148, 1150 (10th Cir.

2003). The court should grant leave to depose an incarcerated witness unless the

objecting party shows, and the Court determines, that the discovery is unwarranted based

on the factors set forth in the Rule. <u>Whittingham v. Amherst College</u>, 163 F.R.D. 170,

---

[2] Subparagraphs (b)(2)(A) and (B) of Rule 26 address limitations on the frequency
and extend of depositions. The United States does not understand Dey to object to the
Ricks deposition on the ground that the United States seeks to take too many depositions.
The proposed deposition of Mr. Ricks is well within the 10-deposition limit of the
governing Case Management Order (Dkt entry #4406). The United States has
independently noticed only four depositions in this action; Mr. Ricks' deposition would
be the fifth.

171 (D. Mass. 1995); see also Williams v. Greenlee, 210 F.R.D. 577, 578-579 (N.D. Tex. 2002).

Dey cannot meet its burden under Rule 30(a)(2)(B); indeed, Dey's apparent objection borders on the frivolous. The discovery is plainly not cumulative, duplicative, or obtainable from some other source. Mr. Ricks has never been deposed. Indeed very few of Dey's former field sales representatives have been deposed, and none in this litigation. Dey contends that the marketing of the spread by its employees occurred only on "isolated occasions," and Dey asserts that the use of the "Reimbursement Comparison Worksheet" occurred infrequently and only in connection with one of its products. The United States needs to conduct discovery to find out how and to what extent Dey marketed the spread.

The United States has not had the opportunity to obtain the information it seeks thus far. The United States in Interrogatories No. 4 asked Dey to identify each person who marketed the spread and each document evidencing such conduct. Dey's answer was vague and uninformative, justifying further discovery. Furthermore, the burden to Dey of attending this deposition is not significant in light of the nature and importance of the litigation. Dey has never complained of lack of resources and has itself noticed depositions in numerous states, including Delaware, Louisiana, Arkansas, Wyoming, Kansas, Indiana, Oregon, and North Dakota (in addition to cross-noticing depositions in various other states). The issues in this case are important and the potential recoveries are very large.

5

There can be no doubt that Dey's marketing of the spread is highly relevant. United States District Judge Saris has made clear that a manufacturer's marketing of the spread is an important consideration in determining liability.  <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>, 491 F.Supp.2d 20, 94 (D. Mass. 2007).  In addition, Dey's conduct in marketing the spread is relevant in determining the amount of civil penalties under the False Claims Act.  In short, Dey's objections to this deposition are meritless and deserving of short shrift.

## **CONCLUSION**

For the reasons stated above, the Court should allow the United States' motion and enter an order directing the Warden of the Kit Carson Correctional Center to produce

inmate Michael T. Ricks for deposition questioning on November 20, 2008.

     A proposed Order is submitted as Exhibit 5.

                       Respectfully submitted,

                       PETER D. KEISLER
                       ASSISTANT ATTORNEY GENERAL

                       MICHAEL J. SULLIVAN
                       UNITED STATES ATTORNEY

By:    /s/ George B. Henderson, II
                       GEORGE B. HENDERSON, II
                       Assistant U.S. Attorney
                       United States Courthouse
                       1 Courthouse Way, Suite 9200
                       Boston, MA 02210
                       (617) 748-3282

                       LAURIE A. OBEREMBT
                       Civil Division
                       Commercial Litigation Branch
                       P. O. Box 261
                       Ben Franklin Station
Dated: October 23, 2008          Washington, D.C.  20044

**CERTIFICATE OF SERVICE**

     I hereby certify that I have this day caused an electronic copy of the above "UNITED STATES' MOTION FOR AN ORDER TO PRODUCE PRISON INMATE MICHAEL T. RICKS FOR RULE 30(a)(2)(B) DEPOSITION." to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: October 23, 2008               /s/ George B. Henderson, II
                          George B. Henderson, II

# Exhibit 1



## Introduction:

- **AWP Reimbursement:** Why it's important, how it is calculated, and what that means in terms of reimbursement from the third party payors to the managed care organizations.

- **Why "Multi-dose to Unit-dose" Albuterol** Conversion makes good business sense for the Customer Base.

- **The dramatic effect the conversion** has in "Real Dollars" yielding significant gain to the bottom line profit of the targeted accounts.

DEPOSITION
EXHIBIT
460
Galles 2/6/03 CV



CONFIDENTIAL
DL TX 0000075



# "ALBUTEROL"

## UNIT DOSE  WORKSHEET

---

**AWP = $ 30.25 (25 vials per carton) = $1.21 per dose**

**REIMBURSEMENT = AWP - __30%__ = $ 21.18 = .85 per tx**
$$\frac{}{25}$$

**COST = $ _____per carton**

**REIMBURSEMENT = ___$_____ Carton of ____ vials**

_____REIMBURSEMENT PER DRUG DOSE

___n/a_____REIMBURSEMENT PER SALINE

_____TOTAL REIMBURSEMENT

**COST=**        _____Carton of _ vials

_____DRUG COST PER DOSE

_____SALINE COST PER DOSE

_____TOTAL COST PER TREATMENT

**ANNUAL=**        _____# TX'S PER MEMBER PER YEAR
( 4 x 30 x 12)

_____TOTAL REIMBURSEMENT PER
MEMBER PER YEAR ( 1,440 x .85)

_____TOTAL COST PER MEMBER PER
YEAR ( 1,440 x .44)

**PROFIT=**        _____PROFIT PER PATIENT PER YEAR

**GAIN in PROFIT=**    $_____ Profit Analysis
(UD profit - MD profit)

CONFIDENTIAL



## "ALBUTEROL"

## MULTI-DOSE WORKSHEET

---

**AWP = $ 12.50/20 ML BOTTLE**
**COST = $ 5.75/20 ML BOTTLE**
**REIMBURSEMENT = AWP - _____**

**REIMBURSEMENT = _____/ 20 ML BOTTLE  (40X.05mL)**

_____ **REIMBURSEMENT PER DRUG**

_____ **REIMBURSEMENT PER SALINE**

_____ **TOTAL REIMBURSEMENT**

**COST=** _____ **/20 ML BOTTLE ( 40 X .05 mL)**

_____ **DRUG COST**

_____ **SALINE COST**

_____ **TOTAL COST**

**ANNUAL=** _____ **# TX'S PER MEMBER PER YEAR**
**( 4 x 30 x 12)**

_____ **TOTAL REIMBURSEMENT PER MEMBER PER YEAR**

_____ **TOTAL COST PER MEMBER PER YEAR**

**PROFIT=** _____ **PROFIT PER PATIENT PER YEAR**

CONFIDENTIAL

# ANSWERS FOR PRESENTATION
## "ALBUTEROL"

## MULTI-DOSE WORKSHEET

---

**AWP = $ 12.50/20 ML BOTTLE**
**COST = $ 5.75/20 ML BOTTLE**
**REIMBURSEMENT = AWP - __30%__**

**REIMBURSEMENT =** ___$ 8.75___ **/ 20 ML BOTTLE ( 40X.05mL)**

___.22___ **REIMBURSEMENT PER DRUG DOSE**

___-0-___ **REIMBURSEMENT PER SALINE**

___$ 8.75___ **TOTAL REIMBURSEMENT**

**COST=** ___$ 5.75___ **/20 ML BOTTLE ( 40 X .05 mL)**

___.14___ **DRUG COST PER DOSE**

___.06___ **SALINE COST PER DOSE**

___.20___ **TOTAL COST PER TREATMENT**

**ANNUAL=** ___1,440___ **# TX'S PER MEMBER PER YEAR**
**( 4 x 30 x 12)**

___$ 316.80___ **TOTAL REIMBURSEMENT PER MEMBER PER YEAR**

___$ 288.00___ **TOTAL COST PER MEMBER PER YEAR**

**PROFIT=** ___$ 28.80___ **PROFIT PER PATIENT PER YEAR**

CONFIDENTIAL
DL-TX-0090878

# ANSWERS FOR PRESENTATION
# "ALBUTEROL"

## UNIT DOSE   WORKSHEET

---

AWP = $ 30.25 (25 vials per carton) = $1.21 per dose
REIMBURSEMENT = AWP - __30%__   = $ 21.18 = .85 per tx
$$\frac{}{25}$$

COST = $ _____ per carton

REIMBURSEMENT =   __$ 21.18__   Carton of _25_ vials

__.85__   REIMBURSEMENT PER DRUG DOSE

__n/a__   REIMBURSEMENT PER SALINE

__$ 21.18__   TOTAL REIMBURSEMENT

COST=   __$ 11.00__   Carton of _25_ vials

__.44__   DRUG COST PER DOSE

__n/a__   SALINE COST PER DOSE

__.44__   TOTAL COST PER TREATMENT

ANNUAL=   __1,440__   # TX'S PER MEMBER PER YEAR
( 4 x 30 x 12)

__$ 1,224.00__   TOTAL REIMBURSEMENT PER
MEMBER PER YEAR ( 1,440 x .85)

__$ 633.60__   TOTAL COST PER MEMBER PER
YEAR ( 1,440 x .44)

PROFIT=   __$ 590.40__   PROFIT PER PATIENT PER YEAR

GAIN in PROFIT=   __$ 561.60__   Profit Analysis
(UD profit – MD profit)
590.40 - 28.80 =

CONFIDENTIAL

# Exhibit 2

# REIMBURSEMENT COMPARISON WORKSHEET

## ALBUTEROL MULTIDOSE BOTTLES 20 ML

| EXAMPLE: | YOUR PLAN/STORE: |
|---|---|

AWP = $12.50 PER 20 ML BOTTLE

COST = $5.75

REIMBURSEMENT/ BOTTLE = AWP - 30% = $8.75
*ASSUMES 40 TREATMENTS PER BOTTLE*

**REIMBURSEMENTS:**

ALBUTEROL REIMBURSEMENT PER TX = ($8.75/40) =   $0.22

SALINE REIMBURSEMENT PER TX =   + $0.00

TOTAL REIMBURSEMENT PER TX =   = $0.22   (A)

**COSTS:**

ALBUTEROL COST PER TX ($5.75/40)=   $0.14

SALINE COST PER TX =   + $0.06

TOTAL COST PER TX =   = $0.20   (B)

**ANNUALIZED PER PATIENT:**

TREATMENTS (4 TX/DAY x 30 DAYS x 12 MONTHS)=   1440   (C)

TOTAL REIMBURSEMENT ($0.22 x 1440) =   $316.80   (A x C)

TOTAL COST($0.20 x 1440) =   $288.00   (B x C)

MULTIDOSE ESTIMATED PROFIT =   = $28.80   (D)

## DEY UNIT-DOSE ALBUTEROL

YOUR PLAN/STORE:

AWP = $30.25/25 VIALS PER CARTON

COST PER CARTON =   $ _____ (E)

REIMBURSEMENT = AWP - 30% = $21.18

REIMBURSEMENT PER TX ($21.18/25) =   $0.85   (F)

COST PER TX ($_____ /25)=   $ _____ (G)   (E)

**ANNUALIZED PER PATIENT:**

TREATMENTS (4 TX/DAY x 30 DAYS x 12 MONTHS) =   1440   (H)

TOTAL REIMBURSEMENT($0.85 x 1440) =   $1,224.00   (F x H)

TOTAL COST($_____ per TX x 1440) =   - _____   (G)

DEY UNIT-DOSE ESTIMATED PROFIT =   = _____ (I)

# GAIN IN PROFIT WITH DEY UNIT-DOSE SUBSTITUTION:

YOUR PLAN/STORE:   $ _____ (H-I)

DL-TX 0076254



DEPOSITION EXHIBIT

*Albuterol sulfate Inhalation Solution 0.083% (potency expressed as albuterol)   Copyright 1995 DEY Laboratories   Napa, CA 94558

3/95   09-338-00   ...0FITGN.XLS

# Exhibit 3

(Pages 2 - 23 and 27 - 83 are omitted from this document)



20364655

Jun 23 2008
4:46PM

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | |
| ———————————————————— | ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al, Civil Action No. 05-11084-PBS* | ) ) ) ) | |

**DEFENDANTS DEY, INC., DEY L.P., INC., AND DEY, L.P.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS DEY, INC., DEY L.P., INC. AND DEY, L.P.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Rules 26.5 and 33.1 of the Local Rules of the United States District Court for the District of Massachusetts, Defendants Dey, Inc., Dey L.P., and Dey, L.P., Inc. (collectively, "Dey") assert the following responses and objections to Plaintiffs' First Set of Interrogatories to Defendants Dey, Inc., Dey L.P., Inc., and Dey, L.P. (the "Interrogatories"), dated May 6, 2008, and propounded by Plaintiffs the United States of America and Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care") (collectively, "Plaintiffs"), as follows:

**GENERAL OBJECTIONS AND RESERVATION OF RIGHTS**

1.      Where Dey states herein that it will provide or produce information or documents in accordance with the Federal Rules of Civil Procedure, it will produce such information or documents subject to the Protective Order, dated June 22, 2007.

2.      Dey objects to the Interrogatories to the extent they seek information or the production of data or documents containing trade secrets, confidential or proprietary information, including, without limitation, customer identities, customer pricing, customer

includes documents that are protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrine or privilege. Dey further objects to this Interrogatory to the extent that it incorrectly assumes that Dey had created its own definition of AWP. Dey further objects to this Interrogatory as unduly burdensome to the extent it seeks information regarding the use of AWP by presently unknown and unspecified multiple present and former employees over a period of more than eleven years. Dey further objects to this Interrogatory to the extent that the term AWP is not defined in statutes or regulations. Dey objects to this Interrogatory to the extent it contains subparts which exceed the limit of Interrogatories set forth in the Federal Rules of Civil Procedure.

### INTERROGATORY NO. 4

Did any of Your employees or representatives ever use the Spread or potential profit margins on Your Pharmaceuticals when selling or marketing those Pharmaceuticals? If so, *identify:*

    a.    each such person, and
    b.    all *documents* concerning such practices.

### DEY'S RESPONSE AND OBJECTIONS

Dey incorporates its Responses and Objections to Interrogatory Nos. 1 and 2.

Dey further states that, during the Relevant Time Period, reimbursement under all State Medicaid programs and the Medicare program has typically had a spread between the cost of the drug paid by the provider and the reimbursement amount. Until the mid-1990s, it is Dey's understanding that it was not unusual for sales people, when speaking to customers, to compare their spreads with those of their competitors. Beginning in the late 1990s, as a result of litigation, government investigations and the OIG Compliance Program Guidance for Pharmaceutical Manufacturing issued in 2003, Dey's understanding is that the industry became sensitive to this practice and it largely stopped.

In Dey's case, certain documents suggest that on isolated occasions, some of Dey's sales representatives discussed the term "spread" and the elements that third-party medical benefit payors employed to create a "spread," with certain customers with respect to some of the Subject Drugs. Dey further states that certain documents suggest that for a short period of time in the mid-1990s, certain of its sales representatives used forms from which providers could enter reimbursement rates and costs for one of Dey's albuterol products and calculate an "estimated profit" based on reimbursement from third-party medical benefit payors for that product. There is no evidence that Dey actually made any sales as a result of this worksheet. There is no evidence that Dey's sales representatives used a similar document to compare any of Dey's other products at issue in this action to a competitor's products; specifically, there is no evidence that Dey's sales representatives used a reimbursement comparison worksheet with respect to Dey's albuterol multi-dose, albuterol syrup, albuterol multi-dose inhaler, ipratropium bromide, or cromolyn sodium. The documents referenced herein are contained in Dey's prior productions.

Dey makes its above response subject to and without waiving the foregoing general objections and the following specific objections. Dey objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome. Dey further objects to this Interrogatory on the grounds that it contains terms that are themselves vague, ambiguous, overbroad, or undefined, including "employees or representatives" and "potential profit margins." Dey objects to this Interrogatory as overbroad in that it is not limited to the Subject Drugs, seeks information outside the relevant limitations period, and outside the scope of the allegations in the Complaint. Dey further objects to this Interrogatory as unduly burdensome because it seeks information regarding the conduct of presently unknown and unspecified multiple present and former employees. Dey objects to this Interrogatory to the extent it contains

subparts which exceed the limit of Interrogatories set forth in the Federal Rules of Civil

Procedure.

## INTERROGATORY NO. 5

Did You ever instruct any employee or representative of Dey not to use the Spread or potential profit margins on Your Pharmaceuticals when selling or marketing those Pharmaceuticals? If so, *identify:*

a.    each Dey employee or representative who gave such instruction,
b.    all Dey employees and representatives who were so instructed,
c.    the date and content of such instruction, and
d.    each *document* concerning such instruction.

## DEY'S RESPONSE AND OBJECTIONS

Dey incorporates its Responses and Objections to Interrogatory Nos. 1, 2 and 4 herein.

Dey further states that it implemented a compliance program soon after the OIG Compliance

Program Guidance for Pharmaceutical Manufacturing was issued in 2003.  As part of Dey's

compliance program, Dey's sales and marketing representatives are instructed not to discuss

third party payor reimbursement with customers.  Dey agrees to produce its compliance manual

which reflects the above instructions.

Dey makes its above response subject to and without waiving the foregoing general

objections and the following specific objections.  Dey objects to this Interrogatory on the

grounds that it is vague, ambiguous, overbroad, and unduly burdensome.  Dey further objects to

this Interrogatory on the grounds that it contains terms that are themselves vague, ambiguous,

overbroad, or undefined, including "employee or representative" and "potential profit margins."

Dey objects to this Interrogatory as overbroad in that it is not limited to the Subject Drugs, seeks

information outside the relevant limitations period, and outside the scope of the allegations in the

Complaint.  Dey further objects to this Interrogatory to the extent it includes documents that are

protected by the attorney-client privilege, the work product doctrine, or any other applicable

set forth in the Federal Rules of Civil Procedure.

Dated: June 19, 2008

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By:___/s/ Antonia F. Giuliana_____
      Paul F. Doyle (BBO # 133460)
      Sarah L. Reid
      Neil Merkl
      Antonia F. Giuliana
101 Park Avenue
New York, NY 10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897

*Counsel for Defendant Dey, Inc.,
Dey L.P., Inc. and Dey, L.P.*

## VERIFICATION

I, PAMELA R. MARRS, having first been duly sworn, hereby state that I am the Senior Vice-President and Chief Financial Officer of Dey, Inc, and am authorized by Dey, L.P. to verify the foregoing. I have read the foregoing **DEY, INC. AND DEY, L.P.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS DEY, INC., DEY, L.P., and DEY L.P., INC.** and verify that the information contained in response to the foregoing interrogatories is true and correct to my best knowledge, information and belief.

_____
Pamela R. Marrs
Senior Vice-President and Chief Financial Officer
of Dey, Inc.
2751 Napa Valley Corporate Drive
Napa, California 94558

~~Dated: June ___, 2008~~   See Attached

~~Sworn to and Subscribed Before me this~~
~~____ day of June 2008~~

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____         _____
Signature of Document Signer No. 1              Signature of Document Signer No. 2 (if any)

State of California

County of _____NAPA_____

Subscribed and sworn to (or affirmed) before me on this

_19th_ day of _June_ _____, 20 _08_, by
Date          Month                      Year

(1) _____Pamela R. Marrs_____,
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2) _____NONE_____,
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____Nancy Kendall_____
Signature of Notary Public

**NANCY KENDALL**
COMM. #1721827
Notary Public-California
NAPA COUNTY
My Comm. Exp. Feb 26, 2011

Place Notary Seal Above

───────── **OPTIONAL** ─────────

*Though the information below is not required by law it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document*

**Further Description of Any Attached Document**

Title or Type of Document _Verification_

Document Date _____ Number of Pages: _____

Signer(s) Other Than Named Above: _None_

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a copy of the above "Dey, Inc., Dey L.P., and Dey L.P., Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories to Defendants Dey, Inc., Dey L.P., and Dey, L.P., Inc." to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: June 23, 2008                               /s/ Antonia F. Giuliana