UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; *State of California ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Abbott Laboratories, Inc., et al.*, Civil Action No. 1:03-cv-11226-PBS | MDL No. 1456 <br> Master File No. 01-CV-12257-PBS <br> Subcategory Case. No. 06-11337 <br><br> Hon. Patti B. Saris |

### DEY DEFENDANTS' OPPOSITION TO THE UNITED STATES' MOTION FOR AN ORDER TO PRODUCE MICHAEL T. RICKS FOR RULE 30(a)(2)(B) DEPOSITION AND CALIFORNIA'S CROSS-MOTION AND IN SUPPORT OF DEY'S CROSS-MOTION FOR A PROTECTIVE ORDER

### PRELIMINARY STATEMENT

Defendants Dey, Inc., Dey, L.P., and Dey L.P., Inc. (collectively, "Dey"), respectfully submit this opposition to the United States' Motion for an Order to Produce Michael T. Ricks for Rule 30(a)(2)(B) Deposition, in opposition to the State of California's Cross Motion for an Order to Produce Michael T. Ricks for Rule 30(a)(2)(B) Deposition, and in support of Dey's cross-motion for a protective order. This Court should deny the Government's Motion to permit the deposition of an incarcerated prisoner, Michael T. Ricks, Sr. ("Ricks") and California's Cross-Motion and grant Dey's request for a protective order because the deposition would be cumulative and duplicative of other discovery and because the limited benefits of such testimony do not outweigh its burden or its prejudice. Alternatively, the Court should order the production of Ricks' prison records and order a medical examination of Ricks' capacity to provide competent testimony prior to deciding whether to permit any deposition to proceed.

1

**SUMMARY OF THE ARGUMENT**

On October 23, 2008, Plaintiff the United States of America ("United States" or "Government") filed its Motion for an Order to Produce Michael T. Ricks for Rule 30(a)(2)(B) Deposition (the "Motion"). *See* Dkt. 5642. On November 5, 2008, the State of California filed a Cross-Motion for an Order to Produce Michael T. Ricks for Rule 30(a)(2)(B) Deposition which incorporated the Government's Motion by reference. *See* Dkt. 5666. The Government and California's request for leave to conduct a deposition of Ricks, who is currently incarcerated in the Kit Carson Correctional facility in Burlington, Colorado, should be denied. The Government claims it seeks to depose Ricks regarding "[1] his role as a district sales manager at Dey; [2] the training he received while at Dey; [3] the strategies and practices he used in marketing Dey's drugs; [4] his use of the "Reimbursement Comparison Worksheet" and other similar documents in promoting Dey's products; [5] whether he made any sales as a result of his use of the worksheet; and [6] the extent to which higher-level managers knew about and encouraged his sales practices." Dkt. 5643 at 3.

Dey has employed several hundred sales representatives during the time period relevant to the amended complaint filed by the United States (from 1992 to the present), and the United States has had access to the names of these sales representatives for years. Less than two months before the close of fact discovery, the Government has made a motion to depose this former low-level sales representative who was last employed by Dey in April of 1996, and who had only been employed for approximately two years. While at Dey, Ricks' sales region covered only four states, Arizona, Colorado, New Mexico and Utah, which had some of the lowest levels of Medicaid utilization of Dey products at that time. Out of the numerous potential witnesses available for deposition at any time during the fact discovery period, including Ricks' supervisor

2

and other sales representatives who covered greater territories and worked for a longer time, the Government has chosen to seek the deposition of a witness who is serving a lengthy prison term for particularly outrageous crimes unrelated to his work at Dey and which crimes seriously call the potential deponent's ability to testify truthfully into question.

As set forth hereafter, in or around 2003 – seven years after Ricks left Dey – Ricks created or obtained false and fraudulent credentials in order to pass himself off as, among other things, a chiropractor, a physician, and a massage therapist.  He then proceeded to sexually assault female clients who he tricked into believing his various ruses.  Ricks was arrested in Denver in 2004 for assaulting as many as ten women and, after being released on bail in 2004, he acquired a fake police badge and began to impersonate a Denver vice officer to extract sexual favors from prostitutes.  Ricks was arrested again and in 2005, pleaded guilty to his crimes, and was sentenced to 20 years to life.  At his sentencing, far from showing any comprehension of his crimes, he asked for probation in order to work with children.

This Court should deny the Government's Motion and California's Cross Motion and grant Dey's request for a protective order because the requested deposition fails to meet the test under Rules 26(b)(2) and 30(a)(2)(B).  Any relevant information Ricks may possess can be obtained from his supervisor, other sales representatives, or from produced documents.  The deposition therefore is cumulative and duplicative.  In addition, as set forth hereafter, there are serious questions as to the reliability of Ricks' testimony given his subsequent criminal behavior and his reported lack of insight at his sentencing, which, at a minimum, would require review of his prison records and a psychiatric examination to determine his competency to give reliable testimony.

## STATEMENT OF FACTS

A.   **RICKS' DEPOSITION HAS NOT BEEN SOUGHT IN THE ELEVEN YEARS THAT DEY HAS BEEN LITIGATING THESE CASES**

The Government has been investigating Dey since at least 1997, when it directed a subpoena to Dey and when relators added Dey to this action.  Dey has produced millions of documents to the United States, which included a number of sales call reports authored by Ricks and numerous other sales representatives.  In addition, Dey has been named as a defendant in approximately seventy-five lawsuits filed by these Plaintiffs, other states, and the counties of the State of New York with respect to Dey's conduct at issue in this litigation.  Plaintiffs in these cases have conducted numerous depositions of Dey employees to date.  Until now, however, no other party in any pricing cases against Dey has ever sought to depose Ricks.

B.   **THE GOVERNMENT HAS OBTAINED AND WILL CONTINUE TO OBTAIN EQUIVALENT EVIDENCE FROM MORE ACCESSIBLE AND BETTER SOURCES**

In their Motion, the Government states that it seeks to depose Ricks regarding the training he received at Dey and his sales tactics and strategies, Dey's management's approval of those practices, and his use of a document entitled "Reimbursement Comparison Worksheet."  However, nothing about Ricks' employment at Dey suggests that he could provide any relevant testimony that could not be obtained elsewhere.  The majority, if not all, of these topics can or have already been answered through 30(b)(6) testimony, the testimony of other Dey witnesses, and through the voluminous documents produced by Dey.

Dey employed Ricks as a sales representative for less that two years from 1994 to 1996.  *See* Reid Decl. at Exs. A, B.  A "district sales manager" at Dey was the lowest level of sales representative.  As seen in an organizational chart produced by Dey, during Ricks' employment period, Dey divided its sales force into three regions overseen by regional sales

4

managers. *See* DEY-LABS-0281930, attached to Reid Decl. as Ex. C. The regions were further subdivided into twenty sales districts, each overseen by district sales managers. *Id*. As one of approximately twenty outside sales representatives at the time, Ricks' duties at Dey included calling on customers in Arizona, Colorado, New Mexico, and Utah. *Id*. As a sales representative, he had no authority to negotiate prices or enter into contracts. He simply called on accounts in his three-state area. His call records for the short period he was at Dey are similar to those of other sales representatives. These documents speak for themselves, and it is unlikely that any witness, let alone Ricks, will have much recollection of specific sales calls twelve to fourteen years after those calls took place. A typical sales report is attached as Exhibit D to the Reid Decl., DL-TX-0113743.

       Sales representatives who were employed by Dey during the same time period as Ricks can and have testified as to the same subjects. Indeed, one, Roy Barnes, testified in Memphis on October 30, 2008 while another, William Hill, will testify in Charlotte on November 11, 2008. These depositions were noticed by the Government and cross-noticed by California. Interestingly, the Government has chosen not to depose most of Dey's other sales representatives employed at that time nor have they requested any depositions for sales representatives employed after mid-1997.

       Throughout this time, Ricks' supervisor was Rick Upp. Mr. Upp was the district manager for Region III. *See* Reid Decl., Ex. C. Ricks sent his call records to Mr. Upp. Mr. Upp also was the link between corporate headquarters and his sales representatives. Mr. Upp could testify and can better speak to the supposed topics of interest such as training, the role of sales representatives, marketing tactics, and the use of the "Reimbursement Comparison Worksheet."

In addition, Dey has already provided extensive 30(b)(6) testimony regarding these subjects and has produced virtually all of its sales and marketing documents from this time period.

### C. WELL AFTER LEAVING DEY, RICKS COMMITTED HEINOUS CRIMES THAT CALL HIS COMPETENCY AND RELIABILITY INTO QUESTION

Records and news reports show that after he left his employment at Dey, Ricks' life entered a downward spiral that resulted in a 20-years to life prison sentence. After leaving Dey, Ricks moved frequently and eventually he filed for bankruptcy in 2000. By 2003, Ricks was working at a fast-food restaurant in Aurora, Colorado, and was impersonating various professionals, including a chiropractor, a massage therapist, and a physician, in order to sexually assault women. *See* April 5, 2005 Denver Post Article, attached to Reid Decl. as Ex. E. Ricks used fraudulent credentials indicating he had a Ph.D in psychology, a masters degree in clinical psychology, and a certificate in massage therapy to deceive his victims. *Id*. Suspected of assaulting as many as ten women, Ricks was arrested in or around June 2004 and charged with, among other things, felony sexual assault. *Id*.

Ricks was released on bail, and he thereafter continued to impersonate figures of authority. Incredibly, after his release he used a fake Denver vice office badge to obtain sexual favors through the threat of arrest. *Id*. Ricks was arrested again in 2005 and, after pleading guilty, was sentenced to 20 years to life for the crimes that included soliciting a child prostitute and child prostitution. *See* September 9, 2005 Denver Post article, attached to Reid Decl. as Ex. F. At his sentencing hearing, Ricks sought probation so he could get out into society and work with children. *Id*.

6

## ARGUMENT

**A.    LEAVE TO DEPOSE RICKS SHOULD BE DENIED UNDER RULE 26(B)(2)(C) BECAUSE THE BURDEN OUTWEIGHS THE BENEFIT**

The Government has sought leave to depose Ricks under Federal Rule 30(a)(2)(B), which incorporates Rule 26(b)(2)(C). Rule 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery . . . if it determines that . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Here, the Court should deny leave to depose Ricks because the burdens associated with the deposition far outweigh any potential benefit.

The parties stand to gain little benefit through the deposition of Ricks, because his testimony, even if reliable, will not resolve anything in this case. Ricks had little responsibility during his short tenure at Dey. Ricks was not a manager at all, let alone a senior manager or officer of Dey. Ricks worked at Dey for only two years of the seventeen year period for which the United States and California seek damages, and during that time worked independently. Ricks was responsible for four states, Arizona, Colorado and New Mexico and Utah, and these states have among the lowest Medicaid utilization rates for Dey's drugs in the country. While Ricks was assigned Utah, there is no indication that he made calls in that state. In addition, Ricks did not place sales calls in California. Furthermore, Ricks' testimony as a low-level sales representative will center on his account call reports. The sample call report attached to the Reid Declaration shows how limited the scope of his testimony is likely to be. In this call report, Ricks as his "Recap of Visit" to St. Joseph's Hospital in Phoenix on December 21, 1995, wrote: "Reconfirmed product usage and thanked him for his business. Asked for continued support of Dey products. Resold the benefits of Dey products and explained why a lot of hospitals are switching to Dey products." *See* Reid Decl., Ex. D.

In addition to the narrow scope of Ricks' knowledge, the passage of time and his questionable mental state further decrease any benefit to such deposition. Ricks' employment with Dey ended more than twelve years ago and, therefore, he is unlikely to have any detailed memory regarding his work during that time. Furthermore, and perhaps most importantly, given Ricks' more recent record of fraud and deceit, any testimony he provides is likely to be unreliable. Ricks' record shows that he went to great lengths to create fraudulent business entities and degrees and certifications to perpetrate his first scheme of deception and he later used a fraudulent badge to pass himself off as a Denver vice officer. *See* Reid Decl., Ex. F. As further evidence of Ricks' tenuous grasp with reality, at a sentencing hearing, he requested that he be released on parole in order to work with children. *Id*. The senior deputy district attorney overseeing Ricks' case stated that Ricks is a "good liar, a chronic liar." *Id*. It is difficult to imagine that Ricks could provide reliable, truthful testimony about his employment at Dey more than a decade ago.

In contrast to the limited benefit of a deposition of Ricks, the burden is substantial. The burden of allowing the deposition of Ricks to proceed is more than simply the time and costs associated with arranging and attending a deposition in a state prison a month and a half from the close of the discovery period. At a minimum, the Court needs to see the prison records and the results of a medical examination to determine if Ricks is even competent to testify. To do so for such a limited amount of potentially relevant testimony simply makes no sense. This is especially true where the Government has already had the opportunity to conduct such discovery.

The Government argues that the burden of attending the deposition is not "significant in light of the nature and importance of the litigation." Dkt. 5643 at 5. Dey does not

disagree with the importance of this litigation. However, the importance of the litigation as a whole is not a sufficient reason to allow the prejudicial deposition of a likely unreliable former employee who was employed by Dey for two years over a decade ago. Under the Government's logic, the deposition of even the most peripheral witness would be justified in this action.

Asking a low-level employee about the details of such sales calls made over twelve years ago is of limited value as compared against the burden of requiring the Colorado state prison system to produce Ricks with the attendant embarrassment to Dey from unwittingly having employed someone who was later convicted of being a sexual predator. Therefore, this Court should not allow the deposition of Ricks to proceed.

B. **THIS COURT SHOULD DENY THE GOVERNMENT'S MOTION BECAUSE THE GOVERNMENT HAS HAD OTHER OPPORTUNITIES TO OBTAIN THE INFORMATION SOUGHT AND SO THE DEPOSITION WOULD BE UNREASONABLY CUMULATIVE AND DUPLICATIVE**

Pursuant to Rule 26(b)(2), leave to depose a prisoner should be also denied when "the party seeking the deposition has had ample opportunity to obtain the information sought" and where "the deposition would be unreasonably cumulative or duplicative" Fed. R. Civil Proc. 26(b)(2)(i) and 26(b)(2)(ii); *see also Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002) (citing Fed. R. Civil Proc. 26(b)(2)). Depositions of prisoners are permitted when such discovery is necessary, not where a party simply decides not to seek alternative and cumulative means of gathering the same facts.

The Government and California have already obtained the information sought from Ricks from other sources. The Government and California have taken extensive 30(b)(6) deposition discovery on Dey's sales practices, training, and the "Reimbursement Comparison Worksheet," subjects identified in the Government's Memo. As noted above in the Statement of Facts, the Government and California have already deposed one sales representative or district

9

sales manager from this time period, and will soon depose another. Both of those men were employed by Dey during Ricks' tenure at the company. Dey has also produced sales and marketing materials to the United States and California that have direct bearing on the topics sought from Ricks, and, Dey does not challenge the authenticity of Ricks' account call reports.

In addition to the discovery already obtained by the United States and California, information equivalent to anything Ricks could provide regarding training, sales strategies and practices is also still available from supervisors and other sales personnel. Ricks' supervisor could testify, the very individual for whom the call records were primarily prepared. The Government has been investigating Dey for more than a decade and has had Dey's document production in its possession for years. The fact that more depositions of Dey's former field sales representatives have not taken place in this action is not for any lack of opportunity on the part of the Government. It is a tactical decision not to call others because the Government has already had discovery on these points. Ricks' deposition should not be allowed to proceed because it would be unreasonably cumulative and duplicative of information obtained or obtainable from other witnesses.

C. **IF THE COURT IS INCLINED TO GRANT LEAVE TO DEPOSE RICKS, THE COURT SHOULD SET TERMS AND CONDITIONS TO ASSURE THE WITNESS IS COMPETENT AND TO PREVENT PREJUDICE**

Under these circumstances, the Court should grant a protective order prohibiting the Government from taking a deposition of Ricks. Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Here, good cause exists to prevent the deposition of Ricks from going forward because the discovery sought is available elsewhere and in more reliable form, and a protective order would prevent the unavoidable annoyance and embarrassment as well as burdening the parties and the Colorado prison facilities with an order

to depose a prisoner who was only a low-level sales representative for a limited time over twelve years ago, and whose testimony would be of limited value given the passage of time and his former position in the company.

However, if this Court is inclined to allow the deposition of Ricks to go forward, Dey respectfully requests that it issue a protective order to first assure that the witness is competent to testify. Before Ricks is allowed to be deposed, his mental state and competency as a witness should be examined. Ricks' criminal record includes a pattern of elaborate deceptions and sexual deviancy, including continuing deceptions after his initial arrest. His request to be allowed to work with children – made during his sentencing hearing on crimes including child prostitution and soliciting prostitution – indicates that Ricks has no insight and very probably is delusional. Without an examination of his prison records and a psychiatric examination there is no way to know if he is competent to provide testimony.

In the event the Court finds Ricks is competent, then the Court should order that any deposition of Ricks be conducted in such a way as to minimize any prejudice to Dey. Thus, if the deposition is allowed to go forward, which Dey strongly believes it should not, at a minimum it should not be videotaped so that Ricks does not appear on tape in a prison room and in prison-issued clothing. Courts have recognized the inherent prejudice that can result from showing to a jury a videotaped depositions of incarcerated witnesses. *See, e.g., Davis v. Am. Family Mut. Ins. Co.*, 625 N.W.2d 359, *14-*15 (Ct. App. Wis. 2001) (preventing a videotaped deposition of a prisoner from being shown to a jury).

## CONCLUSION

For the foregoing reasons, Dey respectfully requests that the Court deny the United States' Motion for an Order to Produce Michael T. Ricks for Rule 30(a)(2)(B) Deposition and California's Cross-Motion for an Order to Produce Michael T. Ricks for Rule 30(a)(2)(B)

11

Deposition and grant Dey's motion for a protective order precluding the deposition. Alternatively, the Court should grant the protective order to the extent of ordering the production and inspection of Ricks' prison records and a medical examination of Ricks' capacity to provide competent testimony prior to deciding whether to permit any deposition to proceed.

Dated:  November 6, 2008

Respectfully submitted,

/s/ Sarah L. Reid
Paul F. Doyle (BBO # 133460)
William A. Escobar (*pro hac vice*)
Sarah L. Reid (*pro hac vice*)
Neil Merkl (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897

*Counsel for Defendants Dey, Inc., Dey, L.P., Inc. and Dey L.P.*

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on November 6, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

      /s/ Sarah L. Reid  
      Sarah L. Reid