UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | 
| | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, Inc., et al.,* CIVIL ACTION NO. 07-10248-PBS | Magistrate Judge Marianne B. Bowler |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER RELATING TO REQUESTS BY THE ROXANE DEFENDANTS FOR DEPOSITIONS UNDER RULE 30(b)(6)**

The United States of America, through its undersigned counsel, respectfully moves this Court to issue an order pursuant to Federal Rule of Civil Procedure 26(c) prohibiting defendants Boehringer Ingelheim Corporation, Boehringer Ingelheim Pharmaceuticals, Inc., Roxane Laboratories, Inc. and Roxane Laboratories, Inc. n/k/a Boehringer Ingelheim Roxane, Inc. (collectively referred to herein as Roxane) from subjecting CMS Regional Office witnesses to deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) on seventeen (17) topics related to the operations of multiple Centers for Medicare & Medicaid Services (CMS) Regional Offices over an almost two decade time period.  *See* Exhibit A.  The topics, addressed below, seek irrelevant, nonexistent and/or duplicative information, are unreasonably broad and burdensome, and/or seek information that should be obtained by other means.  Fed. R. Civ. P. 26(b)(2)(C).

**I.   BACKGROUND**

    **A.   The United States' Case**

The United States filed suit against Roxane under the False Claims Act (FCA) and the

common law asserting that from at least 1996 through (1) 2004 for the Medicare program and (2) the present for the Medicaid program, Roxane reported false, fraudulent and inflated prices on nine generic drugs (Subject Drugs) to certain pricing compendia. Roxane knew that Medicare and Medicaid relied upon those reported prices to set reimbursement rates for those drugs; meanwhile, Roxane sold the drugs to customers at far lower prices. The United States alleges that Roxane marketed the government-funded "spread" between the reimbursement amounts calculated with the false price and the real price paid by its customers to increase sales of the drugs, thereby increasing Roxane's market share and hence its profits.

### B.  Extensive Discovery Provided by the United States

Both in connection with (1) related cases against Abbott Laboratories, Inc. and Dey Laboratories and (2) Roxane's own discovery requests, the United States has provided Roxane with extensive discovery from the Centers for Medicare & Medicaid Services (CMS), including: agency regulations and policies; broad document production showing CMS's positions and communications; CMS' responses to Office of Inspector General (OIG) reports; CMS' verified responses to interrogatories; Rule 30(b)(1) deposition testimony of numerous witnesses for over a year, including three former CMS administrators; Rule 30(b)(6) deposition testimony on various topics (including almost all of the topics sought in Roxane's request); and Rule 30(b)(6) testimony of Medicare carriers.[1] The United States has provided extensive discovery to Roxane and now seeks protection from the Court in connection with Roxane's duplicative, burdensome, and improper 30(b)(6) requests.

---

[1] The United States also has provided Roxane with extensive discovery from OIG, including a voluminous document production of internal work papers, depositions and verified interrogatory responses, the latter in response to discovery by Abbott.

### C. Roxane's Request for 30(b)(6) Depositions

On August 13, 2008, Roxane notified the United States that it was seeking a witness or witnesses from CMS' Regional Offices to testify pursuant to Rule 30(b)(6) regarding 17 broad topics, covering a 17 year span. To add to the complexity of this request, there are 10 separate Regional Offices which have undergone routine staff turnover over that 17 year time frame. The letter requesting the deposition is attached hereto as Exhibit A.

The topics relate generally to the following topics: document collection and preservation (topics 1-4), CMS policy regarding drug reimbursement (topics 5-12, 14, 17), Regional Office audits of state Medicaid programs (topic 13), and Regional Office communications, audits or analyses of state Medicaid programs (topics 15-16). Following meet and confer efforts – including a detailed letter from the United States identifying numerous misconceptions and problems underlying the request, *see* Exhibit B – the United States has determined that it must seek a protective order on the 30(b)(6) requests.

#### 1. There Has Been Extensive Prior Testimony on Government Document Production and Preservation Efforts.

Topics 1-4 request a Regional Office 30(b)(6) deponent to testify about document collection and preservation efforts, a topic that has been the subject of multiple extensive 30(b)(6) depositions in the AWP litigations. This request is entirely duplicative of previous 30(b)(6) testimony about the government's document production and preservation efforts. The government has already produced Rule 30(b)(6) witnesses, including but not limited to two witnesses named Joseph Bryant and Vickey Robey, regarding document retention, preservation, collection and production with respect to the MDL. Collection and preservation efforts at the Regional Offices were covered by those prior requests and depositions; Regional Officials are

required to follow the same document retention policies as CMS headquarters. *See* Exhibit C (Exhibit 399 to the Bryant deposition transcript, which identifies offices subject to CMS collection and preservation directives).

Roxane has had access to this discovery. Roxane has provided no basis for an additional 30(b)(6) deposition covering the same topics covered in previous 30(b)(6) document collection and preservation testimony by government witnesses.

### 2. Regional Offices Do Not Create Medicaid Payment Policy

Topics 5-12, 14 and 17 seek 30(b)(6) testimony from a Regional Office witness regarding Regional Office Medicaid drug reimbursement policies. Roxane's 30(b)(6) request rests on an erroneous premise. As has been explained to Roxane's counsel repeatedly, CMS Regional Offices do not create their own "policies." Policy is developed at CMS Central Office. Further, there has already been extensive 30(b)(6) testimony by CMS official Larry Reed regarding CMS policy for Medicaid drug payments and the approval state plan amendments. In addition, there has been extensive 30(b)(1) testimony on Medicaid payment policy from CMS witnesses Sue Gaston, Deirdre Duzor, and Dennis Smith. Roxane effectively seeks 30(b)(6) testimony on something that does not exist (Regional Office "policy") on topics (CMS Medicaid drug reimbursement policies) that have been covered in prior Rule 30(b)(6) and Rule 30(b)(1) depositions in which Roxane participated.

At least two of the topics, Topics 5 and 14, request testimony regarding the "criteria" the ten Regional Offices use to approve or disapprove of state plans or plan amendments with respect to drug reimbursement. Any criteria is set forth in the applicable federal regulations. Requiring a 30(b)(6) Regional Office witness to regurgitate what is already set forth in those

regulations – from the perspective of 10 Regional Offices over a 17 year period – serves no purpose other than to subject the government to unnecessary burden.

With respect to regional office "procedures" and 17 years of communications regarding state plans (topics 5, 12, 17) between the 10 Regional Offices, 50 state Medicaid programs and/or CMS' Central Office, the most efficient source of this information is the document production itself, which shows the regional offices' communications with the states and CMS, and evidences the procedures they were following. It would be unduly burdensome to expect an individual witness to effectively memorize the contents of all such communications among 60 entities (Regional Offices, state Medicaid agencies and the Central Office) over the course of 17 years and simply restate them on the record.

Several of the topics (topics 6-11) ask for a Regional Office witness to testify on behalf of the agency regarding the meaning of various pricing terms, such as AWP, WAC, EAC, U&C charge and AMP. Any CMS positions on those terms – to the extent one existed – would come from CMS' Central Office, not the Regional Offices. The Regional Offices simply were not responsible for official CMS definitions or interpretations – again, to the extent any existed. Further, there has also been extensive Rule 30(b)(1) and 30(b)(6) testimony from CMS witnesses such as Thomas Gustafson and Don Thompson regarding terms and concepts such as AWP, WAC, EAC, AMP and usual and customary charges.

Topic 11 asks for a witness to testify about Regional Office access to and review of AMP data. The government possesses no evidence of such access by the 10 Regional Offices; there is no basis for subjecting a government witness to deposition for an event that did not occur.

In sum, the "policy/interpretation/criteria" 30(b)(6) topics requested of Regional Office

witness(es) have no basis in fact (*e.g.*, that Regional Offices created and implemented their own Medicaid drug payment policies) and/or were covered extensively in prior 30(b)(6) depositions conducted by Roxane and their fellow defendants.

> **3.     There Are No Evaluations, Audits, Analyses or Reviews of State Medicaid Programs Regarding Prescription Drug Coverage Beyond Reviews Memorialized In Previously Produced Documentary Evidence**.

The government cannot locate documents evidencing "evaluations, audits, analyses or reviews" of State Medicaid programs by Regional Offices beyond the analyses done as part of their routine review of state plan amendments. The government has produced the documentary evidence of those routine state plan reviews.  The review of state plan amendments was also a topic about which a CMS 30(b)(6) witness – Larry Reed – has already testified**.**    There is no basis for requiring the government to produce a witness to testify about nonexistent "audits or analyses," and any additional testimony would be duplicative of prior 30(b)(6) testimony.

> **4.     There Are No Regional Office Evaluations of Actual Acquisition Costs**.

Topics 15 and 16 seek testimony regarding evaluations or investigations by or on behalf of the Regional Offices to determine providers' actual acquisition costs. [**This was also the subject of an interrogatory filed by Roxane.  *See* Exhibit D.**] As explained to counsel for Roxane and noted in the government's response to Interrogatory #11 by Roxane, the United States has produced (1) reports issued by the Office of Inspector General of the U.S. Department of Human Services (OIG) relating to reimbursement of drugs under the Medicare and Medicaid programs, as well as the underlying work papers, (2) two reports by Myers & Stauffer LLC, and (3) reports provided by State Medicaid programs in connection with state plan amendments.

Roxane and other defendants have already deposed OIG witnesses exhaustively about the OIG reports. To the best of the government's knowledge, there were no separate efforts by Regional Offices to determine providers' actual acquisition costs or to assess the accuracy of manufacturers' reported AWPs.

Roxane and the other defendants will also be deposing Myers & Stauffer about their reports in the near term. Roxane has had ample opportunity to depose State Medicaid program officials about reports they provided to the Regional Offices. There is no basis for 30(b)(6) Regional Office testimony about reports generated by other entities that have or will be the subject of other 30(b)(6) depositions conducted by Roxane.

## II.   ARGUMENT

Federal Rule of Civil Procedure 30(b)(6) provides as follows:

> Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

The purpose of Rule 30(b)(6) depositions, as explained by the Advisory Committee, is:

> It will reduce the difficulties now encountered in determining, prior to the taking of the deposition, whether a particular employee or agent is a 'managing agent.' . . . It will curb the "bandying" by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it. . . . The provision should also assist organizations which find that an unnecessarily large number of their officers and agents are being deposed by a party uncertain of who in the organization has knowledge.

Fed. R. Civ. P. Rule 30(b)(6) advisory committee's note (internal citations omitted).

For the reasons explained below, the 17 topics identified in Roxane's August 13 30(b)(6) deposition request are objectionable and improper. There are multiple and independent grounds upon which the Court should issue an order protecting the United States from designating a witness. Roxane's Rule 30(b)(6) topics seek deposition testimony that is duplicative, nonexistent, irrelevant and/or could not lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

**A.     Roxane's Rule 30(b)(6) Topics Seek Irrelevant/Non-Existent Information**

A party is only entitled to discover information that is "relevant to the subject matter" of the case or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Roxane's 30(b)(6) deposition requests do not seek the discovery of admissible evidence; they call on CMS Regional Office witnesses to give Rule 30(b)(6) deposition testimony on non-existent facts and subject matters.

For example, a large majority of Roxane's 30(b)(6) requests ask for Regional Office "policies" or "interpretations." *See, e.g.*, Exhibit A, Topics 5 (requesting testimony on Regional Office policies on approval of state plan amendments) and 7 (requesting testimony on Regional Office "understanding" or AWP). Regional Offices do not make policies or have their own official interpretations of laws or regulations. Regional Offices should not be required to provide a witness to testify about non-existent facts. Similarly, Regional Offices do not conduct provider acquisition cost audits (*See* Topics 15 and 16, Exhibit A); the OIG performs this function of CMS.

Defendants might conceivably be allowed to conduct a Rule 30(b)(1) deposition of a

8

Regional Office employee to determine his or her individual knowledge of CMS policies. However, the views or understandings of individuals within Regional Offices do not constitute an agency position, which ostensibly is the purpose of Roxane's Rule 30(b)(6) request. *See United States. v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) (noting that the views of individual agency employees irrelevant to interpretation of a term; "agency interpretations [of regulations] are only relevant if they are reflected in public documents"). Thus, any such evidence would be ultimately irrelevant. *See, Smith v. Dowson,* 158 F.R.D. 138, 141 (D. Minn. 1994) (the district court may issue a protective order barring the irrelevant discovery).

Regardless, the government should not be required to provide 30(b)(6) Regional Office witnesses to testify about non-existent subject matters.

### B.   Roxane's Rule 30(b)(6) Topics Seek Duplicative Testimony and Are Burdensome

Roxane's discovery requests seek duplicative discovery or seek information that does not exist. Duplication of completed discovery is improper and burdensome. *See Ameristar Jet Charter, Inc., v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001) (affirming district court's decision to quash subpoena for second Rule 30(b)(6) deposition covering the same subject matter).

Topics 1-4 cover document production and preservation, topics that have been the subject of extensive, previous 30(b)(6) depositions. To the extent Roxane is seeking government 30(b)(6) testimony about Medicaid payment policies – *e.g.*, Exhibit A, topic 5 – they are properly directed to CMS itself, not its Regional Offices. However, the United States has previously produced a CMS 30(b)(6) witness, Larry Reed, who has testified exhaustively about CMS' Medicaid payment policies and the review or approval of state plans or plan amendments.

Don Thompson testified on behalf of CMS and was questioned about the agency's position – or lack thereof – on various pricing terms or concepts. *See*, Exhibit A, topics 6-10. Similarly, OIG witnesses – Robert Vito and five other witnesses – testified about reviews and audits of acquisition costs and reimbursement rates. *Id*., Topics 15-16. Roxane was a full participant in those depositions. Preparing a Regional Office 30(b)(6) witness to testify about something that does not exist (Regional Office "policy") or to testify on topics previously covered by other government 30(b)(6) witnesses (government/OIG audit or reviews of provider acquisition cost) is unduly burdensome, and the First Circuit has noted that the prohibition of such duplicative discovery is an appropriate exercise of this Court's discretion. *Ameristar Jet*, 244 F.3d at 193.

To the extent Roxane believes these depositions did not adequately cover specific Regional Offices communications with CMS headquarters or states, requiring each CMS Regional Office to provide a 30(b)(6) witness to testify about those communications would be burdensome and wasteful. Each witness would have to memorize 17 years' worth of communications between multiple entities. Further, any existing communications have been produced; the witness would simply be forced to regurgitate what is clearly reflected in the documentary record. Subjecting multiple witnesses to deposition on matters reflected in documents is wasteful, burdensome and abusive.

**III.     CONCLUSION**

For the reasons stated above, the United States respectfully requests that the Court enter an order of protection with respect to Roxane's August 13, 2008 Rule 30(b)(6) request.

        Respectfully submitted,

        GREGORY G. KATSAS
        ACTING ASSISTANT ATTORNEY
        GENERAL

        MICHAEL J. SULLIVAN
        UNITED STATES ATTORNEY

By:     /s/ James J. Fauci
        GEORGE B. HENDERSON, II
        BARBARA HEALY SMITH
        JAMES J. FAUCI
        Assistant U.S. Attorneys
        United States Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3272

        JOYCE R. BRANDA
        DANIEL R. ANDERSON
        LAURIE A. OBEREMBT
        Civil Division
        Commercial Litigation Branch
        P. O. Box 261
        Ben Franklin Station
        Washington, D.C.  20044
        (202) 514-3345

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above "MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR A PROTECTIVE ORDER REGARDING ROXANE'S RULE 30(b)(6) NOTICE" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: November 13, 2008

s/ James J. Fauci
JAMES J. FAUCI
Assistant U.S. Attorneys