# Exhibit B



**U.S. Department of Justice**

Civil Division, Fraud Section

---

601 D Street, NW
Ninth Floor
Washington, D.C. 20004

*Telephone: (202) 514-3345*
*Telecopier: (202) 305-4117*

<u>*Via Electronic Mail*</u>

Eric Gortner, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601-6636

Re:   *United States ex rel. Ven-a-Care of the Florida Keys, Inc. v. Roxane Laboratories, Inc.*
      <u>MDL No. 1456/Civil Action No. 01-12257-PBS</u>

Dear Eric:

      I am writing in response to your letter of August 13, 2008, regarding proposed Rule 30(b)(6) deposition topics, and our subsequent discussion of those topics. After extensive internal discussions with the agency, we find that we must object to the majority of your proposed topics as explained below.

**Topics #1- 4:** We have already produced Rule 30(b)(6) witnesses regarding document retention, preservation, collection and production with respect to the MDL. The regional offices were included in those efforts, and are required to follow the same document retention policies as CMS headquarters. I refer you to the testimony of Joseph Bryant and Exhibit 399 to his deposition transcript, which I've also attached here, as well as the testimony of Vicky Robey.

**Topics #5-12, 17:** As I explained during our call, the CMS Regional Offices do not create "policy," and there has already been extensive testimony by Larry Reed and Sue Gaston regarding CMS policy for approving state plan amendments. As to the ten regional offices' "criteria," the criteria is set forth in the applicable federal regulations. With respect to regional office "procedures" regarding state plans, the most efficient source of this information is the document production itself, which shows the regional offices' communications with the states and CMS, and evidences the procedures they were following. It would be unduly burdensome to expect an individual witness to effectively memorize the contents of such communications over the course of several years. There has also been extensive Rule 30(b)(6) testimony by the United States regarding the meaning of such terms as AWP, WAC, EAC, AMP and usual and customary as used in the Medicaid program. The regional offices again were not responsible for defining such terms. With respect to the regional offices' access to AMP data, we have seen no references in the documents to such access. Please advise whether you have any basis to believe that regional offices obtained AMP data as part of their review of state plan amendments.

-2-

**Topic #13**: We have not located documents evidencing "evaluations, audits, analyses or reviews" of State Medicaid programs by Regional Offices, beyond the analyses done as part of their review of state plan amendments. Please advise whether you have any basis to believe that such actions were taken. In the absence of such evidence, we do not believe there is any basis on which to prepare a witness on this topic.

**Topic #14**: As stated above, the CMS Regional Offices do not create "policy." In addition, the United States responded to Interrogatory #4 by Roxane on this same topic. In our response, we noted that the United States has produced documents to Roxane relating to: the federal regulations concerning Medicaid drug reimbursement; guidance to the states regarding the regulations, state plans, and findings and assurances; related correspondence and emails; and examples of Form CMS-64 submitted by the States to CMS (provided with Plaintiffs' First Supplement to Initial Disclosures to Defendants Pursuant to Fed. R. Civ. P. 26(a)(1)). As with many of the other topics here, it would be unduly burdensome to expect an individual witness to effectively memorize the contents of such communications over the course of several years.

**Topics #15-16**: As we noted in our response to Interrogatory #11 by Roxane, the United States has produced (1) reports issued by the Office of Inspector General of the U.S. Department of Human Services relating to reimbursement of drugs under the Medicare and Medicaid programs, as well as the underlying work papers, (2) two reports by Myers & Stauffer LLC; and (3) reports provided by State Medicaid programs in connection with state plan amendments. We are not aware of separate efforts by regional offices in this regard. Please advise whether you have any basis to believe that such efforts were made. In the absence of such evidence, we do not believe there is any basis on which to prepare a witness on this topic.

Very truly yours,

/s/
Laurie A. Oberembt
Senior Trial Counsel
Commercial Litigation Branch


cc:   AUSA Barbara Healy Smith
      Roslyn Pollack, Esq.
      James Breen, Esq.