**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No.1456 <br><br> Master File No. 01-CV-12257-PBS <br> Subcategory Case No. 06-11337-PBS |
| THIS DOCUMENT RELATES TO: <br> *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al.*, Civil Action No. 07-10248-PBS | Judge Patti B. Saris <br><br> Magistrate Judge Marianne B. Bowler |

**ROXANE DEFENDANTS' OPPOSITION TO UNITED STATES'
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

One year after assuring this Court that it would not seek to add claims to its AWP complaints unless based on "genuinely new evidence,"[1] and less than two months before the close of discovery, the Government belatedly seeks leave to add claims for three national drug codes ("NDCs") that it has been well aware of for more than *seven years*.[2] Strikingly, the Government presents no showing of newly discovered evidence to support this amendment, despite this Court's explicit directive after the Government similarly sought a last-minute amendment in the Abbott case. Rather than address these circumstances, the Government attempts to ignore them by mischaracterizing its proposed amendment as a mere formality. But the proposed amendment is much more than that: the NDCs the Government seeks to add pertain to a privately labeled line of ipratropium bromide that a third-party group purchasing

---

[1] *See* MDL No. 1456, Civil Action No. 01-12257-PBS, November 5, 2007 Hearing Transcript re Dkt. No. 4469 at 30:19-31:4, 31:14-17 (attached as Exhibit A).

[2] *See* July 5, 2001 Klingbeil production letter to local counsel; examples of documents produced to the Government in July 2001 (bearing bates stamps ROXMA 036631, 036538-036539, 036541-036542, 036544, 036633, 044639-044645) (attached as Exhibit B)

organization ("GPO"), Novation LLC, contracted for and marketed to its own member-hospitals. Thus, the Government's amendment necessarily invokes the conduct of a third party that is absent from this litigation, and will entail costly and time-consuming discovery at the eleventh hour.  This should not be allowed.  The Government had more than ample time to add these Novation products to its complaint, and was explicitly warned by this Court not to attempt another belated amendment.  Because the Government makes no showing to justify this last-minute addition, the Court should deny the Government's motion.

## BACKGROUND

### A. Roxane's Agreement with Novation and the Genesis of NovaPlus Ipratropium Bromide

In 1996, Roxane began manufacturing and marketing a generic version of ipratropium bromide inhalation solution, which is used to treat symptoms associated with chronic respiratory conditions.  Roxane's launch coincided with the announcement of competitor ipratropium bromide generics by Dey Laboratories, Inc., and other manufacturers, and Roxane began to market its drug to a wide array of customers, including wholesalers, retailers, and home-health care agencies.  Pricing information listed in third-party compendia for Roxane's generic ipratropium bromide corresponded with the NDCs 00054-8402-11, 00054-8402-13, and 00054-8402-21.

In 1999, Novation entered into contract negotiations with Roxane regarding generic ipratropium bromide.[3]  Novation, a contracting-services GPO, secures lower costs for pharmaceuticals and medical equipment for its member organizations from approximately 600 suppliers.[4]  Roxane entered into an agreement with Novation whereby Novation would market

---

[3]   Transcript of Deposition of Thomas Via, pgs. 212-15 (attached as Exhibit C).

[4]   *See* http://www.novationco.com/about/fact_sheet.pdf, last visited Oct. 30, 2008.

and promote ipratropium bromide to its members, primarily hospitals, as part of its "NovaPlus" line of products—a private label offered by Novation to provide "greater value" to its member organizations.[5]  In exchange, Roxane paid a marketing fee to Novation.  Pursuant to the agreement, the NovaPlus ipratropium bromide was sold to Novation's clients at a price set by their contracts with Novation, and Novation implemented its own promotional programs for the NovaPlus line.  The NovaPlus ipratropium bromide solutions were assigned Roxane NDCs that were different from Roxane's ipratropium bromide.  The NovaPlus ipratropium bromide NDCs were:  00054-8404-11, 00054-8404-13, and 00054-8404-21.  Novation sold NovaPlus ipratropium bromide until early 2004.

**B.     Plaintiffs' Long-Standing Knowledge of the NovaPlus Ipratropium Bromide NDCs**

Ven-A-Care initiated this action against Roxane in April 2000.  Around the same time, the Department of Justice served a subpoena on Roxane related to its investigation of Ven-A-Care's allegations.  In response, Roxane produced a large volume of documents to the Government in July 2001.  Included in that production were 84 documents that specifically referenced NovaPlus ipratropium bromide and listed the very NDCs (00054-8404-11, 00054-8404-13, and 00054-8404-21) that the Government now seeks to add to its complaint.[6]  The production also contained numerous other documents that referred to ipratropium bromide being marketed under the NovaPlus label.

Around the same time, Ven-A-Care also filed numerous other *qui tam* complaints against Roxane in various states.  After conducting discovery regarding Roxane's products, Ven-A-Care

---

[5]   *See id.*; Via deposition transcript (Exhibit C); Novation Member List (attached as Exhibit D); http://www.novationco.com/suppliers/novaplus.asp, last visited Oct. 30, 2008.

[6]   *See, e.g.*, Exhibit B (Bates stamp ROXMA 036631, 036538-036539, 036541-036542, 036544, 036633, 044639-044645).

filed its third amended *qui tam* complaint in this case in February 2005.  Among the NDCs listed as subject drugs in that complaint were those for the NovaPlus ipratropium bromide solutions—again, the *same* NDCs that the Government now seeks to add to its complaint.[7]

After waiting nearly seven years before unsealing Ven-A-Care's *qui tam* complaint against Roxane, the Government finally filed its complaint-in-intervention almost two years ago in January 2007.  The Government included Roxane's ipratropium bromide in its complaint, but declined to intervene in the claims asserted as to the NovaPlus NDCs that were listed in Ven-A-Care's third amended complaint.  Subsequent to the Government's complaint-in-intervention, Ven-A-Care superseded its own complaint by adopting the Government's complaint in its entirety—and thus Ven-A-Care also dropped the NovaPlus NDCs from its complaint.

In early January 2008, in response to discovery requests in this case, Roxane produced hundreds of pages of documents directly related to the NovaPlus NDCs, including the same e-mail containing the NovaPlus NDCs that the Government has attached as Exhibit 2 to its motion to amend.[8]  Additionally, in early April 2008, Roxane produced a DVD to the Government containing transcripts from the depositions of Roxane employees taken in other AWP cases.  Within that production was the deposition of Thomas Via, taken on October 18, 2005 in an action against Roxane by the State of Connecticut.[9]  That deposition contains Mr. Via's testimony regarding Roxane's sale of ipratropium bromide under Novation's private NovaPlus label.[10]

---

[7] *See* Exhibit 2 to Ven-A-Care's Third Amended Complaint (attached as Exhibit E).

[8] *See* January 10, 2008 Gortner letter to DOJ; DVD Label (attached as Exhibit F).

[9] *See* April 9, 2008 Heck Letter (attached as Exhibit G).

[10] Transcript of Deposition of Thomas Via, pgs. 212-15 (attached as Exhibit C).

### C.   The Government's Similar Attempt to Amend its Complaint in Abbott's Case

Over a year ago, the Government attempted to amend its complaint against Defendant Abbott to add claims based on Acyclovir, a drug that first appeared in the Relator's complaints against Abbott ten years earlier, but was not included in the United States' original complaint-in-intervention.  To complicate matters, the Relator had adopted the United States' complaint as its own, thereby omitting the references to Acyclovir.  Also similar to this case, at the time of the Government's proposed amendment, only two months remained until the close of fact discovery.  At a hearing on whether to allow the Government's amendment, this Court specifically admonished the Government for its delay and warned the Government that it would not tolerate similar belated amendments in this case:

> So let me just be clear now.  Whatever I do here, I'll take care, I'll protect Abbott from any unnecessary expenses by flying back and taking a new deposition . . . ***but I'm not going to grant any more motions to amend unless it's genuinely new evidence—not 'We didn't get around to taking the deposition'—genuine.***  These cases have to end.  And what about Dey?  What are all the other cases I have, Roxane?  All these other things, are we going to keep having this problem?  What are the others floating out there? (emphasis added)[11]

Later in the hearing, this Court reiterated, "I guarantee you that short of genuinely newly discovered evidence, I will not be allowing any other motions to amend."[12]

---

[11]   *See* Exhibit A at. 30:19-31:4.

[12]   *Id.* at 44:13-15.  Ultimately, this Court partially allowed the Government to amend its complaint against Abbott, finding that Abbott had been on notice of the amendment because of the Government's prior attempt to file an amended complaint without leave five months earlier.  *See* MDL No. 1456, Civil Action No. 06-11337-PBS, Dkt. No. 4281.

**ARGUMENT**

I. **THE GOVERNMENT HAS UNDULY DELAYED IN SEEKING LEAVE TO AMEND ITS COMPLAINT.**

    A. **The Government's Dilatory Conduct and its Failure to Demonstrate Good Cause Warrants Denial.**

The Federal Rules of Civil Procedure require leave of court for a party to amend its pleading more than 20 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(2). Undue delay in seeking to amend "'may be a sufficient basis for denying leave to amend.'" *LaRocca v. Borden, Inc.*, 276 F.3d 22, 32 (1st Cir. 2002) (quoting *Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc.*, 156 F.3d 49, 52 (1st Cir. 1998)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57-58 (1st Cir. 2008) ("It is black-letter law that '[r]egardless of the context, the longer a plaintiff delays, the more likely [a] motion to amend will be denied, as protracted delay with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004))). "Where considerable time has elapsed between the filing of the complaint and the motion to amend, the *movant*, has the burden of showing some valid reason for his neglect and delay." *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (emphasis in original) (internal quotation marks and alterations omitted); *see also Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 71 (1st Cir. 2001); *Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc.*, 233 F.R.D. 62, 66 (D. Mass. 2005).

Almost 22 months have elapsed since the Government unsealed Ven-A-Care's *qui tam* complaint against Roxane—courts in this Circuit have routinely held that shorter time periods require the movant to show cause for its delay. *See, e.g.*, *Palmer v. Champion Mortgage*, 465 F.3d 24, 31 (1st Cir. 2006) (fifteen month delay); *Acosta-Mestre*, 156 F.3d at 52 (fifteen month

6

delay); *Grant*, 55 F.3d at 6 (fourteen month delay); *Stephanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 923 (1st Cir. 1983) (seventeen month delay); *Berwind Prop. Group*, 233 F.R.D. at 66 (fifteen month delay); *see also* 31 U.S.C. § 3730(c)(3) (requiring the Government to show good cause to intervene in a Relator's complaint at a later date).  But despite this clear authority, the Government makes absolutely no effort in its terse motion to show cause for its delay—instead, it disingenuously asserts that it acted "promptly."[13]  That assertion is flatly contradicted by the fact that the Government has been on unambiguous notice of the exact NDCs corresponding to the NovaPlus ipratropium bromide for more than *seven years*, and similarly has been on notice of the Relator's claims based on these NDCs for more than *three and a half years*. Moreover, it has had discovery regarding NovaPlus from this case for over nine months.  In fact, the lone document the Government attaches in support of its claim that it only recently unearthed the NovaPlus NDCs was produced to the Government in early January.[14]  And that document is essentially identical to the documents Roxane produced to the Government in its investigatory phase in 2001.

The clear weight of authority in this Circuit counsels against excusing a prolonged delay where, as here, the party seeking amendment had the requisite knowledge to come forward sooner.  *See, e.g.*, *Palmer*, 465 F.3d at 30-31; *Gray v. St. Martin's Press*, 221 F.3d 243, 253 (1st Cir. 2000); *Quaker State Oil Ref. Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1517-18 (1st Cir. 1989) ("The facts upon which the proposed counterclaim rested were known to defendant all along."); *Berwind Prop. Group*, 233 F.R.D. at 67.

---

[13]  This court should not allow the Government to establish "cause" for the first time in its reply brief.  *See In re Pharm. Average Wholesale Price Litig.*, 498 F. Supp. 2d 389, 400 n.7 (D. Mass. 2007).

[14]  *See* Exhibit F.

**B.     The Government's Conduct Directly Contradicts its Prior Representations to this Court That It Would Not Seek Future Amendments.**

The Government's motion also ignores this Court's prior admonishment about belated amendments and its strict requirement of "genuinely new evidence" to justify any amendments. In the Abbott case, this Court excused the Government's pre-existing knowledge of Acyclovir because the Government needed further discovery to corroborate the Relator's claims based on the drug.[15]  But that is not the case here: the Government has had documents listing these NDCs all along.  Even turning a blind eye to productions made to the Government years before this litigation commenced, the Government has had "corroborating" documentation for more than nine months.  Significantly, whereas in the Abbott case the Government could point to purportedly "new" evidence based upon extensive deposition testimony, here, the Government can make no such claim.  Prior to this motion, the Government had deposed only a single Roxane witness, and the issue of the NovaPlus ipratropium bromide never surfaced.  The Government simply cannot contend that it has uncovered any "new" evidence to speak of.

The Government also cryptically suggests that the fact that Dey recently allowed an addition of NDCs to its complaint somehow means that Roxane should do the same.  The Government, however, does not inform the Court that the NDCs to which Dey acceded involved a mere change in Dey's packaging and certainly did *not* involve an entirely separate third party like Novation, that purchased, marketed, and sold Roxane's ipratropium bromide under a different label to a different class of customers.  As discussed directly below, this distinction is not only significant, but will cause undue prejudice to Roxane if the Government's motion is allowed.

---

[15]  MDL No. 1456, Civil Action No. 06-11337-PBS, Dkt. No. 5143.

8

## II. ALLOWING THE GOVERNMENT'S MOTION AT THIS LATE JUNCTURE WOULD BE UNDULY PREJUDICIAL TO ROXANE AS IT WOULD REQUIRE EXTENSIVE ADDITIONAL DISCOVERY OF A THIRD PARTY.

Courts in this Circuit routinely deny a party leave to amend where the motion comes near the close of discovery. *See Acosta-Mestre*, 156 F.3d at 52 (denying leave to amend one month before the close of discovery); *Quaker State Oil Ref. Corp.*, 884 F.2d at 1518 (denying leave to amend two months before the close of discovery). Amendments that require additional cost late in the pre-trial process are "particularly disfavored." *See Steir*, 383 F.3d at 12; *see also Acosta-Mestre*, 156 F.3d at 52-53; *Serrano Medina v. United States*, 709 F.2d 104, 106 (1st Cir. 1983). Less than six weeks remain until this Court's deadline for the close of fact discovery. The parties already have 22 depositions scheduled for this six-week period (that includes a major holiday), and at least seven other depositions have been postponed or remain to be scheduled. To introduce additional depositions or document productions regarding the NovaPlus drugs into an already jammed discovery schedule would not only require significant costs, but would likely jeopardize the parties' ability to complete discovery within existing deadlines.

The Government dismissively asserts in its memorandum that the proposed amendment "will not significantly add to the defendants' discovery obligations, as the only additional discovery likely to be necessary is transactional data for the NovaPlus products." The Government is simply wrong. The gravamen of the Government's complaint is that Roxane allegedly reported inflated AWPs and WACs to First DataBank and other pricing compendia and then supposedly "marketed the spread" between the Medicare and Medicaid reimbursements based on these figures and the price that Roxane charged for the drugs. But with respect to the NovaPlus ipratropium bromide, Roxane was not the entity primarily responsible for marketing the drug: *Novation* promoted and marketed the drugs to its clients as part of its own private-label product line. Roxane paid Novation a marketing fee to fulfill this role so that Roxane could

benefit from the goodwill of Novation's pre-established client-base.  Thus, proper discovery on the Government's proposed amendment would actually require Roxane and the Government to subpoena and depose Novation employees regarding Novation's marketing of NovaPlus.

Moreover, the Government's proposed amendment would increase discovery burdens in other areas as well.  For instance, due to the late addition of these NDCs, the parties would have to re-depose multiple Medicare carriers in order to determine the potential effect (if any) that the NovaPlus NDCs had on Medicare payments for ipratropium bromide.  Further, the addition of these NDCs necessarily invokes additional discovery because Novation sold its privately labeled ipratropium bromide to a unique and different class of trade than the class of trade to which Roxane sold its ipratropium bromide products.  Specifically, the great majority of Novation GPO members are hospitals and other institutional clients.  This stands in stark contrast to the retail pharmacy or home-health classes of trade, which are the principal markets for Roxane's ipratropium bromide.  Indeed, in its reports on Medicare and Medicaid drug pricing, the Office of the Inspector General has recognized the significant variance in discounts offered to different classes of trade.  Moreover, the impact of these different products and classes of trade will require additional expert work.  Thus, contrary to the Government's bald assertions, allowing these NDCs to be added will require much more than a supplemental production of transactional data to the Government.  Simply put, it is patently unfair to impose these obligations on Roxane at this late stage of the litigation.

## **CONCLUSION**

The Government's attempt to amend its complaint to add claims based on the NovaPlus NDCs, which it has known about for seven years is not based on "genuinely new evidence" and is directly contrary to this Court's prior instructions.  The motion, filed 22 months after its initial complaint and less than two months before the close of discovery, would require extensive

further discovery, and is manifestly prejudicial to Roxane. This Court should accordingly deny the Government leave to amend.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1, the Roxane Defendants respectfully request oral argument on this motion.

Date:   November 13, 2008                Respectfully submitted,


                                         /s/ Eric T. Gortner
                                        Helen E. Witt, P.C.
                                        Anne M. Sidrys, P.C.
                                        Eric T. Gortner
                                        Jared T. Heck
                                        KIRKLAND & ELLIS LLP
                                        200 East Randolph Drive
                                        Chicago, IL 60601
                                        Telephone: (312) 861-2000
                                        Facsimile: (312) 861-2200
                                        egortner@kirkland.com

                                        *On behalf of Defendants Boehringer Ingelheim
                                        Corp., Boehringer Ingelheim Pharmaceuticals,
                                        Inc., Boehringer Ingelheim Roxane, Inc., and
                                        Roxane Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

        I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on November 13, 2008, a copy to LexisNexis File and Serve for posting and notification to all parties.

                                                  /s/ Eric T. Gortner
                                                   Eric T. Gortner