# Exhibit 2

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## SETTLEMENT AGREEMENT AND RELEASE OF THE GLAXOSMITHKLINE DEFENDANTS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

1.  Class Definition .......................................................................................6

2.  Definitions.................................................................................................7

3.  Settlement Consideration .......................................................................20

    (a)  Class Members and ISHP Group Members ...................................20

    (b)  Participating States' Allocation ....................................................20

    (c)  Litigating States' Allocation .........................................................21

    (d)  Satisfaction of Defendants' Obligations ......................................21

4.  Allocation Between Consumer Class Members, TPP Class Members and ISHP Group Members ...................................................................................................22

5.  Agreements Concerning Participating State Plaintiffs ..........................23

6.  Agreements Concerning Litigating State Plaintiffs ..............................26

7.  Agreement Concerning ISHP Group .....................................................29

8.  Reasonable Best Efforts to Effectuate This Agreement .......................33

9.  Motion for Preliminary Approval ..........................................................33

10. Entry of Final Judgment.........................................................................33

11. Notice to AWP Payor Classes................................................................33

12. Class Claims Process .............................................................................34

13. Effective Date .........................................................................................36

14. Termination.............................................................................................36

15. Qualified Settlement Fund .....................................................................37

16. Modification of the Settlement Fund and TPP Opt-Out Provisions ................................38

17. Refunds to GSK for TPP Opt-Out/TPP Opt-Out Requirements....................................38

    (a)  Refunds for TPP Opt Outs ............................................................38

    (b)  TPP Opt-Out Requirements ..........................................................39

(c)    Determination of TPP Opt-Out Amounts and GSK Opt-Out Refund, and Dispute Resolution Process ........................................................................................40

18.    Attorneys' Fees ........................................................................................................41

19.    All Class Claims Satisfied by Settlement Fund .......................................................42

20.    Payment of Expenses ..............................................................................................42

21.    Court Approval of Disbursements and Distributions ..............................................42

22.    Disbursements and Distributions from the Settlement Fund ...................................42

23.    Class Releases .........................................................................................................48

24.    ISHP Group Releases ..............................................................................................49

25.    Reservation of Claims .............................................................................................50

26.    Settlement of Additional Matters ............................................................................51

27.    Preservation of Rights .............................................................................................51

28.    Effect of Termination ..............................................................................................52

29.    No Admission ..........................................................................................................53

30.    Class Certification for Settlement Purposes Only ...................................................54

31.    Stay and Resumption of Proceedings ......................................................................54

32.    Dismissal of Claims .................................................................................................55

33.    Consent to Jurisdiction ............................................................................................55

34.    Resolution of Disputes: Retention of Jurisdiction ..................................................55

35.    Enforcement of Agreement .....................................................................................55

36.    Binding Effect .........................................................................................................56

37.    Authorization to Enter Agreement ..........................................................................56

38.    No Party Is the Drafter ............................................................................................56

39.    Choice of Law .........................................................................................................56

40.    Amendment or Waiver ............................................................................................57

41.    Execution in Counterparts .......................................................................................57

42.    Integrated Agreement ................................................................................................57

43.    Construction ..............................................................................................................57

**DESCRIPTION**                                                                                 **EXHIBIT**

GSK Covered Drugs ........................................................................................................A

[Proposed] Preliminary Approval Order ........................................................................B

Long Form Notice to Consumers, with Claim Form and Exclusion Form..............................B-1A

Long Form Notice to TPPs, with Claim Form......................................................................B-1B

Short Form Notice to Consumers ........................................................................................B-2A

Short Form Notice to TPPs ..................................................................................................B-2B

Settlement Notice Program ..................................................................................................B-3

[Proposed] Final Order and Judgment ..............................................................................C

Class Escrow Agreement ....................................................................................................D

Participating States' Escrow Agreement ..........................................................................E

Litigating States' Escrow Agreement ................................................................................F

Claims Process Explanation................................................................................................G

ISHP List..............................................................................................................................H

ISHP Claims Documentation ..............................................................................................I

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456 <br><br> CIVIL ACTION:  01-CV-12257-PBS <br><br> Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## SETTLEMENT AGREEMENT AND RELEASE
## OF THE GLAXOSMITHKLINE DEFENDANTS

This Settlement Agreement and Release of the GlaxoSmithKline Defendants ("this Agreement" or this "Settlement" or the "GSK MDL Agreement" ) is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Subject to the approval of the MDL Court, this Agreement is entered into between and among (i) Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), which is, along with GlaxoSmithKline, plc and Glaxo Wellcome, Inc., a named defendant in the above-captioned matter (collectively the "GlaxoSmithKline Defendants" or the "GSK Defendants"), (ii) Class Representatives on behalf of themselves and the AWP Payor Classes (as such classes are hereinafter defined) (the "Class Plaintiffs"), and (iii) the members of the ISHP Group (as hereinafter defined), by and through their respective counsel (collectively "the Parties");

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a consolidated and coordinated proceeding, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1430, (the "MDL Class Actions"), comprised of actions in which Class Plaintiffs have alleged, *inter alia*, that the GSK Defendants (among others) have engaged in unlawful inflation and misrepresentation of published Average

1

Wholesale Prices ("AWPs") and the unlawful use of AWPs in the marketing of certain drugs covered by Medicare Part B, including physician-administered drugs, as set forth in putative class action complaints that were transferred to and/or consolidated with the MDL Class Actions and in several consolidated Complaints filed by the Class Plaintiffs in the MDL Class Actions (collectively the "MDL Class Complaints");

WHEREAS, there exist  various entities, consisting of certain health insurance companies and health plans (referred to and defined herein below as the "Independent Settling Health Plans," "ISHPs" or the "ISHP Group") which have claims against the GSK Defendants that are identical to those brought in the MDL Class Actions and which, in lieu of litigating such claims independently or as part of a class, wish to enter into a settlement of those claims in accordance with the provisions set forth herein;

WHEREAS, as a condition precedent to this Agreement, the ISHP Group has represented, and has provided information sufficient for Lead Class Counsel and Defendants to establish, that the ISHPs, in the aggregate, provide or administer prescription drug and health benefits to approximately sixty percent (60%) of the covered lives privately insured in the United States (based on U.S. Census data published December 31, 2004), which information is summarized in Exhibit H hereto;

WHEREAS, this Agreement is entered into by the Parties in conjunction with separate but related State Settlement Agreements and Releases and/or stipulated Consent Judgments (the "Participating State Agreements") entered into by and between (i) GSK, on behalf of itself and the other GSK Defendants and (2) certain additional Plaintiffs comprised of the States (and/or the People of the States), through their Attorneys General, of New York, Connecticut, Nevada, Montana and Arizona (the "Participating State Plaintiffs"), who have filed similar claims against the GSK Defendants related to the published Average Wholesale Price ("AWP") of GSK's drugs

in their own jurisdictions, including claims pursuant to the State's *parens patriae* authority and/or consumer restitution claims and/or penalty claims, on behalf of consumers in their respective States (the "Participating State Actions," collectively with the MDL Class Actions the "AWP Actions");

WHEREAS, Defendants have asserted a number of defenses to the claims by the Class Plaintiffs and the Participating State Plaintiffs (collectively, the "AWP Plaintiffs") in all of the AWP Actions;

WHEREAS, the AWP Plaintiffs and the GSK Defendants agree that this Agreement and the Participating State Agreements shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the GSK Defendants or of the truth of any of the claims or allegations alleged in the AWP Actions or as a waiver of any defenses thereto;

WHEREAS, Class Plaintiffs' Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Class Actions, including the claims asserted in the complaints filed in the MDL Class Actions and the possible legal and factual defenses thereto, that it would be in the best interests of the Class Plaintiffs to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the AWP Payor Classes herein defined; and, further, that counsel representing the Class Plaintiffs consider the settlement set forth in this Agreement to be fair, reasonable and adequate and in the best interests of the AWP Payor Classes and all putative members of the AWP Payor Classes;

WHEREAS, ISHP Group Counsel have likewise concluded, after investigation of the facts and careful consideration of the circumstances of the relevant claims and potential claims by the members of the ISHP Group, including the possible legal and factual defenses thereto,

that it would be in the best interest of the ISHP Group to enter into this Agreement;

WHEREAS, Defendant GSK, through its counsel, and the Class Plaintiffs, through their counsel, after months of vigorous, arms-length negotiations, have conditionally agreed herein to payment by GSK of Seventy Million Dollars ($70,000,000.00) (the "Settlement Amount") to settle the MDL Class Actions in their entirety, as well as (a) the claims of the ISHP Group (b) the *Parens Patriae*/Consumer Restitution and Penalty Claims of the Participating States, as well as claims by certain Participating State non-Medicaid entities and (c) the *Parens Patriae*/Consumer Restitution and Penalty Claims and certain other claims of any Litigating States that timely elect to become Additional Participating States (as further explained below);

WHEREAS, counsel representing the Participating State Plaintiffs have engaged in vigorous arms-length negotiations with Consumer Allocation Counsel and Third-Party Payor Allocation Counsel, who were appointed by Lead Class Counsel to represent the Class Plaintiffs in the MDL Class Actions, to secure a portion of the Settlement Amount for potential payments to the Participating States in the total amount of Two Million Five-Hundred Thousand Dollars ($2,500,000.00), as well as certain other consideration hereunder as described in Paragraph 5 below;

WHEREAS, an additional portion of the Settlement Amount in the amount of Two Million Dollars ($2,000,000.00) will be set aside in accordance with the provisions of Paragraph 3 (c) below, and certain other consideration has been provided hereunder, including that described in Paragraph 6 below, so that GSK may settle all of the AWP *Parens Patriae*/Consumer Restitution and Penalty Claims and certain other claims filed against the GSK Defendants by the State Attorneys General of Pennsylvania, Illinois, Wisconsin, and/or Kentucky (the "Litigating State Plaintiffs"), should any of those States timely elect to become Additional Participating States as described below;

4

WHEREAS, Consumer Allocation Counsel and TPP Allocation Counsel further engaged in vigorous arms-length negotiations to apportion the Settlement Fund Amount, as defined below, between Consumers and TPPs, and reached agreement to apportion thirty percent (30%) of the Settlement Fund Amount to Consumers and seventy percent (70%) of the Settlement Fund Amount to TPPs (including the TPPs who are now defined as members of the ISHP Group), as further described below;

WHEREAS, Lead Class Counsel have determined it to be in the best interest of the Class and necessary to effectuate this Agreement to take steps to ensure the participation of the ISHP Group in the Settlement;

WHEREAS, ISHP Group Counsel have engaged in vigorous arms-length negation with Lead Class Counsel and have reached an agreement that certain amounts of the Settlement Fund apportioned to TPPs, equal to the amount ISHP Group members collectively would have been entitled to as TPP Class Members, shall be set aside for the benefit of the ISHP Group and paid under certain conditions as more fully set forth below;

WHEREAS, the settlement between the ISHP Group and the GSK Defendants requires a coordination of the claims administration process for TPP Class Members and the ISHP Group;

WHEREAS, the GSK Defendants, despite their belief that they have good defenses to the claims asserted against them in all of the AWP Actions, including the MDL Class Actions and actions filed by by the Participating State Plaintiffs and the Litigating State Plaintiffs, have nevertheless agreed to enter into this Agreement and the Participating State Agreements to reduce and avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to resolve these AWP Actions;

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of GSK, Class Plaintiffs and the ISHP Group Members that the MDL Class Actions, and all claims of the

AWP Payor Classes and ISHP Group Members described herein, be settled, compromised and/or

dismissed on the merits and with prejudice and, except as hereafter provided, without costs as to

Class Plaintiffs, the ISHP Group or the GSK Defendants, subject to the approval of the MDL

Court, on the following terms and conditions:

    1.    <u>Class Definition</u>. Subject to the MDL Court's approval, GSK and the Class

Plaintiffs agree and consent, for settlement purposes, to the certification of the following classes

in the MDL Class Actions (collectively, the "AWP Payor Classes"):

    A.    <u>Medicare Part B Co-Payment Class ("Medicare Co-Payment Class")</u>

> All natural persons in the United States who made, or who incurred
> a currently enforceable obligation to make, a co-payment based on
> AWP for a Medicare Part B covered drug manufactured by GSK
> set forth on <u>Exhibit A</u> hereto.  Excluded from the class are persons
> who made flat co-payments, who were reimbursed in full for any
> co-payments, or who have the right to be fully reimbursed for any
> co-payments.

    B.    <u>Third-Party Payor MediGap Supplemental Insurance Class ("MediGap TPP Class")</u>

> All Third-Party Payors in the United States who made
> reimbursements for a Medicare Part B covered drug manufactured
> by GSK and set forth on <u>Exhibit A</u> hereto, based on AWP, during
> the Class Period.

    C.    <u>Consumer and Third-Party Payor Class for Payments Made for Medicare Part B Drugs Outside the Medicare Context ("Private Payor Class")</u>

> All natural persons in the United States who made, or who incurred a
> currently enforceable obligation to make, a payment for, and all Third
> Party Payors in the United States who made reimbursements based on
> contracts using AWP as a reimbursement standard for purchases of, a
> physician administered drug manufactured by GSK set forth on <u>Exhibit A</u>
> hereto, during the Class Period.  Excluded from the class are natural
> persons who made flat co-payments, who were reimbursed in full for any
> payments or co-payments, or who have the right to be fully reimbursed for
> any payments or co-payments.

Excluded from each of the AWP Payor Classes are Defendants and their officers,

directors, management, employees, subsidiaries, and affiliates.  Excluded from the MediGap TPP

Class and the Private Payor Class are: (1) the United States government and its agencies and

departments, and all other governmental entities that made payments pursuant to any state's

Medicaid program; (2) the Independent Settling Health Plans (ISHPs), as defined in Paragraph

2(w) of this Agreement; and (3) all federal, state or local governmental entities, *except for* the

following, which are *not* excluded from the Medigap TPP or Private Payor Classes:  (a) non-

Medicaid state or local government entities that made AWP-based prescription drug payments as

part of a health benefit plan for their employees, but only with respect to such payments, and (b)

other non-Medicaid state government agencies or programs of the Participating States and of the

Additional Participating States, if any, *except that* such agencies and programs in New York and

Connecticut *are* excluded.

       2.    <u>Definitions</u>.  As used in this Agreement, the following terms shall have the

indicated meanings:

       (a)    "Additional Participating State" means any Litigating State that

enters into a separate written agreement with GSK within ninety (90) days of the date of

the preliminary approval by the MDL Court of this MDL Class Agreement pursuant to

Paragraph 6(b) of this MDL Class Agreement.

       (b)    "Class Counsel" means all attorneys and law firms that have

appeared in the MDL Class Actions on behalf of Class Plaintiffs.

       (c)    "Class Member" means any natural person and any entity falling

within the definition of the AWP Payor Classes as defined in Paragraph 1 above other than

any Class Opt-Outs.

(d)      "Class Opt-Out" means any natural person or entity falling within the definition of the AWP Payor Classes who timely and validly submits a request for exclusion from one or more of the AWP Payor Classes in accordance with the procedures set forth in the Settlement Notice.  ISHP Group Members do not fall within the definition of the AWP Payor Classes and therefore need not and cannot become Class Opt Outs.

(e)      "Class Period" means January 1, 1991 through January 1, 2005, inclusive, for the Medicare Co-Payment Class and the MediGap TPP Class, and January 1, 1991 through the date of this Agreement, inclusive, for the Private Payor Class.

(f)      "Class Representatives" of "Class Plaintiffs" or "Named Class Representatives" means the named plaintiffs in the Fourth Amended Master Consolidated Class Action Complaint, as filed with the MDL Court.

(g)      "Class Releasors" means each Class Member, including, (1) all Consumer Class Members, as well as all Consumer Class Members' successors, heirs, executors, trustees, administrators and assigns and (2) all TPP Class Members, including any self-funded benefit plans for which the TPP, as a third party administrator, provides prescription drug benefit services (provided the TPP has the legal right and authority to make such claim), as well as all TPP Class Members' respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and legal representatives, and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common

control with a Class Releasor.

(h)     "Class Escrow Account" means the account established pursuant to Paragraph 3(a) herein.

(i)     "Claims Administrator" means Complete Claim Solutions, Inc.

(j)     "CMS" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services.

(k)     "Consumer" means any individual falling within the definition of the Medicare Co-Payment Class and/or the Private Payor Class defined in Paragraph 1 who is a natural person and not a TPP.

(l)     "Consumer Allocation Counsel" means attorney Dianne M. Nast of the law firm of Roda Nast, PC, 801 Estelle Drive, Lancaster, Pennsylvania and attorney Kent M. Williams, 1300 Godward Street NE, Suite 6200, Minneapolis, Minnesota.

(m)     "Consumer Class Member" means Consumers who are not Class Opt-Outs.

(n)     "Consumer Settlement Pool" means 30% of the Settlement Fund Amount, after subtracting fees and expenses as set forth in Paragraph 22 (b) (iv) below, which has been allocated to pay authorized claims of Consumer Class Members.

(o)     "EPIC" means the State of New York's Elderly Pharmaceutical Insurance Coverage Program.

(p)      "Effective Date" is the date defined in Paragraph 13 below.

(q)      "GSK" or "GlaxoSmithKline" means SmithKline Beecham Corporation, d/b/a GlaxoSmithKline.

(r)      "GSK Defendants" or "GlaxoSmithKline Defendants" means SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, GlaxoSmithKline, plc and Glaxo Wellcome, Inc., as well as any affiliated entities that have been named as defendants in any of the MDL Class Actions.

(s)      "GSK Category A Drugs" means Zofran and Kytril injectibles, as described with specificity in Exhibit A hereto.

(t)      "GSK Category B Drugs" means the GSK drugs covered by Medicare Part B other than Zofran and Kytril injectibles that are described with specificity in Exhibit A hereto.

(u)      "GSK Drugs" of "GSK Covered Drugs" means GSK Category A Drugs and GSK Category B Drugs.

(v)      "GSK Releasees" means the GSK Defendants and each of their present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing as of the date of this Agreement.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a GSK Releasee.

(w)     "Independent Settling Health Plans," the "ISHP Group," or "ISHPs" means all of the entities identified on Exhibit H to this Agreement (the "ISHP Group Members"), together with all self-funded healthcare plans and/or entities ("SFPs") for which one or more ISHP Group Member provides or provided prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator and on whose behalf the ISHP Group Member has legal authority and authorization to make a claim, to the extent that such ISHP Group Member administered such SFP's purchases of GSK Drugs.  Such SFPs will be identified in the Claim Documentation submitted by ISHP Group Members pursuant to Paragraph 7 of this Agreement.

(x)     "ISHP Group Counsel" means the law firms of Lowey Dannenberg Bemporad & Selinger P.C., Rawlings & Associates, and Robins, Kaplan, Miller & Ciresi, LLP.

(y)     "ISHP Group Recognized Claim Percentage" or "ISHPRCP" means the total amount of claims by all ISHP Group Members that are allowed by the Claims Administrator, divided by the total allowed claims of (a) all Authorized TPP Claimants, (b) all members of the ISHP Group, and (c) all TPP Opt-Outs for which GSK receives a refund from the TPP Settlement Pool pursuant to Paragraph 17 of this Agreement.

(z)     "ISHP Group Initial Payment" means the sum of Eleven Million Dollars ($11,000,000.00), which will be payable to the ISHP Group in accordance with Paragraph 7 hereof.  This amount was calculated by taking 75% of the estimated amount to be deposited into the ISHP Settlement Pool pursuant to Paragraph 4 herein (which amount

is net of all estimated expenses and fees as described in Paragraph 22(b)(iv) herein).

(aa)    "ISHP Over/Underage" means the ISHPRCP less thirty-seven and one half percent (37.5%).  For example, if the ISHPRCP is 60%, then the SHP Over/Underage would be positive 22.5%.  If the ISHPRCP is 25% then the SHP Over/Underage would be negative 12.5%.

(bb)    "ISHP Group Reversion Amount" means an amount calculated after all claims by TPP Claimants have been processed and the total allowed claim amounts for all Authorized TPP Claimants and the ISHP Group have been determined by the Claims Administrator, all in accordance with the procedure set forth on Exhibit G hereto.  The ISHP Group Reversion Amount is calculated by multiplying the ISHP Over/Underage times the total amount deposited into both the TPP Settlement Pool and the ISHP Settlement Pool (which amounts are both net of fees and expenses pursuant to Paragraph 22(b)(iv) herein) minus any amount of refund to GSK pursuant to Paragraph 17 herein.  If the resulting amount is a positive figure, such amount is to be paid to the ISHP Group from the ISHP Settlement Pool and, if necessary, the TPP Settlement Pool, as more fully described in Paragraph 7(g)(1) below.  If the resulting amount is a negative figure, such amount is to be paid to the TPP Settlement Pool from the ISHP Settlement Pool, as more fully described in Paragraph 7(g)(2) below.

(cc)    "ISHP Settlement Pool" means half of the 70% allocated hereunder to TPPs, which comes to 35% of the Settlement Fund Amount, after subtracting fees and expenses as set forth in Paragraph 22(b)(iv) below, which amount has been allocated to pay authorized claims of ISHP Group Members.

(dd)     "ISHP Group Releasors" means all ISHP Group Members, together with all self-funded healthcare plans and/or entities (SFP's) for which one or more ISHP Group Member provides or provided prescription drug or health benefit services through administrative services-only contracts or as a third-party administrator and on whose behalf the ISHP Group Member has legal authority and authorization to make a claim, to the extent that such ISHP Group Member administered such SFP's purchases of GSK Drugs, together with all ISHP Group Members' respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and legal representatives, and any predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing, all in their capacities as such.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with an ISHP Group Member.

(ee)     "Lead Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman & Kodroff, Wexler Toriseva Wallace LLP, Hoffman & Edelson, LLC, and Kline & Specter, P.C.

(ff)     "Litigating State Plaintiffs" or "Litigating States" means Illinois, Kentucky, Pennsylvania and Wisconsin, *i.e.*, those states that, through their Attorneys General, filed AWP-related claims against GSK by April 6, 2006 which include *Parens Patriae*/Consumer Restitution and/or Penalty Claims, but which by the date of this Agreement have not agreed to become Participating State Plaintiffs in order to resolve all such claims against the GSK Defendants hereunder.  The Litigating States may qualify to become "Additional Participating States" hereunder, and thereby become entitled to a

13

portion of the "Litigating State Allocation" and other consideration described in Paragraph 6 below, if they timely qualify to do so in accordance with the procedures set forth in Paragraph 6 (b) below.

(gg)    "Litigating States' Allocation" means a portion of the Settlement Amount totaling $2,000,000.00.

(hh)    "MDL Court" means the Honorable Patti B. Saris, or if she is unavailable, another judge of the United States District Court for the District of Massachusetts, presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(ii)    "MDL Class Actions" means all putative class actions in which any of the GSK Defendants are named as a defendant and which have been transferred to and/or consolidated in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(jj)    "MDL Class Complaints" means all of the putative class action complaints that were transferred to and/or consolidated in or with the MDL Class Actions, including all of the Master Consolidated Class Action Complaints (through and including the Fourth Amended Master Consolidated Class Action Complaint) filed in the MDL Class Actions, including all counts of such complaints that were previously dismissed by the MDL Court (e.g. putative class RICO claims).

(kk)    "MDL Mediator" means Eric Green, Resolutions, LLC of Boston, Massachusetts.

(ll)     "Named Plaintiff" means all persons and entities that have been named plaintiffs in the Fourth Amended Master Consolidated Class Action Complaint filed with the MDL Court.

(mm)   "Participating State Plaintiffs" or "Participating States" means the states that have entered into "Participating State Agreements," namely the states of Arizona, Connecticut, Montana, Nevada and New York, which have, through their Attorneys General, filed claims against GSK related to the published Average Wholesale Price ("AWP") of GSK's drugs in their own jurisdictions, including claims pursuant to the State's *parens patriae* authority and/or consumer restitution claims and/or penalty claims on behalf of consumers in their respective States, and have agreed to resolve all such claims through separate State Settlement Agreements and Releases and/or stipulated Consent Judgments (hereinafter "Participating State Agreements") and/or as set forth hereunder.

(nn)     "Participating States' Allocation" means a portion of the Settlement Amount totaling $2,500,000.00.

(oo)     "Released Class Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Class Releasor who has not timely excluded himself, herself or itself from the AWP Payor Classes, whether or not they object to the settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly or

15

indirectly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to any drug price published by any commercial price reporting service, or provided by any GSK Releasee to any such commercial price reporting service  (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, that were or could have been alleged against any GSK Releasee in any of the MDL Class Complaints with respect to any and all of the GSK drugs listed on Exhibit A hereto and subject to class treatment hereunder.  "Released Class Claims" shall not include any claim against any person or entity that is not a GSK Releasee, any claim arising out of this Agreement, or any claim between any Class Member and any GSK Releasee that is unrelated to the allegations of the MDL Complaints, including unrelated breach of contract or economic injury claims, any product liability, breach of warranty, personal physical injury or intellectual property claim, any claim relating to the efficacy, safety or manufacture of GSK products, and any claim by any governmental entity (including any state Medicaid program or agency) that is not a member of the MediGap TPP Class or Private Payor Class as defined herein.

(pp)    "Released ISHP Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any ISHP Group Member, ever had, now has, or hereafter can, shall or may have, directly or indirectly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to any drug

16

price published by any commercial price reporting service, or provided by any GSK

Releasee to any such commercial price reporting service  (including, but not limited to,

AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing activity relating

to any such price, such as any reference to the difference between (1) a price paid and (2)

any reported price or reimbursement rate based on such a reported price, that were or could

have been alleged against any GSK Releasee in any of the MDL Class Complaints with

respect to any and all of the GSK Drugs listed on Exhibit A hereto.  "Released ISHP

Claims" shall not include any claim against any person or entity that is not a GSK

Releasee, any claim arising out of this Agreement, or any claim between any ISHP Group

Member and any GSK Releasee that is unrelated to the allegations of the MDL Complaints,

including unrelated breach of contract or economic injury claims, any product liability,

breach of warranty, personal physical injury or intellectual property claim, and any claim

relating to the efficacy, safety or manufacture of GSK products.

(qq)    "Released Claims" means any and all claims released by this

Agreement.

(rr)    Self-funded healthcare plans and/or entities, or "SFPs," means SFPs

for which one or more ISHP Group Member provides or provided prescription drug or

health benefit services through administrative services-only contracts or as a third-party

administrator and on whose behalf the ISHP Group Member has legal authority and

authorization to make a claim, to the extent that such ISHP Group Member administered

such SFP's purchases of GSK Drugs.  Such SFPs will be identified in the Claim

Documentation submitted by ISHP Group Members pursuant to Paragraph 7 of this

Agreement.

(ss)     "Settlement Amount" means the sum of Seventy Million Dollars ($70,000,000.00).

(tt)     "Settlement Fund Amount" means the Settlement Amount, minus the $2,500,000.00 Participating State Plaintiffs' Allocation and the $2,000,000.00 Litigating State Plaintiffs' Allocation, which GSK shall pay into the Class Escrow Account pursuant to Paragraph 3(a) hereunder, plus any portion of the Litigating State Plaintiffs' Allocation that is later deposited into the Class Escrow Account pursuant to Paragraph 6 (e) hereunder, plus all interest or other income that accrues in the Class Escrow Account.  The "Settlement Fund" is the fund to be used to pay all claims relating to settlement of the MDL Class Actions and the Released ISHP Claims, which shall be held in the Class Escrow Account until distributions are made as provided for herein.

(uu)     "Settlement Notice" means the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing substantially in the form annexed hereto as Exhibit 1 to Exhibit B and the Summary Notice for publication annexed hereto as Exhibit 2 to Exhibit B, as the same may be modified in accordance with the Court's rulings with respect to the motion for preliminary approval of this settlement.

(vv)     "Third-Party Payor" or "TPP" means a private or governmental entity which was or is at risk, by contract, to pay all or part of the cost of any GSK drug listed on Exhibit A hereto that was prescribed, provided or administered in the United States for individual beneficiaries of the TPP's prescription drug or health coverage. Excluded from the definition of "Third Party Payor" and "TPP" are Defendants and their

18

officers, directors, management, employees, subsidiaries, and affiliates, as well as (1) the

United States government and its agencies and departments, and all other governmental

entities that made payments pursuant to any state's Medicaid program; and (2) all federal,

state or local governmental entities, *except for* the following, which *are* included in the

definition of "Third Party Payor" or "TPP:"  (a) non-Medicaid state or local government

entities that made AWP-based prescription drug payments as part of a health benefit plan

for their employees, but only with respect to such payments, and (b) other non-Medicaid

state government agencies or programs of the Participating States and of the Additional

Participating States, if any.

(ww)   "TPP Allocation Counsel" means attorney Jonathan D. Karmel, The

Karmel Law Firm, 221 N. LaSalle Street, Suite 1414, Chicago, IL 60601.

(xx)   "TPP Class Members" means those entities falling within the

definition of the MediGap TPP Class and the Private Payor Class defined in Paragraph 1

above, excluding any Class Opt-Outs who are TPPs.  ISHP Group Members are TPPs but

are not TPP Class Members.

(yy)   "TPP Claimants" mean all TPP Class Members that file a claim

hereunder with the Claims Administrator, as well as EPIC, should EPIC file a claim with

the Claims Administrator hereunder.

(zz)   "TPP Settlement Pool" means half of the 70% allocated hereunder

to TPPs, which comes to 35% of the Settlement Fund Amount, after subtracting fees and

expenses as set forth in Paragraph 22(b)(iv) below, which has been allocated to pay

authorized claims of TPP Class Members.

(aaa)   "United States" means the United States of America including its states, commonwealths, territories and possessions.

3.      <u>Settlement Consideration</u>.

(a)     <u>Class Members and ISHP Group Members</u>.   Subject to the provisions hereof, and in full, complete and final settlement of the claims of the Class Members and the ISHP Group Members as provided herein, GSK shall cause to be transferred, within five (5) business days after the MDL Court enters an order granting preliminary approval of this Class Settlement Agreement, the Settlement Amount, minus the Participating State Plaintiffs' Allocation and the Litigating State Plaintiffs' Allocation, that is, Sixty-Five Million Five-Hundred Thousand Dollars ($65,500,000.00), into an escrow account designated by Lead Class Counsel (the "Class Escrow Account").  This payment shall be made by electronic funds transfer pursuant to written instructions to be provided to GSK by Lead Class Counsel on or the day after the date this Agreement is submitted to the MDL Court for preliminary approval.  The Class Escrow Account shall be established and administered pursuant to an Escrow Agreement substantially in the form annexed hereto as <u>Exhibit D</u> (the "Class Escrow Agreement").  Monies held in the Class Escrow Account shall be invested by the Escrow Agent (as defined in the Class Escrow Agreement) in short term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or other similar short-term United States government obligations, and any interest earned thereon shall become part of the Settlement Fund.

(b)     <u>Participating States' Allocation:</u>  In addition to causing the transfer to the Class Escrow Account described in subparagraph (a) above, on the same day GSK

shall also cause to be transferred Two Million Five-Hundred Thousand Dollars ($2,500,000.00) into a separate escrow account designated by counsel for the Participating States (the "Participating States' Escrow Account" or "PSEA").  This payment shall be made by electronic funds transfer pursuant to written instructions to be provided to GSK by one designated counsel for the Participating States on or the day after the date this Agreement is submitted to the MDL Court for preliminary approval.  The PSEA shall be established and administered pursuant to an Escrow Agreement substantially in the form annexed hereto as Exhibit E.  The funds in the PSEA are to be made available to satisfy certain claims of the Participating States, as more fully described in Paragraph 5 below.

(c)      Litigating States' Allocation:  In addition to causing the transfers set forth in subparagraphs (a) and (b) above, on the same day GSK shall also cause to be transferred Two Million Dollars ($2,000,000.00) into a separate escrow account designated and controlled jointly by Lead Class Counsel and counsel for GSK, referred to herein as the "Litigating States' Escrow Account" or "LSEA."  This payment shall be made by electronic funds transfer pursuant to written instructions to be provided to GSK by Lead Class Counsel on or the day after the date this Agreement is submitted to the MDL Court for preliminary approval.  The LSEA shall be established and administered pursuant to an Escrow Agreement substantially in the form annexed hereto as Exhibit F.  The funds in the LSEA are to be made available to satisfy certain claims of the Litigating States, as more fully described in Paragraph 6 below.

(d)      Satisfaction of Defendants' Obligations.  GSK's transfer of the $65,500,000.00 to the Class Escrow Account, plus GSK's transfer of $2,500,000.00 to the PSEA, plus GSK's transfer of $2,000,000.00 to the LSEA, shall fully satisfy the GSK

Defendants' obligation to make payments under this Agreement, and no other payment by any GSK Defendant shall be required hereunder or to resolve the MDL Class Actions or the Released ISHP Claims.  The GSK Defendants shall not thereafter have any liabilities, obligations or responsibilities with respect to the investment, payment, disposition or distribution of the Settlement Fund or the monies deposited into the Class Escrow Account or the PSEA.  GSK's obligations with respect to the monies transferred into the LSEA are set forth in Paragraph 6 (c) and 6 (e) below.

4.      Allocation Between Consumer Class Members, TPP Class Members and ISHP Group Members

The $65,500,000.00 portion of the Settlement Amount paid by GSK into the Class Escrow Account, pursuant to Paragraph 3(a) above, plus any portion of the Litigating States' Allocation that is later deposited into the Class Escrow Account pursuant to Paragraph 6 (e) hereunder, plus all interest or other income that accrues in the Class Escrow Account, is the Settlement Fund Amount that will be used to pay authorized claims of Class Members, the authorized claims of ISHP Group Members, as well as class counsels' attorneys fees and expenses and other fees and expenses described in Paragraph 22 below.  Thirty percent (30%) of the Settlement Fund Amount minus fees and expenses, as set forth in Paragraph 22 (b) (iv) below, will become the "Consumer Settlement Pool," which will be used to pay authorized claims of Consumer Class Members.  Thirty-Five percent (35%) of the Settlement Fund Amount, minus fees and expenses as set forth in Paragraph 22 (b) (iv) below, will become the "TPP Settlement Pool," which will be used to pay authorized claims of TPP Class Members, and, in certain circumstances described in Paragraph 7(g)(1), may be used to pay the authorized claims of ISHP Group Members.  Thirty-Five percent (35%) of the Settlement Fund Amount, minus

fees and expenses as set forth in Paragraph 22(b)(iv) below, will become the "ISHP Settlement Pool," which will be used to pay authorized claims of ISHP Group Members, and, in certain circumstances described in Paragraph 7(g)(2), may be used to pay the authorized claims of TPP Class Members.

      5.      <u>Agreements Concerning Participating State Plaintiffs</u>.

      (a)      The Participating State Plaintiffs have agreed, in separate State Settlement Agreements and Releases and/or stipulated Consent Judgments (the "Participating State Agreements"), to resolve all of the *parens patriae*, consumer restitution and/or penalty claims asserted in separate lawsuits that each Participating State has filed against the GSK Defendants, in exchange for the consideration set forth in each Participating State Agreement. As set forth in Paragraph 3(b) above, GSK has also agreed hereunder to deposit $2,500,000.00 into the PSEA, which sum shall be made available to the Participating States, at their option, as compensation for the *parens patriae*, consumer restitution and/or penalty claims, including for costs and fees incurred in connection with the litigation of those claims, according to shares previously determined for each Participating State.  In addition, each Participating State may be awarded certain unclaimed funds hereunder by the MDL Mediator in accordance with the provisions of Paragraph 22 (b) (vii) b. below.  Additionally, as further detailed in the applicable Participating State Agreements, certain Participating States, namely the States of Arizona, New York and Connecticut, whose non-Medicaid state agencies or programs have paid for GSK Drugs, have agreed to settle all claims against the GSK Defendants resulting from those payments in exchange for the payment of a sum.  In the case of Arizona and New York, the aforementioned sum shall be determined by the Claims Administrator as the sum to which that entity would be entitled as a TPP Claimant hereunder.  In the case of Connecticut, the parties

have agreed that the amount that Connecticut's Non-Medicaid Medical Assistance Programs, including ConnPACE, SAGA and CADAP, would be entitled to as TPP Claimants hereunder, based on their purchases of GSK Drugs, is $30,000.00 (the "Connecticut Non-Medicaid Purchase Payment").

(b)      The Participating States have each further agreed to resolve any and all AWP-based Medicaid claims they filed in their separate actions against the GSK Defendants, and to dismiss their separate lawsuits against the GSK Defendants, through separate Participating State Agreements entered into between GSK and each Participating State, which Participating State Agreements are not required to be and will not be presented to the MDL Court for approval.  The Participating State Agreements will be executed by the parties thereto contemporaneously with the execution of this GSK MDL Class Agreement.

(c)      Method of Payment of Participating State Allocation:

(1)      Within ten (10) business days from the date the MDL Court enters an order preliminarily approving this GSK MDL Class Agreement, counsel for each of the Participating States shall elect in writing (by e-mail to counsel for GSK and by e-mail or fax to the Escrow Agent for the PSEA), whether it wishes to receive its previously-negotiated share of the Participating State Allocation directly from the PSEA or whether it wishes to receive that share directly from GSK.  As part of those written elections, each Participating State shall specify its previously-negotiated share of the $2,500,000.00 allocation, expressed as a percentage of the $2,500,000.00 total, which percentages must add up to 100% for the written elections to be effective.

(2)      Within ten (10) business days from the date all five Participating

States make effective written elections to GSK and the Escrow Agent for the PSEA as described above, the Escrow Agent for the PSEA shall calculate and deduct escrow fees and taxes (if any) from the PSEA, calculate the principal and interest amount accumulated in the PSEA to be available for distribution, calculate the share of each Participating State to be made available for distribution, and provide to counsel for GSK and each Participating State, and to Lead Class Counsel, a written interim accounting that sets forth these items and that specifies the share (expressed in dollars) of each Participating State available for distribution on a date certain five business days from the date of the accounting.

(3)     Within five (5) business days thereafter, the Escrow Agent for the PSEA shall cause the payment of the specified share of each State that elected to be paid from the PSEA to be made directly to that State, and shall cause the payment of the specified share of each State that elected *not* to be paid from the PSEA to be refunded to GSK.  For each State that elects *not* to be paid from the PSEA and for which GSK therefore receives a refund, thereafter GSK shall pay that State's share directly to that State in accordance with the terms of that State's Participating State Agreement.

(4)     The entire amount of the PSEA shall be disbursed as described above (although amounts, if any, needed for any tax payments deemed required by the Escrow Agent may be retained until they become due).  The Escrow Agent for the PSEA shall thereafter promptly provide to counsel for GSK and each Participating State, and to Lead Class Counsel, a final accounting.

(d)     Each Participating State retains the discretion to use its portion (if any) of the Participating State Allocation and any other funds awarded hereunder for purposes

25

reasonably related to the AWP litigation it initiated against GSK, including, but not limited to, the fees and costs it incurred in connection with such litigation.

(e)       The State of Arizona has non-Medicaid state agencies or programs that claim to have paid for GSK Drugs based on AWPs and which are TPP Class Members. Connecticut's Non-Medicaid Medical Assistance Programs, as well as the New York EPIC Program, though excluded from the TPP Classes, also claim to have paid for GSK drugs based on AWPs.  GSK and these three states, through the Participating State Agreements, as well as the Parties hereto, have agreed that the Arizona non-Medicaid state programs or agencies and the New York EPIC Program may submit claims to the Claims Administrator hereunder, that such claims shall be adjudicated as if they are claims by TPP Claimants hereunder, and that such claims shall be paid (or declined) in the same way as the claims of TPP Claimants hereunder. With respect to Connecticut's Non-Medicaid Medical Assistance Programs, pursuant to the terms of the Participating State Agreement between GSK and the State of Connecticut, and by agreement of the parties hereto, at the same time as set forth in Paragraph 5(c)(3) above for payment to Participating States of their share of the Participating State Allocation from the PSEA, the Escrow Agent for the Class Escrow Account shall cause the Connecticut Non-Medicaid Purchase Payment amount to be paid to the State of Connecticut from the Class Escrow Account.  Payments made to any of the Participating States and/or Additional Participating States relating to non-Medicaid state purchases of GSK drugs, including any payments made to the State of Connecticut pursuant to this paragraph, shall be accounted for by the claims administrator in the same manner as payments made to TPP Class Members.

6.       <u>Agreements Concerning Litigating State Plaintiffs</u>.

(a)        The Parties hereto have agreed to make the Litigating States'
Allocation amount, as well as other consideration hereunder, available to satisfy the *parens
patriae*/consumer restitution and penalty claims of the Litigating States, under the conditions set
forth herein.

(b)        In order for any of the Litigating States to be entitled to any payment
or other consideration hereunder, GSK and the Litigating State must first enter into a separate
written agreement within ninety (90) days of the date a preliminary approval order is entered by
the MDL Court for this GSK MDL Class Agreement, under which the Litigating State agrees to
resolve all of its *parens patriae*/consumer restitution and penalty claims in its AWP lawsuit
against the GSK Defendants.  Counsel for GSK must present any such separate written
agreement with a Litigating State to Lead Class Counsel and to the Escrow Agent for the LSEA
within five (5) business days from receipt of a fully executed copy thereof, at which time the
Litigating State shall become an "Additional Participating State" hereunder.

(c)        Each Additional Participating State shall be entitled to a share of the
Litigating States' Allocation amount deposited into the LSEA hereunder, plus interest
accumulated in the LSEA, minus escrow fees and taxes (if any), in the following individual State
shares, which were calculated based upon the size of each Litigating States' Medicare population
(according to publicly available 2004 data) relative to the total Medicare population of all four of
the Litigating States, as follows:  Pennsylvania: 40.2%;  Illinois: 31.8%;  Wisconsin: 15.5%;
Kentucky: 12.5%.  Each Additional Participating State shall be paid its share from the LSEA
within One-hundred (100) days of the date a preliminary approval order is entered by the MDL
Court for this GSK MDL Class Agreement.

(d)        Each Additional Participating State may also be awarded, through a binding mediation conducted by the MDL Mediator, some portion of any unclaimed monies from the Consumer Settlement Pool in accordance with the provisions of Paragraph 22 (b) (vii) b. hereunder.  In addition, state government agencies (other than state Medicaid agencies or programs) within each Additional Participating State may qualify as TPP Class Members hereunder and may therefore, if qualified, make claims as TPP Claimants hereunder.

(e)        If any Litigating State has not timely entered into a separate written agreement to resolve all of its *parens patriae/*consumer restitution and penalty claims and thus become an Additional Participating State through the process set forth herein, then on the One-hundred fifth (105th) day after preliminary approval of the GSK MDL Class Agreement by the MDL Court, (1) twenty-five percent (25%) of each such Litigating State's share of the money in the LSEA on that date will be paid by the Escrow Agent for the LSEA, at the direction of Lead Class Counsel and GSK, into the Class Escrow Account for distribution to Class Members as further provided herein, and (2) the remaining seventy-five percent (75%) of each such Litigating States' share (the "State Reversion Amount") will be retained in the LSEA for further use and distribution as set forth immediately below.

(f)        The State Reversion Amount, if any, shall be used, at the direction of Lead Class Counsel, with notice to GSK, first to reimburse the Consumer Settlement Pool for the cost of designing and implementing a notice program to reach Consumer Class Members and then (if there are funds remaining in the LSEA), to reimburse the TPP Settlement Pool for the cost of designing and implementing a notice program to reach TPP Class Members.  If there are funds remaining in the LSEA after (i) payments are made to all Additional Participating States under subparagraph (c) above, (ii) payments are made to reimburse for the cost of notice to

Consumers and TPPs as set forth herein, and (iii) all escrow fees and taxes (if any) are paid by

the LSEA, then all such funds shall be returned to GSK from the LSEA within ninety (90) days

of the end of the notice period set forth in Exhibit 3 to Exhibit B hereto.

7.      Agreement Concerning ISHP Group.

(a)      Within Ten (10) business days after the MDL Court enters an order

granting preliminary approval of this Agreement, Lead Class Counsel shall cause to be

transferred from the ISHP Settlement Pool within the Class Escrow Account, via electronic

transfer to ISHP Group Counsel, the ISHP Group Initial Payment, for distribution as appropriate

to the ISHP Group Members.

(b)      On or before the date the MDL Court sets for final submission of

claims by TPP Class Members, the ISHP Group shall provide Claim Documentation, as set forth

on Exhibit I hereto, to GSK Counsel and the Claims Administrator, with a copy to Lead Class

Counsel.  The Claim Documentation shall include a list of all SFPs, as defined in Paragraph 2

(rr) above. Each ISHP Group member shall warrant that any Claims Documentation, data, or

other information submitted to the Claims Administrator will be true and accurate.

(c)      To verify the accuracy of claims information and to prevent

duplication of claims, the Claims Administrator may request additional information from ISHP

Group Members as deemed appropriate by the Claims Administrator.  ISHP Group Members

will provide additional information to the Claims Administrator as requested.  The calculation of

the ISHP Group Reversion Amount shall not include claims of any ISHP Group Member that

fails to timely submit the above Claims Documentation or additional claims documentation

requested by the Claims Administrator.

(d)        If, in the judgment of the Claims Administrator, a claim submitted by an ISHP Group Member is duplicative of a claim, or any portion of a claim, submitted independently by an SFP or other TPP, or if a claim by any ISHP Group Member is submitted on behalf of an entity that has independently submitted a valid request for exclusion, the claim, or any duplicative portion of a claim, made by the ISHP Group Member shall be disallowed by the Claims Administrator.

(e)        The Claims Administrator shall make available to ISHP Group Counsel a list of the identities of all TPP Class Members that submit Claim Documentation (the "TPP Claimant List").  The TPP Claimant List shall be deemed confidential and can be used only for the purposes of determining duplication of claims or whether any entity submitting Claims Documentation falls within the definitions of TPP and TPP Claimant as set forth in Paragraphs 2(vv) and 2(yy).  The TPP Claimant List shall be generated by the Claims Administrator and transmitted to the ISHP Group Counsel no later than the date for the final approval hearing set by the MDL Court.  The Claims Administrator shall also generate and transmit to ISHP Group Counsel an updated and final TPP Claimant List twenty (20) days after the date set for postmark of all claims by Class Members, or sooner if available.  ISHP Group Counsel shall have the opportunity, within twenty-one (21) days of receipt of a TPP Claimant List, to identify in writing to Lead Class Counsel any TPP Class Member that ISHP Group Counsel believe has submitted a claim that is duplicative of a claim already asserted by another TPP Class Member or ISHP Group Member, or that falls outside the definition of TPP or TPP Claimant as set forth in Paragraphs 2(vv) and 2(yy).  At least thirty-five (35) days prior to any distribution of the Net TPP Settlement Pool under Paragraph 22(b)(ix) to TPP Class Members, Lead Class Counsel shall provide ISHP Group Counsel with the proposed computation of the

ISHP Group Reversion Amount payment, including a list of the Claim Administrator's determination of the amount of each ISHP Group Member's allowed claims.  Such computation will become binding upon the ISHP Group unless within ten (10) business days or receipt of such computation, ISHP Group Counsel disputes the amount of the proposed ISHP Group Reversion Amount payment in writing to Lead Class Counsel.  In the event of such a dispute, ISHP Group Counsel may request and receive from the Claims Administrator, in consultation with Lead Class Counsel, a list of the TPP Class Members who have the 50 largest aggregate claims approved by the Claims Administrator and the amount of such claims (the "TPP List"). The TPP List shall be held in confidence by ISHP Group Counsel, will be provided for attorney's eyes only, and shall not be provided or shared with any other person, including any member of the ISHP Group or another TPP.  ISHP Group Counsel shall be entitled to show the TPP List to a single third-party consultant who is not employed by any TPP, and who agrees in writing to be bound by the same confidentiality as ISHP Group Counsel, solely for the purposes of dispute resolution under this Paragraph.  Other than as provided in this Agreement, the ISHP Group and ISHP Group Counsel shall not be entitled to any information collected or generated by the Claims Administrator or Lead Class Counsel, except to the extent permitted by the MDL Mediator in a proceeding under subparagraph (f) below.

(f)	Lead Class Counsel and the ISHP Group shall attempt to resolve any disputes raised pursuant to this Paragraph through good faith negotiations.  If the dispute cannot be resolved informally, it shall be submitted to binding arbitration by the MDL Mediator.  The MDL Mediator's decision shall be final and will not be subject to appeal.  Defendants shall not be involved in any arbitration pursuant to this Paragraph, and shall have not obligations or liability with respect thereto.

(g)        On or before five (5) days after the Effective Date of this Agreement, or within five (5) days of any resolution of a dispute under subparagraph (f) above, or within five (5) days after all TPP claims have been processed and the total authorized claim amounts for all Authorized TPP Claimants and ISHP Group Members has been finally determined, whichever is later, the Lead Class Counsel or ISHP Group Counsel, as the case may be, shall cause the payment of the ISHP Group Reversion Amount to be made as follows:

(1)    If the ISHP Group Reversion Amount is calculated by reference to a positive ISHP Over/Underage, Lead Class Counsel shall cause the Escrow Agent to transfer into an account designated by ISHP Group Counsel the ISHP Group Reversion Amount from the funds remaining in the ISHP Settlement Pool.  Any funds remaining in the ISHP Settlement Pool after such transfer is made and the entire ISHP Group Reversion Amount has been paid shall be transferred to the TPP Settlement Pool and distributed as the remainder of the funds in the TPP Settlement Pool pursuant to Paragraph 22(b)(ix) herein.   If the funds remaining in the ISHP Settlement Pool are not sufficient to pay the entire ISHP Group Reversion Amount, then in addition to transfer of the remaining funds in the ISHP Settlement Pool, Lead Class Counsel shall cause the Escrow Agent to transfer as much of the funds in the TPP Settlement Pool to the account designated by ISHP Group Counsel until the entire ISHP Group Reversion Amount has been transferred to the ISHP Group.

(2)    If the ISHP Group Reversion Amount is calculated by reference to a negative ISHP Over/Underage, Lead Class Counsel shall cause to be transferred to the TPP Settlement Pool as much of the funds remaining in the ISHP Settlement Pool as are necessary to satisfy the ISHP Group Reversion Amount.

(h)        Under no circumstances shall the GSK Defendants be liable for

collective payment of more than the Seventy Million Dollars ($70,000,000.00) to be paid by

GSK pursuant to this Agreement, regardless of the outcome of any disputes pursuant to

subparagraph (f) or the calculation of the ISHP Group Reversion amount pursuant to this

Paragraph.

8.        <u>Reasonable Best Efforts to Effectuate This Agreement</u>.  The undersigned parties

and their counsel agree to use their reasonable best efforts, including all steps and efforts

contemplated by this Agreement and any other steps and efforts that may be necessary or

appropriate, by order of the MDL Court or otherwise, to carry out the terms of this Agreement.

9.        <u>Motion for Preliminary Approval</u>.  Concurrent with the submission of this

Agreement for consideration by the MDL Court, Lead Class Counsel shall submit to the MDL

Court a motion for preliminary approval of the settlement set forth in this Agreement, which

requests entry of the Preliminary Approval Order substantially in the form annexed hereto as

<u>Exhibit B</u>, and which includes a provision that enjoins Class Members and ISHP Group

Members from litigating Released Claims pending final approval of the settlement.

10.        <u>Entry of Final Judgment</u>.  If, following the Settlement Fairness Hearing scheduled

by the MDL Court pursuant to the Preliminary Approval Order, the MDL Court approves this

Agreement, then counsel for the parties shall request that the MDL Court enter an Order and

Final Judgment substantially in the form annexed hereto as <u>Exhibit C</u>.

11.        <u>Notice to AWP Payor Classes</u>.

(a)        In the event the MDL Court preliminarily approves the Settlement

set forth in this Agreement, Lead Class Counsel shall, in accordance with Rule 23 of the Federal

Rules of Civil Procedure and the Preliminary Approval Order, provide all those members of the

AWP Payor Classes who can be identified by reasonable means with the best notice practicable

under the circumstances, as ordered by the MDL Court, in substantially the form annexed hereto

as Exhibits 1 and 2 of Exhibit B or as otherwise ordered by the MDL Court, which shall include

publication on a web site established by Lead Class Counsel or the Claims Administrator.

(b)     As part of the class notice program referenced above, Lead Class

Counsel will seek, through the MDL Court if necessary, information from CMS concerning the

identity, contact (including last known address) and payment information of individuals who

may be members of the Medicare Co-payment Class who may have made a payment, or incurred

a currently enforceable obligation to make a payment, under Medicare Part B for the GSK

manufactured drugs Zofran (in its injectible forms) and Kytril (in its injectible forms, through the

date it was divested by GSK in December 2000).  This information will be utilized to provide

notice to such individuals during the class notice and class claims administration process if, and

only if, such information can be obtained from CMS within a reasonable time period.

"Reasonable" as used in this subparagraph shall be determined at the sole discretion of Lead

Class Counsel, subject to review by the MDL Court.

(c)     All costs of notice to the AWP Payor Classes shall be paid

exclusively from the Settlement Fund or, if there is a State Reversion Amount as described in

Paragraph 6(f) above, then pursuant to the provisions of that Paragraph 6(f), but in no event shall

any of the GSK Defendants be responsible for payment of notice costs to the AWP Payor

Classes.

12.     Class Claims Process.

(a)        The minimum requirements for a Class Member's claim to be considered valid are set forth in Exhibit G, which is incorporated herein by reference and will be submitted to the MDL Court for preliminary approval.  Lead Class Counsel, in consultation with Consumer Allocation Counsel, TPP Allocation Counsel and counsel for GSK, have established for purposes of this Agreement a "Recognized Claim Percentage" associated with each Medicare Part B drug manufactured by GSK and set forth on Exhibit A, and have created a schedule of such Recognized Claim Percentages and a description of the claims payment procedures for the AWP Payor Classes and the calculation of recognized claims of ISHP Group Members, as described in Exhibit G.  As set forth in Exhibit G, the Recognized Claim Percentages differ according to whether the drug to which the claim relates is a "GSK Category A Drug" (Zofran and Kytril injectibles), which have the highest Recognized Claim Percentages, or a "GSK Category B Drug" (other GSK Medicare Part B-covered Drugs), which have significantly lower Recognized Claim Percentages.  The applicable Recognized Claim Percentage for each GSK drug will be applied to the purchase amount claimed by each Class Member, ISHP Group Member or TPP Claimant who makes an Authorized Claim for that drug in order to determine the total payment to be made to each Class Member, ISHP Group Member or TPP Claimant deemed to be eligible for such payments through the claims process (the "Recognized Claim Amount").

(b)        In addition to the application of the Recognized Claim Percentage, a Minimum Payment shall be made to all Consumer Class Members who file a valid claim and whose Recognized Claim Amount falls below a certain amount, all as set forth on Exhibit G.

(c)        As set forth in Exhibit G, a claim may be made pursuant to this Agreement on behalf of a TPP Class Member or ISHP Group Member by an agent thereof,

including the third-party administrator of a TPP Class Member's or an SFP's prescription drug

benefit plan, if the agent has the legal authority to make such a claim pursuant to contract and the

TPP Class Member or SFP authorizes the agent to make such a claim.

13.    <u>Effective Date</u>.  The settlement detailed in this Agreement shall be effective on

the first date after all of the following events have occurred:

(a)        entry of the Preliminary Approval Order substantially in the form

annexed hereto as <u>Exhibit B</u>, or entry of a Preliminary Approval Order not substantially in the

form of annexed hereto with respect to which neither party invokes any rights of termination

pursuant to Paragraph 14 below;

(b)     final approval by the MDL Court of this Class Settlement,

following notice to members of the AWP Payor Classes and a hearing, as prescribed by

Rule 23 of the Federal Rules of Civil Procedure; and

(c)     entry by the MDL Court of an Order and Final Judgment,

substantially in the form set forth in <u>Exhibit C</u> annexed hereto, and the expiration of any

time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and

not dismissed, after such Order and Final Judgment is upheld on appeal in all material

respects and is no longer subject to review upon appeal or review by writ of certiorari, or,

in the event that the MDL Court enters an order and final judgment in form other than that

provided above ("Alternative Judgment") and none of the parties hereto elect to terminate

this Class Settlement as permitted by Paragraph 14, the date that such Alternative Judgment

becomes final and no longer subject to appeal or review.

14.    <u>Termination.</u>  GSK's Counsel and Lead Class Counsel shall each have the right to

terminate the Settlement and this Agreement by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of:  (a) the MDL Court declining to enter the Preliminary Approval Order substantially in the form annexed hereto as Exhibit B; (b) a decision by the MDL Court declining to approve this Agreement or any material part of it; (c) the MDL Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit C; (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.  A modification at any stage or reversal on appeal of (1) any amount of Class Counsels' attorneys' fees and expenses requested by Lead Class Counsel from the Settlement Fund, (2) the amount of incentive fees to be awarded to named Class Representatives or (3) the proposed plan of allocation set forth in Paragraphs 3 and 4 of this Agreement, shall not constitute a material change that would entitle a party to terminate the Settlement pursuant to this paragraph.  Should the MDL Court decline to certify a class or classes encompassing all fifty states and the District of Columbia, GSK will be entitled to terminate the settlement.

        15.    Qualified Settlement Fund.  The Class Escrow Account, the PSEA and the LSEA, established pursuant to Paragraphs 3(a), 3(b) and 3(c) above, are each intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  Whether or not final approval of this settlement has occurred, and whether or not the Class Escrow Account, the PSEA or the LSEA qualifies as a qualified settlement fund within the

meaning of Treas. Reg. § 1.468B-1, the Escrow Agents shall cause to be paid from the Class

Escrow Account, the PSEA, and the LSEA any taxes or estimated taxes due on any income

earned on the funds in those accounts, and all related costs and expenses.  The parties elect that

the Class Escrow Account, the PSEA and the LSEA should be treated as qualified settlement

funds from the earliest possible date and agree to make any "relation back" election that may be

available.  If amounts received by Class Members, the Participating State Plaintiffs, the

Additional Participating State Plaintiffs or by GSK upon any refund or other reversion, are

construed to be income, it is the recipient's sole responsibility to pay taxes on the amount

construed to be income, plus any penalties or interest.

16.    <u>Modification of the Settlement Fund and TPP Opt-Out Provisions</u>.  As detailed in

the proposed Settlement Notices attached hereto as <u>Exhibits 1 and 2</u> to <u>Exhibit B</u>, all requests to

opt out of any of the AWP Payor Classes must be received no later than fifteen (15) days before

the final approval hearing set by the MDL Court.

17.    <u>Refunds to GSK for TPP Opt-Outs/TPP Opt-Out Requirements</u>

(a)    <u>Refunds for TPP Opt Outs</u>.  In the event there are any TPP Opt-Outs,

namely TPPs that validly and timely request exclusion from the Medigap TPP Class or the

Private Payor Class (neither of which include ISHP Group Members), GSK shall be entitled to a

refund for each such TPP Opt-Out in an amount equal to $45,850,000.00 (which is 70% of

$65,500,000.00) times a percentage derived by dividing the amount of each such TPP Opt-Out's

Recognized Claim Amount (calculated, by the Claims Administrator, in the same manner that

the Recognized Claim for a TPP remaining in the Class or an ISHP Group Member would be

calculated) by the total of all Recognized Claims of (a) all TPP Class Members who file

acceptable claims, (b) all ISHP Group Members, and (c) all TPP Opt-Outs (the "GSK Opt-Out Refund").  All such GSK Opt-Out Refunds shall be paid to GSK in accordance with the provisions of Paragraph 22 (b)(v) below.  Upon receipt of any refund under this paragraph, thirty-three percent (33%) of the total refund due GSK pursuant to this Paragraph resulting from TPP Opt-Outs, shall be retained in a separate interest-bearing account by GSK (the "GSK Opt-Out Refund Account") until any claims by Lead Class Counsel for attorneys fees relating to any TPP Opt-Outs with whom GSK settles have been resolved, but for no more than two years.  GSK shall notify Lead Class Counsel of any settlement between GSK and a TPP Opt-Out or group of TPP Opt-Outs within ten (10) days of execution of any settlement agreement between GSK and a TPP Opt-Out or group of TPP Opt-Outs.  Within thirty (30) days of (1) notification by GSK of such settlement or (2) the payment of the refund to GSK pursuant to this Paragraph, whichever is later, Lead Class Counsel shall submit to the MDL Court any motion for costs and expenses, including attorneys' fees, with respect to any portion of the refund amount paid to GSK that is attributable to a TPP Opt-Out with whom GSK has reached a settlement.  The Court's decision on the motion by Lead Class Counsel shall be final and non-appealable and GSK shall distribute monies from the GSK Opt-Out Refund Account in accordance with the MDL Court's decision.

The total amount of the Settlement Fund shall be reduced by the amount of the total GSK Opt-Out Refunds, including for purposes of determining the final amount of the class attorneys fee award.  The reduction shall be shared equally by the TPP Settlement Pool and the ISHP Settlement Pool.

(b) <u>TPP Opt-Out Requirements.</u>  For purposes of implementation of this Agreement, including this Paragraph 17, a TPP Opt-Out (which does *not* include any ISHP Group Member) will be required to file a TPP Notice of Exclusion, as will be set forth in the preliminary approval

order issued by the MDL Court.  Each TPP Opt-Out will be requested, as part of its Notice of

Exclusion, to provide reasonable confirmation that its payments were based on the AWP of the

GSK Drugs listed on Exhibit A and the amount of its purchases for each such drug during the

Class Period, in order to demonstrate that it would otherwise be a TPP Class member and that it

wishes to opt-out of the AWP Payor Classes.  If additional information is needed by the parties

hereto or the Claims Administrator from any TPP Opt-Out to implement this Paragraph or any

other provision of this Agreement, the parties shall cooperate to obtain such information from the

TPP Opt-Out, including, but not limited to, seeking an order of the MDL Court to obtain such

information.

(c)     Determination of TPP Opt-Out Amounts and GSK Opt-Out Refund, and Dispute

Resolution Process.  The Claims Administrator shall in the first instance calculate the GSK Opt-

Out Refund due under this Paragraph for each valid TPP Opt-Out, as well as the total GSK Opt-

Out Refund due to GSK hereunder.

(1)     If GSK Counsel, Lead Class Counsel or ISHP Group Counsel

dispute the refund amount determined by the Claims Administrator, or if GSK Counsel, Lead

Class Counsel or ISHP Group Counsel determine that they have received insufficient purchase or

other information from the Claims Administrator or any TPP Opt-Out to determine the amount

of the total GSK Opt-Out Refund due and, therefore, a dispute exists regarding the amount of the

GSK Opt-Out Refund, the parties, the Claims Administrator and the TPP Opt-Out(s) shall

attempt informally to resolve any such dispute.

(2)     As part of any attempt to resolve such dispute, the Claims

Administrator, upon request by GSK Counsel, Lead Class Counsel or ISHP Group Counsel, shall

seek additional information from the TPP Opt-Out and/or provide GSK Counsel, Lead Class

Counsel and ISHP Group Counsel with such additional claims information and data as is

reasonably necessary for GSK, Lead Class Counsel and ISHP Group Counsel to evaluate the

validity of the refund calculation.

(3)     If the TPP Opt-Out does not provide such additional information

after the parties make reasonable efforts to obtain it, then the parties shall undertake good faith

efforts to estimate the TPP Opt-Out amount and the GSK Opt-Out Refund using publicly

available or other more easily obtainable information about the TPP Opt-Out, such as the TPP

Opt-Out's number of covered lives.

(4)     The parties agree promptly to submit any unresolved disputes

concerning TPP Opt-Out amounts and/or the GSK Opt-Out Refund due to the MDL Court, and

the MDL Court's decision shall be binding and final and the parties waive any right to appeal.

18.     <u>Attorneys' Fees</u>.

(a)     Understanding that the award of attorneys' fees for Class Counsel is

a matter committed to the sole discretion of the MDL Court, the GSK Defendants will not

object to Class Counsel's request to the MDL Court for an attorneys' fee to be paid out of

the Settlement Fund or to any petition for fees on amounts returned to GSK and held in the

GSK Opt-Out Refund Account pursuant to Paragraph 17(a).

(b)     ISHP Group Counsel have agreed to forgo seeking (1) a separate

counsel fee in the MDL Actions, and (2) any fee from GSK in connection with their work

concerning any of the Released ISHP Claims, and in lieu thereof will accept as payment of

ISHP Counsel Fees an amount negotiated between ISHP Group Members and Lead Class

41

Counsel, in accordance with the conditions set forth in a separate agreement between Lead

Class Counsel and ISHP Group Counsel, which agreement shall be identified to the MDL

Court in accordance with Fed.R.Civ.P 23(e).

19.     <u>All Class Claims Satisfied by Settlement Fund</u>.  Each Class Member and each

ISHP Group Member shall look solely to the Settlement Fund for settlement and satisfaction, as

provided herein, of all Released Class Claims and all Released ISHP Claims.

20.     <u>Payment of Expenses</u>.  The Defendants shall not be liable for any of the expenses

of the litigation of the MDL Class Actions or the pursuit of any of the Released ISHP Claims,

including without limitation attorneys' fees, fees and expenses associated with the provision of

notice to the members of the AWP Payor Classes, and claims administration, fees and expenses

incurred in administering the Class Escrow Account or the Settlement Fund, fees and expenses

of expert witnesses and consultants, and expenses associated with discovery, motion practice,

hearings before the Court and/or appeals.  All such fees and expenses as are approved by the

MDL Court shall be paid out of the Settlement Fund in accordance with this Agreement.

21.     <u>Court Approval of Disbursements and Distributions</u>.  Court approval shall be

required prior to any disbursement or any distribution from the Settlement Fund, but not for any

fees and expenses incurred to administer the PSEA, the LSEA, the Class Escrow Account and

the Settlement Fund under the Class Escrow Agreement, or taxes on the Settlement Fund, the

PSEA or the LSEA.

22.     <u>Disbursements and Distributions from the Settlement Fund</u>.  The Settlement Fund

shall be distributed as follows or as otherwise ordered by the Court:

(a)      Prior to the Effective Date of this Agreement:

(i)      Any fees and expenses incurred in administering the Class Escrow Account and the Settlement Fund shall be paid pursuant to the Class Escrow Agreement.  The costs of notice and claim administration of the Settlement shall be paid by the Escrow Agent to the Claims Administrator as approved by the MDL Court and at the direction of Lead Class Counsel with notice of such payments provided to counsel for GSK.;

(ii)      Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund, shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel and GSK.

(iii)      Any attorneys' fees and litigation expenses awarded by the MDL Court to Class Counsel in connection with Final Approval of this Settlement Agreement by the MDL Court.  Such attorneys fees and litigation expenses shall be paid to Lead Class Counsel for distribution to Class Counsel and then, in accordance with a separate agreement on legal fees, to ISHP Group Counsel.  Notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, any attorneys' fees and litigation expenses awarded by the MDL Court in connection with the Final Approval of this Settlement Agreement shall be paid by the Class Escrow Agent promptly after entry of the order awarding such fees and expenses, subject to Lead Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if any, as a result of any GSK Opt-Out Refund pursuant to Paragraph 17(a), or if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral

attack, the fee or expense award is reduced or reversed, or the settlement is terminated pursuant to Paragraph 14 of this Agreement.

(iv)     Payment shall be made, pursuant to Paragraph 7(a) of this Agreement, of the ISHP Initial Payment.

(v)     Payment shall be made of the Connecticut Non-Medicaid Purchase Payment, pursuant to Paragraphs 5(a) and 5(e) of this Agreement.

(b)     After the Effective Date of this Agreement the Settlement Fund shall be distributed as follows:

(i)     First, any remaining fees or expenses incurred in connection with the administration of the Class Escrow Account and the Settlement Fund shall be paid pursuant to the Class Escrow Agreement, and to the extent, if any, the reasonable fees and expenses incurred as part of notice and claims administration of the Settlement have not been paid, such fees and expenses shall be distributed to the Claims Administrator by the Escrow Agent with notice of such disbursements provided to the Lead Class Counsel;

(ii)     Second, disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel;

(iii)     Third, any incentive award determined by the MDL Court for services rendered to the AWP Payor Classes by the Named Class Representatives, either in the amounts to be recommended by Lead Class Counsel as set forth in the proposed notice

forms attached hereto as <u>Exhibit B</u> or as otherwise ordered by the MDL Court, shall be distributed to the Named Class Representatives  ;

(iv)     The Settlement Fund Amount, net of (1) payment of attorneys fees and expenses pursuant to Paragraph 22 (a) (iii), and (2) payment of other fees, costs, expenses and awards provided for in Paragraph 22 (a) (i) and (ii) and 22 (b) (i), (ii) and (iii), shall be segregated thirty percent (30%) for the benefit of Consumers (the "Consumer Settlement Pool") and thirty-five percent (35%) for the benefit of TPP Class Members (the "TPP Settlement Pool") and thirty-five percent (35%) for the benefit of ISHP Group Members (the "ISHP Settlement Pool");

(v)     Fourth, the payment to GSK of any GSK Opt-Out Refunds attributable to TPP Opt-Outs under Paragraph 17.  Any such GSK Opt-Out Refund shall be deducted from the TPP Settlement Pool and the ISHP Settlement Pool only, in equal amounts;

(vi)     Fifth, payments, if any, to any non-Medicaid state programs that are determined by the Claims Administrator to be entitled to a payment under Paragraph 5(e) and (6)(d) hereunder, except that the Connecticut Non-Medicaid Purchase Payment shall be made prior to the Effective Date as set forth in Paragraph 22 (a) (v) above. Any such payments shall be deducted from the TPP Settlement Pool and the ISHP Settlement Pool only, in equal amounts;

(vii)     Sixth, the balance of the Consumer Settlement Pool after deducting the above fees, expenses, costs and awards (the "Net Consumer Settlement Pool"), shall be payable to Consumer Class Members who submit Proofs of Claim that are accepted by

the Claims Administrator and approved by the MDL Court ("Authorized Consumer Claimants") in accordance with the applicable "Recognized Claim Percentages" established pursuant to Paragraph 12.

> a. If the amount of the Net Consumer Settlement Pool is not sufficient to pay each Authorized Consumer Claimant his or her Recognized Claim Amount as set forth herein, then each Authorized Consumer Claimant shall be paid their *pro rata* share of the claimants' Recognized Claim Amount, subject to any minimum payment(s) established by the MDL Court.  In no event shall GSK be required to pay additional funds hereunder.

> b. If, on the other hand, there are any unclaimed monies in the Net Consumer Settlement Pool after all Authorized Consumer Claimants have been paid according to the applicable Recognized Claim Percentage or the single minimum payment authorized by the Court, then Consumer Allocation Counsel, TPP Allocation Counsel, ISHP Group Counsel, Counsel for the Participating State Plaintiffs and Counsel for any Additional Participating State Plaintiffs will have an opportunity to participate in a binding mediation with the MDL Mediator to determine how any unclaimed monies should be divided between (1) the States participating in the mediation, (2) Consumers,  (3) TPPs and (4) ISHPs.  It is GSK's position that, in such a mediation, the MDL Mediator should not award any such unclaimed funds from the Net Consumer Settlement Pool to the TPPs or the ISHPs.  The MDL Mediator's decision concerning how any such unclaimed funds should be distributed shall be binding as between the parties thereto, but shall be submitted to the MDL Court for review and approval (not subject to objection by any

of the parties) and incorporation into an Order directing the Escrow Agent to make

disbursements in accordance thereto.  It is agreed that under no circumstances are any

such unclaimed funds in the Net Consumer Settlement Pool to revert to any GSK

Defendant.

(viii)    Seventh, any ISHP Group Reversion Amount shall be

paid from or to the ISHP Settlement Pool or the TPP Settlement Pool as provided in Paragraph

7 above;

(ix)    Eighth, the balance of the TPP Settlement Pool after the

payment of the above fees, expenses, costs, awards and any GSK Opt-Out Refund pursuant to

Paragraph 17 above (the "Net TPP Settlement Pool"), shall be payable to TPP Class Members

who submit Proofs of Claim that are accepted by the Claims Administrator and approved by

the Court ("Authorized TPP Claimants"), in accordance with the applicable "Recognized

Claim Percentages" established pursuant to Paragraph 12.

a.    In the event that the Net TPP Settlement Pool is less

than or equal to One Hundred Percent (100%) of the total Recognized TPP Claims of

all Authorized TPP Claimants, the Authorized TPP Claimants shall be paid the

balance of the Net TPP Settlement Pool in proportion to their Recognized Claim

Amounts, *i.e.*, their *pro rata* share.  In no event shall GSK be required to pay

additional funds hereunder.

b.    If, on the other hand, the Net TPP Settlement Pool

is greater than One Hundred Percent (100%) of the total Recognized TPP Claims of all

Authorized TPP Claimants, the Authorized TPP Claimants shall be paid the full amount of their

Recognized Claims, and disposition of the balance of the Net TPP Settlement Pool remaining after such payment shall be determined by the MDL Court on the motion of Lead Class Counsel.

23.   Class Releases.

Upon the Effective Date of this Agreement in accordance with Paragraph 13 above, the GSK Releasees (as defined in Paragraph 2 (v) above) shall be released and forever discharged by the Class Releasors from all Released Class Claims, as defined in Paragraph 2(oo) above.  All Class Releasors hereby covenant and agree that they shall not hereafter seek to establish liability against any GSK Releasee based, in whole or in part, on any of the Released Class Claims.  In addition, each Class Releasor hereby expressly waives and releases, upon the Settlement Agreement becoming effective, any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Class Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 23, but each Class Releasor hereby expressly waives and fully, finally and forever settles and releases, upon this Agreement becoming effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Class Claims with respect to the subject matter of this Paragraph 23 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Releasee also hereby

expressly waives and fully, finally and forever settles and releases any and all Released Class

Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and

Professions Code relating to any drug price published by any commercial price reporting service,

or provided by any GSK Releasee to any such commercial price reporting service  (including,

but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing

activity relating to any such price, such as any reference to the difference between (1) a price

paid and (2) any reported price or reimbursement rate based on such a reported price, arising

from the facts alleged in the MDL Complaints concerning the GSK drugs listed on Exhibit A,

which claims are expressly incorporated into this Paragraph 23.

24.      ISHP Group Releases.  Upon execution of this Agreement and payment of the

ISHP Group Initial Payment, the GSK Releasees (as defined in Paragraph 2 (v) above) shall be

released and forever discharged by the ISHP Group Releasors from all Released ISHP Claims as

defined in Paragraph 2(pp) above.  All ISHP Group Releasors hereby covenant and agree that

they shall not hereafter seek to establish liability against any GSK Releasee based, in whole or in

part, on any of the Released ISHP Claims.  In addition, each ISHP Group Releasor hereby

expressly waives and releases, upon receipt of the ISHP Group Initial Payment, any and all

provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to
> claims which the creditor does not know or suspect to exist in his favor at the time
> of executing the release, which if known by him must have materially affected his
> settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to § 1542 of the California Civil Code.  Each ISHP Group

Releasor may hereafter discover facts other than or different from those which he, she or it

knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 24, but each ISHP Group Releasor hereby expressly waives and fully, finally and forever settles and releases, upon receipt of the ISHP Group Initial Payment, any known or unknown, suspected or unsuspected, contingent or non-contingent Released ISHP Claims with respect to the subject matter of this Paragraph 24 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each ISHP Group Releasor also hereby expressly waives and fully, finally and forever settles and releases any and all Released ISHP Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code relating to any drug price published by any commercial price reporting service, or provided by any GSK Releasee to any such commercial price reporting service  (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price) and/or to any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, arising from the facts alleged in the MDL Complaints concerning the GSK drugs listed on Exhibit A, which claims are expressly incorporated into this Paragraph 24.

25.      Reservation of Claims.  Notwithstanding Paragraphs 23 and 24 above, "Released Class Claims" and "Released ISHP Claims" shall not include any claim against any person or entity that is not a GSK Releasee, any claim arising out of this Agreement, any claim between any Class Member or ISHP Group Member and any GSK Releasee that is unrelated to the allegations of the MDL Complaints, including unrelated breach of contract or ecomomic injury claims, any product liability, breach of warranty, personal physical injury or intellectual property claim, any claim relating to the efficacy, safety or manufacture of GSK products, and any claim by any governmental entity (including any state Medicaid program or agency) that is not a

member of the MediGap TPP Class or Private Payor Class as defined herein.  Moreover, the

releases in Paragraph 23 and 24 shall not act as a release of any claim that any governmental

entity has or may have with respect to any purchases of GSK physician administered or

Medicare Part B covered drug by the governmental entity which does not relate to the allegations

in the MDL Complaints.

26.     Settlement of Additional Matters.  GSK will separately negotiate an agreement

concerning the stay and dismissal of the claims against GSK in the case entitled *Swanston v. TAP*

*Pharmaceutical Products, Inc.*, No. CV 2002-004988 (Super. Ct. Ariz.) a class action originally

filed in state court in Arizona ("*Swanston*")  as well as the case entitled *International Union of*

*Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca PLC, et al.*, No. C-193-03

(Super. Ct. N.J.) a class action originally filed in state court in New Jersey ("*International*

*Union*").  Counsel for the Class Plaintiffs signing this GSK MDL Class Agreement include the

firm of Kline & Specter, P.C., who are also counsel for the plaintiffs in *Swanston* and

*International Union*.  Resolution of the *Swanston* and *International Union* matters will be subject

to separate settlement agreements without payment of additional monetary or other consideration

by any GSK Defendant for any purpose whatsoever.  The parties' obligations under this

Agreement are not contingent upon the consummation of separate settlement agreements in the

*Swanston* and *International Union* matters.

27.     Preservation of Rights.  The parties hereto agree that this Agreement, whether or

not the Effective Date occurs, and any and all negotiations, documents and discussions

associated with it shall be without prejudice to the rights of any party (other than those that have

been compromised herein); shall not be deemed or construed to be an admission or evidence of

any violation of any statute or law, of any liability or wrongdoing by the GSK Defendants or of

the truth of any of the claims or allegations contained in any complaint or any other pleading, whether in the AWP Actions or in any other action or proceeding. The parties expressly reserve all their rights if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

28.   <u>Effect of Termination</u>.

(a)   <u>Return of Settlement Funds to GSK</u>. If this Agreement is terminated pursuant to Paragraph 14 hereto, or the Effective Date is prevented from occurring for any reason, then the Settlement Fund and any undisbursed amounts from the PSEA and LSEA, together with any accrued income, shall be returned to GSK net of (i) taxes paid or due to be paid on the Class Escrow Account, the PSEA and the LSEA, (ii) the fees and costs paid or incurred for notice and administration of the Settlement, (iii) any fees or costs paid or incurred for administration of the Class Escrow Account, the PSEA and the LSEA, (iv) any amounts paid to ISHP Group Members as part of the ISHP Group Initial Payment, which payment triggered the ISHP Group Releases in Paragraph 24 herein and (v) $3,400,000.00 of the funds remaining in the ISHP Settlement Pool within the Class Escrow Account, which shall be disbursed in accordance with subparagraph b immediately below. In addition, if this Agreement is terminated pursuant to Paragraph 14 hereto, or the Effective Date is prevented from occurring for any reason, then (a) this Agreement shall be of no force or effect, except for (i) payment of notice and administrative fees and costs or refunds as referenced herein from the Settlement Fund, and (ii) the provisions related to payment of the ISHP Initial Payment Amount, the release provided to the GSK Defendants by the ISHP Group Releasors pursuant to Paragraph 24, and the payment of $3,400,000.00 of the funds remaining in the ISHP Settlement Pool to ISHP Counsel pursuant to subparagraph b immediately below; (b) any release by Class Members or Named Class

Representatives pursuant hereto shall be of no force or effect; and (c) the parties shall request the

MDL Court to vacate any order certifying the AWP Payor Classes defined in Paragraph 1 hereto.

The parties expressly reserve all of their rights if this Agreement is terminated or does not

become final and effective.

(b)     If this Settlement Agreement is not reconstituted by the parties hereto

within thirty (30) months from the date of Termination pursuant to Paragraph 14 or the date the

Effective Date is prevented from occurring for any reason, whichever is later, ISHP Group

Members shall be entitled to payment of $3.4 million from the funds remaining in the ISHP

Settlement Pool within the Class Escrow Account for distribution as appropriate to the ISHP

Group Members.

29.     <u>No Admission</u>.  Nothing in this Agreement shall be construed as an admission in

any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court,

administrative agency, regulatory body or any other body or authority present or future, by any

GSK Defendant including, without limitation, that the GSK Defendants have engaged in any

conduct or practice that violates any unfair and deceptive trade practices statute or other law.

Neither this Agreement, nor any negotiations preceding it, nor any proceedings undertaken in

accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or

an admission or concession by any GSK Defendant as to the validity of any claim that AWP

Plaintiffs or the AWP Payor Classes have or could have asserted against them or as to any

liability by them, which liability is hereby expressly denied and disclaimed by the GSK

Defendants.  Neither this Agreement, nor any of its provisions, nor any statement or document

made or filed in connection herewith nor the fact of this Agreement, shall be filed, offered,

received in evidence or otherwise used in any action or proceeding or any arbitration, except in

connection with (a) settlement discussions in other matters; (b) the parties' application for approval or enforcement of this Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the AWP Payor Classes or ISHP Group Members, and (c) any other disputes arising from this Agreement.

30.     <u>Class Certification for Settlement Purposes Only</u>.  The GSK Defendants conditionally agree and consent to certification of the AWP Payor Classes described in Paragraph 1 above for settlement purposes only, and for the sole purpose of creating those settlement classes.  The GSK Defendants' conditional agreement is contingent upon the execution by the parties of this Agreement and that this Agreement is finally approved by the MDL Court and is not terminated pursuant to this Agreement.  If this Agreement is for any reason not finally approved, or is otherwise terminated, the GSK Defendants reserve the right to reassert all of their objections and defenses to certification of any class for trial purposes, and neither Plaintiffs nor Class Counsel will offer the GSK Defendants' conditional agreement to certification of any of the AWP Payor Classes as part of this Agreement as any evidence in support of a motion to certify any class for trial purposes.

31.     <u>Stay and Resumption of Proceedings</u>.  The parties agree, subject to the preliminary approval of the MDL Court of the Settlement, that all proceedings in the MDL Class Actions as related to GSK and any proceedings asserting any of the Released ISHP Claims, other than proceedings relating to the Settlement contemplated herein (including but not limited to providing Notice of the Pendency of this action against the GSK Defendants as a class action), shall be stayed except to the extent discovery is necessary with respect to information required to effectuate notice to Class Members and for purposes of administering and consummating this Agreement.  In the event that this Agreement is not approved by the MDL Court or the

settlement is terminated or the Effective Date is prevented from occurring, all such stayed

proceedings in the MDL Class Action as related to GSK will resume in a reasonable manner to

be approved by the MDL Court.

32.    <u>Dismissal of Claims</u>.  The parties agree that upon the Effective Date of this

Agreement in accordance with Paragraph 13 above, all Released Class Claims shall be dismissed

with prejudice.  In addition, all claims against GSK in the MDL Class Actions that are not

Released Class Claims shall be dismissed without prejudice, except that any claims against GSK

related to the Together Rx Card shall be dismissed with prejudice, all in accordance with the

Final Order and Judgment Granting Final Approval, substantially in the form set forth in <u>Exhibit

C</u> annexed hereto.  In Addition, upon the receipt of the ISHP Group Initial Payment, counsel for

the ISHP Group Members shall cause all Released ISHP Claims that have been filed in any

forum (if any) to be dismissed with prejudice.

33.    <u>Consent to Jurisdiction</u>.  GSK, Class Plaintiffs and the ISHP Group Members

hereby irrevocably submit to the exclusive jurisdiction of the MDL Court only for the specific

purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or

the applicability of this Agreement.

34.    <u>Resolution of Disputes: Retention of Jurisdiction</u>.  Any disputes between or

among GSK and any Class Members or ISHP Group Members concerning matters contained in

this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to

the MDL Court.  The MDL Court shall retain jurisdiction over the implementation and

enforcement of this Agreement.

35.    <u>Enforcement of Agreement</u>.  Notwithstanding Paragraph 29 above, this

Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Class Claims or Released ISHP Claims and may be filed, offered and received into evidence and otherwise used for such defense.

36.    <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

37.    <u>Authorization to Enter Agreement</u>.  The undersigned representatives of the GSK Defendants represent that they are fully authorized to enter into and to execute this Agreement on behalf of the GSK Defendants.  Lead Class Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Class Representatives and Class Members and to enter into, and to execute, this Agreement on behalf of the Class Representatives and Class Members, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).  ISHP Group Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel and Lead Class Counsel on behalf of the ISHP Group Members and to enter into, and to execute, this Agreement on behalf of the ISHP Group Members.

38.    <u>No Party Is the Drafter</u>.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

39.    <u>Choice of Law</u>. All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of Massachusetts without regard to its choice of law or conflict of laws principles.

40.     <u>Amendment or Waiver</u>. This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

41.     <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts. Facsimile or pdf signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the MDL Court.

42.     <u>Integrated Agreement</u>. This Agreement, including the exhibits hereto, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto.

43.     <u>Construction</u>. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the GSK Releasees.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date first herein above written.

DATED:  August 10, 2006                    COUNSEL FOR CLASS PLAINTIFFS

By_____

    Steve W. Berman
    Sean R. Matt
    HAGENS BERMAN SOBOL
    SHAPIRO LLP
    1301 Fifth Avenue, Suite 2900
    Seattle, WA  98101
    Telephone: (206) 623-7292
    Facsimile: (206) 623-0594

    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
    David S Nalven (BBO#547220)
    HAGENS BERMAN SOBOL
    SHAPIRO LLP
    One Main Street, 4th Floor
    Cambridge, MA  02142
    Telephone: (617) 482-3700
    Facsimile: (617) 482-3003

    Elizabeth Hartweg Fegan
    HAGENS BERMAN SOBOL
    SHAPIRO LLP
    60 W. Randolph Street, Suite 200
    Chicago, IL  60601
    Telephone: (312) 762-9235
    Facsimile: (312) 762-9286

By _____
    Eugene A. Spector
    Jeffrey L. Kodroff
    John Macoretta
    SPECTOR, ROSEMAN
    & KODROFF,  P.C.
    1818 Market Street, Suite 2500
    Philadelphia, PA  19103
    Telephone: (215) 496-0300
    Facsimile: (215) 496-6611

By _____
    Marc H. Edelson
    EDELSON & ASSOCIATES, LLC,
    45 West Court Street
    Doylestown, PA  18901
    Telephone: (215) 230-8043
    Facsimile: (215) 230-8735

By _____
    Kenneth A. Wexler
    Jennifer F. Connolly
    THE WEXLER FIRM LLP
    One North LaSalle Street, Suite 2000
    Chicago, IL  60602
    Telephone: (312) 346-2222
    Facsimile: (312) 346-0022

By_____

    Eugene A. Spector
    Jeffrey L. Kodroff
    John Macoretta
    SPECTOR, ROSEMAN
    & KODROFF,  P.C.
    1818 Market Street, Suite 2500
    Philadelphia, PA  19103
    Telephone: (215) 496-0300
    Facsimile: (215) 496-6611


By_____

    Marc H. Edelson
    EDELSON & ASSOCIATES, LLC,
    45 West Court Street
    Doylestown, PA  18901
    Telephone: (215) 230-8043
    Facsimile: (215) 230-8735


By_____

    Kenneth A. Wexler
    Jennifer F. Connolly
    THE WEXLER FIRM LLP
    One North LaSalle Street, Suite 2000
    Chicago, IL  60602
    Telephone: (312) 346-2222
    Facsimile: (312) 346-0022

By _____

Shanin Specter
Donald E. Haviland, Jr.
KLINE & SPECTER, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1359

DATED: August ___, 2006          COUNSEL FOR THE INDEPENDENT
                                 SETTLING HEALTH PLANS


_____

Richard W. Cohen
Lowey, Dannenberg, Bemporad &
Selinger, P.C.
The Gateway
1 N Lexington Ave
White Plains, NY 10601-1712
Telephone: (914) 997-0500
Facsimile: (914) 997-0035


_____

W. Scott Simmer, Partner
Robins, Kaplan, Miller & Ciresi L.L.P.
Suite 1200
1801 K Street NW
Washington, DC 20006
Telephone: 202.775.0725
Facsimile: 202.223.8604

60

DATED:  August _9_, 2006

COUNSEL FOR DEFENDANT
SMITHKLINE BEECHAM
CORPORATION, D/B/A
GLAXOSMITHKLINE ("GSK")


By _____

Frederick G. Herold
DECHERT LLP
1117 California Avenue
Palo Alto, CA 94304
Telephone:  (650) 813-4930
Facsimile: (650) 813-4848

Mark H. Lynch
Geoffrey E. Hobart (BBO #547499)
Ronald G. Dove, Jr.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 662-6000
Facsimile:   (202)662-6291

Mark D. Seltzer (BBO#556341)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone:  (617) 523-2700
Facsimile:  (617) 523-6850

61

# EXHIBIT A

## GSK COVERED DRUGS

**Exhibit A -- GSK Covered Drugs**

| NDC | Drug | Description |
|-----|------|-------------|
| **GSK Category A Drugs** | | |
| 00029414901 | Kytril | KYTRIL INJ SINGLE DOSE VIAL 1MG/ML |
| 00029414975 | Kytril | KYTRIL INJ SGL DOSE VIAL 1MG/ML VHA |
| 00029415201 | Kytril | KYTRIL 1MG/ML INJECTION 4ML VIAL |
| 00173044200 | Zofran | ZOFRAN INJ 2MG/ML 20ML |
| 00173044202 | Zofran | ZOFRAN INJ 2MG/ML 2ML 5S |
| 00173046100 | Zofran | ZOFRAN INJ PRMXD 32MG/50ML |
| 00173046200 | Zofran | ZOFRAN INJ PRMXD 4MG/50ML |
| | | |
| **GSK Category B Drugs** | | |
| 00173004535 | Alkeran | ALKERAN TAB 2MG 50S |
| 00173013093 | Alkeran | ALKERAN I.V. INJ 50 MG |
| 00173044901 | Imitrex | IMITREX INJ 12MG/ML 0.5ML 2S PFLD SRNG |
| 00173044902 | Imitrex | IMITREX INJ 0.5ML 12MG/ML 5S VIALS |
| 00173044903 | Imitrex | IMITREX INJ 12MG/ML 0.5ML2S KIT,SELFDOSE |
| 00173047800 | Imitrex | IMITREX INJ 12MG/ML STAT DOSE RFL 2'S |
| 00173047900 | Imitrex | IMITREX INJ 12MG/ML STAT DOSE KIT |
| 00029415105 | Kytril | KYTRIL 1 MG TABS 20'S SUP |
| 00029415139 | Kytril | KYTRIL 1MG TABS 2'S |
| 00173026010 | Lanoxin | LANOXIN INJ 0.5MG |
| 00173026035 | Lanoxin | LANOXIN INJ 0.5MG 2ML 50S |
| 00173026210 | Lanoxin | LANOXIN INJ PEDIATRIC 0.1MG/ML |
| 00173071325 | Myleran | MYLERAN TAB 2MG 25S |
| 00173065601 | Navelbine | NAVELBINE INJ 10MG 1ML |
| 00173065644 | Navelbine | NAVELBINE INJ 50MG 5ML |
| 00173010793 | Retrovir | RETROVIR IV INF 10MG/ML 20ML 10 |
| 00173038558 | Ventolin | VENTOLIN SOL INH 0.5% 5MG/ML 20ML |
| 00173041900 | Ventolin | VENTOLIN NEB SOL INH    0.083% 3ML 25S |
| 00173044600 | Zofran | ZOFRAN TAB 4MG 30S |
| 00173044601 | Zofran | ZOFRAN TAB 4MG 100S |
| 00173044602 | Zofran | ZOFRAN TAB 4MG 100S UD |
| 00173044604 | Zofran | ZOFRAN TAB 4MG 3S |
| 00173044700 | Zofran | ZOFRAN TAB 8MG 30S |
| 00173044701 | Zofran | ZOFRAN TAB 8MG 100S |
| 00173044702 | Zofran | ZOFRAN TAB 8MG 100S UD |
| 00173044704 | Zofran | ZOFRAN TAB 8MG 3S |
| 00173048900 | Zofran | ZOFRAN ORAL SOL 4MG/5ML  50ML |
| 00173056900 | Zofran | ZOFRAN ODT 4MG 5X2 30S |
| 00173057000 | Zofran | ZOFRAN ODT 8MG 5X2 30S |
| 00173057004 | Zofran | ZOFRAN ODT 8MG 5X2 10'S |
| 00173068000 | Zofran | ZOFRAN TAB 24MG 1S |
| 00173095201 | Zovirax | ZOVIRAX FOR INJECTION 1000MG 20ML 10S (C |
| 00173099501 | Zovirax | ZOVIRAX FOR INJECTION 500MG 10ML 10S (C# |
| 00173036200 | Zantac | ZANTAC INJ 25MG/ML 2ML  PFLD SRNG |
| 00173036238 | Zantac | ZANTAC INJ 25MG/ML 2ML 10S |
| 00173036300 | Zantac | ZANTAC INJ 25MG/ML 40ML |
| 00173036301 | Zantac | ZANTAC INJ 25MG/ML 6ML |
| 00173036339 | Zantac | ZANTAC INJ 25MG/ML 10ML |
| 00173040700 | Zantac | ZANTAC INJ PRMXD 50MG/100ML 24S |
| 00173044100 | Zantac | ZANTAC INJ PRMXD 50MG/50ML 24S |

## EXHBIT B

[PROPOSED] PRELIMINARY APPROVAL ORDER

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| | Judge Patti B. Saris |
| ALL ACTIONS | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE**
**GLAXOSMITHKLINE SETTLEMENT, CERTIFYING CLASS FOR PURPOSES OF**
**SETTLEMENT, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS**
**HEARING**

WHEREAS, this matter has come before the Court pursuant to a *Joint Motion for*

*Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement,*

*and Approval of Form and Manner of Notice* (the "Motion")*; and*

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the

parties for purposes of settlement; and

WHEREAS, this Court has conducted a preliminary approval hearing on _____,

2006 and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

I.    **Preliminary Approval of Settlement Agreement and Certification**
**of Settlement Classes**

1.    The terms of the Settlement Agreement and Release of the GlaxoSmithKline

Defendants dated _____, 2006, including all Exhibits thereto, (the "Agreement")

85435-3                                        1

attached to the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. This Order incorporates herein, and makes a part hereof, the Agreement, including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the Agreement shall have the same meanings herein. The Agreement between the Plaintiffs and Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), which is, along with GlaxoSmithKline, plc and Glaxo Wellcome, Inc., a named defendant in the above-captioned matter (collectively the "GSK Defendants"), was entered into at arm's-length by experienced counsel for the parties to the Agreement and only after extensive arm's-length negotiation with counsel for the Attorneys General of the States of New York, Connecticut, Nevada, Montana, and Arizona (the "Participating State Plaintiffs"), as well as with counsel representing certain large health insurance companies and health plans identified in the Agreement as the "Independent Settling Health Plans," or "ISHPs." The Court finds that the settlement embodied in the Agreement (the "Settlement") is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in paragraphs 9 and 10 of this Order. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation.

2.     The Court has considered the voluminous submissions of the parties with regard to class certification, the Court's August 16, 2005 and January 30, 2006 *Orders Re: Motion for Class Certification*, and has analyzed the proposed AWP Payor Classes defined in the Agreement pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court preliminarily finds that the proposed nationwide AWP Payor Classes meet all the applicable requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and

85435-3                                                 2

hereby conditionally certifies the following nationwide Classes for settlement purposes only:

A.     Medicare Part B Co-Payment Class ("Medicare Co-Payment Class")

All natural persons in the United States who made, or who incurred a currently enforceable obligation to make, a co-payment based on AWP for a Medicare Part B covered drug manufactured by GSK set forth on Exhibit A hereto. Excluded from the class are persons who made flat co-payments, who were reimbursed in full for any co-payments, or who have the right to be fully reimbursed for any co-payments.

B.     Third-Party Payor MediGap Supplemental Insurance ("MediGap TPP Class")

All Third-Party Payors in the United States who made reimbursements for a Medicare Part B covered drug manufactured by GSK and set forth on Exhibit A hereto, based on AWP, during the Class Period.

C.     Consumer and Third-Party Payor Class for Payments Made for Medicare Part B Drugs Outside the Medicare Context ("Private Payor Class")

All natural persons in the United States who made, or who incurred a currently enforceable obligation to make, a payment for, and all Third Party Payors in the United States who made reimbursements based on contracts expressly using AWP as a pricing standard for purchases of, a physician administered drug manufactured by GSK set forth on Exhibit A hereto, during the Class Period. Excluded from the class are natural persons who made flat co-payments, who were reimbursed in full for any payments or co-payments, or who have the right to be fully reimbursed for any payments or co-payments.

The Class Period for the Medicare Co-Payment Class and the MediGap TPP Class is January 1, 1991 through January 1, 2005. The Class Period for the Private Payor Class is Janaury 1, 1991 through the date of the Agreement. Excluded from each of the AWP Payor Classes are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates. Excluded from the MediGap TPP Class and the Private Payor Class are: (1) the United States government and its agencies and departments, and all other governmental entities that

85435-3                                        3

made payments pursuant to any state's Medicaid program; (2) the Independent Settling Health Plans (ISHPs), as defined in Paragraph 2(w) of the Agreement; and (3) all federal, state or local governmental entities, *except for* the following, which are *not* excluded from the Medigap TPP or Private Payor Classes:  (a) non-Medicaid state or local government entities that made AWP-based prescription drug payments as part of a health benefit plan for their employees, but only with respect to such payments, and (b) other non-Medicaid state government agencies or programs of the Participating States and of the Additional Participating States, if any, *except that* such agencies and programs in New York and Connecticut *are* excluded.

3.       With respect to the AWP Payor Classes, the Court hereby incorporates the findings of its August 16, 2005 and January 30, 2006 *Orders Re: Motion for Class Certification* and further preliminarily finds that:

a.       *Numerosity.*  The AWP Payor Classes, consisting of hundreds of thousands of members located throughout the United States, satisfy the numerosity requirement of Fed. R. Civ. P. 23(a).  Joinder of these widely-dispersed, numerous Class Members into one suit would be impracticable;

b.       *Commonality.*  Common questions of law and fact with regard to the alleged activities of GSK exist for each of the members of the AWP Payor Classes in this case. These issues are central to this case and are sufficient to establish commonality;

c.       *Typicality.*  Plaintiffs have claimed during this litigation that GSK violated various state consumer protection statutes, RICO and other state and federal laws, by unlawfully manipulating Average Wholesale Prices ("AWPs") reported by various industry publications for the GSK drugs that are subject to this Settlement ("GSK Covered Drugs").  As a result, Class Members allegedly paid more for GSK Covered Drugs than they would have in the absence of the alleged unlawful conduct.  These claims are typical of every member of the AWP Payor

85435-3                                        4

Classes' claims.  Therefore, the element of typicality is satisfied;

        d.     *Adequate Representation.*  Plaintiffs' interests do not conflict with absent members of the AWP Payor Classes, and Plaintiffs' interests are co-extensive with absent Class Members.  Additionally, this Court recognizes the experience of Lead Class Counsel and finds that the requirement of adequate representation of the Classes has been fully met;

        e.     *Predominance of Common Issues.*  Plaintiffs commonly assert that GSK's actions caused the AWPs for GSK Covered Drugs to be inflated, in turn causing all Class Members to pay more for GSK Covered Drugs.  In the context of this Settlement, these issues predominate over any individual questions, favoring class treatment; and

        f.     *Superiority of the Class Action Mechanism.*  The class action mechanism is ideally suited for treatment of the settlement of this matter.  Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country. The GSK Covered Drugs that are the subject of this proposed settlement are those set forth on Exhibit A to the Agreement.

## II.    **Class Representatives**

        4.     Plaintiffs David and Susan Ruth Aaronson are designated representatives of the Medicare Co-Payment Class.  Plaintiffs Blue Cross/Blue Sheild of Massachusetts and Sheet Metal Workers National Health Fund are designated representatives of the MediGap TPP Class. Plaintiffs  Blue Shield/Blue Cross of Massachusetts ("BCBS MA"), Cynthia Byrski, Cheryl Barreca, Anna Choice, Donna Kendall, Constance Nelson, Andrea Palencia, Scott Tell, Joseph Miller, UFCW, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund ("CMHV"), Teamsters Health & Welfare Fund of Philadelphia and Vicinity ("THWF"), Philadelphia Federation of Teachers Health and Welfare Fund ("PFTHW"), Manu-U

85435-3                      5

Service Contract Trust Fund ("Man-U"), Twin Cities Bakery Workers Health and Welfare Fund

("TCBW"), and Pipefitters Local 537 Trust Funds ("Pipefitters Local") are designated AWP

Private Payor Class Representatives.

5.     If the Agreement is terminated or is not consummated for any reason

whatsoever, the certification of the nationwide AWP Payor Classes shall be void, and Plaintiffs

and Defendants shall be deemed to have reserved all of their rights as set forth in the Agreement.

### III.     Class and Appointment of Class Counsel

6.     The Court further preliminarily finds that the following firms fairly and

adequately represent the interests of the nationwide AWP Payor Classes and hereby appoints

them as Co-Lead Settlement Class Counsel pursuant to Rule 23(g):

> Hagens Berman Sobol Shapiro LLP
> 1301 Fifth Avenue, Suite 2900
> Seattle, WA 98101
>
> Spector, Roseman & Kodroff, P.C.,
> 1818 Market Street, Suite 2500
> Philadelphia, PA 19103
>
> Wexler Toriseva Wallace LLP
> One North LaSalle Street, Suite 2000
> Chicago, IL 60602
>
> Edelson & Associates, LLC,
> 45 West Court Street
> Doylestown, PA 18901
>
> Kline & Specter, P.C.
> 1525 Locust Street, 19th Floor
> Philadelphia, PA 19102

### IV.     Class Settlement Fund

7.     The Court finds that the Class Escrow Account is a "qualified settlement

85435-3                                6

fund" as defined in section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements:

    a.      The Class Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

    b.      The Class Escrow Account is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

    c.      The assets of the Class Escrow Account are segregated from other assets of GSK, the transferor of payments to the Settlement fund.

    8.      Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

    a.      The Class Escrow Account met the requirements of paragraph (8)(b) and (8)(c) of this Order prior to the date of this Order approving the establishment of the Class Escrow Account subject to the continued jurisdiction of this Court; and

    b.      GSK and the Claims Administrator may jointly elect to treat the Class Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Class Escrow Account met the requirements of paragraph (7)(b) and (7)(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph (7) of this Order are met.  If such a relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Class Escrow Account on that date.

## V.    Notice to Class Members

85435-3               7

9.     The Court has considered the Notice Plan attached as Exhibit B to Plaintiffs'
Memorandum In Support of Motion for Preliminary Approval of Settlement Agreement and
Release of the GlaxoSmithKline Defendants, including the proposed forms of notice, summary
notice, information releases and claim forms, and finds that the forms and manner of notice
proposed by Plaintiffs and approved herein meet the requirements of due process and Fed. R.
Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient
notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.  The
Court approves the Notice Plan in all respects (including the proposed forms of notice, summary
notice, information releases and claim forms) and Orders that notice be given in substantial
conformity therewith.  The Notice Program described in the Notice Plan shall commence on or
about _____, 2006.  The costs of preparing, printing, publishing, mailing and otherwise
disseminating the notice shall be paid from the class Settlement Fund in accordance with the
Plan of Distribution and the applicable provisions of the Agreement.

10.     The Court appoints Complete Claim Solutions, Inc. as the Claims
Administrator.  Responsibilities of the Claims Administrator shall include the following: (a)
establishing a post office box and toll-free phone number (to be included in the Long Form
Notices and the Summary Notices (together, the "Notices" to the Class)) for purposes of
communicating with nationwide AWP Payor Class members; (b) establish and maintain a
website for purposes of posting the Notices, the Agreement and related documents; (c) accepting
and maintaining documents sent from nationwide AWP Payor Class members, including claim
forms, exclusion requests and other documents relating to claims administration; and (d)
administering claims for the allocation of the settlement funds among nationwide AWP Payor
Class Members.

85435-3                                                    8

## VI.    Request for Exclusion from the AWP Payor Classes

11.    Any member of the nationwide AWP Payor Classes who wishes to be

excluded from any AWP Payor Class shall mail a written notice of exclusion to the Claims

Administrator, so that it is received  no later than _____, and shall clearly state the

following: the name, address, taxpayer identification number, telephone number and fax number

(if any) of the individual or entity that wishes to be excluded from a nationwide AWP Payor

Class as well as the time period during which the class member made purchases of a Covered

Drug and which of the three AWP Payor Classes the person or entity intends to exclude

themselves from.  For Third Party Payors, the notice of exclusion must also include a signed

certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and
> submit this notice of exclusion on behalf of the above-named class member. The
> undersigned also certifies that he/she has not received any advice from the parties
> to this litigation or their attorneys concerning his/her or the class member's
> fiduciary obligations under the Employee Retirement Income Security Act of
> 1974, 29 U.S.C. § 1100, *et seq.*, or other laws governing their obligations to any
> class member.  The undersigned understands that by submitting this notice of
> exclusion, the class member identified above will not be entitled to receive any
> proceeds of the class Settlement Fund.  By affixing my signature below, I certify
> under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

12.    In addition, for purposes of implementing the Agreement, including

calculation of the amount of the GSK Refund (as described in Paragraph 17 of the Agreement),

each TPP Class Member requesting exclusion shall be requested to set forth in the Exclusion

Form the amounts paid for each GSK Drug during the Class Period, and whether such payments

were made pursuant to the drug's AWP.

13.    Valid Class Opt-Outs shall not be bound by the Agreement, the

Settlement, or the Final Order and Judgment.  Upon receipt, the Claims Administrator shall

85435-3                                   9

promptly provide copies of each notice of exclusion to  Lead Class Counsel and GSK's Counsel.

14.     Any  member of a nationwide AWP Payor Class that does not properly and timely mail a notice of exclusion as set forth in paragraph 11 above shall be automatically included in the nationwide AWP Payor Classes and shall be bound by all the terms and provisions of the Agreement and the Settlement and the Final Order and Judgment, whether or not such member of the nationwide AWP Payor Classes shall have objected to the Settlement and whether or not such member of the nationwide AWP Payor Class makes a claim upon or participates in the Class Settlement Fund.

## VII.    Proofs of Claim

15.     To effectuate the Settlement and the provisions of the Notice Plan, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and proofs of claim.  The Claims Administrator shall preserve (on paper or transferred into electronic format) all notices of exclusion, proofs of claim, and any and all other written communications from members of the nationwide AWP Payor Classes in response to the Notices for a period of five (5) years, or pursuant to further order of the Court.  All written communications received by the Claims Administrator from members of the AWP Payor Classes relating to the Agreement shall be available at all reasonable times for inspection and copying by Lead Class Counsel and GSK's Counsel, until payments are mailed to each Class Member.

16.     In order to be entitled to participate in the Settlement if it is effected in accordance with all of the terms and conditions set forth in the Agreement, each member of the nationwide AWP Payor Classes shall take the following actions and be subject to the following requirements:

(a)     An AWP Payor Class Member who wishes to receive a distribution from

85435-3                                        10

the Class Settlement Fund must mail a properly executed proof of claim (either a TPP proof of claim or a consumer proof of claim, whichever is appropriate (collectively, a "Proof of Claim")) to the Claims Administrator at the address indicated in the notice, to be postmarked on or before

_____. If such Proof of Claim is transmitted in any manner other than the United States Postal Service, it shall be deemed to have been submitted when actually received by the Claims Administrator and must be received by the Claims Administrator no later than

_____.

      (b)     Each Proof of Claim must satisfy the following conditions: (i) the Proof of Claim must be properly completed in accordance with the instructions thereon and submitted in a timely manner in accordance with subparagraph (a) of this paragraph; (ii) the Proof of Claim must be signed and certified under penalty of perjury, (iii) the claimant must certify that he, she or it is a Class Member, or, if the person executing the Proof of Claim is acting in a representative capacity, must attest that he, she or it is acting on behalf of a class member and that the claimant has authority to act on behalf of the Class Member, and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

      (c)     Each Consumer Proof of Claim shall be accompanied by evidence of payment for a GSK Covered Drug as called for in the Consumer Proof of Claim attached as an exhibit to the Notice Plan. Consumer Class Members shall be required to certify 1) the identity (and dose if such information is available) of the GSK Covered Drug or Drugs for which the claimant made a payment, 2) the fact that such payment was either a co-payment under Medicare Part B or a graduated co-payment pursuant to some other private or public insurance or benefit program, 3) the time period over which they, or the Consumer Class Member on whose behalf

they are submitting a Proof of Claim, took or were administered a GSK Covered Drug (s) and 4) the total out-of-pocket payments for each of the GSK Covered Drug(s) (including any co-pay or cash payments therefore) net of any reimbursements from insurers or any other source during the Class Period.  In addition, Consumer Class Members shall be required to provide ONE of the following as evidence of payment for each of the GSK Covered Drug(s) for which the Consumer Class Member seeks payment during the Class Period:

(i) a copy of a single written prescription for the GSK Covered Drug during the Class Period;

(ii) a copy of a single receipt evidencing payment of a graduated co-pay or cash payment for the GSK Covered Drug during the Class Period;

(iii) a single EOB (explanation of benefits) form from the claimant's Medicare Carrier, an insurer or other health plan, evidencing a co-pay or cash payment for a GSK Covered Drug during the Class Period

(iv) a single cancelled check evidencing payment of a co-pay or cash payment for the GSK Covered Drug during the Class Period;

(v) a letter from the Consumer Class Member's physician or other health care provider stating that the consumer was administered a GSK Covered Drug and paid a co-pay or cash payment therefore and stating the amount paid during the Class Period for each of the GSK Covered Drug; or

(vi) a written declaration by the Consumer Class Member attesting that they paid a co-payment for the GSK Covered Drug during the Class Period and setting forth the total out-of-pocket payments for the GSK Covered Drug during the Class Period.

(d)     Each TPP Proof of Claim shall be accompanied by evidence of payment as

called for in the TPP Proof of Claim attached as an exhibit to the Notice Plan. Each TPP Class

Member shall be required to certify the total expenditures for each GSK Covered Drug during

the period January 1, 1999 through December 31, 2003 (the "TPP Proxy Period") net of any co-

pays, eductibles and co-insurance. Each TPP Class Member or representative shall be required

to certify that they have not included claims on behalf of any TPP Class Member that are readily

identifiable as having been based on a reimbursement standard other than AWP. Any TPP Proof

of Claim which claims a total net expenditure for GSK Covered Drugs of $300,000.00 or more

during the Class Period shall also be accompanied by electronic evidence of payment in the form

attached to the TPP Proof of Claim or such other evidence as is acceptable to the Claims

Administrator. Any TPP Proof of Claim that claims a total net expenditure for GSK Covered

Drugs of less than $300,000.00 shall not need to be accompanied by electronic evidence of

payment to be considered by the Claims Administrator (although such information may be

requested by the Claims Administrator);

      (e)    Each Proof of Claim shall be submitted to and reviewed by the Claims

Administrator, who shall make a recommendation to Lead Class Counsel about which claims

should be allowed in whole or in part;

      (f)    The Claims Administrator will notify each member of the nationwide

AWP Payor Class that filed a Proof of Claim of any recommendation of disallowance, in whole

or in part, of the Proof of Claim submitted by such nationwide AWP Payor Class Member and

will set forth the reasons for any such disallowance. AWP Payor Class Members shall be

permitted a reasonable period of time to cure once any deficiency with respect to their respective

Proofs of Claim is identified. A copy of such notification shall also be sent by the Claims

Administrator to Lead Class Counsel;

85435-3

(g)     All members of the nationwide AWP Payor Classes that do not submit timely Proofs of Claim, or submit Proofs of Claim that are disallowed and not cured, shall be barred from participating in the Class Settlement Fund (except to the extent that a Proof of Claim may be partially allowed) but otherwise shall be bound by all of the terms and provisions of the Agreement; and

(h)     Each member of an AWP Payor Class that submits a Proof of Claim shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Agreement.

## VIII.   Claims Process

17.     The total expenditure for each GSK Covered Drug during the Class Period claimed by each Consumer Class Member on the Consumer Proof of Claim as verified and accepted by the Claims Administrator shall be multiplied by a "Recognized Claim Percentage" for that drug as set forth in Exhibit G to the Settlement Agreement in order to calculate the Consumer's "Recognized Claim." This calculation results in the payment of an amount for each Recognized Claim for each GSK Covered Drug that was negotiated between the parties and is consistent with Plaintiffs' assessment of liability and damages for each such Drug.

18.     A minimum payment to Consumer Class Members shall be recommended to the Court by Lead Class Counsel at the final Fairness Hearing based upon the number and magnitude of the claims filed by Consumer Class Members. Any Consumer Class Member whose total Recognized Claims amount falls below the minimum payment as set by the Court at the Fairness Hearing will receive the minimum payment in lieu of his/her recognized claim, subject to Paragraph 19 below. The Court recognizes the importance of having a minimum

payment in order to encourage Consumer Class Members to file Proofs of Claim and hereby authorizes Lead Class Counsel to represent in the Notices that based on an analysis of the potential claims by Consumer Class Members, a minimum payment of $100.00 or more is anticipated.

19.     If the total of all payments to all Consumer Class Members (the total of all Recognized Claims plus minimum payments where applicable) is less than the Net Consumer Settlement Pool, all Consumer Class Members will be paid up to 100% of their Recognized Claim or the minimum payment as set by the Court at the Fairness Hearing, whichever is larger. Any remaining funds in the Net Consumer Settlement Pool, after distribution to Consumer Class Members in accordance with the Agreement, shall be subject to mediation as provided for in Paragraph 22(b)(vii)(b) of the Agreement. If the total of all payments to Consumer Class Members (the total of all Recognized Claims plus minimum payments where applicable) would equal or exceed the Net Consumer Settlement Pool, all consumers shall share *pro rata* in the Net Consumer Settlement Pool in proportion to the size of their Recognized Claim.

20.     The total expenditure for a GSK Covered Drug during the TPP Proxy Period claimed by each TPP Class Member on the TPP Proof of Claim and accompanying documentation as verified and accepted by the Claims Administrator shall be multiplied by a "Recognized Claim Percentage" as set forth in Exhibit G to the Settlement Agreement in order to calculate the TPP's "Recognized Claim." This calculation results in the payment of an amount for each Recognized Claim for each GSK Covered Drug that was negotiated between the parties and is consistent with Plaintiffs' assessment of liability and damages for each such Drug.

21.     Each TPP Class Member shall share pro rata in the Net TPP Settlement Pool (which is net of payment of the GSK Refund as set forth in the Agreement) in proportion to the

size of their Recognized Claim.

## IX.    Confidentiality

22.    Any information received by the Claims Administrator in connection with this Settlement that pertains to a particular member of the nationwide AWP Payor Classes, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Lead Class Counsel, Defendants' Counsel, and the Court, or as otherwise provided in the Agreement.

## X.    Fairness Hearing

23.    A hearing on final settlement approval (the "Fairness Hearing") will be held on _____, at _____ before this Court, at the United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider, *inter alia*, the following:  (a) whether the nationwide AWP Payor Classes should be finally certified; (b) the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the MDL Class Action as to the GSK Defendants, and the entry of final judgment as to the GSK Defendants; (c) whether Class Counsel's  application for attorneys' fees, expenses and incentive awards for the Class Representatives and any other appropriate parties or the application for fees and expenses of any other counsel involved in any AWP Class Litigation ("the Fee Petition") should be granted; and (d) whether to approve the proposed plan of allocation and distribution.

24.    On or before _____, Class Settlement Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Settlement; and (ii) any Fee Petition.

85435-3

25. Any member of the nationwide AWP Payor Class that has not filed a notice of exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the AWP Class Action as to the GSK Defendants, the entry of final judgment as to the GSK Defendants, and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless submitted to the Court and served upon Counsel for the parties on or before _____. Such person must (a) file with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition on or before _____, and (b) serve copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon all Counsel to the parties on or before _____. Class Members who fail to object in the manner and by the dates provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

26. Counsel for the parties who must be served with all documentation described above in Paragraph 25 are as follows:

Counsel for nationwide AWP Payor Classes
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

85435-3

Counsel for Defendant GlaxoSmithKline

Frederick G. Herold
DECHERT LLP
1117 California Avenue
Palo Alto, CA 94304

27.     The date and time of the Fairness Hearing shall be set forth in the Notice and
Summary Notice, but shall be subject to adjournment by the Court without further notice to the
members of the Class other than that which may be posted at the Court, on the Court's website,
and/or the website to be established pursuant to the Notice Plan.

28.     All discovery and other pretrial proceedings in the MDL Class Action with
respect to the GSK Defendants are stayed and suspended, pending the Final Approval of the
Settlement ("Final Approval"), except such proceedings as are provided for in the Agreement, or
which may be necessary to implement the terms of the Agreement, the Settlement, or this Order.

29.     Any AWP Payor Class member may hire an attorney at his or her or its own
expense to appear in the action.  Such attorney shall serve a Notice of Appearance on the
Counsel listed in Paragraph 26 above by _____, and file it with the Court on or
before _____.

30.     Pending Final Approval, no nationwide  AWP Payor Class Member, either
directly, representatively, or in any other capacity (other than an AWP Payor Class Member who
validly and timely elects to be excluded from the Class), shall commence, continue or prosecute
against any or all of the GSK Releasees any action or proceeding in any court or tribunal
asserting any of the matters, claims or causes of action that are to be released upon Final
Approval pursuant to the Agreement, and are hereby enjoined from so proceeding.  Upon Final
Approval, all AWP Payor Class Members that do not file a timely notice of exclusion shall be

85435-3

forever enjoined and barred from asserting any of the matters, claims or causes of action released pursuant to the Agreement, and any such AWP Payor Class Member shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Agreement.

## XI.    Other Provisions

31.    Upon Final Approval, each and every term and provision of the Agreement (except as may be modified by the Final Approval Order) shall be deemed incorporated into the Final Order and Judgment as if expressly set forth and shall have the full force and effect of an Order of the Court.

32.    In the event the Settlement is terminated in accordance with the provisions of the Agreement, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Agreement, and without prejudice to the *status quo ante* rights of Plaintiffs and the GSK Defendants.

33.    Neither this Order nor the Agreement shall constitute any evidence or admission of liability by any Defendant, nor shall they be offered in evidence in this or any other proceeding except to consummate or enforce the Agreement or the terms of this Order, or by any Releasee in connection with any action asserting Released Claims.

Date:_____          _____
                                       Patti B. Saris
                                       United States District Judge

85435-3

EXHIBIT B-1a

LONG FORM NOTICE TO CONSUMERS, WITH CLAIM FORM AND EXCLUSION FORM

# If You Made or Are Obligated to Make a Percentage Co-Payment or Full Payment for the GSK Drugs:

**Kytril Injectable** (Granisetron HCL)
**Zofran Injectable** (Ondansetron HCL)
**or**

| | |
|---|---|
| Alkeran (Melphanan) | Imitrex (Sumatriptan) |
| Kytril Tablets (Granisetron HCL) | Lanoxin (Digoxin) |
| Myleran (Busulfan) | Navelbine (Vinorelbine Tartrate) |
| Retrovir (Zidovudine) | Ventolin (Albuterol) or |
| Zofran Orals (Ondansetron HCL) | Zovirax (Acyclovir) |

## A Proposed Class Action Settlement May Affect Your Rights.

## Medicare Part B Beneficiaries (or their Heirs) and Privately-Insured Consumers are Included

*The District Court has authorized this Notice. It is not a solicitation from a lawyer. You are not being sued.*

[Insert in Spanish: For More Information On This Lawsuit Visit www.xxxx ]

- There is a Proposed Settlement with GlaxoSmithKline ("GSK"), one of the Defendants in a class action lawsuit pending in the U.S. District Court for the District of Massachusetts. The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456.

- The lawsuit claims that certain drug companies reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. The reported AWPs are used to set prescription drug prices that are paid by Medicare, consumers and insurers. The lawsuit asks the Court to award money damages to some people who paid or made co-payments for the drug.

- SmithKline Beecham Corporation, doing business as GlaxoSmithKline ("GSK") has entered into a Proposed Settlement with the Plaintiffs and has agreed to pay $70 million to settle their claims and other related claims. After payment to certain State Attorneys General of $4.5 million, and after deducting attorneys' fees and costs of administering

1

the Proposed Settlement, 30% of the net fund will be distributed in cash to consumers who paid for all or part of the cost of the drugs and who submit a valid claim form.

- The GSK Covered Drugs fall into two categories, as follows: The "Category A" Drugs, namely **Kytril Injectables** and **Zofran Injectables**, and the "Category B" Drugs, namely **Alkeran, Imitrex, Kytril (tablets), Lanoxin, Myleran, Navelbine, Retrovir, Ventolin, Zofran (orals) and Zantac**. A complete list of the GSK Covered Drugs, including formulations, is set forth in the response to Question 8 below.

- There are two sub-Classes for individual consumers who paid for the GSK Covered Drugs.

- You are a member of **Medicare Co-Payment Class** if:

  You made or are currently obligated to make a percentage co-payment under Medicare Part B for any of the GSK Covered Drugs listed above (or are an heir to someone who made such a co-payment) from January 1, 1991 to January 1, 2005. You are excluded from this Class if you made flat co-payments, or you were reimbursed or have the right to be reimbursed in full for your co-payments.

- You are a member of the **Private Payor Class** if:

  You paid (or are currently obligated to pay) for any of the GSK Covered Drugs listed above outside of Medicare Part B, from January 1, 1991 to August 10, 2006 <u>and</u>

  Your payment was (a) for the full amount out-of-pocket, or (b) your payment was a percentage co-payment. You're **not** included in the Class if you paid a fixed or flat co-payment.

  **Medicare Part B enrollees may be in both Classes.**

The Court will be asked to decide whether to order final approval of the Settlement in this case.

2

# A Summary of Your Rights and Choices:

*Your Legal Rights Are Affected Even If You Do Not Act.*
*Read This Notice Carefully.*

| You May: | | Due Date: |
|---|---|---|
| **Remain in the Classes & File a Claim** | **Stay in the lawsuit and file a claim**<br>If you wish to stay in one or both of the Classes and file a claim you must do so in writing by the date listed. Whether or not you file a claim, if you don't exclude yourself you will not be able to sue GSK for the claims in this lawsuit and you will also be bound by the Court's decisions. **See Questions 8 and 9.** | _**Postmarked By Month Date 2007**_ |
| **Exclude Yourself** | **Get out of the Classes.**<br>You can write and ask to get out either or both of the Classes and keep your right to sue GSK on your own about the claims in the lawsuit. **See Questions 10 and 11.** | _**Postmarked by Month Date 2007**_ |
| **Object to the Proposed Settlement** | **Object or comment on the Proposed Settlement.**<br>If you don't exclude yourself, you can appear and speak in the lawsuit on your own or through your own lawyer to object or comment on the Settlement. (Class Counsel has been appointed to represent you.) **See Questions 12 and 13.** | _**Postmarked by Month Date 2007**_ |

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**
1. Why did I get this Notice?.......................................................................................
2. What is the lawsuit about?......................................................................................
3. Why is this a class action?.....................................................................................
4. Why is there a Settlement?....................................................................................
5. How do I know if I am included in the Proposed Settlement?.......................................
6. How do I know if my co-payment was under Medicare Part B ......................................

**BENEFITS OF THE PROPOSED SETTLEMENT – WHAT YOU GET**
7. What does the Proposed Settlement provide? ...............................................................
8. How do I file a claim? ...........................................................................................

**REMAINING IN THE CLASS**
9. What am I giving up if I do nothing and stay in the Class? ..........................................

3

**EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT**
    10. What do I do if I don't want to be in the proposed Proposed Settlement?......................
    11. How do I exclude myself from the Proposed Settlement? ............................................

**COMMENTING ON THE PROPOSED SETTLEMENT**
    12. Can I object to or comment on the Proposed  Settlement?............................................
    13. What is the difference between objecting to the Settlement and excluding myself
        from the Settlement?.........................................................................................................

**THE LAWYERS REPRESENTING YOU**
    14. Do I have a Lawyer representing my interests in this case?...........................................
    15. How will the lawyers be compensated? ........................................................................
    16. Should I get my own lawyer?........................................................................................
    17. Payments to Class Representatives ....................................................... ..

**THE COURT'S FINAL APPROVAL HEARING**
    18. When and where will the Court decide on whether to grant final approval of the
        Settlement? .......................................................................................................................
    19. Must I attend the hearing? ............................................................................................
    20. May I speak at the hearing?..........................................................................................

**GETTING MORE INFORMATION**
    21. Where do I obtain more information? ............................................................................

## BASIC INFORMATION

### 1.  Why did I get this Notice?

You were mailed this because records obtained from the Centers for Medicare and Medicaid Services indicate that you may have made a co-payment for one or more of the GSK Covered Drugs between January 1, 1991 and January 1, 2005.  Or, you may have requested this Notice after seeing the Summary Notice in a publication.

This Notice explains:

- What the lawsuit and Proposed Settlement are about.
- What the lawsuits claim and what GSK says about the claims.
- Who is affected by the Proposed Settlement.
- Who represents the Class in the lawsuit.
- What your legal rights and choices are.
- How to file a claim.
- How and by when you need to act.

4

## 2. What is the lawsuit about?

Plaintiffs allege that Defendant drug companies either report the average wholesale price ("AWP") of each drug they make to trade publications or provide those publications with information from which the publications calculate an AWP for each of Defendants' drugs. The published AWP of a drug has been used to set the price that consumers who made Medicare Part B co-payments and Medicare paid for the drug. The published AWP is also often used by insurance companies to determine what they will reimburse doctors or pharmacies for these drugs. The lawsuits claim, among other things, that consumers making Medicare Part B co-payments, and consumers who paid in full for drugs or made a percentage co-payment outside of Medicare Part B, paid more than they should have paid for the Covered Drugs because drug companies, including GSK, intentionally reported false and inflated AWPs concerning the drugs at issue.

GSK denies any wrongdoing. The Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated. GSK has entered into the Proposed Settlement solely to avoid further expense, inconvenience, and the burden of these litigations and any other present or future litigation arising out of the facts that allegedly gave rise to these litigations. GSK also wishes to avoid the distractions and diversion of their personnel and resources, and thereby to put to rest this controversy and to avoid the risks inherent in uncertain complex litigation.

## 3. Why is this a class action?

The Court has found that class action treatment is the superior method for the fair and efficient settling of this litigation. In a class action lawsuit, one or more people called "class representatives" sue on behalf of people who have similar claims. The people together are a "class" or "class members." A court must determine if it will allow a lawsuit to proceed as a class action. If it does, a trial of the claims then decides the lawsuit for everyone in the class, or the Parties may settle without a trial. The Parties here have agreed to, and the Court has preliminarily approved, a settlement that includes a national class of Medicare Part B beneficiaries who made Medicare Part B co-payments for the GSK Covered Drugs, as well as a national class of individuals who paid in full for, or who made percentage co-payments outside of Medicare Part B for, the GSK Covered Drugs. You could be a member of one or both of these Classes.

## 4.  Why is there a Proposed Settlement?

A settlement is the resulting agreement between a plaintiff and defendant following extended negotiation in a case set for trial. Settlements conclude litigation but are not a result of the court ruling in favor of either the plaintiff or defendant. The settlement enables both parties to avoid the cost and risk of a trial, and ultimately establish a just, fair and final resolution that is best for all involved. The class representatives and their attorneys make the determination that the settlement is the best result for all class members. The Court will then review the terms of the proposed settlement and hold a hearing on the fairness and adequacy of the settlement to the class. If the Court approves the settlement, then the defendants are released from any liability based upon the alleged illegal behavior forming the basis of the complaint.

## 5.  How do I know if I am included in the Proposed Settlement?

Unless you exclude yourself as described in Question 11 of this notice, you will be included in the Proposed Settlement if you are a member of one or both of the Classes below:

There are two Classes for individual consumers who paid for GSK Covered Drugs.

You are a member of **Medicare Co-Payment Class** if:

You made or are currently obligated to make a percentage co-payment under Medicare Part B for any of the GSK Covered Drugs listed above (or are an heir to someone who made such a co-payment) from January 1, 1991 to January 1, 2005. You are excluded from this Class if you made flat co-payments, or you were reimbursed or have the right to be reimbursed in full for your co-payments.

Stated in more detail, you are a member of Medicare Co-Payment Class if you fulfill the criteria listed in 1, 2, or 3 below.

1.      You are in this Class (a) if you were a Medicare Part B beneficiary between January 1, 1991 and January 1, 2005, (b) who received one or more of the GSK Covered Drugs during that time period and (c) you paid your doctor or pharmacist a percentage co-payment for one or more of the drugs, but not if you paid a flat amount (such as $10 or $20 per dose) and not if you were fully reimbursed for your payment by a private insurer.

2.      You are in this Class if you are the legal heir of, or the legal successor to, the rights of a Medicare Part B beneficiary who met all three criteria set forth in "1" immediately above but who is now deceased. You need to consult your own lawyer to determine if you are the legal successor to any such rights. Your lawyer will help you determine whether you qualify as a "legal heir" under state laws of intestacy, will, trust, or any other applicable law.

3.      You are a member of this Class if (a) you were a Medicare Part B beneficiary between January 1, 1991 and January 1, 2005, (b) who received one or more of the GSK Covered Drugs during that time period and (c) incurred a "legal obligation" to pay your doctor or pharmacist a percentage co-payment for one or more of the drugs but did not do so. You may have incurred a "legal obligation" if (a) your doctor billed either you or

your insurer for one or more of the drugs but neither you nor your insurer paid, or (b) if you did not pay because your doctor or pharmacist did not bill you, and (c) the time period for bringing a legal claim against you to enforce payment for one or more of the drugs has not already expired under the law.

**IMPORTANT:** *This is not a bill or a collection notice. The Court is not suggesting, requesting or requiring that Medicare Part B beneficiaries who were billed for one or more of the GSK Covered Drugs but did not pay, or were not billed at all should pay their doctor or pharmacist now. Nor is the Court suggesting that they are obligated to do so under the Medicare statute or regulations.*

You are a member of the **Private Payor Class** if:

You paid (or are currently obligated to pay) for any GSK Covered Drug outside of Medicare Part B from January 1, 1991 to August 10, 2006 and

You're included in the Private Payor Class if your payment was (a) for the full amount of the drug out-of-pocket, or (b) your payment was a percentage co-payment through private insurance. You're **not** included in the Class if you paid a fixed or flat co-payment. (Medicare Part B enrollees may be in both Classes.)

You are also **not** part of either or both of the Classes if:

(a) You were fully reimbursed for the co-payment you made (for example, your MediGap or other private insurer reimbursed you the full amount); *or*

(b) Your co-payment was a flat amount instead of a percentage of the total charge (for example, your MediGap or other private insurer paid for all of the co-payment except for a flat amount such as $10 or $20 that you had to pay). If your co-payment is a set dollar amount and does not differ with the price of the drug, your co-payment is a flat co-payment and not a percentage co-payment and you are not a member of one or more of the Classes.

## 6. How do I know if my co-payment was under Medicare Part B?

If you are 65 or older, or are younger than 65 but receive social security benefits because of a disability, you are entitled to Medicare benefits. Medicare Part A is the primary coverage for your health care costs when you are admitted as a patient in a hospital, and enrollment is generally automatic at age 65.

Medicare Part B helps to pay primarily for outpatient services such as care given in your doctor's office, outpatient hospital care, and physical therapy. During the relevant time period, Medicare Part B also had a limited drug benefit. For drugs that have been covered under Part B, Medicare paid 80% of the drug cost, and you were responsible for paying the other 20% (which is your co-payment).

Generally, the drugs covered under Medicare Part B are ones that are administered by your doctor, such as cancer treatment drugs and anti-nausea drugs that are given through

7

injections or an IV.  But Part B also covers some drugs that are self-administered (ones that you take yourself).  Those include some oral anti-cancer drugs in pill form, some pills prescribed to help with nausea or anemia in connection with chemotherapy and drugs provided with some durable medical equipment, such as inhalation drugs used with a nebulizer (a compressed air machine).

Like Part A, Medicare Part B coverage was, during the relevant period, also automatic, but you had the option to decline it.  You paid a monthly premium for Medicare Part B coverage (which was typically deducted from your social security check).  You can tell if you have been enrolled in Medicare Part B by looking at your Medicare insurance card.  It will say if you have been enrolled in Part B.

If you took one of the GSK Covered Drugs when you were an inpatient in the hospital, you did not make a co-payment under Medicare Part B.  However, if a GSK Covered Drug was prescribed or administered by your doctor as a part of an outpatient treatment at a clinic, and you are enrolled in Medicare Part B, you may have been billed a co-payment of 20% of the drug cost if Medicare is your primary payer.

For the vast majority of people enrolled in Medicare, Medicare is the primary payer.  Medicare is your secondary payer only if: (a) you or your spouse have continued to work after age 65 and have accepted the employer's health care insurance, or (b) you are a disabled person under 65 and have large group health plan coverage through your current job or the job of a family member.   Unless either of these situations applies to you, your co-payment for a Covered Drug would have been under Medicare Part B.

## BENEFITS OF THE PROPOSED SETTLEMENT – WHAT YOU GET

### 7.  What does the Proposed Settlement provide?

GSK has entered into a Proposed Settlement with the Plaintiffs and has agreed to pay $70 million to settle these and other related claims.  A $4.5 million payment to certain State Attorneys General, as well as attorneys' fees and the costs of administering the Proposed Settlement, will be deducted from the Settlement Fund before distributions to Class Members.

- 30% of the remaining fund will be distributed in cash to consumer Class Members who paid for all or part of the cost of the drugs and submit a valid claim form.

- 70% of the remaining fund will be set aside to pay the claims of insurer Class Members (sometimes referred to as "Third-Party Payor Class Members" or "TPP Class Members") who have submitted a valid claim and a separate and independent group of TPPs (referred to as the "Independent Settling Health Plans" or "ISHPs") who have agreed to settle their claims against GSK for a portion of the Settlement funds.

The Court must approve the distribution of the Settlement Fund.

### 8.   How do I file a claim?

Attached to this notice is a claim form.  You must fill out the claim form and submit it to the Claims Administrator, postmarked by MONTH DAY, YEAR, and addressed to:

_____

_____

As part of your claim you must attest that you are a Class Member entitled to a Settlement payment for the drugs for which you make a claim (or that you are an heir of a Class Member that is authorized to submit the claim on behalf of a Class Member) and must provide the Claims Administrator with the total amount of your out-of-pocket payments for each Covered Drug for which you are making a claim.  In addition, you must provide one proof of payment for each of the Covered Drugs for which you are filing a claim.  Proof of payment may be in the form of:

- a written prescription for the drug;
- a receipt, cancelled check, or credit card statement that shows that you have paid for the drug;
- an EOB (explanation of benefits) that shows you made or are obligated to make a percentage co-payment for the drug;
- a letter from you physician stating that he or she prescribed and that you paid or were obligated to pay a percentage co-payment for the drug at least once and setting forth the amount of the co-payment; or
- a notarized statement signed by you indicating you paid or are obligated to pay a percentage co-payment for the drug between January 1, 1991 through August 10, 2006, including the total of all percentage co-payments for the drug during that time period.

The total amount of your out-of-pocket expenses for each drug will be multiplied by the specific "Recognized Claim Percentage" or "RCP" for each drug  in order to determine the amount of your claim for that particular drug.  The RCP for each GSK Covered Drug may vary.

The RCPs for each drug are listed below:

9

|  | Drug Name | Dosages | Recognized Claim Percentage |
|---|---|---|---|
| **GSK Category A Drugs** | **Kytril Injection** (granisetron HCL) | Injection: 1mg/ml | **50%** |
|  | **Zofran Injection** (ondansetron HCL) | Injection: 2mg/ml Injection (Pre-mixed): 32mg/50ml; 4mg/50ml | **50%** |
|  |  |  |  |
| **GSK Category B Drugs** | **Alkeran** (melphalan) | Injection: 50mg Tablets: 2mg | **5%** |
|  | **Imitrex** (sumatriptan) | Injection: 12mg/1ml (6mg/0.5ml) | **5%** |
|  | **Kytril Tablets** (granisetron HCL) | Tablets: 1mg | **5%** |
|  | **Lanoxin** (digoxin) | Injection: 0.5mg/2ml; 0.1mg/ml | **5%** |
|  | **Myleran** (busulfan) | Tablets: 2mg | **5%** |
|  | **Navelbine** (vinorelbine tartrate) | Injection: 10mg/ml; 50mg/5ml | **5%** |
|  | **Retrovir** (zidovudine) | IV Infusion: 10mg/ml | **5%** |
|  | **Ventolin** (albuterol) | Inhalation: 0.083% 3ml; 0.5% 5mg/ml | **5%** |
|  | **Zofran Orals** (ondansetron HCL) | Tablets: 4mg; 8mg; 24mg Solution: 4mg/5ml ODT: 4mg; 8mg | **5%** |
|  | **Zovirax** (acyclovir) | Powder for Injection: 500mg; 1000mg | **5%** |
|  | **Zantac** (ranitidine HCL) | Injection: 25 mg/ml Injection (Pre-mixed): 50mg/50ml; 50mg/100ml | **5%** |

## REMAINING IN THE CLASSES

### 9. What am I giving up If I do nothing and stay in either or both of the Classes?

If you do nothing, you will be included in the either or both Classes. You will be bound by the terms and conditions of the Proposed Settlement. You will not be able to pursue any other lawsuit against GSK concerning the claims alleged in this lawsuit. If the Proposed Settlement is approved, Plaintiffs claims against GSK will be "released."

The Proposed Settlement provides that the claims against GSK as set forth in the lawsuit will be released and members of the Classes will never be able to file a lawsuit for any claim related to this lawsuit. All Class Members agree that they will not seek to file a claim against any GSK Releasee based, in whole or in part, on any of the claims in the lawsuit.

In addition, once the Settlement Agreement is approved, each Class Member expressly agrees to release any and all provisions, rights and benefits provided by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

Class Members also expressly agree to release any and all provisions, rights and benefits provided by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

Class Members agree to forever release all claims even if they later discover new facts regarding the claims in the lawsuit. This includes any claims related to the subject matter of the lawsuit whether known or unknown, suspected or unsuspected, contingent or non-contingent. All claims related to the subject matter of the lawsuit will be released forever whether or not the facts were concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

Each Class Member also expressly agrees to release any and all Released Class Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code. This includes claims relating to any drug price published by any commercial price reporting service, or provided by any GSK Releasee to any such commercial price reporting service (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price). Each Class Member also expressly agreees to forever release any claims regarding any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, arising from the facts alleged in the MDL No. 1456 Complaints concerning the GSK Covered Drugs.

11

## EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT CLASSES

### 10.  What do I do if I don't want to be in the Proposed Settlement?

If you don't want to be in either or both of the Classes and you want to keep the right to sue GSK about the same claims on your own, you must take steps to get out of the Classes. This is called excluding yourself.  By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against GSK about the claims in this lawsuit.  If you exclude yourself from the Classes, you will not be able to file a claim for money or benefits and you will not be in the Proposed Settlement.

### 11.  How do I exclude myself from the Classes?

To exclude yourself from either or both of the Classes, you can (a) fill out and mail the attached opt-out form or (b) send a letter signed by you that includes all of the following:

- Your name, address, and telephone number;

- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456;

- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*

- A statement that you want to be excluded from either or both (or all) of the Classes, specifying which class you seek to exclude yourself from.

Your exclusion letter must be mailed first class, **postmarked on or before [Month Date,] 2006,** to:

> GSK AWP Litigation Administrator
> P.O. Box xxx
> City, State Zip code

Please remember that you can't exclude yourself by phone or by sending an email.

## COMMENTING ON THE PROPOSED SETTLEMENT

### 12.  Can I object to or comment on the Proposed Settlement?

If you have comments about, or disagree with, any aspect of the Proposed Settlement, including the requested attorneys' fees or the expense reimbursement plan, you may express your views to the Court through a written response to the Proposed Settlement. The written response should include your name, address, telephone number and a brief explanation of your reasons for objection.  The document **must** be signed to ensure the Court's review. The response must be postmarked no later than **Month, Day 2007** and mailed to:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse

1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

In addition, your document must clearly state that it relates to the following Civil Action Number:

01-CV-12257-PBS, MDL No. 1456

### 13. What is the difference between objecting to the Proposed Settlement and excluding myself from the Proposed Settlement?

An objection to the Proposed Settlement is made when you wish to remain a Class Member and be subject to the Proposed Settlement, but disagree with some aspect of the Proposed Settlement. An objection allows your views to be heard in Court. In contrast, exclusion means that you no longer are a Class Member and ultimately do not want to be subject to the Proposed Settlement's terms and conditions. Once excluded, you lose any right to object to the Proposed Settlement or to the attorneys' fees because the case no longer affects you.

## THE LAWYERS REPRESENTING YOU

### 14. Do I have a lawyer representing my interests in this case?

Yes. The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hagens-berman.com
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
    *and*
One Main Street, 4th Floor
Cambridge, MA 02142

Mark H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman & Kodroff, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Toriseva Wallace LLP
www.wtwlaw.us
One North LaSalle St., Suite 2000
Chicago, IL 60602

Kline & Specter, PC
www.klinespecter.com
The Nineteenth Floor
1525 Locust Street
Philadelphia, PA 19102

These lawyers are called Class Counsel. You won't be charged personally for these lawyers, but they will ask the Court to award them a fee to be paid out of the Settlement Fund. More information about Class Counsel and their experience is available at the Web

13

sites listed above.

### 15.  How will the lawyers be compensated?

Class Counsel will request that the Court award attorneys' fees not to exceed thirty-three and a third percent (33.33%) of the Proposed Settlement Fund, plus reimbursement of expenses.  The Court, at its own discretion, may award more or less than these requested amounts without further notice to the Class Members.  Again, if you choose to hire your own attorney, you will be responsible for that attorney's fees and expenses.

### 16. Should I get my own lawyer?

You don't need to hire your own lawyer. If you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (*see* Question 20 to find out how to submit a Notice of Appearance).  If you hire a lawyer to appear for you in the lawsuit, you will have to make your own arrangement for that lawyer's compensation.

### 17. Payments to Class Representatives

The Court may award payments to the individuals and entities who served as Class Representatives in this case, and any such payments will come out of the Settlement Fund. The lawyers for the Class will request the Court to award a total of $25,000 as payments to Consumer Class representatives in this case and $100,000 as payments to TPP Class representatives in this case.

## THE COURT'S FINAL APPROVAL HEARING

### 18.  When and where will the Court decide on whether to grant final approval of the Proposed Settlement?

The Court will hold a Final Approval Hearing on _____ at _____ to consider whether the Proposed Settlement is fair, reasonable, and adequate.  At the Hearing, the Court will decide whether to approve the Proposed Settlement and the motion for attorneys' fees and expenses.  If comments or objections have been received, the Court will consider them at this time.

Note: The hearings may be postponed to a different date without additional notice. Updated information will be posted on the GSK AWP Proposed Settlement website at _____.

### 19.  Must I attend the Final Approval Hearing?

Attendance is not required, even if you properly mailed a written response.  Class Counsel is prepared to answer the Court's questions on your behalf.  If you or your personal attorney still want to attend the hearing, you are more than welcome at your expense. However, it is not necessary that either of you attend.  As long as the objection was postmarked before the deadline the Court will consider it.

### 20. May I speak at the Final Approval Hearing?

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance should include the name and number of the lawsuit, and state that you wish to enter an appearance at the Fairness Hearing. It also must include your name, address, telephone number, and signature. Your "Notice of Appearance" **must** be postmarked no later than **Month Day 2007**. You cannot speak at Hearing if you asked to be excluded from the Proposed Settlement Class.

The Notice of Appearance must be filed with the Court at the following address:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

The Notice of Appearance must be filed using the following Civil Action Number:

> 01-CV-12257-PBS, MDL No. 1456

## GETTING MORE INFORMATION

### 21. Where do I obtain more information?

More details are in the Complaint filed by Class Counsel, and the other legal documents that have been filed with the Court in this lawsuit. You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210. www.xxxxxxx.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the GSK AWP Proposed Settlement website at www.xxxx
- Call toll free 1-xxx-xxx-xxxx (hearing impaired call 1-yyy-yyy-yyyy)
- Write to: GSK AWP Litigation Administrator, PO Box xxxx, City, State Zip

**[date]**

*In re Pharmaceutical Industry Average Wholesale Price Litigation*
Docket No. 01-CV-1225747-PBS, MDL No. 1456 – GSK Settlement

## CONSUMER CLAIM FORM

# I'd Like a Payment from the GSK Settlement Fund.

If you would like to submit a claim for part of the Settlement Fund, complete this
form and mail it to the address below, along with one proof of payment for each
drug (see Section D below).  You may be asked for more information at a later time.

**_Your claim must be postmarked by Month 00, 0000._**

**_It should be mailed to:_**          GSK AWP Settlement Administrator
                                        P.O. Box 000000
                                        City, ST 000000

### Section A – Claimant Identification

Please indicate whether you are claiming on your own behalf as a Class Member or
on behalf of someone else who is a Class Member:

\_\_\_\_          I am a Class Member

\_\_\_\_          I am an heir of a Class Member and am filing on behalf of the Class
              Member

If you are filing on behalf of a Class Member, please indicate your relationship to
the Class Member in the space provided below:

_____

_____

### Section B – Contact Information

_____
*Class Member's Name*

_____

*Claimant's Street Address*                                    *Apartment*

---

*City*                                    *State*                                    *Zip Code*

## Section C – Purchase Information

**In the chart below, please provide the amount paid by the Class Member, or the amount the Class Member is obligated to pay, for each of the GSK Covered Drugs listed below, during the Class Period listed at the top of the column.  Please place the amount of the payment under the column that corresponds to the Class to which the Class Member belongs.  A Class Member may have payments in just one of the Classes or both.  For the difference between the two Classes, please consult the Notice.**

**Do not include flat co-payments.**

|  | Drug Name | Medicare Part B Class<br><br>January 1, 1991 – January 1, 2005 | Private Payor Class<br><br>January 1, 1991 – August 10, 2006 |
|---|---|---|---|
| **GSK Category A Drugs** | **Kytril Injection (granisetron HCL)** | $ | $ |
|  | **Zofran Injection (ondansetron HCL)** | $ | $ |
|  |  |  |  |
| **GSK Category B Drugs** | **Alkeran (melphalan)** | $ | $ |
|  | **Imitrex (sumatriptan)** | $ | $ |
|  | **Kytril Tablets (granisetron HCL)** | $ | $ |

17

| | | | |
|---|---|---|---|
| | | | |
| | Lanoxin (digoxin) | $ | $ |
| | Myleran (busulfan) | $ | $ |
| | Navelbine (vinorelbine) | $ | $ |
| | Retrovir (zidovudine) | $ | $ |
| | Ventolin (albuterol) | $ | $ |
| | Zofran Orals (ondansetron HCL) | $ | $ |
| | Zovirax (acyclovir) | $ | $ |
| | Zantac (rantidine HCL) | $ | $ |

## Section D – Proof of Payment

**For each of the drugs for which you have provided a purchase amount in the table in Section C above, you must provide one (1) proof of payment.**

Proof of payment may be in the form of any of the following:

(1) a written prescription for the drug;

(2) a receipt, cancelled check, or credit card statement that shows you or the Class Member have paid for the drug;

(3) an EOB (explanation of benefits) that shows that you or the Class Member made or are obligated to make a percentage co-payment for the drug;

(4) a letter from your or the Class Member's physician stating that he or she prescribed and that the Class Member paid or is obligated to pay a percentage co-

18

payment for the drug at least once and setting forth the amount of the co-payment; or

(5) a written declaration by the Class Member attesting that they paid or are obligated to pay a percentage co-payment for the drug between January 1, 1991 through August 10, 2006, including the total of all percentage co-payments for the drug during that time period.

## Section E – Claimant Signature

I declare that the information provided here is correct. If not submitting this for myself, I declare that I am authorized to submit this form on behalf of the Class Member identified above.

_____          _____

*Signature*                                                          **Date**

*In re Pharmaceutical Industry Average Wholesale Price Litigation*
Docket No. 01-CV-1225747-PBS, MDL No. 1456 – GSK Settlement

## CONSUMER EXCLUSION FORM

# Only Complete this Form if You <u>DO NOT</u> Want to be Included in Either or Both of the GSK Settlement Classes

### *By Completing This Form You Are Excluding Yourself From Either or Both of The GSK Settlement Classes and You Will Not Be Included in the Proposed Settlement with GSK and You Will Not Be Able to File a Claim For Part of the Settlement Fund.*

Please check the box(es) indicating which of the Classes you wish to exclude yourself from:

☐ *Both Classes: (Medicare Co-Payment Class <u>and</u> Private Payor Class)*

☐ *Medicare Co-Payment Class only*

☐ *Private Payor Class only*

I would like to be excluded from the Class(es) indicated above.  I understand that by doing so I am excluding myself from either or both of the Classes and that as a result I will not be included in the Proposed Settlement as a member of the Class(es) from which I am excluding myself.  I understand that I will not be able to file a claim for a part of the Settlement Fund as a member of the Class(es) from which I am excluding myself.

_____

Name

_____

Street

_____

City, State, Zip code

_____

Signature                              Date

**Mail By [_____]  To:**
GSK AWP Litigation Administrator
P.O. Box XXX
City, State Zip Code

EXHIBIT B-1b

LONG FORM NOTICE TO TPPs, WITH CLAIM FORM

UNITED STATES DISTRICT COURT – DISTRICT OF MASSACHUSETTS

# If You Are a Third-Party Payor and Made Reimbursements for the GSK Drugs:

**Kytril Injectable** (Granisetron HCL)
**Zofran Injectable** (Ondansetron HCL)
**or**

| | |
|---|---|
| Alkeran (Melphanan) | Imitrex (Sumatriptan) |
| Kytril Tablets (Granisetron HCL) | Lanoxin (Digoxin) |
| Myleran (Busulfan) | Navelbine (Vinorelbine Tartrate) |
| Retrovir (Zidovudine) | Ventolin (Albuterol) or |
| Zofran Orals (Ondansetron HCL) | Zovirax (Acyclovir) |

## A Proposed Class Action Settlement May Affect Your Rights.

*The District Court has authorized this Notice. It is not a solicitation from a lawyer. You are not being sued*

- There is a Proposed Settlement with GlaxoSmithKline ("GSK"), one of the Defendants in a class action lawsuit pending in the U.S. District Court for the District of Massachusetts. The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456.

- The lawsuit claims that certain drug companies reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. The reported AWPs are used to set prescription drug prices that are paid by Medicare, consumers and insurers. The lawsuit asks the Court to award money damages to some people who paid or made co-payments for the drug.

- SmithKline Beecham Corporation, doing business as GlaxoSmithKline ("GSK"), has entered into a Proposed Settlement with the Plaintiffs and has agreed to pay $70 million to settle their claims and other related claims. After payment to certain State Attorneys General of $4.5 million, and after deducting attorneys' fees and costs of administering the Proposed Settlement, 70% of the net fund will be distributed in cash to Third-Party Payors (TPPs), including TPP Class Members and a group of Independent Settling Health Plans who have agreed to settle, who paid for all or part of the cost of the GSK Covered Drugs listed above and who submit valid claims.

1

- The GSK Covered Drugs fall into two categories, as follows: The "Category A" Drugs, namely **Kytril Injectables** and **Zofran Injectables**, and the "Category B" Drugs, namely **Alkeran, Imitrex, Kytril (tablets), Lanoxin, Myleran, Navelbine, Retrovir, Ventolin Zofran (orals) and Zantac**. A complete list of the GSK Covered Drugs, by National Drug Code number and J-Code is attached hereto as Attachment 1 to the GSK AWP Third-Party Payor Claim Form.

- There are two sub-Classes for TPPs who paid for the GSK Covered Drugs.

You are a member of **MediGap TPP Class** if you:

> Made reimbursements for all or part of your insured's 20% co-payment under Medicare Part B for a Covered Drug between January 1, 1991 and January 1, 2005.

You are a member of the **Private Payor TPP** Class if you:

> Reimbursed for a GSK Covered Drug outside of Medicare Part B based on a contract that used AWP as a reimbursement standard between January 1, 1991 and August 10, 2006.

**TPPs may be a member of either or both of the Classes.** As discussed below, certain entities are excluded from the classes.

The Court will be asked to decide whether to order final approval of the Proposed Settlement in this case.

# A Summary of Your Rights and Choices:

*Your Legal Rights Are Affected Even If You Do Not Act.*
*Read This Notice Carefully.*

| You May: | | Due Date: |
|---|---|---|
| *Remain in the Classes & File a Claim* | ***Stay in the lawsuit and file a claim*** <br> If you wish to stay in one or both or the Classes and file a claim you must do so in writing by the date listed. Whether or not you file a claim, if you don't exclude yourself you will not be able to sue GSK for the claims in this lawsuit and you will also be bound by the Court's decisions. **See Questions 8 and 9 .** | *Postmarked By Month Date 2007* |
| *Exclude Yourself* | ***Get out of the Classes.*** <br> You can write and ask to get out of either or both of the Classes and keep your right to sue GSK on your own about the claims in the lawsuit. **See Questions 10 and 11.** | *Postmarked by Month Date 2007* |
| *Object to the Proposed Settlement* | ***Object or comment on the Proposed Settlement.*** <br> If you don't exclude yourself, you can appear and speak in the lawsuit on your own or through your own lawyer to object or comment on the Proposed Settlement. (Class Counsel has been appointed to represent you.) **See Questions 12 and 13.** | *Postmarked by Month Date 2007* |

3

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**
1.  Why did I get this Notice?...................................................................................
2.  What is the lawsuit about?..................................................................................
3.  Why is this a class action?.................................................................................
4.  Who Qualifies as a Third-Party Payor?..........................................................
5.  Why is there a Proposed Settlement? ............................................................
6.  How do I know if I am included in the Proposed Settlement? ......................................

**BENEFITS OF THE PROPOSED SETTLEMENT – WHAT YOU GET**
7.  What does the Proposed Settlement provide? ...............................................
8.  How do I file a Claim? ......................................................................................

**REMAINING IN THE CLASS**
9.   What am I giving up if I do nothing and stay in the Class? ..........................................

**EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT**
10. What do I do if I don't want to be in the Proposed Settlement? ....................................
11. How do I exclude myself from the Classes? ..................................................

**COMMENTING ON THE PROPOSED SETTLEMENT**
12. Can I object to or comment on the Proposed Settlement?...............................................
13. What is the difference between objecting to the Proposed Settlement and excluding myself
     from the Proposed Settlement?.........................................................................

**THE LAWYERS REPRESENTING YOU**
14. Do I have a Lawyer representing my interests in this case?...........................................
15. How will the lawyers be compensated? ........................................................
16. Should I get my own lawyer?..........................................................................
17. Payments to Class Representatives …………………………………………………..

**THE COURT'S FINAL APPROVAL HEARING**
18. When and where will the Court decide on whether to grant final approval of the
     Proposed Settlement? .....................................................................................
19. Must I attend the hearing? ..............................................................................
20. May I speak at the hearing?............................................................................

**GETTING MORE INFORMATION**
21. Where do I obtain more information? .............................................................

4

## BASIC INFORMATION

### 1.  Why did I get this Notice?

You received this Notice because you are a TPP that may have made reimbursements for the GSK Covered Drugs between January 1, 1991 and August 10, 2006.  You may also have requested this Notice after seeing the Summary Notice in a publication.

This Notice explains:

- What the lawsuit and Proposed Settlement are about.
- What the lawsuits claim and what GSK says about the claims.
- Who is affected by the Proposed Settlement.
- Who represents the Class in the lawsuit.
- What your legal rights and choices are.
- How to file a claim.
- How and by when you need to act.

### 2.  What is the lawsuit about?

Plaintiffs allege that Defendant drug companies either report the average wholesale price ("AWP") of each drug they make to trade publications or provide those publications with information from which the publications calculate an AWP for each of Defendants' drugs. The published AWP of a drug has been used to set the price that consumers who made Medicare Part B co-payments and Medicare paid for the drug.  The published AWP is also often used by insurance companies to determine what they will reimburse doctors or pharmacies for these drugs.   The lawsuits claim, among other things, that Third-Party Payors ("TPPs") who made reimbursements for drugs covered by Medicare Part B (e.g., through Medigap" supplemental insurance policies) and TPPs who made reimbursements for such drugs based on a contract using AWP as a reimbursement standard paid more than they should have paid for the drugs at issue because drug companies, including GSK, intentionally reported false and inflated AWPs concerning the drugs at issue.

GSK denies any wrongdoing.  The Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated.  GSK has entered into the Proposed Settlement solely to avoid further expense, inconvenience, and the burden of these litigations and any other present or future litigation arising out of the facts that allegedly gave rise to these litigations.  GSK also wishes to avoid the distractions and diversion of their personnel and resources, and thereby to put to rest this controversy and to avoid the risks inherent in uncertain complex litigation.

### 3.  Why is this a class action?

The Court has found that class action treatment is the superior method for the fair and efficient settling of this litigation.  In a class action lawsuit, one or more people or entities

called "class representatives" sue on behalf of people or entities who have similar claims. The people and entities together are a "class" or "class members." A court must determine if it will allow the lawsuit to proceed as a class action. If it does, a trial of the claims then decides the lawsuit for everyone in the class, or the Parties may settle without a trial. The Parties here have agreed to, and the Court has preliminarily approved, a settlement that includes two national classes of TPPs who reimbursed for GSK Covered Drugs. You could be a member of one or both of these Classes.

## 4. Who qualifies as a Third-Party Payor?

A TPP is an entity that is:

(a) A party to a contract, issuer of a policy, or sponsor of a plan, *and*

(b) At risk, under such contract, policy, or plan, to pay or reimburse all or part of the cost of prescription drugs dispensed to covered natural persons.

TPPs include insurance companies, union health and welfare benefit plans and self-insured employers. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a third-party claims administrator to administer their prescription drug benefits can qualify as TPPs. Third-party claim administrators may also file a claim on behalf of a self-funded plan if the third-party claim administrator has legal authority and authorization from the self-funded plan to do so. A non-Medicaid state or local government entity that made AWP-based prescription drug payments as part of a health benefit plan for their employees also qualifies as a TPP under the Proposed Settlement, but only with respect to such AWP-based payments.

## 5. Why is there a Proposed Settlement?

A settlement is the resulting agreement between a plaintiff and defendant following extended negotiation in a case set for trial. Settlements conclude litigation but are not a result of the court ruling in favor of either the plaintiff or defendant. The settlement enables both parties to avoid the cost and risk of a trial, and ultimately establish a just, fair and final resolution that is best for all involved. The class representatives and their attorneys make the final determination that the settlement is the best result for all class members. The Court will then review the terms of the proposed settlement and hold a hearing on the fairness and adequacy of the settlement to the class. If the Court approves the settlement, then the defendants are released from any liability based upon the alleged illegal behavior forming the basis of the complaint.

## 6. How do I know if I am included in the Proposed Settlement?

Unless you exclude yourself as described in Question 11 of this notice, you will be included in the Proposed Settlement if you are a member of one or both of the Classes described below:

You are a member of the **MediGap TPP Class** if you:

> Made reimbursements for all or part of your insured's 20% co-payment under Medicare Part B for a Covered Drug between January 1, 1991 and January 1, 2005,

You are a member of the **Private Payor TPP Class** if you:

> Reimbursed for a GSK Covered Drug outside of Medicare Part B based on a contract that uses AWP as a reimbursement benchmark between January 1, 1991 and August 10, 2006.

Excluded by definition from the MediGap TPP Class and the Private Payor Class are: (1) the United States government and its agencies and departments, and all other governmental entities that made payments pursuant to any state's Medicaid program; (2) the Independent Settling Health Plans (ISHPs), as defined in Paragraph 2(w) of the Settlement Agreement; and (3) all federal, state or local governmental entities, *except for* the following, which are *not* excluded from the Medigap TPP or Private Payor Classes:  (a) non-Medicaid state or local government entities that made AWP-based prescription drug payments as part of a health benefit plan for their employees, but only with respect to such payments, and (b) other non-Medicaid state government agencies or programs of the Participating States and of the Additional Participating States (as defined in the Settlement Agreement), if any, *except that* such agencies and programs in New York and Connecticut *are* excluded.

## BENEFITS OF THE PROPOSED SETTLEMENT – WHAT YOU GET

### 7.   What does the Proposed Settlement provide?

GSK has entered into a Proposed Settlement with the Plaintiffs and has agreed to pay $70 million to settle these and other related claims.  A $4.5 million payment to certain State Attorneys General as well as attorneys' fees and the costs of administering the Proposed Settlement will be deducted from the Settlement Fund before distributions to Class Members.

- 30% of the remaining fund will be distributed in cash to consumer Class Members who paid for all or part of the cost of the drugs and submit a valid claim form.

- 70% of the remaining fund will be set aside to pay the claims of insurer Class Members (sometimes referred to as "Third-Party Payor Class Members" or "TPP Class Members") who have submitted a valid claim and a separate and independent group of TPPs (referred to as the "Independent Settling Health Plans" or "ISHPs") who have agreed to settle their claims against GSK for a portion of the Settlement funds.

The Court must approve the distribution of the Settlement Fund.

### 8.   How does a TPP Class Member file a claim?

Attached to this notice is a TPP claim form.  TPP Class Members must fill out the TPP claim form and submit it to the Claims Administrator, postmarked by MONTH DAY, YEAR, and addressed to:

_____

_____

As part of their claim, each TPP Class Member shall be required to certify that they are a TPP Class Member and they have not included claims on behalf of any TPP Class Member that are readily identifiable as having been based on a reimbursement standard other than AWP, and must provide the Claims Administrator with the total amount of their expenditures for each GSK Covered Drug during the period from January 1, 1999 to December 31, 2003. This period is substituted for claims associated with the full Class Period in recognition of the difficulty TPPs have in accessing claims data that is older and likely not kept electronically or on current electronic systems. This "proxy period" shall be used to determine the payments made to each TPP Class Member in accordance with the procedures set forth herein.

In order to validate their claim for payment associated with the GSK Covered Drugs for which they seek payment from the Proposed Settlement, TPP Class Members with claimed purchases for all GSK Covered Drugs during the proxy period that exceed $300,000.00 in total are required to submit electronic claims documentation with their claim. The form and data required to be submitted are delineated in the attached TPP Claim Form. Those TPPs whose claimed purchases for all Covered Drugs are $300,000.00 or less need **not** submit electronic claims documentation with their claim but must furnish such claims documentation upon request of the Claims Administrator.

The total amount of a TPP Class Member's expenditures for each drug will be multiplied by the specific "Recognized Claim Percentage" or "RCP" for each drug in order to determine the amount of the TPP's recognized claim for that particular drug. The RCP for each GSK Covered Drug varies. TPP Class Members do not need to multiply their expenditures by the RCP, that will be done by the Claims Administrator.

The RCPs for each GSK Covered Drug are listed below:

|  | Drug Name | Dosages | Recognized Claim Percentage |
|---|---|---|---|
| GSK Category A Drugs | Kytril Injection (granisetron HCL) | Injection: 1mg/ml | 50% |
|  | Zofran Injection (ondansetron HCL) | Injection: 2mg/ml Injection (Pre-mixed): 32mg/50ml; 4mg/50ml | 50% |
|  |  |  |  |
| GSK Category B Drugs | Alkeran (melphalan) | Injection: 50mg Tablets: 2mg | 5% |
|  | Imitrex (sumatriptan) | Injection: 12mg/1ml (6mg/0.5ml) | 5% |

8

| | | | |
|---|---|---|---|
| | **Kytril Tablets**<br>**(granisetron HCL)** | Tablets: 1mg | **5%** |
| | **Lanoxin**<br>**(digoxin)** | Injection: 0.5mg/2ml;<br>0.1mg/ml | **5%** |
| | **Myleran**<br>**(busulfan)** | Tablets: 2mg | **5%** |
| | **Navelbine**<br>**(vinorelbine**<br>**tartrate)** | Injection: 10mg/ml;<br>50mg/5ml | **5%** |
| | **Retrovir**<br>**(zidovudine)** | IV Infusion: 10mg/ml | **5%** |
| | **Ventolin**<br>**(albuterol)** | Inhalation: 0.083% 3ml;<br>0.5% 5mg/ml | **5%** |
| | **Zofran Orals**<br>**(ondansetron HCL)** | Tablets: 4mg; 8mg; 24mg<br>Solution: 4mg/5ml<br>ODT: 4mg; 8mg | **5%** |
| | **Zovirax**<br>**(acyclovir)** | Powder for Injection:<br>500mg; 1000mg | **5%** |
| | **Zantac**<br>**(ranitidine HCL)** | Injection: 25 mg/ml<br>Injection (Pre-mixed):<br>50mg/50ml; 50mg/100ml | **5%** |

9

## REMAINING IN THE CLASSES

### 9.  What am I giving up If I do nothing and stay in the Classes?

If you do nothing, you will be included in the Classes.  You will be bound by the terms and conditions of the Proposed Settlement.  You will not be able to pursue any other lawsuit against GSK concerning the claims alleged in this lawsuit.  If the Proposed Settlement is approved, Plaintiffs claims against GSK will be "released."

The Proposed Settlement provides that the claims against GSK as set forth in the lawsuit will be released and members of the Classes will never be able to file a lawsuit for any claim related to this lawsuit.  All Class Members agree that they will not seek to file a claim against any GSK Releasee based, in whole or in part, on any of the claims in the lawsuit.

In addition, once the Settlement Agreement is approved, each Class Member expressly agrees to release any and all provisions, rights and benefits provided by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

Class Members also expressly agree to release any and all provisions, rights and benefits provided by any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

Class Members agree to forever release all claims even if they later discover new facts regarding the claims in the lawsuit.  This includes any claims related to the subject matter of the lawsuit whether known or unknown, suspected or unsuspected, contingent or non-contingent.  All claims related to the subject matter of the lawsuit will be released forever whether or not the facts were concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

Each Class Member also expressly agrees to release any and all Released Class Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code.  This includes claims relating to any drug price published by any commercial price reporting service, or provided by any GSK Releasee to any such commercial price reporting service  (including, but not limited to, AWP, SLP, WAC, NWP, WPP and Direct Price).  Each Class Member also expressly agreees to forever release any claims regarding any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, arising from the facts alleged in the MDL Complaints concerning the GSK Covered Drugs.

10

## EXCLUDING YOURSELF FROM THE PROPOSED SETTLEMENT CLASSES

### 10.  What do I do if I don't want to be in the Proposed Settlement?

If you don't want to be in either or both of the Classes and you want to keep the right to sue GSK about the same claims on your own, you must take steps to get out of the Classes. This is called excluding yourself.  By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against GSK about the claims in this lawsuit.  If you exclude yourself from the Classes, you will not be able to file a claim for money or benefits and you will not be in the Proposed Settlement.

### 11.  How do I exclude myself from the Classes?

To exclude yourself from one or more of the Classes, you must send a letter signed by you that includes all of the following:

- Your name, organization, address, and telephone number;
- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456;
- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*
- A statement that you want to be excluded from either or both (or all) of the Classes, specifying which class you seek to exclude yourself from.

Your exclusion letter must be mailed first class, **postmarked on or before [Month Date,] 2006,** to:

> GSK AWP Litigation Administrator
> P.O. Box xxx
> City, State Zip code

Please remember that you can't exclude yourself by phone or by sending an email.

## COMMENTING ON THE PROPOSED SETTLEMENT

### 12.  Can I object to or comment on the Proposed Settlement?

If you have comments about, or disagree with, any aspect of the Proposed Settlement, including the requested attorneys' fees or the expense reimbursement plan, you may express your views to the Court through a written response to the Proposed Settlement. The written response should include your name, address, telephone number and a brief explanation of your reasons for objection.  The document **must** be signed to ensure the Court's review. The response must be postmarked no later than **Month, Day 2007** and mailed to:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300

11

Boston, Massachusetts 02210

In addition, your document must clearly state that it relates to the following Civil Action Number:

01-CV-12257-PBS, MDL No. 1456

### 13.  What is the difference between objecting to the Proposed Settlement and excluding myself from the Proposed Settlement?

An objection to the Proposed Settlement is made when you wish to remain a Class Member and be subject to the Proposed Settlement, but disagree with some aspect of the Proposed Settlement.  An objection allows your views to be heard in Court.  In contrast, exclusion means that you no longer are a Class Member and ultimately do not want to be subject to the Proposed Settlement's terms and conditions.  Once excluded, you lose any right to object to the Proposed Settlement or to the attorneys' fees because the case no longer affects you.

## THE LAWYERS REPRESENTING YOU

### 14.  Do I have a lawyer representing my interests in this case?

Yes.  The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hagens-berman.com
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
*and*
One Main Street, 4th Floor
Cambridge, MA 02142

Mark H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman & Kodroff, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Toriseva Wallace LLP
www.wtwlaw.us
One North LaSalle St., Suite 2000
Chicago, IL 60602

Kline & Specter, PC
www.klinespecter.com
The Nineteenth Floor
1525 Locust Street
Philadelphia, PA 19102

These lawyers are called Class Counsel.  You won't be charged personally for these lawyers, but they will ask the Court to award them a fee to be paid out of the Settlement Fund.  More information about Class Counsel and their experience is available at the Web sites listed above.

12

### 15.  How will the lawyers be compensated?

Class Counsel will request that the Court award attorneys' fees not to exceed thirty-three and a third percent (33.33%) of the Proposed Settlement Fund, plus reimbursement of expenses.  The Court, at its own discretion, may award more or less than these requested amounts without further notice to the Class Members.  Again, if you choose to hire your own attorney, you will be responsible for that attorney's fees and expenses.

### 16. Should I get my own lawyer?

You don't need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (*see* Question 20 to find out how to submit a Notice of Appearance).  If you hire a lawyer to appear for you in the lawsuit, you will have to make your own arrangement for that lawyer's compensation.

### 17. Payments to Class Representatives

The Court may award payments to the individuals and entities who served as Class Representatives in this case, and any such payments will come out of the class Settlement Fund.  The lawyers for the Class will request the Court to award a total of $100,000 as payments to TPP Class representatives in this case and $25,000 as payments to Consumer Class representatives in this case.

## THE COURT'S FINAL APPROVAL HEARING

### 18.  When and where will the Court decide on whether to grant final approval of the Proposed Settlement?

The Court will hold a Final Approval Hearing on _____ at _____ to consider whether the Proposed Settlement is fair, reasonable, and adequate.  At the Hearing, the Court will decide whether to approve the Proposed Settlement and the motion for attorneys' fees and expenses.  If comments or objections have been received, the Court will consider them at this time.

Note: The hearings may be postponed to a different date without additional notice. Updated information will be posted on the GSK AWP Proposed Settlement Web site at

_____.

### 19.  Must I attend the Final Approval Hearing?

Attendance is not required, even if you properly mailed a written response. Class Counsel is prepared to answer the Court's questions on your behalf.  If you or your personal attorney still want to attend the hearing, you are more than welcome at your expense. However, it is not necessary that either of you attend.  As long as the objection was postmarked before the deadline the Court will consider it.

### 20.  May I speak at the Final Approval Hearing?

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance should include the name and number of the lawsuit, and state that you wish to enter an appearance at the Fairness Hearing. It also must include your name, organization, address, telephone number, and signature. Your "Notice of Appearance" **must** be postmarked no later than **Month Day 2007**. You cannot speak at Hearing if you asked to be excluded from the Proposed Settlement Class.

The Notice of Appearance must be filed with the Court at the following address:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

The Notice of Appearance must be filed using the following Civil Action Number:

> 01-CV-12257-PBS, MDL No. 1456

## GETTING MORE INFORMATION

### 21.  Where do I obtain more information?

More details are in the Complaint filed by Class Counsel, and the other legal documents that have been filed with the Court in this lawsuit. You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210. www.xxxxxxx.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the GSK AWP Proposed Settlement Web site www.xxxx
- Call toll free 1-xxx-xxx-xxxx (hearing impaired call 1-yyy-yyy-yyyy)
- Write to: GSK AWP Litigation Administrator, PO Box xxxx, City, State Zip

**[date]**

14

---

### GSK AWP THIRD-PARTY PAYOR CLAIM
~~FORM~~

---

To get a share of the Settlement Fund you need to complete and sign this Claim Form and mail it postmarked by **Month 00, 0000** to: GSK AWP Settlement Administrator, P.O. Box 00000, City ST 00000.

The information you provide will be kept confidential and will be used only for administering this Proposed Settlement.  If you have any questions please call the Settlement Administrator at
**1-800-000-0000.**

A TPP Class Member or an authorized agent can complete this Claim Form.  If both a Class Member and its authorized agent submit a Claim Form, the Settlement Administrator will only consider the Class Member's Claim Form.  The Settlement Administrator may request supporting documentation.  The claim may be rejected if any requested documentation is not provided.

If one or more Class Members has authorized you to submit a Claim Form on its behalf, you must provide the information requested in Section B in addition to the other information requested by this Claim Form.  You may submit a separate Claim Form for each Class Member that has duly authorized you to do so, OR you may submit one Claim Form for all such Class Members that have authorized you to do so, as long as you provide the information required (as indicated below) for each Class Member on whose behalf you are submitting the form.

If you are submitting Claim Forms both on your own behalf as a Class Member AND on behalf of one or more Class Members that have authorized you to do so, you should submit one Claim Form for yourself and another Claim Form or Forms for the other Class Member(s).  **Do not submit a Claim Form on behalf of any Class Member without specific prior authorization from that Class Member.**

### SECTION A – CLAIMANT IDENTIFICATION

Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below.  If you wish to make a claim as a Class Member *and also* as the authorized agent of other Class Members, please complete one Claim Form for your claim as a Class Member and a separate Claim Form for those Class Members for whom you are authorized to submit a claim:

___ I am the Class Member                    ___ I am filing as the authorized agent of a Class Member**

** As Authorized Agent, please check how your relationship with the Class Member is best described:

___ Third Party Administrator (other than a Pharmacy Benefits Manager)

___ Pharmacy Benefits Manager

15

Other (Explain):_____

## SECTION B – CLASS MEMBER OR AGENT INFORMATION

_____
*Class Member's/Authorized Agent's Name*

_____
*Street Address*                                    *Floor/Suite*

_____
*City*                                  *State*                    *Zip Code*

(_____)_____            (_____)_____
*Area Code -- Telephone Number*                     *Area Code -- Fax Number*

_____
*Class Member's/Authorized Agent's Tax Identification Number*

If you file as a Class Member, list other names by which you have been known or other Federal Employer Identification Numbers ("FEINs") you have used from January 1, 1991 through August 10, 2006.

_____
_____
_____

If you are filing as the Class Member, check the term below that best describes your company/entity:

    Health Insurance Company/HMO      Self-Insured Employee Health Plan

    Self-Insured Union Health & Welfare Fund    Other (Explain):_____

## SECTION C – CLAIM BY AUTHORIZED AGENT

Please list the Federal Employer Identification Number and the name of every Class Member for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this Proof of Claim as necessary). Alternatively, you may submit the requested list of Class Member names and FEINs in an acceptable electronic format. Please contact the Settlement Administrator to determine what formats are acceptable.

16

## SECTION D – TOTAL AMOUNT OF GSK COVERED DRUG PURCHASES

For each Class Member on whose behalf you are submitting a claim, state the total and final amount paid or reimbursed for each GSK Covered Drug with a date of service or date of fill from January 1, 1999 to December 31, 2003, net of co-pays, deductibles and co-insurance.  If you are claiming more than $300,000 you will need to provide additional information (*See* Section F).  If necessary, please duplicate this section so that you use it once for each Class Member on whose behalf you are submitting a claim.

**Current Name of Class Member:** _____

|  | **Drug Name** | **Medigap TPP Class** January 1, 1999 - December 1, 2003 | **Private Payor Class** January 1, 1999– December 1, 2003 |
|---|---|---|---|
| **GSK Category A Drugs** | **Kytril Injection (granisetron HCL)** | $ | $ |
| | **Zofran Injection (ondansetron HCL)** | $ | $ |
| | | | |
| **GSK Category B Drugs** | **Alkeran (melphalan)** | $ | $ |
| | **Imitrex (sumatriptan)** | $ | $ |
| | **Kytril Tablets (granisetron HCL)** | $ | $ |
| | **Lanoxin (digoxin)** | $ | $ |

| | | $ | $ |
|---|---|---|---|
| | **Myleran (busulfan)** | $ | $ |
| | **Navelbine (vinorelbine)** | $ | $ |
| | **Retrovir (zidovudine)** | $ | $ |
| | **Ventolin (albuterol)** | $ | $ |
| | **Zofran Orals (ondansetron HCL)** | $ | $ |
| | **Zovirax (acyclovir)** | $ | $ |
| | **Zantac (rantidine HCL)** | $ | $ |

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the claimant.*

## SECTION E – JURISDICTION OF THE COURT AND CERTIFICATION

**Please duplicate this section and submit it for each TPP Class Member on whose behalf you are submitting a claim.**

By signing below, I hereby swear and affirm that: (1) I have authority to submit this Claim Form either directly or on behalf of the Class Member or as its Authorized Agent, and, in turn, have been given the authority to submit this Claim Form by each Class Member identified in this Claim Form and in any attachments to it, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the TPP Settlement Pool to such Class Member; (2) Each entity on whose behalf I have submitted a claim is a TPP Class Member, and I have not included claims on behalf of any TPP Class Member that are readily identifiable as having been based on a reimbursement standard other than AWP; (3) the information contained in this Claim Form and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (4) I, the Authorized Agent (if any), and the Class Member on whose behalf this Claim Form is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts (the "Court") for all purposes associated with this Claim Form and the Proposed Settlement, including resolution of disputes relating to this Claim Form; (5) in the event that amounts from the TPP Settlement Pool are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim an receive such amounts on its behalf,

the Authorized Agent, I and/or my employer will hold the Class, Counsel for the Class, Defendants, Counsel for Defendants, and the Settlement Administrator harmless with respect to any claims made by said Class Member.

_____

*Signature*                                           *Position*

_____

*Print Name*                                          *Month/Day/Year*

The following additional information is to be provided by the Individual that signs and certifies this Claim Form: I am filing this Claim Form as the authorized employee of the following Class Member or Authorized Agent for Class Member:

_____

*Name of Individual's Employer*

_____

*Business Address*              *City*              *State*              *Zip Code*

_( _____ )_____ _( _____ )_____

*Area Code – Telephone Number*        *Area Code – Fax Number*

_____

*E-mail Address*

Mail the completed Claim Form to the address listed on the reverse side, postmarked by **Month 00, 0000**

## SECTION F – CLAIM DOCUMENTATION INSTRUCTIONS

If you are claiming less than $300,000 of total purchases of all GSK Covered Drugs for the 1999-2003 period, you do not need to attach any additional information. However, even if your purchase amount is less than $300,000, you should retain the information required for claims over $300,000 because any claim may be audited.

If you are claiming $300,000 or more of total purchases of all GSK Covered Drugs you must provide documentation with your Claim Form sufficient to show the amount of purchases of each GSK Covered Drug during the period of January 1, 1999 to December 31, 2003, net of co-pays, deductibles, and/or co-insurance. In addition, inclusion of the following data fields will facilitate the claims review process, and TPP Class Members with claims in excess of $300,000 are therefore requested to provide it if practicable:

     a.     <u>J-Code or NDC Number</u>

19

The applicable J-Code or NDC Number for each transaction. The applicable J-Codes for each GSK Covered Drug as well as a list of NDC numbers is attached hereto.

b.    <u>Patient Identifier</u>

A random encrypted patient identification number for each transaction, which can be used to track claims.

c.    <u>Age</u>

Age information (*i.e.* the difference between date of birth and date of service or date of fill, rounded down to the nearest year) for each transaction.

d.    <u>Service and/or Fill Date</u>

Service date will often be available for J-Code entries and fill date will be available for NDC entries. If both are available, please include.

e.    <u>Group Number</u>

The group number assigned to each transaction. As part of the auditing process, you may be asked to provide corresponding group name for each group number. Only the Settlement Administrator will have access to this information.

f.    <u>Amount Billed</u>

The billed charges or the initial amount billed by the provider or providers before any adjustments.

g.    <u>Units</u>

If available, the units for each transaction should be provided.

**OTHER INFORMATION**

• Finally, each TPP Class Members shall provide a list of all self-funded healthcare plans ("SFP's") or other entities for which it is authorized to make a claim, including the identity of each entity on whose behalf the TPP Class Member is authorized to act by name and by the Federal Employer Identification Number assigned to such entity by the United States Internal Revenue Service, if the TPP Class Member has this information.

• All information you provide is subject to the protective order governing this action.

Please contact the Settlement Administrator at _____ with any questions about the required claims data.

**Attachment 1 -- GSK Covered Drugs and HCPCS Codes**

| NDC | Drug | Description | HCPCS Code(s) |
|-----|------|-------------|---------------|
| **GSK Category A Drugs** | | | |
| 00029414901 | Kytril | KYTRIL INJ SINGLE DOSE VIAL 1MG/ML | J1625, J1626 |
| 00029414975 | Kytril | KYTRIL INJ SGL DOSE VIAL 1MG/ML VHA | J1625, J1626 |
| 00029415201 | Kytril | KYTRIL 1MG/ML INJECTION 4ML VIAL | J1625, J1626 |
| 00173044200 | Zofran | ZOFRAN INJ 2MG/ML 20ML | J2405 |
| 00173044202 | Zofran | ZOFRAN INJ 2MG/ML 2ML 5S | J2405 |
| 00173046100 | Zofran | ZOFRAN INJ PRMXD 32MG/50ML | J2405 |
| 00173046200 | Zofran | ZOFRAN INJ PRMXD 4MG/50ML | J2405 |
| **GSK Category B Drugs** | | | |
| 00173004535 | Alkeran | ALKERAN TAB 2MG 50S | J8600 |
| 00173013093 | Alkeran | ALKERAN I.V. INJ 50 MG | J9245 |
| 00173044901 | Imitrex | IMITREX INJ 12MG/ML 0.5ML 2S PFLD SRNG | J3030 |
| 00173044902 | Imitrex | IMITREX INJ 0.5ML 12MG/ML 5S VIALS | J3030 |
| 00173044903 | Imitrex | IMITREX INJ 12MG/ML 0.5ML2S KIT,SELFDOSE | J3030 |
| 00173047800 | Imitrex | IMITREX INJ 12MG/ML STAT DOSE RFL 2'S | J3030 |
| 00173047900 | Imitrex | IMITREX INJ 12MG/ML STAT DOSE KIT | J3030 |
| 00029415105 | Kytril | KYTRIL 1 MG TABS 20'S SUP | Q0166 |
| 00029415139 | Kytril | KYTRIL 1MG TABS 2'S | Q0166 |
| 00173026010 | Lanoxin | LANOXIN INJ 0.5MG | J1160 |
| 00173026035 | Lanoxin | LANOXIN INJ 0.5MG 2ML 50S | J1160 |
| 00173026210 | Lanoxin | LANOXIN INJ PEDIATRIC 0.1MG/ML | J1160 |
| 00173071325 | Myleran | MYLERAN TAB 2MG 25S | J8510 |
| 00173065601 | Navelbine | NAVELBINE INJ 10MG 1ML | J9390 |
| 00173065644 | Navelbine | NAVELBINE INJ 50MG 5ML | J9390 |
| 00173010793 | Retrovir | RETROVIR IV INF 10MG/ML 20ML 10 | J3485 |
| 00173038558 | Ventolin | VENTOLIN SOL INH 0.5% 5MG/ML 20ML | J7618-19, J7620, J7625 |
| 00173041900 | Ventolin | VENTOLIN NEB SOL INH   0.083% 3ML 25S | J7618-19, J7620, J7625 |
| 00173044600 | Zofran | ZOFRAN TAB 4MG 30S | Q0179 |
| 00173044601 | Zofran | ZOFRAN TAB 4MG 100S | Q0179 |
| 00173044602 | Zofran | ZOFRAN TAB 4MG 100S UD | Q0179 |
| 00173044604 | Zofran | ZOFRAN TAB 4MG 3S | Q0179 |
| 00173044700 | Zofran | ZOFRAN TAB 8MG 30S | Q0179 |
| 00173044701 | Zofran | ZOFRAN TAB 8MG 100S | Q0179 |
| 00173044702 | Zofran | ZOFRAN TAB 8MG 100S UD | Q0179 |
| 00173044704 | Zofran | ZOFRAN TAB 8MG 3S | Q0179 |
| 00173048900 | Zofran | ZOFRAN ORAL SOL 4MG/5ML  50ML | Q0179 |
| 00173056900 | Zofran | ZOFRAN ODT 4MG 5X2 30S | Q0179 |
| 00173057000 | Zofran | ZOFRAN ODT 8MG 5X2 30S | Q0179 |
| 00173057004 | Zofran | ZOFRAN ODT 8MG 5X2 10'S | Q0179 |
| 00173068000 | Zofran | ZOFRAN TAB 24MG 1S | Q0179 |
| 00173095201 | Zovirax | ZOVIRAX FOR INJECTION 1000MG 20ML 10S (C | Q4075 |
| 00173099501 | Zovirax | ZOVIRAX FOR INJECTION 500MG 10ML 10S (C# | Q4075 |
| 00173036200 | Zantac | ZANTAC INJ 25MG/ML 2ML  PFLD SRNG | J2780 |
| 00173036238 | Zantac | ZANTAC INJ 25MG/ML 2ML 10S | J2780 |
| 00173036300 | Zantac | ZANTAC INJ 25MG/ML 40ML | J2780 |

21

| | | | |
|---|---|---|---|
| 00173036301 | Zantac | ZANTAC INJ 25MG/ML 6ML | J2780 |
| 00173036339 | Zantac | ZANTAC INJ 25MG/ML 10ML | J2780 |
| 00173040700 | Zantac | ZANTAC INJ PRMXD 50MG/100ML 24S | J2780 |
| 00173044100 | Zantac | ZANTAC INJ PRMXD 50MG/50ML 24S | J2780 |

## EXHIBIT B-2a

### SHORT FORM NOTICE TO CONSUMERS

UNITED STATES DISTRICT COURT – DISTRICT OF MASSACHUSETTS

# If You Made or Are Obligated to Make a Percentage Co-Payment or Full Payment for the GSK Drugs:

**Kytril Injectable** (Granisetron HCL)
**Zofran Injectable** (Ondansetron HCL)
**or**

| | |
|---|---|
| Alkeran (Melphanan)<br><br>Kytril Tablets (Granisetron HCL)<br><br>Myleran (Busulfan)<br><br>Retrovir (Zidovudine)<br><br>Zofran Orals (Ondansetron HCL) | Imitrex (Sumatriptan)<br><br>Lanoxin (Digoxin)<br><br>Navelbine (Vinorelbine Tartrate)<br><br>Ventolin (Albuterol) or<br><br>Zovirax (Acyclovir) |

## A Proposed Class Action Settlement May Affect Your Rights.

## Medicare Part B Beneficiaries (or their Heirs) are Included

There is a Proposed Settlement with GlaxoSmithKline ("GSK"), one of the Defendants in a class action lawsuit pending in the U.S. District Court for the District of Massachusetts. The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456..

### What is the Class Action Lawsuit About?
The lawsuit claims that certain drug companies reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. The reported AWPs are often used to set prescription drug prices that are paid by Medicare, consumers and insurers. The lawsuit asks the Court to award money damages to some people who paid or made co-payments for the drug.

### What Individuals are Class Members?
There are two sub-Classes for individual consumers who paid for the GSK Covered Drugs listed above.

- You are a member of **Medicare Co-Payment Class** if:
    You made or are currently obligated to make a percentage co-payment under Medicare Part B for any of the GSK Covered Drugs listed above (or are an heir to someone who made such a co-payment) from January 1, 1991 to January 1, 2005. You are excluded from this Class if you made flat co-payments, or you were reimbursed or have the right to be reimbursed in full for your co-payments.

- You are a member of the **Private Payor Class** if:

    You paid (or are currently obligated to pay) for any of the GSK Covered Drugs listed above outside of Medicare Part B, from January 1, 1991 to August 10, 2006 and

    Your payment was (a) for the full amount out-of-pocket, or (b) your payment was a percentage co-payment.  You're **not** included in the Class if you paid a fixed or flat co-payment.

### What Are the Terms of the Settlement?

GSK has agreed to pay $70 million to settle these and other related claims.  A $4.5 million payment to certain State Attorneys General, as well as attorneys' fees and the costs of administering the Proposed Settlement, will be deducted from the Settlement Fund before distributions to Class Members.

Thirty percent (30%) of the remaining fund will be distributed in cash to consumers who make valid claims.  Seventy percent (70%) of the remaining fund will be set aside to pay the claims of insurer Class Members who submit a valid claim and other insurers who are members of a separate and independent group of Third-Party Payors (referred to as the "Independent Settling Health Plans" or "ISHPs") who have agreed to settle their claims against GSK for a portion of the Settlement funds.

### Who Represents Me?

The Court has appointed attorneys to represent the Classes.  Class Counsel will request that the Court award attorneys' fees not to exceed thirty-three and a third percent (33.33%) of the Proposed Settlement Fund, plus reimbursement of expenses.  You may hire your own attorney, if you wish.  However, you will be responsible for that attorney's fees and expenses

### What Are My Legal Rights?

- **If you wish to remain a member of both Settlement Classes**, you do not have to do anything.  But, to share in the Settlement Fund you must file a claim as discussed below.  If the Court approves the Proposed Settlement, you will receive the benefits of the Proposed Settlement.  You will also be bound by all the Court's orders.  This means you will drop any claims you may have against GSK that are covered by the Settlement.

- **If you wish to file a claim,** you must complete a Claim Form. You can get a Claim Form by contacting the Claims Administrator in writing, at the address given below, or by calling the toll-free number.  It is also available on the GSK AWP Settlement Web site. Claim Forms must be signed and postmarked no later than **Month Date, 2007.**

- **If you do not wish to be a member of either or both of the Settlement Classes**, you must sign a Request For Exclusion form as outlined in the *Notice of Proposed Class Action Settlement*.  Your request must be postmarked no later than **Month Date, 2007.**

•**You can tell the Court if you do not like this Proposed Settlement** or some part of it if you do not exclude yourself. To object or comment, you must send a letter that is mailed and postmarked no later than Month Date, 2007, as outlined in the *Notice of Proposed Class Action Settlement.*

**Will the Court Approve the Proposed Settlement?**

The Court will hold a Final Approval Hearing on _____ at _____ to consider whether the Proposed Settlement is fair, reasonable, and adequate and the motion for attorneys' fees and expenses. If comments or objections have been received, the Court will consider them at that time.

## For a Notice of Proposed Class Action Settlement and a Claim Form

**Call toll-free: 1 800-xxx-xxxx or Visit: www.xxxxxxxx**
**Or Write: GSK AWP Litigation Administrator, c/o of Complete Claim**
**Solutions, P.O. Box 24654, West Palm Beach, FL 33416**

## EXHIBIT B-2b

### SHORT FORM NOTICE TO TPPs

# If You Are a Third-Party Payor and Made Reimbursements for the GSK Drugs:

**Kytril Injectable** (Granisetron HCL)
**Zofran Injectable** (Ondansetron HCL)
**or**

| | |
|---|---|
| Alkeran (Melphanan)<br><br>Kytril Tablets (Granisetron HCL)<br><br>Myleran (Busulfan)<br><br>Retrovir (Zidovudine)<br><br>Zofran Orals (Ondansetron HCL) | Imitrex (Sumatriptan)<br><br>Lanoxin (Digoxin)<br><br>Navelbine (Vinorelbine Tartrate)<br><br>Ventolin (Albuterol) or<br><br>Zovirax (Acyclovir) |

## A Proposed Class Action Settlement May Affect Your Rights.

There is a Proposed Settlement with GlaxoSmithKline ("GSK"), one of the Defendants in a class action lawsuit pending in the U.S. District Court for the District of Massachusetts. The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456.

### What is the Class Action Lawsuit About?

The lawsuit claims that certain drug companies reported false and inflated average wholesale prices ("AWP") for certain types of outpatient drugs. The reported AWPs are often used to set prescription drug prices that are paid by Medicare, consumers and insurers. The lawsuits ask the Court to award money damages to some Third-Party Payors ("TPPs") who made AWP-based reimbursements for the above-listed GSK Covered Drugs.

### What TPPs are Class Members?

There are two sub-Classes for TPPs.

- You are a member of **MediGap TPP Class** if you:

  Made reimbursements for all or part of your insured's 20% co-payment under Medicare Part B for a GSK Covered Drug between January 1, 1991 and January 1, 2005.

- You are a member of the **Private Payor TPP** Class if you:

  Reimbursed for a GSK Covered Drug outside of Medicare Part B based on a

contract that used AWP as a reimbursement benchmark between January 1, 1991 and August 10, 2006.

**What Are the Terms of the Settlement?**

GSK has agreed to pay $70 million to settle these and other related claims. A $4.5 million payment to certain State Attorneys General as well as attorneys' fees and the costs of administering the Proposed Settlement will be deducted from the Settlement Fund before distributions to Class Members.

Seventy percent (70%) of the remaining fund will be set aside to pay the claims of insurer Class Members who submit a valid claim and other insurers who are members of a separate and independent group of Third-Party Payors (referred to as the "Independent Settling Health Plans" or "ISHPs") who have agreed to settle their claims against GSK for a portion of the Settlement funds. Thirty percent (30%) of the remaining fund will be distributed in cash to individual consumers who make valid claims.

**Who Represents Me?**

The Court has appointed attorneys to represent the Classes. Class Counsel will request that the Court award attorneys' fees not to exceed thirty-three and a third percent (33.33%) of the Proposed Settlement Fund, plus reimbursement of expenses. You may hire your own attorney, if you wish. However, you will be responsible for that attorney's fees and expenses

**What Are My Legal Rights?**

• **If you wish to remain a member of both Settlement Classes**, you do not have to do anything. But, to share in the Settlement Fund you must file a claim as discussed below. If the Court approves the Proposed Settlement, you will receive the benefits of the Proposed Settlement. You will also be bound by all the Court's orders. This means you will drop any claims you may have against GSK that are covered by the Settlement.

• **If you wish to file a claim,** you must complete a Claim Form. You can get a Claim Form by contacting the Claims Administrator in writing, at the address given below, or by calling the toll-free number. It is also available on the GSK AWP Proposed Settlement Website, **at wwwXXXX.com.** Claim Forms must be signed and postmarked no later than Month Date, 2007.

• **If you do not wish to be a member of either or both of the Settlement Classes**, you must sign a Request For Exclusion form as outlined in the Notice of Proposed Class Action Settlement. Your request must be postmarked no later than Month Date, 2007.

• **You can tell the Court if you do not like this Proposed Settlement** or some part of it if you do not exclude yourself. To object or comment, you must send a letter that is mailed and postmarked no later than Month Date, 2007, as outlined in the *Notice of Proposed Class Action Settlement.*

**Will the Court Approve the Proposed Settlement?**

The Court will hold a Final Approval Hearing on _____ at _____ to consider whether the Proposed Settlement is fair, reasonable, and adequate and the motion for attorneys' fees and expenses.  If comments or objections have been received, the Court will consider them at that time.

## For a Notice of Proposed Class Action Settlement and a Claim Form

**Call  toll-free:  1 800-xxx-xxxx or Visit: www.xxxxxxxx**
**Or Write: GSK AWP Litigation Administrator, c/o of Complete Claim Solutions, P.O. Box 24654, West Palm Beach, FL  33416**