UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION _____ | )<br>)<br>)<br>)<br>)<br>)<br>) |
| THIS DOCUMENT RELATES TO: | )<br>)<br>)<br>) |
| *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc. and Hospira, Inc.,* CIVIL ACTION NO. 06-11337-PBS | )<br>)<br>)<br>)<br>)<br>) |

MDL No. 1456
Civil Action No. 01-12257-PBS

Subcategory Case No. 06-11337-PBS

Hon. Patti Saris

Magistrate Judge Marianne B. Bowler

EXHIBIT "A"

**RESPONSE OF PLAINTIFF
VEN-A-CARE OF THE FLORIDA KEYS, INC.
TO DEFENDANT ABBOTT LABORATORIES, INC.'S
INTERROGATORY NUMBER 20**

VEN-A-CARE OF THE FLORIDA KEYS, INC. ("Relator" or "Ven-A-Care"), by and through its undersigned counsel, pursuant to Judge Saris's Order dated September 17, 2008 files this Response to Defendant Abbott Laboratories, Inc.'s Interrogatory Number 20.

**INTERROGATORY NO. 20:**  Separately for each of the Ven-A-Care Qui Tam Complaints, state the basis for Ven-A-Care's contentions that the Relator had "direct and independent knowledge of the information and is the 'original source' of the information" on which the allegations contained in each of the complaints relating to Abbott are based, and describe all facts that support Ven-A-Care's contentions that this information was voluntarily provided to the United States before filing the complaints. See Ven-A-Care's Original

Complaint ¶ 4 (filed June 23, 1995); Ven-A-Care's Second Amended Complaint ¶¶ 4-5, 34 (filed Aug. 13, 1997); Ven-A-Care's Third Amended Complaint ¶¶ 4-5, 38-39 (filed Dec. 9, 1999); Ven-A-Care's Fourth Amended Complaint ¶¶ 18, 128 (filed Dec. 11, 2002); 31 U.S.C. § 3730(e)(4)(A) & (B). Identify any and all facts that support, concern, or refute Ven-A-Care's contention. As to each fact or event identified as supporting Ven-A-Care's contentions that it was an "original source" of information, your response should indicate the NDCs or J-Codes to which the fact or event relates and identify the specific date on which any referenced event occurred.

Please produce all documents that were identified in response to this Interrogatory, that relate to the information provided in response to this Interrogatory, or that were used in preparing a response to this Interrogatory. See Request No. 1 of Abbott's First Set of Requests for Production of Documents and Tangible Things to Plaintiff United States of America; Request No. 1 of Abbott's First Set of Requests.

**RESPONSE:**

Pursuant to Magistrate Judge Bowler's Order dated August 20, 2008 and the District Court Judge's modification of that Order dated September 17, 2008, Relator responds as follows:

Ven-A-Care objects to this interrogatory, in part, because Abbott Laboratories, Inc. ("Abbott") has failed to identify any specific public disclosure, as defined by 31 U.S.C. §3730(e), upon which it contends that Ven-A-Care's allegations are based. Abbott has persisted in this failure, notwithstanding the Court's Order that Ven-A-Care not be required to answer Interrogatory 20 until 14 days after Abbott answered an interrogatory posited by Ven-A-Care regarding Abbott's "public disclosure" contentions. Ven-A-Care submitted a detailed interrogatory to Abbott asking that Abbott specify the public disclosures upon which

2

it contends that Ven-A-Care's allegations are based.   However, Abbott has failed to fully respond to Ven-A-Care's interrogatory.  Instead Abbott, gave a general answer to Ven-A-Care's interrogatory along with a list of 128 documents, some of them very lengthy.  Abbott provided copies of some, but not all, of the documents, and entirely failed to specify any public disclosure upon which it contends that one or more of Ven-A-Care's allegations are based.  Ven-A-Care requested Abbott provide copies of all of the items.  However, Abbott failed to provide the copies before the deadline to respond.

Ven-A-Care attempted to meet and confer with Abbott in an effort to persuade Abbott to point to specific disclosures on which it contends one or more of Ven-A-Care's allegations are based and which fall within the definition provided by  31 U.S.C. §3730(e).  However, Ven-A-Care's efforts were unsuccessful.   Accordingly, Ven-A-Care does not attempt, in this answer, to speculate on alleged public disclosures that Abbott might advocate or what original source-related information Ven-A-Care might offer in turn.  Instead, and in accordance with Abbott's responses to Ven-A-Care's meet-and-confer efforts, this answer is limited to the basis for Ven-A-Care's allegations in its original Complaint and the amended Complaints listed in Abbott Interrogatory 20, that Ven-A-Care would qualify as an original source.

In each instance, Ven-A-Care's allegations were based upon Ven-A-Care's reasonable and good faith belief that it would qualify as an "original source" if and when any of its allegations were determined to be based upon a public disclosure under the False Claims Act, 31 U.S.C. §3730(e).  Said another way, while Ven-A-Care denies that any of its allegations were based upon a public disclosure, it alleged that it would qualify as an "original source" should a court determine to the contrary.  Generally, the basis for Ven-A-

3

Care's allegations related to "original source" is the same for each of Ven-A-Care's allegations and for each of its complaints.

The basis of Ven-A-Care's allegations as a whole is Ven-A-Care's status as a Florida pharmacy with direct and independent access to insider pharmaceutical pricing information and marketing practices. Ven-A-Care is a pharmacy licensed to provide all of the prescription drugs at issue in the United States' First Amended Complaint and, during the relevant period, was a Medicare Part B supplier and a Florida Medicaid provider with access to and direct and independent knowledge of reimbursement information. As a small pharmacy operating in Key West, Florida, Ven-A-Care has had direct and independent access to the actual prices charged pharmacies in the marketplace for the subject drugs alleged in, and over the period of time covered by, its complaints. Ven-A-Care has had direct and independent access to pricing information such as wholesaler and GPO catalogues and computer programs revealing the prices generally and currently available and paid in the marketplace by customers such as the Relator, but not known to the general public or the Government. The pricing information and information relating to computer programs have been provided to Abbott during the discovery of this matter both in the form of documents and testimony of Ven-A-Care's principal employees during the relevant time period: T. Mark Jones, John Lockwood, M.D., Luis Cobo and Zachary T. Bentley. Ven-A-Care's industry insider pricing information was NDC specific. Moreover, Ven-A-Care was targeted by, and thus exposed to, Abbott's marketing practices whereby it created huge spreads for the subject drugs through its inflated price reports and then directly and indirectly marketed those spreads to pharmacies such as Ven-A-Care. Also, Ven-A-Care was aware that the true prices were available to small pharmacies throughout

4

the United States because of the nature of the national marketplace.  Accordingly, Ven-A-Care was in a position to know the prices actually charged to the smallest Medicare and Medicaid providers in the marketplace.  It was also in a position to know that drug manufacturers, including Abbott, controlled the reported prices used by Medicare and Medicaid to set reimbursement rates and caused prices to be reported that were so far above those actually paid in the marketplace that mega-spreads were created as a marketing inducement.  Such marketing included, but was not limited to, engaging GPOs to communicate the spread to customers and communicating the spread through direct contracts and related communications with customers.

Ven-A-Care carefully studied the reimbursement protocols of the state Medicaid Programs, Medicare and the Medicare Carriers and learned that they were attempting to estimate acquisition costs based on the prices Abbott caused to be reported, in order to set reimbursement amounts in accordance with the applicable statutes and regulations. Further, since at least the early 1990s, Ven-A-Care actively assisted such government agencies and organizations as Florida Medicaid and HHS OIG by providing actual pricing and marketing information that was not otherwise available to the government.  Through its interface with knowledgeable government representatives, Ven-A-Care was aware when it filed its original complaint in June 1995 that the Medicare and Medicaid Programs were unaware that some drug manufacturers such as Abbott were controlling the reported prices (used by Medicare and Medicaid to set reimbursement) by reporting inflated false prices in order to cause mega-spreads that served as government-subsidized marketing inducements.

Ven-A-Care's knowledge was further confirmed by the programs' efforts to employ

5

such devices as Median AWPs, discounts off of AWP, direct price, WAC, FULs and MACs to resolve problems with the use of AWP to set reimbursement amounts. Ven-A-Care's ongoing exposure to the true prices in the marketplace and to Abbott's marketing practices enabled Ven-A-Care to learn that Abbott, along with its competitors such as McGaw and Baxter, were reporting falsely inflated prices for generics as well as in some instances brands, that, unbeknownst to the government, were frustrating, impeding and counteracting governmental efforts to use such devices to better estimate acquisition costs available and paid in the marketplace.  By way of example, Ven-A-Care knew that certain states, such as Florida, had implemented a reimbursement formula based on WAC, which was thought to be the actual cost to the wholesaler.  However, certain manufacturers, including Abbott, reported WAC prices that were falsely inflated. Ven-A-Care discovered a similar situation with direct prices.  Also, the reporting of inflated WACs and direct prices caused the setting of inflated FULs for certain drugs. Ven-A-Care continually reported its findings to representatives of the Department of Justice and the Miami U.S. Attorney's Office, and to HHS-OIG.

Ven-A-Care has previously responded to questions during depositions of employee witnesses and those designated under Federal Rule 30(b)(6) as to how it provided the government with Abbott's actual prices beginning in 1992 and explained Abbott's fraudulent course of conduct alleged in the original and subsequent complaints to the Department of Justice in 1994 and early 1995. Thereafter, Ven-A-Care continued to supplement its notices to the Department of Justice as it developed new information, such as the instance of Dennis Walker marketing the spread on Adriamycin to  Ven-A-Care's Zachary Bentley in May 1997.  The transmittals of documents related to Relator's submission of substantially

6

all information upon which its qui tam allegations were based are privileged and have been itemized on the Relator's privilege log.  However, all non-privileged, factual documents relevant to Abbott that Ven-A-Care provided to the Government have been produced to Abbott in this action, but have not been identified as such as to protect the privileged nature of Relator's communications with the Government.

Direct knowledge of industry insider pricing information and marketing practices is essential to allegations of the fraudulent course of conduct at issue in this case.  Long after the current MDL proceedings commenced, government plaintiffs continued to look to Ven-A-Care as their source for industry insider pricing information.  For example, the New York Counties' action was dismissed until the New York Counties filed an amended complaint relying on Ven-A-Care's NDC-specific prices, which the Court specifically pointed to as essential to the Counties ability to plead a claim for relief.  The New York Counties' example is representative of the knowledge and experience Ven-A-Care possessed before filing its original complaint and with respect to new allegations in each of its amended complaints. State and federal government representatives were unaware of Abbott's fraudulent course of conduct in general and did not have NDC-specific, actual pricing information over material time frames that pointed to specific drugs, by NDC number, where the fraud was being committed.  Ven-A-Care experienced this lack of information first with the responsible DOJ and OIG representatives, and subsequently with state Medicaid officials and Attorneys General.  Later, Ven-A-Care experienced a similar lack of information among senior members of the United States Congress and their staffs.  In fact, the Department of Justice used Ven-A-Care's pricing data to cause First DataBank to adjust the AWPs reported by First DataBank in 2000.  Abbott's own documents referred to

the new First DataBank prices as "Ven-A-Care AWPs."

Ven-A-Care further responds to Abbott's request that it, in effect, identify each disclosure that it made to the government that may have a bearing on an original source determination. As stated above, the information relevant to any original source determination will depend upon the specific alleged public disclosure which Abbott contends that Ven-A-Care's allegations are based upon.  Ven- A-Care's  current officers have provided testimony about Ven-A-Care's pre-filing disclosures to the government of Abbott's fraudulent course  of conduct at issue in the Complaint and amended complaint, beginning in 1992 with its disclosures of the general use of inflated reimbursement amounts as a financial inducement, Abbott's actual NDC specific pricing made available to industry insiders such as Ven-A-Care and the resulting spread, the marketing of Abbott's spreads through direct contracts, GPOs and wholesalers and, in the latter part of 1994 and the early part of 1995, actual meetings and discussions with representatives of the Department of Justice wherein Ven-A-Care and its counsel set forth Abbott's fraudulent course of conduct that Ven-A-care intended to allege in a False Claims Act qui tam action.  Much of the detailed information provided to the Government was also part of the allegations in VAC's original qui tam complaint, which was provided to the Government in advance of filing. Similarly, Ven-A-Care's amended complaints were provided to the Government in advance of filing.

Additional information responsive to this interrogatory may be contained in previous responses to interrogatories, documents provided by Ven-A-Care to Abbott in discovery and deposition testimony that has taken place in this action.

DATED: November 17, 2008

For the Relator,
Ven-A-Care of the Florida Keys, Inc.


 /s/ Alison W. Simon
James J. Breen
Alison W. Simon
The Breen Law Firm
P. O. Box 297470
Pembroke Pines, FL  33029-7470
Phone:  954-874-1635
Fax: 954-874-1739


**CERTIFICATE OF SERVICE**

I hereby certify that I have this 17th day of November, 2008 caused an electronic copy of the above NOTICE OF FILING RESPONSE OF PLAINTIFF VEN-A-CARE OF THE FLORIDA KEYS, INC. TO DEFENDANT ABBOTT LABORATORIES, INC.'S INTERROGATORY NUMBER 20 to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Alison W. Simon
Alison W. Simon

STATE OF *Florida*

COUNTY OF *Monroe*

## VERIFICATION

BEFORE ME, the undersigned notary, a person authorized to administer oaths,

on this day, personally appeared  T. MARK JONES, President of Ven-A-Care of the

Florida Keys, Inc., a person whose identity is known to me.  After I administered an oath

to him, upon his oath, he said the following: He has read the RESPONSE OF

PLAINTIFF VEN-A-CARE OF THE FLORIDA KEYS, INC. TO DEFENDANT ABBOTT

LABORATORIES, INC.'S INTERROGATORY NUMBER 20 and the facts stated in the

response are either within his personal knowledge and are true and correct or are true

and correct to his knowledge and belief, based upon information supplied to him by

other persons.

T. Mark Jones
President, Ven-A-Care of the Florida Keys, Inc.

SWORN TO and SUBSCRIBED before me by _____ on this 7th day of

*November*

~~October~~, 2008

Notary Public in and for the State of Florida

My Commission Expires:



BECKY D. HERNANDEZ-BAUER
Notary Public - State of Florida
My Comm. Expires Oct 1, 2012
Commission # DD 827643
Bonded Through National Notary Assn.