UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No.1456<br>Master File No. 01-CV-12257-PBS<br>Subcategory Case No. 06-11337-PBS |
| THIS DOCUMENT RELATES TO:<br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al.*, Civil Action No. 07-10248-PBS | Judge Patti B. Saris |

**BOEHRINGER INGELHEIM ROXANE, INC.'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND RULE 30(b)(6) DEPOSITION OF KANSAS HEALTH POLICY
AUTHORITY AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Rules 37 and 45 of the Rules of Civil Procedure and Rule 37.1 of the Local Rules of this Court, defendant Boehringer Ingelheim Roxane, Inc. ("Roxane"), f/k/a Roxane Laboratories, Inc., moves to compel compliance with a subpoena *duces tecum* and a subpoena for Rule 30(b)(6) deposition testimony served on Kansas Health Policy Authority ("Kansas Health"), the agency that oversees the Kansas Medicaid program. Kansas Health has ***never*** objected to the deposition subpoena and, until very recently, agreed to provide documents responsive to the subpoena *duces tecum*. Kansas Health has not filed a motion to quash either subpoena, nor has it sought a protective order requesting any relief from a court. It now refuses to comply with the subpoenas, however, citing the fact that late last month it filed its own AWP lawsuit as its purported justification. Kansas Health's refusal to comply with its discovery obligations is not justified and should not be countenanced. Roxane therefore respectfully requests that Kansas Health be compelled to comply with the subpoenas before the December

15, 2008 fact discovery cut-off in this case, or at a time convenient to all counsel shortly after that date.

By way of background, Plaintiff the United States seeks hundreds of millions of dollars in damages for claims related to the federal funding provided to state Medicaid programs. Given the federal government's claims and defenses applicable to them, discovery of each state's Medicaid program -- through Rule 30(b)(6) and 30(b)(1) depositions and document requests -- is equally critical to all parties. The Court has agreed:

> But it's a lot of money, and one thing I did learn from Massachusetts cases is that each Medicaid program -- it's not what first meets the eye. Each one is very complicated with its own culture, traditions, practices, policies. I just can't, with the amount of money we're talking about, say they can't take depositions.

(Transcript of Status Conference, dated July 24, 2008 ("7/24/08 Status Conf. Hr'g Tr."), 27) Since the July 24, 2008 status conference, Roxane, along with the Dey and Abbott Defendants, have worked with the United States to coordinate discovery of the various State Medicaid programs. The parties have sought deposition and document discovery from numerous state Medicaid agencies, including Kansas' Medicaid agency. Where appropriate and feasible, the parties have participated in the ongoing discovery occurring in the various state AWP cases.

Roxane served a subpoena *duces tecum* on Kansas Health on June 10, 2008 and requested a knowledgeable designated witness on July 23, 2008. Agency counsel for Kansas Health initially cooperated with Roxane. On July 31, 2008, Kansas provided a limited production of a mere twenty-six documents, but later promised to provide a more fulsome production starting in October. The State also agreed -- without objection -- to provide a representative to address each of the topics in Roxane's 30(b)(6) deposition subpoena.

Very recently, however, outside counsel retained by the State of Kansas made an abrupt about face and reneged on Kansas Health's previous agreements. The purported reason for

Kansas Health's failure to honor its subpoena obligations is that Kansas decided to file its own AWP suit against numerous drug manufacturers and does not want discovery to occur without the participation of the numerous parties to the state AWP action.[1]  But the fundamental problem with Kansas Health's discovery conduct is that it cannot unilaterally decide which discovery obligations imposed by the Federal Rules of Civil Procedure it will adhere to, and those it may blithely ignore.  Moreover, because there has been *no* meaningful discovery concerning Kansas Health, nor is there any likelihood that such will be completed any time soon, Kansas Health cannot indefinitely postpone discovery to a time convenient to all of the various parties involved with the thirty or more lawsuits filed only weeks ago.

A subpoena is a command from a federal court.  Here, there are two legally valid subpoenas that command Kansas Health's compliance now and, given the deadlines in this case and the infancy of the Kansas AWP action, Roxane simply cannot wait for discovery to be taken by the parties in the Kansas AWP action.  Accordingly, Roxane has been left with little choice but to seek an order from this Court compelling Kansas Health to complete its document production and make a representative available to testify on each of the topics in Roxane's Rule 30(b)(6) deposition subpoena.  There is no valid reason for Kansas Health's refusal.

## BACKGROUND

Pursuant to Fed. R. Civ. P. 45, on June 10, 2008, Roxane served its subpoena *duces tecum* on Kansas Health and later extended the deadline for Kansas Health's response to that subpoena until July 31, 2008. (J. Reale Affidavit in Support of Mot. To Compel, ¶¶ 2-3, Exhibits A & B)  Roxane's discovery requests sought responsive documents maintained by Kansas Health, a point reiterated in subsequent communications with counsel for the agency.  Kansas

---

[1] As it stands, it appears that the State of Kansas has filed individual complaints against at least thirty pharmaceutical companies.

Health served its response to Roxane's subpoena *duces tecum* on July 31, 2008 and made a modest production of twenty-six documents at that time. (*Id.*, ¶ 4, Exhibit C)

On July 23, 2008, Roxane served a subpoena for Rule 30(b)(6) deposition testimony from Kansas Health, noticing the deposition for October 27, 2008. (*Id.*, ¶ 5, Exhibit D) At no time has Kansas Health ever served any objection to Roxane's request for Rule 30(b)(6) deposition testimony, nor has any relief been sought from the federal courts.

Although Kansas Health objected to some of the requests, it later agreed to produce further responsive documents. On September 9, 2008, agency counsel for Kansas Health, Tariq Abdullah, stated that Kansas Health would complete its document production by November 12, 2008, but agreed to provide responsive documents on a rolling basis. (*Id.*, ¶ 6, Exhibit E) On October 22, 2008, Mr. Abdullah notified Roxane's counsel that Kansas Health would provide a supplemental document production within days and finalize its selection of its Rule 30(b)(6) deponent. (*Id.*, ¶ 7, Exhibit F) But, later that same evening, Mr. Abdullah changed course and said that Kansas Health would not send any documents to Roxane until the Kansas Attorney General's Office completed a secondary review of the production. (*Id.*, ¶ 8, Exhibit G) In the nearly four weeks since Mr. Abdullah's last email, Kansas Health has not provided any responsive documents, including the documents that he represented had been readied for production on October 22.

On October 23, 2008, the apparent reason for Mr. Abdullah's about face became clear. Clint Carter, an attorney with the law firm of Beasley Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley Allen"), announced in a letter that his firm had been retained by the State of Kansas. (*Id.* ¶ 9, Exhibit H) And, despite Kansas Health's previous commitment to complete its document production and provide a 30(b)(6) deponent, Mr. Carter stated that the deposition

"need[ed] to be postponed for many reasons, including, but not limited to, our recent retention as counsel, scheduling conflicts and the fact that all parties to the Kansas AWP litigation will need to be present at any deposition of a representative of the Kansas Health Policy Authority."[2]  (*Id.*)

In a letter dated October 27, 2008, counsel for Roxane responded to Mr. Carter's unilateral postponement of the deposition, pointing out not only the untimely nature of Kansas' objection but that Roxane had a fact discovery deadline of December 15, 2008 and therefore needed Kansas Health to complete its production and provide a Rule 30(b)(6) witness by that date.  (*Id.*, ¶ 10, Exhibit I)

Counsel for the parties held a meet-and-confer telephone conference on Friday, November 7, 2008.  (*Id.*, ¶ 11)  During the telephone conference, counsel for Roxane again explained to Mr. Carter the deadlines applicable in this case and the need to complete discovery by December 15, 2008.  (*Id.*)  Indeed, although counsel for Roxane reiterated that at no point had Kansas Health ever objected to any of the topics listed in Roxane's Rule 30(b)(6) subpoena, let alone moved for a protective order as it is required to do, Mr. Carter re-asserted his position that the Rule 30(b)(6) deposition needed to be postponed indefinitely because of Kansas' recently filed AWP suit.  (*Id.*)  Although Mr. Carter suggested that Roxane simply participate in any discovery that he believed would eventually occur in the newly filed state AWP action, he conceded that discovery would not be completed by December 15, 2008 and could make no assurances that it would be completed by either March 13, 2009, Roxane's expert disclosure

---

[2]  There have been ***no*** responsive pleadings to any of the complaints served by the State of Kansas, let alone a scheduling order.

deadline, or by June 26, 2009, the deadline for all parties to file summary judgment motions.[3] (*Id.*)

Mr. Carter requested that he be given until the close of business on Monday, November 10, 2008 to decide whether Kansas would complete its document production and make available a deponent to address the Rule 30(b)(6) topics by December 15, 2008.  (*Id.*)  That day came and went, and Mr. Carter never responded.  (*Id.*)  On November 11, 2008, after counsel for Roxane had left a voice message for Mr. Carter regarding Kansas' discovery intentions, Mr. Carter confirmed by email that Kansas would not comply with the subpoenas nor allow any other further discovery of Kansas Health at this time.  (*Id.*, ¶ 12-13, Exhibit J)

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure permit a party to command documents and testimony from nonparties by way of subpoena.  *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); Fed. R. Civ. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a separate subpoena.").  The scope of discovery permitted under Rule 45 is the same as the scope of discovery under Rules 26(b) and 34.  *See* Advisory Committee Notes, Fed. R. Civ. P. 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.")  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to the

---

[3] Moreover, Plaintiff the United States has objected to allowing Defendants to participate in the discovery of State Medicaid agency witnesses after the fact discovery cut-off of December 15, 2008.  (*Id.*, ¶ 14, Exhibit K)  Although the Court allowed Defendants to participate in the discovery that will take place in seven active AWP state cases after December 15, 2008, Kansas is not among those states because, *inter alia*, it is highly unlikely that ***any*** discovery will take place in Kansas before June 2009.

claim or defense." Fed. R. Civ. P. 26(b)(1). In short, the scope of discovery of third parties is broad. *See, e.g.*, *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001).

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(ii), a party may move for an order compelling an entity to make a designation under Rule 30(b)(6). And, upon a nonparty's failure to properly comply with a subpoena *duces tecum*, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Fed. R. Civ. P. 45(c)(2)(B)(i).

Although the document and deposition subpoenas requesting discovery of Kansas Health were issued by the District Court of Kansas, this Court has the authority to hear motions relating to discovery disputes arising from subpoenas issued by other district courts in the multi-district litigation ("MDL"). Indeed, this Court has recently held in another pending MDL that it could hear motions related to subpoenas issued by other districts in that MDL:

> [T]his Court has jurisdiction to issue orders related to the subpoenas at issue. The purpose of a multidistrict litigation consolidation is to "avoid duplicative discovery, prevent inconsistent pretrial rulings and conserve judicial resources." *In re Air Disaster*, 486 F.Supp. 241, 243 (Jud. Pan. Mult. Lit. 1980). The relevant statutes and caselaw provide for an MDL Court to resolve disputes arising from the service of Rule 45 subpoenas on non-parties located in other districts . . ..

*In re Neurontin Mktg.*, 245 F.R.D. 55, 57 (D. Mass. 2007) (overruling non-party's objection to MDL Court's exercise of jurisdiction over motion to compel documents pursuant to a subpoena *duces tecum*).

## ARGUMENT

I. **THE COURT SHOULD ORDER KANSAS HEALTH TO COMPLY WITH THE SUBPOENA *DUCES TECUM* AND THE SUBPOENA FOR A RULE 30(B)(6) DEPOSITION.**

There is no valid basis for Kansas Health's refusal to comply with either subpoena. As a threshold matter, Fed. R. Civ. P. 45(c)(2)(B) requires that the recipient of a subpoena *duces*

*tecum* serve written objections within fourteen days of service. This time limit is strictly construed, and "[w]hen objections are not filed within the time provided by the Rule, the objections are waived." *Burroughs Corp. v. Dataware Sources, Inc.*, NO. M.B.D. 86-608, 1987 WL 10190, at *1 (D. Mass. Apr. 28, 1987). Moreover, objections to a deposition subpoena must be voiced either by moving to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A), or by moving for a protective order pursuant to Fed. R. Civ. P. 26(c).

Nearly four months have passed and Kansas Health has never objected to the subpoena for a Rule 30(b)(6) deposition -- it has never filed a motion to quash nor has it sought a protective order. Moreover, Kansas Health agreed to produce documents in response to the subpoena *duces tecum* over three months ago. (*See, e.g.*, Ex. E)  Indeed, Kansas Health has never articulated a single reason why it could not complete its document production well in advance of December 15, especially considering documents were ready to be produced on October 22, and agency counsel for Kansas Health had committed to producing *all* responsive documents by the middle of November 2008. Neither Beasley Allen nor the State of Kansas can rewrite the Federal Rules to make compliance with a federal subpoena optional simply because the State has decided to file its own related lawsuit. Compliance with a federal subpoena is far from optional  -- it is a command issued from a federal court. *See generally* Fed. R. Civ. P. 45.

Simply put, Kansas Health has waived its right to object to these discovery requests and it cannot be heard to complain about compliance with its discovery obligations. *See Williams v. Keenan*, 106 F.R.D. 565, 567 (D. Mass. 1985) ("The deposition subpoena *duces tecum* is, in itself, a Court Order commanding the deponent to produce the documents specified therein.").

## **CONCLUSION**

For the foregoing reasons, defendant Boehringer Ingelheim Roxane, Inc., f/k/a Roxane Laboratories, Inc., requests that the Court enter an order compelling Kansas Health Policy Authority to produce all documents in its possession responsive to Roxane's subpoena *duces tecum*, and make a designation under Rule 30(b)(6) for its representative(s) to testify on all of the topics listed in the deposition subpoena by December 15, 2008, or at a time convenient to all counsel shortly after that date.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULES 7.1(A)(2) AND 37.1(A)**

Pursuant to Local Rules 7.1(a)(2) and 37.1(a), undersigned counsel hereby certifies that counsel for Roxane contacted counsel for the State of Kansas in a good faith effort to resolve or narrow the issues presented by this motion, but to no avail.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(D), Roxane requests oral argument on the issues raised in this Motion, which it believes will assist the Court in deciding this motion and request an opportunity to present one.

Dated:  November 20, 2008                            Respectfully submitted,

      /s/ John W. Reale
Helen E. Witt, P.C.
Anne M. Sidrys, P.C.
Eric T. Gortner
John W. Reale
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200
jreale@kirkland.com

*On behalf of Defendants Boehringer Ingelheim Corp., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc., and Roxane Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on November 20, 2008, a copy to LexisNexis File and Serve for posting and notification to all parties. I further certify that on November 20, 2008, the foregoing was served by overnight and electronic mail, addressed to the following:

>  Clint Carter
>  BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
>  218 Commerce Street
>  P.O. Box 4160
>  Montgomery, AL  36103-4160

                                                     By:   /s/ John W. Reale
                                                             John W. Reale