# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
|  | ) |
| THIS DOCUMENT RELATES TO: *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al.*, Civil Action No. 07-10248-PBS | ) ) ) ) ) ) |

MDL No.1456
Master File No. 01-CV-12257-PBS

Judge Patti B. Saris

## NOTICE OF NONPARTY DISCOVERY

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, subpoenas *duces tecum* (copies of which are attached hereto) were issued on June 10, 2008, by Defendant Boehringer Ingelheim Roxane, Inc., f/k/a Roxane Laboratories, Inc., to the following entities to produce documents at the time and place indicated in the subpoenas:

Kansas Health Policy Authority
c/o Custodian of Record
Room 900-N - Landon State Office Building
900 SW Jackson Street
Topeka, Kansas 66612


Oregon Department of Human Services
c/o Custodian of Records
500 Summer St. NE
Salem, OR 97301

Dated: June 10, 2008

/s/ Miriam L. Lieberman
Helen E. Witt, P.C.
Eric T. Gortner
John W. Reale
Miriam L. Lieberman
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Bruce A. Singal, BBO #464420
Richard Goldstein, BBO #565482
DONOGHUE BARRETT & SINGAL, P.C.
One Beacon Street
Boston, MA  02018
Telephone: (617) 720-5090
Facsimile: (617) 720-5092

*Counsel for Defendant Boehringer Ingelheim
Roxane, Inc.*

## CERTIFICATE OF SERVICE

I, Miriam L. Lieberman, certify that a true and correct copy of the foregoing **NOTICE OF NONPARTY DISCOVERY** was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on June 10, 2008, a copy to LexisNexis File and Serve for posting and notification to all parties.

/s/ Miriam L. Lieberman
Miriam L. Lieberman

3

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF      KANSAS

In Re: Pharmaceutical Industry Average Wholesale
Price Litigation

THIS DOCUMENT RELATES TO

*United States of America ex rel. Ven-A-Care of the Florida
Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et. al.*

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] MDL No. 1456
Civil Action No. 07-CV-10248-PBS
Lead Case No. 01-CV-12257-PBS

PENDING IN: UNITED STATES
DISTRICT COURT FOR THE DISTRICT
OF MASSACHUSETTS

TO:     Kansas Health Policy Authority, c/o Custodian of
Record, Room 900-N - Landon State Office Bldg
900 SW Jackson Street
Topeka, Kansas 66612

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Schedule A.

| PLACE    Miriam L. Lieberman c/o Andy Larsen at Hatfield Process Service/HPS Investigation 1669 Jefferson Street, Kansas City, Missouri 64108 | DATE AND TIME 6/27/2008 5:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Miriam Lauren Lieberman*  Attorney for Defendant Boehringer Ingelheim Roxane, Inc. | 6/10/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Miriam L. Lieberman, Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601    (312) 469-7334

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

---

**Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

## DOCUMENTS REQUESTED

1. **_State Plans and Supporting Data._** From January 1, 1991 to the present, all state Medicaid plans filed by the state under 42 U.S.C. § 1396(a) and, to the extent they relate to the Reimbursement of drugs or the administration or dispensing of drugs, all proposed or actual amendments to those plans, and all Communications with, or any records related to administrative or judicial proceedings by, the U.S. Government concerning those state plans or amendments.

2. **_Methods of Payment and Maximum Allowed Costs._** From January 1, 1991 to the present, Documents sufficient to identify the methodologies or formulas used to determine the State Medicaid Program's Reimbursement for the Subject Drugs and the Subject HCPCS Codes, including but not limited to all fee schedules, Reimbursement tables, and any state MAC, FUL, or other maximum payment amount. If maximum payment amounts applied to the Subject Drugs or Subject HCPCS Codes, all Documents concerning how the maximum payment amounts were set.

3. **_Findings & Assurances._** 42 C.F.R. § 447.518 provides as follows:

> (b) Upon proposing significant State plan changes in payments for prescription drugs, and at least annually for multiple source drugs and triennially for all other drugs, the agency must make the following findings and assurances: (1) Findings. The agency must make the following separate and distinct findings: (i) In the aggregate, its Medicaid expenditures for multiple source drugs, identified and listed in accordance with § 447.514(a) of this subpart, are in accordance with the upper limits specified in § 447.514(b) of this subpart; and (ii) In the aggregate, its Medicaid expenditures for all other drugs are in accordance with § 447.512 of this subpart. (2) Assurances. The agency must make assurances satisfactory to CMS that the requirements set forth in § § 447.512 and 447.514 of this subpart concerning upper limits and in

1

> paragraph (b)(1) of this section concerning agency findings are met.
>
> (c) Recordkeeping. The agency must maintain and make available to CMS, upon request, data, mathematical or statistical computations, comparisons, and any other pertinent records to support its findings and assurances.

From January 1, 1991 to the present, all materials created or maintained pursuant to 42 C.F.R. § 447.518, including but not limited to the "data, mathematical or statistical computations, comparisons, and any other pertinent records to support" the state's findings and assurances, and all Communications, guidance or interpretations provided by the U.S. Government relating to such findings and assurances.

4.      ***Examples of Claims Forms***.  For the time period from January 1, 1991 to the present, examples of each type of claim form used by Providers to seek Reimbursement from the State Medicaid Program for the Subject Drugs or Subject HCPCS Codes, whether reimbursed on an NDC Reimbursement basis or an HCPCS Code Reimbursement basis, including but not limited to screen shots from any Point of Sale System.

5.      ***Non-Medicaid Drug Reimbursement.***  Documents sufficient to identify the methodologies or formulas used by state governmental agencies or entities other than Medicaid to Reimburse the Subject Drugs.

6.      ***State Drug Purchases.***  Documents, sufficient to identify the purchase of any Subject Drugs by any state governmental agency, or entity acting on the state's behalf and any contract related thereto.

7.      ***Cost Savings.***  All Documents concerning any action, administrative or otherwise, considered, rejected, or taken by the State Medicaid Program, to implement any cost savings

measures regarding the Subject Drugs, including, but not limited to, use of managed care organizations, pharmacy benefit mangers, supplemental rebate agreements, prior authorization requirements, or participation in group purchasing organizations.

8. **_Establishment of Payment Rates_**.   From January 1, 1988 to the present, all Documents concerning how the State Medicaid Program or the state legislature established the payment amount to Providers for prescription drugs and/or the professional services associated with the dispensing or administration of drugs under the State Medicaid Program.

9. **_Proposed and Actual Reimbursement Rate Changes_**.   All Documents evidencing, constituting, concerning or referring to Communications with any person concerning the effects or potential effects on Medicaid Providers and Medicaid beneficiaries of any actual or proposed change to the amount or calculation of Medicaid Reimbursement paid to Medicaid Providers for prescription drugs or dispensing fees, including, but not limited to, all such Communications with Medicaid Providers, Medicaid beneficiaries, advocacy groups, the U.S. Government, members of the state legislature, or employees of other state non-Medicaid agencies.

10. **_Reimbursement of Drug Ingredient and Dispensing Costs_**.   From January 1, 1984 to the present, all Documents concerning whether the payment formula for the drug ingredient cost could compensate for or offset professional services associated with the dispensing or administration of drugs under Medicaid, or as a mechanism to encourage treatment outside of the hospital setting.

11. **_Acquisition Cost/Price Studies_**.   From January 1, 1984 to the present, any Document, data, report, presentation, correspondence, draft of legislative testimony,

3

Communication, testimony, audit, study, analysis, or survey (whether completed or not) relating to (a) the methodologies or formulas used to determine Reimbursement for drugs or the administration or dispensing of drugs within the State Medicaid Program; (b) the acquisition costs for prescription drugs by Providers; (c) the difference between any Medicaid Pricing Element and acquisition cost for any prescription drug; (d) EAC, FUL, AWP, WAC, AMP, or any other Pricing Element; or (e) the cost to Providers to dispense or administer prescription drugs, including but not limited to any studies or surveys performed by Myers & Stauffer LLC.

12.    ***Understanding of Terms***.   For the time period from January 1, 1984 to the present, all Documents concerning the meaning and calculation of AWP, WAC, EAC, List Price, Direct Price, any other Pricing Element, or Actual Acquisition Cost, including all Documents related to Your understanding of these figures and the State Medicaid Program's consideration of whether to use any of these figures in determining Reimbursement of prescription drugs.

13.    ***Communications with Governmental Groups***.   From January 1, 1984 to the present, all Communications between the State Medicaid Program and any member of the state legislature, the U.S. Government, any other state Medicaid program, any Medicaid fiscal intermediary, any Medicare contractor, NAMFCU, any MFCU, any Publisher, any Provider, the National Association of State Medicaid Directors, the National Governors' Association, or Ven-A-Care concerning (a) the methodologies or formulas to be used in determining Reimbursement for prescription drugs or the administration or dispensing of drugs (such as Program Memoranda, National Coverage Decisions, Local Medical Review Policies, Bulletins, newsletters meetings, seminars, circulars, governmental reports, or any transmission of data); (b) the acquisition costs of Providers for prescription drugs; (c) the difference between AWP and acquisition cost for any prescription drug; or (d) the cost to Providers to dispense or administer prescription drugs.  This

request includes but is not limited to all memoranda, reports or data provided by the CMS/HCFA, United States Department of Health and Human Services – Office of Inspector General, and the General Accounting Office.

14.   ***Communications with Non-Governmental Groups***.  From January 1, 1984 to the present, all Communications between the State Medicaid Program and any Manufacturer, Provider, professional or trade group, patients' rights group, law firm, or any other non-government organization relating to the methodologies or formulas used to determine Reimbursement of prescription drugs or professional services associated with the dispensing or administration of drugs.

15.   ***DOJ AWPs***.  All Documents concerning the revised AWP prices provided to You by the United States Department of Justice and NAMFCU, including but not limited to, Documents concerning Your decision to use or not use the revised AWP prices in reimbursing for pharmaceutical products and any Communications related thereto.

16.   ***Documents Concerning Communications with AWP Defendants***.  All Communications between the State Medicaid Program and the U.S. Government, including but not limited to the Department of Justice, CMS, or OIG, concerning any drug Manufacturer that is a defendant in any litigation relating to AWP, WAC, any other Pricing Element, and/or the pricing of drugs under Medicare or Medicaid.

17.   ***Drug Pricing Proceedings***.  All Documents concerning any proceedings, including, but not limited to, lawsuits, administrative or legislative proceedings, or criminal or civil investigations, in which Your employees or agents have testified, provided statements, or

been interviewed concerning the pricing or Reimbursement of pharmaceutical products, or access to healthcare and/or prescription drugs.

18.   *Publishers.*   All Documents, including any Communications, contracts or other Documents reflecting a relationship between the state and any Publisher regarding the purchase of or access to information regarding prescription drug pricing.

19.   *Average Manufacturer Price.*   From January 1, 1991 to the present, all Documents concerning whether and how the State Medicaid Program has utilized AMP information or compared AMP information with AWP, WAC, List Price, Direct Price, any other Pricing Element, or the amount at which the State Medicaid Program reimbursed for drugs.

20.   *Documents Previously Produced.*   From January 1, 1991 to the present, all Documents produced and statements or testimony given by any current or former employee of the State Medicaid Program concerning any evaluation or investigation of drug pricing.

21.   *Document Retention.*   Documents sufficient to describe Your Document retention or destruction policies applicable to the Documents sought by this subpoena, including any changes to, or departures from, such policies.

22.   *Communications with Dey and Roxane Defendants.*   From January 1, 1991 to the present, all Communications with Dey or Roxane Defendants regarding the Subject Drugs and/or Medicaid or Medicare Reimbursement, including new product letters and pricing notification letters sent by Dey or Roxane Defendants to the State Medicaid Program.

23.   *Provider Handbooks.*   The Provider handbooks and any Medicaid manuals in effect from 1989 to 2005.

6

24.   *Rebate Agreement.*   All Documents concerning the federal Medicaid Drug Rebate Program and any Medicaid drug rebate agreement pursuant to 42 U.S.C. § 1396r-8 that relate to Dey, Inc., Dey, L.P, Boehringer Ingelheim Roxane, Inc., or Roxane Laboratories, Inc.; all Documents containing AMPs sent from CMS to any State Medicaid Program or official; Documents sufficient to identify the amounts received each year by state under the Medicaid Drug Rebate Program for the Subject Drugs; Documents concerning the Medicaid Rebates for the Subject Drugs, including, but not limited to, Documents containing AMPs and/or unit rebate amounts and other Documents concerning Medicaid Rebates for the Subject Drugs; Documents exchanged by and between state and the Federal Government concerning how unit rebate amount ("URA") is determined; and Documents sufficient to explain the process by which the State Medicaid Program shares any amounts received by a drug Manufacturer pursuant to the Medicaid Drug Rebate Program with the Federal Government, if any.

25.   *Usual and Customary Charge.*   All Documents concerning the "usual and customary" prices for the Subject Drugs, including but not limited to all Documents concerning any audits and/or compliance efforts performed on or behalf of the State Medicaid Program regarding the usual and customary charges of Providers.

7

# DEFINITIONS AND INSTRUCTIONS

## Definitions

1.     "Actual Acquisition Cost" shall mean the net price (after discounts, rebates, or chargebacks) that an individual healthcare Provider or pharmacist pays to purchase a prescription drug intended for resale.

2.     "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

3.     "AWP" or "Average Wholesale Price" shall mean the pricing element as periodically published by any publisher or pharmaceuticals industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals (the "Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

4.     "CMS/HCFA" or "CMS" shall mean "Centers for Medicare and Medicaid Services," its predecessor agencies, including the Health Care Financing Administration ("HCFA"), and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

5.     "Communication" shall mean any oral or written exchange of words, thoughts or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by telex or by any other process, electric, electronic or otherwise.  All such Communications in writing shall include, without limitation, printed, typed, handwritten, or other readable Documents,

8

whether in hardcopy, electronic mail or stored electronically on a computer disk or otherwise, contracts, correspondence, diaries, drafts (initial and all subsequent), forecasts, invoices, logbooks, memoranda, minutes, notes, reports, statements, studies, surveys and any and all non-identical copies thereof.

6.     "Concern," "concerning," "relating to," or "relate to" shall mean refer to, regard, concern, describe, explain, state, evidence, record, constitute, pertain to, reflect, comprise, contain, embody, mention, show, support, contradict, and discuss, whether directly or indirectly, as required by the context to bring within the scope of the requests in this request for production of Documents any Documents that might be deemed outside their scope by another construction.

7.     "Dey" shall mean Dey, Inc., Dey, L.P, and Dey, L.P., Inc. and any of their past or present officials, officers, representatives, agents, assigns, attorneys, employees, divisions, departments, agencies, affiliates, subsidiaries, and all other persons or entities acting or purporting to act on their behalf or under their control.

8.     "Documents" shall mean all original written, recorded, or graphic matters whatsoever, and any and all non-identical copies thereof, including but not limited to advertisements, affidavits, agreements, analyses, applications, appointment books, bills, binders, books, books of account, brochures, calendars, charts, checks or other records of payment, Communications, computer printouts, computer storage data, conferences, or other meetings, contracts, correspondence, diaries, electronic mail, evaluations, facsimiles, files, filings, folders, forms, interviews, invoices, jottings, letters, lists, manuals, memoranda, microfilm or other data compilations from which information can be derived, minutes, notations, notebooks, notes, opinions, pamphlets, papers, photocopies, photographs or other visual images, policies,

recordings of telephone or other conversations, records, reports, resumes, schedules, scraps of paper, statements, studies, summaries, tangible things, tapes, telegraphs, telephone logs, telex messages, transcripts, website postings, and work papers, which are in the possession of the Carrier as defined above.  A draft or non-identical copy is a separate Document within the meaning of this term.

9.     "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.502.

10.     "Each," "any," and "all" shall mean "each and every."

11.     "Federal Government" shall mean all legislative and executive branches, agencies, departments, or committees of the United States Government, including the administrators, staff, employees, agents, consultants, accountants, attorneys, or representatives of any of the foregoing.  The United States Government includes, but is not limited to, CMS/HCFA, Congress, Department of Commerce, Department of Defense, Department of Justice, Department of Health and Human Services, Department of Health and Human Services-Office of Inspector General, Department of Veterans Affairs General Accounting Office, Medicare Payment Advisory Commission (MedPac), Office of Management and Budget, Office of Pharmacy Affairs/Pharmacy Affairs Branch, Pharmacy Support Services Center, and the National Association of Medicaid Fraud Control Units, and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of the foregoing.

12.   "FUL" or "Federal Upper Limit" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332 prior to January 2, 2008, and 42 C.F.R. § 447.514 as of January 2, 2008.

13.   "J-Code Reimbursement basis" shall mean the Reimbursement of drugs through use of a subset of the HCPCS code set with a high-order value of "J" (compare to "NDC Reimbursement basis").

14.   "MAC" shall mean the "Maximum Allowable Cost" and includes the meaning ascribed to that term in any State Plan, or as defined by any State Medicaid Program.

15.   "Manufacturer" shall mean a company that Manufactures pharmaceutical products.

16.   "Medicaid" shall mean the jointly funded federal-state health insurance program enacted in 1965 under Title XIX of the Social Security Act to pay for the costs of certain healthcare expenses of eligible beneficiaries.

17.   "Medicaid Crossover Claim" shall mean claims for which Medicare is the primary payor and the State Medicaid Program is the secondary payor.

18.   "Medicaid Drug Rebate Program" shall mean and refer to the program established by the Omnibus Budget Reconciliation Act of 1990, 42 U.S.C. § 1396r-8, as amended by the Veterans Health Act of 1992, whereby drug Manufacturers have national drug rebate agreements with HHS and a pricing agreement with HHS for the Public Health Service Section 340B Drug Pricing Program.

19.    "Medicare" shall mean the federal program enacted in 1965 under Title XVIII of the Social Security Act to pay for the costs of certain healthcare expenses of eligible beneficiaries.

20.    "Meeting" shall mean any discussion between two or more persons either in person, telephonically, or through other electronic means.

21.    "MFCU" shall mean individual state Medicaid Fraud Control Units, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

22.    "Myers & Stauffer" shall mean Myers & Stauffer, LC and any of its past or present trustees, officials, officers, fiduciaries, representatives, agents, assigns, attorneys, employees, divisions, departments, affiliates, and all other persons or entities acting or purporting to act on its behalf or under its control.

23.    "NAMFCU" shall mean National Association of Medicaid Fraud Control Units and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

24.    "NDC Reimbursement basis" shall mean the Reimbursement of drugs based on a Provider's submission of a National Drug Code ("NDC") (compare to "J-code Reimbursement basis").

25.    "Person" shall mean any natural person or any firm, business, legal, or governmental agency or association, or any other organization or entity.

26.    "Point of Sale System" shall mean a computer-transmitted claims processing system used by Providers to submit claims to the State Medicaid Program.

27.    "Pricing Element" shall mean any of the following:

(a)    Average Wholesale Price or "AWP";

(b)    Blue Book Average Wholesale Unit Price;

(c)    Blue Book Average Wholesale Package Price;

(d)    Calculated Average Wholesale Package Price;

(e)    Wholesale Unit Price;

(f)    Wholesale Acquisition Cost or "WAC";

(g)    Maximum Allowable Cost or "MAC";

(h)    Suggested Wholesale Price or "SWP";

(i)    Wholesale Net Price;

(j)    Direct Price;

(k)    List Price;

(l)    Actual Sale Price;

(m)    BaseLine Price;

(n)    BaseLine AWP Unit Price;

(o)    BaseLine Direct Price Unit Price;

(p)    BaseLine Net Wholesale Price Unit Price;

(q)    Estimated Acquisition Cost or "EAC";

(r)    Federal Maximum Allowable Cost (a/k/a Federal Upper Limit or "FUL");

(s)    Department of Justice Medicaid Average Wholesale Price;

(t)    Generic Price Indicator;

(u)    Generic Price Spread Indicator;

(v)    State Maximum Allowable Cost or "SMAC";

(w)    Usual and customary charge; or

(x)    Any pricing element created or utilized by the federal government or state Medicaid agencies.

28.    "Provider" or "Providers" shall mean any and all persons or entities that render health care services, including but not limited to pharmacists, institutional pharmacies, home

13

health agencies, physicians, nurses, nurse practitioners, physicians' assistants, specialty pharmacy, nursing home personnel, laboratory technicians, x-ray and other medical equipment technicians, and other hospital or physician-office personnel.

29.    "Publisher" or "Publishers" shall mean Red Book, First DataBank, Blue Book, and Medi-Span, their predecessors and successors, and all employees, agents, consultants, accountants, or attorneys of any of the foregoing.

30.    "Reimbursement" shall mean the amount of, or formula for calculating, the payment delegated under Medicare, Medicaid, or a medical assistance program at which healthcare Providers are reimbursed for administering or dispensing prescription drugs to a beneficiary.

31.    "Roxane Defendants" shall mean Boehringer Ingelheim Corp., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc., and Roxane Laboratories, Inc., and any of their past or present officials, officers, representatives, agents, assigns, attorneys, employees, divisions, departments, agencies, affiliates, subsidiaries, and all other persons or entities acting or purporting to act on their behalf or under their control.

32.    "Subject Drugs" shall mean those drugs listed on attached Schedule 1.

33.    "Subject HCPCS Codes" shall mean those J-Codes and K-Codes associated with the Subject Drugs, including but not limited to those J-Codes and K-Codes identified in attached Schedule 2.

34.    "U.S. Government" shall mean all legislative and executive branches, agencies, departments, or committees of the United States Government, including the administrators, staff,

employees, agents, consultants, accountants, or attorneys of any of the foregoing.   U.S. Government includes but is not limited to CMS/HCFA, Congress, Department of Commerce, Department of Defense, Department of Justice, Department of Health and Human Services, Department of Health and Human Services-Office of Inspector General, Department of Veterans Affairs General Accounting Office, Medicare Payment Advisory Commission (MedPac), Office of Management and Budget, Office of Pharmacy Affairs/Pharmacy Affairs Branch, and Pharmacy Support Services Center.

35.   "Ven-A-Care" shall mean Ven-A-Care of the Florida Keys, Inc., a corporation organized under the laws of Florida, and all predecessor or successor corporations, and any of its past or present officials, officers, representatives, agents, assigns, attorneys, employees, divisions, departments, agencies, affiliates, subsidiaries, and all other persons or entities acting or purporting to act on its behalf or under its control.

36.   "WAC" shall mean "Wholesale Acquisition Cost" and refers to any price represented as a price to any entity that purchases pharmaceutical products from a Manufacturer, or any price as periodically published as WAC by a Publisher.

37.   "You" or "Your" or "State Medicaid Program" shall mean the State of Kansas and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

38.   "340B Provider" shall mean any Provider described in Section 340B of the Public Health Act, 42 U.S.C. § 256(b).

39.   The terms "and" and "or" shall mean "and/or."

## Instructions

1.     Unless otherwise specifically stated, the requests below refer to the time-period from January 1, 1984 to present.

2.     The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

3.     In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

4.     These requests seek responsive Documents in Your possession, as well as any responsive Documents that are within Your control or are otherwise available to You, such as Documents in the possession of Medicaid fiscal intermediaries and related agencies.

5.     When an objection is made to any request or any subpart thereof, please state with specificity the part or subpart of the Document request considered to be objectionable and all grounds for the objection.

6.     If You find the meaning of any term in these Document requests to be unclear, please assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning, or, contact counsel for the party that served the subpoena for further clarification.

7.     Each request for Documents seeks production of the Document in its entirety, without abbreviation or redaction, including all attachments or other matters affixed thereto.

8.      With respect to each Document that is withheld from production for any reason, or any portion of any Document that has been redacted for any reason in connection with the production of a Document, please provide a statement setting forth:

(a)     its date;
(b)     its title;
(c)     its author;
(d)     its addressee;
(e)     the specific privilege under which it is withheld;
(f)     its general subject matter;
(g)     its present custodian; and
(h)     a description of it that You contend is adequate to support the contention that it is privileged.

9.      All electronic files should be produced where possible in electronic form, along with any software needed to access the information contained in the file and appropriate legends, keys, or other information needed to access and understand the data.

17

## SCHEDULE 1:  SUBJECT DRUGS

| NATIONAL DRUG CODE | DRUG DESCRIPTION |
| --- | --- |
| 49502-0303-17 | ALBUTEROL INHALATION AEROSOL METERED-DOSE INHALER, 17G |
| 49502-0333-17 | ALBUTEROL INHALATION AEROSOL METERED-DOSE INHALER, 17G |
| 49502-0303-27 | ALBUTEROL INHALATION AEROSOL MDI REFILL, 17G |
| 49502-0196-20 | ALBUTEROL SULFATE INHALATION SOLUTION .5% 5MG/ML SIZE, 20ML MD |
| 49502-105-01 | ALBUTEROL SULFATE .5% (STERILE) 20ML MD |
| 49502-0697-03 | ALBUTEROL SULFATE UNIT DOSE, 0.083% INHALATION SOLUTION, PACKAGE OF 25, 2.5 MG/3ML |
| 49502-0697-33 | ALBUTEROL SULFATE UNIT DOSE, 0.083% INHALATION SOLUTION, PACKAGE OF 30, 2.5 MG/3ML |
| 49502-0697-60 | ALBUTEROL SULFATE UNIT DOSE, 0.083% INHALATION SOLUTION, PACKAGE OF 60, 2.5 MG/3ML |
| 49502-0689-12 | CROMOLYN SODIUM INHALATION SOLUTION 20 MG/2ML, UNIT DOSE VIALS, 120S |
| 49502-0689-02 | CROMOLYN SODIUM INHALATION SOLUTION 20 MG/2ML, UNIT DOSE VIALS, 60S |
| 49502-0685-33 | IPRATROPIUM BROMIDE INHALATION SOLUTION .02%, .5MG/2.5 ML, 30S |
| 49502-0685-60 | IPRATROPIUM BROMIDE INHALATION SOLUTION .02%, .5MG/2.5 ML, 60S |
| 49502-0685-03 | IPRATROPIUM BROMIDE INHALATION SOLUTION .02%, .5MG/2.5 ML, 25S |
| 00054-4084-25 | AZATHIOPRINE USP 50MG TABLET 100S (10 X 10) |
| 00054-4221-25 | DICLOFENAC SODIUM 50MG TABLET 100S (10 X 10) |

| NATIONAL DRUG CODE | DRUG DESCRIPTION |
| --- | --- |
| 00054-4222-25 | DICLOFENAC SODIUM 75MG TABLET 100S (10 X 10) |
| 00054-3294-46 | FUROSEMIDE 10MG/ML SOLUTION 60ML |
| 00054-3294-50 | FUROSEMIDE 10MG/ML SOLUTION 120ML |
| 00054-4297-25 | FUROSEMIDE 20MG TABLET 100S (10 X 10) |
| 00054-8297-25 | FUROSEMIDE 20MG TABLET 100S UD |
| 00054-4297-31 | FUROSEMIDE 20MG TABLET 1000S |
| 00054-4299-25 | FUROSEMIDE 40MG TABLET 100S (10 X 10) |
| 00054-8299-25 | FUROSEMIDE 40MG TABLET 100S UD |
| 00054-4299-31 | FUROSEMIDE 40MG TABLET 1000S |
| 00054-4301-25 | FUROSEMIDE 80MG TABLET 100S (10 X 10) |
| 00054-8301-25 | FUROSEMIDE 80MG TABLET 100S UD |
| 00054-4301-29 | FUROSEMIDE 80MG TABLET 500S |
| 00054-4392-25 | HYDROMORPHONE 2MG TABLET 100S (4 X 25) |
| 00054-4394-25 | HYDROMORPHONE 4MG TABLET 100S (4 X 25) |
| 00054-4790-25 | ORAMORPH SR 15MG TABLET 100S (4 X 25) |
| 00054-4805-19 | ORAMORPH SR 30MG TABLET 50S |
| 00054-4805-25 | ORAMORPH SR 30MG TABLET 100S (4 X 25) |
| 00054-4805-27 | ORAMORPH SR 30MG TABLET 250S |
| 00054-4792-25 | ORAMORPH SR 60MG TABLET 100S |
| 00054-4793-25 | ORAMORPH SR 100MG TABLET 100S |
| 00054-3751-44 | ROXANOL 20MG/ML SOLUTION 30ML |
| 00054-3751-50 | ROXANOL 20MG/ML SOLUTION 120ML |
| 00054-3751-58 | ROXANOL 100 20MG/ML SOLUTION 240ML |
| 00054-4658-25 | ROXICODONE 15MG TABLET 100S (4 X 25) |
| 00054-4665-25 | ROXICODONE 30MG TABLET 100S (4 X 25) |

| NATIONAL DRUG CODE | DRUG DESCRIPTION |
|---|---|
| 00054-3805-63 | SODIUM POLYSTYRENE O/S 15G/60ML 500 ML |
| 00054-8816-11 | SODIUM POLYSTYRENE O/S 15G/60ML 60 ML 10S UD |
| 00054-8402-11 | IPRATROPIUM BROMIDE .02% 2.5ML SOLUTION 25S |
| 00054-8402-13 | IPRATROPIUM BROMIDE .02% 2.5ML SOLUTION 30S |
| 00054-8402-21 | IPRATROPIUM BROMIDE .02% 2.5ML SOLUTION 60S |

**SCHEDULE 2: SUBJECT HCPCS CODES**

| HCPCS CODE | DRUG DESCRIPTION |
|---|---|
| J3535 | ALBUTEROL INHALATION AEROSOL METERED-DOSE INHALER, 17G |
| J7611, J7618, J7625 | ALBUTEROL SULFATE .5% (STERILE) 20ML MD |
| J7620, K0505 | ALBUTEROL SULFATE UNIT DOSE, 0.083% INHALATION SOLUTION, PACKAGE OF 25, 2.5 MG/3ML |
| J7613, J7619 | ALBUTEROL SULFATE UNIT DOSE, 0.083% INHALATION SOLUTION, PACKAGE OF 30, 2.5 MG/3ML; ALBUTEROL SULFATE UNIT DOSE, 0.083% INHALATION SOLUTION, PACKAGE OF 60, 2.5 MG/3ML |
| J7631, J7630; K0503; K0511 | CROMOLYN SODIUM INHALATION SOLUTION 20 MG/2ML, UNIT DOSE VIALS, 120S; CROMOLYN SODIUM INHALATION SOLUTION 20 MG/2ML, UNIT DOSE VIALS, 60S |
| J7644, J7645, K0518 | IPRATROPIUM BROMIDE INHALATION SOLUTION .02%, .5MG/2.5 ML, 30S; IPRATROPIUM BROMIDE INHALATION SOLUTION .02%, .5MG/2.5 ML, 60S; IPRATROPIUM BROMIDE INHALATION SOLUTION .02%, .5MG/2.5 ML, 25S |
| J7500, K0119 | AZATHIOPRINE USP 50MG TABLET 100S (10 X 10) |