# EXHIBIT 11

United States General Accounting Office

# GAO

Report to Congressional Committees

September 2001

# MEDICARE

# Payments for Covered Outpatient Drugs Exceed Providers' Cost



GAO

Accountability * Integrity * Reliability

GAO-01-1118

| Other Public Programs Use Market-Based Reference Prices and Competition to Establish Payments or Rebates | The FSS for pharmaceuticals, administered by VA, is a list of products and their prices available to federal entities that purchase prescription drugs. Manufacturers must agree to supply drugs at these prices in order to have their products covered and paid for by Medicaid programs. The FSS price is intended to equal or better the price that the manufacturer offers its most-favored nonfederal customer under comparable terms and conditions.[33] To determine the most-favored customer price, manufacturers provide VA information on price discounts and rebates offered to domestic customers and the terms and conditions involved,[34] such as length of contract periods and ordering and delivery practices.[35] The information used to determine the FSS price is reviewed by VA's OIG. Agencies using the FSS generally provide drugs directly to beneficiaries through their own pharmacies and facilities.<br><br>Medicaid programs act as third-party payers, like Medicare, in reimbursing physicians and pharmacies for drugs. Most Medicaid programs reimburse pharmacies using formulas based on a percentage discount from AWP plus a dispensing fee or a percentage markup over WAC plus a dispensing fee.[36] WAC is the list price a wholesaler pays to a manufacturer, but it does not include discounts that may affect the net price. WAC is not defined in law, and like AWP is determined by the manufacturer. Medicaid programs receive rebates based on net market prices. Under a provision of the Social Security Act added by the Omnibus Budget Reconciliation Act of 1990 (OBRA), Medicaid programs receive a rebate from manufacturers based on either AMP or the manufacturer's "best price" to a private purchaser.[37] AMP is defined in federal law as the average price (including cash discounts and other price reductions) paid to drug manufacturers by |

---

[33] 48 C.F.R. Sec. 538.270.

[34] 48 C.F.R. Sec. 538.270.

[35] Because the terms and conditions of commercial sales vary, there may be legitimate reasons why the government does not always obtain the most-favored customer price. Hence, under the General Services Administration regulations, VA may accept a higher price if it determines that (1) the price offered to the government is fair and reasonable and (2) awarding the contract is otherwise in the best interest of the government.

[36] Medicaid dispensing fees ranged from $2 to over $6 per prescription in 2000. PBMs at private health plans can negotiate even lower dispensing fees that plans pay pharmacies through their ability to restrict their pharmacy networks.

[37] Section 1927 of the Social Security Act, added by OBRA 1990, P.L. 101-508, Section 4401, 104 Stat. 1388, 1388-143(1990) (classified to 42 U.S.C. Sec. 1396r-8).

U.S. wholesalers for drugs distributed to the "retail class of trade."[38] AMP is thus a measure of actual transaction prices between wholesalers and manufacturers. "Best price" is also defined in federal law as the lowest price (including cash discounts and other price reductions) available from the manufacturer to any U.S. wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or government entity, with some exceptions. Manufacturers currently report AMPs and "best prices" to CMS in order to participate in Medicaid. CMS can survey manufacturers' sales information to ensure that AMP and "best price" computations are correct. However, the Social Security Act requires that CMS maintain the confidentiality of this pricing information and it is therefore not publicly available.

Public payers have made several attempts to use competition to obtain more favorable prices for drugs. VA has used a competitive bidding process to obtain national contracts for selected drugs at prices that are even lower than FSS prices. VA identified drugs regarded as therapeutically equivalent and sought contracts from manufacturers for low prices in exchange for VA including only one drug of each type on its national formulary. VA contract prices in 2000 averaged 33 percent lower than corresponding FSS prices.

The Balanced Budget Act of 1997 authorized HCFA to conduct several limited-scale demonstration projects to evaluate competitive bidding's applicability to the Medicare program. In one of these demonstration projects currently under way in San Antonio, Texas, suppliers bid to provide inhalation drugs, such as albuterol, to Medicare beneficiaries. While Medicare normally allows any qualified provider to participate in the program, under the demonstration only those 11 bidders that were selected can participate. In exchange for restricting their choice of providers, beneficiaries have no liability for differences between what suppliers charge and what Medicare pays. Preliminary CMS information suggests savings of approximately 26 percent on these inhalation drugs in the San Antonio competitive bidding demonstration.

## Conclusions

Medicare's method for establishing drug payment levels is flawed. In tying its payment to AWP, a price that may be neither an average nor what wholesalers charge, Medicare has been paying much more than providers'

---

[38] Section 1927(k)(1) of the Social Security Act (classified to 42 U.S.C. Sec. 1396r-8(k)(1)).