# EXHIBIT 15

At an All Purpose Term of the Supreme
Court of the State of New York, in and for
the County of Albany, at the Albany
County Courthouse, Albany, New York,
on the 14 day of August, 2006.

PRESENT:

Honorable William E. McCarthy, J.S.C.
Justice Presiding
------------------------------------------------------------- x

THE PEOPLE OF THE STATE OF NEW YORK,   :
    by ELIOT SPITZER, Attorney General of   :
    the State of New York,   :
                               :

             Plaintiff,   :

         - against -   :   Consent Order and Judgment
                               :   Index No. 905-03

SMITHKLINE BEECHAM CORPORATION,   :
    d/b/a GlaxoSmithKline,   :
                               :

            Defendant.   :
------------------------------------------------------------- x

       The People of the State of New York, by Eliot Spitzer, Attorney General of the State of

New York, having filed this action for an Order and Judgment pursuant to General Business Law

§ 349, Executive Law § 63(12), Social Services Law § 145-b, Penal Law § 180.00, and 18

N.Y.C.R.R. § 515.2(b)(5), against the defendant SmithKline Beecham Corporation, d/b/a

GlaxoSmithKline ("GSK" or "GlaxoSmithKline"), permanently enjoining GSK from engaging in

the deceptive, fraudulent and unlawful practices alleged in the Complaint, directing GSK to pay

restitution, damages, costs and penalties, and the Parties having consented to the entry of this

Order and Judgment,

NOW, upon motion of Eliot Spitzer, Attorney General of the State of New York, attorney for plaintiff herein (Rose Firestein, Assistant Attorney General, of Counsel) and upon the consent of the Parties hereto,

IT HEREBY IS ORDERED, ADJUDGED AND DECREED THAT:

## I. PARTIES

The Parties to this action are the plaintiff, the People of the State of New York ("Plaintiff") and the defendant, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), hereinafter referred to as "the Parties."

## II. PREAMBLE AND DEFINITIONS

A.    On or about February 13, 2003, the plaintiff initiated this lawsuit against SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, GlaxoSmithKline, plc and Glaxo Wellcome, Inc. (hereinafter the "GSK Defendants") in the Supreme Court of the State of New York, County of Albany, originally captioned *People of the State of New York v. GlaxoSmithKline, plc et. al.*, Index No. 905-03. GSK was served with a Complaint in this lawsuit (hereinafter the "Complaint"), and the Parties have been litigating this lawsuit. Subsequently, GlaxoSmithKline, plc and Glaxo Wellcome, Inc. were dismissed as defendants, and the caption was changed to *The People of the State of New York v. SmithKline Beecham Corp., d/b/a GlaxoSmithKline.*

B.    The Plaintiff makes certain allegations and claims concerning pharmaceutical prices for GSK products, including that GSK caused certain published "Average Wholesale Prices" ("AWPs") for Zofran and Kytril injectables, as well as for numerous other GSK

2

products, to be artificially inflated.  In the Complaint in this lawsuit, the Plaintiff asserts five causes of action against the GSK Defendants under New York law for the conduct alleged in the Complaint, and seeks various forms of relief against the GSK Defendants, including restitution, damages, treble damages, injunctive relief, civil penalties, and costs.  The Plaintiff seeks restitution for the following persons and entities within the State of New York for the following alleged conduct by the GSK Defendants:

1.      Claims that individual New York consumers covered by Medicare Part B, Medicaid and the Elderly Pharmaceutical Insurance Coverage ("EPIC") Program made inflated co-payments under those programs, for the GSK drugs covered by those programs, as the result of the conduct of the GSK Defendants alleged in the Complaint (hereinafter the "Individual Consumer Restitution Claims") as follows:

(a)      Payments for a GSK drug listed by National Drug Code ("NDC") on Attachment 1 hereto that were made by a natural person, where the purchase was covered by Medicare Part B  (hereinafter "Settling Medicare Individual Consumer Restitution Claims"); and

(b)      Payments for a GSK drug made by a natural person where the purchase was covered by (i) Medicare Part B and the drug is not listed by NDC on Attachment 1 hereto, (ii) EPIC or  (iii) Medicaid (hereinafter collectively referred to as "Individual Consumer Restitution Other Drug Claims"); and

2.      Claims that the EPIC Program itself made inflated payments for the GSK drugs covered by EPIC, as the result of the conduct of the GSK Defendants alleged in the Complaint, as follows:

(a)    EPIC Program payments for a GSK drug listed by NDC on Attachment 1 hereto (hereinafter "Settling EPIC Program Claims"); and

(b)    EPIC Program payments for a GSK drug that is not listed by NDC on Attachment 1 hereto (hereinafter "EPIC Program Other Drug Claims"); and

3.    Claims that the New York Medicaid Program itself (which, during the relevant period, was funded by the United States government, the State of New York and the Counties of the State of New York) made inflated payments for the GSK drugs covered by Medicaid.  These Medicaid Program claims fall into two categories, as follows:

(a)    That the Plaintiff has civil claims against GSK under various federal and state statutes and regulations and common law doctrines, including the claims alleged in the Complaint, for engaging in the following alleged conduct: (i) For certain NDCs for Zofran and Kytril listed in Attachment 2 hereto (the "Zofran and Kytril Injectables") during the period from January 1, 1994 through December 31, 2002, and for certain NDCs for Amoxil listed in Attachment 2 during the period beginning on or before January 1, 1997 through the date of this Consent Order and Judgment, the GSK Defendants and/or their predecessors knowingly set, reported, and maintained or caused to be set, reported, and maintained false, fraudulent, and inflated Average Wholesale Prices, Suggested List Prices, Net Wholesale Prices, Wholesale Acquisition Costs and/or Wholesale Purchase Prices (the "Reported Prices ") that were substantially higher than the prices that the vast majority of their customers actually paid for such drugs, resulting in the submission of false and fraudulent claims for reimbursement to Medicaid for Medicaid reimbursements that were substantially higher than the actual acquisition cost for such drugs, (ii) the GSK Defendants knowingly used the artificial spread between the

4

false, fraudulent, and inflated Reported Prices and the actual acquisition cost of the Zofran and

Kytril Injectables in marketing, promoting, and selling these drugs to existing and potential

customers, knowing that such false and fraudulent reporting and marketing schemes would cause

their customers to submit false and fraudulent claims for reimbursement to Medicaid for

Medicaid reimbursements that were substantially higher than the customers' actual acquisition

cost for the Zofran and Kytril Injectables; and (iii) during the period from January 1, 1994

through December 31, 1998, GSK predecessor SmithKline Beecham Corporation knowingly

engaged in a marketing scheme whereby it encouraged its customers to (1) take the Kytril left

over from an injection from a single-injection vial, (2) pool the leftover Kytril from several vials

to create another full dose of Kytril to be administered to a patient, and (3) submit a claim for

reimbursement for the pooled vial of Kytril, all of which resulted in claims for such pooled vials

being submitted to the Medicaid program for which the customer had had an actual acquisition

cost of $0 and already had been paid on a per vial basis. The claims described in this

subparagraph II. B.3 (a) are collectively referred to hereinafter as the "Medicaid Zofran and

Kytril Injectable/Amoxil Claims;" and

        (b)     That the New York Medicaid Program itself made inflated

payments for other GSK drugs covered by Medicaid (that is, GSK drugs other than the Zofran

and Kytril Injectables and Amoxil), as the result of the conduct of the GSK Defendants alleged

in the Complaint, with respect to which the Plaintiff asserts the claims alleged in the Complaint

concerning these other drugs (hereinafter the "Medicaid Other Drug Claims").

C.    GSK denies all of the Plaintiff's allegations as set forth in the Complaint in this

lawsuit and as described above, and specifically denies that it has any liability relating to those

allegations.

D.    The Parties hereto mutually desire to reach a full and final settlement and

dismissal of this lawsuit, in accordance with this Consent Order and Judgment.

### III. TERMS AND CONDITIONS

1.    Within ten business days of the Effective Date (as defined below in Paragraph III.

19, hereinafter "Effective Date"), GSK shall pay the State of New York as restitution for the

Medicaid Zofran and Kytril Injectable/Amoxil Claims the sum of $2,002,801.80 by electronic

funds transfer pursuant to written instructions to be provided to GSK by the Plaintiff on or before

the Effective Date.  GSK's payment of this sum, hereinafter referred to as the "Paragraph III. 1

Payment," fully resolves the Plaintiff's and the State's Medicaid Zofran and Kytril

Injectable/Amoxil Claims.  The Parties further agree that all Medicaid Zofran and Kytril

Injectable Claims relating to the New York Medicaid Program are fully resolved by the

combination of (1) a portion of the Paragraph III. 1 Payment to the State of New York amounting

to $1,062,801.80, and (2) GSK's prior payment to the federal government of an allocated amount

of $1,282,986.53 that resolved the federal portion of the Medicaid Zofran and Kytril Injectable

Claims relating to the New York Medicaid Program, which federal payment was made pursuant

to a prior Settlement Agreement between GSK and the United States of America, acting through

the United States Department of Justice.  The Parties further agree that GSK's payment to the

State of New York of a portion of the Paragraph III. 1 Payment amounting to $940,000.00 fully

resolves all Medicaid Amoxil Claims relating to the New York Medicaid Program, and that the

6

State of New York will share $470,000.00 of this payment with the federal government as the federal share of the $940,000.00 recovery.

2.      As set forth more fully in Addendum A to this Consent Order and Judgment, within 35 days after the end of the first full calendar quarter following the Effective Date and continuing for the period set forth in Addendum A, GSK will provide, on a confidential basis, certain certified "Pricing Information" (as defined in Addendum A to this Consent Order and Judgment) to (a) the State of New York Medicaid Program, and (b) a national commercial drug price reporting service designated by the State of New York through Addendum B to this Consent Order and Judgment, subject to execution of a confidentiality agreement by such price reporting service.  The State of New York shall treat the GSK Pricing Information reported to the New York Medicaid Program pursuant to this Paragraph, whether received directly from GSK or indirectly through a commercial drug price reporting service, as confidential commercial or financial information and proprietary trade secrets, unless federal law, as implemented by the federal Centers for Medicare and Medicaid Services, allows such Pricing Information to be made public, and such Pricing Information shall be afforded the maximum degree of confidentiality permitted by state law.

3.      The Plaintiff's Settling Medicare Individual Consumer Restitution Claims are fully resolved by the following:  New York Medicare beneficiaries who paid an unreimbursed variable Medicare co-insurance amount for GSK drugs listed by NDC on Attachment 1 during the covered period, as defined below, are eligible to file a claim pursuant to the settlement agreement entered into by GSK and the putative classes in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (U.S. Dist. Court, D. Mass.) (the "MDL No.

1456 Class Litigation") which will resolve the putative classes' claims relating to payments for

GSK pharmaceuticals by persons and entities throughout the country (including individuals in

the State of New York) who paid for such products on the basis of AWPs (the "MDL No. 1456

GSK Class Settlement Agreement"). The term "covered period" as used in this paragraph and

the succeeding paragraph refers to the "Class Period" as defined in the MDL No. 1456 GSK

Class Settlement Agreement. The payment of funds to Medicare beneficiaries from the

Consumer Settlement Pool created by the MDL No. 1456 GSK Class Settlement Agreement as

described in this Paragraph fully resolves the Plaintiff's Settling Medicare Individual Consumer

Restitution Claims in this action.

     4.     The Plaintiff's Settling EPIC Program Claims are resolved as follows: the EPIC

Program is eligible to file a claim for settlement payments from the Third Party Payer ("TPP")

Settlement Pool pursuant to the MDL No. 1456 GSK Class Settlement Agreement for the EPIC

Program Claims for the covered period. The funds paid to EPIC from the TPP Settlement Pool

created by the MDL No. 1456 GSK Class Settlement Agreement fully resolves all of the Settling

EPIC Program Claims.

     5.     GSK shall pay the State of New York the sum of $740,000.00 (seven hundred

forty thousand dollars) for the costs Plaintiff incurred in connection with this lawsuit, at the time

and in the manner set forth in Paragraph 5 (c) of the MDL No. 1456 GSK Class Settlement

Agreement. In the event the MDL No. 1456 Class Settlement Agreement is not approved or is

terminated as provided for in that agreement, the State of New York shall cause this same sum to

be refunded to GSK (unless GSK and the State of New York reach a contrary agreement).

6.      (a) The Medicaid Zofran and Kytril Injectable/Amoxil Claims asserted by Plaintiff in the Complaint are dismissed with prejudice;

(b) The following Claims asserted by Plaintiff in the Complaint are dismissed without prejudice:  the Medicaid Other Drug Claims, the Individual Consumer Restitution Other Drug Claims and the EPIC Program Other Drug Claims; and

(c) The Settling Individual Consumer Restitution Claims and the Settling EPIC Program Claims are dismissed with prejudice, but with the right by Plaintiff to reassert those claims (as if, for statute of limitations and laches purposes, they had not been dismissed) in the event the MDL No. 1456 GSK Class Settlement Agreement is not approved or is terminated as provided for in that agreement.  This Court shall retain jurisdiction to enforce this Consent Order and Judgment.

7.      Nothing in this Consent Order and Judgment shall be construed to deprive any individual of any private right of action under the law.

8.      Subject to the exceptions from release set forth in Paragraph 10 below, as of the Effective Date of this Consent Order and Judgment, the Plaintiff and the State of New York on behalf of itself, its officers, agents, agencies and departments release and forever discharge the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents and affiliates, successors and assigns, and their current and former directors, officers and employees, from any and all civil or administrative claims for restitution, damages, injunctive relief, civil forfeiture, civil penalties, fines, costs, attorneys' fees and other relief that the Plaintiff or the State of New York has or may have relating to the Medicaid Zofran and Kytril Injectable/Amoxil Claims, as defined in Preamble Paragraph II. B.3(a) above.  The payment by GSK of the amount

described in Paragraph III. 1 above shall fully discharge the GSK Defendants from any obligation to pay Medicaid-related restitution, damages, and/or any fine or penalty to the Plaintiff or the State of New York or any of its counties or other subdivisions for such Medicaid Zofran and Kytril Injectable/Amoxil Claims.

      9.     Subject to the exceptions from release set forth in Paragraph 10 below, as of the Effective Date of the MDL No. 1456 GSK Class Settlement Agreement, the Plaintiff and the State of New York on behalf of itself, its officers, agents, agencies and departments release and forever discharge the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents and affiliates, successors and assigns, and their current and former directors, officers and employees, from any and all civil or administrative claims for restitution, damages, injunctive relief, civil forfeiture, civil penalties, fines, costs, attorneys' fees and other relief that the Plaintiff or the State of New York has or may have relating to the Settling Medicare Individual Consumer Restitution Claims and the Settling EPIC Program Claims from the beginning of time up through the following: (a) January 1, 2005 with respect to the Settling Medicare Individual Consumer Restitution Claims and (b) the date this Consent Order and Judgment is entered with respect to the Settling EPIC Program Claims.

      10.    Notwithstanding any other term of this Consent Order and Judgment, the Plaintiff and the State of New York specifically do not herein release the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents or affiliates, successors or assigns, or their current and former directors, officers, and employees from any and all of the following: (a) any potential criminal, civil or administrative claims arising under the tax laws of the State of New York or its political subdivisions; (b) any criminal liability; (c) except as

explicitly stated in this Consent Order and Judgment, any administrative liability, including

mandatory exclusion from the State of New York's Medicaid program; (d) any liability to the

State of New York (or its agencies) or the Plaintiff for any conduct other than the conduct set

forth in the allegations of the Complaint or in Preamble Paragraph II. B herein above; or (e) any

claims based upon such obligations as are created by this Consent Order and Judgment.

11.     Except as reserved in Paragraph 10 above, the Plaintiff and the State of New

York release and will refrain from instituting, directing or maintaining any administrative claim

or any action seeking exclusion from the State of New York's Medicaid program against any of

the GSK Defendants, their predecessors, subsidiaries, joint venture owners, corporate parents or

affiliates, successors or assigns, for the released conduct set forth in Paragraphs III. 8 and III. 9

herein above. Nothing in this Consent Order and Judgment precludes the State of New York

from taking action against GSK in the event that GSK is excluded by the federal government, or

for conduct and practices other than the released conduct set forth in Paragraphs III. 8 and III. 9

herein above. The Medicaid Fraud Control Unit for the State of New York will refrain from

recommending, causing or attempting to cause any administrative action or sanction, including

debarment, by any government agency of the State of New York for the released conduct set

forth in Paragraphs III. 8 and III. 9 herein above.

12.     As of the Effective Date of this Consent Order and Judgment, the GSK

Defendants fully and finally release the Plaintiff and the State of New York, its agencies,

employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses

of every kind and however denominated) which any of the GSK Defendants has asserted, could

have asserted, or may assert in the future against the Plaintiff or the State of New York, its

agencies, employees, servants, or agents that are related to or arising from the investigation and prosecution of the conduct set forth in the Medicaid Zofran and Kytril Injectable/Amoxil Claims.

13     As of the Effective Date of the MDL No. 1456 GSK Class Settlement Agreement, the GSK Defendants fully and finally release the Plaintiff and the State of New York, its agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) which any of the GSK Defendants has asserted, could have asserted, or may assert in the future against the Plaintiff or the State of New York, its agencies, employees, servants, or agents that are related to or arising from the investigation and prosecution of the conduct set forth in the Settling Medicare Individual Consumer Restitution Claims and the Settling EPIC Program Claims, from the beginning of time up through the date this Consent Order and Judgment is entered.

14.     The GSK Defendants waive and will not assert any defenses, under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution or Article 1, § 6 of the Constitution of the State of New York or under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution or Article 1, § 5 of the Constitution of the State of New York, that they may have to any criminal prosecution or administrative action relating to the conduct set forth in the allegations of the Complaint and/or in Preamble Paragraph B herein above, which defenses may be based in whole or in part on a contention that, under those Constitutional provisions, this Consent Order and Judgment bars any remedy sought in such criminal prosecution or administrative action.

15.     The GSK Defendants waive and will not assert the defense of res judicata or collateral estoppel against the Plaintiff or the State of New York, its agencies, employees,

servants, agents, or political subdivisions, with respect to the following Claims dismissed without prejudice pursuant to this Consent Order and Judgment: the Medicaid Other Drug Claims, Individual Consumer Restitution Other Drug Claims and EPIC Program Other Drug Claims.

16    Nothing in any provision of this Consent Order and Judgment constitutes an agreement by the State of New York concerning the characterization of any payment for purposes of the tax laws of the State of New York or its political subdivisions.

17.    GSK's agreement to the terms and entry of this Consent Order and Judgment do not constitute an admission by any person or entity, and shall not be construed as an admission by any person or entity, with respect to any issues of law or fact.

18.    This Consent Order and Judgment is governed by the laws of the State of New York.

19.    The date on which the Parties' obligations set forth in this Consent Order and Judgment shall commence is the date on which GSK and the putative Class Plaintiffs in the MDL No. 1456 Class Litigation file a motion in that litigation seeking Preliminary Approval of the MDL No. 1456 GSK Class Settlement Agreement.  (Herein this date is referred to as the "Effective Date.")

20.    This Consent Order and Judgment shall be binding on all successors, transferees, heirs and assigns of the Parties.

21.    This Consent Order and Judgment constitutes the complete agreement between the Parties with regard to the settlement and dismissal of this lawsuit.

22.     Each party agrees to perform any further acts and to execute and deliver any further documents reasonably necessary to carry out their obligations under this Consent Order and Judgment.

23.     This Consent Order and Judgment shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the terms of this Consent Order and Judgment are the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Consent Order and Judgment.

SO ORDERED:

Albany, New York

Dated: _August 14_, 2006

William E. McCarthy, J.S.C.

ATTACHMENT 1

**GSK NDCs in MDL Settlement**

| NDC | Drug | Description |
|---|---|---|
| 00173004535 | Alkeran | ALKERAN TAB 2MG 50S |
| 00173013093 | Alkeran | ALKERAN I.V. INJ 50 MG |
| 00173044901 | Imitrex | IMITREX INJ 12MG/ML 0.5ML 2S PFLD SRNG |
| 00173044902 | Imitrex | IMITREX INJ 12MG/ML 5S VIALS |
| 00173044903 | Imitrex | IMITREX INJ 12MG/ML 0.5ML2S KIT,SELFDOSE |
| 00173047800 | Imitrex | IMITREX INJ 12MG/ML STAT DOSE RFL 2'S |
| 00173047900 | Imitrex | IMITREX INJ 12MG/ML STAT DOSE KIT |
| 00029414901 | Kytril | KYTRIL INJ SINGLE DOSE VIAL 1MG/ML |
| 00029414975 | Kytril | KYTRIL INJ SGL DOSE VIAL 1MG/ML VHA |
| 00029415105 | Kytril | KYTRIL 1 MG TABS 20'S SUP |
| 00029415139 | Kytril | KYTRIL 1MG TABS 2'S |
| 00029415201 | Kytril | KYTRIL 1MG/ML INJECTION 4ML VIAL |
| 00173026010 | Lanoxin | LANOXIN INJ 0.5MG |
| 00173026035 | Lanoxin | LANOXIN INJ 0.5MG 2ML 50S |
| 00173026210 | Lanoxin | LANOXIN INJ PEDIATRIC 0.1MG/ML |
| 00173071325 | Myleran | MYLERAN TAB 2MG 25S |
| 00173065601 | Navelbine | NAVELBINE INJ 10MG 1ML |
| 00173065644 | Navelbine | NAVELBINE INJ 50MG 5ML |
| 00173010793 | Retrovir | RETROVIR IV INF 10MG/ML 20ML 10 |
| 00173038558 | Ventolin | VENTOLIN SOL INH 0.5% 5MG/ML 20ML |
| 00173041900 | Ventolin | VENTOLIN NEB SOL INH    0.083% 3ML 25S |
| 00173044200 | Zofran | ZOFRAN INJ 2MG/ML 20ML |
| 00173044202 | Zofran | ZOFRAN INJ 2MG/ML 2ML 5S |
| 00173044600 | Zofran | ZOFRAN TAB 4MG 30S |
| 00173044601 | Zofran | ZOFRAN TAB 4MG 100S |
| 00173044602 | Zofran | ZOFRAN TAB 4MG 100S UD |
| 00173044604 | Zofran | ZOFRAN TAB 4MG 3S |
| 00173044700 | Zofran | ZOFRAN TAB 8MG 30S |
| 00173044701 | Zofran | ZOFRAN TAB 8MG 100S |
| 00173044702 | Zofran | ZOFRAN TAB 8MG 100S UD |
| 00173044704 | Zofran | ZOFRAN TAB 8MG 3S |
| 00173046100 | Zofran | ZOFRAN INJ PRMXD 32MG/50ML |
| 00173046200 | Zofran | ZOFRAN INJ PRMXD 4MG/50ML |
| 00173048900 | Zofran | ZOFRAN ORAL SOL 4MG/5ML  50ML |

**GSK NDCs in**
**MDL Settlement**

| NDC | Drug | Description |
|---|---|---|
| 00173056900 | Zofran | ZOFRAN ODT 4MG 5X2 30S |
| 00173057000 | Zofran | ZOFRAN ODT 8MG 5X2 30S |
| 00173057004 | Zofran | ZOFRAN ODT 8MG 5X2 10'S |
| 00173068000 | Zofran | ZOFRAN TAB 24MG 1S |
| 00173095201 | Zovirax | ZOVIRAX FOR INJECTION 1000MG 20ML 10S (C |
| 00173099501 | Zovirax | ZOVIRAX FOR INJECTION 500MG 10ML 10S (C# |
| 00173036200 | Zantac | ZANTAC INJ 25MG/ML 2ML   PFLD SRNG |
| 00173036238 | Zantac | ZANTAC INJ 25MG/ML 2ML 10S |
| 00173036300 | Zantac | ZANTAC INJ 25MG/ML 40ML |
| 00173036301 | Zantac | ZANTAC INJ 25MG/ML 6ML |
| 00173036339 | Zantac | ZANTAC INJ 25MG/ML 10ML |
| 00173040700 | Zantac | ZANTAC INJ PRMXD 50MG/100ML 24S |
| 00173044100 | Zantac | ZANTAC INJ PRMXD 50MG/50ML 24S |

ATTACHMENT 2

| Name | Formulation | NDC |
|---|---|---|
| Kytril | Injection, vial 1mg/ml | 00029-4149-01 |
| Kytril | Injection, vial 1mg/ml, m/d vial 4mg | 00029-4152-01 |
| Zofran | Injection, vial 2mg/ml 20 ml | 00173-0042-00 |
| Zofran | Injection, vial 2mg/ml 2ml 5s | 00173-0442-02 |
| Zofran | Injection, prmxd, 32mg/50ml | 00173-0461-00 |
| Amoxil | Chewable Tabs 250 mg 100'S | 00029-6005-30 |
| Amoxil | Capsules 250mg 500'S | 00029-6006-32 |
| Amoxil | Capsules 250mg 100'S | 00029-6006-30 |
| Amoxil | Capsules 500mg 500'S | 00029-6007-32 |
| Amoxil | Capsules 500mg 30'S | 00029-6007-13 |
| Amoxil | Capsules 500mg 100'S | 0002--6007-30 |
| Amoxil | Oral Susp 125mg/80ml | 00029-6008-21 |
| Amoxil | Oral Susp 125mg 100ml | 00029-6008-23 |
| Amoxil | Oral Susp 125mg/5ml 150ml | 00029-6008-22 |
| Amoxil | Oral Susp 250mg/5ml 150ml | 00029-6009-22 |
| Amoxil | Oral Susp 250mg 80 ml | 00029-6009-21 |
| Amoxil | Oral Susp 250mg/5ml 100ml | 00029-6009-23 |
| Amoxil | Pediatric Drops 50mg 15ml | 00029-6035-20 |
| Amoxil | Pediatric Drops 50mg/ml 30ml | 00029-6038-39 |
| Amoxil | Bid Oral Susp 400mg/5ml 75ml | 00029-6049-55 |
| Amoxil | Bid Oral Susp 400mg/5ml 100ml | 00029-6049-59 |

ADDENDUM A

<u>Requirements for Reporting of GSK "Pricing Information"</u>

Paragraph III.2 of the preceding Consent Order and Judgment requires that within 35 days after the end of the first full calendar quarter following the Effective Date thereunder and continuing for the period set forth in this Addendum A, GSK will provide, on a confidential basis, certain certified "Pricing Information" to (a) the State of New York Medicaid Program, and (b) a national commercial drug price reporting service designated by the State of New York through Addendum B to this Consent Order and Judgment, subject to execution of a confidentiality agreement by such price reporting service.

On or about September 2, 2005, GSK entered into a Settlement Agreement with the United States of America, acting through the United States Department of Justice, which resolved certain claims and potential claims relating to payments by Medicare and Medicaid for Zofran and Kytril injectibles. In connection with that settlement, GSK also entered into an Addendum to its Corporate Integrity Agreement ("CIA") with the Department of Health and Human Services, Office of Inspector General ("HHS/OIG"), referred to hereinafter as the "CIA Addendum." The State of New York, through a representative of its Medicaid Fraud Control Unit, participated in the negotiation of the CIA Addendum.

The CIA Addendum, in Section III.I, imposes specific price reporting requirements on GSK. As set forth in detail in that Section III.I of the CIA Addendum, which is incorporated herein by reference, GSK shall report to the entities identified in Section III.I.2.c of the CIA Addendum certain certified pricing information, as specified in Sections III.I.2.a and b of the CIA Addendum (collectively referred to as the "Pricing Information"). In particular, GSK will report

an ASP, as defined in Section III.I.2.a of the CIA Addendum, for the "ASP Covered

Products" described in Appendix A to the CIA Addendum, and GSK will also report an AMP,

as defined in Section III.I.2.b of the CIA Addendum, for the "AMP Covered Products"

described in Appendix A to the CIA Addendum.  GSK will also provide the New York State

Medicaid Program with a copy of the Certification required by section III.I.2.e of the CIA

Addendum along with the Pricing Information described herein.

GSK's Pricing Information disclosure obligations as set forth in the CIA Addendum shall

be incorporated herein by reference.  The Pricing Information that GSK shall report to the State

of New York and its designated national commercial price reporting service hereunder shall be

identical to what GSK is required to report to States that execute a "Related State Settlement

Agreement" as described in the CIA Addendum, and the State of New York shall be considered

a state that has entered into a Related State Settlement Agreement for purposes of GSK's

reporting obligations thereunder and hereunder.  GSK's obligation to report the Pricing

Information hereunder shall continue until the expiration of that obligation under the CIA

Addendum.

## ADDENDUM B

### Designation of Reporting Service

1) The State of New York requests that the Pricing Information referred to in Section III, Paragraph 2 of this Consent Order and Judgment be sent to First DataBank (a national commercial drug price reporting service).

If during the time period covered by GSK's obligation to provide the State with Pricing Information pursuant to Section III, Paragraph 2 of this Consent Order and Judgment, the State changes or supplements its commercial drug price reporting service, the State may notify GSK in writing of said change and the effective date. GSK shall then promptly commence reporting the Pricing Information to the subsequent commercial drug price reporting service in accordance with Section III, Paragraph 2 of this Consent Order and Judgment.

GSK contact information is as follows:

David B. Brown, (with a copy to Elizabeth J. Hallyburton, Esq.).
Director, Government Contracts/Pricing Programs
GlaxoSmithKline
5 Moore Drive -- Bide Building
Location: B-2156
P.O. Box 13398
Research Triangle Park,
North Carolina 27709
Phone: 919-483- 2353
Fax: 919-315-3198
e-mail: david.b.brown@gsk.com

Elizabeth J. Hallyburton, Esq.
Assistant General Counsel
GlaxoSmithKline
5 Moore Drive -- Bide Building
Location: C-4160
P.O. Box 13398
Research Triangle Park,
North Carolina 27709
Phone: 919-483-2212
Fax: 704-899-9234
e-mail: beth.j.hallyburton@gsk.com

<u>Designation of State Medicaid Contact</u>

       2)     The State of New York requests that the Pricing Information referred to in Section III, Paragraph 2 of this Consent Order and Judgment be sent to the New York State Medicaid program c/o:

_____
Name

_____
Address

_____
Phone/fax/email

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
-----------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,   :
     by ELIOT SPITZER, Attorney General of   :
     the State of New York,   :
                                 :

        Plaintiff,   :
                                 :

- against -   :   Stipulation and Consent
                                 :   Index No. 905-03
SMITHKLINE BEECHAM CORPORATION,   :
     d/b/a GlaxoSmithKline,   :
                                 :

        Defendant.   :
-----------------------------------------------------------x

IT IS HEREBY ACKNOWLEDGED, STIPULATED, CONSENTED TO AND

AGREED, by and between Plaintiff, the People of the State of New York, and the State of

New York, by their attorney, Eliot Spitzer, Attorney General of the State of New York, and

Defendant, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), as follows:

    1.     Within fifteen business days after the Effective Date, as defined by the annexed

Consent Order and Judgment, Plaintiff shall submit the annexed Consent Order and Judgment to

the Court, and the provisions of such Consent Order and Judgment shall not be effective against

either party until the Court enters the same.

    2.     The Plaintiff, the State of New York and GSK hereby consent to the entry of the

annexed Consent Order and Judgment.

    3.     GSK represents that its Consent to the annexed Consent Order and Judgment is

freely and voluntarily entered into without any degree of duress or compulsion whatsoever.  The

undersigned GSK signatory represents and warrants that he is duly authorized as a result of appropriate corporate action to consent to the entry of the annexed Consent Order and Judgment.

4.      The undersigned signatories for the Plaintiff and the State of New York represent that they are signing this Stipulation and Consent in their official capacities and that they are authorized to consent to the annexed Consent Order and Judgment on behalf of the Plaintiff and the State of New York through their respective agencies and departments.

5.      The Parties' signing of this Stipulation and Consent may be accomplished by counterparts, each of which shall constitute an original and all of which shall constitute one and the same consent to this Stipulation and Consent.

AGREED TO on behalf of the Plaintiff and the State of New York:


By _____          Dated: _Aug. 9, 2006_
ROSE E. FIRESTEIN
Assistant Attorney General
Bureau of Consumer Frauds and Protection
120 Broadway, 3rd Floor
New York, New York 10271

PATRICK LUPINETTI
Assistant Attorney General
Medicaid Fraud Control Unit
1 Blue Hill Plaza
P.O. Box 1557
Pearl River, NY 10965

Counsel to the Plaintiff and the State of New York

AGREED TO on behalf of SmithKline Beecham Corporation, d/b/a GlaxoSmithKline

By: _____     Dated: _____
      Name:
      Position:
      SmithKline Beecham Corporation d/b/a GlaxoSmithKline


By: _____     Dated: *August 8, 2006*
      FREDERICK G. HEROLD
      Dechert LLP
      1117 California Avenue
      Palo Alto, CA 94304-1106

      THOMAS H. LEE, II
      Dechert LLP
      Cira Centre
      2929 Arch Street
      Philadelphia, PA 19104-2808

      Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline

AGREED TO on behalf of SmithKline Beecham Corporation, d/b/a GlaxoSmithKline

By: _____     Dated: _8/8/2006_
Name: Christopher A. Viehbacher
Position: President, US Pharmaceuticals
SmithKline Beecham Corporation d/b/a GlaxoSmithKline


By: _____     Dated: _August 8, 2006_
FREDERICK G. HEROLD
Dechert LLP
1117 California Avenue
Palo Alto, CA 94304-1106

THOMAS H. LEE, II
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

Counsel to SmithKline Beecham Corporation d/b/a GlaxoSmithKline