# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: **PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | MDL No. 1456<br>Master File No. 01-CV-12257-PBS<br>Subcategory Case No. 06-11337<br>Hon. Patti B. Saris |
| **THIS DOCUMENT RELATES TO:**<br><br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*,<br>Civil Action No. 05-11084-PBS | Magistrate Judge<br>Marianne B. Bowler |

## MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER PROHIBITING DEY, INC., DEY L.P., AND DEY L.P., INC.' RULE 30(B)(1) DEPOSITION OF ROBERT REID

Defendants Dey, Inc., Dey L.P., and Dey L.P., Inc. (collectively, "Dey"), submit this memorandum in opposition to the Plaintiffs the United States of America's and Ven-A-Care of the Florida Keys, Inc.'s (collectively "Plaintiffs") motion for a protective order prohibiting Dey's Rule 30(b)(1) deposition of Robert Reid, the former Pharmacy Program Administrator for Ohio Medicaid.

Plaintiffs ask this court to prevent the deposition of Mr. Reid in its entirety. Plaintiffs have suddenly decided to drop their damage claims from the state of Ohio's Medicaid program. Plaintiffs' motion should be denied. First, Plaintiffs lack standing to seek a protective order to stop Mr. Reid's deposition because Mr. Reid is a non-party, and Plaintiffs have not asserted any privilege or significant interest threatened by his testimony. Second, Plaintiffs have not demonstrated that the burden of attending Mr. Reid's deposition before December 15, 2008 outweighs the likely benefit of Mr. Reid's testimony. The relevance of Mr. Reid's testimony

extends beyond Ohio to the cross-cutting issues at the heart of this case and is therefore relevant regardless of the status of the Plaintiffs' claims for damages from Ohio Medicaid.

## BACKGROUND

The United States' Complaint against Dey alleges that Dey engaged in a nationwide fraudulent price reporting scheme from on or before December 31, 1992 to the present that caused the federal Medicare and Medicaid programs to pay excessive reimbursement to pharmacies and other pharmaceutical providers. Because Medicaid is jointly funded and administered by the states, the parties have sought discovery concerning each state's Medicaid program.

On January 10, 2008, the United States identified Mr. Robert Reid as a potential witness to testify to "Medicaid payment for drugs, statutes, regulations, rules, policies and practices governing payment, use of or reliance upon AWP or WAC, Dey's drug price representations and reporting that were used by state Medicaid agencies to set payment levels." *See* Supplemental Disclosures attached as Ex. A to the Merkl Decl. at p. 10. On July 11, 2008, the United States scheduled the 30(b)(6) deposition of the Ohio Department of Job & Family Services ("Ohio Medicaid") for October 22, 2008. *See* Notice of Deposition attached as Ex. B to the Merkl Decl. Dey cross-noticed the deposition on July 17, 2008. *See* Cross-Notice of Deposition attached as Ex. C to the Merkl Decl. The Plaintiffs postponed the 30(b)(6) deposition until November 24 and 25, 2008, at the request of Ohio.

On November 12, 2008, the United States notified Dey that Plaintiffs had decided to drop their claims for the federal share of Medicaid damages in Ohio, as alleged in their case against Dey. *See* November 12, 2008 Letter attached as Ex. D to the Merkl Decl. At that time, Plaintiffs also cancelled the 30(b)(6) deposition of Ohio Medicaid. *Id.*

Counsel for Abbott Laboratories informed Plaintiffs that the Abbott, Dey, and Roxane defendants would be seeking the deposition of several 30(b)(1) witnesses, including Mr. Reid on November 12, 2008.  *See* E-mail from David Torborg attached as Ex. E to the Merkl Decl.  At the conference the following day, Plaintiffs did not challenge the defendant's desire to depose Mr. Reid.  Counsel for Ohio sent an e-mail asking whether Defendants would notice the deposition of Mr. Reid, and counsel for Dey informed counsel for Ohio of Dey's intention to subpoena Mr. Reid.  On November 17, 2008, Dey noticed the 30(b)(1) deposition of Robert Reid for December 12, 2008.  *See* Notice of Reid Deposition attached as Ex. F to the Merkl Decl.  On November 19, 2008, Dey sent a letter to Plaintiffs identifying numerous areas where Reid's testimony would be relevant. *See* Letter from Neil Merkl to Barbara Smith attached as Ex. G to the Merkl Decl.  The Plaintiffs subsequently moved for a protective order on November 20, 2008.

## ARGUMENT

### I.  PLAINTIFFS LACK STANDING TO SEEK A PROTECTIVE ORDER

To seek a protective order, the movant must be a "party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c)(1).  Plaintiffs lack standing to quash the deposition of Mr. Reid because "a party may not ask for an order to protect the rights of another party or witness if that party or witness does not claim protection for himself," except if "it believes its own interest is jeopardized by discovery sought from a third person."  6 Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: § 2035 (2008).  The law is clear that "absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.  The party to whom the subpoena is directed is the only party with standing to oppose it." *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) (denying motion to quash filed by

party because defendant does not have standing to challenge the deposition subpoenas issued to nonparty witnesses); see also *J.B. Hunt Transp., Inc. v. Adams*, 2007 U.S. Dist. LEXIS 17577 (E.D. Mich. Mar. 14, 2007).

Similarly, a party lacks standing under Rule 45 to quash a subpoena directed to a nonparty unless the party "claims a personal right or privilege regarding the production or testimony sought by a subpoena." 9 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE - CIVIL ¶ 45.50 (3d ed. 2008); *In re Stone & Webster, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71288 (D. Mass. Sept. 29, 2006); *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness.").

Dey seeks discovery from a non-party witness, Robert Reid, not Plaintiffs.  Because Mr. Reid is not a party, Plaintiffs cannot enforce his rights.  Plaintiffs have failed to assert any privilege with respect to his testimony.  Furthermore, Plaintiffs have failed to identify that they have any other significant personal or proprietary interest at stake.  Plaintiffs' only other basis for standing is their ill-conceived opinion that Mr. Reid's deposition is irrelevant.  Plaintiffs' relevance argument does not give them standing.  *See Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) ("Underscoring the inappropriateness of the defendant's relevancy objection is his lack of standing to challenge this subpoena to the bank.").  The Court in *Clayton* set forth the standard as follows: "The nonparty to whom the subpoena duces tecum is directed may challenge the subpoena on the limited grounds of unreasonability or oppressiveness.  Thus, relevancy is available to neither the [nonparty] nor the [party] as a basis for challenging the subpoena . . ." *Id.* at fn3 (internal citations omitted).  Plaintiff's view of the

importance or relevance of the deposition of Mr. Reid is not a recognizable interest at all, and does not give them standing to quash his deposition.

## II.     PLAINTIFFS LACK GOOD CAUSE TO STOP MR. REID'S DEPOSITION

Plaintiffs have not demonstrated that the utility of the testimony is outweighed by the burden.  The Court may only issue a protective order for good cause: "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed R. Civ. P. 26(c)(1).

A party seeking a protective order must demonstrate particular and specific facts to establish good cause.  *Prozina Shipping Co. v. Thirty-Four Autos.*, 179 F.R.D. 41, 48 (D. Mass. 1998) (denying motion for a protective order).  Furthermore, "[p]rohibiting the taking of depositions is an extraordinary measure.  The moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Id*.  As noted by Plaintiffs, in determining whether to issue a protective order, courts must balance the burden of the proposed discovery against the likely benefit.  (Motion at 3).  Here, such an analysis demonstrates that the alleged burden claimed by Plaintiffs does not exceed the likely benefit of allowing the deposition of Mr. Reid to proceed.

### A.     Plaintiffs Have Made No Showing of Undue Burden

Plaintiffs must support their claim of undue burden with specific facts and substantiate its claims with affidavits or other evidence.  *See Berwind Prop. Group Inc. v. Envtl. Mgmt. Group, Inc*., 233 F.R.D. 62, 65-66 (D. Mass. 2005) (finding 30(b)(6) deponent's post-deposition claim of undue burden "unsupported and therefore unpersuasive" as deponent failed to substantiate by reference to "affidavits or other evidence" its claimed burden of reviewing "thousands of files, located in archives nationwide, going back 6 to 9 years"); *see also St. Hilaire and Assoc., Inc. v.*

*Fed. Deposit Ins. Co*., No. CIV. 92-511-SD, 1994 WL 575773, at *2 (D.N.H. Oct. 13, 1994) (denying protective order where movant failed to support its claim of undue burden with any specific facts or a showing of actual harm).

Here, Plaintiffs have made no showing of an actual burden of attending an additional deposition of a non-party witness. The discovery sought is within the discovery allotted by the Court when it collectively allowed Abbott, Dey, and Roxane to take a 30(b)(6) deposition and 30(b)(1) deposition per state. Plaintiffs state that "[t]here is simply no reason to require counsel to go to Ohio, and to drag a former state official out of retirement to testify about a program that is not at issue." Motion at 4. (emphasis in original). Plaintiffs also claim that allowing the deposition to proceed "would needlessly consume resources that are sorely needed." *Id*. at 3. Nowhere in their motion do Plaintiffs state that they do not have the resources to send an attorney to Ohio for a single day's deposition. Instead, Plaintiff's claim of burden is that they do not think they should have to send an attorney to Ohio given their view of the relevance of the deposition of Mr. Reid. The two are vastly different. Plaintiffs cannot seek the extreme remedy of quashing a deposition in its entirety because they do not think it is relevant. Furthermore, Plaintiffs cannot now claim undue burden when as of November 12, 2008 they had set aside two days, November 24 and 25, for the 30(b)(6) deposition of Ohio. Dey is only seeking a single day for the deposition of Mr. Reid prior to the discovery cut-off, and is more than willing to schedule the deposition on a day that is most convenient for the witness and for Plaintiffs.[1]

Furthermore, Dey would have noticed Mr. Reid's deposition earlier except for the fact that he had been proposed as the 30(b)(6) representative of the Ohio Department of Job &

---

[1] Plaintiffs also allege that defendants have delayed the noticing of state Medicaid depositions and point to a production of documents by Roxane. The majority of the depositions of state Medicaid witnesses were noticed months ago and were postponed due to a combination of factors,

Family Services. It was only at the last minute when it became apparent that Mr. Reid would not be the 30(b)(6) designee, and when the Plaintiffs cancelled the deposition on November 12, 2008, it became imperative to depose Mr. Reid individually. Dey informed the Plaintiffs that same day of its intent to depose Mr. Reid. Were this Court to grant leave to conduct the deposition of Mr. Reid after December 15, 2008, Dey would also be willing to schedule the deposition of Mr. Reid at a later date.

### B. The Likely Benefit of Deposing Mr. Reid Exceeds Any Perceived Burden

Dey is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1). Contrary to Plaintiffs' contentions, Mr. Reid still has relevant testimony to offer despite the fact that Plaintiffs have informed Dey that they have dropped their claims in Ohio.[2]

Plaintiffs themselves have previously identified Mr. Reid as having relevant testimony relating to "Medicaid payment for drugs, statutes, regulations, rules, policies and practices governing payment, use of or reliance upon AWP or WAC, Dey's drug price representations and reporting that were used by state Medicaid agencies to set payment levels" in their Second Supplemental Disclosure Statement. Mr. Reid's proposed testimony is not specific to Ohio Medicaid but relates to Medicaid payments as a whole.

The documents produced by Plaintiffs demonstrate that Mr. Reid is one of those individuals who was employed by a state Medicaid agency during the relevant time period and who has personal knowledge of cross-cutting issues that extend beyond the Ohio Medicaid system.

---

including the delay of the production of documents by the state agencies and the need to review those documents. In addition, Roxane's document production has no bearing on this motion.

[2] It is important to note that as of the date of filing, Plaintiffs have not submitted any formal document to effectively remove Ohio from this case or the cases against Abbott and Roxane.

### 1. Mr. Reid's Potential Testimony Relates to the Information Presented to the Federal Government

Mr. Reid's testimony is relevant because it relates to the larger issues of liability in this case. Plaintiffs have asserted fraud-based claims against Dey. Therefore, what the United States knew about AWP and WAC and when it learned of this information is critically important. In the November 13, 2008 status conference, this Court held that this type of knowledge is relevant and should be permitted:

> And so since government knowledge is both relevant to the various issues we've talked about -- scienter, reliance, there's a common law fraud claim, it's relevant to the government knowledge defense -- they may go down in flames on it, but I can't say they can't have the discovery.

November 13, 2008 Hearing Transcript at 245:7-12.

CMS employee Larry Reed has testified that the United States formed its understanding of AWP by looking at state plan amendments submitted by the states. *See* September 27, 2007 Deposition Excerpts attached as Ex. H to the Merkl Decl. at 430:10-431:14. The United States' knowledge was therefore informed by communications with state Medicaid programs, including communications with Ohio Medicaid. As the former Pharmacy Program Administrator for Ohio Medicaid, Mr. Reid was uniquely positioned as a conduit between the state and federal government. Mr. Reid's testimony will shed light on what Ohio Medicaid communicated to the United States (CMS) about average wholesale prices (AWPs), and in turn expose the government's knowledge about their actual meaning. Mr. Reid was privy to Ohio Medicaid's communications with CMS regarding state plan amendments. *See* August 19, 2003 Email from CMS to Robert Reid with Attachment "Ohio SPA 03-001 Comments" attached as Ex. I to the Merkl Decl. These state plan communications, and the understanding they imparted, are critically important to how the United States understood AWP as a general matter. This type of

testimony is relevant regardless of whether Plaintiffs are seeking damages for Ohio Medicaid program or not.  Furthermore, the importance of such testimony outweighs any potential burden on Plaintiffs from attending an additional deposition.

### 2.  Mr. Reid's Potential Testimony Relates to State Medicaid Programs other than Ohio

In addition to being relevant to what the Federal Government knew, Mr. Reid's testimony also offers insight into how other states viewed AWP.  While many state witnesses are no longer available or cannot recall key facts, Mr. Reid attended numerous national and regional meetings where AWP was likely discussed.  Mr. Reid was a member of the Pharmacy Technical Advisory Group of the National Association of State Medicaid Directors.  *See* 2006 NASMD Report attached as Ex. J to the Merkl Decl.  He actually represented a number of states on PTAG.  Mr. Reid also spoke at conferences on Medicaid issues. *See* Symposium Agenda and Conference Speaker List attached as Exhibits K and L to the Merkl Decl.  Because Mr. Reid is a witness with personal knowledge and because there are documented examples of conversations and meetings he attended with other state Medicaid representatives, his testimony is relevant regardless of whether Plaintiffs are seeking damages for the Ohio Medicaid program.

### 3.  Mr. Reid's Potential Testimony Relates to Ven-A-Care's Knowledge

Mr. Reid was the point person for Ohio Medicaid's discussions with relator Ven-A-Care. Ven-A-Care contacted Mr. Reid in 1994 to ask for Ohio Medicaid's "policy and methodology and any special policies or provisions for the determination of the monetary reimbursement" of "intravenous solutions and injectable drugs."  *See* October 24, 1994 Letter From Zachary Bentley to Robert Reid attached as Ex. M to the Merkl Decl.  This inquiry was part of Ven-A-Care's larger investigation into Medicaid reimbursement throughout the United States.  Mr.

Reid's testimony may also offer relevant testimony concerning discussions between states or with CMS which referenced Ven-A-Care's findings.

In sum, Mr. Reid's testimony is highly relevant to the cross-cutting claims and defenses and is not specific to the Ohio Medicaid program. The benefit of taking Mr. Reid' deposition, both for Dey and ultimately the Court, overwhelming outweighs the alleged burden and expense for Plaintiffs. Therefore, the Plaintiffs have failed to state good cause for a protective order.

## CONCLUSION

For the foregoing reasons, Dey respectfully requests that the Court deny the Plaintiffs' motion to for a protective order and allow the deposition of Robert Reid to proceed as noticed.

Dated: December 1, 2008

Respectfully Submitted,

KELLEY DRYE & WARREN LLP

By: _/s/_ Neil Merkl_____
    Paul F. Doyle (BBO # 133460)
    Sarah L. Reid *(pro hac vice)*
    William A. Escobar *(pro hac vice)*
    Neil Merkl *(pro hac vice)*
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants Dey, Inc.*
*Dey, L.P., and Dey, L.P., Inc.*

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on December 1, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                               /s/  Neil Merkl