UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File No. 01-CV-12257-PBS<br>Subcategory Case No. 06-11337 |
| THIS DOCUMENT RELATES TO: | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,*<br>Civil Action No. 05-11084-PBS | Magistrate Judge<br>Marianne B. Bowler |

### DEFENDANTS DEY, INC., DEY, L.P., INC. AND DEY, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Defendants Dey, Inc., Dey, L.P., Inc. and Dey, L.P. (collectively, "Dey"), by its attorneys, hereby move pursuant to Federal Rules of Civil Procedure 37 and 45 and Local Rule 37.1 to compel the Georgia Department of Community Health ("Georgia DCH") to produce documents pursuant to Dey's Subpoena *Duces Tecum* (the "Subpoena") issued on July 16, 2008. Though Dey's Subpoena *Duces Tecum* issued from the United States District Court for the Northern District of Georgia, this Court has jurisdiction to hear this motion. *See In re Neurontin Mktg.*, 245 F.R.D. 55, 57 (D. Mass. 2007) (overruling non-party's objection to the exercise of jurisdiction over motion to compel documents pursuant to a subpoena duces tecum in a multidistrict litigation presided over by Judge Saris).

### PRELIMINARY STATEMENT

This motion seeks to compel the production of certain documents improperly withheld by the Georgia Department of Community Health ("Georgia DCH"). By refusing to produce documents pursuant to a Subpoena *Duces Teacum*, Georgia DCH is unreasonably

1

preventing Dey from reviewing Georgia DCH's document production and preparing for the agency's December 15, 2008 deposition.

Pursuant to the Subpoena *Duces Teacum*, on or about August 20, 2008 Georgia DCH produced documents to Dey without objection and provided a detailed memorandum describing and categorizing the documents produced. While reviewing the document production, counsel for Dey discovered that Georgia DCH's production contained potentially privileged documents and notified Georgia DCH of this discovery on September 5, 2008. Dey also agreed not maintain the identified documents in sealed envelopes and not to disseminate the production to the other parties pending Georgia DCH's review of its production. On September 23, 2008, counsel for Georgia DCH authorized Dey to disseminate the document production, except for those documents identified in the September 5, 2008 letter to Georgia DCH, to the other parties in the instant action and related actions. A few days later, on September 29, 2008, counsel for Georgia DCH requested the return of its entire document production on the grounds that it contained potentially privileged documents "too voluminous to list." After further discussions with counsel for Georgia DCH, on October 16, 2008, Dey returned certain of the disputed documents, agreed to destroy certain copies of the disputed documents, and to maintain the remaining documents at issue in sealed packages because Georgia DCH agreed to produce a privilege log identifying the allegedly privileged documents.

However, to date Georgia DCH has failed to produce such a privilege log and has failed to re-produce the disputed documents returned by Dey. Because the agency has not provided a privilege log indicating why the unreasonably withheld documents are privileged, it has waived any privileges it may have claimed as to the disputed documents. In addition to its plain violation of Rule 45, Georgia DCH's gross negligence in its document production merits

2

waiver. Having conferred in good faith with Georgia DCH at no avail, Dey has been forced to file the instant Motion to Compel, so that it may prepare for the agency's deposition which is imminently approaching.

## STATEMENT OF FACTS

The United States has sued Dey under the false claims act and common law fraud for allegedly inflating its published AWPs. The United States seeks to recover allegedly "inflated" Medicaid reimbursement payments on behalf of forty-nine (49) state Medicaid programs, including the Georgia Medicaid program, which is administered by Georgia DCH.

On July 16, 2008, Dey served a Subpoena *Duces Teacum* on Georgia DCH, requesting documents central and directly relevant to the claims in the instant action. (Declaration of Clifford Katz, dated December 1, 2008 and submitted herewith ("Katz Decl.") ¶ 4, Ex. A.) Georgia DCH did not object to the Subpoena, and in response to the Subpoena, Georgia DCH produced documents on or about August 20, 2008. (*Id.* at ¶ 5, 6.) The documents were accompanied by a memorandum drafted by Jerry Dubberly, the Deputy Director of Medical Assistance Policy Section of Georgia DCH, which described the documents and data produced (the "Dubberly Memo"). (*Id.* at ¶ 7, Ex. B.)

In its production, Georgia DCH flagged, highlighted and wrote notes on certain documents to direct Dey's counsel to the purportedly responsive portions of the documents. (*Id.* at ¶ 8, 9.) The Dubberly Memo categorized the documents produced according to each Subpoena request. (*Id.* at ¶ 11.) In response to Request No. 14, the Dubberly Memo states: "Listed under 'Number 14' on the CD there are ***several communications with attorney*** [sic], provider associations, etc., which are responsive to this request." (*Id.* at ¶ 7, Ex. B.) (emphasis added).

3

### A.    Discovery that Georgia DCH's Produced Potentially Privileged Documents

In the course of reviewing Georgia DCH's production, Dey's counsel discovered documents marked "Attorney Client Communication" and "subject to the attorney client privilege." (*Id.* at ¶ 12.) Dey's counsel notified Georgia DCH's counsel of these documents on September 5, 2008. (*Id.* at ¶ 13, Ex. C.) Without conceding that those documents were, in fact, privileged, Dey's counsel destroyed any hard copies of the electronic documents that Georgia DCH claimed as privileged and has maintained the other documents in a sealed envelope.

### B.    Georgia DCH Gives Dey Permission to Distribute its Production to the Other Defendants

On September 23, 2008, eighteen days after it was notified of the potentially privileged communications, in a phone conversation, Georgia DCH's counsel informed Dey's counsel that it could proceed to disseminate the remainder of the document production to the DOJ and the other defendants, Abbott and Roxane. (*Id.* at ¶ 14.) That same day, Dey distributed the production to the Department of Justice. (*Id.* at ¶ 15, Ex. D.) The next day, Dey distributed the production to Abbott and Roxane. (*Id.* at ¶ 16.)

### C.    Georgia DCH Recalls Additional Documents, which it had the Opportunity to Review Previously, but Instead Gave Dey Permission to Distribute to Other Defendants

On September 26, 2008, Georgia DCH's counsel contacted Dey's counsel by phone and stated its intent to recall the documents, on the basis of privilege. (*Id.* at ¶ 19.) On September 29, 2008, Georgia DCH's counsel sent a letter to Dey's counsel requesting the return of its "entire production" and stated that it "inadvertently" produced documents "too voluminous to list." (*Id.* at ¶ 18, Ex. E.)

On October 6, 2008, Dey's counsel contacted Georgia DCH's counsel by phone with regard to the agency's request for the return of its production. (*Id.* at ¶ 19.) During the

4

phone conference, Georgia DCH's counsel admitted that legal staff did not review the documents prior to production. (*Id.* at ¶ 20.) Instead, Georgia DCH conceded that it had relied on Jerry Dubberly – a pharmacist – to prepare the production. (*Id.* at ¶ 21.) Georgia DCH also admitted that it did not have legal staff re-review *any* documents after Dey informed Georgia DCH that it had produced documents marked "Attorney Client Communication" and "subject to the attorney client privilege." (*Id.* at ¶ 22.) During this conference, Georgia DCH refused to provide Dey with a list of documents it claims to be privileged, and reiterated its request for the return of its entire production. (*Id.* at ¶ 23.)

Dey's counsel objected to the agency's position, but agreed to maintain the documents in sealed boxes and notify the Department of Justice, Abbott, and Roxane of the situation. (*Id.* at ¶ 24, Ex. F.) Georgia DCH's counsel responded to Dey's counsel maintaining its claims of privilege and requesting again that Dey's counsel return the Master compact disc ("Master CD") produced to it and to destroy any hard copies of the allegedly "inadvertently produced" documents from the Master CD. Georgia DCH also asked Dey to maintain the documents produced in hard copy form in sealed packages. (*Id.* at ¶ 25, G.) On October 15, 2008, Dey's counsel responded to Georgia DCH's letter, reiterating its objections and requesting that the agency produce a privilege log by October 25, 2008. (*Id.* at ¶ 26, Ex. H.) Dey again agreed to maintain the documents in sealed packages until the dispute was resolved. (*Id.* at ¶ 24, Ex. F.)

### D. Dey Returns the Master CD From Georgia DCH's Production in Exchange for Georgia DCH's Agreement to Produce a Privilege Log

On October 15, 2008, Dey's counsel agreed to return the Master CD at issue on the condition that Georgia DCH provide a privilege log. (*Id.* at ¶ 26, Ex. H.) On the same day, Georgia DCH agreed to review its production (which it had ample opportunity to do previously),

5

and produce a privilege log identifying the basis for its assertions of privilege. (*See id.* at ¶ 28, Ex. J.) In returning the Master CD pursuant to Georgia DCH's request, and continuing to maintain the hard copy documents in sealed boxes, Dey relied on Georgia DCH's promise to produce a privilege log. On multiple occasions, Dey's counsel contacted counsel for Georgia DCH, requesting it comply with its obligations by producing a privilege log as promised and as required under the Federal Rules of Civil Procedure. (*Id.* at ¶ 29.) Dey's counsel spoke with the agency's counsel on multiple occasions, and corresponded via email attempting to secure the privilege log. *Id.* Georgia DCH asked for extensions which Dey conceded to. (*Id.* at ¶ 30.) In spite of these conversations, the agency has failed to abide by its commitment to produce a privilege log and return the non-privileged documents. (*Id.* at ¶ 33, 34.)

### E. Georgia DCH's Fails to Comply with its Obligations and Obstructs Discovery

Over a month has elapsed since the documents in question were returned to Georgia DCH, and the agency's deposition is scheduled for December 15, 2008. (*Id.* at ¶ 32, Ex. L.) Dey has, in good faith, attempted to secure the privilege log. (*Id.* at ¶ 30.) Yet Georgia DCH has not produced the promised privilege log, and Dey's counsel has maintained Georgia's productions in sealed boxes. (*Id.* at ¶ 24, 33.) Considering that the agency's deposition is only two weeks away, and that Georgia's failure to produce a privilege log or the requested documents has impeded Dey's counsel from preparing for the depositions, Georgia DCH's conduct is both unfair and unreasonable. The upcoming deposition necessitates Georgia DCH's production of the requested documents, so that Dey can review the documents it requested four months ago in preparation for the deposition. Consequently, Dey is unnecessarily forced to file the instant motion to compel the production of documents it returned to Georgia DHS in October 2008.

## ARGUMENT

### II.  THIS COURT SHOULD COMPEL GEORGIA DCH TO PRODUCE THE DISPUTED DOCUMENTS IN ACCORDANCE WITH RULE 45

#### A.  Georgia DCH Bears the Burden of Proving Privilege, and Has Failed to Meet its Burden

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Georgia DCH is required to justify, with factual support, the basis for its claims of privilege. *See* FED. R. CIV. PROC. 45(d)(2); *Cavallaro v. U.S.*, 153 F. Supp. 2d 52, 56 (D. Mass. 2001) ("The party invoking a recognized privilege has the burden of establishing … the existence of that privilege…."); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D. Mass. 2000); *In re Lernout & Hauspie Securities Litigation*, 222 F.R.D. 29, 36 (D. Mass. 2004) ( the "party resisting production … [bears] the burden of demonstrating [privilege]"). The party asserting privilege also bears the burden of proving that privilege was not waived. *Cavallaro*, 153 F. Supp. at 56; *Amgen*, 190 F.R.D. at 289. Rather than comply with its obligations under the Federal Rules, Georgia DCH has failed to provide any proof whatsoever of its privilege claims, despite having ample opportunity to do so.

It is well settled that bald allegations of privilege are insufficient to meet a withholding party's burden of establishing that documents are immune from disclosure on grounds of privilege. *See In re Grand Jury Subpoena*, 274 F.3d 563, 575-76 (1st Cir. 2001) (affirming denial of motion to quash subpoena seeking corporate documents because movants failed to generate a list of documents alleged to be privileged); *Marx v. Kelly, Hart & Hallman P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) ("the assertion of privilege must be timely and must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim").

Georgia DCH's claims of privilege constitute unspecified, blanket assertions that apply to its entire production. The agency continues to place a hold on its entire production, even documents which should have already been reviewed for privilege. Georgia DCH has not indicated why it failed to adequately review its documents for privilege when Dey first gave it the opportunity to do so. Nor has the agency produced a privilege log describing the nature of the withheld documents or communications which would enable the parties and this Court to assess its claims of privilege.

**B.    Georgia DCH's Conduct Stands in Direct Violation of Rule 45 of the Federal Rules of Civil Procedure**

Georgia DCH's conduct expressly violates the plain language of Rule 45 of the Federal Rules of Civil Procedure. Specifically, the Rule provides that "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must ... describe the nature of the withheld documents, communications, or tangible things in a manner that ... will enable the parties to assess the claim." FED. R. CIV. P. 45(d)(2).

"The operative language [in Rule 45] is mandatory and, although the rule does not spell out the sufficiency requirement in detail, courts consistently have held that the rule *requires* a party resisting disclosure to produce a document index or privilege log." *In re Grand Jury Subpoena*, 274 F.3d 563, 575-76 (1st Cir. 2001) (affirming denial of motion to quash subpoena seeking corporate documents because movants failed to generate a list of documents alleged to be privileged) (emphasis added) (*citing Bregman v. District of Columbia*, 182 F.R.D. 352 (D.D.C. 1998) and *First American Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 63 n.5 (D.D.C. 1998)). *See also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996). *See also GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 195

8

(D.D.C. 2003) (holding that Rule 45 is "obviously mandatory," thus nonparty was not excused from producing a privilege log).

Contrary to Rule 45, Georgia DCH has unreasonably withheld the disputed documents and has failed to produce a privilege log despite Dey's repeated requests via telephone and e-mail. (Katz Decl. ¶ 29, 30, 33, 34.) Knowing that its deposition is scheduled for December 15, 2008, Georgia's violation of the Federal Rules is reckless and prejudicial to Dey. Without a privilege log, neither the parties, nor this Court can adequately assess Georgia's claims of privilege over its "entire production," of which contained privileged documents "too voluminous to list." Nor can Dey review Georgia DCH's production in preparation of the deposition as all of the documents remain sealed at Georgia DCH's request. (Katz Decl. ¶ 24.) Georgia DCH's time to produce the privilege log has long since passed and, having conferred in good faith on multiple occasions with Georgia DCH in accordance with Rule 37(a) in an attempt to procure a privilege log or production of the disputed documents, Dey has been forced to file the instant motion to compel. Accordingly, this Court should compel Georgia DCH to produce the disputed documents, so that discovery may proceed, and that Dey may prepare for the agency's imminent deposition.

### III. GEORGIA DCH HAS WAIVED ITS CLAIMS OF PRIVILEGE WITH RESPECT TO DOCUMENTS PRODUCED PURSUANT TO THE SUBPOENA

#### A. By Failing to Provide a Privilege Log, Georgia DCH has Waived Any Claims of Privilege

When a party asserts claims of privilege but obstructs discovery by failing to provide a privilege log, it effectively waives the underlying privilege claims. *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001). *See also GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 195 (D.D.C. 2003); *Dorf & Stanton Communications, Inc. v. Molson Breweries*, 100

F.3d 919, 923 (Fed. Cir. 1996) (holding that failing "to provide a complete privilege log demonstrating sufficient grounds for taking the privilege" waives the privilege).

For example, in *In re Grand Jury Subpoena*, former officers of a subsidiary corporation and their attorney intervened and moved to quash a subpoena *duces tecum* based on claims of privilege. 274 F.3d at 569. However, the officers "[did not] identify any particular documents as privileged, nor [did] they specify the reasons why certain communications should be considered privileged." *Id*. Although the "intervenors [had knowledge] of the communications to which the subpoena pertained" and "had possession of [the documents]," they "made no effort to prepare a privilege log." *Id*. at 576. That omission was "fatal" to the claims of privilege. *Id*. The First Circuit held that such conduct violated Rule 45 of the Federal Rules of Civil Procedure, and that by failing to provide a privilege log, the interveners waived any claims of privilege. *Id*.

Here, it is undisputed that Georgia DCH has failed to produce a privilege log with respect to the documents it claims are privileged. Like in *In re Grand Jury Subpoena*, the agency here had ample opportunity to review the material and provide a privilege log, allowing discovery to proceed. (Katz Decl. ¶ 22, 27.) Georgia DCH had full knowledge of its obligations under both the Subpoena and the Federal Rules of Civil Procedure, yet four months have elapsed since issuance of the subpoena and no privilege log has been produced. (Katz Decl. ¶ 4, 33.) Georgia DCH's conduct not only violates Rule 45, but effectively waives any claims of privilege it had over the documents originally produced pursuant to the Subpoena.

### B. Alternatively, Georgia DCH's Grossly Negligent Conduct Merits a Waiver of Privilege Claims

Because Georgia DCH's production was purposeful and "grossly negligent," this Court should find that any privilege it asserts with respect to the June 13, 2007 Protective Order

("the Protective Order") has been waived. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289, 293 (D. Mass. 2000) (denying the party's motion for the return of inadvertently produced documents claimed to be privileged because the privilege was waived based on gross negligence) (*citing In re Grand Jury Subpoena (Zerendow)*, 925 F. Supp. 849, 855 (D. Mass. 1995) (Saris, J.)). *See also VLT, Inc. v. Lucent Technologies, Inc.*, No. 00-11049-PBS, 2003 WL 151399, at *2 (D. Mass. Jan. 21, 2003) (Saris, J.) (where protective order provided for return of inadvertently produced documents, but did not define "inadvertent production," "disclosures deemed 'grossly negligent' would be deemed outside the protective order's ambit").

        1.      <u>Georgia DCH's Allegedly "Inadvertent" Productions were Grossly Negligent</u>

Courts in the First Circuit frequently use a so-called "middle test" to determine whether the production of privileged documents constituted a waiver of the privilege:

> "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice."

*Amgen* 190 F.R.D. at 291; *Marrero Hernandez v. Esso Standard Oil Co.*, No. 03-1485 (JAG/GAG), 2006 WL 1967364, at *3 (D.P.R. Jul. 11, 2006). Here, like in *Amgen* and *Marrero*, Georgia DCH's conduct was grossly negligent. The agency knew full well that it was producing potentially privileged documents. Alternatively, if its conduct was inadvertent (which Dey does not concede), Georgia DCH did not take adequate measures to avoid the disclosure. *See Marrero*, 2006 WL 1967364, at *3.

First, Georgia DCH did not take reasonable precautions to avoid the disclosure. It relied on a pharmacist, not an attorney, to determine which documents were responsive to Dey's Subpoena. (Katz Decl. ¶ 21.) It did not have a single attorney review the documents prior to

11

production. (Katz Decl. ¶ 22.) Indeed, Georgia DCH purposely produced communications with attorneys. In a memo accompanying its initial production, Georgia DCH stated that its production included "*several communications with attorney* [sic]." *See* Katz Decl. ¶ 7, Ex. B. Moreover, the evidence as a whole indicates that Georgia DCH carefully chose each document that was produced:

- Georgia DCH flagged and highlighted certain pages of documents to direct Dey to the responsive portions.

- Georgia DCH wrote notes on the documents and CDs corresponding to the categories of documents requested.

- Georgia DCH organized all of the electronic documents into electronic folders corresponding to the requests in the Subpoena.

- Georgia DCH organized all of the hard-copy documents into file folders corresponding to the requests in the Subpoena.

- Georgia DCH prepared a memorandum describing the documents produced in response to each request.

(Katz Decl. ¶ 7-11.)

Second, Georgia DCH's timing in discovering that it produced potentially privileged documents weighs in favor of waiver. Like in *Amgen*, Georgia DCH only became aware of the potentially privileged documents after Dey's counsel brought it to their attention. (*See* Katz Decl. ¶ 13.) After it was aware of its allegedly inadvertent productions, the agency gave Dey permission to distribute documents that it later recalled based on claims of privilege to defendants Abbott and Roxane. (Katz Decl. ¶ 14.) Georgia DCH's September 29, 2008 request for the return of its entire production occurred over a month after it was originally produced, and only after Dey raised the issue. (Katz Decl. ¶ 6, 18.)

Third, the scope of Georgia DCH's production and the extent of the inadvertent disclosure of potentially privileged documents favors waiver. The agency stated that its

allegedly inadvertent disclosure required the return of its "entire production" and that privileged documents were "too voluminous to list." (Katz Decl. ¶ 18.) The scope and volume of retracted production here is similar to that in *Amgen*, where "the sheer magnitude of ... disclosure far exceed[ed] any inadvertent disclosure the Court has encountered in prior cases." 190 F.R.D. at 292. In the interest of fairness and justice, "it would be unjust to reward such gross negligence by providing relief from waiver." *Id* at 293; *Marrero*, 2006 WL 1967364, at *5.

All of the aforementioned factors: lack of precautions to prevent inadvertent disclosure, failure of Georgia DCH to timely recognize its error, the enormous scope of the production that contained potentially privileged documents, and the extent of the inadvertent disclosure weigh in favor of waiver. Additionally, the Court should consider Georgia DCH's careless decision not to recall the potentially privileged documents at issue but instead to allow Dey to release documents to other defendants. It should also consider the agency's grossly negligent decision not to have attorneys review its outgoing production. In the interest of fairness and justice, Georgia DCH should not be rewarded for its negligence, and its claims of privilege should be waived. *See Marrero*, 2006 WL 1967364, at *5.

2. Georgia DCH's Failure to Abide by the Provisions in the Protective Order was Grossly Negligent

In addition, Georgia DCH waived any claims to privilege based on its conduct with respect to the Protective Order, which was also grossly negligent. *See VLT, Inc.*, 2003 WL 151399, at *4. Georgia DCH failed to make a timely written request for the return of the documents it alleged were inadvertently produced, as mandated under the June 2007 Protective Order ("the Protective Order"). Pursuant to Paragraph 27 of the Protective Order, a producing party (or non-party) may request the return of privileged documents inadvertently or mistakenly produced within 21 days of discovering the production:

13

> "If a party has inadvertently or mistakenly produced information subject to a claim of protection or privilege, **upon written request** made by the producing party **within twenty-one (21) days of discovery of such inadvertent or mistaken production**, the information for which a claim of inadvertent production is made, including all copies, shall be returned within seven (7) business days of such request unless the receiving party notifies the producing party in writing that it challenges the producing party's assertion of privilege or protection."

(Katz Decl., Ex. A to Ex. G at ¶ 27) (emphasis added).

Dey notified Georgia DCH on September 5, 2008 by phone and in a letter that it had produced documents marked "Attorney Client Communication" and "subject to the attorney client privilege." According to the Protective Order, Georgia DCH had until September 26, 2008 to make a written request for the return of any inadvertently produced documents.

Georgia DCH quite simply failed to make any such request within the time allotted by the Protective Order. Georgia DCH's September 29, 2008 letter does not constitute a written request for the return of inadvertently produced privileged documents as provided by the Protective Order because the allegedly privileged documents are not identified. Moreover, were Georgia DCH to make such a written request at this time, it would be untimely. The Agency's compounded gross negligence should not be rewarded. Accordingly, Georgia DCH has waived claims to privilege with respect to the documents produced pursuant to the Subpoena.

## IV.   CONSIDERING THAT NO CLAIMS OF PRIVILEGE REMAIN, THIS COURT SHOULD COMPEL GEORGIA DCH TO PRODUCE THE WITHHELD DOCUMENTS

Because Georgia DCH has waived any underlying claims of privilege over the documents at issue, either by way of its violations under Rule 45, or its gross negligence in managing document production, it should be compelled to produce the remaining withheld documents. *See Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (holding that the attorney-client privilege was waived as to documents with the

14

same subject matter as those inadvertently disclosed); *In re Lernout & Hauspie Securities Litigation*, 222 F.R.D. 29, 35 (D. Mass. 2004) ("If [*Texaco*] is the law with respect to inadvertent disclosure, it is surely the rule for knowing disclosures.")

## V.     THIS COURT HAS JURISDICTION TO HEAR THIS MOTION TO COMPEL

This Court has the authority to hear motions relating to discovery disputes arising from subpoenas *duces tecum* issued in other district courts. In another multidistrict litigation pending before Judge Saris in the District of Massachusetts, the Court held:

> [T]his Court has jurisdiction to issue orders related to the subpoenas at issue. The purpose of a multidistrict litigation consolidation is to "avoid duplicative discovery, prevent inconsistent pretrial rulings and conserve judicial resources." *In re Air Disaster*, 486 F.Supp. 241, 243 (Jud. Pan. Mult. Lit. 1980). The relevant statutes and caselaw provide for an MDL Court to resolve disputes arising from the service of Rule 45 subpoenas on non-parties located in other districts . . .

*In re Neurontin Mktg.*, 245 F.R.D. 55, 57 (D. Mass. 2007) (overruling non-party's objection to MDL Court's exercise of jurisdiction over motion to compel documents pursuant to a subpoena *duces tecum*).

The Court's authority arises from the statute that provides for the transfer of actions pending in different districts for the purpose of coordinated and consolidated pretrial proceedings. 28 U.S.C. § 1407(b) provides:

> The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel ***may exercise the powers of a district judge in any district*** for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.

(emphasis added).

While section 1407(b) refers to giving an MDL Judge the power to oversee depositions in other jurisdiction, this Court and other courts have extended the MDL Judge's

15

authority to subpoenas relating to documents. As the Sixth Circuit held in *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 469 n. 4 (6th Cir. 2006), "the rationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the conclusion that Section 1407(b)'s grant of authority applies to both deposition subpoenas and documents-only subpoenas." *Id*; *see also In re Neurontin Mktg.*, 245 F.R.D. at 57.

In *Pogue*, the relator served a documents-only subpoena on HCA, Inc. ("HCA"), a non-party, issued from the Tennessee District Court. *See Pogue*, 444 F.3d at 465. Pogue moved to compel in the MDL court in the District of D.C. *See id.* at 466. The MDL court held it had jurisdiction and ordered compliance with the subpoena. *See id.* The Sixth Circuit held that the MDL district court had the authority to issue orders concerning the documents-only subpoenas at issue. As the court stated: "A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted." *Id.* at 468-69. *See also In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 586 (E.D. Pa. 1989) ("multidistrict judge may decide a motion to compel a non-party in other districts even if he or she is not physically situated in those districts"); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 485-86 (E.D. Pa. 2005); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 117 F.R.D. 30, 31-33 (D.P.R. 1987).

Therefore, as in *Pogue* and *In re Neurontin Mkt.*, this Court has the authority to resolve a motion to compel relating to the subpoena *duces tecum* issued to Georgia DCH.

## CONCLUSION

For the foregoing reasons, Dey respectfully requests that this Court grant Dey's Motion to Compel pursuant to Federal Rules of Civil Procedure 37, 45, and Local Rule 37.1.

Dated: December 1, 2008

Respectfully Submitted,

KELLEY DRYE & WARREN LLP

By:   /s/ Neil Merkl
      Paul F. Doyle (BBO # 133460)
      Sarah L. Reid (*pro hac vice*)
      William A. Escobar (*pro hac vice*)
      Neil Merkl (*pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Counsel for Defendants Dey, Inc., Dey, L.P., Inc. and Dey, L.P.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2008, I caused a true and correct copy of the foregoing to be served on counsel for the Georgia Department of Community Health by FedEx overnight delivery at the following address:

> Michelle Townes, Esq.
> 40 Capitol Square SW
> Atlanta, Georgia 30334-1300
> *Counsel for Georgia Department of Community Health*

and on counsel for the United States, Ven-A-Care of the Florida Keys, Inc., Abbott, and Roxane by electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification.

/s/ Michael J. Maloney
Michael J. Maloney