## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: **PHARMACEUTICAL INDUSTRY**<br>**AVERAGE WHOLESALE PRICE LITIGATION** | **MDL No. 1456**<br>**Master File No. 01-CV-12257-PBS**<br>**Subcategory Case. No. 06-11337** |
| | **Hon. Patti B. Saris** |
| **THIS DOCUMENT RELATES TO:** | **Magistrate Judge** |
| *United States of America ex rel. Ven-A-Care of the*<br>*Florida Keys, Inc., et al. v. Dey, Inc., et al.,*<br>Civil Action No. 05-11084-PBS | **Marianne B. Bowler** |

## DEFENDANTS DEY, INC., DEY, L.P., AND DEY L.P., INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL LUIS COBO AND VEN-A-CARE OF THE FLORIDA KEYS, INC. TO PRODUCE DOCUMENTS

### PRELIMINARY STATEMENT

Defendants Dey, Inc., Dey L.P., Inc. and Dey, L.P. (collectively, "Dey"), by their

attorneys, respectfully move pursuant to Federal Rules of Civil Procedure 37 and 45 and Local

Rule 37.1 to compel Luis Cobo and Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care") to

produce documents concerning Cobo Pharmacy responsive to Dey's Subpoena *Duces Tecum*

(the "Subpoena"), and Dey's First Set Of Requests For Production Of Documents And Tangible

Things To Relator Ven-A-Care Of The Florida Keys, Inc. ("Document Requests to Ven-A-

Care").

### INTRODUCTION

Luis Cobo is not a random third-party with no ties or interest in this lawsuit. Luis

Cobo is a principal of the party, Ven-A-Care of the Florida Keys ("Ven-A-Care"). Mr. Cobo is

also a fact witness – he has testified that he submitted claims on behalf of Ven-A-Care, the

relator, and Cobo Pharmacy, a retail pharmacy he owned until May 31, 2000, to Florida

1

Medicaid for drugs at issue in this lawsuit. Florida Medicaid's payments on those claims are necessarily part of this lawsuit. Mr. Cobo testified that he has in his possession documents concerning an audit he performed relating to "inflated reimbursements" made by the Florida Medicaid program to Cobo Pharmacy. Mr. Cobo also has in his possession documents relating to Florida Medicaid claims submitted by him on behalf of Cobo Pharmacy and documents showing Cobo Pharmacy's costs and profits. Dey subpoenaed these documents from Mr. Cobo. After substantial delay, counsel for Ven-A-Care and Mr. Cobo informed Dey that Mr. Cobo objects to producing any documents based on relevance. These documents are also responsive to Dey's Document Requests to Ven-A-Care. All of the documents requested are relevant to Ven-A-Care's and the United States' (collectively, "Plaintiffs") allegations in this lawsuit.

Like Ven-A-Care, Cobo Pharmacy was a provider for the Florida Medicaid program. Mr. Cobo began working at Cobo Pharmacy in 1976, which was then owned by his father. *See* Declaration of Clifford Katz, dated December 1, 2008 ("Katz Decl."), Ex. A, 1/18/08 Cobo Tr., at 31:14-32:1. Mr. Cobo later purchased the business. *See id.* As the owner and operator of Cobo Pharmacy, Mr. Cobo submitted claims for reimbursement to Florida Medicaid, including claims for Dey's drugs which are at issue in this lawsuit. Ex. B, 3/4/08 Cobo Tr., at 548:16-549:1; Ex. C, 7/31/08 Cobo Tr., at 742:5-21.

At the direction of Zachary Bentley, another principal of Ven-A-Care, Mr. Cobo performed an audit of Cobo Pharmacy regarding "inflated reimbursements." *See* Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 789:13-790:1 & Ex. D at FL-AG-0002874-75. Mr. Cobo testified that such "inflated reimbursements" were the result of "fraudulent drug prices" provided by drug manufacturers. *See* Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 789:13-793:16. Florida Medicaid also performed an audit of Cobo Pharmacy relating to alleged overpayments and estimated that

2

Cobo Pharmacy was overpaid by $374,476.54. *See* Katz Decl., Ex. D. All documents relating to these audits are directly relevant to whether Cobo Pharmacy – and other retail pharmacies like it – were overpaid as a result of Dey's AWPs or WACs. Indeed, Mr. Cobo's own testimony and actions demonstrate that he sees a connection between these audit documents and this lawsuit. Mr. Cobo testified that he performed his own audit of Cobo Pharmacy relating to claims submitted to Florida Medicaid once he "got fully sensitized and appreciated the issues in [Ven-A-Care's] complaint." *See* Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 792:8-794:12.

Additionally, Dey has requested documents from Mr. Cobo and Ven-A-Care evidencing the claims Cobo Pharmacy submitted to Florida Medicaid, the Usual and Customary Charges billed, how those Usual and Customary Charges were calculated, and documentation concerning Cobo Pharmacy's costs and profits. All of these documents are relevant to whether Cobo Pharmacy was overpaid by Florida Medicaid as Plaintiffs, including Mr. Cobo, allege in this lawsuit. Mr. Cobo has testified that these documents are in his possession. *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 98:12-99:19; Ex. C, 7/31/08 Tr., at 650:8-652:5.

Because the requested documents are both within the possession of Mr. Cobo, a principal of Ven-A-Care, and are relevant to the allegations in this action, Mr. Cobo and Ven-A-Care should be compelled to produce these documents. The evidence will demonstrate that Mr. Cobo, as a principal of Ven-A-Care, has known that the allegations in Ven-A-Care's complaint are not supported by the facts relating to Mr. Cobo's own pharmacy. Moreover, as a pharmacy that submitted claims to Florida Medicaid for the subject drugs during the relevant time period, this lawsuit necessarily covers Cobo Pharmacy and its claims.

# BACKGROUND

## A. Ven-A-Care's And Mr. Cobo's Role In This Action And Other AWP Actions

In 1997, Ven-A-Care initiated this action on behalf of itself and the United States to recover allegedly "inflated" payments to pharmacies made by the Medicaid programs of all states, including Florida. Ven-A-Care has since adopted the Complaint and Amended Complaint of the United States. *See* Katz Decl., Ex. E, Ven-A-Care's Complaint Adopting United States' Complaint in Intervention, filed October 31, 2006.

Ven-A-Care has initiated several additional lawsuits based on allegations relating to AWP and WAC, beginning with a litigation against Abbott Laboratories, Inc. in 1995. Ven-A-Care and Mr. Cobo filed lawsuits against Dey on behalf of Texas (filed under seal in 1999, unsealed in 2000), California (filed under seal in 1998, unsealed in 2005), and Florida (filed under seal in 1998, unsealed in 2003). *See* Katz Decl. ¶ 9. Additional actions filed by Ven-A-Care and Mr. Cobo continue to be unsealed, including an action on behalf of Texas against several defendants unsealed this year. *See* Katz Decl. ¶ 10.

Mr. Cobo and the other principals of Ven-A-Care have received significant sums from the settlements of lawsuits initiated by Ven-A-Care. Mr. Cobo testified that he received approximately $10 to $12 million in total settlements from his involvement with Ven-A-Care. *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 37:11-38:3. Likewise, John Lockwood estimated that he has received – as a principal of Ven-A-Care – about $10 million from settlements of litigations. *See* Katz Decl., Ex. F, 12/6/07 Lockwood Tr., at 51:15-52:10.

## B. Mr. Cobo Submitted Claims To Florida Medicaid On Behalf Of Ven-A-Care And Cobo Pharmacy

During the relevant time period of this action, Ven-A-Care was a pharmacy provider for Florida Medicaid. As conceded by plaintiffs, "Ven-A-Care's principal officers

and/or directors during the relevant time period have included John M. Lockwood, M.D., Zachary Bentley, Luis Cobo and T. Mark Jones." United States First Amended Complaint at ¶ 11. As Ven-A-Care's "pharmacist in charge," Mr. Cobo submitted claims to Florida Medicaid on behalf of Ven-A-Care. *See* Katz Decl., Ex. A, 7/31/08 Cobo Tr., at 742:5-21.

From 1990 until May 31, 2000, Mr. Cobo also owned and/or operated Cobo Pharmacy, an independent retail pharmacy located next door to Ven-A-Care. *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 31:14-32:1, 41:18-42:8; 113:18-114:11; Ex. C, 7/31/08 Cobo Tr., at 606:7-14. As the owner and pharmacist of Cobo Pharmacy, Mr. Cobo submitted Medicaid claims on behalf of Cobo Pharmacy, the same role he fulfilled for Ven-A-Care. *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 43:1-19; Ex. B, 3/4/08 Cobo Tr., at 538:11-539:19, 548:16-549:1. Some of these claims were for Dey drugs at issue in this lawsuit. *See* Katz Decl. ¶ 12, Ex. B, 3/4/08 Cobo Tr., at 548:16-549:1; Ex. C, 7/31/08 Cobo Tr., at 742:5-21. For each of these claims, Mr. Cobo included a billed amount by Cobo Pharmacy. *See id.*, Ex. B, 3/4/08 Cobo Tr., at 548:16-549:16. This billed amount is referred to by Florida Medicaid as the pharmacy's Usual and Customary Charge. *See* Katz Decl., Ex. G, Prescribed Drug Services, Coverage, Limitations, and Reimbursement Handbook, effective August 1998 ("1998 Florida Medicaid Pharmacy Handbook"), at FL002786; Ex. H, 1999 Florida Medicaid Pharmacy Handbook, at FL002416. In every claim submitted by Mr. Cobo, Mr. Cobo certified the Usual and Customary Charge to be "true, accurate and complete," as he was required to do by the Florida Medicaid program. Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 728:16-20; 747:13-752:10; Ex. G, at FL002895 (sample claim form).

## C.   **Payments Made By The Florida Medicaid Program To Pharmacies**

From 1990 to May 31, 2000 Medicaid used a "lowest of" reimbursement formula: a provider is paid at the lowest of the provider's Usual and Customary Charge; the Federal Upper

5

Limit or "FUL" (if available for the drug); the State Maximum Allowable Cost or "SMAC" (if available for the drug); or WAC plus 7% (or if WAC was not available, AWP minus 11.5%). *See, e.g.,* Katz Decl., Ex. G, 1998 Florida Medicaid Pharmacy Handbook, at FL002878-79; Ex. H, 1999 Florida Medicaid Pharmacy Handbook, at FL002526-28; Ex. I, 1989 Florida Medicaid Pharmacy Handbook, at VACMDL68195. This portion of the reimbursement is known as the "ingredient cost." *See, e.g.,* Katz Decl., Ex. H, 1999 Florida Medicaid Pharmacy Handbook, at FL002528. Where the reimbursement payment was based on FUL, WAC, AWP or SMAC, Florida Medicaid also paid the provider a dispensing fee of $4.23. *See* Katz Decl., Ex. G, 1998 Florida Medicaid Pharmacy Handbook, at FL002878-79; Ex. H, 1999 Florida Medicaid Pharmacy Handbook, at FL002526-28; Ex. I, 1989 Florida Medicaid Pharmacy Handbook, at VACMDL68195. No dispensing fee was paid where reimbursement is based on the pharmacy's Usual and Customary Charge. *See id.* The Florida Medicaid program has defined Usual and Customary Charge:

- As of January 1, 1989, Usual and Customary Charge was defined as "the amount you normally charge the general public or the lowest charge to 51% of your customers." *See* Katz Decl., Ex. I, 1989 Florida Medicaid Pharmacy Handbook, at VACMDL68195.

- From November 1997 to June 2000, it was defined as "the amount most often billed to another third party or to the pharmacy's non-Medicaid population during the same period of time, for the same drug, quantity and strength." *See* Katz Decl., Ex. G, 1998 Florida Medicaid Pharmacy Handbook, at FL002786; Ex. H, 1999 Florida Medicaid Pharmacy Handbook, at FL002416.

## D.   Mr. Cobo Has Documents In His Possession, Custody Or Control Relevant To The Allegations In This Action

At his deposition, Mr. Cobo testified that he had in his possession documents concerning Cobo Pharmacy. Mr. Cobo stated that the volume of documents was small enough that "[w]e could put all our stuff basically into one banker's box." *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 99:16-19. Among other documents, Mr. Cobo testified that he has retained

documents relating to "whatever it took to run Cobo Pharmacy as a business," documents relating to a $40,000 payment made by Mr. Cobo in 2001 to the Florida Medicaid program in connection with "inflated" Medicaid payments received by Cobo Pharmacy, and records showing Cobo Pharmacy's revenues from prescription drugs. *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 98:12-99:19; Ex. C, 7/31/08 Cobo Tr., at 650:8-652:5, 797:5-798:8.

**E.     Dey Subpoenas Documents from Luis Cobo Concerning Cobo Pharmacy**

On August 4, 2008, Dey served a Subpoena *Duces Tecum* on Mr. Cobo requesting "all documents concerning Cobo Pharmacy," based on the understanding from Mr. Cobo's deposition testimony that the entire universe of documents could fit in a single banker's box. *See* Katz Decl., Ex. J; Ex. A, 1/18/08 Cobo Tr., at 99:16-19. On August 18, 2008, through his counsel The Breen Law Firm, P.A. and Berger & Montague, P.C., the same firms which represent Ven-A-Care in the present action and other AWP lawsuits, Mr. Cobo served objections to the Subpoena which included objections based on relevance and burden. *See* Katz Decl., Ex. L. On August 29, 2008, during a meet and confer regarding the Subpoena and Mr. Cobo's objections, counsel for Ven-A-Care stated that Mr. Cobo was in possession of a larger volume of documents than one box. *See* Katz Decl. ¶ 19. Counsel for Ven-A-Care requested more specific document requests to which it would respond. *See* Katz Decl. ¶ 19. Based on these representations, by letter of September 8, 2008, Dey provided thirteen revised document requests, which include documents concerning: Medicaid claims submitted by Cobo Pharmacy, Cobo Pharmacy's Usual and Customary Charges, Cobo Pharmacy's net profits or losses, and the audits of Cobo Pharmacy performed by Mr. Cobo and the Florida Medicaid program. *See* Katz Decl., Ex. M.

Dey requested that Mr. Cobo respond to the revised requests on or before

7

September 19, 2008. *See id.* Dey received no response to the Requests by that date. *See* Katz Decl. ¶ 20. On October 3, 2008, in response to an email from Dey's counsel, counsel for Ven-A-Care and Mr. Cobo stated that Mr. Cobo did intend to respond to the revised requests. *See* Katz Decl., Ex. N. Almost two weeks later on October 15, counsel for Ven-A-Care and Mr. Cobo requested additional time to respond. *See* Katz Decl., Ex. O. For eight weeks, Dey's counsel was led to believe that a document production would be forthcoming. Yet, on October 24th, counsel for Ven-A-Care and Mr. Cobo finally stated that, although Mr. Cobo has twenty to thirty boxes of documents in his possession relating to Cobo Pharmacy, Mr. Cobo was refusing to produce any documents based on relevance.[1] *See* Katz Decl. ¶ 23.

## F. The Cobo Pharmacy Documents Are Responsive to Dey's Document Requests to Ven-A-Care

On January 18, 2008, Dey served its Document Requests to Ven-A-Care. *See* Katz Decl., Ex. P. All of the documents responsive to the Subpoena to Mr. Cobo (as modified by the September 8, 2008 letter) are encompassed by these requests, including: Request 10 (acquisition costs of providers for the Dey Subject Drugs); Request 27 (audits, reports, studies, analyses, or surveys of drug prices); Request 31 (documents concerning "spread" or the difference between payment under Medicaid and acquisition costs of providers); Request 32 (investigations and government audits relating to payments made by Medicaid to providers); Request 57 (documents concerning claims submitted by providers to Medicaid for which they received "excessive reimbursement"); Request 58 (whether use of a reimbursement formula based on AWP or WAC can or does serve as a means of subsidizing inadequate dispensing fees);

---

[1]     Counsel also stated that Mr. Cobo has no documents responsive to requests eight ("documents constituting or concerning any marketing or sales materials relating to Dey's Drugs") or eleven ("documents constituting or concerning any laws, regulations, rules, manuals, or handbooks relating to the Medicaid or Medicare programs"). *See* Katz Decl. ¶ 23.

8

and Request 59 (documents concerning overpayments allegedly resulting from Dey's conduct).
Documents concerning Medicaid claims submitted by Cobo Pharmacy, Cobo Pharmacy's Usual
and Customary Charges, and Cobo Pharmacy's net profits or losses are responsive to Requests
10, 57, 58, and 59. Documents concerning the audits of Cobo Pharmacy performed by Mr. Cobo
and the Florida Medicaid program are responsive to Requests 27, 31, 32, and 59.

## ARGUMENT

### I.
### THE COURT SHOULD COMPEL MR. COBO AND VEN-A-CARE TO PRODUCE
### DOCUMENTS IN MR. COBO'S POSSESSION, CUSTODY OR CONTROL

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "parties may obtain
discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."
"Under the liberal standard set forth in that rule, information is discoverable if there is any
possibility it might be relevant to the subject matter of the action." *Cabana v. Forcier*, 200
F.R.D. 9, 17 (D. Mass. 2001). As discussed more fully below, the requested documents are
relevant to the claims and defenses in this action. Therefore, the Court should compel Mr. Cobo
to produce the documents concerning Cobo Pharmacy responsive to the Subpoena.

Additionally, the Court can compel the production of the Cobo Pharmacy
documents pursuant to Dey's Document Requests to Ven-A-Care. Discovery of documents
relating to a third party company is appropriate where those documents are within the control of
a party. *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 131 F.R.D. 46, 48-49 (S.D.N.Y. 1990). "Control
is determined by the ability of the party to obtain the documents in question." *See id.* at 48-49.
In *A.F.L. Falck*, a party in a bankruptcy proceeding refused to produce tax returns and corporate
books for two third party companies. The Court ordered the documents produced, holding that
"[e]ven if Steel Fabricators and Metal Industries are third parties with respect to these
proceedings, [the party] controls both entities, and therefore he controls the production of their

9

documents." *Id.*; *see also Gen. Envtl. Sci. Corp. v. Horsfall*, 136 F.R.D. 130, 133-34 (N.D. Ohio 1991) ("An individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder."); *Advance Labor Serv., Inc. v. Hartford Accident and Indemnity Co.*, 60 F.R.D. 632, (N.D. Ill. 1973) (compelling production of documents of third party corporation where defendant and third party had identical shareholders and directors).

Mr. Cobo is a principal of the relator, Ven-A-Care. First Amended Complaint at ¶ 11. Prior to the sale of Cobo Pharmacy, Mr. Cobo was the sole owner of that business, and was responsible for its day to day operations. *See* Background at pp. 4-5, *supra*. He has already testified that he has in his possession, custody or control documents concerning Cobo Pharmacy responsive to the Subpoena and Document Requests to Ven-A-Care. *See* Background at pp. 6-7. Therefore, Ven-A-Care should also be compelled to produce the documents concerning Cobo Pharmacy.

## II.
## THE REQUESTED DOCUMENTS ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS ACTION

### A.   Audits of Cobo Pharmacy Are Relevant to Ven-A-Care's Claims

Dey's document requests twelve and thirteen in the September 8, 2008 letter seek documents relating to two audits of Cobo Pharmacy which found overpayments made by Florida Medicaid to Cobo Pharmacy.[2] Mr. Cobo testified at his deposition that he voluntarily undertook a self-audit of Cobo Pharmacy's past claims to Florida Medicaid to "offset any reimbursements that Cobo Pharmacy would have ... inadvertently received as a result of the paying [*sic*] mechanism that was in place." *See* Katz Decl., Ex. A, 1/18/08 Cobo Tr., at 250:1-252:6; Ex. C,

---

[2]   Documents concerning the audits of Cobo Pharmacy performed by Mr. Cobo and the Florida Medicaid program are also responsive to Requests 27, 31, 32, and 59 to Ven-A-Care.

7/31/08 Cobo Tr., at 797:5-798:8; Ex. D, at FL-AG-0002874-75. As a result of this examination, Mr. Cobo made an unsolicited payment of $40,000 to Florida Medicaid in 2001 to return those purported overpayments. *See id.*

Additionally, on July 27, 2000, shortly after Mr. Cobo sold Cobo Pharmacy, Heritage Information Systems, Inc. ("Heritage"), on behalf of the Florida Medicaid program, conducted an audit of Cobo Pharmacy. *See id.* Heritage estimated that Florida Medicaid made $374,476.56 in overpayments to Cobo Pharmacy. *See id.* Despite the discrepancy between the amount owed as determined by Mr. Cobo's self-audit and the Heritage Audit, this Heritage Audit was ordered closed by the Chief of Medicaid Program Integrity on October 31, 2001 after the receipt of Mr. Cobo's check for $40,000 "because the self-audit overlapped (and completely encompassed) the Heritage audit." *See id.*

The $40,000 self-audit payment occurred after Ven-A-Care filed sealed complaints against Dey and other manufacturers. *See* Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 821:15-18. Mr. Cobo testified that he undertook the voluntary self-audit as a result of Ven-A-Care's involvement in this litigation: "I felt that if I'm going to be an active participant in this lawsuit, then certainly I had an obligation to try to, you know, rectify anything that I had seen that would – that has been problematic for the program on a much, much larger scale." *See* Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 794:1-12. Mr. Cobo further testified that he initiated this effort at the suggestion of Zachary Bentley, another principal of Ven-A-Care, and agreed that it "may have been the inference and the concern" that Cobo Pharmacy's billing practices might look bad for Ven-A-Care in the litigation. *See id.* at 795:14-797:4.

Mr. Cobo testified that the $40,000 figure was "the difference...between what Florida Medicaid reimbursed me and what I calculated to be the more accurate reimbursement,

which would have been my acquisition cost plus – plus seven percent." *See id.* at 803:7-21. In order to arrive at the $40,000 figure, Mr. Cobo applied a formula of his own devising: "take out the dispensing fee that was involved so we were just dealing with the cost of the drug product itself. And then used an array of percentages and applied them to the overall money that I had been paid on generics.... I took [a] sampling and applied it to the seven year period and came up with an amount that turned out to be around... $35,000. And then added seven percent interest." *See id.* at 790:2-792:7. Documents showing how Mr. Cobo calculated an "overpayment" from Florida Medicaid based on allegedly inflated AWPs or WACs are directly relevant to Ven-A-Care's allegations as to how an "overpayment" should be defined and calculated. Additionally, any documents regarding Florida Medicaid's audit of Cobo Pharmacy of alleged overpayments would similarly be relevant.

**B.    Cobo Pharmacy's Medicaid Claims and the
Amounts Billed in Those Claims Are Relevant**

Dey's requests one through five in the September 8, 2008 letter seek documents relating to Medicaid claims submitted by Cobo Pharmacy, and documents necessary to evaluate the amounts billed in those claims.[3] These documents will show that Ven-A-Care's fraud-based claims must fail because Plaintiffs cannot establish that Dey made any purported misrepresentation that was material or that any such alleged misrepresentation caused Florida or the Federal government any injury.

To prevail on and recover damages for its fraud-based claims, Ven-A-Care must show that the alleged misrepresentations by the defendants were material. *U.S. ex rel. Sanders v. N.A. Bus Indus.*, No. 07-1773, 2008 WL 4793577, at **7-10 (4th Cir. Nov. 5, 2008) (dismissing

---

[3]    These documents are also responsive to Requests 57 and 59 to Ven-A-Care because they demonstrate that providers, like Cobo Pharmacy, were not "overpaid."

False Claims Act claims where alleged misrepresentations were not material and where the
alleged misrepresentation did not cause the government to pay out money or forfeit money due);
*Colorado State Bank of Walsh v. U.S.*, 18 Cl. Ct. 611, 629 (Cl. Ct. 1989) (materiality and
causation of damages required under federal common law fraud). Additionally, "[a]s a general
rule, one injured by the commission of fraud is entitled to recover such damages in a tort action
as will compensate him or her for the loss or injury actually sustained because of his or her
reliance on the misrepresentation and place him or her in the same position that he or she would
have occupied but for the fraud." 37 Am. Jur. 2d Fraud and Deceit § 379. Similarly, under the
False Claims Act, in order to recover damages, "the government must prove that it sustained an
actual loss as a result of the [defendant's] false or fraudulent claim." *Comm. Contractors, Inc. v.
United States*, 154 F.3d 1357, 1371-72 (Fed. Cir. 1998) (reversing award of damages where
government contractor submitted falsified quality control documents where government failed to
show contractor's actions negatively affected the final product); *see also Ab-Tech Constr., Inc. v.
United States*, 31 Fed. Cl. 429 (Fed. Cl. 1994) (government not entitled to damages because it
failed to show that there was a difference in value between what it paid for and what it received).

Plaintiffs' causes of action are based on the allegation that the published AWPs
and WACs for the Dey Subject Drugs caused the Medicaid program to overpay pharmacies. *See*
Am. Compl. at ¶¶ 3-5. Documents relating to claims submitted by Cobo Pharmacy will show
that Medicaid did not overpay for any of the Dey Subject Drugs based on published AWPs and
WACs, and thus, Dey's AWPs and WACs could not have been material to any alleged
overpayments or caused any alleged damages.

Florida Medicaid has used a "lowest of" methodology. *See* Background at pp. 5-
6, *supra*. Under this methodology, every claim paid based on AWP or WAC was less than the

13

pharmacy's billed charge (*i.e.*, the Usual and Customary Charge). *See id.*; Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 772:10-773:17. Though the definition of Usual and Customary Charge has varied throughout the relevant time period, it always meant an amount billed by the pharmacy to a defined group of customers. *See* Background at p. 6, *supra*. Mr. Cobo certified the Usual and Customary Charge submitted by Cobo Pharmacy to be "true" and "accurate." *See id.* at p. 5, *supra*. Mr. Cobo testified that "[i]n instances where the reimbursement that Ven-A-Care received, the Florida Medicaid reimbursement based on the AWP or WAC methodology from Florida Medicaid, then that would indicate that I would think it safe to say by and large that the amount submitted by Ven-A-Care would have been at that figure or possibly higher." Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 773:11-17. As the same reimbursement formula applied to Cobo Pharmacy's Medicaid claims, the same conclusion applies. Thus, in every instance where the AWP or WAC reported by Dey was used by Florida Medicaid to reimburse for a claim submitted by Cobo Pharmacy, Cobo Pharmacy had submitted a Usual and Customary Charge certified as "true" and "accurate" that was higher than the amounts based on WAC and AWP.

Plaintiffs allege only that certain AWPs and WACs were inflated. Even if correct, that fact cannot be material to any pecuniary loss because Medicaid never paid higher than the amount billed by the provider. In other words, every time the Florida Medicaid program, for example, paid a claim based on an AWP or WAC, it was actually receiving a discounted price because it was paying less than the value of the service set by the pharmacy pursuant to Florida Medicaid's definition of Usual and Customary Charge. Ven-A-Care and the United States have not alleged that the Usual and Customary Charges certified by the pharmacies, including Cobo Pharmacy, are false. Therefore, the Medicaid program could not have been materially harmed because they never "overpaid" when they reimbursed based on

14

AWP or WAC. Rather, the Medicaid program reimbursed claims at a discounted rate when AWP or WAC was used instead of the Usual and Customary Charge.

Cobo Pharmacy's documents relating to claims it submitted to the Florida Medicaid program and its Usual and Customary Charges are relevant because they should show that the amounts Florida Medicaid paid Cobo Pharmacy for any claims reimbursed on the basis of AWP or WAC were less than those amounts paid by other customers of Cobo Pharmacy. Since Cobo Pharmacy was obligated by Florida Medicaid to calculate its Usual and Customary Charge based on the amounts it charged to third party payors and other non-Medicaid customers, documents concerning billed charges to third party payors and other non-Medicaid customers are needed to determine whether Cobo Pharmacy complied with Florida Medicaid's definition of Usual and Customary Charge.

## C.   Documents Relating to Cobo Pharmacy's Costs to Purchase Drugs, Dispensing Costs, Profits and Losses Will Demonstrate No Inflated Profits

Dey's document requests six, seven, nine and ten in the September 8, 2008 letter seek documents relating to Cobo Pharmacy's costs to purchase drugs, dispensing costs and net profits or losses.[4] The United States', Ven-A-Care's and Mr. Cobo's allegation that providers received a "government funded 'spread'" that represented "inflated... profits" rests on the assumptions that providers received a windfall from the ingredient portion of the reimbursement payment, and that the dispensing fee paid to pharmacies covered their costs to dispense drugs. The net profits of Cobo Pharmacy – a retail pharmacy that dispensed drugs to Medicaid patients – are relevant to these allegations that pharmacies like Cobo Pharmacy were making "inflated" "profits." Indeed, claims submitted to Florida Medicaid by Mr. Cobo for Dey's albuterol are at

---

[4]    These documents are also responsive to Requests Request 10, 57, 58 and 59 to Ven-A-Care because they will demonstrate no overpayments.

15

issue in this action since Plaintiffs are claiming that payments to Cobo Pharmacy were inflated. Documents concerning Cobo Pharmacy's net profits are needed to evaluate Plaintiffs' and Mr. Cobo's allegations that Cobo Pharmacy received inflated profits.

Mr. Cobo testified that the pharmacy business was "very competitive," stating that by the time he sold Cobo Pharmacy in 2000, there were "too many" pharmacies in the area. *See* Katz Decl., Ex. C, 7/31/08 Cobo Tr., at 636:12-637:11. He testified that his profit margin was declining over time. *See id.* at 653:11-654:18. Mr. Cobo further testified that Cobo Pharmacy was "going under some big economic stress" and "having some problems financially" due to shrinking profit margins, a situation he described as common for independent pharmacists across the nation. *See id.* at 655:19-658:1. [Cobo 7/31/08 Dep.] Mr. Cobo's testimony undermines the allegations in the Amended Complaint. Documents evidencing Cobo Pharmacy's costs and profits should also contradict Mr. Cobo's allegations in this lawsuit.

**D.      Mr. Cobo's Knowledge of the Alleged Fraud Is Relevant to Determining Ven-A-Care's Share of Any Recovery**

In determining the relator's share of any recovery pursuant to 31 U.S.C. § 3730(d) of the False Claims Act, courts consider, among other things: 1) whether the relator participated in the fraud; 2) whether the relator reported the fraud promptly; and 3) whether the relator tried to stop the fraud once discovered. *See, e.g., U.S. ex rel. Fox v. Northwest Nephrology Assocs., P.S.*, 87 F. Supp. 2d 1103, 1112 (E.D. Wash. 2000) (the government argued that the relator should be awarded a lower share based on the relator's delay in reporting the fraud, failure to try to stop the fraud, and the relator's participation in the fraud); *U.S. ex rel. Johnson Pochardt v. Rapid City Regional Hosp.*, 252 F. Supp. 2d 892, 899 (D.S.D. 2003).

Documents concerning whether the Usual and Customary Charges submitted to Florida Medicaid by Mr. Cobo were "true" and "accurate," whether Mr. Cobo had information

16

showing that he was receiving "overpayments" from Florida Medicaid, and when he was aware

of such information are directly relevant to whether Mr. Cobo participated in the alleged fraud,

whether he reported the alleged fraud promptly, and whether he tried to stop the alleged fraud.

Indeed, if Mr. Cobo had been submitting false Usual and Customary Charges, he could have

easily prevented any fraud by submitting true Usual and Customary Charges, amounts which

Florida Medicaid could not exceed in making payments on claims, regardless of any published

AWP or WAC.

## III.
## THIS COURT HAS JURISDICTION TO HEAR
## THE MOTION TO COMPEL LUIS COBO

Though the Subpoena was issued from the U.S. District Court for the Southern

District of Florida, this multi-district litigation ("MDL") Court has the authority to hear this

dispute. Indeed, in another MDL pending before Judge Saris in the District of Massachusetts,

the Court held that it could hear motions related to subpoenas issued by other districts in that

MDL. As the court held:

> [T]his Court has jurisdiction to issue orders related to the
> subpoenas at issue. The purpose of a multidistrict litigation
> consolidation is to "avoid duplicative discovery, prevent
> inconsistent pretrial rulings and conserve judicial resources." *In re
> Air Disaster*, 486 F.Supp. 241, 243 (Jud. Pan. Mult. Lit. 1980).
> The relevant statutes and caselaw provide for an MDL Court to
> resolve disputes arising from the service of Rule 45 subpoenas on
> non-parties located in other districts . . ..

*In re Neurontin Mktg.*, 245 F.R.D. 55, 57 (D. Mass. 2007) (overruling non-party's objection to

MDL Court's exercise of jurisdiction over motion to compel documents pursuant to a subpoena

*duces tecum*).

The Court's authority arises from the statute that provides for the transfer of

actions pending in different districts for the purpose of coordinated and consolidated pretrial

17

proceedings. 28 U.S.C. § 1407(b) provides:

> The judge or judges to whom such actions are assigned, the
> members of the judicial panel on multidistrict litigation, and other
> circuit and district judges designated when needed by the panel
> **may exercise the powers of a district judge in any district** for the
> purpose of conducting pretrial depositions in such coordinated or
> consolidated pretrial proceedings.

(emphasis added).

While section 1407(b) only states that an MDL Judge has the power to oversee

depositions in other jurisdictions, this Court and other courts have extended the MDL Judge's

authority to documents-only subpoenas. As the Sixth Circuit held in *United States ex rel. Pogue

v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 469 n. 4 (6th Cir. 2006), "the rationale

underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the

conclusion that Section 1407(b)'s grant of authority applies to both deposition subpoenas and

documents-only subpoenas." *Id.*; *see also In re Neurontin Mktg.*, 245 F.R.D. at 57.

In *Pogue*, the relator served a documents-only subpoena on HCA, Inc. ("HCA"), a

non-party, issued from the Tennessee District Court. *See id.* at 465. Pogue moved to compel in

the MDL court in the District of Columbia. *See id.* at 466. The MDL court held it had

jurisdiction and ordered compliance with the subpoena. *See id.* The Sixth Circuit held that the

MDL district court had the authority to issue orders concerning the documents-only subpoenas at

issue. As the court stated: "A judge presiding over an MDL case therefore can compel

production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an

extra-district nonparty; and hold an extra-district nonparty deponent in contempt,

notwithstanding the nonparty's physical situs in a foreign district where discovery is being

conducted." *Id.* at 468-69. *See also In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 586 (E.D. Pa.

1989) ("multidistrict judge may decide a motion to compel a non-party in other districts even if

18

he or she is not physically situated in those districts"); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 485-86 (E.D. Pa. 2005); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 117 F.R.D. 30, 31-33 (D.P.R. 1987).

Therefore, as in *Pogue* and *In re Neurontin Mkt.*, this Court has the authority to resolve a motion to compel relating to the subpoena *duces tecum* issued to Luis Cobo.

## CONCLUSION

For the foregoing reasons, Dey respectfully requests that the Court compel Luis Cobo and Ven-A-Care to produce all documents concerning Cobo Pharmacy responsive to the Subpoena, as narrowed by the document requests in Dey's counsel's September 8, 2008 letter, and the Document Requests to Ven-A-Care, and grant Dey such other, further, and different relief as the Court deems to be just and proper.

Dated: December 2, 2008

Respectfully Submitted,

/s/ Neil Merkl
Paul F. Doyle (BBO # 133460)
Sarah L. Reid (*pro hac vice*)
William A. Escobar (*pro hac vice*)
Neil Merkl (*pro hac vice*)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants*
*Dey, Inc., Dey L.P., Inc. and Dey, L.P.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on December 2, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Clifford Katz
Clifford Katz
