# EXHIBIT P

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456  **IMAGED**<br>Master File No. 01-CV-12257-PBS<br><br>Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al., Civil Action No. 05-11084-PBS | |

## DEFENDANTS DEY, INC., DEY L.P., INC., AND DEY, L.P.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO RELATOR VEN-A-CARE OF THE FLORIDA KEYS, INC.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Dey, Inc., Dey L.P., Inc. and Dey, L.P. (collectively "Dey") request Relator Ven-A-Care of the Florida Keys, Inc. produce the documents requested herein by making them available for inspection and copying at the offices of Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, or at such other place and in such manner as may be mutually agreed upon between counsel for the parties, within thirty (30) days from the date of service of these Requests.

## DEFINITIONS

1. "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

2. "AWP" refers to "Average Wholesale Price."

3. "Between," when used in regard to the transmittal of information, shall mean any communication by, to, from, among, and for any individual(s) or entity(ies) specified in a particular request.

NY01/CYRB/1259621.2

1

4. "CMS" means "Centers for Medicare and Medicaid Services," its predecessor agencies (including the United States Health Care Financing Administration) and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, including, but not limited to, letter, facsimile, electronic mail, voicemail, memorandum, telephone, or any other type of document.

6. "Complaint" means and refers to the Complaint filed on or around August 22, 2006 by which the United States of America intervened in certain portions in Civil Action No. 00-10698-MEL (severed to a new case number, 05-11084-PBS), pending in the United States District Court for the District of Massachusetts.

7. "Concern," "concerning," "relating to," or "relate to" means refer to, regard, concern, describe, explain, state, evidence, record, constitute, pertain to, reflect, comprise, contain, embody, mention, show, support, contradict, and discuss, whether directly or indirectly, as required by the context to bring within the scope of the requests in this request for production of documents any documents that might be deemed outside their scope by another construction.

8. "Congress" means the legislative branch of the U.S. Government, individual members of Congress, and any congressional committees or subcommittees, including but not limited to the Congressional Budget Office, Senate Finance Committee, the House Committee on Ways and Means, the House Committee on Energy and Commerce, the Subcommittee on Oversight and Investigations of the House Committee on Energy and Commerce, and all other branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

9. "Customers" has the meaning ascribed to it in paragraph 3 of the Complaint.

10. "Defendant" refers to Dey.

11. "Document" shall be used in a comprehensive sense as contemplated by the Federal Rules of Civil Procedure and shall mean all original written, recorded, or graphic matters whatsoever, and any and all non-identical copies thereof, including but not limited to advertisements, affidavits, agreements, analyses, applications, appointment books, bills, binders, books, books of account, brochures, calendars, charts, checks or other records of payment, communications, computer printouts, computer stores data, conferences, or other meetings, contracts, correspondence, diaries, electronic mail, evaluations, facsimiles, files, filings, folders, forms, interviews, invoices, jottings, letters, lists, manuals, memoranda, microfilm or other data compilations from which information can be derived, minutes, notations, notebooks, notes, opinions, pamphlets, papers, photocopies, photographs or other visual images, policies, recordings of telephone or other conversations, records, reports, resumes, schedules, scraps of paper, statements, studies, summaries, tangible things, tapes, telegraphs, telephone logs, telex

messages, transcripts, website postings, and work papers, which are in the possession of the Carrier as defined above. A draft or non-identical copy is a separate document within the meaning of this term.

12.  "DOJ" means the United States Department of Justice and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

13.  "EAC" or "Estimated Acquisition Cost" shall have the meaning set forth in 42 C.F.R. § 447.301.

14.  "Equivalent Drugs" means those drugs that contain the same active chemical compound or are considered to be therapeutically equivalent to the Subject Drugs.

15.  "FUL" means the Federal Upper Limit, the ceiling established by the U.S. Government for reimbursement of certain drugs dispensed to Medicaid beneficiaries. *See* 42 CFR § 447.332.

16.  "GAO" means General Accounting Office and all its employees, agents, attorneys, agencies, committees, or affiliates.

17.  "HHS" means the United States Department of Health and Human Services and all its employees, agents, attorneys, agencies, committees, or affiliates.

18.  "HHS-OIG" means the Office of Inspector General for HHS and all its employees, agents, attorneys, agencies, committees, or affiliates.

19.  "Identify" or "state"

   (a)  when used with reference to an individual person, means to state his full name, his position and business affiliation at the time referred to, his last known position and business affiliation, and his last known residence and business address;

   (b)  when used with reference to an entity, means to state the entity's full name, last known address(es), telephone number(s), and organizational form (*e.g.*, corporation, sole proprietorship, partnership, joint venture, etc.); and

   (c)  when used with reference to a document, means to state the nature of the document (*e.g.*, memorandum, letter, notes, etc.), its author(s), addressee(s), recipient(s), title, subject matter, date, present location, and custodian.

20.  "List Price" or "Direct Price" refers to prices so categorized and periodically published by a Publisher.

NY01/CYRB/1259621.2

21. "MAC" or "Maximum Allowable Cost" shall have the meaning set forth in 42 C.F.R. § 447.332.

22. "Manufacturer" means a company that manufactures pharmaceutical products, including, but not limited to, the drugs which are the subject of the Complaint.

23. "Medicaid" means and refers to the jointly-funded Federal-State health insurance program enacted in 1965 as an amendment to the Social Security Act to pay for the costs of certain medical services and care.

24. "Medicaid Intermediary" means and refers to any insurance company or other entity that has contracted with any State Medicaid Program to process claims for reimbursement of drugs, develop preferred drug lists, provide guidance on changes to reimbursement methodologies, or provide advice on cost savings, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

25. "Medicare" means and refers to the Federal program enacted in 1965 under Title XVIII of the Social Security Act to pay for the costs of certain medical services and care.

26. "Medicare Carrier" means and refers to any insurance company or other entity that has contracted with HCFA or CMS to process claims submitted under Part B of the Medicare program by any Provider, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

27. "MFCU" means individual state Medicaid Fraud Control Units, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

28. "MedPac" means Medicare Payment Advisory Commission and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

29. "NAMFCU" means National Association of Medicaid Fraud Control Units and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

30. "OMB" means the Office of Management and Budget and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

31. "OPA" means the Office of Pharmacy Affairs, the previous name of the PAB, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

32. "PAB" means the Pharmacy Affairs Branch, which administers the Public Health Service 340B Drug Discount Program, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

33. "Participant" and "Beneficiary" mean a person who is provided medical care or medical benefits through federal or state programs.

34. "Person" means any natural person or any business, legal, or governmental agency or association, a group of individuals acting in a collegial capacity (such as a committee, board of directors, or agency), a corporation, a partnership, a limited partnership, a limited liability partnership, a joint venture, a limited liability corporation, a government or governmental agency, and any other incorporated or unincorporated business, government or entity.

35. "Plaintiff" refers to the United States of America.

36. "Provider" or "Providers" means and refers to any and all persons or entities that render health care services, including but not limited to pharmacists, physicians, nurses, nurse practitioners, physicians' assistants, specialty pharmacy, nursing home personnel, laboratory technicians, x-ray and other medical equipment technicians, and other hospital or physician-office personnel.

37. "Publisher" or "Publishers" means any pharmaceutical price publishing service, including but not limited to each of Red Book, First DataBank, Blue Book, and Medi-Span, their predecessors and successors, and all employees, agents, consultants, accountants, or attorneys of any of the foregoing.

38. "PSSC" means Pharmacy Services Support Center, which provides assistance to the PAB in administering the Public Health Service 340B Drug Discount Program, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

39. "Reimbursement rate" or "Reimbursement Methodology" means the formula used to calculate the amount of payment designated by Medicare or Medicaid to reimburse healthcare providers for administering or dispensing pharmaceutical drug products to a beneficiary.

40. "Relator" refers to Ven-A-Care.

41. "Relevant Claim Period" shall refer to the period of December 31, 1992 to the present and any other time period for which Plaintiff is seeking damages or penalties, unless otherwise specified. *See* Complaint, ¶ 50.

42. "State Medicaid Program" means the state agency responsible for carrying out the Medicaid Program in a particular state and all branches, agencies, committees, or departments,

including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing

43. "Subject Drugs" means and refers to those drugs listed in paragraphs 29 of the Complaint.

44. "U.S. Government" means and refers to the all legislative and executive branches, agencies, departments, or committees of the United States Government, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing. U.S. Government includes but is not limited to CMS/HCFA, Congress, Department of Commerce, Department of Defense, DOJ, HHS, HHS-OIG, GAO, MedPac, OMB, OPA/PAB, PSSC, VA and any other agency, department, or committee of the U.S. Government that Plaintiff knows or believes has materials discoverable in this litigation.

45. "VA" means the United States Department of Veterans Affairs, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

46. "Ven-A-Care" means Ven-A-Care of the Florida Keys, Inc., a corporation organized under the laws of Florida, and all predecessor or successor corporations, and any of its past or present officials, officers, representatives, agents, assigns, attorneys, employees, divisions, departments, agencies, affiliates, subsidiaries, and all other persons or entities acting or purporting to act on its behalf or under its control.

47. "Ven-A-Care Qui Tam Complaints" refers to the Complaint filed under seal in the United States District Court for the Southern District of Florida, Case No. 95-1354-CIV (Gold), including all amended complaints, and the Complaint filed under seal in the United States District Court for the District of Massachusetts, Civil Action No. 00 CV 10698 MEL, including all amended complaints.

48. "WAC" refers to "Wholesale Acquisition Cost."

49. "Wholesaler" means any entity that purchases prescription drugs from any Manufacturer and resells such drugs to other persons.

50. "You" and "Your" means and refers to Ven-A-Care.

51. The terms "and" and "or" shall mean "and/or."

52. Any word written in the singular shall include the plural and vice versa.

53. In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

NY01/CYRB/1259621.2

## INSTRUCTIONS

1. Each paragraph below shall operate and be construed independently, and unless otherwise indicated, no paragraph limits the scope of any other paragraph.

2. Unless otherwise specified, the Requests below refer to the period from December 31, 1992 to the present. If it is necessary to produce Documents from a prior time to fully respond to a Request, then you are requested to do so.

3. If any document was but is no longer in your possession, custody, or control, or was known to You, but is no longer in existence, state, as to each document, its date, author(s), recipient(s) and what disposition was made of it or what became of it.

4. To the extent that you consider any of the following Requests objectionable, please respond to the remainder of the Request, and separately state the part of each Request to which you object and each ground for each objection.

5. If You find the meaning of any term in these document requests to be unclear, then You should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

6. Each request for documents seeks production of the document in its entirety, without abbreviation or redaction, including all attachments or other matters affixed thereto.

7. With respect to each document that is withheld from production for any reason, or any portion of any document that has been redacted for any reason in connection with the production of a document, provide a statement setting forth:

    (a)    its date;
    (b)    its title;
    (c)    its author;
    (d)    its addressee;
    (e)    the identify of each person who received and/or saw the original or any copy of such document
    (f)    the specific privilege under which it is withheld;
    (g)    its general subject matter;
    (h)    its present custodian; and
    (i)    a description of it that you contend is adequate to support your claim that it is privileged.

8. With respect to any conversation for which a privilege is being asserted, identify by stating the following:

(a) when and where the conversation occurred;
(b) the name, title and job or position of each person who present at or during the conversation whether or not such conversation was in person or by telephone;
(c) a brief description of the conversation's subject matter;
(d) the statute, rule or decision that is claimed to give rise to the privilege; and
(e) the name, title and job or position of all persons on whose behalf the privilege is asserted.

9. All documents are to be produced as they are kept in the usual course of business, their relative order in such files, and how such files were maintained. All electronic files should be produced where possible in electronic form, along with any software needed to access the information contained in the file and appropriate legends, keys, or other information needed to access and understand the data.

10. Pursuant to the Federal Rules of Civil Procedure, these Requests are continuing in nature so as to require, wherever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

## DOCUMENTS REQUESTED

1. The disclosure statement filed by Ven-A-Care pursuant to 31 U.S.C. § 3730(b)(2), and all Documents relating to the transmission or communication of that statement.

2. All documents sent to or received from Dey.

3. From any time period, all disclosure statements filed by Ven-A-Care in any state or federal qui tam action.

4. From any time period, all qui tam complaints or disclosure statements pursuant to 31 U.S.C. § 3730(b)(2) provided to the U.S. Government or any state government relating to reimbursement of drugs under Medicare Part B or Medicaid, and all Documents relating to the transmission or communication of that statement.

5. From any time period, all Communications between Ven-A-Care and the U.S. Government concerning the prices paid by Providers for drugs and/or payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

6. From any time period, all Communications between Ven-A-Care and any government or governmental entity regarding any subject relevant to the Complaint or any governmental investigation regarding drug pricing.

-8-

7. All recordings (video or audio), transcripts, interview memoranda, depositions, notes, or other record of Communication made in the course of any investigation regarding drug pricing.

8. To the extent not requested above, transcripts and recordings of all testimony given by Ven-A-Care or any of its employees, officers, directors, or other agents regarding drug pricing.

9. From any time period, all Communications relating to any interview, meeting, or conference involving Ven-A-Care relating to drug pricing or the reimbursement of drugs by Medicare Part B or Medicaid.

10. From any time period, all Documents or data concerning the acquisition costs of Providers for the Subject Drugs or the Equivalent Drugs.

11. From any time period, all Communications between Ven-A-Care and the U.S. Government concerning Ven-A-Care's efforts to persuade the U.S. Government to intervene in any drug pricing litigation.

12. From any time period, all Communications between Ven-A-Care and any State Medicaid Program, NAMFCU or any MFCU, or any state governmental agency, entity, employee, consultant, or attorney concerning the prices paid by Providers for drugs and/or payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

13. From any time period, all Communications between Ven-A-Care and any state government or agency concerning Ven-A-Care's efforts to persuade any state government or agency to intervene in any drug pricing litigation.

14. From any time period, all Communications between Ven-A-Care and any Medicare Carrier or Medicaid Intermediary concerning the prices paid by Providers for drugs and/or payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

15. From any time period, all Communications between Ven-A-Care and any Publisher concerning the prices paid by Providers for drugs and/or the payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

16. From any time period, all Communications between Ven-A-Care and any Provider concerning the prices paid by Providers for drugs and/or the payment of drugs under Medicare Part B or Medicaid, including all presentations, questionnaires, or exchanges of data.

17.    All Documents contained at any time on any privilege log submitted by Ven-A-Care in any litigation relating to drug reimbursement.

18.    All facsimile cover sheets, facsimile confirmations, enclosures, attachments, and any other Documents associated with any Documents contained at any time on any privilege log submitted by Ven-A-Care in any litigation concerning drug reimbursement.

19.    All Documents concerning:

(a)    the price Ven-A-Care paid for the Subject Drugs;
(b)    all claims for payment submitted by Ven-A-Care to Medicare Part B or Medicaid for any prescription drug, including, but not limited to, the Subject Drugs;
(c)    all payments made to Ven-A-Care by Medicare Part B or Medicaid;
(d)    any repayments made by Ven-A-Care to Medicare Part B or Medicaid; and
(e)    all contracts or agreements between Dey and Ven-A-Care.

20.    Documents sufficient to show Ven-A-Care costs for providing prescription drugs to Medicare or Medicaid beneficiaries, including the extent to which payment for drugs was used to offset any costs.

21.    All pleadings or other Documents filed in *United States ex rel. Ven-A-Care vs. Abbott Labs., et al.*, Civil Action No.11337, United States District Court for the District of Massachusetts.

22.    To the extent not requested above, all written responses prepared by Ven-A-Care in response to discovery requests served in *United States ex rel. Ven-A-Care vs. Abbott Labs., et al.*, Civil Action No.11337, United States District Court for the District of Massachusetts, including but not limited to, responses to interrogatories and responses to requests for productions.

23.    From any time period, all Documents concerning any effort by Ven-A-Care to influence laws or regulations concerning payment for drugs under Medicare Part B or Medicaid.

24.    For the time period January 1, 1989 to the end of the Relevant Claim Period, all Documents evidencing the steps taken by Ven-A-Care to insure that discoverable information with respect to litigation concerning payment for drugs by Medicare Part B or Medicaid has not been destroyed or otherwise made unavailable.

25.    From January 1, 1965 to the end of the Relevant Claim Period, all Documents that mention, refer to, or discuss the relationship between AWP, WAC, List Price, Direct Price or any other figure and (i) the actual or average acquisition cost of Providers and/or (ii) the amount paid by Medicare Part B or Medicaid for drugs.

-10-

26. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning any audit, report, study, analysis, or survey (whether completed or not) of drug prices.

27. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning any audit, report, study, analysis, or survey (whether completed or not) of actual or average acquisition prices by Providers of drugs and the amounts paid under Medicare Part B or Medicaid for drugs.

28. To the extent not requested above, from January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning the meaning and calculation of AWP, WAC, EAC, List Price or Direct Price and/or the decision of whether to use AWP, WAC, EAC, List Price or Direct Price in calculating payment under Medicare Part B or Medicaid.

29. All Documents concerning the meaning of AMP; the calculation of AMP; the relationship of AMP to AWP, WAC, EAC, List Price or Direct Price; and/or the decision of whether to use AMP in calculating payment under Medicare Part B or Medicaid.

30. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning whether the U.S. Government, any state government, any Medicare Carrier or Medicaid Intermediary, governmental payor, or private insurer knew that Manufacturers marketed the "spread" (as that term is used in paragraph 3 of the Complaint) and/or the difference between payment under Medicare Part B or Medicaid and actual or average acquisition costs of Providers.

31. From January 1, 1965 to the end of the Relevant Claim Period, all Documents concerning the "spread" (as that term is used in paragraph 3 of the Complaint) and/or the difference between payment under Medicare Part B or Medicaid and actual or average acquisition costs of Providers.

32. All Documents concerning any investigation, lawsuit, judicial proceeding, or settlement regarding allegedly false claims filed by any Provider related to payment for drugs by Medicare Part B or Medicaid, including but not limited to all governmental audit information regarding the allegedly false claims.

33. All Documents identified in any initial disclosure provided by Ven-A-Care under FRCP 26(a)(1).

34. All Documents that support, contradict, or otherwise relate to your allegations in the Complaint.

35. In paragraph 3 of the Complaint, Plaintiff states that "Dey reported false, fraudulent and inflated drug prices for certain drugs (listed in ¶¶ 29 below) to several price

-11-

reporting compendia that the Medicare and Medicaid programs relied upon to set reimbursement rates for Dey customers." Produce all Documents that support, concern, or refute your claim.

36. In paragraph 3 of the Complaint, Plaintiff states that Dey "marketed to existing and potential customers the government-funded 'spread' between the inflated reimbursement amounts and the actual acquisition costs of the drugs to boost Dey's sales and profits." Produce all Documents that support, concern, or refute your claim.

37. In paragraph 6 of the Complaint, Plaintiff states that "Dey also routinely made false statements directly to state Medicaid programs by reporting these same fraudulently inflated prices to the states." Produce all Documents that support, concern, or refute your claim.

38. In paragraph 35 of the Complaint, Plaintiff states: "The information contained in the published pricing compendia was used by most third party payor insurance companies, including the Medicare program (through December 31, 2004) and Medicaid programs, in determining reimbursement rates for prescription drugs." Produce all Documents relating to instances where third party payor insurance companies did not use information contained in the published pricing compendia in determining reimbursement rates for prescription drugs.

39. In paragraph 35 of the Complaint, Plaintiff states that "Dey documents show that Dey knew of the impact of its price representations on government reimbursement for claims submitted by its Customers for Dey's drugs." Produce all Documents that support, concern, or refute your claim.

40. As to the Subject Drugs and Equivalent Drugs, produce all Documents relating to the use of MAC or the "providers' usual and customary charges" in determining the amount of reimbursement under Medicaid. *See* paragraph 26 of the Complaint.

41. For the Relevant Claim Period, all Documents concerning the actual acquisition costs that Dey's Customers paid for the Subject Drugs.

42. In paragraph 40 of the Complaint, Plaintiff states that "AWP is used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then administers it to a patient." Produce all Documents that support, concern, or refute your claim.

43. In paragraph 40 of the Complaint, Plaintiff states that "WAC is used to refer to the price at which a pharmaceutical firm typically sells a drug to wholesalers who would then resell it to a retail customer." Produce all Documents that support, concern, or refute your claim.

44. In paragraph 43 of the Complaint, Plaintiff states that "some State Medicaid programs also received price representations directly from manufacturers, and relied upon these representations to confirm the accuracy of the figures they use to determine state reimbursement amounts." Produce all Documents that support, concern, or refute your claim.

45. In paragraph 45 of the Complaint, Plaintiff states: "In general, Medicare relied on median AWPs to set reimbursement rates." Produce all Documents relating to instances where Medicare did not rely on median AWPs to set reimbursement rates.

46. In paragraph 50 of the Complaint, Plaintiff states: "Dey knowingly made false or fraudulent representations about drug prices and costs to the *Red Book*, First DataBank, and Medi-Span, while knowing that Medicare and Medicaid would use this information in paying or approving claims for such drugs. Dey further made these representations in order to use the 'spread' between cost and reimbursement to induce purchasers to buy Dey's drugs." Produce all Documents that support, concern, or refute your claim.

47. In paragraph 51 of the Complaint, Plaintiff states: "To inflate the spread , and thereby induce purchases of its drugs, Dey purposely reported to *Red Book*, First DataBank, and Medi-Span (and in some instances, the states) inflated AWPs and WACs for its drugs, while simultaneously arranging for its retail customers to purchase these drugs through wholesalers at far lower prices." Produce all Documents that support, concern, or refute your claim.

48. In paragraph 52 of the Complaint, Plaintiff states: "When Dey prepared to launch its albuterol, cromolyn sodium, and ipratropium bromide products in 1992, 1993, and 1996, respectively, Dey established and reported its AWP with the specific purpose of creating an attractive spread between the AWP and the actual price so as to create an inducement- at the expense of the Medicare and Medicaid programs-for providers to purchase the Dey product." Produce all Documents that support, concern, or refute your claim.

49. In paragraph 55 of the Complaint, Plaintiff states "Dey's reported AWPs increasingly bore little or no relationship to the actual prices being paid by Dey's customers for the specified drugs." Produce all Documents concerning the amounts that Customers actually paid for the Subject Drugs.

50. In paragraph 55 of the Complaint, Plaintiff states "the spread on Dey's drugs were large and exceed 500% in some instances." Produce all Documents that support, concern, or refute your claim.

51. In paragraph 56 of the Complaint, Plaintiff states "the AWP per unit for Dey's most popular albuterol sulfate solution stayed constant at $30.25 per unit from 1994 through 2002. Meanwhile, the actual sales price to customers such as Ven-A-Care steadily dropped, reaching a low of $3.70 in 2002." Produce all Documents that support, concern, or refute your claim, including Documents containing the actual sales prices customers paid for Dey's drugs.

52. In paragraph 56 of the Complaint, Plaintiff states "the AWP per unit for Dey's ipratropium inhalation solution (size 30s) stayed constant at $52.80 per unit from 1997 through 2002, while sales price to customer such as Ven-A-Care decreased significantly, declining to $8.25 in 2002." Produce all Documents that support, concern, or refute your claim, including Documents containing the actual sales prices customers paid for Dey's drugs.

-13-

53. In paragraph 57 of the Complaint, Plaintiff states "Dey trained its sales force on the significance of Medicare and Medicaid reimbursement and the importance of 'spread.'" Produce all Documents that support, concern, or refute your claim.

54. In paragraph 58 of the Complaint, Plaintiff states "Dey also reported falsely inflated WAC prices to the *Red Book*, First DataBank, and Medi-Span in order to create a spread in states that relied on WAC as a basis for Medicaid reimbursement." Produce all Documents that support, concern, or refute your claim.

55. In paragraph 60 of the Complaint, Plaintiff states "Throughout the relevant time period, despite steadily reducing the prices it charged its customers, Dey did not update its AWP pricing information to any of the price reporting services." Produce all Documents that support, concern, or refute your claim.

56. In paragraph 60 of the Complaint, Plaintiff states "Over time, Dey's AWPs bore little or no relation to the price actually charged to any customer." Produce all Documents that support, concern, or refute your claim.

57. In paragraph 61 of the Complaint, Plaintiff states "As a result of Dey's conduct, pharmacists and other providers submitted thousands of claims to the Medicare and Medicaid programs and received millions of dollars in excessive reimbursement." Produce all Documents that support, concern, or refute your claim.

58. All Documents concerning whether use of a reimbursement formula based on AWP or WAC can or does serve as a means of subsidizing, or offsetting perceived or asserted under-reimbursement for drug dispensing or other medical services, procedures, or equipment.

59. All Documents concerning the alleged losses, damages, or overpayments purportedly resulting from Dey's alleged conduct.

60. All documents concerning the testimony of any Ven-A-Care director, officer, employee or any other agent before Congress or any other governmental body, including, but not limited to, documents provided to Congress in relation to the said testimony and documents reviewed in preparation for said testimony.

61. All documents concerning the written statement of any Ven-A-Care director, officer, employee, or any other agent before Congress or any other governmental body, including, but not limited to, documents provided to Congress in relation to the said statement and documents reviewed in preparation for said statement.

62. To the extent not listed above, all documents produced by Ven-A-Care to Congress.

NY01/CYRB/1259621.2

-15-

63.  All documents that describe or identify the location of documents within Ven-A-Care's possession, including, but not limited to, indices, guides, production logs and/or control logs.

64.  Documents sufficient to identify any individuals present at meetings between Ven-A-Care and any governmental entity, including, but not limited to HCFA, CMS, the DOJ, NAMFCU, HHS, HHS-OIG, and/or any state Medicaid agency.

65.  To the extent not requested above, all Documents provided by Ven-A-Care to any government or governmental entity concerning the prices paid by Providers for drugs and/or payment of drugs under Medicare Part B or Medicaid, including but not limited to documents provided to HCFA, CMS, the DOJ, NAMFCU, HHS, HHS-OIG, and/or any state Medicaid agency.

Dated: January 18, 2008                    Respectfully submitted,

*Sarah Reid*

Sarah Reid
Neil Merkl
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Tel.: (212) 808-7800
Fax: (212) 808-7897

*Counsel for Defendant Dey, Inc., Dey L.P., Inc. and Dey, L.P.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on January 25, 2008, a copy to LexisNexis File & Serve for posting and notification to all parties.

_____
Seunghwan Kim