UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY<br>AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR COURT
REVIEW OF LEAD COUNSEL'S ALLOCATION OF GSK FEE
AWARD, FOR COURT MONITORING OF CLASS COUNSEL
TIME AND EXPENSE, AND FOR COURT ALLOCATION
OF ALL FUTURE FEE AWARDS TO CLASS COUNSEL**

It is undisputed that the GSK fee was insufficient to pay the entire lodestar in this case, and that as a result, Class Counsel took a hit on their collective lodestar. In their opposition memorandum, Lead Counsel exclaim that "there is no good reason why the pain shouldn't be shared across <u>all</u> Class Counsel." Opp. Memo. at 25 (emphasis in original). But, Lead Counsel allocated a hugely disproportionate share of the GSK fee to themselves, at the expense of other Class Counsel. Accordingly, this Court should review and adjust Lead Counsel's allocation so that each Class Counsel firm receives its *pro rata* share of the GSK fee, based on accurate lodestar and expense figures that reflect compensable effort on behalf of the class.

*1.     Standard of review*.  Lead Counsel's allocation was based not on lodestar, but primarily on their own subjective views about who contributed what to this case. *See* Opp. Memo. at 23. In a case with a history such as this one, Lead Counsel's subjective approach thwarted, rather than facilitated, a fair, honest, and impartial evaluation of each firm's contributions to this case.

Relying heavily on a line of cases giving deference to lead counsel to allocate fees, Lead Counsel contend that their allocation should be afforded "significant discretion." Opp. Memo. at 10-15. But no deference should be given in a case with a history of "downright hostility" among plaintiffs' counsel. *See Maisonette v. Jones Intercable*, 2004 WL 2271904 at *5 (Md. Cir. Ct. Aug. 30, 2004) (distinguishing *In re Indigo Securities Litigation*, *In re Copley Pharmaceutical*, and other cases cited by Lead Counsel). In such a case, Lead Counsel's ability to impartially and fairly allocate fees is doubtful, and a Special Master or other objective third party is required to ensure "that the process be logical, transparent, and unimpeachable." *Id.* at **5-6.

Unfortunately, this case has a history of not only hostility, but open warfare among counsel. As this Court knows, Lead Counsel's dispute with Donald Haviland dragged on for months, with each side making increasingly harsh accusations about the other. Emotions ran so high that Steve Berman threatened to sue Mr. Williams for having contact with a reporter about the dispute. And this was not the only disruption among Lead Counsel and other firms in this case. Indeed, two former co-Lead Counsel firms dropped out of this case altogether, with one of those firms pointedly attributing its withdrawal to "several divergences of opinion" with Lead Counsel over "case strategy and management issues." *See* Supplemental Declaration of Kent M. Williams in Support of Motion for Court Review of Lead Counsel's Allocation of GSK Fee Award, for Court Monitoring of Class Counsel Time and Expense, and for Court Allocation of All Future Fee Awards to Class Counsel ("Supp. Williams Decl.") ¶¶ 6-7 at 3-4.

In their response, Lead Counsel deny any retaliation against Mr. Williams in allocating his firm's share of the fee. Yet, Lead Counsel repeatedly refer to *Mr. Haviland*

2

as somehow relevant to their allocation to *Mr. Williams.  See* Supp. Williams Decl. ¶¶ 8, at 4-5.  Citing Mr. Haviland's name no fewer than twenty-two times in their opposition papers, Lead Counsel find it significant that, among other things, Mr. Williams sometimes worked "in conjunction" with Mr. Haviland, that Mr. Williams drafted one of Mr. Haviland's Declarations in this case, and that they both used the same Chicago temporary agency to staff a document review.  Lead Counsel even appear to blame Mr. Williams for Mr. Haviland's purported failure to take certain depositions in the case.  *Id*.

Lead Counsel's almost compulsive reference to Mr. Haviland, a person with whom Lead Counsel have a longstanding adversarial relationship, "does not inspire confidence in Lead Counsel or any human being's ability to be impartial."  *See Maisonette,* 2004 WL 2271904 at *5. From their response, it is apparent that Lead Counsel's hostility toward Mr. Haviland influenced their determination of Mr. Williams' allocation.  As such, Lead Counsel's subjective allocation deserves no deference at all.

   ***2.***  ***Unauthorized Allocations to Non-Class Counsel.***  As part of their allocation, Lead Counsel made substantial payments to non-Class Counsel, without authority. The Court's fee approval order only authorized payments to "Co-Lead Settlement Counsel" and "other Plaintiffs Class Counsel."  Supp. Williams Decl. ¶ 28, at 12.  Yet, Lead Counsel pledged 15% of *all* fees awarded in this case, including the GSK fee, to pay millions of dollars to ISHP Group Counsel, none of whom are "Class Counsel" as defined in the GSK Settlement Agreement. *Id*.  And, while the GSK Settlement Agreement provided for a fee to be negotiated between Lead Counsel and ISHP Group Counsel, the Court was not timely apprised of the agreement as required, and the Court did not authorize a fee-sharing agreement with non-Class Counsel that

3

broadly covered all other settlements in this case. Thus, Lead Counsel did not even follow the Court's general directives in allocating the GSK fee.

Nor can Lead Counsel claim the payments to ISHP Group Counsel and objector counsel as a reimbursable "expense." The Final Approval Order states that the GSK fee award is "meant to compensate Class Counsel for the litigation expenses *as requested by Class Counsel in the fee petition*." *See* Fee Approval Order (attached to Supp. Williams Decl. as Ex. 18) ¶ 14(k) at 9 (emphasis added). The fee petition, which cut off lodestar and expenses as of August 10, 2006, could not possibly have claimed reimbursement for payments made pursuant to the fee agreement between Lead Counsel and ISHP Group Counsel, which was purportedly not executed until August 11, 2006. *See id*. ¶ 14(f) at 8; Berman Decl. Ex. 3 at 1.

To make matters worse, Lead Counsel funded these unauthorized payments by deducting them from everyone but themselves. Counting the total amount of fees allocated to all counsel (including ISHP Group Counsel and objector counsel), Lead Counsel received more than their entire *pro rata* share of the collective lodestar in this case. *See* Supp. Williams Decl. ¶ 2, at 1-2. How did Lead Counsel pay 15% of the GSK fee to ISHP Group Counsel, while keeping their own *pro rata* share intact? By diverting nearly half of Tier II's *pro rata* share of lodestar, and over two thirds of the collective Tier III *pro rata* share of lodestar, to ISHP Group Counsel and objector counsel. *See* Supp. Williams Decl. ¶ 2 at 2. In other words, Lead Counsel essentially funded the $3 million payment to ISHP Group Counsel and the $100,000 payment to objector counsel out of the *pro rata* shares of everyone except themselves.

It is hardly "fair and reasonable" for Lead Counsel to say that all firms should "take hits for the setbacks" in this case, while refusing to "take the hit" for their unauthorized payments to non-Class Counsel. *See* Opp. Memo at 25-26. This Court should review the propriety of Lead Counsel's payments to non-Class Counsel, and order Lead Counsel to repay Class Counsel if the Court finds the payments improper. And, to the extent the Court upholds any of the payments, it should at least order that all Class Counsel (including Lead Counsel) bear the burden of these payments on a *pro rata* basis, according to lodestar.

    *3.*    *Accuracy of loadstar and expense figures.* Lead Counsel assert that no audit or other inquiry into the accuracy of each firm's lodestar or expense figures is necessary, because lodestar was only a "factor" in Lead Counsel's subjective allocation of the GSK fee. Opp. Memo. at 22-23. Accurate lodestar and expense figures serve as an objective benchmark, should the Court find Lead Counsel's allocation unduly subjective. But even if not, Lead Counsel have advocated to this Court the use of lodestar as a cross-check on the same sort of multi-factored approach they adopted for the allocation. *See* Class Plaintiffs' Memorandum of Law in Support of Class Counsel's Petition for Attorney's Fees, Reimbursement of Expenses, and Compensation to the Name [sic] Plaintiffs (Dkt. No. 4398), at 27. It should also be noted that, in viewing the amount of expenses advanced by each Tier as "terribly important" and which "alone supports the divergence in the fees awarded to each," Lead Counsel relied heavily upon the accuracy of reported expenses figures. Opp. Memo. at 25. Lead Counsel also relied upon the accuracy of each firm's reported lodestar in allocating each firm's share of the

funds allocated to that firm's Tier.  Therefore, the Court should ensure that the lodestar and expense figures used by Lead Counsel were reasonable and accurate.

Lead Counsel accuse the Williams Law Firm of "speculation" in questioning the accuracy and reasonableness of the lodestar and expense figures Lead Counsel used.  Yet, in attempting to defend the accuracy of these figures, Lead Counsel submit Declarations demonstrating the inaccuracy of the figures. For example, the expense and lodestar figures Lead Counsel used for the Williams Law Firm differ materially from Lead Counsel's previous sworn submissions to this Court.  *See* Supp. Williams Decl. ¶¶ 13, 15 at 6-7.  Lead Counsel also appear to have made material mistakes regarding other firms' allocations.  *Id*. ¶¶ 14-16, at 7-8. And, Lead Counsel do not even address, much less explain, the $1.4 million increase in the lodestar of a former co-lead firm (with no increase in hours), an issue raised in Movant's opening memorandum.  *See* Memorandum in Support of Motion for Court Review of Lead Counsel's Allocation of GSK Fee Award, for Court Monitoring of Class Counsel Time and Expense, and for Court Allocation of All Future Fee Awards to Class Counsel ("Opening Memo.") at 9.

It is astonishing that Lead Counsel, when challenged on the reasonableness and accuracy of the lodestar and expense figures they used, would file an accounting with numerous material mistakes—and continue to insist that no audit or other substantive review of their allocation is necessary. With over $80 million in collective time and expense at issue, Lead Counsel's stonewalling must stop. The Court should have a disinterested third party conduct an accounting of the reasonableness and accuracy of the lodestar and expense figures relied upon by Lead Counsel.

**4.     *Non-GSK time and expense*.**     At page 20 of their opposition memorandum, Lead Counsel insist that all work in this case should be counted equally, because distinguishing GSK-specific work from non-GSK work "simply cannot be done on a global basis." Opp. Memo. at 20. Then, on the very next page, Lead Counsel contradict themselves by going through the Williams Law Firm's time records and distinguishing GSK-specific work from non-GSK-specific work. *See* Opp. Memo. at 21. Unless other Class Counsel failed to submit time records with sufficient detail for such a review (which would further undermine Lead Counsel's assertions about the reasonableness and accuracy of the lodestar and expense figures they used), Lead Counsel obviously exaggerate the difficulty of the task.

Lead Counsel also contend that non-GSK work should be counted if it indirectly benefited GSK class members. Opp. Memo. at 19. The Williams Law Firm agrees with Lead Counsel that non-GSK-specific work should be counted (albeit on a discounted basis) if such work addressed common issues that affected all class members (including GSK class members) equally. *See* Opening Memo. at 18. But non-GSK work that benefited other class members exclusively, or that applied exclusively to other defendants against whom there was a separate recovery (or no recovery at all), should not be counted against the GSK fee. *See* Fee Approval Order ¶ 14 (a) at 7 (awarding the fee in part because the settlement "confers a substantial benefit" on GSK class members). This is particularly so with respect to non-GSK work that is to be compensated separately by a particular defendant (e.g. trial work with respect to AstraZeneca).

Lead Counsel also rely upon the theoretical possibility that the GSK settlement could have somehow "unraveled" as their justification for counting non-GSK lodestar

7

and expense incurred after August 10, 2006.[1]  *See* Opp. Memo. at 16.  But the settlement did not "unravel," and GSK class members did not benefit from the expenditure of additional time and expense to prosecute other defendants after August 10, 2006. Moreover, as discussed above, the Final Approval Order states that the GSK fee award was "meant to compensate Class Counsel for the litigation expenses *as requested by Class Counsel in the fee petition*."  *See* Fee Approval Order (attached to Supp. Williams Decl. as Ex. 18) ¶ 14(k) at 9 (emphasis added).  The fee petition cut off lodestar and expenses as of August 10, 2006.  *See id.* ¶ 14(f) at 8.  Thus, allocating part of the GSK fee to pay for non-GSK time and expense incurred after August 10, 2006 was inconsistent with the terms of the Final Approval Order.

   5.   ***Role of the Williams Law Firm.***  Lead Counsel go to great lengths to minimize the contributions the Williams Law Firm made in this case.  Unfortunately, Lead Counsel resort to making material misrepresentations and omissions in characterizing the work performed by the Williams Law Firm.  Among other things, Lead Counsel falsely accuse Mr. Williams of breaching commitments he was never asked to make (Supp. Williams Decl. ¶¶ 18-20 at 8-10); fault Mr. Williams for undertaking certain tasks assigned to him by Lead Counsel (*id.* ¶ 8 at 5 & n.4), and ignore important work that Mr. Williams performed in this case (*id.* ¶¶ 34-35 at 15-16).  Lead Counsel wrongly imply that Mr. Williams made a large "multiplier" on contract attorneys, when if anyone is making money on contract attorneys, it is Lead Counsel, not the Williams Law Firm. *Id.* ¶ 7 at 12.  Lead Counsel also ignore the fact that, at Lead Counsel's request, the Williams Law Firm continued to contribute time and capital to this case long after most

---

[1] Contrary to Lead Counsel's statements, the Williams Law Firm does not challenge properly-incurred GSK-specific lodestar after August 10, 2006.  *See* Opp. Brief at 16-19.

of the other non-Lead firms stopped doing so. And, Lead Counsel ignore the fact that this continuing contribution was necessarily made at the expense of other opportunities, since Mr. Williams is a solo practitioner. *See* Opening Memo. at 5-6. These errors and omissions are further evidence that Lead Counsel were wrong to rely primarily on their own subjective views about the relative contributions by Class Counsel, rather than accurate lodestar and expense figures, in allocating the GSK fee.

In defense of allocating themselves a disproportionate share of the fee, Lead Counsel submit a "straw man" sort of argument, by pointing out that they and other firms did more work in this case than the Williams Law Firm. *See* Opp. Memo at 28. This sort of analysis would be relevant only if the Williams Law Firm was seeking a fee as large as those other firms. Instead, the Williams Law Firm is only seeking its *pro rata* share of the GSK fee, as reflected by the expense and lodestar it reported to Lead Counsel, after a thorough review and accounting of the expense and lodestar submissions by Class Counsel in this case.

Over and over again, Lead Counsel cite their "leadership" of the case as a reason for paying themselves an even greater share of the GSK fee than their already massive lodestar reflects. But, for all their bluster about the role they played, Lead Counsel still have not explained why their own lodestar (the legitimacy of which they vehemently defend) does not accurately reflect their own role, and why they should receive any additional enhancement at the expense of the other firms in this case. If Lead Counsel's management of this case justifies their *pro rata* share of the GSK fee, why shouldn't they "share the pain" and be held responsible for their *pro rata* share of the shortfall, along

9

with all of the other Class Counsel firms in the case? The Williams Law Firm contends that they should, and that the allocation should be adjusted accordingly.

## CONCLUSION

Based on the foregoing, on all of the record submissions (including the Supplemental Declaration of Kent M. Williams in Support of Motion for Court Review of Lead Counsel's Allocation of GSK Fee Award, for Court Monitoring of Class Counsel Time and Expense, and for Court Allocation of All Future Fee Awards to Class Counsel, and exhibits thereto) and on any and all evidence presented at the hearing on this matter, the Williams Law Firm respectfully requests that its motion be granted in its entirety.

Dated:  December 2, 2008           /s/ Kent M. Williams
                                    Kent M. Williams
                                    WILLIAMS LAW FIRM
                                    1632 Homestead Trail
                                    Long Lake, MN  55356
                                    (763) 473-0314

                                    ONE OF THE CLASS COUNSEL FOR
                                    PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR COURT REVIEW OF LEAD COUNSEL'S ALLOCATION OF GSK FEE AWARD, FOR COURT MONITORING OF CLASS COUNSEL TIME AND EXPENSE, AND FOR COURT ALLOCATION OF ALL FUTURE FEE AWARDS TO CLASS COUNSEL** to be served on all counsel of record via electronic service to be filed with the Clerk of this Court and served electronically on all registered parties via the Court's CM/ECF system.

Dated:  December 2, 2008           /s/ Kent M. Williams
                                    Kent M. Williams, Esq.