UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ) ) | Hon. Patti Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.* CIVIL ACTION NO. 06-11337-PBS ) ) ) ) ) | Magistrate Marianne Bowler |

## DECLARATION OF HERB B. KUHN

I, Herb B. Kuhn, declare as follows:

1. I am the Deputy Administrator of the Centers for Medicare & Medicaid Services ("CMS"), which is a component of the Department of Health and Human Services ("HHS" or the "agency"). I have been with CMS since March 2004. I have been the Deputy Administrator since 2007. Since April 11th, 2008, I am also serving as the Acting Director of the Center for Medicaid and State Operations. I was the Director of the Center for Medicare Management from March 2004 to 2007. Prior to that, I served as the Corporate Vice President for Advocacy at Premier, Inc., a hospital performance alliance and Vice President for federal relations for the American Hospital Association.

2. As the Deputy Administrator of CMS, I share overall responsibility for the administration of all federal health care financing programs under Titles XI, XVIII, XIX, and XXI of the Social Security Act, including authority over agency records. Title XIX is the Medicaid program. The Secretary of HHS has delegated to the CMS Administrator his authority under 42 U.S.C. § 1306 to

-1-

disclose to the public information pertinent to the mission of CMS, as well as the authority of the Secretary under the Medicaid statute. 49 Fed. Reg. 35,248 (Sept. 6, 1984), as amended at 66 Fed. Reg. 35,437 (July 5, 2001)

3. I am informed that documents in the possession of CMS and the agency have been requested in the course of the above-captioned litigation. These documents were sought, first, by third-party subpoenas served in the above-captioned MDL proceeding in 2003 and, are also now the subject of discovery requests served upon the United States pursuant to Fed. R. Civ. Proc. 34 in a case or cases in which the United States is a party.

4. Generally, this litigation concerns certain drugs paid under Part B Medicare. In particular, the use of average wholesale price (AWP) as a component of CMS' drug pricing methodology for Part B Medicaid and in the Medicaid state plans' reimbursement methodology is an issue in the litigation. The documents at issue sets forth the internal discussions and analysis which led the promulgation of proposed and final rules concerning Medicare and Medicaid drug pricing. Final agency positions resulting from those discussions are evidenced by the statutory and regulatory provisions enacted which concerning drug pricing. In some cases, the documents are draft options papers detailing the problems surrounding the use of AWP and exploring alternative drug pricing methodologies. As part of its administration of the Medicare and Medicaid programs, the agency necessarily considered and analyzed issues that came up regarding the payment methodology for the drugs at issue. Such discussions include those weighing the pros and cons of implementing new reimbursement methodologies, deliberations concerning how to appropriately respond to provider and congressional inquiries, and internal debates pertinent to reimbursement issues. Final agency positions resulting from those discussions are evidenced by Congressional testimony and formal agency reports

to Congress, letters to outside entities, agency publications, and Federal Register notices.

### Assertion of the Deliberative Process Privilege

5. I hereby assert a formal claim of the deliberative process privilege over the following documents:

a.. Draft regulations: Two documents which are draft versions of preamble language, of the revisions of the Physician fee Schedules from 1996 and 1998. (See Exhibits 1A and 1B). This assertion is based on my personal review of these documents. My statements in this declaration also are based upon information personally known to me or conveyed to me by agency personnel who have reviewed the document for which the privilege is being asserted.

b. Notes: A note prepared by Pete Rodler, (a Program Analyst in the office that was the precursor to the Center for Medicaid and State Operations, Pharmacy Team) dated August 11, 1986 concerning the [Medicaid] Drug Reimbursement Reform Regulations. The note discusses policies which were deleted from the final rules. (See Exhibit 1C). A note titled "AWP Rule Payment Impact" dated July 25, 2003. The note pre-dates the publication of the proposed rule which was on August 20, 2003. Due to the passage of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, the proposed rule was never finalized. The note includes a brief analysis of AWP as a basis for drug payment and discusses both payment of the drug and payment for the administration services. (See Exhibit 1D). My statements in this declaration also are based upon information personally known to me or conveyed to me by agency personnel who have reviewed the document for which the privilege is being asserted.

c. Options papers and proposals: An options paper titled "Medicare AWP Drug Pricing." The paper discusses the DOJ drug prices, and provides options and recommendations for

-3-

certain issues that surround those prices. (See Exhibit 1E). Draft options paper titled "Pharmacy Team Collaboration with CMM (Center for Medicare Management) to Improve Drug Pricing Data." The paper contains a discussion of compendia pricing. Attached to the paper are notes from an agency conference call and from a call with the OIG. (See Exhibit 1F). Draft options paper titled "Should the Survey Findings Provided to States to Determine their EAC be used to Document their Best Estimate." The paper discusses issues surrounding the states' determination of best estimate as it is used to determine estimated acquisition cost (EAC). (See Exhibit 1G). An options paper prepared for the Administrator titled "Medicare Average Wholesale Price (AWP) for Drug Pricing." (This appears to be a final copy of the options paper titled "Medicare AWP Drug Pricing.) The paper is not signed by the Administrator, nor are the recommended options approved. (See Exhibit 1H). A draft proposal to "Pay for Drugs Based on Relative Value Units." This paper discusses the AWP and relative value unit methodologies for drug pricing. (See Exhibit 1I). A draft proposal titled "Alternative Payment ideas for Currently Covered Medicare Drugs." This paper list and discusses all of the drug pricing methodologies which CMS viewed as alternatives to AWP. (See Exhibit 1J).

      d. Briefing Materials for the Administrator: A paper titled "Proposed Issues for the Physician Fee Schedule 1996 Policy NPRM" dated February 20, 1996. The paper contains a section discussing the EAC basis for drug pricing which is almost identical to the proposal titled "Medicare Program Payment for Drugs." (See Exhibit 1K).

      e. Other: A document concerning a national DMERC inherent reasonableness project. The document discussed the methodology used in the project and which procedure codes were examined. It also details questions about the project and draft responses. (See Exhibit 1L).

      6.     In the paragraph below, I specify why the information for which I am asserting the

-4-

deliberative process privilege properly falls within the scope of the privilege. I have determined that the documents are pre-decisional and deliberative and should be withheld from full disclosure in the public interest.

7. The documents are internal CMS notes, memoranda, options papers, proposals and briefing papers reflecting deliberations concerning HHS policy decisions or potential HHS actions. The documents are not final agency actions. The documents that I and my staff have reviewed and considered reflects the type of exchanges that occur within CMS when establishing, amending, and fine-tuning the policies and procedures required to effectively and efficiently administer both the Medicare and Medicaid programs. I also believe that agency personnel, when they discuss matters related to improvement of the policies and procedures which are in place, reasonably expect that the substance of their discussions will be kept confidential in order to ensure a free flow of candid advice and analysis.

8. The release of documents which contain statements or opinions by personnel which were then rejected or revised during later discussions and deliberations among agency decision-makers could disrupt and even harm the agency's mission from the dissemination of inaccurate and incomplete information. The overarching purpose of all reviews, considerations, and deliberations undertaken by the agency at every level is to ensure that the agency issue final statements regarding its policies and decisions and that they are in accordance with controlling statutes, regulations, and objectives. Many of the employees who participated in the discussions and analyses remain with the agency. Allowing the release of documents which they developed for the purpose of examining and improving on the agencies practices could curtail their, and others, future deliberations on other issues. Further, the development of alternatives and options to policies is not the exclusive realm of CMS senior

-5-

managers. All levels of staff may participate in developing policy. Therefore, even though many of the documents were not written by senior managers, the proposals and options therein are used by senior management in their decision making. Consistent with that purpose, the agency must be careful that every statement which it releases accurately articulates the agency's position on any given issue or question. Effective policy-making requires the consideration of alternative and even competing goals and ways to accomplish the agency's mission. The suggestions and alternatives which are the subject of the deliberations should never be confused with actual, final, agency policy or procedure adopted at the conclusion of the deliberations.

9. In order to make fully informed decisions, I, and other senior CMS staff, must be able to rely on our staff to provide recommendations and advice to us on all matters which may affect the efficient administration of the programs for which we are responsible. The recommendations and advice must be frank if they are to have value. I rely on agency personnel to be candid with all persons who are working for the agency.

10. Based on my experience, open, candid exchanges of ideas and information among CMS personnel regarding the effective administration of the agency would be seriously inhibited if the officials believed that their internal discussions, analyses, opinions, views and recommendations would be disclosed publicly. Further, if the discussions contained or referenced in the documents attached to this declaration were subject to public disclosure, CMS personnel officials would feel constrained in their deliberations because we would have no confidence that our internal discussions would remain confidential.

11. The foregoing concerns about the potential chilling effect on the candid exchange of opinions and recommendations on agency personnel are heightened in the context of litigation,

-6-

especially any case in which the Government is a party. Disclosing such deliberative documents will have a profound and detrimental impact on the free exchange of candid commentary among employees – especially with regard to those individuals who would otherwise be inclined to express critical or minority opinions.

12. For the reasons stated above, I consider that the release of the attached documents would be detrimental to CMS deliberations and thus contrary to the public interest. I therefore respectfully assert the privilege for governmental deliberative communications to withhold these documents from disclosure to the defendants.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __8__ day of December, 2008 in __December__.

_[signature]_
Herb Kuhn
Deputy Administrator