UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: *State of Arizona v. Abbott Labs., Inc., et al.*,    Subcategory Docket No. 1:06-CV-11069-PBS | |

**THE STATE OF ARIZONA'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................4

    A. Defendants' Unlawful Scheme ................................................................4

    B. Marketing the Spread:  The Motivation for the Price Reporting Scheme ..............5

    C. The Fraudulent Price-Reporting Scheme has Harmed the State and Its Citizens ..................................................................................................6

    D. The State's Claims in This Action ..........................................................6

III. ARGUMENT .........................................................................................................7

    A. Defendants Face a Heavy Burden in Moving to Dismiss Pursuant to Rule 12(b)(6) ............................................................................................7

    B. Arizona's Allegations Concerning the Categories of Drugs or Claims Defendants Seek to Dismiss Are Valid Claims, Not "Implausible" ......................8

        1. The State pleads valid claims for all self-administered drugs, but refines the scope of self-administered drugs it will pursue..........................9

            a. The State has sufficiently pled claims for self-administered drugs.........................................................................9

            b. The State refines its claims for self-administered drugs...............10

        2. The State has adequately pled claims for multi-source drugs at a single rate ...................................................................................11

        3. No automatic cut-off should apply to exclude drugs with WAC/AWP spreads that Defendants say fall below 30%...............................................12

            a. The issue is on appeal in the First Circuit.....................................13

            b. The liability threshold is a finding that could be resolved differently here.............................................................................14

            c. Additional facts are required......................................................14

    C. Arizona's Claims Have Been Neither "Fully Adjudicated" nor "Settled and Released" ................................................................................................15

1.      No final settlement covers any claim brought in the Amended Complaint; it would thus be premature and illogical to dismiss any claims ...................................................................................16

        a.      Proposed Track Two consumer settlement ....................................16

        b.      Proposed AstraZeneca Zoladex consumer settlement ..................16

        c.      Proposed BMS consumer settlement .............................................16

2.      Arizona's claims have not been dispositively adjudicated ........................17

3.      The State's claims are not derivative of consumer claims, including consumer claims covered by MDL class action settlements or judgments ...................................................................................19

        a.      The State is pursuing its own sovereign interests, civil penalties and injunctive relief that cannot be pursued by any consumer ......................................................................................19

        b.      *In re Baldwin United* does not apply ...........................................21

D.      Arizona's Claims are Timely ...............................................................................22

1.      The State is statutorily exempt from the statute of limitations .................22

2.      Defendants' fraudulent concealment of their wrongdoing triggers the discovery rule and a factual analysis improper at the motion to dismiss stage ...............................................................................................................24

E.      The Amended Complaint Meets the Pleading Requirements of Fed. R. Civ. P. 9(b), If Applicable, and Those Applied by the Court in Other AWP Cases ..........25

1.      Rule 9(b) does not apply to this Attorney General action under the Arizona Consumer Fraud Act ....................................................................26

2.      The Amended Complaint meets Rule 9(b) standards ...............................27

3.      The Court's previous treatment of Rule 9(b) standards ...........................28

IV.     CONCLUSION ...................................................................................................30

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*Alaface v. National Inv. Co.*,
    892 P.2d 1375 (Ariz. Ct. App. 1994)..........................................................................25

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982)...................................................................................................20

*In re Baldwin-United Corp. Single Premium Deferred Annuities Ins. Litig.*,
    770 F.2d 328 (2d Cir.  1985)................................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..........................................2, 7, 8

*Commonwealth of Massachusetts v. Bull HN Info. Sys.*,
    16 F. Supp. 2d 90 (D. Mass. 1998) .........................................................................20

*In re Diamond Benefits Life Ins. Co.*,
    907 P.2d 63 (Ariz. 1995)..........................................................................................23

*In re Edmond*,
    934 F.2d 1304 (4th Cir. 1991) .................................................................................20

*Erickson v. Pardus*,
    ___ U.S. ___, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)......................................7, 8

*FTC v. Freedom Commc'n, Inc.*,
    401 F.3d 1192 (10th Cir. 2005) ...............................................................................27

*FTC v. Medical Billers Network, Inc.*,
    543 F. Supp. 2d 283 (S.D.N.Y. 2008)......................................................................27

*Holeman v. Neils*,
    803 F. Supp. 237 (D. Ariz. 1992) ..............................................................................6

*Iowa v. Abbott Labs.*,
    Civ. No. 01-12257 (D. Mass. Aug. 19, 2008) (Dkt. No. 5505) ...................................3, 13

*London v. Green Acres Trust*,
    765 P.2d 538 (Ariz. Ct. App. 1988)...........................................................................6

*Murry v. Western Am. Mortgage Co.*,
    604 P.2d 651 (Ariz. Ct. App. 1979)..........................................................................26

*Peery v. Hansen*,
   585 P.2d 574 (Ariz. Ct. App. 1978) ............................................................... 26

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) ............................................................... 10, 18

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   498 F. Supp. 2d 402 (D. Mass. 2007) ..................................................... 3, 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   307 F. Supp. 2d 196 (D. Mass. 2003) ................................................... 28, 29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   321 F. Supp. 2d 187 (D. Mass. 2004) ................................................... 28, 29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   2007 U.S. Dist. LEXIS 26242 (D. Mass. Apr. 2, 2007) ........................... 28, 29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   491 F. Supp. 2d 20 (D. Mass. 2007) ....................................................... 3, 12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   263 F. Supp. 2d 172 (D. Mass. 2005) ................................................... 28, 29

*Simonet v. SmithKline Beecham Corp.*,
   506 F. Supp. 2d 77 (D.P.R. 2007) ................................................................. 8

*State ex rel. Babbitt v. Green Acres Trust*,
   618 P.2d 1086 (Ariz. Ct. App. 1980) ..................................................... 26, 27

*State ex rel. Corbin v. Goodrich*,
   726 P.2d 215 (Ariz. Ct. App. 1986) ............................................................... 6

*State ex rel. Corbin v. United Energy Corp.*,
   725 P.2d 752 (Ariz. Ct. App. 1986) ............................................................... 6

*State ex rel. Stephan v. Brotherhood Bank & Trust Co.*,
   649 P.2d 419 (Kan. Ct. App. 1982) ............................................................. 24

*Trimble v. American Sav. Life Ins. Co.*,
   733 P.2d 1131 (Ariz. Ct. App. 1986) ..................................................... 23, 24

*Tucson Unified Sch. Dist. v. Owens-Corning  Fiberglass Corp.*,
   174 Ariz. 336, 849 P.2d 790 (1993) ............................................................ 23

001534-14  276881 V1

*Williamson v. Allstate Ins. Co.*,
    204 F.R.D. 641 (D. Ariz. 2001) ..........................................................................................28

*Wisconsin v. Abbott Labs.*,
    341 F. Supp. 2d 1057 (W.D. Wis. 2004) ...........................................................................19

## STATUTES

15 U.S.C. § 41-57 ...............................................................................................................................27

A.R.S. § 12-510 .................................................................................................................................22

A.R.S. § 12-541 .................................................................................................................................22

A.R.S. § 44-1521, *et seq.* ............................................................................................................1, 21, 22

A.R.S. § 44-1522 .....................................................................................................................5, 26, 27

A.R.S. § 44-1528 .................................................................................................................................6

A.R.S. § 44-1531.01 ....................................................................................................................1, 21, 22

Plaintiff, the State of Arizona, submits this memorandum in opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.[1]

## I.      INTRODUCTION

Attorney General Terry Goddard brings this consumer protection action as the chief law enforcement officer and attorney for the State of Arizona.  In doing so, Attorney General Goddard seeks to further the State's substantial interest in the health and economic welfare of its citizens.  The Attorney General alleges that Defendants' conduct as alleged in the Amended Complaint violated the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.* ("Consumer Fraud Act" or "Act"), and resulted in higher prices for prescription drugs within the State. Because of Defendants' conduct, Arizona citizens, and especially the State's vulnerable sick and elderly, overpaid for the prescriptions they needed.  ¶ 18.[2]  These circumstances had a far reaching impact on the State, including its citizens and its economy.  ¶¶ 18-21.

The State brings this lawsuit on behalf of the State, seeking remedies that may only be pursued by the State:  statutory penalties of up to $10,000 per violation under the Consumer Fraud Act and injunctive relief.  ¶¶ 21, 522(C), 522(D).  By statute, the civil penalties remain in the public coffers to be used to combat consumer fraud.  A.R.S. § 44-1531.01.  In addition, the Amended Complaint seeks "restitution" on behalf of Arizona citizens.  ¶¶ 21, 522(E).[3]

---

[1] Defendants AstraZeneca Pharmaceuticals LP and Zeneca Inc.; Merck & Co., Inc.; and Biogen Idec joined in the joint motion and also filed individual motions to dismiss.  The AstraZeneca individual motion is addressed in a separate opposition.  Merck & Co., Inc. and Biogen Idec's individual arguments are addressed by this Opposition. The points set forth here apply equally to the joint motion to dismiss and the Merck and Biogen motions.  The Merck and Biogen individual arguments are redundant of the arguments made in the main motion.  The State's allegations with respect to Merck & Co. and Biogen are sufficient.  The Biogen and Merck individual motions each improperly raises facts beyond the Amended Complaint to support dismissal.

[2] All references to "¶ __" cited in the State's Opposition are to the First Amended Complaint (Dkt. No. 3840) ("Amended Complaint").

[3] This action differs from most other states' AWP lawsuits in that the Attorney General has not brought claims on behalf of the AHCCCS, the State's Medicaid agency.  This is not an "abandonment" of such claims, as Defendants' claim.  Def. Mem. at 1.  Arizona never brought such claims.

- 1 -

Defendants attack the Amended Complaint under Rule 12(b)(6). The attack is largely premised on a mischaracterization of the State's case, focusing exclusively on the citizen restitution claims and ignoring the State's claims for civil penalties.

Defendants insist that the State brings claims solely on behalf of its citizens, claims that they say are "derivative" of consumer claims filed elsewhere. The Amended Complaint rebuts this fiction. The Amended Complaint pleads claims that will vindicate the State's interest in the health and well-being of its citizens – and seeks civil penalties and injunctive relief that only the State may pursue – in addition to claims on behalf of Arizona residents. ¶¶ 18-21, 522. Defendants ignore the State's claims and the significant civil penalties sought anywhere in their motions, but this will not make them disappear. As detailed below, the Amended Complaint states a plausible entitlement to relief and withstands scrutiny under post-*Twombly* Rule 12(b)(6) standards.[4]

In the most ambiguous section of their motion, Defendants single out two categories of drugs it says should be dismissed as "implausible": (i) "self-administered drugs and brand self-administered drugs in particular;" and (ii) "generic drugs subject to a single reimbursement rate." Def. Mem. at 4.[5] As to the self-administered drugs, the State submits that it has sufficiently plead claims for each Defendant and that Defendants' arguments in support of dismissal improperly introduce disputed "facts" beyond the pleadings to make their case. At the same time the State recognizes that the Court has made several rulings related to self-administered drugs that guide the claims here. Based on these rulings, the State refines its claims. The State

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965-65, 167 L. Ed. 2d 929 (2007) (internal citations and quotations omitted).

[5] As an initial matter, the State notes that this argument leaves the Amended Complaint's claims for physician-administered drugs (other than those subject to a single reimbursement rate) untouched. Physician-administered drugs include both physician-administered drugs administered by a physician and those that may be administered by a physician or self-administered.

- 2 -

concedes that based on prior rulings and the factual findings they encompass, it will not pursue claims for self-administered drugs reimbursed on a Maximum Allowable Cost ("MAC") or other non-AWP methodology.

Defendants argue that all generic drugs subject to a single reimbursement rate should be dismissed. This argument should be rejected because it requires a premature, fact-driven analysis that ranges far beyond the Amended Complaint and thus would be improper on a motion to dismiss. Def. Mem. at 8-12. Further, the State's claim for this category of drugs is "plausible." Indeed, this Court has outlined a specific scenario under which a generic drug subject to a single reimbursement rate could be a "but for" cause of payor injury as the result of a drug manufacturer's reporting of an inflated AWP. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 99 (D. Mass. 2007) (hereinafter cited as "*Trial Opinion*") (describing impact of Warrick's reporting of a false AWP could have on the price of a multi-source, single-priced drug).

Defendants also seek to dismiss a third category of claims as "implausible": Subject Drugs with "unremarkable spreads." Def. Mem. at 12-13.[6] Defendants allude to a large group of Subject Drugs falling within this category, but identify just a handful of examples. *Id.* at 13 n.5. The Court rejected the automatic cut-off as a basis for Rule 12(b)(6) dismissal in other cases. *See*, *e.g.*, *In re Pharm. Indus. Average Wholesale Litig. ("New York Counties")*, 498 F. Supp. 2d 402, 505 (D. Mass. 2007); *Iowa v. Abbott Labs.*, Civ. No. 01-12257 (D. Mass. Aug. 19, 2008) (Dkt. No. 5505). In addition, the cut-off is one subject of a pending First Circuit appeal.

Defendants further argue that many of the claims brought by Arizona have been resolved. To the contrary, none of the claims in the Amended Complaint have been "fully adjudicated" or

---

[6] Defendants move on a fourth category, claims made after the passage of the Medicaid Modernization Act ("MMA"). Def. Mem. at 14. The State recognizes that certain of the Court's earlier rulings preclude claims for conduct after the MMA's passage and do not contest this point. *Trial Opinion*, 491 F. Supp. 2d at 52.

"settled and released," as Defendants claim.  Def. Mem. at 14.  Dismissing any of the claims on the basis that they have been settled would be premature and potentially lead to a later procedural snarl.  Defendants cite *no* final settlement that applies to any of the claims because there is none. Similarly, dismissal based on the "adjudications" would be a mistake.  Numerous issues are on appeal in the First Circuit, fully briefed and argued and waiting decision.[7]  Moreover, the adjudications referred to relate to four drug manufacturers after a bench trial in which the State was not involved.  There is a possibility that fact issues would be subject to an alternative finding here.

Defendants next grasp desperately when they urge the Court to create an exception to the State's exemption from the Consumer Fraud Act statute of limitations to bar all claims.  Def. Mem. at 22.  No exception exists.  The State's claims are timely.

Finally, Defendants suggest that the State has not met the pleadings standards of either Rule 9(b) or those set by the Court in earlier suits.  Def. Mem. at 23.  Neither contention is supported.  The State submits that Rule 9(b) does not apply to this Attorney General action. However, even if it did, the State has met both the Rule 9(b) particularity standards and the Court's requirements for maintaining claims for the Subject Drugs.

Defendants' joint motion to dismiss should be denied.

## II.   STATEMENT OF FACTS

### A.   Defendants' Unlawful Scheme

The State brings this suit for monetary and injunctive relief against certain pharmaceutical manufacturers based on select Subject Drugs.  Arizona alleges that the named

---

[7] Indeed, two of the moving Defendants have moved jointly in another context to urge the Court to take no action that might be upended by the First Circuit's opinion, notwithstanding their joinders in the motion asking the same Court to apply the "adjudications" immediately here. Jt. Mtn. AZ & BMS to Stay Entry of Multistate Class Certification Order Pending Appeal of Mass. Class Judgment (Dkt. No. 5700).

Defendants have undertaken a massive, coordinated scheme to inflate the AWP paid for the

Subject Drugs.  ¶¶ 8, 15.  The AWP for a given drug is based on the manufacturer's

representations to third-party publishers of the average payments made for that drug.  ¶¶ 4-5.  As

alleged in the Amended Complaint, the principal payors for such prescription drugs are public

entities such as the federal government, and the private sector, including private insurers and

self-insured employers, and private individuals, including the elderly.  ¶ 2.  Rather than make

any effort to report accurately the "average" price actually paid for their drugs, each of the

Defendants has fraudulently reported fictitiously high AWPs for certain prescription

pharmaceuticals.  ¶ 8.  The actual price that providers pay for the drugs is not disclosed to

patients within the State who make co-payments based on the fictitious AWP.  ¶¶ 15-16.  The

Amended Complaint alleges that the scheme covers the "vast bulk of drugs paid for in the private

sector," ¶ 6, including physician-administered drugs, ¶ 11, and self-administered drugs, ¶¶ 12-13.

The Amended Complaint alleges that this conduct, or scheme, violates the Arizona

Consumer Fraud Act.  ¶¶ 513-22.  The Act provides, in pertinent part, that:

> The act, use or employment by any person of any deception,
> deceptive act or practice, fraud, false pretense, false promise,
> misrepresentation, or concealment, suppression or omission of any
> material fact with intent that others rely upon such concealment,
> suppression or omission, in connection with the sale or
> advertisement of any merchandise whether or not any person has in
> fact been misled, deceived or damaged thereby, is declared to be
> an unlawful practice.

A.R.S. § 44-1522(A).

**B.     Marketing the Spread:  The Motivation for the Price Reporting Scheme**

While Defendants intentionally inflate the AWP and the "best price" paid for their drugs,

they sell those drugs to health care providers and other providers for substantially less than the

AWP.  ¶¶ 9-13.  As a result, the providers receive a far greater reimbursement for Defendants'

drugs than they paid for those drugs. ¶ 14. Defendants promoted the use of reimbursement rates based on a fictitious and inflated AWP that allows physicians, retailers and PBMs to make inflated profits – and the Defendant Drug manufacturers to increase their market share – at the expense of all those whose payments are based on AWP. *Id*. Defendants designed and perpetuated this scheme in order to ensure that providers would prescribe and use drugs manufactured by Defendants and not prescribe competing drugs from other companies. *Id*. Defendants cautioned providers and other participants that the scheme would be jeopardized if disclosed and Defendants themselves acted to conceal the scheme. ¶ 15.

### C.     The Fraudulent Price-Reporting Scheme has Harmed the State and Its Citizens

The fraudulent price-reporting scheme has wreaked tremendous harm on the State and its citizens. The skyrocketing cost of prescription drugs, driven in part by Defendants' illegal AWP scheme, has harmed the health and economic welfare of the State and disrupted the State's economy. ¶ 19 In addition, the AWP scheme has harmed the general public, especially the elderly and the sick, by causing them to overpay for prescriptions they need. ¶¶ 18-21.

### D.     The State's Claims in This Action

The Arizona legislature has authorized the Attorney General to enforce the State's consumer protection laws through the Arizona Consumer Fraud Act. A.R.S. § 44-1528. *See also State ex rel. Corbin v. Goodrich*, 726 P.2d 215 (Ariz. Ct. App. 1986). Both private causes of action for damages and public actions are recognized under the Act and each has its own remedies. *See Holeman v. Neils*, 803 F. Supp. 237 (D. Ariz. 1992) (private consumer fraud cause of action for restitution and punitive damages); *London v. Green Acres Trust*, 765 P.2d 538 (Ariz. Ct. App. 1988) (private suit seeking restitution and attorney general suit seeking statutory penalties arising out of same facts not duplicative); *State ex rel. Corbin v. United Energy Corp.*, 725 P.2d 752 (Ariz. Ct. App. 1986) (attorney general consumer fraud action for statutory

penalties).  Pursuant to this authority, the State here seeks to recover the damage caused to itself

and its citizens, to impose civil penalties and to end the unlawful fraudulent price-reporting

scheme and to ensure that it does not recur.  The Amended Complaint alleges one cause of action

stemming from the Defendants' fraudulent price-reporting scheme, a claim for civil penalties

restitution, disgorgement, attorneys' fees and injunctive relief pursuant to the Arizona Consumer

Protection Act, A.R.S. § 44-1521, *et seq.*

### III.    ARGUMENT

**A.    Defendants Face a Heavy Burden in Moving to Dismiss Pursuant to Rule 12(b)(6)**

Defendants' motion relies heavily on the Supreme Court's recent refinement of Rule

12(b)(6) dismissal standards in an antitrust case.  In *Bell Atlantic Corp. v. Twombly*, the Supreme

Court explained that "[w]hile a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed.

2d 929 (2007) (internal citations and quotations omitted).  If the complaint states "a plausible

entitlement to relief," it must not be dismissed.  *Id*. at 1967.  The Supreme Court subsequently

emphasized that "[s]pecific facts are not necessary; the statement need only 'give the defendant

fair notice of what the … claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*,

___ U.S. ___, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 127 S. Ct. at

1964).  *See also Twombly*, 127 S. Ct. at 1964 (quoting *Conley v Gibson*, 355 U.S. 41, 47 (1957)).

*Twombly* did not change the well-established touchstones of Rule 12(b)(6) motions nor

provided criteria for evaluating what "plausible entitlement to relief" looks like.  The latter must

be determined on a case-by-case basis.  When considering a Rule 12(b)(6) motion to dismiss,

courts must still accept as true all well-pled factual allegations in the complaint at issue and draw

all reasonable inference in the plaintiff's favor.  *Twombly*, 127 S. Ct. at 1964; *Erickson*, 127 S. Ct. at 2200; *Simonet v. SmithKline Beecham Corp.*, 506 F. Supp. 2d 77, 81 (D.P.R. 2007).  The Court may not consider materials outside the complaint except under certain, limited circumstances not present here.  *Simonet*, 506 F. Supp. 2d at 81 n.1.

The Amended Complaint meets the applicable standards.  The State has made specific factual allegations concerning each Defendant's conduct within the State, the identity of the Subject Drugs and the false AWPs, the impact the scheme alleged has had on citizens and the State and how the conduct has violated the Arizona Consumer Fraud Act.  In short, Arizona has provided Defendants with "fair notice" of the claims and the grounds and stated a "plausible entitlement to relief" with respect to each Defendant.  The Amended Complaint should not be dismissed.

**B.**   **Arizona's Allegations Concerning the Categories of Drugs or Claims Defendants Seek to Dismiss Are Valid Claims, Not "Implausible"**

Defendants attempt to sever three categories of drugs or claims from the rest of the Amended Complaint on the grounds that they are "implausible":  (1) "self-administered drugs and brand self-administered drugs in particular;" (2) generic drugs subject to a single reimbursement rate; and (3) brands with what Defendants call "unremarkable" WAC/AWP spreads.[8]  Defendants' arguments fail in each instance.  Defendants attempt to conflate motion to dismiss standards for the three categories with a series of almost-random citations to previous decisions by the Court that are inapposite to this stage of the proceedings.  Def. Mem. at 4-13.  When the State's allegations are examined, it is clear that the State has stated a claim for each category.

---

[8] Defendants move on a fourth category that the State does not contest.  *See supra* at n.6.

1.     **The State pleads valid claims for all self-administered drugs, but refines the scope of self-administered drugs it will pursue**

a.     **The State has sufficiently pled claims for self-administered drugs**

Arizona has stated a plausible basis for relief for self-administered drugs.  The Amended Complaint alleges that AWP is the prescription drug reimbursement benchmark for the "vast bulk of drugs" in the private and public sectors.  ¶ 5.  The Amended Complaint further alleges that Defendants have engaged in the fraudulent reporting of fictitious AWPs involving a number of players, including PBMs.  ¶¶ 6-7.  Defendants have reported AWPs for certain drugs that were deliberately false and fictitious, ¶ 8.  The reporting of fictitious prices extended to self-administered drugs, ¶¶ 12-13.  The Amended Complaint alleges that "virtually all self-administered drugs are reimbursed based on AWP."  ¶ 13.  Defendants promoted the drugs, including self-administered drugs, based on the prices and acted to conceal information about the true pricing structure, ¶¶ 14-15; as a result, the drug manufacturers reaped large profits and the residents of Arizona, especially the sick and elderly, overpaid.  ¶ 16.

Defendants ignore these specific allegations and instead offer unsupported "facts" from outside the pleadings concerning the "role of Pharmacy Benefit Managers ('PBMs') in the SAD market" to argue individual and third-party payors could not have been deceived as to the payments they made.  Def. Mem. at 5-6.  Defendants make an illogical leap between what they describe alternately as the PBMs' "savvy," or "knowledge and experience" to payor knowledge, failing to explain how PBM knowledge would or even could be imputed to individuals or the State.  *Id.*  The State disputes Defendants' version of the "facts."

To justify their use of the "facts" from outside the pleadings concerning PBMs, Defendants cite extensively the Court's *class certification opinion* in the MDL case as if it were a binding finding dispositive of the issue here.  Def. Mem. at 6-8 (citing *In re Pharm. Indus.*

*Average Wholesale Price Litig.*, 230 F.R.D. 61, 95-96 (D. Mass. 2005) (hereinafter "*Class Certification Opinion*")).  The Court declined to certify a nationwide consumer and TPP class for self-administered drugs on the grounds that individual issues predominated and that trial would be a "management nightmare."  *Class Certification Opinion*, 230 F.R.D. at 95-96.  Of course, the standard for evaluating whether a self-administered drug class should be certified under Rule 23 in one case is not the same as that for assessing whether the State has alleged a plausible claim for relief for self-administered drugs in this case.  Defendants' motion suggests that the Court made binding findings that would preclude any self-administered drug claims.  Def. Mem. at 6-8. This is not the case.  Because the Court denied nationwide class treatment for SADs, the theories Defendants promote here as dispositive of certain Arizona claims remain untested.  The Court actually invited TPPs to bring their own individual actions if they believed they had been defrauded.  *Class Certification Opinion*, 230 F.R.D. at 96.  And elsewhere in the opinion, the Court discussed the potential for spreads with self-administered drugs, especially generic self-administered drugs, and the role of pharmacies in those circumstances.  *Id*. at 74.  The question of whether a sovereign such as the State of Arizona could pursue self-administered drug claims was never before the Court.

### b.     The State refines its claims for self-administered drugs

Although the State maintains that it has sufficiently pled claims for self-administered drugs, the State is practical and acknowledges that certain earlier decisions by this Court guide the claims.  Therefore, the State refines its allegations as follows with respect to self-administered drugs.  The State will not pursue claims for self-administered drugs reimbursed on MAC or other non-AWP methodology.

**2.      The State has adequately pled claims for multi-source drugs at a single rate**

Defendants argue that the State's claims for multi-source drugs reimbursed at a single rate "make no sense," are "implausible" and thus should be dismissed.  Def. Mem. at 8.  Defendants offer three bases for their argument:  (i) reimbursement of multi-source drugs is "generally not based on AWP;" (ii) manufacturers have no incentive to inflate reported prices for multi-source drugs that are reimbursed at a single rate; and (iii) allegations of concerted action by multi-source manufacturers are "implausible."  *Id.* at 8-14.

Each of these bases should be rejected outright as requiring factual analysis beyond the Amended Complaint.  With respect to multi-source drugs reimbursed at a single rate, Defendants rely almost exclusively on a disputed version of "facts" concerning how pharmaceutical reimbursement operates.  The factual analysis Defendants' arguments require is out of place in a motion to dismiss.  Among the "facts" is the equivocal defense statement that reimbursement of multi-source drugs is "*generally* not based on AWP."  Even if it were true, which the State contests, it is not a definitive enough basis on which to dismiss all single-rate multi-source claims.[9]

Even if Defendants' arguments with respect to multi-source drugs reimbursed at a single rate were valid, they apply only to a narrow band of prescription pharmaceuticals *during certain periods of time*.  Many multi-source drugs reimbursed at a single rate were launched as a brand drug and directly subject to AWP abuse.  This point underscores the prematurity of dismissing any drugs on this basis at this stage.

---

[9] This case is about AWP-based reimbursement.  The State concedes that it will not pursue claims for drugs not reimbursed based on AWP.  The State believes that the multi-source Subject Drugs are reimbursed based on AWP and the Amended Complaint allegations reflect that understanding.  The State must not be forced to accept Defendants' unsupported representations to the contrary, particularly on a motion to dismiss.  If the Defendants have evidence that certain drugs were not reimbursed based on AWP, they should provide it to the State.

The MDL Track One trial defendants made similar arguments, attempting to prove that for *branded* multi-source drugs reimbursement was based upon the median of the generics rather than the AWP of the manufacturer's branded drug, so that the manufacturer did not cause plaintiffs' injuries. *Trial Opinion*, 491 F. Supp. 2d at 98. The Court considered the argument and found that the "flip side" of the argument was that if a manufacturer had reported a true AWP for its branded multi-source drugs, the drug would have been reimbursed based on the reported AWP rather than the inflated median. In this way, the reporting caused a higher reimbursement rate to be used. This did result in injury to plaintiffs.

For *generic* multi-source drugs Track One trial defendants argued that because no generic manufacturer can unilaterally affect the median AWP, a manufacturer of a generic drug could not have injured plaintiffs. Defendants ignore the Court's post-trial analysis with respect to Warrick and the impact a single defendant's reporting of an inflated AWP may have on the price for all other generics of that type. *Trial Opinion*, 491 F. Supp. 2d at 97-99. The analysis undermines Defendants' arguments that there is no incentive to inflate reported prices. The Court considered the causation question for generic multi-source drugs, in particular Warrick's albuterol sulfate. The underlying assumption was that the reimbursement rate for the generic was based on a median of reported prices. The Court found that there was a plausible scenario under which a single manufacturer could individually cause the plaintiffs' injuries. *Id*. at 99. The Court described the scenario in great detail. *Id*. This remains for a plaintiff to prove, and *not* at the motion to dismiss stage.

**3.    No automatic cut-off should apply to exclude drugs with WAC/AWP spreads that Defendants say fall below 30%**

The State has identified hundreds of Subject Drugs that it believes have been subject to undisclosed, fraudulent spreads between the drug's actual average selling price and the published

AWP.  Amended Complaint, *in passim* and Appendices A-C.  The allegations are based on the State's pre-filing research.  In the Track One bench trial, the Court found that where spreads are typically below 30%, there is no liability.  Defendants argue broadly that the same standard should apply here and that claims related to Subject Drugs with spreads falling below 30% should be dismissed as "implausible," but identify just a few "examples" of drugs they say should be dismissed on this basis.  Def. Mem. at 15.  This Court has rejected this argument as a basis for Rule 12(b)(6) dismissal in other cases, allowing government plaintiffs to submit an expert affidavit providing a good faith basis for a lower threshold.  *See, e.g.*, *New York Counties*, 498 F. Supp. 2d at 405; *Iowa v. Abbott Labs.*, Civ. No. 01-12257 (D. Mass. Aug. 19, 2008) (Dkt. No. 5505).  There are other bases to dismiss any claims based on the 30% liability threshold here, as described below.

### a.    The issue is on appeal in the First Circuit

The issue of the liability threshold is currently on appeal in the First Circuit.  As Defendants and the Court are aware, the issue of the 30% cut-off was vigorously litigated in the class case and the bench trial and that the issue is currently on appeal in the First Circuit, fully briefed and argued, opinion pending.[10]  Arizona agrees with the plaintiff-appellants who argue that the post-trial judgment was improperly entered against the nationwide consumer class which was not adequately represented at the trial and about which the Court heard no evidence and made no findings.  In particular, the Court never found that any member of the consumer class

---

[10] BMS and AstraZeneca, who have joined the motion to dismiss in this case, have simultaneously urged this Court to defer any action that might be affected by a decision on the appeal, arguing that "prudence dictates" that the Court take no action pending resolution by the First Circuit.  The drug manufacturers argue that the "investment of resources … could easily be mooted in full or in part by any number of outcomes in the pending First Circuit appeals."  *See* Joint Motion to Stay Entry of Multi-State Class Certification Order Pending Appeal of Massachusetts Class Judgment (Nov. 21, 2008) (Dkt. No. 5700).  Although Arizona does not necessarily agree with the positions taken by BMS and AstraZeneca in the joint filing, and the law firm that represents Arizona has opposed the motion, the State notes that the positions undercut Defendants' arguments that the automatic cut-off should be applied to the claims in this case at this time.

- 13 -

had any knowledge of any drug manufacturer spreads in the 20 to 25% range.  Similarly, there was no finding that any knowledge of the spreads extended beyond the expectations of the industry and the government.  Even if the Court were inclined to impose a spread liability cut-off to the claims in this case, which the State maintains would be improper, it should not do so prior to the resolution of the appeal.

> **b.      The liability threshold is a finding that could be resolved differently here**

In addition, the MDL Opinion constitutes the Court's findings with respect to four drug manufacturers after a six week bench trial in which the state of Arizona was not involved.  The findings related to two Massachusetts classes.  Arguably, the findings did not cover consumers.  *See supra* § B.3.a.  This is neither a finding that can be made based on the allegations of the Amended Complaint nor a finding that binds the parties here.  There is a possibility that this case will be tried either in front of a jury or transferred back to its home court for trial as other state cases have been.  In either case, this issue would be subject to an alternate finding.

> **c.      Additional facts are required**

Dismissal on this basis would also be premature without additional facts.  By alleging that the Subject Drugs were subject to false reporting and spreads, the State has brought a claim upon which relief might be granted.  Defendants' papers identify no more than eight "examples" of drugs that they say should be dismissed because the spreads alleged are less than or within a 20 to 25% mark-up.  Def. Mem. at 13 n.5.  Again, even if the Court were inclined to impose a cut-off at the motion to dismiss phase, which the State maintains would be improper, basing such a dismissal on Defendants' say so without more is inadequate.  If the Court ultimately decides to apply the 30% liability threshold here and Defendants have information that any of the Subject

Drugs actually fall below this cut-off, they should be required to disclose that information to the State.

For all of these reasons, applying an automatic cut-off to dismiss claims now would be premature.

## C.   Arizona's Claims Have Been Neither "Fully Adjudicated" nor "Settled and Released"

Defendants' arguments that "many of the claims asserted by plaintiff have been fully adjudicated and/or settled and released and should be dismissed", Def. Mem. at 14, are entirely without merit for at least three reasons.  First, Defendants have not identified one *final* settlement that covers any of the State's claims.  Even if one or more of the pending or proposed settlements might later cover claims by Arizona's citizens, it would be premature and illogical to dismiss any of the Amended Complaint's claims without their finality.  Second, there is no "adjudication" that applies to bar the Amended Complaint.  Third, both arguments ignore the State's actionable interest in the case, including the claims for civil penalties and injunctive relief, two forms of relief that are exclusively the State's to pursue and not available to private citizens.  ¶¶ 18-20. The State's civil penalty claims are not merely "derivative" of those of its citizens, in fact its citizens could not even bring those claims.[11]  It is undisputed that none of the "resolutions" Defendants cite cover the State's own claims.

---

[11] Defendants' repeatedly cite to the State of Arizona's Motion for Protective Order as if it were relevant to the Court's consideration of the pleadings on the Rule 12(b)(6) motion.  Arizona's Mem. in Support of Mot. for Protective Order (June 13, 2008) (Dkt. No. 5378).  The motion, which is still pending, seeks protection from Defendants' insistence that they are entitled to time-consuming, burdensome discovery from AHCCCS and dozens of other state agencies despite the fact that the Attorney General did not bring any claims on their behalf.  In particular the State seeks relief through the motion from the expensive and expansive burden of preserving the documents that Defendants threaten to seek via discovery.

1.       **No final settlement covers any claim brought in the Amended Complaint; it would thus be premature and illogical to dismiss any claims**

a.       **Proposed Track Two consumer settlement**

Defendants argue that "most" claims Arizona asserts against the MDL Track Two Defendants are the subject of the Track Two settlement and release and should be "dismissed pursuant to Rule 12(b)(6) for failure to state a claim, without prejudice pending final approval." Def. Mem. at 15-16. Defendants' request is misleading and premature. Final approval of the Track Two settlement is pending, but not approved. Approval should not be presumed and even if approved it will not cover "most" claims Arizona raises here. It is undisputed that the State's claims for civil penalties and injunctive relief are not covered. In any event, absent final approval of the settlements, consideration of the issue is premature. No claims should be dismissed on this basis at this time – with or without prejudice.

b.       **Proposed AstraZeneca Zoladex consumer settlement**

Defendants also argue that AstraZeneca has settled all consumer claims related to Zoladex. Def. Mem. at 17. However, like the Track Two settlement, no AstraZeneca Zoladex settlement has been approved. The Zoladex settlement has been subject to additional negotiations and intervention by this Court. Absent final approval, dismissal of any claims on the grounds that they have been settled would be premature and improper.

c.       **Proposed BMS consumer settlement**

Similarly, Defendants argue that BMS has entered into a "binding" Memorandum of Understanding ("MOU") to settle all AWP consumer claims nationwide and thus "these settled claims should be dismissed without prejudice pending final approval." Def. Mem. at 18. Again, this settlement is not final. Arizona has not determined whether any of its citizen claims would be resolved by the settlement, but it is clear that its sovereign claims would not. Moreover, the

status of the "binding" MOU illustrates the folly of dismissing any claims without finality.  The parties have continued to negotiate terms and the agreement has not yet been submitted to the Court for preliminary approval.  Absent final approval, dismissal of any claims on the grounds that they have been settled would be premature and improper.

## 2.    Arizona's claims have not been dispositively adjudicated

Defendants submit that three categories of claims should be dismissed because they have been previously adjudicated in Defendants' favor:  (i) Arizona consumer claims related to Procrit and Remicade; (ii) all Arizona consumer claims against Schering-Plough and Warrick; and (iii) "Arizona's claims with respect to all self-administered drugs."  But the State has sufficiently plead claims with respect to each category and none of Defendants' arguments address the State's civil penalty claims.

The arguments submitted in support of the dismissal of these categories of claims are recycled from other sections of their motion and the State addresses them fully elsewhere.  In summary, the Johnson & Johnson consumer claims related to Procrit and Remicade are one of the subjects of the pending First Circuit appeal on the liability threshold.  Defendants seek to impose a liability threshold on these drugs.  But, the State has alleged plausible entitlement to relief with respect to these drugs.  ¶¶ 392-99.  On this basis alone, the Procrit and Remicade claims survive Defendants' 12(b)(6) attacks.  In addition, pending a ruling on the appeal, it would be premature to dismiss the claims.

Defendants also seek to use the Court's adjudication of the Schering-Plough and Warrick claims in the class case to bar any Arizona consumer claims here.  As an initial matter, like the

other adjudication arguments, this does not relate to the State's civil penalty claims.[12]  In

addition, Defendants acknowledge that the Court did not certify a consumer class with respect to

Schering-Plough and Warrick.  Finally, this case may be transferred to a court other than this

prior to trial, as other state AWP cases have been, or tried by a jury.  The adjudications cited are

subject to alternate findings.

Defendants also reargue their points concerning the "SAD-based 'AWP fraud' claims."

Defendants again cite the *Class Certification Opinion*, 230 F.R.D. at 95-96, as the sole basis for

the dismissal.  Defendants acknowledge that the Court declined to certify a SAD class, yet assert

inexplicably that "[n]onetheless, the MDL class litigants (including Arizona consumers and

TPPs) had a full and fair opportunity to litigate the issue in that forum," and therefore should be

"barred from effectively re-litigating the issue in that forum."  Def. Mem. at 19.  Defendants do

not explain how this could be the case.  As discussed above, the Court's decision not to certify a

SAD class is not dispositive of Arizona's claims on a Rule 12(b)(6) motion.  Further, because the

Court declined to certify a class, the issues were not tried in that case and thus no consumers, let

alone Arizona consumers, had a "full and fair opportunity" to litigate the issue.  In addition, it is

undisputed that the State's interests were not part of the class action.  This case *is* Arizona's "full

and fair opportunity to litigate the issue."  The State has refined its claims for self-administered

drugs, no more is required at this stage.

---

[12] Defendants reply on the unsupported conclusory statement that "the claims being advanced by Arizona in this action against Schering-Plough and Warrick are effectively class claims being brought derivatively on behalf of a subset of the MDL consumer class."  This argument is rebutted in § III.C.3, *infra*.

3.     **The State's claims are not derivative of consumer claims, including consumer claims covered by MDL class action settlements or judgments**

a.     **The State is pursuing its own sovereign interests, civil penalties and injunctive relief that cannot be pursued by any consumer**

Defendants are dismissive of the State's pursuit of its quasi-sovereign interests through the Arizona Consumer Fraud Act, erroneously labeling the case a "mini-MDL class action" and ignoring completely the substantial civil penalties the State seeks.  At the heart of Defendants' motion is the erroneous contention that all of the State's claims are derivative of consumer claims brought elsewhere.  Def. Mem. *in passim*; *See also* Def. Mem. at 20.  In essence, Defendants try to re-write the Arizona Consumer Protection Act to eliminate the Attorney General's statutory authority to bring the claims and pursue civil penalties.  But ignoring the State's authority to protect the health and economic welfare of the State does not make it go away.  The State brings valid claims for the State's interests, including civil penalties and injunctive relief that only it may seek, in addition to bringing restitution claims on behalf of State residents, as discussed extensively above.  ¶¶ 18-20, 522.

This Court acknowledged the distinction between class claims and states' claims in the AWP litigation context when it considered certain attorneys generals' opposition to class certification in the class case.  *See* Motion Hearing Transcript (Jan. 19, 2006) at 59 (The Court addressed the State's interests:  "I also understand and you're quite correct, you can pick up civil penalties where the class people can't.  You might have easier causation or intents.  I understand this.").  Another court has written in the AWP context, "a state is not stripped of its sovereignty merely because it seeks relief on behalf of its citizens in addition to relief for harm done to the state itself."  *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1061-62 (W.D. Wis. 2004).

The Arizona legislature has expressly authorized the Attorney General to bring suit to pursue these interests, *see supra* at § II.D, and American courts have a long history of

recognizing them.  The Supreme Court outlined the history and "rough boundaries" of *parens patriae* standing, discussing the historic role of the *parens patriae* action and its modern application in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982).  The Supreme Court explained that *parens patriae* does not involve the State stepping in to represent the interests of particular citizens who cannot represent themselves, but instead involves the State asserting a "quasi-sovereign interest."  *Snapp*, 458 U.S. at 600 (citations omitted).  "Quasi-sovereign interest" is interpreted broadly and "consist[s] of a set of interests that the State has in the well-being of its populace."  *Id*. at 602.  "In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party."  *Id*. at 607.  The Supreme Court specifically recognized that "a State has a quasi-government interest in the health and well-being – both physical and economic – of its residents in general."  *Id*.  "Today, [*parens patriae*] is a concept of standing utilized to allow the state to protect 'quasi-sovereign' interests such as the health, comfort, and welfare of its citizens, interstate water rights, and the general economy of the state."  *Commonwealth of Massachusetts v. Bull HN Info. Sys.*, 16 F. Supp. 2d 90, 96 (D. Mass. 1998) (citation omitted).  Generally, courts have interpreted the "health and well-being" category broadly.  *Id*. at 97.

In *In re Edmond,* 934 F.2d 1304 (4th Cir. 1991), the Fourth Circuit interpreted *Snapp* and an attorney general's power in the context of the Maryland Consumer Protection Act to confirm that the Maryland consumer division of the state's attorney general office acts on behalf of the state's quasi-sovereign interest when it pursues actions under the state's consumer protection laws.  As in *Edmond,* certain aspects of the Arizona Act make explicit that the Arizona Attorney General is pursuing the State's quasi-sovereign interests when bringing claims under the Act.  First, the Act empowers the "attorney general of Arizona or his authorized delegate", to bring

claims unique to the State, that are not simply derivative of those of its citizens.  A.R.S. § 44-1521.  Second, the Act permits the Attorney General alone to seek civil penalties of up to $10,000.  Third, the Act establishes a discrete fund for the disposition of any attorney fees or civil penalties or other funds recovered for the State by the Attorney General as a result of enforcement of either state or federal consumer protection statutes, to be "used by the attorney general for consumer fraud education and investigative and enforcement operations of the consumer protection division."  A.R.S. § 44-1531.01(B), (C).

### b.    *In re Baldwin United* does not apply

Defendants cite just one case to support their "derivative" argument.  Defendants say that *In re Baldwin-United Corp. Single Premium Deferred Annuities Ins. Litig.*, 770 F.2d 328 (2d Cir. 1985) is "instructive" on what they allege are "derivative claims" covered by MDL class action settlement or judgments.  But *Baldwin* is readily distinguishable from the circumstances here.  In *Baldwin*, the court issued a preliminary injunction against state attorneys general *instituting* new proceedings to obtain duplicative recoveries for consumers *after* a settlement of the claims was announced.  *Baldwin* originated as an MDL securities case consolidating more than 100 class actions encompassing approximately 100,000 plaintiffs.  The original parties negotiated a $140 million settlement over a two year period.  After the settlement was announced, but prior to its preliminary approval, representatives of forty state attorneys general conferred about Baldwin's violations of state laws and several initiated investigations of Baldwin.  *Baldwin*, 770 F.2d at 332.  Certain states conceded that their objective was "to use state proceedings to obtain additional money, over and above the settlement amounts, for distribution to members of the class in the consolidated federal actions."  *Id.* at 332, 333 n.1.  The Second Circuit's analysis focused on the potential for double recovery through the attorney general lawsuits, which the Court wanted to preclude.  *Id.* at 337.  Although the Court blocked the state lawsuits, it also

- 21 -

recognized the states' interests in enforcing their laws, and stated that the injunction would not interfere with non-duplicative relief, including the criminal enforcement action or injunctive relief as to defendants' business practices.  *Id*. at 332, 333 n.1.

*Baldwin* contributes nothing to the analysis of whether the claims Arizona brings here in this litigation are "derivative."  In *Baldwin*, certain states conceded that they intended the prospective state cases to be nothing more than a pass through for citizen restitution – under the facts of the case  this was "double-dipping."  *Id*. at 332-33.  Unlike *Baldwin*, Arizona has made clear that it seeks to recover civil penalties for statutory violations.  The Consumer Fraud Act ensures that the penalties will not become restitution for the injured state citizens because it requires the attorney general to deposit penalties recovered in the statutory "consumer protection-consumer fraud fund" for consumer fraud education and investigation and enforcement action by the consumer protection division.  A.R.S. § 44-1531.01.  As for restitution sought for State citizens, Defendants have not demonstrated any final settlement or adjudication has resolved their claims.  Therefore, there is no jeopardy of "double dipping."

**D.    Arizona's Claims are Timely**

Under Arizona law, the State is exempt from statutes of limitations.  Defendants argue that the Court should disregard the exemption and bar the State's claims because they fall within an "exception" to the exemption.  There is no exception.  The claims are timely.

**1.    The State is statutorily exempt from the statute of limitations**

Defendants recognize, as they must, that under Arizona law, "except as provided in section 15-529, the state shall not be barred by the limitations of actions prescribed in this chapter."  A.R.S. § 12-510.  Section 15-529 is not applicable here.  Accordingly, the State is not subject to the general requirement that Consumer Fraud Act claims "must be commenced and prosecuted within one year after the cause of action accrues."  A.R.S. § 12-541.

Defendants cite no instance where a court has abrogated the exemption and applied a statute of limitations to bar state claims.  The Supreme Court of Arizona has held that "[t]he subject matter of the lawsuit is immaterial.  The nature of the plaintiff, not of the litigation, determines the applicability of A.R.S. § 12-510."  *Tucson Unified Sch. Dist. v. Owens-Corning Fiberglass Corp.*, 174 Ariz. 336, 339, 849 P.2d 790 (1993).  In doing so, the court emphasized the strength of the exemption by quoting earlier authority:   "'[T]he explicit language of [section 12-510 shows that] the state itself is always and under all circumstances exempt from statutes of limitations….'"  *Id*. at 339 (punctuation in the original).

The two cases Defendants rely on to support the finding of an exception do not help. Def. Mem. at 22 (citing *Trimble v. American Sav. Life Ins. Co.*, 733 P.2d 1131 (Ariz. Ct. App. 1986); *In re Diamond Benefits Life Ins. Co.*, 907 P.2d 63 (Ariz. 1995)).  The courts in each case refused to bar state claims as untimely.  In *Trimble*, the state brought a public enforcement action based on securities fraud that affected private citizen investors within Arizona.  The court held that even though the action would compensate individual investors, the state was immune from the statute of limitations defense because ultimately such corrective action benefited the general public.  *Trimble*, 733 P.2d at 1138.  The court recognized the strength of the exemption: "[u]nless the legislature expressly declares that a statute of limitations bars an action brought for the public benefit we will not give it effect."  *Id*. at 1139.

Although the *Trimble* court recognized that the exemption might be lifted if the right were proprietary to the government or belonged exclusively to "some small and distinct section of the public," it was adamant that "[t]he fact that the relief sought by the state will recompense an individual member of the public does not necessarily diminish the interest or authority of the

state in prosecuting the action" or bar state-brought claims.  *Id*. at 1138.[13]  Similarly, in *Diamond Benefits Life Ins. Co.*, the Arizona Supreme Court held that when a state entity pursues a company for fraudulent acts violating the state's laws, the corrective action benefits the public as a whole even though the effort tended to benefit individuals and thus, it is not subject to a statute of limitations defense.  184 Ariz. at 96-97.

The *Trimble* court relied on one case which considered whether an exemption from the statute of limitations should be lifted in the context of an attorney general action under a state's consumer protection act.  *State ex rel. Stephan v. Brotherhood Bank & Trust Co.*, 649 P.2d 419 (Kan. Ct. App. 1982).  In determining that it should not be, the court reasoned that the attorney general is granted broad investigatory and rule-making authority for the purpose of protecting the public acts as the state is charged with enforcing the state's consumer protection laws which were enacted to protect the state generally.  *Id*. at 420.  Whether one, ten or one hundred consumers may receive actual damages as a result of an attorney general suit it is the general interest of the state to be free of consumer fraud.  *Id*.  The same principles apply here.

> **2.     Defendants' fraudulent concealment of their wrongdoing triggers the discovery rule and a factual analysis improper at the motion to dismiss stage**

Even without the State's exemption from the Consumer Fraud Act statute of limitations, Defendants' arguments should be rejected – or at least deferred as premature.  Arizona has alleged that each Defendant deliberately and actively concealed its fraudulent conduct in a myriad of ways that prevented the public from discovering what the actual pricing structures for the Subject Drugs were, closely guarding its pricing structures and sales figures and instructing

---

[13] Even if *Trimble* were construed to establish an exception to the exemption under certain limited circumstances such as where the right belonged only to a "small and distinction section of the public," this determination could not be made on the face of the complaint but would require discovery.  In *Trimble*, the statute of limitations analysis took place after a trial.  The question here would be based on whether Arizona's public enforcement action involving drug pricing – involved a "small and distinct section of the public."

providers and others not to report the prices they paid for drugs.  ¶¶ 164-68.  Under the

"discovery rule" recognized by Arizona law, a consumer fraud claim does not accrue until the

defrauded party discovers or, with reasonable diligence, should have discovered the fraud.

*Alaface v. National Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994).  Defendants argue that

Arizona knew or should have known as early as August 1997 the facts underlying its claims.

Def. Mem. at 23.  This is not the case and, more importantly, this is not the appropriate time to

resolve such a claim.  Defendants' allegation of state knowledge necessitates a factual analysis

beyond the face of the complaint.

### E.       The Amended Complaint Meets the Pleading Requirements of Fed. R. Civ. P. 9(b), If Applicable, and Those Applied by the Court in Other AWP Cases

Defendants argue that the Amended Complaint should be dismissed in its entirety

because Arizona has neither pled its claims with the particularity required by Rule 9(b) nor met

the pleading requirements applied by this Court in other AWP cases.[14]  Def. Mem. at 23-24.  The

Amended Complaint omits specific detail on "any entity or person that was injured as a result" of

the inflated AWP scheme and has only provided a "smattering" of spreads "for Subject Drugs,

Defendants say.  *Id*. at 24-25.  The State submits that the Attorney General's claims fall outside

Rule 9(b), but that nevertheless it has met both the Rule's particularity standards and the

standards this Court has articulated for AWP cases.

---

[14] Even if Defendants' Rule 9(b) arguments were accepted, which they should not be, dismissal of the Amended Complaint on this basis would be an uncommon consequence.  "Since Federal Rule 9(b) does not expressly authorize a motion for its enforcement, a challenge to a pleading based on insufficient particularization of the circumstances of an alleged fraud typically is packaged with a motion [under one of various sections of Fed. R. Civ. P. 12].  But an insufficient allegation of fraud or mistake under Rule 9(b) is subject to the liberal amendment provisions of Federal Rule 15."  Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1300, at 264-65 (2004).

1.      **Rule 9(b) does not apply to this Attorney General action under the Arizona Consumer Fraud Act**

Defendants' argument presumes that Attorney General actions under the Arizona Consumer Fraud Act fall within the scope of Rule 9(b). They do not. The statutory consumer fraud actions that the Act authorizes the Arizona Attorney General to bring are not the type of "fraud" or "mistake" contemplated by the Rule. Under Arizona law, "elements of a claim for relief under the Consumer Fraud Act are not necessarily identical to the elements of a common law fraud action. A violation of the Act is more easily shown." *See Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978); *Murry v. Western Am. Mortgage Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979) ("[t]he elements of a claim for relief [under the Consumer Fraud Act] are not necessarily identical to those of a common law fraud action.") (citing *Peery*, 585 P.2d at 577).

Defendants cite two Arizona cases which, they say, place it "beyond dispute that '[t]he particularity requirement of Rule 9(b) applies to AFCA claims.'" Def. Mem. at 24 (quoting *Beshears v. Provident Life & Accident Ins. Co.*, 2007 U.S. Dist. LEXIS 35947 (D. Ariz. 2007) (citing *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 643-44 (D. Ariz. 2001)). In fact, the cases place the matter *in dispute*. In each, the courts applied Rule 9(b) to *private* actions under the Consumer Fraud Act and not government actions. The standards for a government consumer protection case are more relaxed. The Attorney General need not prove the common law fraud elements in order to establish a violation of the Act. "Reliance or actual deception or damage is not a prerequisite to a consumer fraud action brought by the attorney general." A.R.S. 44-1522(A). *See also State ex rel. Babbitt v. Green Acres Trust*, 618 P.2d 1086, 1094 (Ariz. Ct. App. 1980). For this reason, Arizona attorney general consumer fraud claims do not fall within Rule 9(b).

This is consistent with court interpretations of Rule 9(b) and the Federal Trade Commission Act, 15 U.S.C. § 41-57 ("FTCA"), the Consumer Fraud Act's federal counterpart. The Arizona Act was patterned in large part after the FTCA. *State ex rel. Babbitt v. Green Acres Trust*, 618 P.2d at 1090. The Act permits courts to "use as a guide [for interpreting the Act] interpretations given by the federal trade commission and the federal courts" of the Federal Trade Commission Act. A.R.S. § 44-1522(c); *State ex rel. Babbitt v. Green Acres*, 618 P.2d at 1092. Federal courts consistently distinguish section 5 of the FTCA from common law fraud claims and hold that Rule 9(b) does not apply to such claims. *See, e.g.*, *FTC v. Freedom Commc'n, Inc.*, 401 F.3d 1192, 1204 (10th Cir. 2005) (explaining that "[a] § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)" and Rule 9(b) thus does not apply). As with Arizona court interpretations of the Arizona Consumer Fraud Act, federal courts have held that the FTCA is "not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public and to obtain redress on behalf of a large class of third-party consumers who purchased defendants' products and services over an extended long period of time," and that under the statute the FTC did not need to prove scienter, reliance or injury to establish a violation. *Id*. Thus, Rule 9(b) does not apply. *See also FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 314-15 (S.D.N.Y. 2008) (citing numerous FTC cases where district courts held that actions brought by FTC for violations of Section 5(a) of the FTCA are not subject to the pleading requirements of Rule 9(b) because there is no scienter or reliance requirement). The same reasoning applies to the Consumer Fraud Act here.

### 2.      The Amended Complaint meets Rule 9(b) standards

Even if the Court determines that Rule 9(b) governs the claims in the Amended Complaint, it will not affect the outcome of Defendants' motions. The State's pleadings comply

with the Rule's requirements.  "The particularity requirement of Rule 9(b) requires claims for

fraud '"to be pled with sufficient specificity to allow a defendant an opportunity to defend

against the claim, rather than simply deny they have done anything wrong."'  *Williamson v.*

*Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001) (citations omitted).  Pursuant to Rule 9(b),

"in order for a complaint to allege fraud with the requisite particularity, a plaintiff must set forth

more than the neutral facts  necessary to identify the transaction. The plaintiff must set forth

what is false or misleading about a statement, and why it is false. In other words, the plaintiff

must set forth an explanation as to why the statement or omission complained of was false or

misleading."  *Id.* at 644-45 (citations omitted).

Arizona easily meets these standards with the Amended Complaint which provides a

detailed account about Defendants' fraudulent pricing scheme, the nature of the falsity of the

pricing, and the alternate pricing structure that made it false.  Defendants' arguments over the

history of the AWP litigation that *everyone* knew about the discrepancy between prices about

which the State now complains help prove the State's point.  The allegations are sufficient to

"allow a defendant an opportunity to defend against the claim, rather than simply deny they have

done anything wrong."  *Id.* at 644

### 3.  The Court's previous treatment of Rule 9(b) standards

The Court has discussed Fed. R. Civ. P. 9(b) at length in several of its prior AWP

litigation opinions.  *See*, *e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.* ("*In re AWP*"),

263 F. Supp. 2d 172, 194 (D. Mass. 2005); *In re AWP*, 307 F. Supp. 2d 196, 208-10 (D. Mass.

2003); *In re AWP*, 321 F. Supp. 2d 187, 207 (D. Mass. 2004) (relating to the Montana and

Nevada state AWP cases) ("*Montana/Nevada MTD Opinion*").

Defendants rely on *In re AWP*, 2007 U.S. Dist. LEXIS 26242 (D. Mass. Apr. 2, 2007)

("*New York Counties Case*") in which this Court recited a list of pleading requirements "to

satisfy the strictures of Rule 9(b)." *Id.* at *123-24.  The requirements and particularized

information concerning the spreads, which include "[t]he name of the specific plaintiff(s) that

purchased the drug," come from two MDL opinions *In re AWP*, 263 F. Supp. 2d at 194 and *In re*

*AWP*, 307 F. Supp. 2d at 209.  It would be unreasonable – and would not enhance the pleadings

– to require this type of specificity where a governmental entity is bringing the claims.  The

Court recognized this in authority Defendants' arguments ignore.  *Montana/Nevada MTD*

*Opinion*, 321 F. Supp. 2d 187.  There, this Court invoked its previous discussions of Rule 9(b)

and held:

> The States need not identify specific purchasers of the drugs to
> recover as *parens patriae*, so long as they allege that the drugs.
> with the allegedly fraudulent AWP's have been purchased by their
> residents.

*Id*. at 207.  Defendants' motion to dismiss was denied.  *Id*.  Arizona has met this still-reasonable

standard with its Amended Complaint.  ¶¶ 18-21.  The standard should be applied to reject

Defendants' argument that Rule 9(b) requires names of Arizonans affected.

Defendants also have particularized information concerning the spreads.  What

Defendants describe as a "smattering of spreads" is actually very specific information concerning

many of the Subject Drugs.  The State has provided extensive information covering, in most

instances, several years of fraudulent AWPs.  *See* Amended Complaint, Appendices A-C.  These

Appendices are in a format identical to that submitted in at least two other lawsuits whose

complaints were sustained against motion to dismiss challenges.  *Montana/Nevada MTD*

*Opinion*, 321 F. Supp. 2d at 207.  In addition, the Amended Complaint provides specific

information concerning the average sales price for dozens of drugs.  *See*, *e.g.*, ¶¶ 178, 184-86,

(Abbott), ¶¶ 203, 216 (Amgen), ¶¶ 238, 240 (AstraZeneca), ¶¶ 254, 256, 263 (Aventis), ¶¶ 272,

274, 275 (Baxter); ¶¶ 287 (Bayer); ¶¶ 306, 308 (Boehringer); ¶¶ 309 (Braun); ¶¶ 333, 336, 342

- 29 -

(BMS); ¶¶ 354, 360-62 (Dey); ¶¶ 373, 375 (Dey); ¶¶ 386, 388 (Immunex); ¶¶ 420, 426-27

(Pharmacia); ¶¶ 438, 441-42, 445 (Schering-Plough Warrick); ¶ 462, 469, 471 (Sicor); ¶¶ 502,

504 (Watson).  *See also* ¶¶ 510-12 (specific examples of damage caused by specific Schering

Plough Warrick spreads).

    Moreover, the average sales price information that Defendants complain the Amended

Complaint does not provide is in Defendants' possession.  Requiring precise identification of

such information at this stage would create a difficult and unnecessary hurdle.  The data will be

developed through discovery and expert modeling during the course of the case.

    The State has met 9(b) and the specific standards outlined by this Court in previous AWP

cases.  Defendants' motion on the basis of particularity should be denied.[15]

### IV.    CONCLUSION

    For the reasons stated above, the State of Arizona requests that Defendants' motions to

dismiss be denied.


Dated:  December 12, 2008

                                    By_____/s/ Steve W. Berman_____
                                        Thomas M. Sobol (BBO#471770)
                                        Edward Notargiacomo (BBO#567636)
                                    Hagens Berman Sobol Shapiro LLP
                                    One Main Street, 4th Floor
                                    Cambridge, MA  02142
                                    Telephone: (617) 482-3700
                                    Facsimile: (617) 482-3003

---

[15] If the Court is inclined to grant Defendants' motion on this basis, however, the State requests an opportunity
to amend the data provided for subject drugs.

- 30 -

Steve W. Berman
Sean R. Matt
Jeniphr Breckenridge
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Robert B. Carey
Hagens Berman Sobol Shapiro LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012

Terry Goddard
Attorney General
Ann Thompson Uglietta
Assistant Attorney General
State Bar No. 013696
Consumer Protection and Advocacy Section
1275 West Washington
Phoenix, AZ  85007-2997
Telephone:  (602) 542-8830
Facsimile:  (602) 542-4377

Grant Woods PC
1726 N. Seventh Street
Phoenix, AZ  85006
Telephone:  (602) 258-2599

Attorneys for the State of Arizona

001534-14  276881 V1

## CERTIFICATE OF SERVICE

I, Steve W. Berman, hereby certify that a true and correct copy of the above document was served on the attorney of record for each party via the Court's electronic filing system this 12th day of December, 2008.

By_____/s/ Steve W. Berman_____
  Steve W. Berman
  **HAGENS BERMAN SOBOL SHAPIRO LLP**
  1301 Fifth Avenue, Suite 2900
  Seattle, WA  98101
  (206) 623-7292

- 32 -

001534-14  276881 V1