UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: *State of Arizona v. Abbott Labs., Inc., et al.*,     Subcategory Docket No. 1:06-CV-11069-PBS | |

**THE STATE OF ARIZONA'S OPPOSITION TO DEFENDANTS ASTRAZENECA
PHARMACEUTICALS LP AND ZENECA INC.'S MOTION TO DISMISS ZOLADEX**

Defendants AstraZeneca Pharmaceuticals LP and Zeneca Inc. (collectively "AstraZeneca") move separately to dismiss all claims against AstraZeneca relating to payments for Zoladex (goserline acetate) only.[1]  AstraZeneca argues that the State's Zoladex-based claims must be dismissed because the claims are untimely and "implausible."  The claims are "implausible," AstraZeneca says, because from at least 2001, the State had "knowledge" of AstraZeneca pricing and marketing activities related to Zoladex, conduct that this Court has found unfair and deceptive.  *In re Pharm. Indus. Average Wholesale Price Litig.¸* 491 F. Supp. 2d 20, 31 (D. Mass. 2007) ("*Trial Opinion*").  To the contrary, the claims are timely; the statute of limitations AstraZeneca raises as a bar does not apply to the State.  Further, AstraZeneca's novel argument that the claims are "implausible" because of State knowledge is nothing more than a veiled effort to raise and resolve a fact question on a Rule 12(b)(6) motion.  There is no legal support for the theory and it is improper at this stage of the proceedings.

---

[1] AstraZeneca also joined in Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defendants' Motion to Dismiss") (Dkt. No. 5598).  The State addresses Defendants' Motion to Dismiss arguments in its separately filed Opposition to Defendants' Motion to Dismiss.

The State has sufficiently alleged its claims against AstraZeneca related to Zoladex. The motion to dismiss should be denied in its entirety.

## I.     BACKGROUND

The State alleges that AstraZeneca violated the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*, repeatedly by reporting false and inflated average wholesale prices for Zoladex which grossly exceeded actual physician costs by large margins, and then marketing the spreads between the physician's acquisition costs and the AWP reimbursement benchmark in order to induce doctor's to buy Zoladex based on the drug's profitability rather than the drug's therapeutic qualities. ¶¶ 239-42, 513-22.[2] The Attorney General charges that this conduct is unfair and deceptive and thus violates the Consumer Fraud Act. ¶¶ 516-17. In connection with these claims, the State seeks civil penalties and injunctive relief on behalf of itself, ¶¶ 18-21, 519, 522(D), and restitution and disgorgement of profits on behalf of its citizens, ¶¶ 18-21, 522(E). The State does not bring claims on behalf of any State agency, including Arizona's Medicaid program.

AstraZeneca's conduct related to Zoladex was one subject of the MDL class bench trial. This Court found that AstraZeneca's conduct was unfair and deceptive pursuant to Massachusetts's similar consumer fraud statute. *Trial Opinion*, 491 F. Supp. 2d at 31. The Court referred to a "perfect storm of information" in 2001, but that storm settled over certain federal government entities. *Id*. at 41. Arizona alleges it had no knowledge of Defendants' AWP scheme generally or AstraZeneca's conduct specifically.

---

[2] The Amended Complaint also asserts claims against AstraZeneca for similar conduct in connection with other AstraZeneca drugs (Zestril, Zomig, Entocort, Nexium, Prilosec, Pulmicort and Rhonocort), but AstraZeneca has not moved separately to dismiss these claims. All references to "¶ __" cited in the State's Opposition are to the First Amended Complaint (Dkt. No. 3840) ("Amended Complaint").

In December 2001, a class action lawsuit was filed in this district on behalf of payors nationwide. *Citizens for Consumer Justice* Complaint (filed Dec. 19, 2001) (Dkt. No. 1).  There is no evidence that Arizona participated in the lawsuit nor had knowledge of any of its filing. The Court allowed the class period in the class case to extend until the passage of the Medicaid Modernization Act of 2003, a date the State accepts here. *Trial Opinion*, 491 F. Supp. 2d at 44.

In September 2003, the Arizona Attorney General entered into a Settlement Agreement and Release with AstraZeneca related to Zoladex. *See* Settlement Agreement and Release (dated September 4, 2003) (attached as Exhibit A to the Schmeckpeper Declaration in Support of AstraZeneca Motion to Dismiss (Dkt. No. 5604)) ("Settlement Agreement").  The Settlement Agreement was limited in scope to claims on behalf of the State's Medicaid program. *See* Settlement Agreement, *in passim*.  Defendant Zeneca agreed to plead guilty to criminal charges, namely a conspiracy to violate the Prescription Drug Marketing Act, 21 U.S.C. §§ 333(b), 331(t). Settlement Agreement at § II.C.  The conduct covered by the settlement included Zeneca's provision of free samples to physicians, intending the physicians to bill Medicaid for the samples; the payment of illegal remuneration to physicians; illegal price-setting via AWP; and underpayment of rebates. *Id*. at § II.F.  The covered conduct related to Zoladex only and Arizona Medicaid only.  The money AstraZeneca paid was explicitly designated for "alleged injury to the Medicaid program for the state of Arizona." *Id*. at § III.C.  Arizona Medicaid released Medicaid-related claims only. *Id.* at § III.E.2.  Consumer Fraud Act claims were not released.  Zeneca expressly acknowledged "that the State of Arizona does not have the authority to release Zeneca from any claims or actions which may be asserted by private payors or insurers...." *Id*. at § III.E.4.  Moreover, the parties agreed that conduct occurring after the

signing of the agreement would not be released.  *Id.* at § III.E.6.  Zeneca expressly denied all allegations other than the criminal claims to which it pled guilty.  *Id*. at § II.H.

There is no suggestion within the Settlement Agreement that the covered conduct may have affected any Arizona entity other than Medicaid or any Arizona citizen.[3]  Arizona alleges that it did not have knowledge.  And AstraZeneca offers no other evidence of Arizona "knowledge" of potential claims.

## II.      ARGUMENT

### A.      The State's Claims Related to Zoladex Are Timely

AstraZeneca argues that all Zoladex claims against AstraZeneca should be barred by the one-year statute of limitations that applies to claims brought under the Arizona Consumer Fraud Act.  AstraZeneca Mem. at 4-5.  AstraZeneca recognizes that "the statute of limitations does not run against the State under Arizona law," but urges the Court to adopt an exception for this case where, it says, the State asserts a claim that belongs to a "small and distinct" section of the public only.  *Id*. at 5.

This is a Zoladex remix of an identical argument Defendants jointly advance in the Defendants' Motion to Dismiss.  It fails for the identical reasons.  First, Arizona courts have repeatedly recognized that the State's exemption from the statute of limitations is formidable. *See*, *e.g.*, *Tucson Unified Sch. Dist. v. Owens-Corning Fiberglass Corp.*, 174 Ariz. 336, 339, 849 P.2d 790 (1993).  Defendants cite no opinion in which such an exception has been applied.  *See Trimble v. American Sav. Life Ins. Co.*, 152 Ariz. 548, 733 P.2d 1131 (Ariz. Ct. App. 1986); *In re Diamond Benefits Life Ins. Co.*, 184 Ariz. 94, 907 P.2d 63 (1995); *Warfield v. Gardner*, 346 F. Supp. 2d 1033 (D. Ariz. 2004).  The State is not aware of any.

---

[3] The covered conduct would not even have affected citizens who were Medicaid recipients because they do not and did not pay for their own prescriptions.

Second, the principal premise of the argument is inaccurate.  AstraZeneca, like the joint defendants, ignores the true scope and nature of the State's claims.  The Attorney General has brought claims on behalf of the State's interest in the economic health and welfare of the State and its citizens.  ¶¶ 18-21, 522(D).  It is an interest the Arizona legislature recognized by enacting the Consumer Fraud Act.  *See* A.R.S. § 44-1528 (authorizing the Attorney General to enforce the State's consumer protection laws); s*ee also State ex rel. Corbin v. United Energy Corp.*, 151 Ariz. 45, 725 P.2d 752 (Ariz. Ct. App. 1986) (attorney general consumer fraud action for statutory penalties).  The State seeks the civil penalties and injunctive relief authorized by statute in connection with these claims.  A.R.S. § 44-1531.  This does not constitute a "small and distinct" segment of the public.

Finally, as to the only aspect of the case AstraZeneca will recognize – the restitution on behalf of Arizona citizens – the drug manufacturer's presumptuous conclusion that this interest only represents a small and distinct segment of the population is misplaced here.  This conclusion cannot be drawn from the well-pled allegations of the Amended Complaint.  Adopting the conclusion would require evidence and analysis not available and inappropriate for consideration at the motion to dismiss stage.

For these reasons, the State's claims are timely and should not be dismissed.

**B.      State "Knowledge" of AstraZeneca's Unfair and Deceptive Conduct is Undemonstrated and Irrelevant at This Stage; the Claims Should Not Be Dismissed**

AstraZeneca's argument concerning the "plausibility" of "Zoladex Claims from 2001 forward" conjoins at least three different standards under the banner of "plausibility":  the Supreme Court's refinement of the Rule 12(b)(6) dismissal standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 929 (2007); a State knowledge defense; and a reiteration of the AstraZeneca's statute of limitations argument (which is itself a reiteration of

the joint defendants' statute of limitations argument).  The combination may be confusing, but one thing is clear:  none of the standards justifies dismissal of the State's Zoladex claims here.

AstraZeneca invokes the *Twombly* "plausible entitlement to relief" principle as a basis to dismiss the Zoladex claims.  But there is nothing in *Twombly* that expands the proper bases for a Rule 12(b)(6) analysis beyond a complaint, which is exactly what AstraZeneca's argument requires.  At the tip of each tine of AstraZeneca's so-called "plausibility" argument is the State's purported knowledge of AstraZeneca's unfair and deceptive conduct.  The question of State knowledge, however, requires a fact-driven inquiry inappropriate at the motion to dismiss stage. The introduction of the Settlement Agreement, which is beyond the Amended Complaint's allegations, apparently to demonstrate State knowledge, is an impropriety AstraZeneca leaves unexplained and unjustified.  Even if it were not, examining this "proof" of "knowledge" does not demonstrate that Arizona knew about AstraZeneca's practices giving rise to the claims here – civil penalties on behalf of the State and restitution on behalf of private citizens.  As discussed above, the Settlement Agreement, is strictly limited to AstraZeneca's criminal and unfair and deceptive actions in connection with the State's Medicaid program.  There is no suggestion of any conduct (or State knowledge) beyond this scope.  Most importantly, the State alleges it knew nothing.

AstraZeneca's invocation to a "perfect storm" of information in 2001 fares no better. The Court clearly was discussing information in the hands of federal government entities and then proceeded to analyze the spreading of the knowledge to other entities, specific large and small third-party payors.  *Trial Opinion*, 491 F. Supp. 2d at 41.  The analysis requires facts neither available nor appropriate for analysis at this stage of this action.  The fact that a class action complaint was filed in 2001, without State action or knowledge, that purported to bring

claims on behalf of Arizona individuals and payors, among others, for Zoladex-related conduct is a fact that has no place in evaluating whether to dismiss the State's claims (but does not prove anything even if it is considered).

Finally, it appears that AstraZeneca is attempting to use the purported knowledge to make another run at its flimsy statute of limitations argument  For the reasons discussed above and more fully in the State's opposition to defendants' joint motion to dismiss, under Arizona law, no statute of limitations applies to the State.  A.R.S. § 44.1510.  AstraZeneca has cited no case where a court has applied the exception AstraZeneca and the other defendants seek.  In fact, in the cases cited, the courts declined to create an exception.  *See*, *e.g.*, *Trimble v. American Sav. Life Ins. Co.*, 152 Ariz. 548, 733 P.2d 1131 (Ariz. Ct. App. 1986); *In re Diamond Benefits Life Ins. Co.*, 184 Ariz. 94, 907 P.2d 63 (1995).  *Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1047 (D. Ariz. 2004).  The claims are not barred here.

## III.   CONCLUSION

For the reasons stated above and stated more fully in the State's opposition to the defendants' joint motion to dismiss, the State of Arizona requests that AstraZeneca's motion to dismiss the Zoladex claims be denied in its entirety.


Dated:  December 12, 2008

By   **/s/ Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Jeniphr Breckenridge
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Robert B. Carey
Hagens Berman Sobol Shapiro LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone:  (602) 840-5900
Facsimile:  (602) 840-3012

Terry Goddard
Attorney General
Ann Thompson Uglietta
Assistant Attorney General
State Bar No. 013696
Consumer Protection and Advocacy Section
1275 West Washington
Phoenix, AZ  85007-2997
Telephone:  (602) 542-8830
Facsimile:  (602) 542-4377

Grant Woods PC
1726 N. Seventh Street
Phoenix, AZ  85006
Telephone:  (602) 258-2599

Attorneys for the State of Arizona

## <u>CERTIFICATE OF SERVICE</u>

I, Steve W. Berman, hereby certify that a true and correct copy of the above document was served on the attorney of record for each party via the Court's electronic filing system this 12th day of December, 2008.

By       **/s/ Steve W. Berman**

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
(206) 623-7292

001534-14  276990 V1