# Exhibit D

KELLEY DRYE & WARREN LLP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE: (212) 808-7697
EMAIL: mlorenzo@kelleydrye.com

August 13, 2008

**VIA E-MAIL AND REGULAR MAIL**

Mary Karen Maldonado, Esq.
Assistant Attorney General
State of Colorado Department of Law
1525 Sherman Street
Denver, CO 80203

Re:  *United States ex. rel. Ven-A-Care of the Florida Keys, Inc., et al.
v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS

Dear Ms. Maldonado:

As you are aware, this firm represents Defendants Dey, Inc., Dey L.P., Inc. and Dey, L.P. (collectively, "Dey") in the above-referenced action. You have requested that we "clarify" and "narrow" the subpoena *duces tecum* served by Dey in this action (the "Subpoena"). We are particularly interested in the documents set forth below. It is our belief that production of the following documents would satisfy our present needs with respect to this litigation. However, Dey reserves its rights to seek full compliance with the Subpoena.

**Request No. 1**:  State Plan Amendments, supporting materials, and correspondence with CMS/HCFA concerning section 4.19B.

**Request No. 2**:  Documents sufficient to show Colorado Medicaid's reimbursement methodology for prescription drugs throughout the relevant time period. It is our experience that such reimbursement methodologies may be found in one or more of the following sources:  Medicaid provider handbooks (*see* Request No. 23), State Plan Amendments (*see* Request No. 1), statutes, or regulations. We note that the current reimbursement methodology is in the regulation, 10 CO ADC 2505-10-8.850. MAC lists, however, are generally maintained separately by the Medicaid agency or its fiscal agent, but should be readily obtainable, as they are necessary to reimburse providers who submit claims to Colorado Medicaid. The manner in which MACs are calculated should also be information readily obtainable as state Medicaid agencies that use MACs tend to calculate and update MACs on an

NY01:KATZC:1300534.1

Mary Karen Maldonado, Esq.
August 13, 2008
Page Two

ongoing basis. Last, to the extent that Colorado's Medicaid reimbursement for the Subject Drugs includes HCPCS codes, please identify those codes and the manner in which they have been calculated.

      **Request No. 3**: State Medicaid agencies were required to make certain finding and assurances pursuant to C.F.R. § 447.518, as well as retain supporting materials. We request that Colorado Medicaid produce any correspondence or other materials sent to CMS concerning C.F.R. § 447.518, along with any related back-up documentation maintained in your files.

      **Request No. 4**: At a minimum, the current claim forms (paper and electronic) used by pharmacy providers, along with the instructions on how to complete them should be readily available. We are also requesting historical claim forms.

      **Request Nos. 5 and 6**: Colorado, like many other States, purchases prescription drugs. For example, Colorado is a member of the Minnesota Multistate Contracting Alliance for Pharmacy, a group purchasing organization for State agencies that purchase drugs. We also have found that state corrections departments, education departments, health departments, among others, are the types of state agencies which have purchased prescription drugs. Additionally, insurance plans covering State employees may provide for reimbursement of prescription drugs. We have further found that State Medicaid agencies have compared the reimbursement or acquisition amounts of such agencies or plans with the Medicaid program's reimbursement amounts. These Requests seek documents evidencing the purchase of the Subject Drugs by Colorado, and the amounts at which the Subject Drugs were purchased or reimbursed, including any comparisons with Medicaid reimbursement amounts.

      **Request No. 7**: We have found that State Medicaid agencies routinely consider proposals to reduce reimbursement amounts for prescription drugs. We are seeking documents concerning such proposals. In particular, we would expect Colorado Medicaid to possess a number of memoranda, proposals, and other documents relating to Colorado Medicaid's change in its reimbursement methodology in or around 2002.

      **Request Nos. 8, 9, 11, and 15**: These Requests seek documents concerning how Colorado Medicaid set its reimbursement methodology, including the dispensing fee, along with proposals to change it. Some States have received and/or relied upon acquisition cost or dispensing cost studies or audit reports performed by the State itself, a third-party consultant, such as Myers & Stauffer, or the U.S. Department of Health and Human Services, Office of Inspector General ("HHS-OIG"). All such studies or audit reports in your possession should be produced. Likewise, any memoranda analyzing or summarizing acquisition costs or dispensing costs should also be produced. Additionally, we would expect a number of correspondence among State agencies, the legislature, and/or the Governor's Office regarding the setting and approval of reimbursement amounts and dispensing fees. In particular, we would expect there to

Mary Karen Maldonado, Esq.
August 13, 2008
Page Three

be a number of correspondence relating to Colorado Medicaid's change in reimbursement methodology in or around 2002.

Additionally, Patrick Lupinetti of the National Association of Medicaid Fraud Control Units ("NAMFCU") sent a letter to all State Medicaid programs on February 16, 2000 regarding the AWPs calculated by NAMFCU and the U.S. Department of Justice in or around 2000 the ("DOJ AWPs"). We believe there were additional correspondence with other state Medicaid agencies, NAMFCU and First DataBank relating to the DOJ AWPs, which we are requesting you to produce. Also, we would expect correspondence relating to Colorado's decision not to use the DOJ AWPs, as indicated in the HHS-OIG report, "Medicaid's Use of Revised Average Wholesale Prices," dated September 2001.

**Request No. 10**: This request seeks documents relating to what is sometimes referred to as "cross-subsidization," which means that the reimbursement for the provider's costs relating to acquisition of the drug (*i.e.*, the ingredient portion), subsidizes dispensing fees that do not adequately cover a provider's dispensing costs. This issue is frequently discussed in acquisition cost and dispensing cost studies, and the State Medicaid agency may have documentation, including correspondence, concerning the issue.

**Request No. 12**: We have discovered numerous federal and state reports and other documents that have stated that AWP exceeds the Actual Acquisition Costs of providers. Other documents, including the federal Medicare Modernization Act of 2003, defined WAC to exclude "prompt pay or other discounts, rebates or reductions in price." We are interested in seeing documents which show how Colorado Medicaid understood AWP, WAC, and other pricing terms for prescription drugs used in connection with the Medicaid program.

**Request No. 13**: The Request seeks communications regarding providers' acquisition and dispensing costs, AWP, and reimbursement methodologies used for reimbursement. We are particularly interested in communications between Colorado Medicaid and Ven-A-Care and the United States government (the plaintiffs in this action), other state agencies, and third-party publishes, including First DataBank, Red Book and Medi-Span.

**Request Nos. 14, 16, and 22**: To the extent these Requests are not already covered by other Requests, we will agree to limit their scope to communications with or regarding Dey and the Roxane Defendants and the cost of their prescription drugs.

**Request Nos. 17 and 20**: We are interested in testimony and statements regarding AWP, WAC, and the reimbursement methodology, including MACs and dispensing fees, used in connection with the reimbursement of prescription drugs under the Colorado Medicaid program. This Request does not include testimony and statements from actions or proceedings brought against a particular provider concerning allegations that the provider failed

NY01:KATZG/1300534.1

Mary Karen Maldonado, Esq.
August 13, 2008
Page Four

to comply with Colorado Medicaid's regulations or rules, unless such action or proceeding related to "usual and customary charge" (*see* Request No. 25).

      **Request No. 18**:  We are interested in the contract between the Publisher and Colorado Medicaid (or Colorado Medicaid's fiscal agent) or other documents sufficient to show the pricing data purchased by Colorado Medicaid (or Colorado Medicaid's fiscal agent).

      **Request Nos. 19 and 24**:  In 1990, Congress passed the Omnibus Budget Reconciliation Act of 1990, codified at 42 U.S.C. 1396r-8, which created the federal Medicaid rebate program. Drug Manufacturers have reported Average Manufacturer Price ("AMP") for each drug to CMS, formerly known as Health Care Financing Administration (HCFA), on a quarterly basis since the law took effect.  HCFA/CMS has sent the Unit Rebate Amount ("URA") for each drug to each Medicaid program on a quarterly basis, which was calculated based on the AMP (the URA for non-innovator, multiple-source drugs was 10% of AMP before 1994 and 11% of AMP thereafter).  All documents concerning Colorado Medicaid's use or examination of AMPs are responsive to these Requests.  Additionally, we are requesting the Medicaid Rebate files relating to Dey and the Roxane Defendants, which would include invoices sent to Dey and the Roxane Defendants and any correspondence received in response.

      **Request No. 21**:  This Request speaks for itself.

      **Request No. 23**:  We are interested in the Medicaid provider handbooks or manuals relating to reimbursement for prescription drugs.  These handbooks may not have been updated every year.  Some Medicaid agencies publish handbooks specifically for pharmacy Medicaid providers, which should be produced if they exist.

      **Request No. 25**:  The "usual and customary charge" is the price submitted by providers in their claim forms.  We are interested in any audits of pharmacy providers specifically covering such charges.  Additionally, we are interested in the definitions of or instructions or guidance regarding "usual and customary charge" throughout the relevant time period, which may be found in handbooks or regulations.  We note that the current definition is in the regulation, 10 CO ADC 2505-10-8.800.

Mary Karen Maldonado, Esq.
August 13, 2008
Page Five


   We are also in receipt of your letter of August 12, 2008 regarding the 30(b)(6) subpoena, and would like to set up a call to discuss both subpoenas after you have had a chance to review the foregoing.  Would you be available for a call at 5:00 eastern on Thursday or sometime Friday afternoon?


       Very truly yours,

       Marisa A. Lorenzo


cc:  John W. Reale, Esq.

NY01/KATZC/1300534.1