UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | MDL No. 1456 |
| ———————————————— | ) | Civil Action No. 01-12257-PBS |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | Hon. Patti Saris |
| | ) | |
| *United States of America ex rel. Ven-a-Care of* | ) | |
| *the Florida Keys, Inc., v. Abbott Laboratories,* | ) | |
| *Inc.,* | ) | |
| CIVIL ACTION NO. 06-11337-PBS | ) | |

**UNITED STATES' OBJECTIONS TO DECEMBER 4, 2008 ORDER BY MAGISTRATE
JUDGE BOWLER REGARDING THE
DEPOSITIONS OF DUANE BURNHAM AND THOMAS HODGSON**

**BACKGROUND**

The United States respectfully objects to a December 4, 2008 Order by Magistrate Judge

Bowler that limited the deposition testimony of two key Abbott witnesses to five written

questions each.  Beginning in June 2007, the United States has attempted to depose the two long-

retired Abbott Laboratories Inc. (Abbott) fact witnesses, Duane Burnham and Thomas Hodgson.

The rationale for taking the depositions of these two former Abbott employees is

straightforward.  Mr. Burnham was directly involved in crafting, approving and advocating

Abbott's corporate positions on Average Wholesale Price (AWP) and government drug

reimbursement.  Mr. Hodgson oversaw and approved the sales and marketing activities of the

Abbott's Hospital Products Division, the division that manufacturers the drugs at the heart of this

fraud suit.  The involvement of these witnesses is documented and has been testified to by the

long-time head of the Hospital Products Division.  Their testimony, especially as former high

level Abbott executives, has direct relevance to the company's scienter.

Abbott moved for a protective order to prevent the United States from deposing these important fact witnesses in September 2007, claiming the retired executives were entitled to protection from discovery as former apex corporate officials.  Docket # 4692.  On January 31, 2008, Magistrate Judge Bowler granted Abbott's motions for protective orders for these two witnesses on the premise that then-upcoming Rule 30(b)(6) depositions might prove an adequate substitute for the witnesses direct, personal knowledge of their roles in the conduct and decision-making at issue.  Judge Bowler indicated that the time that she thought the taking of these depositions was "premature," and  "I've given you the ability to renew, when you get all of the 30(b)(6) testimony and you feel you still want to pursue this, I'll entertain it."  Exhibit 1, January 31, 2008 Hearing Transcript at 119-124.

The United States objected to Judge Bowler's ruling.  See Docket # 5095.  This Court overruled that objection.  However, this Court also indicated that the taking of Mr. Burnham and Mr. Hodgson's depositions was likely warranted by the facts.  Exhibit 2, March 12, 2008 Electronic Endorsement re 5095.   As discussed below, the United States took the Rule 30(b)(6) depositions as ordered; the depositions proved completely inadequate insofar as eliciting factual testimony about Mr. Burnham and Mr. Hodgson's role, knowledge and participation in the conduct at issue.

As permitted by Judge Bowler's January 31, 2008 Order, the United States renewed its request to depose Mr. Hodgson and Mr. Burnham on March 31, 2008, after the completion of the Rule 30(b)(6) depositions.  Docket # 5179.  At a hearing held on December 4, 2008,[1] Judge

---

[1] The United States recognizes that these objections come late in the discovery process of the federal False Claims Act AWP cases.  However, the United States notes that it sought further consideration of the depositions of Mr. Burnham and Mr. Hodgson eight months before the

Bowler denied the United States' request to orally depose these fact witnesses, instead granting limited relief in the form of five written deposition questions.  Exhibit 3, December 4, 2008 Hearing Transcript at 95, 96.

The limitation to five written depositions is a severe departure from past practices in this case, where high level CMS officials, including former CMS administrators, with far less demonstrated knowledge of the matters in dispute have been subjected to multiple days of oral deposition.  The witnesses are retired and live within the United States; there is no compelling justification for the severe limits on questioning imposed by Judge Bowler's December 4, 2008 Order.  The United States respectfully submits that these two witnesses should be treated equally to other government and corporate executives who have testified in this case.

Judge Bowler's December 4, 2008 Order limiting the deposition of these witnesses to five written questions compromises the discovery of key factual information in this case – testimony that has been sought for almost 18 months now – and is contrary the law on discovery of involved former corporate executives, both within and without this district.  Pursuant to Fed R. Civ. P. 72(a) and Rule 2(b) of the Rules for United States Magistrates in the District of Massachusetts, the United States respectfully files its objections to Magistrate Judge Bowler's December 4, 2008 Order on the government's motion to compel these depositions.

## OBJECTIONS AND PROPOSED RELIEF

A magistrate judge's discovery ruling will be set aside if it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *In re Administrative Subpoena Blue Cross Blue*

_____

hearing was ultimately held on the request.

*Shield of Massachusetts*, 400 F.Supp.2d 386, 388 (D. Mass. 2005).  The United States contends

that Judge Bowler's December 4, 2008 Order is both clearly erroneous and contrary to the law.

The United States objects to the Order of Magistrate Judge Bowler as follows:

•  As noted in previous filings, these witnesses are not current Abbott apex employees.
   They are retirees who are not afforded the limited protection available to high level
   corporate executive witnesses.  Regardless, the law governing apex witnesses clearly
   allows for the depositions of apex executive witnesses, especially where a party has
   exhausted other discovery avenues and where the facts demonstrate that the deponent
   will have direct, personal or unique knowledge of the issues.  The role of these witnesses
   in this case is documented and has been corroborated by testimony.  There are no other
   discovery avenues to get to their demonstrated personal knowledge of the facts at issue in
   this case.

•  The Rule 30(b)(6) substitute testimony envisioned by Judge Bowler failed to provide any
   testimony about these two witnesses direct, personal knowledge of the matters at issue in
   this case.  The Abbott corporate designees completely failed to educate themselves about
   these witnesses' personal knowledge and involvement in the issues in this case. All
   reasonable means of alternative discovery of Mr. Burnham and Mr. Hodgson's
   knowledge and participation in the conduct at issue have been exhausted.

•  The Order denies the United States the right to depose important fact witnesses in this
   case and instead limits the United States to <u>five</u> written deposition questions each. While
   Order recognizes the need to question these witnesses, the severe limitations imposed by
   the Order are a departure from discovery practice in this case where high level former
   officials with personal knowledge and involvement in the subject matter of this case have
   been subject to extensive oral deposition.  A previous effort at a written deposition of an
   Abbott apex witness resulted in a lawyer-drafted response which did not constitute actual
   testimony.[2]

The United States respectfully asks that this Court overrule the Order and permit the

United States to orally depose these witnesses based on (1) their direct, personal and unique

knowledge of – and involvement in –  the conduct at issue and (2) the failure of alternative

discovery avenues to provide an adequate substitute for their testimony.  Although fact discovery

---

[2] *See*, Exhibit 10, Abbott Interrogatory Response Regarding Miles White Written
Deposition Responses (the answers to the deposition questions were drafted by "Miles White, in
conjunction with legal counsel").

is closed, there is almost six months left before summary judgment proceedings.  There is no prejudice to any party in allowing these long-sought – beginning in June 2007 – depositions to finally occur after the formal close of fact discovery.

The United States respectfully asks that should the Court grant the requested relief that it order the depositions to occur within 15 days of this Court's order.  Abbott and the witnesses have long been on notice of the United States intent to take these depositions, and there is no prejudice to Abbott or the witnesses if the deposition is scheduled promptly.

## PROCEDURAL HISTORY

The government first sought Mr. Hodgson's deposition in June 2007 and Mr. Burnham's deposition in July 2007.  Abbott filed a protective order motions to prevent these two depositions in August 2007.  *See* Docket # 4692.  In Abbott's briefing of the issues, they submitted "know nothing" affidavits from the witnesses and argued that the witnesses lacked personal, direct or unique knowledge of the issues in the case.  *See generally*, Exhibit 4, Burnham/Hodgson MPO Memorandum of Law, Exhibits B & C.[3]  Abbott further argued that the United States should be required to exhaust alternative means of discovery before being permitted to depose these fact witnesses; specifically, Abbott represented to the Court certain then-upcoming Rule 30(b)(6) witnesses would testify about these witnesses' personal knowledge of – and involvement in – the subject matter of this case.  *See* Exhibit 1,  January 31, 2008 Magistrate Hearing Transcript at 122.  It was expressly on this basis that Judge Bowler granted the motion. *Id.*

---

[3] For the sake of convenience, the United States has attached to these Objections the relevant briefs from plaintiffs and defendants in connection with prior protective order motion practice. The United States has only provided the exhibits to those briefs cited herein, not all of the exhibits provided with the briefs.

Judge Bowler left open the opportunity to pursue the depositions at a future date. *See Id.* at 122 ("I've given you the ability to renew, when you get all of the 30(b)(6) testimony and you feel you still want to pursue this, I'll entertain it.").  The United States took those Rule 30(b)(6) depositions and, as discussed below, those depositions did not come remotely close to addressing Mr. Burnham and Mr. Hodgson's documented, direct role in the conduct at issue. The Rule 30(b)(6) witnesses frankly admitted that they either did not know enough or prepare themselves to answer questions regarding Mr. Hodgson or Mr. Burnham.

On March 31, 2008, the United States renewed its request to depose Mr. Burnham and Mr. Hodgson based on the failure of the Rule 30(b)(6) depositions to satisfy the need for Mr. Burnham and Mr. Hodgson's deposition.  *See* Docket # 5179.  On December 4, 2008, Judge Bowler held a hearing on the motion and denied the United States request to take an oral deposition of Mr. Burnham and Mr. Hodgson, and instead limited the United States to <u>five</u> written questions of these witnesses.  The United States now objects to that ruling.  Exhibit 3, December 4, 2008 Hearing Transcript at 95-96.

## FACTUAL BACKGROUND

As discussed below, the law on the taking of "apex" depositions is clear – if there are facts establishing that an apex witness has direct, unique or personal knowledge of the issues in a case, a party can depose that witness without having to seeking that information through alternative means.  There is a clear factual and documentary record establishing that these witnesses possess direct, personal and  unique knowledge of the events and issues in this case.  Those facts and the related documents are set forth laid out in detail in the oppositions to

6

Abbott's motion for a protective order for these two witnesses (attached hereto Exhibit 5) and summarized below.

### I.      Duane Burnham

Duane Burnham, Abbott's former chief executive officer (CEO) and chairman of the board, has been retired from Abbott since 1999.  Exhibit 4, Burnham/Hodgson MPO, Exhibit B, ¶ 1.  He is not currently employed on a full time basis; he works as a trustee for two organizations.  *Id.* at ¶ 7.

Mr. Burnham has direct, documented involvement in the conduct at issue in this case, including the formulation, approval and advocacy of Abbott's corporate position on AWP and government reimbursement; the government will not repeat the extensive factual record in this brief, but refers the Court to previous briefs on this issue. *See* Exhibit 5, Opposition to Burnham/Hodgson MPO at 3-9.  For example, Mr. Burnham was asked to, and did, lead the fight for Abbott against a 1997 Senate bill on AWP.  On June 30, 1997, David Landsidle, Abbott's Washington-based lobbyist, wrote a memorandum to Mr. Burnham explaining why and how Mr. Burnham should lobby against the Senate bill on Medicare drug reimbursement. Mr. Landsidle wrote:

> The House and the Senate have passed different changes to how Medicare reimburses for drugs (i.e., Lupron and Calcijex).  The basic change is that future reimbursement will be 95% of average wholesale price (AWP) rather than AWP. However, the Senate bill has additional language we oppose.
>
> . . . The Senate bill calls on the Secretary of HHS to do a study of AWP and report back to Congress within 6 months. *This gets HHS looking at prices.* The House bill has no such language.
>
> . . . Your message to both [Congressmen] is simple:

>   Abbott thinks the house language providing for Medicare reimbursement of drugs
>   at 95% of AWP . . . is much better than the Senate language.

Exhibit 5, Opposition to Burnham/Hodgson MPO, Attachment 8, June 30, 1997 Memorandum

from D. Landsidle to D. Burnham (emphasis added). Mr. Landsidle could not have been any

clearer; Mr. Burnham was going to – and ultimately did – guide members of Congress to push

for the adoption of the House bill (which set reimbursement at 95% of AWP with no HHS

survey of actual prices) over the Senate bill. Mr. Burnham's goal was to prevent HHS from

having the statutory mandate to survey Abbott's actual transaction prices to set appropriate

reimbursement levels.

   The United States is entitled to discovery into how and why Mr. Burnham, Abbott's

former CEO, *personally* sought to prevent HHS from having access to actual acquisition cost

information in setting drug reimbursement levels. To the United States' knowledge, Mr.

Burnham has not been deposed in any AWP cases, therefore there is no other method of

conducting discovery of his knowledge and involvement in the events of this case without taking

this deposition.

   ## II.     Thomas Hodgson

   There are two independent and powerful bases weighing in favor of Mr. Hodgson's

deposition.[4] First, Mr. Hodgson was directly responsible for the review and approval of

marketing, business or sales plans for Abbott divisions, including the division whose conduct is

at issue in this case. *See* Exhibit 5, Attachment 12, Donald Robertson Deposition at 90-92; *see*

---

   [4] The factual basis for taking Mr. Hodgson's deposition was laid out By the United States
in detail prior pleadings. A more detailed summary of the facts can be found on pages 9-11 of
Exhibit 4.

*also* Exhibit 6, Gonzalez Deposition transcript at 26 (former head of HPD testifying about reporting to Mr. Hodgson during the course of his work duties).  Second, Mr. Hodgson has testified twice in AWP cases, demonstrating knowledge and corporate insight into AWP, the spread and government reimbursement issues.[5]  *See* Exhibit 5, Opposition to Burnham/Hodgson at 9-11, Attachments 10 and 11.  During those 2004 depositions, he was not asked specifically about AWP and the drugs and divisions at issue in this particular case, thus warranting additional deposition testimony.

### III.    The Rule 30(b)(6) Testimony

In the January 31, 2008 Order upheld by the Court,  Judge Bowler indicated that certain Rule 30(b)(6) depositions take place first before deciding whether Mr. Burnham or Mr. Hodgson's depositions would be necessary.  As briefly discussed below, the Rule 30(b)(6) depositions proved to be an insufficient proxy for Mr. Burnham and Mr. Hodgson's direct testimony about their knowledge and conduct on the matter at issue, subject matters that cannot be addressed by five written depositions recently ordered by Judge Bowler.

**Cynthia B. Sensibaugh**.  Abbott designated Ms. Sensibaugh as a Rule 30(b)(6) on various lobbying topics, including Mr. Burnham's efforts to shape the 1997 Balanced Budget Act.  Various proposals in connection with that legislative activity included permitting HHS to use actual acquisition prices to set reimbursements and/or giving HHS the discretion to set reimbursement as appropriate.  Mr. Burnham personally led the effort to block AWP reforms that would have granted HHS from having access to Abbott's actual acquisition cost

---

[5] He testified over two days in both in his individual capacity and a corporate Rule 30(b)(6) designee on behalf of Abbott.

information.  This testimony is critical in that it addresses Abbott's defenses rooted in government knowledge and approval, and it develops evidence of Abbott's corporate scienter.

Ms. Sensibaugh  could not testify about these activities.  Indeed, Abbott counsel objected to all questions regarding Mr. Burnham and Mr. Hodgson's involvement in these events as "beyond the scope" of the witnesses authorization to testify as a Rule 30(b)(6) witness offered as a proxy for their testimony on the topic:

| | |
|---|---|
| Q. | But sitting here today, is it basically your testimony that you can't tell me who specifically, whether it's one or more persons, authorized Abbott's taking the position that Medicare drug reimbursement should be at 95 percent of AWP with no discretion to the Secretary, at least as set forth in 1997? |
| MS. TABACCHI: | Object to the form. Beyond the scope. |
| THE WITNESS: | That is correct. |
| BY MR. GOBENA: | And if I wanted to find out whether Mr. Burnham was involved in the decision-making process with regard to Abbott's position on the Medicare drug reimbursement issue, I would have to talk to Mr. Burnham; isn't that correct? |
| MS. TABACCHI: | Object to the form. Beyond the scope. |
| THE WITNESS: | I think you would be able to consult his affidavit where he talks about that he wasn't involved in the day-to-day activities. |
| BY MR. GOBENA: | I understand you're talking about an affidavit that was drafted on his behalf, but – you're not pointing to deposition testimony. But, if I wanted to get down to specifics, I would have to talk to him; isn't that correct? |
| MS. TABACCHI: | Object to the form. Beyond the scope. |
| THE WITNESS: | I mean, again, I think he makes it clear in his affidavit. |

Exhibit 7, Cynthia Sensibaugh Rule 30(b)(6) Deposition Transcript at 103-104.  The witness was

unprepared to testify about Mr. Burnham's well-documented role in directing and participating

in forming and advocating Abbott's position on government drug reimbursement policies.  All

Ms. Sensibaugh could do was to point to the three page know-nothing affidavit filed on Mr.

Burnham's behalf by his counsel.  Abbott claimed the questioning was beyond the scope of what

the witness was authorized to testify about on behalf of the company; however, it was Abbott

that offered her as a substitute for Mr. Burnham's knowledge on this very issue.

Further, as detailed in previous briefing, Mr. Burnham was personally involved in the

fight in 1997 to prevent HHS having increased discretion over Medicare drug reimbursements.

Ms. Sensibaugh was completely unable to provide testimony on these efforts:

| | |
|---|---|
| Q. | Mr. Burnham did lobby with respect to the Medicare drug reimbursement issue in 1997; isn't that correct? |
| MS. TABACCHI: | Objection as beyond the scope. |
| THE WITNESS: | It looks like – from this letter, it says there was a call with Congressman Archer where they discussed this issue. |
| BY MR. GOBENA: | You don't – well, strike that. Did you personally participate in the call that's reflected in the August 5 letter from Mr. Burnham to Mr. Archer about the Medicare drug reimbursement issue? |
| MS. TABACCHI: | Objection as beyond the scope. |
| THE WITNESS: | No, I don't remember participating in any call. |
| BY MR. GOBENA: | Do you know whether Mr. Landsidle participated in that call between Mr. Burnham and Mr. Archer in 1997 about the Medicare drug reimbursement issue? |
| MS. TABACCHI: | The same objection. |
| THE WITNESS: | No, I don't know. |

BY MR. GOBENA:    Isn't it fair to say that the only way to find out what was actually said in that call with Mr. Burnham and Mr. Archer is to talk to Mr. Burnham about that call? Isn't that true?

MS. TABACCHI:    Objection. Beyond the scope.

THE WITNESS:    Well, again, I would refer to his affidavit where he says he doesn't have any recollection.

                                    ***

Q.    And if Mr. Burnham was being asked to lobby on a particular legislative issue or development, it was because that was an important legislative development; isn't that correct?

MS. TABACCHI:    Objection. Beyond the scope.

THE WITNESS:    Yes, or one where they thought his expertise and knowledge would be important to share.

BY MR. GOBENA:    Do you believe, then, that one of the reasons why Mr. Burnham was being asked to lobby on the Medicare drug reimbursement issue is because he had some important expertise or knowledge that might help advance Abbott's position on the – with respect to the House version of the Medicare drug bill?

MS. TABACCHI:    Objection. Beyond the scope.

THE WITNESS:    Yes, I don't know – you know it's not clear the particular reason here.

BY MR. GOBENA:    So, it could be either that he has expertise or it could be that it's important. But that's – generally, those are the two scenarios where Mr. Burnham would be asked to weigh in on Abbott's lobbying efforts on a legislative development, correct?

MS. TABACCHI:    Object. Beyond the scope.

THE WITNESS:    I would say those could be two, I mean, there could be possibly others you could probably think of.

*Id*. at 121-122, 127.  The issue was important enough for Mr. Burnham to directly engage in efforts to defeat AWP reform efforts, but he now refuses to provide testimony about these efforts in the context of an AWP fraud case regarding claims arising during his tenure as CEO.  This Rule 30(b)(6) witness did not prepare by meeting with Mr. Burnham and discussing with him the documentary record of his involvement in these matters; instead, she relied on Mr. Burnham's know-nothing declaration that lacks credibility in light of the evidentiary record.

**Michael Sellers**.  Abbott offered Mr. Sellers as a Rule 30(b)(6) witness on a variety of topics, including (1) how Abbott determined the prices it reported to the compendia relied upon by the government to set drug reimbursement levels and (2) Abbott Hospital Products Division's sales and marketing activities.  He was completely unprepared to testify about Mr. Hodgson or Mr. Burnham's knowledge or involvement in the issues in this case.

| | |
|---|---|
| Q. | Okay. In prepping for today's deposition, did you do any inquiry to find out what the involvement was of Tom Hodgson in any of the topics that are at issue in today's deposition? |
| MS. TABACCHI: | Object to form. |
| THE WITNESS: | No. |
| Q. | What about Duane Burnham? |
| A. | No. |
| Q. | That was the same question with regards to Duane Burnham. You didn't research anything with regard to Mr. Burnham's involvement with regard to any of those subject matters on the topics at issue today? |
| MS. TABACCHI: | Object to form. |

THE WITNESS:        No. I did not.

Exhibit 8, Michael Sellers Rule 30(b)(6) Deposition Transcript at 37-38.

**David Fishman**.  Abbott offered Mr. Fishman as a Rule 30(b)(6) witness on corporate

compliance matters.  He did not prepare himself in any way to discuss Mr. Burnham or Mr.

Hodgson's knowledge on this subject matter area.

> Q.            Okay. Did you do anything to research what Mr. Hodgson
>               or Mr. Burnham's role was in compliance matters at any
>               time from '91 through 2003?
>
> A.            Neither of them would have been there that long, but in the
>               period they were there, no.

Exhibit 9, David Fishman Rule 30(b)(6) Deposition Transcript at 217.

***

Abbott assured the Court, Judge Bowler, and the United States that these witnesses

would provide substitute testimony sufficient to obviate the need for testimony about (1) Mr.

Burnham's and Mr. Hodgson's knowledge and approval of Abbott's pricing conduct and (2)

their personal involvement on Medicare drug reimbursement issues and the sales and marketing

of the drugs at issue.  As is plainly evident from the testimony cited above, none of the witnesses

proved to be an adequate substitute for Mr. Burnham and Mr. Hodgson's testimony on these

matter regarding their documented, direct role in the issues in the case.

**ARGUMENT**

**I.     Mr. Burnham and Mr. Hodgson Are Not An Apex Witnesses and Should Not
        Be Shielded from Being Deposed.**

Mr. Burnham and Mr. Hodgson are fact witnesses that are retired from Abbott. They are not currently high level corporate officers at Abbott or elsewhere. There is no case law to suggest that protections afforded current high level apex witnesses – whether government or corporate – apply to corporate retirees.[6] *Cf. State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 608 (Mo. 2002) (court concludes that arguments for apex protection of executive were moot in light of his retirement). Considerations such as harassment or business disruption that normally inform a court's decision making regarding the permissibility of apex depositions do not apply to retired executives. *See generally*, *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001). Indeed, broadening apex protections to block the depositions of a long retired corporate executive would be inconsistent with the well recognized notion that notwithstanding the protections that may be afforded an apex witness, "it is very unusual . . . for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances, as such an order would likely be in error." *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567 (S.D. Ca. April 6, 2007) at *2.

Even if the Court were to afford the two Abbott retirees apex status, their depositions should be permitted. The United States "may obtain discovery regarding any matter, not

---

[6] In its protective order briefings, Abbott has contended that apex witness protection does apply to all retired senior corporate executives, citing *In re Ski Train Fire of November 11, 2000*, 2006 WL 1328259 (S.D.N.Y. May 16, 2006) and the *WebSideStory* case noted immediately above. These cases are easily distinguishable and do not stand for that extraordinarily broad proposition. In *In re Ski Train Fire*, the only apex witness in that case remotely analogous to the retired executive in this litigation was the "recently" retired CEO of the defendant, who still continued as the chairman of its board of directors. The deponent in the *WebSideStory* case was also a current chairman of the board who had retired from his CEO position at the plaintiff corporation. The court in *WebSideStory* considered the deponent an apex witness was because he (1) continued to be a top executive for the plaintiff corporation and (2) was also the CEO and chairman of the board of a new company. 2007 WL 1120567 at *3. None of the retired Abbott executives hold any top corporate positions at Abbott or elsewhere.

privileged, that is relevant to [a] claim or defense," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).  Further, "[h]ighly-placed executives are not immune from discovery[, and] 'the fact that [an executive] has a busy schedule'" does not exempt them from being deposed. *Consolidated Rail Corp. v. Primary Industries Corp*., No. 92 Civ. 4927, 1993 WL 364471, at * 1 (S.D.N.Y. Sept. 10, 1993) (*quoting CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984)). "Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case."  *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002).

　　　"When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."  2007 WL 1120567 at *2; *see also, Travelers Rental Co., Inc. v. Ford Motor Company*, 116 F.R.D. 140 (D. Mass 1981);  *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp*., 203 F.R.D. 98 (S.D.N.Y. 2001) (deposition of high-level corporate officials permitted when officials have some unique or superior knowledge of the issues in the case. ).  That sentiment is echoed in the *In re Ski Train Fire of November 11, 2000* decision as well, which noted that courts allow apex depositions where "they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action."  2006 WL 1328259 (S.D.N.Y. May 16, 2006) at *10.   Mr. Burnham and Mr. Hodgson have personal knowledge relevant to the lawsuit and should therefore be subject to deposition.

Judge Bowler's December 4, 2008 Order prohibited the taking of Mr. Burnham and Mr. Hodgson's oral deposition.  By limiting their deposition to five written questions, the Order effectively prevents full discovery on a number of issues about which Mr. Burnham and Mr. Hodgson are involved or knowledgeable.

## II.   The Witnesses Have Failed to Meet Their Burden to Show That Protection From Being Deposed Is Warranted.

It is the burden of the party seeking protection from discovery order to prove that an apex official does not possess information relevant to the issues in the case or that his knowledge of particular issues in a case is completely duplicative of other witnesses. *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002); *First United Methodist Church of San Jose v. Atlantic Mutual Ins. Co.*, 1995 WL 566026 at (N.D.Cal. 1995) (movant seeking to block high level executive deposition carries heavy burden to show lack of first hand knowledge of the facts of a case).

Abbott has sought protection for Mr. Burnham and Mr. Hodgson  from oral discovery protection on two bases.  First, Abbott provided "know nothing" declarations for the witnesses, claiming that they had no unique or superior knowledge on the issues in this litigation.  The declarations are not credible, and are vague, conclusory and wholly insufficient to support a motion for a protective order.  Exhibit 4, Attachments B & C (declarations of Duane Burnham and Thomas Hodgson); *see also Rolscreen Co. v. Pella Products of St. Louis Inc.*, 145 F.R.D. 92, 96 (S.D. Iowa 1992) ("party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.") (citations omitted.)

Regardless, in the *Travelers* case from this District, several high level Ford employees filed similar "know nothing" declarations in a failed attempt to evade being deposed.  *Id*. at 143. As that court noted, "[t]he plaintiff is entitled to 'test' the claim of lack of knowledge or lack of recollection by deposing the witness." *Id*. at 143, *citing  Amherst Leasing Corp. v. Emhart Corp*., 65 F.R.D. 121, 121-23 (D. Conn., 1974) (citations omitted).  *Travelers* further noted:

> [T]here is nothing in the law which would indicate that Travelers has to accept the claimed failures on their face or rely on whatever efforts Ford's counsel may have undertaken to refresh recollections.   Considering that Travelers has demonstrated that these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the deposition.

*Travelers*, 116 F.R.D. at 143; *see also Six West* 203 F.R.D. at 102. This reasoning is especially apt in the case of these witnesses, where the declarations submitted lack credibility in light of the documentary record.   The extensive documentary and evidentiary record contradicts the "know nothing" declarations filed with the protective order motions.  The United States will not be able to challenge these know nothing declarations if it is limited to five written questions.

Second, Abbott has argued, "[t]he case law uniformly instructs that, before a party is permitted to conduct an apex deposition, it must first pursue other avenues, such as (i) depositions of lower-level employees or corporate 30(b)(6) designees; or (ii) written discovery." *See, e.g.,* , Exhibit 3, Burnham/Hodgson  MPO at 11.  In lieu of the depositions of these witnesses, Abbott offered corporate Rule 30(b)(6) depositions.

Abbott is incorrect on whether exhaustion was necessary.  If a high-level corporate official is shown to possess knowledge of the facts and issues in the case, then the official's deposition is permitted.  *See Six West*, 203 F.R.D. at 105 (allowing deposition of apex witnesses where plaintiffs showed unique knowledge and there was not evidence the deposition was being

done merely for harassment).[7]   Regardless, as discussed above the proffered substitute testimony from Rule 30(b)(6) was completely inadequate.  All the proffered witnesses were uninformed about the knowledge and personal involvement of Mr. Burnham and Mr. Hodgson in the conduct at issue in this matter.  Further, Abbott objected to questions posed to the proffered Rule 30(b)(6) witnesses about Mr. Burnham and Mr. Hodgson as "beyond the scope" of the deposition.  The United States has tried to used alternative means to gather the evidence of these witnesses knowledge of and participation in the conduct at issue in this litigation; it has been unable to do so using the methods suggested by Abbott itself.

**CONCLUSION**

For the foregoing reasons, the United States requests that its objections to the Magistrate Judge's December 4, 2008 Order be sustained, and that the Court order the oral depositions of Duane Burnham and Thomas Hodgson in accordance with the protocols set forth in CMO 29. The United States further request that these witnesses be ordered to appear for deposition within 15 days of the Court's order.

---

[7] Both in *Six West* and in this case, the plaintiffs deposed numerous lower-level employees before the deposition of the apex witnesses and gave ample notice to the defendant. The *Six West* court found that those additional factors made the deposition of the apex witness with unique knowledge even more justified.  203 F.R.D. at 105.

Respectfully submitted,


For the United States of America,


MICHAEL J. SULLIVAN                      PETER D. KEISLER
UNITED STATES ATTORNEY                    ASSISTANT ATTORNEY GENERAL


 /s/ George B. Henderson, II              /s/ Gejaa T. Gobena
George B. Henderson, II                   Joyce R. Branda
Assistant U.S. Attorney                   Daniel R. Anderson
John Joseph Moakley U.S. Courthouse       Renée Brooker
Suite 9200, 1 Courthouse Way              Justin Draycott
Boston, MA 02210                          Rebecca Ford
(617) 748-3398                            Gejaa T. Gobena
(617) 748-3272                            Civil Division
                                          Commercial Litigation Branch
R. ALEXANDER ACOSTA                       P. O. Box 261
UNITED STATES ATTORNEY                     Ben Franklin Station
SOUTHERN DISTRICT OF FLORIDA              Washington, D.C.  20044
                                          Phone:  (202) 307-1088
/s/ Mark A. Lavine
Mark A. Lavine
Ana Maria Martinez
Ann St.Peter-Griffith
Special Attorneys for the Attorney General
99 N.E. 4th Street, 3rd Floor
Miami, FL  33132
Phone:  (305) 961-9003
Fax: (305) 536-4101



Dated: December 18, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused an electronic copy of the above **UNITED STATES' OBJECTIONS TO DECEMBER 4, 2008 ORDER BY MAGISTRATE JUDGE BOWLER REGARDING THE DEPOSITIONS OF DUANE BURNHAM AND THOMAS HODGSON** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                        /s/ Gejaa T. Gobena

Dated: December 18, 2008