# EXHIBIT 3

```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS



CITIZENS FOR CONSUME, et al   . CIVIL ACTION NO. 01-12257-PBS
  Plaintiffs                  .
                              .
         V.                   . BOSTON, MASSACHUSETTS
                              . DECEMBER 4, 2008
ABBOTT LABORATORIES, et al    .
  Defendants                  .
. . . . . . . . . . . . . . . .
             TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE MARIANNE B. BOWLER
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the United States:
Justin Draycott, Esquire, Anne St. Peter Griffith,
Esquire, United States Attorney's Office, 99 N.E. 4th
Street, Miami, FL 33132, 305-961-9000,
justin.draycott@usdoj.gov.

George B. Henderson, Esquire, United States Attorney's
Office, 1 Courthouse Way, Suite 9200, Boston, MA 02210,
617-748-3272, george.henderson2@usdoj.gov.

Gejaa T. Gobena, Esquire, United States Department of
Justice, 601 D Street NW, Patrick Henry Building, Room
9028, Washington, DC 20004, 202-307-1088,
gejaa.gobena@usdoj.gov.

For Abbott Labs.:
Jason Winchester, Esquire, Jones Day, 77 West Wacker
Drive, Chicago, IL 60601-1692, 312-782-3939.

Sarah Reid, Esquire, Kelley Drye & Warren LLP, 101 Park
Avenue, New York, NY 10178.

James R. Daly, Esquire, Jones, Day, Reavis & Pogue, 77
West Wacker Drive, Chicago, IL 60601-1692, 312-782-3939.

Court Reporter:
Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

                     MARYANN V. YOUNG
                  Certified Court Transcriber
                     Wrentham, MA  02093
                       (508) 384-2003
```

90

1  Judge.  First of all, we did not produce documents out of
2  time.  the Court extended the discovery period and our
3  documents were produced.  They can't come here today and tell
4  you who they want to depose.  They just want some blanket
5  authority to go and maybe re-depose people they've already had
6  or get some new people that they, but they can't tell you who
7  they are now.  So I think at best this is not right.
8         THE COURT:  No, I think unless you can be more
9  specific at this time it's too vague.  Denied.
10        MR. GOBENA:  All right.  Your Honor, the final issue
11 relates to the deposition of two former Abbott executives,
12 Dwayne Burnham and Thomas Hodson.  Dwayne Burnham was the
13 former CEO of Abbott and Thomas Hodson was the former chief
14 operating officer.  The reason why we want these depositions is
15 that these people have personal unique knowledge about the
16 issues in the case.
17        Let's start first with Mr. Burnham.  Mr. Burnham was
18 the CEO.  We have documents in evidence that we submitted in
19 previous briefings that establish that he was directly involved
20 in the formulation, approval and advocacy of Abbott's position
21 on AWP and government reimbursement policy.  He actually went
22 and interacted with Congress people about reimbursement issues.
23 He was consulted by his subordinates about what Abbott's
24 position was ultimately going to be on AWP and government
25 reimbursement.  And why that's important is that there's some

*MARYANN V. YOUNG*
Certified Court Transcriber
(508) 384-2003

91

1  legislative developments during his tenure where Congress is
2  looking into ways to reform AWP based reimbursement.
3          THE COURT:  But you're just figuring that out now?
4          MR. GOBENA:  Sorry?
5          THE COURT:  You're just figuring this out now?
6          MR. GOBENA:  I'm sorry, figuring out what, Your
7  Honor?  I'm confused.
8          THE COURT:  Well, I mean why wasn't this person
9  deposed earlier?
10         MR. GOBENA:  We tried to depose them and, Your Honor,
11 they asked for a motion for a protective order and you granted
12 it on a limited basis.  You said, they said there are going to
13 be 30(b)(6) depositions that would cover their knowledge,
14 activities, what they engaged in.  We took those depositions.
15 I can read you from the transcripts, none of the witnesses were
16 prepared at all to testify about these people.  These witnesses
17 knowledge none of them were willing to testify, able to testify
18 about their activities.  They were unwilling to provide
19 anything or unable to probably is more accurate to put it.  The
20 only way to find out about their personal knowledge and
21 activities, and they are directly involved with the issues in
22 this case, is a deposition.  The 30(b)(6) that Your Honor
23 offered as an alternative didn't work.
24         In addition, we actually did object to your Honor's
25 original order and Judge Saris--

92

1   THE COURT: When was the 30(b)(6)?

2   MR. GOBENA: Sorry?

3   THE COURT: When was the 30(b)(6)?

4   MR. GOBENA: The 30(b)(6)s happened earlier this
5   year.

6   THE COURT: When?

7   MR. GOBENA: I believe in March.

8   THE COURT: And when was this motion filed?

9   MR. GOBENA: This motion was filed March 31st, soon
10  after the depositions took place.

11  THE COURT: Okay, soon after. All right.

12  MR. WINCHESTER: Judge, if I may. If this sounds
13  familiar it's because you've already ruled on it.

14  THE COURT: Yeah, yeah.

15  MR. WINCHESTER: There's nothing, there's nothing new
16  that has happened that requires any kind of different result.
17  First of all, this Court ruled that these depositions would not
18  go forward. They were permitted to go ahead and take the
19  30(b)(6) depositions. At the hearing on 1/31, January 31
20  counsel for the United States, Mr. Breen said, Judge, I
21  understand you denied the ruling, our ability to get these
22  people now. Can we modify the 30(b)(6) request to ask these
23  30(b)(6) witnesses what was in these individuals' mind? The
24  Court said, no. Why? Because we're already past the end of
25  discovery and you told them you have to work with what you've

93

1  got.  So this notion that these witnesses didn't know what Mr.
2  Hodson or Mr. Berman were thinking, you had already ruled on
3  that.  That's already been affirmed.  There's absolutely
4  nothing here.
5       When we talk about what these witnesses knew or
6  didn't know on the 30(b)(6) side with respect to lobbying which
7  Mr. Gabini was talking about, they had four fact witnesses, two
8  30(b)(6) witnesses, six witnesses all tolled, about 10 days of
9  testimony.  When you look at their brief as to what they say
10 they thought they might need, it's all about the question of
11 they asked the witness, do you know what Mr. Berman thought
12 about that?  The witness said, no.  Well, there's a reason for
13 that.  You told them that they didn't have to be prepared on
14 that.
15      So there's absolutely nothing new with respect to
16 either one of these witnesses.  With respect to Hodson, Mr.
17 Hodson, the only thing they cite as a reason they'd like to
18 talk to him in their brief is he was a witness in another case
19 who testified about the corporate relationship between Abbott
20 and TAP and we've been around this block before too.  As this
21 Court has held on a number of occasions the, TAP case has
22 nothing to do with this case that's here.  So they still have
23 to make their showing.  You've already ruled on it.  Judge
24 Saris has already affirmed you.  The one thing she disagreed
25 she let them take Mr. Gonzalez' deposition, the president of

1   the HPD, the hospital products division.  That's already gone
2   forward.  And they've had 10 days of 30(b)(6) deposition on the
3   subject and there's nothing in their brief other than what,
4   exactly what you told them would not be the proper subject of a
5   30(b)(6) deposition.
6            MR. GOBENA:  Your Honor, if I may address my
7   brother's comments real quickly.  First of all, these witnesses
8   have demonstrated document involvement in the issues in the
9   case.  The 30(b)(6)s were meant as a way to provide insight
10  into that, into whatever their role was in the case.  None of
11  the witnesses could testify about that.  I can read you from
12  various witnesses, 30(b)(6) witnesses.  Mike Sellers who was
13  offered on a variety of topics was asked the question, in
14  preparing for today's deposition, the 30(b)(6), did you do any
15  inquiry to find out what involvement was of Tom Hodson in any
16  of the topics that are at issue in today's deposition?
17  Objection to form.  Answer, no.  What about Dwayne Berman?
18  Answer, no.  These witnesses did not even remotely try and
19  prepare themselves to address the factual information that
20  might be directly in possession of these two former executives
21  who have documented knowledge of the issues of this case.  And
22  what's more, Mr. Berman's all over memos that
23  deal with AWP and government reimbursement issues.  He
24  obviously was involved in the company's formulation of that
25  policy.  That directly goes to scienter in this case.

95

1           With respect to Mr. Hodson he testified as a
2     30(b)(6) answering questions about AWP, government
3     reimbursement.  In addition the senior vice president for the
4     division whose comments at issue in this case, a guy named Don
5     Robertson testified that Mr. Hodson was responsible for
6     approving sales and marketing plans for his division.  So he's
7     directly involved in the decision making process that is
8     implicated in this case.  Your Honor offered an out for the
9     defendants to provide 30(b)(6) testimony.  They didn't prepare
10    their witnesses to address any of the specific factual
11    knowledge that these witnesses have.
12          In addition, Judge Saris indicated that in upholding
13    Your Honor's ruling that she thought that perhaps these
14    depositions could go forward or should go forward I should say,
15    indicate--
16          THE COURT:  Compromise, five written deposition
17    questions.
18          MR. WINCHESTER:  Thank you, Your Honor.
19          MR. GOBENA:  Your Honor, if I can - I know Your Honor
20    ruled, but if I could briefly ask for a moment of your
21    indulgence.  We did a written deposition before and it, you
22    know, and we fought about the result mostly because it was -
23    and it's not any, I'm not casting any aspersion on counsel but
24    this was, basically it was treated as an interrogatory.  You
25    know we're willing to go to where these witnesses are.  if you

MARYANN V. YOUNG
Certified Court Transcriber
(508) 384-2003

96

1  want to put severe limits on the questioning, we can do an
2  hour or two with these witnesses on specific documents, but I
3  think it's important to have the live, in-person testimony
4  because high level people in this case have been questioned
5  even on the government's side.
6              THE COURT:  Five written deposition questions.
7              MR. WINCHESTER:  Thank you, Judge.
8              THE COURT:  All right, that takes us to Document--
9              MR. WINCHESTER:  The home stretch.
10             THE COURT:  Yeah.  We're not finished.  All right.
11             MR. WINCHESTER:  No, the next one, Judge, I think
12  you're at the last one here.
13             THE COURT:  Right.
14             MR. WINCHESTER:  Which I think is--
15             THE COURT:  I'm jumping ahead.
16             MR. WINCHESTER:  --5276.
17             THE COURT:  Right, 5276 it is.
18             MR. WINCHESTER:  Judge, this is our motion.  It is
19  very discreet.  There are two pieces of paper that we
20  inadvertently produced which are privileged documents, memos
21  directly from Abbott's in-house counsel to persons who asked
22  for that counsels advice, two documents out of about three
23  million pages here.  The protective order in this case
24  specifically contemplates and both parties carefully wrote this
25  in to say if you inadvertently produce privilege documents,

*MARYANN V. YOUNG*
Certified Court Transcriber
(508) 384-2003