# EXHIBIT 7

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------x

IN RE PHARMACEUTICAL           )
INDUSTRY AVERAGE WHOLESALE     )
PRICE LITIGATION,              ) MDL No. 1456
_____) Civil Action No
THIS DOCUMENT RELATES TO:      ) 01-12257-PBS
_____) Judge Patti B.
United States of America,      ) Saris
ex rel. Ven-A-Care of the      ) Mag. Judge
Florida Keys, Inc., v.         ) Marianne Bowler
Abbott Laboratories Inc.       )
Civil Action No.               )
06-11337-PBS                   )
---------------------------x


       Videotaped Deposition of CYNTHIA B.
SENSIBAUGH, a witness herein, at the offices of
Jones Day, 51 Louisiana Avenue, N.W., Washington,
D.C. commencing at 9:11 a.m. on Friday, March 7,

1          MS. TABACCHI: Object to the form.
2  Beyond the scope.
3          THE WITNESS: Yes, I was highlighting
4  that this was kind of a request on behalf of the
5  Washington office.
6          BY MR. GOBENA:
7      Q.  But sitting here today, is it basically
8  your testimony that you can't tell me who
9  specifically, whether it's one or more persons,
10 authorized Abbott's taking the position that
11 Medicare drug reimbursement should be at
12 95 percent of AWP with no discretion to the
13 Secretary, at least as set forth in 1997?
14         MS. TABACCHI: Object to the form.
15 Beyond the scope.
16         THE WITNESS: That is correct.
17         BY MR. GOBENA:
18     Q.  And if I wanted to find out whether
19 Mr. Burnham was involved in the decision-making
20 process with regard to Abbott's position on the
21 Medicare drug reimbursement issue, I would have to
22 talk to Mr. Burnham; isn't that correct?

104

1       MS. TABACCHI: Object to the form.
2  Beyond the scope.
3       THE WITNESS: I think you would be able
4  to consult his affidavit where he talks about that
5  he wasn't involved in the day-to-day activities.
6       BY MR. GOBENA:
7       Q.  I understand you're talking about an
8  affidavit that was drafted on his behalf, but --
9  you're not pointing to deposition testimony. But
10 if I wanted to get down to the specifics, I would
11 have to talk to him; isn't that correct?
12      MS. TABACCHI: Object to form. Beyond
13 the scope.
14      THE WITNESS: I mean, again, I think he
15 makes it clear in his affidavit there.
16      BY MR. GOBENA:
17      Q.  If you go to the fourth paragraph of
18 the June 9, '97, memorandum from Mr. Landsidle to
19 the CEO of the company, he says that, "With
20 reimbursement for Lupron, Calcijex and Abbokinase
21 at issue, hiring Greenberg Traurig would be most
22 useful." And he goes on to say, "Reimbursement of

1       A.      Yes, I do.

2       Q.      Mr. Burnham did lobby with respect to
3  the Medicare drug reimbursement issue in 1997;
4  isn't that correct?

5               MS. TABACCHI:  Objection as beyond the
6  scope.

7               THE WITNESS:  It looks like -- from
8  this letter, it says that there was a call with
9  Congressman Archer where they discussed this
10 issue.

11              BY MR. GOBENA:

12      Q.      You don't -- well, strike that.
13              Did you personally participate in the
14 call that's reflected in the August 5 letter from
15 Mr. Burnham to Mr. Archer about the Medicare drug
16 reimbursement issue?

17              MS. TABACCHI:  Objection as beyond the
18 scope.

19              THE WITNESS:  No, I don't remember
20 participating in any call.

21              BY MR. GOBENA:

22      Q.      Do you know whether Mr. Landsidle

122

1  participated in that call between Mr. Burnham and
2  Mr. Archer in 1997 about the Medicare drug
3  reimbursement issue?
4           MS. TABACCHI: The same objection.
5           THE WITNESS: No, I don't know.
6           BY MR. GOBENA:
7     Q.  Isn't it fair to say that the only way
8  to find out what actually was said in that call
9  between Mr. Burnham and Mr. Archer is to talk to
10 Mr. Burnham about that call? Isn't that true?
11          MS. TABACCHI: Objection. Beyond the
12 scope.
13          THE WITNESS: Well, again, I would
14 refer to his affidavit where he says he doesn't
15 have any recollection.
16          BY MR. GOBENA:
17    Q.  No one from the Washington office
18 participated in that call between Mr. Archer and
19 Mr. Burnham; isn't that correct?
20          MS. TABACCHI: Object to the form.
21 Beyond the scope.
22          THE WITNESS: Not that I'm aware of.

127

1    thought his expertise and knowledge would be

2    important to share.

3                BY MR. GOBENA:

4         Q.  Do you believe, then, that one of the

5    reasons why Mr. Burnham was being asked to lobby

6    on the Medicare drug reimbursement issue is

7    because he had some important expertise or

8    knowledge that might help advance Abbott's

9    position on the -- with respect to the House

10   version of the Medicare drug bill?

11               MS. TABACCHI:  Objection.  Beyond the

12   scope.

13               THE WITNESS:  Yes, I don't know -- you

14   know, it's not clear the particular reason here.

15               BY MR. GOBENA:

16        Q.  So it could be either that he has

17   expertise or it could be that it's important.  But

18   that's -- generally, those are the two scenarios

19   where Mr. Burnham would be asked to weigh in on

20   Abbott's lobbying efforts on a legislative

21   development, correct?

22               MS. TABACCHI:  Object.  Beyond the