UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL<br>INDUSTRY AVERAGE WHOLESALE<br>PRICE LITIGATION<br><br>———————————————————<br><br>THIS DOCUMENT RELATES TO:<br><br>*United States of America ex rel. Ven-a-*<br>*Care of the Florida Keys, Inc., et al. v.*<br>*Dey, Inc., et al.,* Civil Action No. 05-<br>11084-PBS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   MDL No. 1456<br>     Master Case No. 01-12257-PBS<br><br>     Hon. Patti B. Saris |

**UNITED STATES' MEMORANDUM IN OPPOSITION
TO DEY'S MOTION TO EXTEND THE PRODUCTION DEADLINE
FOR THE LIMITED PURPOSE OF RECEIVING MEDICAID CLAIMS DATA**

The defendants Dey, Inc., Dey L.P., and Dey L.P., Inc. ("Dey") have moved for an

indefinite extension of the deadline for completing fact discovery for the purpose of

receiving Medicaid claims data from various states.  Except as to South Carolina, on

which deadlines have already been deferred by the Court, Dey's motion should be denied

because any extension would require a corresponding extension of the entire schedule for

expert discovery and summary judgment proceedings.

BACKGROUND

Since long before this litigation commenced, Dey has had access to substantial

Medicaid data via a public web site maintained by the Center for Medicare and Medicaid

Services (CMS).[1]  During discovery, the United States has produced to Dey additional

_____

[1] See http://www.resdac.umn.edu/Medicaid/medicaidFAQ.asp#4 for a general
description of CMS Medicaid data files.  And see

Medicaid claims data collected by the CMS in the usual course of its administration of the

Medicaid program (SDUD data, SMRF/MAX data, and MSIS data), and has also

produced more detailed state-level data that the Department of Justice has obtained

through voluntary efforts from certain States.  The United States has never represented,

and Dey does not assert otherwise, that the United States would obtain and produce state-

level data from all 50 states covering all relevant times.

On June 20, 2008, the United States served on all parties, including Dey (via the

LexisNexis service) the report of its damages expert, Professor Mark Duggan, in the

Abbott case.  See excerpts attached as Exhibit 1 hereto.[2]  That report clearly explained

what Medicaid data was and was not available, and it explained how, for the 38 states

where state-level claims data was not available at that time, damages would be calculated

using the SDUD and SMRF/MAX data publicly available from CMS.  Approximately

two months later, on August 20, 2008, the United States informed Dey that it had

produced to Dey the last of the state Medicaid claims data in its possession.  See Exhibit

F to Dey's motion (Master Docket entry #7565-8) and Exhibit 1 attached hereto (letter

---

http://www.cms.hhs.gov/MedicaidDataSourcesGenInfo/07_MAXGeneralInformation.asp.   The
data files generally consist of State Drug Utilization Data ("SDUD"), and Medicaid Analytic
eXtract ("MAX") data (formerly known as "SMRF" data).  The SMRF/MAX data is extracted
from the Medicaid Statistical Information System (MSIS), which is not publicly available.  The
pertinent MSIS data was produced to Dey on August 20, 2008.

[2] The full report is well over 150 pages long and is therefore not reproduced in full here.

dated August 20, 2008).[3]  Knowing full well the limitations of the United States'

production of Medicaid claims data, Dey proceeded to negotiate and agree upon the

current litigation deadlines, which were proposed jointly by the parties on August 29,

2008 (see Joint Motion to Amend Case Management Order, Master Case Docket entry

#5533) and entered by the Court on October 6, 2008 (Joint Scheduling Order, Master

Case Docket entry #5629).  The Joint Scheduling Order set a deadline for fact discovery

in the Dey and Roxane cases of December 15, 2008.

At the status conference on November 13, 2008, the Court made clear its distaste

for delaying proceedings further.  Counsel for Dey asked that discovery concerning seven

litigating states be done in coordination with the litigation in those states.  Transcript of

Hearing (Exhibit H to Dey's motion, # 5765-10) at pp. 5-11.  Notwithstanding concerns

expressed by the United States, the Court agreed to Dey's proposal, but emphasized that

discovery as to all other states would not be extended.  Id. at pp. 9-10 ("So I think what

makes sense is, why don't we – I'm not going to extend the schedule.  We are going to

keep to this schedule.  If these states can do – rather than kill you over Thanksgiving and

Christmas to try and put all these in, it is cost-effective to piggyback on what's happening

with these other [seven] states, and in the meantime, put all the other states on the

---

[3] The email accompanying the United States' letter to Dey stated, "This is the last of the national claims data and represents all the state claims data we have.  We may receive more state claims data, but we are up to date on our production."  Exhibit F to Dey's motion.

schedule we agreed to.").[4]  At the November 13 status conference, counsel for Dey raised

the concern, in relation to scheduled depositions, that not all states had produced all the

documents that had been subpoenaed.  The Court observed that if something wasn't

turned over by the deadline, that was too bad:  "[t]hat's your fault for waiting so long. . . .

I'm sorry but you took too long to start it going."  Id. at 12.  The Court observed that

states would "do what they reasonably can do," by December 15, and the parties would

be "stuck with" whatever might be missing.  Later in the status conference, in the context

of discussing what discovery motions were pending, the Court reiterated that "I'm not

extending the deadline short of family illness or personal illness."  Id. at 16-17.

At the November 13 scheduling conference, counsel for Dey and Roxane also

asserted that the United States had not produced state claims data.  Counsel for the United

States reiterated that the government had produced everything in its possession.  The

Court told Dey's counsel that if defendants wanted more state claims data, defendants

should subpoena it.  Transcript of Hearing at 45.  But this was not a grant of a further

extension of the discovery schedule.  To permit an extension of the deadline for Dey to

"receive" documents and claims data from states would run counter to the very clear, very

adamant view of the Court that the deadline would not be moved, and that the Court was

---

[4]  Because the Court allowed more time to complete discovery of seven states, the United
States does not oppose Dey's motion as to South Carolina, which is the only one of the seven
states that Dey seeks an extension for.  The United States is proceeding on the assumption that
the discovery, expert disclosure, and briefing deadlines in the Joint Scheduling Order are
extended as to all of the seven states.

"not putting this off." Id. at 11.  In late November and early December, Dey served subpoenas on 38 states for claims data.  See Dey Motion at 3.

ARGUMENT

Dey's motion blithely ignores that the deadline for the United States to serve its expert reports is January 23, 2009.  It is obvious that any new state claims data would need to be analyzed and evaluated by the United States' damages expert.  This cannot possibly be done in the short time remaining before the January 23, 2009, deadline.[5]  If, as Dey's motion seems to contemplate, the United States' damages expert were required to serve his report without the benefit of having analyzed and considered the new claims data, the United States would be at a severe disadvantage, as Dey's expert would be able to consider additional data not available to the United States' expert.  At the very least, the United States' expert would have to re-do his analysis and write a new report after considering the new data.

The only way to avoid such unfairness and disruption would be to extend the deadline for expert reports and discovery until after all the new data is received.  Dey does not proffer a date when the new data will be produced, and it is likely that the production of data from 38 states could take many months.  The further delay proposed by Dey should not be allowed.  The data that has been produced is sufficient.

---

[5]  The United States' experts will have difficulty meeting the deadline as it is.  During the two weeks before the December 15 deadline, nearly 30 days of deposition testimony were taken, some of which undoubtedly will need to be evaluated by the experts.

5

In short, Dey has long been on notice of the limitations in the available Medicaid

claims data, and has waited to the last minute to serve subpoenas for additional data.  Dey

has simply waited too long.

## CONCLUSION

For the foregoing reasons, Dey's motion should be denied.

Respectfully submitted,

GREGORY G. KATSAS
ASSISTANT ATTORNEY GENERAL

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:     /s/ *George B. Henderson, II*

GEORGE B. HENDERSON, II
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3282

LAURIE A. OBEREMBT
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station

Dated: December 22, 2008                    Washington, D.C.  20044

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused an electronic copy of the above "UNITED STATES' MEMORANDUM IN OPPOSITION TO DEY'S MOTION TO EXTEND THE PRODUCTION DEADLINE FOR THE LIMITED PURPOSE OF RECEIVING MEDICAID CLAIMS DATA" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: December 22, 2008                    /s/ *George B. Henderson, II*
                                             George B. Henderson, II