Case 1:01-cv-12257-PBS   Document 5826-4   Filed 01/07/2009   Page 1 of 24

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CITIZENS FOR CONSUME, et al  . CIVIL ACTION NO. 01-12257-PBS
  Plaintiffs          .
                  .
     V.          . BOSTON, MASSACHUSETTS
                  . DECEMBER 4, 2008
ABBOTT LABORATORIES, et al  .
  Defendants          .
. . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the United States:
Justin Draycott, Esquire, Anne St. Peter Griffith,
Esquire, United States Attorney's Office, 99 N.E. 4th
Street, Miami, FL 33132, 305-961-9000,
justin.draycott@usdoj.gov.

George B. Henderson, Esquire, United States Attorney's
Office, 1 Courthouse Way, Suite 9200, Boston, MA 02210,
617-748-3272, george.henderson2@usdoj.gov.

Gejaa T. Gobena, Esquire, United States Department of
Justice, 601 D Street NW, Patrick Henry Building, Room
9028, Washington, DC 20004, 202-307-1088,
gejaa.gobena@usdoj.gov.

For Abbott Labs.:
Jason Winchester, Esquire, Jones Day, 77 West Wacker
Drive, Chicago, IL 60601-1692, 312-782-3939.

Sarah Reid, Esquire, Kelley Drye & Warren LLP, 101 Park
Avenue, New York, NY 10178.

James R. Daly, Esquire, Jones, Day, Reavis & Pogue, 77
West Wacker Drive, Chicago, IL 60601-1692, 312-782-3939.

Court Reporter:
Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

### MARYANN V. YOUNG
**Certified Court Transcriber**
**Wrentham, MA 02093**
**(508) 384-2003**

61

1   We'll take a 10 or 15 minute break.

2                        RECESS

3           THE CLERK:  Resuming on the record, Your Honor, AWP

4   MDL litigation, Civil Action No. 01-12257 and others.

5           THE COURT:  All right, going back for a moment to

6   Docket Entry 5112, as to Reed and Vito, I'm inclined to agree

7   with the government.  That said, I direct you to further

8   consult and discuss each objected to question with respect to

9   each deposition in the context of Judge Saris' recent

10  deliberative process rulings and any related rulings on appeal

11  of my rulings.  One option would be to provide written answers

12  to the objected to questions.  In the event that you can't

13  agree you can renew the motion at which point I will consult

14  with either Judge Saris or her clerk and decide whether or not

15  she wants me to deal with it or she will deal with it.  I don't

16  want to end up with inconsistent rulings here.  I think this is

17  maybe a safer course.

18          Okay?  All right, so we start with 5174.

19          MR. WINCHESTER:  That's ours, Your Honor.

20          THE COURT:  Right.

21     *    MR. WINCHESTER:  This has to do with a set of

22  requests for admission that we served on the government and

23  neither Ms. St. Peter-Griffith nor I has any interest I think

24  in walking the Court through 175 RFAs today, which I'm sure

25  will make you somewhat happy but my hope is that if you go

62

1      through some--

2              THE COURT:  The only thing that will make me happy

3      right now is finding my Blackberry.

4              MR. WINCHESTER:  There have been a lot of articles in

5      Chicago recently about our President-elect Obama being stripped

6      of his Blackberry now having a lot of issues--

7              THE COURT:  One feels terribly insecure without it.

8              MR. WINCHESTER:  What I hope to do with respect to

9      these, Your Honor, is to break them down into some categories

10     on which we have principal areas of dispute.  And then maybe

11     with some guidance form the Court we can make some further

12     progress.

13             The first category as we've set forth in our brief,

14     Your Honor, and that I'll start with is the first 69 of these

15     RFAs where literally what we did is to take direct quotes from

16     government officials and congressional testimony and reports,

17     various things of that nature, documents we have, put these

18     direct quotes in an RFA, attach the underlying document where

19     the quotes appear and say, admit that this is a true and

20     correct document, that the statements were made at or near the

21     time and with information provided by a person with knowledge

22     and that it was kept in the regular course of business; your

23     basic stuff that RFAs are for getting the grounds of

24     admissibility in.  And what we get back from the government is

25     a, literally ton of objections, no straight answers for these

63

1    which are just admit the person said it, it's quoted in a

2    document type of thing which we thought were easy lay up

3    questions.

4           Just as a couple of examples, Your Honor, if you look

5    at Exhibit B to our motion, it's actually the government's

6    responses to RFAs.  So if you look at No. 24 we have a quote.

7    It says, "In 1990 the secretary of HHS, the head person,

8    testified before Congress that many studies," this is a quote,

9    "and most information available on this subject show that the

10   list prices for drug products commonly known as the average

11   wholesale process, AWP, rarely, if ever, reflect the prices

12   that pharmacies actually pay.  Since 1976 our policy has been

13   that AWP is not an acceptable measure of EAC, estimated

14   acquisition cost."  It goes directly to what we've been saying

15   about the government knowing that these two did not equate and

16   that AWP, which was the benchmark for their payment, was not in

17   fact an average of a cost anybody paid.  That testimony is

18   there.  All we say is admit it, admit that that statement was

19   made by a person with knowledge and we get a page of objections

20   and an answer that ultimately says subject to all of our

21   objections we admit with qualification because the document

22   speaks for itself and it's not really an admission against us

23   anyway.

24          So, you know, when we're suppose to have an answer

25   that says admit or deny we get the document speaks for itself.

64

1   And we've given you a lot of case law in our brief that says

2   the documents don't speak for themselves.  That is an improper

3   objection to make in an RFA.  We understand the government is

4   going to take the position ultimately that nobody has said

5   anything that can bind the agency.  That's fine.  They can make

6   that later when we're trying to offer these into evidence but

7   for purposes of now all we're saying is these are factual

8   statements, they are subject to being admitted or denied.

9   Obviously, all your objections to admissibility you can reserve

10  until later but we're entitled to a clean record on these

11  things so that we can try and introduce them.  They're evidence

12  in the case.  We need this to be able to do it.

13          Similarly again, if you look at No. 37, same thing,

14  we've got a direct quote from 95 from the chief of the Medicare

15  technical issue section talking about the fact that AWP is

16  different than estimated acquisition cost.  And we get again,

17  the document speaks for itself and it's out of context by the

18  way.  Again, Your Honor, admit it or deny it.  You're going to

19  have your chance to challenge why it's out of context, why it's

20  not, an admission whatever that may be down the road but let's

21  at least clean this record up for these that are direct quotes

22  and say we admit it, we deny it.

23          THE COURT:  Well--

24          MR. WINCHESTER:  I don't know if you want to do these

25  categorically.

65

1          THE COURT:  Yeah, it's easier to go one at a time.

2          MS. ST.PETER-GRIFFITH:  Your Honor, before we get to

3    the, before we even get to--

4          THE COURT:  Well, why don't you identify yourself for

5    the record?

6          MS. ST. PETER-GRIFFITH:  Oh, I'm sorry, Your Honor.

7    Ann St. Peter Griffith, from the United States Attorney's

8    Office in the Southern District of Florida, on behalf of the

9    United States.

10          Your Honor, before we start going category by

11    category the United States has raised in its opposition the

12    issue of do we even need to do this right now.  Rule 36

13    provides that this matter and objections can be deferred until

14    a later point in time at, closer to trial after dispositive

15    motions and motions in limine have been heard which will enable

16    us to avoid having to go through these sort of one by one

17    which, Your Honor, is--

18          THE COURT:  Well it's an `01 case, I hope we're

19    pretty close to trial.

20          MS. ST.PETER-GRIFFITH:  Yes, Your Honor, but there

21    are a number of matters that might be resolved on dispositive

22    motions that could substantially, substantially narrow the RFAs

23    that we're dealing with today, most notably the government

24    knowledge issue.  In addition to relevance considerations there

25    are many, many documents and many RFAs in the RFAs that were

66

1  served that are completely outside of the time period of this

2  case.  So we would just raise that before we go through it

3  category by category, Your Honor, that Your Honor consider take

4  up the issue of whether it makes sense to defer these until a

5  later point in time that is closer to trial because frankly

6  many of them might be resolved just through the course of

7  motions in limine and dispositive motions.

8       THE COURT:  Well, it's a little too late with motions

9  in Limine, I mean this is discovery.

10       MS. ST. PETER-GRIFFITH:  Well, Your Honor, I think

11  motions in limine in terms of ultimately what Mr. Winchester

12  was referring to was making a record to go into evidence at

13  trial.  You know, we haven't heard from the defendant as to

14  which of these RFAs are going to be necessary for them for

15  purposes of summary judgment, if any.  Many, many deal with the

16  public record.  They can use the public record.  We're just

17  going to go through, this could be a very time consuming

18  process, Your Honor, because each of these RFAs are separate

19  and Your Honor needs to make a finding as to the objections or

20  the, in instances where we've admitted the problems associated

21  with each RFA.

22       THE COURT:  Any possibility of withdrawing this

23  without prejudice to be renewed at a later date?

24       MR. WINCHESTER:  Judge, we thought about it and, you

25  know, we recognize this is a burden on the Court and we're not

67

1  interested in increasing your workload or the government's but

2  in fairness we served these a year ago.  This is a case they've

3  been investigating since 1995 and, you know, when counsel says

4  let's put it off till trial cause maybe I'm going to beat

5  Abbott on summary judgment, well, in fairness--

6           THE COURT:  Yeah.

7           MR. WINCHESTER:  --a lot of these RFAs are admit you

8  knew AWP was higher--

9           THE COURT:  Yeah.

10          MR. WINCHESTRER:  --than acquisition cost.  That's

11  going to bear on summary judgment for us.

12          THE COURT:  Well, I have to agree with that.

13          MS. ST. PETER-GRIFFITH:  Judge, can we just sort of

14  try and further narrow the scope though?  Can we just focus on

15  - one of our objections and it's a significant one because of

16  the number of RFAs that it deals with, there are a whole host

17  of RFAs that are outside the `91 through 2001 period of the

18  case, some going back to the early `70s.

19          THE COURT:  Okay.  Can we limit the time period?

20          MR. WINCHESTER:  Well, Your Honor, I think the--

21          THE COURT:  At least initially.

22          MR. WINCHESTER:  Respectfully, I'd say, no, we can't.

23  Here's why, our--

24          THE COURT:  You can't but I can.

25          MR. WINCHESTER:  Well and you may.  Your were just

68

1   asking me, Your Honor.  We'll do what you'd like but here's

2   why I would say we shouldn't, how about that.  Our position all

3   along has been you've charged us with a set of conduct, you say

4   we did bad things between 1991 and 2001.  Okay, that's fine.

5   The Court's talked about you get discovery through 2003 on what

6   you allege to be the bad things Abbott did.  Our point in

7   response and Judge Saris has said unequivocally, you are

8   entitled to run this to ground.  I don't know if I'm ever going

9   to, you know, find your way on this but run it to ground is,

10  you government, have known about this not just over the time

11  period you're charging us with but back into the `60s, the

12  `70s, the `80s.

13          We have direct quotes from government officials in

14  charge of these programs that say out loud we know average

15  wholesale price is not a price people are paying and yet this

16  is what we're using to reimburse.  So just trying to conscribe

17  their knowledge to this 10 year period is not going to give

18  anybody, including the Court at summary judgment, the full

19  nature of the government's knowledge of this which Judge Saris

20  has said we are entitled to discovery and to run to ground and

21  to make our best pitch to her about why this should defeat

22  their claims.

23          MS. ST. PETER-GRIFFITH:  Your Honor, the burden

24  associated with going back in time for what we're talking about

25  and one of the reasons why we have objected so vigorously to

69

1　keeping to the timeframe that frankly applies to my brother

2　who are defending Abbott in this case they're very vigorous in

3　their assertion that this is a `91 through 2001 time period.

4　Verifying what needs to be verified for this RFAs, going all

5　the way back to the time period that they have is a significant

6　burden, Your Honor, and we think it maybe one of marginal

7　utility, but many, you know, a number of our objections go to

8　that issue so it is--

9　　　　　THE COURT:  All right, it's allowed for the limited

10　time period `91 to 2001.

11　　　　　MS. ST. PETER-GRIFFITH:  Your Honor, with regard to

12　the RFAs under category 1 there is one other topic, Your Honor,

13　a general topic that I think we need to address before we get

14　into the individual categories and that's the definition of AWP

15　which is another significant objection which affects all but 50

16　of the RFAs that are at issue here.  Defendants would have us

17　use a definition that is not the definition that Judge Saris

18　has articulated.  And our position is that that really puts us

19　in an untenable position because we're admitting to an RFA

20　using the definition that's not ultimately going to be used at

21　trial or for purposes of this case perhaps.

22　　　　　THE COURT:  What's your response?

23　　　　　MR. WINCHESTER:  Sure, Judge.  They want to say well

24　you're using your own definition of AWP, we don't have to

25　answer to that.  Our whole point here is and we are entitled to

70

1   get discovery from them that AWP being a price people actually

2   pay is not what they thought it was.  That they thought AWP was

3   what was in the compendia.  So when we present all these RFAs

4   to them and say, admit you knew that AWP published in the

5   compendia was not an average price anybody was paying they can

6   admit that or deny it.  They don't get to change it around and

7   suggest well, Judge Saris said very early in this case AWP

8   ought to be read strictly as an actual average price.  We're

9   entitled to the discovery to show that in fact that isn't how

10  the government understood it and the Court has said that.  So

11  when we give them the RFAs they can admit it or deny it.  I

12  mean it's easy for them to do.

13          THE COURT:  I agree.  I agree.  All right, next?

14          MS. ST. PETER-GRIFFITH:  Your Honor, if we could go

15  through the first categories to address what Mr. Winchester had

16  said, you know, we've asserted our objections--

17          THE COURT:  I just have to tell you that my secretary

18  just found my phone.

19          MS. ST.PETER-GRIFFITH:  Oh, terrific, Your Honor.

20          THE COURT:  In Neiman Marcus.

21          MS. ST.PETER-GRIFFITH:  Oh my.  You know we have

22  answered to the extent that with regard to one through 69 which

23  address the time period that we're talking about, `91 through

24  2001, Your Honor, we've admitted whether or not the quote is

25  contained in the language.  We've told them flat out these are

Case 1:01-cv-12257-PBS   Document 5827-4   Filed 01/07/09   Page 13 of 24
Case 1:01-cv-12257-PBS   Document 5826-4   Filed 01/07/2009   Page 13 of 24

71

1   RFAs that go to the question of authenticity.  We told them we

2   can work out authenticity.  We're not going to object to

3   authenticity.  So it's difficult, we preserved our objections

4   with regard to the documents but it's difficult to understand

5   where the problem is.

6           THE COURT:  Well, are you willing to enter into a

7   formal stipulation on the record that you're not going to

8   challenge the authenticity?

9           MS. ST. PETER-GRIFFITH:  Your Honor, I would have to

10  confer with my colleagues before I can say that.

11          THE COURT:  Well before you make assertions like

12  that.

13      PAUSE

14          MS. ST. PETER-GRIFFITH:  Yes, Your Honor, we can.

15          THE COURT:  All right.

16          MS. ST. PETER-GRIFFITH:  So, you know, it's difficult

17  to understand where the objection is because we've admitted in

18  some instances the language is misquoted.  In some instances

19  it's spliced from different pages and put together and our

20  response reflects that.  But to the extent that we can admit

21  that the language is contained in the document we admit that

22  the language is contained in the document.  So it's difficult

23  to understand sort of what the concern is on the part of Abbott

24  with regard to the sufficiency of our response.

25          MR. WINCHESTER:  And to simply - if you look at the

Case 1:01-cv-12257-PBS  Document 5826-4  Filed 01/07/2009  Page 14 of 24

72

1  cases that we've cited, Judge, the Courts say you get a

2  request to admit, you admit it, you deny it.  You don't say

3  admitted with the qualification the document speaks for itself

4  and is out of context.  Those are not proper admissions.  All

5  we're looking to do is have them clean it up and take out what

6  we would submit are the objections that are just not proper.

7  We're not saying that they're waiving their ability to contest

8  admissibility at least later but let's have you say at least

9  for a quote out of the document that we attached to an RFA for

10  goodness sakes we admit it was said, we admit it was said by

11  somebody with knowledge.

12        MS. ST. PETER-GRIFFITH:  But, Your Honor, the problem

13  with that is if the document doesn't get admitted into evidence

14  the RFA can still be used.  An RFA is admitted for all purposes

15  in a case.  So what we have--

16        MR. WINCHESTER:  So they can admit it--

17        MS. ST. PETER-GRIFFITH:  So what we have is a problem

18  where it's the cart before the horse.  We have documents that

19  they're quoting from that may never be admitted into evidence

20  but the quote may be.  And that's a very difficult, you know,

21  judgment to make at this juncture, Your Honor.

22        MR. WINCHESTER:  They can always admit them, Judge.

23  I mean if their point is you need more context, okay, fine.

24  Give us the admission that it says what we say it says cause

25  it's in there.  It's a quote.  And then you can later say; well

73

1    now you need to see the rest.  Okay, fine, introduce it

2    yourself.

3              THE COURT:  Allowed.

4              MR. WINCHESTER:  Next category, Judge, and these are

5    very similar.  We're on now items 144 to 173 and I'll give the

6    Court a couple of examples, but these are literally admit you

7    said what you said.  So we've got documents, for instance let's

8    say No. 149, in or about 1984 HHS was convinced as the factual

9    matter that there was a significant discrepancy between AWP and

10   actual sales price.  We've got documents that back that up, but

11   that's the factual proposition, admit it or deny it.  And we

12   get, objections, we stand on our objections, no answer.

13             MS. ST. PETER-GRIFFITH:  Your Honor, with regard to,

14   I'm sorry, Mr. Winchester--

15             THE COURT:  That was 149.

16             MS. ST. PETER-GRIFFITH:  149, 149 is outside the time

17   period.  That's in 1984.  So, and I would tell you that we

18   stood on our objections with regard to those that were outside

19   the time period.  I think if we move to I believe 166 within

20   this same category of documents, Your Honor, which, or 167 I

21   believe is the first one within the time period.  With regard

22   to those we admitted with qualification or denied.  The problem

23   is, is that Mr. Winchester has cited that these are quotes that

24   come from documents.  We requested the documents that they come

25   from.  If you just read the RFA it's not, the items are not in

74

1   quotes and there's no attribution to a particular document.

2        So our position is we admit that it's in the public

3   record but for the most part, Your Honor, there are some, you

4   know, we have to go one by one but for the most part we've

5   admitted that they may be in the public record but we defer to

6   the public record because we cannot admit to a paraphrasing of

7   a document that's not attributed anywhere.  And, you know, so –

8   but we can admit to what's in the public record.

9        MR. WINCHESTER:  Judge, for these – these are factual

10  propositions.  We're stating facts.  There is, we believe,

11  ample evidence to support these facts but these are conclusions

12  drawn from what we believe the evidence is.  So when we put it

13  before them and we say, let's take 172, on June 13, 2000 the

14  HCFA administrators believed that on several occasions the

15  administration had unsuccessfully sought from congress the

16  tools necessary to ensure the system was paying actual price

17  rather than a contract price and that's a fact.  Tell us, we

18  admit it, we deny it.  And they give answers like, subject to

19  all of our numerous objections we admit that those statements

20  may exist in the record.  Well, that's not an admission or a

21  denial.  We're saying this is the conclusion we draw from the

22  evidence that's out there.  It is a fact.  You can say yes or

23  no, admit it, deny it, that this is what was the state of

24  knowledge of the organization that administered the programs at

25  issue in the case.  They can do that.

75

1      MS. ST. PETER-GRIFFITH:  Your Honor, I think when we

2  began this discussion concerning this particular category of

3  documents that Mr. Winchester attributed them as coming from

4  documents them as being quoted form documents and we have no

5  attribution, you know, that's why this particular - and, Your

6  Honor, for these we do have responses.  So the question is the

7  sufficiency of the responses.  At a minimum we need attribution

8  as to where this is coming from because, you know, we can make

9  a statement or they can pull a statement, paraphrase it from

10  the public record but outside of the context not understanding

11  where the context is that they're pulling that from it's very

12  difficult for us to, you know, say yes definitively X,Y, and Z.

13      MR. WINCHESTER:  Judge, the first 69 were the ones

14  that were the direct quotes.  These are just facts.  This is

15  what RFAs are so we say factually here is a fact, admit it or

16  deny it.

17      THE COURT:  Allowed.  Next?

18      MR. WINCHESTER:  Next issue, Your Honor, has to do

19  with a series of RFAs that we have that basically go to were

20  there laws in place that governed the conduct you're

21  complaining about here.  So for instance if you look at our

22  request 105 we say during the relevant claim period time at

23  issue no federal statute or regulation required Abbott or any

24  other manufacturers to report prices to the publishers that

25  incorporated all distinct available to certain wholesalers,

Case 1:01-cv-12257-PBS Document 5827-4 Filed 01/07/09 Page 18 of 24
Case 1:01-cv-12257-PBS Document 5826-4 Filed 01/07/2009 Page 18 of 24

76

1   distributors or purchasers of drugs.  Admit there was no law

2   that required us to do that.  And we get objections, they stand

3   on their objections.  That's legal conclusions.  Respectfully

4   we've got cases that say was there a law, is it in effect.

5   Tell us, was there a law there or not?  They object and give us

6   no answer.  And for all of these that fall in this category,

7   and there are a number set forth in our brief, they're all

8   basically like this.  Admit that there was no rule.  And if

9   they want to come forward and deny that, then fine.  at least

10  we'll be able to pursue from them which rule do you say applied

11  here.  Which rule do you say actually told us that we would

12  have to report to those publishing compendia prices that

13  include discounts?  So they can tell us whether they believe

14  some rule required it or didn't.

15          MS. ST. PETER-GRIFFITH:  Your Honor, if I could just

16  get a clarification so that we understand from the record which

17  RFAs we're talking about in this category.  I have 72 through

18  85 and 87 through 109.

19          MR. WINCHESTER:  I have 72 to 85, 87 and 88, 96

20  through 100, 105 to 109 and 142 to 143.

21          MS. ST. PETER-GRIFFITH:  Okay.  I just wanted to

22  understand the universe, Your Honor, of what we're talking

23  about here.

24          Your Honor, RFAs are about admitting facts.  They're

25  not about drawing legal conclusions and, you know, it's our -

77

1   whether or not a statute exists saying does 42 CFR, you know,

2   Section 1937 exist that's a fact that can be denied or

3   admitted.  Asking about whether or not X, Y and Z legally is

4   the case is a legal proposition and RFAs are not, that's not

5   the purpose and intent of an RFA is to draw--

6          THE COURT:  Well--

7          MS. ST.PETER-GRIFFITH:  --a legal conclusion.

8          THE COURT:  Denied to the extent that it requires a

9   legal conclusion.  Anything that requires a legal conclusion,

10  no, but allowed for the balance.

11         MR. WINCHESTER:  And, Judge, I just point out Rule 26

12  but its text says you can use RFAs for the application of law

13  to fact.  And we have plenty of cases in there that say the

14  existence of a statute – was there a statute that governs the

15  conduct you're alleging--

16         THE COURT:  I've made a ruling.

17         MR. WINCHESTER:  Okay.  The next set, Your Honor, are

18  a few requests that concern the government's position about the

19  application of law to fact, exactly what Rule 26 talks about.

20  And these are, for instance let's look at one.

21      PAUSE

22         MR. WINCHESTER:  If you look in 89 or 90, we're just

23  trying to get them to say what is your position here about

24  what's right and what's wrong.  So in No. 89 we say it is the

25  plaintiff's position that a provider who submitted a claim for

78

1   payment to Medicare Part B or Medicaid for a drug knowing that

2   it would be paid at an amount that exceeded acquisition has

3   submitted a false claim under the False Claim Act.  Could not

4   be more material to the claims they're raising against us.

5          No. 90 is just the flip side.  It says, it's your

6   position that such a provider did not submit a false claim.

7   It's one way or the other.  And they can tell us and what we

8   get are objections and not answers.  These are application of

9   law to fact.  Admit that under this circumstance, which they

10  are alleging in this case is false claim if anything, but we're

11  entitled to know and these are the types of things where

12  they're standing on objections and they will not tell us.

13         MS. ST. PETER-GRIFFITH:  Your Honor, each of these

14  RFAs start with the, it is the plaintiff's position.  The

15  United States position in this case is not a fact, that they're

16  asking us to admit that this is, this is what you're arguing

17  and that's not a proper purpose for an RFA.  It's perhaps

18  appropriate for in the context of a contention interrogatory

19  which is what we point out to them but simply say and each of

20  them start exactly this way, it is the plaintiff's position

21  that.  And we're at a loss frankly, Your Honor, to understand

22  what the purpose of these RFAs is other than to perhaps lock us

23  into a particular legal position which frankly might change

24  over the course of discovery.

25         The United States' position and legal argument can

79

1  evolve over the course of a case so simply to say it is the

2  United States position that and to have that as an admitted

3  fact, Your Honor, is we don't see the utility in that and it's

4  not a proper purpose for an RFA.

5      MR. WINCHESTER:  Judge, the rule itself says you can

6  ask RFAs that apply law to fact.  In terms of evolution we've

7  got 13 years of evolution here.  I mean frogs could walk on

8  land in less time than they've had to evolve their theories.

9  They know what their theories are and so when we say it's your

10 position that it's this or that, yes or no, they can admit it

11 and the rule allows it.

12     THE COURT:  I'm going to allow it.

13     MR. WINCHESTER:  Last issue, Judge, are a series of

14 requests that go directly to government knowledge in the sense

15 that we say, look, one of the many ways, many, many ways in

16 which you knew that the published average wholesale price you

17 were using to reimburse wasn't what people really bought the

18 drugs for is you, government, bought the drugs at prices

19 substantially below AWP.  So we give them requests that say for

20 instance No. 115, admit you purchased Vancomycin from Abbott at

21 X price.  And what we get in response is, well we deny that

22 Medicare and Medicaid purchased it at that price.  Well, that's

23 not an answer.  We asked a question that said did you, the

24 government, purchase at that price.  They don't answer the

25 question.  And so we have a number of these like this that are

80

1   pure facts.  It's in their capability to answer the question.

2   No dispute that these are factual matters and they won't answer

3   them.

4          MS. ST. PETER-GRIFFITH:  Your Honor, if I could just

5   ask for clarification from Mr. Winchester so that we got a

6   clear record as to which--

7          MR. WINCHESTER:  Certainly.

8          MS. ST. PETER-GRIFFITH:  --RFAs we're talking about.

9          MR. WINCHESTER:  I certainly can.  I'm talking about

10  Nos. 112, 114 through 123, 125 to 128, and I believe also 142

11  and 43 is what I have.

12         MS. ST. PETER-GRIFFITH:  Okay, Your Honor, with

13  regard to 112, we've already indicated that we would answer

14  that.  With regard to those dealing with government purchases

15  our position is, Your Honor, that purchases under the federal

16  supply schedule, purchases by the VA is first of all incredibly

17  burdensome to place upon us to have to seek out that

18  information and it's wholly immaterial.  This case is not about

19  the government purchasing drug products.  It's about the

20  reimbursement programs of Medicare and Medicaid.  We have

21  answered these RFAs to that extent.  I'm not sure that each of

22  the RFAs that Mr. Winchester listed deals directly with the

23  government purchasing and frankly, Your Honor, I think we

24  probably - if I could just check.

25         MR. WINCHESTER:  No, that's fair.  They don't all,

81

1  Judge.  There are certain of them like 127 if you look at it,

2  it says admit that during the relevant claim period in

3  connection with Medicaid--

4          THE COURT:  Okay, can we narrow it to the ones you're

5  actually seeking.

6          MR. WINCHESTER:  What's that?

7          THE COURT:  Can we narrow it then to the ones you're

8  actually seeking.

9          MR. WINCHESTER:  These are among the ones we're

10 actually seeking.  Counsel pointed out that not every one of

11 these deals directly with government purchases--

12         THE COURT:  Right.

13         MR. WINCHESTER:  --and that is true.  There are a

14 couple of these that are not directly on admit you bought the

15 drug at X price.  And so I just wanted to make that clear.

16 There are some like you see in 127 that just says basically

17 admit that during the relevant claim period we gave you AMP

18 data, average manufacture price, and we get, and this is a good

19 one, we get admitted with the qualification that you only gave

20 us AMP in order to do the Medicaid rebates and everything else.

21 Again, that's one that we think is a lot more verbiage than

22 just what we're entitled to which is admit it.

23         MS. ST.PETER-GRIFFITH:  Your Honor, our problem is

24 this.  These are the types of questions that we're going to

25 have to go through category by category because we have

82

1  responded and the issue I believe is the sufficiency of the

2  qualification that we've provided and with each of these being

3  - we can't just sort of wholesale category say the response

4  isn't sufficient because there's a qualification to the answer.

5  We have provided an answer and the sufficiency I think we're

6  going to have to through one by one because we are committed to

7  qualify our answer to the extent that it is appropriate.

8         THE COURT:  All right, I'm going to deny this one

9  without prejudice and come back to it if you feel you really

10 need it.

11        MR. WINCHESTER:  Thank you, Judge.  I think that's it

12 on this one.

13        THE COURT:  All right.  Then we move to 5179.

14        MR. GOBENA:  Yes, Your Honor.  Good afternoon, Gejaa

15 Gobena here on behalf of the United States.  And I have some

16 good news to report which is that counsel and I have made

17 substantial progress in narrowing the issues that are, we need

18 to present to Your Honor.

19        THE COURT:  All right.

20        MR. GOBENA:  And I don't know if you want me to go

21 through the issues that we resolved, but I think--

22        THE COURT:  No.

23        MR. GOBENA:  --but I think we agree--

24        THE COURT:  Done.

25        MR. GOBENA:  Okay.  We've agreed to memorialize it in