## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE | ) | Master File No. 01-12257-PBS |
| LITIGATION | ) | Subcategory Case No. 06-11337 |
| _____ | ) | |
| | ) | Judge Patti B. Saris |
| **THIS DOCUMENT RELATES TO:** | ) | |
| *United States of America ex rel.* | ) | Magistrate Judge Marianne B. Bowler |
| *Ven-a-Care of the Florida Keys, Inc., v.* | ) | |
| *Dey, Inc., et al.* | ) | |
| CIVIL ACTION NO. 05-11084-PBS | ) | |
| _____ | ) | |

### JOINT RESPONSE TO MOTION TO COMPEL
### LUIS COBO AND VEN-A-CARE OF THE FLORIDA KEYS, INC.
### <u>TO PRODUCE DOCUMENTS</u>

Relator, Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care") and Luis Cobo by and

through their undersigned counsel file this their Response to Motion to Compel and further

state as follows:

### BACKGROUND

Ven-A-Care is the Relator in the two qui tam actions which precipitated the

Government's claims in this action.  Therefore, Ven-A-Care is a party to this action.[1]

Ven-A-Care is a Florida corporation in Key West, Florida.  Ven-A-Care's current principal

---

[1]Ven-A-Care filed its qui tam action under seal in the Southern District of Florida against Dey,Inc. ("Dey") and other drug manufacturers for reporting false and fraudulent price and cost information for numerous drugs, causing inflated Medicare and Medicaid reimbursement.  Ven-A-Care filed a second action against Dey in the District of Massachusetts on April 11, 2000.  The two actions were consolidated on June 26, 2006 by Judge Morris E. Lasker.  On January 18, 2007, the United States intervened and filed its complaint against Dey and brought the same claims the Relator had, to wit that Dey violated the False Claims Act through its inflated price reports for certain drugs listed in the complaint. The Relator adopted the Government's Complaints.

officers and directors are John M. Lockwood, M.D., Luis Cobo, RPh, and T. Mark Jones. To date, federal and state government recoveries in false price reporting cases brought by Ven-A-Care total more than $945 million.  Dey has moved to compel Ven-A-Care to produce Cobo Pharmacy documents.  However, there is no outstanding document request from Dey to Ven-A-Care for Cobo Pharmacy documents, and Ven-A-Care does not have custody or control of Cobo Pharmacy documents.

Mr. Cobo is a principal employee of Ven-A-Care, but as an individual he is not a party to this action.  Mr. Cobo formerly owned Cobo Pharmacy, a Florida corporation and retail pharmacy that was located in Key West, Florida.  Mr. Cobo sold Cobo Pharmacy to Eckerd Drugs in 2000.  See **Exhibit A**, 7/31/08, Cobo Tr., at 659:5-9 and 614:1-14.[2]  On August 4, 2008, after completing Mr. Cobo's deposition as a principal of Ven-A-Care in this action, Dey served a Subpoena Duces Tecum, to Mr. Cobo requesting "[a]ll documents concerning Cobo Pharmacy."  *Katz Declaration, Document 94, Exhibit J.*  In response to a request by counsel, Dey modified its subpoena and included more specific requests. *Katz Declaration, Document 94, Exhibit M.*  Counsel for Mr. Cobo determined that Dey's more specific requests did not resolve Mr. Cobo's objections to relevance or scope and notified Dey on or about October 24, 2008, that Mr. Cobo would not produce documents responsive to the subpoena because the specific requests were irrelevant and duplicative of other discovery in this action.

---

[2]Mr. Cobo has been deposed by the Defendants in this action for a total of three days.  There are 874 pages of Mr. Cobo's deposition testimony, and so by reason of its length a complete copy of Mr. Cobo's deposition testimony has not been filed with the Court.  Dey has filed excerpts of Mr. Cobo's deposition testimony in support of its Motion.  Ven-A-Care and Mr. Cobo have attached excerpts of Mr. Cobo's deposition testimony that were not referenced in Dey's Motion in order to give the Court a more complete view of the testimony given by Mr. Cobo on the subjects at issue.

Mr. Cobo has provided the defense with three full days of deposition testimony in this matter as a principal of Ven-A-Care, during which he testified extensively about his former role in and ownership of Cobo Pharmacy.  Dey has now moved to compel Mr. Cobo to produce the following subset of requested Cobo Pharmacy documents:  1)  "Audits of Cobo Pharmacy";  2)  "Medicaid claims and amounts billed in the claims";  3)  "Documents concerning Cobo Pharmacy's Costs to Purchase Drugs, Dispensing Costs, Profits and Losses"; and  4) Documents concerning whether Mr. Cobo's submission of Usual and Customary Charges were accurate.

Although Mr. Cobo sold Cobo Pharmacy in 2000, he has maintained certain records of Cobo Pharmacy that may fall into the categories listed above.  **Exhibit A**, 7/31/08, Cobo Tr., at 658:22-659:9.  Mr. Cobo has objected to producing those documents based on lack of relevance and the fact that their production would be duplicative of other discovery previously conducted in this action.  Specifically, Mr. Cobo possesses Explanations of Benefits from Florida Medicaid ("EOB") which contain confidential patient medical information, invoices for purchases of prescription drugs, some third party billings, and general accounting records which include information not related to the sale or purchase of prescription drugs.  Certain documents were transferred to Eckerd Drugs in 2000 as part of the purchase agreement, and Mr. Cobo no longer has custody or control over those documents.

In its motion to compel, Dey asks the Court to compel Mr. Cobo to produce documents related to:  1) an internal audit that Mr. Cobo conducted on Cobo Pharmacy billings sometime between late 2000 and early 2001; and 2) a Florida Medicaid Audit conducted without Mr. Cobo's knowledge in 2000.  After the sale of Cobo Pharmacy to

3

Eckerd sometime between late 2000 and early 2001, Mr. Cobo conducted an internal audit of his Florida Medicaid billings to determine whether Cobo Pharmacy had received any overpayments as a result of the kind of price reporting fraud Ven-A-Care has alleged in its false price reporting cases against drug manufacturers.  After conducting the audit, Mr. Cobo refunded approximately $40,000.00 to Florida Medicaid.  **See Exhibit A**, Cobo Tr., 797:13-812:22.  During that same general time period, but unrelated to Mr. Cobo's voluntary internal audit and unbeknownst to him, Florida Medicaid conducted an audit of Cobo Pharmacy.  Dey has attached copies of the audit case file to Mr. Katz's Declaration in support of its motion.  *Katz Declaration, Document 94, Exhibit D.*  Mr. Cobo was not present during the Florida Medicaid audit and was completely unaware that Florida Medicaid conducted an audit of his former pharmacy in 2000 until Dey's counsel presented him with the Florida Medicaid materials at his deposition on August 8, 2008.  See **Exhibit A**, Cobo Tr., 815:1-825:4; 827:3-9; and 835:10-842:5.  The audit report contained findings that mostly stemmed from original, hard copy prescriptions having not been made available to the auditor.  See **Exhibit A**, Cobo Tr., 838:15-842:3.  Upon acquiring Cobo Pharmacy, Eckerd assumed responsibility for and control of all of the pharmacy's records, including patient files, prescription files and all electronic data which was used in dispensing drugs and conducting the business.  *Id.*  When Mr. Cobo sold Cobo Pharmacy to Eckerd,  the records of original, hard copy prescriptions were in proper condition and placed in orderly storage.  *Id.*  No fraud was alleged in the audit case file, and Florida Medicaid found "no abuse" and closed the file.  *Id.*

4

## ARGUMENT

**A.**  **Ven-A-Care can not be compelled to produce the Cobo Pharmacy documents because it does not have possession, custody or control of them.**

Dey did not serve a discovery request upon Ven-A-Care for Cobo Pharmacy documents.  *See, Katz Declaration, Document 94, Exhibit P.*  Also, Ven-A-Care does not have possession, custody or control of the Cobo Pharmacy documents Dey seeks.  The relationship between Ven-A-Care and Cobo Pharmacy is limited to Mr. Cobo's role as a principal of both companies and Ven-A-Care's occasional purchase of drugs from Cobo Pharmacy.  Cobo Pharmacy was a separate legal entity and was not a related company of Ven-A-Care.

Dey cites several cases for the proposition that Mr. Cobo's role as a principal of both Ven-A-Care and Cobo Pharmacy equates to Ven-A-Care having "control" over Cobo Pharmacy documents.  All the cases Dey cites are distinguishable from this case.  *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 131 F.R.D. 46(S.D.N.Y. 1990)(finding the "third parties" were directly relevant to ownership issues and the relevant transactions impacting the case); *Gen. Envtl. Sci. Corp. v. Horsfall*, 136 F.R.D. 130 (N.D. Ohio 1991)(ordering non-parties' documents produced by party based on theories of "alter ego"); and *Advance Labor Serv., Inc. v. Hartford Accident and Indemnity Co.*, 60 F.R.D. 632 (N.D. Ill. 1973)(ordering subsidiary to produce the "parent" corporation's documents).

**B.**  **Dey is engaged in a fishing expedition:  Cobo Pharmacy documents are not relevant and production would be unduly burdensome to a non-party.**

Courts have found that discovery from non-parties may be more limited than discovery permitted from parties.  *See, In re: Cusumano, et al. v. Microsoft Corp.*, 162 F.

3d 708, 717 (1st Cir. 1998)(finding that with respect to discovery from a non-party "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *Blount Int'l, Ltd. v. Schuylkill Energy Resources Inc., et al.*, 124 F.R.D. 523, 526 (D. Mass. 1989)( stating "while discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery.")(citations omitted); *Heidelberg Americas, Inc. V. Tokyo Kikai Seisakusho, Ltd. et al.*, 333 F. 3d 38, 41-42(1st Cir. 2003). Therefore, Cobo Pharmacy or Mr. Cobo, as a non-party, should not automatically be required to produce the same types of documents necessarily produced by Ven-A-Care in this action.

Dey tried a similar tactic of subpoenaing irrelevant discovery from a non-party pharmacy in the case of *The State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032A (Fla. 2d Cir. Ct.), a state case involving price reporting fraud against Dey (the "Florida Case"). In that case, Dey subpoenaed documents from a non-party pharmacy on the basis that Jerry Wells, once a program manager of Florida Medicaid, worked for the pharmacy on a part time basis. The court in that case quashed the subpoena to the pharmacy, ruling that it was "overbroad, burdensome and oppressive" as there was "no nexus or link established" between the non-party pharmacy and the issues in the litigation. *The State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032A (Fla. 2d Cir. Ct.) *Order Denying Motion to Compel dated June 23, 2006.* For the Court's convenience, the Order in the Florida Case is attached as **Exhibit B**. Mr. Cobo, like Mr.

Wells, is a witness in the instant action.  However, Mr. Cobo's and Mr. Well's positions with non-party pharmacies and the records of those non-party pharmacies are not relevant to the issues in the litigation and will not lead to the discovery of relevant evidence.

       1.    Dey's requests for Cobo Pharmacy pricing documents are duplicative.

Dey seeks documents concerning Cobo Pharmacy's costs to purchase drugs, dispensing costs, profits and losses.  The documents sought are not relevant and are duplicative of discovery already sought and obtained by Dey in this action.  Dey has received an enormous amount of discovery from Ven-A-Care in this action, including Ven-A-Care documents reflecting invoice prices and Medicaid claims.  Ven-A-Care has produced all the pricing information in its possession.  It has produced over 86,000 images of pricing catalogues, price lists, advertisements and other pricing information in addition to several electronic price databases, 1,000 images of Medicare and Medicaid claims, and over 6,800 images of invoices.  Now, Dey seeks the same types of documents from Cobo Pharmacy.  Furthermore, price information regarding actual acquisition prices is readily available to Dey from its own internal pricing records and those Dey has turned over in discovery to the United States.  Additional invoice prices or other pricing information from non-party Cobo Pharmacy would be clearly duplicative and unduly burdensome.

Additionally, Dey, along with other MDL Defendants, has requested and received extensive discovery related to Medicaid directly from government entities.  As evidenced by Mr. Katz's Declaration, Dey has received from Florida Medicaid claims submitted by Cobo Pharmacy and other Florida pharmacies.  Dey has no need for duplicative information from Cobo Pharmacy.  *See Katz Declaration, Document 94, Page 2, Item 12.*

2.    Documents sought to evaluate Cobo Pharmacy's Usual and Customary charges are not relevant and not likely to lead to the discovery of admissible evidence.

Dey argues that documents regarding Cobo Pharmacy's Usual and Customary ("U&C") charges are relevant to show that Dey's alleged false statements were not material and therefore the Plaintiffs can not establish a cause of action under the False Claims Act. Dey argues specifically that the U&C charge information sought from Cobo Pharmacy is necessary to evaluate the U&C amounts billed in Cobo Pharmacy claims and necessary to show that Dey's false statements are immaterial to the claims. However, U&C charges are not related to actual acquisition cost and there is no set, defined relationship between the two price terms. Medicaid reimbursed based on Estimated Acquisition Cost ("EAC"), which relied on manufacturers' reports of AWP, Direct, and WAC prices, and the FUL (based on the lowest WAC, or in some instances in the absence of a WAC, AWP). Federal and State reimbursement methodologies mandated basing reimbursement on a provider's U&C charge only when it would result in the lowest reimbursement amount, in order to protect the federal fisc. The report of a U&C (regardless of whether it was false, incorrect or correct) would not affect EAC and would not affect the reimbursement based upon Dey's false, inflated AWPs or WACs. In a related action, *The Commonwealth of Massachusetts v. Mylan Laboratories, Inc., et al., Civil Action No. 03-11865,* Judge Saris addressed whether the falsity of a pharmacy's U&C charge affected the State of Massachusetts' claims. Judge Saris reasoned,

> [E]ven if most of the U&Cs were false, that would not stop the defendants from being chargeable with causing false claims to be submitted. The FCA attaches 'liability upon *presentment* of a false or fraudulent claim, rather than actual payment on that claim.' *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F. 3d 428, 445-446 (6th Cir. 2005). . . .

8

> When defendants published false WACS, they insured that any claims for reimbursement for their drugs would be false.  Assuming the pharmacies subsequently lied about their U&Cs when they submitted their claims, their actions did not cut off liability for the defendants.

*The Commonwealth of Massachusetts v. Mylan Laboratories, Inc., et al., Civil Action No. 03-11865, Document 570, at pp 41-42* (D. Mass. December 23, 2008).  Consequently, even the submission of false U&Cs would not render Dey's false inflated AWPs and WACs immaterial to the claims for its drugs.  In the *Sanders* case, cited by Dey, the Court found that a "statement or course of conduct is material if it 'has a natural tendency to influence agency action or is capable of influencing agency action.'"   *U.S. ex rel. Sanders v. North American Bus Industries, Inc.*, 546 F. 3d 288, 297 (4th Cir. 2008) (citing U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F. 3d 370, 378 (4th Cir. 2008).  Judge Saris's analysis of the U&C charges as they relate to Medicaid shows that Medicaid's actions would not have been influenced in a way that would render the Defendants' false price representations immaterial.

      3.    Audit materials sought by Dey are not relevant to Dey's  fraud.

Dey asks the Court to compel Mr. Cobo to produce documents related to:  1) an internal audit that Mr. Cobo conducted on Cobo Pharmacy billings; and 2) a Florida Medicaid Audit conducted without Mr. Cobo's knowledge around that same time period in 2000.  Both audits and related materials are completely irrelevant to this action.

After this action was filed, Mr. Cobo, at the suggestion of Mr. Bentley, conducted an internal audit of Cobo Pharmacy Medicaid billings in order to repay Medicaid for any overpayments Cobo Pharmacy may have received as a result of the Defendants' false price reporting.  Dey argues that "Documents showing how Mr. Cobo calculated an 'overpayment'

9

from Florida Medicaid based on allegedly inflated AWPs or WACs are directly relevant to Ven-A-Care's allegations as to how an 'overpayment' should be defined and calculated." However, Mr. Cobo's audit has no bearing on the issues in this action because Mr. Cobo can not bind the United States to one particular definition or calculation of an "overpayment."  Even if Mr. Cobo were *the* Relator in this action, he could not bind the United States by his actions.   Relators have a unique role in intervened *qui tam* cases, as dictated by the *qui tam* provisions of the False Claims Act.  The *qui tam* statute, 31 U.S.C. §3730(c)(1) states:

> If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and **shall not be bound** by an act of the person bringing the action.

(Emphasis added).  The Relator can not bind the United States by its actions and neither can a third party such as Cobo Pharmacy or Mr. Cobo.  Therefore, documents of a third party entity owned by a principal of the relator corporation are not relevant, will not lead to the discovery of admissible evidence, and will not serve the purpose of limiting the issues in the case.

In its Memorandum, Dey also argues for production of documents regarding a Florida Medicaid audit of Cobo Pharmacy.  However, Dey has never made a formal production request for Florida Medicaid audit documents from Cobo Pharmacy.  *Katz Declaration, Document 94, Exhibit M, p. 4 (only requesting in item 13 audit materials limited to Mr. Cobo's internal audit resulting in repayment of $40,000 to Florida Medicaid.)*  Furthermore, Mr. Cobo and Cobo Pharmacy do not have documents related to the Florida Medicaid audit. That audit occurred after Mr. Cobo sold his pharmacy to Eckerd Drugs, and Mr. Cobo was

10

not present during the audit and was completely unaware of it until Dey's counsel presented him with the Florida Medicaid materials at his deposition on August 8, 2008. Nonetheless, the record on this matter needs to be clear. Dey has falsely accused Mr. Cobo at his deposition and in its Memorandum of fraud based upon the Florida Medicaid audit at issue. This accusation is patently false. In actuality, Florida Medicaid concluded "no abuse" and closed the case file. However, Dey continues to use the extrapolated recovery amount in the incomplete audit findings to accuse Mr. Cobo of fraud. As noted previously, the case file shows that the problems stemmed from original, hard copy prescriptions not having been made available to the auditor – a matter not within Mr. Cobo's responsibility or control. Before the Florida Medicaid audit was conducted, Eckerd Drugs had acquired Cobo Pharmacy and assumed responsibility for and control of all its records, including the records of original hard copy prescriptions, which at the time of Eckerd's acquisition were in proper condition and placed in orderly storage. Therefore, any discrepancy found by the auditors was not the result of any action of Cobo Pharmacy or Mr. Cobo, and Florida Medicaid correctly found "no abuse" on the part of Mr. Cobo or Cobo Pharmacy. The Florida Medicaid audit of Cobo Pharmacy has no relevance to this action, and Dey's attempt to use it to concoct a sham allegation of fraud against Mr. Cobo, whether in a deposition or in a motion to compel, is outrageous.

**C.    Dey does not have standing to challenge the Relator's entitlement to a share of the Government's recovery**.

31 U.S.C. §3730(d) provides that a Relator shall receive a percentage of the proceeds of a False Claims Act qui tam action. Dey argues that discovery of the Cobo Pharmacy documents will show that Mr. Cobo knew of the fraud and that his personal

11

knowledge is relevant to the Court's determination of Ven-A-Care's Relator's share. Evidently, Dey believes, as the Relator does, that there will be a recovery against it in this action for its fraudulent conduct.   Nevertheless, Dey has no standing to challenge the Relator's share of any recovery and therefore is not entitled to discovery relevant to the Court's determination of a Relator's share.   See, *United States ex rel. Mikes v. Straus, et al.*, 931 F. Supp. 248, 262 (S.D.N.Y., 1996) (finding that defendants have no standing to seek limits on the relator's share of proceeds recovered from defendants and citing *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1045-46 (6th Cir. 1994)).   Additionally, discovery of information relevant to a relator's share of the proceeds of an action is premature when no settlement or verdict has yet taken place.

## CONCLUSION

The documents sought are not relevant to the United States' case and will not lead to the discovery of relevant evidence.  Therefore, Ven-A-Care of the Florida Keys, Inc. and Mr. Cobo respectfully request that the Court deny Dey's motion to compel documents in its entirety.

DATED: January 9, 2009.

For the Relator,
Ven-A-Care of the Florida Keys, Inc.
and Luis E. Cobo,

 /s/Alison W. Simon
James J. Breen
Alison W. Simon
The Breen Law Firm
P. O. Box 297470
Pembroke Pines, FL 33029-7470
Phone: 954-874-1635
Fax: 954-874-1739
Email: jbreen@breenlaw.com
Email: alisonsimon@breenlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day, January 9, 2009, caused an electronic copy of the above to be served on all counsel of record via electronic mail service by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


 /s/Alison W. Simon_____
Alison W. Simon