UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY | ) | MDL NO. 1456 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| | ) | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| *U.S. ex rel. Ven-A-Care of the Florida Keys,* | ) | Chief Magistrate Judge Marianne B. Bowler |
| *Inc. v. Abbott Laboratories, Inc.*, | ) | |
| No. 06-CV-11337-PBS | ) | |

**RESPONSE OF ABBOTT LABORATORIES INC., DUANE L. BURNHAM, AND THOMAS R. HODGSON IN OPPOSITION TO THE UNITED STATES' OBJECTIONS TO THE DECEMBER 4, 2008 ORDER BY MAGISTRATE JUDGE BOWLER**

If the United States' latest round of objections sound familiar, there is good reason. This Court already considered, and overruled, objections from the Government relating to the exact same topic rehashed here – whether the Government should be permitted to depose two former Abbott executives: Duane Burnham (Abbott's former Chief Executive Officer and Chairman of the Board of Directors) and Thomas Hodgson (Abbott's former President and Chief Operating Officer). (*See* 3/12/08 Electronic Endorsement, attached as Ex. A.) Faced with the uncontrovertable record that these gentlemen have no relevant information that could not be obtained from other current or former Abbott employees, Magistrate Judge Bowler initially refused the Government's efforts to depose them, either in person or by written question. In rejecting the Government's subsequent objections, this Court found that Judge Bowler's decision to deny these depositions outright was not clearly erroneous. (*Id.*)

After the Court ruled, the Government continued to depose current and former Abbott employees who were directly involved in the operations of the Hospital Products Division, including former HPD President Richard Gonzalez. Yet, through all of those depositions (which raised the total to nearly 100), the Government has not unearthed a single scrap of additional

evidence to support burdening Messrs. Burnham and Hodgson with a deposition. The record of their involvement (or, more appropriately, lack thereof) in matters relevant to this case is unchanged from when this Court affirmed Judge Bowler's decision that no deposition of any kind should be had. If anything, this additional discovery only underscores further that the Government has deposed all of the persons, and more, who were involved in the operation of Abbott's former HPD business and who might have relevant information.

Nevertheless, the Government has pressed forward with its unfounded request to take the deposition of Messrs. Burnham and Hodgson. On December 4, 2008, Judge Bowler again heard argument on this issue and, giving the Government the benefit of any possible doubt, directed that the Government be permitted to serve written deposition questions to them (5 each). Dissatisfied, the Government now objects, demanding to conduct live depositions of these retired executives – months after fact discovery in this case closed. As before, the Government's objections should be overruled. If, as this Court previously held, it was not clearly erroneous for Judge Bowler to deny these depositions outright, then it simply cannot under any circumstances be clearly erroneous for Judge Bowler to allow a limited deposition via written questions.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a district judge shall only "modify or set aside any portion of the magistrate judge's order" if it is "found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A magistrate judge's order is "clearly erroneous" only when the reviewing court has a "definite and firm conviction that the magistrate judge made a mistake." *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 6 (D.R.I. 2004). In conducting its clear error review, the Court should refrain from second-guessing the magistrate judge's pre-trial discovery rulings. *Id.*

## ARGUMENT

Far from being clear error, Magistrate Judge Bowler's decision to limit the Government to deposing these former apex-level Abbott executives via written questions was amply within her authority and was more than justified by the record in this case – particularly given the fact that party discovery is long over.  Federal Rule of Civil Procedure 26(c)(1)(C) expressly provides that, for good cause, a Court may "prescrib[e] a discovery method other than the one selected by the party seeking discovery."  Courts have been especially willing to impose limits when parties involved in litigation against a large corporation demand the deposition of the opponent's senior corporate officers – commonly referred to as "apex" depositions.  *See, e.g., Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985); *Liberty Mutual Ins. Co. v. Superior Ct. of San Mateo County*, 10 Cal. App. 4th 1282, 1287 (1st Dist. 1992); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991); *Consol. Rail Corp. v. Primary Coal, Inc.*, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993).  This same protection also applies to retired executives.  *See, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987, 29 (D.N.Y. 2006); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, 11-12 (D. Cal. 2007).

Given this legal standard and the record in this case, Judge Bowler would have been more than justified in refusing to permit the Government to conduct any discovery against Messrs. Burnham and Hodgson at all.  She did not do this, however.  Instead, Judge Bowler allowed the discovery, albeit via a method other than the one the Government selected.  This decision was expressly authorized by Rule 26(c)(1)(C) and does not constitute clear error.  The Government's objections should be overruled.

I. **MAGISTRATE JUDGE BOWLER DID NOT COMMIT CLEAR ERROR IN APPLYING THE APEX DEPOSITION STANDARDS TO THE ABBOTT EXECUTIVES.**

As it did in the last, unsuccessful, objections raised on this issue, the Government first claims that Magistrate Judge Bowler committed clear error by applying the apex deposition standards to Messrs. Burnham and Hodgson, who are retired. (Obj. at 14-17; *see also* Dkt. No. 5095 at 15-16 (same argument).) The Court was not swayed by this argument previously, and nothing has changed that would suggest a different result now.

Contrary to the Government's claim, all federal cases to address the subject instruct that apex deposition standards apply with equal force to retired executives as they do to current executives. *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481 (S.D. Cal. Mar. 22, 2007) (applying apex deposition standards to WebSideStory's retired CEO); *In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, 2006 U.S. Dist. LEXIS 29987 at *29 (D.N.Y. 2006) (applying apex standards to retired CEO of Siemens AG).[1] Magistrate Judge Bowler's decision to follow the only on-point federal precedent and afford some limited protection to Abbott's retired senior executives is correct, and in any event, not clearly erroneous.

This decision is particularly sensible not only because of precedent, but also because of pragmatic concerns. Fact discovery between the parties in this matter ended months ago, and the parties are feverishly attempting to complete certain Medicaid-related discovery before turning

---

[1] The only case the Government cites to the contrary, the Missouri state court opinion in *State ex rel Ford Motor Co. v. Messina*, 71 S.W.3d 602 (Mo. 2002), is inapt because that state court expressly declined to adopt the federal apex deposition witness standards for *any* executives—retired or current. *Messina*, 71 S.W.3d at 607 ("This court declines to adopt any 'apex' rule."). The Government's attempts to distinguish *WebSideStory* and *In re Ski Train Fire* are similarly unavailing. The Government notes that the executive in *In re Ski Train Fire* was "recently" retired (Obj. at 15, n.6), without explaining how that fact is possibly relevant. Similarly, the Government claims that the *WebSideStory* court applied apex protection to the retired executive in that case only because he continued to have a role in the plaintiff corporation and because he was CEO of a new company. (*Id.*) The court's actual holding was that, while the executive did not have the "celebrity status" of apex deponents in other cases, "his responsibilities to current *and prior* employers" were of similar proportions, and therefore he was entitled to apex protection. *WebSideStory*, 2007 U.S. Dist. LEXIS 20481 at *11 (emphasis added).

to the expert phase of this nearly 14-year-old case. Judge Bowler has the unenviable task of keeping this complex, often unwieldy litigation moving forward through the discovery process, and there can be no doubt that she was well within her authority to decide, especially at this late date, that service of written questions to Messrs. Burnham and Hodgson is preferable to yet more live depositions. It should be remembered as well that, although these gentlemen are no longer employed by Abbott, "Being retired doesn't mean they're not doing something else." (1/31/08 Tr., excerpts attached as Ex. B, at 114.) Mr. Hodgson is quite active in both business and civic roles. He serves on the Board of Directors of two public companies – The Travelers Companies, Inc. (a multi-billion dollar financial and insurance organization) and Idenix Pharmaceuticals, Inc. (a biopharmaceutical company); he is a director or advisor of several privately-held companies; and he holds leadership roles in civic organizations such as a prominent medical center in Chicago and the Utah Symphony. (Ex. C, Declaration of Thomas Hodgson at ¶ 6.) Mr. Burnham also continues to have substantial business and civil commitments, including serving as a Trustee for the National Trust for Historic Preservation and as a Life Trustee of Northwestern University. (Ex. D, Declaration of Duane L. Burnham at ¶ 7.) Particularly in light of the paltry showing of relevance offered by the Government, it was well within Judge Bowler's discretion to direct these gentlemen to answer written questions, rather than submitting to a live deposition.

**II.    REGARDLESS OF THE APEX STANDARDS, IT WAS NOT CLEAR ERROR FOR JUDGE BOWLER TO LIMIT DISCOVERY AGAINST MESSRS. BURNHAM AND HODGSON.**

Even setting aside the heightened "apex" standards, there is no question that Judge Bowler's decision to permit written deposition questions, as opposed to a live deposition of these gentlemen, was not clear error. There is simply no evidence to suggest that Messrs. Burnham or Hodgson have information relevant to this case that has not otherwise been obtained from one or more of the scores of other Abbott 30(b)(1) and 30(b)(6) witnesses already deposed.

### 1. Mr. Burnham

Mr. Burnham was Abbott's CEO from 1990 to April 1999, and Chairman of Abbott's Board of Directors from 1990 to December 1998.  (*See* Ex. D at ¶ 1.)  He retired from Abbott in 1999.  (*Id.*)  Just as it did in the last, failed, objections, the Government suggests that it should be allowed to depose Mr. Burnham about certain lobbying efforts that he allegedly made on Abbott's behalf in conjunction with the Balanced Budget Act of 1997.  (Obj. at 7-8; *see also* Dkt. No. 5095 at 12-13.)  Mr. Burnham, however, does not recall any lobbying efforts connected to this decade-old legislation, nor of ever participating in any lobbying efforts related in any way to the reimbursement of pharmaceutical products by Medicare of Medicaid.  (Ex. D at ¶ 3.)  That alone should end the dispute.

Moreover, the Government cannot genuinely suggest that Mr. Burnham's deposition is required in order to fully investigate Abbott's lobbying efforts.  The Government already has requested from Abbott (and has been provided with) all responsive, non-privileged documents related to Abbott's lobbying efforts on the 1997 Balanced Budget Act and any other legislation concerning reimbursement by Medicare or Medicaid.  In addition, the Government has taken the depositions of virtually all of the senior personnel responsible for Abbott's lobbying efforts in the relevant time period, including Cynthia Sensibaugh (Senior Director, Federal Government Affairs), Dale Johnson (Divisional Vice President, State Governmental Affairs), Rosemary Haas (Senior Director, Federal Government Affairs), Mark Barmak (former Divisional Vice President, Legal, who oversaw the lobbying function), and David Landsidle (former Divisional Vice President, Government Affairs, who led the lobbying group at the time in question and the actual author of all correspondence the Government cites in support of its supposed "need" to depose Mr. Burnham).  In addition, the Government deposed a 30(b)(6) witness (Ms. Sensibaugh), who testified on behalf of Abbott as to the corporation's position about these very lobbying issues.

There is no need to pile on the live deposition of Mr. Burnham – particularly when he has attested that he remembers nothing about this subject and when the Government already will have the opportunity to submit written questions on this topic.  (*Id.*)

The Government's only rejoinder is to suggest that Mr. Burnham's live deposition is necessary because Ms. Sensibaugh and other Abbott 30(b)(6) witnesses did not have to testify on behalf of Abbott about the particulars of Mr. Burnham's knowledge of lobbying issues or his specific actions.  (Obj. at 9-14.)  The Government can hardly be heard to complain about that fact now, however, since it is undisputed that it did not originally *ask* for a 30(b)(6) witness to testify about Mr. Burnham's particular knowledge or activities.  And when plaintiffs belatedly tried to add such a request during the January 31, 2008 hearing before Judge Bowler, the Court properly denied that request as untimely.  (*See* Ex. B at 124 (plaintiff asking for "a little bit of leeway to add a 30(b)(6) topic, explicitly directed at the knowledge and what, if anything, these witnesses [Burnham and Hodgson] did or did not do" and Judge Bowler refusing because this request was "something beyond the Order of December 18 [by which this Court directed that no new party discovery could be served]".)  The Government complained about this 30(b)(6) issue in its subsequent objections (*see* Dkt. No. 5095 at 4,6), and this Court did not sustain those objections.  It is far too late for the Government to complain now.

The fact that Abbott's 30(b)(6) witnesses were expressly not required to, and did not, testify about Mr. Burnham's knowledge does not in any way suggest that his live deposition (as opposed to the written questions allowed by Judge Bowler) is necessary.  To the contrary, the 30(b)(6) witnesses testified at length about the substance of Abbott's corporate activities and positions on a host of issues, including lobbying.  That testimony, combined with the numerous

other lobbying-related depositions already taken, is all that the Government can legitimately require.

### 2. Mr. Hodgson

Mr. Hodgson was the President and Chief Operating Officer of Abbott from 1990 to 1999, when he retired. (*See* Ex. C at ¶ 1.) During his time as President and COO, Mr. Hodgson was not responsible for directly supervising the day-to-day marketing, pricing, or sale of Abbott's products. (*Id.* at ¶ 3.) Prior to assuming the post as President and COO, Mr. Hodgson ran Abbott's international division from 1983 to 1990, where he focused solely on Abbott's business outside the United States. (*Id.* at ¶ 1.) Thus, Mr. Hodgson had no direct responsibility or involvement with respect to the pricing, marketing, or sale of Abbott's products in the United States during any time period that is even arguably relevant to this case. Nor has he had any involvement with such matters since his retirement in 1999. (*Id.* at ¶ 3.)

The Government never once identifies any specific actions Mr. Hodgson took that are relevant to this case. Instead, the Government simply argues that he should be burdened with a deposition because (i) as COO, he was a top-level supervisor of numerous divisions of Abbott's business, including HPD; and (ii) he testified as a corporate designee in another, unrelated case. (Obj. at 8-9.) These are the exact same bases that the Government offered in its previous objections relating to Mr. Hodgson, and this Court quite rightly found no clear error in Judge Bowler's decision to prohibit Mr. Hodgson's deposition entirely. (*See* Dkt. 5095 at 13-14.)[2]

---

[2] As noted in prior briefing, neither of these arguments holds water. First, Mr. Hodgson was the second-highest-ranking officer within Abbott. There is no evidence that he was in any way involved in the day-to-day operations of the former HPD, including the marketing or sales practices of that division. The Government has already deposed the former President of HPD (Richard Gonzalez) and numerous managers and employees who were directly involved in HPD operations. Pursuing Mr. Hodgson is, at best, a fishing expedition. Second, Mr. Hodgson's prior deposition related exclusively to Lupron® (a drug not at issue in this case, and which the Court already has recognized as irrelevant), and he was made a corporate designee only as to the issue of the nature of the organizational relationship between Abbott and TAP and, relatedly, Abbott's knowledge of certain of TAP's

There is no reason for this Court to revisit the issue.  Indeed, overruling the present set of objections is even more appropriate, since there is no longer a complete denial of discovery from Mr. Hodgson, but simply a complaint by the Government that the discovery allowed by Judge Bowler is not sufficiently broad.

## CONCLUSION

Rule 26 allows a court to direct that discovery be had by means other than that selected by the party seeking such discovery.  That is precisely what Judge Bowler did here, permitting the Government to serve written deposition questions to Messrs. Burnham and Hodgson, as opposed to conducting a live deposition.  The fact that the Government would prefer a live deposition does not come close to establishing that Judge Bowler's decision was clearly erroneous.  As it did before, this Court should overrule the Government's objections.

---

(continued…)

Lupron®-related business practices.  (*See* Dkt. No. 4782 at 5.)  He was not offered as a designee for any subject related to AWP.

Dated:  January 12, 2009                                   Respectfully submitted,


  /s/ Brian J. Murray                     

James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 W. Wacker Dr., Suite 3500
Chicago, Illinois  60601-1692
Telephone: (312) 782-3939
Facsimile:  (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

*Attorneys for Abbott Laboratories Inc., Miles D. White, Duane L. Burnham, and Richard A. Gonzalez*


/s/ Robert L. Michels_____
Robert L. Michels
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

*Attorney for Thomas R. Hodgson*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 12, 2009, the foregoing RESPONSE OF ABBOTT LABORATORIES INC., DUANE L. BURNHAM AND THOMAS R. HODGSON IN OPPOSITION TO THE UNITED STATES' OBJECTIONS TO THE DECEMBER 4, 2008 ORDER BY MAGISTRATE JUDGE BOWLER was served upon all counsel of record in this action electronically by posting a true and correct copy of same via Lexis-Nexis.

/s/ Brian J. Murray

CHI-1687029v1