UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) |  MDL No. 1456<br><br>Master File No. 01-12257-PBS<br><br>Subcategory No. 06-CV-11069-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>*State of Arizona* v. *Abbott Labs, et al.* 06-CV-11069-PBS | | |

### BIOGEN IDEC'S SEPARATE REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Arizona's memorandum (docket no. 5768) does not respond to Biogen Idec's three independent contentions made in support of its motion to dismiss (docket no. 5600). First, Arizona does not dispute that its complaint contains no spread allegations for Biogen Idec's drugs. Arizona does not allege that Biogen Idec's spreads typically exceeded 25% - 30%.

This should be the end of the matter. This Court repeatedly has held that, in order to survive a motion to dismiss, an AWP complaint must allege, with reference to specific drug prices, that each individual defendant's spreads typically exceeded 25% - 30%. *See, e.g., New York Counties*, 2007 WL 1051642 (D. Mass. April 2, 2007), at *15; *MDL Opinion*, 491 F. Supp. 2d 20 (D. Mass. 2007) (no liability where spreads were 30% or less).[1] Moreover, discovery is

---

[1] Arizona contends that this Court's prior holdings concerning pleading requirements do not apply here because its claims are not subject to Rule 9(b)'s particularity standards. Arizona is wrong. First, there is no dispute that Arizona's claims must be plausible as explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Second, this Court did not rely solely on Rule 9(b) in establishing its pleading requirements. Rather, this Court relied on a variety of Rules governing pleadings, including Rules 12(e) (more definite statement), 8(a) (claim for relief), and 9(b). *New York Counties*, 2004 WL 2387125, at *4 (D. Mass. Oct. 26, 2004). Third, as explained in defendants' group briefs, Arizona's claims are subject to Rule 9(b).

stayed unless the allegedly improper spreads typically exceeded 30%. *New York Counties*, Tr. of Hearing dated July 26, 2007, at 22-23.

Biogen Idec never reported an AWP price or a spread of any kind. Arizona's conclusory allegations that Biogen Idec "manipulated" and "marketed" the spread are false and make no sense. Accordingly, the complaint against Biogen should be dismissed.

Second, Hagens Berman does not reconcile its allegations against Biogen Idec in this case with the precisely opposite evidence that it presented to this Court in the related First DataBank/McKesson case. In First DataBank/McKesson, Hagens Berman contended that Biogen Idec wanted to keep its spreads low, but that McKesson and First DataBank disregarded those wishes and improperly increased Biogen Idec's spreads to a "normalized" 25% markup. *New England Carpenters Health Ben. Fund v. First DataBank, Inc., et al.*, Civ. No. 05-11148, Mem. and Order Certifying Class dated Aug. 27, 2007, at 5-6 (certain branded manufacturers that did not report an AWP, or that had suggested low mark-ups on their drugs, had an incentive to maintain low spreads); *accord, e.g.,* MCKAWP 0084327 (attached as Exhibit A) (document concerning Biogen filed by Hagens Berman in support of class certification against McKesson).

Basic principles of judicial estoppel and common sense prevent Hagens Berman from making one factual assertion in support of claims against First DataBank/McKesson, only to reverse course after settling that case, and make the precise opposite assertion in support of claims against Biogen Idec. This is not just a matter of Hagens Berman pursuing *duplicative* or *alternative* consumer claims, a separate but important matter raised by Biogen Idec's co-defendants. Rather, this is a matter of Hagens Berman pursuing *conflicting* claims for the same alleged consumers, a practice this Court should not condone.

Third, Arizona does not dispute that discovery would impose substantial and unique burdens on Biogen Idec because, unlike most or all of its co-defendants, it is not subject to any

other ongoing discovery in this MDL.  Therefore, if Biogen Idec is not dismissed from this case, it may have to undertake burdensome and expensive discovery in defense of claims that are not true, as Hagens Berman should well know.

For all of these reasons, Biogen Idec's motion to dismiss should be granted.  In the alternative to dismissing the claims against Biogen Idec, this Court should, at a minimum, stay all discovery against Biogen Idec.


Dated:  January 15, 2009                          Respectfully submitted,


                                                                                              /s/ William A. Davis_____
                                                  William A. Davis (*pro hac vice*)
                                                  Mintz, Levin, Cohn, Ferris,
                                                    Glovsky and Popeo, P.C.
                                                  701 Pennsylvania Avenue, Suite 900
                                                  Washington, DC  20004
                                                  (202) 434-7300

                                                  Attorneys for Biogen Idec Inc.

-4-

## **CERTIFICATE OF SERVICE**

      I hereby certify that I, William Davis, an attorney, caused a true and correct copy of the foregoing MEMORANDUM OF LAW to be delivered to all counsel of record by electronic service via LexisNexis File & Serve, on January 15, 2009, for posting and notification to all parties.

                                             /s/ William A. Davis_____
                                               William A. Davis

4516649v.1

# EXHIBIT A

| | |
|---|---|
| From: | James, Robert |
| Sent: | Friday, April 12, 2002 2:55 PM |
| To: | Lirette, Karl; Clinkscales, Paul |
| Cc: | Yonko, Greg |
| Subject: | Avonex & Copaxone |

Just a note to let everyone know that "I am told" that the mark up on Avonex and both the old and new sku's of Copaxone will be changed to 25% (to create a 20% spread on WAC/AWP) next week. This will appear in the McKesson First DataBank download one week from tomorrow (if everything works properly) and then the changes will be made in DITM for the following week. Yes!!

Also, I am told that the big insurance companies will have this updated within a couple of days of receiving FDB information, but the States only update monthly so that may take a little longer depending on the timing. This should make a significant contribution to your profitability as illustrated by the following example using a reimbursement of AWP - 15% plus $2.00 fee.

Avonex   at 16 2/3% spread, profit would be $18.42..........and now at a 20% spread, profit would be $51.31....not bad!
   This is an increase of $32.89 per script.

Copaxone at 16 2/3% spread, profit would be $19.72..........and now at a 20% spread, profit would be $57.39....pretty good!
   This is an increase of $37.67 per script.

Take care.

Bob James
Director-Brand Pharmaceutical Product Management
McKesson
One Post Street—6th Floor
San Francisco, CA 94104
415-983-8755,  Fax 415-732-2951
robert.james@mckesson.com

1

MCKAWP 0084327
CONFIDENTIAL