**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>)<br>) |
| THIS DOCUMENT RELATES TO: | )<br>) |
| *State of Arizona* v. *Abbott Labs, et al.*<br>06-CV-11069-PBS | )<br>)<br>)<br>) |

MDL No. 1456

Master File No. 01-12257-PBS

Subcategory Case No. 06-CV-11069-PBS

Judge Patti B. Saris

**DEFENDANTS' REPLY TO THE STATE OF ARIZONA'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

Plaintiff essentially asks the Court to ignore the past seven years of its experience with

AWP litigation and to evaluate the Amended Complaint as though virtually identical claims had

never before been addressed.  (State of Ariz.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss

(hereinafter "Pl.'s Opp.") at 5 (Dec. 12, 2008) (Dkt. 5768).)  But the fact remains that Plaintiff is

bringing its claims on behalf of the same Arizona consumers and third-party payors (TPPs)

whose claims involving Medicare and the private market were previously asserted in the MDL

Class Action.  Taking into account the fact development and legal analysis that this Court has

conducted throughout those proceedings, Plaintiff's claims cannot pass the "plausibility"

threshold set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

The Amended Complaint fails the plausibility test with respect to four categories of

drugs:  (1) self-administered drugs (SADs), (2) drugs with unremarkable spreads in the range of

approximately 30% or less, (3) multi-source drugs reimbursed at a single rate, and (4) drugs

reimbursed after the passage of the Medicare Modernization Act ("MMA").  Plaintiff concedes

that it cannot state a claim for transactions that post-date the MMA, but insists on the right to

pursue all or part of the claims in the remaining categories.  In so doing, Plaintiff selectively accepts portions of the MDL record, while rejecting others.

Plaintiff says its case is different from those adjudicated in the MDL Class Action because it is seeking unspecified injunctive relief and civil penalties.  Notwithstanding this difference in requested remedies, the underlying claims are the very same and should be dismissed as duplicative of the claims resolved in the MDL.  In any event, cloaking its restitution claims behind claims for civil penalties and injunctive relief cannot save Plaintiff's admittedly duplicative claims for restitution.  Similarly, where, as here, Plaintiff is seeking to vindicate only private interests and has not sued on behalf of the State Medicaid program, it should not be entitled to invoke the state's exemption from the one-year statute of limitations.

Plaintiff likewise seeks to avoid this Court's prior rulings concerning the particularity required to state a claim under Fed. R. Civ. P. 9(b).  It argues that Rule 9(b) does not apply to claims under the Arizona Consumer Fraud Act (ACFA), and that, even if it does apply, the Amended Complaint is sufficiently particularized.  (Pl.'s Opp. at 24-29.)  These arguments should be rejected.  Rule 9(b) clearly does apply to claims under the ACFA, and the Amended Complaint falls well short of the requisite particularity.

## ARGUMENT

**I.  PLAINTIFF HAS FAILED TO ESTABLISH THAT ITS CLAIMS WITH RESPECT TO SADS, MULTI-SOURCE DRUGS REIMBURSED AT A SINGLE RATE, AND DRUGS WITH UNREMARKABLE "SPREADS" ARE PLAUSIBLE IN LIGHT OF THIS COURT'S PRIOR RULINGS.**

Plaintiff concedes that its Amended Complaint must allege sufficient facts to establish a "plausible entitlement to relief,"  (*see* Pl.'s Opp. at 7), but fails to establish that plausibility with respect to four categories of claims that this Court has already considered extensively.  In particular, the Amended Complaint fails to meet that plausibility standard with respect to SADs, multi-source drugs reimbursed at a single rate, drugs with unremarkable WAC/AWP "spreads",

and sales after the passage of the Medicare Modernization Act ("MMA").  (Mem. in Support of Defs.' Mot. to Dismiss (hereinafter "Defendants' Memorandum"), at 4-14 (Sept. 19, 2008) (Dkt. 5599).)  Purporting to recognize that this Court's prior rulings should guide its claims, Plaintiff clarifies that it will not pursue claims for SADs "reimbursed on a Maximum Allowable Cost ("MAC") or other non-AWP methodology"[1] and claims for sales after the passage of the MMA. (Pl.'s Opp. at 2-3 & n.6.)  Reversing course, Plaintiff then opposes Defendants' motion seeking dismissal of the other categories of drugs, in large part, by arguing that this Court's consideration of its prior AWP opinions constitutes an impermissible weighing of facts outside the pleadings. (Pl.'s Opp. at 2-3, 7-8.)

Plaintiff ignores the teaching of *Twombly*.  *Twombly* does not require a court to check its common sense or learning about the economic realities of the marketplace at the door.  In fact, the Supreme Court in *Twombly* does exactly the opposite.  *Twombly*, 127 S. Ct. at 1965-66. Accordingly, *Twombly* stands for the proposition that dismissal is warranted in any case where the allegations "stop[] short of the line between possibility and plausibility of 'entitle[ment] to relief."  *Id.* at 1966.  In weighing whether the allegations establish a "plausible entitlement to relief," it is entirely appropriate for the Court to take into account its experience with similar or related cases, as the *Twombly* Court did itself.  *Id.* at 1965-66 (applying the plausibility standard with "the benefit of [] prior rulings and considered views of leading commentators ... that lawful parallel conduct fails to bespeak unlawful agreement."); *see also Port Dock & Stone Corp. v. Oldcastle Northeast*, *Inc.*, 507 F.3d 117, 124-125 (2d Cir. 2007) (looking to prior jurisprudence on monopolization to determine plausibility of allegations.)  Likewise, this Court, in determining whether the Amended Complaint meets the plausibility standard, has the benefit of the

---

[1]  It is unclear why Plaintiff limits this clarification to SADs.  Plaintiff's claims as to physician-administered drugs ("PADS") reimbursed on MACs are just as implausible as its claims as to SADs reimbursed on MACs, at least with respect to the private, non-Medicare, market.  *See infra* Section I.B.

considerable knowledge of the industry it has developed over the past seven years and of its numerous published opinions analyzing similar claims.

Plaintiff's protestations that the Court may not consider materials beyond the Complaint miss the point of Defendants' argument.[2]  Defendants are not asking the Court to take notice of its prior rulings or suggesting that it is legally bound by them.  Defendants simply ask this Court to evaluate the allegations in the Amended Complaint in the context of what it knows about the marketplace for pharmaceutical products.  Taken to its logical extreme, Plaintiff's argument would eviscerate the Supreme Court's holding in *Twombly*, condemn this Court to years of litigation over claims that it knows to be implausible, and needlessly subject Defendants to untold litigation expense.  Such outcomes are ones that the *Twombly* Court said were to be avoided.  Put simply, Defendants' argument is that this Court should apply what it knows about pharmaceutical pricing and distribution in evaluating the plausibility of the Amended Complaint's allegations.  This is precisely what *Twombly* requires.

### A. Plaintiff Has Not Pointed to Factual Allegations that Would Make its Claims Regarding SADs Plausible.

This Court has repeatedly acknowledged that, in the SAD market, there has long been widespread knowledge regarding AWP, and the range of discounts and rebates from AWP that are available in the marketplace, as a result of the omnipresence of Pharmaceutical Benefit Managers (PBMs). *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 491 F. Supp. 2d 20, 39 (D. Mass. 2007) (hereinafter "MDL Op."); *In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 230 F.R.D. 61, 95-96 (D. Mass. 2005) (hereinafter "Class Cert. Op.").  In response to Defendants' argument that claims for SADs are not plausible when considered in light of the dynamics of the SAD market, Plaintiff does little more than repeat bare, conclusory allegations,

---

[2] *Simonet v. SmithKline Beecham Corp.*, cited by Plaintiff for the proposition that the Court may not consider materials outside the complaint, is inapposite as it merely stands for the proposition that there are certain matters beyond the complaint of which the Court can take judicial notice.  506 F. Supp. 2d 77, 81 & n.1 (D.P.R. 2007) .

that are eerily reminiscent of those made in the MDL Class Action, that the alleged "AWP scheme" in fact did apply to SADs and to PBMs.  (Pl.'s Opp. at 9.)  Plaintiff does not, and cannot, say anything that makes its conclusory allegations seem plausible in light of the dynamics of the SAD market nor does it explain how TPPs and individuals could plausibly have been misled by AWPs for SADs when those entities and individuals benefited from the knowledge and bargaining power of PBMs.[3]

The Court need not disregard all that it has learned about how the SAD market works merely because it developed some of that understanding during class certification proceedings in a related case.  The Court ultimately decided against certifying a class with respect to SADs because "individual issues predominated and ... trial would be a 'management nightmare.'"[4] (Pl.'s Opp. at 10.)  The reason individual issues predominated was because PBMs dispersed information to TPPs and their members regarding AWP, discounts, rebates, and other particularized information.  *See Class Cert. Op.*, 230 F.R.D. at 71-72.  Repeating the same allegations for SADs that failed in the MDL Class Action, without accounting for those unique aspects of the SAD market that this Court has deemed significant, does not suffice to establish a plausible entitlement to relief.  Accordingly, Plaintiff's claims with respect to SADs should be dismissed.  *See Twombly*, 127 S. Ct. at 1965-66.

---

[3] Plaintiff suggests that Defendants make an illogical leap between the knowledge of the PBMs to "payor knowledge" and "fail to explain how PBM knowledge would or even could be imputed to individuals or the State." (Pl.'s Opp. at 9.)  As the Court wrote,"[k]nowledge about the AWP of SADs was available in the industry largely because of the role of PBMs, which represent TPPs in negotiating drug prices with pharmaceutical manufacturers to get discounts and rebates on SADs sold by pharmacies."  *MDL Op.*, 491 F. Supp. 2d at 39.  Just as TPPs benefis from the discounts, rebates, and lower prices negotiated by PBMs, so do the individual members of those plans.  Moreover, all purchasers in the market benefit from the "commercial information regarding common negotiable terms, such as rebates, discounts, audit rights, fee structure, penalties, risk assignment and other services," that PBMs spread in the SAD market. *Class Cert. Op.*, 230 F.R.D. at 71-72.

[4] Plaintiff's claims covering all private payments for SADs by Arizona consumers and TPPs present an identical "management nightmare."  Plaintiff would still need to prove its claims as to Arizona citizens and TPPs in light of highly individualized plans offered by TPPs and highly variable contracts with PBMs.  *See Class Cert. Op.*, 230 F.R.D. at 71-72.

With respect to single-source, brand SADs, Plaintiff wholly fails to address Defendants' argument that its claims are particularly implausible.  (Defs.' Mem. at 8.)  For such drugs, the "spread" cannot have any impact on the prescribing decision because the retail pharmacy has no ability to influence which drug the physician prescribes, and the physician has no financial stake in which drug is dispensed.  As a result, Plaintiff's theory simply makes no sense with respect to brand SADs and such claims should be dismissed as implausible under *Twombly.*

### B.      Plaintiff Has Not Pointed to Factual Allegations that Would Make its Claims Regarding Multi-Source Drugs Reimbursed at a Single Rate Plausible.

Plaintiff "concedes that it will not pursue claims for drugs not reimbursed based on AWP."  (Pl.'s Opp. at 11 n.9.)  Elsewhere, Plaintiff clarifies that it will not pursue claims for SADs reimbursed based on MACs.  (*Id.* at 10.)  No principled reason exists, however, to distinguish between SADs reimbursed based on MACs and PADs reimbursed based on MACs.  Plaintiff suggests only that "the State believes the multi-source Subject Drugs are reimbursed based on AWP."  (*Id.* at 11 n.9.)  That belief, at least with respect to all multi-source drugs in the private (*e.g.* non-Medicare) market, cannot be squared with prior proceedings in the MDL Class Action.  There, the Court recognized the prevalence of proprietary MAC pricing among commercial payors and refused to certify a class of multi-source PADs reimbursed in the private market unless plaintiffs could show that reimbursement was "expressly predicated on AWP." *Class Cert. Op.*, 230 F.R.D. at 74, 91.  As a result, class plaintiffs promptly abandoned claims for multi-source drugs in Class 3.  Dir. Test. of Raymond S. Hartman ¶ 155(b) (Nov. 1, 2006) (Dkt. 3296); *see also MDL Op.*, 491 F. Supp. 2d at 39 ("TPP reimbursement for multi-source drugs is generally not calculated based on the drug's AWP.  Accordingly, no damages have been calculated for multi-source drugs in Class 3.")  Plaintiff here points to no factual allegations that suggest that its claims for multi-source PADS would be any more viable than those of class

plaintiffs.  Accordingly, all claims for multi-source drugs in the private market (PADs and SADs alike) should be dismissed.  *See Twombly*, 127 S. Ct. at 1965-66.

Plaintiff likewise fails to address the simple fact that, for multi-source drugs reimbursed by Medicare based on the median of all AWPs of therapeutically equivalent generics, competing for market share through AWP manipulation is impossible.  A manufacturer in such circumstances cannot increase market share by inflating its AWPs because any resulting increase in the reimbursement rate would apply to all competing, therapeutic equivalents.  (*See* Defs.' Mem. at 11.)  Plaintiff's only attempt to explain the motivation for the alleged fraudulent conduct is that "drug makers act in unison by elevating the AWP for all generic drugs, thereby inflating the amount of the reimbursement that occurs through Medicare."  (Am. Compl. ¶ 157).  Just as *Twombly* found that vague, conclusory allegations of concerted conduct did not render a claim plausible or save it from attack under Rule 12(b)(6), Plaintiff's vague, conclusory allegation of concerted action does not render these otherwise implausible claims plausible.  *See Twombly*, 127 S. Ct. at 1966.

In addition to lacking incentive, manufacturers of generic drugs that are reimbursed based on a median lack any practical ability to have any appreciable impact on the reimbursement rate.  *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 267, 273 (D. Mass 2007) (holding that Warrick's price reporting practices for albuterol did not cause Class 2 any damages because of the methodology for calculating Medicare reimbursement based on a median.)[5]  In light of the practical inability of multi-source drug manufacturers to unilaterally affect the reimbursement rate, Plaintiff's insufficient allegations of concerted action, and the lack

---

[5]  Plaintiff's Opposition focuses on the Court's MDL Opinion as setting forth a scenario in which a single generic manufacturer could affect the median-based reimbursement rate.  (Pl.'s Opp. at 12.)  The Amended Complaint fails to allege facts sufficient to establish that its claims for multi-source drugs would survive that analysis used by the Court.  Moreover, Plaintiff ignores that when the scenario set forth by the Court was applied to the only generic at issue, albuterol, the result confirmed that Warrick had no ability to impact the reimbursement rate.  *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 520 F. Supp. 2d 267, 273 (D. Mass. 2007).

of incentive for multi-source manufacturers to attempt to manipulate a reimbursement rate that is paid to all competing, therapeutically equivalent drugs, Plaintiff's allegations with respect to multi-source drugs fall short of the *Twombly* plausibility standard and should be dismissed.

### C.   Plaintiff Has Not Pointed to Factual Allegations that Would Make its Claims Regarding Brand Drugs With Unremarkable WAC/AWP Spreads Plausible.

Notwithstanding this Court's suggestion that these cases should be limited to drugs with "mega-spreads," Plaintiff proposes to litigate over "the vast bulk of drugs in the private and public sectors" regardless of the magnitude of the spread. (Pl.'s Opp. at 9, 12-13.)  Plaintiff offers no allegations that suggest claims for drugs with spreads less than 30% are plausible in light of widely-held industry expectations.  In the MDL Class Action, the Court held that it was widely known that for brand PADs and SADs alike, AWP "bore a formulaic relationship to WAC of a 20 to 25 percent markup" and "there was some discounting from WAC" and found no liability where spreads are typically below 30%.  *MDL Op.*, 491 F. Supp. 2d at 39.

Plaintiff notes that, faced with similar arguments from the Defendants in the New York Counties case, the Court did not dismiss claims for drugs with spreads under 30 % outright, but instead stayed discovery on such drugs unless and until the plaintiffs could submit an expert affidavit providing a good faith basis for a lower threshold to be applied to the New York Counties.  *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 498 F. Supp. 2d 402, 405 (D. Mass. 2007).  Importantly, this Court based its decision to stay discovery rather than dismiss such drugs in the New York Counties case on the fact that it had not made a finding as to the applicability of the 30% threshold in the *Medicaid* context.  (*See* July 26, 2007 Hr'g. Tr. 18:12-18.)  By contrast, this case, like the MDL, is premised upon reimbursement by the *Medicare* and *private payor system*s.  Accordingly, there is no good reason to prolong litigation concerning claims that, in light of well-known market expectations, are implausible.  Again, *Twombly* commands the dismissal of drugs for which Arizona has not alleged spreads exceeding

30%.  127 S. Ct. at 1965-66.  At a minimum, as in the New York Counties case, discovery on all drugs for which Plaintiff has not alleged spreads exceeding 30 should be stayed until Plaintiff provides an expert affidavit providing a good faith basis for a lower liability threshold.[6]

## II.     CLAIMS OVERLAPPING THE MDL CLASS ACTION SHOULD BE DISMISSED OR STAYED.

The MDL Class Action resolved certain claims as to Arizona consumers and TPPs, some by settlement and some by adjudication of relevant issues.  (*See* Defs.' Mem. at 15-19.) Notwithstanding those settlements by Arizona consumers and TPPs and rulings extending to them, Plaintiff, represented by the MDL class counsel, seeks to proceed with claims on behalf of these very same consumers against the some of the very same Defendants for the very same purchases of the very same drugs for violation of the very same consumer protection statute. (*See* Pl.'s Opp. at 15-22.)  Thus, even where the consumer or TPP has settled with regard to its purchases of a particular drug, while effectively conceding that it may not be entitled to pursue restitution for those same purchases, Plaintiff maintains that it has a claim for injunctive relief and civil penalties.  Defendants should not be forced to re-litigate these duplicative claims.

That Plaintiff's Complaint includes an unspecified request for injunctive relief cannot save its redundant and overlapping claims.  Plaintiff does not elaborate on what sort of injunctive relief it seeks, and the record belies the plausibility of any claim for such relief.  As an initial matter, class plaintiffs likewise sought declaratory and injunctive relief, (*see* 4th Am. Master Consol. Compl. at 275-76 (Mar. 1 2006) (Dkt. 2171-76)), and this Court certified a class

---

[6] As noted in section IV, Plaintiff has alleged neither a spread nor a good faith estimate of an 'actual' market price from which the spread may be calculated for countless drugs listed in the attachments to the Complaint.  Just as claims for drugs where the spread identified is below 30% fails to establish a plausible entitlement to recover, with respect to all drugs for which no spread or market price is identified, Plaintiff has wholly failed to plead sufficient facts to establish a plausible entitlement to relief.  Plaintiff suggests that, if any Subject Drugs fall below the 30% threshold, Defendants should disclose information to that effect to Plaintiff.  (Pl.'s Opp. at 14-15.)  Before any burden is imposed on Defendants, and before expensive discovery can proceed, Plaintiff must plead facts showing a plausible entitlement to relief by alleging, consistent with Rule 11, a spread or actual market price with respect to each Subject Drug.  *See Twombly*, 127 S. Ct. at 1974.

pursuant to Fed. R. Civ. P. 23(b)(2) in order to resolve those claims for non-monetary relief.  *In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 233 F.R.D. 229, 231 (D. Mass. 2006).  No injunctive relief issued, however, because the Medicare system has long since moved away from AWP-based reimbursement and now reimburses based on ASP.  *See* Pub. L. No. 108-173, 117 Stat. 2066.  Moreover, as the Court recognized in a case against one of the compendia that published AWP, injunctive relief that abolishes the use of AWP as a reimbursement benchmark is not a tenable result.  *See* Settlement Hr'g Tr. at 54-56, *New England Carpenters Health Benefit Fund v. First Databank*, No. 05-11148-PBS (D. Mass. Jan. 22, 2008).

Nor should the existence of claims for civil penalties resuscitate Plaintiff's duplicate claims.  Plaintiff cites no case where a state was permitted to proceed with a separate claim for civil penalties **after** the consumer at issue had already presented and resolved its claims under the ACFA.  Plaintiff cites *London v. Green Acres Trust*, 765 P.2d 538 (Ariz. Ct. App. 1988), to support its argument that its claims are not duplicative because of the state's claims for civil penalties.  (Pl.'s Opp. at 6).  *London*, however, stands for the rather unremarkable proposition that a previous suit by the Attorney General for civil damages settled by consent judgment does not bar a subsequent private suit where the consent judgment expressly referenced the existence of the private suit and specified that the settlement was not intended to preclude such litigation. 765 P.2d at 545.  It does not support Plaintiff's attempt here to secure civil penalties for claims on behalf of citizens whose own claims have already been resolved in a private class action.  Courts frequently consider the extent to which citizens might bring their own actions in determining whether a state's *parens partriae* claims are proper.  *E.g.*, *People v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982) (*parens patriae* standing requires a finding that individuals could not obtain complete relief through a private suit); *Commonwealth of Massachusetts v. Bull HN Info. Sys.*, 16 F. Supp. 2d 90, 96 (D. Mass. 1998) (justifying state's interest in pursuing

parens patriae case w the "case by its very nature presents a situation where individuals face substantial hurdles and disincentives in their efforts to seek private relief.").[7] Here, any "quasi-sovereign interest" the state has in its *parens patriae* claim, (*see* Pl.'s Opp. at 19-21), is significantly diminished because the state's citizens, along with other payors nationwide, have already sought, and in some instances received, redress for the alleged violation.

*Baldwin-United* remains a more appropriate comparison.  (Defs.' Mem. at 20-22.)  There, the Second Circuit prevented thirty-one states, including Arizona, from bringing state law actions based on the same set of facts that were the subject of an announced, but not yet approved,[8] settlement of a private MDL Class Action.  *In re Baldwin-United Corp.*, 770 F.2d 328, 334-37 (2d Cir. 1985).  Consistent with the principle that the states have less "quasi-sovereign interest" in a *parens patriae* case where citizens have already brought claims on their own behalf, the court ruled that, after the resolution of the private class claims, the states should be enjoined from asserting claims derivative of the those settled, private class claims.  *Id*. at 334-37.  The court barred such derivative state claims even where the state sought to assert claims or theories "not available to private plaintiffs."  *Id.* at 341-42.  The Second Circuit's concern that defendants in consolidated federal class actions could not reasonably "be expected to consummate settlement of their claims if those claims could be reasserted under state laws," applies here, as well, with respect to both the state's claims for restitution and for civil penalties.  *See Id.*

---

[7]  *See also In re Edmond*, 934 F.2d 1304, 1312 (4th Cir. 1991) (finding that a "public remedy" was available to the state under the Maryland Consumer Protection Act in addition to a private right of action because "many consumers will be deterred from pursuing individual actions due to the cost and time involved in private litigation"); *Minnesota v. Standard Oil Co.*, 568 F. Supp. 556, 564 (D. Minn. 1983) (suggesting that a state's quasi-sovereign interest in enforcing federal law is greater where it is less likely that its citizens will seek to enforce those laws themselves); *Commonwealth ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 707 (Ky. Ct. App. 1981) ("It is unrealistic to assume that a majority of individual consumers in a given case will take advantage of their private right of action for damages.").

[8]  That *Baldwin-United* involved a settlement that had not yet been even preliminarily approved by the Court belies Plaintiff's argument that settlements that have not yet been finally approved should have no impact on the viability of its claims.  (Pls. Opp. at 16-17.)

Even if the Court disagrees and finds that Plaintiff's claims for civil penalties and injunctive relief renders it non-duplicative of MDL class claims, the Court should still dismiss all claims for restitution to the extent they overlap with claims settled or adjudicated in the MDL Class Action.  Plaintiff concedes that the *Baldwin-United* court was concerned with the potential for "double-dipping" in subsequent state litigation seeking restitution with respect to claims already settled.  (*See* Pl.'s Opp. at 22).  Plaintiff likewise seeks restitution with respect to claims that have already been settled or adjudicated presenting a similar risk of "double-dipping."  The Court should dismiss, or at least stay, Plaintiff's claims for restitution with respect to those claims that were settled or adjudicated in the MDL Class Action.  (*See* Defs.' Mem. at 15-19.)

## III.    THE COURT SHOULD DISMISS THE PLAINTIFF'S CLAIMS AS UNTIMELY

Plaintiff, asserting claims that are derivative of claims of private citizens, should not be entitled to hide behind the generally applicable exemption that the state enjoys from the statute of limitations.  (*See* Defs.' Mem. at 22-23.)  Plaintiff does not dispute that the same claims, if brought by the TPPs and citizens themselves, would be subject to a one-year statute of limitations.  A.R.S. § 12-541.  Where, as here, private citizens are the real parties in interest in an action nominally brought by the state, the one-year statute of limitations applicable to claims by such citizens should apply.  *See Trimble v. Am. Sav. Life Ins. Co.*, 733 P.2d 1131, 1138 (Ariz. App. 1986) (acknowledging that state's exemption from statute of limitations may not apply where state sued on behalf of "some small and distinct section of the public"); *Diamond Benefits Life Ins. Co. v. Resolute Holdings.*, 907 P.2d 63 (Ariz. 1995) (applying exemption in circumstances where "the state is a real party in interest.").  Indeed, although Plaintiff attempts to dismiss as irrelevant references to its Motion for a Protective Order, (Pl.'s Opp. at 15 n.11), the manner in which Plaintiff *itself* described its claims to the Court is instructive.  Plaintiff represented that it "*brings claims only on behalf of its private citizens and other payors* who have

paid inflated charges for prescription drugs based on defendants' use of [AWP]"). (Ariz.'s Mem. in Supp. of Mot. for Protective Order at 1 (June 13, 2008 )(Dkt. 5378) (emphasis added).)

Applying the one-year statute of limitations to Plaintiff's claims, which were not brought until December 6, 2005, Plaintiff's claims cannot survive.  Plaintiff concedes that the Court's prior rulings preclude claims for conduct after the passage of the MMA in December of 2003. (Pl. Opp. at 3 n.6).  Notwithstanding those same rulings concluding that, by at least December 2003, the market properly understood that AWP was not reflective of acquisition costs, *see MDL Op.*, 491 F. Supp. 2d at 31, Plaintiff remarkably contends it was not on inquiry notice as to the nature of these claims any time before December 6, 2004 (one year before filing the Complaint on December 6, 2005).  (*See* Pl.'s Opp. at 22-23.)  The debate surrounding and enactment of the MMA are matters of public record.  This Court should conclude that a potential Plaintiff, exercising reasonable diligence, should have discovered the fraud alleged by the date of passage of the MMA at the very latest.  *See Alaface v. National Inv. Co.,* 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994) (holding that a consumer fraud claim accrues when the defrauded party discovery or, with reasonable diligence, should have discovered the fraud.)

## IV.   PLAINTIFF HAS FAILED TO MEET BASIC PLEADING REQUIREMENTS AS SET FORTH BY THIS COURT.

Plaintiff asserts, incorrectly, that its claims under the ACFA are not subject to the heightened pleadings requirements of Fed. R. Civ. P. 9(b).  (Pl.'s Opp. at 26-27.)  That the Attorney General bringing a claim under the Act need not prove reliance or actual deception, (*see id.* at 26), does not bring place claims beyond the reaches of Rule 9(b).  Plaintiff does not cite to a single case that holds that Rule 9(b) does not apply to claims brought by the state under the ACFA.[9]  Several cases, however, hold that Rule 9(b) does apply to claims brought under the

---

[9] Rather, Plaintiff cites to several cases stating that Rule 9(b) does not apply to an enforcement action brought by the Federal Trade Commission pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"); . (Pl.'s Opp. at

Act. *Beshears v. Provident Life and Acc. Ins. Co.*, 2007 WL 1438738, *3 (D. Ariz. May 15, 2007); *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 642 (D. Ariz. 2001). While these cases involve private claims rather than claims brought by the Attorney General, nothing in the opinions limits them to suits by private plaintiffs. This is, moreover, a suit brought exclusively on behalf of private plaintiffs. More importantly, this Court has previously applied Rule 9(b) in the context of similar claims brought by states pursuant to statutes that do not require proof of deception or reliance. *E.g. In re Pharmaceutical Indus. Avg. Wholesale Litig.*, 321 F. Supp. 2d 187, 206-07 (D. Mass. 2004) (relating to the AWP cases brought by Montana and Nevada). Because "an allegation of fraud lies at the core of [the] cause of action, the heightened pleading standards of Fed.R.Civ.P. 9(b) apply." *Gwyn v. Loon Mountain Corp.*, 2002 WL 1012929, at *7 (D.N.H. May 15, 2002) (noting that "by basing its [consumer protection] claim upon alleged misrepresentations and further asserting that the misrepresentations constituted a knowing and willful violation of the [statute], plaintiffs have in essence accused defendant of fraud.").

The Court has stated clearly the requirements for an AWP complaint to survive a challenge under Rule 9(b). (*See* Defs.' Mem. 24-25). Among other requirements, the Court's prior opinions require that the complaint allege "the name of the specific plaintiff(s) that purchased the drug" and "a good faith estimate of an 'actual' market price from which the spread may be calculated." *In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 2007 WL 1051642, at *14 (D. Mass. Apr. 2, 2007) (hereinafter "*New York Counties*"). The Amended Complaint complies with neither requirement. Plaintiff fails to allege with particularity the allegedly injured party, an important deficiency here where various rulings, settlements and

---

27.) Such cases are not relevant to this particular claim described by Plaintiff as "one cause of action stemming from the Defendants' **fraudulent** price-reporting scheme." (Pl.'s Opp. at 7; *see also id.* at  5 ("Defendants [have] fraudulently reported fictitiously high AWPs"), 6 ("the fraudulent price-reporting scheme ..."), 7 ("unlawful fraudulent price-reporting scheme"), etc.) Though the ACFA states that the FTCA "should be used in determining what constitutes consumer fraud; any further interpretive purpose for which the federal statute should be used in Arizona is speculative." *State ex rel. Corbin v. United Energy Corp.*, 725 P.2d 752, 756 (Ariz. Ct. App. 1986).

judgments affect the viability of many of the claims Plaintiff seeks to pursue.  Plaintiff likewise

fails to allege either spreads or a good faith estimate of an "actual" market price from which a

spread can be calculated for many of the 1000-plus Subject Drugs, making it impossible for

Defendants to provide the Court with an exhaustive list of the drugs that fall within its argument

in Section I.C above.  That Plaintiff provides such allegations with respect to some drugs does

not ameliorate the inadequacy of the pleading with respect to the many drugs for which Plaintiff

has not alleged a spread or actual market price.  Nor does the fact that the "Appendices are in a

format identical to that submitted in two other lawsuits whose complaints were sustained against

motion to dismiss challenges," (Pl.'s Opp. at 29 (citing 2004 proceedings in the Montana/Nevada

case)), permit omitting such allegations.  Since those complaints were sustained, "[s]ubsequent

MDL decisions have added a requirement that the complaint allege a good faith estimate of an

'actual' market price from which the spread may be calculated."  *New York Counties*,  2007 WL

1051642, at *14.  The Amended Complaint fails to meet the standards this Court has set for

compliance with Rule 9(b) and, therefore, must be dismissed.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants' Motion to Dismiss should be GRANTED.

Schering-Plough Corporation and
Warrick Pharmaceuticals Corporation
By their attorneys,


/s/ John P. Bueker
John T. Montgomery (BBO#352220)
John P. Bueker (BBO #636435)
Daniel J. Bennett (BBO #663324)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated:  January 15, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2009, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

/s/ Daniel J. Bennett
Daniel J. Bennett