# EXHIBIT A



ROY COOPER
ATTORNEY GENERAL

**State of North Carolina**
Department of Justice
P.O. Box 629
RALEIGH
27602

TRACY J. HAYES
ASST. ATTORNEY GENERAL
HEALTH AND PUBLIC ASST.
TEL: (919) 716-6840
FAX: (919) 716-6758

December 31, 2008

<u>VIA U.S. FIRST CLASS MAIL</u>
Paul F. Doyle
Sarah L. Reid
William A. Escobar
Neil Merkl
Kelley, Drye & Warren, LLP
101 Park Avenue
New York, NY 10178

      In re: Pharmaceutical Industry Average Wholesale Price Litigation
      MDL No. 1456

Dear Counselors:

      Enclosed please find a copy of the North Carolina Department of Health and Human Services' Memorandum in Opposition to Dey Defendants' Motion to Compel Production of Documents, which was filed today in the U.S. District Court for the Eastern District of North Carolina. It has been docketed as ~~civil action 08-213.~~ miscellaneous action 05: 08 MC 39,

                        Sincerely yours,

                        Tracy J. Hayes
                        Assistant Attorney General

Enclosure

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
NORTH CAROLINA
EASTERN DIVISION



Misc. ACTION 05 : 08 mc 39

NCED Civ. Action 08-213

**In re: PHARMACEUTICAL INDUSTRY**
**AVERAGE WHOLESALE PRICE**
**LITIGATION**

Pending in:  U.S. DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
MDL NO. 1456
Master File No. 01CV12257

*United States of America ex. rel. Ven-A-Care*
*of the Florida Keys, Inc., et al. v. Dey, Inc., et*
*al.,*

Subcategory Case No. 06-11337

**Memorandum In Opposition To Dey**
**Defendants' Motion To Compel Production**
**Of Documents**

Civil Action No. 05-11084-PBS

## Memorandum In Opposition
## To Dey Defendants' Motion To Compel Production Of Documents

NOW COMES the North Carolina Department of Health and Human Services, by

and through Roy A. Cooper, III, Attorney General of the State of North Carolina, and

Tracy J. Hayes, Assistant Attorney General, pursuant to Rules 37(a)(2) and 45 of the

Federal Rules of Civil Procedure and Rules 7.1(e)(2) and 83.1 of the Local Rules of the

United States District Court for the Eastern District of North Carolina, and files this

Memorandum in Opposition to Motion to Compel Production of Documents Responsive

to Subpoena filed by the Dey Defendants in the above-captioned litigation on the

following grounds:

1. The Motion to Compel is not properly before this court;

2. The subpoena *duces tecum* issued by the Dey Defendants failed to allow a
   reasonable time to comply and subjects the State to undue burden.

## INTRODUCTION

The North Carolina Department of Health and Human Services ("Department") is

not a party in the civil action *United States of America ex. rel. Ven-A-Care of the Florida*

*Keys, Inc., et al. vs. Dey, Inc., et al.* Dey, Inc., et al., ("Dey", "Defendant", or "the Dey Defendants") issued the subpoena that is the subject matter of the Motion to Compel.

### Factual Background

The Department received a subpoena *duces tecum* on November 21, 2008, issued by the Dey defendants, ordering that the Department produce and permit inspection and copying of documents that were listed in Exhibit A to the subpoena on December 3, 2008. See Exhibit 1. However, the pertinent section of Exhibit A identifying the requested document was not legible.[1] Undersigned counsel for the Department twice contacted the defendant regarding the illegible exhibit and on December 2, 2008, the day before the deadline for responding, the defendant provided counsel for the Department a legible copy of the subpoena and its exhibits via electronic mail. See Exhibit 2.

Dey's subpoena demanded production of "Claims Data. For the time period from January 1, 1991 to present complete with claims data for each instance that the State Medicaid program provided reimbursement of a claim relating to the dispensing of the Subject Drugs, with related file layouts, field definitions, manuals, data dictionaries, source tables, relationship tables, and business rules. These data are requested in electronic form used by SQL Server, Microsoft Access, Microsoft Excel, or a delimited file that can be readily uploaded into one of those programs. The complete claims data requested includes all fields, other than individual patient identifiers, contained on the Provider's claim submission and all additional fields added to process the claim, including: . . ." and then went on for about two pages identifying the extensive, detailed inclusions, and then added another one and one half pages of "subject drug" description. The subpoena also demanded documents "sufficient to justify" North Carolina's

---

[1] A copy of the subpoena issued to the Department is attached to Dey's motion as Exhibit 2, and it can be clearly seen that there is a large blank area superimposed over Item 1 on Exhibit A, making it impossible to determine what documents the defendants are seeking.

historical maximum allowable price for the subject drugs or subject HCPCS Codes for the time period of January 1, 1991 to the present, excluding February 2002, April 2002 and August 2008.  See Exhibit 2.

Counsel for the Department responded by letter dated December 2, 2008, and objected to the subpoena on the grounds that it was overly broad and unduly burdensome. See Exhibit 3.  Subsequently, the Dey defendants offered to compensate the Department for reasonable costs in producing the claims data and to extend the time to produce the documents beyond December 3.  Counsel for the Department was served with a copy of the defendants' Motion to Compel on December 17, 2008.  However, there was no cover letter to the clerk of court and it does not appear that the motion was filed in the United States District Court for the Eastern District of North Carolina, the district court from which the subpoena was issued and "where the production or inspection is to be made." Fed.R.Civ.P. 45(a)(2)(C).

## ARGUMENT

I.  The Motion to Compel is Not Properly Before This Court and Venue on a Proper Motion Lies in the U.S. District Court for the Eastern District of North Carolina.

Defendant's Memorandum in Support of the Motion asserts that this "Court" has jurisdiction to hear this Motion.  However, Defendant fails to articulate what it means by "Court."  If Defendant's reference to "Court" means the District Court of Massachusetts, such a position is not supported by the cited authority or a plain reading of the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 37(a)(2) provides that motions for orders compelling disclosure or discovery to a **nonparty** "must be made in the court where the discovery is or will be taken."  The Department is a nonparty to this litigation. Fed.R.Civ.P. 45(c)(1) provides that "the issuing court" is responsible for protecting persons subject to the subpoena from undue burden or expense and Rule 45(c)(3)

-3-

provides that "the issuing court" is responsible for quashing or modifying a subpoena it has issued. There can be no question that only the issuing court has the power to enforce a subpoena or compel discovery against a nonparty. The District of Massachusetts is not the issuing court for the subpoena issued to the Department by the Dey defendants.

The Defendant argues that 28 USCA § 1407(b), In re Neurontin Mktg. 245 FRD 55, 57 (D. Mass 2007), and United States ex rel Pogue v Diabetes Treatment Ctrs. Of Am., Inc., 444 F.3d 462, 469 n. 4 (6th Cir. 2006) stand for the proposition that this Court has jurisdiction to enforce the Motion. However, even a cursory review of these authorities indicates that the District Court of Massachusetts is not the "court" to compel compliance. Rather, the United States Court for the Eastern District of North Carolina is the proper court with jurisdiction of the matter. Although the Judge of the MDL (multidistrict litigation) has the authority to decide such discovery matters, the MDL judge's powers are really exercised as a Judge of the Eastern District of North Carolina.[2]

In Pogue., supra., the court explained the subpoena power of Fed.R.Civ.P. 45, the power authorized in 28 USCA § 1407(b), and the relationship the two had on issues of appeal. 444 F.3d 463, 468-469. The Court found that the power to compel and enforce subpoenas lies with the **issuing Court**. *Id.* at 468., citing Fed.R.Civ.P. 45(c)(3)(A). Here, the issuing court is the U.S. District Court for the Eastern District of North Carolina.

---

[2] 28 USCA 1407(b) provides: Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation. For this purpose, upon request of the panel, a circuit judge or a district judge may be designated and assigned temporarily for service in the transferee district by the Chief Justice of the United States or the chief judge of the circuit, as may be required, in accordance with the provisions of chapter 13 of this title. With the consent of the transferee district court, such actions may be assigned by the panel to a judge or judges of such district. The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel *may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.* (emphasis added).

-4-

The Pogue Court observed the problems of having multiple judges in multiple
Federal Districts issuing independent, and potentially conflicting, decisions. "Because
these rules could hamstring an MDL court's ability to conduct coordinated pretrial
proceedings over cases that have been consolidated from far-flung foreign districts, the
MDL statute empowers an MDL judge to act as a judge of the deposition or discovery
district." 444 F.3d at 468. "However, because the MDL judge is acting as a judge of the
deposition or discovery district when he uses the authority outlined in Section 1407(b),
appeal from the exercise of such authority lies in the circuit court embracing that
deposition or discovery district." Id. at 469. In this case, the Motion to Compel has
apparently not been filed in the Eastern District of North Carolina. Accordingly, the
MDL has no authority to enforce the subpoena under 1407(b) and this court should deny
the Motion presumably filed in Massachusetts.

In addition, Defendant's memorandum requested Oral Argument. Presumably,
Defendants are requesting an in-person hearing. However, such a contested hearing (if
properly before the court) must be held in North Carolina, not Massachusetts. Pursuant
to Fed.R.Civ.P. 45(c)(3)(A)(ii), a non-party cannot be compelled to travel more than 100
miles. Pogue, 444 F.3d at 468. It is counter-intuitive to only allow service of a subpoena
within the District of the court issuing the subpoena, *require* the District court to quash a
subpoena that requires the witness to travel beyond 100 miles, yet permit the parties to
require the non-party to travel nearly seven hundred miles to assert its rights and be
afforded the protections of the federal rules. Fed.R.Civ.P. 45 (b)(2); 45(c)(3)(A)(ii).

However, the Department recognizes that requiring a federal judge to travel to
multiple foreign jurisdictions is not a very efficient means of handling pretrial
proceedings. The Department's position is that if a hearing is set before the Eastern

-5-

District of North Carolina Court, the MDL judge may preside over the matter
telephonically at her discretion.[3] *Neurontin, supra.*

II.    Local Rules Of The Eastern District of North Carolina Apply

As discussed above, compulsion of the subpoena is a proceeding that would
properly lie in the U.S. District Court for the Eastern District of North Carolina, which
the MDL judge may rule upon as a transferred judge to the Eastern District of North
Carolina. Likewise, the local rules of the Eastern District of North Carolina apply, not
the local rules of Massachusetts. Pogue v. Diabetes Treatment Centers of America Inc.,
238 F.Supp.2d 270, 278 (D.D.C. 2002) (MDL judge sitting in District of Columbia
noting violation of the local rules of Tennessee as a deficiency of motion to quash.)
Pursuant to local rule, attorneys who are not members of the Bar of the U.S. District
Court for the Eastern District of North Carolina, may only participate *pro hac vice* before
the court upon proper motion and approval by the presiding judge. US Dist.Ct. Rules
E.D.N.C. Civ. LR 83.1(e). In addition, counsel for the Dey defendants must associate
with local counsel, local counsel must sign all motions and other papers filed and be
present for all proceedings. US Dist.Ct. Rules E.D.N.C. Civ. LR 83.1(d)(e)(f).

Upon information and belief, counsel for the Dey defendants are not members of
the Bar of the U.S. District Court for the Eastern District of North Carolina. There is also
no indication that counsel for the Dey defendants has made a motion to appear *pro hac
vice*. Finally, the Motion was not signed by local counsel in North Carolina. Fed. R. Civ.
P. 7(b) requires a Rule 11 signature by an attorney, but the Local Rule effectively
dictates that the Rule 11 signature be that of the Local Counsel. Therefore, the absence

---

[3] In the alternative, and if a hearing on Dey's motion is even necessary, counsel for NC DHHS requests
permission to appear before the District Court of Massachusetts telephonically. The State of North
Carolina has issued travel restrictions in response to current budget constraints, and requiring counsel to
travel to Massachusetts in person, in addition to violating the intent of the Federal Rules protecting non-
parties from undue burden, would impose a severe hardship on the State of North Carolina.

-6-

of a signature by local counsel means the motion is without a signature, and therefore not a motion and in violation of Fed. R. Civ. P. 7(b). The rule regarding local counsel "imposes a significant, ongoing responsibility on a local counsel and should not be taken lightly." Brown v. Phillip Morris Inc., 291 F. Supp 2d 3, 6 (D. Mass, 2003).

III.     The Subpoena Fails to Allow a Reasonable Time to Comply.

The subpoena issued by the Dey defendants demands production of claims data and historical state MAC data going back seventeen years, but allowed a mere two weeks to comply. Moreover, despite repeated requests, the Dey defendants did not bother to provide undersigned counsel with a legible copy of Exhibit A to the subpoena until the day immediately prior to the deadline for responding. Allowing for a time period of two weeks (or even four weeks if the deadline for responding had been extended to December 15, the discovery deadline in this litigation) is unreasonable on its face.

It is also worth noting that counsel for the Department formally objected to the subpoena issued by the Dey defendants on the same day a legible copy was received, December 2, 2008. Over two weeks later, and two days after the December 15, 2008 discovery deadline, the Department, a nonparty, was served with Defendant's Motion to Compel, filed on the day discovery closed. Defendant's dilatory tactics are not the fault of the Department, and the Department cannot drop all of its other Medicaid business in an attempt to gather voluminous documents Dey demands at this late date to defend a case to which the Department is not a party.

IV.     The Subpoena Imposes An Undue Burden Upon the Department.

The Defendants' subpoena issued to the Department, a non-party to this litigation, subjects the Department to undue burden and expense; Dey's motion to compel should be denied and the subpoena quashed. The Defendants seek records going back almost seventeen years. To the extent these records remain in existence, the additional staff

needed and the time and expense required to collect these documents is unduly burdensome.

"A trial court should consider 'the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena' when considering the propriety of enforcing a subpoena." Schaaf v. Smithkline Beecham Corp., 233 F.R.D. 451 (E.D.N.C. 2005) (quoting Heat & Control, Inc. v. Hester Indus., 785 F.2d 1017, 1024 (Fed. Cir. 1986)). Additional factors to consider in determining whether a subpoena imposes an undue burden include the time period covered by the request and the scope of the request. See Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D. Conn. 2005) (citation omitted). Further, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. Mass. 1998).

Here, the Department is not a party to the civil action which generated this subpoena. The Defendants have subpoenaed approximately seventeen years of Medicaid claims data and in addition seek documents which are sufficient to identify North Carolina's historical maximum allowable price for the subject drugs and subject HCPCS Codes for an approximately seventeen year period. The time period and the scope of these requests are overly broad and unduly burdensome. Further, the Defendants' request for documents related to the historical maximum allowable price is so vague as to prevent the Department from reasonably identifying the materials sought, determining the availability of the data requested, and estimating the time and cost it would take to comply with the subpoena.

The Department would be forced to search all documents covering the past seventeen year period to find documents responsive to this subpoena. As can be seen

from the Affidavit of Lisa Weeks, attached hereto and incorporated herein as Exhibit 4, the hardship to the Department to comply with this overly broad subpoena would be immense. Ms. Weeks estimates it could take up to six months for the Department to attempt to gather responsive documents, assuming such documents are in existence and can even be located. Generally, the Retention Schedule for North Carolina State Agency Records allows for destruction of records after five years if no litigation, claim, audit, or other official action involving the records has been initiated. Moreover, the actuarial contractor who would need to assist the Department in responding to the subpoena charges a minimum of $275 per hour for its services, and state employees cannot ignore their day-to-day responsibilities in order to spend time responding to the Defendants' subpoena.

Defendants' untimely offer to avoid imposing an undue burden and expense on the Department is in itself unreasonable. First, the Defendants made no attempt to avoid imposing any undue burden and expense until after the subpoena was issued and the Department objected. Second, the Defendants' December 3 electronic mail letter states that the defendants will only compensate for "reasonable" costs associated with the production of the claims data. Presumably, the Dey defendants will decide what they regard as "reasonable" and leave the Department to assume the remaining actual costs. Moreover, the defendants requested more than just claims data. They also demanded documents going back seventeen years which would be sufficient to identify North Carolina's historical maximum allowable price for the subject drugs and subject HCPCS Codes. Defendants make no mention of what "reasonable costs" they will reimburse the Department for retrieving the historical State MAC information. As stated in Ms. Weeks' Affidavit, the staff time and expense that would be incurred by the Department and its contractors in gathering the state MAC data would also impose an undue burden.

-9-

To the extent that these documents from the Department, a non-party, are relevant to this civil action, the Defendants should have pursued them through formal discovery with the Plaintiff. Defendants seek to impose a burden on the Department to direct the scope of the civil action by arguing that the Department should comply with the subpoena or "persuade the federal government to drop claims based on the state's Medicaid reimbursements." (Defs. Mot. p. 5) To the extent this constitutes a serious argument, it is unwarranted and based on a total misapprehension of the relationship between the State of North Carolina and the U.S. Department of Justice.

### CONCLUSION

In light of the foregoing, the Department respectfully requests the Motion of the Dey Defendants be denied and the subpoena quashed. The Motion has not been properly brought before this Court and lacks an authorized signature. Finally, the burden and cost of compliance with the subpoena is unjust.

Respectfully submitted this the 31st day of December, 2008.

> ROY A. COOPER, III
> ATTORNEY GENERAL
>
> /s/ Tracy J. Hayes_____
> Tracy J. Hayes
> Assistant Attorney General
> N.C. Dept. of Justice
> P.O. Box 629
> Raleigh, North Carolina 27602-0629
> Tel.: (919) 716-6840
> Fax: (919) 716-6758
> N.C. State Bar # 35712

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
NORTH CAROLINA
EASTERN DIVISION

MISC. ACTION  05 : 08 MC 39

|  |  |  |
|---|---|---|
| | ) | NCED ~~Civ. Action 08-213~~ |
| **In re: PHARMACEUTICAL INDUSTRY** | ) | |
| **AVERAGE WHOLESALE PRICE** | ) | Pending in:  U.S. DISTRICT COURT FOR |
| **LITIGATION** | ) | THE DISTRICT OF MASSACHUSETTS |
| | ) | MDL NO. 1456 |
| | ) | Master File No. 01CV12257 |
| *United States of America ex. rel. Ven-A-Care* | ) | Subcategory Case No. 06-11337 |
| *of the Florida Keys, Inc., et al. v. Dey, Inc., et* | ) | |
| *al.,* | ) | **Memorandum In Opposition To Dey** |
| | ) | **Defendants' Motion To Compel Production** |
| Civil Action No. 05-11084-PBS | ) | **Of Documents** |

## CERTIFICATE OF SERVICE

I hereby certify that on 31 December 2008, I electronically filed the foregoing

Memorandum In Opposition To Dey Defendants' Motion To Compel Production Of

Documents and corresponding Exhibits 1-4 with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:  none; and I

hereby certify that I have mailed the document to the following non CM/ECF

participants:

Paul F. Doyle                                    Hon. Patti B. Saris
Sarah L. Reid (pro hac vice)                     Multi-District Litigation Judge
William A. Escobar (pro hac vice)                John Joseph Moakley U.S. Courthouse
Neil Merkl (pro hac vice)                        1 Courthouse Way, Suite 2300
Kelley, Drye & Warren LLP                        Boston, Massachusetts 02210
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897


/s/ Tracy J. Hayes
Tracy J. Hayes
Assistant Attorney General

NUV 2 6 2008

A088 (rev. 12/06) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO<br><br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,*<br>Civil Action No. 05-11084-PBS | **Pending in:**<br><br>**UNITED STATES DISTRICT COURT**<br>**FOR THE DISTRICT OF MASSACHUSETTS**<br><br>MDL NO. 1456<br>Master File No. 01-CV-12257-PBS<br>Subcategory Case No. 06-11337<br><br>Hon. Patti B. Saris |

## SUBPOENA

RECEIVED

NOV 2 1 2008

DHHS
OFFICE OF LEGAL AFFAIRS

TO:     North Carolina Department of Health and Human Services
         Office of General Counsel
         2001 Mail Service Center
         Adams Building, 101 Blair Dr.
         Raleigh, NC 27699-2001

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  The deposition will be recorded by stenographic means and videotape.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
*See* Exhibit A.

| PLACE<br>Huseby, Inc., 3737 Glenwood Ave., Suite 100, Raleigh, NC  27612 | DATE AND TIME<br>December 3, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Defendants Dey, Inc., Dey L.P., Inc. and Dey, L.P. | DATE<br><br>November 19, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Neil Merkl, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178 (212) 808-7800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

**EXHIBIT**
**1**

A088 (rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
             DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises – or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the

testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A: DOCUMENTS REQUESTED

1.  ***Claims Data.*** 1          ary 1, 1991 to January 1, 2001 and the time period from January 1, 20       aims data for each instance that the State Medicaid program provic      relating to the dispensing of the Subject Drugs, with related file layouts      ata dictionaries, source tables, relationship tables, and busines      ated in electronic form used by SQL Server, Microsoft Access, Mici      e that can be readily uploaded into one of those programs. The complete claims data requested includes all fields, other than individual patient identifiers, contained on the Provider's claim submission and all additional fields added to process the claim, including:

     (a)    *Identifier*: claim number, sequence number representing each line item of the claim, and other identifying information;

     (b)    *Provider type*: pharmacy, physician, physician supplier, outpatient care provider, home health provider, institutional pharmacy, physician crossover, etc.;

     (c)    *Claim Type*: any available claim type information, including but not limited to any information that indicates whether the State Medicaid Program is the secondary payor including Medicare Crossover Claims;

     (d)    *Transaction Type*: all available transaction type information, such as correction, cancellation, etc., identifiers, and source transaction information (*e.g.*, if one claim corrects another claim, information about which claim is being corrected);

     (e)    *Status*: all status information, including the payment code indicating whether the claim has been accepted, processed, and/or paid and the type of program the claim will be processed under (*e.g.*, Medicaid, Managed Care, etc.);

     (f)    *Dates*: all available dates, including the date service was provided, the date the claim was received, and the date the claim was paid;

     (g)    *Basis of payment*: coding within the claim payment transaction which identifies the reference point from which the claim payment amount is determined (*e.g.*, AWP, usual & customary, EAC, FUL, MAC, Billed Amount, Charges, etc.);

     (h)    *Provider*: all information for all relevant Providers, including number, name, address, contact information, and area/field of practice (where relevant);

     (i)    *Product*: all product information, including:

          (i)    NDC. Please provide all 11 digits (do not drop leading or trailing 0's) and ideally in three separate fields – labeler (first five digits), product (next four digits) and package size (final two digits);

(ii)     Name;

(iii)     Type (*e.g.*, single source, multi-source);

(iv)     Therapeutic class; and

(v)     Related items like diagnosis codes, place of service, and type of service (where relevant).

(j)     *Units*: all units information with decimals in the correct position, including submitted units, allowed units, and unit of measure (*e.g.*, capsule vs. bottle, milliliter, etc.);

(k)     *Other Data for Payment*: any other data used to determine the amount of the payment not listed above (*e.g.*, channel of procurement, etc.);

(l)     *Payments*: all fields related to billed amounts, payment limit amounts, allowed amount, and actual amounts paid along with the bases for the payment, all with decimals in the correct position, including:

(i)     Billed charges;

(ii)     Basis of payment (*e.g.*, billed charges, ingredient cost, EAC, FUL, MAC, Billed Amount, acquisition cost, AWP, WAC, etc.);

(iii)     Dispensing fee;

(iv)     Service administration fee (*e.g.*, provider service fees);

(v)     Allowed amount or contracted amount;

(vi)     Any other payment amount (*e.g.*, inventory management fee/profit factor, delivery fee, generic incentive fee, etc.);

(vii)     Any amounts used to reduce amount paid (*e.g.*, payments received from other payors and the number, name, and other information associated with such payors, co-insurance, co-payment, deductible); and

(viii)     Amount paid.

(m)     *Comments*: all other memo or free-form fields.

2.     From January 1, 1991 to the present, but excluding February 2002, April 2002, and August 2008, Documents sufficient to identify the historical state MAC, if any, for the Subject Drugs or Subject HCPCS Codes.

## EXHIBIT B

### DEFINITIONS AND INSTRUCTIONS

#### Definitions

1.      "AWP" or "Average Wholesale Price" means any figures so categorized and periodically published by any Publisher.

2.      "Documents" means all original written, recorded, or graphic matters whatsoever, and any and all non-identical copies thereof, including but not limited to advertisements, affidavits, agreements, analyses, applications, appointment books, bills, binders, books, books of account, brochures, calendars, charts, checks or other records of payment, communications, computer printouts, computer stores data, conferences, or other meetings, contracts, correspondence, diaries, electronic mail, evaluations, facsimiles, files, filings, folders, forms, interviews, invoices, jottings, letters, lists, manuals, memoranda, microfilm or other data compilations from which information can be derived, minutes, notations, notebooks, notes, opinions, pamphlets, papers, photocopies, photographs or other visual images, policies, recordings of telephone or other conversations, records, reports, resumes, schedules, scraps of paper, statements, studies, summaries, tangible things, tapes, telegraphs, telephone logs, telex messages, transcripts, website postings, and work papers, which are in the possession of the Carrier as defined above.  A draft or non-identical copy is a separate document within the meaning of this term.

3.      "EAC" or "Estimated Acquisition Cost" shall have the meaning set forth in 42 C.F.R. § 447.301

4.      "FUL" means "Federal Upper Limit" and shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332.

5.      "J-Code reimbursement basis" refers to the reimbursement of drugs through use of a subset of the HCPCS code set with a high-order value of "J" (compare to "NDC reimbursement basis").

6.      "MAC" or "Maximum Allowable Cost" shall have the meaning set forth in 42 C.F.R. § 447.332.

7.      "Manufacturer" means a company that manufacturers pharmaceutical products.

8.      "Medicaid" means and refers to the jointly-funded Federal-State health insurance program enacted in 1965 as an amendment to the Social Security Act to pay for the costs of certain medical services and care.

9.      "Medicaid Crossover Claim" means claims for which Medicare is the primary payor and the State Medicaid is the secondary payor.

10.    "NDC reimbursement basis" refers to the reimbursement of drugs based on a Provider's submission of a National Drug Code ("NDC") (compare to "J-code reimbursement basis").

11.    "Person" means any natural person or any business, legal, or governmental agency or association.

12.    "Point of Sale System" means a computer-transmitted claims processing system used by Providers to submit claims to Medicaid.

13.    "Provider" or "Providers" means and refers to any and all persons or entities that render health care services, including but not limited to pharmacists, institutional pharmacies, home health agencies, physicians, nurses, nurse practitioners, physicians' assistants, specialty pharmacy, nursing home personnel, laboratory technicians, x-ray and other medical equipment technicians, and other hospital or physician-office personnel.

14.    "Subject Drugs" means and refers to those drugs listed on attached Schedule A.

15.    "Subject J-Codes" means those J-Codes identified in attached Schedule B.

16.    "WAC" means "Wholesale Acquisition Cost."

17.    The terms "and" and "or" shall mean "and/or."

18.    Any word written in the singular shall include the plural and vice versa.

19.    In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

## Instructions

1.    When an objection is made to any request or any subpart thereof, please state with specificity the part or subpart of the document request considered to be objectionable and all grounds for the objection.

2.    If you find the meaning of any term in these document requests to be unclear, please assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

## SCHEDULE 1: SUBJECT DRUGS

| DRUG DESCRIPTION | NDC |
|---|---|
| Albuterol Inhalation Aerosol Metered-Dose Inhaler, 17g | 49502-0303-17 |
| Albuterol Inhalation Aerosol Metered-Dose Inhaler, 17g | 49502-0333-17 |
| Albuterol Inhalation Aerosol MDI Refill, 17g | 49502-0303-27 |
| Albuterol Inhalation Aerosol MDI Refill, 17g | 49502-0333-27 |
| Albuterol Sulfate Inhalation Solution 0.5%, 5mg/ml, 20mL multi-dose | 49502-0196-20 |
| Albuterol Sulfate Inhalation Solution 0.5% (Sterile) 20mL multi-dose | 49502-0105-01 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3ml, package of 25 | 49502-0697-03 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3ml, package of 25 | 49502-0697-24 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3ml, package of 30 | 49502-0697-33 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3mL, package of 30 | 49502-0697-29 |
| Albuterol Sulfate Inhalation Solution Single-Pak™, 0.083% 3 mL, package of 30 | 49502-0697-30 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5mg/3ml, package of 60 | 49502-0697-60 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5mg/3ml, package of 60 | 49502-0697-61 |
| Cromolyn Sodium Inhalation Solution 20 mg/2 ml, unit dose vials, package of 120 | 49502-0689-12 |
| Cromolyn Sodium, Inhalation Solution 20 mg/2 ml, unit dose vials, package of 60 | 49502-0689-02 |
| Cromolyn Sodium, Inhalation Solution 20 mg/2 ml, unit dose vials, package of 60 | 49502-0689-61 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 25 | 49502-0685-03 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 25 | 49502-0685-24 |
| Ipratropium Bromide Inhalation Solution 0.02%, 2.5 ml, package of 25 | 49502-0685-26 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 30 | 49502-0685-33 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 30 | 49502-0685-29 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 30 | 49502-0685-31 |
| Ipratropium Bromide Inhalation Solution 0.02%, Single-Pak™ 2.5 ml, package of 30 | 49502-0685-30 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5ml, package of 60 | 49502-0685-60 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5ml, package of 60 | 49502-0685-61 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5ml, package of 60 | 49502-0685-62 |

## SCHEDULE 2:  SUBJECT HCPCS CODES

| HCPCS CODE | DRUG DESCRIPTION |
|---|---|
| J7611 | Albuterol, Inhalation Solution, FDC-Approved Final Product, Non-Compounded, Administered Through DME, Concentrated Form, 1 mg |
| J7613, J7618 | Albuterol, Inhalation Solution, Administered Through DME, Unit Dose, 1 mg |
| J7619, J7620, K0505 | Albuterol, All Formulations Including Separated Isomers, Inhalation Solution Administered Through DNE, Unit Dose, per 1 mg (Albuterol) or per 0.5 mg (Levalbuterol) |
| J7625, K0504 | Albuterol Sulfate, 0.5%, per ml, Inhalation Solution, Administered Through DME |
| J7630, J7631, K0511 | Cromolyn Sodium, Inhalation Solution Administered Through DME, Unit Dose Form, per 10 Milligrams |
| J7644, J7645, K0518 | Ipratropium Bromide, Inhalation Solution Administered Through DME, Unit Dose Form, per milligram |

## Hayes, Tracy

| | |
|---|---|
| **From:** | Suden, Damon [DSuden@KelleyDrye.com] |
| **Sent:** | Tuesday, December 02, 2008 1:27 PM |
| **To:** | Hayes, Tracy |
| **Subject:** | Dey Subpoena |
| **Attachments:** | DOC000.PDF |

Tracy,

As we discussed on the phone today, attached is a clear copy of the Dey subpoena. Please contact me if you have any questions or wish to discuss any objections to the subpoena.

Thanks,
Damon

<<DOC000.PDF>>

_____

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7586
dsuden@kelleydrye.com

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this comm stated, is not intended and cannot be used for the purpose of avoiding tax-related p

The information contained in this E-mail message is privileged, confidential, and ma please be aware that any other use, printing, copying, disclosure or dissemination o subject to legal restriction or sanction. If you think that you have received this E error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believ other defect that might affect any computer system into which it is received and ope responsibility of the recipient to ensure that it is virus free and no responsibilit Drye & Warren LLP for any loss or damage arising in any way from its use.

EXHIBIT
2

A088 (rev. 12/06) Subpoena in a Civil Case

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

THIS DOCUMENT RELATES TO

*United States of America ex rel. Ven-A-Care of the*
*Florida Keys, Inc., et al. v. Dey, Inc., et al.,*
Civil Action No. 05-11084-PBS

**Pending in:**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MDL NO. 1456
Master File No. 01-CV-12257-PBS
Subcategory Case No. 06-11337

Hon. Patti B. Saris

## SUBPOENA

TO:  North Carolina Department of Health and Human Services
     Office of General Counsel
     2001 Mail Service Center
     Adams Building, 101 Blair Dr.
     Raleigh, NC 27699-2001

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. The deposition will be recorded by stenographic means and videotape.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Exhibit A.

| PLACE<br>Huseby, Inc., 3737 Glenwood Ave., Suite 100, Raleigh, NC  27612 | DATE AND TIME<br>December 3, 2008 |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants Dey, Inc., Dey L.P., Inc. and Dey, L.P. | November 19, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Neil Merkl, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178 (212) 808-7800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

# PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises – or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the

testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A: DOCUMENTS REQUESTED

1.     *Claims Data.* For the time period from January 1, 1991 to January 1, 2001 and the time period from January 1, 2008 to the present, complete claims data for each instance that the State Medicaid program provided reimbursement of a claim relating to the dispensing of the Subject Drugs, with related file layouts, field definitions, manuals, data dictionaries, source tables, relationship tables, and business rules. These data are requested in electronic form used by SQL Server, Microsoft Access, Microsoft Excel, or a delimited file that can be readily uploaded into one of those programs. The complete claims data requested includes all fields, other than individual patient identifiers, contained on the Provider's claim submission and all additional fields added to process the claim, including:

   (a)   *Identifier*:  claim number, sequence number representing each line item of the claim, and other identifying information;

   (b)   *Provider type*:  pharmacy, physician, physician supplier, outpatient care provider, home health provider, institutional pharmacy, physician crossover, etc.;

   (c)   *Claim Type*:  any available claim type information, including but not limited to any information that indicates whether the State Medicaid Program is the secondary payor including Medicare Crossover Claims;

   (d)   *Transaction Type*:  all available transaction type information, such as correction, cancellation, etc., identifiers, and source transaction information (*e.g.*, if one claim corrects another claim, information about which claim is being corrected);

   (e)   *Status*:  all status information, including the payment code indicating whether the claim has been accepted, processed, and/or paid and the type of program the claim will be processed under (*e.g.*, Medicaid, Managed Care, etc.);

   (f)   *Dates*:  all available dates, including the date service was provided, the date the claim was received, and the date the claim was paid;

   (g)   *Basis of payment*:  coding within the claim payment transaction which identifies the reference point from which the claim payment amount is determined (*e.g.*, AWP, usual & customary, EAC, FUL, MAC, Billed Amount, Charges, etc.);

   (h)   *Provider*:  all information for all relevant Providers, including number, name, address, contact information, and area/field of practice (where relevant);

   (i)   *Product*:  all product information, including:

      (i)   NDC.  Please provide all 11 digits (do not drop leading or trailing 0's) and ideally in three separate fields – labeler (first five digits), product (next four digits) and package size (final two digits);

      (ii)     Name;

      (iii)    Type (*e.g.*, single source, multi-source);

      (iv)    Therapeutic class; and

      (v)     Related items like diagnosis codes, place of service, and type of service (where relevant).

  (j)    *Units*:  all units information with decimals in the correct position, including submitted units, allowed units, and unit of measure (*e.g.*, capsule vs. bottle, milliliter, etc.);

  (k)    *Other Data for Payment*:  any other data used to determine the amount of the payment not listed above (*e.g.*, channel of procurement, etc.);

  (l)    *Payments*:  all fields related to billed amounts, payment limit amounts, allowed amount, and actual amounts paid along with the bases for the payment, all with decimals in the correct position, including:

      (i)     Billed charges;

      (ii)    Basis of payment (*e.g.*, billed charges, ingredient cost, EAC, FUL, MAC, Billed Amount, acquisition cost, AWP, WAC, etc.);

      (iii)    Dispensing fee;

      (iv)    Service administration fee (*e.g.*, provider service fees);

      (v)     Allowed amount or contracted amount;

      (vi)    Any other payment amount (*e.g.*, inventory management fee/profit factor, delivery fee, generic incentive fee, etc.);

      (vii)   Any amounts used to reduce amount paid (*e.g.*, payments received from other payors and the number, name, and other information associated with such payors, co-insurance, co-payment, deductible); and

      (viii)  Amount paid.

  (m)   *Comments*:  all other memo or free-form fields.

    2.      From January 1, 1991 to the present, but excluding February 2002, April 2002, and August 2008, Documents sufficient to identify the historical state MAC, if any, for the Subject Drugs or Subject HCPCS Codes.

## EXHIBIT B

## DEFINITIONS AND INSTRUCTIONS

### Definitions

1.      "AWP" or "Average Wholesale Price" means any figures so categorized and periodically published by any Publisher.

2.      "Documents" means all original written, recorded, or graphic matters whatsoever, and any and all non-identical copies thereof, including but not limited to advertisements, affidavits, agreements, analyses, applications, appointment books, bills, binders, books, books of account, brochures, calendars, charts, checks or other records of payment, communications, computer printouts, computer stores data, conferences, or other meetings, contracts, correspondence, diaries, electronic mail, evaluations, facsimiles, files, filings, folders, forms, interviews, invoices, jottings, letters, lists, manuals, memoranda, microfilm or other data compilations from which information can be derived, minutes, notations, notebooks, notes, opinions, pamphlets, papers, photocopies, photographs or other visual images, policies, recordings of telephone or other conversations, records, reports, resumes, schedules, scraps of paper, statements, studies, summaries, tangible things, tapes, telegraphs, telephone logs, telex messages, transcripts, website postings, and work papers, which are in the possession of the Carrier as defined above.  A draft or non-identical copy is a separate document within the meaning of this term.

3.      "EAC" or "Estimated Acquisition Cost" shall have the meaning set forth in 42 C.F.R. § 447.301

4.      "FUL" means "Federal Upper Limit" and shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332.

5.      "J-Code reimbursement basis" refers to the reimbursement of drugs through use of a subset of the HCPCS code set with a high-order value of "J" (compare to "NDC reimbursement basis").

6.      "MAC" or "Maximum Allowable Cost" shall have the meaning set forth in 42 C.F.R. § 447.332.

7.      "Manufacturer" means a company that manufacturers pharmaceutical products.

8.      "Medicaid" means and refers to the jointly-funded Federal-State health insurance program enacted in 1965 as an amendment to the Social Security Act to pay for the costs of certain medical services and care.

9.      "Medicaid Crossover Claim" means claims for which Medicare is the primary payor and the State Medicaid is the secondary payor.

10.     "NDC reimbursement basis" refers to the reimbursement of drugs based on a Provider's submission of a National Drug Code ("NDC") (compare to "J-code reimbursement basis").

11.     "Person" means any natural person or any business, legal, or governmental agency or association.

12.     "Point of Sale System" means a computer-transmitted claims processing system used by Providers to submit claims to Medicaid.

13.     "Provider" or "Providers" means and refers to any and all persons or entities that render health care services, including but not limited to pharmacists, institutional pharmacies, home health agencies, physicians, nurses, nurse practitioners, physicians' assistants, specialty pharmacy, nursing home personnel, laboratory technicians, x-ray and other medical equipment technicians, and other hospital or physician-office personnel.

14.     "Subject Drugs" means and refers to those drugs listed on attached Schedule A.

15.     "Subject J-Codes" means those J-Codes identified in attached Schedule B.

16.     "WAC" means "Wholesale Acquisition Cost."

17.     The terms "and" and "or" shall mean "and/or."

18.     Any word written in the singular shall include the plural and vice versa.

19.     In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

### Instructions

1.     When an objection is made to any request or any subpart thereof, please state with specificity the part or subpart of the document request considered to be objectionable and all grounds for the objection.

2.     If you find the meaning of any term in these document requests to be unclear, please assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

## SCHEDULE 1: SUBJECT DRUGS

| DRUG DESCRIPTION | NDC |
|---|---|
| Albuterol Inhalation Aerosol Metered-Dose Inhaler, 17g | 49502-0303-17 |
| Albuterol Inhalation Aerosol Metered-Dose Inhaler, 17g | 49502-0333-17 |
| Albuterol Inhalation Aerosol MDI Refill, 17g | 49502-0303-27 |
| Albuterol Inhalation Aerosol MDI Refill, 17g | 49502-0333-27 |
| Albuterol Sulfate Inhalation Solution 0.5%, 5mg/ml, 20mL multi-dose | 49502-0196-20 |
| Albuterol Sulfate Inhalation Solution 0.5% (Sterile) 20mL multi-dose | 49502-0105-01 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3ml, package of 25 | 49502-0697-03 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3ml, package of 25 | 49502-0697-24 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3ml, package of 30 | 49502-0697-33 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5 mg/3mL, package of 30 | 49502-0697-29 |
| Albuterol Sulfate Inhalation Solution Single-Pak™, 0.083% 3 mL, package of 30 | 49502-0697-30 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5mg/3ml, package of 60 | 49502-0697-60 |
| Albuterol Sulfate Unit Dose, 0.083% inhalation solution, 2.5mg/3ml, package of 60 | 49502-0697-61 |
| Cromolyn Sodium Inhalation Solution 20 mg/2 ml, unit dose vials, package of 120 | 49502-0689-12 |
| Cromolyn Sodium, Inhalation Solution 20 mg/2 ml, unit dose vials, package of 60 | 49502-0689-02 |
| Cromolyn Sodium, Inhalation Solution 20 mg/2 ml, unit dose vials, package of 60 | 49502-0689-61 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 25 | 49502-0685-03 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 25 | 49502-0685-24 |
| Ipratropium Bromide Inhalation Solution 0.02%, 2.5 ml, package of 25 | 49502-0685-26 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 30 | 49502-0685-33 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 30 | 49502-0685-29 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5 ml, package of 30 | 49502-0685-31 |
| Ipratropium Bromide Inhalation Solution 0.02%, Single-Pak™ 2.5 ml, package of 30 | 49502-0685-30 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5ml, package of 60 | 49502-0685-60 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5ml, package of 60 | 49502-0685-61 |
| Ipratropium Bromide Inhalation Solution 0.02%, 0.5mg/2.5ml, package of 60 | 49502-0685-62 |

## SCHEDULE 2:  SUBJECT HCPCS CODES

| HCPCS CODE | DRUG DESCRIPTION |
|---|---|
| J7611 | Albuterol, Inhalation Solution, FDC-Approved Final Product, Non-Compounded, Administered Through DME, Concentrated Form, 1 mg |
| J7613, J7618 | Albuterol, Inhalation Solution, Administered Through DME, Unit Dose, 1 mg |
| J7619, J7620, K0505 | Albuterol, All Formulations Including Separated Isomers, Inhalation Solution Administered Through DNE, Unit Dose, per 1 mg (Albuterol) or per 0.5 mg (Levalbuterol) |
| J7625, K0504 | Albuterol Sulfate, 0.5%, per ml, Inhalation Solution, Administered Through DME |
| J7630, J7631, K0511 | Cromolyn Sodium, Inhalation Solution Administered Through DME, Unit Dose Form, per 10 Milligrams |
| J7644, J7645, K0518 | Ipratropium Bromide, Inhalation Solution Administered Through DME, Unit Dose Form, per milligram |



**State of North Carolina**

Department of Justice
P.O. Box 629
RALEIGH
27602

ROY COOPER
ATTORNEY GENERAL

TRACY J. HAYES
ASST. ATTORNEY GENERAL
HEALTH AND PUBLIC ASST.
TEL: (919) 716-6840
FAX: (919) 716-6758

December 2, 2008

VIA ELECTRONIC MAIL
Neil Merkl (nmerkl@kelleydrye.com)
Damon W. Suden (dsuden@kelleydrye.com)
KELLEY DRYE & WARREN, LLP
101 Park Avenue
New York, NY10178-0002

RE:   In re: Pharmaceutical Industry Wholesale Price Litigation, United States of America
      ex. rel. Ven-A-Care of the Florida Keys, Inc., et al., Civil Action No. 05-11084-PBS

Dear Mr. Merkl:

My client, the North Carolina Department of Health and Human Services, received a subpoena duces tecum on November 21, 2008, issued by you on behalf of Defendants Dey, Inc., Dey L.P., Inc. and Dey, L.P., seeking the production of documents on or before December 3, 2008. As I explained to your assistant and your associate, Mr. Suden, the subpoena my client received included an illegible attachment (Exhibit A). Only today was I able to obtain a clean copy of the subpoena and its exhibits.

Pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, the North Carolina Department of Health and Human Services formally objects to your subpoena as overly broad and unduly burdensome. Specifically, responding to requests #1 and #2 of Exhibit A would entail weeks, if not months, of staff time, and the estimated cost to the State of such an endeavor would be unreasonable. The Department is unable to respond before the deadline of December 3 or the discovery deadline of December 15.

We regret that we cannot be more helpful.

Sincerely,

Tracy J. Hayes
Assistant Attorney General

**EXHIBIT
3**

## Hayes, Tracy

| | |
|---|---|
| **From:** | Hayes, Tracy |
| **Sent:** | Tuesday, December 02, 2008 5:45 PM |
| **To:** | 'nmerkl@kelleydrye.com' |
| **Cc:** | 'dsuden@kelleyDrye.com'; 'Lisa Weeks'; Blum, Bob; 'Yavelberg, Jamie (CIV)' |
| **Subject:** | IN RE: Pharmaceutical Litigation, Ex Rel Ven-A-Care |
| **Attachments:** | 12.02.08.Ltr.Dey.Objection.pdf |

Mr. Merkl:

Attached is the response of the North Carolina Department of Health and Human Services to the subpoena issued by you on behalf of the Dey defendants in the pharmaceutical industry wholesale price litigation.

I will be in court tomorrow, but can be reached Thursday afternoon if you have any questions.

Sincerely,

Tracy J. Hayes
Assistant Attorney General
919-716-6840

This e-mail transmission and the information contained herein are confidential, intended only for the recipient(s) designated above and may contain information that is legally privileged. attorney work product or exempt from disclosure under applicable law. If you have received this e-mail in error or are not the named recipient(s) you are hereby notified that any review, dissemination, distribution, or copying of this e-mail and the information contained herein is strictly prohibited. In that event, please immediately notify the sender and delete the original message. Thank you.

**From:** Suden, Damon [mailto:DSuden@KelleyDrye.com]
**Sent:** Tuesday, December 02, 2008 1:27 PM
**To:** Hayes, Tracy
**Subject:** Dey Subpoena


Tracy,

As we discussed on the phone today, attached is a clear copy of the Dey subpoena. Please contact me if you have any questions or wish to discuss any objections to the subpoena.

Thanks,
Damon

<<DOC000.PDF>>

_____

Damon Suden
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7586
dsuden@kelleydrye.com


12/31/2008

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this comm
stated, is not intended and cannot be used for the purpose of avoiding tax-related p

The information contained in this E-mail message is privileged, confidential, and ma
please be aware that any other use, printing, copying, disclosure or dissemination o
subject to legal restriction or sanction. If you think that you have received this E
error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believ
other defect that might affect any computer system into which it is received and ope
responsibility of the recipient to ensure that it is virus free and no responsibilit
Drye & Warren LLP for any loss or damage arising in any way from its use.

12/31/2008



THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| **In re: PHARMACEUTICAL INDUSTRY** ) | Pending in:  UNITED STATES DISTRICT | |
| **AVERAGE WHOLESALE PRICE** ) | COURT FOR THE DISTRICT OF | |
| **LITIGATION** ) | MASSACHUSETTS | |
| ————————————— ) | MDL NO. 1456 | |
| ) | Master File No. 01CV12257 | |
| *United States of America ex. rel. Ven-A-Care* ) | Subcategory Case No. 06-11337 | |
| *of the Florida Keys, Inc., et al. v. Dey, Inc., et* ) | | |
| *al.,* ) | **Affidavit in Support of Memorandum In** | |
| ) | **Opposition To Dey Defendants' Motion To** | |
| Civil Action No. 05-11084-PBS ) | **Compel Production Of Documents** | |

### Affidavit of Lisa Weeks

I, Lisa Weeks, having been duly sworn, depose and state that:

1.      I am a citizen and resident of Wake County, North Carolina.

2.      I am the Outpatient Pharmacy Program Manager for the North Carolina Division of Medical Assistance ("DMA") of the North Carolina Department of Health and Human Services ("Department"). I have held this position since February 2007. Prior to that position, I was the pharmacist for the North Carolina State Health Plan since April 2006. I have been a licensed pharmacist since 1985.

3.      As part of my duties, I am responsible for managing the day-to-day operations of the outpatient pharmacy program and providing pharmaceutical care to N.C. Medicaid recipients.

4.      I received a copy of a subpoena *duces tecum* issued by Dey, Inc., et al. on November 19, 2008 in the civil action *United States of America ex. rel. Ven-A-Care of the Florida Keys, Inc., et al. vs. Dey, Inc., et al.* and reviewed the subpoena and the attachments thereto, including "Exhibit A" and "Schedules 1 and 2".

5.      The subpoena orders the production of extensive and detailed North Carolina Medicaid pharmaceutical claims data from January 1, 1991 to January 1, 2001 and January 1, 2008 to the present and also orders the production of documents "sufficient to justify" North Carolina's historical maximum allowable price for the subject drugs or subject HCPCS Codes for the time period of January 1, 1991 to the present, excluding February 2002, April 2002 and August 2008.

6.      I am the only individual at the DMA pharmacy program who has the ability and expertise to coordinate the gathering of the data and documentation demanded

1

by the Dey defendants. As an employee of State government, I have responsibility for day-to-day operations of the outpatient pharmacy program and associated pharmaceutical care for patients that cannot be suspended in order to spend all of my time responding to and coordinating the efforts related to the Dey defendants' demands.

7.      The subpoena allowed for only two weeks to respond to the extensive and voluminous requests, and the deadline of December 3, 2008 was not a reasonable time to comply with such a demand. Further, the Subpoena and the exhibits are vague as to what is intended by the terms manuals, source tables, relationships tables, and business rules, and the vagueness of this terminology prevents me from reasonably identifying the materials sought, determining the availability of the data requested, and estimating the time and cost it would take to comply with the subpoena.

8.      The retrieval of the demanded documents or communications, which extend back seventeen (17) years, is extremely burdensome because of the amount of manpower, time and equipment required to meet the request. The claims data request alone would require DMA staff to dedicate an unreasonable amount of staff time and effort retrieving the data requested.   Even if some or all the documents or communications can be found, I estimate it would take the Department months of staff time to attempt to fully comply with the subpoena.   Compliance with the subpoena is not a simple matter of hitting the print button on a computer.

9.      For example, the subpoena requires production of historical state MAC information on each of the subject drugs listed in Schedules 1 and 2. Each drug listed may have multiple MACs depending on the various effective dates of pricing. The DMA Pharmacy Program does not have the capability to provide historical state MAC data as requested in Exhibit A, Item # 2. I estimate it would take at least two months for DMA's fiscal agent, Electronic Data Systems, Inc. ("EDS"), to retrieve the information requested and additional costs would be incurred for hours related to the actuarial entity efforts that would be needed to retrieve this information. Naturally, EDS must continue with its regular day-to-day responsibilities and cannot be expected to devote all its time to retrieval of historical state MAC information. In addition, my understanding is that DMA's actuarial entity charges DMA $275 for each hour of labor incurred.

10.      Another example is that the subpoena requests claims data on all claims for the subject drugs in Schedules 1 and 2 from 1991 to present. Generating a report on these claims data could take a minimum of one month if staff worked exclusively on this project and ignored day-to-day job responsibilities. (I estimate that it would take a minimum of 160 man hours). Of course, this estimate presumes the information can even be located and accessed, and would involve retrieval from the system mainframe which increases the impact to state staff time, costs and efforts. Again, as an employee of State government, I have responsibility for the day-to-day operations of the outpatient pharmacy program and have responsibilities for patient healthcare. Even if I could devote one hour per week to coordinating such a task, it could require up to four to six months just to coordinate the retrieval of claims data the defendants demand.

2

11.    Ultimately, I estimate it could take me a <u>minimum</u> of four months to gather the information demanded in the subpoena, and the ultimate cost to the State is extremely difficult to calculate.

I certify that I have read the foregoing Affidavit, and that the same is true to the best of my knowledge.

This the 31st day of December, 2008.

*Lisa Weeks*

Lisa Weeks

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Sworn to and subscribed before me this the ³¹ˢᵗ day of December, 2008.

*Rhanda Clark*

Notary Public

My Commission Expires: March 11, 2012

```
LASHANDA T CLARK
NOTARY PUBLIC
WAKE COUNTY
NORTH CAROLINA
My Commission Expires March 11, 2012
```

3