# EXHIBIT I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE HEALTH AND SOCIAL SERVICES, DELAWARE DIVISION OF MEDICAID AND MEDICAL ASSISTANCE,<br><br>        Plaintiff,<br><br>v.<br><br>DEY, INC; DEY L.R., INC.; and DEY, L.P.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **C.M. No. 08-215 SLR**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS DEY, INC., DEY L.P., AND DEY L.P., INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO TRANSFER PLAINTIFF'S MOTION TO QUASH TO THE DISTRICT OF MASSACHUSETTS

Defendants Dey, Inc., Dey L.P., and Dey L.P., Inc., captioned herein as Dey, Inc.,

Dey L.R., Inc. and Dey, L.P. (collectively, "Dey"), through their undersigned counsel, hereby

submit this reply memorandum of law in further support of their cross-motion to transfer

Plaintiff Delaware Health and Social Services, Delaware Division of Medicaid and Medical

Assistance's ("DMMA") motion to quash Dey's subpoena to the United States District Court for

the District of Massachusetts.  Defendants respectfully request that the Court grant Dey's cross-

motion to transfer this matter to the District of Massachusetts where the underlying multidistrict

litigation is pending.

## ARGUMENT

In a multidistrict litigation ("MDL"), like the underlying action here, it is both

permissible and preferred for the MDL Judge to decide all discovery issues, including those

concerning third-party subpoenas.  *See, e.g., In re: Orthopedic Bone Screw Products Liability*

*Litigation,* 79 F.3d 46, 48 (7th Cir. 1996) (approving transfer of protective orders filed by third-party witnesses in Wisconsin federal court to the Eastern District of Pennsylvania where the underlying action was consolidated in an MDL for pretrial discovery and acknowledging importance of "allow[ing] one judge to take control of complex proceedings . . . to avoid unnecessary duplication in discovery"); *In re Neurontin Mktg.,* 245 F.R.D. 55, 57 (D. Mass. 2007) ("The purpose of a multidistrict litigation consolidation is to 'avoid duplicative discovery, prevent inconsistent pretrial rulings and conserve judicial resources.' The relevant statutes and caselaw provide for an MDL Court to resolve disputes arising from the service of Rule 45 subpoenas on non-parties located in other districts.") (quoting *In re Air Disaster,* 486 F.Supp. 241, 243 (Jud. Pan. Mult. Lit. 1980).

DMMA does not dispute this body of law. Instead, DMMA relies on the "first-filed" rule to support its contention that the District of Delaware must decide DMMA's motion to quash. (DMMA Opp. ¶ 1.) The "first-filed" rule, however, is merely a rule of discretion and the Third Circuit has cautioned against a "wooden application of the rule." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, at 977, 972 (3d Cir. 1988). The "first-filed" rule reflects the "obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 930 (3d Cir. 1941). Thus, in the context of an MDL proceeding, the purpose of the "first-filed" rule and the goals of the MDL system are both served by having a consolidated, centralized resolution of all discovery disputes before the MDL Judge.

DMMA argues that adjudication of its motion to quash by this Court "does not create the risk of inconsistent rulings in the MDL case." (DMMA Opp. ¶ 3.) This is wrong.

Judge Saris is currently considering both Dey's motion to extend the production deadline to receive Medicaid claims data from states and Dey's motion against 4 states, including Delaware, to compel compliance with Dey's subpoena. And on January 5, 2009, DMMA filed an appearance in the District of Massachusetts together with an opposition to Dey's motion to compel. (Attached hereto as **Exhibit A**.) Nowhere in that opposition does DMMA ask the District of Massachusetts to dismiss or defer ruling on Dey's motion to compel because of the pending motion to quash in the District of Delaware or the "first-filed" rule. Thus, the potential for conflicting rulings is apparent.[1]

Moreover, Judge Saris is in a unique position to adjudicate the outcome of the motions concerning the various subpoenas requesting Medicaid claims data because she is intimately familiar with the issues in the case. As discussed in Dey's Memorandum of Law In Support of Its Cross-Motion to Transfer DMMA's Motion to Quash to the District of Massachusetts ("Dey's Moving Memo"), for the last seven years Judge Saris has dealt almost exclusively with litigation concerning the complex and varied issues underlying the present motion. (Dey Cross-Mot. at 6-7.) DMMA asserts that "[w]hile the underlying issues of the MDL litigation . . . may be complex, the issues germane to this Motion to Quash are not" (DMMA Opp. ¶ 2) because, in DMMA's view, the subpoena failed to allow sufficient time to respond. This is wrong.[2] As set forth in Dey's Moving Memo, Dey is willing to give a

---

[1]   DMMA also points to Judge Saris' comment to Dey's counsel during a November 13, 2008 status conference stating "[t]hat's your fault for waiting so long . . . I'm sorry but [Dey] took too long to start it going." (DMMA Opp. ¶ 3 (quoting Tr. at 12).) This comment concerned other discovery—not the Medicaid claims data sought by the subpoena served on DMMA. (*See* Tr. at 11:23-12:4.) It wasn't until much later in the status conference that the "additional issue" of State Medicaid claims data was raised. (Tr. at 33:24-34:7.) In fact, it was only on November 13 that Dey knew it would have to subpoena individual states in order to obtain the requested Medicaid claims data. (*See* Tr. 4514-16.)

[2]   DMMA states that the subpoena at issue was left at a campus building after business hours on Friday, November 21, 2008, and that the effective date of service was therefore Monday,

reasonable extension of time and to pay the reasonable costs associated with the production of

the requested claims data. Had DMMA contacted Dey's counsel before filing its motion to

quash, Dey would have readily agreed to give DMMA any reasonable time it needed to comply

with the subpoena.[3] Indeed, Dey has agreed to extensions with nearly every subpoenaed state

and has moved the District of Massachusetts to extend the discovery deadline for the specific

purpose of receiving state Medicaid claims data. Instead, DMMA chose to take no steps

whatsoever to comply with the subpoena or to contact Dey's counsel and instead filed the

present motion to quash.[4] In any event, DMMA is now aware that Dey would be willing to

extend the deadline as necessary and cover reasonable costs, rendering moot any such objections.

Furthermore, the issue of timing does not stand alone and necessarily involves the

complex issues underlying the MDL litigation. Rule 45 of the Federal Rules of Civil Procedure

provides that a court may modify a subpoena that does not allow a reasonable time for

compliance and courts have often done so. *See* Fed. R. Civ. P. 45(c)(3)(A)(i). *See, e.g.,*

*Vaughan Furniture Co. Inc. v. Featureline Mfg., Inc.*, 156 F.R.D. 123, 126 (M.D.N.C. 1994)

(where two days was insufficient time to comply with subpoena, court modified deadline rather

---

November 24, 2008. (DMMA Opp. ¶ 2.) However, the affidavit of service indicates that
personal service was made at 4:50 pm on Friday, November 21, 2008 upon an individual named
Slania Castro. (Dey Cross-Mot. Ex. D.) In any event, there is no minimum time required by the
Federal Rules of Civil Procedure. And DMMA's continued citation to Local Rule 30.1 is still
misplaced as that rule only concerns depositions—not document subpoenas.

[3]     In fact, Local Rule 7.1.1 envisions just such a meet-and-confer in requiring "a reasonable effort
[by the moving party] . . . to reach agreement with the opposing party on the matters set forth in
the motion." The spirit underlying the rule is to avoid motion practice where agreement can
otherwise be reached. In the present case, DMMA's motion to quash could have been entirely
avoided had the parties discussed DMMA's objections regarding time for compliance.

[4]     In its opposition filed on January 5, 2009 in the District of Massachusetts, DMMA asserts for the
first time that gathering the requested data would take 6 months to a year and cost $500,000 to $1
million. (Ex. A at 4.) On January 6, 2009, DMMA also filed the Declaration of Francis
O'Connor in the District of Delaware. Putting aside the timeliness of this filing, Judge Saris is in
the best position to evaluate DMMA's assertion as to the time and cost required to gather the
requested data because Judge Saris has been adjudicating similar issues of state productions for
the past 7 years.

than quashing and forcing defendants to incur additional costs). "The 'reasonableness' of the response time is determined by the court, which considers 'the extent of the information requested and other underlying circumstances.'" *Hardin v. Belmont Textile Machinery Co.*, No. 3:05CV492, 2007 WL 2300795, at *4 (W.D.N.C. Aug. 7, 2007) (quoting 9A Fed. Prac. & Proc. Civ. 2d § 2463 at 71). Thus, a court's determination of the reasonableness of Dey's subpoena will necessarily include consideration of Dey's need for the requested claims data, which can only be determined upon consideration of the incredibly complex and varied issues underlying the MDL litigation. As discussed above and in Dey's Moving Memo, Judge Saris alone is in the best position to make such a determination.

## CONCLUSION

For the above reasons, Dey respectfully requests Dey's cross-motion to transfer

be granted and that an Order be issued transferring DMMA's motion to quash to Judge Saris in

the United States District Court for the District of Massachusetts.

Dated: January 8, 2009

Respectfully Submitted,

SAUL EWING LLP

*/s/ Candice Toll Aaron*
Candice Toll Aaron, Esquire (DE ID #4465)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6875
Facsimile: (302) 421-6813
caaron@saul.com

OF COUNSEL:

KELLEY DRYE & WARREN LLP

Paul F. Doyle
Sarah L. Reid
William A. Escobar
Neil Merkl
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants Dey, Inc.
Dey, L.P., and Dey, L.P., Inc*

# Exhibit A

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | **MDL No. 1456** |
| In re: PHARMACEUTICAL INDUSTRY ) | **Master File No. 01-CV-12257-PBS** |
| AVERAGE WHOLESALE PRICE LITIGATION ) | **Subcategory Case No. 06-11337** |
| ) | |
| _____ ) | |
| ) | **Hon. Patti B. Saris** |
| THIS DOCUMENT RELATES TO: ) | |
| ) | **Magistrate Judge** |
| *United States of America ex. Rel. Ven-A-Care of the* ) | **Marianne B. Bowler** |
| *Florida Keys, Inc. et al. v. Dey, Inc., et al.,* ) | |
| Civil Action No. 05-11084-PBS ) | |
| _____ ) | |

### DELAWARE HEALTH AND SOCIAL SERVICES'
### OPPOSITION TO MOTION TO COMPEL

Delaware Health and Social Services ("DHSS") opposes the Motion of Defendants Dey,

Inc., Dey, L.P., and Dey L.P., Inc. ("Dey") to compel compliance with a subpoena *duces tecum*,

and responds with the attached memorandum of reasons why the Motion should be denied.

### COMPLIANCE WITH LOCAL RULES 7.1(A) and 37.1

Dey's Certification of Compliance with Local Rules 7.1(A)(2) and 37.1 is puzzling. Dey

has made no effort whatsoever to try to resolve or narrow the issues with DHSS presented by its

Motion to Compel. It simply served a subpoena under the auspices of the District of Delaware.

The subpoena required a response that violated Delaware District Court Local Rule 30.1, which

requires seven days for reasonable notice for depositions. It has never contacted DHSS to make

a good faith effort to narrow the scope of the subpoena as stated in its Certification of

Compliance. Nor has it agreed to pay reasonable costs incurred by DHSS in connection with the

production of the requested data as stated on page 6 of its Memorandum of Law.

1

## ORAL ARGUMENT

DHSS opposes the request for oral argument. DHSS is not a party to the lawsuit pending before this court and has no presence or office in Massachusetts. It is unduly burdensome for DHSS to require that it pay its attorney to travel to Massachusetts for oral argument on the pending Motion. DHSS asks that the Court decide the Motion on the papers, or in the alternative, convene a teleconference for argument on the Motion.

## MEMORANDUM OF DELAWARE HEALTH AND SOCIAL SERVICES' IN OPPOSITION TO MOTION TO COMPEL

### Background

On Friday, November 21, 2008, Dey served a subpoena for Harry Hill, the Director of the Division of Medicaid and Medical Assistance ("DMMA"). A copy of the subpoena is attached to Dey's Motion to Compel as Exhibit 1. DMMA is part of DHSS, which is the single state Medicaid agency for the State of Delaware. The subpoena was authorized by the District Court for the District of Delaware. According to the Affidavit executed by Dey's process server, the subpoena at issue was left at one of the buildings in the campus where the DMMA office is located after business hours on Friday, November 21, 2008. Exhibit A attached hereto. Mr. Hill did not see the subpoena until the following week. The return date on the subpoena was December 3, 2008.

The subpoena sought the production of complete Medicaid claims data from January 1, 1991 to December 31, 2001 for each instance when the Medicaid program provided reimbursement of claims for 26 drugs. DHSS is not a party to any of the underlying lawsuits consolidated in the District of Massachusetts.

2

DHSS filed a Motion to Quash the subpoena in the United States District Court for the District of Delaware on the grounds that the subpoena did not permit a reasonable amount of time to comply as a matter of law and that the subpoena was unduly burdensome. Dey has opposed the Motion to Quash and has filed a Cross-Motion to have the Motion to Quash transferred to this Court. Both Motions are now pending in the District of Delaware.

## Argument

Under the Local Rules of the United States District Court for the District of Delaware, under whose auspices the subpoena was issued, the subpoena was not timely served. The Dey defendants failed to allow a reasonable time for compliance pursuant to Fed. R. Civ. P. 45(c)(3) and Delaware District Court Local Rule 30.1, which requires seven days for reasonable notice. Dey served the subpoena only six business days in advance of the required time for compliance. Under Fed. R. Civ. P. 6(a), holidays and weekends are not counted. November 27, 2008 and November 28, 2008 were legal holidays. Fed. R. Civ. P. 6(a)(4). As a matter of law, therefore, the subpoena did not permit a reasonable time in which to respond – a minimum of seven days – and so the Motion to Compel should be denied on this ground alone. The compliance issues with the subpoena, however, extend far beyond the seven days' notice required under Delaware's Local Rules.

The subpoena subjects DHSS to an undue burden. The data that Dey requests are simply not available in the format requested by the subpoena. In 2002, DHSS implemented a new MMIS system. It maintained the data from the old system on backup tapes and has verified with EDS, its fiscal agent, that the tapes still exist. Declaration of Frank O'Connor, attached hereto as Exhibit B. Indeed, DHSS could simply provide copies of the tapes to Dey but the tapes alone, in an unsupported format, would be meaningless. Instead, the subpoena requires DHSS to pay EDS

3

first to obtain the hardware and software required to rebuild the old MMIS system, which must be obtained from out-of-state, and then to write the procedures for extracting the data from the tapes.

DHSS would not able to assess the cost for this project until the project has been at least partially completed. Based on its limited review to date, however, DHSS estimates that it would take approximately six months to a year and $500,000 to $1,000,000 to produce the data as requested by Dey.

For these reasons, Delaware Health and Social Services, Division of Medicaid and Medical Assistance respectfully requests that the Motion to Compel be denied.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ A. Ann Woolfolk
A. Ann Woolfolk, Del. Bar #2642
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400

Attorney for Delaware Health and Social
Services, Division of Medicaid and Medical
Assistance

Dated: January 5, 2009

4



NOV-24-2008  15:31     SERVING BY INTERIM

| COURT | UNITED STATES DISTRICT COURT DISTRICT OF DELAWARE | |
|---|---|---|
| COUNTY OF | | MDL |

| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | DOCKET No. 1456 MASTER FILE NO. 01-CV-12257-PBS |
|---|---|

THIS DOCUMENT RELATES TO
                              *against*
UNITED STATES OF AMERICA EX REL., VEN-A-CARE OF THE FLORIDA
KEYS, INC., ET AL., V., DEY, INC., ET AL.,
CIVIL ACTION NO. 05-11084-PBS

Plaintiff(s)

*Defendant(s)*

AFFIDAVIT OF
SERVICE OF SUBPOENA

DELAWARE
STATE OF XXXXXXXX, COUNTY OF NEW CASTLE        SS:   The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides IN  IN THE STATE OF DELAWARE
That on   11/21/08         at 4:50 P.M., at  1901 N. DU PONT HIGHWAY, NEW CASTLE, DELAWARE
deponent served the within subpoena on   DELAWARE HEALTH AND SOCIAL SERVICES        witness therein named,
                                          DIVISION OF MEDICAID AND MEDICAL ASSISTANCE

**INDIVIDUAL**  1. ☐   by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said subpoena.

**CORPORATION**  2. ☒   a   DOMESTIC   corporation, by delivering thereat a true copy to   GLANIA CASTRO   personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be   MANAGING AGENT   thereof.

**SUITABLE AGE PERSON**  3. ☐   by delivering thereat a true copy to   a person of suitable age and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**  4. ☐   by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion thereat, having called there

**MAILING TO WITNESS USE WITH 3 OR 4**  ▪. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness at witness' last known residence, at   and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4**  ▪▪. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to witness at witness' actual place of business, at   in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the witness.

**DESCRIPTION USE WITH 1, 2, OR 3 ☒**  ☐ Male -  ☒ Female

| | | | | | |
|---|---|---|---|---|---|
| ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Black Skin | ☒ Brown Hair | ☐ Balding. | ☒ 21-35 Yrs. | ☒ 5'0"-5'3" | ☒ 100-130 Lbs. |
| ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| ☒ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $  NO FEE        the authorized traveling expenses and one day's witness fee.

[signature]
Sworn to before me on   11/25/08

CAREY M. SHEA
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires May 24, 2011

[signature]
MICHAEL   POWERS

License No. ____

NOV-24-2008  15:57        213 3490338

99%

TOTAL P.02
P.02

Exhibit A

# B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY | ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE LITIGATION | ) | Master File No. 01-CV-12257-PBS |
| | ) | Subcategory Case No. 06-11337 |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | Hon. Patti B. Saris |
| | ) | |
| | ) | Magistrate Judge |
| United States of America ex. Rel. Ven-A-Care of the | ) | Marianne B. Bowler |
| Florida Keys, Inc. et al, v. Dey, Inc., et al, | ) | |
| Civil Action No. 05-11084-PBS | ) | |
| | ) | |

DECLARATION OF FRANCIS O'CONNOR

I, Francis O'Connor, having been duly sworn, depose and state as follows:

1.      I have been employed by Delaware Health and Social Services ("DHSS") since 1972 and since 1986 in positions involving budgetary, fiscal and automated systems aspects of the Medicaid program.

2.      In 2002, DHSS switched to a new claims processing Medicaid Management Information System ("MMIS"). Electronic Data Systems ("EDS"), which is Delaware's fiscal agent for the Medicaid program, maintained the claims data from the old MMIS system on backup tapes.

3.      When DHSS received a subpoena for complete state claims data from January 1, 1991 to December 31, 2001, I inquired of EDS what would be involved in recreating the claims data that predated the new MMIS and are stored on backup tapes. I learned that the claims data on the backup tapes are not maintained in an electronic form that can be readily retrieved or converted into any of the computer program formats listed in the subpoena. I learned that neither

# Exhibit B

EDS nor the State of Delaware has the software or hardware needed to retrieve the claims data. EDS would have to acquire access to mainframe hardware and software that they do not currently utilize for the Delaware Medicaid program. There are other state Medicaid programs that do have the necessary hardware and software, but permission would have to be obtained by Delaware from the other state to use their hardware and software in order to retrieve the Delaware claims data in a usable format. Delaware and the other state would have to carefully consider risk and liability issues from the potential disruption of another state's Medicaid program. If other states refused to allow Delaware access to their hardware and software, then Delaware would have to purchase or lease the required hardware and software.

4.      I learned from EDS that it could turn the tapes with the Delaware claims data over to a third party, like the Dey defendants, but that the third party would not have the expertise and knowledge to extract and convert the Delaware claims data into a useful format. Dey or any other outside party would have to contract with EDS to retrieve the data or at least to write the procedures for retrieving the data before the data could be accessed. I learned that EDS would need to perform the procedures itself before it would be able to produce a set of instructions that would be sufficiently detailed to assist the third party. EDS would charge DHSS for all of its work in extracting and converting the claims data.

5.      There has been no offer by the Dey defendants to reimburse DHSS for the search and production costs associated with the retrieval of the complete claims data sought by the subpoena, and so DHSS has not authorized EDS to commence the work necessary to extract the data. It is impossible to accurately assess the cost of extracting the data without more time to make a complete assessment of the scope of work that would be required. A major cost factor would be acquiring access to the necessary hardware and software. If another state Medicaid

2

program would be cooperative, it is likely that portion of the cost would be less than if Delaware had to purchase or lease the hardware and software. Based on my 22 years of experience of procuring, contracting and financing MMIS systems and modifications to MMIS systems, and discussions I have had with EDS about such a project, I estimate that a systems project designed to retrieve the Delaware claims data and comply with the subpoena would require between six months and one year and cost between $500,000 and $1,000,000.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on January 5, 2009.**

/s/ Francis O'Connor