# EXHIBIT B

Page 272

1              UNITED STATES DISTRICT COURT

2              DISTRICT OF MASSACHUSETTS

3              Case No. MDL No. 1456

4              Civil Action No. 01-12257-PBS

5       ------------------------------------X

6    In Re:  PHARMACEUTICAL INDUSTRY

7    AVERAGE WHOLESALE PRICE LITIGATION

8       ------------------------------------X

9            (Captions continue on next page.)

10

11                    VOLUME II

12          CONTINUED VIDEOTAPE DEPOSITION

13                 OF LUIS COBO

14

15              Tuesday, March 4, 2008

16                  21st Floor

17          2 South Biscayne Boulevard

18              Miami, Florida 33131

19

20     Reported by:  Sherilynn McKay, RMR, CRR

21          Notary Public, State of Florida

22

Page 273

1              IN THE DISTRICT COURT OF

2                 TRAVIS COUNTY, TEXAS

3                  Cause No. GV401286

4      -------------------------------------X

5    THE STATE OF TEXAS

6

7    Ex rel.

8

9    VEN-A-CARE OF THE FLORIDA KEYS,

10   INC.,

11

12        Plaintiffs

13

14   v.

15

16   ABBOTT LABORATORIES, INC., et al.,

17

18        Defendants.

19   -------------------------------------X

20

21

22        (Captions continue on next page.)

Page 274

1                 UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF MASSACHUSETTS

3             Civil Action No. 03-cv-11865-PBS

4    -------------------------------------X

5    THE COMMONWEALTH OF MASSACHUSETTS,

6

7          Plaintiff,

8

9    - against -

10

11   MYLAN LABORATORIES, INC., et al.

12

13         Defendants.

14   -------------------------------------X

15

16

17

18

19

20

21

22

Page 275

```
 1                A P P E A R A N C E S

 2

 3    For Abbott Labs:

 4              JONES DAY

 5              By:  R. CHRISTOPHER COOK, ESQ.

 6              51 Louisiana Avenue, N.W.

 7              Washington, DC 20001-2113

 8              christophercook@jonesday.com

 9

10    For Ven-A-Care of the Florida Keys:

11              THE BREEN LAW FIRM

12              By:  JAMES JOSEPH BREEN, ESQ.

13                   ALISON WARREN SIMON, ESQ.

14                   ANDREW SHELDON, ESQ.

15              Suite 110

16              3350 S.W. 148th Avenue

17              Miramar, Florida 33027

18              jbreen@breenlaw.com

19

20

21

22    (CONTINUED)
```

Page 276

```
 1              A P P E A R A N C E S   (CONTINUED)

 2

 3     For the United States Department of Justice:

 4              UNITED STATES DEPARTMENT OF JUSTICE

 5              By:  ANN ST. PETER-GRIFFITH, ESQ.

 6              99 NE 4th Street

 7              Miami, Florida 33132

 8

 9     For Roxane Labs, Boehringer Ingelheim and Ben

10     Venue Laboratories:

11              KIRKLAND & ELLIS

12              By:  ERIC GORTNER, ESQ.

13              200 East Randolph Drive

14              Chicago, Illinois 60601-6636

15              egortner@kirkland.com

16

17     For Dey, Inc. and Mylan:

18              KELLEY DRYE

19              By:  WILLIAM A. ESCOBAR, ESQ.

20              101 Park Avenue

21              New York, New York 10178-0002

22              wescobar@kelleydrye.com
```

Page 277

```
 1              A P P E A R A N C E S   (CONTINUED)

 2

 3     For the Commonwealth of Massachusetts:

 4               OFFICE OF THE ATTORNEY GENERAL BUSINESS

 5               AND LABOR BUREAU

 6               By:  JAY PINA, ESQ.

 7               12th Floor

 8               100 Cambridge Street

 9               Boston, Massachusetts 02108

10               jay.pina@state.ma.us

11

12     For the State of Texas:

13               ATTORNEY GENERAL OF TEXAS

14               By:  RAYMOND WINTER, ESQ.

15               PO Box 12548

16               Austin, Texas 78711-2548

17               raymond.winter@oag.state.tx.us

18

19

20     ALSO PRESENT:

21               Jason Stapleton, Videographer

22               T. Mark Jones, Ven-A-Care
```

Cobo, Luis - Vol. II

Miami, FL

March 4, 2008

Page 278

```
 1                    I N D E X

 2

 3   EXAMINATION: LUIS COBO                    PAGE

 4       DIRECT EXAMINATION BY MR. COOK............ 281

 5       CROSS-EXAMINATION BY MR. ESCOBAR......... 533

 6

 7

 8                 E X H I B I T S

 9   NUMBER              DESCRIPTION            PAGE

10   Exhibit Abbott 540, VAC MDL 43026 to 43040..... 381

11   Exhibit Abbott 541, VAC MDL 43041 to 43046..... 381

12   Exhibit Abbott 542, VAC MDL 43047 to 43055..... 381

13   Exhibit Abbott 543, VAC MDL 64109 to 64123..... 420

14   Exhibit Abbott 544, VAC MDL 64730 to 65742..... 420

15   Exhibit Abbott 545, VAC MDL 86162 to 86175..... 431

16   Exhibit Abbott 546, VAC MDL 43168 to 43873..... 503

17   Exhibit Abbott 547, United States' First

18                       Amended Complaint consisting

19                       of 40 pages................ 508

20   Exhibit Dey 123,    FL 002765 to 03096........ 564

21

22
```

Cobo, Luis - Vol. II

March 4, 2008

Miami, FL

1    preparing compounded drugs making a profit on

2    those ingredients that were being paid for by

3    Medicaid?

4         A.   For those compounded drugs?

5         Q.   Yes, sir.

6         A.   I don't know that it was, for that

7    unique class of drugs, right or wrong.  It's what

8    they provided and it's what I undertook as a

9    compounding pharmacist and pharmacy.

10        Q.   But you certainly didn't feel that you

11   were doing anything wrong by submitting those

12   claims and receiving the profit on those

13   ingredients.  Correct?

14             MR. BREEN:  Objection.  Form.

15             THE WITNESS:  I did not think I was

16   doing anything wrong by working within the

17   guidelines that, you know, Medicaid had set for

18   all providers participating in the program.

19   BY MR. COOK:

20        Q.   As I understand, Mr. Cobo, Ven-A-Care

21   made presentations to various state government

22   officials over the years, and to the federal

Page 306

1    government officials as well.  Do I have that

2    correct?

3         A.   Yes, sir.

4         Q.   Did you have any role in those

5    presentations?

6         A.   I attended, of the many, many, many

7    trips that were made, I attended several of

8    those.  And I would have to say that my role was

9    as a passive participate, I guess would be how to

10   classify it.  I did not make actual

11   presentations, nor did I prepare, you know, any

12   of the text or background that went into those

13   presentations.  And during that period of time I

14   didn't have that type of participation or

15   activity with Ven-A-Care.

16        Q.   But you would certainly be able to

17   observe the individuals who were listening to the

18   presentation.  Correct?

19        A.   Yes.

20        Q.   Do you recall which presentations you

21   attended?

22        A.   I'd have to have my memory refreshed on

1    that.  I know that I was present at one of the

2    presentations that was made to the MFCU group, I

3    believe it was.  It was a presentation when we

4    also were given an opportunity to meet with

5    Nancy-Ann Min DeParle following a presentation.

6    Specifically I can't recall what the group was or

7    even individuals that were present, to be honest

8    with you, nor specifically the time frame.  I

9    want to say it was probably around '98, 1998.

10       Q.   Do you recall making a presentation to

11   anybody from the state of Texas?

12       A.   I know that there were presentations

13   that Ven-A-Care made with the state of Texas, but

14   I can't specifically -- and there may have been

15   one of the presentations that I attended, in

16   terms of a presentation, but specifically I

17   couldn't give you any information on that.

18       Q.   Do you recall --

19       A.   Only because, you know, I've had

20   subsequent visits to Texas where I've

21   participated in document reviews, I've met people

22   that are working on the cases, and I don't

Cobo, Luis - Vol. II                                                March 4, 2008

Miami, FL

Page 308

1    exactly know if one was in the form of a

2    presentation or just one of those meetings where

3    it was a work-related interaction.

4         Q.    Do you recall making a presentation to

5    officials from Missouri?

6         A.    I'm trying to think of my capacity in a

7    presentation.  Again, I know the meetings have

8    taken place.  I don't know that I was in the

9    capacity of presentation.

10               You know, at that point in time,

11   probably because of my reentry into Ven-A-Care,

12   after closing the retail Cobo Pharmacy down, that

13   was a learning period for me to, you know,

14   understand and sort of come up to snuff with, you

15   know, merits of the case.

16        Q.    But do you recall meeting with

17   officials from Missouri?

18               MR. BREEN:  Objection.  Form.

19               THE WITNESS:  Refresh my memory.  If

20   you have a specific -- I'm -- not specifically,

21   no.

22   BY MR. COOK:

1      Q.    In your Texas deposition, you mentioned

2   presentations to California, Alabama, and

3   Minnesota.  Do you recall making presentations or

4   attending at least presentations to each of those

5   states?

6      A.    Yeah.  As I recall, Alabama, and again

7   I don't know the individuals that we met with,

8   but it was a rather brief interaction there.  And

9   this was also one of the earlier trips that I

10  made.  And I do recall that that, at the time,

11  was not a very productive interaction with Ven-A-

12  Care.  Alabama was pursuing these issues and

13  would pursue them at their own -- at their own

14  interest.

15     Q.    What was the time frame -- you said

16  that Alabama was one of the earlier trips you

17  made.

18     A.    Uh-huh.

19     Q.    Can you put that in some time frame,

20  based upon that?

21     A.    It would have been probably in the late

22  1990s.  I don't know if it was '98, '99,

Cobo, Luis - Vol. II

March 4, 2008

Miami, FL

Page 310

```
 1    something like that, '98, perhaps.

 2         Q.   I can represent to you that we've

 3    received no production from Ven-A-Care, that at

 4    least we can identify, as a presentation to

 5    Alabama.  Was there written material that you

 6    used at these -- at these --

 7         A.   Not that I recall.  I think it was --

 8    it was purely an introduction, an introductory

 9    type of interaction, and I cannot recall if there

10    were any materials that were put together and

11    taken, assembled and left with any of the

12    representatives from Alabama.  I just --

13         Q.   There was an unsealing order in this

14    case that allowed Ven-A-Care to share a copy of

15    its federal complaints with representatives of

16    states.  Is that correct?

17              MR. BREEN:  Objection.  Form.

18              Just also, I would -- I don't think

19    you're in an attorney-client privilege area here,

20    but you're getting close.  So I'll just caution

21    the witness to the extent he has any information

22    in response to counsel's questions that could be
```

1    answered only based upon revelation and

2    communication with counsel to pause and let's

3    make sure we don't invade the attorney-client

4    privilege.  But with that, go ahead.

5              THE WITNESS:  Restate your question,

6    please.

7              MR. COOK:  Certainly.

8    BY MR. COOK:

9         Q.   As I understand, from presentations

10   that Ven-A-Care did give, in other contexts, Ven-

11   A-Care had an order from the Court here in Miami

12   where your qui tam was pending that allowed you

13   to share the sealed Complaint with officials at

14   the various states.  Do I have that correct?

15        A.   I would have to defer that you have

16   that correct to our counsel.  I don't feel

17   comfortable making any definitive representations

18   on what those various legal positions and what

19   have you are.  But I would assume it's some

20   degree of accuracy there.

21        Q.   Do you recall making or attending a

22   presentation for Florida?

Page 312

```
 1        A.    I have been present in several

 2   interactions with Florida.  I'm pausing, just

 3   trying to think of the magnitude of the

 4   presentation.  But it certainly wasn't on some of

 5   the initial presentations.  And I think the

 6   interactions again that I was involved in would

 7   have come later on in the development of the

 8   case, probably towards the late '90s and early

 9   2000 period.

10        Q.    Is it fair to say, Mr. Cobo, that while

11   you may not remember the -- each specific

12   presentation to the states, that these initial

13   meetings with the states would follow a pretty

14   typical outline?

15             MR. BREEN:  Objection to the form.

16             THE WITNESS:  I don't know what a

17   typical outline would be.  And I would have to

18   say in these various presentations there was

19   probably unique information or direction or

20   sensitivities that maybe needed to be explored.

21   So I don't know if that falls under the category

22   of a --
```

Cobo, Luis - Vol. II                                                  March 4, 2008

Miami, FL

Page 313

1    BY MR. COOK:

2         Q.   But there certainly were common themes

3    that Ven-A-Care would express to all of the

4    states and federal representatives with whom they

5    met.  Correct?

6         A.   I think that's reasonable.

7         Q.   One of the common themes that Ven-A-

8    Care would communicate at each of these

9    presentations was the basic notion that average

10   wholesale prices as reported in compendia was

11   greater than acquisition costs available to Ven-

12   A-Care.  Correct?

13             MR. BREEN:  Objection.  Form.

14             THE WITNESS:  Well, I think that that

15   theme, if you will, expanded a bit more, or was

16   more along the lines that AWP as reported by the

17   drug manufacturers and reflected in the compendia

18   was certainly higher than acquisition cost for

19   Ven-A-Care.

20   BY MR. COOK:

21        Q.   And, in fact, in each of these

22   presentations, one theme was a very blunt

Cobo, Luis - Vol. II                                                                    March 4, 2008
                                    Miami, FL

Page 431

1           THE WITNESS:  Do you want me to go

2     through each of these?  I don't know that that is

3     represented in here, but, I mean --

4     BY MR. COOK:

5           Q.   If it's represented in there, I'd like

6     for you to lead me to where it is.  And I can

7     tell you that I reviewed it and I didn't find it.

8           A.   I will defer to you.  I don't think

9     that was represented.

10          Q.   In fact, the only time Medicaid is

11    mentioned in your letters to Congressman Stark or

12    the Principal Deputy Inspector General is to

13    indicate that Ven-A-Care delivers services to the

14    Medicaid, indigent and underinsured population at

15    a loss.  Correct?

16          MR. BREEN:  Objection, form.

17          THE WITNESS:  That was stated in there,

18    and as I explained that representation of that

19    collective grouping, that's very real and

20    accurate scenario.

21               (Deposition Exhibit Abbott 545 was

22    marked for identification.)

1    BY MR. COOK:

2         Q.   Let me hand what you I've marked

3    Exhibit 545.

4         A.   Are we done with these?

5         Q.   Yes, sir.

6              Exhibit 545 is a document with a cover

7    sheet that -- prepared by Ven-A-Care, but

8    attaching a handwritten sheet entitled Ven-A-Care

9    Meeting, dated 9-14-95, and attached to which is

10   what appears to be a Power Point presentation, or

11   at least a series of copies of documents and

12   slides.

13             Mr. Cobo, does this appear to be a

14   sign-in sheet for a meeting between Ven-A-Care

15   and representatives of the healthcare financing

16   administration on September 15th, 1995?

17             MR. BREEN:  Before you get to that,

18   Chris, just to make sure the record is clear, the

19   first page of this, Presentation Privilege Log

20   Volume 5, No. 1, I think that you indicated that

21   Ven-A-Care prepared that.

22             It's my understanding, and Ms. Simon is

Cobo, Luis - Vol. II                                                    March 4, 2008
Miami, FL

Page 433

1    here who handled this, that this document was

2    originally on a privilege log, and it was either

3    by order or by agreement produced off the

4    privilege log.  So this first page would be the

5    privilege log cover sheet of this document, not

6    actually part of the document.

7              MR. COOK:  Okay.  Yeah.  This is a

8    document that was produced to us by Ven-A-Care

9    with the Ven-A-Care Bate's stamp, but what you're

10   telling me is that this is added to the document

11   as part of the litigation and is not part of the

12   original document.

13             MR. BREEN:  That's my understanding.

14             Alison, is that correct?

15             MS. SIMON:  I'm sorry.  I didn't hear

16   what you just said, but, yeah, this is -- the

17   cover sheet that says Presentation Privilege Log

18   Volume 5, that's because this document was

19   originally on a privilege log, but then later

20   produced.

21             MR. COOK:  Okay.

22   BY MR. COOK:

Page 434

```
 1        Q.   And so, Mr. Cobo, if you could direct

 2   your attention solely to the documents bearing

 3   Ven-A-Care MDL 86163 through 86175.  And I would

 4   note that you appear as No. 8 on the sign-in

 5   sheet on the first page I've directed your

 6   attention to.

 7        A.   Correct.

 8        Q.   Do you recognize what this document is?

 9        A.    I believe that it may be the

10   presentation that was given to this collective

11   group of individuals.

12        Q.   This was a presentation given by Ven-A-

13   Care to individuals with the federal government.

14   Correct?

15        A.   Ven-A-Care and its counsel, yes.

16        Q.   And Mr. Bentley, Zack Bentley, is No. 7

17   on the list.  Right?

18        A.   Yes.

19        Q.   And then Mr. Breen here is No. 9 on the

20   list.  Right?

21        A.   Correct.

22        Q.   And after that is his partner, Atlee
```

Cobo, Luis - Vol. II

March 4, 2008

Miami, FL

Page 435

```
 1    Wampler?

 2        A.   Yes.

 3        Q.   And then Mr. Jones is No. 11 on the

 4    list.  Right?

 5        A.   Yes.

 6        Q.   First six individuals are from various

 7    parts of HCFA -- that's all caps H-C-F-A --

 8    correct?

 9             MR. BREEN:  Objection.  Form.

10             THE WITNESS:  That's the representation

11    there, yes.

12    BY MR. COOK:

13        Q.   Sure.  The first is Sheree, S-H-E-R-E-

14    E, Kanner, K-A-N-N-E-R, with the Offices of

15    General Counsel from HCFA.  Correct?

16        A.   Yes.

17        Q.   And next is Bernadette Schumaker and

18    Dorothy Colbert of the Bureau of Policy

19    Development at HCFA.  Correct?

20        A.   If that's what BD -- BPD stands for,

21    then that's correct.

22        Q.   And then Jim Conrad also from BPD.
```

Page 436

1    Correct?

2         A.    Correct.

3         Q.    After that is Linda Hillier from the

4    Department of Health and Human Services Office of

5    Inspector General.   Correct?

6         A.    Correct.

7         Q.    After that is Aron Primack, who appears

8    to be a physician, from HCFA's OBI, whatever

9    office OBI is.   Correct?

10        A.    Yes.

11        Q.    Do you know what OBI is?

12        A.    I do not.

13        Q.    Then if we go down to No. 13, we have

14   Larry Reed, HCFA, slash, MB, and then in

15   parenthesis Medicaid.   Do you see that?

16        A.    I do.

17        Q.    Do you understand that Mr. Reed is

18   responsible for the Medicaid side of HCFA there

19   in 1995?

20        A.    Okay.

21        Q.    You don't know that independently?

22        A.    I don't know that.   I assume so, but I

Cobo, Luis - Vol. II                                                                                      March 4, 2008
                                   Miami, FL

Page 437

1     don't know that specifically.

2          Q.   So you don't know if MB stands for

3     Medicaid Bureau at HCFA.  Right?

4          A.   I do not know that.

5          Q.   And then going down the list are

6     various other people from HCFA.  There's Mary

7     Salkus, S-A-L-K-U-S, from the Office of General

8     Counsel, Leila Carp from the Office of General

9     Counsel, Sue Gaston from the Medicaid Bureau,

10    Larry Bonander, B-O-N-A-N-D-E-R, from the Bureau

11    of Policy Development, and then finally Sally

12    Strauss from the Department of Justice.  Do I

13    have all that correct?

14         A.   Yes, sir.

15              MS. ST. PETER-GRIFFITH:  Chris, I think

16    that's Mary Salhaus, S-A-L-H-A-U-S.

17              MR. COOK:  My mistake.

18              MS. ST. PETER-GRIFFITH:  I just wanted

19    to clarify that for the record.

20    BY MR. COOK:

21         Q.   Now, Mr. Cobo, other than reading their

22    names and seeing their affiliations on this