**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br>Subcategory Docket: 06-CV-11337-PBS |
| THIS DOCUMENT RELATES TO | ) ) | Judge Patti B. Saris |
| *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, et al., No. 06-CV-11337-PBS; *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc.*, et al., No. 05-11084-PBS; *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp.*, et al., No. 07-10248-PBS[1] | ) ) ) ) ) ) ) ) | Magistrate Judge Marianne B. Bowler |

**DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION TO COMPEL RELIEF ON OUTSTANDING
DELIBERATIVE PROCESS PRIVILEGE ISSUES**

**INTRODUCTION**

On his first full day in office, President Barack Obama issued two important Presidential Memoranda, *Transparency and Open Government* and *Freedom of Information Act* (attached as Exs. A & B). These policy statements underscore what is wrong with the Government's overly aggressive assertion of the deliberative process privilege in these cases. President Obama's memoranda state that the "Government should not keep information confidential merely because public officials might be embarrassed by disclosure," and direct that "[a]ll agencies adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government." (Ex. B.) Because the deliberative process privilege is usually raised as an "exemption" to the disclosure requirements

---

[1] The caption used in Defendants' motion (Dkt. No. 5810) and opening brief (Dkt. No. 5813) inadvertently indicated the incorrect case number for the Abbott case. The correct case number is 06-CV-11337-PBS.

of FOIA, *see Providential Journal Co. v. U.S. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992), the President's memoranda plainly seek to curtail overbroad assertions of that privilege.

Fundamental principles of open and transparent Government are no less important here. If anything, fairness to a defendant sued by the Government compels even greater openness. *See U.S. v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998) ("[C]ourts have severely restricted the use of the [deliberative process] privilege by government agencies that are seeking affirmative judicial relief."). But for nearly three years the Government has used the deliberative process privilege as both sword and shield to impede the discovery of important evidence. If the briefing on this subject has proved anything, it is that the Government's tactics have little to do with protecting a legitimate Government interest, and everything to with gaining a strategic advantage in litigation.

Defendants have set forth, in detail, the specific issues relating to the Government's aggressive assertion of the deliberative process privilege that require judicial review. (*See* Dkt. No. 5813.) These remaining issues have been hotly contested. As evidenced by Defendants' considerable efforts to gain relief, these issues are of critical importance to these matters. Instead of responding on the merits, the Government's opposition (Dkt. No. 5847) mischaracterizes the Court's prior rulings to suggest that these remaining issues have largely been resolved. The Government is wrong. With one exception, there is no basis to suggest that the Court has considered or ruled on the issues raised in this motion. The one exception is the well-founded request that the Court revisit the Government's blanket refusal to produce or log documents from the CMS Office of Legislation and the Rulemaking Support Files. Subsequent discovery has proven that these files are vitally important sources of key documents *that have not otherwise been produced to Defendants*. Within these un-described and un-reviewed files, the Government has likely withheld scores of important and non-privileged material.

# ARGUMENT

## I. NUMEROUS DOCUMENT-RELATED ISSUES REQUIRE JUDICIAL RESOLUTION, INCLUDING AN IMPARTIAL AND DETAILED *IN CAMERA* REVIEW OF MORE THAN A HUNDRED INDIVIDUAL DOCUMENTS.

### A. 75 Documents Submitted on December 8, 2008

Even under the Government's misguided analysis of the Court's prior rulings, there remains a substantial number of documents that require an impartial and detailed *in camera* review by Magistrate Bowler or a special master. This includes 75 of the 184 documents that Judge Saris explicitly ordered the Government to produce or submit for *in camera* review. (*See* Nov. 13, 2008 Hrg. at 30; Dkt. No. 5813 at 3, fn. 1 & 2.) Although Judge Saris specifically ruled that any of the 184 documents not produced to Defendants would be subject to *in camera* review, the Government now suggests that the privilege status of many of these documents has already been decided. (*See* Dkt. No. 5847 at 4-5 (vaguely referring to "Judge Saris's prior orders" denying Abbott's request for "entrance and exit conference notes").)

Among the most important material still being withheld (as far as Defendants know) is documentation of entrance and exit conferences between OIG and CMS. Neither Magistrate Bowler nor Judge Saris has *ever* denied a request for production of these documents. The Government cannot point to any actual ruling relating to this class of material. Although these documents are undoubtedly significant—and should have been produced in response to earlier rulings from Judge Saris (*see* Dkt. No. 5676 at 13-19)—until recently the documents were *never even submitted* for *in camera* review. Far from denying a motion to compel, Judge Saris ordered explicitly that the Government produce these documents or submit them for *in camera* review. (Nov. 13, 2008 Hrg. at 30-32.) That *in camera* review was referred to Magistrate Bowler by an Electronic Order dated December 18, 2008.

In an apparent attempt to avoid having anyone review these conference notes, the Government suggests that the "Court consider making a single determination regarding this class of material." (Dkt. No. 5847 at 2.) The Government's suggested approach, however, is consistent neither with the law nor Judge Saris's ruling that the review must be done "page by page and paragraph by paragraph" to assure that the privilege has not been asserted too broadly (*e.g.*, over segregable factual information) and that the balancing test be conducted fairly. (Nov. 13, 2008 Hrg. at 15-18, 28.) A detailed review is even more important when one considers the Government's past practice of withholding important factual information under a claim of privilege. (*See id.* at 16 (noting *in camera* review revealed privilege was asserted too broadly, including over "factual recitations" that "wasn't even protected").) As noted by Judge Saris, a special master would facilitate that *in camera* review. (Nov. 13, 2008 Hrg. at 16.)[2]

Nor does the Government provide sufficient reasons or information to avoid the need for an *in camera* review of the other 37 documents it submitted on December 8, 2008. The Government provides no detail of how many of these 37 documents are (allegedly) "irrelevant," protected by other privileges, created after 2003, or in the category of draft OIG reports. There is no automatic relevance cut-off for documents created after 2003 (the Court's general relevance filter); rather, Judge Saris has previously noted that post-2003 documents that are backward-looking *can* be relevant. (*See* Nov. 13, 2008 Hrg. at 18.) And, and as discussed below, Judge Saris has *never* ruled that the Government does not have to produce *any* draft OIG report.

Finally, and perhaps most critical, the Government fails to explain the missing minutes of entrance and exit conferences for certain key OIG reports. (*See* Dkt. No. 5813 at 8.) As discussed in Defendants' opening brief, recent testimony from OIG indicates that there were

---

[2] Alternatively, it would be perfectly appropriate for the Court to order immediate production of each of the documents submitted for *in camera* review, as suggested in Defendants' opening brief. (*See* Dkt. No. 5813 at 5-7.)

4

conferences for at least some of these reports. (*See id.*) Defendants ask that the Court order the Government to re-review its files to locate and then submit for *in camera* review the minutes of these conferences, or explain why it cannot do so.

### B. 42 Documents Submitted on December 4, 2007 and June 3, 2008

The Government incorrectly asserts that only one of the 42 documents submitted *in camera* to Magistrate Bowler on December 4, 2007 and June 3, 2008 remains to be reviewed. (*See* Dkt. No. 5847 at 3.) Those 42 documents have been submitted *in camera* because they "relate to [the Government's] knowledge of a 'spread' for Abbott's drugs at issue in this litigation or its knowledge of Abbott's 'marketing the spread' for any of its drugs." (*See* Order Re: Objections to August 13, 2007 Order by Magistrate Judge Bowler at 1 (Nov. 9, 2007) (Ex. C).) According to the Government, 40 of the 42 documents are draft OIG reports.

Contrary to the Government's suggestion, Judge Saris has *not* ruled that all draft versions of OIG reports are irrelevant or immune from *in camera* review. Rather, Judge Saris merely stated during argument that there is no need for *in camera* review of *all* such drafts. (*See* July 24, 2008 Hrg. at 25:8-13 ("I'm not going to require *every* draft of *every* OIG report") (emphasis added), 26:9-11 ("I'm not going to require some judge to look at *every* draft of *every* OIG report. I think that it's just a waste of time.") (emphasis added.) Judge Saris made this ruling because a considerable number of the 2000 plus documents on the Government's privilege logs are draft OIG reports.[3]

The 40 documents collected and submitted for *in camera* review are not simply draft OIG reports. The Government has identified them as relating to its knowledge of spreads of the drugs

---

[3] Defendants have always agreed that there is no need for an *in camera* review of *all* of the draft OIG reports. Indeed, in the interest of being reasonable, Defendants have sought *in camera* review of only a small fraction of the documents withheld by the Government. (*See* Dkt. No. 5676 at 2-3.)

5

at issue, or its knowledge of Abbott marketing the spread for any of its drugs. Consistent with the Court's prior orders, these documents should be subject to *in camera* review immediately.

### C. CMS Decision Memorandum

Despite having waived any privilege, the Government continues to withhold an unredacted copy of a critical CMS "decision memorandum." This document enumerates factors used by the Government in reviewing payment rates for drugs in state Medicaid programs. It demonstrates that CMS explicitly decided to approve state plans that it knew paid far more than acquisition cost for generic drugs. (*See* Ex. D, D. Duzor Dep. at 177, 192) (CMS Medicaid official: "We knew that for generic drugs that AWP minus 13 was a generous payment based upon the IG's findings.") More importantly, it explains why CMS acquiesced in the payment of those "generous" rates. This document belies to the Government's claim that it was "defrauded" into paying so-called "mega-spreads" to providers.

The Government has already produced a fully unredacted version of a draft of this document. As noted by Magistrate Bowler, the "cat is already out of the bag." (Dec. 4, 2008 Hrg. at 48.) The Government promised to revisit the redactions on the final draft to "see if there were some parts of it that might go unredacted." (*Id.* at 49.) Having ignored the issue until Defendants filed the instant motion, on January 9, 2009 the Government produced a slightly less redacted version of the final CMS decision memorandum.

The latest production remains inadequate, and there is no justification for the continued redaction of this document. The Government continues to withhold portions of the document that were *already contained* in the draft document. (*Compare* Ex. E (final, redacted version) *with* Ex. F (draft version). The privilege, if it applied at all, has been waived, and the Government presents no legitimate argument to the contrary.

Nor is it true, as the Government claims, that it has only redacted "analysis and recommendations."  (Dkt. No. 5847 at 12.)  As with most of the documents withheld by the Government, much of the redacted material contains segregable factual information.  The draft produced to Defendants suggest that the Government is withholding language showing:

- that "[i]t is proving increasingly difficult to require the states to establish payment rates in adherence to regulatory requirements";

- that the findings from state surveys "show that these State's reimbursement could have been reduced by a percentage greater than the proposed AWP discount levels"; and

- that the "lesser level of discount is generally the result of negotiations that occur between the state and pharmacy representatives after the survey results are known," or because state legislatures set the payment amounts without showing "why these rates are the best estimate or are reasonable."

 (*See* Ex. F.)

This redacted language concerns *facts*, not deliberations.  More importantly, these are factual statements that are damaging to the Government's case.  In light of the document's importance and the Government's previous waiver and failure to explain what harm would be caused by disclosure, the Court—*even if it does appoint a special master*—should order immediate production of the final, completely unredacted version of this document.

**II.    THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE OR SUBMIT *IN CAMERA* ALL RESPONSIVE DOCUMENTS FROM THE OFFICE OF LEGISLATION AND SPECIFIED RULEMAKING SUPPORT FILES.**

Defendants do not dispute that the Court previously denied a request by Abbott that the Government log responsive documents it has withheld under the deliberative process privilege from the CMS Office of Legislation and specified Rulemaking Support Files.  But the situation has changed considerably since the Court's prior rulings, and the Court can (and should) reconsider past discovery rulings when the circumstances warrant.  *See In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire*, 982 F.2d 603, 618 n. 24 (1st Cir. 1992)

("[W]here unforeseen circumstances in a particular case develop, the Court is under a duty to reconsider its prior rulings to determine what impact, if any, these new facts may have upon a prior determination.") (Lay, J., concurring) (quoting trial judge).

We now know the Government has shielded huge swaths of information not protected by the privilege—including important factual information—by simply deeming all documents from these sources to be covered in their entirety by the deliberative process privilege. The document at control number HHC902-0251-0258 (Ex. G), which is from the Office of Legislation and was ordered produced by Judge Saris after an *in camera* review, is instructive of the problem caused by the Government's approach. This document is replete with important factual information about the meetings CMS had with provider organizations to discuss the "major issues" that would result if CMS required use of market pricing information developed by the Department of Justice (the so-called "DOJ AWPs").[4] Among the *factual* information contained in the document are statements from provider groups "that they need to 'profit' off their Medicare drug payments in order to compensate or 'cross-subsidize' Medicare payments related to other aspects of provision of the service that they claim are either inadequate or not covered at all," and that using the revised pricing data could cause access problems. (*See id.*)

Similarly, a later version of this document (recently released by the Government) acknowledges that "[a] dilemma arises from the fact that delivery systems have developed around overpriced drugs," and that "[r]eductions in reimbursement, particularly of the magnitude contemplated by the DOJ, could disrupt systems of care." (Ex. H). This language reports facts. It portrays a state of affairs in the real world, and explains why the Medicare and Medicaid programs continued to acquiesce in paying claims at amounts well in excess of providers' drug

---

[4] The "DOJ AWP" effort involved many of the same products at issue in these cases.

acquisition costs (the damages sought in these cases).  In short, as the extensive factual record in these cases has proven, Medicare and Medicaid were not fooled into believing published AWPs approximated provider acquisition costs for generic drugs.  Rather, the programs allowed profit margins to continue in order to satisfy political and other legitimate policy concerns.

Notably, neither of these important documents would have been produced (or subject to *in camera* review) if not for Defendants' extensive efforts to reign in the Government's overly aggressive assertion of the deliberative process privilege.  Absent a privilege log and appropriate *in camera* review, neither the Court nor Defendants can be assured that more such important documents have not been withheld.  Allowing the Government to suppress these documents without a privilege log or review could constitute reversible error.

### III.   THE COURT SHOULD ORDER IMMEDIATE PRODUCTION OF WITHHELD DOCUMENTS INVOLVING COMMUNICATIONS OUTSIDE THE AGENCY.

The Government's response brief does not assure that it will comply with Judge Saris's clear directive that all communications outside the agency should be produced.  Instead, the Government says it "has been reviewing and producing to defendants material described on its Carrier privilege logs," and, "[w]hen the review process is complete, . . . [it] will provide Defendants with sufficient information for them to understand precisely what material has been released and what has been withheld."  (Dkt. No. 5847 at 6.)  In sum, the Government does not commit to locating and producing all communications outside the agency.  Consistent with Judge Saris's rulings, the Court should order the Government to locate and produce all such documents.

### IV.   THE COURT OR A SPECIAL MASTER SHOULD ADJUDICATE ON ABBOTT'S MOTION TO COMPEL DEPOSITION TESTIMONY.

The Government provides no substantive response to Defendants' request that the Court or special master adjudicate the merit of the Government's assertion of the deliberative process privilege to obstruct the testimony of CMS and OIG witnesses.  Instead, after ignoring a timely

request to meet-and-confer on this motion (as directed by Magistrate Bowler), the Government blames Abbott for failing to meet-and-confer.[5] It suggests the Court should merely "direct counsel to confer as ordered by the Magistrate Judge." (Dkt. No. 5847 at 13.)

Last week the Government and Abbott engaged in a lengthy meet-and-confer. The Government suggested that Abbott review the excerpts and target a smaller set of excerpts where Abbott believed the witness had more to say on the area of inquiry. Although it already focused its motion on such instances in the interest of compromise, Abbott re-reviewed the excerpts and eliminated 31 of the 54 excerpts identified in Abbott's motion. This completely eliminates questions for three witnesses. Abbott then proposed that the Government permit its witnesses to answer 23 distinct lines of inquiry. (*See* Ex. I, Jan. 27, 2009 Ltr. from D. Torborg to J. Draycott.)

Abbott's proposal is more than reasonable and will impose little burden. Two of the witness (Larry Reed and Don Thompson) will likely be deposed again in connection with outstanding 30(b)(6) topics. Three more of the witnesses, OIG's Robert Vito, David Tawes, and Linda Ragone, all work in the same OIG office in Philadelphia and their questioning can be completed in one visit to Philadelphia. Abbott has agreed to complete the follow-up questioning of the two other witnesses, Mr. Niemann and Mr. Booth, through short telephone depositions.

---

[5] The Government incorrectly suggests that Abbott counsel was "on leave from his firm *from December 19 through the end of the year.*" (Dkt. No. 5847 at 13) (emphasis in original). Abbott's counsel was not "on leave" (among other things, Abbott's counsel drafted and filed the pending motion during that time), but simply requested that the meet-and-confer be scheduled on December 17th or 18th so it could take place before Defendants filed their motion on outstanding issues. (*See* Dkt. No. 5813, Ex. 4 ("We plan to file something to respond to your recent filing on the DPP docs, and we would like our filing to address all of the known DPP issues (including as it relates to the testimony motion). The content of our filing will largely depend on what we can work out with the Government. Given the need to timely respond to your filing, we need to have the meet-and-confer this week.").) Defendants, in fact, deferred filing the motion until the following week in the hope that the Government might finally respond to the repeated, month-long effort to discuss outstanding deliberative process privilege issues. The Government did not respond to those requests.

In response to Abbott's proposal, the Government offers a proposal that promises only more motions practice, more burden on all involved, and more delay. With the possible exception of live testimony from individuals who "may" testify in response to outstanding 30(b)(6) testimony, the Government proposes to provide written answers as it deems necessary. (*See* Ex. J, Jan. 29, 2009 Ltr. from J. Draycott to D. Torborg.) The proposal might be plausible in concept, but the Government's failure to enunciate specifics renders it unworkable here. Despite a request from Abbott, the Government refused to specify *which* of the 54 excerpts it will agree to answer—either by written answers or through live testimony. Instead, the Government states that its responses will "conform to the relevancy parameters set up by Judge Saris with respect to the Government's assertion of the deliberative process privilege." (*Id.*)

Judge Saris has already rejected such an approach in AWP litigation. In the Track 1 Medicare cases, Judge Saris denied plaintiffs' request for "broad rulings" on whether a witness's testimony was privileged, instead requiring that a "question-by-question" balancing analysis be performed. (*See* Dec. 16, 2008 Hrg. at 136.) Here, the Government proposes to take extremely broad rulings on discovery and conduct the question-by-question analysis itself. The Court should once again reject this approach, as it is the responsibility of the Court—not the Government—to make these detailed balancing determinations. Moreover, should the Government's proposal go forward, there is little doubt that counsel will eventually be forced to litigate about which questions should be answered.[6]

Defendants respectfully suggest that the fairest and most efficient course is to order the Government to allow live testimony on the 23 specific lines of testimony set forth in Abbott's

---

[6] For example, regardless of how relevant the discovery is, the Government indicated during the recent meet-and-confer that it is unlikely to budge on anything to do with the OIG-CMS entrance and exit conferences. Thus, under the Government's proposal, this Court or a special master would have to separately adjudicate the many excerpts that involve those conferences anyway.

letter of January 27, 2009.  (*See* Ex. I)  The questioning is undeniably relevant, the witnesses clearly had more to say, and the Government has failed to enunciate any harm what would result from allowing the witnesses to testify freely and openly in response to counsel's questions.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court order the relief sought in Defendants' motion.

Dated:  January 29, 2009      /s/ James R. Daly
James R. Daly
Eric P. Berlin
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

/s/ Eric T. Gortner
Helen E. Witt, P.C.
Anne M. Sidrys, P.C.
Eric T. Gortner
John W. Reale (BBO # 654645)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

*Counsel for Defendants Boehringer Ingelheim Corp., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc., and Roxane Laboratories, Inc.*

/s/ Neil Merkl
Paul F. Doyle (BBO # 133460)
Sarah L. Reid
Neil Merkl
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Counsel for Defendants Dey, Inc., Dey L.P, Inc. and Dey, L.P.*

## **CERTIFICATE OF SERVICE**

      I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 29th day of January 2009.

                                                    /s/ David S. Torborg