UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| ) | |
| **THIS DOCUMENT RELATES TO:** ) | Hon. Patti B. Saris |
| ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corp., et al.,* Civil Action No. 07-10248-PBS ) ) ) ) | |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL TESTIMONY

Defendants Roxane Laboratories, Inc., n/k/a Boehringer Ingelheim Roxane, Inc., Roxane Laboratories, Inc., Boehringer Ingelheim Corporation ("BIC") and Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") (collectively "Roxane"), improperly refused to provide certain discovery in three areas that are at issue here. First, Roxane improperly and arbitrarily refused to provide a 30(b)(6) witness from any defendant corporate entity except Roxane Laboratories, Inc. ("RLI"). Second, counsel inappropriately instructed RLI's 30(b)(6) witness not to answer questions concerning its NovaPlus products, claiming such questions were beyond the scope of the 30(b)(6) notice. Finally, Roxane took five weeks to respond to plaintiffs' request for available dates to depose a former Roxane employee, and then offered a single date – the second to last day of the discovery period. Just prior to that deposition, Roxane informed plaintiffs the witness was seriously ill, and asked to cancel the deposition. Roxane's timing left plaintiffs no time to notice an alternate deposition. Plaintiffs agreed to cancel, but requested that they be provided another deposition in its place. Roxane has refused.

**BACKGROUND FACTS**

1.   <u>Roxane's Refusal to Provide 30(b)(6) Testimony by BIC and BIPI</u>

Plaintiffs provided to Roxane a list of topics for a Rule 30(b)(6) deposition on October 31, 2008. Exhibit (Ex.) A. Following at least two telephone conferences to address concerns raised by Roxane, Roxane sent written objections to the topics. Ex. B. Among other things, Roxane objected to producing testimony from BIPI and BIC on topics Nos. 1-11 and 18-21 on grounds that those requests "are not relevant to the corporate alter ego issues or interrelationships between the companies and therefore [ ] not relevant to the DOJ's claims against Roxane." Ex. B at 2.

Similarly, Roxane refused to provide testimony by a BIC or BIPI witness on topic No. 20, related to lobbying efforts. Roxane maintained that because in an Order dated October 29, 2008, Magistrate Bowler had limited plaintiffs' request for lobbying documents to "defendant Roxane," "any testimony on this issue must similarly be narrowed." Ex. B at 5.[1] Roxane also claimed that Roxane did not lobby to continue using AWP or WAC as a benchmark for Medicare and/or Medicaid reimbursement. Plaintiffs believe that is because lobbying and government relations functions generally were performed by BIPI as one of several "shared services" for

---

[1]On November 10, 2008, Plaintiffs filed a Motion for Clarification of the Magistrate Judge's October 29 Order limiting production to "defendant Roxane." Plaintiffs pointed out that no evidence as to the four corporate entities had yet been presented to the Court, that various departments and functions for RLI and BIPI were joined and operated for both companies, and that sworn testimony indicated that BIPI employees contacted government officials on reimbursement issues related to both Roxane and BIPI products, so that lobbying documents for RLI products would likely be in the custody of BIPI or both RLI and BIPI. <u>See</u> Master Docket #5672, Roxane Docket # 63-2. As of this date, the Motion for Clarification has not been ruled on. In any event, the October 29 Order did not address testimony, and appropriate topics for deposition were neither raised nor briefed in the Motion before the Magistrate Judge.

which RLI did not have its own department or personnel.  <u>See</u>, <u>e.g.</u> Ex. C (e-mail from BIPI's head of Sales Contracting Administration noting Congressional proposal re: AWP would have a "much larger impact" on RLI multisource products, in response to e-mail from the BIPI Director of "Government Policy," referring to the "BI position" for briefings on Capitol Hill).

The first day of plaintiffs' 30(b)(6) deposition of Roxane took place on December 12, 2008.  Because Roxane asserted that the remaining topics involved complicated issues "that will require significant time and effort to research and prepare a corporate representative," Ex. B at p. 5, the parties agreed to hold the second day after the December 15, 2008, discovery cut-off.  The second day is currently scheduled for February 26, 2009.

2.      <u>Roxane's Improper Instructions to a Witness Not to Answer Questions</u>

At the 30(b)(6) deposition on December 12, counsel for the United States asked the witness questions concerning NovaPlus, a Roxane product identical to the other Ipratropium Bromide products at issue from the outset of this action, but which was launched in 1999 under a different label and with different NDCs.  The NovaPlus products were added to the Complaint upon the United States' Motion for Leave to Amend (Roxane Docket #83), which was granted on November 25, 2008.   When counsel asked questions about NovaPlus at the deposition, Roxane's counsel objected, noting that "to the extent that the questioning goes beyond what we feel is the appropriate scope of the topics, we will instruct the witness not to answer, end the deposition if that be necessary." December 12, 2008, 30(b)(6) Deposition of Judy Waterer at 106:10-14 (Ex. D).  Thereafter, although counsel for the United States provided citations to some of the "clear majority" of cases holding that a 30(b)(6) deposition notice does not limit the scope of questioning at the deposition, <u>id.</u> at 107:7 - 108:14, when counsel asked several more

questions about NovaPlus, the witness was instructed not to answer (and did not answer). Id. at 113:10-21; 114:17 - 116:2.

3.     Roxane's Refusal to Provide an Alternate Sales/Marketing Witness After Informing Plaintiffs at the Last Minute That a Witness Was Too Ill to be Deposed.

Under the Case Management Order ("CMO"), the parties were allowed eighteen depositions each (in addition to 30(b)(6) depositions of state Medicaid witnesses). On October 8, 2008, counsel for the United States asked Roxane's counsel for available dates to depose a number of Roxane employees or former employees, including the witness at issue here (Witness A),[2] who was involved in sales/marketing of Roxane products. Three weeks went by and the United States heard nothing back from Roxane as to dates for any of the witnesses, and so sent a follow-up e-mail asking where things stood. It was not until November 12 -- *five weeks* after the initial request -- that plaintiffs were offered a date for the deposition of Witness A. Roxane named a single possible date: December 12, the second to last business day of the discovery period, and a date that was more than *nine weeks out* from the initial request to take the deposition.

On December 9, three days before the deposition of Witness A, counsel for Roxane informed counsel for plaintiffs for the first time that the witness had a very serious medical condition. Roxane first asked whether the deposition could start late, but then said there was a concern about Witness A's "ability to testify." Roxane asked the United States to drop the deposition, indicating it would be cruel to subject the witness to a deposition. Plaintiffs agreed to cancel the deposition, but indicated at the same time that they believed it reasonable to have

---

[2]To protect the witness's privacy, the parties have agreed not to use the witness's name.

the opportunity to depose another sales/marketing witness in place of Witness A.  Since virtually all of plaintiffs' team was on the road taking or defending depositions in the final week of the discovery period, the parties agreed to discuss plaintiffs' proposal after the close of discovery. Roxane indicated its disagreement with plaintiffs' proposal and its hope that plaintiffs might be satisfied with the testimony obtained from depositions of two other sales/marketing employees.

Plaintiffs sent Roxane a letter on December 23, identifying an alternate witness, Alex Dusek, and laying out the reasons they believed it would be fair for Roxane to make another witness available, principally that Roxane had delayed so long in scheduling Witness A's deposition that by the time the facts of Witness A's illness became known, it was too late to schedule another witness in place of Witness A.  Ex. E.  Plaintiffs noted that had Roxane attended to the scheduling more promptly so that the parties learned about Witness A's illness earlier (instead of just three days before the deposition at the very end of the discovery period), plaintiffs would have had the opportunity to schedule an alternate sales/marketing witness.  Id. Roxane refused.  Invoking requirements that are neither in the CMO nor the Federal Rules of Civil Procedure, Roxane argued that the United States "has not identified any specific topics that it was precluded from exploring" with two other witnesses, nor given "any indication that the cancellation of Witness A's deposition has materially impacted the Government's discovery efforts."  Ex. F.  Despite having told plaintiffs it would be cruel to depose Witness A, Roxane offered to schedule a limited telephonic deposition of Witness A, but refused to provide the alternate witness plaintiffs asked for.

## ARGUMENT

**A.     There Is No Basis for Refusing to Produce a 30(b)(6) Witness to Testify on Behalf of BIC and BIPI**

**1.  BIC and BIPI Are Independently Liable.**

Roxane refused to provide 30(b)(6) testimony from BIC and BIPI on topics 1-11 and 18-21, on grounds the topics are "not relevant to the corporate alter ego issues or interrelationships between the companies." Ex. B at 2.  On the contrary, testimony relating to these topics is relevant to, among other things, defendants' scienter and their assertion that the United States government knew and approved of defendants' practice of causing the publication of inflated prices.[3]  Roxane's stated reason for refusing to designate a 30(b)(6) witness on behalf of BIC and BIPI to testify on these topics ignores the evidence that BIC and BIPI are independently liable under the False Claims Act for their role in setting inflated AWPs for Roxane drugs.

All of the drugs at issue in this case (the "Subject Drugs"), were manufactured by RLI and sold under a RLI labeler code.  Nevertheless, RLI's sister company, BIPI, and its parent company, BIC, participated in (and approved of) decisions to set inflated AWPs for the Subject Drugs.  Accordingly, BIC and BIPI are *directly* liable under the FCA.[4]  "The FCA applies to anyone who knowingly assists in causing the government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the government." See

---

[3] See, e.g., BIC and BIPI's Answers to First Amended Complaint, Fifteenth and Seventeenth Defenses.

[4] This is quite apart from the fact that, even without evidence of direct liability, BIC and BIPI should be liable for any judgment because the defendants' operations were so intertwined that each company was an alter ego of the others, and the corporate form therefore should be disregarded.

United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 378 (5th Cir. 2004) (internal quotation omitted); Peterson v. Weinberger, 508 F.2d 45, 52-53 (5th Cir. 1975); United States ex rel. Marcy v. Rowan Companies, Inc., 2006 WL 2414349, *8 (E.D. La. 2006). Thus, "a person need not be the one who actually submitted the claim forms in order to be liable." See United States v. Bornstein, 423 U.S. 303, 309 (1976); United States v. Mackby, 261 F.3d 821, 827 (9th Cir. 2001); United States v. President and Fellows of Harvard College, 323 F. Supp. 2d 151, 186 (D. Mass. 2004).

Under the "knowing assistance" standard, defendants are liable upon proof that they "assisted" or "cooperated" in causing false claims to be submitted. See Riley, 355 F.3d at 378. "The FCA covers indirect mulcting of the government" and "a defendant may be liable if it operates under a policy that causes others to present false claims." See United States ex rel. Tyson v. Amerigroup Ill., Inc., 488 F. Supp. 2d 719, 735-36 (N.D. Ill. 2007) (internal quotation omitted); President and Fellows of Harvard College, 323 F. Supp. at 187 (individual defendant liable under FCA because he had participated in the process of submitting claims by approving fraudulent claims); United States ex rel. Hockett v. Columbia/HCA Healthcare Corp., 498 F. Supp. 2d 25, 62-63 (D.D.C. 2007) (parent corporation liable under FCA if "it was directly involved in submitting false claims or causing them to be submitted to the government"). There is ample evidence that BIC and BIPI are liable under this standard.

BIC and BIPI exercised formal and pervasive control over the marketing and pricing of RLI's branded generic products, including the Subject Drugs Roxicodone, Oramorph SR, and Roxanol. RLI and BIPI shared a common "Pricing Procedure and Policy" which required that senior BIC and BIPI leadership approve AWPs for both companies' products. See, e.g., Berkle

Deposition, October 31, 2008, Exhibit 31 and pp. 215-16, 220-21 (Exs. G and H).  Pursuant to the Pricing Procedure and Policy, recommended prices for Roxane's branded generic products required approval first by a pricing committee, comprised jointly of Roxane and BIPI personnel, and then by the executive Vice President of Marketing for BIPI and a Vice President for BIC, and the President and CEO for BIC.  Id. at 344.  The two executives in fact formally approved the pricing and launch plan for Roxane's 15 and 30 mg Roxicodone tablets – with AWPs that were twice as high as the products' WACs, and were described by the pricing committee as "compatible with the reimbursement model that drives retailer profit."  Id. at 254-55.

      BIC and BIPI also were involved in approving prices for rest of Roxane's product line, including decisions on pricing issues that were regarded as "sensitive" or likely to raise "legal" issues such as decisions to raise AWPs.  See Russillo Deposition, January 8, 2009, p. 98 ("Q: Did you ever ask anyone at Boehringer Ingelheim to sign off on an AWP change that you were involved with?  A: There would have been -- it would have been at my discretion.  I would have asked Werner Gerstenberg, if I thought there was a sensitive AWP issue"), 173-74 (Ex. I).

      BIC and BIPI knowingly approved of Roxane raising the AWPs on several multi-source products, including Roxane's decision to raise the AWPs on its Furosemide line by as much as 300% in August 2000.  Tom Russillo was in charge of Roxane's multi-source products during that time frame, and he reported to Mr. Werner Gesternberg, "as president and CEO of BIC." See Russillo Deposition, January 8, 2009, at 206-07, Ex. I.  Mr. Russillo testified that as of at least 1999, he and members of BIC and BIPI's senior management knew that the government was scrutinizing inflated AWPs and that defendants therefore regarded any decision to raise AWPs as "sensitive" and requiring BIC's approval.  Id., at 99, 166, 180.  Based on several

conversations with Mr. Gerstenberg, Mr. Russillo understood BIC's position was that Roxane could raise AWPs to match competitors' pricing. Id., 192-94. Mr. Russillo testified that he would not have implemented the AWP increase for Furosemide without Mr. Gerstenberg's approval and the input of BIPI's legal department. Id., 172, 192-94.

As BIC and BIPI knowingly participated in decisions to set inflated AWPs for RLI's products, testimony regarding their corporate knowledge of the United States' purported knowledge and approval of the conduct at issue is directly relevant to this case. The Court should order BIC and BIPI to produce corporate witnesses on plaintiffs' 30(b)(6) topics.

### 2. Roxane Improperly Refused to Provide Testimony on Lobbying.

There are four defendants in this lawsuit: RLI, Roxane Laboratories, Inc. n/k/a Boehringer Ingelheim Roxane, Inc.,[5] BIC, and BIPI. All four are U.S. corporations. The parties have referred informally to the four defendants collectively as "Roxane" throughout this litigation, but no evidence about the inter-relatedness of the corporations nor any explanation of their corporate structure or the functions carried out within the various corporations has yet been presented to the Court, let alone in the context of discovery motions referred to the Magistrate Judge. Nonetheless, in ruling on plaintiffs' December 12, 2008, Motion to Compel Defendants to Search for and Produce Documents in Response to Plaintiffs' First Request for the Production of Documents (Docket No. 71), the Magistrate Judge ruled, *inter alia*, that defendants had to produce lobbying documents but that the Order was "limited to defendant Roxane."[6]

---

[5] Prior to 2005, Roxane was a single corporation; defendants Roxane Laboratories, Inc. and Boehringer Ingelheim Roxane, Inc. are the successor companies to the former Roxane.

[6] In light of the parties' reference to the four defendants collectively as "Roxane," the ruling was not clear; nor was any basis for a limitation based on individual defendant corporations explained. Plaintiffs therefore sought clarification of the Order (Master Docket No.

9

Although <u>testimony</u> was not at issue in plaintiffs' Motion to Compel, defendants nonetheless seized on the Magistrate Judge's ruling about document production, and claimed that any testimony on the issue of lobbying "must similarly be narrowed." Plaintiffs had argued in their motion to compel that evidence of Roxane's understanding of government reimbursement procedures and Roxane's participation in individual or industry efforts to dissuade the government from either changing an AWP-based reimbursement methodology or lowering AWP-based reimbursement is relevant, at minimum, to refuting Roxane's claims that the government approved of or acquiesced in the submission of fraudulent AWPs, and that in the <u>Abbott</u> case the Court had already ordered third parties to produce all documents related to lobbying the legislative or executive branch "relating to AWP/government reimbursement issues." <u>See</u> September 7, 2007 Order, ¶ 3 (Master Dkt No. 4701). Testimony on the topic likewise is relevant.

Roxane did not raise relevance as a ground to refuse to provide testimony by its RLI 30(b)(6) witness, however. Instead, Roxane asserted that, "Roxane [meaning RLI], did not lobby 'to advocate that the Medicare and/or Medicaid programs continue to use either AWP or WAC as a benchmark for reimbursement purposes.'" Ex. B at 5. Roxane's assertion lends

---

5672). Plaintiffs pointed out that BIC was the parent company of both BIPI and RLI and that beginning in 1994, various RLI and BIPI departments – including "Government Affairs" and "Reimbursement" – were joined under unified leadership having responsibilities on behalf of both companies. Plaintiffs pointed out that sworn testimony from a BIPI employee who was the head of the "Reimbursement" department, established that he contacted government officials about reimbursement issues with regard to <u>both</u> RLI and BIPI products, and that the "Government Affairs" department was responsible for policy and lobbying on behalf of the whole Boehringer Ingelheim family of companies. Accordingly, defendants explained, responsive lobbying documents relating to AWP and reimbursement issues for RLI products would likely be within the custody and control of BIPI, or of both BIPI and RLI. <u>Id.</u>

10

support to plaintiffs' contention that there wasn't an RLI employee responsible for lobbying because that function was largely handled by BIPI.  Internal e-mails indicate that BIPI handled such matters for both RLI and BIPI.  Ex. C.  The Court should order Roxane to produce a corporate representative from BIC and BIPI to testify about lobbying.

**B.     Roxane Improperly Instructed a Witness Not to Answer Deposition Questions**

At the December 12, 2008, deposition of RLI 30(b)(6) designee, counsel improperly instructed the witness not to answer several questions about NovaPlus, a RLI Ipratropium Bromide product marketed under a different NDC and the NovaPlus label, but otherwise identical to the other Ipratropium Bromide products at issue in this action.  Such instruction was improper, and RLI should be ordered to produce its witness in Boston to allow plaintiffs to complete this questioning.

The majority of courts have held that questioning at a 30(b)(6) deposition is not limited to the subject matters designated in the Notice of Deposition, concluding, for example, that "[s]ince there is no specific limitation of what can be asked at deposition, the general deposition standards govern" and "Rule [30(b)(6)] simply defines a corporation's obligations regarding whom they are obligated to produce for such a deposition and what that witness is obligated to be able to answer." King v. Pratt & Whitney, a Div. of United Technologies Corp., 161 F.R.D. 475, 476 (S.D. Fla. 1995).  One court reasoned that the scope of discovery is set forth in Fed. R. Civ. P. 26(b)(1), and that Fed. R. Civ. P. 30(b)(6) does not "carve] out a special limitation"on the scope of discovery.  Cabot Corp. v. Yumulla Enter., Inc., 194 F.R.D. 499, 500 (M.D. Pa. 2000); see also United States E.E.O.C. v. Caesars Entm't., Inc., 237 F.R.D. 428, 432 (D. Nev. 2006); Detoy v. City and County of San Francisco, 196 F.R.D. 362, 365 (N.D. Cal. 2000); Overseas

Private Inv. Corp. v. Mandelbaum, 185 F.R.D. 67, 68 (D.D.C. 1999); J.C. v. Society of Jesus, Oregon Province, 2006 WL 3158814 *6 (W.D. Wash.) (Noting that "[t]he purpose of designating topics of inquiry to an entity under Rule 30(b)(6) is to allow the entity to locate and prepare a witness with the most knowledge regarding these topics," but sanctioning counsel who "obstructed" a deposition by instructing the deponent not to answer questions she believed were outside the scope of the 30(b)(6) deposition notice because "[e]xcept when protecting a privilege, or in extraordinary circumstances. . . counsel cannot prevent witnesses from answering questions").

The only decision in the District of Massachusetts or First Circuit addressing the issue appears to be Paparelli v. Prudential Ins. Co. of America, 108 F.R.D. 727, 729-30 (D. Mass. 1985) (Collings, MJ). Paparelli held that "if a party opts to employ the procedures of Rule 30(b)(6), to depose the representative of a corporation, the party must confine the examination to matters stated 'with reasonable particularity' which are contained in the Notice of Deposition." The case was decided a decade before King, however, and since then repeatedly has been cited as the minority position. For example, a very recent District of New Hampshire decision notes the holding of Paparelli, but recognizes that "[m]ost courts have rejected that view." Philbrick v. eNom, Inc., 2009 WL 152127 *6 n. 16 (D.N.H. Jan. 22, 2009); see also Cabot Corp., 194 F.R.D. at 500 (concluding it is "untenable" to suggest that language of 30(b)(6) "is a limitation on the scope set forth in Rule 26(b)(1)"); Detoy, 196 F.R.D. at 366 (Paparelli "appears to ignore the liberal discovery requirements of Rule 26(b)(1). . . .").

Here, counsel's stated basis for instructing the witness not to answer questions about NovaPlus was that the questions were outside the scope of the topics in the notice. Ex. D.

Counsel also made clear, from the beginning of the deposition, and despite plaintiffs' counsel's statement that "the clear majority of courts" hold that the deposition notice does not restrict the scope of questioning, that she would object to questions beyond the scope of the notice, id., at 35-37, 50-53:4, and as to NovaPlus would make the same objection and instruction "every time that the subject comes up." Id. at 113:10 - 114:4.  The instruction was improper, and the Court should order that the deposition be reconvened, in Boston, to allow plaintiffs to complete their questioning on NovaPlus.

C.  **Given Roxane's Dilatory Deposition Scheduling, Roxane Should Be Ordered to Produce The Alternate Witness Requested by Plaintiffs in Place of the Witness Whose Illness Required Cancellation of a Deposition at the Eleventh Hour.**

The governing CMO allowed each party to take eighteen depositions.  Plaintiffs selected a number of employee and former employee witnesses they wanted to depose, including three employees involved in sales/marketing.  In several instances, including the one at issue here, Roxane delayed for weeks before providing possible dates for depositions of the witnesses identified by plaintiffs, and in some instance waited additional weeks to "confirm" the dates.  In the case of Witness A, Roxane's inattention to prompt scheduling meant that plaintiffs only learned of Witness A's very serious illness at the end of the discovery period, when there was no time left to schedule an alternate witness.

Roxane has refused to provide the alternate sale/marketing witness as requested, arguing that "the government is not entitled to a pre-determined number" of witnesses in a given position or job category, hasn't shown its discovery efforts are "materially impacted" by the cancellation of Witness A's deposition, and should assess "whether additional deposition testimony is truly needed." Ex. F.  That argument is nonsense.  Nothing in the governing CMO requires either

13

party to provide advance justification for why it wants to depose an identified witness, or to demonstrate that certain discovery is "truly needed," and Rule 26(b) countenances broad access and latitude in discovery efforts.  See Hickman v. Taylor, 329 U.S. 495, 501, 507 (1947) (the deposition-discovery rules serve the goal of enabling the parties "to obtain the fullest possible knowledge of the issues and facts before trial"); Horizons Titanium Corp. v. Norton Co., 290 F.2d 421, 425 (1st Cir. 1961) (Rule 26 "apparently envisions generally unrestrictive access to sources of information") (and cases cited).

Here, plaintiffs notified Roxane that they wanted to depose three witnesses with responsibility for promoting RLI and BIPI products.  Roxane delayed five weeks before offering a date to depose Witness A, and the only date proposed was nine weeks from plaintiffs' initial request, and the second to last business day of the discovery period.  Only days before the deposition, plaintiffs were informed Witness A was too ill to be deposed, and so agreed to cancel the deposition.  At the same time, they informed Roxane's counsel they thought it reasonable to be able to "substitute" another witness.  Had Roxane responded promptly to plaintiffs' initial request, so that plaintiffs' learned earlier that Witness A was too ill to be deposed, they would have had time to get out another deposition notice.  Illness of a witness -- in this case an extremely serious illness -- is the exact circumstance recognized by the Court at the November 13, 2008, status conference as grounds for extending discovery without having to seek leave of Court.  See Transcript of Status conference at 42.  Ex.J.  Roxane's refusal here is unjustified and unfair.  The Court should order Roxane to make Mr. Dusek available for deposition promptly.

|  |  |
|---|---|
|  | Respectfully submitted, |
| For the United States of America, | For the relator, Ven-A-Care of the Florida Keys, Inc., |
| MICHAEL F. HERTZ<br>ACTING ASSISTANT ATTORNEY GENERAL | JAMES J. BREEN<br>The Breen Law Firm, P.A. |
| MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY | 3350 S.W. 148th Avenue Suite 110<br>Miramar, FL 33027<br>Tel: (954) 874-1635 |
| By: /s/ James J. Fauci<br>GEORGE B. HENDERSON, II<br>BARBARA HEALY SMITH<br>JAMES J. FAUCI<br>Assistant United States Attorneys<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>(617) 748-3263 | ROSLYN G. POLLACK<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000 |
| JOYCE R. BRANDA<br>DANIEL R. ANDERSON<br>JOHN K. NEAL<br>LAURIE A. OBEREMBT<br>Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C.  20044<br>(202) 514-3345 |  |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on February 13, 2009, a copy to LexisNexis File and Serve for posting and notification to all parties.

|  |  |
|---|---|
|  | /s/ James J. Fauci |
|  | James J. Fauci |
| Dated: February 13, 2009 | Assistant United States Attorney |