# Exhibit A



**U.S. Department of Justice**

Civil Division
Commercial Litigation Branch
Fraud Section

*601 D Street, NW*
*Ninth Floor*
*Washington, D.C. 20004*

*Telephone: (202) 514-3345*
*Telecopier: (202) 616-3085*

OCT 3 1 2008

Eric Gortner, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601-1692

Re:     *United States ex rel. Ven-a-Care of the Florida Keys Inc v. Roxane Laboratories, Inc.,*
        Civil Action No. 07-10248-PBS (D. Mass.)

Dear Eric:

        I am writing to request that defendants provide testimony pursuant to Rule 30(b)(6) of the
Federal Rules of Civil Procedure regarding the following topics:

1.      Defendants' knowledge and understanding of the laws, practices, and policies of State
        Medicaid agencies regarding reimbursement for Defendants' drug products, including
        Defendants' knowledge and understanding concerning State Medicaid agencies' use of
        published AWPs or WAC prices.

2.      Defendants' knowledge and understanding of the laws, practices, and policies of the U.S.
        Department of Health and Human Services (HHS) regarding Medicare reimbursement for
        Defendants' drug products, including Defendants' knowledge and understanding
        concerning the the Medicare program's use of published AWPs in determining
        reimbursement.

3.      With regard to the plaintiffs' claim in the Complaint (at ¶ 59) that Defendants made false
        or fraudulent representations about drug prices and costs to *RedBook*, First DataBank, and
        Medispan, the factual basis for the statement in Defendants' Seventeenth Defense that,
        "As to any statement asserted against [Defendants] that Plaintiffs allege to be false or
        misleading, [Defendants] had no reasonable grounds to believe, and did not believe at the
        time such a statement was made, that the statement was false or misleading."  This topic
        shall include but not be limited to:

-2-

    a.    The identity of each employee (current and former) of Defendants who held a belief that Defendants' price representations were not false or fraudulent;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the belief.

4.    Defendants' belief, if any, regarding any industry practice concerning drug manufacturers' setting or reporting of AWP (for purposes of publication by the compendia) for a new generic drug at the time of launch, and any industry practice concerning subsequently changing or not changing the reported or published AWP. This topic shall include but not be limited to:

    a.    The identity of each employee (current and former) of Defendants who held such a belief concerning such industry practice;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the belief.

5.    Defendants' belief, if any, that the United States government (or any agency or agent thereof) approved of or acquiesced in Defendants' practice of causing the publication of AWPs for Defendants' products that were higher than the average actual wholesale prices or WACs that were higher than actual wholesale acquisition costs (including all discounts, rebates and chargebacks), including:

    a.    The identity of each employee (current and former) of Defendants who held such a belief;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the person's belief.

6.    Defendants' belief, if any, that the United States government (or any agency or agent thereof) had knowledge of Defendants' practice of causing the publication of AWPs for

-3-

Defendants' products that were higher than the average actual wholesale prices or WACs that were higher than actual wholesale acquisition costs (including all discounts, rebates and chargebacks), including:

    a.    The identity of each employee (current and former) of Defendants who held such a belief;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the person's belief.

7.    Defendants' belief, if any, that the United States government (or any agency or agent thereof) approved of or acquiesced in Defendants causing the Medicare program to reimburse providers for Defendants drugs in amounts significantly in excess of provider acquisition costs plus any established dispensing fee, including:

    a.    The identity of each employee (current and former) of Defendants who held such a belief;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the person's belief.

8.    Defendants' belief, if any, that any State government (or any agency or agent thereof) had knowledge of Defendants' practice of causing the publication of AWPs for Defendants' drug products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs (including all discounts, rebates and chargebacks), including:

    a.    The identity of each employee (current and former) of Defendants who held such a belief;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

-4-

     d.      All other information that formed a basis for the person's belief.

9.     Defendants' belief, if any, that any State government (or any agency or agent thereof), approved of or acquiesced in Defendants' practice of causing the publication of AWPs for Defendants' drug products that were higher than the average actual wholesale prices or WACs that were higher than actual wholesale acquisition costs (including all discounts, rebates and chargebacks), including:

     a.      The identity of each employee (current and former) of Defendants who held such a belief;

     b.      The time period when such person held that belief;

     c.      Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

     d.      All other information that formed a basis for the person's belief.

10.    Defendants' belief, if any, that any State Medicaid program (or any agency or agent thereof) approved of or acquiesced in Defendants causing the State Medicaid program to reimburse providers for Defendants drugs in amounts significantly in excess of provider acquisition costs plus any established dispensing fee, including:

     a.      The identity of each employee (current and former) of Defendants who held such a belief;

     b.      The time period when such person held that belief;

     c.      Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

     d.      All other information that formed a basis for the person's belief.

13.    Any and all actions on the part of any Defendants' management, employee, attorney or board representative to link compensation paid to Defendants' sales personnel to their performance of duties involving the marketing of reimbursement spreads to customers or potential customers.

12.    Defendants' practices and procedures, including accounting practices and procedures, with respect to sales and/or intra-company transfers of Azathioprine, Diclofenac Sodium, Furosemide, Hydromorphone, Ipratropium Bromide, Oramorph SR, Roxanol, Roxicodone, Sodium Polystyrene Sulfonate, and Atrovent, between and among Defendants.

-5-

13. The corporate structure of Defendants and changes thereto, dating from 1996 to the present, including the creation of Boehringer Ingelheim Roxane, Inc. and Roxane Laboratories, Inc., and whether Defendants held board meetings, and if so, the frequency of such board meetings.

14. Whether Defendants held board meetings, and if so,

   a. the date of each board meeting,
   b. the identity of each person attending each board meeting, and
   c. whether written minutes were taken at each board meeting.

15. Since January 1, 2003, to the present, all transfers of funds, stock, and other assets to or from one Defendant to another Defendant, or to or from a Defendant to any parent or sister corporation.

16. Since January 1, 2003, to the present, on an annual basis and for each Defendant, the gross income, net income, and operating expenses, of each Defendant, and the Defendant's budget for each year.

17. The ownership of the rights, including patent rights, licensing agreements, or other documents granting sales and distribution rights, with respect to the following drugs: Azathioprine, Diclofenac Sodium, Furosemide, Hydromorphone, Ipratropium Bromide, Oramorph SR, Roxanol, Roxicodone, and Sodium Polystyrene Sulfonate.

18. Defendants' decision to stop reporting wholesale acquisition costs (WACs) to pricing compendia in 1998 for multi-source products, and to request around late 1999 and early 2000, that the pricing compendia remove all historic WACs for Defendants' multi-source products.

19. Any efforts undertaken by Defendants to implement any type of compliance program consistent with the 2003 Compliance Guidelines issued by the HHS Office of Inspector General.

20. Any efforts undertaken by Defendants or any lobbying group on Defendants' behalf to advocate that the Medicare and/or Medicaid programs continue to use either AWP or WAC as a benchmark for reimbursement purposes, including

   a. Communications with HHS regarding government reimbursement for drugs or drug pricing, including, but not limited to, communications in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991); (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000);(e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003) and

-6-

       (f) any guidance, publication, decision, legislation, regulation or administrative action related to government reimbursement for drugs or drug pricing in a state Medicaid plan.

    b.    Communications with any state Medicaid agency or official regarding government reimbursement for drugs or drug pricing, including, but not limited to, communications in connection with: (a) CMS's Proposed Rule published at 56 Fed. Reg. 25792 (June 5, 1991); (b) the Medicare and Medicaid Beneficiary Protection Act of 1997, H.R. 2632, 105th Cong. § 206 (1997); (c) CMS's Proposed Rule published at 63 Fed. Reg. 30818 (June 5, 1998); (d) Program Memorandum Transmittal AB-00-86 (September 8, 2000); (e) CMS's Proposed Rule at 68 Fed. Reg. 50428 (August 20, 2003); and (f) any guidance, publication, decision, legislation, regulation or administrative action related to government reimbursement for drugs or drug pricing under a state Medicaid plan.

21.    Any training provided to Defendants' employees regarding marketing the "spread" or the difference between the amount paid by a retail customer for a drug and the amount of third party reimbursement, including Medicare and Medicaid.

       Thank you for your attention to this matter.  In light of the impending discovery deadline, I propose holding our meet and confer on Wednesday, November 5.

                          Sincerely,

                          Laurie Oberembt
                          Senior Trial Counsel
                          Commercial Litigation Branch

cc:    AUSA Barbara H. Smith
       U.S. Dept. of Justice

       James Breen
       The Breen Law Firm

       Roslyn Pollack

# Exhibit B

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Eric T. Gortner
To Call Writer Directly:
(312) 861-2285
egortner@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 665-9665

November 25, 2008

***VIA ELECTRONIC TRANSMITTAL***

George Henderson
Jeff Fauci
Department of Justice
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

Re:   *United States ex rel. Ven-a-Care of the Florida Keys Inc. v. Roxane Laboratories, Inc.*, Civil Action No. 07-10248-PBS (D. Mass)

Dear Bunker and Jeff:

I am writing regarding the DOJ's October 31, 2008 letter request for a 30(b)(6) deposition of Defendants Roxane Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc. and Boehringer Ingelheim Corporation ("Defendants") and its subsequent notice of deposition issued November 21, 1998 incorporating the 30(b)(6) topics from the prior letter. Defendants and the DOJ participated in meet and confers on November 13 and 19, 2008 to discuss the deposition topics and Defendants believe we have made substantial progress in reaching agreement on many issues. The following outlines both Defendants' objections to the letter request and notice of deposition and our understanding of agreements reached with the DOJ regarding the scope of the topics and the manner in which the depositions will proceed. Please let us know immediately if you disagree on any points.

**Timeframe Objection:**  As a preliminary matter, Defendants object to all requests, except Request Nos. 15 and 16, as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek testimony on topics prior to 1996. We believe the DOJ has agreed to narrow all requests, except 15 and 16 (which are already narrowed to 2003-present), to the timeframe 1996- present, unless there is a particular request where information prior to 1996 is relevant. Please let us know if there are any requests to which you believe a broader timeframe is applicable.

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Washington, D.C.

# KIRKLAND & ELLIS LLP

George Henderson
Jeff Fauci
November 25, 2008
Page 2

**Objections Regarding Testimony from BIPI and BIC:**  Defendants also object to Request Nos. 1-11 and 18-21 as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek testimony from or about BIPI or BIC.  These requests are not relevant to the corporate alter ego issues or interrelationships between the companies and therefore are not relevant to the DOJ's claims against Roxane.  We understand that the DOJ disagrees with this position.

However, in light of impending deadlines and in an effort to avoid unnecessary motion practice, the DOJ will reserve its rights to seek testimony on these issues from BIPI and BIC and proceed with the deposition of a Roxane witness (or designations of prior Roxane testimony) on these topics.  Similarly, the Defendants will hold in abeyance a motion for a protective order on these issues, pending the deposition of a Roxane witness (or designations of prior Roxane testimony). The parties agree that neither party waives its rights to request testimony from BIPI or BIC on these topics or to assert objections or move for a protective order regarding such testimony by going forward with the deposition of Roxane at this time, and that all deadlines for moving to either compel testimony or for a protective order shall be tolled until after the deposition of a Roxane witness (or designation of prior Roxane testimony) and after the parties have had an additional meet and confer to determine whether motion practice is necessary in light of the testimony obtained.

**Requests Satisfied by Prior Testimony**:  Both sides agree that Request Nos. 1, 2, 18, and 21 can be satisfied by reference to prior Roxane 30(b)(6) testimony and therefore Roxane will not be producing a witness on these topics.  Roxane agrees that testimony can be designated for these topics on a deposition basis as opposed to a page/line basis as long as we are able to further agree on certain general parameters regarding the types of testimony that can be designated within those depositions.  For example, testimony in prior 30(b)(6) depositions that was objected to as outside the scope of the 30(b)(6) notice and allowed only in the witness' personal capacity and based on personal knowledge cannot be relied upon as corporate representative testimony by the DOJ.  Please let us know with whom on your team we should discuss these issues as well as the process for identifying prior testimony to satisfy these requests.

**Request Nos. 3-10:**  With respect to Request Nos. 3-10, Roxane objects to subparts (a) - (d) in each of these requests, which seek testimony regarding the identity of "each employee (current or former)" holding a particular belief, the time period the belief was held and "each communication and the identity of each document" and "all other information" relied upon in forming the belief.  These requests are overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence.  Roxane also objects to Request Nos. 7 and 10 because it disagrees with the implicit factual assumption that Roxane caused Medicare or Medicaid

# KIRKLAND & ELLIS LLP

George Henderson
Jeff Fauci
November 25, 2008
Page 3

programs to reimburse providers in excess of provider acquisition costs and because the DOJ can obtain the relevant information through Request Nos. 5, 6, 8 and 9. Accordingly, subject to and without waiving its objections, Roxane agrees only to produce a witness to speak generally regarding the topics described in Nos. 3, 4, 5, 6, 8 and 9.

Our understanding is that the DOJ has agreed to withdraw Request Nos. 7 and 10, but will not agree to narrow subparts (a)-(d) of the remaining requests (although it acknowledges that these requests must be interpreted within the bounds of reasonableness. Although disagreement remains, in light of impending deadlines, the DOJ will reserve its rights to seek complete testimony pursuant to subparts (a)-(d) and will proceed with the deposition of a Roxane witness on these topics. Similarly, the Defendants will hold in abeyance a motion for a protective order on these issues, pending the deposition. The parties agree that neither party waives its rights to seek additional testimony consistent with subparts (a)-(d) or to assert objections or move for a protective order regarding such testimony by going forward with the deposition at this time, and that all deadlines for moving to either compel testimony or for a protective order shall be tolled until after the deposition of and after the parties have had an additional meet and confer to determine whether motion practice is necessary in light of the testimony obtained.

**Request No. 11** (mistakenly numbered 13 in the 10/31/08 letter): Roxane objects to this request as overly broad, unduly burdensome, vague, as not specified with reasonable particularity and to the extent it seeks information protected by the attorney-client or work-product privilege. As discussed during our conversations, Roxane does not believe it ever took any actions to link compensation paid to its sales personnel to marketing the spread to customers, and it will produce a witness to testify to this effect in response to Request No. 11.

**Request Nos. 12 and 13**: With respect to Request Nos. 12 and 13, Defendants object to these requests as overly broad, unduly burdensome, as not described with reasonable particularity and to the extent they seek information protected by the attorney-client privilege or work product doctrine. During our meet and confers, the DOJ agreed to narrow Request No. 12 to testimony relating to sales and/or transfers of Atrovent/ipratroprium bromide between Roxane and BIPI, including Roxane's manufacturing of Atrovent for BIPI. The DOJ explained that it was interested in procedures for invoicing, accounting and paying for such sales/transfers and for negotiating and determining terms and prices for such sales/transfers. The DOJ further agreed to narrow Request No. 13 to testimony regarding the 2005 creation of Boehringer Ingelheim Roxane, Inc. and the new Roxane Laboratories, Inc. Subject to and without waiving its objections, Roxane agrees to produce a witness to testify regarding Request Nos. 12 and 13 as narrowed during the parties' meet and confers.

# KIRKLAND & ELLIS LLP

George Henderson
Jeff Fauci
November 25, 2008
Page 4

**Request No. 14:**  This Request relates to board meetings and minutes.  The DOJ has agreed that, if Defendants are able to confirm that minutes were created for every board meeting that occurred, it will rely upon board documents produced in lieu of testimony.  Defendants will let the DOJ know as soon as it has an answer on this issue.

**Request No. 15:**  This request seeks testimony regarding the transfer of funds, stock or assets from 2003 - present.  Defendants object to this request as overly broad, unduly burdensome, as not described with reasonable particularity and as seeking information that is irrelevant and not likely to lead to admissible evidence.  The DOJ has agreed to withdraw this request as it relates to "any parent or sister corporation" of Defendants.  The DOJ further explained that the types of information it was looking for included testimony regarding the movement of funds between Defendant companies, the payment or transfer of dividends between Defendant companies and the transfer of assets, such as real estate or drug ownership rights, between the companies.  Subject to and without waiving its objections, Defendants agree to produce a witness to testify generally regarding the types of information the DOJ has described.  Defendants note that the DOJ referenced the transfer of the drug Viramune (which is not a drug at issue) between Roxane and BIPI as an example of one of the issue for which it was seeking testimony pursuant to this request, however, the transfer of Viramune occurred prior to 2003 and therefore falls outside the scope of this request.

**Request No. 16:**  Defendants object to Request No. 16, which seeks annual financial information, as overly broad and unduly burdensome as it relates to entities other than Roxane and as cumulative of financial statements previously produced by Roxane.  With respect to Defendant Roxane, the DOJ has agreed to rely upon documents in lieu of testimony on this topic.  Similarly, if audited financial statements are produced by BIPI and BIC, the DOJ will agree to rely upon those in lieu of testimony.  Defendants are determining whether it will produce such documents and will let the DOJ know as soon as possible.

**Request No. 17:**  Defendants object to Request No. 17 as vague, overly broad, unduly burdensome, as not described with reasonable particularity, and to the extent it seeks information protected by the attorney-client privilege and work-product doctrine.  The DOJ explained during our meet and confer that this request is seeking testimony regarding the ownership of each of the named drugs and the transfer or sale of ownership, licensing, sales or distribution rights of named drugs between two Defendant entities.  Subject to and without waiving its objections, Defendants agree to produce a witness to testify generally regarding the ownership of the named drugs and any sales or transfers of rights to named drugs between the Defendant companies.  Defendants note again that the DOJ referenced the transfer of the drug Viramune between Roxane and BIPI as an example of one of the issues for which it was seeking testimony pursuant

# KIRKLAND & ELLIS LLP

George Henderson
Jeff Fauci
November 25, 2008
Page 5

to this request, however, Viramune is not a drug at issue in the case and is not named in this request and therefore falls outside the scope of this request.

**Request No. 19:**  Roxane objects to Request No. 19, which relates to compliance programs and efforts, as overly broad, unduly burdensome, not described with reasonable particularity, and to the extent it seeks information protected by the attorney-client privilege and work-product doctrine.  We explained that most, if not all, information related to this topic would be privileged because Defendants' counsel was intimately involved in compliance efforts.  However, subject to and without waiving its objections, Defendants will produce a witness to testify generally regarding any non-privileged final compliance programs and actions implemented by Roxane.

**Request No. 20:**  With regard to Request No. 20 related to lobbying efforts, Defendants object to the request as overly broad and unduly burdensome because it does not conform to Judge Bowler's October 29, 2008 ruling, which held that Plaintiffs' request for lobbying documents was overbroad and limited the request to "defendant Roxane" (not BIC and BIPI) and to the time period of 1996 to 2003.  Roxane believes that any testimony on this issue must similarly be narrowed.  We understand that the DOJ disagrees with this interpretation and that there is a motion for clarification pending before Judge Bowler.  While neither party waives its right to move to compel testimony or to seek a protective order, our understanding is that Roxane did not lobby "to advocate that the Medicare and/or Medicaid programs continue to use either AWP or WAC as a benchmark for reimbursement purposes" during the pertinent time period, and thus there is no testimony to provide on this topic.

The parties also discussed the scheduling and logistics of the 30(b)(6) depositions.  The DOJ informed Defendants that it would have one questioner for topics 1-11 and one for topics 12-21, excluding those where we have agreed prior testimony will suffice, and therefore will require two days to complete the depositions.  Defendants are agreeable to this procedure in light of the fact that multiple witnesses will probably be necessary in any event to cover the different topics.  Subject to and without waiving the objections set forth in this letter and subject to the agreements and limitations set forth in this letter, Roxane will produce a 30(b)(6) witness to testify regarding Request Nos. 3-6, 8-9 and 11 on December 12, 2008.  Defendants indicated that topics 12-17, and 19 relating to corporate structure and inter-company dealings are not topics for which Defendants have previously provided testimony in any AWP case and that they cover broad-ranging, complicated issues that will require significant time and effort to research and prepare a corporate representative to testify about.  Accordingly, the DOJ stated it would agree to schedule the corporate designee deposition(s) covering these topics after the December 15 discovery cut-off date, and the parties will determine the best way to convey this to the Court.

# KIRKLAND & ELLIS LLP

George Henderson
Jeff Fauci
November 25, 2008
Page 6

Please let myself or Maria Rivera know if you disagree with any agreements set forth in this letter or if further discussion is needed.

Very truly yours,

Eric T. Gortner

cc:    Maria Rivera

# Exhibit C

| From: | Ciarelli,Gregg MK BIP-US-R <ciarelli@boehringer-ingelheim.com> |
|---|---|
| Sent: | Sunday, October 14, 2001 2:20 PM |
| To: | Ferrara,Joseph NP BIP-US-R <ferraraj@boehringer-ingelheim.com> |
| Cc: | Tom Russillo <trussillo@boehringer-ingelheim.com>; Waterer, Judy ROXUS <waterer@boehringer-ingelheim.com>; Karen Strelau <kstrelau@boehringer-ingelheim.com>; Christine Marsh <cmarsh@boehringer-ingelheim.com>; Shelly Berkle <berkle@boehringer-ingelheim.com>; Mike Leonetti <leonetti@boehringer-ingelheim.com> |
| Subject: | FW: Alternatives to AWP Under Medicare |
| Attach: | MedicareAWP.doc |

Joe,

This is only a minor issue for PM but will have a much larger impact on RLI Multisource. Chris Marsh can help prepare the analysis and Tom should have input on the position and the final decision.

Thanks,
Gregg Ciarelli

Head - Sales & Contracting Administration
Boehringer Ingelheim Pharmaceuticals, Inc.
Phone: (203) 798-4863 Fax: (203) 791-6411

Email: gciarelli@rdg.boehringer-ingelheim.com


-----Original Message-----
From: Ferrara,Joseph NP BIP-US-R
Sent: Friday, October 12, 2001 1:53 PM
To: Berkle, Shelly FN BIP-US-R; Leonetti,Mike HR BIP-US-R; King,Jim MK BIP-US-R; Ciarelli,Gregg MK BIP-US-R; Marlin,Dr,Steve PM BIP-US-R; Drees,Dr,Ulrich IPM BIP-US-R; Cochrane,Elizabeth FN BIP-US-R; Banks,Bruce LG BIP-US-R
Cc: Marsh,Christine MK BIP-US-R; Decapua,Joseph MK BIP-US-R; Rowenhorst,James MK BIP-US-R; Ferrara,Christine MK BIP-US-R
Subject: Alternatives to AWP Under Medicare

At a hearing on September 21 Congress heard testimony on the use and abuse of AWP for pharmaceuticals that are currently reimbursed under the Medicare program. Currently, solutions for nebulization (i.e., UDVs) are covered by Medicare.

Since that hearing Congress has been looking into changes to the current Medicare benchmark price (AWP). I have attached to this message a one-page summary from our Washington consultant on the two leading plans under discussion in Congress to replace AWP. It may be useful to run the numbers to determine which of these approaches is least damaging to BI. At the same time, it may be useful to run the numbers using a third approach that was suggested by the Clinton administration several years ago. That proposal was to pay 87% of the average wholesale price.

We recommend that these financial analyses be performed and RxOC be briefed on the outcome. We would

BOEH02715392

anticipate requesting RxOC for a decision on the appropriate position for BI. After that, we would take-up our BI position in briefings on Capitol Hill with our constituent representatives from Connecticut and Ohio.

Thanks and best regards,
Joe
Joseph M. Ferrara
Director, Government Policy
Boehringer Ingelheim Pharmaceuticals, Inc.
900 Ridgebury Road
PO Box 368
Ridgefield, CT 06877-0368
Phone: +(203) 798-4368
Fax: +(203) 791-6826
E-mail: jferrara@rdg.boehringer-ingelheim.com

BOEH02715393

| | |
|---|---|
| **From:** | Berkle, Shelly FN BIP-US-R <berkle@boehringer-ingelheim.com> |
| **Sent:** | Tuesday, October 16, 2001 9:45 AM |
| **To:** | Ferrara,Joseph NP BIP-US-R <jferrara@rdg.boehringer-ingelheim.com>; Leonetti,Mike HR BIP-US-R <mleonetti@rdg.boehringer-ingelheim.com>; King,Jim MK BIP-US-R <jking2@rdg.boehringer-ingelheim.com>; Ciarelli,Gregg MK BIP-US-R <gciarell@rdg.boehringer-ingelheim.com>; Marlin,Dr,Steve PM BIP-US-R <smarlin@rdg.boehringer-ingelheim.com>; Drees,Dr,Ulrich IPM BIP-US-R <udrees@rdg.boehringer-ingelheim.com>; Cochrane,Elizabeth FN BIP-US-R <ecochran@rdg.boehringer-ingelheim.com>; Banks,Bruce LG BIP-US-R <bbanks@rdg.boehringer-ingelheim.com> |
| **Cc:** | Marsh,Christine MK BIP-US-R <cmarsh@rdg.boehringer-ingelheim.com>; Decapua,Joseph MK BIP-US-R <jdecapua@rdg.boehringer-ingelheim.com>; Rowenhorst,James MK BIP-US-R <jrowenho@rdg.boehringer-ingelheim.com>; Ferrara,Christine MK BIP-US-R <cferrara@rdg.boehringer-ingelheim.com>; Press,Roseann FN BIP-US-R <rpress@rdg.boehringer-ingelheim.com> |
| **Subject:** | RE: Alternatives to AWP Under Medicare |

Gregg and Elizabeth:

I agree with Joe. Please prepare for next RxOC. Thanks.

Shelly

-----Original Message-----
From:  Ferrara,Joseph  NP BIP-US-R
Sent:  Friday, October 12, 2001 1:53 PM
To:  Berkle, Shelly  FN BIP-US-R; Leonetti,Mike  HR BIP-US-R; King,Jim  MK BIP-US-R; Ciarelli,Gregg  MK BIP-US-R; Marlin,Dr,Steve  PM BIP-US-R; Drees,Dr,Ulrich  IPM BIP-US-R; Cochrane,Elizabeth  FN BIP-US-R; Banks,Bruce  LG BIP-US-R
Cc:  Marsh,Christine  MK BIP-US-R; Decapua,Joseph  MK BIP-US-R; Rowenhorst,James  MK BIP-US-R; Ferrara,Christine  MK BIP-US-R
Subject:  Alternatives to AWP Under Medicare

At a hearing on September 21 Congress heard testimony on the use and abuse of AWP for pharmaceuticals that are currently reimbursed under the Medicare program.  Currently, solutions for nebulization (i.e., UDVs) are covered by Medicare.

Since that hearing Congress has been looking into changes to the current Medicare benchmark price (AWP). I have attached to this message a one-page summary from our Washington consultant on the two leading plans under discussion in Congress to replace AWP.  It may be useful to run the numbers to determine which of these approaches is least damaging to BI.  At the same time, it may be useful to run the numbers using a third approach that was suggested by the Clinton administration several years ago. That proposal was to pay 87% of the average wholesale price.

We recommend that these financial analyses be performed and RxOC be briefed on the outcome.  We would anticipate requesting RxOC for a decision on the appropriate position for BI.  After that, we would take-up our BI position in briefings on Capitol Hill with our constituent representatives from Connecticut and Ohio.

<< File: MedicareAWP.doc >>
Thanks and best regards,

*Joe*

Joseph M. Ferrara

BOEH04687248

Director, Government Policy
Boehringer Ingelheim Pharmaceuticals, Inc.
900 Ridgebury Road
PO Box 368
Ridgefield, CT 06877-0368
Phone:  +(203) 798-4368
Fax:    +(203) 791-6826
E-mail: jferrara@rdg.boehringer-ingelheim.com

BOEH04687249

# Exhibit D



experience *does* matter

**CASE:  In Re: Pharmaceutical Industry Average Wholesale Price Litiagation**
**DATE:  December 12, 2008**

Enclosed is the Original of the transcript of the testimony of **Judy Waterer** along with the errata sheet in the above-titled case.  Please have the witness read the deposition and sign the signature page before a Notary Public.

After the signature page has been notarized, please return the original transcript and errata sheets to the custodial attorney within 30 days of receipt for proper filing.

Thank you for your attention to this matter and please feel free to contact us with any questions or concerns.


Sincerely,

Henderson Legal Services


Encl.

Henderson Legal Services
Phone: 202-220-4158
Fax: 202-220-4162
Website: www.hendersonlegalservices.com

Roxane Laboratories, Inc (Judy Waterer)                December 12, 2008
                           Chicago, IL

                                                              Page 1

               UNITED STATES DISTRICT COURT

               DISTRICT OF MASSACHUSETTS

     ----------------------------X

     In Re:  PHARMACEUTICAL          )

     INDUSTRY AVERAGE WHOLESALE      )  MDL No. 1456

     PRICE LITIGATION                ) Civil Action No.

     ----------------------------X 01-12257-PBS

     THIS DOCUMENT RELATES TO:       )

     United States of America ex     )

     rel. Ven-a-Care of the          )

     Florida Keys, Inc., et al.      )

     v. Boehringer Ingelheim         )

     Corp., et al., Civil Action     )

     No. 07-10248-PBS                 )

     ----------------------------X

          (CROSS-CAPTIONS APPEAR ON FOLLOWING PAGE)

          VIDEOTAPED 30(b)(6) DEPOSITION OF ROXANE

       LABORATORIES, INC., ROXANE LABORATORIES, INC.

          n/k/a BOEHRINGER INGELHEIM ROXANE, INC.,

       BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., and

       BOEHRINGER INGELHEIM CORPORATION by JUDY WATERER

                    DECEMBER 12, 2008

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                              Chicago, IL

                                                               Page 2

 1          IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND

 2                    FOR LEON COUNTY, FLORIDA

 3          -----------------------------X

 4          THE STATE OF FLORIDA, ex rel. )   Civil Action No.

 5          VEN-A-CARE OF THE FLORIDA      )      98-3032A

 6          KEYS, INC.                     )

 7               v.                        )

 8          BOEHRINGER INGELHEIM           )

 9          CORPORATION, et al.,           )

10          -----------------------------X

11                    The videotaped 30(b)(6) deposition of

12          Roxane Laboratories, Inc., Roxane Laboratories, Inc.

13          n/k/a Boehringer Ingelheim Roxane, Inc., Boehringer

14          Ingelheim Pharmaceuticals, Inc., and Boehringer

15          Ingelheim Corporation by JUDY WATERER, called as a

16          witness for examination, taken pursuant to the

17          Federal Rules of Civil Procedure of the United

18          States District Courts pertaining to the taking of

19          depositions, taken before KELLY M. FITZGERALD, a

20          Certified Shorthand Reporter of said state, at Suite

21          500, 219 South Dearborn Street, Chicago, Illinois,

22          on 12th day of December, A.D. 2008, at 9:08 a.m.

                    Henderson Legal Services, Inc.
202-220-4158                      www.hendersonlegalservices.com
                                          66ec5398-c731-48a7-90fb-e1d7007cd66b

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
Chicago, IL

Page 35

1        Q.   And is that true regardless of where

2   Roxane sets its launch prices at which it sells

3   to customers?

4            MS. RIVERA:  Hold on.  Hold on.  I'm

5   going to object.  I mean, how Roxane sets its

6   prices and its practices for setting its prices

7   is not one of the topics that Ms. Waterer is here

8   to talk about.  One of your topics is how the

9   industry sets prices for generic drugs and

10  Roxane's understanding of how the industry sets

11  prices.  She's testified on numerous occasions

12  how Roxane goes about setting its prices and what

13  its methodologies are for that.  So I'll give you

14  a little leeway on some of the basic questions,

15  but I don't want to go down a whole long line of

16  questioning about what Roxane's specific

17  practices are for how they set their prices

18  because it's not part of what we're here to talk

19  about today.

20           MR. HENDERSON:  Fair enough.  And I'll

21  try to avoid repeating prior questioning.  At the

22  same time, I'm not limited by the topics.  They

Roxane Laboratories, Inc (Judy Waterer)          December 12, 2008
                        Chicago, IL

1   don't limit the scope of my questions.  They do

2   limit the effect of the testimony insofar as it

3   may or may not be binding on Roxane --

4          MS. RIVERA:  Well, if you --

5          MR. HENDERSON:  -- but the topics are

6   not a limitation on the scope of my questioning.

7          MS. RIVERA:  If you can link your

8   questioning back to the subject of the topics,

9   then that's okay.  But if they go off into topics

10  that are not and don't have any relationship to

11  the topics that are on the notice, then we're not

12  going to go down that path.

13         MR. HENDERSON:  Ms. Rivera, the law is

14  crystal clear that I'm entitled to ask any

15  questions I want to seek non-privileged

16  information at this deposition, regardless of

17  whether they are within the scope of the topics.

18         MS. RIVERA:  Well, that's not our

19  understanding of the law or the agreement that we

20  had, which is that this is a 30(b)(6) deposition,

21  and so Ms. Waterer is here designated pursuant to

22  specific topics to speak on behalf of the

Roxane Laboratories, Inc (Judy Waterer)                December 12, 2008
Chicago, IL

Page 37

1    company.  She has not been noticed in her

2    individual capacity.  And you had many years to

3    notice her and take her deposition in her

4    individual capacity and she's not prepared here

5    today to talk about things that are not out --

6    that are outside of the scope of this notice, nor

7    were we given any indication that you would be

8    seeking to obtain testimony on other -- on topics

9    other than what are contained in the notice.  So

10   --

11        MR. HENDERSON:  We don't have to take

12   up a lot of space on the record for this.

13        MS. RIVERA:  I agree.

14        MR. HENDERSON:  I can provide you with

15   case law.  You are -- you should know the law.

16        MS. RIVERA:  I do know the law.

17        MR. HENDERSON:  You're a lawyer.  And

18   that's the law.  We've never waived our rights,

19   and there's no agreement to that effect.

20   BY MR. HENDERSON:

21        Q.  Ms. Waterer, you said it's industry

22   practice to set AWP's at 10 percent below the AWP

Henderson Legal Services, Inc.
202-220-4158                  www.hendersonlegalservices.com
66ec5398-c731-48a7-90fb-e1d7007cd66b

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                            Chicago, IL

Page 50

1          MS. RIVERA:  Okay.  I just want to put

2     an objection -- objection on the record to this

3     whole line of questioning.  Again, Roxane's

4     specific practices about how we set practices at

5     the time of launch and for specific drugs and

6     which drugs is beyond the scope of the deposition

7     notice.  And Ms. Waterer has provided a

8     significant amount of testimony about specific

9     pricing practices, about specific drugs and her

10    time when she was responsible for setting those

11    prices.  If you want to ask her some general

12    questions about how Roxane set those prices so

13    that you can compare it to your deposition notice

14    topic of how the industry set prices, I'm willing

15    to give you some leeway there.  But she's not

16    prepared to talk about specific Roxane prices

17    with regard to setting prices on specific drugs.

18          MR. HENDERSON:  Counsel, you can object

19    to the form of the question or you can tell the

20    witness not to answer at all.  But at this point

21    in time, I'd like to ask my questions without

22    interruption, please.

Henderson Legal Services, Inc.
202-220-4158                    www.hendersonlegalservices.com
66ec5398-c731-48a7-90fb-e1d7007cd66b

Roxane Laboratories, Inc (Judy Waterer)                December 12, 2008
                              Chicago, IL

1          MS. RIVERA:  Well, I have a right to

2     put an objection on the record that it's beyond

3     the scope of this notice.  And if to the extent

4     she testifies about any of this stuff, it would

5     be in her personal capacity and not as a

6     corporate representative.

7          MR. HENDERSON:  You've already made

8     that statement, counsel.

9          MS. RIVERA:  Well, I would like the

10    record to be clear as to what testimony is about

11    -- is in her corporate representative capacity

12    and what testimony is not.

13         MR. HENDERSON:  I am trying to probe

14    question -- answers to question 3, where Ms.

15    Waterer has stated that Roxane had no reasonable

16    grounds to believe their reported prices were

17    untrue.  She has relied on industry standard.

18         MS. RIVERA:  Correct.

19         MR. HENDERSON:  And I would like to

20    find out what her experience is both in her

21    application of the industry standard, how she has

22    obtained information about it and what she has --

Roxane Laboratories, Inc (Judy Waterer)                December 12, 2008
                           Chicago, IL

                                                          Page 52

1    what information she has reviewed.  She has

2    indicated that she reviews information at the

3    time of launch.  I would like to find out what

4    information she's reviewed, how frequently she's

5    reviewed it, and these questions that I'm asking

6    bear directly on that.  So I disagree with your -

7    - your conclusion that this is outside of the

8    scope, but moreover, I disagree with your

9    suggesting that I'm not entitled to ask questions

10   outside of the scope.  So I would just like to

11   move on and not have these interruptions, please.

12           MS. RIVERA:  Okay.  Well, we can agree

13   to disagree on this.  But I am going to make my

14   record about what I believe to be outside the

15   scope.

16           MR. HENDERSON:  You have made the

17   record absolutely clear.

18           MS. RIVERA:  I have tried not to

19   interrupt.

20           MR. HENDERSON:  Your -- all your rights

21   are preserved, Ms. Rivera.  You don't have to

22   have these speeches going on to preserve your

Henderson Legal Services, Inc.
202-220-4158                    www.hendersonlegalservices.com
                                66ec5398-c731-48a7-90fb-e1d7007cd66b

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                            Chicago, IL

Page 53

1    rights.  I will stipulate here and now that your

2    rights are reserved as to every question and

3    every answer that occurs during this deposition.

4    You may move to strike if you want.

5    BY MR. HENDERSON:

6        Q.   Okay.  Let's return to the question and

7    answers.

8              You said that you have been responsible

9    for launching a number of drugs from the time

10   period 1997 through the early part of this

11   decade.  And you said anywhere from ten drugs per

12   year.

13       A.   From one drug to ten drugs, yes.

14       Q.   Thank you, from one drug to ten drugs

15   per year.  Could you describe to me when you --

16   and I trust that your statements about industry

17   practice are informed by your own observations as

18   you have launched products.  Is that fair to say?

19       A.   Yes.

20       Q.   Okay.  So I would like to ask you some

21   information about your observations and your

22   experience as you have launched products.

                    Henderson Legal Services, Inc.
202-220-4158              www.hendersonlegalservices.com
                                    66ec5398-c731-48a7-90fb-e1d7007cd66b

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                          Chicago, IL

                                                          Page 106

1      record at 11:18 a.m.

2                     (WHEREUPON, a recess was had.)

3                     THE VIDEOGRAPHER:  We are back on the

4      record at 11:46 a.m.

5                     MS. RIVERA:  I wanted to make a quick

6      statement on the record, which is that Roxane

7      objects to questioning of Ms. Waterer in her

8      corporate representative capacity outside the

9      scope of the topics in the notice, and we will

10     put those objections on the record.  And to the

11     extent that the questioning goes beyond what we

12     feel is the appropriate scope of the topics, we

13     will instruct the witness not to answer, end the

14     deposition if that be necessary.

15                    In addition, Mr. Henderson is going to

16     try to clarify some of this, but there have been

17     some questions about Ms. Waterer's personal

18     knowledge and whether those questions also apply

19     to what the corporate position is on those

20     issues.  And Roxane's position is to the extent

21     Ms. Waterer was questioned in her personal

22     knowledge, unless it is clarified in the record

Roxane Laboratories, Inc (Judy Waterer)                December 12, 2008
                              Chicago, IL

1    that those aren't -- that testimony is not

2    binding on the corporation, that in the future,

3    the questions will be -- should be phrased in

4    terms of what Roxane's corporate knowledge is, as

5    that's the role that Ms. Waterer is playing

6    today.

7             MR. HENDERSON:   Ms. Rivera's position

8    about the scope of the 30(b)(6) questioning is at

9    least the third time it has been stated.   But in

10   any event, I am putting Roxane's counsel on

11   notice that the clear majority of courts hold

12   that a 30(b)(6) deposition notice and the topics

13   therein do not constitute a restriction or

14   limitation of the scope of questioning.

15            And I've given her citations to cases,

16   including the King case at 161 FRD 475 from the

17   Southern District of Florida, 1995.   There's a

18   Cabot Corporation case, 194 FRD 499, Middle

19   District of Pennsylvania; United States EEOC

20   versus Caesar's Entertainment, 237 FRD 428 at

21   432, 2006 case; and Detoy, D-e-t-o-y, versus City

22   and County of San Francisco, 196 FRD 362 at 365,

Roxane Laboratories, Inc (Judy Waterer)                December 12, 2008
                          Chicago, IL

Page 108

1   California case; and Overseas Private Investment
2   Corp. case at 185 FRD 67, page 68.  All of these
3   courts hold that the topics of a 30(b)(6)
4   deposition do not restrict the scope of
5   questioning and that the examiner is well within
6   his rights in asking questions outside the scope
7   of those topics.  And if the -- Roxane's counsel
8   does instruct the witness not to answer on the
9   ground -- on that ground which the United States
10  believes to be unfounded, the United States
11  certainly reserves its rights and may well seek
12  to reconvene the deposition in Boston.  And the
13  United States may seek costs of associated with
14  doing that.
15  BY MR. HENDERSON:
16       Q.   Now, with regard to the questions
17  asking about your personal knowledge, Ms.
18  Waterer, I think a number of my questions, I
19  withdrew my comment about personal knowledge but
20  was asking focused questions based on your first-
21  hand knowledge.  And we were talking about
22  industry practice regarding the setting of AWP

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                          Chicago, IL

                                                              Page 113

1     exactly.

2           Q.    Did it start in about 2000 or 2001?

3           A.    I don't remember exactly.  That doesn't

4     seem unlikely, but I don't know that information.

5           Q.    Okay.  Do you know that the NDC for

6     that product was different than the NDC number

7     for the other Ipratropium Bromide products that

8     Roxane sold?

9           A.    Yes.

10          Q.    Did -- when -- did Roxane report AWPs

11    to Red Book for the Ipratropium Bromide NovaPlus

12    product?

13          MS. RIVERA:  Objection.  I'm going to

14    object to this as beyond the scope of the

15    deposition testimony and allow Ms. Waterer to

16    answer only to the extent that she has actual

17    knowledge of the answers to these questions and

18    put on the record that she has not been prepared

19    as a corporate representative on these questions.

20    It doesn't necessarily have or is aware of what

21    the corporate knowledge is on these issues.

22          MR. HENDERSON:  Counsel, your

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                          Chicago, IL

1    objections have been stated at least four times.

2              MS. RIVERA:  I understand, but I'm

3    going to put it on the record every time that the

4    subject comes up.

5              MR. HENDERSON:  Well --

6              MS. RIVERA:  That is not -- and if it

7    goes too extensive on this and gets into too many

8    details, then I will instruct the witness not to

9    answer.

10             MR. HENDERSON:  I respectfully suggest

11   that by stating it over and over and over again

12   you're wasting time.  And you're --

13             MS. RIVERA:  Well, I don't think I'm

14   wasting time.

15             MR. HENDERSON:  All right.

16   BY MR. HENDERSON:

17        Q.   My question is, Ms. Waterer, do you

18   know whether or not Roxane reported AWPs for the

19   NovaPlus Ipratropium Bromide product to Red Book?

20        A.   I don't know specifically what got

21   reported to whom and when, no.

22        Q.   Would it have been Roxane's normal

Roxane Laboratories, Inc (Judy Waterer)          December 12, 2008
                        Chicago, IL

Page 115

1     practice to report those AWPs to Red Book?

2              MS. RIVERA:  Objection.  I'm going to

3     instruct the witness not to answer.  That's

4     beyond the scope of this deposition, and you're

5     getting into details about a subject that she has

6     not been prepared to testify on.

7     BY MR. HENDERSON:

8         Q.    Do you know whether or not the AWPs

9     that were reported to Red Book for the

10    Ipratropium Bromide NovaPlus were the same as the

11    AWPs that Roxane reported for its other

12    Ipratropium Bromide, its corresponding

13    Ipratropium Bromide generic products?

14             MS. RIVERA:  Same objection and same

15    instruction.

16    BY MR. HENDERSON:

17        Q.    All right.  Can you tell me whether or

18    not the -- in general whether the prices at which

19    the Ipratropium Bromide NovaPlus products were

20    sold to Novation were comparable to the prices at

21    which Roxane's other Ipratropium Bromide products

22    were sold to wholesalers?

Roxane Laboratories, Inc (Judy Waterer)                    December 12, 2008
                              Chicago, IL

---

                                                              Page 116

1              MS. RIVERA:  Same objection.  Same

2    instruction.

3    BY MR. HENDERSON:

4         Q.    What is Novation?

5         A.    I believe it's a buying group for a

6    consortium of hospitals.

7         Q.    Would it be characterized as a GPO,

8    group purchasing organization?

9         A.    I think that would be fair.

10        Q.    Do you know their -- how many hospitals

11   approximately are members of Novation?

12        A.    No.

13        Q.    Does Roxane --

14        A.    Wait a minute.  Am I answering as me or

15   as the company?

16        Q.    Just you.

17        A.    Just me, no.

18        Q.    Yeah, this is --

19        A.    Okay.

20        Q.    I agree it's outside the scope of the

21   30(b)(6) notice.

22              Is -- does Roxane sell other products

---

                    Henderson Legal Services, Inc.

66ec5398-c731-48a7-90fb-e1d7007cd66b