# Exhibit 1

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

IN RE: BRIDGEPORT FIRE LITIGATION  :  MASTER FILE NO. 05-20924
                                    :  Relates to all actions

## ORDER

AND NOW, this ___16___ day of ___May___, 2008, upon consideration of Class Plaintiffs' Motion to Temporarily Restrain Donald E. Haviland, Jr., Esquire from Communicating with Class Members and Class Plaintiffs' Motion to Bar Donald E. Haviland, Esquire from Using Unlawfully Acquired Lists of Class Members' Names and Addresses, and all responses thereto, and after a hearing spanning the course of five days, the Court hereby makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW:**

## FINDINGS OF FACT

**A.    Background: Relevant Events Prior to 2008**

1.     The underlying action for this litigation arises out of a fire that occurred on or about May 15, 2001 at the Continental Business Center in the Borough of Bridgeport.

2.     In April 2003, this Court certified this case as a Class Action, in which Class Members are entities that suffered property damage as a result of the fire. The Court appointed the law firms of Kline & Specter, P.C. and High Swartz, LLP to serve as Class Counsel.

3.     At the time of the appointment of Class Counsel, Donald E. Haviland, Jr., Esquire ("Mr. Haviland") was an associate at Kline & Specter. Mr. Haviland would remain an associate at Kline & Specter until sometime in August 2006, when he gave notice to Kline & Specter of his intention to leave the firm. He left thereafter on September 6, 2006 to become an attorney

with a new law firm, known as The Haviland Law Firm.[1]

4.      On September 6, 2006, the day of his departure from Kline & Specter, Mr. Haviland forwarded a correspondence to various Class Representatives in this litigation, stating that he had formed The Haviland Law Firm and seeking Class Representatives to make a decision on the election of Class Counsel in this matter: Kline & Specter or The Haviland Law Firm.  On September 7, 2006, Kline & Specter filed a Petition to Bar Mr. Haviland from Communicating with the Class, and a hearing was scheduled before this Court.

5.      On September 8, 2006, the hearing on the Petition was held before the Court.  On September 11, 2006, this Court issued an Order barring Mr. Haviland from soliciting Class Members and seeking from them an election of Class Counsel.

6.      On October 10, 2006, Mr. Haviland filed a Notice of Appeal of this Collateral Order to the Superior Court.

7.      In the interim, on or about September 13, 2006, Mr. Haviland filed with the Court a Petition for Appointment as Lead Counsel for the Class or, in the Alternative, Class Counsel.  Also on that date, Mr. Haviland filed a Praecipe for Change of Entry of Appearance for Class Representatives, Professional Flooring Co., Inc., Limerick Carpet & Flooring, Inc., Rose Line, Inc., Salmons Industries, Inc. a/t/a Millie Switch and Renu Electronics.  Class Plaintiffs filed a timely response to Mr. Haviland's Petition, as well as a Motion to Strike "Praecipe for Change of Entry of Appearance."

8.      Thereafter, on November 17, 2006, the Court commenced an evidentiary hearing with regard to Mr. Haviland's Petition for Appointment as Lead Counsel.  Due to the extensive nature of the Petition and this class action litigation, the Evidentiary Hearing continued on for

---

[1] The actual circumstances surrounding Mr. Haviland's departure remain in dispute.  Mr. Haviland alleges that he voluntarily left.  Kline & Specter contends that he was fired.

three additional days of testimony and evidence.

9.      Immediately prior to the fifth hearing day, on December 13, 2006, Mr. Haviland voluntarily filed a Praecipe to Withdraw his Petition for Appointment as Lead Counsel for the Class. By way of Order dated December 19, 2006, the undersigned ordered the Petition withdrawn. The Court deferred ruling upon the Petition to Strike Mr. Haviland's Appearance, as Mr. Haviland was permitted to represent the named Plaintiffs as *personal* counsel.

10.     On April 29, 2007, this Court filed an Opinion pursuant to Pa.R.A.P. 1925(a) with regard to Mr. Haviland's Notice of Appeal (filed October 11, 2006) of this Court's September 11, 2006 Order, noting that the appeal was now moot because Mr. Haviland had withdrawn his Petition for Appointment as Class Counsel.

**B.      Background: Recent Events – Findings of Fact on Superior Court appeal**

11.     Several days after the scheduled commencement of the trial of this matter on February 4, 2008, Class Plaintiffs entered into a Partial Settlement Agreement with fourteen (14) Defendants in this case for the sum of thirty million dollars ($30,000,000.00). The Partial Settlement Agreement was the result of substantial time and effort put forth by all parties involved. The Court has preliminarily approved the Partial Settlement Agreement, and notice has been forwarded to the Class Members.

12.     On February 14, 2008, notwithstanding this Court's position that the pending appeal was now mooted, the Superior Court entered an Order vacating the September 11, 2006 Order and remanding "for entry of a more specific order that explicitly states the limitations on contact that the court obviously intended."

13.     On February 21, 2008, Mr. Haviland filed with the Court and served on all counsel a document, titled "Notice of Issuance of Communications with Members of the Class,"

3

which states:

> In view of the Judgment Order of the Superior Court of Pennsylvania, dated February 14, 2008, vacating this Court's Order dated September 11, 2006, the undersigned hereby provides notice to the Court and all counsel of their intention to provide a written communication of members of the Class in the above litigation, in accordance with the ethical rules of this Commonwealth, notifying such persons of the fact that the undersigned has departed the law firm of Kline & Specter, P.C., and of their rights to communicate with the undersigned about any matter, including their rights against parties who have been dismissed summarily from the class action case.

14.     On February 22, 2008, Class Counsel, Kline & Specter, filed an "Emergency Application to Temporarily Restrain Mr. Haviland and the Haviland Law Firm from Communicating with the Entire Class without Prior Approval of the Court." The Petition alleged, *inter alia,* that Mr. Haviland should be restrained from forwarding the above notice to Class Members.[2] On February 22, 2008, this Court granted the Emergency Application *ex parte,* temporarily restraining Mr. Haviland from communicating with the Class Members, other than those few he represents as personal counsel, without prior approval of the Court, and scheduling a hearing on the Emergency Application for the morning of the next business day, Monday, February 25, 2008.

15.     The February 25, 2008 hearing occurred during the midst of and effectively stalled the ongoing trial in the underlying litigation. This Court directed Mr. Haviland and his counsel to produce a copy of the actual letter that he proposed to send to the entire Class (the "Proposed Letter"). The Court ordered that the hearing would continue on February 28, 2008. Also on this day, Class Counsel filed a "Motion to Bar Mr. Haviland and the Haviland Law Firm from Using Any Lists of Class Members' Names and Addresses That Were Unlawfully Acquired."

---

[2] Class Counsel attempted (unsuccessfully) to communicate with Mr. Haviland by e-mail immediately after he electronically forwarded his Notice of Issuance of Communications to all counsel.

4

16.     The hearing that commenced on February 28, 2008 continued on for four more days: February 29, March 3, March 4 and March 5, 2008, which further delayed the trial of the underlying case of this litigation.  During the hearing, testimony was taken from numerous witnesses and argument was heard.

**C.     Findings of Fact from the five-day hearing**

17.     Mr. Haviland filed a draft of his Proposed Letter in the afternoon of February 25, 2008.  A copy of the Proposed Letter is attached as Exhibit "A" and incorporated herein.  Class Counsel filed its response to the proposed letter on February 28, 2008, prior to the start of the hearing.

18.     As further set forth below, the Proposed Letter contains several troubling statements by Mr. Haviland concerning the realities of the present litigation, which when viewed in light of Mr. Haviland's history in this matter, would likely serve to mislead the recipient Class Members at this vital time of the pending partial settlement.

19.     Mr. Haviland begins his Proposed Letter by stating that he is advising the Class Members of his departure from Kline & Specter and that he has created a "new" law firm known has The Haviland Law Firm, LLC.  However, neither Mr. Haviland's departure from Kline & Specter nor his creation of The Haviland Law Firm is a recent event.  To the contrary, there is no dispute that these events occurred at least eighteen (18) months prior.

20.     Additionally, Mr. Haviland's letter uses legal terminology that he does not define for the recipient Class Members.  For one, he fails to explain for the recipient Class Members the meaning of the term "Class Counsel."  His letter fails to advise that **all** Class Members, even the ones that Mr. Haviland represents in a personal capacity, have been and continue to be represented *solely* by Class Counsel with respect to the Bridgeport Fire Litigation.

21.     Mr. Haviland states that he is "personal counsel" for the Class Representatives, but he similarly does not define for the Class Members what "personal counsel" means. Nor does Mr. Haviland explain the vital distinctions between "personal counsel" and Class Counsel.

22.     The Proposed Letter contains additional elements that would further confuse the Class Members. The third sentence of the Proposed Letter states: "As you may recall, back in October 2001, I left the law firm of Levin, Fishbein, Sedran & Berman, at which I filed the original Bridgeport Fire lawsuit on behalf of several businesses, to go to Kline & Specter." First of all, the phrase "as you may recall" would serve to confuse and mislead the recipient Class Members, since the great majority of them had no relationship with Mr. Haviland at that time, and thus would not "recall" anything. Any relationship the great majority of Class Members would have had with Mr. Haviland, if at all, would have occurred while Mr. Haviland was employed as an attorney for Kline & Specter. Additionally, this sentence, in implying that changing law firms in 2001 did not affect his ability and authority to handle the Bridgeport Fire case, serves to suggest that changing law firms from Kline & Specter to The Haviland Law Firm also would not affect his ability and authority over this action. This is decidedly false. Kline & Specter, not Mr. Haviland, operates as Class Counsel for this litigation.

23.     The fourth and fifth sentences of the Proposed Letter state: "In the fall of 2006, you received a letter from Judge O'Neill in the Bridgeport Fire litigation indicating that Kline & Specter would continue to act as counsel for the class in this case. The same remains true today." Again, this would confuse and mislead the recipient Class Members because the vast majority of them never received this letter. The Court sent this letter to the six (6) Class Representatives **only**.

24.     The Proposed Letter also states that Mr. Haviland is sending it to Class Members

"with the Court's consent." The phrase "with the Court's consent" may suggest to some Class Members that this Court in some way approves and/or endorses Mr. Haviland's representation of these entities in their personal capacity, which is not the case.

25.     Finally, in the Proposed Letter, Mr. Haviland requests that the recipient Class Members call *him* at their convenience. This request juxtaposed with the misleading statement that he still represents certain Class Members who are the Class Representatives in this case would likely serve to delude the recipient Class Members into believing that they can contact Mr. Haviland if they have any legal questions about this litigation. This would be entirely improper. For all matters Bridgeport Fire related, the recipient Class Members must contact their appointed Class Counsel, *not* Mr. Haviland. In his request for telephone contact, Mr. Haviland fails to make this vital distinction.

26.     In sum, the misleading, confusing and improper statements contained in the Proposed Letter create a very real risk of disrupting this entire litigation, especially at this precarious moment of partial settlement. Mr. Haviland's stated motive for sending the letter, that he simply wishes to inform former clients of his change of law firms is not credible. Mr. Haviland left Kline & Specter for The Haviland Law Firm eighteen (18) months ago. Also, during approximately the same time, Mr. Haviland sent professional announcements declaring his establishment of The Haviland Law Firm. These facts serve to highlight Mr. Haviland's lack of sincerity.

27.     Furthermore, the issue of "professional announcements" is yet another example of Mr. Haviland's repeated misstatements to this Court. First, he testified that he and The Haviland Law Firm did *not* send any professional announcements. N.T. 2/29/08 (morning session) at 104-105. Later in the hearing, when Kline & Specter confronted Mr. Haviland with one of the

7

professional announcements he sent out, Mr. Haviland changed his story and stated that he did send out professional announcements. N.T. 2/29/08 (morning session) at 115-117

28.     Evidence was presented that Mr. Haviland improperly had attempted to engage in settlement negotiations on behalf of certain Class Members with various Defendants in this litigation *after* leaving Kline & Specter and, thus, *after* leaving Class Counsel.

29.     Specifically, Thomas B. Schmidt, III, Esquire, Counsel for Defendant, Erie Insurance Exchange, testified that Mr. Haviland, subsequent to leaving Kline & Specter, contacted him regarding a possible settlement of claims against Erie. Via a series of back and forth correspondence with Mr. Haviland, Mr. Schmidt questioned Mr. Haviland's authority to make settlement offers on behalf of any Class Member. Mr. Schmidt declined to engage in such settlement discussions. As Mr. Schmidt testified, "[E]ither [Mr. Haviland] represented the people he purported to represent, which meant that they were not behaving like class representatives were required to behave by the rules, or he didn't represent them, in which case, I didn't have anybody to negotiate with." N.T. 2/28/08 at 24.

30.     In addition, David J. Otis, Esquire, Counsel for Defendant, ARB Breadcrumbs, offered credible testimony that Mr. Haviland, again after having left Kline & Specter, telephoned him to discuss possible settlement with ARB.[2] N.T. 3/3/08 at 45-47.

31.     Frank Emmerich, Esquire, Counsel for Defendant, Pennsylvania American Water Co. (now dismissed), also testified that Mr. Haviland, after having left Kline & Specter, contacted him to discuss settlement on behalf of certain Class Members he purported to represent. N.T. 3/4/08 at 58-78.

---

[2] Mr. Haviland earlier testifed that it was Mr. Otis who initiated telephone contact. N.T. 2/29/08 at 75. Mr. Otis is an attorney of over thirty-five (35) years, with an impeccable ethics record. Mr. Haviland's testimony on this point, especially when viewed in light of the other evidence of Mr. Haviland initiating settlement discussions in this litigation, simply is not credible.

32.     Mr. Haviland himself testified that he made settlement offers or otherwise attempted to initiate settlement discussions on behalf of certain Class Members with various other Defendants, including Arkwright Boiler & Machinery, Universal Electrical Service Co., Scatton's Heating & Cooling Co., Shihadeh Carpet, C & J Robinson Co., Alpha Electric, Inc., Pittsburgh Bakery Co., Cadet Manufacturing, Pennsylvania-American Water Co. and the Montgomery County IDA. N.T. 2/29/08 (morning session) at 37-61.  Such offers, which were never accepted by any Defendant, demonstrate Mr. Haviland's disloyalty to the "class" entity.

33.     In addition, evidence was introduced showing that Mr. Haviland has made and continues to make numerous filings in this litigation, purportedly on behalf of the certain Class Members he represents as *personal* counsel, notwithstanding the undisputed facts that Mr. Haviland is *not* Class Counsel and had voluntarily withdrawn his Petition for Appointment as Class Counsel.  These filings[3] include purported Motions in Limine; responses to various Motions for Summary Judgment; and direct appeals of various Court Orders granting summary judgment with respect to certain Defendants.  Some of these documents reveal confidential attorney-client information.  Others further demonstrate Mr. Haviland's disloyalty to the Class (and thus his personal clients) by attacking Class Counsel's damages expert. N.T. 2/28/08 (afternoon session) at 63-71.

34.     Evidence was also presented that makes it clear that Mr. Haviland took certain Kline & Specter documents from Kline & Specter during the course of his sudden departure.[4] N.T. 2/29/08 (morning session) at 102-104.  However, what he specifically took, and whether these items included any client lists, is unknown.

35.     Evidence of Mr. Haviland's improper conduct and lack of credibility in other

---

[3] None of these filings are proper because none were filed by Class Counsel.
[4] Pursuant to his Employment Agreement with Kline & Specter, such lists are to remain the sole property of Kline & Specter.

class action litigation was introduced.  In seeking to supplant class counsel in a recent class action case in a Massachusetts federal court, Judge Saris, in striking Mr. Haviland's appearance as co-lead class counsel, stated on the record to Mr. Haviland: "[T]ruthfully, at this point, I don't trust you." In re: Pharmaceutical Industry Average Wholesale Price Litigation, 2008 WL 53278 (D.Mass. 2008).  Judge Saris' Opinion cited another federal court Opinion dealing with a class action, In re: Lupron Marketing and Sales Practices Litigation, 228 F.R.D. 75 (D.Mass. 2005), in which Mr. Haviland was found to have sending letters containing vital misrepresentations, misled the class about a proposed settlement.  To further this point, an associate attorney of Kline & Specter, Kila Baldwin, Esquire, credibly testified that Mr. Haviland, while still employed by Kline & Specter, engaged in the aforementioned blatantly unethical conduct in the Lupron case, which made her uncomfortable enough to leave the firm. N.T. 2/28/08 (afternoon session) at 106-109.

36.    Mr. Haviland's Proposed Letter in the instant action, which he peculiarly is seeking to send to all Class Members at a precarious time shortly after a proposed partial settlement was entered into by various parties but prior to the final fairness hearing on same, when viewed in light of the totality of the evidence exhibiting his improper behavior in this litigation as well as other class actions, brings into disbelief his stated motive that his only intent in sending the Proposed Letter is to inform former clients of his establishing of a "new" law firm, which was actually formed over eighteen (18) months ago.  Rather, the Proposed Letter represents Mr. Haviland's latest attempt to improperly disrupt this Class Action by soliciting Class Members to contact him about this litigation, and thereby risk irreparably harming the Class in order to advance his own interests.

## CONCLUSIONS OF LAW

37.     Mr. Haviland's Proposed Letter seeks to communicate about this litigation to parties already represented by counsel in this litigation, which is in violation Rule 4.2 of the Pennsylvania Rules of Professional Conduct.

38.     The Proposed Letter makes false and misleading statements regarding Mr. Haviland's legal services, which is in violation of Rule 7.1 of the Pennsylvania Rules of Professional Conduct.

39.     Mr. Haviland has made various misrepresentations to this Court, which raise questions concerning the law of perjury, 18 Pa.C.S.A. § 4902. These include misrepresentations that he never sent professional announcements regarding the formation of The Haviland Law Firm and that Mr. Otis initiated contact with him concerning settlement negotiations.

40.     Mr. Haviland has made unethical misrepresentations damaging to class members in other class action litigation, namely In re: Lupron Marketing and Sales Practices Litigation, 228 F.R.D. 75 (D.Mass. 2005).

41.     A court has the authority to issue an injunction restricting communications between a party and the class, provided that the court has laid out specific factual findings demonstrating the need for such an injunction. Pennsylvania Orthopaedic Society v. Independence Blue Cross, 885 A.2d 542 (Pa. Super. 2005); Gulf Oil Co. v. Bernard, 101 S.Ct. 2193 (1981). As detailed at-length *supra,* this Court has done so.

42.     Furthermore, pursuant to Pa.R.C.P. 1713, the Court has broad powers to issue Orders "for the protection of the members of the class."

43.     The Court is sensitive to First Amendment concerns raised by an injunction. However, the Court finds that Class Counsel has met its burden in showing that a greater injury

would result by refusing the injunction than by granting it. See id.

44.     Pursuant to the framework laid out by the United States Supreme Court in Gulf Oil and by the Pennsylvania Superior Court in Pennsylvania Orthopaedic Society, and the aforementioned Findings of Facts and Conclusions of Law made by the Court, the Court finds that the prerequisites justifying the issuance of a restraining order have been met.

45.     When an injunction of this type is issued, bond must be set pursuant to Pa.R.C.P. 1531.   The amount of the bond is within the trial court's discretion.   The trial court must determine the appropriateness of an amount for the bond on a case-by-case basis.   The bond shall be sufficient to cover only those damages that are *reasonably foreseeable,* not all possible damages. Broad & Locust Assoc. v. Locust-Broad Realty Co., 464 A.2d 506 (Pa. Super. 1983); see also Greene County Citizens United by Cumpston v. Greene County Solid Waste Authority, 636 A.2d 1278 (Pa. Cmwlth. 1994).   Based upon this framework, the Court finds that a bond in the amount of five thousand dollars ($5,000) is appropriate.

## ORDER

**AND NOW**, based upon the foregoing, it is hereby **ORDERED** and **DECREED** that:

1.  Mr. Haviland is barred from sending the Proposed Letter to **any** Class Member, other than those Mr. Haviland already represents in a personal capacity.

2.  Mr. Haviland is further barred from communicating with **any** Class Member, other than those he already represents in a personal capacity, without prior approval of the Court.

3.  Bond is set in the amount of five thousand dollars ($5,000).

BY THE COURT:

STEVEN T. O'NEILL          J.

Copy of the above Order  mailed
~~distributed on~~    5/20/08
to the following:
~~All counsel (distributed in open court)~~  Shanin Specter, Esquire
Henry F. Siedzikowski, Esquire
Neal Brendel, Esquire
Jackie McAllister
Prothonotary

Secretary

**Counsel for Class Plaintiffs are directed to serve a copy of this Order forthwith on all parties of record and to file with this Court a certificate of service indicating compliance with this directive.**

13

Exhibit "A"

Case# 2005-20924-2477 Received at Montgomery County Prothonotary on 03/14/2008 2:16 PM, Fee = $0.00



## THE HAVILAND LAW FIRM

WWW.HAVILANDLAW.COM

February __, 2008

**via first class mail**

Mr./Mrs. Smith
_____, PA

_____    *Bridgeport Fire Litigation*

Dear Mr./Ms. Smith:

This is to advise you that I have left the Kline & Specter law firm, one of the Court-appointed class counsel in the *Bridgeport Fire Litigation*. I have formed a new law firm, The Haviland Law Firm, LLC, which has offices at the below listed address. As you may recall, back in October 2001, I left the law firm of Levin, Fishbein, Sedran & Berman, at which I had filed the original *Bridgeport Fire* lawsuit on behalf of several businesses, to go to Kline & Specter.

In the Fall of 2006, you received a letter from Judge O'Neill in the *Bridgeport Fire* litigation indicating that Kline & Specter would continue to act as counsel for the class in this case. The same remains true today. With the Court's consent, however, I am writing to you to notify you that I continue to act as personal counsel to 5 of the 6 named representative plaintiffs who filed the original lawsuit, namely, Professional Flooring Co, Inc., Limerick Carpet & Flooring, Inc., Rose Line Inc., Salmons Industries, Inc. a/b/a Millie Switch, and Renu Electronics, Inc. I also continue to act as personal counsel to absent class member George Automotive, Inc.

I have sent this letter to you to ensure that you have been notified of my departure from Kline & Specter, and of my continued individual representation of certain plaintiffs in the case. If you have any questions, you may call me at your convenience.

Yours sincerely,

Donald E. Haviland, Jr.

DEH\qd

THE HAVILAND LAW FIRM, LLC
740 S. THIRD ST. · THIRD FLOOR · PHILADELPHIA, PA 19147 · PHONE: 215-609-4661 · FAX: 215-392-4400