UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>CLASS 1 ASTRAZENECA SETTLEMENT | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF THOMAS R. GLENN
REGARDING STATUS OF CLAIMS ADMINISTRATION ACTIVITIES
RELATED TO CLASS 1 SETTLEMENT WITH DEFENDANT ASTRAZENECA**

The undersigned, THOMAS R. GLENN states that:

1.      I am the Senior Vice President and Chief Operating Officer of Complete Claim Solutions, LLC. ("CCS"), the Claims Administrator in the above-captioned litigation (the "Action"). I am over 21 years of age and am not a party to the Action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I submit this Declaration to provide the Court with (a) the status of claims processing to date; and (b) an estimate of unanticipated settlement administration costs which will likely be incurred due to the appeal filed by Objector M. Joyce Howe.

**STATUS OF CLAIMS PROCESSING**

3.      As of January 22, 2009, CCS has received a total of 10,200 Consumer claims, including 410 claims postmarked after the March 14, 2008, deadline. To date, CCS has entered all claims into a segregated database (the "AstraZeneca Database") which represents approximately 65,061 aggregate administrations. This number is subject to CCS's claims administration review process.

1

**UNANTICIPATED SETTLEMENT ADMINISTRATION COSTS**

4.      Class Counsel asked CCS to describe unanticipated settlement administration costs that may be incurred in the event the administration process is disrupted and/or delayed due to the appeal.  By way of explanation, in a similar case, *In re Warfarin Sodium Antitrust Litigation,* 391 F. 3d 516 (3rd Cir. 2004) ("Warfarin Settlement"), an appeal suspended certain claims administration activities for approximately two years and, therefore, delayed final distribution to the consumer class members.

5.      Based on CCS's experience in the Warfarin Settlement, unanticipated costs (fees and out-of-pocket expenses) were incurred from the time between the Final Settlement Approval Order and the date the Order became final.  Such costs included maintaining a Post Office Box; maintaining a toll-free number for claimants to call with questions; training customer service representatives to answer additional telephone calls with appeals-related questions; processing additional, unanticipated correspondence (such as change-of-address forms and status requests from Class Members); responding to e-mails; keeping the Settlement website (for this Settlement, www.astrazenecaawpsettlement.com) up and running; revising the website and telephone Frequently Asked Questions (FAQs); and updating the pre-recorded toll-free telephone hotline script as necessary; warehousing documents, and performing various administrative tasks.

6.      As a result of the delay in the Warfarin Settlement, additional unanticipated costs (fees and out-of-pocket expenses) ran approximately $7,500 to $10,500 per month.

7.      Similarly, there was a single objector in the GSK Settlement.  Although claims administration activities continued, some resources were removed from the case in anticipation

of an extended appeals period. As a result, it is estimated that the project was extended for an additional 3-6 months resulting in estimated additional fees and out-of-pocket expenses of approximately $12,000 to $24,000.

8.  The single most significant cost component listed in ¶¶ 5-7 above, relates to telephone charges. Even though claims-processing operations could cease, CCS would continue its call-center operations. Indeed, the pendency of the appeal would make the continuation of this service all the more necessary as many claimants, particularly those who are elderly, naturally would have questions concerning the status of the Settlement during the period it might be "on hold."

9.  In addition, should CCS be instructed to stop all activities relating to the processing of claims while the appeal is pending, there would also be additional unanticipated costs associated both with winding down operations when the stop-work instruction comes in and with ramping up operations once the Final Order Approving Proposed Allocation of Settlement Funds and Approving Class Counsel's Application for Attorneys Fees, Reimbursement of Litigation Expenses and Compensation to Class Representatives is affirmed.

10. As a result of stopping claims administration activities and ramping up operations, as referred to in ¶ 9 above, there will be additional unanticipated costs (fees and out-of-pocket expenses) incurred for activities and items such as: answering additional telephone calls from Class Members; processing an increased number of undeliverable deficiency letters and award checks returned by the United States Postal Service; researching updated addresses for Class Members; incurring additional postage fees to re-mail deficiency letters and checks to updated addresses; reissuing a greater number of checks due to Class Members having moved or reissuing checks to next of kin for Class Members who will have died; performing additional audit and quality assurance activities; and, in general, performing additional claim administration tasks.

11.     Assuming an 8-month time period between when the stop-work instruction comes in and when CCS is instructed to ramp up operations, I estimate that the unanticipated costs for all additional work as described in ¶¶5-10, above, to be approximately $30,000 to $40,000, including time spent by CCS staff in preparing this declaration.

12.     I declare under penalty of perjury that the foregoing is true and correct.


      /s/ Thomas R. Glenn_____
      Thomas R. Glenn

February 4, 2009