## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | ) ) ) | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS ACTIONS RELATING TO TRACK TWO DEFENDANTS | ) ) ) | Hon. Patti B. Saris |

## REVISED OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENT TO APPEAR OF CLASS MEMBER PATRICIA WEATHERLY

Class member Patricia Weatherly ("Weatherly") of San Antonio, Texas hereby submits a Revised Objection to the proposed class action settlement.

## MEMBERSHIP IN CLASS

Weatherly is part of this action because between January 1, 1991 and March 1, 2008 she made percentage co-payments for certain drugs identified in the class membership drug list appended to the proposed settlement.

## NOTICE OF INTENT TO APPEAR

Patricia Weatherly gives notice of her intent to appear through local counsel (Richard F. Landrigan) at the Fairness Hearing scheduled for April 27, 2009.

**BACKGROUND**

On December 1, 2008 Weatherly filed an Objection to the Class Action Settlement raising several issues one of which was that the proposed class action settlement does not reimburse class members for any of their costs of obtaining medical records and billing records needed to substantiate their claims. Unless class members obtain their medical records and their billing records many of them are simply not going to be in a position to be able to document a claim for benefits. Additionally, many class members potentially would be dissuaded from making a claim for benefits because the costs of obtaining their medical records or billing records may exceed the benefit they derive from the proposed settlement. Given that healthcare providers charge fees to provide copies of medical records and bills, a settlement which does not reimburse class members for the costs of obtaining their medical records or billing records will undoubtedly discourage or prevent many claimants from filing a claim and will negatively impact the fairness and adequacy of any settlement. Weatherly, through counsel, suggested that at least some amount of settlement money, in addition to amounts paid for claims, should be set aside for reimbursement of class members for the costs of obtaining their medical records and billing records necessary to substantiate a claim pursuant to the proposed settlement.

In the December 16, 2008 Fairness Hearing the Court recognized as an important and valid issue the possibility that Class 3 consumers' costs for obtaining their records could exceed their potential recovery. The Court commented that expenditures for records could result in the unintended diminishment of the settlement amounts received by Class 3 members and queried Plaintiff counsel why the records cost had not been addressed in the proposed settlement. The response was that there is the option in the proposed settlement for Class 3 members to accept a

flat $35.00 with no records being produced. Weatherly, through counsel, pointed out that the proposed settlement provides for treble damages for Class A drugs and that recoveries could potentially exceed $35 by some measure but that those recoveries could be diminished significantly by the cost of records needed to document the claims.

Following the referenced colloquy, the Court focused on a remedy to the records cost issue. The Court discussed several possible mechanisms to address the issue of payment for records such as a flat fee ($150 was mentioned) or allowing a payment of a flat amount of up to perhaps $300 for claims filed without records but accompanied by a sworn affidavit.

## CURRENT STATUS

On December 16, 2008 Plaintiff counsel requested a postponement of the Fairness Hearing because of problems they were having in identifying (Class 1 and) Class 3 consumers. The Court set a new date for a Fairness Hearing for April 27, 2009 and requested that Plaintiff counsel and Weatherly's counsel file a joint proposal to address the records cost issue within thirty (30) days. Plaintiff counsel and Weatherly's counsel have not reached consensus on a proposal to address the issue of reimbursement for the costs of medical and billing records.

The issue of the cost of billing/medical records retrieval was the more salient of several issues raised in Weatherly's initial Objection filed in this matter. But Weatherly now understands that the issue of the sufficiency of notice to Class 3 members is of more fundamental importance. If notice to Class 3 members is inadequate then the potential number of Class 3 members will be held to a minimum. As a result, the percentage of Class 3 members that would be dissuaded from

filing a claim due to the cost of or lack of documentation is of less immediate concern. Assuming that a sufficient percentage of the potential Class 3 members was identified, the task of determining a fair method of records cost reimbursement would be the logical next step. At the time Weatherly filed her initial Objection on December 1, 2008 she was not aware of Plaintiff counsel's difficulties in identifying the Class 3 consumers.

At the Fairness Hearing on December 16, 2008 Plaintiff counsel stated to the Court that he did not know the potential size of Class 3. Based on conversations with Plaintiff counsel since that Hearing, it is clear that the identification of the potential Class 3 members is a work in progress. Plaintiff counsel's November 21, 2008 Report Regarding Notice recited that there had been 45,000 downloads of Class 3 claim forms. (See, Doc. No. 5703). The Report states that due to the complexity of the Track Two Settlement as compared to previous settlements, the prior estimates of time needed to assemble the class information in this Track Two Settlement were inaccurate. The same November, 2008 Report indicates that counsel has been waiting for ISHP members to supply data regarding Class 3 members, data that we understand to be names and addresses of Class 3 members – but importantly not billing information, possibly due to HIPPA privacy considerations.

Weatherly believes that it is possible to implement a process that successfully identifies a sufficiently large number of Class 3 consumers that could also serve as a mechanism for gathering billing records for those Class 3 members.

4

## SUMMARY OF ARGUMENT

As the guardian of the absent class members' interests, this Court has an independent

obligation, pursuant to Fed. R. Civ. P. 23 (e) (2) to determine whether the settlement agreement

is "fair, reasonable, and adequate." See, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620

(1997).


The proposed settlement agreement is unfair because its notice requirements create

arbitrary and unnecessary barriers to recovery. Class members may receive "up to $35", the

"Easy Refund Option", simply by certifying they paid percentage co-payments or, in the

alternative, they "can estimate what (they) paid and show that (they) made percentage co-

payments through receipts or bills" and "receive a partial refund of the total amount spent."

(Emphasis supplied). (See, Class 3 Notice, Exhibit 1). The records needed for the "Full

Estimation Refund Option" may be extremely difficult for some class members to obtain

however, especially for those members who purchased identified drugs between January 1, 1991

and March 1, 2008.  It is interesting that the proposed Class 3 Claim Form lists as methods of

acceptable proof of payment under the "Full Estimation Refund Option" any one of : (1)

receipts/canceled checks/credit card statements; (2) a doctor's letter indicating payment of part of

the cost of one of the drugs; (3) an explanation of benefits (EOB) from an insurer showing

payment of or obligation to pay percentage co-payments; (4) a notarized statement showing

payment of or obligation to pay percentage co-payments and the total of all percentage co-

payments for drugs during the time period; or, (5) pharmacy records showing percentage co-

payments. (See, Class 3 Claim Form, Exhibit 2.)  It is important to note that the method of proof

on the proposed Claim Form, number (4) providing for a notarized statement of co-payments, is

not mentioned in the Notice itself and only appears on the last page of a ten page Claim Form. It

is also notable that that the affidavit provision is not mentioned at all in Exhibit H, formerly

Exhibit K, attached to the Track Two settlement Agreement and Release. (See, Doc. No. 5133)

(See, copy attached, Exhibit 3). The same Exhibit H/K, with no mention of an affidavit option of

proof of payment, is referenced by the Court in its Order Granting Preliminary Approval of the

proposed settlement. (See, Doc. No. 5426). Were the affidavit option specifically approved by

the Court and prominently listed on the Notice and Claim Form as a method of proof, without

being intermingled within what are markedly cumbersome alternative methods at the end of a

multiple page claim form, Class 3 consumers would arguably be better encouraged to file "Full

Estimation Refund Option" claims.

The obstacles to recovering records of out-of-pocket expenses will compound the overall

problem that class action settlements, such as this one, historically have extremely low take-up

rates. Given that asking consumers to document their pharmaceutical purchases often acts as a

deterrent to consumer recovery, the proposed settlement should not require consumer Class 3

members to provide such documentation but rather should, as a reasonable alternative, require

only that Class 3 members indicate and certify by way of affidavit how much money they spent

on the relevant prescription drug. See, Nichols v. SmithKlineBeecham, No. 00-CV-6222, 2005

WL950616, at *8 (E.D. Pa. Apr. 22, 2005). Moreover, other methods of distribution have been

adopted that would allow class members to recover their records of out-of-pocket expenses

without the problems associated with claims-based distribution, such as In re Relafen Antitrust

Litig., 01-CV12239-WGY (D. Mass.), Order Granting Preliminary Approval of Settlement,

6

Certifying Class for Purposes of Settlement, Directing Notice to the Class and Scheduling Fairness Hearing, Nov. 24, 2004, (Doc.No.373 at 7-8), (See, Exhibit 4).

Because of the difficulty some class members will have in obtaining proof of their out-of-pocket expenses and the low take-up rate for claims-based class action settlements, it is reasonable to expect that many Class 3 members will not be able to recover their full "partial refund" of out-of-pocket expenses. Recovery for class members who are unable or unwilling to locate the necessary documentation will be limited to "up to $35" (per the Class Notice). The small amount of money allocated for those claimants unable or unwilling to obtain sufficient documentation renders the settlement unfair.

**A. The Failure to Inform This Court and Objectors about the Size of the Class and the Likelihood that Class Members Will Be Able to Submit Documented Claims Requires Rejection of the Settlement.**

To determine whether the settlement is fair, this Court must assess the value of the settlement to the class, based on the class's size and the strength of the Plaintiffs' case on the merits. Ballard v. Martin, 79 S.W.3d 838, at 847 (Ark. 2002). The Defendants' liability not only depends on the merits of the case, but on the number of potential Class 3 members coupled with an estimate of their average expense for the drugs listed in drug Classes A and B. Without some sense of the size of the class and the average class member's out-of-pocket expense, this Court cannot determine how much the settlement agreement will be worth to the class. Duhaime v. John Hancock Mutual Life Ins., 989 F. Supp. 375, 378 (D. Mass. 1997); Bowling v. Pfizer, Inc., 922 F. Supp. 1261, 1284 (S.D. Ohio 1996). Without knowing how valuable the settlement agreement is to Class 3, there is no way to determine whether the proposed settlement is fair,

reasonable, and adequate, or in the class's best interests. Unfortunately, the proposed Track Two

Settlement Agreement and Release (Doc. No. 5133) does not estimate how large the parties

believe the class size to be, nor does it provide an estimate of how many members of Class 3

may be able to document their out-of-pocket expenses, even though the parties, or at least the

Defendants, presumably possess that information.  As indicated above, at the recent Fairness

Hearing Plaintiff counsel stated that it did not know the size of the Class 3 membership, just as it

did in its November 21, 2008 Report Regarding Notice.  (Doc. No. 5703)   Without some

estimate of the number of class members and their average out-of-pocket expenses, this Court

cannot adequately evaluate whether the settlement agreement is fair. As an example, in Roberts

v. Bausch & Lomb,  No. CV-940C-1144-W (N.D. Ala.), the defendant set aside $67 million into

a fund for class members. Despite the size of the settlement fund, the amount of money that was

actually collected by the class was only $9.2 million.  Arguably, the value of the fund to Class 3

members in this case depends entirely on how many Class 3 members take advantage of the

settlement.


        The number of class members and the amount of their out-of-pocket expenses is

particularly important to know given the traditionally low rates at which class members take

advantage of settlements. As noted above, claims-based settlements in class actions typically

result in low take-up rates. See, eg. Strong v. Bellsouth Telecomm., Inc., 173 F.R.D. 167, 169

(W.D. La. 1997), aff'd, 137 F.3d 844 (5th Cir. 1998) (4.3% of class members participated in

claims process offering payments of $12 to $20). Even when class members are offered

significantly higher minimum payments than those in the settlement agreement here,

participation remains low. See, Sylvester v. Cigna Corp., 369 F. Supp. 2d 34, 44 (D. Me. 2005).

Take-up rates in pharmaceutical cases are generally low because consumers' recollection of their pharmaceutical purchases, on multiple dates over an extended period as is the case here, is much poorer than with other consumer products. Given the added difficulty that many Class 3 members will have recovering documentation of their out-of pocket expenses it is reasonable to expect that take-up rates of Class 3 members in this case will be very low.

## B. The Proposed Settlement Agreement Does Not Set Forth Clear Guidelines for Class 3 Members Proving their Out-of-Pocket Expenses.

According to the proposed notice, Class 3 members in this proposed settlement can recover the "Full Estimation Refund Option" "partial refund" of their percentage co-payments for the listed drugs only if they can prove their out-of-pocket expenses. The notice does not set forth how class members might do that beyond indicating that claimants "can estimate what (they) paid and show that (they) made percentage co-payments through receipts or bills".  As indicated above the proposed Class 3 Claim Form does mention a simplified affidavit as sufficient proof of claim but that possible approach is not included in the required claims documentation approved by the Court in its Order Granting Preliminary Approval of the proposed settlement. (See, Doc. No. 5426). The proposed settlement agreement does not outline meaningful or practical ways for Class 3 members to recover required claims documentation records for the period January 1, 1991 to March 1, 2008 short of each claimant attempting to recover his or her expenditure records, physician records, EOBs, or pharmacy records.

9

**C. The Proposed Notice fails to adequately inform Claimants of the Amount of their Potential Award**

In her initial Opposition (paragraph 5) Weatherly argued that the proposed settlement fails to inform with any specificity what Class 3 members can expect to receive from the settlement. The proposed Notice only states that some class members will get "up to $35.00" and that alternatively claimants "can estimate what (they) paid and show that (they) made percentage co-payments through receipts or bills" and "receive a <u>partial refund</u> of the total amount spent." (Emphasis supplied). The notice also states that if there is not enough money left over to pay the full amount of a claim, then the class member gets a pro rata share. Nowhere in the proposed settlement or in the Notice is the term "partial refund" explained, defined or quantified. As a result, and in conjunction with the reasons stated above with respect to the acquisition and cost of billing records and the determination of the size of Class 3, the class member is simply left without enough information to make an informed decision of whether the proposed settlement is fair, reasonable, or adequate. The Class 3 member specifically does not have sufficient information to decide whether to invest in the acquisition of billing records and whether the "partial refund" that may result could be more than the cost of those records. The Notice should state with specificity the range of potential awards based on definable factors or, as suggested above as a reasonable alternative, provide for a sufficiently high flat award without records so that offsetting cost of records is much less of an impediment to a fair settlement, and serves as a reasonable alternative for a claimant.

10

**D. A Better Means of Disbursing Funds to Class Members Is Available and Has Been Used Before**

To ensure that Class 3 members actually benefit in a significant number from the settlement fund in this case, any settlement agreement should provide for direct payment to Class 3 members based on billing records subpoenaed from their individual health insurers (ISHPs). The ISHPs have already been tasked with supplying the names and addresses of Class 3 members that they have in their data. In addition, any settlement agreement should provide for direct payment to Class 3 members based on billing records subpoenaed from several of the leading pharmacies. A similar approach to class claims identification has been used with great success in another class action settlement in this District, specifically the In Re: Relafen Antitrust Litigation, 01-CV-12239-WGY (D. Mass.). In Relafen, the plaintiffs (who were represented incidentally by Plaintiff counsel in the instant case) alleged that the defendant GlaxoSmithKline used illegal tactics to prevent generic versions of the brand-name drug Relafen from entering the market, thereby causing consumers and other purchasers of the drug to pay too much. The parties settled the case for $75 million; $50 million was allocated to a nationwide sub-class of third-party payors and $25 million was allocated to a nationwide sub-class of consumers. A traditional notice plan was used that included a website and publication in a variety of news sources. In addition, the Relafen Court authorized the plaintiffs to issue subpoenas to the ten (10) largest chain drug stores and the five (5) largest mail order pharmacies in the country for access to the records containing the contact and expenditure information for consumer class members. Using that information, the claims administrator provided direct payment to Relafen consumers. In Relafen, 2,761 class members submitted claims in response to the traditional notice. Not surprisingly, their average claim was high, about $394.96. However, an additional 250,905 class

members, nearly 92 times more than those who submitted claims, were identified through the pharmacy subpoenas and were paid an average of $59.03. Affidavit of Thomas R. Glenn, Allocation and Distribution of the Net Settlement Funds, (Relafen Doc. 512), (See, Exhibit 5).

In Relafen, the entire amount of the consumer portion of the settlement funds was able to be distributed in full. Weatherly believes that a plan akin to the Relafen direct payment plan should be used here in conjunction with the traditional publication notice plan. A direct payment plan would help address some of the deficiencies of the settlement agreement outlined above.

The present case differs in some respects from Relafen.  In this case many billing records are not retrievable from pharmacies, given that here many drugs were dispensed or administered by physicians. But it seems notably more efficient and effective that a significant percentage of the Class 3 potential members, along with their billing/records histories, can be identified and obtained directly from the files of the ISHPs.  If a sufficiently large number of Class 3 members' records could be obtained from the ISHPs and from pharmacies, the issue of records cost reimbursement is less of a factor. If the ISHPs and pharmacies are reluctant to provide the records then the method used in Relafen to identify members and assemble records, namely subpoenas, is a viable option with a proven record of effectiveness. If fairness, reasonableness and adequacy are the mandate of FRCP 23(e)(2), any methodology with a demonstrable impact of increasing the number of Class 3 members who can participate in this settlement should be given serious consideration. It is particularly striking that in Relafen the consumer class was increased 92% through the subpoena process over the number who submitted claims in response to traditional notices. We anticipate that a similar increased response can result in this case:

12

**E. The Allocation of Funds in the Proposed Settlement of Consumer Class 3 Claims is Inadequate**

The proposed Track Two Settlement Agreement and Release (Doc. No. 5133, pg. 21) allocates $21,875,000, or about 17.5 percent of the total $125 million settlement, to the "Consumer Settlement Pool". Parenthetically, in <u>Relafen</u> the consumer class allocation was one-third (1/3) of the total settlement amount, in a case involving only one drug. Of the amount allocated in this case to the Consumer Settlement Pool, $15,375,000 is allocated for claims associated with Class A drugs, leaving $6,500,000 for Class B drug claims. Those amounts are reduced by attorneys' fees and costs. If the size of consumer Class 3 in the present case has not been quantified, the Court has not been provided sufficient information to determine the adequacy of the compensation to potential class members' claims.

Without having resorted to an exhaustive statistical examination to prove the potential size of Class 3, some statistical facts may provide insight to the discussion and possible outcomes. One half of one percent of the total of US households (estimated currently at 111 million) amounts to 555,000 households. Assuming that number as a reasonably small base for calculating the potential number of possible Class 3 claims in this case and applying the proposed $35 per claim recovery amount without benefit of records, the total amount is $19,425,000, a figure which is fairly close to the $21,875,000 settlement proposal. However, if the number of documented claims – in excess of the nominal $35 recovery – rises to a reasonably high number through adequate notice and through the systematic recovery of billing information, the proposed settlement amount may be notably deficient in relation to potential claims.

Another factor that may indicate that the proposed settlement figure is inadequate is that the recoveries for drugs listed on the Class A drug list are trebled and the number of potential Class A drug claims may not have been adequately gauged. For example, Defendant Amgen manufactures Class A drugs Epogen and Neupogen. Amgen's 2002 annual report lists Epogen sales (within the treble damage period of December 1997 to December 2003) as $2.6 billion and Neupogen sales at $1.8 billion. Sales of those two drugs from 1997 through 2001 are only slightly lower each year. The treble damage time period is six years. Reasonable hypothesis leads to the conclusion that the total of sales against which treble damages could apply is significant, a factor which further highlights the potential inadequacies of the settlement.

In this case, applying the 555,000 multiplier based on one-half of one percent of US households discussed above to flat fee awards of $100 to $150 per claimant, the Consumer Settlement Pool total in this case would have to rise to between $83,250,000 and $166,500,000 to adequately compensate that inferred number of claims.

As another example, based on U.S. Census Bureau statistics for 2007, approximately 85% of Americans, or 256 million out of a total 2007 U.S. population of 300 million, had some form of health insurance. If only one half of one percent of that number (1.28 million) of insured individuals are potential Class 3 claimants and submit claims for the current $35 flat fee the claim total would be around $45 million. If the flat award were raised to $100 to $150 per claimant without documentation, based on 1.28 million claimants the claim total would be between $128 million and $192 million.

Assuming that the Class 3 members are eventually identified in sufficient numbers to indicate that a fair percentage of Class 3 consumers can be notified, we believe that the proposed settlement amount allocated in the Consumer Settlement Pool will be insufficient to fairly compensate the potential class members.

**F. Alternative Solutions**

If retrieval of records for the long period of years encompassed in the proposed settlement is determined to be impractical, a fall back approach may be needed to adequately compensate Class 3 members with a flat fee, albeit higher than the $35 proposed. If the average cost of medical/billing records retrieval may be estimated at around $100 to $150 per claimant, perhaps an award of $100 to $150 per claimant without documentation provides a more equitable result. The Court mentioned a higher amount, a $300 flat award figure award, during the colloquy on Weatherly's initial Objection on December 16, 2008, and although that amount would certainly serve to more fairly, reasonably, and adequately compensate consumer Class 3 members who elect not to submit documentation of their claims it may be beyond the range of an acceptable compromise settlement amount.

Such adjustments are not without precedent. For example, in the settlement of a class action case in state court in Illinois in 2007, where considerations very similar to those in this case were in issue, the award to consumer class members without documentation of their Paxil purchases was increased from the originally proposed $15 to $100 per claimant. Hoormann, et al. v. SmithKline Beecham, Third Judicial Circuit, Madison County, Illinois, Case No. 04-L-715.

Also in Hoormann a cap of $300,000 on consumer claims was removed in the final settlement making available more payments to a larger portion of potential claimants.

We suggest further that if the documentation of claims through billing records remains a part of the claims process, there still has to remain open an option for those who are able to document claims to be able to recover at least part of the cost of their medical/billing records at a figure of between $100 to $150 per claimant, in addition to "a partial refund of the total amount spent" as stated in the current proposed notice.

## CONCLUSION

Weatherly is cognizant of the fact that these proposals add a significant alternative direction to the settlement of Class 3 claims. However, given the lack of specificity we see in the identification of potential Class 3 members, given the time frame encompassed in this settlement, given the difficulty of retrieving records for that long time period, given the award of treble damages to a fair percentage of possible claims, and given the very low flat fee proposed for settlement of what could reasonably be a far higher average claim, we conclude that the consumer Class 3 settlement as proposed is inadequate. We suggest that a reasonable alternative is to award, based on a notarized statement, a flat amount of $100 to $150 per claimant who elect not to submit documentation. We suggest that the pool of potential Class 3 members can be increased significantly through subpoenas of records for ISHPs and from pharmacies, to include billing records that will substantiate claims and which will obviate the need for an additional award of many records costs. We suggest that the funds allocated to the Consumer Settlement Pool are inadequate to compensate an expected significant increase in the number of Class 3

claimants and that the Pool should be increased to between $83,250,000 and $166,500,000 to be sufficient to compensate Class 3 flat fee awards of $100 to $150 per claimant. Parenthetically, we also do not see an adequate mechanism spelled out in the proposed settlement for disposition of funds that are not distributed through the claims process, if any, such as return of unclaimed funds to the Consumer Settlement Pool to be used to increase flat fee awards or the award of a *cy pres* distribution.

For each of the reasons stated above, the Court should reject the proposed class action settlement in its entirety as not being fair, reasonable, and adequate. Weatherly reserves the rights to withdraw, revise, add to, and expand upon her objections and call witnesses and experts in support thereof.

Respectfully submitted
Patricia Weatherly,


**/s/ Richard F. Landrigan**

Richard F. Landrigan, Esquire
BBO# 284960
COSTELLO & LANDRIGAN
421 Highland Avenue
Somerville, MA  02144
Tel. (617) 625-4322


Dated: February 23, 2009

## CERTIFICATE OF SERVICE

     I hereby certify that I, Richard F. Landrigan, an attorney, caused a true and correct copy of the foregoing, **REVISED OBJECTION TO CLASS ACTION SETTLEMENT AND NOTICE OF INTENT TO APPEAR OF CLASS MEMBER PATRICIA WEATHERLY** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 23, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                            **/s/ Richard F. Landrigan**

                                            Richard F. Landrigan

# EXHIBIT 1

# TO REVISED OBJECTION

Authorized by the U.S. District Court for the District of Massachusetts

# If you made a Percentage Co-Payment for Certain Drugs, from January 1, 1991 to March 1, 2008, you may be able to get at least $35 back.

## Hundreds of drugs for cancer, HIV, asthma, allergies, infections, inflammation, pain, gastrointestinal, lung and blood issues, and many other conditions are included.

There is a proposed class action settlement with several drug manufacturers concerning approximately 200 drugs. These drugs are used for the treatment of many medical conditions and they are often, but not always, injected in a doctor's office or clinic.

## Can I Get Money Back?

- You can get a refund if you paid a *percentage co-payment* for any of the covered drugs from January 1, 1991 through March 1, 2008. A percentage co-payment varies with the cost of the drug. You cannot get a refund if you paid a flat co-payment.

## How Much Can I Get Back?

Approximately $21.8 million will be paid to consumers who file valid claims.

- **You can get up to $35** simply by certifying you paid percentage co-payments, or

- If you can estimate what you paid and show that you made percentage co-payments through receipts or bills, you can receive more money. **For some of the drugs, you can get three times the percentage co-payment.**

*Your legal rights are affected even if you do not act.*
*Read this Notice carefully.*

# 1. What Is This Notice About?

- You received this Notice because you requested it after seeing information about this case in a publication or elsewhere, or because your name appeared in the records of a health insurer as a potential class member.

- There is a Proposed Settlement of a class action lawsuit involving several drug manufacturers and approximately 200 drugs. (Defendants are listed in Question 3.)

- This lawsuit is not about whether these drugs are safe or effective. This lawsuit is about the amount that you were charged for the drugs. The class action claims that customers paid too much for the drugs.

- The drug manufacturers have agreed to pay $125 million to settle the class action. Approximately $21.8 million will be available to pay consumer claims.

- If you made a percentage co-payment for the covered drugs, you can get money back. A percentage co-payment varies with the cost of the drug. A flat co-payment never varies; it's always the same no matter how much the drug costs.

- You can obtain a complete copy of the Settlement Agreement by visiting www.AWPTrack2Settlement.com.

# 2. What Is The Lawsuit About?

The Average Wholesale Price ("AWP") is used to set reimbursement amounts that are paid by a) Medicare and its beneficiaries, b) private health insurers, and c) consumers making percentage co-payments under private health insurance plans. The lawsuit claims that Defendants reported false and inflated AWPs for the drugs covered in this Proposed Settlement. The Defendants deny any wrongdoing, and the Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated.

The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, Docket No. 01-CV-12257-PBS, MDL No. 1456.

# 3. Who Are The Defendants?

The Defendants in the case are Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C.

# 4. How Do I Know If I Am Included In The Proposed Settlement?

You are part of the Proposed Settlement if you made, or are obligated to make, a percentage co-payment:

- Through a private health insurance plan for covered drugs listed in Attachment A from January 1, 1991 through March 1, 2008.
- Under Medicare Part B for any of the covered drugs listed in Attachment A from January 1, 1991 through January 1, 2005.

A spouse of a deceased class member who made such a co-payment or a legal representative of a deceased class member's estate may file a claim.

Excluded from the Proposed Settlement are (1) the Released Companies (Defendants and certain related entities as defined in the Settlement Agreement); (2) all hospitals, clinics, physicians, or physician practice groups, or other health care provider or group of providers, that purchased drugs manufactured, marketed, sold, or distributed by a Released Company, and that (a) administered, dispensed, or prescribed such drugs to a consumer and (b) billed a consumer, TPP, or ISHP for such drugs. Additionally excluded from the Proposed Settlement are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment; and certain other independent settling health plans

**You are not a member of a Class if you made flat co-payments, if insurance paid all of your co-payment, or if you were never obligated to make a co-payment at all.**

**IMPORTANT:** *This is not a bill or a collection notice. The Court is not suggesting, requesting or requiring that you pay your doctor or pharmacist now or that you are obligated to do so.*

## 5. What Do I Need To Do To Get A Payment?

You received this Notice because you requested it after seeing information about this case in a publication or elsewhere, or because a health insurer's records indicate you may have made percentage co-payments for some of the drugs at issue in this case. You should review the attached list of covered drugs. If you paid a percentage co-payment for any of them between January 1, 1991 and March 1, 2008, you have two options to get a payment:

1) You may sign the attached claim form under penalty of perjury, stating that you paid a percentage co-payment for at least one of the covered drugs during the Class Period. You will receive a payment of up to $35;

**OR**

2) You may complete the attached claim form and provide documentation of your percentage co-payments for the covered drugs during the Class Period, and receive a partial refund of the total amount you spent. Please see Question 6 for more details on how the amount will be determined.

*Note:* If you made percentage co-payments under Medicare Part B between January 1, 1991 and March 1, 2005, you need another claim form. Call 1-877-465-8136 for a form to fill out for a refund of these percentage co-payments.

## 6. How Are Payments Determined?

If you opt to submit records of your co-payments instead of opting for a refund of up to $35, the Claims Administrator will calculate your claim amount. It will be based on the information you provide about your total out-of-pocket co-payment obligations under private insurance for all the covered drugs during the Class Period.

Your reimbursement will be calculated by adding three amounts:

- Co-payment obligations for drugs identified as Class A Drugs from December 1, 1997 through December 31, 2003 multiplied by a factor of three (3x);

- Co-payment obligations for Class A Drugs outside of this time period (with no multiplication factor); and

- Co-payment obligations for the other covered drugs called Class B Drugs during the entire Class Period (with no multiplication factor).

The sum of these three figures will be your "Total Recognized Claim". If there is enough money based on the number of claims received, your payment will be 100% of your Total Recognized Claim. If there is not enough money to pay all consumers 100% of their Total Recognized Claims, each consumer's claim will be reduced proportionately.

## 7. What If I Do Not Want to Be Included In The Proposed Settlement?

If you do not want to be in the Proposed Settlement and you want to keep the right to sue Defendants about the same claims on your own, you must take steps to get out of the lawsuit. This is called excluding yourself.

By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against Defendants about the claims in this lawsuit.

If you exclude yourself from the Settlement Classes, you will not be able to file a claim for money and you will not be in the Proposed Settlement.

To exclude yourself from the Class, you must send a letter signed by you that includes all of the following:

- Your name, address, taxpayer identification number, telephone number and fax number (if any);

- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456;

- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*

- A statement that you want to be excluded from the Settlement Classes.

Your exclusion letter must be mailed first class, **postmarked no later than December 1, 2008,** to: AWP Track 2 Settlement Administrator, P.O. Box 951, Minneapolis, MN 55440-0951.

Please remember that you cannot exclude yourself by calling or by sending an email.

## 8.  May I Object To, Or Comment On, The Proposed Settlement?

Yes. If you have comments about, or disagree with, any aspect of the Proposed Settlement, you may express your views to the Court. You must do this in writing. Your written response should include:

- Your name, address, telephone number, a brief explanation of your reasons for objection, and
- The case number (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456).

The document **must** be signed to ensure the Court's review. The response must be filed with the Court at the following address on or before **December 1, 2008**: Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210 and served on Counsel for the Parties on or before **December 1, 2008** at the following addresses:

| Counsel for the Class | | Counsel for the Track 2 Defendants |
|---|---|---|
| Steve W. Berman<br>Hagens Berman<br>  Sobol Shapiro LLP<br>1301 Fifth Avenue<br>Suite 2900<br>Seattle, WA 98101 | Steven F. Barley<br>Hogan & Hartson, LLP<br>111 S. Calvert Street<br>Suite 1600<br>Baltimore, MD 21202 | James P. Muehlberger<br>Shook, Hardy & Bacon, LLP<br>2555 Grand Boulevard<br>Kansas City, MO 64108 |

In addition, your document must clearly state that it relates to the "Track 2 Settlement." If you file or present an objection, you will be subject to the jurisdiction of the Court.

## 9.  Do I Have A Lawyer Representing My Interests In This Case?

Yes. The Court has appointed the following law firms to represent you and other Settlement Class Members:

| | |
|---|---|
| Hagens Berman Sobol Shapiro LLP<br>www.hbsslaw.com<br>1301 Fifth Avenue, Suite 2900<br>Seattle, WA 98101 | Spector Roseman & Kodroff, PC<br>www.srk-law.com<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103 |
| Wexler Toriseva Wallace LLP<br>www.wtwlaw.us<br>55 W. Monroe, Suite 3300<br>Chicago, IL 60603 | Edelson & Associates LLC<br>45 West Court Street<br>Doylestown, PA 18901 |

These lawyers are called Class Counsel. You won't be charged personally for these lawyers. Class Counsel will ask the Court to award them a fee of up to 33 1/3% plus interest and litigation expenses. You don't need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (see Question 10). Hiring a lawyer to appear for you in the lawsuit will be at your own expense.

## 10. When And Where Will The Court Decide On Whether To Grant Final Approval Of The Proposed Settlement?

The Court will hold a Hearing on December 16, 2008 at 2:00 p.m. to consider whether it is fair, reasonable and adequate.   At the Hearing, the Court will also consider whether to approve the Proposed Settlement; the request for attorneys' fees and expenses; and any comments or objections. You are not required to attend, but may do so at your own expense.

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance must include:

- Your name, address, telephone number, signature;
- The name, and number of the lawsuit (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456);
- State that you wish to enter an appearance at the Final Approval Hearing; and
- Any documentation in support of such opposition.

Your Notice of Appearance **must** be filed with the Court on or before **December 9, 2008** and served on Counsel by **December 9, 2008.**  You cannot speak at the Hearing if you previously asked to be excluded from the Proposed Settlement Class and are not submitting a Claim Form now. The Notice of Appearance must be filed with the Court and served on Counsel at the addresses set forth above in response to Question 8.

## 11.  Where Do I Obtain More Information?

More details and all other legal documents that have been filed with the Court in this lawsuit are available. They can be viewed and copied at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the AWP Track 2 Settlement website at www.AWPTrack2Settlement.com
- Call toll-free 1-877-465-8136
- Write to:  AWP Track 2 Settlement Administrator
            P.O. Box 951
            Minneapolis, MN 55440-0951

DATED: July 2, 2008                                **BY ORDER OF THE COURT**

# CLASS MEMBERSHIP DRUG LIST

## CLASS A DRUGS

| | | |
|---|---|---|
| Anzemet (injection & tablets) | Ferrlecit | Neulasta |
| Aranesp | InFed | Neupogen |
| Epogen | | |

## CLASS B DRUGS

| | | |
|---|---|---|
| **A** | Ativan | Cipro / Ciprofloxacin hydrochloride |
| AccuNeb | Azmacort | Cisplatin |
| Acetylcysteine | **B** | Claforan |
| Acyclovir sodium | Bebulin | Cleocin T / Clindamycin phosphate |
| Adenosine | Bioclate | Copper trace / Cupric chloride |
| Adriamycin PFS/RFS | Bleomycin sulfate | Cromolyn sodium |
| Adrucil | Brevibloc | Cytosar-U / Cytarabine |
| Aggrastat | Buminate | **D** |
| Albuterol sulfate | Bupivacaine | Depo provera / Medroxyprogesterone acetate |
| Alcohol injection | **C** | Depo-testosterone / Testosterone cypionate |
| A-methapred | Calcijex | Dexamethasone acetate / Dexamethasone sodium / Dexamethasone sodium phosphate |
| Amikacin sulfate | Calcimar | Dextrose / Dextrose sodium chloride / Ringers lactated with dextrose |
| Aminocaproic acid | Camptosar / Irinotecan hydrochloride | Diazepam |
| Aminosyn / Aminosyn II / Amino acid | Carbocaine / Mepivicaine | Dicarbazine (dtic – dome) |
| Amphocin / Amphotericin B | Cefizox | Diltiazem hydrochloride |
| Aristocort / Aristospan | Chromium tr meta / Chromic chloride | Dopamine hydrochloride |
| Aromasin | Cimetidine hydrochloride | Doxorubicin / Doxorubicin hydrochloride |

## CLASS B DRUGS (continued)

| | | |
|---|---|---|
| DTIC Dome | Humate-P | **M** |
| **E** | Hydromorphine | Magnese chloride |
| Eligard | **I** | Magnesium sulfate |
| Ellence / Epirubicin HCL | Idamycin / Idarubicin hydrochloride | Mannitol |
| Enalaprilat | Imipramine HCL | Marcaine |
| Enbrel | Intal | Medrol / Methylprednisolone |
| Epinephrine | Ipratropium bromide | Metaproterenol sulfate |
| Erythromycin / Erythromycin base | Iveegam | Methotrexate sodium |
| Estradiol | **K** | Metoclopramide |
| Etoposide | Ketorolac / Ketorolac tromethamine | Midazolam hydrochloride |
| **F** | Kineret | Mithracin |
| Famotidine | Koate – HP | Monoclate / Monoclate-P |
| Fentanyl citrate | Kogenate | Mononine |
| Fluorouracil | **L** | Morphine sulfate |
| Fluphenazine HCL | Labetalol | **N** |
| Furosemide | Lasix | Nadolol |
| **G** | Leucovorin calcium | Nalbuphine |
| Gamimune N / Gammagard / Gammagard S/D / Gammar / Gammar P.I.V. | Leukine | Nebupent |
| Gentamicin sulfate | Levofloxacin | Neosar / Cyclophospamide |
| Gentran / Gentran NACL | Lidocaine hydrochloride | Neostigmine methylsulfate |
| Glycopyrrolate | Liposyn II / Fat emulsion | Novacaine / Procaine |
| **H** | Lorazepam | Novantrone |
| Helixate / Helixate FS | Lovenox | **O** |
| Heparin / Heparin lock flush / Heparin sodium | Lyphocin | Osmitrol |

## CLASS B DRUGS (continued)

| P | S | V |
|---|---|---|
| Pancuronium bromide | Sodium acetate | Vancocin / Vancocin HCL / Vancomycin / Vancomycin HCL |
| Pentam / Pentamidine isethionate | Sodium chloride | Verapamil HCL |
| Perphenazine | Solu-cortef / Hydrocortisone sodium succinate | Vinblastine sulfate |
| Phenylephrine | Solu-medrol | Vincasar / Vincristine / Vinscristine sulfate |
| Potassium acetate / Potassium chloride | Succinylcholine chloride | **W** |
| Prograf | **T** | Water for injection bacteriostatic |
| Promethazine | Taxotere | **Z** |
| Propranolol HCL | Thioplex / Thiotepa | Zemplar |
| Propofol | Tobramycin sulfate / Tobramycin / sodium chloride | Zinc chloride |
| **R** | Toposar | |
| Ranitidine HCL | Travasol / Travasol with dextrose | |
| Recombinate | Trelstar / Triptorelin pamoate | |

# EXHIBIT 2

# TO REVISED OBJECTION

1-10

OFFICIAL USE ONLY

Must be Received or
Postmarked On or
Before January 31, 2009

# AWP TRACK 2 SETTLEMENT
## CLASS 3 CLAIM FORM

## FOR PAYMENTS MADE OUTSIDE OF MEDICARE PART B

### How to Apply for a Payment from the Proposed Settlement

If you would like to submit a claim in the Settlement, complete this form and
mail it to the address below.

**YOUR CLAIM MUST BE RECEIVED OR POSTMARKED ON OR BEFORE JANUARY 31, 2009.**

Your claim should be mailed to:        AWP Track 2 Settlement Administrator
P.O. Box 951
Minneapolis, MN 55440-0951

## Section A: Claimant Identification

Please provide us with the following information related to the individual who was prescribed one or more of the Class Drugs. This person is referred to as the "Claimant."

Claimant's First Name:

Claimant's Last Name:

Address:

City:                                                         State:          Zip Code:

Daytime Telephone Number:

## Section B: Claimant Representative Information

If you are the Claimant, do not complete this section. Complete this section only if you are a representative (such as a spouse, guardian, executor or personal representative) filing this claim on behalf of the Claimant listed above. Please provide YOUR name, relationship to the Claimant, and YOUR contact information in the spaces provided below.

Contact Name:                                               Relationship to Claimant:

Address:

City:                                                        State:      Zip Code:

Daytime Telephone Number:

TKC3

2-10

## Section C: Should I file a Claim Form?

Please answer the following questions in order to determine if the Claimant is eligible for cash from the Proposed Settlement:

1. Were you, or the Claimant that you are filing on behalf of, prescribed any of the drugs listed in Attachment A of the Notice during the period from January 1, 1991 to March 1, 2008?  ☐ Yes  ☐ No

2. Did you, or the Claimant that you are filing on behalf of, pay a percentage of the cost of the drug(s)?  ☐ Yes  ☐ No

   Note: If you paid a flat co-payment (i.e., your out-of-pocket expense was always the same for every drug, like a $10 or $25 co-pay) you did not pay a percentage of the cost.

If you answered **No** to <u>either</u> of the questions above, you are not eligible to receive any benefits from this Proposed Settlement. You may disregard this Notice and Claim Form. If you answered **Yes** to both of the questions above, you should fill out Section D, Section E and Section G below.

## Section D: Choose a Refund Option – You Have Two Options

Please check **_only one_** of the boxes below in order to choose your refund option:

☐ **Option 1:** I choose the **EASY REFUND** option. I understand that I will receive a payment of up to $35.00 from the Settlement and that I will not be required to provide additional documentation unless requested by the Claims Administrator **AND** you must sign and date the Claim Form in Section G on page 10 and mail it to the Claims Administration at the address indicated on page 10.

☐ **Option 2:** I choose the **FULL REFUND** option. I understand that in order to receive a full refund I must provide one form of proof of a percentage co-payment for each separate Class Drug listed on the charts in Section E for which I am seeking a refund. The list of acceptable forms of proof are listed below in Section F under "Option 2: FULL REFUND." Please include all proof(s) of payment when submitting this Claim Form.

## Section E: Drug Purchase Information - Fill out ONLY if you chose Option 2 – FULL REFUND

### Instructions for Completing the Out-of-Pocket Expenditures on Class A & B Drugs Chart

In the Out-of-Pocket Expenditures on Class A & B Drug Charts below, please provide the total amount paid (not monthly) by the Claimant, or the amount the Claimant is obligated to pay, for each of the drugs listed during the time periods in the chart.

- Print clearly
- Do not include flat co-payments in the total amounts paid
- Enter the full amount paid, not a monthly amount



3-10

## Out-of-Pocket Expenditures on Class A Drugs

| Drug Name | Total Amount Paid From January 1, 1991 to November 30, 1997 | Total Amount Paid From December 1, 1997 to December 31, 2003 | Total Amount Paid From January 1, 2004 to March 1, 2008 |
|---|---|---|---|
| Anzemet (injection & tablets) | $ | $ | $ |
| Aranesp | $ | $ | $ |
| Epogen | $ | $ | $ |
| Ferrlecit | $ | $ | $ |
| InFed | $ | $ | $ |
| Neulasta | $ | $ | $ |
| Neupogen | $ | $ | $ |

## Out-of-Pocket Expenditures on Class B Drugs

| Drug Name | Total Amount Paid From January 1, 1991 to March 1, 2008 |
|---|---|
| AccuNeb | $ |
| Acetylcysteine | $ |
| Acyclovir sodium | $ |
| Adenosine | $ |
| Adriamycin PFS/RFS | $ |
| Adrucil | $ |
| Aggrastat | $ |
| Albuterol sulfate | $ |
| Alcohol injection | $ |
| A-methapred | $ |
| Amikacin sulfate | $ |



4-10

## Out-of-Pocket Expenditures on Class B Drugs (continued)

| Drug Name | Total Amount Paid From *January 1, 1991* to *March 1, 2008* |
|---|---|
| Aminocaproic acid | $ |
| Aminosyn / Aminosyn II / Amino acid | $ |
| Amphocin / Amphotericin B | $ |
| Aristocort / Aristospan | $ |
| Aromasin | $ |
| Ativan | $ |
| Azmacort | $ |
| Bebulin | $ |
| Bioclate | $ |
| Bleomycin sulfate | $ |
| Brevibloc | $ |
| Buminate | $ |
| Bupivacaine | $ |
| Calcijex | $ |
| Calcimar | $ |
| Camptosar / Irinotecan hydrochloride | $ |
| Carbocaine / Mepivicaine | $ |
| Cefizox | $ |
| Chromium tr meta / Chromic chloride | $ |
| Cimetidine hydrochloride | $ |
| Cipro / Ciprofloxacin hydrochloride | $ |
| Cisplatin | $ |



5-10

## Out-of-Pocket Expenditures on Class B Drugs (continued)

| Drug Name | Total Amount Paid From January 1, 1991 to March 1, 2008 |
| --- | --- |
| Claforan | $ |
| Cleocin T / Clindamycin phosphate | $ |
| Copper trace / Cupric chloride | $ |
| Cromolyn sodium | $ |
| Cytosar-U / Cytarabine | $ |
| Depo provera / Medroxyprogesterone acetate | $ |
| Depo-testosterone / Testosterone cypionate | $ |
| Dexamethasone acetate / Dexamethasone sodium / Dexamethasone sodium phosphate | $ |
| Dextrose / Dextrose sodium chloride / Ringers lactated with dextrose | $ |
| Diazepam | $ |
| Dicarbazine (dtic – dome) | $ |
| Diltiazem hydrochloride | $ |
| Dopamine hydrochloride | $ |
| Doxorubicin / Doxorubicin hydrochloride | $ |
| DTIC Dome | $ |
| Eligard | $ |
| Ellence / Epirubicin HCL | $ |
| Enalaprilat | $ |
| Enbrel | $ |
| Epinephrine | $ |
| Erythromycin / Erythromycin base | $ |



6-10

## Out-of-Pocket Expenditures on Class B Drugs (continued)

| Drug Name | Total Amount Paid From *January 1, 1991* to *March 1, 2008* |
|---|---|
| Estradiol | $ |
| Etoposide | $ |
| Famotidine | $ |
| Fentanyl citrate | $ |
| Fluorouracil | $ |
| Fluphenazine HCL | $ |
| Furosemide | $ |
| Gamimune N / Gammagard / Gammagard S/D / Gammar / Gammar P.I.V. | $ |
| Gentamicin sulfate | $ |
| Gentran / Gentran NACL | $ |
| Glycopyrrolate | $ |
| Helixate / Helixate FS | $ |
| Heparin / Heparin lock flush / Heparin sodium | $ |
| Humate-P | $ |
| Hydromorphine | $ |
| Idamycin / Idarubicin hydrochloride | $ |
| Imipramine HCL | $ |
| Intal | $ |
| Ipratropium bromide | $ |
| Iveegam | $ |
| Ketorolac / Ketorolac tromethamine | $ |



7-10

## Out-of-Pocket Expenditures on Class B Drugs (continued)

| Drug Name | Total Amount Paid From January 1, 1991 to March 1, 2008 |
|---|---|
| Kineret | $ |
| Koate- HP | $ |
| Kogenate | $ |
| Labetalol | $ |
| Lasix | $ |
| Leucovorin calcium | $ |
| Leukine | $ |
| Levofloxacin | $ |
| Lidocaine hydrochloride | $ |
| Liposyn II / Fat emulsion | $ |
| Lorazepam | $ |
| Lovenox | $ |
| Lyphocin | $ |
| Magnese chloride | $ |
| Magnesium sulfate | $ |
| Mannitol | $ |
| Marcaine | $ |
| Medrol / Methylprednisolone | $ |
| Metaproterenol sulfate | $ |
| Methotrexate sodium | $ |
| Metoclopramide | $ |



8-10

## Out-of-Pocket Expenditures on Class B Drugs (continued)

| Drug Name | Total Amount Paid From January 1, 1991 to March 1, 2008 |
|---|---|
| Midazolam hydrochloride | $ |
| Mithracin | $ |
| Monoclate / Monoclate-P | $ |
| Mononine | $ |
| Morphine sulfate | $ |
| Nadolol | $ |
| Nalbuphine | $ |
| Nebupent | $ |
| Neosar / Cyclophospamide | $ |
| Neostigmine methylsulfate | $ |
| Novacaine / Procaine | $ |
| Novantrone | $ |
| Osmitrol | $ |
| Pancuronium bromide | $ |
| Pentam / Pentamidine isethionate | $ |
| Perphenazine | $ |
| Phenylephrine | $ |
| Potassium acetate / Potassium chloride | $ |
| Prograf | $ |
| Promethazine | $ |
| Propranolol HCL | $ |



9-10

| Out-of-Pocket Expenditures on Class B Drugs (continued) | |
|---|---|
| Drug Name | Total Amount Paid From *January 1, 1991* to *March 1, 2008* |
| Propofol | $ |
| Ranitidine HCL | $ |
| Recombinate | $ |
| Sodium acetate | $ |
| Sodium chloride | $ |
| Solu-cortef / Hydrocortisone sodium succinate | $ |
| Solu-medrol | $ |
| Succinylcholine chloride | $ |
| Taxotere | $ |
| Thioplex / Thiotepa | $ |
| Tobramycin sulfate / Tobramycin/ sodium chloride | $ |
| Toposar | $ |
| Travasol / Travasol with dextrose | $ |
| Trelstar / Triptorelin pamoate | $ |
| Vancocin / Vancocin HCL / Vancomycin / Vancomycin HCL | $ |
| Verapamil HCL | $ |
| Vinblastine sulfate | $ |
| Vincasar / Vincristine / Vinscristine sulfate | $ |
| Water for injection bacteriostatic | $ |
| Zemplar | $ |
| Zinc chloride | $ |

10-10

## Section F: Proof of Payment – Provide ONLY if you chose Option 2 – FULL REFUND

If you chose Option 2, you must provide proof that you made a percentage co-payment for each of the Class Drugs you are claiming in the charts in Section E above. You only need to provide one form of proof for each of the drugs.

Any one of the following are acceptable as proof of a percentage co-payment for one of the Class Drugs:

(1) A receipt, cancelled check, or credit card statement that shows a payment for one of the drugs (other than a flat co-payment); or

(2) A letter from a doctor saying that he or she prescribed one of the drugs and you paid part of the cost of one of the drugs (other than a flat co-payment) at least once; or

(3) An EOB (explanation of benefits) from your insurer that shows you made or are obligated to make percentage co-payments for the Class Drugs; or

(4) A notarized statement signed by you indicating you paid or are obligated to pay a percentage co-payment for the Class Drugs between January 1, 1991 through March 1, 2008, including the total of all percentage co-payments for the drugs during the time period; or

(5) Records from your pharmacy showing that you made percentage co-payments for the Class Drugs purchased between January 1, 1991 though March 1, 2008.

## Section G: Sworn Statement Regarding Payments Made

I declare under penalty of perjury that the information provided here is, to the best of my knowledge, correct. I also declare under penalty of perjury that I paid a percentage co-pay for one or more of the Class Drugs as indicated in this Claim Form at some time during the period from January 1, 1991 through March 1, 2008. If not submitting this for myself, I am authorized to submit this form on behalf of the Claimant identified above. [1]

| | |
|---|---|
| *Signature* | *Print Name* |

| |
|---|
| *Date* |

Mail all pages of this Claim Form along with proof(s) of payment, if any, to the following address:

**AWP Track 2 Settlement Administrator**
P.O. Box 951
Minneapolis, MN 55440-0951

Toll-Free Telephone: 1-877-465-8136
www.AWPTrack2Settlement.com

---

[1]  Please note that your signature on this Claim Form indicates that you declare, under penalty of perjury, that you (or someone on whose behalf you are acting) made a percentage co-payment for one or more of the Class Drugs at some time during January 1, 1991 through March 1, 2008. As a result, providing false information on this Claim Form could constitute perjury.

# EXHIBIT 3

# TO REVISED OBJECTION

# EXHIBIT H

# TO AMENDMENT

# EXHIBIT K

## CLAIMS PROCESS EXPLANATION


# [REVISED]

## EXHIBIT K

This exhibit is incorporated by reference in and made a part of the Track Two Settlement Agreement and Release in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL. No. 1456 (the "Settlement Agreement").

A.   Required Claims Documentation

   1.   Consumer Settlement Class Members

In order to validate a claim for payment associated with each Class Drug for which they seek payment from the Settlement Fund, Consumer Settlement Class Members must submit one proof of payment for each of the drugs listed in Exhibit B to the Settlement Agreement for which they are seeking payment.

Proof of payment for consumers in Class 1, for which the Claims Administrator has received data on co-payment obligations from CMS, and for consumers in Class 3 who have chosen the "Easy Refund Option," may be in the form of: a statement signed by the Consumer Settlement Class Member under the penalty of perjury indicating that the consumer paid or is obligated to pay a percentage co-payment for one or more of the Class Drugs during the period January 1, 1991, through January 1, 2005 (for Class 1) and through March 1, 2008 (for Class 3). This statement shall also be accepted as executed by a spouse of a deceased Consumer Settlement Class Member or a legal representative of the deceased Consumer Settlement Class Member's estate.

Proof of payment for consumers in Class 3 who have elected the "Full Estimation Refund Option," may be in the form of (1) a receipt, cancelled check, or credit card statement that shows a payment for one of the Class Drugs (other than a flat co-payment); (2) a letter from the Consumer Settlement Class Member's doctor stating that he or she prescribed and that the Consumer Settlement Class Member paid or is obligated to pay part of the cost of one of the Class Drugs (other than a flat co-payment) at least once; (3) billing records from a doctor or other health care provider evidencing an obligation to pay part of the cost of one of the Class Drugs (other than a flat co-payment); (4) an Explanation of Benefits ("EOB") from an insurer or other payor evidencing an obligation to pay part of the cost of one of the Class Drugs (other than a flat co-payment), or (5) any combination of 1-4 above.

   2.   TPP Settlement Class Members

TPP Settlement Class Members shall be required to submit the amount of purchases of each drug listed as a Class A drug on Exhibit B to the Settlement Agreement for which they are seeking payment during the period of January 1, 2003, to December 31, 2003. This period is substituted for the amount of expenditures for each drug associated with the full class period in recognition of the difficulty many TPPs have in accessing claims data that are older and likely not kept electronically or on current electronic systems. This "proxy period" shall be used to determine the payments made to each TPP Settlement Class Member in accordance with the

procedures set forth below.

In order to validate a claim for payment associated with the Class Drugs for which they seek payment from the Settlement Fund, TPP Settlement Class Members with claimed expenditures for all Class Drugs listed as Class A on Exhibit B to the Agreement during the proxy period that exceed $300,000.00 in total shall be required to submit electronic claims documentation with their claim. The form and data required to be submitted are delineated in the TPP Claim Form attached as Exhibit D to the Settlement Agreement. Those TPP Settlement Class Members whose claimed expenditures are $300,000.00 or less need not submit electronic claims documentation with their claim but must furnish such claims documentation upon request of the Claims Administrator.

### 3.    ISHP Claims Documentation

Documentation required from each member of the ISHP Group shall be that set forth on Exhibit L to the Settlement Agreement.

### B.    Calculating Recognized Claim Amounts

Procedures for establishing a recognized claim for each Consumer Settlement Class Member, TPP Settlement Class Member, and ISHP Group Member have been established as follows.

### 1.    Consumer Settlement Class Members in Class 1

For consumers in Class 1 for which the Claims Administrator has obtained records from CMS evidencing the consumer's total co-payment obligation under Medicare Part B, the consumer's obligation under Medicare Part B for all Class Drugs during the Class Period, as evidenced in records from CMS, shall form the basis of the Class 1 consumer's claim. For those Class Drugs designated as "Class A" on Exhibit B to the Settlement Agreement, the consumer's total obligation related to Class A Drugs during the period of December 1, 1997 through December 31, 2003 shall be multiplied by a factor of three (3x) and added to the consumer's total obligation related to Class A Drugs outside of this time period (without a multiplication factor) and to the consumer's total co-payment obligation for Class Drugs designated as "Class B" on Exhibit B to the Agreement (without a multiplication factor). The sum of these three figures shall constitute the Class 1 consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Settlement Class Member.

### 2.   Consumer Settlement Class Members in Class 3

For consumers in Class 3 for which the Claims Administrator does not have records from CMS, the amount to which the Class 3 consumer shall be entitled will be determined based upon the consumer's election on a claim form provided by the Claims Administrator between two options.

a.   Easy Refund Option:  If a Class 3 consumer elects the "Easy Refund Option" on the claim form provided and the consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating the payment made to each such Consumer Settlement Class Member shall be equal to $35.00.

b.   Full Estimation Refund Option.  If a Class 3 consumer elects the "Full Estimation Refund Option" on the claim form provided, then the consumer will be required to estimate the consumer's total out-of pocket expenses associated with percentage co-payments for each drug for which the consumer is seeking payment.  Each such consumer will also be required to provide documentary support, as called for in Section A1 above in support of the consumer's estimated out-of-pocket expenses.  The consumer's estimated out-of-pocket expenses for Class A drugs during the period of December 1, 1997 through December 31, 2003 shall be multiplied by a factor of three (3x), and added to the consumer's total obligation related to Class A Drugs outside of this time period (without a multiplication factor) and to the consumer's estimated out-of-pocket expenses for Class B drugs (without a multiplication factor).  The sum of these three figures will constitute the Class 3 consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Settlement Class Member.

If total valid Recognized Claims for all Consumer Settlement Class Members related to Class Drugs exceeds the amount of the Settlement Funds allocated to satisfy Consumer Settlement Class Member claims, all such consumer claims will be reduced proportionately.

3.   Sample Calculations of Hypothetical Consumer Claims

Example # 1

Consumer information:

Consumer Settlement Class Member in Class 1.  Consumer validly certifies under pains and penalties of perjury that the consumer paid or was obligated to pay percentage co-payments during the Class Period.

CMS records indicate total co-payment obligations under Medicare Part B to be $100 for Class A drugs during the period prior to December 1, 1997 (Period 1), $100 for Class A drugs during the period between December 1, 1997 and December 31, 2003 (Period 2) and $100 for Class B drugs during the entire class period.

Calculation:

| | | |
|---|---|---|
| Class A Drugs (Period 1): | = $100 | |
| Class A Drugs (Period 2) | = $100 x 3 = $300 | |
| Class B Drugs:  $100 | = $100 | |

3

Total Recognized Claim = $500 unless total Recognized Claims of all Consumer Settlement Class Members exceeds the amount allocated to pay consumer claims, in which case the payment will be reduced in proportion to all such Recognized Claim amounts.

Example # 2

Consumer information:

Consumer Settlement Class Member in both Class 1 and Class 3. Consumer validly certifies under pains and penalties of perjury that the consumer paid or was obligated to pay percentage co-payments during the Class Period under both Medicare Part B and under one or more private health insurance plans.

CMS records indicate total co-payment obligations under Medicare Part B to be $100 for Class A drugs during the period prior to December 1, 1997 (Period 1), $100 for Class A drugs during the period between December 1, 1997 and December 31, 2003 (Period 2) and $100 for Class B drugs during the entire class period.

Consumer chooses "Easy Refund Option" for Class 3 refund.

Calculation:

Class A Drugs (Period 1):    = $100
Class A Drugs (Period 2)    = $100 x 3 = $300
Class B Drugs:  $100        = $100

Total Recognized Claim = $535 ($100 + $300+ $100 +$35)  unless total Recognized Claims of all Consumer Settlement Class Members exceeds the amount allocated to pay consumer claims, in which case the payment will be reduced in proportion to all such Recognized Claim amounts.

4.    Third Party Payor Settlement Class Members and ISHP Group Members

In recognition of the fact that the claims of all TPP Settlement Class Members and ISHP Group Members will exceed the total amount of funds allocated to satisfy the claims of TPP Settlement Class Members and ISHP Group Members under the Settlement Agreement and that each TPP Settlement Class Member or ISHP Group Member will be paid a pro-rata portion of the Settlement Amount allocated to TPP Settlement Class Members and the ISHP Group, the

recognized claim for both TPP Settlement Class Members and ISHP Group Members shall be the total amount of purchases during the period of January 1, 2003, to December 31, 2003, of all drugs listed as Class A drugs on <u>Exhibit B</u> to the Agreement. This figure, if properly supported and accepted by the Claims Administrator, is the TPP Settlement Class Member's or ISHP Group Member's "Recognized Claim" used for purposes of calculating the payment made to each TPP Settlement Class Member and ISHP Group Member.

C.     <u>Sample Calculation of the ISHP Group Reversion Amount</u>

In order to illustrate the calculation of the ISHP Group Reversion Amount as contemplated in the Settlement Agreement two examples are set forth below:

<u>Example #1</u>

Assumptions:

ISHP Group Recognized Claim Percentage = 60%
Net Fees and Expenses = $42M
Track Two Defendant Opt-Out Refund = $3M
Total Deposits to Class TPP Pool and ISHP Pool = $103M

ISHP Group Reversion Amount Calculation:

ISHP Over/Underage = 60-37.5 = 22.5%

Fees and Expenses Attributable to TPPs and ISHPs = $42M X .825 = $34.65M

22.5% X ($103M - $34.65M - $3M) = $14.7M

$14.7M due to be paid to ISHP Group Members first from the amount remaining in the ISHP Settlement Pool and the balance from TPP Settlement Pool at the conclusion of the claims process

Total payment to ISHP Group Members = $14.7M + $25.5M (ISHP Group Initial Payment) = $40.2M

<u>Example 2</u>

Assumptions:

ISHP Group Recognized Claim Percentage = 40%
Net Fees and Expenses = $42M
Track Two Defendant Opt-Out Refund = $3M

Total Deposits to Class TPP Pool and ISHP Pool = $103M

ISHP Group Reversion Amount Calculation:

ISHP Over/Underage = 40-37.5 = 2.5%

Fees and Expenses Attributable to TPPs and ISHPs = $42M X .825 = $34.65M

2.5% X ($103M - $34.65M - $3M) = $1.63M

$1.63M due to be paid from ISHP Settlement Pool to ISHP Group Members.  Any funds remaining in ISHP Settlement Pool to be returned to TPP Settlement Pool at the conclusion of the claims process

Total payment to ISHP Group Members = $1.63M + $25.5M (ISHP Group Initial Payment) = $27.13M.

# EXHIBIT 4

# TO REVISED OBJECTION

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE RELAFEN ANTITRUST LITIGATION | ) ) ) ) | Master File No. 01-CV-12239-WGY |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS: | ) ) ) ) | |
| *Lynch v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10163-WGY |
| *A.F. of L. - AGC Building Trades Welfare Plan v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10205-WGY |
| *Twin Cities Bakery Workers Health and Welfare Fund v. SmithKline Beecham Corp.* | ) ) ) ) | No. 02-CV-985 (E.D. Pa.) |
| *Houchins v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10424-WGY |
| *Teamsters Local No. 35 Health Plans v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10487-WGY |
| *Smithfield Foods, Inc. v. SmithKline Beecham Corp.* | ) ) ) | No. 02-CV-10589-WGY |
| *Franklin v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-10671-WGY |
| *Fox v. SmithKline Beecham Corp.* | ) ) | No. 02-CV-11543-WGY |
| *Kravitz v. SmithKline Beecham Corp.* | ) | No. 02-CV-11806-WGY |

## AFFIDAVIT OF THOMAS R. GLENN

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) ss: |
| COUNTY OF PALM BEACH | ) |

**THOMAS R. GLENN**, being duly sworn, deposes and says as follows:

1.   I am the Senior Vice President and Chief Operating Officer of Complete Claim Solutions, Inc. ("CCS"), the settlement administrator in the above-captioned litigation (the

1

"Action"). I am over 21 years of age and am not a party to the Action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.     I submit this Affidavit to provide the Court with (a) the status of claims processing to date; (b) the status of claims filed by objectors/appellants; and (c) an estimate of unanticipated settlement administration costs which will likely be incurred due to these appeals.

## STATUS OF CLAIMS PROCESSING

3.     As of December 1, 2005, a total of 3,659 Consumer claims were received by CCS including 59 claims postmarked after the July 29, 2005 deadline. CCS has entered all claims into a segregated database (the "Relafen Consumer Database") with aggregate purchases of approximately $3,308,666.90. This number is subject to CCS's claims administration review process and, based upon similar settlements, typically would be reduced once this process is complete.

4.     Pursuant to ¶11 of the Court's Order Granting Preliminary Approval of Settlement, Certifying for Purposes of Settlement, Directing Notice to the Class and Scheduling Fairness Hearing dated November 17, 2004, End-Payor Plaintiffs issued subpoenas to the ten largest providers or retail pharmacy services in the United States as well as mail-order pharmacies associated with the five largest providers of pharmaceutical benefits management in the United States, to obtain electronic files of names and addresses of any consumer of Relafen/Nabumetone as well as information concerning the consumer's expenditures (net of any amount paid for or on behalf of the consumer by insurance or some other source) during the Class Period. As of December 1, 2005, 12 entities have complied with the subpoena and provided CCS with electronic files. Pursuant to Judge Young's Memorandum dated September 28, 2005 approving the Settlement, which ordered a $10 minimum recognized claim amount for

a consumer to receive a check via the settlement subpoena process, resulting in approximately 268,648 additional Class Members that are potentially eligible to share in the Settlement Fund.

5.     As of December 1, 2005, CCS received approximately 2,027 Third-Party Payor ("TPP") claims with aggregate purchases of approximately $294,477,193.80. This number, too, is subject to CCS's claims administration review process and, based upon similar settlements, typically would be reduced once this process is complete.

## STATUS OF CLAIMS FILED BY OBJECTORS/APPELLANTS

6.     On or about December 1, 2005, CCS researched the Relafen Consumer database to determine the status of claims for those individuals who had filed objections/appeals to the Settlement.  The following list demonstrates the status of the objector/appellants who have claimed for reimbursement:

| Name | Postmark Date | Claimed Purchases |
| --- | --- | --- |
| Linda Marshall | July 29, 2005 | Not provided |
| Hazel Martin | July 29, 2005 | Not provided |
| Dot Kensinger | August 8, 2005 | $1,200 |
| Charles L. Taylor | No Claim Filed | |
| Jacqueline Pio | No Claim Filed | |

7.     CCS confirmed that Jacqueline Pio and Charles L. Taylor listed in ¶6, above, had not filed a claim by also researching the TPP database for a claim filed by these individuals.

## UNANTICIPATED SETTLEMENT ADMINISTRATION COSTS

8.     In addition, Class Counsel requested CCS to describe unanticipated settlement administration costs that may be incurred in the event the administration process is disrupted and delayed due to the objections/appeals.  By way of explanation, in a similar case, *In re Warfarin*

3

*Sodium Antitrust Litigation,* 391 F. 3d 516 (3rd Cir. 2004) ("Warfarin Settlement"), an appeal was filed delaying the claims administration activities and, therefore, final distribution to the consumers.

9.  In the Warfarin Settlement, there were approximately 48,685 Consumer claims filed compared to 272,307 Consumer claims entered into the database in this Action.

10.  Based on CCS's experience in the Warfarin Settlement, unanticipated costs (fees and out-of-pocket expenses) were incurred from the time between the Final Settlement Approval Order and the date the Order became final. Such costs included maintaining a Post Office Box, maintaining a toll-free number for claimants to call with questions, answering additional telephone calls, processing additional, unanticipated correspondence (such as change-of-address forms and status requests from Class Members), responding to e-mails, keeping the Relafen Settlement website (www.relafensettlement.com) up and running, revising the website and telephone Frequently Asked Questions (FAQ's) and Pre-recorded hotline script as necessary, warehousing documents, and performing various administrative tasks.

11.  The single most significant cost component listed in ¶10, above, relates to telephone charges. Even though claims-processing operations could cease, CCS would continue its call-center operations. Indeed, the pendency of the appeal would make the continuation of this service all the more necessary as many claimants, particularly those who are elderly, naturally would have questions concerning the status of the Settlement during the period it might be on hold.

12.  As a result of the delay in the Warfarin Settlement, additional unanticipated costs (fees and out-of-pocket expenses) ran approximately $5,000 to $7,000 per month.

13.     In addition, should CCS be instructed to stop all activities relating to the processing of claims while the appeals are pending, there would also be additional unanticipated costs associated both with winding down operations when the stop-work instruction comes in and with ramping up operations once the Final Judgment And Order Certifying Settlement Class, Approving Proposed Settlement and Dismissing Action is affirmed.

14.     As a result of stopping claims administration activities and ramping up operations, as referred to in ¶13 above, there will be additional unanticipated costs (fees and out-of-pocket expenses) incurred for activities and items such as: answering additional telephone calls from Class Members; processing an increased number of undeliverable deficiency letters and award checks returned by the United States Postal Service; researching updated addresses for Class Members; incurring additional postage fees to re-mail deficiency letters and checks to updated addresses; reissuing a greater number of checks due to Class Members having moved or reissuing checks to next of kin for Class Members who will have died; performing additional audit and quality assurance activities; and, in general, performing additional claim administration tasks.

15.     Assuming a 9-month time period between when the stop-work instruction comes in and when CCS is instructed to ramp up operations, I estimate that the unanticipated costs for all additional work as described in ¶¶8-14, above, to be approximately ($20,000 to $35,000).

16.     I declare under penalty of perjury that the foregoing is true and correct.

Thomas R. Glenn

Sworn to before me on
this 2ⁿᵈ day of December 2005



Notary Public

ERIC P. LACHANCE
MY COMMISSION # DD 490949
EXPIRES: November 25, 2009
Bonded Thru Notary Public Underwriters

5

# EXHIBIT 5

# TO REVISED OBJECTION

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE RELAFEN ANTITRUST LITIGATION | ) ) ) ) | Master File No. 01-CV-12239-WGY |
| THIS DOCUMENT RELATES TO END-PAYOR ACTIONS: | ) ) ) ) ) | |
| Lynch v. SmithKline Beecham Corp. | ) ) | No. 02-CV-10163-WGY |
| A.F. of L. - AGC Building Trades Welfare Plan v. SmithKline Beecham Corp. | ) ) ) | No. 02-CV-10205-WGY |
| Twin Cities Bakery Workers Health and Welfare Fund v. SmithKline Beecham Corp. | ) ) ) ) | No. 02-CV-985 (E.D. Pa.) |
| Houchins v. SmithKline Beecham Corp. | ) ) | No. 02-CV-10424-WGY |
| Teamsters Local No. 35 Health Plans v. SmithKline Beecham Corp. | ) ) ) | No. 02-CV-10487-WGY |
| Smithfield Foods, Inc. v. SmithKline Beecham Corp. | ) ) ) | No. 02-CV-10589-WGY |
| Franklin v. SmithKline Beecham Corp. | ) ) | No. 02-CV-10671-WGY |
| Fox v. SmithKline Beecham Corp. | ) ) | No. 02-CV-11543-WGY |
| Kravitz v. SmithKline Beecham Corp. | ) | No. 02-CV-11806-WGY |

ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT,
CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT, DIRECTING NOTICE
TO THE CLASS AND SCHEDULING FAIRNESS HEARING

WHEREAS, this matter has come before the Court pursuant to *End-Payor Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement, and Approval of Form and Manner of Notice* (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties; and

WHEREAS, this Court has conducted a hearing on November 10, 2004 and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

## Preliminary Approval of Settlement Agreement

1.     The terms of the Fourth Amended Stipulation and Agreement of Settlement dated November 18, 2004, including all Exhibits thereto (the "Stipulation"), attached to the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. This Order incorporates herein and makes a part hereof, the Stipulation, including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the Stipulation shall have the same meanings herein. The Stipulation between the End-Payor Plaintiffs, and defendants GlaxoSmithKline PLC, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, Beecham Group PLC and SmithKline Beecham, PLC (collectively "GSK" and/or "Defendants"), was entered into at arm's-length by experienced counsel. The Court finds that the settlement embodied in the Stipulation (the "Settlement") is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in paragraphs 5 through 10 of this Order.

2.     The Court preliminarily finds that the proposed End-Payor Class, for the purpose of this Settlement only, meets all the applicable requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil

2

Procedure, and hereby conditionally certifies the following Class for settlement purposes only:

> All persons or entities in the United States who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003 for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

The class conditionally certified for settlement purposes only includes the following states or group of states:

> **Group I States:** All person or entities in District of Columbia and the states of Arizona, California, Illinois, Iowa, Massachusetts, Nebraska, Nevada, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin, as well as the State Employment and Retiree Health and Welfare Benefit Program of Maryland, who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries. .

> **Group II States:** All persons or entities in the territories of the United States and the states of Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Montana, Missouri, New Hampshire, New Jersey, Ohio, Oregon, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington and Wyoming who purchased Relafen during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

> **Group III States:** All persons in the states of Florida, Maine, Michigan, Minnesota, North Carolina and North Dakota who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

> **Hawaii:** All persons in the State of Hawaii who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

> **New York:** All persons in the State of New York who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

New Mexico: All persons in the State of New Mexico who purchased Relafen and/or its generic alternatives (known as nabumetone) during the period of September 1, 1998 through June 30, 2003, for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.

Excluded from the class are governmental entities (provided, however, a governmental entity is included only to the extent it makes prescription drug purchases as part of a health benefit plan for its employees); Defendants and their officers, directors, management, employees, subsidiaries, and affiliates; persons or entities who purchased Relafen or its generic alternatives for purposes of resale; any person or entity whose only purchase(s) of Relafen were made directly from Defendants or its affiliates and/or whose only purchases of generic nabumetone were made directly from the manufacturer thereof; and persons or entities who suffered no economic harm as a result of Defendants' alleged conduct (the collectively, the"End-Payor Class").

3.      The Court hereby conditionally finds that the following End-Payor Plaintiffs are adequate

representatives of the End-Payor Class:

(a)     Louise Houchins;
(b)     Elliot Franklin;
(c)     Tyler Fox;
(d)     Jennifer Kravitz;
(e)     Emily Feinberg;
(f)     Jacob Koivisto;
(g)     Patrick J. Lynch as Trustee for the Health and Welfare Fund and Retiree Health & Welfare Fund of the Patrolmen's Benevolent Association of the City of New York ("PBA Funds");
(h)     A.F. of L. – AGC Building Trades Welfare Plan;
(i)     Sheet Metal Workers Local 441 Health & Welfare Plan;
(j)     IBEW-NECA Local 505 Health & Welfare Plan;
(k)     Teamsters Local No. 35 Health Plans;
(l)     Twin Cities Bakery Workers Health & Welfare Fund;
(m)     Smithfield Foods, Inc.; and
(n)     Great Lakes Health Plan, Inc.

If the Stipulation is terminated or is not consummated for any reason whatsoever, the certification

of the End-Payor Class shall be void, and End-Payor Plaintiffs and Defendants shall be deemed to have

4

reserved all of their rights to propose or oppose any and all class certification.

4.     The Court further finds that the following attorneys fairly and adequately represent the

interests of the End-Payor Class and hereby appoints them as Class Counsel pursuant to Rule 23(g):

Thomas M. Sobol
HAGENS BERMAN, LLP
One Main Street, 4th Floor
Cambridge, MA 02142

J. Douglas Richards
MILBERG WEISS BERSHAD
& SCHULMAN, LLP
One Pennsylvania Plaza
New York, NY 10119-0165

Eugene A. Spector
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Samuel Heins
HEINS, MILLS & OLSON PLC
3550 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Patrick E. Cafferty
MILLER FAUCHER AND CAFFERTY LLP
101 North Main Street, Suite 450
Ann Arbor, MI 48104

## Notice to Potential Class Members

5.     On or before February 21, 2005, Class Counsel shall: (a) cause the Summary Notice of

Pendency of Class Action, Proposed Settlement and Fairness Hearing ("Summary Notice") in the form

attached as Exhibit 2 hereto to be published in accordance with the Plan of Notice; (c) cause the Summary

Notice to be published on the website established for purposes of this Settlement; and (d) otherwise

implement the Plan of Notice

6.     On or before February 7, 2005, Class Counsel shall cause copies of the Notice of

Pendency and Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing,

substantially in the form attached as Exhibit 1 hereto (the "Notice"), as well as the Third-Party Payor Proof

of Claim Form and Third Party Payor Notice of Exclusion, attached as Exhibit 3 and Exhibit 4 hereto, to

5

be mailed by first-class mail, postage pre-paid, to all potential Third-Party Payor members of the End-Payor Class, to the extent that they can be identified with reasonable diligence. In addition, Class Counsel shall cause copies of the Notice and the Consumer Claim Form, attached as Exhibit 5 hereto, to be mailed to all members of the End-Payor Class who request a copy of the Notice, as set forth in the Plan of Notice.

7.    On or before May 11, 2005, Class Counsel shall serve and file or cause to be served and filed a sworn statement attesting to compliance with the provisions of paragraphs 5 and 6 of this Order.

8.    The Court appoints Complete Claim Solutions, Inc. as the Claims Administrator. Responsibilities of the Claims Administrator shall include the following: (a) establishing a post office box and toll-free phone number (to be included in the Notices to the Class) for purposes of communication with End-Payor Class members; (b) disseminating notice to the End-Payor Class; (c) establishing a website for purposes of posting the Notice, Stipulation and related documents; (d) accepting and maintaining documents sent from End-Payor Class members, including claim forms, exclusion requests and other documents relating to claims administration; and (e) administering claims for the allocation of damages among End-Payor Class members.

9.    After review of the proposed revised Plan of Notice submitted to the Court on November 18, 2004, the Court approves the expenditure of actual notice and administrative costs reasonably incurred for the purpose of providing notice to the End-Payor Class in accordance with the Notice Plan and in connection with the administration of this Settlement. The Escrow Agent is directed to pay such costs with notice to End-Payor Lead Counsel and GSK.

10.   The notice to be provided as set forth in paragraphs 5 through 9 of this Order (the "Notice Provisions") is hereby found to be the best practicable notice under the circumstances and, when

6

completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

### Subpoena of Consumer Information

11.     The Court finds that the efforts of Plaintiffs to provide the most efficient administration of the settlement with respect to consumer members of the Class may be enhanced by providing direct payment to individual consumers for co-pays or cash payments they have made for Relafen or nabumetone during the Class period. End-Payor plaintiffs are hereby authorized, pursuant to 45 C.F.R. § 164.512(e)(1), to issue subpoenas to the ten largest providers of retail pharmacy services in the United States as well as the mail-order pharmacies associated with the five largest providers of pharmaceutical benefit management in the United States, to obtain access to electronic files of the names and addresses of any consumers of Relafen and/or nabumetone as well as information concerning the consumer's expenditures (net of any amount paid for or on behalf of the consumer by insurance or some other source) during the Class period, *provided that*:

(a)     The Claims Administrator shall obtain only the names, addresses and payment information necessary to identify users of Relafen and/or nabumetone and to calculate their total out-of-pocket expenditures for Relafen and nabumetone, and shall not seek access to any other Protected Health Information as that term is defined by the regulations implementing the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The information obtained shall be held confidential and shall not be released to any other person or entity except for a Business Associate of the Claims Administrator necessary to administer the settlement..

7

(b)     Any names, addresses or payment information obtained through this paragraph shall be used only for the purpose of administering the settlement in this litigation, and not for any other purpose;

(c)     The Claims Administrator shall maintain the information received pursuant to this paragraph for a period of five (5) years or as otherwise ordered by the Court. At the end of five (5) years, or as ordered by the Court, it shall destroy any and all originals and copies of the information obtained through this paragraph, including electronic and hard copies; and shall ensure that any Business Associates do the same.

## Requests for Exclusion from the End-Payor Class

12.     Any member of the End-Payor Class who wishes to be excluded from the End-Payor Class shall mail a written notice of exclusion to the Claims Administrator, to be postmarked no later than April 15, 2005, and clearly state the following: the name, address, taxpayer identification number, telephone number and fax number (if any) of the entity that wishes to be excluded from the End-Payor Class. The notice of exclusion form included with the Notice can be used for this purpose. For commercial entities, the notice of exclusion must also include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named class member. If the undersigned individual is not a duly authorized officer, director or employee of the above named class member (if a corporation), or a general partner or duly authorized employee of the above-named class member (if a partnership), he/she must attach written evidence of the class member's specific grant of authority to him/her to execute this notice of exclusion on its behalf.

> The undersigned also certifies that he/she has not received any advice from the parties to this litigation concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.*, or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to

8

receive any proceeds of the Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

13.     If the person providing a certification in the notice of exclusion is not a duly authorized officer, director or employee of the Third-Party Payor requesting exclusion (if a corporation), or a general partner or duly authorized employee of the Third-Party Payor requesting exclusion (if a partnership), he/she must attach written evidence of the Third-Party Payor's grant of authority to him/her to execute the notice of exclusion on its behalf.

14.     In addition, for purposes of implementing the Stipulation, including the calculation of the amount of any Settlement reduction and whether the termination contingency referenced in the Stipulation has been met, each Third-Party Payor requesting exclusion shall set forth in the Exclusion Form, by state or group of states, the amounts paid for Relafen and/or generic nabumetone purchases during the period September 1, 1998 through June 30, 2003.

15.     Such End-Payor Class members that submit valid and timely notices of exclusion shall not be bound by the Stipulation, the Settlement, or the Final Order and Judgment.

16.     Upon receipt, the Claims Administrator shall promptly provide copies of each notice of exclusion to Class Counsel and Counsel for Defendants.

17.     Any potential member of the End-Payor Class that does not properly and timely mail a notice of exclusion as set forth in paragraphs 11 through 15 above shall be automatically included in the End-Payor Class and shall be bound by all the terms and provisions of the Stipulation, whether or not such potential member of the End-Payor Class shall have objected to the Settlement and whether or not such potential member of the End-Payor Class makes a claim upon or participates in the Settlement Fund.

9

### Proofs of Claim

18.    To effectuate the Settlement and the Notice Provisions, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and Proofs of Claim. The Claims Administrator shall preserve all notices of exclusion, Proofs of Claim, and any and all other written communications from members of the Class in response to the Notice Provisions for a period of five (5) years, or pursuant to further order of the Court. All written communications received by the Claims Administrator from members of the Class relating to the Stipulation shall be available at all reasonable times for inspection and copying by Counsel to the Settling Parties.

19.    In order to be entitled to participate in the Settlement if it is effected in accordance with all of the terms and conditions set forth in the Stipulation, each member of the End-Payor Class shall take the following actions and be subject to the following requirements:

(a)    Each End-Payor Class Member that wishes to receive a distribution from the Settlement Fund must mail a properly executed Proof of Claim to the Claims Administrator at the address indicated in the Mail Notice, to be postmarked by the Claims Administrator on or before July 29, 2005 (subject to sub-paragraph 19(e) below). If a proof of claim is transmitted to the Claims Administrator by a method other than by use of the United States Postal Service, such Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(b)    Each Proof of Claim must satisfy the following conditions: (i) the Proof of Claim must be properly completed in accordance with the instructions thereon and submitted in a timely manner in accordance with subparagraph (a) of this paragraph; (ii) the Proof of Claim must be signed and certified under penalty of perjury; (iii) if the person executing the Proof of Claim is acting in a representative

10

capacity, certification of such person's authority to act on behalf of the claimant must be furnished with the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

(c)   Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to End-Party Lead Counsel about which claims should be allowed;

(d)   The Claims Administrator will notify each member of the End-Payor Class that filed a Proof of Claim of any recommendation of disallowance, in whole or in part, of the Proof of Claim submitted by such End-Payor Class member and will set forth the reasons for any such disallowance. End-Payor Class members shall be permitted a reasonable period of time to cure any deficiency with respect to their respective Proofs of Claim.  A copy of such notification shall also be sent by the Claims Administrator to Class Counsel;

(e)   All members of the End-Payor Class that do not submit timely Proofs of Claim, or submit Proofs of Claim that are disallowed, shall be barred from participating in the Settlement Fund (except to the extent that a Proof of Claim may be partially allowed or to the extent the Court orders payment to consumers based on information obtained pursuant to Paragraph 11 hereof) but otherwise shall be bound by all of the terms and provisions of the Stipulation; and

(f)   Each member of the End-Payor Class that submits a Proof of Claim and/or accepts any payment as part of the settlement, shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and/or paid, and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Stipulation.

## Confidentiality

20.    Any information received by the Claims Administrator in connection with this Settlement that pertains to a particular member of the End-Payor Class, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Counsel to the Settling Parties, and the Court, or as otherwise provided in the Stipulation.

## The Fairness Hearing

21.    A hearing on final settlement approval (the "Fairness Hearing") will be held on May 4, 2005 at 2:00 PM before the Honorable William G. Young, United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider, *inter alia,* the following: (a) whether the End-Payor Class should be finally certified, for settlement purposes only; (b) the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of this action as to the Defendants, and the entry of final judgment in the action; (c) whether Class Counsels' application for attorneys' fees, expenses and incentive awards for the named plaintiffs ("the Fee Petition") should be granted; and (d) whether to approve the proposed plan of allocation and distribution.

22.    On or before April 25, 2005, Class Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Settlement; and (ii) any Fee Petition.

23.    Any member of the End-Payor Class that has not filed a notice of exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the action as to Defendants, the entry of final judgment,

12

and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless submitted to the Court and served upon Counsel for the Settling Parties on or before April 25, 2005. Such person must (a) file with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition, and (b) serve copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, and upon all Counsel to the Settling Parties on or before April 25, 2005. Persons who fail to object as provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

24.     Counsel for the Settling Parties entitled to service of documentation described above are as follows:

> Liasion Counsel for End-Payor Plaintiffs
>
> Thomas M. Sobol
> HAGENS BERMAN, LLP
> One Main Street, 4th floor
> Cambridge, MA 02142
>
> Counsel for Defendants
>
> Christine C. Levin
> DECHERT LLP
> 4000 Bell Atlantic Tower
> 1717 Arch Street
> Philadelphia, PA 19103-2793

13

25.     The date and time of the Fairness Hearing shall be set forth in the Notice and Summary Notice, but shall be subject to adjournment by the Court without further notice to the members of the Class other than that which may be posted at the Court and on the Court's website.

26.     All discovery and other pretrial proceedings in this action among the Settling Parties are stayed and suspended, pending the Effective Date of the Settlement ("Final Approval"), except such proceedings as are provided for in the Stipulation, or which may be necessary to implement the terms of the Stipulation, the Settlement, or this Order.

27.     Any End-Payor Class Member may hire an attorney at his or her or its own expense to appear in the action. Such attorney shall serve a Notice of Appearance on the Counsel for the Settling Parties and file it with the Court on or before April 15, 2005.

28.     Pending Final Approval, no Class member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Class), shall commence or prosecute against any or all Releasees, any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released by the Stipulation upon Final Approval, and, upon Final Approval, all Class members that do not file a timely notice of exclusion shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released by the Stipulation, and any such Class member shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Stipulation.

### Other Provisions

29.     The Court hereby approves the terms of the Escrow Agreement, attached as Exhibit C to the Stipulation.

14

30.   The Court preliminarily approves the allocation and distribution of the Settlement Fund, as described in the Stipulation.

31.   Upon Final Approval, each and every term and provision of the Stipulation shall be deemed incorporated herein as if expressly set forth and shall have the full force and effect of an Order of the Court.

32.   In the event the Settlement is terminated with respect to Defendants or in accordance with the provisions of the Stipulation, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Stipulation, and without prejudice to the *status quo ante* rights of End-Payor Plaintiffs, Defendants, and the members of the End-Payor Class.

33.   All proceedings in the action against Defendants are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlement and, if it approves the Settlement, enters final judgment as provided in the Stipulation. Neither this Order nor the Stipulation shall constitute any evidence or admission of liability by any Defendant, nor shall they be offered in evidence in this or any other proceeding except to consummate or enforce the Stipulation or the terms of this Order, or by any Releasee in connection with any action asserting Released Claims.

### Qualified Settlement Fund

34.   The Court finds that the Settlement Fund is a "qualified settlement fund" as defined in section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)   The Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

15

(b)     The Settlement Fund is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

(c)     The assets of the Settlement Fund are segregated from other assets of GSK, the transferor of payments to the Settlement Fund.

35.     Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)     The Settlement Fund met the requirements of paragraphs 11(b) and 11(c) of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

(b)     GSK and the Claims Administrator may jointly elect to treat the Settlement Fund as coming into existence as a "qualified settlement fund" on the later of the date the Settlement Fund met the requirements of paragraphs 11(b) and 11(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 11 of this Order are met. If such relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Settlement Fund on that date.

SO ORDERED this _21st_ day of _November_ 2004.

William G. Young
WILLIAM G. YOUNG
CHIEF JUDGE

16