UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK 2 SETTLEMENT | Judge Patti B. Saris |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND COMPENSATION TO THE CLASS REPRESENTATIVES IN
<u>ASSOCIATION WITH THE TRACK 2 SETTLEMENT</u>**

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ........................................................................................................1

II. HISTORY OF THE LITIGATION ...........................................................................3

III. THE COURT SHOULD APPROVE THE FEE PETITION  AS FAIR AND
     REASONABLE ..........................................................................................................4

    A.  Class Counsel are Entitled to Compensation Based Upon the Benefits
         Created by the Litigation ........................................................................................4

    B.  The Requested Fee and Expense Award is Fair and Reasonable as a
         Percentage of the Benefits Achieved for the Class .................................................5

        1.  The primacy of the percentage-of-the-fund approach ................................5

        2.  An award of  30 percent for fees and expenses is reasonable.....................7

    C.  The Percentage Award for the Track Two Settlement is Consistent with
         Class Counsel's Intention to Seek a Fee of Approximately One-Third of
         the Value of All Settlements ...................................................................................8

    D.  A Cross-Check With the Lodestar Confirms the Reasonableness of the
         Requested Fee and Expense Award.......................................................................10

    E.  Various Other Factors Applied by This Circuit and Others Support Class
         Counsel's Request.................................................................................................15

        1.  The size of the fund created and the number of people who benefit .........16

        2.  The time and labor expended by counsel...................................................16

        3.  The complexity and duration of the litigation...........................................18

        4.  The risk of nonpayment .............................................................................18

        5.  The skill and efficiency of the attorneys involved.....................................19

    F.  Class Counsel's Expenses are Reasonable and Should be Factored
         in the Court's Consideration of the Fee and Expense Award................................20

IV. COMPENSATION TO THE NAMED PLAINTIFFS IS APPROPRIATE.....................21

V.  CONCLUSION.............................................................................................................24

- i -

## TABLE OF AUTHORITIES

**PAGE**

### FEDERAL CASES

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ...............................................................................7

*In re Aetna Inc. Sec. Litig.*,
  2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .....................................................11, 16

*Bebchick v. Washington Metro. Area Transit Comm'n*,
  805 F.2d 396 (D.C. Cir. 1986) ......................................................................................4

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)............................18

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).......................................................................................................4

*Branch v. FDIC*,
  No. 91-CV-13270, 1998 WL 151249 (D. Mass. Mar. 24, 1998)....................................6

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 907 (S.D. Ohio 2001) .........................................................................24

*In re Buspirone Antitrust Litig.*,
  2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003)..............................................7

*Bussie v. Allmerica Fin. Corp.*,
  1999 U.S. Dist. LEXIS 7793 (D. Mass. May 19, 1999) ................................................24

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  216 F.R.D. 197 (D. Me. 2003)..............................................................................6, 7, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  292 F. Supp. 2d 184 (D. Me. 2003) ..............................................................................23

*Conley v. Sears, Roebuck & Co.*,
  222 B.R. 181 (D. Mass. 1998) ..................................................................................6, 7

*In re Continental Illinois Secs. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ........................................................................................14

*Cosgrove v. Sullivan*,
  759 F. Supp. 166 (S.D.N.Y. 1991)................................................................................11

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*,
  108 F.R.D. 237 (1985) ...................................................................................................15

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  989 F. Supp. 375 (D. Mass. 1997) ..................................................................................6

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) .................................................................................24

*Eisen v. Carlisle & Jacquelin*,
  479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974)...............19

*In re Fidelity/Micron Sec. Litig.*,
  167 F.3d 735 (1st Cir. 1999) ...............................................................................4, 5, 20

*In re Fidelity/Micron Sec. Litig.*,
  1998 U.S. Dist. LEXIS 21698 (D. Mass. June 5, 1998), *vacated on other grounds*,
  167 F.3d 735 (1st Cir. 1999) ..........................................................................................6

*In re Fleet/Norstar Sec. Litig.*,
  935 F. Supp. 99 (D.R.I. 1996).............................................................................6, 7, 13

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)......................................................................................15, 16

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ..........................................................................................7

*Goldberger v. Integrated Resource, Inc.*,
  209 F.3d 43 (2d Cir. 2000)......................................................................................16, 18

*Goldenberg v. Marriott PLP Corp.*,
  33 F. Supp. 2d 434 (D. Md. 1998) ................................................................................10

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)..........................................................................................15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).......................................................................................................13

*Lipsett v. Blanco*,
  975 F.2d 934 (1st Cir. 1992)..........................................................................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002)......................................................................................23

001534-16 288677 V1

*In re Lorazepam & Clorazepate Antitrust Litig.*,
2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003) ......................................................7

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) ..................................................6

*MCI Commc'ns Corp. v. American Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) .........................................................................................19

*Mashburn v. National Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ...................................................................................4

*In re Merry-Go Round Enters., Inc.*,
244 B.R. 327 (Bankr. D. Md. 2000) ..................................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................10, 11

*In re Newbridge Networks Sec. Litig.*,
1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 23, 1998)....................................................17

*In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
982 F.2d 603 (1st Cir. 1992).............................................................................................20

*In re Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...............................................................................................7

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)........................................................................................ *passim*

*In re RJR Nabisco Sec. Litig.*,
1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992)................................................11

*Rabin v. Concord Assets Group*,
1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ................................................10

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)........................................................................................6, 7

*In re Revco Litig.*,
1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992)....................................................24

*In re Rite Aid Corp. Secs. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) .........................................................................10, 11

001534-16 288677 V1

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997)...........................................................................11, 24

*Rosenbaum v. MacAllister*,
   64 F.3d 1439 (10th Cir. 1995) ...............................................................................19

*In re Southern Ohio Correctional Facility*,
   175 F.R.D. 270 (S.D. Ohio 1997)................................................................................23

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999)..........................................................................10

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995)................................................................................ *passim*

*Triangle Indus., Inc. Shareholders Litig.*,
   1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) .........................................................11

*United States Football League v. National Football League*,
   644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) ........................19

*In re Vitamins Antitrust Litig.*,
   2001 U.S. Dist. LEXIS 25067 (D.D.C. July 13, 2001)................................................7, 20

*Vizcaino v. Microsoft Corp.*,
   142 F. Supp. 2d 1299 (W.D. Wash. 2001).....................................................................11

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................................7

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)............................19

*Weiss v. Mercedes-Benz of N. Am.*,
   899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995)................................11

# I.    INTRODUCTION

Class Counsel respectfully submit this Memorandum of Law in Support of their Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensation to the Class Representatives in Association with the Track Two Settlement.  More specifically, and as set forth below, Class Counsel request that the Court approve an award of fees and expenses in the aggregate amount of $37,500,000 to be paid out of the $125 million common fund created by the Track 2 Settlement.  This amount represents a combined fee and expense award of 30% of the common fund.

Class Counsel also request that the Court approve compensation for the Track 2 Class Representatives totaling $9,675 based on an award of 20% of the time they spent providing documents and testimony in connection with the case, compensated at $100 per hour.  Like the attorneys' fees and expenses, these amounts would be paid out of the common fund.

Pursuant to the terms of the Settlement, Track Two Defendants do not oppose these requests.  As of March 31, 2008, four days before the amendments to the Track Two Settlement were filed with the Court on April 4, 2008 for preliminary approval, Class Counsel had expended a total of 206,789.09 hours in this case, a lodestar totaling $71,387,965.47 at historical billing rates, as well as $10,520,273.88 in total expenses.[1/2]  And lodestar and expenses have continued

---

[1] The Declaration Of Marc H. Edelson In Support Of Class Plaintiffs' Joint Petition For Attorneys' Fees And Reimbursement Of Expenses In Relation To Track 2 Settlement ("Edelson Decl."), submitted herewith, sets forth the breakdown of total unaudited attorney hours, fees and expenses incurred from inception through March 31, 2008.  Class Counsel will provide back-up for all attorney fees and expenses sought for reimbursement, if the Court wishes.  We also note that it is possible that we have not received complete information from all counsel and that, consequently, the lodestar information attached to the Edelson Declaration may change.  Nonetheless, Class Counsel believe that it is a reasonable approximation of the hours and expenses incurred through March 31, 2008.  Edelson Decl. at ¶ 9.

[2] The hours and expenses quoted above are cumulative for the entire AWP litigation against all Defendants from the inception of this case in 2001 through March 31, 2008.  As the Court is well aware the MDL includes multiple Defendants in two separate tracks, and this Settlement involves a resolution of claims against only claims against Track Two Defendants.  Due to the nature of the allegations, it is not possible to attribute each attorney hour or particular expenditure to litigation against a particular Defendant.  *See* Section III.E *infra*.

to increase since then as the litigation has continued, including the defense in the First Circuit of the Massachusetts trial verdict.

The Settlement of this ground breaking litigation provides real, immediate, and substantial cash benefits of up to triple the out-of-pocket expenditures for each consumer Class Member who submits a valid claim for certain Class Drugs (for payments made during the "Heartland Period") as well a full reimbursement of total out of pocket expenditures for the remaining drugs (outside of the Heartland Period).  In each instance, the reimbursement available to consumers is in excess of the damages suffered.  TPP class members will receive a pro-rata share of the funds allocated to TPPs and the ISHP Group.

The attorneys' fee and cost award requested is eminently reasonable in light not only of the excellent result achieved for the Class (which is described in Class Counsel's Memorandum of Law in Support of Joint Motion for Final Approval of the Track Two Settlement), but also the risks involved in undertaking this groundbreaking and highly complex matter and the immense effort required in litigating the claims and the subsequent settlement negotiations.  From its inception, this case has been intensely litigated as all Defendants, including Track Two Defendants, challenged the sufficiency of Plaintiffs' allegations, discovery, class certification and liability.  The parties fought each other virtually every step of the way.  Litigating this case, therefore, has required immense time, energy and resources from Class Counsel.  Furthermore, as the Court is well aware, this case involved extremely complex and challenging issues of fact and law.  In addition, the Track Two Settlement was reached after months of arduous negotiations which were conducted in person, by telephone, and in writing and with the extensive involvement of Court appointed mediator Eric Green.

Class Counsel faced considerable risk in litigating this case on a wholly contingent-fee basis.  To date, Class Counsel have received $21,615,000 in fees and expenses associated with the GSK Settlement.[3]  In addition, Class Counsel have foregone other opportunities and devoted their time to this matter instead of others.

The result in this complex litigation and the effort required well supports the requested attorneys' fee and expense award, is justified by relevant factors considered by courts in this Circuit and others, and is in line with the fees that Class Counsel could have obtained at arm's-length in the open market.  Therefore, Class Counsel respectfully request that the Court grant this petition.

## II.    HISTORY OF THE LITIGATION

The Court is well acquainted with the history of this complex case and the unique challenges that Class Counsel have faced in representing their clients and the Classes against an array of sophisticated and well-represented Defendants, including the Track Two Defendants.  Rather than repeat here the outlines of Plaintiffs' allegations, the history of Class Counsel's efforts, and the details of the Track Two Settlement, Class Counsel respectfully refer the Court to Class Counsel's Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Track Two Settlement filed contemporaneously herewith and which is incorporated herein by reference.

---

[3] Although the Court approved an $8,580,000 award of fees and expenses to Class Counsel as part of the AstraZeneca Class 1 Settlement, that settlement is presently on appeal with the First Circuit.  Those funds have been received but not yet been distributed to Counsel.

### III.   THE COURT SHOULD APPROVE THE FEE PETITION AS FAIR AND REASONABLE

**A.   Class Counsel are Entitled to Compensation Based Upon the Benefits Created by the Litigation.**

Courts have long recognized that a lawyer who recovers a "common fund" is entitled to reasonable attorney fees from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995) ("[t]he common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs"); *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax").  "The 'common fund' doctrine is designed to spread the costs of litigation among all the beneficiaries of an identifiable fund over which a court can exercise legitimate control, in effect guarding against the unjust enrichment of passive beneficiaries at the expense of the active beneficiary."  *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and promote private enforcement of, and compliance with, various RICO and consumer protection laws.  Moreover, awards of attorney fees help to ensure adequate enforcement of class members' legal rights.  "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).

- 4 -

**B.     The Requested Fee and Expense Award is Fair and Reasonable as a Percentage of the Benefits Achieved for the Class.**

**1.     The primacy of the percentage-of-the-fund approach.**

In the First Circuit, the trial court has the discretion to apply either the lodestar, or percentage-of-the-fund ("POF") method, or a combination of the two to award attorneys' fees. *In re Thirteen Appeals*, 56 F.3d at 307.  Although the trial court's latitude in fashioning a fee award is "extremely broad," *id.* at 309 (quoting *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992)), the First Circuit has recognized that POF should be favored in common fund cases and that POF is the prevailing method because it has distinct advantages in complex cases.  *Id.* at 307.  Among those advantages:  it is less burdensome to administer, reduces the possibility of collateral disputes, enhances efficiency throughout the litigation, better approximates the workings of the marketplace, and saves the Court from having to delve into the complicated details of the lodestar.  *See In re Thirteen Appeals*, 56 F.3d at 307-08; *see also In re Fidelity/Micron*, 167 F.3d at 737.[4]  As the First Circuit explained:

> Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on "a showing that the fund conferring a benefit on the class resulted from" the lawyers' efforts.

*In re Thirteen Appeals*, 56 F.3d at 307 (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

Another circuit favors the POF method where the number of Plaintiffs' law firms and lawyers involved would make a lodestar calculation time-consuming and burdensome.  *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 331 (3d Cir.

---

[4] The trend in this Circuit is consistent with the decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (4th ed. 2004) ("The vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases.").

1998).  And as yet another court commented in adopting the POF approach and rejecting the lodestar method:  "In light of the extraordinarily large number of attorneys and support staff involved in the representation of the class and the extraordinary number of hours of legal work for which counsel seek compensation – over 7,300 – the task of administering the lodestar method of calculation is both overwhelming and wasteful."  *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996).

Many district courts within the First Circuit have indicated their preference for the POF method over the lodestar method.  *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist LEXIS 17456, at *9 (D. Mass. Aug. 17, 2005); *In re Fidelity/Micron Secs. Litig.*, 1998 U.S. Dist. LEXIS 21698 (D. Mass. June 5, 1998), *vacated on other grounds*, 167 F.3d 735 (1st Cir. 1999); *Branch v. FDIC*, No. 91-CV-13270, 1998 WL 151249, at *2-4 (D. Mass. Mar. 24, 1998); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003) (describing the method as determining whether the "total fee [is] reasonable when examined as a percentage of recovery"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998); *In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. at 108.  It is the method that this Court appropriately chose to apply in awarding fees in prior settlements in the AWP litigation.

In this case in particular, where there are multiple Defendants and the Court is considering only the fee related to a subset of the total number of Defendants, use of the POF method saves the Court and the parties from the daunting task of allocating the particular hours of the more than 250 attorneys involved to a particular Defendant.  Indeed, this Court has already

used the POF approach in awarding fees associated with the GSK Settlement as well as the

AstraZeneca Class 1 Settlement – thereby establishing a precedent for its continued use.

>    **2.    An award of 30 percent for fees and expenses is reasonable.**

Courts have approved fee awards in common fund cases in the range of 25-45%. *See,*

*e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (awarding class counsel

$22,311,000 in fees or 33% of class fund of $67,000,000, plus a separate award of litigation

expenses in the amount of $1,297,301); *In re Fleet/Norstar*, 935 F. Supp. at 109; *Conley*, 222

B.R. at 187; *In re Compact Disc*, 216 F.R.D. at 216 n.45; *Gaskill v. Gordon*, 160 F.3d 361, 363-

64 (7th Cir. 1998) (affirming award of 38% of class action settlement fund); *In re Pacific Enters.*

*Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement

fund); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 11,

2003) (awarding fees of 33-1/3% of $220 million common fund to Direct Purchaser Plaintiff's

Class Counsel); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344

(D.D.C. June 16, 2003) (awarding class counsel 30% of the common fund); *In re Vitamins*

*Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067, at *57 (D.D.C. July 13, 2001) (determining that

the one-third award was reasonable and granting class counsel fee petition in the amount of

$123,188,032 plus interest, or approximately 34% of the total estimated settlement amount, in

antitrust price fixing litigation); *In re Activision Sec. Litig.*, 723 F. Supp 1373, 1375 (N.D. Cal.

1989) (awarding a 32.8% fee and adopting a "policy of awarding approximately 30% of the fund

as attorneys' fees in the ordinary case," as "well-justified in light of the lengthy line of cases

which find such an award appropriate and reasonable….").[5]

---

[5] In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002), the court included an exhaustive table of 34 cases generating revenues ranging from $54 million to $185 million, all of which generated fees of 30% or more, including the case at the high end of the scale (45%), the $185 million settlement in *In re Merry-Go Round Enters., Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000). *See also* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja,

The Court approved a 33-1/3 percent fee and cost award in association with the GSK Settlement as well as a 30 percent fee and cost award with respect to the AstraZeneca Class 1 Settlement.  In hearings and in its orders related to these settlements, the Court has recognized that the risks incurred by Class Counsel and the results achieved for the Class have warranted the fee awards:

> Well, I do think one-third is appropriate.  I might say that, for the record, I approved that in the other case [GSK].  I think this was an incredibly risky piece of litigation which was cutting-edge and no certainty of success.  The pharmaceutical companies have done a fabulous job defending it, and it was fought tooth and nail the entire way along with the best firms in the country.

May 1, 2008 Hearing Tr. at 24 (AstraZeneca Class 1 Settlement Hearing).

**C.      The Percentage Award for the Track Two Settlement is Consistent with Class Counsel's Intention to Seek a Fee of Approximately One-Third of the Value of All Settlements.**

As Class Counsel has explained to the Court in previous settlement approval hearings, their goal is to request approximately one-third of the value of each settlement in order to ensure that Plaintiffs' attorney compensation is, at the end of all settlements, in the "ballpark" of the one-third benchmark.  We believe that this responds to the Court's earlier expressed concern that attorneys' fee awards remain reasonable across all settlements.

Comparing the actual and projected fee and cost recovery in this case against Plaintiffs' Counsel's collective lodestar accentuates the reasonableness of the percentage approach recommended by Class Counsel, as demonstrated in the table below:

---

Denise N. Martin, *Recent Trends III:  What Explains Settlements in Shareholder Class Actions?* (NERA, June 1995) (finding that "[r]egardless of case size, fees average approximately 32 percent of the settlement"); *see also* MANUAL FOR COMPLEX LITIGATION § 14.121 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund.").

| Result | Actual/Projected Fees and Costs | How Derived |
|---|---|---|
| GSK Global Settlement | $ 21,615,000 | $33^{1/3}$% |
| Astra Class 1 Settlement | 8,580,000 | 30% |
| BMS Class 1 Settlement | 4,332,900 | $33^{1/3}$% |
| Track 2 Global Settlement | 37,500,000 | 30% |
| Total | **$ 72,027,900** | |

The total projected fee and cost award of $72,027,900 barely exceeds the March 31, 2008 lodestar figure of $71,387,965.47, even though the results achieved in the AWP litigation warrant a substantial multiplier. And, of course, this lodestar amount has increased over the course of the past year, as Class Counsel continued to expend resources handling the numerous appeals in the First Circuit of the Massachusetts trial verdict and the GSK Settlement, as well as prosecuting the Class 2/3 case against AstraZeneca and BMS and continuing to work on the Track 2 Settlement. In addition, Class Counsel continue to spend time on a multitude of issues related to settlement administration. Thus, Counsel will remain "under water" with respect to fee and cost recovery in this case as a whole, even after receipt of the foregoing anticipated awards, if the Court chooses to approve the remainder of them.

An award of approximately one-third of the value of each settlement at each step along the way will lead to a reasonable, overall fee and cost award to Class Counsel. It will also further the First Circuit fee award guideposts of ease of administration, a reduction in the possibility of collateral disputes, enhanced efficiency throughout the litigation, and a better approximation of the workings of the marketplace. *In re Thirteen Appeals*, 56 F.3d at 307-08.

Moreover, the fees paid by each settlement class are proportional to the settlement amounts assignable to each settlement class, as the following table demonstrates:

| Settlement | Amount | Percent of Total Amount | Actual/Projected Fees and Costs | Percent of Total Fees |
|---|---|---|---|---|
| GSK Global | $ 65,500,000 | 28.2 | $ 21,615,000 | 30 |
| Astra Class 1 | 28,600,000 | 12.3 | 8,580,000 | 11.9 |
| BMS Class 1 | 13,000,000 | 5.6 | 4,332,900 | 6 |
| Track 2 Global | $125,000,000 | 53.9 | 37,500,000 | 52.1 |
| Total | $ 232,100,000 | | $ 72,027,900 | |

In other words, the Track 2 fee and cost recovery, if awarded as requested, will be 52.1 percent of all fees awarded in the AWP litigation, which is commensurate with the Track 2 Settlement value representing 53.9 percent of the value of all AWP settlements.

**D.     A Cross-Check With the Lodestar Confirms the Reasonableness of the Requested Fee and Expense Award.**

As noted, the First Circuit also provides the Court with the discretion to employ the lodestar approach as a "cross-check" in combination with the POF approach, although it is not required.  *In re Thirteen Appeals*, 56 F.3d at 307 (describing lodestar as reasonable hours spent times reasonable hourly rated, subject to a multiplier or discount for special circumstances, plus reasonable disbursements); *In re Compact Disc*, 216 F.R.D. at 215-16.  As the MANUAL FOR COMPLEX LITIGATION § 14.122 explains, "the lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant.  The total lodestar estimate is then divided into the proposed fee calculated under the percentage method.  The resulting figure represents the lodestar multiplier to compare to multipliers in other cases."

Multipliers of between 3 and 4.5 have been common.  *See, e.g., In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 n.6 (D. Md. 1998); *Rabin v. Concord Assets Group*, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991); *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa.

2001) (recognizing that a "lodestar multiple in the range of 4.5 to 8.5" is "unquestionably

reasonable" under the cross-check approach); *Weiss v. Mercedes-Benz of N. Am.,* 899 F. Supp.

1297, 1304 (D.N.J. 1995) (awarding fee that resulted in a multiplier of 9.3 times hourly rate),

*aff'd*, 66 F.3d 314 (3d Cir. 1995); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 198 (S.D.N.Y.

1997) (awarding a 5.5 multiplier); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D.

465 (awarding a multiplier of 3.97); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1305-06

(W.D. Wash. 2001) (approving multiplier of 3.67); *In re Aetna Inc. Sec. Litig.,* 2001 U.S. Dist.

LEXIS 68 (E.D. Pa. Jan. 4, 2001) (awarding a multiplier of 3.6); *Triangle Indus., Inc.*

*Shareholders Litig.,* 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) (awarding fee equal to

6.6 multiplier on $70 million recovery); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991)

(awarding fee equal to a multiplier of 8.84); *In re RJR Nabisco Sec. Litig.*, 1992 U.S. Dist. Lexis

12702, at *16 (S.D.N.Y. Aug. 24, 1992) (6 multiplier).

When used as a cross-check, the lodestar calculation can be based on time and expense

summaries in lieu of detailed records.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*,

148 F.3d at 332 n.107.  In other words, the Court's inquiry into the lodestar is not as focused and

detailed as it would otherwise be for an award primarily determined under a lodestar method,

which is consistent with the First Circuit's desire that district courts focus on the benefit

conferred on the class and not on a complex and time-consuming "review [of] the time records of

a multitude of attorneys in order to determine the necessity and reasonableness of every hour

expended . . . ."  *In re Thirteen Appeals*, 56 F.3d at 307 (quoting *Camden I Condo. Ass'n, Inc. v.

Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

Class Counsel report a total lodestar in the AWP MDL of $71,387,965.47 (using

historical billing rates) and total costs expended of $10,520,273.88 through March 31, 2008, four

- 11 -

days before the amendments to the Track Two Settlement Agreement were submitted on April 4, 2008. Edelson Decl. at ¶¶ 5-6.[6]  Thus, the award sought here is but a fraction of the total lodestar incurred in the case.  And if the total projected fee/cost awards in all AWP settlements ($72,027,900) were divided by total lodestar reported through March 31, 2008 ($71,387,965.47), a tiny, immaterial lodestar results – much lower than what Class Counsel should be entitled to given the effort expended and results achieved (which easily justify a multiplier of two or three or more).  However, the reality is that a "negative" multiplier would result, as the lodestar has continued to grow over the last year as Class Counsel have continued to prosecute the litigation.[7]

## E.    Attempting to Provide The Court a Track 2 Specific Lodestar.

In previous hearings, the Court has asked Class Counsel how time can be divided to isolate efforts related to specific Defendants, such as the group of Track 2 Defendants.  This would be a daunting and monumental task.  More than 250 attorneys have spent time working on this case for plaintiffs, a testament to the breathtaking scope and complexity of this litigation.  Indeed, attorneys and paralegals had collectively billed over 206,789 hours as of March 31, 2008 alone.  Edelson Decl. at ¶ 5.  The sheer number of work hours underpinning the lodestar highlights how time-consuming and burdensome a detailed lodestar inquiry would be and

---

[6] The foregoing numbers remain unaudited, and it is possible that we have not received complete information from all counsel.  Consequently, the lodestar and expense information may change once a final accounting is done.  Nonetheless, Class Counsel believe that these figures are a reasonable approximation of the hours and expenses incurred by counsel in the AWP class litigation through March 31, 2008.  Edelson Decl. at ¶ 9.  For present purposes, these reasonable approximations suffice given that the Court is applying the POF method and using the lodestar approach as a cross-check.  *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 332 n.107.

[7] Furthermore, the lodestar calculation here is based on each law firm's historic rate (those in effect when the work was done, over the six and a half years this case has been pending).  Class Counsel are providing this historic rate calculation for present purposes because it is more conservative, even though the First Circuit has noted the appropriateness of calculating the lodestar on current hourly rates (*i.e.*, in this case, those in effect in 2009 at each firm) because of the delay in payment of the fees to the firms performing the work, as well as other factors.  *See Lipsett v. Blanco*, 975 F.2d 934, 942-43 (1st Cir. 1992).  Given this precedent, it would be appropriate to calculate the lodestar of all firms at current rates, which would yield a higher total lodestar and a correspondingly lower multiplier.

demonstrates why the POF approach works best for this litigation. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 331; *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 108. It is extremely difficult to apportion those 206,789 hours by Defendant or to attribute a specific loadstar to the group of Track 2 Defendants given the breadth of common issues and the number of tasks completed over the last seven-and-a-half years. An attempt to do so would involve a very time-consuming and expensive audit.

In addressing multiple claims based on a core of common facts, the Supreme Court has recognized that the focus should be placed on the overall relief provided:

> In other cases the plaintiff's claims for relief will involve a "common core of facts" or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorneys should recover a fully compensatory fee.

*Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

The same concept applies here to claims against multiple defendants where common issues are inextricably intertwined. An immense amount of work was done on common issues, work that cannot be segregated from other aspects of the prosecution. This work includes researching and drafting complaints; working on issues related to the initial MDL motions; a panoply of issues related to the use of AWP as a benchmark in the Medicare program and in the private insurance market; legal research and drafting of briefs on the joint motions to dismiss, joint motions for summary judgment, and briefing associated with class certification; coordination with experts regarding class certification issues; motions and discovery related to

- 13 -

many third parties, including governmental organizations, trade associations and the hundreds of insurers, pharmacies and other market participants subpoenaed by Defendants.

This Court has previously recognized the difficulty in apportioning lodestar to specific Defendants: "A percentage-of-fund approach makes more sense because this multi-district litigation has many moving parts with common issues and it would be too difficult to calculate a fair lodestar for this piece of the litigation." *Memorandum and Order Re: Requested Final Approval of the AstraZeneca Class 1 Settlement* [Docket No. 5624] at 4.

Because of the challenges outlined above, and because the fee amount requested is undoubtedly reasonable under the POF method, no effort was made to determine the precise amount of fees that would be specifically attributable to prosecuting the case against the Track Two Defendants, which Class Counsel believe cannot be done.[8]

As with attempting to calculate a loadstar specific to the Track Two Defendants, splitting expenses by Defendant and calculating expenses fairly attributable to Track Two Defendants alone is very difficult to do given the existence of so many common issues. Moreover, the very nature of the expenses themselves makes allocation by defendant extremely difficult. Counsel did not track expenses by Defendant and, with some limited exceptions, we are unable to go back and re-assign expenses by Defendant. These include expenses incurred for expert work,

---

[8] The Court has also in the past requested that Class Counsel provide more information on the billing rates underpinning the lodestar calculation. The exhibit attached to the Edelson Declaration summarizes the hours, lodestar and expenses incurred by each firm that has worked on the AWP litigation since inception. This schedule was prepared from computerized records that were contemporaneously generated and maintained by each firm in the ordinary course of business and reported to Class Counsel periodically. Edelson Decl. at ¶ 4. The rates underpinning the lodestar calculations by firm range from a low of $165 per hour for junior associate attorneys to a high of $650 per hour for the most experienced partners and reflect the firms' hourly rates paid by hourly-billed clients and, separately, approved for payment by other courts in class and derivative litigation. Rates as high as $700, which previously concerned the Court, are not included in the lodestar calculation. However, such rates would be justified given market prices and the value obtained for the Class. As Judge Posner postulated in discussing the award of fees *In re Continental Illinois Secs. Litig.*, 962 F.2d 566 (7th Cir. 1992), courts should not place caps on hourly rates of lawyers for the class and should instead "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id.* at 568; *see also In re Thirteen Appeals*, 56 F.3d at 307 (citing Continental with approval and noting that the POF method better approximates the workings of the marketplace since "the market pays for the result achieved").

including the development of Dr. Rosenthal and Dr. Hartman's many reports; Court fees

(including fees incurred for use of the Court's electronic filing system); subpoena costs;

technology services, including maintaining and servicing computer stations for document

review; mail and fax charges; computer research charges (*e.g.,* Lexis/Nexis); photocopy

expenses; and some travel expenses.  All of the expenses incurred were reasonable and necessary

for the prosecution of this litigation, even though they are not amenable to division by particular

Defendant.  It may be possible to construct an expense allocation model taking into consideration

reasonable assumptions based on the number of defendants, but this would be very time

consuming and not necessary where the lodestar is used as a cross-check to the POF approach.

Given the "extremely broad" discretion that the Court has in evaluating an attorneys' fee

and cost petition in class litigation, *In re Thirteen Appeals*, 56 F.3d at 309 (emphasis added),

Class Counsel strongly believe that the foregoing lodestar and expense information suffices for

purposes of a rough cross-check on the reasonableness of the POF fee and cost award.

**F.    Various Other Factors Applied by This Circuit and Others Support Class Counsel's Request.**

The First Circuit has not required that lower courts use a particular set of factors to

determine the reasonableness of the fee request.  However, the Third Circuit Task Force Report

approved certain factors to assist courts in this analysis.  Among other things, these factors

include:  (i) the size of the fund created and the number of persons benefited; (ii) the skill and

efficiency of the attorneys involved; (iii) the complexity and duration of the litigation; (iv) the

risk of nonpayment; (v) the amount of time devoted to the case by plaintiffs' counsel; and

(vi) the awards in similar cases.  *See Court Awarded Attorney Fees, Report of the Third Circuit

Task Force*, 108 F.R.D. 237, 245 (1985); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d

190, 195 n.1 (3d Cir. 2000) (applying factors); *In re GMC Pick-up Truck Fuel Tank Prods. Liab.*

*Litig.*, 55 F.3d 768, 819-22 (3d Cir. 1995) (same).  The Second Circuit has adopted a similar list of factors:  the time and labor expended by Class Counsel, the complexities of the litigation, the risks borne by Class Counsel in litigating this case on a contingency fee basis, the quality of the representation provided, the fee request in relation to the settlement, public policy considerations and the reaction of the Class to the settlement.  *See Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000).

Applying these factors, the award for both fees and litigation expenses in this case is fair and reasonable.

**1.      The size of the fund created and the number of people who benefit.**

The total fund here eligible to be claimed is $125,000,000 and will benefit tens-of-thousands of consumers and thousands of Third-Party Payors.  The Settlement is described at length in Class Counsel's Memorandum of Law in Support of Motion for Final Approval of Track Two Settlement, filed simultaneously herewith.  To avoid duplication, Class Counsel hereby incorporates that description by reference.

**2.      The time and labor expended by counsel.**

Class Counsel have been investigating and litigating this case intensely and thoroughly over a period of seven-and-a-half years.  Class Counsel have devoted considerable time, energy, and resources from the beginning of this case through discovery and motion practice, through a Class 2 and 3 Massachusetts Track One trial and until settlement with various Track One and Track Two Defendants.  From the very beginning, "Defendants mounted an aggressive and vigorous defense throughout the course of this litigation."  *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, at *46.

This litigation required an all-out effort by Class Counsel.  First, the motion practice in this case itself required enormous work, as the case raised many complex and difficult legal and

- 16 -

factual issues.  This required Class Counsel to oppose more than one round of substantial motions to dismiss as well as class certification motions.  Second, discovery in this case was extensive.  Class Counsel had to devote substantial energy and thousands of hours in obtaining, inventorying, and examining millions of documents produced by Track Two Defendants.  Even more time and effort was necessary to cull those documents and create a useful database – an invaluable tool for identifying key issues and evidence for depositions and possible trial.

Class Counsel also spent considerable time consulting with economic experts concerning the economic impact of Defendants' scheme on the Class and the measure and amount of damages to the Class.  Finally, Class Counsel spent many hours researching and briefing complex legal issues for more than one round of motions to dismiss and class certification motions.  These "efforts in posturing this case for trial . . . played a role in spurring the settlement [and] produced a substantial payout to the class."  *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist LEXIS 23238, at *11 (D.D.C. Oct. 23, 1998).

Throughout this entire process, Class Counsel have litigated this case with extreme efficiency.  The bulk of the work was handled by a small number of experienced attorneys.  Assignments were allocated so that work was performed expeditiously, efficiently and in an organized manner.  Review and repetition were avoided.

Moreover, the significant investment of time required by this action necessarily precluded Class Counsel from working on other matters.  Class Counsel expended hours and incurred expenses in prosecuting this case, and were prepared to put at risk more time and money had the claims against Track Two Defendants not settled.

Based on all of the above factors, the fee and expense award requested by Class Counsel is reasonable in light of the risk, quantity, and quality of work expended by Class Counsel over the last seven-and-a-half years.

### 3. The complexity and duration of the litigation.

The complexity of the issues and the duration of the litigation support the award requested. Class actions alleging violations of RICO and fraud, particularly in the pharmaceutical reimbursement context, are arguably the most complex class actions to prosecute because the legal and factual issues are inherently complicated and uncertain. In fact, in addition to the legal issues involved in overcoming the Defendants' motions to dismiss, this case involved some highly technical and complex issues with regard to pharmaceutical reimbursement systems, pharmacy benefit manager contracting, health insurance, federal regulation, and preemption. These legal issues required exhaustive research and briefing.

### 4. The risk of nonpayment.

A determination of a fair fee must include consideration of the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by Plaintiffs' counsel, and the fact that the risks of failure and nonpayment are extremely high. Many cases recognize that attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award. *Goldberger*, 209 F.3d at 54 (citation omitted). In *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the court noted that:

> Generally, the contingency arrangement must be promoted to assure representation when a person could not otherwise afford the services of a lawyer… A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing. [*Id*. (citations omitted).]

The history of complex litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal.  *See*, *e.g.*, *United States Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Commc'ns Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983) (remanding antitrust judgment for new trial and damages); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (following two trips to the Court of Appeals and one to the U.S. Supreme Court, plaintiffs, the putative class, and their counsel recovered nothing), *vacated on other grounds*, 417 U.S. 156 (1974).

Indeed, when Class Counsel undertook representation of the Class, there were no assurances that any fees would ever be received.  Class Counsel were aware that they would likely have to overcome the daunting difficulties, and would have to expend thousands of hours and millions of dollars, in prosecuting this case over an extended period of time before having even a possibility of recovering fees and expenses.  Class Counsel alone bore the risk of the case being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal.

Because of the risk undertaken by Class Counsel, the requested fee award is reasonable.

**5.      The skill and efficiency of the attorneys involved.**

The experience, reputation, and ability of plaintiff's counsel has often been noted as a key factor in a court's consideration of counsel's fee request.  *See*, *e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 n.3 (10th Cir. 1995).  The Settlement here was not easily achieved.  Negotiations were hard-fought and protracted and did not produce a settlement until after the Class 2/3 trial with respect to Track One Defendants.  Track Two Defendants are

represented by experienced and highly-regarded counsel, and they contested this litigation at every stage.  Therefore, settlement negotiations required persistence, negotiating skill, and a willingness to take this case to trial.  Class Counsel employed all of these, and obtained a settlement agreement.

Class Counsel here are among the country's leading firms in prosecuting and trying complex actions and class actions in particular, with particular expertise in actions involving the pharmaceutical industry, and a demonstrated track record of accepting difficult cases and taking them to trial.  Due to the quality of representation and the significant results achieved by Class Counsel, the requested fee and expense award is reasonable.

**G.   Class Counsel's Expenses are Reasonable and Should be Factored in the Court's Consideration of the Fee and Expense Award.**

In addition to being entitled to reasonable attorneys' fees, it is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."  *In re Fidelity/Micron Secs. Litig*, 167 F.3d at 737; *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067, at *67 (holding that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund") (citations omitted).  "[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms."  *In re Fidelity/Micron Secs. Litig.*, 167 F.3d at 737.

The expenses incurred in this litigation in the amount of $10,520,273.88 are described in the accompanying Edelson Declaration.  They are the type of expenses typically billed by

- 20 -

attorneys to paying clients in the marketplace and include such costs as fees paid to experts, computerized research and other services, deposition and transcript expenses and travel expenses in connection with this litigation through April 4, 2008.  These expenses were reasonable and necessary for the prosecution of this litigation.

## IV.    COMPENSATION TO THE NAMED PLAINTIFFS IS APPROPRIATE

Class Counsel request that the Court approve compensation to the named class representatives.  As with the approval of compensation to named representatives in both the GSK and AstraZeneca Class 1 Settlements, and consistent with the Court's previous instructions, the amount of compensation sought on behalf of named representatives is, with one exception, based upon the hours expended in furtherance of the litigation.  Like the combined attorneys' fees and expense award, these amounts would be paid from the common fund.

In July 2007, in connection with the GSK Settlement, the named class representatives in the GSK Settlement each submitted affidavits attesting to the time expended in furtherance of the litigation.  With one exception, each of the class representatives in the Track Two Settlement submitted such an affidavit in relation to the GSK Settlement.  *See* Co-Lead Counsel's Motion for Order Authorizing Compensation to Consumers and Third-Party Payor Class Representatives (Docket No. 4509).  Each class representative in that settlement included a tally of the time spent responding to document requests, conferring with Class Counsel and preparing for depositions related to class certification and/or the merits of Plaintiffs' claims, among other tasks necessary to fulfill their obligations as class representatives.  Rather than request that the full amount of time be compensated at the Court-suggested rate of $100 per hour out of the GSK Settlement, and the Court agreed to an award.  *See* Docket No. 4619.  An award of only 20% of the overall time expended on behalf of the litigation was meant to allow for the possibility that the

- 21 -

remaining compensation would come from future settlement and/or verdicts against the

remaining Defendants.

Based on the same tally of time expended by each of the class representatives, Class

Counsel now seek an additional payment to these named representatives of an additional 20% of

their total expended time as set forth in the table below:

| Declarant | Representative Of | Class | T2 Hours Claimed | Compensation Requested |
|---|---|---|---|---|
| Daniel C. Ryan | United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund | 2 & 3 | 17.3 | $1,730 |
| | Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust | 2 | | |
| Glenn Randle | Sheet Metal Workers National Health Fund | 2 | 10.2 (Sheet Metals) 1.7 (claims administrator) | $1,020 (Sheet Metals) $170 (claims administrator) |
| William Einhorn | Teamsters Health & Welfare Fund of Philadelphia and Vicinity | 3 | 25.4 | $2,540 |
| Arthur Steinberg | Philadelphia Federation of Teachers Health and Welfare Fund | 3 | 12.6 | $1,260 |
| Stephen C. Richman | Man-U Service Contract Trust Fund | 3 | 8.35 | $835 |
| Charles Hannaford | Pipefitter's Local 537 Trust Funds | 3 | 8.2 | $820 |
| William A. Rhodes, Jr. | Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund | 3 | 13.0 | $1,300 |

The one exception to the methodology for compensation to named representatives as outlined above is with respect to the recently added class representative for Class 1, Ms. Tonacchio.  In July 2008, Class Plaintiffs sought and were granted permission to add Ms. Tonacchio as a Class 1 representative for purposes of the Track Two Settlement.  Due to her late addition as a class representative, Ms. Tonacchio has spent less time than other class representatives in furtherance of the litigation.  She has, however, spent time procuring relevant medical records and providing information about drug payments to Class Counsel.  In recognition of these efforts, Class Counsel respectfully request that the Court award Ms. Tonacchio a one-time payment of $500 from the common fund.

Compensation to named plaintiffs is "not uncommon in class action litigation . . . particularly where a common fund has been created for the benefit of the entire class. . . . [C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *see also In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997) (collecting cases in which awards to named representatives approved).  A district court in the First Circuit has stated that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003).  Further, in determining whether such compensation is warranted, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in

obtaining recoveries for persons other than themselves. *Bussie v. Allmerica Fin. Corp.*, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999).

The class representatives here actively and effectively fulfilled their obligations as representatives for the Class. The Plaintiffs went above and beyond the call of duty in complying with demands placed upon them during this litigation. Of crucial importance is the willingness of the Plaintiffs to bring this action in the first place. Each of the named Plaintiffs also monitored the case and discussed its progress with counsel and consulted with counsel concerning the Settlement.

The requested compensation is more than justified, because of the named plaintiffs' active and prominent role in this litigation. In such situations, courts have awarded compensation of the requested amount and larger. *See, e.g.*, *In re Revco Litig.*, 1992 U.S. Dist. LEXIS 7852, at *22 (N.D. Ohio May 5, 1992) (awarding $200,000 to a named plaintiff); *Roberts v. Texaco, Inc.*, 979 F. Supp. at 203-04 (awarding $85,000 to a named plaintiff); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding $55,000 each to two named plaintiffs); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (awarding $50,000 to the class representative).

Finally, the Notice to the Class advised Class members that Class Counsel would apply for such compensation on behalf of Class Representatives, and no Class member has to date objected to such an award.

## V.    CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court approve the fee and expense petition and enter an order awarding Class Counsel the attorneys' fees and expenses requested and the compensation for the class representatives.

DATED:  March 2, 2009

By____/s/ **Steve W. Berman**_____

   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

001534-16  288677 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on March 2, 2009, I caused copies of **CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATION TO THE CLASS REPRESENTATIVES IN ASSOCIATON WITH THE TRACK TWO SETTLEMENT** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

 /s/ Steve W. Berman
Steve W. Berman

001534-16 288677 V1