**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL No.1456 <br><br> Master File No. 01-CV-12257-PBS <br> Subcategory Case No. 06-11337-PBS |
| THIS DOCUMENT RELATES TO: <br> *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al.*, Civil Action No. 07-10248-PBS | ) ) ) ) ) ) ) | Judge Patti B. Saris <br><br> Magistrate Judge Marianne B. Bowler |

**ROXANE DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL TESTIMONY**

Plaintiffs' motion to compel testimony is nothing more than a thinly veiled attempt to engage in an untimely fishing expedition for facts to support new legal theories. ***Two months*** after the close of fact discovery in this case, and in the midst of ongoing expert discovery, Plaintiffs yet again file a motion seeking to circumvent the long-past fact discovery deadline, this time threatening to disrupt the schedule for expert discovery established by this Court over six months ago. As described below, Plaintiffs' motion essentially seeks to re-open fact discovery on a broad variety of issues—many of which could have been explored during the preceding year-and-a-half period that this Court provided for fact discovery. Other topics on which Plaintiffs now belatedly seek discovery are simply impermissible discovery topics under any time frame.

Plaintiffs claim that they are entitled to additional testimony in three separate areas. *First*, despite explicit representations to the Court that they would not need ***any*** discovery on the NovaPlus Ipratropium Bromide NDCs that they added two weeks before the close of fact discovery, Plaintiffs now seek to reconvene a Rule 30(b)(6) deposition to conduct additional

discovery on these very drugs.  Plaintiffs seek this discovery even though Government counsel fully concedes that the topics noticed for this Rule 30(b)(6) deposition had ***nothing*** to do with the NovaPlus drugs and therefore any questioning that the Government would conduct would be well outside the purview of the noticed Rule 30(b)(6) topics.  Plaintiffs' approach here not only violates the fundamental purpose of a Rule 30(b)(6) deposition, as well as the procedures for these depositions mandated by the governing case management order, but it is also a transparent attempt to continue one-sided fact discovery well-beyond the December 15, 2008 cut-off imposed by this Court.

*Second*, Plaintiffs also now seek brand new Rule 30(b)(6) depositions from two additional Boehringer entities (Boehringer Ingelheim Corporation (BIC) and Boehringer Ingelheim Pharmaceuticals, Inc. (BIPI)) whose drugs and pricing decisions are not at issue in this litigation, and whose sole presence in this litigation is based on unsubstantiated corporate alter-ego allegations.  In pursuing such discovery, Plaintiffs improperly seek to circumvent this Court's prior rejection of their attempt to conduct wide-ranging discovery on entities whose drugs are not at issue in this case.  Because Plaintiffs' Rule 30(b)(6) topics are properly applicable to Roxane alone, their request to conduct eleventh-hour discovery of other Boehringer entities whose pricing practices are not relevant should be rejected.

*Third*, the Government seeks to compel an additional deposition of yet another Roxane employee, long after the discovery cut-off, without any showing of need for the deposition.  Specifically, Plaintiffs seek to capitalize on the cancellation of the deposition of a former Roxane employee due to health reasons, and convert this unfortunate cancellation into an opportunity to depose a brand new witness.  There is no need for even more fact discovery at this late stage of the case, and Plaintiffs make no showing that the testimony they seek would not be cumulative

of the voluminous discovery already taken in these AWP cases. Accordingly, the Court should reject their attempt to unilaterally continue fact discovery.

## BACKGROUND

1.    The Government's Conduct During the Rule 30(b)(6) Deposition of Roxane's Corporate Representative.

On October 31, 2008, the Government requested a Rule 30(b)(6) deposition of a Roxane corporate representative on various topics. (Ex. A, 10/31/08 Ltr. from L. Oberembt to E. Gortner). After several meet and confers, the parties agreed that Roxane would present a corporate representative for a Rule 30(b)(6) deposition on December 12, 2008 to testify on a limited subset of the topics enumerated in the Government's notice. Specifically, Roxane agreed to provide Rule 30(b)(6) testimony focused on Roxane's contention that the United States and state governments approved of and acquiesced in the AWP pricing practice. (Ex. B, 11/25/08 Ltr. from E. Gortner to G. Henderson). The parties were able to agree to a truncated list of topics because of the wide-ranging and extensive deposition testimony already taken from numerous Roxane employees over the course of several years in these AWP cases. None of the noticed Rule 30(b)(6) topics pertained to the pricing or marketing of NovaPlus Ipratropium Bromide. In advance of the deposition, Roxane informed the Government that Judy Waterer would be its Rule 30(b)(6) designee.

On December 2, 2008, just prior to the December 12, 2008, Rule 30(b)(6) deposition, this Court granted Plaintiffs' motion to amend their complaint to add three NDCs related to NovaPlus Ipratropium Bromide, a private-label version of Roxane's Ipratropium Bromide that was marketed and sold by Novation, a large group purchasing organization, to its hospital members. In its brief, the Government argued that one of the principal reasons why the Court should allow this last-minute addition of these drugs was that the burden on Roxane would be minimal.

Specifically, the Government represented that it would not need to conduct additional discovery on these NovaPlus drugs because, in its view, these drugs were "already fully at issue in the case," and thus the preceding year-and-a-half fact discovery period presumably was sufficient for the Government to ascertain any needed facts. (Ex. C, Mem. in Supp. of Pl's Mot. for Leave to File Am. Compl. at 6).

At the beginning of the December 12 deposition, over Roxane's objections, Government counsel made clear his pre-planned intention to ask questions outside the scope of the noticed 30(b)(6) deposition topics.  (Ex. D, 12/12/08 Waterer Dep. Tr. 35:21-36:6, 36:13-17).  Contrary to the Government's prior representations to this Court (and Roxane), Government counsel indicated that he intended to ask a series of questions targeting NovaPlus drugs, even though counsel forthrightly acknowledged that this topic was outside the scope of the agreed-upon Rule 30(b)(6) topics.  (*Id.* at 116:20-21, "I agree it's outside the scope of the 30(b)(6) notice."). However, counsel insisted on asking the questions: "I'm not limited by the topics.  They don't limit the scope of my questions . . . . The topics are not a limitation on the scope of my questioning."  (*Id.* at 35:22-36:1, 36:5-6).

Despite the Government's attempt to conduct discovery by ambush, Roxane's counsel nevertheless allowed the witness to answer the majority of the NovaPlus questions over her objections.  (*See, e.g.*, *id.* at 104:10-105:15, 112:6-113:9, 114:17-21, 116:4-117:7, 118:12-120:3).   However, when the Government's counsel persisted, and it became clear that he intended to proceed as if he were taking a brand-new Rule 30(b)(1) fact deposition of Ms. Waterer on NovaPlus topics (without having noticed such a deposition in advance), Roxane's counsel made the following statement on the record:

> I wanted to make a quick statement on the record, which is that Roxane objects to questioning of Ms. Waterer **in her corporate representative capacity** outside the

scope of the topics in the notice, and we will put those objections on the record. And to the extent that the questioning goes beyond what we feel is the appropriate scope of the topics, we will instruct the witness not to answer, end the deposition if that be necessary. In addition, Mr. Henderson is going to try to clarify some of this, but there have been some questions about Ms. Waterer's personal knowledge and whether those questions also apply to what the corporate position is on those issues. And **Roxane's position is to the extent Ms. Waterer was questioned in her personal knowledge**, unless it is clarified in the record that those aren't— **that testimony is not binding on the corporation**, that in the future, the questions will be—should be phrased in terms of what Roxane's corporate knowledge is, as that's the role that Ms. Waterer is playing today.

(*Id.* at 106:5-107:6) (emphasis added).  After Government counsel continued to ignore Roxane counsel's concerns about the ambiguity of the testimony with respect to corporate versus personal capacity, and instead proceeded with an entire line of questions that were outside the deposition notice, Roxane's counsel objected, stating: "I'm going to object to this as beyond the scope of the deposition testimony and allow Ms. Waterer to answer only to the extent that she has actual knowledge of the answers to these questions and put on the record that she has not been prepared as a corporate representative on these questions . . .  or is aware of what the corporate knowledge is on these issues." (*Id.* at 113:13-21).

Because of the continuing confusion of the testimony, in the end, Roxane's counsel directly instructed Ms. Waterer not to answer only ***four*** of the plethora of questions that the Government asked about NovaPlus—one of which was improperly directed to Waterer's capacity as corporate representative and the last of which was only tangentially related to NovaPlus:

> Q  Would it have been ***Roxane's normal practice*** to report those AWPs to Red Book?  (*Id.* at 114:22-115:1) (emphasis added).

> Q  Do you know whether or not the AWPs that were reported to Red Book for the Ipratropium Bromide NovaPlus were the same as the AWPs that Roxane reported for its other Ipratropium Bromide, its corresponding Ipratropium Bromide generic products?  (*Id.* at 115:8-13).

Q  All right.  Can you tell me whether or not the—in general whether the prices at which the Ipratropium Bromide NovaPlus products were sold to Novation were comparable to the prices at which Roxane's other Ipratropium Bromide products were sold to wholesalers?  (*Id.* at 115:17-22).

Q  Okay . . . . .Can you describe to us what it means to sell a drug on a private label?  (*Id.* 117:11-13).

Nearly two months after the conclusion of the deposition and the close of fact discovery, counsel for the Government e-mailed Roxane's counsel, stating that based on counsel's instructions not to answer these four NovaPlus questions, Plaintiffs wanted to reconvene Ms. Waterer's deposition to complete its questioning in the area.  (Ex. E, 2/4/09 G. Henderson E-mail to E. Gortner).  Counsel did not state whether he wanted to "reconvene" the deposition as a 30(b)(6) deposition of Roxane, or depose Ms. Waterer in her personal capacity.  In response to counsel for Roxane's inquiry as to what exactly the Government sought to do in the reconvened deposition, Plaintiffs' counsel responded that he wanted ***two hours*** of further questioning related to NovaPlus.  (Ex. F, 2/9/09 G. Henderson E-mail to E. Gortner).

2. The Government's Request for New Rule 30(b)(6) Depositions from BIC and BIPI

The Government's complaint has always directly targeted ***Roxane***: only Roxane drugs are at issue in this case and all the purported conduct that Plaintiffs have alleged involves Roxane pricing and marketing decisions related to Roxane drugs.  For instance, Plaintiffs alleged that ***Roxane*** engaged in pricing and marketing behavior that violated the False Claims Act (FCA). (*E.g.*, Compl. ¶ 59, 60, 65).  The complaint asserts only a generalized claim for alter-ego liability against two other separate Boehringer entities, BIC and BIPI, stating that those entities and Roxane "are so inextricably intertwined that these defendants in effect operated as one single entity."  (Compl. ¶ 19).  Based on the allegations in the complaint and the parties' conduct over the course of this litigation, Roxane and this Court have understood that BIC and BIPI's alleged

liability is premised on alter-ego claims.   (*See* 12/6/07 Mem. and Order on Defs' Mot. to Dismiss, Dkt. 4930, n. 2: "The United States contends that the defendants functioned as 'one single entity.'").

Consistent with its alter-ego theory, the Government's letter requesting a Rule 30(b)(6) deposition listed topics regarding the relationship between BIC, BIPI, and Roxane.  (Ex. A, 10/31/08 Ltr. from L. Oberembt to E. Gortner, ¶ 13-15).  After several meet and confers, Roxane agreed to present Roxane testimony on these alter-ego issues.  (Ex. B, 11/25/08 Ltr. from E. Gortner to G. Henderson).  Pursuant to the parties' agreement, Roxane presented Jim McIntyre as its witness on these topics on February 26, 2009.

Now, for the first time in its motion to compel testimony—filed before Plaintiffs had even taken the agreed-upon second 30(b)(6) deposition on alter-ego issues—Plaintiffs seek testimony from BIC and BIPI based on a nascent theory that BIC and BIPI are independently liable under the FCA.  Plaintiffs also seek discovery of certain testimony regarding lobbying efforts by BIC and BIPI despite a clear order entered by Magistrate Judge Bowler on October 29, 2008, which limited Plaintiffs' request for production of lobbying documents to "defendant Roxane and to the time period 1996 to 2003 relating to AWP/reimbursement issues."  (Ex. G, 10/29/08 Order).

3.    The Cancellation of the Deposition of Roxane "Witness A"

Despite having the benefit of deposition testimony from numerous Roxane sales personnel in many other AWP cases across the country over a period of several years, the Government chose to notice three additional sales individuals, Colin Carr-Hall, Debbie Kutner,

and Witness A[1], who were National Account Managers (sales personnel), for depositions in this case.

It was not until December 9, 2008, three days prior to Witness A's scheduled deposition, that Roxane became aware that Witness A had a serious illness that would make a full-day videotaped deposition unnecessarily challenging.  Upon learning of the witness's condition, Roxane counsel conferred with both Relator and Government counsel on the best course to proceed.  Roxane counsel expressed its opinion that the sensible course was to cancel Witness A's deposition, particularly in light of the pending depositions of Mr. Carr-Hall and Ms. Kutner, who held identical sales positions at Roxane and were likely to testify on identical topics.  (Ex. H, 12/10/08 E-mail from E. Gortner to B. Smith and J. Breen).   Accordingly, it was unlikely that the Government would be prejudiced by the cancellation of Witness A's deposition.   The Government agreed to cancel the deposition, and Roxane made it clear that if the testimony of Mr. Carr- Hall and Ms. Kutner left issues specific to Witness A unanswered, Roxane would be amenable to making Witness A available for a telephonic deposition of shorter duration.  (*Id.*).

Despite Roxane's invitation, the Government never identified any outstanding topics that Mr. Carr-Hall and Ms. Kutner were unable to address at their depositions to which the Government reasonably believed Witness A could testify.  Instead, on December 23, 2008, well after the close of fact discovery, the Government requested the deposition of an entirely new witness, Alex Dusek.   (Ex. I, 12/23/08 Ltr. from B. Smith to E. Gortner).   Given the Government's failure to identify any specific topics that it was precluded from exploring with Mr. Carr-Hall or Ms. Kutner, Roxane objected to the Government's attempt to select a brand new deponent after fact discovery had closed, particularly since the Government had made no

---

[1] To protect the witness's privacy, the parties have agreed not to use the witness's name.

showing of any prejudice.   In the interest of avoiding unnecessary motion practice, Roxane

nonetheless again offered to attempt to schedule Witness A for a telephonic deposition.   The

Government, however, continued to refuse this option, and instead insisted that it was entitled to

depose an entirely different former Roxane employee months after the close of discovery.  (Ex. J,

2/2/09 Ltr. from E. Gortner to B. Smith; Ex. K, 2/3/09 Ltr. from B. Smith to E. Gortner).

## ARGUMENT

I.   **THE GOVERNMENT'S IMPERMISSIBLE ATTEMPT TO CONVERT ITS
     LIMITED RULE 30(B)(6) DEPOSITION INTO A BRAND NEW RULE 30(B)(1)
     DEPOSITION ON NOVAPLUS ISSUES SHOULD BE REJECTED.**

Plaintiffs' request to reconvene the Rule 30(b)(6) deposition of Judy Waterer is an

impermissible attempt to smuggle into this case—months after the expiration of fact discovery—

a brand new Rule 30(b)(1) fact deposition on topics completely unrelated to those in the Rule

30(b)(6) notice.   This is contrary to the basic distinction between Rule 30(b)(1) and Rule

30(b)(6) depositions, which the governing case management order case recognizes.   It is also

fundamentally unfair to Roxane because, under the Government's view, Roxane would be

required to prepare a corporate representative to testify not only on noticed Rule 30(b)(6) topics,

but apparently on *any* other topic that the Government happens to spring upon the witness at the

last-minute.   In any event, the Government's untenable position here is ultimately foreclosed by

the controlling case law in this district, which holds that a 30(b)(6) deposition will not be

reconvened for a witness to answer improper questions even if counsel's instructions not to

answer those questions are erroneous.   *See Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D.

727, 731 (D. Mass. 1985) (refusing to reconvene 30(b)(6) deposition where counsel instructed

witness not to answer questions outside the scope of the 30(b)(6) notice because such questions

were improper); *see also United States ex rel. Tiesinga v. Dianon Sys., Inc.*, 240 F.R.D. 40, 42-

44 (D. Conn. 2006) (refusing to reconvene deposition where counsel instructed witness not to answer improper questions).

As noted above (*see* Br. at p. 3), the Government issued a Rule 30(b)(6) letter under the provisions of the case management order, requesting corporate testimony on a series of limited topics unrelated to NovaPlus drugs.  At the time of the Government's letter, it was seeking to add these drugs to the complaint, but represented to the Court that it did not need any additional discovery, aside from potential transactional data relating to these drugs.  (Ex. C, Mem. in Supp. of Pl's Mot. for Leave to File Am. Compl. at 6).  During the subsequent month, the parties had numerous meet and confers, where the scope of the topics was clarified and narrowed.  Roxane then accordingly prepared its corporate designee to testify on December 12, 2008 on the topics agreed upon by the parties.

However, once this Court granted the Government's motion to add the NovaPlus drugs to the complaint, it appears that the Government purposely changed its tactics with respect to the Rule 30(b)(6) deposition of Ms. Waterer—without alerting the Court or Roxane to its new approach.  Specifically, it is now apparent that the Government viewed the Rule 30(b)(6) deposition as an opportunity to simultaneously seek a separate Rule 30(b)(1) deposition of Ms. Waterer on NovaPlus topics, despite the fact that the Government had not issued a Rule 30(b)(1) notice for Ms. Waterer and had not otherwise communicated to Roxane its intention to seek Rule 30(b)(6) testimony on these topics.  Nor could the Government forthrightly do so, given that it had just represented to the Court and Roxane that it did not need such discovery.  Nonetheless, the Government ignored its prior representations and decided to conduct discovery on the NovaPlus drugs by ambush.

The Federal Rules of Civil Procedure have distinct provisions for Rule 30(b)(1) and Rule 30(b)(6) depositions for good reason.  Unlike the testimony of a Rule 30(b)(1) fact witness, testimony given by a corporate representative as a Rule 30(b)(6) deponent may bind the company.  *See, e.g.*, *Booker v. Mass. Dep't of Pub. Health*, 246 F.R.D. 387, 389 (D. Mass. 2007); *see also Reilly v. Natwest Mkts. Group, Inc.*, 181 F.3d 253, 268 (2d Cir. 1999); *A&E Prods. Group L.P. v. Mainetti USA, Inc.*, No. 01 Civ. 10820, 2004 WL 345841, at *6-7 (S.D.N.Y. Feb. 25, 2004); *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998) (barring corporate party from relying on affidavit that contradicted the testimony of its 30(b)(6) deponent).  Thus, burdens on a party responding to a Rule 30(b)(6) deposition notice are onerous and the potential perils of such testimony are great.  Accordingly, it is paramount that there be clarity as to the proper topics that are covered by a Rule 30(b)(6) deposition, as well as the instances where the deponent is testifying in his or her corporate capacity.

This Court's case management order recognizes these fundamental distinctions. Tracking the requirements of the Federal Rules of Civil Procedure, paragraph 13 of the case management order requires the party noticing a 30(b)(6) deposition to provide a letter or e-mail to the responding party describing with particularity the matters on which examination is requested.  (Ex. L, 9/5/07 Case Management Order ¶ 13).  The case management order also provides specific procedures for the parties to challenge the proposed Rule 30(b)(6) deposition topics.  (*Id.* (allowing motion for protective order to be filed within 20 business days of notice of the topics)).  Thus, the case management order contains explicit provisions that acknowledge the crucial importance of advance notice of specific Rule 30(b)(6) topics for a corporate defendant.

Case law in this district also recognizes this distinction, and, without explicitly saying so, Plaintiffs are asking this Court to overturn settled authority to achieve the absurd result they seek. As Plaintiffs note in their motion, the only case to rule on questions outside the scope of a Rule 30(b)(6) deposition in the District of Massachusetts has held that such questions are *improper*. *See Paparelli*, 108 F.R.D. at 729-30.[2] In *Paparelli*, the Court refused to reconvene a 30(b)(6) deposition where counsel instructed the witness not to answer questions outside the scope of the deposition notice because requiring the corporate deponent to answer such questions would impede a corporation's ability to select and prepare its most knowledgeable witness, and would vitiate the requirement of Federal Rule of Civil Procedure 30(b)(6) that a deposition notice list matters "with reasonable particularity." *Id*. The Court then held that although counsel's instructions not to answer such questions were improper, it would ***not*** reconvene the deposition because "[b]oth counsel were at fault." *Id*. at 731.

Ignoring these fundamental distinctions and concepts of fairness, the Government seizes on Roxane counsel's limited instructions to the witness to not answer—which occurred after multiple warnings and after the witness had answered several questions on the topics—as a toehold to reconvene a brand-new deposition where the Government can ask unfettered questions regarding NovaPlus. Essentially, the Government is attempting to bootstrap a brand new deposition on the basis of its improper tactics with respect to its Rule 30(b)(6) deposition. The Government's argument is unavailing in any event because the controlling case in this district holds that a deposition should ***not*** be reconvened under these circumstances. Setting aside the Government's improper conduct here, it nonetheless suffered no harm from the instruction not to

---

[2]   In fact, the Government's counsel exhibited blatant disregard for this Court's precedent by misrepresenting at the deposition that "the law [was] crystal clear" that he could ask questions outside the scope of the 30(b)(6) notice. (Ex. D, 12/12/08 Waterer Dep. Tr. 35:21-36:6, 36:13-17)

answer.  Specifically, (1) the Government previously represented to this Court that with respect to NovaPlus, "the only additional discovery likely to be necessary is the transactional data for the NovaPlus products," (Ex. C, Mem. in Supp. of Pl's Mot. for Leave to File Am. Compl. at 6); (2) counsel for Roxane allowed Ms. Waterer to answer nearly all of the questions related to NovaPlus; (3) one of the questions improperly required Waterer to answer in Roxane's corporate capacity; and (4) one question, "can you describe to us what it means to sell a drug on a private label?" is only tangentially related to NovaPlus.  Simply put, despite its prior representation, the Government now seeks to compel ***two hours*** of 30(b)(1) deposition testimony on NovaPlus from Judy Waterer based on counsel's instructions not to answer ***two*** pertinent questions about NovaPlus.

Incredibly, the Government has already represented to this Court that it knows the answers to these two questions and another that Waterer was instructed not to answer.  In its Memorandum in Support of its Motion for Leave to File its Amended Complaint in this case, the Government stated, "Roxane set the Average Wholesale Prices ('AWP's) for the NovaPlus products, and reported the AWPs to the pricing compendia through the relevant time period.  The AWPs Roxane reported for the NovaPlus Products were <u>exactly</u> the same as the AWPs Roxane reported for its ordinary Ipratropium Bromide products."  (*Id.* at 3 (emphasis in original)).[3]  In the same pleading, the Government also explained that "[t]he actual prices Roxane charged for the NovaPlus Products were . . . largely similar to the actual prices Roxane charged for its ordinary Ipratropium Bromide products."  (*Id.*)  Thus, three of the questions that the Government claims went unanswered (including one improperly addressed to Waterer's representative capacity), it claims it already knew the answer to.

---

[3] Indeed, the Government attached documents to the pleading supporting this point.

As the Government made clear in its correspondence with Roxane's counsel, it now wants to reconvene the deposition of Roxane's 30(b)(6) representative to obtain two hours of testimony from Judy Waterer about NovaPlus.  As the law makes clear, such questions could only be proper of Ms. Waterer in her personal capacity.  *See, e.g.*, *Falchenberg v. N.Y. State Dep't of Educ.*, No. 04 Civ. 7598, 2008 WL 2780958, at *7 (S.D.N.Y. July 10, 2008). Essentially, over two months after the close of fact discovery and despite its earlier reassurance that it needed only limited discovery on NovaPlus, the Government now seeks to compel a new 30(b)(1) deposition of a witness that it had years to depose but never did.  This is highly prejudicial, and there is no authority suggesting that the Court should allow this.  *See Germaine Music v. Universal Songs of Polygram*, No. 2:03CV00047, 2006 WL 3780131, at *2 (D. Nev. Dec. 20, 2006) (refusing to reconvene deposition to require the witness to respond to two questions improperly objected to based on attorney-client privilege and work product).

Even the cases outside of this district that allow an examining party to ask a deponent questions outside of the 30(b)(6) notice uniformly recognize that "if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem."  *Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000); *see also Philbrick v. eNom, Inc.*, No. CIV-07-215, 2009 WL 152127, *6-7 (D.N.H. Jan. 22, 2009); *E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 433 (D. Nev. 2006). Here, Ms. Waterer testified several times that she did not recall the specific details of NovaPlus that the Government sought to glean from its questions.  (Ex.  D, 12/12/08 Waterer Dep. Tr. 114:17-21, 116:10-12, 117:5, 118:12-119:8, 119:16-120:3; *see also id.* at 112:20-113:4, "Q.  I see.  Approximately how long did it sell the product for?  A.  Maybe a couple of years.  I'm not sure exactly.  Q.  Did it start in about 2000 or 2001?  A.  I don't remember exactly.  That doesn't

seem unlikely, but I don't know that information.")  Because the United States insisted on asking Ms. Waterer questions outside of the noticed topics, it must live with the fact that she had no personal knowledge or recollection of the answers to its questions.  Holding otherwise would unfairly allow the Government to smuggle new discovery into this case.

## II.     THE GOVERNMENT IS NOT ENTITLED TO 30(B)(6) TESTIMONY FROM BIC OR BIPI.

Plaintiffs' motion to compel testimony of BIC and BIPI corporate representatives is yet another untimely request to engage in a fishing expedition to support newly developed claims and legal theories.  As an initial matter, testimony of BIC and BIPI corporate representatives on the noticed topics is not relevant to any allegations in this case—the Complaint does not allege direct liability against either entity.  Indeed, *only* the Roxane drugs and conduct are at issue in this case.  BIPI is a separate stand-alone company that sells branded drugs and there are *no* BIPI drugs in this case.  BIC is a parent holding company that does not sell *any drugs*.  As discussed below, their presence in this case is solely based on Plaintiffs' far-stretched corporate alter-ego theories.  Moreover, Plaintiffs' request for BIPI testimony regarding lobbying efforts is simply a disingenuous attempt to circumvent this Court's prior ruling forbidding this type of discovery of non-Roxane entities, and should be rejected.

### A.     Deposition Testimony of BIC and BIPI Corporate Representatives Is Not Relevant to the Claims Alleged in this Case.

Despite the Government's recent assertions, the First Amended Complaint does not allege direct liability against BIC or BIPI.  This case is, and always has been, about ***Roxane's*** alleged false reporting of prices for ***Roxane's*** drugs.  In fact, the Complaint alleges that

- "***Roxane*** knowingly made false or fraudulent representations about drugs prices . . . ." (Compl. ¶ 59);

- "***Roxane*** purposely reported . . . inflated AWPs and WACs for its drugs…" (Compl. ¶ 60); and

- "***Roxane*** sales personnel actively marketed the spread . . . ." (Compl. ¶ 65).

The Government's sole basis for having BIC and BIPI in this case is its claim that BIC, BIPI, and Roxane are "inextricably intertwined." (Compl. ¶ 19).[4]  However, the topics for which Plaintiffs seek deposition testimony from BIC and BIPI corporate representatives have no relevance to Plaintiffs' alter-ego theory of liability. (*See* Ex. A, 10/31/08 Ltr. from L. Oberembt to E. Gortner ¶¶ 1-11, 18-21).

Simply, BIC and BIPI's corporate position on the Government's reimbursement practices and whether the Government "approved and acquiesced" of Roxane's reported AWP benchmarks is not remotely related to the alter-ego theory advanced in the complaint. Rather, the government is unapologetically requesting additional discovery to fashion a brand new theory of liability several years into this case—and months past the fact discovery cut-off. This belated discovery request should be rejected.[5]

---

[4]  Only one paragraph in the entire Complaint contains a specific allegation against an entity other than Roxane, where the Government claims that "employees at BIPI, in concert with employees of Roxane, decided to falsely increase the AWPs on Roxane's Furosemide products." (Compl. ¶ 63).  However, the Government cites no testimony in its motion to compel reflecting any involvement by BIPI in Roxane's Furosemide decisions.  In fact, Plaintiffs' examples show quite the opposite.

[5]  In addition to the impropriety of Plaintiffs' attempt to craft an unpleaded, new theory of liability in a motion to compel, this Court should reject Plaintiffs' request for new discovery because Plaintiffs have no legal or factual basis for a direct liability claim against BIC or BIPI.  A defendant twice removed from the claims process cannot be liable under § 3729(a)(1): "[M]ere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish 'causation' under the FCA."  *United States v. President & Fellows of Harvard College*, 323 F. Supp. 2d 151, 186 (D. Mass. 2004).  Rather, liability requires active participation in the process.  *Id.* at 187-88.  The Government's tortured reading of select passages of deposition testimony does not establish such conduct.  For instance, the Government cites to one portion of Mr. Berkle's testimony, but neglects other testimony which established, at most, that BIC and BIPI may have had tangential involvement in Roxane's pricing of only three subject drugs for a limited four-month period. (Ex. M, Berkle 10/31/08 Dep. at 215:17-216:20).  This is hardly the type of  "formal and pervasive control" required to establish corporate alter-ego liability.  *See Harvard College*, 323 F. Supp. 2d at 187-88.  And Plaintiffs cannot identify a single false claim for any of these drugs that could have been caused by BIC or BIPI during this time.  Similarly, the Government distorts Mr. Russillo's testimony and takes it out of context.  Plaintiffs' assertion that "BIC and BIPI knowingly approved of Roxane raising the AWPs on several multi-source products, including Roxane's decision to raise the AWPs on its Furosemide line" completely ignores Russillo's testimony that "[he] probably did not" seek approval for Furosemide pricing decisions.  (Ex. N, Russillo 1/8/09 Dep. at 175:5-10, 192:19-193:4).  Likewise, Plaintiffs incorrectly infer that BIC and BIPI were involved in approving Roxane's prices from Rusillo's testimony that at his discretion he sometimes "would have asked Werner Gerstenberg if [he] thought there was a sensitive AWP issue," (Ex. N Rusillo 1/8/09 Dep. at 98:9-19), while wholly

**B.    Plaintiffs Are Now Seeking To Disregard This Court's Prior Ruling That Limited Discovery Related to Lobbying Efforts to Roxane Only.**

Plaintiffs' motion to compel testimony of a BIPI corporate representative regarding Roxane's alleged lobbying efforts is an attempt to revisit an issue that is foreclosed by a previous discovery ruling in this case.  Recognizing that this case is about Roxane's drugs and conduct alone, Magistrate Judge Bowler ruled on October 29, 2008 that Plaintiffs' request for production of lobbying documents is limited to "defendant Roxane and to the time period 1996 to 2003 relating to AWP/reimbursement issues."  (Ex. G, 10/29/08 Order).  Plaintiffs now argue that "[i]n light of the parties' reference to the four defendants collectively as 'Roxane,' the ruling was not clear . . . ."  (Mem. in Supp. of Pls.' Mot. to Compel at 9, n. 6).  This is nonsense.  In its brief in response to Plaintiffs' last motion to compel, Roxane explained that "the Government's request for lobbying  documents is overbroad.  For instance, Plaintiffs do not limit their request to Roxane, the entity that manufactured, priced, and sold the drugs at issue in this litigation.  Instead, they appear to seek such documents from all defendants, including Boehringer Ingelheim Pharmaceuticals, Inc. . . . as well as Boehringer Ingelheim Corporation . . . ."  (Def.'s Mem. in Opp'n to Pls' Motion to Compel at 17).  Thus, reading Magistrate Judge Bowler's order in tandem with the briefs submitted by the parties, it is clear that no "clarification" was necessary: by limiting production to "*defendant Roxane*," Magistrate Judge Bowler rejected the Government's overbroad request for documents from BIC and BIPI.

Plaintiffs' suggestion that this limitation somehow does not apply because "testimony was not at issue" at the time the order was entered, is completely unavailing.  The fact that documents were at issue in Plaintiffs' previous motion to compel does not make Judge Bowler's

---

disregarding Russillo's later testimony that in those instances "[Gerstenberg] would have been acting as President of Roxane." (*Id*. at 176:9-10).

order any less applicable here. The order reflects this Court's continued efforts to tailor discovery to the particular drugs and defendants at issue in this case. BIPI's lobbying efforts fall squarely outside of the allegations of the Complaint, and any effort to discovery them—whether through documents or testimony—is overbroad and unduly burdensome. Accordingly, Plaintiffs' request should be denied.

## III.   THE GOVERNMENT IS NOT ENTITLED TO A BRAND NEW DEPOSITION OF YET ANOTHER ROXANE SALES REPRESENTATIVE.

The Government had every opportunity to deal with the unfortunate situation of Witness A's illness prior to the close of fact discovery in this case and even after the close of fact discovery without burdening this Court with unnecessary motion practice. In fact, despite Witness A's illness, Roxane has *twice* offered to make Witness A available for a telephonic deposition if the Government would merely limit its questions to issues for which Witness A's testimony is specifically needed. The Government has rejected Roxane's reasonable offer, and instead seeks to use this an opportunity to obtain additional fact discovery (once again past the deadline) of a brand new witness from whom it did not seek discovery during the preceding year-and-a-half discovery period. The parties are already embroiled in complex expert discovery, and Plaintiffs' insistence on obtaining duplicative and cumulative additional testimony should be rejected.

While Rule 26(b) generally contemplates broad discovery, discovery is *not* limitless. Rule 26(b) gives the Court discretion to limit discovery, particularly when the discovery sought is "unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b); *Cusumano v. Microsoft Corp.* 162 F.3d 708, 714 (1st Cir. 1998); *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989) (Parties "ought not to be permitted to use

broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up."). The Government's attempt to depose Alex Dusek at this late stage of the litigation is a classic example of the type of discovery that should be limited by this Court. As this Court is well-aware, these AWP cases have not suffered from a lack of discovery, and Roxane employees (both former and present) have been repeatedly deposed in many cases over the years—the Government received transcripts of all these depositions during discovery in this case. And the Government had ample opportunity to explore marketing and sales issues through the depositions of Mr. Carr-Hall and Ms. Kutner in this case, both of which were taken *after* the Government had been put on notice that Witness A would not be deposed. Both of these witness worked contemporaneously with Witness A in similar roles and, despite repeated invitations from Roxane, the Government has been unable to identify ***any*** topics of which it believes Witness A has unique knowledge. Without any showing of how the cancellation of Witness A's deposition has materially impacted its discovery efforts, the Government should not be allowed to re-spin the wheel and pick a brand new deponent of its choice. Nothing in the case management order entitles the Government to three duplicative depositions of sales managers, particularly in light of the voluminous deposition discovery available to the Government from other AWP cases. Accordingly, its request here should be denied.

## CONCLUSION

For the foregoing reasons, Roxane respectfully requests the Court deny Plaintiffs' motion to compel testimony.

Dated:  March 6, 2009                          Respectfully submitted,

                                               _____/s/ Eric T. Gortner
                                               Helen E. Witt, P.C.
                                               Eric T. Gortner
                                               John W. Reale
                                               Seth A. Gastwirth
                                               KIRKLAND & ELLIS LLP
                                               200 East Randolph Drive
                                               Chicago, IL 60601
                                               Telephone: (312) 861-2000
                                               Facsimile: (312) 861-2200
                                               egortner@kirkland.com

                                               *On behalf of Defendants Boehringer Ingelheim
                                               Corp., Boehringer Ingelheim Pharmaceuticals,
                                               Inc., Boehringer Ingelheim Roxane, Inc., and
                                               Roxane Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 6, 2009, a copy to LexisNexis File and Serve for posting and notification to all parties.


By:_____/s/ Eric T. Gortner
        Eric. T. Gortner