UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re Pharmaceutical Industry<br>Average Wholesale Price Litig. | )<br>)<br>)<br>) | MDL No. 1456<br>C.A. No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>TRACK TWO SETTLEMENT | )<br>)<br>)<br>)<br>) | Judge Patti B. Saris |

**OBJECTION TO TRACK TWO SETTLEMENT AND ATTORNEY'S FEE
REQUEST AND NOTICE OF INTENTION
TO APPEAR AT FAIRNESS HEARING**

Class Members John and Connie Pentz of One Highland Road, East Stroudsburg, Pennsylvania 18301, and Corinna Connick of 12545 Ashton Trail, Chardon, OH 44024, hereby object to the proposed Track Two Settlement and the associated request for attorney's fees. Connie and John Pentz are Class 3 consumers who paid full price for Epogen at least once during the fall of 2007, without receiving any reimbursement from Medicare or other insurance. Corinna Connick is a Class 3 consumer who paid full price for Estradiol during the Class Period, without receiving reimbursement from Medicare or other insurance. The Pentzes and Connick intend to appear and argue at the fairness hearing scheduled for April 27, 2009 through their undersigned counsel.

**I.    Consumer Class Members Have Not Been Adequately Represented,
       And The Settlement Allocation Excludes Those Consumer Class
       Members Who Were Most Harmed.**

At the December 16, 2008 hearing held in this matter, class counsel conceded that no consumer Plaintiffs were involved in negotiations about the allocation of the settlement fund. At ¶ II. F. of the Track Two Settlement Agreement and Release ("T2SA"), the Class Representatives of Class 3 are all TPPs! There is not one Class 3 Consumer Class Representative. Instead, Jeffrey Goldenberg of Cincinnati was

"appointed" to represent consumer subclasses in the allocation decision.  T2SA at ¶ II. J. Mr. Goldenberg was particularly inadequate, as he agreed to an allocation that provides no portion of the settlement fund to class members, like the Pentz/Connick Objectors, who paid the full price for their covered drugs.  At the same time, Class 3 Consumer class members will release all of their claims against the settling defendants, which were alleged in the Fourth Amended Complaint at ¶ 60.

Class Counsel would have the Court believe that the attorney who was designated to stand in the shoes of the Class 3 Consumer Cash Payers agreed to fully release his clients' claims for no consideration, while other Consumer Plaintiffs, such as Class 1 consumers, who paid for only a portion of the cost of their drugs, will receive $35 or more.  This gets it backwards.  The Class 3 consumers like the Pentz/Connick Objectors are harmed every bit as much as the TPPs, who will receive 41.25% of the total settlement fund.  In fact, according to Hagens Berman, who are Class Counsel both in this action and in a companion case, *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, the uninsured consumers or "full payer" class are "the most vulnerable purchasers of all, consumers who were required to pay the full cash price … of such drugs out of pocket and thus absorbed the entire excess charge themselves."  *See* Plaintiffs' Supplemental Brief In Support of Class Certification of the U&C Class for the Purposes of Settlement, attached hereto as *Exhibit A*, at p. 1.

Indeed, in *McKesson*, Class Counsel retained an expert, Raymond S. Hartman, who determined that the Usual and Customary price paid by the uninsured consumers is inflated as a result of the AWP, and moves up and down in tandem with the AWP.  *Exhibit A* at pp. 3-5.  Moreover, the uninsured consumer class includes 47 million Americans, making it larger than either the Consumer Co-Pay class or the TPP class.

2

*Exhibit A* at p. 3.  In the *McKesson* settlement, the full cash payer class is to receive 11.5% of the overall settlement amount, while the consumer co-pay subclass is to receive just 6% of the total, reflecting the fact that the full cash payers were more harmed as a result of paying a greater percentage of the inflated price.  It is impossible to square that allocation with the one proposed here – consumer co-payors receive 17.5%, while consumer cash payers will receive 0%.  It appears that in the Track Two Settlement, for undisclosed reasons, Class Counsel has simply sold out the 47 million consumers who paid full price for their covered drugs.

Consumers were also inadequately represented in the allocation negotiations with the TPPs and ISHPs, who together were allocated 82.5% of the settlement, while the consumers will receive a mere 17.5%.  It is impossible to avoid the conclusion that this lopsided allocation that favors the institutional plaintiffs was the result of the fact that the institutional plaintiffs were more adequately represented by counsel of their own choosing, who were able to look out for their interests, while the consumers' interests were allegedly "represented" by attorneys who were merely assigned to be a proxy for the consumers, but who did not actually represent any.  Moreover, no actual consumer plaintiff had any participation in the allocation of the settlement fund.  If consumers had been adequately represented, they should have received at least 33% of the overall settlement fund, and possibly much more.  Consumers received 30% of the GSK settlement fund, and 33% of the *Relafen* settlement fund.  *See also, In re Synthroid Mktg. Litig.*, 110 F. Supp. 2d 676, 679 (N.D. Ill. 2000) (consumers were allocated 2/3 of a settlement fund in drug marketing fraud case, while TPPs received 1/3).

The settlement must be revised (1) to allocate at least 1/3 of the overall settlement funds to consumer plaintiffs, after adequate consumer representatives have been

3

appointed by the Court, with adequate counsel representing them in real arms length negotiations, and (2) to permit Consumer Plaintiffs who paid the full cost of their drugs to participate in the settlement on the same terms as the TPPs who paid the full cost of the drugs.  At a minimum, Consumer Full Cash Payers like the Pentz/Connick Objectors must be allocated at least 11.5% of the overall settlement amount, or $14.4 million.

> II. **The Settlement Class May Not Be Certified Absent Adequate Consumer Class Representatives.**

The lack of properly appointed consumer class representatives is fatal to the proposed settlement in a way that goes beyond the unfair allocation.  Without properly appointed adequate consumer class representatives, there is no one in this action who possesses the power to agree to the settlement on behalf of the consumers, or to release the consumer claims.  In a class action, the sufficiency of the allegations of injury and causation must be assessed with respect to the named plaintiffs.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996).  The public interest groups listed in ¶ II. F. of the Track Two Settlement Agreement do not possess any of the rights or claims possessed by consumer Plaintiffs, and therefore lack standing to either assert or to settle such claims.  They have no power to settle or release the consumer claims, and cannot act as adequate class representatives of any consumer Plaintiffs, Class 1 or Class 3.

### III. The Parties Should Be Required To Subpoena The Ten Largest Pharmacy Chains To Obtain Prescription Data and Minimize the Need to File Claims.

At the hearing held on December 16, 2008, another objector complained that the cost of gathering records in order to establish a consumer claim could easily exceed the expected settlement recovery, thereby discouraging claims. One obvious solution to this problem is to use prescription data in the possession of major drug store chains to calculate settlement benefits automatically, in order to obviate the need for many consumers to file claims at all. Indeed, that very step was required by Judge Young in approving another prescription drug class action, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005).

> The most unique aspect of the Notice Plan included the subpoena of consumer information by End Payor Plaintiffs. The End Payors, with the approval of this Court,
>
>> issued subpoenas to the ten largest providers of retail pharmacy services in the United States as well as the mail-order pharmacies associated with the five largest providers of pharmaceutical benefit management in the United States to obtain electronic files of the names and addresses of any consumers of Relafen/nabumetone as well as information concerning the consumer's expenditures during the Class period.
>>
>> As of April 14, 2005, seven entities had complied with the subpoena and provided [Complete Claim Solutions] with electronic files … The data contained in the electronic files encompasses approximately 2,624,795 transactional records … resulting in approximately 836,750 Class Members that are potentially eligible Class Members.

*Id* at 64. Given that the chief class counsel in *Relafen* was Hagens Berman, it is surprising that Class Counsel have not already taken similar steps here to ensure that as many consumers as possible are able to participate in the settlement.

Judge Young appropriately noted that "[o]ne of the challenges for a court in a class action is to ensure that *consumers* actually receive compensation for the damages

5

they have suffered, and not just the attorneys or institutional plaintiffs." *Id*.  Consumers are always at an inherent disadvantage in cases like this one, where their claims are combined with the claims of TPPs, most of which are typically represented by in-house if not outside counsel, are far better able to look out for their interests, and have vastly larger claims and resources.  That dynamic is manifestly apparent in this case in the overwhelmingly lopsided allocation of the settlement fund between TPPs and ISHPs, on the one hand, and consumers on the other.  The suspect allocation of the settlement fund between consumers and institutional plaintiffs in this case is compounded by the difficulty of filing a consumer claim form, and the lack of any outreach or effort to pre-identify eligible non-Medicare consumer class members and to calculate their damages, such as was done in *Relafen*.[1]

      The Court should require the parties to make an effort to subpoena the ten largest pharmacies, similar to the effort that was made in *Relafen*, in order to identify as many consumers as possible and to obviate the need for consumers to file claim forms to the greatest extent possible.  Hagens Berman should be made to explain why they did not attempt the same outreach that was done in *Relafen* in this case, and why consumers have in general not received the same quality and adequacy of representation here as they did in that case.

---

[1] The consumer-TPP allocation in *Relafen* was also far more pro-consumer than the one negotiated here, possibly because in *Relafen* there were actual consumer class representatives who had entered appearances in the case and were looking out for consumer interests, and also because the judge in that case was intensely focused on allocational fairness.  In *Relafen*, consumers received 33% of the settlement fund, while here they were allocated just 17%.  *See Relafen, supra*, at 62.  The fact that the consumers did almost twice as well in *Relafen* as they have done here is itself evidence that the consumers in this case were not adequately represented.  At the very least, the discrepancy demands further explanation from Class Counsel.

## IV.     ISHPs Got Paid First.

As further evidence of the way in which the Track Two Settlement favors institutional plaintiffs at the expense of consumers, the ISHPs have already been paid $25.5 million, while consumers may not be paid for years.  According to ¶¶ III. C. 1. and III. F. 3. of the T2SA, the ISHPs received a $25.5 million payment within twenty business days after this Court preliminarily approved the T2SA.  That has already occurred.  It appears that, even if this Court denies approval to the T2SA, the ISHPs are under no obligation to refund that money.

Consumers, on the other hand, will not receive their settlement payments until after the arrival of the Effective Date, ¶ III. G. 2. g., which does not occur until all potential appeals are finally concluded.  ¶ III. K.  Therefore, consumers may not receive their settlement benefits until a year or more after the date of the Final Approval Order, while the ISHPs have already received their settlement funds.  Even if there are no appeals, the ISHPs will have received their settlement payments six months to a year before the consumers do.  This preferential treatment is unfair and impermissible.  ISHPs should not receive preferential treatment under the settlement.

## V.     Attorney's Fees

In return for the preferential payment referenced in §IV above, the ISHPs agreed to give Class Counsel credit for the settlement payment that will be made to the ISHPs, even though the ISHPs are not part of this MDL, and the settlement of their claims requires no court approval.  See Class Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of the Track Two Settlement at p. 12 ("Because they are separately represented and are not class members, the ISHP group can provide a release to the Track Two Defendants without the need for Court approval or the time involved in

providing notice."). In other words, the only effect of including the ISHP settlement funds in the Track Two Settlement is to inflate Class Counsel's attorney's fees.

Class Counsel have requested attorney's fees and expenses of 30% of the $125 million settlement fund, or $37.5 million. There is only one problem – Class Counsel does not represent the ISHPs, who will receive $51.8 million of the $125 million total, and, therefore, there is no basis for Class Counsel to request *any* portion of that $51.8 million under the common benefit doctrine. The $51.8 million that will be paid to the ISHPs was created by the ISHPs' counsel, who are entitled to fees based upon the ISHP settlement fund. Those fees will depend upon the contracts entered into between the ISHPs and their counsel.

The Pentz/Connick Objectors do not object to Class Counsel's request for 30% of the fund that they created *for their clients*, *i.e.* the Plaintiffs who are class members in this MDL. The total amount that will be paid to the consumers and the TPPs who are class members in this action is $73.1 million. 30% of $73.1 million is approximately $22 million, which is the maximum fee that may be awarded to Class Counsel based upon the Track Two Settlement.

Class Counsel have failed to comply with this Court's December 16, 2008 order that they segregate the time they spent on achieving the Track Two settlement, claiming that it would be a "daunting and monumental" task. There is, however, a quicker and less burdensome way of estimating what portion of the overall lodestar in this case was spent on the Track Two cases and settlement, especially since the lodestar is to be used only as a cross-check. The total lodestar in the case is $71.3 million as of March 31, 2008. If the Track Two defendants represent approximately 10% of the total defendants in the case,

one may fairly apportion 10% of the overall lodestar to the Track Two cases.[2] Therefore, if Class Counsel spent approximately $7 million in lodestar litigating and settling the Track Two claims, a $22 million fee would represent a lodestar-multiplier of 3, a number that falls well within the range of reasonableness, and which is in fact quite generous in the circumstances of this case.

Under no circumstances may Class Counsel receive a fee based upon the amounts that will be paid to the ISHPs, who are not part of this action and not subject to the jurisdiction of this Court. The inclusion of the ISHP settlement amount as part of the Track Two Settlement is a mere accounting trick designed to maximize Class Counsel's fees, and nothing more. The Track Two Defendants could have simply withheld the $51.8 million that will go to the ISHPs and paid it to them separately from this settlement, and the result would be the same. The only difference is that Class Counsel's fees would be $16 million higher if the ISHP settlement fund is improperly counted as part of the Track Two Settlement achieved in this case.

The fact that Class Counsel has reached an agreement to share their excessive fees with ISHP counsel is immaterial and does not change the foregoing conclusion. ISHP counsel do not require Court approval for their fees. Instead, their fees will be determined by the agreements they have with their clients, and possibly based upon the amount recovered for their clients, $51.8 million. Class Counsel's fees do require Court approval, and must likewise be based only upon the amount that will be recovered by Class Counsel's clients, or $73.1 million.

To compensate Class Counsel based upon amounts that Class Counsel agreed to give away to non-Plaintiffs would have the perverse effect of rewarding Class Counsel

---

[2] The 10% figure is an assumption for purposes of illustration. The actual percentage represented by the

9

for failing to maximize the recoveries of the consumers and TPPs in this action. Class Counsel had a duty to their clients to recover as much of the $125 million as possible. Their compensation should depend upon how successful they were in fulfilling that duty.

## CONCLUSION

For the foregoing reasons, Class 3 Consumer Plaintiffs and Objectors Connie and John Pentz request that this Court reject the proposed Track Two Settlement until and unless class counsel re-negotiate the intra-class allocation of the settlement fund in a way that (1) provides appropriate benefits to Class 3 Consumer Plaintiffs who paid the full cost of their drugs, and (2) allocates at least 33% of the total settlement funds to consumers. Objectors further request that this Court award Class Counsel attorney's fees of no more than 30% of that portion of the Settlement Fund that will be paid to Class Counsel's Consumer and TPP clients, or $22 million.

Dated:   March 9, 2009

Respectfully submitted,
Connie and John Pentz,
and Corinna Connick,
by their attorneys,

*/s/ John J. Pentz*
John J. Pentz, Esq.
MA Bar # 561907
2 Clock Tower Place, Suite 260G
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (707) 276-2925
Clasaxn@earthlink.net

EDWARD COCHRAN
20030 Marchmont Road
Shaker Hts., OH   44122
(216) 751-5546
fax (216) 751-6630
edwardcochran@wowway.com

---

Track Two defendants may be more or less than this figure.

**CERTIFICATE OF SERVICE**

  The undersigned counsel hereby certifies that on March 9, 2009 he efiled a true copy of the foregoing document via the ECF filing system of the District of Massachusetts, and as a result a copy of this document was served on every counsel of record.

                   */s/ John J. Pentz*
                   John J. Pentz