UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

NAMED CONSUMER PLAINTIFFS' RESPONSE AND MEMORANDUM IN
OPPOSITION TO CLASS COUNSEL'S EMERGENCY MOTION AND
MEMORANDUM TO (I) SEAL ATTORNEY WORK PRODUCT AND (II) STRIKE DON
HAVILAND'S MEMORANDUM OF NAMED CONSUMER PLAINTIFFS IN
OPPOSITION TO APPROVAL OF THE PROPOSED TRACK TWO NATIONWIDE
CLASS CERTIFICATION AND SETTLEMENT

I.    INTRODUCTION

Named Consumer Plaintiffs[1], by and through their undersigned counsel, hereby oppose

Class Counsel's Emergency Motion and Memorandum to (I) Seal Attorney Work Product and

(II) Strike Don Haviland's Memorandum of Named Consumer Plaintiffs in Opposition to

Approval of the Proposed Track Two Nationwide Class Certification and Settlement

("Emergency Motion to Strike").

_____

[1]Rev. David Aaronson, individually and on behalf of the Estate of Susan Ruth Aaronson, M. Joyce Howe, individually and on behalf of the Estate of Robert Howe, Larry Young, individually and on behalf of the Estate of Patricia Young, Therese Shepley, individually and on behalf of the Estate of James Shepley, Harold Carter, Roger Clark, on behalf of the Estate of David Clark, Ethel Walters, individually and on behalf of the Estate of Hunter Walters, Katie Bean, individually and on behalf of the Estate of Harold Bean, James Monk, Virginia Newell, individually and on behalf of the Estate of William Newell, Oral Roots, Rebecca Hopkins and George Baker Thomson.

1

Class Counsel[2] seek emergent relief from this Court in the form of an order "striking" the Memorandum of Named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement ("Memorandum")[Docket No. 5953] filed by Named Consumer Plaintiffs pursuant to this Court's Order dated January 7, 2009 [Docket No. 5828].  They also seek a separate order alternatively  "sealing" *and* "removing from the public record" Exhibit J to Declaration of Donald E. Haviland, Jr. in support of Named Consumer Plaintiffs' Memorandum.  Named Consumer Plaintiffs respectfully submit that Class Counsel have not carried their burden of demonstrating that the relief requested is appropriate.

II.    **ARGUMENT**

   A.    **The Motion to Strike Named Consumer Plaintiffs' Memorandum in Opposition to the Track 2 Settlement Should be Denied.**

Class Counsel's basis for striking the Memorandum is the claimed "disregard" of the Court rules governing page limits and the failure to seek leave of court in advance of filing by formal motion, as opposed to having made the request within the corpus of the Memorandum. *See* Memorandum at 1, n.1.  Class Counsel ignore the fact that the pleading to which Named Consumer Plaintiffs are responding is thirty-seven (37) pages in length, and no leave of court appears to have been sought in advance of filing the same – by formal motion or otherwise.  *See* Class Plaintiffs' Memorandum at Docket No. 5935; *see also*, Class Counsels' Memorandum of Law in Support of Petition for Attorneys' Fees, Reimbursement of Expenses, and Compensation to the Class Representatives in Association with the Track 2 Settlement at Docket No. 5938 (25

---

[2] It is noteworthy that the Motion to Strike is not brought on behalf of any particular plaintiff, only class counsel.  *Compare* Class Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of the Track Two Settlement at 1 [Docket No. 5935] ("Class Plaintiffs' Memorandum").

pages in length); *Stern v. Haddad Dealerships of The Berkshires, Inc.*, 477 F.Supp.2d 318, 324 -325 (D.Mass.,2007) (wherein the District Court held that a twenty-four (24) page memorandum and supplemental fourteen (14) page memorandum amounted to a thirty-eight page (38) memorandum, but allowing the party to "file both parts to move the case along").  Indeed, while Class Counsel have repeatedly filed overlength memoranda in this Court without seeking advance leave of court to do so[3], they now seek rigid application of Rule 7.1(b)(4) to Named Consumer Plaintiffs.  Class Counsel now seek to selectively elevate form over substance solely with respect to Named Consumer Plaintiffs' filing, without regard to their own various overlength memoranda, and have the factually and legally relevant pleading stricken based solely on its length, something that this Court has previously refused to do.  *See Swartz v. I.R.S.,* 1997 WL 834830, 2 (D.Mass., November 18, 1997) (noting that although a parties' 74-page memorandum in response to a motion to dismiss violated Rule 7.1(b)(4), nonetheless, the Court had carefully reviewed the overlength memorandum.)

Respectfully, if Rule 7.1(b)(4) is to be applied to the proposed Track 2 class certification and settlement, it should be applied uniformly to all concerned parties: Class Counsel should be forced to file one memorandum in support of final approval of the proposed Track 2 nationwide

---

[3] *See, e.g,* Class Plaintiffs' Memorandum of Law in Support of Joint Motion for Preliminary Approval of the Track Two Settlement, Approval of the Form and Method of Notice to the Class and Scheduling of a Fairness Hearing, Docket No. 5132 (The Memorandum was 26 pages. Class Counsel neither sought leave to file the excessive brief prior to filing nor acknowledged the same in the corpus of the memorandum requesting leave, as Named Consumer Plaintiffs have in the subject motion); Class Counsel's Memorandum of Law in Support of Joint Motion for Final Approval of the AstraZeneca Class 1 Settlement, Docket No. 5219 (Same. However, the Memorandum was 47 pages.);   Memorandum of Law in Support of Class Plaintiffs' Motion for Final Approval of Proposed Nationwide Class Settlement with GlaxoSmithKline, Docket No. 4394 (Same.  However, the Memorandum was 42 pages.)

class certification, the settlement and requested fees that comports with the 20-page limit; Named Consumers Plaintiffs will then respond within such limit.  Otherwise, the Court should grant both parties leave to go beyond the page limits.

### B.   The Motion to Seal and Remove Exhibit J to Named Consumer Plaintiffs' Memorandum Should be Denied.

Class Counsel claim that Exhibit J to Named Consumer Plaintiffs' Memorandum "is undeniably confidential and attorney work product."  Motion to Strike at 2.  In support of their claim, they cite to Fed. R.Civ.Proc. 26(b)(3)(B) and a couple of cases.  Their proffer fails to demonstrate that the work product doctrine applies to Exhibit J and, if it applies, that they have not waived the applicability of the doctrine by the simple fact that Exhibit J was produced to persons who were not "AWP Counsel"[4].

The party invoking a recognized privilege has the burden of establishing not only the existence of that privilege, but also that the privilege was not waived.  *In re Raytheon Securities Litigation*, 218 F.R.D. 354, 357 (D. Mass. 2003)(citing *United States v. Wilson*, 798 F.2d 509, 512-13 (1st Cir. 1986); *Colonial Gas Company v. Aetna Casualty & Surety Company*, 139 F.R.D. 269, 275 (D. Mass. 1991).

### 1.   The work product doctrine does not apply because there is no discovery issue.

The attorney work-product doctrine was first established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in Fed.R.Civ.P. Rule 26(b)(3) for civil

---

[4] As the record demonstrates, the undersigned was not "AWP Counsel" at the time Exhibit J was written and disseminated on or about August 17, 2005.  Instead, an agreement for the undersigned's firm, Kline & Specter, to become "AWP Counsel" was not consummated until months later.  *See, e.g.*, Exhibit "K" to Haviland Declaration in support of Memorandum.

discovery.  The work product doctrine protects the integrity of the adversarial process by creating

a zone of privacy and protection for the attorney's preparatory work on a case. *See Hickman*, 329

U.S. at 510-11.    The doctrine safeguards the integrity of the adversarial process by protecting 1)

documents or other tangible things, 2) prepared in anticipation of litigation, 3) by or for a party,

or by or for a party's representative.  *City of Worcester v. HCA Management Co., Inc*., 839

F.Supp. 86, 88 (D.Mass.1993) (citing *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D.Mass.1988)).

The work product doctrine "does not exist to protect a confidential relationship, but rather to

promote the adversary system by safeguarding the fruits of an attorney's trial preparation from

the *discovery* attempts of the opponent."  *In re Raytheon Securities Litigation*, 218 F.R.D. 354,

359 (D. Mass. 2003)(quoting *United States v. Amer. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir.

1980)(emphasis added).

Class Counsel cite Rule 26(b)(3) of the Federal discovery Rules in support of their

request for an order both "sealing" and striking".  That Rule codifies the principles articulated in

*Hickman* in that "[o]rdinarily, a party may not discover documents and tangible things that are

prepared in anticipation of litigation or for trial by or for another party or its representative....

But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise

discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the

materials to prepare its case and cannot, without undue hardship, obtain their substantial

equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(i) - (ii); *In re Grand Jury Subpoena*,

925 F.Supp. 849, 853 (D. Mass. 1995)*(citing In re San Juan Dupont Plaza Hotel Fire Litig*., 859

F.2d 1007, 1014 (1st Cir.1988)); *Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339, 343

(D.Mass.1982). Class Counsel fail to articulate how Rule 26(b)(3)(A) prevents Named Consumer

Plaintiffs from including Exhibit J in the record of these proceedings, since Named Consumer

Plaintiffs are not seeking discovery of any document; they already have Exhibit J.

Since *Hickman*, Congress, the cases, and the commentators have uniformly continued to

view the 'work product' doctrine solely as a limitation on pretrial discovery and not as a qualified

evidentiary privilege.  See Fed. R. Civ. P. 26; *U.S. ex rel Health Outcomes Technologies v.*

*Hallmark Health System, Inc*., 349 F. Supp. 2d 170, 174 (D. Mass. 2004)(citing *United States ex*

*rel Goodstein v. McLaren Reg'l Med. Ctr*., 2001 WL 30491259 at * 3 (E.D. Mich. 2001)( . . . the

work product doctrine is inapplicable here, as a discovery request is not at issue)); *Savoy v.*

*Richard A. Carrier Trucking, Inc*., 178 F.R.D. 346, 348 (D. Mass. 1998)("As far as the Court can

tell from the deposition transcripts, the work product doctrine, while cited by Plaintiff, is not at

issue; the instant matter does not concern the discovery of documents or tangible things.") Thus,

the work-product doctrine has been long viewed as a limitation on the ability of a party to obtain

pretrial discovery. *See U.S. v. Nobles*, 422 U.S. 225, 243-51, (1975)(White J. concurring).

### 2. The work product doctrine does not apply because clients are involved.

Even if the matter at bar involved a discovery issue, which it does not, where a party

seeks work product material from his own attorney or agent, the work product doctrine is

inapplicable.  *In re Standard Financial Management Corp*., 79 B.R. 97, 99 (Bkrtcy. D.Mass

1987)(citing 4 Moore's Federal Practice, 26.64[2] (2d Fd. 1986 p. 26-361); *Spivey v Zant*, 683

F.2d 881, 885 (5th Cir. 1982)(holding that neither the work-product doctrine nor fact that client

files were the personal possessions of the attorney entitled the attorney to refuse to disclose files

in response to subpoena duces tecum served by former client of attorney.); *Unim Corp. V.*

*Krongold*, 2006 WL 2224012 (ND. Ga. Aug. 2, 2006)(citing *Spivey v Zant*, 683 F.2d at 885);

*Resolution Trust Corp, v. H- - - -, P.C.*, 128 F.R.D. 647, 649-50 (N.D. Tex. 1989); *Roberts v Heim*, 123 F.R. D. 614, 630-35 (N.D. Cal. 1988).  The work-product doctrine does not apply where a client, as opposed to some other party, seeks discovery of the lawyers mental impressions.  *Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.* 212 F.R.D. 283, 286 (E.D. Pa. 2002).

Here, because Class Counsel claim to represent the interests of Named Consumer Plaintiffs, the work product doctrine does not apply.  *See, e.g.*, Revised Fifth Amended Master Consolidated Class Action Complaint filed February 19, 2009 at Docket No. 5902. The work-product doctrine does not apply where a client, as opposed to some other party, seeks discovery of the lawyers mental impressions.  *Koen Book Distributors, Inc. v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.* 212 F.R.D. 283, 286 (E.D. Pa. 2002).

As this court in *In re Raytheon Securities Litigation* noted, the work product doctrine "does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent." 218 F.R.D. at 359 (D. Mass. 2003).  The doctrine protects the attorney's work product from opponents, not the very people that class counsel purports to represent.  Thus, it matters not how or under what circumstances Named Class Plaintiffs received Exhibit J, they would have had every right to request and receive the document directly from Class Counsel without any work product bar.  Any argument to the contrary by Class Counsel simply undermines Class Counsel's claim of adequate representation of their clients, the Named Consumer Plaintiffs and the Class.

3.      Assuming *arguendo* the work product doctrine applies, it was waived by the production to an adversary.

Even were this Court to find that the work product doctrine applies to Exhibit J, Class Counsel fail to address the matter of their waiver of the work product doctrine by the fact that Named Consumer Plaintiffs, their counsel, and potentially others already have the document[5], even assuming the work product doctrine is found to attach to Exhibit J.  It is the attorney who must be on guard to prevent disclosure of confidential documents, particularly where those documents contain opinion work product.  See *Data General Corporation v. Grumman Systems Support Corporation,* 139 F.R.D. 556, 560 (D. Mass 1991).  In fact, this Court has previously held that merely marking a document "Confidential" or even "Confidential-Trial Counsel Only" does not constitute the requisite guard required to protect work-product.  *Id* at 561.

The work product doctrine may be waived through disclosure. *In re Raytheon Securities Litigation*, 218 F.R.D. at 359.   Specifically, the work product protection is waived if the disclosure ". . . enable[s] an adversary to access to the information." *Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 37 (D. Mass 2003)(quoting *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991)).  Further, the disclosure to one adversary waives the work-product protection as against all other adversaries.  *Id*.  Thus ". . . a party who discloses documents protected by the work-product doctrine may continue to assert the doctrine's protection only when the disclosure furthers the doctrine's underlying goal.  *Id*.

_____

[5] Given that the undersigned parties have possession of the document, which in itself constitutes a waiver, at a minimum, discovery should be permitted into the circumstances of Class Counsel's dissemination of Exhibit J both "AWP Counsel" – whom they do not name – and potentially others who may have received the document from Class Counsel, AWP Counsel or others.

The existence and extent of a waiver depends upon the following three factors: (1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege. *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (1st Cir.1988) (protection waived by disclosure to SEC, a potential adversary, without any assurance of confidentiality).

The purpose of the work product doctrine as stated by the First Circuit is to give an attorney ". . . a zone of privacy with which to prepare his client's case and plan strategy, without undue influence." *Id* (*citing In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d at 1014. When disclosures are made to an adversary, the work product is no longer within a "zone of privacy" so such disclosures cannot . . . "further the [work-product] doctrine's underlying goal. *Id* (quoting *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991)). That goal is not furthered by disclosure to an adversary. *Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 38 (D. Mass 2003); *Data General Corporation v. Grumman Systems Support Corporation*, 139 F.R.D. 556, 558 (D. Mass 1991); *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145, (D. Mass.. 1988).

As the court noted in *United States v. MIT*, "[i]n all events, it would take better reason than we have to depart from the prevailing rule that disclosure to an adversary, real or potential, forfeits work product protection." 129 F.3d 681, 687 (1st Cir. 1997).

Here, according to this Court, Class Counsel and the undersigned counsel for Named

Consumer Plaintiffs were both actual and potential adversaries in August 2005, when Exhibit J
was written and disseminated.  *See, e.g., In re Lupron Marketing and Sales Practices Litig.*, 228
F.R.D. 75, 80 (D.Mass. 2005)("Kline & Specter, which directly or through local counsel had
brought class actions in Arizona, North Carolina and New Jersey, refused to join in the
cooperative effort.  Kline & Specter instead embarked on a preemptive strategy to seize control
of the litigation by using state court proceedings to gain leverage over counsel cooperating with
the MDL action."); *see also, In re Pharmaceutical Industry Average Wholesale Price Litigation*,
2008 WL 53278 at * 3 (D.Mass. Jan 3, 2008)("what is crystal clear is that Mr. Haviland is
seeking a nationwide class in New Jersey at the same time he was seeking to represent a
nationwide class here without disclosing the conflict of interest to this Court. Apparently, Hagens
Berman and the other lead counsel did not know of Haviland's litigation position in New
Jersey.")   Indeed, Class Counsel have represented to this Court that they were adversaries at that
same time.  *See, e.g*, Class Counsel's Response to Williams' Motion for Court Review of Lead
Counsels' Allocation of GSK Fee Award, at 27 [Docket No. 5685]("Williams (and Haviland)
had no relationship to this MDL litigation or Lead Class Counsel's role in it until the Fall of
2005, when Williams and Haviland threatened to intervene.  Apparently, Williams was working
with Haviland on AWP-related state cases in New Jersey and Arizona, cases that we understand
have accomplished little.")

 Class Counsel claim that the memo was "directed only to fellow legal counsel" and
contained "one attorney's protected thoughts".  Motion to Strike at 2.  However, the content of
the memo itself belies such assertion.  There is no indication that any steps were taken by Mr.
Berman to reasonably protect the memo, which is inconsistent with the purpose of the work

product doctrine.  The document itself is not even minimally marked as being "Confidential",

"Confidential-Trial Counsel Only".  It contains no other notation or instruction that provide any

objective basis that this document was attorney work product and was not intended to be

disclosed to other parties.

The memo objectively contemplates its use other than as attorney work product, a use

inconsistent with the work-product doctrine.   Class Counsel affirmatively represented to this

Court that they had adequate consumer plaintiffs "waiting in the wings" in order to justify this

Court granting them an extension of 60 days to move to amend the Complaint.  In fact, Class

Counsel had no such consumer clients and needed to solve that problem in order to obtain

consumer class certification.  Class Counsel's memo exhorted the readers to find plaintiffs with a

"several billion" dollar enticement for doing so.  It would not be unreasonable for the intended

recipients of Class Counsel's memo to use the memo as a tool in which to accomplish the

primary directive of "find(ing) plaintiffs" by forwarding the memo to others who might be in a

better position to "help."  The fact that the memo does not discourage the recipients from using

the memo in such manner, and the fact that it was distributed to numerous parties without any

reasonable protections restricting its use and dissemination, belies any claim that the memo was

to be treated as work product.

**4.      Assuming Exhibit J is found to be protected by the work product doctrine, Class Counsel have not met their burden to have the same "sealed" or "stricken" from the record in this case.**

The courts have analyzed the public's right of access to documents filed with the courts

Case 1:01-cv-12257-PBS   Document 5970   Filed 03/20/09   Page 12 of 21

under the common law and the First Amendment to the United States Constitution.  In both contexts (to one degree or another), the right to access has applied to "judicial" activities or documents.  *In re Boston Herald, Inc.*, 321 F.3d 174, 180 (1st Cir. 2003).

"Under the common law, there is a longstanding presumption of public access to judicial documents."  *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)).  The presumption applies to "materials on which a court relies in determining the litigants' substantive rights," but not to documents that "play no role in the adjudication process," such as documents used only in discovery.  *Federal Trade Comm. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987).  However, the First Circuit has cautioned about taking "too restrictive a view of what constitutes a court record for the purpose of allowing public access" and of the term "relie[s]" as it pertains to the adjudicatory process.  *Id.*  To avoid the necessity of having to determine whether or not a document played a role in the court's deliberations, the First Circuit has ruled "that relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies."  *Id.* at 409.  Indeed, in *Standard Financial Management*, the First Circuit applied this definition in affirming the district court's decision to uphold the presumption in favor of public access to documents filed with the court in the context of the district court's approval of a consent decree that settled a civil enforcement action – a proceeding involving considerations and standards strikingly similar to those involved in the decision whether to deny or grant final authority for a class action settlement.  *See id.* at 408-09, 412.

This presumption of access is "strong and sturdy," *Standard Fin. Mgmt.*, 830 F.2d at 410, and arises from the principle that "public monitoring of the judicial system fosters the important values of 'quality, honesty and respect for our legal system.'" *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (quoting *Standard Fin. Mgmt.* at 410). It allows the public to focus a "watchful eye on the workings of public agencies." *In re Gitto Global*, 422 F.3d at 6 (internal quotation marks omitted). Under this presumption, "a citizen's right to know is not lightly deflected . . . , and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Standard Fin. Mgmt.*, 830 F.2d at 410 (internal quotation marks and citations omitted).

As explained in *Standard Financial Management*:

> When faced with a claim that cause sufficiently cogent to block access has arisen, it falls to the courts to weigh the presumptively paramount right of the public to know against the competing private interests at stake. This balance must be struck, of course, "in light of the relevant facts and circumstances of the particular case." The objectors – those seeking to keep the datum hidden from view – must carry the devoir of persuasion.

*Id.* at 410-11; *see also In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) ("[T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.") (internal quotations and citations omitted). Broadly alleging harm, without specific examples and articulated reasoning, does not permit the presumption to be overcome. *In re Cendant* at 194. Rather, to find good cause for impounding documents, there must be a particularized factual showing of potential harm; conclusory statements are insufficient. *Standard Fin. Mgmt.* 830 F.2d at 412; *see also In re*

*Gitto Global Corp.*, 2005 WL 1027348 at *10 (D.Mass. May 2, 2005) ("'In order to override the common law right to access, the party seeking the closure ... "bears the burden of [showing] that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure."  In delineating the injury to be prevented, specificity is essential.'") (quoting *In re Cendant*, 260 F.3d at 194).

As the court *In re Cendant* poignantly stated, the presumption of access is heightened, and even stronger, in a class action case:

> The right of public access is particularly compelling here, because many members of the "public" are also plaintiffs in the class action.  Accordingly, all the reasons . . . for the right of access to public records apply with even greater force here.  Protecting the access right in class actions promotes [class members'] confidence in the administration of the case.  Additionally, the right of access diminishes the possibility that "injustice, incompetence, perjury, [or] fraud will be perpetrated against those class members who have some stake in the case but are not at the forefront of the litigation.  Finally, openness of class actions provides class members with a more complete understanding of the [class action process] and a better perception of its fairness.

> Indeed, the information sealed in this case and kept secret from most of the parties was of the utmost importance in the administration of the case; it was directly relevant to the selection of lead counsel.  This point is crucial. In class actions, the lead attorneys have an unusual amount of control over information concerning the litigation.  By contrast, class members often have little input into the conduct of the class action and accompanying settlement negotiations, because of the large scale of litigation and the disconnect between defendants' possibly enormous liability and the relatively small recovery available to the individual plaintiffs.  The only stage at which class members can exercise effective control is in the selection of class counsel.  Throwing a veil of secrecy over the selection process deprives class members of that opportunity.

> ***

> Additionally, because of the peculiar posture of class actions whereby some members of the public are also parties to the class action, and because of the importance of selection of lead counsel to class action plaintiffs, the test for

14

> overriding the right of access should be applied in this case with particular
> strictness.[6]

*In re Cendant*, 260 F.3d at 193-94 (internal quotations and citations omitted; brackets in

original).

In addition to the common law right of access, there also is a qualified First Amendment

right of access to certain judicial proceedings and records. *In re Boston Herald,* 321 F.3d at

182.  There are two "complimentary considerations" in determining whether a constitutional

right to access applies to certain documents. *Id.* (internal quotations omitted).  First, the

question is whether materials like those at issue have been open to the public in the past,

"because a tradition of accessibility implies the favorable judgment of experience." *Id.* (internal

quotations omitted).  Second, the question is "whether public access plays a significant positive

role in the function of the particular process in question." *Id.* (internal quotations omitted).  If

inquiry into these considerations were to result in affirmative answers, the right to access could

be defeated only by "articulating an overriding interest based on findings that closure is essential

to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 181, 182.

(internal quotations omitted).  This test is even more "stringent" than that the test arising under

---

[6] Respectfully, the stage at which a district court determines whether to grant or deny final
approval of a proposed class action settlement and the appointment of settlement class counsel –
the final chapter of a class action against the settling defendants – is equally of the "utmost
importance" and is every bit as "crucial" as the stage at which a district court appoints lead
counsel.  The final approval stage likewise offers the rare opportunity for class members – who
also are members of the public – to have input into the conduct and administration of the class
action by objecting to the proposed settlement that, if finally approved, would bind all class
members to the terms of the settlement and extinguish forever their claims.  The court in *In re
Cendant* regarded the presumption of access and against the sealing of documents in a class
action case as embodying a "heightened standard." *In re Cendant*, 260 F.3d at 196.  Such a
conclusion comports with the Supreme Court's admonition to district courts to apply "heightened
attention" to the class action rules in the settlement context. *Amchem Prods., Inc., v. Windsor*,
521 U.S. 591, 620 (1997).

the common law.  *Id.* at 182; *see In re Cendant*, 260 F.3d at 198 n.13.  The First Circuit has

intimated (without deciding the issue) that it does <u>not</u> view these "complimentary

considerations" as a pair of elements that must both be satisfied as part of a two-prong test.  *In*

*re Boston Herald* at 182.  Because the full scope of the law regarding the constitutional right to

access is unsettled, reviewing courts must evaluate cases one-by-one as they arise and determine

whether each individual case falls into a category of activities to which the right applies.  *Id.*

Under either standard – a right to access under the common law or the First Amendment

– Class Counsel's Motion to seal and strike should be denied.  As a threshold matter, for the

reasons discussed in the preceding section, the doctrine of work product does not apply in this

non-discovery setting involving clients.  Moreover, it appears that the true motivation behind

Class Counsel's Motion is to avoid embarrassment by the conduct evidenced in the document at

issue, which was released in the public realm years ago and should be available for all to see.

"[E]mbarrassing information is not in itself sufficient reason to block public access." *Siedle*, 147

F.3d at 10.

Moreover, Exhibit J is "judicial" and has been submitted to this Court as part of the

relevant record of Co-Lead Counsel's application for class certification and approval of the

Track 2 settlement.  If granted, these requests will determine the substantive rights of the

objecting Named Consumer Plaintiffs and millions of absent Class members throughout the

country.  The document demonstrates what defendants charge throughout the litigation: Co-

Lead Counsel had no consumer clients.  It also shows that they misrepresented their

representation to this Court.  The document evidences a solicitation for clients and puffing about

the worth of the case to entice such solicitation  In the current context, the Court should err on

the side of upholding the presumption of access to ensure that Class members and other members of the public have access to this document in furtherance of promoting the veracity of the legal process and the integrity of the judicial system.  Indeed, as *In re Cendant* teaches, this presumption of access is even stronger in the class action setting.

Class Counsel, who are not *parties* in the case, have failed to carry their burden of overcoming this stout presumption.  Their treatment of this important issue is contained in two short paragraphs in their Motion to Strike.  They provide only a bald (and incorrect) allegation that the document contains work product.  They fail to mention, much less discuss, the standards governing the "presumptively paramount right to access."  *Standard Fin. Mgmt.*, 830 F.2d at 410.  Further, far from demonstrating the type of particularized harm that the standard requires, they do not even allege, much less articulate with specificity, how they are or would be harmed by public disclosure of anything stated in the document.  Therefore, they have failed to meet the pre-condition of stating a "claim that cause sufficiently cogent to block access has arisen."  *Id.*

On the other hand, Class members and the public at large have a right to know and to scrutinize what Class Counsel has been doing in this litigation and how the litigation arrived at this stage.  They also have a right to monitor and ensure that the Court is not unwittingly deciding matters based on misrepresentations made by counsel, or other improper conduct by the attorneys placed in charge by the Court, who play a vital role in the administration of justice.  Transparency also provides Class members the opportunity to review the actions of their Court-appointed counsel, whom they have never seen, spoken to or met, and to ferret out any potential or actual misconduct.  This Court, for its part, should invite the light of day to shine on this

document.  In the words of the First Circuit:  "Here, as in so many other instances, justice is better served by sunshine than by darkness."  *Standard Fin. Mgmt.*, 830 F.2d at 412.

Moreover, there is a right to access in this case under the First Amendment, as articulated in this Circuit.  This second of the two First Amendment "complimentary considerations" surely is implicated here.  Access by the public in this case – including, minimally, any individual member of a class action – may play "a significant positive role in the function of the particular process in question."  *In re Boston Herald* at 182.  Here, the "process" is final approval of a nationwide class action settlement.  Objections have been raised to the settlement by various Class members.  All class members in a class action may benefit from objections taken by any other class member.  In fact, the law holds in high regard the role served by objectors, and recognizes the service they perform on behalf of a class and the public.  *See, e.g., In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 278 F.3d 175, 202 (3d Cir. 2002) (Objectors "serve a highly useful vehicle for members of the class and for the public generally," and an attorney "who raises pertinent questions concerning the conduct of [class counsel], the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund . . . renders a service to the class [and] aids the court.");  *In re Oracle Sec. Litig.*, 131 F.R.D. 688, 689 (N.D.Cal. 1990) (objectors play an important role in giving courts access to information because "in assessing settlements of representative actions, judges no longer have the benefit of the adversarial process.")  Additionally, as this Court is aware, one of the Named Consumer Plaintiffs has previously raised objections with this Court concerning a prior settlement with AstraZeneca, some of which objections this Court found "aren't crazy" in ordering Class Counsel to reconsider the terms of the proposed settlement (May 1, 2008 Hrg. Tr. 4:24).

Meeting just one of the two considerations should be sufficient to trigger the very high hurdle that Class Counsel must satisfy to defeat the public right to access under the First Amendment.  *In re Boston Herald* at 181, 182.  Thus, Class Counsel can defeat this right "only by articulating an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.* 181-82.  Class Counsel has made no effort to do this in their Motion to Strike.  Moreover, the pleadings relating to final approval of a class action settlement are routinely open to the public and have been in this case. Class Counsel have failed to meet their burden of demonstrating to this Court that the public right of access should be obstructed or destroyed to shield their erroneously claimed work product.

**C.      The Request to "Restrain Haviland" Should Be Denied.**

Class Counsel's suggestion that this Court consider revoking the undersigned's *pro hac vice* admission should be rejected.  "Attorneys admitted pro hac vice are held to the same professional responsibilities and ethical standards as regular counsel. Once admitted, pro hac vice counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar."  *United States v. Collins,* 920 F.2d 619, 626 (10th Cir.1990); *See also Johnson v. Trueblood*, 629 F.2d 302 (3rd Cir.1980) (holding that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status).

As discussed above, Class Counsel's assertion that the Exhibit J revealed confidential attorney work product is misplaced, as the doctrine is inapplicable and, if applicable, waived. Further, Class Counsel's challenge to the length of the Named Consumer Plaintiffs'

19

Memorandum, provides no basis for striking the pro hac vice of these Plaintiffs' individual

counsel.  Accordingly, revocation of the pro hac vice admission of counsel for Named

Consumer Plaintiffs is unfounded and inappropriate.


Dated: March 20, 2009                          Respectfully submitted,

                                               /s/ Donald E. Haviland, Jr.
                                               Donald E. Haviland, Jr., Esquire
                                               Michael P. Donohue, Esquire
                                               THE HAVILAND LAW FIRM, LLC
                                               111 S. Independence Mall East, Suite 1000
                                               Philadelphia, PA 19106
                                               Telephone: (215) 609-4661
                                               Facsimile:  (215) 392-4400

                                               *Counsel for Rev. David Aaronson,
                                               individually and on behalf of the Estate of
                                               Susan Ruth Aaronson, M. Joyce Howe,
                                               individually and on behalf of the Estate of
                                               Robert Howe, Larry Young, individually
                                               and on behalf of the Estate of Patricia
                                               Young, Therese Shepley, individually and
                                               on behalf of the Estate of James Shepley,
                                               Harold Carter, Roger Clark, on behalf of
                                               the Estate of David Clark, Ethel Walters,
                                               individually and on behalf of the Estate of
                                               Hunter Walters, Katie Bean, individually
                                               and on behalf of the Estate of Harold Bean,
                                               James Monk, Virginia Newell, individually
                                               and on behalf of the Estate of William
                                               Newell, Oral Roots, Rebecca Hopkins and
                                               George Baker Thomson*

## CERTIFICATE OF SERVICE

I, Donald E. Haviland, Jr., Esquire, hereby certify that on March 20, 2009, I filed the foregoing Named Consumer Plaintiffs' Response and Memorandum in Opposition to Class Counsel's Emergency Motion and Memorandum to (I) Seal Attorney Work Product and (II) Strike Don Haviland's Memorandum of Named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement with the Clerk of this Court and used the CM/ECF system to send notification of such filing to all registered person(s).

/s/ Donald E. Haviland, Jr.

*Counsel for Rev. David Aaronson, individually and on behalf of the Estate of Susan Ruth Aaronson, M. Joyce Howe, individually and on behalf of the Estate of Robert Howe, Larry Young, individually and on behalf of the Estate of Patricia Young, Therese Shepley, individually and on behalf of the Estate of James Shepley, Harold Carter, Roger Clark, on behalf of the Estate of David Clark, Ethel Walters, individually and on behalf of the Estate of Hunter Walters, Katie Bean, individually and on behalf of the Estate of Harold Bean, James Monk, Virginia Newell, individually and on behalf of the Estate of William Newell, Oral Roots, Rebecca Hopkins and George Baker Thomson*