# EXHIBIT B

**RULE 30(b)(6) TOPICS TO WHICH CALIFORNIA OBJECTS
(NUMBERED AS DEPICTED IN LETTER FROM COUNSEL
FOR DEY, INC., DATED AUGUST 19, 2008).**

1.      The allegedly false or fraudulent statements or actions made or taken by the Remaining Defendants that relate in any way to the claims in the Complaint, including: false or fraudulent statements made or caused to be made by the Remaining Defendants and their agents; false or fraudulent claims filed by the Remaining Defendants and their agents; actions or statements that caused a false or fraudulent claim to be filed; and false or fraudulent price representations.

2.      The facts and circumstances forming the basis for the allegation, in paragraph 1 of the Complaint, that, "Defendants defrauded [Medi-Cal] . , , by reporting excessively high and false prices for some of their prescription drugs with knowledge that Medi-Cal used these reported prices for establishing reimbursement to its Medi-Cal providers for these drugs."

3.      The facts and circumstances forming the basis for the allegation, in paragraph 29 of the Complaint, that, "The Defendant manufacturers, further caused the pricing information reported to Medi-Cal to be false and misleading for their products by providing off invoice financial inducements such as free goods and cash payments."

4.      The facts and circumstances forming the basis for the allegation, in paragraph 34 of the Complaint, that, "The manufacturers control the prices that are reported by FDB."

5.      The facts and circumstances forming the basis for the allegation, in paragraph 35(d) of the Complaint, that, "FDB reported AWPs, DPs, wholesale acquisition costs ("WACs" and FULs for the specified prescription drugs based on the price information provided by the Defendants for their respective drugs."

6.      The facts and circumstances forming the basis for the allegation, in paragraph 36 of the Complaint, that, "The Defendants reported or caused to be reported false or misleading prices to Medi-Cal by providing false or misleading price information ... to the compendia including FDB with knowledge that they in turn would utilize such false and misleading price information in determining the AWPs and DPs that were reported to Medi-Cal."

7.      The facts and circumstances forming the basis for the allegation, in paragraph 38 of the Complaint, that, "Each Defendant, at a minimum, provided such pricing information at least annually to FDB for the express purpose of causing FDB to report such prices to Medi-Cal."

8.      The facts and circumstances forming the basis for the allegation, in paragraph 42 of the Complaint, that, "Defendants' inflation of their reported prices caused many, if not most, claims paid by Medi-Cal for Defendants' specified prescription drugs to be false claims."

9.      The facts and circumstances forming the basis for the allegation, in paragraph 44 of the Complaint, that, "Defendants competed with each other by inflating their spread. Defendants used the spread as an unlawful financial inducement to increase their market share and profits."

10. The facts and circumstances forming the basis for the allegation, in paragraph 47 of the Complaint, that, "As a result of their fraudulent scheme, Defendants and their customers have reaped hundreds of millions of dollars in illegal profits at the expense of California, and directly contributed to Medi-Cal's soaring cost of providing prescription drugs to California's needy, poor, elderly, and disabled."

11. The facts and circumstances forming the basis for the allegation, in paragraph 48 of the Complaint, that, "Because FULs were based on reported prices, Defendants' reporting of inflated prices corrupted the FULs and prevented California from gaining the full benefit of the FUL safeguard."

12. The facts and circumstances forming the basis for the allegation, in paragraph 48 of the Complaint, that, "However, if truthful prices had been reported, the FUL prices would have exceeded reimbursement based on many companies' reported prices and the FUL upper limit prices would not have been utilized for reimbursement."

13. The facts and circumstances forming the basis for the allegations: (a) in paragraphs 80 through 89 of the Complaint concerning Dey; (b) in paragraphs 90 through 93 and paragraph 129 through 132 concerning Sandoz; (c) in paragraphs 123 through 128 concerning Mylan; (d) in paragraphs 170 through 176 concerning Warrick; and (e) in paragraphs 177 through 180 to the extent these allegations are directed toward any of the Remaining Defendants.

14. The facts in California's possession relating to each and every instance in which any of the Remaining Defendants marketed the "spread" to any Provider as alleged, among other places, in paragraphs 82 (Dey), 125 (Mylan), and 174 (Warrick) of the Complaint, including, for each such instance: (a) the employee of who allegedly marketed the spread; (b) the Provider to whom the spread was marketed (and the individual employees of the Provider involved in the interaction); (c) the drug that was marketed; (d) the place and time of the alleged marketing; (e) the content of the alleged marketing (including the precise facts on which California bases its assertion that the employee "marketed the spread"); (f) whether the Provider purchased or did not purchase the product; and (g) if applicable, all evidence that supports or refutes California's contention that the Provider purchased the product because of the spread between acquisition cost and reimbursement, as opposed to some other reason.

15. The basis for any contention that the prices allegedly reported or represented by the Remaining Defendants for any drug were used in determining Medi-Cal reimbursement.

16. The actual prices the Remaining Defendants should have reported in lieu of the allegedly fraudulent prices, how those actual prices were determined, and whether California contends that the Remaining Defendants should have reported each of those prices to Medi-Cal.

58. Communications with Ven-A-Care and any of its representatives, including but not limited to, Zachary T. Bentley, T. Mark Jones, Luis Cobo, John Lockwood, The Breen Law Firm, James J. Breen, Esq., Atlee Wampler, Esq., and Alison W. Simon, Esq.

59. Ven-A-Care's presentations to any state or federal government agency, department, division, or unit, including, but not limited to Ven-A-Care's presentation to the National

Association of Medicaid Fraud Control Units in 1998, Ven-A-Care's presentation to Nancy-Ann Min DeParle in 1998, any Ven-A-Care presentation to CMS, any Ven-A-Care presentation to the U.S. Department of Justice, and any Ven-A-Care presentation to a State Medicaid agency.

63.     Each category of damages for which California seeks a recovery from the Remaining Defendants for each of such defendant's Subject Drugs in this action, including: (a) the amount of damages; (b) the methodology used to calculate or derive that amount; and (c) all facts and documents upon which California relies to support its claims as to the nature and extent of each category of damages.

64.     The dates, facts and circumstances describing when and how California learned of the fraud and false claims alleged in the Complaint.

65.     How and when California learned of the facts underlying the allegations in paragraphs 49 through 176 of the Complaint.

66.     The extensions of time to intervene in this action which were granted to California, including but not limited to the reasons given for the delay, the number of extensions granted, the legal bases for those extensions, and California's conduct of its investigation into the allegations in the Ven-A-Care Qui Tam Complaint.