# EXHIBIT E




Office of Attorney General
Edmund G. Brown Jr.

September 30, 2008

VIA EMAIL AND U.S. MAIL

Philip D. Robben
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178

Bureau of
Medi-Cal Fraud
and Elder Abuse

1455 Frazee Road
Suite 315
San Diego, CA
92108-4304

Telephone: (619) 688-6099
Facsimile: (619) 688-4200

RE:  *State of California, ex rel. Ven-A-Care v. Abbott Laboratories, Inc., et al.*
     Case No. 03-cv-11226-PBS (MDL 1456)

Dear Philip:

This letter is intended to (1) update defendants on our positions regarding still outstanding areas of disagreement regarding the 30(b)(6) depositions addressed in your letters of August 19, 2008 and September 16, 2008, and (2) update you regarding our 30(b)(6) deposition scheduling and designees and related matters.

<u>Topics to which California previously objected in their entirety</u>

Our position regarding Topics 1 through 17 and 63-66,[1] as indicated in my letter of August 29, 2008 and discussed during our meeting in Sacramento on September 24, is that plaintiffs should not be required to produce a 30(b)(6) witness(es) to testify on those topics. The basis for our objection is that the only individuals who could be designated to testify on those topics are the deputies attorney general and auditors who are prosecuting this case on behalf of California. The inquiries indicated in these topics, i.e. inquiries into the facts considered by our office in developing our amended complaint, would implicate work product privilege concerns as well as impose an unreasonable burden on plaintiffs, especially when the facts on which we rely do not originate within DHCS but within pricing data and information which is both publicly available and reported (we allege) by the defendants. We understand our obligation to file a motion for a protective order should we not reach agreement on this issue, and we would point to the following cases (among others) for support if such a motion is required: *SEC v. Morelli*, 143 F.R.D. 42, 46-47 (S.D.N.Y. 1992); *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of Am.*, No. 90 Civ. 5722, 1992 WL 208284, at *10-*12 (S.D.N.Y. Aug.18, 1992); *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan.1996); *SEC v. Rosenfeld*, No. 97 Civ. 1467, 1997 WL 576021, at *2-*4 (S.D.N.Y. Sept. 16, 1997); and *F.T.C. v. U.S. Grant Resources, LLC*, No. Civ. 04-596, 2004 WL 1444951 at *5 (E.D. La. June 25, 2004).

---

1. In my letter of August 29, 2008 we additionally objected to Topics 54, 58 and 59 in their entirety. We have since withdrawn any objections to Topic 54, and this letter conveys a suggestion for reaching consensus on Topics 58-59.

Philip D. Robben
September 30, 2008
Page 2

---

Please let us know if defendants disagree and have concluded that California must move for a protective order. Under such circumstances, we ask for defendants' agreement that California has a week in which to complete the filing of that motion.

### Ven-A-Care Topics

During our discussion on September 24, I said we would provide you with suggested alterations to Topics 58 and 59 which would enable DHCS to designate a knowledgeable witness. If Defendants are willing to accept the suggested alterations below, we would withdraw our objections to both Topics.

Suggested 58: "Communications ~~with~~ *between DHCS/DHS and* Ven-A-Care and any of its representatives, including but not limited to, Zachary T. Bentley, T. Mark Jones, Luis Cobo, John Lockwood, The Breen Law Firm, James J. Breen, Esq., Atlee Wampler, Esq., and Alison W. Simon, Esq."

Suggested 59: "*Ven-A-Care's presentations to DHCS/DHS, and DHCS's/DHS's knowledge, if any, of* Ven-A-Care's presentations to any *other* state or federal government agency, department, division, or unit, including, but not limited to Ven-A-Care's presentation to the National Association of Medicaid Fraud Control Units in 1998, Ven-A-Care's presentation to Nancy-Ann Min DeParle in 1998, any Ven-A-Care presentation to CMS, any Ven-A-Care presentation to the U.S. Department of Justice, and any Ven-A-Care presentation to ~~a~~ *any other* State Medicaid agency.

### Usage of the term "California" and the absence of a confined time period.

During our discussion of September 24, we exchanged views regarding the merits of our August 29, 2008 objections to (1) any wording in any topic which could be construed to require the designee for that topic to speak for "California" instead of, exclusively, DHCS, and (2) having to produce a designee to speak for "California" rather than DHCS. We also discussed our additional objection to being required to produce a designee capable of responding on any topic regarding any time period earlier than 1994.

My understanding is that defendants are still evaluating their response to these objections. I think we discussed one possible alternative for resolving the temporal issue last week, in which defendants would identify specific topics in which pre-1994 testimony was deemed critical or important, and we would evaluate our ability to address any such instances of pre-1994 knowledge.

Please let me know where we stand on these issues at your convenience, as they bear on both designee preparedness planning, and California's previously noted obligation to move for a protective order, if required.

Designees

As noted in an email exchange earlier today, we have designated Craig Miller to testify on several topics which were earlier assumed to be appropriate for Kevin Gorospe. Maureen Tooker is now being deposed on October 21 as both a 30(b)(1) and 30(b)(6) witness, which makes it unlikely that Greg Weber can be deposed regarding Topic 68 on that day. We are working on proposed dates for Len Terra's fact deposition and Greg Weber's 30(b)(6), on consecutive days, in November. Accordingly, we propose[2]:

October 21, 2008

    9:00 a.m.:     Maureen Tooker (consecutive depositions in one day, in her capacity as (1) fact witness, and (2) 30(b)(6) witness for Topic No. 68)

October 22, 2008

    9:00 a.m.:     Craig Miller (Topic Nos. 40, 42-53, 56-57)

October 23, 2008

    9:00 a.m.:     Kevin Gorospe (Topic Nos. 18-32, 35, 37-39, 41, 54-55, 60-62)

November 6, 2008

    10:00 a.m.:     Stan Rosenstein (Topic Nos. 33-34)

November 7, 2008

    9:00 a.m.:     Larry Bernstein (Topic No. 36)
    1:00 p.m.:     Vincent Blackburn (Topic No. 67 Re: "public disclosure policies")
    3:00 p.m.:     Cindy Walton (Topic No. 67 Re: "retention" and "destruction" policies)

Sincerely,

*[signature]*

Nicholas N. Paul
Bureau of Medi-Cal Fraud and Elder Abuse

For     EDMUND G. BROWN JR.
           Attorney General

---

2. Please see, also, the attached document intended to capture the current state of 30(b)(6) scheduling and designations.

Philip D. Robben
September 30, 2008
Page 4

cc:  Brian L. Bank
     Daniel J. Bennett
     Lara A. Berwanger
     John P. Bueker
     Catherine S. Gratton
     David Zlotnick

DHCS 30(b)(6) DESIGNEES

| TOPIC | LARRY BERNSTEIN | PROPOSED DATE |
|---|---|---|
| 36 | Any audits or compliance efforts California made to ensure that Providers were in compliance with their obligations to report usual and customary charges pursuant to 42 C.F.R. § 512(b)(2), or any applicable state regulation. | 11/7/2008 |
| **TOPIC** | **VINCENT BLACKBURN** | |
| 67 | California's ~~retention, destruction and~~ public disclosure policies regarding Documents and California's compliance with those policies. | 11/7/2008 |
| **TOPIC** | **KEVIN GOROSPE** | |
| 18 | Any guidance, instruction, or requests communicated by California to any of the Remaining Defendants concerning how to establish published and list prices. | 10/23/2008 |
| 19 | Any guidance, instruction, or requests communicated by California to any of the Remaining Defendants regarding marketing the spread. | |
| 20 | The continued use of AWP, WAC, and other Pricing data as means for reimbursement to Medi-Cal Providers. | |
| 21 | Any survey, study, report, or like document, concerning the acquisition costs of pharmaceuticals, including but not limited to the Myers and Stauffer LC survey alleged in paragraph 41 of the Complaint. | |
| 22 | Any survey, study, report, or like document, concerning the cost to Providers to dispense pharmaceuticals. | |
| 23 | California's knowledge of actual acquisition costs for the Subject Drugs for any Provider, including but not limited to, pharmacies, physicians, wholesalers, PBMs, drug purchasing pools, or the state itself. | |
| 24 | All attempts by California to ascertain Providers' actual acquisition costs for any prescription drugs reimbursed by the state Medicaid program. | |
| 25 | Communications between California and Providers regarding reimbursement for acquiring, dispensing, or administering the Subject Drugs. | |
| 26 | California's administration or oversight of Medi-Cal, including but not limited to:  a. The utilization of Subject Drugs by patients covered by the Medi-Cal; b. Your efforts to reduce or limit expenditures for Subject Drugs; c. Information provided to or received from the federal government in connection with Medi-Cal relating to prescription drug pricing or dispensing fees; d. Payments made by state or other entities, such as local agencies, to providers in connection with Medi-Cal; e. Payments from the state to other entities, such as local agencies, in connection with Medi-Cal; and f. The state budgetary source of the money used by California to make payments in connection with Medi-Cal. | |
| 27 | The manner in which funds paid to California by the United States of America, or any Federal Agency, pursuant to 42 U.S.C. § 1396b, are applied for, calculated, received, processed, and allocated or distributed by California. | |
| 28 | The administration of reimbursement to providers for any Subject Drug in connection with Medi-Cal, including but not limited to:  a. The manner in which claims for reimbursement of Subject Drugs are submitted and verified; b. Calculation, monitoring, processing, and payment of claims for reimbursement to providers for Subject Drugs under Medi-Cal during the Relevant Period; c. California' s negotiation, authoring, or execution of any contract or memorandum of understanding or agreement , or contribution to any contract or memorandum of understanding or agreement, between California and any Provider relating to AWP or WAC or the reimbursement of prescription drugs; d. California' s establishment, consideration, determination, calculation , or setting of the dispensing fees or fees for other professional services payable in connection with the supply or administration of pharmacy-dispensed and physician administered drugs; e. All reports, meetings and other information relating to any analysis by California of any change to the reimbursement formula (including dispensing fee) under Medicaid for the Subject Drugs a | |
| 29 | California ' s adoption, rejection, or consideration of recommendations and information related to AWP, WAC, or other Pricing data, received from any other state, the federal government or any agency of the foregoing. | |

DHCS 30(b)(6) DESIGNEES

| | | |
|---|---|---|
| 30 | During the Relevant Period, the organizational structure of Medi-Cal, including but not limited to identifying which individuals held what positions, how long the individuals held those positions, and what were the job duties of those position. | |
| 31 | State Medicaid plan provisions and state Medicaid plan amendments relating to prescription drugs and the process by which such plan amendments are approved, amended, and implemented. | |
| 32 | The establishment, nature, and purpose of the state's MAIC program, including but not limited to the drugs that were subject to MAIC reimbursement, the procedure for selecting which drugs would be subject to MAIC reimbursement, the procedure for setting and changing MAICs, the criteria and information used to establish and change MAICs, and the changes to the MAIC program that were considered or implemented over time. | |
| 35 | Any pending or threatened litigation, claims, allegations, or charges that Medi-Cal is not in compliance with Federal or state law or otherwise violates Federal or state law. | |
| 37 | Communications between California and other states or Federal Agencies concerning the reimbursement of prescription drugs under Medicaid. | |
| 38 | Communications, arrangements, contracts or other Documents reflecting a relationship between California and any Publisher regarding the purchase of or access to information regarding prescription drug pricing. | |
| 39 | California's receipt, knowledge, review, adoption, or rejection of government surveys, studies, reports, audits, instructions, and recommendations concerning: (a) Medicaid reimbursement; (b) Medicare reimbursement; (c) the use of AWP and other Pricing data as the basis for Medicaid reimbursement; and (d) Provider's acquisition costs for pharmaceutical products. | |
| 41 | The following topics concerning any California supplemental rebate program: (a) the purpose and creation of the supplemental rebate program; (b) the criteria used to select the drugs for which supplemental rebates would be required; (c) the prices used in determining supplemental rebates; (d) information provided by drug manufacturers; (e) negotiations with drug manufacturers; (f) determinations of supplemental rebate amounts; (g) invoices for supplemental rebates sent by or on behalf of California to any Remaining Defendant; (h) Communications between California and any defendant concerning supplemental rebates; (i) analyses performed by California or on California's behalf concerning implementation of a supplemental rebate program; and j) the terms of any supplemental rebate agreements entered into by any of the Remaining Defendants. | |
| 54 | The November 27-28, 1990 Pharmacy Reform Tag Meeting and the positions advocated by each attendee (including California's attendee) regarding the contemplated disclosure by HCFA to the states of AMP data. | |
| 55 | The manner in which federal matching funds are applied for, calculated, received, processed, and allocated or distributed to California. | |
| 60 | Medi-Cat's definition of usual and customary charge, usual and customary billed charge, or any variation of the term for the amount submitted with a claim by the Provider to Medi-Cal (the "Usual and Customary Charge"), and how and why that definition has changed. | |
| 61 | Communications with Providers regarding Medi-Cat's definition of the Usual and Customary Charge, including any guidance or instruction to providers regarding how to determine the Usual and Customary Charge submitted with a claim by the Provider to Medi-Cal. | |
| 62 | Efforts made by California to encourage Providers to dispense or administer generic drugs and any actual or projected savings attributed to such efforts. | |

DHCS 30(b)(6) DESIGNEES

| TOPIC | CRAIG MILLER | |
|---|---|---|
| 40 | The following topics concerning the Medicaid Drug Rebate Program: (a) the purpose and creation of the Medicaid Drug Rebate Program; (b) the prices used in determining Medicaid Rebates; (c) information provided by drug manufacturers; (d) determinations of Medicaid Rebate amounts; (e) invoices for Medicaid Rebates sent by or on behalf of California to any Remaining Defendant; (f) Communications between California and CMS concerning Medicaid Rebates; (g) Communications between any defendant and California concerning Medicaid Rebates; and (h) the terms of the agreements entered into by the Remaining Defendants in connection with the Medicaid Drug Rebate Program. | 10/22/2008 |
| 42 | California's knowledge and understanding of the calculation of AMP from the unit rebate amount ("URA") supplied to California by CMS pursuant to the Medicaid Drug Rebate Program. | |
| 43 | Any actual calculation or approximation of AMP from URA. | |
| 44 | Any analysis of AMP or URA, or proposed or actual use of AMP or URA, connection with reimbursement under Medi-Cal. | |
| 45 | Any comparison performed by California or on California's behalf between URA or AMP and any other price. | |
| 46 | Communications between California and CMS concerning AMP. | |
| 47 | Communications between California and CMS concerning URA. | |
| 48 | Communications between California and any defendant concerning AMP. | |
| 49 | Communications between California and any defendant concerning URA. | |
| 50 | Communications between California (or entity acting on California ' s behalf) and any drug manufacturer, Provider, Provider association , government agency, or Person regarding AMP. | |
| 51 | California's receipt, use, knowledge, understanding, and discussion of AMP information from CMS. | |
| 52 | California' s receipt, use, knowledge , understanding, and discussion of URA information from CMS. | |
| 53 | California's receipt, use, knowledge, understanding, and discussion of AMP information from any defendant. | |
| 56 | The manner in which rebates under the Medicaid Drug Rebate Program or any supplemental rebate program are calculated, received, processed, allocated, or distributed. | |
| 57 | Communications between California and any defendant regarding AWP, WAC, Medicaid Rebates, supplemental rebates, drug prices, sales or marketing practices , Medi-Cal, or any allegation in the Complaint. | |
| TOPIC | STAN ROSENSTEIN | |
| 33 | Communications between Medi-Cal and any member of the state legislature or representative of the governor concerning reimbursement rates for prescription drugs. | 11/6/2008 |
| 34 | Communications between Medi -Cal and Congress, Federal Agencies, or any other agency or entity concerning implementation of the FUL regulations. | |
| TOPIC | MAUREEN TOOKER | |
| 68 | California's computer systems, networks, or databases that might store or contain Documents, data, and Communications, including but not limited to e-mail, responsive to Defendants' First Set of Request for Production to Plaintiff State of California, served on October 4, 2007. | 10/21/2008 |
| TOPIC | CINDY WALTON | |
| 67 | California's retention, destruction ~~and public disclosure~~ policies regarding Documents and California's compliance with those policies. | 11/7/2008 |
| TOPIC | GREG WEBER | |
| 68 | California's computer systems, networks, or databases that might store or contain Documents, data, and Communications, including but not limited to e-mail, responsive to Defendants' First Set of Request for Production to Plaintiff State of California, served on October 4, 2007. | TBD |