UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK 2 SETTLEMENT | MDL NO. 1456<br><br>Civil Action No. 01-cv-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
PROTECTIVE ORDER WITH REGARD TO MURIEL TONACCHIO DEPOSITION**

On March 24, Haviland served a Notice of Deposition seeking to take the deposition of Muriel Tonacchio, one of Plaintiffs' proposed Class 1 representatives for the Track 2 settlement. Haviland noticed Ms. Tonacchio's deposition as part of his opposition to the proposed settlement with the Track 2 Defendants. In that opposition, Haviland alleges that Co-Lead Counsel have inadequately represented "consumer" plaintiffs and, in the course of that purportedly inadequate representation, have proffered an inadequate and atypical representative for Class 1 of the Track 2 settlement. Indeed, while claiming to wear his self-appointed "consumer advocate" hat, Haviland's spends five pages of the 30-pages of his Track 2 Opposition attacking the standing and motives of Muriel Tonacchio, a consumer plaintiff.

This Court should enter a protective order preventing the Tonacchio deposition. Haviland's attempt to take the deposition of Ms. Tonacchio is nothing more than another attempt to smear Class Counsel and divert their resources away from litigating this case. The Tonacchio deposition will not assist this Court in its evaluation of the fairness of the Track 2 settlement. Rather, Haviland seeks the deposition in order to have *his* clients inserted as class representatives and himself replaced as Class Counsel. Haviland should not be permitted to use the tools of discovery for his own ends; thus, the deposition should not be permitted to go forward.

# I.   BACKGROUND

## A.   Tonacchio Notice of Deposition

On March 24, 2009, Haviland served a Notice of Deposition directed to Muriel Tonacchio.  *See* Ex. A to Declaration of Jennifer Fountain Connolly ("Connolly Decl."). Ms. Tonacchio is one of the proposed representatives for Class 1 of the Track 2 settlement. Haviland did not seek leave to serve this discovery.

## B.   Haviland's Objection to the Track 2 Settlement

On March 16, 2009, Haviland filed his 72-page Memorandum of Named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement.  *See* Doc. No. 5953.  On March 24, 2009, pursuant to this Court's March 23rd electronic order requiring Haviland to resubmit a revised memorandum of no greater than 30-pages, Haviland filed his Revised Memorandum of named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement.  *See* Doc. No. 5971.

The Opposition presents a distorted view of the history of this litigation to create the picture that Class Counsel have not only studiously avoided adding consumers to this case, but have also made repeated misrepresentations to this Court regarding their ability to add consumers.[1]  *See* Opposition at 1-13.  The Opposition then injects this alleged behavior into the approval of the Track 2 settlement, alleging that Class Counsel attempted to avoid the alleged effects of this Court's prior rulings in order to ensure that association plaintiffs – which Class Counsel purportedly control – are permitted to be Class 1 representatives for the settlement.  *See id.* at 13-15.

---

[1] At a minimum Haviland must surely mean Class 1 consumers, since there are twenty (20) Class 3 consumers in the FAMCC.  *See id.* ¶¶ 40-59 (revised version).

Haviland's view of the history of this litigation is the basis for his claim that Co-Lead Counsel have proffered an inadequate and atypical consumer representative for Class 1. In short, despite the fact that Ms. Tonacchio submitted supporting documentation in compliance with this Court's prior orders,[2] and despite the fact that this Court already granted Class Counsel's motion to add Ms. Tonacchio as a Class 1 representative of the Track 2 settlement (*see* electronic order dated July 21, 2008), Haviland claims that Ms. Tonacchio is inadequate for a variety of reasons. *See* Opposition at 25-29.[3] Haviland therefore seeks to replace Ms. Tonacchio with his own clients – who have claims that this Court has already found to post-date the litigation class time period – and to displace Class Counsel as a representative for "consumers" in the Track 2 settlement.

## II.   ARGUMENT

### A.   The Tonacchio Deposition Is Not "Limited" And Will Not Aid This Court's Evaluation of the Fairness of the Track 2 Settlement

As an initial matter, the Tonacchio deposition Haviland seeks to support his opposition to the Track 2 settlement should be denied because it is not limited and will not aid this Court's evaluation of the fairness of the settlement. The Manual for Complex Litigation explains that:

> Objectors might seek intervention and discovery to demonstrate the inadequacy of the settlement. ***Discovery should be minimal and conditioned upon a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel.*** A court should monitor postsettlement discovery by

---

[2] *See, e.g.,* Doc. No. 1648 ("[W]hen plaintiffs amend the complaint to propose individual class representatives, they shall allege facts demonstrating the typicality and adequacy of the class representatives and disclose the documents demonstrating that the proposed class representatives made co-insurance payments (at least in part) under Medicare Part B based on AWP.").

[3] Class Plaintiffs will be responding to these allegations in full when they file their response to Haviland's objection on April 9.

> objectors and limit it to providing objectors with information central to the fairness of the proposed settlement.

*Id.* § 21.643 (4th ed. 2008) (emphasis added).

"Class members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement." *In re Lupron Marketing & Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 4039, at *6 (D. Mass. Mar. 16, 2005) (Stearns, J.) (citation omitted). "The fundamental question is whether the district judge has sufficient facts before [her] to intelligently approve or disapprove of the settlement." *Id.* (citation omitted).

For these reasons, the vast majority of courts have prohibited class action objectors from seeking broad and expansive discovery such as the discovery Haviland seeks here.[4] *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) (denying objector right to seek discovery from fellow objector who entered into settlement with class counsel after final approval and while appeal of final approval was pending); *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208, at **5-8 (N.D. Cal. Feb. 7, 2008) (denying objector's request for documents and request to depose class representative); *Epstein v. Wittig*,

---

[4] Plaintiffs have taken the depositions of three objectors to the Track 2 settlement, John Pentz, Connie Pentz and Corinna Connick. *See* Objection to Track Two Settlement and Attorney's Fee Request and Notice of Intention to Appear at Fairness Hearing, Doc. No. 5947. However, the analysis regarding whether Class Counsel, as appointed fiduciaries to the Class, may take discovery from objecting class members is different than the analysis regarding whether objecting class members may take discovery from class representatives and Class Counsel. For example, it is not unusual for class counsel in securities cases to be permitted to take discovery from objectors to establish that they own the stock at issue and therefore have standing to pursue the objection. *See, e.g., Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 974-75 (E.D. Tex. 2000) (noting that objector who failed to substantiate his membership in the class did not have "proper standing" to object to class action settlement). Similar discovery was sought by Plaintiffs from Mr. and Mrs. Pentz and Ms. Connick. *See* Subpoenas Duces Tecum, Ex. B to Connolly Decl.

Case No. 03-4081-JAR, 2005 U.S. Dist. LEXIS 31078 (D. Kan. Dec. 2, 2005) (denying objector's request to conduct deposition of plaintiff's lead counsel, board members of the class representative, and denying objector's request for production of documents supporting plaintiffs' decision to grant settlement release); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2004) (denying objectors' request for "wide-ranging discovery" from class counsel and defendants); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24 (D.D.C. 2001) (largely rejecting objectors' request for discovery relating to damages analyses and settlement negotiations by Class Counsel, but allowing objectors limited discovery seeking the identity of persons who participated in settlement negotiations).

In general, the factors that courts consider in determining whether discovery from an objector will assist the court in evaluating the fairness of a settlement are:

1) Whether there has already been substantial discovery in the case that can assist the court in determining the fairness of the settlement and whether objectors had access to any discovery taken in the case or to information regarding the terms of the proposed settlement. *See Lupron,* 2005 U.S. Dist. LEXIS 4039, at **6-7 (citations omitted); *Hemphill*, 225 F.R.D. at 620 (citations omitted); *Lorazepam*, 205 F.R.D. at 27.

2) Whether there is a reasonable basis for the discovery requested. *See Lupron,* 2005 U.S. Dist. LEXIS 4039, at **6-7 (citations omitted); *Hemphill*, 225 F.R.D. at 620 (citations omitted).

3) Whether objectors represent a large and potentially discrete group whose interests were not accommodated in the settlement. *See Vaughn v. American Honda Motor Co.*, Civil Action No. 2:04-CV-142 (TJW), 2007 U.S. Dist. LEXIS 55493 (E.D. Tex. July 31, 2007), at *6 (denying discovery sought by objectors because "[t]his case does not involve numerous groups of objectors and Objectors are capable of making their arguments regarding the fairness of the settlement without taking additional discovery."); *Lupron,* 2005 U.S. Dist. LEXIS 4039, at **6-7 (citations omitted); *Hemphill*, 225 F.R.D. at 620 (holding that "where the objectors represent only a small percentage of the class, the likelihood of the court granting their discovery requests decreases because the court will give great weight to the interests of the majority of the class members.") (citations omitted).

These factors weigh heavily against the Tonacchio deposition. First, there has already been substantial discovery in this case. And Haviland, who has been involved in this case for years and once sought to be Co-Lead Counsel, has had access to all of that discovery. There is simply no need for him to prolong these proceedings further. Second, there is no reasonable basis for the discovery requested, as he has not established any reason why Ms. Tonacchio, whom this Court has already deemed to be adequate, should be otherwise. Third, Haviland's clients do not represent a large group of objectors. Rather, they are a small self-interested group who, throughout most of their involvement in this case, have sought to displace Class Counsel and prolong these proceedings furthering Haviland's interests. Indeed, the sole purpose of seeking Ms. Tonacchio's deposition is to attempt to create grounds to have Haviland appointed as class counsel for "consumers." This is just another twist on Haviland's previously-recognized game of using his own clients to further his own interests. *See* Doc. No. 4972, at 9-10 ("Mr. Haviland filed declarations from his clients, proposed consumer representatives, threatening to withdraw if Haviland were not appointed as class counsel. . . . As I explained at the August 27 and the September 11 hearings, I interpreted these declarations as threats to take his toys and go home if the court declined his request. Mr. Haviland intended to coerce the Court into appointing him as Co-Lead Class Counsel or risk losing class representatives in a class action involving the sick and elderly.").

**B.    This Court Should Enter A Protective Order Barring Haviland From Taking the Tonacchio Deposition**

District courts have considerable discretion in monitoring discovery, and, while information should be free-flowing between litigants, there are limits. *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). Accordingly, upon a showing of good cause, this Court may enter a protective order either limiting or prohibiting discovery. *See*

6

FED. R. CIV. P. 26(c) (upon showing of good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.").

FED. R. CIV. P. 26(b)(2)(C) provides in relevant part that "[o]n motion or on its own, the court *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C) (emphasis added). The first step in determining whether "the burden or expense of the proposed discovery outweighs its likely benefit" within the meaning of Rule 26(b)(2)(C)(iii) is to assess the relevance and probative value of the materials sought by the subpoena. *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 13 (D. Mass. 2008). Here, because Haviland seeks to take Ms. Tonacchio's deposition solely to support his own clients' errant bid as class representatives, as well as his bid for Class Counsel (despite being disqualified for making material misrepresentations to the Court and for being disloyal to the Classes), the burden of the proposed discovery heavily outweighs its benefit.

During meet and confers with Class Counsel, Haviland has represented that his reason for serving the Notice for Ms. Tonacchio's deposition is to "test" her adequacy as a class representative. *See* Ex. D to Connolly Decl. (correspondence between Haviland and Class Counsel regarding Tonacchio deposition). But other courts have held that this is not a valid reason for an objector to seek discovery from a class representative. In *Hemphill*, the court

7

rejected a similar request in litigation that had likewise been pending for seven years. In so holding, it explained:

> Movants seek discovery of a wide variety of information, including depositions of Class Counsel, [class representative], and even a paralegal employed by 'Class Counsel' in order to 'test' the adequacy of Class Counsel and [the class representative]. The central premise underlying Movants' asserted need for this discovery is once again that Class Counsel acted collusively, in derogation of the interests of the class, during settlement negotiations . . . .
>
> As the Court has already found, Movants have not adduced evidence from other sources indicating that the settlement is collusive. As a result, their central premise for this discovery fails. . . .
>
> Discovery of such information . . . is neither necessary for a determination of whether Class Counsel are adequate nor is it necessary to provide the District Judge with information sufficient to determine whether the settlement is fair, reasonable and adequate to the class.

225 F.R.D. at 622-23.

The Court further explained that seeking discovery to challenge a class representative's adequacy was likewise inappropriate. It held that:

> Movants challenge [the class representative's] adequacy, the Court notes that there is nothing in the record demonstrating that he fails to satisfy the test for adequacy of representation by a class representative; namely, that he be part of the class he seeks to represent and suffer the same injury as the class members. Indeed, the District Judge has previously found that [the class representative] has and will fully and adequately represent the absent members of the class.

225 F.R.D. at 623 n.5 (internal citations omitted). *See also Jaffe*, 2008 U.S. Dist. LEXIS 12208, at **7-8 (rejecting objector's request to depose class representative).

Likewise here, there is nothing to indicate that Ms. Tonacchio is not a part of the Class she seeks to represent and has suffered the same injury as members of those Class. To the

contrary, the information submitted to the Court indicates that she is both adequate and typical. *See* Affidavit of Muriel Tonacchio in Support of Plaintiffs' Motion to Add Estate of Wilma Mort as Class 1 Representative for Track 2 Settlement, Dkt. No. 5409-2.  Specifically, before passing away in September 2003, Ms. Tonacchio's mother had cancer and, in trying to treat that disease, was administered chemotherapy in a clinic run by the Weirton Medical Center over a period of two years.  *Id.* ¶ 2.  During the period that Ms. Tonacchio's mother was administered chemotherapy, she was enrolled in Medicare Part B.  *Id.* ¶ 3.  Although Ms. Tonacchio's mother had supplemental insurance, that insurance refused to cover some portions of her mother's drugs, including $42.44 of her mother's purchases of Anzemet, a Class Drug.  *Id.*  Ms. Tonacchio attached billing statements that support her Affidavit.  *See* Ex. A to Affidavit.  After being provided information about Plaintiffs' settlement with the Track 2 Defendants, Ms. Tonacchio agreed to serve as a class representative for Class 1.  *Id.* ¶ 5.  Her Affidavit states that she understands the duties of being a class representative and is willing to fulfill those duties.  *Id.*  Thus, having provided sufficient information to support her adequacy as a class representative, her deposition should not be permitted.

**C.     Haviland Has Been Prohibited From Seeking Similar Discovery Before**

Haviland has been similarly prohibited from seeking such discovery in other cases.  In *Lupron*, Haviland's clients, who had been granted leave to intervene in the MDL, served interrogatories and document requests on the MDL parties and various health plans.  They also noticed the depositions of and/or served subpoenas for appearance at deposition on ten individuals and entities, including the MDL class representatives and counsel for the MDL parties, including Tom Sobol, the object of Haviland's attack here.  *Id.* at \*\*4-5.  Because the court found that Haviland's clients had offered no "evidence" of collusion (*id.* at \*9) in the settlement negotiations, the court quashed those subpoenas and entered a protective order on the

9

written discovery.  In so holding, the court found that "Intervenors have failed to seek leave of court or to specify why these depositions are necessary to the court's adjudication of the fairness of the settlement." *Id.* at *11.

Similarly, in the *In re Bridgeport Fire Litigation*, pending before Judge Steven T. O'Neill in the Court of Common Pleas of Montgomery County, Pennsylvania, Haviland likewise attempted to serve subpoenas on parties to the litigation, as well as the personal counsel for one of the defendants in the case, in the middle of trial.  *See* Opinion, CCP Master File No. 05-20924 (Feb. 27, 2009), Ex. C to Connolly Decl., at 19.  The court quashed those subpoenas for three reasons.  First, the court held that it was improper to serve subpoenas on parties to the litigation.  Second, the court held that the subpoenas were improper because Haviland was not class counsel and represented Appellants "in a personal capacity only."  *Id.*  Third, the court held that the subpoenas were improper because they sought details regarding settlement negotiations and the drafting of the settlement agreement in the case.  *Id.*  The court found that:

> Mr. Haviland appears to have been trying to seek this information in support of a 'wild goose chase' to prove a self-created theory that the Settlement Agreement was a product of collusion, a theory that has absolutely no basis in fact.  Mr. Haviland had no independent basis to support such an outrageous and manufactured allegation.

*Id.* at 19-20.  The court therefore concluded that:

> In this instance, the subpoenas Mr. Haviland sought to issue represented yet another example of his improper interference in the class action proceedings.  He had no right or basis to demand documents from the various parties and non-parties. Mr. Haviland has continuously operated to delay and disrupt these proceedings and aggravate his former employer law firm.  This Court properly denied the subpoenas that were designed to achieve such improper purposes.

*Id.* at 20.

Likewise here, Haviland cannot establish that Ms. Tonacchio's deposition will aid this Court's determination of the fairness of the Track 2 settlement.  This Court has already given Class Plaintiffs leave to add her as a proposed class representative and has determined, on a preliminary basis, that Ms. Tonacchio is an adequate representative for the Class.  *See* Doc. No. 5426 ¶ 4.  There is nothing further Haviland can add to this equation.  He should not be permitted to harass this consumer Class member.

### III.   CONCLUSION

The discovery Haviland seeks is nothing more than a fishing expedition designed to harass and embarrass Class Counsel, at the expense of a consumer Class member. Ms. Tonacchio's deposition will not assist this Court in evaluating the fairness of the Track 2 settlement; therefore, it should be prohibited.

DATED:  March 27, 2009                By:  /s/ Jennifer Fountain Connolly
                                           Thomas M. Sobol (BBO#471770)
                                           Edward Notargiacomo (BBO#567636)
                                           Hagens Berman Sobol Shapiro LLP
                                           One Main Street, 4th Floor
                                           Cambridge, MA  02142
                                           Telephone: (617) 482-3700
                                           Facsimile: (617) 482-3003

                                           *Liaison Counsel*

                                           Steve W. Berman
                                           Sean R. Matt
                                           Hagens Berman Sobol Shapiro LLP
                                           1301 Fifth Avenue, Suite 2900
                                           Seattle, WA  98101
                                           Telephone: (206) 623-7292
                                           Facsimile: (206) 623-0594

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

*Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE**

Docket No. MDL 1456

I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on March 27, 2009, I caused copies of ***Class Plaintiffs' Memorandum in Support of Their Motion for Protective Order With Regard to Muriel Tonacchio Deposition*** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/ Jennifer Fountain Connolly
Jennifer Fountain Connolly