# Exhibit C

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

IN RE: BRIDGEPORT FIRE LITIGATION     :     MASTER FILE NO. 05-20924

## ORDER

AND NOW, this __27__ day of __February__, 2009, this Court having

issued an Opinion pursuant to Pa.R.A.P. 1925(a) with respect to several appeals filed by The

Haviland Law Firm to the Superior Court of Pennsylvania, and this Court having served a copy

of said Opinion on The Haviland Law Firm, it is hereby **ORDERED** and **DECREED** that The

Haviland Law Firm shall serve a copy of the 1925(a) Opinion and of this Order on all counsel of

record and file with the Montgomery County Prothonotary a certificate of service demonstrating

compliance with this directive.

BY THE COURT:

_____
STEVEN T. O'NEILL      J.

Copies of this Order mailed on _2/27/69_
to the following:
Shanin Specter, Esquire
Donald E. Haviland, Jr., Esquire
Prothonotary

_____
Secretary

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

| IN RE: BRIDGEPORT FIRE LITIGATION | : | **Consolidated:** | |
|---|---|---|---|
| | : | 2917 EDA 2008 | 2922 EDA 2008 |
| | : | 2918 EDA 2008 | 2923 EDA 2008 |
| | : | 2919 EDA 2008 | 2924 EDA 2008 |
| | : | 2920 EDA 2008 | 2926 EDA 2008 |
| | : | 2921 EDA 2008 | |
| | : | | |
| | : | CCP Master File No. 05-20924 | |

## OPINION

**O'NEILL, J.**                                                                 **FEBRUARY 27, 2009**

Certain Class Plaintiffs, Professional Flooring Co., Inc.; Renu Electronics, Inc.; Rose

Line, Inc.; and Limerick Carpet & Flooring, Inc. ("Appellants"), have filed nine (9) appeals with

respect to this class action litigation. The appeals are docketed as set forth above. On December

23, 2008, the Superior Court directed that the appeals be consolidated. This Opinion pursuant to

Pa.R.A.P. 1925(a) will address the issues raised by all of the above referenced appeals.

Specifically, Appellants are appealing the following:

1.  This Court's Order dated November 16, 2006, striking the Praecipe to Reinstate Complaint as to Defendant, Montgomery County Industrial Development Authority.

2.  This Court's Order dated January 3, 2008, granting summary judgment in favor of Defendant, C.J. Robsinson Co.

3.  This Court's Order dated January 3, 2008, granting summary judgment in favor of Defendant, Scatton Heating & Cooling.

4.  This Court's Order dated January 3, 2008, granting summary judgment in favor of Defendant, Cadet Manufacturing Co.

5.  This Court's Order dated January 3, 2008, granting summary judgment in favor of Defendant, Alpha Electric.

6.  This Court's Order dated January 3, 2008, granting summary judgment in favor of Defendant, Shihadeh Carpet.

7.  This Court's Order dated January 3, 2008, granting summary judgment in favor

of Defendant, Pennsylvania-American Water Co.

8.  This Court's Order dated July 10, 2008, approving the Settlement Agreement between Class Plaintiffs and Settling Defendants.

9.  This Court's Order dated August 29, 2008, approving Class Counsel's Motion for Approval of Attorneys' Fees and Reimbursement of Expenses.

For the reasons set forth below, the above referenced Orders should be affirmed.

## FACTS AND PROCEDURAL HISTORY

### A.    Background

This litigation arises out of a fire that occurred on or about May 15, 2001 at the Continental Business Center in the Borough of Bridgeport. Numerous separate actions were filed on behalf of entities that lost personal property or suffered other damage as a result of the fire, the first of which was filed on May 21, 2001. On April 14, 2003, this Court certified the litigation as a Class Action, in which Class Members are the entities that suffered property damage as a result of the fire. The Court appointed the law firms of Kline & Specter, P.C. ("Kline & Specter") and High, Swartz, Roberts & Seidel, LLP ("High Swartz") to serve as Class Counsel. Over thirty (30) parties were originally named as Defendants.

Over the next several years, extensive discovery occurred, during the course of which over one hundred (100) depositions were taken. After the entry of six (6) Case Management Orders, trial was ultimately scheduled to begin on February 4, 2008. On January 3, 2008, a month prior to the scheduled start date of trial, this Court granted Motions for Summary Judgment filed by the following Defendants, dismissing them from the litigation: Alpha Electric; Cadet Manufacturing; C.J. Robinson Co.; Pennsylvania-American Water Co.; Scatton Heating & Cooling; and Shihadeh Carpet. The remaining seventeen (17) Defendants proceeded to trial.[1]

---

[1] The Defendants remaining for trial were: ARB Breadcrumbs, Arkwright Boiler, Richard Blahosky, the Bushar Defendants, the Challenger Defendants, Durr Marketing, Energy Tech Systems, Erie Insurance Group, George, Inc.,

A cumulative one hundred seven (107) motions in limine were filed prior to trial by the remaining parties, twenty-four (24) of which were filed by Class Counsel on behalf of Class Plaintiffs. The majority of the remaining eighty-three (83) were filed by individual Defendants against Class Plaintiffs. Because of the wealth of pretrial matters to be argued before this Court, an extended hearing on same began on February 4, 2008 and continued virtually uninterrupted for nearly a month.

Contemporaneously with these pretrial matters, Class Counsel was engaging in lengthy settlement discussions with various Defendants and this Court. On February 19, 2008, weeks after trial had been scheduled to commence in this matter, Class Plaintiffs entered into a Partial Settlement Agreement with fifteen (15) Defendants in this case for the sum of thirty million dollars ($30,000,000.00).[2] The Partial Settlement Agreement was the result of substantial time and effort put forth by all parties involved.

In March, Class Plaintiffs proceeded to trial against the remaining two (2) Defendants: the Challenger Defendants and Universal Electrical Services Company.[3] Several days into the Class's case-in-chief, Class Counsel, on behalf of Class Plaintiffs, settled with the Challenger Defendants for the sum of four million dollars ($4,000,000.00). This settlement with the Challenger Defendants was incorporated into the initial Settlement Agreement. On April 8, 2008, this Court *preliminarily* approved the Settlement Agreement and set a date for a final Fairness Hearing.

For several weeks, the trial continued against the sole remaining Defendant, Universal

---

MCC Warehousing, Panther Products, Penncora Productions, Pittsburgh Bakery, Royal Bank of Pennsylvania, Sweetzels Cookies, Universal Electrical Services Co., and Valley Forge Candle Co.

[2] These fourteen (14) Settling Defendants were: ARB Breadcrumbs, Arkwright Boiler, Richard Blahosky, the Bushar Defendants, Durr Marketing, Energy Tech Systems, Erie Insurance Group, George, Inc., MCC Warehousing, Panther Products, Penncora Productions, Pittsburgh Bakery, Royal Bank of Pennsylvania, Sweetzels Cookies, and Valley Forge Candle Co.

[3] Eight of the "Settling Defendants" remained at trial, however, because the Challenger Defendants and Universal Electrical were proceeding with cross claims against them.

Electrical. On April 24, 2008, at the end of trial, while the jury was deliberating, Class Plaintiffs settled with Universal Electrical for the sum of one million dollars ($1,000,000.00). This settlement with Universal Electrical was incorporated into the Settlement Agreement with the other Settling Defendants. A proposed global settlement thus had been reached in favor of the Class in the amount of thirty-five million dollars ($35,000,000.00).

Notice of the Settlement was distributed by Class Counsel, and a Fairness Hearing occurred on June 23, 2008, in which any and all interested parties were permitted to speak, including those who had raised objections in advance thereof. On July 8, 2008, this Court approved the settlement in the amount of thirty-five million dollars ($35,000,000.00), appointed a claims' administrator, and approved the proposed claims administration form. On August 29, 2008, this Court reviewed and approved Class Counsel's Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, awarding attorneys' fees in the amount of one-third (1/3) of the Settlement Fund, or $11,666,666.66, and expenses incurred in prosecuting the class action in the amount of $1,266,800.67.

**B.    Mr. Haviland and Certain Class Plaintiffs**

The instant appeals must be viewed in context with the conflict that occurred between certain counsel simultaneously with the pendency of the litigation. As stated previously, the class action was created as a result of several separate actions filed by parties allegedly suffering losses in the fire. The first distinct action was instituted on May 21, 2001 by Appellants along with other Plaintiffs.[4] This first Complaint was filed by attorneys of the law firm Levin, Fishbein, Sedran & Berman, including Donald E. Haviland, Jr., Esquire ("Mr Haviland"). Less than six (6) months later, on November 8, 2001, though, Mr. Haviland withdrew his appearance with the Levin Fishbein firm and entered his appearance with Kline & Specter, P.C. Specifically

---

[4] This action was docketed in Montgomery County as 2001-10504.

4

at the time of this Court's appointment of Class Counsel on April 14, 2003, Mr. Haviland was an associate with Kline & Specter. Mr. Haviland would remain an associate with Kline & Specter until either August or September 2006, when he gave notice to Kline & Specter of his intention to leave the firm. He left thereafter on September 6, 2006 to become an attorney with a new law firm, known as The Haviland Law Firm.[5]

The departure of Mr. Haviland from Kline & Specter created a schism, with Mr. Haviland now claiming to be the "rightful" Class Counsel. On September 6, 2006, the day of his departure, Mr. Haviland forwarded a correspondence to various Class Representatives in this litigation, stating that he had formed The Haviland Law Firm and seeking Class Representatives to make a decision on the election of Class Counsel in this matter: Kline & Specter or The Haviland Law Firm. On September 7, 2006, Kline & Specter filed a Petition to Bar Mr. Haviland from Communicating with the Class, and a hearing was scheduled before this Court.

On September 8, 2006, the hearing on the Petition was held before the Court. On September 11, 2006, this Court issued an Order barring Mr. Haviland from soliciting Class Members and seeking from them an election of Class Counsel. On October 10, 2006, Mr. Haviland filed a Notice of Appeal of this Collateral Order to the Superior Court.

Meanwhile, on or about September 13, 2006, Mr. Haviland filed with the Court a Petition for Appointment as Class Counsel. Also on that date, Mr. Haviland filed a Praecipe for Change of Entry of Appearance for Class Representatives, Professional Flooring Co., Inc., Limerick Carpet & Flooring, Inc., Rose Line, Inc., Salmons Industries, Inc. a/t/a Millie Switch and Renu Electronics. Class Plaintiffs filed a timely response to Mr. Haviland's Petition, as well as a Motion to Strike Mr. Haviland's "Praecipe for Change of Entry of Appearance."

---

[5] The actual circumstances surrounding Mr. Haviland's departure remain in dispute. Mr. Haviland alleges that he voluntarily left. Kline & Specter contends that he was fired for cause.

5

Thereafter, on November 17, 2006, the Court commenced an evidentiary hearing with regard to Mr. Haviland's Petition for Appointment as Class Counsel. Due to the extensive nature of the Petition and this class action litigation, the Evidentiary Hearing continued on for three additional days of testimony and evidence.

Immediately prior to the fifth hearing day, on December 13, 2006, Mr. Haviland voluntarily filed a Praecipe to Withdraw his Petition for Appointment as Counsel for the Class. By way of Order dated December 19, 2006, the undersigned directed that the Petition be withdrawn, and Kline & Specter thus remained Class Counsel. The Court deferred ruling upon the Petition to Strike Mr. Haviland's Appearance, as Mr. Haviland was permitted to represent the named [Certain Class] Plaintiffs as *personal* counsel. With respect to the class action, Certain Class Plaintiffs would continue to be represented by the appointed Class Counsel, Kline & Specter and High Swartz. On April 29, 2007, this Court filed an Opinion pursuant to Pa.R.A.P. 1925(a) with regard to Mr. Haviland's Notice of Appeal (filed October 10, 2006) of this Court's September 11, 2006 Order barring solicitation with Class Members about their preference for Class Counsel, noting that the appeal was now moot because Mr. Haviland had withdrawn his Petition for Appointment as Class Counsel.

Notwithstanding Mr. Haviland's voluntary withdrawal of his Petition for Appointment as Class Counsel, Mr. Haviland continued from this point forward to make filings *with respect to the class action* on behalf of his personal clients. This Court disregarded or denied these filings made by Mr. Haviland, which were made outside of his scope as personal counsel for his clients and were not made by Class Counsel. It is the Court who must make the determination as to which law firm or firms are the *sole* firms to make filings on behalf of the Class. See Pa.R.C.P. 1709 and 1713.

6

Mr. Haviland's interference with the class action continued through the scheduled date of trial. On February 14, 2008, notwithstanding this Court's position that the pending appeal was now moot, the Superior Court entered an Order vacating this Court's September 11, 2006 Order and remanding "for entry of a more specific order that explicitly states the limitations on contact that the court obviously intended." On February 21, 2008, three weeks after commencement of trial and during the ongoing hearing on pretrial matters, Mr. Haviland filed with the Court, and served on all counsel, a document titled "Notice of Issuance of Communications with Members of the Class," in which Mr. Haviland sought to solicit communications from Class Members concerning their rights with respect to the class action.

On February 22, 2008, Class Counsel, Kline & Specter, filed an "Emergency Application to Temporarily Restrain Mr. Haviland and the Haviland Law Firm from Communicating with the Entire Class without Prior Approval of the Court." A hearing on the Emergency Application was held the morning of the next business day, Monday, February 25, 2008.

The February 25, 2008 hearing proceeded through five (5) more days, effectively stalling the ongoing jury trial in the underlying litigation. During the hearing, Class Counsel filed a "Motion to Bar Mr. Haviland and the Haviland Law Firm from Using Any Lists of Class Members' Names and Addresses That Were Unlawfully Acquired." At the conclusion of the hearing, this Court barred Mr. Haviland from communicating with any Class Member other than those he represents in a personal capacity, specifically Certain Class Plaintiffs,[6] Professional Flooring Co., Inc., Limerick Carpet & Flooring, Inc., Rose Line, Inc., and Renu Electronics, Inc. (Appellants, herein).

Mr. Haviland continued to make numerous other filings on behalf of Certain Class Plaintiffs throughout the rest of the trial and thereafter. In addition, he has filed several

---

[6] The coinage of the designation "Certain Class Plaintiffs" was originally made by Mr. Haviland.

contemporaneous appeals to the Superior Court purportedly on behalf of Certain Class Plaintiffs

of various Orders by this Court, specifically: (a) the six (6) Orders dated January 3, 2008,

granting various Defendants' Motions for Summary Judgment; (b) the Order dated July 10,

2008, approving the Settlement Agreement between Class Plaintiffs and Settling Defendants; and

(c) the Order dated August 29, 2008, granting Class Counsel's Motion for Approval of

Attorneys' Fees and Reimbursement of Expenses; and (d) the Order dated November 16, 2006,

striking Appellants' Praecipe to Reinstate Complaint as to Defendant Montgomery County

Industrial Development Authority.

## ISSUES

Appellants raise the following allegations of error against this Court:

I.      Motions for Summary Judgment

      a.     Whether this Court erred in granting the Motions for Summary Judgment of Defendants, Alpha Electric; Cadet Manufacturing; C.J. Robinson Co.; Pennsylvania-American Water Co.; Scatton Heating & Cooling; and Shihadeh Carpet?

II.     The Settlement Agreement

      a.     Whether the Trial Court erred in approving the Settlement over the objections of Appellants without following the requisites of Pa.R.C.P. 1701, *et seq.?*

      b.     Whether the Trial Court erred in approving a "classwide settlement" with and release of Defendant, Pittsburgh Bakery, against whom the claims of the Class had been dismissed by Class Counsel, with prejudice, prior to the Settlement?

      c.     Whether the Trial Court erred in approving a Class Notice that contained material misrepresentations and omissions about the Settlement terms and that was not sent to all Class Members who could be identified with reasonable effort?

      d.     Whether the Trial Court erred in denying Appellants' discovery into issues of Class Counsel conflicts and collusion with Defendants in relation to the Settlement?

III.   Approval of Attorneys' Fees

    a.   Whether the Trial Court erred in approving Class Counsel's Motion for Approval of Attorneys' Fees and Reimbursement of Expenses by failing to follow the requisites of Pa.R.C.P. 1716?

IV.   Montgomery County Industrial Development Authority

    a.   Whether the Trial Court erred in striking the Praecipe to Reinstate Complaint against Defendant, Montgomery County Industrial Development Authority?

## DISCUSSION

I.   **This Court properly granted the Motions for Summary Judgment of Defendants, Alpha Electric; Cadet Manufacturing; C.J. Robinson Co.; Pennsylvania-American Water Co.; Scatton Heating & Cooling; and Shihadeh Carpet.**

Six of Appellants' appeals allege that this Court erred in granting the Motions for Summary Judgment of Defendants, Alpha Electric; Cadet Manufacturing; C.J. Robinson Co.; Pennsylvania-American Water Co.; Scatton Heating & Cooling; and Shihadeh Carpet (the "Dismissed Defendants"). The Court granted the Motions on January 3, 2008, approximately one month prior to the scheduled trial commencement date.

    A.   **Mr. Haviland does not have standing to appeal the Orders granting summary judgment with regard to the Dismissed Defendants.**

As has been discussed *supra,* this Court is of the position that Mr. Haviland, as Appellants' personal counsel, does not have standing to appeal the January 3, 2008 Orders granting summary judgment in favor of the Dismissed Defendants. He is *not* counsel for the Class. Class Counsel has always been the firms of Kline & Specter, P.C. and High Swartz, LLP. Mr. Haviland left the firm of Kline & Specter on September 6, 2006. Furthermore, he *voluntarily withdrew* his Petition for Appointment as Class Counsel. He does *not* represent the Class. He does *not* represent Appellants as Members of the Class. He represents them in their personal capacity only. Appellants, as Class Members, have, at all times, been competently

9

represented by the two Class Counsel firms.

The Orders granting summary judgment disposed of the *Class's* claims against the Dismissed Defendants in favor of the Dismissed Defendants. As such, only the Class as a whole, represented by Class Counsel, has standing to appeal.[7]  Mr. Haviland, representing specific entities who also happen to be Members of the Class, does not.

**B.     Notwithstanding Mr. Haviland's lack of standing, this Court properly granted summary judgment in favor of the Dismissed Defendants.**

Class Plaintiffs did not oppose the entry of summary judgment in favor of the Dismissed Defendants. They did so for good reason. Pursuant to Case Management Order No. 6, dated April 12, 2007, all discovery, including the production of expert reports, closed on October 1, 2007. No party, Class Plaintiffs or otherwise, produced an expert report even hinting at liability of any of the Dismissed Defendants. In a case such as this, an expert report is essential for a factfinder to establish liability due to a fire. See Swartz v. General Elec. Co., 474 A.2d 1172 (Pa. Super. 1984); see also Marrazzo v. Scranton Nehl Bottling Co., 223 A.2d 17 (Pa. 1966).

A party may move for summary judgment "if, after the completion of discovery relevant to the motion, *including the production of expert reports,* an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(b) (emphasis added). "Where a plaintiff fails to produce an expert report in a situation requiring one, the court should grant the defendant's motion for summary judgment." Masgal v. Franklin, 787 A.2d 982 (Pa. Super. 2001). Class Plaintiffs would have been unable to meet their burden at trial to succeed on their claims against the Dismissed Defendants because they had failed to produce any expert reports establishing liability on their behalf. Indeed, by filing

---

[7] However, as set forth in the next subsection, the Class did not object to the entry of summary judgment in favor of the Dismissed Defendants.

responses to Dismissed Defendants' Motions for Summary Judgment stating that the Class did not oppose the entry of same, Class Plaintiffs effectively admitted that they could not meet their burden under Rule 1035.2(b). Thus, this Court properly granted summary judgment.

## II.     This Court properly approved the Settlement Agreement made between Class Counsel and Settling Defendants.

### A.     Class Notice

Appellants argue that this Court improperly approved the Settlement in violation of Pa.R.C.P. 1701, *et seq.* The specific Rule concerning settlement of class actions is Rule 1714, specifically subsections (a) and (c), which read as follows:

> (a) No class action shall be compromised, settled or continued without the approval of court after hearing.
>
> . . .
>
> (c) If an action has been certified as a class action, notice of the proposed compromise, settlement or discontinuance shall be given to all members of the class in such manner as the court may direct.

See also Brophy v. Philadelphia Gas Works, et al., 921 A.2d. 80 (Pa. Cmwlth. 2007).

Appellants' argument is meritless because this Court strictly followed the requirements of Rule 1714. After the Court preliminarily approved the Settlement, Class Counsel provided written notice to all three hundred twenty-one (321) known Class Members. Additionally, the Settlement was featured in the local news, and stories ran in major publications such as The Philadelphia Inquirer and were broadcast on KYW News Radio. Kline & Specter, P.C. also posted information about the Settlement on its firm's website. Specifically, notice of a settlement hearing by publication both in print media and on the internet is sufficient constructive notice as to unknown entity that may be impacted by a class action settlement agreement. See Prince George Center, Inc. v. U.S. Gypsum Co., 704 A.2d 141 (Pa. Super. 1997). It thus stands to reason that all interested parties who had been injured by the Bridgeport fire knew or should have known of the proposed Settlement.

11

Despite Appellants' contention to the contrary, the Class Notice was detailed and thorough; it did not contain any material omissions or misrepresentations, but rather conveyed to the Class Members an accurate representation of the proposed Settlement. The detailed five-page Settlement Notice was prepared by Class Counsel and reviewed and ratified by this Court on April 24, 2008, sixty (60) days prior to the Fairness Hearing. The statements contained in the Notice are factual and correct and nothing material was omitted. The Notice included several sections:

A.  A heading, in bold and capitalized text, informing anyone who has lost property or income in the May 15, 2001 fire that destroyed the Continental Business Center, that his or her rights may be affected by the proposed Settlement.

B.  An introductory section, identifying the parties to the Settlement, the amount of the proposed Settlement, the date, location and purpose of the Fairness Hearing, and the deadline for objections to the proposed Settlement.

C.  A thorough section detailing the underlying lawsuit.

D.  A section setting forth who is and is not in the Certified Class.

E.  A thorough section setting forth the terms of the proposed Settlement.

F.  A detailed section discussing the Fairness Hearing.

G.  Class Counsel's phone number for those who seek additional information, questions, or inquiries as to whether they are included in the Class.

Notice of a proposed settlement agreement in a class action must present a fair recital of the subject matter and proposed terms and inform the class members of an opportunity to be heard, but it "need not provide a complete source of settlement information, and class members are not expected to rely upon the notices as such." Fischer v. Madway, 485 A.2d 809, 811 (Pa. Super. 1984). In fact, it "may consist of a very general description of the proposed settlement, including a summary of the monetary or other benefits that the class would receive and an estimation of attorneys' fees and other expenses." Id. Therefore, the sufficiency of the Fairness

12

Hearing Notice sent by Class Counsel in the instant action went above and beyond the required notice adequacy.

**B.      The Settlement Agreement**

"Settlements are favored in class action lawsuits and that the standard of review of the trial court's acceptance or rejection of a settlement proposal is abuse of discretion." Dauphin Deposit Bank and Trust Co. v. Hess, 727 A.2d 1076 (Pa. 1999). There are several criteria a trial court should consider in determining whether a class action settlement is fair and reasonable and adequately protects the members of the class:

1.      The risks of establishing liability and damages;

2.      The range of reasonableness of the settlement in the light of the best possible recovery;

3.      The range of reasonableness of the settlement in light of all the attendant risks of litigation;

4.      The complexity, expense and likely duration of litigation;

5.      The stage of the proceedings and the amount of discovery completed;

6.      The recommendations of competent counsel; and

7.      The reaction of the class to the settlement.

Buchanan v. Century Federal Savings & Loan Ass'n., 393 A.2d 704 (Pa. Super. 1978).

As was stated *surpa*, the Settlement in this case was created over a period of nearly three (3) months. Discussions began immediately following the commencement date of trial, February 4, 2008. These discussions occurred among the Court, Class Counsel, and Counsel for the individual Defendants.[8]  After more than a week of negotiations which had not produced any meaningful result, some Defendants joined to negotiate with Class Counsel as a group. Again, this Court facilitated discussions. While Class Counsel remained very stringent in its high

---

[8] The discussions were occurring contemporaneously with the numerous other pretrial matters.

13

settlement demand, over the next week, the range between the settlement offers began to shrink as the number of Defendants joining the prospective settlement "group" began to increase. On February 19, 2008, a settlement in the amount of $30 million had been reached between the Class and all Defendants still in the case except for the Challenger Defendants and Universal Electrical. Even as trial proceeded against these two remaining Defendants, further settlement discussions among the Court, Class Counsel, and the respective Counsel for the Challenger Defendants and Universal Electrical continued unabated. In early March, after the jury trial already had begun, Class Counsel reached a settlement with the Challenger Defendants in the amount of $4 million. As trial continued against the remaining Defendant, Universal Electrical,[9] settlement discussions among this Court, Class Counsel and Counsel for Universal Electrical carried on. Finally, on April 24, 2008, over two and a half months after the commencement of trial, and while the jury was deliberating, settlement discussions concluded, and the Class settled with Universal Electrical for $1 million.

The $35 million Global Settlement in the instant case is unique in that its ultimate conclusion occurred at the last possible moment of the litigation, during the jury deliberations after the close of the evidence and argument. As such, the Court's predictions with regard many of the Buchanan factors were based, in part, on what actually occurred in this case.

In this class action, the Class alleged that the fire in the Continental Business Center was sparked by a malfunctioning circuit breaker panel box in unit C-158. The liability of numerous Defendants was premised on this allegedly faulty panel box, including: (a) the Challenger Defendants, who manufactured the panel box; (b) Universal Electrical Services Co., who remediated flood damage caused by Hurricane Floyd in September 1999 allegedly in and around

---

[9] It should be noted that the majority of the Settling Defendants were still in the case and present in the courtroom due to Universal's cross claims against them.

14

unit C-158; (c) Erie Insurance Group and (d) Arkwright Insurance, who were, respectively, the primary and secondary insurers supervising the flood remediation; (e) Sweetzels Cookies, (f) ARB Breadcrumbs and (g) Valley Forge Candles, who were the tenants of C-158 at the time of the 1999 flood; (h) Panther Products, the tenant of C-158 at the time of the fire; and (i) Penncora Productions, who was also storing equipment in C-158 at the time of the fire.

During jury deliberations but prior to a final settlement being reached, the jury returned with a question for the Court as to how to proceed if they were to find no negligence on the part of the sole remaining Defendant at the time, Universal Electrical. The case settled almost immediately thereafter. After trial it was discovered that the jury had been stuck on whether Universal Electrical had been negligent in flood remediation. However, they *had already found* that such negligence was *not a factual cause of the fire.* This finding suggests that the jury did not believe there was sufficient evidence linking the damage from 1999 Hurricane Floyd flood to the cause of the fire from the C-158 panel box. This finding of lack of causation should have ended their deliberations and allowed them to return with a verdict in favor of Universal Electrical. This oversight by the jury in continuing to deliberate on whether Universal Electrical was negligent after they had already found no factual causation, allowed the Class to settle with Universal Electrical and a global settlement was then reached.

While, of course, the aforementioned "finding" by the jury is not part of the record because the jury never finished its deliberations and returned with a verdict, this "inside knowledge" does give the court perspective into the real risks of liability that were at stake in this litigation. If the Settlement Agreement were to be deemed invalid, and the case retried against all Defendants, a similar jury may also find insufficient evidence supporting a finding that the fire began in C-158's panel box. If this were the situation, then the Challenger

15

Defendants; Universal Electrical; Erie Insurance Group; Arkwright Insurance; Sweetzels Cookies; ARB Breadcrumbs; Valley Forge Candle Co.; Panther Products, and Penncora Productions would be found to be not liable for the fire. This would severely handicap the Class's recovery of damages.

The aforementioned "C-158" Defendants contributed substantially to the $35,000,000.00 global Settlement in the following amounts:

| | |
|---|---|
| Challenger Defendants | $4,000,000.00 |
| Universal Electrical | $1,000,000.00 |
| Erie Insurance Group | $4,000,000.00 |
| Arkwright Insurance | $3,800,000.00 |
| Sweetzels & ARB | $4,000,000.00 |
| Valley Forge Candles | $100,000.00 |
| Panther Products | $1,380,000.00 |
| Penncora Productions | $2,000,000.00 |
| **TOTAL** | **$20,280,000.00** |

If this Court had disapproved this Settlement Agreement, it would place a very real risk on the Class of being unable to recover against the above C-158 Defendants, which would cost them $20,280,000.00, or 57.94% of the total $35,000,000.00 Settlement. By approving the Settlement, this Court was able to protect the interests of the Class against a real risk of substantial non-recovery.

Appellants also argue that the Court erred in approving the Settlement, in that Defendant, Pittsburgh Bakery Equipment Co., had contributed "only" $50,000.00 to same. What Appellants

fail to acknowledge is that the Class's case against Pittsburgh Bakery was woefully weak.[10]  The only piece of evidence connecting Pittsburgh Bakery to the underlying litigation is a one-page "invoice" identifying flood remediation work in unit C-158.  Pittsburgh Bakery, however, contended at all times that it *never* performed any remediation work in C-158 after the Hurricane Floyd flood.  Rather, they asserted that the one-page document was actually an "estimate" for work they could complete but had been mistakenly labeled as an invoice.  The Court ultimately denied Pittsburgh Bakery's Motion for Summary Judgment because, viewing the facts in the light most favorable to the Bushar Defendants as the opposing party, the Court found that a jury *could* find based on the allegedly incorrectly worded document that Pittsburgh Bakery had performed the said remediation work.  Nevertheless, had Pittsburgh Bakery put on a defense at trial, it is highly probable that they would have been able to successfully defend their claims.  The $50,000.00 they contributed to the Settlement can be viewed as nuisance expenses to keep them out of a prolonged trial.  Without any additional evidence presented by anyone, the likelihood of recovery against Pittsburgh Bakery, while possible, was extremely remote.[11]

With regard to the complexity, expense and likely duration of litigation, this also can be reasonably estimated by the Court, since this case went all the way through to the end of trial before it finally settled.  The trial had been scheduled to begin on February 4, 2008.  For approximately three weeks, pretrial motions, including over one hundred motions in limine were argued before the Court.  As has been discussed at length *supra,* during this time the Court also involved itself in countless hours of settlement negotiations.  Ultimately, all Defendants except for the Challenger Defendants and Universal Electrical settled with the Class.  A lengthy jury

---

[10] The Class ultimately did not oppose Pittsburgh Bakery's Motion for Summary Judgment.  The Motion instead was opposed by the Bushar Defendants.

[11] Furthermore, if the case were tried again and the jury were to find, as discussed *supra,* that the fire did not begin in the C-158 panel box, then no recovery could be had against Pittsburgh Bakery.

17

selection process immediately commenced, and trial proceeded on a full-time basis against the remaining two Defendants, with the Challenger Defendants settling in early March 2008 and Universal Electrical settling on April 24, 2008. All in all, the pretrial process and trial proper proceeded on a full-time basis for over two and a half months. The legal expense of just this portion of the litigation was enormous.

Numerous experts were retained and testified, including the Class's damages expert, David L. Hopkins. Other expert witnesses included experts in the fields of electricity and flood remediation. There were also multiple lay witnesses. In total, over one hundred (100) depositions had been taken during discovery. The numerous different theories of liability against each Defendant made the complexity of this litigation enormous.

The Settlement was a collaborative creation of weeks of ongoing negotiations. First Class Counsel negotiated with the Defendants individually. Eventually, several of the Defendants joined together to offer a group settlement. Originally, this amount was less than ten million dollars. Class Counsel continued a hard-line approach until they accepted an offer from all Defendants except Challenger and Universal for thirty million dollars. This is not a situation where counsel jumped on the first settlement offer that passed the gate. Class Counsel was meticulous in getting a settlement they felt was fair and just and in the best interest of the Class.

The most vocal of the objections against the Settlement were raised by Appellants herein, which this Court believes are at least partially fueled by Mr. Haviland's animosity to his former law firm. Other objections came from subrogated insurance carriers who wished to make claims against the Settlement Fund. During the Fairness Hearing, this Court directed Class Counsel to draft a form that subrogated insurance carriers could use to make such claims. Class Counsel consequently did so.

### C.    Appellants' subpoenas

On or about March 20, 2008, during the trial, in which Mr. Haviland was not participating, Mr. Haviland provided Notice of Intent to Serve Subpoenas Pursuant to Pa.R.C.P. 4009.21 on specific parties, including Sweetzels, ARB, Valley Forge Candle, Panther Products, Penncora Productions, Erie Insurance Group, Cadet Manufacturing, and the Bushar Defendants.[12]   Appellants sought to compel the production, at Mr. Haviland's office, of certain documents concerning legal and other expenses, in advance of the Fairness Hearing.  In April 24, 2008, the various parties filed Motions to Quash and/or for Protective Orders.  This Court reviewed the matter and issued Orders quashing the subpoenas on May 16, 2008.

The subpoenas were improper for various reasons.  First, the Settling Defendants are parties to this action.  A subpoena issued pursuant to Pa.R.C.P. 4009.21 is a method to obtain documents from *non-parties* only.  Furthermore, even if Appellants had issued a Notice to Attend and Produce pursuant to Pa.R.C.P. 234.3, this Rule would only allow production of documents *at the trial or hearing,* not at the private offices of counsel, which was what Mr. Haviland was seeking.

Secondly, and more importantly, Mr. Haviland is not counsel for the Class.  Mr. Haviland represents Appellants in their personal capacity only.  He does not represent them as part of a Class.  He does not represent a "party" to this litigation, and thus cannot utilize the vehicles provided by either Rule 4009.21 or Rule 234.3.

Finally, the subpoenas requested privileged information relating to the details of settlement negotiations and the drafting of the Settlement Agreement.  Mr. Haviland appears to have been trying to seek this information in support of a "wild goose chase" to prove a self-

---

[12] Mr. Haviland also mailed a Notice of Intent to Serve Subpoena to the office of the personal counsel for Defendant, Charles Bushar, the law firm of Powell, Trachtman, Logan, Carrle & Lombardo, P.C.. This firm is and was not counsel for the Bushar Defendants in the Bridgeport fire litigation, nor were they a party to this action.

19

created theory that the Settlement Agreement was a product of collusion, a theory that has absolutely no basis in fact. Mr. Haviland had no independent basis to support such an outrageous and manufactured allegation.

A court may quash a subpoena or grant a protective order to protect a person from unreasonable annoyance, embarrassment, oppression, burden or expense. See Pa.R.C.P. 234.4(b) and 4012. In this instance, the subpoenas Mr. Haviland sought to issue represented yet another example of his improper interference in the class action proceedings. He had no right or basis to demand documents from the various parties and non-parties. Mr. Haviland has continuously operated to delay and disrupt these proceedings and aggravate his former employer law firm. This Court properly denied the subpoenas that were designed to achieve such improper purposes.

**III.  This Court properly granted Class Counsel's Motion for Approval of Attorneys' Fees and Reimbursement of Expenses.**

On August 29, 2008, this Court approved Class Counsel's Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, awarding attorneys' fees in the amount of one-third (1/3) of the Settlement Fund, or $11,666,666.66, and expenses incurred in prosecuting the class action in the amount of $1,266,800.67.[13] Appellants argue that the Court erred under Pa.R.C.P. 1716 by: allowing fees in the amount of one-third the gross Settlement Fund; refusing to require submission of backup documentation and failing to ensure that all work and expenses were reasonably expended; and finding that Class Counsel's hourly rates charged were reasonable.

Rule 1716 identifies five factors a court should consider in cases where the court is authorized to fix the amount of counsel fees with respect to a class action:

(1) the time and effort reasonably expended by the attorney in the litigation;

---

[13] In doing so, this Court issued a detailed Order, complete with findings of fact and conclusions of law.

(2)  the quality of the services rendered;

(3)  the results achieved and benefits conferred upon the class or upon the public;

(4)  the magnitude, complexity and uniqueness of the litigation; and

(5)  whether the receipt of a fee was contingent on success.

Additionally, the Third Circuit, in Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d

Cir. 2000), identified seven factors:

(1) the size of the fund created and number of persons benefited;

(2) the presence or absence of substantial objections by members of the class;

(3) the skill and efficency of the attorneys involved;

(4) the complexity and duration of the litigation;

(5) the risk of nonpayment;

(6) the amount of time devoted to the case by class counsel; and

(7) awards in similar cases.

Class Counsel's involvement in this matter has been thorough and continuous, beginning from the time this litigation was consolidated as a class action and Class Counsel was appointed through the end of trial several years later.  Class Counsel participated in exhaustive discovery, including over one hundred (100) depositions, as well as copious pretrial motions, including the one hundred seven (107) motions in limine.  During the pretrial process before this Court that began on February 4, 2008, and through the final settlement with Universal Electrical in April, the Class was actively represented by several very capable and diligent attorneys from Kline & Specter, P.C. and High Swartz, LLC.

The attorneys for the Class demonstrated great skill in proceeding through the class action that was both thorough and as efficiently as possible given the complexity of the litigation. The great complexity of this action was pervasive in both the liability and damages spheres, with

21

experts being retained by Class Counsel for each. Due to the complexity of the litigation, Class
Counsel properly devoted substantial time to the case in order to adequately represent the Class's
interests. Class Counsel attorneys worked with great skill and devotion along with the equally
assiduous attorneys for Defendants in order to obtain a sizeable thirty-five million dollar
($35,000,000.00) Settlement Fund. The Fund was created as a result of several weeks of
ongoing negotiation.

Appellants, in their opposition to the Motion, contended that a contingency fee in the
amount of twenty-five percent (25%) would have been a more appropriate award. There is no
basis for such a reduced award. In finding that a contingency fee in the amount of thirty-three
and a third percent (33 1/3%) was reasonable, this Court examined this case alongside other class
actions in the Third Circuit. See In re: Automotive Refinishing Paint Antitrust Litigation, 2008
WL 63269 (E.D. Pa. 2008) (33 1/3% fee award from a $35 million settlement fund, exclusive of
costs); Bradburn Parent-Teacher Store, Inc. v. 3M, 513 F.Supp.2d 322 (E.D. Pa. 2003) (35% fee
award from a $39.75 million settlement fund); In re: Coral Corp., 293 F.Supp.2d 423 (E.D. Pa.
2001) (33 1/3% fee award from a $7 million settlement fund, exclusive of costs). Class Counsel
has done a commendable job with a very difficult and complex case. The amount of time
devoted to same was evident in their preparedness and thoroughness, much of which this Court
bore direct witness to on a full time basis for over two and half months straight. The award was
proper under both Pa.R.C.P. 1716 and the factors in Gunter, *supra.*

V.      **The Montgomery County Industrial Development Authority was properly
        dismissed as a Defendant in this litigation.**

Appellants' final appeal argues that this Court erred when struck Appellants' Praecipe to
Reinstate Complaint as to Defendant, Montgomery County Industrial Development Authority
("MCIDA"). MCIDA was originally a Defendant in this litigation and had filed Preliminary

22

Objections to the Class Plaintiffs' Complaint. On November 17, 2005, upon agreement of the parties, this Court entered an Order dismissing MCIDA from this litigation "without prejudice and subject to the additional condition that MCIDA has agreed to the suspension of any applicable statute of limitations that may affect any parties' rights to pursue claims against MCIDA until thirty (30) days after expert reports related to liability and any responses and replies thereto have been exchanged by the parties in this litigation."

On November 16, 2006, more than two (2) months *after* his departure from Class Counsel law firm, Kline & Specter, Mr. Haviland filed with the Prothonotary a document entitled "Praecipe to Reinstate Complaint as to Defendant Montgomery County Industrial Development Authority," the body of which read simply: "TO THE PROTHONOTARY: Pursuant to the Court's Agreed Order entered in this case, kindly reinstate Montgomery County Industrial Development Authority as a defendant in the above-captioned matter." Mr. Haviland attached to the Praecipe an unsigned copy of the above referenced November 17, 2005 Order. This Court struck the Praecipe on the same day it was filed.

This Court was correct in striking the Praecipe. Mr. Haviland at this time was no longer a member of the Kline & Specter law firm and thus was *not* Class Counsel. He did not represent any party to this litigation other than certain Class Members as personal counsel. Mr. Haviland had filed a Petition for Appointment as Class Counsel, which was scheduled for a hearing on November 17, 2006, the following day. As was discussed *supra,* after four days of hearings and immediately prior to the fifth hearing day, Mr. Haviland voluntarily withdrew his Petition. Mr. Haviland, since his departure from Kline & Specter in September 2006, was and is not counsel for the Class. He had no authority to file anything on behalf of the Class, including the Praecipe to Reinstate Complaint.

## **CONCLUSION**

Based upon the foregoing reasons, this Court respectfully requests that the Superior Court affirm the nine above referenced Court Orders.

BY THE COURT:

STEVEN T. O'NEILL                    J.

Copies mailed on _2/27/09_
to the following:
Shanin Specter, Esquire
Donald E. Haviland, Jr., Esquire
Prothonotary

Helen M Donahue
Secretary

24