## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | Civil Action No. 01-cv-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| TRACK 2 SETTLEMENT | |

### MEMORANDUM OF PRESCRIPTION ACCESS LITIGATION, COMMUNITY CATALYST AND HEALTH CARE FOR ALL IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENAS DUCES TECUM SERVED BY DON HAVILAND

On March 9, Don Haviland served three subpoenas duces tecum, on Prescription Access Litigation ("PAL"), Community Catalyst, and Health Care for All ("HCFA") (collectively "the Subpoenas"). Haviland served the Subpoenas as part of his opposition to the proposed settlement with the Track 2 Defendants. In that opposition, Haviland alleges, without a shred of evidentiary support, that Co-Lead Counsel filed cases in this action on behalf of those entities solely to secure *cy pres* funds for them.

Under well-established authority, objectors to class action settlements are only permitted to seek **limited** discovery if that discovery is likely to assist the Court in determining the fairness of the settlement. Because Haviland's conspiracy theory is unsupported speculation, the discovery he seeks from PAL, Community Catalyst and HCFA will not assist the Court in determining the fairness of the settlement. Rather, it will only further delay these proceedings and waste the valuable resources of the parties, this Court and the subpoena recipients responding to yet another one of Haviland's baseless fishing expeditions.

Haviland's Subpoenas should be quashed, or at a minimum limited. As written, the Subpoenas seek nearly every document PAL, Community Catalyst or HCFA have ever written.

Especially since Haviland has no support for his claims, and given that the record reflects Haviland's sole motivation in seeking such discovery to be animus towards Class Counsel, the Subpoenas should be quashed.

## I.      BACKGROUND

**A.      The Subpoenas**

Without seeking leave to do so, on March 9 Haviland served three subpoenas duces tecum.  The Subpoenas are summarized as follows.

### 1.      Prescription Access Litigation ("PAL")

Haviland served a subpoena on PAL ("PAL Subpoena").  *See* Ex. A to Declaration of Jennifer Fountain Connolly ("Connolly Decl.").  The PAL Subpoena seeks eleven categories of documents that collectively ask for nearly every document related to PAL's formation or its participation in any litigation during its history.  Roughly grouped, the PAL Subpoena seeks documents related to:

1)   <u>PAL's organization and formation</u> (Request Nos. 1 and 2).  These requests seek every document related to PAL's formation and association with the other two subpoena recipients.

2)   <u>PAL's involvement in litigation and receipt of *cy pres* funds</u> (Request Nos. 3-6, 9-11).  These requests seek all documents related to PAL's involvement in ***any*** litigation, all documents regarding PAL's involvement in this action, all documents related to PAL's administration of any *cy pres* funds, or any documents related to the "issue" of *cy pres* recovery generally.  Request No. 10 seeks all documents related to a communication from PAL's Associate Director regarding PAL's approach to filing drug pricing litigation.

3)   <u>PAL's relationship with Class Counsel</u>.  (Request Nos. 7 and 8)  These requests seek all documents related to PAL's affiliation with Class Counsel (their firms or various individual partners) as well as any payments (*i.e.,* contributions) received by PAL from Class Counsel.

### 2.    Community Catalyst

The subpoena served on Community Catalyst seeks virtually the same documents from Community Catalyst, except it does not seek documents related to Community Catalyst's involvement in *this* lawsuit (presumably because Community Catalyst has had no such involvement).  *See* Ex. B to Connolly Decl.

### 3.    Health Care For All ("HCFA")

The subpoena served on HCFA is likewise substantially similar to the PAL Subpoena, except that it does not seek drafts or other documents related to the confidential Hodin Memo. *See* Ex. C to Connolly Decl.

## B.    Haviland's Objection to the Track 2 Settlement

On March 16, 2009, one week after serving the Subpoenas, Haviland filed his 72-page Memorandum of Named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement.  *See* Doc. No. 5953.  On March 24, 2009, pursuant to this Court's March 23rd electronic order requiring Haviland to resubmit a revised memorandum of no greater than 30-pages, Haviland filed his Revised Memorandum of named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement.  *See* Doc. No. 5971 ("Opposition").

In his Opposition, Haviland alleged, for the first time in this litigation, that there has been a conspiracy between Class Counsel on one hand, and PAL, Community Catalyst and HCFA on the other hand, to ensure that consumer recoveries in this case were minimal in order to maximize *cy pres* recoveries, which Class Counsel allegedly promised to PAL and HCFA in return for their participation in this lawsuit.  Haviland claims that "Mr. Sobol was 'hand-picked' by PAL to bring this case because he 'shared PAL's mission' in class action cases – a mission which includes seeking an allocation of class action settlement funds for 'a separate *cy pres* fund

to be used for consumer benefits through increased advocacy for affordable health care.'"
Opposition at 2.  Then, with regard to the Track 2 Settlement in particular, Haviland alleges that
Class Counsel appointed PAL as consumer allocation counsel in order to minimize the recovery
for consumers, presumably so PAL could receive greater *cy pres* funds.

Haviland presents a distorted view of the history of this litigation designed to create the
picture that Class Counsel have not only studiously avoided adding consumers to this case,[1] but
have also made repeated misrepresentations to this Court regarding their ability to add
consumers.  *See* Opposition at 1-13.  Haviland then extends this alleged behavior into the
proposed Track 2 settlement, alleging that Class Counsel attempted to avoid the alleged effects
of this Court's prior rulings in order to ensure that association plaintiffs – which Class Counsel
purportedly control – are permitted to be Class 1 representatives for the settlement.  *See id.* at 13-
15.

Despite Haviland's admission that the stated goals of these organizations are, among
other things, to seek lower prices for consumers for prescription drugs, Haviland's view of the
history of this litigation is the basis for his claim that Co-Lead Counsel's representation of PAL
places them and their association clients in conflict with consumers.[2]  Indeed, relying on nothing
other than his version of history in addition to mostly ***publicly-available*** documents about PAL's
history and goals, Haviland constructs a conspiracy theory under which Co-Lead Counsel sought
to have associations appointed as class representatives in order to negotiate a "disappointing"
settlement for consumers that, presumably, would guarantee PAL *cy pres* funds that were

---

[1]  At a minimum Haviland must surely mean Class 1 consumers, since there are twenty (20)
Class 3 consumers in the FAMCC.  *See id.* ¶¶ 40-59 (revised version).

[2]  Again, since HCFA is a proposed representative for Class 1 of the settlement, Haviland
must surely mean, but does not say, Class 1 consumers.

allegedly promised by Mr. Sobol.  *See* Opposition at 21-22.  Haviland has not submitted any

evidence document in support of these outlandish claims.[3]

## II.     ARGUMENT

### A.     The Discovery Haviland Seeks Is Not "Limited" And Will Not Aid This Court's Evaluation of the Fairness of the Track 2 Settlement

As an initial matter, all the discovery Haviland seeks to support his Opposition to the

Track 2 settlement should be denied because it is not limited and will not aid this Court's

evaluation of the fairness of the settlement.  The Manual for Complex Litigation explains that:

> Objectors might seek intervention and discovery to demonstrate the inadequacy of the settlement.  ***Discovery should be minimal and conditioned upon a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel.***  A court should monitor postsettlement discovery by objectors and limit it to providing objectors with information central to the fairness of the proposed settlement.

*Id.* § 21.643 (4th ed. 2008) (emphasis added).

"Class members who object to a class action settlement do not have an absolute right to

discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that

which may assist it in determining the fairness and adequacy of the settlement."  *In re Lupron*

*Marketing & Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 4039, at *6 (D.

Mass. Mar. 16, 2005) (Stearns, J.) (citation omitted).  "The fundamental question is whether the

district judge has sufficient facts before [her] to intelligently approve or disapprove of the

settlement."  *Id.* (citation omitted).

For these reasons, the vast majority of courts have prohibited class action objectors from

seeking broad and expansive discovery such as the discovery Haviland seeks here.  *See, e.g.,*

---

[3]  Class Counsel will respond in full to Haviland's Objection on April 9.

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) (denying objector right to seek discovery from fellow objector who entered into settlement with class counsel after final approval and while appeal of final approval was pending); *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 12208, at **5-8 (N.D. Cal. Feb. 7, 2008) (denying objector's request for documents and request to depose class representative); *Epstein v. Wittig*, Case No. 03-4081-JAR, 2005 U.S. Dist. LEXIS 31078 (D. Kan. Dec. 2, 2005) (denying objector's request to conduct deposition of plaintiff's lead counsel, board members of the class representative, and denying objector's request for production of documents supporting plaintiffs' decision to grant settlement release); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2004) (denying objectors' request for "wide-ranging discovery" from class counsel and defendants); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24 (D.D.C. 2001) (largely rejecting objectors' request for discovery relating to damages analyses and settlement negotiations by class counsel, but allowing objectors limited discovery to identify persons who participated in settlement negotiations).

        In general, the factors that courts consider in determining whether discovery from an objector will assist the court in evaluating the fairness of a settlement are:

  1)     Whether there has already been substantial discovery in the case that can assist the court in determining the fairness of the settlement and whether objectors had access to any discovery taken in the case or to information regarding the terms of the proposed settlement. *See Lupron,* 2005 U.S. Dist. LEXIS 4039, at **6-7 (citations omitted); *Hemphill*, 225 F.R.D. at 620 (citations omitted); *Lorazepam*, 205 F.R.D. at 27.

  2)     Whether there is a reasonable basis for the discovery requested. *See Lupron,* 2005 U.S. Dist. LEXIS 4039, at **6-7 (citations omitted); *Hemphill*, 225 F.R.D. at 620 (citations omitted).

  3)     Whether objectors represent a large and potentially discrete group whose interests were not accommodated in the settlement. *See Vaughn v. American Honda Motor Co.*, Civil Action No. 2:04-CV-142 (TJW), 2007 U.S. Dist. LEXIS 55493 (E.D. Tex. July 31, 2007), at *6 (denying discovery sought by objectors because "[t]his

case does not involve numerous groups of objectors and Objectors are capable of making their arguments regarding the fairness of the settlement without taking additional discovery."); *Lupron,* 2005 U.S. Dist. LEXIS 4039, at **6-7 (citations omitted); *Hemphill,* 225 F.R.D. at 620 (holding that "where the objectors represent only a small percentage of the class, the likelihood of the court granting their discovery requests decreases because the court will give great weight to the interests of the majority of the class members.") (citations omitted).

These factors weigh heavily against Haviland's Subpoenas.  First, there has already been substantial discovery in this case.  And Haviland, who has been involved in this case for years and once sought to be Co-Lead Counsel, has had access to all of that discovery.  There is simply no need for him to prolong these proceedings further.

Second, there is no reasonable basis for the discovery requested.  The discovery sought is based on nothing more than, at best, a product of Haviland's imagination.  It is interposed to harass, delay, and otherwise impede these proceedings – actions that Haviland has undertaken several times before in this and other class litigation.

Third, Haviland's clients do not represent a large group of objectors.  Rather, they are a small self-interested group who, throughout most of their involvement in this case, have sought to displace Class Counsel and prolong these proceedings in order to further Haviland's narrow interests.  *See, e.g.,* Jan. 3, 2008 Memorandum and Order (Dkt. No. 4972), at 9-10 ("Mr. Haviland filed declarations from his clients, proposed consumer representatives, threatening to withdraw if Haviland were not appointed as class counsel. . . .  As I explained at the August 27 and the September 11 hearings, I interpreted these declarations as threats to take his toys and go home if the court declined his request.  Mr. Haviland intended to coerce the Court into appointing him as Co-Lead Class Counsel or risk losing class representatives in a class action involving the sick and elderly.").  Furthermore, the Court has already found that Haviland's client's claims arose after the cut-off date for the litigation certification. *Id*. at 10 & n.5.

**B.      Haviland Offers No Evidence Supporting His Bankrupt Conspiracy Theory**

Haviland cannot establish that the discovery he seeks will aid this Court's determination of the fairness of the Track 2 settlement.  He has offered ***no*** evidence in support of his claim that Co-Lead Counsel and the subpoenaed third party organizations entered into a conspiracy to give consumers an inadequate allocation in order to increase those organizations' potential for *cy pres* recovery.  Haviland quotes selectively from the Hodin Memo (Ex. 1 to PAL and Community Catalyst Subpoenas Duces Tecum) to create the impression that Tom Sobol was "hand-picked" by PAL to bring this case in order to recover *cy pres* monies for it.  A full, complete and honest reading of the memo belies Haviland's distorted representation of it.  For example, Haviland overlooks the core mission of PAL, to wit, to create substantial economic value for consumers in order to remedy past unlawful practices of pharmaceutical companies and to achieve meaningful change in the way the pharmaceutical industry does business in order to increase consumer access to affordable prescription and other drugs.  Nothing in that memorandum remotely supports the fantasy that Haviland has conjured.

PAL has consistently sought to ensure that the maximum amount of funds are distributed to consumers and that settlement funds do not revert to defendants or spill-over to TPPs.  In short, PAL's mission is most certainly not to take money from consumers but to recover monies on their behalf.

Similarly, a full evaluation of the fairness of the Track 2 settlement shows that Haviland's allegations are meritless.  Indeed, Haviland's conspiracy theory does not even make sense, for if PAL had set out to minimize recovery for consumers, doing so would have adversely impacted its ability to recover *cy pres* funds.  It also overlooks Class Counsel's substantial efforts to maximize recovery for consumers in the AWP litigation and to make it as easy as possible for consumers to participate in the claims process.  Further, Haviland's theory

assumes that such a *cy pres* recovery will exist, that the Court will approve such a distribution, and that Class Counsel will advocate – successfully – that PAL receive that recovery – none of which has happened or may happen.

**C.     The Discovery Haviland Seeks in the Subpoenas is Overly Broad and Unduly Burdensome**

District courts have considerable discretion in monitoring discovery, and, while information should be free-flowing between litigants, there are limits. *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd*., 333 F.3d 38, 41 (1st Cir. 2003).  Accordingly, upon a showing of good cause, this Court may enter a protective order either limiting or prohibiting discovery.  *See* FED. R. CIV. P. 26(c) (upon showing of good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.").

The court's obligation to protect third parties is even more firm.  FED. R. CIV. P. 45(c)(A)(iv) "commands that a court 'shall' quash or modify a subpoena if the subpoena 'subjects a person to undue burden.'" *Heidelberg* 333 F.3d at 41.  Subpoenas to third parties cannot cast so wide a net as to unduly burden the respondent, especially when the documents are not reasonably calculated to lead to discoverable information.  *Id.* at 41-2 (affirming trial court's quashing of third party subpoena seeking a decade's worth of materials because the burden on respondent far outweighed the likelihood of obtaining discoverable information).

FED. R. CIV. P. 26(b)(2)(C) provides in relevant part that "[o]n motion or on its own, the court ***must*** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] (iii) the burden or expense of the proposed discovery  outweighs its likely benefit, considering the needs of the case, the

amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C) (emphasis added).[4]  Further, Rule 45(c)(3)(A) gives the Court the power to "quash or modify the subpoena if it . . . (iv) subjects a person to undue burden."  The first step in determining whether "the burden or expense of the proposed discovery outweighs its likely benefit" within the meaning of Rule 26(b)(2)(C)(iii) is to assess the relevance and probative value of the materials sought by the subpoena.  *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 13 (D. Mass. 2008).

Here, the Subpoenas seek wholly irrelevant information; they are likewise grossly overbroad, seeking nearly every document the subpoena recipients have ever authored.  First, they seek all documents related to the organization and formation of the subpoena recipients. *See* Request Nos. 1 and 2 of PAL Subpoena, Ex. A to Connolly Decl.  Presumably Haviland is seeking these documents in order to support his theory that those organizations were formed for the sole purpose of seeking *cy pres* funds in litigation filed by Mr. Sobol or other Co-Lead Counsel.  However, because Haviland has offered no evidentiary in support for his claim that these organizations were formed in order to ***decrease*** the amount of consumer recovery in class action settlements  – a conspiracy purportedly reflected in the allocation given to consumers in the Track 2 settlement – this discovery should not be permitted.  *See Lupron,* 2005 U.S. Dist. LEXIS 4039, at *9 (rejecting as "evidence" of alleged collusion during settlement negotiations that class members were entitled to more money than the settlement provided); *see also Heidelberg*, 333 F.3d at 41 (affirming quashing defendant's third-party subpoena served in anti-dumping action that sought information related to potential acquisition of plaintiff), *quoting*

---

[4]  This provision governs enforcement of a Rule 45 subpoena.  *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 11 (D. Mass. 2008).

*Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990) ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery."); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) ("We will not allow [subpoening party] to go on a 'fishing expedition' with the mere 'hope' that it will obtain such information.  *See Mack,* 871 F.2d at 187 (holding that a party may not 'undertake wholly exploratory operations in the vague hope that something helpful will turn up.')").

Second, the Subpoenas seek all documents related to any *cy pres* recovery the subpoena recipients ever requested or received, whether in this litigation or any other class action litigation.  *See* Request Nos. 3-6, 9-11.  Even if Haviland had established a purported conspiracy in this case – which, of course, he has not – that fails to support seeking discovery regarding *cy pres* recoveries sought or obtained in any other litigation, especially because there is nothing inherently improper about seeking *cy pres* funds in the first instance.

Third, the Subpoenas seek all documents related to the subpoena recipients' relationships with Co-Lead Counsel and/or payments by Co-Lead Counsel to the subpoena recipients.  These requests could not further Haviland's conspiracy theory either.  At best, they will establish what Haviland – and anyone else who has Internet access – already knows:  that Co-Lead Counsel are members of these organizations and make contributions to them.  There is certainly nothing improper about belonging to or contributing money to a nonprofit organization.

## D.    Haviland Has Been Prohibited From Seeking Similar Discovery Before

Haviland has been similarly prohibited from seeking such discovery in other cases.  In *Lupron*, Haviland's clients, who had been granted leave to intervene in the MDL, served interrogatories and document requests on the MDL parties and various health plans.  They also noticed the depositions of and/or served deposition subpoenas on ten individuals and entities, including the MDL class representatives and counsel for the MDL parties, including Tom Sobol,

the object of Haviland's attack here.  *Id.* at **4-5.  Because the court found that Haviland's

clients had offered no "evidence" of collusion (*id.* at *9) in the settlement negotiations, the court

quashed those subpoenas and entered a protective order on the written discovery.  In so holding,

the court found that "Intervenors have failed to seek leave of court or to specify why these

depositions are necessary to the court's adjudication of the fairness of the settlement."  *Id.* at *11.

Similarly, in the *In re Bridgeport Fire Litigation*, pending before Judge Steven T. O'Neill

in the Court of Common Pleas of Montgomery County, Pennsylvania, Haviland likewise

attempted to serve subpoenas on parties to the litigation, as well as the personal counsel for one

of the defendants in the case, in the middle of trial.  *See* Opinion, *In re Bridgeport Fire Litig.*,

CCP Master File No. 05-20924 (Feb. 27, 2009), Ex. D to Connolly Decl., at 19.  The court

quashed those subpoenas for three reasons.  First, the court held that it was improper to serve

subpoenas on parties to the litigation.  Second, the court held that the subpoenas were improper

because Haviland was not class counsel and represented Appellants "in a personal capacity

only."  *Id.*  Third, the court held that the subpoenas were improper because they sought details

regarding settlement negotiations and the drafting of the settlement agreement in the case.  *Id.*

The court found that:

> Mr. Haviland appears to have been trying to seek this information
> in support of a 'wild goose chase' to prove a self-created theory
> that the Settlement Agreement was a product of collusion, a theory
> that has absolutely no basis in fact.  Mr. Haviland had no
> independent basis to support such an outrageous and manufactured
> allegation.

*Id.* at 19-20.  The court therefore concluded that:

> In this instance, the subpoenas Mr. Haviland sought to issue
> represented yet another example of his improper interference in the
> class action proceedings.  He had no right or basis to demand
> documents from the various parties and non-parties.  Mr. Haviland
> has continuously operated to delay and disrupt these proceedings
> and aggravate his former employer law firm.  This Court properly

denied the subpoenas that were designed to achieve such improper purposes.

*Id.* at 20.

Thus, Haviland is simply taking the same page out of his "conspiracy" objection playbook and again testing it here. As the Courts did in *Lupron* and *Bridgeport Fire*, this Court should quash Haviland's Subpoenas.

### III.    CONCLUSION

The discovery Haviland seeks is nothing more than a fishing expedition designed to harass and embarrass Class Counsel. It will not assist this Court in evaluating the fairness of the Track 2 settlement and should therefore be quashed.

DATED:  March 27, 2009              By:  /s/ Jennifer Fountain Connolly
                                         Thomas M. Sobol (BBO#471770)
                                         Edward Notargiacomo (BBO#567636)
                                         Hagens Berman Sobol Shapiro LLP
                                         One Main Street, 4th Floor
                                         Cambridge, MA  02142
                                         Telephone: (617) 482-3700
                                         Facsimile: (617) 482-3003

                                         Steve W. Berman
                                         Sean R. Matt
                                         Hagens Berman Sobol Shapiro LLP
                                         1301 Fifth Avenue, Suite 2900
                                         Seattle, WA  98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594

                                         Kenneth A. Wexler
                                         Jennifer Fountain Connolly
                                         Wexler Wallace LLP
                                         55 W. Monroe Street, Suite 3300
                                         Chicago, IL  60603
                                         Telephone: (312) 346-2222
                                         Facsimile: (312) 346-0022

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

***Counsel for Prescription Access Litigation, Community Catalyst and Health Care For All***

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Jennifer Fountain Connolly, hereby certify that I am one of plaintiffs' attorneys and that, on March 27, 2009, I caused copies of ***Memorandum of Prescription Access Litigation, Community Catalyst and Health Care for All In Support of Their Motion to Quash Subpoenas Duces Tecum Served by Don Haviland*** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/ Jennifer Fountain Connolly
Jennifer Fountain Connolly