# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) **MDL No. 1456** ) **Master File No. 01 -12257-PBS** ) **Subcategory No. 06-11337** |
| THIS DOCUMENT RELATES TO: | ) ) |
| *State of California, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.* Case No. 03-11226-PBS | ) **Hon. Patti B. Saris** ) ) **Magistrate Marianne B. Bowler** ) ) ) |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF STATE OF CALIFORNIA'S MOTION FOR A PROTECTIVE ORDER REGARDING DEFENDANTS' RULE 30(B)(6) DEPOSITION TOPICS

## INTRODUCTION

Defendants Dey, Inc., Dey, L.P., Mylan Inc. and Mylan Pharmaceuticals Inc., on behalf of all Defendants remaining in this action ("Defendants"), submit this brief in opposition to Plaintiff the State of California's ("California") motion for a protective order regarding certain of Defendants' Rule 30(b)(6) deposition topics.  The topics as to which California seeks a protective order cover the key allegations in California's First Amended Complaint ("Complaint"), the damages California seeks by way of this action, the timing and circumstances of California's discovery of Defendants' alleged fraud, including its communications with Relator Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"), and the reasons for the seven year delay between the filing of the original complaint under seal and California's intervention. California contends that it is entitled to a protective order as to each of these topics because they involve matters protected by privilege or are simply not workable as 30(b)(6) deposition topics

and are better addressed through contention interrogatories.  These arguments are meritless and California's motion should be denied.

First, California's assertions of privilege are premature, as depositions on the topics have not yet occurred and there is no basis in the record to determine whether or not the topics will actually implicate privileged matters.  *See, infra*, Point I.

Second, despite its burden to establish privilege by a fair preponderance of the evidence, California offers nothing more than speculation that topics relating to when and how California first learned of the alleged fraud and its communications with Ven-A-Care in fact seek any material or information protected by a privilege.  *See, infra*, Point II, A.  In any event, California's assertions of privilege fail.  These topics are not shielded by the attorney client privilege because they seek factual information, not communications between California and its attorneys.  *See, infra*, Point II, B.  Moreover, by asserting claims covering a period extending back to January 1, 1994, California has waived any claim of attorney-client privilege it may have over subject-matter relating to when it learned of the alleged fraud, and has given Defendants a compelling need for discovery on those topics which overrides any work product protection California may have.  *See, infra,* Point II, C.  Likewise, because California allowed potentially relevant evidence to be destroyed during the seven-year period between the filing of the original *qui tam* complaint and California's intervention, Defendants have a compelling need to discover the reasons for the seven-year delay to determine whether their due process rights have been violated or whether the defense of laches applies.  *See, infra,* Point II, D.

Finally, the topics that seek the factual basis for certain allegations in the Complaint are perfectly proper topics for a 30(b)(6) deposition, and California's contention that they are unworkable or unfair is meritless.  *See, infra,* Points III, A, B.  California's assertion that

these topics are protected by the work product doctrine fails, as these topics seek the factual basis for factual allegations, not the legal basis for legal contentions.  *See, infra,* Point III, C.  Indeed, California's objections to producing a witness to testify on these topics are disingenuous, as California has served letters requesting 30(b)(6) depositions of Defendants on topics that similarly seek the factual bases for central factual contentions in this action.  For instance, California seeks to depose Mylan Inc. and Mylan Pharmaceuticals Inc. on "Mylan's belief, if any, that the State of California … affirmatively approved of or acquiesced in Mylan's practice of causing the publication of AWPs for Mylan's drug products that were higher than actual average wholesale prices…" and "Mylan's belief, if any, that the State of California … affirmatively approved of or acquiesced in Mylan causing the Medicaid program to reimburse providers for Mylan drugs in amounts substantially in excess of provider acquisition costs plus any established dispensing fee…"  *See* Declaration of Philip D. Robben ("Robben Decl.") at Ex. 1.  This Court has held that a 30(b)(6) deposition on these topics is not only proper but preferable to interrogatories.  *See* Robben Decl., Ex. 2.  Subject to objections, Mylan Inc., Mylan Pharmaceuticals Inc., and Sandoz Inc. are producing a witness designated to provide testimony on these topics.

## ARGUMENT

## I.    CALIFORNIA'S ASSERTIONS OF PRIVILEGE ARE PREMATURE

California's privilege assertions are made prospectively and without the benefit of a record.  Indeed, the depositions on the topics at issue have not yet commenced.  Consequently, there is no basis to determine whether the testimony sought will actually implicate matters protected by the attorney-client privilege or work product doctrine.

Courts routinely reject attempts to assert privileges as grounds for protective orders quashing deposition notices and subpoenas for precisely this reason.  For instance, in

*United States v. Motorola, Inc.,* No. Civ. A. 94-2331TFH/JMF, 1999 WL 552558, *2 (D.D.C. May 27, 1999), the government sought a protective order in response to a defendant's 30(b)(6) notice, arguing that the topics noticed would lead to the discovery of information protected by the attorney-client privilege and deliberative process privilege.  The court rejected the government's request, holding:

> The pleadings filed raise only the possibility that these privileges may apply to the questions to be asked during the deposition.  It would be a gross abuse of my responsibilities to say on this record that it is impossible for Nextel to ask questions that will not be covered by either or both privileges.  Instead, I am obliged to rule on the application of each privilege on a question by question basis … .

*Id.*  Similarly, in *Evans v. City of Chicago*, 231 F.R.D. 302, 320 (N.D. Ill. 2005), the Court denied a request to quash a subpoena on privilege grounds simply because the questions asked may cover areas covered by a privilege.  As the court held, "We cannot say that Mr. Ryan would be unable to give any testimony…that would fall outside of an applicable privilege."  *Id.*

Here, as in *Motorola* and *Evans*, there is simply no basis upon which the Court can determine whether a privilege actually applies.  As in those cases, the Court should allow the deposition to proceed on the noticed topics and let California assert its privileges on a question by question basis, if warranted.  Then, should Defendants choose to challenge any of those assertions, the Court will be in a position to assess the merits of each claim of privilege on a full record.  This approach is preferable, in terms of both fairness and judicial economy, to the issuance of a blanket protective order – based solely on California's speculation – that would foreclose inquiry into central areas of the case.

## II.    DEFENDANT'S PROPOSED TOPICS 58, 59, AND 64 THROUGH 66 ARE PROPER SUBJECTS FOR A RULE 30(B)(6) EXAMINATION

Topics 58, 59 and 64 through 66 relate to California's communications with Ven-A-Care concerning the claims at issue in this action, how and when California learned of the

fraud alleged in the Complaint, and California's seven-year delay in intervening in this action. California argues that it is entitled to a protective order foreclosing all testimony on these topics, contending that a protective order is warranted by the attorney-client privilege, the work product doctrine, and a purported "common-interest privilege."  These arguments fail.

>    **A.    California Has Not Met Its Burden of Showing That Topics 58, 59, And 64 Through 66 Concern Privileged Information**

A direct consequence of the prematurity of California's motion is that California fails to offer any evidence demonstrating that any of the asserted privileges apply.  "As a general matter, the party asserting an applicable privilege has the burden of establishing that it applies. The privilege's applicability must be demonstrated by a fair preponderance of the evidence."  *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) (internal citations omitted). California's motion does not meet this burden.  California does not cite any evidence to support its privilege assertions.  Rather, California simply speculates that testimony Defendants may elicit would concern communications between the California Department of Justice and the California Department of Health Care Services ("DHCS"), and that such communications are "at the heart of the attorney-client and work product doctrines."  California's Brief at 7.  This conclusory assertion is not sufficient to establish the privilege.

Instead of citing to facts in the record or giving particulars as to the individuals involved in such supposed conversations, California gives a string cite of cases wherein courts quashed interrogatories that sought the names of witnesses attorneys had interviewed.[1]  None of these cases are on point, and these cases do not meet California's burden to establish by a fair preponderance of the evidence that these topics would elicit privileged testimony.  Indeed,

---

[1]    *See Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 154 (D. Mass. 1986); *Bd. of Educ. Of Evanston T.P. v. Admiral Heating*, 104 F.R.D. 23, 32 (N.D. Ill. 1984); *Uinta Oil Ref. Co. v. Cont'l Oil Co.*, 226 F. Supp. 495, 506 (D. Utah 1965).

California's inability to set forth anything more than conclusory allegations and off-point case law makes clear that California's privilege assertions are premature, and that its motion for a protective order should be denied.

**B.    California Cannot Use the Attorney-Client Privilege to Shield Purely Factual Information From Discovery**

That California has offered no evidence to support its assertion that the information sought is protected by the attorney-client privilege is unsurprising given that Topics 58, 59, and 64 through 66 seek discovery of factual information, which is not protected by the attorney-client privilege.  "The attorney-client privilege protects only confidential communications by the client to the attorney, not factual information discovered by the attorney… .  The fact alone that a party has communication to its attorney does not prevent discovery of the factual information."  *American Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) (holding that neither the attorney-client privilege nor the work product doctrine prohibited deposing plaintiff's attorney as to the timing of his discovery of defendant's alleged fraud where plaintiff alleged that his attorney discovered the fraud).  This follows from the general principle that the attorney-client privilege "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth."  *Fed. Deposit Ins. Corp. v. R.W. Beck, Inc.*, 2004 WL 1474579, *1 (D. Mass. July 1, 2004) (quoting *In re XYZ Corp.*, 348 F.3d. 16, 22 (1st Cir. 2003)) (internal quotation marks omitted).  Here, Defendants are seeking discovery of factual information, such as when and how California, either directly or through its attorneys, discovered the fraud it alleges in its Complaint.  The attorney-client privilege offers no protection for this kind of factual information.

### C.     California's Claims Period Puts the Matters Covered in Topics 58, 59, and 64 Through 66 Squarely at Issue in This Action and Creates a Compelling Need for Discovery on Them

Even if California had established that work product doctrine applies to these topics, which it has not, Defendants have a substantial need for discovery on these topics that should override any assertion of the work product doctrine.  The statute of limitations governing California's claims in this action prohibits California from seeking claims beyond three years prior to the date of its discovery of the allegedly fraudulent conduct.  Cal. Gov't Code § 12654(a).  California's Complaint asserts claims covering a period as early as January 1, 1994, over eleven years before it filed its complaint in intervention in this action.  Each of the Defendants has asserted an affirmative defense based on the statute of limitations.  Thus, Defendants are entitled to know exactly when California first learned of the claims at issue in this action. Topics 58, 59, and 64 through 66 – which seek discovery of communications between Ven-A-Care and California regarding the claims at issue, California's investigation of these claims, and the reasons for California's delay in intervening in the action – all bear directly on this point.

In *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), the Supreme Court held that, where a party has a compelling need for the discovery of relevant and non-privileged facts, those facts are not shielded from discovery by the work product doctrine.[2]  Accordingly, where a plaintiff seeks to extend a statute of limitations by contending that it did not have knowledge of the allegedly actionable conduct, the plaintiff cannot use the work product doctrine to withhold

---

[2]     California cites to Rule 26(b)(3) of the Federal Rules of Civil Procedure to support its contention that the information sought through these deposition Topics is protected by the work product doctrine.  Defendants note that Rule 26(b)(3) applies to documents and tangible things only.  Nonetheless, analysis of the discoverability of information under Rule 26(b)(3) is relevant as, like *Hickman*, Rule 26(b)(3)(A) provides for the discovery of information otherwise protected by the work product doctrine where the party seeking discovery of the information "shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

material that would demonstrate its knowledge of the allegedly actionable conduct, even if that material was gathered by an attorney. *See Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210 (D. Mass. 2000) (holding that the standard for overcoming work product protection was met with respect to information gathered by plaintiffs' counsel, where the information was relevant to determining when plaintiffs knew or should have known of defendants' alleged fraud); *New York v. Cedar Park Concrete Corp.*, 130 F.R.D. 16 (S.D.N.Y. 1990); *American Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) (holding that where plaintiff contended that his attorney uncovered defendant's alleged fraud, the work product doctrine did not prohibit defendant's discovery of either the factual information relating to the attorney's learning of the alleged fraud or his relevant mental impressions).

In *Cedar Park*, the State of New York brought antitrust claims that the defendants contended were time-barred by the statute of limitations. 130 F.R.D. at 18.  New York attempted to defeat the statute of limitations by claiming that, because the defendants fraudulently concealed their conduct, New York was unaware of the violations during the limitations period. In response, the defendants sought discovery concerning New York's knowledge of their conduct, which New York opposed, withholding "all correspondence, memoranda and attorney 'workpapers' pertaining to the [antitrust] investigation as work product or trial preparation materials... ." *Id.* at 24.  The court rejected this claim of privilege, as the state's allegation of fraud necessarily implicated its knowledge:

> [E]ven if the withheld documents are found to be trial preparation materials, defendants have "substantial need" of the materials in order to meet plaintiff's claims of fraudulent concealment and are unable to obtain the substantial equivalent of these materials by other means... .  [P]laintiff has placed in issue the extent of its knowledge and its due diligence prior to March 20, 1982... and March 22, 1983... .  The best and virtually exclusive source of this information is the documents received and prepared by the

> Attorney General prior to these dates.  Accordingly, plaintiff is directed to produce no later than November 27, 1989, all correspondence, memoranda or workpapers in its possession prepared or received prior to October 22, 1983.

*Id.* (internal citations omitted).

California's investigation of the claims in this action, especially its communications with Ven-A-Care, not only is a proper subject for discovery, but is Defendants' only source for discovering when California first learned of the claims in this action.  As the court in *Axler* noted, "when counsel advised the plaintiffs that they had a cause of action is potentially very significant… Defendants can only obtain this information from plaintiffs, or their counsel."  196 F.R.D. at 213.  Accordingly, "because plaintiffs relied completely on their counsel, the defendants are entitled to discovery from plaintiff's counsel concerning what investigation they conducted, what information they received, and when they received it."  *Id.* at 212.  The mere fact that California may have first learned of its claims in this action through its attorneys does not insulate the facts its attorneys learned – or the time in manner in which they learned them – from discovery.  Defendants' substantial need for this factual information outweighs any interest California has in protecting this information as attorney work product.

Furthermore, to the extent that any of the information sought through these topics would otherwise be protected by the attorney-client privilege, California has waived that privilege by bringing this lawsuit.  A party impliedly waives the attorney-client privilege where: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense."  *Savoy v. Richard A. Carrier*

*Trucking, Inc.*, 178 F.R.D. 346, 350 (D. Mass. 1998) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

Here, California's assertion of the privilege, a result of its filing of this action, seeks to protect information that is highly relevant to the determination of whether California's claims are barred, in whole or in part, by the statute of limitations. As this court previously held, the question of when the government first learned or should have learned of a claim for statute of limitations purposes is a fact-intensive one. *See U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp.*, Civil Action No. 07-10284-PBS, 2007 WL 4287572, *4 (D. Mass. Dec. 6, 2007). Defendants have a critical need to develop an evidentiary record to demonstrate this defense. As information in the possession of California's attorneys is the only direct proof of when California learned of Defendants alleged conduct, this information is critical to one of the defenses in this case and any privilege that might have otherwise attached to this information has been waived. California's attempts to withhold information essential to the determination of whether certain of its claims are time-barred violates the basic principle that the attorney-client privilege "was intended as a shield, not a sword." *Pitney-Bowes, Inc. v. Mestre*, 86. F.R.D. 444, 446 (S.D. Fla. 1980).

    **D.**    **Defendants Have A Compelling Need to Learn the Reasons for California's Seven-Year Delay in Intervening in This Action**

Defendants also have a compelling need to develop an evidentiary record concerning the reasons behind California's seven-year delay in intervening in this action, which may give rise to a defense of laches or demonstrate that California's delay has violated Defendants rights to due process. Defendants have asserted affirmative defenses on these grounds. The defense of laches will bar California's claims if California unreasonably delayed the filing of this lawsuit, resulting in prejudice to Defendants. *See Jackson v. Axton*, 814 F.

Supp. 42, 43 (C.D. Cal. 1993) (dismissing action brought 22 years after accrual of claim where memories had faded and relevant evidence had been destroyed); *see also Robert F. Kennedy Medical Center v. Belshe*, 13 Cal. 4th 748, 760 n. 9, 919 P.2d 721, 729 n. 9 (Cal. 1996) ("Under the appropriate circumstances, the defense of laches may operate as a bar to a claim by a public administrative agency, such as the [California] Department [of Health Services], if the requirements of unreasonable delay and resulting prejudice are met.")  Moreover, this Court has recognized that improper or bad-faith delays by the government in intervening in *qui tam* actions that result in prejudice to a defendant can trigger due process concerns.  *See United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc.*, 498 F. Supp. 2d 389, 399, 399 n. 6 (D. Mass. 2007).  Evidence already in the record indicates that, as a result of California's seven-year delay in intervening in this action, relevant documents and other evidence may have been destroyed or forgotten, particularly relating to matters from the earliest period allegedly covered by California's claims.

For example, although Ven-A-Care filed its original complaint under seal in July of 1998, evidence indicates that California failed to take adequate steps to preserve relevant documents until December of 2005 (or, at the earliest, September of 2003).  The California Department of Health Services ("DHS") was informed of the litigation through its Office of Legal Services ("OLS") on September 25, 2003, more than five years after the date Ven-A-Care filed its original complaint under seal.  *See* Robben Decl., Ex. 3, at 16.  Jane Lamborn, the witness designated by California to provide testimony concerning California's efforts to preserve documents, testified that representatives of OLS met with members of the Pharmacy Policy Unit within DHS regarding gathering and preserving documents in September of 2003 and again in November of 2004.  *See* Robben Decl. at Ex. 4, at 18:13-19, 34:1-38:16.  Ms. Lamborn testified

that, at these meetings, the representatives of the Pharmacy Policy Unit were instructed to takes steps to gather and preserve potentially relevant documents. *See id.* at 34:4-10, 36:2-5. However, evidence in the record indicates that efforts taken to preserve documents following these meetings may not have been sufficient.

For instance, at the meetings in September of 2003 and November of 2004, Ms. Lamborn testified that representatives of OLS showed a memorandum to the representatives of the Pharmacy Policy Unit that described types of potentially relevant documents and listed drug manufacturers who were parties to the action. *See id.* at 56:13-60:20, 112:7-113:12; Robben Decl. at Ex. 5, 6. Neither list includes the name of Mylan Pharmaceuticals Inc. or its parent Mylan Inc. (at the time known as Mylan Laboratories Inc.), or Sandoz Inc., or its predecessor Geneva Pharmaceuticals, Inc., even though Mylan Pharmaceuticals Inc. and Geneva Pharmaceuticals, Inc. were named in the action in 2002. In addition, in December of 2005, OLS took over responsibility for gathering documents relevant to this action and sent out e-mails to various units within DHS, directing them to preserve documents. *See* Robben Decl., Ex. 4 at 19:4-20, 25:13-26:9, 80:20-82:9; Ex. 7. Responses to this e-mail from DHS's Information Technology Services Division ("ITSD") indicate that ITSD had not received instructions to preserve electronic documents prior to those e-mails. *See* Robben Decl., Ex. 8. Ms. Lamborn's testimony indicates that California's delay in taking steps to preserve relevant documents was likely the result of the requirement that *qui tam* complaints remain under seal and their contents remain confidential while California investigates the claims to determine whether it will intervene. *See* Robben Decl., Ex. 4, at 109:22-111:12; *see also* Cal. Gov't Code §§ 12652(c)(2)-(5).

It appears that this delay has caused the destruction of potentially relevant documents.  Defendants have learned through meet and confers with California that it is DHS's policy to destroy e-mails and other electronically stored documents stored in employees' personal folders on DHS's computer servers shortly after those employees leave DHS.  Thus, it appears that electronically stored documents within the possession of former DHS employees who left DHS between 1998 and 2005 were destroyed and are no longer available.  The absence from a list of custodians from which California's production of electronic documents was culled of several former DHS employees Defendants had identified as having potentially relevant knowledge confirms this.  *Compare* Robben Decl. at Ex. 9 to Robben Decl. at Ex. 10.

The prejudice caused by California's delay is not limited to the destruction of potentially relevant documents.  Earlier this year, Defendants deposed John Rodriguez, who was the Deputy Director of Medical Care Services for DHS from 1985 to October of 1996.  *See* Robben Decl., Ex. 11, at 33:13-18.  This position required Mr. Rodriguez, among other duties, to communicate with the Health Care Financing Agency ("HCFA") regarding California's reimbursement formula and the basis for the levels of reimbursement used by California.  *Id.* at 43:16-45:3.  Documents produced by California and the United States indicate that, during his tenure, Mr. Rodriguez was involved in and had knowledge of several facts and issues that are highly relevant to this action.  For instance, in a 1986 letter to an Associate Regional Administrator for HCFA that bears Mr. Rodriguez's signature, Mr. Rodriguez acknowledges receiving and reviewing a report prepared by HCFA in 1985 that notes that pharmacists in California can purchase drugs at significant discounts off of AWP and questions whether California's drug reimbursement methodology accurately reflects pharmacy acquisition costs.  *See* Robben Decl., Ex. 12, at 6, 8; Ex. 13.  However, when examined on these documents Mr.

Rodriguez denied any recollection of them.  *See* Robben Decl., Ex. 11, at 54:16-22, 55:14-57:3.

Mr. Rodriguez likewise denied recollection of several other letters from the same period of time

that were either sent to him or bore his signature.  *See, e.g., id.* at 85:8-86:16; 102:22-107:6;

128:1-22.  Defendants can only assume that Mr. Rodriguez would have been able to provide

more substantive testimony had this deposition taken place at or around the time Ven-A-Care

filed its original complaint in 1998, as these matters would have been fresher in his mind.  In any

event, California's seven-year delay deprived Defendants of the opportunity of deposing Mr.

Rodriguez sooner, and his recollections of these important matters are now gone.

   As noted *supra* at II, C, the work product doctrine can be overcome by

demonstrating a compelling need for the matters claimed as protected.  This loss of evidence

demonstrates that California has prejudiced Defendants by its delay in intervening in this lawsuit.

Defendants, therefore, have a compelling need to learn whether California's delay in intervening

was unreasonable to determine whether their due process rights have been violated or whether a

laches defense exists.  California cannot assert privilege to protect from discovery its conduct

during that seven-year period.

  **E.**  **The Common-Interest Doctrine Is Not a**
    **Separate Source of Privilege for California**

   California also contends that the "common interest privilege" bars Defendants

from seeking testimony concerning communications between California and Ven-A-Care,

erroneously suggesting that the common-interest doctrine creates an additional level of

protection above and beyond the attorney-client privilege and work product doctrine.  California

is wrong.  "The common-interest doctrine… is not an independent basis for privilege."

*Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002).  Rather, the common-interest

doctrine simply preserves the status of information otherwise protected from disclosure when it

is communicated between two parties with a common interest in a litigation. *Id.* Information not protected from disclosure by the attorney-client privilege or work product doctrine does not become privileged simply because it is communicated between two parties with a common interest. *Id.* at 250-51. As discussed at length above, California has not met its burden of establishing that the attorney-client privilege or work product doctrine applies and Defendants have demonstrated that the privileges do not apply in any event. That some of these topics cover communications between California and Ven-A-Care does not create a privilege where none existed before.

## III.   TOPICS 1 THROUGH 16 AND 63 ARE PROPER TOPICS FOR RULE 30(B)(6) DISCOVERY

California contends that Topics 1 through 16 and 63 are improper topics for a Rule 30(b)(6) deposition because a deposition on them would constitute an unworkable "mini-trial" and would intrude into areas protected by the attorney work product doctrine. These arguments fail as well.

### A.   Topics 1 Through 16 and 63 Properly Seek the Factual Bases for California's Factual Allegations

Parties to an action are entitled to learn the factual bases for factual allegations in pleadings through Rule 30(b)(6) depositions. *See Protective Nat'l Ins. Co. of Omaha v. Commw. Ins. Co.*, 137 F.R.D. 267, 282-83 (D. Neb. 1989); *Fed. Deposit Ins. Corp. v. C.H. Butcher*, 116 F.R.D. 196, 202 (E.D. Tenn. 1986). For instance, in *Protective National*, the court directed a counterclaiming defendant to produce a Rule 30(b)(6) witness who could testify about the facts underlying factual allegations in its counterclaims that certain representations by the plaintiff were false and misleading. 137 F.R.D. at 282. As the Court noted: "There is simply no doubt that Protective is entitled to the information it sought, which was the factual basis for the contentions contained in the counterclaims and answer and the factual basis for the damages

claimed." *Id.* The court rejected the defendant's argument that the attorney work product privilege precluded testimony on these topics, noting that the plaintiff sought only the facts underlying the basis for these allegations, not the mental impressions of the defendant's counsel. *Id.*

Topics 1 through 16 and 63 seek the factual bases for central allegations in the Complaint. Topics 1 through 16 seek testimony regarding the factual bases for California's allegations in its Complaint that Defendants made false and misleading representations and otherwise engaged in improper conduct which caused California injury. *See* California's Brief, Ex. A., at ¶¶ 1-16. Topic 63 seeks testimony regarding California's claim that it has suffered damages as result of Defendants' conduct, and the basis and extent of those damages. *See id.* at ¶ 63. These topics are plainly appropriate topics for a Rule 30(b)(6) deposition, as Defendants are entitled to know the bases for the factual allegations California intends to establish in this action.

### B. California's Contention That These Topics Are Unfair or Unworkable Is Wrong

California contends that these topics are not appropriate areas of inquiry for a 30(b)(6) deposition because such a deposition would amount to a "mini-trial" of this action that Defendants would use at a later stage to preclude California from introducing new evidence or to seek summary judgment. However, California fails explain what the term "mini-trial" means or cite to any precedent that supports its "mini-trial" argument. In any event, the fact that evidence obtained at a deposition may subsequently be used by Defendants to defend against California's claims in this action – which is surely a proper use of deposition testimony – is not a sufficient ground to preclude Defendants from seeking testimony that plainly is relevant to claims at issue in this action.

California further contends that such a deposition would be unworkable because there are hundreds of drugs and millions of claims at issue in this action and that, consequently, no witness could provide testimony regarding all of Defendants' allegedly fraudulent practices. However, California will need to establish these allegations at trial if it intends to prevail on its claims, so it should not be allowed to avoid producing a witness now simply because it would be somewhat burdensome to do so:

> Rule 30(b)(6) explicitly requires [a corporate party] to have persons testify on its behalf as to *all matters* known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition. *This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before trial. This would totally defeat the purpose of the discovery process.*

*Berwind Prop. Group Inc. v. Envtl. Mgmt. Group, Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (emphasis added).  Moreover, this argument seriously misconstrues the subject matter of the topics.  The topics do not seek testimony regarding each of the individual claims for reimbursement at issue in this action.  Rather, they seek testimony about the specific conduct by Defendants that California contends forms the basis for this action and, for the most part, would not require an understanding or discussion of any transactional data.  For instance, Topic No. 4 inquires about the facts and circumstances supporting California's allegation that Defendants control the prices reported by First DataBank.  California's Brief, Ex. A, ¶ 4.  Topic No. 9 inquires about the facts and circumstances supporting California's allegation that Defendants used spreads to compete with one another and increase their market share.  *Id.* at ¶ 9.  Topic No. 14 inquires about the facts in California's possession relating to each instance in which the Defendants "marketed the spread" for their drugs.  *Id.* at ¶ 14.  None of these topics would

require the extensive data analysis that California contends would make them unworkable as deposition topics.

      C.      **<u>The Topics Do Not Intrude Into Privileged Matters</u>**

      California's argument that these topics would touch on matters protected from discovery by the work product doctrine and are better addressed through contention interrogatories is equally unavailing.  As noted, *supra*, at II, A, California has the burden to establish the existence of a privilege by a preponderance of the evidence.  Again, California fails to offer a single piece of evidence to support its claim that these topics would so intrude into privileged areas that Defendants should be precluded from asking any questions on them at all.

      Indeed, a simple review of the topics themselves reveals that the opposite is true. The topics do not seek testimony concerning the mental impressions of California's attorneys. Nor would they even require the deponent to "reason about the relationship between the facts and the legal positions asserted in California's Complaint," as California contends.  *See* California Brief, at 12.  Rather, they simply seek testimony regarding the facts in California's possession that support the fundamental allegations in California's complaint.  *See, e.g., id.*, Ex. A, ¶ 3 ("The facts and circumstances forming the basis for the allegation, in paragraph 29 of the Complaint, that, 'The Defendant manufacturers, further caused the pricing information reported to Medi-Cal to be false and misleading for their products by providing off invoice financial inducements such as free goods and cash payments.'")  That these facts may have been collected and conveyed to the witness by an attorney is irrelevant.  In *Protective National*, the court found that facts supporting allegations in pleadings were entirely appropriate subjects for a 30(b)(6) deposition regardless of whether those facts may have been collected and conveyed to the witness by an attorney.  137 F.R.D. at 282.

The cases California cites to support its argument are simply not on point. In three of the cases, depositions of government attorneys or investigative bodies were sought.[3] Defendants have not specifically requested the deposition of an attorney at the California Department of Justice and there is no need for California to produce an attorney. California is free under Rule 30(b)(6) to educate a non-attorney witness to testify adequately on these subjects. Indeed, a non-attorney witness from Medi-Cal, California's Medicaid program would be preferable, as it is California's contention that Medi-Cal relied on the allegedly false statements made by Defendants, and Medi-Cal's understanding of how and why those statements were false or misleading is essential to this case.

The remaining cases cited by California bar rule 30(b)(6) depositions because the depositions themselves sought discovery of "claim construction" and similar legal conclusions, which would be better ascertained through contention interrogatories.[4] Here, in contrast, Defendants seek the basis for certain basic factual allegations contained in California's complaint. The topics do not seek to obtain testimony which concerns the strategy of California's counsel or how counsel intends to construct its claims. In *Protective National*, the court recognized the difference between certain legal contentions and factual contentions

---

[3]     *See BB&T Corp. v. United States*, 233 F.R.D. 447, 448-49 (M.D. N.C. 2006) (seeking depositions of attorneys for the Internal Revenue Service); *S.E.C. v. Morelli*, 143 F.R.D. 42, 46-47 (S.D.N.Y. 1992) (seeking 30(b)(6) deposition of the Securities and Exchange Commission in enforcement action); *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of Am.*, No. 90 Civ. 5722, 1992 WL 208284 at *10-*12 (S.D.N.Y. Aug. 18, 1992) (seeking 30(b)(6) deposition of the U.S. Attorneys' Office).

[4]     *See Goss Int'l Americas, Inc. v. MAN Roland, Inc.* No. Civ. 03-CV-513-SM, 2006 WL 1132930 at *1 (D. N.H. April 28, 2006) (seeking deposition testimony concerning "claim construction"); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 WL 739959, at *3 (E.D.Pa. March 23, 2004) (seeking deposition testimony concerning legal position of certain statements in plaintiff's patents); *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (seeking deposition testimony concerning statements in pleadings that amounted to seeking deposition testimony concerning attorney work product, legal opinions or conclusions, and expert testimony); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991) (seeking deposition concerning all the bases and contentions taken by plaintiff in an action).

contained in the pleadings and held that the defendant was obligated to produce a 30(b)(6) witness to provide testimony as to the factual contentions.  137 F.R.D. at 282.  Likewise, the paragraphs from the Complaint referenced in Defendants' 30(b)(6) topics contain purely factual allegations, and there is no reason California should not be obligated to produce a witness to testify on these topics.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny California's motion for a protective order relating to Topics 1 through 16, 58, 59, and 63 through 66 of Defendants proposed Rule 30(b)(6) topics and grant such other, further and different relief the Court may just and deem proper.

Dated:  April 9, 2009

KELLEY DRYE & WARREN LLP

By: /s/Philip D. Robben
    Philip D. Robben (*pro hac vice*)
    Brendan Cyr (*pro hac vice*)
101 Park Avenue
New York, New York  10178
(212) 808-7800
(212) 808-7897 (facsimile)

*Attorneys for Defendants Dey, Inc., Dey, L.P., Mylan Inc. and Mylan Pharmaceuticals Inc., on behalf of all defendants.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on April 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.


<u>        /s/Philip D. Robben    </u>
Philip D. Robben