# Exhibit 1



**Bureau of Medi-Cal Fraud & Elder Abuse**
State of California Department of Justice



Office of Attorney General
Edmund G. Brown Jr.

February 27, 2009

Bureau of
Medi-Cal Fraud
and Elder Abuse

**VIA FEDERAL EXPRESS**

1455 Frazee Road, Suite 315
San Diego, CA 92108-4304

Sung Kim, Esq.
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY  10178

Telephone: (619) 688-6024
Facsimile: (619) 688-4200

Re:   State of California, *ex rel.* v. Abbott Labs., Inc., *et al.*
      Case Nos. 01-12257, MDL 1456

Dear Sung:

Pursuant to Paragraph 8(G) of Case management Order Number 31, I am sending this letter to request that Mylan Pharmaceuticals, Inc. and Mylan Laboratories (hereinafter "Mylan) designate a witness or witnesses to testify concerning the following topics:

1.  Mylan's belief, if any, that the State of California, its Department of Health Care Services ("DHCS"), formerly known as Department of Health Services ("DHS"), or any employee thereof, affirmatively approved of or acquiesced in Mylan's practice of causing the publication of AWPs for Mylan's drug products that were higher than actual average wholesale prices, including:

    a. The identity of each employee (current and former) of Mylan who held such a belief;

    b. The time period when such person held that belief;

    c. Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d. All other information that formed a basis for the person's belief.

2.  Mylan's belief, if any, that the State of California, its Department of Health Care Services ("DHCS"), formerly known as Department of Health Services ("DHS"), or any employee thereof, affirmatively approved of or acquiesced in Mylan causing the Medicaid program to reimburse providers for Mylan drugs in amounts substantially in excess of provider acquisition costs plus any established dispensing fee, including:

Sung Kim, Esq.
February 27, 2009
Page 2

      a. The identity of each employee (current and former) of Mylan who held such a belief;

      b. The time period when such person held that belief;

      c. Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d. All other information that formed a basis for the person's belief.

3. Mylan's knowledge and understanding of the laws, practices, and policies of California's State Medicaid agency, Medi-Cal, regarding reimbursement for Mylan's drug products, including Mylan's knowledge and understanding concerning Medi-Cal's use of published AWPs. Mylan's understanding of its obligation, if any, to understand such laws, practices, and policies.

4. Mylan's belief, if any, that the State of California, its Department of Health Care Services ("DHCS"), formerly known as Department of Health Services ("DHS"), or any employee thereof, had knowledge of the differences between each Mylan NDC's net costs to Medi-Cal providers and Mylan's AWPs for the same NDCs, including:

      a. The identity of each employee (current and former) of Mylan who held such a belief;

      b. The time period when such person held that belief;

      c. Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d. All other information that formed a basis for the person's belief.

5. Mylan's awareness, if any, of any directives and/or reports from the federal government, including any reports from the Department of Health and Human Services Office of Inspector General, suggesting that AWP may not reflect the cost to providers for Mylan's drugs. This topic shall include, but not be limited to, the following:

      a. The identity of each employee (current and former) of Mylan who became aware of any directives and/or reports from the federal government, including any reports from the Department of Health and Human Services Office of Inspector General, suggesting that AWP may not reflect the cost to providers for Mylan's drugs;

Sung Kim, Esq.
February 27, 2009
Page 3

      b. The time period when such person became aware of the information referenced;

      c. The events and circumstances that lead to such awareness;

      d. Each communication and the identity of each document relied upon, considered or used by the person in forming such awareness; and

      e. All other information that formed a basis for such awareness.

      f. Actions taken by Mylan in response to such directives and/or reports.

6. Mylan's awareness, if any, of the May 2003 publication of the Department of Health and Human Services Office of Inspector General entitled, "OIG Compliance Program Guidance for Pharmaceutical Manufacturers."

      a. The identity of each employee (current and former) of Mylan who became aware of such publication;

      b. All actions taken by Mylan in response to the May 2003 OIG publication entitled, "OIG Compliance Program Guidance for Pharmaceutical Manufacturers."

7. Whether Mylan ever communicated to anyone in the California Medicaid Program, Medi-Cal, that the AWP that Mylan reported to First DataBank, Redbook, or Medispan was not a price actually charged by wholesalers to providers or paid by wholesalers to Mylan for subject drugs and, if so, when such communications took place and of what they consisted.

8. Communications between Mylan and Generic Pharmaceutical Association ("GPhA"), from January 1, 1994 through the present, which contain any reference to the use of AMPs as a current or proposed component of any State Medicaid or Federal Medicare drug reimbursement system, including any reference to the use of AMPs as a current or proposed component or benchmark for Medi-Cal reimbursement.

9. Communications between Mylan and any State Medicaid agency, including Medi-Cal, or CMS, or its predecessor, from January 1, 1994 through the present, which contain any reference to the use of AMPs as a current or proposed component of any State Medicaid or Federal Medicare drug reimbursement system, including any reference to the use of AMPs as a current or proposed component or benchmark for Medi-Cal reimbursement.

Sung Kim, Esq.
February 27, 2009
Page 4

10. Communications between Mylan and any State Legislature, from January 1, 1994 through the present, which contain any reference to the use of AMPs as a current or proposed component of any State Medicaid or Federal Medicare drug reimbursement system, including any reference to the use of AMPs as a current or proposed component or benchmark for Medi-Cal reimbursement.

11. Communications between Mylan and any lobbying organization or individual, from January 1, 1994 through the present, which contain any reference to the use of AMPs as a current or proposed component of any State Medicaid or Federal Medicare drug reimbursement system, including any reference to the use of AMPs as a current or proposed component or benchmark for Medi-Cal reimbursement.

At your earliest convenience, but no later than March 11, 2009, please provide me with the names of Mylan's designee or designees, along with proposed dates when the deposition may go forward.

Sincerely,

Matthew Kilman
Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse

For   EDMUND G. BROWN JR.
      Attorney General

MK/agl
cc:   Nicholas N. Paul/SDAG