# Exhibit 12

FY 85 HCFA REGION IX

EAC SURVEY REPORT

CALIFORNIA MEDI-CAL PROGRAM

EAC PATROL INITIATIVE

*Rodriguez* 2
2.10.09

Dates of Review: 7/29/85 - 8/9/85

HCFA Reviewers (in alphabetical order):
    Frances Contreras
    Stonewall King (Region IV)
    John Koclanes (Region VIII)
    Ian McLean
    June Miller
    Lee Netzer
    Hiroshi Ozaki

DEPOSITION EXHIBIT 2
12-04-09

HHC016-0100

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Introduction and Background | Pages 1 - 3 |
| II. | Description of State's Drug Reimbursement Program | Pages 3 - 5 |
| III. | Scope and Methodology of HCFA Review | Page 5 |
| IV. | Discussion of Findings | Pages 5 - 8 |
| V. | Conclusions | Pages 8 & 9 |
| VI. | Summary of Major Review Findings | Pages 9 & 10 |

HHC016-0101

## I. INTRODUCTION AND BACKGROUND

Medicaid -- authorized by Title XIX of the Social Security Act (the Act) -- is a grant-in-aid program under which the Federal Government is currently paying from 50 to 78 percent of the costs incurred by States in providing medical services to persons unable to pay for such care. Certain medical services are required to be provided by the Act while others, such as prescription drugs, may be included in the program if a State so chooses. All 50 States now have a Medicaid program, and all except two States have elected to cover prescribed drugs. The Medicaid program is administered at the Federal level by the Health Care Financing Administration (HCFA) of the Department of Health and Human Services (DHHS). Fiscal Year (FY) 1985 Federal and State expenditures for the Medicaid prescription drug program were estimated to be $2.2 billion.

In 1975, DHHS, then known as the Department of Health, Education and Welfare (DHEW), believed that published average wholesale prices (AWPs), which were being used as a major pricing reference for reimbursement of prescription drugs in the Medicaid program, were not representative of the prices pharmacists paid for drugs. As a result, Federal regulations were published which stipulated that Medicaid reimbursement for prescription drugs must not exceed the lower of 1) the estimated acquisition cost (EAC) of the drug ingredient plus a reasonable dispensing fee or 2) the provider's usual and customary charge to the general public. As published in the Federal Register in July 1975, estimated rather than actual acquisition cost reimbursement was adopted as a result of widespread opposition to the potential difficulties pharmacists would incur in recordkeeping and invoicing procedures and the administrative problems of tracking deferred and cumulative discounts to pharmacists on their drug purchases.

The purpose of the EAC requirement in the regulations was to bring reimbursement for drug ingredients more in line with what pharmacists were actually paying in the marketplace for those items. However, the States have been allowed a great deal of latitude in establishing their EAC programs, and most States have continued to rely heavily on AWP as their EAC. This has occurred despite the fact that the 1975 regulations, in which the Department warned against the States' use of AWP

-1-

as the basis for acquisition costs, made clear that program agencies must make their estimates with as much precision as possible.

As this review will demonstrate, pharmacies generally purchase drugs at prices that are discounted significantly below AWP. Because of the widespread use of AWP by State Medicaid agencies, however, the Medicaid program does not always receive the full benefit of these differences between AWP and pharmacy invoice prices. AWPs are not determined by surveying market transactions and thus do not accurately reflect prices pharmacists pay for drug products. Against this background and a 108 percent increase in Medicaid drug expenditures from 1975 ($816 million) to 1982 ($1.7 billion), the Department's Office of Inspector General (OIG) initiated an intensive study of Medicaid drug reimbursement.

In 1982 and 1983 the OIG conducted on-site audits in six States (with inquiries to 41 other States) to determine the effectiveness of HCFA's present requirements in limiting reimbursement for prescription drugs to reasonable levels. Through those audits, which encompassed a review of 3,469 drug purchases, it was found that 99.6 percent of the purchases (all but 14 purchases) were made below AWP. These purchases indicated an average of 15.93 percent below AWP. The 14 purchases which were made at AWP or greater were generally made because of extenuating circumstances, such as special "fill-in" orders where discounts were not given because only one item was purchased.

The OIG report estimated that as much as $128 million ($72 million Federal share) could be saved annually through changes in program policy and regulations which would restrict the use of AWP as an upper limit in drug reimbursements. Projected over a 5 year period, this would amount to $360 million in Federal savings. Since the OIG audit was not able to readily determine other types of quantity, cumulative quantity, or year-end rebates and discounts which pharmacies may have received, it is quite possible that the potential savings to the Medicaid program could be substantially greater.

Because of the findings and recommendations revealed in the OIG report, the Dallas HCFA Regional Office took the lead by conducting similar reviews of State

-2-

drug reimbursement in its Region. The results of the Dallas review correlated closely with the OIG audit findings.

In March 1985, following the approach in Dallas, HCFA directed its other Regional Offices to determine if States are in compliance with current Federal regulations and HCFA guidelines. In this national effort, as part of HCFA's program to reduce overpayments and losses, HCFA Regional Offices are required to report on the progress of bringing EACs closer to what pharmacists pay for drugs.

The objective of this review is to determine whether California's EAC represents the "best estimate" of the prices pharmacists are paying for drugs reimbursable in the Medicaid program. Because the State relies so heavily upon AWP as the basis of its EAC, it was also decided to measure the effectiveness of AWP as a reliable predictor of what pharmacists pay for those drug items.

## II. DESCRIPTION OF STATE'S DRUG REIMBURSEMENT PROGRAM

The State of California entered the Medicaid program, referred to as Medi-Cal in the State, in March 1966. Prescription drugs have been a covered expenditure since the inception of the program. For the fiscal year ending June 30, 1985, $258 million was expended by the State in the reimbursement of these drugs. This represents the largest drug expenditure of any State in the nation.

California utilizes several effective methods aimed at limiting the reimbursement of drugs in the Medi-Cal program. The following is an explanation of these cost containment measures:

(1) Maximum Allowable Ingredient Cost (MAIC)

The State has set limits on reimbursement for certain high volume, multiple source drugs. State MAICs are established on over 150 multiple source items. This list of MAICs is periodically revised and price limits changed to reflect

-3-

current market conditions. Currently there are 57 drugs on which MAICs are applied.

(2) Maximum Allowable Cost (MAC)

The Federal government has identified 56 multiple source drugs where reimbursement is limited to a maximum allowable cost (MAC). The MAC program limits payments for these high volume drugs to the lowest price at which they are widely and consistently available. Between California's MAIC program and the Federal MAC program, a total of 62 unduplicated multiple source drugs are affected.

(3) Direct Price EAC

Certain major brands of drugs are reimbursed at the manufacturer's direct purchase price to pharmacies. These drugs are also sold by local wholesalers, but the alternative is to purchase directly from the manufacturer's outlet, thereby avoiding the middleman cost. Medi-Cal reimburses products dispensed by 12 major manufacturers at the industry's direct purchase price. These manufacturers account for approximately 31% of all drugs purchased in the Medi-Cal program.

(4) Bulk Package Size EAC

For 16 high volume drugs, the State's reimbursement rate is based on quantities of 500 or 1000. For all other drugs, reimbursement is based on package sizes of 100.

Reimbursement of drugs in the Medi-Cal program is limited to the lowest of:

a) EAC plus dispensing fee (The State's EAC consists of AWP, its MAIC program, direct price EAC and bulk package size EAC. California's dispensing fee is presently set at $4.05 per prescription.);
b) Federal MAC plus dispensing fee; or

-4-

c) The pharmacy's usual price to the general public.

It should be noted that, under the State's reimbursement methodology, pharmacists are required to dispense the lowest cost brand of a multiple source drug item in stock meeting the medical needs of the patient.

## III. SCOPE AND METHODOLOGY OF HCFA REVIEW

This review of drug items in California was confined to those drugs contained in the Medi-Cal Drug Formulary and was limited to drug purchases made during three one-month periods. The survey consisted of on-site visits to 20 pharmacies throughout the State where an attempt was made to identify 30 drugs at each pharmacy.

In order to ensure a non-biased survey, the pharmacies selected to participate in this review were identified by random means. This resulted in a diversified sample of pharmacies within the State; small, large, chain and independent -- even a major prepaid health plan was included in the review. Moreover, these pharmacies were situated in a wide variety of locations, both rural and urban. In the conduct of this review, HCFA survey teams journeyed from the desert to the sea and from the California-Oregon border to the southern tip of the State.

Similarly, the drugs selected for this survey were randomly chosen from representative pharmacy invoices. This was accomplished by using a random number generator to select up to 30 formulary drugs at each pharmacy. The resulting selection of drug items represents a wide variety of drugs.

## IV. DISCUSSION OF FINDINGS

As mentioned earlier, the purpose of this review is to evaluate both AWP and the State's EAC to determine their effectiveness in estimating the prices pharmacists

-5-

HHC016-0106

actually pay for drugs reimbursable in the Medicaid (Medi-Cal) program. In order to accomplish this, aggregate data comparisons were utilized as a gauge.

Aggregate figures take the total dollar volumes for each pricing mechanism to compute percentage differences. For example, one of the findings of this review was that, in the aggregate, pharmacists acquired drugs at 16.63 percent below AWP. This was derived by taking the total dollar amount of difference between AWP prices ($12,495.46) and pharmacy invoice prices ($10,417.63) for each of the drugs included in this survey. That difference ($2,077.83) was then divided by the AWP total dollar amount ($12,495.46) to arrive at the 16.63 percent figure.

For the comparisons that follow, it should be noted that only those invoice discounts that could be identified to a specific drug purchase were considered. We were not able to readily determine other types of quantity, cumulative quantity, or year-end rebates and discounts which pharmacies may have received.

A total of 489 separate drug purchases were included in this review, which covers the months of January 1985, April 1985 and May 1985. To study the drug purchases of each provider selected, the review identified up to 30 separate drug items at each pharmacy.

Since the Federal MAC program, which is not part of the State's EAC, was a factor in California's rate of reimbursement to providers, it was necessary to exclude all drugs where reimbursement was based upon the MAC limitation. There were 9 such drugs found in this review, thus reducing the sample size to 480 drug purchases.

In the aggregate, it was found that pharmacists purchased drug items for 16.63 percent below AWP and 8.30 percent below the State's EAC, while California's EAC was found to be 9.03 percent below AWP. While the State's reimbursement rate was based on AWP in 299 instances (62.29 percent of all drug transactions), pharmacy invoices reflect prices at or above AWP on only 51 drug purchases (10.63 percent of all drug transactions).

-6-

A comparison was performed to determine whether there was any difference between the discounts afforded chain vs. non-chain drug stores. There were a total of 5 chain stores included in this review. Although it was expected that chain drug stores would be able to purchase drugs at substantially lower prices, the invoices reviewed do not support that conclusion. The invoice prices for drugs purchased by these chain stores were only slightly lower than those of the non-chain providers (17.04 percent below AWP, as compared to 16.51 percent for non-chain pharmacies).

A total of 96 generic drugs were included in the 480 drug items encompassed by this review (20.0 percent). In the aggregate, pharmacists acquired these drugs at a lower price than non-generic drugs (22.14 percent below AWP versus 16.12 percent for non-generics). The most significant characteristic of generics, however, was the fact that the State's EAC relied on AWP as the basis for reimbursement in 3 out of every 4 drugs (of the 96 generics, AWP was the basis for reimbursement in 72 cases). In the aggregate, the State's EAC was found to be 7.67 percent below AWP for generic drugs. This compared unfavorably to the 22.19 percent off AWP reflected on pharmacy invoices for these drugs.

This review also included an analysis of antibiotic drugs. Providers acquired these drugs at 31.18 percent below AWP and 15.90 percent below the State's EAC, which was found to be, in the aggregate, 18.17 percent below AWP. For all drugs other than antibiotics, the aggregate invoice price was 15.68 percent below AWP and 7.86 percent below the State's EAC, which was found to be 8.49 percent below AWP.

An analysis was performed to determine whether there was any variation in invoice price or State EAC for drugs purchased direct from manufacturers, as opposed to purchases made through wholesalers. The study revealed that direct purchase from manufacturers resulted in a savings of over 5 percent to providers (19.83 percent below AWP for direct purchases, as compared to 14.77 percent below AWP for purchases made through wholesalers). The most interesting comparison between direct purchase and purchase through wholesalers was that of the State's EAC for each of these categories. While the EAC price was found to be 16.27 percent

-7-

HHC016-0108

below AWP on direct purchases, it was only 4.90 percent below AWP on purchases made through wholesalers.

## V. CONCLUSIONS

It is apparent from this review that AWP is not a reliable predictor of the prices pharmacists actually pay for drugs. This is evidenced by the fact that, in the aggregate, pharmacists acquired drugs at 16.63 percent below AWP for the 480 drugs included in this survey.

The State of California has instituted several innovative cost containment measures to limit the reimbursement of drugs in the Medicaid (Medi-Cal) program. These efforts are favorably reflected in the State's EAC, which was found to reimburse providers at 9.08 percent below AWP. In spite of this, the State relies on AWP as its EAC in over 62 percent of all drug transactions.

Noteably, for the drugs where the State did not rely upon AWP as the basis of its EAC, California's reimbursement very nearly approximated the costs incurred by pharmacists in purchasing drugs. In fact, in the aggregate, the State's EAC was 1.65 percent below invoiced pharmacy prices for drugs subject to State established controls. This contrasts sharply to the drugs where the State relied upon AWP as its EAC. Pharmacy invoices reflect an aggregate discount of 15.73 percent off the State's EAC for the drugs where California has not established any cost containment measures.

In light of the above, it is apparent that there is still room for improvement in the State's EAC. This is evident from the drugs for which the State has not established any controls (i.e., those drugs where the State relies solely on AWP as its EAC). This is especially evident in the area of generic drugs, which represent 20 percent of all drugs included in this review. For these drugs, the State relied upon AWP as its EAC 75 percent of the time.

-3-

HHC016-0109

The importance of establishing controls is equally evident in the area of antibiotic drugs, which constitute 11.25 percent of all drugs encompassed by this survey. In the aggregate, invoice prices were 31.18 percent below AWP for these drugs. Although the State's EAC was, in the aggregate, 18.17 percent below AWP for antibiotics, it was, nevertheless, 15.90 percent above invoice prices.

While the State's EAC was significantly less than AWP, it was nevertheless, in the aggregate, 8.3 percent above provider costs, as represented by pharmacy invoices. Since the EAC should reflect the prices pharmacists are actually paying in the marketplace for drugs, the State needs to refine its EAC program further to more closely approximate the costs being incurred by providers. In doing so, it is estimated that millions of dollars can be saved annually.

## VI. SUMMARY OF MAJOR REVIEW FINDINGS

The following summarizes major HCFA findings evolving out of the EAC survey in California:

1. Number of drug purchases reviewed — 489
2. Purchase to which Federal MAC limitation was applied — 9
3. Sample size considered in this review — 480
4. Number of instances in sample where State's EAC was based upon AWP — 299 (62.29%)
5. Aggregate percentage by which AWP exceeded drug ingredient costs incurred by pharmacies — 16.63%
6. Aggregate percentage by which the State's EAC exceeded invoiced pharmacy costs — 8.3%

-9-

HHC016-0110

| | | |
|---|---|---|
| 7. | Number of generic drugs included in sample | 96 (20.0%) |
| 8. | Aggregate percentage by which AWP exceeded invoiced pharmacy costs for generic drugs | 22.14% |
| 9. | Aggregate reduction off AWP by State's EAC for generic drugs | 7.67% |
| 10. | Aggregate percentage by which AWP exceeded pharmacy ingredient costs for antibiotic drugs | 31.18% |
| 11. | Aggregate percentage by which the State's EAC exceeded pharmacy ingredient costs for antibiotic drugs | 15.90% |
| 12. | Aggregate percentage by which State's EAC exceeded invoiced pharmacy costs where reimbursement was based solely on AWP (i.e., drugs for which the State has not established any controls) | 13.73% |
| 13. | Aggregate percentage by which pharmacy costs exceeded State's EAC when the State did not use AWP as its EAC | 1.65% |

-10-

HHC016-0111   L