UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: <br> TRACK 2 SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS <br> Judge Patti B. Saris |

## DECLARATION OF JEFFREY S. GOLDENBERG

I, Jeffrey S. Goldenberg, under penalty of perjury pursuant to 28 U.S.C. 1746, declare as follows:

1. I state the following based upon my personal knowledge.

2. I am an attorney licensed to practice by the State of Ohio since 1994. I am presently, and have been since 1994, in good standing with the Supreme Court of Ohio.

3. I have over ten years of experience in complex civil and class action litigation representing plaintiffs, including several cases that resulted in nationwide class action settlements.

4. In late 2007, I was asked by Steve Berman of Hagens Berman Sobol Shapiro LLP to serve as allocation counsel representing the interests of the consumers who would be covered by the Track 2 Drugs AWP Settlement in the litigation titled *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civ. No. 01-CV-12257-PBS.

{00021425; 1}

5. Alex Sugerman-Brozan who was the Director of Prescription Access Litigation at that time also served as allocation counsel representing the interests of the consumers.

6. Mark D. Fischer and Richard W. Cohen served as allocation counsel representing the interests of the third-party payors ("TPPs").

7. The Track 2 settlement involved three separate classes: (1) Class I – all natural persons from January 1, 1991 through January 1, 2005 who made or incurred an obligation to make a Medicare Part B co-payment for a covered drug; (2) Class II – all TPPs during the same time period who reimbursed or incurred an obligation to reimburse a Medicare Part B co-payment for a covered drug; and (3) Class III – all natural persons and TPPs who incurred payments for Medicare Part B drugs outside of the Medicare context from 1991 through the date of the settlement.

8. The allocation mediation took place in Boston, Massachusetts on December 18, 2007 at the offices of the Eric D. Green, Resolutions LLC, 222 Berkeley Street, Suite 1060, Boston, Massachusetts 02116. Mr. Green served as the mediator.

9. During the mediation, Alex Sugerman-Brozan and I vigorously represented the interests of the consumers by successfully establishing early in the mediation process that the sympathetic consumers were one of the primary forces behind the success of this litigation. Alex and I argued that the faceless corporate TPPs would not have been so successful but for the involvement of the consumers.

10. Early in the mediation, all allocation counsel agreed that Dr. Hartman's damage allocation charts should serve as the foundation for the allocation of the settlement dollars.

11. Alex Sugerman-Brozan and I then advocated for a mechanism that would recognize the key role played by the consumers as discussed above in paragraph 9.

12. Eventually, an allocation formula was agreed upon that applied a multiplier of 3 to the Class I utilization percentages.

13. By adopting the 3x multiplier and applying it to the utilization numbers provided by Dr. Hartman, Class I's share of the $100,000,000 set aside for brand name drugs rose from 5.5% ($5,500,000) as reflected in Dr. Hartman's utilization numbers, to 13.2% ($13,200,000), as contained in the final proposed allocation.

14. The same 3x multiplier approach was adopted for the $25,000,000 set aside for the multisource/generic drugs covered by the settlement.

15. By adopting the 3x multiplier and applying it to the utilization numbers provided by Dr. Hartman, Class I's share of the $25,000,000 set aside for generic drugs rose from 16.5% ($4,134,000) ) as reflected in Dr. Hartman's utilization numbers, to 25.6% ($6,396,000), as contained in the final proposed allocation.

16. Regarding Class III, 3.5% of the total damage amounts assigned to Class III were allocated to consumers. The 3.5% figure was based upon a determination by Dr. Hartman. No multiplier was utilized for Class III because these were considered the weakest of the consumer claims because there was no statutory or regulatory basis requiring the use of AWP. The total amount of Class III damages allocated to consumers was $2,308,000.

17. By adopting the above described approach, the consumer allocation of the $125,000,000 settlement amount totaled $21,864,000 (17.5%).

18. Attached as Exhibit A is the final allocation agreement agreed upon at the allocation mediation. This agreement reflects Dr. Hartman's utilization numbers and the adjustments made thereto as discussed above.

19. During the mediation, the TPP allocation counsel lobbied intensely for a spillover to the TPPs of any remaining funds not paid out to consumers through the claims process.

20. Alex Sugerman-Brozan and I vigorously opposed such a spillover provision and advocated that any consumer funds remaining after the claims process should be distributed in a manner that benefits consumers, either directly or indirectly, including but not limited to direct payments to consumers or a court-approved cy pres mechanism. We did not advocate that any remaining consumer settlement funds should go to any specific consumer organizations in cy pres.

21. And to maximize the settlement dollars allocated to consumers through the settlement process, we advocated for, and were successful in obtaining, a treble damages payment for certain valid consumer claims.

22. Eventually, the impasse with TPP counsel regarding the spillover issue, was resolved by an agreement to submit the issue to Judge Saris for a binding determination if surplus consumer funds remained.

23. Another issue raised by Alex Sugerman-Brozan and I was that the claim form and the claim process should not be complicated. All allocation counsel and the mediator agreed, and it is my understanding that this principle has been incorporated into the settlement claim process.

24. I recently read Donald E. Haviland, Jr.'s Revised Memorandum in Opposition to Approval. Based upon my experience and involvement in the AWP Track 2

{00021425; 1}

Settlement funds allocation process as discussed above, I did not see, nor am I aware of any evidence demonstrating any effort or conspiracy to funnel settlement funds to consumer organizations such as PAL or its members. To the contrary, I vigorously represented the interests of the consumers throughout this process and fought for the interests of consumers.

So declared this 3nd day of April, 2009, Cincinnati, Ohio.

_____
Jeffrey S. Goldenberg

{00021425; 1}

# EXHIBIT A

# AWP Track 2 Settlement Allocation Between Consumers and Third Party Payors

# December 18, 2007

I. <u>ALLOCATION OF $100M FOR AVENTIS, AMGEN, WATSON:</u>

A. Computation based on Hartman utilization numbers adjusted by trebeling for Class 1 consumers, doubling for Class 2 TPP's, and single damages for Class 3:

|  | RH utiliz | % share ($S in millions) | multiplier | Adjusted % share ($$ in millions) | Adjusted share of $100m (prev col ÷ 1.26) |
|---|---|---|---|---|---|
| Class 1 | $17,548,098 | 5.527 | 3 | $16.581 | $13,159,524 |
| Class 2 | $47,797,023 | 15.055 | 2 | $30.110 | $23,896,825 |
| Class 3 | $252,135,098 | 79.417 | 1 | $79.417 | $63,029,365 |
| TOTAL | $317,480,219 | 100 |  | $126.108 | $100m |

B. Class 3 damages allocated 3.5% to consumers:

   $63,029,365 x 0.035 = $2,206,028

C. Consumer allocation =           $13,159,524        Class 1
                                    2,206,028         Class 3 3.5% share
   **Total consumer share =**       **$15,365,552**   (15.4%)

D. **Third Party Payor allocation =**   $100,000,000
                                        -15,365,552
                                        **$84,634,448**     (84.6%)

AWP Track 2 Settlement Allocation
December 18, 2007
Page 2

II. ALLOCATION OF $25M FOR OTHER DEFENDANTS

A. Computation based on Hartman utilization numbers adjusted by trebling for Class 1 consumers, doubling for Class 2 TPP's, and single damage for Class 3:

|         | % of $25m | Single damage share of $25m | multiplier | Adjusted damages | Adjusted % of $25m | Allocated amount |
|---------|-----------|------------------------------|------------|------------------|--------------------|------------------|
| Class 1 | .165374   | $4,134,400                   | 3          | $12,403,200      | 25.585%            | $6,396,250       |
| Class 2 | .608386   | $15,209,650                  | 2          | $30,419,300      | 62.748%            | $15,687,000      |
| Class 3 | .226238   | $5,655,950                   | 1          | $5,655,950       | 11.667%            | $2,916,750       |
| TOTAL   | 1.00      | $25,000,000                  |            | $48,478,450      | 100%               | $25,000,000      |

A. Class 3 damages allocation 3.5% to consumers:

$2,916,750 x 0.035 = $102,086

B. Consumer allocation =         $6,396,250
                                  102,086
   **Total consumer share =**     $6,498,336   (26%)

C. **Third Party Payor allocation =**   $25,000,000
                                        - 6,498,336
                                        $18,501,664   (74%)

III. ALLOCATION OF TOTAL $125 M SETTLEMENT AMOUNT*

**Consumer Allocations**          **TTP Allocations**

$15,365,552                       $84,634,448
  6,498,336                        18,501,664
$21,863,888   (17.5%)             $103,136,112   (82.5%)

* If class period is reduced, ~~$25~~ $125m m shall be adjusted to ~~$26~~ $120m m utilizing same methodology.

## **CERTIFICATE OF SERVICE**

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, DECLARATION OF JEFFREY S. GOLDENBERG, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                            **/s/ Steve W. Berman**
                                            Steve W. Berman