UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: <br><br> TRACK 2 SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS <br><br> Judge Patti B. Saris |

**DECLARATION OF ALEX SUGERMAN-BROZAN, CO-CONSUMER
ALLOCATION COUNSEL, IN SUPPORT OF FINAL APPROVAL
<u>OF THE TRACK TWO SETTLEMENT</u>**

I, Alex Sugerman-Brozan, under penalty of perjury pursuant to 28 U.S.C. 1746, declare as follows:

1. I state the following based upon my personal knowledge.

2. I am an attorney licensed to practice in the Commonwealth of Massachusetts since January 2002. I have been admitted to practice before the U.S. District Court for the District of Massachusetts since December 2004.

3. From March 2004 through January 2009 I was the Director of the Prescription Access Litigation Project LLC ("PAL"), a project of Community Catalyst, Inc., a nonprofit organization.

4. During the approximately five years I was the Director of PAL, I made it one of the goals of PAL to ensure that settlements reached in any pharmaceutical litigation involving consumers provided consumers with fair compensation and that other provisions of those settlements, such as notice and claims administration procedures, were as consumer friendly as possible.

5. During my time as the Director of PAL I have been involved directly or indirectly in the following settlements:

    a. Settlements with GlaxoSmithKline and AstraZeneca in the instant MDL.

    b. *New England Carpenters Benefits Fund, et al. v. First DataBank and McKesson*

    c. *Hoorman, et al. v. SmithKline Beecham Corporation d/b/a GlaxoSmithKline* (PAL was an objector to the settlement)

    d. *AFSCME DC 37 Health & Security Plan, et al. v. EMD Serono*

    e. *Carpenters & Joiners Welfare Fund, et al. v. SmithKline Beecham d/b/a GlaxoSmithKline* (representing objectors to settlement)

    f. *In re Relafen Antitrust Litigation*

    g. *Ryan-House, et al. v. GlaxoSmithKline*

6. I have appeared in front of this Court with respect to various issues related to settlements in this MDL as well as in the above-referenced *McKesson* and *EMD Serono* cases.

7. In late 2007 I was contacted by Steve Berman of Hagens Berman Sobol Shaprio LLP to serve as co-allocation counsel representing the interests of consumers who would be included in the Proposed Track Two AWP Settlement (the "Settlement").

8. The allocation meeting took place in Boston on December 18, 2007 in the offices of Eric Green, Resolutions LLC. Mr. Green served as the mediator for purposes of the allocation meeting.

9.      I was joined during the meeting by Rishi Garg, staff attorney for PAL at that time.  During part of the meeting, Lisa Kaplan Howe, a representative of Health Care For All, a plaintiff in the case, and a consumer advocacy organization dedicated to making health care affordable and accessible to consumers, was also present.  Jeffrey Goldenberg, an attorney from Ohio with experience in class action litigation and nationwide class action settlements was also appointed as co-allocation counsel representing the interests of consumers.

10.     During the mediation Attorney Goldenberg and I shared the same goal – to negotiate the best allocation and settlement terms for the consumer classes as possible given the facts of the case.  We both were of the opinion that consumers and the damages suffered by consumers played a key role in brining the litigation to a potentially successful settlement.

11.     The parties to the negotiation agreed on an initial split between each of Classes 1, 2 and 3 based primarily upon the utilization numbers and damage allocation numbers provided by Raymond Hartman's office.  Because it was recognized that consumers in Class 1 had the strongest and most sympathetic claims it was decided that a multiplier of three (3x) would be applied to their share of each of the $100 million set aside related to the named brand manufacturers and the $25 million allocated to the generic manufacturers.  Given the statutory framework under which TPP MediGap insurers were required to operate it was decided their percentage would be multiplied by a factor of two (2x).  The remaining Class 3 was allocated a straight percentage without a multiplier.

12. After the multiplier was applied to each class's absolute damage percentage, each class's percentage of the total was reduced proportionately to account for the fact that there was only $100 million (or $25 million) to distribute. As an example, Class 1 purchases of named brand manufacturer products originally represented 5.5% of all of the purchases of those products. A factor of 3 was applied, bringing their percentage to 16.5% (or $16.5 million out of $100 million). Because the total amount to distribute in this calculation was $100 million and applying the multipliers to Class 1 and 2 meant the combined percentage of all classes would then exceed 100, each class's percentage was reduce proportionately. After reduction Class 1 was allocated $13.2 million or 13. 2 % of the $100 million.

13. Because there were also consumers making payments in Class 3 there needed to be a breakout of monies allocated to Class 3 for consumers. Based on information provided by Ray Hartman's office concerning damages associated with consumers in Class 3, it was determined that 3.5% of the total damages allocated to Class 3 should be allocated to consumers and the rest to TPPs.

14. Based on the total percentages for each of Class 1 consumers and Class 3 consumers, for named brand drugs, consumers were allocated a total of 15.4% of the $100 million. The remaining 84.6 % was allocated to TPPs in Class 2 and Class 3.

15. Based on the total percentages for each of Class 1 consumers and Class 3 consumers for multisource drugs, consumers were allocated a total of 26% of the $125 million. The remaining 74% was allocated to TPPs in Class 2 and Class 3.

16.     When the allocations for consumers and TPPs were combined, of the total settlement of $125 million, consumers were allocated $21.8 million or $17.5% of the total settlement and TPPs were allocated $103.1 million or 82.5 %.

17.     These calculations, along with the information on utilization obtained from Dr. Hartman, are all reflected in memorandum that was created at the mediation and signed by each of the participants.  A copy of that document is attached as Exhibit A.

18.     In addition to negotiating the allocation between consumer and TPPs, the parties also discussed the disposition of any funds allocated to consumers that did not get distributed in the claims process.  TPP allocation counsel advocated strongly for a provision that would allow any consumer funds that were undistributed to be paid to TPPs.  Jeff Goldenberg and I resisted the inclusion of any such provision in the Settlement, arguing that any such residual consumer monies should be distributed for the benefit of consumers, not paid to TPPs.

19.     Ultimately Class Counsel, Allocation Counsel for the TPPs, Jeff Goldenberg and I all agreed, in the event that any consumer funds remained after full payments were made to consumer class members who made claims, to allow the Court to make a binding determination as to the disposition of those funds.

20.     I have been made aware of allegations brought by various objectors to the Settlement claiming that the amounts allocated to consumers was too low and that consumers were not adequately represented in the allocation negotiations.

21.     The allocation negotiations were hard fought, were conducted at arms' length between consumer and TPP allocation counsel.  Attorney Goldenberg and I

vigorously represented the interests of consumers in this process and I believe the result is fair and reasonable.

22. In the months that followed I also took it upon myself to consult with Class Counsel as the details of the notice to consumers and the proposed claims process were worked out. I provided input into that process. The results were a much streamlined process that provides consumers easier methods of obtaining a portion of the settlement than had previously existed in other settlements in which I have been involved.

23. Of particular import to PAL was the inclusion of an option for Class 3 consumers to elect to receive a flat cash payment in lieu of providing medical records to document a claim for a full refund. We felt that inclusion of a flat payment option of at least $25 would motivate consumers not otherwise inclined to look for medical records to participate in the settlement. While the details of the claims process was being developed by Class Counsel I had a number of conversations with Class Counsel regarding this issue as well as with various PAL member organizations who represent the interests of consumers. Class Counsel agreed with our suggested approach and included a $35 "easy refund" option as part of the distribution plan with respect to Class 3 consumers.

Dated April 9, 2009

                                       /s/ Alex Sugerman-Brozan
                                       Alex Sugerman-Brozan

## **CERTIFICATE OF SERVICE**

       I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, DECLARATION OF ALEX SUGERMAN-BROZAN, CO-CONSUMER ALLOCATION COUNSEL, IN SUPPORT OF FINAL APPROVAL OF THE TRACK TWO SETTLEMENT, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                    **/s/ Steve W. Berman**
                                                    Steve W. Berman

# EXHIBIT A

# AWP Track 2 Settlement Allocation Between Consumers and Third Party Payors

# December 18, 2007

I. <u>ALLOCATION OF $100M FOR AVENTIS, AMGEN, WATSON:</u>

A. Computation based on Hartman utilization numbers adjusted by trebeling for Class 1 consumers, doubling for Class 2 TPP's, and single damages for Class 3:

|         | RH utiliz     | % share ($S in millions) | multiplier | Adjusted % share ($$ in millions) | Adjusted share of $100m (prev col ÷ 1.26) |
|---------|---------------|--------------------------|------------|-----------------------------------|-------------------------------------------|
| Class 1 | $17,548,098   | 5.527                    | 3          | $16.581                           | $13,159,524                               |
| Class 2 | $47,797,023   | 15.055                   | 2          | $30.110                           | $23,896,825                               |
| Class 3 | $252,135,098  | 79.417                   | 1          | $79.417                           | $63,029,365                               |
| TOTAL   | $317,480,219  | 100                      |            | $126.108                          | $100m                                     |

B. Class 3 damages allocated 3.5% to consumers:

$63,029,365 x 0.035 = $2,206,028

C. Consumer allocation =           $13,159,524        Class 1
                                    2,206,028         Class 3 3.5% share
   **Total consumer share =**      **$15,365,552**    (15.4%)

D. **Third Party Payor allocation =**   $100,000,000
                                         -15,365,552
                                         **$84,634,448**        (84.6%)

II. ALLOCATION OF $25M FOR OTHER DEFENDANTS

A. Computation based on Hartman utilization numbers adjusted by trebeling for Class 1 consumers, doubling for Class 2 TPP's, and single damage for Class 3:

|  | % of $25m | Single damage share of $25m | multiplier | Adjusted damages | Adjusted % of $25m | Allocated amount |
|---|---|---|---|---|---|---|
| Class 1 | .165374 | $4,134,400 | 3 | $12,403,200 | 25.585% | $6,396,250 |
| Class 2 | .608386 | $15,209,650 | 2 | $30,419,300 | 62.748% | $15,687,000 |
| Class 3 | .226238 | $5,655,950 | 1 | $5,655,950 | 11.667% | $2,916,750 |
| TOTAL | 1.00 | $25,000,000 |  | $48,478,450 | 100% | $25,000,000 |

A. Class 3 damages allocation 3.5% to consumers:

$2,916,750 x 0.035 = $102,086

B. Consumer allocation =        $6,396,250
                                 102,086
   **Total consumer share =**    $6,498,336   (26%)

C. **Third Party Payor allocation =**   $25,000,000
                                         - 6,498,336
                                         $18,501,664   (74%)

III. ALLOCATION OF TOTAL $125 M SETTLEMENT AMOUNT*

**Consumer Allocations**            **TTP Allocations**

$15,365,552                         $84,634,448
 6,498,336                           18,501,664
$21,863,888   (17.5%)               $103,136,112   (82.5%)

\* If class period is reduced, $125m shall be adjusted to $120m utilizing same methodology.