UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>TRACK 2 SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**DECLARATION OF WELLS WILKINSON IN SUPPORT OF FINAL APPROVAL OF THE TRACK TWO SETTLEMENT**

I, Wells G. Wilkinson, under penalty of perjury pursuant to 28 U.S.C. 1746, declare as follows:

1. I state the following based upon my personal knowledge.

2. I am an attorney licensed to practice in the Commonwealth of Massachusetts since December 1, 2006. I am presently, and have been since December 1, 2006, a member in good standing with the Supreme Judicial Court of Massachusetts. I am admitted to practice in the United State District Court for the District of Massachusetts.

3. I have served as the Associate Director and Staff Attorney of the Prescription Access Litigation, LLC ("PAL") since April 28, 2008.

**Background on PAL**

4. PAL is a national coalition of more than 130 organizations, including consumers, seniors, heath care, labor, legal services, women's health, and human services groups in 36 states and the District of Columbia. Our members in the Commonwealth of Massachusetts are Boston Building Service Employee Trust Fund (SEIU Local 615),

Commonwealth Care Alliance, Community Catalyst, IUOE Local 4 Health and Welfare Fund, IUOE Local 98, Health Care For All Inc., Health Law Advocates, Lynn Health Task Force, Massachusetts Breast Cancer Coalition, MASSPIRG, Massachusetts Senior Action Council, New England Regional Council of Carpenters, Our Bodies Ourselves, Pipefitter's Local 537 Trust Funds, SEIU Local 615, Sheet Metal Workers Local Union 17 Insurance Fund, TeamstersCare, and Women's Health Institute.

5.  PAL's mission is to make prescription drug prices more affordable for consumers. We seek to accomplish this mission through public education and class action litigation challenging illegal pricing tactics and deceptive marketing by drug companies, Pharmacy Benefit Managers, and other pharmaceutical industry players. PAL and its members have been involved in more than 32 class action lawsuits challenging drug industry tactics to illegally raise the price of prescription drugs. There have been 10 final settlements in these cases (for a combined total of $599 million). These settlements have allowed consumers and health plans who were illegally overcharged to be reimbursed, while putting drug companies on notice that their illegal tactics will not go unopposed.

6.  PAL is a project of Community Catalyst, Inc, a non-profit organization dedicated to building a strong consumer voice in health care reform.

**PAL's Position on improving consumer participation in settlements**

7.  While one of the goals of PAL is to ensure that settlements reached in any pharmaceutical litigation involving consumers provide consumers with fair compensation, another important goal for PAL is that other provisions of those settlements, such as notice and claims administration procedures, be as consumer-friendly

as possible. Simply put, our desire is that as much money as possible be returned to consumers who have suffered damage at the hands of the pharmaceutical industry. This is true of litigation in which PAL coalition members serve as lead plaintiffs, and other prescription drug litigation settlements that were not brought by PAL members. For instance, in the pediatric Paxil consumer litigation (*Hoorman et. al. v. SmithKline Beecham Corporation d/b/a GlaxoSmith Kline*) PAL objected on behalf of consumers. In the pediatric Paxil TPP settlement (*Carpenters & Joiners Welfare Fund et. al. v. SmithKlineBeecham d/b/a GalxoSmith Kline*), PAL recruited several coalition member TPPs to object to the settlement, and served as their counsel, in order to achieve a fairer, easier claims process that did not discriminate against small non-profit TPPs.

8. Historically, some prescription drug litigation cases ended with dollars unclaimed by consumers "spilling over" to satisfy third party payor claims. PAL's position has been to oppose spill over, and to advocate for payouts that reach more consumers, and that provide maximum reimbursement to consumer claims.

**PAL's Position on *Cy Pres***

9. Notwithstanding this goal, we recognize that there are occasions in class cases when unclaimed settlement monies remain after a distribution has occurred, creating the prospect that the leftover funds may be paid in *cy pres* to advance consumer.

10. To the extent that *cy pres* funds are ever available in class litigation, we would encourage any such funds be used for consumer benefits through advocacy programs specifically created to address the harm to consumers in the litigation. However, it remains PAL's position that settlement funds earmarked for consumers should, first and foremost, go directly to affected class members.

11. PAL does have a "*cy pres*" tab on our website. This page simply states "**Cy Pres** Details coming soon... If you are interested in proposing PAL as a *cy pres* recipient in a lawsuit, please contact us." The words "contact us" contain a link that redirects website users to a page with PAL's phone number and email. Thus the *cy pres* tab on our website is incomplete.

12. PAL does not have a policy that would preclude us from applying for cy pres funds in any litigation. To my knowledge PAL has never applied for nor received any *cy pres* funds from any litigation or settlement.

13. PAL's parent organization, Community Catalyst, received $613,000 in cy pres funds from settlements in anti-trust prescription drug litigation, in which PAL members were involved, concerning the drugs Relafen and Augmentin. Community Catalyst used these funds to establish *Generics Are Powerful Medicine* (GPM) a national consumer education program that uses grassroots outreach techniques to educate low-income and underinsured populations about the safety, value and effectiveness of generic drugs. Community Catalyst administered the GPM program to support consumer education and awareness activities in states where consumer anti-trust claims in Relafen and Augmentin were viable. Thus the cy pres award was custom-tailored to address the damages in the Relafen and Augmentin lawsuits. Community Catalyst was not a plaintiff in either of these lawsuits.

14. GPM carries out its work in collaboration with local groups that educate consumers about generic drugs, funded through sub-grants. Out of 77 sub-grant applications received by GPM, twenty (20) came from PAL member organizations, including one from a lead plaintiff in the Relafen litigation, United Senior Action of

4

Indiana. Of the 20 PAL member groups that applied, four (4) received sub-grants of between $17,500 and $20,000, out of the total $ 212,951 in sub-grants awarded to eleven (11) organizations. Relafen plaintiff United Senior Action of Indiana received a sub-grant of $17,000 in order to educate consumers about the benefits of generic drugs.

15. It is reasonable that some of the advocacy organizations that have joined PAL to support our mission of promoting access to prescription drugs would also be interested in receiving sub-grants, in order to participate in public education and advocacy to promote the use of generic drugs.

16. It is my understanding that Community Catalyst has administered other cy pres awards that arose from class action litigation affecting health care consumers that was unrelated to PAL or prescription drugs.

17. It is my understanding that Community Catalyst administered $125,000 from a series of California and Florida state court actions against a manufacturer of a dietary supplement. These monies funded the work of the Health Care Access Rider Project, which supported outreach to underserved women and their families in order to improve their access to health care services.

18. It is my understanding that Community Catalyst is administering a $3.6 million cy pres award by California Superior Court to create the Hospital Accountability Project (HAP), an initiative to improve health care services provided to the underinsured by hospitals in the 15states where defendant Tenet Healthcare had allegedly harmed consumers. Of this amount, $2.1 Million is being distributed to lead grantees in 15 states, with some of these funds further shared with other groups working in coalition with the lead grantees. Four PAL members have received lead grants from the HAP program:

Florida CHAIN, Health Care For All/Health Law Advocates, Nebraska Appleseed Center for Law, and the Tennessee Health Care Campaign. Other members of PAL may be among the many organizations that will share in the sub-granting process, but I am unable to describe these details at this time. The amount sub-grant funding is allocated based upon the number of hospital beds Tenet Corporation had in each of these 15 states.

19. At the time that the court in the Tenet litigation approved the cy pres award to create HAP, Community Catalyst was considered a leading expert in advocacy around hospital financing reform, charity care, and community benefits.

20. Based upon the interests of certain settlement classes related to HIV/Aids Norvir, PAL negotiated with Class Counsel to craft a cy pres award of approximately $7 Million to $19.25 Million offered in lieu of the injunctive relief of a price reduction of the drug. PAL advocated that the group of recipients must be expanded from 3 or 4 to the ultimate 13, so as to allow the cy pres award to have a national scope. In addition, PAL advocated that the groups participating have diversity in terms of geography and constituency, so that the cy pres benefits were best directed to class members, current or future users of the Norvir drug nationwide. Two of the final 13 cy pres designees are PAL members, but neither was a plaintiff in the Norvir litigation.

**The positions of Community Catalyst and PAL on *Cy Pres* in the Lupron Litigation**

21. In the *Lupron* case, I understand that there are approximately $11.4 million in unclaimed consumer-allocated funds. The Court there is considering how to dispose of these monies.

22. I understand that Community Catalyst, along with some of the Class Counsel in the Lupron litigation, prepared several iterations of a proposal to design and

implement a multi-state program to educate uninsured and underinsured men about testing and treatment of prostate cancer. Community Catalyst's final proposal was based on an equal sharing of these remaining funds to fund both a scientific research program, and a patient education awareness program. Community Catalyst would have carried out the patient education program through a process of distributing grants to qualifying applicant organizations that served the target constituency -- current and future consumers of Lupron.

23. Through my efforts personally, PAL advocated a contrary position to that of Community Catalyst. I argued that the remaining funds should be used first to funds renewed efforts, utilizing previously unavailable CMS data (in a manner similar to what this Court has done in the *AWP* litigation) to identify and fund claims from the estimated 93% of the consumer class that had not yet participated in the Lupron claims process.

24. Secondary to this priority, I argued on PAL's behalf that only if the renewed CMS-data based claims proposal was rejected by the court, PAL supported cy pres in the Lupron litigation as an alternative to any spill-over to fund claims by the TPP segment of the class. PAL feels that such a spillover would both deprive the consumer segment of the class of any benefit from the spilled funds, and it would set a bad precedent for consumers in future litigation.


Dated: April 9, 2009.


*[signature]*
Wells G. Wilkinson

## **CERTIFICATE OF SERVICE**

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, DECLARATION OF WELLS WILKERSON IN SUPPORT OF FINAL APPROVAL OF THE TRACK TRACK TWO SETTLEMENT, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                         **/s/ Steve W. Berman**
                                         Steve W. Berman