# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————————— ) | **MDL No. 1456** |
| **IN RE PHARMACEUTICAL INDUSTRY** ) | **Master File No. 01-12257-PBS** |
| **AVERAGE WHOLESALE PRICE LITIGATION** ) | **Subcategory Case No. 06-11337** |
| ———————————————————— ) | |
| ) | **Judge Patti B. Saris** |
| **THIS DOCUMENT RELATES TO:** ) | |
| *State of California, ex rel. Ven-A-Care v.* ) | **Magistrate Judge** |
| *Abbott Laboratories, Inc., et al.* ) | **Marianne B. Bowler** |
| Case No:  1:03-cv-11226-PBS ) | |
| ———————————————————— ) | |

## STATE OF CALIFORNIA'S [PROPOSED] REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER RELATING TO CERTAIN RULE 30(b)(6) DEPOSITION TOPICS PROPOUNDED BY DEFENDANTS

California submits this reply memorandum in support of its motion for a protective order, pursuant to Federal Rule of Civil Procedure 26(c), prohibiting Defendants Dey, Inc., Dey, L.P., Mylan Inc., Mylan Pharmaceuticals Inc., Sandoz Inc., and Warrick Pharmaceutical Corp. ("Defendants") from subjecting government witnesses (attorneys) to depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) on 21[1] of Defendants' 68 topics.

The core issue raised in California's motion for a protective order (MPO) is whether the discovery sought by Defendants should instead be pursued by more appropriate discovery mechanisms, e.g., contention interrogatories, rather than subjecting California's attorneys to deposition under the aegis of Rule 30(b)(6).  California has *never* argued that it should be protected from responding, in any fashion, to Defendants' discovery inquiries regarding the 22 topics at issue.  Instead, California has consistently contended that it "object[s] to Topics [1

---

[1] As Defendants were advised by letter on April 16, 2009, California has withdrawn its objections regarding Topic 15, and will produce a witness to testify on that topic at the next Rule 30(b)(6) deposition, scheduled for May 6, 2009.

through 14, 16, 58-59 and 64-66] as inappropriate, in their entirety, *for a Rule 30(b)(6) deposition*." (*See* California's memorandum in support of motion for protective order (MPO), Ex. C, p. 1)(emphasis added).

Defendants' Opposition (Opp.) argues that California's invocations of attorney-client privilege and work-product doctrine are insufficient and premature. California submits that privilege issues here, in conjunction with the unmistakable intent to depose attorneys from the California Department of Justice (CA DOJ) (the only witnesses with sufficient knowledge of the legally significant facts underpinning the fraud and falsity allegations at issue in California's complaint and pre-filing investigation), are so manifest that the Court may properly determine that a protective order is warranted.

California has substantially accommodated Defendants in scheduling an extensive barrage of depositions conducted over the previous 13 months. These include the preparation and production, to date, of eight different Rule 30(b)(6) witnesses from the Department of Health Care Services (DHCS) who have to date testified on 46 topic and 34 subtopic areas, over eight days and almost 27 hours of deposition testimony, describing California's Medi-Cal program in exhaustive detail.  More Rule 30(b)(6) testimony on the 46 topics and 34 subtopics is scheduled for May.  In addition, seven DHCS witnesses have been examined in Rule 30(b)(1) depositions for a cumulative total of 42 hours.  Seven more DHCS fact witnesses are scheduled for Rule 30(b)(1) depositions in late April and May, including the Cabinet Secretary for the California Health and Humans Services Agency.

**1.      Defendants' Topics 58 and 59 Are Improper For Rule 30(b)(6) Examination.**

Topic 58 seeks Rule 30(b)(6) testimony regarding "Communications with [the relator] Ven-A-Care and any its representatives," including all its principals, as well as communications

with Ven-A-Care's counsel, and counsel's legal assistants. Topic 59 seeks testimony regarding every instance in which Ven-A-Care made a presentation to "any state or federal government agency, department, division, or unit," including any Ven-A-Care presentation to various U.S. officials at USDOJ, CMS, or to any state Medicaid agency.

California offered to prepare a DHCS witness to testify on topics 58 and 59, but that offer was declined by Defendants unless California also prepared a government witness who would testify about discussions between Ven-A-Care and CA DOJ. (*See* MPO, Ex. E, p. 2; Ex. F, p. 3). Ven-A-Care is also a plaintiff, along with California, in the underlying case alleging pricing fraud by Defendants at the expense of Medicaid. The only people who could be deposed about communications between CA DOJ and the relator and its attorney are CA DOJ attorneys or their investigative staff.  Depositions of these attorney - or investigator - witnesses would undoubtedly be rife with claims of attorney-client privilege or work-product doctrine, likely resulting in additional evidentiary disputes requiring court intervention.  More reasonably, topics 58 and 59 could be addressed through interrogatories and requests for the production of documents without deposing a CA DOJ attorney about communications with Ven-A-Care counsel.

None of the cases cited in Defendants' Opposition supports the argument that they are entitled to conduct discovery on any of the topics at issue exclusively through a Rule 30(b)(6) deposition.  In *United States v. Motorola, Inc*., No. Civ. A. 94-2331TFH/JMF, 1999 WL 552558 (D.D.C. May 27, 1999), the facts distinguish that case from the instant situation. Wireless carrier Nextel sought modification of an earlier consent decree in anti-trust litigation.  In support of its effort to modify the final judgment, Nextel sought to depose an Antitrust Division witness about the government's complicated economic analysis concerning the nationwide wireless service market, which had underpinned the government's agreement to the final judgment. *Id*. at *1-*2.

3

The court emphasized that the public policy concerns of a telecommunications decision "affecting entire segments of the economy" was a special situation warranting deposition discovery, because the government had functioned "*much more like an administrative agency concerned with its impact on the economy than it did a litigating arm of the government whose only concern is the federal fisc." Id.* at *1. The court further observed that the case was fundamentally different from more commonplace litigation in which "the judicial reluctance to have one party to invade the thought processes of its opponents counsel would be *most understandable*." *Id*. (Emphasis added).  " The difference between what the government attorneys did in this case and what lawyers do in the ordinary case cautions me against equating them[.]" *Id*.

*Evans v. City of Chicago*, 231 F.R.D. 302 (N.D. Ill. 2005) is not on point.  That case concerned a wrongly convicted former inmate's civil rights suit against city police officers, in the course of which defendants sought to depose the Governor's senior counsel about evidence supporting the pardon decision and clemency petition. The Governor was not a party to the civil rights action, and the court consequently found the Governor's counsel could be deposed about the evidence supporting plaintiff's clemency petition. In sum, in *Evans* the deposition concerned a non-party, not the plaintiff's attorneys, and was limited to inquiry involving the evidence supporting the clemency decision. *Id*. at 320.

*American Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706 (W.D. Mo. 1978) offers no support to Defendants. There, a statute of limitations issue focused on the attorney for plaintiff, who had already been specifically identified in interrogatory responses as *the* person who discovered the fraud alleged against Bendix.  The court explained that to avoid "any problems of privilege or other immunity to discovery that would arise if the deposition of Mr. Moore were

4

taken on oral questions, defendant Bendix was ordered to take the deposition of Mr. Moore *on written questions.*" *Id.* at 708 (emphasis added).

In Defendants' next case, *Fed. Deposit Ins. Corp. v. R. W. Beck, Inc.*, No. Civ. A. 01-CV-11982RGS, 2004 WL 1474579 (D. Mass. July 1, 2004), the discovery dispute centered on a motion to compel the production of documents which were the subject of attorney-client privilege claims by the FDIC.  This case did not concern a demand for testimony from a party's attorneys under Fed. R. Civ. P. 30(b)(6). Judge Stearns explained that the law firm's advice was so enmeshed in the underlying bankruptcy dispute that it was necessary to allow the motion to compel production of the FDIC documents over the privilege claims – but parenthetically noted, "*Deposition of the FDIC's attorneys is obviously not a feasible alternative* as the same [work-product doctrine and attorney-client] privilege issues would arise." *Id.* at *2, *2 fn. 4 (emphasis added).

Nor do any of Defendants' other cases support the argument that CA DOJ attorneys must be deposed under Rule 30(b)(6), on the disputed topics, in order to provide Defendants the discovery they seek.  *Ecology Axler v. Scientific Group, Inc.* 196 F.R.D. 210 (D. Mass 2000) instead concerns a motion to compel the production of documents and interrogatory responses, in which the court ordered plaintiff's attorneys to turn over documents and answer questions related to when they informed their clients of their cause of action over claims of attorney-client privilege. *Id.* at 213.  Defendants' cited cases *New York v. Cedar Park Concrete Corp.*, 130 F.R.D. 16 (S.D.N.Y. 1990) and *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444 (S.D. Fla. 1980) also concern only document discovery produced over claims of attorney-client privilege, and are therefore not on point as to California's assertion of that privilege regarding deposition testimony.  Here, California has never asserted that interrogatories or document demands are

5

inappropriate regarding the issues raised in Defendants' topics. And in *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346 (D. Mass. 1998), one of plaintiff's attorneys willingly appeared for deposition in conjunction with the defendant insurance company's motion to disqualify plaintiff's two attorneys. The insurance company moved to compel an answer regarding the attorney's refusal to allow his plaintiff/client to be medically examined, and the court ordered those questions be answered, overruling the attorney's privilege claims while explaining that "Plaintiff's attorneys, when submitting to the deposition, understood that certain inquiry was appropriate." *Id.* at 351. Here, California has not willingly appeared for deposition on the contested 21 topics, and the appropriateness of its attorneys' representation is not at issue in the underlying matter. Defendants' reliance on *Savoy* is therefore misplaced.

       **2.**        **Defendants' Topics 64-66 are inappropriate for Rule 30(b)(6) discovery.**

Topics 64-66 (MPO, Ex. B) are directed at the CA DOJ attorneys who investigated the sealed allegations alleged in Ven-A-Care's two complaints, seeking testimony about California's "conduct of its investigation into the allegations in the Ven-A-Care Qui Tam complaint" and the extensions of time granted to California (topic 64), as well as how California learned of the facts in its intervention complaint (topics 64 and 65). Defendants claim they should be allowed to depose CA DOJ attorneys under Fed. R. Civ. P. 30(b)(6) regarding topics 64-66 because, they hypothesize, there may have been spoliation of evidence.

This Court has previously ruled against Dey in the same type of discovery dispute, regarding the United States' motion for a protective order to prohibit Dey from using Rule 30(b)(6) depositions to elicit testimony on the extensions of time sought and obtained by the United States while investigating Ven-A-Care's claims in the sealed federal complaint against Dey. *See* Transcript of Motion Hearing Before the Honorable Marianne B. Bowler, December 4,

2008, in *Citizens for Consume, et al v. Abbott Laboratories, et al*, Civil Action No. 01-12257-PBS, at 107:23-25, 108: 1-9, 14-25 (granting United States' motion for a protective order on two topics propounded by Dey which sought Rule 30(b)(6) testimony on the extensions of time the United States requested while the cases were under seal).

California has already provided three Rule 30(b)(6) witnesses who provided over nine full hours of testimony in describing DHCS retention schedules, DHCS's electronic back up systems and the litigation holds imposed in the case.  Although a DHCS litigation hold was implemented in 2003, Defendants have already been provided with hundreds of DHCS retention schedules that generally provide for at least two years of retention *after* a document has been deemed "inactive," so that in 2003 there would have been documents under retention schedules extending at least as far back as 2001 still under a retention hold.  Defendants Mylan and Sandoz were not even identified by Ven-A-Care as allegedly engaging in AWP fraud until August 2002, when Ven-A-Care filed an amended complaint. Nowhere have Defendants established that DHCS has ever disregarded or violated its retention schedules as a matter of policy.

Defendants offer no proof of spoliation, and overlook the fact that California has produced thousands of documents concerning Medi-Cal's operations predating 1994 (the earliest actionable period alleged in California's complaint), with some documents going as far back as 1982 –  fully *16 years* before Ven-A-Care filed its original complaint.  For instance, California has produced, (a) materials relating to its State Plan Amendments dating back to 1982; (b) responsive DHCS document retention schedules dating back to 1983; (c) responsive Legislative Materials,  Legislative Bill Analyses and Enrolled Bill Reports dating back to 1985;  (d) responsive DHCS Organizational Charts dating back to 1985; (e) Provider Manual updates, and

the Provider Manual, dating back to 1991; and (f) responsive DHCS/Medi-Cal Fiscal

Intermediary Operational Instruction Letters dating back to 1994.

Defendants conjure up the straw man of spoliation and then use it to justify an argument

that they should be permitted to depose CA DOJ attorneys about their alleged "bad-faith" delay

in seeking extensions of time to conduct their investigation while the Ven-A-Care complaints

were under seal. Opp. at 11-14.  Defendants have yet to demonstrate why they are entitled to

depose CA DOJ counsel, under the aegis of Rule 30(b)(6), about the extensions of time sought

by CA DOJ to investigate the case.[2]

### 3.    Topics 1-14, 16 and 63 Are Improper Subjects For Rule 30(b)(6) Examination.

Defendants' Rule 30(b)(6) topics 1-14, 16 and 63 seek evidence underpinning allegations

of fraud and falsity in 42 paragraphs of California's complaint.  That evidence is more

appropriately sought via contention interrogatories, as the deposition topics implicitly require CA

DOJ attorney testimony to explain California's legal positions regarding the fraud alleged in its

complaint. MPO, Ex. B. As worded, several topics seek testimony on subjects which mix matters

of law and fact.  Topic 63 prematurely seeks discovery regarding California's (as yet

uncompleted) damages, when that line of discovery should be sought through the deposition of

California's damages expert.  These topics are just as inappropriate for Rule 30(b)(6) deposition

testimony as would be the case if California sought to depose Defendants' counsel, under the

guise of a Rule 30(b)(6) deposition,  on the "factual bases" underpinning Dey's 69 affirmative

defenses, Mylan's 74 affirmative defenses, and Sandoz's 36 affirmative defenses.

---

[2] Although Defendants have not requested that California's seal extension requests be produced, California informed Defendants it is producing all its seal extension requests, and all the court orders granting them, on or before April 24, 2009.  Those documents speak for themselves regarding the basis for the extensions requested, and document judicial approval of the extension requests.

Defendants insist there is no need to produce a CA DOJ attorney to respond to these topics, despite the fact that the topics are each premised on contentions made by California in its intervention complaint.  Defendants blithely claim that any witness could be fed the facts necessary to respond to the 16 topics (which collectively include an additional 5 sub-topics), ignoring the fact that it is unrealistic to expect anyone other than a CA DOJ attorney, or CA DOJ investigators, to accurately recite the voluminous mass of data – *Defendants' own data* – underpinning California's allegations of fraud and falsity.  Those facts are, in any event, still under development as evidence is collected in discovery.

The disputed topics focus on allegations in the complaint about Defendants' conduct with regard to their AWPs. As the Defendants are well aware, the overwhelming weight of  evidence in California's case comes from the Defendants themselves, including all the evidence regarding the actual prices at which their drugs are sold in the marketplace, the evidence of Defendants having marketed the spreads on their drugs to customers, and the evidence regarding Defendants' actual transactional prices necessary to calculate damages and document the disparities between Defendants' reported AWPs and what the actual average prices were concerning their drugs' average wholesale prices.  Defendants have produced, collectively, in excess of 10 million pages of transactional, sales and marketing data and other documents, and California's damages expert is compiling an analysis from appropriate measures within the mass of Defendants' drug sales data, which include over 200,000,000 transactions.  It is simply not feasible to prepare a CA DOJ attorney to digest and then regurgitate to Defendants a description of all the legally significant fact evidence they have each produced to California – so far – which underpins the operative allegations against Defendants which are the subject of the disputed topics. Defendants are surely

aware that they will have ample opportunity to extensively depose California's experts on the subjects of damages and Defendants' practices of marketing the spreads on their drugs.

This Court has also previously ruled, against Defendants Dey and Abbott in the United States' parallel AWP cases against Dey and Abbott, that the same type of Rule 30(b)(6) topics at issue in the instant motion (i.e., topics which require the government to produce an attorney for deposition to explain the contentions in the government's complaint against the Defendant), are inappropriate. *See* Transcript of Motion Hearing Before the Honorable Marianne B. Bowler, December 4, 2008, in *Citizens for Consume, et al v. Abbott Laboratories, et al*, Civil Action No. 01-12257-PBS, at 117: 4-25, 118:1-25, 119: 1-6 (granting United States' motion for a protective order on six Rule 30(b)(6) topics propounded by Dey, which would have required testimony from government attorneys concerning allegations in the United States' complaint analogous to topics 1-14 and 16 here). As counsel for Dey summarized the topics at issue in the United States' motion, Dey sought testimony regarding:

> the false statements and fraudulent statements by Dey that led to the claims in the complaint. Instances of Dey actively promoting the spread, the basis for the allegation that Dey knew that it's false price reporting would cause customers to submit claims for fraudulently inflated reimbursement and generally the factual basis for the allegation of fraud against Dey.

*Id*. at 117:6-12. As Dey undoubtedly recalls, the Court allowed the government's motion for a protective order on these topics, which are substantively identical to topics 1-14 and 16 in the instant motion. *Id*. at 119: 5-6. *See also id*. at 30-33, 33:13-14 (granting the United States' motion for a protective order concerning defendant Abbott's Rule 30(b)(6) topic 1, which would have required the government to provide an attorney to explain the contentions made in the government's complaint against Abbott, and in an amicus brief).

10

The cases cited by Defendants in their Opposition do not indicate otherwise. *Fed. Deposit Ins. Corp. v. C.H. Butcher*, 116 F.R.D. 196 (E.D. Tenn. 1986) concerned the failure of the government to produce knowledgeable fact witnesses for Rule 30(b)(6) deposition, not a dispute over whether to require government attorneys to explain the contentions in a complaint, and is therefore inapposite. In *Protective Nat'l Ins. Co. of Omaha v. Commw. Ins. Co.*, 137 F.R.D. 267 (D. Neb 1989), the court determined that a Rule 30(b)(6) deposition of the defendant's chartered accountant could proceed, primarily because she could testify about facts supporting a particular allegation in the answer without violating the work-product doctrine. *Id*. at 281.  Moreover, the *Protective* court relied on another case, *Lance, Inc. v. Ginsburg*, 32 F.R.D. 51 (E.D. Pa. 1962), which involved a plaintiff's effort to depose the defendant about the factual basis for the various paragraphed contentions in its answer and counterclaim in a trademark infringement case. *Id*. at 52. As the *Protective* court recognized, the *Lance* court found such topics inappropriate for Rule 30(b)(6) deposition: " [The *Lance* court] looked at the complexity of the legal allegations and concluded the better way to derive the information was by interrogatories with respect to factual allegations respecting the contentions of the defendant." *Protective*, 137 F.R.D. at 281. "'To be sure, the client presumably knows the facts (although not always), but he can hardly be expected to know their legal consequences. This is what lawyers are for. . . .While, as we have sought to make clear, plaintiff is undoubtedly entitled to such information, we think it could be more expeditiously and more intelligently obtained by written interrogatories.'" *Id*. at 281-82, quoting *Lance*, 32 F.R.D. at 53.  The same reasoning holds true here.

**Conclusion**

For the reasons stated above, the State of California respectfully requests that the Court enter an order of protection with respect to Defendants' Topics 1-14, 16, 58-59, and 63-66.

Dated:  April 17, 2009                    Respectfully submitted,

                                          EDMUND G. BROWN JR.
                                          Attorney General for the State of California

                                          By:    */s/ Nicholas N. Paul*
                                                 NICHOLAS N. PAUL
                                                 CA State Bar No. 190605
                                                 Supervising Deputy Attorney General
                                                 Bureau of Medi-Cal Fraud and Elder Abuse
                                                 Office of the Attorney General
                                                 1455 Frazee Road, Suite 315
                                                 San Diego, CA  92108
                                                 Telephone:  (619) 688-6099
                                                 Fax:  (619) 688-4200

                                          **Attorneys for Plaintiff,**
                                          **STATE OF CALIFORNIA**