UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re Pharmaceutical Industry<br>Average Wholesale Price Litig. | )<br>)<br>)<br>) | MDL No. 1456<br>C.A. No. 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>TRACK TWO SETTLEMENT | )<br>)<br>)<br>)<br>) | Judge Patti B. Saris |

**REPLY OF OBJECTORS JOHN PENTZ, CONNIE PENTZ
AND CORINNA CONNICK TO CLASS PLAINTIFFS' RESPONSE
TO OBJECTIONS TO FINAL APPROVAL OF TRACK TWO SETTLEMENT**

Class Members John Pentz, Connie Pentz and Corinna Connick submit this Reply to the Class Plaintiffs' Response to Objections to Final Approval of Track Two Settlement ("Response") that was filed on April 9, 2009.

**I.      Full Cash Payors Were Not Included in the Settlement Prior to
         The Pentz/Connick Objection, and Inclusion of Full Cash Payors
         Requires Corrective Notice.**

Plaintiffs' argument that cash payors have always been entitled to receive settlement payments from the Track Two settlement is breathtaking in its audacity. In their Response, Plaintiffs admit, for the first time, that the Pentz/Connick objectors are correct – there is no principled reason for excluding cash payors from the Track Two Settlement while including them in the McKesson settlement. Plaintiffs contend, however, that the cash payors have been entitled to make claims for settlement funds all along.

There are numerous problems with this eleventh hour position. First and foremost, it is not true. As the Court might expect, counsel for the Pentz/Connick objectors have been in communication with Class Counsel for the past two months, both before and after their objections were filed. *See* Affidavit of Edward Cochran filed

herewith as *Exhibit A*. The first contact was attorney Cochran's telephone call to an attorney in Hagens Berman's office. This attorney informed Mr. Cochran that he would consult with the partners in his firm to find out whether cash payors were entitled to make claims. He called Mr. Cochran back several days later to inform him that cash payors were not entitled to submit claims for settlement funds.

After the Pentz/Connick objection was filed, Class Counsel's response was to notice the depositions of the Pentzes and Ms. Connick for the week of March 23. Class Counsel never informed counsel for these objectors that they were in fact included in the settlement allocation and entitled to submit claims. After receiving the notice of deposition of Ms. Connick, Mr. Cochran called the attorney who noticed the deposition, Jennifer Fountain Connolly, regarding details of the deposition. At the end of the call, he asked what justification there was to exclude full payors from the settlement. Ms. Connolly responded with a complex explanation of why the cash payors did not suffer damages and were not entitled to recover, and stated that her position was based upon the opinion of Plaintiffs' expert. Therefore, as of March 24, 2009, Class Counsel was maintaining that the settlement conformed to the published Notice, *i.e.*, that only persons who "made a Percentage Co-Payment for Certain Drugs, from January 1, 1991 to March 1, 2008" could submit a claim for reimbursement.[1]

---

[1] This language is taken verbatim from the first line of the Notice that appears on the settlement website, as well as the form of notice that was published in various publications as part of the notice campaign in this case. It appears in bold, enlarged typeface, right under the line "Authorized by the U.S. District Court for the District of Massachusetts." *See* Notice attached hereto as *Exhibit B*.

At no time prior to April 9, 2009 did Class Counsel inform Pentz/Connick counsel that their objection to the exclusion of cash payors from settlement reimbursement was well taken, and that in fact it was the class notice that was defective.[2] Indeed, counsel for the Pentzes held off on filing their claim for a refund of the $1142 they paid for the Class A drug Epogen, deterred by the following language in the Claim Form:

> I also declare under penalty of perjury that I paid a percentage co-pay for one or more of the Class Drugs as indicated in this Claim Form at some time during the period from January 1, 1991 through March 1, 2008.

While three of the Pentzes four payments for Epogen were indeed percentage co-pays, their fourth payment was for the full cost of 40,000 units of Epogen, or $527.51. Therefore, their fourth payment was not technically a "percentage co-pay," something which would give most consumers pause before attempting to claim reimbursement under the penalty of perjury. Given Class Counsel's assurance that the Claims Administrator is paying, not prosecuting, the claims made by cash payors, the Pentzes' counsel went ahead and submitted their claim on April 10, 2009.[3] A copy of their Claim Form is attached hereto as *Exhibit C*.

---

[2] Had the Pentzes and Ms. Connick not objected to this aspect of the settlement, the defective notice never would have been brought to this Court's attention, and, presumably, none or very few of the millions of cash payors entitled to claim reimbursement through this settlement would have been aware of their right to file claims.

[3] In his Declaration, Eric P. Lachance states that "it has always been our understanding that consumer cash payors are included in the settlement classes." Apart from the fact that this may be the first class action settlement in history in which the subjective "understanding" of the Claims Administrator has driven the substantive settlement terms, Mr. Lachance tellingly omits any data about how many cash payors have disregarded the risk of perjury and filed claims. There cannot be more than a handful of such claims, given the language that appears in the Notice and on the Claim Form.

3

It certainly must come as a surprise to this Court that Class Counsel intended all along for cash payors to be included in the claims process, given the form of Notice and Claim Form that Class Counsel asked this Court to approve, and that this Court did approve.  Why, for example, did Class Counsel promulgate a Notice that states boldly in large print in the very first line:

### If you made a Percentage Co-Payment for Certain Drugs … you may be able to get at least $35 back.

The term "Co-Payment" implies that there are *at least two* payors.  In the case of cash payors, there is but one payor of the full price of the drug.  Payment of 100% of a drug's price is by definition not a "co-payment."

In contrast, in the *McKesson* settlement, which explicitly includes cash payors, the corresponding first sentence of the published and website notices reads:

### If You Paid in Full or Made a Percentage Co-Payment for Brand-Name Prescription Drugs, You May Get Money Back…[4]

In the *McKesson* Notice, it is unmistakable that full cash payors are entitled to settlement payments, and someone who paid in full for those drugs would presumably continue reading the rest of the notice.  In contrast, there is no reason why someone who paid full price for the Track Two drugs would read any further than the first sentence.  Even if they did, they would find nothing in the rest of the Notice, or in the Settlement Agreement, that would disabuse them of the notion, firmly impressed upon them by the very first sentence of the Notice, that the settlement offers them nothing of value.

---

[4] A copy of the *McKesson* publication notice is attached hereto as *Exhibit D*.

4

Class Counsel can point to only two pieces of evidence to support its contention that cash payors have always been entitled to settlement monies: (1) the subjective, previously undisclosed understanding of the Claims Administrator, and (2) a September 11, 2008 Press Release that was likely read by less than 1% of the class.  Certainly, a press release of undetermined circulation cannot take precedence over, or cure, a *later* defective notice published in newspapers of wide circulation and designed to reach most if not all of the members of the class.

In concocting an *ex post facto* solution for one problem, Class Counsel has created an even bigger one – how to correct the impression left by the Notice in this case that a substantial subclass is not entitled to share in the settlement funds, when in fact they are.

The only possible "fix" for the patently wrong and misleading notice that was published and promulgated in this case is to further extend the deadlines for opting out, objecting and filing claims, and to publish a corrective notice that explicitly makes clear that cash payors may make claims for the amounts they paid for settlement drugs, contrary to what was erroneously published last year.  If Class Counsel or the Court needs a model for what this notice would look like, the Objectors suggest the *McKesson* Notice.

What is most astonishing is that Class Counsel have not themselves suggested that a corrective notice be published.  Instead, they are apparently urging this Court to approve the settlement as is, defective notice and all, despite the fact that millions of cash payors are unaware that they have the right to file a claim for reimbursement from the settlement fund.  The fact that Class Counsel has taken no corrective action is further evidence that their current position is nothing more than a cover up concocted at the last

5

minute in order to avoid having to concede that the Objectors are correct in their objection to the exclusion of cash payors.

If Class Counsel's current position – that they committed a colossal blunder in drafting the notice in this case by addressing it only to percentage co-payors – were true, one would have expected Class Counsel to have asked the Court for permission to publish a corrective notice at the earliest opportunity, and certainly no later than March 9, 2009, when the Pentz/Connick Objection was filed.  Instead, they delayed for a period of four weeks, even asking the Court for an extension beyond the original March 30 deadline for filing responses to objections, while they conferred among themselves in order to come up with a story that would do the least damage to their claim of adequacy.

Unfortunately for Class Counsel, there is no way to spin this debacle that makes Class Counsel look anything but completely incompetent.  Either they improperly excluded from compensation the millions of full payor consumers who were more damaged than any other class members, or they drafted and approved the most inaccurate and misleading notice in the history of class action litigation.  Whichever version Class Counsel decides to go with on the date of the fairness hearing, they hardly come out looking good.

**II.     The List of Settlement Drugs is Vague and Ambiguous,
and Does Not Permit Class Members to Determine Whether Their Drugs
Are Included in the Settlement.**

Class Counsel claim that Corinna Connick is not a class member because she paid the full price of the drug Climara, which is not specifically named in the list of Class A and B Drugs.  Climara is a brand name for a form of Estradiol, which *is* listed as a Class B Drug.

The list of Class Drugs appears to be a list of chemical names that are sold by various companies under different brand names.  Few of the Class Drugs would ever be listed on an invoice or doctor's receipt under their technical chemical names.  Instead, they would be identified by the name of the brand of that drug which the doctor administered or the pharmacy sold to the patient.  This means that the term "Estradiol," and most of the other chemical names listed as Class A and B Drugs, are undefined terms, and consumer class members will generally be unable to determine whether drugs that they purchased or were administered are included in the settlement.

      **A.**      **PURSUANT TO THE TERMS OF THE SETTLEMENT AGREEMENT, CORRINE CONNICK IS A MEMBER OF THE SETTLEMENT CLASS.**

Ms. Connick paid "full price" for a brand of Estradiol called Climara.  Since that purchase did not involve a "percentage co-payment", she perceived from the Notice that her "full payment" purchase was not included in the settlement.  Accordingly, she filed an extensive objection and a motion to intervene seeking, among other things, to: (1) represent a sub-class of full payors and, (2) preserve the settlement fund from Class Counsel's excessive fee request.  In response, class counsel has asserted that Connick is excluded from the class, not because she is a full payor, but rather because the Estradiol she purchased was sold under a "brand name" called Climara.

Apparently, class counsel's position as to branded drugs is not limited to Connick; it is class counsel's position that the "CLASS MEMBERSHIP DRUG LIST", which is attached to the notice, includes only drugs that were "manufactured, marketed or sold" under the **exact name** that appears on the list.  Since most of the names on the list are chemical or generic names, class counsel is asserting that no drugs sold under a branded name (even though they were manufactured, marketed and sold by a defendant

7

drug company) are covered by the settlement unless that specific brand name is also on the list.  This assertion by class counsel is troubling for many reasons.

There is only one document which controls the definition of the settlement class - the "**TRACK TWO SETTLEMENT AGREEMENT AND RELEASE**", which has been agreed to by all of the numerous settling defendants.  The settlement agreement contains an explicit definition of the non-Medicare consumer class ("Class Three"):

> All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for a **class drug** manufactured, **marketed,** sold, or distributed by a released company ….   See settlement agreement, para. 1A, p. 5 (emphasis added).

In turn, a "class drug" is defined as:

> .. those drugs manufactured, **marketed**, sold, or distributed by a released company that are set forth in <u>Exhibit B</u>.  See settlement agreement, para. IIC, p. 7 (emphasis added).

"Released company" is defined in paragraph II (KK) (p. 12) by listing the name of each of those companies.

Class counsel do not dispute that Connick is a "natural person in the United States"; that Connick made a "non-Medicare Part B payment" for a drug; and that said drug (Climara) was "manufactured, marketed, sold, or distributed by a released company" (Bayer Healthcare Pharmaceuticals).  What class counsel do dispute is that Climara is a "class drug" (solely because it is sold under a brand name), and it is on this assertion alone that class counsel seeks to exclude Connick from the settlement class.

Pursuant to the above definition of "class drug", Climara is included because (a) it is "manufactured, marketed, sold, [and] distributed by a released company" (Bayer

8

Healthcare Pharmaceuticals); (b) Climara is nothing but a branded name for Estradiol; and (c) Estradiol does appear on the list in Exhibit B.  Class counsel seems to be saying that because the defendant, Bayer Healthcare Pharmaceuticals, chose to "market" the Estradiol under its own branded name, it is not really on the list and is not covered by the above definition of class drug.  This particular assertion is absurd for the following reasons:

1. Estradiol is a naturally-occurring sex hormone produced, in females, by the human ovary.  The chemical formula of Estradiol is $C_{18}H_{24}O_2$.  It has a molecular weight of 272.39.  Its chemical structure is verbally described as Estra-1, 3, 5 (10)-triene-3, 17B-diol.

2. Climara is Estradiol in a transdermal application system.  This Estradiol, sold under the brand name Climara, has the same empirical chemical formula, the same molecular weight, the same chemical description, and the exact same chemical structure.  In other words, Climara is Estradiol marketed by Bayer under a brand name.

3. Interestingly, the definition of "class drug" includes not only the words "manufactured", "sold", and "distributed", but also the word "**marketed**" .  The only purpose of a brand name is to distinguish drugs being "**marketed**" by a certain company from the same drugs manufactured by another company.  In this case, Bayer Healthcare Pharmaceuticals is **marketing** this form of Estradiol by assigning to it the brand name Climara, and by using salespeople to go out into the marketplace to support the purchase of that branded name product.  In so doing, Bayer is **marketing** one of its versions of Estradiol.  If the settling parties didn't intend to include the brand name **marketing** of drugs on the list, why did they include the word **marketed** in the very definition of "class drug"?

4. It is axiomatic that if there is any ambiguity in the interpretation of a contract (and this settlement agreement is a contract), that ambiguity should be interpreted by the court against the interest of the parties who drafted the language and in favor of the parties who took no part in the drafting.  Obviously, the settlement agreement and the definitions therein were drafted by the combination of class counsel and the counsel for the Defendants.

Connick does not believe there is any ambiguity; she purchased a drug (branded Climara) which **is** Estradiol.  However, if there is any **perceived** ambiguity, that ambiguity must be

resolved in favor of Connick (and any other class members like her), who had no role in drafting any of this language.

Class counsel made no effort to define the drugs listed in the Class Membership Drug List.  If they desired to exclude drugs that are actually on the list but marketed under a branded name, they should have so provided in the agreement.  It would have been very simple to include a definition that explicitly excluded certain brand names, or that specifically identified the companies and brands of the listed chemicals that were included in the settlement.  In a settlement that was supposedly designed for consumers, and has been represented as "consumer-friendly," the fact that it has taken an objection, a deposition and four weeks of research to determine that Climara is not included in the settlement belies any such characterization.  If Ms. Connick, who had the benefit of her own counsel and communications with Class Counsel, could not determine whether her drug was included in the settlement, how can the millions of other consumers without counsel possibly figure out whether their branded drugs, manufactured by released defendants, are part of this case?

It is very illogical and confusing to class members to employ a chemical or generic name for a drug with the intent of excluding other drugs that are nothing but branded names of the identical substance.  For example, Advil and Motrin are simply brand names for ibuprofen, and a reasonable person would read the term "ibuprofen" to comprise them.

### B. Class Counsel is Acting Against the Interests of Their Own Clients.

Given the clear definitions in the settlement agreement that would include the sale (and marketing) of a **branded** version of drugs on the list, class counsel seems to be acting against the interests of their clients who bought branded versions of any of these drugs. This could include thousands, if not millions, of people. Why would class counsel attempt to exclude their own clients from their settlement? The released companies presumably want them included in the settlement, so that they obtain releases from these persons.

The settlement agreement is a contract which has been agreed to by all of the settling defendants. Why would class counsel try to restrict the size of the class to less than the full scope of the definitions in the settlement agreement? Wouldn't one expect class counsel to advocate for the broadest possible construction of the settlement agreement that **includes** the purchasers of branded products?[5] This is particularly true as the defendants have already agreed to pay this settlement fund, and do not care how it is distributed.

The agreement seems to be quite simple and clear as to definitions. The defendants have not filed any pleadings opposing the application of the settlement to branded drugs and, if they did, they would be just as wrong as class counsel. In any event, at this point, it is not the defendants who are seeking to defeat Connick and the group of purchasers of branded drugs that she is now compelled to represent: it is her own class counsel! What motive do they have in arguing for such a restrictive definition

---

[5] In order to be consistent, perhaps Class Counsel should have consulted with Eric P. Lachance to determine whether he has been approving claims submitted for branded drugs not specifically listed as class drugs, such as Climara. If he has, then perhaps the settlement can be expanded to conform to Mr. Lachance's understanding. Indeed, how can Class Counsel claim that Ms. Connick's claim for her purchase of Climara is excluded without submitting a declaration from Mr. Lachance that he has not to date honored any claims for Climara or any other branded forms of the generic drugs listed in the notice?

of the class other than getting rid of a troublesome objector?

### III. Class Counsel Has an Irreconcilable Conflict of Interest in Representing Both the Consumer Class Members and the ISHPs.

At the deposition of Corinna Connick, Plaintiffs' counsel Jennifer Fountain Connolly engaged in the following colloquy with Ms. Connick and her counsel Edward Cochran:

> **Connolly:** Do you have any understanding that class counsel represented those large ISHPs throughout the course of litigation?
> **Connick:** That – I do not believe that to be my understanding. I believe they had their own attorneys.
> **Connolly:** Would that change your understanding of class counsel's entitlement to some of that fee if you knew that class counsel had represented some of these ISHPs throughout the course of the litigation?
> **Connick:** I would have to discuss that with my attorneys.
> **Cochran:** Couldn't that be a conflict of interest?
> **Connolly:** I don't think I'm the one under examination here.
> **Cochran:** No, I'm just saying your suggestion that you're representing the class and at the same time you're representing the ISHPs, that suggested that in the question to the witness. I'm saying, how could that be? Wouldn't that be a conflict of interest since they're fighting against each other for the same fund?

*See* Connick Deposition Excerpt attached hereto as *Exhibit E*.

In their Objection, the Pentzes and Ms. Connick argued that Class Counsel should receive no portion of the $51.8 million of the settlement fund that was ceded to the ISHPs, on the assumption that the ISHPs are essentially strangers to this litigation, and should be treated similar to opt outs. Ms. Connolly's suggestion that the ISHPs are not simply separately-represented opt-outs but in fact former simultaneous clients of Class Counsel along with the consumers and TPPs makes the fee objection even more compelling. If Class Counsel are paid fees on the portion of the money given away to the ISHPs, and which as a result is no longer subject to this Court's jurisdiction, Class

12

Counsel will be rewarded for breaching its duty to one set of clients (consumers) in order to benefit another set of clients (ISHPs). The ISHPs and consumers are competing over the allocation of a limited fund of money ($125 million). One set of lawyers cannot represent both groups of clients simultaneously, nor can Class Counsel resolve the conflict by withdrawing from representing the ISHPs at the allocation stage, and then conceding $51.8 million of the settlement to them.

## CONCLUSION

For the foregoing reasons, Class 3 Consumer Plaintiffs and Objectors Connie and John Pentz and Corinna Connick request that this Court reject the proposed Track Two Settlement unless corrective notice is published and mailed to known class members making clear that full cash payors are entitled to submit claims for reimbursement, and more clearly defining which specific drugs are included in the settlement. Objectors request that the definition of Class Drugs be given the broadest possible construction, consistent with Class Counsel's fiduciary obligations. Objectors further request that this Court award Class Counsel attorney's fees of no more than 30% of that portion of the Settlement Fund that will be paid to Class Counsel's Consumer and TPP clients, or $22 million.

Dated:   April 23, 2009

Respectfully submitted,
Connie and John Pentz,
and Corinna Connick,
by their attorneys,

*/s/ John J. Pentz*
John J. Pentz, Esq.
MA Bar # 561907
2 Clock Tower Place, Suite 260G
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (707) 276-2925

13

Clasaxn@earthlink.net

EDWARD COCHRAN
20030 Marchmont Road
Shaker Hts., OH   44122
(216) 751-5546
fax (216) 751-6630
edwardcochran@wowway.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on April 23, 2009 he efiled a true copy of the foregoing document via the ECF filing system of the District of Massachusetts, and as a result a copy of this document was served on every counsel of record.

*/s/ John J. Pentz*
John J. Pentz