Connick, Corinna

Cleveland, OH

March 24, 2009

Page 1

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF MASSACHUSETTS

3     ------------------------------X

4     IN RE: PHARMACEUTICAL     : MDL NO. 1456

5     INDUSTRY AVERAGE          : CIVIL ACTION

6     WHOLESALE PRICE           : 01-CV-12257-PBS

7     LITIGATION                : Judge Patti B. Saris

8     ------------------------------X Chief Magistrate

9     THIS DOCUMENT RELATES TO  : Judge Marianne B.

10    ALL CASES IN MDL NO. 1456 : Bowler

11    ------------------------------X

12

13              DEPOSITION OF CORINNA CONNICK

14                         - - -

15             Tuesday, March 24, 2009

16                  10:06 o'clock a.m.

17                   Webster & Dubyak

18            1220 West 6th Street, Suite 600

19                 Cleveland, Ohio  44113

20                         - - -

21                       ANN FORD

22           REGISTERED PROFESSIONAL REPORTER

Case 1:01-cv-12257-PBS   Document 6021-6   Filed 04/23/09   Page 2 of 2
Case 1:01-cv-12257-PBS   Document 6004   Filed 04/09/2009   Page 58 of 78
Connick, Corinna                                                  March 24, 2009
                         Cleveland, OH

Page 62

1    MR. COCHRAN: Okay.
2    THE WITNESS: I'm not sure.
3  BY MS. FOUNTAIN CONNOLLY:
4    Q. You have, if you turn to Page 6 of your
5  objection, the last sentence of the partial first
6  paragraph, so above, "The Court should require the
7  parties," it says, "The suspect allocation of the
8  settlement fund between consumers and
9  institutional plaintiffs in this case is
10 compounded by the difficulty of filing a consumer
11 claim form." And I'll represent that the sentence
12 goes on, but I'm going to stop there.
13    What do you believe to be difficult
14 about filling out the consumer claim form in this
15 case?
16    A. Well, I feel that there's a lot of
17 people that don't even know this is going on.
18 They may never find out this is going on. And
19 there are older people, there are people who are
20 mentally not capable of filling out the form, but
21 yet they are entitled to receive their benefits.
22    And if there's an easier way out there

Page 63

1  to get it to them, that's what we should do;
2  that's what should happen.
3    Q. Have you looked at the claim form
4  itself?
5    A. No, I have not.
6    Q. So you're just saying in general it
7  would be easier for people to get checks --
8    A. Yes.
9    Q. -- than to fill out a form?
10   A. Yes. If the information is there, it
11 should be used.
12   MR. COCHRAN: Page 7.
13   MS. FOUNTAIN CONNOLLY: Page 7?
14   MR. COCHRAN: Oh, I thought that's where
15 we were going.
16 BY MS. FOUNTAIN CONNOLLY:
17   Q. No. We've covered a lot of this. So I
18 don't want to duplicate what we've talked about
19 before already.
20   If you turn to Page 8, in the first full
21 paragraph it starts with, "Class counsel have
22 requested," there's a sentence there that starts

Page 64

1  with, "There is only one problem, Class Counsel
2  does not represent the ISHPs, who will receive
3  51.8 million of the $125 million total, and,
4  therefore, there is no basis for Class Counsel to
5  request any portion of that 51.8 million under the
6  common benefit doctrine."
7    I just wanted to clarify that that is
8  actually your position, that there is no basis for
9  class counsel to request any portion of those
10 funds; is that the case?
11   A. I don't think they should get 30 percent
12 of the 51 or the 52 million. That seems awfully
13 high for a group that has their own attorneys and
14 who were charged by their attorneys.
15   Q. Do you have any understanding that class
16 counsel represented those large ISHPs throughout
17 the course of this litigation?
18   A. That -- I do not believe that to be my
19 understanding. I believe they had their own
20 attorneys.
21   Q. Would that change your understanding of
22 class counsel's entitlement to some of that fee if

Page 65

1  you knew that class counsel had represented some
2  of these ISHPs throughout the course of the
3  litigation?
4    A. I would have to discuss that with my
5  attorneys.
6    MR. COCHRAN: Couldn't that be a
7  conflict of interest?
8    MS. FOUNTAIN CONNOLLY: I don't think
9  I'm the one under examination here.
10   MR. COCHRAN: No. I'm just saying your
11 suggestion that you're representing the class and
12 at the same time you're representing the ISHPs,
13 that suggested that in the question to the
14 witness. I'm saying, how could that be? Wouldn't
15 that be a conflict of interest since they're
16 fighting against each other for the same fund?
17   MS. FOUNTAIN CONNOLLY: The question was
18 throughout the course of the litigation, not
19 during the allocation process.
20   MR. COCHRAN: Well, in the course of the
21 litigation, wouldn't that still be a conflict of
22 interest?

17 (Pages 62 to 65)