Michael K. Jeanes, Clerk of Court
***Electronically Filed***
Loreen Cummings
Transaction ID 20967056
Aug  6 2008  4:48PM MST

Vincent J. Montell (State Bar No. 014236)
**Holloway Odegard Forrest & Kelly, P.C.**
3101 N. Central Avenue, Suite 1200
Phoenix, Arizona  85012
Telephone:  (602) 240-6670
Facsimile:  (602) 240-667

J. Andrew Jackson
**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC  20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Attorneys for Defendants Baxter Healthcare Corporation and
Baxter International Inc.

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ROBERT J. SWANSTON, individually and on behalf of himself and all others similarly situated, | No. CV2002-004988 |
| Plaintiff, | **DEFENDANTS' BRIEF REGARDING PLAINTIFF'S PROPOSED ORDER OF DISMISSAL AND RELATED MOTION FOR PARTIAL RECONSIDERATION OF RULING DATED MARCH 19, 2008** |
| vs. | |
| TAP PHARMACEUTICAL PRODUCTS, INC., et al., | |
| Defendants. | (Assigned to the Honorable Peter B. Swann) |
| | **Oral Argument – August 8, 2008 (COURT REPORTER REQUESTED)** |

1  I.   **INTRODUCTION**

2          Contrary to Judge Saris's explicit direction and subsequent injunction in MDL

3  1456, and despite prior promises both to this Court and to Judge Saris, Plaintiff, Swanston,

4  and his counsel, Donald E. Haviland, continue to press claims that are currently pending,

5  have been adjudicated, or have been settled.  Swanston is a member of at least one MDL

6  consumer settlement class and purports to represent persons and entities whose claims

7  plainly overlap with those Swanston makes here.  Swanston's MDL class membership and

8  the overlapping AWP claims create direct jurisdictional conflicts between this class action

9  and the MDL.

10         To cure these conflicts and bring this case into compliance with Judge Saris's

11  orders, Haviland represented that he would dismiss the Overlapping Defendants here:

12         Plaintiff has named in this action a number of defendants who are
           also defendants in MDL 1456. *Plaintiff intends to seek a stipulated
13         dismissal of certain defendants who are also defendants in MDL
           1456,* and anticipates that it may take approximately 30 days to
14         negotiate, prepare and file the stipulated dismissal with this Court. . . .
           Plaintiff further requests that the Court . . . set another status
15         conference with the remaining defendants.  Defendants do not oppose
           Plaintiff's requests.[1]
16

17  Haviland made similar representations to Judge Saris in connection with claims against the

18  overlapping defendants in the New Jersey AWP class action, *International Union of*

19  *Operating Engineers Local No. 68 Welfare Fund v. AstraZeneca, et al.*, Superior Court of

20  New Jersey, Monmouth County, No. MON-L-3136-06 (the "New Jersey case"), where he

21  also represented the named class plaintiff.  While these representations occurred in

22  connection with discussion of Haviland's conflicting roles in the MDL and the New Jersey

23  case, Judge Saris nevertheless ordered Haviland to dismiss overlapping claims and

24  defendants in *any* conflicting case: "I order that you dismiss any of the cases that conflict

25  with this one."[2]  Haviland followed Judge Saris's direction in the New Jersey case.[3]

26
   _____
27  [1] Joint Status Report, Oct. 12, 2007, at 1-2 (emphasis added) (**Exhibit 1**).
   [2] Hearing Transcript, Class Counsel Status Conference, *In re AWP*, No. 01-12257, at 28:17-18 (D. Mass.
28  Sept. 11, 2007) ("Hearing Tr.") (**Exhibit 2**).

                                          2

1        Despite Judge Saris's direct order, Swanston and Haviland still have not dismissed

2 claims against the Overlapping Defendants.  Indeed, their gamesmanship has worsened.

3 Haviland's most recent filing not only fails to dismiss any Overlapping Defendant or

4 claims, but actually attempts to sneak *new* drugs into this case for both Overlapping

5 Defendants and Non-Overlapping Defendants.   This end-run contradicts affirmative

6 representations Haviland's co-counsel made to this Court in May: that the drugs listed in

7 the Second Amended Complaint were the only drugs at issue.[4]   More fundamentally,

8 Swanston's and Haviland's effort to add new drugs at this late date cannot be reconciled

9 with this Court's long-standing Minute Entry Order – issued more than five years ago –

10 requiring Swanston to file any amended pleadings no later than December 20, 2002.[5]

11        The parties briefed this matter to Judge Barton, who ordered that Swanston dismiss

12 overlapping claims.[6]  Judge Barton ordered the parties to submit competing forms of order

13 if they could not agree on a single form of order, and those competing forms are now

14 pending.  Because Swanston and Haviland refuse to eliminate conflicts with the MDL, and

15 continue to defy existing MDL court orders, the Overlapping Defendants request

16 reconsideration of the March 19, 2008 Order and ask this Court to dismiss the Overlapping

17 Defendants, as was ordered by Judge Saris and similarly dismissed in the New Jersey case.

18 *See* **Defendants' Attached Proposed Order A**.[7]  In the alternative, and at minimum, this

19 Court should dismiss all claims relating to all drugs that are the subject of pending

20 litigation in the MDL, prior decisions by Judge Saris, class settlement agreements, or are

21 not listed in the Second Amended Complaint.  *See* **Defendants' Attached Proposed**

22 **Order B.**

---

24 [3] Order Dismissing Without Prejudice Defendants Overlapping MDL 1456, *New Jersey Case* (Nov. 5, 2007) (**Exhibit 3**).

25 [4] Reporter's Transcript of Proceedings, Status Conference, May 12, 2008, at 11:6-15 ("May 2008 Reporter's Tr.") (**Exhibit 4**).

26 [5] *See* Minute Entry Order, Dec. 9, 2002 (**Exhibit 5**).

27 [6] Ruling on Plaintiff's Motion to Dismiss Without Prejudice Certain Claims and Defendants, Mar. 19, 2008 (**Exhibit 6**).

[7] Proposed Order A was originally filed with the Court on April 18, 2008.

1    The "Track Two Defendants"[8] in the MDL have entered into a settlement

2    agreement covering the MDL class claims.  That settlement includes broad waivers and

3    releases for consumers and even broader waivers and releases for all other entities.  Judge

4    Saris has preliminarily approved the Track Two Settlement, and *enjoined* any party –

5    which would include Swanston and Haviland – from proceeding with overlapping claims

6    pending final approval:

> Pending Final Approval, no Settlement Class Member . . . shall
> commence, continue or prosecute against [the Overlapping Track
> Two Defendants] any action or proceeding in any court or tribunal
> asserting any of the matters, claims, or causes of action that are to be
> released upon Final Approval pursuant to the [Track Two Settlement]
> Agreement, *and are hereby enjoined from so proceeding.*[9]

11    Several Track One Defendants have also entered into settlement agreements or

12    memoranda of understanding to settle class claims that include similar broad releases of

13    AWP claims.  AstraZeneca, Bristol-Myers Squibb ("BMS"), and GlaxoSmithKline have

14    settled Class 1 claims.  The Class 1 consumer claims against three other Track One

15    Defendants, Johnson & Johnson, Centocor, Inc., and Ortho Biotech Products, L.P., were

16    dismissed on the merits based on Judge Saris's finding that their spreads were not

17    unlawful.[10]

18    Finally, we also request that this Court dismiss any claim against any Defendant

19    that is premised upon self-administered drugs.  Judge Saris denied class certification

20    regarding all self-administered drugs.[11]  She also denied class certification of the Class 1

---

[8] MDL Track Two Defendants include Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corporation, Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc. (f/k/a Gensia Sicor Pharmaceuticals, Inc., f/k/a Gensia, Inc.), Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C.
[9] Order Granting Preliminary Approval of the Track Two Class Settlements, Directing Notice to the Classes, and Scheduling Fairness Hearing, *In re AWP*, No. 01-12257, at 17-18 (D. Mass. July 2, 2008) ("Track Two Preliminary Approval") (emphasis added) (**Exhibit 7**).
[10] Findings and Order on Motion of Track 1 Defendants for the Entry of Judgment Pursuant to Federal Rule of Civil Procedure 54(b), *In re AWP*, No. 01-12257, at 5, 7, 12 (D. Mass. Nov. 20, 2007) ("Track One Findings and Order") (**Exhibit 8**); *see also In re AWP*, 491 F. Supp. 2d 20, 54, 103-04 (D. Mass. 2007) (Class 2 and 3 claims).
[11] *In re AWP*, 233 F.R.D. 229, 232 (D. Mass. 2006).

4

1    consumer claims against Schering-Plough and Warrick.[12]   Swanston purportedly is a

2    member of the consumer class (and Haviland, before Judge Saris struck him as class

3    counsel, was representing the class) and is therefore subject to those rulings. This Court

4    should not permit the issue to be litigated again here.

5    **II.   BACKGROUND**

6    *A. The Complaint*

7         Swanston's allegations revolve around the same nucleus of facts that lie at the

8    center of the MDL and the New Jersey case. Swanston alleges that putative class

9    members reimbursed health care providers for drugs on the basis of AWPs that exceeded

10   the actual acquisition cost of the drugs. By charging prices that were lower than reported

11   AWPs, Swanston claims that each Defendant created "spreads" between the price health

12   care providers paid for the drugs and the AWP at which they were reimbursed, thereby

13   encouraging medical providers to prescribe that Defendant's drugs.[13]

14   *B. Judge Saris Instructed Haviland To Dismiss All Overlapping Claims And*

15   *Defendants That Conflict With The MDL*

16        At a September 11, 2007 hearing, Judge Saris addressed two issues: Haviland's

17   appointment as co-lead class counsel in the MDL and jurisdictional conflicts between the

18   MDL class litigation and the New Jersey case.[14] Judge Saris ordered Haviland to dismiss

19   all claims and defendants that overlap with the MDL case.[15] Haviland did not timely file

20   ───────────────

21   [12] *Id.* at 230.

     [13] Swanston's complaint contains allegations of unjust enrichment, fraud, civil conspiracy, concert of
     action, aiding and abetting/facilitating, violations of the Arizona Consumer Protection Statutes, Ariz. Rev.

22   Stat. § 44-1522, and civil conspiracy in violation of the Arizona Antitrust statutes, Ariz. Rev. Stat. § 44-
     1402, and Article 14, Section 15 of the Arizona Constitution. Swanston's first four counts mirror the first

23   four counts in the New Jersey complaint.
     [14] Haviland's prior contradictory statements regarding the scope of the New Jersey class were among the

24   reasons Judge Saris disqualified Haviland as class counsel in the MDL. After attempting to get to the
     bottom of the issue, Judge Saris ultimately concluded with respect to Haviland, "truthfully, at this point, I

25   don't trust you." Hearing Tr. at 18:14-15 (**Exhibit 2**); *see* Memorandum and Order, *In re AWP*, No. 01-
     12257, at 8 (D. Mass. Jan. 3, 2008) (**Exhibit 9**).

26   [15] Hearing Tr. at 6:15-24; 11:15-17; 13:5-11; 22:22-23:2; 28:16-18 (**Exhibit 2**). Judge Saris has the
     authority to enjoin under the All Writs Act, 28 U.S.C. § 1651(a), and the Anti-Injunction Act, 28 U.S.C.

27   § 2283. An injunction against pursuing overlapping claims and Defendants in this case would be
     "necessary in aid of" the MDL court's jurisdiction to manage and adjudicate the complex class actions

28                                                     5

1   an appropriate dismissal, however.  The New Jersey overlapping defendants then asked

2   Judge Saris to enjoin Haviland from prosecuting the New Jersey case.  In the face of that

3   motion, and after negotiations, Haviland finally agreed to enter into an acceptable order

4   dismissing the overlapping defendants.[16]  Because the MDL class cases, the New Jersey

5   case, and this putative class action are all based upon the same AWP allegations, Judge

6   Saris's orders to dismiss all claims and defendants that overlap with the MDL apply

7   equally here.  The Overlapping Defendants respectfully request that this Court reject

8   Swanston's April 17, 2008 proposed order and, instead, enter the order proposed by the

9   Overlapping Defendants.  *See* **Defendants' Attached Proposed Order A**.  The

10  Overlapping Defendants' proposed order would eliminate the jurisdictional conflicts,

11  conform to Judge Saris's prior directions, and be consistent with the order entered by the

12  New Jersey court.

13  *C. Haviland Notified This Court That He Would Dismiss The Overlapping*

14  *Defendants But Now Refuses To Do So*

15  As he did in the MDL and the New Jersey case, Haviland has taken inconsistent

16  positions with respect to dismissal of the Overlapping Defendants.  In the October 12,

17  2007 Joint Status Report, Haviland unambiguously promised to dismiss the Overlapping

18  Defendants:

19   Plaintiff intends to seek a stipulated dismissal of certain defendants
20   who are also defendants in MDL 1456, and anticipates that it may
     take approximately 30 days to negotiate, prepare and file the
21   stipulated dismissal with this Court.[17]

22

23

24

25  before it.  *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328,
    335 (2d Cir. 1985); *James v. Bellotti*, 733 F.2d 989, 993 (1st Cir. 1984); *see also Newby v. Enron Corp.*,
26  338 F.3d 467, 473-76 (5th Cir. 2003); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202-03 (7th Cir. 1996);
    *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202 (3d Cir. 1993); *Manual for Complex Litigation Fourth*
27  § 21.42, at 458-59 & n.937 (2008).
    [16] *See* Order Dismissing Without Prejudice Defendants Overlapping MDL 1456 (**Exhibit 3**).
28  [17] Joint Status Report at 1-2 (**Exhibit 1**).

6

In response, the Overlapping Defendants sent Haviland a proposed order of dismissal functionally identical to the order entered in the New Jersey case.[18]  Haviland rejected this proposal,[19] however, contending incorrectly that Judge Saris did not direct him to dismiss overlapping claims and Defendants.[20]  Although it is true that Judge Saris's order arose in the context of discussion regarding the New Jersey case, her language was unambiguous ("any" conflicting case), and it would be nonsense to believe Judge Saris would approve Haviland's prosecuting in Arizona the same type of overlapping claims that she clearly ordered him to dismiss in New Jersey, even before her July 2008 injunction (discussed below).

On December 10, 2007, and again on April 17, 2008, Haviland filed proposed orders in this Court *purporting* to dismiss overlapping claims and Defendants.[21]  However, neither of the proposed orders would dismiss a single Overlapping Defendant.

### D. Haviland's Ever-Shifting Position Regarding The Overlapping Defendants

On May 12, 2008, Judge Barton entered a Minute Entry Order ("MEO") indicating that the parties' competing proposed orders of dismissal would be transferred to Judge Swann for decision after the parties submitted their Joint Case Management Memorandum.[22]  In the June 16, 2008 Joint Case Management Memorandum, Swanston and Haviland name, *for the first time*, drugs that are not identified in the Second Amended Complaint.[23]  Swanston now asserts that the expanded drug list, not the drugs listed in the Second Amended Complaint, identifies the drugs at issue.  Swanston attempts to add these

---

[18] *See* Email from Dawn Dauphine to Donald Haviland, Larry Crown, and Jorge Franco, Nov. 20, 2007, and attached [Defendants' Proposed] Stipulation for Dismissal of Certain Defendants Without Prejudice and Order Dismissing Certain Defendants Without Prejudice (**Exhibit 10**).

[19] Email from Donald Haviland to Dawn Dauphine, Frederick Herold, and Larry Crown, Dec. 5, 2007, and attached [Plaintiff's Proposed] Stipulation for Dismissal of Certain Claims and Defendants (**Exhibit 11**).

[20] Email from Donald Haviland to Dawn Dauphine, Larry Crown, and Jorge Franco, Dec. 6, 2007 (**Exhibit 12**).

[21] *See* Motion to Dismiss Without Prejudice Certain Claims and Defendants and [Proposed] Order Dismissing Certain Claims and Defendants Without Prejudice, Dec. 10, 2007 (**Exhibits 13 and 14**); Amended [Proposed] Order Dismissing Certain Overlapping Claims Without Prejudice, Apr. 17, 2008 (**Exhibit 15**).

[22] *See* Minute Entry Order, May 12, 2008 (**Exhibit 16**).

[23] Joint Case Management Memorandum, June 16, 2008, at 32 & Ex. I (**Exhibit 17**).

1   new drugs without filing a motion for leave to amend and despite his counsel's affirmative

2   representation that, as of May 12, 2008, the only drugs at issue in the case were those

3   identified in the Second Amended Complaint.[24]   This attempt to add new drugs also

4   violates this Court's long-standing, December 2002 MEO, which required Swanston to file

5   any amended pleadings no later than December 20, 2002, more than five and a half years

6   ago.

7         At the June 27, 2008 hearing, Haviland indicated, *again for the first time*, his

8   view that any drug mentioned in the Second Amended Complaint, regardless of the

9   context in which the drug is discussed or the Defendants with whom the drug is associated,

10   is at issue for any Defendants that manufacture a therapeutically equivalent drug.   For

11   example, Swanston names Ativan (lorazepam) for Baxter in the Joint Case Management

12   Memorandum.[25]   The only reference to Ativan or lorazepam in the Second Amended

13   Complaint relates to "[t]he Wyeth Defendants."[26]   This latest representation is yet another

14   attempt to add new drug allegations without amendment in violation of this Court's

15   December 2002 MEO.

16

17   [24]      THE COURT: Well, are there any drugs at issue in this case other than those identified in the
         complaint?

18               MR. WILLIAMS: Any other drugs at issue? No, your Honor.
                 THE COURT: So there's approximately 160 drugs at issue, I think he said.

19               MR. WILLIAMS: Originally, yes.  But a number of those were also at issue in the MDL, and so
         obviously they would be falling off as overlapping drugs.

20   May 2008 Reporter's Tr. at 11:6-15 (**Exhibit 4**).  Less than two months later, Haviland represented to this
         Court that "counsel keeps echoing that we somehow represented . . . that we're limiting the case to the

21   drugs listed -- listed in the Complaint.  We never said that."  Reporter's Transcript of Proceedings, Status
         Conference, June 27, 2008, at 16:8-12 (**Exhibit 18**).  Haviland went on to state that "[t]he identified drugs

22   in the Complaint are the drugs that we've listed [in Exhibit I to the Joint Case Management
         Memorandum]."  *Id.* at 17:4-5.  This is not true.  A substantial number of the 341 drugs identified in

23   Exhibit I are not named in the Second Amended Complaint despite Williams's representation that less than
         160 drugs remain at issue.  May 2008 Reporter's Tr. at 11:11-15 (**Exhibit 4**); *compare, e.g.*, Joint Case

24   Management Memorandum Ex. I (**Exhibit 17**), listing Ultram (tramadol) for Johnson & Johnson;
         Cardizem (diltiazem), Allegra (fexofenadine Hcl), and Allegra-D (fexofenadine Hcl and pseudophedrine

25   Hcl) for Aventis; and Aggrastat (tirofiban), Brevibloc (esmalol Hcl), Claforan (cefotaxime), Osmitrol
         (mannitol), and Travasol (amino acid injection) for Baxter, *with* the Second Amended Complaint, which

26   does not identify *any* of these drugs.  These are further examples of Haviland's regular practice of making
         contradictory representations to the AWP courts.

27   [25] Joint Case Management Memorandum Ex. I (**Exhibit 17**).
     [26] Second Amended Complaint ¶ 263.

28                                                          8

1

### E.  Settlements And Decisions

2

#### 1.  Track Two Settlement

3   On March 7, 2008, the MDL plaintiffs and the Track Two Defendants filed a joint

4  motion for preliminary approval of the Track Two Settlement.[27]  The Track Two

5  Settlement releases the claims of three classes (the "Track Two Class Members"):

6
7
8
9

> 1) *Medicare Part B Co-Payment Class ("Class 1")* - All natural
> persons in the United States who, from January 1, 1991 through
> January 1, 2005, made, or incurred an obligation to make, any portion
> of a Medicare Part B co-payment for a Class Drug manufactured,
> marketed, sold, or distributed by a Released Company.

10
11
12
13

> 2) *Third-Party Payor MediGap Supplemental Insurance Class
> ("Class 2")* - All Third Party Payors in the United States who, from
> January 1, 1991 through January 1, 2005, made, or incurred an
> obligation to make, reimbursements for any portion of a Medicare
> Part B co-payment for a Class Drug manufactured, marketed, sold, or
> distributed by a Released Company.

14
15
16
17
18
19

> 3) *Consumer and Third-Party Payor Class for Payments Made
> Outside the Medicare Context ("Class 3")* - All natural persons in the
> United States who made, or incurred an obligation to make, a non-
> Medicare Part B payment for a Class Drug manufactured, marketed,
> sold, or distributed by a Released Company, and all Third-Party
> Payors in the United States who made, or incurred an obligation to
> make, non-Medicare Part B reimbursements for a Class Drug
> manufactured, marketed, sold, or distributed by a Released Company,
> during the period from January 1, 1991, through March 1, 2008.[28]

20   All consumer and third-party payor ("TPP") Track Two Settlement Class Members

21  nationwide will release *all claims* related to:   (a) "any drug price published by any

22  commercial price reporting service"; (b) "any drug price . . . provided by any Released

23

24  [27] *See* Class Plaintiffs' and Track Two Defendants' Joint Motion for Entry of an Order Granting
Preliminary Approval of the Track Two Settlement, Certifying Classes for Purposes of Settlement,

25  Directing Notice to the Classes and Scheduling Fairness Hearing, *In re AWP*, No. 01-12257 (D. Mass. Mar.
7, 2008) (**Exhibit 19**); Track Two Settlement Agreement And Release ("Track Two Settlement"), *In re*

26  *AWP*, No. 01-12257 (D. Mass. Mar. 7, 2008) (**Exhibit 20**).
[28] Track Two Settlement at 5-6, 15 (**Exhibit 20**). "Released Companies" include Track Two Defendants

27  and their predecessors, parents, subsidiaries, divisions, affiliates, successors, assigns, and other related
entities. *Id.* at 12.

28                                                                9

1    Company to any such commercial price reporting service"; and (c) "any marketing activity

2    relating to any such price, such as any reference to the difference between (1) a price paid

3    and (2) any reported price or reimbursement rate based on such a reported price, that were

4    or could have been alleged against any Released Company in any of the MDL Class

5    Complaints" with respect to any "Class Drug"[29] manufactured, marketed, sold, or

6    distributed by the Track Two Defendants.[30]   TPP Track Two Settlement Class Members

7    will also release all such claims with respect to *all* drugs manufactured, marketed, sold, or

8    distributed by the Track Two Defendants.[31]   On July 2, 2008, Judge Saris entered her

9    written preliminary approval order ("Track Two Preliminary Approval"), which includes

10   the following mandate:

11
12   Pending Final Approval, no Settlement Class Member . . . shall
     commence, continue or prosecute against [the Overlapping Track
13   Two Defendants] any action or proceeding in any court or tribunal
     asserting any of the matters, claims, or causes of action that are to be
14   released upon Final Approval pursuant to the [Track Two Settlement]
     Agreement, *and are hereby enjoined from so proceeding.*[32]

15   **2.  Track One[33]**

16       The MDL plaintiffs and AstraZeneca settled all Class 1 consumer class claims

17   against AstraZeneca and its affiliates, successors, and predecessors, in law and equity,

18   regarding Zoladex.   AstraZeneca's Class 1 settlement would effect a dismissal of any

19   antitrust, conspiracy, consumer protection, and fraud related claims in this case.[34]

20

21   [29] The "Class Drugs" comprise the drugs listed in Exhibit B to the Track Two Settlement. *See id.* at 7 &
     Ex. B.
22   [30] *Id.* at 11-14.
     [31] *Id.* at 13-14.
23   [32] Track Two Preliminary Approval at 17-18 (emphasis added) (**Exhibit 7**).
     [33] In the MDL, before the commencement of the Track One trial, GlaxoSmithKline agreed to a settlement
24   with Classes 1, 2, and 3. Judge Saris approved the settlement, and an appeal is pending.
          In 2007, Swanston separately settled all claims against the GlaxoSmithKline Defendants
25   (SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline, PLC, and Glaxo Wellcome,
     Inc.). *See* Stipulation Dismissing Action Against the GSK Defendants, with Prejudice, Dec. 7, 2007, and
26   Order Granting Stipulation Dismissing Action Against the GSK Defendants, with Prejudice, Dec. 10, 2007
     (**Exhibit 21**).
27   [34] *See* Settlement Agreement and Release of AstraZeneca, *In re AWP*, No. 01-12257 (D. Mass. May 21,
     2007) (**Exhibit 22**); Order Granting Preliminary Approval of the AstraZeneca Class 1 Settlement,
28

1    The MDL plaintiffs and BMS entered into a binding Memorandum of

2 Understanding in which the parties settled all consumer class claims (the "BMS MOU").

3 The BMS MOU expands the settlement class beyond Class 1 to cover "all individual

4 consumers on a nationwide basis and any such person who was co-insured under Medicare

5 Part B with a MediGap insurer, employer- or union-sponsored health plan, or any other

6 third-party payer for any portion of a payment for one or more of the BMS drugs at issue."

7 The BMS MOU settles all claims "alleged or that could have been alleged in the AWP

8 MDL against defendants BMS, Oncology Therapeutics Network Corporation and

9 Apothecon, Inc." Thus, the BMS settlement in the AWP MDL, like AstraZeneca's Class 1

10 settlement, would effect a dismissal of any antitrust, conspiracy, consumer protection, and

11 fraud related claims in this case. It does so as to all but one drug named in the Second

12 Amended Complaint in this case. *See* **Defendants' Attached Proposed Order B.**

13    Judge Saris entered judgment against the Class 1 consumers in favor of Johnson &

14 Johnson, Centocor, Inc., and Ortho Biotech Products, L.P. Judge Saris found, after a trial,

15 that the spreads on their drugs (Procrit and Remicade) were not unfair or misleading.[35]

16    Finally, Judge Saris denied class certification of the Class 1 consumer claims

17 against the remaining Track One Defendants, Schering-Plough and Warrick, because

18 "plaintiffs [did] not propose[] any adequate and typical representatives of that proposed

19 subclass."[36]  She entered final judgment in favor of Schering-Plough, Schering, and

20 Warrick as to the TPP and other claims, finding that Schering's spreads were not unlawful

21 and Warrick's conduct had not caused any harm.[37]

22

23

24

---

25 Directing Notice to the Class and Scheduling Fairness Hearing, *In re AWP*, No. 01-12257 (D. Mass. Nov. 1, 2007) (**Exhibit 23**).

26 [35] Track One Findings and Order at 5, 7, 12 (**Exhibit 8**); *see also In re AWP*, 491 F. Supp. 2d at 54, 103-04.

27 [36] *In re AWP*, 233 F.R.D. at 230.

[37] Track One Findings and Order at 4, 5, 6, 7, 11 (**Exhibit 8**); *see also In re AWP*, 491 F. Supp. 2d at 108.

28                                                          11

III.   **ARGUMENT**

A.  *Defendants Respectfully Request That This Court Reconsider The March 19,*
    *2008 Order*

Judge Saris's order is broadly worded to require dismissal of overlapping claims and Defendants. Judge Saris had authority to enter the order, and Swanston and Haviland should be required to comply with the order.[38] Haviland clearly understood Judge Saris's order to require dismissal of the overlapping defendants; he stipulated to dismiss the overlapping defendants in the New Jersey case. He should not be permitted to advocate a narrower reading of Judge Saris's order here. Because the claims are tolled under this Court's prior order, Swanston and purported class members will not be injured, and this Court will avoid unnecessary litigation that serves only to waste judicial and other resources.

B.  *This Court Should Dismiss The Overlapping Claims And Defendants For The*
    *Pendency Of The MDL*

The Overlapping Defendants agree that a dismissal without prejudice under Ariz. R. Civ. P. 41(a)(2) would provide one solution to the jurisdictional conflicts. Swanston's proposed order, however, does not dismiss, with or without prejudice, a single Overlapping Defendant and completely fails to comply with existing MDL court orders and injunction. For example, Swanston's proposed order would dismiss only claims for damages, even though the MDL class settlements unequivocally extend to other claims for relief. Similarly, Swanston's proposed order incorrectly asserts that at least one drug remains for each Defendant, because Swanston seeks to expand the drugs at issue beyond those set forth in the Second Amended Complaint. The addition of new drugs cannot be reconciled with this Court's prior rulings, Swanston's prior representations to this Court, Judge Saris's direction to dismiss "conflicting actions," and the injunction in the Track Two Preliminary Approval. It is more than five years too late to try to attempt to bring

---

[38] *See supra* note 15.

1   new drugs into the claims alleged in this case.   In short, Swanston's proposed order

2   violates the Overlapping Defendants' "substantial legal rights," and should be rejected.[39]

3          The Overlapping Defendants respectfully request that this Court instead enter their

4   proposed order.   **Defendants' Attached Proposed Order A.**   The Overlapping

5   Defendants' proposed order prevents jurisdictional conflicts and conforms to this Court's

6   and Judge Saris's directives.  The Overlapping Defendants' proposed order also dismisses

7   all the corporate entities within each Defendant family and thereby avoids the possibility

8   of double recovery from any family group for the same damages.

9      *C. In The Alternative, Dismissal Should Occur On A Drug-By-Drug Basis*

10         In the alternative, the only drugs that may remain are those drugs listed in the

11  Second Amended Complaint that are *not* the subject of pending litigation in the MDL,

12  prior decisions by Judge Saris, or class settlement agreements or memoranda of

13  understanding.[40]

14         *1. All Drugs Implicated In The Track Two Settlement Should Be*

15             *Dismissed From This Case*

16         Upon final approval of the Track Two Settlement, all consumers and TPPs in the

17  MDL settlement classes will release all claims related to the Track Two Defendants'

18  pricing and marketing activities for all drugs implicated by the Track Two Settlement.[41]

19  Judge Saris's injunction in the Track Two Preliminary Approval prohibits Swanston from

20  proceeding with such claims.  In the event this Court does not dismiss all the Overlapping

21  Defendants, this Court should dismiss:  (1) all claims by TPP Settlement Class Members

22  against the Track Two Defendants; as well as (2) all consumer class claims for "Class

23  Drugs" identified in Exhibit B to the Track Two Settlement Agreement.

24

25  [39] *See Schoolhouse Educ. Aids, Inc. v. Haag*, 699 P.2d 1318, 1321-22 (Ariz. Ct. App. 1985) (holding that

26  trial court, in exercising its discretion whether to permit voluntary dismissal of action by plaintiff, under
    Rule 41(a)(2), should examine facts of each case to determine whether plaintiff's dismissal would violate
    any of defendant's substantial legal rights).

27  [40] *See* Joint Case Management Memorandum Defendants' Ex. 5 (**Exhibit 17**).
    [41] Track Two Settlement at 7, 11-13 & Ex. B (**Exhibit 20**).

28                                                    13

1    ### 2.  *All Drugs Implicated In The Track One Settlements And The Johnson*
2    ### *& Johnson Drugs Should Be Dismissed From This Case*

3    Upon final approval of the Track One AstraZeneca Settlement, Class 1 consumers

4    in the MDL will release all claims related to AstraZeneca's pricing and marketing

5    activities for Zoladex.  Accordingly, all of AstraZeneca's Class 1 consumer settlement

6    class members' claims of fraud, conspiracy, violation of Arizona's consumer protection

7    act, and violation of Arizona's antitrust laws with respect to Zoladex will be released.

8    The BMS MOU expands the settlement class beyond Class 1 to cover "all

9    individual consumers on a nationwide basis and any such person who was co-insured

10    under Medicare Part B with a MediGap insurer, employer- or union-sponsored health plan,

11    or any other third-party payer for any portion of a payment for one or more of the BMS

12    drugs at issue." The BMS settlement in the MDL, like AstraZeneca's Class 1 settlement,

13    would effect a dismissal of any antitrust, conspiracy, consumer protection, and fraud

14    related claims in this case.  It does so as to all but one drug named in the Second Amended

15    Complaint in this case, Fungizone.

16    Judgment was entered against the Class 1 consumers in favor of Johnson &

17    Johnson, Centocor, Inc., and Ortho Biotech Products, L.P. because Judge Saris found,

18    following trial, that the spreads on their drugs (Procrit and Remicade) were not unfair or

19    misleading.[42]  Accordingly, all overlapping consumer claims should be dismissed with

20    respect to Procrit and Remicade.

21    In the event this Court does not dismiss all the Overlapping Defendants, this Court

22    should dismiss:  (1) all overlapping Class 1 consumer claims with respect to Zoladex; (2)

23    all consumer claims as to all BMS drugs except Fungizone; and (3) all overlapping Class 1

24    consumer claims with respect to Procrit and Remicade.

25

26

27    [42] Track One Findings and Order at 5, 7, 12 (**Exhibit 8**); *see also In re AWP*, 491 F. Supp. 2d at 54, 103-04.

28    14

### *3. Haviland's Attempt To Add Drugs After The Court-Ordered Deadline To Amend The Complaint Should Not Be Permitted*

In any event, Haviland's recent ploy to suggest additional drugs are at issue more than five years after the deadline to amend the Second Amended Complaint should be rejected. Despite a Court Order barring Swanston and Haviland from amending the pleadings after December 20, 2002, they have attempted to add new drugs. In Plaintiff's Exhibit I to the Joint Case Management Memorandum, Swanston and Haviland identify dozens of drugs that were not identified in the Second Amended Complaint for both Overlapping and Non-Overlapping Defendants. This tactic is in clear violation of a Court Order.

### *4. Swanston Should Be Collaterally Estopped From Litigating Claims As To Self-Administered Drugs*

Judge Saris denied the MDL plaintiffs' motion to certify a nationwide class of persons and entities as to all self-administered drugs ("SADs").[43] Similarly, she denied their request to certify the Class 1 consumer claims against Schering-Plough.[44] As a result, Swanston is collaterally estopped from bringing this action as to SADs and the Schering drugs allegedly at issue.

Courts have applied the doctrine of collateral estoppel to preclude class certification where there was a denial of class certification in a prior case.[45] Collateral estoppel is applicable when (1) the issue or fact to be litigated was actually litigated in a previous

---

[43] *See In re AWP*, 230 F.R.D. 61, 92-96 (D. Mass. 2005); *In re AWP*, 233 F.R.D. at 232.

[44] *In re AWP*, 233 F.R.D. at 230.

[45] *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763 (7th Cir. 2003) (holding that denial of class certification was sufficiently firm to have collateral estoppel effect and unnamed class members who did not participate in federal class action were bound by court of appeals' determination); *Alvarez v. May Dep't Stores Co.*, 49 Cal. Rptr. 3d 892 (Cal. Ct. App. 2006), *cert. denied*, 128 S. Ct. 68 (2007); *Frosini v. Bridgestone Firestone N. Am. Tire, LLC*, 2007 WL 2781656 (C.D. Cal. Aug. 24, 2007); *Lee v. Criterion Ins. Co.*, 659 F. Supp. 813, 823 (S.D. Ga. 1987) (citing *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 336 (1980), for proposition that a denial of class certification stands as an adjudication of one of the issues litigated, and concluding that the Supreme Court's statement, "read with reference to the public policy against subjecting parties to repetitive litigation over an issue that has once been resolved by a court of competent jurisdiction, would seem to settle the matter").

1    proceeding, (2) a final judgment was entered and the determination was essential to the

2    final judgment,[46] and (3) the party against whom the doctrine is to be invoked had a full

3    opportunity to litigate the matter and actually did litigate it.[47]

4          This Court should do the same here.  All three requirements for applying collateral

5    estoppel have been met.  Class certification for SADs was actually litigated in the MDL,

6    the MDL court fully considered the issue and denied class certification as to SADs based

7    on predominance of individual issues and unmanageability of the class, and Swanston was

8    a class member in the MDL and had the opportunity to fully litigate the matter.

9                    ***a. The Issue of Class Certification of SADs Was Actually Litigated***

10                             ***in the MDL***

11         "When an issue is properly raised by the pleadings or otherwise, and is submitted

12   for determination, and is determined, the issue is actually litigated."[48]  The issue of class

13   certification was "actually litigated" in the MDL – the plaintiffs' pleadings sought class

14   certification, the MDL court fully considered the issue, and the court denied class

15   certification as to SADs based on predominance of individual issues and unmanageability.

16         There is no question as to the identity of issues between the MDL and the Swanston

17   case.  Both the MDL plaintiffs and the Swanston putative class members have alleged that

18   the Defendant drug manufacturers published inflated AWPs, thereby causing consumers

19

20   [46] "The rules of res judicata are applicable only when a final judgment is rendered.  However, *for purposes
     of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior*

21   *adjudication of an issue in another action that is determined to be sufficiently firm to be accorded
     conclusive effect.*"  Restatement (Second) of Judgments § 13, at 132 (1982) (emphasis added); *see Robert*

22   *Schalkenbach Found. v. Lincoln Found., Inc.*, 91 P.3d 1019, 1024 (Ariz. Ct. App. 2004) (recognizing
     Restatement (Second) of Judgments § 13 (1982)); *Campbell v. SZL Props., Ltd.*, 62 P.3d 966, 969 (Ariz.

23   Ct. App. 2003) (same); *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1074 (Ariz. Ct. App. 1999) (same);
     *In re Bridgestone/Firestone*, 333 F.3d at 767 (same).

24   [47] *Chaney Bldg. Co. v. City of Tuscon*, 716 P.2d 28, 30 (Ariz. 1986); *Moore Drug Co. v. Schaneman*, 461
     P.2d 95, 97 (Ariz. Ct. App. 1969); Restatement (Second) of Judgments § 27 (1982); *see also Corbett v.*

25   *ManorCare of Am., Inc.*, 146 P.3d 1027, 1033 (Ariz. Ct. App. 2006) (citing *Garcia*, 990 P.2d at 1073
     (noting state elements of collateral estoppel are virtually identical to federal)).  "[O]nce an issue is actually

26   and necessarily determined by a court of competent jurisdiction, that determination is conclusive in
     subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v.*

27   *United States*, 440 U.S. 147, 153 (1979).
     [48] *Chaney Bldg.*, 716 P.2d at 30 (citing Restatement (Second) of Judgments § 27 (1982)).

28                                             16

1  and private health insurers to overpay physicians and pharmacies for prescription drugs.

2  The MDL plaintiffs and the Swanston putative class members seek damages and equitable

3  relief.  Both cases raise claims of fraud, conspiracy, and violation of Arizona's consumer

4  protection act, all of which are premised on the Defendants' alleged pricing and marketing

5  activities.  Defendants should not be forced to re-litigate these issues.

6  Collateral estoppel applies even though Swanston seeks statewide rather than

7  nationwide class certification.  In *Frosini*, the defendants argued that a final order denying

8  class certification in a related case ("*Littell I*") precluded certification of the class.  The

9  plaintiffs argued that the *Littell I* decision *concerned* a nationwide class whereas the

10  putative *Frosini* class was statewide.  The court held that collateral estoppel applied

11  regardless because, among other reasons,[49] the *Littell I* court rejected class certification for

12  a nationwide class on the ground that the plaintiffs in *Littell I* had failed to show that

13  common issues of fact or law predominated over individual issues of proof as to each

14  proposed class.[50]  The *Frosini* court concluded that the state class certification issues

15  presented were identical to the issues of predominance decided by the *Littell I* court and

16  that those issues were necessary to that court's order denying class certification.[51]

17  Similarly, in the MDL, Judge Saris refused to certify either a nationwide TPP class or a

18  nationwide consumer class as to SADs because individual issues would predominate and

19  because of concerns of unmanageability:

> Essentially, I am persuaded that the individual issues of each TPP will
> overwhelm the common questions and render the class action
> inefficient.  The argument that this would be a manageable class is
> too large a pill to swallow.[52]

---

[49] The *Littell I* court had also considered and denied certification for a California statewide class based on the predominance of individual issues.  *Frosini*, 2007 WL 2781656, at *9.

[50] *Id.* at *8-*9.

[51] *Id.* at *10.

[52] *In re AWP*, 230 F.R.D. at 95.

17

1

           **_b._**   **_There Was a Final Judgment and the Determination Was_**

2

                    **_Essential to the Judgment_**

3

      Judge Saris's class certification ruling is "final" for collateral estoppel purposes.  In

4

*Lummus Co. v. Commonwealth Oil Refining Co.*, the Second Circuit held:

5

6

7

8

9

> Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291,
> ought nevertheless be considered "final" in the sense of precluding
> further litigation of the same issue, turns upon such factors as the
> nature of the decision (i.e., that it was not avowedly tentative), the
> adequacy of the hearing, and the opportunity for review.  "Finality" in
> the context here relevant may mean little more than that the litigation
> of a particular issue has reached such a stage that a court sees no
> really good reason for permitting it to be litigated again.[53]

10

      This Court should not allow Swanston to re-litigate class certification for SADs.

11

Judge Saris carefully considered the issue.[54]  In her Consolidated Order re Motion for

12

Class Certification, Jan. 30, 2006, she ruled:

13

14

15

> The Court declines to certify a class of persons or Third-Party Payors
> who made payments or reimbursements for self-administered drugs
> not appearing in the appended Table of Subject Drugs.  This denial is
> *with prejudice.*[55]

16

Judge Saris's class certification rulings have not been appealed.

17

           **_c._**   **_Swanston and the Putative Class Members Had the Opportunity_**

18

                   **_to Litigate the Issue_**

19

      "[T]he preclusive effect of a judgment is limited to parties and persons in privity

20

with parties."[56]  Swanston and the members of the putative statewide class sought to be

21

certified in this case were members of the nationwide class sought to be certified in the

22

23

24

[53] 297 F.2d 80, 89 (2d Cir. 1961); *see also Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) ("In

25

this age of complex litigation, with multiple suits often arising from one occurrence, it ordinarily makes no sense to relitigate the same issues between the same parties, with the possibility of inconsistent results. Once litigated in a fair forum, that result should be binding.").

26

[54] *See In re AWP*, 230 F.R.D. at 92-96 (discussing reasons for denying class certification as to a SAD class).

27

[55] *In re AWP*, 233 F.R.D. at 232 (emphasis added).

[56] *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 759 P.2d 607, 612 (Ariz. 1988).

28

1    MDL.   In addition, Swanston is represented by Haviland who, until the time of his

2    disqualification as class counsel, represented the plaintiffs in the MDL.

3         **5.   Swanston Should Be Collaterally Estopped From Litigating Claims As**

4              **To The Schering Drugs Allegedly At Issue For Exactly The Same**

5              **Reasons**

6         Again, all three requirements for applying collateral estoppel are satisfied.   The

7    class certification issue was actually litigated in the MDL, the MDL court fully considered

8    the issue, and the court denied class certification as to the Class 1 consumers of the

9    Schering drugs because "plaintiffs [did] not propose[] any adequate and typical

10   representatives of that proposed subclass."[57]   This case was pending (and Haviland was

11   representing Swanston and the MDL class) at the time class certification was sought in the

12   MDL.   But, Judge Saris found that, to be a typical and adequate class representative, a

13   plaintiff had to demonstrate that he had paid for at least one of the subject drugs

14   manufactured by that defendant on the basis of AWP.[58]   Swanston does not meet that

15   standard.   The judgment entered in the MDL in favor of Schering-Plough, Schering, and

16   Warrick is now final.[59]   Swanston should not now be permitted to re-litigate an issue that

17   he (and his counsel) had a full and fair opportunity to litigate in the MDL.

18   **IV.   CONCLUSION**

19        The Defendants respectfully request that this Court dismiss all claims against the

20   Overlapping Defendants.   An appropriate order is attached as **Proposed Order A** hereto.

21   Alternatively, the Defendants respectfully request that the Court dismiss all claims relating

22   to all drugs that are the subject of pending litigation in the MDL, prior decisions by Judge

23   Saris, or class settlement agreements.   An appropriate alternative order is attached as

24   **Proposed Order B** hereto.   In any event, the Defendants respectfully request that this

---

[57] *Compare In re AWP*, 233 F.R.D. at 230, 232 (listing among other drugs for which class certification was sought albuterol, Integrilin, Intron-A, and Temodar), *with* Second Amended Complaint ¶ 259 (naming those same drugs).

[58] *See In re AWP*, 233 F.R.D. at 230; *see also In re AWP*, 230 F.R.D. at 78-80.

[59] Track One Findings and Order at 6, 11 (**Exhibit 8**).

1   Court bar Swanston's attempt to name additional drugs not listed in the Second Amended

2   Complaint.

3          DATED this 6th day of August, 2008.

4

5                                   **HOLLOWAY ODEGARD FORREST & KELLY, P.C.**

6

7                                   By_____
                                    Vincent J. Montell, Esq.
8                                   **Holloway Odegard Forrest & Kelly,**
                                    **P.C.**
9                                   3101 N. Central Avenue, Suite 1200
                                    Phoenix, Arizona  85012
10                                  Telephone:  (602) 240-6670
                                    Facsimile:  (602) 240-6677
11                                  *Attorneys for Baxter Healthcare*
                                    *Corporation and Baxter International Inc.*
12

13

14                                  J. Andrew Jackson, Esq.
                                    **Dickstein Shapiro LLP**
15                                  1825 Eye Street, NW
                                    Washington, DC  20006
16                                  Telephone:   (202) 420-2200
                                    Facsimile:   (202) 420-2201
17                                  *National Counsel for Baxter Healthcare*
                                    *Corporation and Baxter International Inc.*

18  **COPY** of the foregoing electronically filed
    this 6th day of August, 2008 to:
19

20  Clerk of the Superior Court

21  **COPY** of the foregoing hand-delivered
    this 6th day of August, 2008 to:
22

23  Honorable Peter B. Swann

24  **COPY** of the foregoing e-filed with Lexis/Nexis
    and copied to:
25

26  All counsel of Record

27

28                                          20

1

**CERTIFICATE OF ELECTRONIC SERVICE**

2      I hereby certify that I caused a true and correct copy of the foregoing Defendants'

3  Brief Regarding Plaintiff's Proposed Order of Dismissal and Related Motion for Partial

4  Reconsideration of Ruling Dated March 19, 2008 to be served electronically on all counsel

5  of record in this case via Lexis-Nexis File & Serve on August 6, 2008.

6

7

8                                           /s/ Eden M. Heard
                                            Eden M. Heard

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28