UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS ) Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>   *The City of New York, et al.*<br><br>*v.*<br><br>   *Abbott Laboratories, et al.* | ) ) Judge Patti B. Saris ) ) ) ) ) ) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO BARR LABORATORIES, INC.**

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Defendant Barr Laboratories, Inc. ("Barr") in support of their Motion for Partial Summary Judgment.

**I.   BARR SPECIFIC FACTS**

**1.**   The Barr Drug and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto. This exhibit also sets forth Barr's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Barr AMPs. The exhibit notes which NDCs are associated with package sizes that set the FUL.

**2.**   The specific Barr drug at issue is the Cefadroxil 500 MG Capsule.

**3.**   Barr manufactures and sells prescription drugs in the State of New York, including the City of New York and in the Counties, that are eligible for reimbursement under Medicaid. *See* Barr Laboratories, Inc.'s Answer to Plaintiffs' Revised First Amended Consolidated Complaint ("Barr Answer") [Docket #4830] at ¶ 44.

**4.** Barr has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8. *See* Barr 30(b)(6) (Timothy Catlett) 5/7/08 Deposition Transcript (Exhibit B) at 42:13-14 (hereinafter "Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B)"); Barr Answer at ¶ 132.

**Barr Set and Reported Its AWPs and WACs**

**5.** At the time of launch of a new product Barr sets an AWP for its drugs. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 61:6-13.

**6.** Barr has only one AWP at any time. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 70:22-71:7.

**7.** At all times, from 1997 to 2005, Barr reported the AWPs for its drugs to all three of the national pricing compendia. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 71:3-7; 236:17-237:6.

**8.** In March, 1999, Barr began reporting Suggested Wholesale Price ("SWP") instead of AWP. *See* Barr 30(b)(6) (Timothy Catlett) 5/30/07 Deposition Transcript (Exhibit C) at 174:12-18 (hereinafter "Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit C)"). Barr knew that SWP was equivalent to AWP, and used the terms interchangeably. *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit C) at 119:4-6.

**9.** At all times from 1997 to 2005, Barr reported the same AWP to all three of the national compendia. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 70:22-72:1.

**10.** Barr set WACs for its products and reported them to the pricing compendia. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 72:8-73:5; Barr 30(b)(6) (Lauren Cunningham) 2/2/07 Deposition Transcript (Exhibit D) at 60:11-15 (hereinafter "Barr 30(b)(6) (Cunningham) 2/2/07 Dep. (Exhibit D)").

11. Barr only had one WAC at a given time. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 73:11-14.

12. Barr reported the same WAC to all of the national compendia. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 73:6-14.

13. Barr knew and controlled the prices for its drugs that were published by the national drug pricing compendia. Barr knew that the pricing compendia would publish the prices that Barr provided to them. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 87:3-9.

14. All published AWPs and WACs would reflect what Barr had submitted to the pricing compendia. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 87:3-9. Barr would review forms sent to it by First DataBank, Redbook and MediSpan to ensure the accuracy of the prices before they were published. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 75:10-76:3; 77:9-19; Barr 30(b)(6) (Cunningham) 2/2/07 Dep. (Exhibit D) at 66:11-68:7; 87:13-21. Barr is not aware of any instances in which the publishers did not publish what Barr reported. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 78:5-19; Barr 30(b)(6) (Cunningham) 2/2/07 Dep. (Exhibit D) at 60:19-61:14.

15. When Barr changed the AWP or WAC price of a drug, it would inform the pricing compendia by letter and request confirmation that the compendium had received Barr's pricing change. *Id.*

16. Barr reported false prices via the publishing compendium knowing that pharmacies would present claims to New York's Medicaid program which would be reimbursed based on a formula that utilized the inflated price to determine the appropriate reimbursement amount. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 182:18-183:1; 53:3-16.

17.     Barr knows that CMS establishes the Federal Upper Limit (FUL) by taking 150% of the lowest published price.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 58:4-59:17.

**Barr's Published AWPs and WACs had No Relationship to Actual Prices**

18.     Barr knows that and admits that its reported AWPs were not tethered to the actual prices that anyone pays.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 80:20-81:11.

19.     Barr defines AWP as a "reference price."  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 80:20-81:3.

20.     For each of its generic drugs, Barr sets its AWPs approximately 10% below the AWPs of the branded versions of the drugs.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 61:6-13.

21.     Barr admitted that it does not sell any of its generic drugs at AWP.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 253:11-21.

22.     When Barr lowers the dead net price to any of its customers, it is not reflected in Barr's reported prices.  *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit B) at 190:6-13.

23.     Barr's WACs were not set based on actual prices, but rather Barr set its WACs based on its competitors' WACs: if Barr was the first generic manufacturer to enter the market, it set its WAC at approximately 20% below the WAC of the branded version of the drug (*see* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 61:14-17).  If Barr was not the first to enter the market and competition existed, its WAC would not be set based on market conditions.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 62:11-64:2.

24.     Barr provides numerous incentives, discounts and rebates to its wholesaler and distributor customers, including base rebates, chargebacks, billbacks or slotting, market share agreements, marketing fee credits, preferred products incentive, free goods allowances, full line

rebates, prompt pay discounts, incremental rebates, volume discounts, and preferred customer discounts, among others. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 217:12-221:17.

25. For example, Barr offered Bindley Western, a wholesaler, a contract to sell Cefadroxil at the WAC price listed in the offer and a 50% rebate. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 115:10-19; Exhibit E (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 18 (Bid Proposal)). Barr made a presentation to McKesson for Warfarin Sodium offering a 15-18% rebate off of WAC. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 137:18-21; Exhibit F (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 20 (Bid Proposal)). Barr offered Harvard Drug Group, a distributor, a rebate of 70-71% for Cefadroxil. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 153:12-155:5; Exhibit G (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 22 (Bid Proposal)). Barr provided this customer with such a "significant" rebate because it did not have the electronic capability to process chargebacks. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 155:13-156:5. Barr provided significant rebates on Cefadroxil to all of its customers. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 155:6-12. Barr offered Medco a quarterly rebate payment on Warfarin Sodium of 33.3%. *See* Exhibit H (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 27 (Memo from Catlett to file including AWP, invoice price, new dead net price, difference between deadnet price and AWP, and percent rebate)). Barr kept track of the difference (i.e. spread) between Medco's deadnet price and the AWP (81% off). *See id*.

26. Rebates, discounts, chargebacks and other pricing incentives lowered the wholesaler's dead net cost below WAC. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 223:12-225:1.

27. The rebates, discounts, chargebacks and other pricing incentives paid by Barr reduced the wholesaler's actual acquisition cost below the invoice price. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 221:18-222:5.

28. Barr considered "invoice dollars" to be "gross sales", and calculated its net sales by subtracting payment terms, rebates, allowances, shelf stock adjustments, returns, discounts and chargebacks. *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit C) at 79:8-80:14.

29. Barr provided its pharmacy customers with numerous incentives including base rebates, billbacks or slotting, market share agreements, marketing fee credits, preferred products incentives, free goods allowances, full line rebates, prompt pay discounts, volume discounts, and preferred customer discounts, among others. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 217:12-221:17.

30. These rebates, discounts and other pricing incentives reduced Barr's pharmacy customers' actual acquisition price. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 180:11-181:2; 221:18-222:5. A "substantial number of customers" obtained rebates or had their net price adjusted accordingly. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 177:21-178:22.

**Barr Marketed the Spread**

31. Barr knew that eligibility for reimbursement by Medicaid was an important issue for its customers; it was standard procedure for Barr to include the AWP and contract or invoice prices in its bids to both its wholesaler customers (*see* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 115:20-116:6; 200:6-14) and its retail customers (*see* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 281:4-11).

**Barr's AMPs**

32. At all times, from 1997 to 2005, Barr has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute. *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit B) at 233:1-24; *Mylan*, 2008 WL 5650859 at *30.

Dated: May 15, 2009

          Respectfully submitted,

          **City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

          **KIRBY McINERNEY, LLP**
          825 Third Avenue
          New York, New York 10022
          (212) 371-6600

          /s/ Joanne M. Cicala
By:  Joanne M. Cicala
      James P. Carroll Jr.
      Jocelyn R. Normand
      Kathryn B. Allen

      Ross B. Brooks, Esq.
      MILBERG LLP
      One Pennsylvania Plaza
      New York, NY 10119
      (212) 594-5300
      *Special Counsel for the County of Nassau*

      Theresa A. Vitello, Esq.
      LEVY PHILLIPS &
      KONIGSBERG, LLP
      800 Third Avenue
      New York, NY 10022
      (212) 605-6205
      *Counsel for the County of Orange*

**CERTIFICATE OF SERVICE**

    I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO BARR LABORATORIES, INC., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.  The confidential exhibits to the foregoing have been served electronically directly to counsel for Barr Laboratories, Inc.

Dated:  May 15, 2009

                                                                                                                       _____/s/_____
                                                                       James P. Carroll, Jr.
                                                                       Kirby McInerney LLP
                                                                       825 Third Avenue, 16th Floor
                                                                       New York, NY 10022
                                                                       (212) 371-6600

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| THIS DOCUMENT RELATES TO:<br><br>    *The City of New York, et al.*<br>*v.*<br>    *Abbott Laboratories, et al.* | ) ) ) ) ) ) ) ) |

MDL NO. 1456
Civil Action No. 01-12257-PBS
 Subcategory Case No: 03-10643-PBS

Judge Patti B. Saris

# CONFIDENTIAL EXHIBITS

## TO
## PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO BARR LABORATORIES, INC.

**MAY 15, 2009**

**SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL**