UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>) MDL NO. 1456<br>) Civil Action No. 01-12257-PBS<br>) Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>    *The City of New York, et al.*<br>*v.*<br>    *Abbott Laboratories, et al.* | )<br>)<br>) Judge Patti B. Saris<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO MYLAN LABORATORIES INC., MYLAN PHARMACEUTICALS INC., AND UDL LABORATORIES INC.**

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Mylan Laboratories Inc., Mylan Pharmaceuticals Inc., and UDL Laboratories Inc. (collectively "Mylan") in support of their Motion for Partial Summary Judgment.

**I.    MYLAN SPECIFIC FACTS**

1.    The Mylan Drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto. This exhibit also sets forth Mylan's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limits ("FUL") and Mylan's AMPs. The exhibit notes which NDCs are associated with package sizes that could have set the FUL.

2. The specific Mylan drugs at issue are Clonazepam .5 MG Tablet, Enalapril Maleate 20 MG Tablet, Lorazepam 1MG Tablet, Metropolol 100 MG Tablet and Ranitidine 150 MG Tablet.

**Mylan's Knowledge of the Federal Medicaid Rebate Agreement**

3. Mylan has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.  *See* Mylan Laboratories, Inc. 30(b)(6) (Brian Roman) (rough copy) dated 11/16/06 (Exhibit B) at 55:18-56:2; Mylan Laboratories, Inc. 30(b)(6) (Brian Roman) (rough copy) dated 7/26/06 ("Mylan 30(b)(6) (Roman) 7/26/06 Dep.") (Exhibit C) at 57:12-58:17.  Defendants Mylan Laboratories Inc., Mylan Pharmaceuticals Inc. and UDL Laboratories, Inc.'s Answer and Affirmative Defenses to Plaintiffs' revised First Amended Consolidated Complaint [Docket # 4855] ("Mylan Answer") at ¶¶132.& 168; *Commonwealth of Mass. v. Mylan*, 2008 WL 5650859 (D.Mass) ("*Mylan*") at *22.

4. Mylan was required as matter of law to familiarize itself with the legal requirements, standards and procedures of the Medicaid program. *Mylan* at *25.

5. Mylan participates in and is aware of State Medicaid reimbursement formulas, including the New York State Medicaid Program.  *See* Exhibit D (Mylan 30(b)(6) (Workman) 9/26/07 Dep. Exhibit 4 (Mylan Medicaid Reimbursement Comparison Worksheet listing Medicaid reimbursements formulas for all states)); *see also* Exhibit E  (Cunard 10/26/07 Dep. Exhibit 13; *see* Deposition of Robert Cunard dated 10/30/08 ("Cunard 10/30/08 Dep.") (Exhibit F) at 92:2-13; *see also* Exhibit G (Cunard 10/26/07 Dep. Exhibit 19 (Mylan August 2001 email string and attachment regarding Ohio State Medicaid formula)); *see* Deposition of Stephen Krinke dated 6/11/08 ("Krinke 6/11/08 Dep.") (Exhibit H) at 353:12-354:21.

6.     Mylan knew that AWP, WAC, and FUL/MAC were used by state Medicaid agencies to determine reimbursement. *See* Exhibit I (Mylan 30(b)(6) (Workman) 9/26/07 Dep. Exhibit 3 (Mylan reimbursement comparison worksheet comparing Mylan generic product to brand product and generic competitor, which identifies the reimbursement percentages relating to AWP and WAC); *See* Cunard 10/30/08 Dep. (Exhibit F) at 92:2-13; Deposition of Robert Cunard dated 10/26/07 ("Cunard 10/26/07 Dep.") (Exhibit J) at 121:2-122:21; Krinke 6/11/08 Dep. (Exhibit H) at 351:1-5 and 423:12-424:1; *see* Mylan 30(b)(6) (Roman) 7/26/06 Dep. (Exhibit C) at 45:15-20; Exhibit K (Krinke 06/11/08 Dep. Exhibit 40 (Email, dated 1/18/02, demonstrating Mylan's knowledge that the State of New York's Medicaid reimbursement formula was AWP minus 10 percent)).

7.     Mylan knew that the primary purpose for reporting its AWP, was to have its products recognized by databases and by third-party payers, including Medicaid, which reimbursed customers (*see* Mylan Laboratories, Inc. 30(b)(6) (Stephen Krinke) (rough copy) dated 9/25/07 ("Mylan 30(b)(6) (Krinke) 9/25/07 Dep.") (Exhibit L) at 31:11-32:14, 87:18-88:1).

8.     Mylan knew that the majority of brand and generic prescriptions were covered by third-party reimbursement (*see* Mylan 30(b)(6) (Krinke) 9/25/07 Dep. (Exhibit L) at 307:3-308:14; *see also* Exhibit M (Mylan 30(b)(6) (Krinke) 9/25/07 Dep. Exhibit 12).

**Mylan Set and Reported Its AWPs and WACs**

9.     For each of its generic drugs, Mylan generally set the AWP, which it reported to third-party databases, at about 10% to 11% below the corresponding brand AWP. *See* Mylan 30(b0(6) (Krinke) 9/25/07 Dep. (Exhibit L) at 69:21-70:3; Mylan Laboratories, Inc. 30(b)(6) (Brian Roman) (rough copy) dated 8/2/07 ("Mylan 30(b)(6) (Roman) 8/2/07 Dep.") (Exhibit N) at 142:8-13; *See* Cunard 10/26/07 Dep. (Exhibit J) at 74:18-75:2.  If there was generic

competition for the product, then Mylan's AWP may be set at 11% off the brand AWP. *See* Mylan 30(b)(6) (Roman) 8/2/07 Dep. (Exhibit N) at 142:14-19.

10. Mylan set its WAC for products in competitive markets based on the existing competitive conditions. Where there was other generic competition for Mylan drugs, Mylan set WAC by comparing its price to that of its competitors. *See* Mylan 30(b)(6) (Roman) 8/2/07 Dep. (Exhibit N) at 174:14-175:9.

11. During the period 1997 to 2005, Mylan communicated AWPs for its products to the publishing compendia, which published them. *See* Mylan 30(b)(6) (Roman) 7/26/07 Dep. (Exhibit C) at 48:19-49:02; *see also* Cunard 10/26/2007 Dep. (Exhibit J) at 57:20-59:21; *see also Mylan*, 2008 WL 5650859 at *8.

12. Mylan reported its AWPs to Red Book, Medi-Span, and FDB. *See* Exhibit O (Mylan 30(b)(6) (Workman) 9/26/07 Dep. Exhibit 9 (Mylan memo, dated 1/13/98, explaining that every AWP is reported to FDB, Medi-Span, Red Book, and HCFA)); Exhibit P (Floyd 12/3/08 Dep. Exhibit 12 (Mylan AWP price change notification, dated 5/21/99, sent to the compendia)); Exhibit Q (Floyd 12/3/08 Dep. Exhibit 18 (Mylan memo, dated 6/21/99, notifying FDB, Medi-Span, and Red Book of changes to its AWPs.)).

13. During the period 1997 to 2005, Mylan reported or caused to be reported WACs for its drugs to FDB. *See* Mylan 30(b)(6) (Roman) 7/26/07 Dep. (Exhibit C) at 49:03-13; s*ee* Exhibit Q (Floyd 12/3/08 Dep. Exhibit 18 (Mylan email, dated 11/13/98, discussing changes in Mylan AWPs and WACs, including a handwritten note that FDB will be informed of those changes); *see also Mylan*, 2008 WL 5650859 at *8.

**Mylan's Knowledge of the Federal Upper Limits**

14. Mylan knew that the FUL was a reimbursement limit established by HCFA/CMS *See* Mylan 30(b)(6) (Krinke) 9/25/07 Dep. (Exhibit L) at 194:12-20; *see also* Mylan 30(b)(6) (Roman) 7/26/07 Dep. (Exhibit C) at 45:15-20. Mylan knew that the FUL calculation was based on a review of the compendia's published prices, be they AWP or WAC, where at least three competing brand or generic products were at market, and the FUL would be calculated at 150 percent of the lowest published price. *See* Mylan 30(b)(6) (Krinke) 9/25/07 Dep. (Exhibit L) at 194:22-195:20; *see also* Mylan 30(b)(6) (Roman) 7/26/07 Dep. (Exhibit C) at 172:16-173:1.

15. Mylan monitored its competitors' WACs along with the established FUL level in order to set Mylan prices to be both consistent with its competitors' WACs and also maximize third-party reimbursement to customers. *See* Mylan Laboratories, Inc. 30(b)(6) (David Workman) (rough copy) dated 9/26/07 (Exhibit R) at 213:10-215:7; Exhibit S (Mylan 30(b)(6) (Workman) 9/26/07 Dep. Exhibit 10 (Mylan spreadsheet, dated 8/25/98, comparing Mylan WAC to that of Watson along with the FUL and an analysis of lost Medicaid reimbursement)); *see also* Exhibit T (Cunard 10/30/08 Dep. Exhibit 15 (Mylan email to Wal-Mart, dated 3/16/01, communicating its efforts to increase customer reimbursement)).

16. Mylan knew, at various times, of the prices at which certain of their products were sold to providers and were aware, at various times, that FULs applied to certain of its products generic drugs. Mylan Answer at ¶150.

**Mylan's Paid Wholesalers Chargebacks, Rebates and Discounts**

17. At all times from 1997 to 2005, Mylan sold drugs to the three national wholesalers and/or one of their predecessor companies. *See* Mylan 30(b)(6) (Roman) 7/26/07 Dep. (Exhibit C) at 152:17-154:9; Exhibit U (Floyd 12/03/2008 Dep. Exhibit 51 (Mylan email, dated January 7, 2000, with attached customer price comparison worksheet identifying the

national wholesalers); see Exhibit V (Mauro 6/27/08 Dep. Exhibit 1 (Account relationships document demonstrating contracts with various Mylan customers, including Cardinal, McKesson, and AmeriSource Bergen)); *see* Exhibit W (Mylan 30(b)(6) (Workman) 9/26/07 Dep. Exhibit 8 (Mylan letter to Cardinal, dated 7/19/99, providing AWP, WAC and contract prices for Mylan products)).

18. Mylan knew that its net prices to wholesalers and distributors were below WAC because of the discounts, rebates and chargebacks it paid. *See* Mylan 30(b)(6) (Roman) 7/26/06 Dep. (Exhibit C) at 69:06-71:21; *see* Cunard 10/26/07 Dep. (Exhibit J) at 95:09-17, 239:21-240:08 and 303:14-304:01; *see also* Exhibit X (Duda 4/16/08 Dep. Exhibit 3); Exhibit Y (Duda 4/16/08 Dep. Exhibit 20); *see* Mylan Laboratories, Inc. 30(b)(6) (David Workman) dated 6/26/08 Dep. (rough copy) (Exhibit Z) at 217:2-221:20; *see* Exhibit AA (Duda 4/16/08 Dep. Exhibit 9 (Mylan communication to AmerisourceBergen, dated November 20, 2001, demonstrating all contract prices below WAC).

**Mylan's Published AWPs and WACs Had No Relationship to Actual Prices**

19. Mylan knows that none of its customers pay AWP for generic drugs. *See* Krinke 6/11/08 Dep. (Exhibit H) at 488:19-22; *see also Mylan*, 2008 WL 5650859 at *8.

20. The WAC that Mylan reported or caused to be reported does not account for chargebacks and discounts paid by Mylan to wholesalers. *See* Mylan 30(b)(6) (Roman) 7/26/06 Dep. (Exhibit C) at 149:23-150:16; *see also Mylan*, 2008 WL 5650859 at *8.

21. Mylan did not account for prompt pay discounts, rebates and credits in its reported prices. Mylan Answer at ¶155.

22. Mylan admits that it controls its discounting policies. Mylan Answer at ¶156.

23. Manufacturers knew its published WACs were false. *Mylan*, 2008 WL 5650859 at *26.

24. Mylayn reported WACs that were grossly out of whack with the prices that were actually paid. *Mylan*, 2008 WL 5650859 at *26.

25. Mylan set pricing tiers for various customers, which were always below WAC. *See* Cunard 10/30/08 Dep. (Exhibit F) at 258:5-13, 260:2-23; Exhibit BB (Cunard 10/30/08 Dep. Exhibit 22 (Mylan email, dated September 16, 2001, demonstrating for various products every tier of pricing below WAC)); *see* Deposition of Joseph Duda dated 4/16/08 (Exhibit CC) at 157:14-20; *see also* Exhibit DD (Duda 4/16/08 Dep. Exhibit 2) and Exhibit EE (Duda 4/16/08 Dep. Exhibit 5) (Mylan documents demonstrating all contract prices or bid prices that were less than WAC ).

**OIG Guidelines**

26. Mylan knew that under the OIG Guidelines manufacturers were expected to provide accurate pricing data. *See* Exhibit FF (Cunard 10/30/08 Dep. Exhibit 2 (Mylan email string from October 2002 describing the expectations of the OIG guidelines)); *see also* Exhibit GG (Cunard 10/30/08 Dep. Exhibit 3 (OIG Compliance Program Guidance for Pharmaceutical Manufacturers)).

**Mylan Marketed the Spread**

27. Mylan knew its customers evaluated and made purchasing decisions based on the reimbursement spread between the customers' cost and the reimbursement price of an AWP, WAC or FUL/MAC. *See* Exhibit HH (Cunard 10/26/07 Dep. Exhibit 20 (Omnicare email to Mylan, dated April 2001, requesting AWP and WAC updates and explaining that Omnicare monitors Medicaid changes and FULs in the states where it operates)).

28.     Mylan knew that reimbursement was important to its customers and even provided customers with recommendations regarding third-party reimbursement. *See* Deposition of Janet Floyd dated 12/3/08 ("Floyd 12/3/08 Dep.") (Exhibit II) at 55:22-56:12; *see also* Exhibit JJ (Floyd 12/3/08 Dep. Exhibit 14 (Collection of Mylan price agreements distributed to various customers on April 9, 1998, that furnish both AWP and WAC prices)); *see also* Exhibit KK (Cunard 10/26/07 Dep. Exhibit 12 (2000 Mylan email sent to a customer demonstrating Mylan's awareness of customer sensitivity to Medicaid reimbursement)).

**Mylan's AMPs**

29.     At all times, from 1997 to 2005, Mylan has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute. *See* Mylan 30(b)(6) (Roman) 7/26/06 Dep. (Exhibit C) at 81:07-13 and 130:06-23; *See* Mylan 30(b)(6) (Roman) 11/16/2006 Dep. (Exhibit B) at 38:16-39:12; Cunard 10/30/08 Dep. (Exhibit F) at 58:20-59:25; *see also Mylan*, 2008 WL 5650859 at *30.

Dated: May 15, 2009

                                      Respectfully submitted,

                                      **City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

                                      **KIRBY McINERNEY, LLP**
                                      825 Third Avenue
                                      New York, New York 10022
                                      (212) 371-6600

                                      /s/ Joanne M. Cicala_____
                            By:    Joanne M. Cicala
                                      James P. Carroll Jr.
                                      Jocelyn R. Normand
                                      Kathryn B. Allen

Ross B. Brooks, Esq.
MILBERG  LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
*Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
LEVY PHILLIPS &
KONIGSBERG, LLP
800 Third Avenue
New York, NY 10022
(212) 605-6205
*Counsel for the County of Orange*

**CERTIFICATE OF SERVICE**

    I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO MYLAN LABORATORIES, INC., MYLAN PHARMACEUTICALS, INC., AND UDL LABORATORIES, INC., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties. The confidential exhibits to the foregoing have been served electronically directly to counsel for Mylan Laboratories, Inc., Mylan Pharmaceuticals, Inc., and UDL Laboratories, Inc.

Dated:  May 15, 2009

                                                                         /s/
                                                         James P. Carroll, Jr.
                                                         Kirby McInerney LLP
                                                         825 Third Avenue, 16th Floor
                                                         New York, NY 10022
                                                         (212) 371-6600

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>  *The City of New York, et al.*<br><br>*v.*<br><br>  *Abbott Laboratories, et al.* | ) ) ) ) ) ) ) ) Judge Patti B. Saris |

# CONFIDENTIAL EXHIBITS

TO
**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO MYLAN LABORATORIES INC., MYLAN PHARMACEUTICALS INC., AND UDL LABORATORIES INC.**

**MAY 15, 2009**

**SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL**