UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *The City of New York, et al.* <br> *v.* <br> *Abbott Laboratories, et al.* | ) <br> ) MDL NO. 1456 <br> ) Civil Action No. 01-12257-PBS <br> ) Subcategory Case No: 03-10643-PBS <br> ) <br> ) Judge Patti B. Saris <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO PAR PHARMACEUTICALS COMPANIES, INC. AND PAR PHARMACEUTICAL, INC.**

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Par Pharmaceuticals Companies, Inc. and Par Pharmaceutical, Inc. (collectively "PAR") in support of their Motion for Partial Summary Judgment.

**I.   PAR SPECIFIC FACTS**

**1.**   The PAR drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto.  This exhibit also sets forth PAR's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Par's AMPs. The exhibit notes which NDCs are associated with package sizes that set the FUL.

**2.**   The specific PAR drugs at issue are the Clonazepam .5 MG Tablet, Enalapril Maleate 20 MG Tablet, Metropolol 100 MG Tablet and Ranitidine 150 MG Tablet.

**3.**   PAR has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.  *See* Answer of Defendants Par Pharmaceuticals Companies,

Inc. and Par Pharmaceutical, Inc. to Plaintiffs' Revised First Amended Consolidated Complaint [Dkt #4827] ("PAR Answer") at ¶132; *see also* Deposition of PAR Pharmaceuticals 30(b)(6)(Nick DiMaio) dated 5/6/08 ("PAR 30(b)(6)(DiMaio) 5/6/08 Dep.") (Exhibit B) at 27:14-18.

4.     PAR participates voluntarily in the state Medicaid programs, including the New York State Medicaid Program. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 150:7-13.

5.     PAR knew that eligibility for reimbursement by Medicaid was a very important issue for its customers and in fact was required to ensure that that its drugs were Medicaid reimbursable. *See* Deposition of Karen Andrus dated 10/16/07 ("Andrus Dep.")(Exhibit C) at 46:16-48:10; Deposition of Julie Trendowicz dated 4/1/09 ("Trendowicz 4/1/09 Dep.") (Exhibit D) at 165:18-21.

6.     PAR knew that the AWPs and WACs for PAR drugs were used for reimbursement purposes, including for state Medicaid reimbursement purposes. *See* Trendowicz 4/1/09 Dep. (Exhibit D) at 125:20-126:14, 129:20-131:18; Andrus Dep. (Exhibit C) at 46:16-48:10.

**PAR Set and Reported Its AWPs and WACs**

7.     PAR sets one WAC and one AWP for each of its products. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 313:10-12.

8.     At all times, from 1997 to 2005, at the time of launch of a new product PAR set an AWP either: (i) at around 10% of the brand AWP if PAR was first to introduce the generic drug; or, (ii) if PAR was not the first, then since AWPs in the generic industry are consistent across the board, then PAR would set the AWP in line with the competition on the market. *See*

PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 42:2-43:4; *see also Commonwealth of Mass. v. Mylan*, 2008 WL 5650859 (D.Mass)("*Mylan*") at *5.

9. Nick DiMaio testified that AWPs for PAR generic products are set at the product launch and PAR will only "manage our AWPs so they compete or they're comparable with our competitive AWPs, so you'll find our AWPs typically match most all the competitors." *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit 1) at 132:14-1336. When lower prices are offered to pharmacies, PAR does not typically lower the AWP because "there's no financial incentive for [PAR] to manage AWP in that way." *Id.* at 133:8-134:2.

10. At all times, from 1997 to 2005, at the time of launch of a new product PAR set a WAC for each drug it sold typically at 20% of the WAC for the bioequivalent branded drug. As competition increases in the generic market, PAR quickly lowered its WAC prices to stay competitive. *See* Deposition of PAR Pharmaceuticals 30(b)(6)(Nick DiMaio) dated 8/16/07 ("PAR 30(b)(6)(DiMaio) 8/16/07 Dep.") (Exhibit E) at 153:18-154:12; *see also Mylan*, 2008 WL 5650859 at *5.

11. At all times, from 1997 to 2005, PAR provided the AWP for its generic drugs to all three of the national pricing compendia – First DataBank, RedBook and Medi-Span. *See* Andrus Dep. (Exhibit C) at 45:11-46:8; *see also* PAR Answer [Dkt #4827] at ¶10. PAR expected the AWPs it submits to the compendia like First Databank to be published. *See* PAR 30(b)(6)(DiMaio) 5/6/08 (Exhibit B) at 162:7-21.

12. PAR maintains that it does not directly report a WAC for each PAR generic drug to the pricing compendia; however, PAR knew that the national pricing compendia collected and reported WAC prices for PAR drugs. *See* Andrus Dep. (Exhibit C) at 99:4-13; *see also Mylan*, 2008 WL 5650859 at *16-17.

**13.** Karen Andrus testified that PAR provided WACs to any customer or entity that was not a reporting service. *See id.* at 52:18-22, 58:15-59:8. Nick DiMaio testified that PAR did not provide WAC pricing to First Databank because First Databank already had it anyway so there was no reason to provide it. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 84:13-85:12. However, according to a document produced by First Databank, on May 27, 2003 Marissa Caputo of PAR emailed to Theresa Castro of First DataBank the WAC pricing for PAR's generic drug Torsemide. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 354:16-355:19; Exhibit F (PAR 30(b)(6)(DiMaio) 5/6/08 Dep. Exhibit 82 (5/27/03 email from Marissa Caputo (PAR) to Theresa Castro (FDB))).

**14.** PAR knew and controlled the AWPs and WACs for its drugs that were published by the national pricing compendia. PAR would periodically get National Drug Data File Product Update Reports from First Databank showing AWP and WAC (WHLNET) pricing for PAR drugs and requesting that PAR verify and update its published pricing. *See* Andrus Dep. (Exhibit C) at 99:4-13, 100:3-21, 111:14-113:22; Exhibit G (Andrus Dep. Exhibit 8 (email with attachment from Karen Andrus to Nick DiMaio and Marissa Caputo dated 9/14/04 addressing an email string between First Databank and Cardinal concerning PAR's published AWPs and WACs for its drugs.)).

**15.** PAR responded to the Product Listing Verifications relied upon by Redbook requesting PAR to verify the accuracy of the AWPs and WACs for its drugs that Redbook published with any changes or corrections. *See* Deposition of Kristen Minne (Redbook) dated 11/18/08 ("Minne 11/18/09 Dep.") (Exhibit H) at 303:10-305:16; Exhibit I (Minne 11/18/08 Dep. Exhibit 67 (Redbook Product Listing Verification for PAR signed by Marissa Caputo on 9/11/03)). The Product Listing Verification signed by Marissa Caputo on 9/11/03, shows that

PAR did not instruct Redbook to not publish the WACs prices listed or that the WAC should be set at $0.00.  *See id.*

16. PAR subscribed to First Databank Price Alert service to monitor both its published prices and that of its competitors as well as the HCFS MACs or Federal Upper Limits (FUL).  *See* PAR Pharmaceuticals 30(b)(6)(Nick DiMaio) dated 7/31/08 ("PAR 30(b)(6)(DiMaio) 7/31/08 Dep.") (Exhibit J) at 398:9-399:22.  According to Nick DiMaio, PAR knew WACs were being published, but PAR "never told them to eliminate WAC pricing."  *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 164:3-9.

17. PAR maintained the view that if it did not send its WAC to the national pricing compendia that "PAR is not responsible for what FUL/MAC HCFA sets based on WACs."  *See* Exhibit K (Andrus Dep. Exhibit 20 (email from Andrus to DiMaio dated 9/25/03)).

**PAR's Published AWPs and WACs had No Relationship to Actual Prices**

18. None of PAR's customers ever purchased PAR drugs at AWP, and in fact its customers purchased PAR drugs at prices far below AWP.  *See* Trendowicz 4/1/09 Dep. (Exhibit D) at 79:7-15.

19. PAR knew that prices for its generic drugs typically decreased over time and that if PAR kept its AWPs unchanged that its customers' profit spread would increase with the price erosion.  *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 182:17-184:15; Exhibit L (PAR 30(b)(6)(DiMaio) 5/6/08 Dep. Exhibit 40 (1/18/05 email from Mike Burton (PAR) to Charles Burnett (Costco) stating, "Generally our AWP does not follow pricing down, so you (sic) spread will increase with erosion.")).

20. PAR initially invoices the three national wholesalers (Cardinal Health, AmerisourceBergen and McKesson) for the purchase of PAR products at WAC but thereafter

they receive chargebacks, discounts, rebates, billbacks and other incentives from PAR that get the wholesalers to their net cost. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 49:3-51:10.

21. At least 90% of PAR sales are contract sales that are below WAC and are subject to chargebacks. *See* PAR 30(b)(6)(DiMaio) 5/6/08 (Exhibit B) at 53:8-54:2, 81:4-8; PAR 30(b)(6)(DiMaio) 8/16/07 Dep. (Exhibit E) at 179:16-22.

22. PAR also sold its drugs to distributors, which differed from wholesalers in that the distributor only carried generic drugs and the wholesalers carried both brand and generic drugs. *See* Tendowicz 4/1/09 Dep. (Exhibit D) at 38:3-11. PAR maintained different pricing for distributors and wholesalers and depending on the product the distributor would get the better pricing. *Id*. at 38:12-39:7. PAR does not invoice distributors at WAC but instead at a direct or contract price that would typically be lower than the WAC for the drug. *Id.* at 75:10-25.

**PAR Marketed the Spread**

23. PAR knew that its customers routinely analyzed the reimbursement spreads by comparing their contract price and the reimbursement prices to gauge their profitability. *Id.* at 123:22-124:18.

24. PAR knew that AWP was used by its customers to determine profitability between their price and the reported AWP for PAR drugs. *See* Deposition of Julie Trendowicz dated 9/25/07 ("Trendowicz 9/25/07 Dep.") (Exhibit M) at 61:8-62:21. Pharmacy Benefit Managers (PBMs) like Caremark and Express Scripts purchased drugs from manufacturers, including PAR, based on negotiations expressed as a percentage off of AWP. *See* Trendowicz 4/1/09 Dep. (Exhibit D) at 133:19-134:25 (explaining that Caremark had informed PAR that its selling price would need to be at 92% off AWP). PAR knew that the only reason to negotiate off

of AWP was to determine what the reimbursement spread on a drug was going to be. *Id.* at 135:1-10.

26. PAR knew that its customers determined profitability based on reimbursement spreads and often informed PAR that its competitors had better reimbursement spreads in order to give PAR an opportunity to compete with them. *Id.* at 122:5-123:2.

26. PAR knew that when a MAC or FUL was in place that its customers used the MAC/FUL to determine the profit spread between its cost for PAR drugs and the MAC/FUL. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 185:21-187:11; Exhibit N (PAR 30(b)(6)(DiMaio) 5/6/08 Dep. Exhibit 41 (Mail order pharmacy CFI of New Jersey's Request for Generic Contract Proposal for 1999-2000 showing the spread between the MAC or AWP and PAR's bid price)).

27. PAR marketed drugs based on the reimbursement spread between the price to pharmacies and reimbursement based upon the FUL. *See e.g.*, Exhibit O (PAR 30(b)(6)(DiMaio) 5/6/08 Dep. Exhibit 34 (PAR presentation titled, "McKesson/Par Penicillin Opportunity" showing that pharmacies could make a 69% profit from the FUL (HFCA/MAC))).

28. Nick DiMaio testified that it was common that customers would request PAR to lower prices or increase spread as it related to their reimbursement and when a MAC/FUL was in place or. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 57:5-14, 60:18-62:12; Exhibit P (PAR 30(b)(6)(DiMaio) 5/6/08 Dep. Exhibit 43 (5/11/03 spreadsheet identifying PAR drugs and when a MAC/FUL was in place and requesting better pricing or an increase in their spread below the MAC/FUL)).

29. When a PAR product was not subject to a MAC or FUL, PAR marketed the fact that the customer could receive higher reimbursement. *See* Tredowicz 4/1/09 Dep. (Exhibit D) at

284:1-291:22, 295:25-298:12. PAR marketed the fact that its 20mg Fluoxitine Tablets were not subject to a MAC/FUL in order to get business away from its competitors who were selling 20mg Fluoxitine Capsules that were subject to a MAC/FUL. *Id.*

30. PAR was not aware of the 2003 OIG Guidelines. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 38:5-18.

**PAR's AMPs**

31. At all times, from 1997 to 2005, PAR has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute. *See* PAR 30(b)(6)(DiMaio) 5/6/08 Dep. (Exhibit B) at 108:18-22.

Dated: May 15, 2009

                Respectfully submitted,

                **KIRBY McINERNEY, LLP**
                825 Third Avenue
                New York, New York 10022
                (212) 371-6600

                /s/ Joanne M. Cicala
By:   Joanne M. Cicala
      James P. Carroll Jr.
      Jocelyn R. Normand
      Kathryn Allen

                *Counsel for the City of New York and New York Counties in MDL 1456 except Nassau and Orange*

                Ross B. Brooks, Esq.
                **MILBERG LLP**
                One Pennsylvania Plaza
                New York, NY 10119
                (212) 594-5300

                *Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
**LEVY PHILLIPS &**
**KONIGSBERG, LLP**
800 Third Ave.
New York, NY 10022
(212) 605-6205

*Counsel for the County of Orange*

**CERTIFICATE OF SERVICE**

  I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO PAR PHARMACEUTICALS COMPANIES, INC., AND PAR PHARMACEUTICAL, INC., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.  The confidential exhibits to the foregoing have been served electronically directly to counsel for Par Pharmaceuticals Companies, Inc. and Par Pharmaceutical, Inc.

Dated:  May 15, 2009

                                   _____/s/_____
                                   James P. Carroll, Jr.
                                   Kirby McInerney LLP
                                   825 Third Avenue, 16th Floor
                                   New York, NY 10022
                                   (212) 371-6600

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>   *The City of New York, et al.*<br><br>*v.*<br><br>   *Abbott Laboratories, et al.* | ) ) ) ) ) ) ) ) Judge Patti B. Saris |

# CONFIDENTIAL EXHIBITS

TO
**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO PAR PHARMACEUTICALS COMPANIES, INC. AND PAR PHARMACEUTICAL, INC.**

**MAY 15, 2009**

**SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL**