UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS ) Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:  *The City of New York, et al.*  *v.*  *Abbott Laboratories, et al.* | ) ) Judge Patti B. Saris ) ) ) ) ) ) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO PUREPAC PHARMACEUTICAL CO.**

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Defendant Purepac Pharmaceutical Co. ("Purepac") in support of their Motion for Partial Summary Judgment.

**I.     PUREPAC SPECIFIC FACTS**

**1.**     The Purepac Drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto. This exhibit also sets forth Purepac's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Purepac's AMPs. The exhibit also notes which NDCs are associated with package sizes that set the FUL.

**2.**     The specific Purepac Drugs at issue are the Clonazepam .5 MG Tablet, Enalapril Maleate 20 MG Tablet, Isosorbide Mononitrate 60 MG Tablet and Lorazepam 1 MG Tablet.

**3.**     Purepac has executed the federal Medicaid rebate agreement. *See* Answer and Affirmative Defenses of Purepac Pharmaceutical Co. to Revised First Amended Consolidated Complaint [Docket # 4818] ("Purepac Answer") at ¶132; *see also Commonwealth of Mass. v.*

*Mylan Labs.,* 2008 WL 5650859 *25 (D. Mass. Dec. 23, 2008) ("*Mylan*").  Purepac signed the federal Medicaid rebate agreement because Purepac wanted its products to be reimbursed by Medicaid.  *See* Purepac 30(b)(6) (O"Malley, Patricia) dated 6/20/08 ("Purepac 30(b)(6)(O'Malley) 6/20/08 Dep.") (Exhibit B) at 125:5-18.

**4.** Purepac was required as a matter of law to familiarize itself with the legal requirements, standards and procedures of the Medicaid reimbursement formulas, including those of the New York State Medicaid program.  *Mylan*, 2008 WL 5650859 at *25.

**5.** Purepac knew that its published prices were used for Medicaid reimbursement. *Mylan*, 2008 WL 5650859 at * 16.

**6.** Purepac knows that third party payor reimbursement can be based on AWPs.  *See* Deposition of Roberto Miranda dated 10/19/2007 ("Miranda Dep. 10/19/07") (Exhibit C) 79:20-80:1.  It was important that the information printed in the pricing compendium be accurate because third party payors used the information as the basis for reimbursement.  *See* Deposition of Bradford Cunningham dated 10/23/2007 ("Cunningham Dep. 10/23/07") (Exhibit D) at 107:15-22.

**Purepac Set and Reported Its AWPs and WACs**

**7.** At all times, from 1997 to 2005, Purepac reported or caused to be reported the AWPs (as suggested AWPs) for its drugs to the publishing compendia.  *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 36:19-38:16; 60:3-61:10; 62:19-63:1; Purepac 30(b)(6)(O'Malley, Patricia) dated 9/19/07 ("Purepac 30(b)(6)(O'Malley) 9/19/07 Dep.") (Exhibit E) at 81:7-17; The Alpharma Defendants' Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories and Request for Production to Defendants, *State of Alabama v. Abbott Laboratories, Inc., et al.,* CV 2005-21, Cir. Court of Montgomery County,

Alabama, June 20, 2006, p. 12, response to Interrogatory No. 11 ("Alpharma Supp. Resp. to Alabama's First Set of Interrogatories") (Exhibit F); *Mylan*, 2008 WL 5650859 at *10.

8.  Purepac reported or caused to be reported the same AWPs to all three of the national compendia. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 122:10-21.

9.  Purepac had only one AWP in place at any given time. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 122:10-21.

10. At all times, from 1997 to 2005, Purepac reported or caused to be reported WACs for its drugs to the publishing compendia. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 61:17-66:15; *Mylan*, 2008 WL 5650859 at *10.

11. Purepac reported or caused to be reported the same WACs to all three of the national compendia. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 122:22-123:4; Alpharma Supp. Resp. to Alabama's First Set of Interrogatories, response to Interr. No. 11 (Exhibit F).

12. Purepac knew and controlled the WACs for its drugs that were being published by the national drug pricing compendia. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 65:14-66:15 (Purepac supplied the WACs that appeared in the compendia). Purepac had only one WAC at any given time. *See* O'Malley (6/20/08) 30(b)(6) Dep. (Exhibit B) at 122:22-123:4.

13. Purepac knew and controlled the published prices for its drugs that appeared in the national drug pricing compendia. Purepac received price verifications from Red Book. *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 214:9-215:4; Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 39:11-43:14. Purepac would confirm the prices

were Purepac's published AWPs and WACs.  *See Id*.  If the prices were not correct, Purepac would make a correction.  *See Id*.

14. When Purepac sent WACs and AWPs to the drug pricing compendia, it was Purepac's understanding that the pricing compendia were going to publish them as Purepac's WACs and AWPs.  *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 132:20-133:5; Purepac 30(b)(6) (O'Malley) 6/20/08 Dep. (Exhibit B) at 65:14-66:15.

**Purepac's Published AWPs and WACs had No Relationship to Actual Prices**

15. At launch, for each of its generic drugs, Purepac generally set the AWP around 10% below the corresponding brand AWP.  *See* O'Malley, Patricia (6/20/08) 58:13-17; O'Malley (9/19/2007) 30(b)(6) Dep. (Exhibit E) at 83:20-84:7.

16. Purepac's AWPs were not true prices.  *Mylan*, 2008 WL 5650859 at * 18.

17. Purepac does not sell any of its generic drugs at AWP.  *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 88:1-6.

18. Purepac's definition of AWP is different than FDB's definition of AWP.  Purepac did not have an understanding that AWP represents the average wholesale price a wholesaler would charge for a particular product.  *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 214:5-216:14.

19. Typically, the published Purepac AWP is higher than the published WAC.  *See* Cunningham Dep. 10/23/07 (Exhibit D) at 195:21-196:9.  And typically, the published WAC is higher than contract prices. *See Id*.  Purepac established WACs at a discount off AWPs.  *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 100:12-19.

20. Purepac reduced the WACs in order to minimize accruals for chargebacks and to minimize prompt pay discounts. *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 104:7-107:5.

21. Purepac had three general categories of prices: AWP, WAC, and Contract prices. *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 128:9-14. These prices changed independently of each other. *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 128:19-129:7; 145:18-147:11.

22. Purepac invoiced wholesalers at WAC, but its WACs and AWPs were independent of its contract prices. *Mylan*, 2008 WL 5650859 at * 10.

23. Purepac knew that its published WACs were false. *Mylan*, 2008 WL 5650859 at * 26.

24. Purepac's WAC was grossly out of whack with the prices that were actually paid. *Mylan*, 2008 WL 5650859 at * 26.

25. Purepac had a contract with Cardinal that provided Purepac pay Cardinal rebates that included baseline rebates. *See* O'Malley (6/20/08) 30(b)(6) Dep. (Exhibit B) at 175:11-181:15. Purepac had a profit share agreement with Cardinal for clonazepam. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 201:14-203:2.

26. Amerisource Bergen (f/k/a Bergen Brunswig) would receive a chargeback for sales made to Purepac's indirect customers who received a lower price than the WAC paid by Amerisource Bergen. *See* O'Malley (6/20/08) 30(b)(6) Dep. (Exhibit B) at 187:17-189:8.

27. The WAC reported or caused to be reported by Purepac does not account for these chargebacks, rebates and discounts. *See* Miranda Dep. 10/19/07(Exhibit C) at 138:21-140:18.

**28.**  Purepac paid the wholesaler a chargeback to make up for the difference between the contract price paid by the indirect customer and the WAC price invoiced to the wholesaler. *See* O'Malley (6/20/08) 30(b)(6) Dep. (Exhibit B) at 187:17-189:8.

**29.**  Only 8 percent of sales to wholesalers were not subject to chargebacks; meaning only 8 percent of sales to wholesalers were at WAC. *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 197:1-199:22.

**30.**  Ninety-two percent of Purepac's sales to wholesalers were subject to chargeback. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 90:14-94:13, 95:20-96:15.

**31.**  Purepac offered contract prices to its pharmacy customers. *See* O'Malley, (6/20/08) 30(b)(6) Dep. (Exhibit B) at 85:21-86:1; 145:13-21 (Peyton); 88:9-18 (Walgreens); 146:20-147:11 (Caremark and Express Scripts). Some retail contracts provided product-specific pricing. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 146:9-19. From 1997 to 2005, Purepac offered contract pricing for Clonazepam and Isosorbide Mononitrate to retail customers. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 199:7-14; 206:2-11. In particular, Purepac entered into a profit share agreement with CVS for Isosorbide Mononitrate. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 210:15-19. Purepac negotiates contract prices with its pharmacy customers that are typically below the published prices for each of its drugs. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 90:1-13; 112:22-113:11, *see* Exhibit O'Malley 009 to Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit G).

**32.**  Purepac paid its pharmacy customers, such as Costco, rebates to encourage the purchase of Purepac products. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit G) at 192:18-197:6; *see also* Exhibit O'Malley 018 to Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit H). Such rebates were based on invoice purchases. *See Id.* Purepac paid rebates to the

retail pharmacies, such as Target. Purepac 30(b)(6) (O'Malley) 6/20/08 Dep. (Exhibit B) at 210:22-213:20. The rebate reduced pharmacies' contract prices even further below the WAC. *See Id.*

33.     Some retail pharmacies were direct customers of Purepac. *See* O'Malley, Patricia (6/20/08) Dep. (Exhibit B) at 100:7-14. Direct customer contract prices tend to be lower than indirect customer contract prices. *See* Purepac 30(b)(6)(O'Malley) 6/20/08 Dep. (Exhibit B) at 100:15-101:10.

34.     Purepac considered its contract prices to be confidential business information. *See* Purepac 30(b)(6)(O'Malley) 9/19/07 Dep. (Exhibit E) at 216:3-217:8.

**Purepac Marketed the Spread**

35.     Purepac customers were interested in evaluating, and made purchasing decisions based on the reimbursement spread between its cost and the reimbursement price of an AWP. *See* Miranda Dep. 10/19/07 (Exhibit C) at 77:15-79:14 (Miranda would request authority for invoice pricing with a particular spread between the net price and the AWP based on a customer's request). *See* Exhibit Grauso 002 to the Deposition of James Grauso dated 10/19/07, ("Grauso Dep. Exhibit 002) (Exhibit I)[1](email from James Grauso to Bob Jones recommending suggested AWPs that will maximize the customer's reimbursement spread); *see also* Exhibit Grauso Dep. Exhibit 003 (Exhibit K) (email string between Bob Miranda and Bob Jones approving of AWP change in response to customer request to increase AWP to match competitors' AWP spread).

---

[1] James Grauso worked for Purepac from 1997 to 2004. Deposition of James Grauso dated 10/19/07 ("Grauso Dep. 10/19/07") (Exhibit J) at 12:18-19. During that time, he held the following positions at

**Purepac's AMPs**

**36.**    Purepac admits that drug manufacturers report AMPs to HHS.  *See* Purepac Answer at ¶126.  Purepac reports AMPs to CMS for each of its drugs.  *Mylan*, 2008 WL 5650859 at * 30.

Dated: May 15, 2009                     Respectfully submitted,

**City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

**KIRBY McINERNEY, LLP**
825 Third Avenue
New York, New York 10022
(212) 371-6600

/s/ Joanne M. Cicala
By:    Joanne M. Cicala
       James P. Carroll Jr.
       Jocelyn R. Normand
       Kathryn B. Allen

Ross B. Brooks, Esq.
MILBERG LLP
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300
*Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
LEVY PHILLIPS &
KONIGSBERG, LLP
800 Third Avenue
New York, NY  10022
(212) 605-6205
*Counsel for the County of Orange*

---

Purepac:  manager of marketing financial services, pricing manager, senior manager of sales analysis, and director of sales analysis.  Grauso Dep. 10/19/07 (Exhibit J) at 13:16-14:18.

**CERTIFICATE OF SERVICE**

      I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO PUREPAC PHARMACEUTICAL CO., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties. The confidential exhibits to the foregoing have been served electronically directly to counsel for Purepac Pharmaceutical Co.

Dated: May 15, 2009

                                                                                  /s/
                                                 James P. Carroll, Jr.
                                                 Kirby McInerney LLP
                                                 825 Third Avenue, 16th Floor
                                                 New York, NY 10022
                                                 (212) 371-6600

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>*The City of New York, et al.*<br><br>*v.*<br><br>*Abbott Laboratories, et al.* | ) ) ) ) ) ) ) ) Judge Patti B. Saris |

# CONFIDENTIAL EXHIBITS

TO
**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO PUREPAC PHARMACEUTICAL CO.**

**MAY 15, 2009**

**SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL**