# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | MDL NO. 1456 |
| | Civil Action No. 01-12257-PBS |
| | Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO: | ) ) |
| | Judge Patti B. Saris |
| *The City of New York, et al.* | ) ) |
| *v.* | ) ) |
| *Abbott Laboratories, et al.* | ) ) ) |

## PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SANDOZ, INC.

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Sandoz, Inc. (hereinafter referred to as "Sandoz"), in support of their Motion for Partial Summary Judgment.

## I.      SANDOZ SPECIFIC FACTS

1.      The Sandoz Drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto.  This exhibit also sets forth Sandoz's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Sandoz AMPs.  The exhibit notes which NDCs are associated with package sizes that set the FUL.

2.      The specific Sandoz Drugs at issue are the Albuterol .83 mg/ml Solution, Albuterol 90 MCG Inhaler, Cefadroxil 500 MG Capsule, Clonazepam .5 MG Tablet, Enalapril Maleate 20 MG Tablet, Lorazepam 1 MG Tablet, Metropolol 100 MG Tablet and Ranitidine 150 MG Tablet.

3.      Sandoz manufactures drugs covered by Medicaid.  Sandoz Inc.'s Answer to the Revised First Amended Consolidated Complaint, ("Sandoz's Answer") [Docket #4848] at ¶ 792.

4.      Sandoz knows that it has an obligation to report true prices to the pricing services. *See* Deposition of Frank Stiefel dated 11/13/2008 ("Stiefel Dep. 11/13/08") (Exhibit B) at 250:19-251:5.

5.      Sandoz knows that state Medicaid programs were responsible for determining an "estimated acquisition cost," which the federal regulations define as "the price generally and currently paid by providers."  *See* Sandoz 30(b)(6) (Hartmann, Ronald) dated 1/25/07 ("Sandoz 30(b)(6)(Hartmann 1/25/07 Dep.") (Exhibit C) at 47:12-17.

6.      Participation in the federal Medicaid rebate program is purely voluntary.  *See* Sandoz 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 29:14-30:10.  Sandoz has voluntarily chosen to participate in the Medicaid Rebate program, allowing its products to be reimbursed by state Medicaid programs.  *See* Sandoz 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 30:16-21.

7.      Sandoz has executed the federal Medicaid rebate agreement.  *See* Sandoz 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 32:17-33:6; Sandoz's Answer at ¶ 116, ¶ 132, ¶ 168, ¶ 793.

8.      Sandoz knew that eligibility for reimbursement by Medicaid was an important issue for its customers.  *See* Stiefel Dep. 11/13/08 (Exhibit B) at 69:2-24.

9.      One of the reasons Sandoz reported AWPs and WACs to the publishing compendia was that both were necessary to sell Sandoz products.  *See* Deposition of Kevin Galownia dated 6/11/07 ("Galownia Dep. 6/11/07") (Exhibit D) at 108:12-18.

10.     Sandoz customers expected Sandoz to report AWPs and WACs to the publishing compendia because the published prices affected their reimbursement.  *See* Sandoz 30(b)(6) (Kellum, Hector Armando) dated 1/25/07 ("Sandoz 30(b)(6)(Kellum) 1/25/07 Dep.") (Exhibit E) at 46:18-47:11.

**Sandoz Set and Reported Its AWPs and WACs**

11.   At all times, from 1997 to 2005, Sandoz reported or caused to be reported the AWPs for its drugs to the publishing compendia. *See* Galownia Dep. 6/11/07 (Exhibit D) at 264:1-14; *see also* Deposition of Christopher Worrell, Vol. II dated 3/26/08 ("Worrell Dep. 3/26/08) (Exhibit F) at 349:11-20.

12.   Sandoz reported or caused to be reported the same AWPs to all three of the national compendia:  First Data Bank, Red Book and Medi-Span. *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20; Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14.

13.   Sandoz understood that the publishing compendia published the identical AWPs to the AWPs that Sandoz reported. *See* Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.

14.   Sandoz verified whether the pricing compendia published the correct AWPs, and if Sandoz requested any corrections, the pricing compendia would make such corrections to Sandoz's published AWPs. *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 56:14-58:22.

15.   Sandoz had only one AWP for any Sandoz NDC at a given time, and that was the only AWP expected to be published. *See* Worrell Dep. 3/26/08 (Exhibit F) at 348:18-349:4.

16.   At all times, from 1997 to 2005, Sandoz reported or caused to be reported WACs for its drugs to the publishing compendia. *See* Deposition of Christopher Worrell dated 8/23/2007 ("Worrell Dep. 8/23/07") (Exhibit G) at 86:15-87:2; Galownia Dep. 6/11/07 (Exhibit D) at 264:1-14; Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20.

17.   Sandoz reported or caused to be reported the same WACs to all three of the national compendia:  First Data Bank, Red Book and Medi-Span. *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20; Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14.

**18.**     Sandoz understood that the publishing compendia published identical WACs to the WACs that Sandoz reported.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.

**19.**     Sandoz verified whether the pricing compendia published the correct WACs, and if Sandoz requested any corrections, the pricing compendia would make such corrections to Sandoz's published WACs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 56:14-58:22.  If any corrections were necessary, Sandoz would communicate such corrections back to First Data Bank, and First Data Bank would make such corrections.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 135:18-137:16.  Red Book had an annual policy of requesting Sandoz to verify its published information.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 136:10-13; 138:2-142:13. Red Book would send Sandoz a hard copy list of Sandoz's published prices, and Sandoz would either sign-off or make corrections to the information and return the document to Red Book.  *See Id.*

**20.**     Sandoz had only one WAC for any Sandoz NDC at a given time, and that was the only WAC expected to be published.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:5-10.

**21.**     Sandoz understands that AWP is one of the prices considered as the basis for Medicaid reimbursement.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 107:3-108:10; Worrell Dep. 3/26/08 (Exhibit F) at 433:20-434:5.

**22.**     Sandoz knows that Medicaid reimbursements can be based on WACs.  *See* Stiefel Dep. 11/13/08 (Exhibit B) at 66:4-11.

**23.**     Sandoz knows that Medicaid reimbursements can be based on FUL.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 434:6-435:5.  Sandoz understands that CMS sets the FUL by taking 150% of the lowest published WAC.  *See* Deposition of Christopher Worrell dated 5/13/08 ("Worrell 5/13/08 Dep.") (Exhibit H) at 636:6-16.

**Sandoz's Published AWPs and WACs had No Relationship to Actual Prices**

24.     At all times of launch, for each of its generic drugs, Sandoz generally set the AWP somewhere between 10 and 15 percent below the corresponding brand AWP.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 465:4-466:2; Galownia Dep. 6/11/07 (Exhibit D) at 162:14-20; Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 79:1-14.

25.     Once AWP was set, Sandoz would not usually adjust the AWP for that product, even if Sandoz contract prices were decreasing.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 467:21-468:7.

26.     The AWPs Sandoz reported to the pricing compendia did not represent true average prices charged by wholesalers for Sandoz product.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 112:15-113:9.

27.     The AWPs Sandoz reported to the pricing compendia did not represent true prices paid by pharmacies to acquire Sandoz products.  *See* Deposition of Frank Stiefel dated 1/27/09 ("Stiefel Dep. 1/27/09") (Exhibit I) at 378:4-10.

28.     The true average prices paid by pharmacies to acquire Sandoz products were always less than AWP.  *See* Stiefel, Frank (1/27/09) Dep. (Exhibit I) at 378:11-16.

29.     Sandoz did not require its AWPs and WACs to decrease as market prices and contract prices decreased.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 468:13-18.

30.     Sandoz does not sell any of its generic drugs at AWP.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 510:5-8; Galownia Dep. 6/11/07 (Exhibit D) at 224:8-226:12, 240:6-18.

31.     Sandoz's AWPs for generic products do not represent an average of prices charged by wholesalers.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 90:3-91:9.

32.     If Sandoz was the first manufacturer to market a generic product, Sandoz would set its WAC at 25 percent below the Sandoz AWP.  *See* Deposition of Christopher Worrell dated 8/23/2007 ("Worrell Dep. 8/23/07") (Exhibit G) at 84:18-85:13.  Sandoz would set the WAC at the highest possible price in this scenario because it would have the only generic product in the market.  *See* Worrell Dep. 8/23/07 Dep. (Exhibit G) at 85:17-23.  If Sandoz was launching a product into a mature market where there were already a number of generics in the marketplace, Sandoz would set its WAC near its competitors' published WACs.  *See* Worrell Dep. 8/23/07 Dep. (Exhibit G) at 87:3-88:12.

33.     Sandoz's AWP determines the maximum level for its WAC, and the WAC determines the maximum levels for contract pricing.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 164:2-21.  This is because in general practice, the published AWP is the highest price, published WACs are less than the published AWP and contract prices are less than the published WAC.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 164:2-165:19.

34.     Sandoz admits that its AWPs and WACs are irrelevant in trying to determine Sandoz customers' actual acquisition costs.  *See* Alabama Trial testimony, Christopher Worrell dated 2/18/09 (Exhibit J) at 1593:24-1594:21; Stiefel Dep. Exhibit 27 (11/13/08) (Exhibit K)(email from Christopher Worrell, vice president of sales and marketing, regarding competitor's sales prices, AWPs and WACs).

35.     Sandoz's contract prices are always less than its published prices. *See* Galownia Dep. 6/11/07 (Exhibit D) at 168:20-170:7.

36.     Sandoz's contract prices were on average, 35 percent to 75 percent below the published WAC.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 485:13-22.  The difference between

Sandoz contract prices and AWPs would be even greater.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 485:23-486:7.

37.     At all times from 1997 to 2005, Sandoz sold its drugs to the three national wholesalers:  Cardinal, Amerisource Bergen and McKesson.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 87:4-9.

38.     Sandoz had rebate agreements with all three national wholesalers.  *See* Stiefel Dep. 1/27/09 (Exhibit I) at 350:4-9.

39.     The WAC reported or caused to be reported by SANDOZ does not account for chargebacks, rebates or discounts.   *See* Galownia Dep. 6/11/07 (Exhibit D) at 112:3-8; 323:1-10.  Rebates paid to wholesalers are not reflected in Sandoz's reported WACs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 100:18-101:17.

40.     Sandoz rarely sold products at WAC without any rebates, discounts or chargebacks.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 365:25-366:4.

41.     In general, the net sales prices paid by wholesalers through auto substitution programs were less than WAC.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 464:15-465:7.

42.     The wholesalers negotiate with all generic manufacturers, including Sandoz, its "dead net" price (the price after all price reductions and allowances).  *See* Cardinal Health 30(b)(6) Deposition (Erick, Matthew) dated 6/17/08 (Exhibit L) at 118:6-121:6.

43.     The chargebacks, rebates, discounts, adjustments, administrative fees, incentives and other pricing allowances paid by Sandoz reduce the wholesaler's actual acquisition cost or net price.  *See* Deposition of Maureen Cavanaugh dated 3/18/09 (Exhibit M) at 110:8-111:12; 111:21-114:20.

44.     Sandoz knows the net acquisition cost it offered its customers.  *See* Worrell 5/13/08 Dep. (Exhibit H) at 639:7-23.

**Sandoz Marketed the Spread**

45.     Sandoz's vice president of sales and marketing understood that a customer's profit could be driven by the difference between their AWP reimbursement and contract price for Sandoz products.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 504:13-22.

46.     Whenever Sandoz received FUL updates from CMS, Sandoz would share the updates with its sales and marketing departments.  *See* Deposition of Ronald Hartmann (5/6/09) ("Hartmann Dep. 5/6/09") (rough copy) (Exhibit N) at 282:16-283:7.  Sales and marketing would be interested in such information if Sandoz's prices were greater than the FUL.  *See* Hartmann Dep. 5/6/09 (Exhibit N) at 283:13-16.  Sandoz sales and marketing would be interested in such information when a FUL was deleted.  *See* Hartmann Dep. 5/6/09 (Exhibit N) at 283:17-23.

47.     In the ordinary course of business, Sandoz routinely communicated with its retail pharmacy customers and provided contract price, AWP and WAC information.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 400:10-401:15; *See* Worrell Dep. 3/26/08 (Exhibit F) at 524:8-525:4. Retail pharmacy customers needed this information because it affected their reimbursement from third party payors, which include state Medicaid programs.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 403:1-9.

**Sandoz's AMPs**

48.     At all times, from 1997 to 2005, Sandoz calculated submitted to CMS AMPs for its products on a quarterly basis, pursuant to the federal rebate statute.  *See* Defendant Sandoz Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories, 1/23/07, *Wisconsin v.*

*Amgen, Inc.*, 04-CV-1709, Response to Interrogatory No. 1(a-c) (Exhibit O); Defendant Sandoz,

Inc.'s Responses and Objections to the State of California's Second Set of Interrogatories to

Sandoz, Inc., *State of California, ex rel. Ven-A-Care v. Abbott Laboratories, et al.*, MDL 1456

(01-12257-PBS), 1/96/2009, Response to Interrogatory No. 1 (Exhibit P).

Dated: May 15, 2009                          Respectfully submitted,

                                             **City of New York and New York Counties in
                                             MDL 1456 except Nassau and Orange by**

                                             **KIRBY McINERNEY, LLP**
                                             825 Third Avenue
                                             New York, New York 10022
                                             (212) 371-6600


                                             /s/ Joanne M. Cicala
                              By:            Joanne M. Cicala
                                             James P. Carroll Jr.
                                             Jocelyn R. Normand
                                             Kathryn B. Allen

                                             Ross B. Brooks, Esq.
                                             MILBERG LLP
                                             One Pennsylvania Plaza
                                             New York, NY 10119
                                             (212) 594-5300
                                             *Special Counsel for the County of Nassau*

                                             Theresa A. Vitello, Esq.
                                             LEVY PHILLIPS &
                                             KONIGSBERG, LLP
                                             800 Third Avenue
                                             New York, NY 10022
                                             (212) 605-6205
                                             *Counsel for the County of Orange*

### <u>CERTIFICATE OF SERVICE</u>

I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SANDOZ, INC., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.  The confidential exhibits to the foregoing have been served electronically directly to counsel for Sandoz, Inc.

Dated:  May 15, 2009

_____/s/_____
James P. Carroll, Jr.
Kirby McInerney LLP
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 371-6600

.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 <br> ) Civil Action No. 01-12257-PBS <br> )  Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO: | ) <br> ) Judge Patti B. Saris |
| *The City of New York, et al.* <br> *v.* <br> *Abbott Laboratories, et al.* | ) <br> ) <br> ) <br> ) <br> ) |

# CONFIDENTIAL EXHIBITS

## TO
## PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SANDOZ, INC.

## MAY 15, 2009

## SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL