UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS ) Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:  *The City of New York, et al.*  *v.*  *Abbott Laboratories, et al.* | ) ) Judge Patti B. Saris ) ) ) ) ) ) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO TEVA PHARMACEUTICALS USA, INC.**

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Teva Pharmaceuticals USA, Inc. ("Teva") in support of their Motion for Partial Summary Judgment.

**I.    TEVA SPECIFIC FACTS**

**1.**   The Teva drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto. This exhibit also sets forth Teva's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Teva's AMPs. The exhibit notes which NDCs were associated with package sizes that set the FUL.

**2.**   The specific Teva drugs at issue are: Clonazepam .5mg Tablet; Enalapril Maleate 20mg Tablet; Metroprolol 100mg Tablet and Ranitidine 150mg Tablet.

**3.**   Teva has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8. *See* Answer of Teva Pharmaceuticals USA, Inc.'s and Sicor Inc.'s Answer and Affirmative Defenses to Revised Amended Consolidated Complaint ("Teva Answer") [Dkt #4823] at ¶132.

4.	Teva participates voluntarily in the state Medicaid programs, including the New York State Medicaid Program.  *See* Deposition of Teva Pharmaceuticals USA, Inc. 30(b)(6)(John Wodarczyk) dated 10/10/06 ("Teva 30(b)(6)(Wodarczyk) 10/10/06 Dep.") (Exhibit B) at 20:19-21:11.

5.	Teva knew that eligibility for reimbursement by third party payors like Medicaid was an important issue for its customers as the reimbursement determines revenue for its customers.  *See* Deposition of Teva Pharmaceuticals USA, Inc. 30(b)(6)(John Denman) dated 4/16/08 ("Teva 30(b)(6)(Denman) 4/16/08 Dep.") (Exhibit C) at 34:9-37:16, 192:19-193:21.

6.	Teva knew that state Medicaid agencies reimbursed based on WAC, AWP and FUL (or state MAC lists) for Teva drugs.  *See* Deposition of Teva Pharmaceuticals USA, Inc. 30(b)(6)(John Wodarczyk) dated 8/23/07 ("Teva 30(b)(6)(Wodarczyk 8/23/07 Dep.") (Exhibit D) at 92:7-17; Deposition of Teva Pharmaceuticals USA, Inc. 30(b)(6)(Paul Krauthauser) dated 1/29/08 ("Teva 30(b)(6)(Krauthauser) 1/29/08 Dep.") (Exhibit E) at 77:6-10, 103:21-104:8; Teva 30(b)(6)(Denman) 4/16/08 (Dep. (Exhibit C) at 34:9-35:2, 152:14-21.

7.	Teva knew that the FUL was used by state Medicaid agencies and set based on published prices.  *See* Deposition of Eugene Cioschi 2/12/08 Dep. ("Cioschi 2/12/08 Dep.") (Exhibit F) at 160:2-17.

**Teva Set and Reported Its AWPs and WACs**

8.	Teva sets one WAC and one AWP or SWP for each of its products.  *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 25:1-4; *see also Commonwealth of Mass. v. Mylan*, 2008 WL 5650859 (D.Mass) at *7.  Teva's AWP and SWP are interchangeable.  *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 49:2-9.

9.      At all times, from 1997 to 2005, Teva's general practice was to set the AWP or SWP for its drugs at 10% of the brand AWP when it was the first to introduce the generic drug. *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 106:8-15; Teva 30(b)(6)(Denman) 4/16/08 Dep. (Exhibit C) at 70:15-73:2, 135:14-18.  When Teva was not the first to introduce the drug, then Teva would analyze the AWPs of the competition and if the competition was not at 10% of the brand then Teva would probably match the competition.  *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 79:11-80:11.

10.     Teva set the AWP or SWP for its drugs at 10% discount to the brand AWP to obtain the generic drug indicator and be deemed a generic.  *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 72:10-73:9.

11.     Teva admits that it would still have been deemed a generic if its AWP or SWP had been at a 15% or 20% discount to the brand AWP.  *Id*. at 73:11-18.

12.     Teva set its AWP as high as it could or at least at what the market would bear for its products depending on the competition.  *Id*. at 73:19-74:8.

13.     If a competitor increased its AWP, Teva would respond by raising its own AWP so as not to disadvantage it customers in their reimbursement from third party payors.  *See* Cioschi 2/12/08 Dep. (Exhibit F) at 133:2-20.

14.     At all times, from 1997 to 2005, at the time of launch of a new product Teva initially set the WAC for its generic drugs typically at 75% of the AWP or SWP.  *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 164:22-167:5; Teva 30(b)(6)(Wodarczyk) 8/23/07 Dep.") (Exhibit D) at 94:5-14.  When Teva was not the first to introduce the generic drug, then Teva would analyze the WACs of the competition and set its WAC comparably with the competition.  *Id.*

15. Teva did not sell to small wholesalers at WAC. *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep.") (Exhibit E) at 174:4-16.

16. Teva knew that in the generic market place that its contract prices and WACs would go down over time and that generally AWPs would go unchanged over the same time period. *See id.* at 177:18-178:20; Cioschi 2/12/08 Dep. (Exhibit F) at 61:1-62:4.

17. At all times, from 1997 to 2005, Teva provided the WAC and either an AWP or SWP for its generic drugs to the national pricing compendia – First DataBank, RedBook and Medi-Span. *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 57:4-19, 104:9-17, 178:22-179:11; Teva 30(b)(6)(Wodarczyk) 8/23/07 Dep.") (Exhibit D) at 81:11-82:1; Teva 30(b)(6)(Denman) 4/16/08 Dep. (Exhibit C) at 74:8-75:19; *see also Mylan*, 2008 WL 5650859 at *7.

18. The SWPs and AWPs for Teva drugs were always the same. *See* Teva 30(b)(6)(Denman) 4/16/08 Dep. (Exhibit C) at 135:4-6, 199:12-15.

19. Teva knew and controlled the AWPs and WACs for its drugs that were published by the national drug pricing compendia like First Databank. *See* Cioschi 2/12/08 Dep. (Exhibit F) at 110:17-111:2. Teva was in communication with First Databank about its prices and received information from First Databank that would show Teva WACs, AWPs and SWPs for Teva drugs and Teva would verify if the information provided was correct. *See* Teva 30(b)(6)(Wodarczyk) 8/23/07 Dep. (Exhibit D) at 172:14-174:20; Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 227:12-229:15. When Teva made a change to its published prices, Teva would confirm that First Databank received the price changes. *Id*.

20. Teva subscribed to First Databank Price Alert (hardcopy), First Databank Price Probe (CD) and First Databank AnalySource (internet) services to monitor both the Teva

published prices and that of its competitors. *See* Cioschi 2/12/08 Dep. (Exhibit F) at 113:22-116:15; *see also* Teva 30(b)(6)(Wodarczyk) 10/10/06 Dep.") (Exhibit B) at 38:17-40:1. John Wodarczyk testified that he had never heard of the pricing compendia publishing a price different than the one Teva provided. *See* Teva 30(b)(6)(Wodarczyk) 10/10/06 Dep. (Exhibit B) at 40:2-7.

**Teva's Published AWPs and WACs had No Relationship to Actual Prices**

21. Teva does not sell its generic drugs at AWP. *See* Teva 30(b)(6)(Wodarczyk) 10/10/06 Dep. (Exhibit B) at 45:1-10.

22. Teva admits that its reported AWPs or SWPs were not tethered to the actual prices that anyone pays. *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 107:2-108:11; Exhibit H (Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. Exhibit 5 (Sales and Marketing Policies and Procedures dated August 14, 2003).

23. Teva considers its contract prices to customers to be highly confidential and says publication of the contract prices would be competitively harmful. *Id.* Teva's confidential contract prices were normally below WAC. *See* Deposition of Eugene Cioschi 7/11/08 Dep. ("Cioschi 7/11/08 Dep.") (Exhibit G) at 181:11-17.

24. Contract prices are the "real prices" that Teva's customers actually pay Teva, which were not reported to the pricing compendia. *See* Cioschi 2/12/08 Dep. (Exhibit F) at 72:11-73:5. For any given Teva product at any given time typically the AWP was the highest price, then the WAC and then the contract prices would be below WAC. *Id.* at 60:16-22.

25. Teva knew the WAC price to the wholesalers did not include chargebacks, discounts, rebates, billbacks and other incentives Teva offered that got the wholesalers to their net cost. *See* Teva 30(b)(6)(Denman) 4/16/08 Dep. (Exhibit C) at 219:14-226:6, 261:19-267:4;

Exhibit I (Teva 30(b)(6)(Denman) 4/16/08 Dep. Exhibit 20 (comparison of net price to wholesalers Cardinal and McKesson after chargebacks, rebates, discounts and other price allowances for Ursodiol and Albuterol)).

26. More than 90% of Teva sales are below WAC after discounts, rebates and cahrgebacks. *See* Teva 30(b)(6)(Wodarczyk) 8/23/07 Dep. (Exhibit D) at 160:14-21; Teva 30(b)(6)(Krauthauser) 1/29/08 Dep.") (Exhibit E) at 174:17-175:11; *see also Mylan*, 2008 WL 5650859 at *7.

**Teva Marketed the Spread**

27. Teva admits that in setting its AWP as high as possible that Teva's AWP was a "fictitious" price that Teva knew was being used for reimbursement. Teva set its AWP as high as possible so as not to disadvantage its customers and maximize the reimbursement to its customers. *See* Cioschi 2/12/08 Dep. (Exhibit F) at 84:12-85:2.

28. Teva says that marketing of the spread between a published AWP or SWP and the actual cost at which a pharmacy purchases Teva drugs is inherent in the reimbursement system. Teva competes on the basis of spread when lowering contract prices. *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 114:19-115:11.

29. Teva knew that when it raised the AWP or SWP for a Teva drug that reimbursement based on AWP would increase. *See* Teva 30(b)(6)(Denman) 4/16/08 Dep. (Exhibit C) at 150:15-151:11. Teva knowingly raised AWPs if it had room to increase the reimbursement to its customers. *See* Cioschi 2/12/08 Dep. (Exhibit F) at 148:3-19.

30. Teva competed on spread by raising its AWP or SWP instead of lowering the price to its customer. *See* Cioschi 7/11/08 Dep. (Exhibit G) at 197:20-201:1; Exhibit J (Cioschi 7/11/08 Dep. Exhibit 42 (email string in November 2000 recommending an AWP increase in

response to the wholesaler Bindley Western's request that the AWP spread be increased to 35% to help sell a Teva drug to Bindley's pharmacy customers)); *see also* Exhibit K (Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. Exhibit 4 (email from Paul Krauthauser (Teva) to Rick Foster (Teva) suggesting that Teva raise the SWP on Methazolamide instead of lowering the WAC or contract price to bid for Caremark's business).

31. Teva maintained "Effective Pharmacy Selling Tips", which instructed Teva sales people in the "Ask for Information" section to ask the pharmacist to compare AWP with the retail pricing in order to show the greater profit margin (spread) on the Teva product. *See* Exhibit L (Cioschi 7/11/08 Dep. Exhibit 35 ("Effective Pharmacy Selling Tips")) at 2.

32. Teva knew that when a FUL or MAC was in place that it limited the reimbursement that state Medicaid agencies were willing to pay to pharmacies for Teva drugs. *See* Teva 30(b)(6)(Krauthauser) 1/29/08 Dep. (Exhibit E) at 190:13-16.

33. Teva had a strategy on at least one occasion to institute a change in the FUL. The strategy consisted of calling First Databank to eliminate products from its database, informing CMS of a Teva price increase and soliciting chain drugs stores to call CMS to complain about the FUL pricing. All of this was an effort by Teva to get a FUL removed which would increase reimbursement to its customers. *See* Cioschi 2/12/08 Dep. (Exhibit F) at 162:6-164:8; Exhibit M (Cioschi 2/12/08 Dep. Exhibit 10 (collections of documents including published prices and emails in January and February 2003 discussing a strategy to get CMS to change the FUL to solve the problem with a low FUL for the Teva drug Gemfibrozil)); *see also* Exhibit N (Cioschi 2/12/08 Dep. Exhibit 11 (email string dated in June 2000 discussing the successful results of Teva's efforts to get CMS to change or delete FUL on several Teva drugs.)).

34. Teva was generally familiar with the 2003 OIG Guidelines. *See* Teva 30(b)(6)(Denman) 4/16/08 (Dep. (Exhibit C) at 275:22-276:9. Teva does not agree with the definition of spread in the OIG guidelines. *Id.* at 279:2-16.

**Teva's AMPs**

35. At all times, from 1997 to 2005, Teva has calculated and reported on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute. *See* Kauthauser 1/29/08 Dep. (Exhibit E) at 180:3-8; Deposition of Teva Pharmaceuticals USA, Inc. 30(b)(6)(John Wodarczyk) dated 4/17/08 ("Teva 30(b)(6)(Wodarczyk) 4/17/06 Dep.") (Exhibit O) at 158:11-22.

Dated: May 15, 2009                                      Respectfully submitted,

                                                      **KIRBY McINERNEY, LLP**
825 Third Avenue
New York, New York 10022
(212) 371-6600

/s/ Joanne M. Cicala_____
By:   Joanne M. Cicala
James P. Carroll Jr.
Jocelyn Normand

*Counsel for the City of New York and New York Counties in MDL 1456 except Nassau and Orange*

Ross B. Brooks, Esq.
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
**LEVY PHILLIPS & KONIGSBERG, LLP**
800 Third Ave.
New York, NY 10022
(212) 605-6205
*Counsel for the County of Orange*

8

**CERTIFICATE OF SERVICE**

      I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO TEVA PHARMACEUTICALS USA, INC., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties. The confidential exhibits to the foregoing have been served electronically directly to counsel for Teva Pharmaceuticals USA, Inc.

Dated: May 15, 2009

                                                                                    /s/
                                                     James P. Carroll, Jr.
                                                   Kirby McInerney LLP
                                                   825 Third Avenue, 16th Floor
                                                   New York, NY 10022
                                                   (212) 371-6600

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>*The City of New York, et al.*<br>*v.*<br>*Abbott Laboratories, et al.* | ) ) ) ) ) ) ) ) Judge Patti B. Saris |

# CONFIDENTIAL EXHIBITS

## TO
**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO TEVA PHARMACEUTICALS USA, INC.**

**MAY 15, 2009**

**SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL**