UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS ) Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO: *The City of New York, et al.* *v.* *Abbott Laboratories, et al.* | ) ) Judge Patti B. Saris ) ) ) ) ) ) |

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SCHERING CORPORATION, SCHERING-PLOUGH CORPORATION AND WARRICK PHARMACEUTICALS CORPORATION**

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Statement of Undisputed Material Facts Applicable to Defendants Schering Corporation, Schering-Plough Corporation and Warrick Pharmaceuticals Corporation, (collectively hereinafter "Schering/Warrick") in support of their Motion for Partial Summary Judgment.

**I. DEFENDANT SPECIFIC FACTS**

**1.** The Schering/Warrick Drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto. This exhibit also sets forth Schering/Warrick's Published AWPs and DPs/WACs for these Drugs and NDCs. The exhibit specifically notes which NDCs are associated with package sizes that set the FUL.

**2.** The specific Schering/Warrick drugs at issue are the Albuterol .83 mg/ml solution, the Albuterol 90 MCG Inhaler and Isosorbide Mononitrate 60 MG Tablet.

**3.** Schering/Warrick has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8. *See* Defendants Schering-Plough Corporation's,

Schering Corporation's, and Warrick Pharmaceuticals Corporation's Answer to Plaintiffs' Revised First Amended Consolidated Complaint ("Schering/Warrick Answer") [Docket #4835] at ¶ 132;  *see also Commonwealth of Mass. v. Mylan*, 2008 WL 5650859 *25 (D. Mass. Dec. 23, 2008).

4. Schering/Warrick was required as matter of law to familiarize itself with the legal requirements, standards and procedures of Medicaid reimbursement formulas.  *Mylan*, 2008 WL 5650859 at *25.

5. Warrick knew that eligibility for reimbursement by Medicaid was an important issue for its customers.  *See* Warrick Pharmaceuticals Corp. 30(b)6) (Harvey Weintraub)  9/18/06 Deposition Transcript (Exhibit B) at 173:5-9 (hereinafter "Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B)") ("In order to have our drugs purchased by the national accounts we certainly had to have our products reimbursed by – under the Medicaid programs.").

6. Schering/Warrick was well aware of the importance of the Medicaid market and that many states use third-party pricing services for the pricing data used to establish reimbursement levels. *Id*. at 369: 7 – 371-23. In the Schering/Warrick "Action Plan" for the Albuterol Inhaler launch, the authors state at page 10 under the heading "MEDICAID, DUR AND PRICING SERVICES:"  1) One of the critical factors in the success of a generic product is to get reimbursement as quickly as possible. Third party reimbursers represent as much as 2/3 of an accounts utilization of a given product. It will be critical to achieve 100% reimbursement as quickly as possible.  2) Many states utilize third party pricing services to update their files for new additions as products become available for reimbursement on Medicaid.  Letters should be prepared immediately for mailing the day of launch to all pricing services. *See*, Exhibit K (excerpts of Action Plan).

**Warrick Set and Reported Its AWPs and DPs**

7.      Warrick reported an AWP for its drugs to the pricing compendia. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 151:9-11; Warrick Pharmaceuticals Corp. 30(b)6) (Harvey Weintraub) 9/19/06 Deposition Transcript (Exhibit C) at 376:6-9 (hereinafter "Warrick 30(b)(6) (Weintraub) 9/19/06 Dep. (Exhibit C)"). *Mylan*, 2008 WL 5650859 at *7. Warrick 30(b)(6) (Weintraub) 9/22/06 Dep. (Exhibit D) at 893:24-894:4.

8.      At all times, from 1997 to 2005, at the time of launch of a new product Warrick set an AWP for each of its drugs. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 166:17-24. *Mylan*, 2008 WL 5650859 at *7. Warrick has only one AWP for any Warrick product at any time. *See* Warrick Pharmaceuticals Corp. 30(b)6) (Harvey Weintraub) 9/22/06 Deposition Transcript (Exhibit D) at 852:21-23 (hereinafter "Warrick 30(b)(6) (Weintraub) 9/22/06 Dep. (Exhibit D)").

9.      Warrick knew and controlled the AWPs for its drugs that were published by the national drug pricing compendia. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 154:9-16. First Databank would send requests to Warrick to verify the accuracy of the AWPs for its drugs. *See* Warrick 30(b)(6) (Weintraub) 9/22/06 Dep. (Exhibit D) at 843:7 – 844:3; 849:8-17.

10.     All published AWPs reflected what Warrick submitted to them. Warrick received written publications from First DataBank on either a bi-weekly or monthly basis and would review them to confirm that First DataBank published the prices Warrick had submitted. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 154:9-16.

11. Warrick's Direct Price was synonymous with "Invoice Price" which was synonymous with WAC. Deposition of Harvey J. Weintraub dated 2/12/03 (Exhibit E) at 489:20-490:7; 592:7-17. 635:23-636:3; 708:15-20 (hereinafter "Weintraub 2/12/03 Dep. (Exhibit E)").

12. Warrick did not report WACs for its drugs but reported DPs which Warrick knew FDB would publish as WACs. *See* Warrick Pharmaceuticals Corporation's Response to the Commonwealth of Massachusetts's Local Rule 56.1 Statement of Undisputed Material Facts Applicable to Warrick and Counterstatement of Additional Undisputed Material Facts, ("Response to Mass. 56.1") [Mass. Docket #475] (Exhibit F) at ¶11 (hereinafter "Warrick Resp. to Mass. SOF (Exhibit F)"), *Mylan*, 2008 WL 5650859 at *6. Warrick admits that it knew that Warrick's DPs were published as WACs, and on at least one occasion, provided its Direct Price to First Databank specifically and expressly to be published as its WAC, as a condition of having its products listed. *See* Warrick Resp. to Mass. SOF (Exhibit F) at footnote 1 on page 38 (describing a transaction between Harvey Weintraub on behalf of Warrick and Kay Morgan on behalf of First Databank in which Weintraub was informed that Warrick's Direct Price was considered by First Databank to be an appropriate proxy for WAC); *Mylan*, 2008 WL 5650859 at *17.

13. Warrick set AWP at launch and generally did not change it. *See* Warrick Resp. to Mass. SOF (Exhibit F) at 11. Warrick knew that FDB published its DPs in the hard copy version of FDB's pricing service. *Mylan*, 2008 WL 5650859 at *7. Warrick knew that FDB published its Direct Prices as WACs in the electronic form. *See* Warrick Resp. to Mass. SOF (Exhibit F) at 26.

14.     Warrick produced at least one fax from First Databank to Warrick of FDB's 1999 National Drug Data File Product Update, listing Warrick's drugs and their WACs, demonstrating that Warrick was aware of the fact that FDB was publishing its Direct Prices as WAC.  FDB Fax dated 3/2/99 (Exhibit G), Bates RGX 0190075-6; *Mylan*, 2008 WL 5650859 at *7.

15.     Kay Morgan also testified that from time-to-time, FDB would send manufacturers the information FDB was publishing, including WACs, and request that the manufacturer approve and update its information.  Deposition of Patricia Kay Morgan dated 1/28/02 (Exhibit H) at 38:5-25, *Mylan*, 2008 WL 5650859 at *17.

16.     Warrick refers to its DPs as "Direct Wholesale" indicating that Warrick presents its DPs as its wholesale prices.  Warrick Launch Letters dated 12/29/95 and 12/30/95 (Exhibit I), *Mylan*, 2008 WL 5650859 at *17.  Warrick knew that its published prices were used for Medicaid reimbursement purposes.  *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 135:3-25; 137:1-12; Warrick 30(b)(6) (Weintraub) 9/19/06 Dep. (Exhibit C) at 369:7 – 371:23.  *Mylan*, 2008 WL 5650859 at *16.

**Warrick's Published AWPs and WACs had No Relationship to Actual Prices**

17.     Warrick knows and admits that its reported AWPs were not tethered to the actual prices that anyone pays or to the WAC.  *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 134:13 – 135:1 (AWP is "a reference point or a sticker price").

18.     At all times relevant to this action, Warrick knew that its generic product line was subject to vigorous competition and that as a result, the actual prices for Warrick's products would generally decline substantially over time.  *See* Warrick Pharmaceuticals Corp. 30(b)(6) (Harvey Weintraub)  9/21/06 Deposition Transcript (Exhibit J) at 753-57 (hereinafter

5

"Warrick 30(b)(6) (Weintraub) 9/21/06 Dep. (Exhibit J)"); Warrick Resp. to Mass. SOF (Exhibit F) at page 9.

19. Warrick sets its AWPs 10-15% below the AWPs of the branded versions of the drugs. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 166:17 – 167:2. When Warrick entered the market and there were already competitive products with AWPs, Warrick would set the AWP for its product "somewhere in the pack" of the competitor AWP values. Warrick Pharmaceuticals Corp. 30(b)6) (Harvey Weintraub) 9/20/06 Deposition Transcript (Exhibit K) at 527:6 – 528:8.

20. Warrick know*s* that it does not sell any of its generic drugs at AWP. *See* Warrick 30(b)(6) (Weintraub) 9/21/06 Dep. (Exhibit J) at 760:16 – 761:15 ("I do not remember any such occasion" when Warrick sold a product to a customer at the AWP price); 762:24 – 763:6 ("Q. Warrick knows when it sets its AWP that the price that it charges to the chain is always going to be significantly lower than that price; isn't that true? … A. Generally, yes.").

21. After 1995, Warrick made no changes to its AWP. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 167:3-8. Over time chain pharmacies would pay less and less for Warrick products while the AWP stayed the same so that the difference between the pharmacies' market price and Warrick's AWP would grow over time. *See* Warrick 30(b)(6) (Weintraub) 9/18/06 Dep. (Exhibit B) at 163:23 – 164:1; Warrick 30(b)(6) (Weintraub) 9/21/06 Dep. (Exhibit J) at 765:11 – 766:10.

22. Warrick's AWPs were not true prices. *Mylan*, 2008 WL 5650859 at *18. Warrick's corporate parents, Schering and Schering-Plough Corporation, understood, condoned and concealed the disparity between Warrick's reported AWPs and the prices generally and currently available in the market. See, Exhibit M, Excerpt from Letter to the Honorable Thomas

Bliley, dated August 12, 1999, in which Schering and Schering-Plough Corporation define AWP, while under investigation by Congress, as "the composite wholesale price **charged**..." (emphasis added.)

23. Warrick admits that it reported a Direct Price to the pricing compendia at product launch. *See* Warrick Resp. to Mass. SOF (Exhibit F) at page 11-12.

**Warrick's AMPs**

24. Schering/Warrick calculated and reported the average manufacturer's price ("AMP") for all its products on a quarterly basis as required by the federal rebate statute. *Mylan*, 2008 WL 5650859 at *30.

Dated: May 15, 2009

Respectfully submitted,

**City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

**KIRBY McINERNEY, LLP**
825 Third Avenue
New York, New York 10022
(212) 371-6600

By:  /s/ Joanne M. Cicala
Joanne M. Cicala
James P. Carroll Jr.
Jocelyn R. Normand
Kathryn B. Allen

Ross B. Brooks, Esq.
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
*Special Counsel for the County of Nassau*

7

Theresa A. Vitello, Esq.
LEVY PHILLIPS &
KONIGSBERG, LLP
800 Third Avenue
New York, NY 10022
(212) 605-6205
*Counsel for the County of Orange*

**CERTIFICATE OF SERVICE**

I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO WARRICK PHARMACEUTICALS CORPORATION, to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.

Dated:  May 15, 2009

                                                       _____/s/_____
                                                     James P. Carroll, Jr.
                                                     Kirby McInerney LLP
                                                     825 Third Avenue, 16th Floor
                                                     New York, NY 10022
                                                     (212) 371-6600

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *The City of New York, et al.* <br> *v.* <br> *Abbott Laboratories, et al.* | ) ) MDL NO. 1456 <br> ) Civil Action No. 01-12257-PBS <br> )  Subcategory Case No: 03-10643-PBS <br> ) <br> ) Judge Patti B. Saris <br> ) ) ) ) ) |

# CONFIDENTIAL EXHIBITS

## TO
### PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SCHERING CORPORATION, SCHERING-PLOUGH CORPORATION AND WARRICK PHARMACEUTICALS CORPORATION

**MAY 15, 2009**

**SUBJECT TO MOTION FOR LEAVE TO FILE UNDER SEAL**