# APPENDIX A

| WITNESS | TESTIMONY |
|---|---|
| David Campana (Alaska) (30(b)(6)) | Q.  Now, leaving aside studies for a moment, was there other consideration given to changing dispensing fees or the dispensing fee methodology at any time from 1990 to the present?<br>A.  There were a couple at different times.<br>Q.  When were those evaluations?<br>A.  I don't remember.<br>Q.  Do you recall what the outcome was of those evaluations?<br>A.  The evaluations were done as a -- some type of memo and provided to management, and management never cared to take it any further.<br>*****<br>Q.  Do you know why those have not been produced in this litigation?<br>A.  I don't know if those particular memos were saved at the -- at the time.<br>Q.  Would they be saved in the files of the people you sent them to?<br>A.  I don't know.<br>Q.  Have you looked in the files of the people you sent them to or their successors that inherited their files?<br>A.  I know that Teri Keklak's files when she left our division were all shredded.<br>Q.  And when did she leave the division?<br>A.  2000 -- I believe 2003 or 2004.<br>Q.  And her files were shredded at that time?<br>A.  They were shredded or somehow destroyed and -- and/or taken with her.  But it's my recollection that most everything was shredded.<br><br>Campana Dep. (8/20/08) at 433-35 |
| James Kevin Gorospe (California) (30(b)(1)) | Q.  You just know that counsel for the State of California at some point asked you to preserve or gather documents?<br>A.  That is correct.<br>Q.  You didn't receive any directive from the United States to gather or preserve documents.<br>MR. GOBENA:  Object to the form.  Asked and answered.<br>THE WITNESS:  Not that I can recall.<br>BY MR. COLE:<br>Q.  When was the first time you were asked to preserve or gather documents by counsel for the State of California?<br>A.  I don't recall.<br>Q.  Okay.  I'm not asking for a specific date but can you -- can you date it in any way: A month, a year, a decade?<br>A.  Longer than a year ago --<br>Q.  Okay.<br>A.  -- is the best I can do.<br>Q.  So sometime two or three years ago?<br>A.  I don't recall.<br>Q.  Is that fair?<br>A.  I don't recall.<br>Q.  Okay.  Do you remember ever being asked to preserve documents in the '90s in connection with these lawsuits?<br>A.  Not that I can recall.<br>Q.  And again, I'm just trying to see if there's any way you can put a time period on when you were asked -- first asked to gather or preserve documents and you've said it was more than a year ago. Was it somewhere two to three years ago?  Was it five years ago?  Can you be any more precise than that? |

| WITNESS | TESTIMONY |
|---|---|
|  | A. I don't believe it's greater than five years.<br>Q. Okay. Do you believe it's greater than three years?<br>A. I don't recall.<br><br>Gorospe Dep. (3/19/08) at 330-32 |
| Cynthia Denemark (Delaware) (30(b)(6)) | Q. Still to this day Delaware has never received a memo or document or other communication from DOJ or CMS to retain documents due to litigation?<br>*****<br>A. I have not received anything of the nature that you suggested.<br>Q. And in your personal capacity, you had never received a directive to retain documents relating to the subject matters that we've been discussing over the last two days?<br>A. Only so far as I was notified of the delivery of the subpoena and asked to retain records according to the Dey subpoena.<br>*****<br>Q. Okay. So prior to July 22nd or thereabouts of 2008, you had not received any directive to either collect or -- collect documents that would be pertaining to the subjects we've discussed today or to retain the documents?<br>A. No<br><br>Denemark Dep. (12/10/08) at 421-23 |
| Michael Sharp (Indiana) (30(b)(1)) | Q. Have you ever received direction from anyone to withhold from destroying documents that could be relevant to this case?<br>A. No.<br>Q. No lit hold memos?<br>A. I'm not sure what that is.<br>Q. No written or verbal instructions telling you to refrain from destroying documents?<br>A. No<br>*****<br>Q. If you had been given instructions not to destroy documents, I'm correct that you would have followed the instructions not to destroy documents, had you been given that instruction?<br>A. Yes.<br><br>Sharp Dep. (3/28/08) at 42-43 |
| M.J. Terrebonne (Louisiana) (30(b)(1)) | Q. Sure. The communications that you have had with providers, your staff, your boss, undersecretary, occasionally manufacturers and state legislators and their staff concerning reimbursement of drugs and dispensing fees, would those be kept anywhere in a central file, or are they kept at all?<br>A. Some of them are probably kept, some of them are probably not kept.<br>*****<br>Q. How about if you had an e-mail from a provider or a provider had a question concerning payment rates in, say, the mid-1990s. Is that the kind of thing that you would keep?<br>A. I would probably keep it if it were related to some type of state plan that we may be submitting, but just to keep it, if it doesn't pertain to anything, I wouldn't keep it.<br><br>Terrebonne Dep. (3/31/08) at 28-30 |
| Brenda McCormick (Maine) (30(b)(1)) | Q. And for documents before that time frame, where are those -- where are those stored?<br>MS. ST. PETER-GRIFFITH: Object to the form.<br>MR. FORTIN: Go ahead. |

| WITNESS | TESTIMONY |
|---|---|
|  | A. We have a somewhat unique situation at -- at our office and that is that we were evicted from a building that we were in originally because of mold and harmful substances to people's respiratory system so there were a lot of documents destroyed at that time when we moved from that building, and then we moved into a temporary space for about three years, and when we moved into the building that we're in right now, which we have been in for -- I am not sure, three or four years, we had to -- we destroyed some documents because we didn't have as much storage in this new building.<br>Q. Do you recall approximately when you were evicted from the old building?<br>A. Oh, gosh, you are testing my memory.<br>Q. Is it more than five years ago?<br>A. Yes. I would expect it was -- I am thinking six years ago. Perhaps longer.<br><br>McCormick Dep. (3/28/08) at 17-18<br>----------------------<br><br>Q. Have you ever heard of something called litigation hold?<br>A. No.<br>MS. ST. PETER-GRIFFITH: Object to the form.<br>Q. Do you recall ever being instructed by anyone to preserve documents that may be related to this case?<br>MS. ST. PETER-GRIFFITH: Object to the form.<br>A. No<br><br>McCormick Dep. (3/28/08) at 18 |
| Joseph Fine (Maryland) (30(b)(6)) | Q. Mr. Fine, during your time at the department were you ever -- did you ever become aware of -- and I'm asking personally now -- of any instruction to retain documents that might be related to drug pricing litigation?<br>A. Was I personally --<br>Q. That's my first question.<br>A. No. Not that I was instructed, personally instructed.<br>*****<br>Q. Let me go back. You left the department in May of 2005 --<br>Q. -- correct?<br>A. Yes.<br>Q. If there had been an instruction to individuals within the department to retain documents that might be relevant to drug pricing litigation, do you think in your position you would have become aware of it?<br>A. Being the director of pharmacy for all pharmacy services at that time, I believe I would have been made aware of it.<br><br>Fine Dep. (12/9/08) at 253-56 |
| Arnold Shapiro (Massachusetts) (30(b)(6)) | Q. And when you left in 1999, do you know whether the correspondence and memoranda and notes that you had retained were still intact?<br>A. They were all shredded.<br>Q. And they were shredded when?<br>A. When I left the Commonwealth, all of my records were sent to shredding.<br>Q. And were they sent to shredding well, how did it come about that they were shredded?<br>A. When I left when I was leaving state service, I was told to just clean out the office and get rid of all the collections.<br>*****<br>Q. Do you recall any instructions to other employees to destroy or shred their |

| WITNESS | TESTIMONY |
|---|---|
| | documents?<br>A. It was pretty much common practice.<br>Q. Okay, and did you gather the materials together yourself or did someone do it for you?<br>A. I did.<br>Q. And do you recall the volume of material?<br>A. It was a fairly large<br>Q. I'll bet.<br>A. -- dumpster. It was an accumulation of probably close to 11 years --<br>Q. Right.<br>A. -- of documents.<br>Q. Right. So if -- I mean, was this six feet of material or<br>A. It was a dumpster probably maybe slightly larger than this end of the table standing about this high.<br>Q. Which is about 4 by 4?<br>A. Yeah.<br>Q. And 4 feet high?<br>A. Yeah.<br>Q. So a lot of material?<br>A. A lot of stuff, right.<br>Q. And then once you put this material in the dumpster, do you know where it went?<br>A. They those dumpsters would go -- they'd be picked up by the shredding company.<br>Q. And was there any material in your files of correspondence and memoranda and notes that you retained and that did not go into the dumpster for the shredding?<br>A. There were no notes. There were some materials, some personal things that I retained, but nothing<br>Q. But no business-related things?<br>A. No business-related.<br><br>Shapiro Dep. (10/3/07) at 16-19 |
| James Kenyon (Michigan) (30(b)(1)) | Q.   Prior to seeing that subpoena, had anyone told you to withhold from destroying documents that might be related to AWP matters or drug pricing issues?<br>A.   No.<br>Q.   Since being issued that subpoena, has anyone instructed you to withhold from destroying documents relating to drug pricing issues?<br>A.   No.<br><br>Kenyon Dep. (3/25/08) at 14 |
| Sandra Kramer (Michigan) (30(b)(1)) | Q.   Prior to receiving the subpoena from Abbott, had you received direction from anyone to specifically retain documents that might be relevant to this litigation?<br>A.   No.<br>Q.   Never received a litigation hold memo or something telling you --<br>A.   I'm not familiar with that term.<br>Q.   -- instructions either written or verbal that said not to destroy or throw away certain documents that might be related to the allegations that the Government has brought against the drug manufacturers?<br>A.   There was no specific memo that I recall.<br>Q.   If you had been asked to do, would you have done so?<br>A.   I would have complied with directions.<br><br>Kramer Dep. (3/25/08) at 24-25 |
| Cody Wiberg (Minnesota) (30(b)(1)) | Q.   And this may be a self-answering question, but when you were going through the process of deciding what to keep, what to archive, what to throw away at the |

- 4 -

| WITNESS | TESTIMONY |
|---|---|
|  | department of health and human services, did this case, and were there documents needed to be retained for this case, it all entered into that equation.<br>A. No. This case? No.<br>Q. And had anybody from the Department of Justice or the CMS contacted the State of Minnesota to ask that documents that might relate to this case be preserved?<br>MR. FAUCI: Objection, form.<br>A. Not to my knowledge.<br><br>Wiberg Dep. (3/14/08) at 57 |
| Gary Cheloha (Nebraska) (30(b)(6)) | Q. Let me ask you this: Did the State at any time receive a request from the United States to preserve documents related to their . . . lawsuit against Abbott or Roxane or Dey?<br>A. I don't recall such a -- I don't recall that.<br>Q. If such a request had come in, would you be made aware of that?<br>A. Since I was preparing for this deposition, I would think that, yes, I would be.<br><br>Cheloha Dep. (12/2/08) at 274-75 |
| Margaret Clifford (New Hampshire) (30(b)(1)) | Q. Did you at any time receive what we refer to as a litigation hold which is a notification or a memo saying there's a litigation in place, you should hold on to documents relating to this litigation?<br>A. Not that I recall.<br><br>Clifford Dep. (10/29/08) at 193 |
| Robert Stevens (New Mexico) (30(b)(6)) | Q. Do you know whether New Mexico HSD or New Mexico -- the New Mexico Medicaid program ever received a request or instruction from the department of -- the federal Department of Health & Human Services or the United States Department of Justice to preserve documents in connection with this lawsuit?<br>A. I'm not aware of any order to do so.<br><br>Stevens Dep. (12/15/08) at 29-30 |
| Lisa Weeks (North Carolina) (30(b)(6)) | Q. Has the North Carolina DMA staff ever been told not to destroy documents relevant to these lawsuits?<br>A. Yes, I believe at the initial subpoena, I believe there was some communication about that.<br>Q. The communication from whom?<br>A. My recollection is from the Attorney General's Office, North Carolina Attorney General's Office.<br>Q. And when did the program staff receive that communication?<br>A. At the time that we received the Abbott subpoena.<br>Q. So in 2007?<br>A. Yes.<br>Q. Up until that time, had, to your knowledge, anyone ever told the North Carolina DMA staff not to destroy documents relevant to these lawsuits?<br>A. Not that I'm aware of.<br><br>Weeks Dep. (10/21/08) at 380-81 |
| Brendan Joyce (North Dakota) (30(b)(6)) | Q. Have you, during your time at North Dakota Medicaid, ever received a notice or a request for -- from the Department of Justice asking you to retain documents in this litigation or in the Dey litigation?<br>MS. THOMAS: Objection. Form.<br>MR. BAHR: You can answer.<br>THE WITNESS: I can?<br>A. Yes. |

| **WITNESS** | **TESTIMONY** |
|---|---|
|  | Q.  (Ms. Geisler continuing)  You've received a notice from the Department of Justice?  Can you tell me when you received that notice?<br>A.  When I personally received it?<br>Q.  Yes.<br>A.  A couple weeks ago.<br><br>Joyce Dep. (12/12/08) at 229 |
| Nancy Nesser (Oklahoma) (30(b)(6)) | Q.  For what time period are you prepared to testify about the topics of inquiry?<br>A.  From May of 2001 through the current time period.<br>Q.  Are you aware that the topics -- that many of the topics of inquiry and areas of inquiry in the deposition notice regard time periods earlier than May, 2001?<br>A.  Yes.<br>Q.  What did you do to prepare to testify about those topics or time periods earlier than May, 2001?<br>A.  There are no documents available for me to reference those time periods.<br>Q.  Did you contact any previous pharmacy directors or anyone who had been with the Oklahoma Department of Human Services?<br>A.  No.  That previous pharmacy director is deceased.<br><br>Nesser Dep. (12/12/08) 27-28<br>----------------------<br><br>Q.  Has Oklahoma Medicaid ever received a document preservation notice or litigation hold from the federal government?<br>A.  Not that I know of.<br>Q.  What steps has Oklahoma taken since it first learned of the federal government's lawsuits against Abbott, Dey and Roxane to make sure the potential responsive documents were not destroyed?<br>A.  What steps have we taken?<br>Q.  Yes.<br>A.  I don't -- I don't know that we've taken any specific steps.<br><br>Nesser Dep. (12/12/08) at 236-37<br>----------------------<br><br>Q.  Okay.  We also mentioned earlier the subpoenas that Oklahoma Medicaid received for documents by the Abbott, Dey or Roxane defendants in the summer of 2008; correct?<br>A.  I don't remember getting them that long ago.  But maybe we did.<br>Q.  Were you ever asked to collect documents in response to the subpoenas for documents by these defendants?<br>A.  Yeah.  About a month or five weeks ago.<br>Q.  And what were you asked to collect?<br>A.  Well, there was a big list.  And I went through and just said, "These are the things I know how to find."  And that's what -- that's what we were able to produce, was the things that I knew where they were.<br>*****<br>Q.  Are you aware that Oklahoma Medicaid only produced about 10 documents in this case?<br>A.  Yes.<br>Q.  You would assume that there are significantly more than 10 documents that relate to the subjects requested in the subpoena about prescription drug pricing?<br>A.  I would suspect there are more somewhere. |

| WITNESS | TESTIMONY |
|---|---|
| | Nesser Dep. (12/12/08) at 244-45 |
| John Young (Rhode Island) (30(b)(6)) | Q. Did you take -- make any effort at all to retain any documents that could relate to this litigation when you left in May 2008?<br>MS. BAUM: Objection, foundation.<br>BY MS. RANKIN:<br>Q. You can answer.<br>A. I personally did not, no.<br>Q. What would have happened to your files and electronic files and hard copy files?<br>A. My personal files are sitting in my old office to the best of my belief and knowledge. It would be my practice to copy down any electronic files and to put them into the paper files. My drives were all erased.<br>Q. When were your drives erased?<br>A. In May 2008.<br>Q. So all of your drives were erased in May 2008. Would that be all of the drives containing all of the documents that would have been in your possession as Medicaid Director?<br>A. Any electronic versions of the paper file would have been, yes.<br><br>Young Dep. at (12/3/08) 156-57 |
| Larry Iversen (South Dakota) (30(b)(6)) | Q. Did South Dakota ever receive notification from CMS or the Department of Justice indicating that it should retain documents relating to AWP or drug pricing?<br>A. To the best of my knowledge, no.<br>Q. Have you ever personally been advised to retain documents relating to South Dakota's Medicaid reimbursement system or its knowledge about published AWPs?<br>A. No.<br><br>Iversen Dep. (12/15/08) at 124<br>----------------------<br><br>Q. What prompted South Dakota to implement this survey looking into the difference between the published AWPs and the rate at which providers could acquire drugs?<br>A. I don't know that.<br>Q. Who would know?<br>A. Bob Coolidge.<br>Q. What is Mr. Coolidge's position today?<br>A. All I know is he doesn't work for the Department of Social Services.<br>Q. Do you have any idea when he left Department of Social Services?<br>A. It's probably been close to 11 to 12 years ago.<br>Q. Where are the files relating to this survey stored in the South Dakota Medicaid office?<br>A. I don't know that there are any files related to this survey even in existence.<br><br>Iversen Dep. (12/15/08) at 135-36 |
| Bryan Tomlinson (Virginia) (30(b)(6)) | Q. Do you have an understanding of whether these e-mails are the most current e-mails or are older e-mails?<br>A. There are thousands and tens of thousands of documents. I don't know that I can recall the final count, but there -- it's voluminous; in the tens of thousands, if not even more. And they -- they -- they include the electronic mail, plus any other files that are retained in the -- in the -- in our system. And they go back -- depends on the nature of the document, but they go back to the time when the -- there was a enterprise vault -- or there is -- there is a proprietary software that retains documents as they are generated and -- and that -- all that electronic messaging goes into that. And that |

| WITNESS | TESTIMONY |
|---|---|
| | stretches back, I believe, based on information we provided the Attorney General's Office back a number of years.<br>Q.  Roughly, 2003?<br>A.  2003 was the year that we made a -- there was -- there was a major change in our information system.  And most information in the agency does not go back beyond that, because the system change was so major that it's very difficult to capture information prior to 2003, because it was an entirely different programming.<br><br>Tomlinson Dep. (11/4/08) at 541-42 |
| Ayuni Hautea-Wimpee (Washington) (30(b)(6)) | Q.  Have you ever been asked to preserve documents?<br>A.  It is a matter of course that we were told to preserve whatever.  But what do I preserve if I didn't have anything?  You know, I mentioned that I gave away my files when I left the program in 2003, so I really didn't have anything to preserve that I would know would be relevant to what you were asking or were going to ask.<br>Q.  Did Washington Medicaid ever receive any communications from the federal government regarding this lawsuit since or before 2008?<br>A.  I'm not aware of it.  I -- I don't know.<br>Q.  And would you expect that if Washington's Medicaid Control and Fraud Unit received a communication from the federal government informing it that there was this federal lawsuit and that the claims related to Medicaid, that is the type of information that Washington Medicaid would receive?<br>A.  Yes.<br>Q.  And you haven't received any of those communications from Washington's Medicaid Control and Fraud Unit, correct?<br>MS. FORD:  Objection to form.<br>THE WITNESS:  Not that I'm aware of.<br><br>Hautea-Wimpee Dep. (12/2/08) at 431-32 |
| Myra Davis (Washington) (30(b)(6)) | Q.  And would you expect that if somebody from the federal government wanted documents related to Washington's Medicaid program to be preserved, that you would receive that kind of information?<br>A.  I would receive it through our A.G.s.  I would receive the instruction through our in-house legal department rather than directly from the feds.<br>Q.  And have you received that information?<br>A.  Yes.<br>Q.  When did you receive that information?<br>A.  I can't remember the date exactly, but it's been over a year, I believe.<br>Q.  Was it when Washington Medicaid first received the Subpoenas from Abbott in this past winter?<br>A.  Probably<br><br>Davis Dep. (12/3/08) at 98-99 |
| Roxanne Homar (Wyoming) (30(b)(6)) | Q.  Did Wyoming Medicaid ever receive a document preservation notice or litigation hold from the Federal Government?<br>MS. THOMAS:  Objection to form.<br>A.  Not that I specifically recall.<br>*****<br>Q.  (BY MS. LIEBERMAN)  Under Wyoming's document retention policy, documents such as legislative files could have been destroyed after three years, correct?<br>MS. THOMAS:  Objection to form.<br>A.  It appears that that is allowed per this policy.<br>***** |

| WITNESS | TESTIMONY |
|---|---|
|  | Q. So under the Wyoming document retention policy, rules and regulations that have been superseded could be destroyed and could have been destroyed.<br>MS. THOMAS: Objection to form.<br>A. That -- that's what it says on this policy.<br><br>Homar Dep. (12/2/08) at 273-77 |