# EXHIBIT A

| From: | Mark-Richard Butt [mrb01@health.state.ny.us] |
|---|---|
| Sent: | Wednesday, October 18, 2006 5:15 PM |
| To: | Jerry Dubberly |
| Cc: | ampaalist@gloetal.com; owner-ampaalist@gloetal.com |
| Subject: | Re: AWP Litigation |

Jerry:  NY has been involved in AWP litigation issues- (I can't say how
many) through our Attorney General Office. We have had many meetings with AG  and
Department of Health lawyers and have had to provide many boxes of documentation about
what we knew about AWP over many years.  In several cases, the pharmaceutical firms have
settled out of court.  These became multi-state cases and settlements have been in many
millions of dollars- which are being divvied up in proportion to issues.  I am not aware
of any specific amounts for NYS (and, of course, CMS gets their share). Lessons
learned: get rid of any papers that are from before state record keeping
requirements- lawyers want everything available (note: do not get rid of anything once
litigation has begun or after lawyers tell you to keep what is available- you could get in
a lot of trouble).  Also, be aware that e-mail is discoverable, too.  The drug
manufacturers will ask for lots of information through interrogatories and your state
agency lawyers and AG should go through them (they may need your help understanding what
they can/cannot provide prior to any provision of information)  In fact, they (not you)
should be sending or deciding what information not to send).  Do not talk to any drug
companies or, in fact, anyone about cases except your agency lawyers and AG lawyers (if
that is what your agency lawyers want). Most of this is probably understood, however,
staff people have been burned in the past.  Good luck, Mark

| | | |
|---|---|---|
| "Jerry Dubberly" | | |
| <jdubberly@dch.ga | | |
| .gov> | | To |
| Sent by: | <ampaalist@gloetal.com> | |
| owner-ampaalist@g | | cc |
| loetal.com | | |
| | | Subject |
| | AWP Litigation | |
| 10/18/2006 12:52 | | |
| PM | | |

All,

I am inquiring about your state's participation in AWP litigation.  Below are a few
questions:

1.   Have you participated or are you currently participating in litigation over
manufacturer's inflated reporting of AWP?

2.   What type recoveries are you seeing or do you project from this litigation? (Note:
Please identify if these are recoveries received or recoveries projected.)

3.   Did you use in-house or outside legal counsel for this litigation?

4.  If you have pursued this type litigation, do you have any "lessons learned" to share?

Thanks for your time.

Jerry

# EXHIBIT B



Attorneys' Eyes Only

R1-024535

# PRESENTATION PRIVILEGE LOG
## VOLUME 5
## NO: 1

**VAC MDL 86162**

9/14/9?   Vena Care meeting

Name          Affiliation      Telephone #

1. Sheree Kanner          HCFA/OGC        410 786-8869
410-786-66?? 2. Bernadette Schumaker   HCFA/BPD    410-786-45
3. Dorothy Colbert          HCFA/BPD        410-786-9671
4. Jim Conrad               HCFA/BPD        410-786-0188
202 Fax
401-0502  5. LINDA HILLIER          HHS/OIG/OE     202 619-1485
6. ARON PRIMACK, MD        HCFA/OBI       410-786-97.
7. Zachary T. Bentley      Ven-A-Care     305-292-163!
8. Luis E. Cobo            Ven-A-Care     305 292-163?
9. Jim Breen               WBB            305-577-0?
10. Ctlee Wampler, III     WBB            305-577-0?
11. T. Mark Jones          Ven-A-Care     305-292-1635
12. Mark Lavine            U.S.AO- Miami  (305) 536-547
13. Larry Reed             HCFA/MB(Medicaid) (410)786-33?
14. Mary Salcius           HCFA/OGC       202-619-121?
15. Leila Carp             HCFA/OGC       (410)786-88?
16. Sue GASTON             HCFA/MB        (410)786-6918
17. Larry Bonander         HCFA/BPD       (410) 786-449
18. Sally Strauss          DOJ            (202) 616-143?

Attorneys' Eyes Only

R1-024536

**VAC MDL 86163**



# The False AWP Multi-Billion-Dollar Machine

Attorneys' Eyes Only

R1-024537

VAC MDL 86164

## Medicare/Medicaid Finances Over-Utilization

45% of drug reimbursements create grossly excessive profits for customers of manufacturers who report false AWP's.

VAC MDL 86165

R1-024538

Attorneys' Eyes Only

# MANUFACTURER'S FALSE AWP'S  v. PROVIDER'S TRUE COST

## Misrepresentation Begins With FDA's New Drug Approval Date







**Medicare will reimburse for the injection, based on the average wholesale price, which currently is $166.00.**

VAC MDL 86166

R1-024539

Attorneys' Eyes Only

# MANUFACTURERS ARE ALSO WHOLESALERS - USE FALSE AWP'S TO PROMOTE DRUG SALES TO PROVIDERS



**Lowest physician-direct price on all Bristol Laboratories and Mead Johnson oncology products. Competitive pricing on more than 700 oncology drugs...**
75 days to pay for your purchases. Our extended payment terms give you 75 days from date of invoice to pay for your purchases in full without incurring finance charges, so your payables track more closely with reimbursement.

A bimonthly newsletter containing an up-to-date listing of AWP's for the most commonly used cancer medicines...

**Save 5% with Every Order of VePesid For Injection or Lyophilized Cytoxan**

**Create Your Own Discount Plan for Drugs and Supplies**

**Accumulate Your Network Dollars**

**The Network Will Handle the Bookkeeping**

**Flexibility of Dosage Without Waste!**

**Cost-Effective Reimbursement:**

|  |  |  | AWP/ Vial | AWP/ 50 mg |
|---|---|---|---|---|
| Leucovorin | 200 mg | $2.42 | $78.00 | $19.50 |
| Doxorubicin | 200 mg | $84.77 | $945.96 | $236.50 |

VAC MDL 86167

R1-024540

## HCFA DEFRAUDED INTO DIRECTING DMERCS TO PAY HIGHER REIMBURSEMENT BASED ON FALSE AWP

# NEWSLINES

#### WHAT'S NEW IN HOME INFUSION

### GREAT NEWS ON VANCOMYCIN!

Providers in DMERC Regions A, B, and D should see a sizable increase in their allowable charge for vancomycin—one of the most common antibiotics billed under Medicare Part B.

Although the four Medicare carriers are supposed to use the same allowable charge on infusion drugs (based on average wholesale price), they haven't done so for vancomycin (J3370). Alerted to the problem, NHIA contacted the DMERCs and the Health Care Financing Administration to find out why this was so. A discussion on how the allowable charge should be calculated showed that only **Region C** has been paying the correct amount for vancomycin: **$18.81**. By comparison, the allowable charge in Regions A and B has been $7.80, and only $10.56 in Region D.

NHIA has asked that the increase in the allowable charge be made retroactive to the beginning of the DMERC system. Providers billing for vancomycin should contact their DMERC to find out how to bill for an adjustment.

Remember too that new allowable charges take effect January 1 based on AWP updates. NHIA will be looking closely at these to ensure that they are calculated correctly.

---

### June 1995 DMERC Medicare Advisory

#### APRIL 1995 DRUG UPDATES

Infusion Drugs:

| HCPCS Code | Allowable |
|---|---|
| J0640 | $21.53 |
| J0895 | 9.48 |
| J1170 | 79 |
| J1455 | 12.19 |
| -J1570 | 34.80 |
| -J2175 | 70 |
| J2270 | 83 |
| J2275 | 12.38 |
| J2620 | 4.50 |
| J2930 | 12.50 |
| J3010 | 3.58 |
| J3370 | 14.60 |
| J9000 | 45.08 |
| J9010 | 225.40 |
| J9040 | 276.29 |
| J9085 | 46.00 |
| J9100 | 5.86 |
| J9110 | 23.00 |
| J9190 | 1.55 |
| J9200 | 118.16 |
| J9245 | 270.93 |
| J9370 | 31.75 |

---

July 31, 1996

Vanacare of Florida Keys
Louis Cobo
933 Fleming Street
Key West, Florida 33040

Dear Louis:

Thank you for your courtesy and kind attention during our telephone conversation. As we discussed, TRIAD Medical has received a cost decrease on Fujisawa's Vancomycin (Lyophilized) and we are passing the savings on to you.

| Catalog No. | Vial Size | Units | Cost |
|---|---|---|---|
| 33110 | 500mg | 25 | $67.80 |
| 26630 | 1gm | 10 | $53.35 |
| 39581 | 5gm | 1 | $11.25 |

As you can see, our pricing is the best in the industry! I will call you shortly to review this proposal. If in the interim you need me, I am just a phone call away.

Warmest regards,

Dan MacKay
Territory Manager
1-800-934-8633

---

### Home Infusion/Oncology   Fall 1996

| WEB | DESCRIPTION | EA | GOES NET | NDC/UPC |
|---|---|---|---|---|
| **LEDERLE LABS** | | | | |
| 371-070 | PIPRACIL 3GM INFUSION 10 | CT | 144.07 | 306388215 |
| 336-272 | PIPRACIL AD VL 3GM 10 | CT | 143.99 | 306388228 |
| 336-164 | PIPRACIL AD VL 4GM 10 | CT | 192.12 | 306388229 |
| 371-186 | VANCOLED VL 500MG 10 | CT | 44.09 | 300331409 |

---

Attorneys' Eyes Only

### InSource
Williams

More New Products! Back-to-School Price Discounts!

| Vancocin | Vancomycin HCL | |
|---|---|---|
| 1331 | 1g, Pd) (20ml) | |
| | Single-Dose Vial | $12.99 |
| 1990 | 1gram/Vial, Pd) | 9.20 |
| 1991 | 5gram/Vial, Pd) | 46.00 |
| 1989 | 500mg/Vial, Pd) | 4.80 |
| 1329 | 500mg/vial, Pd) 10ml | |
| | Single-Dose Vial | 9.25 |

### NPIX

---

### FLORIDAINFUSION

VANCOMYCIN 500MG VIAL LEDERLE ............. 4.30

VAC MDL 86168

R1-024541

Attorneys' Eyes Only

# MANUFACTURER'S INCENTIVES TO PROVIDER PAID BY MEDICARE/MEDICAID/PRIVATE INSURERS













ZOFRAN: Higher AWP...higher reimbursement



Effective January 3, 1995, Glaxo has increased the acquisition costs of Zofran injection. The new AWP is set at $233.02. However, the company has provided incentives to the market place which will insure that the Zofran price to physicians and clinics will be lower than the contracnual price available prior to the increase. Effective January 10, 1995 the price of Zofran has been reduced by most distribuors to $161.00. We expect this price to be available for the next three or four weeks and we don't expect that the price will afterwards increase considerably.





## 1994 MEDICARE J2405 $49,477,706

VAC MDL 86169

R1-024542

Attorneys' Eyes Only

# FALSE AWP'S CAUSE MEDICARE TO REIMBURSE MORE FOR GENERIC THAN FOR BRAND NAMES

**1. Manufacturer Bristol-Myers Reports Inflated AWP for Brand Name Drug Vepesid (Etoposide)**

- **AWP as Reported to Medical Economics (Red Book₀)**

- **True Manufacturer's Price to a Very Small Provider**



**2. Generic Drug Sold by Manufacturer Gensia**

- **Generic Manufacturer Reports Higher than Brand Manufacturer to Medical Economics (Red Book₀)**

- **Generic Manufacturer Gensia Sells at *Lower* Price than Brand Manufacturer**



**FLORIDA INFUSION**

**ETOPOSIDE**

| 100mg MDV | 200mg MDV | 500mg MDV |
|-----------|-----------|-----------|
| $67⁶² | $135²⁴ | $338¹⁰ |

**3. As A Result of False AWP's, Medicare Part B Increases Reimbursement to Higher AWP Reported for Generic:**

**Medicare B Update!**

**INJECTABLE DRUG FEES**

| Code | Participating Allowance | Nonparticipating Allowance | Limiting Charge |
|------|-------------------------|----------------------------|-----------------|
| J9181 | 14.20 | 13.49 | 15.51 |
| J9182 | 141.97 | 134.87 | 155.10 |

# GENERICS MORE EXPENSIVE THAN BRAND

## Common Belief that Generics are Less Expensive than Brand Drugs Incorrect in I.V. and Injectable Drugs when Manufacturers Falsify AWP's.

| BRAND | | GENERIC | |
|---|---|---|---|

**J 9070** CYTOXAN (Bristol-Myer Onc/Hiv)
cyclophosphamide
PDI, IJ (VIAL)

| J 9080 | | | | | NEOSAR (Pharmacia) cyclophosphamide PDI, IJ (S.D.V.) | | | | |
|---|---|---|---|---|---|---|---|---|
| J 9090 | 100 mg, ea.....00015-0500-41 | 5.31 | AP | | 100 mg, ea.....00013-5086-03 | 5.30 | AP | |
| J 9091 | 200 mg, ea.....00015-0501-41 | 10.11 | AP | | 200 mg, ea.....00013-5016-03 | 10.24 | AP | |
| J 9092 | 500 mg, ea.....00015-0502-41 | 21.24 | AP | | 500 mg, ea.....00013-5036-02 | 21.50 | AP | |
| | 1 gm, ea.....00015-0505-41 | 42.48 | AP | | 1 gm, ea.....00013-0036-70 | 43.01 | AP | |
| | 2 gm, ea.....00015-0506-41 | 85.00 | AP | | 2 gm, ea.....00013-0046-70 | 86.00 | AP | |

**J 0640** LEUCOVORIN CALCIUM
PDI, IJ (S.D.V.)

LEUCOVORIN CALCIUM (Elkins-Sinn)
PDI, IJ (P.F.)

**J 2545** PENTAM 300 (Fujisawa)
pentamidine isethionate
PDI, IJ (S.D.V.)

(Abbott Hosp)
PDI, IJ, 300 mg, ea.....00024-0549-01  108.1Z.

**J 0690** ANCEF (Abbott Hosp)
cefazolin sodium
PDI, IJ (VIAL)

(Fujisawa)
PDI, IJ (P.F.)

**J 3370** VANCOCIN HCL (Lilly)
vancomycin hydrochloride

vancomycin hydrochloride (Elkins-Sinn)

Attorneys' Eyes Only

R1-024543

**J 9360** VELBAN (Lilly)
vinblastine sulfate
PDI, IJ, 10 mg, ea.....00002-1452-01  36.22  AP

VINBLASTINE SULFATE (Fujisawa)

VAC MDL 86170



Attorneys' Eyes Only

R1-024544

VAC MDL 86171

VAC MDL 86172

R1-024545

Attorneys' Eyes Only

# MANUFACTURERS DICTATE FALSE AWP'S TO STATE MEDICAID AGENCIES

## Manufacturer's False AWP's

**vs.**

## True Wholesale Price





**LOWEST PRICE EVER!!!**

# TOPOSAR

(ETOPOSIDE-FULL DATED BY ADRIA LABS)

$60⁸⁰   $121⁶⁰   $299⁰⁰
100mg vial   200mg vial   500mg vial

# MANUFACTURER'S FALSE AWP'S ALSO VICTIMIZE PRIVATE INSURERS



**the** Principal
*Financial Group*

Principal Mutual
Life Insurance Company

September 1, 1995

ZACHARY T BENTLEY
VEN-A-CARE

Dear Mr. Bentley

I enjoyed speaking with you this morning regarding the pricing of PO drugs and IV drugs. As I told you this morning, Principal Mutual Life Insurance Company utilizes the Red Book in determining the AWP of the various drugs that we pay benefits on. We used the AWP price as a base figure, and depending on contract language, either pay a multiple of the AWP or take a reduction from the AWP.

Either way, we do utilize the AWP price as listed in the Red Book. We utilize the Red Book pricing for chemotherapy agents, antibiotics, hydration fluids, and for the various prescription drugs. Hopefully this letter will address the three questions submitted to me in your fax of August 31, 1995. If not, please call and we can discuss. Once again, it was nice to hear from you.

Sincerely

Ed Acela/CPE, Investigator
Group Claim - Special Services
711 High Street
Des Moines, IA  50392-4640
Phone 515  248-2013

EA:rlw/wd/04
08313388.ea

Attorneys' Eyes Only

**R1-024546**

Mailing Address: Des Moines, Iowa 50302-0001 (515) 247-5111 / FAX (515) 247-5930

**VAC MDL 86173**

VAC MDL 86174

# Patient-Specific Examples of I.V. Drugs Reimbursed by Medicare

**Case #1:** Patient "A" is diagnosed with resistant pneumonia and requires 1 gm Vancomycin every 12 hours for 14 days.

VAC's cost of providing the therapy:

| | | |
|---|---|---|
| J3370 - Vancomycin 500 mg | $ 3.50 x 56 units | $196.00 |
| J7050 - NaCl 0.9% 250 ml | $ 0.95 x 28 units | $26.60 |
| **TOTAL COST OF THERAPY:** | | **$ 222.60** |

MEDICARE's reimbursement for this therapy:

| | | |
|---|---|---|
| J3370 - Vancomycin 500 mg | $ 9.39 x 56 units | $525.84 |
| J7050 - NaCl 0.9% 250 ml | $ 9.43 x 28 units | $264.04 |
| **TOTAL REIMBURSEMENT FOR THERAPY:** | | **$789.88** |

| VEN-A-CARE COST OF THERAPY | vs. | MEDICARE REIMBURSEMENT |
|---|---|---|
| **$222.60** | | **$789.88** |

---

**Case #2:** Patient "B" suffers from cancer and requires a Leucovorin rescue with each chemo regime. His dosage is 970 mg I.V. daily, five days in a row, once a month, for a total of 4,850 mg a month.

VAC's cost of providing the therapy:

| | | |
|---|---|---|
| J0640 - Leucovorin 50 mg | $ 2.50 x 97 units | $242.50 |
| J7050 - NaCl 0.9% 250 ml | $ 0.95 x 5 units | $4.75 |
| **TOTAL COST OF THERAPY:** | | **$ 247.25** |

MEDICARE's reimbursement for this therapy:

| | | |
|---|---|---|
| J0640 - Leucovorin 50 mg | $ 21.53 x 97 units | $2,088.41 |
| J7050 - NaCl 0.9% 250 ml | $ 9.43 x 5 units | $47.15 |
| **TOTAL REIMBURSEMENT FOR THERAPY:** | | **$2,135.56** |

| VEN-A-CARE COST OF THERAPY | vs. | MEDICARE REIMBURSEMENT |
|---|---|---|
| **$247.25** | | **$2,135.56** |

R1-024547

Attorneys' Eyes Only

---

**Case #3:** Patient "C" has metastatic breast cancer and requires 820 mg Cytoxan, 820 mg 5 FU, 82 mg Adriamycin, and 0.5 mg Zofran every three weeks.

VAC's cost of providing the therapy:

| | | |
|---|---|---|
| J9093 - Cytoxan 100 mg | $ 3.00 x 9 units | $27.00 |
| J9000 - Adriamycin 10 mg | $ 11.00 x 9 units | $99.00 |
| J9190 - 5 FU 500 mg | $ 0.79 x 2 units | $1.58 |
| J2405 - Zofran 1 mg | $ 4.00 x 32 units | $128.00 |
| J7050 - NaCl 0.9% 250 ml | $ 0.95 x 2 units | $1.90 |
| **TOTAL COST OF THERAPY:** | | **$257.48** |

MEDICARE's reimbursement for this therapy:

| | | |
|---|---|---|
| J9093 - Cytoxan 100 mg | $ 6.55 x 9 units | $58.95 |
| J9000 - Adriamycin 10 mg | $ 45.08 x 9 units | $405.72 |
| J9190 - 5 FU 500 mg | $ 1.58 x 2 units | $3.16 |
| J2405 - Zofran 1 mg | $ 5.57 x 32 units | $178.24 |
| J7050 - NaCl 0.9% 250 ml | $ 9.43 x 2 units | $18.86 |
| **TOTAL REIMBURSEMENT FOR THERAPY:** | | **$655.97** |

| VEN-A-CARE COST OF THERAPY | vs. | MEDICARE REIMBURSEMENT |
|---|---|---|
| **$257.48** | | **$655.97** |

R1-024548

VAC MDL 86175

Attorneys' Eyes Only

# MANUFACTURER'S FRAUDULENT AWP'S

| | HCPCS | DRUG | 1994 ALLOWABLE CHARGES (in dollars) | CURRENT MEDICARE ALLOWABLE | VAC COST | PERCENT DIFFERENCE | POTENTIAL ANNUAL SAVINGS |
|---|---|---|---|---|---|---|---|
| 1 | J7620 | Albuterol Sulfate .083% | $ 147,867,769 | $ .47 | $ .146 | 221% | $ 100,000,000 + |
| 2 | J7625 | Albuterol .5% | 7,613,628 | .66 | .348 | 89 | 3,500,000 + |
| 3 | J7670 | Metaproterenol .4% | 14,239,661 | 1.22 | .42 | 190 | 9,000,000 + |
| 4 | J7672 | Metaproterenol .6% | 8,550,346 | 1.20 | .42 | 186 | 5,500,000 + |
| 5 | J7675 | Metaproterenol 5.0% | 661,119 | 1.30 | .42 | 210 | 460,000 + |
| 6 | J7630 | Cromolyn Sodium | 5,342,515 | .70 | .23 | 204 | 3,500,000 + |
| 7 | J7610 | Acetylcysteine 10% | 2,056,571 | 1.23 | .652 | 89 | 1,000,000 + |
| 8 | J7615 | Acetylcysteine 20% | 728,426 | 1.37 | .566 | 141 | 400,000 + |
| 9 | J7699 | NOC | 25,079,973 | | | | 14,500,000 + |
| 10 | J0640 | Leucovorin 50 mg | 73,925,209 | 21.53 | 2.75 | 683 | 65,000,000 + |
| 11 | J9217 | Leuprolide Acetate 7.5 mg | 380,033,363 | 477.50 | 361.00 | 32 | 92,720,000 + |
| 12 | J9000 | Doxorubicin 10 mg | 16,355,560 | 45.08 | 11.00 | 309 | 11,000,000 + |
| 13 | J9010 | Doxorubicin 50 mg | 10,847,015 | 225.40 | 45.00 | 400 | 7,000,000 + |
| 14 | J3370 | Vancomycin 500 mg | 8,729,523 | 9.39 | 3.26 | 188 | 6,000,000 + |
| 15 | J1561 | Immune Globulin | 26,266,860 | 36.01 | 11.50 | 213 | 17,000,000 + |
| 16 | J9370 | Vincristine 1 mg | 3,846,807 | 31.75 | 5.40 | 488 | 3,000,000 + |
| 17 | J9375 | Vincristine 2 mg | 1,390,687 | 38.25 | 9.80 | 290 | 1,000,000 + |
| 18 | J9181 | Etoposide 10 mg | 15,846,027 | 14.20 | 6.78 | 110 | 8,000,000 + |
| 19 | J9182 | Etoposide 100 mg | 21,616,806 | 141.97 | 67.62 | 110 | 8,000,000 + |
| 20 | J7050 | NACL 250 cc | 3,390,830 | 9.43 | | | 2,000,000 + |
| 21 | J7060 | D5W 500 ml | 1,368,581 | 9.43 | | | 1,000,000 + |
| 22 | J2405 | Ondansetron hydrochloride | 49,477,706 | 5.37 | | | 11,500,000 + |
| | | | $ 828,760,268 | | | Annual Potential Savings | $ 371,080,000 + |

**$371,080,000**

# EXHIBIT C





**VEN-A-CARE**
OF THE FLORIDA KEYS, INC.
A Home I.V. and Nutritional Service

933 FLEMING ST.
KEY WEST, FLA. 33040
(305) 292-1635
FAX: (305) 292-1739

<u>**SENSITIVE- DO NOT DISCLOSE- INFORMATION CONTAINED HEREIN RELATED
TO PENDING FEDERAL CASE UNDER COURT ORDERED SEAL**</u>

October 2, 1996

Dr. Bruce Vladeck
Administrator
Health Care Financing Administration
Department of Health and Human Services
200 Independence Blvd. S. W.
Hubert Humphrey Building Room 314G
Washington, D. C. 20201

RE: <u>**EXCESSIVE REIMBURSEMENTS FOR CERTAIN PHARMACEUTICALS BY THE
MEDICARE AND MEDICAID PROGRAMS.**</u>

Dear Dr. Vladeck,

Ven-A-Care of the Florida Keys, Inc. "VAC" has attempted for more than seven years to
assist the Health Care Financing Administration "HCFA" and the State Medicaid
programs in limiting infusion and inhalation pharmaceutical reimbursements to the
reasonable levels contemplated by the enabling legislation. VAC is particularly
concerned now about the continuing practice of the Medicare and Medicaid programs of
paying exorbitant reimbursement for infusion and inhalation drugs which results in more
than <u>one billion dollars per year</u> of federal funds being wasted. VAC's efforts, to date,
have not resulted in much needed changes. Accordingly, we are appealing to you
directly to insure that the necessary resources are dedicated to terminating this
unnecessary loss of program dollars as soon as possible.

Enclosed with this letter you will find two volumes of exhibits that substantiate and
support the fact that the Medicare and Medicaid programs are continuing to make
excessive reimbursements to providers for infusion and inhalation pharmaceuticals.
These reimbursements are at many multiples over and above the amount that the
programs ever intended to pay.

### BACKGROUND

VAC specializes in the provision of drugs that are administered parenterally as well as
respiratory solutions and their necessary supplies and equipment. VAC is a Florida
Medicaid, Champus, and Medicare Part B "PEN" provider and services patients whose
medical benefits are administered by virtually all of the major health insurance
companies. VAC was formed in 1987 by five physicians, three pharmacists, and two
nurses in Key West, Florida.

HHC003-0479

Dr. Bruce Vladeck
HCFA
October 2, 1996
Page 2

Infusion pharmaceuticals are primarily utilized by patients being treated for various forms of Cancer and HIV diseases. As I am sure you are well aware, both of these diseases are affecting a rapidly expanding population of people in the United States. This fact will only compound the future problem of finding adequate funding sources in order to provide these much needed benefits.

For approximately seven years, we have diligently worked in an attempt to inform responsible government officials, including HCFA and others, of the cause and effect that excessive reimbursements for infusion and inhalation drugs are having on our health care delivery system. As a result of these excessive payments, the Medicare and Medicaid programs are expending more than one billion dollars annually in additional costs. These excessive reimbursements also serve as a vehicle that drives overutilization and fuels illegal kickbacks. Much of the information which we have provided over past several years is now being reported by the media (Exhibit 1) and substantiated by various governmental reports, including but not limited to, the following *Office of the Inspector General* reports:

    1.) Supplier's acquisition cost for albuterol sulfate
    2.) Medicare payments for nebulizer drugs
    3.) A comparison of albuterol sulfate prices
    4.) Review of pharmacy acquisition cost for drugs reimbursed under the Medicaid prescription drug program of the California Department of Health Services
    5.) OIG physician's cost for chemotherapy drugs
    6.) Inappropriate payments for total parenteral nutrition (TPN)

Over a year ago, we traveled to the HCFA in Baltimore and met with various representatives of your agency and made a detailed presentation regarding these excessive reimbursements and their impact on the health care delivery system. Unfortunately, for the Medicare and Medicaid programs as well as the American public, to date, no meaningful action has been either proposed or implemented by your agency to deal with these issues. We find this fact not only disconcerting but potentially the source of a major embarrassment to both your Agency and to the Administration.

## AWP FRAUD ON THE PROGRAMS

Currently, Medicare and most Medicaid programs' reimbursement methodologies for pharmaceuticals is based on a factor of a drug's Average Wholesale Price, "AWP". For Medicare, this methodology is the average of the generic form of the drugs AWP and for most state Medicaid programs the methodology is at a small percentage reduction, approximately 10% off a drugs AWP. This methodology determination was intended to make the Medicare and Medicaid programs prudent purchasers of pharmaceuticals.

HHC003-0480

Dr. Bruce Vladeck
HCFA
October 2, 1996
Page 3

AWP has become the benchmark in the industry for establishing pharmaceutical reimbursement. Virtually every federally sponsored program, including Medicare, Medicaid, Champus, Federal Employees, and Railroad Workers as well as most private third-party programs is relying on AWP to base their reimbursement decisions (Exhibit 6,7,8,9, and 10). Unfortunately, the pharmaceutical manufacturers have circumvented the intent of the government's reimbursement methodology by falsely reporting inflated AWP pricing information enabling providers to reap windfall profits from the provision of infusion and respiratory drugs.

In 1995, the Medicare program had allowable charges of more than one billion dollars for approximately 50 infusion and inhalation drugs (Exhibit 2). Using these drugs as a basis for illustration, we compiled VAC's cost from a multitude of wholesale sources and compared them to Medicare's reimbursement  (Composite exhibit 3). Based on these results, we found that Medicare's reimbursement was excessive and in many cases provided profit margins of more than 500% and, in some instances, more than 1000%. For some drugs, the 20% Medicare co-insurance payment is equal to or greater than the cost of the drug. Needless to say, the financial impact is being borne not only by the programs but by the beneficiaries and Medicare secondary payers who are responsible for the 20% co-payment.

To illustrate the magnitude of this problem, we recalculated the Medicare program's cost for these drugs using VAC's *best price* (Exhibit 4) and VAC's *worst price*  (Exhibit 5). The *best* and *worst prices* <u>do not</u> represent "weekly specials" (Exhibit 15) which are widely available from wholesalers and can create additional savings on average of approximately 20%. It also does not take into account purchasing in bulk volume or multidose vials which also provide approximately 10- 20% savings or profit (Composite exhibit 3).

An example of a provider maximizing profits through purchases of drugs in bulk or multidose vials is the drug Ceftriaxone sodium, HCPCS J0696- 250mg.(Composite exhibit 3-3). VAC's best price for 250mg is $9.37. However, if VAC purchases a 2gm. vial that yields eight 250mg doses, the cost  for each dose is reduced significantly to $6.88 per 250mg.( the cost of the 2gm. vial is $54.98). This represents an additional 14% savings or profit. Based on VAC's cost, the Medicare program alone can achieve annual savings of approximately $350 to $500 million dollars for the drugs listed in our exhibits. Similar savings can be achieved by the State Medicaid programs over and above the cost-containment mechanisms already in place, such as the rebate program.

HHC003-0481

Dr. Bruce Vladeck
HCFA
October 2, 1996
Page 4

Third-party payers are unable to accurately estimate costs for infusion and inhalation drugs because drug manufacturers falsely inflate their drugs pricing information, including but not limited to, AWP. The manufacturers are and have been reporting false and fraudulent drug pricing information, including a drug's AWP, direct price,"DP", and wholesaler acquisition cost, "WAC"  (Composite exhibit 12). Drug manufacturers are in direct control of all pricing information provided to the marketplace, from the wholesale price to the amount of reimbursement (and thus the desired level of profits for their customers) by the Medicare and Medicaid programs. By falsely inflating drug pricing information, the drug manufacturers increase the profit margins enjoyed by their customers, thereby driving demand upward and increasing utilization. In some instances, the available profit margins arising from the manufacturers' false pricing information creates and incentive for the physician to utilize the manufacturer's drug rather than that of a competitor or prescribe alternative courses of treatment.

A number of years ago, the Florida Medicaid program changed its reimbursement methodology from AWP minus 10% plus a dispensing fee to WAC plus 7% plus a dispensing fee in an effort to further limit Medicaid pharmaceutical expenditures. The pharmaceutical manufacturers have thwarted Florida's attempt to control reimbursement for infusion and respiratory drugs by falsely reporting inflated WAC information. Additionally, Congress, has for a number of years been concerned about the spiraling costs of pharmaceuticals in the Medicare and Medicaid programs as evidenced by its enacting the Medicaid rebate program. For infusion and inhalation drugs, the drug manufacturers have caused this enactment to be a miserable failure in what can only be characterized as a farce. This outrage is easily demonstrated by the drug Leucovorin calcium manufactured by Elkins-Sinn. A  50mg. vial's NDC number is 00641-2369-41, its AWP is $56.25 and its DP is $45.00 as reported by the manufacturer. However, its true cost to providers is approximately $4.00. The Florida Medicaid program's reimbursement for this drug is approximately $46.00 (in addition applicable dispensing fee) which is more than twice Medicare's allowable for HCPCS J0460 (50mg. Leucovorin). Under the intent of the Medicaid rebate program, Florida should be receiving a rebate of approximately $4.60. When it comes to paying rebates to the State Medicaid programs, the drug manufacturers are truthfully reporting their required cost information and Florida receives a rebate of only $0.46!

Seizing the opportunity to exploit their control over drug prices, the drug manufacturers have in some instances, reported higher prices for generic products than the equivalent brand. In truth and in fact, the prices paid by the providers are much less. An example of this deceitful pricing practice is the drug Etoposide, HCPCS codes J9181 and J9182. This drug was a single source innovator drug produced under the brand name Vepesid by Bristol-Myers. Bristol-Myers reported an AWP of $136.49 for 100mg.(which was also false since

933 Fleming Street                     VEN-A-CARE  of the Florida Keys, inc.                     Key West, Florida  33040
                                                  (305) 292-1635

HHC003-0482

Dr. Bruce Vladeck
HCFA
October 2, 1996
Page 5

the true AWP was approximately $80.00). When Vepesid came off patent, the first
generic was produced by Gensia. Gensia reported an AWP of $141.97 for their generic
version of 100mg. Etoposide and thus caused the Medicare program to increase the
allowable from $136.49 to $141.97! Simultaneously, the free market was working
because the providers began to enjoy lower prices for purchasing Etoposide due to
competition. These lower prices were dramatic. As of today, there are two additional
manufacturers, Pharmacia and Chiron, who have priced their AWP for Etoposide
100mg. at $136.49 (same as Bristol-Myers) and $140.00 , respectively. The price for
100mg. of Etoposide has plummeted to $18.00. However, the reimbursement from
Medicare, Medicaid and other payers continues to be based on the fraudulent AWP.

The drug manufacturers are further exploiting their ability to falsify pricing information by
using their falsifications of AWP as a marketing tool. This is particularly true in cases
where payers, such as State Medicaid programs calculate separate reimbursements for
each manufacturer's drug based on the drug's NDC numbers. Our company has been
solicited on numerous occasions by drug manufacturers who brag about their use of
falsely inflated pricing information as a reason for purchasing their product over a
competitor's with a lower AWP.

We understand that the HCFA may be examining a plan that would,  for Medicare only,
abandon the AWP reimbursement methodology. We perceive three major flaws with
such an approach. First, this approach is based on the erroneous assumption that there
is something wrong with the historical concept of AWP. The damage to the Medicare
and Medicaid programs is being caused by false pricing information being submitted by
the drug manufacturers rather than truthful representations of AWP. In other words, the
problem can't be fixed unless it is accurately defined. Second, any plan must insure that
there is truth and honesty in drug pricing information provided by the manufacturers and
upon which reimbursement decisions are based. Ignoring the drug manufacturers'
propensity to falsify pricing information in order to drive up reimbursement and utilization
will doom any new methodology to failure. Third, the Medicaid programs must not be
ignored. Drug manufacturers must be precluded from continuing to submit false pricing
information to State Medicaid officials which is perpetuating the fleecing of the Medicaid
programs

Dr. Bruce Vladeck
HCFA
October 2, 1996
Page 6

We would be happy meet with you and answer any questions or concerns you may have on these very important issues.

Sincerely,

Zachary T. Bentley

T. Mark Jones

cc: Michael Theis, Esq. Trial Attorney
Department of Justice
202-307-0497

Mark A. Lavine, Esq. AUSA
U.S. Attorney's Office
Southern District of Florida
305-536-5472

933 Fleming Street                 VEN-A-CARE of the Florida Keys, Inc.                 Key West, Florida 33040
                                   (305) 292-1635

HHC003-0484        L

# EXHIBIT D



**VEN-A-CARE**
OF THE FLORIDA KEYS, INC.
A Home I.V. and Nutritional Service

933 FLEMING ST.
KEY WEST, FLA 33040
(305) 292-1635
FAX: (305) 292-1739

<u>SENSITIVE - DO NOT DISCLOSE</u>
<u>MATTERS UNDER INVESTIGATION</u>
<u>BY THE U.S. DEPARTMENT OF JUSTICE</u>

July 10, 1997

**Via Facsimile 202-690-6262**

Dr. Bruce Vladeck
Administrator
Health Care Financing Administration
Department of Health and Human Services
200 Independence Blvd. S.W.
Hubert Humphrey Building Room 314G
Washington, D. C. 20201

RE: <u>VIOLATIONS OF FEDERAL FOOD, DRUG AND COSMETIC ACT,</u>
<u>CHAPTER II, SECTION 201(m) (n), CHAPTER III, SECTION 301(b),</u>
<u>CHAPTER V, SECTION 502(a) BY CERTAIN PHARMACEUTICAL</u>
<u>MANUFACTURERS CAUSING IN EXCESS OF $1.5 BILLION OF LOSSES</u>
<u>EACH YEAR FROM THE MEDICARE AND STATES' MEDICAID PROGRAMS</u>

Dear Dr. Vladeck,

Please find enclosed a copy of a letter that we have directed to the Federal Food and Drug Administration, "FDA". The FDA has the authority to regulate the certain Pharmaceutical Manufacturers who are causing the Medicare and States' Medicaid Programs to pay more than $1.5 billion each year over the amounts contemplated by the Programs' respective reimbursement legislation.

We have been closely monitoring your agency's recommended legislation, "No Mark-Up on Drugs", directed at remedying these abuses in the Medicare Program. We have recently been advised by Congressman Stark's office that this proposal did not survive the House Ways and Means mark-up session. Additionally, you should be aware that the Health Care Financing Administration, "HCFA", failed to offer or propose any recommendations that would have addressed these abuses in the States' Medicaid Programs.

On January 15, 1997, during a NBC Nightly News broadcast of the "Fleecing of America", (which only focused on the excessive reimbursements and not the on the issue of reimbursing more for generics than their equivalent brands by the Medicare Program), HCFA implied to the American Public that they would remedy this abuse and safeguard precious Medicare funds.

**2307218**

24 Hour Beeper Service • 745-0289

Exhibit No. Abbott - 163
Date 5/4 07
Johanna DeRosa, CSR

IIGHLY CONFIDENTIAL

R2-040909

Dr. Bruce Vladeck
HCFA
July 10, 1997
Page 2

It would appear that HCFA 's best attempt at a partial remedy has failed. **Nevertheless**, HCFA has a duty and an obligation to protect the integrity of the Medicare and States' Medicaid Programs to ensure that these programs are "prudent purchasers" of health care goods and services.

We consider the matters of grossly excessive reimbursements and reimbursing more for generics than their equivalent brands for many infusion, injectable and inhalation pharmaceuticals by the Medicare and States' Medicaid Programs a threat to the financial solvency of the Programs.

In light of the above, we suggest that you coordinate your efforts with the appropriate FDA enforcement authorities who are responsible for ensuring that the Pharmaceutical Manufacturers do not make false or misleading statements about their products.

Sincerely,

Zachary T. Bentley

T. Mark Jones

John M. Lockwood, MD

cc: Mr. Michael Hertz, Esq.
    Mr. T. Reed Stephens, Esq.
    U.S. Department of Justice
    Mr. Mark Lavine, Esq.
    United States Attorney's Office
    Mr. Ron Chesemore
    FDA
    Mr. Atlee Wampler, III., Esq.
    Mr. James Breen, Esq.

**2307219**

933 Fleming Street                VEN-A-CARE of the Florida Keys, Inc.          Key West, Florida 33040
                                            (305) 292-1635

HIGHLY CONFIDENTIAL                                                      R2-040910

# EXHIBIT E

JAN-05-98 THU 10:30 AM   GET HEADQUARTERS          FAX NO. 202 019 2034          P. 03
Jan-05-98 05:34P Ven-A-Care                          305 292 1739              P.02



# VEN-A-CARE
## OF THE FLORIDA KEYS, INC.
A Home I.V. and Nutritional Service

933 FLEMING ST.
KEY WEST, FLA 33040
(305) 292-1635
FAX: (305) 292-1739

## SENSITIVE - DO NOT DISCLOSE

January 5 , 1998

The Honorable Janet Reno, Esquire
Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Room 4400 D
Washington, D.C.  20530

The Honorable Donna Shalala
Secretary
Department of Health and Human
Services
200 Independence Avenue, S.W.
Room 615 F
Washington, D.C.   20201



EXHIBIT #
Abbott 56
3-6-07

The Honorable June Gibbs Brown
Inspector General
Department of Health and Human Services
330 Independence Avenue S.W.
Room 5246
Washington, D.C. 20201

**Re: OHIO MEDICAID - AN EXAMPLE OF THE FALSE AND FRAUDULENT
STATEMENTS BY PHARMACEUTICAL MANUFACTURERS
UNDERMINING, CIRCUMVENTING AND NEGATING THE STATES'
EFFORTS TO REASONABLY ESTIMATE TRUTHFUL ACQUISITION
COSTS OF PHARMACEUTICALS, PURSUANT TO 42 USC 447.331**

Dear Attorney General Reno, Secretary Shalala and Inspector General Brown:

On October 1, 1997, Ohio changed its medicaid pharmacy reimbursement methodology from Average Wholesale Price ("AWP") -7.5% to Wholesale Acquisition Cost ("WAC") + 11%. The administrator of Ohio's Medicaid pharmacy program, Mr. Robert Reed, informed us that this action was taken in an effort to control Ohio's escalating Medicaid pharmacy costs. Ohio's Medicaid pharmacy program is currently the sixth largest Medicaid Pharmacy Program in the United States, exceeding more than a half a   billion dollars in annual expenditures. Additionally, Ohio like many of the other States' Medicaid pharmacy programs, is experiencing double digit annual growth in expenditures.

Ohio becomes the eighth State including the States of Alabama, Colorado, Florida, Maryland, Massachusetts, Rhode Island and Texas to utilize WAC to, in part, form the basis of the States' estimating  the actual acquisition cost of pharmaceuticals.

Honorable Janet Reno
Honorable Donna Shalala
Honorable June Gibbs Brown
January 5, 1998
Page 2

We believe many other States may be considering or in the process of changing their States' reimbursement methodology from AWP to WAC due in part to two compelling reports that were issued by Ms. Brown's office in April 1997 and August 1997.

The first  OIG report entitled "Medicaid Pharmacy - Actual Acquisition Cost of Prescription Drug Products for Brand Name Drugs" (April 1997 A-06-96-00030) states under conclusions and recommendations, "However, we also believe that the results of this report are significant enough to warrant a review of pharmacy reimbursement policy (emphasis added). Therefore, we recommend that HCFA work to ensure that States reimburse the ingredient portion of Medicaid drugs in a manner more consistent with the findings of this report." Contained in  HCFA's official response to this report under the heading additional comments HCFA states, "We consistently recognized that a disparity existed between pharmacy acquisition cost and the average wholesale price (AWP), and expected the draft report to confirm this. We historically provided guidance to the States that the AWP is not an accurate estimate of acquisition cost without a discount off AWP being applied."

The second OIG report is entitled, "Medicaid Pharmacy - Actual Acquisition Costs of Generic Prescription Drug Products" ( August 1997 A-06-97-00011). HCFA states in its official response to the report, "This report provides a monetary incentive for States' to reassess their drug reimbursement methodology as they look for ways to stretch their operating budgets". " We believe the findings in this report are significant and warrant the attention of all State Medicaid Agencies. We intend to share this report with all State Medicaid Agencies and hope this report will provide the necessary impetus for States to restructure their payment methodology for outpatient drugs" (emphasis added).

Based upon the official findings and recommendations contained in the above referenced  reports together with the official findings and recommendations of previously issued OIG reports concerning pharmaceutical reimbursements made by the Medicare and States' Medicaid Programs, it is apparent that neither HCFA or the OIG  has been able to recognize, understand or identify the true cause of the excessive reimbursements. The excessive reimbursements unwittingly made by the Medicare and States' Medicaid Pharmacy Programs are not a result of not discounting  AWP enough or alleviated by the changing of a State's reimbursement methodology as evidenced by the State of Ohio. The excessive reimbursements are caused by false and fraudulent representations of price and cost that are directly and indirectly disseminated by the Pharmaceutical Manufacturers. The resulting confusion is   not accidental, but a deliberate and intentional act by the Pharmaceutical Manufacturers in order to obfuscate the spread (profits) to their customers (physicians, physician groups, outpatient clinics and specialty pharmacies) created by the Pharmaceutical Manufacturers  to drive the utilization and over utilization of their products".

JAN-05-98 THU 10:51 AM   VET MEMBWORKERS      FAX NU. 202 015 2054      P.03
Jan-05-98 05:35P Ven-A-Care                   305 292 1739              P.04

Honorable Janet Reno
Honorable Donna Shalala
Honorable June Gibbs Brown
January 5, 1998
Page 3

The following chart illustrates how Ohio's efforts to limit reimbursement for infusion and injectable drugs to the reasonable amounts required by law has, once again, been thwarted by the false pricing representations made by the Pharmaceutical Manufacturers. The chart is also an excellent example of how the Pharmaceutical Manufacturer's false pricing scheme directly causes all of the States Medicaid and the Medicare Program to overpay for the infusion, injectable and inhalation drugs at issue.

**Ohio Medicaid Reimbursement Pre and Post Methodology Change and Ven-A-Care's true cost**

| Company | Drug | NDC # | AWP -7.5% | WAC+11% | VAC Cost |
|---------|------|-------|-----------|---------|----------|
| Bristol-Myers | Vepesid 100mg/5ml | 00015-3095-20 | $121.876 | $121.2405 | $23.00 |
| Cerenex | Zofran 32mg/50ml | 00173-0461-00 | $191.96 | $190.93 | $115.28 |
| Immunex | Leucovorin 350mg | 58406-0623-07 | $128.2818 | $122.4885 | $16.25 |

Clearly, Ohio is continuing to pay grossly excessive reimbursements for the drugs in question solely because its medicaid officials were mislead by the Pharmaceutical Manufacturer's false and fraudulent pricing representations. Indeed, as you are well aware, each States' Medicaid Program has the right to alter its medicaid pharmaceutical reimbursement to reflect its best estimate of acquisition cost. According to Mr. Reed, Ohio would have lowered its payments if provided with truthful pricing information..

Mr. Reed also informed us that he has previously exercised his authority to base pharmaceutical reimbursements on his best estimate of acquisition cost and has, in fact, made adjustments when he was provided with a truthful price representation. Accordingly, Ohio Medicaid was also misled by the Pharmaceutical Manufacturer's direct misrepresentations of price made directly in communications with Ohio. Mr. Reed assured us that upon receipt of Ven-A-Care's truthful pricing information he would adjust his reimbursement accordingly.

P. 05
HHD009-0047

Honorable Janet Reno
Honorable Donna Shalala
Honorable June Gibbs Brown
January 5, 1998
Page 4

Additionally, Ohio's reliance upon the Federal Government's "safety net" that is commonly referred to as the Federal Upper Limit provides no protection against the Manufacturer's fraud. For example, Ohio reimburses under the Federal Upper Limit, $0.19 per ml for Albuterol Sulfate, 0.083%, yet, Ven-A-Care's true wholesale cost is only $0.09 per ml. (Medicare's DMERC Region C's reimbursement is $0.41 per ml)

The Pharmaceutical Manufacturers are directly controlling all levels of pricing in the United States' marketplace. This fact is supported by a summary judgement opinion issued in the litigation referred to as "Brand Name Prescription Drugs Antitrust Litigation", 94 C 897, MDL 997 United States District Court of Illinois, Eastern Division. (The litigation has common defendants with our Federal False Claims action). As reported in the summary judgement opinion issued by the Honorable Charles P. Kocoras, District Judge, the report states, "finally, that the defendants had the opportunity to conspire is unquestionable. The record is replete with evidence of seminars and trade association meetings which virtually every defendant (*32) attended at one time or another and a coordinated exchange of pricing and other competitive information shared among the manufacturers. Furthermore, the defendants' mutual awareness of each others' policies is demonstrated by the defendants prolific use of data services, exchanges and in their unlimited use and development of the charge-back system discussed below." **The fact is that the Pharmaceutical Manufacturers are in control of all pricing levels of their pharmaceutical products,** (emphasis added) (*92).... "The manufacturers' dictated to the wholesalers precisely who was or was not to receive discounts, what drugs were to be discounted, and exactly how much was to be charged

Be advised that we continue to be appalled and shocked by recent and past public statements made by members of the Executive Branch that the grossly excessive payments made by the Medicare and States' Medicaid Programs for the pharmaceuticals at issue are somehow legal waste and are the result of some kind of "loophole". We find the continuance of these types of statements by the highest members of the Executive Branch particularly disturbing in light of the fact that the Department of Justice has for more than two years continued to make request for extensions of time causing the specific facts to remain under seal and billions of the tax payers monies squandered.

JAN-05-98 THU 10:31 AM   VET HEADQUARTERS          FAX NO. 202 013 2004   P. 01
Jan-05-98 05:36P Ven-A-Care                        305 292 1739          P. 00

Honorable Janet Reno
Honorable Donna Shalala
Honorable June Gibbs Brown
January 5, 1998
Page 5

In less then ten days the court ordered seal will expire upon the latest unopposed extension that was requested by the Department of Justice and granted by the court. The Department of Justice and The Department of Health and Human Services must now decide if they want to commit to the adequate resources needed to pursue this case. Without the commitment by the Department of Justice and the Department of Health and Human Services to provide the necessary resources and the resolve to prosecute the parties responsible, we cannot in all good conscience consent to this obscene fraud continuing to be withheld from the American Public. The fact is that as long as the Pharmaceutical Manufacturers are permitted to continue to make false and fraudulent representations of cost and prices, there is no reimbursement methodology that is going to protect the Medicare and States' Medicaid from making excessive reimbursements for pharmaceuticals.

Sincerely,

Zachary T. Bentley

T. Mark Jones

cc:  T. Reed Stephens, Esq. Department of Justice
     Michael Hertz, Esq. Department of Justice
     Mark A. Lavine Esq. United States Attorney's Office, Miami, Fl.
     Nancy-Ann Min DeParle, Administrator HCFA
     Sheree Kanner, Esq. Associate General Counsel, HCFA
     Robert A. Vito, Regional Inspector General, HHS
     D. McCarthy Thornton ,Esq. Chief Counsel, Inspector General, HHS
     George F. Grob, Deputy Inspector General, OIG HHS

935 Fleming Street               VEN-A-CARE of the Florida Keys, Inc.        Key West, Florida 33040
                                         (305) 292-1635