# EXHIBIT Q

# HOGAN & HARTSON
## L.L.P.

111 SOUTH CALVERT STREET, SUITE 1600
BALTIMORE, MARYLAND 21202
TEL (410) 659-2700
FAX (410) 659-2601

DAVID F. KING
PARTNER
(410) 659-2700
DFKING@HHLAW.COM

August 4, 2000

*VIA TELECOPIER AND FIRST CLASS MAIL*

T. Reed Stephens, Esq.
United States Department of Justice
Civil Fraud Section
601 D Street, NW
9th Floor
Washington, DC 20004

Dear Mr. Stephens:

We received the Relator's Memorandum in Support of Government Intervention and in Response to Defendants' Arguments Against Government Intervention ("Relator's Memorandum"), which responds to our Analysis of why the United States Should Decline Intervention in United States ex rel. [Relator] v. [Defendants] (S.D. Fla.)(Under Seal) ("White Paper"). Because the Relator's Memorandum seriously misapprehends the important legal, factual and public policy issues involved here, we intend to respond to the Relator's Memorandum as soon as possible.

We understood from our previous discussions with you that you had committed that the Department of Justice would respond to the White Paper prior to any intervention decision being made. The Relator's Memorandum is not a substitute for the Department's response; we continue to expect to receive such a response before an intervention decision is made.

In addition, we previously requested a meeting with you, Mr. Hertz and Mr. Ogden to discuss the merits of this case before the Department makes an intervention decision. We repeat that request and ask for your commitment that such a meeting will occur.

WASHINGTON, DC

BRUSSELS BUDAPEST LONDON MOSCOW PARIS* PRAGUE WARSAW
COLORADO SPRINGS, CO DENVER, CO LOS ANGELES, CA McLEAN, VA NEW YORK, NY ROCKVILLE, MD
WASHINGTON OFFICE: 555 THIRTEENTH STREET NW, WASHINGTON DC 20004-1109 TEL (202) 637-5600 FAX (202) 637-5910
*Affiliated Office

08/09/00   14:20 FAX 215 751 7845        SMITHKLINE                    004
Case 1:01-cv-12257-PBS   Document 6097-10   Filed 06/04/09   Page 3 of 24
                                                         T-083  P.03/04  Job-026
AUG-09-00  11:21  From:
                                            TO 99#8388#58559010 P.03/03

AUG 04 '00 16:22 FR

HOGAN & HARTSON L.L.P.

T. Reed Stephens, Esq.
August 4, 2000
Page 2

   We note that the Relator's Memorandum extensively quoted from (and attached) confidential documents. The Relator circulated the Relator's Memorandum and these documents to signatories to the White Paper and to non-signatories. These documents (which bear our Bates numbers) were produced to the Department of Justice pursuant to Civil Investigative Demands ("CID") and to the Department of Justice and the Department of Health and Human Services pursuant to administrative subpoenas. They have been provided to the Relators in violation of laws pertaining to the disclosure of documents produced pursuant to CIDs and of the representation that the Department of Justice would treat them as confidential. The release of these documents to the Relators and the circulation of them by the Relator is, to say the least, extremely disturbing. Please advise us immediately what steps you intend to take to prevent the further circulation and distribution of these and other confidential materials.

   Finally, the Relator's Memorandum states unequivocally that this matter is headed for litigation. We continue to believe that government intervention in this case would be inappropriate. Nevertheless, we ask that you take appropriate and immediate steps to insure that your client agencies (including at a minimum HHS, HCFA, MFCU units, State Medicaid officials, single state payor agencies, and the Department of Veterans' Affairs) maintain all documents that may be relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.

   We look forward to discussing these matters with you further.

                                         Very truly yours,

                                         David P. King

                                         David P. King

cc:   David Ogden, Esq. (Via Telecopier)
      Michael Hertz, Esq. (Via Telecopier)

# EXHIBIT R

AO 88 (Rev. 11/91) Subpoena in a Civil Suit

# United States District Court

_____ DISTRICT OF _____ MASSACHUSETTS

IN RE: PHARMACEUTICAL INDUSTRY AVERAGE
WHOLESALE PRICE LITIGATION

**SUBPOENA IN A CIVIL CASE**

**MDL No.: 1456**

**CASE NUMBER: Civil Action No. 01-CV-
12257 PBS
(Pending in the United States District
Court for the District of Massachusetts)**

TO:  **Office of General Counsel
United States Department of Health and Human Services
Room 711-E
200 Independence Avenue, SW
Washington, DC  20201**

☐YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attached Schedule A

| PLACE<br>HOLLAND & KNIGHT, LLP,  10 ST. JAMES AVE., BOSTON, MASSACHUSETTS 02116<br>(617) 854-1419 | DATE AND TIME<br>JANUARY 15, 2004 |
|---|---|

☐YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  _Geof Hobart/kh_<br>On behalf of all Defendants | DATE<br>Decem... |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

GEOFFREY E. HOBART, HOLLAND & KNIGHT, LLP, 10 ST. JAMES AVE., BOSTON, MASSACHUS...
(617) 854-1419

**EXHIBIT**

_Abbott 75_
_3-20-07_

(SEE RULE 45, FEDERAL RULES OF CIVIL PROCEDURE, PARTS, C & D ON REVERSE)

AO 88 (Rev. 11/91) Subpoena in a Civil Suit

---

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____      _____
          DATE                  SIGNATURE OF SERVER

                                 _____
                                 ADDRESS OF SERVER

                                 _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party of an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(b) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any persons who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a

AO 88 (Rev. 11/91) Subpoena in a Civil Suit

place more than 100 miles from the place where that person resides, is employed or regularly transacts business in except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.



# SCHEDULE A

## Definitions

1.      "HHS" means the United States Department of Health and Human Services.

2.      "GAO" means General Accounting Office.

3.      "HHS-OIG" means the Office of Inspector General for HHS.

4.      The term "Medicare" shall mean and refer to the Federal program enacted in 1965 under Title XVIII of the Social Security Act to pay for the costs of certain medical services and care.

5.      The term "Medicaid" shall mean and refer to the jointly-funded Federal-State health insurance program enacted in 1965 as an amendment to the Social Security Act to pay for the costs of certain medical services and care.

6.      The term "Health Care Financing Administration" ("HCFA") and "Centers for Medicare and Medicaid Services" ("CMS") shall mean and refer to the division of the United States Department of Health and Human Services directly responsible for the administration of the Medicare program.

7.      The term "Medicare Carrier" shall mean and refer to any and all insurance companies or other entities that have ever contracted with HCFA or CMS, at any time from January 1, 1985 to the present, to process claims submitted under Part B of the Medicare program by any health care provider.



8.      The term "Medicare-reimbursed-drugs" shall mean and refer to any and all drugs that have been Medicare-reimbursed since January 1, 1985, at any point in time, including those drugs that no longer exist or are no longer Medicare-reimbursed.

9.      The term "health care provider" shall mean and refer to any and all persons or entities that render health care services, including but not limited to physicians, nurses, nurse practitioners, physicians' assistants, nursing home personnel, laboratory technicians, x-ray and other medical equipment technicians, and other hospital or physician-office personnel.

10.      The term "communication" shall mean any oral or written exchange of words, thoughts or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by telex or by any other process, electric, electronic or otherwise.  All such communications in writing shall include, without limitation, printed, typed, handwritten or other readable documents, whether in hardcopy, electronic mail or stored electronically on a computer disk or otherwise, contracts, correspondence, diaries, drafts (initial and all subsequent), forecasts, invoices, logbooks, memoranda, minutes, notes, reports, statements, studies, surveys and any and all non-identical copies thereof.

11.      The term "documents" shall mean all original written, recorded, or graphic matters whatsoever, and any and all non-identical copies thereof, including but not limited to advertisements, affidavits, agreements, analyses, applications, appointment books, bills, binders, books, books of account, brochures, calendars, charts, checks or other records of payment, communications, computer printouts, computer stored data, conferences or other meetings, contracts, correspondence, diaries, electronic mail, evaluations, facsimiles, files, filings, folders, forms, interviews, invoices, jottings, letters, lists, manuals, memoranda, microfilm or other data compilations from which information can be derived, minutes, notations, notebooks, notes, opinions, pamphlets, papers, photocopies, photographs or other visual images, policies, recordings of telephone or other conversations, records, reports, resumes, schedules, scraps of

2



paper, statements, studies, summaries, tangible things, tapes, telegrams, telephone logs, telex messages, transcripts, website postings, and work papers, which are in the possession of the Carrier as defined above. A draft or non-identical copy is a separate document within the meaning of this term.

12.     The term "between," when used in regard to the transmittal of information, shall mean any communication by, to, from, among, and for any individual(s) or entity(ies) specified in a particular request.

13.     The words "relate to" or "relating to" shall mean refer to, regard, concern, describe, explain, state, evidence, record, constitute, pertain to, reflect, comprise, contain, embody, mention, show, support, contradict, and discuss, whether directly or indirectly, as required by the context to bring within the scope of the requests in this Schedule any documents that might be deemed outside their scope by another construction.

14.     The terms "and" and "or" shall mean "and/or."

15.     Any word written in the singular shall include the plural and vice versa.

16.     In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

17.     The terms "you" and "your" shall mean and refer to the Carrier, its employees, agents, attorneys and affiliates.

3



## Instructions

1.      In responding to each document request, you should conduct a diligent search for, and produce all documents in your possession, custody or control that were created on or after January 1, 1991.

2.      If any document was, but is no longer, in your possession, custody, or control, or was known to you, but is no longer in existence, state, as to each document, its date, author(s), recipient(s) and what disposition was made of it or what became of it.

3.      When an objection is made to any request or any subpart thereof, state with specificity the part or subpart of the document request considered to be objectionable and all grounds for the objection.

4.      If you find the meaning of any term in this Schedule to be unclear, then you should assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

5.      Each request for documents seeks production of the document in its entirety, without abbreviation or redaction, including all attachments or other matters affixed thereto.

6.      With respect to each document that is withheld from production for any reason, or any portion of any document that has been redacted for any reason in connection with the production of a document, provide a statement setting forth:

> (a)   its date;
>
> (b)   its title;
>
> (c)   its author;
>
> (d)   its addressee;

4



(e)   the specific privilege under which it is withheld;

(f)   its general subject matter; and

(g)   a description of it that you contend is adequate to support your
       contention that it is privileged.

7.    All documents are to be produced as they are kept in the usual course of business,
their relative order in such files, and how such files were maintained. All electronic files should
be produced where possible in electronic form along with any software needed to access to the
information contained in the file and appropriate legends, keys or other information needed to
access and understand the data.

## Documents Requested

1.    All documents relating to the promulgation of a regulation concerning Medicare
reimbursement for prescription drugs, effective January 1, 1992, including all comments on the
proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence,
analyses and other documents concerning the regulation. (The Notice of Proposed Rulemaking
was published at 56 F.R. 25,860 (June 5, 1991)). This request seeks only documents relating to
reimbursement by Medicare of prescription drugs, and not documents related to other matters
covered by the regulation in question.

2.    All documents relating to the promulgation of a regulation concerning Medicare
reimbursement for prescription drugs, effective January 1, 1999, including all comments on the
proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence,
analyses and other documents concerning the regulation. (The Notice of Proposed Rulemaking
was published at 63 F.R. 30,818 (June 5, 1998)). This request seeks only documents relating to



reimbursement by Medicare of prescription drugs, and not documents related to other matters covered by the regulation in question.

      3.     From 1985 to the present, all documents relating to the promulgation of a regulation concerning Medicaid reimbursement for prescription drugs published at 34 Fed. Reg. 1,244 (January 25, 1969), codified at 45 C.F.R. §250.30(b)(2)(1970), including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation. This request seeks only documents related to reimbursement by Medicaid of prescription drugs, and not documents related to other matters covered by the regulation in question.

      4.     From 1974 to the present, all documents relating to the promulgation of a regulation concerning Medicaid reimbursement for prescription drugs, effective July 1976, including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation. (The Notice of Proposed Rulemaking was published at 39 F.R. 41,480 (Nov. 27, 1974)). This request seeks only documents related to reimbursement by Medicaid of prescription drugs, and not documents related to other matters covered by the regulation in question.

      5.     From 1985 to the present, all documents relating to the promulgation of a regulation concerning Medicaid reimbursement for prescription drugs, effective in 1987, including all comments on the proposed and final regulation, all drafts of the regulation, and all memoranda, correspondence, analyses and other documents concerning the regulation. (The Notice of Proposed Rulemaking was published at 52 F.R. 28,648 (July, 1987)). This request seeks only documents related to reimbursement by Medicaid of prescription drugs, and not documents related to other matters covered by the regulation in question.

      6.     From 1985 to the present, all documents relating to the decision that Medicare covers prescription drugs provided incident to durable medical equipment, including all



documents related to Section 2100.5 of the Medicare Carrier's Manual, and all revisions or modifications thereto.

       7.     All documents relating to HCFA/CMS's actual or proposed use of its "inherent reasonableness" authority in connection with Medicare reimbursement of prescription drugs.

       8.     From 1985 to the present, all documents relating to OIG audits and reports regarding reimbursement or payment for prescription drugs by Medicare, Medicaid, the Department of Veterans Affairs or any other federal agency or federal health benefits program, including drafts, work papers, surveys, survey responses, interview summaries, correspondence, notes, and all responses and drafts of responses to OIG audits and reports.

       9.     From 1985 to the present, all documents relating to reviews of drug purchase prices by pharmacies in Arkansas, Louisiana, New Mexico, Oklahoma and Texas, performed by HCFA Region VI and referenced in *Louisiana v. Department of Health and Human Services*, 905 F.2d 877, 882 (5th Cir. 1990).

      10.    From 1985 to the present, all documents relating to efforts by HCFA or CMS, Medicare Carriers or other Medicare contractors to determine acquisition costs of drugs, including efforts to determine "estimated acquisition cost" pursuant to 42 C.F.R. § 405.517 (1992).

      11.    All documents relating to a report prepared for CMS by PricewaterhouseCoopers entitled "A Study of Pharmaceutical Benefit Management" (June 2001), and referenced at 67 F.R. 10,285 (March 6, 2002), including the report, drafts of the report, correspondence relating to the report, and all documents relating to the engagement of PricewaterhouseCoopers to prepare the report.

      12.    From 1968 to the present, all documents relating to a report prepared by the Task Force on Prescription Drugs, the Office of the Secretary, United States Department of Health,

7



Education and Welfare, entitled "The Drug Makers and the Drug Distributor" and dated
December 1968.

13.     From 1985 to the present, all OIG correspondence with Congress, including
Semi-Annual Reports, regarding the method(s) by which Medicare and/or Medicaid reimburse
for prescription drugs.

14.     From 1985 to the present, all OIG Red Books and Orange Books relating to
Medicare's or Medicaid's method of reimbursement for prescription drugs.

15.     All documents relating to committees or task forces within HHS that review,
consider, establish, or alter policies for Medicare reimbursement for prescription drugs, including
agendas and minutes of meetings, correspondence, memoranda, lists of members, and notes.

16.     All documents relating to efforts by CMS, HCFA or Carriers to base Medicare
reimbursement for prescription drugs on the "least costly alternative" or any standard other than
AWP.

17.     All documents relating to efforts by the Department of Justice to consider,
calculate, or apply average wholesale prices that differ from the AWPs for the prescription drugs
published in pharmaceutical industry pricing compendia, such as the Red Book and First Data
Bank.

18.     All documents relating to efforts by CMS, HCFA or Carriers to consider,
calculate or apply average wholesale prices that differ from the published AWPs for the
prescription drugs.

19.     From 1985 to the present, all documents considering hypothetical, proposed or
actual federal legislation concerning Medicare or Medicaid reimbursement for prescription
drugs.



20.     To the extent not covered above, from 1985 to the present, all HHS reviews, studies, analyses, audits and reports relating to the fact that AWP commonly exceeds the actual sales price or acquisition cost of a drug.

21.     To the extent not covered above, from 1985 to the present, all HHS reviews, studies analyses, audits and reports relating to the fact that AWP commonly exceeds the actual average wholesale price of a drug.

22.     From 1985 to the present, all written communications with any State Medicaid agency regarding Medicaid reimbursement for prescription drugs.

23.     From 1985 to the present, all documents relating to non-written communications, such as meetings or phone conversations, with any State Medicaid agency regarding Medicaid reimbursement for prescription drugs.

24.     From 1985 to the present, all documents relating to CMS, HCFA, or SRS policies, regulations, rules or standards related to Medicaid reimbursement for prescription drugs.

25.     From 1985 to the present, all written communications with any State Medicaid agency regarding the possibility that CMS or HCFA might disapprove a State Medicaid plan due to the manner in which a proposed or existing State Medicaid program reimburses for prescription drugs.

26.     From 1985 to the present, all documents relating to non-written communications, such as meetings or phone conversations, with any State Medicaid agency regarding the possibility that CMS or HCFA might disapprove a State Medicaid plan due to the manner in which a proposed or existing State Medicaid program reimburses for prescription drugs.

9



27.     All written communications with any Medicare Carrier, Carrier Advisory Committees, or other Medicare contractor, regarding the method(s) by which Medicare reimburses for prescription drugs.

28.     All documents relating to non-written communications, such as meetings or phone conversations, with any Medicare Carrier, Carrier Advisory Committees or other Medicare contractor regarding Medicare's method of reimbursement for prescription drugs.

29.     All written communications with the Office of Management and Budget regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including the performance of surveys or other actions to determine the estimated acquisition cost of prescription drugs under 42 C.F.R. § 405.517 (1992).

30.     All documents relating to non-written communications with the Office of Management and Budget regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including the performance of surveys or other actions to determine the estimated acquisition cost for prescription drugs under 42 C.F.R. § 405.517 (1992)

31.     All written communications with Members of Congress, their staff, or any Congressional committees regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

32.     All documents relating to non-written communications, such as meetings or phone conversations, with Members of Congress, their staff, or any Congressional committees regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

33.     All written communications with the Office of Technology Assessment regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

10



34.    All documents relating to non-written communications, such as meetings or phone conversations, with the Office of Technology Assessment regarding method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

35.    All written communications with the General Accounting Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

36.    All documents relating to non-written communications, such as meetings or phone conversations, with the General Accounting Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

37.    All written communications with the Congressional Budget Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

38.    All documents relating to non-written communications, such as meetings or phone conversations, with the Congressional Budget Office regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

39.    All written communications with the Department of Justice regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

40.    All documents relating to non-written communications, such as meetings or phone conversations, with the Department of Justice regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

41.    All written communications with the Department of Justice regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

42.    All written communications with the Office of the President of the United States regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs,



11

including all documents related to the Medicare prescription drug provisions of any President's annual proposed budgets and President Clinton's December 13, 1997 radio address to the nation.

43.     All documents relating to non-written communications, such as meetings or phone conversations, with the Office of the President of the United States regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, including all documents related to the Medicare prescription drug provisions of any President's annual proposed budgets and President Clinton's December 13, 1997 radio address to the nation.

44.     To the extent not covered by the above requests, all written communications between HHS or any HHS constituent agency and any state or federal governmental entity outside HHS regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

45.     To the extent not covered by the above requests, all documents relating to non-written communications, such as meetings and phone conversations, between HHS or any HHS constituent agency and any state or federal governmental entity outside HHS regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

46.     All written communications with pharmaceutical manufacturers or associations representing or consisting of pharmaceutical manufacturers regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

47.     All documents relating to non-written communications, such as meetings or phone conversations, with pharmaceutical manufacturers or associations representing or consisting of pharmaceutical manufacturers regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

48.     All written communications with publishers of pharmaceutical pricing compendia regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

12



49.   All document relating to non-written communications, such as meetings and phone conversations, with publishers of pharmaceutical pricing compendia regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

50.   All written communications with pharmacists, pharmacies, or associations representing or consisting of pharmacies or pharmacists, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

51.   All documents relating to non-written communications such as meetings and phone conversations, with pharmacists, pharmacies, or associations representing or consisting of pharmacies or pharmacists, regarding Medicare's or Medicaid's method of reimburse for prescription drugs.

52.   All written communications with health care providers, or associations representing or consisting of health care providers, including the American Society of Clinical Oncology and the American Urology Association, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

53.   All documents relating to non-written communications, such as meetings or phone conversations, with health care providers, or associations representing or consisting of health care providers, including the American Society of Clinical Oncology, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

54.   All written communications with health care providers regarding agreements between insurers and providers pursuant to which health care providers waive coinsurance or copayment amounts required under Medicare, including agreements between insurers and physicians that require physicians to waive Medicare copayment obligations as a condition of participation in insurance company networks.

13



55.     All documents relating to non-written communications, such as meetings or phone conversations, with health care providers regarding agreements between insurers and providers pursuant to which health care providers waive coinsurance or copayment amounts required under Medicare, including agreements between insurers and physicians that require physicians to waive Medicare copayment obligations as a condition of participation in insurance company networks.

56.     All written communications with cancer survivors or cancer patients, or associations representing or consisting of such individuals, the National Coalition for Cancer Survivorship, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

57.     All documents relating to non-written communications, such as meetings or phone conversations, with cancer survivors or cancer patients, or associations representing or consisting of such individuals, including the national Coalition for Cancer Survivorship, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

58.     All written communications with private insurers, Carriers, ERISA plan administrators, health maintenance organizations, Blue Cross organizations or other non-governmental third-party payors regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

59.     All documents relating to non-written communications, such as meetings or phone conversations, with private insurers, Carriers, ERISA plan administrators, health maintenance organizations, Blue Cross organizations or other non-governmental third-party payors regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

14



60.    To the extent not covered above, all written communications with non-governmental entities including the press, healthcare providers associations and members of the general public, regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs.

61.    From 1985 to the present, copies of all Freedom of Information Act requests submitted to HHS or any HHS constituent agency seeking documents regarding the method(s) by which Medicare and/or Medicaid reimburse for prescription drugs, all response thereto, and all documents produced in response to such requests.

62.    From 1985 to the present, all documents relating to Amendment 897-33 to the Louisiana State Medicaid plan.  (To facilitate the search for responsive documents, not that HCFA published a Notice of hearing on this matter at 53 Fed. Reg. 29,381 (Aug. 4, 1988).)

63.    From 1985 to the present, all documents relating to In re Disapproval of Louisiana State Plan Amendment No. 87-33, No. 88-11 (HCFA Administrator June 9, 1989), including briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions.

64.    From 1985 to the present, all documents relating to State of Louisiana v. United States Department of Health and Human Services, No. 89-4566, opinion reported at 905 F.2d 877 (5t[h] Cir. 1990), including briefs, exhibits, appendixes, the Administrative Record, all other filings correspondence, and transcripts of oral argument.

65.    From 1985 to the present, all documents relating to Amendment 88-05 to the Arkansas State Medicaid plan, including all documents relating to administrative proceedings regarding HCFA's decision to disapprove Amendment 99-05 to the Arkansas State Medicaid plan, such as briefs and other filings, exhibits, correspondence, hearing and other transcripts,

15



rulings and opinions. (To facilitate the search for responsive documents, note that HCFA published a Notice of hearing on this matter at 53 Fed. Reg. 45,587 (Nov. 10, 1988).)

66.     From 1985 to the present, all documents relating to administrative proceedings regarding HCFA's refusal to pay the federal portion for certain Arkansas Medicaid reimbursement for prescription drugs in 1989, including briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions. (to facilitate the search for responsive documents, note that the HHS Department Appeals Board issued decisions regarding this matter on Aug. 22, 1991 (Decision No. 1273) and Apr. 29, 1992 (Decision No. 1329).)

67.     From 1985 to the present all documents relating to an amendment to the Oklahoma State Medicaid plan submitted in October 1987, and revised in March 1988, concerning Oklahoma Medicaid reimburse for prescription drugs.

68.     From 1985 to the present, all documents relating to administrative proceedings regarding HCFA's decision to disapprove Amendment 87-18 to the Oklahoma State Medicaid plan including but not limited briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions. (To facilitate the search for responsive documents, note that HCFA published a Notice of hearing on this matter at 53 Fed. Reg. 38,979 (Oct. 4, 1988).)

69.     From 1985 to the present, all documents relating to an amendment to the Oklahoma State Medicaid plan submitted in April 1989 concerning Oklahoma Medicaid reimburse for prescription drugs, including all documents relating to administrative proceedings regarding HCFA's refusal to pay the federal portion for certain Oklahoma Medicaid reimburse for prescription drugs in 1989, such as briefs and other filings, exhibits, correspondence, hearing and other transcripts, rulings and opinions. (To facilitate the search for responsive documents, note that the HHS Department Appeals Board issues a decision regarding this matter on Aug. 13, 1991 (Decision No. 1271).)

16



70.     To the extent not requested above, from 1985 to the present, all documents relating to any administrative or judicial proceedings involving actual or threatened actions by CMS/HCFA/SRS to disapprove a State Medicaid plan or plan amendment, or to disallow federal financial participation, due to alleged excessive Medicaid reimburse for prescription drugs.

71.     To the extent not requested above, from 1985 to the present, all documents relating to any administrative or judicial proceedings concerning the appropriateness of AWP as a measure for reimbursement for prescription drugs.

72.     Copies of the federal supply schedule for drugs for each year.

73.     All documents relating to setting the Medicare fee schedule payments for professional services for the administration of chemotherapy or other drugs used in connection with treatment of cancer.

74.     All documents relating to whether Medicare adequately reimburses oncologists or other doctors for professional services for the administration of chemotherapy or other drugs used in connection with treatment of cancer.

75.     All documents relating to the computation of the practice expense component used or considered for use to derive the Medicare physician fee schedule for the administration of chemotherapy or other drugs used in connection with anticancer chemotherapy treatment.

76.     All documents relating to whether Medicare adequately reimburses providers for the provision of home drug infusion therapy services, including all documents evidencing that Medicare reimbursement for drugs is the means by which providers of professional services associated with home drug infusion therapy are reimbursed for such services.

77.     All documents relating to whether Medicare adequately reimburses providers for the provision of home nebulizer treatments, including all documents noting that Medicare

17



reimbursement for drugs constitutes the means of reimbursing providers for professional services associated with home nebulizer treatments.

78.    All organizational charts for HHS, HHS Central and Regional Offices, HCFA/CMS, OIG and the Public Health Service.

79.    All document retention or destruction policies for HHS, HHS Central and Regional Office, HCFA/CMS, OIG and the Public Health Service.

80.    Documents sufficient to describe the manner by which electronic documents, including emails, are preserved or deleted, for HHS, HHS Central and Regional Offices, HCFA/CMS and OIG.

81.    Documents sufficient to identify the name and address of all Medicare Carriers and fiscal intermediaries.

82.    Copies of contracts with Medicare Carriers and Fiscal intermediaries.

83.    All Documents relating to Policies, procedures or practices of HHS, HHS Central and Regional Offices, HCFA/CMS or OIG, regarding the preservation or destruction of documents relating to Medicare's or Medicaid's method of reimbursement for prescription drugs.

84.    Documents sufficient to identify all efforts made by HHS, HHS Central and Regional Offices, HCFA/CMS or OIG to preserve documents relating to Medicare's or Medicaid's method of reimbursement for drugs.

85.    Documents sufficient to describe the manner in which HHS electronic documents, including emails, are preserved or deleted, discarded or destroyed.

