# EXHIBIT FFF (PART 1)

# Medicaid Pharmacy Bulletin



EXHIBIT
Abbott 292
Volume 1, No. 1           JANUARY-FEBRUARY 1987

## Medicaid Reimbursement for the Pharmacy Component of Home I.V. Therapy

**Medicaid Coverage of Home Intravenous (I.V.) Therapies May Be an Effective Way to Reduce Overall Program Costs.**

The growing use of home I.V. therapies has become an important issue within the Medicaid pharmacy community. These treatments, characterized by extensive use of pharmaceutical products, introduce a variety of financial, administrative and clinical issues to Medicaid pharmacy that have yet to be resolved.

A recent study of Medicaid reimbursement for home parenteral therapies in Colorado documented that home I.V. therapies can result in significant financial savings in comparison to those administered in the traditional inpatient setting. This study, conducted by the School of Pharmacy at the University of Colorado Health Sciences Center, is described in a report entitled "The Budgetary Impact of Home Parenteral Therapy in a State Medicaid Program--A Cost Analysis and Recommendations." The cost comparisons derived from the study indicate considerable savings for patients receiving parenteral antibiotic, nutrition, pain management and hydration therapy at home instead of in the hospital. With 62 patients utilizing 1,361 days of home health care services, there was a reported savings of over $310,000, or approximately $5,000 per patient, in hospital costs.[1]

**Increased Medicaid Pharmacy Budgets Are Needed to Further Develop Home I.V. Therapy Reimbursement Programs.**

The findings of this study make a strong case for Medicaid reimbursement for home I.V. therapy. In most states, Medicaid programs do provide a degree of coverage for these treatments. However, in general, current Medicaid phar-

See *Medicaid*, page 2

---

### Introductory Issue

Lederle Laboratories is pleased to present the first issue of **Medicaid Pharmacy Bulletin**. This publication is designed to assist the Medicaid pharmacy community in keeping abreast of the latest program management practices and developments in health care policy that affect Medicaid pharmacy.

We encourage you to submit information about your state's pharmacy program that you feel may be of interest to your colleagues in other Medicaid programs throughout the country. All submissions, comments, questions and correspondence may be addressed to: Pamela Schaeffer, RESCON, Inc.,
    8294 D Old Courthouse Road,
    Tysons Corner, Va. 22180
    (703) 821-8110.

---

[1] "The Budgetary Impact of Home Parenteral Therapy in a State Medicaid Program--A Cost Analysis and Recommendations," Vaughn L. Culbertson, Pharm.D., et al., School of Pharmacy, University of Colorado Health Sciences Center.

Provided as a service to Medicaid by Lederle Laboratories, Wayne, N.J.

*Lederle*

**2**

From *Medicaid*, page 1

macy budgets are not adequate to cover the myriad of products utilized in home I.V. therapy. Unless funding is sufficiently expanded to support increased utilization of home I.V. therapy, the cost-saving and clinical benefits of such treatments cannot be fully realized.

<u>It May Be Necessary to Redistribute Overall Medicaid Budgets to Ensure Coverage of Home I.V. Products.</u>

In the University of Colorado study, the authors state that it may be necessary to transfer portions of hospitalization budgets to pharmacy budgets in order to obtain the overall Medicaid program savings achievable by providing home I.V. therapy coverage. Table 1 illustrates the potential savings associated with providing TPN, parenteral pain management and parenteral hydration therapy at home as opposed to in the hospital. Since it is hospital costs that are significantly reduced by the provision of home I.V. therapy, it seems appropriate to use these savings to subsidize the additional pharmacy expenses incurred.

<u>Many Medicaid Pharmacy Programs Lack Specific Policies and Guidelines With Which to Manage Home I.V. Reimbursement.</u>

Medicaid home I.V. therapy programs are constrained not only by limited pharmacy budgets but also by a critical absence of administrative policies and procedures. For a variety of reasons, policies and procedures used to manage reimbursement for other outpatient drugs cannot be applied to the management of reimbursement for home I.V. treatment components. Among the major home I.V. management policy issues that need further consideration by the Medicaid pharmacy community are:

1. The development of pricing mechanisms for home I.V. medications.

2. The development of reimbursement strategies for home I.V. supplies.

3. The automation of systems to process home I.V. therapy claims.

4. The establishment of specific requirements to be met by providers of home I.V. products.

5. The expansion of pharmacy budgets to cover home I.V. therapy products.

**1. THE DEVELOPMENT OF PRICING MECHANISMS FOR HOME I.V. MEDICATIONS.**

<u>The Establishment of a Fair and Reasonable Pricing Methodology for Home I.V. Products is a Major Concern of Most State Medicaid Programs.</u>

One of the major obstacles to the development of adequate home I.V. pricing methodologies is

**Medicaid Pharmacy Bulletin Advisory Panel**

Steven P. Bradford, Pharm.D.
Nevada (702) 855-4869
Joseph L. Fine, R.Ph., M.P.A.
Maryland (301) 225-5351
Ronald E. Graham, Pharm.D.
Tennessee (615) 741-0213
Myrle A. Myers, R.Ph., M.S.
Colorado (303) 294-2535

*Medicaid Pharmacy Bulletin* is prepared for Lederle Laboratories by RESCON, Inc., Tysons Corner, Va.

The editorial content of this publication is based on information obtained from sources believed to be reliable. However, no guarantee can be made about the accuracy or completeness of the information contained herein. The ideas and opinions expressed in this publication do not necessarily reflect those of the sponsor or any state Medicaid agency.

the fact that the dispensing of home I.V. medications is more complex than the dispensing of other outpatient drugs. Usually Medicaid pharmacy programs reimburse for outpatient drugs an amount which is determined by the individual program to be the provider's estimated acquisition cost (EAC) plus a dispensing fee. In most states, EAC is derived by a formula using the Average Wholesale Price (AWP) as the base figure.

Providers and Pharmacist Consultants Concur That it is Not Appropriate to Apply the Same Ingredient-Based Pricing Mechanisms to Home I.V. Medications as Those Applied to Other Outpatient Drugs.

For lack of a better alternative, some state Medicaid programs use the same ingredient-based formula they apply to other legend drugs when calculating reimbursement for home I.V. medications. Most pharmacist consultants are not convinced that this process reflects actual provider costs for home I.V. reimbursement.

Home I.V. treatments are frequently a combination of multiple drug entities, dispensed in varying doses and administered several times daily. Although individual doses may be minimal to moderate in quantity, over an entire treatment period large volumes of medications are generally administered. It is, therefore, difficult to estimate, based on single, daily or even weekly administrations, the purchase prices providers are paying with volume and trade discounts. These discounts are generally not revealed in drug pricing publications such as the *Red Book*, the *Blue Book* and *Medispan*. Consequently, programs are reluctant to increase reimbursement for home I.V. medications, suspecting that reported costs for these substances may already be exaggerated.

Failure to Include Adequate Economic Incentives for Dispensing Home I.V. Medications May Discourage Provider Participation in These Programs.

In spite of the reservations about overcompensating providers for home I.V. medications, most pharmacist consultants believe that providers should be compensated at a level that accounts for the costs of preparing, storing and delivering these products. However, determinations about what these costs are and how they can be integrated into reimbursement formulas have not yet been established.

The system of adding a set dispensing fee to ingredient-based reimbursement, used to arrive at compensation for other legend drugs, clearly falls short of responding to the costs of preparing home I.V. medications. On the other hand,

See *Medicaid*, page 4

3

Table 1. Comparison of Hospital and Home I.V. Therapy Costs.
Home Health Care Services - Colorado Medicaid

|  | No. of Recipients | Total Cost of Home Treatment Billed To Medicaid | Total Cost of Comparable Treatment in Hospital | Total Net Savings |
|---|---|---|---|---|
| 1. TPN | 3 | $33,520.22 | $59,850.00 | $26,329.78 |
| 2. Pain Management: | 5 | $16,640.74 | $96,705.00 | $80,064.26 |
| 3. Hydration | 12 | $1,950.45 | $35,280.00 | $33,329.55 |

Source: "The Budgetary Impact of Home Parenteral Therapy in a State Medicaid Program—A Cost Analysis and Recommendations." The University of Colorado Health Sciences Center, Vaughn Culbertson, Pharm.D., et al., Table 5.

# 4

From *Medicaid*, page 3

in the absence of reliable information about drug prices, many pharmacy program administrators have shied away from instituting policies specifically for home I.V. drug reimbursement. As a result, many programs resort to case by case determinations of reimbursement for these treatments.

In some states, the procedures for home I.V. therapy reimbursement are so unclear that programs choose to authorize only a small number of the requests submitted for such treatments.

## A Few Medicaid Pharmacy Programs Use Systematic Methods of Arriving at Reimbursement for Home I.V. Medications.

Washington State Medicaid has developed specific formulas to calculate payment for home I.V. medications. See Table 2.

Normally, the program reimburses for legend drugs at 89% of the AWP (considered to be the EAC in Washington) plus a dispensing fee that averages out to $3.40 per prescription. In recognition of the increased time and effort required to prepare compounded parenteral solutions, Washington Medicaid pays providers the 89% of AWP plus a compounding fee of $1.14 for every 5 minutes spent preparing a compounded mixture ($1.14 is the minimum amount to be paid for any compounded mixture taking less than 5 minutes to prepare).

Washington's reimbursement for enteral products does not include a compounding fee since enteral supplements are generally prepackaged by commercial suppliers. However, Washington Medicaid has acknowledged that the cost of enteral products is relatively high, particularly for local pharmacists not purchasing in sufficiently large quantities for volume discounts. The program compensates for this reduced profit-margin by reimbursing at 89% of AWP plus 25% (of 89% AWP) for commercial enteral products.

Washington State Medicaid has found that while this approach does not eliminate underpayment or overpayment in every case, on the average, and over the long run, it produces results fairly consistent with provider costs.

Table 2. Various State Medicaid Pricing Strategies for Home Parenteral Medications.

| State | Medication Pricing System | |
|---|---|---|
| Massachusetts | Products from $ 0-$ 25 | 50% mark up |
| | Products from $ 25-$100 | 45% mark up |
| | Products from $100-$200 | 40% mark up |
| | Products from $200-$300 | 35% mark up |
| | Products from $300 and above | 30% mark up |
| Montana | The lower of usual and customary charge. OR Up to 2 1/2 times the cost of ingredients plus a $2.00-$3.75 dispensing fee. | |
| Oregon | 80% of usual and customary charge. | |
| Washington | 89% AWP plus a $1.14 per 5 minutes compounding fee. | |

HHC002-0391

South Carolina Medicaid currently uses the same formula to determine payment for home I.V. medications that it uses for other outpatient drugs. Reimbursement for all legend drugs is calculated by starting with AWP, subtracting 7 1/2% and adding a $3.40 dispensing fee. The Medicaid Pharmacy Program in South Carolina is concerned that payment based on this formula does not offer adequate economic incentives for providers of home I.V. medications. In an effort to address this perceived inadequacy, South Carolina is exploring ways to build these incentives into the formula described above, when calculating reimbursement for these drugs. To date, none of the formulas reviewed has become a matter of policy or practice, but those involved in this project feel that an appropriate methodology will soon be established.

## 2. THE DEVELOPMENT OF REIMBURSEMENT STRATEGIES FOR HOME I.V. SUPPLIES.

### Reimbursement for the Ancillary Products (Supplies) Used in Home I.V. Therapy Has Introduced a New Administrative Dimension to Medicaid Pharmacy Operations.

Home I.V. therapy is distinguished from other drug treatments by the different supplies required and the quantities of these supplies that are utilized. There are substantial differences from one state program to another in the extent to which reimbursement for ancillary home I.V. products is a function of the pharmacy program. Some reimburse for only the drug component and none of the ancillary supplies, others cover primarily drugs but include a few non-drug items as specified by the program, and still others provide coverage for all home I.V. therapy medications as well as all the supplies.

### A Large Number of Pharmacy Programs Have Policies That Limit Reimbursement to Medications Only.

New York, Georgia and Texas are among the states which limit Medicaid pharmacy coverage solely to pharmaceuticals. In these and other programs governed by similar policy, the supplies and equipment associated with home I.V. therapy are reimbursed through other parts of the Medicaid program such as the home health or durable medical equipment departments.

### Some Pharmacy Programs Have Policies That Limit Coverage to Medications and a Few Specified Supplies Used in Home I.V. Therapy.

Minnesota Medicaid, for instance, restricts its pharmacy coverage to legend drugs and the containers used to hold I.V. medications. In Maryland, the pharmacy department reimburses for legend drugs as well as hypodermic needles and syringes.

### Multidepartmental Responsibility for Home I.V. Product Reimbursement Can Lead to Overbilling.

In programs organized so that more than one department is billed for home I.V. products, it is sometimes possible for providers to simultaneously bill multiple departments for the same item or items. Without extensive interdepartmental communication and constant monitoring for these practices, it is likely that this activity can go unnoticed in programs with multidepartmental coverage.

### A Few Pharmacy Programs Reimburse for All Medications and Supplies Utilized in Home I.V. Therapy.

Programs utilizing this approach must contend with keeping track of the variety and quantities of products involved in these treatments. These arrangements are cumbersome because all bills for products are processed through one department. However, because all billing information is examined by one department it is easier to discourage duplicate billing, to evaluate the continuity of treatment packages, and to monitor provider cost containment efforts.

See *Medicaid*, page 6

5

HHC002-0392

6

From *Medicaid*, page 5

A centralized approach to reimbursing for home I.V. products not only makes utilization review and monitoring more precise, but also streamlines billing procedures for providers. Under this system, pharmacists who provide both the medications and supplies for home I.V. therapy (most often these are supplied by the same provider) need only submit one bill to a single location.

### Reimbursement for Supplies Represents a Major Portion of Total Medicaid Home I.V. Therapy Expenses.

There is a general consensus within the Medicaid pharmacy community that there exists a critical lack of reliable information about the prices of ancillary home I.V. supplies. Pharmacist consultants are concerned that this results in substantial amounts of money overspent on these items.

Some of these products appear in the *Red Book*, *Blue Book* and *MediSpan*, but none of these publications provides a complete list of supplies and there are no other catalogues from which to obtain this information. Medicaid payors are left without adequate sources to verify billing information about these products and must depend almost entirely on the honesty of providers.

Most programs rely on published AWP prices when they are available and unverified provider reports of prices when they are not. However, even when published prices for these items can be found, the quantities in which they are purchased by providers are so enormous, it is difficult to estimate actual acquisition costs with volume discounts.

In most states, reimbursement for supplies is based on EAC and is calculated in much the same way EAC for drugs is calculated, i.e., based on AWP plus or minus a percentage of AWP. For example, Washington reimburses for supplies at 89% of AWP plus 15%. Since verification for many of these products is difficult to obtain, it is questionable whether or not this methodology accurately pinpoints cost plus a reasonable economic incentive.

The Medicaid Program in Minnesota utilized a unique approach to this problem. A variety of providers from throughout the state were brought together to supply the program with information about prices for home I.V. supplies. These providers produced pricing recommendations based on what they believed to be fair and reasonable prices for these products. Minnesota Medicaid refers to these recommendations when establishing reimbursement amounts for these items.

### 3. THE AUTOMATION OF SYSTEMS TO PROCESS HOME I.V. THERAPY CLAIMS.

#### Computer Programs to Expedite the Process of Determining Reimbursement Have Not Yet Been Developed for Home I.V. Medications.

For the most part, automated systems are used to process outpatient drug bill claims submitted to Medicaid programs. Unfortunately, little has been done to develop automated systems to process claims for compounded medications. As previously mentioned, frequently home I.V. solutions are a combination of multiple drug entities prepared specifically for each individual patient. The individualized composition of each home I.V. medication package has inhibited development of computerized systems through which to process data for reimbursement. Consequently, reimbursement determinations for home I.V. drugs in most Medicaid programs are derived through manual calculations performed on a case by case basis. These procedures, which are both cumbersome and time-consuming, contribute to delays in compensating providers. Furthermore, they increase the likelihood of inconsistent and inaccurate reimbursement.

HHC002-0393