```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS


   IN RE:                        )
                                 )  CA No. 01-12257-PBS
   PHARMACEUTICAL INDUSTRY AVERAGE )
   WHOLESALE PRICE LITIGATION     )  Pages 1-30
                                 )
```

SUMMARY JUDGMENT STATUS HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
May 28, 2009, 3:50 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

1    A P P E A R A N C E S:

2

        GEORGE B. HENDERSON, ESQ., Assistant United States
3    Attorney, Office of the United States Attorney, 1 Courthouse
     Way, Boston, Massachusetts, 02210, for the United States of
4    America.

5        ANN ST. PETER-GRIFFITH, ESQ., Assistant United States
     Attorney, for the United States of America.
6

        JAMES R. DALY, ESQ., Jones Day,
7    77 West Wacker, Chicago, Illinois, 60601-1692,
     for Abbott Laboratories.
8

        JOHN W. REALE, ESQ., Kirkland & Ellis, LLP,
9    200 East Randolph Drive, Chicago, Illinois, 60601,
     for Behring and Roxane.
10

        NEIL MERKL, ESQ., Kelley Drye & Warren, LLP,
11   101 Park Avenue, New York, New York, 10178,
     for Dey, Inc.
12

     ALSO PRESENT:  Susan Schneider Thomas, Esq., for Ven-A-Care.
13

14

15

16

17

18

19

20

21

22

23

24

25

1                P R O C E E D I N G S

2            THE COURT:  The remaining crew here.

3            MR. HENDERSON:  Thank you, your Honor.  George

4    Henderson for the United States.  I'll try and be brief.  We

5    need your help.  The United States --

6            THE COURT:  Yes, we just need everyone to

7    introduce themselves.

8            MR. HENDERSON:  George Henderson and Ann

9    St. Peter-Griffith for the United States.

10           THE COURT:  You've just got to make sure you belt

11   it out because she's got to be able to hear, and there's a

12   little bit of an undercurrent here.  So go ahead.  From the

13   defendants?

14           MR. DALY:  Good afternoon, Judge.  Jim Daly for

15   Abbott Labs.

16           MR. REALE:  Good afternoon, your Honor.  John

17   Reale with Kirkland & Ellis on behalf of Behring and Roxane.

18           MR. MERKL:  Good afternoon.  Neil Merkl on behalf

19   of Dey.

20           THE COURT:  Did I miss something?  Has this been

21   briefed.

22           MR. HENDERSON:  No.

23           THE COURT:  All right, so I'm learning for the

24   first time.  Okay.

25           MR. HENDERSON:  We have summary judgment coming

84ba0099-669b-4b26-b521-24d1920aa9f0

1   up.  Principal briefs are due June 26, I think; opposition

2   briefs late in July with replies in August.  The United

3   States would like to propose some limitations in briefing,

4   page limitations, to bring some order to this, given that

5   we're one plaintiff and three defendants on the other side.

6           THE COURT:  So are you expecting that everyone is

7   going to file a motion for summary judgment?

8           MR. HENDERSON:  Yes.

9           THE COURT:  So everyone will be filing a motion

10  for summary judgment, and everyone will be opposing each

11  other's?

12          MR. HENDERSON:  Yes.

13          THE COURT:  The government and the defendants?

14          MR. MERKL:  Yes, your Honor.

15          MR. HENDERSON:  And the United States believes

16  there are many issues that are common to all three

17  defendants, both from the defense perspective and from the

18  United States plaintiff's perspective.  And what we propose

19  is that the Court require a common briefing on common

20  issues, also common Rule 56.1 statements on common issues.

21          THE COURT:  Could you just back up for one minute.

22  What's it going to be about?

23          MR. HENDERSON:  The United States expects to move

24  for summary judgment on, if not liability, certain major

25  elements of liability such as causation and falsity, and

1    perhaps liability on some aspects of the case; and we also

2    wish to move for summary judgment on various affirmative

3    defenses.

4            THE COURT:  Like government knowledge?

5            MR. HENDERSON:  Probably, yes.

6            THE COURT:  What else?  It's a little hard for me

7    to rule without knowing this.  What are the crosscutting

8    issues?

9            MR. HENDERSON:  Okay, on falsity, generally we'll

10   be talking about the Medicare statute and reimbursement

11   system; and on the Medicaid side, we'll be talking about the

12   state programs, state Medicaid programs; and we will be

13   presenting to your Honor evidence on the Medicaid

14   reimbursement methodologies.

15           THE COURT:  Is this in every state?  Is this going

16   to be every state ones?

17           MR. HENDERSON:  Almost but not -- there are a

18   few --

19           THE COURT:  So you're going to have common

20   briefing on what the different states do?

21           MR. HENDERSON:  Yes.  And the standards for

22   establishing liability on those states and questions of

23   falsity.

24           THE COURT:  So I might potentially have forty plus

25   questions of law.

1          MR. HENDERSON:  Yes.

2          THE COURT:  So how long do you think your brief

3    would be?

4          MR. HENDERSON:  What we're proposing is, on common

5    issues --

6          THE COURT:  Like what the statute says, the state

7    statute?

8          MR. HENDERSON:  What the statute says.  We

9    essentially have summaries for each state that we believe

10   are backed up by evidence, and there has been no dispute

11   over those thus far in all the proceedings so far, so we

12   don't think the reimbursement methodologies of each state is

13   in serious dispute.  So we will be moving for summary

14   judgment on falsity, which as part of that --

15         THE COURT:  How many drugs are involved?

16         MR. HENDERSON:  For Abbott, I think there are

17   about -- NDCs are what, about 40?  How many?  In that

18   neighborhood.  For Dey, there are about 15 or 20 NDCs, but

19   they're really just three categories of drugs, three drugs.

20         THE COURT:  But for Abbott is 40 really different

21   drugs?

22         MR. HENDERSON:  No.  Many of them are very similar

23   categories of --

24         THE COURT:  There are 40 NDCs?

25         MR. DALY:  Four drugs:  salt water, sugar water,

1   pure water, and vancomycin, and within that, there's 44 NDCs

2   of those four drugs.

3          THE COURT:  Okay, thank you.

4          MR. HENDERSON:  And likewise for Dey, there is

5   three drugs, albuterol, cromolyn sodium, and ipratropium

6   bromide, and there are, I don't know how many, 16 or 20

7   NDCs.  I don't know exactly.  And for Roxane, there are more

8   drugs.  There are about eight drugs and I'm guessing --

9          MR. REALE:  I think there are nine drugs, your

10  Honor, and 35 NDCs, about 35.

11         THE COURT:  So without actually getting the

12  papers, it's hard for me to know.  Will there be, obviously,

13  separate briefing with respect to each of the drugs?

14         MR. HENDERSON:  Yes, definitely.  So we would want

15  common briefs on common issues, but also separate briefs for

16  each defendant.

17         THE COURT:  You haven't been able to work this

18  out?

19         MR. HENDERSON:  No, no.  And part of the reason is

20  that we believe that many of the issues relating to, both on

21  the government's side in terms of proving our case as to all

22  the Medicaid programs and the Medicare programs, are very

23  much common issues.  We also believe that the government

24  knowledge defenses are mostly, although not entirely -- I

25  don't pretend they're completely the same as to every

1  defendant, there are some differences, but the bulk of it, I

2  would say 80 to 90 percent of it is really common to all the

3  defendants.  And I'm worried about getting thousands of

4  pages of Rule 56.1 statements from these defendants with no

5  coordination amongst them, and likewise briefing where

6  there's a lot of repetition, but it's very difficult to

7  parse out what's repetitive and what's not.  So I'm just

8  worried about getting overwhelmed when there's been no

9  coordination.

10         THE COURT:  Well, I'm worried about getting

11  overwhelmed.  So you guys have all this -- look at all of

12  you, and there are two of us.  So let me try and figure this

13  out.  So you're thinking that I'm going to have to look at

14  fifteen drugs, three defendants, and forty state laws, and

15  each one of them under a separate state law?

16         MR. HENDERSON:  Well, there may be some drugs, for

17  example, we may not move for summary judgment on.

18         THE COURT:  Well, how am I going to do this in the

19  abstract?  I mean, you'll file your motion for summary

20  judgment.  How long -- normally it's 20 pages.  I'm sort of

21  assuming that that's not going to work here.

22         MR. HENDERSON:  Correct.  What I'm proposing is --

23  let me start with the Rule 56.1 statements first and then do

24  the briefs.  On the Rule 56.1 statements, I'm suggesting

25  60 pages each on the common ones that are common to all of

1    the defendants, 60 pages for the government, 60 pages for

2    the defendants.  And in addition, for each case there would

3    be a separate group of 56.1 statements, and I'm suggesting a

4    limit of 40 pages on those.  And for the briefs, there

5    should also be common briefs on crosscutting issues -- I

6    suggest 40 pages -- and separate briefs for each defendant.

7              THE COURT:  We've generally been doing that.  Does

8    that work here?  Are you amenable to doing some sort of

9    crosscutting and then individual briefs?

10             MR. MERKL:  Your Honor, the defendants have

11   discussed issues informally, and we've discussed

12   possibilities of doing this.  What we found in our

13   discussions is that the bases for moving for summary

14   judgment are not really what you've seen in the past.  I

15   mean, taking to heart what you've said about drug by drug,

16   defendant by defendant, we're trying to focus these more on

17   specific drugs.  For instance, in the case of Dey, there's a

18   stack of government knowledge evidence on albuterol that's

19   particular and unique to albuterol which are in OIG reports;

20   but even more unique is, the government has invoices from

21   Dey, and the different states have correspondence from Dey.

22   So to the extent we're going to do any kind of a motion that

23   addresses those issues, it's going to be Dey-specific,

24   drug-specific, and that really doesn't cut across.

25             MR. DALY:  Judge, for my part, I mean, I wish the

1    government hadn't sued my client, but they did.  And, you

2    know, we've got a ten-year period here.  There's been 200

3    depositions taken in the matter.  I've never heard -- I

4    don't want to create a magnum opus Rule 56 statement, but

5    there is a lot of material here.  And to suggest, because

6    they sued three defendants, that they want to limit the fact

7    part of it, I don't think there's any precedent for that.  I

8    think we can work with something reasonable.

9         THE COURT:  Right, I can't limit the fact piece of

10   it, but let me just say this:  What I don't need is three

11   separate briefs on what the government knowledge defense is.

12        MR. DALY:  I think that's fair, Judge, and what we

13   thought is, if we as a group, if we find that there's common

14   stuff, then we would try to put that in a common brief.  We

15   have no objection at all if the government wants to make a

16   common brief that they want to direct to all three of us,

17   and those portions of it that we can respond to in a common

18   way, we certainly will.  So it sounded to me like they want

19   commonality offensively and defensively.  We have no

20   objection if they try that offensively.  Our problem is that

21   when we talk about it and we talk about the arguments that

22   we're going to make, we think that that which would be

23   common among us would be a very small portion of what we

24   might say, and --

25        THE COURT:  I can't rule on this.  I can't.

1          MR. HENDERSON:  I think we're going to get buried,

2     Judge.

3          THE COURT:  I think I'm going to get buried, but

4     let's start off with something, which is you each -- maybe

5     what makes the most sense is that you go first, the defense

6     goes first, and you each limit your briefs to 40 pages each.

7     If some of it repeats, some of it repeats.  If you come up

8     with another proposal, then you do.  I'm not limiting you in

9     your statement of facts.  You do 40 pages on a brief, each

10    one of you, and a statement -- just know at some point I'll

11    close down if I have thousand-page statements of facts.  I

12    mean, you've got to do something within reason that I'm

13    going to actually read.

14         MR. DALY:  We'll all close down, Judge.

15         THE COURT:  We'll all close down.  So then you'll

16    see all three of them.  You can respond in common and then

17    cross-move.

18         MR. HENDERSON:  Okay.

19         THE COURT:  So that we don't have two, like, ships

20    in the night here.  So you can oppose, which I'm assuming

21    you will, and cross-move, and you can do it with a common

22    brief, if you want to, so you don't have to reply separately

23    to each one, and then cross-move if you want.  And then you

24    can make a decision as to whether you want to file a joint

25    opposition to his or whether you want to do it separately.

1    There's no other way I can think of to do this.

2            MR. MERKL:  Your Honor, it might make sense in

3    this case for the plaintiff to go first.

4            THE COURT:  No, no, because they -- I think this

5    is what we'll do, and then that way he has an option of

6    either doing one brief or three.  So if it's one brief, it's

7    120 pages, 40 times three.  If it's three briefs, it's 40

8    for each defendant.

9            MR. MERKL:  The reason, your Honor, is that

10   counsel is considering dropping some claims, which will

11   affect my brief.

12           THE COURT:  Well, when are you going to know?

13   That's a fair point.

14           MR. HENDERSON:  Very soon.  We are, and we told --

15           THE COURT:  That's totally fair, totally fair.

16           MR. HENDERSON:  Yes, absolutely.

17           THE COURT:  So when can you give them notice of

18   what you're going to drop?

19           MR. HENDERSON:  We're in the process now of

20   getting final approval to drop our common law fraud claims,

21   which I've told them, and I would think within a week.

22           THE COURT:  All right, next week?

23           MR. HENDERSON:  Next week.

24           THE COURT:  So today's what, the 27th?  And so

25   just pick a date.  June 4?

1    MR. HENDERSON:  Is that the end of next week?  I

2    don't have my calendar.

3         THE COURT:  I think it is.

4         MR. HENDERSON:  June 4, that sounds good.

5         THE COURT:  Yes, if you need another day or two,

6    take it, but just say June 4 you let them know.  Then you

7    file your briefs on whatever is left.  Well, you think what

8    else other than common law fraud might go so that we

9    don't -- I know they probably have teams working as we

10   speak.

11        MR. HENDERSON:  I think that's all.

12        THE COURT:  Are there any particular drugs that

13   you think of you'd be dropping?

14        MR. HENDERSON:  No, no.  There are a few states

15   which we've already informally told defendants that we're

16   not pursuing.

17        THE COURT:  So why don't you give them a formal,

18   so they're not spinning wheels, by next week.

19        MR. HENDERSON:  Okay.

20        THE COURT:  And then you'll file your brief,

21   40 pages apiece.  You'll file an opposition within -- and a

22   cross-motion --

23        MR. HENDERSON:  Since that's the first date for

24   the defense, I guess it would be the same date, which is

25   June 26.

1       THE COURT:  Yes, yes, yes.  And then whenever the

2  opposition date was before, that's when you're going to file

3  an opposition, and then cross-move, and then you can

4  respond.  We have this all set up, right?

5       MR. MERKL:  Yes, although what we had set up

6  contemplated simultaneous briefs.

7       THE COURT:  All right, but at this point that

8  doesn't make sense.  And he can file a consolidated brief if

9  he wants and --

10      MR. DALY:  If they're planning on moving against

11  us, which they've been and talking about and talking about

12  how busy they are doing it --

13      THE COURT:  I know, but I --

14      MR. DALY:  They seem to be ready to file a common

15  motion against us.  I don't know why they don't do that as

16  scheduled.

17      THE COURT:  I know, but what I don't want is, I

18  have this nightmare that you're each going to file these

19  massive motions.  Then you're each going to oppose the

20  other, and I have twice as many -- I have briefs like ships

21  passing in the night as I'm hearing you speak.  And so you

22  go first, you go second, and then you can reply either in

23  common on the common issues or separately.  Reply briefs are

24  limited to 20 pages.

25      And, Ven-A-Care, you're standing up.  Are you

1  planning on briefing this?

2          MS. THOMAS:  We do not plan on briefing the

3  intervened cases separately, but the Abbott Ery

4  non-intervened case is on the same schedule, so I just

5  wanted to confirm that your same orders are applying to

6  that.  It's just these couple of additional Abbott drugs

7  where only Ven-A-Care brought the lawsuit.

8          MR. DALY:  I'm not a hundred percent sure it's on

9  the same summary judgment schedule.  It's on the same

10 discovery schedule, though.

11         MS. THOMAS:  I think the summary judgment is at

12 least very closely aligned.

13         THE COURT:  I have to admit you're catching me.

14         MR. DALY:  Yes, I'm not sure about that.

15         THE COURT:  I don't really know.  I'm happy to

16 have it be on the same schedule, but I also would envision

17 that --

18         MS. THOMAS:  It's not going to be a whole lot of

19 extra issues.

20         THE COURT:  Well, why don't the two of you talk,

21 and whatever you come up with --

22         MR. DALY:  We'll talk.  We're still wrapping up

23 some of the expert discovery even as we speak.

24         THE COURT:  If you have a disagreement, just

25 submit it to me, but just try and work out something.  But

1    what I don't want is a separate relator brief on each of

2    these things, or I'll just be swamped.

3              MS. THOMAS:  We're well aware of that.

4              MR. DALY:  I just want to get one thing.  We move,

5    they come back and, A, respond, and B cross-move?

6              THE COURT:  In the same thing so I'm not getting

7    two separate briefs.

8              MR. REALE:  And are they limited to 40 pages in

9    just their opposition, or does that also include --

10             THE COURT:  No.  If you each want 40, I give them

11   40 times three.

12             MR. DALY:  Now, Judge, my question was going to

13   be, now, they've moved against us.  It's a, you know,

14   hundreds and hundreds of millions of dollars issues for us.

15   You're not limiting us to 20 pages to respond to their

16   affirmative motion, are you?

17             THE COURT:  That's a good question.  So the

18   response, I don't know.  I mean, just --

19             MR. DALY:  There's a lot at stake there.

20             THE COURT:  But you've already briefed the whole

21   kit and kaboodle.  I'm assuming --

22             MR. DALY:  We don't know what they're moving on.

23   We don't know what their arguments are going to be until we

24   see them.

25             THE COURT:  Yes, you do.

1          MR. DALY:  We still need to respond to it.  It may

2     be -- we may not be moving on the same things, Judge, so

3     that --

4          THE COURT:  All right, then, see, I don't know the

5     case as well as -- what I don't want is two sets of briefs

6     on the exact same thing.

7          MR. DALY:  I understand that, Judge.

8          THE COURT:  I mean, what you say makes sense, so

9     you each can have 40 pages if you want.  And, ideally

10    speaking, you'll be able to have 40 for a surreply.  And

11    then when is the hearing?

12         MR. HENDERSON:  September 29.

13         THE COURT:  All right, but no more than that,

14    normal font, normal formatting, normal margins, or I'll

15    throw it out.  Just I'll sink if you're talking about

16    disputes under forty different state laws?  Are you

17    anticipating disagreements on forty different reimbursement

18    mechanisms?

19         MR. REALE:  With the government?

20         THE COURT:  Yes.

21         MR. REALE:  I mean, I envision that we will have

22    differences with the way they present the case, yes.  I

23    don't know how that will break down in a summary judgment.

24         THE COURT:  Massachusetts was a mess.  I'm not

25    faulting anyone.  It's the way it was.  It changed over the

1   time period.  It went from one reimbursement mechanism to a

2   second to a third.  It was hard to follow.  Different

3   administrators understood it differently.  It was difficult.

4   So if I'm going to face forty of those, I'm feeling very

5   discouraged.  You won't get a ruling for a year.  I mean,

6   I'm being blunt.  It took me -- how long did it take me to

7   rule on Massachusetts, four months?

8               MR. HENDERSON:  About a year.

9               THE COURT:  Well, I don't think it took me a year

10  to get you the opinion, but the whole thing played out over

11  that period of time.

12              MR. HENDERSON:  Just a point of clarification.

13              THE COURT:  Maybe six months to get you the

14  opinion or something like that.

15              MR. REALE:  It ended in June as far as our oral

16  argument, and the order was issued in December of 2008.

17              THE COURT:  Fair enough.  That sounds about right

18  to me.

19              MR. HENDERSON:  Actually, two things.  As I'm

20  looking at the schedule, if we cross-move on July 24 --

21              MR. MERKL:  June 24.

22              THE COURT:  No.  You're going first.  They're

23  going second.

24              MR. HENDERSON:  And it doesn't really -- their

25  opposition under this schedule would be due August 7, which

1    is pretty tight for the defense, and I think they're going

2    to need a little more time.

3            MR. DALY:  Yes, if you're not having them be

4    simultaneous, then we need --

5            THE COURT:  Do you want to just meet and just come

6    up with fair schedules?  It will put us into early fall

7    because it's going to take -- I don't want to go through

8    another law clerk cycle.  I've hired up, so I will have

9    people to help me on this.  But the reality is, I'm not

10   going to have them a year out.  I need to be able to finish

11   this by the end of the clerkship year.  I may -- are you

12   trying to settle these cases at all?

13           MR. HENDERSON:  We have, your Honor.  We haven't

14   had much success so far.

15           THE COURT:  You're going to be part of this

16   universal mediation on this.  I view this as -- look, you

17   have one, two, three -- eight people I'm just looking at.

18   You're going to sink my session.

19           MR. HENDERSON:  I understand, your Honor, and we

20   would very much like to settle, but it has to be on

21   realistic terms.

22           MR. DALY:  And we have the same view, Judge.

23           THE COURT:  Well, I'm sure you both do.

24           MR. DALY:  We do.

25           THE COURT:  I am simply saying, I'm ordering that

1   you at least make an effort in part of this mediation

2   process.  In the meantime, we'll have this all briefed, and

3   you'll set up a timetable that makes sense, 40 pages limit

4   on the briefs, normal formats, normal margins, or I'll just

5   return it.

6           MR. HENDERSON:  Point of clarification.  When we

7   oppose their motion and file our own cross-motion, we should

8   be given 40 pages to respond to their motion, and I would

9   like separate page limits for our affirmative motion.  We

10  can't do both our affirmative motion and --

11          THE COURT:  I don't know.  You're pushing me too

12  hard.  I don't know how much of it is an overlap.  "Yes,

13  it's false, no, it's not," that seems like the same issue

14  whether it's in a cross-motion or a noncross-motion.  It

15  should be the same briefing, and I don't want it twice.

16          MR. HENDERSON:  Certainly.

17          THE COURT:  I don't know, right?  I think most of

18  it will overlap is the truth of the matter.  I don't know

19  the case as well as you do.  Why won't it?  You're going to

20  say, "This as a matter of fact is false," and they're going

21  to say, "As a matter of fact it's not."

22          MR. HENDERSON:  For us to be able to make an

23  affirmative case as to more than just falsity but causation

24  as to each defendant --

25          THE COURT:  Why won't 40 a defendant do it for

84ba0099-669b-4b26-b521-24d1920aa9f0

1    you?

2            MR. HENDERSON:  I'm sorry?

3            THE COURT:  Forty a defendant, why won't that do

4    it for you?

5            MR. HENDERSON:  I am very skeptical of our ability

6    to respond to their motion and do our own cross-motion in

7    that same 40 pages.

8            THE COURT:  So you want 240 pages of briefing?

9            MR. HENDERSON:  We would like a little bit more

10   than the 40 pages.

11           THE COURT:  What do you want?

12           MR. HENDERSON:  I guess I'll ask for 50 pages.

13           THE COURT:  Fine, I can handle 50 pages, but what

14   I can't deal with is 240 pages.  I thought 120 pages should

15   more than do it, since, as you point out, a lot of it will

16   be overlapping.

17           MR. HENDERSON:  And we may well be able to reduce

18   that.  We will give it our best shot.

19           MR. DALY:  Judge, in terms of your schedule, given

20   that they're not simultaneous, I think we added an argument

21   date in October.  When do you want us to -- we're going to

22   pick a date and back up from it in the schedule.  When's the

23   latest your Honor would like to have us here for oral

24   argument on it?

25           THE COURT:  I'd love to keep it in October because

1    I've got -- what do you have?

2           THE CLERK:  The court's calendar shows the hearing

3    is scheduled for September 23, not September 29 as Bunker

4    indicated.  September 23 at 2:00 p.m. is the date on the

5    court's calendar.

6           THE COURT:  You think you're not going to be able

7    to keep that?  Well, let me just ask you this:  How many

8    boxes of documents do you think I'm going to get?

9           MR. HENDERSON:  I speculate around ten from all

10   parties.

11          THE COURT:  From all parties.

12          MR. HENDERSON:  All parties.  That's a wild guess.

13          MR. MERKL:  Can we give you a disk, if there's a

14   way to put it on a disk?

15          THE COURT:  No way.  How am I going to go in and

16   out of it?

17          MR. MERKL:  I don't know, your Honor.

18          THE COURT:  Let's say you gave it to me, and then

19   you said "See Exhibit 8," how would I get to it to be able

20   to read it?  Would you be able to give me hyperlinks?

21          MR. HENDERSON:  I suppose we would ask for that

22   option if you would permit it.

23          THE COURT:  But I'd also want it printed out, I

24   hate to say it, because I'm going to go in and out of the

25   documents and put stickies and underlines and all that sort

1   of thing.

2           MR. DALY:  We'll get you binders then, Judge.

3           THE COURT:  I think that's probably right.  Yes, I

4   think that's right.  So, you know, if we've got it now in

5   September and if you wanted to move it off a few weeks,

6   that's fine.  But I think you are all going to have to need

7   to think about what I'm going to do if I hit forty

8   Massachusetts situations.

9           MR. HENDERSON:  Just for the Court's --

10          THE COURT:  Does it make sense -- what I might

11   want to do is what I've done in some of the Neurontin cases,

12   which is another case I'm doing, is just take a couple of

13   pilot states where I did this in the others and just try and

14   see them through.

15          MR. HENDERSON:  What we've done, your Honor, is,

16   our experts have gone out and determined the state

17   methodology for each state in exquisite detail, I would

18   suggest.

19          THE COURT:  For how many -- isn't it over a

20   decade?

21          MR. HENDERSON:  Yes.

22          THE COURT:  Didn't it change at certain points?

23          MR. HENDERSON:  Oh, absolutely, absolutely.

24          THE COURT:  So I might have to make rulings for

25   all these different periods of time?

1        MR. HENDERSON:  We presented this information as

2   part of the discovery in support of our expert reports.

3   There was no specific challenge to any of that information

4   from any of the defense experts.

5        THE COURT:  Okay.  Well, maybe I'm just

6   exaggerating, but there sure was a dispute in Massachusetts.

7        MR. HENDERSON:  And I think you will find there

8   will be little, if any, dispute about the methodologies

9   themselves of the states.

10        THE COURT:  Well, maybe we're back down to

11   40 pages a --

12        MR. HENDERSON:  It's quite possible, your Honor.

13        MR. DALY:  I think Mr. Henderson is being

14   optimistic about the level of dispute concerning --

15        THE COURT:  Well, you'd better put it into some

16   sort of a -- some of it might be pure questions of law, for

17   which I will not need an expert, but some of it, really, you

18   did need to have the reimbursement people say how it was

19   playing out.  I don't know.  How many states do you think

20   you're going to dispute?  You've seen their expert reports.

21        MR. DALY:  Judge, there are levels of disputes.  I

22   mean, we can all read what the statute or the relevant reg

23   might have said at a given time.  Whether the state was

24   following that is a completely different question.  So the

25   facts come in as to -- it's one thing to say what the state

1  statute says --

2          THE COURT:  Let me ask you this, just on a totally

3  different kind of approach:  Does it make any sense to just

4  take one state?

5          MR. DALY:  From our perspective, Judge --

6          THE COURT:  Or each of you pick two states that

7  were best from your point of view that would settle this

8  case, and I could do two of your states and two of your

9  states, and then just whatever I ruled, maybe that would

10  facilitate settlement?

11          MR. MERKL:  It would not because of the CMS

12  component to this.  We would still have to do the CMS

13  element.

14          THE COURT:  I don't know what you're talking

15  about.

16          MR. MERKL:  CMS is the overarching federal entity

17  running and approving all the state programs.

18          THE COURT:  Right.

19          MR. MERKL:  The focus of our motion, anyway, is

20  going to be what CMS did, what CMS knew, what we reported to

21  CMS.  It's true, we believe --

22          THE COURT:  But that would be easy for me to do.

23  Not easy.  I mean, it will be hard, but, I mean, that's one

24  issue.  It's not forty states.

25          MR. REALE:  That very well may be comprised of

1   what the different Medicaid programs themselves do.

2           MR. MERKL:  Well, you see what they knew from

3   their dealings with each of the states.  But I guess I'm not

4   telling you -- you know, your Honor, we don't anticipate

5   making forty motions or giving you forty different states.

6   We're trying to work the issues much differently from that.

7   Frankly, I don't understand what Mr. Henderson means --

8           THE COURT:  Well, let me put it this way:  You'll

9   brief it, and if I find it too absolutely overwhelming, I'm

10  going to just pick three states that we'll argue, and then

11  hopefully send you to settlement after that.  In other

12  words, take, you know, maybe some of the big-money states.

13  You'll tell me what are the states that would settle this

14  case; you know, maybe what, New York, California, Texas?  I

15  don't know.  What are the big-money states where most of the

16  losses come from?

17          MR. HENDERSON:  Well, those certainly are three.

18  Florida, Indiana --

19          THE COURT:  I mean, that might be a useful -- if I

20  get absolutely overwhelmed, that might be a useful way to

21  go.  Would that be useful for you all?

22          MR. MERKL:  Well, your Honor, we've settled some

23  of those states, so that's going to be an issue that we have

24  to brief, which you will see, because we've settled Texas,

25  we've settled Florida.  What was the other one?

1          MR. REALE:  Massachusetts.

2          MR. DALY:  California.  We still have the Medicare

3   problem here too because it's both Medicare and Medicaid in

4   this case.

5          THE COURT:  So just keep that in the back of -- if

6   I take a look at this and say I can't do this in a realistic

7   timetable, what it would be useful to do is to prioritize;

8   you know, what is it that you really need?  And then I can

9   send you to Professor Green to settle.

10         MR. DALY:  One of the problems, and it's something

11  to think about certainly, Judge, but I think one of the

12  problems is that this is the case that the government

13  brought; and from our perspective, every state really is

14  different, and what people were doing in the state Medicaid

15  agencies are sui generis.

16         THE COURT:  I'm sure you're right, but at the end

17  of the day, as you pointed out, I think, it's expensive for

18  the company.  And at some point, if I throw up my hands --

19  is this my case, by the way, or is this something that needs

20  to go out to the -- do you remember?

21         MR. DALY:  My case goes back to Judge Gold in

22  Miami at the end of summary judgment.  I think the other

23  two --

24         MR. REALE:  We remain.

25         MR. MERKL:  Well, our case was assigned to you

1   through the MDL process, but it was filed --

2              THE COURT:  Right, but who would it go back to?

3              MR. MERKL:  That I don't know, your Honor.  It is

4   in Massachusetts, though, and I think you can keep it.

5              MR. HENDERSON:  Dey and Roxane are your cases.

6              THE COURT:  Dey and Roxane are mine.  I mean, one

7   possibility is to just try a couple of them, just try a

8   couple, like I did in the big class action case.  So just

9   think about all those as options.  In the meantime, you'll

10  come up with a proposal to do this with page limits,

11  et cetera, normal margins, normal footnotes.  You know, the

12  new trend is to get the footnotes so tiny so that I can't

13  read it so that it adds the information.  I'm not limiting

14  the number of statements of facts or the number of documents

15  that can be attached, but the briefs I'm limiting.  And as a

16  practical matter, if it's not highlighted in the brief, I

17  won't look at it, I mean, as the big issue.  I'm not saying

18  factually.  I'm just saying, if it isn't a big issue, I'm

19  not going to dream it up on my own.  So you're going to have

20  to prioritize just by page limits as to what's going on.

21             MR. REALE:  Your Honor, just I have to ask.  We

22  have 50 pages now, given what Mr. Henderson --

23             THE COURT:  You know what, work something out, but

24  we're talking in the lines of, I'm not going to require you

25  to do crosscutting because I don't understand it well enough

1  to know whether it's appropriate.  I will stop reading

2  after -- 40 is double what we've been talking about, so it

3  shouldn't be more than that for each one of your initial

4  briefs.  And I think you have a good point on the opposition

5  might be different a little bit than the cross-motion, but

6  it shouldn't be that much different, unless I'm not

7  understanding the case.

8          MR. HENDERSON:  No, you're right, there will be

9  some --

10         THE COURT:  Huge overlap.

11         MR. HENDERSON:  -- additional information to

12 present --

13         THE COURT:  So if you want 50 pages, do I care a

14 lot?  No, fine, 50 pages.  But we're not going to have 240

15 as an aggregate because I won't read it.  So, you know,

16 let's just keep this within reason.

17         Does it make sense to have oral argument, all of

18 you at the same time?  Because I'll just get too tired and I

19 won't focus.  Another possibility is, when you do this, see

20 how much is crosscutting versus -- maybe I should have each

21 of you as a separate oral argument on a separate day so we

22 can focus on you.  I mean, just think about that.

23         MR. DALY:  Yes, we'll think about that, Judge.

24 There might be -- maybe we'll have, you know, a common half

25 day and then another day where we do our individual stuff,

1   something like that.  We'll talk to counsel.

2           THE COURT:  That's how I tended to do it in the

3   big case because otherwise I always felt as if I was giving

4   the company short shrift because, you know, I deal with the

5   big crosscutting issues, but then I don't get into the weeds

6   on your individual drugs.  And then, truthfully, by the time

7   I get to them, I forget.  So I actually think it makes some

8   sense, you know, to just have -- and for you too, how can

9   you remember everything?  And so maybe what we should do is

10  have one crosscutting day on oral argument and then one on

11  each one of the drugs.

12          MR. HENDERSON:  Yes.

13          THE COURT:  So, anyway, thank you for flagging

14  this issue for me.

15          MR. HENDERSON:  Thank you.

16          MR. DALY:  Thank you, Judge.

17          THE COURT:  I'm loathe to tell you to have a

18  wonderful summer because it doesn't sound so good.

19          THE CLERK:  Court is in recess.

20          MR. DALY:  Thank you, Judge.

21          MR. HENDERSON:  Thank you, your Honor.

22          (Adjourned, 4:25 p.m.)

23

24

25

1                    C E R T I F I C A T E

2

3

     UNITED STATES DISTRICT COURT )
4    DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
5

6

7          I, Lee A. Marzilli, Official Federal Court

8    Reporter, do hereby certify that the foregoing transcript,

9    Pages 1 through 30 inclusive, was recorded by me

10   stenographically at the time and place aforesaid in Civil

11   Action No. 01-12257-PBS, In Re:  Pharmaceutical Industry

12   Average Wholesale Price Litigation, and thereafter by me

13   reduced to typewriting and is a true and accurate record of

14   the proceedings.

15          In witness whereof I have hereunto set my hand

16   this 5th day of June, 2009.

17

18

19

20

21          /s/ Lee A. Marzilli
            _____
22          LEE A. MARZILLI, CRR
            OFFICIAL FEDERAL COURT REPORTER
23

24

25