# Exhibit G

Case 1:01-cv-12257-PBS   Document 6118-8   Filed 06/15/09   Page 2 of 5



PB94-187689

# ASSESSMENT OF ADEQUACY OF REIMBURSEMENT RATES TO PHARMACIES AND ITS IMPACT ON THE ACCESS TO MEDICATION AND PHARMACY SERVICES BY MEDICAID RECIPIENTS

HCFA Contract No. 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
Delivery Order No. 3
*Submitted by*

E. Kathleen Adams, Ph.D.
Norma Gavin

SysteMetrics
A Division of MEDSTAT® Systems, Inc.
125 CambridgePark Drive
Cambridge, MA  02140


David H. Kreling, Ph.D.
University of Wisconsin
School of Pharmacy

August 25, 1993

REPRODUCED BY:
U.S. Department of Commerce
National Technical Information Service
Springfield, Virginia  22161

and pediatric services are available at least to the extent such services are available to the general population. The second goal of this study is to examine several measures of enrollee access and assess the relationship of payment levels to these access measures.

Besides the adequacy of payment for pharmacy services, other key determinants of pharmacy participation include residence of Medicaid enrollees relative to participating pharmacies and other State policies concerning coverage of drugs. As for physician services, the residence of enrollees in areas in which pharmacies are less likely to locate may create problems of access to pharmaceutical services; for example, pharmacies may be less likely to set up business in the inner urban areas in which many enrollees reside. Under OBRA 1990 States could no longer include restrictive formularies, States can affect access to specific drugs by requiring prior approval, setting State MACs, and requiring generic substitution. In addition, State policies determine the eligibility of poor persons in a State to enroll in Medicaid, which is the first step to access under this program. This study attempted to take these factors into account when examining access to pharmacy services in each State. OBRA 1993 amended the provisions of OBRA 1990 to allow States to again establish restrictive formularies beginning October 1, 1993. However, these provisions became effective after the conclusion of this study.

While Federal Medicaid regulations dictate the method for reimbursing prescription drugs, it is ultimately the interaction of Federal and State policies that determine the level of State payments for pharmacy services and hence access for enrollees. States have significant flexibility in their Medicaid eligibility and payment policies. The challenge for this study is to examine the issue of adequacy of State payment and enrollee access at a **national** level, recognizing that the unique circumstances of each **State** may affect these outcomes.

The focus of this study is on data and measures that are available and consistent for all, or the majority of, States for a current time period. Because some issues surrounding access (e.g., distance to nearest pharmacy, closures, etc.) would require data within States and perhaps, cities, this type of analysis is not the focus of this report. By examining data for the Nation as a whole, the study provides a better understanding of Federal drug payment policy, how it is implemented in each State, and a comparative understanding across States. Some measurements and analysis are presented, however, at the county level for a regionally representative set of States chosen to more fully test some of the hypotheses surrounding pharmacy participation.

## 1.2   BACKGROUND

In this section and the remainder of the report, numerous definitions of terms specific to the pharmaceutical industry are introduced. To aid the reader, we have provided a glossary of terms, shown in Table 1.1. This can serve as a reference for much of the following text.

Table 1.1
Definitions of Terms Specific to the Pharmaceutical Industry

| TERM | DEFINITION |
|---|---|
| Actual Acquisition Cost (AAC) | Pharmacist's net payments made to purchase a drug from any source (e.g., manufacturer, wholesaler) net of discounts, rebates, etc. |
| Estimated Acquisition Cost (EAC) | An estimate of pharmacies' actual acquisition costs that are made by the States and other third-party payers. |
| Maximum Allowable Cost (MAC) | A maximum dollar amount for which the pharmacist is reimbursed for selected products. |
| Average Manufacturer's Price (AMP) | The average price paid by wholesalers to manufacturers for products to be distributed to retailers. |
| Average Wholesale Price (AWP) | The manufacturer's <u>suggested</u> wholesale price to the retailer which is listed in either the Red or Blue Book. |
| Wholesale Acquisition Cost (WAC) | The wholesaler's net payment made to purchase a drug product from the manufacturer, net of purchasing allowances and discounts. |

It is also helpful to consider how these terms relate to the adequacy measures estimated by this study. There are two components to this measure: dispensing and ingredient. All of the terms in Table 1.1 relate to the latter component. With respect to drug ingredients, the cost to the pharmacist is referred to as the Actual Acquisition Cost (AAC). Given the complexity of measuring these costs, States have used an approximation which is referred to as Estimated Acquisition Cost (EAC).

The information used to estimate these acquisition costs is generally the Average Wholesale Price (AWP) which is not, however, a direct measure of true acquisition costs. This is actually the suggested wholesale price to the pharmacy; in reality, wholesalers compete with each other by offering pharmacies different discounts from this price. In addition, some pharmacies purchase directly from the manufacturer, skipping the wholesaler entirely and thereby reducing costs. Estimates of the range of discounts from AWP available to pharmacies include 10-18 percent (HCFA, 1992). In light of this,

4

the majority of States estimate acquisition costs by deducting a percentage from the published AWP. Others use information on the Wholesaler's Acquisition Cost (WAC) and add a certain percentage. This reflects the fact that wholesalers commonly add a percentage mark-up to their own acquisition costs when establishing a price to charge the pharmacy. Ultimately, these State estimates may be an under- or over-statement of actual costs. This study uses data on wholesalers' invoices to pharmacies by region to gain some insight on pharmacists' AAC by State.

### 1.2.1 Legislation

Over the years, there has been significant Federal legislation on Medicaid payment policy for prescription drugs. The impetus for this legislation has often been the desire to control program costs for prescription drug benefits. As noted, controls on the amounts paid for the ingredient cost of prescriptions had been in the form of Federal upper limits, or MACs, but concerns with access led to increased flexibility for the States. MAC refers to a set dollar limit above which pharmacists can not be reimbursed for selected products. In 1987, under new Federal regulations (52 FR 28648), States were given more flexibility in establishing these MACs and other payment methodologies. State reimbursement policy now varies for the drugs which are multi-source and those which are not. For the multi-source drugs, there can be State MACs in place that differ from the Federal maximums, although States' payments must stay within the Federal aggregate expenditure limits. For other drugs, States reimburse for the lower of the pharmacy's usual and customary charges or the EAC as estimated by the State.

Section 4401(d)(4) of OBRA 1990 requires the Secretary to conduct a "Study on reimbursement rates to Pharmacists." The specific mandates for the study are to determine:

"(i) the adequacy of current reimbursement rates to pharmacists under each State medical assistance programs (sic) conducted under Title XIX of the Social Security Act; and

(ii) the extent to which reimbursement rates under such programs have an effect on beneficiary access to medications covered and pharmacy services under such programs."

The 1990 law did not provide for any increase in the allocations for pharmacy payments, but there can be no reductions to drug product and dispensing fee reimbursements from their January 1991 levels until 1995. However, changes in terms of the requirements for prior approval (excluding newly approved pharmaceutical products for six months), requirements for use of generic substitutions, and under prior approval programs, response within 24 hours of a given request, may lead to increased paperwork and uncertainty for pharmacies. OBRA 1993 amended provisons of OBRA 1990, States may subject any covered outpatient