Exhibit K

CONTESTED PRIVILEGED PERSON MOST KNOWLEDGEABLE

DEPOSITION OF JAMES BREEN

THE STATE OF FLORIDA

EX REL. VEN-A-CARE OF THE FLORIDA KEYS, INC.

VS.

BOEHRINGER INGELHEIM CORPORATION

October 2, 2006

CONDENSED TRANSCRIPT AND KEYWORD INDEX



(310) 207.8000   Los Angeles        (916) 922.5777   Sacramento      (818) 702.0202   San Fernando Valley
(949) 955.0400   Orange County      (408) 885.0550   San Jose        (858) 455.5444   San Diego
(415) 433.5777   San Francisco      (951) 686.0606   Inland Empire   (760) 322.2240   Palm Springs

1    First DataBank?
2        **A.   I don't know.**
3        Q.   Okay.  On the - on 38724, the date is
4    April 20th, 2004.
5            Do you see that?                         05:21
6        **A.   Yes.**
7        Q.   And it says to Michael Nelson.
8            Is Michael Nelson employed by First
9    DataBank?
10       **A.   Yes.**                                05:21
11       Q.   And do you see it says under that:
12   Company:  First DataBank?
13       **A.   Yes.**
14       Q.   And it's from Amy Malone.
15           Do you see that?                         05:21
16       **A.   Yes.**
17       Q.   And it's on Cardinal Health -- or the fax
18   page says Cardinal Health.
19           Do you see that?
20       **A.   Yes.**                                05:21
21       Q.   It says:  Subject:  Ribavirin.
22       **A.   Yes.**
23       Q.   Although it is spelled wrong.
24       **A.   Right.**
25       Q.   And there it says it has two pages, and it  05:21

Page 21

1    is an employee of McKesson?
2        **A.   Yes.**
3        Q.   And McKesson is a wholesaler; is that
4    right?
5        **A.   Yes.**                               05:22
6        Q.   As is Cardinal Health?
7        **A.   Yes.**
8        Q.   And in the initial e-mail, the April 18th
9    e-mail, Kay Morgan from First DataBank asks re:
10   WAC price from Mr. Crusit; is that right?       05:22
11       **A.   Yes.**
12       Q.   And he responds with a price.
13           Do you see that?
14       **A.   Yes.**
15       Q.   And that's what he's listed out at the  05:22
16   side; is that right?
17       **A.   It would appear that way, yes.**
18       Q.   Okay.  Do you know -- strike that.
19           Moving back to the last page, 38727.
20       **A.   Yes.**                               05:23
21       Q.   This appears to be a fax page from Kay
22   Morgan to Mark Redman and Bob Hawley.
23       **A.   Yes.**
24       Q.   Mr. Hawley is sitting here with us today;
25   is that correct?                               05:23

Page 23

1    says:  Michael, let me know if you have any issue
2    with this.  Amy.
3            Do you see that?
4        **A.   Yes.**
5        Q.   And the next page is a revised new product  05:21
6    proposal.
7            Do you see that?
8        **A.   Yes.**
9        Q.   And again, for the Ribavirin?
10       **A.   Yes.**                                05:21
11       Q.   Moving on to the next page, 38726.
12       **A.   Yes.**
13       Q.   Does this appear to be an e-mail from Kay
14   Morgan or starting out from Kay Morgan to a Ramon
15   Crusit?                                         05:22
16       **A.   Yes.**
17       Q.   On Sunday April 18th, 2004?
18       **A.   Yes.**
19       Q.   And Mr. Crusit responds above.
20           Do you see that?                         05:22
21       **A.   Yes.**
22       Q.   And his e-mail address is
23   Ramon.Crusit@McKesson.com?
24       **A.   Yes.**
25       Q.   From that, would you take that Mr. Crusit  05:22

Page 22

1        **A.   Yes.**
2        Q.   And Mr. Redman we already identified as
3    another member of the Hearst legal counsel.
4        **A.   Yes.**
5        Q.   Okay.  And the date of that fax is 4/15;  05:23
6    is that right?
7        **A.   Yes.**
8        Q.   Okay.  And it says there are two pages.
9        **A.   Yes.**
10       Q.   Okay.  Now, Ms. Morgan writes at the    05:23
11   bottom:
12           Called Debbi Kane at number in
13           letter.  Number incorrect.
14           Called Harvey Winetraub and asked
15           for WACs.  Harvey stated they do        05:23
16           not have one priced for
17           wholesalers.  I asked which of
18           prices on attached should be
19           used.  After discussion Harvey
20           will get back to me.  Kay Morgan        05:23
21           4/15/2004.
22           Do you see that?
23       **A.   Yes.**
24       Q.   Then, on the top of that, 4/21/04:
25           Received message from Harvey            05:24

Page 24

| | |
|---|---|
| 1 Winetraub on 4/16 indicating they | 1 Q. And a price for a customer not under |
| 2 do not have WACs and I should use | 2 contract is not a WAC price; is that right? |
| 3 my own judgment. Contacted | 3 MR. ANDERSON: Objection. Form. |
| 4 wholesalers per attached. WAC | 4 THE WITNESS: Please repeat the question. |
| 5 equals system price. Kay Morgan,     05:24 | 5 BY MS. TORGERSON:     05:27 |

1    Winetraub on 4/16 indicating they
2    do not have WACs and I should use
3    my own judgment. Contacted
4    wholesalers per attached. WAC
5    equals system price. Kay Morgan,     05:24
6    4/21/04.
7         Do you see that?
8    A. Yes.
9    Q. Do you know if Kay Morgan ever advised
10   Harvey Winetraub that he was going to use a -- she     05:24
11   was going to use the system's price as Warrick's
12   WAC price?
13        MR. ANDERSON: Objection. Form.
14        THE WITNESS: I don't know.
15   BY MS. TORGERSON:     05:24
16   Q. You don't know.
17   A. I don't know.
18   Q. You don't. Do you know what prices were
19   entered into the NDDB for the Ribavirin capsules?
20        MR. ANDERSON: Objection. Form.     05:24
21        THE WITNESS: No, I don't.
22        MR. KERN: Objection. Assumes facts.
23        MS. TORGERSON: Can we go off the record
24   for a second.
25        THE VIDEOGRAPHER: Going off the record,     05:24
                              Page 25

1    Q. And a price for a customer not under
2    contract is not a WAC price; is that right?
3         MR. ANDERSON: Objection. Form.
4         THE WITNESS: Please repeat the question.
5    BY MS. TORGERSON:     05:27
6    Q. Sure. That wasn't a very good question.
7         You would not expect a WAC price to be the
8    same price as a manufacturer would sell to a
9    customer not under contract. What do you
10   understand a WAC price to be -- strike that.     05:27
11        What do you understand a WAC price to be?
12   A. The manufacturer's list a catalog price to
13   wholesalers.
14   Q. Right. And a manufacturer wouldn't have a
15   price -- wouldn't be in a contract position with --     05:27
16   would sell for a much lower amount to a wholesaler
17   than it would to someone without a contract.
18        MR. ANDERSON: Objection form.
19        MR. KERN: Lacks foundation.
20        THE WITNESS: I don't know for sure.     05:27
21   BY MS. TORGERSON:
22   Q. All right. You are not aware of any
23   communication from Warrick saying that the system
24   price should be used as a WAC price for the
25   Ribavirin capsules.     05:28
                              Page 27

1    the time is 5:24 p.m.
2         (Whereupon, a brief recess was
3         taken.)
4         THE VIDEOGRAPHER: Back on the record, the
5    time is 5:26 p.m.     05:26
6    BY MS. TORGERSON:
7    Q. Looking back at your prior deposition,
8    Exhibit 424, can you find the Ribavirin capsules on
9    Exhibit 424?
10        I will tell you the NDC number is 1523-1,     05:26
11   2, 3 and 4.
12   A. Yes.
13   Q. Okay. And can you read for me the WAC
14   price that was entered by First DataBank for NDC
15   599301523-1?     05:26
16   A. WAC 593.04.
17   Q. And that is looking back at your -- this
18   deposition Exhibit No. 2, is the system price that
19   was reported by Warrick; is that right?
20   A. Yes.     05:26
21   Q. And that is the system price that was
22   identified by Warrick on this letter as the price
23   for customers not under contract.
24        Do you see that?
25   A. Yes.     05:27
                              Page 26

1    A. Correct.
2    Q. Yet that's what First DataBank entered; is
3    that right?
4    A. First DataBank is using the system price
5    as the WAC price.     05:28
6    Q. Right. And in order to determine what
7    that price was, First DataBank or -- or what price
8    it should use, using its own judgment, it contacted
9    two wholesalers: Cardinal Health and McKesson?
10   A. Correct.     05:28
11        MS. TORGERSON: I think I'll pass the
12   witness. And I'll pass the microphone, too.
13        MR. ANDERSON: It's okay. I'll project.
14        EXAMINATION
15   BY MR. ANDERSON:     05:28
16   Q. Mr. Breen, if you could, in addition, look
17   to Exhibit 425.
18   A. Okay.
19   Q. And --
20        MS. RANKIN: Can you just wait for us all     05:28
21   to get there. I apologize.
22        MR. ANDERSON: Sure. For the record, this
23   is Bates labeled FDB Florida 6841 through 6853.
24   Q. And specifically, if you look there at the
25   second page of Exhibit 425, do you see the     05:29
                              Page 28

7 (Pages 25 to 28)

JAMES BREEN