UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | MDL NO. 1456 |
| LITIGATION | ) | Civil Action No. 01-12257-PBS |
| | ) | Subcategory Case No.: 03-10643-PBS |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | Judge Patti B. Saris |
| | ) | |
| *The City of New York, et al.* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| *Abbott Laboratories, et al.* | ) | |
| | ) | |
| | ) | |

**DEFENDANT WYETH'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT AS TO WYETH PHARMACEUTICALS, INC. [SIC]**

Defendant Wyeth ("Wyeth"), pursuant to Local Rule 56.1, submits this Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts as to Wyeth Pharmaceuticals, Inc. [sic] ("Plaintiffs' Statement").[1]

**GENERAL RESPONSES AND OBJECTIONS**

Wyeth objects to the extent that Plaintiffs' Statement contains argumentative and unsupported allegations, including but not limited to those contained in the unnumbered headings improperly used by Plaintiffs throughout their Statement. Wyeth responds here only to the numbered paragraphs set forth in Plaintiffs' Statement and identifies those issues that are undisputed and those issues for which there exists a genuine issue of disputed material fact. Wyeth also objects to the extent that any part of Plaintiffs' Statement misstates, misconstrues, or

---

[1] Plaintiffs inadvertently identified Wyeth as Wyeth Pharmaceuticals, Inc. in its Motion for Partial Summary Judgment filed on May 15, 2009. These references were corrected by an errata sheet filed with Wyeth's consent on June 8, 2009 [Subcategory Case No.: 03-10643-PBS, Docket #82-2].

mischaracterizes the underlying testimony or documents upon which Plaintiffs' Statement purports to be based or that the unnumbered headings purport to introduce. Wyeth objects to the extent that Plaintiffs characterize testimony and documents as referring or applying to any product or aspect of Wyeth's business that falls outside the scope of the targeted Federal Upper Limit ("FUL") discovery set forth in Case Management Order No. 33 ("CMO 33"). Finally, all of the alleged undisputed facts concerning Average Wholesale Price ("AWP") in Plaintiffs' Statement are immaterial and irrelevant to Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion") because FULs were never based on AWPs. *See* Defendants' Joint 56.1 Statement ("Defs. 56.1 Stmt.") filed on May 15, 2009, at ¶ 34 [Subcategory Case No.: 03-10643-PBS, Docket #55], which is incorporated herein by reference.

These responses and objections are incorporated, to the extent appropriate, into each specific response to the numbered paragraphs in Plaintiffs' Statement.

## SPECIFIC RESPONSES

**1.  The Wyeth drug and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto. This exhibit also sets forth Wyeth's Published AWPs and WACs for this Drug and NDCs, any operative Federal Upper Limit ("FUL") and Wyeth's AMPs. The exhibit notes which NDCs are associated with package sizes that set the FUL.**

**Response:**  Wyeth does not dispute that Exhibit A to Plaintiffs' Statement purports to list the Wyeth drug and associated National Drug Codes ("NDCs") that Plaintiffs claim to have examined in connection with Plaintiffs' Motion. Wyeth also does not dispute that Exhibit A purports to set forth AWPs, WACs, any operative FUL, and Wyeth's AMPs for the Wyeth drug and NDCs that Plaintiffs claim to have examined. Wyeth disputes that it reported AWPs or WACs for Lorazepam during the time period in question. *See* responses to paragraphs 2, 6 and 9, *infra*. Wyeth does not dispute that Exhibit A purports to note which NDCs are associated with the package sizes that set the FUL. Wyeth disputes the data set forth in Exhibit A to the extent it

is not properly supported by evidence in the record.  Plaintiffs have cited no evidentiary basis for the data set forth in Exhibit A, as required by Local Rule 56.1.

      **2.**      **The specific Wyeth drug at issue is the Lorazepam 1MG Tablet.**

**Response:**  Wyeth does not dispute that the Lorazepam 1 mg tablet ("Lorazepam") is one of the nine drugs, identified by the Generic Code Number or GCN, assigned by First Databank to a "therapeutically equivalent" group of drugs, that is the subject of the targeted FUL discovery set forth in CMO 33.

      **3.**      **Wyeth manufactures prescription drugs and transacts business in the State and City of New York.**  *See* **Defendant Wyeth's Answer and Affirmative Defenses to Revised First Amended Consolidated Complaint, ("Wyeth Answer") [Docket #5640] at ¶44.**

**Response:**  Wyeth admits that it manufactures prescription drugs and transacts business in the State and City of New York.

      **4.**      **Wyeth executed the federal Medicaid rebate agreement.**  *See* **Wyeth Answer at ¶116-123, ¶132.**

**Response:**  Wyeth admits that it executed a Medicaid Rebate Agreement with the Secretary of Health and Human Services.

      **5.**      **Wyeth launched Lorazepam in 1998 and ceased selling it in 2003.**  *See* **Wyeth 30(b)(6) (Truex, Richard) dated 6/19/08 ("Wyeth 30(b)(6)(Truex) 6/19/08 Dep.") (Exhibit B) at 109:2-4;** *see also* **Wyeth 30(b)(6) (Bartone, Dominick) 5/22/08 ("Wyeth 30(b)(6)(Bartone) 5/22/08 Dep.) (Exhibit C) at 35:6-8.**

**Response:**  Wyeth admits that it launched Lorazepam tablets in 1998.  Wyeth disputes that the portions of Mr. Bartone's deposition testimony cited in paragraph 5 of Plaintiffs' Statement pertain to Lorazepam.  Wyeth nonetheless admits that it ceased booking direct sales for Lorazepam in the United States in 2003.  *See* excerpts of the Deposition of Dominick Bartone ("Bartone Dep.") at 34:18-35:1; 35:9-11; 36:5-11, attached collectively as Exhibit A to the Declaration of Kelly J. Davidson.

**6.** At all times, from 1997 to 2005, Wyeth reported or caused to be reported the AWPs (in the form of SWPs) for its drugs to the publishing compendia. *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 63:7-64:22; 74:22-75:8; 113:5-114:11. Wyeth knew the publishing compendia would publish the SWPs as AWPs, without altering the SWPs reported. *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 63:7-64:22; 81:17-82:2.

**Response:** The alleged undisputed facts in paragraph 6 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs. *See* Defs. 56.1 Stmt. at ¶ 34. To the extent these allegations are deemed material, Wyeth disputes that at all times from 1997 to 2005, it reported or caused to be reported the AWPs (in the form of SWPs) for its drugs to the publishing compendia. Plaintiffs do not provide an evidentiary basis for this assertion, because the testimony cited does not support this asserted fact. To the contrary, Dr. Truex testified that he was not aware of a time between 1997 and 2005 where Wyeth reported an AWP to the compendia for Lorazepam, but that Wyeth instead provided a "suggested AWP" for Lorazepam during the time period in question. *See* Deposition excerpts of Richard Truex, Ph.D. ("Truex Dep.") at 63:13-16, attached collectively as Exhibit B to the Declaration of Kelly J. Davidson. Wyeth disputes that the acronym "SWP" was used by Dr. Truex in his testimony or defined by Wyeth to mean "suggested AWP." Wyeth disputes that it knew the publishing compendia would publish suggested AWPs as AWPs, without altering the suggested AWPs reported. Although Dr. Truex testified that it appears that the compendia published the suggested AWP as the AWP for Lorazepam (*id.* at 81:20-82:5), his testimony as a Wyeth corporate designee was that once the suggested AWP went to the compendia, "it was out of our hands" and that Wyeth did not "know what they did once it was in their shop." *Id.* at 63:21-64:9. Dr. Truex speculated (over objection) about what the pricing compendia actually did with Wyeth's suggested AWPs. *Id.* at 64:4-22; *see also* 94:1-95:3.

**7.** Wyeth reported or caused to be reported the same AWPs to all three of the national compendia. *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 74:22-75:8.

4

**Response:**  The alleged undisputed facts in paragraph 7 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs.  *See* Defs. 56.1 Stmt. at ¶ 34.  To the extent these allegations are deemed material, the deposition testimony cited does not support the allegation in paragraph 7 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  Wyeth disputes that it reported AWPs for Lorazepam during the time period in question.  *See* response to paragraph 6, *supra*.  Although Dr. Truex testified that Wyeth would not have reported different suggested AWPs to the compendia, and further acknowledged that First DataBank, Red Book and Medispan are compendia, he did not testify that Wyeth actually supplied a suggested AWP to all three compendia for Lorazepam at all times during the time period in question.  *See* Truex Dep. at 74:11-75:8.

**8.** **Wyeth knew and controlled the AWPs for its drugs that were published by the national drug pricing compendia.  Wyeth's price catalog unit verified that the correct AWPs were published by the pricing services.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 117:2-22.  If Wyeth became aware that the published AWPs were incorrect, Wyeth would request the compendia to publish the correct AWPs.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 95:14-20.**

**Response:**  The alleged undisputed facts in paragraph 8 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs.  *See* Defs. 56.1 Stmt. at ¶ 34.  To the extent these allegations are deemed material, Wyeth disputes the first sentence because it contains argument and conclusory statements that are not proper to include in a Local Rule 56.1 statement.  Wyeth also disputes the assertions in the first sentence because they are not supported by any reference to the evidentiary record as required by Local Rule 56.1.  Wyeth disputes that it reported AWPs for Lorazepam during the time period in question.  *See* response to paragraph 6, *supra*.  Wyeth disputes that its price catalog unit would verify that correct AWPs

5

were published by the pricing services. Instead, Wyeth's price catalog unit would verify, only if asked to do so by the compendia, that the compendia had an accurate record of the suggested AWPs Wyeth may have sent to the compendia. Truex Dep. at 117:15-21. The statement in the last sentence of paragraph 8 was elicited over objection (*id.* at 95:14-20) and was followed by Dr. Truex' testimony that he did not recall any occasion where Wyeth requested the compendia to publish the "correct AWPs" for Lorazepam. *Id.* at 95:22-96:3.

**9.    At all times, from 1997 to 2005, Wyeth reported or caused to be reported WACs or DPs for its drugs to the publishing compendia.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 45:13-20.**

**Response:**  The deposition testimony cited does not support the allegation in paragraph 9 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1. In fact, the record evidence is to the contrary: Wyeth generally did not report WACs or direct prices to the pricing compendia for Lorazepam. Truex Dep. at 113:5-114:12. Indeed, after having his recollection refreshed with documents shown to him by Plaintiffs' counsel (*id.*), Dr. Truex testified that his earlier recollection (reflected in the section of the transcript selectively cited in Plaintiffs' Statement) was "called into question" and confirmed that Wyeth only reported a "suggested AWP" for Lorazepam. *Id.* at 114:2-11. *See also id.* at 117:1-6 (confirming that only a "suggested AWP" was provided); *id.* at 108:10-15 and Exhibit 12 (confirming that a communication pertaining to Lorazepam showed that Wyeth did not report WACs for Lorazepam).

**10.    Wyeth referred to WACs and DPs interchangeably.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 77:21-78:7; 86:19-22.**

**Response:**  Wyeth admits that it generally defines WAC to be the same as a direct, list, book or catalog price. Truex Dep. at 77:21-78; 78:16-79:1.

**11.    Wyeth reported or caused to be reported the same WACs/DPs to all three of the national compendia.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 77:21-78:11.**

**Response:**  The deposition testimony cited does not support the allegation in paragraph 11 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  In fact, the record evidence is to the contrary.  *See* response to paragraph 9, *supra*.

**12.    Wyeth knew and controlled the WACs/DPs for its drugs that were being published by the national drug pricing compendia.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 66:1-69:3.  In the ordinary course of business, Wyeth received product verifications from Red Book.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 71:19-22.  In the ordinary course of business, Wyeth confirmed the published WACs/DPs and returned the verification with any necessary changes.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 69:19-69:3.**

**Response:**  Wyeth disputes the first sentence because it contains argument and legal conclusions that are not proper to include in a Local Rule 56.1 statement.  Wyeth also disputes the first sentence because the deposition testimony cited does not support them, and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  Wyeth disputes that it knew and controlled the WACs/DPs for its drugs that may have been published by the national drug pricing compendia for Lorazepam.  *See* response to paragraph 9, *supra*.  Wyeth also disputes that the deposition testimony cited as asserted support for the first sentence of paragraph 12 pertains to Lorazepam.  *See* Truex Dep. (Ex. B) at 66:5-13 (introducing a Red Book Product Listing Verification containing certain NDCs for the brand Ativan, not the generic Lorazepam); *id*. at 70:10 (confirming that the document contains NDCs for the brand Ativan, not the generic Lorazepam).  Wyeth admits that it received Product Listing Verifications from Red Book, but disputes that there is any evidence in the record that these documents pertained to Lorazepam.  There is also no evidence cited to support the assertion in the third sentence that Wyeth confirmed a published WAC or DP for Lorazepam and returned the verification with any necessary changes to Red Book.  Notably, the document being discussed during the testimony cited in the second and third sentences of paragraph

7

12 does not pertain to Lorazepam. *See* Truex Dep. at 70:5-10 (confirming that the document being shown to him by Plaintiffs' counsel contained no NDCs for Lorazepam).

  **13.** **Wyeth knows that Medicaid reimbursements can be based on AWPs.** *See* **Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 41:9-42:2; 43:4-6.**

  **Response:** The alleged undisputed facts in paragraph 13 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs. *See* Defs. 56.1 Stmt. at ¶ 34. To the extent these allegations are deemed material, the deposition testimony cited does not support the assertion in paragraph 13 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1. Wyeth admits that it knew that if a generic product did not have an AWP, the entity dispensing the product would not be reimbursed for that product by any payor. Truex Dep. at 41:9-42:2; 42:21-43:6; 43:4-6; 60:19-22. Dr. Truex merely confirmed, in response to a statement by Plaintiffs' counsel, that Medicaid was an example of a payor that would not reimburse for a generic product if that product did not have an AWP. *Id.* at 41:15-20. Wyeth disputes Paragraph 13 to the extent that it mischaracterizes Dr. Truex' testimony as being specific to Medicaid.

  **14.** **Wyeth knows that CMS sets the FUL on published prices for generic products.** *See* **Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 137:5-16. Wyeth understands that CMS establishes a FUL when there are at least three manufacturers of a particular generic product.** *Id.* **Wyeth's understanding is that the FUL is equal to 150% of the lowest published price.** *Id.*

  **Response:** The deposition testimony cited does not support the assertion in the first sentence of paragraph 13 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1. The assertions in the second and third sentences of paragraph 14 reflect Dr. Truex' understanding of what the phrase "federal upper limit" means. Truex Dep. 137:5-16. Wyeth admits that it is Dr. Truex' understanding that the FUL is 150 percent of the lowest price published. *Id.* at 137:8-11. Wyeth admits that Dr. Truex confirmed the statement

by Plaintiffs' counsel that the FUL is established when there are three or more manufacturers of a particular generic product. *Id.* at 137:12-16.

**15.    Wyeth set AWPs at or near the AWPs set by the competing generic manufacturers selling the same generic drug.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 60:9-18.**

**Response:**  The alleged undisputed facts in paragraph 15 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs.  *See* Defs. 56.1 Stmt. at ¶ 34.  To the extent these allegations are deemed material, the deposition testimony cited does not support the assertion in paragraph 15 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  Wyeth disputes that it set AWPs.  *See* response to paragraph 6, *supra*.  Wyeth derived no benefit from what the AWP was (*id.* at 42:21-43:6), and strove to suggest AWPs that were no higher than necessary to sell its products.  *Id.* at 42:6-20; 43:7-17.  To that end, Wyeth admits that it sought to make sure its suggested AWPs were not higher than the AWPs of other generic manufacturers selling the same generic drug.  *Id.* at 42:6-20.

**16.    Wyeth did not factor in what wholesalers charged pharmacies in establishing suggested AWPs.  *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 100:6-102:13.**

**Response:**  The alleged undisputed facts in paragraph 16 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs.  *See* Defs. 56.1 Stmt. at ¶ 34.  To the extent these allegations are deemed material, Wyeth admits that what wholesalers charged pharmacies was not a factor it considered in arriving at a suggested AWP.

**17.    Wyeth's AWPs were not set based on actual prices, but rather based on its competitors' AWPs.  *Id.***

**Response:**  The alleged undisputed facts in paragraph 17 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs.  *See*

9

Defs. 56.1 Stmt. at ¶ 34. To the extent these allegations are deemed material, the deposition testimony cited does not support the assertion in paragraph 17 of Plaintiffs' Statement and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1. The phrase "actual prices" is not defined in Plaintiffs' Statement and is not addressed by or defined in the deposition testimony cited in paragraph 17 of Plaintiffs' Statement. Moreover, Wyeth disputes that it set AWPs. *See* response to paragraph 6, *supra*. Wyeth admits that it sought to make sure its suggested AWPs were not higher than the AWPs of other generic manufacturers selling the same generic drug. *Id.* at 42:6-20. *See* response to paragraph 15, *supra*.

**18.     According to a study Wyeth performed in the year 2000, the difference between AWP and WAC/DP ranged from 25% to 1,646%. Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 120:6 - 20. The difference between AWP and the customers' actual prices would be even greater.** *See* **Truex, Richard 124:20-125:8.**

**Response:**    The alleged undisputed facts in paragraph 18 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs. *See* Defs. 56.1 Stmt. at ¶ 34. To the extent these allegations are deemed material, Wyeth disputes any mischaracterizations by Plaintiffs as to the scope and content of the document being discussed in the cited deposition testimony and refers to that document for a full and complete statement of its provisions. Wyeth admits that the internal memorandum referred to in paragraph 18 contains a paragraph stating that the difference between AWP and direct price for the ESI Lederle oral solid lines was in the range identified. Truex Dep. at 120:12-17. With respect to the second sentence, the phrase "actual prices" is not defined in Plaintiffs' Statement and is not addressed by or defined in the deposition testimony cited in paragraph 18 of Plaintiffs' Statement. Although Wyeth admits that the direct or list price for Lorazepam contained in the internal memorandum may not reflect what customers were paying for the product because competition drove the price of Lorazepam down (*id.* at 124:20-125:2), it disputes that the internal memorandum contained any statements or conclusions

to the effect that the difference between AWP and the customers' "actual prices" would be even greater than the difference between AWP and direct or list price.

19.     **Wyeth's contract prices were lower than Wyeth's published WAC/DP.**  *See* **Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 125:8-126:14.**

**Response:**  Wyeth admits that contract prices for Lorazepam would generally tend to be lower than the direct, list or book prices in Wyeth's product catalog, but disputes that this was necessarily the case for every contract that may have been in place for Lorazepam.  Bartone Dep. at 125:19-126:9.  To the extent this paragraph is intended to suggest that Wyeth provided or reported WACs or DPs to any compendia for Lorazepam, the deposition testimony cited does not support this assertion and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  Wyeth disputes that it generally provided or reported WACs or DPs to any compendia for Lorazepam.  *See* response to paragraph 11, *supra*.

20.     **As competition progressed, the price Wyeth charged its customers would decline, but Wyeth never would lower its WAC/DP when it lowered the prices to its customers.**  *See* **Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) 46:5-48:22.**

**Response:**  Wyeth admits that the price for Lorazepam eroded very quickly after Wyeth entered the Lorazepam market in relation to the price that initially appeared in Wyeth's price list or catalog.  Truex Dep. at 46:5-47:11.  Wyeth admits that it did not release a new generic product list or catalog every time the price for Lorazepam dropped.  *Id.* at 48:1-9.  To the extent this paragraph is intended to suggest that Wyeth provided or reported WACs or DPs to any compendia for Lorazepam, the deposition testimony cited does not support this assertion and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  Wyeth disputes that it generally provided or reported WACs or DPs to any compendia for Lorazepam.  *See* response to paragraph 11, *supra*.

**21.** The majority of sales to Wyeth customers would be at a price less than the DP/WAC. *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 49:5-11.

**Response:** Wyeth admits that the majority of its sales of Lorazepam were likely to be at a price less than the direct or list price.

**22.** At all times from 1997 to 2005, Wyeth sold its drugs to the three national wholesalers and/or one of their predecessor companies. *See* Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 44:10 - 45:5.

**Response:** The deposition testimony cited does not support the assertions in paragraph 22 and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1. Wyeth admits that from 1997 to 2005, AmerisourceBergen, Cardinal, McKesson, and some regional wholesalers were direct customers of Wyeth.

**23.** The WAC, used interchangeably with Direct Price, reported or caused to be reported by Wyeth does not account for rebates paid to wholesalers. *See* Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 175:14-177:11.

**Response:** Wyeth admits that it generally defines WAC to be the same as a direct, list, book or catalog price. *See* response to paragraph 10, *supra*. Wyeth disputes, however, that WAC and direct price are necessarily interchangeable in the context of the hypothetical questions being posed by Plaintiffs' counsel. *See* Bartone Dep. at 176:5-177:6. The cited deposition testimony does not support the assertion in paragraph 23 that Wyeth "reported or caused to be reported" WAC or direct price for Lorazepam to any entity for any particular purpose. Of note, Wyeth disputes that it generally provided or reported WACs or DPs to any compendia for Lorazepam. *See* response to paragraph 11, *supra*. Wyeth admits that its direct prices do not account for rebates paid to wholesalers.

**24.** As a standard practice, Wyeth offered its wholesaler customers quarterly rebates that reduced the wholesalers' acquisition cost. *See* Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 129:11-131:2. Such quarterly rebates are based on net sales to the wholesaler - they are based on "sales less chargeback units, adjustments and returns." *See* Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 133:8-18.

12

**Response:**  The deposition testimony cited does not support the assertions in the first sentence of paragraph 24 and Plaintiffs therefore have failed to provide an evidentiary basis as required by local Rule 56.1.  Wyeth disputes that, as a standard practice, it offered its wholesaler customers quarterly rebates that reduced the wholesalers' acquisition cost.  Wyeth disputes any mischaracterizations by Plaintiffs as to the scope and content of the document being discussed in the cited deposition testimony and refers to that document for a full and complete statement of its provisions.  Wyeth admits that Mr. Bartone accurately read the phrase "sales less chargeback units, adjustments and returns" when responding to counsel's question concerning the content of sub-paragraph b of the document in question.

25.   **Wyeth sells drugs to pharmacies pursuant to contract.  *See* Wyeth 30(b)(6) (Bartone) 5/22/08 Dep. (Exhibit C) 64:9-14; 68:7-14.**

**Response:**  To the extent this statement implies that Wyeth always sells or sold its products to pharmacies pursuant to contracts, it is disputed.  Rather, Wyeth admits that during the period 1997 to 2005, it may have had contractual relationships with one or more of the major chain retail stores that covered generic products such as Lorazepam.  Bartone Dep. 68:7-14.

26.   **Wyeth's contract prices are generally lower than Wyeth's published prices.  *See* Wyeth 30(b)(6)(Bartone) 5/22/108 Dep. (Exhibit C) at 125:8-126:14.**

**Response:**  The phrase "published prices" is not defined in Plaintiffs' Statement.  To the extent this phrase refers to the direct, list or book prices in Wyeth's product catalog, Wyeth admits that contract prices for Lorazepam would generally tend to be lower than catalog prices, but disputes that this is necessarily the case for all contracts that may have been in place for Lorazepam.  Bartone Dep. at 125:19-126:9.  Wyeth disputes that it generally provided or reported WACs or DPs to any compendia for Lorazepam.  *See* response to paragraph 11, *supra*.

13

**27.** Wyeth offers discounts and promotions for its generic products to retail pharmacy customers. *See* Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 90:1-12. These discounts and promotions include free shelf-keeping units, extending a one-time 10% discount on initial stocking orders, and free goods. *See* Wyeth 30(b)(6)(Bartone) 5/22/08 Dep. (Exhibit C) at 91:6-93:10, 96:20-97:3, 99:14-20.

**Response:** Insofar as generic products are concerned, Wyeth admits that there were discounts and promotions available that may have gone directly to retailers. Bartone Dep. at 90:9-12. Examples of such discounts or promotions that may have been provided are free shelf-keeping units, extending a one-time 10% discount on initial stocking orders, and free goods. Each of these examples is described fully on pages 6-9 of Exhibit 5 to Mr. Bartone's deposition, portions of which Plaintiffs' counsel read into the record. *See, e.g.,* Bartone Dep. at 91:6-15; 96:16-97:3. Wyeth disputes any mischaracterizations by Plaintiffs as to the scope and content of the document being discussed in the cited deposition testimony and refers to that document for a full and complete statement of its provisions. There is no support for the implication in paragraph 27 that these promotions and discounts were routinely provided to all retail pharmacy customers for all generic products, let alone with respect to Lorazepam, which is the product at issue.

**28.** Wyeth's customers were interested in evaluating, and made purchasing decisions based on the reimbursement spread between its cost and the reimbursement price of an AWP. Wyeth believed it was at a competitive disadvantage because there were other drug manufacturers who reported higher AWPs. *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 130:17-131:9. Wyeth understood that retail customers were incentivized to purchase generic products with the largest difference between their acquisition cost and the reimbursement price. *Id.* Wyeth admits that it could have reported lower AWPs than it did, but Wyeth believes retailers would not have purchased their product. *See* Wyeth 30(b)(6)(Truex) 6/19/08 (Exhibit B) at 131:13-132:3.

**Response:** The alleged undisputed facts in paragraph 28 concerning AWP are immaterial and irrelevant to Plaintiffs' Motion because FULs were never based on AWPs. *See* Defs. 56.1 Stmt. at ¶ 34. To the extent these allegations are deemed material, Wyeth disputes the assertions in the first sentence because they are not supported by any reference to the evidentiary record as

required by Local Rule 56.1. Wyeth further disputes that its customers' business practices are material to Plaintiffs' Motion. Wyeth disputes the second and third sentences of paragraph 28 insofar as the cited deposition testimony concerns a document dated November 2005, which is at least two years after Wyeth ceased selling Lorazepam (*see* response to paragraph 5, *supra*) and after Wyeth had ceased manufacturing and selling all generic products. Bartone Dep. at 114:20-22. Wyeth also disputes Plaintiffs' characterization of Dr. Truex' testimony in the second, third and fourth sentences of Paragraph 28. Wyeth admits that Dr. Truex testified as follows:

> Q. I see that. It's on page 49675. And this slide is entitled "Wyeth's Proposed Position Medicaid." The second bullet reads, "Wyeth recommends use of a catalog-based, cost-plus system as is used by Medicaid in certain states."
>
> The first arrow reads, "This system will eliminate the 'advantage' created by companies that set artificially average high wholesale prices, AWP, and thereby 'market spread.'" Is that what you were just referring to?
>
> A. Yeah. We felt we were actually at a competitive disadvantage in that regard, so that's why we thought a more fair system that we wanted instituted was cost plus.
>
> Q. Why was Wyeth at a competitive disadvantage in that regard?
>
> A. Because there were other companies that were setting AWP's higher, which put us at a disadvantage when a retailer was choosing which product to dispense.
>
> Q. Because the retailer had an incentive to choose the generic alternative with the largest difference between the retailers' acquisition cost and the reported reimbursement price?
>
> A. That's true?
>
> MS. DAVIDSON: Objection, but you could have answered anyway.
>
> Q. So, Wyeth, Wyeth could have reported higher AWP's than it did, could it not?

15

|   |   |   |
|---|---|---|
| A. | | It could have.  We were not playing that game. |
| Q. | | Wyeth could have also reported lower AWP's than it did, correct? |
| A. | | We could have and not sold a product. |
| Q. | | Because with lower AWP's, the difference between the reimbursement price and the cost would have decreased? |

MS. DAVIDSON:  You can answer.

A:      Because the retailer had a choice and they wouldn't use our product.

*Id.* at 130:7-132:3

**29.     At all times, from 1997 to 2005, Wyeth has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute.  Wyeth reports AMPs to HHS.  *See* Wyeth Answer at ¶26.**

**Response:**  Wyeth admits that from 1997 to 2005, Wyeth calculated AMP on a quarterly basis for its products as required by the federal Medicaid rebate statute and reported AMPs to the Secretary of Health and Human Services.


Dated:  June 15, 2009                                             Respectfully submitted,


                                                                  /s/  Kelly J. Davidson\_\_\_\_
                                                                  Kelly J. Davidson
                                                                  S. Craig Holden
                                                                  M. Hamilton Whitman
                                                                  Elissa F. Borges
                                                                  Ober, Kaler, Grimes & Shriver
                                                                  A Professional Corporation
                                                                  120 East Baltimore Street
                                                                  Baltimore, Maryland 21202-1643
                                                                  (410) 685-1120
                                                                  (410) 547-0699

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Defendant Wyeth's Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts as to Wyeth was served this 15th day of June 2009 upon all counsel of record by electronic service, in accordance with Case Management Order No. 2, by sending a copy to Lexis Nexis File and Serve for posting and notification to all parties.

/s/
Kelly J. Davidson