UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*The City of New York, et al.*<br>*v.*<br>*Abbott Laboratories, et al.* | **MDL NO. 1456**<br>**Master File No.: 01-12257-PBS**<br>**Subcategory Case No: 03-10643-PBS**<br><br>**Judge Patti B. Saris** |

## DEFENDANT ETHEX CORPORATION'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO ETHEX CORPORATION

Pursuant to Rule 56.1 of the Local Rules of this Court, Defendant, ETHEX Corporation ("ETHEX") hereby submits its Response to Plaintiff's Statement of Undisputed Material Facts Applicable to Defendant Ethex Corporation filed May 15, 2009 in support of Plaintiff's Motion for Partial Summary Judgment.

**I.      ETHEX's General Response As to All Statements of Fact:**

ETHEX disputes all of Plaintiff's statements of fact to the extent that they relate to or purport to cover ETHEX drugs other than Isosorbide Mononitrate, 60 Mg, tablet SA or are beyond the scope of the targeted discovery ordered by the Court pursuant to CMO 33. ETHEX has taken little to no discovery outside the limited FUL issues identified by the Court's order. Any alleged statements of facts regarding any other drugs are beyond the scope of the Court's discovery order and are, as such, disputed.

ETHEX disputes all facts to the extent that they incorporate Plaintiff's argumentative and unsupported sub-headings in the Rule 56.1 Statement of Undisclosed Material Facts as to ETHEX Corporation.

## II.    ETHEX SPECIFIC FACTS

1.    The Ethex Drug and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto.  This exhibit also sets forth Ethex's WACs and Published AWPs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Ethex AMPs.  The exhibit notes which NDCs are associated with package sizes that set the FUL.

**RESPONSE:**

ETHEX denies that paragraph 1 is an undisputed material statement of fact. Exhibit A is a document prepared by Plaintiff for purposes of this litigation and ETHEX disputes any characterization of that document.   ETHEX specifically disputes any contention that ETHEX published WACs.

2.    The specific Ethex drug at issue is Isosorbide Mononitrate 60 MG Tablet.

**RESPONSE:**

ETHEX does not dispute that Isosorbide Mononitrate 60 mg. tablet SA is one of the nine drugs selected by the parties for targeted FUL discovery pursuant to CMO 33.

3.    ETHEX manufactures and sells prescription drugs in the State of New York, including the City of New York and in the Counties that are eligible for reimbursement under Medicaid.  *See* Ethex Corporation's Answer to the Revised First Amended Consolidated Complaint ("Ethex Answer") [Docket #4838] at ¶ 44.

**RESPONSE:**

ETHEX does not dispute that it has sold prescription drugs in the State of New York that are eligible for reimbursement under Medicaid.

4.    Ethex has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.  *See* Ethex Answer at ¶ 132.

**RESPONSE:**

ETHEX denies that paragraph 4 is a material statement of undisputed fact. ETHEX does not dispute that it has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.

5.      Ethex launched Isosorbide Mononitrate on March 16, 2000.  *See* Ethex Corporation 30(b)(6) (Christopher Keith) 6/24/08 Deposition Transcript (Exhibit B) at 37:20-22 (hereinafter "Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B)").

**RESPONSE:**

ETHEX does not dispute that it began selling Isosorbide Mononitrate on or about March 16, 2000.

6.      At the time of launch of a new product Ethex sets an AWP for its drugs. *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:7-22.  Ethex has only one AWP at any time.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 48:17-19.

**RESPONSE:**

ETHEX denies paragraph 6 is a material statement of undisputed fact.  ETHEX does not dispute that at the time of the launch of Isosorbide Mononitrate, it set an AWP for the drug.

7.      Ethex reported an AWP for its drugs to all the major pricing compendia - First DataBank, Medi-Span and Redbook.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 68:10-20; 135:19-21.

**RESPONSE:**

ETHEX denies that paragraph 7 is a material statement of undisputed fact. ETHEX disputes paragraph 7 to the extent that the term "all major pricing compendia" is

vague and ambiguous.  ETHEX does not dispute that it reported its AWP for Isosorbide Mononitrate to First DataBank, Medi-Span, and Redbook.

8.     Ethex reported the same AWP to all three compendia.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:4-6.

**RESPONSE:**

ETHEX denies that paragraph 8 is a material statement of undisputed fact. ETHEX does not dispute that when it reported its AWP for Isosorbide Mononitrate it reported the same number which was ETHEX's AWP for Isosorbide Mononitrate.

9.     Ethex knew and controlled the AWPs for its drugs that were published by the national drug pricing compendia. Ethex knew that the pricing compendia would publish the AWPs that Ethex provided to them.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 142: 16-143 :1.

**RESPONSE:**

ETHEX denies that paragraph 9 is a material statement of undisputed fact. ETHEX disputes that it "controlled" the AWPs for its drugs, whatever that term might mean.  ETHEX disputes that it ever dictated or instructed any drug pricing compendia on how it should use the AWP reported to it by ETHEX.  ETHEX does not dispute that it was aware that drug pricing compendia published an ETHEX AWP for Isosorbide Mononitrate.  ETHEX disputes that the AWP it set or reported to the pricing compendia affected or related to any FUL established by CMS for Isosorbide Mononitrate.

10.    All published AWPs reflected what Ethex submitted to them: Redbook would send a "Product Listing Verification" asking Ethex to "confirm that the way the

product is listed is correct." *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 144:9-145:6.

**RESPONSE:**

ETHEX denies that paragraph 10 is a material statement of undisputed fact. ETHEX is not aware of what "all published AWPs" reflect and therefore disputes that statement. ETHEX does not dispute that Redbook would send a "Product Listing Verification" and requested ETHEX to confirm the AWP provided to them. ETHEX disputes that it ever dictated or instructed Redbook or any other publisher on the "correct" number to publish. ETHEX disputes that the AWP it set or reported to the pricing compendia affected or related to any FUL established by CMS for Isosorbide Mononitrate.

11.     Ethex set a WAC for its products and only had one WAC at a given time. *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 49:17-20.

**RESPONSE:**

ETHEX denies that paragraph 11 is a material statement of undisputed fact. ETHEX does not dispute that it set an internal WAC for Isosorbide Mononitrate. ETHEX disputes that it ever reported any WAC to any pricing compendia or that any pricing compendia published a WAC for ETHEX.

12.     Ethex did not report WACs to the publishing compendia because it considers WAC a "competitive price". *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 70:1-5.

**RESPONSE:**

ETHEX denies paragraph 12 is a material statement of undisputed fact. ETHEX does not dispute that it did not report WACs to the publishing compendia.

13.     Ethex knows that Medicaid reimbursements can be based on WACs, AWPs and FULs. *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 72:2-10.

**RESPONSE:**

ETHEX denies that paragraph 13 is a material statement of undisputed fact. ETHEX does not dispute that its representative testified that he believed that Medicaid reimbursements could be based on WACs, AWPs or FULs. CMS, however, has testified that it did not set FULs based on published AWPs. *See ¶ 34 of Local Rule Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims.* CMS further testified that it considered other factors beyond the compendia's published prices in setting a FUL. ETHEX disputes that it ever reported WACs for Isosorbide Mononitrate to any pricing compendia.

14.     Ethex knew that its published prices were used for Medicaid reimbursement purposes. *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 70:19-71:12. Ethex provided its customers with AWPs because "[i]t's a price that – that they need to have for reimbursement purposes." Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 71:1-2.

**RESPONSE:**

ETHEX denies that paragraph 14 is a material statement of undisputed fact. ETHEX does not dispute that its representative testified that he believed that Medicaid reimbursements may be based on AWPs. CMS, however, has testified that it did not set

FULs based on published AWPs.  *See ¶ 34 of Local Rule Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims*.  CMS further testified that it considered additional factors beyond the pricing compendia's published prices when setting a FUL.  ETHEX disputes that it ever reported WACs for Isosorbide Mononitrate to any pricing compendia.  ETHEX further disputes that its AWP affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

15.     Ethex knows that CMS sets the Federal Upper Limit ("FUL") by taking the lowest published price and multiplying it by 150%.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 72:15-73:2.

**RESPONSE:**

ETHEX denies that paragraph 15 is a material statement of undisputed fact. ETHEX does not dispute that its representative testified that he believed that CMS may set the Federal Upper Limit ("FUL") by taking the lowest WAC and multiplying it by 150%.  ETHEX disputes, however, that CMS always sets the FUL by taking the lowest published price and multiplying by 150%.  As set forth in Defendants Motion for Summary Judgment, CMS often set the FUL without regard to the lowest published price.  Further, ETHEX reported AWPs only to the pricing compendia and CMS has testified that it would not use AWPs to set a FUL.  *See ¶ 34 of Local Rule Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims*.  ETHEX disputes that its published AWPs affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

16.    Ethex knows that and admits that its reported AWPs were not tethered to the actual prices that anyone pays.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 150:10- 19.

**RESPONSE:**

ETHEX denies that paragraph 16 is a material statement of undisputed fact. ETHEX does not dispute that its AWP is not an average of the actual prices paid by wholesalers or retailers.  ETHEX, however, disputes that it has ever represented that its AWP was an average of the price actually paid by wholesalers or retailers for its drugs. ETHEX further disputes that its AWP affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

17.    Ethex defined AWP as a "list price."  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 148:7-11.

**RESPONSE:**

ETHEX denies that paragraph 17 is a material statement of undisputed fact. ETHEX does not dispute that it regards AWP as a list price.

18.    Ethex's AWPs were not set based on actual prices but rather Ethex established its AWPs based on its competitors' AWPs.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:20-137:15.

**RESPONSE:**

ETHEX denies that paragraph 18 is a material statement of undisputed fact. ETHEX does not dispute that its AWP for Isosorbide Mononitrate is a list price and does not reflect an average of prices actually paid.  ETHEX disputes that it ever represented that its AWP was an average of actual prices paid for Isosorbide Mononitrate.

19.     At launch, Ethex set its AWPs at a price just below 90% of the AWPs of the branded versions of the drugs in order to be considered a generic.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:20-137:7.

**RESPONSE:**

ETHEX denies that paragraph 19 is a material statement of undisputed fact. ETHEX does not dispute that at the time of the launch of Isosorbide Mononitrate, it set the AWP for Isosorbide Mononitrate at or below 90% of the AWP of the branded version of the drug.

20.     After launch, Ethex would set the AWP "in line with the competition," so that its AWPs were neither the lowest nor the highest.  Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 137:8-15.

**RESPONSE:**

ETHEX denies that paragraph 20 is a material statement of undisputed fact. ETHEX does not dispute that in setting an AWP for Isosorbide Mononitrate, it took into account competitors' published AWPs.

21.     When Ethex changed the contract price of a drug, it did not change the AWP for that drug.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 163:8-20; *see also* Exhibit C (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 20 (email from Lew Soars, Ethex Project Manager to Trisha Reeves including attachment listing new contract pricing for Isosorbide Mononitrate)).

**RESPONSE:**

ETHEX denies that paragraph 21 is a material statement of undisputed fact. ETHEX does not dispute that when it changed the contract price of Isosorbide

Mononitrate, it did not necessarily change the AWP for that drug.  ETHEX disputes that it ever represented that its AWP was equivalent to any particular contract price for Isosorbide Mononitrate.

22.    Every contract Ethex had with its customers offered contract pricing below WAC, even before any rebates or credits were applied.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 78:16-19; *see also* Exhibit D (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 7 (Ethex Price Listing)).

**RESPONSE:**

ETHEX denies that paragraph 22 is a material statement of undisputed fact. ETHEX does not dispute that it generally sold Isosorbide Mononitrate to its contract customers at a price below ETHEX's internal WAC.  ETHEX disputes the reference to "every contract."  ETHEX disputes that any contract it might have entered into with its customers is relevant to CMS's establishment of a FUL for Isosorbide Mononitrate. ETHEX further disputes that it provided its internal WAC to the pricing compendia for publication.

23.    Ethex paid wholesalers rebates, discounts, chargebacks, billbacks, fees, incentives and other pricing allowances.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 60:16- 61:5.  Approximately 50-75% of Ethex's sales of Isosorbide Mononitrate occurred through wholesalers.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 64:5-19.

**RESPONSE:**

ETHEX denies that paragraph 23 is a material statement of undisputed fact. ETHEX does not dispute that it utilized "rebates," "discounts" and "chargebacks" in its

negotiation and sale of its products to wholesalers. ETHEX does not dispute that approximately 50-75% of its sales of Isosorbide Mononitrate occurred through wholesalers. ETHEX disputes that the incentives or pricing allowances it offered affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

24.     Rebates, discounts, chargebacks and other pricing incentives offered by Ethex reduce wholesalers' actual acquisition cost. *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 155:15-21; 156:20-157:7; *see also* Ethex Corporation 30(b)(6) (Rich Chibnall) 6/24/08 Deposition Transcript (Exhibit E) at 17:18-18:14 (hereinafter "Ethex 30(b)(6) (Chibnall) 6/24/0 8 Dep. (Exhibit E)").

**RESPONSE:**

ETHEX denies that paragraph 24 is a material statement of undisputed fact. ETHEX does not dispute that it utilizes "rebates," "discounts" and "chargebacks" in its negotiation and sale of its products to wholesalers. ETHEX disputes that "rebates," "discounts," or "chargebacks," reduce wholesalers' "actual acquisition cost" whatever that term may mean. ETHEX disputes that the incentives offered to wholesalers affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

25.     In a pricing proposal from Mr. Keith to Mr. Michael Plessinger at Cardinal Health, Ethex defined WAC as: "the price invoiced to wholesalers. The net price paid by wholesalers may be less." Exhibit F (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 18 (Letter from Chris Keith to Michael Plessinger at Cardinal Health offering bid proposal for Isosorbide Mononitrate)). "Contract Price" was defined as: "the price that will be charged to wholesaler for purchases made on behalf of its formulary customers. It is

exclusive of any rebates provided under this Agreement." *Id.* "Net Price" was defined as: "the contract price, less the rebates provided under other arrangements with the wholesaler." *Id.*

**RESPONSE:**

ETHEX denies that paragraph 25 is a material statement of undisputed fact. ETHEX disputes that the pricing proposal made by ETHEX to Cardinal affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate. ETHEX disputes any characterization of the document cited in paragraph 25.

26.     The net price to Cardinal, a major wholesaler, was another 10% off the contract price due to rebates offered by Ethex, reflecting the assorted discounts, rebates and fees that Ethex provided to its wholesaler customers.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 155:11-157:7.

**RESPONSE:**

ETHEX denies that paragraph 26 is a material statement of undisputed fact. ETHEX disputes that the referenced price to Cardinal affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

27.     McKesson, another major wholesaler, received the equivalent of an 18.5% rebate for including Isosorbide Mononitrate in its source program.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 89:8-91:1.  This is in addition to the other rebates, discounts, chargebacks and other pricing incentives that Ethex provides to McKesson that further reduces McKesson's net price below the super source contract price.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 91:2-95:17.

**RESPONSE:**

ETHEX disputes that paragraph 27 is a material statement of undisputed fact. ETHEX disputes that the referenced rebate received by McKesson for Isosorbide Mononitrate, affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

28.     AmeriSource Corporation ("ABC") was offered a 15% rebate for including Isosorbide Mononitrate in its source program, in addition to other rebates, discounts, chargebacks and other pricing incentives that reduced ABC's net price below WAC.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 171:17-173:21; *see also* Exhibit G (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 22 (Bid Proposal to ABC for Isosorbide Mononitrate)).

**RESPONSE:**

ETHEX denies that paragraph 28 is a material statement of undisputed fact. ETHEX disputes that the referenced rebate offered to AmeriSource Corporation affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate. ETHEX further disputes that the referenced WAC was ever reported by ETHEX to any pricing compendia.

29.     In fact, there was a large difference between the WAC price and the net price because discounts and rebates were taken off the WAC price.  *See* Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 53:1-10.

**RESPONSE:**

ETHEX denies that paragraph 29 is a material statement of undisputed fact and is in the nature of argument.   ETHEX disputes that the price paid by AmeriSource

Corporation affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.  ETHEX further disputes that the referenced WAC prices were ever published by any pricing compendia.

30.     Ethex negotiates contract prices with its pharmacy and warehousing chain customers.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 219:21-221:7; *see also* Exhibit H (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 39 (Bid Proposal to H-E-B for Isosorbide Mononitrate)); Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 30:14-18.

**RESPONSE:**

ETHEX denies that paragraph 30 is a material statement of undisputed fact. ETHEX does not dispute that it negotiates with pharmacy and warehousing chains. ETHEX disputes that its negotiations with pharmacy and warehousing chains affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

31.     Ethex provided its pharmacy and warehousing chain customers with rebates, discounts, incentives and other pricing allowances that further reduced the actual acquisition cost.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 221:19-222:1; *see also* Exhibit H; *see also* Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 30:19-33:6.

**RESPONSE:**

ETHEX denies that paragraph 31 is a material statement of undisputed fact. ETHEX does not dispute that it offers pricing incentives as part of its negotiations with pharmacy and warehousing chains.   ETHEX disputes the characterization that such pricing incentives "further reduce[] the actual acquisition cost," whatever that statement

might mean.  ETHEX disputes that its pricing incentives affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

32.     Whenever it launched a new product, Ethex would create an internal document for its sales representatives to give them an overview of the product Ethex was introducing.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 29:12-31:12; *see also* Exhibit I (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 3 (Copy of Ethex's Product Launch Plan for Isosorbide Mononitrate)).  The launch plan would include both Ethex's AWPs and WACs as well as those of Ethex's competitors.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 79:12-80:22; *see also* Exhibit I.

**RESPONSE:**

ETHEX denies that paragraph 32 is a material statement of undisputed fact. ETHEX does not dispute that it often created a document for sales representatives containing an overview of new products.  ETHEX disputes that this occurred for every new product it sold.  ETHEX also disputes that it "marketed the spread" whatever that term might mean as implied by Plaintiff's heading.  ETHEX disputes that its launch plan affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

33.     Ethex included its AWP, WAC and contract price in its bids to its customers.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 191:11-192:11; *see also* Exhibit J (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 27 (Contract between Ethex and OptiSource Group)).

**RESPONSE:**

ETHEX denies that paragraph 33 is a material statement of undisputed fact. ETHEX disputes the references to "its customers" as use of that term is not supported by the cited deposition excerpts.  ETHEX does not dispute that it included its AWP, WAC and contract price in its bid to OptiSource.   ETHEX disputes that it represented to OptiSource that its AWP or WAC were reimbursement prices.  ETHEX disputes that it "marketed the spread" whatever that term might mean as implied by Plaintiff's sub-heading.  ETHEX disputes that its bids to its customers affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

34.     At all times, from 1997 to 2005, Ethex has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute.  *See* Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 26:18-27:8; *see also Commonwealth of Massachusetts v. Mylan Laboratories*, 2008 WL 5650859, at *30 (D. Mass. Dec. 23, 2008).

**RESPONSE:**

ETHEX denies that paragraph 34 is a material statement of undisputed fact. ETHEX disputes that AMP calculations have any relevance to the establishment of a FUL.  ETHEX does not dispute that it has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute.

Dated: June 15, 2009

Respectfully submitted,

ETHEX Corporation

By its attorneys

/s/ C. Michael Moore

C. Michael Moore (*pro hac vice*)
Margaret "Peg" Donahue Hall
SONNENSCHEIN NATH & ROSENTHAL LLP
2000 McKinney Ave., Ste 1900
Dallas, TX 75201
(214) 259-0900 (Phone)
(214) 259-0910 (Fax)
mmoore@sonnenschein.com
pdhall@sonnenschein.com

Scott A. Birnbaum (BBO #543834)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210-1108
(617) 307-6100

Drew W. Marrocco
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, DC 20005
(202) 408-6400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 15th day of June, 2009, a true and correct copy of the foregoing document was delivered to all counsel of record by electronic service pursuant to the Court's Case Management Order No. 2.

<u>/s/ C. Michael Moore</u>
C. Michael Moore