## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————————— ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE PRICE ) | MDL NO. 1456 |
| LITIGATION ) | Civil Action No. 01-12257-PBS |
| ————————————————————) | |
| ) | Judge Patti B. Saris |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ) | |
| *City of New York, et al.,* ) | |
| ) | |
| *v.* ) | |
| ) | |
| *Abbott Laboratories, Inc. et al.* ) | |
| No. 03-10643-PBS ) | |
| ————————————————————) | |

### DEFENDANT SANDOZ INC.'S RESPONSE TO
### PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF
### UNDISPUTED FACTS AS TO SANDOZ INC.

Pursuant to Rule 56.1 of the Local Rules of this Court, Defendant Sandoz Inc. ("Sandoz")
hereby submits this Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to
Sandoz Inc. in support of their Motion for Partial Summary Judgment.

Sandoz has prepared this statement of disputed issues by responding to each of Plaintiffs'
statements of purportedly undisputed facts and by identifying those statements that are actually
undisputed and those that are disputed.

### PLAINTIFFS' LOCAL RULE 56.1 STATEMENT:

1.      The Sandoz Drugs and NDCs that have been examined in connection with
this motion are set forth in Exhibit A hereto.  This exhibit also sets forth Sandoz's
Published AWPs and WACs for these Drugs and NDCs, any operative Federal
Upper Limit ("FUL") and Sandoz AMPs.  The exhibit notes which NDCs are
associated with package sizes that set the FUL.

**SANDOZ' RESPONSE TO PARAGRAPH 1:**

Sandoz does not dispute that Exhibit A to Plaintiffs' Sandoz-specific Statement purports to (i) list the Sandoz drugs and NDCs that have been examined in connection with the Plaintiffs' motion; (ii) set forth Sandoz' AWPs and WACs for those drugs and NDCs with any operative FUL, and Sandoz AMPs; and (iii) note which NDCs are associated with the package sizes that set the FUL. Sandoz disputes the data set forth in Exhibit A to the extent it is not properly supported by evidence in the record. Plaintiffs have cited no evidentiary basis for the data set forth in Exhibit A, as required by Local Rule 56.1. *See O'Brien v. Town of Agawam*, 440 F.Supp. 2d 3, 5 n.1 (D. Mass. 2006) (disregarding "purported statements of 'fact' not properly supported by citations to the record" in summary judgment pleadings as required by Local Rule 56.1).

> 2.      The specific Sandoz Drugs at issue are the Albuterol .83 mg/ml Solution, Albuterol 90 MCG Inhaler, Cefadroxil 500 MG Capsule, Clonazepam .5 MG Tablet, Enalapril Maleate 20 MG Tablet, Lorazepam 1 MG Tablet, Metropolol 100 MG Tablet and Ranitidine 150 MG Tablet.

**SANDOZ' RESPONSE TO PARAGRAPH 2:**

Sandoz does not dispute that Sandoz' Albuterol 90 MCG inhaler and Enalapril Maleate 20 MG Tablet are drugs at issue in Plaintiffs' motion. Sandoz disputes that the specific drugs properly at issue in Plaintiffs' motion include the correct NDCs for Albuterol .83 mg/ml, Cefadroxil 500 MCG Capsule, Clonazepam 0.5 mg Tablet, Lorazepam 1 MG Tablet, Metropolol *(sic)* 100 MG Tablet and Ranitidine 150 MG Tablet. Plaintiffs have cited no evidentiary basis for this assertion as required by Local Rule 56.1. *See O'Brien v. Town of Agawam*, 440 F.Supp. 2d 3, 5 n.1 (D. Mass. 2006)(disregarding "purported statements of 'fact' not properly supported by citations to the record" in summary judgment pleadings as required by Local Rule 56.1). In

fact, Revised Exhibit B to Plaintiffs' Revised First Amended Consolidated Complain ("RFACC") does not list Albuterol 0.83 mg/ml Solution as a drug at issue in this litigation with respect to Sandoz. *See* Revised First Amended Consolidated Complaint at Exhibit B-30 [Dkt. No. 4754]. Sandoz further disputes the specific drugs at issue to the extent they are not properly supported by evidence in the record and to the extent the specific NDCs are not listed in Exhibit B to Plaintiffs' Revised First Amended Consolidated Complaint as a drug at issue in this litigation with respect to Sandoz.

3.    Sandoz manufactures drugs covered by Medicaid. Sandoz Inc.'s Answer to the Revised First Amended Consolidated Complaint, ("Sandoz's Answer") [Docket #4848] at ¶ 792.

**SANDOZ' RESPONSE TO PARAGRAPH 3:**

Sandoz does not dispute the assertion set forth in Paragraph 3.

4.    Sandoz knows that it has an obligation to report true prices to the pricing services. *See* Deposition of Frank Stiefel dated 11/13/2008 ("Stiefel Dep. 11/13/08") (Exhibit B) at 250:19-251:5.

**SANDOZ' RESPONSE TO PARAGRAPH 4:**

Sandoz disputes Paragraph 4 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' knowledge that it must report undefined "true" prices to the pricing services. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

5.    Sandoz knows that state Medicaid programs were responsible for determining an "estimated acquisition cost," which the federal regulations define as "the price generally and currently paid by providers." *See* Sandoz 30(b)(6) (Hartmann, Ronald) dated 1/25/07 ("Sandoz 30(b)(6)(Hartmann 1/25/07 Dep.") (Exhibit C) at 47:12-17.

**SANDOZ' RESPONSE TO PARAGRAPH 5:**

Sandoz disputes the assertions set forth in Paragraph 5 and states that 42 C.F.R. §

447.301 speaks for itself.  Sandoz also disputes Paragraph 5 to the extent that it mischaracterizes

Mr. Hartmann's testimony regarding Sandoz' knowledge regarding state Medicaid programs'

responsibilities throughout the relevant time period.

> 6.      Participation in the federal Medicaid rebate program is purely voluntary.
> *See* Sandoz 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 29:14-30:10.  Sandoz
> has voluntarily chosen to participate in the Medicaid Rebate program, allowing its
> products to be reimbursed by state Medicaid programs.  *See* Sandoz 30(b)(6)
> Hartmann 1/25/07 Dep. (Exhibit C) at 30:16-21.

**SANDOZ' RESPONSE TO PARAGRAPH 6:**

Sandoz does not dispute that it has voluntarily chosen to participate in the Medicaid

Rebate program.  Sandoz otherwise disputes Paragraph 6 to the extent that it mischaracterizes

Mr. Hartmann's testimony regarding the nature of Sandoz' participation in the Medicaid Rebate

program throughout the relevant time period.

> 7.      Sandoz has executed the federal Medicaid rebate agreement.  *See* Sandoz
> 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 32:17-33:6; Sandoz's Answer at ¶
> 116, ¶ 132, ¶ 168, ¶ 793.

**SANDOZ' RESPONSE TO PARAGRAPH 7:**

Sandoz does not dispute that it has executed the federal Medicaid rebate agreement, but

states that the truth or falsity of this statement is not relevant to this Court's determination of

summary judgment.

> 8.      Sandoz knew that eligibility for reimbursement by Medicaid was an
> important issue for its customers.  *See* Stiefel Dep. 11/13/08 (Exhibit B) at 69:2-
> 24.

**SANDOZ' RESPONSE TO PARAGRAPH 8:**

Sandoz disputes Paragraph 8 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz knowledge of what was important for its customers throughout the relevant time period.  Sandoz states that Mr. Stiefel testified that during his employment at Sandoz, the company sought to have its drugs listed on each state's Medicaid formulary, which was in turn important to Sandoz' retail customers.  *See* Excerpts of November 13, 2008 deposition of Frank Stiefel, former Vice President of Sales at Sandoz ("Stiefel Tr. 11/13/08") at 69:2-13, attached collectively as Tab 1 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

> 9.      One of the reasons Sandoz reported AWPs and WACs to the publishing compendia was that both were necessary to sell Sandoz products.  *See* Deposition of Kevin Galownia dated 6/11/07 ("Galownia Dep. 6/11/07") (Exhibit D) at 108:12-18.

**SANDOZ' RESPONSE TO PARAGRAPH 9:**

Sandoz disputes Paragraph 9 to the extent that it mischaracterizes Mr. Galownia's testimony regarding the reporting of both AWPs and WACs to the publishing compendia as necessary to sell Sandoz products.  Sandoz also disputes Paragraph 9 to the extent that it mischaracterizes Mr. Galownia's testimony regarding the reasons Sandoz reported AWPs and WACs to the publishing compendia throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

> 10.      Sandoz customers expected Sandoz to report AWPs and WACs to the publishing compendia because the published prices affected their reimbursement.

*See* Sandoz 30(b)(6) (Kellum, Hector Armando) dated 1/25/07 ("Sandoz 30(b)(6)(Kellum) 1/25/07 Dep.") (Exhibit E) at 46:18-47:11.

**SANDOZ' RESPONSE TO PARAGRAPH 10:**

Sandoz disputes Paragraph 10 to the extent that it mischaracterizes Mr. Kellum's testimony regarding the expectations of Sandoz' customers throughout the relevant time period.

11.     At all times, from 1997 to 2005, Sandoz reported or caused to be reported the AWPs for its drugs to the publishing compendia.  *See* Galownia Dep. 6/11/07(Exhibit D) at 264:1-14; *see also* Deposition of Christopher Worrell, Vol. II dated 3/26/08 ("Worrell Dep. 3/26/08) (Exhibit F) at 349:11-20.

**SANDOZ' RESPONSE TO PARAGRAPH 11:**

Sandoz disputes Paragraph 11 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

12.     Sandoz reported or caused to be reported the same AWPs to all three of the national compendia: First Data Bank, Red Book and Medi-Span.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20; Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14.

**SANDOZ' RESPONSE TO PARAGRAPH 12:**

Sandoz disputes Paragraph 12 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.  In fact, Mr. Hector Armando Kellum, Sandoz' 30(b)(6) witness, testified that he was only able to confirm that Sandoz had been reporting AWPs to pricing services like First DataBank since about 1998 or 1999.  *See* Excerpts of January 25, 2007 deposition of Sandoz 30(b)(6) witness Hector Armando Kellum, Manager of Pricing at Sandoz ("Kellum Tr. 1/25/07") at 38:7-16, attached

collectively as Tab 2 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Since that time period, Sandoz has reported the same AWPs and WACs to First DataBank, Red Book and Medispan.  *See* Excerpts of June 11, 2007 deposition of Kevin Galownia, former Manager of Pricing at Sandoz ("Galownia Tr. 6/11/07") (Tab 3) at 135:7-14, attached collectively as Tab 3 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.; Kellum Tr. 1/25/07 (Tab 2) at 57:7-14 .

13.     Sandoz understood that the publishing compendia published the identical AWPs to the AWPs that Sandoz reported.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.

**SANDOZ' RESPONSE TO PARAGRAPH 13:**

Sandoz disputes the assertions set forth in Paragraph 13 and states that the publishing compendia set their own AWPs irrespective of the AWPs reported by Sandoz.  *See* Excerpts of August 7, 2007 deposition of Patricia Kay Morgan, First DataBank ("Morgan Tr. 08/07/07") at 42:10-43:7, attached collectively as Tab 4 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc..  In fact, Mr. Hector Armando Kellum, Sandoz' 30(b)(6) witness, testified that in certain instances there were discrepancies between the AWPs submitted by Sandoz to First DataBank and what First DataBank published.  *See* Kellum Tr. 1/25/07 (Tab 2) at 56:4-12. Testimony from First DataBank shows that it controlled the Blue Book AWPs it published and based them on wholesaler surveys, not AWPs submitted by manufacturers.  *See* Morgan Tr. 08/27/07 (Tab 4) at 38:1-39:3, 42:10-43:7.  Sandoz further disputes that the evidence cited by Plaintiffs represents Sandoz' understanding regarding the publishing compendia's practices throughout the relevant time period.

14.     Sandoz verified whether the pricing compendia published the correct AWPs, and if Sandoz requested any corrections, the pricing compendia would make such corrections to Sandoz's published AWPs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 56:14-58:22.

**SANDOZ' RESPONSE TO PARAGRAPH 14:**

Sandoz disputes the assertions set forth in Paragraph 14 and states that, from time to time, First DataBank requested Sandoz to verify a published AWP or WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 135:7-137:2.   However, Sandoz did not regularly receive requests from First DataBank to verify AWP information.  *See* Kellum Tr. 1/25/07 (Tab 2) at 56:4-21.  It was not a normal practice for First DataBank to ask manufacturers such as Sandoz to verify pricing information.  *See* Morgan Tr. 08/27/07 (Tab 4) at 198:10-23.   Sandoz otherwise disputes Paragraph 14 to the extent that it mischaracterizes Mr. Kellum's testimony regarding Sandoz' practices with respect to verification of AWPs throughout the relevant time period.

15.     Sandoz had only one AWP for any Sandoz NDC at a given time, and that was the only AWP expected to be published.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 348:18-349:4.

**SANDOZ' RESPONSE TO PARAGRAPH 15:**

Sandoz does not dispute that it generally had only one AWP for any Sandoz NDC at a given time, but states that the truth or falsity of this statement is not relevant to this Court's determination of summary judgment.  Sandoz further disputes Paragraph 15 to the extent that it mischaracterizes Sandoz' expectations regarding the publication of AWPs throughout the relevant time period.

16.     At all times, from 1997 to 2005, Sandoz reported or caused to be reported WACs for its drugs to the publishing compendia.  *See* Deposition of Christopher Worrell dated 8/23/2007 ("Worrell Dep. 8/23/07") (Exhibit G) at 86:15-87:2; Galownia Dep. 6/11/07 (Exhibit D) at 264:1-14; Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20.

**SANDOZ' RESPONSE TO PARAGRAPH 16:**

Sandoz disputes Paragraph 16 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant timeframe.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

17.     Sandoz reported or caused to be reported the same WACs to all three of the national compendia: First Data Bank, Red Book and Medi-Span.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20; Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14.

**SANDOZ' RESPONSE TO PARAGRAPH 17:**

Sandoz disputes Paragraph 17 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

18.     Sandoz understood that the publishing compendia published identical WACs to the WACs that Sandoz reported.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.

**SANDOZ' RESPONSE TO PARAGRAPH 18:**

Sandoz disputes Paragraph 18 to the extent that it mischaracterizes Mr. Galownia's testimony regarding Sandoz' understanding of the publishing compendia's practices throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

19.     Sandoz verified whether the pricing compendia published the correct WACs, and if Sandoz requested any corrections, the pricing compendia would make such corrections to Sandoz's published WACs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 56:14-58:22.  If any corrections were necessary, Sandoz would communicate such corrections back to First Data Bank, and First Data Bank would make such corrections. *See* Galownia Dep. 6/11/07 (Exhibit D) at 135:18-137:16.   Red Book had an annual policy of

requesting Sandoz to verify its published information.  Red Book would send Sandoz a hard copy list of Sandoz's published prices, and Sandoz would either sign-off or make corrections to the information and return the document to Red Book.  *See Id.*

**SANDOZ' RESPONSE TO PARAGRAPH 19:**

Sandoz disputes Paragraph 19 to the extent that is mischaracterizes the testimony of Mr. Kellum and Mr. Galownia regarding Sandoz' practices with respect to verification of WACs in the pricing compendia.  Sandoz states that, from time to time, RedBook requested Sandoz to verify a published AWP or WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 135:7-137:2.

20.    Sandoz had only one WAC for any Sandoz NDC at a given time, and that was the only WAC expected to be published.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:5-10.

**SANDOZ' RESPONSE TO PARAGRAPH 20:**

Sandoz does not dispute that it generally had only one WAC for any Sandoz NDC at a given time, but states that the truth or falsity of this statement is not relevant to this Court's determination of summary judgment.  Sandoz further disputes that the evidence cited by Plaintiffs represents Sandoz' expectations regarding the publication of WACs.

21.    Sandoz understands that AWP is one of the prices considered as the basis for Medicaid reimbursement.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 107:3-108:10; Worrell Dep. 3/26/08 (Exhibit F) at 433:20-434:5.

**SANDOZ' RESPONSE TO PARAGRAPH 21:**

Sandoz disputes Paragraph 21 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell testimony regarding Sandoz' understanding of AWP's relationship to Medicaid reimbursement.   In fact, Mr. Galownia has testified:

Q.    Was it also a reason that the company reported WACs and AWPs to the pricing services because your customers expected it, that is, their reimbursement that they received from third party payers could depend on the published AWP or WAC for a Sandoz product?

Counsel: Objection to the form of the question.

A:      My understanding was that customers expected us to have our products listed at the pricing services.  I did not know specifically why.

*See* Galownia Tr. 6/11/07 (Tab 3) at 106:12-107:1.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

22.     Sandoz knows that Medicaid reimbursements can be based on WACs.  *See* Stiefel Dep. 11/13/08 (Exhibit B) at 66:4-11.

**SANDOZ' RESPONSE TO PARAGRAPH 22:**

Sandoz disputes Paragraph 22 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' knowledge regarding WAC's relationship to Medicaid reimbursement throughout the relevant timeframe.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

23.     Sandoz knows that Medicaid reimbursements can be based on FUL.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 434:6-435:5.  Sandoz understands that CMS sets the FUL by taking 150% of the lowest published WAC.  *See* Deposition of Christopher Worrell dated 5/13/08 ("Worrell 5/13/08 Dep.") (Exhibit H) at 636:6-16.

**SANDOZ' RESPONSE TO PARAGRAPH 23:**

Sandoz disputes the assertions set forth in Paragraph 23 and states that CMS does not calculate FULs in accordance with a rigid formula, but instead often uses discretion when setting a FUL, considering factors such as product availability, and does not always use the "lowest published price" available.  *See* Excerpts of March 19, 2008 deposition of Sue Gaston, Center for Medicaid and Medicare Services ("Gaston Tr. 03/19/08") (Tab 5) at 426:14-427:20; 428:10-429:22; 449:9-453:1, attached collectively as Tab 5 to the Declaration of Raj Gandesha in

Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts

as to Sandoz Inc..  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for

the time period outside of Mr. Worrell's employment with Sandoz.

> 24.     At all times of launch, for each of its generic drugs, Sandoz generally set the AWP somewhere between 10 and 15 percent below the corresponding brand AWP.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 465:4-466:2; Galownia Dep. 6/11/07 (Exhibit D) at 162:14-20; Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 79:1-14.

### SANDOZ' RESPONSE TO PARAGRAPH 24:

Sandoz disputes Paragraph 24 to the extent that it mischaracterizes the testimony of Mr.

Worrell, Mr. Galownia, and Mr. Kellum.  In fact, Mr. Kellum, Sandoz' 30(b)(6) witness, has

testified that it was "quite possible that there is some that are not a 10 percent discount."  *See*

Kellum Tr. 1/25/07 (Tab 2) at 79:1-14.  Sandoz further disputes that Plaintiffs have provided an

evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment at

Sandoz.

> 25.     Once AWP was set, Sandoz would not usually adjust the AWP for that product, even if Sandoz contract prices were decreasing.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 467:21-468:7.

### SANDOZ' RESPONSE TO PARAGRAPH 25:

Sandoz disputes Paragraph 25 to the extent that it mischaracterizes the testimony of Mr.

Worrell regarding Sandoz' pricing practices throughout the relevant time period.  Sandoz states

that Christopher Worrell testified that once an AWP was set, he usually did not look at it again

after the product was launched.  As Mr. Worrell testified:

> Q.     And I think you testified earlier as well that generally, once the AWP was set, that you didn't usually look at that or concern yourself with that after the product was launched, is that correct?

> A.     Not usually.

*See* Excerpts of March 26, 2008 Christopher Worrell, Former Vice President of Sales and Marketing, ("Worrell Tr. 03/26/2008") at 467:21-468:7, attached collectively as Tab 6 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.. Sandoz otherwise disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

26.     The AWPs Sandoz reported to the pricing compendia did not represent true average prices charged by wholesalers for Sandoz product. *See* Galownia Dep. 6/11/07 (Exhibit D) at 112:15-113:9.

**SANDOZ' RESPONSE TO PARAGRAPH 26:**

Sandoz disputes the assertions set forth in Paragraph 26 and states that Sandoz' AWPs are not untrue because they were not intended to be nor understood by Plaintiffs, the pricing compendia, or others to be a literal average of prices charged by wholesalers, but instead were understood and used as a benchmark. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

27.     The AWPs Sandoz reported to the pricing compendia did not represent true prices paid by pharmacies to acquire Sandoz products. *See* Deposition of Frank Stiefel dated 1/27/09 ("Stiefel Dep. 1/27/09") (Exhibit I) at 378:4-10.

**SANDOZ' RESPONSE TO PARAGRAPH 27:**

Sandoz disputes Paragraph 27 to the extent it misrepresents Mr. Stiefel's testimony regarding the reporting practices of Sandoz throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

28.     The true average prices paid by pharmacies to acquire Sandoz products were always less than AWP. *See* Stiefel, Frank (1/27/09) Dep. (Exhibit I) at 378:11-16.

**SANDOZ' RESPONSE TO PARAGRAPH 28:**

Sandoz disputes Paragraph 28 to the extent it mischaracterizes the testimony of Mr. Stiefel regarding the prices paid by pharmacies to acquire Sandoz products throughout the relevant time period.  Sandoz further states that AWP for generic drugs is sufficiently below the reference brand to permit classification as a lower priced generic.  Sandoz otherwise disputes that the evidence cited by Plaintiffs supports the proposition for which it is cited.

29.     Sandoz did not require its AWPs and WACs to decrease as market prices and contract prices decreased.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 468:13-18.

**SANDOZ' RESPONSE TO PARAGRAPH 29:**

Sandoz disputes Paragraph 29 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' pricing practices throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

30.     Sandoz does not sell any of its generic drugs at AWP.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 510:5-8; Galownia Dep. 6/11/07 (Exhibit D) at 224:8-226:12, 240:6-18.

**SANDOZ' RESPONSE TO PARAGRAPH 30:**

Sandoz disputes that the evidence cited by Plaintiffs supports the proposition for which it is cited.

31.     Sandoz's AWPs for generic products do not represent an average of prices charged by wholesalers.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 90:3-91:9.

**SANDOZ' RESPONSE TO PARAGRAPH 31:**

AWP for generic drugs is sufficiently below the reference brand to permit classification as a lower priced generic.  Sandoz otherwise disputes Paragraph 31 to the extent it

mischaracterizes Mr. Kellum's testimony regarding the nature of Sandoz' AWPs throughout the relevant time period.

> 32.     If Sandoz was the first manufacturer to market a generic product, Sandoz would set its WAC at 25 percent below the Sandoz AWP.  *See* Deposition of Christopher Worrell dated 8/23/2007 ("Worrell Dep. 8/23/07") (Exhibit G) at 84:18-85:13.  Sandoz would set the WAC at the highest possible price in this scenario because it would have the only generic product in the market.  *See* Worrell Dep. 8/23/07 Dep. (Exhibit G) at 85:17-23.  If Sandoz was launching a product into a mature market where there were already a number of generics in the marketplace, Sandoz would set its WAC near its competitors' published WACs.  *See* Worrell Dep. 8/23/07 Dep. (Exhibit G) at 87:3-88:12.

**SANDOZ' RESPONSE TO PARAGRAPH 32:**

Sandoz disputes Paragraph 32 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' pricing practices throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

> 33.     Sandoz's AWP determines the maximum level for its WAC, and the WAC determines the maximum levels for contract pricing.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 164:2-21.  This is because in general practice, the published AWP is the highest price, published WACs are less than the published AWP and contract prices are less than the published WAC.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 164:2-165:19.

**SANDOZ' RESPONSE TO PARAGRAPH 33:**

Sandoz disputes the assertions set forth in Paragraph 33 and states that WAC is not always higher than the contract price.  *See* Excerpts of June 19, 2008 deposition of Kevin Galownia, Former Manager of Pricing at Sandoz ("Galownia Tr. 06/19/08") at 30:16-22, attached collectively as Tab 7 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

34.      Sandoz admits that its AWPs and WACs are irrelevant in trying to determine Sandoz customers' actual acquisition costs.   *See* Alabama Trial testimony, Christopher Worrell dated 2/18/09 (Exhibit J) at 1593:24-1594:21; Stiefel Dep.  Exhibit 27 (11/13/08) (Exhibit K)(email from Christopher Worrell, vice president of sales and marketing, regarding competitor's sales prices, AWPs and WACs).

**SANDOZ' RESPONSE TO PARAGRAPH 34:**

Sandoz disputes the assertions set forth in Paragraph 34 and states that some customers purchase its drugs at WAC price.  *See* Kellum Tr. 1/25/07 Dep. (Tab 2) at 115:15-l16:19. Sandoz further disputes Paragraph 34 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' position regarding the relevance of AWPs and WACs to customers' actual acquisition costs throughout the relevant time period.   Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's and Mr. Stiefel's employment with Sandoz.

35.      Sandoz's contract prices are always less than its published prices.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 168:20-170:7.

**SANDOZ' RESPONSE TO PARAGRAPH 35:**

Sandoz disputes this allegation and states that on some occasions, contract prices are equal to WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 115:15-l16:19.   Sandoz further disputes Paragraph 35 to the extent that it mischaracterizes Mr. Galownia's testimony regarding the relationship between Sandoz' contract prices and its published prices throughout the relevant timeframe.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

36.      Sandoz's contract prices were on average, 35 percent to 75 percent below the published WAC. *See* Worrell Dep. 3/26/08 (Exhibit F) at 485:13-22. The difference between Sandoz contract prices and AWPs would be even greater. *See* Worrell Dep. 3/26/08 (Exhibit F) at 485:23-486:7.

**SANDOZ' RESPONSE TO PARAGRAPH 36:**

Sandoz disputes the assertions set forth in Paragraph 36 and states that on some occasions, contract prices are equal to WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 115:15-l16:19. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

37.     At all times from 1997 to 2005, Sandoz sold its drugs to the three national wholesalers: Cardinal, Amerisource Bergen and McKesson.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 87:4-9.

**SANDOZ' RESPONSE TO PARAGRAPH 37:**

Sandoz does not dispute that it sells drugs to Cardinal, AmerisourceBergen, and McKesson.  Sandoz otherwise disputes that the evidence cited by Plaintiffs represents Sandoz' sales practices throughout the relevant time period.  Sandoz further disputes this allegation as AmerisourceBergen was formed in 2001 and therefore could not have purchased drugs from Sandoz prior to that date.  *See* AmerisourceBergen, http://www.amerisourcebergen.com/ cp/1/who_we_are/index.jsp (last visited June 15, 2009).  .

38.     Sandoz had rebate agreements with all three national wholesalers.  *See* Stiefel Dep. 1/27/09 (Exhibit I) at 350:4-9.

**SANDOZ' RESPONSE TO PARAGRAPH 38:**

Sandoz does not dispute that at one point in time, it had rebate agreements with Cardinal, AmerisourceBergen, and McKesson.  *See* Excerpts of January 27, 2009 deposition of Frank Stiefel ("Stiefel Tr. 1/27/09") at 350:4-9, attached collectively as Tab 8 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz otherwise disputes Paragraph 38 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' relationship with Cardinal, AmerisourceBergen, and McKesson throughout the relevant time period.  Sandoz also disputes

this allegation as AmerisourceBergen was formed in 2001 and therefore could not have purchased drugs from Sandoz prior to that date. *See* AmerisourceBergen, http://www.amerisourcebergen.com/ cp/1/who_we_are/index.jsp (last visited June 15, 2009). Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

> 39. The WAC reported or caused to be reported by Sandoz does not account for chargebacks, rebates or discounts. *See* Galownia Dep. 6/11/07 (Exhibit D) at 112:3-8; 323:1-10. Rebates paid to wholesalers are not reflected in Sandoz's reported WACs. *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 100:18-101:17.

**SANDOZ' RESPONSE TO PARAGRAPH 39:**

Sandoz disputes Paragraph 39 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Kellum regarding Sandoz' pricing practices throughout the relevant time period. Sandoz states that WAC is the manufacturer's list price to wholesalers, not including prompt pay or other discounts, rebates or reductions in price. 42 U.S.C.A. § 1395w-3a(c)(6)(B) (2003). Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz

> 40. Sandoz rarely sold products at WAC without any rebates, discounts, or chargebacks. *See* Stiefel Dep. 1/27/09 (Exhibit E) at 365:25-366:4.

**SANDOZ' RESPONSE TO PARAGRAPH 40:**

Sandoz disputes this statement and states that, from time to time, it sold products at WAC without any rebates, discounts, or chargebacks. *See* Excerpts of February 20, 2009 deposition of Frank Prybeck, Director of Contract Administration at Sandoz ("Prybeck Tr. 02/20/09") (Tab 9) at 230:16-24; 239:3-12, attached collectively as Tab 9 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc. Sandoz further disputes Paragraph 40 to the extent that it mischaracterizes Mr.

Stiefel's testimony regarding Sandoz' sales practices throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

41.     In general, the net sales prices paid by wholesalers through auto substitution programs were less than WAC.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 464:15-465:7.

**SANDOZ' RESPONSE TO PARAGRAPH 41:**

Sandoz does not dispute the assertion set forth in Paragraph 41.

42.     The wholesalers negotiate with all generic manufacturers, including Sandoz, its "dead net" price (the price after all price reductions and allowances). *See* Cardinal Health 30(b)(6) Deposition (Erick, Matthew) dated 6/17/08 (Exhibit L) at 118:6-121:6.

**SANDOZ' RESPONSE TO PARAGRAPH 42:**

Sandoz disputes that the evidence cited by Plaintiffs addresses Sandoz in any respect, or otherwise represents behavior of all wholesalers throughout the relevant timeframe.

43.     The chargebacks, rebates, discounts, adjustments, administrative fees, incentives and other pricing allowances paid by Sandoz reduce the wholesaler's actual acquisition cost or net price.  *See* Deposition of Maureen Cavanaugh dated 3/18/09 (Exhibit M) at 110:8-111:12; 111:21-114:20.

**SANDOZ' RESPONSE TO PARAGRAPH 43:**

Sandoz disputes Paragraph 43 to the extent that it mischaracterizes Ms. Cavanaugh's testimony regarding Sandoz' pricing practices throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Ms. Cavanaugh's employment with Sandoz.

44.     Sandoz knows the net acquisition cost it offered its customers.  *See* Worrell 5/13/08 Dep. (Exhibit H) at 639:7-23.

**SANDOZ' RESPONSE TO PARAGRAPH 44:**

Sandoz disputes Paragraph 44 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' knowledge as to net acquisition costs throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

> 45. Sandoz's vice president of sales and marketing understood that a customer's profit could be driven by the difference between their AWP reimbursement and contract price for Sandoz products. *See* Worrell Dep. 3/26/08 (Exhibit F) at 504:13-22.

**SANDOZ' RESPONSE TO PARAGRAPH 45:**

Sandoz disputes that its customers' business practices are material to Plaintiffs' Motion for Partial Summary Judgment. *See* Local Rule 56.1 (requiring movant to "include a concise statement of the *material* facts of record as to which moving party contends there is no genuine issue to be tried") (emphasis added); *St Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 379 F.Supp.2d 183, 186 n.1 (D.Mass. 2005) (refusing to consider a summary judgment movant's immaterial facts). Sandoz otherwise disputes that Plaintiffs have an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

> 46. Whenever Sandoz received FUL updates from CMS, Sandoz would share the updates with its sales and marketing departments. *See* Deposition of Ronald Hartmann (5/6/09) ("Hartmann Dep. 5/6/09") (rough copy) (Exhibit N) at 282:16-283:7. Sales and marketing would be interested in such information if Sandoz's prices were greater than the FUL. *See* Hartmann Dep. 5/6/09 (Exhibit N) at 283:13-16. Sandoz sales and marketing would be interested in such information when a FUL was deleted. *See* Hartmann Dep. 5/6/09 (Exhibit N) at 283:17-23.

**SANDOZ' RESPONSE TO PARAGRAPH 46:**

Sandoz disputes that Plaintiffs' citation supports or even addresses the stated proposition.

> 47. In the ordinary course of business, Sandoz routinely communicated with its retail pharmacy customers and provided contract price, AWP and WAC information. *See* Stiefel Dep. 1/27/09 (Exhibit E) at 400:10-401:15; *See* Worrell

Dep. 3/26/08 (Exhibit F) at 524:8-525:4.  Retail pharmacy customers needed this information because it affected their reimbursement from third party payors, which include state Medicaid programs.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 403:1-9.

**SANDOZ' RESPONSE TO PARAGRAPH 47:**

Sandoz disputes Paragraph 47 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' behavior throughout the relevant timeframe.  Sandoz also disputes that the evidence cited by Plaintiffs represents the needs of retail pharmacy customers.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

48.     At all times, from 1997 to 2005, Sandoz calculated submitted to CMS AMPs for its products on a quarterly basis, pursuant to the federal rebate statute. *See* Defendant Sandoz Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories, 1/23/07, *Wisconsin v. Amgen, Inc.*, 04-CV-1709, Response to Interrogatory No. 1(a-c) (Exhibit O); Defendant Sandoz, Inc.'s Responses and Objections to the State of California's Second Set of Interrogatories to Sandoz, Inc., *State of California, ex rel. Ven-A-Care v. Abbott Laboratories, et al.*, MDL 1456 (01-12257-PBS), 1/96/2009, Response to Interrogatory No. 1 (Exhibit P).

**SANDOZ' RESPONSE TO PARAGRAPH 48:**

Sandoz does not dispute the assertions set forth in Paragraph 48.

Dated: June 15, 2009            By:   /s/ Paul Carberry
                                     Wayne A. Cross (*pro hac vice*)
                                     Michael J. Gallagher (*pro hac vice*)
                                     Paul Carberry  (*pro hac vice*)
                                     WHITE & CASE LLP
                                     1155 Avenue of the Americas
                                     New York, NY 10036-2787
                                     Telephone:  (212) 819-8200
                                     Facsimile:   (212) 354-8113

                                     Counsel for Defendant Sandoz Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua Weedman, hereby certify that on June 15, 2009, I have caused true and correct copies of the foregoing Defendant Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc. to be served on all counsel of record by electronic service, pursuant to the Case Management Order No. 2 entered in by Honorable Patti B. Saris in MDL 1456.

    /s/ Joshua Weedman    
Joshua Weedman
