# EXHIBIT E

                                                                   Page 287

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3    - - - - - - - - - - - - - - - -

 4   IN RE: PHARMACEUTICAL         )   MDL NO. 1456

 5   INDUSTRY AVERAGE WHOLESALE    )   CIVIL ACTION

 6   PRICE LITIGATION              )   01-CV-12257-PBS

 7   THIS DOCUMENT RELATES TO      )

 8   U.S. ex rel. Ven-a-Care of    )   Judge Patti B. Saris

 9   the Florida Keys, Inc.        )

10        v.                       )   Chief Magistrate

11   Abbott Laboratories, Inc.,    )   Judge Marianne B.

12   No. 06-CV-11337-PBS           )   Bowler

13   - - - - - - - - - - - - - - - -

14          (cross captions appear on following pages)

15

16         Videotaped deposition of SUE GASTON

17

18                     Volume II

19

20                            Washington, D.C.

21                            Wednesday, March 19, 2008

22                            9:00 a.m.
```

Gaston, Sue - Vol. II                                                                              March 19, 2008
Washington, DC

Page 288
1           UNITED STATES DISTRICT COURT
2         FOR THE DISTRICT OF MASSACHUSETTS
3    ---------------
4    IN RE: PHARMACEUTICAL      ) MDL NO. 1456
5    INDUSTRY AVERAGE WHOLESALE ) CIVIL ACTION
6    PRICE LITIGATION           ) 01-CV-12257-PBS
7                               ) Judge Patti B. Saris
8    THIS DOCUMENT RELATES TO   ) Chief Magistrate
9    ALL CASES IN MDL NO. 1456  ) Judge Marianne B.
10   ---------------  Bowler
11
12
13      IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
14        THIRD JUDICIAL DISTRICT AT ANCHORAGE
15   ---------------
16   STATE OF ALASKA,           )
17        Plaintiff,            )
18   vs.                        ) Case No.
19   ALPHARMA BRANDED PRODUCTS  ) 3AN-06-12026 CI
20   DIVISION, INC., et al.     )
21        Defendants.           )
22   ---------------

Page 289
1      IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
2                  STATE OF HAWAII
3    ---------------
4    STATE OF HAWAII,           )
5         Plaintiff,            ) Case No.
6    vs.                        ) 06-1-0720-04 EEH
7    ABBOTT LABORATORIES, INC., )
8    et al.,                    ) JUDGE EDEN
9         Defendants.           ) ELIZABETH HIFO
10   ---------------
11
12
13   IN THE FOURTH JUDICIAL DISTRICT OF THE STATE OF
14         IDAHO, IN AND FOR THE COUNTY OF ADA
15   ---------------
16   STATE OF IDAHO,            )
17        Plaintiff,            )
18   vs.                        ) Case No.
19   ALPHARMA USPD, INC., et al.,) CV OC 0701847
20       Defendant.             )
21   ---------------
22

Page 290
1    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
2         COUNTY DEPARTMENT, CHANCERY DIVISION
3    ---------------
4    THE PEOPLE OF THE STATE OF )
5    ILLINOIS,                  )
6         Plaintiff,            ) Case No. 05 CH 02474
7    vs.                        )
8    ABBOTT LABORATORIES, et al.,)
9         Defendants.           )
10   ---------------
11
12
13          COMMONWEALTH OF KENTUCKY
14        FRANKLIN CIRCUIT COURT - DIV. I
15   ------------------
16   COMMONWEALTH OF KENTUCKY, ex rel. )
17   GREGORY D. STUMBO, ATTORNEY GENERAL)
18        Plaintiff,           ) Civil Action
19   vs.                       ) NO. 04-CI-1487
20   ALPHARMA USPD, INC., et al.,    )
21        Defendants.          )
22   ------------------

Page 291
1          COMMONWEALTH OF KENTUCKY
2        FRANKLIN CIRCUIT COURT - DIV. II
3    ------------------
4    COMMONWEALTH OF KENTUCKY,     )
5         Plaintiff,           ) Civil Action
6    vs.                       ) NO. 03-CI-1134
7    ABBOTT LABORATORIES, INC.,    )
8         Defendants.          )
9    ------------------
10
11         COMMONWEALTH OF KENTUCKY
12       FRANKLIN CIRCUIT COURT - DIV. II
13   ------------------
14   COMMONWEALTH OF KENTUCKY, ex rel. )
15   GREGORY D. STUMBO, ATTORNEY GENERAL)
16        Plaintiff,           ) Civil Action
17   vs.                       ) NO. 03-CI-1135
18   WARRICK PHARMACEUTICALS CORP.,  )
19   et al.                    )
20        Defendants.          )
21   ------------------
22

Gaston, Sue - Vol. II                                                                                         March 19, 2008
                                         Washington, DC

Page 292
```
 1    STATE OF NEW YORK
 2    SUPREME COURT: COUNTY OF ERIE
 3    -----------------
 4    COUNTY OF ERIE,           )
 5          Plaintiff,     )
 6      vs.              ) Index No. 05-2439
 7    ABBOTT LABORATORIES, INC.,   )
 8    et al.,                )
 9          Defendants.      )
10    -----------------
11
12
13          STATE OF WISCONSIN CIRCUIT COURT
14             DANE COUNTY  Branch 9
15    -----------------
16    STATE OF WISCONSIN,          )
17          Plaintiff,     )
18      vs.              ) Case No. 04-CV-1709
19    AMGEN INC., et al.,         )
20          Defendants.      )
21    -----------------
22
```

Page 293
```
 1         IN THE CIRCUIT COURT FOR
 2         MONTGOMERY COUNTY, ALABAMA
 3    ---------------
 4    ITMO: ALABAMA MEDICAID    )
 5    PHARMACEUTICAL AVERAGE    ) MASTER DOCKET NO.
 6    WHOLESALE PRICE LITIGATION  ) CV-2005-219
 7    ---------------)
 8    THIS DOCUMENT RELATES TO:  )
 9    STATE OF ALABAMA v.    )
10    ABBOTT LABORATORIES, INC.  )
11    ---------------
12
13
14
15
16
17
18
19
20
21
22    (CONTINUED)
```

Page 294
```
 1          UNITED STATES DISTRICT COURT
 2         FOR THE DISTRICT OF MASSACHUSETTS
 3    ---------------
 4    IN RE: PHARMACEUTICAL    ) MDL NO. 1456
 5    INDUSTRY AVERAGE WHOLESALE  ) CIVIL ACTION
 6    PRICE LITIGATION       ) 01-CV-12257-PBS
 7    THIS DOCUMENT RELATES TO  )
 8    U.S. ex rel. Ven-a-Care of  ) Judge Patti B. Saris
 9    the Florida Keys, Inc., et al)
10      v.          ) Chief Magistrate
11    Boehringer Ingelheim    ) Judge Marianne B.
12    Corporation, et al.,     ) Bowler
13    No. 07-CV-10248-PBS     )
14    ---------------
15
16        Continued videotaped deposition of SUE GASTON,
17    held at the law offices of Jones Day, 51 Louisiana
18    Avenue, N.W., Washington, D.C. 20001-2113, the
19    proceedings being recorded stenographically by
20    Jonathan Wonnell, a Registered Professional Court
21    Reporter and Notary Public of the District of
22    Columbia, and transcribed under his direction.
```

Page 295
```
 1         APPEARANCES OF COUNSEL
 2
 3    On behalf of the United States of America:
 4
 5         ANA MARIA MARTINEZ, ESQ.
 6         United States Department of Justice
 7         99 N.E. 4th Street
 8         Miami, Florida 33132
 9         (305) 961-9431
10         ana.maria.martinez@usdoj.gov
11
12         -- and --
13
14         JAMES J. FAUCI, ESQ. (via phone)
15         United States Attorney's Office
16         John Joseph Moakley Building
17         1 Courthouse Way
18         Boston, Massachusetts 02210
19         (617) 748-3298
20
21
22
```

3 (Pages 292 to 295)

Page 296

1         APPEARANCES (Cont'd)
2
3  On behalf of the U.S. Department of Health and
4  Human Services:
5
6         LESLIE M. STAFFORD, ESQ.
7         U.S. Department of Health & Human Services
8         Office of General Counsel, CMS Division
9         7500 Security Boulevard
10        Mail Stop C2-05-23
11        Baltimore, Maryland 21244
12        (410) 786-9655
13
14 On behalf of the State of Alabama:
15
16        PAUL LYNN, ESQ. (via phone)
17        Beasley, Allen, Crow, Methvin, Portis &
18          Miles, P.C.
19        218 Commerce Street
20        Montgomery, Alabama 36104
21        (800) 898-2034
22        paul.lynn@beasleyallen.com

Page 297

1         APPEARANCES (Cont'd)
2
3  On behalf of the State of Florida:
4
5         MARY S. MILLER, ESQ. (via phone)
6         Office of the Attorney General of Florida
7         PL-01, The Capitol
8         Tallahassee, Florida 32399-1050
9         (850) 414-3600
10        mary_miller@oag.state.fl.us
11
12 On behalf of the City of New York and all New York
13 Counties other than Nassau and Orange; and the
14 States of Alaska, Hawaii, Idaho, Illinois, Kentucky,
15 South Carolina and Wisconsin:
16
17        MICHAEL WINGET-HERNANDEZ, ESQ.
18        Winget-Hernandez, LLC
19        3112 Windsor Road, Suite 228
20        Austin, Texas 78703
21        (512) 858-4181
22        michael@winget-hernandez.com

Page 298

1         APPEARANCES (Cont'd)
2
3  On behalf of Ven-A-Care of the Florida Keys, Inc.:
4
5         MARJORY P. ALBEE, ESQ.
6         Mager & Goldstein LLP
7         1818 Market Street, Suite 3710
8         Philadelphia, Pennsylvania 19103
9         (215) 640-3280
10        malbee@magergoldstein.com
11
12 On behalf of Abbott Laboratories, Inc.:
13
14        DAVID TORBORG, ESQ.
15        SEAN P. MALONE, ESQ.
16        Jones Day
17        51 Louisiana Avenue, N.W.
18        Washington, D.C. 20001-2113
19        (202) 879-3939
20        dstorborg@jonesday.com
21        spmalone@jonesday.com
22

Page 299

1         APPEARANCES (Cont'd)
2
3  On behalf of Aventis Pharmaceuticals and Sanofi
4  Synthelabo:
5
6         MICHAEL L. KOON, ESQ.
7         Shook, Hardy & Bacon, LLP
8         2555 Grand Boulevard
9         Kansas City, Missouri 64108-2613
10        (816) 474-6550
11        jkoon@shb.com
12
13 On behalf of Bristol-Myers Squibb:
14
15        DIANNE M. PETERSON, ESQ. (via phone)
16        Hogan & Hartson
17        875 Third Avenue
18        New York, New York 10022
19        (212) 918-3000
20        dmpeterson@hhlaw.com
21
22

4 (Pages 296 to 299)

Page 300

1            A P P E A R A N C E S (Cont'd)
2
3    On behalf of Dey, Inc., Dey, L.P. and Mylan:
4
5         SARAH L. REID, ESQ.
6         Kelley, Drye & Warren LLP
7         101 Park Avenue
8         New York, New York 10178
9         (212) 808-7720
10        sreid@kelleydrye.com
11
12   On behalf of Roxane Laboratories and Boehringer
13   Ingelheim:
14
15        JARED T. HECK, ESQ.
16        Kirkland & Ellis
17        200 East Randolph Drive
18        Chicago, Illinois 60601
19        (312) 469-7087
20        jheck@kirkland.com
21
22

Page 301

1            A P P E A R A N C E S (Cont'd)
2
3    On behalf of Sandoz, Inc.:
4
5         MILANA SALZMAN, ESQ. (via phone)
6         White & Case LLP
7         1155 Avenue of the Americas
8         New York, New York 10036-2787
9         (212) 819-8711
10        msalzman@whitecase.com
11
12   On behalf of Schering-Plough Corporation,
13   Schering Corporation and Warrick
14   Pharmaceuticals Corporation:
15
16        JOHN P. BUEKER, ESQ.
17        Ropes & Gray
18        One International Place
19        Boston, Massachusetts 02110-2624
20        (617) 951-7050
21        john.bueker@ropesgray.com
22

Page 302

1            A P P E A R A N C E S (Cont'd)
2
3    On behalf of Ethex Corporation:
4
5         CLARA VONDRICH, ESQ.
6         Arnold & Porter
7         555 Twelfth Street, N.W.
8         Washington, D.C. 20004
9         (202) 942-5000
10
11
12   ALSO PRESENT:
13
14        CONWAY BARKER, Videographer
15
16
17
18
19
20
21
22

Page 303

1                     C O N T E N T S
2    WITNESS NAME: SUE GASTON                              PAGE
3    Examination By Mr. Torborg.................. 310
4    Examination By Mr. Bueker................... 402
5    Examination By Ms. Reid..................... 535
6    Examination By Mr. Heck..................... 545
7    Examination By Mr. Koon..................... 548
8
9                     E X H I B I T S
10   NUMBER             DESCRIPTION                        PAGE
11   Exhibit Abbott 752, excerpt from rough
12             transcript of deposition of
13             Zachary Bentley............ 315
14   Exhibit Abbott 753, HHC004-0191 - 0192......... 385
15   Exhibit Abbott 754, HHD 180-0034 - 0039........ 391
16   Exhibit Abbott 755, KY_DMS_0000000125919 - 5921 398
17
18                    E X H I B I T S
19   NUMBER             DESCRIPTION                        PAGE
20   Exhibit NY Counties 001, excerpt from the CFR
21             Section 447.332....... 406
22   Exhibit NY Counties 002, HHD175-0849........... 412

**Page 304**

```
 1           EXHIBITS (CONTINUED)
 2   NUMBER         DESCRIPTION         PAGE
 3   Exhibit NY Counties 003, FUL Drug List
 4          Transmittal No. 37
 5          dated 11/20/01........ 416
 6   Exhibit NY Counties 004, HHD175-0850 - 0852..... 431
 7   Exhibit NY Counties 005, HHD175-1492........... 440
 8   Exhibit NY Counties 006, HHD175-2110........... 445
 9   Exhibit NY Counties 007, HHD175-0009........... 453
10   Exhibit NY Counties 008, HHD175-0276........... 459
11   Exhibit NY Counties 009, FUL Drug List
12          Transmittal No. 37
13          dated 6/27/04......... 466
14   Exhibit NY Counties 010, HHD170-1050 - 1053.... 469
15   Exhibit NY Counties 011, HHD175-1065 - 1071.... 473
16   Exhibit NY Counties 012, HHD175-0557 - 0559.... 491
17   Exhibit NY Counties 013, HHD175-1073 - 1077.... 499
18   Exhibit NY Counties 014, ALMED 304072 - 304141. 508
19   Exhibit NY Counties 015, Spreadsheet entitled
20          Albuterol .083%
21          Solution As of June
22          1997.................. 511
```

**Page 305**

```
 1           EXHIBITS (CONTINUED)
 2   NUMBER         DESCRIPTION         PAGE
 3   Exhibit NY Counties 016, Excerpt from the FDA's
 4          Orange Book, 1997...... 513
 5   Exhibit NY Counties 017, Excerpt from the FDA's
 6          Orange Book, 1998...... 515
 7   Exhibit NY Counties 018, HHD175-1059 - 1063.... 519
 8
 9           E X H I B I T S
10   NUMBER         DESCRIPTION         PAGE
11   Exhibit Dey 136, Excerpt from the FDA's Orange
12          Book, 2000............ 537
13   Exhibit Dey 137, HHC 0160123 - 0125............ 541
14
15           E X H I B I T S
16   NUMBER         DESCRIPTION         PAGE
17   Exhibit Aventis 001, Medicaid Drug Rebate
18          Program Release No. 18.... 554
19   Exhibit Aventis 002, Document entitled HCFA's
20          Medicaid Drug Rebate Staff 555
21   Exhibit Aventis 003, Medicaid Drug Rebate
22          Program Release No. 29.... 567
```

**Page 306**

```
 1           EXHIBITS (CONTINUED)
 2   NUMBER         DESCRIPTION         PAGE
 3   Exhibit Aventis 004, Chart entitled AMP/Best
 4          Price Calculations........ 570
 5   Exhibit Aventis 005, CMS carrier release number
 6          47 dated 7/13/00.......... 580
 7   Exhibit Aventis 006, Chart entitled Exclusions
 8          from Rebate Program....... 582
```

**Page 307**

```
 1              PROCEEDINGS
 2              (9:24 a.m.)
 3          THE VIDEOGRAPHER:  In the United States
 4   District Court for the District of Massachusetts
 5   In Re: Pharmaceutical Industry Average Wholesale
 6   Price Litigation, related to the United States of
 7   America ex rel. Ven-A-Care of the Florida Keys
 8   Incorporated versus Abbott Laboratories
 9   Incorporated et al., Case Number 01-CV-12257 PBS,
10   this is the deposition of Sue E. Gaston, volume
11   2.
12          Today's date is March 19th 2008.  The
13   location of the deposition is Jones Day, 51
14   Louisiana Avenue, Northwest, Washington, D.C.
15   Will counsel please identify yourselves and state
16   whom you represent?
17          MR. TORBORG:  David Torborg from Jones
18   Day on behalf of Abbott Laboratories.
19          MR. BUEKER:  John Bueker from Ropes &
20   Gray on behalf of Schering Corporation, Schering-
21   Plough Corporation and Warrick Pharmaceuticals
22   Corporation.
```

Page 440

1  happened with that draft that was put out at that
2  time I can't recall.
3     Q.  Other than the 2000/2001 draft list, do
4  you recall another instance in which CMS
5  circulated a FUL list without manual review and
6  got a series of complaints?
7     A.  I don't recall that.
8     Q.  So in your mind at least 2000/2001,
9  that instance is unique?
10    A.  Yes.
11       MR. BUEKER:  I ask the court reporter
12 to mark a one-page document with the Bates number
13 HHD 175-1492 as New York Counties Defendants'
14 Exhibit 5 for identification, please.
15       (Exhibit NY Counties 005 was
16 marked for identification.)
17 BY MR. BUEKER:
18    Q.  Ms. Gaston, the court reporter his
19 placed in front of you what has been marked as
20 New York Counties Defendants' Exhibit 5 for
21 identification.  And this I apologize is where
22 this might begin to get repetitive.  But Exhibit

Page 441

1  5 you would agree is a printout from the FULs
2  system from August of 2001, correct?
3     A.  Correct.
4     Q.  And it's a printout from the FUL's
5  system that relates to the 0.5-milligram strength
6  of clonazepam?
7     A.  Can I just back up?  You said August
8  2001.  I don't have a date on mine.
9     Q.  Okay.  Fair point.  The copy wasn't
10 well done.
11       MS. REID:  John, do you want to give me
12 her mine?
13       MR. BUEKER:  Sure.
14       MS. MARTINEZ:  Could I just look at it?
15       MR. BUEKER:  Sure.  Perhaps we could
16 substitute that as the one for the record,
17 please?
18       (Whereupon, Exhibit NY Counties
19 005 was replaced with a better photocopy of the
20 same document.)
21 BY MR. BUEKER:
22    Q.  Ms. Gaston, I apologize for you.  You

Page 442

1  now have in front of you what's been marked as
2  Exhibit 5 for identification.  And you would
3  agree with me that it's an August 2001 printout
4  from the FULs system?
5     A.  Yes.
6     Q.  And it relates to the 0.5-milligram
7  strength of clonazepam?
8     A.  Correct.
9     Q.  Which I'll represent to you is one of
10 the nine drugs that are at issue in the focused
11 discovery in the New York Counties.  Is that your
12 handwriting down at the bottom of the page?
13    A.  No.
14    Q.  That's Ms. Bergin's handwriting?
15    A.  Correct.
16    Q.  But nonetheless you recognize Exhibit 5
17 to be the printout from the FULs system that's
18 kind of the basis for the manual review that CMS
19 would have done in terms of setting this FUL?
20    A.  Correct.
21    Q.  And if you'd turn back with me to page
22 5 of Exhibit 3, can we agree that the 0.2455

Page 443

1  that's written at the bottom of page 5 is
2  actually what becomes the FUL in November of 2001
3  for the 5-milligram strength for clonazepam?
4     A.  Correct.
5     Q.  And looking at Exhibit 3, what you see
6  is that that's set on the basis of a Blue Book
7  price?  That's the B?
8     A.  Correct.
9     Q.  And on the package size of 100?
10    A.  Correct.
11    Q.  Turning back to Exhibit 5, and there's
12 Ms. Bergin's writing down at the bottom.  This
13 FUL appears to have been set on the basis of
14 Purepac's WAC?
15    A.  Correct.
16    Q.  And if you go up and look, Purepac's
17 WAC at this time as reported by Blue Book was
18 0.16370, correct?
19    A.  Correct.
20    Q.  And you see in this FULs printout from
21 CMS again that there were lower published prices
22 that CMS was considering when setting this FUL,

Page 444

1  correct?
2      A.  Correct.
3      Q.  For example, Teva Pharmaceuticals,
4  Inc., a few up from the bottom, has a lower
5  published price?
6      A.  Correct.
7      Q.  But there's a T over in the left-hand
8  column which we established earlier I think meant
9  that one was maybe temporarily unavailable?
10     A.  Correct.
11     Q.  But if you look up at Major
12 Pharmaceuticals, as an example, up at the top,
13 Major has a lower published price in both Red
14 Book and Blue Book, correct?
15     A.  Correct.
16     Q.  Do you know why CMS chose not to set a
17 FUL on the basis of that lower published price?
18     A.  I could give you my opinion.
19     Q.  Sure.
20     A.  That here again what I think they were
21 trying to do was since there's such a difference
22 between the .07 and then the next price of

Page 445

1  .16370, that we wanted to make sure that the FUL
2  price that's set is a reasonable price and that
3  we'll be assured the availability of the drug.
4  So we went up to the next lowest price.
5      Q.  And when you say reasonable, what do
6  you mean in that context?
7      A.  That we feel that the pharmacies will
8  be able to purchase this drug at the FUL price.
9      Q.  So in other words, you thought it was
10 reasonable to ignore a published price that was
11 maybe too low in CMS's view so that you
12 established a reasonable FUL, correct?
13     A.  Correct.
14     Q.  I think we can set Exhibit 5 to the
15 side.  We'll do another one that looks exactly
16 like it.  If the court reporter could mark as
17 Exhibit 6 for identification New York Counties
18 Defendants' Exhibit 6 for identification HHD 175-
19 2110.  And I do confirm that this one has a date.
20         (Exhibit NY Counties 006 was
21 marked for identification.)
22 BY MR. BUEKER:

Page 446

1      Q.  Ms. Gaston, you recognize Exhibit 6 to
2  be again a printout from the FULs system?
3      A.  Correct.
4      Q.  And Exhibit 6 is dated August of 2001,
5  correct?
6      A.  Correct.
7      Q.  And this is the printout that relates
8  to establishing a FUL in this case for the 1
9  milligram strength of lorazepam?
10     A.  Correct.
11     Q.  Which I'll represent to you is another
12 one of the nine drugs that are the subject of
13 focused discovery in the New York Counties case.
14 I take it that's not your handwriting down at the
15 bottom of Exhibit 6?
16     A.  Correct.
17     Q.  That's again, Ms. Bergin's handwriting?
18     A.  Yes.
19     Q.  But you are familiar with Exhibit 6 and
20 recognize it to be a printout from the FULs
21 system that would have been the basis on which
22 CMS began its manual review of this FUL?

Page 447

1      A.  Yes.
2      Q.  I want to ask you about some text
3  that's written in the middle of the page in bold
4  and it's preceded by a couple of stars.  It says
5  "FULs price not greater than another supplier."
6  Do you see that?
7      A.  Yes.
8      Q.  Is that text that the FULs system in
9  your experience would have put on a page like
10 this?
11     A.  Correct.
12     Q.  Explain to me what that means.
13     A.  I think it was checking on the
14 supplier.  It has to make sure there's at least
15 three suppliers.  And here again, I haven't dealt
16 with this for a while, so I need to refresh my
17 memory.
18     Q.  Well, let me see if we can get at it
19 this way.  Just above that text do you see a low
20 price?
21     A.  Correct.
22     Q.  And you see that it's .1999?

Page 448

1   A. Correct.
2   MR. WINGET-HERNANDEZ: Objection, form.
3   I apologize. I withdraw that objection. I just
4   was confused about what number you were looking
5   at.
6   BY MR. BUEKER:
7   Q. Okay. And you see there's a number
8   that's crossed out that's .2999 over in the left-
9   hand side just before the bolded text we were
10  talking about?
11  A. Correct.
12  Q. And that -- because it's cut off,
13  perhaps it would help to refer to Exhibit 5. But
14  that's the FUL price that the FULs system
15  calculated, correct --
16  A. Correct.
17  Q. -- the crossed out number .2999?
18  A. Correct.
19  Q. And that FUL number that's calculated
20  by the system would have been based on this low
21  price of .1999, correct?
22  A. Correct.

Page 449

1   Q. And if you go up and look at the list
2   of published prices above, you would agree with
3   me that there's no published price that's below
4   that .2999 number, right?
5   A. Correct.
6   Q. Except the one price in which the FUL
7   was based?
8   A. Yes.
9   Q. Or I shouldn't say based. Was
10  calculated by the system.
11  So does that help to refresh your
12  recollection that indeed this warning, "FULs
13  price not greater than another supplier," was
14  essentially an occasion that the FULs system had
15  detected that by basing a FUL on the lowest
16  published price the FUL was being set at below
17  the next published price?
18  A. Correct.
19  Q. Is that a warning -- you talked the
20  last time in your last deposition about certain
21  flags that the system had to tell you and your
22  colleagues that you needed to conduct a manual

Page 450

1   review. Is this one of those flags?
2   A. Yes.
3   Q. And why was it important that the FULs
4   system cautioned you to look at or manually
5   review a FUL that was set in this manner?
6   A. Because if we allowed the FUL to be set
7   at this price then it would be an availability
8   issue.
9   Q. In other words, that if you allowed a
10  FUL to be set at this price based on this lowest
11  published price, then you'd have an availability
12  issue and that's a problem, it's not a reasonable
13  FUL?
14  A. Correct.
15  Q. And so that number is crossed out and a
16  different number is written in that's .5718,
17  right?
18  A. For the FUL price.
19  Q. For the FUL price.
20  A. Correct.
21  Q. And that appears to be based on from
22  the note on the bottom a United Research Labs or

Page 451

1   URL's WAC?
2   A. Correct.
3   Q. And URL's WAC was not the lowest
4   published price in this instance, right? Because
5   we've seen for example Major Pharmaceuticals had
6   a lower published price?
7   A. Well, I thought you meant excluding
8   that published price.
9   Q. No. I didn't mean that.
10  A. Yeah. Major's was the next lowest.
11  The next lowest was URL.
12  Q. So what we see in Exhibit 6 is another
13  situation in which, exercising its discretion,
14  CMS chose to set a FUL not based on the lowest
15  published price but based on the next lowest
16  published price because that's what was
17  reasonable to do in terms of ensuring access,
18  correct?
19  A. Correct.
20  Q. And for the record, why is it that CMS
21  would have chosen to ignore the lowest published
22  price?

Gaston, Sue - Vol. II                                                    March 19, 2008
Washington, DC

Page 452
1   MS. MARTINEZ: Objection, form.
2   A. Because setting the FUL on the lowest
3   published price here might not allow us to have a
4   reasonable FUL price for this drug.
5   Q. Okay. Let me see if I can cure Ani's
6   objection. Why would CMS have chosen to have
7   ignored the lowest published price in setting a
8   FUL for the 1 milligram lorazepam in 2001?
9   MS. MARTINEZ: Objection, form. Just
10  to let you know, one of my objections is to you
11  were stating that CMS is ignoring the price, the
12  characterization of ignoring.
13  MR. BUEKER: Okay. Didn't use? Is
14  that better?
15  MS. MARTINEZ: Did not use. Yeah.
16  MR. BUEKER: Okay.
17  BY MR. BUEKER:
18  Q. Just for the record, why is it that CMS
19  chose not to use the lowest published price in
20  setting the FUL for lorazepam in 2001?
21  A. Because we wanted to assure that the
22  FUL price was a reasonable price. So we chose to

Page 453
1   ignore Major's lowest price.
2   Q. I think we can set Exhibit 6 to the
3   side. I warned you this was going to get
4   repetitive. May I ask the court reporter to mark
5   as New York Counties Defendants' Exhibit 7 for
6   identification a one-page document that's labeled
7   HHD 175-0009 in the bottom right-hand corner. I
8   was looking for one that's got the best date.
9   (Exhibit NY Counties 007 was
10  marked for identification.)
11  BY MR. BUEKER:
12  Q. Ms. Gaston, do you have in front of you
13  what's been marked as Exhibit 7 for
14  identification?
15  A. Yes.
16  Q. And this is, again, a printout from the
17  CMS's FUL system and it's dated in the upper
18  left-hand corner 7/24/2001?
19  A. Correct.
20  Q. And this is the same kind of printout
21  we've been looking at in other examples; it's
22  just that this one is now for the 500 milligrams

Page 454
1   strength of cefadroxil?
2   A. Correct.
3   Q. And I'll represent cefadroxil is
4   another one of the drugs at issue in the New York
5   Counties case.
6   Is that your handwriting at the bottom
7   of Exhibit 7?
8   A. No.
9   Q. Whose handwriting is that is that?
10  A. It's Cindy Bergin's.
11  Q. But nevertheless, you're familiar with
12  the form of Exhibit 7; it's a printout from the
13  FULs system?
14  A. Correct.
15  Q. Can you read into the record what Ms.
16  Bergin wrote in her handwriting at the bottom of
17  the page?
18  A. She said on 7/25 "The FUL was too low
19  at 1.2749, but when I raised it it became equal
20  to Major's AWP. That means delete for now."
21  Q. Can you help me understand what she was
22  doing here?

Page 455
1   A. It appears that the FUL price the
2   system generated needed to be evaluated --
3   Q. We've got another one of those notes,
4   right? The FUL price not greater than another
5   supplier?
6   A. Correct. And so we needed to do some
7   manual review. It looks like the low price that
8   it was based on --
9   Q. It looks like Major?
10  A. -- was Major. And it seemed extremely
11  low. Not extremely. But it seemed much lower
12  than all the other published prices.
13  Q. And so the next, as I understand it,
14  the next highest published price after Major's
15  was Zenith Labs?
16  A. Correct.
17  Q. And when you used a Zenith Labs price
18  as I understand it you got something -- you
19  multiplied that by 150 percent to calculate what
20  a FUL might be, you get a number that was
21  equivalent to Major's AWP?
22  A. That's what it appears.

43 (Pages 452 to 455)

Page 456

1    Q.  And Ms. Bergin's note indicates that in
2  this instance CMS did not set a FUL because the
3  FUL price would have been equal to Major's AWP;
4  is that correct?
5    A.  Correct.
6    Q.  Are you familiar with making that kind
7  of a decision not to set a FUL when it was equal
8  to an AWP?
9    A.  Yes.
10   Q.  Why would CMS decline to set a FUL when
11 the FUL was equal to an AWP?
12   A.  Because states have other methodologies
13 they can use for reimbursement.  And their
14 regular reimbursement methodology would be a
15 percentage off of AWP.  That would be a
16 reasonable reimbursement rate for other drugs.
17 So the purpose of setting the FUL price is to try
18 to set reasonable reimbursement.  And that would
19 kind of counter what the states were doing with
20 their other reimbursement methodology.
21   Q.  I see.  So just like we talked about
22 there morning, one of the objectives of the FUL

Page 457

1  program is cost savings?
2    A.  Correct.
3    Q.  And so if you set a FUL that was equal
4  to an AWP it wouldn't really result in any cost
5  savings to the state?
6    A.  Correct.
7    Q.  And so in this case, if I understand
8  what's going on here with cefadroxil in 2001,
9  basing a FUL on the lowest published price seemed
10 to result in a FUL that was too low, right?
11   A.  It appeared that way because of the
12 compendia information that we have.
13   Q.  And setting a FUL -- not using that
14 lowest published price but moving up to the next
15 seemed to result in a FUL that was too high?
16   A.  Correct.
17   Q.  And so CMS declined to set a FUL given
18 the published prices that were out there?
19   A.  Correct.
20   Q.  Let me just digress here for a second.
21 What role if any did AWP play in setting FULs?
22   A.  Generally, it did not.

Page 458

1    Q.  Can you think of any instance in which
2  CMS based a FUL on the published AWP price?
3    A.  I can't think of a situation where they
4  did.
5    Q.  In other words, other than being used
6  to check whether there was going to be cost
7  savings that resulted, FUL was basically -- or --
8  I'm sorry -- AWP was basically irrelevant for the
9  FUL calculation?
10       MS. MARTINEZ:  Objection, form.
11       MR. WINGET-HERNANDEZ:  Objection, form.
12   A.  It was used in the methodology just for
13 consideration, but I don't know of any times when
14 it would have been used to set a FUL price.
15   Q.  So in terms of a basis of calculation,
16 the price on which the FUL was based, AWP was
17 irrelevant?
18       MR. WINGET-HERNANDEZ:  Objection, form.
19       MS. MARTINEZ:  Objection, form.
20   A.  We wouldn't have used AWP.
21   Q.  Why would CMS not have used AWP?
22   A.  Because we know that states will be

Page 459

1  reimbursing for drugs at a percentage off of AWP.
2  That's one of the methodologies they could use.
3  And we will let states reimburse according to
4  that methodology.  Setting a FUL using the AWP
5  wouldn't achieve the cost savings where if they
6  did it with their own methodology, a percentage
7  off of AWP, they would be achieving savings.
8    Q.  You can set that aside.  But don't
9  worry, I have others that look like it.
10   A.  I'm sure.
11   Q.  Can I ask the court reporter to mark as
12 Exhibit 8 -- New York Counties Defendants'
13 Exhibit 8 for identification a one-page document
14 labeled HHD 175-0276.
15       (Exhibit NY Counties 008 was
16 marked for identification.)
17 BY MR. BUEKER:
18   Q.  Ms. Gaston, you have in front of you
19 Exhibit 8?
20   A.  Yes.
21   Q.  And Exhibit 8, again, looks to be to
22 you a printout from the FULs system for 500-

Page 496

1   12 reflects the manual evaluation that was being
2   done in the October 2001 time period as to
3   whether or not to establish or reestablish a FUL
4   for -- or revise the FUL for the 90-microgram
5   albuterol inhaler?
6       A.  Correct.
7       Q.  And Exhibit 3 is the CMS transmittal
8   that comes out November 20th 2001, so shortly
9   after the analysis we see in Exhibit 12?
10      A.  Correct.
11      Q.  And if you flip to the second page,
12  page 2, of Exhibit 3 you'll see that there's no
13  FUL established for the 90-microgram albuterol
14  inhaler? There's other albuterol FULs but not for
15  the inhaler, correct?
16      A.  Correct.
17      Q.  Which is consistent with the note you
18  wrote in Exhibit 12, remove FUL greater than most
19  AWPs, correct?
20      A.  Correct.
21      Q.  So in other words, CMS didn't establish
22  or reestablish a FUL -- or revise the FUL for the

Page 497

1   90-microgram inhaler in this 2001 time period; it
2   actually removed the FUL?
3       A.  Correct.
4       Q.  And it did so despite the fact there
5   are shown on this sheet a series of
6   manufacturers' reported published prices, right?
7       A.  Correct.
8       Q.  There's a published price for Warrick,
9   there's a published price for Schering, Martec,
10  Zenith and Glaxo-Wellcome, among others?
11      A.  I think Schering is discontinued.
12      Q.  Oh, I'm sorry. You're right. But the
13  note at the bottom -- Ms. Bergin's note at the
14  bottom would indicate that there were at least
15  reported published prices for Warrick, Martec and
16  Zenith?
17      A.  Correct.
18      Q.  In other words, there were three
19  manufacturers who were reported published prices
20  for the 90-microgram inhaler?
21      A.  Correct.
22      Q.  And so in other words the conditions

Page 498

1   necessary for CMS to establish a FUL were met at
2   this time?
3       MS. MARTINEZ:  Objection, form.
4       A.  The conditions were met, but the
5   pricing condition wasn't met.
6       Q.  What pricing condition was that?
7       A.  It was that if you would take the
8   prices that are remaining and multiply by 150
9   percent you're going to have a price that's, it
10  looks like, over what the AWPs are.  So you're
11  sort of defeating the purpose of the FUL program.
12      Q.  Which was, again, soft savings?
13      A.  Soft savings to the states.  The states
14  can set their own reimbursement level at that
15  point.
16      Q.  So as we've kind of seen throughout,
17  CMS is trying to establish a FUL that's not too
18  low and not too high to achieve a cost savings,
19  but also not set it too low to create an access
20  issue; that's the balance CMS is trying to
21  strike?
22      A.  Correct.

Page 499

1       Q.  And you did that -- the balance was
2   struck, sometimes the computer program worked as
3   it was supposed to and that balance was struck by
4   the computer program, but other times it was the
5   result of manual intervention?
6       A.  Correct.
7       Q.  And the manual intervention resulted in
8   CMS making a choice in its discretion, correct?
9       A.  Correct.
10      MR. BUEKER:  Anyone keeping track of
11  how many drugs we've covered?
12      MS. MARTINEZ:  No.
13      MR. BUEKER:  Well, we're going to do
14  another one. Can I ask the court reporter to
15  mark as Exhibit 13 for identification a five page
16  document that's Bates labeled HHD 175-1073 to
17  1077.
18      (Exhibit NY Counties 013 was
19  marked for identification.)
20  BY MR. BUEKER:
21      Q.  Not a rush, but just let me know when
22  you're ready.