# EXHIBIT Y

# REBATE AGREEMENT

## BETWEEN

### NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES,
an agency of and acting on behalf of the State of New York
with offices at 40 North Pearl Street, Albany, New York 12243
(hereinafter referred to as the "Department")

### and

### MYLAN PHARMACEUTICALS, INC., a manufacturer of
outpatient drugs, with offices at   MORGANTOWN,WV 26505
and labeler code of 00378
(hereinafter referred to as the "Manufacturer")

The Department and the Manufacturer, on its own behalf, for purposes of Subdivision 7, paragraph (d) of Section 367-a of the Social Services Law, of the State of New York, hereby agree to the following:

## I.    Definitions

Terms used in this Agreement shall have the same meaning as those defined in the Manufacturer's agreement with the Secretary of Health and Human Services pursuant to Section 1927 of the Social Security Act (42 U.S.C. 1396s), except as otherwise expressly provided herein. "Home Relief" refers to the program of public assistance established pursuant to Title 3 of Article 5 of the Social Services Law.

## II.    Manufacturer's Responsibilities

In order for outpatient drugs of the Manufacturer dispensed under the Medical Assistance (MA) program to persons in receipt of MA benefits, as a result of their being eligible for or in receipt of Home Relief and for which no federal financial participation under the Social Security Act is available, to be reimbursable by the Department, the Manufacturer agrees to the following:

(a)    To calculate and make a Rebate Payment to the Department for the Manufacturer's Covered Outpatient Drugs dispensed to the aforementioned persons and paid for by the Department during a quarter.

(b)    Calculation of the Rebate Payment for all Covered Outpatient Drugs shall use the identical formula used to determine the basic rebate for federal financial participation single source drugs and innovator multiple source drugs, pursuant to paragraph one of Subdivision (c) of Section 1927 of the Federal Social Security Act (42 U.S.C. 1396s(c)(1)). The "best price" definition referred to in this basic rebate calculation shall also apply to Noninnovator Multiple Source Drugs of the Manufacturer. The "best price" shall be exclusive of rebates under any agreement with, or law, rule, or order of, any state, state agency, or subdivision thereof, where such agreement does not involve a direct transaction in which the state, state agency, or subdivision thereof takes possession of or acquires drugs.

The rebate amount will be calculated as follows:

2

### Calendar Year 1991

The greater of 12.5% of Average Manufacturer's Price (AMP) or AMP minus Best Price. Maximum rebate capped at 25% of AMP.

### Calendar Year 1992

The greater of 12.5% of AMP or AMP minus Best Price. Maximum rebate capped at 50% of AMP.

### Calendar Years 1993 & thereafter

The greater of 15% of AMP or AMP minus Best Price.

(c) To make such rebate payments for each calendar quarter within 30 days after receiving from the Department the Medicaid Utilization Information defined in Section 1927 of the Social Security Act. Such information shall be zip code specific, if requested by the manufacturer, for drugs covered under a rebate agreement. The Department reserves the right to charge the Manufacturer an amount sufficient to cover the costs of providing such zip code specific information.

(d) This Agreement, if entered into before September 15, 1991 shall be deemed to have been entered into on April 1, 1991. If this Agreement is entered into on or after September 15, 1991 it shall not be effective until April 1, 1992 unless such Agreement provides that rebates will be retroactively calculated as if the Agreement had been in effect on April 1, 1991.

(e) To continue to make a Rebate Payment on all of its Covered Outpatient Drugs for as long as an Agreement with the Department is in force and the Department Medicaid Utilization Information reports that payment was made for that drug, regardless of whether the Manufacturer continues to market that drug. If there are no sales by the Manufacturer during a quarter, the AMP and Best Price last reported will continue to be used in calculating rebates.

(f) The terms and conditions of the Manufacturer's Rebate agreement with the Federal Secretary of Health and Human Services with respect to periodic payment of the rebate, provision of information by the Department, audits, Manufacturer provision of information, verification of surveys, penalties, confidentiality of information and length of the agreement shall apply to drugs of the Manufacturer dispensed under the MA program to all persons in receipt of MA benefits as a result of their being eligible for or in receipt of Home Relief.

3

**III.    General Provisions**

(a)    Any notice required to be given pursuant to the terms and provisions of this Agreement will be sent in writing.
Notice to the Department will be sent to:

> Michael A. Falzano, Director
> Bureau of Ambulatory Services, Inpatient Care and Contracts
> Division of Medical Assistance
> Department of Social Services
> 40 North Pearl Street
> Albany, New York 12243-0001

Notice to the Manufacturer will be sent to:

> Address set forth in caption of this Agreement or as provided in written notice provided by the Manufacturer to the Department.

(b)    In the event of a transfer in ownership of the Manufacturer, this Agreement is automatically assigned to the new owner subject to the conditions specified in Section 1927 of the federal Social Security Act and this Agreement.

(c)    Nothing in this Agreement will be construed to require or authorize the commission of any act contrary to law. If any provision of this Agreement is found to be invalid by a court of law, this Agreement will be construed in all respects as if any invalid or unenforceable provision were eliminated, and without any effect on any other provision.

(d)    Nothing in this Agreement shall be construed as a waiver or relinquishment of any legal rights of the Manufacturer or the Department under the Constitution, the Federal Social Security Act, other federal laws, or State laws.

(e)    **Entire Agreement** - This Agreement constitutes the entire understanding between the parties hereto with respect to the transactions contemplated herein and supersedes all prior written or oral agreements, commitments or understandings with respect to the matters provided for herein.

(f)    **Modification**

Except as provided in paragraphs (b) and (c), this Agreement shall not be amended, altered or modified other than by an instrument in writing duly executed by the parties hereto and approved by the Office of the State Comptroller.

(g)    **Dispute Resolution**

1.    In the event that in any quarter a discrepancy in Medicaid Utilization Information is discovered by the Manufacturer, which the Manufacturer and the Department in good faith are unable to resolve, the Manufacturer will provide written notice of the discrepancy, by NDC number, to the Department prior to the due date for payment of the rebate for that quarter.

4

2.   If the Manufacturer in good faith believes the Department's Medicaid Utilization Information is erroneous, the Manufacturer shall pay the Department that portion of the rebate amount claimed which is not disputed within the required due date for payment of the rebate for the quarter in question. The balance due, if any, plus interest at a rate equal to the overpayment rate then in effect as set by the Commissioner of Taxation and Finance pursuant to Section 1096 Subdivision (e) of the Tax Law, will be paid or credited by the Manufacturer to the Department by the due date of the next quarterly payment after resolution of the dispute.

3.   The Department and the Manufacturer will use their best efforts to resolve the discrepancy within 60 days of receipt of such notification. In the event that the Department and the Manufacturer are not able to resolve a discrepancy within 60 days, the process set forth in paragraph 5 of this subdivision (g) shall apply.

4.   Adjustments to Rebate Payments shall be made if information indicates that either Medicaid Utilization Information, AMP or Best Price were greater or less than the amount previously specified.

5.   Except as otherwise provided in this Agreement, any dispute concerning any question of fact or law arising under this Agreement which is not disposed of by mutual agreement of the parties shall be initially decided by a designee of the Commissioner of the Department who is knowledgeable about applicable state and federal laws, rules and regulations pertaining to drug coverage under the Medicaid program. A copy of the written decision shall be furnished to the Manufacturer. Upon issuance of such decision, the parties shall proceed diligently with the performance of this Agreement and shall comply with the provisions of such decision and continue to so comply pending any further resolution of such dispute as provided herein. The decision of the designee of the Commissioner shall be final and conclusive unless, within ten (10) days from the receipt of such decision, the Manufacturer furnishes the Commissioner a written appeal. In the event of an appeal, the Commissioner will afford the Manufacturer a hearing utilizing the process set forth in Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York and confirm, annul or modify the initial decision. The decision of the Commissioner shall be final and conclusive unless it is overruled or modified by a court of competent jurisdiction. Pending final decision of any legal action or proceeding hereunder by a court of competent jurisdiction, both parties shall proceed diligently with the performance of this Agreement in accordance with the Commissioner's decision.

(h).   **Termination**

1.   (a)   This Agreement may be terminated by the Manufacturer for any reason. Such termination shall become effective on the first day of the first calendar quarter beginning at least 60 days after the Manufacturer gives written notice of termination except that if the Manufacturer wishes to terminate this Agreement at the end of the existing term, written notice of termination shall be given by the Manufacturer at least 90 days before the end of the term.

(b)   This Agreement may be terminated by the Department whenever the Manufacturer materially defaults in performance of this Agreement and fails to cure such default within 30 days after receipt from the Department of a written notice specifying the default. The Department shall give the Manufacturer written notice of termination to be effective no sooner than 30 days subsequent to the date of issuance.  The Manufacturer may, within 10 days after receipt of the notice of termination, request in writing review of such termination by the Commissioner of the Department setting forth with particularity the reasons why this Agreement should not be terminated for material default. The Manufacturer's written request for review of the termination shall not delay the effective date of termination unless the Commissioner, in the sole exercise of his or her discretion, determines that the Manufacturer's claims raise sufficient questions concerning the termination to warrant a delay of the effective date of termination. The Commissioner shall review the termination in accordance with the procedures specified for "written appeal" in Section III.g.5, Dispute Resolution, of this Agreement. The Commissioner's decision shall have the effect specified under Dispute Resolution. If it is determined that the Manufacturer was not in material default hereunder, the Department will allow the Manufacturer to resume performance under this Agreement.

(c)   This Agreement shall be terminated automatically if the Manufacturer's Rebate agreement with the Secretary of Health and Human Services pursuant to Section 1927 of the Social Security Act (42 U.S.C. 1396s) is terminated. The effective date of termination shall be the same date on which the Federal Rebate agreement terminates.

(d)   This Agreement shall be effective for an initial period of one year beginning April 1, 1991, and shall be automatically renewed for additional terms of one year , unless the Manufacturer or the Department gives written notice of intent not to renew the Agreement at least 90 days before the end of the current period.

2.     Other terms and conditions of the Manufacturer's Rebate Agreement with the federal Secretary of Health and Human Services pertaining to termination, which are not inconsistent with this paragraph (h), shall apply to this Agreement.

(i)     **Choice of Law**

This Agreement shall be interpreted according to the laws of the State of New York. The Manufacturer shall be required to bring any legal proceeding against the Department or the State arising from this Agreement in New York State Courts.

(j)     The Manufacturer represents and agrees to be bound by the terms and conditions of Appendix A attached hereto and made a part hereof.

6

IN WITNESS WHEREOF, the parties hereto signed this Agreement on the day and year appearing opposite their respective signatures:

## NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES

DATE:_____ BY:_____
                                 TITLE:_____

MANUFACTURER: :MYLAN PHARMACEUTICALS, INC.  LABELER CODE: 00378

DATE: October 2, 1991        BY: R. P. Jackson
                             TITLE: Vice President, Sales
Federal Tax Identification Number  55-0455423

AFFIX CORPORATE SEAL

STATE OF WEST VIRGINIA
COUNTY OF MONONGALIA ss.:

On this 2nd day of Oct., 1991, before me personally came R.P. Jackson, to me known, who being duly sworn, did depose and say that (s)he is the Vice President, Sales of the Mylan Pharmaceuticals Inc., that corporation described in and which executed the foregoing instrument; that (s)he knew the seal of said corporation; that the seal affixed to said instrument was such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that (s)he signed his/her name thereto by like order.

_____
NOTARY PUBLIC

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DAWN J. BETO
781 CHESTNUT RIDGE ROAD
MORGANTOWN, WV 26505
My Commission Expires August 7, 2001

# APPENDIX A

## STANDARD CLAUSES FOR ALL NEW YORK STATE CONTRACTS

The parties to the attached contract, license, lease, amendment or other agreement of any kind (hereinafter, "the contract" or "this contract") agree to be bound by the following clauses which are hereby made a part of the contract (the word "Contractor" herein refers to any party other than the State, whether a contractor, licensor, licensee, lessor, lessee or any other party):

1.   **EXECUTORY CLAUSE.**  In accordance with Section 41 of the State Finance Law, the State shall have no liability under this contract to the Contractor or to anyone else beyond funds appropriated and available for this contract.

2.   **NON-ASSIGNMENT CLAUSE.**  In accordance with Section 138 of the State Finance Law, this contract may not be assigned by the Contractor or its right, title or interest therein assigned, transferred, conveyed, sublet or otherwise disposed of without the previous consent, in writing, of the State and any attempts to assign the contract without the State's written consent are null and void.  The Contractor may, however, assign its right to receive payment without the State's prior written consent unless this contract concerns Certificates of Participation pursuant to Article 5-A of the State Finance Law.

3.   **COMPTROLLER'S APPROVAL.**  In accordance with Section 112 of the State Finance Law (or, if this contract is with the State University or City University of New York, Section 355 or Section 6218 of the Education Law), if this contract exceeds $5,000 ($20,000 for certain S.U.N.Y. and C.U.N.Y. contracts), or if this is an amendment for any amount to a contract which, as so amended, exceeds said statutory amount, or if, by this contract, the State agrees to give something other than money, it shall not be valid, effective or binding upon the State until it has been approved by the State Comptroller and filed in his office.

4.   **WORKERS' COMPENSATION BENEFITS.**  In accordance with Section 142 of the State Finance Law, this contract shall be void and of no force and effect unless the Contractor shall provide and maintain coverage during the life of this contract for the benefit of such employees as are required to be covered by the provisions of the Workers' Compensation Law.

5.   **NON-DISCRIMINATION REQUIREMENTS.**  In accordance with Article 15 of the Executive Law (also known as the Human Rights Law) and all other State and Federal statutory and constitutional non-discrimination provisions, the Contractor will not discriminate against any employee or applicant for employment because of race, creed, color, sex, national origin, age, disability or marital status. Furthermore, in accordance with Section 220-e of the Labor Law, if this is a contract for the construction, alteration or repair of any building or public work or for the manufacture, sale or distribution of materials, equipment or supplies, and to the extent that this contract shall be performed within the State of New York, Contractor agrees that neither it nor its subcontractors shall, by reason of race, creed, color, disability, sex or national origin:  (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract.  If this is a building service contract as defined in Section 230 of the Labor Law, then, in accordance with Section 239 thereof, Contractor agrees that neither it nor its subcontractors shall, by reason of race, creed, color, national origin, age, sex or disability:  (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract.  Contractor is subject to fines of $50.00 per person per day for any violation of Section 220-e or Section 239 as well as possible termination of this contract and forfeiture of all moneys due hereunder for a second or subsequent violation.

6.   **WAGE AND HOURS PROVISIONS.**  If this is a public work contract covered by Article 8 of the Labor Law or a building service contract covered by Article 9 thereof, neither Contractor's employees nor the employees of its subcontractors may be required or permitted to work more than the number of hours or days stated in said statutes, except as otherwise provided in the Labor Law and as set forth in prevailing wage and supplement schedules issued by the State Labor Department.  Furthermore, Contractor and its subcontractors must pay at least the prevailing wage rate and pay or provide the prevailing supplements, including the premium rates for overtime pay, as determined by the State Labor Department in accordance with the Labor Law.

7.   **NON-COLLUSIVE BIDDING REQUIREMENT.**  In accordance with Section 139-d of the State Finance Law, if this contract was awarded based upon the submission of bids, Contractor warrants, under penalty of perjury, that its bid was arrived at independently and without collusion aimed at

restricting competition.  Contractor further warrants that, at the time Contractor submitted its bid, an authorized and responsible person executed and delivered to the State a non-collusive bidding certification on Contractor's behalf.

8.    INTERNATIONAL BOYCOTT PROHIBITION.  In accordance with Section 220-f of the Labor Law and Section 139-h of the State Finance Law, if this contract exceeds $5,000, the Contractor agrees, as a material condition of the contract, that neither the Contractor nor any substantially owned or affiliated person, firm, partnership or corporation has participated, is participating, or shall participate in an international boycott in violation of the federal Export Administration Act of 1979 (50 USC App. Sections 2401 et seq.) or regulations thereunder.  If such Contractor, or any of the aforesaid affiliates of Contractor, is convicted or is otherwise found to have violated said laws or regulations upon the final determination of the United States Commerce Department or any other appropriate agency of the United States subsequent to the contract's execution, such contract, amendment or modification thereto shall be rendered forfeit and void.  The Contractor shall so notify the State Comptroller within five (5) business days of such conviction, determination or disposition of appeal (2 NYCRR 105.4)

9.    SET-OFF RIGHTS.  The State shall have all of its common law, equitable and statutory rights of set-off. These rights shall include, but not be limited to, the State's option to withhold for the purposes of set-off any moneys due to the Contractor under this contract up to any amounts due and owing to the State with regard to this contract, any other contract with any State department or agency, including any contract for a term commencing prior to the term of this contract, plus any amounts due and owing to the State for any other reason including, without limitation, tax delinquencies, fee delinquencies or monetary penalties relative thereto.  The State shall exercise its set-off rights in accordance with normal State practices including, in cases of set-off pursuant to an audit, the finalization of such audit by the State agency, its representatives, or the State Comptroller.

10.    RECORDS.  The Contractor shall establish and maintain complete and accurate books, records, documents, accounts and other evidence directly pertinent to performance under this contract (hereinafter, collectively, "the Records").  The Records must be kept for the balance of the calendar year in which they were made and for six (6) additional years thereafter.  The State Comptroller, the Attorney General and any other person or entity authorized

to conduct an examination, as well as the agency or agencies involved in this contract, shall have access to the Records during normal business hours at an office of the Contractor within the State of New York or, if no such office is available, at a mutually agreeable and reasonable venue within the State, for the term specified above for the purposes of inspection, auditing and copying.  The State shall take reasonable steps to protect from public disclosure any of the Records which are exempt from disclosure under Section 87 of the Public Officers Law (the "Statute") provided that:  (i) the Contractor shall timely inform an appropriate State official, in writing, that said records should not be disclosed; and (ii) said records shall be sufficiently identified; and (iii) designation of said records as exempt under the Statute is reasonable.  Nothing contained herein shall diminish, or in any way adversely affect, the State's right to discovery in any pending or future litigation.

11.   IDENTIFYING INFORMATION AND PRIVACY NOTIFICATION:

     (a)   FEDERAL EMPLOYER IDENTIFICATION NUMBER and/or FEDERAL SOCIAL SECURITY NUMBER.

All invoices or New York State standard vouchers submitted for payment for the sale of goods or services or the lease of real or personal property to a New York State agency must include the payee's identification number, i.e., the seller's or lessor's identification number.  The number is either the payee's Federal employer identification number or Federal social security number, or both such numbers when the payee has both such numbers.  Failure to include this number or numbers may delay payment.  Where the payee does not have such number or numbers, the payee, on his invoice or New York State standard voucher, must give the reason or reasons why the payee does not have such number or numbers.

     (b)   PRIVACY NOTIFICATION.

     (1)  The authority to request the above personal information from a seller of goods or services or a lessor of real or personal property, and the authority to maintain such information, is found in Section 5 of the State Tax Law.  Disclosure of this information by the seller or lessor to the State is mandatory.  The principal purpose for which the information is collected is to enable the State to identify individuals, businesses and others who have been delinquent in filing tax returns or may have understated their tax liabilities and to generally identify persons affected by the taxes administered by the

Commissioner of Taxation and Finance.  The information will
be used for tax administration purposes and for any other
purpose authorized by law.

(2)  The personal information is requested by
the purchasing unit of the agency contracting to purchase
the goods or services or lease the real or personal property
covered by this contract or lease.  The information is
maintained in New York State's Central Accounting System by the
Director of State Accounts, Office of the State Comptroller,
AESOB, Albany, New York 12236.

12.    EQUAL EMPLOYMENT OPPORTUNITIES FOR MINORITIES AND
WOMEN:    In accordance with Section 312 of the Executive
Law, if this contract is:  (i) a written agreement or
purchase order instrument, providing for a total expenditure
in excess of $25,000.00, whereby a contracting agency is
committed to expend or does expend funds in return for
labor, services, supplies, equipment, materials or any
combination of the foregoing, to be performed for, or
rendered or furnished to the contracting agency; or (ii) a
written agreement in excess of $100,000.00 whereby a
contracting agency is committed to expend or does expend
funds for the acquisition, construction, demolition,
replacement, major repair or renovation of real property and
improvements thereon; or (iii) a written agreement in excess
of $100,000.00 whereby the owner of a State assisted housing
project is committed to expend or does expend funds for the
acquisition, construction, demolition, replacement, major
repair or renovation of real property and improvements
thereon for such project, then:

(a) The contractor will not discriminate
against employees or applicants for
employment because of race, creed,
color, national origin, sex, age,
disability or marital status, and will
undertake or continue existing programs
of affirmative action to ensure that
minority group members and women are
afforded equal employment opportunities
without discrimination.  Affirmative
action shall mean recruitment,
employment, job assignment, promotion,
upgradings, demotion, transfer, layoff,
or termination and rates of pay or other
forms of compensation;

(b) at the request of the contracting
agency, the Contractor shall request
each employment agency, labor union, or
authorized representative of workers

with which it has a collective
bargaining or other agreement or
understanding, to furnish a written
statement that such employment agency,
labor union or representative will not
discriminate on the basis of race,
creed, color, national origin, sex; age,
disability or marital status and that
such union or representative will
affirmatively cooperate in the
implementation of the contractor's
obligations herein; and
(c) the Contractor shall state, in all
solicitations or advertisements for
employees, that, in the performance of
the State contract, all qualified
applicants will be afforded equal
employment opportunities without
discrimination because of race, creed,
color, national origin, sex, age,
disability or marital status.

Contractor will include the provisions of "a", "b" and
"c", above, in every subcontract over $25,000.00 for the
construction, demolition, replacement, major repair,
renovation, planning or design of real property and
improvements thereon (the "Work") except where the Work is
for the beneficial use of the Contractor.  Section 312 does
not apply to:  (i) work, goods or services unrelated to this
contract; or (ii) employment outside New York State; or
(iii) banking services, insurance policies or the sale of
securities.  The State shall consider compliance by a
contractor or subcontractor with the requirements of any
federal law concerning equal employment opportunity which
effectuates the purpose of his section.  The contracting
agency shall determine whether the imposition of the
requirements of the provisions hereof duplicate or conflict
with any such federal law and if such duplication or
conflict exists, the contracting agency shall waive the
applicability of Section 312 to the extent of such
duplication or conflict.  Contractor will comply with all
duly promulgated and lawful rules and regulations of the
Governor's Office of Minority and Women's Business
Development pertaining hereto.

13.  **CONFLICTING TERMS.**  In the event of a conflict
between the terms of the contract (including any and all
attachments thereto and amendments thereof) and the terms of
this Appendix A, the terms of this Appendix A shall control.

14.   **GOVERNING LAW**.  This contract shall be governed by the laws of the State of New York except where the Federal supremacy clause requires otherwise.

15.   **LATE PAYMENT**.  Timeliness of payment and any interest to be paid to Contractor for late payment shall be governed by Article XI-A of the State Finance Law to the extent required by law.

16.   **NO ARBITRATION**.  Disputes involving this contract, including the breach or alleged breach thereof, may not be submitted to binding arbitration (except where statutorily authorized) but must, instead, be heard in a court of competent jurisdiction of the State of New York.

17.   **SERVICE OF PROCESS**.  In addition to the methods of service allowed by the State Civil Practice Law & Rules ("CPLR"), Contractor hereby consents to service of process upon it by registered or certified mail, return receipt requested.  Service hereunder shall be complete upon Contractor's actual receipt of process or upon the State's receipt of the return thereof by the United States Postal Service as refused or undeliverable.  Contractor must promptly notify the State, in writing, of each and every change of address to which service of process can be made. Service by the State to the last known address shall be sufficient.  Contractor will have thirty (30) calendar days after service hereunder is complete in which to respond.

August, 1989