# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                                )
IN RE PHARMACEUTICAL INDUSTRY          )      MDL NO. 1456
AVERAGE WHOLESALE PRICE                )      Civil Action No. 01-12257-PBS
LITIGATION                                       )      Subcategory Case No. 03-10643-PBS
_____     )
                                                )
THIS DOCUMENT RELATES TO:              )      Judge Patti B. Saris
                                                )
    *The City of New York, et al.,*          )
                                                )
             *v.*                      )
                                                )
    *Abbott Laboratories, et al.*              )
_____     )

## DEFENDANT BARR LABORATORIES, INC.'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO BARR

Pursuant to Rule 56.1 of the Local Rules of this Court, Defendant Barr Laboratories, Inc. ("Barr") hereby submits its Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts As to Barr ("Plaintiffs' Barr-Specific Statement"). Barr's responses correspond to the numbered paragraphs set forth in Plaintiffs' Barr-Specific Statement and identify those issues which are undisputed as well as those issues for which there is a genuine dispute as to one or more material facts.[1] Barr also refers the Court to Defendants' Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts Applicable to All Defendants, filed this same date.

_____

[1] Barr does not respond herein to the headings in Plaintiffs' Barr-Specific Statement. To the extent these headings purport to state or characterize facts, such facts or characterizations are not properly supported with citations to the record, as is required by Local Rule 56.1. To the extent a response is required, Barr disputes any facts or characterizations contained in these headings.

1.      The Barr Drug and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto.  This exhibit also sets forth Barr's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Barr AMPs.  The exhibit notes which NDCs are associated with package sizes that set the FUL.

**<u>Barr's Response to Alleged Fact No. 1</u>:**  Disputed.  Barr does not dispute that Exhibit A to Plaintiffs' Barr-Specific Statement purports to (1) list the Barr drug and NDCs that Plaintiffs have examined in connection with their motion, (2) set forth Barr's published AWPs and WACs for this drug and these NDCs, any operative FUL, and Barr's AMPs, and (3) note which NDCs are associated with the package sizes that set the FUL.  Barr disputes that Plaintiffs' Exhibit is an accurate and/or complete portrayal of the AWP and WAC prices, the operative FULs, and AMPs for this Barr drug and these NDCs for any given time period.  Barr further disputes that Plaintiffs' Exhibit accurately reflects or updates the prices for this Barr drug and these NDCs and/or the dates that they become effective.  Further, Barr objects to Alleged Fact No. 1 on the grounds that Plaintiffs fail, contrary to the requirements set forth in the Federal Rules of Civil Procedure, to proffer admissible evidence in support of this statement.  *See* Fed. R. Civ. P. 56(e)(1) (requiring moving party to proffer "facts that would be admissible in evidence"); *O'Brien v. Town of Agawam*, 440 F. Supp. 2d 3, 5 n.1 (D. Mass. 2006).  Moreover, Barr objects to Plaintiffs' Alleged Fact insofar as it lacks adequate foundation.  *See* Fed. R. Evid. 602.

2.      The specific Barr drug at issue is the Cefadroxil 500 MG Capsule.

**<u>Barr's Response to Alleged Fact No. 2</u>:**  Barr does not dispute that Barr's Cefadroxil 500mg capsule is a drug at issue in Plaintiffs' Motion for Partial Summary Judgment.

3.      Barr manufactures and sells prescription drugs in the State of New York, including the City of New York and in the Counties, that are eligible for reimbursement under Medicaid.  *See* Barr Laboratories, Inc.'s Answer to Plaintiffs' Revised First Amended Consolidated Complaint ("Barr Answer") [Docket #4830] at ¶ 44.

**Barr's Response to Alleged Fact No. 3:**  Barr does not dispute that it manufactures and sells prescription drugs in the State of New York that are eligible for reimbursement under Medicaid.

4.     Barr has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.  *See* Barr 30(b)(6) (Timothy Catlett) 5/7/08 Deposition Transcript (Exhibit B) at 42:13-14 (hereinafter "Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B)"); Barr Answer at ¶ 132.

**Barr's Response to Alleged Fact No. 4:**  Barr does not dispute that Barr Laboratories, Inc. has entered into and executed a Medicaid Rebate Agreement with the Secretary of Health and Human Services on behalf of all States.  However, this fact is immaterial to Plaintiffs' Motion for Partial Summary Judgment.

5.     At the time of launch of a new product Barr sets an AWP for its drugs.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 61:6-13.

**Barr's Response to Alleged Fact No. 5:**  Disputed.  As an initial matter, Barr objects to Alleged Fact No. 5 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See* Deposition of Sue Gaston, March 19, 2008 ("3/19/08 Gaston Dep.") at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not. Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 379 F. Supp. 2d 183, 186 n.1 (D. Mass. 2005) (refusing to consider immaterial facts as part of a motion for summary judgment).  Furthermore, this alleged fact is not properly supported by evidence in the record. *See O'Brien*, 440 F. Supp. 2d at 5 n.1.  Mr. Catlett testified only regarding situations in which Barr was "the first generic manufacturer to launch a product."  Deposition of Timothy Catlett,

May 7, 2008 ("5/7/08 Catlett Dep.") at 61:6-13 (Ex. 2).  Further, Mr. Catlett's testimony did not

concern Cefadroxil, the only drug at issue in Plaintiffs' Motion for Partial Summary Judgment.

6.      Barr has only one AWP at any time.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep.
(Exhibit B) at 70:22-71:7.

**Barr's Response to Alleged Fact No. 6:**  While Barr does not dispute it has only one

AWP at any one time for a given product, Barr disputes that this fact is material to Plaintiffs'

Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See*

3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A.

Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the

published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Accordingly,

Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D.

Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to

consider immaterial facts as part of a motion for summary judgment).

7.      At all times, from 1997 to 2005, Barr reported the AWPs for its drugs to all three
of the national pricing compendia.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 71:3-7;
236:17-237:6.

**Barr's Response to Alleged Fact No. 7:**  Disputed.  As an initial matter, Barr objects to

Alleged Fact No. 7 insofar as it relies on, refers to, or otherwise mentions AWP, which has no

relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider

AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did

AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which

CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.")

(Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial

Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d

at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

In addition, Barr disputes Plaintiffs' statement insofar as it asserts that Barr "reported" any prices to "all three of the national pricing compendia" on the grounds that Plaintiffs have cited no evidentiary basis for this alleged fact, as is required by Local Rule 56.1. *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1.

8. In March, 1999, Barr began reporting Suggested Wholesale Price ("SWP") instead of AWP. *See* Barr 30(b)(6) (Timothy Catlett) 5/30/07 Deposition Transcript (Exhibit C) at 174:12-18 (hereinafter "Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit C)"). Barr knew that SWP was equivalent to AWP, and used the terms interchangeably. *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit C) at 119:4-6.

**Barr's Response to Alleged Fact No. 8:** Disputed in part. Barr does not dispute that it began providing SWPs to certain pricing compendia. However, Barr disputes Plaintiffs' allegation that this practice did not begin until March 1999 because it is not properly supported by evidence in the record. *See O'Brien*, 440 F. Supp. 2d at 5 n.1. In fact, Plaintiffs have not cited any evidence that Barr did not begin reporting SWPs until "March, 1999." Indeed, Mr. Catlett testified that he did not know when Barr began reporting SWPs to the pricing compendia. Deposition of Timothy Catlett, May 30, 2007 ("5/30/07 Catlett Dep.") at 174:19-21 (Ex. 3). Nor have Plaintiffs cited any evidence that "Barr knew that SWP was equivalent to AWP." Further, Barr objects to Alleged Fact No. 8 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment. CMS did not consider AWPs in setting FULs. *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs? A. Generally, it did not. Q. Can you think of any instance in which CMS based a FUL on the published AWP price? A. I can't think of a situation where they did.") (Ex. 1). Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment. *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

9.      At all times from 1997 to 2005, Barr reported the same AWP to all three of the national compendia.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 70:22-72:1.

**Barr's Response to Alleged Fact No. 9**:  Disputed.  While Barr does not dispute that its "hope" was to provide the same AWP to First DataBank, RedBook, and MediSpan, 5/7/08 Catlett Dep. at 71:3-7 (Ex. 2), Barr disputes this alleged fact to the extent it is not properly supported by evidence in the record.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1.  Plaintiffs have not cited any evidence that Barr did in fact report the same AWP (for Cefadroxil or any other product) to each of the pricing compendia at all times from 1997 to 2005.  Indeed, Mr. Catlett acknowledged that Barr may not have reported the same AWP to each of the pricing compendia.  5/7/08 Catlett Dep. at 71:3-7 (Ex. 2).  Furthermore, Barr objects to Alleged Fact No. 9 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

10.     Barr set WACs for its products and reported them to the pricing compendia.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 72:8-73:5; Barr 30(b)(6) (Lauren Cunningham) 2/2/07 Deposition Transcript (Exhibit D) at 60:11-15 (hereinafter "Barr 30(b)(6) (Cunningham) 2/2/07 Dep. (Exhibit D)").

**Barr's Response to Alleged Fact No. 10**:  Barr does not dispute that it set WACs for its products and provided them to the pricing compendia.  However, Barr disputes Plaintiffs' statement insofar as it asserts that Barr "reported" any prices to "the pricing compendia" on the

grounds that Plaintiffs have cited no evidentiary basis for this alleged fact, as is required by Local Rule 56.1.  *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1.

11.     Barr only had one WAC at a given time.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 73:11-14.

**Barr's Response to Alleged Fact No. 11:**  Barr does not dispute that, at any given time, it has only one WAC for each of its products.

12.     Barr reported the same WAC to all of the national compendia.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 73:6-14.

**Barr's Response to Alleged Fact No. 12:**  Disputed in part.  While Barr does not dispute that its "intent" was to provided the same WAC to those of the pricing compendia that requested Barr's WACs, 5/7/08 Catlett Dep. at 73:6-10 (Ex. 2), Barr disputes that Barr at all times "reported" "WAC to all of the national compendia."  This alleged fact is not properly supported by evidence in the record or the testimony cited.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1. Furthermore, Plaintiffs have not cited any evidence that Barr reported WACs for Cefadroxil (the only product at issue in Plaintiffs' motion) or any other of its products to "all of the national compendia."  Indeed, Mr. Catlett testified that Barr provided WACs for its drugs to "some, maybe all" of the pricing compendia.  5/7/08 Catlett Dep. at 72:8-14 (Ex. 2).  Nor have Plaintiffs cited any evidence that Barr did in fact report the same WAC to the various compendia.

13.     Barr knew and controlled the prices for its drugs that were published by the national drug pricing compendia.  Barr knew that the pricing compendia would publish the prices that Barr provided to them.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 87:3-9.

**Barr's Response to Alleged Fact No. 13:**  Disputed.  Barr disputes Alleged Fact No. 13 because it misstates, mischaracterizes, and/or misconstrues the cited deposition testimony.  Barr disputes that it "knew and controlled the prices for its drugs that were published by the national drug pricing compendia."  Plaintiffs have not provided any evidentiary basis for this assertion, as

is required by Local Rule 56.1, and the testimony cited by Plaintiffs does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1.

With respect to the second sentence of Alleged Fact No. 13, Barr does not dispute that "the prices First DataBank reports as AWPs are the prices that [Barr] supplied to First DataBank."  5/7/08 Catlett Dep. at 87:6-9 (Ex. 2).  Except as noted, Barr disputes that it "knew that the pricing compendia would publish the prices that Barr provided to them."  Plaintiffs have not provided any evidentiary bases for this assertion, as is required by Local Rule 56.1, and the testimony cited by Plaintiffs does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d  at 5 n.1.

Barr disputes Alleged Fact No. 13 insofar as it implies that it was the manufacturer, rather than First DataBank, that established how the AWPs of secondary and subsequent generic market entrants were established.  In particular, Barr disputes Plaintiffs' statement because the decisions regarding the setting of AWP were guided primarily by the rules established by First DataBank—rules which predetermined the allowable price ranges to maintain a generic coding. *See* Deposition of Patricia Kay Morgan, Nov. 30, 2007 ("11/30/07 Morgan Dep.") at 33:1-20, 149:12-20 (Ex. 4).

To the extent Alleged Fact No. 13 concerns AWP, Barr disputes that Alleged Fact No. 13 is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).

14.     All published AWPs and WACs would reflect what Barr had submitted to the pricing compendia.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 87:3-9.  Barr would review forms sent to it by First DataBank, Redbook and MediSpan to ensure the accuracy of the prices before they were published.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 75:10-

76:3; 77:9-19; Barr 30(b)(6) (Cunningham) 2/2/07 Dep. (Exhibit D) at 66:11-68:7; 87:13-21. Barr is not aware of any instances in which the publishers did not publish what Barr reported. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 78:5-19; Barr 30(b)(6) (Cunningham) 2/2/07 Dep. (Exhibit D) at 60:19-61:14.

**Barr's Response to Alleged Fact No. 14:**  Disputed. Barr disputes Alleged Fact No. 14 because it misstates, mischaracterizes, and/or misconstrues the cited deposition testimony.  In particular, Barr disputes Plaintiffs' statement insofar as it permits an inference that Barr actively "monitored" the prices reported by First DataBank.  While Barr does not dispute that "the prices First DataBank reports as AWPs are the prices that [Barr] supplied to First DataBank," 5/7/08 Catlett Dep. at 87:6-9 (Ex. 2), Barr disputes that "all published AWPs and WACs would reflect what Barr had submitted to the pricing compendia."  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the testimony cited by Plaintiffs does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1.

With respect to the second sentence of Alleged Fact No. 14, Barr does not dispute that it received certain forms from First DataBank, RedBook, and MediSpan seeking verification of the pricing information Barr had submitted to the pricing compendia.  Barr disputes that it reviewed such forms "to ensure the accuracy of the prices before they were published."  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the testimony cited by Plaintiffs does not support this assertion.  *See id.*

With respect to the third sentence of Alleged Fact No. 14, Barr does not dispute that it is not aware of any instances in which the pricing compendia did not publish the AWPs or WACs that Barr reported.  However, Barr disputes any suggestion that it reviewed the AWPs and WACs published by the pricing compendia to ensure their accuracy.  *See* 5/30/07 Catlett Dep. at 158:9-159:8 (Q. Was there anyone at Barr whose responsibility it was to check the First DataBank or other price reports . . . to determine whether or not the prices that Barr had reported

as its AWP price were correctly loaded. . . ?  [ ]  A. That's not something that we do, no.") (Ex. 3).

Barr disputes Alleged Fact No. 14 insofar as it implies that it was the manufacturer, rather than First DataBank, that established how the AWPs of secondary and subsequent generic market entrants were established.  In particular, Barr disputes Plaintiffs' statement because the decisions regarding the setting of AWP were guided primarily by the rules established by First DataBank—rules which predetermined the allowable price ranges to maintain a generic coding. *See* 11/30/07 Morgan Dep. at 33:1-20, 149:12-20 (Ex. 4).  Furthermore, Barr disputes that Alleged Fact No. 14 is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).

15.    When Barr changed the AWP or WAC price of a drug, it would inform the pricing compendia by letter and request confirmation that the compendium had received Barr's pricing change. *Id.*

**Barr's Response to Alleged Fact No. 15:**  Disputed.  Barr does not dispute that when it changed the AWP or WAC for one of its products, it would inform the pricing compendia of the change and seek confirmation that the compendia had received the change.  However, Barr disputes that this alleged fact is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Further, Barr disputes Alleged Fact No. 15 because it misstates, mischaracterizes, and/or misconstrues the cited deposition testimony.  In particular, Barr disputes Plaintiffs' statement insofar as it permits an inference that Barr actively "monitored" the prices reported by First

DataBank.  Barr also disputes any suggestion that it reviewed the AWPs and WACs published by the pricing compendia to ensure their accuracy.  *See* 5/30/07 Catlett Dep. at 158:9-159:8 (Q. Was there anyone at Barr whose responsibility it was to check the First DataBank or other price reports . . . to determine whether or not the prices that Barr had reported as its AWP price were correctly loaded. . . ?  [ ]  A. That's not something that we do, no.") (Ex. 3).

16.    Barr reported false prices via the publishing compendium knowing that pharmacies would present claims to New York's Medicaid program which would be reimbursed based on a formula that utilized the inflated price to determine the appropriate reimbursement amount.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 182:18-183:1; 53:3-16.

**Barr's Response to Alleged Fact No. 16:**  Disputed.  Barr disputes that it "reported false prices via the publishing compendium knowing that pharmacies would present claims to New York's Medicaid program which would be reimbursed based on a formula that utilized the inflated price to determine the appropriate reimbursement amount."  Plaintiffs fail, contrary to the requirements set forth in the Federal Rules of Civil Procedure, to proffer any evidence, admissible or otherwise, in support of this statement.  *See* Fed. R. Civ. P. 56(e)(1) (requiring moving party to proffer "facts that would be admissible in evidence"); *O'Brien*, 440 F. Supp. 2d at 5 n.1.  Moreover, Barr objects to Plaintiffs' statement on the basis that it lacks adequate foundation.  *See* Fed. R. Evid. 602.  Not only have Plaintiffs have failed to provide any evidentiary basis for this assertion, as is required by Local Rule 56.1, the cited testimony does not support this assertion. *See O'Brien*, 440 F. Supp. 2d at 5 n.1.  In particular, Barr disputes any suggestion that the AWPs and WACs reported by Barr to the pricing compendia were "false" or "inflated."  "WAC" is a manufacturer's invoice price to wholesalers and distributors.  *See* 5/30/07 Catlett Dep. at 100:10-20 (Ex. 3); *see also* 42 U.S.C. § 1395w-a(c)(6)(B) (defining WAC as "the manufacturer's list price . . . to wholesalers or direct purchasers in the United States, not including prompt pay or other discounts, rebates or reductions in price. . . .").  "AWP"

is a "reference price" set "to get generic classification" for a drug.  *See* 5/30/07 Catlett Dep. at

134:15-135:7 (Ex. 3); 5/7/08 Catlett Dep. at 80:20-81:3 (Ex. 2).   At all times, Barr reported

AWPs and WACs consistent with these definitions, and Plaintiffs have cited no evidence to the

contrary.

      To the extent Alleged Fact No. 16 concerns AWP, Barr disputes that Alleged Fact No.

16 is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See*

3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A.

Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the

published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).

      17.      Barr knows that CMS establishes the Federal Upper Limit (FUL) by taking 150%
of the lowest published price.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 58:4-59:17.

      **Barr's Response to Alleged Fact No. 17:**   Disputed.   As an initial matter, Barr disputes

Plaintiffs' Alleged Fact No. 17 to the extent that it permits an inference that Barr possessed any

more or less awareness of reimbursement practices than that which was generally available

public knowledge based on the statutory scheme for reimbursement.   While Barr does not

dispute that CMS's regulations indicate that the Federal Upper Limit ("FUL") is established by

taking 150 percent of the lowest published price, Barr disputes that CMS did in fact set a FUL at

150 percent of the lowest published price and answers that the undisputed record evidence shows

that CMS very often chose to disregard the regulatory requirements when setting FULs.  *See*

*generally* Affidavit of Sumanth Addanki, dated May 15, 2009; *see also* 42 C.F.R. § 447.332.

      To the extent Alleged Fact No. 17 concerns AWP, Barr disputes that Alleged Fact No. 17

is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See*

3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A.

Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).

18.     Barr knows that and admits that its reported AWPs were not tethered to the actual prices that anyone pays.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 80:20-81:11.

**Barr's Response to Alleged Fact No. 18:**  Disputed.  Barr disputes that it "knows [ ] and admits that its reported AWPs were not tethered to the actual prices that anyone pays."  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1. Furthermore, Barr objects to Alleged Fact No. 18 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co., LLP*, 379 F. Supp. 2d at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

19.     Barr defines AWP as a "reference price."  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 80:20-81:3.

**Barr's Response to Alleged Fact No. 19:**  While Barr does not dispute that Barr understood (consistent with industry understanding) AWP as a "reference price,"  Barr disputes that this alleged fact is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).

Further, Barr disputes any suggestion or implication that its understanding of AWP was inconsistent with the understanding in the industry or New York Medicaid's understanding of AWP.  *See generally* L.R. 56.1 Stmt. of Undisputed Material Facts Supporting Defs.' Jt. Mot. for Summary Judgment on Pls.' "FUL Fraud" Claims, (Dkt. 6054) (D. Mass., 01-cv-12257-PBS).

20.     For each of its generic drugs, Barr sets its AWPs approximately 10% below the AWPs of the branded versions of the drugs.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 61:6-13.

**Barr's Response to Alleged Fact No. 20:**  Disputed.  As an initial matter, Barr objects to Alleged Fact No. 20 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

Moreover, Barr disputes Plaintiffs' Alleged Fact No. 20 in that it incorrectly implies that manufacturers, and not First DataBank, are in control of populating the AWP field in the database.  *See* 11/30/07 Morgan Dep. at 33:1-5 ("Q. During the period when you were employed by First DataBank, the manufacturer did not decide whether First DataBank used the suggested AWP as its Blue Book AWP, correct?  A. That's correct.") (Ex. 4); *id.* at 33:6-10 ("Q. During the time period when you were employed by First DataBank, manufacturers did not control the methodology used by First DataBank in populating its Blue Book AWP fields, correct?  A. That's correct.") (Ex. 4); *id.* at 33:11-20 ("Q. During the time period you were employed by First DataBank, manufacturers did not set the AWPs listed in First DataBank's Blue Book AWP

fields, correct? . . . A. That's correct.") (Ex. 4).  In order for a product to be classified by First DataBank as a generic, Barr's SWP had to be at least 10 percent off the corresponding brand's AWP.

Barr also disputes Alleged Fact No. 20 insofar as it implies that it was the manufacturer, rather than First DataBank, that established how the AWPs of secondary and subsequent generic market entrants were established.  In particular, Barr disputes Plaintiffs' statement because the decisions regarding the setting of AWP were guided primarily by the rules established by First DataBank—rules which predetermined the allowable price ranges to maintain a generic coding. *See* 11/30/07 Morgan Dep. at 33:1-20, 149:12-20 (Ex. 4).  Barr further disputes Plaintiffs' statement in that it overly simplifies the protocols established by First DataBank, as AWP was set on a case-by-case basis, after thorough consideration of a variety of issues (including supply and manufacturing capability), all of which existed within the heartland of the protocols established by First DataBank.  *See* Deposition of Richard Foster, Feb. 20, 2008 ("2/20/08 Foster Dep.") at 182-83 (Ex. 5).  While Barr does not dispute that it was its "general policy" to set its AWP at approximately 10 percent below the brand AWP, 5/7/08 Catlett Dep. at 61:6-13; 62:5-10 (Ex. 2), Barr disputes that it set the AWPs "[f]or each of its generic drugs" in this manner. Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1.

21.    Barr admitted that it does not sell any of its generic drugs at AWP.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 253:11-21.

**Barr's Response to Alleged Fact No. 21:**  Disputed.  While Barr does not dispute that it does not invoice or charge its customers AWP, Barr objects to Alleged Fact No. 21 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See*

3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

22.     When Barr lowers the dead net price to any of its customers, it is not reflected in Barr's reported prices.  *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit B) at 190:6-13.

**Barr's Response to Alleged Fact No. 22:**  Disputed.  Barr disputes Alleged Fact No. 22 because it misstates, mischaracterizes, and/or misconstrues the cited deposition testimony. In particular, Mr. Catlett testified only that lower contract prices "would not necessarily be reflected" in the AWP Barr reported to First DataBank.  5/30/07 Catlett Dep. at 190:6-13 (Ex. 3). Except as noted, Barr disputes that "[w]hen [it] lowers the dead net price to any of its customers, it is not reflected in Barr's reported prices."  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1.  Barr also disputes this statement because the meaning of the term "reported prices" is vague and ambiguous.  Barr "reported" Average Manufacturer Price ("AMP") to CMS, and changes to the dead net price are reflected in AMP.  *See* 5/30/07 Catlett Dep. at 245:15-19 (AMP is "a good estimate of the dead net price.") (Ex. 3).

Further, Barr objects to Alleged Fact No. 22 insofar as it relies on, refers to, or otherwise mentions AWP, which has no relevance or bearing on Plaintiffs' Motion for Partial Summary Judgment.  CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't

16

think of a situation where they did.") (Ex. 1).  Accordingly, Barr disputes that AWP is material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1; *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider immaterial facts as part of a motion for summary judgment).

23.     Barr's WACs were not set based on actual prices, but rather Barr set its WACs based on its competitors' WACs:  if Barr was the first generic manufacturer to enter the market, it set its WAC at approximately 20% below the WAC of the branded version of the drug (see Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 61:14-17).  If Barr was not the first to enter the market and competition existed, its WAC would not be set based on market conditions.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 62:11-64:2.

**Barr's Response to Alleged Fact No. 23**:  Disputed in part.  With regard to the first sentence of Alleged Fact No. 23, Barr does not dispute that, if it was the first generic manufacturer to enter the market, it would establish its WAC price approximately 20 percent below the brand WAC.  Barr disputes that its "WACs were not set based on actual prices." Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d at 5 n.1.  Indeed, to the extent Barr set its WACs based on competitors' WACs, its WACs were based on prices paid in the market by some wholesalers.  *See* 5/7/08 Catlett Dep. at 222:6-223:2 ("[T]here were definitely product[s] purchased at WAC.") (Ex. 2); Deposition of Lauren Cunningham, Feb. 2, 2007 ("2/2/07 Cunningham Dep.") at 55:24-56:3 ("Q. Do you know whether the WAC, that is listed in your product catalog, is a price that is actually charged to any customer?  A. I do know that some customers would pay that price.") (Ex. 6).

With regard to the second sentence of Alleged Fact No. 23, Barr disputes that "[i]f Barr was not the first to enter the market and competition existed, its WAC would not be set based on market conditions."  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See*

*O'Brien*, 440 F. Supp. 2d 3, 5 n.1.  To the contrary, Mr. Catlett testified that, if Barr was not the first generic manufacturer to introduce a product, "*certainly* market conditions would come into play" when Barr set its WAC.  5/7/08 Catlett Dep. at 62:11-15 (emphasis added) (Ex. 2).

24.    Barr provides numerous incentives, discounts and rebates to its wholesaler and distributor customers, including base rebates, chargebacks, billbacks or slotting, market share agreements, marketing fee credits, preferred products incentive, free goods allowances, full line rebates, prompt pay discounts, incremental rebates, volume discounts, and preferred customer discounts, among others.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 217:12-221:17.

**Barr's Response to Alleged Fact No. 24:**  Barr disputes that discounts and incentives offered to its customers are material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1 (requiring movant to "include a concise statement of the *material* facts of record as to which the moving party contends there is no genuine issue to be tried") (emphasis added); *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider a summary judgment movant's immaterial facts).  Barr does not dispute that it provides various incentives, discounts, and rebates to its wholesaler and distributor customers.  Barr disputes Alleged Fact No. 24 to the extent it purports to assert that each of the enumerated incentives and/or discounts is extended to all customers for all products.

25.    For example, Barr offered Bindley Western, a wholesaler, a contract to sell Cefadroxil at the WAC price listed in the offer and a 50% rebate.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 115:10-19; Exhibit E (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 18 (Bid Proposal)).  Barr made a presentation to McKesson for Warfarin Sodium offering a 15-18% rebate off of WAC.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 137:18-21; Exhibit F (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 20 (Bid Proposal)).  Barr offered Harvard Drug Group, a distributor, a rebate of 70-71% for Cefadroxil.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 153:12-155:5; Exhibit G (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 22 (Bid Proposal)).  Barr provided this customer with such a "significant" rebate because it did not have the electronic capability to process chargebacks.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 155:13-156:5.  Barr provided significant rebates on Cefadroxil to all of its customers.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 155:6-12.  Barr offered Medco a quarterly rebate payment on Warfarin Sodium of 33.3%.  *See* Exhibit H (Barr 30(b)(6) (Catlett) 5/7/08 Dep. Exhibit 27 (Memo from Catlett to file including AWP, invoice price, new dead net price, difference between deadnet price and AWP, and percent rebate)).  Barr kept track of the difference (i.e. spread) between Medco's deadnet price and the AWP (81% off).  *See id.*

**Barr's Response to Alleged Fact No. 25**:  Disputed.  Barr disputes Alleged Fact No. 25 because it misstates, mischaracterizes, and/or misconstrues the cited deposition testimony and/or documents.  Further, Barr disputes that discounts and incentives offered to its customers are material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1 (requiring movant to "include a concise statement of the *material* facts of record as to which the moving party contends there is no genuine issue to be tried") (emphasis added); *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider a summary judgment movant's immaterial facts). Barr does not dispute that it offers certain discounts, rebates, and chargebacks to its wholesaler and distributor customers, nor does Barr dispute that it offered or discussed with customers the specific rebates outlined in Alleged Fact No. 25.  Barr disputes that it offered "substantial" rebates to all of its customers on Cefadroxil.  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1.  Mr. Catlett testified only that Barr offered its customers rebates on Cefadroxil "to meet the competitive forces in the marketplace."  5/7/08 Catlett Dep. at 156:6-12 (Ex. 2).

26.     Rebates, discounts, chargebacks and other pricing incentives lowered the wholesaler's dead net cost below WAC.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 223:12-225:1.

**Barr's Response to Alleged Fact No. 26**:  Disputed.  Barr disputes that discounts or rebates offered to its customers (in particular, discounts and rebates on products other than Cefadroxil) are material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1 (requiring movant to "include a concise statement of the *material* facts of record as to which the moving party contends there is no genuine issue to be tried") (emphasis added); *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider a summary judgment movant's immaterial facts).  Barr does not dispute that it offers certain discounts, rebates, and

19

chargebacks to its wholesaler and distributor customers.  However, "WAC" is a manufacturer's invoice price to wholesalers and distributors and does not include discounts, rebates, or chargebacks.  *See* 5/30/07 Catlett Dep. at 100:10-20 (Ex. 3); *see also* 42 U.S.C. § 1395w-a(c)(6)(B) (defining WAC as "the manufacturer's list price . . . to wholesalers or direct purchasers in the United States, not including prompt pay or other discounts, rebates or reductions in price. . . .").  Therefore, Barr disputes any suggestion or implication that WAC was understood or expected to be "wholesaler's dead net cost."  Further, Barr disputes that wholesalers' dead net costs were *always* less than WAC.  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1.  Indeed, certain wholesalers purchased Barr's drugs at WAC.  5/7/08 Catlett Dep. at 222:6-223:2 ("[T]here were definitely product[s] purchased at WAC.") (Ex. 2); 2/2/07 Cunningham Dep. at 55:24-56:3 ("Q. Do you know whether the WAC, that is listed in your product catalog, is a price that is actually charged to any customer?  A. I do know that some customers would pay that price.") (Ex. 6).

27.     The rebates, discounts, chargebacks and other pricing incentives paid by Barr reduced the wholesaler's actual acquisition cost below the invoice price.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 221:18-222:5.

**Barr's Response to Alleged Fact No. 27:**  Disputed.  Barr disputes that discounts or rebates offered to its customers (in particular, discounts and rebates on products other than Cefadroxil) are material to Plaintiffs' Motion for Partial Summary Judgment.  *See* D. Mass. L.R. 56.1 (requiring movant to "include a concise statement of the *material* facts of record as to which the moving party contends there is no genuine issue to be tried") (emphasis added); *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider a summary judgment movant's immaterial facts).  Barr does not dispute that it offers certain discounts, rebates, and chargebacks to its wholesaler and distributor customers.  However, "WAC" is a manufacturer's

invoice price to wholesalers and distributors and does not include discounts, rebates, or chargebacks. *See* 5/30/07 Catlett Dep. at 100:10-20 (Ex. 3); *see also* 42 U.S.C. § 1395w-a(c)(6)(B) (defining WAC as "the manufacturer's list price . . . to wholesalers or direct purchasers in the United States, not including prompt pay or other discounts, rebates or reductions in price. . . ."). Therefore, Barr disputes any suggestion or implication that WAC was understood or expected to be "wholesaler's dead net cost." Further, Barr disputes that wholesalers' actual acquisition costs were *always* less than the invoice price. Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion. *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1. Indeed, some wholesalers purchased Barr's drugs at invoice price. *See* 5/7/08 Catlett Dep. at 222:6-223:2 ("[T]here were definitely product[s] purchased at WAC.") (Ex. 2); 2/2/07 Cunningham Dep. at 55:24-56:3 ("Q. Do you know whether the WAC, that is listed in your product catalog, is a price that is actually charged to any customer? A. I do know that some customers would pay that price.") (Ex. 6).

28.     Barr considered "invoice dollars" to be "gross sales", and calculated its net sales by subtracting payment terms, rebates, allowances, shelf stock adjustments, returns, discounts and chargebacks. *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit C) at 79:8-80:14.

**Barr's Response to Alleged Fact No. 28:** Barr does not dispute Alleged Fact No. 28, but states that it is immaterial to Plaintiffs' Motion for Partial Summary Judgment.

29.     Barr provided its pharmacy customers with numerous incentives including base rebates, billbacks or slotting, market share agreements, marketing fee credits, preferred products incentives, free goods allowances, full line rebates, prompt pay discounts, volume discounts, and preferred customer discounts, among others. *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 217:12-221:17.

**Barr's Response to Alleged Fact No. 29:** Barr disputes that discounts or rebates offered to its pharmacy customers (in particular, discounts and rebates on products other than Cefadroxil) are material to Plaintiffs' Motion for Partial Summary Judgment. *See* D. Mass. L.R.

56.1 (requiring movant to "include a concise statement of the *material* facts of record as to which the moving party contends there is no genuine issue to be tried") (emphasis added); *St. Paul Fire and Marine Ins. Co.*, 379 F. Supp. 2d at 186 n.1 (refusing to consider a summary judgment movant's immaterial facts).  Barr does not dispute that it provided certain pharmacy customers with certain incentives including base rebates, billbacks or slotting, market share agreements, marketing fee credits, preferred products incentives, free goods allowances, full line rebates, prompt pay discounts, volume discounts, and preferred customer discounts.  However, Barr disputes Alleged Fact No. 29 to the extent it purports to assert that each of the enumerated incentives and/or discounts was extended to all pharmacy customers for all drugs.  Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1.  Indeed, some wholesalers purchased Barr's drugs at invoice price.  *See* 5/7/08 Catlett Dep. at 222:6-223:2 ("[T]here were definitely product[s] purchased at WAC.") (Ex. 2); 2/2/07 Cunningham Dep. at 55:24-56:3 ("Q. Do you know whether the WAC, that is listed in your product catalog, is a price that is actually charged to any customer?  A. I do know that some customers would pay that price.") (Ex. 6).

30.    These rebates, discounts and other pricing incentives reduced Barr's pharmacy customers' actual acquisition price.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 180:11-181:2; 221:18-222:5.  A "substantial number of customers" obtained rebates or had their net price adjusted accordingly.  *See* Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 177:21-178:22.

**Barr's Response to Alleged Fact No. 30:**  While Barr does not dispute that rebates, discounts and other pricing incentives reduced Barr's pharmacy customers' net acquisition price, Barr disputes prices published by First DataBank or other pricing compendia were understood or expected to be "customers' actual acquisition price."  *See generally* L.R. 56.1 Stmt. of Undisputed Material Facts Supporting Defs.' Jt. Mot. for Summary Judgment on Pls.' "FUL

22

Fraud" Claims (Dkt. 6054) (D. Mass., 01-cv-12257-PBS).   Plaintiffs have not provided any evidentiary basis for this assertion, as is required by Local Rule 56.1, and the cited testimony does not support this assertion.  *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1.  Indeed, some wholesalers purchased Barr's drugs at invoice price.  *See* 5/7/08 Catlett Dep. at 222:6-223:2 ("[T]here were definitely product[s] purchased at WAC.") (Ex. 2); 2/2/07 Cunningham Dep. at 55:24-56:3 ("Q. Do you know whether the WAC, that is listed in your product catalog, is a price that is actually charged to any customer?  A. I do know that some customers would pay that price.") (Ex. 6).

To the extent Alleged Fact No. 30 concerns AWP, Barr disputes that Alleged Fact No. 30 is material to Plaintiffs' motion because CMS did not consider AWPs in setting FULs.  *See* 3/19/08 Gaston Dep. at 457:20-458:7 ("Q. What role if any did AWP play in setting FULs?  A. Generally, it did not.  Q. Can you think of any instance in which CMS based a FUL on the published AWP price?  A. I can't think of a situation where they did.") (Ex. 1).

31.     Barr knew that eligibility for reimbursement by Medicaid was an important issue for its customers; it was standard procedure for Barr to include the AWP and contract or invoice prices in its bids to both its wholesaler customers (see Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 115:20-116:6; 200:6-14) and its retail customers (see Barr 30(b)(6) (Catlett) 5/7/08 Dep. (Exhibit B) at 281:4-11).

**Barr's Response to Alleged Fact No. 31:**  Disputed.  While Barr does not dispute that, pursuant to industry practice and its customers' requests, its "standard format" included AWP and contract or invoice price in communications with or bids to its wholesale and retail customers, 5/7/08 Catlett Dep. at 116:2-12; 281:8-11 (Ex. 2), Barr disputes that such communications or bids constitute "marketing the spread," or that it "knew that eligibility for reimbursement by Medicaid was an important issue for its customers."  Plaintiffs have not provided any evidentiary basis for these assertions, as is required by Local Rule 56.1, and the testimony cited does not support these assertions.  *See O'Brien*, 440 F. Supp. 2d 3, 5 n.1. Moreover, Teva objects to Plaintiffs' Alleged Fact insofar as it lacks adequate foundation.  *See*

Fed. R. Evid. 602.  Further, the purported "important[ce]" of Medicaid reimbursement to Barr's

customers is immaterial to Plaintiffs' Motion for Partial Summary Judgment.

32.     At all times, from 1997 to 2005, Barr has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute.  *See* Barr 30(b)(6) (Catlett) 5/30/07 Dep. (Exhibit B) at 233:1-24; Mylan, 2008 WL 5650859 at *30.

**Barr's Response to Alleged Fact No. 32:**  Barr does not dispute Alleged Fact No. 32,

but states that this fact is immaterial to Plaintiffs Motion for Partial Summary Judgment.


Dated:  June 15, 2009                      */s/ Jennifer G. Levy*
                                           Jennifer G. Levy
                                           Patrick M. Bryan
                                           KIRKLAND & ELLIS LLP
                                           655 Fifteenth Street, N.W.
                                           Washington, D.C.  20005
                                           Telephone:  (202) 879-5000
                                           Facsimile:  (202) 879-5200

                                           Robert J. Muldoon, Jr., BBO# 259480
                                           Courtney A. Clark, BBO# 651381
                                           SHERIN & LODGEN, LLP
                                           101 Federal Street
                                           Boston, MA  02110
                                           Telephone:  (617) 646-2000
                                           Facsimile:  (617) 646-2222

                                           *Attorneys for Defendant Barr Laboratories,*
                                           *Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2009, I caused a true and correct copy of the foregoing to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Court in MDL 1456.

/s/ *John K. Crisham*
John K. Crisham