# EXHIBIT 7

Cioschi, Eugene                CONFIDENTIAL                February 12, 2008

1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - -X

THE COMMONWEALTH OF MASSACHUSETTS,      :

            Plaintiff,                  : Civil Action No.

  v.                                    : 03-cv-11865-PBS

MYLAN LABORATORIES, INC., BARR          :

LABORATORIES, INC., DURAMED             :

PHARMACEUTICALS, INC., IVAX             :

CORPORATION, WARRICK PHARMACEUTICALS    :

CORPORATION, WATSON PHARMACEUTICALS,    :

INC., SCHEIN PHARMACEUTICAL, INC.,      :

TEVA PHARMACEUTICALS USA, INC., PAR     :

PHARMACEUTICAL, INC., DEY, INC.,        :

ETHEX CORPORATION, PUREPAC              :

PHARMACEUTICAL CO., and ROXANE          :

LABORATORIES, INC.,                     :

            Defendants.                :

- - - - - - - - - - - - - - - - - - -X

          - - -

      Confidential Videotaped Deposition of

EUGENE CIOSCHI was taken, pursuant to

1         And he says:  SWP is not a calculated
2    price based on actual sales data and is not
3    intended to reflect item transactions.
4         He then continues:  TEVA considers its
5    contract prices to customers to be highly
6    confidential and the publication of such
7    information would be competitively harmful and
8    contrary to company policies on maintaining the
9    confidentiality of pricing information.
10         During the relevant time period,
11    throughout the relevant time period at TEVA, was it
12    always true that the contract prices to customers
13    were considered highly confidential?
14    **A.   Yes, that's consistent.**
15    Q.   Okay.
16         Mr. Marth then has a heading Setting SWP,
17    and he says with regard to newly launched exclusive
18    and nonexclusive generics SWP has set a 10 percent
19    below the referenced brand.
20         And that's been true throughout the
21    relevant time period?
22    **A.   Yes, that's consistent.**

1    Q.    All right.

2          And he says, that was the case because 10
3    percent is the minimum discount off the reference
4    brand needed to insure a drug will be treated as a
5    generic by the pricing compendia.  And that's --
6    has that been true throughout the relevant time
7    period?

8    A.    Yes, that's established.

9    Q.    Now, if TEVA set its AWP at 15 percent
10   below the brand, would it get generic designation?

11   A.    Yes.

12   Q.    And why would TEVA not want to set it at
13   15 percent below the brand?

14   A.    **Because we want to make sure that the --**
15   **we know that those fictitious prices are used, SWPs**
16   **by the third parties to establish reimbursement**
17   **schemes or could be used.  So, we don't want to put**
18   **our customers at a disadvantage when they send for**
19   **reimbursement.**

20   Q.    So, by setting the AWP at the smaller
21   discount off the brand, being right up at the 90
22   percent maximum, it will maximize the reimbursement

1  A.    I would say it's a quasi paper price.

2        MR. MULLIN:  I think we need to change

3  our tape so we'll take a short break.

4        VIDEOTAPE OPERATOR:  This completes

5  Videotape Number 1 of Eugene Cioschi.  We're now

6  going off the video record.  The time is 10:40.

7             - - -

8            (Whereupon, a short break was taken

9  at this time.)

10       VIDEOTAPE OPERATOR:  Back on the video

11 record.  This is Videotape Number 2, the videotaped

12 deposition of Eugene Cioschi. The time is now

13 10:44.

14 BY MR. MULLIN:

15    Q.   Mr. Cioschi?

16    A.   Yes.

17    Q.   At TEVA during the relevant time period

18 was there any practice or procedure to monitor the

19 reported prices of the competing products relating

20 to TEVA's product line to look for any changes in

21 AWPs or WACs?

22    A.   Yes, there was -- my recollection is when

1  you occasionally look at it if were there any
2  issues where the SWPs were that I recall.
3      Q.  And what was that -- who was responsible
4  for this activity?
5      A.  I think it just kind of fell out.  You
6  know, I would do it or somebody else would do it.
7      Q.  You or someone else within Marketing?
8      A.  Within the Marketing area.
9      Q.  Okay.
10         And what would be done?
11     A.  I'm trying to remember back to then.  I
12 would say occasionally look at and see if, you
13 know, if our SWP fell in line with our competitors
14 as an example.
15     Q.  Okay.
16         Would you also compare TEVA's AWP with
17 the brand AWP?
18     A.  Sure.
19     Q.  All right.
20         And if you discovered that there was more
21 than a 10 percent difference between TEVA's SWP --
22 AWP and the brand AWP, what, if anything, would

133

1  with Amox caps.
2          Was it the policy at TEVA during the
3  relevant time period to raise TEVA's AWP if one of
4  your generic competitors raised their AWP?
5      A.   I don't remember if it was policy, but
6  there again this to me would say it's a product to
7  product situation that would dictate what's the
8  best for our customer based on what they're going
9  to be paid by the third party.
10         So, again, here as this shows, it's a
11 product to product situation.  It's nothing that's
12 -- something that's set in stone.
13     Q.   And the reason to increase the AWP would
14 be because the competitor had a higher AWP than
15 TEVA?
16         MS. LEVY:  Objection; calls for
17 something.  You may answer.
18         THE WITNESS:  Yes, it's probably so that
19 our customers are not disadvantaged when they're
20 paid by the third parties.
21 BY MR. MULLIN:
22     Q.   Okay.