# EXHIBIT O

465

```
                        NO. GV002327
THE STATE OF TEXAS         ) IN THE DISTRICT COURT
ex rel.                    )
    VEN-A-CARE OF THE      )
    FLORIDA KEYS, INC.,    )
         Plaintiff(s),     )
                           )
VS.                        ) TRAVIS COUNTY, TEXAS
                           )
DEY, INC.; ROXANE          )
LABORATORIES, INC., WARRICK)
PHARMACEUTICALS CORPORATION,)
SCHERING-PLOUGH CORPORATION,)
and SCHERING CORPORATION,  )
         Defendant(s).     ) 53RD JUDICIAL DISTRICT
```

*********************************************

ORAL AND VIDEOTAPED DEPOSITION OF

ROBERT FRANCIS MOZAK

November 6th, 2002

Volume 3

*********************************************

ORAL AND VIDEOTAPED DEPOSITION OF ROBERT FRANCIS MOZAK, produced as a witness at the instance of the Plaintiff(s), and duly sworn, was taken in the above-styled and numbered cause on November 6th, 2002, from 9:11 a.m. to 5:01 p.m., before Cynthia Vohlken, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Coudert Brothers, 600 Beach Street, San Francisco, California pursuant to the Texas Rules of Civil Procedure.

510

1  price page I had indicated that was my direction.
2      Q.   Okay.  Every time Dey launches a new product
3  does it go through the exercise of reviewing the price
4  page in anticipation of the launch to see that all the
5  existing prices and products are correctly reported?
6      A.   Yes, sir, we do.
7      Q.   Do you also go through this exercise on an
8  annual basis every December, for example?
9      A.   I would say from about at least '76 on it
10 became an annual event, '76 -- excuse me, '76.  Let me
11 correct that.  '96, '97 period it was an annual thing.
12 Prior to that it might have been less frequently than
13 annually.
14     Q.   So from approximately 1996 or 1997 it's been
15 Dey's practice, policy, procedure to on an annual
16 basis review the price page?
17     A.   Yes, sir.
18     Q.   Is this always done in a particular month?
19     A.   Our normal procedure has been to do it at the
20 end of the year to start the first of the year or
21 could have been in January for February 1
22 implementation, somewhere in that January/February
23 period would have been our normal -- normal practice.
24     Q.   So it's your testimony that it's usually done
25 in January or February of each year --

512

```
 1  not -- I'm not certain of that because --
 2      Q.   You don't know?
 3      A.   I don't know.
 4      Q.   Please describe the document to which you're
 5  referring.
 6      A.   The document is a -- it -- from what I can
 7  recall appears to be a printout from First DataBank of
 8  the prices that they have in their system.
 9  Ms. Gmeiner went through the prices and corrected the
10  prices and indicated in writing and then faxed it
11  to -- back to Beth somebody at First DataBank, I can't
12  remember her last name, and we have a -- and the fax
13  is dated 12 something '95.
14      Q.   How recent -- strike that.
15              When is the last time you saw the
16  document that you're describing?
17      A.   I probably saw it about a few weeks ago,
18  actually, but I had seen it before, but -- but the
19  last time would have been fairly recently.
20      Q.   Fairly recently, within the last few weeks?
21      A.   Yes.
22      Q.   Okay.  And you are describing a price list
23  that was printed or produced by First DataBank; is
24  that correct?
25      A.   It looked like it was a -- a computer
```

513

1  printout kind of.
2     Q.  But would have been run from a First DataBank
3  computer?
4     A.  Yes, sir.  Yes, sir.
5     Q.  With Dey's prices on it?
6     A.  With Dey's prices on it, yes.
7     Q.  And it's your testimony Ms. Gmeiner looked at
8  that document and compared it with the price page that
9  you had reviewed and initialed.
10    A.  Yes, sir.
11    Q.  And, therefore, she corrected the
12 discrepancies on the First DataBank document to make
13 them comport with what you had said would be the
14 appropriate prices.
15    A.  Yes.  And then she faxed it back to First
16 DataBank.
17    Q.  So any pen and ink changes or markups on the
18 First DataBank price list would be in Ms. Gmeiner's
19 handwriting?
20    A.  Yes, sir.
21    Q.  And is she personally the -- the individual
22 who faxed the document back to First DataBank?
23    A.  I would believe so.
24    Q.  Do you recall having --
25    A.  I don't --

```
 1      I, ROBERT FRANCIS MOZAK, have read the foregoing
 2  deposition and hereby affix my signature that same is
 3  true and correct, except as noted above.
 4
 5
 6
 7                          ROBERT FRANCIS MOZAK
 8
 9  THE STATE OF                      )
10  COUNTY OF                         )
11     Before me,                              , on this
12  day personally appeared ROBERT FRANCIS MOZAK, known to
13  me (or proved to me under oath or through
14                              ) (description of identity
15  card or other document) to be the person whose name is
16  subscribed to the foregoing instrument and
17  acknowledged to me that they executed the same for the
18  purposes and consideration therein expressed.
19     Given under my hand and seal of office this
20         day of                          , 2002.
21
22
23
24                          NOTARY PUBLIC IN AND FOR
                            THE STATE OF
25
```

```
1                    CAUSE NO. GV002327

2

3   THE STATE OF TEXAS           ) IN THE DISTRICT COURT
    ex rel.,                     )
4           VEN-A-CARE OF THE    )
            FLORIDA KEYS, INC.   )
5                                )
            Plaintiffs,          )
6                                )
    vs.                          ) TRAVIS COUNTY, TEXAS
7                                )
    DEY, INC.; ROXANE            )
8   LABORATORIES, INC., WARRICK  )
    PHARMACEUTICALS CORPORATION, )
9   SCHERING-PLOUGH CORPORATION, )
    and SCHERING CORPORATION,    )
10                               )
            Defendants.          ) 53rd JUDICIAL DISTRICT
11
                    REPORTER'S CERTIFICATION
12             DEPOSITION OF ROBERT FRANCIS MOZAK
                       November 6th, 2002
13                         Volume 3
```

14   I, Cynthia Vohlken, Certified Shorthand Reporter

15 in and for the State of Texas, hereby certify to the

16 following:

17   That the witness, ROBERT FRANCIS MOZAK, was duly

18 sworn by the officer and that the transcript of the

19 oral deposition is a true record of the testimony

20 given by the witness;

21   That the deposition transcript was submitted on

22 November 21, 2002, to the attorney for the Plaintiffs,

23 for examination, signature and return to me by

24 December 16, 2002;

25   That the amount of time used by each party at the

1  deposition is as follows:
2       Mr. Raymond Winter - 1 hour, 49 minutes
3       Mr. Joseph Breen - 2 hours, 34 minutes
4       Total time:  4 hours, 23 minutes
5    That pursuant to information given to the
6  deposition officer at the time said testimony was
7  taken, the following includes counsel for all parties
8  of record:
9       MR. JOE CRAWFORD,
           Attorney for Plaintiff;
10      MR. JAMES JOSEPH BREEN,
           Attorney for the Relator;
11      MR. STEPHEN M. HUDSPETH,
           Attorney for Defendant Dey, Inc.;
12      MR. R. ERIC HAGENSWOLD,
           Attorney for Defendant Roxane
13         Laboratories, Inc.;
        MR. C. MICHAEL MOORE,
14         Attorney for Defendants Warrick
           Pharmaceuticals Corp., Schering-Plough
15         Corp. and Schering Corp.
16
17    I further certify that I am neither counsel for,
18  related to, nor employed by any of the parties or
19  attorneys in the action in which this proceeding was
20  taken, and further that I am not financially or
21  otherwise interested in the outcome of the action.
22    Further certification requirements pursuant to
23  Rule 203 of TRCP will be certified to after they have
24  occurred.
25

695

1      Certified to by me this 21st day of November,
2   2002.
3
4
                Cynthia Vohlken, TX CSR 1059
5               Expiration Date: 12/31/02
                Fredericks-Carroll Reporting
6               7719 Wood Hollow Drive, Suite 156
                Austin, Texas   78731
7               Telephone: (512) 477-9911
                           (800) 234-3376
8               Fax:       (512) 345-1417
9
10
    JOB NO. 8914
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1    FURTHER CERTIFICATION UNDER RULE 203 TRCP

2    The original deposition was/was not returned to

3 the deposition officer on           , 2002;

4    If returned, the attached Changes and Signature

5 page contains any changes and the reasons therefor;

6    If returned, the original deposition was delivered

7 to   Mr. Raymond Winter    , Custodial Attorney;

8    That $      is the deposition officer's

9 charges to the Plaintiff(s) for preparing the original

10 deposition transcript and any copies of exhibits;

11    That the deposition was delivered in accordance

12 with Rule 203.3, and that a copy of this certificate

13 was served on all parties shown herein on and filed

14 with the Clerk.

15    Certified to by me this     day of

16        , 2002.

17

18

19    Cynthia Vohlken, Texas CSR 1059
       Expiration Date: 12/31/2002
20    Fredericks-Carroll Reporting
       7719 Wood Hollow Drive, Suite 156
21    Austin, Texas 78731
       Telephone: (512) 477-9911
22          (800) 234-3376
       Fax:    (512) 345-1417

23 JOB NO. 8914

24

25



**DEY LABORATORIES L.P.**
2751 Napa Valley Corporate Drive
Napa, CA 94558
TEL (707) 224-3200 FAX (707) 224-3235

May 1, 1998

Dey Laboratories
Sales Commentary
April 1998

Monthly sales of $21 million are 31% above prior year and 17% above budget. Year-to-date sales are $92 million, 35% above prior year and 11% above budget. Year-to-year comparisons must take into account the addition of former Center products sales in 1998 which were not present in April of 1997. Without the former Center products, sales for April are 1% above budget and 1.8% lower than the previous year. Sales for the first four months of 1998 are 18% above the prior year.

We announced the May 1 EpiPen price increase in April and the stocking up did occur this month. EpiPen sales of $5.3 million are indicative of this action and will not be repeated in May. Year-to-date we remain about $2 million behind plan in EpiPen which is due to the EZ Pen recall of late last year and the delay in relaunch, now scheduled by Meridian for July. This has delayed our promotional efforts as well, contributing to lower than expected sales.

Albuterol unit dose sales were 59% below budget for the month but are only 4% behind year-to-date. We are negotiating a $17 million order from one wholesaler, which should appear in May and June sales and should help move this product back above plan through the summer. April orders happened to be sluggish compared to prior months.

Albuterol MDI continues its pricing decline due to competitive pressures. We are negotiating new pricing with Glaxo Wellcome, but we do not expect great improvements in this product item over the remainder of this year.

Cromolyn Sodium remains near budget with no significant variance. This market continues to decline and the pending launch by RPR of nedocromil in unit dose will expedite this trend into next year.

Ipratropium continues to outperform at 58% over plan. Pricing has been higher than budgeted and unit volume continues to develop nicely. Boehringer Ingelheim is beginning to get more aggressive with pricing, and we can expect erosion to accelerate, but still within the budgeted range. Dey is now the clear market share leader for this product.

EM Pharma continues its efforts to gain formulary acceptance with moderate signs of success. Unfortunately these have not yet translated into the sales expectations, although there were a few new orders placed near the end of April. We
CONFIDENTIAL



DEPOSITION EXHIBIT 345



A Lipha Americas Company
An Associate of Merck KGaA, Darmstadt, Germany

DL-TX 82805

April Sales Commentary
Page 2
May 1, 1998

continue to make all attempts to enhance selling promotions with Euthyrox to improve sales. Physician sample packs are not available until late June, which continues to hamper our detailing efforts. In May we will revise our AWP to improve our position relative to the competition and communicate this to customers through new price lists. This could result in helping Euthyrox displace existing substitution generic business, which will help sales in the short term. This does not impact the selling price or our margins.

Allergy-Free sales of almost $1.5 million, including correction for backorders, are much improved, and ahead of prior year due to near recovery of the backorder. Participation by Dey personnel in getting production problems resolved with the new AllerPure filter is now being realized. Now that production and inventory problems are being resolved, we can remove the restrictions on marketing to expand activities and generate additional sales.

As part of the process of separating the management of Dey and Allergy-Free under Lipha Americas, we have recruited and hired a new Chief Executive Officer for Allergy-Free, who begins work on May 4, 1998. This new position will provide the much needed planning and leadership capabilities lacking in this business. We expect to continue the profitable trends even though we are now approaching the slow season for the products. This also frees up much time for Dey management to concentrate on more immediate activities in Napa.

The expectations for May are to be near $18 million in sales.

*[signatures]*

CONFIDENTIAL

DL-TX 82806