# EXHIBIT V

1

```
 1                    CAUSE NO. GV002327

 2   THE STATE OF TEXAS        )    IN THE DISTRICT COURT
     ex rel.                   )
 3        VEN-A-CARE OF THE    )
          FLORIDA KEYS, INC.   )
 4                             )
              Plaintiffs,      )
 5                             )
     VS.                       )    TRAVIS COUNTY, TEXAS
 6                             )
     DEY, INC.; ROXANE         )
 7   LABORATORIES, INC. and    )
     WARRICK PHARMACEUTICALS   )
 8   CORPORATION,              )
                               )
 9          Defendants.        )    53rd JUDICIAL DISTRICT

10

11         *********************************************
                  ORAL AND VIDEOTAPED DEPOSITION OF
12                         CHARLES A. RICE
                          October 30, 2001
13         *********************************************

14

15

16             ORAL DEPOSITION OF CHARLES A. RICE, produced

17     as a witness at the instance of the Plaintiffs and duly

18     sworn, was taken in the above-styled and numbered cause

19     on the 30th day of October 2001, from 9:06 a.m. to 5:02

20     p.m., before Randall N. Finch, CSR in and for the State

21     of Texas, reported by machine shorthand, at the offices

22     of Coudert Brothers, 600 Beach Street, Third Floor,

23     San Francisco, California 94109, pursuant to Notice,

24     the Texas Rules of Civil Procedure and the provisions

25     as previously set forth.
```

92

```
             1      some -- some questions that are perhaps not very clear.
             2      I thought we had the understanding that for the
             3      purposes of this discussion the buyer we're discussing
             4      is the wholesaler.  So let's have that understanding
             5      now.
             6           A.    Then let's agree, we're talking about a
             7      wholesaler.
             8           Q.    Yes, and I --
             9           A.    Thank you.
            10           Q.    Again, I thought we had that agreement
            11      already.  So with that understanding, can you answer
            12      the question?  And do we need to go back to the
            13      question?
            14           A.    No.  I think I can reiterate.  A prompt pay
            15      discount, a volume discount and/or rebate would have
            16      the effect of lowering the cost to the wholesaler of
            17      the product sold to the wholesaler by Dey.
11:37A      18           Q.    Thank you.
            19           A.    Is that clear?
            20           Q.    Yes, sir, it is.
            21                 Would a compliance rebate also have the
            22      effect of lowering the cost that is paid by the
            23      wholesaler to Dey?
            24                 MR. HUDSPETH:  Objection; form.  What
            25      is -- compliance -- did you say compliance rebate?
```

```
 1              MR. WINTER:  Yes, sir.
 2              THE WITNESS:  If a compliance rebate has
 3    been negotiated with a wholesaler, and it is in fact a
 4    cash rebate, then it could have that same effect, yes.
 5        Q.   (By Mr. Winter)  Would a market share
 6    rebate -- assuming it has been negotiated with the
 7    wholesaler, would a market share rebate also have the
 8    effect of lowering the actual cost that is paid by the
 9    wholesaler to Dey?
11:38A 10       A.   If a market share rebate in monetary form has
11    been negotiated with the wholesaler, it could have the
12    effect of lowering the cost to the wholesaler of the
13    product sold by Dey.
14        Q.   Does a chargeback have the effect of lowering
15    the cost to the wholesaler of a product sold by Dey to
16    the wholesaler?
17        A.   Please excuse the delay, but I am having to
18    think back through the steps of the chargeback process.
19        Q.   Sure.  Take your time.
20        A.   And my answer is I don't believe it does,
21    because the wholesaler has already paid the invoice
22    price, which is WAC, less a prompt pay discount.  So it
23    does not lower the cost to the wholesaler, if I'm
24    understanding that -- and I think I am correct.  Does
25    that make sense to you?  I'm sorry --
```

```
11:39A   1          Q.   Well, I'm not sure that it does.  Let me --
         2     let me ask you about that.  We talked about -- let's
         3     assume here a transaction in which the following
         4     adjustments, is the term I'm going to use, have been
         5     negotiated and agreed upon between Dey and the
         6     wholesaler.  There's going to be a chargeback in place,
         7     there's going to be a compliance rebate, a market share
         8     rebate, and a prompt payment discount.  And if I
         9     understand your prior testimony, the invoice price that
        10     was -- is charged by Dey to the wholesaler is going to
        11     be WAC.  Is that correct?
        12          A.   That's correct.
        13          Q.   Okay.  And the amount of money, the cost, is
        14     actually paid by the wholesaler, before they cut you a
        15     check or hand over cash or whatever, is going to be
        16     immediately reduced by that prompt payment discount
        17     that we've already agreed was negotiated and in place.
        18     Is that correct?
11:40A  19          A.   Provided that payment is made within the
        20     period qualifying for a prompt pay discount, that's
        21     correct.
        22          Q.   Thank you.  With that understanding that it --
        23     that it is paid promptly.
        24          A.   Mm-hmm.
        25          Q.   Does the wholesaler also reduce the amount of
```

```
            1    money that it pays to Dey up front by the amount
            2    contemplated in the compliance rebate, and if no, when
            3    is the compliance rebate credited to the wholesaler?
            4    Did you understand the question?
            5         A.   I think I did.
            6         Q.   Okay.
            7         A.   Without having a specific set of documents in
            8    front of me and understanding what compliance rebate
            9    had been negotiated, I can only tell you that a
           10    compliance rebate by its very nature refers to
           11    compliance, which would mean purchases over a period of
           12    time, purchase of certain quantities within certain
           13    periods of time of a product.
           14              That usually cannot be known on the date
           15    an invoice is printed.  So it would be taken as a
           16    credit or other -- some other form of transaction at a
           17    later time.  When that would happen depends on the
           18    terms of the negotiation.
11:42A     19         Q.   I think I understand your question -- I mean
           20    your answer, excuse me.
           21              Does that same answer hold true for a
           22    market share rebate?
           23         A.   In my understanding of what a market share
           24    rebate might be, yes, it would be.  And it may not
           25    necessarily come at a later time, but again, I'm not
```

```
 1    sure -- it depends on how it's negotiated and what
 2    the -- the measurement criteria might be.
 3         Q.   Let me ask you to give us your understanding,
 4    please, of both a compliance rebate, and then following
 5    that, a market share rebate.
 6         A.   Well, market share rebate typically is tied to
 7    some piece of information that can be monitored and
 8    measured, whether it's either by the customer or by
 9    ourselves or by both of us.  It typically would be
10    reflected not only in market share information but also
11    in volume purchases.  That's very easy for our company
12    to monitor.
13              Compliance rebate -- and again I'm not
14    intimately familiar with terms and descriptions --
15    could be everything from a sole source arrangement with
16    a customer, whereby they agree that Dey's product will
17    get their full attention, maybe it gets highlighted
18    attention in their catalog if they are marketing to
19    third parties.  And it would be that they would
20    continue to basically represent Dey's product in that
21    certain position.  It might also mean that they
22    provided proof of purchase but they only purchased
23    Dey's products.
11:43A 24  Q.   So the compliance then here is the purchaser,
25    the wholesaler in this case, their compliance with the
```

```
 1    terms of the agreement that you have with them?
 2         A.   That's correct.
 3         Q.   Is that correct?
 4         A.   That is -- so that you understand, that may
 5    also vary depending on the wholesaler customer.  As I
 6    mentioned before every customer has a different set of
 7    demands, so what may be important to one wholesaler may
 8    be different for another wholesaler.
 9         Q.   Okay.  Is there any other kind of rebate that
10    we have not yet discussed aside from or distinct from a
11    compliance rebate and a market share rebate?
12         A.   Again, there's any different number of
13    descriptions of rebates, but I -- I would have to defer
14    to Mr. Mozak and the sales team on that description.
15    I'm not familiar with that level of detail.
16         Q.   Okay.  Is it fair to say that a chargeback is
17    a specific type of rebate?
18         A.   I don't believe so.  I wouldn't qualify a
19    chargeback or even characterize it as a rebate.
20         Q.   Can you tell us, please, what is a service
21    fee?
22         A.   Again, I would have to see a specific context.
23         Q.   Can you tell us, please, what is an
24    administration fee?
25         A.   The term administration fee to my
```

(with 11:45A at line 18)

```
0229
  1       -    -                              -

  2       -    -                              -

  3       -    -                              -

  4       -    -                              -

  5       -    -                              -

  6       -    -                              -

  7

  8            I, CHARLES A. RICE, have read the foregoing

  9   deposition and hereby affix my signature that same is

 10   true and correct, except as noted above.

 11

 12
                        CHARLES A. RICE
 13
      THE STATE OF           )
 14   COUNTY OF              )

 15           Before me,                       , on this day
      personally appeared CHARLES A. RICE, known to me (or
 16   proved to me under oath or through
              description of identity card or other document)
 17   to be the person whose name is subscribed to the
      foregoing instrument and acknowledged to me that they
 18   executed the same for the purposes and consideration
      therein expressed.
 19           Given under my hand and seal of office this
              day of                  , 2001.
 20

 21
                        NOTARY PUBLIC IN AND FOR
 22                     THE STATE OF
                        My commission expires
 23

 24

 25
```

```
0230
 1                      CAUSE NO. GV002327

 2   THE STATE OF TEXAS          )   IN THE DISTRICT COURT
     ex rel.                     )
 3       VEN-A-CARE OF THE       )
         FLORIDA KEYS, INC.      )
 4                               )
              Plaintiffs,        )
 5                               )
     VS.                         )   TRAVIS COUNTY, TEXAS
 6                               )
     DEY, INC.; ROXANE           )
 7   LABORATORIES, INC. and      )
     WARRICK PHARMACEUTICALS     )
 8   CORPORATION,                )
                                 )
 9            Defendants.        )   53rd JUDICIAL DISTRICT

10                    REPORTER'S CERTIFICATION
                   DEPOSITION OF CHARLES A. RICE
11                   Tuesday, October 30, 2001

12

13         I, Randall N. Finch, Certified Shorthand

14   Reporter in and for the State of Texas, hereby certify

15   to the following:

16         That the witness, CHARLES A. RICE, was duly

17   sworn by the officer and that the transcript of the

18   oral deposition is a true record of the testimony given

19   by the witness;

20         That the deposition transcript was submitted

21   on November 8, 2001, to the witness, thorugh his

22   attorney, Stephen M. Hudspeth, for examination,

23   signature and return.

24         That the amount of time used by each party at

25   the deposition is as follows:
```

```
0231
 1             Mr. Raymond Winter - 153 minutes
 2             Mr. James Breen - 170 minutes
 3             That pursuant to information given to the
 4  deposition officer at the time said testimony was
 5  taken, the following includes all parties of record:
 6             Mr. Joe Crawford for the Plaintiff State of
 7  Texas
 8             Mr. James Joseph Breen and Mr. John E. Clark
 9  for the Relator
10             Mr. Stephen M. Hudspeth and Mr. Steven A.
11  Fleckman for the Defendant Dey, Inc.
12             Mr. Andy Mao for the Department of Justice
13             Mr. Greg Pierce for Defendant Roxane
14  Laboratories, Inc.
15             Mr. C. Michael Moore for the Defendant Warrick
16  Pharmaceuticals Corporation
17             Mr. Zachary Bentley for the Plaintiff
18  Ven-A-Care of the Florida Keys, Inc.
19             I further certify that I am neither counsel
20  for, related to, nor employed by any of the parties or
21  attorneys in the action which this proceeding was
22  taken, and further that I am not financially or
23  otherwise interested in the outcome of the action.
24             Further certification requirements pursuant to
25  Rule 203 of TRCP will be certified to after they have
```

```
0232
 1  occurred.

 2            Certified to by me this 8th day of November

 3  2001.

 4

 5

 6
              Randall N. Finch, Texas CSR 504
 7            Expiration date: 12/31/02
              Fredericks-Carroll Reporting
 8            7719 Wood Hollow Drive, Suite 156
              Austin, Texas 78731
 9            Telephone:   (512) 477-9911
                           (800) 234-3376
10                 Fax:    (512) 345-1737
    JOB NO.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
0233
  1           FURTHER CERTIFICATION UNDER RULE 203 TRCP

  2           The original deposition was/was not returned

  3   to the deposition officer on                    , 2001;

  4           If returned, the attached Changes and

  5   Signature page contains any changes and the reasons

  6   therefor;

  7           If returned, the original deposition was

  8   delivered to                 , custodial attorney;

  9           That $       is the deposition officer's

 10   charges to the Plaintiffs for preparing the original

 11   deposition transcript and any copies of exhibits;

 12           That the deposition was delivered in

 13   accordance with Rule 203.3, and that a copy of this

 14   certificate was served on all parties shown herein and

 15   filed with the clerk.

 16           Certified to by me this      day of        ,

 17   2001.

 18

 19

 20
              Randall N. Finch, Texas CSR 504
 21           Expiration date: 12/31/02
              Fredericks-Carroll Reporting
 22           7719 Wood Hollow Drive, Suite 156
              Austin, Texas 78731
 23           Telephone:  (512) 477-9911
                          (800) 234-3376
 24                Fax:   (512) 345-1419
      JOB NO.
 25
```