# EXHIBIT C

Page 1

```
              UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - -
IN RE:  PHARMACEUTICAL         ) MDL NO. 1456
INDUSTRY AVERAGE WHOLESALE     ) CIVIL ACTION
PRICE LITIGATION               ) 01-CV-12257-PBS
THIS DOCUMENT RELATES TO       )
U.S. ex rel. Ven-A-Care of     ) Judge Patti B. Saris
the Florida Keys, Inc.,        )
vs.                            ) Chief Magistrate
Abbott Laboratories, Inc.,     ) Judge Marianne B.
No. 06-CV-11337-PBS            ) Bowler
- - - - - - - - - - - - - - - -
```

          (Captions continued on following pages)

                        VOLUME I

      DEPOSITION OF VEN-A-CARE (T. MARK JONES)

       Videotaped deposition of T. Mark Jones, held at
the Law Offices of Hunton & Williams, LLP, 1111
Brickell Avenue, Suite 2500, Miami, Florida, 33131,
on Tuesday, March 18, 2008, commencing at 9:06 a.m.,
before Donald W. McKay, RMR, CRR, a Notary Public
for the State of Florida.

Ven-A-Care (T. Mark Jones)                           March 18, 2008
                            Miami, FL

Page 2

```
 1        UNITED STATES DISTRICT COURT
 2      FOR THE DISTRICT OF MASSACHUSETTS
 3   ---------------
 4   IN RE:  PHARMACEUTICAL     ) MDL NO. 1456
 5   INDUSTRY AVERAGE WHOLESALE ) CIVIL ACTION
 6   PRICE LITIGATION           ) 01-CV-12257-PBS
 7   THIS DOCUMENT RELATES TO   )
 8   U.S. ex rel. Ven-A-Care of ) Judge Patti B. Saris
 9   the Florida Keys, Inc.,    )
10   et al.,                    ) Chief Magistrate
11   vs.                        ) Judge Marianne B.
12   Boehringer Ingelheim       ) Bowler
13   Corporation, et al.,       )
14   No. 07-CV-10248-PBS        )
15   ---------------
```

Page 3

```
 1      IN THE DISTRICT OF TRAVIS COUNTY, TEXAS
 2   ---------------
 3   THE STATE OF TEXAS, ex rel.   )
 4   VENA-A-CARE OF THE FLORIDA    )
 5   KEYS, INC.,                   )
 6       Plaintiffs,               ) Cause No.
 7   vs.                           ) GV401286
 8   ABBOTT LABORATORIES, INC.,    )
 9   et al.,                       )
10       Defendants.               )
11   ---------------
12
13        UNITED STATES DISTRICT COURT
14      FOR THE DISTRICT OF MASSACHUSETTS
15   ---------------
16   COMMONWEALTH OF MASSACHUSETTS, )
17       Plaintiff,                 )
18   vs.                            ) Civil Action
19   MYLAN LABORATORIES, INC.,      ) No. 03-CV-11865-PBS
20   et al.,                        )
21       Defendants.                )
22   ---------------
```

Page 4

```
 1        COMMONWEALTH OF KENTUCKY
 2      FRANKLIN CIRCUIT COURT - DIV. I
 3   ----------------
 4   COMMONWEALTH OF KENTUCKY,   )
 5   ex rel. JACK CONWAY,        )
 6   ATTORNEY GENERAL,           ) Civil Action
 7       Plaintiff,              ) No. 04-CI-1487
 8   vs.                         )
 9   ALPHARMA USPD, INC., et al.,)
10       Defendants.             )
11   ----------------
12
13
14   IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA
15   ----------------
16   In the Matter of,            )
17   ALABAMA MEDICAID PHARMACEUTICAL) Master Docket
18   AVERAGE WHOLESALE PRICE      ) No. CV-2005-219
19   LITIGATION                   )
20   ----------------
```

Page 5

```
 1   IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT
 2    OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA
 3   ----------------
 4   STATE OF IDAHO,         )
 5       Plaintiff,          ) Case No.
 6   vs.                     ) CV OC 0701847
 7   ALPHARMA USPD, INC., et al., )
 8       Defendants.         )
 9   ----------------
10
11
12        COMMONWEALTH OF KENTUCKY
13      FRANKLIN CIRCUIT COURT - DIV. III
14   ----------------
15   COMMONWEALTH OF KENTUCKY,  )
16       Plaintiff,             ) Civil Action
17   vs.                        ) No. 03-CI-1134
18   ABBOTT LABORATORIES, INC., )
19       Defendant.             )
20   ----------------
```

2 (Pages 2 to 5)

Page 90

1   to come up with Red Book, you're basing that upon
2   documents you've read in your investigation,
3   people with whom you've spoken in your
4   investigation. Do I have that correct?
5       A.  Documents that we've reviewed, yes.
6   People that we've spoken with, yes. I've also --
7   but again, I've seen -- Abbott has given Ven-A-
8   Care, you know, over the years, fliers on drugs
9   which shows their list price and their AWP as
10  well.
11      Q.  I can represent to you that there is
12  not a single piece of paper that Ven-A-Care has
13  provided to any state, any government law
14  enforcement agency that we have, or to Abbott
15  that would have a flier showing both Abbott's AWP
16  and Abbott's list price. Can you point me to
17  one?
18          MR. BREEN: Objection, form.
19          THE WITNESS: To Zovirax.
20  BY MR. COOK:
21      Q.  For Zovirax, that would be the fax that
22  you requested from Dennis Walker. Right?

Page 91

1       A.  That would be what I'm talking about.
2       Q.  That was a fax that -- so, on one
3   occasion, Zach Bentley called Michael Heggie, and
4   Dennis Walker called him back, and Mr. Bentley
5   requested the AWP for Acyclovir, a new drug that
6   Abbott was coming out with. Correct?
7           MR. BREEN: Objection, form.
8           THE WITNESS: I don't recall how Mr.
9   Bentley testified that he did it -- because I
10  didn't do it. So I don't want to tell you yes,
11  that's correct. I think that there are some
12  elements there. I think that Acyclovir was
13  introduced to Ven-A-Care through the GPO for
14  Abbott, now that I'm thinking back.
15  BY MR. COOK:
16      Q.  But in terms of an Abbott document that
17  compared the AWP for its generic to the list
18  price for its generic, the only piece of paper
19  that you have in mind is this facsimile that
20  Dennis Walker sent to Mr. Bentley. Correct?
21      A.  It's the only piece of paper I have in
22  mind at this moment, yes.

Page 92

1       Q.  And you'll agree with me that that
2   piece of paper states on the face of it that Mr.
3   Bentley had requested that information from
4   Dennis Walker. Correct?
5       A.  I'd have to see it to tell you yes.
6       Q.  Now, in this case, you'll agree with me
7   that there are literally hundreds, if not
8   thousands of drug advertisements contained in
9   material that Ven-A-Care collected over the years
10  as part of its investigation. Right?
11      A.  It's hard to quantify.
12      Q.  A lot. Right?
13      A.  There is -- yes. Ven-A-Care has
14  provided a lot of that.
15      Q.  Can you point me to any of those that
16  Abbott issued that compared Abbott's AWP to
17  Abbott's list price for its generic drugs?
18          MR. BREEN: Objection to form.
19          THE WITNESS: That I didn't see in
20  discovery? Is that the question?
21  BY MR. COOK:
22      Q.  That Ven-A-Care found in its

Page 93

1   investigation. We can move on to discovery in a
2   minute.
3       A.  Not right now.
4       Q.  And in discovery, have you seen any
5   documents, advertisements, for the drugs in this
6   case, in which Abbott compared the AWP to its
7   list price, again leaving aside the facsimile
8   from Dennis Walker to Zach Bentley?
9       A.  Well, I have seen -- certainly seen
10  Abbott compare -- complying with GPO contracts
11  and listing out their prices with their AWP's
12  showing percentage spreads, sometimes showing a
13  comparative to another competitor.
14      Q.  These would be printouts from Group
15  Purchasing Organizations. Correct?
16      A.  They would be Abbott's contracts with
17  GPO's or Abbott's RFP's that I've seen.
18      Q.  So this would be Abbott responding to
19  questions posed by GPO's about Abbott's drugs.
20  Correct?
21          MR. BREEN: Objection to form.
22          THE WITNESS: This would be Abbott

                                            24 (Pages 90 to 93)

Page 346

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

IN RE:   PHARMACEUTICAL            ) MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE         ) CIVIL ACTION

PRICE LITIGATION                   ) 01-CV-12257-PBS

THIS DOCUMENT RELATES TO           )

U.S. ex rel. Ven-A-Care of         ) Judge Patti B. Saris

the Florida Keys, Inc.,            )

vs.                                ) Chief Magistrate

Abbott Laboratories, Inc.,         ) Judge Marianne B.

No. 06-CV-11337-PBS                ) Bowler

- - - - - - - - - - - - - - - - -

       (Captions continued on following pages)

 VOLUME II - CONTAINS HIGHLY CONFIDENTIAL PORTIONS

       DEPOSITION OF VEN-A-CARE (T. MARK JONES)

     Videotaped deposition of Ven-A-Care (T. Mark

Jones), held at the Law Offices of Hunton & Williams,

LLP, 1111 Brickell Avenue, Suite 2500, Miami, Florida,

33131, on Wednesday, March 19, 2008, commencing at

8:59 a.m., before Donald W. McKay, RMR, CRR, a Notary

Public for the State of Florida.

Page 347

```
 1        UNITED STATES DISTRICT COURT
 2        FOR THE DISTRICT OF MASSACHUSETTS
 3   ---------------
 4   IN RE:  PHARMACEUTICAL    ) MDL NO. 1456
 5   INDUSTRY AVERAGE WHOLESALE ) CIVIL ACTION
 6   PRICE LITIGATION          ) 01-CV-12257-PBS
 7   THIS DOCUMENT RELATES TO  )
 8   U.S. ex rel. Ven-A-Care of ) Judge Patti B. Saris
 9   the Florida Keys, Inc.,   )
10   et al.,                   ) Chief Magistrate
11   vs.                       ) Judge Marianne B.
12   Boehringer Ingelheim      ) Bowler
13   Corporation, et al.,      )
14   No. 07-CV-10248-PBS       )
15   ---------------
```

Page 348

```
 1      IN THE DISTRICT OF TRAVIS COUNTY, TEXAS
 2   ---------------
 3   THE STATE OF TEXAS, ex rel.   )
 4   VENA-A-CARE OF THE FLORIDA    )
 5   KEYS, INC.,                   )
 6       Plaintiffs,      ) Cause No.
 7   vs.                  ) GV401286
 8   ABBOTT LABORATORIES, INC.,    )
 9   et al.,                       )
10       Defendants.      )
11   ---------------
12
13        UNITED STATES DISTRICT COURT
14        FOR THE DISTRICT OF MASSACHUSETTS
15   ---------------
16   COMMONWEALTH OF MASSACHUSETTS, )
17       Plaintiff,       )
18   vs.                  ) Civil Action
19   MYLAN LABORATORIES, INC.,    ) No. 03-CV-11865-PBS
20   et al.,              )
21       Defendants.      )
22   ---------------
```

Page 349

```
 1        COMMONWEALTH OF KENTUCKY
 2        FRANKLIN CIRCUIT COURT - DIV. I
 3   ----------------
 4   COMMONWEALTH OF KENTUCKY,    )
 5   ex rel. JACK CONWAY,         )
 6   ATTORNEY GENERAL,            ) Civil Action
 7       Plaintiff,       ) No. 04-CI-1487
 8   vs.                  )
 9   ALPHARMA USPD, INC., et al., )
10       Defendants.      )
11   ----------------
12
13
14   IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, ALABAMA
15   ----------------
16   In the Matter of,    )
17   ALABAMA MEDICAID PHARMACEUTICAL ) Master Docket
18   AVERAGE WHOLESALE PRICE  ) No. CV-2005-219
19   LITIGATION           )
20   ----------------
```

Page 350

```
 1   IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT
 2   OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA
 3   ----------------
 4   STATE OF IDAHO,     )
 5       Plaintiff,      ) Case No.
 6   vs.                 ) CV OC 0701847
 7   ALPHARMA USPD, INC., et al.,  )
 8       Defendants.     )
 9   ----------------
10
11
12        COMMONWEALTH OF KENTUCKY
13        FRANKLIN CIRCUIT COURT - DIV. III
14   ----------------
15   COMMONWEALTH OF KENTUCKY,    )
16       Plaintiff,      ) Civil Action
17   vs.                 ) No. 03-CI-1134
18   ABBOTT LABORATORIES, INC.,   )
19       Defendant.      )
20   ----------------
```

2 (Pages 347 to 350)

Page 367

1  submitting a false document, and you were not
2  concealing any material fact from Florida
3  Medicaid for payment of this -- of these funds.
4  Right?
5      A.  Right.
6      Q.  Thank you.
7          I'd like to ask you some questions --
8  Mr. Jones, if I were to ask you the exact same
9  questions as Ven-a-Care's corporate
10 representative, would your answers be the same?
11         MR. BREEN:  Objection to form.
12         THE WITNESS:  Yes.  I think that it
13 would be similar.
14 BY MR. COOK:
15     Q.  Similar --
16     A.  The same.
17     Q.  I would like to ask you some questions
18 specifically as a 30(b)(6) witness.  And that is,
19 we looked at some Medicaid claim forms yesterday,
20 we looked at some Medicare claim forms, and we
21 looked at some Explanations of Benefits, both
22 from Medicare and Medicaid.  Are there any other

Page 368

1  Medicaid or Medicare claims forms or Explanations
2  of Benefits that would relate specifically to the
3  drugs at issue in either the Texas litigation or
4  the Department of Justice litigation with Abbott?
5          MR. BREEN:  Objection to form.  If
6  you're going to ask him as a designee, I'd like
7  to know what designation this is under.
8          MR. COOK:  Sure.  Let me pull it out.
9  Well, among other things, it's pursuant to the
10 earlier designation for document witnesses that
11 we examined Mr. Jones about before.  Does that
12 satisfy you?
13         MR. BREEN:  The accuracy and validity
14 and completeness of documents, perhaps.
15         MR. COOK:  Yes, sir.  I'm simply asking
16 if there are any other claims forms or
17 Explanations of Benefits for Medicare or Medicaid
18 for any of the subject drugs that Ven-a-Care can
19 provide to us.
20         MR. BREEN:  If he can answer that
21 question off the top of his head, fine.
22         THE WITNESS:  I believe that Ven-a-Care

Page 369

1  has produced all of the records that would
2  pertain to this case that it has.
3  BY MR. COOK:
4      Q.  Okay.  Just so we're real clear -- and
5  I want the record to be clear why I'm asking you
6  this -- we have been unable to locate any claims
7  forms or EOB's for the subject drugs that Ven-a-
8  Care submitted that indicated that they were
9  submitting a claim to Medicare or Medicaid for
10 Abbott's drugs.  For example, the dextrose was a
11 McGaw product.  Right?
12     A.  Yes.
13     Q.  We believe that's significant.  And as
14 the corporate designee, I'm asking you now, can
15 you point me to any so that I don't hear in a
16 response to a motion for summary judgment that,
17 in fact, there is one, if I say there are not
18 any?
19     A.  I can't point you to one right now, as
20 I sit here, no.
21     Q.  All right.  And as a corporate
22 designee, I'm asking you the unqualified

Page 370

1  question, are there any?
2          MR. BREEN:  Objection to form.
3          MR. COOK:  Let me restate that.
4  BY MR. COOK:
5      Q.  Are there any that Ven-a-Care can
6  produce?
7          MR. BREEN:  Objection to form.
8          MR. COOK:  What is the objection to
9  form?
10         MR. BREEN:  I think it's a misleading
11 question.  You're asking him if there is any they
12 can produce.  He's testified they produced
13 everything in their possession.  He's also
14 testified about the events that -- following
15 Hurricane George.  And you're asking him to
16 certify that you have found everything in our
17 production that might relate.  I don't think
18 that's a proper question.
19         MR. COOK:  I'll ask it very clearly.
20 BY MR. COOK:
21     Q.  Does Ven-a-Care today have in its
22 possession any Explanation of Benefits or

Page 379

 1  could have done so, and you didn't do it.  So if
 2  you're going to insist that he ask as a corporate
 3  -- answer as a corporate representative, I'm
 4  going to interpose an objection and I'm going to
 5  interpose an instruction that he not respond to
 6  the question.
 7         MR. COOK:  You can do so, Jim, but I am
 8  asking for all documents.
 9         MR. BREEN:  You may be asking for all
10  documents, but you didn't ask for him to marshal
11  this particular kind of evidence.  So, if you
12  did, I want you to point me to the designation.
13         MR. COOK:  Jim, it's clearly subsumed
14  within our earlier designation asking for the
15  completeness and the content of Ven-a-Care's
16  document production.  I am more than happy to
17  suggest that -- I don't think Ven-a-Care can do
18  it.  What I would ask you to do is if Ven-a-Care
19  can do this, either provide a written response,
20  and then we can discuss whether there would be
21  very limited reconvening of the 30(b)(6)
22  deposition to ask the questions related to it.

Page 380

 1  If Ven-a-Care cannot do so, simply tell me so in
 2  a letter or in written testimony or an affidavit.
 3  I simply want to make sure that I don't get
 4  sandbagged or blindsided at summary judgment if I
 5  tell the Court that Ven-a-Care cannot provide
 6  that evidence.  That's all I'm asking.
 7         MR. BREEN:  I understand what you're
 8  trying to do, Chris.  And I respect what you're
 9  trying to do.  The problem is Ven-a-Care will
10  testify that it provided all the documents in its
11  possession, custody or control that were
12  responsive to your discovery requests.  Ven-a-
13  Care has not been asked, in any designation, to
14  marshal the evidence that you're asking this
15  witness to marshal now.  Now, hold on.  Let me
16  just finish.
17         MR. COOK:  We asked it in RFP's, Jim.
18  We asked for each piece of that chain in an RFP.
19  I'm simply asking whether, in response to that
20  RFP, documents exist; or if the answer is, "We
21  have no such documents."  That's all I'm asking.
22         MR. BREEN:  I understand what you're

Page 381

 1  saying.  But it's a different designation than
 2  you've given.  And the Court has entered orders
 3  at Abbott's request that not one word of these
 4  designations are going to be changed in terms of
 5  the pending 30(b)(6) designations.  So I don't
 6  think this has been designated.
 7         I will take what you're saying under
 8  consideration.  Obviously, if it's going to be an
 9  issue that you're going to raise in motion
10  practice, it's going to have to be responded to
11  anyway.  So I'm not necessarily saying we won't
12  do this.  I just don't think we're required to do
13  it by the current designation.  I'd like a chance
14  to think about it.
15         MR. COOK:  Take a look at our original
16  designations from a year ago last March relating
17  to the document requests, and I believe they do
18  fairly require Ven-a-Care to certify that each of
19  our requests has been fully responded to.  And I
20  have no doubt that they have been.  I simply want
21  a witness to tell me there are no documents that
22  fit within this category that was requested in

Page 382

 1  certain of our RFP's.
 2         MR. BREEN:  I understand what you're
 3  asking.
 4  BY MR. COOK:
 5      Q.  Is it fair to say, Mr. Jones, that in
 6  filing Ven-a-Care's various lawsuits in this
 7  case, its original complaint, its Second Amended
 8  Complaint, all the way through its Fourth Amended
 9  Complaint, and adopting the government's
10  complaints in intervention, that Ven-a-Care has
11  not undertaken the process of putting together
12  the chain of documents showing the lifespan of a
13  reimbursed drug in the way that I've asked you
14  today?  Right?
15         MR. BREEN:  Objection to form.
16         THE WITNESS:  I don't believe in the
17  way you asked me today.
18  BY MR. COOK:
19      Q.  And I'm asking you as a corporate
20  designee, has Ven-a-Care, in filing its lawsuits
21  -- and this may short-circuit going through
22  individual complaints -- as to each of the drugs

10 (Pages 379 to 382)

Page 383

1  that Ven-a-Care named in its various lawsuits,
2  has Ven-a-Care made certain that it actually
3  purchased each of the drugs named in each of the
4  lawsuits?
5       MR. BREEN:  Objection to form.
6       THE WITNESS:  I don't believe Ven-a-
7  Care has purchased every drug in each of the
8  lawsuits.
9  BY MR. COOK:
10     Q.  And where the lawsuits -- in the
11 complaints, it says Ven-a-Care's price, is it a
12 fair characterization that when Ven-a-Care lists
13 Ven-a-Care's price in a complaint, that is a
14 price at which Ven-a-Care could purchase the
15 product, not necessarily a price at which Ven-a-
16 Care did purchase that particular NDC?
17     A.  The prices that are listed in the
18 complaint represent prices that are available to
19 Ven-a-Care, either through GPO's, wholesalers,
20 direct with companies.
21     Q.  And if I were to -- Exhibit 414 is a
22 good inch thick.  It's the various complaints

Page 384

1  that Ven-a-Care has filed.  If I were to walk you
2  through each of the perhaps hundreds, but at
3  least dozens of NDC's in those complaints, is it
4  fair to say you would not be able to tell me,
5  yes, we purchased that drug and here is an
6  invoice for it; no, we didn't purchase this drug,
7  we have no invoice for it?
8       MR. BREEN:  Objection to form.
9       THE WITNESS:  I would have an idea of
10 which drugs we purchased.  I don't think I could
11 point to invoices where we purchased it, when,
12 you know.  I know what the time frame would be
13 for the drugs, but no, I couldn't -- you couldn't
14 point to every drug and I could give you that
15 information.
16 BY MR. COOK:
17     Q.  So to the extent -- and this is one of
18 the designations -- in fact, let's go ahead and
19 mark the Notice of Deposition and the
20 designations so it will be clear what I'm asking
21 you about.
22     We'll mark this as Exhibit 707 and 708.

Page 385

1       (Exhibit Abbott 707 was thereupon
2  marked.)
3       (Exhibit Abbott 708 was thereupon
4  marked.)
5  BY MR. COOK:
6     Q.  Exhibit 707 is our Notice of Deposition
7  to you, Mr. Jones, our 30(b)(6) notice to you.
8     A.  Um-hmm.
9     Q.  And more importantly, Exhibit 708 is
10 the document that we attached as Exhibit A, which
11 was my November 21, 2007 letter, laying out the
12 topics on which we were asking to examine a
13 corporate representative of Ven-a-Care.  And I'm
14 asking you right now about topics 1 and 2(a);
15 that is, the evidence and facts that support or
16 contradict allegations in your complaints.
17     A.  Um-hmm.
18     Q.  And the veracity and good-faith basis
19 for the statements made in Ven-a-Care's
20 complaints.
21     It's your understanding, of course,
22 that Ven-a-Care has adopted the government's

Page 386

1  complaint in intervention as its own.  Correct?
2     A.  Yes.
3     Q.  So I'll get you to look at the
4  government's First Amended Complaint as the
5  operative complaint in this case.  And attachment
6  one to that complaint or Exhibit 1 to that
7  complaint is a list of the drugs that are at
8  issue in the complaint.  And for the record, what
9  you're looking at is a copy of Exhibit 547, which
10 is the First Amended Complaint in this case.
11     And looking at Exhibit 1 to Exhibit
12 547, can you tell me which of those drugs did
13 Ven-a-Care purchase?
14     MR. BREEN:  Objection to form.
15     THE WITNESS:  Specifically?  I can tell
16 you Ven-a-Care has purchased Abbott's dextrose
17 solutions, it's purchased its sodium chloride
18 solutions, its Vancomycins, and its bacteria
19 static water.
20 BY MR. COOK:
21     Q.  Has Ven-a-Care purchased Abbott's
22 Acyclovir?

Page 387

1  A. Not to my knowledge.
2  Q. The dextrose solution -- there are a
3  number of NDC's for dextrose solution listed.
4  Right?
5  A. (Nods head in the affirmative).
6  Q. Are you able to tell me which NDC's
7  Ven-a-Care purchased?
8  A. Only if I could look at the invoices
9  that I have that would allow me to identify the
10 NDC's. And then the other issue is that
11 sometimes -- well, not just sometimes -- many of
12 these NDC's have changed over the years. Like
13 from '92 to 2000. There may be an NDC change
14 that represents the same drug. This may be --
15 what I'm saying is this may be like a 2006 NDC
16 that might have been a different NDC back in '95
17 or '96.
18 Q. Does Ven-a-Care have invoices from
19 which you could determine whether Ven-a-Care
20 purchased those NDC's of Abbott's dextrose?
21     MR. BREEN: Objection to form. Asked
22 and answered.

Page 388

1     THE WITNESS: Ven-a-Care has invoices
2  that reflect what we've purchased. And I would
3  have to look at them to see.
4  BY MR. COOK:
5  Q. But you're not able to testify today to
6  all of the evidence and facts supporting those
7  particular allegations in the complaint. Right?
8     MR. BREEN: I'm going to interpose an
9  objection now to the designation, itself. We've
10 already alerted you of those objections. I don't
11 think it's proper to ask this witness to sit here
12 and marshal every piece of evidence relating to
13 every allegation in every complaint or other
14 representation that Ven-a-Care has made as a
15 broad question. No witness could possibly
16 remember all of that. And that's exactly the
17 nature of your question right now.
18 BY MR. COOK:
19 Q. Other than your personal memory, are
20 you able to provide me, sitting here today, any
21 other evidence to support your contention that
22 Ven-a-Care purchased Abbott's dextrose, sodium

Page 389

1  chloride, Vancomycin and water?
2  A. You mean from my body, give it to you,
3  other than my memory?
4  Q. Can you point me to any -- specifically
5  to any evidence to support your contention that
6  Ven-a-Care purchased these drugs?
7     MR. BREEN: Objection to form.
8     THE WITNESS: Ven-a-Care turned over
9  invoices of purchases. They should be in your
10 possession. I can't tell you what the Bates
11 ranges are off the top of my head.
12 BY MR. COOK:
13 Q. The same would be true for the other
14 drugs, other than dextrose. Is that correct?
15 A. Other than?
16 Q. Well, the sodium chloride, the Vanco,
17 and the water, the same would be true for those.
18 Right?
19 A. Yes.
20    MR. COOK: Jim, before we get too far
21 away from Exhibit 708, the specifications, it's
22 my understanding that in the interest of

Page 390

1  everybody's schedules, we're not going to attempt
2  to have Mr. Jones authenticate every document
3  that Ven-a-Care has produced and try to do that
4  here at this deposition. I'm more than happy to
5  work with you to find ways to stipulate and
6  negotiate the authenticity of documents before
7  trial, if that's necessary.
8     MR. BREEN: I don't anticipate that to
9  be an issue. If you are aware, though, of any
10 document or group of documents that you have any
11 question as to whether or not it is a Ven-a-Care
12 business record in the ordinary course of
13 business as a pharmacy, or a Ven-a-Care business
14 record in the context of its investigation, or a
15 record that's not a Ven-a-Care business record,
16 it may have been in their possession, that you
17 think may be an issue, an evidentiary issue, I
18 think we ought to try to address it. But I'm not
19 aware of any of those issues.
20    MR. COOK: Nor am I.
21    MR. BREEN: That's the only thing in
22 this case that I could contemplate might be an

12 (Pages 387 to 390)

Page 391

1  issue when it comes to authentication.
2      MR. LAVINE:  The United States will
3  work with you in the same fashion.
4      MR. COOK:  Sure.  And I assume that Mr.
5  Jones will be available to testify at trial if it
6  were necessary, especially if the trial took
7  place here in Miami.
8      MR. BREEN:  Yes.
9      MR. COOK:  And subpoena power would
10 extend to Key West even if it were in
11 Massachusetts, which I don't think the rules
12 allow, under the False Claims Act.
13     MR. BREEN:  I think under the False
14 Claims Act, subpoena power is nationwide.
15 Everybody.
16 BY MR. COOK:
17     Q.  Mr. Jones, in 1996, Ven-a-Care filed an
18 Amended Complaint.  Correct?
19     A.  If it was 1996, yes.
20     Q.  I don't have a copy of it, so I'm not
21 able to give you a copy of it.  Abbott was not in
22 the caption of that complaint.  Correct?

Page 392

1      A.  That's correct.
2      MR. COOK:  If I could impose upon Mr.
3  Breen to grab the book of exhibits that contain
4  Exhibits 414 and 415.
5      MR. BREEN:  Do you know what volume
6  that is?
7      MR. COOK:  414 is quite large.  Volume
8  nine.
9      MR. BREEN:  Here is volume nine.
10 You're talking about the orange book.
11     MR. COOK:  Just volume nine.  I think
12 that has 414 and 415 in it.  Oh, I'm sorry.
13     THE WITNESS:  This is 200s.
14     MR. COOK:  Sorry, Jim.  Volume 14.
15     MR. BREEN:  All right.
16     MR. COOK:  Volume 14 and volume 15.
17 And volume 15 contains Exhibit 415.
18     THE WITNESS:  It says 414.
19     MR. COOK:  415.
20     And 415, for the record, is Ven-a-
21 Care's Notice of Dismissing and Adding
22 Defendants, dated March 28, 1997.

Page 393

1      And for the record, Exhibit 415 states
2  in its first line, "Plaintiff hereby voluntarily
3  dismisses without prejudice, defendant Abbott
4  Laboratories" -- and then there is some redaction
5  tape, and the sentence continues -- "from the
6  instant action and adds as defendants" -- and
7  again, there is redaction tape -- "pursuant to
8  15(a) of the rules of civil procedure."
9      Do you see that?
10     THE WITNESS:  There you go.  I was
11 looking at 416.
12 BY MR. COOK:
13     Q.  Do you see that the notice of
14 dismissing and adding defendants is signed by
15 your attorneys, Mr. Wampler and Mr. Breen?
16     A.  Yes.
17     Q.  Were your attorneys authorized to file
18 this document in court on behalf of Ven-a-Care?
19     A.  Yes.
20     Q.  Does this document accurately reflect
21 an action that Ven-a-Care intended to take in the
22 district court for the Southern District of

Page 394

1  Florida?
2      MR. BREEN:  Objection to form.
3      THE WITNESS:  I'm sorry.  Can you say
4  that again.
5  BY MR. COOK:
6      Q.  Does this document accurately reflect
7  an action or a request that Ven-a-Care intended
8  to make of the District Court for the Southern
9  District of Florida?
10     MR. BREEN:  Objection to form.
11     THE WITNESS:  Yes.
12 BY MR. COOK:
13     Q.  I don't want you to reveal any
14 communications with counsel, because I assume --
15 well, let me ask you.  Did you have conversations
16 with counsel, without revealing the content,
17 before counsel filed this document on behalf of
18 Ven-a-Care?
19     A.  Yes.
20     Q.  So a conversation took place; and at
21 the end of that conversation, counsel had
22 authorization to file this document on your

13 (Pages 391 to 394)

Page 395

1  behalf.  Correct?
2      A.  Yes.
3          MR. BREEN:  Objection to form.
4  BY MR. COOK:
5      Q.  Without revealing what communications
6  you had with client -- with your attorney, after
7  the end of that conversation, why is it that Ven-
8  a-Care sought to dismiss Abbott from this
9  lawsuit?
10         MR. BREEN:  I'm going to object, impose
11 the attorney-client privilege objection, and
12 instruct the witness not to answer to the extent
13 that any -- if part of his answer reveals
14 confidential communications with counsel.
15         THE WITNESS:  I'm not able to answer.
16 BY MR. COOK:
17     Q.  Is it fair to say that you dismissed
18 Abbott from this lawsuit based upon the advice of
19 counsel?
20         MR. BREEN:  Same objection, same
21 instruction.
22         MR. COOK:  Are you instructing him not

Page 396

1  to answer the question?  It's a yes or no
2  question.
3          MR. BREEN:  Yes.  I'm instructing him
4  not to answer the question.
5          MR. COOK:  Your last instruction was
6  more --
7          MR. BREEN:  I know.  It was kind of
8  vague.
9          Actually, before moving on, can we take
10 a brief break?  Because I'd like to speak to Mr.
11 Lavine for a minute before we move beyond this
12 particular topic.
13         MR. COOK:  That would be fine.
14         THE VIDEOGRAPHER:  All right.  Let me
15 go off the record.  The time is 9:36.
16         MR. BREEN:  Do you have any objection
17 to me talking to the witness about the privilege
18 issue?
19         MR. COOK:  No, sir, please do.
20         (Thereupon, a recess was taken,
21 after which the following proceedings were had:)
22         THE VIDEOGRAPHER:  We're now back on

Page 397

1  the record.  The time is 9:49.
2  BY MR. COOK:
3      Q.  After your conversation with counsel,
4  can you tell me why it was that Ven-a-Care filed
5  its notice of dismissing Abbott voluntarily on
6  March 28th of 1997?
7          MR. BREEN:  I will assert the attorney-
8  client privilege and instruct the witness not to
9  answer.
10 BY MR. COOK:
11     Q.  There were two groups of defendants
12 listed in the notice of dismissing and adding
13 defendants on March 28, 1997.  Right?
14         MR. BREEN:  Objection to form.  I'm not
15 sure -- what do you mean?
16 BY MR. COOK:
17     Q.  There was a group of defendants that
18 were being dismissed without prejudice and a
19 group of defendants that were being added in this
20 notice of dismissal.  Right?  They're just
21 obscured by redacting tape in this version of the
22 document.  Right?

Page 398

1      A.  It's redacted, yes.
2      Q.  Can you tell me, did Ven-a-Care's
3  investigation reveal anything about Abbott that
4  was different from other defendants in this case?
5          MR. BREEN:  Objection --
6  BY MR. COOK:
7      Q.  That would be significant to this
8  notice of dismissing Abbott.
9          MR. BREEN:  Objection to form.  And
10 again, I would ask the witness to carefully
11 consider that question; and to the extent that
12 there was anything communicated by counsel to
13 Ven-a-Care, I would instruct the witness not to
14 answer, but to say it's on that basis.  If there
15 was something separate from Ven-a-Care's relator
16 investigation, independent, that is distinct from
17 anything counsel would have advised, then the
18 witness can answer.
19         THE WITNESS:  I can't answer that.
20 BY MR. COOK:
21     Q.  Did Ven-a-Care feel as if it had a
22 valid claim against Abbott as of March 28, 1997?

14 (Pages 395 to 398)

Page 399

```
 1       MR. BREEN:  Objection to form.
 2       THE WITNESS:  Yes.
 3  BY MR. COOK:
 4    Q.  And yet Ven-a-Care was seeking to
 5  dismiss Abbott on March 28, 1997.  Correct?
 6       MR. BREEN:  Objection to form.
 7       THE WITNESS:  Yes.
 8  BY MR. COOK:
 9    Q.  At this time, as of March 28, 1997 --
10  I'm going to ask you this in a way that I hope
11  you can answer yes or no -- had Ven-a-Care's
12  investigation, in fact, shown that Abbott
13  Laboratories was not engaging in actions that
14  Ven-a-Care would characterize as marketing the
15  spread?
16       MR. BREEN:  Same instruction.  If the
17  witness needs clarification on the objection and
18  instruction, let me know.  But same instruction
19  as to do not answer the question -- do not reveal
20  information to the extent that it requires you to
21  divulge communications with counsel.  However,
22  you're free to answer the question to the extent
```

Page 400

```
 1  that it's based upon Ven-a-Care's non-counsel
 2  investigation.
 3       Does that make sense?
 4       MR. COOK:  Yes.
 5       THE WITNESS:  Could you repeat it for
 6  me.
 7  BY MR. COOK:
 8    Q.  Certainly.  I can break the question
 9  down a little bit.
10       You can agree with me that there are
11  companies -- and I won't name them here -- but
12  there are companies that actively promoted the
13  difference between their AWP's and the price at
14  which their drug could be purchased.  Right?
15    A.  Yes.
16    Q.  You would agree with me that as of
17  March 28, 1997, Ven-a-Care had no evidence to
18  suggest that Abbott was among the companies that
19  for the drugs involved in this lawsuit, was
20  actively promoting the difference between
21  Abbott's AWP's and the price at which it could
22  purchase Abbott's products.
```

Page 401

```
 1       MR. BREEN:  Objection to form.
 2       THE WITNESS:  No.
 3  BY MR. COOK:
 4    Q.  You would contend to me that as of
 5  March 28, 1997, Ven-a-Care had evidence to
 6  suggest that Abbott was actively promoting the
 7  difference between its AWP's and the purchase
 8  price for its drugs?
 9    A.  Yes.
10    Q.  Could you briefly describe for me the
11  nature of the evidence that Ven-a-Care had, as of
12  March 28, 1997, of such active promotion of
13  spreads.
14    A.  It had its GPO prices, its price list.
15  It had prices in the catalogs that we were
16  ordering from.  We knew the difference between
17  Abbott's price and Red Book price, Blue Book
18  price.  The spreads were obvious.
19    Q.  But you would agree with me that as of
20  March 28, 1997, Ven-a-Care certainly had no
21  evidence that Abbott was running advertisements
22  that promoted the difference between its AWP's
```

Page 402

```
 1  and its -- and its negotiated contract prices.
 2  Right?
 3    A.  I'm sorry.  What date were we talking
 4  about?
 5    Q.  March 28th of 1997.
 6       MR. BREEN:  At this point, could you
 7  read the question back.
 8       (The question referred to was
 9  thereupon read by the reporter as above
10  recorded.)
11       THE WITNESS:  I don't recall.
12  BY MR. COOK:
13    Q.  As of March 28, 1997, you will agree
14  with me that no sales rep or representative of
15  Abbott had expressly encouraged Ven-a-Care to
16  purchase Abbott's products because there was a
17  difference between Abbott's AWP and the price at
18  which Ven-a-Care could purchase Abbott's
19  products.  Correct?
20    A.  Our interaction with sales reps were to
21  meet with them.  They bring catalogs -- you know,
22  the price catalogs and their contracts.
```

15 (Pages 399 to 402)

Page 403

1    Q.  But no Abbott sales rep told you, buy
2  Abbott's product because we have a high AWP and
3  you can make a big spread between the contract
4  price and the AWP.  Isn't that true?
5    A.  Dennis Walker.
6    Q.  That occurred after March 28, 1997.
7  Correct?
8    A.  I believe so.
9    Q.  And that communication was as a result
10 of Mr. Bentley calling Abbott to request Abbott's
11 AWP's for Acyclovir.  Correct?
12   A.  I don't know that he called to request
13 them.  I think he called to talk to him.  And as
14 a part of that conversation, he was able to get
15 that information, yes.
16   Q.  And, in fact, the facsimile that was
17 sent back indicates that the prices were being
18 provided to Mr. Bentley as Mr. Bentley requested.
19 Right?
20   A.  Do you have the facsimile that I could
21 see it?  I mean, I know what you're saying and I
22 may agree --

Page 404

1    Q.  It says what it says.
2    A.  Yeah.  I just don't know that it said
3  that this is what you requested.
4    Q.  By the way, this interchange between
5  Mr. Bentley and Mr. Walker occurred between this
6  March 28, 1997 dismissal of Abbott and the August
7  filing of Ven-a-Care's Amended Complaint in which
8  it added Abbott in as a defendant.  Correct?
9    A.  If that's the dates, you know --
10   Q.  So, as of March 28, 1997, Ven-a-Care
11 had no communications with any representative of
12 Abbott in which Abbott undertook any actions to
13 actively market the spread for its products?
14   A.  Not that I can remember.
15   Q.  Other than that one interchange with
16 Mr. Bentley and Mr. Walker relating to Acyclovir,
17 there are no other instances to which Ven-a-Care
18 complained of Abbott actively marketing the
19 spread for its products.  Correct?
20       MR. BREEN:  Objection, form.
21       THE WITNESS:  What is the time frame
22 you're talking about?

Page 405

1  BY MR. COOK:
2    Q.  At any time.
3    A.  Well, I've done a lot of document
4  reviews now.  I've seen a lot of Abbott's
5  documents and how they market the spread.  So, I
6  mean --
7    Q.  That would be document reviews that
8  you've conducted in connection with this case.
9  Right?
10   A.  Yes.
11   Q.  That wouldn't be something that Ven-a-
12 Care observed as an infusion pharmacy in the
13 marketplace.  Right?
14       MR. BREEN:  Objection to form.
15       THE WITNESS:  Not in the levels of the
16 documents that we've seen.
17 BY MR. COOK:
18   Q.  And if we were to distinguish between
19 facts that you, Mr. Jones, have learned through
20 discovery in this case and facts that Ven-a-Care
21 learned as a participant in the marketplace, what
22 you're referring to was learned through the

Page 406

1  discovery process.  Correct?
2    A.  The documents that I'm talking about
3  now would be through the discovery process.
4    Q.  And limiting ourselves to what Ven-a-
5  Care saw as an infusion pharmacy operating in the
6  marketplace, the only instance of Abbott taking
7  any action to actively market the spread for its
8  products to which you can point is this
9  communication in August of 1997 between Mr.
10 Walker and Mr. Bentley.  Correct?
11       MR. BREEN:  Objection to form.
12       THE WITNESS:  I guess if your
13 definition is active and if active means
14 marketing the spread to you -- there is passive
15 marketing the spread, and it's just marketing the
16 spread.
17 BY MR. COOK:
18   Q.  So your answer would be yes?
19   A.  That Abbott passively marketed the
20 spread to all of its customers by sending their
21 contracts and their price lists.  And there is a
22 huge difference between what the contract price

16 (Pages 403 to 406)

Page 407

1  is, what their list price is, what their AWP's
2  are.
3     Q.  And Ven-a-Care saw that, because Ven-a-
4  Care received catalogues and was able to look at
5  price lists that were available to the public.
6  Right?
7         MR. BREEN:  Objection, form.
8         THE WITNESS:  I don't know that the
9  price lists were available to the public.
10 BY MR. COOK:
11    Q.  Compendia available to the public.
12    A.  I'm talking about Abbott's published
13 price list, and the compendia as well.
14    Q.  But in terms of actively marketing the
15 spread, as opposed to, as you describe it,
16 passively marketing the spread, the only instance
17 of Abbott actively marketing the spread that Ven-
18 a-Care witnessed, as you describe it, would be
19 this interchange between Mr. Walker and Mr.
20 Bentley.  Correct?
21        MR. BREEN:  Objection, form.  And
22 again, you're only talking about -- you're not

Page 408

1  talking about the many, many documents and
2  testimony he's seen during the course of
3  discovery.
4         MR. COOK:  I'm talking about things
5  that Ven-a-Care witnessed as an infusion provider
6  or investigating its case before the discovery
7  process started.
8         MR. BREEN:  And you're by definition
9  saying an Abbott representative talking to a Ven-
10 a-Care representative.  Your question is limited
11 to that.  Correct?
12        MR. COOK:  No, sir, I'm asking -- let
13 me ask the question again.
14        MR. LYNCH:  Chris, excuse me.  I just
15 got an e-mail from somebody on the phone saying
16 they're having trouble hearing the witness.  Can
17 you move your microphone up, perhaps.
18        MR. COOK:  It won't help.  It's a
19 speaker phone.  We'll just try to talk a little
20 bit louder.
21        MR. BREEN:  We'll start raising our
22 voice.

Page 409

1         MR. COOK:  We'll just yell.
2  BY MR. COOK:
3     Q.  Mr. Jones, you understand the
4  difference that we've been discussing between
5  what you have referred to as passively marketing
6  the spread and what I refer to as actively
7  marketing the spread.  Right?
8         MR. BREEN:  I'm going to object to the
9  form of that question.
10        THE WITNESS:  Well, I'm just trying to
11 understand what you mean by "actively marketing
12 the spread," which would in my mind be someone
13 coming to me, you know, showing me something, you
14 know, defining it right to my face.
15 BY MR. COOK:
16    Q.  Let's start with that.  Can you point -
17 -
18    A.  Dennis Walker.
19    Q.  Dennis Walker.
20        Can you point to any other interaction
21 between Ven-a-Care and anyone at Abbott, a
22 representative of Abbott, relating specifically

Page 410

1  to the spread for Abbott's drugs?
2         MR. BREEN:  Objection, form.
3         THE WITNESS:  Not at this time, no.
4  BY MR. COOK:
5     Q.  Now, Ven-a-Care claims to be a
6  whistleblower in this case.  Right?
7     A.  A relator.
8     Q.  You've used the term "whistleblower" in
9  testimony before Congress or conversations with
10 government officials; haven't you?
11    A.  Generally, I use the word "relator."  I
12 may have.  I don't -- I can't tell you if I have
13 or not.
14    Q.  And Ven-a-Care claims to be the
15 original source of information in this
16 litigation.  Correct?
17        MR. BREEN:  Objection, form.
18        THE WITNESS:  Yes.
19 BY MR. COOK:
20    Q.  You've looked earlier at Sellers
21 Exhibit No. 3, which is Exhibit 547, in prior
22 depositions, which is the government's First

Page 411

1  Amended Complaint.  You've read that on prior
2  occasions.  Correct?
3       A.  Pardon?
4       Q.  You've read that complaint before.
5  Right?
6       A.  I have read this complaint.
7       Q.  And you understood it.  Right?
8       A.  As much as I understand anything that's
9  legal.
10      Q.  And Ven-a-Care has adopted that
11 complaint.  Correct?
12      A.  To my knowledge, yes.
13      Q.  If you could look at topic No. 3 of
14 Exhibit 708, which is our notice of -- it's my
15 November 21, 2007 letter.
16      A.  Okay.
17         MR. BREEN:  What is the -- do we have
18 another copy of the First Amended Complaint
19 around here?  Or is it in the binder?
20         MR. COOK:  It's Exhibit 547.  It's not
21 in the binders.  It has not been bound up yet.  I
22 have one that was PDF'd to me yesterday.

Page 412

1          MR. BREEN:  I appreciate it.
2          MR. COOK:  I hope it's complete.
3          MR. BREEN:  Just something I can follow
4  here.
5          MR. COOK:  Certainly.
6          MR. BREEN:  So we're on --
7          MR. COOK:  Exhibit 708.
8          MR. BREEN:  Topic --
9          MR. COOK:  No. 3.
10 BY MR. COOK:
11      Q.  Topic No. 3 reads -- I'll just read it
12 for the record without the subparts -- we're
13 asking you to testify about, quote:  Ven-a-Care's
14 contentions that the relator had, quote, direct
15 and independent knowledge of the information, and
16 is the, quote, original source, close quote, of
17 the information, close quote, on which the
18 allegations contained in each of the complaints
19 relating to Abbott are based.
20         Do you understand what this is asking?
21         MR. BREEN:  Before we go further, I'm
22 going to pose an objection.  We've already posed

Page 413

1  objections to this particular designation.  They
2  stand.  I don't think I need to restate the
3  reasons on the record.  I'm going to allow the
4  witness to respond as best he can pursuant to our
5  prior agreement to see if you can get what you
6  need out of this.  But I do not believe this is a
7  proper 30(b)(6) designation the way it is stated.
8          MR. COOK:  That's my understanding of
9  how Abbott has handled 30(b)(6) designations with
10 which we disagree.  We've produced a witness and
11 asked the witness to testify as best we can to
12 them.  So that is perfectly acceptable to me, Mr.
13 Breen.
14 BY MR. COOK:
15      Q.  Do you understand what that designation
16 is asking for testimony about, Mr. Jones?
17      A.  Fundamentally, if you could clarify it
18 for me, get more specific.
19      Q.  Sure.  Ven-a-Care, in its complaints,
20 claims to be -- direct and independent knowledge
21 of the information contained in the complaint and
22 an original source of the information.  You see

Page 414

1  that language quoted from the complaint.  Right?
2       A.  Yes.
3       Q.  Can you tell me, limiting yourself to
4  the allegations in which the government has
5  intervened in the First Amended Complaint, the
6  claims in which the government has intervened --
7       A.  These claims in here.
8       Q.  Yes, sir.
9       A.  Okay.
10      Q.  Because there are certain claims in
11 which the government did not intervene.  Correct?
12 There were drugs, for example, that the
13 government didn't intervene in.  They didn't
14 simply adopt Ven-a-Care's Fourth Amended
15 Complaint.  Right?
16      A.  Correct.
17      Q.  And limiting yourself to the
18 government's First Amended Complaint and the
19 drugs that are listed in the government's First
20 Amended Complaint, can you tell me of what is it
21 that Ven-a-Care is the original source with
22 direct and independent knowledge as Ven-a-Care

18 (Pages 411 to 414)

Page 415

1  contends.
2       MR. BREEN:  Same objection.
3       THE WITNESS:  Ven-a-Care, prior to
4  filing the first complaint -- it's going to have
5  to go back to that, because that's where the
6  information came from -- conducted an
7  investigation on the industry.  And part of that
8  investigation was finding out how claims are paid
9  through the Medicare and Medicaid programs, doing
10 comprehensive surveys through -- I think it was
11 all 50 states.  I can't tell you how many
12 carriers were interviewed, as far as trying to
13 find out what reimbursement was.
14      We marshaled all of our pricing
15 evidence that we had from every one of our GPO's
16 at the time, our wholesalers, any direct
17 accounts, any direct representations of price.
18 We also were able to go to the compendia and
19 gather the information from the compendia on the
20 differences between what we had -- of the prices
21 that were available to us in the marketplace as
22 opposed to what the prices were being reported to

Page 416

1  the marketplace for reimbursement purposes.
2       We also had several meetings,
3  conversations, with the OIG; more specifically,
4  the OIG audit services out of Atlanta and its
5  sister office out of Jacksonville.  We provided
6  information on the nature of the pharmaceuticals
7  at issue to each of those agents.  We sent
8  contracts to them.  We had multiple
9  communications with them.  We evaluated pricing
10 for them.  We actually even provided them an
11 ability to go to a med trade show as Ven-a-Care -
12 - posing as Ven-a-Care employees so that they
13 could get into a med trade show and get accurate
14 prices, which they were trying to investigate at
15 the time.  So we had a pretty close relationship
16 with the OIG.
17      We had a few meetings with the
18 Department of Justice before.  Let's see.  It was
19 a long time ago.  I'm trying to remember
20 everything here.
21      We also put together our own charts.
22 We took these drugs or similar drugs at issue, we

Page 417

1  listed them out by NDC number, by strength.  We
2  put their AWP's, their direct prices if
3  available, Ven-a-Care's prices, and the spreads
4  available, and we did them for each of the drugs
5  which we provided to the government.  And all of
6  this I'm talking about was provided to the
7  government.
8  BY MR. COOK:
9       Q.  All of this predates the filing of the
10 complaint.  Correct?
11      A.  Yes.  Yes.  I'm trying to --
12      Q.  What's the time frame in which this
13 conduct -- in which these communications with the
14 government took place?
15      A.  We started in '94, the beginning.
16      MR. BREEN:  I'm going to object to the
17 form in terms of "these communications."
18      MR. COOK:  Sure.  I can make it a
19 little more specific.
20 BY MR. COOK:
21      Q.  Mr. Jones, you described a number of
22 meetings with the Office of Inspector General,

Page 418

1  Office of Audit Services, and meetings with the
2  Department of Justice prior to the filing of the
3  first complaint in this case.  When did the first
4  of those meetings with the Office of Inspector
5  General, the Department of Justice occur?
6       A.  Well, I believe in -- I'm just taking a
7  guess -- it was early '94.  It may have been '93
8  with the OIG.  The Department of Justice meetings
9  were in '94 and '95.
10      Q.  Is it your understanding that the
11 Office of Inspector General, Office of Audit
12 Services, was conducting an investigation in
13 order to determine what the actual prices in the
14 marketplace were for drugs, including those named
15 in the First Amended Complaint?
16      MR. BREEN:  Objection to form.
17      THE WITNESS:  That was a part of an
18 investigation, yes.
19 BY MR. COOK:
20      Q.  Was there a larger aspect of the
21 investigation that you could describe?
22      A.  Well, they also were looking at the

19 (Pages 415 to 418)