# EXHIBIT G

Jones 30(b)(6), T. Mark                          May 9, 2007
                         Miami, FL

Page 1

          UNITED STATES DISTRICT COURT

       FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - x

IN RE:  PHARMACEUTICAL          :  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE      :  CIVIL ACTION:

PRICE LITIGATION                :  01-CV-12257-PBS

THIS DOCUMENT RELATES TO        :

U.S. ex rel. Ven-a-Care of      :  Judge Patti B.

the Florida Keys, Inc. v.       :     Saris

Abbott Laboratories, Inc.,      :  Chief Magistrate

No. 06-CV-11337-PBS             :  Judge Marianne B.

- - - - - - - - - - - - - - - x   Bowler

State of California ex rel.      :

Ven-a-Care of the Florida Keys, :

Inc. v. Abbott Laboratories, Inc.,:

No. 03-CV-11226                 :

- - - - - - - - - - - - - - - - x


                   Miami, Florida

                   Wednesday, May 9, 2007


         Videotaped deposition of T. MARK JONES,

2d2875a2-87e9-44b8-9a6b-77b1c7367bbc

|  | Page 2 |
|---|---|
| 1 | a witness herein, called for examination by |
| 2 | counsel for Abbott Laboratories in the above- |
| 3 | entitled matter, pursuant to notice, the |
| 4 | witness being duly sworn by KELLI ANN WILLIS, a |
| 5 | Registered Professional Reporter, Certified |
| 6 | Realtime Reporter and Notary Public in and for |
| 7 | the State of Florida, taken at the offices of |
| 8 | Hunton & Williams, 1111 Brickell Avenue, Suite |
| 9 | 2500, Miami, Florida at 9:05 a.m. on |
| 10 | Wednesday, May 9, 2007, and the proceedings |
| 11 | being taken down by stenotype by KELLI ANN |
| 12 | WILLIS, and transcribed under her direction. |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

|  | Page 3 |
|---|---|
| 1 | A P P E A R A N C E S : |
| 2 | |
| 3 | THE BREEN LAWFIRM |
| 4 | Attorneys for Plaintiff, Ven-a-Care of the |
| 5 | Florida Keys, Inc. |
| 6 |     5755 North Point Parkway |
| 7 |     Suite 39 |
| 8 |     Alpharetta, Georgia 30022 |
| 9 | BY:    JAMES JOSEPH BREEN, ESQ. and |
| 10 |     ALLISON SIMON, ESQ. |
| 11 | |
| 12 | STATE OF CALIFORNIA DEPARTMENT OF JUSTICE |
| 13 | Attorneys for the State of California |
| 14 |     110 West A Street |
| 15 |     Suite 1100 |
| 16 |     San Diego, CA 92186 |
| 17 | BY:    NICHOLAS N. PAUL, ESQ. |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

|  | Page 4 |
|---|---|
| 1 | A P P E A R A N C E S (continued): |
| 2 | |
| 3 | UNITED STATES ATTORNEY'S OFFICE |
| 4 | Attorneys for the United States of America |
| 5 |     99 Northeast 4th Street |
| 6 |     Miami, Florida 33156 |
| 7 | BY:    MARK LAVINE, ESQ. |
| 8 | |
| 9 | JONES DAY |
| 10 | Attorneys for Abbott Pharmaceuticals |
| 11 |     51 Louisiana Avenue, NW |
| 12 |     Washington, DC 20001-2113 |
| 13 | BY:    R. CHRISTOPHER COOK, ESQ. |
| 14 | |
| 15 | LOCKE LIDDELL & SAPP |
| 16 | Attorneys for Schering-Plough Corporation, |
| 17 | Schering Corporation and Warrick Pharmaceutical |
| 18 | Corporation |
| 19 |     2200 Ross Avenue, Suite 2200 |
| 20 |     Dallas, TX 75201 |
| 21 | BY:    C. SCOTT JONES, ESQ. |
| 22 | |

|  | Page 5 |
|---|---|
| 1 | A P P E A R A N C E S (continued): |
| 2 | |
| 3 | KELLEY DRYE & WARREN, LLP |
| 4 | Attorneys for Dey, Inc. and Dey, LP |
| 5 |     101 Park Avenue |
| 6 |     New York, NY 10178 |
| 7 | BY:    ANTONIA F. GIULIANA, ESQ. |
| 8 | |
| 9 | DICKSTEIN SHAPIRO, LLP |
| 10 | Attorneys for Baxter Healthcare Corporation |
| 11 |     1825 Eye Street, NW |
| 12 |     Washington, DC 20006 |
| 13 | BY:    EDEN M. HEARD, ESQ. |
| 14 |     (via speakerphone) |
| 15 | |
| 16 | WHITE & CASE, LLP |
| 17 | Attorneys for Sandoz, Inc. |
| 18 |     1155 Avenue of the Americas |
| 19 |     New York, NY 10036-2787 |
| 20 | BY:    PHILIP B. SINENENG, ESQ. |
| 21 |     (via speakerphone) |
| 22 | |

2 (Pages 2 to 5)

2d2875a2-87e9-44b8-9a6b-77b1c7367bbc

Jones 30(b)(6), T. Mark                                    May 9, 2007
                              Miami, FL

---

Page 90

1        THE WITNESS: I'm not sure I understand
2    what you want from -- I mean, investigations is
3    a broad word.  What do you mean, what else did
4    I do?
5   BY MR. COOK:
6        Q.  Well, I'm curious.  In a number of
7    contexts, both in letters to government officials
8    and testimony before Congress, Ven-a-Care
9    representatives have referred to Ven-a-Care's
10   investigations relating to drug pricing.
11        And for this document deposition purpose,
12   I'm simply trying to determine what the entire
13   landscape is of investigatory activity so I can ask
14   what documents relate to each of them.  That is all
15   I'm trying to do.
16        A.  Okay.  I'm just trying to sort it out in
17   my head what ---
18        I mean, we researched.  We did a lot of
19   research and the compendia.  We started looking at
20   published prices as opposed to prices that we were
21   able to get as an industry insider, you know, having
22   contracts with wholesalers or pharmaceutical

---

Page 91

1    manufacturers or GPOs.  So we started compiling
2    those.  That would be something, I think, that might
3    fall into that category.
4        We were always making charts, categories
5    of drugs, you know, looking at what the trends were.
6    There were -- you know, the best of my knowledge, in
7    the mid --- '92 on to like '97, in that era, that is
8    when the generic market really took off.  You
9    started seeing competitive drugs coming out, and we
10   would watch the evolution of it and document it.
11        So we have those documents.  We have chart
12   after chart after chart of, you know, different
13   manufacturers, different drugs, different --
14   different, you know, pricing matrixes that they used
15   or we used, you know.
16        Q.  And to the extent that you generated
17   documents in connection with that work, would those
18   be included in the documents that are logged on
19   your -- on your control log?
20        A.  They would be.
21        Q.  We haven't talked at all about electronic
22   documents.  Does Ven-a-Care own computers?

---

Page 92

1        A.  Ven-a-Care was not very computer savvy
2    until 1998.  Dr. Lockwood, who is our computer tech
3    person, because it is one of his hobbies, actually
4    brought a laptop into the office, and we actually
5    have that laptop.  We have all of the electronic
6    data that is on it.
7        That was probably -- that was the first
8    time that we had any form of email communications.
9    Up until that point, we were just all faxes and
10   phones.  And we have -- in our document database, it
11   is obvious how many faxes we have.
12        Q.  Uh-huh.  And so the first computer that
13   Ven-a-Care owned or that Ven-a-Care used, may be the
14   better word, was in 1998 when Dr. Lockwood brought a
15   laptop into the office?
16        A.  Yes.
17        Q.  Was that as a result of the hurricane, or
18   is that just coincidental that 1998 --
19        A.  It was coincidental.  Dr. Lockwood brought
20   that laptop in because by that time, Ven-a-Care,
21   Zach, me, Luis, our attorneys, John, were traveling
22   to different state governments, to different federal

---

Page 93

1    government agencies showing -- we were given -- we
2    called them dog and pony shows.  It was basically
3    evidentiary-type presentations to different
4    agencies, either state governments or federal
5    governments, to show them what we were finding in
6    the industry, the pharmaceutical industry.
7        And Dr. Lockwood brought that computer in
8    to take us into the tech age so that we could make
9    PowerPoints and use those for presentations instead
10   having these big blowups that Kinko's made.
11        Q.  Before you had the laptop, you used
12   boards?
13        A.  Boards and handouts.
14        Q.  How did you create the boards before
15   having a computer in 1998?
16        A.  To the best of my knowledge, all those
17   were created here at Miami at Mr. Breen's law firm.
18   They were sent out by him.
19        Q.  Okay.  And so to the extent that you were
20   creating documents that began their life
21   electronically before 1998, those would all be on
22   the lawyer's side of the fence?

Henderson Legal Services
202-220-4158

2d2875a2-87e9-44b8-9a6b-77b1c7367bbc

Jones 30(b)(6), T. Mark                                    May 9, 2007
                              Miami, FL

Page 138

1     Q.  -- that would be responsive to
2  Interrogatory No. 5?
3         MR. BREEN:  Objection to form.
4         THE WITNESS:  Ven-a-Care also has in its
5     possession OIG documents.
6  BY MR. COOK:
7     Q.  And the OIG documents are responsive in
8  what way to Interrogatory No. 5?
9     A.  I believe there are documents in there
10 that discuss spread.
11    Q.  Does Ven-a-Care have any other evidence in
12 its possession -- let me strike that again.
13        Has Ven-a-Care ever had in its possession,
14 any other evidence that would identify instances in
15 which Abbott marketed the spread as alleged in the
16 complaint, other than the May 30, '97 fax, the Texas
17 discovery that you described and the OIG documents
18 that you just mentioned?
19        MR. BREEN:  Objection to form.
20        THE WITNESS:  Ven-a-Care also has in its
21    possession all of its price lists, all of its
22    GPO contracts, Echo databases, McKesson

Page 139

1  Econolinks.  It has catalogs, you know, from
2  wholesalers, wholesaler catalogs.
3         And actually I'm trying -- I think, like
4  on the Innovatix database that we were able to
5  look at, the way they are set up, there is a
6  drug that the manufacturer, the NDC number, the
7  price, the AWP and the spread, if I recall
8  correctly.  And that is how they are presented
9  in that database.  So that is why I'm thinking
10 that would be something that Ven-a-Care has in
11 its possession.
12 BY MR. COOK:
13    Q.  When did Ven-a-Care gain access to the
14 Innovatix database?
15    A.  When we became members of Greater New York
16 back in the '90s, I would say.  And like I said
17 before, it was a hard copy type of GPO, they would
18 send you hard copies and update you.  Then they went
19 electronic after they became Innovatix.
20    Q.  When in the 1990s?
21    A.  My best guess is like '95, '96.
22    Q.  Before or after the complaint was filed?

Page 140

1         MR. BREEN:  Objection to form.
2         THE WITNESS:  Oh, that is a good question.
3   I'm not sure if it was before or after the
4   complaint was filed.
5         We were gathering data before the
6   complaint was filed, obviously.
7  BY MR. COOK:
8     Q.  Focusing specifically on the allegation
9  that Abbott marketed the spread, can you name --
10 strike that.
11        Focusing specifically on the allegation
12 that Abbott marketed the spread, does Ven-a-Care
13 have any other evidence other than what we talked
14 about here today that would support that allegation
15 in Paragraph 3 of the complaint?
16    A.  To my knowledge, this is what we have.
17 But, again, we are constantly going through
18 production and looking.  If we find it, we will
19 certainly either produce it or put it in a log that
20 tells you where it is or a privilege log, as such.
21    Q.  Of the evidence that you have described
22 for me, the May 30, 1997 fax from Dennis Walker, it

Page 141

1  appears to be the only physical evidence that you
2  have described that came directly from Abbott.
3         Am I correct in that or is there some
4   other evidence that you have described to me that
5   came directly from Abbott?
6         MR. BREEN:  Objection to form.
7         THE WITNESS:  Directly in that you said
8     that you are -- you are presuming that it is
9     because the sales rep picked up the phone and
10    called Zach or vice versa.
11 BY MR. COOK:
12    Q.  Or the evidence came directly from Abbott
13 to Ven-a-Care.
14    A.  Well, I think Abbott is the one that
15 produces the prices out there that are out for sale,
16 so I assume those prices on those price lists come
17 directly from Abbott because they are negotiating
18 the contracts with the GPOs.  Maybe it is just
19 splitting hair on what is direct and what isn't.
20    Q.  Sure.  The GPO documents you received from
21 GPOs; correct?
22    A.  Yes.

Henderson Legal Services
202-220-4158

2d2875a2-87e9-44b8-9a6b-77b1c7367bbc

Jones 30(b)(6), T. Mark                                    May 9, 2007
                            Miami, FL

Page 142

1       Q.   Do you know when Ven-a-Care obtained those
2   GPO documents?
3       A.   I think like Innovatix, it was somewhere
4   in the mid '90s.
5       Q.   When was the earliest that Ven-a-Care
6   obtained a GPO price list relating to Abbott drugs?
7       A.   I'm going to guess.  I just can't come up
8   with a -- with a solid time.  I would say somewhere
9   around '94 to '95 to '96 would be ---
10      Q.   Would your documents -- would Ven-a-Care's
11  documents show when the earliest such GPO price list
12  was obtained?
13      A.   I believe they would.
14      Q.   The May 30, 1997 facsimile from Dennis
15  Walker of Abbott directly to Ven-a-Care, is that the
16  earliest direct communication between Abbott and
17  Ven-a-Care of which Ven-a-Care has documentary
18  evidence?
19          MR. BREEN:  Objection to form.
20          THE WITNESS:  To my knowledge, at this
21      time.
22  BY MR. COOK:

Page 143

1       Q.   I think you testified that Ven-a-Care did
2   have other information that you believed originated
3   with Abbott but it depended upon GPOs to communicate
4   it to you; correct?
5       A.   Yes, I think I said that Abbott reports
6   its prices to the GPOs by negotiating, and the GPO
7   obviously produces the prices for the market.
8       Q.   Any other indirect communications with
9   Abbott prior to 1987 that Ven-a-Care had?
10      A.   Besides GPOs, wholesalers.  Florida
11  Infusion or Ultracare.  Or any of those wholesalers
12  would advertise Abbott products.
13      Q.   But all of those communications --
14          MR. COOK:  I'm sorry.  The court reporter
15      wanted to go off the record.
16          THE VIDEOGRAPHER:  It is 11:58.  We are
17      going off the record.
18          (Thereupon, a discussion was held off the
19      record, after which the following proceedings
20      were held:)
21          THE VIDEOGRAPHER:  Back on the record.
22  BY MR. COOK:

Page 144

1       Q.   I can't remember exactly where I left off,
2   so I apologize if I ask the exact same question a
3   second time, but just to wrap this up completely,
4   prior to the May 30, 1997 facsimile, Ven-a-Care has
5   no evidence of direct communications with Abbott
6   relating to marketing its product?
7          MR. BREEN:  Objection to form.
8          THE WITNESS:  I don't recall if Ven-a-Care
9      has any direct.
10  BY MR. COOK:
11      Q.   And prior to that time, all evidence that
12  Ven-a-Care has regarding Abbott marketing the spread
13  was dependent upon wholesalers, I think, or GPOs to
14  communicate that information to Ven-a-Care?
15          MR. BREEN:  Objection to form.
16          THE WITNESS:  That would be how they would
17      communicate with Ven-a-Care, or one way.
18  BY MR. COOK:
19      Q.   What other way would there be?
20      A.   Well, if they were directly, you know,
21  marketing Ven-a-Care.
22      Q.   But no -- no such direct or independent

Page 145

1   evidence prior to May 30th of 1997?
2       A.   No --
3          MR. BREEN:  Objection to form.
4          THE WITNESS:  -- that I can recall.
5   BY MR. COOK:
6       Q.   Correct.
7          Interrogatory No. 7 asks, among other
8   things, for documents that would support Paragraph
9   42 of the complaint, which reads, "AWP is used to
10  refer to the price at which a pharmaceutical firm or
11  a wholesaler sells a drug to a retail customer, who
12  then administers it to a patient."
13          Could you read interrogatory No. 7 to
14  yourself, please, and tell me whether Ven-a-Care has
15  ever had in its possession any documents that would
16  support interrogatory No. 7?  Strike that.  Be
17  responsive to interrogatory No. 7.  I misspoke.
18      A.   Okay.
19      Q.   Are there any documents now or did there
20  used to be any documents in Ven-a-Care's possession
21  that would contain information responsive to
22  interrogatory No. 7?

Henderson Legal Services
202-220-4158

2d2875a2-87e9-44b8-9a6b-77b1c7367bbc