# TAB 42

**RLI132**

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, effective as of December 31, 1995, a dividend in the amount of $10,000,000 be, and it hereby is, declared to be paid out of the accumulated retained earnings of this Corporation to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, said dividend to be paid on or before March 1, 1996.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   11th   , day of   January   , 1996 .

_____                    _____
Werner Gerstenberg                            Ian R. Mills

_____                    _____
Walter Poerschmann                            Philip J. Franks

_____
Gerald C. Wojta

Confidential

JAN 03 '96  01:26PM BIC EXECUTIVE                    BIC EXECUTIVE        P.8/8

RLI132

# ROXANE LABORATORIES, INC.

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, effective as of December 31, 1995, a dividend in the amount of $10,000,000 be, and it hereby is, declared to be paid out of the accumulated retained earnings of this Corporation to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, said dividend to be paid on or before March 1, 1996.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 11th , day of January , 199 6 .


_____          _____
Werner Gerstenberg                        Ian R. Mills

_____          _____
Walter Poerschmann                        Philip J. Franks

_____
Gerald C. Wojta

Confidential                                          BOEH04600118

JAN 03 '96  02:01PM BIC EXECUTIVE                    P.7/7

RLI132

## ROXANE LABORATORIES, INC.

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, effective as of December 31, 1995, a dividend in the amount of $10,000,000 be, and it hereby is, declared to be paid out of the accumulated retained earnings of this Corporation to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, said dividend to be paid on or before March 1, 1996.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the  11th  , day of  January  , 199 6 .


Werner Gerstenberg                         Ian R. Mills


Walter Poerschmann                         Philip J. Franks


Gerald C. Wojta

Confidential                                    BOEH04600119

RLI132

**ROXANE LABORATORIES, INC.**

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, effective as of December 31, 1995, a dividend in the amount of $10,000,000 be, and it hereby is, declared to be paid out of the accumulated retained earnings of this Corporation to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, said dividend to be paid on or before March 1, 1996.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 11th , day of January , 199 6 .

_____          _____
Werner Gerstenberg                    Ian R. Mills

_____          _____
Walter Poerschmann                    Philip J. Franks

_____
Gerald C. Wojta

Confidential                                    BOEH04600120

## POWER OF ATTORNEY

ROXANE LABORATORIES, INC. hereby grants power of attorney to BOEHRINGER INGELHEIM CORPORATION, a Nevada corporation, whose office is located at 900 Ridgebury Road, Ridgefield, CT 06877 to sign, on its behalf, all Agreements to Supplement Orders with any vendor of goods or services, and in such connection, we hereby grant power of attorney to GERRY PEREZ, Senior Vice President – Technical Operations of Boehringer Ingelheim Corporation to sign for Boehringer Ingelheim Corporation. This power of attorney is in full force and effect until terminated by the below stated corporation.

Signed and sealed this _15th_ day of _December_ , 199_5_.

ROXANE LABORATORIES, INC.

By:_____

ATTEST:

By:_____

**SEAL**

Subscribed and sworn to before me
this _15th_ day of _December_ , 199_5_.

_____
Notary

DAVID KELMAN, Attorney-At-Law
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date
Sec. 147.03 R.C.

POFAROX.DOC

**RLI141**

### ROXANE LABORATORIES, INC.
### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE

LABORATORIES, INC., a Delaware corporation, do hereby adopt the following

resolutions by this our unanimous written consent without a meeting pursuant to Section

141(f) of the General Corporation law of the State of Delaware, with full force and effect

as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

      RESOLVED that, this Corporation pursue legal action against HealthStar Pharmaceutical Services, Inc. ("HealthStar") for breach of the Purchase Order ("Agreement"), dated May 8, 1995, between the Corporation and HealthStar, providing for the rebuilding of an ALP blow-fill seal Machine ("ALP Machine"), to be delivered to the Corporation on or before September 18, 1995.

      RESOLVED that, if the facts as developed indicate that the principals of HealthStar or others took an active role in the breach of the Agreement, they may also be added as defendants to this litigation as legally appropriate.

      RESOLVED that, the President or any Vice-President and the Secretary of this Corporation be, and they hereby are authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolution as they may deem necessary or advisable in order to effectuate the foregoing resolution.

This instrument may be signed in one or more counterparts all of which taken

together shall constitute one and the same instrument.

      IN WITNESS WHEREOF, we have duly signed this instrument effective

as of the  3rd   day of  June        , 1996.

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Gerald C. Wojta

_____
Sheldon Berkle

_____
Philip J. Franks

Confidential

MAY 28 '96 12:49 FR BIPI                203 791 6100 ¯¯ ¯¯¯¯ 203 791 6100 P.04/04

RLI141

# ROXANE LABORATORIES, INC.
## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, this Corporation pursue legal action against HealthStar Pharmaceutical Services, Inc. ("HealthStar") for breach of the Purchase Order ("Agreement"), dated May 8, 1995, between the Corporation and HealthStar, providing for the rebuilding of an ALP blow-fill seal Machine ("ALP Machine"), to be delivered to the Corporation on or before September 18, 1995.

RESOLVED that, if the facts as developed indicate that the principals of HealthStar or others took an active role in the breach of the Agreement, they may also be added as defendants to this litigation as legally appropriate.

RESOLVED that, the President or any Vice-President and the Secretary of this Corporation be, and they hereby are authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolution as they may deem necessary or advisable in order to effectuate the foregoing resolution.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 3rd day of June, 1996.

_____                    _____
Werner Gerstenberg                          Sheldon Berkle

_____                    _____
Walter Poerschmann                          Philip J. Franks

_____
Gerald C. Wojta

Confidential                                                BOEH04600152

MAY 28 '96 12:44 FR BIPI            203 791 6180 TO G WOJTA            P.04/04

RLI141

## ROXANE LABORATORIES, INC.
## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, this Corporation pursue legal action against HealthStar Pharmaceutical Services, Inc. ("HealthStar") for breach of the Purchase Order ("Agreement"), dated May 8, 1995, between the Corporation and HealthStar, providing for the rebuilding of an ALP blow-fill seal Machine ("ALP Machine"), to be delivered to the Corporation on or before September 18, 1995.

RESOLVED that, if the facts as developed indicate that the principals of HealthStar or others took an active role in the breach of the Agreement, they may also be added as defendants to this litigation as legally appropriate.

RESOLVED that, the President or any Vice-President and the Secretary of this Corporation be, and they hereby are authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolution as they may deem necessary or advisable in order to effectuate the foregoing resolution.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   3rd   day of   June   , 1996.


_____            _____
Werner Gerstenberg                   Sheldon Berkle


_____            _____
Walter Poerschmann                   Philip J. Franks


_____
Gerald C. Wojta

** TOTAL PAGE.04 **

Confidential                                      BOEH04600153

RLI141

## ROXANE LABORATORIES, INC.
## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE

LABORATORIES, INC., a Delaware corporation, do hereby adopt the following

resolutions by this our unanimous written consent without a meeting pursuant to Section

141(f) of the General Corporation law of the State of Delaware, with full force and effect

as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

> RESOLVED that, this Corporation pursue legal action against HealthStar Pharmaceutical Services, Inc. ("HealthStar") for breach of the Purchase Order ("Agreement"), dated May 8, 1995, between the Corporation and HealthStar, providing for the rebuilding of an ALP blow-fill seal Machine ("ALP Machine"), to be delivered to the Corporation on or before September 18, 1995.

> RESOLVED that, if the facts as developed indicate that the principals of HealthStar or others took an active role in the breach of the Agreement, they may also be added as defendants to this litigation as legally appropriate.

> RESOLVED that, the President or any Vice-President and the Secretary of this Corporation be, and they hereby are authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolution as they may deem necessary or advisable in order to effectuate the foregoing resolution.

This instrument may be signed in one or more counterparts all of which taken

together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective

as of the  3rd   day of   June     , 1996.

| | |
|---|---|
| _____ | _____ |
| Werner Gerstenberg | Sheldon Berkle |
| | |
| _____ | _____ |
| Walter Poerschmann | Philip J. Franks |
| | |
| _____ | |
| Gerald C. Wojta | |

Confidential                                                                      BOEH04600154

RLI138

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors for the year 1996, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted annual meeting:

RESOLVED that, the year-end closing for 1995 be, and it hereby is, approved and the Balance Sheet and Profit and Loss Statement of this Corporation as of December 31, 1995 be, and they hereby are, ratified and adopted in the form attached.

RESOLVED that, the following named persons be, and they hereby are, appointed officers of this Corporation, each to serve as such during the pleasure of this Board of Directors in the capacity or capacities set forth opposite his name:

| | |
|---|---|
| Mr. Werner Gerstenberg | Chairman of the Board and Chief Executive Officer |
| Mr. Gerald C. Wojta | President and Chief Operating Officer |
| Edward S. Brewton, Ph.D. | Vice President - Scientific Affairs |
| Mr. Thomas Eggleton | Vice President - Operations |
| Philip J. Franks, Esq. | Vice President and Secretary |
| Mr. Holger Huels | Treasurer and Chief Financial Officer |
| Dr. Kirk V. Shepard | Vice President - Medical Affairs |

Confidential

BOEH04600159

RLI138

|                         |                                      |
|-------------------------|--------------------------------------|
| Mr. Edward J. Tupa      | Vice President - Sales and Marketing  |
| Alan C. Davis, Esq.     | Assistant Secretary                   |
| Mr. John Swartz         | Assistant Secretary                   |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the  5th  , day of  August  , 1996.

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Gerald C. Wojta

_____
Sheldon Berkle

_____
Philip J. Franks

- 2 -

Confidential                                                    BOEH04600160

JUN 13 '96 09:00 FR BIPI          203 791 6180      203 791 6180 P.03 10

RLI138

|  |  |
|---|---|
| Mr. Edward J. Tupa | Vice President – Sales and Marketing |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the     5th   , day of   August     , 1996.


Werner Gerstenberg                          Sheldon Berkle


Walter Poerschmann                          Philip J. Franks


Gerald C. Wojta

- 2 -

Confidential                                                          BOEH04600161

**RLI138**

| | |
|---|---|
| Mr. Edward J. Tupa | Vice President – Sales and Marketing |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   5th   , day of   August   , 1996.

---

Werner Gerstenberg

---

Sheldon Berkle

---

Walter Poerschmann

---

Philip J. Franks

---

Gerald C. Wojta

- 2 -

Confidential

BOEH04600162

**RLI138**

| | |
|---|---|
| Mr. Edward J. Tupa | Vice President - Sales and Marketing |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   5th   , day of   August   , 1996.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

Philip J. Franks

_____
Gerald C. Wojta

- 2 -

Confidential

BOEH04600163

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

Thousands U.S.$

|  | Budget 1995 | Actual 1995 | Budget 1996 |
|---|---|---|---|
| Net Sales | 185,891 | 188,765 | 233,776 |
| Cost of Goods Sold | 93,339 | 88,015 | 109,755 |
| Marketing | 24,457 | 23,157 | 28,230 |
| Research & Medical | 13,863 | 13,815 | 18,523 |
| Administration | 5,992 | 5,713 | 5,081 |
| Distribution and Royalties | 12,931 | 11,606 | 18,463 |
| Amortization of Goodwill | - | 3,415 | 3,651 |
| Operating Income (Loss) | 35,309 | 43,044 | 50,073 |
| Financial Income (Expense) | 257 | (654) | (3,966) |
| Profit Before Tax | 35,566 | 42,390 | 46,107 |
| Income Tax | 13,866 | 16,899 | 17,974 |
| Net Income After Tax | 21,700 | 25,491 | 28,133 |

8

Confidential

BOEH04600164

# ROXANE LABORATORIES, INC.
## COMMENTARY

<u>Millions U.S. $</u>

<u>Overview</u>

- Total Net Sales up $2.9 (1.5%) to Budget and $45.8 (32%) to 1994.

- Operating profit up $7.7 (21.9%) to Budget and $14.0 (48.3%) to 1994.

<u>Net Sales</u>

- Affiliate sales $6.6 (24%) over Budget:
  - high demand for Atrovent Unit Dose.

- Third party sales $2.1 (1.4%) under Budget:
  - declining sales of Marinol ($1.4), Oramorph SR ($0.4), and Mexiletine ($4.1);
  - increasing sales of Methadone products and LAAM (addiction therapy) ($3.0).

- Sub contract sales $1.5 (16.6%) under Budget:
  - reduced purchases of Ventolin and Zantac Syrup by Glaxo ($1.5).

- Medicaid rebates $1.4 over Budget (resulted in lower net sales).

9

Confidential

BOEH04600165

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

Thousands U.S.$

| | Budget 1995 | Actual 1995 | Budget 1996 |
|---|---|---|---|
| **Assets** | | | |
| Accounts Receivable | 25,000 | 27,582 | 39,000 |
| Receivable from Affiliates | 13,853 | - | - |
| Prepaid Expenses | 600 | 1,519 | 200 |
| Inventories | 30,600 | 31,644 | 35,500 |
| Total Current Assets | 70,053 | 60,745 | 74,700 |
| Intangible Assets | - | 22,701 | 18,415 |
| Property, Plant and Equipment | 62,164 | 57,407 | 104,526 |
| Other Assets | 5,075 | 3,399 | 4,680 |
| | 137,292 | 144,252 | 202,321 |
| **Liabilities and Stockholder's Equity** | | | |
| Accounts Payable and Accrued Liabilities | 23,478 | 24,387 | 22,080 |
| Payables to Banks | 3,884 | 3,776 | 6,000 |
| Accrued Taxes | 3,495 | 3,241 | 4,500 |
| Payables to Affiliates | 10,000 | 10,167 | - |
| Loans from Affiliates | - | 1,383 | 46,038 |
| Total Liabilities | 40,857 | 42,954 | 78,618 |
| **Stockholder's Equity:** | | | |
| Capital Stock | 19 | 19 | 19 |
| Additional Paid-In Capital | 8,735 | 8,735 | 8,735 |
| Retained Earnings | 87,681 | 92,544 | 114,949 |
| Total Stockholder's Equity | 96,435 | 101,298 | 123,703 |
| | 137,292 | 144,252 | 202,321 |

10

Confidential

BOEH04600166

# ROXANE LABORATORIES, INC.
## COMMENTARY

**Millions U.S.$**

**Accounts Receivable**

- Above Budget 10% due to above Budget sales in last months of year.

**Intangible Assets**

- Unbudgeted Goodwill and related intangibles due to unbudgeted acquisition of Bio Development Corp. (ORLAAM) and rights to Eli-Lilly products (Methadone primarily).

**Other Assets**

- Loan Balance to Unimed;  requirement diminished due to soft sales of Marinol.

11

BOEH04600167

RLI150

**ROXANE LABORATORIES, INC.**

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**


The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors for the year 1997, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted annual meeting:

RESOLVED that, the year-end closing for 1996 be, and it hereby is, approved and the Balance Sheet and Profit and Loss Statement of this Corporation as of December 31, 1996 be, and they hereby are, ratified and adopted in the form attached.

RESOLVED that, the following named persons be, and they hereby are, appointed officers of this Corporation, each to serve as such during the pleasure of this Board of Directors in the capacity or capacities set forth opposite his name:

| | |
|---|---|
| Mr. Werner Gerstenberg | Chairman of the Board and Chief Executive Officer |
| Mr. Gerald C. Wojta | President and Chief Operating Officer |
| Edward S. Brewton, Ph.D. | Vice President - Scientific Affairs |
| Mr. Thomas Eggleton | Vice President - Operations |
| Philip J. Franks, Esq. | Vice President and Secretary |
| Mr. Holger Huels | Treasurer and Chief Financial Officer |
| Dr. Kirk V. Shepard | Vice President - Medical Affairs |

BOEH04600197

**RLI150**

Mr. Edward J. Tupa          Vice President - Sales and Marketing

Alan C. Davis, Esq.          Assistant Secretary

Mr. John Swartz          Assistant Secretary

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the     15th     , day of   May           , 1997.

_____          _____
Werner Gerstenberg                         Sheldon Berkle


_____          _____
Walter Poerschmann                         Philip J. Franks


_____
Gerald C. Wojta

- 2 -

Confidential                                                           BOEH04600198

MAY 14 '97 14:35 FR BIPI                203 791 6180              203 791 6180 P.03 10

**RLI150**

| Mr. Edward J. Tupa | Vice President – Sales and Marketing |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 15th , day of May , 1997.


_____
Werner Gerstenberg

*[signature]*
_____
Walter Poerschmann

_____
Gerald C. Wojta


_____
Sheldon Berkle

_____
Philip J. Franks


- 2 -

Confidential                                                    BOEH04600199

RECEIVED:  5-14-97;    2:11PM;        203 791 6180 => ROXUS MR. WOJTA;   #6
MAY 14 '97 14:27 FR BIPI                203 791 6180 TO G WOJTA              P.05/10

RLI150

| Mr. Edward J. Tupa | Vice President – Sales and Marketing |
|---|---|
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   15th   , day of   May   , 1997.

_____          _____
Werner Gerstenberg                        Sheldon Berkle


_____          _____
Walter Poerschmann                        Philip J. Franks

_____
Gerald C. Wojta

- 2 -

Confidential

BOEH04600200

RLI150

| | |
|---|---|
| Mr. Edward J. Tupa | Vice President - Sales and Marketing |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   15th   , day of   May   , 1997.

_____            _____
Werner Gerstenberg                 Sheldon Berkle


_____            _____
Walter Poerschmann                 Philip J. Franks

_____
Gerald C. Wojta

- 2 -

Confidential                                      BOEH04600201

# ROXANE LABORATORIES, INC.
## COMMENTARY

**Millions U.S.$**

**Overview**

- Total Net Sales up $19.8 (8.5%) to Budget and $64.8 (34.3%) to 1995.

- Operating profit up $23.6 (47.2%) to Budget and $30.7 (71.2%) to 1995.

**Net Sales**

- Affiliate sales $9.3 (32.9%) under Budget:

  - lower than expected sales of Atrovent UDV's to BIPI due to genericization of branded product.

- Third party sales $29.1 (14.2%) over Budget:

  - including the $9.8 benefit of the assignment of sales of Viramune Tablets to Roxane instead of to BIPI;

  - increasing sales of Ipratropium ($14.6), Azathioprine ($12.9), Diclofenac ($4.6), Roxicet ($4), Hydroxyurea ($2.8), Marinol ($2.3), Roxicodone ($1.8) and Methadone products and LAAM ($1.5);

  - decreasing sales of Methotrexate ($4.9), Mexiletine ($3.7), Cocaine ($2.6), Lithium ($2.1), Sodium Polystyreme ($1.9), Haloperidol ($1.7), Roxiprin ($1.4), Captopril ($1.1), and Metoclopramide ($1.0).

- Sub contract sales $2.1 (28.1%) under Budget:

  - reduced purchases of Ventolin Nebules and Zantac Syrup by Glaxo ($2.1).

18

Confidential                                          BOEH04600202

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

**Thousands U.S.$**

|  | Budget 1996 | Actual 1996 | Budget 1997 |
|---|---|---|---|
| **Net Sales** | 233,776 | 253,565 | 327,795 |
| **Cost of Goods Sold** | 109,755 | 100,890 | 159,090 |
| **Marketing & Advertising** | 28,230 | 30,455 | 49,796 |
| **Research & Medical, I** | 18,523 | 16,329 | 24,457 |
| **Administration** | 5,081 | 4,548 | 5,144 |
| **Distribution and Royalties** | 18,463 | 19,923 | 14,892 |
| **Other** | 3,651 | 7,723 | 5,206 |
| **Contribution III** | 50,073 | 73,697 | 69,210 |
| **Operating Income (Loss)** | 50,073 | 73,697 | 69,210 |
| **Financial Income (Expense)** | (3,966) | (1,433) | (3,071) |
| **Profit Before Tax** | 46,107 | 72,264 | 66,139 |
| **Income Tax** | 17,974 | 33,130 | 25,734 |
| **Net Income After Tax** | 28,133 | 39,134 | 40,405 |

19

Confidential

BOEH04600203

# ROXANE LABORATORIES, INC.
## COMMENTARY

### Millions U.S.$

### Cost of Goods Sold

- Favorable relative to Budget; 39.8% of Net Sales versus Budget of 46.9%:

    – favorable sales price variance (positively affecting Net Sales);
    – favorable product mix e.g. sales of Viramune, Azathioprine and Diclofenac;
    – favorable LIFO variance ($5.4).

### Marketing and Advertising

- Above Budget $2.2 as a result of transferring marketing of Viramune from BIPI to Roxane.

### Research and Medical -National

- Medical cost $2.4 under Budget due to not finalizing new contracts with PPD-Pharmaco, Quintiles, Parexel and Harris until 1997.

### Other Operating Expenses

- Above Budget $4.1 due to:

– reserves for bad debts above Budget resulting from unexpected bankruptcy of a major distributor Fox Meyer ($2.7) and other additional reserves for bad debts ($0.7).

– unbudgeted amortization of Duraclon (Clonidine) Epidural from Fujisawa ($0.5).

20

Confidential

BOEH04600204

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

**Thousands U.S.$**

| | Budget 1996 | Actual 1996 | Budget 1997 |
|---|---|---|---|
| **Assets** | | | |
| Accounts Receivable | 39,000 | 34,446 | 37,000 |
| Receivable from Affiliates | - | - | - |
| Prepaid Expenses | 200 | 373 | 200 |
| Inventories | 35,500 | 54,042 | 50,000 |
| Total Current Assets | 74,700 | 88,861 | 87,200 |
| Intangible Assets | 18,415 | 38,029 | 33,455 |
| Property, Plant and Equipment | 104,526 | 89,046 | 126,578 |
| Other Assets | 4,680 | 4,827 | 4,646 |
| Total Assets | 202,321 | 220,763 | 251,879 |
| **Liabilities** | | | |
| Accounts Payable & Accrued Liabilities | 22,080 | 40,813 | 25,500 |
| Payables to Banks | 6,000 | 2,937 | 7,000 |
| Accrued Taxes | 4,500 | 5,366 | 5,000 |
| Payables to Affiliates | - | - | - |
| Loans from Affiliates | 46,038 | 31,216 | 43,537 |
| Total Liabilities | 78,618 | 80,332 | 81,037 |
| **Stockholder's Equity** | | | |
| Capital Stock | 19 | 19 | 19 |
| Additional Paid-In Capital | 8,735 | 8,735 | 8,735 |
| Retained Earnings | 114,949 | 131,677 | 162,088 |
| Total Stockholder's Equity | 123,703 | 140,431 | 170,842 |
| Total Liabilities & Stockholder's Equity | 202,321 | 220,763 | 251,879 |

21

# ROXANE  LABORATORIES,  INC.
## COMMENTARY

### Millions U.S.$

### Accounts Receivable

- Under Budget 12% due to the Fox Meyer write-off and additional reserves for bad debts.

### Inventories

- Above Budget 52% due to new products such as Ipratropium, Azathioprine and Viramune (unbudgeted).

### Intangible Assets

- Above Budget 107% due to the acquisition of Duraclon NDA from Fujisawa.

### Property, Plant and Equipment

- Under Budget 15% due to lower capital spending on Plant expansion (timing difference).

22

RLI152

## ROXANE LABORATORIES, INC.

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, Mr. Gerald C. Wojta be, and he hereby is, removed as President and Chief Operating Officer of this Corporation, effective at the close of business July 2, 1997.

RESOLVED that, Mr. Werner Gerstenberg be, and he hereby is, appointed to the position of President and Chief Operating Officer of this Corporation, effective July 3, 1997.

RESOLVED that, effective July 3, 1997, Dr. Kirk V. Shepard be, and he hereby is, appointed to the position of Senior Vice President - Marketing, Medical Affairs and Development of this Corporation reporting administratively to the President of Chief Operating Officer of this Corporation and functionally to the Head of Business Unit Ethical Pharmaceuticals.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the ___20th___ day of ___June___, 1997

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Gerald C. Wojta

_____
Sheldon Berkle

_____
Philip J. Franks

Confidential

JUN 06 '97 11:32 FR BIPI                263 791 6180        263 791 6180 ·····

**RLI152**

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, Mr. Gerald C. Wojta be, and he hereby is, removed as President and Chief Operating Officer of this Corporation, effective at the close of business July 2, 1997.

RESOLVED that, Mr. Werner Gerstenberg be, and he hereby is, appointed to the position of President and Chief Operating Officer of this Corporation, effective July 3, 1997.

RESOLVED that, effective July 3, 1997, Dr. Kirk V. Shepard be, and he hereby is, appointed to the position of Senior Vice President - Marketing, Medical Affairs and Development of this Corporation reporting administratively to the President of Chief Operating Officer of this Corporation and functionally to the Head of Business Unit Ethical Pharmaceuticals.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the ___20th___ day of ___June___, 1997

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Gerald C. Wojta

_____
Sheldon Berkle

_____
Philip X. Franks

Confidential                                          BOEH04600208

RECEIVED:  6- 6-97;  11:11AM;       203 791 6180 => ROXUS MR. WOJTA;   #4
          JUN 06 '97 11:28 FR BIPI           203 791 6180 TO G WOJTA              P.04/04

RLJ152

# ROXANE LABORATORIES, INC.

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, Mr. Gerald C. Wojta be, and he hereby is, removed as President and Chief Operating Officer of this Corporation, effective at the close of business July 2, 1997.

RESOLVED that, Mr. Werner Gerstenberg be, and he hereby is, appointed to the position of President and Chief Operating Officer of this Corporation, effective July 3, 1997.

RESOLVED that, effective July 3, 1997, Dr. Kirk V. Shepard be, and he hereby is, appointed to the position of Senior Vice President - Marketing, Medical Affairs and Development of this Corporation reporting administratively to the President of Chief Operating Officer of this Corporation and functionally to the Head of Business Unit Ethical Pharmaceuticals.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the ___20th___ day of ___June___, 1997

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Gerald C. Wojta

_____
Sheldon Berkle

_____
Philip K. Franks

** TOTAL PAGE.04 **

Confidential                                      BOEH04600209

RLI158

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

> RESOLVED that, effective immediately, the current Bylaws of this Corporation, and all amendments thereto, be, and they hereby are, superseded and replaced in their entirety by the Bylaws attached hereto as Appendix A.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 21st day of April, 1998.

Werner Gerstenberg

Sheldon Berkle

Walter Poerschmann

Philip F. Franks

BOEH04600226

RLI158

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation  Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

> RESOLVED that, effective immediately, the current Bylaws of this Corporation, and all amendments thereto, be, and they hereby are, superseded and replaced in their entirety by the Bylaws attached hereto as Appendix A.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the __21st__ day of __April__, 1998

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Sheldon Berkle

_____
Philip J. Franks

Confidential

BOEH04600227

RLI158

ROXANE LABORATORIES, INC.

UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane
Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolution by this our
unanimous written consent without a meeting pursuant to Section 141(f) of the General
Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and
with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly
constituted meeting:

> RESOLVED that, effective immediately, the current Bylaws of this
> Corporation, and all amendments thereto, be, and they hereby are, superseded and
> replaced in their entirety by the Bylaws attached hereto as Appendix A.

This instrument may be signed in one or more counterparts all of which taken together
shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the
___21st___ day of ___April___, 1998

_____            _____
Werner Gerstenberg                     Sheldon Berkle


_____            _____
Walter Poerschmann                     Philip J. Franks

Confidential                                          BOEH04600228

APPENDIX A

**BYLAWS**

**OF**

**ROXANE LABORATORIES, INC.**

**ARTICLE I**
**OFFICES**

**Section 1.1  The Registered Office.**  The registered office shall be in the City of Wilmington, County of New Castle, State of Delaware.

**Section 1.2  Other Offices.**  The Corporation may also have offices at such other places both within and without the State of Incorporation as the Board of Directors may from time to time determine or the business of the Corporation may require.

**ARTICLE II**
**STOCKHOLDERS**

**Section 2.1  Place of Meetings.**  Each meeting of the stockholders shall be held at such place, either within or without the State of Incorporation, as shall be designated by the Board of Directors and stated in the notice of the meeting or as shall be stated in a duly executed waiver of notice of the meeting.

**Section 2.2  Annual Meeting.**  An annual meeting of stockholders shall be held each year on the second Tuesday of April if not a legal holiday, and if a legal holiday, then on the next business day following, at 11:00 a.m. or at such other date and time as shall be designated by the Board of Directors and stated in the notice of the meeting or as shall be stated in a duly executed waiver of notice of the meeting. At such meeting the stockholders shall elect by a plurality vote a Board of Directors, shall elect a Chairman of the Board of Directors, and shall transact such other business as may properly be brought before the meeting.

**Section 2.3  Deferred Meeting for Election of Directors, Etc.**  If the annual meeting of stockholders for the election of directors and the transaction of other business is not held on the date fixed in Section 2.2, the Board of Directors shall call a meeting of stockholders for the election of directors, the election of a Chairman of the Board of Directors, and the transaction of other business as soon thereafter as convenient or, in the alternative, the stockholders may proceed to the election of a

rlibyl.doc                                  - 1 -

Chairman of the Board of Directors, an election of the directors, and the transaction of any other business by unanimous written consent of the stockholders according to the procedures in Section 2.10.

**Section 2.4  <u>Other Special Meetings of the Stockholders</u>**.  Special meetings of the stockholders, for any purpose or purposes, unless otherwise prescribed by statute or by the Charter Documents, may be called by the Chairman of the Board of Directors, and shall be called by the President or Secretary at the request in writing of a majority of the Board of Directors, or at the request in writing of stockholders owning a majority in amount of the entire capital stock of the Corporation issued and outstanding and entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

**Section 2.5  <u>Notice of Meetings of Stockholders</u>**.   Written notice of each meeting of stockholders, stating the place, date and hour of the meeting and the purpose or purposes for which the meeting is called, shall be given not less than ten nor more than sixty days before the date of the meeting, to each stockholder entitled to vote at such meeting.  Notice of such meetings shall be either delivered personally or shall be mailed, postage prepaid, or shall be sent by telex, telefax or other means of written electronic communication.  All notices shall be directed to a stockholder at such stockholder's address as it appears upon the records of the Corporation.   If mailed, each notice shall be deemed given when deposited, postage prepaid, in a post office or official depository under the exclusive care of the United States Postal Service.  Such mailing shall be by first class mail.  Notice given by telex, telefax or other electronic communication system shall be deemed delivered when sent electronically to the stockholder's address.

**Section 2.6  <u>Waivers of Notice</u>**.  Whenever notice is required or permitted to be given to any stockholder under any provision of the State of Incorporation or of the Charter Documents or the Bylaws, a written waiver thereof,  signed by the stockholder entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a stockholder at a meeting shall constitute a waiver of notice of such meeting, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened

**Section 2.7  <u>List of Stockholders</u>**.  The Secretary shall make, or cause to be made, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours,

rlibyl.doc                                   - 2 -

Confidential                                                        BOEH04600230

for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

**Section 2.8  <u>Quorum of Stockholders; Adjournment</u>.**  The holders of a majority of the shares of stock issued and outstanding and entitled to vote at any meeting of stockholders, present in person or represented by proxy, shall constitute a quorum for the transaction of any business at such meeting except as otherwise provided by statute or by the Charter Documents. When a quorum is once present to organize a meeting of stockholders, it is not broken by the subsequent withdrawal of any stockholders.  The holders of a majority of the shares of stock present in person or represented by proxy at any meeting of stockholders, including an adjourned meeting, whether or not a quorum is present, may adjourn such meeting to another time and place.

**Section 2.9  <u>Voting; Proxies</u>.**  When a quorum is present at any meeting, the vote of the holders of a majority of the stock having voting power present in person or represented by proxy shall decide any question properly brought before such meeting, unless the question is one upon which, by express provision of the statutes or of the Charter Documents, a different vote is required, in which case such express provision shall govern and control the decision of such question.  Each stockholder shall at every meeting of the stockholders be entitled to one vote in person or by proxy for each share of the capital stock having voting power held by such stockholder, but no proxy shall be voted on after three years from its date, unless the proxy provides for a longer period.

**Section 2.10  <u>Written Consent of Stockholders Without A Meeting</u>.** Except for the actions covered by Section 2.3, any action required or permitted to be taken at any meeting of stockholders of the Corporation may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted, and shall be delivered to the Corporation by delivery to its registered office in the State of Incorporation, to its principal place of business, or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded, in the manner contemplated by the corporation statutes of the State of Incorporation.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

**rlibyl.doc**                                 - 3 -

Confidential                                                           BOEH04600231

**Section 2.11  Organization**.  At each meeting of stockholders, the Chairman of the Board, or in the absence of the Chairman of the Board, the President, or in the absence of the President, a Vice President, and in case more than one Vice President shall be present, that Vice President designated by the Board of Directors (or in the absence of any such designation, the most senior Vice President, based on the order of election), shall act as chairman of the meeting.  The Secretary, or in his absence one of the Assistant Secretaries, shall act as secretary of the meeting.  In case none of the officers above designated to act as chairman or secretary of the meeting, respectively, shall be present, a chairman or a secretary of the meeting, as the case may be, shall be chosen by a majority of the votes cast at such meeting by the holders of shares of capital stock present in person or represented by proxy and entitled to vote at the meeting.

**Section 2.12  Order of Business**.  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting, but the order of business to be followed at any meeting at which a quorum is present may be changed by a majority of the votes cast at such meeting by the holders of shares of capital stock present in person or represented by proxy and entitled to vote at the meeting.

### ARTICLE III
### DIRECTORS

**Section 3.1  General Powers**.  Except as otherwise provided by law, or in the Charter Documents, or these Bylaws, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.  The Board of Directors may adopt such rules and regulations, not inconsistent with the Charter Documents or the Bylaws or applicable laws, as it may deem proper for the conduct of its meetings and the management of the Corporation.  In addition to the powers expressly conferred by the Bylaws, the Board of Directors may exercise all powers and perform all acts which are not required, by the Bylaws or the Charter Documents or by law, to be exercised and performed by the stockholders.

**Section 3.2  Number: Qualification Term of Office**.  The Board of Directors shall consist of not less than one nor more than twelve directors, the exact number of which shall be determined from time to time by the stockholders. The stockholders may determine the number of directors from time to time simply by electing any number of directors within the limits set forth hereinabove; a separate resolution of change in the number of directors need not be enacted. Directors need not be stockholders.  Each director, including without limitation the Chairman of the Board of Directors, if any, shall hold office until his successor is elected and qualified or until his earlier death, resignation or removal.

**rlibyl.doc**                                   - 4 -

Confidential                                                  BOEH04600232

**Section 3.3  Election**.  Directors shall, except as otherwise required by law or by the Charter Documents, or except as otherwise required or permitted by the Bylaws, be elected by the stockholders.   Directors may be elected by unanimous written consent of the stockholders.

**Section 3.4  Vacancies**. Vacancies occurring in the Board of Directors for any reason, including the removal of directors with or without cause, may be filled by the stockholders pursuant to Section 3.3.   A director elected to fill a vacancy shall be elected to hold office until his successor is elected and qualified, or until his earlier death, resignation or removal.

**Section 3.5  Resignations**.   Any director may resign at any time by written notice to the Corporation. Such resignation shall take effect at the time therein specified, or, if no time is specified, upon receipt thereof by the Secretary of the Corporation, and the acceptance of such resignation shall not be necessary to make it effective.

**Section 3.6  Removal of Directors**.   Except as otherwise provided by law, any or all of the directors, including without limitation the Chairman of the Board of Directors, may be removed by vote of the holders of a majority of the shares entitled to vote at an election of directors, with or without cause, at any time, by vote of the holders of a majority of the shares entitled to vote at an election of directors.

**Section 3.7  Director's Compensation**.    The directors may be paid their expenses, if any, for attendance at each meeting of the Board of Directors.   To the extent authorized by resolution adopted by the stockholders, directors other than those who are salaried employees of the Corporation, or of another corporation which controls, is controlled by or is under common control with the Corporation, will be paid a fixed sum for each meeting of the Board of Directors which is held, without regard to attendance, and/or a fixed sum for attendance at each meeting or a stated salary as director.

**Section 3.8  Place and Time of Meetings of the Board of Directors**. Meetings of the Board of Directors, regular or special, may be held at any place within or without the State of Incorporation.   The times and places for holding meetings of the Board of Directors may be fixed from time to time by resolution of the Board of Directors or (unless contrary to resolution of the Board of Directors) in the notice of the meeting.

**Section 3.9  Annual Meetings**.   On the day when, and at the place where, the annual meeting of stockholders for the election of directors is held, and as soon as practicable after such meeting, the Board of Directors may hold its annual meeting, without notice of such meeting, for the purposes of organization, the appointment of

rlibyl.doc

- 5 -

Confidential                                              BOEH04600233

officers and the transaction of other business. The annual meeting of the Board of Directors may be held at any other time and place specified in a notice given as provided in Section 3.11 of the Bylaws for special meetings of the Board of Directors or in a waiver of notice thereof.

**Section 3.10 Regular Meetings - Notice**. Regular meetings of the Board of Directors may be held at such times and places as may be fixed from time to time by the Board of Directors. Notice of each regular meeting of the Board of Directors shall, if mailed, be addressed to each director at the address designated by him for that purpose or, if none is designated, at his last known address, at least five days before the date on which the meeting is to be held; or such notice shall be sent to each director at such address by telefax, telegraph, cable, or telephone, or to be delivered to him personally, not later than the day before the date on which such meeting is to be held. If any day fixed for a regular meeting of the Board of Directors shall be a Saturday or Sunday or a legal holiday at the place where such meeting is to be held, then such meeting shall be held at the same hour at the same place on the first business day thereafter which is not a Saturday, Sunday or legal holiday.

**Section 3.11 Special Meetings**. Special meetings of the Board of Directors shall be held whenever called by the Chairman of the Board of Directors. Notice of each special meeting of the Board of Directors shall, if mailed, be addressed to each director at the address designated by him for that purpose or, if none is designated, at his last known address, at least five days before the date on which the meeting is to be held; or such notice shall be sent to each director at such address by telefax, telegraph, cable or telephone, or be delivered to him personally, not later than the day before the date on which such meeting is to be held. Every such notice shall state the time and place of the meeting and the purpose or purposes of the meeting. If mailed, each notice shall be deemed given when deposited, with postage thereon prepaid, in a post office or official depository under the exclusive care and custody of the United States Postal Service. Such mailing shall be by first class mail. Notice given by telefax, telegraph or cable shall be deemed to be given when sent electronically to the director's address as provided above.

**Section 3.12 Adjourned Meetings**. A majority of the directors present at any meeting of the Board of Directors, including an adjourned meeting, whether or not a quorum is present, may adjourn such meeting to another time and place. Any business that might have been transacted at the meeting as originally called may be transacted at any adjourned meeting by a quorum of the Board of Directors.

**Section 3.13 Waiver of Notice**. Whenever notice is required to be given to any director or member of a committee of directors under any provision of the State of Incorporation or of the Charter Documents or Bylaws, a written waiver thereof, signed

rlibyl.doc

- 6 -

by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the directors, or of a committee of directors, need be specified in any written waiver of notice.

Section 3.14 <u>Organization</u>. At each meeting of the Board of Directors, the Chairman of the Board of Directors of the Corporation, or in the absence of the Chairman of the Board of Directors, a chairman chosen by the majority of the directors present, shall preside. The Secretary shall act as secretary at each meeting of the Board of Directors. In case the Secretary shall be absent from any meeting of the Board of Directors, an Assistant Secretary or in the absence of same another person chosen by the presiding individual, shall perform the duties of the secretary at such meeting.

Section 3.15 <u>Quorum of Directors</u>. Two-thirds of the directors then in office shall constitute a quorum for the transaction of business or of any specified item of business at any meeting of the Board of Directors.

Section 3.16 <u>Action by the Board of Directors - Unanimous Written Consent</u>. All corporate action taken by the Board of Directors or any committee thereof shall be taken at a meeting of the Board of Directors, or of such committee, as the case may be, except that any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board of Directors or committee. Members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or of such committee, by means of conference telephone, video teleconferencing via satellite or otherwise, or similar communications equipment within the intent of the corporation statutes of the State of Incorporation, or any similar successor provision, by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Section 3.16 shall constitute presence in person for purposes of a quorum and for the transaction of business at such meeting. Except as otherwise provided by the Charter Documents or Bylaws, the vote of a majority of the directors present (including those who participate by means of conference telephone, video teleconferencing or similar communications equipment) at the time of the vote, if a quorum is present at such time, shall be the act of the Board of Directors.

rlibyl.doc                                        - 7 -

Confidential                                        BOEH04600235

**ARTICLE IV**
<u>**COMMITTEES OF THE BOARD OF DIRECTORS**</u>

The Board of Directors may, by resolution passed by a majority of the whole Board of Directors, designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board of Directors creating such committee, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it, but no such committee shall have the power or authority to adopt or resolve:

(1)   the approval of an action which also by law requires stockholder approval;

(2)   the approval of any action which by law must be approved by the full Board of Directors;

(3)   the filling of vacancies on the Board of Directors or any committees thereof;

(4)   the fixing of compensation of directors for serving on the Board of Directors or any committee thereof;

(5)   the hiring or dismissing of officers of the Corporation;

(6)   the amendment, revision, or repeal of all or any part of the Charter Documents;

(7)   the amendment or repeal of any of the Bylaws or the adoption of new Bylaws of the Corporation;

(8)   the amendment or repeal of any resolution of the Board of Directors which, by its express terms, is not amendable or repealable by committee action;

rllbyl.doc                                  - 8 -

Confidential

(9)     the declaration of a dividend or other distribution to stockholders, or issue any stock of the Corporation;

(10)    the appointment of committees of the Board of Directors or the members thereof;

(11)    the approval of acquisitions and divestitures of stock, assets or products from or to another entity; and

(12)    any other action which the Board of Directors shall from time to time prohibit any committee from adopting or otherwise taking.

## ARTICLE V
## OFFICERS

**Section 5.1  Officers.**  The officers of the Corporation shall be appointed by the Board of Directors and shall include a President and a Secretary.  The President's title may, at the option of the Board of Directors, include the title Chief Operating Officer. The Board of Directors may, if the Chairman of the Board is an employee of the Corporation or of an affiliate of the Corporation which is incorporated in one of the United States of America, also appoint the Chairman of the Board as an officer, as well as one or more Vice Presidents, a Treasurer, and one or more Assistant Secretaries, and Assistant Treasurers, who shall also be officers.  Any number of offices may be held by the same person. An "affiliate" means:

(a)     any entity which owns, directly or indirectly, a controlling interest in the Corporation, by stock ownership or otherwise;

(b)     any entity of which the controlling interest is owned by the Corporation, either directly or indirectly, by stock ownership or otherwise; or,

(c)     any entity, ownership of the controlling interest of which is directly or indirectly common to that of the Corporation.

**Section 5.2  Appointment of Officers.**  Officers may be appointed by the Board of Directors at its first meeting after each annual meeting of stockholders, or by unanimous written consent of the directors. One or more officers may be appointed at any other meeting of the Board of Directors, or by unanimous written consent of the directors.

rlibyl.doc                              - 9 -

Confidential                                                          BOEH04600237

**Section 5.3  Removal of Officers; Resignations; Vacancies**. Each person appointed as an officer of the Corporation shall hold office until his successor is chosen and qualifies, or until his earlier death, resignation or removal.  Any officer may be removed at any time by the Board of Directors. Any vacancy occurring in an office of the Corporation shall be filled by the Board of Directors at its discretion.

**Section 5.4  Compensation**.   The salaries of all officers of the Corporation, except Assistant Secretary and Assistant Treasurer, shall be approved by the Board of Directors.

**Section 5.5  President**.  If so resolved by the Board of Directors, the President shall be the Chief Operating Officer of the Corporation. The President shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect, subject to the control of the Board of Directors and of any duly authorized committee of directors. The President shall have all other powers and duties as shall be determined by the Board of Directors. Unless otherwise provided by resolution of the Board of Directors, the President may, from time to time, cast the votes which the Corporation may be entitled to cast as a stockholder or otherwise in any other corporation, any of whose shares or securities may be held by the Corporation, at meetings of the holders of stock or other securities of such other corporation, or to consent in writing to any action by any such other corporation, and may execute or cause to be executed on behalf of the Corporation and under its corporate seal, or otherwise, such written proxies, consents, waivers or other instruments as he may deem necessary or proper in the premises; or the President may himself attend any meeting of the holders of the stock or other securities of any such other corporation and thereat vote or exercise any or all other powers of the Corporation as the holder of such stock or other securities of such other corporation.

**Section 5.6  Vice Presidents**.  If the Board of Directors shall have elected one or more  Vice Presidents, in the absence of the President or in the event of his inability or refusal to act, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated, or in the absence of any designation, then in the order of their election) shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President.   The Vice Presidents shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

**Section 5.7  Secretary**. The Secretary or an Assistant Secretary shall attend all meetings of the Board of Directors and all meetings of the stockholders and record all the proceedings of the meetings of the Corporation and of the Board of Directors in a book to be kept for that purpose and shall perform like duties for the standing

rlibyl.doc                                   - 10 -

Confidential                                                                          BOEH04600238

committees when required. The Secretary or an Assistant Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or by the President, under whose supervision they shall be. The Secretary shall have custody of the corporate seal of the Corporation and he, or an Assistant Secretary, shall have authority to affix the same to any instrument requiring it and when so affixed, it may be attested by his signature or by the signature of such Assistant Secretary.  The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing of his signature.

**Section 5.8 <u>Treasurer</u>**. If the Board of Directors shall have elected a Treasurer, the Treasurer shall have charge and custody of, and be responsible for, all funds, securities and notes of the Corporation and shall keep full and accurate accounts thereof; receive and give receipts for moneys due and payable to the Corporation from any sources whatsoever; shall deposit all such moneys in the name of the Corporation in such banks, trust companies or other depositories as shall be selected in accordance with these Bylaws; shall, against proper vouchers, cause such funds to be disbursed by checks or drafts on the authorized depositories of the Corporation signed in such manner as shall be determined in accordance with any provisions of the Bylaws, and be responsible for the accuracy of the amounts of all moneys so disbursed; shall regularly enter or cause to be entered in books to be kept by him or under his direction full and adequate account of all moneys received or paid by him for the account of the Corporation; shall have the right to require, from time to time, reports or statements giving such information as he may desire with respect to any and all financial transactions of the Corporation from the officers or agents transacting the same; shall render to the President or the Board of Directors, whenever requested to do, an account of the financial condition of the Corporation and of all his transactions as Treasurer; shall exhibit at all reasonable times his books of account and other records to any of the directors upon application at the office of the Corporation where such books and records are kept; and shall in general, perform all the duties incident to the office of Treasurer, and such other duties as from time to time may be assigned to him by the Board of Directors or by the President.  As determined by the Board of Directors, the Treasurer's duties may, in the absence of a Treasurer and Assistant Treasurer, be performed by the President, a Vice President, or any other employee determined by the Board of Directors.

**Section 5.9 <u>Assistant Secretaries</u>**.  If the Board of Directors shall have elected one or more Assistant Secretaries, the Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board of Directors (or if there be no such determination, then in the order of their election), shall, in the absence of the Secretary or in the event of his inability or refusal to act, perform the duties and

rlibyl.doc                                - 11 -

Confidential                                                    BOEH04600239

exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

**Section 5.10** **Assistant Treasurers**.   If the Board of Directors shall have elected one or more Assistant Treasurers, the Assistant Treasurer, or if there be more than one, the Assistant Treasurers in the order determined by the Board of Directors (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of his inability or refusal to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

**Section 5.11** **Divisional Vice Presidents**.   Board of Directors may appoint such Divisional Vice Presidents as it shall deem necessary or appropriate, who shall not be officers of the Corporation, who shall hold their offices for such term and shall exercise such powers and perform such duties as shall be determined from time to time by the Board of Directors or the President or a Vice President of the Corporation.

**ARTICLE VI**
**SIGNATURE AUTHORITY - CONTRACTS, CHECKS, DRAFTS, BANK ACCOUNTS**

**Section 6.1** **Execution of Contracts and Other Documents Requiring the Prior Approval of the Board of Directors**.   Only the President, or any Vice President directed to do so by the President, shall execute any contract, bond, mortgage or other document which by law or by resolution of the Board of Directors requires the prior approval of the Board of Directors or an Executive Committee thereof.

**Section 6.2** **Execution of Contracts and Other Documents Not Requiring the Prior Approval of the Board of Directors**.   The President may sign any contract or other document on behalf of the Corporation which does not require the prior approval of its Board of Directors.   The President may delegate his signature authority to any employee of this Corporation.   Any Vice President may sign any contract or other document not requiring the prior approval of the Board of Directors which arises within the scope of his or her normal area of responsibilities; provided, however, that in the absence of the Vice President who would normally have responsibility for a given contract or other document, any other Vice President or the Secretary of the Corporation may sign it in his or her stead.

**Section 6.3** **Checks, Drafts, Notes**.   All checks, drafts and other orders for the payment of money out of the funds of the Corporation and all notes or other evidences of indebtedness of the Corporation shall be signed on behalf of the Corporation in such manner as shall from time to time be determined by resolution of the Board of Directors.

rlibyl.doc                               - 12 -

Confidential                                                          BOEH04600240

**Section 6.4  Deposits**.  The funds of the Corporation not otherwise employed shall be deposited from time to time to the order of the Corporation in such banks, trust companies or other depositories as the Board of Directors may select.

## ARTICLE VII
## STOCK AND DIVIDENDS

**Section 7.1  Certificates Representing Shares**. Every holder of stock in the Corporation shall be entitled to have a certificate evidencing his ownership.  The shares of capital stock of the Corporation shall be represented by certificates in such form (consistent with the provisions of the corporation statutes of the State of Incorporation) as shall be approved by the Board of Directors.   Such certificates certifying to the number of shares owned shall be signed by the President or a Vice President and by the Secretary or an Assistant Secretary and may be sealed with the seal of the Corporation or a facsimile thereof. The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned by a transfer agent or registrar other than the Corporation itself or its employee.   In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon any certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may, unless otherwise ordered by the Board of Directors, be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.

**Section 7.2  Transfer of Shares**.  Transfers of shares of capital stock of the Corporation shall be made only on the books of the Corporation by the holder thereof or by his duly authorized attorney appointed by a power of attorney duly executed and filed with the Secretary or a transfer agent of the Corporation, and on surrender of the certificate or certificates representing such shares of capital stock properly endorsed for transfer and upon payment of all necessary transfer taxes. Every certificate exchanged, returned or surrendered to the Corporation shall be marked "Canceled," with the date of cancellation, by the Secretary or an Assistant Secretary or the transfer agent of the Corporation.  A person in whose name shares of capital stock shall stand on the books of the Corporation shall be deemed the owner thereof to receive dividends, to vote as such owner and for all other purposes as respects the Corporation. No transfer of shares of capital stock shall be valid as against the Corporation, its stockholders and creditors for any purpose.

**Section 7.3  Transfer and Registry Agents**.  The Corporation may from time to time maintain one or more transfer offices or agents and registry offices or agents at such place or places as may be determined from time to time by the Board of Directors.

rllbyl.doc                          - 13 -

Confidential                                          BOEH04600241

**Section 7.4  Lost, Destroyed, Stolen and Mutilated Certificates.**  The holder of any shares of capital stock of the Corporation shall immediately notify the Corporation of any loss, destruction, theft or mutilation of the certificate representing such shares, and the Corporation may issue a new certificate or certificates to replace the certificates alleged to have been lost, destroyed, stolen or mutilated.  The Board of Directors may, in its discretion, as a condition to the issuance of any such new certificate, require the owner of the lost, destroyed, stolen or mutilated certificate, or his legal representatives, to make proof satisfactory to the Board of Directors of such loss, destruction, theft or mutilation and to advertise such fact in such manner as the Board of Directors may require, and to give the Corporation and its transfer agents and registrars, or such of them as the Board of Directors may require, a bond in such form, in such sums and with such surety or sureties as the Board of Directors may direct (or without surety if the Board of Directors shall so determine), to indemnify the Corporation and its transfer agents and registrars against any claim that may be made against any of them on account of the continued existence of any such certificate so alleged to have been lost, destroyed, stolen or mutilated and against any expense in connection with such claim.

**Section 7.5  Regulations.**  The Board of Directors may make such rules and regulations as it may deem expedient, not inconsistent with the Bylaws or with the Charter Documents, concerning the issue, transfer and registration of certificates representing shares of its capital stock.

**Section 7.6  Restriction on Transfer of Stock.**  A written restriction on the transfer or registration of transfer of capital stock of the Corporation, if permitted by the corporation statutes of the State of Incorporation and noted conspicuously on the certificate representing such capital stock, may be enforced against the holder of the restricted capital stock, or against any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.  A restriction on the transfer or registration of transfer of capital stock of the Corporation may be imposed either by the Charter Documents or by an agreement among any number of stockholders or among such stockholders and the Corporation.  No restriction so imposed shall be binding with respect to capital stock issued prior to the adoption of the restriction unless the holders of such capital stock are parties to an agreement or voted in favor of the restriction.

**Section 7.7  Dividends, Surplus, Etc.**  Subject to the provisions of the Charter Documents and of law, the Board of Directors:

   **7.7.1**  May declare and pay dividends or make other distributions on the outstanding shares of capital stock in such amounts and at such time or times

Confidential                                                              BOEH04600242

as, in its discretion, the condition of the affairs of the Corporation shall render advisable;

**7.7.2** May use and apply, in its discretion, any of the surplus of the Corporation in purchasing or acquiring any shares of capital stock of the Corporation, or in purchasing warrants therefor, in accordance with law, or in purchasing any of its bonds, debentures, notes, scrip or other securities or evidences of indebtedness;

**7.7.3** May set aside from time to time out of such surplus or net profits such sum or sums as, in its discretion, it thinks proper, as a reserve fund to meet contingencies, or for equalizing dividends or for the purpose of maintaining or increasing the property or business of the Corporation, or for any purpose it may think conducive to the best interests of the Corporation.

## ARTICLE VIII
## INDEMNIFICATION

**Section 8.1  Suits by Third Parties**.  The Corporation shall indemnify any person who was or is a party, or is threatened to be made a party, to any threatened, pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee, or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, agent, or trustee of another corporation, partnership, joint venture, trust, other enterprise or entity, or any employee of the Corporation who is or was serving as a fiduciary of any of its or of another affiliated corporation's benefit, contribution, or welfare plans at the request of the Corporation or at the request of the trustees or of any committee duly appointed to administer or otherwise take actions relating to any such plan of this Corporation or of another affiliated corporation (hereinafter referred to as "employee-fiduciary") for expenses (including without limitation reasonable attorneys' fees), judgments, fines and amounts paid in settlement, actually incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation or of the other corporations, partnerships, joint ventures, trusts, benefit, contribution or welfare plans, or other enterprises or entities which he is or was serving at the request of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of <u>nolo contendere</u> or its equivalent, shall not, of itself, create a presumption that (1) the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation or

rlibyl.doc                                          - 15 -

Confidential                                          BOEH04600243

of the other corporations, partnerships, joint ventures, trusts, benefit, contribution or welfare plans, or other enterprises or entities which he is or was serving, or (2) with respect to any criminal action or proceeding, that the person had reasonable cause to believe that his conduct was unlawful.

This Section 8.1 shall apply with equal force to any threatened, pending or completed criminal action or proceeding, whether administrative or investigative, involving any such director, officer, employee, trustee, employee-fiduciary, or agent of the Corporation in which "conscious wrongdoing" is not an element of the offense charged but in which guilt is predicated solely upon the individual's responsible relationship to the situation underlying the offense charged and/or his responsibility to deal with that situation.

**Section 8.2  Derivative Suits.**  The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee, or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, agent, or trustee of another corporation, partnership, joint venture, trust, or other enterprise or entity, or any employee-fiduciary, for expenses (including without limitation attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Corporation or of any partnership, joint venture, trust, benefit, contribution or welfare plan, or other enterprise or entity which he is or was serving, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Corporation or to the partnership, joint venture, trust, benefit, contribution or welfare plan, or other enterprise or entity unless, and only to the extent that, a court shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.

**Section 8.3  Indemnification as of Right.**  To the extent that any such director, officer, employee, trustee, employee-fiduciary, or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections 8.1 and 8.2 of this ARTICLE VIII or in defense of any claim, issue or matter therein, he shall be indemnified for expenses including without limitation attorneys' fees, actually and reasonably incurred by him in connection therewith.

**Section 8.4  Determination that Indemnification is Proper.**  Any determination that indemnification of any such director, officer, employee, trustee, employee-fiduciary,

rlibyl.doc                                        - 16 -

Confidential                                                          BOEH04600244

or agent is proper or improper in the specific circumstances of the case because he has met, or failed to meet, the applicable standards of conduct set forth in Sections 8.1 and 8.2 of this ARTICLE VIII shall be made initially (1) by the Board of Directors of this Corporation by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (2) if a quorum of disinterested directors so directs, by independent legal counsel (compensated by the Corporation) in a written opinion, or (3) if a quorum of disinterested directors is not obtainable, by the stockholders. In the event that the determination so made by any of the above methods is that indemnification is not proper under the circumstances of the specific case, and if the person or persons seeking indemnification elect to file a lawsuit for final determination, then the issue of whether the director, officer, employee, fiduciary, or agent has met the applicable standard of conduct set forth in Sections 8.1 and 8.2 of this ARTICLE VIII and all related issues shall be determined <u>de novo</u> by any court of competent jurisdiction in the United States.

 **Section 8.5 <u>Advance of Funds</u>**. Expenses incurred in defending a civil, criminal, administrative or investigative action, suit or proceeding, or threat thereof shall be paid by the Corporation as such expenses are incurred in advance of the final disposition of such action, suit or proceeding in the manner provided in Section 8.4 upon receipt of an undertaking by or on behalf of each such director, officer, employee, trustee, employee-fiduciary, or agent to repay such amount if it shall ultimately be determined by a court of competent jurisdiction as provided in Section 8.4 that such indemnification was not proper pursuant to these Bylaws because the applicable standard of conduct for indemnification set forth in Sections 8.1 and 8.2 was not met.

 **Section 8.6 <u>Non-Exclusivity</u>**. The indemnification provided by this ARTICLE VIII shall not be deemed exclusive of any other rights to which a person seeking indemnification may be entitled under any agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity, and as to action in another capacity while holding such office, and such rights to indemnification and all other rights shall continue as to a person who has ceased to be such a director, officer, employee, trustee, employee-fiduciary, or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

 **Section 8.7 <u>Insurance Premiums</u>**. The Corporation shall have power by authority of the Board of Directors to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee, or agent of the Corporation, or is or was serving at the request of the Corporation as director, officer, employee, agent, or trustee of another corporation, partnership, joint venture, trust, or other enterprise or entity, or any employee-fiduciary, against any liability asserted against him and incurred by him in any such capacity or arising out of his status as such, whether or not the

rlibyl.doc     - 17 -

Confidential     BOEH04600245

Corporation would have the obligation to indemnify him against such liability under the provisions of this ARTICLE VIII.

**Section 8.8   <u>Definitions</u>**. For purposes of this ARTICLE VIII, all references to "he" or "him" shall include the masculine and feminine, and all references to "the Corporation" shall include, in addition to this Corporation, all subsidiaries of this Corporation and all constituent corporations (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees, fiduciaries, or agents, so that any person who is or was a director, officer, employee, or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee, agent, or trustee of another corporation, partnership, joint venture, trust, or other enterprise or entity, or any employee-fiduciary, shall stand in the same position under this ARTICLE VIII with respect to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

## ARTICLE IX
## <u>BOOKS AND RECORDS</u>

**Section 9.1   <u>Books and Records</u>**.   The Corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of the stockholders, of the Board of Directors and of any committee of the Board of Directors.   The Corporation shall keep at the office designated in the Charter Documents or at the office of the transfer agent or registrar of the State of Incorporation, a record containing the names and addresses of all stockholders, the number and class of shares held by each and the dates when they respectively became the owners of record thereof.

**Section 9.2   <u>Form of Records</u>**.   Any records maintained by the Corporation in the regular course of its business, including its stock ledger, books of account, and minute books, may be kept on, or be in the form of, punch cards, magnetic tape, photographs, microphotographs, or any other information storage device, provided that the records so kept can be converted into clearly legible written form within a reasonable time.   The Corporation shall so convert any records so kept upon the request of any person entitled to inspect the same.

rlibyl.doc                                        - 18 -

Confidential                                                          BOEH04600246

**ARTICLE X**
**SEAL**

The Corporation may adopt a corporate seal which shall be in the form of a circle and shall bear the full name of the Corporation, the year of its incorporation, the State of Incorporation, and the words "Corporate Seal."

**ARTICLE XI**
**FISCAL YEAR**

The fiscal year of the Corporation shall be determined, and may be changed, by resolution of the Board of Directors.

**ARTICLE XII**
**AMENDMENTS**

These Bylaws may be altered, amended, repealed, or new Bylaws may be adopted only by the stockholders.

**rlibyl.doc**                                             - 19 -

**RLI159**

### ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, this Corporation be, and it hereby is, authorized to enter into an agreement with Agouron, Inc. for the co-promotion of VIRAMUNE® (nevirapine) in the United States of America.

RESOLVED that, such agreement shall be for an initial term of three years with either party having the right to terminate thereafter upon six months prior notice and with either party having the right to terminate the agreement at any time upon the breach by the other party of any of its obligations thereunder.

RESOLVED that, such agreement contain such other terms and conditions not inconsistent with the business justification attached hereto and made a part hereof, as this Corporation's President deems to be in the best interests of the Corporation.

RESOLVED that, the President or any Vice President and the Secretary of this Corporation be, and they hereby are, authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolutions as they may deem necessary or advisable in order to effectuate the foregoing resolutions.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the ___18th___ day of ___May___, 1998

---
Werner Gerstenberg

---
Walter Poerschmann

---
Sheldon Berkle

---
Philip J. Franks

Confidential

MAY 15 '98 09:21 FR BIPI

RLI159

ROXANE LABORATORIES, INC.

UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, this Corporation be, and it hereby is, authorized to enter into an agreement with Agouron, Inc. for the co-promotion of VIRAMUNE® (nevirapine) in the United States of America.

RESOLVED that, such agreement shall be for an initial term of three years with either party having the right to terminate thereafter upon six months prior notice and with either party having the right to terminate the agreement at any time upon the breach by the other party of any of its obligations thereunder.

RESOLVED that, such agreement contain such other terms and conditions not inconsistent with the business justification attached hereto and made a part hereof, as this Corporation's President deems to be in the best interests of the Corporation.

RESOLVED that, the President or any Vice President and the Secretary of this Corporation be, and they hereby are, authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolutions as they may deem necessary or advisable in order to effectuate the foregoing resolutions.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the ___18th___ day of ___May___, 1998

| | |
|---|---|
| _____ | _____ |
| Werner Gerstenberg | Sheldon Berkle |
| | |
| _____ | _____ |
| Walter Poerschmann | Philip J. Franks |

Confidential

BOEH04600249

RLI159

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, this Corporation be, and it hereby is, authorized to enter into an agreement with Agouron, Inc. for the co-promotion of VIRAMUNE® (nevirapine) in the United States of America.

RESOLVED that, such agreement shall be for an initial term of three years with either party having the right to terminate thereafter upon six months prior notice and with either party having the right to terminate the agreement at any time upon the breach by the other party of any of its obligations thereunder.

RESOLVED that, such agreement contain such other terms and conditions not inconsistent with the business justification attached hereto and made a part hereof, as this Corporation's President deems to be in the best interests of the Corporation.

RESOLVED that, the President or any Vice President and the Secretary of this Corporation be, and they hereby are, authorized and empowered to sign and deliver all documents and to do all such other acts consistent with the foregoing resolutions as they may deem necessary or advisable in order to effectuate the foregoing resolutions.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the __18th__ day of __May__ , 1998

_____

Werner Gerstenberg

_____

Sheldon Berkle

_____

Walter Poerschmann

_____

Philip J. Franks

Confidential

BUSINESS JUSTIFICATION

## Viramune Co-Promotion with Agouron in the United States

Viramune sales in the US are budgeted to increase by 45% in 1998, to US$90 million.  That will represent 4.5% to 5% of all anti-retroviral prescriptions.  Even at that level, the full potential of the product may not be exploited.

Viramune's growth rate is expected to fall when DuPont Merck's DMP-266 (Sustiva, an NNRTI, direct competitor to Viramune) is approved and launched this summer.  The current clinical cooperation and probable marketing association between DuPont Merck and Merck with Sustiva and Crixivan (the leading protease inhibitor) will provide significant competition to Viramune finding a place in combination therapy for HIV disease.

Cooperation with a marketer of another protease inhibitor would strengthen Viramune's positioning with AIDS treating physicians (ATP's).  Discussions with Agouron have revealed their interest in co-promoting Viramune, along with their protease inhibitor, Viracept (the fastest growing and a close second to Crixivan in market share of new prescriptions).  Viracept is one of only two protease inhibitors that does not have a significant pharmacokinetic interaction with Viramune, therefore, no adjustment is necessary in the dosing of either product.  A recently completed clinical trial has shown good results with Viramune in combination with Viracept and Zerit (d4T).  Physicians should readily accept a Viramune / Viracept combination.

A collaboration with Agouron would result in Roxane's representatives continuing to deliver primary details for Viramune to ATP's and Agouron's 80 representatives presenting Viramune as a logical companion to Viracept in a therapeutic cocktail regimen to the same physicians.  Agouron would also include combination therapy with Viramune, Viracept, and a nucleoside reverse transcriptase inhibitor in their extensive symposia and professional training programs.  In addition to extending the reach and frequency of calls on ATP's, Agouron's larger number of medical liaison representatives could position Viramune more firmly with HIV thought leaders and medical/scientific speakers.

Roxane's contributions to a collaboration would include, in addition to a share of revenues, clinical data to support the combination of Viramune with Viracept, and promotional materials for use by the two sales forces.  The general terms discussed with Agouron also include:

- co-promotion will be exclusive in the US, and coordinated by a Joint Marketing committee that will be chaired by Roxane;
- Roxane will provide sales training material and assistance, in addition to all promotional materials bearing both companies' names, and will be responsible for all clinical studies and regulatory filings;
- neither company will recruit or hire the other's sales representatives;
- if we elect to discontinue Viramune for any reason, Agouron will have a non-exclusive right to negotiate to obtain US rights to the product; and
- the agreement will extend for at least 3 years, and then continue until terminated by either party with six months notice, unless terminated earlier for non-performance.

Revenue sharing will not commence until the sales level Roxane could achieve on its own – US$90 million – is met.  To make the risk acceptable to Agouron, however, they would receive a guaranteed minimum payment of US$750,000 to $1 million per quarter (to be negotiated).  Assuming a US$4 million minimum royalty and an equal division of Gross Profit (net sales less cost of goods and distribution, but without the inter-company royalty payment) from sales above the threshold, sales and profit from various outcome scenarios are shown below, compared to Roxane's current budget.

Confidential                                                                          BOEH04600251

Viramune Co-Promotion
March 24, 1998
Page 2

| (TUS$) | current budget | none | +10% | +28% |
|---|---|---|---|---|
| | | impact of co-promotion in 1998 is | | |
| Net sales of Viramune | $90,038 | $90,038 | $99,000 | $115,000 |
| Gross Profit | $70,770 | $70,770 | $77,814 | $90,390 |
| Contribution I | $60,842 | $60,842 | $66,898 | $77,710 |
| Minimum payment | 0 | 4,000 | 4,000 | 0 |
| Revenue share | 0 | 0 | 0 | 9,810 |
| Additional promo materials | 0 | 250 | 250 | 250 |
| Additional clinical trials | 0 | 500 | 500 | 500 |
| Other budgeted expenses | 17,000 | 17,000 | 17,000 | 17,000 |
| Contribution II | $43,842 | $39,092 | $45,148 | $50,150 |

The break-even point for the envisioned collaboration is a ten percent increase in sales over budget.  The risk, if Agouron's efforts produce less than that, is the $3 to $4 million minimum guarantee plus the economic cost of including Viracept in clinical studies to a larger extent than already planned.  If results are not acceptable, the collaboration would be ended, with no future obligations.

If co-promotion with Agouron is successful, as expected, Viramune's pending indication in combination with protease inhibitors can be more fully exploited, and the competitive impact of Sustiva can be decreased for the future.  Expenses will be increased by the cost of additional materials and the split of revenue over the baseline.  At the sales levels projected, the incremental benefit of a five-year agreement has a net present value of US$20 million at 10%.  An objective of final negotiations will be to lower the guaranteed minimum royalty and increase the threshold to measure incremental sales in future years, to improve the return even above this base case.

| US$million | 1998 | 1999 | 2000 | 2001 | 2002 | sum |
|---|---|---|---|---|---|---|
| Expected sales with co-promotion | $96.7 | $130.6 | $143.6 | $151.0 | $156.6 | |
| current plan | 90.0 | 113.6 | 124.9 | 131.3 | 136.2 | |
| Incremental sales | $6.7 | $17.0 | $18.7 | $19.7 | $20.4 | $82.5 |
| Incremental margin @ 78.6% | $5.3 | $13.4 | $14.7 | $15.5 | $16.0 | $64.9 |
| share to Agouron | *3.0 | 6.7 | 7.4 | 7.8 | 8.0 | |
| add'l expenses | 0.7 | 0.8 | 0.7 | 0.8 | 0.8 | |
| Incremental pre-tax revenues | $1.6 | $5.9 | $6.6 | $6.9 | $7.2 | $28.2 |

*partial year minimum

The potential impact of any programs on the future of Viramune will be increased to the extent they can be implemented and effective prior to the introduction of Sustiva.  That will require, for this co-promotion collaboration with Agouron, that a final agreement is negotiated quickly, and then that sales training and promotion programs are implemented as soon as possible thereafter.  There are only a few months before DuPont Merck's expected launch.  Roxane is, therefore, seeking approval to negotiate a final agreement with Agouron, incorporating the terms described herein.

BOEH04600252

RLI161

**ROXANE LABORATORIES, INC.**

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors for the year 1998, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted annual meeting:

RESOLVED that, the year-end closing for 1997 be, and it hereby is, approved and the Balance Sheet and Profit and Loss Statement of this Corporation as of December 31, 1997 be, and they hereby are, ratified and adopted in the form attached.

RESOLVED that, the following named persons be, and they hereby are, appointed officers of this Corporation, each to serve as such during the pleasure of this Board of Directors in the capacity or capacities set forth opposite his name:

| | |
|---|---|
| Mr. Werner Gerstenberg | Chairman of the Board |
| Mr. Werner Gerstenberg | President and Chief Operating Officer |
| Dr. Kirk V. Shepard | Senior Vice President – Marketing, Medical Affairs and Development |
| Edward S. Brewton, Ph.D. | Vice President - Scientific Affairs |
| Mr. Thomas Eggleton | Vice President - Operations |
| Philip J. Franks, Esq. | Vice President and Secretary |
| Mr. Edward J. Tupa | Vice President - Sales and Marketing |

Confidential

BOEH04600254

RLI161

| Mr. Holger Huels | Treasurer |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   16th   , day of   June   , 1998.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

_____
Philip J. Franks

- 2 -

Confidential                                      BOEH04600255

**RLI161**

| | |
|---|---|
| Mr. Holger Huels | Treasurer |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 16th , day of June , 1998.


Werner Gerstenberg          Sheldon Berkle


Walter Poerschmann          Philip J. Franks

- 2 -

Confidential                                                        BOEH04600256

RLI161

| | |
|---|---|
| Mr. Holger Huels | Treasurer |
| Alan C. Davis, Esq. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   16th   , day of   June   , 1998.

_____                    _____
Werner Gerstenberg                          Sheldon Berkle


_____                    _____
Walter Poerschmann                          Philip J. Franks

- 2 -

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

Thousands U.S.$

| Budget 2/28/98 | Actual 2/28/98 | | Budget 1997 | Actual 1997 | Strategic Plan 1998 | Budget 1998 |
|---|---|---|---|---|---|---|
| 49,186 | 53,736 | Net Sales | 327,795 | 320,025 | 440,752 | 354,281 |
| 21,545 | 24,072 | Cost of Goods Sold | 159,090 | 131,902 | 220,507 | 159,452 |
| 10,746 | 10,080 | Marketing & Advertising | 49,796 | 48,294 | 54,194 | 64,471 |
| 4,680 | 4,812 | Research & Medical, I | 24,457 | 22,291 | 27,685 | 28,077 |
| 879 | 647 | Administration | 5,144 | 4,721 | 5,422 | 5,283 |
| 3,643 | 3,248 | Distribution and Royalties | 14,892 | 22,488 | 22,677 | 23,812 |
| (438) | 694 | Other | 5,206 | 9,789 | 5,206 | 6,984 |
| 8,131 | 10,183 | Contribution III | 69,210 | 80,540 | 105,061 | 66,202 |
| 784 | 940 | Restructuring Costs | - | 6,211 | - | 4,701 |
| 7,347 | 9,243 | Operating Income (Loss) | 69,210 | 74,329 | 105,061 | 61,501 |
| (420) | (56) | Financial Income (Expense) | (3,071) | (3,221) | (2,130) | (2,524) |
| 6,927 | 9,187 | Profit Before Tax | 66,139 | 71,108 | 102,931 | 58,977 |
| 2,702 | 3,580 | Income Tax | 25,734 | 30,972 | 39,989 | 22,959 |
| 4,225 | 5,607 | Net Income After Tax | 40,405 | 40,136 | 62,942 | 36,018 |

Confidential

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

### Millions U.S. $

## BUDGET 1997 VS. ACTUAL 1997

### Overview

- Total Net Sales $7.8 (2.4%) below Budget.
- Operating Profit up $5.1 (7.4%) above Budget.

### Net Sales

- Third Party sales $2.2 (0.7%) below Budget:
  - Ranitidine (GI Track) sale lower than Budget due to early competition;
  - Duraclon (Analgesics, Other) sales lower than Budget due to dosage preference (the product is a sterile injectible, and apparently doctors are more likely to prescribe a more potent form of Duraclon);
  - Lithium and Haloperidol (Psychotropics) sales lower than Budget due to a 1996 backorder situation that resulted in a loss in market position.

  Partially offsetting the decreases were:
  - Azathioprine and Hydroxyurea (330 Project) experienced no generic competition;
  - Ipratropium (Respiratory Therapy) market share greater than expected in 1997;
  - Viramune (Antiviral) growth better than anticipated in 1997.

- Affiliate sales to BIPI and international affiliates $5.5 (39%) below Budget:
  - Atrovent UDV unit sales affected by generic competition;
  - Viramune and Oramorph sales to international affiliates were not budgeted.

### Cost of Goods Sold

- Favorable to Budget; 41.2% of Net Sales for Actual 1997 versus Budget of 48.5%:
  - slower sales price erosion for Ipratropium than budgeted;
  - favorable sales mix of high margin products, e.g. Viramune and Azathioprine;
  - elimination of $2.0 LIFO reserves based on tax accounting change;
  - favorable production variances.

### Research and Medical, I

- Below Budget $2.2 (8.9%) primarily due to reclassifying affiliate R&D OPINA expenses (Development expenses related to product transfer from BIPI to Roxane) to Restructuring Costs.

Confidential

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

Thousands U.S.$

| Budget 2/28/98 | Actual 2/28/98 | | Budget 1997 | Actual 1997 | Strategic Plan 1998 | Budget 1998 |
|---|---|---|---|---|---|---|
| 49,186 | 53,736 | Net Sales | 327,795 | 320,025 | 440,752 | 354,281 |
| 21,545 | 24,072 | Cost of Goods Sold | 159,090 | 131,902 | 220,507 | 159,452 |
| 10,746 | 10,080 | Marketing & Advertising | 49,796 | 48,294 | 54,194 | 64,471 |
| 4,680 | 4,812 | Research & Medical, I | 24,457 | 22,291 | 27,685 | 28,077 |
| 879 | 647 | Administration | 5,144 | 4,721 | 5,422 | 5,283 |
| 3,643 | 3,248 | Distribution and Royalties | 14,892 | 22,488 | 22,677 | 23,812 |
| (438) | 694 | Other | 5,206 | 9,789 | 5,206 | 6,984 |
| 8,131 | 10,183 | Contribution III | 69,210 | 80,540 | 105,061 | 66,202 |
| 784 | 940 | Restructuring Costs | - | 6,211 | - | 4,701 |
| 7,347 | 9,243 | Operating Income (Loss) | 69,210 | 74,329 | 105,061 | 61,501 |
| (420) | (56) | Financial Income (Expense) | (3,071) | (3,221) | (2,130) | (2,524) |
| 6,927 | 9,187 | Profit Before Tax | 66,139 | 71,108 | 102,931 | 58,977 |
| 2,702 | 3,580 | Income Tax | 25,734 | 30,972 | 39,989 | 22,959 |
| 4,225 | 5,607 | Net Income After Tax | 40,405 | 40,136 | 62,942 | 36,018 |

Confidential

BOEH04600260

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

**Millions U.S. $**

## BUDGET 1997 VS. ACTUAL 1997

### Distribution and Royalties

- Above Budget $7.6 (51%) primarily as a result of increased royalties on sales of Viramune and Ipratropium.

### Other Operating Expenses

- Above Budget $4.6 (88%) primarily due to:
    - an increase in amortization expense ($1.4) as a result of a decrease in the estimate of Duraclon's useful life from 15 to 17 years;
    - write-down of production equipment ($2.8);
    - additional bad debt provision ($0.4).

### Restructuring Costs

- Above Budget $6.2 due to:
    - unbudgeted expenses related to OPINA restructuring activities, e.g. Regional Information Technology ($1.6) and Supply Chain Management ($0.8);
    - affiliate OPINA expenses of ($3.3) reclassified to Income/Expense III.

Confidential

BOEH04600261

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

Thousands U.S.$

| Actual 2/28/96 | | Budget 1997 | Actual 1997 | Strategic Plan 1998 | Budget 1998 |
|---|---|---|---|---|---|
| | **Assets** | | | | |
| 420 | Cash | - | 345 | - | - |
| 36,098 | Accounts Receivable | 37,000 | 31,992 | 41,000 | 52,000 |
| 6,311 | Prepaid Expenses | 200 | 194 | 200 | 200 |
| 58,488 | Inventories | 50,000 | 59,046 | 79,000 | 64,000 |
| 101,317 | Total Current Assets | 87,200 | 91,577 | 120,200 | 116,200 |
| 30,233 | Intangible Assets | 33,455 | 31,347 | 28,282 | 24,629 |
| 127,987 | Property, Plant and Equipment | 126,578 | 125,103 | 141,645 | 145,163 |
| 3,019 | Other Assets | 4,646 | 3,435 | 4,012 | 4,087 |
| 262,556 | Total Assets | 251,879 | 251,462 | 294,139 | 290,079 |
| | **Liabilities** | | | | |
| 49,103 | Accounts Payable and Accrued Liabilities | 25,500 | 36,308 | 28,000 | 37,000 |
| 2,503 | Payables to Banks | 7,000 | 2,532 | 7,500 | 2,350 |
| 8,014 | Accrued Taxes | 5,000 | 4,279 | 5,500 | 7,000 |
| - | Payable to Affiliates | - | 217 | 53,000 | - |
| 16,762 | Loans from Affiliates | 43,537 | 27,559 | 19,355 | 9,986 |
| 76,382 | Total Liabilities | 81,037 | 70,895 | 113,355 | 56,336 |
| | **Stockholder's Equity** | | | | |
| 19 | Capital Stock | 19 | 19 | 19 | 19 |
| 8,735 | Additional Paid-In Capital | 8,735 | 8,735 | 8,735 | 8,735 |
| 177,420 | Retained Earnings | 162,088 | 171,813 | 172,030 | 224,989 |
| 186,174 | Total Stockholder's Equity | 170,842 | 180,567 | 180,784 | 233,743 |
| 262,556 | Total Liabilities & Stockholder's Equity | 251,879 | 251,462 | 294,139 | 290,079 |

Confidential

BOEH04600262

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

<u>Millions U.S. $</u>

### BUDGET 1997 VS. ACTUAL 1997

#### Accounts Receivable

- Below Budget 14% as a result of additional reserves for price adjustments and absence of a 4th quarter extended terms sales deal.

#### Inventories

- Above Budget 18% as a result of reaching higher customer service levels (from 85% in 1996 to 92% in 1997).

#### Intangible Assets

- Below Budget 6% as a result of change in amortization life of Duraclon (amortization was accelerated).

#### Property, Plant, and Equipment

Below Budget 1% as a result of a write-down of production equipment.

#### Accounts Payable and Accrued Liabilities

- Above Budget 42% due to:
    - timing of invoices at year end (increased accounts payable);
    - higher provisions, e.g. Medicaid.

#### Payable to Banks

- Below Budget 64% as a result of elimination of the A/P bank account (with negative balances) due to shared services. The negative cash is now reflected in the intercompany account.

#### Loans from Affiliates

- Below Budget 37% primarily due to increased cash flow as a result of higher profits.

Confidential                                                                    BOEH04600263

OCT 14 '98 08:35 FR BIC EXECUTIVE        203 791 6260 TO 90115521543790/H P.04/04

**RLI166**

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, Mr. Edward J. Tupa be, and he hereby is, removed as Vice President – Sales and Marketing of this Corporation effective October 23, 1998.

RESOLVED that, the resignation of Mr. Thomas Eggleton, Vice President – Operations of this Corporation, be, and it hereby is, accepted effective October 31, 1998.

RESOLVED that, Dr. Kirk V. Shepard's title be, and it hereby is, changed from Senior Vice President Marketing, Medical Affairs and Development to Senior Vice President – Business Unit RX/Hospital Strategy of this Corporation effective October 23, 1998.

RESOLVED that, Mr. Peter Dickinson be, and he hereby is, appointed Vice President – Operations of this Corporation effective November 1, 1998.

RESOLVED that, effective October 23, 1998, Mr. Thomas R. Russillo, President and Chief Operating Officer of this Corporation's affiliate, Ben Venue Laboratories, Inc. of Bedford, Ohio, be, and he hereby is, assigned responsibility for the Marketing of Multisource Products, Medical Affairs, Drug Regulatory Affairs and Scientific Affairs functions of this Corporation.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the __14th__ day of __October__, 1998

_____
Werner Gerstenberg

_____
Walter Poerschmann

_____
Sheldon Beakle

_____
Philip J. Brooks

** TOTAL PAGE.04 **

Confidential                                                        BOEH04600267

RLI171

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, a dividend in the amount of $41,000,000, which represents the 1998 net income of the Corporation after taxes, be, and it hereby is, declared to be paid to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, on April 30, 1999.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 7 th day of May , 1999.

_____           _____
Werner Gerstenberg                    Sheldon Berkle

_____           _____
Walter Poerschmann                    Philip J. Franks

FRANKS\WORDDOCS\CONSENTS\RLI171.CON

Confidential                                    BOEH04600292

RLI171

## ROXANE LABORATORIES, INC.

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, a dividend in the amount of $41,000,000, which represents the 1998 net income of the Corporation after taxes, be, and it hereby is, declared to be paid to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, on April 30, 1999.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 7th day of May , 1999.

_____          _____
Werner Gerstenberg                  Sheldon Berkle

_____          _____
Walter Poerschmann                  Philip J. Franks

FRANKS\WORDDOCS\CONSENTS\RLI171.CON

Confidential                                              BOEH04600293

RLI171

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, a dividend in the amount of $41,000,000, which represents the 1998 net income of the Corporation after taxes, be, and it hereby is, declared to be paid to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, on April 30, 1999.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 7th day of May, 1999.

_____          _____
Werner Gerstenberg                                    Sheldon Berkle


_____          _____
Walter Poerschmann                                   Philip J. Franks

FRANKS\WORDDOCS\CONSENTS\RLI171.CON

Confidential                                                    BOEH04600294

RLI175

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE

LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by

this our unanimous written consent without a meeting pursuant to Section 141(f) of the General

Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors for the

year 1999, and with full force and effect as if adopted by the unanimous affirmative vote of all of

us at a duly constituted annual meeting:

RESOLVED   that, the year-end closing for 1998 be, and it hereby is, approved
and the Balance Sheet and Profit and Loss Statement of this Corporation as of December
31, 1997 be, and they hereby are, ratified and adopted in the form attached.

RESOLVED that, effective immediately, Philip J. Franks, Esq. be, and he hereby
is, removed from the position of Vice President and Secretary of this Corporation.

RESOLVED that, effective immediately, the following named persons be, and
they hereby are, appointed officers of this Corporation, each to serve as such during the
pleasure of this Board of Directors in the capacity or capacities set forth opposite his
name:

| | |
|---|---|
| Mr. Werner Gerstenberg | Chairman of the Board |
| Mr. Werner Gerstenberg | President and Chief Operating Officer |
| Dr. Kirk V. Shepard | Senior Vice President – Business Unit RX/Hospital Strategy |
| Edward S. Brewton, Ph.D. | Vice President - Scientific Affairs |
| Mr. Peter Dickinson | Vice President – Operations |
| Ursula B. Bartels, Esq. | Secretary |
| Mr. Holger Huels | Treasurer |

Confidential

BOEH04600302

RLI175

Alan C. Davis, Esq.                    Assistant Secretary

Mr. John Swartz                        Assistant Secretary

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   8th   , day of   July   , 1999.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

RLI175CON.DOC

- 2 -

Confidential                                                                    BOEH04600303

RLI175

Alan C. Davis, Esq.                    Assistant Secretary

Mr. John Swartz                        Assistant Secretary

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the    8th    , day of  July        , 1999.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

RLI175CON.DOC

- 2 -

Confidential                                                   BOEH04600304

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

Thousands U.S.$

| Budget 2/28/99 | Actual 2/28/99 | | Budget 1998 | Actual 1998 | Budget 1999 |
|---|---|---|---|---|---|
| 77,155 | 70,489 | Net Sales | 354,281 | 381,239 | 464,078 |
| 41,355 | 36,474 | Cost of Goods Sold | 159,452 | 168,044 | 253,806 |
| 11,601 | 10,031 | Marketing & Advertising | 64,471 | 61,984 | 69,800 |
| 5,234 | 5,406 | Research & Medical, I | 28,077 | 31,318 | 32,340 |
| 1,053 | 685 | Administration | 5,283 | 6,983 | 5,513 |
| 4,219 | 4,597 | Distribution and Royalties | 23,812 | 27,858 | 25,271 |
| 3,390 | 3,302 | Other, I | 6,984 | 9,293 | 10,340 |
| −10,303 | 9,994 | Contribution III | 66,202 | 75,759 | 67,008 |
| 136 | 203 | Research & Medical, II | - | - | 846 |
| - | - | Other, II | - | - | - |
| 809 | 1,268 | OPINA Restructuring Costs | 4,701 | 7,292 | 4,941 |
| 9,358 | 8,523 | Operating Income (Loss) | 61,501 | 68,467 | 61,221 |
| 94 | (154) | Financial Income (Expense) | (2,524) | (1,559) | 563 |
| - | - | Holding Income (Expense) | - | - | - |
| - | - | Extraordinary Items | - | - | - |
| 9,452 | 8,369 | Profit Before Tax | 58,977 | 66,908 | 61,784 |
| 3,770 | 3,261 | Income Tax | 22,959 | 25,755 | 24,800 |
| 5,682 | 5,108 | Net Income After Tax | 36,018 | 41,153 | 36,984 |

Confidential

BOEH04600305

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

Thousands U.S.$

| Actual 2/28/99 | | Budget 1998 | Actual 1998 | Budget 1999 |
|---|---|---|---|---|
| | **Assets** | | | |
| (2,228) | Cash | - | - | - |
| 41,659 | Trade Accounts Receivable | 52,000 | 44,644 | 40,000 |
| 164 | Receivable from Affiliates | - | 164 | - |
| 17,861 | Short-Term Advances to Affiliates | - | 4,353 | 41,900 |
| 286 | Prepaid Expenses | 200 | 1,025 | - |
| 72,383 | Inventories | 64,000 | 66,601 | 74,700 |
| 130,125 | Total Current Assets | 116,200 | 116,787 | 156,600 |
| 23,552 | Intangible Assets | 24,629 | 24,666 | 17,947 |
| 137,762 | Property, Plant and Equipment | 145,163 | 137,919 | 141,461 |
| 3,350 | Other Assets | 4,087 | 4,137 | 4,000 |
| 294,789 | Total Assets | 290,079 | 283,509 | 320,008 |
| | **Liabilities** | | | |
| 56,742 | Accounts Payable & Accrued Liabilities | 37,000 | 50,104 | 55,581 |
| 2,292 | Payables to Banks | 2,350 | 2,358 | - |
| 8,927 | Accrued Taxes | 7,000 | 5,583 | 6,000 |
| - | Payables to Affiliates | - | 3,744 | - |
| - | Loans from Affiliates | 9,986 | - | - |
| 67,961 | Total Liabilities | 56,336 | 61,789 | 61,581 |
| | **Stockholder's Equity** | | | |
| 19 | Capital Stock | 19 | 19 | 19 |
| 8,735 | Additional Paid-In Capital | 8,735 | 8,735 | 8,735 |
| 218,074 | Retained Earnings | 224,989 | 212,966 | 249,673 |
| 226,828 | Total Stockholder's Equity | 233,743 | 221,720 | 258,427 |
| 294,789 | Total Liabilities & Stockholder's Equity | 290,079 | 283,509 | 320,008 |

RLI181

### ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, a dividend, comprised of $45,055,000 of 1999 net income of this Corporation after taxes and $4,945,000 out of retained earnings of this Corporation, for a total aggregate amount of $50,000,000 be, and it hereby is, declared to be paid to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, on May 31, 2000.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 30th    day of   May           , 2000.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

Confidential                                                              BOEH04600326

RLI181

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane

Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolution by

this our unanimous written consent without a meeting pursuant to Section 141(f) of the

General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of

Directors, and with full force and effect as if adopted by the unanimous affirmative vote of

all of us at a duly constituted meeting:

> RESOLVED that, a dividend, comprised of $45,055,000 of 1999 net income of this Corporation after taxes and $4,945,000 out of retained earnings of this Corporation, for a total aggregate amount of $50,000,000 be, and it hereby is, declared to be paid to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, on May 31, 2000.

This instrument may be signed in one or more counterparts all of which taken

together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the

30th    day of    May        , 2000.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

Confidential                                                                          BOEH04600327

**RLI181**

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of Roxane Laboratories, Inc., a Delaware corporation, do hereby adopt the following resolution by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, a dividend, comprised of $45,055,000 of 1999 net income of this Corporation after taxes and $4,945,000 out of retained earnings of this Corporation, for a total aggregate amount of $50,000,000 be, and it hereby is, declared to be paid to the sole stockholder of this Corporation, Boehringer Ingelheim Corporation, on May 31, 2000.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 30th day of May , 2000.

_____
Werner Gerstenberg


_____
Sheldon Berkle


_____
Walter Poerschmann

Confidential

BOEH04600328

RLI183

## ROXANE LABORATORIES, INC.

### UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors for the year 2000, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted annual meeting:

RESOLVED   that, the year-end closing for 1999 be, and it hereby is, approved and the Balance Sheet and Profit and Loss Statement of this Corporation as of December 31, 1999 be, and they hereby are, ratified and adopted in the form attached.

RESOLVED that, effective immediately, the following named persons be, and they hereby are, appointed officers of this Corporation, each to serve as such during the pleasure of this Board of Directors in the capacity or capacities set forth opposite his name:

| | |
|---|---|
| Mr. Werner Gerstenberg | Chairman of the Board |
| Mr. Werner Gerstenberg | President and Chief Operating Officer |
| Mr. Peter Dickinson | Vice President - Operations |
| Ursula B. Bartels, Esq. | Secretary |
| Mr. Holger Huels | Treasurer |
| Alan C. Davis, Esq. | Assistant Secretary |
| Frank A. Pomer, Esq. | Assistant Secretary |
| Robert P. Raymond, Ph.D., J.D. | Assistant Secretary |
| Mr. John Swartz | Assistant Secretary |

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

BOEH04600330

RLI183

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the  21st  , day of  August  , 2000.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

RLI183con.doc

- 2 -

Confidential                                                    BOEH04600331

**RLI183**

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   21st   , day of   August      , 2000.

Werner Gerstenberg

Sheldon Berkle

RLI183con.doc

Walter Poerschmann

- 2 -

Confidential

BOEH04600332

**RLI183**

IN WITNESS WHEREOF, we have duly signed this instrument effective as

of the    21st    , day of    August        , 2000.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Foerschmann

RLI183con.doc

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

Thousands U.S.$

| Actual YTD Mar-00 | | Budget 1999 | Actual 1999 | Budget 2000 |
|---|---|---|---|---|
| | **Assets** | | | |
| - | Cash | - | - | - |
| 60,772 | Trade Accounts Receivable | 40,000 | 46,002 | 62,000 |
| - | Receivable from Affiliates | - | 1 | - |
| - | Short-Term Advances to Affiliates | 41,900 | - | - |
| 3 | Prepaid Expenses | - | 197 | - |
| 124,510 | Inventories | 74,700 | 121,069 | 78,000 |
| 185,285 | Total Current Assets | 156,600 | 167,269 | 140,000 |
| 17,092 | Intangible Assets | 17,947 | 17,983 | 14,420 |
| - | Investment in Affiliates | - | - | - |
| 137,213 | Property, Plant and Equipment | 141,461 | 138,529 | 137,634 |
| 4,258 | Other Assets | 4,000 | 5,483 | 43,993 |
| 343,848 | Total Assets | 320,008 | 329,264 | 336,047 |
| | **Liabilities** | | | |
| 70,651 | Accounts Payable & Accrued Liabilities | 55,581 | 54,974 | 51,991 |
| 2,829 | Payables to Banks | - | 5,722 | 1,879 |
| 14,344 | Accrued Taxes | 6,000 | 6,192 | 12,000 |
| 17,143 | Payables to Affiliates | - | 36,601 | - |
| - | Loans from Affiliates | - | - | 54,000 |
| 104,967 | Total Liabilities | 61,581 | 103,489 | 119,870 |
| | **Stockholder's Equity** | | | |
| 19 | Capital Stock | 19 | 19 | 19 |
| 8,735 | Additional Paid-In Capital | 8,735 | 8,735 | 8,735 |
| 230,127 | Retained Earnings | 249,673 | 217,021 | 207,423 |
| 238,881 | Total Stockholder's Equity | 258,427 | 225,775 | 216,177 |
| 343,848 | Total Liabilities & Stockholder's Equity | 320,008 | 329,264 | 336,047 |

Confidential

BOEH04600335

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

**Thousands U.S.$**

| Budget YTD Mar-00 | Actual YTD Mar-00 | | Budget 1999 | Actual 1999 | Budget 2000 |
|---|---|---|---|---|---|
| 93,428 | 144,853 | Net Sales | 464,078 | 500,181 | 570,935 |
| 68,996 | 77,345 | Cost of Goods Sold | 253,806 | 257,861 | 340,568 |
| 24,292 | 22,505 | Marketing & Advertising | 69,800 | 63,500 | 97,276 |
| 10,288 | 11,187 | Research & Medical, I | 32,340 | 31,919 | 41,110 |
| 1,392 | 1,161 | Administration | 5,513 | 9,623 | 5,526 |
| 5,422 | 9,545 | Distribution and Royalties | 25,271 | 30,121 | 29,726 |
| 3,251 | 262 | Other, I | 10,340 | 21,924 | 13,792 |
| (20,213) | 22,848 | Contribution III | 67,008 | 85,233 | 42,937 |
| 148 | 141 | Research & Medical, II | 846 | 800 | 598 |
| - | - | Other, II | - | - | - |
| 1,061 | 1,071 | OPINA Restructuring Costs | 4,941 | 6,716 | 4,269 |
| (21,422) | 21,636 | Operating Income (Loss) | 61,221 | 77,717 | 38,070 |
| (415) | (196) | Financial Income (Expense) | 563 | (1,577) | (1,660) |
| - | - | Holding Income (Expense) | - | - | - |
| - | - | Extraordinary Items | - | - | - |
| (21,837) | 21,440 | Profit Before Tax | 61,784 | 76,140 | 36,410 |
| 3,550 | 8,334 | Income Tax | 24,800 | 31,085 | 14,200 |
| (25,387) | 13,106 | Net Income After Tax | 36,984 | 45,055 | 22,210 |

Confidential

BOEH04600336

**ROXANE LABORATORIES, INC.**                                    RLI184

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**

The undersigned, being all of the members of the Board of Directors of ROXANE

LABORATORIES, INC., a Delaware corporation, do hereby adopt the following

resolutions by this our unanimous written consent pursuant to Section 141(f) of the

General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of

Directors, and with full force and effect as if adopted by the unanimous affirmative vote of

all of us at a duly constituted meeting:

RESOLVED that, this Corporation hereby grants power of attorney to
Denise Allec, an officer of this Corporation's affiliate, Boehringer Ingelheim
Pharmaceuticals, Inc., to sign on behalf of this Corporation, all information
technology agreements and related documents, and for this purpose approves the
form of Power of Attorney attached herewith as Annex 1.

RESOLVED that, the signing of all information technology agreements and
related documents heretofore by Denise Allec on behalf of this Corporation, are
hereby ratified, approved and confirmed.

RESOLVED that, the President of this Corporation may, at any time,
terminate the aforementioned power of attorney.

RESOLVED that, the President or any Vice President and the Secretary or
any Assistant Secretary of this Corporation be, and they hereby are, authorized and
empowered to do all acts, to sign and deliver all documents, and to do all such
other acts consistent with these resolutions as they may deem necessary or
advisable in order to effectuate the foregoing resolutions.

This instrument may be signed in one or more counterparts all of which taken

together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the

16th    day of   November   , 2000.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

Confidential                                                          BOEH04600337

RLI184

**ROXANE LABORATORIES, INC.**

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

> RESOLVED that, this Corporation hereby grants power of attorney to Denise Allec, an officer of this Corporation's affiliate, Boehringer Ingelheim Pharmaceuticals, Inc., to sign on behalf of this Corporation, all information technology agreements and related documents, and for this purpose approves the form of Power of Attorney attached herewith as Annex 1.

> RESOLVED that, the signing of all information technology agreements and related documents heretofore by Denise Allec on behalf of this Corporation, are hereby ratified, approved and confirmed.

> RESOLVED that, the President of this Corporation may, at any time, terminate the aforementioned power of attorney.

> RESOLVED that, the President or any Vice President and the Secretary or any Assistant Secretary of this Corporation be, and they hereby are, authorized and empowered to do all acts, to sign and deliver all documents, and to do all such other acts consistent with these resolutions as they may deem necessary or advisable in order to effectuate the foregoing resolutions.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the 16th day of November , 2000.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

BOEH04600338

RLI184

**Annex 1**

**POWER OF ATTORNEY**

ROXANE LABORATORIES, INC. hereby grants power of attorney to Denise Allec, an officer of our affiliate, Boehringer Ingelheim Pharmaceuticals, Inc. whose office is located at 900 Ridgebury Road, Ridgefield, CT  06877 to sign, on its behalf, all information technology agreements and related documents.  This power of attorney is in full force and effect until terminated by the below stated corporation.

Signed and sealed this _____ day of _____, 2000.

**ROXANE LABORATORIES, INC.**

By: _____

ATTEST:

By: _____

CORPORATE SEAL

*Subscribed and sworn to before me*
*this _____ day of _____, 2000.*

_____
*Notary Public*

*Notary Seal*

2

Confidential

BOEH04600339

RLI192

**ROXANE LABORATORIES, INC.**

**UNANIMOUS WRITTEN CONSENT OF DIRECTORS**

The undersigned, being all of the members of the Board of Directors of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, in lieu of a meeting of said Board of Directors for the year 2001, and with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted annual meeting:

RESOLVED that, the year-end closing for 2000 be, and it hereby is, approved and the Balance Sheet and Profit and Loss Statement of this Corporation as of December 31, 2000 be, and they hereby are, ratified and adopted in the form attached.

RESOLVED that, effective June 1, 2001, John Swartz be, and he hereby is, removed as an Assistant Secretary of this Corporation.

RESOLVED that, effective June 1, 2001, the following named persons be, and they hereby are, appointed officers of this Corporation, each to serve as such during the pleasure of this Board of Directors in the capacity or capacities set forth opposite his name:

| | |
|---|---|
| Mr. Werner Gerstenberg | Chairman of the Board |
| Mr. Werner Gerstenberg | President and Chief Operating Officer |
| Mr. Peter Dickinson | Vice President - Operations |
| Ursula B. Bartels, Esq. | Secretary |
| Mr. Holger Huels | Treasurer |
| Alan C. Davis, Esq. | Assistant Secretary |
| Judy Orinski | Assistant Secretary |
| Frank A. Pomer, Esq. | Assistant Secretary |
| Robert P. Raymond, Ph.D., J.D. | Assistant Secretary |

Confidential

BOEH04600363

**RLI192**

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the  12th  , day of  July  , 2001.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

- 2 -

RLI192con

Confidential                                                                                   BOEH04600364

**RLI192**

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   12th   , day of       July       , 2001.

_____
Werner Gerstenberg

_____
Sheldon Beadle

_____
Walter Poerschmann

- 2 -

RLI192con.doc

Confidential                                                                BOEH04600365

**RLI192**

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   12th   , day of   July   , 2001.

_____
Werner Gerstenberg


_____
Sheldon Berkle

_____
Walter Poerschmann

- 2 -

BOEH04600366

# ROXANE LABORATORIES, INC.

## STATEMENT OF INCOME

Thousands U.S.$

| | Target 2000 | Actual 2000 |
|---|---|---|
| Net Sales | 561,684 | 632,007 |
| Cost of Goods Sold | 348,816 | 366,071 |
| Marketing & Advertising | 79,658 | 70,212 |
| Research & Medical, I | 45,830 | 45,530 |
| Administration | 5,543 | 13,660 |
| Distribution and Royalties | 30,681 | 31,507 |
| All Other, I | 13,792 | 25,135 |
| Contribution III | 37,364 | 79,892 |
| Research & Medical, II | 598 | - |
| All Other, II | 4,269 | 8,963 |
| Operating Income (Loss) | 32,497 | 70,929 |
| Financial Income (Expense) | (1,660) | (1,366) |
| Holding Income (Expense) | - | - |
| Extraordinary Items | - | - |
| Profit Before Tax | 30,837 | 69,563 |
| Income Tax | 10,427 | 27,238 |
| Net Income After Tax | 20,410 | 42,325 |

Confidential

# ROXANE LABORATORIES, INC.

## STATEMENT OF FINANCIAL POSITION

Thousands U.S.$

| Actual YTD Feb-01 | | Target 2000 | Actual 2000 | Budget 2001 |
|---|---|---|---|---|
| | **Assets** | | | |
| (708) | Cash | - | - | - |
| 70,439 | Trade Accounts Receivable | 62,000 | 87,419 | 41,136 |
| 172,591 | Receivable from Affiliates | | - | |
| (297) | Short-Term Advances to Affiliates | - | 41,324 | 25,808 |
| 75 | Prepaid Expenses | | 137 | |
| 100,158 | Inventories | 78,000 | 86,483 | 90,358 |
| 342,258 | Total Current Assets | 140,000 | 215,363 | 157,302 |
| 13,825 | Intangible Assets | 14,420 | 14,418 | 10,861 |
| 0 | Investment in Affiliates | - | - | - |
| 129,610 | Property, Plant and Equipment | 137,634 | 132,414 | 130,733 |
| 16,445 | Other Assets | 42,193 | 23,643 | 20,700 |
| 502,138 | Total Assets | 334,247 | 385,838 | 319,596 |
| | **Liabilities** | | | |
| 168,503 | Accounts Payable & Accrued Liabilities | 51,991 | 116,171 | 76,342 |
| 1,839 | Payables to Banks | 1,879 | 2,134 | 4,631 |
| 35,419 | Accrued Taxes | 12,000 | 28,805 | 9,000 |
| 59,741 | Payables to Affiliates | - | 10,453 | 12,000 |
| - | Loans from Affiliates | 54,000 | - | - |
| 265,502 | Total Liabilities | 119,870 | 157,563 | 101,973 |
| | **Stockholder's Equity** | | | |
| 19 | Capital Stock | 19 | 19 | 19 |
| 8,735 | Additional Paid-In Capital | 8,735 | 8,735 | 8,735 |
| 227,882 | Retained Earnings | 205,623 | 219,521 | 208,869 |
| 236,636 | Total Stockholder's Equity | 214,377 | 228,275 | 217,623 |
| 502,138 | Total Liabilities & Stockholder's Equity | 334,247 | 385,838 | 319,596 |

Confidential

BOEH04600368

RLI194

## ROXANE LABORATORIES, INC.

## UNANIMOUS WRITTEN CONSENT OF DIRECTORS

The undersigned, being all of the members of the Board of ROXANE LABORATORIES, INC., a Delaware corporation, do hereby adopt the following resolutions by this our unanimous written consent without a meeting pursuant to Section 141(f) of the General Corporation law of the State of Delaware, with full force and effect as if adopted by the unanimous affirmative vote of all of us at a duly constituted meeting:

RESOLVED that, this Corporation be, and it hereby is authorized to sell to Elan Pharma International Limited ("Elan") all of its rights and title to market, distribute and sell certain of its Pain/Palliative Care products, as set forth below, under the terms and conditions of a certain Asset Purchase Agreement for an amount of U.S. $200 Million to be paid by Elan over a four (4) year period.

DURACLON® (Clonidine Hydrochloride Injection) 100 ug/mL and 500ug/mL

ORAMORPH® SR (Morphine Sulfate) Sustained Release Tablets 15 mg, 30 mg, 60 mg and 100 mg

ROXICODONE™ Tablets (Oxycodone HC1 Tablets USP) 5 mg, 15 mg and 30 mg

ROXICODONE ™ Oral Solution (Oxycodone HC1 Oral Solution USP) 5 mg/5 mL

Oxycodone *Intensol*™ (Oxycodone HC1 Oral Solution, Concentrate) 15 mg/0.75 mL (currently marketed as ROXICODONE™ INTENSOL™) 20 mg/mL

ROXANOL™ Morphine Sulfate (Immediate Release) Oral Solution (Concentrate) 20 mg per mL

ROXANOL™ Morphine Sulfate (Immediate Release) Oral Solution (Concentrate) 20 mg per mL (Tinted Flavored)

ROXANOL 100™ Morphine Sulfate Oral Solution (Concentrate) 100 mg per 5 mL

Confidential

RLI194

IT IS FURTHER

RESOLVED, that this Corporation be, and it hereby is, authorized to enter into with Elan Pharma International Limited an Interim Distribution Services Agreement and an Interim Regulatory Services Agreement for services related to the aforementioned products to be provided for a period not to exceed beyond March 31, 2002.

RESOLVED that, this Corporation be, and it hereby is, authorized to enter into a Manufacturing Agreement with Elan Pharma International Limited for the continued manufacture of the aforementioned products until manufacturing can be transferred to an Elan facility, for a period not to exceed three (3) years.

RESOLVED that, this Corporation be, and it hereby is, authorized to enter into a Trademark Agreement with Elan Pharma International Limited for the sale and transfer of all of its rights and title to the following trademarks:

ORAMORPH®
ROXICODONE™
ROXANOL™
Pain Institute™
Palliative Care™
Palcare™
PCL™

RESOLVED that, the President or any Vice President and the Secretary of this Corporation be, and they hereby are, authorized and empowered, in the name and on behalf of this Corporation to do all acts, to sign and deliver all documents, and to do all such other acts as they may deem necessary or advisable in order to effectuate the foregoing resolutions.

RESOLVED that, the actions of the officers and employees of the Corporation taken heretofore in connection with effectuating the foregoing resolutions are in all respects approved, ratified and confirmed.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

RLI194con

Confidential                                                                    BOEH04600370

**RLI194**

RESOLVED that, the actions of the officers and employees of the Corporation taken heretofore in connection with effectuating the foregoing resolutions are in all respects approved, ratified and confirmed.

This instrument may be signed in one or more counterparts all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, we have duly signed this instrument effective as of the   28th   day of   September   , 2001.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

-2-

Confidential                                                      BOEH04600371

**RLI194**

IN WITNESS WHEREOF, we have duly signed this instrument effective as of

the  28th     day of   September  , 2001.

_____
Werner Gerstenberg

_____
Sheldon Berkle

_____
Walter Poerschmann

-3-

RLI194con

Confidential

BOEH04600372