# Exhibit A

No. GV3-03079

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| *ex rel.* | § | |
| VEN-A-CARE OF THE | § | |
| FLORIDA KEYS, INC. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| ROXANE LABORATORIES, INC., | § | |
| BOEHRINGER INGELHEIM | § | |
| PHARMACEUTICALS, INC., BEN | § | |
| VENUE LABORATORIES, INC., *and* | § | |
| BOEHRINGER INGELHEIM | § | |
| CORPORATION | § | |
| | § | |
| *Defendants.* | § | 201st JUDICIAL DISTRICT |

## STATE OF TEXAS' THIRD AMENDED PETITION

TO THE HONORABLE JUDGE OF THE COURT:

The State of Texas, by and through the Attorney General of Texas, Greg Abbott, brings this cause of action. These claims are asserted pursuant to the Texas Medicaid Fraud Prevention Act, V.T.C.A. Human Resources Code Chapter 36 ("the Act" or "TMFPA") and common law. Pursuant to § 36.107(a) of the Act, the State of Texas has primary responsibility for prosecuting this action. Private Person Plaintiff/Relator Ven-A-Care of the Florida Keys, Inc. ("VAC" or "Ven-A-Care") originally provided information to the State of Texas which is the basis for this suit and is included as a named party plaintiff in this case.

## I. DISCOVERY CONTROL PLAN

1.1    Plaintiff, the State of Texas, designates this case as a Level 3 case requiring a discovery control plan tailored to the circumstances of this specific suit.

## II. DEFENDANTS

The Defendants complained of and sued in this action are:

2.1     Roxane Laboratories, Inc. ("Roxane") is a corporation organized under the laws of Delaware with its principal offices in Columbus, Ohio, and is a subsidiary of Boehringer Ingelheim Corporation.  At all times material to this civil action, Roxane has transacted business in the State of Texas by, including but not limited to, selling and distributing to purchasers in the State of Texas pharmaceutical products that are the subject of this action, but does not maintain a regular place of business in this state or a designated agent for service of process.

2.2     Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") is a corporation organized under the laws of Delaware with its principal offices in Ridgefield, Connecticut, and is a subsidiary of Boehringer Ingelheim Corporation.  BIPI does not maintain a regular place of business in this state, but may be served with process by service upon its registered agent,  CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.  At all times material to this civil action, BIPI has transacted business in the State of Texas by, including but not limited to, selling, marketing, and/or distributing to purchasers in the State of Texas pharmaceutical products that are the subject of this action.

2.3     Ben Venue Laboratories, Inc. ("Ben Venue") is a corporation organized under the laws of Delaware with its principal offices in Bedford, Ohio, and is a subsidiary of Boehringer Ingelheim Corporation.  Ben Venue does not maintain a regular place of business in this state nor does it maintain a registered agent for service of process.  At all times material to this civil action, Ben Venue has transacted business in the State of Texas by, including but not limited to, selling, marketing, and/or distributing to purchasers in the State of Texas pharmaceutical products that are the subject of this action.  The management, supervision, control, reporting and financial exchanges by and between Ben Venue, BIPI, and Roxane are inextricably intertwined and justify the exercise of personal jurisdiction over this Defendant.

2.4     Boehringer Ingelheim Corporation ("Boehringer") is a corporation organized under the laws of Nevada with its principal offices in Ridgefield, Connecticut, and is the parent company

of Roxane, BIPI, and Ben Venue. Boehringer does not maintain a regular place of business in this state nor does it maintain a registered agent for service of process. At all times material to this civil action, Boehringer and its subsidiaries have transacted business in the State of Texas by, including but not limited to, selling and distributing to purchasers in the State of Texas pharmaceutical products that are the subject of this action. The management, supervision, control, reporting and financial exchanges by and between Boehringer and its subsidiaries, BIPI, Roxane and Ben Venue are inextricably intertwined and justify the exercise of personal jurisdiction over this Defendant.

## III.  RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

3.1     The Defendants are sometimes referred to herein collectively as the "Defendants." Any and all acts alleged herein to have been committed by any of the Defendants were committed by said Defendants' officers, directors, employees, representatives or agents who at all times acted on behalf of their respective Defendant(s).

3.2     The Defendants are related entities sharing common elements of management, finances, control, supervision, and reporting and thus are mutually, jointly, and severally liable under legal theories of respondeat superior, and the past, present and continuing relations and dealings by and between these related entities are so inextricably intertwined that for purposes of this suit, some or all of them should be considered as a single entity at law and equity.

## IV.  PRELIMINARY STATEMENT AND NATURE OF THE ACTION

4.1     This is an action under the common law and the Texas Medicaid Fraud Prevention Act (hereinafter sometimes referred to as "TMFPA," or "the Act") for restitution, damages, pre-judgment interest, civil penalties of not less than $1,000.00 or more than $10,000.00 for each unlawful act, two (2) times the value of the payments, and recovery of costs, attorneys' fees, and

expenses of the Attorney General of the State of Texas and Ven-A-Care against Defendants, as well as any and all other monetary amounts as may be allowed at law or in equity under Section 36.052.

4.2     The Defendants knowingly or intentionally made false representations of prices and costs for certain of their drugs directly or indirectly to the Texas Medicaid Program. The Defendants knew that the Texas Medicaid Program intended, and was required, to base its payments of the drug reimbursement claims submitted by physicians, pharmacies, and other providers on estimates of acquisition costs incurred by such providers for the drugs, and that the Texas Medicaid Program would rely on the price and cost representations of the Defendants in estimating providers' acquisition costs. The Texas Medicaid Program relied on the false statements and inflated drug prices and costs reported by Defendants, which caused its estimates of provider acquisition costs for the drugs to be excessive. Thus, the Texas Medicaid Program was defrauded by the Defendants into paying reimbursement for the Defendants' drugs in excessive amounts.

4.3     In the course of the Plaintiffs' investigation of the facts of this case, the following drugs have been identified as ones for which the Defendants reported false and misleading prices to, or concealed the true prices from, the State:

Acetaminophen, Acetylcysteine, Albuterol, Atrovent, Azathioprine, Butorphanol, Calcium Carbonate, Calcitrol, Chlorpromazine, Codeine Sulfate, Cromolyn, Cyclophosphamide, Dexamethasone, Diclofenac Sodium, Digoxin, Diphenoxylate/Atropine, Furosemide, Haloperidol, Hydromorphone, Hydroxyurea, Ipecac Syrup, Ipratroprium Bromide, Isoetharine Solution, Lactulose, Leucovoran Calcium, Lidocaine, Lithium, Lorazepam, Marinol, Megestrol, Meperidine, Methadone, Methotrexate, Metoclopramide, Mexiletine HCL, Mirtazapine, Morphine Sulphate, Naproxen, Nefazodone, Oramorph, Oxycodone, Prednisone, Propantheline, Propranolol, Pseudoephedrine,

Ranitidine, Roxanol, Roxicet, Roxicodone, Roxiprin, Sodium Chloride, Sodium Polystyrene Sulfonate, Theophylline, Tamoxifen, Torecan, and Triazolam.

A list of the specific National Drug Code (NDC) numbers for these drugs is attached as Exhibit "A" and incorporated by reference herein. The drugs listed on Exhibit "A" shall be referred to hereafter as the "Identified Drugs." During the discovery phase of this case, Plaintiffs may discover evidence of additional drugs for which Defendants misrepresented prices to the State. In such an event, those drugs will be added to Exhibit "A" by amendment of this petition.

4.4     The Defendants marketed their drugs to wholesalers, distributors, group purchasing organizations, pharmacies, home health care companies, and other customers, through financial inducements, including but not limited to: false price markups, the difference between acquisition cost and reimbursement (the "Spread"), discounts, rebates, chargebacks, free goods, and other financial incentives. The Defendants marketed their products directly through sales visits and presentations, telemarketing, and other forms of contact with their customers, as well as indirectly through various pharmacy inventory software designed to identify those products with the largest spread. The Defendants thus wrongfully exploited and defrauded the Texas Medicaid Program by inducing it to pay claims to pharmacies at grossly inflated amounts that far exceeded a reimbursement based upon a reasonable estimate of acquisition costs of those Defendants' pharmaceuticals to pharmacies, wholesalers and distributors.

4.5     In September 1996, Defendants BIPI and Roxane, by and through its multisource marketing manager, Judy Waterer, orchestrated a marketing scheme involving two of the Identified Drugs in this case, Atrovent and Ipratropium Bromide, which resulted in price misrepresentations to the Texas Medicaid Program by the Defendants. Anticipating the imminent introduction by Dey Labs, Inc., of the first generic competitor for Roxane's

Ipratropium Bromide, Roxane enticed preferred home health care customers to enter into contracts to purchase large quantities of Ipratropium Bromide by offering those customers Defendant BIPI's Atrovent as a substitute for Roxane's Ipratropium Bromide at very low generic prices. The purpose of this scheme was to capture as much of the rapidly expanding home health care market as possible before Dey Labs launched its competitive generic Ipratropium Bromide product. The home health care market was extremely important to the success of Roxane's Ipratropium Bromide, and that market was historically dominated by Dey Labs. Roxane knew that offering BIPI's Atrovent as a substitute for Roxane's Ipratropium Bromide at very low generic prices without disclosing that fact to government reimbursement programs, such as the Texas Medicaid Program, would ensure purchasers excessive reimbursement from those programs and thus would provide a tremendous financial incentive for home health care customers to purchase Ipratropium Bromide through Roxane in the short term. After all, BIPI's Atrovent and Roxane's generic Ipratropium Bromide are the identical pharmaceutical product, manufactured under the same New Drug Application in the same production facilities, with the only differences being the packaging and the pricing. Roxane also appreciated that this substitution offering would expand and strengthen its long-term contractual relationships with those home health customers.

The relationship of BIPI, Roxane, and their common parent, BIC, enabled them to implement this scheme. Without the interrelationship of those three corporate defendants, this particular scheme would not have been possible.

Home health care providers participating in the Texas Medicaid program were among those who purchased BIPI's Atrovent at low generic prices. The Defendants concealed from the Texas Medicaid program the fact that Atrovent was being sold at these heavily discounted prices

to the home health care market, when in fact, it was being sold at these low generic prices in extremely large quantities throughout Texas. This concealment of the low generic price at which Atrovent was being sold to Texas home health care providers caused the Texas Medicaid program to make excessive reimbursement payments to those providers.

## V. JURISDICTION & VENUE

5.1     Jurisdiction over the subject matter is founded in part upon the TMFPA, which prohibits, and provides exclusive remedies to redress, the conduct of the Defendants and which provides for this action to be brought by the State of Texas and by Private Person Plaintiff, Ven-A-Care.

5.2     Venue is proper in Travis County pursuant to TEX. HUM. RES. CODE § 36.052(d) in that many of the unlawful acts committed by the Defendants were committed in Travis County including the making of false statements and misrepresentations of material fact to the State of Texas, its departments, agencies, instrumentalities, contractors, and to the Texas Medicaid Program.

5.3     Additionally, venue is proper against these Defendants in Travis County as all or a substantial portion of the events giving rise to the instant claims occurred in Travis County. TEX. CIV. PRAC. & REM. CODE §§ 15.001, 15.002 (Vernon 2001).

## VI. BACKGROUND: HOW PHARMACEUTICAL CLAIMS ARE PAID UNDER THE TEXAS MEDICAID PROGRAM

6.1     The Texas Medicaid Program reimburses eligible providers, including pharmacies, for the approved pharmaceuticals they provide to Medicaid recipients. The Texas Vendor Drug

Program (TVDP) of the Texas Health and Human Services Commission ("THHSC")[1] administers this program. Providers can obtain reimbursement through the TVDP only for products listed on the Texas Drug Code Index. 25 TEX. ADMIN. CODE § 35.201. To have its particular pharmaceutical products listed on the index, a drug company or manufacturer must file and have approved an application for its products with the Texas Department of Health. 25 TEX. ADMIN. CODE § 35.801. Section 2 of the application requires the manufacturer to report, for each drug submitted, the suggested wholesale price to pharmacies, the price at which the drug is sold to wholesalers and/or distributors, the direct price to pharmacies, the price to chain warehouses and the price at which the drug is sold to any other special purchasing groups. Additionally, the form contains a separate question in section 4 inquiring whether the drug company sells the drug to wholesalers and/or distributors. The application requires that a manufacturer certify that the information it has provided is correct and that it will provide correct information regarding subsequent changes in pricing of the product within 15 days of such changes occurring. Further, in approving the application, THHSC expressly requires that supplemental updated price information be timely provided.

6.2     THHSC bases its reimbursement schedule on the prices reported by the manufacturer on the application, and on subsequent price changes supplied by the manufacturer. Reimbursement to a pharmaceutical provider (i.e., a pharmacy or physician) is based on THHSC's best estimate of acquisition cost, referred to as ("EAC"). 1 TEX. ADMIN. CODE § 355.8541 (1).

6.3     When a manufacturer reports false pricing information to or conceals true pricing information from TVDP, the agency's calculation of estimated acquisition cost ("EAC") is inflated

---

[1]     The Vendor Drug Program was transferred from the Texas Department of Health to the Texas Health and Human Services Commission.

and thus the reimbursement schedule is also inflated. The manufacturer uses the inflated reimbursements for its drugs as a marketing device to induce providers to purchase its drugs instead of competing drugs for which the reimbursement is lower. These circumstances result in drug reimbursement overpayments to drug providers by the State.

## VII.  ACTIONABLE CONDUCT OF DEFENDANTS

7.1     The Defendants knew that by reporting false prices and costs for the Identified Drugs and concealing and failing to report truthful pricing information they would cause the Texas Medicaid Program to overestimate acquisition costs for their drugs and thus to pay excessive reimbursement to Medicaid providers for their drugs. Notwithstanding this knowledge, the Defendants reported false or misleading price and cost information and concealed and failed to disclose price reductions and truthful pricing information about the Identified Drugs to accomplish that result; i.e., to cause the Texas Medicaid program to pay excessive reimbursements for the Identified Drugs. The Defendants' actions created "spreads" between the acquisition costs of the Identified Drugs and the amounts reimbursed for those drugs by Medicaid. These "spreads" financially benefitted the Defendants' Texas Medicaid provider customers and thus induced their customers to purchase the Defendants' drugs over those of drug manufacturers that report their prices truthfully, resulting in Defendants gaining higher sales and greater market share.

7.2     The Defendants were fully capable of making truthful representations about prices and costs of the Identified Drugs. To the Plaintiffs' knowledge, they did so when it was economically beneficial to them, such as when they reported Average Manufacturers' Prices and Best Prices to the federal government under the Medicaid rebate program mandated by the Omnibus Budget Reconciliation Act of 1990 ("OBRA'90"), and/or when they reported pricing information for Medicaid reimbursement purposes for certain of their drugs that did not face generic or other

competition.

7.3     Notwithstanding the Defendants' knowledge that they were required to provide truthful price information vital to Texas Medicaid's ability to estimate provider acquisition costs, the Defendants knowingly or intentionally reported false price information about the Identified Drugs and concealed or failed to disclose truthful price information.

7.4     In one or more of the following ways, the Defendants acted knowingly or intentionally in making false statements and misrepresentations of material fact to the Texas Medicaid program, and in concealing from or failing to disclose the truth to the Texas Medicaid program:

A.     Reporting false prices and concealing true prices on initial applications to have the Identified Drugs covered by Texas Medicaid;

B.     Concealing or otherwise failing to disclose decreases in the prices or costs of the Identified Drugs;

C.     Concealing or otherwise failing to disclose transactions, practices, and terms of sale, such as discounts, rebates, off-invoice pricing, free goods, cash payments, chargebacks, and other financial incentives and inducements, that decrease the cost, and thereby the price, of the Identified Drugs to purchasers;

D.     Reporting that the price or cost of an Identified Drug was increasing when it in fact was increasing in a lesser proportion, or remained the same, or was decreasing;

E.     Reporting that the price or cost of an Identified Drug was the same when in fact it was falling; and

F.     Reporting that an Identified Drug was not sold to a specific sector or segment

of the market (also known as a "class of trade") when in fact it was, regularly and in significant quantities, and concealing or failing to disclose such facts.

## VIII. THE DEFENDANTS' ACTIONS CONSTITUTE "UNLAWFUL ACTS" AND VIOLATE THE TEXAS MEDICAID FRAUD PREVENTION ACT

8.1     Defendants have repeatedly and continuously violated the TMFPA. The Act specifies 10 separate acts that are declared to be unlawful. Each of the Defendants committed at least three of those unlawful acts on numerous occasions:

(a)  The Act prohibits a person from knowingly or intentionally making or causing to be made a false statement or misrepresentation of material fact on an application for a contract, benefit, or payment under the Medicaid Program; or that is intended to be used to determine a person's eligibility for a payment under the Medicaid Program. TEX. HUM. RES. CODE § 36.002(1).

(b)  The Act prohibits a person from knowingly or intentionally concealing or failing to disclose an event that permits a person to receive a benefit or payment that is not authorized, or that permits a person to receive a benefit or payment that is greater than the benefit or payment that is authorized. TEX. HUM. RES. CODE §36.002(2).

(c) The Act prohibits a person from knowingly or intentionally making or causing to be made a false statement or misrepresentation of fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid Program. TEX. HUM. RES. CODE § 36.002(4).

8.2     In the TMFPA, The Texas Legislature has specified acts and omissions that are illegal. Those acts and ommissions give rise to civil and criminal liability and penalties that can be

imposed against drug manufacturers such as the Defendants, who voluntarily chose to place their respective products into the Texas Medicaid Vendor Drug Program and thus are subject to and bound by the laws, rules, regulations, and agreements pertinent thereto. The TMFPA provides no statutory defenses and contains no references to common law defenses or allowances for mitigation and none of these are allowed.

## IX. THE DEFENDANTS' SELECTIVE REPORTING OF FALSE PRICE INFORMATION REVEALS THAT THEY ACTED KNOWINGLY

9.1     The Defendants were motivated to misrepresent price information when they could profit from such conduct by making one of their drugs more attractive to providers through the promise of inflated reimbursement. This opportunity arose routinely in the marketing of the Identified Drugs, where creating the largest "spread" worked its illegal magic against the competition. In contrast, when a Defendant stood to gain no marketing advantage for other drugs by creating an inflated reimbursement, it typically reported prices that were generally and currently available in the marketplace rather than the kind of false pricing information it reported for its Identified Drugs. This contrasting behavior reveals that the Defendants know the difference between misleading and non-misleading pricing data; that non-misleading pricing data was available to them; that they chose whether to report misleading or non-misleading pricing data as to particular drugs; that they had a motive to report misleading pricing data on the Identified Drugs; and that their reporting of false information was no accident, but was planned. Therefore, evidence that a Defendant routinely reported non-misleading prices for certain other drugs and misleading prices for the Identified Drugs is relevant and admissible:

1.     Under T.R.E. 401, as tending to prove a fact of consequence to the determination of the action, i.e., that the Defendants acted knowingly, and not by accident or mistake,

in reporting false and misleading pricing information on the Identified Drugs;

2.     Under T.R.E. 404 (b) as proof of motive, opportunity, intent, plan, knowledge and absence of mistake or accident;

3.     Under T.R.E. 406 as proof of routine practice to consistently act illegally when profit resulted, yet legally when the profit motive was absent or less compelling, and to show that a defendant was able to comply with the law, did know how to report prices that were not misleading, and did so when the motive to act illegally was lessened or missing; and

4.     Under T.M.R.P.A. § 36.052 (b)(1) through (5) for assessment of a civil penalty.

## X. COMMON LAW FRAUD

10.1     The allegations in paragraphs I through IX are incorporated herein as if set forth in their entirety. Alternatively, the Defendants are liable to the State for common law fraud in an amount that exceeds the minimum jurisdictional limits of this Court, as set forth more specifically in paragraph XI.

## XI. DAMAGES

11.1     Pursuant to the terms of the Medicaid Fraud Prevention Act, each Defendant is liable to the State of Texas for the value of any payment . . . provided under the Medicaid program, directly or indirectly, as a result of the unlawful act. TEX. HUM. RES. CODE § 36.052(1). Additionally, each Defendant is liable for interest on the value of the payment, civil penalties ranging from $1,000 to $10,000 for each unlawful act, two times the value of the payment, and all fees, expenses, and costs reasonably incurred. *Id*. at (2), (3), & (4) *and* § 36.007.

Plaintiff and Relator invoke in the broadest sense all relief possible at law or in equity

under § 36.052, whether specified in this pleading or not. Plaintiffs will seek an amount as civil penalties which will be justified and appropriate under the facts relevant to this issue and under the laws as determined by the Court.

11.2    Alternatively, the Defendants are liable to the State for common law fraud in an amount that exceeds the minimum jurisdictional limits of this Court, including, but not limited to actual damages, pre-judgment interest, attorney fees, and punitive damages in an amount not to exceed the amounts set forth as follows:

As monetary damages for the alternative claims based upon common law fraud and as a T.R.C.P. Rule 48 alternative measure of damages under the TMFPA the Plaintiffs seek the following elements of monetary damages:

A.    The difference between the reimbursement amount paid by the Texas Medicaid program for the Identified Drugs, on the one hand and the amount that would have been paid but for false price/cost reporting, on the other hand;

B.    Two times the amount found by the trier of fact in section A, as per TMFPA § 36.052(a)(4);

C.    Prejudgment interest;

D.    A civil penalty to be assessed by the trier of fact using the guidelines at TMFPA § 36.052 (b) (1)-(5) inclusive; and

E.    Reasonable and necessary attorney fees, costs and expenses of litigation of the State and Relator. This amount includes fees to be set and awarded by the Court pursuant to TMFPA § 36.110(c).

11.3    The TMFPA is a statute of absolute strict liability. There are no defenses available for any violation of its provisions and in particular any violation of any part of § 36.002

of the TMFPA.  Likewise, according to the Texas Supreme Court, as a matter of law the defenses

of estoppel, laches and limitations are not available against the State of Texas, as a Sovereign.

*State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993).

11.4    In order for the trier of fact to be apprised of relevant and probative information

upon which to assess a finding of an appropriate civil penalty, the jury will need to receive and

hear evidence relating to TMFPA § 36.052 (b) (1)-(4) inclusive.  Specifically the trier of fact

must receive evidence on the following topics:

(1)    previous and other violations of the law;

(2)    the seriousness of the unlawful act, "…including the nature, circumstances,

extent, and gravity of the unlawful act;"

(3)    whether the health and safety of the public was threatened; and

(4)    whether the person acted in bad faith when engaged in the conduct that formed the

basis of the unlawful act.

## XII.  JURY DEMAND

12.1    The State respectfully requests a trial by jury pursuant to Tex. R. Civ. P. 216.

## XIII.  PRAYER

13.1    The State asks that it recover from the Defendants restitution of overpayments, statutory

additional double damages, pre-judgment interest, attorneys fees, costs, and expenses and civil

penalties as provided in TEX. HUM. RES. CODE ANN., Chapter 36, or actual damages, pre-

judgment interest, attorney fees and punitive damages under common law.  Plaintiff and Relator

invoke in the broadest sense all relief possible at law or equity under Texas Human Resources

Code, Chapter 36 without qualification or limitation.  The State asks that upon trial of this case

that judgment be entered in favor of the State and against the Defendants in the amounts set forth

herein. The Relator further asks that it be awarded its costs and expenses; a reasonable attorney

fee; and the maximum Relator's share provided for under the TMFPA.  The State prays for such

other and further relief to which it may show itself entitled either at law or in equity.

> Respectfully submitted,
> GREG ABBOTT
> Attorney General of Texas
>
> BARRY McBEE
> First Assistant Attorney General
>
> EDWARD D. BURBACH
> Deputy Attorney General for Litigation
>
> MARK TOBEY
> Chief, Antitrust & Civil Medicaid Fraud Division
>
> LOWELL A. KEIG
> Deputy Chief, Antitrust & Civil Medicaid Fraud Division
>
> PATRICK J. O'CONNELL
> Assistant Attorney General
> Chief, Civil Medicaid Fraud Section
> State Bar No. 15179900
>
> CYNTHIA O'KEEFFE
> Assistant Attorney General
> State Bar No. 08505000
> P. O. Box 12548
> Austin, Texas 78711-2548
> (512) 936-1304
> (512) 499-0712 [Fax]
>
> JOSEPH V. CRAWFORD
> Wright & Greenhill, P.C.
> State Bar No. 05030600
> 221 West 6th Street, Suite 1800
> Austin, Texas 78701-3495
> (512) 476-4600
> FAX:  (512) 476-5382
>
> ATTORNEYS FOR THE STATE OF TEXAS

_John E Clark (by CJA)_

JOHN E. CLARK
State Bar No: 04287000
Goode Casseb Jones
Riklin Choate & Watson
2122 North Main Avenue
P.O. Box 120480
San Antonio, Texas 78212-9680
Telephone: 210-733-6030
Facsimile: 210-733-0330

JAMES J. BREEN
Florida Bar No. 297178
The Breen Law Firm, P.A.
P.O. Box 297470
Pembroke Pines, Florida 33029-7470
Phone: (954) 499-1171
Facsimile: (954) 499-1173

C. JARRETT ANDERSON
State Bar No. 00796124
Anderson LLC
1300 Guadalupe, Suite 103
Austin, Texas 78701
Phone: (512) 469-9191
Facsimile: (512) 478-1023

SUSAN SCHNEIDER THOMAS
Pennsylvania Bar No. 32799
GARY AZORSKY
Pennsylvania Bar No. 38924
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4636
ATTORNEYS FOR RELATOR,
VEN-A-CARE OF THE FLORIDA KEYS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Third Amended Original Petition** was sent via hand delivery on this the ___ day of November, 2004, to the following:

Mr. Steve McConnico
Scott, Douglas & McConnico, LLP
600 Congress Avenue, 15th Floor
Austin, Texas 78701-2589
COUNSEL FOR ROXANE LABORATORIES, INC.,
BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
BEN VENUE LABORATORIES, INC., and BOEHRINGER
INGELHEIM CORPORATION

CYNTHIA O'KEEFFE

# EXHIBIT A
## IDENTIFIED DRUGS

| NDC | Description |
|---|---|
| 00054002025 | LITHIUM ER 450MG TABLET |
| 00054004544 | IPRATROPIUM 0.03% SPRAY |
| 00054004641 | IPRATROPIUM 0.06% SPRAY |
| 00054170125 | TORECAN 5MG/ML AMPUL |
| 00054224725 | HYDROXYUREA 500MG CAPSULE |
| 00054252725 | LITHIUM CARBONATE 300MG CAP |
| 00054252731 | LITHIUM CARBONATE 300MG CAP |
| 00054253125 | LITHIUM CARBONATE 600MG CAP |
| 00054260111 | MARINOL 2.5MG CAPSULE |
| 00054260211 | MARINOL 5MG CAPSULE |
| 00054260311 | MARINOL 10MG CAPSULE |
| 00054261625 | MEXILETINE HCL 150MG CAPSULE |
| 00054261725 | MEXILETINE HCL 200MG CAPSULE |
| 00054261825 | MEXILETINE HCL 250MG CAPSULE |
| 00054279525 | OXYCODONE W/APAP 5/500 CAP |
| 00054302502 | ACETYLCYSTEINE 10% VIAL |
| 00054302602 | ACETYLCYSTEINE 20% VIAL |
| 00054302702 | ACETYLCYSTEINE 10% VIAL |
| 00054302802 | ACETYLCYSTEINE 20% VIAL |
| 00054309036 | BUTORPHANOL 10MG/ML SPRAY |
| 00054311763 | CALCIUM CARB 500MG/5ML SUSP |
| 00054312041 | CALCITRIOL 1MCG/ML SOLUTION |
| 00054314658 | CHLORPROMAZINE 100MG/ML CON |
| 00054317644 | DEXAMETHASONE 0.5MG/0.5ML DROP |
| 00054319246 | DIGOXIN 0.05MG/ML ELIXIR |
| 00054319446 | DIPHENOXYLATE/ATROPINE LIQ |
| 00054329863 | FUROSEMIDE 40MG/5ML SOLN |
| 00054429725 | FUROSEMIDE 20MG TABLET |
| 00054429925 | FUROSEMIDE 40MG TABLET |
| 00054430125 | FUROSEMIDE 80MG TABLET |
| 00054430129 | FUROSEMIDE 80MG TABLET |
| 00054329446 | FUROSEMIDE 10MG/ML SOLN |
| 00054329450 | FUROSEMIDE 10MG/ML SOLN |
| 00054429731 | FUROSEMIDE 20MG TABLET |
| 00054429931 | FUROSEMIDE 40 MG TABLET |
| 00054335050 | HALOPERIDOL LAC 2MG/ML CONC |
| 00054340840 | ISOETHARINE 1% SOLUTION |
| 00054340844 | ISOETHARINE 1% SOLUTION |
| 00054348658 | LACTULOSE 10GM/15ML SOLUTION |
| 00054348668 | LACTULOSE 10GM/15ML SYRUP |
| 00054350049 | LIDOCAINE 2% VISCOUS SOLN |
| 00054350547 | LIDOCAINE HCL 4% SOLUTION |
| 00054352763 | LITHIUM CIT 8MEQ/5ML SYRUP |
| 00054353244 | LORAZEPAM 2MG/ML ORAL CONC. |
| 00054354258 | MEGESTROL ACET 40MG/ML SUSP |
| 00054354563 | MEPERIDINE 50MG/5ML SYRUP |
| 00054355344 | METHADONE INTENSOL 10MG/ML |
| 00054355563 | METHADONE 5MG/5ML SOLUTION |
| 00054355663 | METHADONE 10MG/5ML SOLUTION |
| 00054356363 | METOCLOPRAMIDE 5MG/5ML SYR |
| 00054356444 | METOCLOPRAMIDE 10MG/ML SOLN |
| 00054363063 | NAPROXEN 125MG/5ML SUSPEN |
| 00054368344 | ROXICODONE INTENSOL 20MG/ML |
| 00054372144 | PREDNISONE 5MG/ML SOLUTION |
| 00054372250 | PREDNISONE 5MG/5ML SOLUTION |
| 00054372763 | PROPRANOLOL 20MG/5ML SOLN |
| 00054373063 | PROPRANOLOL 40MG/5ML SOLN |

| NDC | Description |
|---|---|
| 00054375144 | ROXANOL 20MG/ML SOLUTION |
| 00054375150 | ROXANOL 20MG/ML SOLUTION |
| 00054375158 | ROXANOL 100MG/5ML SOLUTION |
| 00054377444 | ROXANOL-T 20MG/ML SOLUTION |
| 00054377450 | ROXANOL-T 20MG/ML SOLUTION |
| 00054378563 | MORPHINE SULF 10MG/5ML SOLN |
| 00054378663 | MORPHINE SULF 20MG/5ML SOLN |
| 00054380563 | SPS 15GM/60ML SUSPENSION |
| 00054384163 | THEOPHYLLINE 80MG/15ML SOLN |
| 00054384168 | THEOPHYLLINE 80MG/15ML SOLN |
| 00054401431 | ACETAMINOPHEN 325MG TABLET |
| 00054408425 | AZATHIOPRINE 50MG TABLET |
| 00054412025 | CALCIUM CARBONATE 1.25GM TB |
| 00054412925 | CYCLOPHOSPHAMIDE 25MG TAB |
| 00054413025 | CYCLOPHOSPHAMIDE 50MG TAB |
| 00054415625 | CODEINE SULFATE 30MG TABLET |
| 00054415725 | CODEINE SULFATE 60MG TABLET |
| 00054417925 | DEXAMETHASONE 0.5MG TABLET |
| 00054417931 | DEXAMETHASONE 0.5MG TABLET |
| 00054418025 | DEXAMETHASONE 0.75MG TABLET |
| 00054418125 | DEXAMETHASONE 1MG TABLET |
| 00054418225 | DEXAMETHASONE 1.5MG TABLET |
| 00054418325 | DEXAMETHASONE 2MG TABLET |
| 00054418425 | DEXAMETHASONE 4MG TABLET |
| 00054418625 | DEXAMETHASONE 6MG TABLET |
| 00054422121 | DICLOFENAC SODIUM 50MG SA TAB |
| 00054422125 | DICLOFENAC SODIUM 50MG SA TAB |
| 00054422131 | DICLOFENAC SODIUM 50MG SA TAB |
| 00054422221 | DICLOFENAC SODIUM 75MG SA TAB |
| 00054422225 | DICLOFENAC SODIUM 75MG SA TAB |
| 00054422231 | DICLOFENAC SODIUM 75MG SA TAB |
| 00054422321 | DICLOFENAC SODIUM 25MG SA TAB |
| 00054422325 | DICLOFENAC SODIUM 25MG SA TAB |
| 00054434225 | HALOPERIDOL 0.5MG TABLET |
| 00054434325 | HALOPERIDOL 1MG TABLET |
| 00054434331 | HALOPERIDOL 1MG TABLET |
| 00054434425 | HALOPERIDOL 2MG TABLET |
| 00054434431 | HALOPERIDOL 2MG TABLET |
| 00054434525 | HALOPERIDOL 5MG TABLET |
| 00054434531 | HALOPERIDOL 5MG TABLET |
| 00054434625 | HALOPERIDOL 10MG TABLET |
| 00054434631 | HALOPERIDOL 10MG TABLET |
| 00054434725 | HALOPERIDOL 20MG TABLET |
| 00054437025 | HYDROMORPHONE HCL 8MG TAB |
| 00054439225 | HYDROMORPHONE 2MG TABLET |
| 00054439425 | HYDROMORPHONE 4MG TABLET |
| 00054449613 | LEUCOVORIN CALCIUM 5MG TAB |
| 00054449625 | LEUCOVORIN CALCIUM 5MG TAB |
| 00054449705 | LEUCOVORIN CALCIUM 10MG TAB |
| 00054449710 | LEUCOVORIN CALCIUM 10MG TAB |
| 00054449805 | LEUCOVORIN CALCIUM 15MG TAB |
| 00054449810 | LEUCOVORIN CALCIUM 15MG TAB |
| 00054449911 | LEUCOVORIN CALCIUM 25MG TAB |
| 00054452725 | LITHIUM CARBONATE 300MG TAB |
| 00054452731 | LITHIUM CARBONATE 300MG TAB |
| 00054453825 | METHADONE HCL 40MG DISKET |

| NDC | Description |
|-----|-------------|
| 00054455015 | METHOTREXATE 2.5MG TABLET |
| 00054455025 | METHOTREXATE 2.5MG TABLET |
| 00054457125 | METHADONE HCL 10MG TABLET |
| 00054458225 | MORPHINE SULFATE 15MG TAB |
| 00054458325 | MORPHINE SULFATE 30MG TAB |
| 00054459625 | MEPERIDINE 100MG TABLET |
| 00054460325 | MEGESTROL 20MG TABLET |
| 00054460425 | MEGESTROL 40MG TABLET |
| 00054465025 | ROXICET 5/325 TABLET |
| 00054465029 | ROXICET 5/325 TABLET |
| 00054465325 | ROXIPRIN 4.88/325 TABLET |
| 00054465331 | ROXIPRIN 4.88/325 TABLET |
| 00054465725 | ROXICODONE 5MG TABLET |
| 00054465825 | ROXICODONE 15MG TABLET |
| 00054466525 | ROXICODONE 30MG TABLET |
| 00054467321 | NEFAZODONE HCL 150MG TABLET |
| 00054467713 | MIRTAZAPINE 30MG TABLET |
| 00054467813 | MIRTAZAPINE 45MG TABLET |
| 00054472125 | PROPANTHELINE 15MG TABLET |
| 00054472131 | PROPANTHELINE 15MG TABLET |
| 00054474125 | PREDNISONE 1MG TABLET |
| 00054474131 | PREDNISONE 1MG TABLET |
| 00054474325 | PSEUDOEPHEDRINE 30MG TABLET |
| 00054478425 | ROXICET 5/500 CAPLET |
| 00054479025 | ORAMORPH SR 15MG TABLET SA |
| 00054479225 | ORAMORPH SR 60MG TABLET SA |
| 00054479325 | ORAMORPH SR 100MG TABLET SA |
| 00054480519 | ORAMORPH SR 30MG TABLET SA |
| 00054480525 | ORAMORPH SR 30MG TABLET SA |
| 00054480527 | ORAMORPH SR 30MG TABLET SA |
| 00054483121 | TAMOXIFEN 10MG TABLET |
| 00054485321 | RANITIDINE 150MG TABLET |
| 00054485325 | RANITIDINE 150MG TABLET |
| 00054485329 | RANITIDINE 150MG TABLET |
| 00054485425 | RANITIDINE 300MG TABLET |
| 00054485806 | TRIAZOLAM 0.125MG TABLET |
| 00054485829 | TRIAZOLAM 0.125MG TABLET |
| 00054485906 | TRIAZOLAM 0.25MG TABLET |
| 00054485929 | TRIAZOLAM 0.25MG TABLET |
| 00054806311 | ALBUTEROL .83MG/ML SOLUTION |
| 00054806313 | ALBUTEROL .83MG/ML SOLUTION |
| 00054806321 | ALBUTEROL .83MG/ML SOLUTION |
| 00054816721 | CROMOLYN NEBULIZER SOLUTION |
| 00054816723 | CROMOLYN NEBULIZER SOLUTION |
| 00054840211 | IPRATROPIUM BR 0.02% SOLN |
| 00054840213 | IPRATROPIUM BR 0.02% SOLN |
| 00054842711 | IPECAC SYRUP |
| 00054877505 | ROXANOL 5MG SUPPOSITORY |
| 00054877605 | ROXANOL 10MG SUPPOSITORY |
| 00054877805 | ROXANOL 30MG SUPPOSITORY |
| 00054881025 | SODIUM CHLORIDE 0.9% VIAL-NEB. |
| 00597008062 | ATROVENT 0.02% SOLUTION |