# Exhibit C

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR
LEON COUNTY, FLORIDA

FILED

04 NOV -1  PM 5: 37

BOB INZER
CLERK CIRCUIT COURT
LEON COUNTY. FLORIDA

THE STATE OF FLORIDA )
)
ex rel. )
)
VEN-A-CARE OF THE )
FLORIDA KEYS, INC., )
a Florida Corporation, by and )
through its principal )
officers and directors, )
ZACHARY T. BENTLEY and )
T. MARK JONES, )
)
        Plaintiffs )
)     CIVIL ACTION NO. 98-3032A
v. )
)
BOEHRINGER INGELHEIM )
CORPORATION;  DEY, INC.; )
DEY, L.P.; EMD )
PHARMACEUTICALS INC.; )
LIPHA, S.A.; MERCK, KGaA; )
MERCK-LIPHA, S.A.; )
SCHERING CORPORATION; )
SCHERING-PLOUGH CORPORATION;)
ROXANE LABORATORIES, INC.; and )
WARRICK PHARMACEUTICALS )
CORPORATION, )
)
        Defendants. )
_____)

## NOTICE OF SERVICE

TO:  ROXANE LABORATORIES, INC.
      1809 Wilson Road
      Columbus, Ohio 43216-6532

     YOU ARE HEREBY NOTIFIED that the above named action has been filed

against you and served on the Florida Secretary of State pursuant to § 48.161, Florida

Statutes.  A copy of the process is attached as Exhibit A and incorporated by reference

FL 000002

in this Notice.

Respectfully submitted this 1st day of November, 2004.

> CHARLES J. CRIST, JR.
> ATTORNEY GENERAL
> STATE OF FLORIDA
>
> By: _Mary S. Mill_
> MARK S. THOMAS
> Florida Bar No. 0001716
> MARY S. MILLER
> Florida Bar No. 0780420
> Assistant Attorneys General
> Office of the Attorney General
> Medicaid Fraud Control Unit
> PL-01, The Capitol
> Tallahassee, Florida 32399-1050
> Telephone:   850-414-3600
> Facsimile:   850-410-2673

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to: Roxane Laboratories, Inc., 1809 Wilson Road, Columbus, Ohio, 43216-6532 **via certified United States Mail,** and Stephen E. McConnico, Esquire, Counsel for Roxane Laboratories, Inc., Scott, Douglass & McConnico, L.L.P., 600 Congress Avenue Austin, Texas 78701-3234; GARY AZORSKY, ESQ., Berger & Montague, P.C., 1622 Locust Street, Philadelphia, Pennsylvania 19103, Counsel for Ven-A-Care of the Florida Keys, Inc.; JOHN E. CLARK, ESQ., Goode, Casseb, Jones, Riklin, Choate & Watson 2122 North Main Avenue, P.O. Box 120480, San Antonio, Texas 78212-9680, Counsel for Ven-A-Care of the Florida Keys, Inc.; Dana G. Toole, Esquire, Dunlap & Toole, P.A., 2057 Delta Way, Tallahassee, Florida, 32303-4227; Christopher Palermo, Esquire, Kelley, Drye & Warren, LLP, 101 Park Avenue, New York, New York, 10178, Kelly Overstreet Johnson, Esquire, Broad and Cassel, 215 South Monroe Street, Suite 400, Tallahassee, Florida 32301, Crystal Talley, Esquire, John R. Therien, Esquire, John T. Montgomery, Esquire Ropes & Gray, LLC, One International Plaza, Boston, MA 02110-2624, and John McDonald, Esquire, Locke, Liddell & Sapp, L.L.C., 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201 via Certified United States Mail this 1st day of November, 2004.

> _Mary S. Mill_
> Attorney

IN THE COURT OF THE SECOND
JUDICIAL CIRCUIT IN AND FOR
LEON COUNTY, FLORIDA

THE STATE OF FLORIDA                )
                                    )
ex rel.                             )
                                    )
    VEN-A-CARE OF THE               )
    FLORIDA KEYS, INC.,             )
    a Florida Corporation, by and   )
    through its principal           )
    officers and directors,         )
    ZACHARY T. BENTLEY and          )
    T. MARK JONES,                  )
                                    )
                Plaintiffs          )
                                    )        CIVIL ACTION NO. 98-3032A
                                    )
v.                                  )
                                    )
BOEHRINGER INGELHEIM                )
CORPORATION;  DEY, INC.;            )
DEY, L.P.; EMD                      )
PHARMACEUTICALS INC.;               )
LIPHA, S.A.; MERCK, KGaA;           )
MERCK-LIPHA, S.A.;                  )
SCHERING CORPORATION;               )
SCHERING-PLOUGH CORPORATION;)
ROXANE LABORATORIES, INC.; and      )
WARRICK PHARMACEUTICALS             )
CORPORATION,                        )
                                    )
                Defendants.         )
_____)

## COMPLAINT

Plaintiff, the STATE OF FLORIDA, acting by and through its Attorney General,

Charles J. Crist, Jr., brings this cause of action against Defendants, BOEHRINGER

INGELHEIM CORPORATION, DEY, INC., DEY, L.P., EMD PHARMACEUTICALS,

INC., LIPHA, S.A., MERCK, KGaA, MERCK-LIPHA, S.A., SCHERING

CORPORATION, SCHERING-PLOUGH CORPORATION, ROXANE LABORATORIES, INC., and WARRICK PHARMACEUTICALS CORPORATION.

## I. INTRODUCTION

1.      This a civil action to recover damages in excess of Seventy Five Million Dollars ($75,000,000) plus all applicable civil penalties and other relief from Defendants for making or causing to be made, false or fraudulent statements, representations and claims to the State of Florida's Medicaid Program for the specified dispensed pharmaceuticals during the period on or before July 1, 1994 through the present. The specified pharmaceuticals at issue in this Complaint are attached as Exhibit "A."

2.      Plaintiffs seek recovery against Defendants pursuant to the Florida False Claims Act §§ 68.081, Fla.Stat., *et seq.* ("the Act"), and for common law fraud.

## II. JURISDICTION & VENUE

3.      This Court has jurisdiction of the causes of action set forth herein pursuant to the provisions of Art. V, § 20(3), Fla.Const., § 26.012, Fla.Stat., and §68.081 et seq., Fla. Stat.

4.      Venue is proper in Leon County pursuant to § 68.083(3), Fla.Stat.

## III. PARTIES

5.      The STATE OF FLORIDA, Office of the Attorney General, Department of Legal Affairs, is acting on behalf of the Florida Agency for Health Care Administration ("AHCA"), which administers the Florida Medicaid Program pursuant to § 409.902, Fla.Stat., and pursuant to the Attorney General's own authority under §§ 409.920 and 68.083, Fla.Stat.

6.    Private person Plaintiff/Relator VEN-A-CARE OF THE FLORIDA KEYS,
INC. ("Relator" or "Ven-A-Care") originally provided information to the STATE OF
FLORIDA which is the basis for this suit pursuant to § 68.083(3), Fla.Stat., and is
included as a named party Plaintiff in this case pursuant to the provisions of § 68.083(2)
and (3), Fla.Stat.

7.    Defendant DEY, INC., formerly known as Dey Laboratories, Inc., is a
corporation organized under the laws of the State of Delaware with its principal offices
in Napa, California.  DEY, INC. is the general partner of DEY, L.P., a limited partnership
organized and existing under the laws of the State of Delaware.  At all times material
hereto, all acts committed by or on behalf of DEY, INC. were also committed by or on
behalf of DEY, L.P., a limited partnership.  DEY, INC. and DEY L.P. are referred to
herein collectively as "Dey."  At all times material to this complaint, Dey has transacted
business in the State of Florida by, including but not limited to, manufacturing, selling
and distributing pharmaceutical products to purchasers in the State of Florida that are
the subject of this action.  The DEFENDANT EMD PHARMACEUTICALS, INC. ("EMD")
is a corporation whose headquarters are located in Durham, North Carolina.  EMD is
the sole shareholder of Dey.  DEFENDANT LIPHA, S.A. ("LIPHA") is a corporation
based in Lyon, France.  LIPHA is the sole shareholder of EMD.  DEFENDANT MERCK-
LIPHA, S.A. ("MERCK-LIPHA") is a corporation based in Lyon, France.  MERCK-LIPHA
is the sole shareholder of LIPHA.  DEFENDANT MERCK KGaA ("MERCK") is a
German company based in Darmstadt, Germany.  MERCK is the sole shareholder of
MERCK-LIPHA.  To the extent the acts of Dey at issue herein were performed by or
otherwise attributable to EMD, LIPHA, MERCK-LIPHA or MERCK, or to any subsidiary

or affiliate of any of these four defendants, then judgment should be entered against

EMD, LIPHA, MERCK-LIPHA or MERCK where appropriate.

8.      Defendant ROXANE LABORATORIES, INC. ("Roxane") is a corporation

organized under the laws of the State of Delaware with its principal offices in Columbus,

Ohio.  At all times material to this complaint, Roxane has transacted business in the

State of Florida by, including but not limited to, manufacturing, selling and distributing

pharmaceutical products to purchasers in the State of Florida that are the subject of this

action.  BOEHRINGER INGELHEIM CORPORATION ("BOEHRINGER"), a corporation

organized under the laws of Nevada, with its principal offices in Ridgefield, Connecticut

is the corporate parent of Roxane and to the extent that the acts of Roxane that are at

issue herein were performed by or otherwise attributable to BOEHRINGER, or any

subsidiary or affiliate of it, then judgment should be entered against BOEHRINGER

where appropriate.

9.      Defendant WARRICK PHARMACEUTICALS CORPORATION ("Warrick")

is a corporation organized under the laws of the State of Delaware with its principal

offices in Reno, Nevada, although on information and belief its principal offices are

actually in the State of New Jersey.  At all times material to this complaint, Warrick has

transacted business in the State of Florida by, including but not limited to,

manufacturing, selling and distributing pharmaceutical products to purchasers in the

State of Florida that are the subject of this action.  Defendant SCHERING-PLOUGH

CORPORATION ("Schering-Plough") is a corporation organized under the laws of the

State of New Jersey with its principal offices in Madison, New Jersey, and is the

corporate parent of Warrick.  Schering-Plough conducts much of its pharmaceutical

Page 4 of 21

business through "Schering Laboratories," described by it as "the U.S. pharmaceutical arm of Schering-Plough Corporation." To the extent that the acts of Warrick at issue herein were performed by or otherwise attributable to Schering-Plough, or any subsidiary or affiliate of it, then judgment should be entered against Schering-Plough Corporation where appropriate.

10. Defendant SCHERING CORPORATION ("Schering") is a corporation organized under the laws of the State of New Jersey with its principal offices in Kenilworth, New Jersey.[1] Schering maintains an office in Florida at 13900 N.W. 57th Court, Miami Lakes, Florida 33014. At all times material to this complaint, Schering has transacted business in the State of Florida by, including but not limited to, manufacturing, selling and distributing pharmaceutical products to purchasers in the State of Florida that are the subject of this action. Schering-Plough is the corporate parent of Schering. To the extent the acts of Schering were performed by, or were otherwise attributable to, Schering-Plough, Warrick or any subsidiary or affiliate of it, then judgment should be entered against Schering-Plough where appropriate.

11. Whenever reference is made in this complaint to any representation, act or transaction of any of the Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents or representatives, while actively engaged in the course and scope of their employment, did or authorized such representations, acts, or transactions on behalf of said Defendants.

---

[1] Schering is listed as also maintaining a corporate address at 12125 Moya Boulevard, Reno, Nevada 89506-2600, the same corporate address claimed by Warrick.

## IV.  THE FLORIDA MEDICAID PHARMACEUTICAL PROGRAM

12.     The Medicaid Program provides funding for health care for indigent individuals pursuant to § 409.901, Fla.Stat., *et seq.*

13.     The State of Florida Medicaid Program is administered by AHCA pursuant to § 409.902, Fla.Stat.

14.     The Office of the Attorney General conducts a program of Medicaid fraud control through its Medicaid Fraud Control Unit.

15.     Prescribed drug services are a benefit for Medicaid recipients under the Florida Medicaid Program pursuant to § 409.906(20), Fla.Stat.

16.     The ultimate providers of pharmaceuticals to Medicaid recipients, including physicians, hospitals, nursing homes, and pharmacies, purchase drugs from manufacturers or wholesalers[2] and in turn dispense or administer the drugs to Medicaid recipients.

17.     The providers submit claims for reimbursement of their costs incurred in purchasing and dispensing the drugs to AHCA's "fiscal agent" under a Medicaid provider contract pursuant to § 409.907, Fla.Stat.  The fiscal agent accomplishes claims adjudication under contract with AHCA on behalf of AHCA.

18.     AHCA's current reimbursement to the provider of the drug under the pharmacy program is based on AHCA's best estimate of acquisition cost ("EAC") to the provider for the drug.  The EAC is the lower of the "Average Wholesale Price" ("AWP") less 13.25 percent or "Wholesaler Acquisition Cost" ("WAC") plus 7 percent.

---

[2] Including re-packagers and re-labelers.

Page 6 of 21

19.     AHCA has established other safeguards to ensure it is a prudent purchaser of drugs.  Therefore, AHCA currently reimburses the least of:

a).  "Average Wholesale Price" ("AWP") less 13.25 percent, plus a dispensing fee;

b).  "Wholesaler Acquisition Cost" ("WAC") plus 7 percent, plus a dispensing fee;

c).  the "Federal Upper Limit" ("FUL"), plus a dispensing fee;

d).  the "State Maximum Allowable Cost" ("SMAC"), plus a dispensing fee; or

e).  the provider's "usual and customary charge" to the public.

See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-2, July 2001, as incorporated into law at Rule 59G-4.250, Fla.Admin.Code; See also, §409.908(14), Fla. Stat.

20.     The Florida Medicaid dispensing fee is currently $4.23 per prescription for all providers except nursing homes, whose dispensing fee is $4.73 per prescription. See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-3, supra.  An additional $0.015 per unit is paid to pharmacies who prepare in-house unit dose packaging of tablets or capsules. Id.

21.     Pharmaceuticals are identified on Florida Medicaid claims and the Florida Medicaid computer system drug file by means of unique identification numbers commonly known as National Drug Codes ("NDC"s).  See Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-1, supra.

22.    The AHCA fiscal agent reimburses pharmaceutical provider claims based on the current Florida Medicaid computer system drug file prices, and such prices are derived from pricing information, including AWPs and WACs, supplied and updated weekly by the First DataBank, Inc. ("First DataBank") National Drug Data file electronic service.  *See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-3, *supra*.  First DataBank, a division of The Hearst Corporation, is a nationally-recognized company that specializes in gathering and disseminating prescription drug pricing information, including AWPs and WACs,  to public and private health insurers.

23.    AHCA's fiscal agent has at all times relevant to this complaint contracted with First DataBank to provide National Drug Data file prices to establish Florida Medicaid provider drug reimbursement.  The Florida Medicaid Program has utilized First DataBank as its primary reference source and has utilized representations of AWP and WAC supplied by First DataBank to establish provider reimbursement prices.

24.    The manufacturers of the drugs directly supply AWP and WAC on a continual basis to First DataBank.  First DataBank uses the AWPs and WACs, supplied by the manufacturers, to compile the National Drug Data file price list, which in turn is utilized by the Florida Medicaid Program for its computer system drug file prices.

25.    The Florida Medicaid Program cannot reimburse a provider for any drug not listed in the National Drug Data file.  *See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-2, *supra*.

## V.  SUMMARY OF DEFENDANTS' FRAUD SCHEME

26.     The Florida Medicaid Program reimburses providers for the drugs they dispense to Medicaid recipients at EAC, estimated acquisition cost.  Florida Medicaid determines EAC by using the AWPs and WACs supplied by pharmaceutical manufacturers to First DataBank.  The Defendants knowingly misrepresented AWP and WAC prices solely for the purpose of illicit financial gain.

27.     The Defendants knowingly and intentionally made false representations of prices and costs for certain of their inhalation drugs to the Florida Medicaid Program. The Defendant drug manufacturers reported, and caused First DataBank to report, prices for the drugs at issue that substantially exceeded the market prices known to the Defendants from their own business information.  The Defendants knew that reporting false, inflated drug prices and costs for the drugs at issue would cause the Florida Medicaid Program's estimates of the acquisition costs of those drugs to substantially exceed any reasonable estimates of the acquisition costs of those drugs.

28.     The Defendants knowingly and intentionally created a price spread for several of their inhalation drugs by supplying to First DataBank prices for those drugs far in excess of the prices for which the drugs were sold.  Defendants intended the Florida Medicaid Program to use those false, inflated prices in setting provider reimbursement rates, and in fact the Florida Medicaid Program did use those false inflated prices to set Medicaid reimbursement rates.  As a direct result of its utilization of the false prices supplied by the Defendants, the Medicaid Program paid provider claims for the dispensed drugs at issue in amounts far in excess of the true and correct prices for the specified drugs.

29.   After creating price spreads for their drugs, Defendants enlarged those spreads by reducing acquisition costs to providers without disclosing the reductions to First DataBank or to the Florida Medicaid Program.  Price reductions were accomplished by giving providers financial incentives such as discounts, rebates, off-invoice pricing, free goods, and cash payments.  Defendants knowingly utilized these financial incentives to reduce the effective acquisition prices of their drugs, while knowingly reporting AWPs and WACs to First DataBank that were not reflective of the price reductions.

30.   After maximizing the spread on their drugs, Defendants engaged in a tactic commonly referred to as "marketing the spread," for the purpose of increasing their market share and profits.  Providers were induced to buy the drugs at issue because the Medicaid reimbursements for such drugs, unlike otherwise-identical competing drugs with little or no price spread, far exceeded the providers' real acquisition cost.  The Defendants actively marketed the spread through sales presentations, telemarketing, advertising, and various pharmacy inventory software, specifically to increase their market share and earnings.

31.   The Defendants sold the drugs at issue to providers, typically retail pharmacies, with full knowledge that the profits realized upon distribution of such drugs to Medicaid recipients far exceeded any commercially reasonable profits that would otherwise be obtained had accurate AWPs and WACs been reported by the defendants.

32.   The goals of this fraudulent business plan include: maximized demand for the drugs at issue, domination of the inhalant market, and illegal over-reimbursement of

Medicaid provider claims for the drugs at issue.

33.    Defendants' knowing misrepresentation of drug prices to First DataBank caused each and every claim paid by the Florida Medicaid Program for the drugs at issue to be a false claim under § 68.081, Fla.Stat., *et seq.*[3]  The Florida Medicaid Program is also entitled to be reimbursed for all payments made in excess of what the State of Florida Medicaid Program should have paid in pharmacy claims for Defendant's drugs in accordance with the legal remedies for common law fraud.

34.    The manufacturers virtually control what price information the payers, including the Florida Medicaid Program, can obtain.  Defendants have taken undue advantage of the resulting disparity in status, power and knowledge by knowingly reporting prices for Medicaid reimbursement purposes that bear no relationship whatsoever to actual prices in the marketplace.

35.    The Defendants were in a position to mislead the Florida Medicaid Program, in part, because other drug manufacturers typically report truthful prices for brand drugs, not the subject of this action.  The Defendants knew that the Florida Medicaid Program uses manufacturer-supplied prices to reimburse providers for the approximately 60,000 NDCs in the Florida Medicaid computer system drug file.  The Defendants knew that AHCA, with a handful of pharmacy employees, would never have the manufacturers' insider knowledge, resources, or opportunity requisite to discover and remedy the Defendants' drug pricing fraud.

_____

[3]Plaintiffs estimate that in excess of 2,000,000 claims were submitted by Defendants from 7/1/94 through 12/31/02.  Plaintiffs reserve the right to revise this estimate after discovery.

36.     The Defendants were fully capable of making accurate representations about AWP and WAC of the specified pharmaceuticals.

## VI.  THE ACTIONABLE CONDUCT OF DEFENDANTS

37.     The Defendants acted knowingly in presenting or causing to be presented to the Florida Medicaid Program false claims for payment or approval in violation of § 68.082(2)(a), Fla.Stat. by:

a).     Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b).     Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

c).     Concealing or failing to disclose that the prices of specified pharmaceuticals were decreasing by reporting price reductions much smaller than true price reductions;

d).     Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs, that decreased the effective prices of the specified pharmaceuticals;

e).     Reporting that the price or cost of a specified drug was increasing, when in fact it was increasing in a lesser proportion, remained the same, or was decreasing; and

f).     Reporting that the price or cost of a specified drug was the same when in fact it was falling.

38.     The Defendants acted knowingly in making, using, or causing to be made false records or statements to get claims paid or approved by the Florida Medicaid

Page 12 of 21

Program in violation of § 68.082(2)(b), Fla.Stat. by:

a).   Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b).   Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

c).   Concealing or failing to disclose that the prices of specified pharmaceuticals were decreasing by reporting price reductions much smaller than true price reductions; and

d).   Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs, that decreased the effective prices of the specified pharmaceuticals;

e).   Reporting that the price or cost of a specified drug was increasing, when in fact it was increasing in a lesser proportion, remained the same, or was decreasing; and

f).   Reporting that the price or cost of a specified drugs was the same when in fact it was falling.

39.   The Defendants conspired to submit false claims or deceive the Florida Medicaid Program for the purpose of getting false or fraudulent claims allowed or paid in violation of § 68.082(2)(c), Fla.Stat. by:

a).   Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b).   Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

Page 13 of 21

c). Concealing or failing to disclose that the prices of specified pharmaceuticals were decreasing by reporting price reductions much smaller than true price reductions;

d). Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs, that decreased the effective prices of the specified pharmaceuticals;

e). Conspiring to market, promote, or otherwise use illegal price spreads in order to maximize the number and dollar volume of false claims presented to the Florida Medicaid Program for reimbursement;

f). Reporting that the price or cost of a specified drug was increasing, when in fact it was increasing in a lesser proportion, remained the same or was decreasing; and

g). Reporting that the price or cost of a specified drug was the same when in fact it was falling.

40. The impact of the Defendants' pricing misrepresentations for the pharmaceuticals described in the attached "Exhibit A" was enormous. The following charts illustrate with particularity the per unit spread available to the Relator Ven-A-Care for Defendants' inhalation drugs since 1994:[4]

---

[4] As a very small infusion pharmacy, Ven-A-Care often did not receive the lowest prices available to volume purchasers; therefore, these representations of spread are especially conservative.

DEFENDANT DEY
ALBUTEROL SULFATE 0.083%
3 ml, 25s
NDC # 49502-0697-03

| YEAR | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" | PER UNIT PRICE PAID BY RELATOR | SPREAD IN $ | SPREAD IN % |
|---|---|---|---|---|
| 1994 | $ 20.27 | $ 8.50 | $ 11.77 | 139 % |
| 1995 | $ 26.48 | $ 8.50 | $ 17.98 | 212 % |
| 1996 | $ 26.48 | $ 7.75 | $ 18.73 | 242 % |
| 1997 | $ 26.48 | $ 7.75 | $ 18.73 | 242 % |
| 1998 | $ 26.48 | $ 9.50 | $ 16.98 | 179 % |

DEFENDANT DEY
ACETYLCYSTEINE SOLUTION 10%
4 ml, 12s
NDC # 49502-0181-04

| YEAR | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" | PER UNIT PRICE PAID BY RELATOR | SPREAD IN $ | SPREAD IN % |
|---|---|---|---|---|
| 1996 | $ 27.60 | $ 12.48 | $ 15.12 | 121 % |

DEFENDANT DEY
ACETYLCYSTEINE SOLUTION 20%
4 ml, 12s
NDC # 49502-0182-04

| YEAR | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" | PER UNIT PRICE PAID BY RELATOR | SPREAD IN $ | SPREAD IN % |
|---|---|---|---|---|
| 1994 | $ 33.25 | $ 12.60 | $ 20.65 | 164 % |
| 1995 | $ 33.25 | $ 12.60 | $ 20.65 | 164 % |

| 1996 | $ 33.25 | $ 12.60 | $ 20.65 | 164 % |
|------|---------|---------|---------|-------|
| 1997 | $ 33.25 | $ 12.60 | $ 20.65 | 164 % |
| 1998 | $ 33.25 | $ 12.60 | $ 20.65 | 164 % |

**DEFENDANT DEY**
**CROMOLYN SODIUM USP**
**20 mg/2 ml, 60s**
**NDC # 49502-0689-02**

| YEAR | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" | PER UNIT PRICE PAID BY RELATOR | SPREAD IN $ | SPREAD IN % |
|------|------------------------------------------------------------------------|---------------------------------|-------------|-------------|
| 1994 | $ 36.59 | $ 24.50 | $ 12.09 | 49 % |
| 1995 | $ 36.59 | $ 24.50 | $ 12.09 | 49 % |
| 1996 | $ 36.59 | $ 18.15 | $ 18.44 | 102 % |
| 1997 | $ 36.59 | $ 18.15 | $ 18.44 | 102 % |
| 1998 | $ 36.59 | $ 18.15 | $ 18.44 | 102 % |

**DEFENDANT WARRICK**
**ALBUTEROL SULFATE 0.083%**
**3 ml, 25s**
**NDC # 59930-1500-08**

| YEAR | FLORIDA MEDICAID PER UNIT REIMBURSEMENT BASED ON FALSE REPORTED "WAC" | PER UNIT PRICE PAID BY RELATOR | SPREAD IN $ | SPREAD IN % |
|------|------------------------------------------------------------------------|---------------------------------|-------------|-------------|
| 1994 | $ 26.92 | | | |
| 1995 | $ 26.92 | $ 15.79 | $ 11.13 | 71 % |
| 1996 | $ 26.92 | $ 12.00 | $ 14.92 | 124 % |
| 1997 | $ 26.92 | $ 7.99 | $ 18.93 | 237 % |
| 1998 | $ 26.48 | $ 6.88 | $19.60 | 285 % |