# Exhibit I

**COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO**

A0409296

STATE OF OHIO,                                              :

                Plaintiff,           :          CIVIL CASE NO.: _____

      v.                                            :          COMPLAINT

ROXANE LABORATORIES, INC.,                  :          <u>JURY TRIAL DEMANDED</u>

<u>Agent for Service of Process</u>:                     :
CT Corporation System
1300 East Ninth Street                             :
Cleveland, OH 44114                               :

And                                                              :

BOEHRINGER INGELHEIM                     :
PHARMACEUTICALS, INC.,
                             :
<u>Agent for Service of Process</u>:                     :
CT Corporation System
1300 East Ninth Street                             :
Cleveland, OH 44114                               :

And                                                              :

BEN VENUE LABORATORIES, INC.,           :

<u>Agent for Service of Process</u>:                     :
CT Corporation System
36 East Seventh Street                            :
Suite 2400                                                 :
Cincinnati, OH 45202                              :

And                                                              :

COPY FILED
CLERK OF COURTS
HAMILTON COUNTY

NOV 17 2004

GREGORY HARTMANN
COMMON PLEAS COURTS

OH 000002

**BOEHRINGER INGELHEIM CORP.,**                    :
                                                   :
**Agent for Service of Process:**                  :
**CT Corporation System**                          :
**1300 East Ninth Street**                         :
**Cleveland, OH 44114**                            :
                                                   :
           **Defendants.**          :

---

The State of Ohio, by Jim Petro, Attorney General of the State of Ohio, for its Complaint against Defendants alleges as follows:

## INTRODUCTION

1.    Defendants have defrauded elderly and disabled Ohio Medicare beneficiaries, the Ohio Medicaid program administered by the Ohio Department of Job and Family Services ("ODJFS") and other prescription drug programs by knowingly issuing false and misleading wholesale price and acquisition data in order to induce the State, ODJFS, Ohio agencies and instrumentalities and Ohio citizens to pay excessive, inflated prices for prescription drugs.

2.    Defendants were aware that by entering into secret supply agreements they have been able to prevent ODJFS, other Ohio agencies and instrumentalities and Ohio citizens from discovering, through reasonable diligence, the true wholesale prices that Defendants charge for prescription drugs. Defendants have fraudulently concealed actual wholesale prices in order to induce reliance on the false wholesale prices that Defendants periodically and regularly report to the public. Defendants are aware that ODJFS and other state agencies and instrumentalities relied, and continue to rely, in setting prescription drug reimbursement rates on information disseminated by Defendants which purports to be true average wholesale prices and wholesale acquisition costs. In fact, however, the average wholesale price and acquisition cost data provided by Defendants to compilers and publishers of such information is, and at all relevant times has been, false and

2

misleading, resulting in published average wholesale prices and published wholesale acquisition costs being far higher than the wholesale prices actually charged by Defendants.

3.     Plaintiff the State of Ohio (the "State"), by and through Ohio Attorney General Jim Petro, brings this action to recover amounts overpaid for prescription drugs under Ohio's Medicaid program and other state programs as a result of the fraudulent conduct of Defendants.  Plaintiff also seeks to recover overcharges paid in reimbursement of prescription drugs through the Ohio Disability Assistance Medical Program as a result of reliance on fraudulent average wholesale price and wholesale acquisition cost data disseminated by Defendants.  Plaintiff also seeks to recover the amounts by which it has been overcharged in paying the 20% Medicare prescription drug co-payment for Ohio citizens who are eligible for both Medicare and Medicaid.  In addition, pursuant to the Ohio Consumer Sales Practices Act, Attorney General Jim Petro seeks to recover the amounts that Ohio citizens who are Medicare beneficiaries, but not entitled to Medicaid, overpaid in 20% Medicare co-payments for prescription drugs.  Plaintiff further seeks to enjoin Defendants from continuing to perpetrate their drug-pricing fraud, to require Defendants to publicly disclose true wholesale prices, and to impose civil penalties against Defendants for their fraudulent practices.

4.     Fair and honest drug pricing is a matter of great importance to the State of Ohio and its citizens.  Expenditures by the State and its agencies and instrumentalities for prescription drug reimbursement have increased dramatically in the past several years as a result of Defendants' fraudulent pricing scheme.  Ohio spends well over a billion dollars each year on prescription drugs under Ohio's Medicaid program.  Ohio Medicaid prescription drug expenditures increased 23% from 2000 to 2001.  While prescription drug reimbursement was only 12% of total Ohio Medicaid expenditures in 2000, the increase in prescription drug expenditures accounted for 21% of the increase in total Ohio Medicaid expenditures from 2000 to 2001.

**PARTIES**

5.      Ohio Attorney General Jim Petro is authorized under Ohio Revised Code Sections 109.02, 109.16 and 1345.07, statutes providing for certain of the causes of action herein, and common law to bring this action on behalf of the State, ODJFS, Ohio agencies and instrumentalities and Ohio citizens to enforce Ohio's laws, including, but not limited to, laws concerning consumer protection, prevention of kickbacks, deceptive sales practices, Medicaid fraud, false statements used to obtain public funds and the common law.

6.      Defendant Roxane Laboratories, Inc. ("Roxane") is a Delaware corporation with its principal place of business in Columbus, Ohio. Roxane is a subsidiary of Defendant Boehringer Ingelheim Corporation. Roxane is in the business of manufacturing, marketing and selling prescription pharmaceuticals that are reimbursed by state Medicaid agencies nationwide, including Ohio's Department of Job and Family Services. Numerous pharmaceuticals are sold by Roxane and reimbursed by ODJFS under Ohio's Medicaid program, including, but not limited to, ipratropium bromide, meperidine hydrochloride, lithium carbonate, methadone hydrochloride, morphine sulfate, acetaminophen oxycodone hydrochloride, prednisone, dexamethasone, leucovorin calcium, methotrexate sodium, ranitidine hydrochloride, albuterol sulfate, cromolyn sodium, azathioprine, dronabinol, cyclophosphamide, diclofenac sodium, furosemide, haloperidol lactate, haloperidol, hydromorphone hydrochloride, hydroxyurea, lorazepam, megestrol acetate, metoclopramide hydrochloride, mexiletine hydrochloride, butorphanol tartrate, calcium carbonate, chlorpromazine hydrochloride, digoxin, atropine sulfate, lactulose, lidocaine hydrochloride, lithium citrate, theophylline, codeine sulfate, nefazodone hydrochloride, mirtazapine, propantheline bromide, pseudoephedrine hydrochloride, tamoxifen citrate, triazolam, sodium chloride, isoetharine hydrochloride, roxicet, naproxen, propanolol hydrochloride, sodium polystyrene sulfonate,

thioridazine, oxycodone hydrochloride and acetylcysteine. ODJFS has been overcharged millions of dollars for reimbursement of such drugs manufactured by Roxane.

7.     Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") is a Delaware corporation with its principal place of business in Ridgefield, Connecticut. BIPI is a wholly-owned subsidiary of Boehringer Ingelheim Corporation. At all relevant times, BIPI distributed in Ohio pharmaceutical products manufactured by Roxane that are the subject of this action. On information and belief, management of Roxane is conducted by BIPI and/or Boehringer Ingelheim Corporation.

8.     Ben Venue Laboratories, Inc. ("Ben Venue") is a Delaware corporation with its principal place of business in Bedford, Ohio. Ben Venue is a subsidiary of Boehringer Ingelheim Corporation.   At all relevant times, Ben Venue marketed in Ohio pharmaceutical products manufactured by Roxane that are the subject of this action. Bedford Laboratories ("Bedford") is a division of Ben Venue with its principal place of business in Bedford, Ohio.   Bedford is in the business of manufacturing and distributing pharmaceutical products in Ohio and elsewhere.

9.     Boehringer Ingelheim Corporation ("BI") is a Nevada corporation with its principal place of business in Ridgefield, Connecticut.   BI is controlled by C.H. Boehringer Sohn of Germany. BI is the parent company of Roxane, BIPI and Ben Venue. The ownership, management, supervision, control, reporting and financial exchanges by and between all Defendants are inextricably intertwined.  At all relevant times, BI, on its own and by and through its subsidiaries Roxane, BIPI and Ben Venue, transacted business in Ohio, including, but not limited to, manufacturing, marketing, selling and distributing pharmaceutical products that are the subject of this litigation.   One or more of the Defendants has been investigated by the United States Department of Justice, the United States Department of Health and Human Services Office of

5

Inspector General and the United States House of Representatives Commerce Committee in connection with the conduct alleged herein.

## VENUE

10.     Venue is proper in Hamilton County under Civil Rule 3(B)(3) and 3(B)(11), because Plaintiff pays reimbursement under Medicaid for Defendants' prescription drugs dispensed in this County, the causes of action herein arose, in part, in this County, Plaintiff regularly and systematically conducts business in this County and the registered agent of Ben Venue Laboratories is located in this County.

## FACTUAL BACKGROUND

11.     The Ohio Medicaid program administered by ODJFS pays for medical benefits, including prescription drugs, for qualifying low-income and disabled Ohioans. The Ohio Medicaid program reimburses physicians and pharmacists for drugs prescribed for, and dispensed to, Medicaid recipients. Ohio Medicaid also pays the 20% co-payment for prescription drugs for Ohio Medicare beneficiaries who are qualified to receive Medicaid benefits.

12.     Reimbursement for prescription drugs under the Ohio Medicaid program is authorized by R.C. 5111.02. Pursuant to that statute, ODJFS has adopted a list of drugs which are covered without prior authorization. In determining which drugs will be included on the list, ODJFS considers information provided by prescription drug manufacturers regarding average wholesale price ("AWP") and wholesale acquisition cost ("WAC").

13.     Pursuant to state statutes and regulations, reimbursement under the Ohio Medicaid program for prescription drugs is limited in accordance with formulas based, in part, on the maximum allowable cost established for drugs. The maximum allowable cost for trade name drugs is based on estimated wholesale acquisition cost determined from price information provided by

6

pharmaceutical manufacturers and a pricing update service. Maximum reimbursement for such drugs under the Ohio Medicaid program was WAC plus 11% through April 30, 2002 and WAC plus 9% thereafter. For drugs as to which ODJFS cannot determine WAC, reimbursement is set at AWP minus 11.2% through April 30, 2002 and AWP minus 12.8% thereafter. For generic drugs for which ODJFS has established maximum allowable costs, reimbursement is based on the 65th percentile of the estimated acquisition cost of readily available generically equivalent drugs. In determining the estimated acquisition cost, ODJFS relies, in part, on published price information such as WAC. When a manufacturer reports false pricing information, or conceals true pricing information from ODJFS, the calculation of estimated acquisition cost is inflated, and thus the reimbursement schedule is also inflated. These circumstances result in drug reimbursement overpayments to drug providers by the State of Ohio. At all times relevant to this action, Defendants were aware of Ohio's Medicaid reimbursement formulas.

14.     Defendants provided to the State and ODJFS directly and/or through submission of reports to drug pricing publishing services what was purported to be genuine pricing data for Roxane products. This information was typically identified as the "Wholesale Acquisition Cost" ("WAC") and/or the "Average Wholesale Price" ("AWP") of particular products. Defendants intended the WAC to be understood by ODJFS as the average price paid by wholesalers to the manufacturer for prescription drugs. Defendants intended the AWP to be understood by state Medicaid agencies such as ODJFS as the average price charged by the drug manufacturer at wholesale to distributors and their largest commercial customers for prescription drugs. At all times relevant to this action, Defendants provided information on AWP and WAC prices for prescription drugs, or other drug pricing information, to publishers such as First Data Bank ("FDB"), Medical Economics (publisher of the "Red Book") and Medispan, all of which are price reporting services.

7

These drug-price publishing services in turn compiled, published and distributed compendia of such pricing information for Roxane products. The drug-price publishing services purport not to investigate the accuracy of the information provided by manufacturers, and disclaim responsibility for its accuracy.

15.    Defendants have affirmatively endeavored to conceal the actual wholesale prices they charged customers for Roxane products. Defendants used undisclosed discounts, rebates and other inducements that had the effect of lowering the actual wholesale prices they charged. In addition, Defendants employed secret agreements to conceal the lowest prices they charged for Roxane pharmaceutical products. As a result of these concealed inducements, Defendants prevented third parties, including the State of Ohio and ODJFS, from determining the true prices they charged their wholesale customers. At all times relevant to this action, Defendants knew that information accurately reflecting the actual sales prices they charged their customers was not available to ODJFS. Defendants were aware that at all relevant times, ODJFS used, and relied on, the information regarding AWP and WAC provided by Defendants to ODJFS and the price-reporting services to determine the amounts paid for reimbursement of prescription drugs under Ohio Medicaid.

16.    Defendants intended that the pricing information provided to the State and ODJFS, both directly and indirectly, would be used by the State and ODJFS to determine the reimbursement levels to be paid by the Ohio Medicaid program for Roxane prescription drug products.

17.    At all relevant times, ODJFS had no knowledge of, and had no means of learning, the actual prices Defendants charged their customers for Roxane products. Rather, ODJFS obtained pricing information from Defendants, directly and indirectly, and reasonably relied on this information in determining the Medicaid reimbursement levels for Roxane products.

8

18.     Defendants knowingly and intentionally inflated the reported WACs and AWPs for their drugs, and failed and refused to reduce reported WACs and AWPs when Defendants' actual wholesale prices were reduced.  Defendants knew that their false and deceptive, highly inflated WACs and AWPs would cause the Ohio Medicaid program to pay excessive amounts for their drugs. Defendants' inflated WACs and AWPs greatly exceeded the actual prices at which they sold their drugs to physicians and wholesalers.  Thus, Defendants' reported "average wholesale prices" and "wholesale acquisition costs" were false and misleading and bore no relation to any price, much less a wholesale price.  Defendants concealed their actual wholesale prices from the Ohio Medicaid program.  The foregoing representations and concealments were made with the intent to induce continued reliance on Defendants' AWP and WAC, and were further intended to prevent ODJFS from discovering that Defendants' AWP and WAC were far higher than the actual wholesale prices Defendants charged.

## THE DEFENDANTS' MARKETING OF THE "SPREAD"

19.     Defendants refer to the difference between the reported WAC and AWP, on the one hand, and the actual price of a drug, on the other, as the "spread" or, alternatively, "return to practice" or "return on investment."  Defendants knowingly and intentionally created a "spread" on their drugs and used the "spread" to increase their sales and market share of these drugs, thereby increasing their profits.  Defendants induced physicians, pharmacies and pharmacy chain stores to purchase their drugs, rather than competitors' drugs, by persuading them that the larger "spread" on Defendants' drugs would allow the physicians and pharmacies to receive more money, and make more of a profit, at the expense of the Ohio Medicaid program.

20.     Defendants manipulated and controlled the size of the "spread" on their drugs by both increasing their reported WACs and AWPs and decreasing their actual prices to physicians and

pharmacies. For example, in 1999, Roxane and its affiliates published an AWP for ipratropium bromide of $44.06, while the true wholesale price was approximately $12.25, resulting in a spread of $31.81, or 217%. In 2000, the spread for that Roxane product increased to 328% due to a decrease in true wholesale but a failure to adjust the published AWP. From 1994 through 1996, Roxane and its affiliates disseminated an AWP for lithium carbonate of $7.99 while the actual wholesale price was approximately $2.30, resulting in a spread of $5.69 or 206%. As a result of the foregoing false and misleading pricing, ODJFS paid excessive amounts for Defendants' products. For example, ODJFS paid approximately $1.14 million in 2001-02 for ipratropium bromide manufactured by Roxane, at a price per unit of 47 cents, when the same product was sold at true wholesale for approximately 11 cents per unit.

21.    In a report published by the United States Department of Health and Human Services, the Department of Justice documented more than 30 examples of false AWPs published for Defendants' drugs. On information and belief, Defendants disseminated false AWP information for publication in the 2001 Red Book for the following drugs: acyclovir sodium, amikacin sulfate, mitomycin, cytarabine, doxorubicin HCl, etoposide, leucovorin calcium, methotrexate sodium, and vinblastine sulfate. In addition to the drugs previously alleged, on information and belief Plaintiff alleges that Defendants charged excessive amounts for the following drugs by falsely reporting AWPs and/or WACs and concealing the true AWPs and/or WACs: marinol, torecan, butorphanol, calcium carbonate, calcitriol, chlorpromazine, digoxin, diphenoxylate/atropine, isoetharine, lactulose, lidocaine, lithium citrate, roxanol, morphine sulfate, theophylline, codeine sulfate, roxicet, roxiprin, nefazodone, mirtazapine, propantheline, pseudoephedrine, oramorph, tamoxifen, triazolam, ipecac and sodium chloride. The AWPs and WACs for such drugs were higher than the prices shown for the drugs in Defendants' price lists.

22.     The specific dates, times and particulars of Defendants' fraudulent conduct are well known to Defendants and, in addition to the allegations above, are also reflected in documents produced by Defendants in litigation brought against them by the State of Texas. Such documents, which have been made available to Plaintiff herein, but which are subject to a protective order in the Texas case, reveal Defendants' fraud with great specificity. The documents include: Via Deposition Exhibit 858, pp. 1,4; ROX 6062; ROX 6041, Waterer Deposition Exhibit 35; Waterer Deposition Exhibit 51; ANDRX 001158; ROX-TX 00861; ROX 94608; ROX-TX 15116; ROX-TX 18228 and ROX-TX 16255. The foregoing documents are within Defendants' possession, and citation to them provides Defendants additional notice regarding specific facts comprising Defendants' fraud. The contents of the documents cited in this paragraph are incorporated herein by reference.  In the event Defendants assert that this pleading does not allege fraud with sufficient particularity, Plaintiff will file an amended complaint attaching the foregoing documents and summarizing the evidence of fraud set forth therein.

23.     Defendants were fully capable of making truthful representations about prices and costs of pharmaceutical products, and to Plaintiff's knowledge did so when it was economically beneficial to them, such as when they reported Average Manufacturers' Prices  and Best Prices to the federal government under the Medicaid rebate program mandated by the Omnibus Budget Reconciliation Act of 1990.

24.     Notwithstanding the Defendants' knowledge that they were required to provide truthful price information vital to ODJFS' ability to estimate the acquisition cost, the Defendants knowingly and/or intentionally reported false price information about Roxane products, concealed accurate price information and/or failed to correct information that they had provided to drug-price publishers after such information was no longer accurate.

11

25.     Moreover, having disseminated price information to state Medicaid agencies such as ODJFS, Defendants had a duty to correct such information when it was no longer accurate, as, for example, when Defendants secretly decreased their prices for certain Roxane products.

26.     Defendants concealed from ODJFS, or otherwise failed to disclose, transactions that decreased the cost of Roxane products, and thereby the price, such as discounts, rebates, off-invoice pricing, free goods, cash payments, charge-backs and other financial incentives.

27.     Defendants further falsely reported that the prices or costs of certain Roxane products were increasing when in fact they were decreasing, or increasing in a lesser proportion, or were remaining the same. In addition, Defendants reported that the prices or costs of particular Roxane products were the same, when in fact they were decreasing.

## MEDICARE PRESCRIPTION DRUG PROGRAM

28.     The federal Medicare program pays for a portion of the cost of a limited number of prescription drugs. Drugs covered by Medicare historically have been those administered by a physician or used with certain medical equipment.

29.     The Medicare program uses the AWPs provided by the Defendants to calculate the allowable amount that it will pay for a covered prescription. Generally, the Medicare program uses the manufacturer's reported AWP or an average of the reported AWPs for a covered drug and subtracts five percent, arriving at an adjusted cost. The Medicare program then pays 80 percent of this adjusted cost. Under the Medicare program, the Medicare beneficiary must pay a co-payment equal to 20 percent of the adjusted cost. If the Medicare beneficiary is also a Medicaid recipient, the state Medicaid program pays this 20 percent co-payment.

30.     Because of the Defendants' fraudulent inflation of the AWPs of their drugs and concealment of the actual prices of their drugs, including, but not limited to, those identified above,

the co-payments paid by individual Medicare beneficiaries and/or ODJFS have been grossly excessive. In fact, in some instances, the 20 percent co-payment amount alone exceeds the total actual cost of the drug to the physician.

31. The cost of the Defendants' fraudulent misrepresentations concerning wholesale drug prices has been shouldered in Ohio, in part, by consumers, including ill, dying and elderly Ohioans. Medicare beneficiaries have paid grossly excessive amounts for the Defendants' prescription drugs because of the Defendants' fraudulent pricing practices. Attorney General Jim Petro seeks to recover on behalf of Ohio Medicare beneficiaries the amounts overpaid for prescription drug co-payments, and on behalf of Plaintiff the Medicare co-payments made by ODJFS for Medicare beneficiaries who also qualify for Medicaid.

<u>CLAIMS</u>

<u>COUNT I</u>

<u>FRAUD</u>

32. Plaintiff hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

33. Defendants committed fraud against the State of Ohio, ODJFS, Ohio Medicare beneficiaries and all other state agencies and instrumentalities that set drug reimbursement rates in reliance on the false and misleading pricing data, including data regarding AWP and WAC, provided, communicated and/or published by Defendants. Defendants regularly report AWP and WAC prices for their products on a periodic and continuing basis for publication and dissemination to state Medicaid agencies such as ODJFS. Defendants knew that the AWP and WAC price data they provided, communicated and/or published were false. Defendants provided such false data with the intent of inducing ODJFS and other Ohio agencies and instrumentalities to rely on the false

information in setting prescription drug reimbursement rates. Moreover, Defendants failed to revise published AWP and WAC data that became false and highly misleading as a result of reductions in Defendants' actual wholesale prices. Defendants' utterance of price data for publication gave rise to a duty to speak and correct such data when Defendants became aware that the data were inaccurate and misleading. Defendants fraudulently concealed their true wholesale prices from ODJFS and other Ohio agencies and instrumentalities, as alleged above. ODJFS and such other Ohio agencies and instrumentalities reasonably relied on such false pricing data in setting prescription drug reimbursement rates. Defendants' fraudulent conduct is continuing, as they regularly and periodically continue to issue false AWP and WAC data for publication by the drug-price reporting services. As a result of Defendants' fraudulent conduct, the State of Ohio, ODJFS and other Ohio agencies and instrumentalities and citizens of Ohio have been damaged by paying grossly excessive amounts for Defendants' prescription drugs.

34.     Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in conscious disregard for the rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages.

## COUNT II

## VIOLATION OF CONSUMER SALES PRACTICES ACT, R.C. 1345.02 and 1345.03

35.     Plaintiff hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

36.     Defendants made false statements and representations that the AWP and WAC prices reported by Defendants, which were the basis for prescription drug copayments paid by Ohio Medicare beneficiaries, were advantageous, and bore a relationship to actual wholesale prices, when

in fact the reported AWP and WAC prices were far higher than actual wholesale prices and wholesale acquisition costs.

37.     The foregoing conduct of Defendants alleged above constitutes unfair, deceptive and unconscionable acts and practices in connection with the purchase by Ohio consumers of prescription drugs in violation of R.C. 1345.02(A), 1345.02(B)(8) and 1345.03, and O.A.C. 109:4-3-02(A)(1) and 109:4-3-12(C), (E) and (F).

38.     The foregoing conduct of Defendants violated Ohio's Consumer Sales Practices Act. As a direct result, Ohio's Medicare recipients have been injured by paying grossly excessive amounts in connection with the purchases or reimbursements of purchases of Defendants' prescription drugs. Attorney General Jim Petro brings this action for a declaratory judgment that the foregoing conduct violated R.C. 1345.02 and 1345.03, for an injunction to restrain the foregoing dissemination of false drug prices to the public and for civil penalties. Attorney General Jim Petro further seeks recovery under R.C. 1345.07(B) of damages on behalf of Ohio consumers who are Medicare beneficiaries that have been harmed by paying excessive prescription drug co-payments as a result of Defendants' conduct.

## COUNT III

### VIOLATION OF DECEPTIVE TRADE PRACTICES ACT, R.C. 4165

39.     Plaintiff hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

40.     The foregoing conduct of Defendants involved the making of false statements of fact regarding Defendants' products, including misrepresentations concerning wholesale prices and wholesale acquisition costs for Defendants' prescription drug products. Defendants, further, made false statements of fact regarding the existence of, or amounts of, purported price reductions in that

15

Defendants falsely represented that WAC and AWP prices were reduced, actual wholesale prices when in fact they were far higher than actual wholesale prices and wholesale acquisition costs.

41.     The foregoing acts of Defendants violated Ohio's Deceptive Trade Practices Act, R.C. 4165.02. As a direct result, Plaintiff has been injured by paying grossly excessive amounts in connection with the purchases or reimbursements of purchases of Defendants' prescription drugs.

<u>COUNT IV</u>

<u>MEDICAID FRAUD, R.C. 2913.40(B)</u>

42.     Plaintiff hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

43.     Defendants knowingly made, or caused to be made, false or misleading statements or representations in order to obtain payments under Ohio's Medicaid program. Such conduct constitutes Medicaid fraud in violation of R.C. 2913.40(B).

44.     Defendants have made false statements concerning drug pricing in order to obtain payments from the public treasury of the State of Ohio, in violation of R.C. 2921.13(A)(4). Such violations are a species of Medicaid fraud pursuant to R.C. 2933.71(A)(2). In addition, Defendants' fraudulent scheme caused Plaintiff to pay prescription drug reimbursements at rates in excess of those authorized by Ohio statute. Plaintiff is entitled to recoup all amounts paid in excess of statutory authority.

45.     Medicaid fraud is a felony in the third degree where, as here, the value of the funds obtained exceeds $100,000. Defendants are required to forfeit to Plaintiff all property and funds obtained as a result of the above-alleged Medicaid fraud.

## COUNT V

### UNJUST ENRICHMENT

46.     Plaintiff hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

47.     As a result of the false and misleading statements and representations regarding wholesale drug prices contained in Defendants' issuance of AWP and WAC information, ODJFS, other Ohio agencies and instrumentalities and Ohio citizens paid excessive amounts in connection with purchases or reimbursements of purchases of Defendants' prescription drugs.

48.     Defendants knew that pharmacies and physicians who obtained Medicaid reimbursement for Defendants' drug products were not entitled to improperly inflated reimbursement rates that were based on Defendants' false AWP and WAC price information.

49.     As a result of the excessive payments to pharmacy providers of all or part of the "spread," Defendants obtained increased sales and market share for their products, and, therefore, increased profits, and were unjustly enriched at the expense of the State of Ohio, ODJFS and other Ohio agencies, Ohio instrumentalities and Ohio citizens.

50.     Defendants knew they were not entitled to the profits that resulted from the sales obtained through the use of the spreads they created, and should be required to make restitution of all such amounts obtained through the use of such spreads to Plaintiff.

### COUNT VI

### VIOLATION OF ANTI-KICKBACK STATUTES, R.C. 2913.40(C)(2) and 3999.22

51.     Plaintiff hereby repeats, incorporates by reference and realleges each and every allegation set forth above in this Complaint.

52.    Defendants created a "spread" between actual wholesale prices and/or retail prices, on the one hand, and the fraudulently reported AWP or WAC, on the other, in order to generate a source of money, funded by the State of Ohio, to induce physicians, pharmacies and pharmacy chain stores to prescribe, dispense or purchase Defendants' drugs, rather than competing lower-cost products, and, therefore, cause excessive reimbursements to be made from the treasury of the State of Ohio. The payment of the spreads between actual wholesale and/or retail prices, on the one hand, and the fraudulently reported AWP and WAC, on the other, constituted kickback payments to physicians, pharmacies and pharmacy chain stores in return for prescribing or purchasing Defendants' drugs.  The kickbacks caused the State of Ohio and ODJFS to pay excessive reimbursement for such drugs.

53.    In causing such kickback payments, and providing such inducements and other consideration, Defendants violated R.C. 2913.40(C)(2) and 3999.22(B).

54.    Violation of R.C. 3999.22(B) is a felony of the fifth degree for the first offense and of the fourth degree as to all subsequent offenses. Violation of R.C. 2913.40(C)(2) is a felony in the third degree.

55.    Defendants are criminally liable for the violations of R.C. 2913.40(C)(2) and 3999.22(B) pursuant to R.C. 2901.23(A)(4).  Defendants are liable pursuant to R.C. 2929.31 for civil fines of $75,000 for the first offense and $10,000 for all subsequent offenses and instances of causing consideration to be paid in return for inducing physicians, pharmacists and chain store pharmacies to prescribe, dispense or purchase prescription of drugs with greater spreads and higher prices, thereby causing the State of Ohio to pay excessive amounts for such prescription drugs.

56.    As a result of the foregoing statutory violations, Defendants are liable for civil fines and damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

(1)    an order enjoining Defendants from engaging in practices in violation of R.C. 1345, 2913, 2921.13(A)(4), 2933.71(A)(2) and 4165;

(2)    an award of compensatory damages to Plaintiff in such amount as is proved at trial;

(3)    an award of compensatory damages to Ohio Medicare beneficiaries in such amount as is proved at trial;

(4)    an award of punitive damages;

(5)    a declaratory judgment that Defendants' conduct violated, and continues to violate, R.C. 1345.02 and 1345.03;

(6)    disgorgement of all excessive profits;

(7)    an award of civil penalties pursuant to R.C. 1345.07(D) and 2913(B);

(6)    an award of attorneys fees and prejudgment interest at the rate of 10 per cent per annum; and

(7)    such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff hereby requests trial by jury on all claims so triable.

JIM PETRO
ATTORNEY GENERAL OF OHIO

Respectfully submitted,

Stanley M. Chesley (0000852)

*Lead Counsel and Trial Attorney*
Fay E. Stilz (0004972)
Robert Heuck II (0051283)
WAITE, SCHNEIDER, BAYLESS,
     & CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
Phone:          (513) 621-0267
Facsimile:      (513) 381-2375
Email:          heuck@wsbclaw.com

Michael R. Barrett (0018159)
     *Trial Attorney*
Stephanie K. Bowman (0072894)
BARRETT & WEBER, L.P.A.
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, OH 45202
Phone:          (513) 721-2120
Facsimile:      (513) 721-2139
Email:          mrbarrett@barrettweber.com

James E. Swaim (0007362)
     *Trial Attorney*
Richard Hempfling (0029986)
FLANAGAN, LIEBERMAN, HOFFMAN
     & SWAIM
318 West Fourth Street
Dayton, OH 45402
Phone:          (937) 223-5200
Facsimile:      (937) 223-3335
Email:          rhempfling@flhslaw.com

Co-Trial Attorney for State of Ohio

Of Counsel:

C. David Ewing (0028989)
GARDNER, EWING AND SOUZA
1600 Meidinger Tower
462 South Fourth Avenue
Louisville, KY 40202
Phone:          (502) 585-5800
Facsimile:      (502) 585-5858
Email:          geslaw@msn.com

W.B. Markovits (0018514)
MARKOVITS & GREIWE CO., L.P.A.
119 East Court Street, Suite 500
Cincinnati, Ohio 45202
Phone:          (513) 977-4774
Facsimile:     (513) 621-7086
Email:          bmarkovits@mgattorneys.com

## SERVICE REQUEST

Pursuant to Civil Rule 4.1(A) and 4.3(B), Plaintiff requests that service be made by certified mail, return receipt requested, on the following:

ROXANE LABORATORIES, INC.,

<u>Agent for Service of Process</u>:
CT Corporation System
1300 East Ninth Street
Cleveland, OH 44114

And

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,

<u>Agent for Service of Process</u>:
CT Corporation System
1300 East Ninth Street
Cleveland, OH 44114

And

BEN VENUE LABORATORIES, INC.,

<u>Agent for Service of Process</u>:
CT Corporation System
36 East Seventh Street
Suite 2400
Cincinnati, OH 45202

And

BOEHRINGER INGELHEIM CORP.,

<u>Agent for Service of Process</u>:
CT Corporation System
1300 East Ninth Street
Cleveland, OH 44114

Stanley M. Chesley (0000852)
*Lead Counsel and Trial Attorney*

22

Fay E. Stilz (0004972)
Robert Heuck II (0051283)
WAITE, SCHNEIDER, BAYLESS,
   & CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
Phone:     (513) 621-0267
Facsimile:  (513) 381-2375
Email:     heuck@wsbclaw.com

Michael R. Barrett (0018159)
   *Trial Attorney*
Stephanie K. Bowman (0072894)
BARRETT & WEBER, L.P.A.
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, OH 45202
Phone:     (513) 721-2120
Facsimile:  (513) 721-2139
Email:     mrbarrett@barrettweber.com

James E. Swaim (0007362)
   *Trial Attorney*
Richard Hempfling (0029986)
FLANAGAN, LIEBERMAN, HOFFMAN
   & SWAIM
318 West Fourth Street
Dayton, OH 45402
Phone:     (937) 223-5200
Facsimile:  (937) 223-3335
Email:     rhempfling@flhslaw.com

Co-Trial Attorney for State of Ohio

Of Counsel:

C. David Ewing (0028989)
GARDNER, EWING AND SOUZA
1600 Meidinger Tower
462 South Fourth Avenue
Louisville, KY 40202
Phone:     (502) 585-5800
Facsimile:  (502) 585-5858
Email:     geslaw@msn.com

W.B. Markovits (0018514)
MARKOVITS & GREIWE CO., L.P.A.
119 East Court Street, Suite 500
Cincinnati, Ohio 45202
Phone:        (513) 977-4774
Facsimile:    (513) 621-7086
Email:        bmarkovits@mgattorneys.com