# Exhibit L

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

### SUBPOENA DUCES TECUM

**TO:** Custodian of Records
Roxane Laboratories, Inc.
1809 Wilson Road
Columbus, OH 43228

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE* _____
*Assistant U.S. Attorney George Vien*

*official of the U.S. Department of Justice, and you are hereby required to bring with you and produce the following:*

*See attached Schedules A and B*

*which are necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

**PLACE AND TIME FOR APPEARANCE:**

At the place specified on Schedule C, on September 29, 2000, at 10:00 a.m.

*In lieu of answering at the date and time specified, you may comply with this subpoena by, at your option, causing the materials described to be delivered to the agent serving this subpoena or by causing such materials to be mailed to Assistant U.S. Attorney George Vien at the United States Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA 02210. Any questions, contact Assistant U.S. Attorney George Vien at 617-748-3236.*

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



IN TESTIMONY WHEREOF

_____
MICHAEL K. LOUCKS
the undersigned official of the U.S.
DEPARTMENT OF JUSTICE, has hereunto
set his hand this 15th day of August, 2000

_____
(SIGNATURE)

FORM CRM-180
MAR. 97

UNITED STATES OF AMERICA
DEPARTMENT OF JUSTICE

SUBPOENA DUCES TECUM

*Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.*

**RETURN OF SERVICE**

I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of --

1. personal delivery to an individual, to wit:

   _____
   *(Name)*

   _____
   *(Title)*

   _____
   *(Address)*

2. personal delivery to an address, to wit:

   _____
   *(Description of premises)*

   _____
   *(Address)*

3. registered or certified mailing to:

   _____
   *(Name)*

   _____
   *(Address)*

at ____ ( ) a.m.
   ____ ( ) p.m. on _____

   _____
   *(Signature)*

   _____
   *(Title)*

# SCHEDULE A TO SUBPOENA DUCES TECUM

## I. INSTRUCTIONS AND DEFINITIONS

A.  "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings and the backsides of any communication or representation which contain any of the above.

By way of example, "document(s)" includes, but is not limited to: correspondence; memoranda; notes; drafts; records; letters; envelopes; telegrams; messages; electronic mail; analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; notices; drawings; diagrams; instructions; manuals; calendars; diaries; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or company communications; questionnaires; surveys; charts; graphs; photographs; films or videos; tapes; discs; data cells; bulletins; printouts of information stored, maintained, or transmitted by electronic data or word processing equipment; electronic claims filing and transmittals, invoices, all other data compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy discs, hard discs, hard drives and magnetic tapes; laptop computers issued to officers and employees; and any preliminary versions, drafts or revisions of any of the foregoing.

B.  The "Company" means any and all of the following: Roxane Laboratories, Inc., and any predecessors, parents, subsidiaries affiliates, segments, divisions, and any present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors.

C.  The term "Drugs" means the brand name, trade name, or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

D.  Documents required by this Authorized Investigative Demand ("subpoena") shall be produced to the identified officials of the United States Department of Justice at the time and place indicated on the subpoena.

E.  The recipient of this subpoena shall identify a qualified custodian of records who will be available to testify at the place and time indicated, concerning the production and authentication of documents and records required to be produced by this subpoena.

F.	If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (e.g. letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the U.S. Attorney's Office, and potentially the Court, to assess the validity of the claim of privilege.

G.	No documents provided in response to this subpoena shall be produced in redacted form unless the redaction is for a claim of privilege, and such redaction is identified on the privilege log addressed in Paragraph F. Specifically, documents provided in response to this subpoena shall not be redacted on the grounds that another drug, other than the listed Drugs, is mentioned in the document, as such information is relevant for comparative purposes.

H.	All documents provided in response to this subpoena are to be the original documents and are to include all copies that differ in any respect (such as marginalia and/or notations), and are to include all markings and post-it notes and other similar documents attached thereto, as well as all attachments referred to or incorporated by the documents.

I.	The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (i.e., "and/or"), so as to give the document request its broadest meaning.

J.	Relevant time period: Unless otherwise indicated, the relevant time period for each document request in this subpoena shall be January 1, 1991 to the present, and shall include all documents created or prepared during that period, or referring or relating to that period, regardless of when the document was created or prepared.

K.	If any document, information or data called for by this subpoena exists as, or can be retrieved from, information stored in computerized form, then you are directed to produce the information in computerized form, including sufficient identification of the applicable software program to permit access to, and use of, the document.

L.	Scope of search required: This subpoena calls for all documents in the possession, custody or control of the Company, as defined above, including, but not limited to, its officers, directors, employees, agents, consultants and contractors. The Company is required to search all files reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees. This search must include all offices, including without limitation offices maintained in homes of employees and officers, and including without limitation, offices in any remote locations.

M.	Manner of production: All documents produced in response to this subpoena shall comply with the following instructions:

      a.    The Company shall conduct a search for responsive documents in a manner sufficient to identify the source and location where each responsive document is found.

      b.    All documents produced in response to this subpoena shall be segregated and labeled to show the document request to which the documents are responsive and the source and location where the document was found.

      c.    To the extent that documents are found in file folders and other similar containers which have labels or other identifying information, the documents shall be produced with such file folder and label information intact.

      d.    To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in their condition when found.

    N.    In the event there are no documents responsive to a particular subpoena request, please specify that the Company has no responsive documents.

    O.    If the Company knows of documents it once possessed or controlled, but no longer possesses or controls, which would have been responsive to this subpoena, state what disposition was made of such documents, including identification of the person(s) who are or are believed to be in possession or control of such documents currently.

    P.    To facilitate the handling and return of the submitted documents, please mark each page with an identifying logo or the first three letters of your company's name and number each page sequentially beginning with "00001." The marks should be placed in the lower right hand corner of each page but should not obscure any information on the document. All documents should be produced in enclosures bearing the name of your company, the date of the subpoena and the paragraphs of the subpoena to which the documents respond. Use of the foregoing procedure will preserve the identity of all documents submitted by your company and assure their accurate and expeditious return at the conclusion of this investigation or of any proceeding arising from it.

## EXHIBIT A

Ipratropium Bromide, 2.5 ml 25's

Ipratropium Bromide, 2.5 ml, 60's

4

## SCHEDULE B TO SUBPOENA DUCES TECUM

1.      Such documents as will show, for the Company: (a) the date it was incorporated; (b) the state in which it was incorporated; (c) its name at the time of its incorporation; and (d) each change in its name or state of incorporation and the date of such change.

2.      Such documents as will show for the Company for the period covered by this subpoena: (a) the name of each person who has served as a director and/or an officer; (b) each such person's current business and residence address; (c) the time period such person served as a director and/or an officer; and (d) the title of the director and/or officer.

3.      Such documents as will show for the relevant period the following information as to each of the Company's subsidiaries, divisions, and affiliates: (a) name; (b) date and state of incorporation; (c) current principal place of business; (d) name at the time of incorporation, if different than the current name; and (e) all changes in name or state of incorporation and the date of such change.

4.      One copy of each table of organization, organization chart or other similar document showing the lines of authority or reporting responsibilities for the officers, executives, supervisors, employees, consultants, independent contractors, distributors, and agents of the Company during the relevant time period. This specification is limited to Roxane Laboratories and its predecessor corporations.

5.      Such documents as will show for the relevant period the following information for each of the Company's current and former officers, executives, supervisors, employees, consultants, independent contractors, distributors, and agents: (a) name; (b) residential and business addresses; (c) position; (d) date of hire or date of contract; and (e) termination date. This specification is limited to Roxane Laboratories, Inc. and its predecessor corporations.

6.      For each year from 1991 to the present, provide all documents that reflect or evidence the annual breakdown of purchasing data for purchasers of the Drugs that have entered contracts with the Company, including the units sold and the purchase price, net of all rebates, discounts, or price reductions. This request excludes invoices.

7.      For each year from 1991 to the present, provide all documents that reflect or evidence the annual breakdown of purchasing data for purchasers of the Drugs that have not entered contracts with the Company, including the units sold and the purchase price, net of all rebates, discounts, or price reductions. This request excludes invoices.

8.      All documents constituting, referring or relating to the Company's document retention and destruction policy during the relevant time period.

9.      All documents constituting contracts or agreements, or drafts thereof, with all governmental entities, health maintenance organizations, hospitals, and buying groups or

5

consortiums for the sale of any of the Drugs.

10. All documents constituting, referring or relating to the Medicaid Rebate Agreement between the Company and (a) the Health Care Financing Administration and (b) any state regulatory authority. The time period of this specification is 1990 to the present. This request excludes invoices.

11. All documents constituting, referring or relating to all contracts or agreements between the Company and any wholesaler regarding or relating to the Drugs, including any documents constituting, referring or relating to negotiations concerning such contracts of agreements. The time period of this request is 1990 to the present.

12. All documents constituting, referring, evidencing, or relating to all monthly reports, referring or relating to the Drugs, from national and regional account managers and managed care market managers.

13. All documents constituting, referring, evidencing or relating to projections, analyses, or reports of actual or projected revenue and/or actual and/or projected profit from sales of any of the Drugs by the Company, including, but not limited to, any review and assessment of profit margins regarding the Drugs. This includes the actual per unit cost of production for the Drugs.

14. All documents constituting, referring, evidencing or relating to projections, analyses, or reports of actual or projected revenue and/or actual or projected profit for any purchaser of the Drugs, including but not limited to, any health maintenance organization ("HMO"), group purchasing organization ("GPO"), retail pharmacy, and/or hospital.

15. All documents constituting, referring or relating to projections, analyses, and reports of actual or projected Medicaid reimbursement for any purchaser of the Drugs, including but not limited to, any HMO, GPO, retail pharmacy, and/or hospital, in connection with the actual or projected sale of any of the Drugs.

16. All documents constituting, referring or relating to the training, advising, or instruction of employees, officers, distributors, contractors or sales personnel regarding or relating to the reporting of Wholesale Acquisition Cost ("WAC").

17. All documents which discuss, interpret, define, describe, relate or refer to the meaning of the term Wholesale Acquisition Cost or WAC.

18. All invoices reflecting the Best Price for the Drugs for each quarter beginning January 1, 1991.

19. All documents constituting, referring or relating to the training, advising, or instruction of employees, officers, distributors, contractors or sales personnel regarding or

6

relating to the Medicaid reimbursement system for pharmaceutical drugs.

20. All documents constituting, referring or relating to internal audits or analyses, conducted by the Company or outside auditors regarding whether the Company's reporting of WAC complies with federal and state law and regulations, including but not limited to those pertaining to the Medicare and Medicaid programs, Food and Drug Administration, Veteran's Administration, and Department of Defense.

22. All documents that mention, reflect or refer to any of the Company's competitors -- or any other companies involved in the manufacturing of pharmaceuticals -- regarding, referring, or evidencing uses, interpretations, and/or reporting of WAC, Average Wholesale Price ("AWP"), Estimated Acquisition Price ("EAP"), Estimated Acquisition Cost ("EAC"), Best Price, or Medicaid reimbursement.

23. All documents that constitute, discuss or refer to any complaints, lawsuits or administrative actions by or against the Company involving EAP, EAC, AWP, WAC, or Medicaid reimbursement.

24. Minutes of all meetings of all supervisory groups and all executive meetings of the Company that mention, refer to, or regard any of the Drugs and/or WAC. This specification is limited to supervisory groups and executive meetings within Roxane Laboratories, Inc. and their predecessor corporations.

25. All documents constituting, referring or relating to the calculation, reporting, or setting of AWP, WAC, EAP, EAC, Average Manufacturer Price ("AMP"), Direct Price, and Best Price of any of the Drugs.

26. All documents constituting, referring or relating to the quarterly reports submitted to the Health Care Financing Administration by the Company relating or referring to the Drugs. This specification includes, without limitation, documents sufficient to show the Best Price as reported to the Health Care Financing Administration for the Drugs.

27. All documents constituting, referring or relating to communications, whether internal, external or by proxy, regarding the calculation or setting of the Average Wholesale Price, Wholesale Acquisition Cost, the Actual Acquisition Price, Estimated Acquisition Price, Actual Acquisition Cost, Estimated Acquisition Cost, the Direct Price, the Average Manufacturer's Price, and/or the Best Price of any of the Drugs to the Healthcare Financing Administration, the Department of Health and Human Services, Medicare, the United States Congress, Congressional committees and representatives, Congressional branches, and/or state regulatory authorities and agencies.

28. All documents constituting, referring or relating to the impact of WAC reporting on Medicaid reimbursement to any purchaser of pharmaceutical drugs, including but not limited to the Drugs.

29. All catalogs, including on-line catalogs, listings, or advertisements, provided to HMOs, retail pharmacies, and/or GPOs, concerning any of the Drugs.

30. All documents that mention, reflect, or evidence any of the Company's competitors for market share in the sub-market for the Drugs, including surveys, marketing proposals, and sales projections.

31. All documents that mention, reflect, or evidence any drug manufacturer's market share for any of the Drugs, including surveys, marketing proposals, and sales projections.

32. All documents that mention, evidence, or reflect any chargeback arrangement in which the Company has participated in with any wholesaler of the Drugs.

33. All documents that mention, evidence, or reflect any rebate or discount arrangement in which the Company has participated in with any wholesaler of the Drugs.

34. All documents that mention, evidence, or reflect the "spread" or difference between the actual acquisition cost or purchase price of any pharmaceutical drug, including but not limited to the Drugs, by a retailer, and the reimbursement rate paid by third party payors, including Medicaid, Medicare, and private insurers.

35. All documents that mention, evidence, reflect or refer to communications with or from any person or entity engaged in publishing drug prices (e.g., Average Wholesale Price, Direct Price, Wholesale Acquisition Cost), including First Data Bank, Medical Economics and Medi-Span, regarding Wholesale Acquisition Cost generally, or the Wholesale Acquisition Cost of any of the Drugs.

36. All documents that constitute, mention, evidence or reflect any procedures used by the Company to calculate, set, report, and/or verify price information regarding the Drugs.

37. All documents that constitute, mention, evidence or reflect any procedures used by the Company to calculate or set actual prices charged to purchasers of the Drugs.

## **SCHEDULE C**

United States Attorney's Office
John Williams Coast Guard Building
Health Care Fraud Unit, Room 530
408 Atlantic Avenue
Boston, MA 02110