EXHIBIT 19

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                              Office of Inspector General

DEC 6 1996

**Memorandum**

Date

From    *[signature: Michael Mangano]*
        June Gibbs Brown
        Inspector General

Subject Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid
        Prescription Drug Program of the New Jersey Department of Human Services
        (A-06-95-00070)

To      Bruce C. Vladeck
        Administrator
        Health Care Financing Administration


Attached for your information and use is our final report entitled, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the New Jersey Department of Human Services." This review was conducted as part of a nationwide audit of pharmacy drug acquisition costs at the Health Care Financing Administration's request. Most States reimburse pharmacies for Medicaid prescriptions using a formula which generally discounts the average wholesale price (AWP) by 10.5 percent. The objective of our review was focused on developing an estimate of the discount below AWP at which pharmacies purchase brand name and generic drugs.

The New Jersey Department of Human Services (State Agency) was 1 of 11 States randomly selected as part of the nationwide review. New Jersey reported drug expenditures of $333.9 million in Calendar Year 1994.

Through statistical sampling, we obtained pricing information from 14 New Jersey pharmacies. We obtained 462 invoice prices for brand name drugs, and 192 invoice prices for generic drugs. The overall estimate of the extent that AWP exceeded pharmacy purchase invoice prices was 19.8 percent for brand name drugs and 39.9 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent pharmacies. The estimates exclude the results obtained from non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, home IV, etc.) because such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inappropriately inflated our percentages.

Page 2 - Bruce C. Vladeck

We are recommending that the State Agency consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs.
In response to our draft report, the Commissioner of the State Agency stated that they have lowered Medicaid drug reimbursement from AWP minus 2 to 8 percent based on a pharmacy's prescription volume to a flat AWP minus 10 percent for all pharmacies. The Commissioner indicated that results of our review provided support for their decision to change their reimbursement methodology. The complete text of the Commissioner's comments are included in Appendix 4.

We welcome any comments you have on this New Jersey State report. If you have any questions, call me or have your staff contact George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410)786-7104.

To facilitate identification, please refer to Common Identification Number A-06-95-00070.

Attachment

# Department of Health and Human Services

# OFFICE OF INSPECTOR GENERAL

## REVIEW OF PHARMACY ACQUISITION COST FOR DRUGS REIMBURSED UNDER THE MEDICAID PRESCRIPTION DRUG PROGRAM OF THE NEW JERSEY DEPARTMENT OF HUMAN SERVICES



**JUNE GIBBS BROWN**
Inspector General

DECEMBER 1996
A-06-95-00070

# SUMMARY

At the request of the Health Care Financing Administration (HCFA), the Office of Inspector General (OIG) conducted a nationwide review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program. Since most States reimburse pharmacies for Medicaid prescriptions using a formula which discounts the average wholesale price (AWP), the objective of our review was to develop an estimate of the discount below AWP at which pharmacies purchase brand name and generic drugs.

To accomplish our objective, we selected a random sample of 11 States from a universe of 48 States and the District of Columbia. Arizona was excluded from the universe of States because the Medicaid drug program is a demonstration project using prepaid capitation financing and Tennessee was excluded because of a waiver received to implement a statewide managed care program for Medicaid. New Jersey was one of the sample States selected, as well as California, Delaware, District of Columbia, Florida, Maryland, Missouri, Montana, Nebraska, North Carolina, and Virginia.

Additionally, we selected a sample of Medicaid pharmacy providers from each State and obtained invoices of their drug purchases. The pharmacies were selected from each of five categories--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our overall estimates. We believed such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inflated our percentages.

We compared each invoice drug price to AWP for that drug and calculated the percentage, if any, by which the invoice price was discounted below AWP. We then projected those differences to the universe of pharmacies in each category for each State and calculated an overall estimate for each State. Additionally, we projected the results from each State to estimate the nationwide difference between AWP and invoice price for each category.

In New Jersey, we obtained pricing information from 14 pharmacies. Specifically, we obtained 462 invoice prices for brand name drugs, and 192 invoice prices for generic drugs. For New Jersey, the overall estimate of the extent that invoice prices were discounted below AWP was 19.8 percent for brand name drugs and 39.9 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The national estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent. The New Jersey estimates do not include any rural categories. None of the estimates include the results obtained from non-traditional pharmacies.

We are recommending that the New Jersey Department of Human Services (State Agency) consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. We will share the information with HCFA from all 11 States in a consolidation report for their use in evaluating the overall Medicaid drug program.

The Commissioner of the State Agency responded to our draft report in a letter dated, October 30, 1996. The Commissioner stated that the State Agency had lowered Medicaid drug reimbursement from AWP less 2 to 8 percent, based on a pharmacy's prescription volume, to a flat AWP less 10 percent for all pharmacies. The Commissioner indicated that results of our review provided support for their decision to change reimbursement methodology. The complete text of the Commissioner's comments are included in Appendix 4.

TABLE OF CONTENTS

| | PAGE |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| SCOPE | 2 |
| FINDINGS AND RECOMMENDATIONS | 4 |
| CONCLUSIONS AND RECOMMENDATION | 6 |

APPENDICES

APPENDIX 1 - SAMPLE DESCRIPTION

APPENDIX 2 - NEW JERSEY SAMPLE RESULTS

APPENDIX 3 - NATIONWIDE SAMPLE RESULTS

APPENDIX 4 - STATE AGENCY COMMENTS

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the New Jersey Department of Human Services

I

# INTRODUCTION

At the request of HCFA, OIG, Office of Audit Services (OAS) conducted a review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program of the New Jersey Department of Human Services (State Agency). The objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs and AWP. This review was conducted as a part of a nationwide review of pharmacy acquisition costs. New Jersey was 1 of 11 States randomly selected as part of the nationwide review.

## *BACKGROUND*

Medicaid regulations provide for the reimbursement of drugs using two methods. If a drug is a multiple source (generic) drug, then reimbursement is based on the lower of the pharmacist's usual and customary charge to the general public or an upper limit amount plus a dispensing fee. The Federal upper limit amounts are established by HCFA. If a drug is a single source (brand name) drug, or a generic drug for which an upper limit amount has not been established, then the reimbursement is the lower of the pharmacist's usual and customary charge to the general public or the estimated acquisition cost (EAC) plus a reasonable dispensing fee. The State agencies are responsible for determining the EAC and the dispensing fee.

The EAC for most States is calculated by using AWP for a drug less some percentage. The AWP is the price assigned to the drug by its manufacturer and is listed in either the *Red Book, Medispan* or the *Blue Book*--publications universally used in the pharmaceutical industry. Prior to 1984, most States used 100 percent of AWP for reimbursement of acquisition costs. However, OIG issued a report in 1984 which stated that, on average, pharmacies purchased drugs for 15.9 percent below AWP. In 1989, OIG issued a follow-up report which concluded that pharmacies were purchasing drugs at discounts of 15.5 percent below AWP. Both the 1984 and 1989 reports combined brand name and generic drugs in calculating the percentage discounts and included a comparison of 3,469 and 4,723 purchases, respectively.

In 1989, HCFA issued a revision to the State Medicaid Manual which pointed out that a preponderance of evidence demonstrated that AWP overstated prices that pharmacies actually paid for drugs by as much as 10 to 20 percent. The Manual further provided that, absent valid documentation to the contrary, it would not be acceptable for a State to make reimbursements using AWP without a significant discount.

In November 1990, the Omnibus Budget Reconciliation Act of 1990 was passed which placed a 4-year moratorium on changes to States' reimbursement policies. The moratorium expired on December 31, 1994 and HCFA requested that we, once again, determine the difference between AWP and actual pharmacy acquisition cost.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the New Jersey Department of Human Services

1

The State Agency reported drug expenditures of $333.9 million in Calendar Year (CY) 1994.

## *SCOPE*

Our review was performed in accordance with generally accepted government auditing standards. The objective of our review was to develop an estimate of the difference between AWP and the actual invoice prices of both brand name and generic prescription drugs to Medicaid pharmacy providers. Our objective did not require that we identify or review any internal control systems.

Our review was limited to ingredient acquisition costs and did not address other areas such as: the effect of Medicaid business as a contribution to other store sales; the cost to provide professional services other than dispensing a prescription such as therapeutic interventions, patient education, and physician consultation; and the cost of dispensing which includes costs for computers, multi-part labels, containers, technical staff, transaction fees, Medicaid specific administrative costs, and general overhead. We also did not take into consideration the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations. We plan to evaluate the effect of the Federal upper limit amounts on generic drug reimbursements in a subsequent review.

We obtained a listing of all Medicaid pharmacy providers from the State Agency. The State Agency was responsible for classifying each pharmacy as chain, independent, or non-traditional. For purposes of this review, a chain was defined as four or more pharmacies with common ownership. We determined whether each pharmacy was rural or urban by comparing the county location for each pharmacy to a December 31, 1992 listing of metropolitan areas and their components. Our sample design was for a sample of 12 pharmacies from each of 5 strata. The five strata of pharmacies were rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.). New Jersey had no rural areas and the State Agency excluded the non-traditional pharmacies from the listing they provided us. Therefore, we selected a stratified random sample of 24 pharmacies with 12 pharmacies selected from each of 2 strata--urban-chain and urban-independent.

We requested, from each pharmacy selected, the largest invoice from each different source of supply for a specified month in CY 1994. We identified the sources of supply as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. Each pharmacy was initially assigned a month from January through September in order to provide a cross-section of this 9-month time period. However, we permitted some pharmacies to provide invoices from October or November as invoices were not available from the earlier period.

We reviewed every line item on the invoices supplied by the sample pharmacies to ensure that the invoices contained the information necessary for our review. We eliminated over-the-counter items. Some invoices did not include National Drug Codes (NDC), which were needed to obtain AWP for the drug. We attempted to obtain NDCs in those instances. We used the 1994 *Red Book*, a nationally recognized reference for drug product and pricing information, to obtain NDCs or identify over-the-counter items. One prominent wholesaler, whose invoices contained that wholesaler's item number rather than NDCs, provided us with a listing that converted their item number to an NDC. If we were unable to identify the NDC for a drug, we eliminated the drug. This was a common occurrence for generic drugs where there was no indication on the invoice as to the manufacturer of the drug.

We obtained a listing from HCFA that indicated whether a drug is a brand name or generic drug. We used that listing to classify each drug on the invoices as brand or generic. If a drug was not on the HCFA listing, we used the *Red Book* to determine whether the drug was brand or generic. Additionally, we obtained drug expenditure information from HCFA-64 Reports.

The State of Missouri provided us with a pricing file for the purpose of obtaining the AWP for each drug. We compared the invoice drug price to AWP for each drug and calculated the percentage, if any, by which the invoice price was discounted below AWP. If a drug from an invoice was not on the pricing file we eliminated that drug.

An initial meeting was held in Richmond, Virginia on August 30 - 31, 1994, with Medicaid pharmacy representatives from the sample States. At this meeting, we presented a methodology for performing the review and the methodology was refined with input from the State representatives. At a follow-up meeting held in Richmond, Virginia, on September 27 - 28, 1995, we presented the results of our review with the sample States.

We used OAS statistical computer software to calculate all estimates as well as to generate all random numbers. We did not independently verify any information obtained from third party sources. Our review was conducted by our Little Rock, Arkansas OAS field office with assistance from our OAS Field Offices in Baton Rouge, Louisiana, and Austin, Texas from September 1994 to September 1995.

# FINDINGS AND RECOMMENDATIONS

## *BRAND NAME DRUGS*

We estimate that invoice prices for *brand name drugs* were discounted 19.8 percent below AWP. The estimate combined both pharmacy categories and was based on the comparison to AWP of 462 invoice prices received from 14 pharmacies. The standard deviation for this estimate was 1.98 percent (see Appendix 2).

The estimates by individual categories for *brand name drugs* are summarized in the following table:



The following table shows the number of pharmacies sampled and the number of prices reviewed by individual category for *brand name drugs*.



## GENERIC DRUGS

We estimate that invoice prices for *generic drugs* were discounted 39.9 percent below AWP. Once again the estimate combined both pharmacy categories. The estimate was based on the comparison to AWP of 192 invoice prices received from 13 pharmacies. The standard deviation for this estimate was 3.55 percent (see Appendix 2).

The estimates that invoice prices for *generic drugs* were discounted below AWP are summarized by individual categories in the following table:



Estimated Difference

| Category | Value |
|---|---|
| Rural Chain | NA |
| Rural Independent | NA |
| Urban Chain | 41.7 |
| Urban Independent | 38.7 |
| Non-Traditional (NonT) | NA |
| Overall (Excluding NonT) | 39.9 |

The following table shows the number of pharmacies sampled and the number of prices reviewed by individual category for the *generic drugs*.



| Category | Number of Sample Pharmacies | Prices from Sample Pharmacies |
|---|---|---|
| Rural-Chain | NA | NA |
| Rural-Independent | NA | NA |
| Urban-Chain | 4 | 92 |
| Urban-Independent | 9 | 100 |
| Non-Traditional | NA | NA |
| Overall (Exc. NonT) | 13 | 192 |

# CONCLUSIONS AND RECOMMENDATION

Based on our review, we have determined that there is a significant difference between AWP and pharmacy acquisition costs. The difference between AWP and pharmacy acquisition costs is significantly greater for generic drugs than for brand name drugs. In general, State representatives believed that the review supported current State practices to establish pharmacy reimbursement for ingredient cost at levels below AWP.

We recognize that acquisition cost is just one factor in pharmacy reimbursement policy and that any change to that policy should also consider the other factors discussed in the Scope section of our report. Additionally, the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations should be taken into consideration. However, a change in any of the factors affecting pharmacy reimbursement could have a significant impact on expenditures because of the size of the program ($333.9 million) in New Jersey. We believe that the difference between AWP and pharmacy acquisition costs as determined by our review is significant enough to warrant consideration by the State in any evaluation of the drug program. Therefore, we recommend that the State Agency consider the results of this review in determining any future changes to pharmacy reimbursement for Medicaid drugs.

## *STATE AGENCY COMMENTS*

The Commissioner of the State Agency responded to our draft report in a letter dated, October 30, 1996. The Commissioner stated that the State Agency had lowered Medicaid drug reimbursement from AWP less 2 to 8 percent, based on a pharmacy's prescription volume, to a flat AWP less 10 percent for all pharmacies. The Commissioner indicated that results of our review provided support for their decision to change reimbursement methodology. The complete text of the Commissioner's comments are included in Appendix 4.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the New Jersey Department of Human Services

6

# *APPENDICES*

*APPENDIX 1*
*PAGE 1 of 2*

## *SAMPLE DESCRIPTION*

### *Sample Objectives:*

Develop an estimate of the extent of the discount below Average Wholesale Prices (AWP) of actual invoice prices for Medicaid pharmacies in New Jersey for brand name drugs and for generic drugs.

### *Population:*

The sampling population was pharmacy providers participating in the Medicaid prescription drug program of the State Agency.

### *Sampling Frame:*

The sampling frame was a listing of all pharmacy providers participating in the Medicaid prescription drug program.

### *Sample Design:*

A sample of 12 pharmacies was to be selected from each of 5 strata. The five strata of pharmacies were rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.) However, New Jersey had no rural areas and the State Agency excluded the non-traditional pharmacies from the listing they provided us. Therefore, we selected a stratified random sample of 24 pharmacies with 12 pharmacies selected from each of 2 strata -- urban-chain and urban-independent. Each pharmacy was assigned a month from 1994 for which to provide invoices. All pharmacies were initially assigned a month from January through September in a method designed to provide a cross-section of the 9-month period. However, some pharmacies were permitted to submit invoices from October or November as invoices were not available for the month originally assigned. The largest invoice from each of four different sources of supply was requested. The sources of supply were identified as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. All invoice prices were compared to AWP.

**APPENDIX 1**
**PAGE 2 of 2**

### Sample Size:

Twelve pharmacies were selected from each stratum for a total of 24 pharmacies.

### Source of Random Numbers:

OAS statistical sampling software was used to generate the random numbers.

### Characteristics to be Measured:

From our review of the pharmacy invoices, we calculated the percentage of the discount below AWP of actual invoice prices for all drugs on the invoices submitted.

### Treatment of Missing Sample Items:

No spare was substituted for a pharmacy that did not provide information. If a pharmacy did not send an invoice for a particular type of supplier, we assumed that the pharmacy did not purchase drugs from that type of supplier during the month assigned to the pharmacy.

### Estimation Methodology:

We used OAS Statistical Software to project the percentage difference between AWP and actual invoice prices for each stratum, as well as an overall percentage difference. The overall percentage difference excluded the non-traditional pharmacies. The projections were done separately for brand name drugs and generics.

### Other Evidence:

We obtained AWP from First DataBank.

**APPENDIX 2**

## NEW JERSEY SAMPLE RESULTS
## BRAND NAME AND GENERIC DRUGS

| | CATEGORY | TOTAL NUMBER | SAMPLE SIZE | PRICES REVIEWED | POINT ESTIMATE | STANDARD DEVIATION | 90 PERCENT CONFIDENCE INTERVAL LOWER LIMIT | 90 PERCENT CONFIDENCE INTERVAL UPPER LIMIT |
|---|---|---|---|---|---|---|---|---|
| **BRAND** | RURAL-CHAIN | NA | NA | NA | NA | NA | NA | NA |
| | RURAL-INDEPENDENT | NA | NA | NA | NA | NA | NA | NA |
| | URBAN-CHAIN | 817 | 5 | 247 | 19.5 | 1.76 | 18.25 | 20.83 |
| | URBAN-INDEPENDENT | 1,270 | 9 | 215 | 19.9 | 9.67 | 14.63 | 25.19 |
| | NON-TRADITIONAL | NA | NA | NA | NA | NA | NA | NA |
| | OVERALL (EXCL. NON-TRAD) | 2,087 | 14 | 462 | 19.8 | 1.98 | 16.51 | 23.02 |
| **GENERIC** | RURAL-CHAIN | NA | NA | NA | NA | NA | NA | NA |
| | RURAL-INDEPENDENT | NA | NA | NA | NA | NA | NA | NA |
| | URBAN-CHAIN | 817 | 4 | 92 | 41.7 | 12.26 | 31.64 | 51.76 |
| | URBAN-INDEPENDENT | 1,270 | 9 | 100 | 38.7 | 12.98 | 31.61 | 45.79 |
| | NON-TRADITIONAL | NA | NA | NA | NA | NA | NA | NA |
| | OVERALL (EXCL. NON-TRAD) | 2,087 | 13 | 192 | 39.9 | 3.55 | 34.03 | 45.72 |

*APPENDIX 3*

# NATIONWIDE SAMPLE RESULTS
# BRAND NAME AND GENERIC DRUGS

| | NATIONWIDE | SAMPLE UNIVERSE | SAMPLE SIZE | DRUG PRICES REVIEWED | POINT ESTIMATE | STANDARD ERROR | 90 PERCENT CONFIDENCE LEVEL | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | LOWER LIMIT | UPPER LIMIT |
| **BRAND** | RURAL-CHAIN | 1,095 | 73 | 5,723 | 17.40 | 1.05 | 15.67 | 19.13 |
| | RURAL-INDEPENDENT | 1,499 | 78 | 3,043 | 16.39 | 1.07 | 14.63 | 18.15 |
| | URBAN-CHAIN | 8,194 | 73 | 7,198 | 18.45 | 0.52 | 17.60 | 19.31 |
| | URBAN-INDEPENDENT | 6,242 | 91 | 3,009 | 18.71 | 0.90 | 17.22 | 20.19 |
| | NON-TRADITIONAL | 2,026 | 66 | 1,762 | 27.52 | 2.28 | 23.76 | 31.27 |
| | OVERALL (EXCL. NON-TRAD) | 17,030 | 315 | 18,973 | 18.30 | 0.66 | 17.21 | 19.38 |
| **GENERIC** | RURAL-CHAIN | 1,095 | 73 | 2,963 | 47.51 | 1.63 | 44.82 | 50.20 |
| | RURAL-INDEPENDENT | 1,499 | 78 | 1,798 | 47.38 | 0.93 | 45.85 | 48.92 |
| | URBAN-CHAIN | 8,194 | 72 | 2,634 | 37.61 | 2.82 | 32.97 | 42.26 |
| | URBAN-INDEPENDENT | 6,242 | 91 | 1,680 | 46.72 | 2.44 | 42.70 | 50.73 |
| | NON-TRADITIONAL | 2,026 | 59 | 1,262 | 57.70 | 1.98 | 54.43 | 60.96 |
| | OVERALL (EXCL. NON-TRAD) | 17,030 | 314 | 9,075 | 42.45 | 0.90 | 40.97 | 43.93 |

*APPENDIX 4*
*Page 1 of 2*



**State of New Jersey**
DEPARTMENT OF HUMAN SERVICES
CN-700
TRENTON NJ 08625-0700

CHRISTINE TODD WHITMAN
*Governor*

WILLIAM WALDMAN
*Commissioner*
TEL (609) 292-3717

October 30, 1996

M. Ben Jackson, Jr., Acting Director
Operational and Program Reviews
Health Care Financing Audit Division
Office of the Inspector General
Department of Health and Human Services
Washington, D.C. 20201

Dear Mr. Jackson:

This is in response to your letters of April 18, 1996 and September 27, 1996, requesting comments from the New Jersey Department of Human Services concerning the outcome of the "Review of Pharmacy Acquisition Costs For Drugs Reimbursed Under The Medicaid Prescription Drug Program For The New Jersey Department of Human Services," dated April 1996. I apologize for the extended delay in the Department's response.

I requested Edward J. Vaccaro, R.Ph., Assistant Director for the Office of Health Service Administration, New Jersey Division of Medical Assistance and Health Services (DMAHS), to review the draft document provided by your office. Based on his participation in the project and his review of the report, he has determined that the report accurately reflects information provided by the State, and agrees with its conclusions.

For your information, the conclusions of this review were helpful to the Department which implemented a change in Medicaid reimbursement for drug costs, effective July 15, 1996. The former Medicaid reimbursement formula of Average Wholesale Price (AWP) less 2 to 8 percent, based on a pharmacy's prescription volume, was reduced to a flat AWP less 10 percent for all pharmacies. In addition, similar reimbursement for pharmacy services covered by the Department of Health and Senior Services' Pharmaceutical Assistance to the Aged and Disabled (PAAD) program was also reduced from AWP less 0 to 6 percent to the same flat percentage. I appreciate the timeliness of your review, and the support it lended to our decision to change our fee-for-service reimbursement.

**APPENDIX 4**
**Page 2 of 2**

M. Ben Jackson, Jr.
October 30, 1996
Page 2

Again, I apologize for any inconvenience the delay in the Department's response may have caused your office. If you require any future assistance, or further information, please do not hesitate to contact Velvet G. Miller, Director, DMAHS, at (609) 588-2600, or Mr. Vaccaro at (609) 588-2726.

Sincerely,

*[signature]*

William Waldman
Commissioner

WW:2
c: Velvet G. Miller
   Karen I. Squarrell
   Edward J. Vaccaro, R.Ph.