EXHIBIT 41



22746365

Dec  3 2008
5:31PM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE  WHOLESALE PRICE LITIGATION<br>_____ | )<br>)<br>)<br>) MDL No. 1456<br>) Civil Action No. 01-12257-PBS<br>) |
| *THIS DOCUMENT RELATES TO:* | ) Subcategory Case No. 06-11337-PBS<br>) |
| *United States of America ex rel. Ven-a- Care of the Florida Keys, Inc., et al. v.  Dey, Inc., et al, Civil Action No. 05-1l084-PBS*<br>_____ | ) Hon. Patti Saris<br>)<br>) Magistrate Judge Marianne B. Bowler<br>)<br>) |

## RESPONSE OF PLAINTIFF
## VEN-A-CARE OF THE FLORIDA KEYS, INC.
## <u>TO THE DEY DEFENDANTS' FIRST SET OF INTERROGATORIES</u>

VEN-A-CARE OF THE FLORIDA KEYS, INC. ("Plaintiff" or "Ven-A-Care"), by

and through its undersigned counsel, files this Response to Defendants Dey, Inc., Dey

L.P., Inc., and Dey, L.P.'s (Collectively "Dey") First Set of Interrogatories and states:

## <u>GENERAL OBJECTIONS</u>
_____

    1.    To the extent that these questions and requests are broadly directed at

other pharmaceutical manufacturers or drugs and are not limited to the specific Dey

drugs which are at issue in the latest active pleadings, then the requests are inherently

unreasonable, vague and unduly burdensome in scope because of the large number of

drugs which are the subject of Medicare and Medicaid claims. The responses will be

limited to the specific drugs at issue in this litigation referred to in the United States'

Complaint.

1

2.     Ven-A-Care objects to these Interrogatories to the extent that they seek information protected from disclosure by any privilege or doctrine, including the attorney-client privilege, the investigative files privilege, the work-product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the law enforcement privilege or any other applicable basis for invoking privilege. Ven-A-Care will screen materials and information to be released to the Dey Defendants to remove privileged materials. To the extent there is any inadvertent disclosure of privileged information, Ven-A-Care reserves its right to argue that such inadvertent disclosure shall not constitute any waiver of the privileges. Ven-A-Care reserves the right to object to the introduction into evidence before the Court at any time before or at trial of information that is privileged or otherwise protected under law and that has been revealed or produced inadvertently. Ven-A-Care does not, by responding to these Requests, waive any claim of privilege or the protection of any doctrine.

3.     Ven-A-Care objects to these Interrogatories to the extent they require it to draw legal conclusions or otherwise seek to impose upon Ven-A-Care any requirements beyond those established by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

4.     Ven-A-Care objects to these Interrogatories to the extent that responding would require it to violate any seal imposed by a Court or by statute in the context of a False Claims Act qui tam matter. Ven-A-Care will not separately object to any specific Interrogatory to assert this ground in such a way where doing so would itself identify a case currently under seal.

5.     Ven-A-Care objects to the scope of these Interrogatories to the extent they

2

call for documents that are not within the possession, custody or control of Ven-A-Care.

6.      Ven-A-Care objects to each Interrogatory to the extent that it seeks information beyond the scope of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Ven-A-Care objects to these Interrogatories and instructions as overly broad, unduly burdensome, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information outside of the relevant time period.

8.      The objections set forth herein are based on information now known to Ven-A-Care and its attorneys and are made without prejudice to Ven-A-Care's right to assert additional objections should grounds for objection be discovered at a later time. Ven-A-Care's responses shall not be construed as a waiver of any objection to other discovery requests involving or relating to the same or similar subject matter of any of these Requests. Additionally, the fact that Ven-A-Care responds to any particular Interrogatory should not be construed as an admission or acknowledgment of any fact set forth in, assumed by, or inferred from any such Interrogatory.

9.      Ven-A-Care objects to these Interrogatories or parts thereof to the extent that they seek information or documents which are in the possession, custody, or control of the Dey Defendants or are publicly available and thus can be obtained by the defendants from some other source (including but not limited to, a public source) which is more convenient and less burdensome.

10.      Subject to and without waiving its objections, Ven-A-Care will respond to Interrogatories or portions thereof to the best of its present ability. Because Ven-A-Care

3

has not completed its discovery of the facts pertaining to this action or its preparation of this case for trial, Ven-A-Care reserves the right to supplement or amend its responses based upon any facts, documents, or other evidence that may develop or come to its attention at a later time.

11.     Each response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all other objections on grounds that would require the exclusion of any statement or information contained herein if the introduction of such evidence was sought at the time of trial, all of which objections and grounds are reserved and may be interposed at the time of trial. The fact that Ven-A-Care has responded to any part or all of any particular interrogatory is not intended to and shall not be construed to be a waiver by Ven-A-Care of any objection to relevance or admissibility of any evidence in this or any other action.

13.     These general objections apply to each Interrogatory and thus, for convenience, are not repeated after each Interrogatory, but rather are set forth herein and hereby incorporated into each response. The assertion of the same, similar, or additional objections or the provision of partial responses to individual Interrogatories does not and should not be construed to waive or modify any of the Ven-A-Care's general objections to each Interrogatory.

### SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

_____15.     Ven-A-Care objects to Defendant's definitions and instructions to the extent those are inconsistent with or in excess of that which is required by the Federal Rules of Civil Procedure, Local Rules of the District of Massachusetts and Judge

4

Saris's Case Management Orders relevant to the above captioned action, and all responses, therefore, are made strictly in accordance with the applicable rules and orders.

16.     Further, to the extent that the definitions and instructions require disclosures of Attorney-Client communications, documents protected from discovery as attorney work product, as confidential communications between parties with a common interest, or as materials developed in anticipation or preparation of litigation, or any other applicable privilege, Ven-A-Care objects to such definitions and instructions and shall not be bound thereby. Ven-Care also objects to the extent that the definitions and instructions are directed at documents or communications protected by the confidentiality provisions of the False Claims Act, 31 USC 3729, et, seq.

17.     Ven-A-Care objects to the Defendants' definition of "time frame" (definition #1) as vague, ambiguous, overly broad and unduly burdensome in that the definition does not clearly specify a time period, but refers to whatever time period, "corresponds to the events, reports, laws, determinations, or particular documents referred to in Interrogatories."

Subject to these objections and without waiving the foregoing, Ven-A-Care responds as follows:

## RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Separately for each of the Ven-A-Care Qui Tam Complaints, state the basis for Ven-A-Care's allegations that the Relator had "direct and independent knowledge of the

information and is the 'original source' of the information" on which the allegations contained in each of the complaints relating to Dey are based, and describe all facts that support, concern, or refute Ven-A-Care' s allegations that this information was voluntarily provided to the United States before filing the complaints. *See, e.g.,* Ven-A-Care's Second Amended Complaint ¶¶ 4-5,34 (filed Aug. 13, 1997 in the S.D. Fl.); Ven-A-Care's Third Amended Complaint ¶¶ 4-5,38-39 (filed Dec. 9, 1999 in the S.D. Fl.); Ven-A-Care's Fourth Amended Complaint ¶¶ 18, 128 (filed Dec. 11,2002 in the S.D. Fl.); Ven-A-Care's Complaint ¶ 8 (filed April 10, 2000 in the D. Mass.); Ven-A-Care's First Amended Complaint ¶ 9 (filed Feb. 15,2001 in the D. Mass.); Ven-A-Care's Second Amended Complaint ¶ 13 (filed Feb. 1,2002 in the D. Mass.); 31 U.S.C. § 3730(e)(4)(A) & (B).

As to each fact or event identified as supporting Ven-A-Care's allegations that it was an "original source" of information, your response should indicate the NDCs or J-Codes to which the fact or event relates and identify the specific date on which any referenced event occurred. Produce all documents that were identified in response to this Interrogatory, that relate to the information provided in response to this Interrogatory, or that were used in preparing a response to this Interrogatory.

**OBJECTION**:

All general objections and objections to Definitions and Instruction stated above are incorporated herein by reference.  Ven-A-Care also objects to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege and the common interest privilege.

6

The interrogatory mischaracterizes and misstates the allegations of the Relator's qui

tam complaints. The interrogatory is vague, overbroad, unduly burdensome and not

reasonably calculated to lead to the discovery of relevant evidence. The interrogatory

broadly requests Ven-A-Care to provide information establishing that it is the "original

source" of each and every allegation contained in its four qui tam complaints against

Dey.  A substantial body of federal authority establishes that "original source" is a

protected status that a Relator can assert to overcome the "public disclosure" barrier,

and that a Relator's obligation to demonstrate "original source" status thus arises only if

the court first finds that the Relator's suit is "based on" a prior "public disclosure" of the

wrongful conduct by the defendant that is the subject of the Relator's pleadings.

Dey seeks through this interrogatory instead to shift the burden to the Relator to show

that it is an "original source" without first alleging and obtaining findings (a) that

Dey's particular wrongdoing was publicly disclosed, within the meaning of the False

Claims Act, before the Relator filed its action, and (b) that the Relator's action is based

on such a public disclosure.  Further, the interrogatory is not relevant to any issue

before the court, nor is it reasonably calculated to lead to the discovery of relevant

evidence, because it is directed at allegations in the Relator's previous pleadings, which

are not at issue in the present action.  In her September 17, 2008 Order, Judge Saris

ruled in the Abbott case that Ven-A-Care, prior to responding to an interrogatory

regarding "original source," could serve an interrogatory regarding Abbott's contentions

related to "public disclosures."  Therefore, Ven-A-Care will respond to this interrogatory

once Dey responds to Ven-A-Care's interrogatory regarding contended "public

disclosures."

7

To the extent that the interrogatory requests that Ven-A-Care state its compliance with the notification requirements of 31 U.S.C. §3730(b)(2), the interrogatory is not relevant and is not reasonably calculated to lead to the discovery of relevant evidence.  Dey does not have standing to argue that the Relator has not complied with the requirements of 31 U.S.C. §3730(b)(2) for notification of the United States.  The interrogatory is overly broad and unduly burdensome to the extent the interrogatory requires production of all documents "that relate to the information in response to this interrogatory".  Furthermore, the interrogatory is overly broad and unduly burdensome to the extent that the interrogatory purports to require Ven-A-Care to draw pure conclusions of law.

**INTERROGATORY NO.2:**

State the basis for the following allegation made in paragraph 19 of Ven-A-Care's Fourth Amended Complaint filed in the Southern District of Florida:  "VEN-A-CARE attempted to alert the responsible state and government officials to the scheme being perpetrated by the DEFENDANTS. However, the government agencies lacked sufficient resources and expertise to adequately respond." Identify which responsible state and government officials Ven-A-Care contacted, as well as the date, location, and substance of those communications. Produce all documents that were identified in response to this Interrogatory, that relate to the information provided in response to this Interrogatory, or that were used in preparing a response to this Interrogatory.

**OBJECTION:**

All general objections and objections to Definitions and Instruction stated above

8

are incorporated herein by reference. Ven-A-Care also objects to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege and the common interest privilege.

Ven-A-Care further objects to the extent that the interrogatory is overly broad and not reasonably calculated to lead to the discovery of relevant evidence. The interrogatory is improperly directed to allegations in the Relator's qui tam complaints rather than allegations in the United States' First Amended Complaint, the operative pleading of both Plaintiffs in the instant action.

**RESPONSE**:

The allegation in paragraph 19 states in its entirety:

> VEN-A-CARE's principals were aware that Medicare and Medicaid reimbursed for drugs at amounts that were intended to be based on an estimation of cost and not provide for huge windfall profits at the GOVERNMENT's expense. VEN-A-CARE attempted to alert the responsible state and federal government officials to the scheme being perpetrated by the DEFENDANTS. However, the government agencies lacked sufficient resources and expertise to adequately respond. Accordingly, the Relator commenced this action based upon its original source information.

The allegation in paragraph 19, above, refers to Ven-A-Care's attempts to alert the Government about the Defendants' scheme before it filed its initial complaint in the Southern District of Florida.  Therefore, specific communications with government entities responsive to this interrogatory occurred between 1990 and the filing of Ven-A-Care's initial complaint.  Ven-A-Care also had specific communications with government entities before it filed the claims against Dey in its Second Amended Complaint on August 13, 1997.  Ven-A-Care has testified extensively regarding this topic in depositions in this MDL proceeding and in *State of Texas ex rel. Ven-A-Care of*

9

*the Florida Keys, Inc. v.  Dey, Inc., et al., Case No. GV002327, Travis County, Texas.*
Ven-A-Care also responded to a similar interrogatory in the United States' case against
Abbott Laboratories, Inc. ("Abbott").  Additional information responsive to this
interrogatory is contained in Ven-A-Care's response to Abbott Laboratories Inc.'s
interrogatory number 22.  Ven-A-Care incorporates all of the above described testimony
herein by reference and supplements that testimony as follows:

      Ven-A-Care was incorporated on or about March 1987 for the purpose of
providing infusion, inhalation, injectable and other drugs to patients in their homes and
other locations outside of the hospital setting.  As a pharmacy that provides infusion,
oral, inhalation and injectable drugs, Ven-A-Care has access to industry insider
information about drug pricing and methods used by pharmaceutical manufacturers to
market their drugs.  In addition, Ven-A-Care has been solicited on a number of
occasions to enter into business arrangements based on financial inducements funded
by reimbursements paid for the pharmaceuticals dispensed by a speciality pharmacy.

      Prior to filing its initial complaint, Ven-A-Care became aware of reimbursement
discrepancies in the marketplace and began a dialogue with government officials about
those discrepancies.  On or about August 25, 1995, Ven-A-Care became aware of
reimbursement discrepancies in the marketplace involving inhalants, including those
manufactured by Dey, and notified Mark Lavine at the United States Attorney's Office in
the Southern District of Florida.  See, VAC MDL 48643-44.  Ven-A-Care's ongoing
disclosures with Mr. Jerry Wells about the false claims scheme centered on the inhalant
drugs during 1997.  Document VAC MDL 45083-45087 is an example of the
communications Ven-A-Care had with Mr. Wells regarding Medicaid reimbursement

10

and specifically, Dey.

Ven-A-Care actively reported information to the Department of Justice and the Office of Inspector General of the Department of Health and Human Services and assisted in the investigation of kickback arrangements arising from excessive reimbursement for pharmaceutical therapies.  Examples of Ven-A-Care's communications with the OIG specific to Dey include:  VAC MDL 43554-43556; VAC MDL 43585-43586; VAC MDL 43646-43650; VAC MDL 43712-43714; VAC MDL 43715-43720; VAC MDL 43543-43545; VAC MDL 43454-43456; VAC MDL 43319-43320; and VAC MDL 43201-43203.  During this time, Ven-A-Care investigated the actual prices charged by Dey for inhalant pharmaceutical products and reported the actual prices charged by Dey to the Government, together with the wide variance between actual and reported prices.

In October of 1994, Ven-A-Care initiated communications with every state Medicaid program to determine the Medicaid reimbursement methodology used by each state.   During this process, Ven-A-Care learned that Medicare and Medicaid programs pay millions of claims for tens of thousands of drug products each year and must, therefore, use prices reported by drug manufacturers to recognized pricing compendia to set reimbursement.  Ven- A-Care's communications with state Medicaid officials include but are not limited to: VAC MDL 71062-7112; VAC MDL 74718-19; VAC MDL 74747-50; VAC MDL 74752-74755; VAC MDL  74758-64; and VAC MDL 74773-778.  Ven-A-Care also learned that the Medicare and Medicaid programs are unable to determine actual prices in real time or otherwise respond to the reimbursement fraud disclosed by Ven-A-Care.  Ven-A-Care learned from first hand

11

experience and from advice of a government official, Jerry Dunham of the HHS, Office

of Inspector General, that a false claims act case was the vehicle and remedy

necessary to resolve the TPN/IDPN reimbursement fraud matter and, later, the AWP

fraud reimbursement matter.

On December 4, 1994, Ven-A-Care reported general information relating to price

reporting fraud in a letter to Alicia Valle, Assistant United States Attorney, Southern

District of Florida.  The letter to Ms. Valle reveals confidential, attorney-client, work

product privileged information as well as information protected from disclosure by the

common interest privilege.  The letter is logged on Ven-A-Care's privilege log.  During

1995, prior to the filing of Ven-A-Care's initial sealed qui tam complaint, Ven-A-Care

had many discussions with Ms. Valle and Mr. Mark Lavine, also an Assistant United

States Attorney in the Southern District of Florida, during which Ven-A-Care specifically

described the fraud scheme alleged in Ven-A-Care's initial qui tam complaint.   On

August 25, 1995, Ven-A-Care notified Mr. Lavine of the specific information showing

fraud in the inhalant marketplace.  See, VAC MDL 48643-48644.  Subsequent to filing

the initial complaint, Ven-A-Care sent a letter on September 18, 1995, to Ms. Sally

Strauss, a Department of Justice trial attorney, advising that Ven-A-Care intended to

amend its complaint and providing specific information regarding Dey's fraud scheme.

Between September 1995 and the filing of Ven-A-Care's Second Amended Complaint,

Ven-A-Care had additional discussions with officials from the United States Department

of Justice as well as the United States Attorney's Office for the Southern District of

Florida.  Examples of documents showing those communications are listed on Ven-A-

Care's privilege log and include a letter sent to Mr. Mark Lavine on September 19, 1995

12

and a letter sent to Michael Theis, United States Department of Justice Trial Attorney,

dated March 26, 1996.  Details regarding the fraud allegations against Dey were also

part of a Power Point presentation given to the United States Department of Justice and

the National Association of Medicaid Fraud Control Units sometime during 1998.  The

Power Point presentation is also on Ven-A-Care's privilege log.   Immediately before

filing its qui tam action in the Southern District of Florida, Ven-A-Care served on the

U.S. Attorney for that district, and on the Attorney General of the United States, its

written disclosure of substantially all material evidence and information in its possession

relevant to the claims asserted against Dey in that action.  Similarly, before filing its

action in the District of Massachusetts, Ven-A-Care served on the U.S. Attorney for that

district, and on the Attorney General of the United States, its written disclosure of

substantially all material evidence and information in its possession relevant to the

claims asserted against Dey in that action.

Many of Ven-A-Care's substantive communications with government entities

regarding the allegations of its complaint are privileged.  Additional written

communications can be ascertained by a review of Ven-A-Care's privilege log produced

in this case.

**INTERROGATORY NO.3:**

Identify any and all facts that support, concern, or refute Ven-A-Care's

allegations that "the Medicare and State Medicaid Programs" were "not aware of the

prices actually paid for the [Subject Drugs] by the physician, clinic or pharmacy

presenting the claim for payment" and that Dey "concealed from the Medicare and

State Medicaid Programs price reductions occurring due to competition in the

13

marketplace." Ven-A-Care's Fourth Amended Complaint filed in the Southern District of Florida ¶ 147. Produce all documents that were identified in response to this Interrogatory, that relate to the information provided in response to this Interrogatory, or that were used in preparing a response to this Interrogatory.

**OBJECTION:**

All general objections and objections to Definitions and Instruction stated above are incorporated herein by reference.  Ven-A-Care also objects to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege and the common interest privilege. The interrogatory is overly broad and not reasonably calculated to lead to the discovery of relevant evidence. The interrogatory is improperly directed at allegations in the Relator's qui tam complaints rather than allegations in the United States' Complaint, the operative pleading of both plaintiffs in the instant action.

**RESPONSE**:

Ven-A-Care testified regarding this topic in Abbott's depositions of its Federal Rule of Civil Procedure 30(b)(6), Mr. T. Mark Jones, and its Federal Rule of Civil Procedure 30(b)(1) witnesses in the MDL proceeding, including its officers and directors.  Ven-A-Care has testified regarding this topic in depositions in this MDL proceeding as well as depositions in *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v.  Dey, Inc., et al., Case No. GV002327, Travis County, Texas.* Ven-A-Care and supplements that testimony as follows:

As alleged generally in the Relator's sealed qui tam complaints, in the United

14

States' Amended Complaint and specifically in paragraph 147 of the Relator's Third Amended sealed qui tam complaint, Dey's culpable conduct began approximately December 1992 and continued until at least 2004, the relevant period of time for purposes of the instant action.  During this time period, Dey exercised direct and indirect control of the prices for the Subject Drugs published by the price reporting compendia.  In the course of exercising that direct and indirect control, Dey set and reported prices to the price reporting compendia that did not reflect the prices at which Dey was generally and currently selling the Subject Drugs in the marketplace.  Dey's conduct was intended to and did result in the creation of large spreads for the Subject Drugs.  The conduct was purposefully concealed by Dey so that the Medicare and state Medicaid programs would unknowingly reimburse providers for the Subject Drugs at amounts which far exceeded the amounts intended to be reimbursed by the programs.

Dey concealed its conduct by requiring its customers to keep the actual purchase prices for Dey drugs confidential while publicly disseminating reported prices that exceeded the prices generally and currently paid in the marketplace. Dey also marketed its drugs to Ven-A-Care, as well as other Dey customers, through GPOs and wholesalers in order to conceal the price paid by its customers from the Government. As an industry insider, Ven-A-Care saw the vast difference between the amounts charged to Dey's customers and the amounts reimbursed by Medicare and Medicaid. Ven-A-Care's position as an industry insider also allowed Ven-A-Care to see how the profit or "spread" was used by Dey as a marketing tool.

Dey purposefully did not disclose to the Medicare and Medicaid programs that it was engaging in the conduct described above, as alleged in the Relator's sealed qui

15

tam complaints and the United States' Complaint.  Dey purposefully did not provide its actual sales prices, the prices generally and currently paid in the marketplace, to the Medicare and Medicaid programs for use in drug reimbursement.  Instead, Dey purposefully disseminated public prices that far exceeded the amounts generally and currently paid in the marketplace, to impede the Government's efforts to arrive at reasonable estimates of acquisition cost in setting reimbursement amounts for the Subject Drugs.  Ven-A-Care's allegations of concealment have been corroborated by discovery in the instant action as well the Texas action.

Because Dey concealed the prices generally and currently paid in the marketplace and reported false, inflated prices to the pricing compendia that it knew the Medicare and Medicaid programs relied on, Government reimbursement was based on the false prices Dey disseminated for access by those programs.  Reductions in market prices because of competition were not reflected in the false, inflated prices Dey reported to the price reporting compendia.  Therefore, Medicare and Medicaid did not benefit from price reductions due to market competition.

As an industry insider Ven-A-Care was aware that, in addition to concealing actual market prices while simultaneously reporting false inflated prices for the Subject Drugs, drug manufacturers such as Dey participated in lobbying efforts to prevent the United States from learning of its fraudulent conduct.  See documents obtained by Ven-A-Care regarding ASCO's successful efforts to prevent HCFA from acquiring information regarding the acquisition costs of drugs, VAC MDL 66084-66096.

At no time, even after it was aware of Government investigations, did Dey disclose its conduct to CMS or to the state medicaid programs.  Instead, Dey boldly

16

continued its conduct.  Support for the basis of this response includes: 1) the false prices Dey reported to the publishing compendia for the Subject Drugs throughout the relevant period; 2) the transactional data for the Subject Drugs provided by Dey in this litigation; 3) the documents Dey has produced reflecting spread marketing; and 4) testimony from Dey witnesses regarding spread marketing.

**INTERROGATORY NO.4:**

As to Dey, state the basis for the following allegation contained in paragraph 157 of Ven-A-Care's Third Amended Complaint filed in the Southern District of Florida: "The DEFENDANTS have each knowingly and actively impeded the efforts of the Government: to arrive at reasonable estimates of acquisition cost in setting payment amounts for claims for the specified drugs; to benefit from drug price competition; and to use the Government's huge volume purchasing power for the benefit of the taxpayer." Produce all documents that were identified in response to this Interrogatory, that relate to the information provided in response to this Interrogatory, or that were used in preparing a response to this Interrogatory.

**OBJECTIONS:**

All general objections and objections to Definitions and Instruction stated above are incorporated herein by reference. Ven-A-Care also objects to the extent that the interrogatory seeks privileged information, including but not limited to, the attorney-client privilege, the work product privilege and the common interest privilege.

Further, the interrogatory is overly broad and not reasonably calculated to lead to the discovery of relevant evidence. The interrogatory is improperly directed to

17

allegations in the Relator's qui tam complaints rather than allegations in the United

States' Complaint, the operative pleading of both Plaintiffs in the instant action.

**RESPONSE:**

The response to interrogatory number 3 is incorporated herein by reference.

DATED: December 3, 2008

> For the Relator,
> Ven-A-Care of the Florida Keys, Inc.
>
> /s/ Alison W. Simon
> James J. Breen
> Alison W. Simon
> The Breen Law Firm
> P. O. Box 297470
> Pembroke Pines, FL  33029-7470
> Phone:  954-874-1635
> Fax: 954-874-1739

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 3rd day of December, 2008 caused an electronic copy of the above RESPONSE OF PLAINTIFF VEN-A-CARE OF THE FLORIDA KEYS, INC. TO THE DEY DEFENDANTS' FIRST SET OF INTERROGATORIES to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

> /s/ Alison W. Simon
> Alison W. Simon

18

STATE OF

COUNTY OF

## VERIFICATION

BEFORE ME, the undersigned notary, a person authorized to administer oaths, on this day, personally appeared  T. MARK JONES, President of Ven-A-Care of the Florida Keys, Inc., a person whose identity is known to me.  After I administered an oath to him, upon his oath, he said the following: He has read the RESPONSE OF PLAINTIFF VEN-A-CARE OF THE FLORIDA KEYS, INC. TO THE DEY DEFENDANTS' FIRST SET OF INTERROGATORIES and the facts stated in the response are either within his personal knowledge and are true and correct or are true and correct to his knowledge and belief, based upon information supplied to him by other persons.

T. Mark Jones
President, Ven-A-Care of the Florida Keys, Inc.

SWORN TO and SUBSCRIBED before me by _____ on this $3$ day of December, 2008

Notary Public in and for the State of Georgia

My Commission Expires:

LEILA RUTH BREEN
Notary Public, Fulton County, GA
My Commission Expires July 06, 2009

19