# EXHIBIT AP



14752055
LEXISNEXIS' FILE & SERVE
E·SERVICE
May 7 2007
5:46PM

# Program Memorandum
# Intermediaries/Carriers

**Department of Health and
Human Services (DHHS)
HEALTH CARE FINANCING
ADMINISTRATION (HCFA)**

Transmittal AB-00-86                                       Date:  **SEPTEMBER 8, 2000**

**CHANGE REQUEST 1232**

SUBJECT:    **An Additional Source of Average Wholesale Price Data in Pricing Drugs and
Biologicals Covered by the Medicare Program**

The purpose of this Program Memorandum (PM) is to provide you with an alternative source of average wholesale price data (attached) for some drugs and biologicals covered by the Medicare program.  The first attachment includes data for 32 drugs that you are to consider in determining the Medicare payment allowances for your January 2001 quarterly update.  The second attachment includes data for 14 oncology drugs and 3 clotting factors that are not to be implemented in that same quarterly update.

The payment allowance for drugs and biologicals covered by the Medicare program is described in PM AB-99-63.  That PM states that drugs and biologicals not paid on a cost or prospective payment basis are paid based on the lower of the billed charge or 95 percent of the average wholesale price reflected in sources such as the Red Book, Blue Book, or Medispan.  Examples of drugs that are paid on this basis are drugs furnished incident to a physician's service, drugs furnished by pharmacies under the durable medical equipment benefit, covered oral anti-cancer drugs, and drugs furnished by independent dialysis facilities that are not included in the end stage renal disease composite rate payment.  While the Blue Book is no longer available, another publication, Price Alert, is available. Also, there are electronic versions of the same data.

The data in the attachments have come from the United States Department of Justice (DOJ) and the National Association of Medicaid Fraud Control Units (NAMFCU).  They are an alternative source of average wholesale price data for certain drugs, which has recently become available to HCFA. These data have been compiled for about 400 national drug codes (NDC) representing about 50 different chemical compounds.  These data are from wholesalers' catalogs that list the prices at which the wholesaler sells the respective products. The DOJ has indicated that these are more accurate wholesale prices for these drugs.  Furthermore, the DOJ has indicated that because purchasers often receive further discounts below the advertised wholesale catalog price, either from a wholesaler or from the drug manufacturer directly, actual acquisition costs may be lower.  The DOJ indicates that some physicians and suppliers obtain drugs at prices lower than the wholesale catalog prices through Group Purchasing Organizations (GPO).  For example, the DOJ data from wholesale catalogs indicates an average wholesale price of $22 for one albuterol sulfate NDC which is substantially less than the $73 average wholesale price in the Redbook and compares to $15 from a GPO.  These data are generally consistent with findings from OIG reports.

There has been correspondence with some members of congress on this subject.  Under separate cover, we will send you a letter from the Administrator to Members of Congress, which places in context the issue of pricing drugs covered under the existing Medicare drug benefit and this new source.

DOJ and NAMFCU have provided these data to First Data Bank, a company that compiles average wholesale prices for most State Medicaid programs.  On May 1, 2000, First Data Bank provided these new average wholesale prices to State Medicaid programs. Some States have already implemented these new average wholesale prices while others have not.

**HCFA-Pub. 60AB**



EXHIBIT
184
5/15/07

You are to consider these alternative wholesale prices as another source in determining your January, 2001 quarterly update for the 32 drugs (Attachment 1), as per PM AB-99-63. These drugs account for 75 percent of Medicare spending and 70 percent of savings (based on DOJ data) for the drugs on the complete DOJ list. However, we have some concern about access to care related to the DOJ's wholesale prices for 14 chemotherapy drugs and 3 clotting factors (Attachment 2), due to other Medicare payment policies associated with the provision of these drugs for the treatment of cancer and hemophilia. Therefore, you are not to consider at this time using the DOJ data for these drugs (Attachment 2) to establish your Medicare allowances while we further review these concerns and develop alternative policies. For the drugs shown in Attachment 2, use your usual source of average wholesale prices in your next quarterly update.

The data in these attachments may not represent all of the NDCs for a drug or biological in applying the pricing rules described in PM AB-99-63; if you decide to use these data, then you must use solely these data as the source of average wholesale prices in establishing your Medicare payment allowances for the drugs in Attachment 1.

You are to report by October 15, 2000, your usual source as well as the source you intend to use for the January 2001 updates. Also, you are to provide a list of what the updates would be for the source(s) you identify as usual and for January 2001 updates, and the percentage difference, if any, for all the drugs listed in Attachment 1 and 2 (source for drugs in Attachment 2 can not be DOJ data). You are to submit these reports electronically to a special mailbox being established for this purpose. The e-mail address for this mailbox is **DOJAWP@hcfa.gov.**

For the drugs in Attachment 1, we may provide additional guidance by the end of October, which could affect your January 2001 updates. We will provide guidance in subsequent correspondence that concerns your future drug updates, and on Medicare allowances for the drugs listed in Attachment 2 as any necessary adjustments to other payments related to the provision of these drugs are being carried out. We will also convey how we plan to adjust Medicare allowances under the outpatient prospective system for drugs that are both subject to the AWP rules and paid on a passthrough basis.

The enclosed data show a price for each NDC that is an average of the wholesale prices in the catalogs of the various wholesale companies that are also shown. The DOJ indicates that these wholesalers have toll-free numbers (included in Attachment 1) and the capacity to supply drugs via overnight delivery to any place in the country. If you decide to use these data and if a physician or supplier indicates that they cannot obtain one of these products for the average wholesale price in this new source, you may explain to the physician or supplier that one or more of the wholesale companies in the attachment have indicated to the DOJ that they supply these drugs at or below these prices. You may give the physician or supplier the name and toll-free number of the wholesaler(s). You may also give the name and telephone number of the manufacturer of the drug (available in the Red Book) as DOJ has indicated that manufacturers often supply the drugs directly. Some of the manufacturers also have web pages on the Internet. Physicians or suppliers who are members of a GPO might also obtain these drugs through that organization at or below these average wholesale prices. However, you should not imply in any way that the physician or supplier is required to change their procedure for obtaining drugs. Further, you should indicate that you are not advocating the use of these sources and do not assume any liability for the choice of source by the physician or supplier.

Sections 1842(o) and 1833(a)(1)(S) of the Social Security Act (the Act) require the Medicare program to set payment allowances for drugs and biologicals at the lower of the actual amount billed or 95 percent of the average wholesale price. The attached data represent another source of average wholesale prices for the products on the attached list. Therefore, use of this new source of average wholesale prices in Attachment 1 is not an inherent reasonableness adjustment under paragraphs (8) and (9) of section 1842(b) of the Act.

3

The procedure for processing intermediary claims has not changed. As described in PM AB-97-25, all carriers will continue to furnish free of charge their drug payment allowance updates for all drugs and biologicals directly to the fiscal intermediaries in their jurisdiction. Carriers should contact the fiscal intermediaries to determine the preferred method of transmission. Carriers are to send this information to all fiscal intermediaries with whom they routinely deal. To further clarify, fiscal intermediaries must use each carrier's drug payment allowances for claims submitted under that carrier's jurisdiction.

**Attachments (3)**

**The effective date for this (PM) is September 8, 2000.**

**The implementation date for this PM is September 8, 2000.**

**These instructions should be implemented within your current operating budget.**

**This PM may be discarded September 1, 2001.**

**If you have any questions contact Robert Niemann at 410-786-4531.**

4

Attachment 1 – If you decide to use these data, use solely these data to update the HCPCS billing codes that correspond to the drugs on this list.

| Drug Name | Prod/Mfr | Measurements | NDC | Wholesaler | Average Wholesale (AWP) |
|---|---|---|---|---|---|
| Acetylcysteine | (Abbott Hosp.)/SOL, IH | 10%, 30 ml, 3s | 00074-3307-03 | M K | $21.90 |
| Acetylcysteine | (Abbott Hosp.)/SOL, IH | 20%, 4 ml, 30 ml, 3s | 00074-3308-03 | MK, BB | $18.75 |
| Acetylcysteine | (Dey)/SOL, IH | 10%, 4ml, 12s | 49502-0181-04 | M K | $25.80 |
| Acetylcysteine | (Dey)/SOL, IH | 10%, 10 ml, 3s | 49502-0181-10 | M K | $15.27 |
| Acetylcysteine | (Dey)/SOL, IH | 10%, 30 ml, 3s | 49502-0181-30 | M K | $41.97 |
| Acetylcysteine | (Dey)/SOL, IH | 20%, 100 ml, ea | 49502-0182-00 | M K | $75.90 |
| Acetylcysteine | (Dey)/SOL, IH | 20%, 4 ml, 12s | 49502-0182-04 | M K | $31.08 |
| Acetylcysteine | (Dey)/SOL, IH | 20%, 10 ml, 3s | 49502-0182-10 | M K | $18.57 |
| Acetylcysteine | (Dey)/SOL, IH | 20%, 30 ml, 3s | 49502-0182-30 | M K | $50.64 |
| Acetylcysteine | (Faulding)/SOL, IH (VIAL) | 10%, 4 ml, 10s | 61703-0203-04 | MK,BB | $13.50 |
| Acetylcysteine | (Faulding)/SOL, IH (VIAL) | 10%, 30 ml, 10s | 61703-0203-31 | BB | $91.00 |
| Acetylcysteine | (Faulding)/SOL, IH (VIAL) | 10%, 4 ml, 10s | 61703-0204-04 | MK, BB | $19.50 |
| Acetylcysteine | (Faulding)/SOL, IH (VIAL) | 10%, 30 ml, 10s | 61703-0204-31 | M K | $91.00 |
| Acyclovir Sodium | (Abbott Hosp.)/(Vial, Fliptop) | 500 mg, 10s | 00074-4427-01 | BB, MK | $349.05 |
| Acyclovir Sodium | (Abbott Hosp.)/(Vial, Fliptop) | 1000 mg, 10s | 00074-4452-01 | BB, MK | $700.10 |
| Acyclovir Sodium | (App)/INJ, IJ (Vial) | 50 mg/ml, 10 ml | 63323-0325-10 | M K | $15.00 |
| Acyclovir Sodium | (App)/INJ, IJ (Vial) | 50 mg/ml, 20 ml | 63323-0325-20 | M K | $28.00 |
| Acyclovir Sodium | (App)/PDI | 15s, 500 mg, ea | 63323-0105-10 | M K | $37.15 |
| Acyclovir Sodium | (App)/PDI | 15s, 1000 mg, ea | 63323-0105-20 | M K | $75.13 |
| Acyclovir Sodium | (Bedford)/PDI, IJ (S.D.V.) | 500 mg, 10s | 55390-0612-10 | BB, ASD, FI | $207.00 |
| Acyclovir Sodium | (Bedford)/PDI, IJ (S.D.V.) | 1000 mg, 10s | 55390-0613-20 | BB, ASD, FI, OS | $401.75 |
| Acyclovir Sodium | (Faulding)/PDI, IJ | 500 mg, 10s | 61703-0311-20 | FI | $89.00 |
| Acyclovir Sodium | (Faulding)/PDI, IJ | 1000 mg, 10s | 61703-0311-43 | FI | $179.50 |
| Acyclovir Sodium | (Fujisawa/APP)/PDI, IJ (VIAL) | 500 mg, 10s | 63323-0105-10 | BB, MK | $371.50 |
| Acyclovir Sodium | (Fujisawa/APP)/PDI, IJ (VIAL) | 1000 mg, 10s | 63323-0110-20 | BB, MK | $751.80 |
| Acyclovir Sodium | (Fujisawa/APP)/PDI, IJ (VIAL) | 500 mg, 10s | 63323-0325-10 | BB | $150.00 |
| Acyclovir Sodium | (Fujisawa/APP)/PDI, IJ (VIAL) | 1000 mg, 10s | 63323-0325-20 | BB, MK | $280.00 |
| Acyclovir Sodium | (Gensia)/PDI, IJ (VIAL) | 500 mg, 10s | 00703-8104-03 | BB | $100.00 |
| Acyclovir Sodium | (Gensia)/PDI, IJ (VIAL) | 1000 mg, 10s | 00703-8105-03 | BB | $186.00 |
| Albuterol Sulfate | (Dey)/SOL, IH | 0.5%, 20 ml | 49502-0196-20 | BB, MK | $5.91 |
| Albuterol Sulfate | (Dey)/SOL, IH | 0.083%, 3 ml, 25s, UD | 49502-0697-03 | BB, MK | $9.17 |
| Albuterol Sulfate | (Dey)/SOL, IH | 0.083%, 3ml, 30s, UD | 49502-0697-33 | BB, MK | $11.01 |
| Albuterol Sulfate | (Dey)/SOL, IH | 0.083%, 3ml, 60s, UD | 49502-0697-60 | BB, MK | $22.01 |
| Albuterol Sulfate | (Schein)/SOL, IH | 0.5%, 20 ml | 00364-2530-55 | BB, MK | $7.62 |
| Albuterol Sulfate | (Warrick)/SOL, IH | 0.083%, 3ml, 60s | 59930-1500-06 | BB, MK, AND | $21.92 |
| Albuterol Sulfate | (Warrick)/SOL, IH | 0.083%, 3ml, 25s, UD | 59930-1500-08 | BB, MK, AND | $9.16 |
| Albuterol Sulfate | (Warrick)/SOL, IH | 0.5%, 20 ml | 59930-1515-04 | BB, MK | $5.65 |
| Amikacin Sulfate | (Abbott Hosp.)/(Vial, Fliptop) | 50 mg/ml, 2 ml, 10s | 00074-1955-01 | BB | $125.00 |
| Amikacin Sulfate | (Abbott Hosp.)/(Vial, Fliptop) | 250 mg/ml, 2 ml, 10s | 00074-1956-01 | BB, MK | $150.00 |

5

| | | | | | |
|---|---|---|---|---|---|
| *Amikacin Sulfate* | (Abbott Hosp.)/(Vial, Fliptop) | 250 mg/ml, 4 ml, 10s | 00074-1957-01 | BB, MK | $320.00 |
| *Amikacin Sulfate* | (Apothecon) Amikin/INJ, IJ (Vial) | 250 mg/ml, 2 ml | 00015-3020-20 | FI, MK | $17.31 |
| *Amikacin Sulfate* | (Apothecon) Amikin/INJ, IJ (Vial) | 250 mg/ml, 4 ml | 00015-3023-20 | FI, MK | $34.49 |
| *Amikacin Sulfate* | (Bedford)/INJ, IJ (S.D.V., P.F.) | 250 mg/ml, 2 ml, 10s | 55390-0226-02 | BB, MK, FI | $65.33 |
| *Amikacin Sulfate* | (Bedford)/INJ, IJ (S.D.V., P.F.) | 250 mg/ml, 4 ml, 10s | 55390-0226-04 | BB, MK, FI | $125.33 |
| *Amikacin Sulfate* | (Faulding Pharm.)/INJ, IJ (VIAL) | 50 mg/ml, 2 ml, 10s | 61703-0201-07 | M K | $295.00 |
| *Amikacin Sulfate* | (Faulding Pharm.)/INJ, IJ (VIAL) | 250 mg/ml, 4 ml, 10s | 61703-0202-04 | BB, MK | $890.00 |
| *Amikacin Sulfate* | (Faulding Pharm.)/INJ, IJ (VIAL) | 250 mg/ml, 2 ml, 10s | 61703-0202-07 | BB, MK | $450.00 |
| *Amikacin Sulfate* | (Faulding Pharm.)/INJ, IJ (VIAL) | 250 mg/ml, 3 ml, 10s | 61703-0202-08 | M K | $600.00 |
| *Amikacin Sulfate* | (Gensia)/INJ, IJ (S.D.V.) | 50 mg/ml, 2 ml, 10s | 00703-9022-03 | BB, OS | $72.68 |
| *Amikacin Sulfate* | (Gensia)/INJ, IJ (S.D.V.) | 250 mg/ml, 2 ml, 10s | 00703-9032-03 | BB, MK | $70.00 |
| *Amikacin Sulfate* | (Gensia)/INJ, IJ (Vial) | 250 mg/ml, 4 ml, 10s | 00703-9040-03 | BB | $140.00 |
| *Amphotercin B* | (Apothecon) Fungizone/PDI, IJ | 50 mg, ea | 00003-0437-30 | FI | $6.20 |
| *Amphotercin B* | (Gensia)/PDI, IJ (S.D.V.) | 50 mg, ea | 00703-9785-01 | BB | $9.80 |
| *Amphotercin B* | (Pharmacia/Upjohn) Amphocin/PDI, IJ | 50 mg, ea | 00013-1405-44 | ASD | $16.00 |
| *Calcitriol* | (Abbott Hosp) Calcijex/INJ, IJ (AMP) | 1mcg/ml, 1ml, 100s | 00074-1200-01 | FI | $1,079.00 |
| *Calcitriol* | (Abbott Hosp) Calcijex/INJ, IJ (AMP) | 2 msg/ml, 1 ml, 100s | 00074-1210-01 | FI | $2,009.35 |
| *Cimetidine Hydrochloride* | (Abbott Hosp.)/INJ, IJ | 300 mg/50 ml, 50 ml, 48s | 00074-7447-16 | M K | $120.00 |
| *Cimetidine Hydrochloride* | (Abbott Hosp.)/INJ, IJ (ADD-VANTAGE) | 150 mg/ml, 2 ml, 25s | 00074-7446-02 | MK, BB | $35.00 |
| *Cimetidine Hydrochloride* | (Abbott Hosp.)/INJ, IJ (VAIL, FLIPTOP) | 150 mg/ml, 2 mg/ml, 2 ml, 10s | 00074-7444-01 | ASD, BB, MK, OTN, FI | $11.72 |
| *Cimetidine Hydrochloride* | (Abbott Hosp.)/INJ, IJ (VAIL, FLIPTOP) | 150 mg/ml, 8 ml, 10s | 00074-7445-01 | ASD, BB, MK, OS | $30.00 |
| *Clindamycin Phosphate* | (Abbott Hosp.)/(Vial, Fliptop) | 150 mg/ml, 2 ml, 25s | 00074-4050-01 | FI | $75.35 |
| *Clindamycin Phosphate* | (Abbott Hosp.)/(Vial, Fliptop) | 150 mg/ml, 4 ml, 25s | 00074-4051-01 | BB | $174.00 |
| *Clindamycin Phosphate* | (Pharmacia/Upjohn) Cleocin/INJ, IJ | 150 mg/ml, 2 ml, 25s | 00009-0870-26 | BB, MK | $61.20 |
| *Clindamycin Phosphate* | (Pharmacia/Upjohn) Cleocin/INJ, IJ | 150 mg/ml, 4 ml, 25s | 00009-0775-26 | BB, MK | $126.00 |
| *Clindamycin Phosphate* | (Add-Vantage) | 150 mg/ml, 4 ml, 25s | 00009-3124-03 | BB, MK | $126.00 |
| *Clindamycin Phosphate* | (Add-Vantage) | 150 mg/ml, 6 ml, 25s | 00009-0902-18 | BB, MK | $162.00 |
| *Clindamycin Phosphate* | (Add-Vantage) | 150 mg/ml, 6 ml, 25s | 00009-3447-03 | BB, MK | $162.00 |
| *Clindamycin Phosphate* | (Add-Vantage) | 150 mg/ml, 4 ml, 25s | 00009-0728-09 | BB, MK | $259.20 |
| *Cromolyn Sodium* | (Dey)/SOL, IH | 10 mg/ml, 2ml, 60s, | 49502-0689-02 | BB, MK | $23.01 |

6

| | | UD | | | |
|---|---|---|---|---|---|
| Cromolyn Sodium | (Dey)/SOL, IH | 10 mg/ml, 2ml, 120s, UD | 49502-0689-12 | BB, MK | $45.71 |
| Dexamethasone Acetate | (Schein)/INJ, IJ (M.D.V.) | 8 mg/ml, 5 ml | 00364-6699-53 | FI | $11.50 |
| Dexamethasone Sodium Phosphate | (Elkins-Sin)/(M.D.V.) | 10 mg/ml, 10 ml | 00641-2277-41 | FI, OS | $2.65 |
| Dexamethasone Sodium Phosphate | (Fujisawa/APP)/INJ, IJ (VIAL) | 4 mg/ml, 1 ml ea | 00469-1650-00 | BB | $0.66 |
| Dexamethasone Sodium Phosphate | (Fujisawa/APP)/INJ, IJ (VIAL) | 4 mg/ml, 5 ml | 00469-1650-20 | BB | $1.67 |
| Dexamethasone Sodium Phosphate | (Fujisawa/APP)/INJ, IJ (VIAL) | 30 ml | 00469-1650-50 | BB | $10.00 |
| Dexamethasone Sodium Phosphate | (Fujisawa/APP)/INJ, IJ (VIAL) | 4 mg/ml, 5 ml | 63323-0165-05 | OTN | $0.90 |
| Dexamethasone Sodium Phosphate | (Fujisawa/APP)/INJ, IJ (VIAL) | 30 ml | 63323-0165-30 | FI | $10.00 |
| Dexamethasone Sodium Phosphate | (Fujisawa/APP)/INJ, IJ (VIAL), (M.D.V.) | 30 ml | 63323-0165-01 | BB | $0.66 |
| Dexamethasone Sodium Phosphate | (Schein)/INJ, IJ (M.D.V) | 4 mg/ml, 5 ml ea | 00364-6681-32 | BB | $1.08 |
| Dextrose | (Abbott Hosp.)/(ADD-VANTAGE, LIFECARE) | 5%, 50 ml | 00074-7100-13 | BB, TRI | $3.22 |
| Dextrose | (Abbott Hosp.)/(ADD-VANTAGE) | 5%, 250 ml | 00074-7100-02 | TRI | $4.12 |
| Dextrose | (Abbott Hosp.)/(ADD-VANTAGE, LIFECARE) | 5%, 100 ml | 00074-7100-23 | TRI | $3.22 |
| Dextrose | (Abbott Hosp.)/(LIFECARE) | 250 ml | 00074-1522-02 | TRI, FI | $3.63 |
| Dextrose | (Abbott Hosp.)/(LIFECARE) | 5%, 150 ml | 00074-7922-61 | BB, TRI | $1.46 |
| Dextrose | (Abbott Hosp.)/(LIFECARE) | 5%, 50 ml | 00074-7923-36 | BB, TRI | $1.45 |
| Dextrose | (Abbott Hosp.)/(LIFECARE) | 5%, 100 ml | 00074-7923-37 | ASD | $1.45 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (1000 ml container), 1000 ml | 00074-1518-05 | BB, FI, OTN, TRI, OS | $14.54 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (1000 ml container), 1000 ml | 00074-1519-05 | ASD, OS, FI, OTN, TRI | $13.71 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | 5%, 500 ml | 00074-1522-03 | ASD, OS, FI, OTN, TRI | $3.87 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (1000 ml container), 500 ml | 00074-1536-03 | BB | $9.19 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (1000 ml container), 50%, 500 ml | 00074-5645-25 | BB, AHT | $3.69 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (1000 ml container), 70%, 500 ml | 00074-5647-25 | BB, OS, FI | $4.26 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (Bulk Package), 70%, 2000 ml | 00074-7120-07 | BB | $13.60 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | (1000 ml container), 500 ml | 00074-7918-19 | BB | $8.81 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | 5%, 250 ml | 00074-7922-02 | BB | $1.54 |
| Dextrose | (Abbott Hosp.)/(LIFECARE/PLASTIC) | 5%, 500 ml | 00074-7922-03 | BB, TRI | $1.61 |

7

| | | | | | |
|---|---|---|---|---|---|
| *Dextrose* | (Abbott Hosp.) /(LIFECARE/PLASTIC) | 5%, 1000 ml | 00074-7922-09 | BB, TRI | $2.34 |
| *Dextrose* | (Abbott Hosp.) /(LIFECARE/PLASTIC) | (2000 ml container), 50%, 1000 ml | 00074-7936-17 | BB, FI, OTN, TRI, OS | $11.24 |
| *Dextrose* | (Abbott Hosp.) /(LIFECARE/PLASTIC) | (1000 ml container), 50%, 500 ml | 00074-7936-19 | ASD, OTN, FI, TRI, OS | $7.09 |
| *Dextrose* | (Abbott Hosp.)/INJ, IJ, (50/150 ML PART FILL) | 5%, 50 ml | 00074-1523-01 | BB, OTN, FI, TRI, OS | $3.91 |
| *Dextrose* | (Baxter)/ (QUAD PACK, MINI-BAG) | 5%, 100ml | 00338-0017-18 | BB, TRI | $1.55 |
| *Dextrose* | (Baxter)/(BULK PACKAGE) | 50%, 2000 ml | 00338-0031-06 | BB, TRI | $21.60 |
| *Dextrose* | (Baxter)/(BULK PACKAGE) | 70%, 2000 ml | 00338-0719-06 | ASD, OS | $13.31 |
| *Dextrose* | (Baxter)/(GLASS FULL FILL) | 70%, 1000 ml | 00338-0348-04 | TRI, FI | $6.20 |
| *Dextrose* | (Baxter)/(GLASS UNDERFILL) | 70%, 500 ml | 00338-0032-13 | TRI | $8.16 |
| *Dextrose* | (Baxter)/(MINI-BAG PLUS) | 5%, 50 ml | 00338-0551-11 | TRI | $3.17 |
| *Dextrose* | (Baxter)/(MULTI-PACK, MINI-BAG) | 5%, 50 ml | 00338-0017-31 | TRI | $1.80 |
| *Dextrose* | (Baxter)/(MULTI-PACK, MINI-BAG) | 5%, 100ml | 00338-0017-38 | TRI | $1.55 |
| *Dextrose* | (Baxter)/(QUAD PACK, MINI-BAG) | 5%, 25 ml | 00338-0017-10 | TRI | $1.80 |
| *Dextrose* | (Baxter)/(QUAD PACK, MINI-BAG) | 5%, 50 ml | 00338-0017-11 | TRI, FI | $1.55 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 250 ml | 00338-0016-02 | TRI | $3.39 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 150 ml | 00338-0017-01 | FI, TRI | $1.50 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 250 ml | 00338-0017-02 | FI, TRI | $1.50 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 500ml | 00338-0017-03 | BB, TRI | $1.47 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 1000 ml | 00338-0017-04 | FI, TRI | $2.11 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 5%, 100ml | 00338-0017-48 | FI, TRI | $1.55 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 10%, 250 ml | 00338-0023-02 | BB | $1.69 |
| *Dextrose* | (Baxter)/(SINGLE PACK MINI-BAG) | 5%, 50 ml | 00338-0017-41 | TRI, FI | $2.25 |
| *Dextrose* | (McGaw)/(1000 ML GLASS W/ STOPPER) | 50%, 500 ml | 00264-1280-55 | TRI | $4.07 |
| *Dextrose* | (McGaw)/(EXCEL) | 5%, 1000 ml | 00264-7510-00 | TRI, OTN, ASD, OS | $2.20 |
| *Dextrose* | (McGaw)/(EXCEL) | 500 ml | 00264-7510-10 | TRI, OTN, ASD, /OS | $1.69 |
| *Dextrose* | (McGaw)/(EXCEL) | 5%, 250 ml | 00264-7510-20 | TRI, OTN, ASD, OS | $1.59 |
| *Dextrose* | (McGaw)/(EXCEL) | 10%, 1000 ml | 00264-7520-00 | TRI | $1.99 |
| *Dextrose* | (McGaw)/(GLASS CONTAINER, 1000 ML) | 500 ml | 00264-1290-50 | TRI | $7.15 |
| *Dextrose* | (McGaw)/(GLASS CONTAINER, 1000 ML) | 70%, 500 ml | 00264-1292-55 | TRI | $5.28 |

| | | | | | |
|---|---|---|---|---|---|
| *Dextrose* | (McGaw)/(GLASS W/ AIR TUBE) | 70%, 2000 ml | 00264-1129-50 | TRI | $18.35 |
| *Dextrose* | (McGaw)/(GLASS W/SOLID STOPPER | 70%, 1000 ml | 00264-1290-55 | TRI | $6.62 |
| *Dextrose* | (McGaw)/(GLASS W/SOLID STOPPER) | 50%, 500 ml | 00264-1281-55 | TRI | $2.76 |
| *Dextrose* | (McGaw)/(W/SOLID STOPPER, GLASS) | 50%, 2000 ml | 00264-1285-55 | TRI | $11.32 |
| *Dextrose* | (McGaw)/INJ, IJ (100 ML PAB) | 50 ml | 00264-1510-31 | TRI, OTN | $1.61 |
| *Dextrose* | (McGaw)/INJ, IJ (150 ML PAB) | 5%, 100 ml | 00264-1510-32 | TRI, OTN | $1.62 |
| *Dextrose with Sodium Chloride* | (Abbott Hosp.) | 5%-0.45%, 250 ml | 00074-7926-02 | TRI, FI, OS | $1.80 |
| *Dextrose with Sodium Chloride* | (Abbott Hosp.) | 500 ml | 00074-7926-03 | TRI, OTN, ASD, FI, OS | $1.96 |
| *Dextrose with Sodium Chloride* | (Abbott Hosp.) | 1000 ml | 00074-7926-09 | TRI, OTN, ASD, FI, OS | $2.66 |
| *Dextrose with Sodium Chloride* | (Abbott Hosp.) | 5%-0.9%, 250 ml | 00074-7941-02 | TRI | $1.93 |
| *Dextrose with Sodium Chloride* | (Abbott Hosp.) | 500 ml | 00074-7941-03 | TRI, OTN, ASD, FI, OS | $1.85 |
| *Dextrose with Sodium Chloride* | (Abbott Hosp.) | 1000 ml | 00074-7941-09 | BB, OTN, ASD, FI, OS | $2.24 |
| *Dextrose with Sodium Chloride* | (Baxter) | 5%-0.45%, 250 ml | 00338-0085-02 | TRI, FI | $2.47 |
| *Dextrose with Sodium Chloride* | (Baxter) | 500 ml | 00338-0085-03 | TRI, FI | $1.90 |
| *Dextrose with Sodium Chloride* | (Baxter) | 1000 ml | 00338-0085-04 | FI | $2.25 |
| *Dextrose with Sodium Chloride* | (Baxter) | 5%-0.9%, 250 ml | 00338-0089-02 | TRI | $2.93 |
| *Dextrose with Sodium Chloride* | (Baxter) | 500 ml | 00338-0089-03 | FI | $2.00 |
| *Dextrose with Sodium Chloride* | (Baxter) | 1000 ml | 00338-0089-04 | FI | $2.25 |
| *Dextrose with Sodium Chloride* | (McGaw) | 1000 ml | 00264-7610-00 | TRI, FI | $2.10 |
| *Dextrose with Sodium Chloride* | (McGaw) | 500 ml | 00264-7610-10 | TRI, FI | $1.81 |
| *Dextrose with Sodium Chloride* | (McGaw) | 5%-0.9%, 250 ml | 00264-7610-20 | TRI | $1.78 |
| *Dextrose with Sodium Chloride* | (McGaw) | 1000 ml | 00264-7612-00 | TRI, FI, ASD | $1.85 |
| *Dextrose with Sodium Chloride* | (McGaw) | 500 ml | 00264-7612-10 | TRI, FI | $1.85 |
| *Dextrose with Sodium Chloride* | (McGaw) | 5%-0.45%, 250 ml | 00264-7612-20 | TRI, FI | $1.89 |
| *Diazepam* | (Abbott Hosp.)/(CARPUJECT LUER LOCK) | 5 mg/ml, 2 ml, ea C-IV | 00074-1273-32 | BB | $2.03 |
| *Diazepam* | (Abbott Hosp.)/(CARPUJECT, 22GX1-1/4") | 5 mg/ml, 2ml, ea C-IV | 00074-1273-02 | BB, FI | $2.12 |

| Diazepam | (Abbott Hosp.)/(VIAL, FLIPTOP) | 5 mg/ml, 10 ml, ea, C-IV | 00074-3213-01 | OTN, MK | $2.50 |
|---|---|---|---|---|---|
| Diazepam | (Abbott Hosp.)/INJ, IJ (AMP) | 5 mg/ml, 2ml, EA C-IV | 00074-3210-32 | BB | $1.49 |
| Diazepam | (Schein)/INJ, IJ (S.D.V.) (M.D.V.) | 5 mg/ml, 10 ml, ea, C-IV | 00364-0825-54 | ASD | $2.50 |
| Furosemide | (Abbott Hosp.)/INJ, IJ (VIAL, PF, FLIPTOP) | 10 mg/ml, 2 ml 25s | 00074-6102-02 | ASD, BB, MK | $14.38 |
| Furosemide | (Abbott Hosp.)/INJ, IJ (VIAL, PF, FLIPTOP) | 10 mg/ml, 4 ml 25s | 00074-6102-04 | OS, ASD, OTN, BB, MK | $20.28 |
| Gentamicin Sulfate | (Abbott Hosp.)/(Vial, Fliptop) | 40 mg/ml, 2 ml | 00074-1207-03 | OTN, BB, OS, FI | $0.51 |
| Gentamicin Sulfate | (Fujisawa)/(Bulk Package) | 40 mg/ml, 50 ml | 00469-1000-60 | MK, BB | $7.00 |
| Gentamicin Sulfate | (Fujisawa)/(Bulk Package) | 40 mg/ml, 50 ml | 63323-0010-50 | MK, BB | $7.00 |
| Gentamicin Sulfate | (Fujisawa)/INJ, IJ (M.D.V.) | 40 mg/ml, 20 ml | 00469-1000-40 | OTN | $5.40 |
| Gentamicin Sulfate | (Fujisawa)/INJ, IJ (M.D.V.) | 40 mg/ml, 20 ml | 63323-0010-20 | BB, MK | $3.50 |
| Gentamicin Sulfate | (Schein)/(M.D.V.) | 40 mg/ml, 20 ml | 00364-6739-55 | BB | $2.63 |
| Gentamicin Sulfate | (Schein)/INJ, IJ (S.D.V.) | 40 mg/ml, 2 ml | 00364-6739-48 | BB | $1.18 |
| Heparin Lock Flush | (Abbott Hosp.)/INJ, IJ (VIAL, FLIPTOP) | 10 u/ml, 10 ml 25s | 00074-1151-70 | OS, OTN | $13.60 |
| Heparin Lock Flush | (Abbott Hosp.)/INJ, IJ (VIAL, FLIPTOP) | 100 u/ml, 10 ml 25s | 00074-1152-70 | ASD, OS, FI, OTN | $13.43 |
| Heparin Lock Flush | (Abbott Hosp.)/INJ, IJ (VIAL, FLIPTOP) | 30 ml, 25s | 00074-1152-78 | ASD, OS, OTN | $21.07 |
| Hydrocortisone Sodium Succinate | (Pharmacia/Upjohn) Solu-Cortef/ (ACT-O-VIAL) | 100 mg, ea | 00009-0900-13 | BB, MK, ASD, BB, FI, OS | $1.55 |
| Hydrocortisone Sodium Succinate | (Pharmacia/Upjohn) Solu-Cortef/ (ACT-O-VIAL) | 250 mg, ea | 00009-0909-08 | ASD, FI, BB, MK | $2.65 |
| Hydrocortisone Sodium Succinate | (Pharmacia/Upjohn) Solu-Cortef/ (ACT-O-VIAL) | 500 mg, ea | 00009-0912-05 | ASD, MK, BB, OS, FI | $5.89 |
| Hydrocortisone Sodium Succinate | (Pharmacia/Upjohn) Solu-Cortef/ (ACT-O-VIAL) | 1000 mg, ea | 0009-0920-03 | FI, MK | $11.57 |
| Immune Globulin | (Alpha Therapeutics) Venoglobulin-S 10%/INJ, IJ (10 gm/Vial, w/Admin. Set) | 100 mg/ml, 100 ml | 49669-1623-01 | FI | $780.00 |
| Immune Globulin | (Alpha Therapeutics) Venoglobulin-S 10%/INJ, IJ (20 gm/Vial, w/Admin. Set) | 100 mg/ml, 200 ml | 49669-1624-01 | FI | $1,560.00 |
| Immune Globulin | (Alpha Therapeutics) Venoglobulin-S 10%/INJ, IJ (5 gm/Vial, w/Admin. Set) | 100 mg/ml, 50 ml | 49669-1622-01 | FI | $390.00 |
| Immune Globulin | (Baxter Hyland/Immuno) Gammagard S/D/PDI, IJ | 2.5 gm, ea | 00944-2620-02 | FI | $175.00 |
| Immune Globulin | (Baxter Hyland/Immuno) Gammagard S/D/PDI, IJ | 5.0 gm, ea | 00944-2620-03 | FI | $350.00 |
| Immune Globulin | (Baxter Hyland/Immuno) Gammagard S/D/PDI, IJ | 10.0 gm, ea | 00944-2620-04 | FI | $700.00 |
| Immune Globulin | (Bayer) Gamimune N10%/INJ, KJ (10 gm/Vial) | 100 mg/ml, 100 ml | 00026-0648-71 | FI, ASD, OS, Bayer Wholesale | $727.50 |
| Immune Globulin | (Bayer) Gamimune N10%/INJ, KJ (20 gm/Vial) | 100 mg/ml, 200 ml | 00026-0648-24 | FI, OS, Bayer Wholesale | $1,503.33 |
| Immune Globulin | (Bayer) Gamimune N10%/INJ, KJ (5 gm/Vial) | 100 mg/ml, 50 ml | 00026-0648-20 | FI, ASD, OS, Bayer Wholesale | $362.50 |

| | | | | | |
|---|---|---|---|---|---|
| *Immune Globulin* | (Centeon) Gammar-P.I.V./PDI, IJ (w/diluent) | 5 gm, ea | 00053-7486-05 | Health Coalition, ASD, OS | $296.67 |
| *Immune Globulin* | (Centeon) Gammar-P.I.V./PDI, IJ (w/diluent) | 10 gm, ea | 00053-7486-10 | Health Coalition, ASD, OS | $593.33 |
| *Iron Dextran* | (Schein)/INJ, IJ (S.D.V.) | 50 mg/ml, 2 ml | 00364-3012-47 | ASD, OS, Fl, OTN | $24.69 |
| *Lorazepam* | (Abbott Hosp.)/(HYPAK SYRINGE) | 2 mg/ml, 1ml, C-IV | 00074-6776-01 | BB | $3.60 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL) | 4 mg/ml, 1ml, C-IV | 00074-1539-01 | MK | $3.80 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL) | 4 mg/ml, 10ml, C-IV | 00074-1539-10 | MK | $30.00 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL) | 2 mg/ml, 10ml, C-IV | 00074-1985-10 | BB | $25.83 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL,FLIPTOP) | 2 mg/ml, 1ml, C-IV | 00074-6778-01 | BB, Fl | $2.98 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL,FLIPTOP) | 4 mg/ml, 1ml, C-IV | 00074-6779-01 | BB | $3.80 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL,FLIPTOP) | 2 mg/ml, 10ml, C-IV | 00074-6780-01 | ASD, OTN, Fl | $24.42 |
| *Lorazepam* | (Abbott Hosp.)/(VIAL,FLIPTOP) | 4 mg/ml, 10ml, C-IV | 00074-6781-01 | BB, Fl | $28.75 |
| *Lorazepam* | (Abbott Hosp.)/INJ, IJ (VIAL) | 2 mg/ml, 1ml, C-IV | 00074-1985-01 | MK | $3.00 |
| *Lorazepam* | (Wyeth-Ayerst) Ativan/(M.D.V.) | 4 mg/ml, 10ml, C-IV | 00008-0570-01 | Fl | $48.00 |
| *Lorazepam* | (Wyeth-Ayerst) Ativan/(M.D.V.) | 2 mg/ml, 10ml, C-IV | 00008-0581-01 | Fl | $29.50 |
| *Lorazepam* | (Wyeth-Ayerst) Ativan/(S.D.V.) | 2 mg/ml, 1ml, C-IV | 00008-0581-04 | Fl | $8.85 |
| *Lupron* | (Tap) Lupron Depot/(3 Month Formulation) | 22.5 mg, ea | 00300-3336-01 | ASD, Fl, OTN, OS | $1,447.60 |
| *Lupron* | (Tap) Lupron Depot/(3 Month Formulation) | 11.25 mg, ea | 00300-3343-01 | Fl | $1,149.00 |
| *Lupron* | (Tap) Lupron Depot/(4 Month Formulation) | 30 mg, ea | 00300-3673-01 | Fl, ASD, OS | $1,902.80 |
| *Lupron* | (Tap) Lupron Depot/PDI, IJ (S.D.V.) | 7.5 mg, ea | 00300-3629-01 | ASD, OS, Fl, OTN | $482.52 |
| *Lupron* | (Tap) Lupron Depot/PDI, IJ (S.D.V.) | 3.75 mg, ea | 00300-3639-01 | Fl, OS | $406.00 |
| *Metaproterenol Sulfate* | (Dey)/SOL, IH (SULFATE FREE) | 0.6%, 2500 ml, 25s, UD | 49502-0676-03 | BB, MK | $11.29 |
| *Metaproterenol Sulfate* | (Dey)/SOL, IH (SULFATE FREE) | 0.4%, 2500 ml, 25s, UD | 49502-0678-03 | BB, MK | $11.29 |
| *Methylprednisolone Sodium Succinate* | (Abbott Hosp.) A-Methapred/PDI, IJ (UNIVIAL) | 1 gm, ea | 00074-5631-08 | OTN | $16.75 |
| *Methylprednisolone Sodium Succinate* | (Abbott Hosp.) A-Methapred/PDI, IJ (UNIVIAL) | 40 mg, ea | 00074-5684-01 | OTN | $2.30 |
| *Methylprednisolone Sodium Succinate* | (Abbott Hosp.) A-Methapred/PDI, IJ (UNIVIAL) | 125 mg, ea | 00074-5685-02 | OTN | $3.35 |
| *Methylprednisolone Sodium Succinate* | (Abbott Hosp.) A-Methapred/PDI,IJ (ADD-VANTAGE) | 500 mg, ea | 00074-5601-44 | OTN | $9.40 |
| *Methylprednisolone Sodium Succinate* | (Pharmacia/Upjohn) Solu-Medrol/(ACT-O-VIAL) | 125 mg, ea | 00009-0190-09 | BB, OS | $2.52 |
| *Methylprednisolone Sodium Succinate* | (Pharmacia/Upjohn) Solu-Medrol/(ACT-O-VIAL) | 500 mg, ea | 00009-0765-02 | BB | $5.51 |

| | | | | | |
|---|---|---|---|---|---|
| Methylprednisolone Sodium Succinate | (Pharmacia/Upjohn) Solu-Medrol/(ACT-O-VIAL) | 1 gm, ea | 00009-3389-01 | BB, ASD, FI, OS | $11.39 |
| Methylprednisolone Sodium Succinate | (Pharmacia/Upjohn) Solu-Medrol/(VIAL) | 1 gm, ea | 00009-0698-01 | BB, FI, OS | $11.69 |
| Methylprednisolone Sodium Succinate | (Pharmacia/Upjohn) Solu-Medrol/(VIAL) | 500 mg, ea | 00009-0758-01 | BB, FI, OS | $6.37 |
| Methylprednisolone Sodium Succinate | (Pharmacia/Upjohn) Solu-Medrol/(W/DILUENT) | 2 gm, ea | 00009-0796-01 | BB, FI | $14.41 |
| Methylprednisolone Sodium Succinate | (Pharmacia/Upjohn) Solu-Medrol/(W/DILUENT) | 500 mg, ea | 00009-0887-01 | ASD | $6.17 |
| Methylprednisolone Sodium Succinate | (Pharmacia/Upjohn) Solu-Medrol/PDI, IJ (ACT-O-VIAL) | 40 mg, ea | 00009-0113-12 | ASD, BB, OS | $1.45 |
| Mitomycin | (Bedford)/PDI, IJ (S.D.V.) | 5 mg, ea | 55390-0251-01 | FI, OS, ASD | $51.83 |
| Mitomycin | (Bedford)/PDI, IJ (S.D.V.) | 20 mg, ea | 55390-0252-01 | FI, ASD, OS | $146.67 |
| Mitomycin | (Faulding)/DI, IJ | 20 mg, ea | 61703-0306-50 | ASD, OS | $134.00 |
| Pentamidine Isethionate | (Fujisawa) Nebupent/PDR, IH (S.D.V., P.F.) | 300 mg, ea | 57317-0210-06 | FI | $36.00 |
| Pentamidine Isethionate | (Fujisawa) Nebupent/PDR, IH (S.D.V., P.F.) | 300 mg, ea | 63323-0877-15 | FI | $36.00 |
| Pentamidine Isethionate | (Gensia)/PDI, IJ (S.D.V.) | 300 mg, ea | 00053-1000-05 | FI | $29.00 |
| Sodium Chloride | (Abbott Hosp.)/(ADD-VANT, LIFECARE P.F.) | 0.9%, 50 ml | 00074-7101-13 | TRI, BB | $3.22 |
| Sodium Chloride | (Abbott Hosp.)/(ADD-VANT, LIFECARE P.F.) | 0.9%, 100 ml | 00074-7101-23 | TRI, BB | $3.22 |
| Sodium Chloride | (Abbott Hosp.)/(ADD-VANT, LIFECARE) | 0.9%, 250 ml | 00074-7101-02 | TRI, BB | $4.19 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE) | 0.9%, 50 ml | 00074-7984-36 | TRI, ASD, OS, OTN, FI | $1.45 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE) | 0.9%, 100 ml | 00074-7984-37 | TRI, ASD, OS, OTN, FI | $1.45 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE, PLASTIC CONT) | 0.9%, 500 ml | 00074-7983-03 | FI, ASD, BB, OS | $1.69 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE, PLASTIC CONT) | 0.9%, 1000 ml | 00074-7983-09 | FI, ASD, BB, OS | $2.17 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE, PLASTIC) | 0.9%, 250 ml | 00074-1583-02 | TRI, OTN, FI, OS | $1.94 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE, PLASTIC) | 0.9%, 250 ml | 00074-7983-02 | FI, ASD, BB | $1.41 |
| Sodium Chloride | (Abbott Hosp.)/(LIFECARE, PLASTIC) | 0.9%, 150 ml | 00074-7983-61 | FI, ASD, OS, OTN | $1.43 |
| Sodium Chloride | (Baxter)/(MINI-BAG PLUS) | 0.9%, 50 ml | 00338-0553-11 | TRI | $3.32 |
| Sodium Chloride | (Baxter)/(MINI-BAG PLUS) | 0.9%, 100 ml | 00338-0553-18 | TRI | $3.17 |
| Sodium Chloride | (Baxter)/(MULTI PACK, MINI-BAG) | 0.9%, 50 ml | 00338-0049-31 | TRI, FI | $1.55 |
| Sodium Chloride | (Baxter)/(MULTI PACK, MINI-BAG) | 0.9%, 100 ml | 00338-0049-38 | TRI, FI | $1.55 |
| Sodium Chloride | (Baxter)/(QUAD PACK, MINI-PACK) | 0.9%, 50 ml | 00338-0049-11 | TRI | $1.80 |
| Sodium Chloride | (Baxter)/(QUAD PACK, MINI-PACK) | 0.9%, 100 ml | 00338-0049-18 | TRI | $1.80 |
| Sodium Chloride | (Baxter)/(SINGLE PACK, MINI-BAG) | 0.9%, 150 ml | 00338-0049-01 | TRI, FI | $1.51 |

12

| | | | | | |
|---|---|---|---|---|---|
| *Sodium Chloride* | (Baxter)/(SINGLE PACK, MINI-BAG) | 0.9%, 250 ml | 00338-0049-02 | TRI, FI | $1.49 |
| *Sodium Chloride* | (Baxter)/(SINGLE PACK, MINI-BAG) | 0.9%, 500 ml | 00338-0049-03 | TRI, FI | $1.58 |
| *Sodium Chloride* | (Baxter)/(SINGLE PACK, MINI-BAG) | 0.9%, 1000 ml | 00338-0049-04 | TRI, FI | $2.03 |
| *Sodium Chloride* | (Baxter)/(SINGLE PACK, MINI-BAG) | 0.9%, 50 ml | 00338-0049-41 | TRI | $1.71 |
| *Sodium Chloride* | (Baxter)/(SINGLE PACK, MINI-BAG) | 0.9%, 100 ml | 00338-0049-48 | TRI, FI | $1.55 |
| *Sodium Chloride* | (McGaw) | 50 ml | 00264-1800-31 | TRI, FI | $1.49 |
| *Sodium Chloride* | (McGaw)/(150 ML PAB) | 0.9%, 100 ml | 00264-1800-32 | TRI, FI | $1.49 |
| *Sodium Chloride* | (McGaw)/(EXCEL) | 0.9%, 1000 ml | 00264-7800-00 | TRI, OTN, FI, ASD | $2.19 |
| *Sodium Chloride* | (McGaw)/(EXCEL) | 0.9%, 500 ml | 00264-7800-10 | TRI, OTN, FI, ASD | $1.53 |
| *Sodium Chloride* | (McGaw)/(EXCEL) | 0.9%, 250 ml | 00264-7800-20 | TRI, OTN, FI, ASD | $1.51 |
| *Testosterone Cypionate* | (Pharmacia/Upjohn) Depo-Testosterone | 200 mg/ml, 1 ml, C-III | 00009-0417-01 | BB, OTN | $11.79 |
| *Testosterone Cypionate* | (Pharmacia/Upjohn) Depo-Testosterone | 200 mg/ml, 10 ml, C-III | 00009-0417-02 | BB, OTN | $24.78 |
| *Testosterone Enanthate* | (Schein)/INJ, IJ (M.D.V.) | 200 mg/ml, 10 ml, C-II | 00364-6617-54 | ASD, MK, FI | $13.39 |
| *Tobramycin Sulfate* | (Abbott Hosp.)/(SRN) | 40 mg/ml, 2 ml | 00074-3583-01 | BB | $5.84 |
| *Tobramycin Sulfate* | (Abbott Hosp.)/(Vial, Bulk) | 40 mg/ml, 50 ml | 00074-3590-02 | BB, MK | $103.64 |
| *Tobramycin Sulfate* | (Abbott Hosp.)/(Vial,.Fliptop) | 40 mg/ml, 2 ml | 00074-3578-01 | BB, MK | $4.99 |
| *Tobramycin Sulfate* | (Abbott Hosp.)/INJ, IJ (Vial Fliptop) | 10 mg/ml, 2 ml | 00074-3577-01 | BB, MK | $2.94 |
| *Tobramycin Sulfate* | (Gensia)/INJ, IJ (M.D.V.) | 40 mg/ml, 2ml | 00703-9402-04 | FI, MK | $6.98 |
| *Tobramycin Sulfate* | (Gensia)/INJ, IJ (M.D.V.) | 40 mg/ml, 30 ml | 00703-9416-01 | FI | $36.90 |
| *Vancomycin Hydrochloride* | (Abbott Hosp.)/(BULK VIAL) | 5 gm, ea | 00074-6509-01 | FI, MK, BB | $41.24 |
| *Vancomycin Hydrochloride* | (Abbott Hosp.)/(VIAL, FLIPTOP) | 500 mg, 10s, ea | 00074-4332-01 | FI, OTN, MK, BB, OS | $4.98 |
| *Vancomycin Hydrochloride* | (Abbott Hosp.)/(VIAL, FLIPTOP) | 1 gm, 10s, ea | 00074-6533-01 | FI, ASD, OS, MK, BB | $9.05 |
| *Vancomycin Hydrochloride* | (Abbott Hosp.)/(VIAL, FLIPTOP) | 1 gm, 10s, ea | 00074-6535-01 | FI, OTN, MK, BB | $12.17 |
| *Vancomycin Hydrochloride* | (Abbott Hosp.)/PDI, IJ (ADD-VANTAGE) | 500 mg, 10s, ea | 00074-6534-01 | FI, MK, BB | $5.09 |
| *Vancomycin Hydrochloride* | (Fujisawa) Lyphocin/PDI IJ (VIAL) | 500 mg, ea | 00469-2210-30 | BB, MK | $7.00 |
| *Vancomycin Hydrochloride* | (Fujisawa) Lyphocin/PDI IJ (VIAL) | 1 gm, ea | 00469-2840-40 | BB, MK | $13.00 |
| *Vancomycin Hydrochloride* | (Fujisawa) Lyphocin/PDI IJ (VIAL) | 5 gm, ea | 00469-2951-00 | BB | $71.50 |
| *Vancomycin Hydrochloride* | (Fujisawa) Lyphocin/PDI IJ (VIAL) | 1 gm, ea | 63323-0284-20 | BB, MK | $13.00 |
| *Vancomycin Hydrochloride* | (Fujisawa) Lyphocin/PDI IJ (VIAL) | 5 gm, ea | 63323-0295-41 | BB | $71.50 |
| *Vancomycin Hydrochloride* | (Fujisawa) Lyphocin/PDI IJ (VIAL) | 10 gm, ea | 63323-0314-61 | MK | $143.00 |

| | | | | | |
|---|---|---|---|---|---|
| *Vancomycin Hydrochloride* | **(Fujisawa) Lyphocin/PDI IJ (VIAL)** | 500 mg, ea | 63323-2210-30 | BB, MK | $7.00 |
| *Vancomycin Hydrochloride* | **(Lederle Std. Prod.) Vancoled/PDI INJ, IJ** | 5 gm, ea | 00205-3154-05 | MK, BB | $45.09 |
| *Vancomycin Hydrochloride* | **(Lederle Std. Prod.) Vancoled/PDI INJ, IJ** | 1 gm, 10s, ea | 00205-3154-15 | MK, BB | $9.02 |
| *Vancomycin Hydrochloride* | **(Lederle Std. Prod.) Vancoled/PDI INJ, IJ** | 500 mg, 10s, ea | 00205-3154-88 | MK, BB | $4.51 |
| *Vancomycin Hydrochloride* | **(Schein)/PDI, IJ (M.D.V.)** | 1 gm, 10s, ea | 00364-2473-91 | OTN | $12.90 |
| *Vancomycin Hydrochloride* | **(Schein)/PDI, IJ (S.D.V.)** | 500 mg, 10s, ea | 00364-2472-33 | MK | $3.84 |
| *Winrho SDF* | **(Nabi) rho (d) immune globulin/   (VIAL)** | 5000 iu, ea | 60492-0024-01 | ASD, FI, OTN, OS | $505.56 |
| *Winrho SDF* | **(Nabi) rho (d) immune globulin/PDI, IJ (S.D.V.)** | 600 iu, ea | 60492-0021-01 | ASD,FI, OS | $64.96 |
| *Winrho SDF* | **(Nabi) rho (d) immune globulin/PDI, IJ (S.D.V.)** | 1500 iu, ea | 60492-0023-01 | ASD, FI, OTN, OS | $152.30 |

*Wholesaler Information*

*ASD = ASD Specialty Healthcare (1-800-746-6273)*
*BB = Bergen Brunswig (1-800-746-6273)*
*FI = Florida Infusion  (1-800-624-0152)*
*MK = McKesson (1-888-782-6156)*
*OS = Oncology Supply (1-800-633-7555)*
*OTN = Oncology Therapeutics Network (1-800-482-6700)*
*TRI = Triad Medical  (1-800-999-8633)*
*ANDA = ANDA (1-800-331-2632)*
*Biomed Plus 3/99 = Biomed Plus, Inc. (1-800-809-2308)*
*FFF = FFF Enterprises (1-800-843-7477)*
*Bayer Wholesale = Bayer Wholesale (1-203-812-2000)*
*Health Coalition = Health Coalition (1-800-456-7283)*

Attachment 2 – Do not use these data to update the HCPCS billing codes that correspond to the drugs on this list.  Instead, use your usual source for average wholesale prices.

| Drug Name | Prod/Mfr | Measurements | NDC | Wholesaler | Average Wholesale (AWP) |
|---|---|---|---|---|---|
| Anti-Inhibitor Coagulant Complex | (NABI) AutoPlex T/PDI, IJ (390-1050 FECU) | ea | 59730-6059-07 | Biomed Plus 3/99 | 1.06 |
| Anzemet/Dolasetron Mesylate | (Hoechst Marion)/INJ, IJ (VIAL) | 20 mg/ml, 5 ml | 00088-1206-32 | OS | $74.08 |
| Bleomycin Sulfate | (Bristol-Myer Onc/Imm) Blexonane/PDI, IJ (VL) | 15 u, ea | 00015-3010-20 | FI, OS, ASD | $255.39 |
| Bleomycin Sulfate | (Bristol-Myer Onc/Imm) Blexonane/PDI, IJ (VL) | 30 u, ea | 00015-3063-01 | FI, OS | $509.29 |
| Bleomycin Sulfate | (Pharmacia/Upjohn)/PD I, IJ (VIAL) | 15 u, ea | 00013-1616-78 | ASD, FI, OS | $158.67 |
| Bleomycin Sulfate | (Pharmacia/Upjohn)/PD I, IJ (VIAL) | 30 u, ea | 00013-1636-86 | ASD, FI, OS | $322.00 |
| Cisplatin | (APP)/INJ, IJ | 1 mg/ml, 50 mg, 50 ml | 63323-0103-51 | OS, FI | $150.98 |
| Cisplatin | (APP)/INJ, IJ | 1 mg/ml, 200 mg, 200 ml | 63323-0103-64 | OS, FI | $603.50 |
| Cisplatin | (APP)/INJ, IJ | 1 mg/ml, 100 mg, 100 ml | 63323-0103-65 | OS, FI | $301.50 |
| Cyclophospamide | (Bristol-Myer Onc/Imm) Cytoxan Lyophilized/PDI, IJ (VIAL) | 100 mg, ea | 00015-0539-41 | ASD, OS, OTN | $4.18 |
| Cyclophospamide | (Bristol-Myer Onc/Imm) Cytoxan Lyophilized/PDI, IJ (VIAL) | 200 mg, ea | 00015-0546-41 | ASD, OS, OTN | $7.03 |
| Cyclophospamide | (Bristol-Myer Onc/Imm) Cytoxan Lyophilized/PDI, IJ (VIAL) | 500 mg, ea | 00015-0547-41 | ASD, OS, OTN | $11.59 |
| Cyclophospamide | (Bristol-Myer Onc/Imm) Cytoxan Lyophilized/PDI, IJ (VIAL) | 1gm, ea | 00015-0548-41 | ASD, OS, OTN | $23.19 |
| Cyclophospamide | (Bristol-Myer Onc/Imm) Cytoxan Lyophilized/PDI, IJ (VIAL) | 2 gm, ea | 00015-0549-41 | ASD, OS, OTN | $45.83 |
| Cyclophospamide | (Pharmacia/Upjohn) Neosar/PDI, IJ, (S.D.V.) | 100 mg, ea | 00013-5606-93 | ASD, OTN, OS, FI | $3.92 |
| Cyclophospamide | (Pharmacia/Upjohn) Neosar/PDI, IJ, (S.D.V.) | 200 mg, ea | 00013-5616-93 | ASD, FI, OS, OTN | $5.06 |
| Cyclophospamide | (Pharmacia/Upjohn) Neosar/PDI, IJ, (S.D.V.) | 500 mg, ea | 00013-5626-93 | ASD, FI, OS, OTN | $7.33 |

| | | | | | |
|---|---|---|---|---|---|
| Cyclophosphamide | (Pharmacia/Upjohn) Neosar/PDI, IJ, (S.D.V.) | 1 gm, ea | 00013-5636-70 | ASD, FI, OTN, OS | $11.24 |
| Cyclophosphamide | (Pharmacia/Upjohn) Neosar/PDI, IJ, (S.D.V.) | 2 gm, ea | 00013-5646-70 | ASD, FI, OTN, OS | $21.60 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 100 mg, ea | 55390-0131-10 | ASD,OS, FI, MK, BB, OTN | $3.55 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 500 mg, ea | 55390-0132-10 | ASD,OS, FI, OTN, MK, BB | $11.46 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 1 gm, ea | 55390-0133-01 | ASD,OS, FI, OTN, MK, BB | $23.64 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 2 gm, ea | 55390-0134-01 | ASD,OS, FI, OTN, BB, MK | $47.94 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 100 mg, ea | 55390-0806-10 | BB | $3.50 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 500 mg, ea | 55390-0807-10 | BB | $10.50 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 1 gm, ea | 55390-0808-01 | BB | $22.00 |
| Cytarabine | (Bedford)/PDI, IJ (VIAL) | 2 gm, ea | 55390-0809-01 | BB | $44.00 |
| Cytarabine | (Faulding)/INJ, IJ (S.D.V.,P.F.) | (P.F., BULK PACKAGE) 20 mg/ml, 50 ml | 61703-0303-50 | BB, MK | $39.00 |
| Cytarabine | (Faulding)/INJ, IJ (S.D.V.,P.F.) | 20 mg/ml, 25 ml | 61703-0304-25 | ASD, BB, FI, OS | $12.63 |
| Cytarabine | (Faulding)/INJ, IJ (S.D.V.,P.F.) | 20 mg/ml, 5 ml (M.D.V.) | 61703-0305-09 | BB, MK, FI | $4.62 |
| Cytarabine | (Pharmacia/Upjohn) Cytosar-U/PDI, IJ (M.D.V.) | 100 mg, ea | 00009-0373-01 | ASD, OS, OTN, FI, MK | $4.06 |
| Cytarabine | (Pharmacia/Upjohn) Cytosar-U/PDI, IJ (M.D.V.) | 500 mg, ea | 00009-0473-01 | ASD, OS, OTN, FI, MK | $13.18 |
| Cytarabine | (Pharmacia/Upjohn) Cytosar-U/PDI, IJ (M.D.V.) | 30 ml vial, 1 gm, ea | 00009-3295-01 | ASD, OS, OTN, FI, MK | $25.11 |
| Cytarabine | (Pharmacia/Upjohn) Cytosar-U/PDI, IJ (M.D.V.) | 2 gm, ea | 00009-3296-01 | ASD, OS, OTN, FI, MK | $49.82 |
| Cytarabine | (Schein)/PDI, IJ (M.D.V.) | 100 mg, ea | 00364-2467-53 | BB, MK | $4.16 |
| Cytarabine | (Schein)/PDI, IJ (M.D.V.) | 500 mg, ea | 00364-2468-54 | BB, MK, OTN | $12.14 |
| Doxorubicin Hydrochloride | (Bedford)/INJ, IJ (M.D.V) | 2 mg/ml, 100 ml | 55390-0238-01 | FI, OTN | $139.75 |
| Doxorubicin Hydrochloride | (Bedford)/INJ, IJ (S.D.V) | 2 mg/ml, 5 ml | 55390-0235-10 | FI, OTN | $10.35 |
| Doxorubicin Hydrochloride | (Bedford)/INJ, IJ (S.D.V) | 10 ml | 55390-0236-10 | FI, OTN | $20.20 |
| Doxorubicin Hydrochloride | (Bedford)/INJ, IJ (S.D.V) | 25 ml | 55390-0237-01 | FI, OTN, OS | $37.97 |
| Doxorubicin Hydrochloride | (Bedford)/PDI, IJ (S.D.V) | 10 mg | 55390-0231-10 | FI, OTN | $9.68 |
| Doxorubicin Hydrochloride | (Bedford)/PDI, IJ (S.D.V) | 20 mg | 55390-0232-10 | FI, OTN | $18.48 |
| Doxorubicin Hydrochloride | (Bedford)/PDI, IJ (S.D.V) | 50 mg, ea | 55390-0233-01 | FI, OTN, OS | $35.92 |
| Doxorubicin Hydrochloride | (Fujisawa/APP)/(VIAL) | 2 mg/ml, 100 ml | 00469-1001-61 | ASD | $140.00 |

| | | | | | |
|---|---|---|---|---|---|
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/(VIAL) | 2 mg/ml, 100 ml | 63323-0101-61 | OS | $117.17 |
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/INJ, IJ (S.D.V., P.F.) | 2 mg/ml, 5 ml | 00469-8830-20 | OS | $7.35 |
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/INJ, IJ (S.D.V., P.F.) | 10 ml | 00469-8831-30 | OS | $14.70 |
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/INJ, IJ (S.D.V., P.F.) | 25 ml | 00469-8832-50 | ASD | $35.00 |
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/INJ, IJ (S.D.V., P.F.) | 2 mg/ml, 5 ml | 63323-0883-05 | OS | $7.35 |
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/INJ, IJ (S.D.V., P.F.) | 10 ml | 63323-0883-10 | OS | $14.70 |
| *Doxorubicin Hydrochloride* | (Fujisawa/APP)/INJ, IJ (S.D.V., P.F.) | 25 ml | 63323-0883-30 | ASD | $34.00 |
| *Doxorubicin Hydrochloride* | (Gensia)/(M.D.V. POLYMER) | 2 mg/ml, 100 ml | 00703-5040-01 | ASD, OS | $142.00 |
| *Doxorubicin Hydrochloride* | (Gensia)/INJ, IJ (S.D.V. POLYMER) | 2 mg/ml, 5 ml | 00703-5043-03 | ASD, OS, BB | $12.63 |
| *Doxorubicin Hydrochloride* | (Gensia)/INJ, IJ (S.D.V. POLYMER) | 25 ml | 00703-5046-01 | ASD, OS | $35.50 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/(M.D.V. P.F.) | 2 mg/ml, 100 ml | 00013-1166-83 | ASD, OS, FI, OTN | $150.86 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/(M.D.V.) | 150 mg, ea | 00013-1116-83 | ASD, OS, FI, OTN | $113.75 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/PFS INJ, IJ (VIAL, P.F.) | 2 mg/ml, 5 ml | 00013-1136-91 | ASD, OS, FI, OTN | $8.49 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/PFS INJ, IJ (VIAL, P.F.) | 10 ml | 00013-1146-91 | ASD, OS, FI, OTN | $16.74 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/PFS INJ, IJ (VIAL, P.F.) | 25 ml | 00013-1156-79 | ASD, FI, OTN | $37.80 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/PFS INJ, IJ (VIAL, P.F.) | 37.500 ml | 00013-1176-87 | ASD, FI, OTN, OS | $59.59 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/RDF PDI, IJ | 10 mg, ea | 00013-1086-91 | ASD, FI, OTN, OS | $8.24 |
| *Doxorubicin Hydrochloride* | (Pharmacia/Upjohn) Adriamycin/RDF PDI, IJ | 50 mg, ea | 00013-1106-79 | ASD, OS, FI, OTN | $37.15 |
| *Etoposide* | (Bedford)/INJ, IJ (M.D.V.) | 20 mg/ml, 5 ml | 55390-0291-01 | FI, OS | $8.45 |
| *Etoposide* | (Bedford)/INJ, IJ (M.D.V.) | 25 ml | 55390-0292-01 | FI, OS | $45.13 |
| *Etoposide* | (Bedford)/INJ, IJ (M.D.V.) | 50 ml | 55390-0293-01 | OS, FI | $87.43 |
| *Etoposide* | (Bristol-Myer Onc/Imm) Vepesid/INJ, IJ (M.D.V.) | 7.5 ml | 00015-3084-20 | OS | $51.45 |
| *Etoposide* | (Bristol-Myer Onc/Imm) Vepesid/INJ, IJ (M.D.V.) | 20 mg/ml, 5 ml | 00015-3095-20 | OS | $34.30 |
| *Etoposide* | (Gensia)/(BULK PACKAGE) | 20 mg/ml, 50 ml | 00703-5668-01 | ASD, OS | $78.63 |
| *Etoposide* | (Gensia)/(M.D.V.) | 20 mg/ml, 25 ml | 00703-5646-01 | ASD, OS | $40.00 |

| | | | | | |
|---|---|---|---|---|---|
| *Etoposide* | (Gensia)/INJ, IJ (M.D.V. POLYMER) | 20 mg/ml, 5 ml | 00703-5653-01 | ASD, OS | $7.00 |
| *Etoposide* | (Pharmacia/Upjohn) Toposar/INJ, IJ (M.D.V.) | 20 mg/ml, 5 ml | 00013-7336-91 | ASD,OS, FI | $9.47 |
| *Etoposide* | (Pharmacia/Upjohn) Toposar/INJ, IJ (M.D.V.) | 10 ml | 00013-7346-94 | ASD,OS, FI | $19.00 |
| *Etoposide* | (Pharmacia/Upjohn) Toposar/INJ, IJ (M.D.V.) | 25 ml | 00013-7356-88 | ASD,OS,FI | $44.00 |
| *Factor IX* | (Centeon) Mononine/Factor IX Coagulation Factor PDI, IJ | 1 iu, ea | 00053-7668-01 | ASD 3/99 | $0.79 |
| *Factor IX* | (Centeon) Mononine/Factor IX Coagulation Factor PDI, IJ | 1 iu, ea | 00053-7668-02 | ASD 3/99 | $0.79 |
| *Factor IX* | (Centeon) Mononine/Factor IX Coagulation Factor PDI, IJ | 1 iu, ea | 00053-7668-04 | ASD 3/99 | $0.79 |
| *Factor IX* | (Genetics Inst.) Benefix/Factor IX Coagulation Factor PDI, IJ (S.D.V. w/diluent, 1000 iu) | 1 iu, ea | 58394-0001-01 | ASD 2/00 | $0.81 |
| *Factor IX* | (Genetics Inst.) Benefix/Factor IX Coagulation Factor PDI, IJ (S.D.V. w/diluent, 1000 iu) | 1 iu, ea | 58394-0002-01 | ASD 2/00 | $0.81 |
| *Factor IX* | (Genetics Inst.) Benefix/Factor IX Coagulation Factor PDI, IJ (S.D.V. w/diluent, 1000 iu) | 1 iu, ea | 58394-0003-01 | ASD 2/00 | $0.81 |
| *Factor VIII* | (Baxter Hyland/Immuno) Recombinate/anti-hemophilic factor, human PDI, IJ (approx. 1000 iu/Vial) | 1 iu, ea | 00944-2938-01 | Biomed Plus, all sizes, 3/99 | $0.92 |
| *Factor VIII* | (Baxter Hyland/Immuno) Recombinate/anti-hemophilic factor, human PDI, IJ (approx. 1000 iu/Vial) | 1 iu, ea | 00944-2938-02 | Biomed Plus, all sizes, 3/99 | $0.92 |
| *Factor VIII* | (Baxter Hyland/Immuno) Recombinate/anti-hemophilic factor, human PDI, IJ (approx. 1000 iu/Vial) | 1 iu, ea | 00944-2938-03 | ASD, all sizes 3/99 | $0.78 |
| *Factor VIII* | (Bayer Pharm) Koate HP/anti-hemophilic factor, human PDI, IJ (approx 1000 u/Vial) | 1 iu, ea | 00026-0664-50 | ASD all sizes 3/99 | $0.42 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *Factor VIII* | (Bayer Pharm) Koate HP/anti-hemophilic factor, human PDI, IJ (approx 1500 u/Vial) | 1 iu, ea | 00026-0664-60 | ASD all sizes 3/99 | $0.42 |
| *Factor VIII* | (Bayer Pharm) Koate HP/anti-hemophilic factor, human PDI, IJ (approx 250 u/Vial) | 1 iu, ea | 00026-0664-20 | ASD all sizes 3/99 | $0.42 |
| *Factor VIII* | (Bayer Pharm) Koate HP/anti-hemophilic factor, human PDI, IJ (approx 500 u/Vial) | 1 iu, ea | 00026-0664-30 | ASD all sizes 3/99 | $0.42 |
| *Factor VIII* | (Bayer Pharm) Kogenate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00026-0670-20 | Biomed Plus, all sizes, 3/99 | $0.92 |
| *Factor VIII* | (Bayer Pharm) Kogenate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00026-0670-30 | Biomed Plus, all sizes, 3/99 | $0.92 |
| *Factor VIII* | (Bayer Pharm) Kogenate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00026-0670-50 | Biomed Plus, all sizes, 3/99 | $0.92 |
| *Factor VIII* | (Centeon) Bioclate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00053-8110-01 | Biomed Plus, all sizes 3/99 | $0.91 |
| *Factor VIII* | (Centeon) Bioclate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00053-8110-02 | (unit) FFF, 8/99 | $0.86 |
| *Factor VIII* | (Centeon) Bioclate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00053-8110-04 | ASD, all sizes 3/99 | $0.78 |
| *Factor VIII* | (Centeon) Helixate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00053-8120-01 | ASD, all sizes 3/99 | $0.78 |
| *Factor VIII* | (Centeon) Helixate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00053-8120-02 | (unit) FFF, 8/99 | $0.86 |
| *Factor VIII* | (Centeon) Helixate/anti-hemophilic factor, recombinant PDI, IJ | 1 iu, ea | 00053-8120-04 | Biomed Plus, all sizes 3/99 | $0.91 |
| *Factor VIII* | (Centeon) Monoclate-P/anti-hemophilic factor, human PDI, IJ | 1 iu, ea | 00053-7656-01 | ASD all sizes 2/00 | $0.70 |
| *Factor VIII* | (Centeon) Monoclate-P/anti-hemophilic factor, human PDI, IJ | 1 iu, ea | 00053-7656-02 | ASD all sizes 2/00 | $0.70 |
| *Factor VIII* | (Centeon) Monoclate-P/anti-hemophilic factor, human PDI, IJ | 1 iu, ea | 00053-7656-04 | ASD all sizes 2/00 | $0.70 |
| *Fluorouracil* | (Fujisawa/APP)/INJ, IJ (VIAL) | 50 mg/ml, 10 ml | 63323-0117-10 | OS, FI | $1.20 |
| *Fluorouracil* | (Fujisawa/APP)/INJ, IJ (VIAL) | 1gm, 20 ml | 63323-0117-20 | OS, FI | $2.60 |

| | | | | | |
|---|---|---|---|---|---|
| *Fluorouracil* | (Fujisawa/APP)/INJ, IJ (VIAL) | 2.5 gm, 50 ml | 63323-0117-51 | OS, FI | $6.00 |
| *Fluorouracil* | (Fujisawa/APP)/INJ, IJ (VIAL) | 5 gm, 100 ml | 63323-0117-61 | OS, FI | $11.00 |
| *Fluorouracil* | (Pharmacia/Upjohn) Adrucil/INJ, IJ (VIAL) | 50 mg/ml, 10 ml | 00013-1036-91 | ASD,OS, OTN, FI | $1.47 |
| *Fluorouracil* | (Pharmacia/Upjohn) Adrucil/INJ, IJ (VIAL) | 50 ml | 00013-1046-94 | ASD, OTN, FI | $8.15 |
| *Fluorouracil* | (Pharmacia/Upjohn) Adrucil/INJ, IJ (VIAL) | 100 ml | 00013-1056-94 | ASD, OTN, FI, OS | $14.44 |
| *Kytril* | (SK Beecham Pharm.)/INJ, IJ (S.D.V.) | 1 mg/ml, 1 ml | 00029-4149-01 | FI, OS, OTN, ASD | $139.04 |
| *Kytril* | (SK Beecham Pharm.)/INJ, IJ (S.D.V.) | 1 mg/ml, 4 ml | 00029-4152-01 | FI, OTN, ASD, OS | $555.67 |
| *Leucovorin Calcium* | (Abbott Hosp.)/(VIAL, FLIPTOP 30 ML) | 10 mg/ml, 25 ml | 00074-4541-04 | FI, OTN, ASD, OS | $8.56 |
| *Leucovorin Calcium* | (Abbott Hosp.)/INJ, IJ (VIAL, FLIPTOP) | 10mg/ml, 10ml | 00074-4541-02 | FI, OTN, OS | $3.85 |
| *Leucovorin Calcium* | (Bedford)/PDI, IJ (VIAL) | 50 mg, 10s ea | 55390-0051-10 | FI, OTN, ASD, OS | $2.76 |
| *Leucovorin Calcium* | (Bedford)/PDI, IJ (VIAL) | 100 mg, 10s ea | 55390-0052-10 | FI, OTN, ASD, OS | $3.24 |
| *Leucovorin Calcium* | (Bedford)/PDI, IJ (VIAL) | 200 mg, ea | 55390-0053-01 | FI, OTN, ASD, OS | $8.19 |
| *Leucovorin Calcium* | (Gensia)/PDI, IJ (P.F. VIAL) | 100 mg, ea | 00703-5140-01 | OTN, ASD, OS | $3.49 |
| *Leucovorin Calcium* | (Gensia)/PDI, IJ (P.F. VIAL) | 350 mg, ea | 00703-5145-01 | OTN, ASD, OS | $15.83 |
| *Leucovorin Calcium* | (Immunex)/PDI, IJ (P.F.) | 350 mg, ea | 58406-0623-07 | OTN, FI, OS | $14.58 |
| *Methotrexate Sodium* | (Bedford)/INJ, IJ (S.D.V.) | 25 mg/ml, 2 ml, ea | 55390-0031-10 | ASD, OTN, FI | $2.63 |
| *Methotrexate Sodium* | (Bedford)/INJ, IJ (S.D.V.) | 25 mg/ml, 4 ml, ea | 55390-0032-10 | ASD, OTN, FI | $3.65 |
| *Methotrexate Sodium* | (Bedford)/INJ, IJ (S.D.V.) | 25 mg/ml, 8 ml, ea | 55390-0033-10 | ASD, OTN, FI | $5.03 |
| *Methotrexate Sodium* | (Bedford)/INJ, IJ (S.D.V.) | 25 mg/ml, 10 ml, ea | 55390-0034-10 | ASD, OTN, FI | $5.70 |
| *Methotrexate Sodium* | (Immunex) LPF/INJ, IJ (S.D.V., P.F.) | 25 mg/ml, 8 ml | 58406-0683-12 | ASD, OS, OTN, FI | $5.84 |
| *Methotrexate Sodium* | (Immunex) LPF/INJ, IJ (S.D.V., P.F.) | 25 mg/ml, 2 ml | 58406-0683-15 | ASD, ASD, OS, FI | $2.91 |
| *Methotrexate Sodium* | (Immunex) LPF/INJ, IJ (S.D.V., P.F.) | 25 mg/ml, 10 ml | 58406-0683-16 | ASD, OTN, FI, OS | $7.10 |
| *Methotrexate Sodium* | (Immunex) LPF/INJ, IJ (S.D.V., P.F.) | 25 mg/ml, 4 ml | 58406-0683-18 | FI, MK, OTN, OS | $4.32 |
| *Methotrexate Sodium* | (Immunex)/INJ, IJ (VIAL, L.P.P.) | 25 mg/ml, 2 ml | 58406-0681-14 | ASD,OS, OTN, FI | $3.43 |
| *Methotrexate Sodium* | (Immunex)/PDI, IJ (S.D.V.) | 1 gm, ea | 58406-0671-05 | OS, OTN, MK | $45.97 |
| *Vinblastine Sulfate* | (Bedford)/PDI, IJ (VIAL) | 10 mg, ea | 55390-0091-10 | ASD, OS, OTN, FI | $8.19 |
| *Vinblastine Sulfate* | (Faulding)/INJ, IJ (VIAL) | 10 mg, ea | 61703-0310-18 | ASD | $7.95 |

| | | | | | |
|---|---|---|---|---|---|
| *Vinblastine Sulfate* | (Fujisawa/APP) | 1 mg/ml, 10 ml | 00469-2780-30 | ASD, OS | $9.00 |
| *Vinblastine Sulfate* | (Fujisawa/APP) | 1 mg/ml, 10 ml | 63323-0278-10 | OTN, FI | $10.93 |
| *Vincristine Sulfate* | (Faulding)/INJ, IJ (S.D.V., P.F.) | 1 mg/ml, 1 ml | 61703-0309-06 | ASD, OS, OTN, FI | $4.34 |
| *Vincristine Sulfate* | (Faulding)/INJ, IJ (S.D.V., P.F.) | 1 mg/ml, 2 ml | 61703-0309-16 | ASD,OS, OTN, FI | $7.60 |
| *Vincristine Sulfate* | (Pharmacia/Upjohn) Vincasar/INJ, IJ (VIAL) | 1 mg/ml, 1 ml | 00013-7456-86 | ASD, OTN, FI, OS | $5.10 |
| *Vincristine Sulfate* | (Pharmacia/Upjohn) Vincasar/INJ, IJ (VIAL) | 1 mg/ml, 2 ml | 00013-7466-86 | ASD, OTN, FI, OS | $8.35 |
| *Zofran* | (Cerenex)/INJ, IJ (M.D.V.) | 2 mg/ml, 20 ml | 000173-0442-00 | FI, OTN, ASD, OS | $169.06 |
| *Zofran* | (Cerenex)/INJ, IJ (PREMIXED BAG) | 30 mg/50ml, 50 ml | 000173-0461-00 | FI, OTN, FI, OS | $128.09 |
| *Zofran* | (Cerenex)/INJ, IJ (S.D.V.) | 2 mg/ml, 2 ml | 000173-0442-02 | FI, OTN, OS | $22.61 |

# EXHIBIT AQ

Berenson, Dr. Robert                    December 18, 2007

Page 1

             FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

IN RE:  PHARMACEUTICAL        :  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE    :  CIVIL ACTION

PRICE LITIGATION              :  01-CV-12257-PBS

THIS DOCUMENT RELATES TO      :

U.S. ex rel. Ven-a-Care of    :  Judge Patti B. Saris

the Florida Keys, Inc.        :

      v.                      :

Abbott Laboratories, Inc.,    :  Chief Magistrate

No. 06-CV-11337-PBS           :  Judge Marianne B.

- - - - - - - - - - - - - - -x    Bowler

      (CROSS NOTICED CAPTIONS ON FOLLOWING PAGES)

      Videotaped deposition of DR. ROBERT BERENSON

                     Volume I

                     Washington, D.C.

                     Wednesday, December 18, 2007

                     10:10 a.m.

Henderson Legal Services, Inc.

Berenson, Dr. Robert                              December 18, 2007

Page 134

1      Q.   So in setting rates for reimbursement for
2   Medicare Part B drugs in the oncology setting, during
3   your time at CMS, was CMS trying to make sure that
4   those uncompensated services were cross-subsidized?
5          MR. LIBMAN: Objection. This is
6   Mr. Libman.
7          THE WITNESS: No. We were trying to
8   implement the law that said pay 95 percent of AWP, is
9   what we were -- is what we were doing. We were aware
10  that any changes that we might recommend had to take
11  into account possible inadequacy of reimbursement for
12  administration of drugs.
13         The ideal thing would have been to pay for
14  professional services directly, not indirectly, but I
15  don't remember us ever doing a -- any kind of a
16  calculation at how much do we need to
17  cross-subsidize. I mean, it wasn't that kind of
18  thing.
19         We had -- we were paying a certain amount.
20  The OIG and then the DOJ came and said we were paying
21  a lot more than the actual wholesale prices. We then
22  said, we now have an alternative that we can

Page 135

1   implement. And it came to then our attention that
2   oncologists were claiming that they couldn't stay in
3   business, and would get out of the business, so we
4   had a problem.
5          BY MR. MURRAY:
6      Q.   So CMS was following the law when it paid
7   for Medicare Part B drugs at 95 percent of AWP based
8   on compendia prices?
9          MR. LIBMAN: Objection. This is
10  Mr. Libman.
11         MR. DRAYCOTT: Objection.
12         THE WITNESS: Yeah. Again, I don't know
13  if it was following the law or not. I know that is
14  what we were doing.
15         BY MR. MURRAY:
16     Q.   And would you agree that CMS would also
17  have been following the law if it paid for Medicare
18  Part B drugs at 95 percent of AWP based on the DOJ
19  AWPs?
20         MR. LIBMAN: Objection. This is
21  Mr. Libman.
22         THE WITNESS: I don't remember our general

Page 136

1   counsel objecting when we were about issue this new
2   program memorandum. That's all I can say. Again,
3   I'm not an expert on whether we were following the
4   law or not.
5          BY MR. MURRAY:
6      Q.   Well, in your role as the guy who
7   implements Medicare Part B drug reimbursement policy
8   at CMS, did either of these methodologies cause you
9   concern that you might not be following the law?
10     A.   No.
11     Q.   Okay. If you wouldn't mind, we need to
12  take a brief break now, so he can change out the
13  videotape.
14     A.   Okay.
15         THE VIDEOGRAPHER: This is the end of tape
16  two. Off the record at 1:24.
17         (Recess.)
18         THE VIDEOGRAPHER: This is the beginning
19  of tape number three in the deposition of
20  Dr. Berenson. On the record at 1:30.
21         BY MR. MURRAY:
22     Q.   So over that five-minute break, you had a

Page 137

1   chance to confer with counsel in the hall. Do you
2   want to tell me what you guys talked about?
3          MR. DRAYCOTT: You can state the subject
4   matter, Dr. Berenson.
5          THE WITNESS: We talked about the
6   privilege for deliberations, you know, agency staff
7   deliberations privilege issues.
8          BY MR. MURRAY:
9      Q.   Anything else?
10     A.   No.
11     Q.   Okay. Could I get you to turn with me to
12  Exhibit 184. And ask if you recognize this.
13     A.   I do. It was something I reviewed last
14  week.
15     Q.   And what is this?
16     A.   This was a program memorandum to
17  intermediaries and carriers in -- well, as the
18  subject says, it provides them an opportunity to use
19  a different source of average wholesale price.
20     Q.   And did you -- did you have any hand in
21  drafting this?
22     A.   I doubt that I had a hand in drafting it.

35 (Pages 134 to 137)

e1de5f2b-0e6f-4496-8060-08bdfabf9cb4

Berenson, Dr. Robert                                          December 18, 2007

Page 70

1   for a break.
2         THE VIDEOGRAPHER: Off the record at
3   11:01.
4         (Recess.)
5         THE VIDEOGRAPHER: On the record at
6   11:01:46. This is the end of tape one. Off the
7   record at 11:01:50.
8         (Recess.)
9         THE VIDEOGRAPHER: This is the beginning
10  of tape two in the deposition of Dr. Berenson on the
11  record at 11:11.
12  BY MR. MURRAY:
13    Q.   Back from break. Dr. Berenson, I want to
14  ask you next a couple of questions about this
15  particular case. Do you know what this case is
16  about?
17    A.   I don't know any of the particulars.
18    Q.   Do you know generally?
19    A.   It's a fraud case about manipulation of AW
20  -- related to manipulation of AWP, but I have no idea
21  of the theories or anything more than that.
22    Q.   And what do you mean by manipulation of

Page 71

1   AWP?
2     A.   Inflating AWP to try to sort of achieve
3   market share, attract physicians to sort of buy your
4   drug to get a larger spread to make more -- to
5   generate more revenue.
6     Q.   And do you know who is alleged to have
7   inflated these AWPs?
8     A.   No.
9     Q.   Did you know you've been disclosed by the
10  government as someone that may have discoverable
11  information relating to this case.
12    A.   I didn't know that.
13    Q.   Do you know what that information might
14  be?
15    A.   No.
16    Q.   Do you expect to be a witness at trial?
17    A.   No.
18    Q.   Do you have any personal knowledge of what
19  you refer to as the manipulation of AWP between 1991
20  and 2001?
21    A.   No.
22    Q.   Do you have any knowledge of that from

Page 72

1   reading documents?
2     A.   No.
3     Q.   From any discussions with anybody?
4     A.   No.
5     Q.   Have you ever heard of Ven-A-Care.
6     A.   No. Only Mr. Draycott had told me that
7   they were involved in the case, but I have not heard
8   of them before last week.
9     Q.   Do you know what Ven-A-Care is?
10    A.   No.
11    Q.   In any of your discussions when you worked
12  at HCFA or CMS, did you ever use the term average
13  wholesale price to refer to the price at which a
14  manufacturer sells a drug to a retail customer?
15        MR. DRAYCOTT: Objection.
16        THE WITNESS: I have no idea. I can't
17  remember that.
18  BY MR. MURRAY:
19    Q.   Do you ever remember hearing anyone else
20  use it to mean that?
21    A.   As I said earlier, I think there was a
22  common understanding within the agency that AWP

Page 73

1   referred to the prices in these compendia and that
2   they deviated from actual acquisition prices and
3   that's how we sort of viewed AWP.
4     Q.   Now, in your time at CMS, let me start
5   first with your time in CHPP. What specific
6   responsibilities, if any, did you have with respect
7   to the policy for Medicare Part B drug reimbursement?
8     A.   I was -- I had a lot of responsibility for
9   it. I would be the chief person who would make
10  recommendations to the administrator on what our
11  policy should be, if it needed to be changed. So if
12  there was any legislative proposals, for example,
13  that affected Part B drugs, I would be the one who
14  would ultimately sign the memo to the administrator
15  with our recommendation. We've made policy for Part
16  A and Part B of Medicare.
17    Q.   And you came to CHPP in 1998, is that
18  right?
19    A.   April of 1998.
20    Q.   And do you know had BBA in 1997 gone into
21  effect by then?
22    A.   Parts of it went into effect at different

                                    19 (Pages 70 to 73)

e1de5f2b-0e6f-4496-8060-08bdfabf9cb4

# EXHIBIT AR

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

# OFFICE OF
# INSPECTOR GENERAL

## Medicaid's Use of Revised
## Average Wholesale Prices



EXHIBIT

PENGAD 800-631-6989

Abbott. 95
4.18.07 mfm



JANET REHNQUIST
INSPECTOR GENERAL

SEPTEMBER 2001
OEI-03-01-00010

## OFFICE OF INSPECTOR GENERAL

The mission of the Office of Inspector General (OIG), as mandated by Public Law 95-452, is to protect the integrity of the Department of Health and Human Services programs as well as the health and welfare of beneficiaries served by them. This statutory mission is carried out through a nationwide program of audits, investigations, inspections, sanctions, and fraud alerts. The Inspector General informs the Secretary of program and management problems and recommends legislative, regulatory, and operational approaches to correct them.

### Office of Evaluation and Inspections

The Office of Evaluation and Inspections (OEI) is one of several components of the Office of Inspector General. It conducts short-term management and program evaluations (called inspections) that focus on issues of concern to the Department, the Congress, and the public. The inspection reports provide findings and recommendations on the efficiency, vulnerability, and effectiveness of departmental programs.

OEI's Philadelphia Regional Office prepared this report under the direction of Robert A. Vito, Regional Inspector General, and Linda M. Ragone, Deputy Regional Inspector General. Principal OEI staff included:

| **REGION** | **HEADQUARTERS** |
| --- | --- |
| David Tawes, *Project Leader* | Linda Frisch, *Program Specialist* |

To obtain copies of this report, please call the Philadelphia Regional Office at (800) 531-9562. Reports are also available on the World Wide Web at our home page address:

http://www.hhs.gov/oig/oei

# EXECUTIVE SUMMARY

## PURPOSE

This report describes State Medicaid agencies' use of revised average wholesale prices for certain prescription drugs.

## BACKGROUND

Medicaid payments for prescription drugs totaled almost $12 billion in 1998, accounting for nearly 7 percent of all Medicaid expenditures. Most State Medicaid agencies reimburse pharmacies based on the average wholesale price of a drug less a discount ranging from 4 to 15 percent. States do not always use the same reimbursement for drugs administered directly by physicians. Drug manufacturers report average wholesale prices to companies such as First DataBank and Medical Economics. These companies compile pricing data for the pharmaceutical industry.

Recently, a national investigation conducted by the United States Department of Justice and the National Association of Medicaid Fraud Control Units (NAMFCU) revealed that some drug manufacturers were reporting inflated average wholesale prices for certain products. As a result, the two entities collected actual wholesale pricing data for approximately 400 national drug codes representing 51 drugs. This data was provided to First DataBank, who calculated new average wholesale prices for the drugs, and subsequently made the revised prices available to State Medicaid programs. The NAMFCU strongly encouraged States to make use of the revised prices, and anticipated that their implementation would result in a significant reduction in Medicaid reimbursement for the drugs involved.

We gathered information from Medicaid representatives in 48 States and the District of Columbia. We asked States about their drug reimbursement methodologies, whether or not they had implemented the revised average wholesale prices, and if they had any problems or concerns about these prices. We also asked States that had implemented the revised prices to provide cost-savings estimates, if available.

## FINDINGS

### Thirty States use at least some of the revised average wholesale prices when determining drug reimbursement amounts

Thirty States have incorporated the revised prices into their drug reimbursement methodology in some manner. However, States vary considerably in their methods of

implementation. Of the 30 States that have adopted the revised prices, 9 States use them for both pharmacy drugs and physician-administered drugs. The remaining 21 States use the revised prices for pharmacy drugs only.

### States reported both advantages and disadvantages to using the revised prices

Seven States expressed complete support of the efforts to revise drug prices. These States noted that reported average wholesale prices are often extremely inflated, and they welcomed the efforts to obtain more accurate prices. Seventeen States appreciated the intent of the revised prices, but questioned whether the effort was the best solution. Nearly all States reported that certain groups opposed the use of the revised average wholesale prices. Opposition came from a number of sources, including hemophilia groups, pharmacies, infusion providers, physicians, and drug manufacturers.

### States using the revised prices believe they will lead to short-term cost-savings, but are unsure of the long-term impact

Of the 30 States who are currently using the revised prices, 24 believed the prices will result in short-term cost-savings. However, 20 of the 30 States either do not believe or are unsure that the new prices will lead to any long-term savings. Seven States provided cost-savings estimates, with annual savings ranging from $800,000 to $7 million.

## CONCLUSION

Over the last several years, the OIG has produced a significant body of work that clearly demonstrates the inflated nature of reported average wholesale prices. Because most States base their reimbursement for drugs on average wholesale prices, this inflation has caused Medicaid to pay too much for certain products. Therefore, we commend any efforts to obtain more accurate pricing for the Medicaid program.

This report shows that some States are benefitting from the revised average wholesale prices prompted by the actions of the Justice Department and the NAMFCU. However, States' concerns about the revised prices indicate that attempting to lower reimbursement simply by further reducing average wholesale prices may not be an effective long-term solution. Therefore, we continue to believe that the current system's reliance on reported average wholesale prices as a basis for drug reimbursement is fundamentally flawed.

### Agency Comments

The CMS agreed with our conclusion that the reliance on reported average wholesale prices as a basis for drug reimbursement is problematic, and stated that they will continue to look for administrative and legislative solutions to this problem. In addition, the CMS made two technical comments concerning items in the draft report. We have addressed the technical comments in this final version of the report.

# TABLE OF CONTENTS

**PAGE**

EXECUTIVE SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FINDINGS

    States' Use of Revised Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    States' Experiences with Revised Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Potential Cost Savings of Revised Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

APPENDICES

    Use of Revised Average Wholesale Prices by State. . . . . . . . . . . . . . . . . . . . . . . 10

    Centers for Medicare & Medicaid Services Comments . . . . . . . . . . . . . . . . . . . . 12

# INTRODUCTION

## PURPOSE

This report describes State Medicaid agencies' use of revised average wholesale prices for certain prescription drugs.

## BACKGROUND

Congress created Medicaid in 1965 under Title XIX of the Social Security Act.   Medicaid is a joint Federal and State program that provides medical assistance to individuals and families with low incomes and few resources.  Individual States establish eligibility requirements, benefits packages, and payment rates for Medicaid under broad standards set by the Centers for Medicare & Medicaid Services (CMS).  The Federal Government contributes between 50 and 83 percent of the Medicaid funding for each State.  In 1998, Medicaid helped provide approximately 40 million people with medical assistance, at a cost of over $175 billion.

### Medicaid Coverage of Prescription Drugs

Federal guidelines require States to provide certain benefits, such as hospital and physician services, to their Medicaid recipients.  Each State also has the option of providing other Medicaid benefits, including prescription drugs.  Currently, all 50 States and the District of Columbia offer prescription drug coverage for Medicaid recipients.  Medicaid payments for prescription drugs totaled almost $12 billion in 1998, accounting for nearly 7 percent of all Medicaid expenditures.

Most outpatient prescription drugs are covered by Medicaid.  However, States often have different reimbursement methods for drugs obtained through pharmacies versus drugs administered in physicians' offices.  Drugs purchased from pharmacies are covered and reimbursed under States' prescription drug programs.  In contrast, drugs administered by physicians are usually reimbursed through the physician payment process, and not the prescription drug program.

Pharmacies use national drug codes to identify and obtain reimbursement for drugs covered under a State's prescription drug program.  Each drug manufactured or distributed in the United States has a unique national drug code that identifies the manufacturer of the drug, the product dosage form, and the package size.  Physicians, however, often bill Medicaid for drugs on the HCFA 1500 claim form, which does not specifically request national drug code information.  On the HCFA 1500 form, drugs are identified by codes in the HCFA Common Procedure Coding System, hereinafter referred

to as procedure codes.  Procedure codes define the type of drug and the dosage amount, but not the specific drug product or its manufacturer.

## Medicaid Drug Reimbursement Methodology

Each Medicaid agency is required to submit a State plan to CMS describing its payment methodology for covered drugs.  Federal regulations require that each State's reimbursement for a drug not exceed, in the aggregate, the lower of its estimated acquisition cost or the providers' usual and customary charge to the public for the drug.  However, CMS allows States flexibility in defining estimated acquisition cost.

When reimbursing for a pharmacy drug, 43 State Medicaid agencies base their calculation of estimated acquisition cost on the drug's average wholesale price discounted by 4 to 17 percent.  Four other States use wholesale acquisition cost plus       5 to 11 percent when calculating estimated acquisition cost.  Three States use a combination of both methods.  Drug manufacturers report average wholesale prices to companies such as First DataBank and Medical Economics.  These companies compile pricing data for the pharmaceutical industry.  This pricing data is usually reported using national drug codes rather than procedure codes.

For certain pharmacy drugs, States use the Federal Upper Limit and the State Maximum Allowable Cost programs in determining reimbursement amounts.  The CMS has established Federal upper limit payment amounts for over 200 drugs.  In addition, more than half of States have implemented a maximum allowable cost program to limit payment amounts for certain prescription drugs.  States vary considerably in the method by which this maximum allowable cost is calculated.  A small number of States use other pricing mechanisms for specific categories of drugs, such as blood factors used in the treatment of hemophilia.  These States may obtain prices directly from manufacturers, require invoices from providers that show actual acquisition costs, or calculate reimbursement through various other methods.

Many States reimburse physician-administered drugs differently than pharmacy drugs.  The majority of States still base reimbursement for physician-administered drugs on average wholesale price.  However, some States discount average wholesale prices by different amounts for physician drugs compared to pharmacy drugs, while other States subtract no discount at all.  Many physician-administered drugs are billed using procedure codes that do not have corresponding average wholesale prices.  Therefore, calculating reimbursement amounts for physician-administered drugs can be more complicated than for pharmacy drugs.

Overall, most Medicaid States reimburse for drugs purchased from a pharmacy at the lower of the discounted average wholesale price, the Federal upper limit, the State maximum allowable cost, or the provider's usual and customary charge.  States often reimburse for physician-administered drugs in a different manner, though most still use average wholesale price as the primary basis for determining reimbursement.

**Revised Drug Prices for Medicaid**

A recent investigation conducted by the United States Department of Justice and the National Association of Medicaid Fraud Control Units (NAMFCU) revealed that some drug manufacturers were reporting inflated average wholesale prices for certain products. The investigation suggested that these inflated prices have caused the Medicaid program to overpay substantially for these drugs. As a result, the Justice Department and the NAMFCU collected actual average wholesale pricing data for approximately 400 of the more than 50,000 national drug codes presently in use. These 400 codes represent 51 injectable, infusion, and inhalation drugs. The data was gathered from several wholesale drug catalogs.

In a February 2000 letter to State Medicaid pharmacy directors, the NAMFCU stated that the pricing data had been given to First DataBank, the company that provides average pricing information to nearly all of the State Medicaid agencies. First DataBank agreed to use this data to calculate revised average wholesale prices for the 51 drugs, and to subsequently make the revised prices available to the States. In encouraging the States to take advantage of these revised prices, the NAMFCU wrote:

> This revised procedure does not change the terms of the company's [First DataBank's] contract with your State, but merely provides an improved means for First DataBank to provide more accurate information to the States. More importantly, in view of the Medicaid program's legal obligation to reimburse true provider acquisition costs, such an effort by the States to ensure that payment is based on actual prices is mandatory.

According to the letter, Medicaid agencies may make changes to the list of national drug codes with revised prices. First DataBank agreed that every six months it would collect information from wholesale catalogs when updating prices for the approximately 400 national drug codes. The NAMFCU anticipated that the use of the revised prices would result in a significant reduction in reimbursement for the drugs involved.

First DataBank began reporting the revised average wholesale prices to States on May 1, 2000. However, some States did not wish to use the revised prices, and requested that First DataBank continue to supply the original prices instead.

---

# METHODOLOGY

We reviewed relevant information about the Medicaid program, specifically materials relating to Medicaid drug reimbursement. In addition, we obtained correspondence from First DataBank and the NAMFCU concerning the implementation of the revised average wholesale prices.

## Data Collection and Analysis

We conducted telephone interviews with Medicaid representatives in 48 States and the District of Columbia, hereinafter referred to as a State. Whenever possible, the interview was conducted with the States' drug program administrator. We did not speak with Medicaid staff from Arizona because the State's drug benefit is administered completely through managed care organizations and not the traditional fee-for-service system. Representatives of Maine's Medicaid program did not respond to our request for an interview. In this report, we use the word "State" to denote both a "State Medicaid agency" and "State Medicaid agency representative."

Before contacting the States, we developed questions about the revised average wholesale prices with the assistance of CMS staff and two State drug program administrators. We asked States about their drug reimbursement methodologies, whether or not they had implemented the revised average wholesale prices, and if they had any problems or concerns about these prices. We also asked States that had implemented the revised prices to provide cost-savings estimates. However, we did not validate the cost-savings estimates reported by States. We also gave each State an opportunity to discuss any other issues they felt needed to be addressed concerning the revised average wholesale prices. We collected this data between January and March 2001.

# FINDINGS

## Thirty States use at least some of the revised average wholesale prices when determining drug reimbursement amounts

Thirty States have incorporated the revised prices into their drug reimbursement methodology in some manner. However, States vary considerably in the methods of implementation. For the most part, States use these prices as one of the factors in calculating a drug's reimbursement amount. States continue to use Federal upper limits, State maximum allowable costs, and various other pricing methods in combination with the revised average wholesale prices calculated by First DataBank.

Because the revised average wholesale prices are based on national drug codes, many States have found it difficult to use them for physician-administered drugs, which are usually reimbursed by procedure code. Of the 30 States that have adopted the revised prices, nine States use them for both pharmacy drugs and physician-administered drugs. The remaining 21 States use the revised prices for pharmacy drugs only. A table outlining how each State uses the revised prices is provided in appendix A.

Some States do not use the revised prices for certain drug products. For example, two States discontinued using the revised prices for blood factors. Three other States that base reimbursement primarily on wholesale acquisition cost or direct pricing use the revised prices only when these other prices are not available. One State cannot use the revised average wholesale prices for certain claims because First DataBank refused to provide the revised prices to one of the State's contractors.

### Eleven States do not take a percentage discount off the revised average wholesale prices

When determining reimbursement, States generally subtract a percentage discount from the drug's average wholesale price. However, 11 of the 30 States that use the revised prices do not subtract this percentage discount when paying for drugs that have revised prices. Several States reported that the revised average wholesale prices are closer to a true acquisition cost; therefore, subtracting a percentage discount may actually make the reimbursement amount fall below a provider's acquisition cost. They remarked that if providers were reimbursed below cost, they would simply stop providing these drugs, which could limit a patient's access to care.

Several other States have considered eliminating the percentage discount when determining reimbursement for the drugs with revised prices. However, these States are

unsure they have the authority to change their reimbursement methodology for this small group of drugs without undertaking significant administrative and/or legislative actions.

## States reported both advantages and disadvantages to using the revised prices

### Some States were completely supportive of the efforts to revise prices

Seven States reported only positive opinions about the revised prices. These States noted that reported average wholesale prices are often extremely inflated, and they welcomed the Justice Department's and NAMFCU's efforts to obtain more accurate prices. One State pharmacy director said, "This kind of pricing information should be aggressively pursued by First DataBank, the OIG, and HCFA." Two other pharmacy directors hoped that the revised pricing would be expanded to even more drugs.

### Other States appreciated the intent of the revised prices, but questioned whether the effort was the best solution

Seventeen States supported the efforts to revise prices, but had concerns with the specific actions taken. Four of these States believed that attempts to reduce excessive reimbursement for prescription drugs should not be based on determining more accurate average wholesale prices. According to these States, basing payment on the actual acquisition cost of a drug or on the average manufacturer's price reported to CMS under the Medicaid Drug Rebate Program is a much more effective solution. The other 13 States did not report problems with the use of average wholesale prices in general. Rather, they cited concerns about the particular drugs included in the revisions and questioned how the revised prices would be updated.

Several States noted that the drugs chosen for pricing revisions were mainly infusion and injectable products that did not amount to a significant portion of Medicaid drug spending. One respondent termed these drugs "small potatoes," and felt that price reductions should have been targeted to a different class of products such as oral tablets. Others noted that basing the revisions on specific national drug codes rather than entire drug classes could potentially limit the effectiveness of the revisions.

States also expressed concern about the process of updating the revised prices. Even though First DataBank is required by its agreement with the NAMFCU to collect updated prices for these drugs, some States reported that First DataBank expressed little interest in updating the revised prices. According to these States, First DataBank only planned on reporting revised prices based on what the Justice Department and the NAMFCU provided them. Meanwhile, States were unsure if the Justice Department and the NAMFCU were planning to provide updated pricing information to First DataBank and/or add any new national drug codes to the pricing revisions.

Some States felt these problems were never addressed because the Justice Department and the NAMFCU sought little or no input from State drug program administrators. According to one State, many of the concerns States have with the revised prices could have been avoided if the drug program administrators had been included in the decision-making process.

**States reported that certain groups opposed the use of the revised average wholesale prices**

Forty-three States reported receiving complaints about the revised prices. These complaints were from a number of sources, including hemophilia groups, pharmacies, infusion providers, physicians, and drug manufacturers. All asserted that the revised prices were too low. Some hemophilia providers claimed that they would be unable to continue treating Medicaid recipients unless the prices for blood factors were raised. These complaints were instrumental in two States' decisions to discontinue the use of the revised prices for blood-factor products, and have caused other States to contemplate the same action. In addition, some States volunteered that they had asked drug providers for invoices to substantiate claims that the revised prices were below acquisition costs. These States reported that invoice data was either not provided, or provided only for a very small number of drug codes (less than 10). In these cases, the States made revisions to prices based on the invoice data.

The majority of the 19 States that are not using the revised prices felt that the prices may be too low, especially when a percentage discount is subtracted. Four of these 19 States actually used the revised prices at one time, but later reversed their decisions. Some States noted they checked with area wholesalers and distributors, and subsequently determined that the revised prices were not readily available to providers in their State.

# States using the revised prices believe they will lead to short-term savings, but are unsure of the long-term impact

Of the 30 States currently using the revised prices, 24 believed there will be short-term cost savings. These States reported that short-term savings were inevitable due to significant per-unit price reductions for these drugs. However, some States suggested the savings would be small because there was low utilization for the drugs with revised prices, or that utilization for these drugs would simply shift to other products.

Seven States provided an estimate of annual cost savings that would result from their drug price revisions. Each of these estimates was based on the assumption that utilization would remain constant. The States estimated annual savings between $800,000 and $7 million.

Twenty of the 30 States using the revised prices either did not believe or were unsure that the revised prices would result in long-term cost savings. Many of these States felt that

providers and manufacturers would find ways to circumvent the new prices. For instance, manufacturers could obtain new national drug codes for products with revised prices and report a higher average wholesale price for the new code. Because First DataBank only reported revised prices for the national drug codes that were supplied by the Justice Department and the NAMFCU, Medicaid would pay the higher prices reported for the newly-issued national drug codes. Furthermore, because the revised prices were issued on a product-specific and not a drug-class level, providers could substitute drugs with higher-priced national drug codes in place of codes with revised prices.

# CONCLUSION

Over the last several years, the OIG has produced a significant body of work that clearly demonstrates the inflated nature of reported average wholesale prices. Because most States base their reimbursement for drugs on average wholesale prices, this inflation has caused Medicaid to pay too much for certain products. Therefore, we commend any efforts to obtain more accurate pricing for the Medicaid program.

This report shows that some States are benefitting from the revised average wholesale prices prompted by the actions of the Justice Department and the NAMFCU. However, States' concerns about the revised prices indicate that attempting to lower reimbursement simply by further reducing average wholesale prices may not be an effective long-term solution. Therefore, we continue to believe that the current system's reliance on reported average wholesale prices as a basis for drug reimbursement is fundamentally flawed.

## Agency Comments

The CMS agreed with our conclusion that the reliance on reported average wholesale prices as a basis for drug reimbursement is problematic, and stated that they will continue to look for administrative and legislative solutions to this problem. In addition, the CMS made two technical comments concerning items in the draft report. We have addressed the technical comments in this final version of the report. The full text of CMS' comments is presented in Appendix B.

**APPENDIX A**

## Use of Revised Average Wholesale Prices by State

| State | Uses Revised Prices for Pharmacy Drugs | Uses Revised Prices for Physician Drugs | |
|---|---|---|---|
| Alabama [1] | x | x | x |
| Alaska | x | | |
| Arizona | | | |
| Arkansas | | | |
| California | | | |
| Colorado | | | |
| Connecticut | x | | x |
| Delaware | x | x | |
| District of Columbia [2] | x | | x |
| Florida | x | | |
| Georgia | | | |
| Hawaii [3] | x | x | x |
| Idaho [4] | x | | x |
| Illinois | x | | |
| Indiana [2] | x | x | x |
| Iowa | | | |
| Kansas [4] | x | x | |
| Kentucky [6] | | | |
| Louisiana | | | |
| Maine | | | |
| Maryland | x | | x |
| Massachusetts | | | |
| Michigan | | | |
| Minnesota [5] | | | |
| Mississippi | | | |
| Missouri [6] | | | |
| Montana | x | | |
| Nebraska | | | |
| Nevada | x | | x |
| New Hampshire | x | | x |
| New Jersey | x | | |
| New Mexico | x | | x |
| New York | x | | x |
| | | | |

**APPENDIX A**

| State | Uses Revised Prices for Pharmacy Drugs | Uses Revised Prices for Physician Drugs | Subtracts Discount from Revised Price |
|---|---|---|---|
| North Dakota [6] | | | |
| Ohio [1] | x | | x |
| Oklahoma | x | | x |
| Oregon [4] | x | x | x |
| Pennsylvania | x | x | x |
| Rhode Island | | | |
| South Dakota | | | |
| South Carolina | x | x | x |
| Tennessee [6] | x | | x |
| Texas [1,4] | x | | |
| Utah | x | | |
| Vermont | x | | x |
| Virginia | | | |
| Washington | x | | |
| West Virginia | x | | |
| Wisconsin [7] | x | x | x |
| Wyoming | | | |

Source: OIG Survey of Medicaid States, January - March 2001

[1] State does not use revised prices for many of the affected drugs because State relies on methods other than average wholesale price as its primary reimbursement methodology.

[2] State no longer uses revised prices for blood-factor products based on complaints from providers.

[3] Revised prices not available to all State contractors.

[4] For a small number of national drug codes, State no longer uses revised prices since invoices sent by providers indicated prices were too low.

[5] State used revised prices at one time, but no longer does so.

[6] Most drugs are paid through a managed care organization. Only drugs provided to dual-eligible Medicare/Medicaid    recipients and behavioral-health drugs are reimbursed through the pharmacy program.

[7] State does not use revised prices for drugs with State maximum allowable costs.

**APPENDIX B**

## Health Care Financing Administration Comments

  DEPARTMENT OF HEALTH & HUMAN SERVICES

Health Care Financing Administration

Deputy Administrator
Washington, D.C. 20201

DATE:   AUG 20 2001

TO:     Janet Rehnquist
        Inspector General

FROM:   Ruben J. King-Shaw, Jr.
        Deputy Administrator and Chief Operating Officer
        Centers for Medicare & Medicaid Services

SUBJECT: Office of Inspector General (OIG) Draft Report: *Medicaid's Use of Revised Average Wholesale Prices* (OEI-03-01-00010)

Thank you for the opportunity to review and comment on the above-referenced draft report regarding state Medicaid agencies' use of revised average wholesale prices (AWPs) for certain prescription drugs. Investigative findings by the Department of Justice and the National Association of Medicaid Fraud Control Units (NAMFCUs) revealed that some drug manufacturers were reporting inflated average manufacturer prices for certain drug products. As a result, actual wholesale pricing data were collected for approximately 400 national drug code numbers representing 51 drugs. These data were provided to First Data Bank, which made the prices available to state Medicaid programs. The OIG reported that some states are benefiting from the revised (AWPs); however, states are still concerned that this may not be an effective long-term solution.

While there were no recommendations noted in this report, the Centers for Medicare & Medicaid Services agrees with OIG's conclusion that reliance on reported AWPs by drug manufacturers as a basis for drug reimbursement is problematic. Additionally, we acknowledge OIG's comments in earlier reports regarding the shortcomings of using AWPs as a basis for reimbursement and will continue to look for administrative and legislative solutions to this problem.

We appreciate the effort that went into this report and the opportunity to review and comment on the issues it raises. Finally, we note as a technical correction that there appears to be a discrepancy between page i, first paragraph, and page 1, first paragraph under "Medicaid Coverage of Prescription Drugs." The total amount of Medicaid payments for prescription drugs for 1998 differs in each section depending on whether the OIG is using the total amount of Medicaid payments before rebates, or net rebates. The $14 billion on page i represents prescription payments with rebates. The $12 billion on page 1 represents the prescription payments' net rebates.

Page 2 – Michael F. Mangano

The OIG concludes that because most states base their reimbursement for drugs on
AWPs, inflated AWPs have "caused Medicaid to overpay for these products." (See
pages ii (Conclusion) and 9 (first paragraph.))  Since the regulations and relevant state
plans authorize payment for drugs based on AWPs, regardless of whether those prices
are inflated, we have concerns with the statement that states and Medicaid have
"overpaid" for drugs.  We therefore recommend that the sentences on pages ii
(penultimate paragraph, second sentence) and 9 (first paragraph, second sentence) be
deleted.

EXHIBIT AS

<u>D R A F T</u>

**State of Alabama**

**Medicaid Pharmacy Reimbursement Methodology**

| | | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | *"Lesser of"* Reimbursement Methodology | | | Alabama Estimated Acquisition Cost (AEAC)[1] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
| | | Selected Price "Lesser of" | | | | | | | | | | |
| Effective Time Period | Usual and Customary | FUL/FAC[1] | EAC[2] | SMAC[3]/AMAC[7] | Brand/Generic | Schedule II Drugs | SMAC Methodology | | Retail | Institution | Compound | Other |
| 10/1/1991[12] - 5/31/1992 | Y | Y | Y | N | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | | Y | $5.40[10] | | | [11] |
| 6/1/1992 - 5/18/1997 | Y | Y | Y | N | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | | Y | $5.40[10] | $3.99 | $5.40 | [11] |
| 5/19/1997 - 4/30/2000 | Y | Y | Y | Y[7] | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99 | $5.40 | [11] |
| 5/1/2000 - 1/9/2003 | Y | Y | Y | Y[7] | DOJ Price[8]; WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40 | [11] |
| 1/10/2003 - 1/29/2004 | Y | Y | Y | Y[7] | DOJ Price[8]; WAC + 9.2%[6] or AWP-10.2%; Direct Price[6] | | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40 | [11] |
| 1/30/2004 - Present | Y | Y | Y | Y[7] | DOJ Price[8]; WAC + 9.2%[6] or AWP-10.2% | | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99 | $5.40[9] | [11] |

 Data taken from Medicaid State Plan Amendments

Data provided by Alabama Medicaid, 10/14/08, 10/23/08, 10/24/08

Data taken from Mary A. Finch depositions 5/23/07, 5/24/07, 08/08/07, 08/09/07

[1] Reimbursement is based on the lesser of the Selected Price and the Usual & Customary; and Selected Price is based on the lesser of the FUL/FAC (Federal Upper Limit also referred to as FAC), the EAC, and the SMAC/AMAC.

[2] Per Finch deposition, 5/23/07, page 61, Alabama has always contracted with First DataBank for pricing information.

[3] State MAC referred to as the Alabama Upper Limit (AFAC)

[4] Beginning in 1990, pricing logic applied WAC or AWP according to **which was *more current.*** If both were equally current, then WAC + 9.2% was used (Finch, 5/23/08, p.240-246).

[5] Direct price begin date is unknown, but was discontinued sometime in 2003 (Finch, 5/23/08, p.331-333).

[6] Beginning in 2003, reimbursement was based **on the lower of** WAC + 9.2% and AWP - 10% (Finch, 5/23/08, p.244-245).

[7] An AMAC is an extension of the State MAC program in which a drug ceiling was applied to a group of drugs that don't qualify for the FUL or State MAC program.  Its use has been limited to H2 antagonists (drugs like Zantac and Tagamet that are used for GERD) (Finch, 5/23/07, p.355-357).

[8] DOJ pricing was adopted sometime in 2000 and remains in effect through the present (Finch 05/24/07, p. 673). DOJ prices for hemophilia drugs were discontinued on 1/10/03.

[9] Beginning in Feb., 2008, compounded drugs are billed on one claim for up to 25 ingredients and are eligible for an additional $0.25/minute reimbursement through a Prior Authorization process as outlined in the Provider Manual Section 27.2.4. Prior to that time, compounded drug claims were billed per each ingredient and were still eligible for the compounded time PA.

[10] Between 8/3/87 and 5/14/04, there was an additional management fee paid for Clozaril/clozapine.  The amount of the fee varied from $3.00-$49.00 throughout those years.

[11] Pharmacy tax imposed by state law of $0.10 per claim for every prescription over $3.00, used to fund the dispensing fee (Finch 05/24/07, p. 436-437, 476).

[12] Dispensing prior to 10/1/91 was $3.75. EAC formula appears to have been the same.

10/27/08

DRAFT

**State of Alaska**

**Medicaid Pharmacy Reimbursement Methodology**

### Legend/Prescription Drugs

Data taken from Medicaid State Plan Amendments

Data provided by David Campana, Manager Pharmacy Program, 5/16/08, 6/2/08, 10/8/08, 10/27/08

| Effective Time Period | Customary[11] / Usual and Amount Billed | FUL | EAC | DOJ Pricing | SMAC | FUL Drugs | Non-FUL/Brand | Dispensing Fee | Additional Compounding Rate | Physician Override (Brand Medically Necessary, DAW) | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/1/1989 - 4/30/2000 | Y | Y | Y | | N | Lower of: FUL or U&C | AWP - 5% | $3.45 - $11.46 [1] | $10.00 per 15 min.[7]; IV $5.75 per 15 min.[2] | Y | 3, 4, 5, 6, 7, 12 |
| 5/1/2000 - 9/30/2000 | Y | Y | Y | Y[9] | N | Lower of: FUL or U&C | AWP-5%; 100% AWP[9] | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $5.75 per 15 min. | Y | 3, 4, 5, 6, 7, 12 |
| 10/1/2000 - 12/31/2003 | Y | Y | Y | Y[9] | N | Lower of: FUL or U&C | AWP-5%; 100% AWP[9] | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $5.75 per 15 min. | Y | 3, 4, 5, 6, 7, 8, 12 |
| 1/1/2004 - 9/22/2004 | Y | Y | Y | Y[9] | N | Lower of: FUL or U&C | AWP-5%; 100% AWP[9] | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $5.75 per 15 min. | Y | 3, 4, 5, 6, 7, 8, 10, 12 |
| 9/23/2004 - Present | Y | Y | Y | | N | Lower of: FUL or U&C | AWP - 5% | $3.45 - $11.46 [1] | $10.00 per 15 min.[7]; IV $5.75 per 15 min.[2] | Y | 3, 4, 5, 6, 7, 10, 12 |

1 From 1989 through the present, the Alaska Department of Health and Social Services "determines the dispensing fee after analyzing statewide financial and demographic information about the total cost of dispensing prescriptions. The dispensing fee is based on the result of surveys of Alaska pharmacies' cost of dispensing prescriptions. For each Pharmacy, the dispensing fee will be determined using the following formula: $23,192 is added to the result of multiplying the annual number of prescriptions by 5.070. To this number is added the result of multiplying the total store volume expressed in square feet by 2.103. The resulting number is then divided by the total annual number of prescriptions. To the result of this division is added $0.73. However, the division will not pay a dispensing fee less than $3.45 or more than the 90th percentile of all fees determined under the formula. New pharmacies which do not have the information available to establish a fee are assigned the statewide average fee until a year of data is available.

2 The payment for compounding prescriptions will be the sum of the costs of each of the ingredients as established above, plus the dispensing fee, plus an additional compounding rate of $5.75 for each 15 minutes required to compound the prescription.

3 Reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to the recipient. Handling charges are included in the dispensing fee and are not directly reimbursed. If a pharmacy does not provide dispensing fee data as requested by the division, the division will either pay Pharmacy the minimum dispensing fee ($3.45) or sanction the pharmacy.

4 The average wholesale price published by First DataBank, as updated monthly, is used in the calculation of pharmacy reimbursement; except for payments for providers outside of Alaska, which will be made at the Medicaid rate of their state. For Canadian providers, payments will be the lesser of the normal charge to the typical walk-in, cash paying customer or the lowest total payment made for the same drug to a provider in Alaska.

5 A special state-established fee will be allowed for unit-dose dispensing of drugs to recipients in long-term care facilities. $11.46 dispensing fee is paid once monthly.

6 A special state-established dispensing fee and a special state established compounding fee will be allowed for preparing drugs in a sterile environment; IV compounding fee of $10.00 per 15 min., compounding time from 2/1989 through present.

7 Payment is restricted to drugs supplied by manufacturers who have a signed national agreement or an approved existing agreement under the Medicaid Drug Rebate program of Sec. 1902(a)(54) and Sec. 1927 of the Act, and the only drugs supplied by such manufacturers that are not reimbursed are those excluded under Attached Sheet under Attachment 3.1A.

8 Reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to a recipient in a rural area. Cross-town postage or delivery charges are not covered. Handling charges are included in the dispensing fee and are not directly reimbursed.

9 From 9/13/2001 through 9/22/2004, drugs whose pricing is established by the average sale price were reimbursed at 100% of the average wholesale price as provided by the U.S. Department of Justice.

10 Per State Plan # 04-007, effective 11/04, Alaska will begin negotiating supplemental rebates in addition to, and separate from, Federal rebates. The CMS authorized the State of Alaska to enter into the Michigan multi-state pooling agreement. The Amendment to the Supplemental Drug Rebate Agreement was submitted to CMS on April 13, 2004 and has been authorized by CMS.

11 The Usual and Customary field is defined by the NCPDP 5.1 standard data element dictionary as the "Amount charged cash customers for the prescription exclusive of sales tax or other amounts claimed".

12 Alaska has a most favored nation clause, which was adopted 8/7/96 and changed to present form 2/1/1997.

DRAFT

11/06/08

**State of:** ARKANSAS

## Medicaid Pharmacy Reimbursement Methodology

| | | | | | Prescription/Legend Drugs | | | Dispensing Fee[2] | | |
| Effective Time Period | | "Lower of" Reimbursement Methodology[9] OR | | | | Estimated Acquisition Costs[3] | | Physician Override (DAW/Brand) Medically Necessary[y] | | | Other |
| | | SUL | FUL[1] | U&C | EAC | Brand | Generic | | State Upper Limit/FUL | Usual and Customary or EAC | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/1990 | 6/30/1999 | Y | Y | Y | | AWP -10.5% | AWP -10.5% | Y | $4.16 + (.093) EAC | $4.16 + (.093) EAC | 4, 10 |
| 7/1/1991 | 6/30/1999 | Y | Y | Y | Y | AWP -10.5% | AWP -10.5% | Y | $4.51 + (.103) EAC | $4.51 + (.103) CFA/SUL | 4, 10 |
| 07/01/1999 | 4/27/2000 | Y[5] | Y | Y | Y | AWP -10.5% | AWP -10.5% | Y | $5.51 | $5.51 | 10 |
| 4/28/2000 | 5/7/2000 | Y[5] | Y[*] | Y | Y | AWP -10.5% / AWP -17.3% Chains[6] | AWP -10.5% independent / AWP -17.3% Chains[6] | Y | $5.51 | $5.51 | 10 |
| 5/8/2000 | 2/28/2002 | Y[5] | Y[*] | Y | Y | AWP -10.5% | AWP -10.5% | Y | $5.51 | $5.51 | 10 |
| 3/1/2002 | Present | Y[*] | Y | Y | Y | AWP -14% | AWP -20% | Y | $5.51 | $5.51 | 8, 10 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data received from Suzette Bridges: 5/7/08, 5/9/08, 5/19/08, 10/23/08, 10/24/08, 11/3/08, 11/5/08

1 Per TN #99-03, Effective 07/01/99, The Federal upper limit standard that has been adopted for certain multiple source drugs identified in the State Medicaid Manual, Part 6, is based on an aggregate payment equal to an amount that includes the ingredient cost of the individual drugs calculated according to the formula described as follows: The Federal upper limit is an amount that is equal to 150% of the published price for the least costly therapeutic equivalent (using all available national compendia). The aggregate, rather than each individual drug identified by HCFA will be less than or equal to the HCFA defined multiple source cost listed in 42 CFR 447.332.

2 Total charge may not exceed provider's charge to the self-paying public. Per TN #99-03, effective 07/01/1999, reimbursement for ingredient cost of these drugs is limited to the State generic upper limit.

3 State has always used First DataBank for pricing.

4 Dispensing Fee capped at $20 from 07/01/91 to 6/30/1999.

5 Per TN 99-03, Effective 07/01/1999, Arkansas Medicaid identifies certain generically available drugs and places an upper limit of reimbursement on these drugs. These are generic drugs not currently listed on the HCFA Upper Limit List. Acquisition costs on these generically available brands are obtained from multiple sources. The highest acquisition cost plus a percentage is used to set the State Upper Limit. Reimbursement for the ingredient cost of these drugs is limited to the State generic upper limit.

6 Per TN 99-23, the ingredient cost for a chain-owned pharmacy (supplier owns eleven or more retail pharmacies nationally) is set at AWP minus 17.3%. This was only in system for a few days before being discontinued due to a lawsuit.

7 Per TN 01-07 Effective 08/01/2001, the State may deviate from the lesser of payment in the event that the State determines under a HCFA approved separate/supplemental drug rebate agreement, that in the aggregate the expenditures for these drugs agreed to in the separate/supplemental rebate agreement would be reduced.

8 Per TN 02-07 effective 03/01/2002, an additional differential dispensing fee of $2.00 shall be given to pharmacy providers when a generic from state or federal upper limit is dispensed.

9 Initially state developed upper limits for drugs that did not have FULs. Prior to 3/2002, the State always paid the lower of U&C, EAC, and SUL/FUL. Beginning 3/2002, State always paid the lower of U&C or SUL/FUL if there is one, or the lower of U&C or EAC.

10 The ingredient cost per NDC has been the same for all NDC's regardless if they are billed in a compound or as separate ingredients. With the HIPAA conversion, a compound field was developed that allowed multiple ingredients of one compound to be billed as one claim. One DF was paid per claim. Prior to the HIPAA conversion, if a pharmacy billed for a compound, the state really could not differentiate that claim as a compound. Each payable ingredient could be billed as a separate Rx and a DF applied to each RX.

DRAFT

State of:   California

## Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) for Generic or Brand | | | | Physician Override[6] (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | EAC | Usual and Customary Methodology | FUL[1] | SMAC[2] | Direct Price | AWP | SMAC Description | Selling Price | | Brand or Generic | NF or ICF | |
| 10/16/1989 - 11/30/2002 | Y | Y | Y | Y[A] | Y | AWP -5% | 5,8 | 9,9 | Y | $4.05 | $4.05 | 7 |
| 12/1/2002 - 8/31/2004 | Y | Y | Y | Y | N | AWP -10% | 5,10 | 11 | Y | $4.05 | $4.05 | 7,9 |
| 9/1/2004 - Present | Y | Y | Y | Y | N | AWP -17% | 5,14 | 13 | Y | $7.25 | $8.00 | 12 |

▮ Data taken from Medicaid State Plan Amendments

▮ Data and supporting documents provided by Kevin Gorospe, Chief Pharmacy Policy Branch, 9/8/08 and 9/10/08.

[1] Federal upper limit in California is also referred to as the "Federal Allowable Cost" (FAC).

[2] State MAC in California referred to as "Maximum Allowable Ingredient Cost" (MAIC) effective 7/31/1990.

[3] California Code of Regulations identified 11 pharmaceutical manufacturers whose products were reimbursed at Direct Price: Abbott, Ayerst, Lederle, Merck, Parke Davis, Pfizer, Roerig, Ross, Squibb, Upjohn, and Wyeth. **Direct Price was discontinued effective 11/30/2002.**

[4] AWP and Direct Prices obtained from First DataBank.

[5] MAIC is based "on a reference drug which is generically equivalent to the innovator brand, and which is manufactured by a company with production capability to meet the statewide needs of the Medi-Cal program for that drug".

[6] Physician override: DAW (dispense as written) to override FUL/MAIC pricing is allowed pursuant to a Treatment Authorization Request.

[7] Balanced Budget Act of 1994 mandated reimbursement reductions: $0.50 reduction per claim with dates of service on or after 1/1/1995, $0.25 reduction per claim with dates of service on or after 1/1/2000; $0.10 reduction per claim with dates of service on or after 7/1/2002;$0.50 reduction per claim for dates of service on or after 10/1/2002 (for nursing facilities, the reduction remained at $0.10), and $0.10 reduction per claim for dates of service on or after 7/1/2004 through 8/31/2004.

[8] MAIC redefined effective 9/30/2002; the MAIC shall be based on the mean of the wholesale selling prices (WSPs) of drugs generically equivalent to the innovator brand available from wholesale distributors. WSP means the price, including discounts and rebates, paid by a pharmacy to a wholesaler. **WSP pricing was never implemented, so MAICs from the original definition (FN #8) remain in place.**

[9] TN 05-012 authorizes pharmacy providers to be reimbursed a $4.05 restocking fee for SNF residents; language subsequently changed effective 9/1/04 (TN 04-010) to "...Pharmacy providers will be reimbursed a restocking fee equal to the professional fee for legend drugs dispensed in a SNF..."; language removed in TN 05-027, effective 10/1/05. **Restocking fee was never implemented.**

[10] WSP redefined effective 8/16/2004: WSP "means the weighted (by unit volume) mean price, including discounts, and rebates, paid by a pharmacy to wholesale drug distributors." **WSP pricing not implemented to date, so MAICs from the original definition (FN #8) remain in place.**

[11] Effective 8/16/2004, Selling Price (SP) means the price used in the establishment of the estimated acquisition cost. The department shall base the Selling Price on the average sales price reported by the manufacturers. **Selling Price was never implemented.**

[12] Reimbursement reductions described in Footnote 7 discontinued on 9/1/04 per the California Welfare and Institutions Code.

[13] Selling Price redefined effective 8/24/2007; Selling Price shall be based on the average manufacturer's price (AMP) plus a percent markup to represent the average purchase price paid by retailers. **Selling Price not implemented to date.**

[14] MAIC redefined effective 8/24/2007; MAIC pricing shall be based on the average manufacturer's price (AMP) of drugs generically equivalent to innovator drugs plus a percent markup to represent the average price paid by retailers. **AMP-based MAICs not implemented to date, so MAICs from the original definition (FN #8) remain in place.**

12/02/08

DRAFT

**Medicaid Pharmacy Reimbursement Methodology**

**State of:** Colorado

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[9] — Pay the lower of each formula listed | | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Usual and Customary | FUL | EAC | SMAC | Brand | Direct Price | Generic | Rural | | | Pharmacies | Institutions | |
| 7/1/1990 – 12/31/1996 | Y | | | N[8] | AWP-10%[1] | MDC+18%[2] | AWP-10%[1] | | 3 | | $4.08 | $1.89 | |
| 1/1/1997 – 6/30/2001 | Y | | | N[8] | AWP-10%[1] | DP+18%[1] | AWP-10%[1] | | 3 | | $4.08 | $1.89 | |
| 7/1/2001 – 3/31/2002 | Y | Y | Y | N[8] | AWP-11%[1] | DP+18% | AWP-11% | | 4 | | $4.00 | $1.89 | 5 |
| 4/1/2002 – 6/30/2002 | Y | Y | Y | N[8] | AWP-12% | DP+18% | AWP-12% | AWP-12% | 4 | | $4.00 | $1.89 | 5 |
| 7/1/2002 – 9/30/2002 | Y | Y | Y | N[8] | AWP-14%[5] | DP+18% | AWP-45%[6] | AWP-12% | 4 | | $4.00 | $1.89 | 5 |
| 10/1/2002 – Present | Y | Y | Y | N[8] | AWP-13.5%[6] | DP+18% | AWP-35%[6] | AWP-12% | 4 | Y[7] | $4.00 | $1.89 | 5, 10 |

<span style="color:blue">■</span> Data taken from Medicaid State Plan Amendments

<span style="color:red">■</span> Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

<span style="color:purple">■</span> Data provided by Catherine Traugott, Pharmacy Manager, 5/27/08 and Kimberly Eggert, Clinical Supervisor, 11/25/08, 11/26/08, 12/2/08

[1] EAC is the lower of the modified AWP or the modified direct cost. The modified AWP is AWP -10%, except for certain high volume single source drugs or multi-source drugs with bioequivalence problems. The pricing for these high volume EAC drugs shall be lower than AWP-10% and will be based on package sizes greater than 100 or prints. EAC for these drugs shall be the actual cost of the ingredient, if less than AWP-10% or direct cost plus a handling fee.

[2] The modified direct cost (MDC) is the direct cost plus a handling fee.

[3] State MACs are determined based upon recommendations of the Colorado Drug Formulary Advisory Committee.

[4] State MAC, pharmacy acquisition cost of generic drugs available in the state market place plus 18%.

[5] If the AWP cannot be determined by the Department, then the distributors' or manufacturers' prices will be used to estimate AWP to be modified and used in the drug-pricing file and the price of the drug.

[6] Any pharmacy that is the only Medicaid serving pharmacy within a 25 mile radius may invoice for the difference in price between AWP-14% and AWP-45% for generic drugs. The invoice shall be submitted to the Department within 30 days of sale and shall contain all the information set forth in Section 8.840 as well as the difference between prices as set forth above and documentation that the pharmacy is the only pharmacy available within a 25 mile radius. The pharmacy shall be reimbursed for the difference between pricing methodologies.

[7] TN 03-018, effective 7/29/03, is the first documentation to describe these requirements in the State Plan.

[8] While the Department has had the authority to implement a State Maximum Allowable Cost Program, such a program does not exist at this time. The Department did place Clozapine on the SMAC 9/1/2002 but was unable to continue the program.

[9] The Department used Medi-Span and Red Book until 8/1/1996 when it switched to First DataBank.

[10] Effective 5/14/07 with the implementation of an updated computer system, unit dose medications are reimbursed using the same methodology as multiple dose medications.

**DRAFT**

**State of:** Colorado

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology: Usual and Customary | FUL | EAC | SMAC | Estimated Acquisition Cost (EAC)[9] Pay the lower of each formula listed: Brand | Direct Price | Generic | Rural | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee: Pharmacies | Institutions | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1990 - 12/31/1996 | Y | Y | Y | N[8] | AWP-10%[1] | MDC+18%[2] | AWP-10%[1] | | [3] | | $4.08 | $1.89 | |
| 1/1/1997 - 6/30/2001 | Y | Y | Y | N[8] | AWP-10%[1] | DP+18% | AWP-10%[1] | | [3] | | $4.08 | $1.89 | |
| 7/1/2001 - 3/31/2002 | Y | Y | Y | N[8] | AWP-11% | DP+18% | AWP-11% | | [4] | | $4.00 | $1.89 | [5] |
| 4/1/2002 - 6/30/2002 | Y | Y | Y | N[8] | AWP-12% | DP+18% | AWP-12% | AWP-12% | [4] | | $4.00 | $1.89 | [5] |
| 7/1/2002 - 9/30/2002 | Y | Y | Y | N[8] | AWP-14%[6] | DP+18% | AWP-45%[6] | AWP-12% | [4] | | $4.00 | $1.89 | [5] |
| 10/1/2002 - Present | Y | Y | Y | N[8] | AWP-13.5%[6] | DP+18% | AWP-35%[6] | AWP-12% | [4] | Y[7] | $4.00 | $1.89 | [5, 10] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Catherine Traugott, Pharmacy Manager, 5/21/08 and Kimberly Eggert, Clinical Supervisor, 11/25/08, 11/26/08, 12/2/08

[1] EAC is the lower of the modified AWP or the modified direct cost. The modified AWP is AWP -10%, except for certain high volume single source drugs or multi-source drugs with bioequivalence problems. The pricing for these high volume EAC drugs shall be lower than AWP-10% and will be based on package sizes greater than 100 or pints. EAC for medical institutions, clinic pharmacies and government owned or operated pharmacies shall be the actual cost of the ingredient, if less than the AWP-10% or direct cost plus a handling fee.

[2] The modified direct cost (MDC) is the direct cost plus a handling fee.

[3] State MACs are determined based upon recommendations of the Colorado Drug Formulary Advisory Committee.

[4] State MAC, pharmacy acquisition cost of generic drugs available in the state market place plus 18%.

[5] If the AWP cannot be determined by the Department, then the distributors' or manufacturers' prices will be used to estimate AWP to be modified and used in the drug-pricing file and the price of the drug.

[6] Any pharmacy that is the only Medicaid serving pharmacy within a 25 mile radius may invoice for the difference in price between AWP-14% and AWP-12% for name-brand drugs and AWP-45% and AWP-12% for generic drugs. The invoice shall be submitted to the Department within 30 days of sale and shall contain all the information set forth in Section 8.840 as well as the difference between prices as set forth above and documentation that the pharmacy is the only pharmacy available within a 25 mile radius. The pharmacy shall be reimbursed for the difference between pricing methodologies.

[7] TN 03-018, effective 7/29/03, is the first documentation to describe these requirements in the State Plan.

[8] While the Department has had the authority to implement a State Maximum Allowable Cost Program, such a program does not exist at this time. The Department did place Clozapine on the SMAC 9/1/2002 but was unable to continue the program.

[9] The Department used Medi-Span and Red Book until 8/1/1996 when it switched to First DataBank.

[10] Effective 5/14/07 with the implementation of an updated computer system, unit dose medications are reimbursed using the same methodology as multiple dose medications.

11/28/08

**State of: CONNECTICUT**

DRAFT

## Medicaid Pharmacy Reimbursement Methodology

### Prescription/Legend Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology — Usual and Customary | FUL/FAC | EAC | SMAC | DOJ Pricing | Estimated Acquisition Cost (EAC)[1] — Brand/Generic | DOJ Prices[6] | Factor VIII (Factorate, Antihemophilic Factor, AHF[3]) | SMAC Methodology | Physician Override (DAW Brand) — Medically Necessary | Brand/Generic | Dispensing Fee[27] — Brand/Generic | Other Incentive Payment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1991 - 9/30/1996 | Y | Y | Y | N | | AWP - 8% | | | | Y | | $4.10 | $0.50 | |
| 1/1/1999 - 12/30/1999 | Y | Y | Y | N | | AWP - 12% | | | | Y | | $4.10 | $0.50 | |
| 12/31/1999 - 6/30/2000 | Y | Y | Y | N | Y[8] | AWP - 12% | | | | Y | | $4.10 | $0.50 | |
| 7/1/2000 - 8/31/2002 | Y | Y | Y | N | Y[8] | AWP - 12% | | | | Y | | $4.10 | $0.50 | |
| 9/1/2002 - 2/4/2003 | Y | Y | Y | N | Y[8] | AWP - 12% | | AAC + 8% | | Y | | $3.85 | $0.50 | |
| 2/5/2003 - 3/2/2003 | Y | Y | Y | Y | Y[8] | AWP - 12% | | AAC + 8% | AWP - 40%[4] | Y | | $3.85 | | |
| 3/3/2003 - 9/30/2003 | Y | Y | Y | Y | Y[8] | AWP - 12% | | AAC + 8% | AWP - 40%[4] | Y | | $3.60 | | |
| 10/1/2003 - 6/30/2004 | Y | Y | Y | Y | Y[8] | AWP - 12% | | AAC + 8% | AWP - 40%[4] | Y | | $3.30 | | |
| 7/1/2004 - 7/31/2005 | Y | Y | Y | Y | Y[8] | AWP - 12% | | AAC + 8% | AWP - 40%[4] | Y | | $3.15 | | |
| 8/1/2005 - Present | Y | Y | Y | Y | Y[8] | AWP - 14% | | AAC + 8% | AWP - 40%[5] | Y | | $3.15 | | 9 |

Data taken from Medicaid State Plan Amendments

Data taken from Connecticut Medicaid Policy Manual (2003) and Provider Bulletins pb02-34, pb03.16, pb03-38, pb03-85, pb04-47, pb00-50, pb06-78

Data provided by Jason Gott, Pharmacy Consultant, 9/8/2008 and 9/16/08

1 The State uses First DataBank for its pricing compendium.

2 The Department will pay an *incentive* professional dispensing fee, for substituting a generically equivalent drug product, in addition to any cents per prescription, in accordance with Section 20-185b of the Connecticut General Statutes, for the drug prescribed by the licensed authorized practitioner for a Medicaid recipient except in the following instances: 1) When a drug product is dispensed for which HCFA has designated a F.A.C. or 2) When a compounded prescription is being dispensed; or 3) When a noninnogend drug is dispensed; or 4) When the substitution is required by Federal law or regulation. The generic incentive program was implemented prior to 1991 (probably in 1987) and was repealed in 10/2002.

3 Per State Plan 00-006, AHF pharmaceuticals shall be the the Actual Acquisition Cost (AAC) plus eight percent.

4 Effective 02/05/2003 per State Plan TN #03-0028, the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing Fee: at least three suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and oral dosage form (including tablets).

5 Per State Plan 05-006 (effective 08/01/05), the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing fee: at least two suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice (FUL) list, and all dosage forms (including tablets), capsules, eye

6 DOJ pricing was implemented beginning on 5/1/2000 and continues through today.

7 For compound drugs, a dispensing fee is applied to *each* detail (ingredient) listed on the claim.

8 DOJ pricing became effective with dates of service 5/1/2000 for about 400 NDCs and continues to be used today.

9 Effective with dates of service 10/1/06 and after, CT began reimbursing for drugs dispensed in unit dose packaging for clients residing in nursing facilities, chronic disease hospitals, and intermediate care facilities for the

mentally retarded. Prior to that, the state did not reimburse for any drug dispensed in unit dose if it were available in non-unit dose packaging.

**DRAFT**

**State of:**  **DELAWARE**

## Medicaid Pharmacy Reimbursement Methodology

### Prescription/Legend Drugs

| Effective Time Period | | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[a] | | SMAC Methodology | Physician Override (DAW, Medically Necessary) | Dispensing Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Usual and Customary | FUL | EAC | DMAC | DOJ Pricing | Traditional Pharmacy Brand/Generic | Non-Traditional Pharmacy Brand/Generic | | (DAW, Brand Medically Necessary) | Brand/Generic |
| 10/31/1987 | – | 4/30/1997 | Y | Y | Y | N | AAC[1] | AAC[1] | Y | $3.65 |
| 5/1/1997 | – | 12/31/2002 | Y | Y | Y | Y | Y[6] | AWP - 12.9%[6] | AWP - 12.9% | 2 | Y | $3.65 |
| 1/1/2003 | – | Present | Y | Y | Y | Y | Y[6] | AWP-14%[3] | AWP-16%[3] | 5 | Y | $3.65 |

Data taken from Medicaid State Plan Amendments

Information received from Linda Murphy, Chief of Program Integrity Unit, 5/19/08, 5/21/08, and 12/5/08

[1] Pricing methodology was based on the lower of U&C, AAC, & FUL. AAC was capped at AWP–5.61% unless providers could demonstrate that their costs exceeded the cap. Based on this, it was very rare that a provider would have exceeded the estimated maximum. Per TN #SP-294, effective 1/1/91, Medicaid reimbursement is limited to only those drugs supplied from manufacturers that have a signed national agreement or an approved existing national agreement under Section 1927(a) of the Social Security Act.

[2] Per TN #SP-371, the DMAC payment limits will be calculated, for drugs selected by the DMAP, by First DataBank (FDB) under contract with Delaware Medicaid using the following protocol:
* All DMACs will be based on the direct prices
* FDB will use the lowest of either Geneva Generic or Rugby prices. These are national generic labelers/manufacturers that sell directly to pharmacies.
* Prices for solid dosing forms will be based on a package size of 100. If that size is not available, the next largest size will be used.
* Prices for liquid products will be based on 120 ml for over-the-counter (OTC) medications and 473-480 ml for legend products.
* All unit dose packaging calculations will be eliminated.
* If neither identified labeler markets the product, the median of all other HCFA rebate participating sources will be used to establish a price. Drugs are selected based on experience with charges from pharmacies which indicates that the product cost is less than or equal to AWP-20%. Additional medications will be added to the DMAC program after general provider notification.

[3] Per TN #SP-397, effective 01/01/2003: Non-Traditional Pharmacy includes long term care and specialty pharmacies, and Traditional Pharmacy includes retail independent and retail chain pharmacies.

[4] State used First DataBank through 6/2002 and then changed to The Redbook beginning 7/2002.

[5] Per TN #SP-397, effective 01/01/2003: Delaware Maximum Allowable Cost (DMAC) – a maximum price set for reimbursement: (1) for generics available from three (3) or more approved sources, or (2) when a single source product has Average Selling Prices provided by the manufacturer that indicates the AWP is exaggerated, or (3) if a single provider agrees to a special price. Any willing provider can dispense the product.

[6] Delaware is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

D R A F T

09/12/08

DRAFT

State of:

# DISTRICT OF COLUMBIA

## Medicaid Pharmacy Reimbursement Methodology

"Lower of" Reimbursement Methodology[5,6,9,10] covers Usual and Customary, FUL, EAC, SMAC. Estimated Acquisition Cost (EAC) covers Brand/Generic and Physician Override (DAW,Brand Medically Necessary). Dispensing Fee covers Standard, Non-IV, IV, Compound, Container Related. Nursing Home Pharmacy Providers[8] spans Non-IV and IV.

| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | Brand/Generic | Physician Override (DAW,Brand Medically Necessary) | Standard | Non - IV | IV | Compound[1] | Container Related Cassettes, TPN, etc. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1991 - x/x/1996[1] | Y | Y | Y | N | AWP - 10% | ? | ? | | | | $5.50 |
| 7/31/1997 - 7/31/1997[1] | Y | Y | Y | N | AWP - 10% | Y | $3.00 [2] | | | | $4.50 |
| 8/1/1997 - 3/31/2003 | Y | Y | Y | N | AWP[4] - 10% | Y | $3.75 | | | | |
| 4/1/2003 - 12/31/2005 | Y | Y | Y | N | AWP - 10% | Y | $4.50 | | | | |
| 1/1/2006 - Present | Y | Y[7] | Y | N[6] | AWP - 10% | Y | $4.50 | $4.50 | $7.25 | | $17.25 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Charlene Fairfax, Pharmacy Consultant, DOH, 9/8/08 and 9/12/08

[1] Per 1996 NPC Publication. Approximately 75,000 Medicaid recipients are enrolled in managed care; most receive pharmacy benefits through MCO's. Pricing history prior to 8/1/1997 can not be confirmed by current State staff.

[2] Taken from superceding State Plan Amendment, which references a change from $3.00 to $3.75 effective 08/01/1997. Effective date for the $3.00 DF unknown.

[3] Per TN 97-08, effective 08/01/1997. The allowable cost, established pursuant to Section 922 or 923 of the Standards for Determining D.C. Medicaid Reimbursement Costs for Prescribed Multiple Source Drugs and Other Drugs and Methodology for Determining Prescription Reimbursement, as appropriate, plus a dispensing fee of $3.75 per prescription.

[4] Per TN 97-08, effective 08/01/1997. The average wholesale price shall be the price, at the time of service, set forth in the most recent listing supplied to the Department by First Data Bank National Drug Data File Services.

[5] Implementation of a State MAC program is currently pending while the District awaits approval of a State Plan Amendment submitted June 2008.

[6] Per TN 05-05, effective 01/01/2006. The Medicaid Agency restricts payment to only those drugs supplied from manufacturers that have signed a national agreement, as specified in Section 1927(a) or have an approved existing agreement.

[7] Per TN 05-05, effective 01/01/2006. The upper limit established by CMS, which is determined by multiplying the cost of the lowest cost drug by one hundred fifty percent (150%) or the estimated acquisition cost, as determined by the Medical Assistance Administration based on information from drug manufacturers and local wholesale price data.

[8] Per TN 05-05, effective 01/01/2006. Pharmacy claims for nursing home pharmacy providers shall be reimbursed at the lower of the following:  a)  The allowable cost, established pursuant to section 5b, 5c, or 5d, as appropriate, plus a dispensing fee of four dollars and fifty cents ($4.50) per non-IV (intravenous) prescription; or seven dollars and twenty five cents ($7.25) per IV prescription; or seventeen dollars and twenty-five cents ($17.25) for cassette, TPN (total parenteral nutrition) or container-related prescriptions; or the pharmacy's usual and customary charge for non-Medicaid residents.

[9] Per TN 05-05, effective 01/01/2006. The Department shall supplement the CMS listing by adding drugs and their prices which, in the judgment of CMS, meet the following requirements:  (a)  The formulation of the drug approved by the U.S. Food and Drug Administration (FDA) has been evaluated as therapeutically equivalent in the most current edition of its publication,  Approved Drug Products with Therapeutic Equivalence Evaluations,  including supplements or in successor publications); and (b) At least two (2) suppliers list the drug (which has been classified by the FDA as category "A" in its publication, Approved Drug Products with Therapeutic Equivalence Evaluations,  including supplements or in successor publications) based on the listing of drugs which are locally available.

[10] Fee-for-service pharmacy reimbursement has always been separate from managed care capitation.

12/05/08

**State of:  Florida**

## Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | | | | | Dispensing Fee | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Usual and Customary | FUL/GULP[7] | EAC[5] | DOJ Pricing[1] | SMAC | Pay the lower of each formula listed — Brand/Generic | CII DEA Controlled Substances | SMAC Description | AWP[8] | Physician Override Medically Necessary (DAW, Brand Necessary) | Brand/Generic | Nursing Home[5] | In-House Unit Dose Packaging |
| 3/11/1986 - | Y | Y | Y | N | N | WAC+7% | | | AWP[8] | Y | $4.23 | | Add 1 1/2 cents |
| 10/1/1993 - 6/30/1999 | Y | Y | Y | N | N | WAC+7% | | | AWP, WAC+7%[8] | Y | 4.23[2] | | Add 1 1/2 cents |
| 7/1/1999 - 6/30/2000 | Y | Y | Y | Y[3] | | AWP-11.5% or Direct+7% or WAC+7% | | [3] | WAC+7%[8] | Y | 4.23[2] | | Add 1 1/2 cents |
| 7/1/2000 - 4/29/2002 | Y | Y | Y | Y | Y[3] | AWP-13.25%[4] | | [3] | | Y | $4.23 | $4.73 | Add 1 1/2 cents |
| 4/30/2002 - 6/30/2004 | Y | Y | Y | Y | Y[3] | AWP-13.25% or WAC+7% | | [3] | | Y | $4.23 | | Add 1 1/2 cents[9] |
| 7/1/2004 - 6/30/2008 | Y | Y | Y | Y | Y[3] | AWP-15.4% or WAC + 5.75% | | [3] | | Y | $4.23 | | Add 1 1/2 cents[9] |
| 7/1/2008 - Present | Y | Y | Y | Y | Y[3] | AWP-16.4% or WAC + 4.75% | | [3] | | Y | $4.23 | | Add 1 1/2 cents[9] |

Legend:
- (Blue) Data taken from Medicaid State Plan Amendments
- (Red) Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council
- (Purple) Data taken from Jerry Wells 5/24/05 amended affidavit 12/15/04 - 12/16/04 deposition
- (Green) Data provided by AHCA, 10/17/08, 10/27/08, 12/5/08

[1] Florida implemented the DOJ list of AWPs in May 2000 in response to the DOJ notice. The state initially used the DOJ AWP - 11.5%, but after several pharmacies complained that this was below their cost, the state used the DOJ AWPs as State Maximum Allowable Cost in its pricing logic. This was within weeks of the initial implementation, most likely by July of 2000.

[2] Per the November 1997 and July 1999 Provider Handbooks, there was a $1 of $2 incentive fee for 60 or 90 day supplies. It was deleted in the 2000 Handbook.

[3] Per Wells Deposition Volume 1 7/1/1994. Per Wells Deposition, State MACs are determined on an ad hoc basis and not according to a specific formula (pages 32-39) Prior to contracting the SMAC calculation function in October 2004, the program researched actual provider's invoices for appropriate NDCs and set SMACs within a reasonable range based upon provider's acquisition costs. A more detailed and comprehensive methodology is used by the SMAC contractor for a broader range of products, however individual review of invoices is still required in some situations prior to setting SMAC prices to ensure adequate reimbursement for providers.

[4] AWP-13.25% was legislatively added effective 7/1/2000 to the WAC+7% to pay the lower of the two, but an erroneous computer programming change inadvertently bypassed the WAC+7% reimbursement methodology from the reimbursement system. The pricing logic error was not caught until April 2002.

[5] Dispensing fees for nursing home patient prescriptions was $4.73 for State Fiscal Year 2000-2001. Then returned to $4.23.

[6] Per TN 93-56, federal upper limit referred to as the GULP - Generic upper limit of payment as established by the HCFA or the state agency for multiple source drugs.

[7] Per Wells deposition, State has always used First DataBank (12/16/2004, p.36). (State Plan #83-56 reported that pricing provided by Blue Book.)

[8] The February 1996 and November 1997 Provider Handbooks state that Class II drugs that frequently require drop shipment or purchase from a secondary supplier are priced at the AWP. When AWP pricing was added in 1999, Class II drugs were exempted and still reimbursed at WAC+7% because the drugs were not initially discounted by the wholesaler. Once wholesaler discounts were implemented, the drugs were no longer exempted.

[9] Unit Dose Return to Stock was implemented on 7/1/2004 and remains effective.

12/15/08

**Medicaid Pharmacy Reimbursement Methodology**

State of: **GEORGIA**

| Effective Time Period | "Lower of" Reimbursement Methodology [1,2,4,5,6] Usual and Customary[7] | FUL | GEAC | GMAC[11] | Estimated Acquisition Cost (GEAC)[8] Brand | Generic | Schedule II Controlled Drugs[13] | Physician Brand Medically Necessary (DAW, Override) | Dispensing Fee Profit Pharmacies Brand | Generic | Not for Profit Pharmacies Brand | Generic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1990 – 6/30/1993 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.41 | $4.41 | 4.11 | 4.11 |
| 7/1/1993 – 12/31/1995 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | [6] | [6] | [6] | [6] |
| 1/1/1996 – 6/30/1998 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.41[10] | $4.41[10] | $4.11[10] | $4.11[10] |
| 7/1/1998 – 3/30/2001 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.63 | $4.63 | $4.33 | $4.33 |
| 4/1/2001 – 6/30/2004 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.63 | $5.13[12] | $4.33 | $4.63[12] |
| 7/1/2004 – 6/30/2005 | Y | Y | Y | Y | AWP-11% | AWP-11% | | Y[3] | $4.63 | $5.13[12] | $4.33 | $4.63[12] |
| 7/1/2005 – Present | Y | Y | Y | Y | AWP-11% | AWP-11% | | Y[3] | $4.63 | $4.63 | $4.33 | $4.33 |

Data taken from Medicaid State Plan Amendments

Data provided by Jerry Dubberly 5/5/08, 5/12/08, 5/15/08 and Etta Hawkins on 10/16/08.

1. In the event the Department requests bids from drug manufacturers for rebates to reduce drug costs and no acceptable bids are received, the Department may select a single drug supplier for the drug or establish one price for the drug.
2. Effective 07/01/1991 Drug Rebate Agreement was implemented. Unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification. A supplemental rebate program was implemented on 4/1/04.
3. State does not allow pharmacists at the retail pharmacy to certify a branded drug is necessary when generics are available, with the exception of Dilantin and Tegretol. That requires a PA with info from the MD to the PBM. At least two A-rated generics must be available in the marketplace before the Department considers requiring the use of the generic.
4. The Department defines usual and customary as the lower of the lowest price reimbursed to the pharmacy by other third party payers (including HMOs), or the lowest price routinely offered to any segment of the general public. Donations or discounts provided to charitable organizations or fees charged to or paid by federal or state funded program are not considered usual and customary charges.
5. Effective 07/01/2001 the co-payment structure was established to administer the Preferred Drug List Program.
6. Per TN #03-007 eff. 11/1/1998, pharmacists may enter an appropriate override at point of sale to exceed the monthly prescription limit for the drugs deemed medically necessary by prescriber.
7. Effective 06/07/2001 outpatient drugs from non-participating rebate manufacturers may be excluded from coverage per Section 1927(d)2 of the Act.
8. The State used First DataBank (FDB) 7/1/2000 - 12/31/2006 and a combination of FDB and Medispan from 1/1/07 - present. State also believes FDB used prior to 2000.
9. Dispensing fee for this period was 10% of the GEAC with a maximum of $15.00. GMAC drugs = GMAC + Dispensing Fee of 10% GEAC up to $15.00.
10. Between 11/1/1996 and 3/31/1998, pharmacies servicing nursing home residents received a monthly prescription monitoring fee of $18.00 in lieu of a dispensing fee of $4.41 per prescription.
11. GMAC drugs paid at GMAC plus applicable dispensing fee.
12. Between 4/1/2001 and 3/14/02, a $.50 generic incentive fee was paid for generic or preferred drugs. Between 3/15/02 and 6/30/05, the program was trimmed to apply to generic drugs only. The program was discontinued on 7/1/05.
13. Schedule II controlled substances were reimbursed at the AWP from May 1993 through June 2001.

01/06/2008

**State of:** Hawaii
**Medicaid Pharmacy Reimbursement Methodology**

### Legend/Prescription Drugs

| Effective Time Period | Billed Charges | Usual and Customary | FUL | EAC | SMAC | Estimated Acquisition Cost (EAC) | Physician Override (DAW) | Dispensing Fee[2] | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | **"Lower of" Reimbursement Methodology** | | | |
| 5/9/1990 - 9/14/1997 | Y | Y | Y[3] | Y | N | AWP[1] - 10.5% | Y[2] | $4.67[2] | [9] |
| 9/15/1997 - 4/31/2000 | Y | Y | Y[3] | Y | N[4] | AWP[1] - 10.5% | Y | $4.67[2] | [9] |
| 5/1/2000 - 12/31/2000 | Y | Y | Y[3] | Y[6] | N[4] | AWP[6] - 10.5% | Y | $4.67[2] | [9] |
| 1/1/2001 - 5/31/2002 | Y | Y | Y[3] | Y[7] | N | AWP[7] - 10.5% | Y | $4.67[2] | [9] |
| 6/1/2002 - Present | Y | Y | Y[3] | Y[7] | Y[3,8] | AWP[7] - 10.5% | Y | $4.67[2] | [9] |

■ (blue) Data taken from Medicaid State Plan Amendments

■ (purple) Data provided by Linda Donovan, Pharmacy Consultant, 5/19/08, 5/20/08, 5/28/08, 7/24/08, 8/6/08, 9/29/08.

[1] State Plan documents state that the average wholesale price will be derived from the most commonly used packaged size in the Bluebook.

[2] Per State Plan #96-002, effective 2/1/96, the dispensing fee for any maintenance or chronic medication shall be extended only once per thirty days without medical authorization from the medical assistance program. Other appropriate limits regarding the number of dispensing fees paid per interval of time shall be determined as necessary by the medical assistance program. Physician override policy was also established on 2/1/96.

[3] Prior authorization for payment above the FUL was implemented 2/26/1996. Exceptions to the FULs and SMACs are: anticonvulsants for seizure, birth control pills, and Coumadin. OxyContin was added 4/10/2007.

[4] The SMAC was implemented per State Plan #97-005, effective 9/15/97. Hawaii SMAC is defined as the "average of the estimated acquisition costs of the three least expensive generics available. At least one of the three products shall be provided by a manufacturer who participates in the Federal drug rebate program."

[5] State Plan did not include the DF amount until 9/15/97.

[6] Starting 5/1/2000, Department of Justice AWPs were provided by First DataBank and 10.5% was deducted to determine the EAC.

[7] Per State Plan #01-004, payment for single source or multiple source drugs was amended: the EAC or the average wholesale price (AWP) when the AWP is the average selling price, plus a dispensing fee. The DOJ AWPs began being paid at 100% AWP, which continues through the present.

[8] The SMAC was implemented 6/1/2002. The lower of reimbursement methodology is used except if there is a FUL and a SMAC for the same drug. In this case, the SMAC is not applied and only the FUL is considered. The Hawaii Administrative Rules were amended 12/27/1997. Prior authorization is required for payment above the SMAC. In rare instances, the SMAC was lifted due to generics not being available.

[9] Per the Medicaid Provider Manual, 19.1.8.4 Compounding Fees, since May 1989 - Compounded drug allowances are determined as follows: Solutions and/or suspensions compounded from two liquids are reimbursed based on the cost of two liquid solution or suspension plus the dispensing fee and $1.00 compounding fee. Ointments or creams compounded from two or more ointments or creams are reimbursed based on the cost of each ointment or cream plus the dispensing fee and $1.50 compounding fee. Ointments or creams compounded from substances levigated into ointment or cream base are reimbursed based on the cost of each ointment or cream plus the dispensing fee and $2.50 compounding fee.

State of: **IDAHO**

**DRAFT**

## Medicaid Pharmacy Reimbursement Methodology

### Prescription/Legend Drugs

| | "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC)[11] | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | |
| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | Direct Pricing[12] | DOJ Pricing | Brand/Generic | Brand/Brand Generic | Brand/Generic | Unit Dose[4] |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1991 - 7/31/1991 | Y | Y | Y | Y | N | | AWP[2] | | $4.30 | $5.25 |
| 8/1/1991 - 1/31/1993 | Y | Y | Y | Y | N | | AWP[2] | | $4.60 | $5.65 |
| 2/1/1993 - 6/30/1995 | Y | Y | Y | Y | N | | AWP[2] | | $4.30 | $5.25 |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | Y | N | | AWP[2] | | $4.41 | $5.38 |
| 7/1/1996 - 3/16/1999 | Y | Y | Y | Y | Y[3] | | AWP[2] | Y | $4.54 | $5.54 |
| 3/17/1999 - 10/14/2001 | Y | Y | Y | Y | N[9] | | AWP - 11%[5] | Y | $4.94 | $5.54 |
| 10/15/2001 - Present[7,8] | Y | Y | Y | Y | Y[5,10] | N[9] | AWP - 12%[5] | Y[6] | $4.94 | $5.54 |

Data provided by Mr. Paul Leary, Division of Medicaid, 5/2/08, 5/7/08, 5/14/08, 10/28/08.

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data taken from Medicaid State Plan Amendments

1 Per 1992-1998 NPC Publications: Direct account pricing for the following manufacturers: (1992-1995) NPC Publication - Wyeth-Ayerst, Merck Sharp & Dohme, Parke-Davis, Pfizer, Pharmacia, Roerig, and Upjohn. (1996) NPC Publication - Wyeth-Ayerst, Merck Sharp & Dohme, Pfizer, Roerig, Upjohn, ESI, Robbins, Lederle, and Storz. (1997) NPC Publication - Wyeth-Ayerst, Merck & Co., Pfizer, Roerig, Pharmacia & Upjohn, ESI Robbins, Lederle, Pratt and Storz. (1998) NPC Publication - Wyeth-Ayerst, Merck & Co., Pfizer, Roerig, Pharmacia & Upjohn, ESI, Robbins, Lederle, Pratt, and Storz.

2 EAC = 100% AWP due to a pharmacy moratorium in place through 3/15/1999.

3 Per 1997-1998 NPC Publications: There is only one drug on the State MAC list.

4 Per TN 99-001, effective 03/01/1999: Unit dose fee is $5.54 per prescription, and is defined as a system of providing individually labeled unit dose medication no more than a 24-hour supply in any client's drug tray at any given time. These trays shall be delivered to the facility at least five days per week.

5 Per 2002 NPC Publication: Pharmacy must provide invoice or pharmacy showing that they are charging below cost.

6 Per 2003-2004 NPC Publication: Override requires failure of two generic formulations and submission of a MedWatch form.

7 Per TN 03-002, effective 04/01/2003: Supplement Rebate Agreement: Based on the requirements in Section 1927 of the Act, the state has the following policies for the supplemental drug rebate program for Medicaid recipients: The model rebate agreement between the state and drug manufacturers for drugs provided to Medicaid recipients, submitted to CMS on July 11, 2003 and entitled "Supplemental Rebate Agreement; has been approved by CMS.....The unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification, in accordance with 1927 (b)(3)(D)..

8 Per State Plan Amendment #06-009, effective May 1, 2006, the State of Idaho entered into a multi-state pooling program to negotiate supplemental drug rebates. This program is known as The Optimal PDL Solution (TOPS).

9 Direct pricing discontinued 3/15/1999.

10 Beginning January 2003, SMAC methodology based on pharmacy surveys to obtain cost of purchase, which is then inflated to 150% to establish price. Prior to this time, very little SMAC pricing was done.

11 Pricing compendium used was First DataBank.

12 Idaho is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

01/06/2009

# Medicaid Pharmacy Reimbursement Methodology

**State of:** ILLINOIS

## Legend/Prescription Drugs

| Effective Time Period | "Lower of:" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | | Physician Override (DAW, Brand Medically Necessary) | SMAC Methodology | Professional/Dispensing Fee | | Compound Drugs |
| | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand | Generic | | | Brand | Generic | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/1989 - 6/30/1995 | Y | Y | Y | Y | - | AWP -10% | AWP -10% | N[8] | [5] | $3.58 to $15.00[1] | $3.58 to $15.00[1] | [7] |
| 7/1/1995 - 6/30/1998 | Y | Y | Y | Y | - | AWP -10% | AWP -12% | N[8] | [5] | $3.30 to $14.72[2] | $3.58 to $15.00[2] | [7] |
| 7/1/1998 - 6/30/1999 | Y | Y | Y | Y | - | AWP -10% | AWP -12% | N[8] | [5] | $3.40 to $15.16[3] | $3.69 to $15.45[3] | [7] |
| 7/1/1999 - 12/14/2000 | Y | Y | Y | Y | Y[10] | AWP -10% | AWP -12% | N[8] | [5] | $3.45 to $15.40[4] | $3.75 to $15.70[4] | [7] |
| 12/15/2000 - 6/30/2001 | Y | Y | Y | Y | Y[10] | Lower of: AWP -10% or WAC +8% | Lower of: AWP -12% or WAC +12% | N[8] | [5] | $4.17 | $4.17 | [7] |
| 7/1/2001 - 6/30/2002 | Y | Y | Y | Y | Y[10] | AWP -11% | AWP -20% | N[8] | [5] | $4.00 | $5.10 | [7] |
| 7/1/2002 - Present | Y | Y | Y | Y | - | AWP -12% | AWP -25% | N[8] | [6] | $3.40 | $4.60 | [7] |

<span style="color:red">■</span> Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

<span style="color:blue">■</span> Data taken from Medicaid State Plan Amendments

<span style="color:purple">■</span> Data provided by Lisa Voils on 10/2/08, 10/29/08, 12/2/08, 12/16/08

[1] The formula for calculating the professional/dispensing fee is: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[2] The formula for calculating the professional/dispensing fee is as follows: BRAND: $3.58 minus $0.28 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00 minus $0.28. GENERIC: $3.58 minus $0.28 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[3] The formula for calculating the professional/dispensing fee is as follows: BRAND: $3.69 minus $0.29 for EAC up to $36.90, and 10.3% for EAC above $36.90, up to a maximum dispensing fee of $15.45 minus $0.29. GENERIC: $3.69 minus $0.29 for EAC up to $36.90, and 10.3% for EAC above $36.90, up to a maximum dispensing fee of $15.45.

[4] The formula for calculating the professional/dispensing fee is as follows: BRAND: $3.75 minus $0.30 for EAC up to $37.50, and 10.46% of EAC above $37.50, up to a maximum dispensing fee of $15.70 minus $0.30. GENERIC: $3.75 for EAC up to $37.50, and 10.46% for EAC above $37.50, up to a maximum dispensing fee of $15.70.

[5] Reference NDC up until 7/1/2002.

[6] From 7/1/2002 to 3/1/2005, MACs were set based on EAC and other State Medicaid MAC rates. From 3/1/2005 to present, Myers & Stauffer LC, contractor, sets rates.

[7] State allows one dispensing fee per ingredient (begin date unknown).

[8] State has never used the DAW code on the claim to pay differently; has always required medical justification through the PA process.

[9] State has always used First DataBank.

[10] Illinois used DOJ prices sent by First DataBank from 5/1/2000 through 5/31/2002.

**State of:**  **INDIANA**

## Medicaid Pharmacy Reimbursement Methodology

### Legend/Prescription Drugs

| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)³ | | | | |
| Effective Time Period | Usual and Customary¹ | FUL | EAC³ | SMAC | DOJ Pricing | Brand | Generic | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Brand/Generic | Compounded Prescriptions |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/13/1989  -  5/29/2002 | Y | Y | Y | N | 6 | AWP - 10% | AWP - 10% | | Y | $4.00 | |
| 5/30/2002 ²  -  9/30/2005 | Y | Y | Y | Y | 6 | AWP - 13.5% | AWP - 20% | 4 | Y | $4.90 | 5 |
| 10/1/2005  -  Present | Y | Y | Y | Y | 6 | AWP - 16% | AWP - 20% | 4 | Y | $4.90 | 5 |

<span style="color:blue">■</span> Data taken from Medicaid State Plan Amendments

<span style="color:purple">■</span> Data provided by OMPP on 10/2/08, 10/9/08, 10/15/08, 10/16/08, 10/20/08

1 Usual and customary represents the provider's submitted charge.

2 Changes to EAC, DF, and implementation of SMAC apply to claims with *dates of service* beginning on 5/30/02.

3 For purposes of calculating the EAC, the State initially used Redbook, then switched to Medi-Span, and then to First DataBank beginning sometime prior to 2000.

4 According to the SMAC Manual, drug acquisition costs were obtained through an acquisition cost survey from a sample of pharmacies.   An acquisition cost survey was performed three times, each of which resulted in new State MAC rates, or rate rebasing, effective on June 19, 2002, October 6, 2003, and February 14, 2005. Beginning in June 2005, the State negotiated agreements with a small group of Indiana pharmacies to obtain drug acquisition cost data on a monthly basis in electronic format in order to determine updates and additions to State MAC rates.

5 Per the Pricing Manual, compounded prescriptions are paid at the detail level. Each ingredient of the compounded prescription is priced individually, following the same pricing methodology as if it were a single ingredient claim. The amounts are added together and compared to the overall billed amount. A dispensing fee of up to $4.90 is added to the total ingredient cost of each legend compounded prescription to arrive at the calculated Medicaid-allowable amount.

6 Indiana is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001). The state was unable to verify implementation of this pricing policy.

# Medicaid Pharmacy Reimbursement Methodology

**State of:  Iowa**

### Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | FUL[1] | EAC | DOJ Pricing | SMAC | Brand/Generic[6] | SMAC Description | | MAC and Schedule II drugs | Non-MAC drugs | |
| 7/1/1990 - 1/31/1999 | Y | Y | N | N | Lesser of AWP-10% or submitted acquisition cost | | Y | $4.02[2] | $5.25[3] | 5, 8, 11 |
| 2/1/1999 - 7/21/1999 | Y | Y | N | N | AWP-10% | | Y | $4.02[2] | $5.25 | 11 |
| 7/2/1999 - 7/21/2000 | Y | Y | N | N | AWP-10% | | Y | $4.10 | $6.38 | 4, 11 |
| 7/1/2000 - 6/30/2002 | Y | Y | Y[10] | N | AWP-10% | | Y | $4.13 | $6.42 | 4, 11 |
| 7/1/2002 - 6/30/2003 | Y | Y | Y[10] | Y[7] | AWP-10% | 7 | Y | $5.17 | $5.17 | 4, 11 |
| 7/1/2003 - 6/30/2005 | Y | Y | Y[10] | Y | AWP-12% | 6 | Y | $4.26 | $4.26 | 4, 11 |
| 7/1/2005 - 6/30/2006 | Y | Y | Y[10] | Y | AWP-12% | 6 | Y | $4.39 | $4.39 | 11 |
| 7/1/2006 - Present | Y | Y | Y[10] | Y | AWP-12% | 6 | Y | $4.52 | $4.52 | 11 |

Data taken from Medicaid State Plan Amendments

Data provided by Susan Parker, DHS, on 5/9/08, 10/28/08, 10/29/08

1  FUL is described as the maximum allowable cost of MAC in all of Iowa's State Plan documents, and the state MAC is later referred to as SMAC.

2  The dispensing fee is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $4.02.

3  The dispensing fee is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $5.25.

4  An additional reimbursement of one cent per dose shall be added to the allowable ingredient cost of a prescription for an oral solid if the drug is dispensed to a patient in a nursing home in unit dose packing prepared by the pharmacist.

5  Schedule II drugs no longer referenced.

6  The State of Iowa used the Average Wholesale Price (AWP) as published by First Data Bank from 7/1/90 - 6/25/05. From 6/25/05 to the present, Iowa has used the AWP as published by MediSpan.

7  The State Plan Amendment for the SMAC program was approved effective 11/1/02 and the SMAC program was implemented on January 13, 2003.

8  Beginning in 1987 and through 2/9/92, an incentive fee of $5.50 was saved per prescription by the use of generics.

9  Beginning 11/1/02, SMAC prices were set as Average Wholesale Acquisition Price for a drug and all equivalents adjusted by a multiplier of at least 1.0, plus a dispensing fee.  The multiplier is set by the Department on a quarterly basis, or as necessary, to ensure adequate product availability. Drug acquisition cost information is obtained through surveys of providers who are required to submit invoices. The Department used a multiplier of 2.1 until 2/28/03, when the multiplier was reduced to 1.4. The initial criteria for inclusion of a drug in the SMAC rate setting was:
- SMAC Multiplier: Once the multiplier is applied to the average acquisition cost (brand cost information is included), any SMAC rate that exceeds the EAC or the FUL rate would not be applied.
- Minimum FDA Drug Rating: Require AB-Rated Products (Beginning 9/13/04, the minimum drug rating was changed to A-Rated Products.)
- Minimum Availability Threshold: Require generic products available from a minimum of 3 separate drug manufacturers.
- Minimum Cost Information: Require at least 30 pricing observations for any brand product and its equivalent drugs.
- Narrow Therapeutic Index drugs may have been excluded from inclusion in SMAC rates based on feedback from the Drug Utilization Review Commission.  However, an FUL rate may/may not have been applied.

10  DOJ pricing was implemented on 12/7/2001 and continues to be used through the present.

11  Effective 10/1/2003 with NCPDP version 5.1 implementation, all compounds had to be billed on an ingredient by ingredient basis. Prior to 5.1, Iowa Medicaid allowed Pharmacies to bill for compounded claims using the NDC of one of the active ingredients, adjusting the price to the full compound price under those claims that exceeded $30 and under. Claims that exceeded $30 had to be billed on the Universal Claim Form on an ingredient by ingredient basis.

10/31/08

**D R A F T**

**State of:** **KANSAS**

**Medicaid Pharmacy Reimbursement Metholodogy**

| Effective Time Period | | | "Lower of" Reimbursement Methodology[7, 8] | | | | | Estimated Acquisition Cost (EAC)[6,13] | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee[1,3,4,5] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Single Source | Multi-Source | IV Fluids | Blood Fraction Products | | Brand/Generic |
| x/x/1991 | - | x/x/1992 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | | | Y[11] | $3.75 - $6.10[2] |
| x/x/1992 | - | x/x/1995 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | | | Y[11] | $3.85 - $6.97[2] |
| 1/1/1995 | - | 4/30/1996 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | AWP - 50% | | Y[11] | $3.85 - $6.97[2] |
| 5/1/1996 | - | x/x/1997 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $2.52 - $6.71[2] |
| x/x/1997 | - | x/x/1998 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $4.82 (avg)[2] |
| x/x/1998 | - | x/x/1999 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $4.95 (avg)[2] |
| x/x/1999 | - | 7/31/2000 | Y | Y | Y | Y[14] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $2.78 - $6.71[2] |
| 8/1/2000 | - | 6/30/2002 | Y | Y | Y | Y[14] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $4.50 [8] |
| 7/1/2002 | - | 9/30/2002 | Y | Y | Y | Y[14] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 10/1/2002 | - | 2/17/2003 | Y | Y | Y | Y[14] | Y | AWP - 11% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 2/18/2003 | - | 10/15/2003 | Y | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 10/16/2003 | - | 5/27/2004 | N[9] | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 5/28/2004 | - | 4/3/2005 | N | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[12] | $3.40 [8] |
| 4/4/2005 | - | Present | Y[10] | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[12] | $3.40 [8] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by the Kansas Health Policy Authority, 6/3/08, 6/4/08, 6/12/08, 6/19/08, 11/10/08, and 12/1/08

1 Per 1991 NPC Publication: The professional fees are based upon each individual pharmacy's historical operating costs as determined by analysis of verifiable data submitted by each pharmacy to the agency. Professional fee determination is limited to the lowest of: (a) the 85th percentile of allocated costs per prescription for all pharmacies filing a cost report plus a reasonable profit, or (b) usual and customary fee charges of each individual pharmacy as determined by survey. "Acquisition cost" means the allowable price determined by the agency for each covered drug in accordance with state and federal regulations.

2 Per 1991 - 2000 NPC Publications: Variable fee per prescription established for each individual participating pharmacy within the ranges of (1991) $3.75 - $6.10; (1992, 1993, 1994, 1995) $3.85 - $6.97; (1996) $2.52 - $6.71; (1997) average $4.82; (1998) average $4.95; (1999, 2000) average $4.94. Per State, DFs set by an accounting firm.

3 Per TN MS-95-02, effective 01/01/1995: The dispensing fee assigned to each pharmacy provider is based upon agency determinations which consider the lesser of the individual pharmacies' average gross margin per prescription as charged to the general public and determined by a usual and customary prescription price survey submitted by the pharmacy, or the fee determined per analysis of the individual pharmacies' cost study report, which is submitted by the pharmacy and reflects the labor and overhead costs required to dispense a single prescription, plus a standard profit factor. The totals from these calculations are reduced by $.26 for the final dispensing fee determination. The individual pharmacies' allowable expenses are subject to percentile limitations as determined by an array of participating providers. Individual fee determinations are also subject to reevaluation and adjustment when report data exceeds regression analysis norms by a factor greater than 1.0 standard error of estimation.

4 Per TN MS-95-02, effective 01/01/1995: Pharmacy providers who do not submit a usual and customary prescription price survey and a cost study report, when required, are reimbursed at the agency-determined allowable product cost for covered drugs with a zero dispensing fee. Physicians who dispense drugs to Medicaid/MediKan recipients are reimbursed at the agency-determined allowable product cost for covered drugs plus a dispensing fee of $1.00 per prescription.

5 Per TN MS-95-02, effective 01/01/1995: Each of the three following types will have a dispensing fee assignment set at the mean fee determined from the pharmacy cost study analysis: (1) Out-of-state pharmacies which are not located in border cities as defined in the Provider Manual, and do not exceed 100 prescription claims annually; (2) New pharmacies, with less than six months' history completed prior to the date specified in the cost report; (3) Acute care institutional pharmacies.

6 Per 1994 and 1995 NPC Publications: Ingredient reimbursement basis is based on **direct prices for Merck.**

7 Per 1996-2006 NPC Publications: An increasing number of Medicaid recipients are enrolled in MCOs; all receive most pharmacy services through managed care. Certain drug classes remain paid at fee for service.

8 Effective 07/06/2001: If a drug product is issued to a patient of a long-term care facility and subsequently is not used, the long-term care facility shall return the drug product to the vendor pharmacy for repackaging and crediting to the secretary if the drug product meets the following conditions: (1) The drug product is a prescription drug product that is not a controlled substance; (2) The product is sealed in individually packaged units or in a multiple-dose, sealed container approved by the FDA from which no doses have been withdrawn; (3) The drug product is returned to the vendor pharmacy at least 90 days before the expiration date; (4) The drug product is determined to be of acceptable integrity by a licensed pharmacist. Each provider of pharmacy services may be reimbursed the reasonable cost of returning and crediting unused drug products as determined by the secretary, described in table in TN MS-02-02: Level 1 - Credited Prescription Amount $5.00 to $8.25 - $1.70 adjusted dispensing fee (DF); Level 2 - Credited Prescription Amount $8.26 to $11.50 - $2.50 adjusted DF; Level 3 - Credited Prescription Amount $11.51 to $14.75 - $3.25 adjusted DF; Level 4 - Credited Prescription Amount $14.76 to $17.99 - $4.00 adjusted DF; Level 5 - Credited Prescription Amount $18.00 and over - $4.50 adjusted DF. Note: these are not really adjusted DFs, but additional fees given to providers for restocking, etc.

9 New MMIS implemented; the Gross Amount Due (GAD) field was taken from the NCPDP 5.1 claim. The Usual & Customary Pricing field was not carried forward in the new MMIS.

10 Utilize Usual and Customary and GAD for billed amounts effective with processing dates 4/4/05.

11 Higher reimbursement for certain brand drugs paying at SMAC or FUL. This began 2/19/1990 with a small list of NDCs.

12 Implemented policy E2003-032 to allow single source reimbursement (currently AWP-13%) for brand multi-source drugs if criteria met.

13 The State used MediSpan under the old EDS contract and First DataBank with BCBS and the current EDS contract.

14 Effective May 1, 2000, Kansas used the DOJ prices on the 400 to 500 NDCs as SMAC (State Maximum Allowable Cost) prices. They were not used as an AWP. Currently these SMACs remain on several of the DOJ NDCs. Some of the DOJ NDCs have been adjusted to meet provider costs because several pharmacies could not access certain DOJ NDCs at the DOJ AWP's.

15 Reimbursement for blood fractions is AWP-30% or the Kansas Department of Health and Environment contract pricing, whichever is less.

11/03/08

State of: **KENTUCKY**

## Medicaid Pharmacy Reimbursement Methodology

DRAFT

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

| Effective Time Period | "Lower of" Reimbursement Methodology [1,2] | | | | | Estimated Acquisition Cost (EAC) [9] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | | Dispensing Fee | | | | Unit Dose Packaging | Compound Drugs |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Usual and Customary [3] | Gross Amount Due | FUL/FMAC | EAC [10] | SMAC | Brand | Generic | | Brand | Generic | Brand | Generic | NF Resident [*] Brand | NF Resident [*] Generic | | |
| 7/1/1987 - 3/31/1991 | Y | Y [14] | Y | N | | AWP - 5% or DP [4] | AWP - 5% or DP [4] | | Y [a] | | $3.25 | $3.25 | | | | |
| 4/1/1991 - 6/30/1991 | Y | Y [14] | Y | N | | AWP - 5% or DP [4] | AWP - 5% or DP [4] | | Y | | $4.75 | $4.75 | | | | |
| 7/1/1991 - 11/15/2001 | Y | Y [14] | Y | N | | AWP - 10% or DP [4] | AWP - 10% or DP [4] | | Y | | $4.75 | $4.75 | $5.75 | $5.75 | Plus $.02-$.04 [5] | |
| 7/1/2001 - 8/14/2002 | Y | Y [14] | Y | N | | AWP - 10% | AWP - 10% | | Y | | $4.51 | $4.51 | | | | |
| 8/15/2001 - 3/31/2002 | Y | Y [14] | Y | N | | AWP - 10% | AWP - 10% | | Y | | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | |
| 4/1/2002 - 3/31/2003 | Y | Y [14] | Y | N | | AWP - 12% | AWP - 12% | | Y | | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | |
| 4/1/2003 - 12/2/2003 | Y | Y [14] | Y | Y | Y | AWP - 12% | AWP - 12% [11] | Y | Y | | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [5] | |
| 12/3/2004 - 2/22/2004 | Y | Y [14] | Y | Y | Y | AWP - 12% | AWP - 12% [12] | Y | Y | | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | [16] |
| 2/23/2005 - Present | Y | Y [15] | Y | Y | Y | AWP - 15% | AWP - 14% [12] | Y | Y | | $4.50 | $4.50 | $5.00 | $5.00 | Plus $.02 [7,8] | [16] |

1 Effective 07/16/2001 the following drugs are excluded from coverage through the Outpatient Pharmacy Program: LTE (less than effective) FDA rated drugs; a drug that has reached the termination date established by the drug manufacturer; a drug for which the drug manufacturer has not entered into or has not complied with a rebate agreement with a rebate agreement in accordance with 42 USC 1396r-8(a) unless there has been a review and determination by the department that it shall be in the best interest of Medicaid recipients for the department to make payment for the non-rebated drug; and, a drug provided to a recipient in an institution in which drugs are considered a part of the reasonable allowable costs under the Kentucky Medicaid Program.

2 Participating physicians who practice in counties where no pharmacies are located are reimbursed for the cost of the drug only, with the cost computed at the MAC, the EAC, or the physicians usual and customary charge to the general public.

3 Effective 1-1-90, a state maximum allowable cost shall be established for covered drugs which are available from three or more sources and which are not considered non-interchangeable by the PBS to include on the non- equivalent drug product formulary issued by the Kentucky Board of Pharmacy. The state maximum allowable cost shall be set at the median of the estimated acquisition costs for the listed drugs.

4 "DP" - 5% or Direct Price if the AWP is not available, based on the most frequent purchased package size and the most frequent method of purchase (AWP or direct), as reported by suppliers and wholesalers.

5 For nursing facility residents meeting Medicaid patient status criteria, dispensing fee is limited to two (2) per drug within a calendar month for other drugs, except Schedules II, III, and IV controlled substances, and non-solid dosage forms which are limited to four (4) dispensing fees per drug per calendar month for legend intravenous drugs.  In addition to the $5.75 dispensing fee two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

6 For nursing facility residents meeting Medicaid patient status, in addition to the $4.51 dispensing fee two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

7 For nursing facility residents meeting Medicaid patient status, in addition to the $4.50 & $5.00 dispensing fee two (2) cents per unit dose drug in unit dose form by the long term care pharmacist.

8 Drugs for Inpatients Receiving Nursing Facility Care:  Nursing Facility **Ventilator dependent** patients shall be as part of the unit and the payments for such drugs shall be in accordance with the MAC/EAC upper limits.

9 Effective 12-28-90 with PA #90-38.

10 The Commonwealth uses First DataBank for pricing.

11 SMAC may be established for any drug (including generic) for which two or more A-rated therapeutically equivalent, multi-source drugs with a significant cost difference exist.  The SMAC will be determined by taking into account drug price status (non-rebatable, rebatable), marketplace status (obsolete, regional availability), equivalency rating (A-rated) and relative comparable pricing.  Other drugs considered are clinical indications of generic substitution, utilization, and availability in the marketplace.  Products are then sorted from low drug groups by GCN, and then a filter is applied to remove all drug products that are obsolete, are not available in the marketplace, or are not therapeutically equivalent, or are not available in the marketplace.  The acquisition cost for the remaining drug products are analyzed to produce the EAC for the drug group due group due consideration (i.e. utilization and availability) to the lower cost products.

12 SMAC may be established for a drug only if a federal upper limit did not exist for the drug and at least one really and nationally available A-rated generic product did exist.

13 Usual and customary defined as the amount that a pharmacist can typically expect to receive from a pharmacy benefits manager (PBM), reflects the real world experience in actual reimbursement rates from PBMs.

14 Gross amount due defined as the acquisition costs of the ingredients plus the expected dispensing fee paid. This does not represent the amount that a pharmacy would expect as reimbursement from the PBM.

15 Gross amount due defined as the total prices of a drug claimed from all sources. This includes the dispensing fee paid, and any applicable unit dose re-packaging incentive payments.

16 Payment for compounded prescription will be based upon the EAC from the current price in effect on the date of service for each ingredient, one of which must be a legend item. A fee of $1.00 will be added to the reasonable dispensing fee for the extra compounding time required by the pharmacist.

12/15/08

**Medicaid Pharmacy Reimbursement Methodology**

State of:   Louisiana

| | Legend/Prescription Drugs | | | | | | | | | | | |
| Effective Time Period | "Lower of" Reimbursement for Brand Drugs | | "Lower of" Reimbursement for Generic Drugs | | | | Estimated Acquisition Cost (EAC)[5] | | LMAC Methodology | Physician Override (DAW/Brand Medically Necessary) | Dispensing Fee | Other |
| | Usual and Customary | EAC | Usual and Customary | FUL | EAC | LMAC | Independent | Chain | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/1/1990 - 9/30/1991 | Y | Y | Y | Y | Y | Y | AWP-10.5%[1] | AWP-10.5%[1] | [2] | Y | $4.68 | |
| 10/1/1991 - 6/30/1992 | Y | Y | Y | Y | Y | Y | AWP-10.5%[1] | AWP-10.5%[1] | [2] | Y | $5.00 | |
| 7/1/1992 - 6/30/1993 | Y | Y | Y | Y | Y | Y | AWP-10.5%[1] | AWP-10.5%[1] | [2] | Y | $5.30 | |
| 7/1/1993 - 6/30/1994 | Y | Y | Y | Y | Y | Y | AWP-10.5%[1] | AWP-10.5%[1] | [2] | Y | $5.54 | |
| 7/1/1994 - 6/30/1999 | Y | Y | Y | Y | Y | Y | AWP-10.5%[1] | AWP-10.5% | [2] | Y | $5.77 | |
| 7/1/1999 - 1/31/2000 | Y | Y | Y | Y | Y | Y | AWP-13.5%[3] | AWP-10.5% | [2] | Y | $5.77 | |
| 2/1/2000 - 8/5/2001 | Y | Y | Y | Y | Y | Y | AWP-16.5%[4] | AWP-15.0% | [2] | Y | $5.77 | |
| 8/6/2001 - Present | Y | Y | Y | Y | Y | Y | AWP-15.0%[4] | AWP-13.5% | [2] | Y | $5.77 | 6 |

Data taken from Medicaid State Plan Amendments

Data taken from National Pharmaceutical Council Benefits Summary

Data taken from Louisiana Provider Updates

Data provided by MJ Terrebonne and Rachel Broussard, DHH, on 10/7/08, 10/8/08, 10/21/08, 10/23/08

[1] Independent and chain pharmacies were not separately distinguished for reimbursement until 7/1/1999.

[2] The Louisiana Maximum Allowable Cost (LMAC) is the median AWP for a specific strength/unit drug determined by listing the wholesale costs for each readily available manufacturer, labeler, etc. and taking the median of those AWP costs.

[3] Chain pharmacies have five or more Medicaid enrolled pharmacies under common ownership. If not a chain, then it is considered an independent pharmacy.

[4] Chain pharmacies have more than 15 Medicaid enrolled pharmacies under common ownership. If not a chain, then it is considered an independent pharmacy.

[5] EAC pricing is provided by First DataBank.

[6] Beginning on 7/1/2005, Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

**DRAFT**

**State of:** **Maine**

**Medicaid Pharmacy Reimbursement Metholodogy**

| Effective Time Period | Reimbursement Methodology: Pay the "Lower of" the amounts listed — Usual and Customary | FUL | EAC | DOJ Pricing | SMAC[1] | Estimated Acquisition Cost (EAC)[17] — Retail Brand | Retail Generic | Institutional[7] | Specialty[14] | Covered brand/ generic drugs **Not** on DSDL[9] | Covered brand/ generic drugs on DSDL[9] | Mail Order Pharmacy Brand | Mail Order Pharmacy Generic | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee — Brand | Generic | Compound Drugs | All Mail Order Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/1989 - 3/14/1996 | Y | Y | Y | | Y | [2] | [2] | | | | | | | Y | $3.35 | $3.35 | [3] | |
| 3/15/1996 - 6/30/2002 | Y | Y | Y | Y[19] | Y | AWP-10% | AWP-10% | AWP-71/2% [7] | | | | | | Y | $3.35 | $3.35 | [3,4,5,6] | |
| 7/1/2002 - 8/7/2003 | Y | Y | Y | Y[19] | Y | AWP-13%[8] | AWP-13%[8] | | | | | | | Y[18] | $3.35 | $3.35 | [3,4,5,6] | |
| 8/8/2003 - 2/2/2004 | Y | Y | Y | Y[19] | Y | | | | | AWP-13%[9] | AWP-17%[9] | | | N | $3.35 | $3.35 | [10] | |
| 2/3/2004 - 5/15/2004 | Y | Y | Y | Y[19] | Y | AWP-15%[11] | AWP-13%[11] | | | | AWP-17%[9] | | | N | $3.35 | $3.35 | [10] | |
| 5/16/2004 - 10/31/2005 | Y | Y | Y | Y[19] | Y | AWP-15%[13] | AWP-13%[13] | | | | AWP-17%[12] | AWP-20% | AWP-60% | N | $3.35 | $3.35 | [10] | $1.00 |
| 11/1/2005 - 6/30/2006 | Y | Y | Y | Y[19] | Y | AWP-15%[13] | AWP-13%[13] | | AWP-17% | | | AWP-20% | AWP-60% | N | $3.35 | $3.35 | [10] | $1.00 |
| 7/1/2006 - Present | Y | Y | Y | Y[19] | Y | AWP-15%[15] | AWP-13%[15,16] | | AWP-17% | | | AWP-20% | AWP-60% | N | $3.35 | $3.35 | [10] | $1.00 |

Data taken from Medicaid State Plan Amendments

Data taken from rule changes/policy manual documents produced in response to Abbott subpoena

Policy clarification provided by Ms. Jude Walsh, 7/22/08, 11/03/08

[1] Maine identifies its State MAC program as the Maine Maximum Allowable Cost (MMAC) program.

[2] EAC is as close as feasible to the price paid for high volume drugs by providers. The Department will periodically publish a list of drugs covered by EAC, MAC, or MMAC and their prices. Reimbursement at the AWP will be made for those drugs not covered by EAC, MAC or MMAC. AWP is the price generally charged by wholesalers and will not exceed 18% above direct cost. All unit dose or modified unit dose drugs except liquids and ointments and Class II controlled drugs shall be returned to the pharmacy for credit.

[3] Professional fees for compound drugs are as follows: $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; and $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[4] Effective 7/23/1998, the previous list of professional fees for compound drugs was expanded to include a tier of lower rates for claims electronically submitted. The new rates added were: $3.10 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.10 for compounding handmade suppositories, powder papers, capsules and talbet triturates and for mixing home TPN (hyperalimentation); and $4.10 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions.

[5] Effective 1/15/2001, the list of professional fees for compound drugs was further expanded to include: $12.50 for filling insulin syringes for a maximum 14-day supply for all claims electronically submitted.

[6] Effective 7/1/2001, $5.35 will be paid for all claims submitted electronically for the most expensive ingredient in the compound… Effective 8/29/01, the compounding fees of $3.35, $5.35, $4.35. and $12.50 as described previously remain in place but apply to paper submissions only.

[7] For pharmacy providers serving nursing facilities, ICFs/MR and boarding homes for which Medicaid is billed, reimbursement is at AWP-7 1/2% for only the actual doses administered, with one dispensing fee per month; and the program results in no drugs subject to return for credit. This was discontinued on 7/1/2002.

[8] As a result of a temporary restraining order imposed on the State of Maine, EAC was defined as AWP-10% for the period from 11 am 7/29/02 until 8/7/02.

[9] Effective 8/8/03 by emergency rule, Direct Supply Drug List (DSDL) was established to replace reimbursement for retail pharmacies. DSDL is defined as a list of covered drugs established by the Department, consisting of certain maintenance drugs including specialty drugs, caloric supplements and substitutes, and medical foods that the Department has determined may be obtained safely and efficiently through mail order. The Department may pay a lower rate for drugs on the DSDL to any mail order pharmacy that agrees by contract with the Department to accept such lower reimbursement rate for such drugs.

[10] Effective on or before 8/8/03, professional fees for compound drugs were reestablished at the following rates: $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions; and $12.50 for filling insulin syringes for a maximum 14-day supply. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[11] Eff. 2/3/04 by emergency rule, rate applies only to covered brand and generic drugs not on the Direct Supply Drug List. These rates replace the more general "Covered Drug Not on DSDL" category that was effective for the previous period.

[12] Reimbursement definitions changed by rule, so this rate now applies to Direct Supply Retail Drug List (DSRDL) providers and Direct Supply Mail Order Drug List (DSMODL) providers for both generic and brand name drugs.

[13] Effective 11/2/04, pharmacies serving members in rural areas became eligible to receive an incentive payment applied as a professional fee and calculated by creating a percentile score based on established criteria; determined and paid quarterly. The definition of eligible pharmacy was expanded on 5/5/05 to include pharmacies that are not located in rural areas but that serve a large number of members who live in rural areas.

[14] New Specialty Pharmacy provider category defined as pharmacies approved by the Department to dispense specialty drugs defined as covered drugs that, due to their high cost, short shelf life, special handling requirements and instruction, or other factors, ... and are prescribed for a limited number of usually chronic conditions that generally affect a relatively small portion of the population.

[15] Effective 3/1/2007, rule language amended to define Rural Dispensing Fee Adjustment as a supplemental dispensing fee that ranges from $0.55 to $0.65 per prescription, which will change quarterly to reflect the prior quarter's number of prescriptions filled.

[16] Effective 3/1/2007, a new pricing option was added to the lower of methodology for reimbursement of generic drugs to retail pharmacies: EAC is the lowest of: U&C; AWP-13%, FUL, MMUL, or the State Upper Limit (250% of Average Manufacturer's Cost for multi-source generic drugs).

[17] The State used First DataBank for pricing until 6/30/02 and then switched to MediSpan on 7/1/02.

[18] DAW 1 logic turned off on 7/1/2003.

[19] DOJ pricing was implemented on 5/1/2000 and remains in effect through today.

**D R A F T**

**State of Maryland**
**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | *"Lower of"* Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[12] | Dispensing Fee | | Exceptions |
| Effective Time Period | Usual and Customary | FGUL | EAC | SMAC | Brand/Generic | Brand | Generic | Physician Override (DAW) |
| 1/1/1991 - 3/31/1991 | Y | Y | Y | Y[1] | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[2,3] | $3.70 | $3.70 | Y |
| 4/1/1991 - 6/30/1992 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | $4.69; $5.92[4] | $4.69; $5.92[4] | Y |
| 7/1/1992 - 6/30/1995 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | $4.94; $6.17[5] | $4.94; $6.17[5] | Y |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | 4.66; $7.70 | 4.66; $7.70 | Y |
| 7/1/1996 - 9/30/1998 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | $4.21; $7.25 (Compounded Home IV Therapy prescriptions) | $4.21; $7.25 (Compounded Home IV Therapy prescriptions) | Y |
| 10/1/1998 - 11/1/2002 | Y | Y | Y | Y | Lowest of WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10% | $4.21; $7.25 (Compounded Home IV Therapy prescriptions); $5.25 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | $4.21; $7.25 (Compounded Home IV Therapy prescriptions); $5.25 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | Y |
| 11/2/2002 - 6/30/2003 | Y | Y | Y | Y | Lowest of WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10% | $3.69; $7.25 (Compounded Home IV Therapy prescriptions); $4.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | $4.69; $7.25 (Compounded Home IV Therapy prescriptions); $5.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | Y |
| 7/1/2003 - 1/31/2004 | Y | Y | Y | Y | Lowest of WAC + 9%, Direct Price + 9%, Distributor's Price + 9%, and AWP - 11% | $3.69; $7.25 (Compounded Home IV Therapy prescriptions); $4.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | $4.69; $7.25 (Compounded Home IV Therapy prescriptions); $5.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | Y |
| 2/1/2004 - 6/30/2004 | Y | Y | Y | Y | Lowest of WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | $3.69; $7.25 (Compounded Home IV Therapy prescriptions); $4.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | $4.69; $7.25 (Compounded Home IV Therapy prescriptions); $5.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | Y |
| 7/1/2004 - 9/30/2004 | Y | Y | Y | Y | Lowest of WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | $2.69 (brand drugs not on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $3.69 (brand drug Nursing Home Resident prescriptions not compounded for Home IV Therapy not on preferred drug list) | $3.69 (generic drugs and drugs on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $4.69 (generic and preferred drug list drugs Nursing Home Resident prescriptions not compounded for Home IV Therapy) | Y |
| 10/1/2004 - Present | Y | Y | Y | Y | Lowest of WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | $2.69 (brand drugs not on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $3.69 (brand drug Nursing Home Resident prescriptions not compounded for Home IV Therapy not on preferred drug list) | $3.69 (generic drugs and drugs on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $4.69 (generic and preferred drug list drugs Nursing Home Resident prescriptions not compounded for Home IV Therapy) | N[11] |

**State of Maryland**
**Medicaid Pharmacy Reimbursement Methodology**

DRAFT

Legend/Prescription Drugs

| | | | | "Lower of" Reimbursement Methodology | Estimated Acquisition Cost (EAC)² | | Dispensing Fee | | Exceptions |
|---|---|---|---|---|---|---|---|---|---|
| Effective Time Period | Usual and Customary | FUGL | EAC | SMAC | Brand/Generic | Brand | | Generic | Physician Override (DAW) |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data received from Jeff Gruel, Director, Pharmacy Program, 5/16/08, 6/4/08, and 6/5/08

[1] The maximum amount the Program will reimburse for selected, approved interchangeable multiple source drugs is called the Interchangeable Drug (IDC). The IDC is determined by ascertaining the availability of the product from the two principal sources within the State and determining the lowest cost from among the approved interchangeable multiple source products available from each source and selecting the higher of these two costs. Maximum allowable costs will be reviewed and updated at least once every year, whenever there is an emergency recall by the Food and Drug Administration, or temporarily, if there is an acute shortage of supply from available sources.

[2] The Estimated Acquisition Cost (EAC) is the amount generally paid by providers for a drug based on the cost and availability of the most commonly stocked package size and the cost of the product from the least expensive usual source of supply. The allowable cost is the EAC established by the Department. The Department determines EACs by consulting local wholesalers' price listings, published drug compendia, and distributors/manufacturers' catalogues. Certain highly utilized drugs have EACs based on direct rather than wholesale prices and/or in larger than minimum package sizes. EACs for products not available through local wholesale sources are based on distributors' direct prices. For medically necessary brand drugs, the EAC of the brand drug is the allowable cost.

[3] EAC is WAC + 10%; or Direct Price + 10% if WAC is not available; or Distributor's Price + 10% if neither WAC nor Direct Price is available: or AWP - 10% if WAC, Direct Price, or Distributor's Price are not available.

[4] Per the 1991 NPC Survey, the dispensing fee is $4.69 if allowed ingredient costs is less than $34.32 or $5.92 if allowed ingredient costs is $34.32 or more.

[5] Per the 1992 NPC Survey, the dispensing fee is $4.94 if allowed ingredient costs is less than $36.34 or $5.17 if allowed ingredient costs is $36.34 or more. Per the 1994 NPC Survey, the dispensing fee is $4.54 if allowed ingredient cost is less than $61.94 or $5.17 if allowed ingredient cost is $61.94 or more.

[6] Effective 10/1/98, state implemented a higher dispensing fee for nursing home prescriptions. For nursing home prescriptions, credits, less the paid dispensing fee, for unused unit dose medication and any other medication which may legally be returned to stock shall be made within 60 days of Program payment and include adjustments for leave of absence prescriptions; and multiple prescriptions dispensed to a recipient residing in a nursing home for the same drug product or compounded prescription shall receive only one prescription fee per calendar month except for: leave of absence prescriptions, compounded prescriptions for home intravenous therapy, and prescriptions for Schedule II - IV controlled dangerous substances.

[7] Effective 12/3/02, the State of Maryland began determining the IDC costs as follows: The IDC is determined as the higher of the lowest estimated acquisition cost of the generically equivalent products in the State or the lowest cost from among the approved interchangeable multiple source products from each wholesaler that the Program has current and accurate pricing information, or utilizing a price from a commercial generic pricing source.

[8] Effective 7/1/03, the State received authorization from CMS to enter into supplemental rebate agreements with drug manufacturers for drugs provided to Medicaid recipients. Supplemental rebates received by the State in excess of those required under the national drug rebate agreement will be shared with the Federal government on the same percentage basis as applied under the national rebate agreement. All drugs covered by the program will comply with provisions of the national drug rebate agreement.

[9] Per the 2003 NPC Survey, Maryland implemented an additional $1.00 incentive fee for dispensing a lower cost multisource product.

[10] Effective 10/1/04, with approval from CMS, the State of Maryland entered into The Optimal PDL Solution (TOP$), a supplemental drug rebate agreement.

[11] On 10/15/04, the program implemented a Brand Medically Necessary edit.

[12] State uses First DataBank and the Red Book for pricing.

State of: __Massachusetts__

# Medicaid Pharmacy Reimbursement Methodology

DRAFT

## Legend/Prescription Drugs

| Effective Time Period | EAC [3,4] | Brand/Single Source — Pay lower of: U&C | FUL/MAC | MMAC/MMUPL | Multi-Source Drugs with MAC or MMAC — Pay lower of: U&C | FUL/MAC | FUL/MMAC Drugs | Non-FUL/MMAC Drugs — Estimated Acquisition Cost (EAC) [3,4] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Brand | Dispensing Fee Generic | Compounds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/1989 – 11/31/1995 | Y[1] | Y[2] | | | Y[1] | | | WAC + 10%, AWP - 10% | Y | $4.06 | $4.06 | 8 |
| **Pay "Lower of" for All Legend Drugs** | | | | | | | | | | | | |
| 2/1/1995 – 7/16/2001 | Y | Y[5] | Y | | Y | Y[5] | WAC+10%; AWP-10% | WAC+10%; AWP-10% | Y | $3.00 | $3.00 | 8 |
| 12/17/2001 – 8/2/2002 | Y | Y | Y | Y | Y | | WAC+10%; AWP-12% | WAC+10%; AWP-12% | Y | $3.00 | $3.00 | 8 |
| 8/3/2002 – 3/30/2003 | Y[6] | Y[6] | Y | Y | Y | | WAC+6%; AWP-15.2% | WAC+6%; AWP-15.2% | Y | $5.00[9] | $3.50[9] | 8 |
| 4/1/2003 – 11/30/2003 | Y[6] | Y[6] | Y | Y | Y | | WAC+5%[7]; AWP-16% | WAC+5%[7]; AWP-16% | Y | $5.00 | $3.50 | 8 |
| 12/1/2003 – Present | Y | Y | Y | Y | Y | | WAC+5%[7]; AWP-16% | WAC+5%[7]; AWP-16% | Y | $3.00 | $3.00 | 8 |

Data taken from Medicaid State Plan Amendments

Data taken from Declarations made in U.S. District Court, Response to the Defendants' Joint Statement of Undisputed Facts and Exhibit 1

Data provided by Richard Heidlage and Peter Mullin, AGO, 9/15/08, 10/9/08, 10/28/08

1 Until 1995, the __Usual and Customary Charge__ was defined as "The price charged for a given volume of drugs (legend or non-legend) on a given day by an eligible pharmacy provider to its retail customers (institutional purchasers as well as over the counter purchasers).

2 Effective 2/1/1988, the State Upper Payment Limit is the Massachusetts Maximum Allowable Charge (MMAC), which is based on 150% of the lowest price listed (in package sizes of 100 units or the commonly listed size) in accordance with the methodology employed by HCFA pursuant to 42 CFR Section 446.332 as amended effective 10/29/1987.

3 Per declarations made in U.S. District Court - District of Massachusetts by David Sitcor, Account Manager with ACS State Healthcare (Massachusetts Medicaid Pharmacy claims processing contractor), and Paul Jeffery, Director of Pharmacy for the Massachusetts Office of Medicaid, Massachusetts Medicaid Pharmacy claims have been processed primarily using pricing data received from First DataBank (FDB). (There was an approximate one year period where the Commonwealth did not receive an update to the pricing from FDB [2000-2001].) Prior to December 17, 2001, when ACS assumed Medicaid Pharmacy claims processing responsibilities, where FDB reported a Wholesale Acquisition Cost (WAC) for a drug, the Estimated Acquisition Cost (EAC) is WAC + 10%. Where FDB did not report a WAC for a drug and only reported Average Wholesale Price (AWP), the EAC was determined as AWP - 10%. For the period on and after December 17, 2001, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 12% (if the WAC was available). After August 3, 2002, the effective date of the regulatory change to WAC + 6% as the definition of EAC, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 6% (if the WAC was available) and AWP - 15.2% (if the WAC was unavailable).

4 Before 1995, for generics for which the lower of FUL, MMAC or U&C... regulations were established was the lower of FUL, MMAC or U&C. Beginning 2/1/1995, regulations were amended to make the EAC apply to all multiple-source drugs. In addition, the definition of MMAC was dropped and replaced by the Massachusetts Upper Limit (MULP), which was essentially the same as the MMAC but was limited to multiple source drugs for which there was no federal upper limit.

5 Effective 2/1/95, the definition of Usual and Customary was changed to be defined as the lowest price charged or accepted as payment for a given volume of drugs (legend or non-legend) by an eligible pharmacy provider to any purchaser or reimburser.

6 Effective 4/1/03, the definition of the MUL was changed to "for multiple source drugs, an amount equal to 130% of the price of the least costly therapeutic equivalent as listed in any published or other public source for the most frequently purchased package size, eliminated the restriction on its applicability to multiple source drugs that do not have a FUL and expanded the applicable pricing sources.

7 A preliminary injunction was entered in Long Term Care Pharmacy Alliance v. Ferguson, and that rate was not implemented until 7/1/04.

8 Dispensing fee + $1.00 for compounding ointments/solutions and $2.00 for compounding tabs/caps/powders/suppliments.

9 Change in dispensing fee effective 11/1/2002.

DRAFT

**State of:** **MICHIGAN**

**Medicaid Pharmacy Reimbursement Methodology**

| | Prescription/Legend Drugs | | | | | | | | | | Dispensing Fee ("Lower of")[1,4] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC)[7] | | | | Non-Long Term Care Pharmacy | | | | Long Term Care Pharmacy | | | | |
| | | | | | | | | | | | | | Compounding | | | | | Compounding | |
| **Effective Time Period** | Usual and Customary | Actual Acquisition Cost (AAC)[5] | FUL | EAC | Provider's Submitted Charge | SMAC | Chain Pharmacies 5 or > Stores; LTC Pharmacies w/ No Retail Business | Independent & Chain Pharmacies of < Five Stores | Pharmacies which serve beneficiaries with a level of care (LOC) 02 | **Physician Override (DAW, Brand Medically Necessary)** | Standard | IV Admixtures | Standard | Caps/Powders/Suppositories | Standard | IV Admixtures | Unit Dose[6] | Standard | Caps/Powders/Suppositories |
| 8/1/1990 - 9/30/1994 | Y | Y | Y | N | Y | Y | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | | Y | $3.72 | | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) | $3.72 | | $0.015 per tablet or capsule | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) |
| 10/1/1994 - 8/31/1995 | Y | Y | Y | N | Y | Y | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | | Y | $3.72 | | $1.00 | $5.00 | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 |
| 9/1/1995 - 7/4/2000 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y | $3.72 | | $1.00 | $5.00 | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 |
| 7/5/2000 - 9/30/2000 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.72 | | $6.00 | $10.00 | $3.72 | | $0.015 per tablet or capsule | $6.00 | $10.00 |
| 10/1/2000 - 12/31/2001 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.77 | | $6.00 | $10.00 | $3.77 | | $0.015 per tablet or capsule | $6.00 | $10.00 |
| 1/1/2002 - 12/31/2003 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.77 | | $6.00 | $10.00 | $3.77 | | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 1/1/2004 - 10/31/2004 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.77 | $7.50 | $6.00 | $10.00 | $3.77 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 11/1/2004 - 3/31/2005 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $2.50 | $7.50 | $6.00 | $10.00 | $2.75 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2005 - 3/31/2008 | Y | | Y | Y | Y | Y | AWP - 15.1%[8] | AWP - 13.5% | AWP - 15.1% | Y[3] | $2.50 | $7.50 | $6.00 | $10.00 | $2.75 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2008 - Present | Y | | Y | Y | Y | Y | | AWP - 13.5% | AWP - 15.1% | Y[3] | $2.50 | $7.50 | $6.00 | $10.00 | $2.75 | $7.50 | | $6.00 | $10.00 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Jacqueline Coleman, Michigan Department of Community Health, on 5/16/08, 6/2/08, 6/6/06, 6/11/08, and 6/19/08

Data taken from Medical Services Administration Pharmacy Manual and/or Provider Bulletins

1 Dispensing fee for 1991 - 1995 is not to exceed standard fees as indicated above.

2 Reimbursement for the products of Merck, Pfizer, and Upjohn is based on direct price.

3 Imposes State MAC upper Limits with drugs on MAIC list. Override requires prior authorization - "Dispense as Written."

4 Per Pharmacy Manual III.13.2 (01-02-02), the program does NOT reimburse for prescriptions filled but not dispensed to the beneficiary. For prescriptions returned to stock/not picked up prescriptions, pharmacies must claim adjust or reverse the claim for any payment received, including the dispensing fee.

5 Per Pharmacy Manual Ch. III, p.6, Rev. 9-1-91, Medicaid has a screening process for actual acquisition costs payments. Screens are set by: AWP-10%. In most cases, the price allowed will be that associated with the lowest purchase size except unit dose. However, the Program has several drugs where a larger purchase size is used to determine the screen. The size of these larger purchase quantities is indicated to the right of the drug name in Appendix F, Michigan Medicaid Drug List. Exceptions: AWP - Schedule II Drugs; Estimated Retail Price - Reagents, syringes, dietary forumulas; Direct Prices - Products made by: Merck, Sharp and Dohme, Pfizer, and Upjohn.

6 Per Pharmacy Manual Ch. III, p.9, Rev. 9-1-91, unit dose payment is not allowed for oral liquids.

7 Michigan Medicaid has had a long term contract with First DataBank.

8 Effective 4/1/2005, reimbursement for pharmacies with no retail business was discontinued, and LTC pharmacies began receiving reimbursement according to the new definition of "pharmacies who serve beneficiaries with a level of care (LOC) 02".

**D R A F T**

**State of: MINNESOTA**

**Medicaid Pharmacy Reimbursement Metholodogy**

| Effective Time Period | Legend/Prescription Drugs: "Lower of" Reimbursement Methodology[10]: Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Estimated Acquisition Cost (EAC)[2]: Brand/Generic | DOJ Pricing | Physician Overide (DAW, Brand Medically Necessary) | Dispensing Fee[3]: Brand/Generic | Intravenous Drugs w/Mixing | Parenteral Nutrition w/Mixing: 1 Liter Qty | >1 Liter Qty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1990 - 7/31/1991 | Y | Y | Y | Y[9] | | AWP - 10% | | Y | $4.10 | | | |
| 8/1/1991 - 12/31/1994 | Y | Y | Y | Y | | AWP - 10% | | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 1/1/1994 - 6/30/1995 | Y | Y | Y | Y | | AWP - 7.6% | | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 7/1/1995 - 6/30/1997 | Y | Y | Y | Y | | AWP - 9% | | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 7/1/1997 - 2/28/2003 | Y | Y | Y | Y | | AWP - 9% | | Y | $3.65 [1] | 8.00 | 30.00 | 44.00 |
| 3/1/2003 - 6/29/2003 | Y | Y | Y | Y | | AWP - 14% | AWP[4] | Y | $3.65 [1] | $8.00 [12] | 30.00 | 44.00 |
| 7/1/2003 - 7/31/2005 | Y[5] | Y | Y | Y | | AWP - 11.5% | AWP[4] | Y[5], [6] | $3.65 [1] | $8.00 [12] | 30.00 | 44.00 |
| 8/1/2005 - Present | Y[5] | Y | Y | Y | | AWP - 12% | N/A | Y[5], [6] | $3.65 [1] | $8.00 [12] | 30.00 | 44.00 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Revisions made at direction of Jarvis Jackson, Staff Pharmacist, 5/5/08, 5/19/08.

[1] Per TN #91-21, effective 08/01/1991, an additional $.30 dispensing fee allowed for legend drug prescriptions dispensed using a pharmacy packaging unit-dose blister card system.

[2] The prescribed drug must be a drug or compounded prescription that is made by a manufacturer that has a rebate with the Health Care Financing Admininstration (HCFA) and included in the Minnesota Department of Human Services formulary. The formulary is established in accordance with Section 1927 of the Social Security Act.

[3] Per TN 91-21, effective 08/01/1991: A prescribed drug must be dispensed in the quantity specified on the prescription unless the pharmacy is using unit dose dispensing or the specified quantity is not available in the pharmacy when the prescription is dispensed. Only one dispensing fee is allowed for dispensing the quantity specified. Except as provided in item (6), the dispensing fee billed by or paid to a particular pharmacy or dispensing physician for a maintenance drug for recipients is limited to on fee per 30-day supply: (6) More than one dispensing fee per calendar month for maintenance drugs for a recipient is allowed if (a) the record kept by the pharmacist or dispensing physician documents that there is a significant chance of overdosage by the recipient if a larger quantity is dispensed, and if the pharmacist or dispensing physician writes a statement of this reason on the prescription; or (b) the drug is clozapine. Per TN 98-32, effective 09/21/1998: An additional dispensing fee per prescriptio shall be paid to pharmicists using an in-pharmacy packaged unit dose system (except OTC) approved by the Board of Pharmacy for the return of drugs when dispensing to recipients in a long-term care facility if 1) the pharmacy is registered with the Depa

[4] Per TN 03-01, effective 03/01/2003, the State agency establishes the acquisition cost to equal (AWP minus 14%),**except when a drug has its wholesale price reduced as a result of the actions of the National Association of Medicaid Fraud Control Units. In that case, the State establishes the actual acquisition cost at the reduced AWP without the percent reduction.**

[5] Per TN 03-29, effective 07/1/2003, payment for over-the-counter drugs is at the provider's usual and customary charge to the general public. If the pharmacy is not accessible to, or frequented by, the general public, or if the over-the-counter drug is not on display for sale to the general public, the usual and customary charge is the actual acquisition costs plus a 50% add on based on the actual acquisition cost.

[6] Per TN 03-29, effective 07/1/2003, generic drugs must be dispensed to recipients **effective 01/02/2004, even if the practitioner has written "Dispensed as Written-Brand Necessary" or "DAW-Brand Necessary" on the prescription, authorization is required to dispense brand name drugs.**

[7] Per TN 03-29, effective 07/1/2003, **effective 10/01/2003, the dispensed quantity of a prescribed drug must not exceed a 34-day supply unless authorized by the Department, except OTC must be dispensed in the manufacturer's unopened package, and Sorbitol may be repackaged and contraceptive drugs may be dispensed in quantities not exceeding a 90-day supply.**

[8] Per TN 05-09, effective 07/1/2005: (1) For antihemophilic factor drugs, the State agency establishes the actual acquisition cost to equal 70% of the average wholesale price (AWP-30%). (2) The rate for specialty pharmacy products is 86%, 85%, or 83% of average wholesale price. The rate used is dependent upon the actual acquisition cost for the product. Specialty pharmacy products are those used by a small number of recipients or recipients with complex and chronic diseases that require expensive and challenging drug regimens. A chart is provided listing the class of specialty pharmacy products receiving the various discounts.

[9] State has had the ability to have SMACs back to 1-1-1990. Logic has been to pay the lower of U&C (submitted), EAC or whatever value populated theSMAC/FUL field. FULs were used almost exlusively until year 2000 when the state increased its use of SMAC. The list now includes all commonly used generics; FULs are now only used if a SMAC doesn't exist.

[10] The State has used FDB pricing for as long as anyone can remember.

[11] SMACs are based on an informal survey of a few retail pharmacies that have agreed to share their costs. The State tries to include an average profit of about $7.00 for each prescription using SMAC. This $7 includes the $3.65 dispensing fee. The SMAC are maintained using information from pharmacies referenced above, the PDL contractor, and MAC list from other states.

[12] Except Cancer Chemotherapy IVS, which is $14.00.

11/28/2008

**State of: Mississippi**                    DRAFT

# Medicaid Pharmacy Reimbursement Methodology

## Legend/Prescription Drugs

| Effective Time Period | Usual and Customary | FUL | MEAC | SMAC | "Lower of" Reimbursement Methodology | | Mississippi Estimated Acquisition Cost (MEAC)[14] | | Override - Schedule II Drugs | Medically Necessary (DAW, Brand) | Dispensing Fee | | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Brand | Generic | Brand | Generic | | | Pharmacy | Home Infusion Drugs | |
| 5/1/1990 - 6/30/1991 | Y | Y | Y[2] | N | AWP - 10% | AWP - 10% | | | | N | $4.91 | 13 | 5, 6, 7 |
| 7/1/1991 - 3/31/2002 | Y | Y | Y[3,4] | N | AWP - 10% | AWP - 10% | | | AWP[12] | Y | $4.91 | 13 | 5, 6, 7 |
| 4/1/2002 - 10/27/2003 | Y | Y | Y[4] | N | AWP - 12% | AWP - 12% | | | AWP[12] | Y | $3.91 | 13 | |
| 6/30/2003 - 10/28/2005 | Y | Y | Y[4] | N | AWP - 12% | AWP - 25% | | | | Y | $3.91 | 13 | 6 |
| 7/1/2005 - Present | Y | Y | Y[4] | N[11] | AWP - 12% or WAC + 9% (brand and single source generic) | AWP - 25% (multiple source generic) | | | | Y | $3.91 (brand and single source generic and institutionalized recipients); $4.91 (multiple source generic) | 13 | 10 |

<span style="color:blue">■</span> Data taken from Medicaid State Plan Amendments

<span style="color:green">■</span> Information obtained from Myers and Stauffer LC

<span style="color:purple">■</span> Data provided by Phyllis Williams, Division of Medicaid, 11/10/08 and 11/25/08

1 Per State Plan #88-3, only drugs that are listed in the Medicaid Drug Formulary and its supplements will be compensable. Exceptions for the use of non-covered drugs may be made in special circumstances when prior authorization is given by Medicaid.

2 Mississippi Estimated Acquisition Cost: Per State Plan #90-02, "MEAC is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

3 Per State Plan #91-07, "MEAC is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

4 Per State Plan #00-02, "MEAC is defined as the Division's best estimate of the actual purchase price generally and currently paid by providers for a drug, identified by NDC number, marketed or sold by a particular manufacturer or labeler."

5 Per State Plan #91-07, "The Division shall make no payment for an innovator multiple-source drug dispensed after July 1, 1991, if, under applicable state law, a less expensive non-innovator multiple-source drug (other than the innovator multiple-source drug) could have been dispensed."

6 Per State Plan #91-07, "The Division shall make no reductions in reimbursement limits on covered outpatient drugs or dispensing fees during the period of time beginning January 1, 1991 and ending December 31, 1994.

7 Per State Plan #91-22, the dispensing fee will be increased by 5% effective August 1, 1991. Subsequent State Plan Amendments and NPC Surveys do not indicate that this was ever implemented.

8 Per State Plan #05-002, the Mississippi Medicaid Preferred Drug List (PDL) was established effective 1/1/05. The PDL is a list of recommended generic and brand name drugs that are selected based on safety, efficacy, and cost effectiveness. Exceptions to the PDL may be approved if the preferred agents would not be effective or would cause adverse effects in the recipient.

9 Per State Plan #05-12, effective 1/1/05, the Mississippi Medicaid will only pay for certain drugs dispensed by a licensed pharmacist. Drugs dispensed by physicians are no longer reimbursed by Mississippi Medicaid.

10 Effective 2/1/06, the State of Mississippi became able to negotiate supplemental rebate agreements with pharmaceutical manufacturers.

11 Myers and Stauffer was awarded a contract in late 2007 to calculate State MAC rates for Mississippi Medicaid. As of the date of this summary, the State MAC program is under development, and an implementation date has not yet been set.

12 Schedule II drugs were paid at straight AWP from 2001 to October 2003.

13 According to the 1996 Pharmacy Provider Manual dated 2/95, a $7 dispensing fee will be paid for each drug (NDC number) used in the preparation of compounded sterile parenteral products. Each ingredient is considered to be a separate prescription. It is not, however, clear if this ever worked systematically. The 1996 Provider Manual also reports an enhanced dispensing fee of maximum of $30 per liter for TPNs, which continues to be the dispensing fee through present.

14 Pricing provided by First DataBank.

# State of Missouri

## Medicaid Pharmacy Reimbursement Methodology

### DRAFT

#### Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[5] Brand/Generic | Pay the lower of formula listed Physician Override Medically Necessary (DAW, Brand) | Professional/Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | | | (In-State) | (Out-of-State) | (In-State) LTC | (Out-of-State) LTC |
| 4/8/1988 - 9/16/1991 | Y | Y | Y | Y | AWP or DP[1] | N[2] | $3.15 | $3.15 | $3.30 | $3.30 |
| 9/17/1991 - 11/30/2000 | Y | Y | Y | Y | AWP-10.43% or DP[3] | N[2] | $4.09 | $4.09 | $4.24 | $4.24 |
| 12/1/2000 - 8/30/2003 | Y | Y | Y | Y | AWP-10.43% or WAC+10% or DP[3] | N[2] | $4.09 | $4.09 | $4.24 | $4.24 |
| 7/1/2003 - 6/30/2007 | Y | Y | Y | Y | AWP-10.43% or WAC+10% or DP[3] | N[2] | $8.04 | $4.09 | $8.19 | $4.24 |
| 7/1/2007 - Present | Y | Y | Y | Y | AWP-10.43% or WAC+10% or DP[3] | N[2] | $9.66 | $4.84 | $9.81[4] | $4.99 |

1 Per the 1990-1992 NPC Surveys, "any drug that is not manufactured by Abbott, Lederle, Merck Sharp & Dohme, Pfizer, Roerig, Squibb, Upjohn and Wyeth, or is not a federal or Missouri MAC drug will be based on the AWP…Any drug manufactured by Abbott, Lederle, Merck Sharp & Dohme, Parke-Davis, Pfizer, Roerig, Squibb, Upjohn and Wyeth, acquisition cost will be based on the manufacturer's direct price."

2 Prior authorization is required; there is no automatic override.

3 Direct price is still part of the methodology but is no longer used.

4 Per 13 CSR 70-20.050 (4), when a pharmacy dispenses drugs in a controlled-dose delivery system, the pharmacy must give the Division of Medical Services credit for all reusable items (any unused portion) not taken by the Medicaid recipient. The Division of Medical Services may provide additional compensation to the pharmacy to recognize administrative costs for processing reusable returned drugs, subject to appropriation. In instances in which charges have been submitted prior to the return of an item, the pharmacy shall file an adjustment to notify the Division of Medical Services of the need to process a credit. The dispensing pharmacy that receives the returned drugs must provide a credit to the Division for the amount reimbursed for drug costs from which the prescription was billed, prorated to the quantity of the drug returned. The credited amount should not include dispensing fees. Per Section 12.2.B of the Pharmacy Provider Manual, the ability of a pharmacy to utilize reusable items (the unused portion) and provide a credit to the Division of Medical Services is contingent on the medication being accepted for reuse per the pharmacist's professional judgment as well as pursuant to federal and state law or regulation.

5 The State uses First DataBank for pricing.

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by MO HealthNet Division, Clinical Services Unit, 5/22/08, 6/2/08, 8/5/08

Data provided by Missouri Code of Federal Regulations and Pharmacy Provider Manual

10.24.08

# DRAFT

**State of:** Montana

## Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | | Override Medically Necessary (DAW, Brand) Pay the lower of each formula listed | Dispensing Fee | | | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | Minimum | Maximum | Unit Dose Systems | |
| 7/1/1991 - 6/30/1997 | Y | Y | Y | N | | AWP-10%, DP[1] | FUL | Y | $2.00[2] | $4.08[5] | Plus $0.75 | 8 |
| 7/1/1997 - 6/30/1998 | Y | Y | Y | N | | AWP-10%, DP[1] | FUL | Y | $2.00 | $4.14 | Plus $0.75 | 8 |
| 7/1/1998 - 6/30/2000 | Y | Y | Y | N | | AWP-10%, DP[1] | FUL | Y | $2.00 | $4.20 | Plus $0.75 | 8 |
| 10/1/2000 - 6/30/2002 | Y | Y | Y | Y[7] | N | AWP-10%, DP[3] | FUL | Y | $2.00[4] | $4.20[4] | Plus $0.75 | 8 |
| 7/1/2002 - 9/30/2007 | Y | Y | Y | N | | AWP-15% | FUL | Y | $2.00[5] | $4.70[5] | Plus $0.75 | 8 |
| 10/1/2007 - Present | Y | Y | Y | N | | AWP-15% | FUL | Y | $2.00[5] | $4.86[5] | Plus $0.75 | 8 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data taken from Daniel Peterson, Chief Acute Services Bureau, 5/19/08, 6/2/08, 6/3/08, 10/23/08

1 The policy for reimbursement of Direct Price (DP) drugs is the current direct price charged by manufacturers to retailers in effect on the service date for the claim.

2 The State for this time period through 9/30/1994 reports that a variable dispensing fee will be established by the state agency, by using the results of a cost survey of pharmacy's operational costs. However, a pharmacy may be assigned a different dispensing fee to cover additional costs for a "unit dose" method of dispensing a prescription. Dispensing fee information may be found in the MMIS provider file and in the Medicaid Prescription Drug Card System (PDCS) provider plan file. NPCs report a specific range, all with an additional $0.75 per Rx allowed for nursing home unit dose systems. Dispensing fee variables applies to all time periods.

3 The Direct Price (DP), the price charged by manufacturers to retailers, will be paid unless the DP is not available to providers in the state. If no DP is available, drugs paid by their AWP will be paid at AWP-10%. If the state agency determines that acquisition cost is lower than either the available DP or AWP-10%, then the state agency may set an allowable acquisition cost based on data provided by the drug pricing file contractor. Exception: for outpatient drugs provided to Medicaid recipients in state institutions, reimbursement will conform to the state contract for pharmacy services; or for institutions not participating in the state contract for pharmacy services, reimbursement will be the actual direct dispensing fee. In either case, reimbursement will not exceed, in the aggregate, the EAC plus the dispensing fee. Direct price was

4 The State Plan for this time period reports that dispensing fee information may be found in the MMIS provider file and in the Medicaid Prescription Drug Card System (PDCS) provider plan file. NPC 2000 reports a dispensing fee range of $2.00 - $4.20 (effective 7/1/95) with an additional $0.75 added to prescriptions unit dosed by the pharmacy. NPC 2001 reports a dispensing fee of $2.00-$4.20 effective 7/1/99 but adds that pharmacies submit documentation showing their costs for a dispensing fee maximum of $4.20. Pharmacies that do not submit documentation receive a dispensing fee of $2.00.

5 Dispensing fees assigned shall range between $2.00 - $4.70. Out-of-state and in-state providers new to the Program will be assigned an interim $3.50 DF until a DF questionnaire can be completed for six months of operation. At that time a new DF will be assigned which will be the lower of the DF calculated or $4.70. Failure to comply with the questionnaire requirement will result in a DF of $2.00. An additional $0.75 for unit dose prescriptions not packaged by the drug manufacturer.

6 The State has always used First DataBank.

7 DOJ pricing in effect from October 5, 2001 until July 1, 2002.

8 Until January 22, 2008 (begin date unknown) the Department reimbursed compound prescription drugs utilizing "local" NDC codes. An average wholesale price (AWP) of $25 was set for each of the local codes. The discount, the provider's dispensing fee and client cost share were applied to the reimbursement algorithm. A provider would submit X number of units depending on what they thought would cover the cost of the compound. Since December 1996, providers are reimbursed for home infusion therapy through a per diem rate which included equipment, supplies & professional services, while drugs are reimbursed through the pharmacy program. Total Parenteral Nutrition (TPN) included the basic parenteral solution along with the per diem. Prior to 12/96, there was no distinct Home Infusion Therapy program and services were reimbursed under various Medicaid service categories.

11/17/08

**State of:** Nebraska

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lowest of" Reimbursement Methodology[9] | | | | | Estimated Acquisition Cost (EAC) | | SMAC Description | Physician Override (MC-6, Brand Medically Necessary) | Dispensing Fee | Compound Drugs |
| | Usual and Customary | Submitted Charge[9] | FUL Plus DF | EAC Plus DF | SMAC Plus DF | Brand/Generic | Schedule II Drugs | | | (FUL, EAC, SMAC) to set upper limit / Added to calculated drug cost | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/29/1987 – 12/31/2001 | Y | Y | Y | Y | Y | Lower of: AWP-8.71% and Direct[2,3] | 12 | 4,5 | Y | $2.84 - $5.05 [2,3] | 10, 11 |
| 1/1/2002 – 10/4/2002 | Y | Y | Y | Y | Y | AWP-10% | | 6 | Y | $3.84 - $5.05 [3] | 10 |
| 10/5/2002 – Present | Y | Y | Y | Y | Y | AWP-11% | | 6 | Y | $3.27 - $5.00 [3] | 10 |

Data taken from Medicaid State Plan Amendments

Data taken from The Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Gary Cheichia, Pharmacy Consultant, 6/4/08, 6/9/08, 6/10/08, 6/11/08, 10/23/08, 10/7/08, 11/13/08, 11/14/08

1 "Direct from manufacturer" - Up until about 2001, pharmacies purchased through a wholesaler or directly from a small number of manufacturers (This was determined from the 1980s survey.) Manufacturers continued to raise their minimum purchase amounts so that eventually virtually no pharmacies bought "direct". Direct price companies included: Abbott, Ayerst, Lederle, Merck Sharpe and Dohme, Pfizer, Roerig, and Ross.

2 NPCs 1991-1994 report that in addition to the assigned dispensing fee for each retail pharmacy, there is a "maintenance drug-month supply" supplemental fee of $1.00 for maintenance drugs used in a chronic manner. Language also in MS #87-18.

3 MS-87-18 references EAC = actual cost, which was determined to be the direct price. In the mid-1980s a dispensing fee survey was completed to set the ranges for dispensing fees. The survey took into account gross margin, location, services and volume. This methodology continues to the practice today.

4 NPCs 1996-1998 report State MAC list contains 840 drugs including those on the FULs.

5 NPC 1999 reports State MAC list contains 840 drugs including those on the FULs, and NPC 2000 reports approximately 450 drugs.

6 NPC 2002 reports approximately 1,000 drugs listed on the State MAC list; NPC 2003 reports approx. 1,400; NPC 2004 reports more than 1,500.

7 From 1991 - 1995, the State used local wholesalers and buying group pricing for State MACs and for FUL reference and Medspan for EAC. From 1995 to present, the State's contracted POS vendor has contracted with First DataBank for pricing. The State also continues to use a buying group for State MACs and FUL reference.

8 Pharmacies are also required to complete the submitted charge for gross amount (but) held on each claim. Note: The only time that the submitted charge was not required was from the April 1995 Point of Sale implementation until September 15, 1997. During that time the state captured only the Usual and Customary and compared it to the calculated upper limit based on EAC, SMAC, or FUL, plus DF.

9 Nebraska pays the lowest of the (a) usual and customary, or (b) submitted charge, or (c) the calculated upper limit of FUL, EAC, or SMAC plus dispensing fee on each claim.

10 From December 1989 until August 1991, a series of 5 dummy 9 digit codes was used to process and pay compounded claims. The 5 codes were in $5 increments and only those claims with cost < $20 were reviewed by state staff. From August 1991 until the POS in 1995, a series of 11 dummy NDC codes were used to process and pay compounded caims. These were also in $5 increments. In 1995 with POS, the dummy NDC codes were used, and only those with cost >$50 were reviewed by First Health staff. Instructions from the State to FHSC were to allow a "reasonable cost" based either on EAC or AWP for EAC. In late 1997 instructions from the State to FHSC were changed to use EAC, not AWP for pricing. On 11/22/99, the State stopped the use of the dummy NDC for drug cost >$50 and required the pharmacy to bill up to 5 NDCs individually through either the POS or on paper claims, allowing a DF for each. On 3/1/01, the State stopped the use of multiple NDCs for drug cost >$30 and required the pharmacy to bill up to 2 NDCs individually through either the POS or on paper claims, allowing a DF of $5 for each. In October 2003 when ACS became the POS vendor, compounds were required to be billed as multi-line claim forms through the POS or on paper. This allowed only one fee per prescription. The "Usual and Customary" upper limit remained in effect throughout but it is applied to the entire claim for two ingredients submitted separately or if paid as a single claim.

11 From April of 1995 until about October of 1996, First Health was directed to price compounded home infusion therapy to allow a second dispensing fee and to pay duplicate ingredients if in two different products.

12 Schedule II drug prices were set in the AWP in the mid-1980s. On 8/1/1989, several CII drugs were added to the SMAC/FUL lists due to legislation that allowed substitution for all bioequivalent Schedule II controlled substances. On January 19, 1993, non-SMAC/FUL Schedule II drug prices were set in the AWP from Medspan. This ended sometime between 1996 and 12/6/2001, when Schedule II drug pricing was set to follow standard EAC pricing.

State of:

## NEVADA

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | Physician Medically Necessary (DAW/Brand) Override | Dispensing Fee[3] | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SUL[2] - Specific Upper Limit | SMAC | Brand/Generic | | Outpatient Pharmacist Brand/Generic | IV Home Health | IV Nursing Facility |
| 1/1/1991[1] - 9/30/1991 | Y | Y | Y | Y | N | AWP - 10% | Y | $3.95 | | |
| 10/1/1991 - 12/31/1994 | Y | Y | Y | Y | N | AWP - 10% | Y | $4.42 | $16.80 (1st); $11.20 (2nd) | $5.60 (2nd) |
| 1/1/1995 - 9/30/1998 | Y | Y | Y | Y | N | AWP - 10% | Y | $4.64 | $16.80 (1st); $11.20 (2nd) | $5.60 (2nd) |
| 10/1/1998 - 7/31/2002 | Y | Y | Y | Y | N | AWP - 10% | Y | $4.76 | $16.80 (1st); $11.20 (2nd) | $5.60 (2nd) |
| 8/1/2002 - 12/16/2003 | Y | Y | Y | Y | N | AWP - 15% | Y | $4.76[6] | $16.80 (1st); $11.20 (2nd) | $5.60 (2nd) |
| 12/17/2003 - 12/14/2004 [5] | Y | Y | Y | Y | Y[4] | AWP - 15% | Y | $4.76 | $16.80 (1st); $11.20 (2nd) | $5.60 (2nd) |
| 12/15/2004 - Present[7] | Y | Y | Y | Y | Y | AWP - 15% | Y | $4.76 | $22.40 (per day) | $16.80 (per day) |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by John Liveratti, Chief of Compliance, 6/3/08 and 6/4/08.

[1] Date established as 1/1/1991 because information was reported in 1990 NPC. State can not confirm any information prior to 1991.

[2] Payment for multiple source drugs shall be the lowest of (a) Specific Upper Limit (SUL), as established by the Health Care Financing Administration (HCFA) for multi-source drugs.

[3] Per TN #9-21, effective 10/1/1991: The State's dispensing fees are defined as (a) those given to outpatient pharmacists at a rate of $4.42 per prescription; (b) those given to Home Health Care providers for home intravenous therapy at $16.80 per dose for the first medication and $5.60 per dose for a second medication given concurrently; (c) those given to pharmacists for intravenous therapy in the nursing facility at $11.20 per dose for the first medication and $5.60 per dose for a second medication given concurrently.

[4] Per TN #03-16, effective 12/17/2003: A generic drug may be considered for MAC pricing if there are 2 or more therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference. The SMAC will be based on drug status (including non-repeatable, obsolete, repeatable, therapeutic equivalency ratings) marketplace availability and cost. The obsolete drug status will be taken into account to ensure that MAC pricing is not influenced by the drugs listed for obsolete drugs. The SMAC will be based on drug prices obtained from a nationally recognized comprehensive price file maintained by a vendor under contract with the Department.

[5] Per TN #04-02, effective 01/01/2004: CMS has authorized the State of Nevada to enter into the Michigan multi-state pooling agreement. The model supplemental agreement entitled "Michigan Multi-State Pooling Supplemental Rebate Agreement; was submitted to CMS on January 16, 2004 and has been authorized by CMS.

[6] State confirmed with policy bulletin.

[7] Per Medicaid Services Manual, State uses First DataBank for pricing.

06/04/2008

10/17/08

# Medicaid Pharmacy Reimbursement Methodology

State of: **NEW HAMPSHIRE**

DRAFT

## Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology[1] | | | | | Estimated Acquisition Cost (EAC)[5] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | Compounded Prescription |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC[5] | SMAC | DOJ Pricing | Brand/Generic | Brand | Brand | Single Source Brand | Branded Generic | General/Generic | |
| 1/1/1990 - 4/30/1994 | Y | Y | Y | N | | AWP - 10% | Y | $3.25 | $3.65 | $3.65 | | 1 |
| 5/1/1994 - 1/31/1996 | Y | Y | Y | N | | AWP - 10% | Y | $3.25 | $3.65 | $4.15 | | 1 |
| 2/1/1996 - 11/2/2001 | Y | Y | Y | N | Y[3] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | | 6 |
| 11/3/2001 - 3/11/2004 | Y | Y | Y | Y[2] | Y[4] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | | 6 |
| 3/12/2004 - Present | Y | Y | Y | Y | Y[4] | AWP - 16% | Y | $1.75 | $1.75 | $1.75 | | 6 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Donna Arcand, Pharmacy Financial Manager, DHHS, on 10/7/08, on 10/14/08.

1. Per NH 90-14, effective 07/01/1990, prescriptions for maintenance medications will be reimbursed only one time per 34 days, per recipient per provider, and any refill prescriptions for these maintenance medications within the 34 days will be reimbursed at the cost of the medication only. For **compound drugs**, the payment is based on actual costs (ingredient cost and time of preparation) plus applicable dispensing fee.

2. SMAC began in November 2001 when NH began processing with a PBM.

3. DOJ pricing began when it was first introduced on 4/30/2001 and continues through today.

4. NH put into effect special rules for Blood Factor products on the DOJ price list with reimbursements for dates of service on or after 2001 to pay at DOJ AWP and the dispensing fee.

5. First DataBank has been used for pricing throughout the time period.

6. Since 2001, compounds submitted via POS for under $50 are paid at Usual and Customary. Claims over $50 must be submitted on the universal claim form and are paid at AWP - 16% plus dispensing fee and are paid like a compound, plus $10.50 per day. Home infusion therapies are paid like a compound, plus $10.50 per day and fee for time of preparation.

12/22/08

# Medicaid Pharmacy Reimbursement Methodology

State of: New Jersey

DRAFT

| Effective Time Period | Type | Prior Year Prescription Volume | Usual and Customary | FUL | EAC³ | Retail | AWP Discount | Threshold² | Physician Override (DAW, Brand Medically Necessary) | Pharmacies² | Base Dispensing Fee for Retail | Ons Dispensing Fee Add-² | Prescriptions Compounded | Long Term Care |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/1987 – 2/20/1995 | Category I | 1 - 14999 | Y | Y | Y | | AWP - 2% | $24.99 | Y | | $3.73 | 6 | 4 | 3 |
| | Category II | 15000 - 19999 | Y | Y | Y | | AWP - 3% | $24.99 | Y | | $3.73 | 6 | 4 | 3 |
| | Category III | 20000 - 29999 | Y | Y | Y | | AWP - 4% | $24.99 | Y | | $3.73 | 6 | 4 | 3 |
| | Category IV | 30000 - 39999 | Y | Y | Y | | AWP - 5% | $24.99 | Y | | $3.73 | 6 | 4 | 3 |
| | Category V | 40000 - 49999 | Y | Y | Y | | AWP - 9% | $24.99 | Y | | $3.73 | 6 | 4 | 3 |
| | Category VI | 50000 + | Y | Y | Y | | AWP - 9% | $24.99 | Y | | $3.73 | 6 | 4 | 3 |
| 2/21/1995 – 1/1/1996 | Category I | 1 - 14999 | Y | Y | Y | | AWP | | Y | | $3.73 | 6 | 4 | 3 |
| | Category II | 15000 - 19999 | Y | Y | Y | | AWP - 2% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category III | 20000 - 29999 | Y | Y | Y | | AWP - 3% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category IV | 30000 - 39999 | Y | Y | Y | | AWP - 4% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category V | 40000 - 49999 | Y | Y | Y | | AWP - 5% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category VI | 50000 + | Y | Y | Y | | AWP - 6% | | Y | | $3.73 | 6 | 4 | 3 |
| 1/2/1996 – 7/14/1996 | Category I | 1 - 14999 | Y | Y | Y | | AWP - 2% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category II | 15000 - 19999 | Y | Y | Y | | AWP - 4% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category III | 20000 - 29999 | Y | Y | Y | | AWP - 5% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category IV | 30000 - 39999 | Y | Y | Y | | AWP - 6% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category V | 40000 - 49999 | Y | Y | Y | | AWP - 7% | | Y | | $3.73 | 6 | 4 | 3 |
| | Category VI | 50000 + | Y | Y | Y | | AWP - 8% | | Y | | $3.73 | 6 | 4 | 3 |
| 7/15/1996 – 7/7/2003 | Legend/OTC | | Y | Y | Y | | AWP - 10% | | Y | | $3.73 | 6 | 4 | 3 |
| 7/8/2003 – 7/7/2008 | Legend/OTC | | Y | Y | Y | | AWP - 12.5% | | Y | | $3.73 | 6 | 4 | 3 |
| 7/8/2008 – Present | Legend/OTC | | Y | Y | Y | | AWP - 15% | | Y | | $3.73 | 7 | 4 | 3 |

Data taken from Medicaid State Plan Amendments

Data provided by DMAHS, DHS, on 9/10/08, 9/19/08, 9/29/08, 10/6/08, 10/8/08, 10/17/08, 12/17/08, 12/19/08, 12/22/08

1 Per the New Jersey Pharmaceutical Services Manual (Rev. 11/87). If the drug cost is greater than $24.99, then EAC = AWP with no discount applied. This threshold was terminated effective 2/21/1995.

2 Per New Jersey Health Services Program Newsletter dated August 1, 1998, the basic dispensing fee of $3.73 was established by state regulations effective 8/1/1988. However, additional increments are applied per prescription based on various criteria.

3 Long Term Care (LTC) pharmacies can be retail or institutional and are paid for ingredient costs according to the same EAC (regression) formula as non-institutional providers. Legend drugs for patients in approved long-term care facilities are, however, reimbursed according to a capitated fee schedule. LTC institutional providers are paid at 75% of the capitation rate, and LTC retail pharmacies are paid at 100% of the capitation rate. There may be a few institutional pharmacies, but the majority of pharmacies serving clients in long term care skilled nursing facilities are retail pharmacies.

4 Compound claims are paid by determining the reimbursement rate for each ingredient which includes subtracting the regression. These elements are then totaled and the dispensing fee is added to arrive at the total reimbursement. The NJ Medicaid program will reimburse a pharmacy provider up to $0.25 for any ingredient in a compound claim whose costs is less than $0.25.

5 State receives its pricing from First DataBank.

6 Additional increments are applied to the base dispensing fee based on various criteria: add $0.11 for 24-hour emergency service availability; add $0.08 for Patient Consultation; and add $0.15 for Impact Allowance. Maximum dispensing fee is $4.07.

7 Effective 7/8/2008, the $0.08 add-on for Patient Consultation was eliminated. Therefore, additional increments applied per prescription per prescription to be based on the following criteria: add $0.11 for 2-hour emergency service availability; and add $0.15 for Impact Allowance. Maximum dispensing fee is $3.99.

**State of:** New Mexico

## Medicaid Pharmacy Reimbursement Methodology

**Legend/Prescription Drugs**

| Effective Time Period | | Usual and Customary | FUL | EAC | SMAC[1] | DOJ Pricing | "Lower of" Reimbursement Methodology<br>Pay the lower of each formula listed | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compound Drugs | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Brand | Generic | | | Brand | Generic | | |
| | | | | | | | | Estimated Acquisition Cost (EAC) | | | | | | |
| 1/1/1991 | - 6/30/1991 | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5% | 2 | Y | $4.00 | $4.00 | | |
| 7/1/1991 | - 6/30/1992 | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5% | 2 | Y | $4.25 | $4.25 | | 6 |
| 7/1/1992 | - 6/30/1997 | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5% | 2 | Y | $4.00 | $4.00 | | |
| 7/1/1997 | - 5/31/2002 | Y | Y | Y | Y | Y[7] | AWP-12.5% | AWP-12.5% | 2 | Y | $4.00 | $4.00 | | |
| 6/1/2002 | - 8/14/2004 | Y | Y | Y | Y | Y[7] | AWP-12.5% | AWP-12.5% | 2 | Y | $3.65 | $3.65 | | |
| 8/15/2004 | - 6/30/2005 | Y | Y | Y | Y | Y[7] | AWP-14%[4] | AWP-14%[4] | 3,5 | Y | $3.65 | $3.65 | | |
| 7/1/2005 | - Present | Y | Y | Y | Y | Y[7] | AWP-14% | AWP-14% | 5,9 | Y | $3.65 | $3.65 | $30 [8] | |

Data taken from Medicaid State Plan Amendments

Data provided by Robert Stevens, NM Medicaid, 5/18/08, 5/18/08, 7/29/08, and 12/12/08

1 SMAC is called State Allowed Cost and was implemented on 8/1/1982.

2 Reimbursement is limited to a lesser-expensive therapeutically equivalent drug per the state Product Selection Act as amended and according to the "FDA Approved Therapeutically Equivalent Drugs" list.

3 State allowed costs are established after (1) assuming availability of FDA A-rated therapeutically equivalent drugs using information available from the FDA and from the American Society of Hospital Pharmacists on drug shortages; and (2) determining the typical package size used. SAC amounts will be calculated at 150% of the lowest cost product (from among Medicare reimbursement prices when available, manufacturer prices, wholesaler prices, and invoice prices); and will be at least 20% above the second lowest cost. This calculated amount may be lowered as follows: (1) To 60% of the average price of all available therapeutically equivalent multi-source drug products, but not below the cost for which an item is determined to be consistently and readily available from local wholesale sources in the state; or (2) When 2 or more therapeutically equivalent multi-source drug products are determined to be consistently and readily available from local wholesale sources within the state, the SAC may be lowered to the price at which the product is consistently and readily available. Per State, issues with shortages are rare.

4 Per TN #04-10, EAC is equal to the lower of AWP-14%. The WAC as submitted to the state, the manufacturer invoice price as obtained through audits. This amount may be lowered as follows: (1) When the AWP-14% is shown or is not to approximate average acquisition cost, in which case EAC shall be the actual amount at which an item can be shown to be consistently and readily available; or (2) When a pharmacy practice is specialized in the extent that its buying practices do not approximate the average actual acquisition costs, such as a pharmacy limited to mail order, limited to supplying items for chronic use, or an institutional or facility pharmacy with significant buying discounts not available to retail pharmacies. In these cases, the percent discount from AWP may range from 14%-20%, based on audited data, to more accurately approximate actual cost.

5 Effective 11/1/04, many of the pharmacy claims began to be processed under the NMRx program, using Presbyterian Health Care as the PBM rather than ACS/PBCS. Presbyterian still sends the claim record showing payment, etc. for it to MMIS System. The current state plan for SMACs was approved effective 8/15/04 but was not implemented until 11/1/04. Prior to that date, and still true for claims that are processed by ACS/PBCS (the PBM), the SMAC is slightly less stringent. (Price basis is 150% of lowest cost product; calculated price must be at least 20% above second lowest cost product; deviations occasionally required; and, if only one supplier available, MAC price is established at least 20% above cost of generic product.)

6 The program has used First DataBank since about 1992. Prior to that the program used the Redbook but updated the prices manually.

7 DOJ pricing used from September 2001 through October 2006 but was seldom paid because the State SMAC pricing was always lower.

8 Beginning February 2006, the state allows up to $30 for a compounding fee if the pharmacy claims a compounding fee.

9 Per NM Pharmacy Service Provider Manual (MAD-MR-05-20) effective 11/06, the State SMAC methodology is based on the following criteria: 1) At least one A-rated generic is readily available; and 2) the State MAC for the brand name drug products and for all A-rated therapeutic equivalents shall be determined by taking the lowest cost available for all of the A-rated therapeutic equivalent drugs regardless of manufacturer, and multiplying the lowest that cost by a factor set by MA to cover the pharmacy's estimated administration and overhead plus a dispensing fee.

12/15/08

DRAFT

# Medicaid Pharmacy Reimbursement Methodology

**State of:** New York

| Effective Time Period | "Lower of" Reimbursement Methodology[1] | | | | | Estimated Acquisition Cost (EAC) | | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compound Drugs | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing SMAC | SMAC | Brand | Generic | Specialized HIV Pharmacies | | | Brand | Generic | | |
| 7/1/1994 – 12/31/1994 | | | | | N | AWP | AWP | | | | $2.60 | | | 11 |
| 1/1/1995 – 7/31/1998 | Y | Y | Y | Y | N | AWP - 10% | AWP - 10% | | | Y | $4.50 | $5.50 | 7 | 11 |
| 8/1/1998 – 6/30/2003 | Y | Y | Y | Y[10] | N | AWP - 10% | AWP - 10% | | | Y | $3.50 | $4.50 | 8 | |
| 7/1/2003 – 9/30/2004 | Y | Y | Y | Y | N | AWP - 12% | AWP - 12% | | | Y | $3.50 | $4.50 | 8 | |
| 10/1/2004 – 7/14/2006 | Y | Y | Y | Y | N | AWP - 13.25% | AWP - 16.5% | 3 | | Y | $3.50 | $4.50 | 8 | |
| 7/15/2006 – 6/30/2007 | Y | Y | Y | Y | Y[2] | AWP - 13.25% | AWP - 20% | 3 | | Y | $3.50 | $4.50 | 8 | |
| 7/1/2007 – 6/30/2008 | Y | Y | Y | Y | Y | AWP - 14% | AWP - 25% | 3 | Proprietary formula | Y | $3.50 | $4.50 | 8 | |
| 7/1/2008 – Present | Y | Y | Y | Y | Y | AWP - 16.25% | AWP - 25% | 9 | Proprietary formula | Y | $3.50 | $4.50 | 8 | |

**Legend:**

- **(Purple)** Data provided by James Donnelly, 9/3/08, 9/5/08, 9/23/08, 9/24/08, 10/3/08, 10/21/08, 10/22/08, 10/28/08
- **(Green)** Data taken from statutory amendments to NY laws included in a letter from George Henderson II, Assistant U.S. Attorney, dated May 3, 2008
- **(Black)** Data taken from NY Medicaid web site
- **(Blue)** Data taken from Medicaid State Plan Amendments

**Footnotes:**

1. If a drug has an upper payment limit (FUL) established by the Federal Government, then the reimbursement rate is equal to the lower of the usual and customary charge or the upper payment limit (FUL). If there is no FUL, use the lower of EAC, or the usual and customary price charged to the general public.

2. Although the SMAC legislation was dated 10/1/2005, SMAC prices were not implemented until 9/5/2006.

3. Effective 10/1/2004, the EAC for specialized HIV pharmacies is defined as AWP less 12% for sole or multi-source brand drugs or multi-source brand drugs written without DAW, and FUL or the lower of AWP-12% or State MAC or U&C for multi-source generic drugs. Note: HIV Specialty pharmacies are paid off-line for the difference between other pharmacy reimbursement and the specialty rate.

5. The State used Medispan for pricing through October 2002 and then switched to First DataBank beginning November 2002.

6. Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public to the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($2.60) and a compounding fee ($0.75).

7. Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public to the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($4.50) and a compounding fee ($0.75).

8. Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public to the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($3.50) and a compounding fee ($0.75). Starting around December 1, 2000 there appeared to be an option to bill compounds using the NDCs of the individual ingredients. If this option is used the claim for the individual ingredients can not be distinguished from a claim for a non-compounded prescription. Each ingredient payable would be reimbursed at the current dispensing rate plus a dispensing fee plus a copay. With this option, there is no compound indicator on these claims, there is no compounding fee with these claims and they look like other non-compound claims.

9. Effective 7/1/2008, the EAC for specialized HIV pharmacies is defined as AWP less 12% for sole or multi-source brand drugs written with DAW, and the lower of AWP-12% or the FUL or State MAC for multi-source generic drugs. HIV Specialty pharmacies are paid off-line for the difference between other pharmacy reimbursement and the specialty rate.

10. DOJ pricing was implemented on May 1, 2000 and is still used where available.

11. NY Medicaid had a contracted mail order pharmacy program from 4/15/1991 through 4/4/1996. The single contracted pharmacy was reimbursed at AWP-13.5% plus a dispensing fee of $2.50. It was not available to New York City beneficiaries and was discontinued due to low utilization. 12/10/08

DRAFT

12/20/08

**State of North Carolina**

**Medicaid Pharmacy Reimbursement Methodology**

Legend/Prescription Drugs

"Lower of" Reimbursement Methodology

| Effective Time Period | Usual and Customary | FUL | EAC[4] | Lowest Charge to Other 3rd Party Payors | SMAC | Estimated Acquisition Cost (EAC)[3] Brand | Estimated Acquisition Cost (EAC)[3] Generic | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee[1] Brand | Dispensing Fee[1] Generic | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/1989 - 12/31/1991 | Y | Y | Y | Y | N | AWP - 10% | AWP - 10% | | Y | $4.85 | $4.85 | |
| 1/1/1992 - 6/30/1992 | Y | Y | Y | Y | N | AWP - 10% | AWP - 10% | Y | Y | $5.60 | $5.60 | |
| 7/1/1992 - 11/30/2001 | Y | Y | Y | N | | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 12/1/2001 - Present | Y | Y | Y | Y | | AWP - 10% | AWP - 10% | [2] | Y | $4.00 | $5.60 | [5] |

Data taken from Medicaid State Plan Amendments

Data provided by Lisa Weeks, Pharmacy Policy Supervisor, 6/2/08, 6/4/08, 10/28/08

[1] Per the North Carolina State Plans, the dispensing fee is paid to all providers for the initial dispensing. Refills within the same month are not paid a dispensing fee.

[2] SMAC methodology - reimbursement is based on 150 percent of the lowest priced generic. In cases where 150 percent results in a price less than the cost of the second-lowest generic product, at least an additional 10 percent margin is added to the cost of the second-lowest drug to establish the MAC price. For established generic drugs with only one supplier, the MAC price is established between the actual acquisition cost and the average wholesale price of the generic drug. A minimum reimbursement of 20 percent above actual acquisition is guaranteed for these drugs. In most cases, MAC pricing is substantially higher than the 20 percent.

[3] State uses First DataBank for pricing.

[4] EAC is referred to as NCEAC or North Carolina Estimated Acquisition Cost.

[5] Compound drugs have been treated like generics regarding dispensing fee ($5.60) since the 2001 reduction in the brand dispensing fee to $4.00. If these drugs come through pharmacy point-of-sale, then they are reimbursed as other drugs.

DRAFT

12/02/08

# Medicaid Pharmacy Reimbursement Methodology

**State of:** North Dakota

## Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[3] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Pill Splitting |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Usual and Customary | FUL | EAC | SMAC | Brand/Generic | | Brand | Generic | Compound Drugs | |
| 7/1/1990 - 6/30/1991 | Y | Y | Y | N | AWP-10% | | $3.56 | $3.56 | | |
| 7/1/1991 - 6/30/1995 | Y | Y | Y | N | AWP-10% | | $4.25 | $4.25 | | |
| 7/1/1995 - 7/31/1997 | Y | Y | Y | N | AWP-10% | | $4.50 | $4.50 | | |
| 8/1/1997 - 3/31/2002 | Y | Y | Y | N | AWP-10% | Y | $4.60 | $4.60 | | |
| 4/1/2002 - 7/5/2003 | Y | Y | Y | N | AWP-10% | Y | $4.60 | $5.60 | $10.00[5] | + $.15/pill[2] |
| 1/9/2003 - 7/31/2003 | Y | Y | Y | Y[1] | AWP-10% | Y | $5.10 | $5.10 | $10.00[5] | + $.15/pill[2] |
| 8/1/2003 - 9/30/2005 | Y | Y | Y | Y | AWP-10% | Y | $4.60 | $5.60 | $10.00[5] | + $.15/pill[2] |
| 10/1/2005 - Present | Y | Y | Y | Y | Lesser of: AWP-10% or WAC+12.5%[4] | Y | $4.60 | $5.60 | $10.00[5] | + $.15/pill[2] |

**Legend**

| | |
| --- | --- |
| <span style="color:blue">■</span> | Data taken from Medicaid State Plan Amendments |
| <span style="color:red">■</span> | Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council |
| <span style="color:purple">■</span> | Data provided by Brendan K. Joyce, Pharm.D. Administrator, Pharmacy Services, 5/16/08, 11/18/08, and 12/2/08 |
| <span style="color:green">■</span> | Data provided by the North Dakota Provider Manual for Pharmacies |

[1] State MAC effective 1/6/2003. Methodology is based on actual costs for pharmacies and not WAC or AWP. State MAC includes hemophilia factors, Synagis, immunoglobulin.

[2] Pill splitting will only be permitted when Medical Services determines it is cost effective, the pill is scored for ease of splitting, and the pharmacy staff splits the pill. This fee will only be allowed for medications that have been evaluated by the state for cost-effectiveness and entered into the Point-of-Sale system.

[3] The State used First DataBank for pricing.

[4] State asked First Data Bank to change reimbursement rates to the lesser of AWP-10% or WAC+12.5% effective 10/1/2005, but it wasn't loaded until December 2005.

[5] Compounds are reimbursed by calculating EAC for all ingredients and then given a dispensing fee of $10 for the entire compound.

DRAFT

12/12/08

DRAFT

**Medicaid Pharmacy Reimbursement Methodology**

**State of:** Ohio

## Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[7] | | Physician Override (Brand Medically Necessary) | Dispensing Fee[6] | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Usual and Customary | FUL | EAC | SMAC | SMAC Description | Brand and Non-SMAC Generic | | Brand | Generic | Compound Drugs |
| 1/1/1991 - 6/30/1994 | Y | Y | Y | Y | [3] | AWP - 7%; DC[1] | N | $3.23[2] | $3.23[2] | |
| 1/1/1994 - 12/31/1996 | Y | Y | Y | Y | [3] | AWP - 7%; DC[1] | N | $3.50 | $3.50 | |
| 1/1/1996 - 12/31/1997 | Y | Y | Y | Y | [3] | AWP - 7.5%; DC[1] | Y | $3.50 | $3.50 | |
| 1/1/1998 - 6/30/1998 | Y | Y | Y | Y | [3] | AWP - 7.5%; DC[1] | Y | $3.60 | $3.60 | |
| 7/1/1998 - 4/30/2002[4] | Y | Y | Y | Y | [3] | WAC + 11% or AWP - 11.2% if WAC not available | Y | $3.70 | $3.70 | |
| 5/1/2002 - 9/30/2005[4] | Y | Y | Y | Y | [3] | WAC + 9% or AWP - 12.8% if WAC not available | Y | $3.70[6] | $3.70[6] | [8] |
| 10/1/2005 - Present | Y | Y | Y | Y | [3] | WAC + 7% or AWP - 14.4% if WAC not available | Y | $3.70 | $3.70 | [9] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Robert Reid, Pharmacy Program, 6/30/08, 8/4/08

Data provided by Pharmacy administrative rule forwarded by Mr. Reid.

[1] Reimbursement for the products of the following manufacturers is direct cost: Lederle, Merck, Squibb, Wyeth-Ayerst, Upjohn (Per NPC summary 1992). Lederle, Merck, Wyeth-Ayerst, Upjohn (1993 and 1994); Lederle, Wyeth-Ayerst, and Upjohn (1995 and 1996); and Lederle, Wyeth-Ayerst, and Pharmacia & Upjohn (1997 - 6/30/98).

[2] Effective 4/13/89.

[3] The Ohio MAC rates are based on the 65th percentile of the estimated acquisition cost of all readily available generically equivalent drugs.

[4] Effective dates taken from the 10/1/05 State Plan.

[5] Ohio implemented the Long Term Care Pharmacy Best Practices Management Incentive Payment Program for SFYs 2003 (July 1, 2002 - June 30, 2003) and 2004 (July 1, 2003 - June 30, 2004) with final payments made by March 31, 2005 to test the assumption that drug utilization management can reduce pharmacy expenditures for Medicaid consumers living in nursing facilities and ICF-MR facilities without compromising patient care.

[6] Beginning with the 2003 NPC profile, there is a $.50 fee for flu vaccines.

[7] The State uses First Data Bank for prices.

[8] Reimbursement for compound drugs other than total parenteral nutrition will receive a single $6.00 dispensing fee for claims submitted prior to 11/17/2003. When multiple bags of compounded pharmaceuticals are dispensed, each bag will receive a $6.00 dispensing fee, to a maximum of $60.00, regardless of the number bags dispensed beyond ten for claims submitted prior to 11/17/2003. Infusion compounds include intravenous (IV) therapy for chemotherapy, pain management and antibiotics. Claims submitted on or after 11/17/2003 for infusion compounds will receive a dispensing fee of $10.00 per day, with a maximum of $70.00. Claims submitted on or after 11/17/2003 for total parenteral nutrition should be submitted as a compound and will receive a dispensing fee of $15.00 per day, with a maximum dispensing fee of $150. Compounded drugs that are not infusion compounds or total parenteral nutrition claims will receive a single $6.00 dispensing fee per prescription when submitted on or after 11/17/2003.

[9] Effective 12/31/2007 by emergency rule, infusion compounds include intravenous (IV) therapy for chemotherapy, pain management and antibiotics. Claims submitted for infusion compounds will receive a dispensing fee of $70.00. Total parenteral nutrition claims will receive a dispensing fee of $15.00 per day, with a maximum dispensing fee of $150.00. Compounded drugs that are not infusion compounds or total parenteral nutrition claims will receive a single $6.00 dispensing fee per prescription.

10/31/2008

**State of:**   Oklahoma

## Medicaid Pharmacy Reimbursement Methodology

### Legend/Prescription Drugs

| Effective Time Period | | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[5] | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Usual and Customary | FUL | EAC | DOJ Pricing[6] | SMAC | Brand | Generic | SMAC Description | | Brand | Generic |
| 3/1/1990 | - | 9/30/1995 | Y | Y | Y | Y | Y[1] | AWP-10.5% | AWP-10.5% | 2 | Y | Max. $5.10 | Max. $5.10 |
| 10/1/1995 | - | 2/11/2002 | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5% | 3 | Y | Max. $4.15 | Max. $4.15 |
| 2/12/2002 | - | Present | Y | Y | Y | Y | Y | AWP-12% | AWP-12% | 4 | Y | Max. $4.15 | Max. $4.15 |

Data taken from Medicaid State Plan Amendments

Data provided by Dr. Nancy Nesser, Director Pharmacy Division, 5/28/08.

Data taken from OHCA pharmacy program website, 10/27/08

[1] State MAC established 7/1/93.

[2] Per TN #93-16, State MAC products and price are established based upon the recommendation of a special committee consisting of representatives from the Medical, Clinical, Osteopathic and Pharmaceutical Associations. The price is set as a percentile of the available medication specific products.

[3] Per TN #00-02, effective 4/8/2000, the SMAC price is established for certain products which have an FDA approved generic equivalent. The products and SMAC price are established based upon the recommendation of the DUR Board to the Agency CEO based on an average of two pricing formulas: (1) the OK State and Education Employees Insurance Board (OSEEGIB) MAC value and (2) the lower of AWP-15% or WAC plus 12%. The DUR Board computes formula number (1) and computes the lower of formula number (2). The formulas in (1) and (2) will then be averaged to comprise the SMAC price.

[4] Per TN #03-15, the SMAC is established for certain products which have an FDA approved generic equivalent and are not narrow therapeutic index drugs. There are two calculations done for each product. The first is unit AWP-15% and the second is unit WAC+12%. For each product, the lower value is to be considered. The median value of the "lower of" or "lesser of" values then becomes the SMAC price.

[5] Division has always used First DataBank for pricing.

[6] Oklahoma is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

08/19/2008

State of: **Oregon**

Medicaid Pharmacy Reimbursement Methodology

DRAFT

| Effective Time Period | Reimbursement is always lowest of either FUL or EAC or SMAC or U&C | | | Estimated Acquisition Cost (EAC)[7] Pay the lower of each formula listed | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | Compound Drug Fee (Retail) |
| | Usual and Customary | EAC | SMAC[2] | Retail | Institutional | Mail Order[6] Brand | Mail Order[6] Generic | | Retail | Institutional | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1991 – 9/30/2001 | | | N | DP[1]; AWP-11% | DP[1]; AWP-11% | | | Y | $3.91[3] | | [3] |
| 10/1/2001 – 8/30/2002 | | | Y[4] | AWP-13% | AWP-13% | | | Y | $3.50 | $3.91 | |
| 9/1/2002 – 2/14/2003 | | | Y | AWP-14%[5] | AWP-14%[5] | | | Y | $3.50 | $3.91 | |
| 2/15/2003 – 5/30/2003 | Y | Y | Y | AWP-14% | AWP-14% | AWP-21% | AWP-60% | Y | $3.50 | $3.91 | |
| 6/1/2003 – 11/2/2003 | Y | Y | Y | AWP-15% | AWP-11% | AWP-21% | AWP-60% | Y | $3.50 | $3.91 | |
| 11/3/2003 – Present | Y | Y | Y | AWP-15% | AWP-11% | AWP-21% | AWP-60% | Y | $3.50 | $3.91 | $7.50[8] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Roger Magrish, Pharmacy Program Manager, 7/25/08, 8/15/08

[1] NPCs report direct price (DP) for 9 selected companies.

[2] Oregon MAC is referred to as OMAC.

[3] Dispensing fee payment mechanism is four-tiered, based on yearly prescription sales volume, and the type of unit dose dispensing system used: $4.05 for 15-30K volume of scripts; $4.17 for 1-15K; and $4.28 for 1-15K with 20% > Medicaid volume.

[4] OMAC became effective on 3/1/2002. OMAC is determined on selected multiple-source drugs designated as bioequivalent by the FDA. The upper limit of payment for a selected multiple-source drug is set at a level where one bioequivalent drug product is available from at least two wholesalers serving the State of Oregon. When the OMAC is based upon AWP, it will be set at 14% below AWP and below 11% for institutional pharmacies.

[5] From 9/1/2002 through 7/1/2005, DOJ pricing was used on selected drugs from First DataBank.

[6] Brand drugs purchased through DHS mail order vendor are paid the lesser of OMAC, FULs, AWP-21%; plus DF. Generic drugs purchased through DHS mail order vendor are paid the lesser of OMAC, FULs, AWP-60%; plus DF.

[7] The State has always used First DataBank for pricing.

[8] Fee allowances are made for preparation time and dispensing of compound prescriptions. Pharmacies must list all applicable NDCs included in the compound and will receive a DF of $7.50 for each ingredient listed.

12/16/08

**State of:   Pennsylvania**

---

## Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | Legend/Prescription Drugs — Brand — "Lower of" (Usual and Customary / EAC / FUL / SMAC / Usual and Customary) | Brand EAC[2] / DOJ Pricing[3] | Legend/Prescription Drugs — Generic — "Lower of" (Usual and Customary / EAC / FUL / SMAC / Usual and Customary) | Generic EAC[2] / DOJ Pricing[3] | Exceptions: Compound Prescription | Exceptions: Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee: Brand | Dispensing Fee: Generic |
|---|---|---|---|---|---|---|---|---|
| 3/1/1987 – 1/9/1991 | Y | AWP | Y | AWP | Y[1] | Y | $2.75 | $2.75 |
| 1/10/1991 – 9/30/1995 | Y | AWP | Y | AWP | Y[1] | Y | $3.50 | $3.50 |
| 10/1/1995 – 8/9/2005 | Y | AWP-10% | Y | AWP-10% | Y[1] | Y | $4.00 | $4.00 |

| Effective Time Period | Brand — "Lower of" (Usual and Customary / EAC / FUL / SMAC / Usual and Customary) | Brand EAC[2] "Lower of" | Generic — "Lower of" (Usual and Customary / EAC / FUL / SMAC / Usual and Customary) | Generic EAC[2] "Lower of" | Compound Prescription | Physician Override | Dispensing Fee: Brand | Dispensing Fee: Generic |
|---|---|---|---|---|---|---|---|---|
| 8/10/2005 – Present | Y | WAC+7% / AWP-14% | Y | WAC+66% / AWP-25% | Y[1] | Y | $4.00 | $4.00 |

**Legend:**

- ▇ (Blue) Data taken from Medicaid State Plan Amendments
- ▇ (Red) Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council
- ▇ (Green) Data taken from Pennsylvania Medical Assistance Bulletins
- ▇ (Purple) Data provided by Terri Cathers, Director Pharmacy Programs, 8/11/08, 8/14/08, 10/28/08, 12/16/08

[1] The Department will pay a pharmacy for a compensable compound prescription at the lower of the cost of all the ingredients plus a $1.00 fee in addition to the regular dispensing fee or the provider's usual and customary charge to the general public. A compounded prescription, for purposes of medical assistance payment, is one which is prepared in the pharmacy by combining two or more ingredients and involves the weighing of at least one solid ingredient which shall be a compensable item or a legend drug in a therapeutic amount. (This information was later corporated by SPA TN #95-22)

[2] Beginning on 1/10/2005 until 8/9/2005, the State used "dynamic pricing" from First DataBank, Micromedex, and Medi-Span, to determine the lower of the AWP or WAC, as well as the pricing formula of AWP-10%. Then from 8/10/2005 to present, EAC is calculated utilizing AWP from the three vendors as well as new pricing formulas. Prior to dynamic pricing, EAC is calculated based upon AWP-10% from one pricing vendor, First DataBank.

[3] Pennsylvania is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

**State of:**   Rhode Island

## Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[4] | Physician Override (DAW/Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|
| | Usual and Customary[1] | FUL | EAC | SMAC[1] | Brand/Generic | | In-home | Institution |
| 10/1/1987 - 12/31/1994 | Y | Y | Y | Y | AWP, DP[2] | Y | $3.40 | $2.85 |
| 1/1/1995 - 6/30/1995 | Y[3] | Y | Y | N | WAC+10% | Y | $3.40 | $2.85 |
| 7/1/1995 - 7/31/2006 | Y[3] | Y | Y | N | WAC+5% | Y | $3.40 | $2.85 |
| 8/1/2006 - Present | Y[3] | Y | Y | N | WAC | Y | $3.40 | $2.85 |

| | |
|---|---|
| ▇ (blue) | Data taken from Medicaid State Plan Amendments |
| ▇ (red) | Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council |
| ▇ (purple) | Data provided by Paula Avarista, Chief of Pharmacy, on 7/15/08, 7/22/08, and 7/23/08 |

1 SMAC referred to as State Upper Payment Limits.  SMAC program was discontinued effective 1/1/1995.

2 Direct Price applies to ten manufacturers in 1991-1992 (Abbott-Ross, Lederle, Merck Sharp & Dohme, Parke-Davis, PHpharmics, Pfizer-Roerig, Squibb, Upjohn, Warner-Chilcott, Wyeth-Ayerst) and nine in 1993-1994 (Abbott-Ross, Lederle, Merck & Co., PHpharmics, Pfizer-Roerig, Squibb, Upjohn, Warner-Chilcott, Wyerst-Ayerst.

3 The usual and customary charge to the general public should include all discounts such as senior citizen discounts, or if lower, the amount reimbursed by other third party payors.

4 First DataBank used for pricing throughout time period.

DRAFT

**State of:**   **South Carolina**

### Medicaid Pharmacy Reimbursement Methodology

**Legend/Prescription Drugs**

| Effective Time Period | | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) | | SMAC | Physician Override (DAW/Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC[3] | DDO Pricing | SMAC | Brand/Generic | SMAC Description | | | Independent | Institutional | |
| 7/1/1990 – 8/31/1991 | Y | Y | Y | | Y | AWP - 9 1/2% | SMAC - 9 1/2% | Y | Y | $3.05 | $2.15 | 1,2 |
| 9/1/1991 – 9/30/1996 | Y | Y | Y | | Y | AWP - 9 1/2% | SMAC - 9 1/2% | Y | Y | $4.05 | $3.15 | |
| 10/1/1996 – 9/30/1999 | Y | Y | Y | | Y | AWP - 10% | SMAC - 10% | Y | Y | $4.05 | $3.15 | |
| 10/1/1999 – 10/31/1999 | Y | Y | Y | | Y | AWP - 13% | SMAC - 13% | Y | Y | $4.05 | $3.15 | |
| 11/1/1999 – 6/30/2000 | Y | Y | Y | | Y | AWP - 13% | SMAC - 13% | Y | Y | $4.05 | $3.15 | |
| 7/1/2000 – 11/30/2001 | Y | Y | Y | Y[6] | Y | AWP - 10% | SMAC - 10% | Y | Y | $4.05 | $3.15 | |
| 12/1/2001 – Present | Y[4,5] | Y[4,5] | Y[4,5] | Y[6] | Y[4,5] | AWP - 10% | SMAC - 10% | Y | Y | $4.05 | $3.15 | 4,5 |

Data taken from Medicaid State Plan Amendments

Data provided by Mr. James Assey, Division Director of Health Services, 5/15/08, 11/13/08, 11/14/08.

1 For pharmaceutical products having no AWP and whose billing price includes services other than ingredient cost, the state will impute its EAC based on available data. Final reimbursement is based on the imputed EAC plus the current dispensing fee.

2 A provider of pharmaceutical services to LTC facilities may opt to be reimbursed under the Alternate Reimbursement Methodology (ARM). The ARM rate is based on historical reimbursement and utilization data for prescriptions of residents of LTC facilities. Reimbursement is based on the established rate times the estimated patient day totals for those recipients served by the contracted provider. Adjustment of the reimbursement is made when a comparison of the estimated vs. actual patient days for the month yields a difference. The ARM rate will not exceed the upper limits of payments under the non-LTC reimbursement methodology. Discontinued on 1/1/06 according to State Plan 05-013.

3 Pricing compendium has always been First DataBank.

4 Per SC DHHS Medicaid Bulletin Pharm 01-06 dated November 7, 2001: Effective with dates of service December 1, 2001, the Medicaid prescription payment amount shall not exceed the lowest of: AWP less 10%, plus the dispensing fee of $4.05, less $2.05; FUL or SCMAC less 10%, plus the dispensing fee of $4.05, less $2.05; or the provider's usual and customary charge.

5 Effective with dates of service July 1, 2002, the Medicaid prescription payment amount shall not exceed the lowest of: AWP less 10%, plus the dispensing fee of $4.05, or the provider's usual and customary charge. (The reduction of "less $2.05" was removed.)

6 The state applied DDO pricing supplied by First Data Bank to the same price methodology.

11/14/08

DRAFT

05/14/08

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[2] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Unit Dose |
|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | Class II Substances and Non-SMAC | | Brand | Generic | |
| 1/1/1990 - 6/30/1991 | Y | Y | Y | N | AWP-10.5% | Y | $4.25 | $4.25 | $5.05 |
| 7/1/1991 - 11/15/2002 | Y | Y | Y | N | AWP-10.5% | Y | $4.75 | $4.75 | $4.75 + $.80 |
| 11/16/2002 - Present | Y | Y | Y | Y[1] | AWP-10.5% | Y | $4.75 | $4.75 | $4.75 + $.80 |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Mike Jockheck, Pharmacy Consultant, 5/12/08 and 5/9/08.

[1] MAC methodology unknown because prices are determined by an outside vendor.

[2] Pricing provided by First DataBank.

DRAFT

04/08/2009

# Medicaid Pharmacy Reimbursement Methodology

**State of:** Tennessee

### Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology — Pay the Lower of each formula listed | | | | Estimated Acquisition Cost (EAC) | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | EAC | FUL | SMAC[1] | Brand/Generic | Specialty Network Pharmacy and Non-Network Pharmacies | Schedule II Drugs | | Pharmacies Brand | Pharmacies Generic | Specialty Network Pharmacy and Non-Network Pharmacies | Unit Dose Brand | Unit Dose Generic | Compound Drugs |
| 10/1/1990 - 6/30/1998 | Y | Y | Y | Y | AWP-8%[2,3] | | 100% AWP[2] | N | $3.91 | $3.91 | | $6.00 | $6.00 | |
| 7/1/1998 - 6/30/2000 | Y | Y | Y | Y | AWP-13%[4] | | 100% AWP[2] | N | $2.50[5] | $2.50[5] | | $6.00 | $6.00 | |
| 7/1/2000 - 6/30/2003 | Y | Y | Y | Y | AWP-13%[4] | | 100% AWP[2] | N | $2.50[6] | $2.50[6] | | $5.00[7] | $6.00[7] | $25.00 |
| 7/1/2003 - 6/30/2008 | Y | Y | Y | Y | AWP-13%[4,8] | | | N | $2.50[10] | $3.00[10] | | $5.00[9] | $6.00[9] | $25.00 |
| 10/1/2008 - Present | Y | Y | Y | Y | AWP-16%[11] | | | N[12] | $2.50 | $3.00 | $1.50[11] | $5.00[13] | $6.00[13] | $25.00 |

Data taken from Medicaid State Plan Amendments

Data provided by Nicole Woods, TennCare, on 7/6/2009 and 7/8/2009

Data provided by TennCare Pharmacy Manual Version 2.1 October 2008

1 State MAC is defined as Tennessee Maximum Allowable Cost, TMAC.

2 EAC is defined as Blue Book published AWP - 8% for legend drugs except for DEA Schedule II drugs which shall be Blue Book published AWP.

3 When covered drugs are repackaged by an FDA-licensed repackager into unit dose packaging, an additional amount not to exceed a maximum of $0.03 per unit dose packaging will be allowed.

4 Payment for covered drugs may be made through a contract with one or more pharmacy benefits vendors or directly to participating pharmacies.

5 The dispensing fee is $2.50 for each prescription dispensed by pharmacy providers who comply with state-approved preferred provider credentialing requirements or special exemption requirements, and $2.00 for each prescription dispensed by other pharmacy providers.

6 The dispensing fee is $2.50 for each prescription dispensed by pharmacy providers who comply with all of the TennCare pharmacy requirements.

7 Long-term care unit dose vendors who comply with all of the TennCare pharmacy requirements will receive a $5.00 dispensing fee for residents when the quantity dispensed is greater than a 28-day supply and $2.50 if the quantity is less.

8 Paid for legend drugs will be AWP-13% as described by First DataBank, except for DEA Schedule II drugs which shall be 100% AWP, plus the DF.

9 Paid for long-term care pharmacy claims when the days supply is greater than 28 days.

10 Pharmacy providers who maintain a 90% or greater compliance with TennCare's preferred drug list (PDL) for each 6 month time period, will be paid an additional $0.10 for each TennCare prescription dispensed during that period. This policy is believed to have ended with the increase to a $3.00 generic dispense fee, which occurred in late 2004 or early 2005.

11 Pricing for special network pharmacies and non-network pharmacies are always the lesser of: applicable discount rate from the Specialty Pharmaceutical Pricing list, or; AWP-16% + dispense fee, or; Federal MAC + dispense fee, or; MAC + dispense fee, or; Usual and Customary, or; Gross Amount Due. No dispensing if included in Specialty Pharmaceutical Pricing List, and $1.50 if not included in the Specialty Pharmaceutical Pricing List.

12 TennCare is a mandatory generic program, in which DAW1 is not allowed to override the mandatory generic requirement; exceptions may be requested through the PBM, SXC Health Solutions. There is also a short list of exceptions to the mandatory generic policy where TennCare prefers a brand product over a generic. For these medications, pharmacies are paid AWP-13% plus $3.00.

13 Paid for drugs with days supply greater than or equal to 28 days.

DRAFT

# Medicaid Pharmacy Reimbursement Methodology

State of: __Texas__

DRAFT

## Reimbursement of Legend Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[6,7] (Pay lower of WEAC, DEAC or MAC) | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Formula / Average Dispensing Fee | | Dispensing Fee Formula Factors | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | DOJ Pricing | EAC | FUL | Usual and Customary | WEAC (Pay lower of)[7] | DEAC[7] | SMAC[7] | SMAC Methodology | | Dispensing Fee Formula | Average Dispensing Fee | Expense Dispensing Fee | Inventory Factor Management | Delivery |
| 5/1/1990 - 1/31/1991 | | | Y | Y | AWP-10.49% or WAC +12% | | [3] | | Y | 4.26[1,2] | 4.26 | 3.0% | 0.10 | 0.10 |
| 2/1/1991 - 3/30/1992 | | | Y | Y | AWP-10.49% or WAC +12% | | [3] | | Y | 4.53[1,2] | 4.53 | 3.0% | 0.10 | 0.10 |
| 4/1/1992 - 8/31/1992 | | | Y | Y | AWP-10.49% or WAC +12% | | [3] | | Y | 4.55[1,2] | 4.55 | 3.0% | 0.10 | 0.10 |
| 9/1/1992 - 8/31/1997 | | | Y | Y | AWP-10.49% or WAC +12% | | [3] | | Y | 4.55[3,4,5] | 4.55 | 7.0% | 0.10 | 0.10 |
| 9/1/1997 - 10/15/2003 | Y | Y | Y | Y | AWP-15% or WAC +12%[9] | Y[10,11] | Y[12] | [12] | Y | 5.27[13] | 5.27 | 2.0% | 0.15 | 0.15 |
| 10/16/2003 - 11/30/2003 | Y | Y | Y | Y[a] | AWP-15% or WAC +12%[9] | | Y | [12] | Y | $5.14[14] | 5.14 | 1.95% | 0.15 | 0.15 |
| 12/1/2006 - 8/31/2007 | Y | Y | Y | Y[a] | AWP-15% or WAC +12%[9] | | Y | [12] | Y | $5.14[14,15,16] | 5.14 | 1.95% | 0.15 | 0.15 |
| 9/1/2007 - Present | Y | Y | Y | Y[a] | AWP-15% or WAC +12%[9] | | Y | [12] | Y | $5.14[14,15,16] | 7.5 | 2.00% | 0.15 | 0.15 |

Data taken from Medicaid State Plan Amendments

Data taken from National Pharmaceutical Council Summaries

Data provided by Barbara Dean, Senior Pharmacy Policy Analyst on 12/9/08, 12/16/08, 12/17/08

1 TN 91-12 dated 06-07 (5/1/1990 - 8/31/1997) report that the department reimburses contracted Medicaid pharmacy providers on a **cost-related basis** (through cost reports) for prescription dispensing services and drug products provided to Medicaid recipients. This reimbursement is accomplished through **assignment of a dispensing fee (EF) for each prescription.** The department determines the EF after analyzing statewide financial and demographic information about the total cost of dispensing prescriptions.

2 NPC Summaries for 1992, 1993, and 1994 report Direct Prices only for Abbott, Upjohn and Wyeth-Ayerst, NPC Summaries for 1994-1996 report DP only for Abbott, Upjohn and Wyeth-Ayerst.

3 NPC Summaries for 1994-1996 report Direct Prices only for Abbott, Merck, Upjohn and Wyeth-Ayerst, NPC Summaries for 1997, 1998, and 1999 report Direct Price only for Abbott, and Wyeth-Ayerst.

4 NPC 1990 formula: (EAC + 4.26) divided by 0.970 = amount paid + $.10 delivery service. NPC 1991 formula: (EAC + 4.53) divided by 0.970 = amount paid + $.10 delivery service. NPC 1992 formula: (EAC + 4.53) divided by 0.970 = amount paid + $.10 delivery service.

5 NPC 1996 and 1997 formula: (EAC + 4.55) divided by 0.930 = amount paid + $.10 delivery service. NPCs 1993 - 1995 formula: (EAC + 4.55) divided by 0.930 = amount paid + $.10 delivery service.

6 The Department uses First DataBank and the Redbook as pricing references.

7 EAC defined as the estimated acquisition cost (WEAC), direct estimated acquisition cost (DEAC), according to the pharmacist's usual purchasing source and the pharmacist's usual purchasing quantity; or maximum allowable cost (MAC) for multi-source drugs.

8 The Department began reducing drug costs based on DOJ pricing beginning in 2000.

9 All drug purchases from a central purchasing entity must be billed to the department as warehouse purchases. The WEAC is established by the department using the current Redbook, Redbook update, First Databank or manufacturer pricing less a discount of 15%, which discounts received by pharmacists on wholesale drug purchases. The WEAC may not exceed wholesale costs, as supplied by the drug manufacturers, plus a 12% markup representing wholesale operating costs and profits.

10 The DEAC is established by the department using direct price information supplied by drug manufacturers. Providers are reimbursed at the DEAC on all drug products that are available from select manufacturers/distributors who actively seek and encourage direct purchasing.

11 NPC Summaries for 2000, 2001 and 2002 report that DEAC was available only for Wyeth-Ayerst, NPC 2003 reports that DEAC was available only for Wyeth-Ayerst and Abbott.

12 SMAC referred to as Texas Maximum Allowable Cost, or TMAC. The TMAC reimbursement limit applies only to multi-source drugs included in the Vendor Drug Program's formulary (Texas Drug Code Index, or TDCI). Multi-source drugs are sorted into therapeutic categories based on the drug and strength, and in some cases, on the dosage form and package size. The TMAC reimbursement limit selected for each therapeutic category is determined using the WEAC of all drugs in the respective category. The TMAC reimbursement limits are maximum reimbursement limits. If a pharmacy provider dispenses a drug with a WEAC or DEAC below the TMAC limit, reimbursement is made at the lower cost based on the provider's source of purchase of the drug. If a drug is subject to both TMAC limits and federal upper limits, the lower of the two limits is the maximum reimbursement limit.

13 Eff. 09-01-97 (TN 97-15), the dispensing fee is determined by the following formula: Estimated Dispensing Fee = ((Estimated Drug Ingredient Cost) x (1 - Inventory Management Factor)) - Estimated Drug Ingredient Cost) + Delivery Incentive. NPC 1999 - 2002 formula: (EAC + 5.27) divided by 0.980 = amount paid + $0.15 delivery service.

14 Beginning on 10/16/2003, the estimated dispensing expense was $5.14, but the inventory management factor was 1.95%. The total dispensing fee should not exceed $200 per prescription. The delivery incentive was $0.15 per prescription.

15 Dispensing fee is determined by the following formula: Dispensing Fee = ((Estimated Drug Ingredient Cost + Estimated Dispensing Expense) divided by (1 - Inventory Management Factor)) - Estimated Drug Ingredient Cost.

16 A generic drug dispensing incentive of $0.50 per prescription shall be paid on all Medicaid prescriptions filled for preferred generic drugs for which a manufacturer has agreed to pay a supplemental rebate. Preferred generic drugs are subject to the requirements for placement on the Preferred Drug List.

01/08/2009

# Medicaid Pharmacy Reimbursement Methodology

**State of:** UTAH

## Prescription/Legend Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | | | Physician Override (DAW, Brand) Medically Necessary | Dispensing Fee | | | | | | Special Fee Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC[10] | MAC | DOJ | Provider's Submitted Charge Brand/Generic | Pricing DOJ | Cost (EAC) Brand/Generic | Brand/Generic | Brand/Generic | Rural Pharmacy Brand/Generic | Category J[7] | Category K[8] | Category L[9] | Category M[10] | |
| 1/1/1989 - 6/30/1990 | Y | Y[2] | Y | Y | Y | | | AWP - 12% | | $3.65 | $4.15 | | | | | |
| 7/1/1990 - 3/31/2001 | Y | Y | Y | Y | Y[9] | | | AWP - 12%[4] | | $3.90 | $4.40[3] | | | | | [9] |
| 4/1/2001 - 12/31/2002 | Y | Y | Y | Y | Y[9] | Y | | AWP - 12% | Y | $3.90 | $4.40 | $8.90 | $18.90 | $22.90 | $33.90 | [7] |
| 1/1/2003 - Present | Y | Y | Y | Y | Y[9] | Y[11] | | AWP - 15% | Y | $3.90 | $4.40 | $8.90 | $18.90 | $22.90 | $33.90 | [7] |

**Legend:**

- Data provided by Tim Morley, R.Ph., Pharmacy Director on 1/7/09
- Data taken from Other Source (United State Medicaid DUR Committee - The Amber Sheet, Volume 9, dated April 2001 or Pharmacy Manual)
- Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council
- Data taken from Medicaid State Plan Amendments

1. Per SPA #89-02, effective 01/01/1989. The Average Wholesale Price (AWP) is determined for each drug by the Utah contract with American Druggist, Blue Book First Data Bank. They provide a monthly update of drug prices for the Reference File. First Data Bank uses AWP from wholesalers in many states for determining AWP in specific regions. Except for special category fees, reimbursement is based on lower of State MAC, EAC, FUL, or AWP.

2. Per SPA #89-02, effective 01/01/1989. State Maximum Allowable Cost reimbursement established by the Utah Department of Health, Division of Health Care Financing, for selected multiple-source (generic) drugs not appearing on the federal upper limit list. These drugs are listed in the Pharmacy Provider Manual.

3. Per SPA #89-02, effective 01/01/1993. In recognition of lower overhead and higher acquisition costs, rural pharmacies are paid a $.50 dispensing fee differential. The differential is paid in addition to the dispensing fee paid to urban pharmacies. Rural is defined as those pharmacies located outside of Weber, Davis, Utah and Salt Lake counties.

4. Per 1994 NPC Publication: An increasing number of Medicaid recipients are enrolled in MCOs, and pharmacy benefits are received through the Managed Care. Per 1997 NPC Publication, pharmacy benefit is a carve-out from managed care. Methodology not provided.

5. Per 1996 NPC Publication: Override requires "Brand Medically Necessary."

6. Per SPA #97-007, effective 09/13/1997. The Department shall impose a copayment in the amount of $1.00 for each prescription filled when a non-exempt Medicaid client, receives the prescribed medication. The Department shall limit. Special Category fees apply to the following: (1) Payment for insulin, birth control pills, and non-legend (OTC) drugs and (2) Payment for non-legend OTC antacid liquids. This fee is a negotiated fee initially developed in cooperation with the Utah Pharmaceutical Association to apply to specific drugs historically advertised and dispensed to the general public at minimum prices.

7. Per SPA #01-004, effective 04/01/2001: Special Category Fees includes addition of Differential fee payment for selected drugs reconstitute for Home IV Infusion as typically prepared by a specialty pharmacy. Specialty pharmacies have low volume but high overhead expenses. The Department of Justice (DOJ) in year 2000 repriced the AWP for 437 NDC specific products. The repriced products necessitated four new dispensing fees. The four new fees are defined as Category J, Category K, Category L, and Category M.

8. Per the United State Medicaid DUR Committee - The Amber Sheet, Volume 9, dated April 2001: Categories two through five (J-M) are increasingly difficult prescriptions with category five being the most difficult and expensive to prepare. Category five includes chemotherapy IVs, pain management and cardiac inotropics; Category four includes complex antibiotics that require laboratory monitoring and reporting; Category three includes simple IV antibiotics, anticoagulant treatments, IV gamma globulin, etc; Category two includes nebulizer preparations, growth hormone, etc.

9. DOJ prices were implemented with an effective date of August 1, 2001. This included the establishment of a True AWP for 437 NDC specific products, each of which is placed into one of five categories and assigned a new dispensing fee.

10. Pricing provided by First DataBank since 1989 or 1990.

11. According to the Utah Medicaid Provider Manual, (updated January 2007), brand name drugs require a prior approval if an 'AB' rated generic alternative is available. The Utah Pharmacy Practice Act mandates use of a generic unless the treating physician demonstrates to the Department of Health a medical necessity for dispensing the non-generic, brand-name legend drug.

**State of:   Vermont**

**Medicaid Pharmacy Reimbursement Methodology**

### Prescription/Legend Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology – Pay the lower of each formula listed | | | | | Estimated Acquisition Cost (EAC)[1] | | Compound Drugs | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | DOJ Pricing | FUL | EAC | SMAC | Usual and Customary | Brand | Generic | | | | Brand | Generic | Out-of-State |
| 1/1/1991 – 6/30/1991 | ? | ? | ? | ? | ? | ? | ? | ? | ? | ? | ? | ? | ? |
| 7/1/1991 – 3/31/1996 | Y | Y | Y | N | | AWP-10% | AWP-10% | | | | $4.25 [2] | $4.25 [2] | |
| 4/1/1996 – 11/14/2001 | Y | Y | Y | N | | AWP - 10% | AWP-10%[3] | 5 | | Y[4] | $4.25 | $4.25 | |
| 11/15/2001 – 12/31/2004 | Y | Y | Y | Y | | AWP - 10% | AWP-10%[3] | 5 | | Y[4] | $4.25 | $4.25 | |
| 1/1/2005 – 7/1/2007 | Y | Y | Y | Y | | AWP - 11.9% | AWP-11.9%[3] | 5 | | Y[6] | $4.25 | $4.25 | $3.65 |
| 7/2/2007 – Present | Y | Y | Y | Y | | AWP - 11.9% | AWP-11.9%[3] | AWP-11.9% plus $15.00 | | Y[6] | $4.25 | $4.25 | $3.65 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data taken from Mary Day on 08/04/08

1 State used First DataBank until 1/1/2006 and then switched to Medispan

2 Dispensing fee becomes 10% of cost of ingredients when ingredients exceed $42.50, capped at $7.50. This provision is not reported anymore beginning with NPC 1996.

3 State Plan reports that multiple source drugs are paid at average wholesale price (100% AWP?) plus dispensing fee.

4 TN # 96-6 reports that physician certified as brand necessary are paid at the lower of or the amount charged or the average wholesale price less 10 percent plus a dispensing fee.

5 Payment for compounded prescriptions is made at the lower of the amount charged at the AWP on file, plus a compounding fee plus a dispensing fee.

6 TN # 00-06 reports that physician certified as brand necessary are paid at the lower of the amount charged or the average wholesale price less 11.9 percent plus a dispensing fee.

DRAFT

DRAFT

State of:   Virginia

## Medicaid Pharmacy Reimbursement Methodology

**Legend/Prescription Drugs**

| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[2] | | | | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Effective Time Period | Usual and Customary[1] | FUL | EAC | SMAC[1] | Brand | Generic | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Brand | Generic | Unit Dose | Home Infusion Therapy |
| 10/1/1990 – 6/30/1996 | Y | Y | Y | Y | AWP - 9% | AWP - 9% | 3 | Y | $4.40 | $4.40 | | 4 |
| 7/1/1996 – 6/30/2002 | Y | Y | Y | Y | AWP - 9% | AWP - 9% | 3 | Y | $4.25 | $4.25 | | 10 |
| 7/1/2002 – 6/30/2003 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 3 | Y | $4.25 | $4.25 | | 10 |
| 7/1/2003 – 11/5/2003 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 3 | Y | $4.25 | $3.75 | | 10 |
| 11/6/2003 – 11/30/2004 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 5 | Y | $3.75 | $3.75 | $5.00[6] | 10 |
| 12/1/2004 – 6/30/2005 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 7 | Y | $3.75 | $3.75 | $5.00[6] | 10 |
| 7/1/2005 – 4/30/2006 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 7 | Y | $3.75 | $4.00 | $5.00[6] | 10 |
| 5/1/2006 – Present | Y | Y | Y | Y | AWP - 10.25%[8] | AWP - 10.25%[8] | 7, 9 | Y | $4.00 | $4.00 | $5.00[6] | 10 |

■ Data taken from Medicaid State Plan Amendments

■ Data provided by Jennifer Gobble, Office of Attorney General, 7/10/08 and 7/15/08

■ Data provided in AWP-MDL Deposition Transcript and Exhibits

1 State MAC referred to as VMAC.

2 First DataBank used for pricing.

3 VMAC based on 60th percentile or maximum cost level.

4 Program pays additional reimbursement for the 24-hour unit dose delivery system of dispensing drugs for patients residing in NFs. Per Abbott Exhibit 1160 (11-4-08) VAC MDL 75692. Effective 10/1/1990, for unit-dose packaging, an allowance of $0.0157 per tablet, per capsule, or per 10 ml (average dose) oral liquid for non-commercial unit-dose packaging; and for unit-dose dispensing fee, an allowance of add-on payment of a $0.01 per oral tablet or oral capsule (the add-on is also applicable to each 10 ml of oral liquid dispensed). Effective 7/1/2002, if the claim is coded with 4 in the Unit Dose field, $0.0157 for each tablet, capsule, and $0.0016 for each ml (repackaging).

5 VMAC defined as the 75th percentile cost level, or the 60th percentile cost level for unit dose drugs, of the aggregate for each generic manufacturers' drug for each GCN. Manufacturers' costs are supplied by the most current First Data Bank File.

6 For nursing facility residents, the unit dose dispensing fee is $5.00 per recipient per month per pharmacy provider.

7 VMAC shall be the higher of either: (i) the lowest WAC plus 10%, or (ii) the second lowest WAC plus 6%. Additional detail for development of the VMAC is also included in the State Plan.

8 DMAS confirms that EAC for hemophilia drugs is AWP-25%.

9 Effective July 1, 2008, DMAS initiated a Specialty MAC program. The drug classes that will be priced by the Specialty MAC program include: (1) Anti Tumor Necrosis Factor Agents (Rheumatoid Arthritis); (3) Immunomodulator Agents (Immune Suppressants); (4) Agents to treat Muscular Sclerosis; (5) Growth Hormones; and, (6) Interferon Agents for Hepatitis C. The new Specialty MAC reimbursement amount will be determined by and based on the Wholesale Acquisition Cost (WAC) + 4.75%.

10 Virginia Register of Regulations, dated 10/11/1999, page 209 reports that: "The following therapy categories shall have pharmacy service day rate payment allowable: hydration therapy, chemotherapy, pain management therapy, drug therapy, total parenteral nutrition (TPN). The service day rate payment for the pharmacy component shall apply to the basic components and services intrinsic to the therapy category."

DRAFT

**State of:** **Washington**

**Medicaid Pharmacy Reimbursement Metholodogy**

| Effective Time Period | Usual and Customary | FUL | E-AC[10] | A-MAC[11] | S-MAC[9] | DOJ Pricing | Brand | Generic | Schedule II Drugs | A-MAC | Physician Override (DAW,Brand Medically Necessary) | Retail pharm. <15,000 Rxs | Retail pharm. 15,000-35,000 | Retail pharm. >35,000 Rxs | Unit dose sys. NH Rxs | Contracted Mail-order |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Prescription/Legend Drugs** — "Lower of" Reimbursement Methodology[1, 7] | | | | | | **Estimated Acquisition Cost (EAC)[12] Pay the lower of each formula listed** | | | | | **Dispensing Fee** | | | | |
| 1/1/1990 - 6/30/1992 | Y | | Y | | Y | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.33 | $3.70 | $3.24 | $4.33 | |
| 7/1/1992 - 12/31/1992 | Y | | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.38 | $3.75 | $3.45 | $4.38 | |
| 1/1/1993 - 6/30/1995 | Y | | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.50 | $3.90 | $3.65 | $4.50 | |
| 7/1/1995 - 6/30/1996 | Y | | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.59 | $3.98 | $3.72 | $4.59 | |
| 7/1/1996 - 6/30/1997 | Y | Y | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | 3 | Y | $4.68 | $3.98 | $3.79 | $4.68 | |
| 7/1/1997 - 6/30/1999 | Y | Y | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | 3 | Y | $4.82 | $4.18 | $3.90 | $4.82 | |
| 7/1/1999 - 6/30/2001 | Y | Y | Y | | Y | | AWP - 11% | AWP - 11% | 100% AWP[8] | | Y | $4.92 | $4.26 | $3.98 | $4.92 | |
| 7/1/2001 - 7/31/2002 | Y | Y | Y | | Y | Y[11] | AWP - 11% | AWP - 11% | 100% AWP[8] | | Y | $5.12 | $4.44 | $4.14 | $5.12 | |
| 8/1/2002 - 1/31/2003 | Y | Y | Y | Y | Y | Y[11] | AWP- 14% | AWP-14%/AWP-50%[4] | | | | $5.20 | $4.51 | $4.20 | $5.20 | |
| 2/1/2003 - 6/30/2005 | Y | Y | Y | Y | Y | Y[11] | AWP- 14%[5] | AWP-14%/AWP-50%[4,5] | | | Y | $5.20 | $4.51 | $4.20 | $5.20 | $3.25 [5] |
| 7/1/2005 - Present | Y | Y | Y | Y | Y | Y[11] | AWP- 14%[5] | AWP-14%/AWP-50%[4,5] | | | Y | $5.25 | $4.56 | $4.24 | $5.25 | $3.25 [5,6] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Myra Davis, Manager Pharmacy Rates Unit on 6/6/08, 6/11/08, 7/22/08, 8/4/08, 12/9/08

1 Primary pricing source was First DataBank drug file; secondary was Redbook for comparisons, special issues, etc.

2 The 1990 and 1992 S-MAC list may have been for specific drugs or specific NDCs but since the mid-nineties, S-MACs have been GCN based with only a few being NDC specific.

3 Per TN# 97-04, automated maximum allowable cost (AMAC) pricing shall apply to m.s. drugs which are not on HCFA upper limits or the agency's MAC list but are produced by three or more manufacturers/labelers under the federal drug rebate agreement. AMAC reimbursement for all products within a generic code number sequence shall be at the EAC of the third lowest priced product in that sequence, or the EAC of the lowest priced drug under a federal rebate agreement in that sequence, whichever is higher. AMAC is recalculated each time there are pricing updates to any product in the sequence.

4 EAC is AWP- 14% for multisource drugs with four or fewer manufacturers/labelers; AWP- 50% for multisource drugs with five or more manufacturers/labelers and no MAC or FUL; and 100% of certified AWP for infusion, injectable, and inhalation drugs with certified AWPs. Per TN# 02-022, these EAC percentages are effective for dates of service on and after 8/1/02.

5 For the contracted mail-order delivery service of prescription drugs, the contractor/pharmacy guarantees that the average annual multisource discount, in aggregate for all drugs dispensed will be at least 60% of AWPand for brand drugs AWP-19%. An annual reconciliation will be performed and the contractor will pay any shortfall on a dollar-for-dollar basis.

6 Mail order service ended on 1/31/2008.

7 On 3/13/1996, State implemented HRSA's point-of-sale (POS) system that looks at multiple items to price and pay a claim: group file, plan file, drug file, specific system logic (examples: peak-flow meters and spacers: S-MAC'd drugs or specific product exclusions from AWP-50% pricing). Authorizations and provider files are also part of the information used to process the claims. The POS pays the lesser of the prices posted to the drug file for the drug in question. The drug's manufacturer must have a signed federal rebate agreement in order for the drug to be payable on the system. (There are a very few exceptions to the rebate requirement.) The POS system calculates the system's allowable ingredient cost (units x the lesser of EAC, S-MAC, A-MAC, or FUL) and compares it to the submitted ingredient cost. The lesser of the two is the allowed ingredient cost. Then it adds the allowed ingredient cost plus the dispensing fee and this figure becomes the allowed charge shown on the claim. It then compares the allowed charge to the total claim charge and the lesser amount equals the amount paid on the claim.

8 Paid 100% AWP for schedule II drugs from 1/1/92 - 3/31/02. On 4/01/02, began paying Schedule II drugs at AWP-11% like all other drugs.

9 The State Maximum Allowable Cost (S-MAC) sets a price on multiple source drugs as a result of specific knowledge of available products and pharmacy acquisition costs. S-MAC is a fixed price across an entire Generic Code Number (GCN) that overrides A-MACs. New or revised S-MACs are published monthly and loaded into the system on a monthly basis. The current S-MAC list has approximately 1200 GCNs on the list.

10 E-AC is HRSA's estimate of the price providers generally and currently pay for a drug marketed or sold by a particular manufacturer or retailer. It is generally the price paid for single-source or brand-name drugs and is the highest available price on the drug file. When there is specific information informing the estimate of acquisition costs, the State may have a different, lower amount payable on the drug file such as for some clotting factors.

11 Per the state, Certified AWPs (CAWP) were applied for particular products according to instruction. These CAWPs were entered as fixed sums into the "lesser than" payment algorithm. For systems functionality reasons, the CAWPs were entered into the MAC field but are not MACs and have always been known as certified AWPs. Also due to functionality reasons in the legacy system, the CAWPs have remained in the payment algorithm. They will be removed in the new POS system. (We have been told it is no longer necessary to maintain them.)

12 According to a long-time employee, there was a demonstration project related to infusion therapies, in which infusion therapy providers were reimbursed on a per diem basis. The project took place sometime in the mid-1990's and ran only a short time.

## Medicaid Pharmacy Reimbursement Methodology

**State of:**  **West Virginia**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)? Pay the lower of each formula listed | | SMAC Description | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | | Brand | Generic | Compounded Prescriptions |
| 4/17/2006 - Present | Y | Y | Y | Y[8] | Y | AWP-15%[5,6] | AWP-30%[5,6] | [4] | Y | $2.50 | $5.30 | Add $1.00[2] |
| 7/1/2006 - 4/16/2006 | Y | Y | Y | Y[8] | Y | AWP-12% | AWP-12% | [4] | Y | $3.90 | $3.90 | Add $1.00[2] |
| 1/1/1996[1,3] - 6/30/2005 | Y | Y | Y | Y[8] | N | AWP-12% | AWP-12% | | Y | $3.90 | $3.90 | Add $1.00[2] |
| 1/1/1991[1] - 12/31/1995[1] | Y | Y | Y | | N | 100% AWP | 100% AWP | | Y | $2.75 | $2.75 | Add $1.00 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by the Bureau for Medical Services on 6/5/08, 6/24/08, 7/21/08, 7/23/08, 8/4/08, 10/24/08, 10/27/08

[1] Month and day effective dates arbitrarily assigned since no State Plan information was available.

[2] Effective 7/1/01 per TN #00-11, payment for all compounded drug mixtures with at least one legend ingredient and for parenterally administered drugs will be based upon the EAC of the drug plus a compounding fee determined by the agency to cover the cost of specialty prepared admixtures and case management services for drugs requiring parenteral administration.

[3] 1/1/1996 through 12/31/1997 information obtained from NPC since no State Plan information was available.

[4] Per TN #03-10, effective 9/15/2003, SMAC will be determined using **130% of the lowest WAC** as provided by national drug information suppliers for 3 manufacturers or SMAC based on a mean average of pharmacy provider costs obtained through a survey of a percentage of pharmacy providers that are representative of the overall geographical distribution, service volume, and business structures of all pharmacies serving the WV Medicaid Program. In those instances where less than 3 manufacturers supply products in the marketplace, the following steps are followed (See Attachment 4.19-B, Page 9, 9a and 9b).

[5] Reimbursement will be at the Medicare price or Bureau for Medical Services assigned fee for any drug that has an HCPCS code.

[6] For drugs described in section 340B of Public Law 102-585, the Veteran's Health Act of 1992, payment will be based on **the actual acquisition cost plus a dispensing fee of $8.25, if lower than EAC, FUL, SMAC, or Medicare Price in footnote #5. This does not however, apply to 340B entities that contract with regular retail pharmacies.**

[7] First DataBank has been used for at least the last ten years.

[8] DOJ prices for the originally identified 437 NDC codes (some no longer active) have been used since 1/1/2001.

**State of:   Wisconsin**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[1] — Pay the lower of each formula listed | | | Physician Brand Medically Necessary Override (DAW) | Dispensing Fee | | Other |
| | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand | Generic | Schedule II[3] | | Traditional | Unit Dose | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1990 – 6/30/1997 | Y | Y | Y | Y | | AWP-10%; DP[2] | AWP-10%; DP[2] | 100% AWP | Y | 4.69[4] | $6.67 | 5,6[7] |
| 7/1/1997 – 6/30/1998 | Y | Y | Y | Y | | AWP-10%; DP[2] | AWP-10%; DP[2] | 100% AWP | Y | 4.78[4] | $6.67 | 5,6[7] |
| 7/1/1998 – 3/31/2000 | Y | Y | Y | Y | | AWP-10%; DP[2] | AWP-10%; DP[2] | 100% AWP | Y | $4.88[4] | $6.94 | 5,6[7] |
| 4/1/2000 – 6/30/2001 | Y | Y | Y | Y | Y[8] | AWP - 10% | AWP - 10% | | Y | $4.88[4] | $6.94 | 5,6[7] |
| 7/1/2001 – 8/14/2003 | Y | Y | Y | Y | Y[8] | AWP - 11.25% | AWP - 11.25% | | Y | $4.88[4] | $6.94 | 5,6[7] |
| 8/15/2003 – 6/30/2004 | Y | Y | Y | Y | Y[8] | AWP - 12% | AWP - 12% | | Y | $4.88[4] | $6.94[9] | 5,6[7] |
| 7/1/2004 – Present | Y | Y | Y | Y | Y[8] | AWP - 13% | AWP - 13% | | Y | $4.88[4] | $6.67 | 5,6[7] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Kimberly Smithers, Medicaid Systems Specialist, 7/3/08, 7/21/08, 7/22/08, 7/24/08, 7/28/08, 8/4/08, 10/16/08, 10/17/08, 10/20/08

1 The State uses First DataBank for pricing.

2 From 7/1/1992 through 03/31/2000, Direct Price for drugs marketed by selected manufacturers: Bristol-Myers Squibb, Wyeth-Ayerst, Merck Sharp & Dohme, and Upjohn.

3 From 1/1/1992 through 03/31/2000, pricing applies to Schedule II drugs that were not on the MAC table.

4 Maximum of two dispensing fees per month.

5 Effective 07/01/1996, the dispensing fees for pharmaceutical care are dependent upon the pharmaceutical care intervention being performed: $9.45 for 1-5 min.; $22.16 for 6-15 min.; $14.68 for 16-30 min.; $40.11 for 31-60 min.; $42.16 for 61-60 min. Effective 04/01/1998, the time allowance for compound drugs is dependent upon the time it takes the pharmacist to complete the compound: $9.45 for 0-5 min.; $14.68 for 6-15 min.; $22.16 for 16-30 min.; $22.16 for 31-60 min.; $22.16 for 60+ min. Compound drugs prior to 1998 were priced manually by pharmacy consultants. With the implementation of the point-of-sale system in 1998, compound drugs could have been priced manually or using the pricing methodologies previously documented.

6 Effective 07/01/95, per prescription drug payment reduction of $0.50 per prescription dispensed.

7 Effective 4/1/1997, dispensing allowance for re-packaging of $0.015/unit.

8 DOJ pricing went into effect for specific drugs beginning on 05/01/2000 and remains in effect through the present.

9 Reimbursement for unit dose dispensing fee was discontinued on 9/1/2003.

06/03/08

**State of:   Wyoming**

**Medicaid Pharmacy Reimbursement Methodology**

**Prescription/Legend Drugs**

| Effective Time Period | "Lower of" Reimbursement Methodology — Pay the lower of each formula listed | | | | Estimated Acquisition Cost (EAC) | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | Brand | Generic | | | Retail | Nursing Home |
| 7/1/2001  –  Present | Y | Y | Y | Y | AWP-11% | AWP-11% | 2 | Y | $5.00 [3] | $5.00 [3] |
| 1/1/1991  –  6/30/2001 | Y | Y | Y | N | AWP-4% [1] | AWP-4% [1] | 1 | Y | $4.70 [1] | $4.70 [1] |

▉ Data taken from Medicaid State Plan Amendments

▉ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

▉ Data provided by Colleen Jones, 5/27/08

[1] State Plan reported the EAC as AWP-11% and the DF as $4.70 = .07(AWP).  Per the Wyoming State Pharmacist, this could not be implemented in the claims processing and pharmacy systems without confusion, so the other formulas were used with the same result. There should be Myers and Stauffer dispensing fee studies that document this.

[2] Beginning in 2002, State began very limited SMAC Program to address some specific NDCs.  A new SMAC Program was implemented in 2003.  NPCs 2002 - 2003 report State MAC pricing for 6 drugs, and NPCs 2004 - 2005/2006 report 1,226 drugs on MAC list.

[3] Although TN 01-004 includes general language only with both the specific EAC formula and dispensing fee amount for legend drugs removed, NPCs 2001 and 2002 report EAC = AWP-11% and $5.00 DF effective 7/1/01.  The $5.00 DF amount (not the EAC) is then formally re-added to the State Plan via TN #02-002, effective 4/1/2002.

DRAFT



**COST CONTAINMENT FOR STATE PRESCRIPTION
DRUG EXPENDITURES**

# From The Office Of State Auditor
# Claire McCaskill

> *Medicaid officials have been slow implementing new
> cost containment initiatives, updating current
> measures and recommending legislative or rule
> changes that are more favorable to the state.*

**Report No. 2002-48**
**June 28, 2002**
**www.auditor.state.mo.us**

PERFORMANCE AUDIT

Office of
Missouri State Auditor
Claire McCaskill

June 2002



**YELLOW SHEET**

## State Medicaid program may pay too much for prescription drugs and reimburse pharmacies more than necessary

Missouri's Medicaid outpatient prescription drug costs have more than doubled in the last 5 years and totaled $770 million in fiscal year 2001.  This audit focuses on the Division of Medical Services' efforts to reduce prescription drugs costs.  Auditors found Missouri has not been as proactive as other states with certain containment programs, such as preferred drug lists or prior authorization.  The following highlights our findings:

### Preferred drug lists help other states save money

Many states are now following practices of most employee health insurance plans in using preferred drug lists to reduce costs.  Physicians who want to prescribe drugs not on the list have to seek prior approval from the Medicaid program.  Michigan and Florida officials estimate these lists will save annually $80 million and $150 million, respectively. Legislation just passed in Missouri's 2002 session allows the division to establish a preferred drug list by January 2003, but division officials predict, in the end, the state rule making process will block its implementation.  (See page 5)

### State prior authorization rules more complicated then federal

Division officials have not placed many drugs in prior authorization status in the last 5 years, partly due to restrictive state rules which exceed federal requirements.  Drugs in this status require a physician seek Medicaid program approval before dispensing them, which often saves costs by resulting in fewer unnecessary prescriptions.  State rules require Missouri-specific clinical and therapeutic analysis before placing a drug in prior authorization.  Federal law only requires a state plan to respond within 24 hours of a request and dispense a 72-hour emergency prescription.  In January 2002, division officials tried to place more drugs in this status, but were blocked from doing so.  (See page 6)

### Outdated pharmacy reimbursement rates raise costs

Each state Medicaid agency determines how pharmacies are reimbursed for acquiring and dispensing drugs for Medicaid recipients.  One way Missouri reaches this price is to use the average wholesale price for a drug less 10.43 percent.  But Missouri has not changed this percentage decrease since 1991 and 19 states use a higher percentage decrease than Missouri.  For example, a Missouri pharmacy would receive a $119.66 reimbursement from Medicaid for a month's supply for the 20 milligram version of Prilosec®, whereas

pharmacies in a state with a 14 percent decrease would receive $115.05 for dispensing the same supply. Overall, if Missouri changed its percentage decrease from 10.43 percent to 14 percent, division records estimated annual savings of $16.4 million. (See page 7)

**Lower reimbursement rate on some drugs could save $1.5 million**

Missouri pays more than necessary on 437 drugs dispensed intravenously to at-home or non-hospitalized chronically ill patients. The overpayment occurs because division officials have not timely implemented new dispensing fees for these drugs which would allow providers to be reimbursed using more accurate drug prices. In May 2000, the federal government provided more accurate average wholesale prices for these drugs, with some prices being 80 percent less than previous prices. Our calculations indicate the state could have saved an estimated $1.5 million ($2 million in drugs costs less $500,000 increase in dispensing fees) on the $8.4 million spent on these drugs in fiscal year 2001 if the more accurate prices had been used. Division officials believe any costs savings from the more accurate drug prices would be completely offset by the higher dispensing fees. (See page 9)

**State to pay pharmacies the nation's highest dispensing fee to offset new tax**

Legislation passed in the 2002 session nearly doubled the dispensing fee paid by the state Medicaid program to pharmacies. The fee increase to $8.04 per prescription from $4.09 would rank as the nation's highest. On average, state Medicaid programs paid a $4.27 fee in 2001. This increase offsets a new 2 percent pharmacy provider tax, also passed in the 2002 session, which would help the state obtain additional federal Medicaid matching funds. Pharmacies would pay about $55.4 million with the new tax, but then receive about $60.4 million from the state in higher dispensing fees. It is uncertain if the federal government will agree to match the tax revenues and the state legislation is not yet signed into law. (See page 10)

**New program director appears to have conflict of interest**

The Department of Social Services hired a pharmacy program director in October 2001 who previously worked as a lobbyist for the Missouri Pharmacy Association and continues to own at least one pharmacy. Department legal staff determined hiring this person did not violate state conflict of interest laws. However, an appearance of a conflict still exists because of the director's continued financial interests in the pharmacy industry and his new position's influence over policy or legislative changes effecting the industry. (See page 15)

**Reports are available on our web site: www.auditor.state.mo.us**

**COST CONTAINMENT FOR
STATE PRESCRIPTION DRUG EXPENDITURES**

**TABLE OF CONTENTS**

<div align="right">

**Page**
</div>

**STATE AUDITOR'S REPORT** ..................................................................................1

**RESULTS AND RECOMMENDATIONS**..................................................................3

1.    Missouri Can Better Contain Medicaid Prescription Drug Costs........................................3

        Conclusion.................................................................................12

        Recommendations .....................................................................12


2.    Pharmacy Program Director Appears to Have a Conflict of Interest ................................15

        Conclusion.................................................................................15

        Recommendation.........................................................................15

**APPENDIXES**

I.      OBJECTIVES, SCOPE AND METHODOLOGY ...........................................................17

II.     BACKGROUND..................................................................................20

III.    TOP 25 MEDICAID OUTPATIENT PRESCRIPTION
        DRUGS  -  FISCAL YEAR 2001 ......................................................................23



# CLAIRE C. McCASKILL
**Missouri State Auditor**

Honorable Bob Holden, Governor
     and
Members of the General Assembly
     and
Kathy Martin, Director
Department of Social Services
Jefferson City, MO 65102

The state's Medicaid prescription drug costs have more than doubled since 1997 and account for $660 million of the $770 million spent by the state in fiscal year 2001 on prescription drugs. The objectives of this audit were to (1) determine total direct and indirect cost of prescription drugs for the state, (2) evaluate the effectiveness of some of the state's efforts to reduce Medicaid drug costs, and (3) evaluate the factors leading to increased drug costs in the Medicaid program.

Missouri's current budget problems and legislative mandates have led to cost control initiatives during the last year. Medicaid officials are implementing a pharmacy enhancement program consisting of various cost containment initiatives. While this program focuses on some pharmacy reimbursement issues, other reimbursement issues are not being addressed or do not include the therapeutic benefit and cost effectiveness of prescribed drugs. We recommend changes to help improve the effectiveness of this program. In addition, the Pharmacy Program Director has an appearance of a conflict of interest that should be resolved.

-1-

The audit was conducted in accordance with applicable standards contained in *Government Auditing Standards,* issued by the Comptroller General of the United States, and included such tests of the procedures and records as were considered appropriate under the circumstances.


Claire McCaskill
State Auditor


February 19, 2002 (fieldwork completion date)

The following auditors contributed to this report:

Director of Audits:    Kirk Boyer
Audit Manager:        Jon Halwes, CPA, CGFM
In-Charge Auditor:    Christina Davis
Audit Staff:          Shad Becker
                      Cindy Elliott
                      Andrea Paul
                      Lori Melton

## RESULTS AND RECOMMENDATIONS

### 1.  Missouri Can Better Contain Medicaid Prescription Drug Costs

Division of Medical Services officials, who run the state's Medicaid program, have not proactively contained drug costs or evaluated pharmacy reimbursements.  In the last 5 years, the state's Medicaid outpatient prescription drugs costs have more than doubled.  While officials are implementing a pharmacy enhancement program, the program currently does not include establishing a preferred drug list which other states use to lower drug costs.  The enhancement initiatives lack emphasis on pharmacy compensation issues.  The following concerns were noted:

- Outdated estimated acquisition prices,
- Higher maximum reimbursement rate for insulin drugs,
- More accurate pricing data on home infusion drugs not being used,
- Pharmacies keeping shared dispensing fees, and
- Inadequate monitoring of transactions related to a federal discount program.

In addition, the implemented or planned initiatives to limit prescriptions to a 31-day supply and not pay for over-the-counter products may not be cost effective.  As a result, Missouri's Medicaid program may be paying too much for some drugs and reimbursing pharmacies more than necessary.

**State prescription drug costs**

The state spent approximately $770 million on prescription drugs during fiscal year 2001.  Medicaid drug costs[1] made up approximately 85 percent of this total, with the majority for outpatient prescriptions.  Table 1.1 shows the prescription drug costs for the state.

---

[1] Medicaid program expenditures are approximately 60 percent paid for from federal funding.  In addition, 60 percent of any Drug Rebates received go to the federal government.

**Table 1.1:  State Prescription Drug Costs Fiscal Year 2001**

| Agency or Program Area | Amount Spent |
|---|---|
| Direct Expenditures: | |
| Medicaid - Outpatient Services[1] | $ 681,377,799 |
| less Medicaid Drug Rebate[2] | (128,352,149) |
| Department of Mental Health | 7,791,114 |
| Department of Health | 2,789,904 |
| Other State Agencies | 1,812,943 |
| Total Direct Costs | 565,419,611 |
| Indirect[3] Expenditures: | |
| Employee Health Insurance | 91,662,982 |
| Medicaid - Managed Care | 62,364,747 |
| Medicaid - Hospital Inpatient[4] | 45,000,000 |
| Inmates | 5,160,557 |
| Total Indirect Costs | 204,188,286 |
| Total Costs | $ 769,607,897 |

[1]  Medicaid program activity is highlighted in yellow.

[2]  Federal law requires drug manufacturers to rebate a portion of the drug costs when purchased through state Medicaid programs.  The rebate is generally between 15 and 20 percent of the drug's cost.

[3]  Costs are built into contract prices.

[4]  Estimated based on fiscal year 1999 data.

Source: statewide accounting system, state agency survey and Medicaid records

Between 1997 and 2001, the cost for Medicaid outpatient prescription drugs in the Medicaid program more than doubled, increasing to $553 million from $268 million.  This increase has been driven by new drugs, more Medicaid recipients, increased use of maintenance drugs,[2] and higher drug prices.  Blind, disabled and elderly Medicaid recipients account for approximately 86 percent of all outpatient prescription drug

> Medicaid drug costs doubled over 5 years

costs.  In fiscal year 2001, the Medicaid program paid $131 million for antipsychotic and antidepressant drugs, before rebates.  Twenty-five brand name prescription drugs accounted for nearly 38 percent of all Medicaid outpatient drug expenditures, which are summarized in Appendix III, page 23.

To help control increasing drug costs, the General Assembly mandated various cost containment initiatives.  One mandate, in December 2000, targeted the rising costs of antiulcer drugs ($48 million spent in fiscal year 2001) by requiring doctors to receive prior authorization before prescribing these drugs.  A second mandate, in fiscal year 2002, required the division to cut pharmacy program expenditures through various division determined initiatives.  The division hired a director in October 2001 to manage the Medicaid pharmacy program and oversee the cost

---

[2]  Maintenance drugs are taken daily by patients to treat conditions such as high blood pressure, high cholesterol and anxiety.

cutting initiatives.   (See Appendix I, page 19 for a summary of the initiatives and their implementation status as of early 2002.)

**Missouri is behind other states in comprehensive cost-containment initiatives**

Missouri has not been as proactive as other states in developing preferred drug lists or requiring prior authorization.  Both a preferred drug list and prior authorization can help control drug costs while not placing program recipients at risk.  These measures would also help program officials better manage use of certain drugs and monitor prescribing practices.

### Preferred drug lists could help contain costs

Recently some Medicaid programs in other states have implemented preferred drug lists, which most people health insurance plans have used for years.  Drugs which are not on these lists may only be prescribed after physicians obtain prior approval from the Medicaid program.  Preferred drug lists often take into account the cost and therapeutic value of a drug.  Missouri's pharmacy enhancement program does not include plans to implement a preferred drug list.  Part of a May 2002 house bill to establish the Department of Social Services budget for fiscal year 2003 would give the Division of Medical Services authorization to establish a preferred drug list prior to January 15, 2003. The Division Director stated that it would be difficult to get such a list approved through the states rule making process and there would be opposition from parties affected by this change.

> Millions in potential saving available

Since early 2001, Florida and Michigan have joined California[3] in establishing preferred drugs lists.  Michigan and Florida officials estimate the lists will save annually $80 million and $150 million, respectively in total state and federal funding.  Other states, including Colorado, Louisiana, and Indiana, are also working on similar programs.  The Missouri Pharmacy Program Director reported to the legislature an estimated annual savings of $32 million in state funding if a preferred drug list is implemented.

Florida's plan requires drug manufacturers to rebate the state an extra 10 percent of a drug's cost, in addition to the regular federal Medicaid rebate, to place products on the preferred drug list.  Drugs from manufacturers unwilling to provide the additional state rebate are only made available to Medicaid recipients on a prior authorization basis.  Florida officials allowed two drug manufacturers to guarantee certain costs savings from disease management programs in lieu of paying the rebate.

Michigan, with similar Medicaid prescription drug costs to Missouri, established a state medical panel to analyze cost and therapeutic data and select at least the two best drugs in each of 40 highest cost categories.  Other drugs in these categories are placed on prior

---

[3] California's Medicaid program began using a preferred drug list in 1990.  Drug manufacturers provide the state a rebate of 10 to 60 percent of the average manufacturer's price in addition to the federal drug rebate.  In fiscal year 2001, California's Medicaid program had $3.2 billion in expenditures for outpatient prescription drugs.  The estimated annual saving from using the preferred drug list was $235 million.

authorization status.  Drugs already less expensive than the preferred medicines are also placed on the preferred drug list.  Manufacturers can also have other products moved to the preferred drug list if they cut prices to match the best-in-class drugs.  The program is used for Medicaid and other state funded healthcare programs.

**Missouri's prior authorization rules are too complicated**

Division officials have not placed many drugs or classes of drugs in prior authorization[4] status in the last five years.  The pharmacy enhancement program proposes expanding the number of drugs on the state's prior authorization list, but restrictive state rules hinder this process.  A prior authorization process is an integral part of any preferred drug list because drugs not on the list may not be prescribed without prior authorization.

Missouri's rules[5] for placing drugs on prior authorization are more complicated and restrictive than federal government requirements.  A division official stated part of the reason the rules are more complicated than necessary is because pharmaceutical industry representatives assisted state officials in drafting the rules 10 years ago.  State rules require Missouri-specific data based on medical and clinical criteria, a public hearing, and an annual review of approved drugs.  Federal law does not require these procedures.  Federal law only requires a state's prior authorization plan respond within 24 hours of a request and allow for dispensing of a 72-hour emergency prescription.  As a result, clinical and therapeutic analysis is not required to place drugs on prior authorization under federal law.  Missouri has used prior authorization as more of a clinical tool to prevent adverse drug interaction for recipients, while other states such as South Carolina, also used it to contain drug costs.

In January 2002, the division attempted to add some antihistamine and antifungal drugs to the state's prior authorization list.  The General Assembly's Joint Committee on Administrative Rules denied this request citing noncompliance with some of the prior authorization requirements.  Division officials believe all requirements were met, but withdrew the request with an intent to submit it again.  As a result, the state lost potential savings by not placing these drugs into prior authorization status.

Our survey of 20 states indicated that certain drugs or drug classes are frequently placed in a prior authorization program.  Product cost was at least one component in the decision to implement prior authorization for the drugs or drug classes in those states.  Table 1.2 lists these drugs or drug classes and the amount the Missouri Medicaid program spent on these drugs or drugs classes in fiscal year 2001.  As of February 2002, only the antiulcer drug class required prior authorization in Missouri.

Vioxx®, Celebrex®, Claritin®, and OxyContin® are among Missouri's top 25 Medicaid drug costs as noted in Appendix III, page 23.  While prior authorization of a drug or drug class

---

[4] A prior authorized drug will be approved for dispensing if the division's detailed algorithm based on clinical data specific to the drug indicates a patient's therapeutic need for it.
[5] Generally established through state agency developed proposals contingent upon the General Assembly's review of the proposed order of rulemaking through the Joint Committee on Administrative Rules.

may result in some increased costs to manage prior authorization requests, these additional costs are more than offset by fewer unnecessary prescriptions for these drugs.

**Table 1.2:  Drug or Drug Classes Other States Require Prior Authorization and Missouri's Cost for These Drugs**

| Drug or Drug Class | Number of States | Missouri's Fiscal Year 2001 Cost |
|---|---|---|
| Antiulcer (Prilosec®, Prevacid®, etc.) | 8 | $ 48,052,775 |
| Cox II Inhibitors (Vioxx® and Celebrex®) | 8 | 22,347,736 |
| Antihistamines (Claritin®, Allegra®, Zyrtec®) | 6 | 13,029,558 |
| OxyContin® | 2 | 9,344,838 |

Source: State survey results and Medicaid data

**Cost containment initiatives lack emphasis on adjusting pharmacy compensation**

Most of the pharmacy enhancement program initiatives do not consider pharmacy reimbursement rates or evaluate appropriateness of pharmacy billings to the program.  One initiative is to expand the number of drugs on the state upper payment list as generic drugs become available for brand-name drugs.[6]  Updating state upper payment limit rates more frequently will help contain the state's drug costs.  These updates will have increasing importance as popular brand-name drugs lose patent protection over the next 5 years and more generic alternatives become available.  Currently, drugs added to the list and the upper limit reimbursement prices are updated on an irregular basis with a planned goal of updating them at least quarterly.  The most recent updates were done in September 2001; and January and May 2002.  Some states surveyed revise drugs and rates on upper payment limit lists more than quarterly.  For example, Nebraska officials do updates every other month and Illinois officials make changes weekly.

However, approximately 80 percent of the expenditures for outpatient prescription drugs received by Medicaid recipients in fiscal year 2001 were for brand-name and generic drugs not eligible for the state upper payment limit list.  Medicaid program officials have not evaluated the pharmacy compensation for these drugs, making it possible the state is paying too much for them.

**Pharmacy reimbursement rates are outdated**

Each state Medicaid agency determines how much pharmacies are reimbursed for the estimated cost involved in acquiring (estimated acquisition price) and dispensing drugs.[7]  This price is based on manufacturers' costs and is generally calculated using two different rates; one rate uses the average wholesale price for a drug less a percentage and the other rate is based on the wholesale acquisition cost plus a percentage.  While most states use one or

---

[6] This is a list of  brand-name drugs with expired patents and associated generic drugs for which the division has established a lower reimbursement limit generally close to the lowest cost generic drug.

[7] See Appendix II, page 20, for a more detailed description of pharmacy reimbursement options.

the other rate, Missouri has used both since July 2001.  Further, the same rates are used for both brand-name and generic drugs.   According to division estimates, each percentage change in these price adjustments impacts expenditures by an estimated $5 million annually.

In addition to using the same price for brand and generic drugs, the average wholesale price percentage decrease used by Missouri may be outdated based on federal reports and discounts used by other states.  Missouri's average wholesale price decrease of 10.43 percent is based on a 10-year old (1991) state-sponsored study of pharmacy wholesale prices. Further, the wholesale acquisition cost increase of 10 percent is based on percentages used in other states and not a state study.

A 1997 federal report[8] based on Missouri pharmacy wholesale prices concluded pharmacy discounts from average wholesale prices were 18.5 percent for brand name drugs and 46.4 percent for generic drugs.  National figures for other states reviewed at that time indicated similar percentage reductions.  A 2001 federal report[9] indicated national pharmacy discounts had increased substantially to 21 percent for brand-name drugs and to 65 percent for generic drugs.   While state officials must include other factors beside wholesaler price discounts when setting estimated acquisition prices, 19 states use a higher average wholesale price percentage decrease than Missouri's 10.43 percent.  One state uses a 15 percent decrease.  If Missouri's percentage decrease was changed from 10.43 percent to 14 percent, division records showed annual savings of $16.4 million.

## Reimbursement rates for insulin drugs are also outdated

The state reimbursed pharmacies $320,000 more than necessary in state fiscal year 2001 as the result of using a higher maximum reimbursement rate for insulin drugs.[10]  The estimated acquisition price used for pharmacy reimbursements for these products is average wholesale price minus 10.43 percent plus 25 percent which is higher than the estimated price used for most drugs (average wholesale price minus 10.43 percent plus a $4.09 dispensing fee per prescription).  Division officials seemed to be unaware of this higher reimbursement rate when we questioned them on the issue.  Officials from three states surveyed indicated they used the same reimbursement rate for insulin drugs as other prescription drug products.  If the same estimated acquisition price had been used for insulin drugs as other prescription drugs in the Medicaid program, the state would have saved $320,000 on the $7.1 million spent on these drugs in fiscal year 2001.

---

[8]  Department of Health and Human Services Office of Inspector General  - *Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Missouri Department of Social Services*  issued January 1997.

[9]  Department of Health and Human Services Office of Inspector General  - *Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the Washington Department of Social and Health Services*  issued November 2001.

[10] Insulin products are considered over-the-counter products for which pharmacies do not receive a dispensing fee.

## Lower reimbursement rates for certain home infusion drugs not used

Missouri continues to pay more than it should on home infusion drugs[11] because division officials have not implemented more accurate drug prices.  In May 2000, the federal Department of Justice provided all states with more accurate average wholesale prices for 437 primarily home infusion dispensed drugs.  Some prices were more than 80 percent less than the average wholesale prices previously reported by pharmaceutical companies.  The state could have saved an estimated $1.5 million on the $8.4 million spent on these 437 drugs in fiscal year 2001 if officials used the more accurate average wholesale prices and a dispensing fee structure similar to one implemented in another state.

Within 2 months of Department of Justice notice of the more accurate average wholesale prices, Utah officials began using the lower drug prices with new dispensing fees.  With the help of infusion specialty providers, Utah officials categorized the 437 drugs into 5 groups appropriate to the preparation and overhead costs for the product.  The new dispensing fees set up for drugs in 4 of the 5 categories ranged from $8.90 to $33.90 per prescription.

> The state could save $1.5 million annually

Missouri officials initially implemented the more accurate prices for provider reimbursement using the normal $4.09 dispensing fee, which was not designed to cover these drugs.  Division officials reversed this decision after home infusion providers threatened to cease services due to insufficient dispensing fees.  Provider personnel admitted the former reimbursement rates exceeded their product acquisition costs, but they used the excess reimbursement to offset the higher dispensing costs of home infusion drugs.  Division officials indicated they plan to use these lower prices again after determining adequate compensation for home infusion services.  While no implementation date has been set, the Division Director stated the necessary changes to implement these prices would be part of the division's fiscal year 2004 budget proposal.

## State is not collecting some pharmacy fees while proposing to increase other fees

For years, division officials have allowed pharmacies to keep some recipient co-payments, known as shared dispensing fees, in lieu of increasing the $4.09 prescription dispensing fee.  Pharmacies kept an estimated $3 million to $6 million in shared dispensing fees in fiscal year 2001.  Certain Medicaid recipients pay an optional shared dispensing fee for pharmacy transactions ranging from 50 cents to $2 based on the cost of the prescription.[12]  However, this compensation is not being considered as part of legislation to establish a pharmacy provider tax and nearly double the dispensing fee to $8.04 per prescription.

Division officials do not maintain any data on the shared dispensing fee amounts kept by pharmacies.   They estimate this fee applies to half of all pharmacy transactions, and

---

[11] Drugs generally dispensed intravenously by health care professionals to patients with chronic illnesses who can live at home or in a non-hospital arrangement.

[12] Children, pregnant women and  institutionalized recipients are exempt from paying the shared dispensing fee. However, no Medicaid recipient can be denied a prescription if he/she cannot pay the shared fee amount.

recipients pay the fee about half of the time.  During fiscal year 2001, the Medicaid program had more than 13 million pharmacy transactions.  We estimate that pharmacies received between $3 million and $6 million based on (1) an average prescription price greater than $10, (2) a shared dispensing fee between $1 and $2 per prescription, and (3) the fee applied to 25 percent of the more than 13 million pharmacy transactions in fiscal year 2001.

The fiscal year 2003 state budget includes a pharmacy provider tax to obtain additional federal Medicaid matching funds although it is uncertain the federal government will match these tax revenues.[13] The budget estimates pharmacies will pay about $55.4 million under a 2 percent tax on their prescription drug business.  However, the budget also shows the state will pay pharmacies $60.4 million in additional dispensing fee compensation.  The dispensing fee would nearly double from $4.09 to $8.04.  If the pharmacy tax is implemented, the state's $8.04 dispensing fee will far exceed fees paid by any other state.  During fiscal year 2001, the average dispensing fee for all state Medicaid programs was $4.27, with the highest being $5.77 in Louisiana.  The $8.04 fee does not include the shared dispensing fees currently retained by pharmacies.  Some states that require recipient co-payments or shared dispensing fees will reduce a pharmacy's transaction reimbursement for the amount the pharmacy receives from a recipient.  However, this situation was not considered by the state under this pharmacy tax/increased dispensing fee legislation.

> $8.04 fee would be nation's highest

### Controls over transactions for a pharmacy discount program need improvement

The state may have lost more than $500,000 in fiscal year 2001 by overpaying some pharmacies or incorrectly billing manufacturers for rebates related to a federal discount drug program.  Section 340B of the Public Health Service Act requires drug manufacturers discount the cost of drugs supplied to certain federally covered entities, and that the entities pass on the discounts by billing Medicaid at the discounted prices.  We focused on approximately 20 pharmacies that received more than 95 percent of the outpatient pharmacy expenditures paid to program participating providers.  The errors occurred because division staff did not determine if program providers billed the state appropriately and did not effectively evaluate the continued participation status of program providers.  As a result, the state (1) did not claim some rebates from pharmaceutical manufacturers, (2) claimed some rebates for ineligible transactions, and (3) failed to receive the required discount from at least three program participating providers.  Table 1.3 summarizes these results.

According to federal officials, discounted prices through this program generally average about 40 percent less than the manufacturers' average wholesale price.  For entities participating in the Section 340B program, the state is not allowed to bill the manufacturer for drug rebates for transactions billed at the discounted rate.  The state has established a computer edit to remove transactions for participating providers from the rebate billing process.

---

[13]  The federal matching funds are estimated at $86.5 million.  The federal government will have to approve a waiver to the state's Medicaid Plan for this tax revenue to qualify for additional matching funds.

**Table 1.3:  Fiscal Year 2001 340B Program Provider Errors**

| Error Type | Number of Providers | Pharmacy Expenditures to Provider | Estimated Value of Errors |
|---|---|---|---|
| Provider failed to bill at discounted rate | 3 | $  1,275,651 | $    389,549 |
| Rebate not claimed | 7[1] | 1,279,297 | 177,502[2] |
| Rebates inappropriately claimed[3] | 1 | 1,157,761 | (40,169)[2] |
| Total | | $  3,712,709 | $    526,882 |

[1] Four of the 7 providers receive only family planning drugs through the 340B program, but all facility transactions are excluded from the rebate process.  These providers billed little or no family planning drugs to the Medicaid program.

[2] These errors may be corrected through billing corrections for any rebates not claimed and the manufacturer billing dispute process.

[3] Provider began participating in the 340B program April 1, 2001.

Source: Medicaid data and discussions with providers

### Two initiatives may be counter-productive and increase costs

In fiscal year 2001, Medicaid program rule changes limited most prescription drugs to a maximum 31-day supply.  Department budget documents also proposed, beginning in fiscal year 2003, not paying for over-the-counter products, except insulin.  These changes could cost the program more, particularly with the proposed increase in dispensing fees to $8 or more per prescription.

The 31-day supply limit prevents many recipients from receiving 90-day prescriptions for maintenance drugs which triples the program's dispensing costs for these recipients.  According to division officials, the theory behind such a policy change is the increased dispensing costs will be offset by less money spent on unused portions of 90-day prescriptions.  Unused drugs may occur if recipients are given 90-day prescriptions for drugs prior to their doctor determining the drug was effective to treat them.  The Pharmacy Program Director stated it was inconclusive whether the Medicaid program saved money with the 31-day supply limit during fiscal year 2001.  At least three of the states surveyed have monthly supply limits, but make an exception for maintenance drugs.  In December 2000, Missouri made this same exception on maintenance drugs for 25,000 Medicaid spenddown[14] recipients.

Missouri and 12 states responding to our survey questions on over-the-counter products currently use payment for these products as a cost containment measure.  A Medicaid program would rather have a physician prescribe a less expensive over-the-counter product than a more expensive prescription product if that product could effectively treat the patient.  During fiscal year 2001, the Medicaid program paid $6.4 million for non-insulin over-the-counter drugs.  Most of these products were for the treatment of lice, indigestion, pain, or iron deficiency.  State officials estimate the Medicaid program will save more than $6 million by not paying for over-the-counter products.  However, if doctors begin prescribing

---

[14] Spenddown is a status given to a recipient whose income is too high to qualify for normal Medicaid benefits but can qualify after incurring a determined amount of medical costs during a three-month period.

prescription drugs for Medicaid recipients when an over-the-counter product would suffice, this potential saving is lost by paying higher prices for prescription drugs. This scenario could occur since Medicaid recipients pay little or no cost for prescription drugs and may tell doctors they cannot afford the prescribed over-the-counter product. In addition, recent news that the popular prescription product Claritin® will be converted to over-the-counter status in late 2002 may require this decision to be modified.

**Conclusion**

Cost containment for Medicaid prescription drug costs must be evaluated on an ongoing basis as changes take place in the pharmaceutical industry and in other state Medicaid programs. The Division of Medical Services has not done all it can to contain Medicaid drug costs. While division officials have faced challenges in restrictive state laws, they have been slow in implementing new cost containment initiatives, updating current initiatives and recommending legislative or rule changes that enhance program effectiveness. Some state Medicaid programs are implementing preferred drug lists which consider therapeutic value and/or cost of drugs being prescribed. Several cost containment measures are currently being implemented with unknown savings. Various pharmacy compensation issues need to be evaluated as part of the pharmacy enhancement program to better contain drug costs.

**Recommendations**

We recommend the Director, Department of Social Services:

1.1   Develop plans to implement a preferred drug list that considers the therapeutic value and cost of drugs.

1.2   Amend the state's Medicaid prior authorization rules to limit unnecessary issues that delay moving drugs or drug classes to a prior authorization basis.

1.3   Update drugs and reimbursement rates on the state upper payment limit list more frequently.

1.4   Update the current estimated acquisition prices and pharmacy dispensing fees. Separate estimated acquisition price computations for generic and brand name drugs should be established as well as eliminating the current higher maximum reimbursement rate for insulin products.

1.5   Implement the lower average wholesale prices for home infusion products with equitable dispensing fees for home infusion services.

1.6   Improve procedures to ensure (1) 340B program providers pass on appropriate discounts to the state and (2) drug rebates are received for all appropriate pharmacy transactions including eligible transactions for providers only receiving some discounted drugs through the program.

1.7     Adjust pharmacy reimbursements for shared dispensing fees retained by pharmacies if the planned pharmacy tax/increased dispensing fee is implemented.

1.8     Closely monitor the cost effectiveness of (1) eliminating 90-day prescription authorization for maintenance drugs and (2) not paying for over-the counter drugs.

**Department of Social Services Responses**

*1.1     Consistent with the mandates of the General Assembly, the Division of Medical Services plans to begin work on a preferred drug list in FY 03.*

*1.2     The Division concurs with the SAO recommendation.  Consistent with the opportunities and constraints of the rulemaking process, the Division is amending the prior authorization rules to make the process more streamlined.*

*1.3     The Division is presently updating the upper payment information globally on a quarterly basis and as needed on an individual product basis.  This is more frequently than other third party payers.  The Division feels it would be impractical to update these limits more frequently.*

*1.4     The Division pointed out to the SAO the pharmacy reimbursement regarding the acquisition prices and the dispensing fees are set through the appropriation process by the General Assembly.  The Division continues to collect information regarding these reimbursement issues for use by the General Assembly in their deliberations.*

*With regard to the insulin products, they are presently subject to the "lower of" test with the AWP plus 25% reimbursement being the maximum allowable reimbursement.  The Division has found few pharmacies billing at this ceiling rate.  However, the Division will change the insulin reimbursement to the standard pharmacy reimbursement methodology approved by the General Assembly.*

*1.5     The Division agrees a change in the reimbursement methodology should occur with respect to the home infusion services.  The Division continues to work on this process and will develop a decision item for consideration in the SFY04 budget.  When implemented, the resulting changes are expected to be revenue neutral for the state and the providers.*

*1.6     The Division has accepted the recommendation of the SAO and is developing guidelines for 340B program providers.*

*The Division policy is to place providers that purchase products through 340B in a system edit (Parm) so claims will not enter the Medicaid rebate system.  When a provider is added to the Parm, all their products are exempt from reporting to Drug Rebate.  The Division will research a system modification to resolve the issue of providers purchasing specific products only through 340B.*

*Any uncollected rebates noted in the review are recoverable and overpayments of rebates will be resolved with the manufacturers during the dispute resolution process.*

1.7    *The shared dispensing fee collection is not required of the recipient to receive services. Federal law will not allow the assessment of the fee as a prerequisite for receiving services.  Pharmacy providers in various areas of the state collect the fee at a different rate. The Division will consider the impact and the collection rate when providing information to the General Assembly for future changes in the pharmacy dispensing fee.*

1.8    *The 30-day prescription limit and limited payment for over-the-counter drugs were mandated by the General Assembly during the appropriation process.  The Division will monitor both for fiscal impact to the state.*

## 2.   Pharmacy Program Director Appears to Have a Conflict of Interest

Prior to being hired by the Department of Social Services in October 2001, the Pharmacy Program Director served as a registered lobbyist for the Missouri Pharmacy Association and continues to own at least one pharmacy.  Division of Medical Services officials did not consult the Missouri Ethics Commission concerning potential conflicts, although they were aware of his business relationships.  The Division Director stated the department's legal staff evaluated the hiring and determined there would be no conflict of interest problem if the hiring took place.  Nevertheless, the pharmacy program is managed by someone with a financial interest in the same industry on which he can influence policy decisions made by his department and the legislature.  Department officials have no assurance that such influence is unbiased or in the state's best interest.

The Pharmacy Program Director said his business interests do not create a conflict of interest because he lacks rule-making authority and does not qualify as a "decision-making public servant" under state law.  However, this Director is in a position to influence program decisions and legislative changes that may impact the profitability of pharmacies, such as proposing changes to pharmacy reimbursement rates.  He needs to be free of unintentional or intentional bias towards the industry.  The Division Director stated the Pharmacy Program Director is providing the state needed expertise to get the pharmacy program in the right direction.

### Conclusion

Department officials should ensure conflicts of interest do not occur.  Issues regarding potential conflicts of interest should be resolved before employees are hired.

### Recommendation

The Director, Department of Social Services:

2.1    Resolve the appearance of a conflict of interest for the Pharmacy Program Director.

### Department of Social Services Responses

2.1    *The Division consulted with the Department's Division of Legal Services regarding the issue of conflict of interest of the Pharmacy Program Director.  The Pharmacy Program Director has filed a full disclosure with the Ethics Commission and has made his holdings clear to all interested parties.  Additionally, the Pharmacy Program Director obtained a legal opinion from his legal counsel and has shared that opinion with the Department and Division.  The opinion indicates no conflict of interest exists.*

*The results of the pharmacy program operations, the decline in industry reimbursement, and the program management statistics all support the fact the Pharmacy Program Director is fulfilling his job requirements without bias or regard to pharmacy or pharmaceutical industry outcomes.  The Pharmacy Program Director has been forthcoming in all recommendations and has delivered on all Division requests with*

*balanced recommendations, which allowed appropriate decisions to be made by the Division and Department administration.*

**APPENDIX I**

## OBJECTIVES, SCOPE AND METHODOLOGY

**Objectives**

The objectives of this audit were to (1) determine total direct and indirect cost of prescription drugs for the state, (2) evaluate the effectiveness of some of the state's efforts to reduce Medicaid drug costs, and (3) evaluate the factors leading to increased drug costs in the Medicaid program.

**Scope and Methodology**

To accomplish the objectives, we:

- Reviewed applicable state and federal laws related to outpatient prescription drug benefits in the state's Medicaid program.

- Reviewed the state's Medicaid pharmacy enhancement program current and planned initiatives. These initiatives and the implementation or planned implementation dates are summarized in Table I.1. Due to delays in implementation of some initiatives, and the timing of our audit, our review focused on the items discussed in the report.

- Interviewed the Pharmacy Program Director and other responsible officials to determine the status of the pharmacy enhancement program initiatives and pharmacy reimbursement processes, and obtained necessary documentation.

- Interviewed officials responsible for various state employee health plans (Missouri Consolidated Health Plan, Department of Conservation, Department of Transportation, and the University of Missouri) to determine the total cost of prescription drugs to the state, and to compare the pharmacy benefits of the employee plans.

- Contacted Medicaid program officials of 20 states to determine how Missouri compares to other states in implementing cost containment initiatives.

- Analyzed Missouri Medicaid pharmacy claims for fiscal years 2000 and 2001 to determine the most prescribed and most expensive drugs to the program, and the reasons for the increase in prescription drug costs.

- Reviewed average wholesale prices, wholesale acquisition costs, and federal and state upper payment limits for selected drugs to understand the pharmacy reimbursement process and how Missouri's reimbursements compare to other states.

- Analyzed pharmacy claims for selected Medicaid providers participating in a federal prescription drug discount program. We identified approximately 20 pharmacies that handled the majority of the program's transactions. For each pharmacy we selected 5 brand-

-17-

**APPENDIX I**

name drugs and compared the reimbursed rate to a computation of the average wholesale price less 10.43 percent plus the $4.09 pharmacy fee.  If the reimbursed rate was 25 to 40 percent less than the estimated normal reimbursement we concluded the pharmacy billed the state at an appropriate discounted rate.  For any other results, we contacted representatives of the pharmacy to determine program participation status.  To evaluate if rebates were correctly billed, we obtained a listing of all providers in Missouri participating in the program.  This listing was compared to a listing of providers in the program maintained by the division whose transactions are not included in drug rebate billings.  The estimates for potential overpayments or rebate over or under billings were adjusted for dispensing fee compensation received by pharmacies.

- To determine the amount potentially overpaid for 51 insulin drugs, we obtained all transactions for these products for fiscal year 2001.  We compared the amount paid for each transaction to a computation of the average wholesale price less 10.43 percent plus the $4.09 pharmacy fee.

- To determine the potential saving for the 437 home infusion products, we obtained the spring 2000 wholesale prices submitted to states by the Department of Justice.  For these 437 drugs in fiscal year 2001, we compared the pharmacy reimbursement for each transaction using the wholesale prices submitted by the Department of Justice to the prices currently being used by the state.  To determine the potential increase in dispensing fee costs, we obtained the dispensing fee structure for these drugs used by Utah, and multiplied that rate less $4.09 times the number of transactions for each drug.  The estimated drug cost savings was $2 million with additional dispensing costs estimated at no more than $500,000.

We conducted our fieldwork between August 2001 and February 2002.

APPENDIX I

**Table I.1:  Medicaid Prescription Drug Cost Containment Initiatives**

| Initiative | Implementation or Planned Implementation Date |
|---|---|
| 31-day maximum supply | December  2000 |
| Expansion of state upper payment limit list | December 2000; September 2001; and January and May 2002[1] |
| Eliminate pay and chase | March 2001 - Halted due to litigation |
| Nursing home credits for returned drugs | July 2001[2] |
| Unique prescriber number | January 2002 |
| Prior authorization expansion | January 2002 - Withdrawn due to rule compliance issues |
| Dose optimization | April 2002 |
| Edits-max quantity/hard edits | June 2002[3] |
| Physician education components | June 2002[3] |
| Disease management | June 2002[3] |
| Patient profiling | June 2002[3] |
| Enhanced retrospective drug utilization | June 2002[3] |
| Additional justification on overrides | March 2002 |
| Provider audits | Fiscal Year 2003 |
| Prior authorization of all new drugs | Fiscal Year 2003 |
| Eliminate over-the- counter, except insulin | Fiscal Year 2003 |
| Pharmacy provider tax | Fiscal Year 2003 |
| Pill splitting | unknown - Reassessing based on fewer products being eligible for splitting than originally planned |

[1] Division officials estimate this initiative saved the program $4.28 million through December 31, 2001.

[2] Division officials estimate this initiative saved the program $100,000 through December 31, 2001.

[3] The initiative is pending installation of Medicaid computer system enhancements which are expected in the fourth quarter of fiscal year 2002.

Source:  Department of Social Services budget documents, discussions with Division of Medical Services officials

APPENDIX II

## BACKGROUND

The Department of Social Services - Division of Medical Services is responsible for administering the state's Medicaid program.  The program is authorized under Title XIX of the federal Social Security Act,[15] and is jointly funded by state and federal funds.  Services provided by the program include those required by federal regulations such as hospital, physician, and skilled nursing home care.  The state's Medicaid program also provides optional services such as dental, prescription drugs, and personal care as authorized by the General Assembly.

The state's Medicaid program provides eligible Missouri residents prescription drug services at nominal or no cost.  The cost for Medicaid outpatient prescription drugs increased $285 million between fiscal year 1997 and 2001 as shown in Table II.1.  These costs are estimated to be $744 million during fiscal year 2002.

**Table II.1:  Medicaid Outpatient Prescription Drug Costs**
**Fiscal Years 1997 to 2001 (in millions)**

|  |  | Fiscal Year | | | | |
|---|---|---|---|---|---|---|
|  |  | 1997 | 1998 | 1999 | 2000 | 2001 |
| Expenditures | $ | 321 | 374 | 469 | 581 | 681 |
| Less rebates |  | (53) | (64) | (84) | (110) | (128) |
| Net expenditures | $ | 268 | 310 | 385 | 471 | 553 |
| Change from prior year |  |  | 16% | 24% | 22% | 17% |

Source:  Medicaid records

**Pharmacy reimbursement options**

Medicaid regulations provide for the pharmacy reimbursement of outpatient drugs using two methods (multiple source and single source).

If a drug is a multiple source drug (brand-name drug and 3 or more generic versions of the drug), then reimbursement is based on the lower of the pharmacist's usual and customary charge to the general public or a federal upper limit amount plus a dispensing fee. The federal upper limit amounts are established by the Department of Health and Human Services - Centers for Medicare and Medicaid Services.  The reimbursed amount for the brand-name and associated generic drugs will be the federal upper payment limit amount no matter what the billed cost of the drug.  The rate is set based on the prices for each product and normally set near the lowest price for any of the products.  Missouri also has established another option (state upper payment limit) which is similar to the federal upper payment limit, but may be set once a brand-name drug

---

[15] Laws governing the Medicaid prescription drug programs are 42 United States Code (USC) Section 1396r-8
   (Payment for covered outpatient drugs) and 13 Code of State Regulation (CSR) 70-20  (Pharmacy Program).

**APPENDIX II**

has at least 1 but generally 2 or more generic versions verses the federal criteria of 3 or more versions. Pharmacy reimbursement is based on the lower of the pharmacist's usual and customary charge to the general public, the state upper payment limit plus a dispensing fee or the federal upper limit amount plus a dispensing fee (if applicable).

If a drug is a single source drug (brand-name drug), or a generic drug for which a state or federal upper limit amount has not been established, then the reimbursement is the lower of the pharmacist's usual and customary charge to the general public or the estimated acquisition cost plus a dispensing fee. Effective July 1, 2001, Missouri uses two potential estimated acquisition prices:

- Average wholesale price (AWP) minus 10.43 percent

- Wholesale acquisition cost (WAC) plus 10 percent

Tables II.2 and II.3 illustrate the reimbursement options and decision process for a one month prescription for two drugs.

**Table II.2:  Pharmacy Reimbursement Options**

| Drug Type | Drug Name | Estimated Acquisition Price | | Upper Payment Limit | |
|---|---|---|---|---|---|
| | | AWP-10.43% | WAC+10% | State | Federal |
| Brand | Prilosec | $ 115.57 | 118.27 | N/A | N/A |
| Generic | Amoxapine | $ 70.05 | 68.82 | 23.40 | 31.72 |

**Table II.3:  Pharmacy Reimbursement Decision**

| Drug Name | Lowest Option + Dispensing Fee[1] | Billed Amount | Reimbursement[2] |
|---|---|---|---|
| Prilosec | $ 119.66 | 115.00 | 115.00 |
| Amoxapine | $ 27.49 | 35.85 | 27.49 |

[1] The lowest cost of the 4 options is chosen and the $4.09 dispensing fee is added to determine the maximum reimbursement amount.

[2] The lower of the amount billed or the maximum reimbursement amount.

Source:  Medicaid drug price data

Figure II.1 describes the reimbursement process to pharmacies for drugs received by Medicaid recipients and the rebate provided by manufacturers to state Medicaid agencies.

APPENDIX II

**Figure II.1:  Description of the Medicaid Reimbursement Process**



**Manufacturers**
Manufacturers primarily distribute their products through drug wholesalers, but also sell directly to pharmacies, hospitals and other bulk purchasers.

Manufacturers establish **wholesale acquisition cost** and **average wholesale price**.

manufacturer to wholesaler transactions

List Price:  **Wholesale Acquisition Cost (WAC)**

Actual Selling Price: **Average Manufacturer's Price  (AMP)**

**Wholesalers**
Wholesalers act as the middlemen that distribute pharmaceuticals from manufacturers to pharmacies

wholesaler to pharmacy transactions
List Price:  **Average Wholesale Price (AWP)**

Actual Selling Price: **Actual Acquisition Cost (AAC)**

**Retail Pharmacies**
Pharmacies dispense prescriptions to Medicaid recipients

Manufacturers Rebate to Medicaid Agency
**15.1 percent of AMP [1] or AMP - Best Price**

[1] applies to brand-name drugs.  Rebate is 11 percent of AMP for generic drugs.

Reimbursement from Medicaid Agency to Pharmacy: **Estimated Acquisition Cost** *(WAC plus a percentage or AWP minus a percentage)* **plus dispensing fee** ($4.09 in Missouri)

**Medicaid Agency**
Cover the pharmaceutical costs of eligible recipients (children, aged, disabled, etc.)

Source:  Department of Health and Human Services - Office of Inspector General; SAO compiled data

APPENDIX III

## TOP 25 MEDICAID OUTPATIENT PRESCRIPTION DRUGS  -  FISCAL YEAR 2001

Table III.1 lists the 25 outpatient prescription drugs the Missouri Medicaid program spent the most for in fiscal year 2001.  These drugs represent nearly 38 percent of the $681,377,799 spent on outpatient prescription drugs that year.

**Table III.1:  Top 25 Medicaid Prescription Drugs - Fiscal Year 2001**

| Brand Name | Amount Spent | Use |
|---|---|---|
| Zyprexa® | $  35,910,411 | Antipsychotic |
| Risperdal® | 22,991,612 | Antipsychotic |
| Prilosec® | 18,806,905 | Stomach Acid Blocker |
| Prevacid® | 14,432,770 | Stomach Acid Blocker |
| Celebrex® | 13,197,253 | Arthritis Treatment |
| Prozac® | 11,847,723 | Antidepressant |
| Zoloft® | 10,886,247 | Antidepressant |
| Depakote® | 10,767,140 | Anticonvulsant |
| Paxil® | 10,420,245 | Antidepressant |
| Lipitor® | 10,022,348 | Cholesterol Lowering Agent |
| Neurontin® | 9,895,260 | Anticonvulsant |
| Oxycontin® | 9,344,838 | Narcotic Pain Reliever |
| Vioxx® | 9,150,483 | Arthritis Treatment |
| Seroquel® | 9,100,210 | Antipsychotic |
| Norvasc® | 6,852,602 | Blood Pressure Reducer |
| Buspar® | 6,436,251 | Antianxiety |
| Claritin® | 6,160,792 | Antihistamine |
| Glucophage® | 6,136,640 | Lowers Blood Sugar |
| Zocor® | 5,294,398 | Cholesterol Lowering Agent |
| Celexa® | 5,200,362 | Antidepressant |
| Ultram® | 5,092,688 | Analgesic Pain Reliever |
| Remeron® | 5,077,321 | Antidepressant |
| Pepcid® | 5,007,771 | Stomach Acid Reducer |
| Zithromax® | 4,926,713 | Antibiotic |
| Effexor® | 4,899,261 | Antidepressant |
| Total | $ 257,858,244 | |

Source: Medicaid program expenditure data

-23-