# EXHIBIT DA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
ex rel. Ven-A-Care of the
Florida Keys, Inc.,

    Plaintiffs,

        v.

Abbott Laboratories et al.,

    Defendants.

**FILED UNDER SEAL**

C.A. No. 1354-Civ-Marcus

## DECLARATION OF MARK A. LAVINE

I, Mark A. Lavine, do state and declare as follows:

1.   I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of Florida. I have been assigned responsibility for handling the above-captioned matter together with Michael Theis, trial attorney, and Joyce Branda, Deputy Director, Commercial Litigation Branch Civil Division, United States Department of Justice, Washington, D.C.

2.   This action was initiated by relator Ven-a-Care of the Florida Keys ("relator"), pursuant to the qui tam provisions of the False Claims Act, as amended, 31 U.S.C. § 3730. The complaint in this action was received by the United States Attorney General on June 26, 1995.

---

[1]   A copy of the United States' Ex Parte Motion For An Extension Of Time as well as the proposed order have been served on relator's counsel. This pleading has been filed in camera because it contains confidential information concerning the United States' investigatory process. Therefore, a copy of this pleading has not been served on relator's counsel.

ABT008-0187

3.    The False Claims Act, 31 U.S.C. § 3730(b)(2), requires
the Government to elect whether to intervene in the <u>qui tam</u>
action within sixty days of its receipt of the Complaint and the
<u>qui tam</u> plaintiff's material evidence in support of the
Complaint, or within such additional time as may be permitted by
order of the Court for good cause shown.  31 U.S.C. § 3730(b)(3).
In this case, the Government has sought and obtained two previous
extensions of the seal period.  Currently, the seal is due to
expire on March 26, 1996 unless extended by order of the Court.

4.    The government, however, is not yet prepared to make an
informed decision regarding intervention in this matter.
Accordingly, we are requesting a further enlargement of 120 days
of the period for intervention.  The United States is undertaking
an independent investigation of the factual basis for the
relator's allegations.  These case is currently being
investigated by investigators and auditors working for by the
Office of Inspector General of the Department of Health and Human
Services ("HHS-IG").

5.    As specified in my last declaration, the relator has
named numerous defendants and effectively made hundreds of
allegations of fraud and false claims relating to Medicare and
Medicaid reimbursement for pharmaceuticals.  Because of the
number of defendants, which includes ten of the largest drug
manufacturers in the world (plus six more that the relator
intends to add in an amended complaint), the number of
pharmaceutical drugs that are the subject of the suit, and

2

ABT008-0188

alleged damages ($2 billion), substantial time and resources are necessary properly to investigate this matter.

6.   During the last 120 day extension of the seal, the assigned attorneys have continued to work with numerous officials at the Health Care Financing Association ("HCFA") and meet with those individuals responsible for establishing reimbursement policies for pharmaceuticals to discuss the merits of the allegations.

7.   In addition, on January 23, 1996, Attorney General Janet Reno, at our request, authorized the service of Civil Investigative Demands ("CIDs"), on two of the named defendants[2]: Abbott Laboratories ("Abbott") and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The CIDs demanded the production of several different categories of documents relevant to the government's investigation of the merits of the qui tam suit, including all documents that discuss or comment upon the policies that Abbott ▮▮▮▮▮ followed in setting of their direct prices, wholesale acquisition cost, or average wholesale price for several specific drugs that are reimbursed by the Medicare program.

8.   During the week of March 4, 1996, the government first began to receive responses to the CIDs. At this point, we have received 6 boxes of documents from Abbott. In addition, Abbott

---

[2]   In order to keep the volume of documents more manageable, only two companies were targeted at this time. It is anticipated that the circumstances of each of the companies are similar enough that information about two companies will be useful for evaluating the case as to all of the companies. The government anticipates serving additional CID's or IG subpoenas on other of the defendants in the immediate future.

3

has informed us that an additional 2700 boxes of documents are available for review at their facilities. ▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ We anticipate that the review by our auditors and investigators of documents responsive to the CIDs could take weeks or months.

9.   We have discussed the proposed extension of the seal with counsel for the relator, who have authorized me to represent that the relator has no objection to this proposed extension.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this _22d_ day of March, 1996.

_____
MARK A. LAVINE

ABT008-0190        L

# EXHIBIT DB

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,        )
ex rel. Ven-A-Care of the        )
Florida Keys, Inc.,              )
                                 )
                                 )
Plaintiffs,                      )
                                 )
           v.                    )
                                 )
Abbott Laboratories et al.,      )
                                 )
        Defendants.              )
                                 )
                                 )
_____)

FILED BY _____ D.C.

NOV 2 1 1996

CARLOS J. ____
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## FILED UNDER SEAL[1]

Case No. 95-1354-Civ-Marcus

**DECLARATION OF
ASSISTANT U.S. ATTORNEY
MARK A. LAVINE IN
SUPPORT OF EXTENSION OF
SEAL THROUGH MARCH 21,
1997**

I, Mark A. Lavine, do state and declare as follows:

1.   I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of Florida. I have been assigned responsibility for handling the above-captioned matter together with Michael Theis, trial attorney, and Joyce Branda, Deputy Director, Commercial Litigation Branch Civil Division, United States Department of Justice, Washington, D.C.

2.   This action was initiated by relator Ven-a-Care of the Florida Keys ("relator"), pursuant to the qui tam provisions of the False Claims Act, as amended, 31 U.S.C. § 3730.  The complaint in this action was received by the United States Attorney General on June 26, 1995.

_____

[1]  A copy of the United States' Ex Parte Motion For An Extension Of Time as well as the proposed order have been served on relator's counsel.  This pleading has been filed in camera because it contains confidential information concerning the United States' investigatory process.  Therefore, a copy of this pleading has not been served on relator's counsel.

ABT008-0160

3.   The False Claims Act, 31 U.S.C. § 3730(b)(2), requires
the Government to elect whether to intervene in the qui tam
action within sixty days of its receipt of the Complaint and the
qui tam plaintiff's material evidence in support of the
Complaint, or within such additional time as may be permitted by
order of the Court for good cause shown.   31 U.S.C. § 3730(b)(3).
In this case, the Government has sought and obtained 4 previous
extensions of the seal period.   Currently, the seal is due to
expire on November 21, 1996 unless extended by order of the
Court.

4.   The United States is undertaking an independent
investigation of the factual basis for the relator's allegations
but is not yet prepared to make an informed decision regarding
intervention in this matter.   Accordingly, we are requesting a
further enlargement of 120 days of the period for intervention.

5.   As specified in my last declaration, the relator has
named numerous defendants and effectively made hundreds of
allegations of fraud and false claims relating to Medicare and
Medicaid reimbursement for pharmaceuticals.   Because of the
number of defendants, which includes ten of the largest drug
manufacturers in the world (plus six more that the relator
intends to add in an amended complaint), the number of
pharmaceutical drugs that are the subject of the suit, and
alleged damages ($2 billion), substantial time and resources are
necessary properly to investigate this matter.

2

ABT008-0161

6.    During the last 120 day extension of the seal, the assigned attorneys have continued to review materials provided by officials at the Health Care Financing Association ("HCFA") who are responsible for establishing reimbursement policies for pharmaceuticals; to confer with the Office of Inspector General for the Department of Health and Human Services ("HHS-OIG") about ongoing audits of Medicare allowances for injectable pharmaceuticals and inhalation drugs; to interview employees of Medicare carriers responsible for implementing HCFA's reimbursement policy; and to consult with representatives of the publications that publish Average Wholesale Price information about the drugs that are the subject of this gui tam suit.

7.    In addition, the government has continued to review documents obtained by Civil Investigative Demand from Abbott Laboratories ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Since we filed our last motion for an extension of the seal, we met with counsel for

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8.    Furthermore, on August 27, 1996, HHS-OIG served an administrative subpoena on a third pharmaceutical corporation, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ requesting the production of documents relevant to the government's investigation of the merits of the gui tam suit, including documents that discuss or comment upon

---

[2]    The gui tam, of course, has not been disclosed to Baxter or Abbott, but the issues raised therein are evident from the types of documents sought in the CIDs.

3

ABT008-0162

the policies that ▮▮▮▮▮▮▮▮▮▮ followed in setting of their average wholesale price for several specific drugs that are reimbursed by the Medicare program.  Counsel for ▮▮▮▮▮▮▮ began producing documents to HHS-OIG on October 7, 1996 but, with the agreement of the United States, have not produced all documents responsive to the subpoena because of the volume of the responsive documents.  We anticipate that additional documents will be produced and reviewed after further negotiations over the scope of the subpoena with counsel for ▮▮▮▮▮▮▮▮.

9.   We have discussed the proposed extension of the seal with counsel for the relator, who has authorized me to represent that the relator has no objection to this proposed extension.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 21st day of November, 1996.

_____
MARK A. LAVINE

4

# EXHIBIT DC

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,          )
ex rel. Ven-A-Care of the          )
Florida Keys, Inc.,                )
                                   )
                                   )
          Plaintiffs,              )
                                   )
             v.                    )
                                   )
Abbott Laboratories et al.,        )
                                   )
          Defendants.              )
                                   )
                                   )
_____)

FILED by _____ D.C.
MAR 2 4 1997
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**FILED UNDER SEAL**[1]

Case No. 95-1354-Civ-Marcus

**DECLARATION OF
ASSISTANT U.S. ATTORNEY
MARK A. LAVINE IN
SUPPORT OF EXTENSION OF
SEAL THROUGH MAY 21,
1997 AND PARTIAL
LIFTING OF SEAL**

I, Mark A. Lavine, do state and declare as follows:

1.    I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of Florida. I have been assigned responsibility for handling the above-captioned matter together with Reed Stephens, trial attorney, and Joyce Branda, Deputy Director, Commercial Litigation Branch Civil Division, United States Department of Justice, Washington, D.C.

2.    This action was initiated by relator Ven-a-Care of the Florida Keys ("relator"), pursuant to the qui tam provisions of the False Claims Act, as amended, 31 U.S.C. § 3730.   The complaint in this action was received by the United States Attorney General on June 26, 1995.

_____

[1]  A copy of the United States' Ex Parte Motion For An Extension Of Time as well as the proposed order have been served on relator's counsel. This pleading has been filed in camera because it contains confidential information concerning the United States' investigatory process. Therefore, a copy of this pleading has not been served on relator's counsel.

3/24/97

ABT008-0147

3.     On March 6, 1997, an Amended Complaint was served on the United States by the relator in which the allegations have grown from 69 to 105 pages. A major restructuring of the defendants has occurred. Only six of the eleven original defendants are still named in the Amended Complaint.

4.     The six defendants who remain in the case are:



5.     The five defendants who have been added to the case are:

6.     The five defendants who have been dropped are 1) Abbott Laboratories ("Abbott"),

7.     The False Claims Act, 31 U.S.C. § 3730(b)(2), requires the Government to elect whether to intervene in the qui tam action within sixty days of its receipt of the Complaint and the qui tam plaintiff's material evidence in support of the Complaint, or within such additional time as may be permitted by

2

ABT008-0148

order of the Court for good cause shown.  31 U.S.C. § 3730(b)(3).
In this case, the Government has sought and obtained 5 previous
extensions of the seal period prior to the filing of the Amended
Complaint.  Currently, the seal is due to expire on March 21,
1997.

    8.    The United States was hopeful that it could comply with
the March 21, 1997 deadline without the need to seek any further
extensions.  However, the filing of the Amended Complaint,
besides triggering a new 60-day period, has also created the need
for the United States to perform additional investigation and
evaluation of the case, especially as to the six new defendants.
Nonetheless, the United States is cognizant of the Court's desire
to move this case forward.  Accordingly, rather than seeking a
120-day extension as we have done in the past, we are requesting
a further enlargement of only 60 days of the period for
intervention.  Likewise, a 60-day extension is commensurate with
the new period which is triggered by the filing of the Amended
Complaint.

    9.    As specified in my last declaration, the relator has
named numerous defendants and effectively made hundreds of
allegations of fraud and false claims relating to Medicare and
Medicaid reimbursement for pharmaceuticals.  Because of the
number of defendants, which includes eleven of the largest drug
manufacturers in the world, the number of pharmaceutical drugs
that are the subject of the suit, and alleged damages ($1

                                3

ABT008-0149

billion), substantial time and resources have been necessary to
properly investigate this matter.

10.   During the last 120 day extension of the seal, the
assigned attorneys have continued to review materials provided by
officials at the Health Care Financing Association ("HCFA") who
are responsible for establishing reimbursement policies for
pharmaceuticals; to confer with the Office of Inspector General
for the Department of Health and Human Services ("HHS-OIG") about
ongoing audits of Medicare allowances for injectable
pharmaceuticals and inhalation drugs; to interview employees of
Medicare carriers responsible for implementing HCFA's
reimbursement policy; and to consult with representatives of the
publications that publish Average Wholesale Price information
about the drugs that are the subject of this qui tam suit.

11.   In addition, the government has continued to review
documents obtained by Civil Investigative Demand from Abbott
Laboratories ████████████████  The government has also
continued to review the documents obtained via an administrative
subpoena served on ████████████████

12.   Unfortunately, two of the three companies from whom the
United States has received documents have been dropped from the
Amended Complaint.  Although it may not be necessary to seek
documents from any of the six new defendants, the United States
does need additional time to evaluate the situation in order to

---

[2]   The qui tam, of course, has not been disclosed to ████████
Abbott ██████ but the issues raised therein are evident from the
types of documents sought in the CIDs.

ABT008-0150

confirm that the underlying scenario is not substantially different.  The same need also exists with respect to the new allegations contained in the Amended Complaint.  Although the allegations are similar in kind to those previously alleged, some of the specifics are different.  For example, the Amended Complaint has added new allegations regarding the use of the Wholesale Acquisition Cost or "WAC" by State Medicaid programs as a basis for setting drug reimbursment prices.  The State Medicaid programs rely upon National Drug Codes or NDC numbers for billing purposes, rather than Medicare's system of HCPCS (Health Care Finance Administration's Common Procedure Coding System, pronounced as "hic-pics").  As a result of the differences, it is necessary to perform some additional analysis and investigation to ensure that nothing significant is overlooked.

13.  The United States also seeks the ability to discuss the allegations of the Complaint and Amended Complaint with the Defendants, to disclose to the Defendants the identity of the relator and to provide a copy of the Complaint or Amended Complaint to the Defendants.  As the end of this process approaches, the United States believes it would be beneficial to speak to the defendants about the case without the impediment of the seal preventing it from speaking frankly.  Although not all of the Defendants would be approached, the United States seeks the discretion to do this as to all defendants in the interest of efficiency and flexibility.  Likewise, the United States seeks

5

ABT008-0151

this partial unsealing as to the defendants named both in the
original Complaint and in the Amended Complaint.

14.  We have discussed the proposed extension and partial
lifting of the seal with counsel for the relator, who has
authorized me to represent that the relator has no objection.

I declare under penalty of perjury that the foregoing is
true and correct.

EXECUTED this _2/st_ day of March, 1997.

_____
MARK A. LAVINE

6

ABT008-0152      L

# EXHIBIT DD

NIGHT BOX
FILED

MAY - 7 1997

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA,             )
ex rel. Ven-A-Care of the             )
Florida Keys, Inc.,                   )   Case No. 95-1354-Civ-Marcus
                                      )
                                      )
                                      )   **FILED UNDER SEAL**
                                      )
                                      )
            Plaintiffs,               )
                                      )
                                      )
                                      )
        v.                            )
                                      )
                                      )   **UNITED STATES AGREED MOTION**
                                      )   **FOR PARTIAL LIFTING OF THE**
Abbott Laboratories; ▮▮▮▮▮▮           )   **SEAL TO DISCLOSE TO STATE**
                         et al.,      )   **ATTORNEYS GENERAL AND**
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                     )   **MEMORANDUM OF LAW**
                                      )
            Defendants.               )
——————————————————————————————————————)

The United States, pursuant to 31 U.S.C. § 3730(b)(3),
presents to this Court, under seal, this agreed motion for a
partial lifting of the seal in order to disclose these
proceedings to the Attorneys General of all 50 States, and
states:

1.   On March 6, 1997, an Amended Complaint was served on the
United States by the relator.  The Amended Complaint contains new
allegations regarding the use of the Wholesale Acquisition Cost
("WAC"), Direct Price, Average Acquisition Cost ("AAC"), Estimated
Acquisition Cost ("AAC") and Average Wholesale Price ("AWP") by

5/7/97

ABT008-0659

State Medicaid programs as a basis for setting drug reimbursement prices.  The State Medicaid programs rely upon National Drug Codes or NDC numbers for billing purposes, rather than Medicare's system of HCPCS (Health Care Finance Administration's Common Procedure Coding System, pronounced as "hic-pics").  The Amended Complaint alleges that the losses to the Medicaid programs in this country for the specified infusion and injectable drugs are over $500 million per year.  It is alleged that the forgoing losses were caused by the misrepresentations of the defendant drug manufacturers regarding the prices of the specified infusion and injectable drugs.

2.  This Court has jurisdiction over the forgoing claims under 31 U.S.C. §3732(b) which provides jurisdiction in United States District Courts for any action brought under the laws of any state for the recovery of funds paid by that state if the action arises from the same transaction or occurrences set forth in the main case.  In this case, a portion of the funds paid by the Medicaid program of each state for the specified infusion and injectable drugs (up to approximately 50% of the total payment) was paid from state money.  The other portion of the funds was provided by the federal government.  Thus, jurisdiction lies in this Court for the damages to the individual states and for the damages to the United States.

2

3.   Although the Court previously issued an order partially
lifting the seal in order to disclose the Amended Complaint to
the defendants, the partial lifting did not allow for disclosure
to any other persons or entities.

4.   It is in the interest of justice that the Attorney
General of each State defrauded of their respective portion of
the Medicaid payments paid for the specified infusion and
injectable drugs be put on notice of these proceedings in order
for the state to be able to identify the amount of the losses of
that state and to advocate the recovery of that state's losses
from the fraud schemes set forth in the Amended Complaint.  It is
also hoped that the individual states can assist in the
investigation or otherwise share information in a helpful manner.
Thus, the United States seeks a partial lifting of the seal in
this case so as to disclose the existence of these proceeding to
the Attorneys General of all 50 states (as well as to their
respective investigative and prosecutorial agencies, as
necessary).

5.   The United States also seeks authorization to discuss
the allegations of the Complaint and Amended Complaint with the
Attorneys General, to disclose to the Attorneys General the
identity of the Relator and to provide a copy of the Complaint or
Amended Complaint.  Although not all of the 50 Attorneys General

3

ABT008-0661

would be immediately approached, the United States seeks the
discretion to do this as to all 50 states in the interest of
efficiency and flexibility.

6.  The Relators are in full agreement with the relief
requested herein.

Wherefore, the United States requests that the Court grant
its motion for partial lifting of the seal and authorize the
United States and the Relators to discuss the allegations of the
Complaint and Amended Complaint with the Attorneys General of any
of the 50 states, to disclose to the Attorneys General the
identity of the Relator and to provide to the Attorneys General a
copy of the Complaint or Amended Complaint, and such other relief
as the Court deems proper.

                            Respectfully submitted,

                            FRANK W. HUNGER
                            Assistant Attorney General

                            WILLIAM A. KEEFER
                            UNITED STATES ATTORNEY

              By:    _____
                            MARK A. LAVINE
                            Assistant U.S. Attorney
                            99 N.E. 4th Street
                            Miami, FL  33132
                            (305) 536-5472 Tel.
                            (305) 536-4101 Fax
                            Fla. Bar No. 648876

                                    4

ABT008-0662

MICHAEL F. HERTZ
JOYCE R. BRANDA
REED STEPHENS
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C.   20044
(202) 616-1437

5

ABT008-0663

## CERTIFICATE OF SERVICE

IT IS HEREBY certified that a true and correct copy of the foregoing was mailed this ____7ᵗʰ____ day of May, 1997 to:

Atlee Wampler, III
James J. Breen
Wampler, Buchanan and Breen
777 Brickell Ave.
Miami, FL  33131

_____
ASSISTANT UNITED STATES ATTORNEY

6

ABT008-0664          L

# EXHIBIT DE

FILED BY_____.D.C

97 MAY 16 AM II: 30

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,              )
ex rel. Ven-A-Care of the              )
Florida Keys, Inc.,                    )      Case No. 95-1354-Civ-Marcus
                                       )
                                       )      **FILED UNDER SEAL**
              Plaintiffs,              )
                                       )
              v.                       )
                                       )
Abbott Laboratories;                   )
                            et al., )
                                       )
              Defendants.              )
_____

UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
UNOPPOSED REQUEST FOR A NINETY DAY EXTENSION
OF TIME TO ELECT WHETHER TO INTERVENE

Plaintiff, the United States of America ("the Government")
hereby respectfully submits, pursuant to 31 U.S.C. § 3730(b)(3)
of the False Claims Act, 31 U.S.C. § 3729 et seq., the following
memorandum in support of its unopposed request for an Order
providing for a additional ninety days extension of the time in
which the United States must elect whether to intervene.  The
additional ninety days will permit the Government time to
disclose the allegations of the qui tam complaint to

ABT008-0642

representatives of the Offices of Attorney General, Medicaid
Fraud Control Units, and Medicaid Reimbursement Offices for the
fifty states and the District of Columbia.  The Government's
recent motion to partially lift the seal inadvertently failed to
include the necessary request for extension of the intervention
deadline.  As set forth in the accompanying Memorandum of Law in
support of the motion, good cause exists for a ninety day
extension of time to elect whether to intervene in this qui tam
matter.

## STATEMENT

The Court previously extended the seal in this matter
through May 21, 1997 based upon the Government's need for
additional time to investigate the Medicaid allegations and the
several new defendants named in the Amended Complaint for this
complicated and difficult case.  The filing of the amended
complaint triggered a new 60-day evaluatory period for the
Government.  Since the Court's last Order granting the United
States' previous extension request, the Government's attorneys
have met at length with the relator's representatives and its
attorneys to review the new allegations.  As a result of the
meeting and subsequent discussions, additional lines of inquiry
regarding the alleged Medicaid fraud have become apparent.  In
addition, the President recently offered legislation for

ABT008-0643

consideration by Congress which is intended to address the problems caused by the current Average Wholesale Price system.

Since the filing of the relators' Amended Complaint, the Government has met with officials at the State of New Jersey's Medicaid office and reviewed a large number of pharmaceutical company records and correspondence sent by those companies to the State's Medicaid office.  This review is the first of several Medicaid document reviews compelled by the allegations in the Amended Complaint before the United States will be able to make an informed intervention decision.[1]  A meeting with Florida Medicaid officials is scheduled for the week of May 21st. Because of the Court's Order, granting the Government's request to partially lift the seal, this meeting will be much more helpful to the Government's investigation of the Medicaid-related allegations.

This memorandum demonstrates that good cause exists to grant the United States' motion which is not opposed by the relator.

ARGUMENT

A.   Good Cause Exists for a Ninety Day
     Extension of the Time to Elect to Intervene

The False Claims Act permits extensions of time, for good cause shown, to allow the Government to complete its evaluation of the allegations contained in a qui tam complaint in order to

---

[1]    The seal on the qui tam complaint was not compromised by this meeting.

reach an informed decision as to whether or not to intervene in the case.  The _qui tam_ provisions of the False Claims Act provide, in pertinent, part that:

> (2)  A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for <u>at least</u> 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

> (3)  <u>The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2)</u>.

31 U.S.C. § 3730(b)(2) and § 3730(b)(3) (emphasis added).

Here, the relator alleges losses not just by the federal government's Medicare program but also losses across the board by every states' Medicaid program.  While the Government does not propose the lengthy extension necessary to contact every states' Office of Attorney General, the Government believes that ninety days is sufficient to permit meaningful contacts with the knowledgeable authorities in enough states to allow a meaningful assessment of the Medicaid fraud allegations.  Also, the President's proposed legislation addressing the Average Wholesale Price problem provides an alternative avenue for having the immediate problem addressed independent of this litigation.

The relator's counsel has been consulted about this request and does not oppose the ninety day extension of the United States' time to elect whether to intervene.

CONCLUSION

For the above reasons, the United States respectfully requests that its unopposed request for a ninety day extension of time to elect whether to intervene.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

WILLIAM A. KEEFER
UNITED STATES ATTORNEY

By: _____ (as authorized)
                                          by TRS
MARK A. LAVINE
Assistant U.S. Attorney
99 N.E. 4th Street
Miami, FL  33132
(305) 536-5472 Tel.
(305) 536-4101 Fax
Fla. Bar No. 643876

_____
MICHAEL F. HERTZ
JOYCE R. BRANDA
T. REED STEPHENS
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 307-0404

May 14, 1997

ABT008-0646

# EXHIBIT DF

FILED BY_____ D.C.

97 AUG 20  AM II: 10

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,        )
ex rel. Ven-A-Care of the        )
Florida Keys, Inc.,              )      Case No. 95-1354-Civ-Marcus
                                 )
                                 )      **FILED UNDER SEAL**
                                 )
                                 )
              Plaintiffs,        )
                                 )
                                 )
           v.                    )
                                 )
                                 )      **UNITED STATES'**
                                 )      **STATUS REPORT**
Abbott Laboratories;             )
                       et al.,   )
                                 )
              Defendants.        )
_____)

        The United States presents to this Court, ex parte and under
seal, its status report in the above-referenced case and states:

        Substantial activity has occurred since the United States
last brought this matter before the Court.  For example, many
meetings and conferences have been held with the representatives
of the Medicaid programs of the states of Florida, Texas and New
Jersey.  Another meeting is scheduled for August 21, 1997 with
representatives of the Medicaid program for Alabama.  Preliminary

8/20/97

ABT008-0354

discussions have been held with representatives of the Medicaid programs of other states as well.  The meetings have been productive, particularly with regard to enlisting the aid of each state in searching for relevant information and data.

A first wave of documentary evidence was recently received from the State of Texas.  The documents relate to representations made by several of the defendants to the Texas Medicaid program with regard to their drug prices.  Those documents have been reviewed and follow-up discussions have been held to request additional materials from Texas which are maintained in archives which were not as easily accessible as the first group of documents.

The State of Florida has provided the United States with computer data regarding the billings which it has received for many of the drugs at issue.  Although the computer information was analyzed in part and was very helpful, the analysis could not be completed because the data needed to be revised.  The revised data has not yet been received and further analysis has been delayed.

Most importantly, the Health and Human Services Office of Inspector General is in the process of preparing "Inspector General" subpoenas for service upon each of the named defendants. The subpoenas are currently being reviewed for approval by the appropriate officials in Washington, D.C.  Once the subpoenas have been approved, it is anticipated that they will be quickly

2

ABT008-0355

issued and served upon each of the 24 defendants.  The subpoenas
will seek, among other things, documents which reflect the prices
at which the drugs were actually sold as well as all
communications with any Medicaid program regarding price
representations.  Also, the subpoenas are not going to be
"broadsides" seeking hundreds of thousands of pages of documents,
but instead, targeted requests that relate directly to the
evidence provided by Florida and Texas Medicaid.  Receipt of
corroborating evidence, pursuant to the subpoenas, will greatly
advance the investigation and will enable the United States to
narrowly tailor the issues relevant to the intervention
decision..

Most recently, the Plaintiff in this action has now filed a
Second Amended Complaint.  The Second Amended Complaint has
expanded the allegations from 105 to 222 pages and names a total
of 24 pharmaceutical companies as defendants.  The Court
previously extended the seal in this matter through August 19,
1997 based upon the government's need for additional time to
investigate this complicated and difficult case.  As set forth in
the Relator's motion accompanying the Second Amended Complaint,
the filing of the second amended complaint has thereby triggered
a new 60-day evaluatory period for the government.  The United
States will endeavor to comply with the new deadline set thereby.

3

ABT008-0356

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

WILLIAM A. KEEFER
UNITED STATES ATTORNEY

By:

MARK A. LAVINE
Assistant U.S. Attorney
99 N.E. 4th Street
Miami, FL  33132
(305) 536-5472 Tel.
(305) 536-4101 Fax
Fla. Bar No. 648876

MICHAEL F. HERTZ
JOYCE R. BRANDA
T. REED STEPHENS
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 616-1437

4

ABT008-0357

## CERTIFICATE OF SERVICE

IT IS HEREBY certified that a true and correct copy of the foregoing was mailed this _20ʳ_ day of March, 1997 to:

Atlee Wampler, III
James J. Breen
Wampler, Buchanan and Breen
777 Brickell Ave.
Miami, FL  33131

_____
ASSISTANT UNITED STATES ATTORNEY

5

ABT008-0358          L

# EXHIBIT DG

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA, )
ex rel. Ven-A-Care of the )
Florida Keys, Inc., ) Case No. 95-1354-Civ-Kehoe
)
        Plaintiffs, ) **DECLARATION OF T. REED**
) **STEPHENS IN SUPPORT OF**
) **UNITED STATES' UNOPPOSED**
        v. ) **APPLICATION  FOR EXTENSION OF**
) **TIME TO ELECT WHETHER TO**
) **INTERVENE IN QUI TAM ACTION**
Abbott Laboratories; )
              et al., )
)
    Defendants. )
_____ )

I, T. Reed Stephens, do state and declare as follows:

    1. I am a trial attorney in the Commercial Litigation Branch, Civil Division in the United

States Department of Justice, and I am assigned primary responsibility for the above-captioned

qui tam litigation. I make the instant declaration in support of the United States' Application for

an Extension of Time to Elect to Intervene in the above-captioned litigation.

    2. This case is a qui tam action against numerous pharmaceutical manufacturers —

Dey Labs., Glaxo Wellcome Inc.,

Bayer, Inc.,

SmithKline Beacham, Inc.,

— initiated by relator Ven-A-Care of the Florida Keys, Inc.

("relator"), pursuant to the False Claims Act, as amended, 31 U.S.C. § 3730(b).

ABT008-1066

3. Relator is a provider of a broad class of specialty drugs that generally cannot be purchased over the counter by the public. These drugs which are not orally administered are often used to treat life-threatening or terminal illnesses, such as AIDS, cancer, and hemophilia. These drugs are typically administered by an injection, IV infusion, or by inhalation.

4. Relator alleges in its complaint that the defendant drug manufacturers inflate the reported prices of the drugs so that government payors, such as Medicare, Medicaid, and TRICARE, pay fraudulently inflated reimbursement to providers who buy these drugs and, in turn, supply them to patients suffering from these serious illnesses. The defendant drug manufacturers' alleged incentive for carrying on this scheme is to attract providers to purchase their drugs. Even though the provider — not the manufacturer — receives the inflated reimbursement payment from the government, the manufacturer benefits greatly through increased profit caused by increases in market share for its drugs.

5. Relator alleges that defendants are able to influence drug brand purchases by providers because they control the basis for Medicare and Medicaid reimbursement for its products -- the reported price. The relator alleges that reported prices for Medicaid and Medicare drugs come in two classes:  Average Wholesale Price ("AWP") and Wholesale Acquisition Cost ("WAC"). The defendant drug manufacturers allegedly determine -- without any government or private insurance input -- what the AWP and WAC will be for their respective products.

6. In March 1998, the United States and relator came before the Court to request additional time to investigate this matter and pursue settlement negotiations with the defendants. Counsel for the United States identified numerous investigative tasks that the United States would pursue over the course of the extension period. In response, the Court extended the time

- 2 -

ABT008-1067

to make an intervention election until November 23, 1998. During this most recent extension period, the United States has performed virtually all of the tasks which it identified for the Court during the March 1998 hearing. The one task of that list not yet completed is the conducting of meetings with counsel for all 23 defendants. The following is a recitation of a portion of plaintiff's activities since the hearing in March.

7. On March 19 and 20, 1998, counsel for the United States and Relator addressed the National Association of Medicaid Fraud Control Unit Directors during its annual meeting in Washington, D.C. At this time, the United States and Relator shared hundreds of pages of documents with the NAMFCU members who have responsibility for assessing Medicaid fraud allegations affecting their respective states. The membership of NAMFCU has been instrumental in past False Claims Act matters involving multiple jurisdictions because of its ability to efficiently obtain data on potential damages, identify witnesses on the state level, obtain authority to compromise claims or initiate civil actions. In the instant <u>qui tam</u>, which involves 24 defendants, NAMFCU's ongoing participation is necessary to facilitate the orderly resolution or litigation of this matter.

8. The United States sought and obtained from the Department of Health and Human Services Office of Inspector General ("HHS-OIG") additional subpoenas which were served in July 1998 upon the Hearst Corporation (controlling entity for First DataBank and Medi-Span) and Medical Economics (controlling entity for the RedBook), the two entities that the defendants utilize to publish the allegedly false prices to the state and federal governments. First DataBank has cooperated to some extent with the subpoena. Medical Economics has delayed compliance with the subpoena served upon it.

- 3 -

ABT008-1068

9. Throughout May, June, and July, Counsel for the United States maintained a steady line of communication with the directors of the Medicaid Fraud Control Units of over a dozen states including Florida, Arizona, North Carolina, Maryland, Washington state, Rhode Island, and Illinois, as well as the Medicaid pharmacy personnel in many of these states. These communications were coordinated by NAMFCU. The United States has also committed substantial financial resources to creating electronic document storage and review databases for the tens of thousands of pages of documents produced by the defendants pursuant to the subpoenas served upon them by HHS-OIG.

10. Counsel for the United States entered into an informal working relationship with the Executive Committee of NAMFCU in order to facilitate the identification of witnesses and evidence relevant to the allegations. This work has enabled the United States and the Relator to organize a substantial amount of information as a prelude to substantive discussions with the defendants. In particular, the NAMFCU representatives have been gathering from all 50 states the specific pieces of information relating to the allegedly fraudulent reimbursement claims submitted by the providers who purchased defendants' drugs. See Declaration of Carolyn McElroy, Director Maryland Medicaid Fraud Control Unit, Accompanying the Motion for Extension of Time. This activity continues to the present and is vital to the efficient resolution of this qui tam matter since the allegations include all 50 states as well as the federal Medicare program.

11. In July 1998, counsel for the United States initiated contacts with the defendants' counsel regarding the evidence produced by the defendants. Counsel for the United States conducted telephone conferences with counsel for one of the defendants during the weeks of July

- 4 -

ABT008-1069

13th and the 20th.

12.  In August 1998, counsel for the United States initiated the first of a series of telephone conferences with counsel for Medical Economics in an effort to obtain its good faith compliance with the subpoena served upon it.  To date, Medical Economics has produced only one document in response to the subpoena.  Also during August, during the week of August 10th, counsel for the United States conducted a telephone conference with counsel for another defendant.

13.  On September 1, 1998, counsel for the United States met with Relator and its counsel in Miami, Florida to review documents produced by defendants and to prepare for the first settlement conference with one of the defendants.

14.  On September 10, 1998, counsel for the United States and Relator and its counsel met with representatives of the state of Illinois in Chicago, Illinois, to obtain additional assistance in gathering evidence regarding the qui tam matter.

15.  On September 16, 1998, counsel for the United States, for the Department of Health and Human Services, and for the States of Maryland and Washington (representing all 47 members of NAMFCU) conducted a five hour settlement conference with counsel for one of the defendants in Washington, D.C.  The meeting yielded sufficient progress to warrant scheduling a second meeting for the following week.

16.  On September 14, 1998, counsel for the United States and the Department of Health and Human Services Office of Inspector General again attempted to negotiate Medical Economics' compliance with the OIG subpoena served upon it.

17.  During the week of September 14th, counsel for the United States also initiated

- 5 -

discussions with the Food and Drug Administration regarding evidence regarding the subject of the September 14th settlement conference.

18. On September 24th, a second settlement conference was conducted with counsel for the defendant with whom lengthy discussions were held on September 16th.

19. On October 8, 1998, counsel for the United States met with counsel for a different defendant in Miami, Florida to discuss the qui tam allegations. In addition, to presenting its initial responses to the allegations, defense counsel inquired as to how much time was available to it before the qui tam intervention deadline.

20. On October 14, 1998, counsel for the United States, for the HHS-OIG, and NAMFCU met with counsel for a third defendant in Washington, D.C. to discuss the qui tam allegations against it. Defense counsel also inquired about the intervention deadline and its opportunity to rebut the evidence.

21. On October 19, 1998, Relator and its counsel traveled to San Diego, California to share information with representatives of the state of California. Counsel for the United States participated in the first day of the meeting by telephone. The meeting resulted in additional cooperation and assistance being pledged by the state of California.

22. On October 20, 1998, counsel for the United States met again with counsel for the second defendant in Washington, D.C. to hear defense counsel's partial rebuttal of the evidence. Defense counsel also disclosed that it had hundreds of pages in its possession that it was now prepared to turn over to the United States.

23. After meeting with Defense Contract Audit Agency and Defense Criminal Investigative Service representatives in Miami, Florida on October 21, 1998, counsel for the

- 6 -

United States returned to Washington, D.C. to meet again with the second defendant's counsel on
October 23, 1998. At that time, counsel for the United States reviewed several hundred pages of
newly produced documents relevant to the qui tam allegations.

24. During the week of October 19, 1998, counsel for the United States contacted
counsel for a fourth defendant to discuss the qui tam allegations. Defense counsel stated that it
would review its records and formulate a response to the evidence and the allegations.
Defendant has, to date, not offered any formal rebuttal to the evidence.

25. On October 28, 1998, counsel for the United States, for the HHS-OIG met with
counsel for a fifth defendant in Washington, D.C. to discuss the qui tam allegations for three
hours. Despite having had months to interview company employees and review its own records,
defense counsel professed to having no actual knowledge of its client's potential responses to the
evidence presented by the United States at this meeting. Defense counsel inquired about the
intervention deadline however.

26. On October 30, 1998, counsel for the United States and for the HHS-OIG conducted
a telephone conference with a law firm that represents five other defendants in this matter.
Counsel for the United States expressed concern regarding the possible conflict of interest in the
multiple representations then disclosed the qui tam allegations to defense counsel. Defense
counsel, in this instance as well, professed ignorance as to what factual responses its five clients
would have to the evidence presented despite having had an open line of communication to
counsel for the United States since the service of the HHS-OIG subpoenas in October 1997.

27. On November 4, 1998, counsel for the United States and Relator and its counsel met
with representatives of the Office of Attorney General of the State of New York in New York

- 7 -

City to obtain specific additional assistance and cooperation in investigating the qui tam allegations.

28. In addition, on November 4, 1998, counsel for the United States met again with counsel for the first defendant in New York, New York. At that time, defense counsel presented a second settlement proposal that may successfully address not only the financial issues but also may provide a regulatory blueprint for resolving the regulatory issues raised by the qui tam litigation. Additional meetings are necessary, and defense counsel have asserted that their client has yet to work out all settlement issues internally.

29. On November 4, 1998, counsel for the United States interviewed a key employee of a non-party drug manufacturer to learn how that company's drug pricing practices differed from the defendant drug manufacturers.

30. On November 10, 1998, counsel for the United States, HHS-OIG, and NAMFCU met with counsel for the third defendant in order to receive from defendant a more detailed presentation of its defenses. Despite this presentation, the third defendant has yet to make available any witnesses for interview in support of its purported defenses. At this meeting, counsel requested an additional meeting during the week of November 23rd. The meeting has since been confirmed

31. On November 12, 1998, counsel for the United States and for HHS-OIG met with counsel for the fifth defendant in Washington, D.C. to discuss in further detail the qui tam allegations. Although counsel for the United States first spoke to the defendant's in-house counsel three weeks prior to the meeting date, defense counsel was unable to provide any information to the United States regarding the evidence or identities of witnesses who could

- 8 -

ABT008-1073

potentially support defendant's defense theories. At the end of the meeting, defense counsel

specifically stated that it would support the United States' request for an extension of the seal.

32. On November 13, 1998, counsel for the United States and NAMFCU representatives

met with counsel for First DataBank, a subpoenaed non-party, in New York City. The purpose

of the meeting was to obtain press for further compliance with the HHS-OIG subpoena and

obtain an explanation of how First DataBank goes about obtaining the pricing information that it

publishes to the public on behalf of the defendants.

33. Counsel for the second defendant has scheduled a meeting with Counsel for the

United States on November 17th because of concerns that it will not have the opportunity to

make a full rebuttal presentation prior to the intervention deadline.

34. In all, Counsel for the United States has conducted in the past 60 days alone nine

face-to-face meetings with counsel for five of the defendants. Two additional meetings are

currently scheduled within the next ten days. In addition, Counsel for the United States

conducted a three hour conference call with the law firm representing five other defendants and a

face-to-face meeting with a crucial subpoenaed non-party. The Civil Division's policy is

generally to afford a defendant an opportunity to be apprized of the False Claims Act allegations

and make a substantive response before the government makes its election to intervene in a

matter such as this. To date, the defendants have insisted mostly on face-to-face meetings with

Counsel for the United States. The sheer volume of defendants has, however, made it impossible

for Counsel for the United States — despite its best efforts — to give a meaningful opportunity to

each of the 23 defendants. Additional time is needed to complete this process which will allow

all parties to fully frame the legal and factual issues. There are several tasks that the Counsel for

- 9 -

the United States will perform by April 1999 if the Court grants the instant unopposed request for extension.

35.  The United States will (1) continue its settlement negotiations with defendants who have communicated good faith offers of settlement, (2) continue to pursue opportunities to interview the witnesses represented by the various defense counsel and witnesses employed by non-parties, First DataBank and Medical Economics, (3) continue to meet with each defendant's counsel so that the defendant can be fully informed of the qui tam allegations and be given a reasonable time in which to respond to the evidence and the allegations.  At the current rate of nearly one meeting per week, we will have an opportunity to conduct at least one substantive meeting with each defendant by mid-January.  The remaining 90 days of the 150 period is intended to provide time for follow-up communications of a substantive nature between the parties.  These follow-up communications include the witness interviews referenced above as well as the settlement negotiations.

36.  To date, no defendant has expressed any reservations regarding the continuance of the seal.  To the contrary, the defendants — rather than asserting prejudice at the continuance — have, instead, suggested that they need additional time to rebut the allegations prior to the November 1998 intervention deadline.  This circumstance has been caused primarily by the number of defendants (several of which were named for the first time when the qui tam complaint was amended in August 1997) named by the relator.

37.  The United States and the various state Medicaid programs are also continuing to work on efforts to mitigate further the damages caused by the alleged scheme to defraud the state and federal healthcare programs.  For example, the current settlement negotiations have led to at

- 10 -

ABT008-1075

least one proposal from a defendant that could allow for substantial mitigation of damages for certain drugs identified in the complaint. Further, the McElroy Affidavit gives additional information on the state level efforts to achieve regulatory changes — with the assistance of defendants — that mitigate the damages. The lifting of the seal at this time could result in a lost opportunity that likely would not be available during the first several months of the litigation.

38. I have discussed the instant extension request with counsel for relator. Relator does not object to the request for a 150 day extension.

I declare under penalty of perjury that the foregoing is true and correct.

T. Reed Stephens

Dated: November 16, 1998

- 11 -

ABT008-1076

# EXHIBIT DH

FILED

APR 22 1999

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,       )
ex rel. Ven-A-Care of the       )
Florida Keys, Inc.,             )       Case No. 95-1354-Civ-Gold
                                )
            Plaintiffs,         )       **DECLARATION OF T. REED**
                                )       **STEPHENS IN SUPPORT OF**
            .                   )       **UNITED STATES' UNOPPOSED**
                                )       **APPLICATION FOR EXTENSION OF**
            v.                  )       **TIME TO ELECT WHETHER TO**
                                )       **INTERVENE IN QUI TAM ACTION**
                                )
Abbott Laboratories; ▮▮▮▮▮      )
▮▮▮▮▮▮▮▮▮▮▮▮ et al.,            )
                                )
            Defendants.         )
_____)

I, T. Reed Stephens, do state and declare as follows:

    1. I am a trial attorney in the Commercial Litigation Branch, Civil Division in the United States Department of Justice, and I am assigned primary responsibility for the above-captioned qui tam litigation. I make the instant declaration in support of the United States' Application for an Extension of Time to Elect to Intervene in the above-captioned litigation.

    2. This case is a qui tam action against numerous pharmaceutical manufacturers —
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dey Labs., Glaxo Wellcome Inc.,
Bayer, Inc., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮ SmithKline Beacham, Inc., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮ — initiated by relator Ven-A-Care of the Florida Keys, Inc.
("relator"), pursuant to the False Claims Act, as amended, 31 U.S.C. § 3730(b).

ABT008-1038

3.  Relator, Ven-A-Care of the Florida Keys, is a provider of a broad class of specialty drugs that generally cannot be purchased over the counter by the public.  These drugs, which are not orally administered, are often used to treat life-threatening or terminal illnesses, such as AIDS, cancer, and hemophilia.  These drugs are typically administered by an injection, IV infusion, or by inhalation.

4.  Relator alleges in its complaint (and in the subsequent amended complaints) that the defendant drug manufacturers inflate the reported prices of the drugs so that government payors, such as Medicare, Medicaid, and TRICARE, pay fraudulently inflated reimbursement to providers who buy these drugs and, in turn, supply them to patients suffering from these serious illnesses.  The defendant drug manufacturers' alleged incentive for carrying on this scheme is to attract providers to purchase their drugs.  Even though the provider — not the manufacturer — receives the inflated reimbursement payment from the government, the manufacturer benefits greatly through increased profit caused by increases in market share for its drugs.

5.  Relator alleges that defendants are able to influence drug brand purchases by providers because they control the basis for Medicare and Medicaid reimbursement for its products -- the reported price.  The relator alleges that reported prices for Medicaid and Medicare drugs come in two classes:  Average Wholesale Price ("AWP") and Wholesale Acquisition Cost ("WAC").  The defendant drug manufacturers allegedly determine -- without any government or private insurance input -- what the AWP and WAC will be for their respective products.

6.  Since the service of subpoenas, authorized by the Department of Health and Human Services Office of Inspector General ("HHS-OIG"), on each of the 24 defendants, the government's investigation has progressed substantially.  The government outlined its

- 2 -

investigative steps in detail in its previous request for an extension of the intervention deadline. The past few months of investigation — as set forth below — have been equally productive, but the demands of an investigation of 24 separate corporate entities requires that the government request an additional extension of time.

7. The United States and Relator shared hundreds of pages of documents with the National Association of Medicaid Fraud Control Unit Directors ("NAMFCU") who have responsibility for assessing Medicaid fraud allegations affecting their respective states. The membership of NAMFCU has been instrumental in past False Claims Act matters involving multiple jurisdictions because of its ability to efficiently obtain data on potential damages, identify witnesses on the state level, obtain authority to compromise claims or initiate civil actions. In the instant qui tam, NAMFCU's ongoing participation is necessary to facilitate the orderly resolution or litigation of this matter.

8. The United States continues to receive from the defendants documents responsive to the HHS-OIG subpoenas. The United States has also committed substantial financial resources to creating electronic document storage and review databases for the tens of thousands of pages of documents produced by the defendants pursuant to the subpoenas.

9. Beginning in December 1998 and continuing through the present, counsel for the United States has conducted over a dozen additional witness interviews across the country in furtherance of its investigation into the allegations. The government has been negotiating with the defendants for the interviews of over a dozen additional former and current employees.

10. Counsel for the United States and the Executive Committee of NAMFCU continue to facilitate the identification of witnesses and evidence relevant to the allegations. This work has

- 3 -

ABT008-1040

enabled the United States and the Relator to organize a substantial amount of information as substantive discussions continue with the defendants.  This activity continues to the present and is vital to the efficient resolution of this qui tam matter since the allegations include all 50 states as well as the federal Medicare program.  On March 18, 1999, counsel for the United States and Relator updated the NAMFCU Directors during their annual meeting in Washington, D.C.

11.  Counsel for the United States has conducted seven additional face-to-face meetings with counsel for various defendants regarding the allegations and the evidence.[3]  These substantive meetings and settlement conferences occurred on February 15th, March 5th, March 10th, March 19th, March 24th, April 12th, and April 13th of this year.   The next face-to-face meeting with defense counsel is planned for April 29th.  Numerous telephone conferences have also been conducted between counsel for the United States and the myriad defendants.

12.   These meetings have resulted in settlement offers from two defendants and raise the prospect that the number of defendants in this qui tam can be whittled down during the pre-intervention period in a manner that serves judicial economy.

13.   The meetings with the offering defendants and other defendants have also dealt with issues of prospective regulatory compliance and, ultimately, the mitigation of the damages allegedly suffered by the government.  The compliance issues are critical to the resolution of this matter and considerable effort is necessary to bring the parties to agreement.

14. The Civil Division's policy is generally to afford a defendant an opportunity to be apprized of the False Claims Act allegations and make a substantive response before the

_____

[3]      Counsel for the government conducted nine such meetings prior to the last intervention deadline.

- 4 -

ABT008-1041

government makes its election to intervene in a matter such as this.  To date, the defendants have

insisted mostly on face-to-face meetings with Counsel for the United States.  The sheer volume

of defendants has, however, made it impossible for Counsel for the United States — despite its

best efforts — to give a meaningful opportunity to each of the 24 defendants.  Additional time is

needed to complete this process which will allow all parties to fully frame the legal and factual

issues.

15.  If the instant extension request is granted, the United States will (1) continue its

settlement negotiations with defendants who have communicated good faith offers of settlement,

(2) continue to pursue opportunities to interview the witnesses represented by the various defense

counsel and witnesses employed by non-parties, such as First DataBank, and (3) continue to meet

with each defendant's counsel so that the defendant can be fully informed of the qui tam

allegations and be given a reasonable time in which to respond to the evidence and the

allegations.

16.  To date, no defendant has expressed any reservations regarding the continuance of

the seal.  To the contrary, the defendants — rather than asserting prejudice at the continuance —

have, instead, suggested that they need additional time to rebut the allegations prior to the

intervention deadline.  This circumstance has been caused primarily by the number of defendants

(the majority of which were named by the relator for the first time when the qui tam complaint

was amended in August 1997).

17.  The United States and the various state Medicaid programs are also continuing to

work on efforts to mitigate further the damages caused by the alleged scheme to defraud the state

and federal healthcare programs.  For example, the current settlement negotiations have led to at

ABT008-1042

least one proposal from two defendants that could allow for substantial mitigation of damages for certain drugs identified in the complaint. The lifting of the seal at this time could result in a lost opportunity that likely would not be available during the first several months of the litigation.

18. I have discussed the instant extension request with counsel for relator. Relator does not object to this request for extension.

I declare under penalty of perjury that the foregoing is true and correct.


T. Reed Stephens

Dated: April 21, 1999

- 6 -

ABT008-1043                L

EXHIBIT DI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-1354-CIV-GOLD

NIGHT BOX
FILED

APR 1 7 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Ven-A-Care of the<br>Florida Keys, Inc.,<br><br>       Plaintiffs,<br><br>       v.<br><br>Abbott Laboratories; ▪▪▪▪▪<br>       et al.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FILED UNDER SEAL**

## UNITED STATES' UNOPPOSED APPLICATION FOR EXTENSION OF TIME TO ELECT WHETHER TO INTERVENE IN QUI TAM ACTION AND MEMORANDUM OF LAW

The United States, pursuant to 31 U.S.C. § 3730(b)(3), presents to this Court, ex parte

and under seal, this application for an extension of time of one-hundred (100) days up to and

including July 26, 2001, in which to notify the Court of its decision whether to intervene in the

above-captioned False Claims Act qui tam action, during which the Complaint and all other

related filings shall remain under seal.[1]

---

[1] The Legal Authority supporting the proposed extension is set forth in the Government's
Memorandum accompanying its First Motion for an Extension of Time. Rather than reiterating
the same points, the Government respectfully refers the Court to this previously submitted
memorandum.

This case is a _qui tam_ action against 29 pharmaceutical manufacturers[2] initiated by relator Ven-A-Care of the Florida Keys, Inc. ("relator"), pursuant to the False Claims Act, as amended, 31 U.S.C. § 3730(b).  In sum, the Third Amended Complaint alleges that the defendants have purposely caused the publication of artificially high (i.e. false) drug prices which are relied upon by third-party payors such as Medicare and Medicaid to set reimbursement levels. As a result, the providers (physicians, home health care companies and pharmacies) enjoy a large profit because they are able to actually purchase the drugs for a significantly discounted price and get reimbursed at the much higher, false, published price.  The Complaint further alleges that this approach is used a marketing tool in order to generate additional sales of the drugs.

Since the time of the last extension request, the United States has continued to make substantial progress in this investigation.  Most significant is that **the United States has consummated its proposed settlement with defendant Bayer Corporation**.  Although some of the individual States still need to confirm their agreement with the settlement, the settlement and the related Corporate Integrity Agreement have been fully agreed upon and executed by the United States and the Defendant, and Bayer has made full payment of the federal portion of the settlement monies.  Once the requisite number of states have confirmed their agreement with the

---

[2]  The named defendants include Abbott Laboratories, Inc. ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ Bayer Corporation, ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ Dey, Inc., ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮ Glaxo Wellcome, Inc., ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ SmithKline Beecham Corporation, ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

ABT008-1563

settlement, payment of all remaining monies will be made. A stipulation dismissing Bayer from the case will be filed with the Court shortly.

As before, settlement efforts also continue to be pursued with other defendants, including those who showed renewed interest in pursuing settlement after the announcement that a settlement had been reached in principle with Bayer. As expected, the announcement of the consummation of the Bayer settlement generated additional settlement discussions with other defendants. The United States is continuing forward with those discussions, has held many meetings with those defendants and is continuing to schedule more meetings. Likewise, because a settlement framework has already been hammered out in the context of the Bayer settlement, it is hoped that any other settlements will move much more quickly.

In its last extension request the United States also indicated that it, together with the Department of Health and Human Services Office of Inspector General ("HHS OIG"), were in the process of reviewing the numerous new documents which have been received in response to the 35 new subpoenas issued by HHS OIG. Significant progress has been made with respect to reviewing those documents and much of that project has been completed. However, as noted in the United States' previous application, approximately 12 of the defendants objected to the subpoenas in their entirety and refused to produce any documents. The United States renewed its efforts to secure compliance with the subpoenas (following a meeting between the United States and the various objecting defendants at which the parties productively exchanged their competing views of the case) and it appears that compliance with the outstanding subpoenas may be getting back on track. In large part, the parties have focused on resolving concerns relating to the confidentiality of the documents. Some additional documents have already been received and

3

ABT008-1564

many more are expected in the coming weeks. As before, if documents are not forthcoming, the United States will consider seeking court enforcement of the subpoenas. In any event, the United States would like to complete its review of the additional and missing documents prior to making an intervention decision as to the remaining defendants because each defendant's circumstances needs to be evaluated individually.

The United States submits that the pre-litigation settlement of the allegations of the complaint against as many defendants as possible is especially desirable in a case of this magnitude and complexity. The additional extension of time, at a minimum, should allow the more advanced negotiations to come to fruition and allow the other negotiations to advance to a point where an appraisal can be made as to whether a settlement is likely. At that point, it is hoped that a decision on intervention can be made with the expectation that actual litigation will be necessary with respect to only a minority of the defendants.

In sum, the requested extension will permit counsel for the United States to (1) continue witness interviews, including the taking of sworn statements from cooperating witnesses, (2) continue its current settlement negotiations with defendants, (3) pursue additional efforts to mitigate the damages allegedly suffered by the Medicare and Medicaid programs, (4) negotiate or seek enforcement of compliance with the new agency subpoenas served on the defendants and other witnesses and (5) analyze the additional documents that were produced pursuant to subpoenas to the defendants and witnesses. As before, the United States intends to place particular emphasis on completing any settlement negotiations that may result in a narrowing of the participants in this extensive qui tam matter. The United States is hopeful that significant progress will be made over the extension period.

4

ABT008-1565

Counsel for the United States has kept the relator's representatives actively involved in the investigation so there would be no question from relator's perspective as to whether the United States has been moving expeditiously over these past months. Relator agrees that a one-hundred (100) day extension will allow the United States and the State representatives to complete this investigation.

In addition, to date, no defendant has expressed any reservations regarding the continuance of the seal. To the contrary, the defendants — rather than asserting prejudice at the continuance — have, instead, suggested that they need additional time to rebut the allegations prior to the intervention deadline. This circumstance has been caused primarily by the number of defendants.

<u>CONCLUSION</u>

For the foregoing reasons and those set forth in the accompanying declaration, plaintiff respectfully requests that the Court grant the instant request for a one-hundred (100) day extension of time in which to elect to intervene — during which this <u>qui tam</u> matter will remain under seal.

5

ABT008-1566

Respectfully submitted,

DAVID W. OGDEN
ASSISTANT ATTORNEY GENERAL

GUY A. LEWIS
UNITED STATES ATTORNEY

By:    _____
MARK A. LAVINE
Assistant U.S. Attorney
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9003 Tel.
(305) 536-4101 Fax
Fla. Bar No. 648876
Mark.Lavine@usdoj.gov

By:    _____
MICHAEL F. HERTZ
JOYCE R. BRANDA
T. REED STEPHENS
DIANA YOUNTS
PAT DAVIS
Civil Division
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
(202) 307-0404

April 17, 2001

ABT008-1567

## CERTIFICATE OF SERVICE

IT IS HEREBY certified that a true and correct copy of the foregoing Motion for Extension of Time was ~~mailed~~ this 17th day of April, 2001 to:


Atlee Wampler, III
James J. Breen
Wampler, Buchanan and Breen
777 Brickell Ave.
Miami, FL  33131


_____
ASSISTANT UNITED STATES ATTORNEY

- 2 -

ABT008-1568            L

# EXHIBIT DJ

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

'ILED BY _____ D.C.
'ITAKE

99 NOV 23  PM 3: 26

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

CASE NO. 95-1354-CIV-GOLD

UNITED STATES OF AMERICA,               )
ex rel. Ven-A-Care of the               )        **FILED UNDER SEAL**
Florida Keys, Inc.,                     )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )
                                        )
                                        )
Abbott Laboratories;▮▮▮▮▮▮▮             )
▮▮▮▮▮▮▮▮▮▮▮, et al.,                     )
                                        )
    Defendants.                         )
_____)

**DECLARATION OF MARK A. LAVINE IN SUPPORT OF UNITED STATES'
UNOPPOSED APPLICATION FOR EXTENSION OF TIME TO ELECT WHETHER
TO INTERVENE IN QUI TAM ACTION**

I, Mark A. Lavine, do state and declare as follows:

1. I am an Assistant United States Attorney in the Southern District of Florida, and I am

assigned primary responsibility for the above-captioned qui tam litigation. I make the instant

declaration in support of the United States' Application for an Extension of Time to Elect to

Intervene in the above-captioned litigation.

2. This case is a qui tam action against numerous pharmaceutical manufacturers —

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dey Labs., Glaxo Wellcome Inc.,

Bayer, Inc., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ SmithKline Beacham, Inc. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ABT008-1012

████████████████████████ — initiated by relator Ven-A-Care of the Florida Keys, Inc. ("relator"), pursuant to the False Claims Act, as amended, 31 U.S.C. § 3730(b).

3. Since late April, counsel for the government has made substantial progress in resolving the involvement of nine of the 24 defendants in this qui tam matter. Additional time is needed, however, to bring this process to fruition.

4. Since the service of subpoenas, authorized by the Department of Health and Human Services Office of Inspector General ("HHS-OIG"), on each of the defendants, the government's investigation has progressed substantially. The government outlined its investigative steps in detail in its previous request for an extension of the intervention deadline. The past few months of investigation — as set forth below — have been equally productive, but the demands of an investigation of 24 separate corporate entities requires that the government request an additional extension of time.

5. In addition to the settlement negotiations discussed below, relator will — prior to the November 24th intervention deadline — dismiss two defendants from the qui tam in a third amended complaint.

6. Since the previous extension was granted, Counsel for the United States has conducted six face-to-face meetings with counsel for various defendants regarding the allegations and the evidence.[1] These substantive meetings and settlement conferences occurred on September 17th, October 13th, October 15th, October 27th, November 15th and have involved counsel for nine of

---

[1]     Counsel for the government conducted meetings with twelve of the defendants during the previous extension period.

- 2 -

ABT008-1013

the defendants.[2]  In addition, counsel for all of the defendants have now been notified of the existence of the qui tam.

7.  The foregoing meetings and additional conference calls with defense counsel have resulted in a tentative settlement agreement with one defendant, subject to approval by the appropriate government officials.  The settlement discussions with this defendant have significantly facilitated settlement negotiations with three other defendants, two of which compete directly with the defendant with which the government has reached a tentative settlement.  Each of these three defendants has expressed serious interest in reaching a settlement agreement contemporaneous to the tentative settlement with the first defendant and have agreed to meeting dates within the next 10 days to negotiate terms.  In addition, the government has conducted serious settlement discussions with three additional defendants, one of which has made a substantial monetary offer.

8.  The meetings with all of the above-referenced defendants have dealt with issues of prospective regulatory compliance and, ultimately, the mitigation of the damages allegedly suffered by the government.   The defendant that is the subject of the tentative settlement has agreed to a substantive framework for prospective compliance, and the other defendants with which the government is negotiating have acknowledged the government's position that the terms of the first completed compliance agreement will guide any future agreements with these defendants.

9.  The Department of Justice's policy is generally to afford a defendant an opportunity to be apprized of the False Claims Act allegations and make a substantive response before the

---

[2]        The next meeting with defense counsel is scheduled for November 30th.

ABT008-1014

government makes its election to intervene in a matter such as this. To date, the defendants have insisted mostly on face-to-face meetings with Counsel for the United States. The sheer volume of defendants has, however, made it impossible for Counsel for the United States — despite its best efforts — to give a meaningful opportunity to each of the defendants. Additional time is needed to complete this process which will allow all parties to fully frame the legal and factual issues.

10. If the instant extension request is granted, the United States will (1) work to complete the drafting and execution of the tentative settlement and compliance agreement with the first defendant described in paragraph 6 above, (2) work to complete the negotiations with the three defendants which have expressed an interest in entering into a settlement contemporaneously with the tentative settlement as well as draft and execute the necessary settlement and compliance documents within the same time frame as the tentative settlement, and (3) continue to pursue discussions with any other defendants expressing a serious interest in settlement.

11. To date, no defendant has expressed any reservations regarding the continuance of the seal. To the contrary, the defendants — rather than asserting prejudice at the continuance — have, instead, suggested that they need additional time to rebut the allegations prior to the intervention deadline. This circumstance has been caused primarily by the number of defendants (the majority of which were named by the relator for the first time when the qui tam complaint was amended in August 1997). Settlements with any of the defendants will simplify the scope of this qui tam matter and, we believe, enhance the possibility that many of the defendants' involvement can be resolved without litigation.

12. The United States and the various state Medicaid programs are also continuing to

-4-

ABT008-1015

work on efforts to mitigate further the damages caused by the alleged scheme to defraud the state and federal healthcare programs.   The settling defendant(s) will enter into compliance agreements that will mitigate harm to the public interest.  The lifting of the seal at this time could result in a lost opportunity that likely would not be available should litigation ensue.

13.  I have discussed the instant extension request with counsel for relator.  Relator does not object to this request for extension.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Mark A. Lavine

Dated: November 23, 1999

- 5 -

ABT008-1016        L