UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | MDL NO. 1456 Civil Action No. 01-12257-PBS Subcategory Case No. 03-10643-PBS |
| THIS DOCUMENT RELATES TO: *The City of New York, et al.* *v.* *Abbott Laboratories, et al.* ) ) ) ) ) ) ) | Judge Patti B. Saris |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MEMORANDUM TO EXCLUDE THE PROFFERED EXPERT REPORT AND TESTIMONY OF HARRIS DEVOR, C.P.A.**

**INTRODUCTION**

> The Court:  But you're saying, if everyone lies, everyone's off the hook?
>
> Mr. Cross:  No. The people who set the FUL.  She [Plaintiffs' counsel Joanne M. Cicala] has to plead who set the FUL. If my client didn't set the FUL because my WAC was higher than Mylan's WAC, I've got nothing to do with the transaction.
>
> The Court: Unless you lied.

May 16, 2007 Hearing Transcript at 33:14-20 (Exhibit A to Affidavit of Kathryn B. Allen, sworn to June 30, 2009 and submitted in opposition to defendants' motion to exclude the testimony and report of Harris L. Devor ("Allen Aff.")).

Defendants' attack on Harris Devor rests on a series of misleading statements of fact or characterization of his testimony and report that are almost entirely false and misleading, when not absurd.  We address them *seriatim* at Point I *infra*.  In doing so, we note that defendants do

not proffer counter-expert conclusions that any of their reported prices were correct.  Defendants present no WAC List Price Test results or AWP spread test results in connection with the drugs at issue, a notable failure given that their expert, Sumanth Addanki, has performed and testified as to both tests when defending the veracity of brand WACs.  *See* Affidavit of Dr. Sumanth Addanki, 2/21/2008, ¶¶ 9, 10, in Support of Schering's Motion for Protective Order [Docket No. 5296]; *see also* Deposition of Dr. Sumanth Addanki, 11/20/08, at 26:6-27:8 ("Addanki Dep. 11/20/08") (Exhibit B to Allen Aff.); Declaration of Sumanth Addanki from MDL Track One Trial, filed December 1, 2006 [Docket No. 3430].  Why no such tests here?  The rhetorical question allows but one response: The generic drug and NDCs at issue in plaintiffs' motion[1] would fail both.

Confronted with this reality, defendants take the legally unsupportable position that the question before this Court in respect of plaintiffs' FUL claims is not whether defendants systematically defrauded the government and created a fictional alternative universe of false price arrays, but whether having forced CMS to choose only among artificially inflated prices, defendants can be held accountable for damages.  Preposterousness to the side, defendants' insidious proposition makes no contact with New York Social Services Law § 145-b.  As set forth in plaintiffs' submissions, Section 145-b punishes even the attempt to defraud, as this Court made crystal clear during the exchange with counsel for defendant Sandoz cited above.  *See* N.Y. Soc. Serv. L. § 145-b(1)(a); *See also* plaintiffs' memorandum of law in support of motion for partial summary judgment on issues relating to the Federal Upper Limit and under New York Social Services Law § 145-b [Dkt. No. 6077] at 14-17; plaintiffs' memorandum of law in opposition to defendants' joint motion for summary judgment on plaintiffs' "FUL fraud" claims

---

[1] "Plaintiffs' motion" refers to plaintiffs' motion for partial summary judgment on issues relating

and in further support of plaintiffs' motion for partial summary judgment on their 145-b claim [Dkt. No. 6147] at 10; plaintiffs' reply memorandum of law in support of motion for partial summary judgment on issues relating to the Federal Upper Limit and under New York Social Services Law § 145-b(filed contemporaneous herewith) at 4-5.

    In addition, defendants cannot reasonably dispute that their lies caused damage.  CMS has testified that, had defendants reported alternative true WACs, those would have been considered when setting FUL's leading inevitably to lesser FUL's.  *See* Declaration of Susan E. Gaston, dated June 15, 2009 ("Gaston Dec.") at ¶¶ 7, 10, 12, 15, 17 (Exhibit C to the Affidavit of Joanne M. Cicala in Opposition to Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims ("Cicala Aff.") [Docket No. 6144, Sub-docket No. 97]). Defendants' effort to disqualify Mr. Devor is equally off the mark.  Defendants make two primary arguments.  First, Mr. Devor's results are unreliable because, on their face, they fly against industry norms and expectations and what defendants' call "real-world relationships". Of course they do, and it requires unmitigated nerve to make defendants' argument.  Until recently, industry norms, expectations, and real-world relationships had been corrupted by defendants' false price reports untethered to actual transactions.  It necessarily follows that Mr. Devor's alternative WACs, based on actual transactions, would not track norms that had been perverted by defendants' lies.  And again, notably, what the Court does not hear from defendants is: our WACs pass the WAC List Price Test, or our WACs were tied to real prices or our WACs (or AWPs) were only 30% above our true ASPs.  Defendants do not present a shred of evidence attesting to the veracity of their WACs.  They cannot.

---

to the FUL and under New York Social Services Law §145-b, filed May 15, 2009.

Second, defendants criticize Mr. Devor for failing to establish a viable causation theory and for failing to opine as to what CMS would have done with the WACs he calculates using defendants' data.  No expert testimony is needed on the point.  It is not for Mr. Devor or defendants' expert Dr. Addanki to opine on what CMS would have done had defendants not lied.  CMS can do that, and indeed CMS has.  *See* Gaston Dec. ¶¶ 7, 10, 12, 15, 17 (Exh. C to Cicala Aff [Docket No. 6144, Sub-docket No. 97]).  The scope of Mr. Devor's opinion on this motion, appropriately, is as follows:  (1) what do defendants' data show defendants' true WACs to be; (2) what would a FUL have been if set on true WACs; and (3) what would a FUL have been if defendants had reported WACs at or about the level of their AMPs. *See* 9/30/08 Rule 26 Statement of Harris L. Devor, C.P.A. ("Devor Rule 26 Statement") at ¶¶ 5, 6, 7, Exh. 3 to Declaration of John K. Crisham Transmitting Documents Relied Upon in Defendants' Joint Motion ("Crisham Dec.") [Dkt. No. 6128].

**ARGUMENT**

**I.    THE ATTACK ON PLAINTIFFS' EXPERT MUST FAIL BECAUSE IT RESTS
ON A LUDICROUS PRETENSE**

Defendants argue that Mr. Devor's results should be excluded because they do not track industry norms.  The predicate is ludicrous because defendants' unremitting dishonesty perverted the norm.  It was Mr. Devor's task to adjust the twisted norm to the truthful, which he did by working with defendants' real sales and transactional data.  Moreover, defendants present no record evidence whatsoever that the results are mistaken, that their reported prices were accurate, that their reported WACs pass the WAC List Price Test, or their reported AWPs pass the AWP spread test.  Simply put, defendants present no record whatsoever from which they can reasonably challenge the work Mr. Devor has done using defendants' own data to calculate alternative WACs.

Responding now to defendants' particular critiques:

1.      Defendants say Mr. Devor's report should be stricken because Mr. Devor does not opine as to what defendants should have reported.  (Def. Br. at 6.)  This ignores that the Court does not need Mr. Devor, a C.P.A., to opine as to defendants' legal obligations to report true prices.  In fact, had Mr. Devor given such an opinion, his testimony would be inadmissible. *See In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 541 (S.D.N.Y. 2004) (an expert opinion that states a legal conclusion is inadmissible, while "factual conclusions on an ultimate issue to be decided by the jury are permissible.").

2.      Defendants criticize that Mr. Devor's work occasionally produces negative results and that Mr. Devor employs proxies in those events. Def. Br. at 11-12.  This ignores that defendants' own expert has explained that given the timing of chargebacks and rebates, it is not

5

unusual to see negative amounts in a given quarter and the use of a proxy in those instances is conventional. (*See* Addanki 11/20/08 dep. at 170:4-172:10, 174:20-176:9, 182:4-184:2, 184:10-185:18) (Exhibit B to Allen Aff).

       3.       Defendants say that Mr. Devor's expert opinions have been excluded by two federal courts under *Daubert* and cite, *In re Acceptance Ins. Cos. Inc., Sec. Litig.*,  352 F. Supp. 2d 940, 948 (D. Neb. 2004) and *In re Ikon Solutions Inc.*, 131 F. Supp.2d 680, 701 (E. D. Pa. 2001).  *See* Def. Br. at n.2.  Defendants' statement is misleading and inaccurate.  In *In re Acceptance Ins. Cos. Inc., Sec. Litig.,* Mr. Devor was given a narrow assignment by counsel, presented in the form of an affidavit (not oral testimony) which the District Court excluded from the record on relevance, not reliability, grounds and because it found that Mr. Devor had not presented how he had reached his ultimate conclusions nor the analytical process employed. *In re Acceptance Ins. Cos. Inc., Sec. Litig.*, 352 F. Supp. 2d at 948. Mr. Devor's analysis was, in fact, included in his affidavit but Mr. Devor was not deposed in the matter nor did he have the opportunity to testify in Court nor was he given any other context within which to highlight his analysis for the Court or to demonstrate to the Court how he had arrived at the conclusions expressed. *See* Declaration of Harris L. Devor dated June 30, 2009 ("Devor Dec.") at ¶3.  In the instant case, Mr. Devor's assignment is broader, and both Mr. Devor's approach and results are supported by the preponderance of evidence produced, most of which has come from the defendants, including pricing data, transaction data, and data relating to AMPs.  Moreover, unlike in *Acceptance*, defendants here deposed Mr. Devor for four days in December 2008 and March 2009, during which Mr. Devor expressed his intentions to, and (to the extent asked) his

procedures aimed at, deriving a best estimate of alternative WACs[2] using data that was available to each defendant (or could be reasonably estimated by them) at the time their "prices" were being reported to the publishing compendia.  In deposition, that methodology was but rarely ignored, eschewed by defendants' counsel in favor of questions about background information that Mr. Devor explained (repeatedly) was not part of his opinion.

Defendants' statement that Mr. Devor's testimony was excluded based on Daubert in *In re Ikon Solutions Inc*., 131 F. Supp.2d 680 (E. D. Pa. 2001) is simply incorrect.   There was no Daubert challenge to Mr. Devor in that case and Mr. Devor was not precluded from testifying as an expert.  *Id.* at 701; *see also* Devor Dec. at ¶ 4.

Second, defendants neglect to tell the Court that Mr. Devor was accepted as an expert for the State of Missouri in its recent AWP case against Schering Plough/Warrick styled *State of Missouri, ex rel. Jeremaiah W. (Jay) Nixon, Attorney General, et al. vs. Warrick Pharmaceuticals Corporation, et al*. (Cause No. 054-1216, Division 31; in the Circuit Court of the City of St. Louis, State of Missouri; 22nd Judicial Circuit) the result of which was a jury verdict rendered for State in August 2008, followed by a $33 million settlement. Devor Dec. at ¶ 5.  Mr. Devor was also engaged by and for the State of West Virginia in its AWP case against the same defendants. *Id.* at ¶ 6.  There, despite a Daubert-like challenge and a hearing at which Mr. Devor was given an opportunity (unlike in *In re Acceptance Ins. Cos. Inc., Sec. Litig.*, cited by defendants) to explain to the Court his methods and the rationale behind those methods, Mr. Devor was accepted by the Court as an expert on the computation of AWP/WAC and testified at trial on behalf of the State of West Virginia.  *Id*.  Mr. Devor also testified as an expert on behalf

---

[2] Mr. Devor's calculated AWPs are not part of plaintiffs' motion.  *See* n. 4, *infra*.

of the State of Texas in its case against Warrick, Schering, and Schering-Plough.[3] Mr. Devor

issued affidavits and computations in connection therewith, and computed damages on behalf of

the State of Texas *Id*. at ¶ 7.  Settlement was also achieved in the State of Texas matter against

Warrick, Schering, and Schering-Plough in the Spring of 2004 as a result, in part, of the

deposition of Mr. Devor.  *Id*.

And, in the world beyond AWP/WAC false pricing, Mr. Devor has been accepted as an

expert and testified in the United States District Court for the District of Nebraska in a matter

involving the SEC (*Securities and Exchange Commission, Plaintiff, v. David C. Guenther and

Jay M. Samuelson*, Defendants; Case No. 8:02CV10) as well as in some of the largest securities

fraud cases to go to trial over the past 5 years, including *In re WorldCom Inc. Securities

Litigation* (Master File No: 02Civ3288) in the Southern District of New York and *Lawrence E.

Jaffe Pension Plan, On Behalf of Itself and all others similarly situated, plaintiff  v. Household

International, Inc. et al.* (Lead Case No. 02-C-5893)(consolidated) in the Northern District of

Illinois, Eastern Division. *Id.* at ¶ 8.

Regardless, this challenge, even if valid, would go only to weight, not admissibility.

Whether or not a particular expert's testimony is admissible is considered on a case-by-case

basis.  *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)(the court's "gatekeeping

inquiry must be 'tied to the facts' of a particular 'case.'"), *quoting Daubert*, 509 U.S. at 594.

Whether Mr. Devor's expertise in another matter has been challenged has nothing to do with the

---

[3] Styled as *The State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc., vs. Dey, Inc., Roxane Laboratories, Inc., Warrick Pharmaceuticals Corporation, Schering Corporation, Schering-Plough Corporation, Lipha, S.A., Merck-Lipha, S.A., Merck, KGAA, and EMD Pharmaceuticals, Inc.*(Cause No. GV002327; In the District Court of Travis County, Texas, 53rd Judicial District).

matter at-hand, especially in light of the concepts at issue in both the case cited by defendants as compared to the issues relevant to this case.

4.       Defendants say that Mr. Devor did not present estimates of FUL's.  (Def. Br. at 6.)  That is patently false.  For every NDC examined, Mr. Devor's report sets forth what the FUL would have been had CMS based it either on a price at or about defendants' AMP (a calculation defendants' do not challenge in their motion) or at the alternative WAC Mr. Devor calculated using defendants' data. Devor Rule 26 Statement, ¶¶ 5, 6, 7, Exh. 3 to Crisham Dec. [Docket No. 6128]; Exhibits 6-17 of Exh. A to Declaration of Harris L. Devor in Support of Plaintiffs' Motion for Partial Summary Judgment on Issues Relating to the Federal Upper Limit and Under New York Social Services Law § 145-b [Docket No. 6061].

5.       Defendants criticize Mr. Devor's calculated WACs because they are sometimes less than AMP[4].  This ignores that AMPs represent transactions to certain classes of trade and are a subset of WAC. Def. Br. at 9.  Defendants have put nothing in record to show that their true WACs are never below AMP.  Indeed, as stated, defendants have put nothing in the record whatsoever regarding their true WACs.

---

[4] Defendants' criticisms of Devor's AWP calculations fail for similar reasons but plaintiffs will not waste the Court's time on the point.  Plaintiffs have not moved on the basis of Mr. Devor's AWP calculations for many reasons including that, as the parties agree, CMS did not set the FUL on AWP (though it did consider AWP  in the context of setting the FUL) *See* Gaston, Sue (3/19/08) 458:1-459:7 (Corrected Exh B to Cicala Aff.)[Dkt. No. 6144, Sub-dkt. No. 97]; *see* 42 CFR § 447.332(b); *see* Gaston, Sue (1/24/2008) 144:21-146:16 (Exh. B to Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts Related to Federal Upper Limits ("FULs") and Applicable to All Thirteen FUL Defendants (the "FUL Thirteen")[Dkt. No. 6060, Sub-dkt. No. 62); *see* Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims ("Plaintiffs' Resp. to Def's 56.1") [Docket No. 6146, Sub-docket No. 98].

## II.   PLAINTIFFS REQUIRE NO EXPERTISE ADDRESSING CMS'S "STATE OF MIND" IT POSSESSED OF TRUTHFUL DATA

Defendants say Mr. Devor's opinion should be stricken because it does not state what CMS would have done with the alternative true prices Mr. Devor presents.  The argument is absurd.  It is not for Mr. Devor, a C.P.A.  (or defendants' expert economist Dr. Addanki) to opine on what CMS would have done with a pricing array containing true prices, rather than defendants' lies.  CMS can testify as to what it would have done with the truth and has done so. *See* Gaston Dec. ¶¶ 7, 10, 12, 15, 17.  This prong of defendants' motion needs no further response.

## III.   THE ATTACK ALSO FAILS TO MEET DAUBERT STANDARDS

*Daubert* stands for the proposition that junk methods of analysis do not satisfy FRE 702 and thus are inadmissible. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-593 (1993) (determining admissibility of expert testimony requires an "assessment of whether the reasoning or methodology underlying the testimony is …valid and whether the reasoning or methodology properly can be applied to the facts in issue).  It does not stand for the proposition that courts are to replace juries in respect of findings about the relative weight, credibility, or conclusions of competing experts . *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.*, 295 F.3d 69, 81 (1st Cir. 2002) ("the ultimate credibility determination and the testimony's accorded weight are in the jury's province"), *citing Mitchell v. United States*, 141 F.3d 8, 16-17 (1st Cir. 1998); *see also RMed Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 420548 at *2 (S.D.N.Y. April 18, 2000) as follows:

> to the extent defendants' concerns about [plaintiffs' expert's] analysis are valid, they go to the weight and credibility of [plaintiffs' expert's] testimony, not its admissibility…Acccordingly, defendants may properly explore any weaknesses in

her methodology on cross-examination or by offering their own expert to rebut her assertions. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995); *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124, 1132 (2d Cir. 1995); *United States v. Young*, 745 F.2d 733, 761 (2d Cir. 1984).

Defendants here do not attack Mr. Devor's methods of calculation or estimations as lacking *Daubert* compliant provenance in doing work of that kind.  Rather, they say that the conclusions he draws do not support the claims made.  We strongly disagree but the place for defendants to make their arguments is to a jury, not to the court on a *Daubert* motion. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002); *citing Daubert*, 509 U.S. at 595 (to determine admissibility, the Court should focus on the reliability of the expert's methodology rather than the correctness of the expert's conclusions).

Defendants first argue that Mr. Devor's testimony is inadmissible because it lacks relevance.  In order for expert testimony to be admissible, the reasoning and methodology must be applicable to the facts in issue. *See Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001); *quoting Daubert*, 509 U.S. at 588.  And expert testimony is considered relevant if it "'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,'" *Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001); *quoting* Fed.R.Evid. 401.

Defendants argue that Mr. Devor's testimony is irrelevant because it is not "sufficiently tied to the facts of the case." *See* Def. Br. at 14.  The caselaw cited by defendants is

unsupportive of their argument.[5]  First, plaintiffs do not proffer Mr. Devor's testimony and report

in order to establish causation but rather to demonstrate the disconnect between reality and

defendants' reports.[6]  Second defendants argue that there is a disconnect between Mr. Devor's

data and plaintiffs' theory of liability.  *See* Def. Br. at 14.  This is not the case as the Gaston

Declaration makes clear.[7]  *See* Gaston Dec. at ¶¶ 7, 10, 12, 15, 17.

Mr. Devor's testimony as to what defendants' data reveals about their true WACs[8], and

what FULs would have been if set on the alternative WACs, or on a price at or about the AMP is

indisputably applicable and relevant to the proposition that defendants' submission of false

prices violated 145-b and likely affected the FUL.  This is particularly so given that defendants

have presented no record evidence whatsoever to support the truth of their price reports.

Second, defendants argue that Mr. Devor's testimony is unreliable because they "violate

expected relationships" expected in "the industry".  Plaintiffs' response to this absurdity is set

---

[5] Defendants cite *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1986).  The case concerns whether expert testimony regarding eyewitness identifications is admissible, which is unrelated to the subject matter at bar.  *Id.* at 753.  The Circuit Court did not make a decision as to whether the expert testimony was sufficiently tied to the facts of the case.  *Id.* at 1242.  It merely remanded the question back to the district court because the Circuit Court had no way of adequately deciding admissibility due to the undeveloped record.  *Id.*

[6] Defendants cite *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1313 (11th Cir. 1999) and *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).  *See* Def's. Br. at 14.  Both concern expert affidavits submitted to establish causation and are therefore inopposite.

[7] Compared to the cases cited by defendants, there is no lack of connection between the data relied upon and plaintiffs' theory of the case.  *See Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 (8th Cir. 2003) (the court found there was a disconnect between plaintiffs' theory of the case and the expert testimony submitted when plaintiffs offered an economist to predict what the health of the population would have been if tobacco companies had revealed the risks of smoking and provided more healthy products); *see also McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (there was too great of an analytical gap between expert's testimony that a 4-hour delay of medical care caused plaintiffs' harm when the opinion was based on studies that showed a delay of 24-48 hours of medical care could cause paralysis).

forth in Point I, *supra*.    And, while defendants take issue with the results of Mr. Devor's

calculations, notably, defendants' offer no alternatives, nor do they identify with any precision

whatsoever what methodological flaws exist within Mr. Devor's treatment of their data.[9] This

does not satisfy *Daubert* motion standards  *See Seahorse Marine Supplies, Inc. v. Puerto Rico*

*Sun Oil Co.*, 295 F.3d 69, 81 (1st Cir. 2002) (the movant's "failure to meaningfully point to any

discrepancy in the record" was not enough to show cause to exclude the opponent's expert

testimony).  The fact that defendants disagree with Mr. Devor's conclusions does not render Mr.

Devor's testimony inadmissible. *See Id*.

        Defendants' arguments also do not make contact with the reliability prongs of Rule 702.

Rule 702 indicates that testimony is reliable if:  "(1) the testimony is grounded on sufficient facts

or data; (2) the testimony 'is the product of reliable principles and methods;' and (3) 'the witness

has applied the principles and methods reliably to the facts of the case.'"  *Amorgianos v. Nat'l*

*R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).   In deciding whether Mr. Devor's

expert report is admissible, the Court must focus on the methodology employed by Mr. Devor,

rather than focusing on his conclusions.    *Id.*, *citing Daubert*, 509 U.S. at 595.  Under a *Daubert*

inquiry, the Court should not consider whether the expert's conclusions are correct.  *Id*.

        Taking each prong in turn:

_____

        [8] Mr. Devor has been computing alternative true WACs using defendants' data since 2003 (Texas
case), and his methods have been deemed relevant and supportable time and again. Devor Dec. at ¶ 7.

        [9] Defendants own authority, *Sutera v. Perrier Gr. of Am., Inc*., 986 F.Supp 655, 661, (D. Mass
1997) (Def Br. at 16-17) confirms this.  Among the reasons the *Sutera* court excluded plaintiff's expert's
testimony was because defendants offered an alternative report presenting conflicting conclusion.  *See*
*Sutera*, 986 F.Supp. at 663

(1)  Mr. Devor's opinion  is grounded in defendants' own data and testimony.  *See* Rule 26 Statement of Devor, ¶ 174-176, Exh. 3 to Crisham Dec. [Docket No. 6128].  Defendants have not argued their own data is unreliable.  This prong is satisfied.

(2)  Mr. Devor described the principles and methods used to calculate estimated WACs, FULs based on WACs and FULs based on AMPs in his report.  *See* Rule 26 Statement of Devor, ¶ 18-20, ¶ 177-184, ¶190-193, Exh. 3 to Crisham Dec. [Docket No. 6128].[10]  Defendants fail to address with any specificity or particularity their issues with these calculations.  Again, they deposed Mr. Devor for four days and barely touched on such subjects.  Defendants' expert testified that he did not even look at defendants' data or verify any of Mr. Devor's calculations or methods:

> Q:  You have no understanding of what Mr. Devor was endeavoring to do with his calculations?
>
> A:  I've read his report, I know what he said he did, but I don't know what he was trying to do.  I can't get into his head.
>
> Q:  Is it – is it your testimony that Mr. Devor's report does not explain what he was endeavoring to do?
>
> A:  That's not my testimony.
>
> Q:   What is your understanding of what Mr. Devor's – Mr. Devor was endeavoring to do using defendants' sales and transactional data?
>
> MR. BUEKER:  Objection as to the form of the question.
>
> A:  I don't know why you keep saying "endeavoring."  I mean, I see that he's made some calculations, and that he calls them a WAC and an AWP.  But beyond that, I can't speculate as to what he – what he was doing.

---

[10] Unlike *SMS Systems Maint. Servs., Inc. v. Digital Equipment Corp.*, 188 F.3d 11, 25, cited by defendants (*see* Def. Brief at 18), Mr. Devor has provided far more than "bare conclusions" from his analysis of defendants' data.

Q:  Okay.  And he made those calculations using defendants' own sales and transactional data; correct?

A:  That's what he says.

Q:  Do you doubt that that's so?

A:  I haven't checked.  I haven't checked.  I haven't verified whether he has in fact done exactly what the calculations already said he did.

Deposition of Dr. Sumanth Addanki, 4/22/09, 149:14-150:19, attached as Exhibit C to the Allen Aff.  Defendants' merely challenge Mr. Devor's conclusions, which is insufficient.  *See Amorgianos*, 303 F.3d at 265, *citing Daubert*, 509 U.S. at 595.

(3)  Mr. Devor's principles and methods have been applied reliably to the facts of the case.[11]  As discussed, *supra*, Mr. Devor calculated alternative WACs, FUL based on same and FULs based on prices at or about defendants' AMPs.  *See* Rule 26 Statement of Devor, Exhibits 1-17 of Exh. 3 to Crisham Dec. [Docket No. 6128].

It must be noted that defendants' motion to exclude does not and cannot attack the purely mathematical exercise that Mr. Devor has conducted to determine what a FUL would have been if CMS set it based on a price at or about defendants' AMPs.  See Def. Br., p. 4-5.  These conclusions alone support the relief sought by plaintiffs' motion.

---

[11] Defendants cite *Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, 354-355, (S.D.N.Y 2003), *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005), and *Brown v. Wal-Mart Stores, Inc.*, 402 F.Supp.2d 303, 310 (D. Me. 2005) (*see* Def. Brief at 19), which are all inapposite to the case at-hand. *See* Baker, 254 F.Supp.2d at 354-355 (expert witness's comparison of the value of stock photos in order to determine the value of commissioned photos was like "comparing apples to oranges" and therefore, not an reliable estimate or expert opinion); *Rink*, 400 F.3d at 1290 (the expert failed to use the particular facts of each storage site for which he analyzed data, which in-part caused the report to be unreliable); *Brown*, 402 F.Supp.2d at 310 (the expert's "opinions merely place[d] an expert sheen on common sense" on what caused the shelf to fall and injure plaintiff…"there were no calculations of the weight and size of the shelving, the nature of the strength of the shelf's attachment to the floor, the number of boxes on the shelf at the time of the incident…").

## CONCLUSION

For all the foregoing reasons, defendants' joint motion to exclude the proffered expert report and testimony of Harris Devor should be denied.

Dated: June 30, 2009

Respectfully submitted,

**City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

**KIRBY McINERNEY, LLP**
825 Third Avenue
New York, New York 10022
(212) 371-6600

/s/ Joanne M. Cicala

By:   Joanne M. Cicala
     Kathryn B. Allen

Ross B. Brooks, Esq.
MILBERG LLP
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300
*Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
LEVY PHILLIPS &
KONIGSBERG, LLP
800 Third Avenue
New York, NY  10022
(212) 605-6205
*Counsel for the County of Orange*

16

## <u>CERTIFICATE OF SERVICE</u>

I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JOINT MOTION TO EXCLUDE THE PROFERRED EXPERT REPORT AND TESTIMONY OF HARRIS DEVOR, C.P.A. to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.

Dated:  June 30, 2009

_____/s/_____
James P. Carroll, Jr.
Kirby McInerney LLP
825 Third Avenue,16th Floor
New York, NY 10022
(212) 371-6600

17