# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Subcategory Case No: 03-10643-PBS |
| THIS DOCUMENT RELATES TO:<br><br>    *The City of New York, et al.*<br>*v.*<br>    *Abbott Laboratories, et al.* | ) ) ) ) ) ) ) | Judge Patti B. Saris |

## PLAINTIFFS' REPLY LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SANDOZ, INC.

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit this Reply Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.

## I.      SANDOZ SPECIFIC FACTS

**1.    The Sandoz Drugs and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto.  This exhibit also sets forth Sandoz's Published AWPs and WACs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Sandoz AMPs.  The exhibit notes which NDCs are associated with package sizes that set the FUL.**

<u>SANDOZ' RESPONSE TO STATEMENT 1:</u>

Sandoz does not dispute that Exhibit A to Plaintiffs' Sandoz-specific Statement purports to (i) list the Sandoz drugs and NDCs that have been examined in connection with the Plaintiffs' motion; (ii) set forth Sandoz' AWPs and WACs for those drugs and NDCs with any operative FUL, and Sandoz AMPs; and (iii) note which NDCs are associated with the package sizes that set the FUL.  Sandoz disputes the data set forth in Exhibit A to the extent it is not properly supported by evidence in the record.  Plaintiffs have cited no evidentiary basis for the data set forth in Exhibit A, as required by Local Rule 56.1. *See O'Brien v. Town of Agawam*, 440 F.Supp. 2d 3, 5 n.1 (D. Mass. 2006) (disregarding "purported statements of 'fact' not properly supported by citations to the record" in summary judgment pleadings as required by Local Rule 56.1).

**Plaintiffs' Reply to Statement #1:**

Sandoz disputes the data set forth in Exhibit A to the extent it is not supported by evidence in record.  This means that Sandoz does not dispute the data.  Plaintiffs properly cited Sandoz as the source of the Sandoz AMP data and the First Databank NDDF data file (Alabama Production, FDB-AWP 030785 – 030795) as the source of all other data (*See* Exhibit A at 12), which is the same source cited by Sandoz's expert Dr. Addanki.  *See* Affidavit of Dr. Sumanth Addanki dated May 15, 2009 [Dkt. No. 6056] at Exhibit 2 (identifying "First DataBank (Alabama Production) Data and NDDF (National Drug Data File)^{TM} Documentation Manual (Rev. April 2000)" as a Data source).  *See also* Reply Affidavit of Joanne M. Cicala, sworn to June 30, 2009 and submitted in further support of plaintiffs' motion  for partial summary judgment at ¶2, which is incorporated herein.  No further reply is required.

2.  The specific Sandoz Drugs at issue are the Albuterol .83 mg/ml Solution, Albuterol 90 MCG Inhaler, Cefadroxil 500 MG Capsule, Clonazepam .5 MG Tablet, Enalapril Maleate 20 MG Tablet, Lorazepam 1 MG Tablet, Metropolol 100 MG Tablet and Ranitidine 150 MG Tablet.

SANDOZ' RESPONSE TO STATEMENT 2:

Sandoz does not dispute that Sandoz' Albuterol 90 MCG inhaler and Enalapril Maleate 20 MG Tablet are drugs at issue in Plaintiffs' motion.  Sandoz disputes that the specific drugs properly at issue in Plaintiffs' motion include the correct  NDCs for Albuterol .83 mg/ml, Cefadroxil 500 MCG Capsule, Clonazepam 0.5 mg Tablet, Lorazepam 1 MG Tablet, Metropolol (sic) 100 MG Tablet and Ranitidine 150 MG Tablet.   Plaintiffs have cited no evidentiary basis for this assertion as required by Local Rule 56.1.  *See O'Brien v. Town of Agawam*, 440 F.Supp. 2d 3, 5 n.1 (D. Mass. 2006) (disregarding "purported statements of 'fact' not properly supported by citations to the record" in summary judgment pleadings as required by Local Rule 56.1).   In fact, Revised Exhibit B to Plaintiffs' Revised First Amended Consolidated Complain ("RFACC") does not list Albuterol 0.83 mg/ml Solution as a drug at issue in this litigation with respect to Sandoz.  *See* Revised First Amended Consolidated Complaint at Exhibit B-30 [Dkt. No. 4754].  Sandoz further disputes the specific drugs at issue to the extent they are not properly

2

supported by evidence in the record and to the extent the specific NDCs are not listed in Exhibit B to Plaintiffs' Revised First Amended Consolidated Complaint as a drug at issue in this litigation with respect to Sandoz.

**Plaintiffs' Reply to Statement #2:**

**With the exception of the Albuterol .83 mg/ml Solution, the parties agree as to which Sandoz drugs are at issue on this motion.  Sandoz's statement that Albuterol 0.83 mg is not part of plaintiffs' case is incorrect.  Sandoz agreed to the nine at-issue drugs on this motion and produced relevant data. Moreover, Albuterol 0.83 is a drug listed in plaintiffs RFACC.  *See* RFACC - Revised Exhibit B filed on September 29, 2007 (under seal) [Dkt#: 4754] The remainder of Sandoz's response is disputed and constitutes argument improper for a 56.1 opposition.  No further reply is required.**

3.  Sandoz manufactures drugs covered by Medicaid.  Sandoz Inc.'s Answer to the Revised First Amended Consolidated Complaint, ("Sandoz's Answer") [Docket #4848] at ¶ 792.

SANDOZ' RESPONSE TO STATEMENT 3:

Sandoz does not dispute the assertion set forth in Paragraph 3.

**Plaintiffs' Reply to Statement #3:**

**No further response is required.**

4.  Sandoz knows that it has an obligation to report true prices to the pricing services.  *See* Deposition of Frank Stiefel dated 11/13/2008 ("Stiefel Dep. 11/13/08") (Exhibit B) at 250:19-251:5.

SANDOZ' RESPONSE TO STATEMENT 4:

Sandoz disputes Paragraph 4 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' knowledge that it must report undefined "true" prices to the pricing services.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

3

**Plaintiffs' Reply to Statement #4:**

Sandoz disputes the statement for the time period of January 2001 – January 2004 (when Mr. Stiefel was employed by Sandoz, *see* Deposition of Frank Stiefel dated 11/13/2008 ("Stiefel Dep. 11/13/08") at 35:5-7 and 39:19-20) only to extent it mischaracterizes Mr. Stiefel's testimony. This means that Sandoz does not dispute the statement for that time period. Mr. Stiefel's testimony speaks for itself as follows:

> Q. Okay. Do you – would you agree, Mr. Stiefel, that Sandoz has an obligation to report true prices to the pricing services:
>
> A. I would say that –
>
> MR. GALLAGHER: Objection, form.
>
> A. I would say that they have an obligation to comply with all regulations, yes.
>
> Q. (BY MR. RIKLIN) Okay. Would you agree that included among those applications - - included among those obligations is the obligation to accurately and truthfully report your prices?
>
> A. Yes.

*See* Stiefel Dep. 11/13/08 (Exhibit B) at 250:19-251:5. No further reply is required.

**Formatted:** Line spacing: Double

5. **Sandoz knows that state Medicaid programs were responsible for determining an "estimated acquisition cost," which the federal regulations define as "the price generally and currently paid by providers."** *See* **Sandoz 30(b)(6) (Hartmann, Ronald) dated 1/25/07 ("Sandoz 30(b)(6)(Hartmann 1/25/07 Dep.") (Exhibit C) at 47:12-17.**

SANDOZ' RESPONSE TO STATEMENT 5:

Sandoz disputes the assertions set forth in Paragraph 5 and states that 42 C.F.R. § 447.301 speaks for itself. Sandoz also disputes Paragraph 5 to the extent that it mischaracterizes Mr. Hartmann's testimony regarding Sandoz' knowledge regarding state Medicaid programs' responsibilities throughout the relevant time period.

**Plaintiffs' Reply to Statement #5:**

The parties agree that 42 C.F.R. 447.301 speaks for itself, as does Mr. Hartman's

cited testimony.  No further reply is required.


6.   **Participation in the federal Medicaid rebate program is purely voluntary.  *See*** Sandoz 30(b)(6) Hartman 1/25/07 Dep. (Exhibit C) at 29:14-30:10.  **Sandoz has voluntarily chosen to participate in the Medicaid Rebate program, allowing its products to be reimbursed by state Medicaid programs.  *See* Sandoz 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 30:16-21.**

SANDOZ' RESPONSE TO STATEMENT 6:

Sandoz does not dispute that it has voluntarily chosen to participate in the Medicaid Rebate program.   Sandoz otherwise disputes Paragraph 6 to the extent that it mischaracterizes Mr. Hartmann's testimony regarding the nature of Sandoz' participation in the Medicaid Rebate program throughout the relevant time period.

**Plaintiffs' Reply to Statement #6:**

The parties agree that Sandoz has voluntarily chosen to participate in the Medicaid

rebate program.  No further reply is required.


7.   **Sandoz has executed the federal Medicaid rebate agreement.   *See* Sandoz** 30(b)(6) Hartmann 1/25/07 Dep. (Exhibit C) at 32:17-33:6; Sandoz's Answer at ¶ 116, ¶ 132, ¶ 168, ¶ 793.

SANDOZ' RESPONSE TO STATEMENT 7:

Sandoz does not dispute that it has executed the federal Medicaid rebate agreement, but states that the truth or falsity of this statement is not relevant to this Court's determination of summary judgment.

**Plaintiffs' Reply to Statement #7:**

The parties agree that Sandoz has executed the federal Medicaid agreement.  This

fact is material because Sandoz's execution of the agreement is among the bases for

5

**Sandoz's obligations to abide by Medicaid's rules.  *See Commonwealth of Mass. V. Mylan*,**

**2008 WL 5650859 (D.Mass) ("*Mylan*") at \*25.  No further reply is required.**


**8.  Sandoz knew that eligibility for reimbursement by Medicaid was an important issue for its customers.  *See* Stiefel Dep. 11/13/08 (Exhibit B) at 69:2-24.**

SANDOZ' RESPONSE TO STATEMENT 8:

Sandoz disputes Paragraph 8 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz knowledge of what was important for its customers throughout the relevant time period.  Sandoz states that Mr. Stiefel testified that during his employment at Sandoz, the company sought to have its drugs listed on each state's Medicaid formulary, which was in turn important to Sandoz' retail customers.  *See* Excerpts of November 13, 2008 deposition of Frank Stiefel, former Vice President of Sales at Sandoz ("Stiefel Tr. 11/13/08") at 69:2-13, attached collectively as Tab 1 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement #8:**

**The parties agree that at least during Mr. Stiefel's tenure (or between January 2001**

**– January 2004), *see* plaintiffs' reply to Statement #4, Sandoz sought to have its drugs on**

**each State's Medicaid formulary which was in turn important to Sandoz retail customers.**

**No further reply is required.**


**9.  One of the reasons Sandoz reported AWPs and WACs to the publishing compendia was that both were necessary to sell Sandoz products.  *See* Deposition of Kevin Galownia dated 6/11/07 ("Galownia Dep. 6/11/07") (Exhibit D) at 108:12-18.**

SANDOZ' RESPONSE TO STATEMENT 9:

Sandoz disputes Paragraph 9 to the extent that it mischaracterizes Mr. Galownia's testimony regarding the reporting of both AWPs and WACs to the publishing compendia as necessary to sell Sandoz products.  Sandoz also disputes Paragraph 9 to the extent that it mischaracterizes Mr. Galownia's testimony regarding the reasons Sandoz reported AWPs and WACs to the publishing compendia throughout the relevant time period.

Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

**Plaintiffs' Reply to Statement #9:**

**Sandoz disputes the Statement to the extent it mischaracterizes Mr. Galownia's testimony.  Mr. Galownia's testimony speaks for itself as follows:**

> **Q. And would you agree with me that one of the reasons that Sandoz reported AWP and WAC to the pricing compendia, as you said, made sure that it was consistent with the AWPs and WACs within the Sandoz system was because it was necessary in order to sell Sandoz products:**
>
> **A. Yes.**

**See Galownia Dep. 6/11/07 at 108:12-18.  Sandoz admits it reported AWPs and WACs in the publishing compendia throughout the relevant time period.  See plaintiffs' reply to Statement #13, incorporated herein.**

10. Sandoz customers expected Sandoz to report AWPs and WACs to the publishing compendia because the published prices affected their reimbursement.  *See* Sandoz 30(b)(6) (Kellum, Hector Armando) dated 1/25/07 ("Sandoz 30(b)(6)(Kellum) 1/25/07 Dep.") (Exhibit E) at 46:18-47:11.

SANDOZ' RESPONSE TO STATEMENT 10:

Sandoz disputes Paragraph 10 to the extent that it mischaracterizes Mr. Kellum's testimony regarding the expectations of Sandoz' customers throughout the relevant time period.

**Plaintiffs' Reply to Statement # 10:**

**Sandoz disputes the Statement only to the extent it mischaracterizes Mr. Kellum's testimony regarding customer expectations throughout the relevant time period.  This means Sandoz does not dispute the Statement.  Mr. Kellum was Sandoz's corporate designee for the entire 1997 – 2005 period.  Sandoz's corporate designee's testimony speaks for itself as follows:**

7

**Q.** So, back to that, one of the reasons that Sandoz has chosen to report AWP's and WAC's, to the pricing publications like First Data Bank is because Sandoz's customers expect and want Sandoz to do that; is that correct?

**A.** That is Correct.

**Q.** And that is because those prices affect the reimbursement of those customers; is that correct?

**A.** I believe that's correct, yes.

**Q.** And the reimbursement – these customers by the way are reimbursed by among other entities, state Medicaid programs; is that correct?

**A.** That's my understanding, that some of our customers are reimbursed by state Medicaid programs, yes.

*See* **Sandoz 30(b)(6) (Kellum) 1/25/07 Dep. (Exhibit E) at 46:18-47:11. No further reply is**

**required.**

**Sandoz Set and Reported Its AWPs and WACs**

**11. At all times, from 1997 to 2005, Sandoz reported or caused to be reported the AWPs for its drugs to the publishing compendia.** *See* **Galownia Dep. 6/11/07 (Exhibit D) at 264:1-14;** *see also* **Deposition of Christopher Worrell, Vol. II dated 3/26/08 ("Worrell Dep. 3/26/08) (Exhibit F) at 349:11-20.**

SANDOZ' RESPONSE TO STATEMENT 11:

Sandoz disputes Paragraph 11 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 11:**

**Sandoz agrees that it has been reporting the same AWPs and WACs to First**

**DataBank, Redbook and Medispan since 1998 or 1999.** *See* **Sandoz response to Statement**

**12 below which is incorporated herein.**

8

Beyond that, Sandoz disputes the above Statement only to the extent it mischaracterizes Messrs. Worrell's and Galownia's testimony.  This means Sandoz does not dispute the Statement.  Mr. Worrell's and Mr. Galownia's testimony speaks for itself as follows:

> **Q. And by the way, the AWPs and WACs in this document and the other – well, the AWPs and WACs in this document, are those the AWPs and WACs that were reported to First Databank by Sandoz and published by First Databank?  Is that correct?**
>
> **MR. GALLAGHER: Objection to form of the question.**
>
> **THE WITNESS:  Those would have been the AWPs and WACs effective on the date the price list was generated and would have been the same AWP and WAC that had been reported to First Databank and any other pricing services.**
>
> **Q. And for each Sandoz drug that has a unique NDC, in addition to setting that AWP and WAC, Sandoz reports that AWP and WAC to, among others, First DataBank, is that correct?**
>
> **A. Correct.**
>
> **Q. And it reports that same AWP and EAC to the other drug pricing publishers, such as Red Book and Medi-Span, to the extent it was a separate entity at the time; is that correct?**
>
> **A. Correct.**

*See* Galownia Dep. 6/11/07 (Exhibit D) at 264:1-14; *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20.  No further reply is required.

**12. Sandoz reported or caused to be reported the same AWPs to all three of the national compendia:  First Data Bank, Red Book and Medi-Span.** *See* **Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20; Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14.**

SANDOZ' RESPONSE TO STATEMENT 12:

Sandoz disputes Paragraph 12 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the

relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.  In fact, Mr. Hector Armando Kellum, Sandoz' 30(b)(6) witness,  testified that he was only able to confirm that Sandoz had been reporting AWPs to pricing services like First DataBank since about 1998 or 1999.   *See* Excerpts of January 25, 2007 deposition  of Sandoz 30(b)(6) witness Hector Armando Kellum, Manager of Pricing at Sandoz ("Kellum Tr. 1/25/07") at 38:7-16, attached collectively as Tab 2 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Since that time period, Sandoz has reported the same AWPs and WACs to First DataBank, Red Book and Medispan.   *See* Excerpts of June 11, 2007 deposition of Kevin Galownia, former Manager of Pricing at Sandoz ("Galownia Tr. 6/11/07") (Tab 3) at 135:7-14, attached collectively as Tab 3 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.; Kellum Tr. 1/25/07 (Tab 2) at 57:7-14.

**Plaintiffs' Reply to Statement # 12:**

The parties agree that at a minimum Sandoz has been reporting the same AWPs and WACs to First DataBank, Redbook and Medispan since 1998 or 1999.  In response to Statement #15 below, which is incorporated herein, Sandoz admits that from 1997-2005 it had only one AWP for every NDC.  Beyond that, Sandoz disputes the above Statement only to the extent it mischaracterizes Messrs Worrell's and Galownia's testimony.  This means Sandoz does not dispute the Statement.  Mr. Worrell's and Mr. Galownia's testimony speaks for itself:

> **Q. And for each Sandoz drug that has a unique NDC, in addition to setting that AWP and WAC, Sandoz reports that AWP and WAC to, among others, First DataBank, is that correct?**
>
> **A. Correct.**
>
> **Q. And it reports that same AWP and WAC to the other drug pricing publishers, such as Red Book and Medi-Span, to the extent it was a separate entitiy at the time; is that correct?**
>
> **A. Correct.**

*See* **Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20**

10

> **Q. And I take it, then, that the WACs and AWPs that Sandoz reported to each of these sources were identical, that is, you reported the same WACs and AWPs for a particular product to First Databank, Redbook and Medispan; is that correct:?**
>
> **A. They all received the same e-mail.   They all received the same information.**

*See* **Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14**

**13. Sandoz understood that the publishing compendia published the identical AWPs to the AWPs that Sandoz reported.** *See* **Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.**

SANDOZ' RESPONSE TO STATMENT 13:

Sandoz disputes the assertions set forth in Paragraph 13 and states that the publishing compendia set their own AWPs irrespective of the AWPs reported by Sandoz. *See* Excerpts of August 7, 2007 deposition of Patricia Kay Morgan, First DataBank ("Morgan Tr. 08/07/07") at 42:10-43:7, attached collectively as Tab 4 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.. In fact, Mr. Hector Armando Kellum, Sandoz' 30(b)(6) witness, testified that in certain instances there were discrepancies between the AWPs submitted by Sandoz to First DataBank and what First DataBank published. *See* Kellum Tr. 1/25/07 (Tab 2) at 56:4-12. Testimony from First DataBank shows that it controlled the Blue Book AWPs it published and based them on wholesaler surveys, not AWPs submitted by manufacturers. *See* Morgan Tr. 08/27/07 (Tab 4) at 38:1-39:3, 42:10-43:7. Sandoz further disputes that the evidence cited by Plaintiffs represents Sandoz' understanding regarding the publishing compendia's practices throughout the relevant time period.

**Plaintiffs' Reply to Statement #13:**

The record evidence establishes the general proposition stated, and speaks for itself.

**That testimony is as follows:**

> **Q. The times that Sandoz reported AWPs and WACs to First Databank and the other pricing compendia, Sandoz intended for First Databank to publish those identical AWPs and WACs, right?**
>
> **A. Yes.  Our understanding was that whatever we communicated was what was ultimately published.**

*See* **Galownia Dep. 6/11/07 (Exhibit D) at 130:21-131:7.**

11

> **Q.** And in fact, First Databank did publish the identical WACs and AWPs that Sandoz reported to First Databank during the time you were employed there; is that correct?
>
> **A.** That was my understanding.

*Id.* **at 131:19-132:1.**

Sandoz's reference to the testimony of its 30(b)(6) witness is incomplete and misleading. Sandoz's corporate designee testified as follows and consistent with plaintiffs' statement:

> **Q.** -- when Sandoz reports AWP's and WAC's, to the pricing publications, including First Data Bank, Sandoz intends for First Data Bank to publish those identical AWP's and WAC's'; is that correct?
>
> **MR. GALLAGHER:** Objection to the form of the question.
>
> **A.** That is our expectation, yes.
>
> **Q.** And more than just your expectation Sandoz in fact, knows that First Data Bank takes the AWP's and WAC's that Sandoz reports to it and publishes those identical AWP's and WAC's; isn't that correct?
>
> **MR. GALLAGHER:** Objection to the form of the question.
>
> **A.** You know, I can't speak for every instance and every product that we have ever submitted pricing to them for.  But typically in my experience, that has been the case.  They have published the AWP and WAC, that we submitted to them.
>
> **Q.** And sitting here today, can you identify any specific instance in which First Data Bank published an AWP or a WAC, for a Sandoz drug that was different than the AWP or WAC, that Sandoz reported to First Data Bank?
>
> **A.** I can't cite a specific instance.  However, I do or I am aware that from time to time there have been discrepancies between what we have submitted to them and what they have published.
>
> **Q.** Can you describe those instances?

12

A. I can't describe them in a lot of detail other than, you know, for whatever reason, we have gotten inquiries, sometimes from a customer or from First Data Bank themselves, asking us to verify something.  And when we have done that, have determined that they did not have the AWP, and/or WAC, that we had you know, originally submitted to them.

Q. What was the resolution of those discussions?  That is, did First Data Bank wind up publishing the AWP's and WAC's that you had originally sent to it?

A. I believe after we have confirmed what the correct AWP and WAC was, then they published those prices.  That's my belief.

Q. Does Sandoz also send WAC's and AWP's to the Redbook for Sandoz products?

MR. GALLAGHER:  Objection to the form of the question.

A. Yes, they receive that pricing.

Q. And are those the same WAC's and AWP's, that Sandoz sends to First Data Bank?

A. Yes.

MR. GALLAGHER:  Objection to the form of the question.

A. Yes, they are the same.

Q. Has Sandoz ever been asked by First Data Bank, Redbook or Medispan, to verify the WAC's and AWP's, that those companies publish for Sandoz drugs?

A. In my experience, yes, they have from time to time, asked us to verify those prices.

Q. Is that both First Data – I'm sorry.  Does that include First Data Bank and Redbook and Medispan or just one or more?

MR. GALLAGHER:  Objection to the form of the question.

A. I wasn't prepared to answer that question.  So I believe that it would have been any one of those services.  I'm quite certain First Data Bank has asked us to verify pricing.

13

**Q.  And on those occasions, where it has asked you to verify those prices, have you in fact, that is, has Sandoz in fact done that?**

**A.  Yes.**

**Q.  And if corrections need to be made, does Sandoz make those corrections and report them back to First Data Bank?**

**A.  Yes, we would do that.**

**Q.  And those occasions, does First Data Bank in fact, publish those corrected AWP's and WAC's that Sandoz has provided it?**

**A.  I believe so, yes.**

**KellumTr. 1/25/07 at 55:5-58:22**

**14. Sandoz verified whether the pricing compendia published the correct AWPs, and if Sandoz requested any corrections, the pricing compendia would make such corrections to Sandoz's published AWPs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 56:14-58:22.**

<u>SANDOZ' RESPONSE TO STATEMENT 14</u>:

Sandoz disputes the assertions set forth in Paragraph 14 and states that, from time to time, First DataBank requested Sandoz to verify a published AWP or WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 135:7-137:2.   However, Sandoz did not regularly receive requests from First DataBank to verify AWP information.  *See* Kellum Tr. 1/25/07 (Tab 2) at 56:4-21.  It was not a normal practice for First DataBank to ask manufacturers such as Sandoz to verify pricing information.  *See* Morgan Tr. 08/27/07 (Tab 4) at 198:10-23.  Sandoz otherwise disputes Paragraph 14 to the extent that it mischaracterizes Mr. Kellum's testimony regarding Sandoz' practices with respect to verification of AWPs throughout the relevant time period.

**Plaintiffs' Reply to Statement #14:**

**Plaintiffs incorporate their reply to Statement #12 herein.**

**15. Sandoz had only one AWP for any Sandoz NDC at a given time, and that was the only AWP expected to be published.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 348:18-349:4.**

SANDOZ' RESPONSE TO STATEMENT 15:

Sandoz does not dispute that it generally had only one AWP for any Sandoz NDC at a given time, but states that the truth or falsity of this statement is not relevant to this Court's determination of summary judgment.  Sandoz further disputes Paragraph 15 to the extent that it mischaracterizes Sandoz' expectations regarding the publication of AWPs throughout the relevant time period.

**Plaintiffs' Reply to Statement #15:**

**The parties agree that Sandoz generally had only one AWP for any Sandoz NDC at a given time.  Responding further, Sandoz's Response that AWP prices are not relevant or material to plaintiffs' motion is incorrect.  In setting the FUL, CMS considered the published prices from First Databank, Red Book and Medi-Span that were presented in the FULs printouts.  *See* Gaston Decl. at ¶ 3 (statement of general practice).  This included AWPs, WACs and Direct Prices.  *See id.* at Exhibits A & D (FULs system printouts showing AWP prices).  Defendants admit that the published prices presented in the FULs printouts included AWPs.  *See* Defendants' Response to Plaintiffs' Local Rule 56.1 Statement of "Undisputed" Facts Applicable To All Defendants and Statement of Additional Undisputed Material Facts [Dkt. No. 6117] ("Defs. Common Response") at ¶ 9.**

**16. At all times, from 1997 to 2005, Sandoz reported or caused to be reported WACs for its drugs to the publishing compendia.  *See* Deposition of Christopher Worrell dated 8/23/2007 ("Worrell Dep. 8/23/07") (Exhibit G) at 86:15-87:2; Galownia Dep. 6/11/07 (Exhibit D) at 264:1-14; Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20.**

SANDOZ' RESPONSE TO STATEMENT #16:

Sandoz disputes Paragraph 16 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant timeframe.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 16:**

Sandoz admits in response to Statement # 12 incorporated herein, that it reported the same WAC to the publishers from 1998 or 1999 forward.

Beyond that, Sandoz disputes the above Statement only to the extent it mischaracterizes the cited testimony. This means Sandoz does not dispute the Statement. The testimony speaks for itself as follows:

> Q. And depending on what that circumstance was, if you picked a WAC which was the price to wholesalers, did you report that WAC to First DataBank?
>
> A. Yes, we did.
>
> Q. When you changed your price to wholesalers, did you always report that figure to First DataBank?
>
> A. Yes.  We would always report any updates to our pricing to First DataBank and the other editorial agencies.

Worrell 8/23/07 at 86:15-87:2

> Q. And by the way, the AWPs and WACs in this document and the other – well, the AWPs and WACs in this document, are those the AWPs and WACs that were reported to First Databank by Sandoz and published by First Databank?  Is that correct?
>
> MR. GALLAGHER:  Objection to the form of the question.
>
> THE WITNESS:  Those would have been the AWPs and WACs effective on the date the price list was generated and would have been the same AWP and WAC that had been reported to First Databank and any other pricing services.

Galownia 6/11/07 at 264:1-14

> Q. And for each Sandoz drug that has a unique NDC, in addition to setting that AWP and WAC, Sandoz reports that AWP and WAC to, among others, First DataBank, is that correct?
>
> A. Correct.

16

**Worrell 3/26/08 at 349:11-20**

Responding further, the testimony of Sandoz's 30(b)(6) designee, Mr. Kellum, cited in plaintiffs' reply to Statement # 13, above, and incorporated herein, further establishes the point, and for the entire 1997-2005 period.

**17. Sandoz reported or caused to be reported the same WACs to all three of the national compendia:   First Data Bank, Red Book and Medi-Span.   *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:11-20; Galownia Dep. 6/11/07 (Exhibit D) at 135:7-14.**

SANDOZ' RESPONSE TO STATETMENT 17:

Sandoz disputes Paragraph 17 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell regarding the reporting practices of Sandoz throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 17:**

Sandoz admits that it has been reporting the same WACs to First DataBank, Redbook and Medispan since 1998 or 1999.  *See* Sandoz response to Statement 12 above which is incorporated herein.   Beyond that, Sandoz disputes the above Statement only to the extent it mischaracterizes Messrs Worrell's and Galownia's testimony.  This means Sandoz does not dispute the Statement.  The cited testimony speaks for itself as follows:

> **Q. And for each Sandoz drug that has a unique NDC, in addition to setting that AWP and WAC, Sandoz reports that AWP and WAC to, among others, First DataBank, is that correct?**
>
> **A. Correct.**
>
> **Q. And it reports that same AWP and WAC to the other drug pricing publishers, such as Red Book and Medi-Span, to the extent it was a separate entity at the time; is that correct?**
>
> **A. Correct.**

17

**Worrell 3/26/08 at 349:11-20**

> **Q.  And I take it, then, that the WACs and AWPs that Sandoz reported to each of these sources were identical, that is, you reported the same WACs and AWPs for a particular product to First Databank, Redbook and Medispan; is that correct:?**
>
> **A.  They all received the same e-mail.   They all received the same information.**

**Galownia 6/11/07 at 135:7-14.**

Responding further, the testimony of Sandoz's 30(b)(6) designee, Mr. Kellum, cited in plaintiffs' reply to Statement # 13, above, and incorporated herein, further establishes the point, and for the entire 1997-2005 period.  No further reply is required.


**18. Sandoz understood that the publishing compendia published identical WACs to the WACs that Sandoz reported.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.**

SANDOZ' RESPONSE TO STATEMENT 18:

Sandoz disputes Paragraph 18 to the extent that it mischaracterizes Mr. Galownia's testimony regarding Sandoz' understanding of the publishing compendia's practices throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

**Plaintiffs' Reply to Statement # 18:**

Sandoz admits that it has been reporting the same WACs to First DataBank, Redbook and Medispan since 1998 or 1999.  *See* Sandoz response to Statement 12 above which is incorporated herein.   Beyond that, Sandoz disputes the Statement only to the extent it mischaracterizes Messrs Worrell's and Galownia's testimony.  This means Sandoz does not dispute the Statement.  The cited testimony speaks for itself as follows:

> **Q.  So you, as the pricing director for Sandoz, knew that First Databank would, in fact, publish the identical WACs and AWPs that you reported to First Databank for Sandoz products; is that correct?**

18

**MR. GAHLLAGHER:  Objection to the form of the question.**

**THE WITNESS:  That is correct.  We did understand that they would publish what we communicated.**

**BY MR. LIBMAN:**

**Q. And in fact, First Databank did publish the identical WACs and AWPs that Sandoz reported to First Databank during the time that you were employed there; is that correct?**

**A.  That was my understanding.**

Galownia Dep. 6/11/07 (Exhibit D) at 131:8-132:1.

Responding further, the testimony of Sandoz's 30(b)(6) designee, Mr. Kellum, cited in plaintiffs' reply to Statement # 13, above, and incorporated herein, further establishes the point, and for the entire 1997-2005 period.  No further reply is required.

**19. Sandoz verified whether the pricing compendia published the correct WACs, and if Sandoz requested any corrections, the pricing compendia would make such corrections to Sandoz's published WACs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 56:14-58:22.  If any corrections were necessary, Sandoz would communicate such corrections back to First Data Bank, and First Data Bank would make such corrections.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 135:18-137:16.  Red Book had an annual policy of requesting Sandoz to verify its published information.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 136:10-13; 138:2-142:13.  Red Book would send Sandoz a hard copy list of Sandoz's published prices, and Sandoz would either sign-off or make corrections to the information and return the document to Red Book.  *See Id*.**

SANDOZ' RESPONSE TO STATEMENT 19:

Sandoz disputes Paragraph 19 to the extent that is mischaracterizes the testimony of Mr. Kellum and Mr. Galownia regarding Sandoz' practices with respect to verification of WACs in the pricing compendia.  Sandoz  states that, from time to time, RedBook requested Sandoz to verify a published AWP or WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 135:7-137:2.

**Plaintiffs' Reply to Statement # 19:**

Sandoz does not dispute the first sentence of the Statement.  Sandoz admits that it reported the same WACs and AWPs to all pricing compendia from 1998 or 1999 forward.  *See* Sandoz response to Statement #12 above which is incorporated herein.  Responding further, the cited testimony speaks for itself.  No further response is required.

> Q. **During the time you were employed by Sandoz, was the company ever asked by Frist Databank, Redbook or Medispan to verify the WACs or AWPs for the Sandoz products that were being published by those companies?**
>
> MR. GALLAGHER:  Objection to the form of the question.
>
> THE WITNESS: I recall one request coming through for us to verify the information that they had on file.
>
> BY MR. LIBMAN:
>
> Q. **And which of the three pricing compendia did that request come from?**
>
> A. **As I recall that one time from First Databank.  I can say that Redbook had an annual policy to verify information on a one-time basis, mostly because they had a hard copy document that they primarily sold.**
>
> Q. **The one instance that First Databank asked you to verify or confirm WACs or AWPs, was that for the full portfolio of Sandoz drugs that – for which they published WAC and AWP information or was it some subset of those drugs?**
>
> A. **The update that First Databank sent to us was in addition to AWP and WAC, verifying that all of our products were listed, and that products listed that should be inactivated were inactivated.  So it included the full set of products they had on file for our company.**
>
> Q. **And did you need to make any corrections to that listing and those prices?**
>
> A. **I don't recall what corrections I had to make, but I'm sure there were corrections.**
>
> Q. **And was it the case that whatever corrections that you believe needed to be made were communicated back to First Databank, and that First**

Databank, in fact, published the corrected WACs or AWPs that you requested it make?

A. My understanding would be that any corrections were communicated back to First Databank, and that they would subsequently make that correction.

**Galownia 6/11/07 at 135:18-137:16**

Q. Mr. Galownia, I have handed you what's been marked as Exhibit Galownia 007. For the record, it is a multi-page document from Bates numbered Sandoz WISC0014382 through 14431. It is entitled Redbook Product Listing Verification. Please take your time to review this. Is this the document you were describing earlier from Redbook which asked Sandoz to review and make any changes to the AWPs and WACs that Redbook was publishing for Sandoz's products?

A. Yes, it is.

Q. And is that your signature at the bottom of the first page and the subsequent pages with the date of – the date for most of these is October 21, 2003. I think a few pages at the end have a date, November 12, 2002?

A. Yes, that is my signature.

Q. And if you thumb through some of the pages, I think Page – Page 5, then Page 6, the page number is at the top right there, there is a number of handwritten numbers in there. Are those – is that our handwriting as well?

A. That is my handwriting.

Q. Would these corrections or amendments that you were making to the AWPs and WACs that were listed by Redbook?

A. Yes, these are corrections to the AWP and WAC that were listed in Redbook as of the date this document was printed.

Q. And so by signing this document, you were directing Redbook to make the changes you indicated or otherwise to publish the WACs and AWPs that were listed on this 50-page document for Sandoz's products; is that correct?

MR. GALLAGHER: Objection to the form of the question.

21

THE WITNESS:  What I can say is that this document was, based on the dates of the changes for the ones I am looking at, intended to verify changes that were communicated after the document was received.

BY MR. LIBMAN:

Q. But apart from the changes, there are some pages with no changes made or the box at the bottom left that you checked says, okay as is.  Do you see that?

A. Yes, I do.

Q. So my question is, by assigning each page of this document either as okay as is or okay with changes, were you directing Redbook to publish the WACs and AWPs listed on this document either as listed or pursuant to the changes that you indicated?

A. I was --

MR. GALLAGHER:  Objection to the form of the question.

THE WITNESS:  I was confirming that the information Redbook had communicated was either correct or not so much correct, but either match what we had in our system or was different from what we had in our system.

BY MR. LIBMAN:

During the time you were employed by Sandoz, was the company ever asked by First Databank, Redbook or Medispan to verify the WACs or AWPs for the Sandoz products that were being published by those companies?

MR. GALLAGHER:  Objection to the form of the question.

THE WITNESS: I recall one request coming through for us to verify the information that they had on file.

BY MR. LIBMAN:

Q. So you understood, by signing this, that Redbook would publish the WACs and AWPs either as listed or as indicated by you needing changing; is that correct?

A. I understood that they would, with whatever they did with the information, use the information that I had noted on this document.

Q. During the time that you were working at Sandoz, did you ever take any action to stop or object to or oppose the publication of a WAC or AWP by First Databank, Redbook or Medispan, apart from the kind of corrections we have been looking at here?

A. Would you repeat the question again?

Q. Sure. The question is whether you ever took any action to stop or object to or otherwise oppose the publication of a WAC or an AWP by First Databank, Redbook or Medispan for any Sandoz drug.

MR. GALLAGHER: Objection to the form.

THE WITNESS: I can't say for certain, but in the event that I had received a communication that what they had published differed from what we had in our system, I would let them know.

BY MR. LIBMAN:

Q. Am I correct that in each instance in which you did let either First Databank or Redbook or Medispan know of such a correction, that those entities, in fact, made the corrections that you requested?

A. My assumption was that they would have.

Galownia 6/11/07 at 138:2-142:13


20. Sandoz had only one WAC for any Sandoz NDC at a given time, and that was the only WAC expected to be published. *See* Worrell Dep. 3/26/08 (Exhibit F) at 349:5-10.

SANDOZ' RESPONSE TO STATEMENT 20:

Sandoz does not dispute that it generally had only one WAC for any Sandoz NDC at a given time, but states that the truth or falsity of this statement is not relevant to this Court's determination of summary judgment. Sandoz further disputes that the evidence cited by Plaintiffs represents Sandoz' expectations regarding the publication of WACs.

**Plaintiffs' Reply to Statement # 20:**

The parties agree that Sandoz generally had only one WAC for any Sandoz NDC at

a given time. Sandoz admits in response to Statement # 12 that it reported the same WAC

to the publishers from 1998 or 1999 forward.  Responding further, plaintiffs incorporate

their replies to Statements # 12, 13 and 16 herein.


    **21. Sandoz understands that AWP is one of the prices considered as the basis for Medicaid reimbursement.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 107:3-108:10; Worrell Dep. 3/26/08 (Exhibit F) at 433:20-434:5.**

    <u>SANDOZ' RESPONSE TO STATEMENT 21</u>:

    Sandoz disputes Paragraph 21 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Worrell testimony regarding Sandoz' understanding of AWP's relationship to Medicaid reimbursement.   In fact, Mr. Galownia has testified:

> Q:    Was it also a reason that the company reported WACs and AWPs to the pricing services because your customers expected it, that is, their reimbursement that they received from third party payers could depend on the published AWP or WAC for a Sandoz product?
>
> Counsel:  Objection to the form of the question.
>
> A:    My understanding was that customers expected us to have our products listed at the pricing services.  I did not know specifically why.

*See* Galownia Tr. 6/11/07 (Tab 3) at 106:12-107:1.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment with Sandoz.

    **<u>Plaintiffs' Reply to Statement # 21</u>:**

    **Sandoz disputes the above Statement only to the extent it mischaracterizes Messrs**

**Worrell's and Galownia's testimony.  This means Sandoz does not dispute the Statement.**

**In response to the question "are you aware that state Medicaid programs rely on AWP,"**

**Mr. Worrell expressly testified, "Yes, I'm aware that AWP was one of the options to use in**

**terms of reimbursement formula."   Worrell Dep. 3/26/08 (Exhibit F) at 434:3-5.   The**

**excerpt Sandoz presents from Mr. Galownia's testimony is misleading.  Mr. Galownia went**

**on to testify that "AWP was one of several price points that the states may consider in**

**establishing reimbursement for a particular product."  Galownia Dep. 6/11/07 (Exhibit D)**

at 108:6-10.  **Sandoz cannot reasonably dispute the Statement's accuracy for the entire 1997-2005 period.  Its 30(b)(6) designee, Hector Kellum, testified as to the entire 1997-2005 period consistent with Messrs. Galownia and Worrell.  *See, e.g.*, January 25, 2007 deposition of Sandoz 30(b)(6) witness at 46:18 - 47:4 (Exhibit E).**

**22. Sandoz knows that Medicaid reimbursements can be based on WACs.  *See* Stiefel Dep. 11/13/08 (Exhibit B) at 66:4-11.**

SANDOZ' RESPONSE TO STATEMENT 22:

Sandoz disputes Paragraph 22 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' knowledge regarding WAC's relationship to Medicaid reimbursement throughout the relevant timeframe.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement # 22:**

**Sandoz disputes the statement only to extent it mischaracterizes Mr. Stiefel's testimony.  This means that Sandoz does not dispute the statement.  Mr. Stiefel's testimony speaks for itself as follows:**

> **Q. During your time at Geneva, Mr. Stiefel, were you aware that various third-party payers use AWP and WAC to determine reimbursement?**
>
> **A. I'm aware of that.  I was aware of it.**
>
> **Q. And among those third-party payers, Medicaid, state Medicaid programs use AWP and WAC to determine reimbursement, you were aware of that?**
>
> **A. Yes.**

**Stiefel Dep. 11/13/08 (Exh. B) at 66:4-11.**

**Sandoz admits this fact for the time period Mr. Stiefel worked at Sandoz, January 2001 – January 2004.  *See* plaintiffs' reply to Statement # 4, which is incorporated herein.**

**Sandoz cannot reasonably dispute the accuracy of the statement for the entire 1997 – 2005 period.  Its 30(b)(6) designee, Hector Kellum, testified as to the entire 1997-2005 period consistent with Messrs. Galownia and Worrell.  *See, e.g.*, January 25, 2007 deposition of Sandoz 30(b)(6) witness at 46:18 - 47:4 (Exhibit E).**

**23. Sandoz knows that Medicaid reimbursements can be based on FUL.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 434:6-435:5.  Sandoz understands that CMS sets the FUL by taking 150% of the lowest published WAC.  *See* Deposition of Christopher Worrell dated 5/13/08 ("Worrell 5/13/08 Dep.") (Exhibit H) at 636:6-16.**

SANDOZ' RESPONSE TO STATEMENT 23:

Sandoz disputes the assertions set forth in Paragraph 23 and states that CMS does not calculate FULs in accordance with a rigid formula, but instead often uses discretion when setting a FUL, considering factors such as product availability, and does not always use the "lowest published price" available.  *See* Excerpts of March 19, 2008 deposition of Sue Gaston, Center for Medicaid and Medicare Services ("Gaston Tr. 03/19/08") (Tab 5) at 426:14-427:20; 428:10-429:22; 449:9-453:1, attached collectively as Tab 5 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc..  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 23:**

**Sandoz does not dispute that Medicaid reimbursements can be based on FUL.  The remainder of Sandoz's response is irrelevant for the reasons set forth in plaintiffs' memoranda of law in support of their motion.  No further reply is required.**

**Sandoz's Published AWPs and WACs had No Relationship to Actual Prices**

**24. At all times of launch, for each of its generic drugs, Sandoz generally set the AWP somewhere between 10 and 15 percent below the corresponding brand AWP.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 465:4-466:2; Galownia Dep. 6/11/07 (Exhibit D) at 162:14-20; Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 79:1-14.**

SANDOZ' RESPONSE TO STATEMENT 24:

26

Sandoz disputes Paragraph 24 to the extent that it mischaracterizes the testimony of Mr. Worrell, Mr. Galownia, and Mr. Kellum.  In fact, Mr. Kellum, Sandoz' 30(b)(6) witness, has testified that it was "quite possible that there  is some that are not a 10 percent discount."  *See* Kellum Tr. 1/25/07 (Tab 2) at 79:1-14.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's and Mr. Worrell's employment at Sandoz.

**Plaintiffs' Reply to Statement # 24:**

**Sandoz's dispute is baseless.  Plaintiffs' statement describes Sandoz's "general practice" which is supported by the cited record evidence.  Sandoz's dispute that plaintiffs have not provided an evidentiary basis for the entire time period is also baseless.  The testimony of Sandoz's 30(b)(6) witness applies to the entire 1997-2005 period.  *See* Sandoz 30(b)(6) (Kellum) 1/25/07 (Exh. E) at 81:4-22.**

**25. Once AWP was set, Sandoz would not usually adjust the AWP for that product, even if Sandoz contract prices were decreasing.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 467:21-468:7.**

SANDOZ' RESPONSE TO STATEMENT 25:

Sandoz disputes Paragraph 25 to the extent that it mischaracterizes the testimony of Mr. Worrell regarding Sandoz' pricing practices throughout the relevant time period.  Sandoz states that Christopher Worrell testified that once an AWP was set, he usually did not look at it again after the product was launched.  As Mr. Worrell testified:

> Q.    And I think you testified earlier as well that generally, once the AWP was set, that you didn't usually look at that or concern yourself with that after the product was launched, is that correct?
>
> A.    Not usually.

*See* Excerpts of March 26, 2008 Christopher Worrell, Former Vice President of Sales and Marketing, ("Worrell Tr. 03/26/2008") at 467:21-468:7, attached collectively as Tab 6 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc..  Sandoz otherwise disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 25**:

Sandoz's dispute of the above Statement is baseless and their selected excerpt from Mr. Worrell's testimony is misleading.  Immediately following Sandoz's selected excerpts, Mr. Worrell testified that, after launch, he did not look at the AWP or concern himself with it even if contract prices were dropping.  Worrell Dep. 3/26/08 at 467:21-468:7.  Mr Worrell went on to testify that Sandoz had no policy requiring it to lower its AWP or WAC for any drugs as the market price or contract price dropped.  *Id.* at 468:13-18.  Sandoz cannot reasonably dispute the Statement is accurate for the entire time period at issue.  Its 30(b)(6) designee testified likewise.  *See* Sandoz 30(b)(6) (Kellum) 1/25/07 (Exh. E) at 81:4-22.

26. The AWPs Sandoz reported to the pricing compendia did not represent true average prices charged by wholesalers for Sandoz product.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 112:15-113:9.

SANDOZ' RESPONSE TO STATEMENT 26:

Sandoz disputes the assertions set forth in Paragraph 26 and states that Sandoz' AWPs are not untrue because they were not intended to be nor understood by Plaintiffs, the pricing compendia, or others to be a literal average of prices charged by wholesalers, but instead were understood and used as a benchmark.   Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

**Plaintiffs' Reply to Statement # 26**:

Sandoz response is improper argument and disputed.  The record evidence speaks for itself.  No further reply is required.

27. The AWPs Sandoz reported to the pricing compendia did not represent true prices paid by pharmacies to acquire Sandoz products.  *See* Deposition of Frank Stiefel dated 1/27/09 ("Stiefel Dep. 1/27/09") (Exhibit I) at 378:4-10.

28

<u>SANDOZ' RESPONSE TO STATEMENT 27</u>:

Sandoz disputes Paragraph 27 to the extent it misrepresents Mr. Stiefel's testimony regarding the reporting practices of Sandoz throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement # 27:**

**Sandoz disputes the statement only to extent it misrepresents Mr. Stiefel's testimony regarding Sandoz reporting practices throughout the relevant time period. Sandoz cannot reasonably dispute that all of its witnesses, including its 30(b)(6) designee, testified that Sandoz's AWPs did not reflect Sandoz's actual prices to pharmacies for its products. *See, e.g.*, Sandoz 30(b)(6) (Kellum) 1/25/07 (Exh. E) at 90:3-91:9.**


**28. The true average prices paid by pharmacies to acquire Sandoz products were always less than AWP. *See* Stiefel, Frank (1/27/09) Dep. (Exhibit I) at 378:11-16.**

<u>SANDOZ' RESPONSE TO STATEMENT 28</u>:

Sandoz disputes Paragraph 28 to the extent it mischaracterizes the testimony of Mr. Stiefel regarding the prices paid by pharmacies to acquire Sandoz products throughout the relevant time period. Sandoz further states that AWP for generic drugs is sufficiently below the reference brand to permit classification as a lower priced generic. Sandoz otherwise disputes that the evidence cited by Plaintiffs supports the proposition for which it is cited.

**Plaintiffs' Reply to Statement # 28:**

**Sandoz cannot reasonably dispute this Statement. The record evidence is that Mr. Stiefel testified as follows:**

> **Q. (BY MR. LIBMAN) And that's because the true average price paid by retail pharmacies to acquire Sandoz drugs was always less than AWP, correct?**
>
> **MS. McDEVITT: Objection to form.**

**THE WITNESS:  Yes.  It was less than AWP.**

**Stiefel Dep. 11/22/09 (Exh. I) at 378:11-16.**

**Sandoz's statement that "AWP for generic drugs is sufficiently below the reference brand to permit classification as a lower price generic" is irrelevant entirely to the truth or falsity of plaintiffs' Statement #28. It is also a statement made without any record support as required by Fed.R.Civ.P. 56.  No further reply is required.**

**29. Sandoz did not require its AWPs and WACs to decrease as market prices and contract prices decreased.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 468:13-18.**

SANDOZ' RESPONSE TO STATEMENT 29:

Sandoz disputes Paragraph 29 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' pricing practices throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 29:**

**Mr. Worrell's testimony is unequivocal:**

> **Q. Am I correct that Sandoz had no policy during the time you were there requiring it to lower its AWP or WAC for any of its drugs as the market price or the contract price for that drug dropped, is that correct?**

> **A.  Correct.**

**Worrell Dep. 3/26/08 (Exh. F) at 468:13-18.  Sandoz cannot dispute the accuracy of the Statement for the entire relevant period.  *See* Sandoz 30(b)(6) Kellum 1/25/07 at 8:9-22. No further reply is required.**

**30. Sandoz does not sell any of its generic drugs at AWP.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 510:5-8; Galownia Dep. 6/11/07 (Exhibit D) at 224:8-226:12, 240:6-18.**

SANDOZ' RESPONSE TO STATEMENT 30:

30

Sandoz disputes that the evidence cited by Plaintiffs supports the proposition for which it is cited.

**Plaintiffs' Reply to Statement # 30:**

**The cited testimony speaks for itself:**

> **Q.  And do you agree that, that AWP is not a price that anyone pays.**

> **A.  At Sandoz, it was not a price that we charged anyone**

**Worrell 3/26/08 (Exh. F) 510:5-8.  No further reply is required.**

**31. Sandoz's AWPs for generic products do not represent an average of prices charged by wholesalers.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 90:3-91:9.**

SANDOZ' RESPONSE TO STATEMENT 31:

AWP for generic drugs is sufficiently below the reference brand to permit classification as a lower priced generic.    Sandoz otherwise disputes Paragraph 31 to the extent it mischaracterizes Mr. Kellum's testimony regarding the nature of Sandoz' AWPs throughout the relevant time period.

**Plaintiffs' Reply to Statement # 31:**

> **Sandoz's first sentence is not responsive to plaintiffs' Statement #31, is irrelevant and is unsupported by record evidence as required by Fed.R.Civ.P. 56. Beyond that, Mr. Kellum's testimony speaks for itself and supports the statement.**

> **Responding further, plaintiffs incorporate their replies to Statements # 25, 27, 28, 30 and 31 herein.**

**32. If Sandoz was the first manufacturer to market a generic product, Sandoz would set its WAC at 25 percent below the Sandoz AWP.  *See* Deposition of Christopher Worrell dated 8/23/2007 ("Worrell Dep. 8/23/07") (Exhibit G) at 84:18-85:13.  Sandoz would set the WAC at the highest possible price in this scenario because it would have the only generic product in the market.  *See* Worrell Dep. 8/23/07 Dep. (Exhibit G) at 85:17-23.  If Sandoz**

was launching a product into a mature market where there were already a number of generics in the marketplace, Sandoz would set its WAC near its competitors' published WACs.  *See* Worrell Dep. 8/23/07 Dep. (Exhibit G) at 87:3-88:12.

SANDOZ' RESPONSE TO STATEMENT 32:

Sandoz disputes Paragraph 32 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' pricing practices throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 32:**

**Mr. Worrell's testimony speaks for itself and supports the statement.  No further**

**reply is required.**

33. Sandoz's AWP determines the maximum level for its WAC, and the WAC determines the maximum levels for contract pricing.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 164:2-21.  This is because in general practice, the published AWP is the highest price, published WACs are less than the published AWP and contract prices are less than the published WAC.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 164:2-165:19.

SANDOZ' RESPONSE TO STATEMENT 33:

Sandoz disputes the assertions set forth in Paragraph 33 and states that WAC is not always higher than the contract price.  *See* Excerpts of June 19, 2008 deposition of Kevin Galownia, Former Manager of Pricing at Sandoz ("Galownia Tr. 06/19/08") at 30:16-22, attached collectively as Tab 7  to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

**Plaintiffs' Reply to Statement # 33:**

**Sandoz's dispute is unnecessary.  Plaintiffs' Statement expressly described Sandoz's**

**"general practice."  Sandoz does not dispute the "general practice" nor could it given the**

**cited record evidence.  No further reply is required.**

**34. Sandoz admits that its AWPs and WACs are irrelevant in trying to determine Sandoz customers' actual acquisition costs.** *See* **Alabama Trial testimony, Christopher Worrell dated 2/18/09 (Exhibit J) at 1593:24-1594:21; Stiefel Dep. Exhibit 27 (11/13/08) (Exhibit K)(email from Christopher Worrell, vice president of sales and marketing, regarding competitor's sales prices, AWPs and WACs).**

SANDOZ' RESPONSE TO STATEMENT 34:

Sandoz disputes the assertions set forth in Paragraph 34 and states that some customers purchase its drugs at WAC price.  *See* Kellum Tr. 1/25/07 Dep. (Tab 2) at 115:15-l16:19. Sandoz further disputes Paragraph 34 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' position regarding the relevance of AWPs and WACs to customers' actual acquisition costs throughout the relevant  time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's and Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement # 34:**

**The cited testimony speaks for itself.  No further reply is required.**

**35. Sandoz's contract prices are always less than its published prices.** *See* **Galownia Dep. 6/11/07 (Exhibit D) at 168:20-170:7.**

SANDOZ' RESPONSE TO STATEMENT 35:

Sandoz disputes this allegation and states that on some occasions, contract prices are equal to WAC.   *See* Kellum Tr. 1/25/07 (Tab 2) at 115:15-l16:19.  Sandoz further disputes Paragraph 35 to the extent that it mischaracterizes Mr. Galownia's testimony regarding the relationship between Sandoz' contract prices and its published prices throughout the relevant timeframe.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

**Plaintiffs' Reply to Statement # 35:**

**The record evidence shows that Mr. Galownia's testimony supports the Statement:**

> **Q. Does that statement hold true throughout the time period after launch? That is that there is no predictable relationship for a Sandoz drug between the WAC for that drug and the AWP for that drug after the time of launch?**

> **A. That is correct, other than the fact that a WAC will always be lower than AWP.**

Q. And am I correct there is no predictable relationship between the AWP for a Sandoz product and the actual contract price for a Sandoz product at the time of launch?

A. That's correct.

Q. Except that the contract price will be less than the AWP?

A. Correct.

Q. Does that hold true over time?  That is that there is no predictable relationship between the AWP and the actual contract price for a Sandoz product after the time of the launch?

A. That is correct.

Q. And am I correct that there is no predictable relationship between the WAC and the actual contract price for a Sandoz product at the time of launch, other than the fact that the contract price will be less than the WAC?

A. That's correct.

Q. And am I correct that there is no predictable relationship between WAC and the actual contract price for a Sandoz product after the time of launch, except that the contract price will be less than the WAC?

Galownia Dep. 6/11/07 (Exh. D) at 168:20-170:7.


36. Sandoz's contract prices were on average, 35 percent to 75 percent below the published WAC.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 485:13-22.  The difference between Sandoz contract prices and AWPs would be even greater.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 485:23-486:7.

SANDOZ' RESPONSE TO STATEMENT 36:

Sandoz disputes the assertions set forth in Paragraph 36 and states that on some occasions, contract prices are equal to WAC.  *See* Kellum Tr. 1/25/07 (Tab 2) at 115:15-116:19.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

34

**Plaintiffs' Reply to Statement # 36:**

Sandoz's response does not meaningfully dispute the Statement.  The cited record evidence speaks for itself.  No further reply is required.

37. At all times from 1997 to 2005, Sandoz sold its drugs to the three national wholesalers:  Cardinal, Amerisource Bergen and McKesson.  *See* Galownia Dep. 6/11/07 (Exhibit D) at 87:4-9.

SANDOZ' RESPONSE TO STATEMENT 37:

Sandoz does not dispute that it sells drugs to Cardinal, AmerisourceBergen, and McKesson.  Sandoz otherwise disputes that the evidence cited by Plaintiffs represents Sandoz' sales practices throughout the relevant time period.  Sandoz further disputes this allegation as AmerisourceBergen was formed in 2001 and therefore could not have purchased drugs from Sandoz prior to that date.
*See* AmerisourceBergen, http://www.amerisourcebergen.com/
cp/1/who_we_are/index.jsp (last visited June 15, 2009).

**Plaintiffs' Reply to Statement # 37:**

The parties agree that Sandoz sells drugs to Cardinal, AmerisourceBergen and McKesson.  Sandoz does not appear to dispute that it sold drugs to Cardinal and McKesson throughout the relevant time period, and to AmerisourceBergen since at least 2001.  No further reply is required.

38. Sandoz had rebate agreements with all three national wholesalers.  *See* Stiefel Dep. 1/27/09 (Exhibit I) at 350:4-9.

SANDOZ' RESPONSE TO STATEMENT 38:

Sandoz does not dispute that at one point in time, it had rebate agreements with Cardinal, AmerisourceBergen, and McKesson.  *See* Excerpts of January 27,  2009 deposition of Frank Stiefel ("Stiefel Tr. 1/27/09") at 350:4-9, attached collectively as Tab 8 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response  to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz otherwise disputes Paragraph 38 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' relationship with Cardinal, AmerisourceBergen, and McKesson throughout the

relevant time period.  Sandoz also disputes this allegation as AmerisourceBergen was formed in 2001 and therefore could not have purchased drugs from Sandoz prior to that date.  *See* AmerisourceBergen, http://www.amerisourcebergen.com/ cp/1/who_we_are/index.jsp (last visited June 15, 2009).  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement # 38:**

The parties agree that Sandoz has or had rebate agreements with Cardinal, AmerisourceBergen and McKesson.  Sandoz's sales and transactional data speaks for itself and reveals the extent to which Sandoz paid rebates to the three national wholesalers.  *See* R. 26 Statement of Harris L. Devor attached as Exhibit A to Devor Declaration, dated June 15, 2009 [Dkt. No. 6061].  No further reply is required.


39. The WAC reported or caused to be reported by SANDOZ does not account for chargebacks, rebates or discounts.   *See* Galownia Dep. 6/11/07 (Exhibit D) at 112:3-8; 323:1-10.  Rebates paid to wholesalers are not reflected in Sandoz's reported WACs.  *See* Sandoz 30(b)(6)(Kellum) 1/25/07 Dep. (Exhibit E) at 100:18-101:17.

SANDOZ' RESPONSE TO STATEMENT 39:

Sandoz disputes Paragraph 39 to the extent that it mischaracterizes the testimony of Mr. Galownia and Mr. Kellum regarding Sandoz' pricing practices throughout the relevant time period.  Sandoz states that WAC is the manufacturer's list price to wholesalers, not including prompt pay or other discounts, rebates or reductions in price.  42 U.S.C.A. § 1395w-3a(c)(6)(B) (2003). Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Galownia's employment with Sandoz.

**Plaintiffs' Reply to Statement # 39:**

Sandoz agrees that its WAC does not account for prompt pay or other discounts, rebates or reductions in price.  No further reply is required.


40. Sandoz rarely sold products at WAC without any rebates, discounts or chargebacks.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 365:25-366:4.

SANDOZ' RESPONSE TO STATEMENT 40:

Sandoz disputes this statement and states that, from time to time, it sold products at WAC without any rebates, discounts, or chargebacks.  *See* Excerpts of February 20, 2009 deposition of Frank Prybeck, Director of Contract Administration at Sandoz ("Prybeck Tr. 02/20/09") (Tab 9) at 230:16-24; 239:3-12, attached collectively as Tab 9 to the Declaration of Raj Gandesha in Support of Sandoz Inc.'s Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts as to Sandoz Inc.  Sandoz further disputes Paragraph 40 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' sales practices throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement # 40:**

**The parties agree that Sandoz sold its products at WAC without rebates, discounts or chargebacks from "time to time".   The data reveals how frequently this "time to time" occurred:  answer, rarely.  *See* R. 26 Statement of Harris L. Devor attached as Exhibit A to Devor Declaration, dated June 15, 2009 [Dkt. No. 6061]. Beyond that, Sandoz disputes the statement only to extent it mischaracterizes Mr. Stiefel's testimony.   This means that Sandoz does not dispute the statement.  The cited testimony speaks for itself.**

41. In general, the net sales prices paid by wholesalers through auto substitution programs were less than WAC.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 464:15-465:7.

SANDOZ' RESPONSE TO STATEMENT 41:

Sandoz does not dispute the assertion set forth in Paragraph 41.

**Plaintiffs' Reply to Statement # 41:**

**No further reply is required.**

42. The wholesalers negotiate with all generic manufacturers, including Sandoz, its "dead net" price (the price after all price reductions and allowances).  *See* Cardinal Health 30(b)(6) Deposition (Erick, Matthew) dated 6/17/08 (Exhibit L) at 118:6-121:6.

37

SANDOZ' RESPONSE TO STATEMENT 42:

Sandoz disputes that the evidence cited by Plaintiffs addresses Sandoz in any respect, or otherwise represents behavior of all wholesalers throughout the relevant timeframe.

**Plaintiffs' Reply to Statement # 42:**

**The Cardinal 30(b)(6) testimony concerns all manufacturers and speaks for itself.**

**No further reply is required.**


43. The chargebacks, rebates, discounts, adjustments, administrative fees, incentives and other pricing allowances paid by Sandoz reduce the wholesaler's actual acquisition cost or net price. *See* Deposition of Maureen Cavanaugh dated 3/18/09 (Exhibit M) at 110:8-111:12; 111:21-114:20.

SANDOZ' RESPONSE TO STATEMENT 43:

Sandoz disputes Paragraph 43 to the extent that it mischaracterizes Ms. Cavanaugh's testimony regarding Sandoz' pricing practices throughout the relevant time period. Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Ms. Cavanaugh's employment with Sandoz.

**Plaintiffs' Reply to Statement # 43:**

**Sandoz disputes the statement only to extent it mischaracterizes Ms. Cavanaugh's**

**testimony.  This means that Sandoz does not dispute the statement.  The cited testimony**

**speaks for itself.  No further reply is required.**


44. Sandoz knows the net acquisition cost it offered its customers. *See* Worrell 5/13/08 Dep. (Exhibit H) at 639:7-23.

SANDOZ' RESPONSE TO STATEMENT 44:

Sandoz disputes Paragraph 44 to the extent that it mischaracterizes Mr. Worrell's testimony regarding Sandoz' knowledge as to net acquisition costs throughout the relevant time period.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 44**:

Sandoz disputes the statement only to extent it mischaracterizes Mr. Worrell's testimony.  This means that Sandoz does not dispute the statement.  Mr. Worrell clearly testified "Yes, I would know my net selling price."  No further reply is required.

**Sandoz Marketed the Spread**

45. Sandoz's vice president of sales and marketing understood that a customer's profit could be driven by the difference between their AWP reimbursement and contract price for Sandoz products.  *See* Worrell Dep. 3/26/08 (Exhibit F) at 504:13-22.

SANDOZ' RESPONSE TO STATEMENT 45:

Sandoz disputes that its customers' business practices are material to Plaintiffs' Motion for Partial Summary Judgment.  *See* Local Rule 56.1 (requiring movant to "include a concise statement of the material facts of record as to which moving party contends there is no genuine issue to be tried") (emphasis added); *St Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch*, LLP, 379 F.Supp.2d 183, 186 n.1 (D.Mass. 2005) (refusing to consider a summary judgment movant's immaterial facts).  Sandoz otherwise disputes that Plaintiffs have an evidentiary basis for the time period outside of Mr. Worrell's employment with Sandoz.

**Plaintiffs' Reply to Statement # 45:**

Sandoz does not dispute the Statement for the time period of Mr. Worrell's employment.  Sandoz's dispute as to materiality is baseless.  Sandoz's knowledge of how its pricing practices impacted its customers' profits supports plaintiffs' position that Sandoz's reporting of false pricing information was intentional and knowing.

46. Whenever Sandoz received FUL updates from CMS, Sandoz would share the updates with its sales and marketing departments.  *See* Deposition of Ronald Hartmann (5/6/09) ("Hartmann Dep. 5/6/09") (rough copy) (Exhibit N) at 282:16-283:7.  Sales and marketing would be interested in such information if Sandoz's prices were greater than the FUL.  *See* Hartmann Dep. 5/6/09 (Exhibit N) at 283:13-16.  Sandoz sales and marketing would be interested in such information when a FUL was deleted.  *See* Hartmann Dep. 5/6/09 (Exhibit N) at 283:17-23.

<u>SANDOZ' RESPONSE TO STATEMENT 46</u>:

Sandoz disputes that Plaintiffs' citation supports or even addresses the stated proposition.

**Plaintiffs' Reply to Statement # 46:**

**Sandoz's dispute makes no sense.   Mr. Hartman's testimony was that when he received FUL price updates he sent it in an email to the Sales and Marketing departments. Hartman (Exh. N) 282:16-283:7.  Hartman further testified that if the FUL was lower than any of Sandoz's prices, Sales and Marketing would be interested.  *Id*. at 283:13-16.**

**47. In the ordinary course of business, Sandoz routinely communicated with its retail pharmacy customers and provided contract price, AWP and WAC information.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 400:10-401:15; *See* Worrell Dep. 3/26/08 (Exhibit F) at 524:8-525:4.  Retail pharmacy customers needed this information because it affected their reimbursement from third party payors, which include state Medicaid programs.  *See* Stiefel Dep. 1/27/09 (Exhibit E) at 403:1-9.**

<u>SANDOZ' RESPONSE TO STATEMENT 47</u>:

Sandoz disputes Paragraph 47 to the extent that it mischaracterizes Mr. Stiefel's testimony regarding Sandoz' behavior throughout the relevant timeframe.  Sandoz also disputes that the evidence cited by Plaintiffs represents the needs of retail pharmacy customers.  Sandoz further disputes that Plaintiffs have provided an evidentiary basis for the time period outside of Mr. Stiefel's employment with Sandoz.

**Plaintiffs' Reply to Statement # 47:**

**Sandoz does not meaningfully dispute the statement or its accuracy during Mr. Stiefel's tenure at Sandoz.**

**Moreover, and notably, Sandoz does not dispute the Statement insofar as it is supported by Mr. Worrell's testimony.**

**Sandoz's AMPs**

**48. At all times, from 1997 to 2005, Sandoz calculated submitted to CMS AMPs for its products on a quarterly basis, pursuant to the federal rebate statute.** *See* **Defendant Sandoz Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories, 1/23/07,** *Wisconsin v. Amgen, Inc.***, 04-CV-1709, Response to Interrogatory No. 1(a-c) (Exhibit O); Defendant Sandoz, Inc.'s Responses and Objections to the State of California's Second Set of Interrogatories to Sandoz, Inc.,** *State of California, ex rel. Ven-A-Care v. Abbott Laboratories, et al.***, MDL 1456 (01-12257-PBS), 1/96/2009, Response to Interrogatory No. 1 (Exhibit P).**

SANDOZ' RESPONSE TO STATEMENT 48:

Sandoz does not dispute the assertions set forth in Paragraph 48.

**Plaintiffs' Reply to Statement # 48:**

**No further response is required.**

Dated: June 30, 2009                      Respectfully submitted,

                                          **City of New York and New York Counties in
                                          MDL 1456 except Nassau and Orange by**

                                          **KIRBY McINERNEY, LLP**
                                          825 Third Avenue
                                          New York, New York 10022
                                          (212) 371-6600

                                          /s/ Joanne M. Cicala
                                   By:    Joanne M. Cicala
                                          James P. Carroll Jr.
                                          Jocelyn R. Normand
                                          Kathryn B. Allen

                                          Ross B. Brooks, Esq.
                                          MILBERG LLP
                                          One Pennsylvania Plaza
                                          New York, NY  10119
                                          (212) 594-5300
                                          *Special Counsel for the County of Nassau*

                                          Theresa A. Vitello, Esq.
                                          LEVY PHILLIPS &
                                          KONIGSBERG, LLP
                                          800 Third Avenue
                                          New York, NY  10022
                                          (212) 605-6205
                                          *Counsel for the County of Orange*

## <u>CERTIFICATE OF SERVICE</u>

I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' REPLY RESPONSE TO DEFENDANT SANDOZ INC.'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO SANDOZ, INC., to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.  The confidential exhibits to the foregoing have been served electronically directly to counsel for Sandoz, Inc.

Dated:  June 30, 2009

_____/s/_____
James P. Carroll, Jr.
Kirby McInerney LLP
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 371-6600

.