## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| | ) |
| *The City of New York, et al.* | ) ) |
| *v.* | ) |
| *Abbott Laboratories, et al.* | ) ) ) |

MDL NO. 1456
Civil Action No. 01-12257-PBS
 Subcategory Case No: 03-10643-PBS

Judge Patti B. Saris

## PLAINTIFFS' REPLY LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO ETHEX CORPORATION

Pursuant to Rule 56.1 of the Local Rules of this Court, plaintiffs hereby submit their Reply Statement of Undisputed Material Facts Applicable to Defendant ETHEX Corporation ("ETHEX") in support of their Motion for Partial Summary Judgment.

**I.      ETHEX SPECIFIC FACTS**

**1.      The Ethex Drug and NDCs that have been examined in connection with this motion are set forth in Exhibit A hereto.  This exhibit also sets forth Ethex's WACs and Published AWPs for these Drugs and NDCs, any operative Federal Upper Limit ("FUL") and Ethex AMPs.  The exhibit notes which NDCs are associated with package sizes that set the FUL.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 1 is an undisputed material statement of fact. Exhibit A is a document prepared by Plaintiff for purposes of this litigation and ETHEX disputes any characterization of that document. ETHEX specifically disputes any contention that ETHEX published WACs.

**PLAINTIFFS' REPLY TO STATEMENT #1**

ETHEX disputes the reliability and support for the data set forth in Exhibit A on the basis that it is a document that was prepared by plaintiffs for the purposes of litigation.  However, plaintiffs properly cited ETHEX as the source of the ETHEX AMP data and the First Databank NDDF data file (Alabama Production, FDB-AWP 030785 – 030795) as the source of all other data (see Exhibit A at 5), which is the same source cited by ETHEX's expert Dr. Addanki.  *See* Affidavit of Dr. Sumanth Addanki dated May 15, 2009 [Docket No. 6056] at Exhibit 2 (identifying "First DataBank (Alabama Production) Data and NDDF (National Drug Data File)™ Documentation Manual (Rev. April 2000)" as a Data source). *See also* Reply Affidavit of Joanne M. Cicala, sworn to June 30, 2009 and submitted in further support of plaintiffs' motion  for partial summary judgment at ¶2, which is incorporated herein.

Replying further, ETHEX's contention about publishing its WACs is irrelevant to this Statement as plaintiffs do not assert that here.  It is noted that on at least one occasion, ETHEX voluntarily provided its WAC to CMS when requested.  *See* Sexton, Gail (May 20, 2008) 116:1-14; Exhibit Sexton 012 (attached as Exh. A to the Affidavit of Joanne M. Cicala, submitted in opposition to Defendants' Motion, dated June 15, 2009 ("Cicala Aff.") [Docket No. 6144]). Replying further, ETHEX admits that Isosorbide Mononitrate 60 mg SA is the ETHEX drug at issue on this motion. *See* ETHEX response to Statement #2 infra.  .

2.     **The specific Ethex drug at issue is Isosorbide Mononitrate 60 MG Tablet.**

**ETHEX'S RESPONSE:**

ETHEX does not dispute that Isosorbide Mononitrate 60 mg. tablet SA is one of the nine drugs selected by the parties for targeted FUL discovery pursuant to CMO 33.

**PLAINTIFFS' REPLY TO STATEMENT #2**

No reply is needed.

2

3.     **Ethex manufactures and sells prescription drugs in the State of New York, including the City of New York and in the Counties, that are eligible for reimbursement under Medicaid.  *See* Ethex Corporation's Answer to the Revised First Amended Consolidated Complaint ("Ethex Answer") [Docket #4838] at ¶ 44.**

**ETHEX'S RESPONSE:**

ETHEX does not dispute that it has sold prescription drugs in the State of New York that are eligible for reimbursement under Medicaid.

**PLAINTIFFS' REPLY TO STATEMENT #3**

No reply is needed.

4.     **Ethex has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.  *See* Ethex Answer at ¶ 132.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 4 is a material statement of undisputed fact.  ETHEX does not dispute that it has entered into and executed the federal Medicaid rebate agreement pursuant to 42 U.S.C. § 1396r-8.

**PLAINTIFFS' REPLY TO STATEMENT #4**

The parties agree that ETHEX executed federal Medicaid rebate agreements.  This fact is material because ETHEX's agreement to this rebate agreement is among the bases for its obligations to abide by Medicaid's rules.  *See Commonwealth of Massachusetts v. Mylan Labs., Inc.*, Civ. No. 03-11865-PBS, 2008 WL 5850859, at *25 (D. Mass. Dec. 23, 2008).

5.     **Ethex launched Isosorbide Mononitrate on March 16, 2000.  *See* Ethex Corporation 30(b)(6) (Christopher Keith) 6/24/08 Deposition Transcript**

3

(Exhibit B) at 37:20-22 (hereinafter "Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B)").

**ETHEX'S RESPONSE:**

ETHEX does not dispute that it began selling Isosorbide Mononitrate on or about March 16, 2000.

**PLAINTIFFS' REPLY TO STATEMENT #5**

No reply is needed.

**Ethex Set and Reported Its WACs and AWPs**

6.      **At the time of launch of a new product Ethex sets an AWP for its drugs.** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:7-22. Ethex has only one AWP at any time.** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 48:17-19.**

**ETHEX'S RESPONSE:**

ETHEX denies paragraph 6 is a material statement of undisputed fact. ETHEX does not dispute that at the time of the launch of Isosorbide Mononitrate, it set an AWP for the drug.

**PLAINTIFFS' REPLY TO STATEMENT #6**

Both parties agree.  This is a material Statement because CMS considered all published prices when setting the FUL.  In setting the FUL, CMS considered the published prices from First Databank, Redbook and Medi-Span that were presented in the FULs printouts.  *See* Declaration of Susan E. Gaston (signed June 15, 2009) (attached as Exhibit C to the Cicala Aff.) ("Gaston Decl.") at ¶ 3 (statement of general practice).  This included AWPs, WACs and Direct Prices.  *See id*. at Exhibits A & D (FULs system printouts showing AWP prices).

**7.**     **Ethex reported an AWP for its drugs to all the major pricing compendia - First DataBank, Medi-Span and Redbook.   *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 68:10-20; 135:19-21.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 7 is a material statement of undisputed fact.   ETHEX disputes paragraph 7 to the extent that the term "all major pricing compendia" is vague and ambiguous. ETHEX does not dispute that it reported its AWP for Isosorbide Mononitrate to First DataBank, Medi-Span, and Redbook.

**PLAINTIFFS' REPLY TO STATEMENT #7**

Both parties agree that ETHEX reported its AWP for Isosorbide Mononitrate to First DataBank, Medi-Span and Redbook.   This is a material statement because CMS considered all published prices when setting the FUL.   *See* Plaintiffs' Reply to Statement #6.

**8.**     **Ethex reported the same AWP to all three compendia.   *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:4-6.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 8 is a material statement of undisputed fact.   ETHEX does not dispute that when it reported its AWP for Isosorbide Mononitrate it reported the same number which was ETHEX's AWP for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #8**

Both parties agree that ETHEX reported the same AWP for Isosorbide Mononitrate.   This is a material statement because CMS considered  all published prices when setting  the FUL.   *See* Plaintiffs' Reply to Statement #6.

**9.** **Ethex knew and controlled the AWPs for its drugs that were published by the national drug pricing compendia.   Ethex knew that the pricing compendia would publish the AWPs that Ethex provided to them.** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 142:16-143:1.**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 9 is a material statement of undisputed fact.   ETHEX disputes that it "controlled" the AWPs for its drugs, whatever that term might mean. ETHEX disputes that it ever dictated or instructed any drug pricing compendia on how it should use the AWP reported to it by ETHEX. ETHEX does not dispute that it was aware that drug pricing compendia published an ETHEX AWP for Isosorbide Mononitrate. ETHEX disputes that the AWP it set or reported to the pricing compendia affected or related to any FUL established by CMS for Isosorbide Mononitrate.

## PLAINTIFFS' REPLY TO STATEMENT #9

ETHEX can attempt to dispute that it knew that the pricing compendia would publish the AWPs that ETHEX provided to them, but the cited testimony speaks for itself:

> Q.   Okay.   Now, Ethex was aware that the publishing compendia would actually publish the AWPs that Ethex applied to it, correct?
>
> A.   Yes.
>
> Q.   And did -- to your knowledge, between 2000 and 2005, did the compendia, in fact, publish the Ethex AWP as Ethex supplied them?
>
> A.   Yes.

Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 142:16-143:1.

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate in a Statement of Facts and irrelevant to this Statement.

10. **All published AWPs reflected what Ethex submitted to them: Redbook would send a "Product Listing Verification" asking Ethex to "confirm that the way the product is listed is correct."** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 144:9-145:6.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 10 is a material statement of undisputed fact. ETHEX is not aware of what "all published AWPs" reflect and therefore disputes that statement. ETHEX does not dispute that Redbook would send a "Product Listing Verification" and requested ETHEX to confirm the AWP provided to them. ETHEX disputes that it ever dictated or instructed Redbook or any other publisher on the "correct" number to publish. ETHEX disputes that the AWP it set or reported to the pricing compendia affected or related to any FUL established by CMS for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #10**

The parties agree that Redbook would send ETHEX a Product Listing Verification form and ask ETHEX to confirm the AWPs provided therein. Replying further, plaintiffs incorporate their reply to Statement #9 herein.

11. **Ethex set a WAC for its products and only had one WAC at a given time.** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 49:17-20.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 11 is a material statement of undisputed fact. ETHEX does not dispute that it set an internal WAC for Isosorbide Mononitrate. ETHEX disputes that it ever reported any WAC to any pricing compendia or that any pricing compendia published a WAC for ETHEX.

**PLAINTIFFS' REPLY TO STATEMENT #11**

The parties agree that ETHEX set a WAC for its products and had only one WAC at a given time.  This statement is material because CMS considered manufacturers' WACs to set the FUL.

Replying further, ETHEX's statement about publishing its WACs is irrelevant to this Statement.  Regardless, on at least one occasion ETHEX voluntarily provided its WAC to CMS when requested.  *See* Plaintiffs' Reply to Statement #1.

**12.   Ethex did not report WACs to the publishing compendia because it considers WAC a "competitive price".  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 70:1-5.**

**ETHEX'S RESPONSE:**

ETHEX denies paragraph 12 is a material statement of undisputed fact.  ETHEX does not dispute that it did not report WACs to the publishing compendia.

**PLAINTIFFS' REPLY TO STATEMENT #12**

No reply is needed.

**13.   Ethex knows that Medicaid reimbursements can be based on WACs, AWPs and FULs.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 72:2-10.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 13 is a material statement of undisputed fact.  ETHEX does not dispute that its representative testified that he believed that Medicaid reimbursements could be based on WACs, AWPs or FULs. CMS, however, has testified that it did not set FULs based on published AWPs. See ¶ 34 of Local Rule Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims. CMS further testified that it considered other factors beyond the compendia's published

prices in setting a FUL. ETHEX disputes that it ever reported WACs for Isosorbide Mononitrate to any pricing compendia.

**PLAINTIFFS' REPLY TO STATEMENT #13**

The parties agree that ETHEX knows that Medicaid reimbursements can be based on WACs, AWPs and FULs.

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement. Ethex's statement regarding AWPs is irrelevant because whether CMS set the FUL on AWPs or not, CMS considered AWPs when it set the FUL. *See* Plaintiffs' Reply to Statement #6. ETHEX's contention about publishing its WACs is also irrelevant to this Statement. Nonetheless, on at least one occasion, ETHEX voluntarily provided its WAC to CMS when requested. *See* Plaintiffs' Reply to Statement #1.

14. **Ethex knew that its published prices were used for Medicaid reimbursement purposes. *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 70:19-71:12. Ethex provided its customers with AWPs because "[i]t's a price that – that they need to have for reimbursement purposes." Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 71:1-2.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 14 is a material statement of undisputed fact. ETHEX does not dispute that its representative testified that he believed that Medicaid reimbursements may be based on AWPs. CMS, however, has testified that it did not set FULs based on published AWPs. See ¶ 34 of Local Rule Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims. CMS further testified that it considered additional factors beyond the pricing compendia's published prices when

setting a FUL. ETHEX disputes that it ever reported WACs for Isosorbide Mononitrate to any pricing compendia. ETHEX further disputes that its AWP affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #14**

       The parties agree that ETHEX knew that its published prices were used for Medicaid reimbursement.  Replying further, plaintiffs incorporate their reply to Statement #13.


       15.      **Ethex knows that CMS sets the Federal Upper Limit ("FUL") by taking the lowest published price and multiplying it by 150%.**  *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 72:15-73:2.**

**ETHEX'S RESPONSE:**

       ETHEX denies that paragraph 15 is a material statement of undisputed fact. ETHEX does not dispute that its representative testified that he believed that CMS may set the Federal Upper Limit ("FUL") by taking the lowest WAC and multiplying it by 150%. ETHEX disputes, however, that CMS always sets the FUL by taking the lowest published price and multiplying by 150%. As set forth in Defendants Motion for Summary Judgment, CMS often set the FUL without regard to the lowest published price. Further, ETHEX reported AWPs only to the pricing compendia and CMS has testified that it would not use AWPs to set a FUL. See ¶ 34 of Local Rule Statement of Undisputed Material Facts Supporting Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims. ETHEX disputes that its published AWPs affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #15**

       The parties agree that ETHEX's 30(b)(6) witness testified that CMS sets the FUL at 150% of the lowest published price. The remainder of Ethex's response is disputed for all the

reasons set forth in Plaintiffs' Motion for Partial Summary Judgment on Issues Relating to the Federal Upper Limit and Under New York Social Services Law § 145-b [Docket No. 6076] and Plaintiffs' Memorandum of Law in Opposition to Defendants' Joint Motion for Summary Judgment on Plaintiffs' "FUL Fraud" Claims and in Further Support of Plaintiffs' Motion for Partial Summary Judgment on Their § 145-b Claim [Docket No. 6147].

Replying further, Ethex's response ignores that CMS always set the FUL on a manufacturer WAC (or WAC equivalent) (*see* Gaston Decl. at ¶ 3) and that CMS considered AWPs when setting the FUL (*see* Plaintiffs' Reply to Statement #6).

**Ethex's WACs and Published AWPs had No Relationship to Actual Prices**

> 16.   **Ethex knows that and admits that its reported AWPs were not tethered to the actual prices that anyone pays.   *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 150:10-19.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 16 is a material statement of undisputed fact.  ETHEX does not dispute that its AWP is not an average of the actual prices paid by wholesalers or retailers. ETHEX, however, disputes that it has ever represented that its AWP was an average of the price actually paid by wholesalers or retailers for its drugs.  ETHEX further disputes that its AWP affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #16**

The parties agree that ETHEX's AWPs are "not an average of the actual prices paid by wholesalers or retailers".  ETHEX's contention about how it represented its AWP is irrelevant and not a dispute of this Statement.  Furthermore, ETHEX's response that the AWP was

irrelevant to the FUL is belied by the evidence which establishes that CMS considered all published prices, including AWPs, when setting the FUL.  *See* Plaintiffs' Reply to Statement #6.

**17.     Ethex defined AWP as a "list price."  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 148:7-11.**

<u>**ETHEX'S RESPONSE:**</u>

ETHEX denies that paragraph 17 is a material statement of undisputed fact.  ETHEX does not dispute that it regards AWP as a list price.

<u>**PLAINTIFFS' REPLY TO STATEMENT #17**</u>

No reply is needed.

**18.     Ethex's AWPs were not set based on actual prices but rather Ethex established its AWPs based on its competitors' AWPs.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:20-137:15.**

<u>**ETHEX'S RESPONSE:**</u>

ETHEX denies that paragraph 18 is a material statement of undisputed fact.  ETHEX does not dispute that its AWP for Isosorbide Mononitrate is a list price and does not reflect an average of prices actually paid. ETHEX disputes that it ever represented that its AWP was an average of actual prices paid for Isosorbide Mononitrate.

<u>**PLAINTIFFS' REPLY TO STATEMENT #18**</u>

Both parties agree that ETHEX's AWPs do not reflect an average of actual prices. ETHEX's contention about how it represented its AWP is irrelevant and not a dispute of this Statement.

19.    At launch, Ethex set its AWPs at a price just below 90% of the AWPs of the branded versions of the drugs in order to be considered a generic.  *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 136:20-137:7.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 19 is a material statement of undisputed fact.  ETHEX does not dispute that at the time of the launch of Isosorbide Mononitrate, it set the AWP for Isosorbide Mononitrate at or below 90% of the AWP of the branded version of the drug.

**PLAINTIFFS' REPLY TO STATEMENT #19**

No reply is needed.

20.    After launch, Ethex would set the AWP "in line with the competition," so that its AWPs were neither the lowest nor the highest.  **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 137:8-15.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 20 is a material statement of undisputed fact.  ETHEX does not dispute that in setting an AWP for Isosorbide Mononitrate, it took into account competitors' published AWPs.

**PLAINTIFFS' REPLY TO STATEMENT #20**

No reply is needed.

21.    When Ethex changed the contract price of a drug, it did not change the AWP for that drug.  *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 163:8-20;** *see also* **Exhibit C (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 20 (email from Lew Soars, Ethex Project Manager to Trisha Reeves including attachment listing new contract pricing for Isosorbide Mononitrate)).**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 21 is a material statement of undisputed fact.  ETHEX does not dispute that when it changed the contract price of Isosorbide Mononitrate, it did not necessarily change the AWP for that drug. ETHEX disputes that it ever represented that its AWP was equivalent to any particular contract price for Isosorbide Mononitrate.

## PLAINTIFFS' REPLY TO STATEMENT #21

The parties agree that ETHEX did not change the AWP of a product when it changed the contract price.  ETHEX's contention about how it represented its AWP is irrelevant and not a dispute of this Statement.

22.  **Every contract Ethex had with its customers offered contract pricing below WAC, even before any rebates or credits were applied.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 78:16-19;  *see also* Exhibit D (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 7 (Ethex Price Listing)).**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 22 is a material statement of undisputed fact.  ETHEX does not dispute that it generally sold Isosorbide Mononitrate to its contract customers at a price below ETHEX's internal WAC.  ETHEX disputes the reference to "every contract."  ETHEX disputes that any contract it might have entered into with its customers is relevant to CMS's establishment of a FUL for Isosorbide Mononitrate.  ETHEX further disputes that it provided its internal WAC to the pricing compendia for publication.

## PLAINTIFFS' REPLY TO STATEMENT #22

The parties agree that ETHEX sold Isosorbide Mononitrate to its contract customers at a price below ETHEX's internal WAC.  ETHEX can try to dispute the reference to "every contract" but the testimony speaks for itself:

14

Q.   Is it fair to say that all of the contract prices that Ethex offered
to its contract customers were lower than WAC?

A.   Yes.

Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 78:16-19

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.  ETHEX's contention about publishing its WACs is also irrelevant to this Statement.  Nonetheless, on at least one occasion, ETHEX voluntarily provided its WAC to CMS when requested and in connection with CMS setting a FUL.  *See* Plaintiffs' Reply to Statement #1.

23.   **Ethex paid wholesalers rebates, discounts, chargebacks, billbacks, fees, incentives and other pricing allowances.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 60:16-61:5.  Approximately 50-75% of Ethex's sales of Isosorbide Mononitrate occurred through wholesalers.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 64:5-19.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 23 is a material statement of undisputed fact.  ETHEX does not dispute that it utilized "rebates," "discounts" and "chargebacks" in its negotiation and sale of its products to wholesalers. ETHEX does not dispute that approximately 50-75% of its sales of Isosorbide Mononitrate occurred through wholesalers. ETHEX disputes that the incentives or pricing allowances it offered affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #23**

The parties agree that ETHEX paid wholesalers rebates, discounts, chargebacks, billbacks, fees, incentives and other pricing allowances, and approximately 50-75% of ETHEX's sales of Isosorbide Mononitrate occurred through wholesalers.

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

24.     **Rebates, discounts, chargebacks and other pricing incentives offered by Ethex reduce wholesalers' actual acquisition cost.** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 155:15-21; 156:20-157:7;** *see also* **Ethex Corporation 30(b)(6) (Rich Chibnall) 6/24/08 Deposition Transcript (Exhibit E) at 17:18-18:14 (hereinafter "Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E)").**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 24 is a material statement of undisputed fact.  ETHEX does not dispute that it utilizes "rebates," "discounts" and "chargebacks" in its negotiation and sale of its products to wholesalers.  ETHEX disputes that "rebates," "discounts," or "chargebacks," reduce wholesalers' "actual acquisition cost" whatever that term may mean. ETHEX disputes that the incentives offered to wholesalers affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

## PLAINTIFFS' REPLY TO STATEMENT #24

The parties agree that ETHEX utilizes various pricing incentives in its negotiation and sale of its products to wholesalers.   ETHEX cannot dispute its own 30(b)(6) witness who testified that these pricing incentives lower the net cost to the wholesaler:

> Q.  Let me ask you a follow-up question on Exhibit 18, if we could, before we move on.  You see Footnote 3 says, "WAC is the price invoiced to wholesalers.  The net price paid by wholesalers may be less"?
>
> A.  Yes.
>
> Q.  And that is because the net price would reflect the assorted discounts, rebates and fees that we discussed generally today; is that right?

A.   Generally, yes.

ETHEX 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 156:20-157:7

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

**25.     In a pricing proposal from Mr. Keith to Mr. Michael Plessinger at Cardinal Health, Ethex defined WAC as: "the price invoiced to wholesalers.  The net price paid by wholesalers may be less."  Exhibit F (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 18 (Letter from Chris Keith to Michael Plessinger at Cardinal Health offering bid proposal for Isosorbide Mononitrate)).  "Contract Price" was defined as: "the price that will be charged to wholesaler for purchases made on behalf of its formulary customers.  It is exclusive of any rebates provided under this Agreement."  *Id*.  "Net Price" was defined as: "the contract price, less the rebates provided under other arrangements with the wholesaler."  *Id*.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 25 is a material statement of undisputed fact. ETHEX disputes that the pricing proposal made by ETHEX to Cardinal affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate. ETHEX disputes any characterization of the document cited in paragraph 25.

**PLAINTIFFS' REPLY TO STATEMENT #25**

Plaintiffs did not "characterize" the document, they merely quoted from it.  The document speaks for itself.  Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

**26.     The net price to Cardinal, a major wholesaler, was another 10% off the contract price due to rebates offered by Ethex, reflecting the assorted**

**discounts, rebates and fees that Ethex provided to its wholesaler customers.
*See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 155:11-157:7.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 26 is a material statement of undisputed fact. ETHEX

disputes that the referenced price to Cardinal affected or related in any way to CMS's

establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #26**

ETHEX does not dispute this statement.  Replying further, ETHEX's argument about

how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and

irrelevant to this Statement.

27.    **McKesson, another major wholesaler, received the equivalent of an 18.5%
rebate for including Isosorbide Mononitrate in its source program.  *See*
Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 89:8-91:1.  This is in
addition to the other rebates, discounts, chargebacks and other pricing
incentives that Ethex provides to McKesson that further reduces McKesson's
net price below the super source contract price.  *See* Ethex 30(b)(6) (Keith)
6/24/08 Dep. (Exhibit B) at 91:2-95:17.**

**ETHEX'S RESPONSE:**

ETHEX disputes that paragraph 27 is a material statement of undisputed fact.  ETHEX

disputes that the referenced rebate received by McKesson for Isosorbide Mononitrate, affected or

related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #27**

ETHEX does not dispute this statement.  Replying further, ETHEX's argument about

how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and

irrelevant to this Statement.

28.     **AmeriSource Corporation ("ABC") was offered a 15% rebate for including Isosorbide Mononitrate in its source program, in addition to other rebates, discounts, chargebacks and other pricing incentives that reduced ABC's net price below WAC.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 171:17-173:21; *see also* Exhibit G (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 22 (Bid Proposal to ABC for Isosorbide Mononitrate)).**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 28 is a material statement of undisputed fact.  ETHEX disputes that the referenced rebate offered to AmeriSource Corporation affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate. ETHEX further disputes that the referenced WAC was ever reported by ETHEX to any pricing compendia.

## PLAINTIFFS' REPLY TO STATEMENT #28

ETHEX does not dispute this statement.  Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.  ETHEX's contention about publishing its WACs is also irrelevant to this Statement.  Nonetheless, on at least one occasion, ETHEX voluntarily provided its WAC to CMS when requested and in connection with CMS setting a FUL.  *See* Plaintiffs' Reply to Statement #1.

29.     **In fact, there was a large difference between the WAC price and the net price because discounts and rebates were taken off the WAC price.  *See* Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 53:1-10.**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 29 is a material statement of undisputed fact and is in the nature of argument. ETHEX disputes that the price paid by AmeriSource Corporation affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate. ETHEX further disputes that the referenced WAC prices were ever published by any pricing compendia.

## PLAINTIFFS' REPLY TO STATEMENT #29

Defendants do not dispute this statement.  Indeed, they cannot, as the testimony speaks for itself:

> A.   Well, ***the difference between the WAC price and the net price was relatively large***, because many of the discounts that we offer, rebates particularly, and because all of our -- all of the items that we estimate -- returns, for example -- are all done off of a WAC price for the wholesaler.  If the -- if the WAC price was much larger than the net price, the fact that those discounts were coming off of that higher WAC were -- those discounts were all falling to the -- to the bottom line.

ETHEX 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 53:1-10 (emphasis added).

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.  ETHEX's contention about publishing its WACs is also irrelevant to this Statement.  Nonetheless, on at least one occasion, ETHEX voluntarily provided its WAC to CMS when requested.  *See* Plaintiffs' Reply to Statement #1.


30.    **Ethex negotiates contract prices with its pharmacy and warehousing chain customers.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 219:21-221:7; *see also* Exhibit H (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 39 (Bid Proposal to H-E-B for Isosorbide Mononitrate)); Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 30:14-18.**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 30 is a material statement of undisputed fact.  ETHEX does not dispute that it negotiates with pharmacy and warehousing chains.  ETHEX disputes that its negotiations with pharmacy and warehousing chains affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

## PLAINTIFFS' REPLY TO STATEMENT #30

The parties agree that ETHEX negotiates with its pharmacy and warehousing chain customers.  Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

**31.     Ethex provided its pharmacy and warehousing chain customers with rebates, discounts, incentives and other pricing allowances that further reduced the actual acquisition cost.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 221:19-222:1; *see also* Exhibit H; *see also* Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 30:19-33:6.**

**ETHEX'S RESPONSE:**

ETHEX denies that paragraph 31 is a material statement of undisputed fact.  ETHEX does not dispute that it offers pricing incentives as part of its negotiations with pharmacy and warehousing chains. ETHEX disputes the characterization that such pricing incentives "further reduce[] the actual acquisition cost," whatever that statement might mean. ETHEX disputes that its pricing incentives affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

**PLAINTIFFS' REPLY TO STATEMENT #31**

The parties agree that ETHEX offers pricing incentives as part of its negotiations with pharmacy and warehousing chains.  Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

**Ethex Marketed the Spread**

**32.     Whenever it launched a new product, Ethex would create an internal document for its sales representatives to give them an overview of the product Ethex was introducing.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 29:12-31:12; *see also* Exhibit I (Ethex 30(b)(6) (Keith) 6/24/08**

**Dep. Exhibit 3 (Copy of Ethex's Product Launch Plan for Isosorbide Mononitrate)).  The launch plan would include both Ethex's AWPs and WACs as well as those of Ethex's competitors.  *See* Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 79:12-80:22; *see also* Exhibit I.**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 32 is a material statement of undisputed fact.  ETHEX does not dispute that it often created a document for sales representatives containing an overview of new products. ETHEX disputes that this occurred for every new product it sold. ETHEX also disputes that it "marketed the spread" whatever that term might mean as implied by Plaintiff's heading. ETHEX disputes that its launch plan affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

## PLAINTIFFS' REPLY TO STATEMENT #32

The parties agree that ETHEX often created a  document for its sales representatives containing an overview of new products.  ETHEX's 30(b)(6) deponent testified that it is "standard practice" for ETHEX to prepare such a launch plan:

> Q.   And is it fair to say that this is the -- the launch plan for Isosorbide Mononitrate?
>
> A.   Yes.
>
> Q.   Is it standard practice for Ethex to prepare a launch plan prior to launching a product?
>
> A.   Yes, it is.

ETHEX 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 30:2-7.  ETHEX does not dispute that the plan would include both ETHEX's AWPs and WACs as well as those of ETHEX's competitors.

Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

22

This statement is material because ETHEX's inclusion of its AWPs and WACs as well as its competitors' AWPs and WACs supports plaintiffs' position that ETHEX's reporting and control of its false AWPs and WACs was purposeful, intentional and knowing.

33. **Ethex included its AWP, WAC and contract price in its bids to its customers.** *See* **Ethex 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 191:11-192:11;** *see also* **Exhibit J (Ethex 30(b)(6) (Keith) 6/24/08 Dep. Exhibit 27 (Contract between Ethex and OptiSource Group)).**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 33 is a material statement of undisputed fact. ETHEX disputes the references to "its customers" as use of that term is not supported by the cited deposition excerpts. ETHEX does not dispute that it included its AWP, WAC and contract price in its bid to OptiSource. ETHEX disputes that it represented to OptiSource that its AWP or WAC were reimbursement prices. ETHEX disputes that it "marketed the spread" whatever that term might mean as implied by Plaintiff's subheading. ETHEX disputes that its bids to its customers affected or related in any way to CMS's establishment of a FUL for Isosorbide Mononitrate.

## PLAINTIFFS' REPLY TO STATEMENT #33

ETHEX's objection is disingenuous at best. Optisource was a customer of ETHEX. *See* ETHEX 30(b)(6) (Keith) 6/24/08 Dep. (Exhibit B) at 190:20-22 ("Q. And this particular deal with OptiSource was agreed to; isn't that right? A. It appears to be, yes.") (attached hereto as Reply Exhibit A). The cited testimony refers to a bid from ETHEX to its "customer," Optisource, and ETHEX does not dispute that the bid included the AWP, WAC and contract price. The remainder of ETHEX's response is disputed and irrelevant to this Statement.

Ethex's AMPs

34.    **At all times, from 1997 to 2005, Ethex has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute.  *See* Ethex 30(b)(6) (Chibnall) 6/24/08 Dep. (Exhibit E) at 26:18-27:8; *see also Commonwealth of Massachusetts v. Mylan Laboratories*, 2008 WL 5650859, at \*30 (D. Mass. Dec. 23, 2008).**

## ETHEX'S RESPONSE:

ETHEX denies that paragraph 34 is a material statement of undisputed fact.  ETHEX disputes that AMP calculations have any relevance to the establishment of a FUL. ETHEX does not dispute that it has calculated on a quarterly basis the average manufacturer's price ("AMP") for all its products as required by the federal rebate statute.

## PLAINTIFFS' REPLY TO STATEMENT #34

The parties agree that ETHEX calculated AMPs for all its products during the relevant time period.  Replying further, ETHEX's argument about how CMS set the FUL is just that – an argument that is inappropriate to a Statement of Facts and irrelevant to this Statement.

Dated: June 30, 2009

Respectfully submitted,

**City of New York and New York Counties in MDL 1456 except Nassau and Orange by**

**KIRBY McINERNEY, LLP**
825 Third Avenue
New York, New York 10022
(212) 371-6600

/s/ Joanne M. Cicala
By:    Joanne M. Cicala
James P. Carroll Jr.
Jocelyn R. Normand
Kathryn B. Allen

24

Ross B. Brooks, Esq.
MILBERG LLP
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300
*Special Counsel for the County of Nassau*

Theresa A. Vitello, Esq.
LEVY PHILLIPS &
KONIGSBERG, LLP
800 Third Avenue
New York, NY  10022
(212) 605-6205
*Counsel for the County of Orange*

## <u>CERTIFICATE OF SERVICE</u>

I, James P. Carroll Jr., hereby certify that I caused a true and correct copy of the foregoing PLAINTIFFS' REPLY LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AS TO ETHEX CORPORATION to be served on counsel of record via electronic service pursuant to paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File and Serve for posting and notification to all parties.

Dated:  June 30, 2009

_____ /s/ _____
James P. Carroll, Jr.
Kirby McInerney LLP
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 371-6600