# EXHIBIT I


# ANALYSIS SHEET

**SUBJECT:** Analysis of Connecticut State Plan Amendment No. 03-002

**TO:** Carl Tepper, Pharmacist
Irv Rich, Health Insurance Specialist

**FROM:** Chong B. Tieng, Health Insurance Specialist

State plan amendment (SPA) No. 03-002, received February 13, 2003, transmitted a proposed amendment to Connecticut's approved Title XIX State plan to establish the maximum allowable cost (MAC) for selected multiple source brand and generic drugs. The State requested an effective date of January 1, 2003.

## Content

The State proposes to establish that a State MAC for selected multiple source brand and generic drugs meeting certain criteria established by the State shall be the Average Wholesale Price (AWP) minus 40 percent plus a reasonable professional dispensing fee. These criteria include that the multiple source brand has at least three suppliers of the generic product available, that the drug is not on the Federal upper limit list or the Department of Justice list, and that the drug is in oral dosage form (including tablets, capsules, and liquids).

## Analysis

There are several issues raised by this proposed SPA. One issue centers on the payment methodology itself. The State proposes to reimburse pharmacists AWP minus 40 percent for selected multiple source brand and generic drugs meeting certain criteria without taking into account the providers' usual and customary charges to the general public. 42 CFR 447.331, in part, specifies that the State agency may only pay the lower of the estimated acquisition costs plus dispensing fees or the providers' usual and customary charges to the general public.

The second issue centers whether the proposal meets the requirements of §1902(a)(30) of the Social Security Act (the Act). Section 1902(a)(30) of the Act, in part, requires that the payment methodologies established by the State are sufficient to enlist enough providers to serve its populations. The State proposes a drastic cut in payments for certain multi-source brand drugs that may affect the participation of pharmacists in the Medicaid program and thus may affect Medicaid recipients' access to certain drugs.

The third issue centers on the State's proposed effective date and public notice. Although the State requested an effective date of January 1, 2003, the State did not publish a public notice until February 4, 2003. 42 CFR 447.205 requires that with few exceptions, the State agency

RELEASED

provide a public notice for any significant proposed change in its methods and standards for setting payment rates prior to the effective date of the proposed SPA. The State argues that there was ample public process and prior notice regarding the proposed change. The state held a legislative hearing in March of 2002 and other activities in the Connecticut General Assembly in 2002. However, the public process that the State referred to may not meet the requirements of 42 CFR 447.205(d)(2). 42 CFR 447.205(d)(2) requires that the notice be published in (1) a State register similar to the Federal Register, (2) the newspaper with the widest circulation in each city with a population of 50000 or more, or (3) the newspaper of the widest circulation in the State, if there is no city with a population of 50000 or more.

### Followup with State

I have the following issues that I recommend we follow up with the State. I am requesting that the State respond to the following issues:
- The State modifies its proposal to include that the State will pay the lower of AWP minus 40 percent or the provider's usual and customary charge.
- The State assures us that proposed SPA No. 03-002 meet the requirements of §1902(a)(30) of the Act.
- The State provides us with information on which specific drugs would be affected and an analysis of the difference between payment rates under the currently approved AWP minus 12 percent and the proposed AWP minus 40 percent.
- The State provides us with additional documentation showing the analysis and supporting rationale for moving to AWP minus 40 percent.
- The State provides us with additional documentation showing the analysis.
- The State provides us with any information on the impact of this proposed changed since implementation such as pharmacies ceasing Medicaid participation and increased complaints concerning access to drugs.

In addition, Central Office has the following issues:
- The State provides us with the frequency of updating the MAC list
- The State provides us with how it handle those drugs that are on the MAC list but whose cost are below minus 40 percent

We held a conference call with the State to discuss the above issues. The State assured us that the proposal meets the requirements of §1902(a)(30) of the Act. The State also reported that currently the proposed change neither cause pharmacies to cease Medicaid participation nor increased recipient complaints concerning access to drugs. In addition, the State provided a response via email on the following questions:
- The State provides us with additional documentation showing the analysis and supporting rationale for moving to AWP minus 40 percent.
  - In establishing a State MAC, the State depends on studies from the Office of the

RELEASED

Page 3 - Carl Tepper, Pharmacist and Irv Rich, Health Insurance Specialist

- Inspector General (OIG), which identified the actual acquisition code of generic drug products to be 65.93% below AWP as well as our response to that report which stated we are "very concerned with the OIG's findings in this report and believe follow-up action with the states is warranted. We concur that an accurate estimate of the acquisition cost should be used to determine drug reimbursement." The State solicited the assistance from its fiscal intermediary, EDS. EDS researched programs in other states as well as the states they themselves service (Indiana, Arkansas, California, Delaware, Wisconsin). They provided the State with a MAC proposal which identified appropriate criteria/cost savings if it was to reimburse at various levels AWP-20%/30%/40%. After reviewing the information provided, the decision to reimburse at AWP-40% was made. The methodology used for including a drug on the selected list is: there has to be three or more suppliers of the product; drugs on the FUL or the DOJ list were excluded; and the drug had to be in oral dosage form.

- The State provides us with the frequency of updating the MAC list
  - The State will be doing quarterly updates to the MAC list. The State obtains weekly updates to our drug file from FDB. EDS will monitor pricing and make adjustments as needed based on provider feedback, research and verification and FDB pricing (e.g., new drugs added, changes on the FUL which affect what's on our MAC, etc). Two EDS pharmacists monitor this process closely. An updated (quarterly) MAC list will be available on its website for providers to access and this list identifies any added, changed or deleted drugs from the prior quarter. Additionally, the State has developed a process for its providers to report any issues/problems/discrepancies. A worksheet is available on the website to assist its providers in reporting any issues/concerns/complaints to EDS. EDS pharmacists are always available to assist providers and are available to explain the methodology used to derive the prices and discuss/research discrepancies. The providers remittance advice also identifies to the provider how a particular drug has paid.

- The State provides us with how it handle those drugs that are on the MAC list but whose cost are below minus 40 percent
  - The State has developed a process for its providers to report any discrepancies they may have. EDS pharmacists work closely and seriously research/consider all issues brought to their (or the Department's) attention. If necessary, adjustments will be made to the MAC list. The State feels that it has a very thorough system and review process in place which will address any issues reported to the Department in a timely manner.

The Office of the General Counsel advised us that legislative hearings held on the proposal does not constitute the public notice. Therefore, the legislative hearings do not meet the public notice requirements.

We informed the State that we could not approve this proposed SPA with an effective date of

RELEASED

Page 4 - Carl Tepper, Pharmacist and Irv Rich, Health Insurance Specialist

January 1, 2003. We could only approve it with an effective date of February 5, 2003, the date after the publication of the public notice.

Irv Rich and I came up with a solution that permits us to disapprove and the State to implement the proposal. We suggested to the State that it request to split its proposed SPA 03-002 into two proposed SPAs. Proposed SPA 03-002A would have an effective date of January 1, 2003. Proposed SPA 03-002B would have an effective date of February 5, 2003. The purpose of this suggestion was to allow the State to implement the proposed change while appealing the disapproval on the effective date of January 1, 2003 without losing the effective date of February 5, 2003. The State agreed to the suggestion. In the letter dated May 6, 2003, the State requested that its proposed SPA 03-003 be spitted into two proposal SPAs: proposed SPA 03-002A with an effective date of January 1, 2003 and proposed SPA 03-002B with an effective date of February 5, 2003.

We disapproved proposed SPA 03-002A on May 12, 2003. We approved proposed SPA 03-002B on May 14, 2003.

_Chong B. Tieng_            _May 13, 2003_
Chong B. Tieng              Date

RELEASED                                      HHC006-0302