# Exhibit C-1

Page 1

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

In re: PHARMACEUTICAL            )   MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE       )   CIVIL ACTION

PRICE LITIGATION                 )   01-CV-12257-PBS

Videotaped Rule 30(b)(6) Deposition of MICHAEL SELLERS, at 77 West Wacker Drive, Chicago, Illinois, commencing at 9:00 a.m. on Sunday, March 16, 2008, before Donna M. Kazaitis, RPR, CSR No. 084-003145.

1  people that understood or thought they understood
2  that there was a relationship.
3           That knowledge expanded primarily
4  due to these, the litigation in the late 1990s.
5  BY MS. ST. PETER-GRIFFITH:
6      Q.   Did Abbott at any time make any inquiry
7  of any government official, state or federal, to
8  seek clarification of the relationship between its
9  price reporting or AWPs and Medicare or Medicaid
10 reimbursement?
11          MS. TABACCHI:  Object to the form.
12               Would you mind reading that back.
13               (WHEREUPON said record was read
14                back as requested.)
15          MS. TABACCHI:  Object to the form,
16 beyond the scope of the Notice.
17          THE WITNESS:  I don't believe that was,
18 I'm not aware of any communication to that effect.
19               I am aware that there was ongoing
20 communication between the reimbursement folks and
21 the carriers to understand what they could about
22 what we were getting paid for our clients, but I

1   don't think that's what you're asking about.
2   BY MS. ST. PETER-GRIFFITH:
3       Q.   No.  I'm not asking about individual
4   reimbursement questions posed by the reimbursement
5   department within Home Infusion, unless they made
6   the inquiry to Medicare and Medicaid about the
7   relationship between Abbott's AWPs or Abbott's
8   reported pricing and Medicare and Medicaid
9   reimbursement.  Are you aware of any inquiry by
10  Home Infusion to that effect?
11          MS. TABACCHI:  Object to the form.
12  BY MS. ST. PETER-GRIFFITH:
13      Q.   Or is Abbott aware of any -- I want to
14  make clear, sir, that I'm expecting that you're
15  answering on behalf of Abbott.
16      A.   I would expect that to be a natural
17  communication to either the Medicaid agency.  If
18  you had any questions about how you got
19  reimbursed, that would be a natural question to
20  inquire as to why the reimbursement was high, low,
21  in between.
22          So I don't doubt that there were

1           MS. ST. PETER-GRIFFITH: That's okay,
2   Tina. Any time you can speed things up, please
3   feel free. (Laughter.)
4           MS. TABACCHI: I knew that's not what
5   you meant to ask.
6           MS. ST. PETER-GRIFFITH: That is not
7   what I meant to ask. Thank you.
8   BY MS. ST. PETER-GRIFFITH:
9       Q.  When did Abbott first notice those
10  disparities?
11          MS. TABACCHI: Objection, asked and
12  answered.
13          THE WITNESS: I can only tell you that
14  we looked at a number of products in the fall of
15  2000.
16  BY MS. ST. PETER-GRIFFITH:
17      Q.  At any time prior to 2001 for the time
18  period from '91 through 2001, did Abbott ever
19  notify any state or federal official about these
20  inadvertent disparities?
21          MS. TABACCHI: Object to the form,
22  beyond the scope of the Notice.

1       MS. ST. PETER-GRIFFITH: It's not beyond
2  the scope of the Notice.
3       THE WITNESS: No.
4  BY MS. ST. PETER-GRIFFITH:
5       Q.    How come?
6       MS. TABACCHI: Same objections.
7       THE WITNESS: We would have seen no
8  reason to involve a government agency in what we
9  considered to be internal issues.
10 BY MS. ST. PETER-GRIFFITH:
11      Q.    Well, did you have an understanding as
12 to whether what you've called inadvertent
13 disparities caused overpayments or false claims to
14 be submitted, overpayments to be made by or false
15 claims to be submitted by the Medicare and
16 Medicaid programs?
17      MS. TABACCHI: Object to the form,
18 beyond the scope of the Notice, calls for a legal
19 conclusion.
20      THE WITNESS: Again, I can't rule on
21 false claims.
22 BY MS. ST. PETER-GRIFFITH:

1  be.
2  BY MS. ST. PETER-GRIFFITH:
3      Q.    If you could move on -- oh, let me ask
4  you, at any time from 1991 until 2001 did Abbott
5  ever notify any state or federal official about
6  what its actual contract prices were that it was
7  charging its customers?
8          MS. TABACCHI:  Object to the form,
9  beyond the scope of the Notice.
10         MS. ST. PETER-GRIFFITH:  No, it's not.
11         THE WITNESS:  It was not our
12 understanding that that was a requirement of any
13 entity.
14              We thought the government had a
15 good picture of our nonlist price prices.  They
16 had quarterly publications of our AMP, they had
17 our Federal Supply Schedule prices, we had prices
18 negotiated with the DOD.
19              So we thought if a government
20 agency needed it, it was within the government
21 agency's purview already.
22 BY MS. ST. PETER-GRIFFITH: