# Exhibit 6

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

289

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

VOLUME II

| | |
|---|---|
| IN RE:  PHARMACEUTICAL | : MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | : CIVIL ACTION: |
| PRICE LITIGATION | : 01-CV-12257-PBS |
| | : |
| THIS DOCUMENT RELATES TO | : |
| U.S. ex rel. Ven-A-Care of | : |
| the Florida Keys, Inc. v. | : |
| Abbott Laboratories, Inc. | : |
| No. 06-CV-11337-PBS | : |

- - -

Continuation of the videotaped deposition of ROBERT VITO was taken, pursuant to notice, at MORGAN LEWIS & BOCKIUS, LLP, 1701 Market Street, Philadelphia, Pennsylvania, on Wednesday, June 20, 2007, beginning at 8:43 a.m., before M. Kathleen Muino, Professional Shorthand Reporter, Notary Public; Michael Hunterton, Certified Legal Video Specialist, there being present:

337

1            MR. NEAL:  Objection as to form.
2            THE WITNESS:  If -- if we could get that
3   regulation, whatever that regulation states, that
4   -- that's what it is.  If it says that they're
5   supposed to pay estimated acquisition cost or the
6   national, then that is what the policy says.
7   BY MR. TORBORG:
8       Q.   And did you understand the term
9   "estimated acquisition cost" to be limited just to
10  the ingredient cost?
11           MR. NEAL:  Objection as to form.
12           THE WITNESS:  Our -- our work focused on
13  ingredient cost, and all the work that we have done
14  has focused on that except for more recently, when
15  our other offices had looked at the services that
16  were provided to Medicare beneficiaries who were
17  receiving the inhalation products.
18  BY MR. TORBORG:
19      Q.   Whose decision is it to determine what
20  the appropriate amount to reimburse is under the
21  regulations?
22           MR. NEAL:  Objection as to form.

338

1           THE WITNESS:  I -- I believe in this case

2   CMS was setting the price.  Maybe HCFA then.

3   BY MR. TORBORG:

4       Q.   If I could ask you to go back to Exhibit

5   Abbott 030, which is the suppliers' acquisition

6   costs' report?

7       A.   Uh-huh.

8       Q.   Page 10, you have a recommendation -- a

9   number of recommendations.  One of them is

10  acquisition cost.  Do you see that?  Toward the --

11      A.   Yes.

12      Q.   -- bottom of the page.  The report

13  states:  Medicare could base the payment of drugs

14  on the EAC.  The DMERCs currently have this option.

15  However, HCFA has been unsuccessful in gathering

16  the necessary data to fully implement it.  Once the

17  problem of gathering the necessary data is

18  overcome, the use of the EAC would result in lower

19  allowed amounts.  A variation of this option is to

20  use actual rather than estimated acquisition costs.

21          Mr. Vito, what do you recall, if anything,

22  about HCFA's apparently unsuccessful efforts to

```
                                                              339
```

1  gather information to base the payment of drugs on

2  the EAC?

3       A.   What I recollect -- recollect is that

4  there was an effort by CMS to get the pricing

5  information, I believe it was from physicians, for

6  certain drugs, cancer drugs, and I believe that

7  they had prepared surveys, I don't know if they had

8  sent the surveys out, but I know they had -- they

9  had prepared surveys and were moving forward in

10 that, and I believe they were petitioned by company

11 -- by -- by an organization that said that they

12 didn't -- that -- that they were petitioned under

13 the Paperwork Reduction Act because they did not

14 get their surveys approved by OMB and, therefore,

15 they were not able to do that.

16          MR. TORBORG:  Mark this as our next

17 exhibit.

18                       - - -

19          (Whereupon, Exhibit Abbott 239 was marked

20 for Identification.)

21                       - - -

22 BY MR. TORBORG:

Vito, Robert - Vol. II                    June 20, 2007
                    Philadelphia, PA

                                                    340

1        Q.   Mr. Vito, I've handed you, as Exhibit
2    Abbott 239, a document that bears the Bates Nos.
3    HHD062-0642.  It appears to be a newspaper article
4    of -- of some kind?
5        A.   Yes.
6        Q.   And there's some handwritten annotations
7    on the side that, at least to me, indicate it's
8    from the Washington Post, January 2nd, '97, and
9    then it says, To: Rob Vito, and then there's
10   something else that I'll get into.
11       Mr. Vito, do you recall this article?
12       A.   **I -- I -- I know -- I don't specifically**
13   **recall this article, but I know that it was sent to**
14   **me.**
15       Q.   Whose handwriting is that on the left?
16       A.   **Stuart Wright.**
17       Q.   The article starts out by -- by stating:
18   For two years, the General Accounting Office and
19   inspector general of the Department of Health and
20   Human Services has bombarded Congress and Medicare
21   programs with a simple, money-saving message:  The
22   prices Medicare pays doctors and drug suppliers for