# Exhibit 10

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

Page 1

```
              UNITED STATES DISTRICT COURT

               DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY

AVERAGE WHOLESALE PRICE

LITIGATION

_____/

THIS DOCUMENT RELATES TO       MDL No. 1456

State of California, ex rel.   Civil Action:

Ven-A-Care v. Abbott           01-12258-PBS

Laboratories, Inc., et al.

_____/


                     --oOo--

             TUESDAY, SEPTEMBER 23, 2008

                     --oOo--

             VIDEOTAPED DEPOSITION OF

                DOUGLAS B. HILLBLOM

                     --oOo--


Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

              Registered Merit Reporter
```

Hillblom, Douglas B.  September 23, 2008
Sacramento, CA

Page 2

1   APPEARANCES:

2           For the STATE OF CALIFORNIA:

3              BUREAU OF MEDI-CAL FRAUD & ELDER ABUSE

4              BY:   NICHOLAS N. PAUL

5                 Supervising Deputy Attorney

6                 General

7              Civil Prosecutions Unit

8              P.O. Box 85266

9              110 West A Street, #1100

10             San Diego, California   95186

11             619.688.6099

12             nicholas.paul@doj.ca.gov

13                    and

14             BUREAU OF MEDI-CAL FRAUD & ELDER ABUSE

15             BY:   THOMAS A. TEMMERMAN

16                 Senior Assistant Attorney GGeneral

17             Chief Prosecutor

18             1425 River Park Drive, Suite 300

19             Sacramento, California   95815

20             916.274.2942

21             tom.temmerman@doj.ca.gov

22

59a7f9f9-30c2-4b26-a88f-b90f6ae9a028

Hillblom, Douglas B.                                          September 23, 2008
                          Sacramento, CA

Page 94

1        A.    Correct.
2        Q.    And that's a rate that was set
3    independently of the ingredient cost reimbursement
4    rate; is that fair?
5        A.    Yes.
6        Q.    And together the two had to total
7    something that the Department considered
8    reasonable; right?
9        A.    Yes.
10       Q.    But in terms of the actual calculation
11   of the two components, the calculation of the two
12   components, that portion of it was done separately?
13       A.    Yes.
14       Q.    So it would have been possible to
15   calculate the ingredient cost rates in a -- in a
16   different way?
17             MR. PAUL:  Objection to form.
18             THE WITNESS:  Could you please clarify
19   what you mean by "different form."
20   BY MR. BUEKER:
21       Q.    Yeah.
22             It would have been possible to calculate

1  the ingredient cost component of the reimbursement
2  rate on the basis of invoice prices just as you
3  were doing with blood factors, for example;
4  correct?
5      A.   In theory anything is possible.
6  Practically that was impossible.
7      Q.   Why?
8      A.   Because of the volume of claims that
9  would be coming through the system.
10          I think at that time frame we were
11 looking at -- and, you know, please -- you know,
12 understand that these are just grossly rough
13 estimates --
14     Q.   Uh-huh.
15     A.   -- of anywhere from 800,000 to a million
16 prescription drug claims a week.
17          To review each and every one of those on
18 an invoice --
19     Q.   What about -- was consideration ever
20 given to -- setting aside "invoice" and now moving
21 to the term "provider acquisition costs," so the
22 provider would state some kind of acquisition cost?