# Exhibit 24
# Part A

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS;<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; and<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS. | MDL No. 1456<br>Civil Action No. 01-12257-PBS<br><br>Hon. Patti B. Saris |

## DECLARATION OF MYERS and STAUFFER LC

I, Kristopher Knerr, do hereby declare as follows:

1. I am currently a member of Myers and Stauffer LC (Myers and Stauffer). Except to the extent specifically noted, I have personal knowledge of the matters stated herein and speak on behalf of Myers and Stauffer with regard to the information contained in this declaration.

2. I have been a Certified Public Accountant since 1993, and I have been personally involved in a supervisory capacity in the efforts described herein from September 2007 through the present.

3. Myers and Stauffer is a firm that provides professional accounting, consulting, data management and analysis services to state and federal agencies managing government-

sponsored health care programs. The firm has extensive experience assisting State Medicaid agencies with reimbursement issues. Myers and Stauffer's practice includes working with public health care agencies on various health care related projects, and with the Centers for Medicare & Medicaid Services (CMS) on projects involving the Medicare and Medicaid programs.

4. On September 14, 2007, Myers and Stauffer was retained by the United States Department of Justice (DOJ) through a subcontract arrangement with Lockheed Martin, and subsequently under a contract with DOJ, to provide research and consulting services in connection with the above-captioned litigation. Myers and Stauffer's instruction from DOJ was to provide support to the government's damages expert, Mark Duggan, Ph.D. Professor Duggan instructed Myers and Stauffer to research, obtain and document drug reimbursement methodologies of State Medicaid agencies from 1991 to the present, and provide summaries of that information to assist him with his calculations of damages.

5. The summaries contained in Attachment 1 are true and accurate summaries of the information Myers and Stauffer compiled concerning the drug reimbursement methodologies used by 48 State Medicaid agencies[1] and the District of Columbia (which we refer to in the remainder of this declaration as a "State"). The supporting documentation upon which Myers and Stauffer has relied in preparing these summaries has been provided to DOJ. DOJ has advised Myers and Stauffer that this information has been or is being produced to the Defendants. The discussion of State Medicaid drug reimbursement programs in this declaration is limited to the 49 states identified in Attachment 1, hereto.

---

[1] Attachment 1 does not contain summaries of the drug reimbursement methodologies used by the states of Arizona or Ohio.

2

6. Each summary in Attachment 1 generally describes the Medicaid prescription drug reimbursement methodology in chronological date order. The source of the information contained in the summaries is indicated by the color of the font: blue represents information obtained from Medicaid State Plan Amendments and related correspondence; green represents information obtained from State 30(b)(6) and other depositions and exhibits, documents produced during discovery, and declarations made by state officials and others; black represents information obtained from other published sources, such as statutes, regulations, state provider manuals and bulletins; purple represents information obtained in direct communications with State Medicaid agency officials; and red represents information obtained from the National Pharmaceutical Council (NPC) *Pharmaceutical Benefits Under State Medical Assistance Programs* publications for 1990 through 2005/2006. In the following paragraphs, the information-gathering process Myers and Stauffer used to prepare these summaries, and the nature of the underlying information is described.

Preparation of the Summaries

7. Before Myers and Stauffer began gathering and reviewing information about State Medicaid drug reimbursement methodologies, Professor Duggan instructed Myers and Stauffer to take measures to ensure the reliability of the information gathered and the summaries that Myers and Stauffer would prepare based on that information. The measures included using published sources of industry and government information, written communications with government officials, documenting the sources of information, and, where information was obtained through oral communications, recording the substance of those communications. DOJ has advised Myers and Stauffer that this information has been produced to the Defendants.

8. Myers and Stauffer began the process of gathering information by obtaining state-specific materials from DOJ. DOJ advised Myers and Stauffer that this information was produced to DOJ by CMS (formerly known as the Health Care Financing Administration (HCFA)). Included among these documents were "State Medicaid Plans" (State Plans), which lay out the design of each State's Medicaid program in a standard format. CMS reviews and approves State Plans, and all subsequent changes to State Plans. Formal changes to a State Plan are contained in what are known as State Plan Amendments (SPAs). DOJ advised Myers and Stauffer that approved SPAs in the possession of CMS marked with Bates-stamped numbers bearing the prefixes "HHD" and "HHC" were provided by CMS to DOJ, and were subsequently produced by DOJ to Defendants and to Myers and Stauffer. Myers and Stauffer relied on SPA documents if the SPA had been approved by CMS/HCFA, which was normally indicated by an "approved" date in the footer of the SPA documents. A list of the specific SPA pages bearing the prefixes "HHD" and "HHC" and relied upon by Myers and Stauffer is set forth in Attachment 2 to this declaration.

9. Myers and Stauffer also reviewed copies of annual publications of the NPC *Pharmaceutical Benefits Under State Medical Assistance Programs*, from 1990 through 2005/2006. These publications contain information about state Medicaid pharmacy benefits, including information concerning the reimbursement methodology of each state.

10. During 2008 and 2009, Myers and Stauffer also contacted Medicaid officials to obtain additional information concerning drug reimbursement methodologies and to review and confirm the accuracy of the state drug reimbursement methodology summary prepared for each state. During these communications, Myers and Stauffer provided the Medicaid officials with

the State's drug reimbursement methodology summary for their review and approval. Communications were made by telephone, e-mail, facsimile, and First Class mail. Myers and Stauffer maintained written records of these communications, which were provided to DOJ. DOJ advised Myers and Stauffer that these records were produced to the Defendants.

11. In June 2008, in connection with the production of the expert report of Professor Duggan in *United States ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories*, Civil Action No. 06-11337-PBS ("the *Abbott* case"), Myers and Stauffer prepared and provided summaries of the drug reimbursement methodologies. The summaries were similar to those in Attachment 1, except that the time period covered in those summaries extended only through 2001, and as described in paragraphs 12 and 13 below, the summaries in Attachment 1 have been further updated. Myers and Stauffer provided these summaries to DOJ, and DOJ advised Myers and Stauffer that these summaries were produced to the Defendants.

12. After June 2008, Myers and Stauffer made updates to the summaries, in preparation for Professor Duggan's anticipated reports in *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc.*, Civil Action No. 05-11084-PBS ("the *Dey* case"), and *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS ("the *Boehringer/Roxane* case"). Myers and Stauffer updated the summaries to include time periods through the present and further documented the methodology descriptions based on communications with State Medicaid officials. Myers and Stauffer also reviewed depositions of some State Medicaid officials taken in AWP litigation provided to Myers and Stauffer by DOJ, including related deposition exhibits. In addition, Myers and Stauffer reviewed documents that were provided by DOJ, and that Myers

and Stauffer was advised had been produced by states pursuant to subpoenas issued by one or more of the Defendants in the above-captioned cases. These updated versions of the summaries were provided to DOJ in January 2009 in connection with the expert report of Professor Duggan in the *Dey* case, and in February 2009 in connection with the *Boehringer/Roxane* case. DOJ has advised Myers and Stauffer that these summaries, and the supporting documentation, were produced to the Defendants.

13. Between March 2009 and the date of this declaration, in conjunction with plaintiff attorneys who attended depositions of State Medicaid officials, Myers and Stauffer made additional updates to the summaries based on further review of deposition testimony and documents obtained through subpoenas, as described above. In addition, for some states Myers and Stauffer obtained and reviewed declarations, regulations and statutes that were provided to Myers and Stauffer by DOJ, and obtained policy manuals and provider bulletins and other pertinent documents available on State Medicaid agency Web sites. These additional updates to the drug reimbursement methodology summaries consist primarily of changes to the color of the font and additional footnote citations to specific pages of deposition testimony, litigation documents, declarations, or statutes and/or regulations. Myers and Stauffer has provided these updated summaries to DOJ. DOJ has advised Myers and Stauffer that these summaries and any additional supporting documentation relied upon in preparing the summaries are being produced to the Defendants contemporaneously with the filing of this declaration.

14. Between September 14, 2007 and June 30, 2009, Myers and Stauffer has spent more than 1,900 hours researching State Medicaid pharmacy reimbursement methodologies, preparing summaries of the methodologies, verifying the accuracy of the information, preparing

updates to the summaries and creating a binder for each state which contains documentation supporting each field on the respective summaries.

15.     By way of example, Attachments 3 and 4 to this declaration contain supporting documentation relied upon by Myers and Stauffer for the States of North Carolina and Louisiana. The supporting documentation that Myers and Stauffer relied upon for all other states has been provided to DOJ. DOJ has advised Myers and Stauffer that this information has been produced to the Defendants. Should the Court request, a copy of the supporting documentation for all other states will be made available.

Description of the Summaries

16.     In paragraphs 17 – 23 below, Myers and Stauffer provides background information about the summaries. In paragraph 24 below, Myers and Stauffer summarizes information from the summaries included as Attachment 1 to this declaration, to provide an overview of the Medicaid reimbursement methodologies of the 49 states.

17.     In each summary included as Attachment 1, the parameters of the prescription drug reimbursement methodology are described in row and column format, so that the effective time period and chronological changes are presented. The first two columns at the left indicate the effective time periods applicable to the methodology parameters that are described in the columns to the right.

18.     The first several columns to the right of the time period, under the heading "Lower of Reimbursement Methodology" or "Lesser of Reimbursement Methodology" describe a feature that is followed by all but one (1) of the states identified in Attachment 1. Forty-eight

(48) of forty-nine (49) states[2] currently reimburse pharmacy providers for prescription drugs under a "lower of" algorithm in which payment is made based, at least in part, on the lower of (a) the State's estimated acquisition cost (EAC) plus a dispensing fee, (b) the pharmacy's usual and customary charge (U&C) (sometimes referred to as the "billed amount"), or (c) the Federal Upper Limit (FUL)[3] plus a dispensing fee. Many states also include other pricing components as described in paragraphs 19, 20 and 21.

19. The second sentence of paragraph 18 above is true for the entire period except as to six (6) states. Michigan used Actual Acquisition Cost with a limit based on AWP instead of EAC before September 1, 1995. Delaware also used Actual Acquisition Cost before changing to EAC effective May 1, 1997. In addition, Alaska, New York, Arkansas, and Massachusetts, each for specific periods of time, did not include the EAC in their "lower of" algorithms when the drug was subject to a FUL.

20. Many states (the number differs depending on the time period) add to the above-described algorithm a State Maximum Allowable Cost (State MAC) plus a dispensing fee. A State MAC is an upper limit established by the state, similar to the FUL, but often determined based on criteria different than the FUL. States that utilize a State MAC reimburse based, at least in part, on the lower of (a) EAC plus a dispensing fee, (b) U&C, (c) the FUL (if any) plus a dispensing fee, or (d) the SMAC plus a dispensing fee.[4]

---

[2] As of 1/30/2008, Indiana removed FUL pricing from its reimbursement methodology.

[3] FULs are established by CMS under that agency's FUL program, described at 42 C.F.R. § 447.332.

[4] Hawaii does not apply the SMAC if a FUL applies.

21. Twenty-nine (29) states also have used the "DOJ Price" plus a dispensing fee as part of their reimbursement methodology. The term "DOJ Price" refers to prices provided in 2000 by the DOJ and the National Association of Medicaid Fraud Control Units and published by First DataBank. For a few of these twenty-nine (29) states, the DOJ prices were used for only a short period of time. For another three (3) states, a 2001 report of the HHS Office of Inspector General[5] identified the state as using the DOJ prices, but Myers and Stauffer was unable to confirm this with state agency staff. All of the states that used the DOJ Prices used them as part of their "lower of" reimbursement methodology.

22. Further to the right in the methodology summaries is a column entitled, "Physician Override (DAW/Brand Medically Necessary)." This column indicates the feature that requires the pharmacist to dispense the generic version of a brand-name drug unless the prescribing physician expressly writes on the prescription "Brand Medically Necessary," "Dispense as Written," "DAW," "no substitution," or something similar to override the presumption in favor of a generic version.

23. Further to the right in the methodology summaries is a column entitled, "Dispensing Fee." All states provide for payment of a dispensing fee where reimbursement is based on EAC, FUL, SMAC or the DOJ prices, if applicable.

24. Following is a summary of information aggregated from the drug reimbursement methodologies for the forty-nine (49) states:

   a. Forty-nine (49) states have used AWP during at least some of the period covered by the summary as a component for determining EAC. Forty-two

---

[5] HHS OIG, *Medicaid's Use of Revised Average Wholesale Prices*, OEI-03-01-00010, September 2001.

9

(42) states have used AWP during the entire time period covered by the summary as a component for determining EAC.

b. Of the forty-nine (49) states, four (4) states used both AWP and Wholesale Acquisition Cost (WAC) during the entire time period covered by the summary as components for determining EAC. An additional eight (8) states used WAC during at least some of the period covered by the summary as a component for determining EAC.

c. All forty-nine (49) states used First DataBank for part of the period covered by the summary. Of these, forty-three (43) states currently use First DataBank, or First DataBank together with MediSpan or Redbook, as their source for drug pricing. Of the remaining six (6) states, five (5) states currently use MediSpan as their source for drug pricing, and one (1) state currently uses Redbook as its source for drug pricing. During the time periods presented in Attachment 1, some states have changed the compendia they use for their prescription pricing, and such cases are noted on the respective summaries.

d. For prescription drugs for which a FUL or SMAC has not been established, for all periods covered by the summary, forty-seven (47)[6] states have implemented a "lower of" methodology that provides for payment based in part on the lower of EAC plus a dispensing fee, or U&C.

---

[6] The limited exceptions are Delaware and Michigan, which used Actual Acquisition Cost (AAC) instead of EAC prior to May 1, 1997, and September 1, 1995, respectively.

e. For prescription drugs for which a FUL and/or SMAC has been established, except as noted below, all forty-nine (49) states reimburse based on the lower of the EAC (or AAC as noted above), the FUL, SMAC, or U&C. This has been true for the entire time period covered except that (i) Hawaii does not use the SMAC if a FUL is effective, (ii) Alaska (prior to May 2003), Arkansas (beginning in 2002), Massachusetts (until 1995) and New York (prior to July 2008) reimbursed based on the FUL even if the EAC was lower; and (iii) Indiana (beginning January 30, 2008) removed the FUL from its reimbursement methodology. Twenty-nine (29) states add to the "lower of" reimbursement methodology the DOJ prices referenced in paragraph 21 above, for at least some of the time period covered by the summary.

f. Forty-two (42) states have implemented a SMAC program during some of the time period covered by the summary. Of these, only twenty-two (22) states have utilized a SMAC program during the entire time period. Fifteen (15) states commenced their SMAC programs on or after January 1, 2000.

I swear under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge. Executed this __23__ day of July, 2009.

_Kristopher Knerr_

Kristopher Knerr

Myers and Stauffer LC

**Attachment 1**

Myers and Stauffer Summaries of the Drug Reimbursement

Methodologies of the 49 States (48 States and the District of Columbia)

**Attachment 2**

SPA Pages Relied Upon by Myers and Stauffer

**Attachment 3**

Supporting Documentation Relied Upon by Myers and Stauffer

For the State of North Carolina

**Attachment 4**

Supporting Documentation Relied Upon by Myers and Stauffer

For the State of Louisiana