# Exhibit 24
# Part B

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

**Attachment 1**

Myers and Stauffer Summaries of the Drug Reimbursement

Methodologies of the 49 States (48 States and the District of Columbia)

State of: **ALABAMA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Usual and Customary | "Lesser of" Reimbursement Methodology [1] | | | DOJ Pricing | Alabama Estimated Acquisition Cost (AEAC) [2] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Selected Price | | | | | | | | | | |
| | | FUL/FAC | Pay "Lesser of" EAC | AFAC [3]/AMAC [7] | | Brand/Generic | Schedule II Drugs | | | Retail | Institution | Compound |
| 1/1/1991 - 9/30/1991 | Y | Y | Y | N | | WAC + 9.2% [4] or AWP-10.2%; Direct Price [5,11] | | | | $3.75 [10,12] | | |
| 10/1/1991 [10] - 5/31/1992 | Y | Y | Y | N | | WAC + 9.2% [4] or AWP-10.2%; Direct Price [5,11] | Lower of U&C, AWP | | | $5.40 [10] | | |
| 6/1/1992 - 5/18/1997 | Y | Y | Y | N | | WAC + 9.2% [4] or AWP-10.2%; Direct Price [5,11] | Lower of U&C, AWP | | Y | $5.40 [10] | $3.99 [10] | $5.40 [9] |
| 5/19/1997 - 4/30/2000 | Y | Y | Y | Y | | WAC + 9.2% [4] or AWP-10.2%; Direct Price [5,11] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40 [10] | $3.99 [10] | $5.40 [9] |
| 5/1/2000 - 1/9/2003 | Y | Y | Y | Y | Y [8] | WAC + 9.2% [4] or AWP-10.2%; Direct Price [5,11] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40 [10] | $3.99 [10] | $5.40 [9] |
| 1/10/2003 - 1/29/2004 | Y | Y | Y | Y | Y | Pay lower of: WAC + 9.2% [6] or AWP-10.2%; Direct Price [5,11] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40 [10] | $3.99 [10] | $5.40 [9] |
| 1/30/2004 - Present | Y | Y | Y | Y | Y | Pay lower of: WAC + 9.2% [6] or AWP-10.2% [11] | | 65th percentile of EAC pricing | Y | $5.40 [10] | $3.99 [10] | $5.40 [9] |

- Data provided by Alabama Medicaid State Plan Amendments
- Data taken from Mary A. Finch depositions 5/23/07, 5/24/07, 08/08/07, 08/09/07
- Data provided by Pharmacy Manuals and Provider Bulletins
- Data provided by Alabama Medicaid

[1] Reimbursement is based on the lesser of the Selected Price and Usual & Customary; and Selected Price is based on the lesser of the FUL/FAC (Federal Upper Limit also referred to as FAC), the EAC, and the SMAC/AMAC. (5/23/07 deposition pp. 244-246, 335-338, 351-357). DOJ pricing was added to the lesser of methodology later (deposition p. 674.)

[2] Per deposition 5/23/07 p. 61, Alabama has always contracted with First DataBank for pricing information.

[3] Per TN #98-05 and #92-07, effective 6/1/1992, State MAC referred to as the Alabama Upper Limit (AFAC)   (HHD137-0174)

[4] Beginning in 1990 and through 2003, pricing logic applied WAC or AWP according to which was *more recent*. If both were equally current, then WAC + 9.2% was used (5/23/08 deposition p.240-246, 261).

[5] Direct price begin date is unknown, but was discontinued sometime in 2003 (5/23/08 deposition p.331-333).

[6] Beginning in 2003, reimbursement was based *on the lower of* WAC + 9.2% and AWP - 10%  (5/23/08 deposition p.244-245).

[7] The State MAC program has been in place since May of 1997 (5/23/07 deposition p.241). An AMAC is an extension of the State MAC program in which a drug ceiling was applied to a group of drugs that don't qualify for the FUL or State MAC program. Its use has been limited to H2 antagonists (drugs like Zantac and Tagamet that are used for GERD) (5/23/07 deposition p.355-357).

[8] DOJ pricing was adopted sometime in 2000 and remains in effect through the present. DOJ prices for hemophilia drugs were discontinued on 1/10/03. (05/24/07 deposition p. 673-676)

[9] Per Provider Insider dated February 2008, effective 2/25/08, compounded drugs may be billed on one claim for up to 25 ingredients and are eligible for an additional $0.25/minute reimbursement through a Prior Authorization process. One dispensing fee will be paid based on the claim total. Prior to that time, compounded drug claims were billed per each ingredient and were still eligible for the compounded time through PA (see Pharmacy Manuals dated April 2005 and January 2006.)

[10] 10/1/1991 effective date per deposition 5/24/07 p. 511-514 and Ex. 9; $5.40 dispensing fee per deposition 5/24/07 p. 476.   Between 8/3/87 and 5/14/04, there was an additional management fee paid for Clozaril/clozapine. The amount of the fee varied from $3.00-$49.00 throughout those years.

[11] Pharmacy tax imposed by state law of $0.10 per claim for every prescription over $3.00, used to fund the dispensing fee (Finch 05/24/07, p. 436-437, 476).

[12] Per Finch 5/24/07 deposition pp. 512-514, dispensing fee prior to 10/1/91 was $3.75.

State of: **ALASKA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | For FUL Drugs — Pay Lower of [13] | | For Non-FUL Drugs — Pay Lower of | | | | Estimated Acquisition Cost (EAC) | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Amount Billed/Usual and Customary [11] | FUL | EAC | DOJ Pricing | SMAC | Amount Billed/Usual and Customary [11] | Non-FUL/Brand | | Dispensing Fee | Additional Compounding Rate | |
| 2/1/1989 - 4/30/2000 | Y[12] | Y | Y[4] | | N | Y[12] | AWP - 5% | Y | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min.[6] | 3, 5 |
| 5/1/2000 - 9/30/2000 | Y[12] | Y | Y[4] | Y[9] | N | Y[12] | AWP - 5%[9] | Y | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min.[6] | 3, 5 |
| 10/1/2000 - 5/X/2003 | Y[12] | Y | Y[4] | Y[9] | N | Y[12] | AWP - 5%; 100% AWP[9] | Y | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min.[6] | 3, 5, 7, 8 |
| | Pay Lower of for All Legend Drugs [13] | | | | | | Generic/Brand | | | | |
| 5/X/2003 - 12/31/2003 | Y[12] | Y | Y[4] | Y[9] | N | | AWP - 5%; 100% AWP[9] | Y | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min.[6] | 3, 5, 7, 8 |
| 1/1/2004 - 9/22/2004 | Y[12] | Y | Y[4] | Y[9] | N | | AWP - 5%; 100% AWP[9] | Y | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min.[6] | 3, 5, 7, 8, 10 |
| 9/23/2004 - Present | Y[12] | Y | Y[4] | | N | | AWP - 5% | Y | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min.[6] | 3, 5, 7, 8, 10 |

 Data taken from Alaska Medicaid State Plan Amendments

Data provided by Campana deposition taken 8/21/08 and exhibits

Data provided by David Campana, Manager Pharmacy Program

[1] Per TN #89-2 (HHC020-1268) the dispensing fee is based on the result of surveys of Alaska pharmacies' cost of dispensing prescriptions. For each pharmacy, the dispensing fee will be determined using the following formula: $23,192 is added to the result of multiplying the annual number of prescriptions by 5.070. To this number is added the result of multiplying the annual number of Medicaid prescriptions by 12.44. From this number is subtracted the result of multiplying the total store volume expressed in square feet by 2.103. The resulting number is then divided by the total annual number of prescriptions. To the result of this division is added $0.73. However, the division will not pay a dispensing fee less than $3.45 or more than the 90th percentile of all fees determined under the formula. New pharmacies which do not have the information available to establish a fee will be assigned the statewide average fee until a year of data is available. (7AAC 43.591(g) and Campana Ex. DCUS 002)

[2] Per TN #89-2 (HHC020-1268) the payment for compounding prescriptions will be the sum of the costs of each of the ingredients as established above, plus the dispensing fee, plus an additional compounding rate of $5.75 for each 15 minutes required to compound the prescription. (AWP-AK-00000157, 7AAC 43.591(f) and Campana Ex. DCUS 002)

[3] Per TN #89-2 (HHC020-1268) reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to the recipient. Handling charges are included in the dispensing fee and are not directly reimbursed. If a pharmacy does not provide dispensing fee data as requested by the division, the division will either pay that pharmacy the minimum dispensing fee ($3.45) or sanction the pharmacy.

[4] Per TN #89-2 (HHC020-1269) the average wholesale price published by First DataBank, as updated monthly, is used in the calculation of pharmacy reimbursement; except for payments to providers outside of Alaska, which will be made at the Medicaid rate of their state. For Canadian providers, payments will be the lesser of the normal charge to the typical walk-in, cash paying customer or the lowest total payment made for the same drug to a provider in Alaska. (7AAC 43.591(j) and Campana Ex. DCUS 002)

[5] Per AWP-AK-00000159, a provider dispensing drugs in unit doses to a resident in a nursing home or other long-term care facility will receive the highest dispensing fee paid in Alaska under (g) of this section for each unit dose prescription, refill, or dosage change. $11.46 dispensing fee is paid once monthly.

[6] Per AWP-AK-00000159-160 and 7AAC 43.591(l) and Campana Ex. DCUS 002, a provider preparing and dispensing pharmaceuticals that are commonly described as high technology drugs will be reimbursed the EAC of the drug, plus the highest dispensing fee paid in Alaska under (g) of this section, plus a preparation fee of $10.00 for each 15 min. or portion thereof reasonably required to prepare these drugs in a sterile or protective environment; from 2/1989 through present.

[7] Per HHD074-0101 and TN #01-001 et al., payment is restricted to drugs supplied by manufacturers who have a signed national agreement or an approved existing agreement under the Medicaid Drug Rebate program of Sec. 1902(a)(54) and Sec. 1927 of the Act, and the only drugs supplied by such manufacturers that are not reimbursed are those excluded under Attached Sheet to Attachment 3.1A.

[8] Per TN #00-007 (HHD074-0005) "reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to a recipient in a rural area. Cross-town postage or delivery charges are not covered. Handling charges are included in the dispensing fee and are not directly reimbursed.

[9] Per DCUS Ex. 9 and Campana deposition pp. 46-48 and 286, drugs whose pricing is established by the average sale price (as provided by the U.S. Department of Justice) were reimbursed at AWP - 5% until 9/12/2001 and then at 100% AWP from 9/13/2001 through 9/22/2004.

[10] Per TN # 04-01 effective 1/1/04, Alaska will begin negotiating supplemental rebates in addition to, and separate from, Federal rebates. CMS authorized the State of Alaska to enter into the Michigan multi-state pooling agreement. The Amendment to the Supplemental Drug Rebate Agreement was submitted to CMS on April 13, 2004 and has been authorized by CMS.

[11] The Usual and Customary field is defined by the NCPDP 5.1 standard data element dictionary as the "Amount charged cash customers for the prescription exclusive of sales tax or other amounts claimed".

[12] Per deposition pp. 58-60 and 84-85 and Campana Ex. 060 (7 AAC 43.040), Alaska has a most favored nation clause, which was adopted 8/7/96 and changed to present form 2/1/1997.

[13] Per deposition pp. 44-46, before May 2003, if an FUL was in place, Alaska paid lower of FUL and U&C and would not consider EAC. Beginning May 2003, Alaska began paying FUL drugs using the same "lower of" formula as for non-FUL brand drugs; i.e. lower of: FUL, U&C, or EAC.

State of: **ARKANSAS**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Prescription/Legend Drugs | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Costs [11] | | | | | |
| | SUL | FUL | Usual and Customary | EAC [11] | Brand | Generic | | EAC | State Upper Limit/FUL | |
| 8/1/1990 [2] - 6/30/1991 | Y [2] | Y [2] | Y [2] | Y [2] | AWP - 10.5% [2] | AWP - 10.5% [2] | Y [2] | $4.16 + (.093) EAC [2] | $4.16 + (.093) EAC [2] | 10 |
| 7/1/1991 [4] - 6/30/1999 | Y [4] | Y [4] | Y [4] | Y [4] | AWP - 10.5% [4] | AWP - 10.5% [4] | Y [4] | $4.51 + (.103) EAC [4] | $4.51 + (.103) CFA/SUL [4] | 10 |
| 7/1/1999 - 4/27/2000 | Y [5] | Y [1] | Y | Y | AWP - 10.5% [3] | AWP - 10.5% [3] | Y | $5.51 [2] | $5.51 [2] | 10 |
| 4/28/2000 - 5/7/2000 [6] | Y [5] | Y [1] | Y | Y | AWP - 17.3% Chains [6] AWP - 10.5% independent | AWP - 17.3% Chains [6] AWP -10.5% independent | Y | $5.51 [2] | $5.51 [2] | 10 |
| 5/8/2000 [6] - 2/28/2002 | Y [5,7] | Y [1,7] | Y | Y | AWP - 10.5% | AWP - 10.5% | Y | $5.51 [2] | $5.51 [2] | 10 |
| 3/1/2002 - Present [12] | Pay the lower of U&C and SUL/FUL if there is one, OR the lower of U&C and EAC [9] | | | | | | | | | |
| | Y [7] | Y [1,7] | Y | Y | AWP - 14% | AWP - 20% | Y | $5.51 [2,8] | $5.51 [2,8] | 10 |

■ Data taken from Arkansas Medicaid State Plan Amendments

■ Data taken from Bridges 12/10/08 Deposition and Exhibits and documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

[1] Per TN #99-03, the Federal upper limit (FUL) standard that has been adopted for certain multiple source drugs identified in the State Medicaid Manual, Part 6, is based on an aggregate payment equal to an amount that includes the ingredient cost of the drug calculated according to the formula described as follows: The FUL is an amount equal to 150% of the published price for the least costly therapeutic equivalent (using all available national compendia). The aggregate, rather than each individual drug identified by HCFA will be less than or equal to the HCFA defined multiple source cost listed in 42 CFR 447.332. (HHD076-0017, HHD076-0015)

[2] Pricing information and effective date established in Exhibit 004; BMN established in ARK00002769 effective 10/1/85.

[3] Per TN #99-03, reimbursement for ingredient cost of these drugs is limited to the State generic upper limit. (HHD076-0019)

[4] Pricing information and effective date established in Ex. 005, Ex. 006, ARK00002769 and 3551. dep. p. 39. Dispensing Fee capped at $20 from 07/01/91 to 6/30/1999. (Dep. pp. 41-43, 231, Ex. 006 p. ARK00003570)

[5] Per TN 99-03, effective 07/01/1999, Arkansas Medicaid identifies certain generically available drugs and places an upper limit of reimbursement on these drugs. These are generic drugs not currently listed on the HCFA Upper Limit List. Acquisition costs on these generically available brands are obtained from multiple sources. The highest acquisition cost plus a percentage is used to set the State Upper Limit. Reimbursement for the ingredient cost of these drugs is limited to the State generic upper limit. (HHD076-0017, HHD076-0015)

[6] Per TN #99-23 (HHD076-0015) and TN #00-05, the ingredient cost for a chain-owned pharmacy (supplier owns eleven or more retail pharmacies nationally) is set at AWP minus 17.3%. Per deposition pp. 48-49 and 53, this was only in system for a few days before being discontinued due to a lawsuit.

[7] Per TN 01-07 effective 08/01/2001, Arkansas Medicaid identified certain brand and generically available drugs and places an upper limit on these drugs. Acquisition costs on these drugs are obtained from multiple sources. Depending on the variance, either the highest acquisition cost or an average of the acquisition costs is obtained and a percentage applied to determine a state upper limit. Those drugs identified administratively, judicially or by a federal agency as having an AWP far exceeding the actual acquisition cost, and whose average sales price is presented to the state, will be subject to a state upper limit set by reference to the average acquisition cost. Reimbursement for the ingredient cost of these drugs is limited to the lesser of the state upper limit, FUL or the provider usual and customary. The State may deviate from the lesser of payment in the event that the State determines under a HCFA approved separate/supplemental drug rebate agreement, that in the aggregate the expenditures for these drugs agreed to in the separate/supplemental rebate agreement would be reduced. Payment for brand name drugs and all other drugs for which a specific limit has not been established is limited to the lesser of the provider's U&C charge or the established formula (AWP - 10.5%).

[8] Per TN 02-07 effective 03/01/2002, an additional differential dispensing fee of $2.00 shall be given to pharmacy providers when a generic that does not have a State or federal upper limit is dispensed. (Ex. 013)

[9] Initially state developed upper limits for drugs that did not have FULs. Prior to 3/2002, the State always paid the lower of U&C, EAC, and SUL/FUL. Beginning 3/2002, State always paid the lower of U&C or SUL/FUL if there is one, or the lower of U&C or EAC. (Verified in Ex. 003 and deposition pp. 31-33, 58-61, and Ex. 014 pp. 2163-2164)

[10] The ingredient cost per NDC has been the same for all NDC's regardless if they are billed in a compound or as separate ingredients. With the HIPAA conversion, a compound field was developed that allowed multiple ingredients of one compound to be billed as one claim. One DF was paid per claim. Prior to the HIPAA conversion, if a pharmacy billed for a compound, the state really could not differentiate that claim as a compound. Each payable ingredient could be billed as a separate Rx and a DF applied to each RX. (Verified in Ex. 003 and deposition pp. 31-33)

[11] State has always used First DataBank for pricing. (Verified in Ex. 003 and deposition pp. 31-33, 44, 61)

[12] Pricing established on 3/1/2002 with TN #AR-02-07 and continues through present per deposition p. 58.

07/21/09

State of: **CALIFORNIA**

Medicaid Pharmacy Reimbursement Methodology Summary

### Legend/Prescription Drugs

| Effective Time Period | "Lower of " Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC)[4] | SMAC Description | Physician Override[6] (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
| | Usual and Customary | EAC | FUL[1] | SMAC[2] | Direct Price | Selling Price | Brand/Generic | | | Brand/Generic | NF/ICF | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/16/1989 - 11/30/2002 [15] | Y | Y | Y | Y | Y | | AWP - 5%; DP [3] | 5, 8 | Y | $4.05 [17] | | |
| 12/1/2002 [15] - 8/31/2004 | Y | Y | Y | Y | N | [11] | AWP - 10% | 5, 10 | Y | $4.05 | | 7, 9 |
| 9/1/2004 - Present [16] | Y | Y | Y | Y | N | [13] | AWP - 17% | 5, 14 | Y | $7.25 | $8.00 | 12 |

- Data taken from California Medicaid State Plan Amendments
- Rule 30(b)(6) deposition of State of CA DHSS (Gorospe) 12/3/2008; exhibits thereto; or documents produced by CA in discovery (CAAG/DHS)
- Data provided by California Legislation
- Data and supporting documents provided by Kevin Gorospe, Chief Pharmacy Policy Branch

[1] Per SPA #89-08 et al., Federal upper limit in California is also referred to as the "Federal Allowable Cost" (FAC) (CAAG/DHS 0013328).

[2] Per SPA #89-08 et al., State MAC in California referred to as "Maximum Allowable Ingredient Cost" (MAIC) (CAAG/DHS 0013328); effective in or before 1990. (Ex. 13) **(CA LEGIS 1643 (1990))**

[3] California Code of Regulations identified 11 pharmaceutical manufacturers whose products were reimbursed at Direct Price: Abbott, Ayerst, Lederle, Merck, Parke Davis, Pfizer, Roerig, Ross, Squibb, Upjohn, and Wyeth (Ex. 17 (section 51513.5)). Direct Price was discontinued effective 11/30/2002 (Ex. 22, Ex. 23, Gorospe 258-259).

[4] AWP and Direct Prices obtained from First DataBank (Gorospe 208, 223-226).

[5] MAIC is based on a reference drug brand which is generically equivalent to the innovator brand, and which is manufactured by a company with production capability to meet the statewide needs of the Medi-Cal program for that drug. (Gorospe 216-220) **(CA LEGIS 1643 (1990))**

[6] Physician override: DAW (dispense as written) to override FUL/MAIC pricing is allowed only through a state prior authorization mechanism (Ex.13).

[7] Balanced Budget Act of 1994 mandated reimbursement reductions: $0.50 reduction per claim with dates of service on or after 1/1/1995; $0.25 reduction per claim with dates of service on or after 1/1/2000; $0.10 reduction per claim with dates of service on or after 7/1/2002; $0.50 reduction per claim for dates of service on or after 10/1/2002 (for nursing facilities, the reduction remained at $0.10.); and $0.10 reduction per claim for dates of service on or after 7/1/2004 through 8/31/2004. (Ex. 19; Ex. 20; Ex. 22; Ex. 23; Gorospe 230-234, 247-249, 260-261)

[8] MAIC redefined effective 9/30/2002: the MAIC shall be based on the mean of the wholesale selling prices (WSPs) of drugs generically equivalent to the innovator brand available from wholesale distributors. WSP means the price, including discounts and rebates, paid by a pharmacy to a wholesaler. WSP pricing was never implemented, so MAICs from the original definition (FN #5) remain in place. (Ex. 22; Gorospe 250-252)

[9] Effective 1/1/03, TN 03-012 authorizes pharmacy providers to be reimbursed a $4.05 restocking fee for SNF residents; language subsequently changed effective 9/1/04 (TN 04-010) to "…pharmacy providers will be reimbursed a restocking fee equal to the professional fee for legend drugs dispensed in a SNF…"; language removed in TN 05-027, effective 10/01/05. Restocking fee was never implemented.

[10] WSP redefined effective 8/16/2004: WSP "means the weighted (by unit volume) mean price, including discounts, and rebates, paid by a pharmacy to wholesale drug distributors." WSP pricing not implemented to date so MAICs from the original definition (FN #5) remain in place. (Ex. 25; Gorospe 250-252, 263-271)

[11] Effective 8/16/2004, Selling Price (SP) means the price used in the establishment of the estimated acquisition cost. The Department shall base the Selling Price on the average sales price reported by the manufacturers. Selling Price was never implemented. (Ex. 25; Gorospe 263-271)

[12] **Reimbursement reductions described in Footnote 7 discontinued on 9/1/04 per the California Welfare and Institutions Code. (West's Ann.Cal.Welf.& Inst.Code Section 14105.337, effective 9/1/2004)** (Gorospe 249)

[13] Selling Price redefined effective 8/24/2007; Selling price shall be based on the average manufacturer's price (AMP) plus a percent markup to represent the average purchase price paid by retailers. Selling Price not implemented to date. (Ex. 27; Gorospe 279-285)

[14] MAIC redefined effective 8/24/2007; MAIC pricing shall be based on the average manufacturer's price (AMP) of drugs generically equivalent to innovator drugs plus a percent markup to represent the average price paid by retailers. AMP-based MAICs not implemented to date, so MAICs from the original definition (FN #5) remain in place. (Ex. 27; Gorospe 279-285)

[15] 12/1/2002 date established in Gorospe 247-259 (discussing Ex. 22).

[16] "Present" pricing established in Ex. 25; Ex. 26; Ex. 27.

[17] Dispensing fee of $4.05 established in CAAG/DHS 0040295; Gorospe 274-275.

State of: **COLORADO**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Legend/Prescription Drugs | | | | | | | | | | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 'Lower of' Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) [9] Pay the lower of each formula listed | | | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | | |
| | Usual and Customary | FUL | EAC | SMAC | Brand | Direct Price | Generic | Rural | | | Pharmacies | Institutions |
| 1/1/1990 [11] - 6/30/1990 [11] | | | | | | | | | | | $3.78 | $1.75 |
| 7/1/1990 - 12/31/1996 [11] | Y | Y | Y | N [8] | AWP - 10% [1] | MDC + 18% [2] | AWP - 10% [1] | | [3] | | $4.08 | $1.89 |
| 1/1/1997 [11] - 6/30/2001 | Y | Y | Y | N [8] | AWP - 10% [1] | DP + 18% | AWP - 10% [1] | | [3] | | $4.08 | $1.89 |
| 7/1/2001 - 3/31/2002 | Y | Y | Y | N [8] | AWP - 11% [5] | DP + 18% | AWP - 11% [5] | | [4] | | $4.00 | $1.89 |
| 4/1/2002 - 6/30/2002 | Y | Y | Y | N [8] | AWP - 12% [5] | DP + 18% | AWP - 12% [5] | | [4] | | $4.00 | $1.89 |
| 7/1/2002 - 9/30/2002 | Y | Y | Y | N [8] | AWP - 14% [5] | DP + 18% | AWP - 45% [5] | [6] | [4] | | $4.00 | $1.89 |
| 10/1/2002 - Present | Y | Y | Y | N [8] | AWP - 13.5% [5] | DP + 18% | AWP - 35% [5] | AWP - 12% [5] | [4] | Y [7] | $4.00 | $1.89 [10] |

▇ Data taken from Colorado Medicaid State Plan Amendments

▇ Data provided by Chapman deposition taken 12-15-08 and exhibits and Declaration of Robert Douglas, Jr. dated 7/21/09

---

[1] Per TN #90-03, EAC is the lower of the modified AWP or the modified direct cost. The modified AWP is AWP -10%, except for certain high volume single source drugs or multi-source drugs with bioequivalence problems. The pricing for these high volume EAC drugs shall be lower than AWP-10% and will be based on package sizes greater than 100 or pints. EAC for medical institutions, clinic pharmacies and government owned or operated pharmacies shall be the actual cost of the ingredient, if less than the AWP-10% or direct cost plus a handling fee. (Chapman Ex. 5)

[2] Per TN #90-03, the modified direct cost (MDC) is the direct cost plus a handling fee. (Chapman Ex. 5)

[3] Per TN #90-03, State MACs are determined based upon recommendations of the Colorado Drug Formulary Advisory Committee. (Chapman Ex. 5)

[4] Per TN #01-011 et al., State MAC, pharmacy acquisition cost of generic drugs available in the state market place plus 18%. (Chapman Ex. 6)

[5] Per TN #01-011 et al., if the AWP cannot be determined by the Department, then the distributors' or manufacturers' prices will be used to estimate AWP to be modified and used in the drug-pricing file and the price of the drug. (Chapman Ex. 6)

[6] Per TN #02-011 effective 7/1/2002, any pharmacy that is the only Medicaid serving pharmacy within a 25 mile radius may invoice for the difference in price between AWP - 4% and AWP - 12% for name-brand drugs and AWP - 45% and AWP - 12% for generic drugs. The invoice shall be submitted to the Department within 30 days of sale and shall contain all the information set forth in Section 8.840 as well as the difference between prices as set forth above and documentation that the pharmacy is the only pharmacy available within a 25 mile radius. The pharmacy shall be reimbursed for the difference between pricing methodologies.

[7] TN 03-018, effective 7/29/03, is the first documentation to describe these requirements in the State Plan.

[8] Per Traugott letter dated 5/21/08, while the Department has had the authority to implement a State Maximum Allowable Cost Program, such a program does not exist at this time. The Department did place Clozapine on the SMAC 9/1/2002 but was unable to continue the program. (See also Chapman deposition pp. 164, 198-199)

[9] The Department used Medi-Span and Red Book until 8/1/1996 when it switched to First DataBank. (See also TN #01-011 et al.) (Chapman deposition pp. 317-319)

[10] Effective 5/14/07 with the implementation of an updated computer system, unit dose medications are reimbursed using the same methodology as multiple dose medications.

[11] Dates, SMAC, dispensing fees, EAC, and other information reviewed and verified as accurate in Douglas Declaration.

07/21/09

State of: **CONNECTICUT**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Prescription/Legend Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[1] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| Effective Time Period | Usual and Customary | FUL/FAC | EAC | DOJ Pricing | SMAC | Brand/Generic | (Factorate, Antihemophilic Factor, AHF) | SMAC Methodology | | Brand/Generic | Incentive Payment | Compound Drugs | Unit Dose |
| 1/1/1991 - 9/30/1995 | Y | Y | Y | | N | AWP - 8% | | | Y | $4.10 | $0.50 [2] | [7] | |
| 10/1/1995 - 6/30/2000 | Y | Y | Y | Y[6] | N | AWP - 12% | | | Y | $4.10 | $0.50 [2] | [7] | |
| 7/1/2000 - 8/31/2002 | Y | Y | Y | Y[6] | N | AWP - 12% | AAC + 8% [3] | | Y | $4.10 | $0.50 [2] | [7] | |
| 9/1/2002 - 2/4/2003 | Y | Y | Y | Y[6] | N | AWP - 12% | AAC + 8% | | Y | $3.85 | $0.50 [2] | [7] | |
| 2/5/2003 - 3/2/2003 | Y | Y | Y | Y[6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.85 | | [7] | |
| 3/3/2003 - 9/30/2003 | Y | Y | Y | Y[6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.60 | | [7] | |
| 10/1/2003 - 6/30/2004 | Y | Y | Y | Y[6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.30 | | [7] | |
| 7/1/2004 - 7/31/2005 | Y | Y | Y | Y[6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.15 | | [7] | |
| 8/1/2005 - Present | Y | Y | Y | Y[6] | Y | AWP - 14% | AAC + 8% | AWP - 40% [5] | Y | $3.15 | | [7] | [8] |

▇ Data taken from Connecticut Medicaid State Plan Amendments

▇ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

▇ Data taken from Connecticut Medicaid Policy Manuals and Provider Bulletins pb02-34, pb03-16, pb03-38, pb03-85, pb04-47, pb00-50, pb06-78

▇ Data provided by Jason Gott, Pharmacy Consultant

[1] The State uses First DataBank for its pricing compendium.

[2] Per Provider Manual (Issued by MS91-10), the Department will pay an incentive professional dispensing fee of fifty cents per prescription, in addition to any other dispensing fee, for substituting a generically equivalent drug product, in accordance with Section 20-185b of the Connecticut General Statutes, for the drug prescribed by the licensed authorized practitioner for a Medicaid recipient except in the following instances: 1) When a drug product is dispensed for which HCFA has designated a F.A.C.; or 2) When a compounded prescription is being dispensed; or 3) When a nonlegend drug is dispensed; or 4) When the substitution is required by Federal law or regulation. The generic incentive program was implemented prior to 1991 (probably in 1987) and was repealed in 10/2002.

[3] Beginning with TN #00-006 effective 7/1/00, the maximum allowable cost paid for Factor VIII (Factorate, Antihemophilic Factor, AHF) pharmaceuticals shall be the Actual Acquisition Cost (AAC) plus eight percent. (HHD040-0233)

[4] Effective 02/05/2003 per TN #03-002B, the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing Fee: at least three suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and oral dosage form (including tablets, capsules, and liquids).

[5] Per TN #05-006 effective 08/01/05, the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing fee: at least two suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and all dosage forms (including tablets, capsules, eye drops, inhalers, topicals, and liquids). (HHD040-0215)

[6] Per PB-00-50 dated July 2000, DOJ pricing became effective with dates of service 5/1/2000 for about 400 NDCs and continues to be used today. (Reference to DOJ list prices included in SPAs beginning with TN #03-002B)

[7] Per Provider Manual Issued by MS91-10 p. 10, for compounded prescriptions, a dispensing fee is applied to each detail (ingredient) listed on the claim.

[8] Per Provider Bulletin PB 2006-78 dated September 2006, effective with dates of service 1/1/06 and after, Connecticut began reimbursing for drugs dispensed in unit dose packaging for clients residing in nursing facilities, chronic disease hospitals, and ICFs/MR. Prior to that, the state did not reimburse for any drug dispensed in unit dose if it were also available in non-unit dose packaging.

07/21/09

State of: **DELAWARE**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Prescription/Legend Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [4] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee |
| | | | | | | Traditional Pharmacy | Non-Traditional Pharmacy | SMAC Methodology | | |
| Effective Time Period | Usual and Customary | FUL | EAC | DMAC | DOJ Pricing | Brand/Generic | Brand/Generic | | | Brand/Generic |
| 10/31/1987 - 4/30/1997 | Y | Y | Y | N | | AAC [1] | AAC [1] | | Y | $3.65 [1] |
| 5/1/1997 - 12/31/2002 | Y | Y | Y | Y | [6] | AWP - 12.9% [1] | AWP - 12.9% | [2] | Y | $3.65 |
| 1/1/2003 - 3/30/2009 | Y | Y | Y | Y | [6] | AWP - 14% [1,3,8] | AWP - 16% [1,3,8] | [5] | Y [7] | $3.65 |
| 4/1/2009 - 6/30/2009 | Y | Y | Y | Y | [6] | AWP - 16% [1,3,9] | AWP - 18% [1,3,9] | [5] | Y [7] | $3.65 |
| 7/1/2009 - Present | Y | Y | Y | Y | [6] | AWP - 15% [1,3,9] | AWP - 18% [3,9] | [5] | Y [7] | $3.65 |

- Data provided by Delaware Medicaid State Plan Amendments
- Data provided by Denmark depositions taken 12/8/09 and 12/9/08, O'Connor deposition taken 2/10/08 and exhibits, and by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456
- Data provided by Pharmacy Provider Manual Revision Table (Section 4.1.4.2, revision date 6/26/09)
- Information provided by Linda Murphy, Chief of Program Integrity Unit, and Ann Woolfolk

[1] Per Denmark deposition pp. 122-124 and 134, pricing methodology was based on the lower of U&C, AAC, and FUL. AAC was capped at AWP - 5.61% unless providers could demonstrate that their costs exceeded the cap. Based on this, it was very rare that a provider would have exceeded the estimated maximum. Beginning with TN #SP-294 effective 1/1/91, Medicaid reimbursement is limited to only those drugs supplied from manufacturers that have a signed national agreement or an approved existing agreement under Section 1927(a) of the Social Security Act. Per Denmark deposition pp. 107-108, $3.65 dispensing fee has been in place since at least 1993.

[2] Per TN #SP-371, the DMAC payment limits will be calculated, for drugs selected by the DMAP, by First DataBank (FDB) under contract with Delaware Medicaid using the following protocol:
   * All DMACs will be based on the direct prices
   * FDB will use the lowest of either Geneva Generic or Rugby prices. These are national generic labelers/manufacturers that sell directly to pharmacies.
   * Prices for solid dosing forms will be based on a package size of 100. If that size is not available, the next largest size will be used.
   * Prices for liquid products will be based on 120 ml for over-the-counter (OTC) medications and 473-480 ml for legend products.
   * All unit dose packaging calculations will be eliminated.
   * If neither identified labeler markets the product, the median of all other HCFA rebate participating sources will be used to establish a price.
   Drugs are selected based on experience with charges from pharmacies which indicates that the product cost is less than or equal to AWP-20%. Additional medications will be added to the DMAC program after general provider notification.

[3] Per TN #SP-397 effective 01/01/2003: Non-Traditional Pharmacy includes long term care and speciality pharmacies, and Traditional Pharmacy includes retail independent and retail chain pharmacies. (HHD039-0082)

[4] Per Denmark deposition p. 463, Redbook is currently used for pricing (beginning 7/2002). First DataBank was used before that.

[5] Per TN #SP-397: Delaware Maximum Allowable Cost (DMAC) - a maximum price set for reimbursement: (1) for generics available from three (3) or more approved sources, or (2) when a single source product has Average Selling Prices provided by the manufacturer that indicates the AWP is exaggerated, or (3) if a single provider agrees to a special price. Any willing provider can dispense the product. (HHD039-0083)

[6] Per Denmark deposition pp. 247-253, Delaware implemented undiscounted DOJ prices most likely within 90 days after being notified by the DOJ, but no longer uses them (discontinuation date unknown).

[7] Per TN #SP-397, medical necessity must be documented on a FDA Med-Watch form based on the client experiencing an adverse reaction. Other exceptions will be made if documentation provided demonstrates that the product can only be obtained at a higher rate. (HHD039-0082)

[8] Change to EAC pricing confirmed in O'Connor deposition pp. 60-61.

[9] Effective 4/1/09, Delaware adjusted the reimbursement rate for traditional/community pharmacies from AWP - 14% to AWP - 16% and for non-traditional pharmacies from AWP - 16% to AWP - 18%. On 6/09/09, NACDS filed a lawsuit against Delaware challenging the rate adjustment for traditional/community pharmacy (non-traditional pharmacy rate is un-challenged.). Effective 7/1/09, Delaware adjusted the rate for traditional/community pharmacies from AWP - 16% to AWP - 15%. SPAs for both the 4/1/09 and 7/1/09 rate changes are pending CMS approval.

07/21/09

State of: **DISTRICT OF COLUMBIA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Prescription/Legend Drugs | | | | | Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology [5, 6] | | | | Estimated Acquisition Cost (EAC) [4] | | | | Nursing Home Pharmacy Providers | | |
| | Usual and Customary | FUL | EAC | SMAC | Brand/Generic | | Standard | Compounds | Non - IV | IV | Cassettes, TPN, Container Related |
| 1/1/1991 [1] - x/x/1996 [2] | Y | Y | Y | N | AWP - 10% | | $4.50 | $5.50 [1] | | | |
| x/x/1996 [2] - 7/31/1997 | Y | Y | Y | N | AWP - 10% | Y | $3.00 [3] | | | | |
| 8/1/1997 - 3/31/2003 | Y | Y | Y | N | AWP - 10% | Y | $3.75 | | | | |
| 4/1/2003 - 12/31/2005 | Y | Y | Y | N | AWP - 10% | Y | $4.50 | | | | |
| 1/1/2006 - Present | Y | Y | Y | N [7] | AWP - 10% | Y | $4.50 | | $4.50 [8] | $7.25 [8] | $17.25 [8] |

▓ Data taken from District of Columbia Medicaid State Plan Amendments

▓ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

▓ Data provided by Charlene Fairfax, Pharmacy Consultant, DOH

▓ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] 1/1/1991 established as effective date since EAC and dispensing fees are unchanged from those reported in the 1990 NPC. No further changes in pricing methodology reported until NPC 1996, which drops the dispensing fee special pricing reference to compound drugs.

[2] Per 1996 thru 1998 NPC Publications, approximately 75,000 Medicaid recipients are enrolled in managed care; most receive pharmacy benefits through MCOs. NPC 1999 reports 62,000. This, however, conflicts with state information that indicates that fee-for-service pharmacy reimbursement has always been separate from managed care capitation.

[3] $3.00 dispensing fee taken from CMS letter of approval for SPA 97-08 (date-stamped 10/23/1997), which references a change from $3.00 to $3.75 effective 08/01/1997. Exact effective begin date for the $3.00 dispensing fee unknown. (HHD039-0021)

[4] Per TN 97-08 effective 08/01/1997 et al., the average wholesale price shall be the price, at the time of service, set forth in the most recent listing supplied by First DataBank National Drug Data File Services.

[5] Per TN 05-05, effective 01/01/2006, the Medicaid Agency restricts payment to only those drugs supplied from manufacturers that have signed a national agreement, as specified in Section 1927(a) or have an approved existing agreement. In addition, the Department shall supplement the CMS listing by adding drugs and their prices which, in the judgment of CMS, meet the following requirements: (a) The formulation of the drug approved by the U.S. Food and Drug Administration (FDA) has been evaluated as therapeutically equivalent in the most current edition of its publication, Approved Drug Products with Therapeutic Equivalence Evaluations including supplements or in successor publications); and (b) At least two (2) suppliers list the drug (which has been classified by the FDA as category "A" in its publication, Approved Drug Products with Therapeutic Equivalance Evaluations, including supplements or in successor publications) based on the listing of drugs which are locally available. (HHD039-0026 and 0015)

[6] Per telephone call on 9/8/08, pricing prior to 8/1/1997 can not be confirmed by current State staff.

[7] Per telephone call on 9/8/08, implementation of a State MAC program is currently pending while the District awaits approval of a State Plan Amendment submitted June 2008.

[8] Per TN 05-05 (HHD039-0016) pharmacy claims for nursing home pharmacy providers shall be reimbursed at the lower of the following: a) The allowable cost, established pursuant to section 5b, 5c, or 5d.3, as appropriate, plus a dispensing fee of four dollars and fifty cents ($4.50) per non-IV (intravenous) prescription; or seven dollars and twenty five cents ($7.25) per IV prescription; or seventeen dollars and twenty-five cents ($17.25) for cassette, TPN (total parenteral nutrition) or container-related prescriptions; or the pharmacy's usual and customary charge for non-Medicaid residents.

State of: **FLORIDA**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[7] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
| | | | | | | Pay the lower of each formula listed | | | | | |
| Effective Time Period | Usual and Customary | FUL/GULP[6] | EAC | DOJ Pricing | SMAC | Brand/Generic | CII DEA Controlled Substances | SMAC Description | | Brand/Generic | Nursing Home | In-House Unit Dose Packaging |
| 1986[10] - 9/30/1993 | Y[10] | Y[10] | Y[10] | | N | WAC + 7%[10] | AWP[8] | | Y | $4.23[10] | | Add 1 1/2 cents[10] |
| 10/1/1993 - 6/30/1999 | Y | Y | Y | | Y[3] | WAC + 7% | AWP; WAC + 7%[8] | [3] | | 4.23[2] | | Add 1 1/2 cents |
| 7/1/1999 - 6/30/2000 | Y | Y | Y | Y[1] | Y[3] | AWP - 11.5% or Direct + 7% or WAC + 7%[11] | WAC + 7%[8] | [3] | Y | 4.23[2] | | Add 1 1/2 cents |
| 7/1/2000 - 4/29/2002 | Y | Y | Y | Y[1] | Y[3] | AWP - 13.25%[4] | | [3] | Y | $4.23 | $4.73[5] | Add 1 1/2 cents |
| 4/30/2002[12] - 6/30/2004 | Y[12] | Y[12] | Y[12] | Y[1] | Y[3,12] | AWP - 13.25% or WAC + 7%[12] | | [3] | Y | $4.23[12] | $4.73[5] | Add 1 1/2 cents[9] |
| 7/1/2004 - 6/30/2008 | Y | Y | Y | Y[1] | Y[3] | AWP - 15.4% or WAC + 5.75% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |
| 7/1/2008 - Present | Y | Y | Y | Y[1] | Y[3] | AWP - 16.4% or WAC + 4.75% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |

▨ Data taken from Florida Medicaid State Plan Amendments

▨ Data taken from Jerry Wells' depositions and 5/24/05 amended affidavit

▨ Data taken from the 2008 Florida Statutes 409.908(14) and Provider Handbooks

▨ Data provided by AHCA

▨ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per deposition 5/25/04 pp. 603-604. Florida implemented the DOJ list of AWPs in May 2000. The state initially used the DOJ AWP - 11.5%, and then applied the DOJ AWPs as State Maximum Allowable Cost in its pricing logic. This was within weeks of the initial implementation (see deposition 8/15/06 p. 1011-1012), most likely by July of 2000.

[2] Per the AHCA, the November 1997 and July 1999 Provider Handbooks document a $1 and $2 incentive fee for 60 or 90 day supplies; reference was deleted in the 2000 Handbook.

[3] Per amended affidavit, p. 2, first State MACs set July 1, 1994. Per Wells 12/16/2004 Deposition pp. 255-272. State MACs are determined on an ad hoc basis and not according to a specific formula. Prior to contracting the SMAC calculation function in October 2004, the program researched actual provider's invoices for appropriate NDCs and set SMACs within a reasonable range based upon provider's acquisition costs. A more detailed and comprehensive methodology is used by the SMAC contractor for a broader range of products, however individual review of invoices is still required in some situations prior to setting SMAC prices to ensure adequate reimbursement for providers.

[4] AWP-13.25% was legislatively added effective 7/1/2000 to the WAC+7% to pay the lower of the two, but an erroneous computer programming change inadvertently bypassed the WAC+7% reimbursement methodology from the reimbursement system from July 3, 2000 through April 30, 2002. (Wells 5/24/2005, p.4)

[5] Per Ex. 70, dispensing fees for nursing home patient prescriptions increased to $4.73 in August 2001; remained in effect through at least 4/3/2003; dispensing fee then returned to $4.23.

[6] Per TN 92-08 et al., federal upper limit referred to as the GULP - generic upper limit of payment as established by the HCFA or the state agency for multiple source drugs.

[7] Per Wells depositions 12/16/2004 p.263 and 8/15/06 p. 927, prices always provided by First DataBank. (See also State Plan #93-56).

[8] Per AHCA, when WAC + 7% started in 1986, Class II drugs were initially left at AWP and exempted from WAC pricing because there was no wholesaler discount. The February 1996 and November 1997 Provider Handbooks state that Class II drugs or items that frequently require drop shipment or purchase from a secondary supplier are priced at the AWP. When AWP pricing was added in 1999, Class II drugs were exempted and still reimbursed at WAC+7% because the drugs were not initially discounted by the wholesaler. Once wholesaler discounts were implemented, the drugs were no longer exempted.

[9] Per AHCA, Florida Statute Section 409.908 (beginning 2003): Unit Dose Return to Stock was implemented on 7/1/2004 and remains effective.

[10] Per 12/15/08 deposition pp. 41-43, 135, 145 and 12/15/04 deposition, Vol. 1 p. 37, pricing formula (WAC + 7% and $4.23 dispensing fee) in place since 1986 (actual start date 3/11/1986). See also 12/15/08 deposition pp. 40-44 for "lesser of" (FUL and U&C) and unit dose.

[11] Ex. 61; Ex. 2.

[12] Ex. 70.

07/21/09

State of: **GEORGIA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Legend/Prescription Drugs | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology [2,4,5] | | | | Estimated Acquisition Cost (GEAC) [8] | | | | Profit Pharmacies | | Not for Profit Pharmacies | |
| | Usual and Customary | FUL | GEAC [8] | GMAC [1] | Brand | Generic | Schedule II Controlled Drugs | | Brand | Generic | Brand | Generic |
| 1/1/1990 - 6/30/1993 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3] | $4.41 | $4.41 | $4.11 | $4.11 |
| 7/1/1993 [9] - 12/31/1995 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3] | 9 | 9 | 9 | 9 |
| 1/1/1996 [10] - 6/30/1998 | Y [7] | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3] | $4.41 [10] | $4.41 [10] | $4.41 [10] | $4.41 [10] |
| 7/1/1998 [11] - 5/31/2001 | Y [7] | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3,6] | $4.63 [11] | $4.63 [11] | $4.33 [11] | $4.33 [11] |
| 6/1/2001 [12] - 6/30/2004 | Y [7] | Y | Y | Y | AWP-10% | AWP-10% | | Y [3,6] | $4.63 [12] | $5.13 [12] | $4.33 [12] | $4.83 [12] |
| 7/1/2004 - 6/30/2005 | Y [7] | Y | Y | Y | AWP-11% | AWP-11% | | Y [3,6] | $4.63 [12] | $5.13 [12] | $4.33 [12] | $4.83 [12] |
| 7/1/2005 - Present [14] | Y [7] | Y | Y | Y | AWP-11% | AWP-11% | | Y [3,6] | $4.63 | $4.63 | $4.33 | $4.33 |

▊ Data taken from Georgia Medicaid State Plan Amendments

▊ Data provided by Jerry Dubberly and Etta Hawkins

▊ Data provided by Dubberly deposition taken 12/15/08 and exhibits

[1] Per TN #91-13 et al., state MAC program referred to as GMAC.

[2] Per TN #91-13, effective 01/01/1991, Drug Rebate Agreement was implemented. "Unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification." A supplemental rebate program was later implemented.

[3] State does not allow pharmacists at the retail pharmacy to certify a branded drug is necessary when generics are available, with the exception of Dilantin and Tegretol. That requires a PA with info from the MD to the PBM. At least two A-rated generics must be available in the marketplace before the Department considers requiring the use of the generic.

[4] Per TN #01-001, effective 06/01/2001 outpatient drugs from non-participating rebate manufacturers may be excluded from coverage per Section 1927(d)2 of the Act.

[5] Per TN #01-030, effective 07/01/2001 the co-payment structure was established to administer the Preferred Drug List Program.

[6] Per TN #03-007, effective July 1, 1998, the pharmacist may enter an appropriate override at the point of sale to exceed the monthly prescription limit for the drugs deemed medically necessary by prescriber."

[7] Beginning with TN #96-007 effective 7/1/96, the Department defines usual and customary as the lower of the lowest price reimbursed to the pharmacy by other third party payers (including HMOs), or the lowest price routinely offered to any segment of the general public. Donations or discounts provided to charitable organizations or fees charged to or paid by federal or state funded program are not considered usual and customary charges.

[8] Per deposition pp. 57-59, 35-36, through its claims processing contractors, the State used First DataBank (FDB) 7/1/2000 - 12/31/2006 (and probably since 1991) and a combination of FDB and Medispan from 1/1/07 - present.

[9] Per Exhibits 4 and 6 and deposition pp. 52-53, dispensing fee effective with dates of service beginning 7/1/1993 was 10% of the GEAC with a maximum of $15.00. GMAC drugs = GMAC + Dispensing Fee of 10% GEAC up to $15.00.

[10] Per Exhibit 4, between 11/1/1996 and 3/31/1998, pharmacies servicing nursing home residents received a monthly prescription monitoring fee of $18.00 in lieu of a dispensing fee of $4.41 per prescription. Change reflected in TN #96-007 effective 7/1/1996.

[11] Per Exhibit 4 and Exhibit 10.

[12] Per Exhibit 4, dispensing fee change described in TN #01-001, became effective on April 1, 2001.   Per TN 301-001, the dispensing fee shall be $4.63 for profit pharmacy and $4.33 for non-profit pharmacies for each non-generic or non-preferred drug dispensed by the pharmacy; and $5.13 for profit pharmacies and $4.83 for non-profit pharmacies for each generic or preferred drug dispensed by the pharmacy. The reference to preferred and non-preferred drug status was then dropped in TN 02-004 effective May 15, 2002.

[13] Schedule II pricing at AWP established in TN #90-3 beginning 1/1/90.   Per Exhibit 4, Schedule II controlled substances were reimbursed at the AWP from May 1993 through June 2001.

[14] Deposition pp. 46-47, 277.

07/21/09

State of: **HAWAII**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Legend/Prescription Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | *"Lower of"* Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC) [1] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | Compound Drugs |
| Effective Time Period | Billed Charges | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand/Generic | | | |
| 5/9/1990 [10] - 9/14/1997 | Y | Y | Y [3] | Y | N | | AWP - 10.5% [10] | Y [3] | $4.67 [2, 10] | [9] |
| 9/15/1997 - 4/31/2000 | Y | Y | Y [3] | Y | N [4] | | AWP - 10.5% | Y [3] | $4.67 [2] | [9] |
| 5/1/2000 - 12/31/2000 | Y | Y | Y [3] | Y [5] | N [4] | Y [5] | AWP - 10.5% [5] | Y [3] | $4.67 [2] | [9] |
| 1/1/2001 - 5/31/2002 | Y | Y | Y [3] | Y [7] | N [4] | Y [6] | AWP - 10.5%; AWP [7] | Y [3] | $4.67 [2] | [9] |
| 6/1/2002 [4] - Present | Y | Y | Y [3] | Y [7] | Y [3, 8] | Y [6] | AWP - 10.5%; AWP [7] | Y [3] | $4.67 [2] | [9] |

■ Data taken from Hawaii Medicaid State Plan Amendments

■ Data provided by Hiramatsu Depositions 5/1/2008 and 5/2/2008 and Exhibits

■ Data provided by Westlaw Haw. Admin. Rules (HAR) Section 17-1739.1-11 (Westlaw 2009)

■ Data provided by Linda Donovan, Pharmacy Consultant

[1] Beginning with TN #92-08 effective 4/1/92 (HHD041-0081), the average wholesale price will be derived from the most commonly used packaged size in the Bluebook; per deposition p. 345, First Data Bank used through present.

[2] Beginning with TN #96-002, effective 2/1/96, the dispensing fee for any maintenance or chronic medication shall be extended only once per thirty days without medical authorization from the medical assistance program (See also HI_HI 00006467). Other appropriate limits regarding the number of dispensing fees paid per interval of time shall be determined as necessary by the medical assistance program.

[3] Per HI_HI 00006467, prior authorization for payment above the FUL was implemented 2/26/1996. (See also HI_HI 000005552.) Per HI_HI 000005557, exceptions to the FULs and SMACs are anticonvulsants for seizure, birth control pills, and Coumadin. OxyContin was added 4/10/2007.

[4] State Plan #97-005, effective 9/15/97 was the first to include a State MAC provision, defined as the "average of the estimated acquisition costs of the three least expensive generics available. At least one of the three products shall be provided by a manufacturer who participates in the Federal drug rebate program." Per Exhibit 057 (HI_HI 000001794), State MAC program not implemented until 6/1/2002.

[5] Per HI_HI 000015079, the Department of Justice AWPs were provided by First DataBank and were implemented on 5/1/2000; 10.5% was deducted to determine the EAC.

[6] The DOJ AWPs began being paid at 100% AWP, which continues through the present.

[7] Beginning with TN #01-004 (HHD041-0066), payment for single source or multiple source drugs was amended: the EAC or the average wholesale price (AWP) when the AWP is the average selling price, plus a dispensing fee. (See also 5/2/08 deposition pp. 353-358)

[8] Per HI_HI 000001582, the lower of reimbursement methodology is used except if there is a FUL and a SMAC for the same drug. In this case, the SMAC is not applied and only the FUL is considered. Prior authorization is required for payment above the SMAC. Per state, in rare instances, the SMAC was lifted due to generics not being available. (See Westlaw Haw. Admin. Rules Section 17-1739.1-11) (Westlaw 2009)

[9] Per the Medicaid Provider Manual, 19.1.8.4 Compounding Fees (HI_HI 000005565): "Compounded drug allowances are determined as follows: a) Solutions and/or suspensions compounded from 2 liquids are reimbursed based on the cost of each solution or suspension plus the dispensing fee and $1.00 compounding fee; b) Ointments or creams compounded from two or more ointments or creams are reimbursed based on the cost of each ointment or cream plus the dispensing fee and $1.50 compounding fee; c) Ointments or creams compounded from substances levigated into ointment or cream base are reimbursed based on the cost of each ointment or cream plus the dispensing fee and $2.50 compounding fee." Per the state, this policy has been effective since May 1989.

[10] Dispensing fee established 5/9/1990 per Exhibit 027 (HI_HI 000002759). EAC of AWP - 10.5% effective 8/16/1989 per Exhibit 011 (HI_HI 000014764).

State of: **IDAHO**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Prescription/Legend Drugs [9] | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC) [6] | | | |
| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | Direct Pricing | DOJ Pricing [2] | Brand/Generic | | Brand/Generic | Unit Dose |
| 1/1/1991 - 7/31/1991 | Y | Y | Y | N | Y [1] | | AWP | | $4.30 | $5.25 |
| 8/1/1991 - 1/31/1993 | Y | Y | Y | N | Y [1] | | AWP | | $4.60 | $5.65 |
| 2/1/1993 - 6/30/1995 | Y | Y | Y | N | Y [1] | | AWP | | $4.30 | $5.25 |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | N | Y [1] | | AWP | | $4.41 | $5.38 |
| 7/1/1996 - 2/28/1999 | Y | Y | Y | N | Y [1] | | AWP | Y | $4.54 | $5.54 [4] |
| 3/1/1999 - 10/14/2001 | Y | Y | Y | Y | N [7] | | AWP - 11% | Y [5] | $4.94 [7] | $5.54 [4] |
| 10/15/2001 - Present | Y | Y | Y | Y [8] | N | | AWP - 12% | Y [5] | $4.94 | $5.54 [4] |

▓ Data taken from Idaho Medicaid State Plan Amendments

▓ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and Declaration of Paul Leary dated 7/21/09

[1] Per NPC Publications for 1992 through 1995, direct account pricing for the following manufacturers: Wyeth-Ayerst, Merck Sharp & Dohme, Parke-Davis, Pfizer, Pfipharmecs, Roerig, and Upjohn.

[2] Idaho is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

[3] Per NPC Publications, direct account pricing for the following manufacturers: 1996 - Wyeth-Ayerst, Merck Sharp & Dohme, Pfizer, Roerig, Upjohn, ESI, Robbins, Lederle, and Storz; 1997 - Wyeth-Ayerst, Merck & Co., Pfizer, Roerig, Pharmacia & Upjohn, ESI, Robbins, Lederle, Pratt, and Storz; and 1998 - Wyeth-Ayerst, Merck & Co, Pfizer, Roerig, Pharmacia & Upjohn, ESI, Robbins, Lederle, Pratt, and Storz.

[4] Per TN 99-001 effective 03/01/1999 et al.: Unit dose fee is $5.54 per prescription, and is defined as a system of providing individually sealed and appropriately labeled unit dose medication that ensures no more than a 24-hour supply in any client's drug tray at any given time. These trays shall be delivered to the facility at least five days per week. (HHD074-0251)

[5] Per 2000, 2001, and 2002 NPC Publications, override requires prior authorization. Per 2003 and 2004 NPC publications, override requires prior authorization; override requires failure of two generic formulations and submission of a MedWatch form. Per 2005/2006 NPC publication, override requires medically necessary and submission of appropriation documentation through the prior authorization process.

[6] Pricing compendium used was First DataBank.

[7] Direct pricing discontinued 3/15/1999; dispensing fee change not effective until 3/17/99.

[8] The methodology for establishing SMACs changed in January 2003 when Myers and Stauffer was retained to establish SMACs.

[9] All information on this summary reviewed and verified as accurate in Leary Declaration.

07/21/2009

State of: **ILLINOIS**

Medicaid Pharmacy Reimbursement Methodology Summary

Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology ||||| Estimated Acquisition Cost (EAC) [3, 12] || SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Professional/Dispensing Fee [14] || Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC [9] | SMAC | AMWP [10] | Brand | Generic | | | Brand | Generic | |
| 9/1/1989 - 6/30/1995 | Y | Y | Y | Y | N [14] | AWP - 10% | AWP - 10% | 5 | N [8] | $3.58 to $15.00 [1] | $3.58 to $15.00 [1] | |
| 7/1/1995 - 6/30/1998 | Y | Y | Y | Y | N [14] | AWP - 10% | AWP - 12% | 5 | N [8] | $3.30 to $14.72 [2] | $3.58 to $15.00 [2] | [7] |
| 7/1/1998 - 6/30/1999 | Y | Y | Y | Y | N [14] | AWP - 10% | AWP - 12% | 5 | N [8] | $3.40 to $15.16 [3] | $3.69 to $15.45 [3] | [7] |
| 7/1/1999 - 12/14/2000 | Y | Y | Y | Y | Y [11, 14] | AWP - 10% | AWP - 12% | 5 | N [8] | $3.45 to $15.40 [4] | $3.75 to $15.70 [4] | [7] |
| 12/15/2000 - 6/30/2001 | Y | Y | Y | Y | Y [14] | Lower of: AWP - 10% or WAC + 8% | Lower of: AWP - 12% or WAC + 12% | 5 | N [8] | $4.17 | $4.17 | |
| 7/1/2001 - 6/30/2002 | Y | Y | Y | Y | Y [14] | AWP - 11% | AWP - 20% | 5 | N [8] | $4.00 | $5.10 | [7] |
| 7/1/2002 - Present | Y | Y | Y | Y | Y [14] | AWP - 12% | AWP - 25% | 6 | N [8] | $3.40 | $4.60 | [7] |

▇ Data taken from Illinois Medicaid State Plan Amendments

▇ Data provided by Parker 11/18/08 deposition and exhibits and Declaration of James Parker dated 7/21/09

[1] The formula for calculating the professional/dispensing fee is: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[2] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.58 minus $0.28 for EAC up to $35.80, and 10% of EAC minus $0.28 for EAC above $35.80, up to a maximum dispensing fee of $15.00 minus $0.28; GENERIC: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[3] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.69 minus $0.29 for EAC up to $36.90, and 10.3% of EAC minus $0.29 for EAC above $36.90, up to a maximum dispensing fee of $15.45 minus $0.29; GENERIC: $3.69 for EAC up to $36.90, and 10.3% for EAC above $36.90, up to a maximum dispensing fee of $15.45.

[4] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.75 minus $0.30 for EAC up to $37.50, and 10.46% of EAC minus $0.30 for EAC above $37.50, up to a maximum dispensing fee of $15.70 minus $0.30. GENERIC: $3.75 for EAC up to $37.50, and 10.46% for EAC above $37.50, up to a maximum dispensing fee of $15.70.

[5] Per deposition pp. 389-390, MAC was a reference NDC up until 7/1/2002.

[6] From 7/1/2002 to 3/1/2005, MACs were set based on EAC and other State Medicaid MAC rates. From 3/1/2005 to present, Myers & Stauffer LC, contractor, sets rates. (See also deposition pp. 97-98, 178.)

[7] Per deposition p. 366, State allows one dispensing fee per ingredient (begin date unknown).

[8] State has never used the DAW code on the claim to pay differently; has always required medical justification through the PA process.

[9] Per deposition pp. 62-65 and 255, State uses First DataBank for pricing.

[10] AMWP stands for Average Market Wholesale Price.

[11] Illinois first used AMWPs on 5/1/2000. From 5/1/2000 through 5/31/2002, Illinois treated DOJ prices sent by First DataBank as AMWPs. (See also deposition pp. 363-364)

[12] The State had a separate formula for reimbursing providers for physician-administered drugs. See 89 Ill. Admin. Code § 140.414.

[14] Dates, dispensing fees, compound fees and all other information contained in this summary reviewed and verified as accurate by Parker Declaration.

07/21/2009

State of: **INDIANA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Legend/Prescription Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[3] | | SMAC Methodolog | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | Compounded Prescriptions |
| | Usual and Customary | FUL | EAC[3] | SMAC | DOJ Pricing | Brand | Generic | | | Brand/Generic | |
| 12/1/1989[7] – 5/29/2002 | Y | Y | Y | N | [6] | AWP – 10% | AWP – 10% | | Y | $4.00[7] | [5] |
| 5/30/2002[2] – 9/30/2005 | Y[1] | Y | Y | Y | | AWP – 13.5% | AWP – 20% | [4] | Y | $4.90 | [5] |
| 10/1/2005 – Present | Y[1] | Y[8] | Y | Y | | AWP – 16% | AWP – 20% | [4] | Y | $4.90 | [5] |

▮ Data taken from Indiana Medicaid State Plan Amendments

▮ Data provided by Shirley deposition taken 12/3/08 and exhibits and Sharp Exhibit 953 (Abbott)

▮ Data provided by the Office of Medicaid Policy and Planning

▮ Data provided by Indiana Health Coverage Programs Banner Page (BR200805 dated January 29, 2008)

[1] Per TN #93-032 et al., usual and customary represents the provider's submitted charge.

[2] Changes to EAC, DF, and implementation of SMAC apply to claims with dates of service beginning on 5/30/02.

[3] For purposes of calculating the EAC, the State initially used Redbook, then switched to Medi-Span, and then to First DataBank beginning sometime prior to 2000. (See also deposition p. 420.)

[4] According to the SMAC Manual, drug acquisition costs were obtained through an acquisition cost survey from a sample of pharmacies. An acquisition cost survey was performed three times, each of which resulted in new State MAC rates, or rate rebasing, effective on June 19, 2002, October 6, 2003, and February 14, 2005. Beginning in June 2005, the State negotiated agreements with a small group of Indiana pharmacies to obtain drug acquisition cost data on a monthly basis in electronic format in order to determine updates and additions to State MAC rates. (Deposition pp. 400-411, and Sharp Ex. 953)

[5] Per the Pricing Manual, compounded prescriptions are calculated at the detail level. Each ingredient of the compounded prescription is priced individually, following the same pricing methodology as if it were a single ingredient claim. The amounts are added together and compared to the overall billed amount. A dispensing fee of up to $4.90 is added to the total ingredient cost of each legend compounded prescription to arrive at the calculated Medicaid-allowable amount. The amount should never exceed the billed amount. (Per deposition pp. 579-584, this pricing methodology dates back to the late 1980's.)

[6] According to deposition pages 385-396, the state implemented the DOJ prices sometime in Spring 2000 but removed them shortly thereafter.

[7] On 12/1/1989, EAC changed to AWP – 10% according to Exhibit 1 and deposition pp. 454, 467-470. Ex. 1 lists dispensing fee as either $4.00 or $3.00, but $4.00 is confirmed at least effective 12/1/1993.

[8] Effective 1/30/08, the Office of Medicaid Policy and Planning (OMPP) removed the FUL pricing from the payment calculation. Aggregate reimbursement requirements, as required by the CMS, will be satisfied by the application of rates established through the State MAC program.

07/21/09

State of: **IOWA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Legend/Prescription Drugs | | | | | Estimated Acquisition Cost (EAC)[6] Brand/Generic | SMAC Description[11] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Unit Dose | Compound Drugs[11] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | | | | MAC and Schedule II drugs | Non-MAC drugs | | |
| | Usual and Customary | FUL[1] | EAC[6] | DOJ Pricing[11] | SMAC[1] | | | | | | | |
| 7/1/1990 - 1/31/1999 | Y | Y | Y | | N | Lesser of AWP-10% or submitted acquisition cost[2] | | Y | $4.02[2,3] | $6.25[2,3] | [4] | [10] |
| 2/1/1999 - 7/20/1999 | Y | Y | Y | | N | AWP-10% | | Y | $4.02[5] | $6.25 | [4] | [10] |
| 7/21/1999 - 6/30/2000[11] | Y | Y | Y | | N | AWP-10% | | Y | $4.10 | $6.38 | [4] | [10] |
| 7/1/2000[11] - 10/31/2002 | Y | Y | Y | Y[9] | N | AWP-10% | | Y | $4.13[11] | $6.42[11] | [4] | [10] |
| 11/1/2002[7] - 6/30/2003 | Y | Y | Y | Y[9] | Y[7] | AWP-10% | [8] | Y | $5.17 | $5.17 | [4] | [10] |
| 7/1/2003 - 6/30/2005 | Y | Y | Y | Y[9] | Y | AWP-12% | [8] | Y | $4.26 | $4.26 | [4] | [10] |
| 7/1/2005 - 6/30/2006[11] | Y | Y | Y | Y[9] | Y | AWP-12% | [8] | Y | $4.39 | $4.39 | [4] | [10] |
| 7/1/2006[11] - Present[11] | Y | Y | Y | Y[9] | Y | AWP-12% | [8] | Y | $4.52[11] | $4.52[11] | [4] | [10] |

▓ Data taken from Iowa Medicaid State Plan Amendments

▓ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and by Jennifer Vermeer Declaration dated 7/16/09

[1] Beginning with TN #MS-90-13, the FUL is described as the maximum allowable cost or MAC in all of Iowa's State Plan documents, and the state MAC is later (beginning with TN #MS-02-24) referred to as SMAC. (HHD077-0069)

[2] Per TN #MS-90-13, the dispensing fee for MAC and Schedule II drugs is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $4.02. The dispensing fee for non-MAC drugs is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $6.25. (HHD077-0069)

[3] Beginning in 1987 and through 2/29/92, an incentive fee of $.50 was paid to pharmacies if $1.50 was saved per prescription by the use of generics.

[4] Beginning with TN #MS-90-13, an additional reimbursement of one cent per dose shall be added to the allowable ingredient cost of a prescription for an oral solid if the drug is dispensed to a patient in a nursing home in unit dose packing prepared by the pharmacist. (HHD077-0069)

[5] Beginning with TN #MS-99-2, Schedule II drugs no longer referenced. (HHD077-0068)

[6] Beginning with TN #MS-90-13, the State of Iowa used the Average Wholesale Price (AWP) as published by First Data Bank. Per TN #MS-05-013 eff. 6/25/05 (HHD077-0064) Iowa has used the AWP as published by MediSpan. (HHD077-0069)

[7] TN #MS 02-24 (HHD077-0072) effective 11/01/02 establishes a $5.17 dispensing fee effective on 7/1/02 and a SMAC program. Per the State, SMAC rates were implemented on January 13, 2003.

[8] Beginning 11/1/02, SMAC prices were set as Average Wholesale Acquisition Price for a drug and all equivalents adjusted by a multiplier of at least 1.0, plus a dispensing fee. The multiplier is set by the Department on a quarterly basis, or as necessary, to ensure adequate product availability. Drug acquisition cost information is obtained through surveys of providers who are required to submit invoices. The Department used a multiplier of 2.1 until 3/28/03, when the multiplier was reduced to 1.4. The initial criteria for inclusion of a drug in the SMAC rate setting was:

* SMAC Multiplier: Once the multiplier is applied to the average acquisition cost (brand cost information is included), any SMAC rate that exceeds the EAC or the FUL rate would not be applied.
* Minimum FDA Drug Rating: Require AB-Rated Products (Beginning 9/13/04, the minimum drug rating was changed to A-Rated Products.)
* Minimum Availability Threshold: Require generic products available from a minimum of 3 separate drug manufacturers.
* Minimum Cost Information: Require at least 30 pricing observations for any brand product and its equivalent drugs.
* Narrow Therapeutic Index drugs may have been excluded from inclusion in SMAC rates based on feedback from the Drug Utilization Review Commission Commission. However, an FUL rate may/may not have been applied.

[9] DOJ pricing was implemented on 12/1/2001 and continues to be used through the present.

[10] Effective 10/1/2003 with NCPDP version 5.1 implementation, all compounds had to be billed on an ingredient by ingredient basis. Prior to 5.1, Iowa Medicaid allowed pharmacies to bill for compounded claims using the NDC of one of the active ingredients, adjusting the price to the full compound price online for those claims $30 and under. Claims that exceeded $30 had to be billed on the Universal Claim Form on an ingredient by ingredient basis.

[11] Dates, dispensing fees, and other information reviewed and verified as accurate in Vermeer Declaration dated 7/16/09

07/21/09

State of: **KANSAS**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | "Lower of" Reimbursement Methodology ||||| Legend/Prescription Drugs |||| Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Brand/Generic |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Single Source | Multi-Source | IV Fluids | Blood Fraction Products | | |
| x/x/1991 - x/x/1992 | Y | Y | Y | | Y | AWP - 10%; DP [6] | AWP - 10%; DP [6] | | | Y [8] | $3.75 - $6.10 [1, 2] |
| x/x/1992 - 12/31/1994 | Y | Y | Y | | Y | AWP - 10%; DP [6] | AWP - 10%; DP [6] | | | Y [8] | $3.85 - $6.97 [1, 2] |
| 1/1/1995 - 4/30/1996 | Y | Y | Y | | Y | AWP - 10%; DP [6] | AWP - 10%; DP [6] | AWP - 50% | | Y [8] | $3.85 - $6.97 [1, 2, 3, 4, 5] |
| 5/1/1996 - x/x/1997 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30% [12] | Y [8] | $2.52 - $6.71 [1, 2] |
| x/x/1997 - x/x/1998 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30% [12] | Y [8] | $4.82 (avg) [1, 2] |
| x/x/1998 - x/x/1999 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30% [12] | Y [8] | $4.95 (avg) [2] |
| x/x/1999 - 7/31/2000 | Y | Y | Y | Y [11] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30% [12] | Y [8] | $2.78 - $6.71 [2] |
| 8/1/2000 - 6/30/2002 | Y | Y | Y | Y [11] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30% [12] | Y [8] | $4.50 |
| 7/1/2002 - 2/17/2003 | Y | Y | Y | Y [11] | Y | AWP - 11% [13] | AWP - 27% [13] | AWP - 50% | AWP - 30% [12] | Y [8] | $3.40 |
| 2/18/2003 - 10/15/2003 | Y | Y | Y | Y [11] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30% [12] | Y [8] | $3.40 |
| 10/16/2003 - 5/27/2004 | N [7] | Y | Y | Y [11] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30% [12] | Y [8] | $3.40 |
| 5/28/2004 - 4/3/2005 | N [7] | Y | Y | Y [11] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30% [12] | Y [9] | $3.40 |
| 4/4/2005 - Present | Y [7] | Y | Y | Y [11] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30% [12] | Y [9] | $3.40 |

- Data taken from Kansas Medicaid State Plan Amendments
- Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456
- Data provided by the Kansas Health Policy Authority
- Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per 1991, 1992, 1993, 1994, 1996, 1997 NPC Publications: The professional fees are based upon each individual pharmacy's historical operating costs as determined by analysis of verifiable data submitted by each pharmacy to the agency. Professional fee determination is limited to the lowest of: (a) the 85th percentile of allocated costs per prescription for all pharmacies filing a cost report plus a reasonable profit, or (b) usual and customary fee charges of each individual pharmacy as determined by survey. "Acquisition cost" means the allowable price determined by the agency for each covered drug in accordance with state and federal regulations.

[2] 1991 – 2000 NPC Publications report: Variable fee per prescription established for each individual participating pharmacy within the ranges of (1991) $3.75 - $6.10; (1992, 1993, 1994, 1995) $3.85 - $6.97; (1996) $2.52 - $6.71; (1997) average $4.82; (1998) average $4.95; (1999) average $4.94; (2000) $2.78 - $6.71, $4.94 average. Per State, dispensing fees set by an accounting firm.

[3] Per TN MS-95-02, effective 01/01/1995: The dispensing fee assigned to each pharmacy provider is based upon agency determinations which consider the lesser of the individual pharmacies' average gross margin per prescription as charged to the general public and determined by a usual and customary prescription price survey submitted by the pharmacy, or the fee determined per analysis of the individual pharmacies' cost study report, which is submitted by the pharmacy and reflects the labor and overhead costs required to dispense a single prescription, plus a standard profit factor. The totals from these calculations are reduced by $.26 for the final dispensing fee determination. The individual pharmacies' allowable expenses are subject to percentile limitations as determined by an array of participating providers. Individual fee determinations are also subject to reevaluation and adjustment when report data exceeds regression analysis norms by a factor greater than 1.0 standard error of estimation. (HHD077-0098)

[4] Per TN MS-95-02, effective 01/01/1995: Pharmacy providers who do not submit a usual and customary prescription price survey and a cost study report, when required, are reimbursed at the agency-determined allowable product cost for covered drugs with a zero dispensing fee. (HHD077-0098)

[5] Per TN MS-95-02, effective 01/01/1995: Each of the three following types will have a dispensing fee assignment set at the mean fee determined from the pharmacy cost study analysis: (1) Out-of-state pharmacies which are not located in border cities as defined in the Provider Manual, and do not exceed 100 prescription claims annually; (2) New pharmacies, with less than six months' history completed prior to the date specified in the cost report; (3) Acute care institutional pharmacies. (HHD077-0098)

[6] Per 1991, 1992, 1993 NPC Publications, reimbursement includes direct prices for one company. 1994,1995 NPC Publications report **direct prices for Merck.** Direct price reference removed in 1996 NPC.

[7] When the new MMIS was implemented on 10/16/03, the Gross Amount Due (GAD) field was inadvertently taken from the NCPDP 5.1 claim, and the Usual & Customary pricing field was not carried forward in the new MMIS. This was corrected effective with processing date beginning 4/4/05.

[8] Higher reimbursement for certain brand drugs paying at SMAC or FUL. This began 2/19/1990 with a small list of NDCs.

[9] Implemented policy E2003-032 to allow single source reimbursement (currently AWP-13%) for brand multi-source drugs if criteria met.

[10] The State used MediSpan under the old EDS contract and First DataBank with BCBS and the current EDS contract.

[11] Effective May 1, 2000, Kansas used the DOJ prices on the 400 to 500 NDCs as SMAC (State Maximum Allowable Cost) prices. They were not used as an AWP. Currently these SMACs remain on several of the DOJ NDCs. Some of the DOJ NDCs have been adjusted to meet provider costs because several pharmacies could not access certain DOJ NDCs at the DOJ AWP's.

[12] Reimbursement for blood fractions is AWP-30% or the Kansas Department of Health and Environment contract pricing, whichever is less.

[13] Per state, EAC changes established in TN #MS-02-09 (HHD077-0101) effective 7/01/02 were not implemented until 10/1/02.

07/21/09