# Exhibit 24
# Part C

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

**State of:** KENTUCKY

Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | Prescription/Legend Drugs "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [2] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | Unit Dose Packaging | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | Gross Amount Due | FUL/FMAC | EAC [2] | SMAC | Brand | Generic | | | Brand | Generic | Brand NF Resident | Generic NF Resident | | |
| 12/28/1990 - 3/31/1991 | Y | Y | Y | Y | N | AWP - 10% or DP [3] | AWP - 10% or DP [3] | | Y | $3.25 | $3.25 | $3.25 | $3.25 | Plus $.02-$.04 [5] | |
| 4/1/1991 - 6/30/1991 | Y | Y | Y | Y | N | AWP - 10% or DP [6] | AWP - 10% or DP [6] | | Y | $3.25 | $3.25 | $3.25 | $3.25 | Plus $.02-$.04 [5] | |
| 7/1/1991 - 1/15/2001 | Y | Y | Y | Y | N | AWP - 10% or DP [4] | AWP - 10% or DP [4] | | Y | $4.75 | $4.75 | $5.75 | $5.75 | Plus $.02-$.04 [8] | |
| 1/16/2001 - 3/31/2002 | Y | Y | Y | Y | N | AWP - 10% [7] | AWP - 10% [7] | | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | |
| 4/1/2002 - 3/31/2003 | Y | Y | Y | Y | N | AWP - 12% | AWP - 12% | | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | [12] |
| 4/1/2003 - 12/2/2004 | Y | Y | Y | Y | Y | AWP - 12% | AWP - 12% | [10] | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | [12] |
| 12/3/2004 - 2/22/2005 | Y [1] | Y [13] | Y | Y | Y | AWP - 12% | AWP - 12% | [11] | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | [12] |
| 2/23/2005 - Present | Y [1] | Y [15] | Y | Y | Y | AWP - 15% | AWP - 14% | [11] | Y | $4.50 | $5.00 | $4.50 | $5.00 | Plus $.02 [14] | [12] |

■ Data taken from Kentucky Medicaid State Plan Amendments

■ Data provided by John Hoffmann, Division of Information Systems

■ Data provided by Bahr deposition taken 1/29/08, Kustra deposition taken 5/29/08, and document production by Kentucky to Roxane

■ Data provided by administrative rule 907 KAR 1:020 and 1:021

[1] Per KY_DMS_00000000176297, the usual and customary charge is the amount that a pharmacist can typically expect to receive from a pharmacy benefits manager (PBM); reflects the real world experience in actual reimbursement rates from PBMs

[2] Per Kustra deposition pp. 366-367 and Bahr deposition pp.149 and 293-294, the Commonwealth uses First DataBank for pricing.

[3] Per 907 KAR 1:020 Section 1(1)(b) adopted 6/19/91, when an AWP and a direct price are listed for drugs provided by those companies who had determined that at least 50% of their products were sold directly to Kentucky pharmacies, and for which the Medicaid Program used direct pricing as of 9/30/1990, reimbursement for the drug cost shall be the lesser of the direct price, the FMAC, or AWP-10%, or the usual and customary billed charge.

[4] Per TN #91-12, the EAC for drugs shall not exceed AWP - 10%; if an AWP is not listed, the EAC shall be the direct price. Reimbursement for drugs provided to patients in nursing facility brain injury units and nursing facility ventilator dependent units shall be as a part of the all inclusive rate for the unit and the payments for such drugs shall be in accordance with the MAC/EAC upper limits.

[5] Per 907 KAR 1:020 Section 1(1)(e) and Section 2(2) adopted 6/19/91, for nursing facility residents meeting Medicaid patient status criteria, there shall be no more than one(1) dispensing fee allowed per drug within a calendar month for maintenance drugs, and no more than two (2) dispensing fee allowed per drug within a calendar month for other drugs, except Schedules II, III, and IV controlled substances and non-solid dosage forms, including topical medication preparations, for which no more than four (4) dispensing fees per drug shall be allowed within a calendar month. An addition to the $3.25 dispensing fee shall be made for drugs dispensed through the pharmacy outpatient drug program in the amount of two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist; effective 5/1/1991 the unit dose dispensing fee addition shall be paid, as appropriate, even though the usual dispensing fee is not paid due to monthly limits on dispensing fees.

[6] Per 907 KAR 1:020 Section 1(1)(b) adopted 6/19/91, when an AWP is listed, reimbursement for the drug cost shall be the lesser of the FMAC or AWP - 10% plus a dispensing fee (and unit dose add-on as appropriate) or the usual and customary billed charge. If an AWP is not listed, reimbursement shall be the lesser of the FMAC or Direct Price plus a dispensing fee (and unit-dose add-on as appropriate) or the usual and customary billed charge.

[7] Per TN #01-04, the following drugs are excluded from coverage through the Outpatient Pharmacy Program: LTE (less than effective) FDA rated drugs; a drug that has reached the termination date established by the drug manufacturer; a drug for which the drug manufacturer has not entered into or has not complied with a rebate agreement in accordance with 42 USC 1396r-8(a) unless there has been a review and determination by the department that it shall be in the best interest of Medicaid recipients for the department to make payment for the non-rebated drug; and, a drug provided to a recipient in an institution in which drugs are considered a part of the reasonable allowable costs under the Kentucky Medicaid Program.

[8] Per TN #91-12, for nursing facility residents meeting Medicaid patient status criteria, there shall be no more than one dispensing fee allowed per drug within a calendar month for maintenance drugs and no more than two (2) dispensing fees allowed per drug within a calendar month for other drugs, except for Schedules II, III, and IV controlled substances and for non-solid dosage forms, including topical medication preparations, for which no more than four (4) dispensing fees per drug per calendar month. An addition to the $5.75 dispensing fee shall be made in the amount of two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

[9] Beginning with TN 01-23 effective 8/15/01, for nursing facility residents meeting Medicaid patient status, in addition to the $4.51 dispensing fee two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

[10] Per TN #03-009, a SMAC may be established for a drug only if a federal upper limit did not exist for the drug and at least one readily and nationally available A-rated generic product did exist.   (See also KY_DMS_00000000176298)

[11] Per TN #04-007, a SMAC may be established for any drug (including generic) for which two or more A-rated therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference exist. The SMAC will be determined by taking into account drug price status (non-rebatable, rebatable), marketplace status (obsolete, regional availability), equivalency rating (A-rated) and relative comparable pricing. Other factors considered are clinical indications of generic substitution, utilization, and availability in the marketplace. Products are then sorted into drug groups by GCN, and then a filter is applied to remove all drug products that are obsolete, are not therapeutically equivalent, or are not available in the marketplace. The acquisition cost for the remaining drug products are analyzed to produce the EAC for the drug group give due consideration (i.e. utilization and availability) to the lower cost products.

[12] Per KY_DMS_00000000176305, payment for compounded prescription will be based upon the EAC from the current price in effect on the date of service for each ingredient, one of which must be a legend item.   Effective sometime prior to 2004, a fee of $1.00 will be added to the reasonable dispensing fee for the extra compounding time required by the pharmacist.

[13] Per KY_DMS_00000000176297, the gross amount due is defined as the acquisition costs of the ingredients plus the expected dispensing fee paid. This does not represent the amount that a pharmacist would expect as reimbursement from the PBM.

[14] Per TN #05-004, for nursing facility residents meeting Medicaid patient status, an incentive of two (2) cents per unit dose shall be paid to the long term care pharmacist for repackaging a non-unit dose drug in unit dose form.

[15] Per KY_DMS_00000000176303 (TN #05-004 effective 2/23/2005), the gross amount due is defined as the total price of a drug claimed from all sources. This includes the drug ingredient cost paid, the dispensing fee paid, and any applicable unit dose re-packaging incentive payments.

State of: **LOUISIANA**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement for Brand Drugs | | "Lower of" Reimbursement for Generic Drugs | | | | Estimated Acquisition Cost (EAC) [5] | | | Physician Override (DAW, Brand Medically Necessary) | | |
| Effective Time Period | Usual and Customary | EAC | Usual and Customary | FUL | EAC | LMAC | Independent | Chain | LMAC Methodology | | Dispensing Fee | TPN |
| 9/1/1990 [7] - 9/30/1991 | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | AWP - 10.5% [7] | AWP - 10.5% [1,7] | 2 | Y [7] | $4.68 [7] | |
| 10/1/1991 [7] - 6/30/1992 | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | AWP - 10.5% [7] | AWP - 10.5% [1,7] | 2 | Y [7] | $5.00 [7] | |
| 7/1/1992 - 6/30/1993 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | 2 | Y | $5.30 [7] | |
| 7/1/1993 [7] - 6/30/1994 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | 2 | Y | $5.54 [7] | |
| 7/1/1994 [7] - 6/30/1999 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | 2 | Y | $5.77 | |
| 7/1/1999 - 1/31/2000 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 13.5% [3] | 2 | Y | $5.77 | |
| 2/1/2000 - 8/5/2001 | Y | Y | Y | Y | Y | Y | AWP - 15.0% | AWP - 16.5% [4] | 2 | Y | $5.77 | |
| 8/6/2001 - Present [7] | Y | Y | Y | Y | Y | Y | AWP - 13.5% | AWP - 15.0% [4] | 2 | Y | $5.77 | 6 |

  Data taken from Louisiana Medicaid State Plan Amendments

  Data provided by Terrebonne deposition taken 11/7/08 and exhibits and Declaration of M.J. Terrebonne dated 7/20/09

[1] Note: Prior to TN #99-12 effective 7/1/1999, independent and chain pharmacies were not separately distinguished for reimbursement.

[2] Per TN #92-01 et al., the Louisiana Maximum Allowable Cost (LMAC) is the median AWP cost for a specific strength/unit drug determined by listing the wholesale costs for each readily available manufacturer, labeler, etc. and taking the median of those AWP costs.  Per deposition pp. 88-89, this definition also applies to the first two time periods.

[3] Per TN #99-12, chain pharmacies have five or more Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[4] Per TN #00-08 and TN #01-08, chain pharmacies have more than 15 Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[5] Per deposition pp. 78-81, drug file pricing is provided by First DataBank.

[6] Beginning on 7/1/2005, Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.  TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.  TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

[7] Dates, dispensing fees, compound fees and other information reviewed and verified as accurate in Declaration.

State of: **MAINE**

Medicaid Pharmacy Reimbursement Methodology Summary

**Prescription/Legend Drugs**

| Effective Time Period | Reimbursement Methodology Pay the "Lower of" the amounts listed | | | | | Estimated Acquisition Cost (EAC)[17] | | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC[17] | DOJ Pricing | SMAC[1] | Retail Brand | Retail Generic | Institutional | Specialty[14] | Covered brand/generic drugs Not on DSDL[9] | Covered brand/generic drugs on DSDL[9] | Mail Order Pharmacy Brand | Mail Order Pharmacy Generic | | Brand/Generic | Compound Drugs | All Mail Order Drugs |
| 12/1/1989 - 3/14/1996 | Y | Y | Y | | Y | [2] | [2] | | | | | | | Y | $3.35 | [3] | |
| 3/15/1996 - 6/30/2002 | Y | Y | Y | Y[19] | Y | AWP-10% | AWP-10% | AWP-71/2%[7] | | | | | | Y | $3.35 | 3,4,5,6 | |
| 7/1/2002 - 8/7/2003 | Y | Y | Y | Y[19] | Y | AWP-13%[8] | AWP-13%[8] | | | | | | | Y[18] | $3.35 | [6] | |
| 8/8/2003 - 2/2/2004 | Y | Y | Y | Y[19] | Y | | | | | AWP-13%[9] | AWP-17%[9] | | | N | $3.35 | 10 | |
| 2/3/2004 - 5/15/2004 | Y | Y | Y | Y[19] | Y | AWP-15%[11] | AWP-13%[11] | | | | AWP-17%[9] | | | N | $3.35 | 10 | |
| 5/16/2004 - 10/31/2005 | Y | Y | Y | Y[19] | Y | AWP-15%[13] | AWP-13%[13] | | | | AWP-17%[12] | AWP-20% | AWP-60% | N | $3.35 | 10 | $1.00 |
| 11/1/2005 - 6/30/2006 | Y | Y | Y | Y[19] | Y | AWP-15%[13] | AWP-13%[13] | | AWP-17%[14] | | | AWP-20% | AWP-60% | N | $3.35 | 10 | $1.00 |
| 7/1/2006 - Present | Y | Y | Y | Y[19] | Y | AWP-15%[15] | AWP-13%[15,16] | | AWP-17% | | | AWP-20% | AWP-60% | N | $3.35 | 10 | $1.00 |

▓ Data taken from Maine Medicaid State Plan Amendments

▓ Data provided by Walsh deposition taken 3/26/08 and *U.S. v. Abbott Laboratories* Response to Subpoena Duces Tecum Request No. 2 Section 80 Pharmacy Rule Changes

▓ Policy clarification provided by Ms. Jude Walsh

[1] Beginning with TN #90-21, Maine identifies its State MAC program as the Maine Maximum Allowable Cost (MMAC) program. (HHD040-0120)

[2] EAC is, as close as feasible, the price paid for high volume drugs by providers. The Department will periodically publish a list of drugs covered by EAC, MAC, or MMAC and their prices. Reimbursement at the AWP will be made for those drugs not covered by EAC, MAC or MMAC. AWP is the price generally charged by wholesalers and will not exceed 18% above direct cost. All unit dose or modified unit dose drugs except liquids and ointments and Class II controlled drugs shall be returned to the pharmacy for credit.

[3] Professional fees for compound drugs are as follows:  $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; and $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[4] Effective 7/23/1998, the previous list of professional fees for compound drugs was expanded to include a tier of lower rates for claims electronically submitted. The new rates added were: $3.10 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.10 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN (hyperalimentation); and $4.10 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions.

[5] Effective 1/15/2001, the list of professional fees for compound drugs was further expanded to include: $12.50 for filling insulin syringes for a maximum 14-day supply for all claims electronically submitted.

[6] Effective 7/1/2001, $5.35 will be paid for all claims submitted electronically for the most expensive ingredient in the compound as long as it has a valid NDC and is covered under a State's rebate agreement. Eff. 8/29/01, the compounding fees of $3.35, $5.35, $4.35, and $12.50 as described previously remain in place but apply to paper submissions only. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $0.25 or less, $0.25 is the allowed charge.

[7] For pharmacy providers serving nursing facilities, ICFs/MR and boarding homes for which Medicaid is billed, reimbursement is at AWP-7 1/2% for only the actual doses administered, with one dispensing fee per month; and the program results in no drugs subject to return for credit. This was discontinued on 7/1/2002.

[8] Per TN #02-005, as a result of a temporary restraining order imposed on the State of Maine, EAC was defined as AWP-10% for the period from 11 am 7/29/02 until 8/7/02. (HHD040-0096)

[9] Effective 8/8/03 by emergency rule, Direct Supply Drug List (DSDL) was established to replace reimbursement for retail pharmacies. DSDL is defined as a list of covered drugs established by the Department, consisting of certain maintenance drugs including specialty drugs, caloric supplements and substitutes, and medical foods that the Department has determined may be obtained safely and efficiently through mail order. The Department may pay a lower rate for drugs on the DSDL to any mail order pharmacy that agrees by contract with the Department to accept such lower reimbursement rate for such drugs.

[10] Effective on or before 8/8/03, professional fees for compound drugs were reestablished at the following rates:  $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions; and $12.50 for filling insulin syringes for a maximum 14 day supply. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[11] Effective 2/3/04 by emergency rule, rate applies only to covered brand and generic drugs not on the Direct Supply Drug List. These rates replace the more general "Covered Drug Not on DSDL" category that was effective for the previous period.

[12] Reimbursement definitions changed by rule, so this rate now applies to Direct Supply Retail Drug List (DSRDL) providers and Direct Supply Mail Order Drug List (DSMODL) providers for both generic and brand name drugs.

[13] Effective 11/2/04, pharmacies serving members in rural areas became eligible to receive an incentive payment **applied as a professional fee** and calculated by creating a percentile score based on established criteria; determined and paid quarterly. The definition of eligible pharmacy was expanded on 5/5/05 to include pharmacies that are not located in rural areas but that serve a large number of members who live in rural areas.

[14] New Specialty Pharmacy provider category defined as pharmacies approved by the Department to dispense specialty drugs defined as covered drugs that, due to their high cost, short shelf life, special handling requirements and instruction, or other factors, are obtained from Specialty Pharmacy providers. Specialty drugs are prescribed for a limited number of usually chronic conditions that generally affect a relatively small portion of the population.

[15] Effective 3/1/2007, rule language amended to define Rural Dispensing Fee Adjustment as a supplemental dispensing fee that ranges from $0.55 to $0.65 per prescription, which will change quarterly to reflect the prior quarter's number of prescriptions filled.

[16] Effective 3/1/2007, a new pricing option was added to the lower of methodology for reimbursement of generic drugs to retail pharmacies: EAC is the lowest of: U&C; AWP-13%, FUL, MMUL, or the State Upper Limit (250% of Average Manufacturer's Cost for multi-source generic drugs).

[17] Per deposition p. 72, the State used First DataBank for pricing and then switched to MediSpan.   Per State, the switch occurred on 7/1/02.

[18] DAW 1 logic turned off on 7/1/2003.

[19] DOJ pricing was implemented on 5/1/2000 and remains in effect through today.

Case 1:01-cv-12257-PBS   Document 6310-27   Filed 07/24/09   Page 5 of 16

State of: **MARYLAND**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | "Lower of" Reimbursement Methodology ||||| Estimated Acquisition Cost (EAC)[12] Brand/Generic | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee ||||| Compounded Home IV Therapy[10] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FGUL | EAC | SMAC | DOJ Pricing | | | Brand || Generic || |
| | | | | | | | | Retail | Nursing Home | Retail | Nursing Home | |
| 1/1/1991 - 3/31/1991 | Y | | Y | Y[1] | | AWP or Direct Price[2] | Y | $3.70[8] | | $3.70[8] | | 10 |
| 4/1/1991 - 6/30/1992 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | 4 | | 4 | | 10 |
| 7/1/1992 - 6/30/1995 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | 5 | | 5 | | 10 |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | $4.66 | | $4.66 | | $7.70 |
| 7/1/1996 - 9/30/1998 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | $4.21 | | $4.21 | | $7.25 |
| 10/1/1998 - 12/2/2002 | Y | Y | Y | Y[1] | Y[13] | Lowest of: WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10%[6] | Y | $4.21 | $5.25[6,9] | $4.21 | $5.25[6,9] | $7.25 |
| 12/3/2002[14] - 6/30/2003 | Y | Y | Y | Y[7] | | Lowest of: WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10% | Y | $3.69[14] | $4.65[9,14] | $4.69[14] | $5.65[9,14] | $7.25 |
| 7/1/2003 - 1/31/2004 | Y | Y | Y | Y[7] | | Lowest of: WAC + 9%, Direct Price + 9%, Distributor's Price + 9%, and AWP - 11%[8] | Y | $3.69 | $4.65[9] | $4.69 | $5.65[9] | $7.25 |
| 2/1/2004 - 6/30/2004 | Y | Y | Y | Y[7] | | Lowest of: WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | Y | $3.69 | $4.65[9] | $4.69 | $5.65[9] | $7.25 |
| 7/1/2004 - Present | Y | Y | Y | Y[7] | | Lowest of: WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12%[10] | N[11] | $2.69 | $3.69[9] | $3.69 | $4.69[9] | $7.25 |

- Data taken from Maryland Medicaid State Plan Amendments
- Data provided by Fine deposition taken 12-9-08 and Abbott Exhibits
- Data taken from Maryland Pharmacy Program Advisory No. 10 Revised
- Data received from Jeff Gruel, Director, Pharmacy Program

[1] Per TN #88-8 (HHD039-0220-HHD039-0221) et al., the maximum amount the Program will reimburse for selected, approved interchangeable multiple source drugs is called the Interchangeable Drug Cost (IDC). The IDC is determined by ascertaining the availability of the product from the two principal sources of supply within the State and determining the lowest cost from among the approved interchangeable multiple source products available from each source and selecting the higher of these two costs. Maximum allowable costs will be reviewed and updated at least once every year, whenever there is an emergency recall by the Food and Drug Administration, or temporarily, if there is an acute shortage of supply from available sources. (Beginning 1994, see also Fine deposition pp. 201-205, Ex. 15)

[2] Per Fine deposition pp. 151-152, EAC was AWP or Direct Price for top 100 drugs. Per TN #91-19 (HHD039-0222), the EAC is the amount generally paid by providers for a drug based on the cost and availability of the most commonly stocked package size and the cost of the product from the least expensive usual source of supply. The allowable cost is the EAC established by the Department. The Department determines EACs by consulting local wholesalers' price listings, published drug compendia, and distributors/manufacturers' catalogues. Certain highly utilized drugs have EACs based on direct rather than wholesale prices and/or in larger than minimum package sizes. EACs for products not available through local wholesale sources are based on distributors' direct prices. For medically necessary brand drugs, the EAC of the brand drug is the allowable cost.

[3] Per TN #91-21 (Ex. 9), the EAC is based on the following criteria in order of selection: WAC + 10%; or Direct Price + 10% if WAC is not available; or Distributor's Price + 10% if neither WAC nor Direct Price is available; or AWP - 10% if WAC, Direct Price, or Distributor's Price are not available.

[4] Per Abbott MD 8, from 4/1/1991 - 7/29/1991 the DF was $4.69 if ingredient cost < $34.92 and $5.92 if ingredient cost = or > $34.92. From 7/30/1991 - 6/30/1992 the DF was $5.94 if ingredient cost < $36.34 and $7.17 if ingredient cost = or > $36.34.

[5] Per Abbott MD 8, from 7/1/1992 - 6/30/1993 the DF was $4.94 if ingredient cost < $47.83 and $6.17 if ingredient cost = or > $47.83. From 7/1/1993 - 6/30/1994 the DF was $4.94 if ingredient cost < $56.87 and $6.17 if ingredient cost = or > $56.87. From 7/1/1994 - 6/30/1995 the DF was $4.94 if ingredient cost < $61.94 and $5.17 if ingredient cost = or > $61.94.

[6] Per Abbott MD 8, effective July 1, 1998 the state implemented a change to the EAC methodology and a higher dispensing fee $5.25 for nursing home (NH) prescriptions (Rxs). Per TN #99-3 (HHD039-0178), for NH Rxs, credits, less the paid dispensing fee, for unused unit dose medication and any other medication which may legally be returned to stock shall be made within 60 days of Program payment and include adjustments for leave of absence Rxs; and multiple Rxs dispensed to a recipient residing in a NH for the same drug product or compounded Rx shall receive only one professional fee per calendar month except for: leave of absence Rxs, compounded Rxs for home IV therapy, and Rxs for Schedule II - IV controlled dangerous substances.

[7] Per TN #03-7 effective 12/3/02, the State of Maryland began determining the IDC costs as follows. The IDC is determined as the higher of: the lowest estimated acquisition cost of the generically equivalent products in the State, or the lowest cost from among the approved interchangeable multiple source products from each wholesaler that the Program has current and accurate pricing information, or utilizing a price from a commercial generic pricing source. (For IDC pricing, see also Fine deposition pp. 201-205, Ex. 15)

[8] Abbott Ex. MD 8, p. MD0000739.

[9] Per TN #99-3 et al., standard dispensing fee applies to nursing home resident prescriptions not compounded for home IV therapy.

[10] Compounded drugs over a certain dollar threshold were priced manually. (Fine deposition pp. 162 - 167, 185, 311-317, Tetkoski deposition pp. 102-103)

[11] Effective 10/15/04, the Program implemented a Brand Medically Necessary edit, requiring the prescriber to first obtain prior authorization.

[12] State uses First DataBank and the Red Book for pricing. (See Fine deposition pp. 267, 311-312 and Tetkoski deposition pp. 122, 127-131, 245)

[13] Per Tetkoski deposition pp. 121-123, Maryland implemented DOJ prices for only a short time.

[14] Per state, dispensing changes reflected in TN #99-3 were revised effective 11/1/2002.

07/21/2009

State of: **MASSACHUSETTS**

Medicaid Pharmacy Reimbursement Methodology Summary

**Legend/Prescription Drugs**

| Effective Time Period | Non-MAC/non-MMAC Drugs — Pay lower of:[4] | | Multi-Source Drugs with MAC or MMAC — Pay lower of:[4] | | | Estimated Acquisition Cost (EAC)[3] | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compounds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | EAC[3] | Usual and Customary | FUL/MAC | MMAC/MUL | Usual and Customary | FUL/MMAC Drugs | Non-FUL/MMAC Drugs | | Brand | Generic | |
| 11/1/1989 – 1/31/1995 | Y | Y[1] | Y | Y[2] | Y[1] | | WAC + 10%; AWP – 10%[2] | Y | $4.06 | $4.06 | [8] |
| | | **Pay "Lower of" for All Legend Drugs**[4] | | | | | | | | | |
| 2/1/1995 – 12/16/2001 | Y | Y[5] | Y | Y | Y[5] | WAC + 10%[2]; AWP – 10%[3] | WAC + 10%[2]; AWP – 10%[3] | Y | $3.00 | $3.00 | [8] |
| 12/17/2001[3] – 8/2/2002 | Y | Y[5] | Y | Y | Y[5] | WAC + 10%; AWP – 12%[3] | WAC + 10%; AWP – 12%[3] | Y | $3.00 | $3.00 | [8] |
| 8/3/2002[3] – 10/31/2002 | Y | Y[5] | Y | Y | Y[5] | WAC + 6%; AWP – 15.2%[3] | WAC + 6%; AWP – 15.2%[3] | Y | $3.00 | $3.00 | [8] |
| 11/1/2002[9] – 3/30/2003 | Y | Y[5] | Y | Y | Y[5] | WAC + 6%; AWP – 15.2%[3] | WAC + 6%; AWP – 15.2%[3] | Y | $5.00 | $3.50 | [8] |
| 4/1/2003[6] – 11/30/2003 | Y[6] | Y[5] | Y | Y[6] | Y[5] | WAC + 5%[7]; AWP – 16%[11] | WAC + 5%[7]; AWP – 16%[11] | Y | $5.00 | $3.50 | [8] |
| 12/1/2003 – Present[11] | Y | Y[5,10] | Y | Y[8] | Y[5,10] | WAC + 5%[7]; AWP – 16%[11] | WAC + 5%[7]; AWP – 16%[11] | Y | $3.00 | $3.00 | [8] |

■ Data taken from Massachusetts Medicaid State Plan Amendments

■ Data taken from Declarations filed on behalf of the Commonwealth of Massachusetts in U.S. District Court (D. Mass.), Case No. 1:03-cv-11865-PBS Document Nos. 479-2, 445, 436-2, and 514-2; and regulations from Massachusetts State Library

■ Data provided by Westlaw 114.3 MA ADC 31.01 - 31.08

[1] Until 3/15/95, the Usual and Customary Charge was defined as "the price charged for a given volume of drugs (legend or non-legend) on a given day by an eligible pharmacy provider to its retail customers (institutional purchasers as well as over the counter purchasers). If a drug is on sale for a one week period, the usual and customary charge for that drug during that week is the sale price. If the price of a drug is discounted to certain groups of retail customers, the usual and customary charge for that volume of drugs for that group is the discounted price. (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 pp. 13, 17, 19))

[2] Effective 11/1/1988, the State Upper Payment Limit is the Massachusetts Maximum Allowable Charge (MMAC), which is based on 150% of the lowest price listed (in package sizes of 100 units or the commonly listed size) in accordance with the methodology employed by HCFA pursuant to 42 CFR Section 446.332 as amended effective 10/29/1987. (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 p. 12). Per MA011894 (TN #89-3), WAC + 10% established as EAC.

[3] Per declarations made in U.S. District Court - District of Massachusetts by David Sibor (Case 1:03-cv-11865-PBS Document 445 filed 02/28/2008), Account Manager with ACS State Healthcare (Massachusetts Medicaid Pharmacy claims processing contractor), and Paul Jeffrey, Director of Pharmacy for the Massachusetts Office of Medicaid (Case 1:03-cv-11865-PBS Document 436-2 filed 02/28/08), MA Medicaid pharmacy claims have been processed primarily using pricing data received from First DataBank (FDB). There was an approximate two year period where the Commonwealth did not receive an update to the pricing from FDB [2000-2001]. Prior to 12/17/2001, when ACS assumed Medicaid Pharmacy claims processing responsibilities, where FDB reported a WAC for a drug, the EAC is WAC + 10%. Where FDB did not report a WAC for a drug and only reported AWP, the EAC was determined as AWP – 10%. (See also Doc 436-2 p. 7.) For the period on and after 12/17/2001, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 10% (if the WAC was available) or AWP – 12% (if the WAC was unavailable). Effective 8/3/2002, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 6% (if WAC was available) and AWP – 15.2% (if WAC was unavailable).

[4] Before 1995, the payment for generics for which an FUL or MMAC was established was the lower of FUL, MMAC or U&C (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 p. 20)). Beginning 2/1/1995 regulations were amended to make the EAC apply to all multiple-source drugs. In addition, the definition of MMAC was dropped and replaced by the Massachusetts Upper Limit (MUL), which was essentially the same as the MMAC but was limited to multiple source drugs for which there was no federal upper limit. (Doc 479-2 pp. 23, 24)

[5] Effective beginning 3/15/95 (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 p.23), the Usual and Customary Charge was defined as "the lowest price charged or accepted as payment for a given volume of drugs (legend or non-legend) by an eligible pharmacy provider to any purchaser or reimburser. If a provider can demonstrate to the appropriate governmental agency that a particular contract represents less than 1% of its total prescription revenue, the agency may eliminate that contract from consideration in determining the lowest price." This definition was extended by rule effective 4/1/03 per Doc. 479-2 p. 33.

[6] Per emergency regulation #5628 (MA Register Numbers 970 and 977), effective 4/1/03, EAC is WAC + 5%, and the definition of the MUL was changed to "… an amount equal to 130% of the price of the least costly therapeutic equivalent as listed in any published or other public source for the most frequently purchased package size." (Per Doc. No. 514-2 (Donohue tutorial) p. 31, this eliminated the restriction on its applicability to multiple source drugs that do not have a FUL and expanded the applicable pricing sources.) (See also Doc. 479-2, pp. 32-33)

[7] A preliminary injunction was entered in *Long Term Care Pharmacy Alliance v. Ferguson*, so WAC + 6% continued to be paid until WAC + 5% was finally implemented on 7/1/04 (See Doc. No. 514-2 (Donohue tutorial) p. 31 and Sibor Declaration dated 7/8/09 p. 3)

[8] For compounded drugs pay the dispensing fee plus: an additional $1.00 for compounding ointments or solutions, or preparing solutions (excluding cough preparations) which involve the weighing of ingredients; or an additional $2.00 for compounding suppositories, or compounding capsules, tablets, triturates or powders.

[9] Per regulation #5616 (MA Register Number 965) effective November 1, 2002, the dispensing fees were increased to $3.50 per single-source prescription dispensed and $5.00 per multi-source prescription dispensed.

[10] Per Doc. #479-2 p. 36, effective 2/1/05, the Usual and Customary Charge was re-defined as "the lowest price that a pharmacy charged or accepted from any health insurer or pharmacy benefit manager for the same quantity of a drug dispensed to a Massachusetts resident on the same date of service. When an insurer and the provider have a contract that specifies the insurer will pay an average or similarly computed fixed amount for multiple categories of drugs with different acquisition costs, the fixed amount will not be the provider's usual and customary charge. Drugs will be identified by NDC number." (See also TN #05-003 effective 1/1/05). Per Westlaw Register #1130, this definition was further modified to read "the lowest price that an Eligible Provider charges or accepts from any payer for the same quantity of a drug on the same date of service, in Massachusetts, including but not limited to the shelf price, sale price, or advertised price of an over-the-counter drug".

[11] Per Sibor Declaration made on 7/8/09 p.3.

07/21/09

State of: **MICHIGAN**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Legend/Prescription Drugs | | | | | | | | | | Dispensing Fee ("Lower of") [7,4] | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC) [7] | | | Physician Override (DAW, Brand Medically Necessary) | Non-Long Term Care Pharmacy | | | | Long Term Care Pharmacy | | |
| | | | | | | | | | | | | | Compounding | | | | Compounding |
| | Usual and Customary | Actual Acquisition Cost (AAC) [5] | FUL | EAC | Provider's Submitted Charge | SMAC | Chain Pharmacies 5 or > Stores; LTC Pharmacies w/ No Retail Business | Independent & Chain Pharmacies of < Five Stores | Pharmacies which serve beneficiaries with a level of care (LOC) 02 | | Standard | IV Admixtures | Standard | Caps/Powders/Suppositories | Standard | IV Admixtures | Unit Dose | Standard | Caps/Powders/Suppositories |
| 8/1/1990 [1] - 9/30/1994 [10] | Y | Y | Y | N | Y [10] | Y | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | | Y [10] | $3.72 | | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) [10] | $3.72 | | $0.015 per tablet or capsule | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) [10] |
| 10/1/1994 [10] - 8/31/1995 [10] | Y | Y | Y | N | Y [10] | Y | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | | Y [3] | $3.72 | | $1.00 | $5.00 [10] | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 [10] |
| 9/1/1995 [9] - 7/4/2000 [10] | Y [4] | N | Y | Y | Y [10] | Y | AWP - 15.1% | AWP - 13.5% | | Y [3] | $3.72 | | $1.00 | $5.00 | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 |
| 7/5/2000 [10] - 9/30/2000 [10] | Y [10] | N | Y | Y [10] | Y [10] | Y | AWP-15.1% [10] | AWP - 13.5% [10] | | Y [3,10] | $3.72 [10] | | $6.00 [10] | $10.00 [10] | $3.72 [10] | | $0.015 per tablet or capsule [10] | $6.00 [10] | $10.00 [10] |
| 10/1/2000 [10] - 12/31/2001 [10] | Y [10] | N | Y | Y [10] | Y [10] | Y | AWP-15.1% [10] | AWP - 13.5% [10] | | Y [3,10] | $3.77 [10] | | $6.00 [10] | $10.00 [10] | $3.77 [10] | | $0.015 per tablet or capsule [10] | $6.00 [10] | $10.00 [10] |
| 1/1/2002 [10] - 12/31/2003 | Y | N | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y [3,10] | $3.77 | | $6.00 | $10.00 | $3.77 | | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 1/1/2004 - 10/31/2004 [10] | Y [10] | N | Y [10] | Y [10] | Y [10] | Y [10] | AWP-15.1% [10] | AWP - 13.5% [10] | | Y [3,10] | $3.77 [10] | $7.50 [10] | $6.00 [10] | $10.00 [10] | $3.77 [10] | $7.50 [10] | $0.030 per tablet or capsule [10] | $6.00 | $10.00 [10] |
| 11/1/2004 [10] - 3/31/2005 [10] | Y | N | Y [10] | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y [3,10] | $2.50 | $7.50 [10] | $6.00 | $10.00 | $2.75 | $7.50 [10] | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2005 [10] - 3/31/2008 [10] | Y | N | Y [10] | Y | Y | Y | AWP - 15.1% [8] | AWP - 13.5% | AWP-15.1% [10] | Y [3,10] | $2.50 | $7.50 [10] | $6.00 | $10.00 | $2.75 | $7.50 [10] | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2008 [10] - Present [10] | Y [10] | N | Y [10] | Y [10] | Y [10] | Y [10] | | AWP - 13.5% [10] | AWP-15.1% [10] | Y [3,10] | $2.50 | $7.50 [10] | $6.00 [10] | $10.00 [10] | $2.75 | $7.50 [10] | | $6.00 [10] | $10.00 [10] |

▓ Data taken from Michigan Medicaid State Plan Amendments

▓ Data taken from Kenyon deposition taken 3/25/08 and Abbott Deposition Exhibits and Parker Declaration dated July 22, 2009

[1] Effective date and pricing established in Abbott Deposition Exhibit 659 and 660. Dispensing fee for 1991 - 1995 not to exceed standard fees as indicated above.

[2] Reimbursement for the products of Merck, Pfizer, and Upjohn is based on direct price. (Abbott Deposition Ex. 659)

[3] Imposes State MAC upper Limits with nearly 1,000 drugs on MAC list today. Override requires prior authorization - "Dispense as Written." See also TN #95-11 (Abbott Deposition Exhibit 661) effective 8/1/95

[4] Per Pharmacy Manual III.13.2 (01-02-02), the program does NOT reimburse for prescriptions filled but not dispensed to the beneficiary. For prescriptions returned to stock/not picked up prescriptions, pharmacies must claim adjust or reverse the claim for any payment received, including the dispensing fee.

[5] Per Abbott Deposition Exhibit 657, AAC is payment at the actual invoice cost for a drug product to the pharmacy. Except for a 2% allowance for cash discounts, AAC must reflect trade and quantity discounts, rebates, free goods and price concessions. Per Pharmacy Manual Ch. III, p.6, Rev. 9-1-91, Medicaid has a screening process for actual acquisition costs payments. Screens are set by: AWP-10%. In most cases, the price allowed will be that associated with the lowest purchase size except unit dose. However, the Program has several drugs where a larger purchase size is used to determine the screen. The size of these larger purchase quantities is indicated to the right of the drug name in Appendix F, Michigan Medicaid Drug List. Exceptions: AWP - Schedule II Drugs; Estimated Retail Price - Reagents, syringes, dietary forumulas; Direct Prices - Products made by: Merck, Sharp and Dohme, Pfizer, and Upjohn.

[6] Per Pharmacy Manual Ch. III, p.9, Rev. 9-1-91, unit dose payment is not allowed for oral liquids.

[7] Michigan Medicaid has had a long term contract with First DataBank

[8] Effective 4/1/2005, reimbursement for pharmacies with no retail business was discontinued, and LTC pharmacies began receiving reimbursement according to the new definition of "pharmacies who serve beneficiaries with a level of care (LOC) 02"

[9] Per Abbott Deposition Exhibits 658, 663, 669.

[10] Dates, dispensing fees, and other information reviewed and verified as accurate in Parker Declaration.

State of: **MINNESOTA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Legend/Prescription Drugs | | | | | | | Physician Overide (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[10] | | SMAC Methodology | | | | Parenteral Nutrition w/Mixing | |
| | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand/Generic | Specialty Drugs | | | Brand/Generic | Intravenous Drugs w/Mixing | 1 Liter Qty | >1 Liter Qty |
| 7/1/1990 - 7/31/1991 | Y | Y | Y | Y | | AWP - 10% | | [9] | Y | $4.10 | | | |
| 8/1/1991 - 12/31/1994 | Y | Y | Y[2] | Y | | AWP - 10% | | [9] | Y | $4.10 [1,3] | 8.00 | 30.00 | 44.00 |
| 1/1/1994 - 6/30/1995 | Y | Y | Y | Y | | AWP - 7.6% | | [9] | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 7/1/1995 - 6/30/1997 | Y | Y | Y | Y | | AWP - 9% | | [9] | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 7/1/1997 - 2/28/2003 | Y | Y | Y | Y | | AWP - 9% | | [9] | Y | $3.65 [1,5] | 8.00 | 30.00 | 44.00 |
| 3/1/2003 - 6/29/2003 | Y | Y | Y | Y | Y[4] | AWP - 14% | | [9] | Y | $3.65 [1] | $8.00 [12] | 30.00 | 44.00 |
| 7/1/2003 - 7/31/2005 | Y | Y | Y | Y | Y[4] | AWP - 11.5% | | [9] | Y[6] | $3.65 [1,7] | $8.00 [12] | 30.00 | 44.00 |
| 8/1/2005 - Present | Y | Y | Y | Y | | AWP - 12% | [8] | [9,11] | Y[6] | $3.65 [1] | $8.00 [12] | 30.00 | 44.00 |

■ Data taken from Minnesota Medicaid State Plan Amendments

■ Data taken from videotaped deposition of Wiberg, 5/4/2006 (ATP004-0002 thru ATP004-0078) and documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

■ Data taken from Jarvis Jackson, Staff Pharmacist

■ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Beginning with TN #91-21 (HHD075-0358), effective 08/01/1991, an additional $.30 dispensing fee allowed for legend drug prescriptions dispensed using a pharmacy packaging unit-dose blister card system.

[2] Per TN #91-21 (HHD075-0349) et al., the prescribed drug must be a drug or compounded prescription that is made by a manufacturer that has a rebate with the Health Care Financing Administration (HCFA) and included in the Minnesota Department of Human Services formulary. The formulary is established in accordance with Section 1927 of the Social Security Act.

[3] Per TN 91-21 (HHD075-0349) : A prescribed drug must be dispensed in the quantity specified on the prescription unless the pharmacy is using unit dose dispensing or the specified quantity is not available in the pharmacy when the prescription is dispensed. Only one dispensing fee is allowed for dispensing the quantity specified. Except as provided in item (6), the dispensing fee billed by or paid to a particular pharmacy or dispensing physician for a maintenance drug for recipients is limited to one fee per 30-day supply; (6) More than one dispensing fee per calendar month for maintenance drugs for a recipient is allowed if (a) the record kept by the pharmacist or dispensing physician documents that there is a significant chance of overdosage by the recipient if a larger quantity is dispensed, and if the pharmacist or dispensing physician writes a statement of this reason on the prescription; or (b) the drug is clozapine.

[4] Per TN 03-01 effective 03/01/2003 (HHD075-0242), the State agency establishes the acquisition cost to equal (AWP minus 14%), except when a drug has its wholesale price reduced as a result of the actions of the National Association of Medicaid Fraud Control Units. In that case, the State establishes the actual acquisition cost at the reduced AWP without the percent reduction.

[5] Per TN 98-32 effective 09/21/1998 (HHD075-0363) : an additional dispensing fee per prescription shall be paid to pharmicists using an in-pharmacy packaged unit dose system (except OTC) approved by the Board of Pharmacy for the return of drugs when dispensing to recipients in a long-term care facility if 1) the pharmacy is registered with the Department, 2) a minimum 30-day supply of the drug is dispensed, although alesser quantity may be dispensed for an acute course of medication therapy for a specified time period.

[6] Per TN 03-29 (HHD075-0247), generic drugs must be dispensed to recipients if the practitioner has not written in his/her own handwriting "DAW-Brand Necessary on the prescription. Effective 01/02/2004, even if the practitioner has written "DAW-Brand Necessary" on the prescription, authorization is required to dispense brand name drugs.

[7] Per TN 03-29 (HHD075-0253), effective 10/01/2003, the dispensed quantity of a prescribed drug must not exceed a 34-day supply unless authorized by the Department.

[8] Per TN 05-09 (HHD075-0327) : effective 07/1/2005: (1) For antihemophilic factor drugs, the State agency establishes the actual acquisition cost to equal 70% of the average wholesale price (AWP-30%). (2) The rate for specialty pharmacy products is 86%, 85%, or 83% of average wholesale price. The rate used is dependent upon the actual acquisition cost for the product. Specialty pharmacy products are those used by a small number of recipients or recipients with complex and chronic diseases that require expensive and challenging drug regimens. A chart is provided listing the class of specialty pharmacy products receiving the various discounts.

[9] State has had the ability to have SMACs back to 1-1-1990. Logic has been to pay the lower of U&C (submitted), EAC or whatever value populated theSMAC/FUL field. FULs were used almost exlusively until year 2000 when the state increased its use of SMAC. The list now includes all commonly used generics; FULs are now only used if a SMAC doesn't exist.

[10] Per Wiberg ATP004-0078, the State has used FDB pricing throughout entire period.

[11] SMACs are based on an informal survey of a few retail pharmacies that have agreed to share their costs. The State tries to include an average profit of about $7.00 for each prescription using SMAC. This $7 includes the $3.65 dispensing fee. The SMAC are maintained using information from pharmacies referenced above, the PDL contractor, and MAC list from other states.

[12] Per TN #03-01 (HHD075-0243), the dispensing fee for IV drugs which require miximg by the pharmacist is $8.00, except Cancer Chemotherapy IVS, which is $14.00.

07/21/09

State of: **MISSISSIPPI**

Medicaid Pharmacy Reimbursement Methodology Summary

| | | | | | Legend/Prescription Drugs | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | "Lower of" Reimbursement Methodology | | | | Mississippi Estimated Acquisition Cost (MEAC)[14] | | | Pharmacy | | Home Infusion Drugs |
| Effective Time Period | | Usual and Customary[11] | FUL | MEAC | SMAC | Brand | Generic | Schedule II Drugs | | Brand | Generic |
| 5/1/1990 – 6/30/1991 | | Y | Y | Y[2] | N | AWP − 10%[1] | AWP − 10%[1] | | N | $4.91 | $4.91 | |
| 7/1/1991 – 3/31/2002 | | Y | Y | Y[3,4] | N | AWP − 10%[6] | AWP − 10%[5,6] | AWP[12] | Y | $4.91[6,7] | $4.91[6,7] | [13] |
| 4/1/2002 – 10/27/2003 | | Y | Y | Y[4] | N | AWP − 12% | AWP − 12% | AWP[12] | Y | $3.91 | $3.91 | [13] |
| 10/28/2003 – 6/30/2005 | | Y | Y | Y[4] | N | AWP − 12%[8] | AWP − 12%[8] | | Y | $3.91 | $3.91 | [13] |
| 7/1/2005 – 4/30/2008 | | Y | Y | Y[4] | N | Lesser of: AWP − 12%; WAC + 9%[8,9] | AWP − 25%[8,9] | | Y | $3.91[10] | $4.91[10] | [13] |
| 5/1/2008[15] – Present | | Y | Y | Y[4] | N | Lesser of: AWP − 12%; WAC + 9%[8,15] | AWP − 25%[8,15] | | Y | $3.91[15] | $5.50[15] | [13] |

▇ Data taken from Mississippi Medicaid State Plan Amendments

▇ Data obtained from Provider Manual

▇ Data provided by Phyllis Williams, Division of Medicaid

[1] Per TN #88-3, only drugs that are listed in the Medicaid Drug Formulary and its supplements will be compensable. Exceptions for the use of non-covered drugs may be made in special circumstances when prior authorization is given by Medicaid.

[2] Per TN #90-02, Mississippi Estimated Acquisition Cost (MEAC) "...is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

[3] Per TN #91-07 and TN #92-11, "MEAC is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

[4] Beginning with TN #00-03, "MEAC is defined as the Division's best estimate of the actual purchase price generally and currently paid by providers for a drug, identified by NDC number, marketed or sold by a particular manufacturer or labeler."

[5] Per TN #91-07, "the Division shall make no payment for an innovator multiple-source drug dispensed after July 1, 1991, if, under applicable state law, a less expensive non-innovator multiple-source drug (other than the innovator multiple-source drug) could have been dispensed."

[6] Per TN #91-07, "the Division shall make no reductions in reimbursement limits on covered outpatient drugs or dispensing fees during the period of time beginning January 1, 1991 and ending December 31, 1994."

[7] Per TN #91-22, the dispensing fee will be increased by 5% effective August 1, 1991. Subsequent State Plan Amendments and NPC Surveys do not indicate that this was ever implemented.

[8] Per TN #05-002, the Mississippi Medicaid Preferred Drug List (PDL) was established effective 1/1/05. The PDL is a list of recommended generic and brand name drugs that are selected based on safety, efficacy, and cost effectiveness. Exceptions to the PDL may be approved if the preferred agents would not be effective or would cause adverse effects in the recipient.

[9] Per TN #05-010 effective 7/1/2005, for brand name (single source, innovator multiple source) and single source generic drugs, pay the lesser of: usual and customary, FUL + dispensing fee, AWP − 12% + dispensing fee, or WAC + 9% + dispensing fee. For multiple source generic drugs, pay the lesser of: usual and customary, FUL + dispensing fee, and AWP − 25% + dispensing fee.

[10] Per TN #05-010, a dispensing fee of $3.91 is paid for sole source drugs and institutionalized beneficiaries, and $4.91 is paid for multi-source drugs.

[11] Beginning with TN #90-02 and continuing through the current State Plan, usual and customary charge is defined as the charge to the non-Medicaid patient.

[12] Schedule II drugs were paid at straight AWP from 2001 to October 2003.

[13] According to the State, the 1996 Pharmacy Provider Manual dated 2/95 reported that a $7 dispensing fee will be paid for each drug ingredient (NDC number) used in the preparation of compounded sterile parenteral products. Each ingredient is considered to be a separate prescription. It is not, however, clear if this ever worked systematically. Since 10/2003, it has not been set up systematically. The 1996 Provider Manual also reports an enhanced dispensing fee of maximum of $30 per liter for TPNs. Per Provider Policy Manual Section 31.14 dated 02/01/04, this continues to be the dispensing fee.

[14] Beginning with TN # 90-02, pricing provided by First DataBank.

[15] Pricing effective beginning 5/1/2008 found in the Provider Policy Manual Pharmacy Section 31.04 p.1; the dispensing fee for prescriptions to beneficiaries in long term care facilities for multi-source generic drugs is limited to $3.91.

State of: **MISSOURI**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Legend/Prescription Drugs [10] | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [5] | Physician Override (DAW, Brand Medically Necessary) | Professional/Dispensing Fee | | |
| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Pay the lower of formula listed Brand/Generic | | (In-State) | (Out-of-State) | LTC (In-State) | LTC (Out-of-State) |
| 3/11/1988 [1] - 9/16/1991 | Y [1] | Y [1] | Y [1] | Y [1] | | AWP or DP [1] | N [2] | $3.15 [1] | $3.15 [1] | $3.30 | $3.30 |
| 9/17/1991 - 6/30/2001 | Y | Y | Y | Y | Y [6] | AWP - 10.43% or DP [3] | N [2] | $4.09 [1] | $4.09 [1] | $4.24 | $4.24 |
| 7/1/2001 [9] - 6/30/2002 | Y | Y | Y | Y | | AWP - 10.43% or WAC + 10% or DP [3] | N [2] | $4.09 [1] | $4.09 [1] | $4.24 [4] | $4.24 |
| 7/1/2002 [7] - 6/30/2007 | Y | Y | Y | Y | | AWP - 10.43% or WAC + 10% or DP [3, 8] | N [2] | $8.04 [7] | $4.09 | $8.19 | $4.24 |
| 7/1/2007 - Present | Y | Y | Y | Y | | AWP - 10.43% or WAC + 10% or DP [3] | N [2] | $9.66 | $4.84 | $9.81 [4] | $4.99 |

 Data taken from Missouri Medicaid State Plan Amendments

Data provided by depositions taken by McCann on 10/3/07, Driver on 10/18/07, and Oestreich on 11/27/07, and exhibits; and Declaration of George Oestreich on July 24, 2009

[1] Per Oestriech Exhibit 154 MO.046607, "payment was at the lesser of the provider's usual and customary charge or the lower of direct price for products of certain manufacturers (Abbott, Merck Sharp & Dohme, Pfizer, Parke-Davis, Roerig, Squibb, Upjohn and Wyeth) federal generic reimbursement limitation, state maximum allowable cost, or Average Wholesale Price (AWP), plus the standard dispensing fee." (See also McCann deposition 10/3/07 pp. 102-103.) Effective 7/1/1990, the standard dispensing fee was $3.15. Effective 9/17/1991 and through 2001 dispensing fee was $4.09.

[2] Per Exhibit 16 (MO 002472-002473), prior authorization became effective on 8/6/1992. (See also MO 012779, MO 012781-012782)

[3] Per Oestreich Exhibit 154 MO.046607, effective 9/17/1991, direct price is no longer used. (Per state, direct price nevertheless remains part of the methodology.)

[4] Per TN #01-45, effective 10/1/2001, pharmacy providers are required to provide a credit to the state agency for medications dispensed on behalf of Missouri Medicaid beneficiaries in nursing facilities that are subsequently returned and which, in compliance with applicable state and federal law and regulation and in the pharmacist's professional judgement, may be reused. Providers will be reimbursed an amount not to exceed $4.24 as a handling fee for submitting each credit, when the ingredient cost of the returned medication equals or exceeds that amount. The federal portion of any credits received under this policy will be returned as required in accordance with other recovery and financial accounting procedures. (See also 13 CSR 70-20.050 (4).)

[5] Per Exhibit 44 (HHD006-0454), the State uses First DataBank for pricing. See also McCann 10/03/07 deposition pp. 54-55, 137.

[6] Per Exhibit 44 (HHD006-0455), the State implemented DOJ prices on 5/1/2000 and discontinued them on 6/30/2000. Per Exhibit 43 (MO 000684), claims paid with DOJ prices were retroactively adjusted to the original prices.

[7] Per GO-000415 - GO-000416, effective 7/1/2002, Missouri Medicaid fee-for-service pharmacies will be given an enhanced dispensing fee of $3.95, for a total dispensing fee of $8.04.

[8] Per Driver deposition 10/18/07, pp. 162-163, pricing prior to 2005 was AWP- 10.43% or WAC+ 10%, or SMAC, or FUL, or Usual and Customary. In May 2005 (p. 86), AWP was no later provided/supported by First DataBank and WAC became the base for EAC. AWP was only used when WAC, SMAC, or FUL not available (pp. 220 - 221).

[9] Per Oestreich 11/27/07 deposition pp. 68 - 69 and 11/28/07 deposition pp. 323, 503, WAC + 10 added to the pricing methodology on July 1, 2001.

[10] All pricing information contained in the summary reviewed and verified as accurate in the Oestreich Declaration.

State of: **MONTANA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Prescription/Legend Drugs [14] | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [6] Pay the lower of each formula listed | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
| Effective Time Period | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | Minimum | Maximum | Unit Dose Systems | Compound Drugs | Home Infusion Drugs |
| 5/1/1988 - 6/30/1997 | Y | Y | Y | | N | AWP - 10%; DP [1] | FUL | Y | $2.00 [2] | $4.08 [2] | Plus $0.75 | [8] | [9] |
| 7/1/1997 - 6/30/1998 | Y | Y | Y | | N | AWP - 10%; DP [1] | FUL | Y | $2.00 [2] | $4.14 [2] | Plus $0.75 | [8] | [9] |
| 7/1/1998 - 9/30/2000 | Y | Y | Y | | N | AWP - 10%; DP [1] | FUL | Y | $2.00 [2,4] | $4.20 [2,4] | Plus $0.75 | [8] | [9] |
| 10/1/2000 - 9/30/2002 | Y | Y | Y | Y | N | AWP - 10%; DP [3] | FUL | Y | $2.00 [2,4] | $4.20 [2,4] | Plus $0.75 | [8] | [9] |
| 10/1/2002 - 9/30/2007 | Y | Y | Y | | N | AWP - 15% [10] | FUL | Y | $2.00 [5] | $4.70 [5,10] | Plus $0.75 | [8] | [9] |
| 10/1/2007 - 6/30/2008 | Y | Y | Y | | N | AWP - 15% | FUL | Y | $2.00 | $4.86 [11] | Plus $0.75 | [8] | [9] |
| 7/1/2008 [12] - 6/30/2009 | Y | Y | Y | | N | AWP - 15% | FUL | Y | $2.00 | $4.94 [11,12] | Plus $0.75 | [8] | [9] |
| 7/1/2009 [13] - Present | Y | Y | Y | | N | AWP - 15% | FUL | Y | $2.00 [13] | $5.04 [13] | Plus $0.75 | [8] | [9] |

▇ Data taken from Montana Medicaid State Plan Amendments

▇ Data taken from documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and Declaration of Daniel W. Peterson dated 7/21/09

[1] Per TN #88(10)02 (HHD038-1056) and #95-01 (HHD038-1054) the policy for reimbursement of Direct Price (DP) drugs is the current direct price charged by manufacturers to retailers in effect on the service date for the claim.

[2] State Plans for this time period through 9/30/2002 report that a variable dispensing fee will be established by the state agency, by using the results of a cost survey of pharmacy's operational costs. However, a pharmacy may be assigned a different (enhanced) dispensing fee to cover additional costs for a "unit dose" method of dispensing a prescription. Provider dispensing fee(s) are available on-line in the MMIS provider file and in the Medicaid Prescription Drug Card System (PDCS) provider plan file. NPCs for 1990 thru 1996 report a dispensing fee from $2.00 - $4.08 (eff. 7/1/90), with an additional $0.75 per Rx allowed for nursing home unit dose systems.

[3] Per TN #00-008 effective 10/1/00 (HHD038-1047) the Direct Price (DP), the price charged by manufacturers to retailers, will be paid unless the DP is not available to providers in the state. If no DP is available, drugs paid by their AWP will be paid at AWP-10%. If the state agency determines that acquisition cost is lower than either the available DP or AWP-10%, then the state agency may set an allowable acquisition cost based on data provided by the drug pricing file contractor. Exception: for outpatient drugs provided to Medicaid recipients in state institutions, reimbursement will conform to the state contract for pharmacy services; or for institutions not participating in the state contract for pharmacy services, reimbursement will be the actual cost of the drug and dispensing fee. In either case, reimbursement will not exceed, in the aggregate, the EAC or the MAC plus the dispensing fee. Direct price was discontinued on 6/5/2002. Prior to discontinuation, any drugs manufactured by the following labels were paid at direct price: Pfizer 00049, Pfizer 00069, Pfizer 00063, Pfizer 00995, and Abbott 00074.

[4] NPC 1998 thru 2000 report a dispensing fee range of $2.00 - $4.20 (eff. 7/1/98), with an additional $0.75 added to prescriptions unit dosed by the pharmacy. NPC 2001 reports a dispensing fee of $2.00-$4.20 effective 7/1/98 but adds that pharmacies submit documentation showing their costs for a dispensing fee maximum of $4.20. Pharmacies that do not submit documentation receive a dispensing fee of $2.00.

[5] Effective 10/01/02 with TN #03-002, a variable dispensing fee will be established by the state agency. The dispensing fee is based on the pharmacy's average cost of filling a prescription. The average cost of filling a prescription will be based on the direct and indirect costs that can be allocated to the cost of the prescription department and that of filling a prescription, as determined from the Montana dispensing fee questionnaire. A provider's failure to submit, upon request, the dispensing fee questionnaire properly completed will result in the assignment of the minimum dispensing fee offered. Dispensing fees assigned shall range between $2.00 - $4.70. Out-of-state and in-state providers new to the Program will be assigned an interim $3.50 dispensing fee until a dispensing fee questionnaire can be completed for six months of operation. At that time a new dispensing fee will be assigned which will be the lower of the dispensing fee calculated or $4.70. Failure to comply with the questionnaire requirement will result in a dispensing fee of $2.00. An additional $0.75 will be paid for unit dose prescriptions not packaged by the drug manufacturer.

[6] The State uses First DataBank for pricing.

[7] Per the June 17, 2002 Montana Medicaid Pharmacy Provider Notice, DOJ pricing discontinued effective July 1, 2002. Per State, pricing was implemented on October 5, 2001.

[8] Until January 22, 2008 (begin date unknown) the Department reimbursed compound prescription drugs utilizing "local" NDC codes. An average wholesale price (AWP) of $25 was set for each of the local codes. The discount, the provider's dispensing fee and client cost share were applied to the reimbursement algorithm. A provider would submit X number of units depending on what they thought would cover the cost of the compound. Per Montana Medicaid Notice dated 12/21/2007, effective 1/22/08, pharmacies will be reimbursed for compounding drugs only if the client's drug therapy needs cannot be met by commercially available dosage strengths and/or forms of the therapy. Prior authorization shall be required for a dispensing fee over $12.50. The dispensing fee for each compounded drug shall be $12.50, $17.50, or $22.50 based on the level of effort required by the pharmacist.

[9] Since December 1996, providers are reimbursed for home infusion therapy through a per diem rate which included equipment, supplies & professional services, while drugs are reimbursed through the pharmacy program. Total Parenteral Nutrition (TPN) included the basic parenteral solution along with the per diem. Prior to 12/96, there was no distinct Home Infusion Therapy program and services were reimbursed under various Medicaid service categories.

[10] Per the June 17, 2002 Montana Medicaid Pharmacy Provider Notice, changes to EAC and DF as established in TN #03-002 effective 10/1/02 (HHD038-0961 and 0964) were actually implemented on 7/1/2002.

[11] 10/1/2007 effective date and dispensing fee change established in Administrative Rule, 37.86.1105 (12/31/07).

[12] Per 5/21/08 Programs Notice eff. 7/1/08, the maximum dispensing fee for pharmacy providers will increase to $4.94. Out of state and new providers will remain at $3.50, and pharmacies not submitting a cost-to-dispense survey will remain at $2.00.

[13] Per 6/29/09 Programs Notice, effective 7/1/09, the maximum dispensing fee for pharmacy providers will increase to $5.04. In-state providers new to Medicaid will also receive an initial $5.04 dispensing fee. Out of state pharmacies will remain at $3.50.

[14] All information on this summary reviewed and verified as accurate in Peterson Declaration.

07/21/09

State of: __NEBRASKA__

Medicaid Pharmacy Reimbursement Methodology Summary

| | Prescription/Legend Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lowest of" Reimbursement Methodology [9] | | | | | Estimated Acquisition Cost (EAC) [7] | | | Physician Override (MC-6, Brand Medically Necessary) | Dispensing Fee | |
| Effective Time Period | Usual and Customary | Submitted Charge/Gross Amount Due | FUL Plus DF | EAC Plus DF | SMAC Plus DF | Pay the lower of: Brand/Generic | Schedule II Drugs | SMAC Description | | Added to calculated drug cost (FUL, EAC, SMAC) to set upper limit | Compound Drugs |
| 10/29/1987 [1] – 1/18/1993 | Y [1] | Y [1,8] | Y [1] | Y [1] | Y [1] | WAC ÷ 12.52 or AWP – 8.71% or DP [1,3] | 5 | 4 | Y | $2.84 – $5.05 [2,3] | 10 |
| 1/19/1993 – 12/31/2001 | Y | Y [8] | Y | Y | Y | AWP – 8.71% or DP [1,3] | 5 | 4 | Y | $2.84 – $5.05 [2,3] | 10 |
| 1/1/2002 – 10/1/2002 | Y | Y [1,8] | Y | Y | Y | AWP – 10% | | 4 | Y | $3.84 – $5.05 [3] | 10 |
| 10/2/2002 – 6/30/2007 | Y | Y [1,8] | Y | Y | Y | AWP – 11% | | 4 | Y | $3.27 – $5.00 [3] | 10 |
| 7/1/2007 – Present | Y | Y [1,8] | Y | Y | Y | AWP – 11% | | 4,6 | Y | $3.20 – $5.05 [3] | 10 |

▇ Data taken from Nebraska Medicaid State Plan Amendments

▇ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

▇ Data provided by Gary Cheloha, Pharmacy Consultant

▇ Data provided by Cheloha depositions taken 12/2/08 and 12/3/08

[1] Effective date, "lowest of", and BMN from Ex. Dey 912. EAC formulas from Cheloha deposition p.357. Up until about 2001, pharmacies purchased through a wholesaler or directly from a small number of manufacturers (This was determined from the 1980s survey). Manufacturers continued to raise their minimum purchase amounts so that eventually virtually no pharmacies bought "direct" (12/2/08 deposition pp. 279-283). Per Ex. Dey 913 (Mordy letter dated 5/12/1986) and Ex. Dey 914 (Provider Memo dated 1/19/1993), direct price companies included: Abbott, Ayerest, Lederle, Merck Sharpe and Dohme, Pfizer, Roerig, and Ross.

[2] NPCs 1991-1994 report that in addition to the assigned dispensing fee for each retail pharmacy, there is a "maintenance drug-month supply" supplemental fee of $1.00 for maintenance drugs used in a chronic manner. MS #87-18 includes general language (not specific fee of $1.00); language removed in MS-95-07 effective 4/26/1995.

[3] MS-87-18 references EAC = actual cost, which was determined by a survey performed by Dr. Jacobs or the direct price for seven manufacturers (12/2/08 deposition pp. 155-157, Dey Ex. 914). Beginning in 1996, fees for new stores were assigned the average dispensing fee of $4.66, which continues to be the practice today.

[4] Per 12/2/08 deposition pp. 129-137, State MAC rate-setting process has been generally the same since it was first implemented: looking at the availability and the difference between the price of the brand and the generic on a case-by-case basis and receive recommendations or information from providers, from Pace Alliance (purchasing organization), and from mailings from drug companies about the availability of their generic version of a brand name.

[5] Schedule II drug prices were set at the AWP in the mid-1980s (see Ex. Dey 913). On 8/1/1989, several CII drugs were added to the SMAC/FUL lists due to legislation that allowed substitution for all bioequivalent Schedule II controlled substances. Per Ex. Dey 914, on January 19, 1993, non-SMAC/FUL Schedule II drug prices were set at the AWP from Medispan. This ended sometime between 1996 and 12/6/2001, when Schedule II drug pricing was set to follow standard EAC pricing.

[6] Per 12/2/08 deposition, p. 137, there are about 1500 drugs that have either a SMAC or an FUL.

[7] Per Ex. Dey 914, the State initially used Medispan. Then from 1995 to present, the State's contracted POS vendor has contracted with First DataBank for pricing (12/3/08 deposition pp. 343-344).

[8] Per Ex. Dey 912 (TN #MS 87-18) and 12/2/08 deposition pp. 107-110, pharmacies are also required to complete the submitted charge (or gross amount due) field on each claim. Per the State, the only time that the submitted charge was not required was from the April 1995 Point of Sale implementation until September 15, 1997. During that time the state captured only the Usual and Customary and compared it to the calculated upper limit based on EAC, SMAC, or FUL, plus DF. (See also Ex. Dey 906)

[9] Beginning with TN #MS-87-18 (Ex. Dey 912), Nebraska pays the lowest of the (a) usual and customary, or (b) submitted charge, or (c) the calculated upper limit of FUL, EAC, or SMAC plus dispensing fee on each claim.

[10] Per 12/2/08 deposition pp. 286-288 (see also Abbott NE 004), until the point-of-sale system was implemented with First Health in 1995, IV therapy compounding was priced manually using an EAC of up to 100% AWP. After that, from about 1998 until 2003, the department required EAC to be the same as other drugs but allowed one dispensing fee per ingredient. After that all drugs were paid the same.

07/21/09

State of: **NEVADA**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Prescription/Legend Drugs "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC)[7] Brand/Generic | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | SUL[2]/FUL | EAC[7] | Actual/Billed Charge | SMAC | DOJ Pricing | | | | Outpatient Pharmacist Brand/Generic | Home Health IV | Nursing Facility IV |
| 1/1/1991 [1,9] - 9/30/1991 | Y | Y | Y | Y | N | | AWP - 10% [6] | | | $3.95 [6] | | |
| 10/1/1991 - 12/31/1994 | Y | Y | Y | Y | N | | AWP - 10% | | Y | $4.42 | $16.80 (1st); $5.60 (2nd)[3] | $11.20 (1st); $5.60 (2nd)[3] |
| 1/1/1995 - 9/30/1998 [9] | Y | Y | Y | Y | N | | AWP - 10% | | Y | $4.64 | $16.80 (1st); $5.60 (2nd)[3] | $11.20 (1st); $5.60 (2nd)[3] |
| 10/1/1998 [9] - 7/31/2002 | Y | Y | Y | Y | N | Y[8,9] | AWP - 10% | | Y | $4.76 [6] | $16.80 (1st); $5.60 (2nd)[3] | $11.20 (1st); $5.60 (2nd)[3] |
| 8/1/2002 - 12/16/2003 | Y | Y | Y | Y | N | Y[8,9] | AWP - 15% | | Y | $4.76 [6,9] | $16.80 (1st); $5.60 (2nd)[3] | $11.20 (1st); $5.60 (2nd)[3] |
| 12/17/2003 [5] - 12/14/2004 | Y | Y | Y | Y | Y | Y[8,9] | AWP - 15% | [4] | Y | $4.76 | $16.80 (1st); $5.60 (2nd)[3] | $11.20 (1st); $5.60 (2nd)[3] |
| 12/15/2004 - Present [9] | Y | Y | Y | Y | Y | Y[8,9] | AWP - 15% | [4] | Y | $4.76 | $22.40 per day | $16.80 per day |

■ Data taken from Nevada Medicaid State Plan Amendments

■ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and Declaration of John Liveratti dated 7/10/09

[1] Date established as 1/1/1991 because same pricing information was reported in 1990 NPC. Per 6/3/08 telephone call, State can not confirm any information prior to 1991. (Verified as accurate per Declaration.)

[2] Per TN #91-21 effective 10/01/1991: Payment for multiple source drugs shall be the lowest of (a) Specific Upper Limit (SUL) as established by the Health Care Financing Administration (HCFA) for multi-source drugs. The SUL reference was changed to FUL in TN #03-16. (HHD041-0245)

[3] Per TN #91-21 effective 10/01/1991 through TN #04-02 effective 01/01/04, the State's dispensing fees are defined as (a) those given to outpatient pharmacists at a rate of $X.XX per prescription; (b) those given to Home Health Care providers for home intravenous therapy at $16.80 per dose for the first medication and $5.60 per dose for a second medication given concurrently; (c) those given to pharmacists for Intravenous therapy in the nursing facility at $11.20 per dose for the first medication and $5.60 per dose for a second medication given concurrently. (HHD041-0248)

[4] Per TN #03-16 effective 12/17/2003: A generic drug may be considered for MAC pricing if there are 2 or more therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference. The SMAC will be based on drug status (Including non-rebateable, rebateable, obsolete, therapeutic equivalency ratings) marketplace availability and cost. The obsolete drug status will be taken into account to ensure that MAC pricing is not influenced by the prices listed for obsolete drugs. The SMAC will be based on drug prices obtained from a nationally recognized comprehensive date file maintained by a vendor under contract with the Department. (HHD041-

[5] Per TN #04-02 effective 01/01/2004: CMS has authorized the State of Nevada to enter into the Michigan multi-state pooling agreement. The model supplemental agreement entitled "Michigan Multi-State Pooling Supplemental Rebate Agreement: was submitted to CMS on January 16, 2004 and has been authorized by CMS. (HHD041-0224)

[6] Although TN #02-12 effective 8/1/2002 (HHD 041-0246) still shows standard dispensing fee at $4.64, the dispensing fee increase to $4.76 confirmed with Nevada Medicaid Policy News bulletin (N1502-06) dated August 2, 2002. This was later corrected in TN #03-16 effective 12/17/03 (HHD 041-0245). (Verified as accurate per Declaration.)

[7] Per State Plan Amendments and Medicaid Services Manual, First DataBank always used for pricing.

[8] Per Nevada Medicaid Services Manuals MTL 44/03 Section 1202 p. 1 dated 12/16/03 and MTL 25/06 dated 12/20/07, DOJ pricing was immediately implemented and remains in effect today. (Verified as accurate per Declaration.)

[9] Dates, dispensing fees, and other information reviewed and verified as accurate in Liveratti Declaration dated 7/10/09.

State of: **NEW HAMPSHIRE**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Legend/Prescription Drugs | | | | | | | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[5] | Physician Override (DAW, Brand Medically Necessary) | | | | Compounded Prescription |
| Effective Time Period | Usual and Customary | FUL | EAC[5] | SMAC | DOJ Pricing | Brand/Generic | | Brand | Single Source Brand | Generic/Branded Generic | |
| 7/1/1990[1] - 4/30/1994 | Y | Y | Y | N | | AWP - 10% | Y | $3.25[8] | $3.65[8] | $3.65[8] | $3.25[1] |
| 5/1/1994 - 1/31/1996 | Y | Y | Y | N | | AWP - 10% | Y | $3.25[8] | $3.65[8] | $4.15[8] | $3.25[1,6] |
| 2/1/1996 - 11/2/2001 | Y | Y | Y | N | Y[3] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | $2.50[1,6,7] |
| 11/3/2001 - 3/11/2004 | Y | Y | Y | Y[2] | Y[3,4] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | $2.50[1,7] |
| 3/12/2004 - Present | Y | Y | Y | Y | Y[3,4] | AWP - 16% | Y | $1.75 | $1.75 | $1.75 | $1.75[1,7] |

▬ Data taken from New Hampshire Medicaid State Plan Amendments

▬ Data provided by Farrand deposition taken 10/28/08 and exhibits and documents produced by the State of New Hampshire pursuant to subpoena

▬ Data provided by Donna Arcand, Pharmacy Financial Manager, DHHS

[1] Per TN 90-14 (HHD040-0166) et al., prescriptions for maintenance medications will be reimbursed only one time per 34 days, per recipient per provider, and any refill prescriptions for these maintenance medications within the 34 days will be reimbursed at the cost of the medication only. For compound drugs, payment is based on actual costs (ingredient cost and time of preparation) plus applicable dispensing fee. Per Exhibit Farrand USA 5 (NH05169) and deposition p.217, the labor rate for compounding is $.30 per minute. Per Dey Ex. 72 p. 6 (NH04057), however, regulation reads as follows: for compound prescriptions the payment shall be based on the pharmacy's actual ingredient cost plus cost of labor at the rate established by the Office of Medical Services, plus the dispensing fee; or the usual and customary charge to the general public, whichever is less.

[2] Per TN #01-11 (HHD040-0152) effective 11/03/2001, a State MAC program was implemented. This was part of the new PBM (Pharmacy Benefit Management) contract with First Health (Per Farrand deposition pp. 103 and 264 and Exhibits Farrand USA 9 and USA 10).

[3] DOJ pricing began when it was first introduced on 5/1/2001 and continues through today. (Farrand deposition pp. 135-137, 220 and 260.)

[4] NH put into effect special rules for Blood Factor products on the DOJ price list with reimbursements for dates of service on or after 2001 to pay at DOJ AWP and the dispensing fee. (See NH04139 and NH04694 dated 10/23/2001.)

[5] First DataBank has been used for pricing throughout the time period. (10/28/08 Farrand deposition pp. 68-69, 235)

[6] Per Dey Exhibit 76, NH Medicaid Bulletin Vol.I Issue IV, December 1995 page 11 (NH03376), effective January 1, 1996 dates of service, compound prescription payment will be based on the pharmacy's acquisition cost, plus a $2.50 dispensing fee, plus the cost of labor set at $0.30 per minute. Pharmacies will be reimbursed an additional $10.50 per day for sterile preparations for parenteral use.

[7] Per (NH04904) effective November 3, 2001, compounds submitted via POS for under $50 are paid at Usual and Customary. Claims over $50 must be submitted on the universal claim form. According to NH00863, the previous limit effective sometime after 12/23/1996 may have been $25. Per Farrand deposition pp. 213-215, home infusion therapies are paid like a compound, plus a $10.50 a day per diem.

[8] Dispensing fees per Exhibit Farrand USA 5 (NH05169).

State of: **NEW JERSEY**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Type | Prior Year Prescription Volume | Prescription/Legend Drugs - Methodology - Usual and Customary | FUL | EAC[5] | Estimated Acquisition Cost (EAC)[5] - Retail | AWP Discount Threshold[1] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fees - Base Dispensing Fee for Retail Pharmacies[2] | Dispensing Fee Add-Ons | Compounded Prescriptions | Long Term Care |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/1987 – 2/20/1995 | Category I | 1 - 14999 | Y | Y | Y | AWP | $24.99 | Y | $3.73 | 6 | 4 | 3 |
|  | Category II | 15000 - 19999 | Y | Y | Y | AWP - 2% | $24.99 | Y | $3.73 | 6 | 4 | 3 |
|  | Category III | 20000 - 29999 | Y | Y | Y | AWP - 3% | $24.99 | Y | $3.73 | 6 | 4 | 3 |
|  | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 4% | $24.99 | Y | $3.73 | 6 | 4 | 3 |
|  | Category V | 40000 - 49999 | Y | Y | Y | AWP - 5% | $24.99 | Y | $3.73 | 6 | 4 | 3 |
|  | Category VI | 50000 + | Y | Y | Y | AWP - 6% | $24.99 | Y | $3.73 | 6 | 4 | 3 |
| 2/21/1995 – 1/1/1996 | Category I | 1 - 14999 | Y | Y | Y | AWP |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category II | 15000 - 19999 | Y | Y | Y | AWP - 2% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category III | 20000 - 29999 | Y | Y | Y | AWP - 3% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 4% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category V | 40000 - 49999 | Y | Y | Y | AWP - 5% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category VI | 50000 + | Y | Y | Y | AWP - 6% |  | Y | $3.73 | 6 | 4 | 3 |
| 1/2/1996 – 7/14/1996 | Category I | 1 - 14999 | Y | Y | Y | AWP - 2% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category II | 15000 - 19999 | Y | Y | Y | AWP - 4% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category III | 20000 - 29999 | Y | Y | Y | AWP - 5% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 6% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category V | 40000 - 49999 | Y | Y | Y | AWP - 7% |  | Y | $3.73 | 6 | 4 | 3 |
|  | Category VI | 50000 + | Y | Y | Y | AWP - 8% |  | Y | $3.73 | 6 | 4 | 3 |
| 7/15/1996 – 6/30/2003 | Legend/OTC |  | Y | Y | Y | AWP - 10% |  | Y | $3.73 | 6 | 4 | 3 |
| 7/1/2003 – 7/7/2008 | Legend/OTC |  | Y | Y | Y | AWP - 12.5% |  | Y | $3.73 | 6 | 4 | 3 |
| 7/8/2008[8] – Present[7] | Legend/OTC |  | Y | Y | Y | AWP - 15% |  | Y | $3.73 |  | 4 | 3 |

■ Data taken from New Jersey Medicaid State Plan Amendments

■ Data provided by Vaccaro depositions taken 12/2/09 and 12/3/09

■ Data provided by Pharmacy Provider Bulletin (8/1/1988) and the New Jersey Pharmaceutical Services Manual (Rev. 11/87)

■ Data provided by DMAHS, DHS

[1] Per 12/2/08 deposition pp. 64-65 and 12/3/08 deposition p. 745 (and the New Jersey Pharmaceutical Services Manual (Rev. 11/87)). If the drug cost is greater than $24.99, then EAC = AWP with no discount applied. This threshold was terminated effective 2/21/1995.

[2] Per 12/2/08 deposition pp. 93-94 (See also New Jersey Health Services Program Newsletter dated August 1, 1998). The basic dispensing fee of $3.73 was established by state regulations effective 8/1/1988. However, additional increments are applied per prescription based on various criteria.

[3] Per TN #87-20B et al., long term care (LTC) pharmacies can be retail or institutional and are paid for ingredient costs according to the same EAC (regression) formula as non-institutional providers. Legend drugs for patients in approved long-term care facilities are, however, reimbursed according to a capitated fee schedule: LTC institutional providers are paid at 75% of the capitation rate, and LTC retail pharmacies are paid at 100% of the capitation rate. There may be a few institutional pharmacies, but the majority of pharmacies serving clients in long term care skilled nursing facilities are retail pharmacies.

[4] Per TN #87-20B et al., compound claims are paid by determining the reimbursement rate for each ingredient which includes subtracting the regression. These elements are then totaled and the dispensing fee is added to arrive at the total reimbursement. The NJ Medicaid program will reimburse a pharmacy provider up to $0.25 for any ingredient in a compound claim whose cost is less than $0.25.

[5] Per TN #96-29 (HHD037-0121) effective 7/15/1996, the state receives its pricing from First DataBank.

[6] Per TN #87-20B et al., additional increments are applied per prescription to the base dispensing fee based on various criteria: add $0.11 for 24-hour emergency service availability; add $.08 for Patient Consultation; and add $0.15 for Impact Allowance. Maximum dispensing fee is $4.07. (See also 12/2/07 deposition pp. 91-92.)

[7] Effective 7/8/2008, the $.08 add-on for Patient Consultation was eliminated. Therefore, additional increments applied per prescription to the base dispensing fee continue to be based on the following criteria: add $0.11 for 24-hour emergency service availability; and add $0.15 for Impact Allowance. Per 12/2/08 deposition p. 92, maximum dispensing fee is $3.99.

[8] Per State, effective date was 7/8/08 and not 7/1/08.

State of: **NEW MEXICO**

Medicaid Pharmacy Reimbursement Methodology Summary

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology – Pay the lower of each formula listed | | | | | Estimated Acquisition Cost (EAC)[6] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| Effective Time Period | Usual and Customary | FUL | EAC[6] | SMAC[1] | DOJ Pricing | Brand | Generic | SMAC Description | | Brand | Generic | Compound Drugs |
| 1/1/1991 - 6/30/1991 | Y | Y | Y | Y | | AWP - 10.5% | AWP - 10.5% | [2] | Y | $4.00 | $4.00 | |
| 7/1/1991 - 1/5/1992 | Y | Y | Y | Y | | AWP - 10.5% | AWP - 10.5% | [2] | Y | $4.25 | $4.25 | |
| 1/6/1992 - 6/30/1997 | Y | Y | Y | Y | | AWP - 10.5% | AWP - 10.5% | [2] | Y | $4.00 | $4.00 | |
| 7/1/1997 - 5/31/2002 | Y | Y | Y | Y | Y[7] | AWP - 12.5% | AWP - 12.5% | [2] | Y | $4.00 | $4.00 | |
| 6/1/2002 - 8/14/2004 | Y | Y | Y | Y | Y[7] | AWP - 12.5% | AWP - 12.5% | [2] | Y | $3.65 | $3.65 | |
| 8/15/2004 - Present | Y | Y | Y | Y | Y[7] | AWP - 14%[4] | AWP - 14%[4] | [3,5,9] | Y | $3.65 | $3.65 | $30[8] |

Data taken from New Mexico Medicaid State Plan Amendments

Data provided by Stevens 12/15/08 deposition and exhibits and documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456.

Data provided by Robert Stevens, NM Medicaid

[1] Per TN #91-06, SMAC is called State Allowed Cost (SAC) and was effective on 8/1/1982. (HHD076-0069, HHD076-0074)

[2] Per TN #91-06 et al., reimbursement is limited to a lesser-expensive therapeutically equivalent drug per the state Product Selection Act as amended and according to the "FDA Approved Therapeutically Equivalent Drugs" list.

[3] Per TN #04-10 (HHD076-0066) state allowed costs are established after (1) assuring availability of FDA A-rated therapeutically equivalent drugs using information available from the FDA and from the American Society of Hospital Pharmacists on drug shortages; and (2) determining the typical package size used. SAC amounts will be calculated at 150% of the lowest cost product (from among Medicare reimbursement prices when available manufacturer prices, wholesaler prices, and invoice prices) and will be at least 20% above the second lowest cost. This calculated amount may be lowered as follows: (1) To 60% of the average price of all available therapeutically equivalent multi-source drug products, but not below the cost for which an item is determined to be consistently and readily available from local wholesale sources in the state; or (2) When 2 or more therapeutically equivalent multi-source drug products are determined to be consistently and readily available from local wholesale sources within the state, the SAC may be lowered to the price at which the product is consistently and readily available.   Per State, issues with shortages are rare.

[4] Per TN #04-10 (HHD076-0066) EAC is equal to the lower of AWP-14%, the WAC as submitted to the state, the manufacturer price as submitted to the state, or the pharmacy invoice price as obtained through audits. This amount may be lowered as follows: (1) When the AWP-14% is shown not to approximate average acquisition cost, in which case EAC shall be the actual amount at which an item can be shown to be consistently and readily available; or (2) When a pharmacy practice is specialized or limited to the extent that its buying practices do not approximate a retail pharmacy and AWP-14% is shown not to accurately approximate the average actual acquisition costs, such as a pharmacy limited to mail order, limited to supplying items for chronic use, or an institutional or facility pharmacy with significant buying discounts not available to retail pharmacies. In these cases, the percent discount from AWP may range from 14%-20%, based on audited data, to more accurately approximate actual cost.

[5] Effective 12/1/04, many of the pharmacy claims began to be processed under the NMRx program, using Presbyterian Health Care as the PBM rather than ACS/PDCS. Presbyterian still sends the claim record showing payment, etc. for the MMIS System. The current state plan for SMACs was approved effective 8/15/04 but was not implemented until 12/1/04. Prior to that date, and still true for claims that are processed by ACS/PDCS (the PBM), the SMAC is slightly less stringent. (Price basis is 150% of lowest cost product; calculated price must be at least 20% above second lowest cost product; deviations occasionally required; and, if only one supplier available, MAC price is established at least 20% above cost of generic product.)

[6] Per deposition pp. 254-255, the program has used First DataBank since 1991.

[7] DOJ pricing was used from September 2001 through October 2006 but was seldom paid because the State MAC pricing was usually lower (deposition pp. 196-198).

[8] Per deposition pp. 200-224, beginning in 2006, the state allows pharmacies to bill for each of the ingredient costs and then the dispensing fee and then up to $30 for a compounding fee.

[9] Per deposition pp. 58-59 and Exhibit Dey 527 (p. 5 of the NM Pharmacy Service Provider Manual (MAD-MR:05-20)) effective 1/1/06, the State MAC methodology is based on the following criteria: 1) At least one A-rated generic is readily available; and 2) the State MAC for the brand name drug products and for all A-rated therapeutic equivalents shall be determined by taking the lowest available cost for all of the A-rated therapeutic equivalent drugs regardless of manufacturer, and multiplying that cost by a factor set by MAD to cover the pharmacy's estimated administration and overhead plus a dispensing fee.

07/21/09