# Exhibit 34

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

329

UNITED STATES DISTRICT COURT

OF THE DISTRICT OF MASSACHUSETTS

-------------------------------x

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL | : | MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | : | CIVIL ACTION |
| PRICE LITIGATION | : | 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | : | |
| U.S. ex rel. Ven-A-Care of | : | Judge Patti B. |
| The Florida Keys, Inc., | : | Saris |
| Plaintiff, | : | |
| vs. | : | |
| ABBOTT LABORATORIES, INC., | : | Chief Magistrate |
| No. 06-CV-11337-PBS | : | Judge Marianne B. |
| Defendants. | : | Bowler |

-------------------------------x

VOLUME II

Baltimore, Maryland

Thursday, September 27, 2007

Continued Videotape Deposition of:

LARRY REED,

the witness, was called for examination by counsel

for the Defendants, pursuant to notice, commencing

1    this with counsel, and we're not going to argue
2    about it here today, but I understand they're
3    still going to instruct the witness not to answer
4    any questions about that testimony, and then you
5    will review the issue and then have an answer for
6    us next time we come back.
7            MS. MARTINEZ:  Yes, we're going to
8    assert the investigatory files law enforcement
9    privilege.
10           MR. TORBORG:  Okay.  Thank you.
11           Secondly, the second housekeeping
12   matter I wanted to talk about with counsel was in
13   our meet and confers, we had discussed searching
14   Mr. Reed's e-mails for certain terms, and I had
15   sent you a list of those terms that we had asked
16   for you to review.
17           And I don't know if that's been done,
18   if a search of Mr. Reed's e-mails have been done
19   with those terms or any other terms, so I'd like
20   to get an understanding of if there will be more
21   documents from Mr. Reed being produced and if
22   those searches will be done.

352

1           MS. MARTINEZ:  We're working on that,
2   and we'll be happy to discuss that with you more
3   off the record.
4           MR. TORBORG:  Okay.  So as we sit here
5   today, taking the second day of Mr. Reed's
6   deposition, there are still potential documents
7   out there from his files, correct?
8           MS. MARTINEZ:  Potentially.  I mean,
9   some of these may have already been produced, but
10  we are working on making sure that anything in
11  the electronic documents is produced.
12          MR. TORBORG:  Okay.  Thank you.
13  BY MR. TORBORG:
14      Q.  Mr. Reed, yesterday we talked a bit
15  about the confidentiality provisions of the AMP
16  data contained in the OBRA legislation of 1990.
17          Do you recall that discussion?
18      **A.  Yes.**
19      Q.  Okay.  And I stated yesterday, I
20  believe you agreed with me, that the legislation
21  itself limited the information -- the disclosure
22  of that information to CMS, the states, and

1  certain contractors; is that right?

2       A.   Contractors for the states, that's
3  correct.

4       Q.   Correct.  And after a consultation that
5  CMS had with representatives of the states, some
6  manufacturers and some pharmacy provider advocacy
7  groups, a decision was made that the AMP
8  information would not be shared with the states.

9            Is that a fair summary of your
10 testimony?

11      A.   Yeah, that's correct.

12      Q.   Okay.  And did you have an
13 understanding of why it was that the information
14 was made confidential in the legislation to begin
15 with?

16           You were involved in drafting that
17 legislation, correct?

18      A.   I was involved in providing comments
19 back to managers within CMS on that legislation,
20 correct.

21      Q.   Okay.  Do you have an understanding of
22 why it is that the information was to be kept

                                                              354

1    confidential under the statute?
2        A.   I don't remember at that time having a
3    discussion of the confidentiality provision
4    specifically of the statute, if that's your
5    question.
6        Q.   Yes.
7        A.   I don't remember any particular
8    discussion of that part of the Act during that
9    time period.
10       Q.   And I believe I asked you this
11   yesterday and you were instructed not to answer,
12   but do you recall why it was that CMS determined
13   that the AMP information should not be shared
14   with the states? Do you recall the reasoning
15   behind that?
16       A.   Of not sharing the AMP information with
17   the states?
18       Q.   Correct.
19            MS. MARTINEZ:  You can answer to the
20   extent that it would not disclose the internal
21   deliberations of CMS related to that decision.
22            THE WITNESS:  Okay.  The information