# Exhibit USAbt-D

Chapman, Allen D.                    December 15, 2008
                    Denver, CO

Page 1

                UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------X

In Re: PHARMACEUTICAL INDUSTRY    )

AVERAGE WHOLESALE PRICE LITIGATION)

-------------------------------X MDL No. 1456

THIS DOCUMENT RELATES TO:       ) Master File No.

United States of America ex rel. ) 01-CV-12257-PBS

Ven-A-Care of the Florida Keys,  ) Subcategory Case

Inc., et al. v. Dey, Inc., et al.,) No. 06-11337

Civil Action No. 05-11084-PBS    ) Hon. Patti B.

-------------------------------X Saris


        VIDEOTAPED DEPOSITION OF:  ALLEN D. CHAPMAN

                December 15, 2008

        PURSUANT TO AMENDED NOTICE AND SUBPOENA,

the deposition of ALLEN D. CHAPMAN was taken on

behalf of Defendant Dey, Inc., at 1701 California

Street, Silverton Room, Denver, Colorado 80202, on

December 15, 2008, at 10:06 a.m., before Tammie E.

Singer, Professional Court Reporter and Notary

Public within Colorado.

Chapman, Allen D.                         December 15, 2008
                        Denver, CO

Page 145

1       Q.    Did I accurately state that, that Grant
2   -- the study performed by Grant Thornton found
3   that the Medicaid costs of dispensing when
4   determined by the prescription for Colorado in
5   2007 on average was $12.53, the 25th percentile
6   was $9.93, and the 75th percentile was $14.30?
7       A.    Correct.
8       Q.    So it would appear that -- according to
9   this study that dispensing costs did go up over
10  time?
11           MR. ANDERSON:  Objection, form.
12      Q.    (BY MR. KATZ)  Right?
13           MR. ANDERSON:  Objection, form --
14      A.    If you want to take any credence to
15  this study, yes.
16      Q.    You don't have any reason to disagree
17  with it, right?
18      A.    Yes, I do.
19      Q.    What's your reason to disagree with it?
20      A.    I think it's a political piece that was
21  done by the chain pharmacy that -- this group,
22  that was a lobbying piece to try to get

Chapman, Allen D.                    December 15, 2008
                     Denver, CO

Page 146

1    dispensing fees higher than what they are and --

2    where all of these pharmacies are filling

3    prescriptions every day for Medicaid as well as

4    private individual -- you know, private practice

5    contracts and that, and they are not paying

6    anything near that, so it's --

7         Q.   What --

8         A.   If you believe this study, every

9    pharmacy out there is going broke.

10        Q.   What evidence do you have that forms

11   the basis of that belief?

12        A.   What?

13        Q.   What's your evidence for that belief?

14             MR. ANDERSON:   Objection, form.

15        A.   I -- I haven't -- I haven't been

16   involved with pharmacy for six years, but I've

17   seen studies like this before.  And they -- and

18   if you go to the individual pharmacies they look

19   at, every one of them is completely happy filling

20   prescriptions for much less than what they are

21   talking about their costs here.

22        Q.   (BY MR. KATZ)  Do you have any personal

Chapman, Allen D.                        December 15, 2008
                         Denver, CO

1    knowledge with respect to this study performed by

2    Grant Thornton in 2007?

3         A.   No.

4              MR. ANDERSON:  Why'd you show it to him

5    then, Cliff?  It was well --

6              MR. KATZ:  I think your behavior

7    throughout this whole deposition has been

8    inappropriate, and I'm glad it's all on the

9    record.

10             MR. ANDERSON:  I'm glad that you are

11   abusing the witness, and so that's on the record.

12             MR. KATZ:  All I'm doing is asking

13   questions.

14             MR. ANDERSON:  With documents that are

15   well after his retirement.

16             MR. KATZ:  I've been at depositions

17   where you were asking questions about documents

18   that -- relating to a period where the person

19   wasn't employed either.

20             MR. ANDERSON:  Hmm.

21             MR. KATZ:  I'm allowed to use documents

22   to refresh the witness' recollection, and I'm

Chapman, Allen D.                        December 15, 2008
                        Denver, CO

Page 307

1       Q.    I understand.  Let me see if this will

2   more specifically refresh your memory.

3       A.    Okay.

4                 (Deposition Exhibit Chapman 003

5   was marked.)

6       Q.    What I've marked as Chapman Exhibit 3,

7   sir, is a copy of a federal regulation.

8   Specifically it's a Section 447.301 of Title 42.

9       A.    Right.

10      Q.    I'm going to direct your attention to

11  that definition there listed for estimated

12  acquisition cost, and I'll read it for the

13  record.

14                "Estimated acquisition cost means the

15  agency's best estimate of the price generally and

16  currently paid by providers for a drug marketed

17  or sold by a particular manufacturer or labeler

18  in the package size of drug most frequently

19  purchased by providers."  Did I read that

20  correctly --

21      A.    Yes.

22      Q.    -- other than getting a little tongue-

Chapman, Allen D.                         December 15, 2008
                    Denver, CO

Page 308
1     tied there?
2             Do you agree that that definition
3     comports with your understanding of how the
4     federal government has defined estimated
5     acquisition cost over the years?
6         A.   I remember reading the 42 CFR when I
7     first got there.  And I --
8         Q.   And --
9         A.   And I remember it, you know, being --
10    and this was basically what we would use when we
11    would do our state plan, is that it would have to
12    be in compliance with that.  But yes, I would
13    agree with that.
14        Q.   Well, thank you.  That was going to be
15    my next --
16        A.   Yeah.
17        Q.   -- question.  Did Colorado Medicaid try
18    to follow the def -- the federal definition of
19    estimated acquisition cost?
20        A.   Yes.
21        Q.   And to your knowledge, over the years
22    in implementing different reimbursement

Chapman, Allen D.                    December 15, 2008
                          Denver, CO

Page 309

1    methodologies, did Colorado Medicaid try to

2    achieve estimated acquisition cost as defined in

3    federal regulation?

4              MR. KATZ:  Objection to the form.

5         A.   I don't know much about that last piece

6    that we've been talking about, those 2002 ones

7    where I was not --

8         Q.   (BY MR. ANDERSON)  I --

9         A.   Okay.

10        Q.   I understand.  Limiting to --

11        A.   Limiting to the ones --

12        Q.   -- your experience --

13        A.   Limiting to the ones that I had -- I

14   had contact with and I think that we all worked

15   with this, and this was essentially part of that

16   federal review that, you know, when -- that

17   period of time between when the state submitted

18   something and the Fed people looked at that is

19   that they looked at this state plan amendment and

20   made sure it met with that or it would not get

21   approved.

22        Q.   And that was -- at least as you

Chapman, Allen D.                         December 15, 2008

Denver, CO

Page 310

1    understood it during your tenure at Colorado

2    Medicaid from 1990 through a portion of '95 and

3    then 1996 through a portion of 2002 --

4         A.    Correct.

5         Q.    -- that was the -- your experience?

6         A.    Right.

7               MR. KATZ:  Objection to form.

8         Q.    (BY MR. ANDERSON)  Is that right, sir?

9         A.    That's right.

10              MR. KATZ:  Objection to form.

11        Q.    (BY MR. ANDERSON)  And so as far as you

12   knew, the conduct and actions of Colorado

13   Medicaid were consistent with the federal mandate

14   concerning the definition of estimated

15   acquisition cost?

16        A.    That's right.

17              MR. KATZ:  Objection to the form.

18        Q.    (BY MR. ANDERSON)  Okay.  Now I'm going

19   to have some additional big-picture questions for

20   you.  Is there any way that Colorado Medicaid

21   could have manually processed pharmacy

22   reimbursement claims?