# Exhibit USAbt-I

NM Department of Human Services (Robert Stevens)                    December 15, 2008
Santa Fe, NM

Page 1

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------X
In Re:   PHARMACEUTICAL INDUSTRY      ) MDL No. 1456
AVERAGE WHOLESALE PRICE LITIGATION    ) Master File No.
------------------------------------) 01-CV-12257-PBS
THIS DOCUMENT RELATES TO:             )
United States of America ex rel.      ) Hon. Patti B.
Ven-A-Care of the Florida Keys,       )    Saris
Inc., et al., v. Dey, Inc., et al.,   )
Civil Action No. 05-11084-PBS;        )
and United States of America ex       ) DEPOSITION OF
rel. Ven-A-Care of the Florida        ) THE NEW MEXICO
Keys, Inc., et al., v. Boehringer     ) DEPARTMENT OF
Ingelheim Corp., et al., Civil        ) HUMAN SERVICES
Action No. 07-10248-PBS;              ) by ROBERT J.
and United States ex rel. Ven-A-Care) STEVENS
of the Florida Keys v. Abbott         )
Laboratories, Inc., Civil Action      ) DECEMBER 15,
Nos. 06-CV-11337 and 07-CV-11618      )    2008
------------------------------------X

Page 305

1  to is the survey done by Mr. Ricks which was done
2  prior to the increase to $4, correct?
3       A.   I believe that's true, yes.
4       Q.   If you'll look at the next page which
5  is Bates No. 0072, is that a true copy of the
6  state plan amendment effective January 6, 1992?
7       A.   Yes, it is.
8       Q.   And was that plan amendment approved by
9  the federal government?
10      A.   Yes, it is.  I might point out that
11  there is a typo at the top of the page that says
12  1991.  But it is actually 1992 as you can see on
13  the CMS HCFA stamp on the side of the document.
14      Q.   Okay.  And it was approved by HCFA on
15  November 13, 1992?
16      A.   Yes.
17      Q.   What was amended?
18      A.   The dispensing fee was lowered to $4.
19      Q.   Okay.  And what was the reason or the
20  reasons for the change?
21      A.   I believe that the reason was that the
22  administration at that time felt that more

NM Department of Human Services (Robert Stevens)                December 15, 2008
Santa Fe, NM

Page 306

1  attention should have been paid to the dispensing
2  fees that were being paid by other payers in the
3  state. And so they suggested going back to the
4  amount of $4.
5      Q.  Okay. And the -- when you say the
6  administrators felt that based on dispensing fees
7  paid by other payers in the state, do I
8  understand you to mean that those dispensing fees
9  at least on average were less than what New
10 Mexico was paying at the time?
11     A.  Yes.
12     Q.  If you take a look at the next two
13 pages, Bates Nos. 0068 and 0071, are those true
14 copies of the state plan amendment approved by
15 the federal government in April of 19 -- 18,
16 excuse me. In April of 1998?
17     A.  Yes, they are.
18     Q.  Okay. And what -- what was the -- what
19 was amended? And I'll refer your attention to
20 the estimated acquisition cost which is on the
21 first page of the plan amendment.
22     A.  Yes, the estimated acquisition cost

1        (Exhibit US-NM 007 marked.)
2   BY MR. RIKLIN:
3        Q.   Mr. Stevens, the court reporter has
4   handed you U.S. New Mexico Exhibit 7 which
5   appears to be a copy of a memo from the director
6   of the Medicaid Bureau of Health and Human
7   Services dated -- or stamped August 12, 1994.
8   Have you seen that document before?
9        A.   Yes, I do believe I've seen it before.
10       Q.   Take a look at page 2, the next to last
11  paragraph, beginning "We would also clarify our
12  policy that a dispensing fee determination must
13  be separate and distinct from the EAC
14  determination and unrelated to the cost of the
15  drug product.  In every instance, regardless of
16  the state determination of individual
17  prescription payment limits, the state must have
18  established the reasonable dispensing fees which
19  would be used to determine whether the state is
20  in compliance with the upper limits as specified
21  in current drug regulations at 42 CFR 447.331"
22  did I read that correctly?

1       A.    Yes.
2       Q.    Are you familiar with that federal
3    government policy?
4       A.    Yes.
5       Q.    Is your agency's reimbursement
6    methodology consistent or inconsistent with this
7    policy?
8              MR. JULIE:  Objection to form.
9              THE WITNESS:  It's consistent with that
10   policy.
11   BY MR. RIKLIN:
12      Q.    When New Mexico established a new EAC
13   based on a discount off AWP, did it base that
14   determination in any way on the cost of
15   dispensing drugs?
16             MR. JULIE:  Objection to form.
17             THE WITNESS:  No, we did not.
18   BY MR. RIKLIN:
19      Q.    Conversely when your state established
20   a new dispensing fee, did it make that
21   determination based in any way on the acquisition
22   cost of the drug?

1            MR. JULIE:  Objection to form.
2            THE WITNESS:  No, we do not.
3    BY MR. RIKLIN:
4        Q.    Does New Mexico have any practice or
5    policy of paying inflated acquisition costs in
6    order to make up for inadequate dispensing fees?
7        A.    No, we have specifically and
8    intentionally not done that over the years.
9            MR. JULIE:  Objection to form.
10   BY MR. RIKLIN:
11       Q.    And, in fact, you have previously
12   testified that in your opinion the dispensing
13   fees that New Mexico has enacted over the years
14   are reasonable fees, correct?
15       A.    Yes.
16       Q.    Mr. Stevens, does your fiscal agent
17   investigate the published drug pricing for
18   accuracy?
19           MR. JULIE:  Objection to form.
20           THE WITNESS:  No, they don't.
21   BY MR. RIKLIN:
22       Q.    Do the employees in your pharmacy

NM Department of Human Services (Robert Stevens)                    December 15, 2008
Santa Fe, NM

Page 322

1   BY MR. RIKLIN:
2       Q.   If a drug manufacturer had done that,
3   would your agency have approved that method of
4   increasing reimbursement?
5            MR. JULIE:  Objection to form.
6            THE WITNESS:  We would not have
7   approved of it.  It would be very difficult to
8   interrupt our actual methodologies for pricing
9   which take place automatically.  But I believe,
10  if I would have seen that information, I would
11  have reported it to our regional office in
12  Dallas.
13  BY MR. RIKLIN:
14      Q.   Has your agency ever given drug
15  manufacturers the authority to decide whether
16  dispensing fees are inadequate?
17           MR. JULIE:  Objection to form.
18           THE WITNESS:  No.
19  BY MR. RIKLIN:
20      Q.   Who has that authority?
21      A.   The state actually has the authority to
22  do that and then must usually justify it when --

Page 323

1    to the federal people when filing a state plan
2    amendment.
3        Q.   In your opinion would it be prudent to
4    give that sort of authority to drug
5    manufacturers?
6             MR. JULIE:  Objection to form.
7             THE WITNESS:  No, that would not.
8    BY MR. RIKLIN:
9        Q.   Why not?
10       A.   Well, because again I don't think they
11   would be looking at it from the perspective of
12   the Medicaid program.  And it's actually the
13   Human Services Department that's designated by
14   the federal government as the single state agency
15   for enforcing the Medicaid program rules.
16       Q.   Did New Mexico ever approve of any
17   manufacturer reporting and causing the
18   publication of falsely inflated AWPs?
19            MR. JULIE:  Objection to form.
20            THE WITNESS:  No.
21                 (Exhibit US-NM 008 marked.)
22   BY MR. RIKLIN: