# Exhibit USAbt-P

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------X

| | |
|---|---|
| In Re: PHARMACEUTICAL INDUSTRY ) | MDL No. 1456 |
| AVERAGE WHOLESALE PRICE LITIGATION ) | Master File No. |
| -----------------------------------) | 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:           ) | |
| United States of America ex rel.    ) | Hon. Patti B. |
| Ven-A-Care of the Florida Keys,     ) | Saris |
| Inc., et al. v. Dey, Inc., et al., ) | |
| Civil Action No. 05-11084-PBS,      ) | VIDEOTAPED |
| and United States of America ex     ) | DEPOSITION |
| rel. Ven-A-Care of the Florida      ) | OF MARGARET |
| Keys, Inc., et al. v. Boehringer    ) | CLIFFORD |
| Ingelheim Corp., et al., Civil      ) | |
| Action No. 07-10248-PBS and United  ) | OCTOBER 29, 2008 |
| States, ex rel. Ven-A-Care of the   ) | |
| Florida Keys v. Abbott              ) | |
| Laboratories, Inc. Civil Action     ) | |
| Nos. 06-CV-11337 and 07-CV-11618    ) | |

-----------------------------------X

Clifford, Margaret                                    October 29, 2008
                         Concord, NH

Page 209

1        A.    Yes.
2        Q.    Document exhibits -- or Exhibit 5
3   indicates that the department in May of 1994
4   established a dispensing fee that was higher for
5   generics than for branded products, correct?
6        A.    Correct.
7        Q.    Was that one of the ways that the
8   department encouraged the use of generics?
9        A.    Yes.
10       Q.    To your recollection, at any time
11  during your work for Health and Human Services in
12  New Hampshire, did the department ever have a
13  policy of encouraging the use of generics by
14  intentionally paying an inflated Estimated
15  Acquisition Cost?
16       A.    No.
17             MR. KATZ:  Objection, form.
18  BY MR. HENDERSON:
19       Q.    Did, to your recollection, did the
20  Health and Human Services ever intend to pay more
21  than a good faith estimate of acquisition costs
22  plus a dispensing fee?

Clifford, Margaret                                October 29, 2008
                         Concord, NH

Page 210

1              MR. KATZ:  Objection, form.
2              THE WITNESS:  No.
3     BY MR. HENDERSON:
4         Q.   To your knowledge, Ms. Clifford, did
5     the Health and Human Services in New Hampshire
6     ever determine an Estimated Acquisition Cost by
7     or based upon a consideration of the cost of
8     dispensing the drug?
9              MR. KATZ:  Objection, form.
10             THE WITNESS:  No.
11    BY MR. HENDERSON:
12        Q.   Did the department ever determine a
13    dispensing fee based on the cost of acquiring a
14    drug?
15             MR. KATZ:  Objection, form.
16             THE WITNESS:  No.
17             MR. BERLIN:  Just like to add, not sure
18    if Mr. Katz's objection covers it but objection
19    to foundation.  Because very first question was
20    if she had absolutely nothing to do with
21    reimbursement rates and that sort of thing; and
22    all of these questions go to that, so I would

Page 212

1              THE WITNESS:  No.
2      BY MR. HENDERSON:
3          Q.   And similarly, throughout the entire
4      time that you worked at the department -- well,
5      I'll just -- well, I'll repeat it just so it is
6      clear.  Did the department ever determine an
7      Estimated Acquisition Cost based upon a
8      consideration of the cost of dispensing a drug?
9          A.   No.
10             MR. KATZ:  Objection to form.
11     BY MR. HENDERSON:
12         Q.   And conversely, throughout the time
13     period that you were at the department, did the
14     department ever determine a dispensing fee based
15     on the cost of acquiring a drug?
16             MR. KATZ:  Objection, form.
17             THE WITNESS:  No.
18     BY MR. HENDERSON:
19         Q.   To your knowledge, throughout the time
20     period that you worked at the department, did the
21     department ever have a policy or practice of
22     paying an inflated Estimated Acquisition Cost for

Page 213

1  the purpose of making up for an inadequate
2  dispensing fee?
3            MR. KATZ:  Objection, form.
4            THE WITNESS:  No.
5  BY MR. HENDERSON:
6       Q.   I'm done with those exhibits and
7  actually if you'll hand them back, I'll put them
8  back in order so we can keep things.  Thank you.
9            I'm going to hand you Exhibit 80 which
10 I presume you've never seen this before, have
11 you?
12      A.   No, I have not.
13      Q.   And this, I think, is dated proposed
14 effective date of this is February 1, 1996.  This
15 describes the change in the payment rates for
16 drugs that became effective February 1, 1996 when
17 the EAC was changed from AWP minus 10 percent to
18 AWP minus 12 percent, and the dispensing fee was
19 lowered to $2.50.  Do you generally recall that
20 occurring?
21      A.   Yes.
22      Q.   And I can't recall, did you have any

1   reporting an AWP at that level while their real
2   prices are much, much lower, is that honest
3   reporting of Average Wholesale Prices in your
4   view?
5              MR. KATZ:  Objection, form.
6              THE WITNESS:  In my opinion, no.
7   BY MR. HENDERSON:
8       Q.    In your view, is it fraudulent?
9              MR. KATZ:  Objection, form.
10  BY MR. HENDERSON:
11      Q.    Let me withdraw that question and first
12  ask you, I'll ask you to assume that there's
13  evidence that Dey set its AWP with the intention
14  of creating an attractive spread between the
15  reimbursement amount, the Medicare and Medicaid
16  reimbursement amounts, and the actual costs, and
17  that was a reason for setting their AWPs.  In
18  your view, is that type of conduct fraudulent?
19             MR. KATZ:  Objection.
20             THE WITNESS:  I hate to use that word,
21  but --
22             MS. WEISSBARD:  You don't have to if

Clifford, Margaret                                          October 29, 2008
                        Concord, NH

Page 244

1    you don't want to.  I mean, do you feel like you
2    can give an opinion?
3              MR. HENDERSON:  If you have an opinion.
4              MS. WEISSBARD:  If not, you know --
5              THE WITNESS:  My opinion it is
6    deceiving, especially with the understanding that
7    state Medicaid program viewed the AWP as a cost
8    or close to that cost, and the discount taken off
9    of the AWP was to bring it closer to the actual
10   cost, then I think it was deceitful.
11   BY MR. HENDERSON:
12        Q.   All right.  And also I'd like to ask
13   you to assume that Roxane Laboratories also set
14   its AWPs anywhere's from 3 to 10 times higher
15   than actual prices in the marketplace knowing and
16   intending that state Medicaid programs would use
17   those AWPs that were published for purposes of
18   reimbursement.  In your view, is that deceiving?
19             MR. KATZ:  Objection, form.
20             THE WITNESS:  Yes.
21             MR. HENDERSON:  Let's take a five-
22   minute break and I got very little to go and I'll