# Exhibit USAbt-Q

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

----------------------------------X

IN RE: PHARMACEUTICAL INDUSTRY      ) MDL NO. 1456

AVERAGE WHOLESALE PRICE             ) CIVIL ACTION:

LITIGATION                          ) 01-CV-12257-PBS

----------------------------------X

THIS DOCUMENT RELATES TO            )

ALL CLASS ACTIONS                   )

----------------------------------X


VIDEOTAPED DEPOSITION OF THE NEW JERSEY DEPARTMENT
OF HUMAN SERVICES by EDWARD J. VACCARO


C O M P U T E R I Z E D   T R A N S C R I P T
of the stenographic notes of the proceedings in the
above-entitled matter as taken by and before MARY T.
NOVAK, a Certified Shorthand Reporter and Notary
Public of New Jersey, at the U.S. Attorney's Office,
402 East State Street, Trenton, New Jersey on
Tuesday, December 2, 2008 commencing at fifteen
minutes after nine o'clock in the forenoon.

```
 1      about the reimbursement methodology that New
 2      Jersey used to pay for drugs.
 3           A.   Okay.
 4           Q.   Okay.  First, does New Jersey reimburse
 5      claims for drugs?
 6           A.   Yes, it does.
 7                MS. YAVELBERG:  I'd like to mark this
 8      next as Exhibit 2.
 9                     (Document entitled Federal
10      Register / Vol. 52, No. 147 / Friday, July 21,
11      1987 / Rules and Regulations is received and
12      marked as Exhibit Vaccaro 002 for
13      identification.)
14           Q.   Mr. Vaccaro, I'm handing you a document
15      marked as Government Exhibit 2.  It is from the
16      Federal Register.  It is 52 Federal Register
17      28657, 1987.  And are you familiar with the
18      federal regulations regarding payment for
19      prescription drugs dealing with the Medicaid
20      program?
21           A.   Yes, I am.
22           Q.   And if I could draw your attention to
```

1    states.

2               MS. YAVELBERG:  I'd like to mark this

3    next document as Exhibit 5.

4               (A document entitled Department of

5    Health and Human Services dated August 12, 1994

6    from Director, Medicaid Bureau is received and

7    marked as Exhibit Vaccaro 005 for

8    identification.)

9       Q.   Mr. Vaccaro, I'm handing you a document

10   marked as Exhibit 5.  It is dated August 12, 1994

11   and the heading is Department of Health and Human

12   Services.  It's from the Director, Medicaid

13   Bureau.  Subject:  Expiration of Pharmacy

14   Reimbursement Moratorium Information to All

15   Associate Regional Administrators Division of

16   Medicaid.

17           Do you see that there?

18      A.   Yes, I do.

19      Q.   I'd like you to look on the back side

20   of this document and look at the paragraph near

21   the bottom which starts at "we would also

22   clarify".

Page 98

1            Do you see that there?
2        A.   Yes, I do.
3        Q.   Would you read that first sentence for
4    me?
5        A.   "We would also clarify our policy that
6    a dispensing fee determination must be separate
7    and distinct from EAC determination and unrelated
8    to the cost of the drug product.  In every
9    instance, regardless of the state determination
10   of individual prescription payment limits the
11   state must have established the reasonable
12   dispensing fees which would be used to determine
13   whether the state is in compliance with the upper
14   limits as specified in current drug regulations
15   at 42 CFR 447.331."
16       Q.   Thank you.  Regarding that first line
17   that you read, "the dispensing fee determination
18   must be separate and distinct from the EAC
19   determination and unrelated to the cost of the
20   drug product"; do you see that line there?
21       A.   Yes, I do.
22       Q.   Is your state's reimbursement

NJ Dept of Human Services (Edward J Vaccaro)                December 2, 2008
Trenton, NJ

Page 99

1  methodology consistent or inconsistent with that
2  policy?
3      A.   Consistent with that policy.
4      Q.   Does your state have, currently have
5  any practice or policy to pay inflated ingredient
6  costs in order to make up for inadequate
7  dispensing?
8           MR. KIM:  Objection to form.
9      A.   No.
10     Q.   Has your state ever had a policy or
11 practice of paying inflated ingredient cost in
12 order to make up for an inadequate dispensing?
13          MR. KIM:  Same objection.
14     A.   No.
15     Q.   Okay.  Now, I'd like to talk for a
16 couple of minutes about the claims processing
17 process.
18     A.   Okay.
19     Q.   You mentioned earlier that New Jersey
20 processed about 15,000,000 claims a year; is that
21 right?
22     A.   Correct.