# Exhibit 148

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp. et al.*
Civil Action No. 07-10248-PBS

Exhibit to the July 24, 2009, Declaration of James J. Fauci
In Support of Plaintiff's Motion for Partial Summary Judgment and
In Opposition to the Roxane Defendants' Motion For Partial Summary Judgment



*experience does matter*

# CASE:  Commonwealth of Massachusetts v. Mylan Laboratories Inc., et al.
# DATE:  October 3, 2007

Enclosed is the Original of the transcript of the testimony of **Arnold H. Shapiro** along with the errata sheet in the above-titled case.  Please have the witness read the deposition and sign the signature page before a Notary Public.

After the signature page has been notarized, please return the original transcript and errata sheets to the custodial attorney within 30 days of receipt for proper filing.

Thank you for your attention to this matter and please feel free to contact us with any questions or concerns.


Sincerely,

Henderson Legal Services



Encl.

Henderson Legal Services
Phone: 202-220-4158
Fax: 202-220-4162
Website: www.hendersonlegalservices.com

Page 1

```
              UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF MASSACHUSETTS

     CIVIL ACTION NO. 03-CV-11865-PBS

     ---------------------------------------X

     THE COMMONWEALTH OF MASSACHUSETTS,      )

               Plaintiff,                    )

          -against-                          )

     MYLAN LABORATORIES INC.; BARR           )

     LABORATORIES, INC.; DURAMED             )

     PHARMACEUTICALS, INC.; IVAX             )

     CORPORATION; WARRICK PHARMACEUTICALS    )

     CORPORATION; WATSON PHARMACEUTICALS,    )

     INC.; SCHEIN PHARMACEUTICAL, INC.; TEVA )

     PHARMACEUTICALS USA, INC.; PAR          )

     PHARMACEUTICAL, INC.; DEY, INC.; ETHEX  )

     CORPORATION; PUREPAC PHARMACEUTICAL     )

     CO.; and ROXANE LABORATORIES, INC.,     )

               Defendants.                   )

     ---------------------------------------X

                       Boston, Massachusetts

                       Wednesday, October 3, 2007

         Videotaped Deposition of ARNOLD H. SHAPIRO,
```

d9cb66a9-0c1e-415b-b9b9-0662e6640b62

Shapiro, Arnold H.                          October 3, 2007
Boston, MA

Page 2

1   held at the offices of Ropes & Gray LLP, One
2   International Place, Boston, Massachusetts 02110,
3   commencing at 9:39 a.m., before Justina M.
4   Pettinelli, RDR/CRR, a Notary Public for the
5   Commonwealth of Massachusetts.
6
7   A P P E A R A N C E S  O F  C O U N S E L
8   Attorneys for the Plaintiff:
9       THE COMMONWEALTH OF MASSACHUSETTS
10      OFFICE OF THE ATTORNEY GENERAL
11      By Peter A. Mullin, Esq.
12         Assistant Attorney General
13      One Ashburton Place
14      Boston, Massachusetts  02108
15      (617) 727-2200, Ext. 2382
16      peter.mullin@state.ma.us
17
18
19
20
21
22

Shapiro, Arnold H.                                          October 3, 2007
                              Boston, MA

Page 170

1    Q.  And what was your understanding of what
2    manufacturers had to disclose?
3    A.  They had to disclose the prices that they
4    were charging various customers of theirs.
5    Q.  And did you ever have an occasion to review
6    the definition of AMP in the federal regulations?
7    A.  I'm sure I looked at it.
8    Q.  So at some level, you had a basic
9    understanding of --
10   A.  I would have an understanding; I knew the
11   law; but AMP is something that the Feds dealt with
12   and not us.
13   Q.  Right.  And were there any occasions where
14   you had access to AMP data from any manufacturer?
15   A.  I believe that data is confidential within
16   HCFA.
17   Q.  But my question is:  Was there ever an
18   occasion where you had access to such data?
19   A.  No.  It's confidential data.
20   Q.  Did you ever ask any manufacturer for that
21   data?
22   A.  I might have.

Shapiro, Arnold H.                                              October 3, 2007

Boston, MA

Page 173

```
 1        Q.   Are you --
 2        A.   I'm not exactly --
 3        Q.   Is that your understanding?
 4        A.   Today I don't recall the formula and the
 5   method of derivation.
 6        Q.   Right.
 7        A.   But I do know that we were not privy to that
 8   information or to the process.
 9        Q.   Right.
10        A.   And there were perhaps instances where I
11   attempted to discuss it with the Feds, and I was
12   told don't go there.
13        Q.   Did you ever discuss the derivation of the
14   URAs with any other state Medicaid officials?
15        A.   Might have.  I don't recall it.
16        Q.   Now, going back to the federal upper limit
17   program, you earlier told me that you understood
18   that the federal upper limits were set on the basis
19   of the lowest published price; correct?
20        A.   That's what I -- after reviewing the
21   documents, that's my understanding.
22        Q.   But you also told me that the federal
```