# Exhibit 170

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp. et al.*
Civil Action No. 07-10248-PBS

Exhibit to the July 24, 2009, Declaration of James J. Fauci
In Support of Plaintiff's Motion for Partial Summary Judgment and
In Opposition to the Roxane Defendants' Motion For Partial Summary Judgment

Walker, Paula Sue - March 12, 2008 09:0:00 a.m.

```
1:1                UNITED STATES DISTRICT COURT
  2             FOR THE DISTRICT OF MASSACHUSETTS
  3
  4   IN RE: PHARMACEUTICAL   )MDL NO. 1456
  5   INDUSTRY AVERAGE        )
  6   WHOLESALE PRICE         )CIVIL ACTION:
  7   LITIGATION              )01-CV-12257-PBS
  8                           )
  9   THIS DOCUMENT RELATES TO)
 10   U.S. ex rel. Ven-A-Care )
 11   of the Florida Keys,    )
 12   Inc. v. Abbott          )
 13   Laboratories, Inc., et  )
 14   al. No. 06-CV-11337-PBS )
 15   _____)
 16
 17
 18            VIDEOTAPED 30(B)(6) DEPOSITION OF:
 19            CIGNA (PAULA SUE WALKER)
 20            Taken on Behalf of the Defendants
 21            March 12, 2008
 22
```

```
2:1                    The videotaped deposition of
  2       PAULA SUE WALKER, taken on behalf of the
  3       defendants, on the 12th day of March, 2008, in
  4       the Law Offices of Neal & Harwell, U.S. Bank
  5       Tower, Suite 1900, 150 Fourth Avenue, North,
  6       Nashville, Tennessee, for all purposes under the
  7       Tennessee Rules of Civil Procedure.
  8                    The formalities as to notice,
  9       caption, certificate, et cetera, are waived.
 10       All objections, except as to the form of the
 11       questions, are reserved to the hearing.
 12                    It is agreed that Katherine Gale
 13       being a Notary Public and Court Reporter for the
 14       State of Tennessee, may swear the witness and
 15       that the reading and signing of the completed
 16       deposition by the witness are not waived.
 17
 18
 19
 20
 21
 22
```

Walker, Paula Sue - March 12, 2008 09:0:00 a.m.

```
156:1   BY MR. HECK:
    2       Q.   I'd like to ask you to flip to -- I'm
    3   sorry, were you finished with your answer?
    4       A.   I said I can't tell you that it's
    5   accurate to date.  It was accurate at that time.
    6       Q.   Okay.  Now, actually, stay on that first
    7   page.
    8            Now, you indicate here that you used the
    9   Red Book to price your drugs.  Do you recall if you
   10   were using the annual Red Book publication or if
   11   you were using quarterly CDs to price drugs at that
   12   time?
   13       A.   We used the annual and the quarterly
   14   CDs.
   15       Q.   Now, did you maintain quarterly CDs
   16   after you used them for a given quarter?
   17            MR. HENDERSON:  Objection.
   18            THE WITNESS:  You can't.
   19   BY MR. HECK:
   20       Q.   Why can't you?
   21       A.   Once the time frame is out, you can't
   22   access that CD anymore.
```

Walker, Paula Sue - March 12, 2008 09:0:00 a.m.

```
157:1         Q.   So the CD ceases to work at that point;
    2    is that correct?
    3         A.   Correct.
    4         Q.   Were you aware that Red Book put out a
    5    monthly update as well as the quarterly CDs and the
    6    annual publication?
    7         A.   Yes.
    8         Q.   Did you ever use the monthly updates to
    9    price drugs for a given quarter?
   10         A.   No, not once we went to CDs, no.
   11         Q.   Do you know if you maintained -- I'm
   12    sorry, strike that.
   13              Do you know if you ever printed out
   14    information from Red Book quarterly CDs to use when
   15    you were pricing Part B drugs?
   16         A.   I can't remember.  Yes.
   17         Q.   You did?
   18         A.   Yes.
   19         Q.   Okay.  Did you maintain hard copies of
   20    those documents after you were done with a given
   21    quarter, or did you destroy those documents?
   22         A.   Yes.
```