# Exhibit 176

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v.  Boehringer Ingelheim Corp. et al.*
Civil Action No. 07-10248-PBS

Exhibit to the July 24, 2009, Declaration of James J. Fauci
In Support of Plaintiff's Motion for Partial Summary Judgment and
In Opposition to the Roxane Defendants' Motion For Partial Summary Judgment

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------X

In Re: PHARMACEUTICAL INDUSTRY    )

AVERAGE WHOLESALE PRICE LITIGATION )

---------------------------------X MDL No. 1456

THIS DOCUMENT RELATES TO:         ) Master File No.

United States of America ex rel.  ) 01-CV-12257-PBS

Ven-A-Care of the Florida Keys,   )

Inc., et al. v. Dey, Inc., et al., )

Civil Action No. 05-11084-PBS,    ) Hon. Patti B.

and United States of America ex   ) Saris

rel. Ven-A-Care of the Florida    )

Keys, Inc., et al. v. Boehringer  )

Ingelheim Corp., et al., Civil    )

Action No. 07-10248-PBS           )

---------------------------------X

VIDEOTAPED DEPOSITION OF

THE RHODE ISLAND DEPARTMENT OF HUMAN SERVICES

by PAULA AVARISTA

Providence, Rhode Island

Thursday, December 4, 2008

```
                                                              Page 2
 1                    A P P E A R A N C E S
 2
 3   On behalf of Boehringer Ingelheim Corp. and Roxane
 4   Laboratories:
 5
 6            SARA K. RANKIN, ESQ.
 7            Kirkland & Ellis LLP
 8            200 East Randolph Drive
 9            Chicago, IL  60601
10            312-861-3486
11            srankin@kirkland.com
12
13
14   On behalf of the United States of America:
15
16            BARBARA HEALY SMITH, ESQ.
17            Assistant United States Attorney
18            United States Courthouse
19            1 Courthouse Way, Suite 9200
20            Boston, MA  02210
21            617-748-3272
22            barbara.h.smith@usdoj.gov
```

1                        RE-EXAMINATION
2     BY MS. RANKIN:
3          Q.   I have a few follow-up questions for
4     you, Ms. Avarista.  In response to a question
5     from Ms. Smith, I believe she asked you what
6     benchmark Rhode Island Medicaid would use if a
7     WAC was not provided in the -- provided by the
8     manufacturer.  And I think answered AWP minus 15;
9     is that correct?
10         A.   Yes.
11         Q.   Now, do you know how long Rhode Island
12    Medicaid has been using AWP minus 15 as a --
13              MS. SMITH:  Objection.
14    BY MS. RANKIN:
15         Q.   -- substitute in those circumstances?
16         A.   Since the WAC pricing went in place,
17    January of '95.
18         Q.   January of '95.  Has it remained the
19    case that when a WAC is not provided that AWP
20    minus 15 percent could be used as a substitute?
21         A.   Yes.
22         Q.   Has that basis for reimbursement ever

1   been submitted in a State Plan to CMS, to your
2   knowledge?
3       A.   No.
4            MS. SMITH:  Objection.
5            THE WITNESS:  No.
6   BY MS. RANKIN:
7       Q.   Are you aware of any documentation that
8   shows that that basis for reimbursement is
9   permitted by CMS for Rhode Island Medicaid?
10      A.   No.
11      Q.   Who -- do you know who was responsible
12  for determining that AWP minus 15 percent would
13  be used in those instances?
14      A.   Me.
15      Q.   And how did you come up with the number
16  of AWP minus 15 percent?
17           MS. SMITH:  Objection.
18           THE WITNESS:  The WAC price for most
19  brand name drugs averages out to be AWP minus 15.
20  BY MS. RANKIN:
21      Q.   What about generic drugs?
22      A.   It is quite different in generics.

1   Q.   But the AWP minus 15 percent was used
2   as a substitute when WAC wasn't reported for
3   brands and generics, correct?
4   A.   Right, unless there was a direct price
5   or a federal upper limit, yes.
6   Q.   I believe you testified earlier that
7   you would review OIG reports relating to Medicaid
8   reimbursement in your position as chief of
9   pharmacy for Rhode Island Medicaid?
10  A.   I would read them, yes.
11  Q.   I'd like to refer back to Roxane
12  Exhibit 17.  This is an OIG report from August
13  13, 1996 entitled "Review of Pharmacy Acquisition
14  Costs For Drugs Reimbursed Under the Medicaid
15  Prescription Drug Program of the Florida Agency
16  For Health Care Administration."  The first
17  paragraph there states that most states reimburse
18  pharmacies for Medicaid prescriptions using a
19  formula which generally discounts the average
20  wholesale price by 10.5 percent.  The objective
21  of our review was focused on developing an
22  estimate of the difference between the actual

Page 235

1    also implementing a program to use an AWP
2    benchmark when WACs weren't reported for a
3    particular product?
4        A.   No.
5             MS. RANKIN:  Okay, I'll pass the
6    witness.  Do you guys have anything?  Brendan,
7    Carol?
8             MR. CYR:  I don't have anything, no.
9             MS. GEISLER:  I just have one question.
10   Well, maybe two.
11
12                    RE-EXAMINATION
13   BY MS. GEISLER:
14       Q.   When a WAC was not available from the
15   pricing compendia, you stated, I believe, Rhode
16   Island used AWP minus 15 instead of WAC; is that
17   correct?
18       A.   The WAC wasn't available, yes.
19       Q.   Was the reimbursement methodology still
20   a lesser of formula, lesser of the federal upper
21   limit, the usual and customary, or the AWP minus
22   15?

1    A.   Yes, it's always lesser of.
2    Q.   So the AWP minus 15 was only
3  substituted into the Estimated Acquisition Cost
4  calculation, not as opposed to the reimbursement
5  automatically being AWP minus 15; is that
6  correct?
7    A.   I don't understand the question.
8    Q.   If there were no WAC available for a
9  particular NDC at a particular time, the AWP
10 minus 15 was substituted into the Estimated
11 Acquisition Cost calculation, and then the
12 reimbursement methodology was the lesser of FUL,
13 U&C, or Estimated Acquisition Cost; is that
14 correct?
15   A.   Correct.
16        MS. GEISLER:  I have no more questions.
17        MS. SMITH:  I just have a couple.
18
19            RE-EXAMINATION
20 BY MS. SMITH:
21   Q.   Ms. Avarista, on the last three
22 exhibits that counsel drew your attention to,