# EXHIBIT 118
# CONTINUED

CONTRACT

Confidential

4/24/92

## HOME INFUSION PRODUCTS
## AND SERVICES AGREEMENT

This Home Infusion Products and Services Agreement ("Agreement") is made and entered into this ___28th___ day of ___April___, 1992, by and between Cedars-Sinai Medical Center, a California nonprofit public benefit corporation ("Medical Center") and Abbott Laboratories, an Illinois Corporation ("Abbott").

### RECITALS

A.  Medical Center owns and operates a general acute care hospital and related medical center facilities, including a home infusion program (the "Program"), principally located a 8700 Beverly Boulevard, Los Angeles, California 90048.

B.  Abbott owns and operates a health care company which develops and supplies a broad range of health care services and products, with a place of business located at 900 North Shore Drive, Lake Bluff, Illinois 60044.  Abbott operates a home infusion services business unit doing business as Abbott Home Infusion Services ("Abbott Home Services") and is licensed to provide pharmaceutical services.

C.  Medical Center desires to arrange for the provision of services, supplies and products for patients in its Program and Abbott desires to provide such services and supplies through the Abbott Home Services in accordance with the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties entered into this Agreement on the following terms and conditions:

1. <u>Services and Supplies.</u>

(a)  Abbott agrees to furnish certain billing services as described in Exhibit "A" hereto ("Billing Services") and certain patient care services and supplies as identified in Exhibit "B" hereto ("Services" or "Supplies") requested by Medical Center for Program patients ("Patients").  The "Services" and "Supplies" are sometimes referred to collectively as "Program Services."

(b)  As used in this Agreement, home infusion therapy includes the treatment of any Patient who requires one or more of the following therapies in a home environment:  total parenteral nutrition ("TPN"), total enteral nutrition ("TEN"), intravenous antibiotic therapy, chemotherapy pain management and any other parenteral therapy which may be developed and mutually approved by both parties for use during the term of this Agreement.

(c)  To the extent the Medical Center performs any compounding services, Abbott shall provide Medical Center with certain manufactured compounding product components, supplies and services,

Confidential

("Product") in accordance with the schedule provided in Exhibit "C" attached hereto.

2. Method for Ordering Program Services and Products.

Pursuant to physician orders(s), Medical Center shall request Program Services by telephone at (310) 949-2800 or by facsimile transmission at (310) 949-5945. At the time of the request, Medical Center shall provide the following:

(a)  Patient Data:  name, address and phone number, Social Security number, diagnosis and functional impairment, height and weight, ability to ambulate, and level of consciousness;

(b)  Hospital Data:  name, address and phone number, and contact person;

(c)  Reimbursement Data:  name of payor, address and phone number, and group and/or policy number(s);

(d)  Therapy Data:  type of therapy; prescription (dosage, route, interval and duration); and type of available enteral or parenteral access; and

(e)  Start Date.

3. Patient Training.  Before delivering or selling any Program Services to Medical Center Patients, Medical Center shall insure that such Patients (i) will either be attended by a duly licensed/certified health professional trained and skilled in the Program services program prescribed for such Patient (including, where appropriate, the use of Abbott electronic flow control devices) or (ii) has been properly trained and educated to participate in the Program Services prescribed for such patient (including, where appropriate, the use of Abbott electronic flow control devices).  In addition, Medical Center shall have on file signed certifications documenting the satisfactory completion of patient training.  Such documentation shall be consistent with that contained in Exhibit "D" attached hereto.

4. Compensation.  Medical Center agrees to compensate Abbott for the Billing Services, Program Services and Products provided under this Agreement based upon the schedules set forth in Exhibits "A", "B" and "C" attached hereto.  Abbott shall invoice Medical Center monthly for Billing Services, Program Services and Products rendered during the previous month.  Medical Center shall pay the undisputed portion of each such invoice within forty-five (45) days of Medical Center's receipt thereof.  Abbott shall provide Medical Center with a notice of any overdue and undisputed amounts and reserves the right to assess Medical Center a late payment fee of (0.83%) per month on the full amount due, on overdue amounts.  Once a notice of overdue amounts is given, Medical Center shall have thirty(30) days to pay before the late payment fee is initiated.  All invoices and notices of late payment shall be sent to Medical Center to the attention of the Director of HomeCare.

5. Alternative Arrangements.  If Abbott is unable to meet the requirements for any of the Supplies, Services or Products to be

2

provided under this Agreement from its existing inventory, Abbott shall arrange an appropriate alternative, which is equivalent to that which Abbott is required to provide under this Agreement and is otherwise approved by Medical Center's Director of the Home Care Division of Patient Care Services ("Director"), without any additional charge to Medical Center.

6. Employees.

(a)   Abbott and Medical Center, each at its sole cost and expense, shall provide all personnel necessary to perform its obligations under this Agreement.

(b)   Abbott's and Medical Center's personnel will be made aware of the confidentiality obligations agreed upon by both parties under this Agreement.

(c)   All Abbott services provided under this Agreement will be supervised by an Abbott Pharmacy Manager.  Abbott shall provide a Pharmacist and a clinical coordinator who shall act as liaisons between Abbott and Medical Center.  The Pharmacy Manager or that person's delegate shall be available to provide assistance to Medical Center on a twenty-four (24) hour basis, seven (7) days per week, including holidays.  Subject to the prior mutual agreement of the two parties, Abbott, from time to time, shall provide other qualified personnel who shall provide informational and other support services related to this Agreement, without additional charge to Medical Center.

(d)   Abbott shall comply with all laws, regulations and ordinances related to its employment procedures and shall pay all applicable personnel taxes related to the payments made by Medical Center hereunder.  Medical Center will not withhold payroll taxes for Abbott or its employees.

(e)   In the event that Medical Center has reasonable cause to request that any Abbott employee or independent contractor who is providing Services or Supplies to any Program Patients in relation to this Agreement no longer provide such Services or Supplies to Medical Center Patients, Abbott shall cooperate in suspending or terminating such person's services to any Medical Center Patients.

7. Program Service and Product Information.   Abbott shall provide Medical Center personnel with all necessary information concerning Billing Services, Program Services and Products and shall provide periodic in-service instruction to Medical Center personnel as needed.

8. Use of Name.   Neither Abbott nor Medical Center shall use the other party's name, symbol, trademarks, service marks or logo in any advertising, promotional materials or similar document without the prior written approval of the other party, which may be given or withheld at the sole discretion of that party.

9. Records of Services.   Abbott shall maintain accurate records of all Billing Services and Products provided to Medical Center and all Program Services delivered to Medical Center Patients pursuant to this Agreement.  Upon Medical Center's written request, Abbott shall afford Medical Center reasonable opportunity, to examine the Billing

3

Confidential

ABT-DOJ 319817
ABT279-1815

Service, Program Service and Products records, during normal working hours.  Upon reasonable notice, Clinical Records of Medical Center Patients shall be available to the Medical Center.  As mutually agreed, Abbott shall provide Medical Center with monthly reports on all Billing Services and Program Services provided under this Agreement.

10. **Term and Termination.**

(a)  The initial term of this Agreement shall commence on May 1, 1992 and shall remain in full force and effect for a period of three (3) years, and this Agreement shall be subject to renewal for additional one (1) year terms based upon the written agreement of the parties, unless sooner terminated in the manner set forth below.

(b)  Either party may terminate this Agreement at any time upon one hundred twenty (120) days prior written notice of intent to terminate the Agreement.

(c)  Either party may terminate this Agreement upon thirty (30) days prior written notice, if the other party materially breaches this Agreement and fails to cure fully the breach within the notice period. If the breaching party does not fully cure the breach or if the breach recurs, this Agreement shall be deemed terminated at the end of the thirty (30) day period unless the non-breaching party, in its sole and absolute discretion, elects to waive the subject breach.

(d)  Notwithstanding any other provision of this Agreement, this Agreement may be terminated immediately in the event of (i) any material breach which presents a risk to patient health or safety; (ii) loss of insurance; or (iii) any loss of licensure which affects the ability of the subject party to perform its obligations under this Agreement.

(e)  This Agreement may also be terminated in the event of any occurrence beyond the control of either party (force majeure) which makes it impractical or unreasonable for either party to continue to abide by the terms and conditions of this Agreement.  If such event occurs, the party affected by the force majeure shall use its best efforts to overcome the force majeure.  If unsuccessful, the other party may terminate this Agreement by giving written notice of its election to terminate and termination shall become effective thirty (30) days after such notice.

(f)  In no event shall any termination permitted by this Agreement affect the rights or obligations of either party which may have accrued prior to termination, including but not limited to reimbursement for any Billing and/or Program Services rendered prior to the effective date of termination.

11. **Insurance.**  Abbott and Medical Center, each at its sole cost and expense, shall maintain and furnish the following insurance coverages issued by an insurance company or companies or otherwise maintained through a funded self-insurance retention program which the other party shall reasonably approve:

(a)  Comprehensive Liability:  This policy shall include, without limitation, products, contractual and general liability coverage.

4

Confidential

This policy's liability limits shall not be less than five million dollars ($5,000,000). Liability limits shall not be less than one million dollars ($1,000,000) for automobiles.

(b) Professional Liability: This policy shall cover acts and omissions of negligence with respect to the Services provided under this Agreement. This policy's liability limits shall not be less than One Million Dollars ($1,000,000) per occurrence.

(c) Worker's Compensation: All employees shall be covered by a policy of Worker's Compensation Insurance which complies with the laws of the state in which that person is employed.

Abbott and Medical Center shall maintain on file at all times certificates evidencing such insurance coverages as are required in this Section 11.

12. Indemnification. Each party hereto hereby agrees to indemnify and hold harmless and defend the other party and the other party's officers, directors, employees, independent contractors, agents and representatives insofar as it may legally do so, from and against all liabilities, damages, costs (including attorneys' fees), expenses or payments of any sum or sums of money due to persons whomever on account of claims, suits, liens, garnishments, attachments, cost including costs of any investigation and defense (collectively "Claims") growing out of or allegedly growing out of injuries to persons, including death or damage to property and from any negligent act or omission of the indemnifying party or its officers, directors, employees, independent contractors, agents or representatives, and for any claims of an employee or former employee of the indemnifying party, in any way attributable to employment practices (including, but not limited to, any practice or conduct which are or are alleged to be in violation of any statue, common law, regulation, policy or administrative interpretation or guide concerning wage and hour practices, health and safety, workers' compensation, employment discrimination, payroll taxes, labor relations, wrongful discharge, tortuous conduct, breach of the employment relationship to which such party is bound or any other act of employment), or by reason of the breach of failure to perform any covenant, representation or warranty of this Agreement.

13. Customer Satisfaction. The Medical Center and Abbott shall mutually establish a customer satisfaction program to ensure that the quality of Program Services rendered by Abbott meets the standards of Medical Center.

14. Quality Assurance. Abbott shall adhere to the highest standards in performing its obligations under this Agreement. Abbott shall maintain a quality assurance program which is more fully described in Exhibit "D".

15. Confidentiality.
(a) Abbott and Medical Center acknowledge the confidential nature of all information disclosed by the other party to it. Each party acknowledges that such information contains confidential information about the other party's business. Abbott and Medical Center agree that they will not, without the prior written consent of

Confidential

ABT-DOJ 319819
ABT279-1817

the other party, use such information for any purpose other than the performance of its obligations under this Agreement.

(b)   Abbott and Medical Center further acknowledge and agree that this Agreement creates a relationship of confidence and trust on the part of both parties.  During the term of this Agreement, either party may be responsible, in whole or in part, for the creation of, or may acquire from or regarding the other party's employees, agents and representatives or documents, or otherwise as a result of performing the obligations hereunder, certain proprietary information or trade secrets including, without limitation, accounting and financial data, product, marketing, development, pricing and related business plans and budgets, which are not published or otherwise part of the public domain.  Both parties acknowledge and agree that all such information is and shall be deemed the sole, exclusive, confidential and proprietary property and trade secrets of the other party at all times during the term of this Agreement and following any expiration or termination hereof.  Abbott and Medical Center agree to hold in strictest confidence without disclosing or otherwise using any confidential information, except as such disclosure or use may be required in connection with and limited to the obligations hereunder.

(c)   Upon termination of this Agreement by either party for any reason, Abbott and Medical Center shall immediately return to the other party material identified by the other party as constituting or containing confidential information, and the other party shall thereafter not use, appropriate or reproduce such information or provide such information to any third party.

16.   **Modification of Services.**  If during the term of this Agreement, Medical Center elects to provide directly any Billing Services or any of the Program Services, rather than continue to purchase any such Supplies or Services from Abbott, Medical Center must provide ninety (90) days prior written notice of its intent to do so.  If the service the Medical Center elects to provide is a discrete function, then those prices related to that discrete service will no longer be charged to the Medical Center.  If the service the Medical Center elects to provide is not a separately identifiable service then those related prices will be adjusted by mutual agreement.  Under no circumstances will Abbott provide only Billing Services and/or Delivery Services in the absence of any other Program Services.

17.   **Nondiscrimination.**  Abbott warrants and agrees that all obligations performed pursuant to this agreement shall be as follows:

(a)   In compliance with all nondiscrimination laws, statutes, regulations and ordinances, including, but not limited to Equal Employment Opportunity laws which prohibit discrimination against any employee or applicant for employment because of race, color, religion, sex, mental or physical handicap, national origin, sexual orientation or Vietnam era veteran status.

(b)   Abbott will not discriminate on the basis of age and will comply with all provisions of the Age Discrimination in employment Act of 1967 and related legislation.

6

Confidential

(c)   Abbott will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations and relevant orders of the Secretary of Labor.

(d)   Abbott will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the Secretary of Labor or their authorized agents for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(e)   In the event of Abbott's noncompliance with any of the nondiscrimination provisions of this Agreement, this Agreement may be cancelled, terminated or suspended in whole or in part.

18.   Books and Records.   For the purpose of implementing paragraph 1861 (v) (1) (I) of the Social Security Act, as amended, and any regulations promulgated pursuant thereto, Abbott agrees to comply with the following statutory requirements covering the maintenance of documentation to verify the cost of services rendered under this agreement until the expiration of four years after furnishing of any such services pursuant to such contract, Abbott shall make available, upon written request to the Secretary or upon request to the Comptroller General, or any of their duly authorized representatives, the contract, the books, documentation and records that are necessary to certify the nature and extent of such costs, and

(a)   If Abbott carries out any of the duties of the contract through a subcontract with a value or cost of $10,000 or more over a twelve month period, with a related organization (as that term is defined with regard to a provider in 42 C.F.R. £413.17), such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related organization shall make available, upon written request to the Secretary, or upon request to the Comptroller General, or any of their duly authorized representatives, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of the cost of services rendered under the subcontract.

(b)   If Abbott is requested to disclose books, documents or records pursuant to Social Security Act 1861 (V) (1) (i) and 42 C.F.R. £420.300 et_., Abbott shall promptly notify Medical Center of the nature and scope of such request and Abbott shall make such books, documents or records disclosed available to Medical Center and Medical Center may copy same at Medical Center's expense.

19.   Independent Contractors.   It is expressly understood and agreed that this Agreement is not intended and shall not be construed to create a relationship of agent (except for Billing Services), servant, employer/employee, landlord/tenant, partnership or joint venture between Abbott and Medical Center, but rather is an agreement by and between independent contractors.

20.   Nonassignment.   This Agreement shall not be assigned by either party without the prior written consent of the other party.

7

Confidential

21. <u>Notice.</u>  Any notice given under the terms of this Agreement shall be in writing and shall be given personally, by facsimile transmission or by certified or registered United States mail, postage prepaid and return receipt requested and addressed or delivered to the parties at the following addresses (or such other address as may hereafter be designated by a party by written notice thereof to the other party).  The date of service of the notice shall be the date of actual personal service or facsimile transmission or the postmark on the certified or registered mail.

If notice is given to Abbott, it shall be at the following address:

>           Abbott Laboratories
>           Abbott Home Infusion Services
>           900 North Shore Drive
>           Lake Bluff, Illinois  60044
>           Attention:  General Manager
>           Facsimile Number:  (708) 937-9424

If notice is given to Medical Center, it shall be at the following address:

>           Cedars-Sinai Medical Center
>           8700 Beverly Boulevard
>           Los Angeles, CA  90048
>           Attention:  Geraldine Popolow, M.S.N., R.N.
>           With a copy to:  Peggy Mueller, M.S., R.N.
>           Facsimile Number:  (310) 854-6046

22. <u>Governing Law.</u>  The laws of the State of California shall govern the interpretation and construction of this Agreement.

23. <u>Dispute Resolution.</u>  The parties agree that any dispute that arises in connection with this Agreement shall be resolved by binding Alternative Dispute Resolution (ADR) in the manner described in Exhibit E, attached hereto.

24. <u>Waiver.</u>  No waiver of any provision shall constitute a waiver of any other provision, nor shall any waiver constitute a continuing waiver.  no waiver shall be binding unless executed in writing by the party making the waiver.

25. <u>Non-Exclusive.</u>  The Agreement is non-exclusive and shall not prohibit the parties from entering into contracts with other hospitals and home infusion providers, respectively, for any Billing Services, Program Services or Products.

26. <u>Authority.</u>  Each party executing this Agreement hereby represents and warrants that he or she has full authority to enter into this Agreement, to bind the party upon whose behalf such individual has executed this Agreement, and to perform the services required under this Agreement.

8

ABT-DOJ 319822
ABT279-1820

27.  _Headings._  The headings which are used in this Agreement are for convenience only and shall not affect in any manner the meaning or interpretation of this Agreement.

28.  _Entire Agreement._  This Agreement constitutes the entire agreement between the parties hereto and supersedes all other prior written and oral agreements, representations and understandings.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both of the parties hereto.

IN WITNESS WHEREOF, the parties to this Agreement have duly executed it as of the date first above written.

Abbott Laboratories,
an Illinois Corporation
("Abbott")

By:      _[signature]_

Its:     _Manager, Contracting & Bus. Dev._

Date:    _5 May 1992_

Cedars-Sinai Medical Center,
a California nonprofit Corporation
("Medical Center")

By:      _[signature]_

Its:     _Vice President: Patient Care Services_

By:      _[signature]_

Its:     _Director, Nursing Administrative Services_

Date:    _4/28/92_

CDRSSI
Kfile

9

Confidential

EXHIBIT "A"

Billing Services

1.   <u>Billing and Collecting.</u>  Abbott shall act as billing agent for Medical Center's Program.  In that capacity, Abbott shall be responsible for billing and collecting for all Program Services and products provided by Medical Center, including those services and supplies provided by Abbott, except that Abbott shall not be responsible for billing any home care skilled nursing services provided by a home health agency under separate contract with Medical Center.

(a)  Abbott shall verify the insurance/third party reimbursement status of all Patients relative to the stated diagnosis and intended treatment.  Abbott shall promptly notify Medical Center of any Patient who does not have insurance coverage for the prescribed treatment.

(b)  The Medical Center shall establish the rates to be charged to third party payors of medical benefits and/or the Patients for Program Services and Products provided.  In the event the Medical Center requests that Abbott implement price changes on behalf of the Medical Center, the Medical Center shall provide Abbott with no less than fourteen (14) working days prior written notification of such changes.

(c)  Abbott shall prepare and collect all primary and secondary billings for Home Infusion Therapy supplies and services provided by Medical Center directly or by Abbott.  Abbott shall submit to each Patient and/or third party payor all bills and necessary documentation required in order to obtain payment for Program Services.  In seeking such payment Abbott shall act as agent for Medical Center.  In connection with this Agreement and with this obligation, Medical Center hereby appoints Abbott as attorney-in-fact for Medical Center during the term of this Agreement for the following purposes:

(i)  To bill Patients and Patients' payors on behalf of Medical Center; and

(ii)  To track and monitor all collections on accounts receivable generated by such billings on behalf of Medical Center.

(d)  Abbott shall provide Medical Center with a detailed collection report which shall indicate the service provided, the date the service was provided, the amount billed, the primary amount paid, the secondary amount paid and the balance due for each Patient account.

10

Confidential

ABT-DOJ 319824
ABT279-1822

EXHIBIT "A"

Billing Services
(Con't)

(e)   If Abbott determines that a Patient account is uncollectible, Abbott shall (i) notify Medical Center; (ii) provide information concerning the Patient's identity, billing and collection history, and indicia for write-off; and   (iii) dispose of any such account according to the procedures to be jointly established by the two parties.

(f)   Medical Center, at its expense, shall provide a lock box dedicated exclusively to the receipt of program collections.   Medical Center shall arrange to transmit directly to Abbott a photocopy of the total contents of each envelope related to the program, including checks; a photocopy of deposit slips, a list of checks deposited showing the total amount deposited; and a photocopy of any other correspondence, including but not limited to, all provider communication regarding program instructions, changes and other provider related information, within five (5) days of receipt into lock box.

(g)   In the event program collections (receipts)are not forwarded to the designated lock box, the following shall apply.

1)   Abbott shall continue to follow-up with the third party payor to ascertain whether or not the claim has been paid.

2)   Once Abbott is verbally notified that the claim has been paid, Abbott shall forward the following information to Medical Center: Third party payor name, address and telephone number;  Patient's name, policy number and group number; Dates of service; Total amount billed; Amount paid for Program Services, when available; and Name and address of payee.  Abbott shall also attempt to obtain a copy of the canceled check as requested by the Medical Center.

3)   Medical Center shall be responsible for locating the checks, explanation of medical benefits and other correspondence and forwarding copies of same to Abbott.

4)   In the event Medical Center is not able to provide Abbott copies of the checks, explanation of medical benefits and other correspondence within ninety (90) days of the date the notification referenced above is forwarded to Medical Center, Abbott shall remove the record from the active accounts receivable ledger.  Such records shall be assigned a code utilized for this

11

Confidential

ABT-DOJ 319825
ABT279-1823

EXHIBIT "A"

Billing Services
(Con't)

purpose only, and Abbott shall provide Medical Center
with monthly and year-to-date totals.  Such amounts shall
be deemed collected for purposes of calculating the
compensation due Abbott.

5)  Abbott shall not be required to provide follow-up on
checks after the notification referenced above is
forwarded to Medical Center.

(h)  Abbott shall receive, as compensation for acting as
billing agent in accordance with this Exhibit A, a fee ("Billing
Agent's Fee") equal to six and one-half percent (6.5%) of the amounts
collected and/or deemed collected as described in Section (f) above.

(i)  Abbott shall not act or fail to act in any manner to
cause Medical Center to be out of complicance with the terms and
conditions of the agreement to be entered into by and among Abbott,
Medical Center and Transamerica attached as Schedule I.

12

Confidential

EXHIBIT "B"

Program Services Schedule

1.   Abbott shall provide Program Services in accordance with the attached schedules.

2.   All Program Services to be provided by Abbott directly to Patients at Medical Center's request shall be delivered by Abbott to the location designated by Medical Center.  For all patients to whom Abbott delivers Supplies, in accordance with this Agreement, Abbott shall provide assistance in monitoring the Patient's inventory of Supplies to ensure proper stock, rotation and re-order.

3.   Prices are based on the use of Abbott manufactured products. There will be an upcharge for all non-Abbott manufactured products substituted for the use of Abbott manufactured product, unless no Abbott manufactured product is available.

13

Confidential

ABT-DOJ 319827
ABT279-1825

### TOTAL PARENTERAL NUTRITION

#### Schedule of Fees

| Patient Regimen | Price |
|---|---|
| Compounded TPN Solution (1) | |
| Grams of Protein | |
| 10 - 51 | $ 86.00/Bag |
| 52 - 73 | 102.00/Bag |
| 74 - 100 | 111.00/Bag |
| 101 - 125 | 148.00/Bag |
| 126 + | 168.00/Bag |
| Liposyn 10% with gravity set | $ 22.00/500ml |
| Liposyn 20% with gravity set | $ 39.00/500ml |
| Pump Administration (2) | |
| Stationary | $ 10.00/Day |
| Ambulatory | 16.00/Day |

(1)   Price includes compounded product and standard ancillary supplies.  Compounded product includes amino acids, dextrose, sterile water, electrolytes, trace elements and vitamins.  Prices are based on use of Abbott products.  An upcharge will be billed for use of Non-Abbott products, as follows:

| | |
|---|---|
| Amino Acids | $   35.00/500ml |
| I.V. Fat Emulsion | 10.00/500ml |
| Pump/Set | 10.00/Day |
| Other TPN Additive | Product AWP |

(2)   Minimum Rental of thirty (30) days.  Rental on pumps provided to Medicare patients shall be capped at fifteen (15) months.

14

Confidential

ABT-DOJ 319828
ABT279-1826

EXHIBIT B
(Page 2 of 8)

### TOTAL ENTERAL NUTRITION

Schedule of Fees

| Patient Regimen | Price (1) |
|---|---|
| Enteral Nutrients (2) | $ .90/8oz. can |
| Administration Equipment Supplies | |
| -  Administration Supplies | 8.00/day |
| -  Electronic Drug Delivery System (3) (4) | 8.00/day |

(1)   Prices are based on use of Abbott products.  An upcharge will be billed for use of Non-Abbott products, as follows:

-   Enteral Solution          $ .85/8oz. can

(2)   Includes:  Ensure, Ensure Plus, Osmolite, Enrich, Jevity

(3)   Minimum rental of fourteen (14) days.  Price assumes use of Abbott manufactured Electronic Drug Delivery Systems.  Use of Non-Abbott manufactured Electronic Drug Delivery Systems will be assessed an upcharge of $5.00/day.

(4)   Rental on pumps provided to Medicare patients shall be capped at fifteen (15) months.

15

Confidential

ABT-DOJ 319829
ABT279-1827

EXHIBIT B
(Page 3 of 8)

I.V. ANTIBIOTIC (Includes DHPG)

Schedule of Fees

Patient Regimen

| Peripheral Vein/Central Line | Per Diem Price (1) |
|---|---|
| Q24H  (1 dose/day) | $ 62.00 + AWP |
| Q12H  (2 doses/day) | 89.00 + AWP |
| Q8H  (3 doses/day) | 112.00 + AWP |
| Q6H  (4 doses/day) | 124.00 + AWP |
| Q4H  (6 doses/day) | 143.00 + AWP |
| Q3H  (8 doses/day) | 176.00 + AWP |
| Disposable Pump Administration | $ 25.00/Each |
| Pumps Administration  (2) Stationary Ambulatory | $ 10.00/day (3) 16.00/day (3) |

(1)   Price includes therapeutic drug in partial fill container and standard ancillary supplies.  Prices are based on use of Abbott products.  There will be an upcharge for all other products provided unless a substitution is required for medical reasons or no Abbott manufactured product is available.  Customer and Abbott agree to negotiate in good faith the amount of the upcharge, according to products and supplies required by the patient's prescription.  AWP equals Average Wholesale Price.

(2)   Minimum rental of fourteen (14) days.

(3)   Price assumes use of Abbott manufactured pumps and sets.  Use of Non-Abbott manufactured pumps and sets will be billed an upcharge of $10.00/day.

Confidential

ABT-DOJ 319830
ABT279-1828

## CHEMOTHERAPY

### Schedule of Fees

| Patient Regimen | Price (1) |
|---|---|
| **Compounded Chemotherapy Products** | |
| Compounded Syringe | $ 46.00/Each+AWP (2) |
| Compounded Solution in Bag | 72.00/Each+AWP (2) |
| **Pump Administration (3)** | |
| Stationary | $ 10.00/Day (4) |
| Ambulatory | 16.00/Day (4) |

(1) Price includes compounded product and patient supplies.  Prices are based on use of Abbott products and Abbott sets.  There will be an upcharge for all other products provided unless a substitute is required for medical reasons or no Abbott manufactured product is available.  Customer and Abbott agree to negotiate in good faith the amount of the upcharge according to the products and supplies required by the patient's prescription.

(2) AWP = Average Wholesale Price

(3) Minimum rental of fourteen (14) days.

(4) Price assumes use of Abbott manufactured pumps and sets.  Use of Non-Abbott manufactured pumps and sets will be assessed an upcharge of $10.00/day.

17

Confidential

## PAIN MANAGEMENT

### Schedule of Fees

| Patient Regimen | Price (1) |
|---|---|
| Compounded Solution in Bag | $  62.00/Bag+AWP (2) |
| Pump Administration | |
|     Stationary | $  10.00/Day (3) |
|     Ambulatory | 16.00/Day (3) |

(1)   Price includes compounded product and patient supplies.  Prices are based on use of Abbott products and Abbott Sets.  There will be an upcharge for all other products provided unless a substitute is required for medical reasons or no Abbott manufactured product is available. Customer and Abbott agree to negotiate in good faith the amount of the upcharge according to the products and supplies required by the patient's prescription.

(2)   AWP = Average Wholesale Price

(3)   Minimum rental of fourteen (14) days.  Price assumes use of Abbott manufactured pumps and sets.  Use of Non-Abbott manufactured pumps and sets will assessed an upcharge of $10.00/day.

Confidential

ABT-DOJ 319832
ABT279-1830

I.V. HYDRATION

Schedule of Fees

| Patient Regimen | Price (1) |
|---|---|
| Fluid (1) | |
| Up to  1200ml | $ 31.00/Bag |
| 1201 - 2200ml | 37.00/Bag |
| 2201ml + | 42.00/Bag |
| Patient Additives | $  5.00+AWP (2) |
| Pump Administration | |
| Stationary | $ 10.00/Day (3) |
| Ambulatory | 16.00/Day (3) |

(1)  Includes Hydration Fluid and patient supplies.

(2)  AWP = Average Wholesale Price

(3)  Minimum rental of fourteen (14) days.  Price assumes use of Abbott manufactured pumps and sets.  Use of Non-Abbott manufactured pumps and sets will assessed an upcharge of $10.00/day.

19

Confidential

ABT-DOJ 319833
ABT279-1831

EXHIBIT B
(Page 7 of 8)

## CATHETER CARE

### Schedule of Fees

| Patient Regimen | Price (1) |
|---|---|
| **Catheter Care Supplies** | |
| -   Single Lumen | $  8.50/day |
| -   Double Lumen | $ 12.00/day |

(1)  Price includes standard supplies only not Abbokinase.

20

Confidential

ABT-DOJ 319834
ABT279-1832