## E.    PUMP WARRANTIES

1.    The PROVIDER® One Plus and the Abbott AIM™ Devices carry a standard warranty of two (2) years. All other Electronic Drug Delivery System Devices carry a standard warranty of one (1) year. Batteries for all of the pole mounted devices, excluding the ambulatory infusion devices, carry a standard ninety (90) day warranty. Therefore, during those periods Abbott will service and repair or, at its option, replace device(s) covered by this Agreement, which fail to function properly during normal operation. Abbott's warranty to repair or replace the device(s) shall be the sole remedy hereunder and Abbott shall not be responsible for any indirect or consequential damages or losses of any kind.

2.    All Service will be performed at:

Abbott Ambulatory Infusion Systems Service Facility
15330-B Avenue of Science
San Diego, CA 92128
(800) 338-7867

Abbott may specify other locations for service by notifying CMHR.

3.    For Service, CMHR must contact the Abbott Service Facility. Prior authorization including a Returned Goods Authorization number must be obtained from the Service Facility before a Device is returned for service.

4.    Device(s) requiring service must be packed securely and shipped to the Service Facility freight prepaid.

5.    This service policy excludes: (i) disposable batteries for the ambulatory infusion device(s); (ii) abused Devices; (iii) any Device that has the Serial Number altered, defaced removed.

## ARTICLE 4: SERVICES

Abbott shall provide CMHR access to the following consulting services, training sessions, and resource materials:

## A.    ELECTRONIC INFUSION DEVICE RN CERTIFICATION PROGRAM:

Abbott shall provide Provider® 6000, Provider® One Plus, and Abbott *aim® Plus* training programs certifying clinician trainers in device and troubleshooting knowledge once per year for the term of this Agreement.

10/20/98

Confidential

ABT-DOJ 350949
ABT282-2506

**B.   ENGINEERING SERVICES**

Abbott shall consult, at CMHR's option, up to ten (10) hours per year for the term of this Agreement, with CMHR on pharmacy equipment specifications and acquisition criteria for set-up of a Home Infusion Pharmacy. Engineering consulting includes either local site visits, or telephone support.

**C.   PHARMACY SERVICES**

1.  Training at Abbott Park Pharmacy
    Abbott shall provide up to ten (10) days of training for CMHR pharmacy personnel at the Abbott Park Pharmacy on CMHR's own patients prior to opening its own Home Infusion Pharmacy.
2.  Pharmacy policy and procedure Guidelines
    Abbott shall provide to CMHR, at CMHR's option, copies of its guidelines to support CMHR's development of pharmacy policies and procedures for use by CMHR.
3.  Technical Pharmacy Support
    Abbott shall provide consultation with CMHR on general pharmacy operations, personnel training requirements, pharmacokinetics and other pharmacological techniques and other activities related to the operation of the pharmacy, as mutually agreed, up to ten (10) hours per year, for the term of the Agreement.

**D.   CLINICAL STAFF CONTINUING EDUCATION:**

Abbott has developed over thirty (30) Continuing Education Programs on parenteral and enteral therapies for specific disease states and outcomes. These programs are designed for clinicians and certified case managers and are available either in a classroom setting or for self-study. Abbott shall work with CMHR personnel to determine needs and scheduling at various times over the term of this agreement.

**E.   SALES TRAINING:**

Sales training programs will be offered by Abbott annually and are intended for personnel chartered to sell CMHR's pharmacy programs to potential referrals. Abbott shall incur the tuition expense for one person from CMHR to attend a selling skills session per year of this agreement. CMHR shall be responsible for associated travel and lodging expenses.

10/20/98

ABT-DOJ 350950
ABT282-2507

**F.   ABBOTT HOME INFUSION NETWORK ACTIVITIES:**

1.     Abbott shall provide CMHR access to the Annual Executive Conference on Home Infusion. CMHR shall be responsible for associated travel and lodging expenses.

2.     Abbott shall provide CMHR with its quarterly newsletter entitled *Home Infusion Topics.*

**G.   REIMBURSEMENT CONSULTING AND TRAINING**

Abbott shall provide a one-time five (5) day reimbursement training course to CMHR at Abbott Park prior to the commencement of this Agreement. Abbott will also assist CMHR with obtaining Medicare and Medicaid Provider numbers.

**H.   REIMBURSEMENT**

Abbott offers to provide CMHR with Reimbursement Services, under the terms of a separate agreement, for seven and one-half (7.5%) percent of net collections. CMHR reserves the right to assume reimbursement services with one hundred and twenty (120) days written notice provide to Abbott.

**I.   LOGISTICS**

Abbott shall provide up to ten (10) hours of assistance with product usage identification, development of inventory stocking lists for all supplies, and share Abbott's criteria for contracting with courier services.

**J.   24-HOUR CLINICAL SUPPORT**

Abbott, at its expense, shall maintain a twenty-four hour toll-free CMHR service line, staffed by a registered nurse, for professional-to-professional consultation.

---

**SECTION II: CHIP COMPUTER SOFTWARE SYSTEM AGREEMENT**

---

### RECITALS

WHEREAS, CMHR is a provider of home care services; and

WHEREAS, Abbott designs, develops, distributes and licenses certain proprietary computer software products which support the management of a home care business; and

10/20/98

Confidential

ABT-DOJ 350951
ABT282-2508

WHEREAS, CMHR desires to receive a non-exclusive license to such software products; and

WHEREAS, Abbott, through the Home Infusion Services business unit of its Hospital Products Division, desires to grant CMHR a non-exclusive license to Abbott's software product(s);

NOW, THEREFORE, in consideration of the premises and the covenants and agreements contained herein, the parties agree as follows:

## ARTICLE 1:  LICENSING AGREEMENT

A.  Effective on the commencement date of this Agreement, Abbott grants CMHR a six (6) month non-exclusive and non-transferable license and access to use Abbott's CHIP System Home Infusion Services Software ("CHIP System"), afterwhich CMHR has the option continue to utilize CHIP on ongoing basis under the terms of a separate agreement.

B.  The CHIP System is confidential, proprietary material owned and copyrighted by Abbott.  As such Abbott shall retain all right, title and interest in and to the CHIP System and all modifications, improvements and updates, training programs, documentation and all intellectual property rights to the CHIP System.   The CHIP System, training programs, documentation, and related materials may not be modified, transferred, copied, photocopied, reproduced, translated, or reduced to any electronic medium with machine readable form, in whole or in part, without the prior written consent of Abbott; provided however, one copy of the CHIP System training materials and documentation may be made solely for back-up purposes.

C.  At CMHR's option, Abbott shall provide and maintain the hardware and operating system(s) required (IBM AS400 computer system, operating systems) to operate the CHIP System software and provide CMHR access to such software on a timeshare, dial-up basis.

D.  CMHR shall be responsible for the procurement, installation, testing, and maintenance of all computer and operating software system(s) required at CMHR location(s) (Computer terminals/PCs operating systems, printers, cabling, etc.) to access, communicate, and utilize the CHIP System software.   CMHR agrees that such equipment and software shall be compatible with that utilized by Abbott (IBM AS400).

E.  Under this agreement, CMHR agrees to participate in Abbott Home Infusion Service's CHART (CHIP Analysis and Reporting Tool – JCAHO approved benchmarking tool allowing for ORYX compliance) program for as long as CHIP is utilized.   This agreement allows Abbott to

10/20/98

Confidential

consolidate data from your proprietary database for benchmarking purposes. All data will be kept confidential. In order to ensure the integrity of the benchmarking reports, CMHR agrees to (a) maintain a minimum of 80% of all required data each quarter and (b) adhere to data standards as defined by Abbott and the network.

F.   Abbott shall provide a "CHIP System Support Center", located on Abbott premises, to answer phone questions related to the use of the CHIP System. The CHIP System Support Center shall be staffed from 7:00 AM to 7:00 PM, Central Time; Monday through Friday, except for Abbott observed holidays.

G.   Abbott will provide CMHR with CHIP training as per Schedule III.

## ARTICLE 2: CHIP TERMS/CONDITIONS

### A.   WARRANTY

1.   Abbott warrants that it has full title and ownership of the CHIP System. Abbott further warrants that it has the full power and authority to grant the license granted by this Agreement and that the license to use the CHIP System will not constitute an infringement or other violation of any copyright or patent of any third party.

2.   Abbott warrants that the CHIP System shall perform in accordance with the provided documentation. If the CHIP System fails to perform in accordance with the documentation supplied, the CMHR shall inform Abbott of the problem and Abbott shall use its reasonable best efforts to correct the problem promptly without additional cost to the CMHR.

### B.   AUDIT AND INSPECTION

1.   CMHR agrees that for the full term of this Agreement of the license granted under Section II Article I. A. of this Agreement, CMHR shall maintain complete records with respect to the use of the CHIP System, and the number and type of end user sites and users.

2.   Upon Abbott's written request, CMHR shall afford Abbott or its designees reasonable opportunity, during normal business hours, to audit and review those records necessary to confirm that CMHR has complied with all of the terms of this Agreement and the license granted hereunder.

10/20/98

Confidential

ABT-DOJ 350953
ABT282-2510

## SECTION III: AGREEMENT TERMS AND CONDITIONS

## ARTICLE 1: COMPENSATION

**A.   PAYMENT TERMS:**

Abbott shall invoice CMHR monthly for products shipped and pump rentals as defined in this Agreement and CMHR agrees to pay for such products pursuant to the terms hereof. Prompt payment terms shall be net sixty (60) days, after date of invoice. Abbott reserves the right to assess CMHR a late payment fee of one and one-half percent (1-1/2%) per month on overdue amounts.

**B.   LOST PUMPS**

Abbott shall invoice CMHR within sixty (60) days of the commencement of this Agreement, for any infusion or enteral pumps that have been documented to be in CMHR's possession prior to the start of this Agreement and at the termination of this Agreement, but cannot be accounted for within thirty (30) days of a physical inventory and hence deemed missing/lost. CMHR shall be billed at a percentage (based on the amount of time the pump was in service prior to being classified as lost) of the used price for pumps.

## ARTICLE 2: YEAR 2000 WARRANTY

Abbott warrants that the products manufactured by Abbott under this Agreement have been designed or will be modified prior to December 31, 1999, at the expense of Abbott, in such a manner that such products will continue to operate as a system in accordance with the published performance specifications for such products when used during any year prior to, during, or after the calendar year 2000. For certain products, manual intervention may be required.

This Warranty does not cover any defects or malfunctions which (I) result from the use of any disposable product not supplied by Abbott; (ii) are caused primarily by the failure to comply with any requirement or instruction contained in the current operation manual for the product; or (iii) result from maintenance, repair, or modification performed without the authorization of Abbott.

Abbott's liability for all matters arising from the supply, installation, use, repair and maintenance of Products, whether arising under this Warranty or

10/20/98

Confidential

ABT-DOJ 350954
ABT282-2511

otherwise, shall be limited solely to the repair or (at Abbott's sole discretion) replacement of the instrument or of components thereof. In no event shall Abbott be liable for injuries sustained by third parties, incidental or consequential damages, or lost profits. Replaced parts shall become the property of Abbott.

The foregoing is the sole Warranty made by Abbott regarding the year 2000 and Abbott specifically disclaims all other Warranties regarding year 2000 compliance, express or implied, including the warranties of merchantability and fitness for a particular purpose and any Warranty regarding the operation of these products in connection with any other instrument and/or operating or data management systems.

## ARTICLE 3: TERM/TERMINATION

### A.    TERM:

The initial term of this Agreement shall be effective on September 1, 1998 and terminate five years after the effective date, with ninety (90) days written notice of termination. After the initial term, this Agreement shall be automatically extended for successive one (1) year periods unless and until either party terminates this Agreement as herein provided.

### B.    TERMINATION:

1.    In the event either party commits a breach of this Agreement, the non-breaching party shall notify the breaching party, in writing, of its intent to terminate this Agreement unless said breach is cured within ninety (90) days. In the event the breaching party has demonstrated good faith efforts to cure the breach, but has not completely cured such breach, the other party may grant the party in breach an additional ninety (90) days to cure such breach. Such extension shall not be unreasonably withheld.

2.    To the extent permitted by law, this Agreement shall automatically terminate in the event of the bankruptcy or insolvency of either party.

3.    Either party may terminate this Agreement after August 31, 2003 and August 31st, of each year of the contract extension. Written notice of termination shall be provided with ninety (90) days' notice of that party's intent to terminate the Agreement.

4.    In no event shall any termination permitted by this Agreement affect the rights or obligations of either party, which may have accrued prior to termination, including but not limited to, reimbursement for

10/20/98

Confidential

ABT-DOJ 350955
ABT282-2512

any products or services rendered prior to the effect date of termination.

5.    In the event of termination of this Agreement, CMHR agrees to return to Abbott all software documentation, PC Training program diskettes, training materials, manuals, copies of manuals and machine readable media provided by Abbott; to remove the CHIP System from all computers on which it was loaded; and to certify in writing that it has removed all copies of the CHIP System from all computers and has returned or destroyed all copies of the CHIP System.

6.    Liquidated Damages: CMHR shall pay Abbott a sum equal to ten (10%) percent of that portion of Purchaser's Minimum Committed Volume not purchased in that twelve (12) month period in addition to any other amount to which Abbott is entitled pursuant to this Agreement.

7.    The foregoing notwithstanding, Abbott shall provide CMHR biannual product reviews of Products covered by this Agreement and further shall provide CMHR with 60 days advanced written of its intent to exercise the Liquidated Damages Provision against CMHR.

---

| ARTICLE 4: OTHER TERMS/CONDITIONS |
|---|

## A.    RELATIONSHIP OF PARTIES:

Nothing herein contained shall be construed to make the parties hereto partners or members of a joint venture relationship, or to create a trust or partnership, or to impose a trust or partnership, on or with regard to any of the parties.  Each party shall be responsible for its own obligations and liabilities as herein provided. No party shall be under the control of or shall be deemed to control the other. No party shall be the agent or representative of the other party or have a right or power to bind the other party without such parties' express written consent. The parties shall be in the relationship of independent contractors.

10/20/98

Confidential

## B.  INSURANCE AND INDEMNIFICATION:

1) Insurance:
   Each party, at its sole expense, shall procure and maintain during the term of this Agreement such policies of general liability, professional liability and other insurance (including self-insurance) as shall be necessary to insure it, its employees and agents against any claim or claims for damages arising by reason of bodily injury, death or tangible property damage directly or indirectly caused by or in connection with the performance of this Agreement. Each of such policies shall be in amounts reasonably acceptable to the other party, but shall not be less than $1.0 million per person for bodily injury, death or tangible property damage. Each party shall deliver an insurance certification to the other party upon request.

2) Indemnification:
   (a) Abbott shall indemnify, hold harmless and defend CMHR, its Affiliates and their employees and agents from and against any and all loss, claims, causes of action, costs or expenses, including reasonable attorney's fees, arising from bodily injury, death or tangible property damage caused by any wrongful or negligent act or omission of Abbott, its employees or agents in the performance of their obligations or duties under this Agreement.

   (b) CMHR shall indemnify, hold harmless and defend Abbott, its employees and agents from and against any and all loss, claims, causes of action, costs or expenses, including reasonable attorney's fees, arising, or alleged to arise, from bodily injury, death or tangible property damage caused by any wrongful or negligent act or omission of CMHR, its employees or agents in the performance of their obligations or duties under this Agreement.

   (c) The indemnification's provided in (a) and (b) above shall only apply if the party seeking indemnification notifies the other party in writing of a claim or lawsuit covered by the indemnity within thirty (30) days after receipt of notice of such claim or lawsuit, or within the time reasonably required to file an answer to such lawsuit if thirty (30) days notice cannot reasonably be given. The party seeking indemnification shall cooperate in the investigation and defense of any claim or lawsuit covered by this indemnity and shall not compromise or settle any such claim or lawsuit without the prior written consent of the party providing the indemnification.

10/20/98

Confidential

ABT-DOJ 350957
ABT282-2514

## C.   CONFIDENTIAL INFORMATION:

Both parties agree to keep the terms of this Agreement confidential during the term of the Agreement and for a period of three (3) years following the termination of this Agreement. In addition, each party may, from time to time, disclose certain confidential information to the other party. Each party shall take all reasonable steps to prevent disclosure of any information designated by the other party as being confidential, and shall not use or disclose any such information during the term of this and for a period of three (3) years following termination of this Agreement, except as permitted by this Agreement or in writing by the other party.  The foregoing shall not apply to information:

    1.  Which the receiving party can show was known to it prior to the disclosure by the other party;

    2.  Which is or becomes public knowledge through no fault of the receiving party; or

    3.  Which is lawfully disclosed to either party by a third party.

## D.   LAW:

1.   Each party covenants that it shall abide by all applicable federal, state, and local statutes, laws, rules, regulation, licenses, certificates, and authorizations in the performance of its respective obligations under this Agreement.

2.   In the event that any provision of this Agreement is rendered invalid or unenforceable by any act of the federal, state, or local government, or declared null and void or unenforceable by any court of competent jurisdiction, the remainder of this Agreement shall remain in full force and effect and shall continue to bind the parties, except to the extent the major purposes of this Agreement would be frustrated by such a continuation.

## E.   TRADE SECRETS

CMHR agrees not to provide or otherwise make available any licensed program or related material, including, but not limited to, flowcharts, logic diagrams and source code, in any form, to any third-party without prior written consent from Abbott.  This clause shall survive termination of this Agreement.

10/20/98

Confidential

ABT-DOJ 350958
ABT282-2515

**F.   TRADEMARKS**

CMHR shall not (a) use any Abbott trademark, trade name, service mark, service name, logo, style or copyrighted material ("Trademarks"), without Abbott's prior written consent to such use and the form of such use; (b), use any Trademarks in its business name, logo or style, or (c), infringe, contest or harm Abbott's rights in or to any Trademarks.

**G.   FORCE MAJEURE:**

Neither party shall be liable for any delay, prevention, or failure to perform any duties or obligations under this Agreement (except for the obligation to make payment) due to strikes, explosions, flood, riot, lock out, injunction, interruption of transportation, accidents, inability to obtain supplies at reasonable prices, war, act of governmental authority, acts of God, or other causes beyond its control.

**H.   NOTICE:**

All notices hereunder shall be in writing and shall be delivered personally or mailed by registered or certified mail, postage prepaid, return receipt requested, to the following address of the respective parties or such other address as may be identified from time to time by the parties hereto:

> Abbott Laboratories, Inc.
> Abbott Home Infusion Services
> 200 Abbott Park Road
> Abbott Park, IL 60064-3537
> Attention: Contract Marketing Dept. H59
>
> Children's Memorial HealthCare Resource
> 1181A Lake Cook Road
> Deerfield, IL, 60015-5605

Such notice shall be effective upon receipt if personally delivered, or on the third business day following the date of mailing.

**I.   ENTIRE AGREEMENT:**

This Agreement and the attachments set forth the entire Agreement of the parties. This Agreement may only be amended in writing, signed by authorized representatives of both parties.

10/20/98

Confidential

ABT-DOJ 350959
ABT282-2516

## J.   ASSIGNMENT:

This Agreement shall be governed by the laws of the State of Illinois and assignment shall not be unreasonably withheld, in whole or in part by either party with the other party given at least thirty (30) day's prior written consent. CMHR may assign its rights and obligations under this Agreement to any Affiliate provided that CMHR shall remain liable for performance of CMHR's obligations hereunder. No amendment or modification of the terms of the Agreement shall be binding on either party unless reduced in writing and signed by an authorized representative of the party against whom enforcement of such amendment or modification is sought.

## K.   Medicare Disclosure Agreement:

To the extent required by law or regulation, and to the extent that Abbott provides CMHR information, CMHR shall report an accounting of any fee or discount received hereunder. Any discounts, rebates, or reduction in price issued by Abbott to CMHR or Participants under this Agreement or the Product Exhibits may constitute a discount or reduction in price within the meaning of Section 1128(b)(3)(A) of the Social Security Act [42 U.S.C. Section 1320a-7b(b)(3)(A)], and CMHR and/or the Participants may have an obligation to properly disclose and accurately reflect such discount to any state or federal program which provides cost or charge-based reimbursement to CMHR and/or Participants for the items to which this discount applies. CMHR shall report, and ensure that its Participants shall report, as the case may be, any discounts, rebates or other reductions in price pursuant to this Agreement as may be required by applicable federal or state laws.

---

## ARTICLE 5: APPROVALS/SIGNATURES

---

This Agreement shall inure to the benefit of and shall be binding upon the parties hereto, and their respective successors and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

**CMHR**                                    **Abbott Laboratories**

By:  _Judith E. Hicks_          By:  _Dana Hosseini_
     Please Print or Type                        Please Print or Type
Title:  _ITS   PRESIDENT_        Title:  _Manager, Contract Marketing_

Signed:  _Judith Hicks_          Signed:  _[signature]_

Date:  _10-20-98_                Date:  _10/21/98_

10/20/98

Confidential

### SCHEDULE I
### CMHR PRICE LIST

| LIST IC | ITEM NAME | PRICE |
|---------|-----------|-------|
| 61 01 | TEN FF GRA SET | 1.73 |
| 68 01 | TEN FLEXITAINER 500ML | 1.35 |
| 71 01 | TEN COMP PMP SET W/1000ML BAG | 4.30 |
| 86 01 | TEN COMP PMP SET W/CAP | 2.88 |
| 89 01 | TEN FF GRA SET W/1000ML BAG | 3.72 |
| 93 01 | TEN FFIII PMP SET W/1000ML BAG | 3.60 |
| 373 01 | PEDIASURE 8OZ CAN | 0.88 |
| 504 01 | FLEXIFLO COMPANION PUMP CARRYING CASE | 76.05 |
| 507 01 | TEN COMP PMP SET W/500ML BAG | 5.83 |
| 709 01 | OSMOLITE 8OZ CAN | 0.31 |
| 729 02 | TWOCAL HN 8 OZ CAN | 0.47 |
| 746 01 | POLYCOSE PWD 12.3 OZ CAN | 2.69 |
| 759 01 | ENSURE W/FIBER 8OZ CAN (VANILL | 0.65 |
| 835 01 | GASTROSTOMY TUBE FDG ADAPT 14F | 5.23 |
| 836 01 | FLEXIFLO Y PORT CONNECTOR 18FR | 5.23 |
| 1086 03 | AMINOSYN II 7% 500ML | 5.30 |
| 1088 05 | AMINOSYN II 8.5% 1000ML | 8.36 |
| 1088 03 | AMINOSYN II 8.5% 500ML | 4.30 |
| 1108 05 | AMINOSYN HBC 1000ML | 61.01 |
| 1130 02 | SOD CHL 4MEQ/ML 250ML(23.4%) | 2.57 |
| 1135 03 | MORPH PRES FREE 25MG/ML 20 ML VIAL | 33.90 |
| 1141 01 | SOD CHL 4MEQ/ML 50ML(23.4%) | 0.69 |
| 1151 70 | HEPARIN LOCK 10U/ML 10ML FTVL | 0.23 |
| 1151 78 | HEPARIN LOCK 10U/ML 30ML VL | 0.39 |
| 1152 70 | HEPARIN LOCK 100U/ML 10ML | 0.33 |
| 1164 01 | BUPIVACAINE 0.75% 30ML AMP | 2.55 |
| 1207 03 | GENTAMICIN 40MG/ML 2ML FTVL | 0.32 |
| 1513 02 | POT CHL 2MEQ/ML 250 ML BULK | 4.03 |
| 1518 05 | DEX 50% 1000ML | 2.87 |
| 1590 02 | WATER 250ML | 1.19 |
| 1590 05 | WATER 1000ML | 1.27 |
| 1614 05 | EMPTY EVAC CONTAINER 1000ML | 3.11 |
| 1614 03 | EMPTY EVAC CONTAINER 500ML | 1.63 |
| 1616 03 | AMINOSYN PF 7% 500ML | 26.44 |
| 1671 02 | EXT SET DIAL-A-FLO 18" | 3.53 |

Confidential

| LIST IC | ITEM NAME | PRICE |
|---------|-----------|-------|
| 1834 48 | EXT SET W/STOPCOCK | 1.75 |
| 1881 48 | VENOSET 78 W/CAIR CLAMP VENTED | 0.98 |
| 1957 01 | AMIKACIN 250MG/ML 4ML VL | 22.90 |
| 1966 73 | SOD CHL 0.9% 30ML BACT | 0.21 |
| 2006 03 | IV POLE COMBINED (TPN) | 95.00 |
| 2168 03 | MAG SULF 50% 50ML FTVL | 1.65 |
| 2168 02 | MAG SULF 50% 20ML | 1.25 |
| 2344 01 | DOBUTAMINE 250MG/20ML FTVL | 3.20 |
| 2346 32 | DOBUTAMINE 250MG/D5 250ML | 6.09 |
| 2347 32 | DOBUTAMINE 500MG/D5W 250ML | 6.79 |
| 2553 03 | CAL ACET 0.5MEQ/ML 100ML FTVL | 1.93 |
| 2665 01 | IV START KIT | 1.45 |
| 2991 05 | AMINOSYN 10% 1000ML | 10.41 |
| 3118 04 | ASCORBIC ACID 500MG/ML 1ML AMP | 0.46 |
| 3229 03 | EXT SET 30" SL M-F | 1.18 |
| 3233 01 | STOPCOCK 3 WAY W/MALE LL ABBOT | 1.29 |
| 3294 06 | POT ACET 2MEQ/ML 100ML VL | 1.98 |
| 3295 05 | SOD PHOS 150MMP 50ML FTVL | 1.65 |
| 3299 06 | SOD ACET 2MEQ/ML 100ML VL | 2.18 |
| 3578 01 | TOBRAMYCIN 40MG/ML 2ML VL | 3.59 |
| 3590 02 | TOBRAMYCIN 40MG/ML 50ML FTVL | 79.00 |
| 3724 32 | DOBUTAMINE 4MG/ML 1000MG/D5W 2 | 23.01 |
| 3819 02 | MORPHINE 15MG/ML 20ML FT | 4.31 |
| 3903 02 | EXT SET 20" SL | 1.20 |
| 3977 73 | WATER 30ML BACT | 0.22 |
| 4091 71 | MANGANESE TRACE METAL 10ML FT | 0.41 |
| 4092 71 | COPPER TRACE METAL .4MG/ML 10ML VL | 0.36 |
| 4093 71 | CHROMIUM TRACE 4MCG/ML 10ML FTVL | 0.40 |
| 4201 01 | POT PHOS 3MMP/ML 50ML FTVL | 1.99 |
| 4276 72 | LIDOCAINE HCL 1% 20ML VIAL | 0.36 |
| 4293 48 | IV SET NV 78" W/IVEX-2 | 2.70 |
| 4360 05 | AMINOSYN 10% (PH6) 1000ML | 10.56 |
| 4438 02 | EXT SET 7" SL | 1.61 |
| 4506 01 | BUTTERFLY 25GA X 3/4  12" TUBI | 0.33 |
| 4524 58 | IVEX HP FILTER SET | 1.75 |
| 4526 05 | ZINC 1MG/ML 50ML FTVL | 1.60 |
| 4532 24 | CLEAR CATH 24GA X 3/4" | 1.18 |

ABT-DOJ 350962
ABT282-2519

| LIST IC | ITEM NAME | PRICE |
|---|---|---|
| 4532 32 | CLEAR CATH 22GA 1" | 1.05 |
| 4565 01 | BUTTERFLY 23GA X 3/4" W/12" TU | 0.34 |
| 4573 01 | BUTTERFLY 25GA X 3/8" W/3 1/2" | 0.44 |
| 4592 50 | TRACE METALS 50ML FTVL | 5.13 |
| 4616 02 | EXT SET W/LUER TIP | 1.17 |
| 4620 02 | EXT SET 20 INCH ST PACK | 0.58 |
| 4732 03 | CEFAZOLIN 1GM ADDVAN VL | 1.75 |
| 4867 01 | BUTTERFLY 23GA X 3/4" W/3 1/2" | 0.33 |
| 4887 75 | WATER 50ML FTVL | 0.48 |
| 4887 25 | WATER 10ML FTVL | 0.19 |
| 4888 25 | SOD CHL 0.9% 10ML FTVL | 0.19 |
| 4888 72 | SOD CHL 0.9% 20ML | 0.28 |
| 4888 75 | SOD CHL 0.9% 50ML FTVL | 0.54 |
| 5601 01 | METHYLPREDNISOLONE 500MG ADDVAN VL | 3.49 |
| 5603 01 | METHYLPREDNISOLONE 1000MG ADDVAN VL | 6.83 |
| 5645 25 | DEX 50% 500/1000ML FILL | 2.10 |
| 5671 13 | HYDROCORTISONE 100MG 2ML UNIVIALS | 0.79 |
| 5673 25 | HYDROCORTISONE 500MG/4ML UNIVI | 2.62 |
| 5674 25 | HYDROCORTISONE 1000MG 8ML SDVL | 5.60 |
| 5684 13 | METHYLPREDNISOLONE 40MG 1ML UN | 0.81 |
| 5779 83 | TPN ELECTROLYTES 20ML FTVL | 1.64 |
| 5816 11 | EMPTY STERILE VIAL 10ML FLIPTOP | 0.40 |
| 5816 31 | EMPTY STERILE VIAL 30ML FLIPTOP | 0.44 |
| 5852 03 | AMINOSYN 7% W/LYTES (500 ML) | 21.19 |
| 6102 11 | FUROSEMIDE 10MG/ML 10ML FTVL | 0.48 |
| 6102 04 | FUROSEMIDE 10MG/ML 4ML VL FTVL | 0.35 |
| 6102 02 | FUROSEMIDE 10MG/ML 2ML FTVL | 0.38 |
| 6138 23 | SOD CHL 0.9% IRR 500ML | 0.92 |
| 6248 01 | LIDOCAINE 20% HCL 200 MG/ML 10ML | 2.00 |
| 6365 02 | ERYTHROCIN LAC 500MG VL | 1.22 |
| 6474 01 | EXT SET (DISC USE 1739-01) | 2.24 |
| 6509 01 | VANCOMYCIN 5GM VL | 23.00 |
| 6533 01 | VANCOMYCIN 1GM FTVL | 5.53 |
| 6534 01 | VANCOMYCIN 500MG ADDVAN | 3.21 |
| 6535 01 | VANCOMYCIN 1GM ADDVAN | 6.29 |
| 6653 83 | POT CHL 2MEQ/ML 20ML FTVL | 0.24 |
| 7100 72 | DEX 5% 250ML ADDVAN | 1.75 |

Confidential

| LIST IC | ITEM NAME | PRICE |
|---|---|---|
| 7100 77 | DEX 5% 100ML ADDVAN | 1.25 |
| 7100 75 | DEX 5% 50ML ADDVAN | 1.25 |
| 7101 77 | SOD CHL 0.9% 100ML ADDVAN | 1.25 |
| 7101 75 | SOD CHL 0.9% 50ML ADDVAN | 1.25 |
| 7101 72 | SOD CHL 0.9% 250ML ADDVAN | 1.75 |
| 7107 39 | DEX 5%/0.9% SOD CHL/POT CHL 20MEQ 1000ML | 1.75 |
| 7118 07 | WATER 2000ML BULK PHARMACY | 3.44 |
| 7120 07 | DEX 70% 2000ML BULK PHCY | 6.98 |
| 7121 07 | AMINOSYN II 10 % 2000ML BULK | 20.82 |
| 7122 07 | AMINOSYN II 15% 2000ML BULK | 26.89 |
| 7138 19 | SOD CHL 0.9% IRR 1000ML | 0.96 |
| 7139 19 | WATER IRR 1000ML | 0.96 |
| 7902 39 | DEX 5%/0.45% SOD CHL/POT CHL 2 | 1.06 |
| 7902 34 | DEX 5%/0.45% SOD CHL/POT CHL 1 | 1.11 |
| 7902 39 | DEX 5%/0.45% SOD CHL/POT CHL 20MEQ 1000 | 1.06 |
| 7914 01 | NUTRI CLAMP | 0.16 |
| 7915 01 | NUTRI CLAMP FOR EMPTY CONTNR W | 0.20 |
| 7922 62 | DEX 5% 250ML | 0.58 |
| 7922 61 | DEX 5% 150ML | 0.59 |
| 7922 39 | DEX 5% 1000ML | 0.69 |
| 7922 34 | DEX 5% 500ML | 0.95 |
| 7922 61 | DEX 5% 150ML | 0.95 |
| 7923 20 | DEX 5% 25ML | −0.94 |
| 7923 37 | DEX 5% 100ML PART FILL | 0.81 |
| 7923 36 | DEX 5% 50ML PF | 0.81 |
| 7923 20 | DEX 5% 25ML | −1.04 |
| 7924 34 | DEX 5%/0.225% SOD CHL 500ML | 0.62 |
| 7924 39 | DEX 5%/0.225 SOD CHL 1000ML | 0.75 |
| 7926 34 | DEX 5%/0.45% SOD CHL 500ML | 0.62 |
| 7926 39 | DEX 5%/0.45% SOD CHL 1000ML | 0.71 |
| 7926 62 | DEX 5%/0.45% SOD CHL 250ML | 0.64 |
| 7926 39 | DEX 5%/0.45% SOD CHL 1000ML | 0.71 |
| 7926 34 | DEX 5%/0.45% SOD CHL 500ML | −1.92 |
| 7926 39 | DEX 5%/0.45% SOD CHL 1000ML | 1.21 |
| 7927 09 | EMPTY CONTAINER W/SET 1000ML | 3.65 |
| 7927 08 | EMPTY CONTAINER W/SET 3000ML | 4.00 |
| 7929 39 | DEX 5%/LACT RINGERS 1000ML | 0.81 |

Confidential

| LIST IC | ITEM NAME | PRICE |
|---------|-----------|-------|
| 7941 39 | DEX 5%/0.9% SOD CHL 1000ML | 0.71 |
| 7951 19 | EMPTY CONTAINER 1000ML | 1.63 |
| 7951 23 | EMPTY CONTAINER 100ML | 3.68 |
| 7953 39 | LACTATED RINGERS 1000ML | 1.12 |
| 7983 34 | SOD CHL 0.9% 500ML | 0.94 |
| 7983 39 | SOD CHL 0.9% 1000ML | 0.60 |
| 7983 61 | SOD CHL 0.9% 150ML | 0.93 |
| 7983 62 | SOD CHL 0.9% 250ML | 1.43 |
| 7984 20 | SOD CHL 0.9% 25ML | 0.93 |
| 7984 37 | SOD CHL 0.9% 4/PK 100ML | 0.81 |
| 7984 36 | SOD CHL 0.9% 50ML | 0.81 |
| 7984 20 | SOD CHL 0.9% 25ML | 0.94 |
| 7985 34 | SOD CHL 0.45% 500ML | 0.62 |
| 8975 18 | L-CYSTEINE HCL 50MG/ML 10ML AD | 6.68 |
| 9157 01 | VITAMIN K1 1MG/.5ML AMP {2MG/M | 1.49 |
| 9158 01 | VITAMIN K1 10MG/ML 1ML AMP | 2.80 |
| 9158 01 | VITAMIN K1 10MG/ML 1ML AMP | 2.80 |
| 9789 03 | LIPOSYN II 20% 500ML | 9.48 |
| 9789 01 | LIPOSYN II 20% 200ML | 5.36 |
| 11301 01 | LIFESHIELD MALE ADAPTER | 0.85 |
| 11390 01 | LIFESHIELD VIAL ADAPTER W/PREP | 1.20 |
| 11415 48 | EXT SET 1.2 MIC W/Y INJ ABBOTT | 3.68 |
| 13230 01 | IV POLE CLAMP PACKAGE | 47.70 |
| 13360 48 | EXT SET 60" PROVIDER LVP | 1.98 |
| 13403 01 | PROVIDER PUMP SET W/QUICK LOAD | 10.78 |
| 13560 01 | INF SET W/INJ PORT 80" | 11.45 |
| 13570 01 | PROVIDER ASV SET W/.2 FILTER | 9.95 |
| 13575 01 | PROVIDER ASV SET W/1.2 FILTER | 9.95 |
| 13609 01 | PROV ONE PUMP 3 LTR RES CARRY | 99.00 |
| 15420 26 | DEX 5% 100ML SINGLE | 1.31 |
| 15420 14 | DEX 5% 50ML SINGLE | 1.31 |
| 15421 26 | SOD CHL 0.9% SINGLES 100ML | 1.33 |
| 15421 14 | SOD CHL 0.9% 50ML SINGLE | 1.33 |
| 17015 48 | UNIVERSAL ADAPTER PIN | 1.40 |
| 50630 01 | ALITRAQ 76G PWD POUCH | 7.58 |
| 50652 01 | PEDIASURE W/FIBER 8OZ CAN | 1.03 |
| 52042 01 | TEN PATROL PMP SET W/1000ML BA | 3.75 |

Agmt/CMHR2list/ss

Confidential

ABT-DOJ 350965
ABT282-2522

## EDDS PRICING - ACCLAIM

| LIST # | PRODUCT DESCRPTION | EACH PRICE |
|--------|--------------------|-----------|
| 11997 -48-48 | LS PRIM SET, NV 105INC W/PPR Y-INJECTION SITE-OL | 1.46 |
| 11306 -58-58 | LS NV PRIMARY, MACRO, 2 RESEAL Y-INJ SITES SL | 1.85 |
| 11309 -58-58 | LS NV PRIMARY, W/BKCK, 3 RSL Y-INJ SITES, PGBK SL | 2.60 |
| 11411 -68-68 | LS W/BACKCHECK 3 RESEAL Y-SITE MICRODRIP PGBK W/OL | 3.13 |
| 11392 -58-58 | LS PRIM IV SET CNVPP W/BKCK/3PP Y-SITES HP .22u FLTR-OL | 2.98 |
| 12059 -48-48 | LS 1.2 MIC FLTR W/3-PP Y-SITES NONPHTHALATE TBG, SL | 3.50 |
| 11963 -68-68 | LS IV SET, NV, 100INCH W/BKCK 2 CLAVE, PGBK HP/OL | 3.80 |
| 11960 -68-68 | LS PRIMARY IV SET, NV, 100INCH W/CLAVE AND OL | 2.28 |
| 11961 -68-68 | LS IV SET, NV, 100INCH, W/BKCK 2 CLAVE, PGBK W/OL | 3.90 |
| 11398 -01-01- | LS 150ML BURETTE W/2PP RESEALS SOLUSET W/OL | 2.90 |
| 11993 -48-48 | NITROGLYCERIN PRIMARY I.V. PUMP SET-OL | 5.00 |

Kreklow/SchI/ss

Confidential
ABT-DOJ 350966
ABT282-2523

## SCHEDULE II

### Lease and Purchase Prices
### For Abbott Electronic Drug Delivery Devices

|  | Purchase Price | 60 Month Lease Price[1] |
|---|---|---|
| Plum ® 1.6 | N/A | $32.50 |
| Plum ® XLD | $1,900.00 | $31.66 |
| Companion ® | $550.00 | $0* |
| Flexi-Flo III | $400.00 | $0 * |
| Provider ® One Plus + | N/A | $55.00 |
| Provider ® 5500 | N/A | $43.00 |
| Provider ® 6000 | $2,900.00 | $48.00 |
| Lifecare ® Model 4-H | $2,750.00 | $45.00 |
| Abbott *AIM*™ Plus | $2,650.00 | $27.50 |
| Other Devices | As Mutually Determined | As Mutually Determined |

(1) Pump leased during the term of the Agreement will have their lease price amortized over the balance of months remaining in the term of the Agreement.


\* Ross Enteral Pumps are provided at no charge with an aggregate minimum set usage of fifteen (15) sets per month per pump.  Set usage will be monitored and reported annually to CMHR.

10/20/98

Confidential
ABT-DOJ 350967
ABT282-2524

## SCHEDULE III

### CHIP System Training Support

**CHIP Training Support** (New releases, updates, etc.) at Abbott:

- Two (2) days annually

CMHR shall be responsible for all reasonable travel expenses including transportation, food, and lodging incurred by Abbott and/or CMHR personnel.

### ADDITIONAL CHIP SYSTEM TRAINING

1. $1,125 per eight (8) hour day.

2. In addition to the daily fee, CMHR shall be responsible for all reasonable travel expenses including transportation, food, and lodging incurred by Abbott and/or CMHR personnel.

3. Payment shall be due net thirty (30) days from date of Abbott invoice for consulting services.

10/20/98

Confidential

ABT-DOJ 350968
ABT282-2525          L