# EXHIBIT 118
# CONTINUED

CONTRACT

Confidential

*w q mi*
3/26/92

## HOME INFUSION THERAPY AGREEMENT

This Agreement is made between the Regents of the University of Michigan ("University of Michigan"), a Michigan constitutional corporation, and Abbott Laboratories, an Illinois corporation, ("Abbott").

### WITNESSETH

WHEREAS, the University of Michigan is a provider of healthcare services; and

WHEREAS, Abbott is a healthcare company that supplies a broad and diversified line of healthcare products; and

WHEREAS, the University of Michigan has, through its ongoing business unit known as HomeMed™, recognized the growing importance of continuing the treatment of patients in the home environment, by engaging in the Home Infusion Therapy (as defined in Section 1.A.) business; and

WHEREAS, Abbott, through its Abbott Home Infusion Services business unit of the Abbott Hospital Products Division, is capable of supplying Home Infusion Therapy products and services in support of the treatment of Patients (as defined in Section 1.C.); and

WHEREAS, Abbott desires to assist the University of Michigan in the continued development and operation of the University of Michigan's Home Infusion Therapy business by providing products, services, and technical and business guidance to the University of Michigan, and the University of Michigan desires to obtain such assistance from Abbott upon the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, the parties agree as follows:

1

Confidential

1.  Definitions.

    A.   "Home Infusion Therapy" means the treatment of a Patient outside of the traditional hospital setting on the prescription therapy of total parenteral nutrition ("TPN"), total enteral nutrition ("TEN"), intravenous ("I.V.") antibiotic therapy, chemotherapy, pain management, and any other form of therapy approved by both parties. The therapy may be administered via intravenous, intramuscular or other appropriate method of administration. The therapy may be administered in the Patient's home, an Infusion Center (as defined in Section 1.E.), nursing home, alternate living unit or any other non-hospital site operated by the University of Michigan.

    B.   "Home Infusion Therapy Services" means the providing of Home Infusion Therapy products and services necessary to support the treatment of a Patient.

    C.   "HomeMed™" means the name of the University of Michigan's Home Infusion Therapy business.

    D.   "Patient" means any person requiring Home Infusion Therapy.

    E.   "Infusion Center" means a location that Patients come to for therapy such as I.V. chemotherapy, I.V. blood components, aerosolized pentamidine or any other form of therapy approved by both parties.

    F.   "Program Collections" means all remuneration collected by or on behalf of the University of Michigan for the Home Infusion Therapy products and services provided to Patients under the terms of this Agreement.

    G.   "Net Revenue" means gross invoiced sales less: contractual allowances, charity billings, bad debt, and discounts.

2

ABT-DOJ 319617
ABT279-1615

H.   "Charity Patient" means a Patient who has no third party, private, state or federal funds available for Home Infusion Therapy care and treatment.

I.   "University of Michigan Service Area" means the entire state of Michigan, including the upper peninsula, northern Ohio and northern Indiana.

2.   <u>University of Michigan Home Infusion Therapy Services</u>.

A.   The University of Michigan, with the assistance of Abbott, shall continue to develop its Home Infusion Therapy Services, currently doing business as HomeMed™.  In its activities hereunder each party shall use its reasonable best efforts to service Patients consistent with good medical practice.

B.   This Agreement shall bind the parties hereto, but shall not restrict the right of Patients and/or physicians to select any medical service or provider they desire.  No Patients will be required in any way to obtain Home Infusion Therapy Services through the HomeMed™ program.  No payments will be made for any Patient referrals.  Payments will be made only for delivery of products and services.  All Patients will be notified prior to entry into HomeMed™ that the University of Michigan is the sole owner of HomeMed™.  HomeMed™ shall provide Patients with information about alternate suppliers of Home Infusion Therapy services.  There will be no physician ownership of any portion of this program.  All University of Michigan physicians connected with HomeMed™ are employees of the University of Michigan.

C.   Patients shall be considered Patients of the University of Michigan and the University of Michigan shall assume Assignment of Benefits on all Patients serviced under the

3

ABT-DOJ 319618
ABT279-1616

terms of this Agreement.

D.   The University of Michigan represents that the name "HomeMed™" is owned by the University of Michigan.   Abbott shall not interfere with the University of Michigan's use of that name.

3.   <u>Trade Secrets.</u>

Wherever this Agreement refers to Abbott-developed business knowledge, policies or procedures, software, project implementation plans or other materials, the parties agree that all such materials are trade secrets of Abbott, that the materials are disclosed to assist in the operation of HomeMed™ and that they will be kept confidential by the University of Michigan.   This clause shall survive termination of this Agreement.

4.   <u>Business Management.</u>

The strategic planning and daily business activity of HomeMed™ shall be managed through a University of Michigan organizational structure including a HomeMed™ "Operations Review Committee" and a HomeMed™ "Patient Care Advisory Committee".   In addition, a HomeMed™ "Research Committee" shall review funding of research proposals.

A.   The Operations Review Committee shall consist of eight (8) to twelve (12) members appointed by the University of Michigan and two (2) non-voting members appointed by Abbott.   The Abbott appointment shall be for two years. The Operations Review Committee shall meet monthly and shall be responsible for the following:

1.   Review of monthly financial and operating reports (e.g.   detailed reports of account receivables, bad

4

ABT-DOJ 319619
ABT279-1617

debt, write-off's, charity care, cash collections and days sales outstanding (DSO)).

2.   Review of business and marketing strategy including but not limited to internal marketing, local managed care activity, activity with local employers, and development of national insurance programs.

3.   Approval of all contractual relationships, including commercialization of new products and/or therapies.

4.   Receipt of reports from the Patient Care Advisory Committee.

5.   Receipt of reports from the Research Committee.

6.   Approval of all payments to Abbott, non-Abbott product vendors, and any other vendors providing products or services to the HomeMed™ business.

7.   Review and approval of annual operating and capital budgets, including pricing, employee compensation, etc.

8.   Approval of appointments to key positions (general manager, business manager, clinical manager, and liaison for nursing services).

9.   Review and approval of all changes in organization and job responsibilities, including University of Michigan employees and the Abbott employees providing services under the terms of this Agreement as described in Section 7. B. of this Agreement.

10.  Review and approval of the allocation of funds for the research and charity care funds.

11.  Review and approval of the visiting nurse and other service organizations to be utilized by HomeMed™.

5

ABT-DOJ 319620
ABT279-1618

12. Planning of the agenda for the semi-annual management meeting to be held with Abbott.

13. Approval of the budget and DSO goal which shall be established annually. Any modification to such budgets shall also require the approval of the Operations Review Committee. The fiscal year shall run from July 1 to June 30th.

14. Make determinations concerning Charity Patients pursuant to policy regarding charity care.

B. The Patient Care Advisory Committee shall consist of at least twelve (12) members from the University of Michigan and up to three (3) non-voting members from Abbott. The Abbott appointment shall be for two years. Appointments to the Patient Care Advisory Committee shall be made by the Operations Review Committee. The chair of the Patient Care Advisory Committee shall be a physician and the chair of the Operations Review Committee. The Patient Care Advisory Committee shall meet quarterly and be responsible for the following:

1. Review, standardization and approval of clinical practice procedures and protocols, including medical materials, drugs, durable goods, products and services, and any changes that may be proposed from time to time.

2. Review and approval of all new treatment modalities.

3. Review and approval of all quality assurance and utilization review data, reports, plans and corrective actions.

4. Review of organizational plans for marketing,

6

Confidential

ABT-DOJ 319621
ABT279-1619

admissions, referrals and regulatory compliance.

5. Coordination of all home infusion teaching programs.

6. Review and approval of all home infusion staff inservice and training protocols.

7. Review and approval of all discharge procedures for home infusion patients.

C. 1. The Research Committee shall consist of nine (9) members from the University of Michigan and one (1) non-voting member from Abbott. The Abbott appointment shall be for two years. The University of Michigan representatives shall include at least four physicians, the coordinator of new products and services, one representative from nursing, one representative from the College of Pharmacy, and a biostatistician. Appointments to the Research Committee shall be made by the Operations Review Committee. The chair of the Research Committee shall be a University of Michigan physician. The vice chair and secretary shall be the coordinator of new product and services development. The Research Committee shall meet as needed and be responsible for review and tracking of all HomeMed™ research grants. The Research Committee shall submit their recommendations for the approval of all HomeMed™ research funds to the Operations Review Committee. The Operations Review Committee shall be responsible for the final approval of all HomeMed™ research funds and the monitoring of the research account.

2. Appointees to the Research Committee from both

7

ABT-DOJ 319622
ABT279-1620

parties shall sign reciprocal confidentiality agreements.

3. The University of Michigan shall publish an agenda of topics to be discussed prior to each meeting. The appointee from Abbott shall review the agenda topics to be discussed for potential contamination of each others intellectual property. Based on this review, the Abbott appointee may elect to not attend the meeting, or not attend that portion(s) of the meeting in which there may be potential for intellectual contamination of each other's intellectual property.

4. Minutes of the meeting shall be furnished to both parties by the University of Michigan summarizing the topics discussed. Such minutes shall clearly document the committee appointees present for each topic discussed.

5. <u>Facility Build-Out.</u>

An off-site facility will be built-out to house the University of Michigan Home Infusion Therapy Services and Infusion Center. This facility will house offices for the Home Infusion Therapy Services management personnel, pharmacists, pharmacy technicians, reimbursement personnel, order entry specialists, home service reps, warehouse personnel, etc. It will also house the compounding facility needed to complete prescription compounding services for Home Infusion Therapy and Infusion Center Patients, associated warehouse and shipping/receiving area, and space for a data processing center. Square footage will total approximately thirteen thousand and seventy-six (13,076) square feet.

8

ABT-DOJ 319623
ABT279-1621

A. To meet the required timing of the build out project Abbott shall sign the lease on the University of Michigan facility with the right to re-assign the lease to the University of Michigan. It is the intention of Abbott and the University of Michigan to transition the lease to the University of Michigan as early as possible but no later than the expiration of the initial term of the Agreement.

B. Abbott shall manage the build out of the University of Michigan facility. The University of Michigan and Abbott shall jointly review and approve the site, design, layout, pharmacy specifications, architect, construction contractor and project implementation plan for the facility.

C. Expenses associated with the build out of offices shall be included in the facility lease expense. The University of Michigan shall review, budget and pay for all facility lease and HomeMed™ operating expenses. Operating expenses shall include but not be limited to: laundry; housekeeping; pest control; trash collection; pharmacy license; safety supplies; postage; calibration; security; maintenance; utilities; communications; printing; office supplies; education/training supplies; insurance; property taxes; marketing expenses; rental of fax and copy machines, etc.; travel/seminars; misc. supplies; van rental or lease; van operating; and, courier and common carrier expenses.

D. Abbott shall pay for the expenses related to initial build-out of the home infusion pharmacy clean and compounding rooms, warehouse, ship and receive areas,

9

architect, and office and pharmacy equipment.  A listing of the equipment to be provided by Abbott for use by the University of Michigan in performance of this Agreement is set forth in Schedule I.

E.   Abbott shall retain title to this equipment until the expiration of the initial term of this Agreement, at which time title shall be transferred to the University of Michigan, provided the University of Michigan is not in breach of its obligations.  During the initial term of this Agreement both parties shall maintain this equipment free and clear of all liens, encumbrances, attachments and security interests for charges of any kind.

F.   Abbott shall pay the expenses associated with the initial, post-installation maintenance and calibration of the equipment referenced in Schedule I.

G.   The University of Michigan shall provide and pay for on-going maintenance and calibration of the equipment referenced in Schedule I.

H.   Any subsequent expansions or modifications to the facility, completed after the initial build-out project is finalized, shall be discussed by the parties and planned according to their mutual interest.

6.   Pharmacy.

A.   The pharmacy shall be licensed in the name of the University of Michigan and the University of Michigan shall maintain its licensure and compliance with all state and pharmacy regulations in the state(s) in which the University of Michigan operates pharmacy(s).

B.   Abbott shall consult with the University of Michigan on

10

ABT-DOJ 319625
ABT279-1623

the staffing, QA policies and procedures, operating procedures, personnel training requirements and other activities related to the operation of the Home Infusion Therapy Services and pharmacy, as mutually agreed, for the term of the Agreement.

C.   Abbott shall provide up to five (5) days of training on Home Infusion Therapy pharmacy services prior to the start up of operations in the University of Michigan facility. Additional training may be provided under terms and conditions as may be mutually agreed to by the two parties.

D.   The University of Michigan, at its expense, shall provide pharmacy and monitoring services, including the following:

1.   Obtaining prescription and clinical information for each Patient, from the Patient's physician;

2.   Evaluating prescriptions for accuracy, safety and appropriateness;

3.   Preparing compounding worksheets, labels and other documents required for each prescription;

4.   Compounding, packaging and dispensing Patient prescriptions;

5.   Monitoring by a properly licensed pharmacist of the Patient's therapy regimen and clinical progress; and

6.   Providing recommendations of a properly licensed pharmacist to physicians on Home Infusion Therapy changes based on patient monitoring.

7.   HomeMed™ Personnel.

A.   The University of Michigan shall hire, compensate and manage employees to complete the following activities on

11

Confidential

ABT-DOJ 319626
ABT279-1624

behalf of HomeMed™:

1.  A general manager who shall be responsible for the development of the clinical, operational and financial goals of the Home Infusion Therapy Services, performance against these goals and marketing of the Home Infusion Therapy Services to the University of Michigan external market.

2.  A clinical manager who shall be responsible for the development and management of clinical goals of the Home Infusion Therapy Services.  Such services shall include nursing services, patient training and clinical management services, outcome measurements, etc.  The clinical manager shall also be responsible for the marketing of the program to the University of Michigan internal market.

3.  A business manager who shall be responsible for the development and management of budgets, program expenditures, financial reports and the day-to-day operations of the Home Infusion Therapy Services.

4.  A liaison of nursing services who shall manage the day-to-day coordination of the services required to support a Home Infusion Therapy Patient including:  Pre-discharge assessment, training, discharge coordination, pharmacy, delivery, in-home nursing, Patient monitoring, clinical management and ongoing assessment of the Patient's progress and training needs.

5.  As mutually agreed, Abbott shall provide up to twenty (20) days of training for these employees.

B.  Abbott shall hire, train and compensate employees to

12

ABT-DOJ 319627
ABT279-1625

complete the following activities on behalf of the Home
Infusion Therapy Services:

1.  Delivering Home Infusion Therapy products and supplies
    to the Patient's residence, nursing home, alternate
    living unit and/or vacation location;

2.  Monitoring the Patient's inventory of products and
    supplies to insure proper stock rotation and re-order
    to avoid interruptions of therapy; and

3.  General secretarial support.

4.  The parties shall mutually determine the salary and
    benefits to be offered to these employees.  In the
    event the two parties can not agree on the salary and
    benefits to be offered to these employees, the
    HomeMed™ Operations Review Committee shall make the
    final determination on the salary and benefits to be
    offered to these employees.

5.  The University of Michigan shall reimburse Abbott for
    the salary and benefits expenses incurred by Abbott
    for the personnel identified in Section 7. B..  Abbott
    shall invoice the University of Michigan monthly for
    the salary and benefits expenses incurred with payment
    terms of net sixty (60) days from date of receipt by
    the University of Michigan.

6.  The University of Michigan shall supervise the day to
    day activities of these employees.

7.  It is the intention of the University of Michigan to
    transition these employees to become University of
    Michigan employees as early as possible but no later

Confidential

ABT-DOJ 319628
ABT279-1626

than the expiration of the initial term of the
Agreement.

8. <u>Patient Coordination</u>.

On an as needed basis, the University of Michigan, at its
expense, shall provide the following Patient coordination
services:

A.  Evaluation of the clinical (under the supervision of the
    Patient's physician), psychosocial, and financial needs of
    each Patient and identification of those who, in the
    opinion of the physician and hospital personnel, qualify
    for Home Infusion Therapy;

B.  Assessment of the Patient's and Patient's family's ability
    to manage Home Infusion Therapy in the home environment,
    including but not limited to, analysis of the Patient's
    and caregiver's physical and emotional preparedness to
    manage the Home Infusion Therapy in a home environment,
    consideration of whether the Patient or caregiver needs
    additional resources in the home, and assessment of the
    Patient's and caregiver's competence and educational
    level;

C.  Coordination of Home Infusion Therapy products and
    services necessary to support the Patient and family at
    home, including but not limited to coordination of the
    provision of ancillary products such as hospital beds,
    walkers, wheel chairs and other durable medical equipment.

9. <u>Patient Training</u>.

The University of Michigan, at its expense, shall train
the Patient and/or the Patient's caregiver in:

A.  The use of those Home Infusion Therapy products and

14

ABT-DOJ 319629
ABT279-1627

infusion devices (whether Abbott manufactured or not) that are prescribed for the Patient;

B. The basics of his or her Home Infusion Therapy, including but not limited to education regarding the bodily needs for therapeutic agents, the effect of the Patient's disease on the ability of his/her body to absorb such therapeutic agents, and the efficacy of intravenous therapy;

C. Aseptic technique, including but not limited to education regarding the importance of hygiene, the need to gather supplies in a clean area, explanation as to how germs are transmitted, how to open supplies, and how to cleanse the catheter site;

D. Catheter care, including but not limited to education regarding the need for catheter patency by heparinization, understanding and development of expertise in heparin lock and antiseptic care of the catheter entry site and of catheter site dressing;

E. Administration technique, including but not limited to dosage of solutions to be given, hanging bags on poles, setting up tubing between the bag and the catheter, manipulating roller clamps and the hooking and unhooking of solution bags to the catheter;

F. Electronic drug delivery device operation, including but not limited to education regarding the electronic drug delivery device, setting of dials, the alarm system, and general trouble shooting issues; and

G. Home Infusion Therapy requirements, including but not limited to an explanation of the Home Infusion Therapy to

15

ABT-DOJ 319630
ABT279-1628

the Patient, reviewing of potential symptoms, which
symptoms are significant and which are not, and when to
call a medical professional for advise and assistance.

10. <u>Patient Conversion Training</u>.

   The University of Michigan, at its expense, shall provide
any necessary training for Patients converting to the
University of Michigan Home Infusion Therapy Services from
another program.   Conversion training shall include the
following:

A.  Assessing the Patient's knowledge base and skill level in
    performing care associated with Home Infusion Therapy;

B.  Reviewing and evaluating the Patient's ability to
    understand and/or perform items listed in the section
    above entitled "Patient Training"; and

C.  Promoting compliance with care and techniques listed in
    the section above entitled "Patient Training".

11. <u>In-Home Nursing</u>.

A.  The University of Michigan shall coordinate follow-up
    nursing visits to the Patient's home for the purpose of
    monitoring the clinical status of the Patient, obtaining
    samples for needed lab tests, training the Patient on any
    changes in therapy, and reviewing and reinforcing
    procedures to ensure Patient compliance with
    administration of the Patient's Home Infusion Therapy and
    aseptic techniques.

B.  Charges for the nursing visits shall be invoiced to a
    third-party payor and/or Patient by the nursing agency
    providing the service.   Revenues generated from these

16

ABT-DOJ 319631
ABT279-1629

nursing visits shall not be included in Program Collections.

12. <u>Quality Assurance Surveys.</u>

The University of Michigan shall perform quality surveys. Patient surveys shall be completed quarterly and surveys of University of Michigan clinicians shall be completed monthly. The results of such surveys shall be returned to the HomeMed™ office for submission to and review by the Operations Review Committee.

13. <u>Emergency Support.</u>

Abbott, at its expense, shall maintain a twenty-four hour toll-free customer service line, staffed by a registered nurse, for professional-to-professional consultation in Home Infusion Therapy.  This customer service line shall be available at all times.

14. <u>Training Materials.</u>

Abbott, at its expense, shall provide copies of its existing training programs and Patient training materials for use by University of Michigan's Patients.  All such programs and materials are trade secrets of Abbott and their confidentiality shall be protected by the University of Michigan.

15. <u>Training.</u>

As mutually agreed, Abbott, at its expense, shall provide University of Michigan personnel with in-service training on Abbott electronic drug delivery devices and "train-the-trainer" programs on high-tech home nursing policies and procedures. All such programs and materials are trade secrets of Abbott and

17

their confidentiality shall be protected by the University of Michigan.

16. <u>JCAHO Accreditation Assistance.</u>

Abbott shall provide the following services at the request of the University of Michigan. All such programs and materials are trade secrets of Abbott and their confidentiality shall be protected by the University of Michigan.

A. Access to Abbott nursing and pharmacy policies and procedures.

B. Consult with key HomeMed™ personnel in the development of policies and procedures to meet JCAHO accreditation standards for Home Infusion Therapy.

C. Consult with key HomeMed™ personnel in the development of the documentation necessary to meet JCAHO standards.

D. Inservice personnel on policies and procedures and the documentation process.

E. Conduct "mock" survey prior to actual survey date.

F. Identify and coordinate use of external JCAHO consultants, if necessary.

G. Assist with development of an individualized quality assurance calendar.

17. <u>Reimbursement Services.</u>

A. Abbott, at its expense, shall provide reimbursement services, including the following:

1. Verification and notification to the University of Michigan of the insurance/third party reimbursement status, if any, of all potential and existing Patients including reimbursement status as to the stated diagnosis and intended treatment;

18

Confidential

2. Abbott shall use reasonable best efforts to complete such verification within twenty-four hours of receipt of request. In the event this is not possible due to circumstances outside the control of Abbott (e.g., case management, Medicaid prior approvals, incomplete insurance information, etc.), the University of Michigan shall be notified as to the status of the verification and factors inhibiting completion of such screen.

3. Obtaining information required to submit claims, such as, Patient assignment of benefits and certificate of medical need. HomeMed™ shall assist Abbott as necessary to obtain such information;

4. Preparing and submitting all primary and coinsurance claims in the name of HomeMed™, performing all reasonable collection procedures, and application of cash receipts;

5. Abbott shall apply cash to a patient's accounts receivable balance upon receipt of a copy of the check or other form of remittance from the third party payor and/or the patient, or upon written authorization from the University of Michigan.

6. Retention of all patient documentation related to reimbursement for the required period of time, which in no event shall be less than seven (7) years.

B. The University of Michigan and Abbott shall jointly develop and submit to the Operations Review Committee for approval:

1. The write-off and collection policies and contractual

19

Confidential

ABT-DOJ 319634
ABT279-1632

reserve procedures to be utilized in the management of the University of Michigan Home Infusion Therapy Services.

2. The content and timing of reports to be available to the University of Michigan (e.g., monthly gross billings, estimated collections, estimated reserves, patient/program activity, cash receipts, account receivable balances, etc.). Sufficient information shall be available to the University of Michigan to allow for the calculation of Net Revenue. All such reports shall be available to the University of Michigan by the 15th working day of the succeeding month.

3. The content of letters to be sent by Abbott in the name of the University of Michigan relative to reimbursement services (e.g., letters to Patients, physicians, etc.).

C. Home Infusion Therapy products supplied to Patients by HomeMed™ under this Agreement shall be shipped FOB the site at which the Patient receives treatment. The terms of this Agreement shall supplement or supersede any terms on any invoice, purchase order, or price list in the event of an omission or conflict.

D. The University of Michigan reserves the right to assume responsibility for reimbursement services as defined above, with one hundred and eighty (180) days written notification to Abbott. In the event the University of Michigan elects to assume responsibility for reimbursement services, the following shall apply:

20

ABT-DOJ 319635
ABT279-1633

1. Abbott shall provide the University of Michigan with up to seven (7) days of training on reimbursement services, to include but not be limited to the following:

   a. Payor overview, including but not limited to Medicare, private insurers, managed care and Medicaid.

   b. Home Infusion Therapy coverage and screening for coverage for the various payors.

   c. Certification for Home Infusion Therapy requirements.

   d. Medicare requirements.

   e. PEN claims submission.

   f. Non-PEN claims submission.

   g. Accounts receivable management.

   Additional training may be provided under terms and conditions as may be mutually agreed to by the two parties.

2. Abbott shall provide ongoing support and consultation as mutually agreed.

3. The compensation due Abbott shall be adjusted as referenced in the section herein entitled "Compensation".

4. For each month of operation, the University of Michigan shall furnish to Abbott, by the 15th working day of the succeeding month, program billings, estimated collections and actual Program Collections by therapy type and by payor. A sample billings and collections report is attached hereto as Schedule II.

21

E.  Within six (6) months after start-up of the facility Abbott shall establish DSO goals by payor category. These goals shall be reviewed annually and revised based on existing and projected market trends.

F.  All such programs and materials are trade secrets of Abbott and their confidentiality shall be protected by the University of Michigan.

18. Lockbox.

A.  The University of Michigan, at its expense, shall provide a lock box dedicated exclusively to the receipt of Program Collections. The University of Michigan shall arrange with the financial institution administering the lock box to transmit directly to Abbott, upon receipt, a photocopy of total contents of each envelope received at the lock box, including checks and all other correspondences; and a photocopy of deposit slips and adding machine tapes from the checks deposited showing the total amount deposited.

B.  In the event Program Collections and/or statements of medical benefits are sent directly to the University of Michigan, instead of the lockbox, the University of Michigan and Abbott shall use reasonable best efforts to locate such checks and to furnish copies of checks and relevant documentation to the other party. The University of Michigan and Abbott shall establish procedures to be followed by both parties to assist in the location of such checks. In the event Abbott is able to demonstrate that a remittance has been received by the University of Michigan, (e.g. The third party payor and/or patient provides check no., date paid, amount paid, remit to

22

address and patient's name.) but the remittance can not be located by the University of Michigan, the University of Michigan shall reimburse Abbott for the compensation due Abbott on these funds as detailed in the section herein entitled Compensation.

19. <u>Overdue Accounts</u>.

In the event an account is deemed uncollectible, the University of Michigan may file legal proceedings to collect such overdue Patient account; provided, however, that no such proceedings shall be initiated without the mutual written consent of both parties, including agreement as to the payment of legal fees and costs associated with collection litigation.

20. <u>Charity Patients</u>.

In the event Abbott or the University of Michigan determine that a Patient is a Charity Patient or does not have adequate reimbursement coverage for the intended Home Infusion Therapy, the University of Michigan and Abbott agree to confer and mutually develop a policy, to be approved by the Operations Review Committee, which describes the best course of action for such patients.

21. <u>Tax</u>.

The University of Michigan shall be responsible for the reporting and paying of any applicable tax, including any applicable sales, excise or other tax, relating to the Home Infusion Therapy Services. As mutually agreed, Abbott shall provide the University of Michigan with appropriate reports.

22. <u>Products</u>.

A. Abbott shall provide the University of Michigan with consigned inventory of all relevant Abbott manufactured

23

ABT-DOJ 319638
ABT279-1636

products and equipment listed in Abbott's Hospital Products Division and Ross Division product catalogues and/or supplements as of October 1, 1991, except for "Schedule II" narcotics and Abbott/Adria FirstChoice® Oncology Products, according to the procedures outlined in Schedule III, for the University of Michigan to utilize in performance of this Agreement. Notwithstanding the foregoing, the University of Michigan may, at its sole and absolute discretion, use products other than Abbott products. The use of non-Abbott products shall not affect or change the cash distribution required by the section herein entitled "Compensation".

B.  The compensation paid by the University of Michigan shall be consistent with compensation paid by other Abbott Home Infusion Services clients of similar volumes, investment requirements, alignment of responsibilities, products and services.

C.  The University of Michigan shall use its reasonable best efforts to utilize Abbott-manufactured products in the provision of its obligations under this Agreement. In the event it is determined by HomeMed™ that an Abbott manufactured product is clinically or technically unacceptable, the following shall apply.

   1.  The University of Michigan shall submit written notification to Abbott that an Abbott manufactured product is not technically or clinically acceptable.

   2.  Abbott shall have ninety (90) days to resolve technical or clinical product features.

   3.  If, at the end of the ninety (90) days, Abbott has not demonstrated clinical or technical acceptability

24

products and equipment listed in Abbott's Hospital Products Division and Ross Division product catalogues and/or supplements as of October 1, 1991, except for "Schedule II" narcotics and Abbott/Adria FirstChoice® Oncology Products, according to the procedures outlined in Schedule III, for the University of Michigan to utilize in performance of this Agreement. Notwithstanding the foregoing, the University of Michigan may, at its sole and absolute discretion, use products other than Abbott products. The use of non-Abbott products shall not affect or change the cash distribution required by the section herein entitled "Compensation".

B.  The compensation paid by the University of Michigan shall be consistent with compensation paid by other Abbott Home Infusion Services clients of similar volumes, investment requirements, alignment of responsibilities, products and services.

C.  The University of Michigan shall use its reasonable best efforts to utilize Abbott-manufactured products in the provision of its obligations under this Agreement. In the event it is determined by HomeMed™ that an Abbott manufactured product is clinically or technically unacceptable, the following shall apply.

    1.  The University of Michigan shall submit written notification to Abbott that an Abbott manufactured product is not technically or clinically acceptable.

    2.  Abbott shall have ninety (90) days to resolve technical or clinical product features.

    3.  If, at the end of the ninety (90) days, Abbott has not demonstrated clinical or technical acceptability

24

ABT-DOJ 319640
ABT279-1638