# Exhibit 123



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                          Office of Inspector General

Office of Investigations
8100 Oak Lane, Ste 306
Miami, FL 33016

July 25, 2000

Abbott Laboratories, Inc.
1 Abbott Park Road
Abbott Park, IL. 60064-3500

Dear Sir or Madame:

Accompanying this letter is a subpoena addressed to you as Records Custodian returnable at a location of the Miami Field Office, Office of Inspector General, before my designee, Special Agent Alain Rossello. The subpoena has been issued pursuant to the authority provided to the Inspector General under Public Law 95-452 (5 UCS Appendix 3, Section 6 (a) (4) ), as amended by Public Law 100-504.

After you review the subpoena, you will see that it seeks documents similar to those demanded in a previous subpoena served upon your or your subsidiaries. Please note that the intent of the current subpoena is to acquire different documents than those acquired in response to the previous subpoena. To the extent that this subpoena can be interpreted to demand documents already provided in response to the previous subpoena, duplicate production is not required.

Fully legible and complete copies of the records called for by the subpoena will be accepted in response to the subpoena, provided that the original records will be made available to employees of my office, upon request, during normal business hours. Otherwise, original documents (including copies as maintained in your files) should be produced.

Failure to appear at the time and place specified in the subpoena may be taken as a failure to comply with the subpoena. However, as a convenience, you may assemble the documents requested and mail them by certified mail on or before August 28, 2000 to: HHS/OIG/OI, ATTN: SA Alain Rossello, 99 N.E. 4th Street, 3rd Floor, Miami, FL 33132.

If you have any questions please feel free to contact SA Alain Rossello at (305)536-6927.

Sincerely,

Linda J. Hillier
Regional Inspector
General for Investigations

EXHIBIT
#6
3/14/07

# UNITED STATES OF AMERICA
## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### OFFICE OF INSPECTOR GENERAL

---

### SUBPOENA DUCES TECUM

TO:

Abbott Laboratories, Inc.       *by service upon its registered agent:*
1 Abbott Park Road       **CT Corporation**
Abbott Park, IL. 60064-3500       **1200 S. Pine Island Road**
     **Plantation, FL 33324**

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE*  Special Agent Alain Rossello ,
*an official of the Office of Inspector General, at*  99 N.E. 4th St., Suite 300

| | |
|---|---|
| *in the City of* Miami | *and State of* Florida |
| *on the* 28ᵗʰ *day of* August | ,20 00 , *at* 9 *o'c* am |

*that day, in connection with*  an investigation of Medicaid and/or Medicare fraud.
  Should you have any questions, please contact Alain Rossello, Special Agent, U.S. Dept. Of Health
  Services, Office of Inspector General, at 305-536-6927.

     ;

*and you are hereby required to bring with you and produce at said time and place the following:*

### SEE ATTACHED

*which are necessary in the performance of the responsibility of the Inspector General under Public Law
95-452[5 USC App. 3 Section 6(a)(4)], as amended by Public Law 100-504, to conduct and supervise
audits and investigations and to promote economy, efficiency and effectiveness in the administration of
and to prevent and detect fraud and abuse in the programs and operations of the Department of Health
and Human Services*



*IN TESTIMONY WHEREOF*
Linda J. Hillier      *the undersigned official of the
Office of Inspector General of said DEPARTMENT
OF HEALTH AND HUMAN SERVICES, HAS
hereunto set h er  hand this*  21  *d a y
of*  July  20 00 .
*Regional Inspector General for Investigations*

6587

## I.   INSTRUCTIONS

A.         Each Document Request shall be construed to include documents within the knowledge, possession or control of the subpoenaed party, its attorneys, investigators, agents, owners, officers, employees, or other representatives of the subpoenaed party and/or its attorneys, as of the date of the answers given to these Document Requests and any supplemental information, knowledge, data, documents or communication responsive to these Document Requests which is subsequently obtained or discovered.

B.         If you claim privilege as a ground for not providing documents in response to any Document Request, describe the factual basis for said claim or privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim, including the date the document was prepared, the author, the addressees, all recipients and the general subject matter.

C.         If the response to any Document Request consists, in whole or in part, of an objection(s), state with specificity the full objection(s) and the particularized basis for each said objection.

## II.   DEFINITIONS

As used in these Document Requests, the following terms include the meanings set forth below:

A.         "You" or "your" means Abbott Laboratories, Abbott Pharmaceuticals, Abbott Labs and any other affiliated company, parent, subsidiary, division, joint venture or other entity or agent acting on your behalf in purchasing, marketing or distributing any of the Listed Pharmaceuticals.

B.         The term "document" means any writing or recording of any kind whether written, graphic, pictorial, photographic, phonographic, mechanical, taped, saved on computer disc, hard drives or data tapes or otherwise, and every non-identical copy. Different versions of the same document, such as different copies of a written record bearing different handwritten notations, are different documents within the meaning of the term as used.  In case originals or original non-identical copies are not available, "document" includes copies of originals or copies of non-identical copies as the case may be.

C.         The term "identify" has the following meanings:

1.         "Identify" when used in reference to a natural person, means to provide any documents that list the person's full name, their last known residence, business address, and business telephone number.

2.    **"Identify"** when referring to corporate or other entities shall mean to provide any documents that list: (a) the name; (b) present or last known address; (c) its principal place of business; and (d) the form or manner of its organization.

3.    ."**Identify**" when used in reference to a communication, means that if such communication was contained in a document, to provide the document.

D.    The term **"communication"** means a transmittal of information, or request for information, by document and includes documentation thereof, and if such communication was contained in a document, to provide the document.

E.    The term **"entity"** means an individual, corporation, partnership, proprietorship, professional corporation, association, group, governmental agency or agent, municipal corporation, state government, local government, political subdivision, or any other legal entity of any kind, whether for profit or not for profit.

F.    The words **"and"** and **"or"** shall mean "and/or."

G.    The term **"affiliated"** shall mean any form of business relationship, including, but not limited to, employee, director, officer, owner, agent, consultant, or contractor.

H.    Words in the singular should be construed as including the plural, and plural words should be construed as including the singular.

I.    The terms **"accuracy," "accurate"** or **"accurately,"** when used in reference to Price Representations, are used with reference to whether the information is reflective of the prices actually paid in the marketplace by any purchasers, including but not limited to prices paid by wholesalers, pharmacies, oncology supply houses, group purchasing organizations or physicians.

J.    The term **"Price Representations"** means any statement, assertion, representation or declaration of the price of any Pharmaceuticals, including but not limited to Average Wholesale Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, List Price or Suggested Net Trade.

K.    The term **"Pharmaceutical"** means any drug or other product sold by you which requires a physician's prescription, and includes but is not limited to "biological" products such as hemophilia factors and intravenous solutions such as sodium chloride solution.

L.        The term **"Listed Pharmaceuticals"** means the brand name, trade name or generic products listed on the attached Exhibit A, and includes all variations of the products (i.e., packaging, dosage, owner/manufacturer, diluence, NDC number or otherwise) which may have been produced, sold, offered for sale or assigned an NDC number.

M.        The term "Spread" is used to refer to the difference between the actual acquisition cost or purchase price of a Pharmaceutical (paid by purchasers of the Pharmaceuticals) and the price or cost set, published or arranged by the manufacturer or the reimbursement rate paid by third party payors (**to** purchasers of the Pharmaceuticals). Third party payors include Medicare, Medicaid and private insurance. Thus, the Spread is the gross profit actually or potentially realized by the purchasers of the Pharmaceuticals.

N.        The term **"Request for Information for New Drug Product Or Request for Additional Information of Products Currently Included in Texas Medicaid"** means the survey/questionnaire required by the state of Texas Department of Health Bureau of Vendor Drug for the approval for reimbursement of any Pharmaceutical under the Texas Vendor Drug Program.

O.        The term **"Publishers"** means any person or entity engaged in publishing drug prices, including the publishers of the following pharmaceutical pricing guides and/or databases:  the Medical Economics *Drug Topics Red Book*; the Hearst Corporation's *First DataBank*; or *Medi-Span, Inc.*

P.        The term **"Medicare Representative"** means any Medicare program employees or officials, or their agents, fiscal agents, sub-contractors or designees, including any Medicare carrier or fiscal intermediary.

Q.        The term **"Medicaid Representative"** means any state's Medicaid program employees or officials, or their agents, fiscal agents, sub-contractors or designees.

R.        The term **"AWP"** means the price that you report, advertise, publish or cause to be published, directly or indirectly, as the average wholesale price for any Pharmaceutical.

S.        The term **"WAC"** means the price that you report, advertise, publish or cause to be published, directly or indirectly, as the wholesale acquisition cost or wholesaler acquisition cost for any Pharmaceutical.

T.        The term **"Direct Price"** means the price you report, advertise, publish or cause to be published, directly or indirectly, as the "DP" or direct price for any Pharmaceutical.

U.        The term **"Best Price"** means the price you report or otherwise disseminate as the best price for any Pharmaceutical, including the price you report for purposes of the Medicaid rebate program.

V.          The term **"AMP"** means the price you report or otherwise disseminate as the average manufacturers price for any Pharmaceutical, including the price you report for purposes of the Medicaid rebate program.

**Relevant Time Period:** Unless otherwise indicated in a specific request, the requests herein refer to documents created from January 1, 1990 to the present and documents relating to such period even though created before that period.

## DOCUMENTS REQUESTED

1.    All documents (excluding invoices) which mention, evidence or reflect any Price Representation for a Listed Pharmaceutical sent or directed by you or on your behalf to any government office or official (or their privately contracted agents) responsible for receiving, processing, and/or paying claims for Medicaid or Medicare reimbursement for the Listed Pharmaceuticals, setting the rates of reimbursement for the Listed Pharmaceuticals, or for calculating Medicaid rebates for the Listed Pharmaceuticals.

2.    All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any explanation or definition of any terms commonly used to describe Price Representations or charge-back arrangements.

3.    All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any Price Representations regarding the Listed Pharmaceuticals.

4.    All documents transmitted between you and any organization, trade group, committee, lobbyist or consultant (including entities such as the American Society of Clinical Oncologists) which mention, evidence or reflect any reimbursement information regarding the Medicare Program or any Medicaid Program.

5.    All documents which mention, evidence or reflect any Price Representation for a Listed Pharmaceutical sent or provided by you or on your behalf to any elected official of any State or the United States.

6.    All documents which mention, evidence or reflect any explanation or definition of any terms commonly used to describe Price Representations, AMP, Best Price or charge-back arrangements sent or provided by you or on your behalf to any elected official of any State or the United States.

7.    All documents which mention, evidence or reflect any Price Representations sent to or received from any Publishers for any of the Listed Pharmaceuticals, including but not limited to new product submissions, data requests or price updates.

8.    All documents which mention, evidence or reflect the purpose, goal or reason for the transmittal of the information described in paragraphs 1 - 7, including internal memoranda, cover letters, analysis or strategy discussions.

9.    All documents which mention, evidence or reflect the reimbursement rates set or methodologies used by any state's Medicaid program, the Medicare program, or any private insurance program, including all documents which mention, evidence or reflect

how those reimbursement rates affect your marketing or sale of any of your Pharmaceuticals.

10.    All documents which mention, evidence or reflect the Price Representations of any of your Pharmaceuticals in comparison to or in connection with the reimbursement rates of any state's Medicaid program, the Medicare program, or any private insurance program.

11.    All documents which mention, evidence or reflect other drug manufacturers' Price Representations in comparison to or in connection with (a) your Price Representations or (b) the reimbursement rates of any state's Medicaid program, the Medicare program, or any private insurance program.

12.    All "Applications for Inclusion of a New Product and the Recertification of Products Presently Included in the Texas Vendor Drug Program" sent to the Texas Medicaid Program and all other similar forms or applications, and drafts thereof.

13.    All documents, not otherwise described in paragraph 12, transmitted to the Texas Medicaid Program which contained any Price Representations regarding any of your Pharmaceuticals, and drafts thereof.

14.    All documents which mention, evidence or reflect any discussions or analysis regarding supplying or otherwise reporting the information described in paragraphs 12 and 13.

15.    All documents that mention, evidence or reflect any impact upon the net purchase or sale price of any Listed Pharmaceutical due to any payment or proposed payment in cash or in kind directly or indirectly, including charge backs, discounts, the Spread, rebates, free pharmaceuticals, administrative fees, sponsorship of meetings, drug studies, educational or research grants or off-invoice pricing.

16.    All documents that mention, evidence or reflect any impact of the Spread upon the sale of your Pharmaceuticals to any purchaser, including any documents analyzing the gross profit or estimated gross profit of any purchaser.

17.    All documents that mention evidence or reflect the gross profits or estimated gross profits for any purchaser with respect to any of the Listed Pharmaceuticals.

18.    All documents that summarize or describe the function of any system for connecting or interfacing with physicians' billing systems or practice management systems.

19.    All documents that mention, evidence or reflect any payment in cash or in kind directly or indirectly to any employee of any agency involved in the administration of any Medicaid program or the Medicare program, or to any of their family members.

20.    All documents that mention, evidence or reflect any communications directed by you or on your behalf to any purchaser which mention, evidence or reflect either reimbursement

amounts for the Listed Pharmaceuticals or the Spread, including documents which reference AWP or WAC.

21. All documents which mention, evidence or reflect any occasion whereby the net price or cost to a purchaser was less than that reflected on the invoice to the purchaser, including any arrangement whereby payments were made directly to the purchaser or free goods were delivered directly to the purchaser thereby resulting in a reduction of the net price or net cost of the purchaser.

22. All documents which mention, evidence or reflect any price changes or changes in Price Representations to any of your Pharmaceuticals from April 30, 2000 to the present.

23. All documents which mention, evidence or reflect the reason for any price change or changes in Price Representations described in paragraph 22.

# EXHIBIT A

# ABBOTT LABORATORIES

1) Amikacin Sulfate
2) Clindamycin Phosphate
3) Dextrose 5%
4) Dextrose 5%/Sodium Chloride 0.9%
5) Furosemide
6) Heparin Lock Flush
7) Pentamidine Isethionate
8) Lactated Ringers
9) Acyclovir
10) Sodium Chloride 0.9%
11) Tobramycin Sulfate
12) Vancomycin HCL
13) Water for Injection, Sterile
14) Amino Acids/Electrolytes
15) Dextrose 5% with Potassium and Sodium Chloride