# EXHIBIT 135

# REED SMITH SHAW & MCCLAY LLP

Writer's Direct Numbers:
Phone 202-414-9230
Fax 202-414-9299
kmcguan@reedsmith.com

1301 K STREET, N.W.
SUITE 1100 – EAST TOWER
WASHINGTON, D.C. 20005-3317
PHONE: 202-414-9200
FAX: 202-414-9299

August 25, 2000

**VIA HAND DELIVERY**

David W. Ogden, Esquire
Assistant Attorney General for the Civil Division
Department of Justice
Main Justice Building
Tenth Street and Constitution Avenue, N.W.
Room 3744
Washington, D.C. 20530

  Re: United States ex rel. Ven-A-Care v. Abbott Laboratories, Inc., et al., Civil Action No. 95-1354-CIV-GOLD (S.D. Fla.) (Under Seal)

R1-014069

Dear Mr. Ogden:

  This letter is submitted on behalf of the following drug manufacturers: Aventis Behring, Baxter, Bristol-Myers Squibb, Dey, ESI Lederle, Fujisawa, Glaxo Wellcome, Immunex, Novartis, SmithKline Beecham, and Warrick.

  As you know, for some five years now, the Department of Justice and the Office of Inspector General, HHS, have been investigating the pricing of certain pharmaceutical products which are reimbursed by the Medicare and Medicaid programs. The drug manufacturers on whose behalf this letter is submitted have grown increasingly concerned about the underlying basis for this investigation and the manner in which it has been conducted. Recently, each drug manufacturer received an overbroad and burdensome subpoena which has reinforced our concerns. We are submitting this letter and requesting a meeting with you promptly to discuss our growing concerns.

  This investigation arises out of a *qui tam* suit filed under seal in 1995 in the Southern District of Florida, United States ex rel. Ven-A-Care v. Abbott Laboratories, Inc., et al., Civil Action No. 95-1354-CIV-GOLD (Under Seal). More than two years after the case was filed, the government served its first OIG subpoena on numerous drug manufacturers, including those submitting this letter, requesting voluminous records relating to the pricing and marketing of certain pharmaceutical products. In response, the drug manufacturers produced thousand of pages of documents. Last week, the government served new OIG subpoenas on a number of the drug manufacturers containing 24 separate document requests. These new subpoenas are

DELAWARE – Wilmington · NEW JERSEY – Princeton · Newark · NEW YORK CITY · PENNSYLVANIA – Pittsburgh · Philadelphia · Harrisburg
VIRGINIA – Falls Church · McLean · Richmond · Leesburg · WASHINGTON, D.C.
www.reedsmith.com

DCLIB-0224864.01-KHMCGUA

**VAC MDL 44925**

ABT133-4359 F

# REED SMITH SHAW & McCLAY LLP

David W. Ogden, Esquire
August 25, 2000
Page 2

disturbing in a number of significant respects. First, these new subpoenas were received <u>five years</u> after the *qui tam* case was filed and almost <u>three years</u> after the first group of OIG subpoenas were served. Second, the new subpoenas are extremely broad and open-ended, covering a period of more than ten years. Complying with these new subpoenas will take months and require hundreds, if not thousands, of hours of work and untold expense. Third, while the scope of the subpoena is by no means clear, some paragraphs of the subpoena could be interpreted to seek documents related to <u>all</u> pharmaceutical products of each manufacturer and not just those products which were the subject of the first group of subpoenas, thereby greatly expanding the scope of the investigation <u>five years</u> after it began.

Fourth, the government has known since as early as 1968 that AWP and WAC are not the prices at which physicians and other providers necessarily purchase the drugs. Because of the burden of collecting sufficient information to make what it considered to be an appropriate estimate of actual acquisition cost, the government made a conscious decision in the early 1990s to continue to reimburse based on average wholesale price. In light of these facts, the subpoenas' broad request for voluminous documents is unreasonable and inappropriate.

Fifth, the subpoenas' request for documents transmitted or sent to "any organization, trade group, committee, lobbyist or consultant" or "any elected official of any State in the United States" regarding Medicare or Medicaid reimbursement strikes directly at the drug manufacturers' exercise of their First Amendment rights to petition Congress and other legislative bodies. It can only be seen as an effort to chill the exercise of those rights.

Further, given the way in which the government has handled the documents previously provided to it in this investigation, the drug manufacturers submitting this letter are understandably concerned about the treatment of any additional confidential or sensitive documents provided to the government.

In March 2000, eleven of the drug manufacturers submitted a Position Paper to DOJ setting forth in detail why there were no False Claims Act violations with respect to the pricing of these products and why the government should decline to intervene in the *qui tam* action. In particular, the Position Paper demonstrated that the government has understood the nature of Average Wholesale Price ("AWP") and Wholesale Acquisition Cost ("WAC") since at least as early as 1968 and has known that AWP and WAC do not represent the actual prices at which physicians and other providers purchase these drugs. In June 2000, the same manufacturers provided you with (1) a "Price Alert" from the First DataBank in which First DataBank states that it, not manufacturers, sets the AWP it provides based on a survey of national wholesalers, and (2) a letter from Donna Shalala, Secretary of Health and Human Services, to Representative Thomas Bliley, Chairman of the House Commerce Committee, which completely support the manufacturers' position. In Secretary Shalala's letter, the Secretary makes it very

R1-014070

**VAC MDL 44926**

ABT133-4360

# REED SMITH SHAW & MCCLAY LLP

David W. Ogden, Esquire
August 25, 2000
Page 3

clear that: (1) the government has for many years known that physician acquisition cost varied and was significantly lower than AWP; (2) the government tried to address these differences through regulations issued in 1991 changing the Medicare reimbursement amount to the lower of estimated acquisition cost or average wholesale price;[1] (3) the government determined that its method for determining physician acquisition cost - surveying physicians - was "burdensome and unfeasible"; and (4) will full knowledge that average wholesale price was not reflective of physician acquisition cost, determined to continue using average wholesale price as the reimbursement amount while seeking a legislative change that would require physicians to submit their actual acquisition cost with their claims and be paid based on that amount.

DOJ promised the eleven drug manufacturers a written response to the Position Paper on behalf of the government. To date, no government response has been received. Instead of a government response, the drug manufacturers received a written response from the <u>relators</u> with whom the government apparently shared the Position Paper. The most disturbing thing about the relators' response was that it attached copies of highly sensitive and confidential documents produced by certain drug manufacturers to the government in response to OIG subpoenas and Civil Investigative Demands. Apparently, the government shared the documents previously produced with the relators. Moreover, the relators' response has now shared drug manufacturer's sensitive and confidential documents with every other drug manufacturer without the consent of the drug manufacturer that produced the documents in the first instance.

Under all of these circumstances, the undersigned drug manufacturers urgently request a meeting with you and others participating in this matter to discuss these and other concerns about the subpoenas, and the way in which this investigation has been conducted to date. Because of the importance of these issues, we do not intend to produce documents responsive to the subpoenas until we have had the opportunity to discuss these issues with you personally. In requesting such a meeting, we do not waive our rights to pursue any other available remedies in responding to the subpoenas, including motions to quash.

---

[1]  Medicaid regulations already required that states abide by "upper limits" tied to estimated acquisition cost and, as made clear in the Position Paper, the government had repeatedly, beginning at least as early as 1977, informed states that AWPs were list prices and the states should not rely on those list prices to determine estimated acquisition costs for providers.

R1-014071

## VAC MDL 44927

ABT133-4361

## REED SMITH SHAW & MCCLAY LLP

David W. Ogden, Esquire
August 25, 2000
Page 4

I look forward to hearing from you at your earliest opportunity.

Very truly yours,

*Kathleen McGuan*

Kathleen H. McGuan
On Behalf of Counsel for the
Manufacturers Listed Above

Cc:  Linda J. Hillier,
     Regional Inspector General
     for Investigations Dept. of
     Health & Human Services
Stuart Shiffer, Esquire
Michael Hertz, Esquire
Mark A. Lavine, Esquire

R1-014072

**VAC MDL 44928**

ABT133-4362     L