# Exhibit 139



18131924

Jan 18 2008
4:49PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

In re: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE
LITIGATION

**THIS DOCUMENT RELATES TO:**

*United States of America ex rel. Ven-a-Care*
*of the Florida Keys, Inc., v. Abbott*
*Laboratories, Inc.*

CIVIL ACTION NO. 06-11337-PBS

MDL No. 1456
Civil Action No. 01-12257-PBS

Hon. Patti Saris

## DEFENDANT ABBOTT LABORATORIES, INC.'S RESPONSES
## TO THE UNITED STATES' SECOND SET OF REQUESTS FOR ADMISSION

Defendants Abbott Laboratories, Inc, ("Abbott") responds to Plaintiff, the United States'

("Plaintiff") Second Set of Requests for Admission ("Requests") as follows:

### GENERAL OBJECTIONS

1.      Abbott objects to these Requests as untimely and unduly burdensome to the extent

they purport to require Abbott to search for information going back nearly two decades.  Plaintiff

unsealed its case against Abbott in 2006 after having the suit under seal for more than eleven

years.  Plaintiff's eleven-year delay in unsealing the suit has created an unnecessary and

unreasonable burden on Abbott.  Plaintiff's unreasonable delay also makes it possible that

evidence responsive to these Requests is no longer available.

2.      Abbott objects to these Requests as untimely and unfair to the extent they ask

Abbott to address information or situations that were not "disclosed" or communicated to

unidentified Medicare and Medicaid officials.  Such Requests ask Abbott to "prove the negative"

and are improper subjects for Requests for Admissions.  Plaintiff's eleven-year delay in

unsealing the suit also makes it possible that such communications are no longer available.  In light of these circumstances, Plaintiff's Requests are patently unfair.

3.      Abbott objects to these Requests as argumentative, unfair, misleading, confusing and unduly prejudicial to the extent the Requests assume, or purport to impose, responsibilities and duties to report or act otherwise not found in the law.

4.      In responding to these Requests, Abbott will search for information from the division responsible for pricing, selling and marketing the drugs identified in Plaintiff's Complaint (the "Subject Drugs"), to non-hospitals and from the individuals responsible for communicating with representatives of any Medicare or Medicaid agencies and with the pricing compendia regarding the Subject Drugs.  Abbott will also provide information relating to the "cross-cutting" issues consistent with the Courts' May 22, 2007 Order (Dkt. 4244).

5.      Abbott's investigation for information responsive to Plaintiff's Requests continues, and its responses to these Requests are based on information available at this time.  Abbott reserves the right to supplement and/or amend these responses at any time prior to trial.

6.      Abbott's specific objections to each Request are in addition to the objections set forth in this and subsequent sections, which form a part of the response to each and every Request and are set forth here to avoid the duplication and repetition of restating them for each response.

7.      Abbott's General and Specific Objections to each Request are in addition to and supplement those made by Abbott in previous responses to other discovery requests.  These General and Specific Objections and/or responses do not constitute waiver or withdrawal of any previous objection and/or response, and to the extent necessary, all previous responses to discovery requests are incorporated herein by way of reference.

8.      The information supplied herein is for use in this litigation and for no other purpose.

9.      Abbott objects to these Requests because they are overly broad and unduly burdensome to the extent they exceed the scope of discovery permitted under the Federal Rules of Civil Procedure, the Local Rules, and Orders of the Court.

10.     Abbott objects to these Requests because they are overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information that does not relate generally to the Subject Drugs.  Specifically, Abbott objects to these Requests as premature with respect to one subject drug at issue in Abbott's pending Motion to Dismiss that has not yet been resolved by the Court.  Abbott will not respond to these Requests with respect to Acyclovir.

11.     Abbott objects to these Requests because they are overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information from a time period other than the time period 1991 through December 31, 2003 (the "Relevant Claim Period").  Abbott's responses to these Requests are limited to the time period 1991 through December 31, 2003.

12.     Abbott objects to these Requests because they are overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek documents and information relating to sales to hospitals.  Unless otherwise noted, to the extent a request seeks information relating to Abbott's sales, Abbott's responses are limited to sales to non-hospital providers.

13.     Abbott objects to these Requests because they are overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek documents relating to health insurance programs not at issue in this action.  Unless otherwise indicated, Abbott's responses are limited to the Medicaid and Medicare programs.

14.     Abbott objects to these Requests because they are overly broad, unduly burdensome, vague and ambiguous to the extent they contain any implications and/or explicit or implicit characterizations of the facts, events, circumstances, or issues addressed in these Requests.  Any response by Abbott is not intended to indicate that Abbott agrees with any such implications or characterizations, or that such implications or characterizations are relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

15.     Abbott objects to these Requests to the extent that they are duplicative of other discovery served by the Plaintiff, including the Interrogatories, and are therefore overly burdensome and harassing.

16.     Abbott objects to these Requests to the extent they seek information that is protected by the attorney-client privilege, the work-product doctrine, and/or any other applicable doctrine or privilege.

### OBJECTIONS TO INSTRUCTIONS

1.     Abbott generally objects to the "Instructions" because they are unduly burdensome, improper, vague, ambiguous, without basis in the law, and to the extent they seek information beyond that which is required under the law.  Subject to the General and Specific Objections stated herein, Abbott will comply with the law, specifically, but not limited to, the

Federal Rules of Civil Procedure, the Court's Local Rules, and the Orders of the Court, when responding to the Requests.

2.       Abbott objects to Instruction C as overly broad, unduly burdensome, and improper.  Abbott will respond to these Requests only with information relating to the Subject Drugs.  Abbott will comply with the Court's Order of May 22, 2007 (Dkt. 4244).

3.       Abbott objects to paragraph D of Plaintiff's "Instructions," which purports to identify the Relevant Claim Period as 1985 to present, as overly broad, unduly burdensome and because it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Abbott's responses to these Requests are limited to the time period 1991 through January 31, 2003 (the "Relevant Claim Period") as ordered by the Court (Dkt. 4244).

## OBJECTIONS TO DEFINITIONS

1.       Abbott objects to the definition of the term "documents" as overly broad and unduly burdensome.

2.       Abbott objects to the terms "You," "Your," "Abbott" and "Defendant" as overly broad and unduly burdensome.  Abbott will construe these terms to mean Abbott Laboratories and Abbott Laboratories Inc. with respect to all matters concerning its Hospital Products Division ("HPD"), including the Subject Drugs.

3.       Abbott objects to the definition of "affiliated" as legally improper, argumentative, vague, ambiguous, and unduly burdensome.

4.       Abbott objects to the definition of "accuracy," "accurate" or "accurately" as argumentative, vague and ambiguous.

5.       Abbott objects to the definition of "Price Representations" as overly broad, vague, ambiguous, and confusing.  Abbott further objects to this definition as argumentative because it

assumes that Abbott made representations relating to the AWP published by third parties of the Subject Drugs.

6.      Abbott objects to the definition of "Pharmaceutical" because it is overly broad and seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Abbott will limit its responses only to the Subject Drugs.

7.      Abbott objects to the definition of "Spread" because it is overly broad, vague, ambiguous, argumentative and confusing.  Abbott further objects to the term "Spread" because it seeks information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information regarding private insurance companies.  Abbott further objects to the term "Spread" to the extent it assumes that the difference between the "actual acquisition cost or purchase price" of a drug and reimbursement results in a profit or margin to the purchaser, without taking into account overhead costs, dispensing or administration costs, and other such costs.

8.      Abbott objects to the definition of "AWP" because it is overly broad, vague, ambiguous, and argumentative.  Abbott further objects to this definition as argumentative because it assumes, incorrectly, that Abbott "reported, advertised, published, or caused to be published" an AWP for the Subject Drugs.

9.      Abbott objects to the definition of "Best Price" because it is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Abbott further objects to the definition of "Best Price" because it is a defined term under federal law. *See* 42 U.S.C. 1396r-8.

10. Abbott objects to the definition of "AMP" because it is a defined term under federal law. *See* 42 U.S.C. 1396r-8.

11. Abbott objects to the definition of "average or estimated acquisition cost" as overly broad, vague and ambiguous. Abbott further objects to the definition of "average or estimated acquisition cost" to the extent it assumes and/or imposes a duty on Abbott to calculate such a cost.

12. Abbott objects to the definition of "disclose," "disclosed," and "disclosure" as vague, ambiguous, and conclusory.

13. Abbott objects to the definition of "marketed the Spread" as argumentative, conclusory, vague and ambiguous

14. Abbott objects to the definition of "Subject Drugs" to the extent it is inconsistent with the term as previously defined herein.

15. Abbott objects to the definition of "Consignment Partner" as overly broad, legally improper, vague, and ambiguous.

16. Abbott objects to the definition of "TAP" as legally improper, vague and ambiguous.

## I. REQUESTS FOR ADMISSION

1. Admit that You opposed federal legislative efforts in 1997 to either (1) set Medicare drug reimbursements using actual acquisition cost information or (2) to grant the Secretary of Health and Human Services the discretion to set Medicare drug reimbursements at some amount below AWP or 95% of AWP.

**RESPONSE:** In addition to its General Objections, Abbott objects to this Request because the terms "efforts," "set," and "grant," are vague and ambiguous. Abbott further objects to this Request because it seeks information that is irrelevant, as noted by the Court on November 5, 2007. Abbott also objects to this Request because its communications with any

governmental body or agency are privileged under the First Amendment and the Noerr-Pennington doctrine.  Abbott further objects to this request as harassing because it is completely duplicative of questions posed to numerous Abbott witnesses, and is duplicative of the Government's pending request for 30(b)(6) testimony.

Subject to and without waiving its objections, Abbott admits that it submitted commentary to various sources regarding the proposed legislation, the substance of which can be determined from testimony and documents provided in this action already.  Abbott denies any remaining allegations in this Request, and specifically denies that this Request accurately or completely summarizes the substance of any proposed legislation.

2.      Admit that Your customers would be financially affected by any changes in the way the Medicare or any state Medicaid program set reimbursement levels for Abbott drugs.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "customers," "financially affected," and "changes," are vague and ambiguous. Abbott further objects to the term "reimbursement" as vague, because Medicare and Medicaid are not "reimbursement" programs, but are instead payment programs that assign payment amounts applicable to particular products without regard to what any particular provider actually paid for the product.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to "Abbott drugs" other than the Subject Drugs.  Abbott further objects to this Request because it seeks information outside the custody and control of Abbott.  Abbott further objects to this Request because it is an improper hypothetical question.

Subject to and without waiving its objections, Abbott admits only that certain customers might be affected financially by changes to the payment amount under the Medicare and Medicaid programs depending on the nature of those changes and other market factors.

3.      Admit that the List Prices for the Subject Drugs that You provided to the Price Publications was used by those Price Publications to determine the AWP for those drugs.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "provided" and "determine" are vague, ambiguous, and argumentative. Abbott cannot attest to what the Price Publications "used" in publishing their proprietary compendia.  Such information is outside of Abbott's care, custody or control.  Accordingly, having made reasonable inquiry and because the information known or readily available is insufficient to enable Abbott to admit or deny this Request, Abbott cannot truthfully admit or deny this Request, and therefore the Request is denied.

4.      Admit that you reported WACs for the Subject Drugs.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the term "reported" is vague and ambiguous.

Subject to and without waiving its objections, Abbott admits that during portions of the Relevant Claim Period for some of the Subject Drugs, Abbott reported its wholesale acquisition cost to certain pricing publications.  Abbott denies any remaining allegations in this Request.

5.      Admit that some of Your employees (whether current or former) knew that the AWPs and/or WACs for the Subject Drugs determined how much Medicare and state Medicaid programs reimbursed for those drugs.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "knew," and "determined," are vague and ambiguous.  Abbott further objects to the term "reimbursement" as vague, because Medicare and Medicaid are not "reimbursement"

programs, but are instead payment programs that assign payment amounts applicable to

particular products without regard to what any particular provider actually paid for the product.

   Subject to and without waiving its objections, Abbott admits that during the

Relevant Claim Period certain employees (as they have testified in this action already) were

aware of certain methodologies used by Medicare and state Medicaid programs to pay for the

Subject Drugs.  Abbott denies any remaining allegations in this Request.

   6. Admit that You received the October 31, 2000 letter from Congressman Fortney
"Pete" Stark to Miles White.

   **RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the term "received" is vague and ambiguous.

   Subject to and without waiving its objections, admitted.

   7. Admit that You never responded in any way to Congressman Stark regarding his
October 31, 2000 letter.

   **RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "responded," "any way," and "regarding" are vague and ambiguous.

   Subject to and without waiving its objections, Abbott admits that no response was

communicated to Congressman Stark.


   8. Admit that You changed the way You reported catalogue/list prices in 2001, at
least in part, due to the negative publicity arising from Congressional investigations into Your
pricing reporting practices, and/or federal and state investigations into Your price reporting
practices.

   **RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "negative publicity," "Congressional investigations," "pricing reporting

practices," and "federal and state investigations" are vague and ambiguous.  Abbott further

objects to this Request because it seeks information that is irrelevant, as noted by the Court on

November 5, 2007.  Abbott also objects to this Request because its communications with any

governmental body or agency are privileged under the First Amendment and the Noerr-

Pennington Doctrine.  Abbott further objects to this Request as harassing because it is

completely duplicative of questions posed to numerous Abbott witnesses, and is duplicative of

the Government's pending request for 30(b)(6) testimony.

Subject to and without waiving its objections, Abbott states that a response to this

Request is better made in response to the Government's pending request for 30(b)(60) testimony

on this same topic, through which Abbott will be able to discuss the non-privileged information

relating to the reasons for Abbott's 2001 price changes.


9.      Admit that You lowered Your List Prices on the Subject Drugs in 2001, in part, in
response to the AWP changes that First Databank undertook at the suggestion of the Department
of Justice.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "AWP changes," and "suggestion" are vague and ambiguous.

Subject to and without waiving its objections, see response to Request No. 8


10.     Admit that Your Home Infusion Services group at one point owned Medicare and
Medicaid provider pharmacies.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "owned," and "Medicaid provider pharmacies," are vague and ambiguous.

Abbott further objects to this Request because it is overly broad, unduly burdensome, not

relevant to the subject matter of this action, and not reasonably calculated to lead to the

discovery of admissible evidence to the extent it seeks information relating to a time period other

than the Relevant Claim Period.

Subject to and without waiving its objections, Abbott states that at some point during the Relevant Claim Period Abbott operated three home infusion pharmacies.  Abbott denies any remaining allegations in this Request.

11.    Admit Your Home Infusion Services group submitted reimbursement claims to the Medicare and/or state Medicaid programs on behalf Your owned-pharmacies or Your customers.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "submitted," "on behalf," "owned-pharmacies," and "your customers" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.  Abbott further objects to the term "reimbursement" as vague, because Medicare and Medicaid are not "reimbursement" programs, but are instead payment programs that assign payment amounts applicable to particular products without regard to what any particular provider actually paid for the product.

Subject to and without waiving its objections, Abbott admits that, at some time during the Relevant Claim Period, the Home Infusion Services department of Abbott's Alternate Site group offered various services to its customers, which on some occasions included assistance in submitting claims for payment to the Medicare and /or Medicaid programs for the Subject Drugs. Abbott denies any remaining allegations in this Request.

12.    Admit that You were aware of the United States' investigation into Your Price Reporting as early as 1996, when You received an investigative subpoena regarding the subject matter.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "aware," "United States' investigation," "subject matter" are vague and ambiguous.

Subject to and without waiving its objections, Abbott states that it was aware of a civil investigative demand from the United States Department of Justice in 1996.

13.     Admit that You provided services to TAP, including the services of Your in-house legal department, computer and technology departments, and Your government relations/lobbying department.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "provide services," "legal department," "computer and technology departments," and "government relations/lobbying department" are vague and ambiguous. Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.

Subject to and without waiving its objections, Abbott admits that during the Relevant Claim Period Abbott entered into certain agreements with TAP Pharmaceutical Products Inc., some of which fell into categories of this Request, to provide certain services to TAP in exchange for agreed fees.  Abbott denies the remaining allegations in this Request.

14.     Admit that, at the time of TAP's guilty plea, You knew that spread marketing and setting List Prices or AWPs at levels far higher than what customers paid for contravened the False Claims Act and Anti-kickback Statute.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "knew," "spread marketing," "setting," "levels far higher than what customers paid for," and "contravened" are vague, ambiguous, and argumentative.  Abbott further objects

to this Request as argumentative because it assumes, incorrectly, that Abbott "set" AWP.  Abbott

further objects to this Request because it calls for a legal conclusion and is thus improper.

Abbott also objects to this Request because it seeks information that is protected by the

attorney/client privilege and/or the work product doctrine.

15.     Admit that Your Alternate Site Business Unit, and/or Your Home Infusion
pharmacies sold TAP's Lupron drug to Your customers.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request

because the term "customers" is vague and ambiguous.  Abbott further objects to this Request

because it is overly broad, unduly burdensome, not relevant to the subject matter of this action,

and not reasonably calculated to lead to the discovery of admissible evidence to the extent it

seeks information relating to drugs other than the Subject Drugs and a time period other than the

Relevant Claim Period.

Subject to and without waiving its objections, Abbott states that the former Home

Infusion Services department of HPD Alternate Site offered various services to its customers,

which included providing numerous drugs, including Lupron®, to its home infusion pharmacy

customers for dispensing to their patients.  Abbott denies any remaining allegations in this

Request.


16.     Admit that you knew that the United States believed that spread marketing
violated the False Claims Act and Anti-kickback Statute.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the term "knew," "believed," "spread marketing," and "violated" are vague and

ambiguous.  Abbott cannot attest to what the United States believed violated the False Claims

Act and Anti-kickback Statute.  Such information is outside of Abbott's care, custody or control.

Accordingly, having made reasonable inquiry and because the information known or readily

available is insufficient to enable Abbott to admit or deny this Request, Abbott cannot truthfully

admit or deny this Request, and therefore the Request is denied.

17.     Admit that prior to 2002, You never had a Compliance Department or any other
separate department responsible for ensuring compliance with State and Federal Medicare and
Medicaid statutes and regulations during the period from 1991 until 2001.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "Compliance Department," "other separate department," and "responsible for

ensuring compliance," are vague and ambiguous.  Abbott also objects to this Request because it

assumes that Abbott had a duty to have a Compliance Department or other separate department

in order to ensure compliance with State and Federal Medicare and Medicaid statutes and

regulations.

Subject to and without waiving its objections, Abbott admits that in 2001 it established an

Office of Ethics and Compliance whose responsibilities included ensuring compliance with

certain state and Federal Medicare and Medicaid statutes and regulations.  Abbott denies any

remaining allegations in this Request.


18.     Admit that Virginia Tobiason was responsible for Federal and State Medicare and
Medicaid statutory and regulatory reimbursement compliance within HPD during her tenure as a
reimbursement supervisor within Your Home Infusion Business Unit.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request

because the terms "responsible," "regulatory reimbursement compliance," "tenure," and

"reimbursement supervisor" are vague and ambiguous.

Subject to and without waiving its objections, Abbott states that Ms. Tobiason's job titles

and responsibilities are as she testified to in her deposition on March 28, 2007.  Abbott denies

any remaining allegations in this Request.

19.     Admit that Your Alternate Site Business Unit sold and distributed Your Ross Division nutritional products, including enteral products, and/or sold and distributed Ross Division pump products, for which reimbursement may be made by Medicaid or Medicare or other federal health care programs.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "sold," "distributed," and "other federal health care programs" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to products other than the Subject Drugs and a time period other than the Relevant Claim Period. Abbott further objects to the term "reimbursement" as vague, because Medicare and Medicaid are not "reimbursement" programs, but are instead payment programs that assign payment amounts applicable to particular products without regard to what any particular provider actually paid for the product.

Subject to and without waiving its objections, Abbott states that the former Home Infusion Services department within HPD Alternate Site offered various services to its customers, which included supplying numerous products, including certain Ross Products, to its home infusion pharmacy customers for dispensing to their patients.  Abbott denies any remaining allegations in this Request.

20.     Admit that notwithstanding the TAP criminal plea and Your side letter with the Department of Justice, at no time did You report Your true contract prices for the Subject Drugs to the Department of Justice, HHS-OIG or CMS at any time from 1991 through 2003.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "notwithstanding the TAP criminal plea," "report," and "true contract prices" are vague and ambiguous.  Abbott further objects to this Request because it is argumentative to

the extent it assumes that Abbott had a duty to report contract prices to the Department of Justice, HHS-OIG or CMS during the Relevant Claim Period.

Subject to and without waiving its objections, Abbott admits that it accurately reported those prices for the Subject Drugs that it was required by law to report during the Relevant Claim Period.  Further answering, Abbott admits that, since 1991, it has submitted Average Manufacturer Price to CMS, and its predecessor, and further states that it has sold its products, including the Subject Drugs, to the federal government at substantially discounted prices through the Federal Supply Schedule program and to various state entities.  Abbott's investigation into government knowledge continues.

21.     Admit that You never notified any Medicare or Medicaid official of any price You actually charged to any of Your customers for the any of the Subject Drugs at any time from January 1, 1989 through to December 31, 2003.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "never notified," "price," "actually charged," and "customers" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.  Abbott also objects to this Request as argumentative because it assumes that Abbott had a duty to report prices "actually charged" to Medicare or Medicaid officials.

Subject to and without waiving its objections, see response to Request No. 20.

22.     Admit that prior to 2001 Michael Tootell advised the Your in-house legal department that he had concerns about the legality of the high Spreads on Your products.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "advised," "concerns," "legality," and "high Spreads," are vague and

ambiguous.  Abbott further objects to this Request because it is overly broad, unduly

burdensome, not relevant to the subject matter of this action, and not reasonably calculated to

lead to the discovery of admissible evidence to the extent it seeks information relating to drugs

other than the Subject Drugs and a time period other than the Relevant Claim Period.

Abbott further objects to this Request because it seeks information that is protected by the

attorney/client privilege and/or the work product doctrine.

23.     Admit that for the years 1989 through 2002, You never had or maintained a
written policy concerning or prohibiting your HPD sales force from marketing the Spread.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "had," "maintained," "written policy," "concerning," "prohibiting,"

"marketing the Spread" are vague, ambiguous, and argumentative.

Subject to and without waiving its objections, Abbott admits only that there was no

formal, written policy prior to 2003 addressing spread or payment for products by Medicare or

Medicaid.  Abbott denies any remaining allegations in this Request.

24.     Admit that for the years 1989 through 2002, You never had or maintained a
written policy prohibiting your HPD sales force from discussing Medicare or Medicaid
reimbursement with customers.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "had," "maintained," "written policy," "prohibiting" and "customers"  are

vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly

burdensome, not relevant to the subject matter of this action, and not reasonably calculated to

lead to the discovery of admissible evidence to the extent it seeks information relating to drugs

other than the Subject Drugs and a time period other than the Relevant Claim Period.  Abbott

further objects to the term "reimbursement" as vague, because Medicare and Medicaid are not

"reimbursement" programs, but are instead payment programs that assign payment amounts applicable to particular products without regard to what any particular provider actually paid for the product.

Subject to and without waiving its objections, see response to Request 23.

25.     Admit that for the period from January 1, 1991 through to December 31, 2003, if Your customers asked for AWP information, Your HPD employees were not restricted in their ability to provide that AWP information to customers by any formal or informal corporate Abbott policy.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "customers," "asked," "AWP information," "restricted," "ability to provide," and "formal or informal corporate Abbott policy" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs.

Subject to and without waiving its objections, see response to Request No. 23.  Further answering, Abbott admits that numerous witnesses have testified that, prior to 2003, they were aware that it was Abbott's practice to market HPD products based on a variety of factors, not on any payment amount made by Medicare or Medicaid.

26.     Admit that for the period from January 1, 1991 through to December 31, 2003, if HPD customers requested AWP information as part of requests for bids, or requests for information as part of the contract negotiation process, You would provide that information, including AWP information for the Subject Drugs.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "HPD customers," "requested," "AWP information," "part of requests for bids," and "contract negotiation process," are vague and ambiguous.  Abbott further objects to this Request because it is an improper hypothetical.

27.     Admit that at times during the period from January 1, 1991 through to December 31, 2003, You knew some HPD customers would evaluate contract proposals based upon Spread.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "at time," "knew," "evaluate," and "contract proposals," are vague and ambiguous.  Abbott further objects to this Request because it seeks information outside of Abbott's custody and control.  Abbott cannot attest to how its customers ultimately evaluated contract proposals.  Such information is outside of Abbott's care, custody or control. Accordingly, having made reasonable inquiry and because the information known or readily available is insufficient to enable Abbott to admit or deny this Request, Abbott cannot truthfully admit or deny this Request, and therefore the Request is denied.

28.     Admit that if customers in their Requests for Bid, or requests for contract information, would request it, You would provide AWP, or other information, to Your customers that would enable them to calculate Spreads on the Subject drugs.

**RESPONSE:**    In addition to its General Objections, Abbott objects to this Request because the terms "customers," "request," "provide," and "calculate" are vague and ambiguous. Abbott further objects to this Request because it seeks information outside Abbott's custody and control.  Abbott further objects to this Request because it is an improper hypothetical question.

29.     Admit that You knew that some of Your HPD customers at times during the period from January 1, 1991 through to December 31, 2003 would award contracts based upon which manufacturer had the most advantageous or largest Spreads.

**RESPONSE:**    In addition to its General Objections, Abbott objects to this Request because the terms "award," and "most advantageous," are vague and ambiguous.  Abbott further objects to this Request because it seeks information outside the custody or control of Abbott. Abbott cannot attest to the bases upon which any of its customers ultimately awarded contracts. Such information is outside of Abbott's care, custody or control.  Accordingly, having made reasonable inquiry and because the information known or readily available is insufficient to

enable Abbott to admit or deny this Request, Abbott cannot truthfully admit or deny this

Request, and therefore the Request is denied.

30.     Admit that for the period from 1991 until 2001 You sold the Subject Drugs at its published List Prices to less than 5 percent of Your customers.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request

because the terms "published," and "customers" are vague and ambiguous.  Abbott further

objects to this Request as hopelessly vague as to which customers, which classes of trade and/or

which channels of distribution, hospital or alternate site, are included in the calculation.

31.     Admit that for the period from 1991 until 2001, for those non-List Price customers who did not purchase Your Subject Drugs at List Price, the Spread between the List price reported by You and the price You contracted with those non-List Price customers exceeded 30%.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request

because the terms "non-List Price customers," "purchase," "contracted," and "exceeded 30%"

are vague and ambiguous.  Abbott further objects to this Request as vague and ambiguous due to

the double negatives.

Subject to and without waiving its objections, Abbott states that it sold its products,

including the Subject Drugs, for various amounts during the Relevant Claim Period.  Further

answering Abbott states that it has produced transaction level sales data to the DOJ; which data

contains the prices actually paid by its customers.  Abbott denies the remaining allegations in this

Request.

32.     Admit that Your HPD Contract Marketing Unit was responsible for setting all List Prices for the Subject Drugs.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request

because the terms "HPD Contract Marketing Unit," "responsible," "setting" are vague and

ambiguous.

Subject to and without waiving its objections, Abbott admits that during the Relevant Claim Period the List Prices for the Subject Drugs were set by the Hospital Business Sector of Abbott's former HPD.

33.     Admit that Your Alternate Site Business Unit had no responsibility for setting List Prices for the Subject Drugs.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "responsibility," and "setting" are vague and ambiguous.

Subject to and without waiving its objections, see response to Request No. 32.

34.     Admit that in setting any of Your pricing for any of the Vancomycin sold by HPD, You never considered the negative health impact that overutilization of Vancomycin could cause.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "setting," "pricing," "considered," "negative health impact," "overutilization," and "cause" are vague and ambiguous.  Abbott further objects to this Request as argumentative and harassing.

35.     Admit that in setting any of Your pricing for the Subject Drugs, You never considered the effect that high List Prices would have on patient Medicaid or Medicare co-pays.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "setting," "pricing," "considered," and "effect," are vague and ambiguous. Abbott further objections to this Request because it seeks information outside of Abbott's custody or control, as Abbott does not control Medicare or Medicaid co-pays.  Abbott further objects to this Request as argumentative and harassing.

36.     Admit that Your HPD Home Infusion Business Unit entered into contracts whereby it would provide customers with products, including the Subject Drugs on a consignment basis.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request

because the terms "provide," "customers," and "consignment basis" are vague and ambiguous.

Subject to and without waiving its objections, Abbott admits that its Home Infusion

customers paid for Abbott's products through an agreed upon arrangement whereby Abbott

received a percentage of the amount paid to Home Infusion customers by various third party

payors.

37.     Admit that when Your HPD Home Infusion Business Unit entered into contracts
to consign goods to the Consignment Partners, You would not charge customers for the Subject
Drugs.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request

because the terms "consign goods," "Consignment Partners," and "charge customers" are vague

and ambiguous.

Subject to and without waiving its objections, see response to Request No. 36.

38.     Admit that when Your HPD Home Infusion Business Unit entered into contracts
to consign goods, it would collect a percentage of the Consignment Partners' reimbursements
from Third Party Payors, including Medicaid and Medicare based upon the therapies billed to
those Third Party Payors.

**RESPONSE:**    In addition to its General Objections, Abbott objects to this Request

because the terms "consign goods," "collect a percentage," "Consignment Partners,"

"reimbursements," and "therapies billed" are vague and ambiguous.  Abbott further objects to

this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of

this action, and not reasonably calculated to lead to the discovery of admissible evidence to the

extent it seeks information relating to drugs other than the Subject Drugs and a time period other

than the Relevant Claim Period.  Abbott further objects to the term "reimbursement" as vague,

because Medicare and Medicaid are not "reimbursement" programs, but are instead payment

programs that assign payment amounts applicable to particular products without regard to what any particular provider actually paid for the product.

Subject to and without waiving its objections, see response to Request No. 36.

39.     Admit that when Your HPD Home Infusion Business Unit entered into contracts to consign goods to Your Consignment Partners, You would never collect payment from the Consignment Partners for the Subject Drugs, except to the extent that You shared in a percentage of reimbursement collections from Third Party Payors.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "consign goods," "Consignment Partners," "collect payment," and "percentage of reimbursement collections" are vague and ambiguous.

Subject to and without waiving its objections, see response to Request No. 36.

40.     Admit that You permitted the Consignment Partners to set their own prices for the consigned products, including the Subject Drugs, that the Consignment Partners would distribute to their customers.

**RESPONSE:**    In addition to its General Objections, Abbott objects to this Request because the terms "permitted," "set their own prices," "consigned products," "Consignment Partners," and "distribute" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.

Subject to and without waiving its objections, Abbott admits that its Home Infusion customers were responsible for setting the proposed usual and customer charge, but ultimately the payment was determined by third party payors.

41.     Admit that You billed Medicare and Medicaid directly for products and services dispensed by Your Home Infusion Pharmacies using Your EIN number, and/or Your own Medicare and Medicaid provider codes.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "billed," and "dispensed," are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.

Subject to and without waiving its objections, admitted.


42.     Admit that the cost to You in stocking and dispensing Abbott, Ross, and TAP drugs and products was only a small fraction of the amounts reimbursed by Medicare and Medicaid for those drugs and products.

**RESPONSE:**    In addition to its General Objections, Abbott objects to this Request because the terms "cost," "stocking," "dispensing," and "small fraction," are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.  Abbott further objects to the term "reimbursement" as vague, because Medicare and Medicaid are not "reimbursement" programs, but are instead payment programs that assign payment amounts applicable to particular products without regard to what any particular provider actually paid for the product.

Subject to and without waiving its objections, Abbott states that there are numerous expenses associated with the manufacture, distribution, marketing and sale of its products

including stocking expenses and dispensing expenses.  Abbott denies the remaining allegations in this Request.

43.    Admit that the Your Home Infusion Pharmacy billing to Medicare and Medicaid were conducted through the Your Reimbursement Department in Your HPD Alternate Site Home Infusion Department.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "Your Home Infusion Pharmacy," "Reimbursement Department" and "billing" are vague and ambiguous.

Subject to and without waiving its objections, Abbott admits that at some times during the Relevant Claim Period it sought payment for certain of the Subject Drugs dispensed through the Abbott-owed Home Infusion Pharmacies from Medicare and Medicaid through the former Home Infusion Services department of HPD Alternate Site.  Abbott denies the remaining allegations of this Request.

44.    Admit that the HCFA 1500 forms, or Medicaid reimbursement forms, submitted by Your Reimbursement Department would reflect Your EIN number and provider number as the entity to be reimbursed.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "submitted," "Reimbursement Department," "reflect," and "entity" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.

Subject to and without waiving its objections, admitted.

45.     Admit that in pricing Home Infusion usual and customary charges for goods and services for your Consignment Partners, You would at times use AWP as part of the usual and customary charge.

**RESPONSE:**     In addition to its General Objections, Abbott objects to this Request

because the terms "pricing," "Home Infusion," "Consignment Partners," "use," and "part of" are

vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly

burdensome, not relevant to the subject matter of this action, and not reasonably calculated to

lead to the discovery of admissible evidence to the extent it seeks information relating to drugs

other than the Subject Drugs and a time period other than the Relevant Claim Period.

Subject to and without waiving its objections, denied.


46.     Admit that at no time did You ever disclose to HHS, HHS-OIG, CMS, any Medicare carrier, or any Medicaid program or official, that You were collecting a portion of the Spread reimbursed to Your Home Infusion Pharmacies or Your Consignment Partners.

**RESPONSE:**     In addition to its General Objections, Abbott objects to this Request

because the terms "disclose," "collecting a portion," "Consignment Partners" and "reimbursed"

are vague and ambiguous.  Abbott further objects to the term "reimbursement" as vague, because

Medicare and Medicaid are not "reimbursement" programs, but are instead payment programs

that assign payment amounts applicable to particular products without regard to what any

particular provider actually paid for the product.  Abbott further objects to this Request because

it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

information relating to drugs other than the Subject Drugs and a time period other than the

Relevant Claim Period.  Abbott further objects to this Request because it is argumentative

particularly to the extent it assumes that Abbott had a duty to report information to HHS, HHS-

OIG, CMS, any Medicare carrier, or any Medicaid program or official that does not exist in the law.

Subject to and without waiving its objections, Abbott admits that it accurately reported those prices for the Subject Drugs that it was required by law to report during the Relevant Claim Period.  Further answering, Abbott admits that, since 1991, it has submitted Average Manufacturer Price to CMS, and its predecessor, and further states that it has sold its products, including the Subject Drugs, to the federal government at substantially discounted prices through the Federal Supply Schedule program and to various state entities.  Abbott's investigation into government knowledge continues.

47.     Admit that HPD maintained and utilized information concerning AWPs from Redbook in its computer systems, including within its CHIP system.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "maintained," "utilized," and "information concerning AWP" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.

Subject to and without waiving its objections, Abbott admits that certain information from Redbook, including AWP, was included in the CHIP system.  Abbott denies the remaining allegations of this Request.

48.     Admit that if one of Your HPD customers requested information concerning AWPs on your products, including the Subject Drugs, that Your HPD salespersons were permitted to furnish that AWP information if requested by Your customer.

**RESPONSE:**  In addition to its General Objections, Abbott objects to this Request because the terms "information concerning AWPs," "permitted to furnish," "AWP information," and "customer" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs and a time period other than the Relevant Claim Period.  Abbott further objects to the Request because it is an improper hypothetical question.  Abbott also objects to this Request because it is duplicative of Requests No. 25, 26 and 28.

Subject to and without waiving its objections, Abbott admits that numerous witnesses have testified that, prior to 2003, they were aware that it was Abbott's practice to market HPD products based on a variety of factors, not on any payment amount made by Medicare or Medicaid.

49.     Admit that in 1991, according to Your Vice President and General Manager of Alternate Site, You believed that "the abandonment of AWP as a good indicator of product acquisition cost" would have significant implications for Your Alternate Site Business.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "significant implications" and "Alternate Site Business" are vague and ambiguous.  Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs.

Subject to and without waiving its objections, Abbott admits that Mr. Robertson made the following notation on a document: "the abandonment of AWP as a good indicator of product acquisition cost." Abbott denies any remaining allegations in this Request.

50.     Admit that in 1991, Your Alternate Site and Washington based governmental relations employees contacted the American Society of Clinical Oncology (ASCO), the PMS, the American Society of Nephrology (ASN) and the Alliance for Infusion Therapy, to determine a response to proposed rule changes to AWP based reimbursement by HCFA.

**RESPONSE:**   In addition to its General Objections, Abbott objects to this Request because the terms "Alternate Site and Washington based" "governmental relations employees," "determine," and "response," are vague and ambiguous. Abbott further objects to this Request because it is overly broad, unduly burdensome, not relevant to the subject matter of this action, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to drugs other than the Subject Drugs.

Subject to and without waiving its objections, admitted.

Dated: January 18, 2008

By: /s/ Jason G. Winchester

James R. Daly
Tina M. Tabacchi
Jason G. Winchester
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585


R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2008, a true and correct copy of the foregoing **DEFENDANT ABBOTT LABORATORIES, INC.'S RESPONSES TO THE UNITED STATES' SECOND SET OF REQUESTS FOR ADMISSION** was served upon:

Mark A. Lavine, Esq. **(By email)**
United States Attorney's Office
99 N.E. 4 Street
Miami, FL 33132

Gejaa T. Gobena, Esq. **(By email)**
United States Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

James J. Breen, Esq. **(By email)**
Alison Simon, Esq.
The Breen Law Firm
3350 S. W. 148th Avenue, Suite 110
Miramar, FL 33029

/s/ Carol P. Geisler _____