# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No.1456<br><br>Master File No. 01-CV-12257-PBS<br>Subcategory Case No. 06-11337-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation*, *et al.*, Civil Action No. 07-10248-PBS | Magistrate Judge Marianne B. Bowler |

## ROXANE'S MEMORANDUM OF LAW IN SUPPORT OF ITS EXPEDITED MOTION FOR LEAVE TO DEPOSE CAROLYN HELTON AND ROBIN KREUSH STONE

Boehringer Ingelheim Roxane, Inc. and Roxane Laboratories, Inc. (collectively "Roxane") seek expedited relief under Federal Rules of Civil Procedure 26, 37, and 56 to address the Government's attempt to inject new, contradictory facts into this case at the eleventh hour—and *months* after the close of discovery—in an attempt to salvage frivolous claims that the Government is relying upon to inflate damages by over one billion dollars.  Specifically, in its summary judgment filings on July 24, 2009, the Government included declarations from two employees of Medicare carriers that contradict the record created in discovery with respect to the Medicare carriers' misclassifications of Novaplus ipratropium bromide—the drug the Government obtained leave to add to this case just thirteen days before the close of discovery (and months after depositions of Medicare carriers had concluded).  At that time, the Government represented to this Court that no additional discovery was required, and until it filed its summary judgment response last Friday, the Government failed to argue that the Medicare Durable Medical Equipment Regional Carriers ("DMERCs") employed any methodology or analysis related to Novaplus that differed from those already disclosed during the course of fact

discovery. Now, the Government has provided last-minute, litigation-driven declarations that attempt to fabricate new "facts" outside of the discovery period (attached as Exs. A and B).

Given the magnitude of the alleged damages that the Government seeks with respect to the Medicare carriers' misclassifications of the Novaplus products as brand drugs (rather than generics), the rules of civil procedure, this Court's broad powers in controlling discovery, and fundamental fairness dictate that Roxane should have the opportunity to briefly depose these declarants to develop and test the factual bases of their new assertions. Accordingly, Roxane respectfully requests leave to depose Carolyn Helton and Robin Kreush Stone under Rules 26, 37 and 56(f) of the Federal Rules of Civil Procedure.[1]

## BACKGROUND

### A. The Government Moved To Add The Novaplus Drugs At The Close of Fact Discovery And Represented To This Court That No Further Discovery Was Necessary.

On October 20, 2008, near the close of fact discovery, the Government sought leave to amend its complaint to include claims based on Novaplus ipratropium bromide, drugs that Roxane sold pursuant to a private-label agreement with Novation LLC. At that time, in response to Roxane's objection to the amendment based, in part, on the limited time left for discovery, the Government represented to this Court that the only discovery needed was additional transactional data from Roxane. (Roxane Dkt. No. 83, Mem. in Supp. of Pl's Mot. for Leave to File Am. Compl. at 6) In fact, the Government represented that the inclusion of the Novaplus NDCs "will

---

[1] Roxane reserves its right to file a motion to strike the portions of these affidavits that are inconsistent with the witnesses' prior testimony or on other bases. *See, e.g.*, *Mahan v. Boston Water & Sewer Com'n*, 179 F.R.D. 49, 52-53 (D. Mass. 1998) ("If a party simply could offer a contradictory, post-deposition affidavit to defeat summary judgment without providing a 'satisfactory explanation' for the contradiction, the purpose of summary judgment would be defeated."); *see also Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907 (6th Cir. 2006) ("[A] party's 'ample opportunity during discovery to present evidence provides courts with reason to prevent that party from introducing new evidence in an affidavit opposing summary judgment.'").

not require the defendants to conduct any additional discovery, and does not alter the legal landscape of the case." (*Id.*)  And six weeks later, ***less than two weeks*** before the close of fact discovery, the Government boldly stated that the factual record with respect to the Medicare carriers was complete:

> There is also no need for any "Medicare carrier" to be re-deposed . . . .  In addition, all relevant documents regarding how the DMERCs reimbursed for the Novaplus and ipratropium bromide products have been produced.  These documents show with mathematical precision exactly how the DMERCs set reimbursement amounts for Roxane drugs—including the Novaplus Products. The methodology used by the DMERCs for establishing the reimbursement amounts has been exhaustively addressed in the DMERC depositions, and Roxane cannot point to any testimony or evidence suggesting that the DMERCs' reimbursement methodology varies on an NDC by NDC basis.

(Master Dkt. No. 5732, Reply Brief in Supp. of Pls.' Mot. for Leave to Amend Cplt. at 3)

On December 2, 2008, just days before the December 15, 2008 close of fact discovery, the Court granted the Government leave to add the Novaplus NDCs to this case.  (12/2/08 Elec. Order granting Roxane Dkt. No. 83)

### B. After The Close of Fact Discovery, The Government Developed A New Billion-Dollar Damages Theory Based On Certain Of The DMERCs' Misclassifications Of Novaplus As A Brand.

After the close of fact discovery, on February 6, 2009, the Government disclosed Dr. Mark G. Duggan as its expert on damages in this case.  (2/6/09 Duggan Discl.)  In his expert report, Dr. Duggan revealed a new damages model that depended on the DMERCs' misclassification of Novaplus ipratropium bromide as a brand drug. (Roxane Corr. 56.1 SOF ¶¶ 228, 237-242)  Despite the fact that the DMERCs' classification of Novaplus had no impact on Medicare payments in the real world, Dr. Duggan's new "Novaplus" model utilized the DMERCs' misclassification in ascertaining damages in the "but-for world," which inflated the Government's damages figure by over *one billion* dollars.  (*Id.* ¶¶ 242-244)  As shown below, Dr. Duggan's damages model was at odds with the testimony in this case, and the Government's own representations during discovery.

> **C.    All Evidence in the Factual Record, Developed Many Months Before The Novaplus Drugs Were At Issue, Refuted The Government's Subsequent Damages Theory Treating Novaplus As A Brand.**

The deposition testimony and documents in the record at that point demonstrated clearly that the DMERCs did not adhere to regulatory requirements and instead used an idiosyncratic methodology based on capitalization formats in the Redbook to classify drugs as brands or generics. (*See* Ex. C, Roxane Mem. in Supp. of Summary Judgment at 12-25). For instance, Cheryl Eiler, the last of the DMERC representatives to be deposed,[2] testified that she classified brand drugs based on the typeface listed in the printed Redbook: "In the RedBook, if it was capitalized, that meant it was a brand name. If it was smaller case, that meant it was a generic . . . . If it was all capital letters, to me, that meant it was a brand." (*Id.* at 547:22-548:8)  Eiler's testimony was entirely consistent with "Medicare Professional Reimbursement Desk Procedures," documents produced by the DMERCs, which directed the DMERCs to make brand versus generic determinations based on a drug's capitalization in the Redbook. (*See* Ex. D, Roxane Corr. 56.1 SOF ¶ 180; *see also* Roxane Exs. 42, 100; 9/23/08 Eiler Dep. 546:17-559:20)

Moreover, during the questioning of Ms. Eiler, one of the Department of Justice's senior attorneys explicitly confirmed that the Novaplus ipratropium bromide product had "always" been considered a generic drug: "Now I want to suggest to you, Ms. Eiler, that Novaplus actually has always been a generic product, not a brand product. And that if one—I want you to assume that if one had done additional research, the generic status of that drug might have been discovered." (*See* Ex. D, Roxane Corr. 56.1 SOF ¶ 180; *see also* 9/23/08 Eiler Dep. 549:14-19)  Thus, the declarations just submitted by the Government asserting that Novaplus was properly classified as

---

[2]   Helton and Stone were deposed as Rule 30(b)(6) witnesses. Because their depositions occurred many months before the Government added the Novaplus NDCs, the DMERCs' classifications of generics versus brands, and the Novaplus drugs in particular, were not topics that were covered at these depositions.

a brand product pursuant to other methodologies flatly contradict the pre-existing evidentiary record in this case, and the Government's own position (before it reversed course to artificially inflate damages).

### D. The New Declarations Submitted By The Government Seek To Inject New Facts Related To The DMERCs' Misclassifications Of Novaplus As A Brand.

On June 26, 2009, Roxane filed its motion for summary judgment, arguing in part that this Court should grant summary judgment on all claims based on the DMERCs' errors. (*See* Ex. C, Roxane Mem. in Supp. of Summary Judgment at 12-25)  Specifically Roxane seeks summary judgment on claims that depend on the DMERCs' classification of Novaplus as a brand drug and for periods when the DMERCs erroneously omitted NDCs for Zenith Goldline's ipratropium bromide product from their pricing arrays.  (*Id.*)  Roxane's motion cited Eiler's testimony and the documents produced in discovery by the DMERCs.  (*Id.*; *see also* Ex. D, Roxane Corr. 56.1 SOF ¶¶ 135-252)

In response to Roxane's motion, the Government relied heavily on new declarations from Stone and Helton.  In these declarations, Stone and Helton claim—for the first time—that they "properly" classified drugs as brands or generics by reviewing the name of the product—a different methodology than the one to which Eiler testified and contrary to the DMERCs written procedures.  (Ex. A, Stone ¶ 7-8; Ex. B, Helton ¶ 28-29)  Stone and Helton also claimed that they did not review printed Red Books after 1999 and relied only on CD print-outs.  (Ex. A, Stone ¶ 11; Ex. B, Helton ¶ 31)  Finally, Stone also provided a new alleged rationale for why they omitted the Zenith Goldline NDCs from their pricing arrays, in contrast to another DMERC. (Ex. A, Stone ¶ 17)

**ARGUMENT**

I.  **DEPOSITIONS OF HELTON AND STONE ARE WARRANTED UNDER RULE 56 AND ROXANE WILL BE UNFAIRLY PREJUDICED WITHOUT THIS LIMITED DISCOVERY.**

Under Federal Rule of Civil Procedure 56(e), "[t]he court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits." Fed. R. Civ. P. 56(e). Rule 56(f) provides that "if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) order a continuance to enable affidavits to be obtained, ***depositions to be taken***, or other discovery to be undertaken." Fed. R. Civ. P. 56(f) (emphasis added); *see also Derosiers v. Hartford Life & Acc. Co.*, 515 F.3d 87, 91 (1st Cir. 2008) (explaining that a party may, among other things, move under Rule 56(f) for additional discovery to object to an affidavit attached to a summary judgment brief that alleges new facts); *Auto Alliance Int'l, Inc. v. United States*, 558 F. Supp. 2d 1377, 1382-83 (C.I.T. 2008) (granting motion to re-depose witness who submitted summary judgment affidavit containing "new legal and factual theories" not explored at his prior deposition). Moreover, "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *See, e.g.*, *Torres v. E.I. Dupont de Nemours & Co.,* 219 F.3d 13, 20 (1st Cir. 2000); *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 5 (1st Cir. 1994); *see also Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806 (1999) ("The lower courts . . . have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").

6

The declarations from Helton and Stone both add new facts to the record and directly contradict their prior deposition testimony and documents they produced. For example, Helton testified in March 2008, before the Novaplus drugs were added to the complaint, that she consulted printed Redbooks to determine whether a listing contained a cross-reference to another drug using the word "See." (3/13/08 Helton Dep. 253:18-254:5) Yet in her declaration, Helton now parrots the Government's new theory that the DMERCs considered the product name when determining whether a drug was a brand. (Ex. B, Helton ¶¶ 7-8). Both Stone's and Helton's declarations also flatly contradict Eiler's testimony about how Administar classified drugs by seeing whether a drug was capitalized in the Redbook, as well as the documentary record that corroborated Eiler's testimony. (9/23/08 Eiler Dep. 547:22-548:8; Roxane Exs. 42, 100)

Given the clear discrepancies between these new declarations and the existing evidence, as well as the curious overlap with the Government's new-found arguments, it is evident that the Government is creating new record facts to support its summary judgment arguments. The Government, however, also impermissibly seeks to shield these new "facts" and emerging theories from the rigors of discovery and cross-examination. This is not only patently unfair to Roxane, but is also a disservice to this Court's important decisions at the summary judgment stage.

## II.  DEPOSITIONS OF HELTON AND STONE ARE ALSO WARRANTED UNDER RULES 26 AND 37.

Under Federal Rule of Civil Procedure 26(a)(1), parties are required to disclose the names and addresses of all individuals likely to have discoverable evidence, "along with the subjects of that information" that may be used "to support its claims or defenses." Fed. R. Civ. P. 26(a)(1). Under Rule 26(e)(1), parties must timely supplement their disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e); *see also McGuire v. Am. Family Mut. Ins. Co.*, No. 08-1072-JTM, 2009 WL

1735075, *4 (D. Kan. June 19, 2009) (reopening discovery to allow party to take deposition of late-disclosed witness). Rule 37(c) gives this Court latitude in crafting a remedy to rectify a failure to supplement an earlier discovery response. Fed. R. Civ. P. 37(c). In addition, Rules 26 and 37 grant the Court broad powers in managing discovery, which include the power to re-open discovery for limited purposes. *See, e.g.*, *Filiatrault v. Comverse Tech., Inc.*, 275 F.3d 131, 137 (1st Cir. 2002) ("The management of pretrial discovery lies primarily within the sound discretion of the district court."); *cf. Macaulay v. Anas*, 321 F.3d 45, 52-53 (1st Cir. 2003) (affirming district court's decision to bar expert testimony due to "unfair surprise" and prejudice caused by a "last-minute change that adds a new theory of liability.")

Simply put, the Government failed to disclose until they submitted their declarations that Ms. Helton and Ms. Stone intended to testify regarding the classification of a drug as a brand or a generic—literally a *one billion* dollar issue in this case. Moreover, the Government affirmatively represented to this Court when moving to amend its complaint to add the Novaplus ipratropium bromide NDCs that further discovery related to the drugs would not be necessary. Thus, these last-minute, untested declarations unfairly prejudice Roxane. Under this Court's broad powers to control discovery, Roxane should be allowed to depose these two witnesses on their respective declarations before responding to the Government's arguments with respect to Novaplus. Accordingly, Roxane seeks leave to depose these two witnesses prior to August 20, 2009,[3] or, in the alternative, grant Roxane leave to respond to the Government's Novaplus arguments after it has completed the depositions of these two witnesses, should depositions prior to August 20, 2009 be unfeasible.

---

[3] Roxane's response to the Government's motion for summary judgment is due August 28, 2009, and it must therefore depose these witnesses by August 20, 2009 to allow adequate time to incorporate their testimony into the briefing and obtain transcripts of the depositions.

## **CONCLUSION**

For the foregoing reasons, Roxane respectfully requests the Court grant its motion for leave to depose Carolyn Helton and Robin Kreush Stone, and enter an order requiring the Government to produce these two witnesses prior to August 20, 2009, or, in the alternative, grant Roxane leave to delay its response to the Government's Novaplus arguments until after it has completed the depositions of these two witnesses.

Dated:  July 29, 2009

Respectfully submitted,

/s/ Eric T. Gortner
Helen E. Witt, P.C.
Eric T. Gortner
John W. Reale
Seth A. Gastwirth
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
egortner@kirkland.com

*On behalf of Defendants Boehringer Ingelheim Corp., Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Roxane, Inc., and Roxane Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on July 29, 2009, a copy to LexisNexis File and Serve for posting and notification to all parties.

By: /s/ Eric T. Gortner
Eric. T. Gortner