# Exhibit 85

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*,
Civil Action No. 05-11084-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of Plaintiffs' Motion For Partial Summary Judgment
and In Opposition To Dey's Motion For Partial Summary Judgment

```
243:1   NO. GV002327

   2    THE STATE OF TEXAS            ) IN THE DISTRICT COURT

   3    ex rel.                       ) VEN-A-CARE OF THE         )

   4       FLORIDA KEYS, INC.,        ) Plaintiff(s),             )

   5                                  ) VS.                       ) TRAVIS COUNTY, TEXAS

   6                                  ) DEY, INC.; ROXANE         )

   7    LABORATORIES, INC., WARRICK   ) PHARMACEUTICALS CORPORATION, )

   8    SCHERING CORPORATION,         ) SCHERING-PLOUGH CORPORATION, )

   9    LIPHA, S.A., MERCK-LIPHA,     ) S.A., MERCK, KGAA, and EMD    )

  10    PHARMACEUTICALS, INC.,        ) Defendant(s).             ) 53RD JUDICIAL DISTRICT

  11

  12    ******************************************************

  13    ORAL AND VIDEOTAPED DEPOSITION OF PAM MARRS

  14    April 16th, 2003 Volume 2

  15    (Contains Attorneys' Eyes Only Under Separate Cover)

  16    ******************************************************

  17       ORAL AND VIDEOTAPED DEPOSITION OF PAM MARRS,

  18    produced as a witness at the instance of the

  19    Plaintiff(s), and duly sworn, was taken in the

  20    above-styled and numbered cause on April 16th, 2003,

  21    from 9:13 a.m. to 2:50 p.m., before Cynthia Vohlken,

  22    CSR in and for the State of Texas, reported by machine

  23    shorthand, at the offices of Napa Valley Marriott

  24    Hotel, 3425 Solano Avenue, Napa, California pursuant

  25    to the Texas Rules of Civil Procedure.
```

Marrs, Pam - April 16, 2003 09:13:00 a.m.

```
244:1                A P P E A R A N C E S
   2    FOR THE PLAINTIFF(S):
   3         MR. RAYMOND C. WINTER Office of the Attorney General
   4         State of Texas Post Office Box 12548
   5         Austin, Texas 78711-2548
   6
   7    FOR THE RELATOR:
   8         MR. JAMES JOSEPH BREEN The Breen Law Firm, P.A.
   9         P. O. Box 297470 Pembroke Pines, Florida 33029-7470
  10     -and-
  11     MR. FRANK M. PITRE
  12         Cotchett, Pitre, Simon & McCarthy 840 Malcolm Road, Suite 200
  13         Burlingame, California  94010
  14    FOR THE DEFENDANT(S) DEY, INC.:
  15     MR. DARRELL PRESCOTT
  16    MS. LISA LEWIS Coudert Brothers, LLP
  17         1114 Avenue of the Americas New York, New York 10036-7703
  18
  19    FOR THE DEFENDANT ROXANE LABORATORIES, INC.:
  20     MR. R. ERIC HAGENSWOLD
  21         Scott, Douglass & McConnico, L.L.P. One American Center, Fifteenth Floor
  22         600 Congress Avenue Austin, Texas 78701
  23
  24
  25
```

Marrs, Pam - April 16, 2003 09:13:00 a.m.

```
320:1   Q.   But in your mind you draw a distinction
    2   between -- is it fair to say that in your mind you
    3   draw a distinction between the scope of the search in
    4   1997 versus the Texas CID in 2000?
    5   A.   Well, the documents in some cases requested
    6   were a bit different in the CID than they were in the
    7   '97.
    8   Q.   And so do I understand from your earlier
    9   testimony that you believe that the Texas CID was
   10   broader --
   11   A.   Yes.
   12   Q.   -- and more expansive than the 1997 federal
   13   subpoena?
   14   A.   In some cases yes.
   15   Q.   So would you conclude then that the scope of
   16   your search was broader in 2000 than it was in 1997?
   17   A.   To the extent they were different items, yes.
   18   Q.   I ask you to turn to the next tab, please,
   19   and look at Exhibit 556.
   20   A.   Uh-huh.
   21   Q.   Do you recognize that document?
   22   A.   Yes.
   23   Q.   Is that the -- what is it, please?
   24   A.   The subpoena that was given to us in August
   25   of 2000.
```

```
321:1   Q.   By whom?
    2   A.   Office of Inspector General.
    3   Q.   So this was the second HHS subpoena; is that
    4   true?
    5   A.   Yes.
    6   Q.   Okay.  Now, was Ms. Daulong also the person
    7   primarily responsible for collecting documents
    8   responsive to the second HHS OIG subpoena?
    9   A.   I believe she was involved, but she -- you
   10   know, I'd have to check to see when she stopped being
   11   the contracts manager and when Russ Johnston took
   12   over.  I believe that by the time we got this people
   13   had different responsibilities and there was -- their
   14   rules in gathering the documents were different.  I'd
   15   need to look at specifically when they were in certain
   16   positions to be sure.
   17   Cindy was still involved, I believe, but
   18   then we brought in Russ Johnston.  Russ Johnston at
   19   the time of the original request was I believe in
   20   charge of inside sales and didn't have contract
   21   responsibility.  If my memory is correct, and it may
   22   not be, I think he was in charge of contracts for this
   23   one, so his role would have been broader.
   24   Q.   Did you believe as -- as you sit here today
   25   do you believe that the scope of your search and
```

Marrs, Pam - April 16, 2003 09:13:00 a.m.

```
322:1    response to the second HHS OIG subpoena was broader
    2    than the first HHS OIG subpoena?
    3    A.   Well, again, to the extent that the questions
    4    were different, yes.
    5    Q.   In either -- in your efforts to respond to
    6    either the first HHS OIG subpoena or the second HHS
    7    OIG subpoena did Dey disseminate the document request
    8    itself to anyone other than the contracts department?
    9    A.   Yes.  I don't remember -- I don't have a
   10    complete list of who we gave it to, but the process
   11    would be it would come in, I would have my secretary
   12    make copies and give it to the affected people,
   13    whether it be Charles, Bob, people in accounting or
   14    sales and marketing.  But I don't -- I didn't keep a
   15    list of who I gave it to to be quite honest.  You
   16    know, I'm pretty sure that Russ has a copy, I believe
   17    Cindy has -- had a copy.  I know Bob and Charles got
   18    copies.
   19    Q.   You believe that Cindy had a -- Cindy Daulong
   20    had a copy of the subpoena itself that's Exhibit 555?
   21    A.   I think so.  Again, I'd have to check my
   22    records.  I know I have a document that -- a copy of
   23    the document that she received.  Now I can't remember
   24    if it's this one or the first one.  But the process
   25    would be in general that it would be distributed in
```

```
323:1    its full form to whoever would be helpful in gathering
    2    the documents.
    3    Q.   And you believe that Mr. Mozak also had
    4    copies of all of these document requests, the 1997 HHS
    5    OIG subpoena, the 2000 HHS OIG subpoena and the Texas
    6    CID?
    7    A.   Yes.
    8    Q.   You're certain that he got copies of those
    9    requests in their entirety?
   10    A.   Yes.
   11    Q.   Do you recall when Ms. Daulong left Dey's
   12    employment?
   13    A.   I don't specifically.
   14    Q.   You don't remember what month or year it was?
   15    A.   I could guess.
   16    Q.   I don't want you to guess.
   17    A.   Okay.
   18    Q.   I'm just asking.  You don't remember.
   19    A.   I mean, the record is available back at the
   20    office.  I just don't have a good memory for dates
   21    like that.
   22    Q.   And what you're telling me is you don't
   23    recall what month and year it was, correct?
   24    A.   Correct.
   25    Q.   Do you recall generally though that she left
```

```
324:1   Dey's employment?
    2   A.   Yes.
    3   Q.   Okay.  And moved back to Arkansas; is that
    4   true?
    5   A.   Yes.
    6   Q.   Okay.  And at the time that she left Dey's
    7   employment did she come to you with a collection of
    8   documents that she had compiled over the years that
    9   she thought may have been responsive to some of these
   10   governmental investigations?
   11   A.   She came to me with documents that she had in
   12   her office and didn't know what to do with before she
   13   left.
   14   Q.   Now, did she tell you that she thought that
   15   some of those documents may be responsive to the
   16   government's investigations?
   17   A.   No.  She just was concerned about what to do
   18   with the documents.
   19   Q.   She never suggested to you that she thought
   20   those documents may be responsive to the government's
   21   investigations?
   22   A.   No, I don't recall that.  She was concerned
   23   because she knew that we were not to throw anything
   24   away and she wanted to make sure that they were --
   25   that I knew about them and they were protected.
```

Marrs, Pam - April 16, 2003 09:13:00 a.m.

```
325:1   Q.   Why weren't you to throw anything away?
   2    A.   Because our attorneys had advised us of that.
   3    Q.   Because of the government's investigations?
   4    A.   Correct.
   5    Q.   Okay.  Did Ms. Daulong also tell you what
   6    Mr. Mozak told her to do with the contents of her
   7    office?
   8    A.   She said that he had -- I don't remember the
   9    exact words.  Something to the effect that Bob told
  10    her not to bother with it or something like that.  I
  11    don't recall the exact words.
  12    Q.   Did she tell you that Mr. Mozak had told her
  13    to shred the contents of her office?
  14    A.   I don't -- I don't recall her using the word
  15    "shred."
  16    Q.   Did she --
  17    A.   The implica -- go ahead.
  18    Q.   I'm sorry.  You go ahead.  I didn't mean to
  19    interrupt.
  20    A.   I don't recall her using the word "shred."
  21    Q.   But you started to say the implication was
  22    something and --
  23    A.   Was that he wasn't concerned about the
  24    documents.
  25    Q.   Did she use the word "destroy"?
```

Marrs, Pam - April 16, 2003 09:13:00 a.m.

```
326:1   A.   I think she said you don't need to keep them
   2    is -- but I don't remember exactly what she said.  I
   3    think I'd remember shred.  I don't recall that word.
   4    But the implication was that he had not instructed her
   5    to keep the documents.
   6    Q.   And by not instructing her to keep the
   7    documents does that mean to destroy the documents?
   8    A.   That's how she interpreted it.
   9    Q.   Is that how you would interpret it if
  10    somebody told you you don't need to keep them?
  11    A.   That's how I interpreted it.
  12    Q.   Okay.  So you --
  13    A.   So I told her to bring the documents to me.
  14    Q.   You understood from your conversation with
  15    Ms. Daulong that Mr. Mozak had told her to destroy the
  16    documents?
  17    A.   Yes.
  18    Q.   Okay.  And that was a conversation that you
  19    had with Ms. Daulong at or about the time she was
  20    preparing to leave Dey's employment?
  21    A.   Correct.
  22    Q.   And you -- is it fair to say that you
  23    countermanded Mr. Mozak's order and you told
  24    Ms. Daulong to bring the documents to you?
  25    A.   I did.
```

Marrs, Pam - April 16, 2003 09:13:00 a.m.

```
327:1   MR. WINTER:  I am going pass the witness
    2   at this time.  The State reserves and we pass to
    3   counsel for the Relator.
    4   MS. MACK:  How much time do we have left
    5   on this deposition?
    6   THE REPORTER:  We are right now at one
    7   hour and 28 minutes.
    8   MS. MACK:  We've gone one hour and 28
    9   minutes.  So we have about an hour and 40.
   10   EXAMINATION
   11   BY MR. BREEN:
   12   Q.   Good morning, Ms. Marrs.  Excuse me.
   13   MR. BREEN:  Do you have a copy of the
   14   February 22nd, 1994 -- or 24, 1992 memo?  This
   15   (indicating)?
   16   MR. WINTER: Yes, I do.  (Tenders
   17   document).
   18   Q.   (BY MR. BREEN)  This is Exhibit Number 459.
   19   A.   This is the same one I had before.
   20   Q.   The same one you had before.
   21   A.   Oh, okay.
   22   MR. WINTER: Yes, ma'am.  I just took it
   23   back.
   24   Q.   (BY MR. BREEN)  If you could look at it.
   25   Now, this is the memo from Robert Mozak dated February
```