# Exhibit 103

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v.  Dey, Inc., et al.*,
Civil Action No. 05-11084-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of Plaintiffs' Motion For Partial Summary Judgment
and In Opposition To Dey's Motion For Partial Summary Judgment

# FILE COPY

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON COUNTY, FLORIDA

THE STATE OF FLORIDA

ex rel.

    VEN-A-CARE OF THE FLORIDA
    KEYS, INC., a Florida Corporation, by
    and through its principal officers and
    directors, ZACHARY T. BENTLEY
    and T. MARK JONES,

        Plaintiffs,

v.

BOEHRINGER INGELHEIM
CORPORATION; DEY, INC.; DEY, L.P.;
EMD PHARMACEUTICALS, INC.; LIPHA,
S.A.; MERCK, KGaA; MERCK-LIPHA, S.A.;
SCHERING CORPORATION; SCHERING-
PLOUGH CORPORATION; ROXANE
LABORATORIES, INC.; and WARRICK
PHARMACEUTICALS CORPORATION,

        Defendants.

_____ /

**RECEIVED**

**NOV 0 2 2004**

**OFFICE OF THE ATTORNEY GENERAL
MFCU - TALLAHASSEE BUREAU**

Case No. 98-3032A
Judge: Smith

## MERCK KGaA's, MERCK S.A.'s, AND MERCK SANTÉ S.A.S's
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

        The Defendants, Merck KGaA, Merck Lipha S.A., which is now known as Merck

S.A., and Lipha S.A., which is now known as Merck Santé S.A.S. ("Merck Santé") (Merck

KGaA, Merck S.A., and Merck Santé will be collectively referred to herein as the "Merck

Entities"), by and through their undersigned counsel, pursuant to Rule 1.140(b), Florida Rules of

Civil Procedure, and upon the annexed Affidavit of Hans Friedrich Geiß ("Geiß Aff."), sworn to

on October 28, 2004, and the Affidavit of Pamela R. Marrs ("Marrs Aff."), sworn to on October

100

28, 2004, move this Court for entry of an Order dismissing the Plaintiffs' Complaint filed against

them, and as grounds therefore would show:

## I.   **INTRODUCTION**

        1.    The Merck Entities are not citizens or residents of the State of Florida.

(Geiß Aff. ¶¶ 4,5,8.)  Consequently, Plaintiffs were required to allege facts in the Complaint

sufficient to form the basis for personal jurisdiction over the Merck Entities, pursuant to the

Florida Long-Arm Statute, § 48.193 and the Due Process Clause of the United States

Constitution.  The Florida Long-Arm Statute sets forth the circumstances in which personal

jurisdiction may be established over a non-resident defendant.  It states, in pertinent part:

    (1)    Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

        (a)    Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an agency in this state.

        (b)    Committing a tortious act within this state.

        (c)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

        (d)    Contracting to insure any person, property, or risk located within this state at the time of contracting.

        (f)    Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, . . .

        (g)    Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

    (2)    A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

NY01/KATZC/961062.5

§ 48.193, Fla Stat.

2.    In addition, to establish personal jurisdiction over the Merck Entities, Plaintiffs must allege that the Merck Entities had contacts with Florida sufficient to comply with the Due Process Clause of the United States Constitution.

3.    Plaintiffs have made no attempt whatsoever to plead a basis for jurisdiction under the Florida Long-Arm Statute or to meet the requirements of the Due Process Clause. Plaintiffs have completely ignored their pleading obligations. Indeed, they do not even reference the Florida Long-Arm Statute. With respect to the Merck Entities, Plaintiffs have merely attempted to allege the parent-subsidiary relationships between the Merck Entities, EMD Pharmaceuticals, Inc. ("EMD Pharmaceuticals"), Dey, Inc. and Dey L.P (collectively, "Dey"). (Compl. ¶ 7.) It is well-established by Florida law that alleging parent-subsidiary relationships is not sufficient to form the basis for personal jurisdiction. *See, e.g., State v. American Tobacco Co.*, 707 So. 2d 851, 854-55 (Fla. Dist. Ct. App. 4th Dist. 1998). Moreover, Plaintiffs do not even correctly characterize the corporate relationships between the Merck Entities, EMD Pharmaceuticals and Dey.[1]

4.    Plaintiffs have not alleged and cannot allege sufficient facts to establish jurisdiction pursuant to the Florida Long-Arm Statute and satisfy the mandates of Constitutional Due Process. As set forth at length in the Affidavits of Pamela R. Marrs and Hans Friedrich Geiß: (1) the Merck Entities are separate and distinct entities from Dey; (2) the Merck Entities do not manufacture, market, or sell the drugs at issue in this case, nor do they participate in the Florida Medicaid Program; and (3) the Merck Entities have not engaged in substantial,

---

[1]    For example, Plaintiffs incorrectly allege that EMD Pharmaceuticals is the sole shareholder of Dey. (Compl. ¶ 7.) EMD Pharmaceuticals has no ownership interest in Dey. Additionally, Merck Santé is not in the chain of ownership between Merck KGaA and either Dey or EMD Pharmaceuticals. An accurate description of the corporate relationships between Dey, EMD Pharmaceuticals and the Merck Entities is set forth at Point III.A.i, *infra*.

NY01/KATZC/961062.5

systematic, or continuous business activities in the State of Florida as required by 48.193(2), Fla. Stat.  Therefore, the Merck Entities should be dismissed from this action with prejudice because Plaintiffs did not—and cannot—allege facts sufficient to form the basis for personal jurisdiction under either subsection 1 (specific jurisdiction) or subsection 2 (general jurisdiction) of the Florida Long-Arm Statute, or under the Due Process Clause.

     5.     Additionally, the Complaint must be dismissed as against the Merck Entities because Plaintiffs have failed to properly plead any cause of action against the Merck Entities.  Plaintiffs allege two causes of action in the Complaint:  (1) violation of the Florida False Claims Act and (2) common law fraud.  Both of these causes of action are grounded in fraud, and hence subject to Rule 1.120(b) of the Florida Rules of Civil Procedure, which requires that all averments of fraud be stated with particularity.  The Complaint contains no allegations which particularize Plaintiffs' claims against the Merck Entities, and thus, all claims against the Merck Entities must be dismissed.

## II.    PLAINTIFFS FAILED TO ALLEGE PERSONAL JURISDICTION OVER THE MERCK ENTITIES IN THE COMPLAINT

     6.     Plaintiffs were required to allege in the Complaint that the Court has personal jurisdiction over the Merck Entities, pursuant to the Florida Long-Arm Statute, § 48.193. *See Fasco Controls Corp. v. Goble*, 688 So. 2d 1029, 1030 (Fla. Dist. Ct. App. 5th Dist. 1997) (citing *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989)).  Plaintiffs have failed to satisfy the pleading requirements of the Florida Long-Arm Statute.  Alleging facts "which show only a possibility of jurisdiction" is insufficient. *Holton v. Prosperity Bank of St. Augustine*, 602 So. 2d 659, 661 (Fla. Dist. Ct. App. 5th Dist. 1992) (dismissing complaint against defendant because, *inter alia*, the complaint did not allege sufficient jurisdictional facts).

- 4 -

7.      For instance, in *Fasco Controls Corp. v. Goble*, the court held that the plaintiff's allegation that each defendant "does business" in the State of Florida did not meet the pleading requirements for personal jurisdiction under the Florida Long-Arm Statute.  688 So. 2d at 1030.  The court further held that the plaintiff failed to allege any facts to connect the business conducted in Florida by the non-resident defendants with the causes of action in the complaint. *See id.*  Additionally, the plaintiff failed to sufficiently plead an "alter ego" theory to support jurisdiction because plaintiff did not show that the non-resident defendant engaged in the fraudulent conduct alleged in the complaint or that its subsidiary was formed for an improper purpose. *See id.* at 1031.  Therefore, the court granted the non-resident defendants' motion to dismiss for lack of personal jurisdiction. *See id. See also Security Nat'l Bank v. Corporate Computer Group, Inc.*, 847 So. 2d 573, 573-74 (Fla. Dist. Ct. App. 1st Dist. 2003) ("On its face, appellee's third amended complaint (including exhibit) was legally insufficient to plead a basis for personal jurisdiction over appellant because it neither pled the alleged basis for jurisdiction pursuant to the language of section 48.193(1), Florida Statutes (2001), nor alleged facts which, if true, would be sufficient to support jurisdiction").

8.      Plaintiffs merely attempt to allege the corporate relationships between the Merck Entities, EMD Pharmaceuticals and Dey, and assert that "[t]o the extent the acts of Dey at issue herein were performed by or otherwise attributable to EMD, LIPHA, MERCK-LIPHA or MERCK, or to any subsidiary or affiliate of any of these four defendants, then judgment should be entered against EMD, LIPHA, MERCK-LIPHA or MERCK where appropriate." (Compl. ¶ 7.)  These allegations do not even "track" the language of the Florida Long-Arm Statute. Moreover, even if accepted as true, these few alleged "facts" are insufficient to meet the requirements of the Florida Long-Arm Statute, § 48.193. *See, infra*, Point III.B.i.

- 5 -

## III.   PLAINTIFFS DID NOT AND CANNOT ALLEGE A BASIS FOR PERSONAL JURISDICTION OVER THE MERCK ENTITIES

### A.   Background

#### i.   The Merck Entities

9.   Merck KGaA is a publicly traded corporation organized and existing pursuant to the laws of the Federal Republic of Germany, and maintains its headquarters and principal place of business at Frankfurter Str. 250, D-64293, Darmstadt, Germany. (Geiß Aff. ¶ 4.)

10.   Merck S.A. is a corporation organized and existing pursuant to the laws of France, and maintains its headquarters and principal place of business at 37, rue Saint Romain, Lyon, France. (Geiß Aff. ¶ 5.) Merck S.A. is 99.55% owned by Merck KGaA. (Geiß Aff. ¶ 5.)

11.   Merck S.A. is the sole shareholder of EMD, Inc. EMD, Inc. is not a defendant in this action. EMD, Inc. is a corporation organized and existing pursuant to the laws of Delaware. (Geiß Aff. ¶ 6.) EMD, Inc. has issued stock, and has officers and directors, but has no employees and no manufacturing, production or sales operations. (Geiß Aff. ¶ 6.) EMD, Inc. is the sole shareholder of defendants Dey, Inc. and EMD Pharmaceuticals, Inc. (Geiß Aff. ¶ 6.) EMD, Inc. does not operate, conduct, engage in or carry on any business in Florida. (Geiß Aff. ¶ 6.)

12.   Defendant EMD Pharmaceuticals, Inc. is not in the chain of ownership between Dey, Inc., Dey, L.P., EMD, Merck S.A. and Merck KGaA. (Geiß Aff. ¶ 7.)

13.   Merck Santé is a corporation organized and existing pursuant to the laws of France, and maintains its headquarters in Lyon, France. (Geiß Aff. ¶ 8.) Merck Santé is a wholly-owned subsidiary of Merck S.A. (Geiß Aff. ¶ 8.) Merck Santé is not in the chain of ownership between Dey, Inc. or Dey, L.P. and Merck KGaA. (Geiß Aff. ¶ 8.)

- 6 -

ii.    The Merck Entities Do Not Have Systematic or Continuous Contacts with
the State of Florida

14.    The Merck Entities have not engaged in substantial, systematic, or continuous business activities in the State of Florida at any time relevant to this action.  (Geiß Aff. ¶ 9.)

15.    The Merck Entities have never been qualified or licensed to do business in Florida; have never maintained or conducted business operations in Florida; and have never operated, conducted, engaged in or carried on a business or a business venture in Florida.  (Geiß Aff. ¶¶ 10-11.)

16.    The Merck Entities do not own, use, possess or hold any mortgage or lien on any real property in Florida.  (Geiß Aff. ¶ 12.)

17.    The Merck Entities do not maintain any offices, agencies, bank accounts, telephone lines or listings, post office boxes, or any other physical presence in Florida.  (Geiß Aff. ¶ 13.)

18.    The Merck Entities have no warehousing or manufacturing facilities in Florida.  (Geiß Aff. ¶ 14.)

19.    The Merck Entities do not maintain an authorized agent for service of process in Florida.  (Geiß Aff. ¶ 15.)

20.    The Merck Entities do not maintain employees or agents in Florida.  (Geiß Aff. ¶ 16.)

21.    The Merck Entities have paid no taxes to the State of Florida.  (Geiß Aff. ¶ 17.)

22.    The Merck Entities have not, in institutional memory, and definitely not in the last fifteen years, instituted any legal proceeding of any kind in Florida.  (Geiß Aff. ¶ 18.)

23.     The Merck Entities have on infrequent and isolated occasions entered into contracts with persons or entities in the State of Florida and have participated in meetings in the State of Florida.  (Geiß Aff. ¶¶ 19-20.)  These contracts and meetings have no relationship to the allegations in this case and the Merck Entities have not derived any pecuniary benefit from them. (Geiß Aff. ¶¶ 19-20.)

          iii.      <u>The Merck Entities Do Not Participate In The Florida Medicaid Program</u>

24.     The Complaint in this action alleges that, to the extent the acts of Dey were performed by or otherwise attributable to the Merck Entities, the Merck Entities are liable in this action as a result of certain allegedly false claims Dey allegedly caused to be submitted to the Florida Medicaid Program.  The Complaint further alleges that Dey allegedly caused these false claims to be submitted by allegedly reporting certain pricing information to First DataBank, which is alleged to be a publisher located in and operating in the United States.  (Compl. ¶¶ 7 and 27.)

25.     None of the Merck Entities participate in any way in the Florida Medicaid Program.  (Geiß Aff. ¶ 22.)

26.     None of the Merck Entities direct or control Dey's participation in the Florida Medicaid Program.  (Geiß Aff. ¶ 23.)

27.     The Merck Entities have never applied or otherwise sought to have their pharmaceutical products included among those reimbursed by the Medicaid Program.  (Geiß Aff. ¶ 24.)

28.     Plaintiffs allege in the Complaint that the pharmaceutical products at issue in this action with respect to Dey are albuterol sulfate 0.083%, albuterol sulfate 5 mg/ml solution, acetylcysteine solution 10%, acetylcysteine solution 20%, cromolyn sodium, ipratropium bromide, albuterol 90 mcg aerosol inhaler, and albuterol 90 mcg aerosol refill.

- 8 -

(Compl., Ex. A.)  The Merck Entities do not manufacture, distribute, or sell any of these pharmaceutical products in the United States.  (Geiß Aff. ¶ 25.)

29.     A reasonable investigation did not reveal any sales of any products by the Merck Entities in Florida.  (Geiß Aff. ¶ 26.)

30.     The Merck Entities do not conduct any advertising or marketing campaigns in Florida.  (Geiß Aff. ¶ 27.)

31.     Further, none of the Merck Entities have submitted any drug pricing information to any publisher referenced in the Complaint, including, specifically, First DataBank.  (Geiß Aff. ¶ 28.)

32.     Finally, no person has traveled to Florida on behalf of the Merck Entities in connection with any of the events described in the Complaint or in connection with any meeting or business regarding the Florida Medicaid Program.  (Geiß Aff. ¶ 32.)

      iv.     The Merck Entities Are Separate And Distinct Entities From Dey, Inc. And Dey, L.P.

33.     Although Dey, Inc. and Dey, L.P. are wholly owned by a company in the chain of ownership with Merck KGaA and Merck S.A., Dey, Inc. and Dey, L.P. are, nevertheless, fully separate corporations from Merck KGaA and Merck S.A., with a corporate identity and existence distinct from Merck KGaA and Merck S.A. (*See generally*, Marrs Aff.)

34.     Dey, Inc. is a corporation organized and existing pursuant to the laws of Delaware.  (Marrs Aff. ¶ 9.)  Dey, L.P. is a limited partnership organized and existing pursuant to the laws of Delaware.  (Marrs Aff. ¶ 9.)  Dey, Inc. is the general partner of Dey, L.P.  (Marrs Aff. ¶ 9.)

35.     Dey, Inc. and Dey, L.P. follow the formalities required by Delaware corporation and partnership law.  For example, Dey, Inc. and Dey, L.P. maintain their own

- 9 -

records and bank accounts, which are separate from those maintained by each of the Merck

Entities.  Moreover, Dey, Inc. has its own Board of Directors (the "Board").  The Board handles

board-level corporate issues in compliance with Delaware law.  The Board conducts board-level

business, usually by unanimous consent, and adopts resolutions as required in conformity with

Delaware law.  (Marrs Aff. ¶ 11, 19.)

36.     Dey, L.P.'s day-to-day business operations are managed by Dey, L.P.'s

own senior management.  (Marrs Aff. ¶ 12.)

37.     Dey, Inc. is fully capitalized to meet its corporate obligations.  (Marrs Aff.

¶ 13.)

38.     Dey, Inc. and Dey, L.P. maintain headquarters in Napa, California,

separate from Merck KGaA's headquarters in Darmstadt, Germany or Merck S.A.'s and Merck

Santé's headquarters in Lyon, France.  (Marrs Aff. ¶ 14.)

39.     Dey, Inc. and Dey, L.P. neither act as agents of the Merck Entities, nor do

they have the authority to bind the Merck Entities.  (Marrs Aff. ¶¶ 15-16.)

40.     Dey, L.P. owns, purchases, and leases its own real property.  (Marrs Aff. ¶

17.)

41.     Dey, Inc. and Dey, L.P. maintain their own internal accounting systems

separate from the accounting systems maintained by the Merck Entities.  (Marrs Aff. ¶ 20.)

42.     None of the profits earned by, or losses incurred by, Dey, Inc. or Dey, L.P.

are allocated to the Merck Entities.  (Marrs Aff. ¶ 21.)

43.     Dey, L.P. recruits, hires, and terminates its own personnel according to its

own guidelines and needs.  (Marrs Aff. ¶ 22.)  Indeed, Dey, L.P. has approximately 1000

employees, all of whom work in the United States and all of whom are on Dey, L.P.'s payroll and are paid from Dey, L.P.'s funds. (Marrs Aff. ¶ 22.)

44.     Dey, L.P. uses its own sales force to sell and distribute its products. (Marrs Aff. ¶ 23.)

45.     The Merck Entities do not direct, control or approve Dey, L.P.'s advertising or marketing efforts or approve Dey, L.P.'s pricing of its products. (Marrs Aff. ¶ 24; Geiß Aff. ¶ 29.)

46.     Dey, L.P. has a large manufacturing and warehousing facility in California and does not utilize warehousing facilities owned or operated by the Merck Entities. (Marrs Aff. ¶ 25.)

47.     Moreover, upon information and belief, Dey, L.P.'s customers are different and distinct from the Merck Entities' customers. (Marrs Aff. ¶ 26.)

48.     Dey, Inc. and Dey, L.P. periodically report to Merck KGaA and Merck S.A. concerning such issues as budgetary limitations and financing. (Marrs Aff. ¶ 27.) Merck KGaA and Merck S.A., as parent entities, provide policy and strategic guidance to Dey, Inc. and Dey, L.P. concerning these matters, but to no greater extent than one would normally expect between a subsidiary and its parent corporations. (Marrs Aff. ¶ 27.) Dey, Inc. and Dey, L.P. have no reporting or other obligations to Merck Santé. (Marrs Aff. ¶ 28.)

49.     The Merck Entities do not direct, control or approve Dey's communications, if any, with any publisher or government agency of pharmaceutical prices, including, specifically, First DataBank. (Geiß Aff. ¶¶ 30-31.)

- 11 -

B.      **Plaintiffs Failed to Allege Facts To Satisfy the Requirements of the Florida Long-Arm Statute and Constitutional Due Process**

50.     Plaintiffs have failed to allege facts sufficient to plead a basis for personal jurisdiction under Florida law and the United States Constitution.  To adequately plead jurisdiction under the Florida Long-Arm Statute, a complaint must satisfy the following two-part test:

> (1)     the complaint must allege sufficient jurisdictional facts to bring the action within the ambit of the Florida Long-Arm statute; **and if it does**,
>
> (2)     "the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements."

*Venetian Salami Co. v. Parthenais*,  554 So.2d 499, 502 (Fla. 1989) (emphasis added).

51.     "Only if both prongs are satisfied may the court exercise personal jurisdiction over a non-resident defendant." *Walack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1365 (M.D.Fla. 2003). *See also Viking Acoustical Corp. v. Monco Sales Corp.*, 767 So. 2d 632 (Fla. Dist. Ct. App. 5th Dist. 2000) (affirming dismissal for lack of personal jurisdiction because plaintiff failed to allege facts which could satisfy the Florida Long-Arm Statute or Constitutional Due Process).

i.      Plaintiffs Failed to Allege Facts Which Could Satisfy the Requirements of the Florida Long-Arm Statute

52.     To obtain jurisdiction over a non-resident defendant, the complaint must allege "sufficient jurisdictional facts to bring the action within the control of Florida's long-arm statute, section 48.193, Florida Statutes (2002), i.e., whether defendant performed any of the acts delineated in the statute". *Seabra v. Int'l Specialty Imps., Inc.*, 869 So. 2d 732 (Fla. Dist. Ct. App. 4th Dist. 2004) (citing *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989) (holding that the action should be dismissed against the non-resident defendant "[b]ecause the

complaint did not allege sufficient jurisdictional facts to exercise Florida's long-arm jurisdiction").

53.     The Florida Long-Arm Statute, § 48.193, Fla. Stat., provides that a defendant may be subject to the jurisdiction of the Florida courts on the basis of either specific or general jurisdiction.  Plaintiffs did not and cannot plead any facts to support either specific or general jurisdiction over the Merck Entities by the Florida courts.  Thus, the Complaint should be dismissed against the Merck Entities.

      a.     Plaintiffs Failed to Allege Facts to Support a Finding of Personal Jurisdiction Over the Merck Entities Through Specific Acts, Pursuant to § 48.193(1), Fla. Stat.

54.     Plaintiffs have alleged no facts—because they cannot—which can establish that the Merck Entities have engaged in any acts in Florida enumerated in subparts (a) through (h) of § 48.193(1), Fla. Stat.  The acts enumerated in  48.193(1), Fla. Stat. include:  (1) engaging in, conducting, operating or carrying on a business or business venture, (2) committing a tort, (3) owning, using, possessing or holding a mortgage or other lien on real property, (4) contracting to insure any person, property or risk, (5) causing physical injury to person or property, and (6) breaching a contract.[2]  Not only do Plaintiffs fail to allege that the Merck Entities committed one or more of these acts, but they also fail to allege that the causes of action arise out of such act(s).  *See, e.g.*, *Kaufman v. Machinery Wholesalers Corp.*, 574 So. 2d 1225 (Fla. Dist. Ct. App. 3rd Dist. 1991) (dismissing the complaint because it "failed to allege sufficient jurisdictional facts to comply with Florida's long-arm statute" pursuant to § 48.193(1)(b)); *Firestone Steel Products Co. v. Snell*, 423 So. 2d 979 (Fla. Dist. Ct. App. 3rd Dist. 1982).

---

[2]    The acts enumerated in the Florida Long-Arm Statute and not referenced here only apply to natural born persons and therefore do not apply to the Merck Entities in this action.

55.    Plaintiffs have merely alleged that "[t]o the extent the acts of Dey at issue herein were performed by or otherwise attributable to EMD, LIPHA, MERCK-LIPHA or MERCK, or to any subsidiary or affiliate of any of these four defendants, then judgment should be entered against EMD, LIPHA, MERCK-LIPHA or MERCK where appropriate." (Compl. ¶ 7.) As a matter of law, however, the mere "possibility" of jurisdiction is insufficient to establish jurisdiction. *Holton*, 602 So. 2d at 661.

56.    Plaintiffs' only other allegations concerning the Merck Entities relate to the corporate relationships between Dey, EMD Pharmaceuticals, Inc. and the Merck Entities. Setting aside the fact that these allegations are inaccurate, *see* Point III.A.i., *supra*, these allegations are insufficient to establish personal jurisdiction over the Merck Entities. "The law is clear that the mere presence of a wholly owned subsidiary is insufficient to form a basis for the assertion of personal jurisdiction." *State v. American Tobacco Co.*, 707 So. 2d 851, 854-55 (Fla. Dist. Ct. App. 4th Dist. 1998); *accord Qualley v. International Air Service Co., Ltd.*, 595 So.2d 194, 196 (Fla. Dist. Ct. App. 3rd Dist. 1992) (presence of subsidiary corporation in Florida not sufficient for personal jurisdiction over parent corporation). *Greystone Tribeca Acquisition, L.L.C. v. Ronstrom*, 863 So. 2d 473, 476 (Fla. Dist. Ct. App. 2nd Dist. 2004) ("Florida decisions have held that the presence of a subsidiary corporation within Florida is not enough to subject a non-Florida parent corporation to long-arm jurisdiction within this state.").

> b.    Plaintiffs Failed to Allege Facts to Support a Finding of Personal Jurisdiction Over the Merck Entities Through General Acts, Pursuant to § 48.193(2), Fla. Stat.

57.    Under § 48.193(2), Fla. Stat., Florida courts cannot obtain general jurisdiction over the Merck Entities because Plaintiffs have not alleged—and cannot allege—that the Merck Entities engaged in "substantial and not isolated activity within this state". "As general jurisdiction allows the court to exercise jurisdiction over any type of suit whatsoever, the

- 14 -

contacts must be especially pervasive and substantial to satisfy § 48.193(2)." *General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002).

58.    Plaintiffs do not allege that the Merck Entities engaged in **any** activities in Florida. They simply allege the hypothetical that the Merck Entities are liable "[t]o the extent the acts of Dey at issue herein were performed by or otherwise attributable to" the Merck Entities. (Compl. ¶ 7.) Consequently, Plaintiffs' Complaint fails to allege a basis for general jurisdiction over the Merck Entities, pursuant to § 48.193(2), Fla. Stat., and the Complaint must, therefore, be dismissed against the Merck Entities.

59.    Moreover, as the accompanying affidavits of Hans Friedrich Geiß and Pamela R. Marrs demonstrate, Plaintiffs cannot allege facts sufficient to establish a basis for general jurisdiction, pursuant to 48.193(2), Fla. Stat. *See, e.g.*, *Milberg Factors, Inc. v. Greenbaum*, 585 So.2d 1089 (Fla. 3rd DCA 1991) (holding that general jurisdiction did not exist as to commercial financing institution that derived only 2% of its revenue from Florida customers, entered into five agreements over a ten-year period with Florida-based companies, filed U.C.C. financing statements in Florida, and filed lawsuits against account debtors in Florida); *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292-93 (11th Cir. 2000) (purchase of materials from Florida entities, participation in meetings in Florida, negotiation of a contract when not engaging in business generally in Florida, and placing advertisements in a Florida newspaper are all insufficient contacts to create general jurisdiction); *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 584-85 (M.D. Fla. 1991) (soliciting business in Florida held as insufficient for general jurisdiction). Therefore, this Court does not have personal jurisdiction over the Merck Entities because the Plaintiffs have not, and cannot, plead facts to satisfy the Florida Long-Arm Statute. (*See* Marrs Aff. and Geiß Aff.)

- 15 -

      ii.     Plaintiffs Failed to Allege Facts Which Could Satisfy the Requirements of Constitutional Due Process

60.     Plaintiffs' allegations also fail to meet the additional requirements imposed by the Due Process Clause of the United States Constitution.

61.     The Due Process Clause ensures "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A state is not permitted to "make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Id.* at 319. For jurisdiction to be proper, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Due process further requires "that the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

62.     Jurisdiction over the Merck Entities in Florida would violate the traditional notions of fair play and substantial justice because the Merck Entities could not have "reasonably anticipate[d] being haled into court" in Florida. Plaintiffs have failed to plead—because they cannot—any facts relating to contacts between the Merck Entities and the State of Florida which can satisfy the requirements of Constitutional Due Process. The Merck Entities have not engaged in systematic and continuous business activities in Florida or maintained any "contacts, ties or relations" sufficient to satisfy Constitutional Due Process requirements. (*See* Geiß Aff.)

- 16 -

63.     Therefore, Constitutional Due Process requirements also preclude this

Court from obtaining personal jurisdiction over the Merck Entities.

## IV.     PLAINTIFFS FAILED TO STATE A CAUSE OF ACTION AGAINST THE MERCK ENTITIES

64.     Rule 1.120(b) of the Florida Rules of Civil Procedure requires that "[i]n

all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with such particularity as the circumstances may permit." Both of the causes of action Plaintiffs

purport to allege in the Complaint are grounded in fraud. Thus, under Rule 1.120(b), Plaintiffs

were required to plead both of their causes of action with particularity. *See Myers v. Myers*, 652

So. 2d 1214, 1215-16 (Fla. 5th DCA 1995); *cf. United States ex rel. Clausen v. Laboratory Corp.

of America*, 290 F.3d 1301, 1308-10 & n.16 (11th Cir. 2002). Plaintiffs have failed to do so.

65.     With respect to the Merck Entities, Plaintiffs have merely alleged the

location of their corporate headquarters and their alleged corporate affiliations to each other.

(Compl. ¶ 7.) Plaintiffs do not even allege that the Merck Entities transact business in Florida.

Indeed, Plaintiffs' Complaint is completely devoid of any allegations concerning the Merck

Entities which could state a claim here. Moreover, even assuming Plaintiffs' allegations of a

"fraud scheme" are true for the purposes of this motion, Plaintiffs fail to allege anything—let

alone anything specific—that would tie the Merck Entities to such a scheme.

66.     Plaintiffs concede that the Merck Entities are named as defendants here

simply because Plaintiffs believe that *if* "the acts of Dey . . . were performed by or otherwise

attributable to [the Merck Entities] . . . then judgment should be entered against [the Merck

Entities]." (Compl. ¶ 7.) Plaintiffs, of course, allege no facts to suggest that the acts of Dey are

attributable to the Merck Entities (or any other entity).

- 17 -

67.    Therefore, the Complaint should be dismissed as against the Merck Entities because Plaintiffs have not alleged their causes of action with the particularity required by Rule 1.120(b).

WHEREFORE, for all of the reasons set forth above, Merck KGaA, Merck Lipha S.A., which is now known as Merck S.A., and Lipha S.A., which is now known as Merck Santé S.A.S. respectfully request entry of an Order dismissing the above-captioned matter with prejudice, together with such further relief as this Court deems just and proper.

Dated this 29nd day of October, 2004.

Respectfully Submitted

BROAD AND CASSEL
215 South Monroe Street, Suite 400
Post Office Drawer 11300 (32302)
Tallahassee, Florida 32301
Phone: (850) 681-6810; Fax: (850) 521-1446

By: _____
    KELLY OVERSTREET JOHNSON, P.A.
    Fla. Bar I.D.# 0354163

and

WILLIAM A. ESCOBAR, ESQUIRE
*Admitted Pro Hac Vice*
CHRISTOPHER C. PALERMO, ESQUIRE
*Admitted Pro Hac Vice*
PHILIP D. ROBBEN, ESQUIRE
*Admitted Pro Hac Vice*
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
Phone:  (212) 808-7800; Fax:  (212) 808-7897

Attorneys for Defendants
Merck KGaA, Merck S.A.,
and Merck Santé S.A.S.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by U.S. Mail upon **MARK S. THOMAS, ESQUIRE, MARY S. MILLER, ESQUIRE, and VINCENT L. FOULK, ESQUIRE,** Assistant Attorneys General, Office of the Attorney General, Medicaid Fraud Control Unit, PL-01, The Capitol, Tallahassee, FL 32399-1050 (Attorneys for State of Florida); to **JAMES J. BREEN, ESQUIRE and ALISON W. SIMON, ESQUIRE**, The Breen Law Firm, P.A., (3350 S.W. 148th Avenue, Suite 110, Miramar, FL 33027) P.O. Box 297470, Pembroke Pines, FL 33029 (Attorneys for Relator, Ven-A-Care of The Florida Keys, Inc.; to **GARY L. AZORSKY, ESQUIRE,** Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103 (Attorneys for Relator, Ven-A-Care of the Florida Keys, Inc.); to **JOHN E. CLARK, ESQUIRE**, Goode, Casseb, Jones, Riklin, Choate & Watson, 2122 North Main Avenue, P.O. Box 120480, San Antonio, TX 78212-9680 (Attorneys for Relator, Ven-A-Care of the Florida Keys, Inc.); to **DANA G. TOOLE, ESQUIRE**, Dunlap & Toole, P.A., 2057 Delta Way, Tallahassee, Florida 32303-4227 (Attorneys for Defendants Schering Corp., Schering-Plough Corp. and Warrick Pharmaceuticals Corporation); to **JOHN T. MONTGOMERY, ESQUIRE, JOHN R. THERIEN, ESQUIRE, and CHRIS DILLON, ESQUIRE**, Ropes & Gray LLP, One International Place, Boston, MA 02110-2624 (Attorneys for Defendants Schering Corporation, Schering-Plough Corporation, and Warrick Pharmaceuticals); and to **JOHN P. MCDONALD, ESQUIRE, C. MICHAEL MOORE, ESQUIRE, and ELIZABETH MACK, ESQUIRE,** Locke Liddell & Sapp, LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201-6776 (Attorneys for Defendants Schering Corporation, Schering-Plough Corporation, and Warrick Pharmaceuticals, this _29th_ day of October, 2004.

By: _____
         ATTORNEY

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON COUNTY, FLORIDA

THE STATE OF FLORIDA

ex rel.

      VEN-A-CARE OF THE FLORIDA
      KEYS, INC., a Florida Corporation, by
      and through its principal officers and
      directors, ZACHARY T. BENTLEY
      and T. MARK JONES,

         Plaintiffs,

v.

      Case No. 98-3032A
      Judge: Smith

BOEHRINGER INGELHEIM
CORPORATION; DEY, INC.; DEY, L.P.;
EMD PHARMACEUTICALS, INC.; LIPHA,
S.A.; MERCK, KGaA; MERCK-LIPHA, S.A.;
SCHERING CORPORATION; SCHERING-
PLOUGH CORPORATION; ROXANE
LABORATORIES, INC.; and WARRICK
PHARMACEUTICALS CORPORATION,

         Defendants.

_____/

## AFFIDAVIT OF PAMELA R. MARRS IN SUPPORT OF MERCK KGAA, MERCK S.A., AND MERCK SANTÉ S.A.S's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**STATE OF CALIFORNIA**
**COUNTY OF NAPA**

      BEFORE ME, the undersigned authority, personally appeared Pamela R. Marrs,

who, after first being duly sworn, deposes and says:

1.      I am the Senior Vice-President and Chief Financial Officer of Defendant Dey, Inc.

2.      Except where otherwise indicated, I make this Affidavit from my personal knowledge. The source of my knowledge is my employment experience with Dey, Inc. and Dey, L.P. and my review of certain documents in the files of Dey, Inc. and Dey, L.P.

3.      I make this Affidavit in support of the Motion to Dismiss the Complaint in this action as against Merck KGaA, Merck Lipha S.A., and Lipha S.A. for lack of jurisdiction. Upon information and belief, Merck Lipha S.A. is now known as Merck S.A., and Lipha S.A. is now known as Merck Santé S.A.S. ("Merck Santé"). (Merck KGaA, Merck S.A., and Merck Santé will be collectively referred to herein as the "Merck Entities.")

## DEY, INC. AND DEY, L.P. ARE SEPARATE AND DISTINCT FROM THE MERCK ENTITIES

4.      As set forth more fully in the accompanying affidavit of Hans Freidrich Geiß, Dey, Inc. is wholly owned by EMD, Inc. ("EMD"), which I am advised is not a named defendant in this action. EMD is a corporation organized and existing pursuant to the laws of Delaware.

5.      Merck S.A. wholly owns EMD.

6.      Merck KGaA owns 99.5% of Merck S.A.

7.      Merck Santé is a wholly-owned subsidiary of Merck S.A. Merck Santé is not in the chain of ownership between Dey, Inc., Dey, L.P. and Merck KGaA. Merck Santé is a separate and distinct entity from EMD, Dey, Inc. and Dey, L.P.

8.      Dey, Inc. and Dey, L.P. are separate and distinct entities from the Merck Entities.

- 2 -

9.      Dey, Inc. is a corporation organized and existing pursuant to the laws of Delaware.  Dey, L.P. is a limited partnership organized and existing pursuant to the laws of Delaware.  Dey, Inc. is the general partner of Dey, L.P.

10.     Other than holding its ownership interest in Dey, L.P. and serving as Dey, L.P.'s general partner, Dey, Inc. does not conduct any other business.  Dey, L.P. is the operating company which conducts business day-to-day.

11.     Dey, Inc. follows the corporate formalities required by Delaware law.  For example, Dey, Inc. maintains its own corporate records and bank accounts, which are separate from those maintained by each of the Merck Entities.  Moreover, Dey, Inc. has its own Board of Directors (the "Board").  The Board handles board-level corporate issues in compliance with Delaware law.  The Board conducts board-level business, usually by unanimous consent, and adopts resolutions as required in conformity with Delaware law.

12.     Dey, Inc.'s officers are elected by the Board.  Dey, L.P.'s day-to-day business operations are managed by Dey, L.P.'s senior management.

13.     Dey, Inc. is fully capitalized to meet its corporate obligations.

14.     Dey, Inc. and Dey, L.P. maintain headquarters in Napa, California, separate from Merck KGaA's headquarters in Darmstadt, Germany and Merck S.A.'s and Merck Santé's headquarters in Lyon, France.

15.     Neither Dey, Inc. nor Dey, L.P. act as an agent of the Merck Entities.

16.     Neither Dey, Inc. nor Dey, L.P. have the authority to bind the Merck Entities.

17.     Dey, L.P. owns, purchases, and leases its own real property.

18.     Dey, L.P. has its own telephone and fax numbers separate and apart from those maintained by the Merck Entities.

19.     Dey, L.P. maintains its own bank accounts and maintains its own partnership books and records which are separate from those maintained by the Merck Entities.

20.     Dey, Inc. and Dey, L.P. maintain their own internal accounting systems separate from the accounting systems maintained by the Merck Entities.

21.     None of the profits earned by, or losses incurred by, Dey, Inc. or Dey, L.P. are allocated to the Merck Entities.

22.     Dey, L.P. recruits, hires, and terminates its own personnel according to Dey, L.P.'s own guidelines and needs.  Dey, L.P. has approximately 1,000 employees, all of whom work in the United States and all of whom are on Dey, L.P.'s payroll and are paid from Dey, L.P.'s funds.

23.     Dey, L.P. uses its own sales force to sell and distribute its products.

24.     The Merck Entities do not direct or control Dey, L.P.'s advertising or marketing efforts.

25.     Dey, L.P. has a large manufacturing and warehousing facility in California.  Dey, L.P. does not acquire products from the Merck Entities nor does Dey, L.P. utilize warehousing facilities owned or operated by the Merck Entities.

26.     Moreover, upon information and belief, Dey, L.P.'s customers are different and distinct from the Merck Entities' customers.

27.     Dey, Inc. and Dey, L.P. periodically report to Merck KGaA and Merck S.A. concerning such issues as budgetary limitations and financing.  Merck KGaA and Merck S.A., as parent entities, provide policy and strategic guidance to Dey, Inc. and Dey, L.P.

- 4 -

concerning these matters, but to no greater extent than one would normally expect between a subsidiary and its parent corporations.

      28.    Dey, Inc. and Dey, L.P. have no reporting or other obligations to Merck Santé.

                                                        Pamela R. Marrs

**SUBSCRIBED AND SWORN** to before me this ____ day of October, 2004.

_____ _See Attached_

      Notary Public

- 5 -

**JURAT**

State/Commonwealth of _CALIFORNIA_

County of _Napa_ } ss.

Subscribed and sworn to (or affirmed) before me

this _28_ day of _October_ , _2004_ , by
     Date        Month        Year

(1) _Pamela R. Marks_
                 Name of Signer #1

(2) _None_
                 Name of Signer #2

**NANCY KENDALL**
Commission # 1397089
Notary Public - California
Napa County
My Comm. Expires Feb 26, 2007

_Nancy Kendall_
Signature of Notary Public

_NANCY KENDALL  2751 Napa Valley Corp. Dr._
_NAPA, CA 94558_
Other Required Information (Printed Name of Notary, Residence, etc.)

Place Notary Seal and/or Any Stamp Above

---

**OPTIONAL**

---

*Though the information in this section is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _AFFIDAVIT_

Document Date: _____ Number of Pages: _5_

Signer(s) Other Than Named Above: _None_

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

© 2002 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402      Item #5914      Reorder: Call Toll-Free 1-800 US NOTARY (1-800-876-6827)



*1. Ausfertigung*

<u>Urk.-Rolle-Nr.  502 /2004</u>

# VERHANDELT

zu                    Darmstadt                    am 28. Oktober 2004

Vor mir, dem unterzeichnenden Notar

## Dr. Thomas MILDE

mit dem Amtssitz in Darmstadt

erschien heute in den Räumen der Firma Merck in Darmstadt, wohin sich der Notar auf Bitten des Erschienenen begeben hatte:

Herr **Hans Friedrich Geiß**, geb. am 23.11.1946, dienstansässig: Frankfurter Str. 250, 64293 Darmstadt, ausgewiesen durch Vorlage seines Personalausweises.

### <u>Befragung gemäß § 3 Beurkundungsgesetz</u>

Der Notar fragte den Erschienen, ob er oder eine der mit ihm beruflich verbundenen Personen in einer Angelegenheit, die Gegenstand dieser Beurkundung ist, außerhalb des Notaramts tätig war oder ist. Dies wurde von dem Beteiligten verneint.

Der Erschienene erklärte, nachfolgende Erklärung abgeben zu wollen:



2.H. Fran Behrmann                                  E 300,000

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON COUNTY, FLORIDA

THE STATE OF FLORIDA

ex rel,

    VEN-A-CARE OF THE FLORIDA
    KEYS, INC.,  a Florida Corporation, by
    and through its principal officers and
    directors, ZACHARY T. BENTLEY
    and T. MARK JONES,

        Plaintiffs,

v.                                                      Case No. 98-3032A
                                                        Judge: Smith

BOEHRINGER INGELHEIM
CORPORATION; DEY, INC.; DEY, L.P.;
EMD PHARMACEUTICALS, INC.; LIPHA,
S.A.; MERCK, KGaA; MERCK-LIPHA, S.A.;
SCHERING CORPORATION; SCHERING-
PLOUGH CORPORATION; ROXANE
LABORATORIES, INC.; and WARRICK
PHARMACEUTICALS CORPORATION,

    Defendants.

_____ /

## AFFIDAVIT OF Hans Friedrich Geiß IN SUPPORT OF MERCK KGAA, MERCK S.A., AND MERCK SANTÉ S.A.S's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**FEDERAL REPUBLIC OF GERMANY**
**CITY OF DARMSTADT**

03 12:52   VON:LEGAL   PT RA +49 6151 722373                     N:026877                S:2/6

## CITY OF DARMSTADT

BEFORE ME, the undersigned authority, personally appeared Hans Friedrich Geiß, who, after first being duly sworn, deposes and says:

1.     I am the Vice President Accounting and Controlling of Defendant Merck KGaA.

2.     I make this Affidavit in support of the Motion to Dismiss the Complaint in this action as against Merck KGaA, Merck Lipha S.A., and Lipha S.A. for lack of jurisdiction. Merck Lipha S.A. is now known as Merck S.A. Lipha S.A. is now known as Merck Santé S.A.S. ("Merck Santé"). (Merck KGaA, Merck S.A., and Merck Santé will be collectively referred to herein as the "Merck Entities".)

3.     I make this Affidavit to the best of my personal knowledge, based upon my employment experience with Merck KGaA, reasonable inquiries to the employees of the Merck Entities who can reasonably be expected to possess knowledge relevant to the issues of this Motion, and a thorough review of all documents in the files of the Merck Entities which can reasonably be anticipated to contain information relevant to the issues of this Motion.

## I.     THE MERCK ENTITIES

4.     Merck KGaA is a publicly traded corporation organized and existing pursuant to the laws of the Federal Republic of Germany. Merck KGaA maintains its headquarters and principal place of business at Frankfurter Str. 250, D-64293, Darmstadt, Germany. Merck KGaA has more than 8,000 employees in Germany. Merck KGaA is not in any way affiliated with Merck & Co., Inc., which is a corporation based in the United States.

5.     Merck S.A. is a corporation organized and existing pursuant to the laws of France. It maintains its headquarters and principal place of business at 37, rue Saint Romain, Lyon, France. Merck S.A. is 99.55% owned by Merck KGaA.

6.     Merck S.A. is the sole shareholder of EMD, Inc. ("EMD"). EMD is a corporation organized and existing pursuant to the laws of Delaware. EMD has issued stock, and has officers and directors, but has no employees and no manufacturing, production or sales operations. I am advised that EMD is not a defendant in this action. EMD does not operate, conduct, engage in or carry on any business in Florida. EMD is the sole shareholder of defendants Dey, Inc. and EMD Pharmaceuticals, Inc.

7.     Defendant EMD Pharmaceuticals, Inc. is not in the chain of ownership between Dey, Inc., Dey, L.P., EMD, Merck S.A. and Merck KGaA. Plaintiffs' allegation that EMD Pharmaceuticals, Inc. "is the sole shareholder of Dey" is false. (See Compl. ¶ 7).

8.     Merck Santé is a corporation organized pursuant to the laws of France. It maintains its headquarters in Lyon, France. Merck Santé is a wholly-owned subsidiary of Merck S.A. Merck Santé is not in the chain of ownership between Dey, Inc. or Dey, L.P. and Merck KGaA.

## II.    THE MERCK ENTITIES DO NOT HAVE SYSTEMATIC OR CONTINUOUS CONTACTS WITH THE STATE OF FLORIDA

9.     The Merck Entities have not engaged in substantial, systematic, or continuous business activities in the State of Florida at any time relevant to this action.

10.    The Merck Entities have never been qualified or licensed to do business in Florida; and have never maintained or conducted business operations in Florida.

11.    The Merck Entities have never operated, conducted, engaged in or carried on a business or a business venture in Florida.

12.    The Merck Entities do not own, use, possess or hold any mortgage or lien on any real property in Florida.

13.   The Merck Entities do not maintain any offices, agencies, bank accounts, telephone lines or listings, post office boxes, or any other physical presence in Florida.

14.   The Merck Entities have no warehousing or manufacturing facilities in Florida.

15.   The Merck Entities do not maintain an authorized agent for service of process in Florida.

16.   The Merck Entities do not maintain employees or agents in Florida.

17.   The Merck Entities have paid no taxes to the State of Florida.

18.   The Merck Entities have not, in institutional memory, and definitely not in the last fifteen years, instituted any legal proceeding of any kind in Florida.

19.   The Merck Entities have on infrequent and isolated occasions contracted with persons or entities within the State of Florida. These contracts include such transactions as:

- the purchase of goods from Florida vendors;

- a licensing agreement with a Florida corporation allowing Merck KGaA to sell pharmaceuticals manufactured in New Jersey to purchasers outside the United States;

- consulting agreements with Florida scientists to conduct research on an independent contractor basis; and

- confidentiality agreements that protect information exchanges with existing and potential contract partners.

These contracts have no bearing on what I understand to be the allegations in this case. None of these contracts were concluded with the Plaintiffs in this action. The Merck Entities have not derived any pecuniary benefit in Florida from these contracts.

20.   On certain occasions employees of the Merck Entities have participated in meetings in the State of Florida. These meetings and conventions include:

- infrequent and unsuccessful solicitation activities concerning unrelated products;

003 12:53    VON:LEGAI    FPT RA +49 6151 722373          N:026877          S:5/6

- participation in ~~scientific conferences~~, conventions and seminars; and
- meetings in furtherance of the contracts described above.

These meetings and conventions have no bearing on what I understand to be the allegations in this case.

## III.    THE MERCK ENTITIES DO NOT PARTICIPATE IN THE FLORIDA MEDICAID PROGRAM

21.    I understand that the Complaint in this action alleges that the Merck Entities are liable in this action as a result of certain allegedly false claims Dey, Inc. and Dey, L.P. (collectively, "Dey") allegedly caused to be submitted to the Florida Medicaid Program (the "Medicaid Program"). I understand the Complaint to allege that Dey allegedly caused these false claims to be submitted by allegedly reporting certain pricing information to First DataBank, which is alleged to be a publisher located in and operating in the United States.

22.    None of the Merck Entities participate in any way in the Medicaid Program.

23.    None of the Merck Entities in any way direct or control Dey's participation, if any, in the Medicaid Program.

24.    The Merck Entities have never applied or otherwise sought to have their pharmaceutical products included among those reimbursed by the Medicaid Program.

25.    I understand that the Dey L.P. pharmaceutical products at issue in this action are albuterol sulfate 0.083%, albuterol sulfate 5 mg/ml solution, acetylcysteine solution 10%, acetylcysteine solution 20%, cromolyn sodium, ipratropium bromide, albuterol 90 mcg aerosol inhaler, and albuterol 90 mcg aerosol refill. The Merck Entities do not manufacture, distribute, or sell any of these pharmaceutical products in the United States.

26.    A reasonable investigation did not reveal any sales of any products by the Merck Entities in Florida.

27. The Merck Entities do not conduct any advertising or marketing campaigns in Florida.

28. Further, none of the Merck Entities have submitted any drug pricing information to any publisher referenced in the Complaint, including, specifically, First DataBank.

29. The Merck Entities do not direct, control, or approve Dey's pricing of its products.

30. The Merck Entities do not direct, control or approve Dey's communications, if any, with any publisher of pharmaceutical prices, including, specifically, First DataBank.

31. The Merck Entities do not direct, control or approve Dey's communication, if any, of pharmaceutical prices to any entity, including government agencies and publishers.

32. Finally, no person has traveled to Florida on behalf of the Merck Entities in connection with any of the events described in the Complaint or in connection with any meeting or business regarding the Medicaid Program.

Merck KGaA,



ppa. Hans Friedrich Geiß

**SUBSCRIBED AND SWORN** to before me this 28 day of October, 2004.

_____
Notary Public

- 6 -

Der Notar belehrte den Erschienenen über die Bedeutung eines Eides, insbesondere über die Strafbarkeit eines vorsätzlich oder fahrlässig falsch abgegebenen Eides.

Er forderte den Erschienenen auf, die Richtigkeit der vorstehenden Ausführungen zu beschwören. Der Erschienene erklärte:

„Ich schöre es".

Das Protokoll wurde dem Erschienenen vorgelesen, von ihm genehmigt und wie folgt unterschrieben:

gez. Geiß

LS. gez. Milde, Notar

Vorstehende, mit der Urschrift übereinstimmende Ablichtung wird hiermit zum ersten Male ausgefertigt und der Firma Merck KGaA, Frankfurter Straße 250, 64293 Darmstadt, erteilt.

Darmstadt, den 28. Oktober 2004

( Dr. Milde )
N o t a r