# Exhibit 139

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*,
Civil Action No. 05-11084-PBS

Exhibit to the July 24, 2009, Declaration of George B. Henderson, II
In Support of Plaintiffs' Motion For Partial Summary Judgment
and In Opposition To Dey's Motion For Partial Summary Judgment

```
                    MD Dept of Health and Mental Hygiene (Fine, Joseph L.)
00001
    1                UNITED STATES DISTRICT COURT
    2              FOR THE DISTRICT OF MASSACHUSETTS
    3   - - - - - - - - - - - - - - - -
    4   IN RE:  PHARMACEUTICAL        )   MDL NO. 1456
    5   INDUSTRY AVERAGE WHOLESALE    )   CIVIL ACTION
    6   PRICE LITIGATION              )   01-CV-12257-PBS
    7   THIS DOCUMENT RELATES TO      )
    8   U.S. ex rel. Ven-a-Care of    )   Judge Patti B. Saris
    9   the Florida Keys, Inc.        )
   10       v.                        )   Chief Magistrate
   11   Abbott Laboratories, Inc.,    )   Judge Marianne B.
   12   No. 06-CV-11337-PBS           )   Bowler
   13   - - - - - - - - - - - - - - - -
   14
   15          Videotaped 30(b)(6) deposition of
   16   THE STATE OF MARYLAND DEPARTMENT OF HEALTH AND
   17         MENTAL HYGIENE BY JOSEPH L. FINE
   18
   19                      Baltimore, Maryland
   20                      Tuesday, December 9, 2008
   21                      9:00 a.m.
   22
00002
    1
    2
    3          Videotaped deposition of THE STATE OF MARYLAND
    4   DEPARTMENT OF HEALTH AND MENTAL HYGIENE BY JOSEPH L.
    5   FINE, held at the law offices of Centers for Medicare
    6   & Medicaid Services, 7500 Security Boulevard, Room
    7   C-111, Baltimore, Maryland, the proceedings being
    8   recorded stenographically by Jonathan Wonnell, a
    9   Registered Professional Court Reporter and Notary
   10   Public of the State of Maryland, and transcribed
   11   under his direction.
   12
   13
   14
   15
   16
   17
   18
   19
   20
   21
   22
00003
    1       A P P E A R A N C E S   O F   C O U N S E L
    2
    3      On behalf of the United States of America:
    4          JAMIE ANN YAVELBERG, ESQ.
    5          U.S. Department of Justice
    6          Civil Division
    7          P.O. Box 261, Ben Franklin Station
    8          Washington, D.C. 20044
    9          (202) 514-6514
   10          jamie.yavelberg@usdoj.gov
   11
   12      On behalf of the State of Maryland Department of
   13           Health & Mental Hygiene:
   14          MARK J. DAVIS, ESQ.
   15          State of Maryland
   16          Office of the Attorney General
                                Page 1
```

```
                  MD Dept of Health and Mental Hygiene (Fine, Joseph L.)
   22     vary.  And we know that -- we meaning the state
00264
    1     knows -- that WAC and/or AWP can vary and that it may
    2     not include other kinds of discounts or chargebacks,
    3     et cetera.  We understand that.  And that's all I can
    4     say about that.
    5          Q.   And correct me if I'm wrong, but you're
    6     saying that Dey is assuming that the state already
    7     knew this information, correct?
    8               MS. YAVELBERG:  Objection, form.
    9          Q.   I'm really just trying to clarify his
   10     testimony.  I'm sorry.
   11          A.   The state understood this.  The state
   12     certainly had no other avenue or alternative to do
   13     anything otherwise than either base their pricing on
   14     WAC or average wholesale price.  The State of Maryland
   15     felt that the WAC was a more consistent price, is the
   16     best I can say, and that certainly there may be
   17     variations to it.
   18          Q.   If the state hadn't been aware about the
   19     claims about WAC and AWP made in this letter before
   20     the letter, having read it the state would then be
   21     aware, correct?
   22               MS. YAVELBERG:  Objection, form.
00265
    1               MR. DAVIS:  Objection.
    2          A.   You're making the assumption that the state
    3     even read the letter.  As I said, we constantly -- we,
    4     the State of Maryland receives price changes and
    5     whatever.  And looking at this, this appears to be
    6     just a disclaimer.  And it's not anything unusual that
    7     we see.
    8          Q.   Okay.  Thank you.  And I had asked you
    9     previously about WAC, but are these statements about
   10     AWP consistent with your earlier testimony about what
   11     you understand AWP to mean?
   12               MS. YAVELBERG:  Objection, form.
   13               MR. DAVIS:  Objection.
   14          A.   I didn't -- I'm learning for the first time
   15     that AWP product when it's first sold is not to
   16     subsequently change that AWP.  I have no confidence in
   17     that.
   18          Q.   But Dey here is expressly informing you
   19     that in its view AWP does not represent the actual
   20     price charged to pay for the product, correct?
   21               MS. YAVELBERG:  Objection, form.
   22          A.   I don't know what Dey's practice is.  I can
00266
    1     only say that what Dey is saying here is before a
    2     product is first sold and not to subsequently change
    3     that AWP.  And that's what Dey is saying.  It doesn't
    4     speak to what the price is actually.
    5          Q.   Do you know if anyone in the department did
    6     anything in response to this letter?
    7               MS. YAVELBERG:  Objection, form.
    8               MS. MANGIARDI:  Counsel, what's the basis
    9     for your objection?
   10               MS. YAVELBERG:  He has testified that he is
   11     not certain that anybody in Maryland actually received
   12     this letter.
   13               MS. MANGIARDI:  Thank you.
   14               THE WITNESS:  Do I have to answer?
   15               MS. MANGIARDI:  Please do.
                                 Page 97
```

```
                  MD Dept of Health and Mental Hygiene (Fine, Joseph L.)
 16            MS. YAVELBERG:  Yes.  But if you need to
 17    ask the reporter to read the question back, you can do
 18    that.
 19            THE WITNESS:  Yes.  Please read the
 20    question back.
 21            (Whereupon, the requested portion was read
 22    by the reporter.)
00267
  1       A.    As I said previously, we look at two areas,
  2    whether First Databank has incorporated price changes
  3    into their database for us to use, and secondly if
  4    there are any new products on the market.  Other than
  5    that the new AWPs and prices, it doesn't mean anything
  6    because we get hundreds of these a year.
  7            BY MS. MANGIARDI:
  8       Q.    Okay.  Thank you.  I'd like to direct your
  9    attention back to Abbott Maryland Exhibit 1 in the
 10    exhibit A topics of inquiry that we looked at a few
 11    minutes ago.
 12       A.    Okay.
 13       Q.    And if you could turn to topic 11 in the
 14    topics of inquiry and just briefly review that for
 15    yourself.
 16       A.    (Reading).
 17       Q.    Just let me know when you're ready.
 18       A.    (Reading).  Okay.  I understand the gist of
 19    it.
 20       Q.    And are you prepared today to testify as to
 21    the department's adoption, rejection or consideration
 22    of recommendations and information related to the
00268
  1    reports listed in topic A, letters A through Y?
  2       A.    Many of the reports I am not even certain
  3    that the department even reviewed or saw.  And I don't
  4    know which ones they did.  But being a pharmacy
  5    administrator for the state it was good to know these
  6    things.  It may have supported what our thoughts were.
  7    But we worked and set our price schedule and our fee
  8    schedule based on what we felt was best for Maryland.
  9       Q.    Generally speaking would you consider OIG
 10    reports to be a reliable source of information?
 11            MS. YAVELBERG:  Objection, form.
 12       A.    I have no -- I don't have complete
 13    confidence in OIG reports.  They're not as
 14    comprehensive as they need to be and many times not
 15    germane to what Maryland's issues are.
 16       Q.    Have there been instances where the
 17    department has relied on information contained in OIG
 18    reports?
 19            MS. YAVELBERG:  Objection, form.
 20            MR. DAVIS:  Objection.
 21       A.    I don't recall anything remarkable from OIG
 22    reports.
00269
  1       Q.    Okay.  Let's briefly look at a couple just
  2    to see if you remember them.
  3            MS. MANGIARDI:  Dave, if you could please
  4    hand the witness the document that's behind tab 2?
  5            MR. TORBORG:  He has it.
  6            BY MS. MANGIARDI:
  7       Q.    You've just been handed what's been
  8    previously marked as Abbott Exhibit 60.  This is an
  9    OIG report entitled "A comparison of albuterol sulfate
                              Page 98
```

```
                  MD Dept of Health and Mental Hygiene (Fine, Joseph L.)
 7              MS. MANGIARDI:  Objection.
 8              MR. TORBORG:  Hold on.  This is way outside
 9      the scope of my notice and what the foundation can --
10      there's been no foundation that he's even prepared to
11      answer this question.
12              MS. YAVELBERG:  I think it's within the
13      scope and I think he is prepared having been with the
14      State of Maryland for over 20 years to testify about
15      whether Maryland knew of or approved of this conduct.
16              MR. TORBORG:  It's kind of a broad
17      question.  I mean, you're asking about all of it as
18      once?
19              MS. YAVELBERG:  Sure.
20              MR. TORBORG:  All of the various elements
21      of this?  You're asking about it at once?
22              MS. YAVELBERG:  If he can't answer the
00303
 1      question he'll tell us.
 2              MR. TORBORG:  I object to this line of
 3      questioning as outside the scope of anything that I
 4      asked about.
 5              BY MS. YAVELBERG:
 6          Q.  Mr. Fine, did the State of Maryland approve
 7      of this conduct?
 8              MR. TORBORG:  Object to form.
 9              MS. MANGIARDI:  Objection.
10              MR. TORBORG:  Alleged conduct.
11          A.  First of all, I've just got to qualify
12      this.  The State of Maryland receives drug information
13      from the compendia.  We base our price based on that
14      information.  Okay?  I have as a representative of the
15      State of Maryland no knowledge of this activity.
16          Q.  And if I represent to you that the United
17      States has filed a similar complaint against the
18      Roxane defendants and the Abbott defendants would
19      Maryland have approved such conduct by those
20      companies?
21              MR. TORBORG:  Same objections.
22              MS. MANGIARDI:  Objection.
00304
 1          A.  Approval, that would be an outlandish
 2      assertion that the company would do this.  And it
 3      would really cause issues with the state having
 4      overpaid based on a fictitious price.
 5          Q.  You can put that aside.  Now I am going to
 6      jump around a little bit because we're running out of
 7      time and you're being very patient.  In preparation
 8      for your deposition today in addition to meeting with
 9      attorneys your testified that you reviewed some
10      documents; is that correct?
11          A.  Yes, mm-hmm.
12          Q.  Did you also talk with current employees of
13      Maryland Medicaid?
14              MR. TORBORG:  Object.  Asked and answered.
15              MS. YAVELBERG:  No.  I don't believe so.
16              MR. TORBORG:  Yes.  It was asked.  I don't
17      know if it was answered correctly, but it was asked.
18              BY MS. YAVELBERG:
19          Q.  Would you like to clarify your answer?
20          A.  I spoke somewhat with Frank Tetkowsi in
21      preparation at the tail end of my -- after our
22      preparation with us.  And just to clarify a couple
00305
```

Page 111