

ROPES & GRAY LLP
ONE INTERNATIONAL PLACE
BOSTON, MA 02110-2624
WWW.ROPESGRAY.COM

July 30, 2009

John T. Montgomery
617-951-7565
617-235-0077 fax
john.montgomery@ropesgray.com

**BY HAND**

The Honorable Patti B. Saris
United States District Court for the
  District of Massachusetts
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:   *City of New York* v. *Abbott Laboratories, et al.*, MDL No. 1456
      (Materials Requested Following FUL Tutorial)

Dear Judge Saris:

This letter will supplement the record on the FUL issues raised in the tutorial and summary judgment argument on June 8, 2009.

Following Dr. Addanki's testimony regarding how, in practice, CMS established FULs, you asked him whether he had his "very helpful chart for every single one of the 31 [FULs]." Defendants undertook to provide you with a complete set of Dr. Addanki's pricing arrays. *See* 7/8/09 Tr. at 38:2-14, and a copy of those pricing arrays is enclosed. Tab A contains the pricing arrays for the 23 out of 31 FULs for which lower published prices existed at the time CMS set the FUL and illustrates, as explained more fully in Dr. Addanki's June 30, 2009 Affidavit [Docket No. 113], that Ms. Gaston's *post hoc* "three WAC rule-of-thumb" cannot explain why CMS chose to disregard these lower published prices in 20 out of 23 cases. Tab B contains the pricing arrays for the 29 out of 31 FULs for which, as Dr. Addanki explained, the national pricing compendia published a lower price at some point while the FUL remained in effect and, yet, CMS declined to reduce the FUL.

We also feel compelled to respond to Ms. Cicala's letter of July 10, 2009, purporting to "make a correction to the record" concerning the number of CMS witnesses who have been deposed in this case. The depositions of many of those CMS witnesses who she claims were deposed in this case were not in fact cross-noticed in this case. *See, e.g.*, Notice of Deposition of Glenda Bailey (attached hereto as Exhibit A) (which shows that Ms. Bailey's deposition was noticed only in the case brought by the United States against Abbott and not cross-noticed in this case). More importantly though, ***only two individuals*** directly responsible for setting FULs were deposed (Sue Gaston and Gayle Sexton), and those depositions lasted less than a day in total. *See* Excerpts of the Gaston and Sexton Depositions (attached hereto as Exhibit B). Ms. Sexton was not, for example,

ROPES & GRAY LLP

The Honorable Patti B. Saris — - 2 - — July 30, 2009

deposed over two days as Ms. Cicala's letter represents. *Id.* In fact, CMS denied defendants' request to take the depositions of the other current and former CMS employees who were directly responsible setting FULs during the relevant time, citing *United States ex rel. Touhy* v. *Ragen*. See Exhibit C hereto (March 20, 2008 letter denying defendants' request to depose Cindy Bergin and Peter Rodler).

Respectfully submitted,

John T. Montgomery

Enclosures

cc:  Joanne M. Cicala, Esq.
    All Counsel of Record (by LNFS)

12067341_1.DOC

# EXHIBIT A



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL NO. 1456 ) ) CIVIL ACTION: 01-CV-12257-PBS ) ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* No. 06-CV-11337-PBS | ) ) Chief Magistrate Judge Marianne B. Bowler ) ) |

## NOTICE OF DEPOSITION OF GLENDA BAILEY

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Abbott Laboratories, by its undersigned attorneys, will take the deposition of Glenda Bailey. Ms. Bailey is being deposed in response to Abbott's Notice of Deposition of one or more persons designated by the United States to testify regarding the United States' responses to subpoenas issued in the Lupron MDL and the AWP MDL.

The deposition will take place before a notary public, or any other officer authorized to administer oaths, at the office of Hogan & Hartson LLP, 111 South Calvert St., Baltimore, MD, on March 20, 2007, beginning at 9:00 a.m. and continuing on successive days as necessary. Such deposition will be recorded by stenographic and/or sound and visual means.

The deposition is being taken for the purposes of discovery, for use at trial, and for such other purposes as permitted under the Federal Rules of Civil Procedure.

-2-

Dated: March 8, 2007

/s/ R. Christopher Cook
James R. Daly
Tina M. Tabacchi
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I, R. Christopher Cook, an attorney, hereby certify that I caused a true and correct copy of the foregoing NOTICE OF DEPOSITION OF GLENDA BAILEY to be served upon be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 8th day of March, 2007.

/s/ R. Christopher Cook
R. Christopher Cook

**EXHIBIT B**

Page 287

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL | ) | MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | ) | CIVIL ACTION |
| PRICE LITIGATION | ) | 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | ) | |
| U.S. ex rel. Ven-a-Care of | ) | Judge Patti B. Saris |
| the Florida Keys, Inc. | ) | |
| v. | ) | Chief Magistrate |
| Abbott Laboratories, Inc., | ) | Judge Marianne B. |
| No. 06-CV-11337-PBS | ) | Bowler |

- - - - - - - - - - - - - - - -

(cross captions appear on following pages)

Videotaped deposition of SUE GASTON

Volume II

Washington, D.C.

Wednesday, March 19, 2008

9:00 a.m.

                    Henderson Legal Services, Inc.
202-220-4158                        www.hendersonlegalservices.com
                                       96c95944-eee1-42b5-b77a-388fc0daf3d5

Gaston, Sue - Vol. II  
March 19, 2008  
Washington, DC

Page 400

1 their FDB file the first week of May. The file
2 contains an indicator which denotes the 'true AWP
3 prices' for those 400 drugs that were identified
4 on the price list states received from the
5 attorney general's office. I will keep you
6 advised on this issue and share any additional
7 information received. Please remember that any
8 changes in your reimbursement methodology must be
9 reflected in your state plan."
10     Do you see that?
11   A. Yes.
12   Q. And he was forwarding an e-mail that
13 you had written to individuals in the HCFA
14 regional offices, correct?
15   A. This looks like it was to folks at the
16 state. You're talking about the May 11th?
17   Q. I'm talking about the e-mail that you
18 sent on April 25th, 2000. Individuals in the
19 distribution line are individuals in the HCFA
20 regional offices, correct?
21   A. Correct. Oh, he copied. Okay.
22 Correct.

Page 401

1   Q. And you gave a brief summary in your e-
2 mail, correct?
3   A. Yes.
4   Q. Of the true AWP prices that were being
5 placed on 400 drugs, correct?
6     MS. MARTINEZ: Objection, form.
7   A. Correct. The First Databank
8 settlement.
9   Q. And you stated amongst other things,
10 "By way of background, there is a qui tam False
11 Claims Act lawsuit files against more than 20
12 drug manufacturers which is still partially under
13 seal." Do you see that?
14   A. Correct.
15   Q. And that's consistent with your
16 recollection that the DOJ/NAMFCU AWP effort was
17 one that was coming out of litigation --
18   A. Yes.
19   Q. -- correct?
20     So that effort to provide more accurate
21 AWPs was something that was instigated by the
22 Department of Justice, correct?

Page 402

1     MS. MARTINEZ: Objection, form.
2   A. That's what it appears.
3     MR. TORBORG: Ms. Gaston, that's all
4 the questions I have for you at this time. I
5 reserve the right to ask some follow-up
6 questions. But we're done. I thank you for your
7 time.
8     THE WITNESS: Okay.
9     THE VIDEOGRAPHER: Off the record at
10 11:41.
11     (Recess.)
12     THE VIDEOGRAPHER: On the record at
13 11:53.
14
15     EXAMINATION BY COUNSEL FOR WARRICK
16 PHARMACEUTICALS, SCHERING-PLOUGH CORPORATION AND
17 SCHERING CORPORATION
18 BY MR. BUEKER:
19   Q. Good morning, Ms. Gaston. My name is
20 John Bueker. I'm here on behalf of Warrick
21 Pharmaceuticals, Schering-Plough Corporation and
22 Schering Corporation. And we all are defendants

Page 403

1 in the New York counties case. And I'm going to
2 focus my questioning on that case. There have
3 been nine drugs for which FULs have been
4 established that have been singled out for kind
5 of focused discovery.
6     And a lot of what I want to do today is
7 use I think some of the printouts from the FUL
8 application that maybe you looked at to refresh
9 your recollection for the deposition and kind of
10 walk through the mechanics of how FULs are set to
11 kind of drill down and see if we can't better
12 understand that process, is a lot of what I want
13 to do today.
14   A. Okay.
15   Q. But I just want to before we delve into
16 that make sure that we have a common
17 understanding with regard to the chronology here
18 for a second. As I understand it, from 1991 to
19 2003 you were one of the individuals at CMS who
20 was responsible for setting the FULs; is that
21 correct?
22   A. Correct.

30 (Pages 400 to 403)

Henderson Legal Services, Inc.
202-220-4158                           www.hendersonlegalservices.com
96c95944-eee1-42b5-b77a-388fc0daf3d5

Page 532

1  thought was appropriate to incorporate into the
2  process of setting FULs you incorporated that
3  information?
4      A.  For the updates, yes.
5      Q.  And then annually or some other period
6  of time, at least you began annually at the
7  beginning, there were these systematic updates of
8  the entire list?
9      A.  Correct.
10     Q.  Separate and apart from that, what
11 triggered the decision to actually add a new drug
12 to the list?
13     A.  Most of the time it came out on a new
14 run that we would do.  So if we're looking at
15 updating the whole entire FUL list, that's when
16 the new drugs would show up.
17     Q.  Let me see if I understand.  So the FUL
18 system -- when you do the update of the entire
19 list, the FUL system would go back to Orange Book
20 and identify all the drugs that were eligible and
21 also pull in the published prices.  So at that
22 time if a drug had gone generic and was now --

Page 533

1  met the minimum criteria, it would get pulled in
2  and you would at least get one of the printouts
3  we've been looking at like Exhibit 18?
4      A.  Correct.
5      Q.  And then you begin a manual review
6  process at that point to decide whether or not to
7  set a FUL?
8      A.  If it was necessary.  It might have
9  enough information we wouldn't have to do a
10 manual review.
11     Q.  Okay.  And there may also have been
12 other instances in which you got the information
13 and decided even though the drug met the minimum
14 criteria in the regulation, for some other reason
15 it wouldn't result in a cost savings or the FUL
16 that would be derived on the basis of the
17 published prices would be too low, you might
18 decide not to set a FUL at that point even though
19 it was eligible?
20     A.  Yes, if there was a reason not to set
21 it.
22     Q.  Okay.  It sounds like in terms of

Page 534

1  setting brand-new FULs at the very least they
2  would have been picked up as a part of the
3  complete or the entire update process?
4      A.  Correct.
5      Q.  And at that point, just like with any
6  of the other FULs, CMS would have made a
7  determination as to whether it made sense to add
8  a FUL, whether it was reasonable to add a FUL at
9  that time?
10     A.  Correct.
11     Q.  Can you remember instances in which a
12 drug was new, came on -- a new drug was
13 identified as a result of the annual update
14 process and CMS decided not to set a FUL?
15     A.  I can't remember that.
16     Q.  You can't remember specific examples?
17     A.  Correct.
18     Q.  But don't doubt that it happened?
19     A.  It could have happened.
20         MS. MARTINEZ:  Objection, form.
21     Q.  Is there anything else other than
22 having the annual update or receiving information

Page 535

1  from industry sources that would have caused CMS
2  in your time period, '91 and 2003, to update the
3  FUL list?
4      A.  That's all I can think of.
5         MR. BUEKER:  Okay.  Well, that's all I
6  have.
7         THE WITNESS:  Okay.
8         MR. BUEKER:  I appreciate your time.
9         THE WITNESS:  You're welcome.
10        MR. BUEKER:  I think some of the others
11 here may still have questions.
12        THE VIDEOGRAPHER:  This is the end of
13 tape 4.  Off the record at 355.
14        (Recess.)
15        THE VIDEOGRAPHER:  This is the
16 beginning of tape 5 in the deposition of Ms.
17 Gaston.  On the record at 3:57.
18
19        EXAMINATION BY COUNSEL FOR DEY,
20 INC., DEY, L.P. AND MYLAN
21 BY MS. REID:
22     Q.  Good afternoon.  My name again is Sarah

Sexton, Gail                                                      May 20, 2008
                         Washington, DC

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - -

IN RE: PHARMACEUTICAL            ) MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE       ) CIVIL ACTION NO.

PRICE LITIGATION                 ) 01-CV-12257-PBS

- - - - - - - - - - - - - - - - - - - - - - - -

THIS DOCUMENT RELATES TO:                              )

The City of New York v. Abbott Labs., et al.           )

(S.D.N.Y. No. 04-CV-06054)                             )

County of Suffolk v. Abbott Labs., et al.              )

(E.D.N.Y. No. 03-CV-229)                               )

County of Westchester v. Abbott Labs., et al.          )

(S.D.N.Y. No. 03-CV-6178)                              )

County of Rockland v. Abbott Labs., et al.             )

(S.D.N.Y. No. 03-CV-7055)                              )

[Caption continues on Next Page]                       )


                    Washington, D.C.

                    Monday, May 20, 2008

                       9:30 a.m.

         VIDEOTAPED DEPOSITION OF GAIL SEXTON

Sexton, Gail  
Washington, DC

May 20, 2008

Page 24

1  PROCEEDINGS
2  (9:31 a.m.)
3  THE VIDEOGRAPHER:  In the United States
4  District Court for the District of Massachusetts,
5  In Re: Pharmaceutical Industry Average Wholesale
6  Price Litigation, Consolidated New York Counties,
7  Case Number 01-CV-12257 PBS, this is the
8  deposition of Gail Sexton.
9  Today's date is May 20th 2008.  The
10  location of the deposition is Ropes & Gray, 700
11  12th Street, N.W., Washington, D.C.
12  Will counsel please identify yourselves
13  and state whom you represent?
14  MR. BUEKER:  Good morning, Ms. Sexton.
15  My name is John Bueker.  I'm here at Ropes &
16  Gray.  I'm appearing on behalf of Schering-Plough
17  Corporation, Schering Corporation and Warrick
18  Pharmaceuticals Corporation.
19  MR. FLESSNER:  Good morning, Ms.
20  Sexton.  My name is Mark Flessner.  I'm with
21  Sonnenschein, Nath & Rosenthal in Chicago and I
22  represent Ethex.

Sexton, Gail  
Washington, DC  
May 20, 2008

Page 28

1           EXAMINATION BY COUNSEL FOR
2   SCHERING-PLOUGH CORPORATION, SCHERING CORPORATION
3   AND WARRICK PHARMACEUTICALS CORPORATION
4   BY MR. BUEKER:
5       Q.   Good morning, again, Ms. Sexton.  Would
6   you just state and spell your name for the
7   record, please?
8       A.   Yes.  Gail, G-a-i-l, Sexton, S-e-x-t-o-
9   n.
10      Q.   And how are you presently employed?
11      A.   I'm employed as a health insurance
12  specialist with the Centers for Medicare and
13  Medicaid Services in Baltimore, Maryland.
14          MS. HANSCOM:  Excuse me.  I cannot hear
15  the witness.
16          MS. SALZMAN:  Nor can I.
17              (Discussion off the record.)
18  BY MR. BUEKER:
19      Q.   Perhaps we could started again.  Could
20  you state and spell your name for the record,
21  please?
22      A.   Yes.  My name is Gail Sexton, G-a-i-l

Sexton, Gail   May 20, 2008
Washington, DC

Page 158

1  UNITED STATES OF AMERICA
2  BY MR. FAUCI:
3      Q.   Ms. Sexton, if you saw a price
4  published in the compendia which appeared to you
5  to be an outlier in that it was significantly
6  lower than other prices, I believe you testified
7  that you might call the supplier to verify that
8  the price was actually available; is that
9  correct?
10     A.   Yes.
11     Q.   And if the answer to that question is
12 yes, if you verified that the drug was available
13 at that price, would you use that price to set
14 the FUL?
15     A.   Yes.
16        MR. FAUCI:  That's all.
17        MR. BUEKER:  I have nothing further.
18 Does anyone on the phone have any further
19 questions for this witness?
20        THE VIDEOGRAPHER:  This deposition
21 concludes at 1:05 and consists of two tapes.
22        (Whereupon, at 1:05 p.m. the

Sexton, Gail  
Washington, DC  
May 20, 2008

Page 159

1   videotaped deposition was adjourned.)
2
3
4
5
6
7
8                              _____
                                       GAIL SEXTON
9
10  Subscribed and sworn to and before me
11  this _____ day of _____, 20____.
12
13
14                              _____
15                                    Notary Public
16
17
18
19
20
21
22

**EXHIBIT C**

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland   21244-1850



**Center for Medicaid and State Operations**

MAR 20 2008

John P. Bueker
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624

    Re:    Request for testimony in City of New York v. Abbott Laboratories, Inc.; MDL
            No. 1456; 01-CV-12257-PBS. (D. Mass.)

Dear Mr. Bueker:

I write in response to your letter to Kerry Weems, Acting Administrator of the Centers for Medicare & Medicaid Services (CMS), U.S. Department of Health and Human Services (HHS) and James C. Stansel, Acting General Counsel for HHS, in which you request the deposition testimony of current CMS employees Gail Sexton and Cindy Bergin (the former Cindy Pelter) and a former CMS employee, Peter Rodler, in the above-referenced litigation to which the government is not a party.

As current and former employees of CMS, Ms. Sexton, Ms. Bergin and Mr. Rodler are covered by the agency's "Touhy regulation," 45 C.F.R. Part 2. The HHS Touhy regulation prohibits HHS employees and former employees from providing testimony or producing documents concerning information acquired in the course of performing official duties unless "authorized by the Agency head . . . based on a determination by the Agency head, after consultation with the Office of the General Counsel, that compliance with the request would promote the objectives of the Department." 45 C.F.R. § 2.3. See United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951); Moore v. Armour Pharm. Co., 927 F.2d 1194 (11th Cir. 1991). The CMS Administrator has delegated the authority to make these determinations to the Deputy Administrator, Regional Administrators, Center Directors, and Office Directors. Pursuant to this delegation, I am responsible for deciding whether to approve your request.

Your request for testimony is made as part of litigation in, City of New York v. Abbott Laboratories, Inc.; MDL No. 1456; 01-CV-12257-PBS (D. Mass.), a matter to which the government is not a party. However, the case is one of several cases that are part of a multi-district litigation (MDL) currently before the United States District Court for the District of Massachusetts. The federal government has also filed a complaint against Abbott Laboratories, Inc. and the case, United States ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., MDL No. 1456; No. 06-CV-11337-PBS (D. Mass), is also part of the MDL. As part of discovery in the government's case, several CMS employees have been and continue to be deposed on multiple days. Those employees include Larry Reed, Technical Director, Pharmacy Team, with general oversight of the federal upper limit (FUL) program; Deirdre

Page 2 - Mr. Bueker

Duzor, Director, Pharmacy Team; and Sue Gaston, formerly lead Pharmacy Team analyst for the FUL program and currently Team Lead for Dispute Resolution of the Medicaid Drug Rebate Program. Also, as part of discovery in the government's case, CMS has produced current and historical documents demonstrating the establishment of FULs and how FULs were calculated for certain multi-source drugs. CMS has also responded to specific discovery requests concerning the calculation of the FULs. Everything produced by CMS as part of the government's litigation is available to all the plaintiffs and defendants in the MDL, including the Warrick Defendants. Considering the prior and continuing discovery regarding FULs in the government's case, I have decided to deny testimony for Peter Rodler and Cindy Bergin because I believe that such testimony would not promote the objectives of HHS as it is duplicative of previous discovery responses, including prior deposition testimony.

However, I believe that it would promote the interests of the HHS to allow Gail Sexton, the current operator of the FUL program, to testify on the development, to the extent there has been such, of FULs for the following drugs: enalapril maleate (20 mg tablet), lorazepam (1 mg tablet), klonopin (0.5 mg tablet), albuterol (90 mcg inhaler and 0.83 mg/ml solution), metropolol (100 mg tablet), cefadroxil (500 mg tablets and capsulate), ranitidine (150 mg tablet), and isosorbide mononitrate (60 mg tablet).

HHS' approval of this request as to Gail Sexton should not be construed as an endorsement by HHS of any statements which Ms. Sexton may make in a deposition. HHS reserves the right to correct any inaccuracies that may occur by filing a brief with the court or by otherwise correcting the record in an appropriate manner.

If you have any questions about this decision, please contact Brian Kelley, of the Office of the General Counsel at (202) 205-8702.

Sincerely,

*Dennis G. Smith*

Dennis G. Smith
Director,
Center for Medicaid and State Operations