# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| **BMS CLASS ACTIONS** | Judge Patti B. Saris |

## CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE BMS SETTLEMENT AND <u>APPROVING THE FORM AND METHOD OF NOTICE TO THE CLASS</u>

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ........................................................................................................1

II.    BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS ............................................1

III.   DESCRIPTION OF THE PROPOSED SETTLEMENT ....................................................2

    A.    The Proposed Settlement Classes ...........................................................................2

    B.    The Total Settlement Amount And Proposed Allocation ........................................4

    C.    The Proposed Distribution Plan And Claims Process..............................................5

        1.    The distribution plan .................................................................................5

        2.    The claims process .....................................................................................6

            a.    Required claims documentation.....................................................6

                (i)    Consumer Class Members ...................................................6

                (ii)   TPP Class Members ............................................................7

            b.    Calculating Recognized Claim Amounts.......................................7

                (i)    Consumer Class Members in Class 1...................................7

                (ii)   Consumer Class Members in Class 3...................................8

                (iii)  Sample calculations for hypothetical Consumer claims ......9

                (iv)   TPP Class Members ..........................................................10

    D.    The Proposed Notice Plan.....................................................................................10

        1.    Class 1 Consumers...................................................................................11

        2.    Class 3 Consumers...................................................................................12

        3.    TPPs in Class 2 and Class 3 ....................................................................13

    E.    Attorney's Fees and Expenses and Incentive Awards ...........................................13

IV.    ARGUMENT ..........................................................................................................13

001534-16  318035 V1

A.      The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement ................................................................. 14

      1.      The Requirements of Rule 23 have been satisfied ..................................... 15

B.      Preliminary Approval is Appropriate .................................................................. 15

      1.      The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval ............................................................ 16

      2.      The proposed Settlement is the result of arduous, arm's-length negotiations conducted by highly experienced counsel ............................ 19

      3.      Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues ............ 19

C.      The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing ........................................................................................ 20

V.      CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................................19

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*,
    455 F.2d 101 (7th Cir. 1972) ..........................................................................................21

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................................14, 21

*Argo v. Harris*,
    84 F.R.D. 646 (E.D.N.Y. 1979).......................................................................................18

*Carlough v. Amchem Prods., Inc.*,
    158 F.R.D. 314 (E.D. Pa. 1993).....................................................................................20

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996)..........................................................................14, 19, 20

*In re Compact Discount Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003).........................................................................................15

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    183 F.3d 1 (1st Cir. 1999)..........................................................................................15, 16

*Durrett v. Housing Auth. of Providence*,
    896 F.2d 600 (1st Cir. 1990).......................................................................................16, 20

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ..........................................................................................17

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................................................21

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) .........................................................................................19

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)..............................................................................................20

*Greenspun v. Bogan*,
    492 F.2d 375 (1st Cir. 1974)............................................................................................21

*Grunin v. International House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ...........................................................................................21

*Hawkins v. Commissioner of New Hampshire Dep't of Health & Human Servs.*,
    2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004).................................................. *passim*

*Henry v. Sears Roebuck & Co.*,
    1999 WL 33496080 (N.D. Ill. July 23, 1999)..................................................................22

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...........................................................................................18

*Lake v. First Nationwide Bank*,
    156 F.R.D. 615 (E.D. Pa. 1994).......................................................................................22

*Levell v. Monsanto Research Corp.*,
    191 F.R.D. 543 (S.D. Ohio 2000) ....................................................................................14

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................................22

*Mars Steel v. Continental Ill. Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987) ...........................................................................................19

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) .......................................................................................22

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ..............................................................................22

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
    189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000).............................15

001534-16  318035 V1

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)..................................................................................................21

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................16

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
    546 F. Supp. 1 (N.D. Ohio 1982)............................................................................17

*Patterson v. Stovall*,
    528 F.2d 108 (7th Cir. 1976) ..................................................................................17

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)...........................17, 23

*Reppert v. Marvin Lumber & Cedar Co.*,
    359 F.3d 53 (1st Cir. 2004).....................................................................................21

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000).................................................................................20

*In re Screws Antitrust Litig.*,
    91 F.R.D. 52 (D. Mass. 1981).................................................................................15

*Smilow v. Southwestern Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003).....................................................................................15

*South Carolina Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)...........................................................................14

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*,
    447 F.2d 647 (7th Cir. 1971) ..................................................................................17

*White v. National Football League*,
    822 F. Supp. 1389 (D. Minn. 1993)..................................................................16, 22

*Whitford v. First Nationwide Bank*,
    147 F.R.D. 135 (W.D. Ky. 1992).............................................................................17

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..................................................................................17

001534-16  318035 V1

## I.      INTRODUCTION

The Class Plaintiffs respectfully submit this Memorandum in support of the Motion for Entry of an Order Granting Preliminary Approval of the BMS Settlement and Approving the Form and Method of Notice to the Class (the "Joint Motion").  The Settlement encompassed by the parties' Settlement Agreement provides for BMS to pay $19,000,000 for distribution to Class Members.  In addition to the foregoing, BMS will pay one-half of the costs of notice up to a maximum of $1,000,000.  Under the proposal, consumers are eligible to recover three times their co-payment obligations for the drugs Cytoxan, Taxol and Vepesid, and their actual co-payments for the remaining BMS Subject Drugs

Class Plaintiffs and Lead Class Counsel believe that the Settlement is fair, reasonable and adequate.  It has been reached after months of arms-length, intensely fought negotiation, all of which were conducted under the auspices of the Court appointed mediator, Eric Green.  Accordingly, this Motion seeks preliminary approval of the Settlement and certification of the Classes for settlement purposes and requests, *inter alia*, that the Court order that notice of the Settlement be disseminated to the Classes, and schedule a hearing to determine whether final approval of the Settlement should be granted.

## II.     BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS

The settlement negotiations among the parties, although always courteous, were long and contentious and spanned over a year.  The parties reached a tentative agreement in June 2007 to settle the claims of the members of Class 1 Medicare Part beneficiaries for $13,000,000, but were unable to translate the Memorandum of Understanding (the "MOU") into a comprehensive settlement agreement.  A dispute erupted over the distribution methodology, with the primary point of controversy focused on whether BMS could influence the distribution process.  More particularly, BMS was seeking to create a residual to its credit by, *inter alia*, insisting on a claims

process that required Class members to obtain detailed written documentation from their physicians.  The parties submitted their dispute to the Court.  Although the Court rejected BMS's argument that it had a right to veto a proposed distribution plan, the Court appeared to be influenced by BMS's argument that a substantial residual would be left after a claims-made distribution to the members of Class 1.  Accordingly, the Court ultimately ruled that "BMS raises several interesting questions about the fairness of the plan.  Plaintiffs shall move for a preliminary approval of the plan, and the Court will hold a hearing where the issues will be vetted."  September 29, 2008 Electronic order entered re:  Motion to Preliminarily Approve Proposed Plan of Distribution for BMS Class 1 Settlement.

Shortly thereafter, Professor Green continued mediation efforts in another attempt to settle the claims of all putative classes.  These efforts were ultimately successful and resulted in the $19,000,000 Proposed Settlement for all Classes being presented herein for preliminary approval.  The Settlement Agreement and Release of the BMS Group plus attachments are submitted herewith as Exhibit 1 (hereinafter the "Settlement Agreement").

Throughout this entire process, the parties exchanged information and debated the other's evidence and interpretations.  Both sides made detailed presentations to Eric Green and presented extensive analysis and conclusions of experts, and noted their positions on legal theories, evidence and possible damages.  The negotiations were conducted at arms' length.

## III.   DESCRIPTION OF THE PROPOSED SETTLEMENT

### A.   The Proposed Settlement Classes

The proposed Settlement Classes are as follows:

> Medicare Part B Co-Payment Class ("Class 1"):  All natural persons nationwide who made, or were liable for all or any portion of, a Medicare Part B co-payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004.  Excluded from Class 1 are those who made

flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed.

Third-Party Payor MediGap Supplemental Insurance Class ("Class 2"):  All TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment based on AWP for a BMS Subject Drug.

Consumer and Third-Party Payor Class for Payments Made Outside the Medicare Context ("Class 3"):  All natural persons nationwide who made, or were liable for all or any portion of, a non-Medicare Part B payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004, and all TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, non-Medicare Part B reimbursements based on AWP for any BMS Subject Drug.  Excluded from Class 3 are those consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed.

In addition to the foregoing, excluded from all Classes are the officers, directors, management, and employees of the BMS Group or of any of their, subsidiaries, and affiliates, as well as all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

The BMS Subject Drugs are the chemotherapy agents Blenoxane, Cytoxan, Etopophos, Paraplatin, Rubex, Taxol, and Vepesid.

Class 1 differs in one respect from the litigation Class 1 previously certified by the Court in its January 30, 2006, Consolidated Order Re:  Motion for Class Certification, in that the Settlement Class 1 includes residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia, who were not included in the certified class. Class 1 Members in these states only will be provided with an opportunity to request exclusion.

**B.      The Total Settlement Amount And Proposed Allocation**

BMS has agreed to pay $19,000,000 to settle the claims of all of the Classes.  In addition, BMS will pay one-half of the costs of notice up to a maximum of $1,000,000.

After a settlement-in-principle was reached, a mediation was held on June 22, 2009, under the supervision of Professor Green in order to determine how the Settlement Fund would be allocated between consumers and TPPs.  Each group was separately represented by counsel. Consumers were represented by Jeffrey Goldenberg, Esq., who served as consumer allocation counsel with respect to the Track 2 proposed settlement and was, therefore, quite familiar with the consumer claims in this case generally.  Consumers were also represented by Wells Wilkinson, Esq., Staff Attorney for the Prescription Access Litigation Project, a national coalition of consumer groups dedicated to redress unlawful drug price manipulations and deceptive marketing.  TPPs were represented by Geoffrey Horn, whose firm, Lowey Dannenberg Cohen & Hart, P.C., represents the large TPPs such as Aetna, CIGNA, Humana, and Wellpoint. The Lowey Danenberg firm has previously served as TPP allocation counsel in prior settlements in these consolidated proceedings.

Using Dr. Hartman's damages estimates for each Class as a point of departure, allocation counsel debated the merits of each side's position and exchanged several rounds of proposals. With the able assistance of Professor Green, allocation counsel were able to reach agreement on an allocation of 23 percent (23%) for the benefit of Consumers (the "Consumer Settlement Pool") and seventy-seven percent (77%) for the benefit of TPP Class Members (the "TPP Settlement Pool").  In addition, consumers and TPPs agreed to share the costs of notice equally.

**C.      The Proposed Distribution Plan And Claims Process**

**1.       The distribution plan**

The Consumer Settlement Pool will be paid to the members of Class 1 and the consumer

members of Class 3 who submit Proofs of Claim that are accepted by the Claims Administrator

and approved by the Court ("Authorized Consumer Claimants") in accordance with the

"Distribution Plan and Claims Process" procedures set forth in Exhibit F to the Settlement

Agreement and as summarized below.  Each Proof of Claim will be used to establish the

claimant's "Total Recognized Claim," which will then form the basis of payment.  For

Authorized Consumer Claimants, if the Consumer Settlement Pool is sufficient to pay all claims,

then each Authorized Consumer Claimant will receive his or her Total Recognized Claim.  If the

amount of the Consumer Settlement Pool is not sufficient to pay each Authorized Consumer

Claimant his or her Total Recognized Claim, then each Authorized Consumer Claimant shall be

paid their *pro rata* share of the claimants' Total Recognized Claim.  If there are any unclaimed

monies in the Consumer Settlement Pool after all Authorized Consumer Claimants have been

paid according to their Total Recognized Claim, then the Court, upon motion of Lead Class

Counsel, will determine how the balance of the Consumer Settlement Pool will be disposed.

However, under no circumstances are any unclaimed funds in the Consumer Settlement Pool to

revert to BMS or be used to satisfy TPP claims.  Distribution Plan and Claims Process at ¶ 9.

The TPP Settlement Pool will be paid to TPP Class Members who submit Proofs of

Claim that are accepted by the Claims Administrator and approved by the Court ("Authorized

TPP Claimants").  Each Proof of Claim will be used to establish the claimant's "Total

Recognized Claim."  It is anticipated that the claims of all TPP Class Members will exceed the

total amount of funds allocated to satisfy the claims of TPP Class Members under the Settlement

Agreement and that each TPP Class Member will, therefore, be paid a pro-rata portion of the

- 5 -

Settlement Amount allocated to TPP Class Members.  Distribution Plan and Claims Process at ¶¶ 10, 21.

### 2.     The claims process

#### a.     Required claims documentation

##### (i)     Consumer Class Members

Consumer Class Members must submit one proof of payment for each Subject Drug for which they are seeking payment.  Proof of payment for Consumers in Class 1, for which the Claims Administrator has received data on co-payment obligations from CMS, and for Consumers in Class 3 who have chosen the "Easy Refund Option," may be in the form of a statement signed by the Consumer Class Member under penalty of perjury indicating that the Consumer paid or is obligated to pay a percentage co-payment for one or more of the Subject Drugs during the period January 1, 1991, through December 31, 2004.  This statement will also be accepted as executed by a spouse of a deceased Consumer Class Member or a legal representative of the deceased Consumer Class Member's estate.  Distribution Plan and Claims Process at ¶ 12.

Proof of payment for Consumers in Class 3 who have elected the "Full Estimation Refund Option" may be in the form of the following:  (i) a receipt, cancelled check, or credit card statement that shows a payment for one of the Subject Drugs (other than a flat co-payment); (ii) a letter from the Consumer Class Member's doctor stating that he or she prescribed and that the Consumer Class Member paid or is obligated to pay part or all of the cost of one of the Subject Drugs (other than a flat co-payment) at least once; (iii) billing records from a doctor or other health care provider evidencing an obligation to pay part or all of the cost of one of the Subject Drugs (other than a flat co-payment); (iv) an Explanation of Benefits ("EOB") from an insurer or other payor evidencing an obligation to pay part or all of the cost of one of the Subject

- 6 -

Drugs (other than a flat co-payment), or (v) any combination of (i)-(iv) above.  Distribution Plan
and Claims Process at ¶ 13.  The proposed Class 3 Claim Form is attached as Exhibit B to the
Settlement Agreement and follows the Class 3 Consumer Notice.

**(ii)      TPP Class Members**

TPP Class Members will be required to submit the amount of purchases of each Subject
Drug for which they are seeking payment during the period January 1, 2003, to December 31,
2003.  This period is substituted for the amount of expenditures for each drug associated with the
full class period in recognition of the difficulty that many TPPs have in accessing claims data
that are older and likely not kept electronically or on current electronic systems.  This "proxy
period" will be used to determine the payments made to each TPP Class Member.  Distribution
Plan and Claims Process at ¶ 14.

TPP Class Members with claimed expenditures for Subject Drugs during the proxy
period that exceed $300,000 in total will be required to submit electronic claims documentation
with their claim.  The form of data required to be submitted are delineated in the TPP Claim
Form attached as Exhibit B to the Settlement Agreement and follows the Class 2/3 TPP Notice.
Those TPP Class Members whose claimed expenditures are $300,000 or less need not submit
electronic claims documentation with their claim but must furnish such claims documentation
upon request of the Claims Administrator.  Distribution Plan and Claims Process at ¶ 15.

**b.      Calculating Recognized Claim Amounts**

Procedures for establishing a Recognized Claim for each Consumer Class Member and
TPP Class Member have been established as follows:

**(i)      Consumer Class Members in Class 1**

For Consumers in Class 1 for which the Claims Administrator has obtained records from
CMS evidencing the Consumer's total co-payment obligation under Medicare Part B during the

- 7 -

class period, such total co-payment obligation, as evidenced in records from CMS, will form the basis of the Class 1 Consumer's claim.  For the drugs Cytoxan, Taxol, and Vepesid – the drugs driving most of the Classes damages – the Consumer's total co-pay obligation for such drugs shall be summed and then multiplied by a factor of three (3x).  For the drugs Blenoxane, Etopophos, Paraplatin, and Rubex, for which Dr. Hartman calculated minimal damages during the Class Period, the Consumer's total co-pay obligation for such drugs will be summed (but will not be multiplied by a factor).  Both figures will be added to determine the Consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member.  Distribution Plan and Claims Process at ¶ 17.

**(ii)      Consumer Class Members in Class 3**

For Consumers in Class 3 for which the Claims Administrator does not have records from CMS, the amount to which the Class 3 Consumer shall be entitled will be determined based upon the Consumer's election on a claim form provided by the Claims Administrator between two options.

a.      <u>Easy Refund Option</u>.  If a Class 3 Consumer elects the "Easy Refund Option" on the claim form provided, and the Consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating the payment made to each such Consumer Class Member will be $35.00.  Distribution Plan and Claims Process at ¶ 18.

b.      <u>Full Estimation Refund Option</u>.  If a Class 3 Consumer elects the "Full Estimation Refund Option" on the claim form provided, then the Consumer will be required to estimate the Consumer's total out-of pocket expenses associated with percentage co-payments or full payments for each Subject Drug for which the consumer is seeking payment.  Each such Consumer will also be required to provide documentary

- 8 -

support, as described above, in support of the Consumer's estimated out-of-pocket expenses.  Distribution Plan and Claims Process at ¶ 18.

For the drugs Cytoxan, Taxol, and Vepesid, the Consumer's estimated out-of-pocket expenses for such drugs will be summed and then multiplied by a factor of three (3x).  For the drugs Blenoxane, Etopophos, Paraplatin, and Rubex, the Consumer's estimated out-of-pocket expenses for such drugs will be summed (but will not be multiplied by a factor).  Both figures will be added to determine the Consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member.  Distribution Plan and Claims Process at ¶ 18.

### (iii)   Sample calculations for hypothetical Consumer claims

Below are two examples for paying hypothetical Consumer claims (*see* Distribution Plan and Claims Process at ¶ 19).

Example # 1

Consumer information:

> Consumer Class Member in Class 1.  Consumer validly certifies under penalty of perjury that the Consumer paid or was obligated to pay percentage co-payments during the Class Period.

> CMS records indicate total co-payment obligations under Medicare Part B to be $200 for Cytoxan, Taxol, and Vepesid and $100 for Blenoxane, Etopophos, Paraplatin, and Rubex during the class period.

Calculation:

> Cytoxan, Taxol, and Vepesid:   $200 x 3 = $600
> Blenoxane, Etopophos, Paraplatin, and Rubex:   $100

> Total Recognized Claim = $700, unless Total Recognized Claims of all Consumer Class Members exceeds the amount allocated to pay Consumer claims, in which case the payment will be reduced in proportion to all such Recognized Claim amounts.

Example # 2

- 9 -

Consumer information:

>Consumer Settlement Class Member in both Class 1 and Class 3.  Consumer validly certifies under penalty of perjury that the Consumer paid or was obligated to pay percentage co-payments during the Class Period under both Medicare Part B and under one or more private health insurance plans.

>CMS records indicate total co-payment obligations under Medicare Part B to be $200 for Cytoxan, Taxol, and Vepesid and $100 for Blenoxane, Etopophos, Paraplatin, and Rubex during the class period.

>Consumer chooses "Easy Refund Option" for Class 3 refund.

Calculation:

>Cytoxan, Taxol, and Vepesid:   $200 x 3 = $600
>Blenoxane, Etopophos, Paraplatin, and Rubex:   $100

>Total Recognized Claim = $735 ($600 + $100 +$35), unless total Recognized Claims of all Consumer Class Members exceeds the amount allocated to pay Consumer claims, in which case the payment will be reduced in proportion to all such Recognized Claim amounts.

### (iv)   TPP Class Members

In recognition of the fact that the claims of all TPP Class Members will exceed the total amount of funds allocated to satisfy the claims of TPP Class Members under the Settlement Agreement and that each TPP Class Member will be paid a pro-rata portion of the Settlement Amount allocated to TPP Class Members, the recognized claim for TPP Class Members will be the total amount of purchases during the period of January 1, 2003, to December 31, 2003, of all Subject Drugs.  This figure, if properly supported and accepted by the Claims Administrator, is the TPP Class Member's "Total Recognized Claim" used for purposes of calculating the payment made to each TPP Class Member.  Distribution Plan and Claims Process at ¶ 20.

## D.    The Proposed Notice Plan

The proposed Notice Plan, created with the assistance of Kinsella Media, is set forth in Exhibit G to the Settlement Agreement.  The Notice Plan is summarized as follows.

1.      **Class 1 Consumers**

Lead Counsel will seek CMS data, including last known address, payment information and dates of drug administration for all Medicare Part B beneficiaries who were administered a Class Drug during the Class Period and who incurred a percentage co-payment obligation under Medicare Part B.  In fact, we have already submitted the request to CMS at the same time we requested the Track 2 data.

A simple one or two page explanation of the settlement will be sent to each individual identified in the CMS data.  *See* Settlement Agreement, Ex. B, "Initial Summary Notice and Claim Card for Class 1.  Included with that mailing will be a postage pre-paid reply card which will allow the potential class member to certify under penalties of perjury that they made percentage co-payments under Medicare Part B during the class period (as opposed to flat or no co-payments due to supplemental insurance).  Once in receipt of the Consumer Class Member's certification and reply card, the Claims Administrator will mail a full notice, geared specifically to Class Members in Class 1, to each individual who replies.  Settlement Agreement, Ex. B, "Class 1 Long Form Notice Without Opt-Out Rights" and "Class 1 Long Form Notice with Opt-Out Rights (for residents of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia).  Among other things, the full notice describes why the Class Member received the Notice; what the lawsuit is about; advises that the recipient is a member of the Class; describes the terms and benefits of the Settlement; and provides instructions for commenting on the Settlement and appearing at the final Fairness Hearing.  Included with the full notice will be a printout of each of the Subject Drugs that were administered to that particular Class Member along with dates of each administration as derived from CMS data.

If they wish to participate in the Settlement, and they agree with the personal information provided pursuant to CMS data, Class 1 members need do nothing more.  The Claims

- 11 -

Administrator will calculate their claim based on the formula described above.  If they disagree with or have changes to the information provided they will have an opportunity to make changes to the list of drugs and administrations, certify the information as true and return it to the Claims Administrator.

This plan provides direct mail notice to every potential member of Class 1.  It also thereafter minimizes the burden of participation for the vast majority of Class 1 members who will presumably rely on the CMS data for the calculation of their claim amount.

### 2.     Class 3 Consumers

In order to notify Class 3 Consumers of the existence of the Settlement and the availability of refunds, Kinsella Media ("Kinsella"), who has assisted with notice plans for prior *AWP* settlements, has crafted a media plan intended to target potential Class Members in Class 3. *See* Settlement Agreement, Ex. G, at 13-14.  This plan, which takes into account the very small percentage of Class 3 Consumers who comprise the entire Class (less than 1% of total damages), calls for publication of an ad in *People Magazine*, *Newsweek*, and *TV Guide*.  In addition, Kinsella has crafted an earned media program under which a press release will be distributed to cancer and health-related reporters and websites.  Websites targeted will include, but not be limited to, Cancer Survivors Network, Cancerblogger.com, the Cancer Blog, Health Blog Network, Women & Cancer, National Coalition for Cancer Survivorship, National Ovarian Cancer Coalition, The Testicular Cancer Resource Center, People Living Through Cancer, and the Association of Cancer Online Resources.  Settlement Agreement, Ex. G, at 15.  The Summary Notice designed to reach Class 3 Consumers is attached as Exhibit B to the Settlement Agreement and titled "Consumer Publication Notice."

A detailed Notice and Claim Form geared specifically toward consumers in Class 3, *see* Settlement Agreement, Ex. B, "Class 3 Consumer Notice," will be mailed to any consumer who

requests one by phone or via the settlement website.  Among other things, the Notice describes why the Class Member received the Notice; what the lawsuit is about; advises that the recipient may be a member of the Class; describes the terms and benefits of the Settlement; and gives instructions for making a claim.

### 3. TPPs in Class 2 and Class 3

As further outlined in the Notice Plan, TPP Class Members in both Class 2 and Class 3 will receive direct mail notice of the Settlement, based on a proprietary database maintained by the Claims Administrator for that purpose.  Settlement Agreement, Ex. G, at 10-11.  A detailed Notice and Claim Form geared specifically toward TPPs, *see* Settlement Agreement, Ex. B, "Class 2/3 TPP Notice," will be mailed to the TPPs appearing in the database.  In addition, Summary Notice directed toward TPP Class Members will be published in two TPP trade publications.  *Id.* at 14.  The Summary Notice designed to reach TPPs is attached as Exhibit B to the Settlement Agreement and titled "TPP Publication Notice."

### E. Attorney's Fees and Expenses and Incentive Awards

Lead Class Counsel will submit a fee petition for an award of fees, reimbursement of costs and expenses, and reimbursement to appropriate Class Representatives.  Understanding that the award of attorneys' fees is a matter committed to the sole discretion of this Court, subject to Court approval, BMS has agreed not to object to Class Counsel's request for a reasonable attorney's fee not to exceed 33 1/3% of the total Settlement Amount of $19 million.  BMS will also not object to Counsel's request to the Court for an award of reasonable expenses to be paid from the Settlement Amount.

## IV. ARGUMENT

A class action cannot be compromised or settled without the approval of the Court.  FED. R. CIV. P. 23(e).  Prior to addressing the adequacy of a proposed Settlement, however, the Court

must determine whether the Class, as agreed to by the parties, may be certified for purposes of the Settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Hawkins v. Commissioner of New Hampshire Dept. of Health & Human Servs.*, 2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004).

A court may grant conditional approval of a class action where, as here, the Class proposed satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *See Amchem*, 521 U.S. at 613; *see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).

If the Court determines that a Settlement Class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).  First, the Court must preliminarily approve the proposed settlement.  *Id.* at 547.  Second, members of the Class must then be given notice of the proposed settlement.  *Id.*  Third, a hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the Class as a whole, and consistent with the public interest.  *Id.*  This protects the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian for the Class's interests. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996).

**A.  The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement**

Preliminary certification of the Settlement Class is appropriate in this case because the four requirements of Fed. R. Civ. P. 23(a) and a part of Rule 23(b) are satisfied.

1.       **The Requirements of Rule 23 have been satisfied**

Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy

of representation.  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003)

(citing *Amchem*, 521 U.S. at 613).  These issues have been addressed in the Court's January 30,

2006, Consolidated Order Re:  Motion for Class Certification and in subsequent orders related to

approval of settlements with GlaxoSmithKline and AstraZeneca and will not be repeated here.

All Rule 23(a) requirements have been satisfied.

In addition to having satisfied the prerequisites of Rule 23(a), the Class also satisfies

those of Rule 23(b)(3):  namely, (1) questions of law or fact common to Class Members

predominate over any questions affecting only individual members; and (2) the Class action is

superior to other available methods for the fair and efficient adjudication of this matter.

*Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 196-97 (D. Mass. 1999), *aff'd*, 208

F.3d 288 (1st Cir. 2000); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 55 (D. Mass. 1981); *In re

Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003).

These issues have also been addressed by the Court in prior orders.

B.       **Preliminary Approval is Appropriate**

Plaintiffs respectfully submit, as they will demonstrate at the Fairness Hearing, that:

(i) the Settlement is in all respects fair, reasonable and adequate to the Class; (ii) they have

investigated the pertinent legal and factual issues; (iii) continued litigation will consume

enormous resources of the parties and the Court; and (iv) there is no hint of collusion between or

among the parties in the Settlement negotiations.  At the Fairness Hearing, the Court must

undertake a detailed assessment of the terms of the Settlement, the interests of the Class

Members as well as any third parties that might be affected by the Settlement, and the

circumstances of the litigation and the proposed Settlement.  *See Duhaime v. John Hancock Mut.*

- 15 -

*Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999); *Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *Hawkins*, 2004 U.S. Dist. LEXIS 807, at *14.

However, at this stage of the Settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement is within the range of possible final approval, and thus whether Notice to the Class of the terms and conditions of the proposed Settlement, and the scheduling of a formal Fairness Hearing, are appropriate. *White v. National Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Thus, the MANUAL FOR COMPLEX LITIGATION, THIRD ("MANUAL") characterizes the preliminary approval inquiry as a court's "initial assessment" of the fairness of the proposed settlement, made on the basis of written submissions and informal presentation from the settling parties, and summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of Class representatives or of segments of the Class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the Class Members of a formal Fairness Hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

MANUAL § 30.41; *see also* 2 NEWBERG § 1.25.

As detailed below, the proposed Settlement falls well within the range of reasonableness, and thus merits preliminary approval.

**1.      The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval**

In determining whether the Settlement is fair, reasonable and adequate to the Class as a whole, several factors should be considered, including: (1) the complexity of the litigation, (2) the posture of the case at the time settlement was proposed, (3) the extent of discovery

conducted in the case, (4) the circumstances of the settlement negotiations, (5) the experience of

counsel, (6) the relative strength of the plaintiffs' case on the merits, the possible defenses, and

other risks in the litigation, (7) the anticipated duration and expense of further litigation, and

(8) the reaction of the Class and opposition to the settlement.  *Hawkins*, 2004 U.S. Dist. LEXIS

807, at \*15 (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d

Cir. 1995); *Kovacs v. Ernst & Young*, 927 F.2d 155, 158 (4th Cir. 1991)); *Williams v. Vukovich*,

720 F.2d 909, 922-24 (6th Cir. 1983).  Some of these factors are not yet relevant at the

preliminary approval stage, but others can be used to guide the preliminary approval process.

While the foregoing criteria will guide the Court's analysis, "[a] class action settlement

cannot be measured precisely against any particular set of factors."  *Whitford v. First Nationwide

Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) (citing *Ohio Public Interest Campaign v. Fisher

Foods, Inc.*, 546 F. Supp. 1, 6-7 (N.D. Ohio 1982)).  Therefore the relevance of the factors set

forth above "will vary from case to case."  *Ohio Public Interest Campaign*, 546 F. Supp. at 6-7.

As a general rule, courts will not substitute their own thoughts for the parties' business

judgment in arriving at a settlement.  *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976);

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir.

1971).  Accordingly, the Court is not called upon to determine whether the settlement reached by

the parties is the best possible deal, nor whether Class Members will receive as much from a

settlement as they might have recovered from victory at trial.  *See In re Prudential Ins. Co. of

Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir.

1998); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).  It is not the

Court's function to reopen and enter into negotiations with the litigants in the hope of improving

the terms of the settlement or to substitute its business judgment for that of the parties who

worked out the settlement.  *Argo v. Harris*, 84 F.R.D. 646, 648 (E.D.N.Y. 1979) (quoting *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y 1973), *aff'd on op. below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)).  Courts challenged with evaluating a proposed class action settlement recognize that the "essence of settlement is compromise" and will not represent a total win for either side.  *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980)).

Evaluation of the aforementioned factors in this case weighs heavily in favor of preliminary approval.  Coming after the Class 2 and 3 trial, and close in time to other settlements, Plaintiffs are well acquainted with the prospective strengths and risks of the case.  Notwithstanding these risks, with which the Court is also well acquainted, Plaintiffs were able to garner a Settlement Amount of $19,000,000, with BMS's agreement to additionally pay half of the costs of notice up to a maximum of $1,000,000.  For context, Plaintiffs' expert, Raymond Hartman, has estimated damages of $10,479,670 based on the Court's drug-by-drug liability findings from the Massachusetts trial for each year, applying relevant statutes of limitation and including those states included in the Court's opinion on multi-state certification.  When the class is expanded to include all states and the District of Columbia, and removing statutes of limitation from consideration and expanding the damage period back to 1991 (even though the Court did not find liability prior to 1998 at trial), the estimate is $30,763,654.  Using either number as a touchstone, the $19,000,000 garnered is more than fair and reasonable.  Further, consumers are eligible to recover three times their co-payment obligations for the drugs Cytoxan, Taxol and Vepesid, and their actual co-payments for the remaining BMS Subject Drugs.

2.      **The proposed Settlement is the result of arduous, arm's-length negotiations conducted by highly experienced counsel**

There is a presumption of correctness attached to a Class settlement reached in arm's-length negotiations between experienced, capable counsel.  *City P'ship Co. v. Atlantic*, 100 F.3d at 1043; *see also Hawkins*, 2004 U.S. Dist. LEXIS 807, at *15; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."); *see also* NEWBERG § 11.41, at 87-89.

The United States Court of Appeals for the Seventh Circuit, in approving a class action settlement, noted that "[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation. . . .  The proof of the pudding was indeed in the eating."  *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (most important concern for the court in reviewing a settlement of a class action is the strength of the plaintiffs' case if it were fully litigated).

In the instant action, the parties actively engaged in many rounds of negotiations, for many months.  The parties negotiated arduously and at arm's-length with the Court-appointed Mediator.  The negotiations involved submissions of proposals, counter-proposals, evaluation of all discovery and factual arguments.  The parties have worked long and hard to reach a resolution of this matter, and Plaintiffs submit it is fair, appropriate, and in the best interests of the Class Members.

3.      **Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues**

A presumption in favor of the proposed Settlement arises when sufficient discovery has been provided and counsel have experience in similar cases.  *See Hawkins*, 2004 U.S. Dist.

- 19 -

LEXIS 807, at *15; *see also City P'ship Co. v. Atlantic*, 100 F.3d at 1043; *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000). This factor directs the trial court to consider whether the attorney participating in the settlement negotiations had access to sufficient information to appreciate the merits of the class's case. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995).

In this case, the parties exchanged written discovery, conducted over hundreds of depositions, and obtained extensive discovery from third-party sources such as other pending litigation, trade associations, physicians and the federal government. Defendants produced millions of documents and Plaintiffs' counsel spent more than four years reviewing said documents, organizing documents for use, creating an electronic database and making determinations on utilization of important documents, additional discovery and general assistance in the litigation of this matter. Trial was held on two Massachusetts Classes, and trial was imminent against BMS for Class 1.

**C.     The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing**

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement. *See Durrett*, 896 F.2d at 604. Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs." In a settlement Class maintained under Rule 23(b)(3), Class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e). *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause). Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to

all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617;

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).

The MANUAL sets forth several elements of the "proper" content of notice.  If these

requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2); Fed. R. Civ. P. 23(e); and due

process, and binds all members of the Class.  The Notice must:

1. Describe the essential terms of the Settlement;

2. Disclose any special benefits or incentives to the Class Representatives;

3. Provide information regarding attorneys' fees;

4. Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the Settlement;

5. Explain the procedures for allocating and distributing Settlement funds; and

6. Prominently display the address of Class counsel and the procedure for making inquiries.

MANUAL, ¶ 30.212 (3d ed. 1995).  *See, e.g., Air Lines Stewards & Stewardesses Ass'n Local 550

v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of

proceedings to date, notified of significance of judicial approval of settlement and informed of

opportunity to object at the hearing satisfied due process); *accord Grunin v. International House

of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

173 (1974); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)

("The means employed must be such as one desirous of actually informing the absentee might

reasonably adopt to accomplish it."); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

The proposed Notice program clearly meets this standard.  The proposed Notice is clear,

precise, informative, and satisfies the requirements governing notice.  As reflected in the

proposed Notice Plan created by a recognized expert, individual Notice will be mailed to all

Class Members whose addresses can be reasonably ascertained and who can be reached

reasonably economically.  A website will allow Class Members to reach the Administrator,

request Notices and ask questions.  An extensive publication of a Summary Notice will take

place in a variety of publications directed to the target demographic.  The Notice, the Settlement

Agreement and possibly other documents will also be published on the website established for

purposes of this Settlement.

Notice via first class mail, publication in nationwide papers and magazines and website

publication are all avenues for notice that have been approved by various courts.  *See*, *e.g.*, *White*

*v. National Football League*, 822 F. Supp. at 1400 (notice by mail to identified Class members

and publication once in *USA Today* "clearly satisfy both Rule 23 and due process

requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving

as reasonable notice by third class mail to identified Class members and publication two times in

the national edition of USA Today); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57,

60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in USA Today);

*Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a

customary substitute in another class of cases where it is not reasonably possible or practicable to

give more adequate warning."); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d

654, 669-70 (E.D. Va. 2001) (approving publication of summary notice in nationwide

newspapers and posting full notice on websites maintained by co-lead counsel); *Henry v. Sears*

*Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) (the Court directed that the class

Action Settlement Notice be mailed by first class mail to all identified Class members, and the

Summary Notice be published twice in the national edition of USA Today); *Mangone v. First*

*USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) (the Court approved Class Notice mailed to the last

known address of all Class Members identified through reasonable effort by Defendant,

published a Summary Notice on three separate days in a nationally published newspaper, *USA Today*, published the Class Notice and other pertinent information on the internet).  Indeed, the Court has already approved these methods of notice with respect to other *AWP* settlements.

The proposed Notice clearly meets the requirements of Rule 23(c)(2) and 23(e), in so much as it meets the new requirements of plain English and ease of reading and includes:  (1) the case caption; (2) a description of the Classes; (3) a description of the claims; (4) a description of the Settlement; (5) the names of counsel for the Class; (6) a statement of the maximum amount of attorneys' fees that may be sought by Plaintiffs' Counsel; (7) the Fairness Hearing date; (8) a description of Class Members' opportunity to appear at the hearing; (9) a statement of the procedure and deadline for filing objections to the Settlement; (10) a statement of the procedure and deadline for filing requests for exclusion (for residents in the nine states who had not been previously provided an opportunity to opt out); (11) a statement of the consequences of exclusion; (12) a statement of the consequences of remaining in the Class; and (13) the manner in which to obtain further information.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 496.  *See also* MANUAL § 30.212 (Rule23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation).

Plaintiffs have retained an experienced Notice Administrator to administer notice, have carefully crafted a detailed Notice Plan and have taken all necessary steps to ensure that the proposed Notice Plan meets the requisite due process requirements.  Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the Settlement and their options, and therefore should be approved by the Court.

## V.      CONCLUSION

For all the above-stated reasons, Class Plaintiffs respectfully request that the Motion be granted and the Court enter an order:  (i) granting Preliminary Approval of the Settlement; (ii) certifying the Settlement Classes; (iii) appointing Settlement Class counsel; (iv) scheduling a Fairness Hearing and establishing all related deadlines; (v) directing that Notice be provided to the Classes in accordance with the Notice Plan; and (vi) ordering a stay of all proceedings in this action vis-à-vis BMS until the Court renders a final decision regarding the approval of this Settlement.

DATED:  August 4, 2009.                    By    /s/ Steve W. Berman
                                           Thomas M. Sobol (BBO#471770)
                                           Edward Notargiacomo (BBO#567636)
                                           Hagens Berman Sobol Shapiro LLP
                                           One Main Street, 4th Floor
                                           Cambridge, MA  02142
                                           Telephone: (617) 482-3700
                                           Facsimile: (617) 482-3003

                                           LIAISON COUNSEL

                                           Steve W. Berman
                                           Sean R. Matt
                                           Hagens Berman Sobol Shapiro LLP
                                           1301 Fifth Avenue, Suite 2900
                                           Seattle, WA  98101
                                           Telephone: (206) 623-7292
                                           Facsimile: (206) 623-0594

                                           Jeffrey Kodroff
                                           John Macoretta
                                           Spector, Roseman, Kodroff & Willis, P.C.
                                           1818 Market Street, Suite 2500
                                           Philadelphia, PA  19103
                                           Telephone: (215) 496-0300
                                           Facsimile: (215) 496-6611

- 24 -

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

CLASS COUNSEL

001534-16  318035 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456


   I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 4, 2009, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE BMS SETTLEMENT AND APPROVING THE FORM AND METHOD OF NOTICE TO THE CLASS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


          **/s/ Steve W. Berman**
          Steve W. Berman

001534-16  318035 V1