IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS


    IN RE:                          )
                                    )  CA No. 01-12257-PBS
    PHARMACEUTICAL INDUSTRY AVERAGE  )
    WHOLESALE PRICE LITIGATION       )  Pages 1 - 26
                                    )




                          MOTION HEARING

               BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE




                          United States District Court
                          1 Courthouse Way, Courtroom 19
                          Boston, Massachusetts
                          July 24, 2009, 3:45 p.m.




                          LEE A. MARZILLI
                        OFFICIAL COURT REPORTER
                      United States District Court
                      1 Courthouse Way, Room 7200
                          Boston, MA  02210
                          (617)345-6787

1    A P P E A R A N C E S:

2

3        DONALD E. HAVILAND, Esq., The Haviland Law Firm, LLP,
     111 S. Independence Mall East, Suite 1000, Philadelphia,
     Pennsylvania, 19106, for the New Jersey Plaintiffs.

4

5        MELISSA AOYAGI, ESQ. and DAVID B TOSCANO, ESQ.,
     Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York,
     New York, 10017, for the Defendant, AstraZeneca.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S
2              THE CLERK:  In Re:  Pharmaceutical Industry
3    Average Wholesale Price Litigation, civil action 01-12257,
4    will now be heard before this Court.  Will counsel please
5    identify themselves for the record.
6              MR. HAVILAND:  Don Haviland for the plaintiffs in
7    New Jersey, your Honor.
8              MS. AOYAGI:  Melissa Aoyagi for defendant
9    AstraZeneca.
10             MR. TOSCANO:  David Toscano for AstraZeneca as
11   well.
12             THE COURT:  Which firm are you with?
13             MS. AOYAGI:  Davis, Polk & Wardwell, LLP.
14             THE COURT:  So you're up from New York?
15             MR. TOSCANO:  We are.
16             MS. AOYAGI:  Yes, yes.
17             THE COURT:  And you're?
18             MR. HAVILAND:  Philadelphia.
19             THE COURT:  Philly, all right.  So this had been
20   off my radar screen for a very long time, and I got a motion
21   to put it back on.  So I know you've had a chance to talk
22   before we walked on here today, and I've received very few
23   new papers.  So help me with this.  What's going on from
24   New Jersey from your vantage point?  And then I'll hear from
25   Mr. Haviland.
```

1           MS. AOYAGI:  Well, your Honor, our motion is -- as

2     you mentioned, this dates back to September of 2007, and at

3     that point you had ordered Mr. Haviland to dismiss

4     overlapping claims and defendants as between the MDL and the

5     New Jersey nationwide class action that's pending there, in

6     response, to dismiss two of the four AstraZeneca defendants

7     without changing the allegations in his complaint, which, by

8     the way, include Zoladex.  And, in our view, this is

9     completely meaningless because --

10          THE COURT:  You know, but this is a

11    two-and-a-half-year-old thing.  Something must -- you then

12    dismissed it, and then recently told me to put it back on,

13    so what's happened?  You at some point told me it was moot

14    or no longer relevant or something like that, maybe not you

15    personally.  You look too young.  I'm not sure you were

16    involved at that time, but, you know, someone told me this

17    has been resolved.

18          MS. AOYAGI:  Right, your Honor.  In April --

19          THE COURT:  So I don't want to start way back

20    when.  Something new has happened.

21          MS. AOYAGI:  Yes.  The New Jersey action was

22    actually dismissed without prejudice by the New Jersey state

23    court, which prompted us to withdraw our motion which we

24    filed in January of '08.  So in April of '08, the New Jersey

25    court dismissed without prejudice, and there was then some

03e7a5dc-1282-4f49-8e35-549b3800da41

1   briefing, and several months later the case was actually

2   reinstated by the state court judge.  It then went up on

3   appeal, and so that accounts for a lot of the time lapse

4   that has occurred because it went up on appeal and it's been

5   pending.  And it only recently -- in fact, I think it might

6   have even been last week, we received a new decision from

7   the state Supreme Court indicating that the case is going to

8   be moving forward in New Jersey state court.

9           THE COURT:  So I don't have briefing on all of

10   this, right, like on what happened and the new claims and

11   who's involved?  So help me with it.  So now it's going

12   back.  Is it the same complaint or a different one?  Do you

13   have the cite to the state Supreme Court case?  I just need

14   more, you know what I mean?  You know, this motion is two or

15   three years old.

16           MS. AOYAGI:  Well, interestingly, the complaint is

17   not -- the complaint is the same complaint that we've been

18   dealing with for the last several years.  It's the same

19   complaint that was filed in June, 2003.  There hasn't been

20   any amended --

21           THE COURT:  But I don't know anything -- let me

22   back up, okay?  I know nothing about it, all right?  I have

23   nine of these cases.  I've got hundreds of motions at any

24   point.  So once it went off my radar screen two years ago, I

25   don't remember anything, and there's not really a whole lot

1   of new information in front of me.  So just help me.  So

2   take me through in baby steps.  Is it a national class

3   action under New Jersey law?

4           MS. AOYAGI:  Yes.

5           THE COURT:  And is that what the state Supreme

6   Court said they could do?

7           MS. AOYAGI:  The state Supreme Court has not

8   opined on the propriety of a nationwide class, but the state

9   Supreme Court did consider whether the dismissal had been

10  appropriate which was under New Jersey law, and that had to

11  do with the ability of that case to continue in light of the

12  plaintiff in that case was unable to take part in discovery.

13  In other words, IUOE's president, defendants sought to

14  depose IUOE's president in the New Jersey action.  IUOE

15  could not produce --

16          THE COURT:  What is heck is IOE?

17          MS. AOYAGI:  IUOE is the plaintiff, the

18  International Union of Operating Engineers.

19          THE COURT:  Oh, all right, okay.  Don't forget, I

20  know nothing, all right?  Just start from that basic

21  presumption.

22          MS. AOYAGI:  Sure, sure.

23          THE COURT:  So this is such a fringe part of the

24  core suit that I just don't remember it.  And so there was

25  some discovery dispute?  Is that what happened?

1        MS. AOYAGI:  There was a dispute over whether the

2    president of IUOE, the union, the plaintiff union, could

3    appear or would appear or would be able to appear for

4    deposition.  He was unable to appear, the plaintiffs could

5    not produce him, and so the defendants moved to dismiss

6    under New Jersey law, which basically indicates that

7    dismissal is appropriate if a party can't participate in

8    discovery because we couldn't really learn anything about

9    the plaintiff.

10       THE COURT:  All right, so it was dismissed.  It

11   went up on appeal, and the state Supreme Court said it was

12   an inappropriate discovery sanction.

13       MS. AOYAGI:  Well, it was dismissed in April of

14   2008.  It was then dismissed without prejudice.  The state

15   court then reconsidered its decision and reinstated the

16   case.  And plaintiff has indicated that there are other

17   representatives that they might add who would be able to

18   participate in discovery.  The defendants then appealed it

19   with the Appellate Division in New Jersey.  The Appellate

20   Division in New Jersey heard argument on it.  They accepted

21   the appeal.  They heard argument.  They considered it, and

22   after, you know, several more months, they rendered a

23   decision affirming the lower court's reinstatement of the

24   New Jersey action.

25       THE COURT:  Okay, all right, now we're on the same

1    page.  So now we're back.

2            MS. AOYAGI:  Right.

3            THE COURT:  And the case is what?  Has there been

4    a motion to certify a national class?  Is that what you're

5    worried about?

6            MS. AOYAGI:  There has been.  On May 12, 2009, the

7    plaintiff IUOE filed a motion to certify a nationwide class

8    of third-party payors who paid on the basis of AWP for

9    drugs, you know, cancer and other inhalant drugs, reimbursed

10   by Medicare and reimbursed by Medicaid.

11           THE COURT:  And it's a national class, not just a

12   New Jersey class?

13           MS. AOYAGI:  Correct.

14           THE COURT:  Has that motion been -- you say -- I

15   remember I was alerted to this problem by the New Jersey

16   courts.  I've dealt with this before.  A New Jersey judge

17   actually called me on this, so is this the same judge?

18   Whoever it was who called is aware of this issue, if he

19   remembers.

20           MS. AOYAGI:  Right.  I believe you spoke with the

21   magistrate or the special master, who is a former U.S.

22   District Judge, William Bassler.

23           THE COURT:  Maybe that's who called me.  Okay,

24   what was his name?

25           MS. AOYAGI:  William Bassler, Judge Bassler.

1          THE COURT:  Okay, yes, okay.  So is he still

2     involved with this?

3          MS. AOYAGI:  You know, your Honor, this case has

4     been pending, bouncing around between the Appellate

5     Division, and then it was in the state Supreme Court because

6     we were -- you know, we've been litigating this case on

7     appeal for quite some time.  So it hasn't been back before

8     the trial court for a while, so I assume that Judge Bassler

9     will be involved again.

10         THE COURT:  Now, last time around I think

11    Mr. Haviland represented that he was not going to go for a

12    national class.  Now, has that changed?

13         MR. HAVILAND:  Well, actually, Judge, let me just

14    do a little backfill.  We filed the case in the summer of

15    '03, and as you remember, it was removed here.  It was here

16    for a couple of years.  You remanded it back.  AstraZeneca

17    filed a notice of removal.  We were proceeding '04, '05 just

18    fine.  At that point I came up into the MDL, you're aware.

19    We agreed with the co-lead counsel to work that case

20    parallel.  There was some debate on September 7 of 2007 what

21    co-lead counsel knew.  I think it's pretty clear from the

22    record we submitted that they knew that we were proceeding

23    on a nationwide class.  Mr. Berman said, that's fine because

24    it's not overlapping because we hadn't gotten to that issue

25    here.

1          And then after this Court denied nationwide class

2     as to some of the drugs that we were pursuing in the state

3     court, we proceeded in the state court to see if that judge

4     would do a different decision.  The plaintiff there is

5     actually the same plaintiff --

6          THE COURT:  Excuse me.

7          MR. HAVILAND:  I'm just giving you a little

8     background.

9          THE COURT:  I just don't remember.  At some point

10    I did certify classes here nationally.

11         MR. HAVILAND:  Right, Judge, on Zoladex.

12         THE COURT:  On Zoladex.  So were there other drugs

13    involved?

14         MR. HAVILAND:  And I want to be real clear:  What

15    we have in the state court does not overlap here.  That's

16    the debate you have here today, because when your Honor said

17    on September 11, 2007, "I don't want any overlap," we went

18    back in both Arizona and New Jersey, we spoke with the

19    defense counsel and said, "Let's try to figure out where the

20    overlap is."  And we got peace with every defendant but

21    AstraZeneca, and that's really the issue you have left is,

22    Astra says there's a piece that should be dismissed too.

23         THE COURT:  All right, so to the extent it's

24    overlapping, obviously you can't.

25         MR. HAVILAND:  Right.

1          THE COURT:  So what is the piece -- this is what I

2    don't feel has been really teed up, and I thought I'd at

3    least bring you in for a status and we can set some

4    briefing.  What is it here that you felt is overlapping with

5    the state court proceeding?

6          MS. AOYAGI:  Well, in September of 2007, your

7    Honor indicated that you would enjoin the national class

8    action in New Jersey, noting that that needed to stop with

9    respect to the overlapping.  Mr. Haviland agreed.  After

10   that, Mr. Haviland proceeded --

11         THE COURT:  Well, what was the overlap?  I just

12   don't remember.  What was the overlap?  Do you remember?

13         MS. AOYAGI:  The overlap was the fact that they

14   were seeking a nationwide class action with respect to

15   AWP-based claims.

16         THE COURT:  But what drugs because that's

17   important?

18         MS. AOYAGI:  Well, the drugs that were at issue in

19   the MDL, there were 17 AstraZeneca drugs, or 17 product

20   families, so the NDCs associated with those drugs, including

21   Zoladex, Prilosec, Nexium, and, you know, we can rattle off

22   the rest of them --

23         THE COURT:  All right, so there are 17 which

24   you'll tell me.  Are any of those 17 in the New Jersey

25   action?

1            MS. AOYAGI:  There are.  There are a number of

2    different drugs that are listed in the New Jersey complaint,

3    including Zoladex, Prilosec, Nexium, so many of the

4    various --

5            THE COURT:  What did I certify up here, anything?

6            MS. AOYAGI:  You certified a Massachusetts-only

7    class of third-party payors in the Medicare Part B context

8    with respect to physician-administered drugs, which is

9    Zoladex, as well as third-party payors in the private payor

10   context, again, Massachusetts only.  You've more recently

11   certified -- and that went to judgment.

12           THE COURT:  It's on appeal, I think, yes.

13           MS. AOYAGI:  That was a bench trial, and that's on

14   appeal.  You also certified a nationwide consumer class that

15   we've settled.  We've settled that part of the case with

16   respect to Zoladex.

17           THE COURT:  Now, where's the overlap?

18           MS. AOYAGI:  And then you also denied

19   certification with respect to self-administered drugs,

20   including Prilosec and Nexium and any other

21   self-administered drug that goes through that channel.  So

22   it seems to me very clear that there is complete overlap as

23   between a nationwide class that's being sought on behalf of

24   third-party payors who paid on the basis of AWP for Prilosec

25   and Nexium, and, you know --

1          THE COURT:  But I have -- excuse me.  This hasn't

2     been briefed so clearly to me.  All right, so there are

3     certain drugs, and I certified a class on some of them.

4          MS. AOYAGI:  Correct.

5          THE COURT:  Consumer classes --

6          MS. AOYAGI:  And third-party payor classes.

7          THE COURT:  And third-party payor classes.

8          MS. AOYAGI:  And you also certified multistate

9     classes with respect to third-party payors concerning

10    physician-administered drugs.

11         THE COURT:  Right, and is there overlap with

12    what's being sought to be certified in New Jersey with

13    respect to what I did certify?

14         MS. AOYAGI:  Right, there is overlap in the

15    New Jersey complaint, which alleges claims with respect to

16    Zoladex, and then there is also overlap with respect to

17    self-administered drugs for which you denied certification.

18         THE COURT:  If I denied cert, then I denied it.

19         MS. AOYAGI:  Well, if you denied certification --

20         THE COURT:  Then there's no overlap because I'm

21    not doing anything with it.

22         MS. AOYAGI:  Well, I think Judge Easterbrook has

23    addressed this in the Bridgestone/Firestone case, in which

24    he indicated that the denial of class certification, it

25    means that it was actually litigated, which suggests that

03e7a5dc-1282-4f49-8e35-549b3800da41

1    you can't relitigate the same claims in state court,

2    essentially getting another bite at the apple.

3              THE COURT:  I don't know if you can or you can't,

4    but this hasn't been briefed.  It's very difficult issues,

5    and to the extent I have certified a class and I am

6    litigating it here, he can't do that in New Jersey.

7              MR. HAVILAND:  Right.  And, Judge, I want to be

8    clear.  We're not.  We haven't had that issue.  We've

9    dismissed every piece of overlap.  The issue you're hearing

10   today, on Zoladex, it's out.  Let's just be clear about

11   that.  There's no overlap.  The issue now is -- and I just

12   heard this, and I appreciate your Honor saying we should

13   talk because I didn't hear the Judge Easterbrook denial of

14   certification has some implications.  It's not in the

15   briefing.  What I heard was an Anti-Injunction Act

16   injunction:  Tell us in the New Jersey case to stop doing

17   something we don't think we're doing.  There's no overlap.

18   The argument was one of -- AstraZeneca, LLP is a company

19   that's not here.  It was never sued in the MDL.  They make

20   Prilosec and Nexium.  They're actually a joint venture with

21   Merck.  And so we have that defendant down there.  We're

22   proceeding against them.

23             THE COURT:  But you can't -- I mean, a lot of

24   these companies have affiliated companies which are the same

25   companies, so I'm not going to allow that game:  Well, yeah,

1    I allowed it against AstraZeneca, but now you have the

2    subsidiary or the affiliate.

3            MR. HAVILAND:  It's not that, Judge.

4            THE COURT:  Okay.

5            MR. HAVILAND:  This is actually a joint venture

6    with one percent being owned by Merck.  It's a company unto

7    itself.  It's owned by Merck, so it's a different entity.

8            THE COURT:  If it's the exact same drug and the

9    exact same cause of action, I'm not going to allow it to go

10   forward, even if there's a joint venture; but if they're

11   different drugs or if I denied cert, then I have to think

12   about it.

13           MR. HAVILAND:  That's our position, Judge, and

14   that's what it really gets down to is, we're now at the

15   point of class cert after six years.  And counsel kind of

16   glossed over that we've been taken up to the Appellate Court

17   on every single issue.  The reason why -- the case wasn't

18   dismissed.  Let's be clear about it.  The judge issued a

19   discovery order that said, because the plaintiff's president

20   was under a criminal investigation and didn't want to

21   testify, was going to take the Fifth, the judge said, "You

22   have 90 days," as your Honor has said, "Go find some new

23   plaintiffs and you substitute in."  We did that.

24           So then the judge said, "Okay, I'm going to

25   reinstate.  I said 90 days.  You have two new plaintiffs,

1    reinstate."

2              AstraZeneca appealed that to the Appellate

3    Division, and the Appellate Division said the judge did the

4    appropriate things under the rules.  We went to the Supreme

5    Court.  I just got an order last week saying, "Not only was

6    that appropriate, you have 90 days now to substitute."  The

7    state Supreme Court has ordered that we should do that.

8              So that's where we are.  We now have finally after

9    six years filed class certification, and we've framed out

10   what we think is a class that's not going to overlap with

11   anything here.

12             THE COURT:  Well, this is what I think needs to

13   happen.  I'm obviously not prepared to rule on this today

14   because I don't -- what I said to you, even before we went

15   on the record as we were taking the break before when the

16   other case was done, I said, I don't have new papers.  I

17   don't really know the case.  I don't know what's happening

18   now procedurally.  I'm viewing this somewhat as a scheduling

19   conference, not as a motion hearing.

20             I think the two of you need to confer out there,

21   and to the extent you can't resolve it -- for example, it

22   sounds like an interesting legal question:  If I deny cert,

23   does that somehow preclude someone else from bringing it?

24   Maybe Judge Easterbrook wrote a great opinion.  I'm sure he

25   did.  I'm fond of saying I'm not ATM justice.  I don't know

1   everything off the top of my head.  I find this case very

2   challenging in making sure I understand all the issues, and

3   I've got -- you probably don't know this -- maybe nine

4   different tracks for the AWP, so that at any given time --

5   were you sitting here before, the last one?

6           MR. HAVILAND:  No.

7           THE COURT:  I mean, each one has its own unique

8   set of complexities, especially the state-federal piece is

9   very intriguing, so --

10          MR. HAVILAND:  We will narrow it this way, Judge,

11  if I may.  I didn't realize in talking with counsel, they're

12  not taking the position that you should enjoin Local 68 or

13  the two new plaintiffs, that they have the right to proceed

14  on their individual case.  I want to walk up the ladder with

15  you because it said an injunction against all plaintiffs, my

16  law firm, any counsel, stop it.  But at the break I learned

17  it's not -- the plaintiffs can go forward if they were just

18  suing their own TPP, right.  They also don't disagree that

19  the state court could certify a state class.  The issue is

20  the nationwide class.  But we're not even there yet.  We

21  just filed the motion, and the state judge is going to do

22  what the state judge is going to do.  But that's --

23          THE COURT:  But I don't know enough about that,

24  and to the extent it would interfere with my MDL, I will

25  stop it, but -- and I think the state courts in New Jersey

1    have been -- they're the ones who alerted me to the problem

2    to begin with.  They have no desire to do that either.  In

3    fact, they'd probably love it if they could shovel it all

4    back up here.  But the big issue that I have is, you need to

5    brief it after you've talked with him and you've really

6    looked at the state court proceedings and tee it up.

7              It strikes me that there are may be three

8    different issues:  One is, what exactly is overlapping here

9    so that you can show me in my order is what I've certified,

10   and then show me with an attachment what he's seeking to

11   certify so we can see what the exact overlap you're claiming

12   is.

13             The second is, there may be no overlap because

14   I've denied cert, but you may have a perfectly decent

15   argument that somehow that would be interfering with the

16   multidistrict litigation if it were done under New Jersey

17   law.

18             The third issue, which is sort of just hanging out

19   there is, what if -- I have to tell you, one of the most

20   challenging things I've ever done is to try to certify this

21   national class to see whether there were any groupings that

22   made sense.  It is a very, very difficult undertaking, and I

23   think that there is at least a reasonable disagreement as to

24   whether or not I did it well.  There's at least a -- in my

25   view, reasonable minds could differ about whether it's

Page 19

doable.  So if I get reversed on appeal, doesn't that leave

it open to the New Jersey court to do it under New Jersey

law?  Isn't that like a protective backstop, if you will?

MR. HAVILAND:  Sure, and that's what we think,

your Honor.  The Rooker-Feldman doctrine actually lets the

state court proceed in tandem.

THE COURT:  Well, no, that's not what I said.  If

my class is certified --

MR. HAVILAND:  Sure.  And there's no debate.  I

want to be clear, Judge --

THE COURT:  -- the national one, I take it.

MR. HAVILAND:  We're not fighting about that.

THE COURT:  But it's on appeal, you see, is my

problem.  And there's a huge controversy in our country and

across the courts as to the extent to which you can group

state laws that are similar for manageability purposes.  So

if I got reversed, why couldn't New Jersey take it?  And am

I being premature right now, since it's on appeal, in

enjoining something?

MS. AOYAGI:  Well, your Honor, the portion -- the

denial of class certification, as far as I know, is not on

appeal, and that's part of what we've been talking about

today.

THE COURT:  Sure.

MS. AOYAGI:  So I'm not sure that that would

1  change.

2          THE COURT:  I'm just simply saying, there are

3  three really interesting issues.  The first is what -- well,

4  the first is just plain old factually what overlaps.  The

5  second is what happens with the denial, and that sounds like

6  a good legal debate.  And the third is, what do I do with

7  the fact that I've got a very controversial class

8  certification decision on appeal?  If that should be

9  reversed saying it's just too messy, you know, "Good try,

10  Judge Saris, it's just not doable," why shouldn't New Jersey

11  be able to come along and do it on its own under state law?

12          MR. HAVILAND:  In the meantime, Judge, we're not

13  pursuing that piece of it because it's overlapping because

14  you did certify it, so --

15          THE COURT:  Okay, so maybe you don't even need to

16  brief it.  Maybe I'm just dreaming up a problem.

17          MR. HAVILAND:  Well, and that's probably a

18  question to answer when the Appellate Court decides --

19          THE COURT:  You're seeking to certify under

20  New Jersey law, so you deal better than I do with the issue

21  of the fact that there are some laws which are similar and

22  some that aren't and --

23          MR. HAVILAND:  Well, we have the fact that the AWP

24  was actually published out of New Jersey.  We think that's a

25  link to the case that helps to bind some things together.

1    There's the issue about taking the state's law for an

2    in-state company and applying it nationwide.  Illinois does

3    that.  So there are issues.

4           THE COURT:  Sure.  It might be actually easier to

5    certify from their point of view from New Jersey than from a

6    federal point of view, where I have to look at, you know,

7    these groupings, and it took a law clerk --

8           MR. HAVILAND:  I can imagine.

9           THE COURT:  -- months to try and figure out what

10   was doable.

11          So why don't we do this:  I'm not in a rush, so

12   whenever you file this motion fully briefed, you file a

13   response within two or three weeks.

14          MR. HAVILAND:  A couple weeks, sure, Judge.

15          MS. AOYAGI:  We'd be happy to do that.

16          THE COURT:  And I suggest you confer because last

17   time, frankly, I think you could have worked out most of it.

18          MR. HAVILAND:  We definitely understand it better

19   now, Judge, what the issue is that they have.  It's the

20   nationwide, not the state class, so that's really the --

21          THE COURT:  Well, you don't have a problem with

22   the state-only class, do you?

23          MS. AOYAGI:  We were dealing with the papers as

24   they were presented to us, which presented a nationwide

25   class.  I believe that's what you were addressing --

1    THE COURT:  Well, the thing that worried me, I

2  have to tell you -- I've written an opinion on this -- is

3  that it was represented to me, which is why I remanded it,

4  that it would be a state-only class.  So there's a serious

5  issue with respect to judicial estoppel.  Otherwise, maybe

6  it comes back up here again.  That was the concern I had.  I

7  remanded it based on an explicit representation.  There was

8  a lot of debate in the record about whether it was intended

9  to be that way or an overstatement or just sort of a

10 miscommunication.  Take that for what it is.  Understand

11 that the issue is that it was -- and this is where the

12 problem is -- it's not so much the overlap issue as much as

13 it is I remanded it on that basis.  So --

14    MR. HAVILAND:  Judge, I remember that issue very

15 well.  There was a letter written by the New Jersey

16 co-counsel to you about that.  The papers were the papers.

17 The position --

18    THE COURT:  But I remanded on that ground, so

19 that's the concern here, which is, if he starts making it

20 national again and it isn't overlapping, does it just shoot

21 back up here?  You know, whether you have the right to

22 remove it again, that's the -- the overlap thing we should

23 be able to work out.

24    MR. HAVILAND:  And in terms of remand, Judge,

25 there was actually a misrepresentation as to the consent of

1    all defendants.  Your opinion is very clear on the basis for

2    remand.  There was a representation by AstraZeneca they had

3    the consent of all defendants.  They did not.  So it was

4    rule of unanimity, which is the reason for the remand.

5              THE COURT:  Well, I agree with that, but there was

6    also a clear representation.

7              MR. HAVILAND:  Sure.  One of the lawyers that

8    represents the plaintiff made a representation.  I didn't

9    make that representation.

10             THE COURT:  At this point, at this point,

11   regardless of whether you made it or not, that's another

12   debate for another day.  If in fact there's nonoverlapping

13   national classes, it was remanded based on the statement

14   that it was New Jersey only, and therefore -- it was before

15   CAFA even -- I mean, it was a long time ago -- I think it

16   was -- whether or not you can remove it again.  That's the

17   key issue.

18             I've got to assume we can work out the overlap

19   piece of it, or at least I'll rule on that denial.  Just to

20   put everybody on the same page, this is very complicated.

21   It was here, and I sent it back because it didn't involve

22   complete diversity, but it was also based on the ground that

23   it was a state-only class.  And I'm sure Mr. -- you could go

24   back -- I don't know if anyone could go back through this

25   record and find anything, but maybe you could confer.  I

1    mean, there were a bunch of key decisions that went on at

2    the time.  Have you gone back through all that history?

3                MS. AOYAGI:  Well, yes, your Honor, and I think

4    you recounted some of it during the September, 2007 hearing

5    where you recalled precisely what you recalled today, which

6    is, you know, whether it's a New Jersey class or a national

7    class.  And, frankly, that's why I was a little surprised

8    today to hear Mr. Haviland ask the question about, well, if

9    it's just a New Jersey class, it's hard to keep track of all

10   of the different --

11               THE COURT:  But you're now seeking a national

12   class.

13               MR. HAVILAND:  I don't know what the judge is

14   going to do.  See, we filed a motion which is based on a

15   complaint filed in '03, and the judge may decide that a

16   state-only class is appropriate.  See, we can't get to the

17   point where the state judge decides what is appropriate.

18               THE COURT:  Yes, I know, but you're seeking a

19   national class.

20               MR. HAVILAND:  And we have been, yes.

21               THE COURT:  I know, so, as I remember it, that's

22   how this came to me initially, which is that, now that

23   you're reminding me, it was a Federal District Court judge

24   who served as a master and said, "What are you talking about

25   here?  I thought you remanded it because it was only state

1    only," and he called.

2            So whenever you want to, when you've got it all

3    set up and you file a motion, if it's still appropriate.

4    I'm going to deny this one without prejudice.  You set it

5    up.  And to the extent that I enjoin a national class, at

6    this point it would only be with respect to the overlapping

7    claims.  But, then again, if it's only New Jersey, if they

8    represent it was only New Jersey, the issue is really

9    whether they're estopped from that or whether you could

10   remove it again.  You'd have to go back through the

11   transcripts.  I mean, it's a lot of work.  It depends how

12   much you care.  But it is Davis Polk and AstraZeneca, so you

13   have the time, and there are thousands of lawyers looking

14   for work, so I'm sure you could get the work done.  But

15   there's no time limit.  So I'm denying what I've got without

16   prejudice, and then you come back and assert it when you're

17   ready.

18           MS. AOYAGI:  Thank you, your Honor.

19           THE COURT:  Okay?  And I think that's it, right?

20           MR. HAVILAND:  Yes.

21           THE COURT:  Have a lovely weekend.

22           MR. HAVILAND:  You too, your Honor.

23           THE COURT:  Okay, get on your shuttle home.

24           MR. HAVILAND:  Let Lee have a vacation.  She needs

25   one, she says.

1          THE COURT:  She does.

2          THE CLERK:  Court is in recess.

3          (Adjourned, 4:12 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1                    C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
5

6

7            I, Lee A. Marzilli, Official Federal Court

8  Reporter, do hereby certify that the foregoing transcript,

9  Pages 1 through 26 inclusive, was recorded by me

10 stenographically at the time and place aforesaid in Civil

11 Action No. 01-12257-PBS, In Re:  Pharmaceutical Industry

12 Average Wholesale Price Litigation, and thereafter by me

13 reduced to typewriting and is a true and accurate record of

14 the proceedings.

15            In witness whereof I have hereunto set my hand

16 this 4th day of August, 2009.

17

18

19

20

21           /s/ Lee A. Marzilli
             _____
22           LEE A. MARZILLI, CRR
             OFFICIAL FEDERAL COURT REPORTER
23

24

25