# Exhibit B

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v.  Boehringer Ingelheim Corp. et al.*
Civil Action No. 07-10248-PBS

Exhibit to United States' Opposition To Roxane's Motion For Leave
To Depose Carolyn Helton and Robin Kreush Stone

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL No. 1456 Civil Action No. 01-12257-PBS |
| **THIS DOCUMENT RELATES TO:** | ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v.  Boehringer Ingelheim Corp., et al.,* Civil Action No. 07-10248-PBS | ) ) ) ) ) | |

**UNITED STATES' OBJECTIONS AND RESPONSES TO THE ROXANE DEFENDANTS'  FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the United States provides these objections and responses to Defendants Boehringer Ingelheim Roxane, Inc. and Roxane Laboratories, Inc.'s (Collectively "Roxane") First Set of Interrogatories ("Interrogatories") Directed to Plaintiff United States of America.

**<u>Introductory Statement and General Objections</u>**

1.      Subject to and without waiving general and specific objections, and objections to Roxane's definitions and instructions, the responses set forth herein are based on information currently known to the United States, and its attorneys, and are made without prejudice to the right of the United States to assert additional objections should grounds for objections be discovered at a later time. The United States has not completed its discovery of the facts pertaining to this action as discovery is ongoing in this case, and Roxane has not yet fully responded to the United States' discovery requests.  The United States reserves the right to rely on any facts, documents, or other evidence that may be developed by the parties, or come to the United States' attention, and to supplement these Interrogatories when and if appropriate at a

later time.

2.      The United States reserves its right to object to or answer part or all of any particular Interrogatory, and the fact that the United States may answer or object to part or all of any particular Interrogatory should not be taken as an admission or acknowledgment of any fact set forth in, assumed by, or inferred from any such Interrogatory.

3.      The United States reserves its right to object to the introduction into evidence of the responses or objections set forth in response to these Interrogatories in this or any other action.  The United States' response to any part or all of any particular Interrogatory is not intended, and shall not be construed, to be a waiver of any objection to the competence, relevance, materiality, privilege or admissibility of any evidence in this or any other action.

4.      The United States' responses or objections to these Interrogatories shall not be construed to be a waiver of the right to object on any ground to other discovery requests involving or relating to the subject matter of these Interrogatories.

5.      The United States objects to these Interrogatories to the extent that they seek information protected from disclosure by privilege or doctrine, including the attorney-client privilege, the work product doctrine, the joint prosecution-common/interest doctrine, the deliberative process privilege, the law enforcement investigative files privilege or any other applicable basis for invoking privilege.  The United States reserves the right to object to the introduction into evidence before the Court at any time before or at trial of information that is privileged or otherwise protected under law and that has been revealed or produced inadvertently. The United States does not, by responding to these Interrogatories, waive any claim of privilege or the protection of any doctrine.

2

6.     The United States objects to these Interrogatories to the extent that responding would require it to violate any seal imposed by a Court, by statute in the context of a False Claims Act *qui tam* matter, or the Federal Rules of Criminal Procedure, a grand jury proceeding, a criminal sentencing or other disposition, or any other matter.  The United States will not separately object to any specific Interrogatory to assert this ground where doing so would itself identify a case currently under seal.

7.     The United States objects to these Interrogatories to the extent that they seek material which is not subject to disclosure in the absence of a protective order under Fed. R. Civ. P. 26(c)(7).  To the extent that these Interrogatories call for material subject to any applicable protective order in this case, it will be produced subject to the terms of that order.

8.     The United States objects to these Interrogatories to the extent they require the United States to draw legal conclusions or otherwise seek to impose upon the United States any requirements beyond those established by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, or applicable Court Orders.

9.     The United States objects to these Interrogatories to the extent they exceed 25 in number in violation of Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, in the absence of an agreement between the parties, or a court order.

10.    Subject to and without waiving its specific and general objections, and objections to Roxane's definitions and instructions, where appropriate, the United States will produce information available to the Centers for Medicare and Medicaid Services (CMS) through its contracts with Medicare carriers.  The United States does not waive any objections to any

3

assertions made by Roxane that those contractors are part of CMS or parties to this action.  The United States does not agree to be bound by the decisions or actions of those contractors.

11.    The United States objects to these Interrogatories as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information about entities or providers not named or referenced in the United States' Complaint.

12.    The United States objects to the Interrogatories to the extent that: (a) the discovery sought by any Interrogatory is unreasonably cumulative or duplicative, or is obtainable from some other source (including but not limited to, a public source) that is more convenient, less burdensome, or less expensive; (b) the discovery sought is in Roxane's possession; (c) the discovery sought is equally available to Roxane; and (d) compliance with any Interrogatory would be unduly burdensome, unduly expensive, harassing, annoying, or oppressive.

13.    The United States objects to these Interrogatories to the extent that they are cumulative and duplicative of Roxane's other discovery requests, including but not limited to, third-party subpoenas issued to the United States and its contractors by defendants in the *Pharmaceutical Industry Average Wholesale Price Litigation* ("AWP MDL"), No. 1456, 01-12257-PBS (D. Mass.), and the *Lupron Marketing & Sales Practices Litigation* ("Lupron MDL"), MDL. No. 1430, 01-CV-10861-RGS (D. Mass.).

14.    These general objections apply to each Interrogatory and thus, for convenience, are not repeated after each Interrogatory, but rather are set forth herein and hereby incorporated into each response.  The assertion of the same, similar, or additional objections or the provision of partial responses to individual Interrogatories does not and should not be construed to waive or

4

modify any of the United States' general objections.

15.     When the United States states that it will produce documents in accordance with Rule 33(d) of the Federal Rules of Civil Procedure, it will produce such documents to the extent that they exist and can be reasonably obtained, and are within its possession, custody and control.  By stating that it will produce documents, the United States does not represent that any such documents or things exist or are within its possession, custody, or control.

16.     Any information or documents supplied in response to these Interrogatories are for use in this litigation and for no other purpose.

17.     The United States objects to each Interrogatory that is directed, in whole or part, to Relator.  The United States is not obligated to respond to all or part of any Interrogatory that is, or should be, directed at the Relator.  Thus, the United States responds only to those Interrogatories, in whole or part, that appear to be directed at the United States.

## Objections to Definitions and Instructions

1.     The United States objects to Instruction Nos. 6 and 31 and Definition No. 10, which purport to require the United States to obtain information from (a) agencies other than the Department of Health and Human Services, (b) Congress, (c) the National Association of Medicaid Fraud Control Units, and (d) Medicaid Intermediaries operating pursuant to a contract with a State Medicaid program.

2.     The United States objects to Roxane's definition of the term "Medicaid Drug Rebate Program" (#15), to the extent that the definition asserts that the Public Health Service 340B Drug Pricing Program is part of the Medicaid Drug Rebate Program.

3.     The United States objects to Roxane's definitions and instructions to the extent

5

they are inconsistent with or in excess of that which is required by the Federal Rules of Civil

Procedure, Local Rules of the District of Massachusetts, or Case Management Orders applicable

to the above-captioned action.

4.      The United States objects to the inclusion of definitions and instructions in the

Interrogatories that are neither invoked by nor referenced in any individual Interrogatory.  Failure

of the United States to object to any particular definition or instruction in this document,

particularly definitions and instructions not applicable to these Interrogatories in any way, should

not be construed as a waiver of any objection the United States may raise to an identical

definition or instruction in responding to discovery requests in this or any other action.

5.      The United States objects to Roxane's definitions of the terms "concern,"

"concerning," "relating to" and "relate to" (#36) as vague and ambiguous in that the proposed

definition, which includes the terms and phrases "embody," "mention," "support," "contradict,"

"whether directly or indirectly," and "as required by the context to bring within the scope of the

Requests," is not subject to objective application in identifying responsive information with the

reasonable particularity required by Fed. R.Civ. Proc. 33, and exceeds the Uniform Definition of

the term "concerning" set forth in Local Rule 26.5(c).

6.      The United States objects to Roxane's definition of the term "Pricing Element"

(#18) as vague and ambiguous in that it consists of references to numerous other undefined

terms.

7.      The United States objects to the definition of "Provider or Providers" (#19), to the

extent it purports to include providers who would not purchase the Subject Drugs, as the

definition necessarily renders the Requests that include this term overly broad, unduly

6

burdensome and not necessarily calculated to lead to the discovery of admissible evidence.

8.     The United States objects to the definition of "Actual Acquisition Cost" (#1) as misleading in that it references chargebacks which relate to wholesalers only, and incomplete because it fails to include other elements that impact net price, such as bundled offers, grants, etc.

9.     The United States objects to the definition of "Reimbursement" (#21) as vague and ambiguous in its reference to "payment delegated under Medicare, Medicaid, or a medical assistance program . . . ."

10.     The United States objects to the definition of "WAC" (#30) insofar as it only refers to published prices and fails to reflect that WAC refers to the price at which a pharmaceutical firm typically sells a drug to wholesalers who then resell it to a retail customer.

## Responses and Objections to Interrogatories

**Interrogatory No. 1**:  Identify by NDC each Roxane Subject Drug that You allege was reimbursed under the Medicaid program using a J-Code, as that term is used in the May 2, 2008 letter from L. Oberembt to E. Gortner, or similar code, and, if any, identify the States, the time periods, the reason that each Roxane Subject Drug was reimbursed under the Medicaid program using a J Code or similar code, and how Medicaid Reimbursement for each J-Code or similar code was calculated or determined.

**RESPONSE:** The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory.  The United States objects to this interrogatory on the following additional grounds.  Objection, to the extent that this interrogatory is a premature request for information that may be contained in the plaintiffs' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders.  Objection, that discovery regarding the states and state

reimbursement methodologies is ongoing in this matter.

Subject to and without waiving the United States' general and specific objections, and its objections to Roxane's definitions and instructions, the United States provides the following. The United States reserves its right to supplement or amend this response. The United States only intends to seek damages in connection with HCPCS codes reimbursed by the Medicaid program for the following NDCs: Azathioprine: 00054-4084-25, and Ipratropium Bromide: 00054-8402-11, 00054-8402-13, 00054-8402-21, 00054-8404-11,00054-8404-13, 00054-8404-21.

**Interrogatory No. 2**: Describe in detail each category of damages for which You seek recovery from the Roxane Defendants in this action, including (i) identify, by NDC, calendar quarter, state (for Medicaid claims), program (*e.g.*, Medicare, Medicaid), and on a claim-by-claim basis, the amount of damages (excluding any punitive damages and/or civil penalties) You seek in this action; (ii) the methodology, including any assumptions, used in calculating or deriving that amount; (iii) the specific facts or Documents upon which You rely to support Your claims as to the nature and extent of each category of damages; (iv) identify by name each state or territory for which You seek damages in this action relating to claims for Reimbursement from the Medicaid program; (v) identify by name any programs beyond Medicare and Medicaid for which You seek damages; and (vi) for Medicare Part B claims, Medicaid claims relating to physician administered drugs, and other classes of claims reimbursed by use of J-Codes, explain how You determined that reimbursement was paid using AWPs or WACs for the Roxane Subject Drugs and how You calculated damages for such claims.

**RESPONSE:** The United States incorporates by reference its general objections and its objections to definitions and instructions implicated by this interrogatory. The United States objects to this interrogatory on the following additional grounds. Objection, to the extent that this interrogatory is a premature request for information that may be contained in the plaintiffs' testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders. Objection, that discovery regarding the states and state

reimbursement methodologies is ongoing in this matter.

Subject to and without waiving the United States' general and specific objections, and its objections to Roxane's definitions and instructions, as a general matter, based on the information currently in our possession, please be advised of the following:

1.      The United States' damages calculations will cover Medicare damages for the period of 1996 through 2003 for Ipratropium Bromide, and for the period of 1999-2003 for Azathioprine; and Medicaid damages for the period of 1996 through the present for Ipratropium Bromide, for the period of 1999 through the present for Azathioprine, Diclofenac Sodium, Furosemide, Hydromorphone and Sodium Polystyrene, for the period of 1999-2001 for Oramorph, Roxanol, and Roxicodone;

2.      The United States' damages calculations will include the federal portion of the damages inflicted by Roxane upon each state Medicaid program and will not include the state portion.

3.      The United States' damages calculations will not include the inflated co-pays or deductibles paid by Medicare beneficiaries or Medicaid recipients;

4.      The United States' damages calculations will not include monies paid by Medicaid Programs as dispensing fees;

5.      The damages suffered in connection with Medicaid are not reduced by any amount paid under the Medicaid Rebate Program (the "Rebate Program") mandated by the Federal Omnibus Budget Reconciliation Act of 1990 ("OBRA '90''). The amount of the rebates paid under that program are unaffected by the reimbursement amounts, and are calculated by

reference to the Average Manufacturer Price and the Best Price, and the other factors specified in the statute itself, which are independent of the reimbursement amount.

The United States' approach to calculating damages is based upon the traditional approach of calculating damages under the False Claims Act.  *United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943).  The measure of the government's damages under the False Claims Act is the amount that it paid out by reason of the false statements or claims over and above what it would have paid if the claims had been truthful.  *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966); *United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir. 1988); *BMY Combat Systems v. United States*, 44 Fed. Cl. 141, 147 (Ct. Cl. 1999).  "A court should ask the question, 'How much would the government have paid for the item at issue 'but for' the fraudulent actions of the defendant?'" *United States ex rel. Roby v. Boeing Co.,* 79 F. Supp. 877 (S.D. Ohio 1999).  Moreover, there is "no set formula for determining the government's actual damages [under the False Claims Act]."  *United States v. Killough*, 848 F.2d at 1532.  "[D]amages under the FCA are to be determined in a flexible manner to ensure proper recovery of direct, and not consequential, damages resulting from the making of a false claim."  *BMY-Combat Systems Division of Harsco Corporation v. United States*, 44 Fed.Cl. 141, 148.  Damages do not need to be precisely determined.  *United States v. American Packing Corp.*, 113 F. Supp. 223, 224 (D. N.J. 1953).

One methodology to calculating damages under this approach will be based upon a tainted claims theory.  Under this theory, the United States will seek to recover 100% of the amounts paid by Medicare or Medicaid in any situation in which the reimbursement amount was based upon a false statement or claim which Roxane caused to be submitted through its

10

dissemination of inflated price information.  Roxane knowingly used the spread as an unlawful inducement in violation of the federal anti-kickback statute, causing resulting false and fraudulent claims to be submitted.  Thus, the total amount of the payment represents damages.

An alternative method of calculating damages will be to estimate the amount that would have been reimbursed for the Subject Drugs (as identified in the United States' Complaint and any amended Complaint filed by the United States) had Roxane not reported inflated prices.  The details of this calculation are closely related to the  Roxane transactional data which the United States is analyzing.  Ultimately, the United States expects to identify a range of prices that Roxane could reasonably have reported as representing the prices which were generally and currently paid in the marketplace for its products.  The United States will then estimate the AWPs that would have been published using those prices.  In determining these alternative AWPs, the United States may apply a markup to reflect historic factors and provide an element of conservatism favoring the defendant.  The United States will then estimate the amounts that would have been reimbursed to providers using the AWPs derived from price information that was not false.  The United States will then calculate the difference between the actual amounts reimbursed as compared to its estimate of the amounts that would have been reimbursed to providers using the AWPs derived from price information that was not false.  At the current time, the United States expects that these calculations will be done on a quarter by quarter basis.

As an example, after completing its analysis of Roxane's transactional data, the United States might estimate that the price generally and currently paid in the first quarter of 2001 for

Roxane's Ipratropium Bromide, NDC 54-8402-13 was $13.32.[1]  The evidence might also show

that Roxane's reporting of prices to FDB and other publishers resulted in a published AWP of

$52.87.

A state Medicaid Program would normally utilize that published AWP as part of its

reimbursement methodology and reimburse for all claims for that Roxane product in that quarter

in reliance on that figure.  As an example, a state Medicaid program might take the published

AWP of $52.87 and discount it by 10%, resulting in an allowed reimbursement amount of

$47.58.  The amount paid by the state would be $47.58, plus fees to the pharmacist and less any

co-payments by the beneficiary.  If the federal portion of the Medicaid Program in that state were

60%, the amount funded by the federal government for the ingredient itself would be $28.55.  In

some instances, the state might have reimbursed based upon another component of its "lesser of"

methodology instead of the AWP, but if the more accurate AWP would have resulted in a lower

Estimated Acquisition Cost ("EAC") that was the lower of the methodology options,

reimbursement would have been based thereon so that the damages would be comparable.

The United States would then estimate the reimbursement that would have been paid had

---

[1]  The United States must engage in substantial additional analysis of Roxane's
transactional data in order to identify the most appropriate price(s) that represent the generally and
currently paid price.  After analyzing Roxane's transactional data, the United States may conclude
that the appropriate price was the actual average price paid by all of Roxane's customers, or may
identify a price limited to certain classes of trade, such as for example, wholesalers and
distributors.  The United States also may conclude that some other percentile price point was
appropriate.  The United States may even identify one price as the most appropriate price, but base
its damages calculations on a price that is a conservative approach that favors Roxane.  For
example, in the *Abbott* case, the United States' expert took the conservative approach of
calculating an accurate AWP as 125% of the average pharmacy indirect price for each NDC in
each quarter.

Roxane reported a price of $13.32 during that period (this assumes a situation wherein the publisher reports the AWP the same as the manufacturer's reported price).  Under the conservative approach utilized in the *Abbott* case, this figure would be multiplied by 125% to reach an assumed ingredient cost of $16.65.  Thus, the amount reimbursed by the state Medicaid Program for the ingredient cost would have been $16.65 less 10%, or $14.99.  The total damages would then be calculated as $47.58 minus $14.99, or $32.59 for every claim paid that quarter by that state based on the EAC.  Factoring in the federal portion of 60% results in a net damage figure to the United States of $19.55.  The applicable state Medicaid Program dispensing fee, or an estimate thereof, would not be included in the damages figure.  If a claim was paid on the basis of the usual and customary charge, a Federal Upper Limit, or a State Maximum Allowable Cost, the United States may compute damages based on the difference, if any, between the paid amount and any lower EAC that would have resulted had the defendant's AWP not been falsely inflated.

It is expected that calculations and analyses of this type will be done for each NDC, for each state, for each quarter for all quarters in which the drug(s) were reimbursed up to the applicable time period.  The sum total of those calculations will represent the total Medicaid related  damages sought by the United States in this case under this damage methodology.

In order to perform actual calculations of damages for claims submitted upon the basis of HCPCS codes to either the Medicare Program or to any Medicaid Program for either Azathioprine or Ipratroprium Bromide, the United States currently intends to take the same general approach.  In sum, the HCPCS code based damages will be first calculated based upon

13

the tainted claims theory and then, alternately, based upon an analysis of the reimbursed amount had Roxane not inflated its prices.

For Azathioprine, the damages suffered in connection with HCPCS code-based claims will be based upon an estimate of the reimbursed amounts that would have been utilized had Roxane not reported inflated prices. In general, at least for purposes of this case, the allowed amount was determined by the Durable Medical Equipment Regional Carriers ("DMERCs") based on the median of the AWPs of generic products that met the narrative description of the HCPCS code. For a period of time, the allowed amount was based on the lower of the median AWP as described above or the AWP of the lowest priced brand product. The United States will calculate damages by estimating the allowed amount that would have been utilized by the DMERCs had the AWP of Roxane's Azathioprine not been false. An approach for identifying untainted AWPs would be to identify AWPs based on prices that were generally and currently paid for Azathioprine, possibly adding a markup as an element of conservatism. That corrected and untainted AWP can be substituted in the DMERC calculations to see if the resulting allowed amount would be different than the allowed amount that was actually utilized for reimbursement. If the allowed amount based upon accurate information is lower than the allowed amount that was used by the DMERC considering Roxane's inflated information, then the United States will seek to recover damages for all claims submitted under that HCPCS code during the corresponding time period. Under the tainted claims theory, the entire value of each claim paid based on the infected allowed amount will be sought. Damages from all such claims, not just from claims attributable to Roxane products, will be sought because the conduct of Roxane

14

caused the allowed amount to be false for every such claim submitted under that HCPCS code regardless of whether the underlying product was actually purchased from some other manufacturer.  As an alternative to seeking the full amount of the claim, another approach will be to calculate the difference between the amount that would have been reimbursed using a corrected AWP and the amount that was actually reimbursed.  These calculations would be adjusted for any applicable co-pay or deductible, as appropriate.

For Ipratropium Bromide, the United States expects to follow the same approaches as described above for Azathioprine.  However, the United States may seek damages based on the combined impact of the false AWPs reported by Roxane and the defendants in *United States ex rel. Ven-a-Care of the Florida Keys Inc. v. Dey, Inc.*, MDL No. 1456, Civil Action No. 01-12257-PBS, where the AWPs reported by Roxane and the Dey defendants had a combined impact on the determination of the allowed amount that was significantly greater than the sum of each defendant's impact considered separately.

For the common law fraud claims, the Plaintiffs seek compensatory and punitive damages in an amount to be determined, together with costs and interest.

As set forth in the Complaint, the recovery sought for the Plaintiffs' unjust enrichment claim is the amount by which Roxane was unjustly enriched, including an accounting of all revenues unlawfully obtained by Roxane, the imposition of a constructive trust upon such revenues, and the disgorgement of the illegal profits obtained by Roxane, plus interest, costs, and expenses.  The information required to quantify these amounts is in Roxane's possession and has still not been fully produced in discovery.

produced documents and information from Medicare carriers with respect to the Subject Drugs and has produced price information provided by Relator to the OIG and CMS.  The United States also understands that Relator has produced pricing information previously provided to the United States.

GREGORY G. KATSAS
ASSISTANT ATTORNEY GENERAL

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By:   /s/ Laurie A. Oberembt
      BARBARA HEALY SMITH
      GEORGE B. HENDERSON, II
      JEFF FAUCI
      Assistant U.S. Attorneys
      United States Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210
      (617) 748-3263

      JOYCE R. BRANDA
      DANIEL R. ANDERSON
      LAURIE A. OBEREMBT
      Civil Division
      Commercial Litigation Branch
      P.O. Box 261
      Ben Franklin Station
      Washington, D.C. 20044
      (202) 514-3345

62