Exhibit C

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850



Center for Medicaid and State Operations

SHO #08-004

October 28, 2008

Dear State Health Official:

This letter explains the Centers for Medicare & Medicaid Services' (CMS) policy regarding the refunding of the Federal share of Medicaid overpayments, damages, fines, penalties, and any other component of a legal judgment or settlement when a State recovers pursuant to legal action under its State False Claims Act (SFCA). Many States have enacted their own False Claims Act statutes modeled on the Federal False Claims Act. Numerous questions have arisen regarding Medicaid overpayment identification, investigation, and refunds of the Federal share when that overpayment is attributable to fraud and abuse. Additionally, this letter explains what amounts must be returned to the Federal Government on any recovery, the proper accounting of the relator's share and litigation expenses, and the time frame for refunding the Federal share of any State FCA recovery.

## Refunding of Damages, Fines, and Penalties Assessed on Acts of Fraud

Section 1903(d)(2)(A) of the Act provides that "[t]he Secretary shall . . . pay to the State, in such installments as he may determine, the amount so estimated, reduced or increased to the extent of any overpayment or underpayment which the Secretary determines was made under this section to such State for any prior quarter and with respect to which adjustment has not already been made under this subsection." Section (d)(3)(A) of the Act provides that "[t]he pro rata share to which the United States is equitably entitled, as determined by the Secretary, of the net amount recovered during any quarter by the State or any political subdivision thereof with respect to medical assistance furnished under the State plan shall be considered an overpayment to be adjusted under this subsection."

The Act requires that the amounts recovered by a State through a State FCA action be refunded at the Federal Medical Assistance Percentage (FMAP) rate. The Act's broad mandate demands that a State return not only the Federal amount originally paid attributable to fraud or abuse, but also an FMAP-rate proportionate share of any other recovery.

Any State action taken as a result of harm to a State's Medicaid program must seek to recover damages sustained by the Medicaid program as a whole, including both Federal and State

Page 2 – State Health Official

shares.[1]  A State may not seek to recover merely the "State share" of computed fraud damages unless appropriate Federal and State authorities formally agree to sever the Federal and State portion of the overpayment and pursue them as separate actions.  If there is no formal agreement to sever, a State may not claim in a State FCA case that it is only recovering damages incurred by the State, but not the Federal Government.  Nor may a State return merely the Federal portion of "single" damages and retain all other amounts, such as double and treble damages.  The Federal Government is entitled to the applicable FMAP share of a State's entire recovery.

States are also required to return the FMAP percentage on State recoveries based upon actions brought against third parties, such as actions against pharmaceutical companies, alleging inappropriate Medicaid expenditures.  Though these third parties are not necessarily directly reimbursed by Medicaid, they may be liable under a State FCA for having caused false or fraudulent claims to be submitted by others.  A State may not avoid adhering to the requirements set forth in section 1903(d) of the Act by virtue of pursuing legal action against a person or entity that has caused false or fraudulent claims to be submitted rather than the party that directly submitted false or fraudulent claims.

The FMAP proportionate share of State FCA-based fines, penalties, or assessments imposed against providers or entities are to be refunded.  The HHS Departmental Appeals Board has long recognized the Federal Government's entitlement to its proportionate share of civil penalties assessed by States against providers or other entities.

Recently enacted Federal legislation supports CMS' interpretation of section 1903(d) of the Act.  Section 1909 of the Act (enacted through section 6031 of the Deficit Reduction Act of 2005 (Pub. L. No. 109-171)) provides an incentive to States that have enacted compliant State FCAs.[2]  States compliant with section 1909 of the Act will have the "Federal medical assistance percentage with respect to any amounts recovered under a State action brought under such law . . . decreased by 10 percentage points."  The statute's language, "with respect to any amounts recovered" provides that the full amount of any State FCA recovery serve as the basis for measuring the Federal share.  The statutory provision does not permit States to segregate any portion of a recovery as ineligible for Federal participation.

**Relator Costs and Attorney's Fees**

Many State False Claims Act cases arise from actions filed by "whistleblowers," also sometimes known as qui tam "relators."  Once these cases reach either settlement or final judgment, relators may, pursuant to state statute, be entitled to receive a certain portion of recovery.  As discussed above, the federal government is entitled to receive the FMAP share of any recovery.  CMS recognizes, however, the critical role that relators play in effecting recoveries for the Medicaid program – were it not for these individuals, in many cases certain causes of action would never be identified.

---

[1]  This applies irrespective of whether the State action is pursuant to a State FCA or other State statutory or common law cause of action.

[2]  As determined by the HHS OIG and the U.S. Department of Justice; see 71 *Fed. Reg.* 48552.

Page 3 – State Health Official

For State FCA legal actions neither the relator's share, nor legal expenses (whether borne by the State or the relator) or other administrative costs arising from such litigation, may be deducted from the Federal portion of the entire proceeds of the litigation.[3]  A state must return the Federal portion of such recoveries at its applicable FMAP rate for medical services in recognition of the overpayment that resulted from a payment for Medicaid services.  Historically, costs that are in support of the proper and efficient administration of a State's Medicaid program are recognized as administrative costs and not service costs.  To the extent attributable to Medicaid recoveries, these costs may be the basis for claims for reimbursement as an administrative cost that benefits the Medicaid program and reimbursed at the regular administrative percentage rate. Federal reimbursement is not available for administrative costs that are not directly related to Medicaid recoveries.

## Timing for Returning  the Federal share

Section 1903(d)(2)(C) of the Social Security Act (the Act) states that:

> when an overpayment is discovered, which was made by a State to a person or other entity, the State shall have a period of 60 days in which to recover or attempt to recover such overpayment before adjustment is made in the Federal payment to such State on account of such overpayment.  Except as otherwise provided in subparagraph (D), the adjustment in the Federal payment shall be made at the end of the 60 days, whether or not recovery was made.

The Act establishes a 60-day period, beginning at the date of discovery, for the Federal share of an overpayment to be returned to the Government.  The Federal regulation implementing this requirement, 42 CFR section 433.316, distinguishes between discovery of an overpayment attributable to fraud or abuse as compared with other overpayment situations.  While in most situations, discovery of an overpayment is deemed to occur when any State official first notifies a provider in writing of an overpayment and specifies an overpayment amount, the regulations at 42 CFR section 433.316(d) state that "[a]n overpayment that results from fraud or abuse is discovered on the date of the final written notice of the State's overpayment determination that a Medicaid agency official or other State official sends to the provider."

Moreover, CMS has previously explained that in fraud or abuse cases, discovery "does not occur until final written notification . . . in order to permit State officials adequate time to conduct the necessary investigations and to resolve the legal issues peculiar to these situations." 54 *Fed. Reg.* 5452, 5454 (Feb. 3, 1989).

## Process for Reporting the Return of the Federal Share

The CMS is entitled to the FMAP-proportionate share of a State's entire settlement or final judgment amount.  Pursuant to Federal cost principles, a State must apply all applicable credits

---

[3] Under Federal False Claims Act, if the Federal government intervenes in the action, the relator is generally entitled to at least 15 percent but not more than 25 percent of the proceeds.  See 31 U.S.C. section 3730(d).

Page 4 – State Health Official

to its reported quarterly expenditures.  See OMB Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments; 45 CFR sections 92.20(b)(5), 92.21(f), and 92.22.  When a settlement occurs or judgment is rendered, the State must report the refund of the Federal share on the next quarterly expenditure report (Form CMS-64), less any Federal repayment already made prior to date of the final action.  While the timeframes for the quarterly expenditure reports and the timeframe for the statutorily mandated 60-day period do not match exactly, the Quarterly Expenditure Report that embraces the 60-day period must reflect the return of the Federal share.

If you have any questions please contact Mr. Jim Frizzera, Director, Financial Management Group, at (410) 786-9535, or Mr. Edgar Davies, at (410) 786-3280.

Sincerely,

/s/

Herb B. Kuhn
Deputy Administrator
Acting Director, Center for Medicaid and State Operations

cc:
CMS Regional Administrator

CMS Associate Regional Administrators,
    Division of Medicaid and Children's Health

Ann C. Kohler
NASMD Executive Director
American Public Human Services Association

Joy Wilson
Director, Health Committee
National Conference of State Legislatures

Matt Salo
Director of Health Legislation
National Governors Association

Barbara W. Levine
Chief, Government Relations and Legal Affairs
Association of State and Territorial Health Officials

Christie Raniszweski Herrera
Director, Health and Human Services Task Force
American Legislative Exchange Council

Page 5 – State Health Official

Debra Miller
Director of Health Policy
Council of State Governments