UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| PHARMACEUTICAL INDUSTRY | ) | Subcategory No. 06-11337 |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | Hon. Patti B. Saris |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| *United States ex rel Ven-A-Care of the* | ) | |
| *Florida Keys, Inc.* v. *Schering Corporation,* | ) | |
| *Schering-Plough Corporation and* | ) | |
| *Warrick Pharmaceuticals Corporation* | ) | |
| Civil Action No. 09-CV-10547 | | |
| *MDL Action No.* | ) | |
| | | |
| *United States ex rel Ven-A-Care of the* | ) | |
| *Florida Keys, Inc.* v. *Schering Corporation,* | ) | |
| *Schering-Plough Corporation and* | ) | |
| *Warrick Pharmaceuticals Corporation* | ) | |
| Civil Action No. 00-10698 | ) | |
| | | |
| *California ex rel Ven-A-Care of the* | ) | |
| *Florida Keys, Inc.* v. *Schering Corporation,* | ) | |
| *Schering-Plough Corporation and* | ) | |
| *Warrick Pharmaceuticals Corporation* | ) | |
| Civil Action | | |
| *MDL Action No.* | | |

**DECLARATION OF T. MARK JONES, R.N.**

1.  My name is T. Mark Jones. I am over the age of 21, of sound mind and competent to provide the testimony set forth herein. I understand that this declaration will be presented to the United States District Court in support of the combined $55,000,000

Settlement that Ven-A-Care has secured in the above-referenced actions and in the related Florida State Court action.

2. I am a resident of Key West, Florida. I am the President of Ven-A-Care of the Florida Keys, Inc. and have been an officer, director and full time employee of Ven-A-Care, the *qui tam* relator in the above styled actions, since before August 27, 1991. Ven-A-Care care has been a licensed pharmacy since 1987.

3. Drawing on its knowledge and experience as an industry insider, Ven-A-Care commenced its disclosures of Medicaid and Medicare pharmaceutical reimbursement fraud issues to the United States after it was made privy to information about, and refused invitations to join, a WR Grace/ National Medical Care physician joint venture that it believed was an unlawful kickback arrangement funded by inflated claims for reimbursement for pharmaceutical products. Ven-A-Care's refusal to cooperate with the reimbursement funded physician referral scheme soon devastated its business. Ven-A-Care filed its first Medicare/Medicaid related FCA action in 1994 against WR Grace/ National Medical Care, which settled in 1999 for nearly $500,000,000.

4. Ven-A-Care continuously informed the United States about its AWP related knowledge, information and allegations before and after initiating the WR Grace/ National Medical Care case. Ven-A-Care filed the first-ever "AWP" case, to my knowledge, in 1995 when it commenced its US FCA action in the United States District Court for the Southern District of Florida alleging that certain drug manufacturers were

12090288_3.DOC

reporting falsely inflated prices for certain generic and brand drugs.[1] The first settlement by a defendant in Ven-A-Care's "AWP" related FCA actions occurred in 2000 when the allegations against Bayer were resolved for $14,000,000. Since then, numerous "AWP" type Medicare and Medicaid settlements, mostly in Ven-A-Care state and federal FCA actions, have been concluded, including with Schering/Warrick.

5.      Although Schering/Warrick was not initially joined as a defendant in the 1995 AWP FCA action, in or about August 1995 Ven-A-Care was made privy to another business opportunity to enrich itself through inflated Medicare and Medicaid reimbursement for nebulizer/ihalation drugs.  Ven-A-Care was able to determine that the inflated Medicare and Medicaid reimbursement resulted from false inflated price reports by the drugs' manufacturers, in this case Warrick and its competitor, Dey Laboratories. Ven-A-Care immediately informed the United States of its knowledge about the nebulizer drug fraud scheme in August 1995 and, thereafter, continued to share its knowledge and information with the United States and to inform it of its allegations.

6.      In September 1995, Ven-A-Care and its counsel met with representatives of the Department of Justice, HHS OIG and HCFA (now CMS) and again explained in detail what it described as the "AWP" fraud scheme. Thereafter, Ven-A-Care continued to supply the government with information about its allegations, including those relating to Schering/Warrick. Ven-A-Care also assisted the HHS OIG in a review of nebulizer drug reimbursement in 1996 and with similar reviews of drug price and reimbursement issues

---

[1] I use the term "AWP" case to describe the category of cases that have been brought in state and federal courts throughout the United States against pharmaceutical manufacturers alleging that they made false representations about the prices of certain drugs used to determine reimbursement amounts, including by the Medicare and Medicaid Programs.

12090288_3.DOC

from the early 1990s forward. Ven-A-Care further provided information about actual market prices available to it as a market insider, inflated drug price reports and inflated spread marketing schemes to Congress and the GAO.

7.  Schering/Warrick was formally added as a defendant with regard to generic drugs in the still sealed AWP FCA action in 1997. Ven-A-Care did not believe that its information provided a basis for claiming damages with respect to Schering's brand drugs when it brought its first action against Schering/ Warrick, or thereafter. Ven-A-Care did allege AWP related FCA violations against other drug manufacturers with respect to certain branded drags, such as Glaxo's, SmithKline's and Hoechst's oncology injectible anti-emetics and BMS's Taxol. The state and federal governments have recovered more than $300,000,000 through these Ven-A-Care FCA actions relating to branded drugs. However, Ven-A-Care's information showed that Schering's price reports for branded drugs were representative of the prices generally and currently paid in the marketplace and indicated that Schering/Warrick was well able to report truthful prices when it was in its interest to do so.

8.  The Department of Justice investigation into Ven-A-Care's allegations about Schering/Warrick extended some eleven years until DOJ declined to intervene in the litigation in November 2008. While the Department investigated, Ven-A-Care continued to supply DOJ with needed information and secured leave of the Court to inform the State Attorneys General about its drug price reporting information and allegations, to assist in state investigations and to commence state *qui tam* actions, and actively pursued and assisted with the resulting state investigations and AWP cases.

9. Based upon information provided to me by John Lockwood, M.D., a Ven-A-Care officer and director who has had responsibility for assisting the government in the Schering/Warrick case, I am aware that Ven-A-Care took action to inform DOJ, at times before November 2008, about spread and pricing information on *all* of the drugs that are the subject of the settlement, including the Schering-brand drugs that were recently added to the Amended Complaint.

10. In 2000, the Texas Attorney General intervened in the "AWP" type *qui tam* action that Ven-A-Care brought on behalf of Texas and, in partnership with Ven-A-Care's counsel team, has actively litigated Ven-A-Care's Texas *qui tam* action. While the Texas Medicaid drug pricing cases continue against various defendants, one of the first manufacturers pursued was Schering/Warrick. The Ven-A-Care Texas litigation against Schering/Warrick was aggressively conducted, by all parties, over a three year period. While the albuterol products made up the 'Covered Drugs" described in the complaint and eventual settlement, the litigation also focused on Schering/Warrick's drug price reporting conduct in general. After a thorough investigation and active litigation, the Schering/Warrick price reports about its branded drugs were pointed to by the Plaintiffs as examples of Schering/Warrick's ability to report drug prices that were reflective of those generally and currently paid in the marketplace. The Texas Schering/Warrick case settled on the eve of trial in April 2004 for $27,000,000, after more than a hundred depositions were taken. The United States joined in the settlement.

11. Thereafter, Ven-A-Care and its counsel team have continued to litigate the Ven-A-Care Florida and California *qui tam* actions against Schering/Warrick and to assist the other litigating states with their AWP cases. Throughout the course of the Texas and

12090288_3.DOC

other state litigation, the Texas, Florida and California Attorneys General, the other states' attorneys general and Ven-A-Care remained in close touch with the Department of Justice and shared with the United States, to the fullest extent permitted by the state courts, the abundant fruits of discovery in those cases. Under the protective order entered in Texas, Ven-A-Care was able to share discovery in that case with the United States on an ongoing, contemporaneous basis.

12. Following the Schering/Warrick settlement of the Texas action, Ven-A-Care continued to aggressively pursue litigation of its California and Florida *qui tam* actions against Schering/Warrick and its counsel team took the lead among all of the litigating states in preparing for and conducting important remaining depositions, such as that of former lead Warrick business manager Harvey Weintraub.

13. Ven-A-Care also continued to keep the Department of Justice fully apprised of its efforts, and their results, including those relating to the additional Warrick generic drugs.

14. Since the Department of Justice declined to intervene as to Schering/Warrick, Ven-A-Care has continued the litigation on behalf of the United States of its US FCA action to recover the federal share of any damages incurred by the Medicaid program as well as its Florida and California intervened *qui tam* actions.

15. While substantial discovery will have to be completed in the California action if this Settlement is not approved, the long and intense history of Ven-A-Care litigation with Schering/Warrick made it possible for the adverse parties to reach a resolution which Ven-A-Care believes is in the interest of Florida, California and the United States.

16. If this Settlement is approved, it is Ven-A-Care's understanding that approximately fifteen of the non- *qui tam* state and local government AWP cases against Schering/Warrick, brought with Ven-A-Care's assistance, will remain.

17. Additionally, Ven-A-Care will continue to pursue, along with the Department of Justice, the Dey, Roxane and Abbott US FCA actions before this Court as well as all of the remaining Ven-A-Care US FCA actions in which the Department of Justice has declined to intervene. To date, the United States has agreed to the unsealing of and declined to intervene in Ven-A-Care US FCA cases against numerous additional defendants organized into seven defendant groups within this MDL. If and to the extent that additional unresolved Ven-A-Care FCA actions remain under seal, they too may be unsealed and transferred to this MDL.

18. Additionally, Ven-A-Care is actively pursuing, along with the states' attorneys general, unsealed actions against at least three remaining defendants in its California case, pending before this MDL, at least ten defendant groups in its Texas state court *qui tam* actions and at least eight defendant groups in its Florida state court *qui tam* actions. Ven-A-Care's counsel team has staffed all of these actions and is advancing all or a large part of the litigation costs, including for expert witnesses and including a large portion of the expert witness costs in the U.S.intervened Dey, Roxane and Abbott cases pending in this MDL.

19. As Ven-A-Care's President, I believe that the following points are also important for the Court to consider with respect to the fairness, adequacy and reasonableness of the $55,000,000 Settlement it has secured for the United States, California and Florida. Ven-

12090288_3.DOC

A-Care's principal officers and directors have devoted more than sixteen years to assisting the states and federal governments in identifying pharmaceutical pricing and marketing fraud that it believes has a corruptive influence on Medicare and Medicaid reimbursement and contributes to the spiraling cost of health care which, in turn, also contributes to our nation's economic crisis. The federal False Claims Act and its state law counterparts have allowed Ven-A-Care to be as effective as possible in its efforts. Ven-A-Care believes that these essential tools can be put to their full and intended use only with close cooperation between relators, their counsel and hard working and talented state and federal government lawyers and investigators, such as those who have worked, and are working, on the AWP cases Ven-A-Care initiated.  Ven-A-Care seeks approval of this Settlement because it believes that it is fair, adequate and reasonable in light of circumstances which include, but are not limited to, the following: Approximately $65,000,000 has already been recovered in Medicaid AWP cases against Schering/Warrick that were filed, or initiated with information provided, by Ven-A-Care. With the $55,000,000 recovered by this Settlement, Schering/Warrick will have paid nearly $120,000,000 in Medicaid AWP cases, which Ven-A-Care believes is the second largest aggregate amount received in Medicaid settlements from any single drug manufacturer to date.  Moreover, Ven-A-Care believes this Settlement will not stop the remaining states and local governments with AWP cases against Schering/Warrick from recovering additional sums. Ven-A-Care understands that argument will be presented as to the issue of the Settlement's preclusive impact on the states' ability to further collect Medicaid damages to the extent they must be repaid to the United States ("the federal share"). Ven-A-Care hopes that this Court will resolve that question so the Settlement can

12090288_3.DOC

be effectively evaluated by the United States in making its "consent" determination under the False Claims Act. In the end, Ven-A-Care is hopeful that the ultimate decision about this Settlement will provide it and its counsel with much needed information as to how Ven-A-Care can most judiciously expend its litigation resources in the remaining state and federal AWP cases so as to maximize overall recoveries and benefit for the taxpayer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 7, 2009.

*/s/ T. Mark Jones*

T. Mark Jones

12090288_3.DOC