Exhibit D – Part 1

ORIGINAL

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CV    04 -5128

COUNTY OF NASSAU,

        Plaintiff,

    v.

ABBOTT LABORATORIES, INC., AGOURON
PHARMACEUTICALS, INC., AMGEN, INC.,
ASTRAZENECA PHARMACEUTICALS L.P.,
ASTRAZENECA U.S., AVENTIS BEHRING,
AVENTIS PHARMACEUTICALS INC., BARR
LABORATORIES, INC., BAXTER
INTERNATIONAL, INC., BAYER AG, BERLEX
LABORATORIES, INC., BIOGEN, INC.,
BOEHRINGER INGELHEIM CORP., BRISTOL-
MYERS SQUIBB COMPANY, ELI LILLY AND
COMPANY, FUJISAWA PHARMACEUTICAL
COMPANY, LTD., GENENTECH, INC.,
GENZYME CORP., GLAXO WELLCOME, P.L.C.,
GLAXOSMITHKLINE PLC, IMMUNEX
CORPORATION, IVAX CORPORATION, IVAX
PHARMACEUTICALS INC., JANSSEN
PHARMACEUTICAL, JOHNSON & JOHNSON,
KEY PHARMACEUTICALS, INC., MEDIMMUNE,
INC., MERCK & CO., INC., MYLAN
LABORATORIES, INC., ORGANON INC., USA,
NOVARTIS PHARMACEUTICALS
CORPORATION, ORTHO BIOTECH, ORTHO-
MCNEIL PHARMACEUTICALS, PFIZER INC.,
PHARMACIA CORPORATION, PURDUE
PHARMA, L.P., RELIANT PHARMACEUTICALS,
SANOFI-SYNTHELABO, INC., SCHERING-
PLOUGH CORP., SERONO, INC.,
SMITHKLINEBEECHAM P.L.C, TAKEDA
PHARMACEUTICALS NORTH AMERICA, INC.,
TAP PHARMACEUTICALS, WARRICK
PHARMACEUTICALS, WYETH, and DOES 1-100

        Defendants.

Civil Action No.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
☆ ___ 4 2004
BROOKLYN OFFICE

HURLEY, J.

**COMPLAINT**

ORENSTEIN, M.J.

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    JURISDICTION AND VENUE ......................................................................... 7

III.   PARTIES ............................................................................................................ 7

       I.     AS YET UNNAMED CO-CONSPIRATORS AND DOE DEFENDANTS ........ 21

IV.    GENERAL ALLEGATIONS ............................................................................ 22

       A.     THE AWP SYSTEM ............................................................................. 22

       B.     THE MEDICAID STATUTORY SCHEME .......................................... 25

       C.     DEFENDANTS' FRAUDULENT CONDUCT RESPECTING
              AWP REPORTING AND FAILURE TO REPORT BEST PRICES ....... 29

              1.     Artificially Inflating and Fraudulently Reporting AWPs ............. 29

              2.     Failure to Report Best Prices ....................................................... 30

       D.     THE DEFENDANT DRUG MANUFACTURERS' USE OF AWP
              FRAUD TO INCREASE AND MAINTAIN VOLUME AND
              MARKET SHARE FOR GENERIC AND MULTI-SOURCE
              DRUGS ................................................................................................. 33

       E.     MOTIVATION FOR DEFENDANTS' AWP PRICING SCHEME ........ 35

V.     GOVERNMENT INVESTIGATIONS ............................................................. 37

VI.    ALLEGATIONS PARTICULAR TO NASSAU AND THE INDIVIDUAL
       DEFENDANTS ................................................................................................. 43

       A.     ABBOTT LABS ..................................................................................... 45

       B.     AGOURON ............................................................................................ 47

       C.     AMGEN ................................................................................................. 47

       D.     ASTRAZENECA .................................................................................... 49

       E.     AVENTIS ............................................................................................... 52

       F.     BARR .................................................................................................... 54

- i -

G.   BAXTER ....................................................................................... 55

H.   BAYER ......................................................................................... 55

I.   BERLEX ...................................................................................... 58

J.   BIOGEN ...................................................................................... 59

K.   BOEHRINGER ............................................................................ 60

L.   BRISTOL-MEYERS SQUIBB ...................................................... 61

M.   CHIRON ...................................................................................... 62

N.   ELI LILLY ................................................................................... 63

O.   FOREST ...................................................................................... 64

P.   FUJISAWA .................................................................................. 64

Q.   GENENTECH .............................................................................. 65

R.   GENZYME ................................................................................... 66

S.   THE GSK DEFENDANTS ........................................................... 67

T.   IVAX CORPORATION ................................................................ 70

U.   JOHNSON & JOHNSON DEFENDANTS .................................... 71

V.   KEY ............................................................................................. 72

W.   MEDIMMUNE .............................................................................. 73

X.   MERCK ........................................................................................ 73

Y.   MYLAN ........................................................................................ 74

Z.   NOVARTIS ................................................................................... 75

AA.  ORGANON ................................................................................... 76

BB.  THE PFIZER DEFENDANTS (PFIZER, AGOURON AND
     SANOFI-SYNTHELABO, INC.) ................................................... 76

CC.  PURDUE ...................................................................................... 79

DD.  RELIANT PHARM ....................................................................... 80

|  |  |  |  |
|---|---|---|---|
| EE. | SCHERING-PLOUGH | ............................................................ | 81 |
| FF. | SERONO | ............................................................ | 83 |
| GG. | TAKEDA | ............................................................ | 84 |
| HH. | TAP | ............................................................ | 84 |
| II. | WARRICK | ............................................................ | 87 |
| JJ. | WYETH | ............................................................ | 88 |

VII.    DAMAGES TO NASSAU COUNTY .............................................................89

VIII.   FRAUDULENT CONCEALMENT....................................................91

IX.     CLAIMS FOR RELIEF .............................................................93

COUNT I      VIOLATIONS OF 18 U.S.C.§ 1962(C) (AGAINST
DEFENDANT DRUG MANUFACTURERS IDENTIFIED
HEREIN FOR UNLAWFUL CONDUCT ASSOCIATED
WITH MEDICAID COVERED DRUGS) ...................................93

COUNT II     VIOLATION OF FEDERAL MEDICAID STATUTE, 42
U.S.C. § 1396r-8 FAILURE TO REPORT BEST PRICE ..........128

COUNT III    VIOLATION OF N.Y. SOCIAL SERVICES LAW § 367-
a(7)(d) FAILURE TO REPORT BEST PRICE...........................130

COUNT IV     VIOLATION OF NEW YORK DEPARTMENT OF
HEALTH REGULATIONS 18 N.Y.C.RR § 515.2(b,)(4)
and (5) ...................................................................132

COUNT V      VIOLATION OF NEW YORK SOCIAL SERVICES LAW
§ 145-b OBTAINING PUBLIC FUNDS BY FALSE
STATEMENTS...................................................................133

COUNT VI     BREACH OF CONTRACT..................................................134

COUNT        VII UNFAIR TRADE PRACTICES (Violations of N.Y.
Genl. Bus. Law & 349 *et seq.*)...........................................135

COUNT VIII   FRAUD ...................................................................138

COUNT IX     UNJUST ENRICHMENT .........................................................139

X.      PRAYER FOR RELIEF .............................................................139

Plaintiff, the County of Nassau (hereinafter "Nassau"), brings this action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, the Social Security Act, 42 U.S.C. § 1396r-8, New York Social Services Law §§ 367 and 145-b, New York General Business Law §§ 349, 350 and common law to recover monetary damages, civil penalties, declaratory and injunctive relief, restitution, disgorgement of profits, treble and punitive damages suffered as a result of Defendants' unlawful scheme to overcharge for prescription medications paid for by New York State Medicaid. Nassau County is required by New York State law to pay 25% of New York State Medicaid costs, including the cost of prescription drugs ("pharmacy costs"). Nassau County is also required to balance its budget annually. Every dollar wrongfully spent on Medicaid could have properly been allotted to other public needs. Nassau's claims as to itself and its own actions are based upon its personal knowledge. All other allegations are based upon information and belief pursuant to the investigation of counsel.

## I.       INTRODUCTION

1.       Each of the Defendants is or has been engaged in the business of manufacturing, marketing and selling prescription pharmaceuticals throughout the United States. The principal payors for such prescription pharmaceuticals are federal, state and local governments (under the Medicare and Medicaid Programs), private insurers and self-insured employers (Third-Party Payors), and private individuals (Patients). Plaintiff is a municipal corporation and local government required by New York State law to contribute 25% towards New York States Medicaid costs.

2.       For the last decade, Defendants have engaged in a systematic and pervasive fraudulent scheme with others in the pharmaceutical distribution chain, including but not limited

to pharmacies, physicians, hospitals and other medical providers (hereinafter "providers"), to collect inflated prescription drug payments from Nassau. The scheme generally involves two types of wrongdoing, one of which impacts the other. The first is the fraudulent reporting of false and inflated average wholesale prices ("AWPs") or wholesale acquisition costs ("WACs") on which AWPs are based for certain drugs. The second is the failure to report the "Best Price" for certain drugs in violation of federal and state Medicaid statutory requirements, which failure also inflates the AWP.

3.      It is standard practice that for federal Medicare and Medicaid Programs, state and local Medicaid entities (such as Nassau), Third Party Payors and patients reimburse providers for multi-source (generic) and brand name prescription drugs for which there is no "Federal Upper Limit" based upon the AWP for such drugs, as published and reported by third-party reporting services such as the Blue Book, Medispan or RedBook.

4.      Nassau pays for most prescription drugs based on AWP pursuant to federal and state statute and regulation. Because Defendants artificially inflate the AWP in order to manipulate reimbursements, plaintiff has made excessive payments. As set forth in Exhibit A hereto, Defendants have reported false and inflated AWPs for certain Medicaid Covered Drugs. The improper inflation rates range is as high as approximately 70%. This practice has resulted in millions of dollars in overcharges to Nassau County.

5.      The inflationary scheme is successful in part because Pharmaceutical companies either self-report an artificially inflated AWP to publishers, who then publish the AWP provided to them; or self-report artificially inflated WACs, which the publisher then converts to AWP. In either case, the AWP is not independently determined by the publishers.

6. By federal and state statute and regulation, and industry practice, the AWP is intended and required to be based upon and directly related to actual prices paid by providers to pharmaceutical manufactures (or wholesalers) for such prescription drugs.

7. In fact, as has been revealed by Nassau's own investigation (See Exhibit A) and extensive and ongoing Congressional and federal investigations, and numerous recent settlements involving many of the Defendants herein, pharmaceutical manufacturers have engaged in a pervasive scheme, commencing in 1993 if not earlier, whereby they report or cause to be reported, fraudulent, fictitious and inflated AWPs or WACs for certain prescription pharmaceuticals, including prescription pharmaceuticals paid for by Medicaid and thus by Nassau.

8. The fraudulent AWP Scheme described herein also has involved the affirmative failure of Defendants to report their Best Prices as required by federal and state Medicaid statutes, thereby further inflating the reported AWPs. Pursuant to 42 U.S.C. § 1396r-8, each of the Defendants was required to report to the Secretary of Health and Human Services the lowest price it sold a drug to any for-profit entity. Each defendant agreed to offer the Medicaid Program its "best price." A like requirement appears in New York State's Medicaid Statute. *See* New York Social Services Law § 367-a(7)(d). Yet Defendants exclude from their reporting of best prices certain drugs offered at discounts or other rebates that would have reduced the price paid. They do so to avoid paying rebates to Medicaid and to avoid having to disclose the true best price, which would have required a reduction in the reported AWP.

9. The fraudulent reporting of Average Wholesale Prices has the effect of materially misrepresenting and overstating the true AWP on which reimbursement should be based.

10.     The motivations for the scheme are straight-forward. By inflating the AWP, on which Medicaid reimbursement is based, Defendants motivate providers to distribute the drugs with the highest reimbursement rate. This practice is known as "marketing the spread." Providers benefit by pocketing the difference between the reported AWP and the actual cost paid for the drug.

11.     This scheme is not a matter of speculation. Defendant Bayer recently paid $260 million in civil and criminal fines in connection with allegations that they failed to report Best Prices for certain drugs thereby resulting in overcharges to Medicaid and Medicare. Defendant GlaxoSmithKline recently paid $88 million to resolve civil charges that it caused Medicaid and Medicare to overpay for certain drugs. Defendant Abbott is paying $621 million in criminal and civil penalties for defrauding Medicare and Medicaid and has affirmatively acknowledged its involvement in the fraud. Defendant Bristol-Myers is under investigation in connection with its pricing practices for drugs covered by Medicare and Medicaid. Defendant AstraZeneca paid $355 million to settle federal fraud charges that it induced doctors to falsely bill Medicare and Medicaid. Defendant Pfizer paid $49 million for failure to disclose discounts and properly report best prices for a certain drug. Defendant Schering-Plough faces threat of indictment for cheating the government out of Medicaid rebates and submitting false price information. Defendant TAP Pharmaceuticals paid $875 million in connection with its fraudulent pricing practices respecting Lupron.

12.     The foregoing settlements, the government investigations that prompted them, and the corporate integrity agreements executed by the settling companies are discussed herein. Certain of the settlements may impact a portion of Nassau's damages for certain years with

- 4 -

respect to certain drugs.  In any event, the settlements and compliance agreements executed by

the settling parties confirm the allegations of wrongdoing herein.

13.    Even as to the Defendants not mentioned above, Nassau's initial research

confirms that the practice of routinely and systematically inflating the reported AWPs for certain

drugs and failing to report Best Prices is pervasive.  *See* Exhibit A.  Indeed, Defendants must

participate lockstep in the fraud to prevent dispensers such as pharmacies and doctors from

prescribing drugs of a competitor with a higher spread between Medicaid reimbursement rate

and direct price.

14.    The fraudulent scheme devised and initiated by Defendants and implemented by

its co-conspirators (DOES 1-100) is effectuated by:  (i) overstating the AWP for drugs for which

Medicaid provides reimbursement based upon AWP ("Covered Drugs"); (ii) marketing and

promoting the sale of Covered Drugs to providers based on the providers' ability to collect

inflated payments from the government and Medicaid beneficiaries that exceeded payments

possible for competing drugs; (iii) providing healthcare providers with unreported discounts, free

samples and financial incentives to over-prescribe Covered Drugs or to prescribe Covered Drugs

in place of competing drugs; and (iv) overcharging the Medicaid program for illegally inflated

Covered Drugs reimbursements.

15.    According to one member of the Congressional Ways and Means Committee,

describing the conduct of one defendant herein:

> The price manipulation scheme is executed through Bristol's
> falsely inflated representations of average wholesale price
> ("AWP"), direct price ("DP"), and wholesale acquisition cost
> ("WAC"), which are utilized by the Medicare and Medicaid
> programs in establishing drug reimbursements to providers.  The
> difference between the inflated representations of AWP, DP, and
> WAC versus the true price providers are paying, is regularly
> referred to . . . as "the spread."

- 5 -

* * *

> The evidence clearly shows that Bristol has intentionally reported
> inflated prices and has engaged in other improper business
> practices in order to cause its customers to receive windfall profits
> from Medicare and Medicaid when submitting claims for certain
> drugs. The evidence further reveals that Bristol manipulated prices
> for the express purpose of expanding sales and increasing market
> share of certain drugs where the arranging of a financial benefit or
> inducement would influence the decisions of healthcare providers
> submitting the Medicare and Medicaid claims.

(February 27, 2001 letter from Representative Pete Stark to Peter Dolan, President, Bristol-Myers Squibb Co.).

16.     Nassau alleges upon information and belief that, in many instances, the AWP reported by the defendant pharmaceutical manufacturers bears a minimal relationship to the prices actually paid by providers and is "made up" by corporate pricing committees literally out of "thin air" for the purpose of manipulating pharmaceutical markets and increasing market share. Many of the facts underlying this fraud, such as the volume and nature of the discounts provided and free samples distributed, are peculiarly within Defendants' control.

17.     Thus, Defendants knowingly have violated federal and state statutes by deliberately publishing false, inflated and misleading price data that directly results in excessive payments by Nassau. Neither federal nor state statutory schemes, even to the extent they base reimbursement on AWPs, permit Defendants to engage in this widespread, concerted fraud. Nassau would not have been damaged if Defendants complied with the existing federal and state laws.

18.     As a result of the fraudulent and illegal manipulation of AWP for covered drugs by Defendants, Defendants have reaped billions of dollars in illegal profits at the expense of American consumers, taxpayers, and entities such as Plaintiff that pay reimbursements for Medicaid pharmacy costs.

- 6 -

## II.    JURISDICTION AND VENUE

19.    This action is brought for and on behalf of the County of Nassau, pursuant to, *inter alia*, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, New York's Social Services Law §§ 145-b and 367-a, New York's Consumer Protection Statute, Gen. Bus. Law §§ 349, 350 and for breach of contract, unjust enrichment, and common law fraud.

20.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the action alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* and the Social Security Act, 42 U.S.C. § 1396 *et seq.* This Court has supplemental jurisdiction over plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants do business and are qualified to do business in this District; certain acts giving rise to the claims asserted in this Complaint occurred within this District; and the illegal actions of Defendants, as alleged in this Complaint, caused damage to Plaintiff within this District.

## III.    PARTIES

22.    Plaintiff, the County of Nassau, New York is a municipal corporation organized pursuant to the laws of New York State. Nassau County maintains its principal place of business at 1 West St., Mineola, New York. The county is statutorily required to pay 25% of Medicaid prescription drug cases for Nassau County residents. N.Y. Sec. Serv. L. § 367-68 .

23.    Defendant Abbott Laboratories, Inc. ("Abbott") is an Illinois corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals. Abbott's principal place of business is at 100 Abbott Park Road, Abbott Park, Illinois. Abbott conducts extensive business in the State of New York,

- 7 -

including in the County of Nassau. Abbott manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Depakote® and Kaletra®.

24. Defendant Agouron Pharmaceuticals Inc. ("Agouron") is a California corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals and a wholly owned subsidiary of Pfizer. Agouron's principal place of business is 10350 North Torrey Pines Road, Suite 100 La Jolla, California. Agouron does extensive business in the State of New York, including in the County of Nassau. Agouron manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Viracept®.

25. Defendant Amgen, Inc. ("Amgen") is a Delaware corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Amgen's principal place of business is One Amgen Drive, Thousand Oaks, California. Amgen does extensive business in the State of New York, including in the County of Nassau. Amgen manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Neuprogen®, Enbrel® and Epogen®.

26. Two AstraZeneca PLC subsidiaries, Defendant AstraZeneca U.S. and Defendant Astr&Zeneca Pharmaceuticals L.P. (collectively referred to as "AstraZeneca") are Delaware corporations whose principal businesses are the development, manufacture and sale of health care products including pharmaceuticals. AstraZeneca's principal place of business is at 1800 Concord Pike, Wilmington, Delaware. AstraZeneca does extensive business in the State of New York, including in the County of Nassau. AstraZeneca manufactures and sells prescription drugs

- 8 -

with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Nexium®, Prilosec and Seroquel®.

27.     Two wholly-owned subsidiaries of French-domiciled Aventis S.A., Defendant Aventis Behring L.L.C. and Defendant Aventis Pharmaceuticals Inc., (collectively referred to as "Aventis") are located in the U.S.  Defendant Aventis Behring is located at 1020 First Avenue, King of Prussia, Pennsylvania.  Defendant Aventis Pharmaceuticals Inc. is located at 300-400 Somerset Corporate Boulevard, Bridgewater, New Jersey.  Aventis Behring formerly did business as Centeon LLC, a joint venture between Rhone-Poulenc Rorer, S.A. and Hoechst Marion Roussel, Inc. ("Hoechst").  Aventis manufactures, markets and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Helixate FS®.

28.     Defendant Barr Laboratories, Inc. ("Barr") is a specialty pharmaceutical company primarily engaged in the development, manufacture and marketing of generic and proprietary prescription pharmaceuticals.  Its business address is 2 Quaker Road, Box 2900, Pomona, New York.  Barr conducts extensive business in the State of New York, including in the County of Nassau.  Barr manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Fluoxetine®.

29.     Defendant Baxter International, Inc. ("Baxter") is an Illinois corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals.  Baxter's principal place of business is at One Baxter Parkway, Deerfield, Illinois.  Baxter conducts extensive business in the State of New York, including in the County of Nassau.  Baxter manufactures and sells prescription drugs with false

and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Gammagard®.

30.     Defendant Bayer Corporation ("Bayer") is an Indiana corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Bayer's principal place of business is located at 100 Bayer Road, Pittsburgh Pennsylvania. Bayer's pharmaceutical division is located at 400 Morgan Lane, West Haven, Connecticut. Bayer conducts extensive business in the State of New York, including in the County of Nassau. Bayer is a wholly owned U.S. subsidiary of Bayer AG, a German corporation. Bayer manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Cipro®.

31.     Defendant Berlex Laboratories, Inc. ("Berlex") is a Delaware corporation whose principal business is the development, manufacture and sale of health care products, including pharmaceuticals. Berlex's principal place of business is P.O. Box 1000, Montville, New Jersey. Berlex conducts extensive business in the State of New York, including in the County of Nassau. Berlex Laboratories manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Betaseron®.

32.     Defendant Biogen, Inc. ("Biogen") is a highly diversified health care company whose principal business is the development, manufacture and sale of health care products, including pharmaceuticals. Biogen's principal place of business is 14 Cambridge Center, Cambridge, Massachusetts. Biogen conducts extensive business in the State of New York, including in the County of Nassau. Biogen manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Avonex®.

- 10 -

33.     Defendant Boehringer Ingelheim Corporation ("Boehringer") is a Connecticut corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals.  Boehringer's principal place of business is at 900 Ridgebury Road, Ridgefield, Connecticut.  Boehringer conducts extensive business in the State of New York, including in the County of Nassau.  Boehringer is a wholly owned U.S. subsidiary of Boehringer Ingelheim Auslandsbeteiligung GmbH, a German corporation. Boehringer manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Combivent®.

34.     Defendant Bristol-Myers Squibb Company ("Bristol-Myers") is a Delaware corporation whose principal business is the development, manufacture and sale of health care products, including pharmaceuticals. Bristol-Myers's principal place of business is 345 Park Avenue, New York, New York.  Bristol-Myers does extensive business in the State of New York, including in the County of Nassau.  Bristol-Myers manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Glucophage®, Sustiva®, Pravachol®, Buspar®, and Plavix®.

35.     Defendant Chiron Corporation's ("Chiron") principal business is the development, manufacture and sale of health care products including pharmaceuticals.  Chiron's principal place of business is 4560 Horton Street, Emeryville, California.  Chiron conducts extensive business in the State of New York, including in the County of Westchester.  Chiron manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid to Nassau County, including such medications as Tobi®.

36.     Defendant Eli Lilly and Company ("Eli Lilly") is an Indiana corporation whose principal business is the development, manufacture and sale of health care products including

pharmaceuticals.  Eli Lilly's principal place of business is Lilly Corporate Center, Indianapolis, Indiana.  Eli Lilly does extensive business in the State of New York, including in the County of Nassau.  Eli Lilly manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Zyprexa®, and Prozac®.

37.     Defendant Forest Pharmaceuticals Inc. ("Forest") is a Delaware corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals.  Forest's principal place of business is 13600 Shoreline Drive, St. Louis, Missouri.  Forest conducts extensive business in the State of New York, including in the County of Westchester.  Forest manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Celexa®.

38.     Defendant Fujisawa Healthcare, Inc. ("Fujisawa") is a Delaware corporation headquartered at Three Parkway North, Deerfield, Illinois.  Fujisawa is a wholly-owned subsidiary of Fujisawa Pharmaceutical Co., Ltd., a Japanese corporation.  Fujisawa conducts extensive business in the State of New York, including in the County of Nassau.  Fujisawa manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Prograf®.

39.     Defendant Genentech, Inc. ("Genentech") is a Delaware corporation whose principal business is the discovery, development, manufacture, and sale of pharmaceuticals. Genentech's principal place of business is One DNA Way, South San Francisco, California. Genentech conducts extensive business in the State of New York, including in the County of Nassau.  Genentech manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Pulmozyme®.

- 12 -

40.     Defendant Genzyme Corp. ("Genzyme") is a Massachusetts corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals.  Genzyme's principal place of business is at 500 Kendall Street, Cambridge, Massachusetts.  Genzyme conducts extensive business in the State of New York, including in the County of Nassau.  Genzyme manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Renagel®.

41.     The GSK Defendants are as follows:

(a)     Defendant GlaxoSmithKline P.L.C. ("GSK") is a research-based pharmaceutical and healthcare public limited company incorporated under the laws of England and Wales that is engaged in the creation and discovery, development, manufacture and marketing of pharmaceutical products, vaccines, over-the-counter medicines and health-related consumer products.  Its corporate headquarters are located at 980 Great West Road, Bretford, Middlesex, EN, TW8 9, U.K.  GSK's United States operational headquarters are at One Franklin Plaza, Philadelphia, Pennsylvania 19102.  GSK also does business at 5 Moore Drive, P.O. Box 13398, Research Triangle Park, North Carolina.  GSK does extensive business in the State of New York, including in the County of Nassau.

(b)     GSK was created through the merger of defendant Glaxo Wellcome, P.L.C. ("Glaxo") and defendant SmithKlineBeecham P.L.C ("SKB P.L.C.").  Both Glaxo and SKB P.L.C. are now wholly-owned subsidiaries of GSK.

(c)     SKB P.L.C. owned defendant SmithKline Beecham Corporation ("SKB").  SKB is a Pennsylvania corporation with its principal place of business at One Franklin Plaza, Philadelphia, Pennsylvania.  SKB is a highly diversified health care company whose principal

- 13 -

business is the development, manufacture and sale of health care products and services, including pharmaceuticals.

(d)     Glaxo and SKB, at certain times relevant to this complaint, conducted extensive business in the County of Nassau including the sale of the pharmaceuticals that are the subject of the AWP Scheme alleged herein.

(e)     Glaxo is a North Carolina corporation with its principal place of business at 5 Moore Drive, P.O. Box 13398, Research Triangle Park, North Carolina.

(f)     Defendants GSK and Glaxo collectively referred to herein as the "GSK Defendants" manufacture and/or sell prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County.  Glaxo and GSK manufacture and/or sell prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Epivir® and Wellbutrin®, Lamictal®, Serevent®, Paxil®, Augmentin, Avandia®, Ziagen®, Flovent®, Flonase®.

42.     Defendant Immunex Corporation ("Immunex") is a Washington State corporation, with its principal place of business at 51 University Street, Seattle, Washington, that was acquired by Amgen in July 2002, and has been a wholly-owned subsidiary since this merger. Immunex does business in the State of New York, including the County of Nassau.  Immunex manufactures prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including Enbrel® which is marketed and sold by Amgen and Wyeth.

43.     Defendant Ivax Corp. ("Ivax") is a Florida corporation engaged in the research, development, manufacture and marketing of pharmaceutical products.  Its principal place of business is 4400 Biscayne Blvd., Miami, FL.  Ivax is the corporate parent of defendant Ivax Pharmaceuticals, Inc.  Ivax manufactures and sells prescription drugs with false and inflated

- 14 -

AWPs that are paid for by Medicaid in Nassau County, including such medications as Clozapine®.

44.     The Johnson & Johnson Defendants are as follows:

(a)     Defendant Johnson & Johnson ("J&J") is a New Jersey corporation engaged in the manufacture and sale of a broad range of products in the healthcare field. Its principal place of business is One Johnson & Johnson Plaza, New Brunswick, New Jersey. Johnson & Johnson is the corporate parent of defendants Janssen Pharmaceutical, Ortho-McNeil, and Ortho Biotech and is responsible for the marketing and distribution of its subsidiaries' drugs, which have false and inflated AWPs as set forth herein. The four defendants are at times referred to collectively herein as "the J&J Defendants."

(b)     Defendant Janssen Pharmaceutical Products ("Janssen") is a New Jersey limited partnership whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Janssen's principal place of business is 1125 Trenton-Harbourton Road, Titusville, New Jersey. Janssen is subsidiary of defendant Johnson & Johnson. Janssen conducts extensive business in the State of New York, including in the County of Nassau. Janssen manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Risperdal® and Duragesic®.

(c)     Defendant Ortho-McNeil Pharmaceuticals ("Ortho-McNeil") is a highly diversified health care company incorporated in New Jersey whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Ortho-McNeil's principal place of business is1000 U.S. Route 202 South, Raritan, New Jersey. Ortho-McNeil conducts extensive business in the State of New York, including in the County of

- 15 -

Nassau. Ortho-McNeil manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Levaquin®, Topamax® and Ultram®.

        (d)       Defendant Ortho Biotech is a New Jersey Corporation and has been a wholly owned subsidiary of defendant Johnson and Johnson since its formation in 1990. Ortho Biotech's principal place of business is located at 700 U.S. Highway 202, Raritan, New Jersey. Ortho Biotech manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Procrit®.

      45.      Defendant Key Pharmaceuticals, Inc. ("Key") is a New Jersey corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals. Key's principal place of business is at 1011 Morris Ave., U-13-2 2900, Union, New Jersey. Key conducts extensive business in the State of New York, including in the County of Nassau. Key manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as K-Dur®.

      46.      Defendant MedImmune, Inc. ("MedImmune") is a Delaware corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. MedImmune conducts extensive business in the State of New York, including in the County of Nassau. MedImmune's principal place of business is 35 W. Watkins Mill Road, Gaithersburg, Maryland. MedImmune manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Synagis®.

47.     Defendant Merck & Co., Inc. ("Merck") is a New Jersey corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Merck's principal place of business is One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey. Merck conducts extensive business in the State of New York, including in the County of Nassau. Merck manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Crixivan®, Vioxx®, Zocor®, Singulair®, and Fosamax®.

48.     Defendant Mylan Laboratories, Inc. ("Mylan") is a Pennsylvania corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals. Mylan's principal place of business is at 1500 Corporate Drive, Suite 400, Canonsburg, Pennsylvania. Mylan conducts extensive business in the State of New York, including in the County of Nassau. Mylan manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Nifedipine®.

49.     Defendant Novartis Pharmaceuticals Corporation ("Novartis") is a New Jersey Corporation with its main place of business at One Health Plaza, East Hanover, New Jersey. Novartis is a U.S. affiliate of Novartis AG. Novartis is a highly diversified health care corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Novartis conducts extensive business in the State of New York, including in the County of Nassau. Novartis manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Clozaril®.

50.     Defendant Organon Inc., USA ("Organon") is a New Jersey corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals.  Organon's principal place of business is at 375 Mount Pleasant Avenue, West Orange, New Jersey.  Organon conducts extensive business in the State of New York, including in the County of Nassau.  Organon is a wholly owned U.S. subsidiary of Akzo Nobel, a Netherlands corporation.  Organon manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Remeron®.

51.     Defendant Pfizer Inc. ("Pfizer") is a Delaware corporation whose principal business was the development, manufacture and sale of health care products including pharmaceuticals.  Pfizer's principal place of business is 235 East 42nd Street, New York, New York.  Pfizer does extensive business in the State of New York, including in the County of Nassau.  Pfizer manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Ambien®, Lipitor®, Neurontin®, Norvasc®, Zoloft®, Zyrtec®.

52.     Defendant Pharmacia Corporation ("Pharmacia"), which became a wholly owned subsidiary of Pfizer on April 16, 2003, is a Delaware corporation with its principal place of business located at 100 Route 206, North Peapack, New Jersey.  Pharmacia was created through the merger of Defendant Pharmacia and Upjohn, Inc. and Monsanto Company on March 31, 2000.  Pharmacia is a highly diversified health care company whose business includes the manufacture and sale of prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Celebrex® and Xalatan®.

53.     Defendant Purdue Pharma, L.P. ("Purdue") is a pharmaceutical company whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Purdue's principal place of business is One Stamford Forum, 201 Tresser Boulevard, Stamford, Connecticut. Purdue conducts extensive business in the State of New York, including in the County of Suffolk. Purdue manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Oxycontin®.

54.     Defendant Reliant Pharmaceuticals ("Reliant") is based in New Jersey with its principal place of business at 721 Route 202/206 South Bridgewater, NJ. Reliant manufactures and sells drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County such as Axid®.

55.     Defendant Sanof-Synthelabo, Inc. ("Sanof") is a highly diversified health care corporation whose principal business was the development, manufacture and sale of health care products including pharmaceuticals. Sanofi's principal place of business is One Wall Street, New York, New York. Sanofi conducts extensive business in the State of New York, including in the County of Nassau. Sanofi manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Plavix® and Ambien®.

56.     Defendant Schering-Plough Corp. ("Schering") is a highly diversified health care corporation whose principal business was the development, manufacture and sale of health care products including pharmaceuticals. Schering is a New Jersey corporation whose headquarters are located at 2000 Galloping Hill Rd., Kenilworth, New Jersey. Schering-Plough does extensive business in the State of New York, including in the County of Nassau. Schering,

directly or through its subsidiary Warrick, manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County including Claritin® and Albuterol®.

57.     Defendant Serono, Inc. ("Serono") is a Massachusetts corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals. Serono's principal place of business is at One Technology Place, Rockland, Massachusetts. Serono conducts extensive business in the State of New York, including in the County of Nassau. Serono is a wholly owned U.S. subsidiary of Serono International S.A., a Swiss corporation. Serono manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Serostim®.

58.     Defendant Takeda Pharmaceuticals North America, Inc., ("Takeda") is an Illinois corporation whose principal business is the development, manufacture, and sale of health care products and services, including pharmaceuticals. Takeda's principal place of business is at 475 Half Day Road, Lincolnshire, Illinois. Takeda conducts extensive business in the State of New York, including in the County of Nassau. Takeda is a wholly owned U.S. subsidiary of Takeda Pharmaceutical Company Limited, a Japanese corporation. Takeda manufactures and sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Actos®.

59.     Defendant TAP Pharmaceutical Products, Inc. ("TAP") is a highly diversified health care company whose principal business was the development, manufacture, marketing and sale of health care products including pharmaceuticals. TAP is a joint venture between Defendant Abbott and Takeda Chemical Industries, Ltd., of Osaka, Japan. TAP conducts

extensive business in the State of New York, including in the County of Nassau. TAP's principal place of business is 675 North Field Drive, Lake Forest, Illinois. Prior to April, 2000, TAP was known as TAP Holdings, Inc. TAP, together with its subsidiary TAP Pharmaceuticals, Inc., manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Prevacid®.

60.     Defendant Warrick Pharmaceuticals Corporation ("Warrick") is a Delaware corporation with its principal place of business at 12125 Moya Boulevard, Reno, Nevada. Warrick is a wholly-owned subsidiary of Defendant Schering-Plough and has been since its formation in 1993. Schering-Plough and Warrick manufacture and/or sell prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County including such medications as Claritin® and Albuterol®.

61.     Defendant Wyeth is a highly diversified health care corporation whose principal business is the development, manufacture and sale of health care products including pharmaceuticals. Wyeth is a Delaware corporation whose principal place of business is Five Giralda Farms, Madison, New Jersey. Wyeth conducts extensive business in the State of New York, including in the County of Nassau. Wyeth manufactures and/or sells prescription drugs with false and inflated AWPs that are paid for by Medicaid in Nassau County, including such medications as Effexor XR® and Protonix®.

## AS YET UNNAMED CO-CONSPIRATORS AND DOE DEFENDANTS

62.     Various other individuals, partnerships, sole proprietors, business entities, companies, and corporations, presently unknown to Nassau and not named as defendants in this Complaint, participated as co-conspirators in the violations alleged in this Complaint and performed acts and made statements in furtherance thereof. Such unknown persons or entities

acted as co-conspirators and aided, abetted, or participated with Defendants in the commission of the wrongful acts alleged herein or otherwise caused the damages suffered by Nassau.

63.     Except as described herein, Plaintiff is, as yet, ignorant of the true names, capacities, nature and extent of the participation in the course of conduct alleged herein of the persons sued as DOES 1-100 inclusive and, therefore, sues these defendants by such fictitious names.  Nassau will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained.

64.     Defendants unknown at this time may include independent pharmacies, dispensers, and other medical providers who prescribed drugs and received inflated Medicaid reimbursements and engaged in fraudulent billing practices, as well as various other persons, partnerships, sole proprietors, firms, corporations and individuals that may have participated as coconspirators with Defendants in the offenses alleged in this complaint and may have performed acts and made statements in furtherance of the alleged illegal conduct.

65.     Each of the defendants designated herein as a Doe defendant is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court if necessary to amend this Complaint to reflect the true names and capacities of the defendants designated herein as Does when such identities become known.

## IV.     GENERAL ALLEGATIONS

66.     The allegations contained herein apply generally to all defendants.

## A.     THE AWP SYSTEM

67.     There are approximately 65,000 different drug products in the United States market, including different dosages of the same drug.  Prescription drugs are dispensed to patients by or through different types of medical providers, including but not limited to:

(a) physicians who administer the drug in an office, (b) retail pharmacies, (c) home infusion

pharmacies, and (d) other medical providers, including hospitals (collectively referred to

hereinafter as "providers").

68.     This case concerns "Covered Drugs", which are those drugs for which, pursuant

to N.Y. Soc. Serv. Law § 367-a(9), Nassau's Medicaid pharmacy cost reimbursement rate is

pegged to AWP.  In New York's statutory scheme, AWP is also known as "Estimated

Acquisition Cost" or "EAC."

69.     Providers regularly submit claims for reimbursement, seeking payment for the

drugs from Medicare, Medicaid, insurers and patients.  At all times relevant hereto, Defendants

knew that the Medicare/Medicaid programs rely on published AWPs to reimburse providers for

drugs.

70.     AWPs are published for each drug identified by a National Drug Code ("NDC").

There are several pharmaceutical industry compendia that periodically publish, in printed and

electronic media, the AWPs for the tens of thousands of drugs.  Medical Economics Company

Inc., publishes the Drug Topics RedBook (the "RedBook").  First DataBank compiles the

National Drug Datafile.  There is also the American Druggist First DataBank Annual Directory

of Pharmaceuticals and Essential Director of Pharmaceuticals (the "Blue Book") and Medi-

Span's Master Drug Database (collectively referred to herein as the "publishers").

71.     In periodically announcing the AWP for each drug, the publishers publish the

prices that are supplied to them by the Defendants for their respective drugs.  The forward to the

1999 edition of the RedBook stated that "all pricing information is supplied and verified by the

products' manufacturers, and it should be noted that no independent review of those prices for

accuracy is conducted."  A June 1996 Dow Jones news article reported that Phil Southerd, an

associate product manager of the RedBook, stated that it only publishes prices that are faxed directly from the manufacturer. Thus, the AWP generally is not independently determined by the Publishers.[1] Defendants control the prices listed as the AWPs for each drug.

72.     A system that bases its reimbursement rates for drugs on the published AWP is dependent on the honesty of the drug manufacturers.

73.     Extensive and ongoing federal and Congressional investigations, and settlements as described herein, have revealed that numerous pharmaceutical manufacturers (including certain of the defendants named herein and others not yet named) have engaged in a scheme involving the fraudulent reporting of AWPs for certain prescription pharmaceuticals including but not limited to prescription pharmaceuticals covered by Medicaid.

74.     Specifically, Defendants' AWP Scheme involves the reporting by each defendant of inflated Average Wholesale Prices. The fraudulent reporting of Average Wholesale Prices has the effect of materially misrepresenting the actual prices paid to Defendants by providers, in violation of federal and state law.

75.     Defendants know that they can directly control, fabricate and inflate the AWP for their drugs at any time by forwarding to the Publishers a new and higher AWP. Actual transaction price data – the amounts actually paid by providers for drugs – is not readily publicly

---

[1]     As if in acknowledgement of the scheme, the forward to the 2002 RedBook now reads:

> All pricing information in RedBook is published by manufactures, distributors, and other suppliers. While great care has been taken in compiling the data, we conduct no independent review and therefore cannot guarantee that accuracy of these prices. We continue to regard AWP as one guideline in the pricing equation and to encourage the dissemination of fair, accurate prices by all suppliers.

See 2002 Drug Topics® RedBook, Forward (emphasis added).

available, and Defendants keep this information (on which AWPs should have been calculated) highly confidential and secret. This makes it practically impossible to efficiently calculate Medicaid reimbursements based on anything other than AWP. Defendants' concealment of actual price data is one of the many reasons the facts underlying Defendants' fraud are peculiarly within Defendants' control, and why any applicable statute of limitations should be tolled.

76.      Plaintiff alleges upon information and belief that, in many instances, the AWP reported by Defendants bears little or no relationship to the prices actually paid by providers, in direct violation of federal and state law. Rather, the reported AWPs for covered drugs were simply fabricated in furtherance of Defendants' scheme to generate the profit spread to providers, to increase Defendants' profits at the expense of Nassau and other Medicaid payors, and to control the market for their products.

77.      Defendants' pattern of fraudulent conduct in artificially inflating the AWPs for the Covered Drugs (sometimes referred to herein as the "AWP Scheme") directly and foreseeably causes and has caused Nassau to overpay substantially for those drugs, given Nassau's federal and state statutory obligations, of which Defendants have, at all times relevant, been aware.

## B.      THE MEDICAID STATUTORY SCHEME

78.      Medicaid was established by Title XIX of the Federal Social Security Act (the "Act"), 42 U.S.C. 1396, *et seq.* (the "Medicaid Program"). The Act mandates the establishment of minimum health and safety standards which must be met by providers and suppliers, such as Defendants, participating in the Medicaid Program. While participation in Medicaid is voluntary, once a state agrees to participate, as New York has (most recently at New York Social Services Law § 363 *et seq.*, as amended 1998) the state must comply with all federal statutory requirements.

79.     Among other services and supports, the Medicaid Program pays for certain prescription drugs for those who qualify.  Under New York law, N.Y. Social Services Law § 367-a, if such a covered drug is a multiple source prescription drug (generic) or a brand name prescription drug for which no upper limit has been set by the Federal Health Care Financing Administration ("HCFA"), now known as the Centers for Medicare & Medicaid Services ("CMS"), then reimbursement under Medicaid is the lower of the providers' usual and customary charge to the general public or the estimated acquisition cost (EAC), of the drug plus a reasonable dispensing fee.

80.     The dispensers' usual and customary charge is not available anywhere.  As a result, and as a practical matter, reimbursement is based entirely upon EAC.

81.     The EAC is calculated by using the AWP for a drug less a percentage discount. New York's Social Services Law § 367-a(9)(b) expressly defines EAC as follows:

> (i)     if the drug is a multiple source prescription drug for which an upper limit has been set by the federal health care financing administration, an amount equal to the specific upper limit set by such federal agency for the multiple source prescription drug, and
>
> (ii)    if the drug dispensed is a multiple source prescription drug or a brand-name prescription drug for which no specific upper limit has been set by such federal agency, the lower of the estimated acquisition cost of such a drug to pharmacies, or the dispensing pharmacy's usual and customary price charged to the general public.  Estimated acquisition cost means the average wholesale price of a prescription drug based upon the package size dispensed from, as reported by the prescription drug pricing service used by the department less twelve percent thereof, and updated monthly by the department.

The 2002 New York Medicaid Reimbursement Rate is therefore AWP - 12% + $3.50/$4.50 (dispensing fee).  As set forth herein, and confirmed by governmental studies which estimate the average AWP inflation to be in excess of 20%, even this 12% discounted formula results in an overpayment for covered drugs by Medicaid payors such as Nassau.  Prior to May

- 26 -