Exhibit D – Part 4

(h)     At a hearing in the criminal matter, which has an extensive record, United

States District Court Judge William G. Young found:

> This has been a gross abuse of the Medicare/Medicaid repayment
> system, knowing, intelligent.  You have demonstrated, and it's all
> been confirmed in open court, and I don't want anyone forgetting
> about the fact that this company, not under its present
> management, knowingly abused the public trust in a most, and I
> use my words carefully, despicable way.

*United States v. TAP Pharm. Prods., Inc.*, No. CR-01-10354-WGY (D. Mass. Dec. 6, 2001).

358.     At all times relevant herein, TAP, on behalf of the relevant Manufacturer-

Publisher enterprise, has controlled and set, or caused to be set, the reported AWPs for its

pharmaceutical products through direct communications with industry compendia.

## II.     WARRICK

359.     Warrick, a division of Schering-Plough, routinely has reported or caused to be

reported, inflated AWPs, resulting in overcharges to Nassau.  For example, based on Nassau's

investigations, in 2001 Warrick reported false and inflated AWPs for Albuterol®, as shown in

Exhibit A.

360.     Even these investigations do not reveal the full impact of the fraud because

Nassau's estimates do not include Warrick's failures to report Best Price as required by federal

and state rebate statutes.  The full impact of Warrick's failures on Nassau's overcharges will be

revealed through discovery of Warrick's promotional and pricing practices.

361.     When Warrick's failure to report Best Price for its drugs is factored in, the

difference between reported and true AWP will be even greater.  The facts surrounding

Warrick's promotional, discounting and rebate activities, which affect Best Price, are uniquely

within Warrick's control at this time.

362.    Upon information and belief, Warrick has engaged in similar inflationary practices in prior and subsequent years resulting in comparable damage to Nassau for all Covered Drugs.

363.    At all times relevant herein, Warrick, on behalf of the relevant Manufacturer-Publisher enterprise, has controlled and set, or caused to be set, the reported AWPs for its pharmaceutical products through direct communication with industry compendia.

## JJ.   WYETH

364.    Wyeth routinely reported or caused to be reported inflated AWPs, resulting in overcharges to Nassau.  Based on Nassau's investigation, in 2001 Wyeth reported false and inflated AWPs for Protonix® and Effexor®, as shown in Exhibit A.

365.    Upon information and belief, Warrick has engaged in similar inflationary practices in prior and subsequent years resulting in comparable damage to Nassau for all covered drugs.

366.    Even these investigations do not reveal the full impact of the fraud because Nassau's estimates do not include Wyeth's failures to report Best Price as required by federal and state rebate statutes.  The full impact of Wyeth's failures on Nassau's overcharges will be revealed through discovery of Wyeth's promotional and pricing practices.

367.    When Wyeth's failure to report Best Price for its drugs is factored in, the difference between reported and true AWP is even greater.  The facts surrounding Wyeth's promotional, discounting and rebate activities, which affect Best Price, are uniquely within Wyeth's control at this time.

368.    At all times relevant herein, Wyeth, on behalf of the relevant Manufacturer-Publisher enterprise, has controlled and set, or caused to be set, the reported AWPs for its pharmaceutical products through direct communication with industry compendia.

## VII.   DAMAGES TO NASSAU COUNTY

369.   Consistent with nationwide trends, Medicaid costs for Nassau County have been increasing dramatically each year.  Pursuant to N.Y. Soc. Serv. Law § 368-a, Nassau County is mandated to contribute 25% of its Medicaid costs ("Medicaid Local Share Costs").  The County is billed a total weekly share by the State of New York, and has no input into what it is billed. Nassau's 2004 Budget includes $260.6 million for Medicaid Local Share Costs, and it has requested a $296 million Medicaid budget for 2005, a 13.6% increase.  This increase is typical of what other counties in New York State are expecting next year.

370.   One of the primary forces, if not the principal force, behind Nassau's increased Medicaid costs is the cost of prescription drugs, whose prices are inflated pursuant to the AWP scheme alleged herein.  Nassau County's Medicaid pharmacy costs have risen over 220% between 1997 and 2003.  They totaled nearly $17 million in 2001 alone.  Total pharmacy costs for Nassau County from 1997 to 2003 are as follows:

| Year | Total Pharmacy Costs |
|------|---------------------|
| 1997 | $9.7 million |
| 1998 | $11.5 million |
| 1999 | $13.9 million |
| 2000 | $14.8 million |
| 2001 | $16.9 million |
| 2002 | $19.7 million |
| 2003 | $21.7 million |

Source: New York State Department of Health

- 89 -

371.    Applying even the most conservative estimates of improper AWP spread, 20-25% of these costs results in millions of dollars in excessive payments by Nassau for Medicaid pharmacy costs.

372.    Nassau County's experience is consistent with the trend nationwide and statewide.

373.    Expenditures for prescription drugs in the United States is the fastest growing component of health care, and has risen 15% or more per year over the past several years. Spending on prescription drugs now accounts for around 10% of total spending on health care in the United States. The federal government estimates that drug expenditures will rise 13.5% in 2002, an average of 11.7% a year between 2003 and 2007, and an average of 10.3% a year between 2008 and 2011. If these growth rates are sustained, prescription drugs will increase from 10% to nearly 15% of total national health spending by 2011. By comparison, increased spending on physician and hospital services is projected to decline over time, with physician services up 8.2% in 2002, 6.9% per year between 2003 and 2007 and 6% per year between 2008 and 2011. Spending on hospital care is projected to rise 6.7% in 2002, 5.8% per year between 2003 and 2007, and 5.2% per year between 2008 and 2011.

374.    Prescription drug costs under Medicaid are soaring. They increased by an average 18.1% per year from 1997 to 2000, almost three times the rate of increase of all medical services combined. See NIHCM Foundation Report dated June, 2002, "A Primer Generic Drugs, Patents and the Pharmaceutical Marketplace." In 2002, local, state and the federal governments spent $20 billion on outpatient prescription drugs for Medicaid beneficiaries, up from $12.1 billion in 1997. Overall, Medicaid spending on prescription drugs rose from $4.8 billion in 1990 (6.6% of total Medicaid costs) to $21 billion in 2000. (107% of total Medicaid costs). This

increase has been especially dramatic the past three years, with Medicaid pharmacy costs rising nationwide 19% in 2001, 22% in 2000 and 18% in 1999. This contrasts with a 9% increase in total Medicaid expenditures.

375. Thus, this case is brought by Nassau, *inter alia*, to recover the millions of dollars overpaid as a result of Defendants' fraudulent scheme to inflate and maintain the high reimbursement amounts upon which payments made by Nassau for prescription drugs are based. Defendants' misconduct has unjustly enriched the Defendants at the expense of New York's health care system, and ultimately, all New York residents, consumers and taxpayers. In particular, the AWP Scheme directly has cost the County of Nassau millions of dollars in excess Medicaid pharmacy costs.

## VIII.   FRAUDULENT CONCEALMENT

376. Each Defendant concealed its fraudulent conduct from Nassau by controlling the process by which the AWPs for Covered Drugs were inflated and reported falsely to Publishers. Defendants prevented Nassau from knowing what the actual pricing structures for these drugs were, and failed to inform them of the usage of free samples and the provision of other financial incentives to providers and other intermediaries to lower their respective costs for the drugs. Moreover, Defendants' fraudulent conduct was of such a nature as to be self-concealing.

377. Each Defendant closely guarded its pricing structures, promotional practices and sales figures for their Covered Drugs.

378. Each Defendant also concealed its fraudulent conduct by instructing providers and others not to report the prices they paid for the Covered Drugs.

379. Each Defendant worked with and motivated provider and intermediary trade associations to halt any investigations or change in the AWP system.

- 91 -

380.   Each Defendant's efforts to conceal its pricing structures for Covered Drugs is evidence that it knew that its conduct was fraudulent.

381.   Thus, each Defendant concealed that (i) its AWPs were highly-inflated (and were inflated solely to cause Nassau to overpay for the Covered Drugs), (ii) it was manipulating the AWPs of the Covered Drugs, and (iii) the AWPs bore no relationship to the prices paid for, or the pricing structure of, the Covered Drugs and brand name drugs as they were sold to providers and others.

382.   Nassau, unaware of the true facts about the pricing of the Covered Drugs and statutorily obligated to a 25% Medicaid contribution, has paid and continues to pay for them based upon and in reliance on the AWPs.

383.   Nassau was diligent in pursuing an investigation of the claims asserted in this Complaint.  Through no fault of its own, it did not receive inquiry notice nor learn of the factual basis for the claims in this Complaint and the injuries suffered therefrom until recently.

384.   Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Nassau has been kept in ignorance of vital information essential to knowledge of and the pursuit of these claims, without any fault or lack of diligence on its part.  Nassau could not reasonably have discovered the fraudulent nature of the published AWPs.

385.   Defendants were and continue to be under a continuing statutorily-imposed duty to disclose to Nassau the fact that the published AWPs bore and continue to bear no relationship to the prices or pricing structures for Covered Drugs.  Because of their knowing, affirmative, and/or active concealment of the fraudulent nature of the published AWPs, Defendants are estopped from relying on any statutes of limitations.

## IX.    CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF 18 U.S.C.§ 1962(C)
### (AGAINST DEFENDANT DRUG MANUFACTURERS IDENTIFIED HEREIN FOR UNLAWFUL CONDUCT ASSOCIATED WITH MEDICAID COVERED DRUGS)

386.    The County of Nassau realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

387.    This Count, which alleges violations of Section 1962(c) of RICO, 18 U.S.C. § 1962(c), is asserted against the Defendants.

388.    The County of Nassau and Defendants are each "persons" as that term is defined in 18 U.S.C. § 1961(3).

389.    The following publishers of pharmaceutical industry compendia that periodically publish the AWPs, both in printed and electronic media, for various dosages of drugs are each "persons" as that term is defined in 18 U.S.C. 1961(3):  (a) Thomson Medical Economics is a division of Thomson Corporation, a Delaware corporation with its principal place of business located at One Station Place, Stamford, Connecticut, and it is the publisher of the *Drug Topics RedBook* ("Redbook"); (b) First DataBank, Inc., a Missouri corporation, with its principal place of business at 1111 Bayhill Drive, San Bruno, California, and it is the publisher of drug pricing information including, but not limited to, *American Druggist First DataBank Annual Directory of Pharmaceuticals and Essential Directory of Pharmaceuticals*, commonly referred to as the Blue Book; (c) and Facts & Comparisons, Inc., a division of Lippincott Williams & Wilkins, Inc., a Pennsylvania corporation which acquired all drug information reference products formerly published by Medi-Span, Inc. and which currently make available drug pricing information, including, but not limited to, the Medi-Span Master Drug Data Base.  These entities are sometimes collectively referred to herein as "the Publishers."

- 93 -

390.    At all relevant times, in violation of 18 U.S.C. § 1962(c), the Defendants each conducted the affairs of certain association-in-fact enterprises identified herein as the "Manufacturer-Publisher Enterprises." The affairs of each enterprise affected interstate commerce and, through a pattern of racketeering activity, Defendants conducted the affairs of these enterprises.

### The Manufacturer-Publisher Enterprises

391.    For purposes of this claim, certain RICO "enterprises" are associations-in-fact consisting of (a) one of the Publishers that reported AWPs and (b) a Defendant Drug Manufacturer, including its directors, employees and agents. These associations-in-fact are sometimes collectively referred to herein as the "Manufacturer-Publisher Enterprises." Each of the Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating pharmaceutical price information, which all too often includes disseminating false and misleading AWPs which are often supplied by the Manufacturers as WACs and then converted by the Publishers into artificially inflated AWPs, and (b) deriving profits from these activities. Each of the enterprises had a common purpose of perpetuating the use of AWPs as a benchmark for reimbursement in the pharmaceutical industry, generally, and specifically for the drugs of that defendant. The manufacturing Defendants have this as a purpose because without the AWP scheme, they would not be able to push the spread. The publishers agreed to this scheme, because if they did not, the manufacturers could easily revert to the other methods of publishing prices or the publishers would have to independently investigate the AWP at significant expense. The Publishers also have an economic incentive to merely report the AWPs provided to them by the manufacturers, because to do otherwise would require the Publishers to spend money to extensively survey

actual sales prices in the market.  By simply republishing what is submitted to them by the drug

manufacturers, the Publishers save on expenses and consequently reap greater profits.  Thus,

each of the Manufacturer-Publisher Enterprises has a common purpose of perpetuating the use of

AWPs as a benchmark for reimbursement in the pharmaceutical industry.

392.    The AWP scheme is reliant on the cooperation and coordination of both the

Publishers and the Manufacturers.  The Manufacturers' ability to market the spread created by

the publication of false and inflated AWPs depends on the cooperation of the Publishers, through

both misfeasance in converting WACs into AWPs, and nonfeasance in not independently

affirming the accuracy of the AWPs as they had in the past.  The Publishers' entire product was

reliant on the information supplied to them by the Manufacturers, and to protect that supply the

Publishers forewent their duty to report honest AWP was to the Medicare system and the public

at large.  Without both groups participating in the scheme, the AWP scheme could not have

succeeded.

393.    Each of the Manufacturer-Publisher Enterprises has a systemic linkage because

there are contractual relationships, financial ties, and continuing coordination of activities

between the Defendant Drug Manufacturer and the specific Publisher that are its associates.  As

to each of the Manufacturer-Publisher Enterprises, there is a common communication network

by which the Defendant Drug Manufacturer and the specific Publisher functioned as a continuing

unit.  At all relevant times, each of the Manufacturer-Publisher Enterprises was operated by the

specific Defendant Drug Manufacturer for criminal purposes, namely, carrying out the AWP

scheme.

394.    On information and belief, at all relevant times Thomson Medical Economics,

First DataBank, and Facts & Comparisons were each aware of the Defendant Drug

- 95 -

Manufacturers' AWP Scheme, was a knowing and willing participant in that scheme, and reaped profits from that scheme. Each of the publishing manufacturers is aware that the published AWPs are inflated. This awareness comes from the following sources: First, at some point prior to 1992 the Publishers in many instances obtained AWPs themselves by survey. From their surveys of those in the distribution chain, they were and are aware that the reported AWPs were not accurate. Second, as various congressional bodies and government agencies reported on AWP inflation, the Publishers did not change or challenge the self-reported AWPs, but continued blindly accepting the requested AWPs. Third, public documents confirm that when the State of Texas began prosecuting Dey Pharmaceuticals for its AWP practices, and when other states began focusing on Dey, the Publishers stopped accepting Dey's reported AWPs and published a different, far lower AWP. They withdrew from the Day enterprise due to fear that they would be sued if they continued to publish Dey's false AWPs. This prompted a lawsuit by Dey alleging that the Publishers were treating Dey differently than they were treating all other manufacturers.

395.    The foregoing evidences the Publishers' willing participation in the enterprise, their common purpose in the AWP scheme, and their agreement to a structure wherein the manufacturers made decisions as to what AWPs would be reported. This structure was the basis in which each of the enterprises was structured and its affairs conducted.

396.    For purposes of this count, the Manufacturer-Publisher Enterprises are identified as follows:

(a)    *The Abbott Manufacturer-Publisher Enterprises*: The Abbott Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Abbott, and Abbott, including its directors, employees and agents: (1) the Abbott-Thomson Medical Enterprise;

- 96 -

(2) the Abbott-First DataBank Enterprise; and (3) the Abbott-Facts & Comparisons Enterprise. Each of the Abbott Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common of shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs and (b) deriving profits from those activities. Each of the Abbott Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Abbott and Thomson Medical, Abbott and First DataBank, and Abbott and Facts & Comparisons. As to each of these Abbott Manufacturer-Publisher Enterprises, there is a common communication network by which Abbott and Thomson Medical, Abbott and First DataBank, and Abbott and Facts & Comparisons share information on a regular basis. As to each of these Abbott Manufacturer-Publisher Enterprises, Abbott and Thomson Medical, Abbott and First DataBank, and Abbott and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Abbott Manufacturer-Publisher Enterprises was operated and conducted by Abbott for criminal purposes, namely, carrying out the AWP Scheme.

(b)    *The Agouron Manufacturer-Publisher Enterprise*: The Agouron Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Agouron, and Agouron, including its directors, employees and agents: (1) the Agouron-Thomson Medical Enterprise; (2) the Agouron-First DataBank Enterprise; and (3) the Agouron-Facts & Comparisons Enterprise. Each of the Agouron Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise

- 97 -

disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Agouron Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Agouron and Thomson Medical, Agouron and First DataBank, and Agouron and Facts & Comparisons. As to each of these Agouron Manufacturer-Publisher Enterprises, Agouron and Thomson Medical, Agouron and First DataBank, and Agouron and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Agouron Manufacturer-Publisher Enterprises was operated and conducted by Agouron for criminal purposes, namely, carrying out the AWP Scheme.

(c)   *The Amgen Manufacturer Publisher Enterprises*: The Amgen Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Amgen, and Amgen, including its directors, employees and agents: (1) the Amgen-Thomson Medical Enterprise; (2) the Amgen-First DataBank Enterprise; and (3) the Amgen-Facts & Comparisons Enterprise. Each of the Amgen Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Amgen Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Amgen and Thomson Medical, Amgen and First DataBank, and Amgen and Facts & Comparisons. As to each of these Amgen Manufacturer-Publisher Enterprises, Amgen and Thomson Medical, Amgen and First DataBank, and Amgen and Facts & Comparisons functioned as continuing but

separate units.  At all relevant times, each of the Amgen Manufacturer-Publisher Enterprises was operated and conducted by Amgen for criminal purposes, namely, carrying out the AWP Scheme.

        (d)     *The AstraZeneca Manufacturer Publisher Enterprises*:  The AstraZeneca Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by AstraZeneca, and AstraZeneca, including its directors, employees and agents:  (1) the AstraZeneca-Thomson Medical Enterprise; (2) the AstraZeneca-First DataBank Enterprise; and (3) the AstraZeneca-Facts & Comparisons Enterprise.  Each of the AstraZeneca Manufacturer Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the AstraZeneca Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between AstraZeneca and Thomson Medical, AstraZeneca and First DataBank, and AstraZeneca and Facts & Comparisons.  As to each of these AstraZeneca Manufacturer-Publisher Enterprises, AstraZeneca and Thomson Medical, AstraZeneca and First DataBank, and AstraZeneca and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the AstraZeneca Manufacturer Publisher Enterprises was operated and conducted by AstraZeneca for criminal purposes, namely, carrying out the AWP Scheme.

        (e)     *The Aventis Group Manufacturer Publisher Enterprises*:  The Aventis Group Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of

each of the Publishers that reported the AWPs that were provided to them by Aventis Group, and Aventis Group, including its directors, employees and agents: (1) the Aventis Group-Thomson Medical Enterprise; (2) the Aventis Group-First DataBank Enterprise; and (3) the Aventis Group-Facts & Comparisons Enterprise. Each of the Aventis Group Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Aventis Group Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Aventis Group and Thomson Medical, Aventis Group and First DataBank, and Aventis Group and Facts & Comparisons. As to each of these Aventis Group Manufacturer-Publisher Enterprises, Aventis Group and Thomson Medical, Aventis Group and First DataBank, and Aventis Group and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Aventis Group Manufacturer Publisher Enterprises was operated and conducted by Aventis Group for criminal purposes, namely, carrying out the AWP Scheme.

(f)    *The Barr Manufacturer-Publisher Enterprises*: The Barr Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Barr, and Barr, including its directors, employees and agents: (1) the Barr-Thomson Medical Enterprise; (2) the Barr-First DataBank Enterprise; and (3) the Barr-Facts & Comparisons Enterprise. Each of the Barr Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared

purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Barr Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Barr and Thomson Medical, Barr and First DataBank, and Barr and Facts & Comparisons. As to each of these Barr Manufacturer-Publisher Enterprises, Barr and Thomson Medical, Barr and First DataBank, and Barr and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Barr Manufacturer Publisher Enterprises was operated and conducted by Barr for criminal purposes, namely, carrying out the AWP Scheme.

(g)     *The Baxter Manufacturer-Publisher Enterprises*: The Baxter Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Baxter, and Baxter, including its directors, employees and agents: (1) the Baxter-Thomson Medical Enterprise; (2) the Baxter-First DataBank Enterprise; and (3) the Baxter-Facts & Comparisons Enterprise. Each of the Baxter Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Baxter Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Baxter and Thomson Medical, Baxter and First DataBank, and Baxter and Facts & Comparisons. As to each of these Baxter Manufacturer-Publisher Enterprises, Baxter and Thomson Medical, Baxter and First DataBank, and Baxter and Facts & Comparisons functioned as continuing but separate

units.  At all relevant times, each of the Baxter Manufacturer Publisher Enterprises was operated and conducted by Baxter for criminal purposes, namely, carrying out the AWP Scheme.

      (h)    *The Bayer Manufacturer-Publisher Enterprises*:  The Bayer Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Bayer, and Bayer, including its directors, employees and agents: (1) the Bayer-Thomson Medical Enterprise; (2) the Bayer-First DataBank Enterprise; and (3) the Bayer-Facts & Comparisons Enterprise.  Each of the Bayer Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the Bayer Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Bayer and Thomson Medical, Bayer and First DataBank, and Bayer and Facts & Comparisons.  As to each of these Bayer Manufacturer-Publisher Enterprises, Bayer and Thomson Medical, Bayer and First DataBank, and Bayer and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Bayer Manufacturer-Publisher Enterprises was operated and conducted by Bayer for criminal purposes, namely, carrying out the AWP Scheme.

      (i)    *The Berlex Manufacturer-Publisher Enterprises*:  The Berlex Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Berlex, and Berlex, including its directors, employees and agents: (1) the Berlex-Thomson Medical Enterprise; (2) the Berlex-First DataBank Enterprise; and (3) the Berlex-Facts & Comparisons Enterprise.  Each

- 102 -

of the Berlex Manufacturer-Publisher Enterprises is an ongoing and continuing business

organization consisting of both corporations and individuals that are and have been associated

for the common or shared purposes of (a) publishing or otherwise disseminating false and

misleading AWPs, and (b) deriving profits from these activities.  Each of the Berlex

Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual

relationships, financial ties, and continuing coordination of activities between Berlex and

Thomson Medical, Berlex and First DataBank, and Berlex and Facts & Comparisons.  As to each

of these Berlex Manufacturer-Publisher Enterprises, Berlex and Thomson Medical, Berlex and

First DataBank, and Berlex and Facts & Comparisons functioned as continuing but separate

units.  At all relevant times, each of the Berlex Manufacturer-Publisher Enterprises was operated

and conducted by Berlex for criminal purposes, namely, carrying out the AWP Scheme.

      (j)     *The Biogen Manufacturer-Publisher Enterprises*:  The Biogen

Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of

the Publishers that reported the AWPs that were provided to them by Biogen, and Biogen,

including its directors, employees and agents: (1) the Biogen-Thomson Medical Enterprise; (2)

the Biogen-First DataBank Enterprise; and (3) the Biogen-Facts & Comparisons Enterprise.

Each of the Biogen Manufacturer-Publisher Enterprises is an ongoing and continuing business

organization consisting of both corporations and individuals that are and have been associated

for the common or shared purposes of (a) publishing or otherwise disseminating false and

misleading AWPs, and (b) deriving profits from these activities.  Each of the Biogen

Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual

relationships, financial ties, and continuing coordination of activities between Biogen and

Thomson Medical, Biogen and First DataBank, and Biogen and Facts & Comparisons.  As to

- 103 -

each of these Biogen Manufacturer-Publisher Enterprises, Biogen and Thomson Medical, Biogen and First DataBank, and Biogen and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Biogen Manufacturer-Publisher Enterprises was operated and conducted by Biogen for criminal purposes, namely, carrying out the AWP Scheme.

(k)     *The Boehringer Manufacturer-Publisher Enterprises*:  The Boehringer Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Boehringer, and Boehringer, including its directors, employees and agents:  (1) the Boehringer-Thomson Medical Enterprise; (2) the Boehringer-First DataBank Enterprise; and (3) the Boehringer-Facts & Comparisons Enterprise.  Each of the Boehringer Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the Boehringer Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Boehringer and Thomson Medical, Boehringer and First DataBank, and Boehringer and Facts & Comparisons.  As to each of these Boehringer Manufacturer-Publisher Enterprises, Boehringer and Thomson Medical, Boehringer and First DataBank, and Boehringer and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Boehringer Manufacturer Publisher Enterprises was operated and conducted by Boehringer for criminal purposes, namely, carrying out the AWP Scheme.

(l)     *The BMS Manufacturer-Publisher Enterprises*:  The BMS Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers

- 104 -

that reported the AWPs that were provided to them by BMS, and BMS, including its directors, employees and agents: (1) the BMS-Thomson Medical Enterprise; (2) the BMS First DataBank Enterprise; and (3) the BMS-Facts & Comparisons Enterprise. Each of the BMS Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the BMS Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between BMS and Thomson Medical, BMS and First DataBank, and BMS and Facts & Comparisons. As to each of these BMS Manufacturer-Publisher Enterprises, BMS and Thomson Medical, BMS and First DataBank, and BMS and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the BMS Manufacturer-Publisher Enterprises was operated and conducted by BMS for criminal purposes, namely, carrying out the AWP Scheme.

(m)    *The Chiron Manufacturer-Publisher Enterprises*:  The Chiron Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Chiron, and Chiron, including its directors, employees and agents:  (1) the Chiron-Thomson Medical Enterprise; (2) the Chiron-First DataBank Enterprise; and (3) the Chiron-Facts & Comparisons Enterprise. Each of the Chiron Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Chiron

- 105 -

Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Chiron and Thomson Medical, Chiron and First DataBank, and Chiron and Facts & Comparisons. As to each of these Chiron Manufacturer-Publisher Enterprises, Chiron and Thomson Medical, Chiron and First DataBank, and Chiron and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Chiron Manufacturer-Publisher Enterprises was operated and conducted by Chiron for criminal purposes, namely, carrying out the AWP Scheme.

(n)     *The Eli Lilly Manufacturer-Publisher Enterprises*: The Eli Lilly Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Eli Lilly, and Eli Lilly, including its directors, employees and agents: (1) the Eli Lilly-Thomson Medical Enterprise; (2) the Eli Lilly-First DataBank Enterprise; and (3) the Eli Lilly-Facts & Comparisons Enterprise. Each of the Eli Lilly Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Eli Lilly Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Eli Lilly and Thomson Medical, Eli Lilly and First DataBank, and Eli Lilly and Facts & Comparisons. As to each of these Eli Lilly Manufacturer-Publisher Enterprises, Eli Lilly and Thomson Medical, Eli Lilly and First DataBank, and Eli Lilly and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Eli Lilly

- 106 -

Manufacturer-Publisher Enterprises was operated and conducted by Eli Lilly for criminal purposes, namely, carrying out the AWP Scheme.

(o)     *The Forest Manufacturer-Publisher Enterprise*:  The Forest Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Forest, and Forest, including its directors, employees and agents: (1) the Forest-Thomson Medical Enterprise; (2) the Forest-First DataBank Enterprise; and (3) the Forest-Facts & Comparisons Enterprise.  Each of the Forest Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the Forest Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Forest and Thomson Medical, Forest and First DataBank, and Forest and Facts & Comparisons.  As to each of these Forest Manufacturer-Publisher Enterprises, Forest and Thomson Medical, Forest and First DataBank, and Forest and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Forest Manufacturer-Publisher Enterprises was operated and conducted by Forest for criminal purposes, namely, carrying out the AWP Scheme.

(p)     *The Fujisawa Manufacturer-Publisher Enterprises*:  The Fujisawa Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPID AWPs that were provided to them by Fujisawa, and Fujisawa, including its directors, employees and agents:  (1) the Fujisawa-Thomson Medical Enterprise; (2) the Fujisawa-First DataBank Enterprise; and (3) the Fujisawa-Facts &

- 107 -

Comparisons Enterprise. Each of the Fujisawa Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Fujisawa Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Fujisawa and Thomson Medical, Fujisawa and First DataBank, and Fujisawa and Facts & Comparisons. As to each of these Fujisawa Manufacturer-Publisher Enterprises, Fujisawa and Thomson Medical, Fujisawa and First DataBank, and Fujisawa and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Fujisawa Manufacturer-Publisher Enterprises was operated and conducted by Fujisawa for criminal purposes, namely, carrying out the AWP Scheme.

(q)     *The Genentech Manufacturer-Publisher Enterprise*: The Genentech Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Genentech, and Genentech, including its directors, employees and agents: (1) the Genentech-Thomson Medical Enterprise; (2) the Genentech-First DataBank Enterprise; and (3) the Genentech-Facts & Comparisons Enterprise. Each of the Genentech Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Genentech Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between

- 108 -

Genentech and Thomson Medical, Genentech and First DataBank, and Genentech and Facts & Comparisons. As to each o€ these Genentech Manufacturer-Publisher Enterprises, Genentech and Thomson Medical, Genentech and First DataBank, and Genentech and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Genentech Manufacturer-Publisher Enterprises was operated and conducted by Genentech for criminal purposes, namely, carrying out the AWP Scheme.

(r)     *The Genzyme Manufacturer-Publisher Enterprises*: The Genzyme Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Genzyme, and Genzyme, including its directors, employees and agents: (1) the Genzyme-Thomson Medical Enterprise; (2) the Genzyme-First DataBank Enterprise; and (3) the Genzyme-Facts & Comparisons Enterprise. Each of the Genzyme Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Genzyme Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Genzyme and Thomson Medical, Genzyme and First DataBank, and Genzyme and Facts & Comparisons. As to each of these Genzyme Manufacturer-Publisher Enterprises, Genzyme and Thomson Medical, Genzyme and First DataBank, and Genzyme and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Genzyme Manufacturer Publisher Enterprises was operated and conducted by Genzyme for criminal purposes, namely, carrying out the AWP Scheme.

(s)     *The GSK Defendants' Manufacturer-Publisher Enterprises*: The GSK Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by the GSK Defendants, including their directors, employees and agents: (1) the GSK Defendants-Thomson Medical Enterprise; (2) the GSK Defendants-First DataBank Enterprise; and (3) the GSK Defendants-Facts & Comparisons Enterprise.  Each of the GSK Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the GSK Defendants Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between the GSK Defendants and Thomson Medical, the GSK Defendants and First DataBank, and GSK Group and Facts & Comparisons.  As to each of the GSK Defendants Manufacturer-Publisher Enterprises, the GSK Defendants and Thomson Medical, the GSK Defendants and First DataBank, and the GSK Defendants and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the GSK Defendants Manufacturer-Publisher Enterprises was operated and conducted by the GSK Defendants for criminal purposes, namely, carrying out the AWP Scheme.

(t)     *The Ivax Manufacturers-Publisher Enterprises*:  The Ivax Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Ivax, and Ivax, including its directors, employees and agents: (1) the Ivax-Thomson Medical Enterprise; (2) the Ivax-First DataBank Enterprise; and (3) the Ivax-Facts & Comparisons Enterprise.  Each of the Ivax Manufacturer-

Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Ivax Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Ivax and Thomson Medical, Ivax and First DataBank, and Ivax and Facts & Comparisons. As to each of these Ivax Manufacturer-Publisher Enterprises, Ivax and Thomson Medical, Ivax and First DataBank, and Ivax and Facts & Comparisons functioned as continuing but separate units. At all relevant times, each of the Ivax Manufacturer-Publisher Enterprises was operated and conducted by Ivax for criminal purposes, namely, carrying out the AWP Scheme.

(u)     *The Johnson & Johnson Defendants[2] Manufacturer-Publisher Enterprises*: The Johnson & Johnson Defendants Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by the Johnson & Johnson Defendants, and the Johnson & Johnson Defendants, including its directors, employees and agents: (1) the Johnson & Johnson-Thomson Medical Enterprise; (2) the Johnson & Johnson-First DataBank Enterprise; and (3) the Johnson & Johnson-Facts & Comparisons Enterprise. Each of the Johnson & Johnson Manufacturer Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs and (b) deriving profits from these activities. Each of the Johnson & Johnson Manufacturer-Publisher

---

[2]   The Johnson & Johnson Defendants are Johnson & Johnson, Janssen, Ortho-McNeil, and Ortho Biotech.

Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Johnson & Johnson and Thomson Medical, Johnson & Johnson and First DataBank, and Johnson & Johnson and Facts & Comparisons.  As to each of these Johnson & Johnson Defendants Manufacturer-Publisher Enterprises, Johnson & Johnson Defendants and Thomson Medical, Johnson & Johnson and First DataBank, and Johnson & Johnson Defendants and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Johnson & Johnson Defendants Manufacturer-Publisher Enterprises was operated and conducted by the Johnson & Johnson Defendants for criminal purposes, namely, carrying out the AWP Scheme.

      (v)     *The Key Manufacturer-Publisher Enterprises*:  The Key Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Key, and Key, including its directors, employees and agents:  (1) the Key-Thomson Medical Enterprise; (2) the Key-First DataBank Enterprise; and (3) the Key-Facts & Comparisons Enterprise.  Each of the Key Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the Key Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Key and Thomson Medical, Key and First DataBank, and Key and Facts & Comparisons.  As to each of these Key Manufacturer-Publisher Enterprises, Key and Thomson Medical, Key and First DataBank, and Key and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Key Manufacturer Publisher

- 112 -

Enterprises was operated and conducted by Key for criminal purposes, namely, carrying out the AWP Scheme.

(w)       *The Medimmune Manufacturer-Publisher Enterprises*:  The Medimmune Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Medimmune, and Medimmune, including its directors, employees and agents: (1) the Medimmune-Thomson Medical Enterprise; (2) the Medimmune-First DataBank Enterprise; and (3) the Medimmune-Facts & Comparisons Enterprise.  Each of the Medimmune Manufacturer Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the Medimmune Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Medimmune and Thomson Medical, Medimmune and First DataBank, and Medimmune and Facts & Comparisons.  As to each of these Medimmune Manufacturer-Publisher Enterprises, Medimmune and Thomson Medical, Medimmune and First DataBank, and Medimmune and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Medimmune Manufacturer Publisher Enterprises was operated and conducted by Medimmune for criminal purposes, namely, carrying out the AWP Scheme.

(x)       *The Merck Manufacturer-Publisher Enterprises*:  The Merck Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Merck & Co., including its directors, employees and agents: (1) the Merck & Co.-Thomson Medical Enterprise; (2) the

- 113 -

Merck & Co.-First DataBank Enterprise; and (3) the Merck & Co.-Facts & Comparisons Enterprise. Each of the Merck & Co. Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Merck & Co. Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Merck & Co. and Thomson Medical, Merck & Co. and First DataBank, and Merck & Co., Inc. and Facts & Comparisons. As to each of these, Merck & Co. Publisher Enterprises, Merck & Co. and Thomson Medical, Merck & Co. and First DataBank, and Merck & Co. and Facts & Comparisons function as continuing but separate units. At all relevant times, each of the Merck & Co. Publisher Enterprises was operated and conducted by Merck & Co. for criminal purposes, namely, carrying out the AWP Scheme.

(y)     *The Mylan Manufacturer-Publisher Enterprises*: The Mylan Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Mylan, and Mylan, including its directors, employees and agents: (1) the Mylan-Thomson Medical Enterprise; (2) the Mylan-First DataBank Enterprise; and (3) the Mylan-Facts & Comparisons Enterprise. Each of the Mylan Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities. Each of the Mylan Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual

relationships, financial ties, and continuing coordination of activities between Mylan and Thomson Medical, Mylan and First DataBank, and Mylan and Facts & Comparisons.  As to each of these Mylan Manufacturer-Publisher Enterprises, Mylan and Thomson Medical, Mylan and First DataBank, and Mylan and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Mylan Manufacturer Publisher Enterprises was operated and conducted by Mylan for criminal purposes, namely, carrying out the AWP Scheme.

(z)     *The Novartis-Manufacturer Publisher Enterprises*:  The Novartis Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of the Publishers that reported the AWPs that were provided to them by Novartis, and Novartis, including its directors, employees and agents: (1) the Novartis-Thomson Medical Enterprise; (2) the Novartis-First DataBank Enterprise; and (3) the Novartis-Facts & Comparisons Enterprise.  Each of the Novartis Manufacturer-Publisher Enterprises is an ongoing and continuing business organization consisting of both corporations and individuals that are and have been associated for the common or shared purposes of (a) publishing or otherwise disseminating false and misleading AWPs, and (b) deriving profits from these activities.  Each of the Novartis Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual relationships, financial ties, and continuing coordination of activities between Novartis and Thomson Medical, Novartis and First DataBank, and Novartis and Facts & Comparisons.  As to each of these Novartis Manufacturer-Publisher Enterprises, Novartis and Thomson Medical, Novartis and First DataBank, and Novartis and Facts & Comparisons functioned as continuing but separate units.  At all relevant times, each of the Novartis Manufacturer-Publisher Enterprises was operated and conducted by Novartis for criminal purposes, namely, carrying out the AWP Scheme.

- 115 -

(aa) *The Organon Manufacturer-Publisher Enterprises*:  The Organon

Manufacturer-Publisher Enterprises are three separate associations-in-fact consisting of each of

the Publishers that reported the AWPs that were provided to them by Organon, and Organon,

including its directors, employees and agents:  (1) the Organon-Thomson Medical Enterprise; (2)

the Organon-First DataBank Enterprise; and (3) the Organon-Facts & Comparisons Enterprise.

Each of the Organon Manufacturer-Publisher Enterprises is an ongoing and continuing business

organization consisting of both corporations and individuals that are and have been associated

for the common or shared purposes of (a) publishing or otherwise disseminating false and

misleading AWPs, and (b) deriving profits from these activities.  Each of the Organon

Manufacturer-Publisher Enterprises has a systemic linkage because there are contractual

relationships, financial ties, and continuing coordination of activities between Organon and

Thomson Medical, Organon and First DataBank, and Organon and Facts & Comparisons.  As to

each of these Organon Manufacturer-Publisher Enterprises, Organon and Thomson Medical,

Organon and First DataBank, and Organon and Facts & Comparisons functioned as continuing

but separate units.  At all relevant times, each of the Organon Manufacturer Publisher Enterprises

was operated and conducted by Organon for criminal purposes, namely, carrying out the AWP

Scheme.

(bb) *The Pfizer Defendants' Manufacturer-Publisher Enterprises*:  The Pfizer

Defendants' Manufacturer-Publisher Enterprises are three separate associations-in-fact

consisting of each of the Publishers that reported the AWPs that were provided to them by the

Pfizer Defendants, and Pfizer, including its directors, employees and agents: (1) the Pfizer

Defendants-Thomson Medical Enterprise; (2) the Pfizer Defendants-First DataBank Enterprise;

and (3) the Pfizer-Facts & Comparisons Enterprise.  Each of the Pfizer Defendants Manufacturer

- 116 -