# EXHIBIT E



16562990

Oct 4 2007
5:36PM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) |
|  | ) |
| THIS DOCUMENT RELATES TO:<br>*State of California, ex rel. Ven-A-Care v.*<br>*Abbott Laboratories, Inc., et al.*<br>**Case No. 03-cv-11226-PBS** | ) ) ) ) ) ) |

MDL No. 1456
Master File No. 01-12257-PBS

Judge Patti B. Saris

## DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION
## TO PLAINTIFF STATE OF CALIFORNIA

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants[1] request that the State of California (the "State" or "Plaintiff") produce the documents requested herein by making them available for inspection and copying at the law offices of Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, or at such other place and in such manner as may be mutually agreed upon between counsel for the parties, within thirty (30) days from the date of service of these Requests.

### DEFINITIONS

1.     "AAC" or "Actual Acquisition Cost" means the net price (after discounts and rebates) that an individual healthcare provider or pharmacist pays to purchase a prescription drug intended for resale.

2.     "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

3.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests the greatest possible responsive information, and the terms, "each," "any," and "all" shall mean "each and every."

4.     "Assurance letters" refers to correspondence from the State to the federal government representing that its calculation of EAC is its best estimate of the price generally and currently paid by providers for the drug pursuant to 42 CFR § 447.301.

---

[1] For purposes of this Request for Production, "Defendants" shall mean all parties listed as Defendants in the First Amended Complaint in Intervention filed on August 25, 2005. *See* Complaint at ¶¶ 4-21.

5. "AWP" means "Average Wholesale Price" as defined in paragraph 27 of the Complaint. *See* Cal. Code Reg. Title 22, § 51513 *et seq*.

6. "Best Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(c)(1)(C).

7. "Between," when used in regard to the transmittal of information, shall mean any communication by, to, from, among, and for any individual(s) or entity(ies) specified in a particular request.

8. "CDP" means "Cost of the Drug Product" as defined in paragraph 27 of the Complaint. *See* Cal. Code Reg. Title 22, § 51513 *et seq*.

9. "CMS" means the United States Centers for Medicare and Medicaid Services and all its branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, attorneys, commissioners, and anyone else acting on its behalf and its sub-agencies and departments, any of its predecessors, including the Health Care Finance Administration, the Social Rehabilitative Service, and the Department of Health, Education & Welfare.

10. "Communication" means any oral or written exchange of words, thoughts or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by voicemail, telex or by any other process, electric, electronic or otherwise. All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, whether in hardcopy, electronic mail or stored electronically on a computer disk or otherwise, contracts, correspondence, diaries, drafts (initial all and subsequent), forecasts, invoices, letters, logbooks, memoranda, minutes, notes, reports, statements, studies, surveys and any and all non-identical copies thereof.

11. "Complaint" means and refers to the First Amended Complaint In Intervention filed by the Plaintiffs on or around August 25, 2005 in this case, MDL 1456 (Original Central District of California No. 03-CV-2238).

12. "Concern," "concerning" "relating to," or "relate to" means directly or indirectly referring to, relating to, regarding, constituting, comprising, containing, pertaining to, setting forth, summarizing, reflecting, showing, stating, mentioning, describing, explaining, recording, noting, embodying, mentioning, studying, analyzing, evidencing, discussing, evaluating, or contradicting, as required by the context to bring within the scope of the requests in this Request for production of documents any documents that might be deemed outside their scope by another construction.

13. "Congress" means the legislative branch of the U.S. Government, individual members of Congress, and any congressional committees or subcommittees, including, but not limited to the Congressional Budget Office, Senate Finance Committee, the House Committee on Ways and Means, the House Committee on Energy and Commerce, the Subcommittee on Oversight and Investigations of the House Committee on Energy and Commerce, and all other

branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.

14.    "Defendants" means the Defendants identified in the Complaint that have not been dismissed from this action and that have entered unqualified appearances in this action.

15.    "Describe" means to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law and to particularize as to time, place and manner.

16.    "DP," "Direct Price," or "List Price" means any figures so categorized and periodically published by a Publisher.

17.    "Document" shall be used in a comprehensive sense as contemplated by the Federal Rules of Civil Procedure and shall mean any kind of tangible material, whether written, recorded, graphic, microfilmed, microfiched, photographed, computerized, reduced to an electronic or magnetic impulse, or otherwise preserved or rendered, and including, but not limited to:  advertisements; affidavits; agreements; analyses; applications; appointment books; bills; binders; books; books of account; brochures; calendars; charts; checks or other records of payment; communications; computer printouts; computer stores data; conferences or other meetings; contracts; correspondence; data compilations from which information can be derived; diaries; electronic or computer-transmitted messages viewed via monitor; electronic mail; evaluations; facsimiles; files; filings; folders; forms; graphs; indices; interviews; invoices; jottings; letters; lists; manuals; memoranda; microfiche; microfilm; minutes; notations; notebooks; notes; opinions; pamphlets; papers; photocopies; photographs or other visual images; policies; recordings; recordings, summaries or notes of interviews, meetings, telephone conversations or other conversations; record books; records; reports; resumes; schedules; scraps of paper; statements; studies; summaries; tangible things; tapes; telegraphs; telephone logs; telex messages; transcripts; voicemails; website postings; website pages; and work papers; and any and all other written, printed, recorded, taped, typed, duplicated, reproduced or other tangible matter in your possession, custody or control, including all copies which are not identical to the originals, such as those bearing marginal comments, alterations, notes, or other notations not present on the original Document as originally typed, written, or otherwise prepared.

18.    "EAC" means "Estimated Acquisition Cost" as defined in paragraph 27 of the Complaint.  *See* Cal. Code Reg. Title 22, § 51513 *et seq*.

19.    "Federal Agencies" means CMS, Health Care Financing Administration and all its predecessors, including the Social Rehabilitative Service and the Department of Health, Education & Welfare, the United States Department of Health and Human Services, the Office of the Inspector General, or the United States Department of Justice and all their agents, employees, commissioners, and anyone else acting on their behalf.

20.    "FAC" means "Federal Allowable Cost" which is used interchangeably with "FUL" as defined in paragraphs 27 and 31 of the Complaint.  *See* Cal. Code Reg. Title 22, § 51513 *et seq*.

21.   "Findings" means any conclusions or statements of fact or rationale supporting a determination, proposal regulation, or statute concerning reimbursement for any pharmaceutical product, including but not limited to findings pursuant to 42 C.F.R. § 447.333.

22.   "FUL" means "Federal Upper Limit," the ceiling established by the U.S. Government for reimbursement of certain drugs dispensed to Medicaid beneficiaries, and shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332.

23.   "GAO" means "General Accounting Office" and all its employees, agents, attorneys, agencies, committees, or affiliates.

24.   "HCFA" refers to the Health Care Financing Administration, its predecessor and successor agencies and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the foregoing.  "CMS" and "HCFA" mean the same agency and are used interchangeably throughout the requests.

25.   "HCPCS" means the Healthcare Common Procedural Coding System, the medical code set used by CMS that identifies health care procedures, equipment, and supplies for claim submissions purposes.

26.   "HHS" means the United States Department of Health and Human Services, including all its employees, agents, attorneys, commissioners, agencies, committees, or affiliates and anyone else acting on its behalf and its sub-agencies and departments, and any of its predecessors, with respect to drug pricing or reimbursement.

27.   "Identify" or "state" means, with respect to a Document, to state all of the following information, to the extent know:

        a.)      the type of document;

        b.)      the nature of the document (*e.g.*, memorandum, letter, notes, etc.);

        c.)      the date of the document;

        d.)      the author(s), addressee(s), recipient(s), and custodian(s); and

        e.)      the current location of the Document.

If any such Document was, but is no longer, in your possession, custody or control or in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily to others, or (iv) was otherwise disposed of, and in each instance, explain the facts and circumstances surrounding such disposition, identify the Person(s) who authorized such disposition, and state the date or approximate date of such disposition.

28.   "Identify" means, with respect to persons, to state all of the following information, to the extent known:

> a.)   his or her full name, any nickname or alias;
>
> b.)   his or her position and business affiliations at the time referenced to;
>
> c.)   his or her last known position and business affiliation; and
>
> d.)   his or her present residence and business address, and if not known, his or her last known addresses and the last known dates thereof.

Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requests in the identification of that person.

29.   "Identify" means, with respect to any entity other than a natural Person, to state all of the following information, to the extent known:

> a.)   the full name or title thereof, any d/b/a, and its state of incorporation (where applicable);
>
> b.)   the principal place of business thereof;
>
> c.)   the nature of type of entity (*e.g.* corporation, sole proprietorship, partnership, joint venture, etc.), if known; and
>
> d.)   the last known address(es); and
>
> e.)   the telephone number(s).

30.   "Identify" means, with respect to oral communications, to state all of the following information to the extent known:

> a.)   the communication medium, i.e., in person or telephonic;
>
> b.)   the date of each such communication;
>
> c.)   the full name and current business and residence address of those who were present at each communication; and
>
> d.)   the substance and nature of each such communication.

31.   "J Code" refers to the subset of HCPCS code set with a high-order value of "J" that has been used to identify certain drugs and other items.

32.   "MAC" or "Maximum Allowable Cost" shall have the meaning set forth in 42 C.F.R. § 50.504, and shall include, but is not limited to any MAC used by a PBM or Third Party

Payor who provided services to You or to your Participants and Beneficiaries, and shall include any "MAC" which preceded the "FUL" instituted by statute in 1986.

33.   "MAIC" means Maximum Allowable Ingredient Cost as defined in paragraph 27 of the Complaint.  *See* Cal. Code Reg. Title 22, § 51513 *et seq*.

34.   "Manufacturer" shall have the meaning set forth in 42 U.S.C. § 1396r-8.

35.   "Medicaid" means and refers to the jointly funded federal-state health insurance program enacted in 1965 under Title XIX of the Social Security Act to pay for the costs of certain healthcare expenses of eligible Beneficiaries.

36.   "Medicaid Drug Rebate Program" means and refers to the program established by the Omnibus Budget Reconciliation Act of 1990, 42 U.S.C. § 1396r-8, as amended by the Veterans Health Act of 1992, whereby drug manufacturers have national drug rebate agreements with HHS and a pricing agreement with HHS for the Public Health Service Section 340B Drug Pricing Program.

37.   "Medicaid Intermediary" means and refers to any insurance company or other entity that has contracted with any State Medicaid Program to process claims for reimbursement of drugs, develop preferred drug lists, provide guidance on changes to reimbursement methodologies, or provide advice on cost savings, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

38.   "Medicaid Rebate" means the rebate described in 42 U.S.C. § 1396r-8 or any agreement thereunder.

39.   "Medicaid State Plans" shall have the meaning set forth in 42 C.F.R. § 447.333.

40.   "Medi-Cal" means the Medicaid program of the State of California as defined in paragraph 1 of the Complaint.

41.   "MFCU" means individual state Medicaid Fraud Control Unites, including their administrators, staff, employees, agents, consultants, accountants, or attorneys.

42.   "Multiple Source Drug" means a drug marketed or sold by two or more manufacturers or labelers or a drug marketed or sold by the same manufacturer or labeler under two or more different proprietary names or both under a proprietary name and without such a name.

43.   "NAMFCU" means "National Association of Medicaid Fraud Control Units" and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of an of the foregoing.

44.   "National Drug Code" or "NDC" means the unique 11-digit code assigned to each prescription drug product sold in the United States by the U.S. Food and Drug Administration

and adopted by the federal Secretary of Health and Human Services, which identifies the drug manufacturer, product, and package size of each such drug product and used as the standard for reporting drugs and biologics on standard transactions.

45.    "NASMD" means the National Association of State Medicaid Directors.

46.    "OIG" means the Office of the Inspector General of the Department of Health and Human Services.

47.    "OMB" means the Office of Management and Budget and all branches, agencies, committees, or departments, including the administrators, staff, employees, agents, consultants, accountants, or attorneys of any of the forgoing.

48.    "Participant" or "Beneficiary" means a Person for whom you provide health insurance coverage, including policyholders and dependents, or any other health care or health benefits via any program.

49.    "PBM" means pharmacy benefits manager.

50.    "Person" means any natural person or any business, corporation, partnership, proprietorship, association, organization, governmental entity, group of Persons, or other entity of whatever nature.

51.    "Plaintiff," "You," "Your," "State," or "California" refer to the State of California, including but not limited to the California State Senate, California State Assembly, the Office of the Governor, the Office of the Attorney General, the California Department of Health Services (and its fiscal intermediary, Electronic Data Systems ("EDS")), Medi-Cal, and any other administrative bodies, legislative agencies, all successors and predecessors, and officials, agents, employees, commissions, boards, divisions, departments, agencies, instrumentalities, administrators and other Persons or entities acting on their behalf and/or involved in administering, overseeing, or monitoring any State program, including Medicaid, that provides reimbursement for pharmaceutical products.

52.    "Pricing data" means any information relating to the prices of pharmaceuticals drug products, including but not limited to AAC, AMP, AWP, Best Price, Direct Price, FAC, FUL, MAC, MAIC, and WAC.

53.    "Provider" or "Providers" means and refers to any and all persons or entities that render heal care services to any person to whom Plaintiff provides reimbursement for drugs dispensed to a Participant or Beneficiary, including but not limited to pharmacists, physicians, nurses, nurse practitioners, physicians' assistants, specialty pharmacy, nursing home personnel, laboratory technicians, x-ray and other medical equipment technicians, and other hospital or physician-office personnel.

54.    "Publisher," "Publishers," or "Pricing Compendia" means any pharmaceutical data publishing service, including but not limited to Red Book, First Data Bank, Blue Book, and

Medi-Span, their predecessors and successors, and all employees, agents, consultants, accountants, or attorneys of any of the foregoing.

55.    "PSSC" means Pharmacy Services Support Center, which provides assistance to the Health Resources and Services Administration's Pharmacy Affairs Branch ("PAB") in administering the Public Health Service 340B Drug Discount Program, including its administrators, staff, employees, agents, consultants, accountants, or attorneys.

56.    "Reimbursement rate" or "reimbursement methodology" means the formula used to calculate the amount of payment designated by individual California entities, including but not limited to, the Medi-Cal Program, the California Department of Health Care Services, the California Department of Public Health, the California Department of Social Services, the California Department of Mental Health, the University of California, and the California Department of Corrections and Rehabilitation to reimburse healthcare providers for administering or dispensing pharmaceutical drug products to a beneficiary.

57.    "Relator" refers to Ven-A-Care of the Florida Keys, Inc.

58.    "Relevant Claim Period" shall refer to the period of January 1, 1994 through December 31, 2003 or any other time period for which Plaintiffs are seeking damages or penalties.

59.    "Subject Drugs" means and refers to those drugs whose individual NDCs are listed in the Complaint and/or the exhibits attached thereto, unless the parties have reached an agreement to limit discovery to certain drugs, or the court has ordered discovery be limited to certain drugs, then the "Subject Drugs" shall refer to those drugs only.

60.    "Third Party Administrator" means any entity that provides administrative services to you concerning any medical benefit provided to any Participant or Beneficiary.

61.    "Utilization Data" means the information that each state agency is required to report to drug manufacturers pursuant to 42 U.S.C. § 1396r-8(b)(2)(A).

62.    "Ven-A-Care" means Ven-A-Care of the Florida Keys, Inc., a corporation organized under the laws of Florida, and all predecessor or successor corporations, and any of its past or present officials, officers, representatives, agents, assigns, attorneys, employees, divisions, departments, agencies, affiliates, subsidiaries, and all other persons or entities acting or purporting to act on its behalf or under its control.

63.    "Ven-A-Care Qui Tam Complaint" means the *qui tam* complaint filed under seal in this action by Ven-A-Care of the Florida Keys, Inc. on or around July 28, 1998 and any subsequent amended complaints.

64.    "Wholesale Acquisition Cost" or "WAC" means any price represented by any Defendant as a price to any entity that purchases pharmaceutical products from a Manufacturer and resells such pharmaceutical products to any other Person and/or Provider, or any price

periodically published as WAC by a Publisher, or WAC as used by you in the Complaint or any amendment thereto.

## GENERAL INSTRUCTIONS

A.      These Requests are not limited to documents in the possession of the State of California's Medicaid Program, but include documents in the possession of California's executive, administrative, and legislative offices and agencies as defined in Paragraph 51 above, as well as contractors and agents of the State, including but not limited to the fiscal agent for the State's Medical Assistance Programs.  Plaintiffs are requested to inform counsel for Defendants immediately if they are unwilling to coordinate the search for and production of responsive documents to all such agencies, departments, or entities (*i.e.*, please do not wait until the time period for responding to the requests).

B.      Unless otherwise specifically stated, these Requests seek Documents that were prepared during, or relate to, the Relevant Claim Period or that correspond to the events, reports, laws, determinations, or documents referred to in particular requests.  When it is necessary to produce Documents from a prior time to fully respond to a Request, please do so.

C.      Each request for production of documents extends to all documents in your possession, custody, or control or anyone acting on your behalf.  A document is to be deemed in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

D.      If production is requested of a document that is no longer in your possession, custody, or control, your response should state when the document was most recently in your possession, custody, or control, how the document was disposed of, and the identity of the person, if any, presently in possession, custody, or control of such document.  If the document has been destroyed, state the reason for its destruction.

E.      Each request for documents seeks production of the document in its entirety, without abbreviation or redaction, including all attachments or other matters affixed thereto.

F.      If You find the meaning of any term in these requests to be unclear, then You should assume a reasonable meaning, state what the assumed meaning is, and answer the request on the basis of that assumed meaning.

G.      To the extent that You consider any of the following requests for production objectionable, please respond to the remainder of the request, and separately state with specificity the subpart of each request to which you object and all grounds for each objection.

H.      Provide the following information for each document withheld on the grounds of privilege:

a.)     its date;

b.)     its title;

c.)     its author;

d.)     its addressee;

e.)     the identity of each person who received and/or saw the original or any
        copy of such document;

f.)     the specific privilege under which it is withheld;

g.)     its general subject matter;

h.)     its present custodian; and

i.)     a description of it that you contend is adequate to support your contention
        that it is privileged.

I.      All Documents are to be produced as they are kept in the usual course of business,
their relative order in such files, and how such files were maintained. All electronic files should
be produced where possible in electronic form, along with any software needed to access the
information contained in the file and appropriate legends, keys, or other information needed to
access and understand the data.

J.      Pursuant to the Federal Rules of Civil Procedure, these requests are continuing in
nature so as to require, whenever necessary, continuing production and supplementation of
responses between the initial date for production set forth above and the end of trial.

K.      The singular form of any noun includes the plural form of the noun, and vice
versa.

## **REQUESTS FOR DOCUMENTS**

1.      All Documents mentioned in or referred to in preparing Your response to any set
of interrogatories or requests for admission served by Defendant(s) in this case.

2.      All Documents created, maintained, or received by You under 42 U.S.C.
§ 1396a(a)(30), 42 U.S.C. § 1396a(a)(54), 42 C.F.R. § 447.201 *et seq*., or 42 C.F.R. § 447.333.

3.      All Documents constituting or concerning a "state plan for medical assistance"
(42 C.F.R. 430.0 *et seq.*), any proposed or adopted amendments thereto, and any Findings and/or
support related thereto.

4.      All Documents concerning the use of or reimbursement for pharmaceutical
ingredient costs as a means of subsidizing other medical services, procedures, costs, or

equipment, or as a means of ensuring equal access to care for Medicaid Beneficiaries under 42 U.S.C. § 1396a(a)(30).

5.      All Documents constituting or concerning any requests, surveys, or other efforts conducted by You, or on Your behalf, to determine that the State is in compliance with 42 U.S.C. § 1136(a)(a)(30).

6.      All Documents concerning the consideration or setting of dispensing fees as required by 42 C.F.R. § 447.331-333.

7.      All Documents relating to actions taken by You (or not taken) to ensure that pharmacists and physicians are reimbursed at their usual and customary charge under Medicaid if it is lower than the state-determined EAC or the rates set forth in the California Medicaid physician fee schedule as required by 42 C.F.R. § 447.331.

8.      All Documents concerning the California Medicaid Agency's and/or the State of California's assurances, as required by 42 C.F.R. § 447.333, to HCFA and/or CMS that California Medicaid's expenditures for multiple source drugs listed in accordance with 42 C.F.R. § 447.332(a) are in accordance with upper limits specified in 42 C.F.R. § 447.332(b), including, but not limited to, the assurances provided to HCFA/CMS and all documents supporting such assurances.

9.      All Documents concerning any proposed changes to your reimbursement methodologies for prescription drugs under the Medi-Cal program, including but not limited to, the use of (or change to) discounts off benchmark prices such as AWP, Direct Price, or WAC; the use of ASPs, AMPs, or other prices self-reported by pharmaceutical manufacturers; the implementation, use of, change of, or deleting of a MAC, MAIC, FAC, FUL, or the DOJ Medicaid AWPs, or reimbursement based on information supplied by providers regarding their acquisition cost.

10.     All Documents that reflect, discuss, memorialize or otherwise relate to any reimbursement calculations methodologies considered, proposed or adopted by You or any other Person with respect to pharmaceutical products, including but not limited to, discounts off of benchmark prices, such as AWP, Direct Price, WAC, or pricing based on MAC, MAIC, FAC, FUL or any other pricing that was not based on a formula derived from a pricing benchmark such as AWP, Direct Price, or WAC.

11.     All Documents concerning the effects or potential effects various reimbursement amounts or methodologies, including percentage discounts off a benchmark, including AWP, Direct Price, or WAC, adopted, considered or rejected by You have, or were having, on beneficiary access to medicine or medical treatment, including but not limited to, and internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on Your behalf (whether or not performed at Your discretion).

12.     All Documents that reflect, discuss, memorialize or otherwise relate to any increase or decrease in the reimbursement rates under the Medi-Cal program for prescription

drugs that was considered, proposed, or adopted by You, including but not limited to all documents concerning any reasons for such proposed pricing changes.

13.     All Documents that reflect, discuss, memorialize or otherwise relate to any reimbursement calculations methodologies considered, proposed or adopted by You or any other Person with respect to the California Medicaid physician fee schedule and/or J Code or X Code reimbursement for physician-administered drugs.

14.     All Documents that reflect, discuss, memorialize or otherwise relate to any reimbursement calculation methodologies considered, proposed or adopted by Medi-Cal or any other Person with respect to calculating the EAC of a multiple source drug and the period of time during which such methodology was in use, including Your decision to rely or not rely on AWP, WAC, AAC and/or Direct Price.

15.     All Documents relating to actions taken or considered by You to change the rates set forth in the California Medicaid physician fee schedule and/or the reimbursement methodologies under the Medi-Cal program after becoming aware that AWP did not approximate average actual acquisition cost.

16.     All Documents received as public comments relating to any proposed or contemplated change in the reimbursement of prescription drugs under the Medi-Cal program.

17.     All Documents concerning the proposal, modification or promulgation of any regulations or enactment of legislation concerning Your reimbursement for pharmaceutical products, including but not limited to all comments on proposed or final regulations, all drafts of proposed or final regulations, and all memoranda, correspondence, analyses or other documents concerning proposed or final regulations.

18.     All Communications between You and any Medicaid or other Financial Intermediary, including but not limited to EDS, concerning Your reimbursement of pharmaceutical products, providers' acquisition costs, or any allegation contained in your Complaint.

19.     All Documents concerning any executive, judicial, legislative or administrative efforts to alter reimbursement of pharmaceutical products under the Medi-Cal program.

20.     All Documents that reflect, discuss, memorialize or otherwise relate to Your decision to incorporate the use of AWP or Direct Price as a benchmark price for Your reimbursement under the Medi-Cal program.

21.     All Documents relating to Your consideration (whether or not implemented) to use a pricing figure other than AWP or Direct Price as a benchmark price for reimbursement, such as WAC, ASP, AMP or some other alternative pricing figure.

22.     All Documents constituting or concerning communications between You and any Provider or any organization or association acting on behalf of Providers, such as the National

Association of Chain Drug Stores, the American Society of Clinical Oncology, the National Community Pharmacy Association (formerly National Association of Retail Druggists), and the California Pharmacists Association ("CPhA"), concerning:

> a.) reimbursement rates for pharmaceutical drugs under Medicaid;
>
> b.) changes, or proposed changes, in the rate of reimbursement for pharmaceutical drugs under Medicaid; and
>
> c.) actual acquisition costs for pharmaceutical drugs.

23.    All Documents constituting or concerning Communications with physicians, pharmacists, nurses, consulting agencies or any other third party with whom you consulted, or who were involved in any other way in your decision to use AWP or Direct Price as a basis for prescription drug reimbursement under the Medi-Cal program, including but not limited to consulting agreements, contracts, surveys, reports, and meeting minutes.

24.    All Documents relating to internal Communications, including Communications within the California Department of Health Services, the Medi-Cal program and with the Governor's office and legislature, concerning:

> a.) the use of Direct Price or AWP as a basis for reimbursement by the Medi-Cal program;
>
> b.) how Direct Price or AWP is determined or calculated for reimbursement by the Medi-Cal program; and
>
> c.) the use of some figure other than Direct Price and AWP as a basis for reimbursement by the Medi-Cal program.

25.    All Documents constituting or concerning Communications among members of the American Public Human Services Association ("APHSA"), the National Association of State Medicaid Directors ("NASMD"), the National Association of Attorneys General, the Minnesota Multi-state Contracting Alliance for Pharmacy ("MMCAP"), NAMFCU, any state MFCU, and any other multi-state public health association or organization relating to:

> a.) the use of AWP or Direct Price as a basis for reimbursement by the Medi-Cal program;
>
> b.) how AWP or Direct Price is determined or calculated for reimbursement by the Medi-Cal program; and
>
> c.) the use of some figure other than AWP or Direct Price as a basis for reimbursement by the Medi-Cal program.

26.    All Documents relating to Your decision to reimburse physicians for physician-administered drugs under the Medi-Cal program according to a fee schedule, including, but not limited to, all documents relied upon in making Your decision.

27.     All Documents explaining or concerning Your methodology for reimbursement of physician-administered drugs.

28.     All Documents concerning Your calculation of reimbursement amounts for Subject Drugs, including but not limited to guidelines, instructions, provider manuals and the like.

29.     All Documents, from January 1984 to the present, relating to the definition, meaning or calculation of AAC, AWP, DP, EAC, FAC, FUL, MAC, MAIC, Suggested Wholesale Price ("SWP"), or WAC, including, but not limited to, prices used to set FAC, FUL, MAC, or MAIC.

30.     All Documents, from January 1984 to the present, relating to Your knowledge that the AAC for prescription drugs was lower than the Subject Drugs' published AWPs, WACs, or DPs.

31.     All Documents, from January 1984 to the present, concerning any requests, surveys, or other efforts conducted by You (or on Your behalf) or received by you that seek to determine Providers' Actual Acquisition Costs or actual dispensing costs of the Subject Drugs.

32.     All Communications between You and any Provider, including physicians and pharmacies, concerning the amounts paid by physicians and pharmacies to acquire pharmaceutical products covered under the Medi-Cal program.

33.     Any Provider claim forms submitted to You that You allege contain a false claim during any period for which You seek damages.

34.     All Documents concerning any requests by You for any information concerning the prices, costs, or reimbursement for Subject Drugs, including but not limited to contracts, memoranda of understanding, agreements, Provider contracts, or communications concerning the calculation, monitoring, tracking, processing, or payment of claims for Subject Drugs.

35.     All Documents concerning Your comments relating to, your participation or involvement in, or response to any studies, reports, analyses, or papers regarding reimbursement of pharmaceutical products.

36.     All Documents concerning the State's purchase of Subject Drugs by California entities (including but not limited to the California Department of Health Care Services, the California Department of Public Health, the California Department of Social Services, the California Department of Mental Health, the University of California, and the California Department of Corrections and Rehabilitation).

37.     All Documents concerning reimbursement of the Subject drugs by California entities (including but not limited to the California Department of Health Care Services, the California Department of Public Health, the California Department of Social Services, the

California Department of Mental Health, the University of California, and the California Department of Corrections and Rehabilitation).

38.     All Documents concerning the State's retention and use of a PBM in connection with any State run pharmacy program, including without limitation the State's request for proposal, the PBMs' bids, the State's evaluation of the PBMs' bids, the contract with the PBM, and reports created by the PBM for the State.

39.     All Documents (including data) concerning Medicaid Rebates, discounts, or reimbursements for the Subject Drugs, including but not limited to:

> a.)     all documents concerning the unit rebate amount for any of the Subject Drugs;
>
> b.)     all transactional data relating to the Subject Drugs;
>
> c.)     any data dictionaries that explain the data fields produced in response to this Request.
>
> d.)     all communications between You and the federal government concerning utilization and "per-unit" rebate data; and
>
> e.)     all Communications between You and Defendants; and
>
> f.)     all memoranda (internal or external), analyses, or other Documents concerning Medicaid Rebates, discounts, or reimbursement for the Subject Drugs.

40.     All claims data related to the Subject Drugs, including but not limited to:

> a.)     pharmacy claims data;
>
> b.)     medical claims data;
>
> c.)     all service codes data associated with the administration of those Subject Drugs that are physician-administered drugs; and
>
> d.)     drug pricing files.

For each category listed above in this Request, please provide complete claims data with related file layouts, field definitions or valid values for all fields, data dictionaries, manuals, source tables, relationship tables, and business rules.  This data is requested in electronic form used by SQL Server, Microsoft Access, Microsoft Excel, or a delimited file that can be readily uploaded into one of those programs.  The complete claims data requested includes all fields, other than individual patient identifiers, contained on the Provider's claim submission and all additional fields added to process the claim, including:

> a.)     *Identifier*:  claim number, sequence number representing each line item of

the claim, and other identifying information;

b.) *Provider Type*:  pharmacy, outpatient hospital, physician crossover, etc.

c.) *Claim Type*:  any available claim type information including, but not limited to, any information that indicates whether Medi-Cal is the secondary payor including Medicare Crossover Claims;

d.) *Transaction Type*:  all available transaction type information, such as correction, cancellation, etc., identifiers, and source transaction information (*e.g.*, if one claim corrects another claim, information about which claim is being corrected);

e.) *Status*:  all status information, including the payment code indicating whether the claim has been accepted, processed, and/or paid and the type of program the claim will be processed under (*e.g.*, Medicaid, Managed Care, etc.);

f.) *Dates*:  all available dates, including the date service was provided, the date the claim was received, and the date the claim was paid;

g.) *Basis of Payment*: coding within the claim payment transaction which identifies the reference point from which the claim payment amount is determined (*e.g.*, AWP, Direct Price, WAC, acquisition cost, usual & customary, EAC, FUL, FAC, MAC, MAIC, Billed Amount, Charges, etc.);

h.) *Provider*:  all information for all relevant Providers, including number, name, address, contact information, and area/field of practice (where relevant);

i.) *Product*:  all product information, including:

(i) NDC whenever available.  Provide all 11 digits (do not drop leading or trailing 0's) and ideally in three separate fields – labeler (first five digits), product (next four digits) and package size (final two digits);

(ii) Name;

(iii) Type (*e.g.*, single source, multi-source);

(iv) Therapeutic class; and

(v) Related items like diagnosis codes, place of service, and type of service (where relevant).

j.)    *Units*:  all units information with decimals in the correct position, including submitted units, allowed units, and unit of measure (*e.g.*, capsule vs. bottle, milliliter, etc.);

k.)    *Other Data for Payment*:  any other data used to determine the amount of the payment not listed above (*e.g.*, channel of procurement, etc.);

l.)    *Payments*:  all fields related to billed amounts, payment limit amounts, allowed amount, and actual amounts paid along with the bases for the payment, all with decimals in the correct position, including:

(i)    Billed Charges;

(ii)   Basis of payment (e.g. AWP, DP, AAC, billed amount, billed charges, CDP, EAC, FAC, FUL, MAC, MAIC, WAC, etc.);

(iii)  Dispensing fee;

(iv)   Allowed Amount or contracted amount; Any other payment amount (*e.g.*, inventory management fee/profit factor, delivery fee, generic incentive fee, etc.);

(v)    Any amounts used to reduce amount paid (*e.g.*, co-insurance or co-payment or other payments received from other payors and the number, name, and other information associated with such payors, co-insurance, co-payment, deductible); and

(vi)   Amount paid.

m.)    *Comments*:  all other memo or free-form fields (*e.g.*, Item 19 of the HCFA-1500).

41.    All Documents concerning any Communication or negotiation by You, or on Your behalf, with any Defendant concerning reimbursement, rebates, discounts, or pricing of pharmaceutical products.

42.    All Documents concerning Communications between you and any Publisher, concerning drug pricing information.

43.    All Documents from January 1984 to the present concerning communications between You and the U.S. Government (including but not limited to any Federal Agencies or Congress) or any other state government concerning pharmaceutical reimbursement, including but not limited to Communications concerning dispensing fees, physician fee schedules, usual and customary charges, AAC, AWP, AMP, ASP, MAC, MAIC, WAC, Direct Price, EAC, Best Price, FUL, FAC or other prices, costs, reimbursement rates, or other benchmarks for pharmaceutical drug pricing.

44.     All Documents concerning CMS policy or practices for setting, changing or calculating FULs, including understanding of prices used to set FULs.

45.     All Documents concerning any allegation that any Federal Upper Limit for a Subject Drug was inflated.

46.     All Documents concerning any internal or external, governmental or private, formal or informal, reports, assessments, studies, analyses, reviews or audits conducted regarding Your reimbursement of pharmaceutical products.

47.     All Documents from January 1984 to the present relating to communications between you and any Federal Agencies, including but not limited to, the OIG, the General Accounting Office, CMS, the Department of Health and Human Services, and their predecessor agencies, concerning:

> a.)     the pricing of prescription drugs;
>
> b.)     AWP for prescription drugs;
>
> c.)     Direct Price for prescription drugs;
>
> d.)     MAC or MAIC for prescription drugs;
>
> e.)     FUL for prescription drugs;
>
> f.)     EAC for prescription drugs;
>
> g.)     WAC for prescription drugs;
>
> h.)     proposed alternative reimbursement methodologies;
>
> i.)     reimbursement methodologies considered or used by other states or state agencies; and
>
> j.)     the processing of prescription drug reimbursement claims submitted by California healthcare providers.

48.     All Documents concerning the pricing of Subject Drugs prepared by any Federal Agency, including but not limited to, reports, memoranda, or analyses prepared by the United States Department of Justice or HHS-OIG.

49.     All Documents concerning the revised AWP prices provided by the United States Department of Justice and National Association of Medicaid Fraud Control Units in 2000, including but not limited to documents concerning your decision to use or not to use the revised AWP prices in reimbursing pharmaceutical products.

50.    All Documents relating to HCFA's 1988 decision to disapprove Medicaid State Plans that base reimbursement for pharmaceutical products on an undiscounted AWP.

51.    All Documents relating to any of the following:

a.)    1984 HHS-OIG report indicating that on average, pharmacists buy pharmaceutical products at AWP – 15.9%. *See* Department of Health & Human Services, Office of the Inspector General, *Changes to the Medicaid Prescription Drug Program Could Save Millions* (A-06-40216) (Sept. 1984);

b.)    1989 HHS-OIG report indicating that on average, pharmacists buy pharmaceutical products at AWP – 15.5%. *See* Department of Health & Human Services, Office of the Inspector General, *Use of Average Wholesale Prices in Reimbursing Pharmacies Participating in Medicaid and the Medicare Prescription Drug Program* (A-06-89-00037) (Oct. 1989);

c.)    1989 HCFA Medicaid Manual indicating that pharmacies buy pharmaceutical products at AWP-10-20%;

d.)    1996 HHS-OIG report indicating potential for significant Medicare savings. *See* Department of Health & Human Services, Office of the Inspector General, *Appropriateness of Medicare Prescription Drug Allowances* (03-95-00420) (May 1996);

d.)    1996 HHS-OIG report indicating potential for significant Medicare savings. *See* Department of Health & Human Services, Office of the Inspector General, *Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services* (A-06-95-00062) (May 1996), including all documents related to June Gibbs Brown's May 31, 1996 letter to Bruce C. Vladeck (Dkt. No. 2051-2);

e.)    1997 HHS-OIG report indicating that on average, pharmacies buy pharmaceutical products at AWP – 18.3%. *See* Department of Health & Human Services, Office of the Inspector General, *Medicaid Pharmacy – Actual Acquisition Cost of Prescription Drug Products for Brand Name Drugs* (A-06-96-00030) (Apr. 1997);

f.)    1997 HHS-OIG report indicating that on average, pharmacists buy generic drugs at AWP – 42%. See Department of Health & Human Services, Office of Inspector General, *Medicaid Pharmacy – Actual Acquisition Cost of Generic Prescription Drug Products* (A-06-97-00011) (Aug. 1997);

g.) 2001 HHS-OIG report indicating that AWP bears little to no resemblance to actual wholesale prices.  *See* Department of Health & Human Services, Office of the Inspector General, *Medicare Reimbursement of Prescription Drugs* (03-01-00310) (Jan. 2001);

h.) 2001 HHS-OIG report indicating that continued reliance on average wholesale prices as a reimbursement metric is flawed.  *See* Department of Health & Human Services, Office of the Inspector General, *Medicaid's Use of Revised Average Wholesale Prices* (03-01-00010) (Sept. 2001);

i.) 2001 HHS-OIG report indicating that pharmacy actual acquisition cost was an average 21.84% below AWP.  See Department of Health & Human Services, Office of the Inspector General, *Medicaid Pharmacy – Actual Acquisition Cost of Brand Name Prescription Drug Products* (A-06-00-00023) (Aug. 2001);

j.) 2002 HHS-OIG report, Medicaid Pharmacy – Actual Acquisition Cost of Generic Prescription Drug Products (A-06-01-00053, Mar. 2002);

k.) 2002 HHS-OIG report*, Medicaid Pharmacy – Additional Analyses of the Actual Acquisition Cost of Prescription Drug Products* (A-06-02-00041) (Sept. 2002); and

l.) 2003 HHS-OIG report, *Audit of the Medicaid Drug Rebate Program in California* (A-09-03-00038) (Dec. 2003).

52. All Documents relating to Myers and Stauffer LC, Certified Public Accountants, "A Survey of Acquisition Costs of Pharmaceuticals in the State of California" (June 2002) (attached as Exhibit L to the Complaint).

53. All Documents relating to:

a.) Letter from Richard Ochenor, Legal Affairs and regulation, to Jay A. Gould, Chief, Medi-Cal Benefits Section (Jul. 22, 1976) (Dkt. No. 2051-5);

b.) Pharmaceutical Care Network 1987 Buying Group Contract List:  Prices Quoted 4-1-87 to 3-31-88 (Jul. 28, 1987) (Dkt. No. 2051-6); and

c.) Final Statement of Reasons (R-84-87) (Dkt. No. 2051-7).

54. All Documents supporting, refuting, or otherwise concerning Your claims alleged in paragraphs 43 through 45 of your Complaint, that:

a.) Defendants reported false or inflated prices for their products to First DataBank;

b.)     Defendants utilized the spread to seize market share and fraudulently increase their profits; and

c.)     Defendants gave Providers discounts, rebates, off-invoice pricing, free goods, charge backs, volume discounts, credit memos, "consulting" fees, debt forgiveness, educational and promotional grants, and other financial incentives for dispensing Defendants' Subject Drugs.

55.     All Documents in Your or Your attorneys' possession and clearly designate such documents as to the category to which they relate by numbered part and subsection, concerning any knowledge that Your or Your attorneys had on or before July 28, 1998 concerning Your claims alleged in paragraphs 43 through 45 of your Complaint, that:

a.)     Defendants reported false or inflated prices for their products to First DataBank;

b.)     Defendants utilized the spread to seize market share and fraudulently increase their profits; and

c.)     Defendants gave Providers discounts, rebates, off-invoice pricing, free goods, charge backs, volume discounts, credit memos, "consulting" fees, debt forgiveness, educational and promotional grants, and other financial incentives for dispensing Defendants' Subject Drugs.

56.     All Documents that were in Your or Your attorneys' possession, custody or control on or before July 28, 1998, and clearly designate such documents as to the category to which they relate by numbered part and subsection, concerning, referencing or containing information relating to:

a.)     Your discovery of the alleged facts in paragraph 43 of the Complaint;

b.)     Your discovery of the alleged facts in paragraph 44 of the Complaint; and

c.)     Your discovery of the alleged facts in paragraph 45 of the Complaint.

57.     All Documents that were in Your or Your attorneys' possession and clearly designate such documents as to the category to which they relate by numbered part and subsection, concerning any injury you suffered on or before July 28, 1998 that resulted from Your claims alleged in paragraphs 43 through 45 of your Complaint, that:

a.)     Defendants reported false or inflated prices for their products to First DataBank;

b.)     Defendants utilized the spread to seize market share and fraudulently increase their profits; and

c.)     Defendants gave Providers discounts, rebates, off-invoice pricing, free goods, charge backs, volume discounts, credit memos, "consulting" fees,

debt forgiveness, educational and promotional grants, and other financial incentives for dispensing Defendants' Subject Drugs.

58.     All Documents reflecting the actual or estimated amount You paid in reimbursements for Defendants' subject drugs.

59.     All Documents reflecting the actual or estimated losses, damages, or alleged overpayments made by You as a result of Defendants' alleged conduct.

60.     Documents sufficient to Identify the name and address of each Provider eligible to submit claims to You concerning Defendants' Subject Drugs during the relevant time period.

61.     Documents sufficient to Identify each Provider who actually received allegedly "inflated" amounts of reimbursement from You on account of any alleged fraud, scheme, misrepresentation, concealment, negligence, or other culpable conduct by any Defendant.

62.     Documents sufficient to Identify any efforts by You, through an action, administrative proceeding, or otherwise, to recover alleged overpayments from the Providers who allegedly received excessive amounts of reimbursement as a direct or indirect result of alleged inflated AWPs, Direct Prices, or WACs, and, if so, Identify each such action, proceeding or other recovery effort; and if not, state the basis for Your failure to do so.

63.     All Documents concerning any action, administrative or otherwise, considered or taken by You, or on Your behalf, to recover the alleged overpayments from Providers who received alleged overpaid amounts for drug reimbursement.

64.     All Documents relating to the total annual dollar figure and corresponding percentage of Medi-Cal beneficiary co-payments that have been uncollected by California Providers since the inception of each program.

65.     All Documents received by You from third-party sources concerning reimbursement for prescription drugs and/or the pricing of prescription drugs, including but not limited to the California Pharmacists Association, the National Association of State Medicaid Directors, NAMFCU, any state MFCU, APHSA, the National Association of Attorneys General, the American Society of Consultant Pharmacists, and the American Pharmacists Association.

66.     All Documents and data given to you through formal or informal requests from third-parties, including but not limited to retail drug chain stores, wholesalers, providers, and provider groups, concerning the prices, costs, or reimbursement for Subject Drugs.

67.     All Documents concerning any proceedings, including but not limited to lawsuits, administrative or legislative proceedings, or criminal or civil investigations, in which your employees or agents have testified, provided statements, or been interviewed concerning the pricing or reimbursement of pharmaceutical products, or access to care.

68.     Organizational charts or similar Document(s) that name or describe Your employees involved in or in any way responsible for the administration or oversight of your

Medicaid program and any other State pharmacy program, including but not limited to all directors or similar officials.

69.     Documents sufficient to describe Your Document retention or destruction policies, including any changes to, or departures from, such policies, and Documents demonstrating that you have complied with such policies, including but not limited to document preservation notices circulated by You.

70.     Documents sufficient to Identify and describe Your policies regarding the creation or maintenance of backup electronic files, tapes, or storage devices and Your use of external, or removable, data storage devices.

71.     All Communications, including bids and requests for proposals, with outside lawyers to potentially handle this case, and the contracts and terms of engagement of such lawyers.

72.     All Documents relating to California's MAIC program and prices, including but not limited to:

   (a)     California MAIC and/or MAC Lists in effect since 1994;

   (b)     Documents sufficient to show the period during which each California MAIC and/or MAC List was in effect;

   (c)     Documents reflecting the reimbursement rate applicable to each drug on the California MAIC and/or MAC list; and

   (d)     Documents Concerning Your decision to add or delete drugs from the California MAIC and/or MAC list.

   (e)     Documents Concerning Your decision to add, increase, decrease, or leave unchanged a MAC.

73.     The First DataBank Customer Program Specifications in effect during the relevant time period, and all documents concerning such Customer Program Specifications, any data element, algorithm or other information described therein, and file organization layout and specifications, handbooks and manuals.

74.     All Documents sent to or received from the Listservs "MMA_STATES," "PHARMACY_MMA-L," NMPAAtalk@listbot.com, or any other Listserv to which you subscribe or belong that distributes communications Concerning drug pricing, including but not limited to documents sufficient to identify each Person who subscribed or belonged to each such Listserv.

75.     All Documents concerning or comprising Your Pharmacy Manual or Handbook including, but not limited to, related documents and documents considered or relied on when drafting Your Pharmacy Manual or Handbook.

76.     All Documents concerning any action, administrative or otherwise, considered, rejected, or taken by You, to implement any cost savings measures regarding prescription drugs, including without limitation use of managed care organizations, pharmacy benefit mangers, supplemental rebate agreements, prior authorization requirements, participation in MMCAP or other group purchasing organizations.

77.     Documents sufficient to Identify all relevant employees from the entities described in Interrogatories 31 and 32 with whom the State communicated regarding pharmaceutical reimbursement under the Medi-Cal program.

78.     Every subpoena or document request You issued in connection with Your investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

79.     Every response to any subpoena or document request You issued in connection with Your investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

80.     All Documents, transcripts, proceedings (video or audio), or other materials that You received or that were generated in connection with Your investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

81.     Any disclosure statement(s) submitted by Ven-A-Care as required by the California False Claims Act.

Dated:  October 4, 2007

s/ Jeremy P. Cole_____
James R. Daly
Jeremy P. Cole
Tara A. Fumerton
JONES DAY
77 West Wacker Drive
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Toni-Ann Citera
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-8376
Facsimile:  (212) 755-7306

*Counsel for Defendant Abbott Laboratories Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on October 4, 2007 a copy to Lexis-Nexis for posting and notification to all parties.


s/ Jeremy P. Cole_____