# EXHIBIT 24

## AFFIDAVIT

THE STATE OF FLORIDA §
§
COUNTY OF MONROE §

BEFORE ME, the undersigned authority, personally appeared T. Mark Jones, who, being by me duly sworn, deposed as follows:

1. My name is T. Mark Jones. I am above the age of 18, of sound mind, capable of making this affidavit. I have never been convicted of a felony and the facts stated herein are within my personal knowledge and are true and correct.

2. I am employed by the Relator in this action, Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"). I am a founding shareholder of Ven-A-Care, which was created as a Florida corporation in 1987, and have also been an officer and director since shortly after its inception. Ven-A-Care was organized for the purpose of providing infusion, inhalation, injectable and other drugs to patients in their homes and other locations outside of the hospital setting.

3. As a small pharmacy operating in Key West, Florida, Ven-A-Care has had direct and independent access to the actual prices charged to pharmacies in the marketplace for the subject drugs alleged in, and over the period of time covered by, its complaints. Ven-A-Care has had direct and independent access to pricing information such as wholesaler and GPO catalogues and computer programs revealing the prices generally and currently available and paid in the marketplace by customers such as the Relator, but not known to the general public or the Government. Ven-A-Care's industry insider pricing information was NDC specific. Moreover, Ven-A-Care was targeted by, and thus exposed to, marketing practices whereby the defendant drug manufacturers created huge spreads for the drugs at issue through the inflated price reports and then directly and indirectly marketed those spreads to pharmacies such as Ven-A-Care. Ven-A-Care was also aware that the true prices were available to small pharmacies throughout the United States because of the nature of the national marketplace. Accordingly, Ven-A-Care was in a position to know the prices actually charged to the smallest Medicaid providers in the marketplace. It was also in a position to know that drug manufacturers, including the defendants, controlled the reported prices used by Medicaid to set reimbursement rates and caused prices to be reported that were so far above those actually paid in the marketplace that mega-spreads were created as a marketing inducement. Such marketing included, but was not limited to, engaging GPO's and wholesalers to communicate the spread to customers and communicating the spread through direct contracts and related communications with customers.

4. Ven-A-Care carefully studied the reimbursement protocols of the state Medicaid Programs and learned that they were attempting to estimate acquisition costs based on the prices the defendant drug manufacturers caused to be reported, in order to set reimbursement amounts in accordance with the applicable statutes and regulations.

Further, since at least the early 1990's, Ven-A-Care actively assisted such government agencies and organizations as Florida Medicaid and HHS OIG by providing actual pricing and marketing information that was not otherwise available to the government. Ven-A-Care's information was, in part, used by the OIG in preparing the reports alluded to in Defendants' Motion to Dismiss in this case.

5. Ven-A-Care provided its insider price information and information about false reports of prices prior to the initiation of this case.

6. I and the other three principals of Ven-A-Care have been deposed in cases in MDL 1456 and other related state actions on multiple occasions. We have each testified at length about the pricing and marketing information that we provided to the federal and state governments throughout the 1990's. Information we provided on prices of particular drugs, spreads on drugs and various manufacturers' marketing schemes based on their reporting of inflated AWPs and WACs was based on our direct and independent knowledge from Ven-A-Care's operation as an industry insider. We have been told by persons within HCFA/CMS, HHS-OIG, DOJ and the United States Congress that our information was the trigger for much of the government investigation into price reporting in the 1990's and beyond.

Further Affiant Sayeth Not

_____
AFFIANT

Before me, __John S. Spottswood Jr.__, a Notary Public in and for The State of Florida on this day personally appeared T. Mark Jones, personally known to me and proved through submission of Florida Drivers License No. __J520 813 56 1360__ to be the same person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __15__ day of __January__, 2009.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF FLORIDA

JOHN M. SPOTTSWOOD JR.
Commission DD 689107
Expires September 28, 2011
Bonded Thru Troy Fain Insurance 800-385-7019

- 2 -