# Exhibit 345

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al.*
*v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS

**Exhibit to the August 28, 2009 Declaration of Sarah L. Reid in Support**
**of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment**

Page 1

```
 1    IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR
                     LEON COUNTY, FLORIDA
 2

      THE STATE OF FLORIDA            )
 3                                    )
      ex rel.                         )
 4                                    )
                                      )
 5       VEN-A-CARE OF THE            )
         FLORIDA KEYS, INC.,          )
 6       a Florida Corporation, by    )
         and through its principal    )
 7       officers and directors,      )
         ZACHARY T. BENTLEY and       )
 8       T. MARK JONES,               )
                                      )
 9                   Plaintiffs,      )
                                      )
10    VS.                             )   CIVIL ACTION NO.
                                      )   98-3032A
11    BOEHRINGER INGELHEIM            )
      CORPORATION; DEY, INC.; DEY,    )
12    L.P.; EMD PHARMACEUTICALS,      )
      INC.; LIPHA, S.A.; MERCK,       )
13    KGaA; MERCK-LIPHA, S.A.;        )
      SCHERING CORPORATION;           )
14    SCHERING-PLOUGH CORPORATION;    )
      ROXANE LABORATORIES, INC.;      )
15    and WARRICK PHARMACEUTICALS     )
      CORPORATION,                    )
16                                    )
                 Defendants.          )
17

18                    *-*-*-*-*

19

20

21        VIDEOTAPED DEPOSITION OF BRUCE TIPTON

22

23

24

25
```

1    that?

2        A.    Yes.

3        Q.    And the spread, as I understand it, is the

4    difference between two price points?

5        A.    Yes.

6        Q.    Okay.  And in the case of your customers, you

7    would discuss the difference in price points from time

8    to time?

9        A.    Yes.

10       Q.    Okay.  And those price points might be WAC,

11   they might be AWP and they might be a contract offered

12   price, right?

13       A.    Yes.

14       Q.    And those price points were all prices known

15   to your customers, right?

16       A.    Yes.

17       Q.    They could get your WAC, they could get your

18   AWP from the Redbook, the Bluebook, wherever, right?

19       A.    Right.

20       Q.    And in your experience when you talked to

21   customers, did they also in general have an awareness

22   of the AWP and the WAC of your competitors?

23       A.    Yes.

24       Q.    Did they tell you that?

25       A.    Absolutely.

1      Q.    And they also knew what your competitors were

2    offering them, right?

3      A.    Right.

4      Q.    So when you discussed the spread with

5    customers, no matter how you characterize the

6    discussion, you're not in a position where you're

7    telling your customers anything they don't already

8    know, are you?

9      A.    No.

10               MR. AZORSKY:  Objection to form.

11               MS. MILLER:  Objection to form.

12      Q.    (BY MR. MERKL)  No, right?

13      A.    No.

14      Q.    Okay.  Now, let's take a look at this

15    document that they were going through, the comparison

16    worksheet, for a minute.  I guess I've lost it.  You

17    got one?

18      A.    Well, there's one in the book, I know, and

19    there's one floating around.

20      Q.    Look at mine.  Exhibit 36, Florida.  If you

21    take a look at the blanks where you would fill

22    information in that form.

23      A.    Yes.

24      Q.    There is nothing that would go in any of

25    those blanks that the customer doesn't already know,

1    is there?

2                    MR. AZORSKY:   Objection to form.

3                    MS. MILLER:   Objection to form.

4       Q.    (BY MR. MERKL)   Take a look at that.   If one

5    of your salesmen sat down and used that document the

6    way that document says it should be used, is there any

7    information that would go on that form that to your

8    knowledge based on your dealings with the Dey

9    customers you worked with that the customer wouldn't

10   have available to 'em?

11      A.    That's correct.

12                   MR. AZORSKY:   Objection to form.

13                   MS. MILLER:   Objection to form.

14      A.    That's correct.

15      Q.    (BY MR. MERKL)   Okay.   So every box in there

16   the customer could fill out themselves if they wanted

17   to do this form, right?

18                   MR. AZORSKY:   Objection to form.

19                   MS. MILLER:   Objection to the form.

20      A.    Yes.

21      Q.    (BY MR. MERKL)   In fact, one of the things

22   the form suggests -- one of the things we saw earlier

23   was there was a suggestion you might be able to leave

24   the form with the customers, right?

25      A.    Right.

1      Q.    Okay.  So when Dey sits down and reviews that

2   document with the customer, they're not telling the

3   customer anything they don't already know, are they?

4                 MR. AZORSKY:  Objection to form.

5                 MS. MILLER:  Objection to form.

6      A.    The customer should be able to figure it all

7   out with the information that they have.

8      Q.    (BY MR. MERKL)  Right.  And, again, these

9   forms, you never sat in with a customer yourself and

10   actually went through one of these and you never saw

11   anyone do one, right?

12      A.    I did not.

13      Q.    Did you ever see one that was for a drug

14   other than Albuterol?

15      A.    No.

16      Q.    Okay.  Now, this form here talks about AWP,

17   right?

18      A.    Yes.

19      Q.    The whole form is based on reimbursement off

20   AWP, right?

21      A.    Right.

22      Q.    And it assumes that the person for whom the

23   form is being prepared is going to get compensated

24   based on what the AWP of Dey is as opposed to the AWP

25   of a competitor, right?

Page 280

1                    MR. AZORSKY:  Objection to form.

2         Q.    (BY MR. MERKL)  What were some of those

3    attributes?

4         A.    Well, they would be ease of -- ease of

5    delivery of the product, wastage, how effective the

6    product was, were there -- are there preservatives

7    that are included in the drug that would interact with

8    the patient's ability to -- to metabolize the drug and

9    how it was packaged and on and on and on.

10        Q.    Now, wastage means, you know, you could pour

11   it out while you're mixing it up from the bottle,

12   right?

13        A.    Right.

14        Q.    Also, when you're using a bottle and

15   combining the saline, there's a certain amount of

16   imprecision there, right?

17        A.    Absolutely.

18        Q.    And that's avoided by using the Dey packaged

19   product, right?

20        A.    Right.

21                   MS. MILLER:  Objection to form.

22        Q.    (BY MR. MERKL)  The Dey packaged product also

23   was a more expensive product to create and package

24   than a bottled product, too, isn't it?

25        A.    I don't know.

1      A.   That's correct.

2      Q.   Okay.  And this whole existence of spread,

3  it's not something that Dey or indeed any other drug

4  company came up with, right?

5      A.   Correct.

6           MR. AZORSKY:  Objection to form.

7           MS. MILLER:  Objection to the form.

8      Q.   (BY MR. MERKL)  Who created the spread?

9      A.   The, you know, the spread, I believe, was

10  created by a government agency for reimbursement way

11  back when.  I don't know anything beyond that.

12     Q.   Okay.  Now, Dey reports different prices,

13  right?

14     A.   It's my understanding that Dey would report

15  AWP -- did report AWP and WAC --

16     Q.   Okay.

17     A.   -- to data services companies.

18     Q.   Those are the two you know about?

19     A.   Yeah.

20     Q.   And in your knowledge -- to your knowledge

21  the AWP is higher than the WAC, right?

22     A.   Yes.

23     Q.   In fact, over time it was much higher, right?

24     A.   Yes.

25     Q.   20, $30 higher in some cases?