# Exhibit 380

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS

Exhibit to the August 28, 2009 Declaration of Sarah L. Reid in Support of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR
LEON COUNTY, FLORIDA

| | | |
|---|---|---|
| THE STATE OF FLORIDA )<br>ex. rel. )<br>    VEN-A-CARE OF THE FLORIDA )<br>    KEYS, INC., a Florida Corporation, )<br>    By and through its principal officers )<br>    And directors, ZACHARY T. )<br>    BENTLEY and T. MARK JONES, )<br>        Plaintiffs, )<br>         )<br>VS. )<br>         )<br>BOEHRINGER INGELHEIM )<br>Corporation; DEY, INC.; DEY, L.P.; EMD )<br>PHARMACEUTICALS, INC.; LIPHA, )<br>S.A.; MERCK KGaA; MERCK-LIPHA, )<br>S.A.; SCHERING Corporation; SCHERING )<br>-PLOUGH CORPORATION; ROXANE )<br>LABORATORIES, INC.; and WARRICK )<br>PHARMACEUTICALS Corporation, )<br>        Defendants. ) | | CIVIL ACTION NO. 98-3032A |

VIDEOTAPED DEPOSITION OF

**TODD CHRISTOPHER GALLES**

March 1, 2006

VOLUME 2

# ORIGINAL

**FREDERICKS-CARROLL REPORTING & LITIGATION SERVICES, INC.**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7719 Wood Hollow Drive ❖ Suite 156 ❖ Austin, Texas 78731 | ❖ | (800) 234-3376 | ❖ | (512)477-9911 | ❖ | (512) 345-1417 | Fax |
| 9 Greenway Plaza ❖ Suite 3112 ❖ Houston, TX 77046 | ❖ | (800) 234-3376 | ❖ | (713) 572-8897 | ❖ | (512) 345-1417 | Fax |
| 909 N.E. Loop 410 ❖ Suite 810 ❖ San Antonio, TX 78209 | ❖ | (800) 767-9161 | ❖ | (210) 222-9161 | ❖ | (210) 225-1476 | Fax |

1  A. Yes.

2  Q. (BY MR. ANDERSON) And was -- was it your
3  understanding that Mr. Robertson and others had -- in
4  the sales force had come up with the idea of the
5  reimbursement comparison worksheet to help them sell
6  Dey unit-dose product?

7  MS. GIULIANA: Objection to the form.

8  A. Yes.

9  Q. (BY MR. ANDERSON) And that was based on
10 their interactions and feedback from their customers
11 out in the field, correct?

12 MS. GIULIANA: Objection to the form.

13 MR. McDONALD: Objection, leading.

14 A. I'm not really sure, you know, what it was
15 based on. I'm sure it was based on many things, but
16 definitely their work in the field.

17 Q. (BY MR. ANDERSON) With customers?

18 A. With customers.

19 Q. All right. Do you remember roughly when it
20 was that you first created the reimbursement
21 comparison worksheet?

22 MS. GIULIANA: Objection to the form.

23 A. I remember creating it. It was probably
24 after one of the national sales meetings. I think
25 sales had presented some information on it. And then

10:35
10:35
10:35
10:35
10:36

1  I was assigned to work with Steve to come up with a
2  workable format and create a tool for the sales force
3  to use.
4      Q.   (BY MR. ANDERSON)   If you could, look at
5  what's been marked as Exhibit 37.
6           MS. GIULIANA:   Do you have any copies of
7  that, Jarrett?
8           MR. ANDERSON:   I don't.
9      A.   Oh, it's in that one?
10          MR. ANDERSON:   For the record, Exhibit
11 37 is Bates labeled DL-TX-0170961 consecutively
12 through 0170972.
13     A.   (Witness reviewing document).   Okay.  Well,
14 I'm pretty familiar with this, but since it's so long,
15 I might have to refer back to this depending on your
16 questions.
17     Q.   (BY MR. ANDERSON)   Oh, that's fine.  That's
18 fine.  Do you recognize the first page of Exhibit 37?
19     A.   Yes.
20     Q.   And was this a document that you signed in
21 the ordinary course of business at Dey Labs?
22     A.   Yes.  I signed it into draft copy review and
23 then I signed it after final copy at -- during the
24 final copy approval.
25     Q.   And you're referencing there your signature

10:36
10:37
10:40
10:40
10:40

```
 1              MS. GIULIANA:  Objection to the form.
 2   Asked and answered.
 3              MR. ANDERSON:  I'll rephrase.
 4        Q.   (BY MR. ANDERSON)  Did you request any
 5   attorney at Kelley, Drye & Warren to represent you?     12:39
 6              MS. GIULIANA:  Objection to the form,
 7   asked and answered.
 8        A.   Yes.
 9        Q.   (BY MR. ANDERSON)  And did you do that before
10   you were informed that they would be representing you?  12:39
11              MS. GIULIANA:  Objection to the form,
12   asked and answered.
13        A.   No.
14        Q.   (BY MR. ANDERSON)  All right.  Now let's go
15   back to the Exhibit 37 that we were talking about       12:39
16   before the break.  And specifically that page DL-TX --
17   you may already be there, Mr. Galles.  The one with
18   your handwriting on it across the -- running
19   diagonally.  Are you?
20        A.   971?                                          12:39
21        Q.   Yes.  Page DL --
22        A.   Yes.
23        Q.   -- TX-170971.  Now, you do remember that
24   Mr. Mozak told you to no longer use this reimbursement
25   comparison worksheet, right?                            12:40
```

1   MS. GIULIANA: Objection to the form.
2   A.  Well, this -- seeing this refreshed my
3   memory, yes.
4   Q.  (BY MR. ANDERSON) And he wasn't just
5   directing that to you personally, but he was saying,
6   look, Dey Labs will no longer be using the
7   reimbursement comparison worksheet, correct?
8   MS. GIULIANA: Objection to the form.
9   A.  I would interpret it that way.
10  Q.  (BY MR. ANDERSON) And before the break you
11  testified that you understood the reason that he was
12  saying that Dey would no longer utilize the
13  reimbursement comparison worksheet was because, in
14  your words, there were sensitivities with the
15  government, correct?
16  MS. GIULIANA: Objection to the form.
17  Mischaracterizes his testimony.
18  A.  I'm not sure at what point in time I had that
19  context given to this. And only kind of through this
20  procedure did I see that this is in '99, so it filled
21  in a piece of the puzzle for me, so...
22  Q.  (BY MR. ANDERSON) Did you review any part of
23  Exhibit 37 with Ms. Giuliana before your deposition?
24  MS. GIULIANA: Objection to the form.
25  A.  Yes.

12:40
12:40
12:40
12:41
12:41

```
 1      A.    Yeah.
 2      Q.    Okay.  Did you create Exhibit 461, which is
 3  titled "Reimbursement Comparison Worksheet"?
 4      A.    Yes.
 5      Q.    Did you create a reimbursement comparison
 6  worksheet for any of Dey's other generic drugs?
 7      A.    No.
 8      Q.    Did you create a reimbursement comparison
 9  worksheet for Dey's Albuterol MDI product?
10      A.    No.
11      Q.    Did you create a reimbursement comparison
12  worksheet for Dey's generic Albuterol syrup?
13      A.    No.
14      Q.    Did you create a reimbursement comparison
15  worksheet for Dey's generic Ipratropium product?
16      A.    No.
17      Q.    Did you create a reimbursement comparison
18  worksheet for Dey's generic cromolyn product?
19      A.    No.
20      Q.    Did you create a reimbursement comparison
21  worksheet for Dey's generic Acetylcysteine product?
22      A.    No.
23      Q.    Did you create a reimbursement comparison
24  worksheet for Dey's generic Metaproterenol product?
25      A.    No.
```

1  Q.   Did you create a reimbursement comparison
2  worksheet for Dey's sodium chloride product?
3  A.   No.
4  Q.   When you -- when you created Exhibit 461,
5  which is titled "Reimbursement Comparison Worksheet,"
6  did you think you were doing anything wrong?
7            MR. ANDERSON:  Objection, form.
8  Objection, leading.
9  A.   No.
10 Q.   (BY MS. GIULIANA)  At some point in time did
11 you meet with attorneys from the Texas attorney
12 general's office?
13 A.   Yes.
14 Q.   Did the attorneys from the Texas attorney
15 general's office show you Exhibit 461 during any of
16 your meetings?
17 A.   Yes.
18 Q.   Did the attorneys from the Texas attorney
19 general's office tell you that you did anything wrong
20 in creating Exhibit 461?
21 A.   No.
22 Q.   During any point -- strike that.
23           At any point during your meetings with
24 the attorneys from the Texas attorney general's office
25 did they advise you that you should consult a lawyer

01:57
01:57
01:57
01:58
01:58

1  with respect to any of the conducts -- with respect --
2  let me start over again.
3           At any point during your meetings with
4  attorneys from the Texas attorney general's office did
5  they advise you that you should consult a lawyer with
6  respect to any of your conduct while employed at Dey?
7       A.   No.
8       Q.   Did you ever go on sales visits to customers
9  with Dey sales representatives?
10      A.   Yes.
11      Q.   Did you ever use Exhibit 461 with a customer?
12      A.   No.
13           MR. ANDERSON:  Objection, form.
14      Q.   (BY MS. GIULIANA)  Did you ever see a Dey
15  salesperson use Exhibit 461 with a customer?
16           MR. ANDERSON:  Objection, form.
17      A.   No.
18      Q.   (BY MS. GIULIANA)  Did you ever use a
19  reimbursement comparison worksheet with a customer?
20      A.   No.
21      Q.   Did you ever see a Dey salesperson use a
22  reimbursement comparison worksheet with a customer?
23      A.   No.
24      Q.   On any of the customer visits that you went
25  on with Dey sales representatives did you ever see a

```
 1  reimbursement comparison worksheet presented to a
 2  customer?
 3       A.   No.
 4       Q.   Okay.  And if you could just look at the
 5  worksheet, please.  Does this worksheet, and that's                01:59
 6  Exhibit 461, does Exhibit 461 compare the
 7  reimbursement that a customer would receive if it
 8  dispensed Dey's unit-dose Albuterol as compared to a
 9  competitor's unit-dose Albuterol?
10       A.   It compares Dey unit-dose to Albuterol --              02:00
11  Albuterol multi-dose bottles.
12       Q.   Okay.  So it doesn't compare Dey unit-dose
13  to -- does it -- strike that.
14            Does it compare a Dey unit-dose
15  Albuterol product to a competitor's unit-dose                     02:00
16  Albuterol product?
17       A.   No.
18       Q.   Do you think that there's anything wrong with
19  salespeople comparing the spreads of different
20  products?                                                         02:01
21            MR. ANDERSON:  Objection, leading.
22       A.   No.
23       Q.   (BY MS. GIULIANA)  In what customer -- now
24  you can put that exhibit aside.  I'm just going to ask
25  you some questions without reference to any documents.            02:01
```