# Exhibit 407

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al.*
*v. Dey, Inc., et al*., **Civil Action No. 05-11084-PBS**

**Exhibit to the August 28, 2009 Declaration of Sarah L. Reid in Support
of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment**

Page 358

1              UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MASSACHUSETTS

3    In re:  PHARMACEUTICAL INDUSTRY      )

4    AVERAGE WHOLESALE PRICE              ) MDL No. 1456

5    LITIGATION                           )

6    _____ ) Civil Action No.

7                                         ) 01-12257-PBS

8    THIS DOCUMENT RELATES TO:            )

9    United States of America, ex rel.  )

10   Ven-A-Care of the Florida Keys,     )

11   Inc., v. Abbott Laboratories, Inc.,)

12   CIVIL ACTION NO. 06-CV-11337-PBS    )

13

14              VIDEOTAPE DEPOSITION OF

15             MATTHEW PERRI, III, Ph.D.

16                   VOLUME II

17                   Jones Day

18            1420 Peachtree Street, N.E.

19                   Suite 800

20             Atlanta, Georgia  30309

21

22            Taken on February 20, 2009

Perri, III, Ph.D., Matthew - Vol. II                                February 20, 2009
                              Atlanta, GA

Page 383

1         Q.   And do you know that there were changes

2    in the actual sales force itself?

3         A.   By that --

4              MR. AZORSKY:   Objection to form.

5    BY MS. REID:

6         Q.   I mean, the people that were out in the

7    field, the sales reps who were actually making

8    the calls?

9         A.   I know there were people who came and

10   -- and left.  I know there were new hires.  I

11   know there were promotions.  There were a

12   redistribution of duties, yes.

13        Q.   You rely very heavily on -- on the

14   launch documents?

15        A.   Excuse me?

16        Q.   The launch documents in your report --

17        A.   Yes.

18        Q.   -- for Albuterol, Cromolyn Sodium and

19   Ipratropium Bromide?

20        A.   Yes.

21        Q.   Did you make an examination of the

22   effectiveness of any marketing plan associated

Perri, III, Ph.D., Matthew - Vol. II                                February 20, 2009
Atlanta, GA

Page 384

1    with those launches?

2            MR. FAUCI:  Objection to form.

3            MR. AZORSKY:  Objection to form.

4    BY MS. REID:

5        Q.   And by effectiveness, I mean, did they

6    produce sales?

7            MR. AZORSKY:  Objection to form.

8        A.   I did not do any analysis of that, no.

9    BY MS. REID:

10       Q.   Did you do any analysis of whether and

11   to what extent the behavior that you have

12   observed of marketing the spread led to any sales

13   for Dey?

14           MR. FAUCI:  Objection to form.

15       A.   Yes, I think so.

16   BY MS. REID:

17       Q.   How do you know that?

18       A.   Well, if you look at the -- the -- the

19   whole Florida WAC increase.  I mean, that -- it's

20   very clear from the record that sales were very

21   positively impacted by that ordeal.

22       Q.   That's one specific instance.  Is there

Perri, III, Ph.D., Matthew - Vol. II                                    February 20, 2009
Atlanta, GA

Page 457

1    to look at whether the -- Dey's marketing

2    strategy led to any sales?

3              MR. FAUCI:  Objection to form.

4              MR. AZORSKY:  Objection to form.

5         A.   The questions that were posed to me did

6    not include any assessment of Dey's success using

7    or applying their marketing plans.  It was simply

8    to evaluate what plan -- what behaviors those

9    plans set forth, what behavior the company

10   engaged in, and what the significance of those

11   behaviors was from a marketing perspective.

12   BY MS. REID:

13        Q.   Just a second.

14             Are you in any position to opine on

15   whether Dey made any sales -- actually, made any

16   sales as a result of the activity that you've

17   defined as marketing the spread?

18             MR. FAUCI:  Objection to form.

19        A.   I think I need to ask you to clarify

20   the made any sales.  I -- I think you've

21   distinguished for me earlier today that a sales

22   call with a customer is not technically a sale

Perri, III, Ph.D., Matthew - Vol. II                                    February 20, 2009
Atlanta, GA

Page 458

1    per se.

2    BY MS. REID:

3        Q.   Okay.

4        A.   So I have not undertaken any -- any

5    study or analysis to determine if the impact of a

6    sales visit resulted in an actual purchase by a

7    customer.

8             However, I want to qualify that by

9    saying that sales personnel reported the impact

10   of their activities as influencing sales and

11   increasing customer purchases.

12       Q.   And those would be in documents that

13   you've listed in your fact chronology and your

14   reading log?

15       A.   Yes.

16       Q.   Okay.  If Dey had a spread on its

17   products as indeed all of generic manufacturers

18   did at that point in time, but didn't market it,

19   do you agree that it is possible and indeed

20   likely that Dey would have made sales where the

21   customer looked at the spread and decided that

22   they would buy Dey's products because they