# Exhibit 374

# PART 28

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al.*
*v. Dey, Inc., et al.*, **Civil Action No. 05-11084-PBS**

**Exhibit to the August 28, 2009 Declaration of Sarah L. Reid in Support
of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment**

fractions, biopsies, surgically removed tissue, bodily parts, organs, hair, teeth, nails, semen, urine, other bodily fluids or matter, voice print, retinal image, and the descriptions thereof, and all other corporal identification factors, and said factors physical counterparts, in any form, and all records, record numbers, and information pertaining thereto;
43. All biometrics data, records, information, and processes, not elsewhere described, the use thereof; and the use of the information contained therein or pertaining thereto;
44. All Rights to obtain, use, request, or refuse or authorize the administration of, any food, beverage, nourishment, or water, or any substance to be infused or injected into, or affecting the body by any means whatsoever;
45. All Rights to request, refuse, or authorize the administration of any drug, manipulation, material, process, procedure, ray, or wave which alters, or might alter the present or future state of the body, mind, spirit, or will by any means, method, or process whatsoever;
46. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, and any software, machinery, or devices related thereto;
47. All Rights of access and use utilities upon payment of the same unit costs as the comparable units of usage offered to most favored customers, inter alia, cable, electricity, garbage, gas, internet, satellite, sewage, telephone, water, world wide web (computer services), internet access via satellite or hard connections, and all other methods of communication, energy transmission, and food or water distribution;
48. All rights to barter, buy, contract, sell, or trade ideas, products, services, or work;
49. All rights to use any free, rented, leased, fixed, or mobile domicile, as though the same were a permanent domicile, free from requirement to apply for or obtain any government license or permission and free from entry, intrusion, or surveillance, by any means, regardless of duration of lease period, so long as any required lease is currently paid or a subsequent three day grace period has not expired;
50. All rights to manage, maneuver, direct, guide, or travel in any form of automobile, airplane, or any other motorized conveyance whatsoever without any requirement to apply for or obtain any government license, permit, certificate, or permission of any kind whatsoever;
51. All rights to marry and procreate children, and to rear, educate, train, guide, and spiritually enlighten any such children, without any requirement to apply for or obtain any government license, permit, certificate, or permission of any kind whatsoever;
52. All rights to buy, sell, trade, grow, raise, gather, hunt, trap, angle, and store food, fiber, water, and raw materials for shelter, clothing, and survival;
53. All rights to exercise freedom of religion, worship, use of sacraments, spiritual practice, and expression without any abridgment of free speech, or the right to publish, or the right to peaceable assembly, or the right to petition the government for redress of grievances, or petition any military force of the United States for physical protection from threats to the safety and integrity of person or property from either "public" or "private" sources;
54. All rights to Keep and Bear Arms for self-defense or self, family, and parties entreating physical protection of person or property;
55. All rights to create, preserve, and maintain inviolable, spiritual sanctuary and receive into the same any and all parties requesting safety and shelter;
56. All rights to create documents of travel of every kind whatsoever, inter alia, those signifying diplomatic status and immunity as a free, independent, and Sovereign state-in-fact;

57. All claims of ownership or certificates of title to the corporeal and incorporeal hereditments, hereditary succession, and all aspects of being, i.e. mind, body, soul, free will, faculties, and self;
58. All rights to privacy and security in person and property, inter alia, all rights to safety and security of all household or sanctuary dwellers or guests, and all papers and effects belonging to DEBTOR or any household or sanctuary dwellers or guests, against governmental, quasi-governmental, defacto governmental, or private intrusion, detainer, entry, seizure, search, surveillance, trespass, assault, summons, or warrant, except with proof of superior claim duly filed in the Commercial Registry by and such intruding party in the private capacity of such intruding party, notwithstanding whatever purported authority, warrant, order, law, or color of law may be promulgated as the authority for any such intrusion, detainer, entry, seizure, search, surveillance, trespass, assault, summons, or warrant;
59. All names used and all Corporations solely executed and filed, or to be executed and filed, under said names; MICHAEL TODD RICKS, AUSTIN MICHAEL RICKS, GABRIELLE MARIE RICKS, JAYLEN ISAIAH RICKS, DRAYDEN ISAAC TODD RICKS AND TAYSIA SIMONE RICKS,
60. All intellectual property, inter alia, all speaking and writings;
61. All signatures and seals;
62. All present and future retirement incomes, and rights to such incomes, issuing from any of DEBTORS accounts;
63. All present and future medical and healthcare rights, and rights owned through survivorship, from any of DEBTORS accounts;
64. All applications, filings, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records, and record numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein regardless of creator, method, location, process, or storage form, inter alia, all processed algorithms, analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filing, correspondence, information, identifying marks, image licenses or travel documents, materials, permits, registrations, and records and record numbers, chattel paper, electronic chattel paper, tangible chattel paper, prison bonds, and the like;
65. All library cards;
66. All credit, charge, and debit cards, and mortgages, notes, applications, card numbers, and associated records and information;
67. All credit of DEBTOR;
68. All traffic citations and/or tickets;
69. All parking citations and/or tickets;
70. All court cases and judgments; past, present, and future, in any court whatsoever, and all bonds, orders, warrants, and other matters attached thereto or derived there from;
71. All precious metals, bullion, coins, jewelry, precious jewels, semi-precious stones, mounts, and any storage boxes within which said items are stored;
72. All tax correspondence, filings, notices, coding, record numbers, and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;
73. All bank accounts, bonds, certificates of deposit, drafts, futures, insurance policies, investment securities, Individual Retirement Accounts, money market accounts, mutual funds, notes, options, puts, calls, pension plans, savings accounts, stocks, warrants, 401-K's, and the like;

74. All accounts, deposits, escrow accounts, lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds, and all records and record numbers, correspondence, and information pertaining thereto or derived there from;
75. All cash, coins, money, Federal Reserve Notes, and Silver Certificates;
76. All drugs, herbs, medicine, medical supplies, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagating plants, and seeds, and all related storage facilities and supplies;
77. All products of and for agriculture, and all equipment, inventories, supplies, contracts, accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture;
78. All farm, lawn, and irrigation equipment, accessories, attachments, hand-tools, implements, service equipment, parts, and supplies, and storage sheds and contents;
79. All fuel, fuel tanks, containers, and involved or related delivery systems;
80. All metal-working, woodworking, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops and facilities;
81. All camping, fishing, hunting and sporting equipment, and all special clothing materials supplies, and baggage related thereto;
82. All rifles and guns and related accessories, and ammunition and the integral components thereof;
83. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, and towers, and all ancillary equipment, supplies, computers, software programs, wiring, and related accoutrements and devices;
84. All power generating machines or devices, and all storage, conditioning, control, distribution, wiring, and ancillary equipment pertaining or attached thereto;
85. All computers and computer systems, monitors, software, computer cabinets, raised flooring, air conditioning and environmental control systems, fire suppression systems, plotters, printers, and other printing equipments, hubs, routers, switches, as well as all active and passive networking components, any and all central storage systems (SAN) as well as direct attached storage systems (DAS), all fiber optic and copper telecommunications cables, and the information contained therein, as well as all ancillary equipment, printers, and data compression or encryption devices and processes;
86. All office and engineering equipment, CAD systems, CAM systems, software, storage systems, furniture, ancillary equipment, drawing tools, electronic and paper files, and items related thereto;
87. All water wells and well drilling equipment, and all ancillary equipment, chemicals, tools, and supplies;
88. All shipping, storing, and cargo containers, and all chassis, truck trailers, vans, and the contents thereof, whether on site, in transit, or in storage anywhere;
89. All building materials and prefabricated buildings, and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;
90. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;
91. All books, drawings, magazines, manuals, and reference materials regardless of physical form;
92. All artwork, paintings, etchings, photographic art, lithographs, and serigraphs, and all frames and mounts pertaining or affixed thereto;
93. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;

94. All construction machinery and ancillary equipment, supplies, materials, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;
95. All medical, dental, optical, prescription, and insurance records, record numbers, and information contained in any such records or pertaining thereto;
96. The Will of the DEBTOR;
97. All inheritances gotten or to be gotten;
98. All wedding bands and rings, watches, wardrobe, and toiletries;
99. All household goods and appliances, linen, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, and antiques;
100. All ownership, equity, property, and rights in property now owned, held, and hereafter acquired, in all businesses, corporations, Limited Liability Companies, Companies, trusts, partnerships, Limited Partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired, and all books and records thereof and there from, all income there from, and all accessories, machinery, fixtures, supplies, trademarks, trade names, logos, intellectual property, trade secrets, proprietary formulas, raw materials, buildings, vehicles, work in progress, completed products, products in transit, accounts receivable, accounts payable, taxes, accounts, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;
101. All books and records, all income, and all accessories, machinery, fixtures, supplies, trademarks, trade names, logos, intellectual property, trade secrets, proprietary formulas, raw materials, buildings, vehicles, work in progress, completed products, products in transit, accounts receivable, accounts payable, taxes, accounts, equipment, information, inventory, money, spare parts, and computer software.
102. All packages, parcels, envelopes, or labels of any kind whatsoever which are addressed to, or intended to be addressed to, DEBTOR, whether received or not received by DEBTOR;
103. All telephone, fax, and pager numbers;
104. All electronic e-mail addresses, internet uniform resource locator addresses, internet web sites, web domain names, and internet service provider accounts, instant messaging addresses, and the like;
105. All watches, jewelry, precious jewels and semi-precious stones, and all mountings attached thereto, and all rings, except wedding rings, and all storage boxes within which any of the foregoing items are stored;
106. Any property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of DEBTOR.

This Security Agreement expressly herewith includes and encompasses all rights, legal title, equitable title, and interest in property described in this Collateral section, both when now owned and when hereafter acquired, now existing and such as might hereafter arise, and wherever located.

## VI. <u>ADVISORY</u>

All instruments and documents referenced and/or itemized above are accepted for value, with all related endorsements, front and back, in accordance with UCC § 3-419 and House Joint Resolution 192 of June 5, 1933. This Security Agreement is accepted for value, property of the Secured Party, and is not dischargeable in bankruptcy court as the Secured Party's property is exempt from third-party levy. This Security Agreement supersedes all previous contracts or security agreements between DEBTOR and the Secured Party.

Form: SA-111219792883-MTRB

Secured Party: Michael Todd Ricks-Bey©

For the Security Agreement 1977 by the Michael Todd Ricks-Bey©

The **DEBTOR** agrees to notify all of DEBTORS former creditors, would-be creditors, as all DEBTOR'S wages and salaries, including any and all remuneration, is the property of Secured Party, as well as would-be purchasers of any herein-described Collateral, mentioned above on this Security Agreement, and all such personages are expressly so-**NOTICED** accordingly.

The **DEBTOR** has agreed to be, act and function in law and commerce as the registered Commercial Vehicle and i.e. Proprietary Trade Name, **TRANSMITTING UTILITY**, Corporate Identify, and Disregarded Entity of the Secured Party **"Inhabitant"** of the Moorish America's by sovereign and Unalienable Rights, Secured and Protected by the Almighty **"Father God-Allah"** of the **"Anointed One."**

The **DEBTOR** agrees, and it being authorized by the Secured Party, to bring action of suit or process in law in the proper Court or Venue to recover damages from the STATE OF VIRGINIA COMMONWEALTH and any "STATE OF" and any ACTORS, AGENTS, EMPLOYEES or REPRESENTATIVES in connection thereto and/or in relation to **ANY** B.A.R. Association, State, Federal, International as well as, specifically, any Third-Party causing default in or Dishonor of, this Security Agreement, duly registered with the Secretary of State, Colorado State Department of Licensing, Business and Professions, Uniform Commercial Code Division, and thereby perfecting the Secured Party's Interest as **"Holder In Due Course."**

Any funds recovered in the action of suit shall be distributed between the DEBTOR and the Secured Party as their interests shall appear in this Security Agreement, or shall be paid to the Secured Party until the sum certain not exceeding One Hundred Billion united States Dollars ($100,000,000,000.00), and the balance shall then be paid to DEBTOR.

All costs and counsel fees incurred in the action of suit or process, shall be first deducted from any funds recovered in the action of suit or process before distribution is made to either of the Parties. In the event that no recovery is obtained in any action of suit, the Parties agree that the costs and counsel fees shall be paid by the DEBTOR in the following manner: The DEBTOR may contract in any form for payment suitable to all the Parties involved, without prejudice to the Secured Party's interests.

The **DEBTOR** may represent the Secured Party's interest in all actions whatsoever involving at least one party being a U.S. CITIZEN and or ACTOR, AGENT, EMPLOYEE OR RESPSENTATIVE of any CORPORATION or ACTOR, AGENT, EMPLOYEE OR REPRESENTATIVE of any CORPORATION or CORPORATE GOVERNMENT whatsoever, in any case of diversity of citizenship or in a foreign jurisdiction or venue. The DEBTOR has rights in all interests granted to the DEBTOR by the Secured Party in this Security Agreement/Financing Statement.

The **DEBTOR** is authorized to draw upon the Secured Party's priority, Tax Exemption to POST and cover funds required to properly honor and all drafts/contracts negotiated/offered to DEBTOR, and create/draft "Bills of Exchange," "Banker's Acceptances/" "Sight Drafts," "promissory Notes," or "Bonds" for a particular purpose, such as Discharging Public Liability or Accepting a Contract and/or payment thereof.

Form: SA-111219792883-MTRB                                                        Secured Party: Michael Todd Ricks-Bey©

This Security Agreement is **"Private"** and **"Non-Negotiable,"** and **ACCEPTED FOR VALUE**, including all related property and endorsements, front and back, nunc pro tunc from June 17th, 1977, and is the secured Private Property of the Secured Party and is **NOT** discharged in any Bankruptcy Court proceeding, as the Secured Party's property is **EXEMPT FROM** (Third-Party) **LEVY.**

This Security Agreement devolves on the Secured Party's Heirs and Assigns, who are equally authorized, upon taking Title to this Security Agreement, as the Secured Party to hold and enforce said Security Agreement via Non-Negotiable Contract, devise, or any Lawful Commercial Remedy.

## VII.  PUBLIC LAWFUL NOTICE

Filing and Registration of this Security Agreement, freely entered into by the Parties, constitutes open, Lawful, Public Notice that:

1. The Law, Venue, and Jurisdiction of this Security Agreement is the finalized, signed, and sealed Private Contract and BOND, freely entered into by and between Parties and thereby ratified,

2. This Security Agreement is contractually complete herein and herewith and CANNOT be abrogated, altered, amended in whole or in part, without the express, written authorization of the "Parties" or the Secured Party.

3. The DEBTOR is the **"TRANSMITTING UTILITY"** and **"PROPRIETARY TRADE NAME"** for the Secured Party's use in commerce, and all of the property of DEBTOR is the Secured Property/Collateral BONDED/offered, subsequently Accepted For Valve by Secured Party "Inhabitant," giving the Secured Party Interest in the Property/Collateral as a Holder in Due Course.

4. **Any** unauthorized use or impairment of DEBTOR in any *manner* that might influence, affect, pertain to, or be presumed to pertain to the Secured Party's interest, personality, rights or remedies in any manner is **EXPRESSLY PROHIBITED** without the written authorization of the Secured Party.

Furthermore, the Secured party reserves the right to satisfy **any** Judgment, Lien, Debt, Duty, obligation, Account or Contract, whether it be secured, unsecured, or purported to be secured, against the DEBTOR by executing a "Partial Release & Assignment," "Bill of Exchange," "Sight Draft," or "Promissory Note" against this registered Fidelity/Indemnity BOND.

No Law shall ever be past that abrogates Contracts. This constitutes Actual and Constructive Notice; ignorance to the Law is not a valid excuse. Good Faith, Security Concerns, or other purported excuses will not, can not, indemnify any Third-Party's tortuous interference causing default. This is NOTICE of strict liability to all who are served.

Secured Party is expatriated from THE UNITED STATES DEMOCRACY (CORPORATION) and Secured Party is repatriated back to the Organic United States <u>of</u> America

## VIII. PARTIES CHOICE OF LAW

By agreement of the parties, this Security Agreement shall be governed by Uniform Commercial Code § 1-102 through 1-107 and UCC § 3-419, 10-104 and House Joint Resolution of 192 of June 5th, 1933, with ALL rights Reserved, Preserved, Without Prejudice, Without Recourse, UCC § 1-308, and 3-415.

The parties have read this Security Agreement and know and understand its contents completely and agree in full of their free will. The Parties swear on Oath and the penalties of perjury of the laws of "The State of Virginia or any "STATE OF" and the several free united States of America, that this is true, understood by the parties to stand for the life of the Commercial BOND, the Secured Party being the Controlling Party and Holder-In-Due-Course of the "Document of Title" over DEBTOR, herein registered with the Secretary of State via the Department of Licensing.

## IX. DEFAULT

The following events shall constitute the events of default hereunder:

1. **Failure** of/by DEBTOR to pay any debt secured hereby when due;

2. **Failure** of/by DEBTOR to perform any and all obligations secured hereby when required to be performed; or

3. Any **breach** of any **warranty** DEBTOR has contained with in this Security Agreement.

4. Any Third-Party Tortious **interference** with contractual relations, prospective advantage or causing DEBTOR to default on this Security Agreement after **Third-Party** has been given lawful timely **Notice**, subjects said **Third-Party** to this Security Agreement and agrees to Indemnify Damages up to the penal sum of One Hundred Billion united States Dollars ($100,000,000,000.00), as reference in the Fidelity/Indemnity Bond under section II. Page #2 of this Security Agreement.

5. Any loss, damage, expense, or injury accruing to Secured Party by virtue of the **TRANSMITTING UTILITY** function of DEBTOR.

6. Any Third-Party interfering or causing default, as stated in paragraph number #3 of this section, voluntary waives all Privileges Immunities, defense and specifically, agrees to be subject to the "Piercing the Corporate Veil Rule," with strict liability in their Commercial and Private capacity.

**Held Harmless and Indemnified**. In this Security Agreement Secured Party is held harmless and indemnified by Debtor in strict accordance with Hold-harmless and Indemnity Agreement No. 102420042883-MTRB, attached hereto and included herein by reference.

**Authorized Representative.** Debtor hereby appoints Secured Party as Debtor's Authorized Representative and authorizes Secured Party to do the following: (a) sign, without liability, Debtor's signature in all commercial activity between Debtor and any other juristic person, where such signature is requested, and if

Form: SA-111219792883-MTRB                                          Secured Party: Michael Todd Ricks-Bey©

For the Security Agreement 1977 by the Michael Todd Ricks-Bey©