# Exhibit 374

# PART 30

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al.
v. Dey, Inc., et al.*, **Civil Action No. 05-11084-PBS**

**Exhibit to the August 28, 2009 Declaration of Sarah L. Reid in Support
of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment**

This bond shall effect as of the date hereon and shall remain in full force and effect until the surety (Secured Party) is released from liability by the written order of the UNITED STATES Government and provided that the Debtor may cancel this bond at any time and be relieved of further liability hereunder by delivery within thirty (30) days written notice to Secured Party. Such cancellation shall not effect any liability incurred or accrued by the debtor hereunder prior to the termination of said thirty (30) day period. The debtor will promptly reissue a bond before the end of the thirty (30) day period for an amount equal to or greater than a value of this instrument unless the parties agree otherwise.

The Debtor (Indemnifying Party), without the benefit of discussion or division, do hereby agree, covenant and undertake to indemnify, defend and hold the Secured Party (Indemnifying Party) harmless from and against any and all claims, losses, liabilities, cost, interest and expenses (hereinafter referred to as "claims" or a "claim") including without restriction, all legal costs, interest, penalties and fines suffered or incurred by the Secured Party arising as a result of the Secured party having its personal guarantee with respect to any loan or general indebtedness of the Debtor including, without in any way restricting, the generality of the foregoing amount owing by the debtor to all creditors.

The Indemnifying Party (Secured Party) shall promptly advise the Indemnifying Party (Debtor) of any claims and provide the same will details thereof, including copies of any documents, correspondence, suit or action received by or served upon the Indemnified Party (Secured Party). The Indemnified Party (Secured Party) shall fully cooperate with the Indemnifying Party (Debtor) in any discussion, negotiations or other proceedings relating to any claim.

**AUTHORIZED REPRESENTATIVE.** Debtor hereby appoints Secured Party as Debtor's Authorized Representative and authorities Secured Party to do the following: (a) sign, without liability, Debtor's signature in all commercial activity between Debtor and any other juristic person, where such signature is requested, and if required, for the purpose of authenticating the writing; (b) regarding any deposit account of any kind maintained in the name of Debtor, and likewise maintained in/under the Social Security Account Number of Debtor, with any bank, without further consent of Debtor, and without liability: (i) to originate instructions for the deposit-account bank and direct the deposition of funds in any such deposit account by acting as sole and exclusive signatory on said deposit account; (ii) to receive, open, and dispose of all written communication, correspondence, and mail concerning any such deposit account sent by and such deposit-account bank; (iii) to compose, finalize, authenticate, and send all written communication, correspondence, and mail concerning any such deposit account with any such deposit-account bank; and (iv) to maintain exclusive possession of any and all debit cards, Automated teller Machine cards, and other similar types of cards, as well as all checkbooks, saving books, passbooks, and other types of account books, re any and all such deposit accounts of any kind whatsoever maintained with any bank; (c) to demand, collect, receive, accept receipt for, sue for, and recover all sums of money and other property which are now, and may hereafter become, due, owing, and payable in favor of Debtor; (d) to execute, sign, and endorse any and all  claims, instruments, receipt, checks, draft, and warrants issued for, and made payable in favor of Debtor, (e) to settle and comprise any and all claims, now existing and as might hereafter arise, against Debtor, and against any item of Collateral; and (f) to file any claims, take any action, and institute and participate in any proceedings, both in the name of Debtor and under the distinctive appellation of Secured Party, as well as otherwise, which, in the sole discretion of Secured Party, may be deemed necessary and advisable . Secured Party may also receive, open and dispose of mail indicating any alleged address of Debtor, and change any address concerning which mail and payments should be sent. This authorization is given as security for the indebtedness, and the authority hereby conferred is irrevocable and remains in full force and effect until renounced, in writing, and signed by Secured Party.

Form: SA-041619972883-MTRB                                                                                           Secured Party: Michael-Todd: Ricks-Bey©

For the Commercial Security Agreement 1977 by the Michael-Todd: Ricks-Bey©
P age 3 of 13

**PERFECTION OF SECURITY INTEREST.** (a) debtor authorizes Secured Party's filing of a financing statement, and continuation statements as needed, describing Collateral, as well as any and all agricultural liens and other liens against Debtor held by Secured Party; (b) Debtor  also authorizes execution of such financing statements by secured Party, and agrees that Debtor will take all other such actions reasonably requested by Secured Party, for perfecting and containing Secured Party's security interest in Collateral, and also consents and agrees as follows: (i) Secured Party may at any time, without further authorization from Debtor, file carbon, photographic, and other types of reproductions of any herein-authorized financing statement, as well as this Security Agreement for use as a financing statement; and (ii) Secure Party is neither responsible for taking any steps necessary for the preservation of any third-party rights in Collateral, nor for protecting, preserving, maintaining, and the like any security interest granted any third party in Collateral.

## OBLIGATIONS OF THE DEBTOR

Debtor warrants and covenants to Secured Party as follows:

**ORGANIZATION.** Debtor is an entity, corporation, business trust or other trust which is duly organized, validly existing, and in good standing under the laws of the United States.

**AUTHORIZATION.** The execution, delivery, and performance of this Commercial Security Agreement by Debtor(s) have been duly authorized by all necessary action by an organization, or bylaws, or (a) any agreement or other instrument binding upon Debtor or (b) any law, governmental regulation, court decree, or order applicable to Debtor.

**PERFECTION OF SECURITY INTEREST.** Debtor agrees to execute such financing statements and to take whatever other actions are requested by secured Party to perfect and continue Secured party's interest in the Collateral. Upon request of Secured Party, Debtor will deliver to Secured party any and all of the documents evidencing or constituting the Collateral, and Debtor will note Secured Party's interest upon any and all chattel paper if not delivered to Secured Party for possession by secured Party. Debtor promptly will notify Secured party of any change in Debtor's name including any change to the assumed business names of Debtor. This is a continuing Security Agreement and will continue in effect even through all or any part of the Indebtedness is paid in full and even though for a period Debtor  may not by indebted to Secured party.

**ENFORCEABILITY OF COLLATERAL.** To the extent the Collateral consists of accounts, contracts rights, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content, and manner or preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

**REMOVAL OF COLLATERAL.** Debtor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the collateral) at Debtor's address shown above, or at such locations as are acceptable to Principals. Except in the ordinary course of its business, including purposes of inventory, Debtor shall not remove the Collateral from its existing locations without the prior written consent of Secure Party. To the extent that the Collateral consists of vehicles, or other titled property, Debtor shall not take or permit any action which would require registration or sale or disposal, without the prior written consent of Secured Party.

**TRANSACTIONS INVOLVING COLLATERAL.** Except for inventory sold or accounts collected in the ordinary course of debtor's business, Debtor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Debtor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance or change, other than the security interest provided for in this Agreement, without the prior written consent of Secure Party. This includes security interest even if junior in right to the security interest granted under this Agreement. Unless waived by Secured Party, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Secured party and shall not be commingled with any other disposition. Upon receipt, Debtor shall immediately deliver any such proceeds to Secured Party.

**TITLE.** Debtor represents and warrants to Secured Party that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement, Non-financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Commercial Security Agreement or which Secured Party has specifically consented. Debtor shall defended Secured Party's rights in the Collateral against the claims and demands   of all other persons.

**MAINTENANCE AND INSPECTION OF COLLATERAL.** Debtor shall maintain all tangle Collateral in good condition and repair. Debtor will not commit or permit damage to or destruction of the collateral or any part of the Collateral. Secured party and its designated representatives and agents shall have the tight at all reasonable times to examine, inspect, and audit the Collateral wherever located. Debtor shall immediately notify Secured Party of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the a Collateral.

**TAXES, ASSESSMENTS AND LIENS.** Debtor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any other Related Documents. Debtor may withhold any such payment or may elect to contest any lien if Debtor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Secure Party's interest in the collateral is subjected to a lien which is not discharged within (15) days, Debtor shall deposit with Secured Party cash, a sufficient corporate surety bond or other security satisfactory to attorney's fees or other charges that could accrue as a result of foreclosure or sale of the collateral. In any contest Debtor shall defend itself and Debtor shall satisfy any final adverse judgment before enforcement against the Collateral.

**COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS.** Debtor shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. Debtor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Secured party's interest in the Collateral, in Secured Party's opinion, is not jeopardized.

**DBTOR'S RIGHT TO POSSESSION.** Until default, Debtor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Commercial Security Agreement or the Related Documents, provided that Debtor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by secured party is required by law to perfect Secured Party's security interest in such Collateral. If Secured Party at any time has possession of any Collateral, whether before or after an Event of Default, Secured Party shall be deemed to have exercised

reasonable care in the custody and preservation of the Collateral, if Secured Party takes such action for that purpose as Debtor shall request or as Secured Party, in Secured Party's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Debtor shall not of itself be deemed to be a failure to exercise reasonable care. Secured party shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to serve the Collateral.

**EXPENDITURES BY SECURED PARTY.** If Secured Party must discharge or pay any amounts under this Commercial Security Agreement, including without limitation all taxes, liens, security interest, encumbrances, and other claims, at any time levied or placed on the Collateral, Secured Party also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All expenditures incurred or paid by secured Party for any purposes will then bear interest at the rate charged under the law.

## SUBORDINATION OF DEBTOR'S DEBTS TO SECURED PARTY

Debtor agrees that the indebtedness of the Debtor to the Secured Party, whether now existing or hereinafter created, shall be prior to any such claim that Third Party may now have or hereafter acquire against Debtor whether or not Debtor becomes insolvent. Debtor hereby expressly subordinates any claim Debtor may have against Secured Party, upon any account whatsoever, to any claim that the Secured Party also may now or hereafter have against Debtor. In the event of insolvency and consequent liquidation, of the assets of Debtor, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of the Debtor applicable to the payment of the claims of both Secured Party and Debtor shall be paid and shall be first applied by Secured Party to the indebtedness of Debtor to Secured party. Debtor does hereby assign to Secured Party all claims which it may have or acquire against Debtor any assignee or trustee in the bankruptcy of Debtor, proved however, that such assignment shall be effective only for the purpose of assuring to Secured Party full payment in legal tender of the indebtedness. If the Secured Party shall be marked with a legend that the same are subject to this Agreement and shall be delivered to Secured Party. Debtor agrees, and the Secured party hereby is authorized, in the name of the Debtor, from the time to execute and file financing statements and continuation statements and to execute such other documents and to take other actions as Secured Party deems necessary or appropriate to perfect, preserve and enforce the rights under this Agreement.

## MISCELLANEOUS PROVISIONS

The following miscellaneous provisions are apart of this Commercial Security Agreement:

**AMENDMENTS.** This Commercial Security Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Commercial Security Agreement. No alteration of or agreement to this Commercial Security Agreement expressly or orally shall be effective unless expressed in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ATTORNEY'S FEES; EXPENSES.** Debtor agrees to pay upon demand all of secured Party's cost and expenses, including reasonable attorney's fees and Secured Party's legal expenses, incurred in connection with the enforcement of this Agreement. Secured Party may pay some else to help enforce this Commercial Security Agreement and Debtor shall pay the cost and expense of such enforcement. Costs and expenses include Secured

Party's reasonable attorney's fees and legal expense whether or not there is a lawsuit, including reasonable attorney's fees and legal expense for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Debtor also shall pay all court costs and such additional fees as may be directed by the court.

**NOTICES.** Except for revocation notices by Debtor, all notices required to be given by either party to the other under this Commercial Security Agreement shall be in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, address to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing.

**INTERPRETATION.** In all cases there is more than one Debtor or the Debtor's principles, the United States Inc. or the State of Colorado and/or any "STATE OF" is in any way involved, then all words used in this Commercial Security Agreement in the singular shall be deemed to have been in the plural where the context and construction so require; and where there is more than one Debtor name in a Claim or when this Commercial Security Agreement is executed on more than on Debtor the words "Debtor" respectfully shall mean all and any one or more of them. The words Debtor and Secured party include the heirs, successors, and transferee of each of them. Caption heading in this Agreement are for convenience purposes only and are to be used to interpret or define the provisions of this Agreement.

**SEVERABILITY.** In the event that a court of original and general jurisdiction at common law, such as an Article III court of justice arising under the Constitution for the united State of America , 1787, with the Bill of Rights of 1791, as lawfully amended by the qualified Electors of the several States of this American Union, and laws of the de jure united States of America, and such as a court of justice in accordance with the course of the common law arising under the Constitution of the Colorado and/or any "STATE OF" republic, as amended by the qualified Electors of said Colorado and/or any "STATE OF" republic and the laws of the de jure and/or any "STATE OF" republic, judicially determines that any part of this Commercial Security Agreement, including any amendment, addendum, revision, and the like is unacceptable for any reason, such as on the basis of being unlawful, invalid, void, unenforceable, and the like, such provision is hereby severed from this Commercial Security Agreement, but every remaining provision continues in full force and effect any nay not be affected by such determination. If feasible, any such offending provision is deemed modified for inclusion within the limits of enforceability and validity. In the event that the offending provision cannot be so modified, and offending provision is hereby stricken and all other provisions of this Commercial Security Agreement in all other respects remain valid and enforceable by secured party.

**WAIVER.** Secured party shall not be deemed to have waived any rights under this Commercial Security Agreement unless such waiver is given in writing and signed by Secured party. No delay or omissions on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver by Secured Party of a provision of this Commercial Security Agreement shall not prejudice or constitute a waiver of Secured Party's right otherwise to demand strict compliance with that provision or any other provision of this Commercial Security Agreement. No prior waiver by Secured Party, nor any course of dealing between Secured Party and Debtor shall constitute of waiver of any of Secured Party's rights or any of Debtor's obligations as to any further transactions. Whenever the consent of Secured Party is required under this Commercial Security Agreement, the granting of such consent by Secured Party in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted in the sole discretion of secured party.

## DEFAULT

The following shall be events of default hereunder: (a) failure of Debtor to pay any debt hereby when due; (b) failure by Debtor to perform any obligations secured hereby when the same should be performed.

**EVENT OF DEFAULT.** The words "Event of Default" mean and include any Events of Default set forth below in the section titled "Event of Default."

**DEBTOR.** The word debtor means and includes without limitation, each and all of the Debtors and their principals, sureties, and accommodation parties in connection with the indebtedness.

**INDEBTEDNESS.** The word "Indebtedness " means the indebtedness evidence by this Commercial Security Agreement, including all principal and interest, together with all other indebtedness and cost and expenses for which Debtor is responsible under this Commercial Security Agreement or under any of the related documents. In addition, the word "Indebtedness" includes all other obligations, debts and liabilities, plus interest thereon, of DEBTOR"S  ORGANIZATION, or any one or more of them, to Secured Party, as well as all claims by Secured Party against Debtor, or any one or more of them, whether existing now or later, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated, whether  Debtor, surety, accommodation party or otherwise, whether recovery upon such indebtedness may be or hereafter may become otherwise unenforceable.

**RELATED DOCUMENTS.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreement, loan agreement, guarantees, security agreements, registrations, securities with or without a pledge, bailments, trust receipts, field warehousing documents and factor's liens, accounts, U.C.C. contract accounts, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

## EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default under this Commercial Security Agreement:

1. **DEFAULT ON INDEBTEDNESS.** Failure of Debtor to make any payment when due o the indebtedness.

2. **OTHER DEFAULTS.** Failure of Debtor to comply with or to perform any other term, obligation, covenant or condition contained in this Commercial Security Agreement or in any of the related documents or in any other agreement between Secured Party and Debtor. If any failure, other than a failure to pay money, is curable and if Debtor has not been given prior notice of breach of the same provisions of this Commercial Security Agreement, it may be cured (and no Event Default will have occurred) if Debtor,, after Secured Party send written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b), if the cures requires more than fifteen (15) days, immediately initiate steps sufficient to cure the failure and thereafter continues and complete all reasonable and necessary steps to produce compliance as soon as reasonably practical.

3. **FALSE STATEMENTS.** Any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor under this Commercial Security Agreement is false or misleading in any material respect, either now or at the time made or furnished.

4. **DEFECTIVE COLLATERALIZATION.** This Commercial Security Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

5. **INSOLVENCY.** The dissolution or termination of Debtor's existence as a going business, the insolvency of Debtor, the appointment of a receiver for any part of Debtor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor.

6. **CREDITOR PROCEEDINGS.** Commencement of foreclosure, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Debtor against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Debtor's deposit accounts with Secured party. However, this Event of Default shall not apply if there is a good faith dispute by Debtor as to the validity or reasonableness of the claim which is the basis of the creditor proceeding and if Debtor gives Secured Party written notice of the creditor proceeding and deposits with Secured Party monies or a surety bond for the creditor proceeding, in an amount determined by Secured Party, in its sole discretion, as being an adequate reserve or bond for the dispute.

7. **EVENTS AFFECTING DEBTOR.** Any of the preceding events occurring with respect to any Debtor of any of the Indebtedness or such Debtor dies or becomes incompetent. Secured Party, at its option, may, but shall not be required to, permit the Debtor's estate to assume unconditionally the obligations arising under the Commercial Security Agreement in a manner satisfactory to Secured Party, and in doing, cure the Event of Default.

8. **INSECURITY.** Secured Party, in good faith, deems insure.

## RIGHTS AND REMEDIES ON DEFAULT

If an Event of Default occurs this Commercial Security Agreement, at any time thereafter, Secured Party shall have all the rights of a Secured Party under the Uniform Commercial Code. In addition and without limitation, Secured Party may exercise any one or more of the following rights and remedies:

1. **ACCELERATE INDEBTEDNESS.** Secured Party may declare the entire Indebtedness, including any prepayment penalty which Debtor would be required to pay, immediately and payable, without notice.

2. **ASSEMBLE COLLATERAL.** Secured Party may require Debtor deliver to Secured Party all or any portion of the Collateral and any or all certificates of title and other documents relating to the Collateral. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party. Secured Party also shall have full power to enter upon the property of Debtor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Commercial Security Agreement at the time of repossession, Debtor agrees Secured Party may take other such goods, provided that Secured Party makes reasonable efforts to return them to Debtor after repossession.