# EXHIBIT 73

Tony —
Please review and comment — Equally prev 3rd
Thanks —
DB

AN ARTICLE BY

DON M. NEWMAN

UNDER SECRETARY

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES

FOR

DRUG TOPICS

AUGUST, 1987

1ST DRAFT   JOHN SHOSKY

HHC902-1062

FACSIMILE TRANSMISSION REQUEST

| ADDRESSEE: (NAME, ORGANIZATION, CITY, STATE & PHONE#) | FROM: (NAME, ORGANIZATION & PHONE # |
|---|---|
| Tony Lovecchio - HCFA<br>First Low Rise  1A3<br>Baltimore<br><br>301-934-4010 | John Shosky<br>IOS Public Affairs<br>202-245-7470 |

| TOTAL PAGES | FAX MACHINE PHONE NUMBER( IF KNOWN) | DATE | CHARGE SYMBOL |
|---|---|---|---|
| 5 | | | |

REMARKS

IF RETRANSMISSION IS NECESSARY CALL: HQS COMMCEN FTS 8-245-6277 (AC 202) WAS:

INSTRUCTIONS TO COMMCEN: (CHECK ONE)

☒ MAIL COPIES BACK TO ROOM_____/BUILDING_____
☐ CALL EXT_____WE WILL PICKUP/INCLUDE ROOM NUMBER
☐ RETAIN COPIES IN FILES

COPIES NOT PICKED UP WITHIN 24-HOURS WILL BE RETURNED VIA MAIL

RECEIVED HQS. COMM. CEN.
87 AUG 28 PH 2 42
DEPT. OF HEALTH AND HUMAN SERVICES

HHC902-1063

2

Recently, the Department of Health and Human Services announced new rules concerning the limits on Federal payments for drugs under Medicaid. My purpose in writing to the readers of Drug Topics is to brief you on these changes. I also want to underline the advantages inherent in this policy for all of us.

If you are a regular reader of Drug Topics, you probably know that since 1983 HHS has been working to reform the Medicaid drug payment policy. Prescription drug reimbursement costs Medicaid approximately $1.5 billion in Federal funds, which is over 6 percent of the total Federal Medicaid budget. We must find a way to bring these costs down. Therefore, our goal has been to increase State flexibility in system design to limit drug payments, whenever appropriate, and to encourage the use of therapeutically equivalent generic drugs. This will save money for the taxpayers and help secure the viability of the Medicaid program.

The old regulations set limits to Federal payments, on a prescription by prescription basis, and the amount that State Medicaid agencies may claim for Federal matching purposes, which must not exceed the lowest of: 1) the maximum allowable cost (MAC) of the drug plus a dispensing fee, 2) the estimated acquisition cost (EAC) of the drug, or 3) the provider's usual and customary charge to the public for the drug. In addition, if the prescribing physician specifies that a brand name drug is required, MAC limits do not apply.

1

3

The new regulations are much simpler and more reasonable. They establish two uniform, but separate, upper limit standards for States. More specifically, the rules will establish manageable methods of applying upper limits on State Medicaid drug expenditures for multiple source drugs, and for all other drugs including sole-source drugs protected by patents:

- o  The first requires that multiple source drugs that meet the Food and Drug Administration standards for therapeutic equivalence will be subject to a formula calculation to establish maximum prices for the puposes of Federal payment (matching funds). The formula to be used in calculating the upper limit of payment for multiple source drugs will be established at 150 percent of the least costly but therapeutically equivalent substitute plus a reasonable dispensing fee established by the State;

- o  The second requires that sole-source drug payments (and other drugs not meeting the threshold criteria for multiple drugs) will be determined by a State agency in terms of the lower of the usual and customary charge or the estimated acquisition cost pharmacies pay suppliers or manufacturers for the various drugs plus reasonable dispensing fees.

2

HHC902-1065

4

The new procedures will apply to State drug expenditures for each of these categories on an aggregate basis. That is, the individual prices set by State Medicaid agencies may exceed Federal levels for some drugs. However, prices need to be less than Federal estimated acquisition costs levels for others to offset the increases and to meet the aggregate expenditures test.

States will not need to submit detailed accountings to the Health Care Financing Administration (HCFA) to receive approval of the payment system in the state Medicaid plan. Instead, approval will be based on assurances by the State that the regulatory requirements are met. But HCFA will monitor the State's compliance through ongoing State assessment and Medicaid audits.

These changes will save the Federal and State Governments quite a bit of money without diminishing the quality of prescription medication. In fact, it is estimated these changes will save the taxpayers at least $30 billion in FY 1988 and $60 million each year after that.

Now I know that some people haven't been entirely receptive to these changes. Some people are afraid that these changes will hurt the pharmaceutical industry or local pharmacists.

3

I understand that trepidation. Back in Indiana when I was operating my pharmacy I used to worry about major changes in the pricing of the pharmaceuticals I was selling for Medicare or Medicaid beneficiaries. I know it isn't easy to keep up with all of the changes coming out of Washington, and I sure know it is hard to think globally when the economic viability of your own store may be threatened.

But this legislation will not adversely hurt local pharmacists or the pharmaceutical industry. The impact is spread out fairly evenly. Rather, these regulations continue to accentuate our message to the health care industry that we must maintain a high standard of quality health care at the lowest possible price for the consumer. That is a message which is widely supported both inside and outside the medical profession. In fact, an overwhelming body of evidence demonstrates that these regulations will not diminish the quality of care, and they will lower the cost of health care.

That is what the American people want and expect. These regulations meet that expectation.

\*\*\*

4

HHC902-1067