# EXHIBIT 143

**D R A F T**

**State of Alabama**

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *"Lesser of"* Reimbursement Methodology | | | | Alabama Estimated Acquisition Cost (AEAC)[1] | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
| | Usual and Customary | Selected Price "Lesser of" | | | | Schedule II Drugs | SMAC Methodology | | | | | | |
| **Effective Time Period** | Usual and Customary | FUL/FAC[1] | EAC[2] | SMAC[3]/AMAC[7] | Brand/Generic | Schedule II Drugs | SMAC Methodology | Physician Override | Retail | Institution | Compound | Other |
| 10/1/1991[12] - 5/31/1992 | Y | Y | Y | N | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | | Y | $5.40[10] | | | 11 |
| 6/1/1992 - 5/18/1997 | Y | Y | Y | N | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | | Y | $5.40[10] | $3.99 | $5.40 | 11 |
| 5/19/1997 - 4/30/2000 | Y | Y | Y | Y[7] | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99 | $5.40 | 11 |
| 5/1/2000 - 1/9/2003 | Y | Y | Y | Y[7] | DOJ Price[8]; WAC + 9.2%[4] or AWP-10.2%; Direct Price[5] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40 | 11 |
| 1/10/2003 - 1/29/2004 | Y | Y | Y | Y[7] | DOJ Price[8]; WAC + 9.2%[6] or AWP-10.2%; Direct Price[6] | | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40 | 11 |
| 1/30/2004 - Present | Y | Y | Y | Y[7] | DOJ Price[8]; WAC + 9.2%[6] or AWP-10.2% | | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99 | $5.40[9] | 11 |

 Data taken from Medicaid State Plan Amendments

 Data provided by Alabama Medicaid, 10/14/08, 10/23/08, 10/24/08

Data taken from Mary A. Finch depositions 5/23/07, 5/24/07, 08/08/07, 08/09/07

[1] Reimbursement is based on the lesser of the Selected Price and the Usual & Customary; and Selected Price is based on the lesser of the FUL/FAC (Federal Upper Limit also referred to as FAC), the EAC, and the SMAC/AMAC.

[2] Per Finch deposition, 5/23/07, page 61, Alabama has always contracted with First DataBank for pricing information.

[3] State MAC referred to as the Alabama Upper Limit (AFAC)

[4] Beginning in 1990, pricing logic applied WAC or AWP according to **which was *more current.*** If both were equally current, then WAC + 9.2% was used (Finch, 5/23/08, p.240-246).

[5] Direct price begin date is unknown, but was discontinued sometime in 2003 (Finch, 5/23/08, p.331-333).

[6] Beginning in 2003, reimbursement was based **on the lower of** WAC + 9.2% and AWP - 10% (Finch, 5/23/08, p.244-245).

[7] An AMAC is an extension of the State MAC program in which a drug ceiling was applied to a group of drugs that don't qualify for the FUL or State MAC program. Its use has been limited to H2 antagonists (drugs like Zantac and Tagamet that are used for GERD) (Finch, 5/23/07, p.355-357).

[8] DOJ pricing was adopted sometime in 2000 and remains in effect through the present (Finch 05/24/07, p. 673). DOJ prices for hemophilia drugs were discontinued on 1/10/03.

[9] Beginning in Feb., 2008, compounded drugs are billed on one claim for up to 25 ingredients and are eligible for an additional $0.25/minute reimbursement through a Prior Authorization process as outlined in the Provider Manual Section 27.2.4. Prior to that time, compounded drug claims were billed per each ingredient and were still eligible for the compounded time PA.

[10] Between 8/3/87 and 5/14/04, there was an additional management fee paid for Clozaril/clozapine. The amount of the fee varied from $3.00-$49.00 throughout those years.

[11] Pharmacy tax imposed by state law of $0.10 per claim for every prescription over $3.00, used to fund the dispensing fee (Finch 05/24/07, p. 436-437, 476).

[12] Dispensing prior to 10/1/91 was $3.75. EAC formula appears to have been the same.

**State of Alaska**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | | Dispensing Fee | | Physician Override (Brand Medically Necessary, DAW) | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Amount Billed/ Usual and Customary[11] | FUL | EAC | DOJ Pricing | SMAC | FUL Drugs | Non-FUL/Brand | Dispensing Fee | Additional Compounding Rate | | |
| 2/1/1989 - 4/30/2000 | Y | Y | Y | | N | Lower of: FUL or U&C | AWP - 5% | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. | Y | 3, 4, 5, 6, 7, 12 |
| 5/1/2000 - 9/30/2000 | Y | Y | Y | Y[9] | N | Lower of: FUL or U&C | AWP-5%; 100% AWP[9] | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. | Y | 3, 4, 5, 6, 7, 12 |
| 10/1/2000 - 12/31/2003 | Y | Y | Y | Y[9] | N | Lower of: FUL or U&C | AWP-5%; 100% AWP[9] | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. | Y | 3, 4, 5, 6, 7, 8, 12 |
| 1/1/2004 - 9/22/2004 | Y | Y | Y | Y[9] | N | Lower of: FUL or U&C | AWP-5%; 100% AWP[9] | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. | Y | 3, 4, 5, 6, 7, 8, 10, 12 |
| 9/23/2004 - Present | Y | Y | Y | | N | Lower of: FUL or U&C | AWP - 5% | $3.45 - $11.46[1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. | Y | 3, 4, 5, 6, 7, 8, 10, 12 |

  Data taken from Medicaid State Plan Amendments

Data provided by David Campana, Manager Pharmacy Program, 5/16/08, 6/2/08, 10/8/08, 10/27/08

[1] From 1989 through the present, the Alaska Department of Health and Social Services "determines the dispensing fee after analyzing statewide financial and demographic information about the total cost of dispensing prescriptions. The dispensing fee is based on the result of surveys of Alaska pharmacies' cost of dispensing prescriptions. For each pharmacy, the dispensing fee will be determined using the following formula: $23,192 is added to the result of multiplying the annual number of prescriptions by 5.070. To this number is added the result of multiplying the total store volume expressed in square feet by 2.103. The resulting number is then divided by the total annual number of prescriptions. To the result of this division is added $0.73. However, the division will not pay a dispensing fee less than $3.45 or more than the 90th percentile of all fees determined under the formula. New pharmacies which do not have the information available to establish a fee will be assigned the statewide average fee until a year of data is available.

[2] The payment for compounding prescriptions will be the sum of the costs of each of the ingredients as established above, plus the dispensing fee, plus an additional compounding rate of $5.75 for each 15 minutes required to compound the prescription.

[3] Reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to the recipient. Handling charges are included in the dispensing fee and are not directly reimbursed. If a pharmacy does not provide dispensing fee data as requested by the division, the division will either pay that pharmacy the minimum dispensing fee ($3.45) or sanction the pharmacy.

[4] The average wholesale price published by First DataBank, as updated monthly, is used in the calculation of pharmacy reimbursement; except for payments to providers outside of Alaska, which will be made at the Medicaid rate of their state. For Canadian providers, payments will be the lesser of the normal charge to the typical walk-in, cash paying customer or the lowest total payment made for the same drug to a provider in Alaska.

[5] A special state-established fee will be allowed for unit-dose dispensing of drugs to recipients in long-term care facilities; $11.46 dispensing fee is paid once monthly.

[6] A special state-established dispensing fee and a special state established compounding fee will be allowed for preparing drugs in a sterile environment; IV compounding fee of $10.00 per 15 min. compounding time from 2/1989 through present.

[7] Payment is restricted to drugs supplied by manufacturers who have a signed national agreement or an approved existing agreement under the Medicaid Drug Rebate program of Sec. 1902(a)(54) and Sec. 1927 of the Act, and the only drugs supplied by such manufacturers that are not reimbursed are those excluded under Attached Sheet to Attachment 3.1A.

[8] Per State Plan #00-007, "reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to a recipient in a rural area. Cross-town postage or delivery charges are not covered. Handling charges are included in the dispensing fee and are not directly reimbursed.

[9] From 9/13/2001 through 9/22/2004, drugs whose pricing is determined by the average sale price were reimbursed at 100% of the average wholesale price as provided by the U.S. Department of Justice.

[10] Per State Plan # 04-01, effective 1/1/04, Alaska will begin negotiating supplemental rebates in addition to, and separate from, Federal rebates. CMS authorized the State of Alaska to enter into the Michigan multi-state pooling agreement. The Amendment to the Supplemental Drug Rebate Agreement was submitted to CMS on April 13, 2004 and has been authorized by CMS.

[11] The Usual and Customary field is defined by the NCPDP 5.1 standard data element dictionary as the "Amount charged cash customers for the prescription exclusive of sales tax or other amounts claimed".

[12] Alaska has a most favored nation clause, which was adopted 8/7/96 and changed to present form 2/1/1997.

**DRAFT**

State of: **ARKANSAS**

Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | | "Lower of" Reimbursement Methodology[9] | | | | Estimated Acquisition Costs[3] | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee[2] | | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | SUL | FUL[1] | U&C | EAC | Brand | Generic | | State Upper Limit/FUL | Usual and Customary or EAC | |
| 8/1/1990 - 6/30/1991 | | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% | | $4.16 + (.093) EAC | $4.16 + (.093) EAC | 4, 10 |
| 7/1/1991 - 6/30/1999 | | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% | Y | $4.51 + (.103) EAC | $4.51 + (.103) CFA/SUL | 4, 10 |
| 07/01/1999 4/27/2000 | | Y[5] | Y | Y | Y | AWP - 10.5% | AWP - 10.5% | Y | $5.51 | $5.51 | 10 |
| 4/28/2000 5/7/2000 | | Y[5] | Y | Y | Y | AWP - 17.3% Chains[6] AWP -10.5% independent | AWP - 17.3% Chains[6] AWP -10.5% independent | Y | $5.51 | $5.51 | 10 |
| 5/8/2000 2/28/2002 | | Y[5] | Y[7] | Y | Y | AWP - 10.5% | AWP - 10.5% | Y | $5.51 | $5.51 | 10 |
| 3/1/2002 Present | | Y[4] | Y | Y | Y | AWP - 14% | AWP - 20% | Y | $5.51 | $5.51 | 8, 10 |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data received from Suzette Bridges, 5/7/08, 5/9/08, 5/19/08, 10/23/08, 10/24/08, 11/3/08, 11/5/08

[1] Per TN #99-03, Effective 07/01/99, The Federal upper limit standard that has been adopted for certain multiple source drugs identified in the State Medicaid Manual, Part 6, is based on an aggregate payment equal to an amount that includes the ingredient cost of the drug calculated according to the formula described as follows:  The Federal upper limit is an amount that is equal to 150% of the published price for the least costly therapeutic equivalent (using all available national compendia).  The aggregate, rather than each individual drug identified by HCFA will be less than or equal to the HCFA defined multiple source cost listed in 42 CFR 447.332.

[2] Total charge may not exceed provider's charge to the self-paying public.    Per TN #99-03, effective 07/01/1999, reimbursement for ingredient cost of these drugs is limited to the State generic upper limit.

[3] State has always used First DataBank for pricing.

[4] Dispensing Fee capped at $20 from 07/01/91 to 6/30/1999.

[5] Per TN 99-03, Effective 07/01/1999, Arkansas Medicaid identifies certain generically available drugs and places an upper limit of reimbursement on these drugs.  These are generic drugs not currently listed on the HCFA Upper Limit List.  Acquisition costs on these generically available brands are obtained from multiple sources.  The highest acquisition cost plus a percentage is used to set the State Upper Limit.  Reimbursement for the ingredient cost of these drugs is limited to the State generic upper limit.

[6] Per TN 99-23, the ingredient cost for a chain-owned pharmacy (supplier owns eleven or more retail pharmacies nationally) is set at AWP minus 17.3%.   This was only in system for a few days before being discontinued due to a lawsuit.

[7] Per TN 01-07 Effective 08/01/2001, the State may deviate from the lesser of payment in the event that the State determines under a HCFA approved separate/supplemental drug rebate agreement, that in the aggregate the expenditures for these drugs agreed to in the separate/supplemental rebate agreement would be reduced.

[8] Per TN 02-07 effective 03/01/2002, an additional differential dispensing fee of $2.00 shall be given to pharmacy providers when a generic that does not have a State or federal upper limit is dispensed.

[9] Initially state developed upper limits for drugs that did not have FULs. Prior to 3/2002, the State always paid the lower of U&C, EAC, and SUL/FUL. Beginning 3/2002, State always paid the lower of U&C or SUL/FUL if there is one, or the lower of U&C or EAC.

[10] The ingredient cost per NDC has been the same for all NDC's regardless if they are billed in a compound or as separate ingredients. With the HIPAA conversion, a compound field was developed that allowed multiple ingredients of one compound to be billed as one claim. One DF was paid per claim. Prior to the HIPAA conversion, if a pharmacy billed for a compound, the state really could not differentiate that claim as a compound. Each payable ingredient could be billed as a separate Rx and a DF applied to each RX.

**DRAFT**

State of:   **California**

**Medicaid Pharmacy Reimbursement Methlology**

| Effective Time Period | "Lower of " Reimbursement Methodology | | Estimated Acquisition Cost (EAC)[4] for Brand or Generic | | | | | SMAC Description | Physician Override[6] (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | EAC | FUL[1] | SMAC[2] | Direct Price | AWP | Selling Price | | | Brand or Generic | NF or ICF | |
| 10/16/1989  -  11/30/2002 | Y | Y | Y | Y | Y[3] | AWP - 5% | | 5,8 | Y | $4.05 | | 7 |
| 12/1/2002  -  8/31/2004 | Y | Y | Y | Y | N | AWP - 10% | 11 | 5,10 | Y | $4.05 | | 7,9 |
| 9/1/2004  -  Present | Y | Y | Y | Y | N | AWP - 17% | 13 | 5,14 | Y | $7.25 | $8.00 | 12 |



Data taken from Medicaid State Plan Amendments

Data and supporting documents provided by Kevin Gorospe, Chief Pharmacy Policy Branch, 9/8/08 and 9/10/08.

[1] Federal upper limit in California is also referred to as the "Federal Allowable Cost" (FAC).

[2] State MAC in California referred to as "Maximum Allowable Ingredient Cost" (MAIC) effective 7/31/1990.

[3] California Code of Regulations identified 11 pharmaceutical manufacturers whose products were reimbursed at Direct Price:  Abbott, Ayerst, Lederle, Merck, Parke Davis, Pfizer, Roerig, Ross, Squibb, Upjohn, and Wyeth.  **Direct Price was discontinued effective 11/30/2002.**

[4] AWP and Direct Prices obtained from First DataBank.

[5] MAIC is based "on a reference drug brand which is generically equivalent to the innovator brand, and which is manufactured by a company with production capability to meet the statewide needs of the Medi-Cal program for that drug."

[6] Physician override: DAW (dispense as written) to override FUL/MAIC pricing is allowed pursuant to a Treatment Authorization Request.

[7] Balanced Budget Act of 1994 mandated reimbursement reductions:  $0.50 reduction per claim with dates of service on or after 1/1/1995; $0.25 reduction per claim with dates of service on or after 1/1/2000; $0.10 reduction per claim with dates of service on or after 7/1/2002; $0.50 reduction per claim for dates of service on or after 10/1/2002 (for nursing facilities, the reduction remained at $0.10.) and $0.10 reduction per claim for dates of service on or after 7/1/2004 through 8/31/2004.

[8] MAIC redefined effective 9/30/2002; the MAIC shall be based on the mean of the wholesale selling prices (WSPs) of drugs generically equivalent to the innovator brand available from wholesale distributors.  WSP means the price, including discounts and rebates, paid by a pharmacy to a wholesaler. **WSP pricing was never implemented, so MAICs from the original definition (FN #5) remain in place.**

[9] Effective 1/1/03, TN 03-012 authorizes pharmacy providers to be reimbursed a $4.05 restocking fee for SNF residents; language subsequently changed effective 9/1/04 (TN 04-010) to "…pharmacy providers will be reimbursed a restocking fee equal to the professional fee for legend drugs dispensed in a SNF…"; language removed in TN 05-027, effective 10/01/05. **Restocking fee was never implemented.**

[10] WSP redefined effective 8/16/2004:  WSP "means the weighted (by unit volume) mean price, including discounts, and rebates, paid by a pharmacy to wholesale drug distributors." **WSP pricing not implemented to date, so MAICs from the original definition (FN #5) remain in place.**

[11] Effective 8/16/2004, Selling Price (SP) means the price used in the establishment of the estimated acquisition cost.  The department shall base the Selling Price on the average sales price reported by the manufacturers.  **Selling Price was never implemented**

[12] Reimbursement reductions described in Footnote 7 **discontinued on 9/1/04** per the California Welfare and Institutions Code.

[13] Selling Price redefined effective 8/24/2007; Selling price shall be based on the average manufacturer's price (AMP) plus a percent markup to represent the average purchase price paid by retailers. **Selling Price not implemented to date.**

[14] MAIC redefined effective 8/24/2007; MAIC pricing shall be based on the average manufacturer's price (AMP) of drugs generically equivalent to innovator drugs plus a percent markup to represent the average price paid by retailers.  **AMP-based MAICs not implemented to date, so MAICs from the original definition (FN #5) remain in place.**

**DRAFT**

State of:   Colorado

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[9] Pay the lower of each formula listed | | | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | Brand | Direct Price | Generic | Rural | | | Pharmacies | Institutions | |
| 7/1/1990 - 12/31/1996 | Y | Y | Y | N[8] | AWP-10%[1] | MDC+18%[2] | AWP-10%[1] | | [3] | | $4.08 | $1.89 | |
| 1/1/1997 - 6/30/2001 | Y | Y | Y | N[8] | AWP-10%[1] | DP+18% | AWP-10%[1] | | [3] | | $4.08 | $1.89 | |
| 7/1/2001 - 3/31/2002 | Y | Y | Y | N[8] | AWP-11% | DP+18% | AWP-11% | | [4] | | $4.00 | $1.89 | [5] |
| 4/1/2002 - 6/30/2002 | Y | Y | Y | N[8] | AWP-12% | DP+18% | AWP-12% | AWP-12% | [4] | | $4.00 | $1.89 | [5] |
| 7/1/2002 - 9/30/2002 | Y | Y | Y | N[8] | AWP-14%[6] | DP+18% | AWP-45%[6] | AWP-12% | [4] | | $4.00 | $1.89 | [5] |
| 10/1/2002 - Present | Y | Y | Y | N[8] | AWP-13.5%[6] | DP+18% | AWP-35%[6] | AWP-12% | [4] | Y[7] | $4.00 | $1.89 | [5, 10] |

 Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Catherine Traugott, Pharmacy Manager, 5/21/08 and Kimberly Eggert, Clinical Supervisor, 11/25/08, 11/26/08, 12/2/08

[1] EAC is the lower of the modified AWP or the modified direct cost. The modified AWP is AWP -10%, except for certain high volume single source drugs or multi-source drugs with bioequivalence problems. The pricing for these high volume EAC drugs shall be lower than AWP-10% and will be based on package sizes greater than 100 or pints. EAC for medical institutions, clinic pharmacies and government owned or operated pharmacies shall be the actual cost of the ingredient, if less than the AWP-10% or direct cost plus a handling fee.

[2] The modified direct cost (MDC) is the direct cost plus a handling fee.

[3] State MACs are determined based upon recommendations of the Colorado Drug Formulary Advisory Committee.

[4] State MAC, pharmacy acquisition cost of generic drugs available in the state market place plus 18%.

[5] If the AWP cannot be determined by the Department, then the distributors' or manufacturers' prices will be used to estimate AWP to be modified and used in the drug-pricing file and the price of the drug.

[6] Any pharmacy that is the only Medicaid serving pharmacy within a 25 mile radius may invoice for the difference in price between AWP-14% and AWP-12% for name-brand drugs and AWP-45% and AWP-12% for generic drugs. The invoice shall be submitted to the Department within 30 days of sale and shall contain all the information set forth in Section 8.840 as well as the difference between prices as set forth above and documentation that the pharmacy is the only pharmacy available within a 25 mile radius. The pharmacy shall be reimbursed for the difference between pricing methodologies.

[7] TN 03-018, effective 7/29/03, is the first documentation to describe these requirements in the State Plan.

[8] While the Department has had the authority to implement a State Maximum Allowable Cost Program, such a program does not exist at this time. The Department did place Clozapine on the SMAC 9/1/2002 but was unable to continue the program.

[9] The Department used Medi-Span and Red Book until 8/1/1996 when it switched to First DataBank.

[10] Effective 5/14/07 with the implementation of an updated computer system, unit dose medications are reimbursed using the same methodology as multiple dose medications.

**DRAFT**

State of:   **Colorado**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[9] Pay the lower of each formula listed | | | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | Brand | Direct Price | Generic | Rural | | | Pharmacies | Institutions | |
| 7/1/1990 - 12/31/1996 | Y | Y | Y | N[8] | AWP-10%[1] | MDC+18%[2] | AWP-10%[1] | | [3] | | $4.08 | $1.89 | |
| 1/1/1997 - 6/30/2001 | Y | Y | Y | N[8] | AWP-10%[1] | DP+18% | AWP-10%[1] | | [3] | | $4.08 | $1.89 | |
| 7/1/2001 - 3/31/2002 | Y | Y | Y | N[8] | AWP-11% | DP+18% | AWP-11% | | [4] | | $4.00 | $1.89 | [5] |
| 4/1/2002 - 6/30/2002 | Y | Y | Y | N[8] | AWP-12% | DP+18% | AWP-12% | AWP-12% | [4] | | $4.00 | $1.89 | [5] |
| 7/1/2002 - 9/30/2002 | Y | Y | Y | N[8] | AWP-14%[6] | DP+18% | AWP-45%[6] | AWP-12% | [4] | | $4.00 | $1.89 | [5] |
| 10/1/2002 - Present | Y | Y | Y | N[8] | AWP-13.5%[6] | DP+18% | AWP-35%[6] | AWP-12% | [4] | Y [7] | $4.00 | $1.89 | [5, 10] |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Catherine Traugott, Pharmacy Manager, 5/21/08 and Kimberly Eggert, Clinical Supervisor, 11/25/08, 11/26/08, 12/2/08

[1] EAC is the lower of the modified AWP or the modified direct cost. The modified AWP is AWP -10%, except for certain high volume single source drugs or multi-source drugs with bioequivalence problems. The pricing for these high volume EAC drugs shall be lower than AWP-10% and will be based on package sizes greater than 100 or pints. EAC for medical institutions, clinic pharmacies and government owned or operated pharmacies shall be the actual cost of the ingredient, if less than the AWP-10% or direct cost plus a handling fee.

[2] The modified direct cost (MDC) is the direct cost plus a handling fee.

[3] State MACs are determined based upon recommendations of the Colorado Drug Formulary Advisory Committee.

[4] State MAC, pharmacy acquisition cost of generic drugs available in the state market place plus 18%.

[5] If the AWP cannot be determined by the Department, then the distributors' or manufacturers' prices will be used to estimate AWP to be modified and used in the drug-pricing file and the price of the drug.

[6] Any pharmacy that is the only Medicaid serving pharmacy within a 25 mile radius may invoice for the difference in price between AWP-14% and AWP-12% for name-brand drugs and AWP-45% and AWP-12% for generic drugs. The invoice shall be submitted to the Department within 30 days of sale and shall contain all the information set forth in Section 8.840 as well as the difference between prices as set forth above and documentation that the pharmacy is the only pharmacy available within a 25 mile radius. The pharmacy shall be reimbursed for the difference between pricing methodologies.

[7] TN 03-018, effective 7/29/03, is the first documentation to describe these requirements in the State Plan.

[8] While the Department has had the authority to implement a State Maximum Allowable Cost Program, such a program does not exist at this time. The Department did place Clozapine on the SMAC 9/1/2002 but was unable to continue the program.

[9] The Department used Medi-Span and Red Book until 8/1/1996 when it switched to First DataBank.

[10] Effective 5/14/07 with the implementation of an updated computer system, unit dose medications are reimbursed using the same methodology as multiple dose medications.

**DRAFT**

State of: __CONNECTICUT__

**Medicaid Pharmacy Reimbursement Methodology**

| | Prescription/Legend Drugs | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[1] | | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee[2,7] | |
| Effective Time Period | Usual and Customary | FUL/FAC | EAC | DOJ Pricing | SMAC | Brand/Generic | DOJ Prices[6] | Factor VIII (Factorate, Antihemophilic Factor, AHF)[3] | SMAC Methodology | | | Brand/Generic | Incentive Payment | Other Notes |
| 1/1/1991 - 9/30/1995 | Y | Y | Y | | N | AWP - 8% | | | | | Y | $4.10 | $0.50 |
| 10/1/1995 - 12/30/1999 | Y | Y | Y | | N | AWP - 12% | | | | | Y | $4.10 | $0.50 |
| 12/31/1999 - 6/30/2000 | Y | Y | Y | Y[8] | N | AWP - 12% | Y | | | | Y | $4.10 | $0.50 |
| 7/1/2000 - 8/31/2002 | Y | Y | Y | Y[8] | N | AWP - 12% | Y | AAC + 8% | | | Y | $4.10 | $0.50 |
| 9/1/2002 - 2/4/2003 | Y | Y | Y | Y[8] | N | AWP - 12% | Y | AAC + 8% | | | Y | $3.85 | $0.50 |
| 2/5/2003 - 3/2/2003 | Y | Y | Y | Y[8] | Y | AWP - 12% | Y | AAC + 8% | AWP - 40%[4] | | Y | $3.85 | |
| 3/3/2003 - 9/30/2003 | Y | Y | Y | Y[8] | Y | AWP - 12% | Y | AAC + 8% | AWP - 40%[4] | | Y | $3.60 | |
| 10/1/2003 - 6/30/2004 | Y | Y | Y | Y[8] | Y | AWP - 12% | Y | AAC + 8% | AWP - 40%[4] | | Y | $3.30 | |
| 7/1/2004 - 7/31/2005 | Y | Y | Y | Y[8] | Y | AWP - 12% | Y | AAC + 8% | AWP - 40%[4] | | Y | $3.15 | |
| 8/1/2005 - Present | Y | Y | Y | Y[8] | Y | AWP - 14% | Y | AAC + 8% | AWP - 40%[5] | | Y | $3.15 | [9] |

 Data taken from Medicaid State Plan Amendments

Data taken from Connecticut Medicaid Policy Manual (2003) and Provider Bulletins pb02-34, pb03.16, pb03-38, pb03-85, pb04-47, pb00-50, pb06-78

Data provided by Jason Gott, Pharmacy Consultant, 9/8/2008 and 9/16/08

[1] The State uses First DataBank for its pricing compendium.

[2] The Department will pay an *incentive* professional dispensing fee of fifty cents per prescription, in addition to any other dispensing fee, for substituting a generically equivalent drug product, in accordance with Section 20-185b of the Connecticut General Statutes, for the drug prescribed by the licensed authorized practicioner for a Medicaid recipient except in the following instances:  1)  When a drug product is dispensed for which HCFA has designated a F.A.C.; or 2)  When a compounded prescription is being dispensed; or 3)  When a nonlegend drug is dispensed; or 4)  When the substitution is required by Federal law or regulation. The generic incentive program was implemented prior to 1991 (probably in 1987) and was repealed in 10/2002.

[3] Per State Plan 00-006, the maximum allowable cost paid for Factor VIII (Factorate, Antihemophilic Factor, AHF) pharmaceuticals shall be the Actual Acquisition Cost (AAC) plus eight percent.

[4] Effective 02/05/2003 per State Plan TN #03-002B, the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing Fee:  at least three suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and oral dosage form (including tablets,

[5] Per State Plan 05-006 (effective 08/01/05), the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing Fee:  at least two suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and all dosage forms (including tablets, capsules, eye

[6] DOJ pricing was implemented beginning on 5/1/2000 and continues through today.

[7] For compound drugs, a dispensing fee is applied to *each* detail (ingredient) listed on the claim.

[8] DOJ pricing became effective with dates of service 5/1/2000 for about 400 NDCs and continues to be used today.

[9] Effective with dates of service 10/1/06 and after, CT began reimbursing for drugs dispensed in unit dose packaging for clients residing in nursing facilities, chronic disease hospitals, and intermediate care facilities for the

mentally retarded. Prior to that, the state did not reimburse for any drug dispensed in unit dose if it were also available in non-unit dose packaging.

**DRAFT**

# D R A F T

State of:      **DELAWARE**

**Medicaid Pharmacy Reimbursement Methodology**

| | Prescription/Legend Drugs | | | | | | | | Physician Override | Dispensing Fee |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[4] | | | (DAW, Brand | |
| | | | | | | Traditional Pharmacy | Non-Traditional Pharmacy | SMAC | Medically | |
| **Effective Time Period** | Usual and Customary | FUL | EAC | DMAC | DOJ Pricing | Brand/Generic | Brand/Generic | Methodology | Necessary) | Brand/Generic |
| 10/31/1987 - 4/30/1997 | Y | Y | Y | N | | AAC[1] | AAC[1] | | Y | $3.65 |
| 5/1/1997 - 12/31/2002 | Y | Y | Y | Y | [6] | AWP - 12.9% | AWP - 12.9% | [2] | Y | $3.65 |
| 1/1/2003 - Present | Y | Y | Y | Y | [6] | AWP-14%[3] | AWP-16%[3] | [5] | Y | $3.65 |



Data taken from Medicaid State Plan Amendments

Information received from Linda Murphy, Chief of Program Integrity Unit, 5/19/08, 5/21/08, and 12/5/08

[1] Pricing methodology was based on the lower of U&C, AAC, & FUL. AAC was capped at AWP-5.61% unless providers could demonstrate that their costs exceeded the cap. Based on this, it was very rare that a provider would have exceeded the estimated maximum. Per TN #SP-294, effective 1/1/91, Medicaid reimbursement is limited to only those drugs supplied from manufacturers that have a signed national agreement or an approved existing agreement under Section 1927(a) of the Social Security Act.

[2] Per TN #SP-371, the DMAC payment limits will be calculated, for drugs selected by the DMAP, by First DataBank (FDB) under contract with Delaware Medicaid using the following protocol:
  * All DMACs will be based on the direct prices
  * FDB will use the lowest of either Geneva Generic or Rugby prices. These are national generic labelers/manufacturers that sell directly to pharmacies.
  * Prices for solid dosing forms will be based on a package size of 100. If that size is not available, the next largest size will be used.
  * Prices for liquid products will be based on 120 ml for over-the-counter (OTC) medications and 473-480 ml for legend products.
  * All unit dose packaging calculations will be eliminated.
  * If neither identified labeler markets the product, the median of all other HCFA rebate participating sources will be used to establish a price.
  Drugs are selected based on experience with charges from pharmacies which indicates that the product cost is less than or equal to AWP-20%. Additional medications will be added to the DMAC program after general provider notification.

[3] Per TN #SP-397, effective 01/01/2003: Non-Traditional Pharmacy includes long term care and speciality pharmacies, and Traditional Pharmacy includes retail independent and retail chain pharmacies.

[4] State used First DataBank through 6/2002 and then changed to The Redbook beginning 7/2002.

[5] Per TN #SP-397, effective 01/01/2003: Delaware Maximum Allowable Cost (DMAC) - a maximum price set for reimbursement:  (1) for generics available from three (3) or more approved sources, or (2) when a single source product has Average Selling Prices provided by the manufacturer that indicates the AWP is exaggerated, or (3) if a single provider agrees to a special price.  Any willing provider can dispense the product.

[6] Delaware is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

DRAFT

**State of:**     **DISTRICT OF COLUMBIA**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology[3,6,9,10] | | | | Estimated Acquisition Cost (EAC) Brand/Generic | Physician Overide (DAW,Brand Medically Necessary) | Dispensing Fee | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | | | Standard | Nursing Home Pharmacy Providers[8] | | | |
| | | | | | | | | Non - IV | IV | Compound[1] | Cassettes, TPN, Container Related |
| x/x/1991  -  x/x/1996[1] | Y | Y | Y | N | AWP - 10% | ? | ? | | | $5.50 | |
| x/x/1996  -  7/31/1997[1] | Y | Y | Y | N | AWP - 10% | Y | $3.00 [2] | | | $4.50 | |
| 8/1/1997  -  3/31/2003 | Y | Y | Y | N | AWP[4] - 10% | Y | $3.75 | | | | |
| 4/1/2003  -  12/31/2005 | Y | Y | Y | N | AWP - 10% | Y | $4.50 | | | | |
| 1/1/2006  -  Present | Y | Y[7] | Y | N[5] | AWP - 10% | Y | $4.50 | $4.50 | $7.25 | | $17.25 |



■ (blue)  Data taken from Medicaid State Plan Amendments

■ (red)  Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

■ (purple)  Data provided by Charlene Fairfax, Pharmacy Consultant, DOH, 9/8/08 and 9/12/08

[1] Per 1996 NPC Publication, Approximately 75,000 Medicaid recipients are enrolled in managed care; most receive pharmacy benefits through MCO's.  **Pricing history prior to 8/1/1997 can not be confirmed by current State staff.**

[2] Taken from superceding State Plan Amendment, which references a change from $3.00 to $3.75 effective 08/01/1997.  Effective date for the $3.00 DF unknown.

[3] Per TN 97-08, effective 08/01/1997, The allowable cost, established pursuant to Section 922 or 923 of the Standards for Determining D.C. Medicaid Reimbursement Costs for Prescribed Multiple Source Drugs and Other Drugs and Methodology for Determining Prescription Reimbursement, as appropriate, plus a dispensing fee of $3.75 per prescription.

[4] Per TN 97-08, effective 08/01/1997, The average wholesale price shall be the price, at the time of service, set forth in the most recent listing supplied to the Department by  **First Data Bank** National Drug Data File Services.

[5] Implementation of a State MAC program is currently pending while the District awaits approval of a State Plan Amendment submitted June 2008.

[6] Per TN 05-05, effective 01/01/2006, The Medicaid Agency restricts payment to only those drugs supplied from manufacturers that have signed a national agreement, as specified in Section  1927(a) or have an approved existing agreement.

[7] Per TN 05-05, effective 01/01/2006, The upper limit established by CMS, which is determined by multiplying the cost of the lowest cost drug by one hundred fifty percent (150%) or the estimated acquisition cost, as determined by the Medical Assistance Administration based on information from drug manufacturers and local wholesale price data.

[8] Per TN 05-05, effective 01/01/2006, Pharmacy claims for nursing home pharmacy providers shall be reimbursed at the lower of the following:  a)  The allowable cost, established pursuant to section 5b, 5c, or 5d.3, as appropriate, plus a dispensing fee of four dollars and fifty cents ($4.50) per non-IV (intravenous) prescription; or seven dollars and twenty five cents ($7.25) per IV prescription; or seventeen dollars and twenty-five cents ($17.25) for cassette, TPN (total parenteral nutrition) or container-related prescriptions; or the pharmacy's usual and customary charge for non-Medicaid residents.

[9] Per TN 05-05, effective 01/01/2006, The Department shall supplement the CMS listing by adding drugs and their prices which, in the judgment of CMS, meet the following requirements:  (a) The formulation of the drug approved by the U.S. Food and Drug Administration (FDA) has been evaluated as therapeutically equivalent in the most current edition of its publication,  Approved Drug Products with Therapeutic Equivalence Evaluations  including supplements or in successor publications); and (b) At lease two (2) suppliers list the drug (which has been classified by the FDA as category "A" in its publication,  Approved Drug Products with Therapeutic Equivalance Evaluations,  including supplements or in successor publications) based on the listing of drugs which are locally available.

[10] Fee-for-service pharmacy reimbursement has always been separate from managed care capitation.

**DRAFT**

State of: __Florida__

Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) Pay the lower of each formula listed | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL/GULP[6] | EAC[7] | DOJ Pricing[1] | SMAC | Brand/Generic | CII DEA Controlled Substances | | | Brand/Generic | Nursing Home[5] | In-House Unit Dose Packaging |
| 3/11/1986 - 9/30/1993 | Y | Y | Y | | N | WAC+7% | AWP[8] | | Y | $4.23 | | Add 1 1/2 cents |
| 10/1/1993 - 6/30/1999 | Y | Y | Y | | Y[3] | WAC+7% | AWP; WAC+7%[8] | [3] | | 4.23[2] | | Add 1 1/2 cents |
| 7/1/1999 - 6/30/2000 | Y | Y | Y | Y | Y[3] | AWP-11.5% or Direct+7% or WAC+7% | WAC+7%[8] | [3] | Y | 4.23[2] | | Add 1 1/2 cents |
| 7/1/2000 - 4/29/2002 | Y | Y | Y | Y | Y[3] | AWP-13.25%[4] | | [3] | Y | $4.23 | $4.73 | Add 1 1/2 cents |
| 4/30/2002 - 6/30/2004 | Y | Y | Y | Y | Y[3] | AWP-13.25% or WAC+7% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |
| 7/1/2004 - 6/30/2008 | Y | Y | Y | Y | Y[3] | AWP-15.4% or WAC + 5.75% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |
| 7/1/2008 - Present | Y | Y | Y | Y | Y[3] | AWP-16.4% or WAC + 4.75% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |

- ▇ Data taken from Medicaid State Plan Amendments
- ▇ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council
- ▇ Data taken from Jerry Wells' 5/24/05 amended affidavit and 12/15/04 - 12/16/04 deposition
- ▇ Data provided by AHCA, 10/17/08, 10/27/08, 10/28/08, 12/5/08

[1] Florida implemented the DOJ list of AWPs in May 2000 in response to the DOJ notice. The state initially used the DOJ AWP - 11.5%, but after several pharmacies complained that this was below their cost, the state used the DOJ AWPs as State Maximum Allowable Cost in its pricing logic. This was within weeks of the initial implementation, most likely by July of 2000.

[2] Per the November 1997 and July 1999 Provider Handbooks, there was a $1 of $2 incentive fee for 60 or 90 day supplies. It was deleted in the 2000 Handbook.

[3] Per amended affidavit, first State MACs set July 1, 1994. Per Wells Deposition Volume 2 (12/16/2004), State MACs are determined on an ad hoc basis and not according to a specific formula (pages 32-39).Prior to contracting the SMAC calculation function in October 2004, the program researched actual provider's invoices for appropriate NDCs and set SMACs within a reasonable range based upon provider's acquisition costs. A more detailed and comprehensive methodology is used by the SMAC contractor for a broader range of products, however individual review of invoices is still required in some situations prior to setting SMAC prices to ensure adequate reimbursement for providers.

[4] AWP-13.25% was legislatively added effective 7/1/2000 to the WAC+7% to pay the lower of the two, but an erroneous computer programming change inadvertently bypassed the WAC+7% reimbursement methodology from the reimbursement system. The pricing logic error was not caught until April 2002.

[5] Dispensing fees for nursing home patient prescriptions was $4.73 for State Fiscal Year 2000-2001. Then returned to $4.23.

[6] Per TN 93-56, federal upper limit referred to as the GULP - Generic upper limit of payment as established by the HCFA or the state agency for multiple source drugs.

[7] Per Wells deposition, State has always used First DataBank (12/16/2004, p.36). (State Plan #93-56 reported that pricing provided by Blue Book).

[8] The February 1996 and November 1997 Provider Handbooks state that Class II drugs or items that frequently require drop shipment or purchase from a secondary supplier are priced at the AWP. When AWP pricing was added in 1999, Class II drugs were exempted and still reimbursed at WAC+7% because the drugs were not initially discounted by the wholesaler. Once wholesaler discounts were implemented, the drugs were no longer exempted.

[9] Unit Dose Return to Stock was implemented on 7/1/2004 and remains effective.

<u>D R A F T</u>

State of:  __GEORGIA__

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | | "Lower of" Reimbursement Methodology[1,2,4,5,6] | | | | Estimated Acquisition Cost (GEAC)[8] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Profit Pharmacies | | Not for Profit Pharmacies | |
| | | Usual and Customary[7] | FUL | GEAC | GMAC[11] | Brand | Generic | Schedule II Controlled Drugs[13] | | Brand | Generic | Brand | Generic |
| 1/1/1990 | 6/30/1993 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.41 | $4.41 | $4.11 | 4.11 |
| 7/1/1993 | 12/31/1995 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | [9] | [9] | [9] | [9] |
| 1/1/1996 | 6/30/1998 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.41[10] | $4.41[10] | $4.11[10] | $4.11[10] |
| 7/1/1998 | 3/30/2001 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.63 | $4.63 | $4.33 | $4.33 |
| 4/1/2001 | 6/30/2004 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP | Y[3] | $4.63 | $5.13[12] | $4.33 | $4.83[12] |
| 7/1/2004 | 6/30/2005 | Y | Y | Y | Y | AWP-11% | AWP-11% | | Y[3] | $4.63 | $5.13[12] | $4.33 | $4.83[12] |
| 7/1/2005 | Present | Y | Y | Y | Y | AWP-11% | AWP-11% | | Y[3] | $4.63 | $4.63 | $4.33 | $4.33 |

 Data taken from Medicaid State Plan Amendments

 Data provided by Jerry Dubberly 5/5/08, 5/12/08, 5/15/08 and Etta Hawkins on 10/16/08.

[1] In the event the Department requests bids from drug manufacturers for rebates to reduce drug costs and no acceptable bids are received, the Department may select a single drug supplier for the drug or establish one price for the drug.

[2] Effective 01/01/1991 Drug Rebate Agreement was implemented:  Unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification.   A supplemental rebate program was implemented on 4/1/04.

[3] State does not allow pharmacists at the retail pharmacy to certify a branded drug is necessary when generics are available, with the exception of Dilantin and Tegretol. That requires a PA with info from the MD to the PBM. At least two A-rated generics must be available in the marketplace before the Department considers requiring the use of the generic.

[4] Effective 06/01/2001 outpatient drugs from non-participating rebate manufacturers may be excluded from coverage per Section 1927(d)2 of the Act.

[5] Effective 07/01/2001 the co-payment structure was established to administer the Preferred Drug List Program.

[6] Per TN #03-007 eff. 1/1/1998, pharmacist may enter an appropriate override at point of sale to exceed the monthly prescription limit for the drugs deemed medically necessary by prescriber.

[7] The Department defines usual and customary as the lower of the lowest price reimbursed to the pharmacy by other third party payers (including HMOs), or the lowest price routinely offered to any segment of the general public. Donations or discounts provided to charitable organizations or fees charged to or paid by federal or state funded program are not considered usual and customary charges.

[8] The State used First DataBank (FDB) 7/1/2000 - 12/31/2006 and a combination of FDB and Medispan from 1/1/07 - present.  State also believes FDB used prior to 2000.

[9] Dispensing fee for this period was 10% of the GEAC with a maximum of $15.00. GMAC drugs = GMAC + Dispensing Fee of 10% GEAC up to $15.00.

[10] Between 11/1/1996 and 3/31/1998, pharmacies servicing nursing home residents received a monthly prescription monitoring fee of $18.00 in lieu of a dispensing fee of $4.41 per prescription.

[11] GMAC drugs paid at GMAC plus applicable dispensing fee.

[12] Between 4/1/2001 and 3/14/02, a $.50 generic incentive fee was paid for generic or preferred drugs. Between 3/15/02 and 6/30/05, the program was trimmed to apply to generic drugs only. The program was discontinued on 7/1/05.

[13] Schedule II controlled substances were reimbursed at the AWP from May 1993 through June 2001.

DRAFT

**State of:**      Hawaii
**Medicaid Pharmacy Reimbursement Methodology**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | Legend/Prescription Drugs | | | | | | |
| | | | *"Lower of"* Reimbursement Methodology | | | | | | |
| **Effective Time Period** | **Billed Charges** | **Usual and Customary** | **FUL** | **EAC** | **SMAC** | **Estimated Acquisition Cost (EAC)** | **Physician Override (DAW)** | **Dispensing Fee[5]** | **Compound Drugs** |
| 5/9/1990 - 9/14/1997 | Y | Y | Y[3] | Y | N | AWP[1] - 10.5% | Y[2] | $4.67 [2] | [9] |
| 9/15/1997 - 4/31/2000 | Y | Y | Y[3] | Y | N[4] | AWP[1] - 10.5% | Y | $4.67 [2] | [9] |
| 5/1/2000 - 12/31/2000 | Y | Y | Y[3] | Y[6] | N[4] | AWP[6] - 10.5% | Y | $4.67 [2] | [9] |
| 1/1/2001 - 5/31/2002 | Y | Y | Y[3] | Y[7] | N | AWP[7] - 10.5% | Y | $4.67 [2] | [9] |
| 6/1/2002 - Present | Y | Y | Y[3] | Y[7] | Y[3,8] | AWP[7] - 10.5% | Y | $4.67 [2] | [9] |

  Data taken from Medicaid State Plan Amendments

Data provided by Linda Donovan, Pharmacy Consultant, 5/19/08, 5/20/08, 5/28/08, 7/24/08, 8/6/08, 9/29/08.

[1] State Plan documents state that the average wholesale price will be derived from the most commonly used packaged size in the Bluebook.

[2] Per State Plan #96-002, effective 2/1/96, the dispensing fee for any maintenance or chronic medication shall be extended only once per thirty days without medical authorization from the medical assistance program. Other appropriate limits regarding the number of dispensing fees paid per interval of time shall be determined as necessary by the medical assistance program. Physician override policy was also established on 2/1/96.

[3] Prior authorization for payment above the FUL was implemented 2/26/1996. Exceptions to the FULs and SMACs are: anticonvulsants for seizure, birth control pills, and Coumadin. OxyContin was added 4/10/2007.

[4] The SMAC was implemented per State Plan #97-005, effective 9/15/97. Hawaii SMAC is defined as the "average of the estimated acquisition costs of the three least expensive generics available. At least one of the three products shall be provided by a manufacturer who participates in the Federal drug rebate program."

[5] State Plan did not include the DF amount until 9/15/97.

[6] Starting 5/1/2000, Department of Justice AWPs were provided by First DataBank and 10.5% was deducted to determine the EAC.

[7] Per State Plan #01-004, payment for single source or multiple source drugs was amended: the EAC or the average wholesale price (AWP) when the AWP is the average selling price, plus a dispensing fee. The DOJ AWPs began being paid at 100% AWP, which continues through the present.

[8] The SMAC was implemented 6/1/2002. The lower of reimbursement methodology is used except if there is a FUL and a SMAC for the same drug. In this case, the SMAC is not applied and only the FUL is considered. The Hawaii Administrative Rules were amended 12/27/1997. Prior authorization is required for payment above the SMAC. In rare instances, the SMAC was lifted due to generics not being available.

[9] Per the Medicaid Provider Manual, 19.1.8.4 Compounding Fees, since May 1989 - Compounded drug allowances are determined as follows: Solutions and/or suspensions compounded from two liquids are reimbursed based on the cost of each solution or suspension plus the dispensing fee and $1.00 compounding fee. Ointments or creams compounded from two or more ointments or creams are reimbursed based on the cost of each ointment or cream plus the dispensing fee and $1.50 compounding fee. Ointments or creams compounded from substances levigated into ointment or cream base are reimbursed based on the cost of each ointment or cream plus the dispensing fee and $2.50 compounding fee.

DRAFT

State of:          **IDAHO**

Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | Prescription/Legend Drugs | | | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[11] | | | |
| | Usual and Customary | FUL | EAC | SMAC | Direct Pricing[1] | DOJ Pricing[12] | Brand/Generic | | Brand/Generic | Unit Dose[4] |
| 1/1/1991  -  7/31/1991 | Y | Y | Y | N | Y | | AWP[2] | | $4.30 | $5.25 |
| 8/1/1991  -  1/31/1993 | Y | Y | Y | N | Y | | AWP[2] | | $4.60 | $5.65 |
| 2/1/1993  -  6/30/1995 | Y | Y | Y | N | Y | | AWP[2] | | $4.30 | $5.25 |
| 7/1/1995  -  6/30/1996 | Y | Y | Y | N | Y | | AWP[2] | | $4.41 | $5.38 |
| 7/1/1996  -  3/16/1999 | Y | Y | Y | Y[3] | Y | | AWP[2] | Y | $4.54 | $5.54 |
| 3/17/1999  -  10/14/2001 | Y | Y | Y | Y | N[9] | | AWP - 11% | Y | $4.94 | $5.54 |
| 10/15/2001  -  Present [7,8] | Y | Y | Y | Y[5 10] | N[9] | | AWP - 12% | Y[6] | $4.94 | $5.54 |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Mr. Paul Leary, Division of Medicaid, 5/2/08, 5/7/08, 5/14/08, 10/28/08.

[1] Per 1992-1998 NPC Publications:  Direct account pricing for the following manufacturers:  (1992-1995) NPC Publication - Wyeth-Ayerst, Merck Sharp & Dohme, Parke-Davis, Pfizer, Pfipharmecs, Roerig, and Upjohn.  (1996) NPC Publication -  Wyeth-Ayerst, Merck Sharp & Dohme, Pfizer, Roerig, Upjohn, ESI Robbins, Lederle, and Storz.  (1997) NPC Publication - Wyeth-Ayerst, Merck & Co., Pfizer, Roerig, Pharmacia & Upjohn, ESI Robbins, Lederle, Pratt and Storz. (1998) NPC Publication - Wyeth-Ayerst, Merck & Co, Pfizer, Roerig, Pharmacia & Upjohn, ESI, Robbins, Lederle, Pratt, and Storz.

[2] EAC = 100% AWP due to a pharmacy moratorium in place through 3/15/1999.

[3] Per 1997-1998 NPC Publications:  There is only one drug on the State MAC list.

[4] Per TN 99-001, effective 03/01/1999:  Unit dose fee is $5.54 per prescription, and is defined as a system of providing individually sealed and appropriately labeled unit dose medication that ensures no more than a 24-hour supply in any client's drug tray at any given time.  These trays shall be delivered to the facility at least five days per week.

[5] Per 2002 NPC Publication:  Pharmacy must provide invoice or pharmacy showing that they are charging below cost.

[6] Per 2003-2004 NPC Publication:  Override requires failure of two generic formulations and submission of a MedWatch form.

[7] Per TN 03-002, effective 04/01/2003:  Supplement Rebate Agreement:  Based on the requirements in Section 1927 of the Act, the state has the following policies for the supplemental drug rebate program for Medicaid recipients: The model rebate agreement between the state and drug manufacturers for drugs provided to Medicaid recipients, submitted to CMS on July 11, 2003 and entitled "Supplemental Rebate Agreement: has been approved by CMS.....The unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification, in accordance with 1927 (b)(3)(D).

[8] Per State Plan Amendment #06-007, effective May 1, 2006, the State of Idaho entered into a multi-state pooling program to negotiate supplemental drug rebates.  This program is known as The Optimal PDL Solution (TOP$).

[9] Direct pricing discontinued 3/15/1999.

[10] Beginning January 2003, SMAC methodology based on pharmacy surveys to obtain cost of purchase, which is then inflated to 150% to establish price. Prior to this time, very little SMAC pricing was done.

[11] Pricing compendium used was First DataBank.

[12] Idaho is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

DRAFT

**State of:**   ILLINOIS

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Estimated Acquisition Cost (EAC)[9] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Professional/Dispensing Fee | | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Brand | Generic | | | Brand | Generic | |
| 9/1/1989 - 6/30/1995 | Y | Y | Y | Y | | AWP - 10% | AWP -10% | 5 | N[8] | $3.58 to $15.00[1] | $3.58 to $15.00[1] | 7 |
| 7/1/1995 - 6/30/1998 | Y | Y | Y | Y | | AWP - 10% | AWP - 12% | 5 | N[8] | $3.30 to $14.72[2] | $3.58 to $15.00[2] | 7 |
| 7/1/1998 - 6/30/1999 | Y | Y | Y | Y | | AWP - 10% | AWP - 12% | 5 | N[8] | $3.40 to $15.16[3] | $3.69 to $15.45[3] | 7 |
| 7/1/1999 - 12/14/2000 | Y | Y | Y | Y | Y[10] | AWP - 10% | AWP - 12% | 5 | N[8] | $3.45 to $15.40[4] | $3.75 to $15.70[4] | 7 |
| 12/15/2000 - 6/30/2001 | Y | Y | Y | Y | Y[10] | Lower of: AWP - 10% or WAC + 8% | Lower of: AWP - 12% or WAC + 12% | 5 | N[8] | $4.17 | $4.17 | 7 |
| 7/1/2001 - 6/30/2002 | Y | Y | Y | Y | Y[10] | AWP - 11% | AWP - 20% | 5 | N[8] | $4.00 | $5.10 | 7 |
| 7/1/2002 - Present | Y | Y | Y | Y | | AWP - 12% | AWP - 25% | 6 | N[8] | $3.40 | $4.60 | 7 |

Legend/Prescription Drugs — *"Lower of"* Reimbursement Methodology



Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data taken from Medicaid State Plan Amendments

Data provided by Lisa Voils on 10/2/08, 10/29/08, 12/2/08, 12/16/08

[1] The formula for calculating the professional/dispensing fee is: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[2] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.58 minus $0.28 for EAC up to $35.80, and 10% of EAC minus $0.28 for EAC above $35.80, up to a maximum dispensing fee of $15.00 minus $0.28; GENERIC: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[3] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.69 minus $0.29 for EAC up to $36.90, and 10.3% of EAC minus $0.29 for EAC above $36.90, up to a maximum dispensing fee of $15.45 minus $0.29; GENERIC: $3.69 for EAC up to $36.90, and 10.3% for EAC above $36.90, up to a maximum dispensing fee of $15.45.

[4] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.75 minus $0.30 for EAC up to $37.50, and 10.46% of EAC minus $0.30 for EAC above $37.50, up to a maximum dispensing fee of $15.70 minus $0.30. GENERIC: $3.75 for EAC up to $37.50, and 10.46% for EAC above $37.50, up to a maximum dispensing fee of $15.70.

[5] Reference NDC up until 7/1/2002.

[6] From 7/1/2002 to 3/1/2005, MACs were set based on EAC and other State Medicaid MAC rates. From 3/1/2005 to present, Myers & Stauffer LC, contractor, sets rates.

[7] State allows one dispensing fee per ingredient (begin date unknown).

[8] State has never used the DAW code on the claim to pay differently; has always required medical justification through the PA process.

[9] State has always used First DataBank.

[10] Illinois used DOJ prices sent by First DataBank from 5/1/2000 through 5/31/2002.

**DRAFT**

State of:     **INDIANA**

Medicaid Pharmacy Reimbursement Methodology

| | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[3] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
| Effective Time Period | Usual and Customary[1] | FUL | EAC[3] | SMAC | DOJ Pricing | Brand | Generic | SMAC Methodology | | Brand/Generic | Compounded Prescriptions |
| 11/13/1989  -  5/29/2002 | Y | Y | Y | N | [6] | AWP - 10% | AWP - 10% | | Y | $4.00 | |
| 5/30/2002[2]  -  9/30/2005 | Y | Y | Y | Y | [6] | AWP - 13.5% | AWP - 20% | [4] | Y | $4.90 | [5] |
| 10/1/2005  -  Present | Y | Y | Y | Y | [6] | AWP - 16% | AWP - 20% | [4] | Y | $4.90 | [5] |

  Data taken from Medicaid State Plan Amendments

Data provided by OMPP on 10/2/08, 10/9/08, 10/15/08, 10/16/08, 10/20/08

[1] Usual and customary represents the provider's submitted charge.

[2] Changes to EAC, DF, and implementation of SMAC apply to claims with *dates of service* beginning on 5/30/02.

[3] For purposes of calculating the EAC, the State initially used Redbook, then switched to Medi-Span, and then to First DataBank beginning sometime prior to 2000.

[4] According to the SMAC Manual, drug acquisition costs were obtained through an acquisition cost survey from a sample of pharmacies.  An acquisition cost survey was performed three times, each of which resulted in new State MAC rates, or rate rebasing, effective on June 19, 2002, October 6, 2003, and February 14, 2005. Beginning in June 2005, the State negotiated agreements with a small group of Indiana pharmacies to obtain drug acquisition cost data on a monthly basis in electronic format in order to determine updates and additions to State MAC rates.

[5] Per the Pricing Manual, compounded prescriptions are paid at the detail level. Each ingredient of the compounded prescription is priced individually, following the same pricing methodology as if it were a single ingredient claim. The amounts are added together and compared to the overall billed amount.  A dispensing fee of up to $4.90 is added to the total ingredient cost of each legend compounded prescription to arrive at the calculated Medicaid-allowable amount.

[6] Indiana is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001). The state was unable to verify implementation of this pricing policy.

01/07/09

**DRAFT**

State of: __Iowa__

**Medicaid Pharmacy Reimbursement Metholology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | SMAC Description | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL[1] | EAC | DOJ Pricing | SMAC | Brand/Generic [6] | | | MAC and Schedule II drugs | Non-MAC drugs | |
| 7/1/1990 - 1/31/1999 | Y | Y | Y | | N | Lesser of AWP-10% or submitted acquisition cost | | Y | $4.02 [2] | $6.25 [3] | 4, 8, 11 |
| 2/1/1999 - 7/20/1999 | Y | Y | Y | | N | AWP-10% | | Y | $4.02 [5] | $6.25 | 4, 11 |
| 7/21/1999 - 6/30/2000 | Y | Y | Y | | N | AWP-10% | | Y | $4.10 | $6.38 | 4, 11 |
| 7/1/2000 - 6/30/2002 | Y | Y | Y | Y[10] | N | AWP-10% | | Y | $4.13 | $6.42 | 4, 11 |
| 7/1/2002 - 6/30/2003 | Y | Y | Y | Y[10] | Y[7] | AWP-10% | 9 | Y | $5.17 | $5.17 | 4, 11 |
| 7/1/2003 - 6/30/2005 | Y | Y | Y | Y[10] | Y | AWP-12% | 9 | Y | $4.26 | $4.26 | 4, 11 |
| 7/1/2005 - 6/30/2006 | Y | Y | Y | Y[10] | Y | AWP-12% | 9 | Y | $4.39 | $4.39 | 11 |
| 7/1/2006 - Present | Y | Y | Y | Y[10] | Y | AWP-12% | 9 | Y | $4.52 | $4.52 | 11 |



Data taken from Medicaid State Plan Amendments

Data provided by Susan Parker, DHS, on 5/9/08, 10/28/08, 10/29/08

[1] FUL is described as the maximum allowable cost or MAC in all of Iowa's State Plan documents, and the state MAC is later referred to as SMAC.

[2] The dispensing fee is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $4.02.

[3] The dispensing fee is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $6.25.

[4] An additional reimbursement of one cent per dose shall be added to the allowable ingredient cost of a prescription for an oral solid if the drug is dispensed to a patient in a nursing home in unit dose packing prepared by the pharmacist.

[5] Schedule II drugs no longer referenced.

[6] The State of Iowa used the Average Wholesale Price (AWP) as published by First Data Bank from 7/1/90 - 6/24/05.  From 6/25/05 to the present, Iowa has used the AWP as published by MediSpan.

[7] The State Plan Amendment for the SMAC program was approved effective 11/1/02 and the SMAC program was implemented on January 13, 2003.

[8] Beginning in 1987 and through 2/29/92, an incentive fee of $.50 was paid to pharmacies if $1.50 was saved per prescription by the use of generics.

[9] Beginning 11/1/02, SMAC prices were set as Average Wholesale Acquisition Price for a drug and all equivalents adjusted by a multiplier of at least 1.0, plus a dispensing fee.  The multiplier is set by the Department on a quarterly basis, or as necessary, to ensure adequate product availability.  Drug acquisition cost information is obtained through surveys of providers who are required to submit invoices. The Department used a multiplier of 2.1 until 3/28/03, when the multiplier was reduced to 1.4. The initial criteria for inclusion of a drug in the SMAC rate setting was:
*  SMAC Multiplier: Once the multiplier is applied to the average acquisition cost (brand cost information is included), any SMAC rate that exceeds the EAC or the FUL rate would not be applied.
*  Minimum FDA Drug Rating:  Require AB-Rated Products  (Beginning 9/13/04, the minimum drug rating was changed to A-Rated Products.)
*  Minimum Availability Threshold: Require generic products available from a minimum of 3 separate drug manufacturers.
*  Minimum Cost Information: Require at least 30 pricing observations for any brand product and its equivalent drugs.
*  Narrow Therapeutic Index drugs may have been excluded from inclusion in SMAC rates based on feedback from the Drug Utilization Review Commission Commission.  However, an FUL rate may/may not have been applied.

[10] DOJ pricing was implemented on 12/1/2001 and continues to be used through the present.

[11] Effective 10/1/2003 with NCPDP version 5.1 implementation, all compounds had to be billed on an ingredient by ingredient basis. Prior to 5.1, Iowa Medicaid allowed pharmacies to bill for compounded claims using the NDC of one of the active ingredients, adjusting the price to the full compound price online for those claims $30 and under.  Claims that exceeded $30 had to be billed on the Universal Claim Form on an ingredient by ingredient basis.

10/31/08

**D R A F T**

State of: **KANSAS**

Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | "Lower of" Reimbursement Methodology[7, 8] | | | | | Estimated Acquisition Cost (EAC)[6,13] | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee[1,3,4,5] Brand/Generic |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Single Source | Multi-Source | IV Fluids | Blood Fraction Products | | |
| x/x/1991  -  x/x/1992 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | | | Y[11] | $3.75 - $6.10[2] |
| x/x/1992  -  x/x/1995 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | | | Y[11] | $3.85 - $6.97[2] |
| 1/1/1995  -  4/30/1996 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | AWP - 50% | | Y[11] | $3.85 - $6.97[2] |
| 5/1/1996  -  x/x/1997 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $2.52 - $6.71[2] |
| x/x/1997  -  x/x/1998 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $4.82 (avg)[2] |
| x/x/1998  -  x/x/1999 | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $4.95 (avg)[2] |
| x/x/1999  -  7/31/2000 | Y | Y | Y | Y[14] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $2.78 - $6.71[2] |
| 8/1/2000  -  6/30/2002 | Y | Y | Y | Y[14] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $4.50 [8] |
| 7/1/2002  -  9/30/2002 | Y | Y | Y | Y[14] | Y | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 10/1/2002  -  2/17/2003 | Y | Y | Y | Y[14] | Y | AWP - 11% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 2/18/2003  -  10/15/2003 | Y | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 10/16/2003  -  5/27/2004 | N[9] | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[11] | $3.40 [8] |
| 5/28/2004  -  4/3/2005 | N | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[12] | $3.40 [8] |
| 4/4/2005  -  Present | Y[10] | Y | Y | Y[14] | Y | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[15] | Y[12] | $3.40 [8] |

Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by the Kansas Health Policy Authority, 6/3/08, 6/4/08, 6/12/08, 6/19/08, 11/10/08, and 12/1/08

[1] Per 1991 NPC Publication: The professional fees are based upon each individual pharmacy's historical operating costs as determined by analysis of verifiable data submitted by each pharmacy to the agency. Professional fee determination is limited to the lowest of: (a) the 85th percentile of allocated costs per prescription for all pharmacies filing a cost report plus a reasonable profit, or (b) usual and customary fee charges of each individual pharmacy as determined by survey. "Acquisition cost" means the allowable price determined by the agency for each covered drug in accordance with state and federal regulations.

[2] Per 1991 - 2000 NPC Publications: Variable fee per prescription established for each individual participating pharmacy within the ranges of  (1991) $3.75 - $6.10; (1992, 1993, 1994, 1995) $3.85 - $6.97; (1996) $2.52 - $6.71; (1997) average $4.82; (1998) average $4.95; (1999, 2000) average $4.94. Per State, DFs set by an accounting firm.

[3] Per TN MS-95-02, effective 01/01/1995: The dispensing fee assigned to each pharmacy provider is based upon agency determinations which consider the lesser of the individual pharmacies' average gross margin per prescription as charged to the general public and determined by a usual and customary prescription price survey submitted by the pharmacy, or the fee determined per analysis of the individual pharmacies' cost study report, which is submitted by the pharmacy and reflects the labor and overhead costs required to dispense a single prescription, plus a standard profit factor.  The totals from these calculations are reduced by $.26 for the final dispensing fee determination.  The individual pharmacies' allowable expenses are subject to percentile limitations as determined by an array of participating providers.  Individual fee determinations are also subject to reevaluation and adjustment when report data exceeds regression analysis norms by a factor greater than 1.0 standard error of estimation.

[4] Per TN MS-95-02, effective 01/01/1995: Pharmacy providers who do not submit a usual and customary prescription price survey and a cost study report, when required, are reimbursed at the agency-determined allowable product cost for covered drugs with a zero dispensing fee.  Physicians who dispense drugs to Medicaid/MediKan recipients are reimbursed at the agency-determined allowable product cost for covered drugs plus a dispensing fee of $1.00 per prescription.

[5] Per TN MS-95-02, effective 01/01/1995:  Each of the three following types will have a dispensing fee assignment set at the mean fee determined from the pharmacy cost study analysis:  (1) Out-of-state pharmacies which are not located in border cities as defined in the Provider Manual, and do not exceed 100 prescription claims annually; (2) New pharmacies, with less than six months' history completed prior to the date specified in the cost report; (3) Acute care institutional pharmacies.

[6] Per 1994 and 1995 NPC Publications: Ingredient reimbursement basis is based on  **direct prices for Merck.**

[7] Per 1996-2006 NPC Publications: An increasing number of Medicaid recipients are enrolled in MCOs; all receive most pharmacy services through managed care. Certain drug classes remain paid at fee for service.

[8] Effective 07/06/2001: If a drug product is issued to a patient of a long-term care facility and subsequently is not used, the long-term care facility shall return the drug product to the vendor pharmacy for repackaging and crediting to the secretary if the drug product meets the following conditions: (1) The drug product is a prescription drug product that is not a controlled substance; (2) The product is sealed in individually packaged units or in a multiple-dose, sealed container approved by the FDA from which no doses have been withdrawn; (3) The drug product is returned to the vendor pharmacy at least 90 days before the expiration date; (4) The drug product is determined to be of acceptable integrity by a licensed pharmacist.  Each provider of pharmacy services may be reimbursed the reasonable cost of returning and crediting unused drug products as determined by the secretary, described in table in TN MS-02-02: Level 1 - Credited Prescription Amount $5.00 to $8.25 - $1.70 adjusted dispensing fee (DF); Level 2 - Credited Prescription Amount $8.26 to $11.50 - $2.50 adjusted DF; Level 3 - Credited Prescription  Amount  $11.51 to $14.75 - $3.25 adjusted DF; Level 4 - Credited Prescription  Amount $14.76 to  $17.99 - $4.00 adjusted DF; Level 5 - Credited Prescription Amount $18.00 and over - $4.50 adjusted DF.  Note: these are not really adjusted DFs, but additional fees given to providers for restocking, etc.

[9] New MMIS implemented; the Gross Amount Due (GAD) field was taken from the NCPDP 5.1 claim. The Usual & Customary Pricing field was not carried forward in the new MMIS.

[10] Utilize Usual and Customary and GAD for billed amounts effective with processing dates 4/4/05.

[11] Higher reimbursement for certain brand drugs paying at SMAC or FUL. This began 2/19/1990 with a small list of NDCs.

[12] Implemented policy E2003-032 to allow single source reimbursement (currently AWP-13%) for brand multi-source drugs if criteria met.

[13] The State used MediSpan under the old EDS contract and First DataBank with BCBS and the current EDS contract.

[14] Effective May 1, 2000, Kansas used the DOJ prices on the 400 to 500 NDCs as SMAC (State Maximum Allowable Cost) prices. They were not used as an AWP. Currently these SMACs remain on several of the DOJ NDCs. Some of the DOJ NDCs have been adjusted to meet provider costs because several pharmacies could not access certain DOJ NDCs at the DOJ AWP's.

[15] Reimbursement for blood fractions is AWP-30% or the Kansas Department of Health and Environment contract pricing, whichever is less.

DRAFT

State of:  **KENTUCKY**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology [1,2] | | | | | Estimated Acquisition Cost (EAC)[10] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | | Compound Drugs |
| | Usual and Customary[13] | Gross Amount Due | FUL/FMAC | EAC[10] | SMAC | Brand | Generic | | | Brand | Generic | Brand NF Resident[4] | Generic NF Resident | Unit Dose Packaging | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1988 - 3/31/1991 | Y | Y[14] | Y | Y | N | AWP - 5% or DP[4] | AWP - 5% or DP[4] | | Y[9] | $3.25 | $3.25 | | | | |
| 4/1/1991 - 6/30/1991 | Y | Y[14] | Y | Y | N | AWP - 5% or DP[4] | AWP - 5% or DP[4] | | Y | $4.75 | $4.75 | | | | |
| 7/1/1991 - 1/15/2001 | Y | Y[14] | Y | Y | N | AWP - 10% or DP | AWP - 10% or DP | | Y | $4.75 | $4.75 | $5.75 | $5.75 | Plus $.02-$.04 [5] | |
| 1/16/2001 8/14/2001 | Y | Y[14] | Y | Y | N | AWP - 10% | AWP - 10% | | Y | $4.51 | $4.51 | $4.51 | $4.51 | | |
| 8/15/2001 3/31/2002 | Y | Y[14] | Y | Y | N | AWP - 10% | AWP - 10% | | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | |
| 4/1/2002 3/31/2003 | Y | Y[14] | Y | Y | N | AWP - 12% | AWP - 12% | | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | |
| 4/1/2003 12/2/2004 | Y | Y[14] | Y | Y | Y | AWP - 12% | AWP - 12% | [11] | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | |
| 12/3/2004 2/22/2005 | Y | Y[14] | Y | Y | Y | AWP - 12% | AWP - 12% | [12] | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [6] | [16] |
| 2/23/2005 Present | Y | Y[15] | Y | Y | Y | AWP - 15% | AWP - 14% | [12] | Y | $4.50 | $5.00 | $4.50 | $5.00 | Plus $.02 [7,8] | [16] |

<span style="color:blue">Data taken from Medicaid State Plan Amendments</span>

<span style="color:red">Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council</span>

[1] Effective 01/16/2001 the following drugs are excluded from coverage through the Outpatient Pharmacy Program: LTE (less than effective) FDA rated drugs; a drug that has reached the termination date established by the drug manufacturer; a drug for which the drug manufacturer has not entered into or has not complied with a rebate agreement in accordance with 42 USC 1396r-8(a) unless there has been a review and determination by the department that it shall be in the best interest of Medicaid recipients for the department to make payment for the non-rebated drug; and, a drug provided to a recipient in an institution in which drugs are considered a part of the reasonable allowable costs under the Kentucky Medicaid Program.

[2] Participating dispensing physicians who practice in counties where no pharmacies are located are reimbursed for the cost of the drug only, with the cost computed as the MAC, the EAC, or the physicians usual and customary charge to the general public.

[3] Per TN #90-35 effective 10-1-90, a state maximum allowable cost shall be established for covered drugs which are available from three or more sources and which are not considered non-interchangeable by the FDA or included on the non- equivalent drug product formulary issued by the Kentucky Board of Pharmacy. The state maximum allowable cost shall be set at the median of the estimated acquisition costs for the listed drugs.

[4] AWP - 5% or Direct Price if the AWP is not available, based on the most frequently purchased package size and the most frequent method of purchase (AWP or direct), as reported by suppliers and wholesalers.

[5] For nursing facility residents meeting Medicaid patient status criteria, dispensing fee is limited to two (2) per drug within a calendar month for other drugs, except Schedules II, III, and IV controlled substances, and non-solid dosage forms which are limited to four (4) dispensing fees per drug per calendar month for legend intravenous drugs. In addition to the $5.75 dispensing fee two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

[6] For nursing facility residents meeting Medicaid patient status, in addition to the $4.51 dispensing fee two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

[7] For nursing facility residents meeting Medicaid patient status, in addition to the $4.50 & $5.00 dispensing fee two (2) cents per unit dose for repackaging a non-unit dose drug in unit dose form by the long term care pharmacist.

[8] Drugs for Inpatients Receiving Nursing Facility Care: **Nursing Facility Ventilator dependent units** shall be as part of the all inclusive rate for the unit and the payments for such drugs shall be in accordance with the MAC/EAC upper limits.

[9] Effective 12-28-90 with TN #90-38.

[10] The Commonwealth uses First DataBank for pricing.

[11] A SMAC may be established for a drug only if a federal upper limit did not exist for the drug and at least one really and nationally available A-rated generic product did exist.

[12] A SMAC may be established for any drug (including generic) for which two or more A-rated therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference exist. The SMAC will be determined by taking into account drug price status (non-rebatable, rebatable), marketplace status (obsolete, regional availability), equivalency rating (A-rated) and relative comparable pricing. Other factors considered are clinical indications of generic substitution, utilization, and availability in the marketplace. Products are then sorted into drug groups by GCN, and then a filter is applied to remove all drug products that are obsolete, are not therapeutically equivalent, or are not available in the marketplace. The acquisition cost for the remaining drug products are analyzed to produce the EAC for the drug group give due consideration (i.e. utilization and availability) to the lower cost products.

[13] Usual and customary defined as the amount that a pharmacist can typically expect to receive from a pharmacy benefits manager (PBM); reflects the real world experience in actual reimbursement rates from PBMs.

[14] Gross amount due defined as the acquisition costs of the ingredients plus the expected dispensing feel paid. This does not represent the amount that a pharmacy would expect as reimbursement from the PBM.

[15] Gross amount due defined as the total price of a drug claimed from all sources. This includes the drug ingredient cost paid, the dispensing fee paid, and any applicable unit dose re-packaging incentive payments.

[16] Payment for compounded prescription will be based upon the EAC from the current price in effect on the date of service for each ingredient, one of which must be a legend item. A fee of $1.00 will be added to the reasonable dispensing fee for the extra compounding time required by the pharmacist.

DRAFT

**State of:**  Louisiana

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement for Brand Drugs | | "Lower of" Reimbursement for Generic Drugs | | | | Estimated Acquisition Cost (EAC)[5] | | | Physician Override (DAW, Brand Medically Necessary) | | |
| Effective Time Period | Usual and Customary | EAC | Usual and Customary | FUL | EAC | LMAC | Independent | Chain | LMAC Methodology | | Dispensing Fee | Other |
| 9/1/1990  -  9/30/1991 | Y | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5%[1] | [2] | Y | $4.68 | |
| 10/1/1991  -  6/30/1992 | Y | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5%[1] | [2] | Y | $5.00 | |
| 7/1/1992  -  6/30/1993 | Y | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5%[1] | [2] | Y | $5.30 | |
| 7/1/1993  -  6/30/1994 | Y | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5%[1] | [2] | Y | $5.54 | |
| 7/1/1994  -  6/30/1999 | Y | Y | Y | Y | Y | Y | AWP-10.5% | AWP-10.5%[1] | [2] | Y | $5.77 | |
| 7/1/1999  -  1/31/2000 | Y | Y | Y | Y | Y | Y | AWP-10.5% | AWP-13.5%[3] | [2] | Y | $5.77 | |
| 2/1/2000  -  8/5/2001 | Y | Y | Y | Y | Y | Y | AWP-15.0% | AWP-16.5%[4] | [2] | Y | $5.77 | |
| 8/6/2001  -  Present | Y | Y | Y | Y | Y | Y | AWP-13.5% | AWP-15.0%[4] | [2] | Y | $5.77 | [6] |

<span style="color:blue">■</span> Data taken from Medicaid State Plan Amendments

<span style="color:red">■</span> Data taken from National Pharmaceutical Council Benefits Summary

<span style="color:green">■</span> Data taken from Louisiana Provider Updates

<span style="color:purple">■</span> Data provided by MJ Terrebonne and Rachel Broussard, DHH, on 10/7/08, 10/8/08, 10/21/08, 10/23/08

[1] Independent and chain pharmacies were not separately distinguished for reimbursement until 7/1/1999.

[2] The Louisiana Maximum Allowable Cost (LMAC) is the median AWP cost for a specific strength/unit drug determined by listing the wholesale costs for each readily available manufacturer, labeler, etc. and taking the median of those AWP costs.

[3] Chain pharmacies have five or more Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[4] Chain pharmacies have more than 15 Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[5] EAC pricing is provided by First DataBank.

[6] Beginning on 7/1/2005, Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

DRAFT

State of:  **Maine**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Reimbursement Methodology — Pay the "Lower of" the amounts listed | | | | | Estimated Acquisition Cost (EAC)[17] | | | | | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | | |
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC[1] | Retail | | Institutional[7] | Specialty[14] | Covered brand/ generic drugs Not on DSDL[9] | Covered brand/ generic drugs on DSDL[9] | Mail Order Pharmacy Brand | Mail Order Pharmacy Generic | | Brand | Generic | Compound Drugs | All Mail Order Drugs |
| | | | | | | Brand | Generic | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/1989 - 3/14/1996 | Y | Y | Y | | Y | 2 | 2 | | | | | | | Y | $3.35 | $3.35 | 3 | |
| 3/15/1996 - 6/30/2002 | Y | Y | Y | Y[19] | Y | AWP-10% | AWP-10% | AWP-71/2%[7] | | | | | | Y | $3.35 | $3.35 | 3,4,5,6 | |
| 7/1/2002 - 8/7/2003 | Y | Y | Y | Y[19] | Y | AWP-13%[8] | AWP-13%[8] | | | | | | | Y[18] | $3.35 | $3.35 | 3,4,5,6 | |
| 8/8/2003 - 2/2/2004 | Y | Y | Y | Y[19] | Y | | | | | AWP-13%[9] | AWP-17%[9] | | | N | $3.35 | $3.35 | 10 | |
| 2/3/2004 - 5/15/2004 | Y | Y | Y | Y[19] | Y | AWP-15%[11] | AWP-13%[11] | | | | AWP-17%[9] | | | N | $3.35 | $3.35 | 10 | |
| 5/16/2004 - 10/31/2005 | Y | Y | Y | Y[19] | Y | AWP-15%[13] | AWP-13%[13] | | | | AWP-17%[12] | AWP-20% | AWP-60% | N | $3.35 | $3.35 | 10 | $1.00 |
| 11/1/2005 - 6/30/2006 | Y | Y | Y | Y[19] | Y | AWP-15%[13] | AWP-13%[13] | AWP-17% | | | | AWP-20% | AWP-60% | N | $3.35 | $3.35 | 10 | $1.00 |
| 7/1/2006 - Present | Y | Y | Y | Y[19] | Y | AWP-15%[15] | AWP-13%[15,16] | AWP-17% | | | | AWP-20% | AWP-60% | N | $3.35 | $3.35 | 10 | $1.00 |

▮ Data taken from Medicaid State Plan Amendments

▮ Data taken from rule changes/policy manual documents produced in response to Abbott subpoena

▮ Policy clarification provided by Ms. Jude Walsh, 7/22/08, 11/03/08

[1] Maine identifies its State MAC program as the Maine Maximum Allowable Cost (MMAC) program.

[2] EAC is as close as feasible to the price paid for high volume drugs by providers. The Department will periodically publish a list of drugs covered by EAC, MAC, or MMAC and their prices. Reimbursement at the AWP will be made for those drugs not covered by EAC, MAC or MMAC. AWP is the price generally charged by wholesalers and will not exceed 18% above direct cost. All unit dose or modified unit dose drugs except liquids and ointments and Class II controlled drugs shall be returned to the pharmacy for credit.

[3] Professional fees for compound drugs are as follows:  $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; and $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[4] Effective 7/23/1998, the previous list of professional fees for compound drugs was expanded to include a tier of lower rates for claims electronically submitted. The new rates added were: $3.10 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.10 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN (hyperalimentation); and $4.10 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions.

[5] Effective 1/15/2001, the list of professional fees for compound drugs was further expanded to include:  $12.50 for filling insulin syringes for a maximum 14-day supply for all claims electronically submitted.

[6] Effective 7/1/2001, $5.35 will be paid for all claims submitted electronically for the most expensive ingredient in the compound... Effective 8/29/01, the compounding fees of $3.35, $5.35, $4.35. and $12.50 as described previously remain in place but apply to batch submissions only.

[7] For pharmacy providers serving nursing facilities, ICFs/MR and boarding homes for which Medicaid is billed, reimbursement is at AWP-7 1/2% for only the actual doses administered, with one dispensing fee per month; and the program results in no drugs subject to return for credit.  This was discontinued on 7/1/2002.

[8] As a result of a temporary restraining order imposed on the State of Maine, EAC was defined as AWP-10% for the period from 11 am 7/29/02 until 8/7/02.

[9] Effective 8/8/03 by emergency rule, Direct Supply Drug List (DSDL) was established to replace reimbursement for retail pharmacies.  DSDL is defined as a list of covered drugs established by the Department, consisting of certain maintenance drugs including specialty drugs, caloric supplements and substitutes, and medical foods that the Department has determined may be obtained safely and efficiently through mail order.  The Department may pay a lower rate for drugs on the DSDL to any mail order pharmacy that agrees by contract with the Department to accept such lower reimbursement rate for such drugs.

[10] Effective on or before 8/8/03, professional fees for compound drugs were reestablished at the following rates:  $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions; and $12.50 for filling insulin syringes for a maximum 14-day supply. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[11] Eff. 2/3/04 by emergency rule, rate applies only to covered brand and generic drugs not on the Direct Supply Drug List. These rates replace the more general "Covered Drug Not on DSDL" category that was effective for the previous period.

[12] Reimbursement definitions changed by rule, so this rate now applies to Direct Supply Retail Drug List (DSRDL) providers and Direct  Supply Mail Order Drug List (DSMODL) providers for both generic and brand name drugs.

[13] Effective 11/2/04, pharmacies serving members in rural areas became eligible to receive an incentive payment     applied as a professional fee  and calculated by creating a percentile score based on established criteria; determined and paid quarterly.  The definition of eligible pharmacy was expanded on 5/5/05 to include pharmacies that are not located in rural areas but that serve a larger number of members who live in rural areas.

[14] New Specialty Pharmacy provider category defined as pharmacies approved by the Department to dispense specialty drugs defined as covered drugs that, due to their high cost, short shelf life, special handling requirements and instruction, or other factors, ... and are prescribed for a limited number of usually chronic conditions that generally affect a relatively small portion of the population.

[15] Effective 3/1/2007, rule language amended to define Rural Dispensing Fee Adjustment as a supplemental dispensing fee that ranges from $0.55 to $0.65 per prescription, which will change quarterly to reflect the prior quarter's number of prescriptions filled.

[16] Effective 3/1/2007, a new pricing option was added to the lower of methodology for reimbursement of generic drugs to retail pharmacies:  EAC is the lowest of: U&C; AWP-13%, FUL, MMUL, or the State Upper Limit (250% of Average Manufacturer's Cost for multi-source generic drugs).

[17] The State used First DataBank for pricing until 6/30/02 and then switched to MediSpan on 7/1/02.

[18] DAW 1 logic turned off on 7/1/2003.

[19] DOJ pricing was implemented on 5/1/2000 and remains in effect through today.

DRAFT

**State of Maryland**
**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Legend/Prescription Drugs | | | | | Dispensing Fee | | Exceptions |
|---|---|---|---|---|---|---|---|---|
| | *"Lower of"* Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[12] | | | Physician Override (DAW) |
| | Usual and Customary | FGUL | EAC | SMAC | Brand/Generic | Brand | Generic | |
| 1/1/1991 - 3/31/1991 | Y | Y | Y | Y[1] | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[2,3] | $3.70 | $3.70 | Y |
| 4/1/1991 - 6/30/1992 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | $4.69; $5.92[4] | $4.69; $5.92[4] | Y |
| 7/1/1992 - 6/30/1995 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | $4.94; $6.17[5] | $4.94; $6.17[5] | Y |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | 4.66; $7.70 | 4.66; $7.70 | Y |
| 7/1/1996 - 9/30/1998 | Y | Y | Y | Y | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | $4.21; $7.25 (Compounded Home IV Therapy prescriptions) | $4.21; $7.25 (Compounded Home IV Therapy prescriptions) | Y |
| 10/1/1998 - 11/1/2002 | Y | Y | Y | Y | Lowest of WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10% | $4.21; $7.25 (Compounded Home IV Therapy prescriptions); $5.25 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | $4.21; $7.25 (Compounded Home IV Therapy prescriptions); $5.25 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | Y |
| 11/2/2002 - 6/30/2003 | Y | Y | Y | Y | Lowest of WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10% | $3.69; $7.25 (Compounded Home IV Therapy prescriptions); $4.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | $4.69; $7.25 (Compounded Home IV Therapy prescriptions); $5.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | Y |
| 7/1/2003 - 1/31/2004 | Y | Y | Y | Y | Lowest of WAC + 9%, Direct Price + 9%, Distributor's Price + 9%, and AWP - 11% | $3.69; $7.25 (Compounded Home IV Therapy prescriptions); $4.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | $4.69; $7.25 (Compounded Home IV Therapy prescriptions); $5.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy)[9] | Y |
| 2/1/2004 - 6/30/2004 | Y | Y | Y | Y | Lowest of WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | $3.69; $7.25 (Compounded Home IV Therapy prescriptions); $4.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | $4.69; $7.25 (Compounded Home IV Therapy prescriptions); $5.65 (Nursing Home Resident prescriptions not compounded for Home IV Therapy) | Y |
| 7/1/2004 - 9/30/2004 | Y | Y | Y | Y | Lowest of WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | $2.69 (brand drugs not on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $3.69 (brand drug Nursing Home Resident prescriptions not compounded for Home IV Therapy not on preferred drug list) | $3.69 (generic drugs and drugs on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $4.69 (generic and preferred drug list drugs Nursing Home Resident prescriptions not compounded for Home IV Therapy) | Y |
| 10/1/2004 - Present | Y | Y | Y | Y | Lowest of WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | $2.69 (brand drugs not on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $3.69 (brand drug Nursing Home Resident prescriptions not compounded for Home IV Therapy not on preferred drug list) | $3.69 (generic drugs and drugs on preferred drug list); $7.25 (Compounded Home IV Therapy prescriptions); $4.69 (generic and preferred drug list drugs Nursing Home Resident prescriptions not compounded for Home IV Therapy) | N[11] |

D R A F T

**State of Maryland**
**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | *"Lower of"* Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[12] | Dispensing Fee | | Exceptions |
|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FGUL | EAC | SMAC | Brand/Generic | Brand | Generic | Physician Override (DAW) |

Legend/Prescription Drugs

■ Data taken from Medicaid State Plan Amendments

■ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

■ Data received from Jeff Gruel, Director, Pharmacy Program, 5/16/08, 6/4/08, and 6/5/08

[1]The maximum amount the Program will reimburse for selected, approved interchangeable multiple source drugs is called the Interchangeable Drug Cost (IDC). The IDC is determined by ascertaining the availability of the product from the two principal sources of supply within the State and determining the lowest cost from among the approved interchangeable multiple source products available from each source and selecting the higher of these two costs. Maximum allowable costs will be reviewed and updated at least once every year, whenever there is an emergency recall by the Food and Drug Administration, or temporarily, if there is an acute shortage of supply from available sources.

[2]The Estimated Acquisition Cost (EAC) is the amount generally paid by providers for a drug based on the cost and availability of the most commonly stocked package size and the cost of the product from the least expensive usual source of supply. The allowable cost is the EAC established by the Department. The Department determines EACs by consulting local wholesalers' price listings, published drug compendia, and distributors/manufacturers' catalogues. Certain highly utilized drugs have EACs based on direct rather than wholesale prices and/or in larger than minimum package sizes. EACs for products not available through local wholesale sources are based on distributors' direct prices. For medically necessary brand drugs, the EAC of the brand drug is the allowable cost.

[3]EAC is WAC + 10%; or Direct Price + 10% if WAC is not available; or Distributor's Price + 10% if neither WAC nor Direct Price is available; or AWP - 10% if WAC, Direct Price, or Distributor's Price are not available.

[4]Per the 1991 NPC Survey, the dispensing fee is $4.69 if allowed ingredient cost is less than $34.32 or $5.92 if allowed ingredient cost is $34.32 or more.

[5]Per the 1992 NPC Survey, the dispensing fee is $4.94 if allowed ingredient cost is less than $36.34 or $6.17 if allowed ingredient cost is $36.34 or more. Per the 1994 NPC Survey, the dispensing fee is $4.94 if allowed ingredient cost is less than $61.94 or $6.17 if allowed ingredient cost is $61.94 or more.

[6]Effective 10/1/98, state implemented a higher dispensing fee for nursing home prescriptions. F or nursing home prescriptions, credits, less the paid dispensing fee, for unused unit dose medication and any other medication which may legally be returned to stock shall be made within 60 days of Program payment and include adjustments for leave of absence prescriptions; and multiple prescriptions dispensed to a recipient residing in a nursing home for the same drug product or compounded prescription shall receive only one professional fee per calendar month except for: leave of absence prescriptions, compounded prescriptions for home intravenous therapy, and prescriptions for Schedule II - IV controlled dangerous substances.

[7]Effective 12/3/02, the State of Maryland began determining the IDC costs as follows. The IDC is determined as the higher of the lowest estimated acquisition cost of the generically equivalent products in the State or the lowest cost from among the approved interchangeable multiple source products from each wholesaler that the Program has current and accurate pricing information, or utilizing a price from a commercial generic pricing source.

[8]Effective 7/1/03, the State of Maryland received authorization from CMS to enter into supplemental rebate agreements with drug manufacturers for drugs provided to Medicaid recipients. Supplemental rebates received by the State in excess of those required under the national drug rebate agreement will be shared with the Federal government on the same percentage basis as applied under the national rebate agreement. All drugs covered by the program will comply with provisions of the national drug rebate agreement.

[9]Per the 2003 NPC Survey, Maryland implemented an additional $1.00 incentive fee for dispensing a lower cost multisource product.

[10]Effective 10/1/04, with approval from CMS, the State of Maryland entered into The Optimal PDL Solution (TOP$), a supplemental drug rebate agreement.

[11]On 10/15/04, the program implemented a Brand Medically Necessary edit.

[12]State uses First DataBank and the Red Book for pricing.

6/9/2008

**DRAFT**

**State of:**    **Massachusetts**

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Brand/Single Source | | Multi-Source Drugs with MAC or MMAC | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| | Pay lower of: | | Pay lower of: | | | Estimated Acquisition Cost (EAC) [3,4] | | | | | |
| **Effective Time Period** | EAC [3,4] | Usual and Customary | FUL/MAC | MMAC/MMUPL | Usual and Customary | FUL/MMAC Drugs | Non-FUL/MMAC Drugs | | Brand | Generic | Compounds |
| 11/1/1989  -  1/31/1995 | Y | Y[1] | | Y[2] | Y[1] | | WAC + 10%; AWP - 10% | Y | $4.06 | $4.06 | 8 |
| | | | **Pay "Lower of" for All Legend Drugs** | | | | | | | | |
| 2/1/1995  -  12/16/2001 | Y | Y[5] | Y[4] | Y[5] | WAC+10%; AWP-10% | WAC+10%; AWP-10% | Y | $3.00 | $3.00 | 8 |
| 12/17/2001  -  8/2/2002 | Y | Y | Y | Y | Y | WAC+10%; AWP-12% | WAC+10%; AWP-12% | Y | $3.00 | $3.00 | 8 |
| 8/3/2002  -  3/30/2003 | Y | Y | Y | Y | Y | WAC+6%; AWP-15.2% | WAC+ 6%; AWP-15.2% | Y | $5.00 [9] | $3.50 [9] | 8 |
| 4/1/2003  -  11/30/2003 | Y | Y | Y[6] | Y[6] | Y | WAC+ 5% [7]; AWP-16% | WAC+ 5% [7]; AWP-16% | Y | $5.00 | $3.50 | 8 |
| 12/1/2003  -  Present | Y | Y | Y | Y | Y | WAC+ 5% [7]; AWP-16% | WAC+ 5% [7]; AWP-16% | Y | $3.00 | $3.00 | 8 |

 Data taken from Medicaid State Plan Amendments

Data taken from Declarations made in U.S. District Court, Response to the Defendants' Joint Statement of Undisputed Facts and Exhibit 1

Data provided by Richard Heidlage and Peter Mullin, AGO, 9/15/08, 10/9/08, 10/28/08

[1] Until 1995, the **Usual and Customary Charge** was defined as "the price charged for a given volume of drugs (legend or non-legend) on a given day by an eligible pharmacy provider to its retail customers (institutional purchasers as well as over the counter purchasers).

[2] Effective 11/1/1988, the State Upper Payment Limit is the Massachusetts Maximum Allowable Charge (MMAC), which is based on 150% of the lowest price listed (in package sizes of 100 units or the commonly listed size) in accordance with the methodology employed by HCFA pursuant to 42 CFR Section 446.332 as amended effective 10/29/1987.

[3] Per declarations made in U.S. District Court - District of Massachusetts by David Sibor, Account Manager with ACS State Healthcare (Massachusetts Medicaid Pharmacy claims processing contractor), and Paul Jeffrey, Director of Pharmacy for the Massachusetts Office of Medicaid, Massachusetts Medicaid pharmacy claims have been processed primarily using pricing data received from First DataBank (FDB). (There was an approximate two year period where the Commonwealth did not receive an update to the pricing from FDB [2000-2001].) Prior to December 17, 2001, when ACS assumed Medicaid Pharmacy claims processing responsibilities, where FDB reported a Wholesale Acquisition Cost (WAC) for a drug, the Estimated Acquisition Cost (EAC) is WAC + 10%. Where FDB did not report a WAC for a drug and only reported Average Wholesale Price (AWP), the EAC was determined as AWP - 10%. For the period on and after December 17, 2001, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 10% (if the WAC was available) or AWP - 12% (if the WAC was unavailable). After August 3, 2002, the effective date of the regulatory change to WAC + 6% as the definition of EAC, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 6% (if the WAC was available) and AWP - 15.2% (if the WAC was unavailable).

[4] Before 1995, the payment for generics for which an FUL or MMAC was established was the lower of FUL, MMAC or U&C. Beginning 2/1/1995, regulations were amended to make the EAC apply to all multiple-source drugs. In addition, the definition of MMAC was dropped and replaced by the Massachusetts Upper Limit (MULP), which was essentially the same as the MMAC but was limited to muliple source drugs for which there was no federal upper limit.

[5] Effective 2/1/95, the definition of Usual and Customary was changed to be defined as the lowest price charged or accepted as payment for a given volume of drugs (legend or non-legend) by an eligible pharmacy provider to any purchaser or reimburser.

[6] Effective 4/1/03, the definition of the MUL was changed to "for multiple source drugs, an amount equal to 130% of the price of the least costly therapeutic equivalent as listed in any published or other public source for the most frequently purchased package size, eliminated the restriction on its applicability to multiple source drugs that do not have a FUL and expanded the applicable pricing sources.

[7] A preliminary injunction was entered in *Long Term Care Pharmacy Alliance v. Ferguson*, and that rate was not implemented until 7/1/04.

[8] Dispensing fee + $1.00 for compounding ointments/solutions and $2.00 for compounding tabs/caps/powders/supplements.

[9] Change in dispensing fee effective 11/1/2002.

DRAFT

State of: **MICHIGAN**

**Medicaid Pharmacy Reimbursement Methodology**

**Prescription/Legend Drugs**

| Effective Time Period | Usual and Customary | Actual Acquisition Cost (AAC)[5] | FUL | EAC | Provider's Submitted Charge | SMAC | Chain Pharmacies 5 or > Stores; LTC Pharmacies w/ No Retail Business | Independent & Chain Pharmacies of < Five Stores | Pharmacies which serve beneficiaries with a level of care (LOC) 02 | Physician Override (DAW, Brand Medically Necessary) | Standard | IV Admixtures | Compounding Standard | Compounding Caps/Powders/Suppositories | Standard | IV Admixtures | Unit Dose[6] | Compounding Standard | Compounding Caps/Powders/Suppositories |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[7] | | | | Dispensing Fee ("Lower of")[1,4] Non-Long Term Care Pharmacy | | | | Long Term Care Pharmacy | | | | |
| 8/1/1990 - 9/30/1994 | Y | Y | Y | N | Y | Y | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | | Y | $3.72 | | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) | $3.72 | | $0.015 per tablet or capsule | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) |
| 10/1/1994 - 8/31/1995 | Y | Y | Y | N | Y | Y | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | Lesser of: AAC[5] or AWP-10%; Direct Price[2] | | Y | $3.72 | | $1.00 | $5.00 | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 |
| 9/1/1995 - 7/4/2000 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y | $3.72 | | $1.00 | $5.00 | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 |
| 7/5/2000 - 9/30/2000 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.72 | | $6.00 | $10.00 | $3.72 | | $0.015 per tablet or capsule | $6.00 | $10.00 |
| 10/1/2000 - 12/31/2001 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.77 | | $6.00 | $10.00 | $3.77 | | $0.015 per tablet or capsule | $6.00 | $10.00 |
| 1/1/2002 - 12/31/2003 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.77 | | $6.00 | $10.00 | $3.77 | | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 1/1/2004 - 10/31/2004 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $3.77 | $7.50 | $6.00 | $10.00 | $3.77 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 11/1/2004 - 3/31/2005 | Y | | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y[3] | $2.50 | $7.50 | $6.00 | $10.00 | $2.75 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2005 - 3/31/2008 | Y | | Y | Y | Y | Y | AWP - 15.1%[8] | AWP - 13.5% | AWP - 15.1% | Y[3] | $2.50 | $7.50 | $6.00 | $10.00 | $2.75 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2008 - Present | Y | | Y | Y | Y | Y | | AWP - 13.5% | AWP - 15.1% | Y[3] | $2.50 | $7.50 | $6.00 | $10.00 | $2.75 | $7.50 | $0.030 per tablet or capsule | $6.00 | $10.00 |

- **Data taken from Medicaid State Plan Amendments** (blue)
- **Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council** (red)
- **Data provided by Jacqueline Coleman, Michigan Department of Community Health, on 5/16/08, 6/2/08, 6/6/06, 6/11/08, and 6/19/08** (purple)
- **Data taken from Medical Services Administration Pharmacy Manual and/or Provider Bulletins** (green)

[1] Dispensing fee for 1991 - 1995 is not to exceed standard fees as indicated above.

[2] Reimbursement for the products of Merck, Pfizer, and Upjohn is based on direct price.

[3] Imposes State MAC upper Limits with drugs on MAIC list.  Override requires prior authorization - "Dispense as Written."

[4] Per Pharmacy Manual III.13.2 (01-02-02), the program does NOT reimburse for prescriptions filled but not dispensed to the beneficiary.  For prescriptions returned to stock/not picked up prescriptions, pharmacies must claim adjust or reverse the claim for any payment received, including the dispensing fee.

[5] Per Pharmacy Manual Ch. III, p.6, Rev. 9-1-91, Medicaid has a screening process for actual acquisition costs payments. Screens are set by: AWP-10%. In most cases, the price allowed will be that associated with the lowest purchase size except unit dose. However, the Program has several drugs where a larger purchase size is used to determine the screen. The size of these larger purchase quantities is included to the right of the drug name in Appendix F, Michigan Medicaid Drug List. Exceptions:  AWP - Schedule II Drugs; Estimated Retail Price - Reagents, syringes, dietary formulas; Direct Prices - Products made by: Merck, Sharp and Dohme, Pfizer, and Upjohn.

[6] Per Pharmacy Manual Ch. III, p.9, Rev. 9-1-91, unit dose payment is not allowed for oral liquids.

[7] Michigan Medicaid has had a long term contract with First DataBank.

[8] Effective 4/1/2005, reimbursement for pharmacies with no retail business was discontinued, and LTC pharmacies began receiving reimbursement according to the new definition of "pharmacies who serve beneficiaries with a level of care (LOC) 02".

**D R A F T**

State of: **MINNESOTA**
Medicaid Pharmacy Reimbursement Methodology

| Effective Time Period | | "Lower of" Reimbursement Methodology[10] | | | | | Estimated Acquisition Cost (EAC)[2] | | Physician Overide (DAW, Brand Medically Necessary) | Dispensing Fee[3] | | Parenteral Nutrition w/Mixing | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand/Generic | DOJ Pricing | | Brand/Generic | Intravenous Drugs w/Mixing | 1 Liter Qty | >1 Liter Qty |
| 1/1/1990 | 7/31/1991 | Y | Y | Y | Y[9] | | AWP - 10% | | Y | $4.10 | | | |
| 8/1/1991 | 12/31/1994 | Y | Y | Y | Y | | AWP - 10% | | Y | $4.10[1] | 8.00 | 30.00 | 44.00 |
| 1/1/1994 | 6/30/1995 | Y | Y | Y | Y | | AWP - 7.6% | | Y | $4.10[1] | 8.00 | 30.00 | 44.00 |
| 7/1/1995 | 6/30/1997 | Y | Y | Y | Y | | AWP - 9% | | Y | $4.10[1] | 8.00 | 30.00 | 44.00 |
| 7/1/1997 | 2/28/2003 | Y | Y | Y | Y | | AWP - 9% | | Y | $3.65[1] | 8.00 | 30.00 | 44.00 |
| 3/1/2003 | 6/29/2003 | Y | Y | Y | Y | | AWP - 14% | AWP[4] | Y | $3.65[1] | $8.00[12] | 30.00 | 44.00 |
| 7/1/2003 | 7/31/2005 | Y[5] | Y | Y | Y | | AWP - 11.5% | AWP[4] | Y[5,6] | $3.65[1] | $8.00[12] | 30.00 | 44.00 |
| 8/1/2005 | Present | Y[5] | Y | Y | Y | | AWP - 12% | N/A | Y[5,6] | $3.65[1] | $8.00[12] | 30.00 | 44.00 |



■ Data taken from Medicaid State Plan Amendments

■ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

■ Revisions made at direction of Jarvis Jackson, Staff Pharmacist, 5/5/08, 5/19/08.

[1] Per TN #91-21, effective 08/01/1991, an additional $.30 dispensing fee allowed for legend drug prescriptions dispensed using a pharmacy packaging unit-dose blister card system.

[2] The prescribed drug must be a drug or compounded prescription that is made by a manufacturer that has a rebate with the Health Care Financing Adminnistration (HCFA) and included in the Minnesota Department of Human Services formulary. The formulary is established in accordance with Section 1927 of the Social Security Act.

[3] Per TN 91-21, effective 08/01/1991: A prescribed drug must be dispensed in the quantity specified on the prescription unless the pharmacy is using unit dose dispensing or the specified quantity is not available in the pharmacy when the prescription is dispensed. Only one dispensing fee is allowed for dispensing the quantity specified. Except as provided in item (6), the dispensing fee billed by or paid to a particular pharmacy or dispensing physician for a maintenance drug for recipients is limited to one fee per 30-day supply: (6) More than one dispensing fee per calendar month for maintenance drugs for a recipient is allowed if (a) the record kept by the pharmacist or dispensing physician documents that there is a significant chance of overdosage by the recipient if a larger quantity is dispensed, and if the pharmacist or dispensing physician writes a statement of this reason on the prescription; or (b) the drug is clozapine. Per TN 98-32, effective 09/21/1998: An additional dispensing fee per prescription shall be paid to pharmicists using an in-pharmacy packaged unit dose system (except OTC) approved by the Board of Pharmacy for the return of drugs when dispensing to recipients in a long-term care facility if 1) the pharmacy is registered with the Dep

[4] Per TN 03-01, effective 03/01/2003, the State agency establishes the acquisition cost to equal (AWP minus 14%),**except when a drug has its wholesale price reduced as a result of the actions of the National Association of Medicaid Fraud Control Units. In that case, the State establishes the actual acquisition cost at the reduced AWP without the percent reduction.**

[5] Per TN 03-29, effective 07/1/2003, payment for over-the-counter drugs is at the provider's usual and customary charge to the general public. If the pharmacy is not accessible to, or frequented by, the general public, or if the over-the-counter drug is not on display for sale to the general public, the usual and customary charge is the actual acquisition costs plus a 50% add on based on the actual acquisition cost.

[6] Per TN 03-29, effective 07/1/2003, generic drugs must be dispensed to recipients **effective 01/02/2004, even if the practitioner has written "Dispensed as Written-Brand Necessary" or "DAW-Brand Necessary" on the prescription, authorization is required to dispense brand name drugs.**

[7] Per TN 03-29, effective 07/1/2003, **effective 10/01/2003, the dispensed quantity of a prescribed drug must not exceed a 34-day supply unless authorized by the Department,** except OTC must be dispensed in the manufacturer's unopened package, and Sorbitol may be repackaged and contraceptive drugs may be dispensed in quantities not exceeding a 90-day supply.

[8] Per TN 05-09, effective 07/1/2005: (1) For antihemophilic factor drugs, the State agency establishes the actual acquisition cost to equal 70% of the average wholesale price (AWP-30%). (2) The rate for specialty pharmacy products is 86%, 85%, or 83% of average wholesale price. The rate used is dependent upon the actual acquisition cost for the product. Specialty pharmacy products are those used by a small number of recipients or recipients with complex and chronic diseases that require expensive and challenging drug regimens. A chart is provided listing the class of specialty pharmacy products receiving the various discounts.

[9] State has had the ability to have SMACs back to 1-1-1990. Logic has been to pay the lower of U&C (submitted), EAC or whatever value populated the SMAC/FUL field. FULs were used almost exlusively until year 2000 when the state increased its use of SMAC. The list now includes all commonly used generics; FULs are now only used if a SMAC doesn't exist.

[10] The State has used FDB pricing for as long as anyone can remember.

[11] SMACs are based on an informal survey of a few retail pharmacies that have agreed to share their costs. The State tries to include an average profit of about $7.00 for each prescription using SMAC. This $7 includes the $3.65 dispensing fee. The SMAC are maintained using information from pharmacies referenced above, the PDL contractor, and MAC list from other states.

[12] Except Cancer Chemotherapy IVS, which is $14.00.

05/19/08

State of:   __Mississippi__

__DRAFT__

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | *"Lower of"* Reimbursement Methodology | | | | Mississippi Estimated Acquisition Cost (MEAC)[14] | | | | | | |
| Effective Time Period | Usual and Customary | FUL | MEAC | SMAC | Brand | Generic | Schedule II Drugs | | Pharmacy | Home Infusion Drugs | Other |
| 5/1/1990 - 6/30/1991 | Y | Y | Y[2] | N | AWP - 10% | AWP - 10% | | N | $4.91 | | [1] |
| 7/1/1991 - 3/31/2002 | Y | Y | Y[3, 4] | N | AWP - 10% | AWP - 10% | AWP[12] | Y | $4.91 | [13] | [5, 6, 7] |
| 4/1/2002 - 10/27/2003 | Y | Y | Y[4] | N | AWP - 12% | AWP - 12% | AWP[12] | Y | $3.91 | [13] | |
| 10/28/2003 - 6/30/2005 | Y | Y | Y[4] | N | AWP - 12% | AWP - 12% | | Y | $3.91 | [13] | [9] |
| 7/1/2005 - Present | Y | Y | Y[4] | N[11] | AWP - 12% or WAC + 9% (brand and single source generic) | AWP - 25% (multiple source generic) | | Y | $3.91 (brand and single source generic and institutionalized recipients); $4.91 (multiple source generic) | [13] | [10] |



■ Data taken from Medicaid State Plan Amendments

■ Information obtained from Myers and Stauffer LC

■ Data provided by Phyllis Williams, Division of Medicaid, 11/10/08 and 11/25/08

[1] Per State Plan #88-3, only drugs that are listed in the Medicaid Drug Formulary and its supplements will be compensable. Exceptions for the use of non-covered drugs may be made in special circumstances when prior authorization is given by Medicaid.

[2] Mississippi Estimated Acquisition Cost; Per State Plan #90-02, "MEAC is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

[3] Per State Plan #91-07, "MEAC is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

[4] Per State Plan #00-03, "MEAC is defined as the Division's best estimate of the actual purchase price generally and currently paid by providers for a drug, identified by NDC number, marketed or sold by a particular manufacturer or labeler."

[5] Per State Plan #91-07, "the Division shall make no payment for an innovator multiple-source drug dispensed after July 1, 1991, if, under applicable state law, a less expensive non-innovator multiple-source drug (other than the innovator multiple-source drug) could have been dispensed."

[6] Per State Plan #91-07, "the Division shall make no reductions in reimbursement limits on covered outpatient drugs or dispensing fees during the period of time beginning January 1, 1991 and ending December 31, 1994."

[7] Per State Plan #91-22, the dispensing fee will be increased by 5% effective August 1, 1991.  Subsequent State Plan Amendments and NPC Surveys do not indicate that this was ever implemented.

[8] Per State Plan #03-12, effective 10/28/03, Mississippi Medicaid will only pay for certain drugs dispensed by a licensed pharmacist. Drugs dispensed by physicians are no longer reimbursed by Mississippi Medicaid.

[9] Per State Plan #05-002, the Mississippi Medicaid Preferred Drug List (PDL) was established effective 1/1/05. The PDL is a list of recommended generic and brand name drugs that are selected based on safety, efficacy, and cost effectiveness.  Exceptions to the PDL may be approved if the preferred agents would not be effective or would cause adverse effects in the recipient.

[10] Effective 2/1/06, per State Plan #06-002, the State of Mississippi, authorized by CMS, became able to negotiate supplemental rebate agreements with pharmaceutical manufacturers.

[11] Myers and Stauffer was awarded a contract in late 2007 to calculate State MAC rates for Mississippi Medicaid. As of the date of this summary, the State MAC program is under development, and an implementation date has not yet been set.

[12] Schedule II drugs were paid at straight AWP from 2001 to October 2003.

[13] According to the 1996 Pharmacy Provider Manual dated 2/95, a $7 dispensing fee will be paid for each drug ingredient (NDC number) used in the preparation of compounded sterile parenteral products. Each ingredient is considered to be a separate prescription. It is not, however, clear if this ever worked systematically. Since 10/2003, it has not been set up systematically. The 1996 Provider Manual also reports an enhanced dispensing fee of maximum of $30 per liter for TPNs, which continues to be the dispensing fee through present.

[14] Pricing provided by First DataBank.

### D R A F T

**State of Missouri**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Legend/Prescription Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | *"Lower of"* Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[5] Pay the lower of formula listed | Physician Override (DAW, Brand Medically Necessary) | Professional/Dispensing Fee | | | |
| | Usual and Customary | FUL | EAC | SMAC | Brand/Generic | | (In-State) | (Out-of-State) | LTC (In-State) | LTC (Out-of-State) |
| 4/8/1988 - 9/16/1991 | Y | Y | Y | Y | AWP or DP[1] | N[2] | $3.15 | $3.15 | $3.30 | $3.30 |
| 9/17/1991 - 11/30/2000 | Y | Y | Y | Y | AWP-10.43% or DP[3] | N[2] | $4.09 | $4.09 | $4.24 | $4.24 |
| 12/1/2000 - 6/30/2003 | Y | Y | Y | Y | AWP-10.43% or WAC+10% or DP[3] | N[2] | $4.09 | $4.09 | $4.24 | $4.24 |
| 7/1/2003 - 6/30/2007 | Y | Y | Y | Y | AWP-10.43% or WAC+10% or DP[3] | N[2] | $8.04 | $4.09 | $8.19 | $4.24 |
| 7/1/2007 - Present | Y | Y | Y | Y | AWP-10.43% or WAC+10% or DP[3] | N[2] | $9.66 | $4.84 | $9.81[4] | $4.99 |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by MO HealthNet Division, Clinical Services Unit, 5/22/08, 6/2/08, 8/5/08

Data provided by Missouri Code of Federal Regulations and Pharmacy Provider Manual

[1] Per the 1990-1992 NPC Surveys, "any drug that is not manufactured by Abbott, Lederle, Merck Sharp & Dohme, Parke-Davis, Pfizer, Roerig, Squibb, Upjohn and Wyeth, or is not a federal or Missouri MAC drug will be based on the AWP…Any drug manufactured by Abbott, Lederle, Merck Sharp & Dohme, Parke-Davis, Pfizer, Roerig, Squibb, Upjohn and Wyeth, acquisition cost will be based on the manufacturer's direct price."

[2] Prior authorization is required; there is no automatic override.

[3] Direct price is still part of the methodology but is no longer used.

[4] Per 13 CSR 70-20.050 (4), when a pharmacy dispenses drugs in a controlled-dose delivery system, the pharmacy must give the Division of Medical Services credit for all reusable items (any unused portion) not taken by the Medicaid recipient. The Division of Medical Services may provide additional compensation to the pharmacy to recognize administrative costs for processing reusable returned drugs, subject to appropriation. In instances in which charges have been submitted prior to the return of an item, the pharmacy shall file an adjustment to notify the Division of Medical Services of the need to process a credit. The dispensing pharmacy that receives the returned drugs must provide a credit to the Division for the amount reimbursed for drug costs from which the prescription was billed, prorated to the quantity of the drug returned. The credited amount should not include dispensing fees. Per Section 12.2.B of the Pharmacy Provider Manual, the ability of a pharmacy to utilize reusable items (the unused portion) and provide a credit to the Division of Medical Services is contingent on the medication being accepted for reuse per the pharmacist's professional judgment as well as pursuant to federal and state law or regulation.

[5] The State uses First DataBank for pricing.

**DRAFT**

State of:     **Montana**

Medicaid Pharmacy Reimbursement Metholodogy

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[6] Pay the lower of each formula listed | | Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Compound Drugs |
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | Minimum | Maximum | Unit Dose Systems | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1990  -  6/30/1997 | Y | Y | Y | | N | AWP-10%; DP[1] | FUL | Y | $2.00 [2] | $4.08 [2] | Plus $0.75 | [8] |
| 7/1/1997  -  6/30/1998 | Y | Y | Y | | N | AWP-10%; DP[1] | FUL | Y | $2.00 | $4.14 | Plus $0.75 | [8] |
| 7/1/1998  -  9/30/2000 | Y | Y | Y | | N | AWP-10%; DP[1] | FUL | Y | $2.00 [4] | $4.20 [4] | Plus $0.75 | [8] |
| 10/1/2000  -  6/30/2002 | Y | Y | Y | Y[7] | N | AWP-10%; DP[3] | FUL | Y | $2.00 [4] | $4.20 [4] | Plus $0.75 | [8] |
| 7/1/2002  -  9/30/2007 | Y | Y | Y | | N | AWP-15% | FUL | Y | $2.00 [5] | $4.70 [5] | Plus $0.75 | [8] |
| 10/1/2007  -  Present | Y | Y | Y | | N | AWP-15% | FUL | Y | $2.00 [5] | $4.86 [5] | Plus $0.75 | [8] |

  Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data taken from Daniel Peterson, Chief Acute Services Bureau, 5/19/08, 6/2/08, 6/3/08, 10/23/08

[1] The policy for reimbursement of Direct Price (DP) drugs is the current direct price charged by manufacturers to retailers in effect on the service date for the claim.

[2] The State Plan for this time period through 9/30/1994 reports that a variable dispensing fee will be established by the state agency, by using the results of a cost survey of pharmacy's operational costs. However, a pharmacy may be assigned a different dispensing fee to cover additional costs for a "unit dose" method of dispensing a prescription. Dispensing fee information may be found in the MMIS provider file and in the Medicaid Prescription Drug Card System (PDCS) provider plan file. NPCs report a specific range, all with an additional $0.75 per Rx allowed for nursing home unit dose systems. Dispensing fee variables applies to all time periods.

[3] The Direct Price (DP), the price charged by manufacturers to retailers, will be paid unless the DP is not available to providers in the state. If no DP is available, drugs paid by their AWP will be paid at AWP-10%. If the state agency determines that acquisition cost is lower than either the available DP or AWP-10%, then the state agency may set an allowable acquisition cost based on data provided by the drug pricing file contractor. Exception: for outpatient drugs provided to Medicaid recipients in state institutions, reimbursement will conform to the state contract for pharmacy services; or for institutions not participating in the state contract for pharmacy services, reimbursement will be the actual cost of the drug and dispensing fee. In either case, reimbursement will not exceed, in the aggregate, the EAC or the MAC plus the dispensing fee. Direct price was

[4] The State Plan for this time period reports that dispensing fee information may be found in the MMIS provider file and in the Medicaid Prescription Drug Card System (PDCS) provider plan file. NPC 2000 reports a dispensing fee range of $2.00 - $4.20 (effective 7/1/98), with an additional $0.75 added to prescriptions unit dosed by the pharmacy. NPC 2001 reports a dispensing fee of $2.00-$4.20 effective 7/1/98 but adds that pharmacies submit documentation showing their costs for a dispensing fee maximum of $4.20. Pharmacies that do not submit documentation receive a dispensing fee of $2.00.

[5] Dispensing fees assigned shall range between $2.00 - $4.70. Out-of-state and in-state providers new to the Program will be assigned an interim $3.50 DF until a DF questionnaire can be completed for six months of operation. At that time a new DF will be assigned which will be the lower of the DF calculated or $4.70. Failure to comply with the questionnaire requirement will result in a DF of $2.00. An additional $0.75 will be paid for unit dose prescriptions not packaged by the drug manufacturer.

[6] The State has always used First DataBank.

[7] DOJ pricing in effect from October 5, 2001 until July 1, 2002.

[8] Until January 22, 2008 (begin date unknown) the Department reimbursed compound prescription drugs utilizing "local" NDC codes. An average wholesale price (AWP) of $25 was set for each of the local codes.  The discount, the provider's dispensing fee and client cost share were applied to the reimbursement algorithm. A provider would submit X number of units depending on what they thought would cover the cost of the compound. Since December 1996, providers are reimbursed for home infusion therapy through a per diem rate which included equipment, supplies & professional services, while drugs are reimbursed through the pharmacy program.  Total Parenteral Nutrition (TPN) included the basic parenteral solution along with the per diem.  Prior to 12/96, there was no distinct Home Infusion Therapy program and services were reimbursed under various Medicaid service categories.

10.24.08

**DRAFT**

State of:      **Nebraska**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lowest of" Reimbursement Methodology[9] | | | | | Estimated Acquisition Cost (EAC)[7] | | SMAC Description | Physician Override (MC-6, Brand Medically Necessary) | Dispensing Fee Added to calculated drug cost (FUL, EAC, SMAC) to set upper limit | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | Submitted Charge[8] | FUL Plus DF | EAC Plus DF | SMAC Plus DF | Brand/Generic | Schedule II Drugs | | | | |
| 10/29/1987   -   12/31/2001 | Y | Y | Y | Y | Y | Lower of: AWP-8.71% and Direct[1] | 12 | 4, 5 | Y | $2.84 - $5.05 [2,3] | 10, 11 |
| 1/1/2002   -   10/4/2002 | Y | Y | Y | Y | Y | AWP-10% | | 6 | Y | $3.84 - $5.05 [3] | 10 |
| 10/5/2002   -   Present | Y | Y | Y | Y | Y | AWP-11% | | 6 | Y | $3.27 - $5.00 [3] | 10 |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Gary Cheloha, Pharmacy Consultant, 6/4/08, 6/9/08, 6/10/08, 6/11/08, 10/2/08, 10/23/08, 11/13/08, 11/14/08

[1] "Direct from manufacturer" - Up until about 2001, pharmacies purchased through a wholesaler or directly from a small number of manufacturers (This was determined from the 1980s survey). Manufacturers continued to raise their minimum purchase amounts so that eventually virtually no pharmacies bought "direct". Direct price companies included:  Abbott, Ayerest, Lederle, Merck Sharpe and Dohme, Pfizer, Roerig, and Ross.

[2] NPCs 1991-1994 report that in addition to the assigned dispensing fee for each retail pharmacy, there is a "maintenance drug-month supply" supplemental fee of $1.00 for maintenance drugs used in a chronic manner. Language also in MS #87-18.

[3] MS-87-18 references EAC = actual cost, which was determined to be the direct price. In the mid-1980s a dispensing fee survey was completed to set the ranges for dispensing fees. The survey took into account gross margin, location, services and volume. This methodology continues to be utilized; range is noted. Beginning in 1996, fees for new stores were assigned the average dispensing fee of $4.66, which continues to be the practice today.

[4] NPCs 1996-1998 report State MAC list contains 840 drugs including those on the FULs.

[5] NPC 1999 reports State MAC list contains 840 drugs including those on the FULs, and NPC 2000 reports approximately 450 drugs.

[6] NPC 2002 reports approximately 1,000 drugs listed on the State MAC list; NPC 2003 reports approx. 1,400; NPC 2004 reports more than 1,500.

[7] From 1991 - 1995, the State used local wholesalers and buying group pricing for State MACs and for FUL reference and Medispan for EAC. From 1995 to present, the State's contracted POS vendor has contracted with First DataBank for pricing. The State also continues to use a buying group for State MACs and FUL reference.

[8] Pharmacies are also required to complete the submitted charge (or gross amount due) field on each claim. Note: The only time that the submitted charge was not required was from the April 1995 Point of Sale implementation until September 15, 1997. During that time the state captured only the Usual and Customary and compared it to the calculated upper limit based on EAC, SMAC, or FUL, plus DF.

[9] Nebraska pays the lowest of the (a) usual and customary, or (b) submitted charge, or (c) the calculated upper limit of FUL, EAC, or SMAC plus dispensing fee on each claim.

[10] From December 1989 until August 1991, a series of 5 dummy 6 digit codes was used to process and pay compounded claims. The 5 codes were in $5 increments and only those claims with cost > $20 were reviewed by state staff. From August 1991 until the POS in 1995, a series of 11 dummy NDC codes were used to process and pay compound claims. These were also in $5 increments. In 1995 with POS, the dummy NDC codes were used, and only those with cost >$50 were reviewed by First Health staff. Instructions from the State to FHSC were to allow a "reasonable cost" based either on the drug's AWP or EAC. In late 1997 instructions from the State to FHSC were changed to use EAC, not AWP for pricing. On 11/22/99, the State stopped the use of the dummy NDC for drug cost >$50 and required the pharmacy to bill up to 2 NDCs individually through either the POS or on paper claims, allowing a DF for each. On 3/1/01, the State stopped the use of dummy NDCs for drug cost >$30 and required the pharmacy to bill up to 2 NDCs individually through either the POS or on paper claims, allowing a DF for each. In October 2003 when ACS became the POS vendor, compounds were required to be billed as multi-line claim forms through the POS or on paper. This allowed only one fee per prescription. The "Usual and Customary" upper limit remained in effect throughout as it applied to the sum paid for two ingredients submitted separately or if paid as a single claim.

[11] From April 1995 until about October of 1996, First Health was directed to price compounded home infusion therapy to allow a second dispensing fee and to pay duplicate ingredients if in two different products.

[12] Schedule II drug prices were set at the AWP in the mid-1980s. On 8/1/1989, several CII drugs were added to the SMAC/FUL lists due to legislation that allowed substitution for all bioequivalent Schedule II controlled substances. On January 19, 1993, non-SMAC/FUL Schedule II drug prices were set at the AWP from Medispan. This ended sometime between 1996 and 12/6/2001, when Schedule II drug pricing was set to follow standard EAC pricing.

D-R-A-F-T

01/21/08

State of: **NEVADA**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) Brand/Generic | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee[3] | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | Specific Upper Limit SUL[2] | SMAC | | | Outpatient Pharmacist Brand/Generic | Home Health IV | Nursing Facility IV |
| 1/1/1991[1] - 9/30/1991 | Y | Y | Y | Y | N | AWP - 10% | | $3.95 | | |
| 10/1/1991 - 12/31/1994 | Y | Y | Y | Y | N | AWP - 10% | Y | $4.42 | $16.80 (1st); $5.60 (2nd) | $11.20 (1st); $5.60 (2nd) |
| 1/1/1995 - 9/30/1998 | Y | Y | Y | Y | N | AWP - 10% | Y | $4.64 | $16.80 (1st); $5.60 (2nd) | $11.20 (1st); $5.60 (2nd) |
| 10/1/1998 - 7/31/2002 | Y | Y | Y | Y | N | AWP - 10% | Y | $4.76 | $16.80 (1st); $5.60 (2nd) | $11.20 (1st); $5.60 (2nd) |
| 8/1/2002 - 12/16/2003 | Y | Y | Y | Y | N | AWP - 15% | Y | 4.76[6] | $16.80 (1st); $5.60 (2nd) | $11.20 (1st); $5.60 (2nd) |
| 12/17/2003 - 12/14/2004[5] | Y | Y | Y | Y | Y[4] | AWP - 15% | Y | $4.76 | $16.80 (1st); $5.60 (2nd) | $11.20 (1st); $5.60 (2nd) |
| 12/15/2004 - Present[7] | Y | Y | Y | Y | Y | AWP - 15% | Y | $4.76 | $22.40 (per day) | $16.80 (per day) |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by John Liveratti, Chief of Compliance, 6/3/08 and 6/4/08.

[1] Date established as 1/1/1991 because information was reported in 1990 NPC.   State can not confirm any information prior to 1991.

[2]

Per TN #91-21, effective 10/01/1991:  Payment for multiple source drugs shall be the lowest of (a) Specific Upper Limit (SUL) as established by the Health Care Financing Administration (HCFA) for multi-source drugs.

[3] Per TN #91-21, effective 10/01/1991:  The State's dispensing fees are defined as (a) those given to outpatient pharmacists at a rate of $4.42 per prescription; (b) those given to Home Health Care providers for home intravenous therapy at $16.80 per dose for the first medication and $5.60 per dose for a second medication given concurrently; (c) those given to pharmacists for Intravenous therapy in the nursing facility at $11.20 per dose for the first medication and $5.60 per dose for a second medication given concurrently.

[4] Per TN #03-16, effective 12/17/2003:  A generic drug may be considered for MAC pricing if there are 2 or more therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference.  The SMAC will be based on drug status (Including non-rebateable, rebateable, obsolete, therapeutic equivalency ratings) marketplace availability and cost.  The obsolete drug status will be taken into account to ensure that MAC pricing is not influenced by the prices listed for obsolete drugs.  The SMAC will be based on drug prices obtained from a nationally recognized comprehensive date file maintained by a vendor under contract with the Department.

[5] Per TN #04-02, effective 01/01/2004:  CMS has authorized the State of Nevada to enter into the Michigan multi-state pooling agreement.  The model supplemental agreement entitled "Michigan Multi-State Pooling Supplemental Rebate Agreement: was submitted to CMS on January 16, 2004 and has been authorized by CMS.

[6] State confirmed with policy bulletin.

[7] Per Medicaid Services Manual, State uses First DataBank for pricing.

06/04/2008

DRAFT

**State of:**   **NEW HAMPSHIRE**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | | "Lower of" Reimbursement Methodology[1] | | | | Estimated Acquisition Cost (EAC)[5] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Compounded Prescription |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC[5] | SMAC | DOJ Pricing | Brand/Generic | | Brand | Single Source Brand | Generic/ Branded Generic | |
| 1/1/1990 - 4/30/1994 | Y | Y | Y | N | | AWP - 10% | Y | $3.25 | $3.65 | $3.65 | [1] |
| 5/1/1994 - 1/31/1996 | Y | Y | Y | N | | AWP - 10% | Y | $3.25 | $3.65 | $4.15 | [1] |
| 2/1/1996 - 11/2/2001 | Y | Y | Y | N | Y[3] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | [6] |
| 11/3/2001 - 3/11/2004 | Y | Y | Y | Y[2] | Y[4] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | [6] |
| 3/12/2004 - Present | Y | Y | Y | Y | Y[4] | AWP - 16% | Y | $1.75 | $1.75 | $1.75 | [6] |

**Legend/Prescription Drugs**

 Data taken from Medicaid State Plan Amendments

 Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Donna Arcand, Pharmacy Financial Manager, DHHS, on 10/7/08, 10/14/08.

[1] Per TN 90-14, effective 07/01/1990, prescriptions for maintenance medications will be reimbursed only one time per 34 days, per recipient per provider, and any refill prescriptions for these maintenance medications within the 34 days will be reimbursed at the cost of the medication only.  For **compound drugs**, the payment is based on actual costs (ingredient cost and time of preparation) plus applicable dispensing fee.

[2] SMAC began in November 2001 when NH began processing with a PBM.

[3] DOJ pricing began when it was first introduced on 4/30/2001 and continues through today.

[4] NH put into effect special rules for Blood Factor products on the DOJ price list with reimbursements for dates of service on or after 2001 to pay at DOJ AWP and the dispensing fee.

[5] First DataBank has been used for pricing throughout the time period.

[6] Since 2001, compounds submitted via POS for under $50 are paid at Usual and Customary.  Claims over $50 must be submitted on the universal claim form and are paid at AWP - 16% plus dispensing fee and fee for time of preparation. Home infusion therapies are paid like a compound, plus $10.50 per day.

10/17/08

State of:   New Jersey                                                      <u>DRAFT</u>

**Medicaid Pharmacy Reimbursement Methodology**

| | | | "Lower of" Reimbursement Methodology | | | Estimated Acquisition Cost (EAC)[6] | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fees | | | |
| | | | Usual and Customary | FUL | EAC[5] | Retail | AWP Discount Threshold[1] | | Base Dispensing Fee for Retail Pharmacies[2] | Dispensing Fee Add-Ons | Compounded Prescriptions | Long Term Care |
| Effective Time Period | Type | Prior Year Prescription Volume | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/1987 - 2/20/1995 | Category I | 1 - 14999 | Y | Y | Y | AWP | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category II | 15000 - 19999 | Y | Y | Y | AWP - 2% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category III | 20000 - 29999 | Y | Y | Y | AWP - 3% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 4% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category V | 40000 - 49999 | Y | Y | Y | AWP - 5% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category VI | 50000 + | Y | Y | Y | AWP - 6% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| 2/21/1995 - 1/1/1996 | Category I | 1 - 14999 | Y | Y | Y | AWP | | Y | $3.73 | [6] | [4] | [3] |
| | Category II | 15000 - 19999 | Y | Y | Y | AWP - 2% | | Y | $3.73 | [6] | [4] | [3] |
| | Category III | 20000 - 29999 | Y | Y | Y | AWP - 3% | | Y | $3.73 | [6] | [4] | [3] |
| | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 4% | | Y | $3.73 | [6] | [4] | [3] |
| | Category V | 40000 - 49999 | Y | Y | Y | AWP - 5% | | Y | $3.73 | [6] | [4] | [3] |
| | Category VI | 50000 + | Y | Y | Y | AWP - 6% | | Y | $3.73 | [6] | [4] | [3] |
| 1/2/1996 - 7/14/1996 | Category I | 1 - 14999 | Y | Y | Y | AWP - 2% | | Y | $3.73 | [6] | [4] | [3] |
| | Category II | 15000 - 19999 | Y | Y | Y | AWP - 4% | | Y | $3.73 | [6] | [4] | [3] |
| | Category III | 20000 - 29999 | Y | Y | Y | AWP - 5% | | Y | $3.73 | [6] | [4] | [3] |
| | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 6% | | Y | $3.73 | [6] | [4] | [3] |
| | Category V | 40000 - 49999 | Y | Y | Y | AWP - 7% | | Y | $3.73 | [6] | [4] | [3] |
| | Category VI | 50000 + | Y | Y | Y | AWP - 8% | | Y | $3.73 | [6] | [4] | [3] |
| 7/15/1996 - 7/7/2003 | Legend/OTC | | Y | Y | Y | AWP - 10% | | Y | $3.73 | [6] | [4] | [3] |
| 7/8/2003 - 7/7/2008 | Legend/OTC | | Y | Y | Y | AWP - 12.5% | | Y | $3.73 | [6] | [4] | [3] |
| 7/8/2008 - Present | Legend/OTC | | Y | Y | Y | AWP - 15% | | Y | $3.73 | [7] | [4] | [3] |

 Data taken from Medicaid State Plan Amendments

Data provided by DMAHS, DHS, on 9/10/08, 9/19/08, 9/29/08, 10/6/08, 10/8/08, 10/17/08, 12/17/08, 12/19/08, 12/22/08

[1] Per the New Jersey Pharmaceutical Services Manual (Rev. 11/87), if the drug cost is greater than $24.99, then EAC = AWP with no discount applied.  This threshold was terminated effective 2/21/1995.

[2] Per New Jersey Health Services Program Newsletter dated August 1, 1998, the basic dispensing fee of $3.73 was established by state regulations effective 8/1/1988. However, additional increments are applied per prescription based on various criteria.

[3] Long Term Care (LTC) pharmacies can be retail or institutional and are paid for ingredient costs according to the same EAC (regression) formula as non-institutional providers.  Legend drugs for patients in approved long-term care facilities are, however, reimbursed according to a capitated fee schedule:  LTC institutional providers are paid at 75% of the capitation rate, and LTC retail pharmacies are paid at 100% of the capitation rate.There may be a few institutional pharmacies, but the majority of pharmacies serving clients in long term care skilled nursing facilities are retail pharmacies.

[4] Compound claims are paid by determining the reimbursement rate for each ingredient which includes subtracting the regression.  These elements are then totaled and the dispensing fee is added to arrive at the total reimbursement. The NJ Medicaid program will reimburse a pharmacy provider up to $0.25 for any ingredient in a compound claim whose cost is less than $0.25.

[5] State receives its pricing from First DataBank.

[6] Additional increments are applied per prescription to the base dispensing fee based on various criteria: add $0.11 for 24-hour emergency service availability; add $0.08 for Patient Consultation; and add $0.15 for Impact Allowance. Maximum dispensing fee is $4.07.

[7] Effective 7/8/2008, the $0.08 add-on for Patient Consultation was eliminated.  Therefore, additional increments applied per prescription to the base dispensing fee continue to be based on the following criteria: add $0.11 for 24-hour emergency service availability; and add $0.15 for Impact Allowance. Maximum dispensing fee is $3.99.

**DRAFT**

State of:    New Mexico

**Medicaid Pharmacy Reimbursement Methology**

| | Legend/Prescription Drugs | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **"Lower of" Reimbursement Methodology** | | | | | **Estimated Acquisition Cost (EAC)** | | | **Physician Override (DAW, Brand Medically** | **Dispensing Fee** | | | |
| | Pay the lower of each formula listed | | | | | | | | | | | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC | SMAC[1] | DOJ Pricing | Brand | Generic | SMAC Description | Necessary) | Brand | Generic | Compound Drugs | Other Notes |
| 1/1/1991  -  6/30/1991 | Y | Y | Y | Y | | AWP-10.5% | AWP-10.5% | [2] | Y | $4.00 | $4.00 | | |
| 7/1/1991  -  1/5/1992 | Y | Y | Y | Y | | AWP-10.5% | AWP-10.5% | [2] | Y | $4.25 | $4.25 | | [6] |
| 1/6/1992  -  6/30/1997 | Y | Y | Y | Y | | AWP-10.5% | AWP-10.5% | [2] | Y | $4.00 | $4.00 | | |
| 7/1/1997  -  5/31/2002 | Y | Y | Y | Y | Y[7] | AWP-12.5% | AWP-12.5% | [2] | Y | $4.00 | $4.00 | | |
| 6/1/2002  -  8/14/2004 | Y | Y | Y | Y | Y[7] | AWP-12.5% | AWP-12.5% | [2] | Y | $3.65 | $3.65 | | |
| 8/15/2004  -  6/30/2005 | Y | Y | Y | Y | Y[7] | AWP-14%[4] | AWP-14%[4] | [3,5] | Y | $3.65 | $3.65 | | |
| 7/1/2005  -  Present | Y | Y | Y | Y | Y[7] | AWP-14% | AWP-14% | [5,9] | Y | $3.65 | $3.65 | $30 [8] | |



■    Data taken from Medicaid State Plan Amendments

■    Data provided by Robert Stevens, NM Medicaid, 5/18/08,12/9/08, and 12/12/08

[1] SMAC is called State Allowed Cost and was implemented on 8/1/1982.

[2] Reimbursement is limited to a lesser-expensive therapeutically equivalent drug per the state Product Selection Act as amended and according to the "FDA Approved Therapeutically Equivalent Drugs" list.

[3] State allowed costs are established after (1) assuring availability of FDA A-rated therapeutically equivalent drugs using information available from the FDA and from the American Society of Hospital Pharmacists on drug shortages; and (2) determining the typical package size used. SAC amounts will be calculated at 150% of the lowest cost product (from among Medicare reimbursement prices when available, manufacturer prices, wholesaler prices, and invoice prices) and will be at least 20% above the second lowest cost. This calculated amount may be lowered as follows: (1) To 60% of the average price of all available therapeutically equivalent multi-source drug products, but not below the cost for which an item is determined to be consistently and readily available from local wholesale sources in the state; or (2) When 2 or more therapeutically equivalent multi-source drug products are determined to be consistently and readily available from local wholesale sources within the state, the SAC may be lowered to the price at which the product is consistently and readily available. Per State, issues with shortages are rare.

[4] Per TN #04-10, EAC is equal to the lower of AWP-14%, the WAC as submitted to the state, the manufacturer price is submitted to the state, or the pharmacy invoice price as obtained through audits. This amount may be lowered as follows: (1) When the AWP-14% is shown not to approximate average acquisition cost, in which case EAC shall be the actual amount at which an item can be shown to be consistently and readily available; or (2) When a pharmacy practice is specialized or limited to the extent that its buying practices do not approximate a retail pharmacy and AWP-14% is shown not to accurately approximate the average actual acquisition costs, such as a pharmacy limited to mail order, limited to supplying items for chronic use, or an institutional or facility pharmacy with significant buying discounts not available to retail pharmacies. In these cases, the percent discount from AWP may range from 14%-20%, based on audited data, to more accurately approximate actual cost.

[5] Effective 12/1/04, many of the pharmacy claims began to be processed under the NMRx program, using Presbyterian Health Care as the PBM rather than ACS/PDCS. Presbyterian still sends the claim record showing payment, etc. for th MMIS System. The current state plan for SMACs was approved effective 8/15/04 but was not implemented until 12/1/04. Prior to that date, and still true for claims that are processed by ACS/PDCS (the PBM), the SMAC is slightly less stringent. (Price basis is 150% of lowest cost product; calculated price must be at least 20% above second lowest cost product; deviations occasionally required; and, if only one supplier available, MAC price is established at least 20% above cost of generic product.)

[6] The program has used First DataBank since about 1992. Prior to that the program used the Redbook but updated the prices manually.

[7] DOJ pricing was used from September 2001 through October 2006 but was seldom paid because the State MAC pricing was always lower.

[8] Beginning February 2006, the state allows up to $30 for a compounding fee if the pharmacy claims a compounding fee.

[9] Per NM Pharmacy Service Provider Manual (MAD-MR:05-20) effective 1/1/06, the State MAC methodology is based on the following criteria: 1) At least one A-rated generic is readily available; and 2) the State MAC for the brand name drug products and for all A-rated therapeutic equivalents shall be determined by taking the lowest available cost for all of the A-rated therapeutic equivalent drugs regardless of manufacturer, and multiplying that cost by a factor set by MA to cover the pharmacy's estimated administration and overhead plus a dispensing fee.

12/15/08

**DRAFT**

State of:  __New York__

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology[5] | | | | | Estimated Acquisition Cost (EAC) | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compound Drugs | Other |
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | Specialized HIV Pharmacies | SMAC Description | | Brand | Generic | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1990 - 12/31/1994 | Y | Y[1] | Y | | N | AWP | AWP | | | Y | $2.60 | $2.60 | [6] | [11] |
| 1/1/1995 - 7/31/1998 | Y | Y[1] | Y | | N | AWP - 10% | AWP - 10% | | | Y | $4.50 | $5.50 | [7] | [11] |
| 8/1/1998 - 6/30/2003 | Y | Y[1] | Y | Y[10] | N | AWP - 10% | AWP - 10% | | | Y | $3.50 | $4.50 | [8] | |
| 7/1/2003 - 9/30/2004 | Y | Y[1] | Y | Y | N | AWP - 12% | AWP - 12% | | | Y | $3.50 | $4.50 | [8] | |
| 10/1/2004 - 7/14/2006 | Y | Y[1] | Y | Y | N | AWP - 12.75% | AWP - 16.5% | [3] | | Y | $3.50 | $4.50 | [8] | |
| 7/15/2006 - 6/30/2007 | Y | Y[1] | Y | Y | Y[2] | AWP - 13.25% | AWP - 20% | [3] | | Y | $3.50 | $4.50 | [8] | |
| 7/1/2007 - 6/30/2008 | Y | Y[1] | Y | Y | Y | AWP - 14% | AWP - 25% | [3] | Proprietary formula | Y | $3.50 | $4.50 | [8] | |
| 7/1/2008 - Present | Y | Y[4] | Y | Y | Y | AWP - 16.25% | AWP - 25% | [9] | Proprietary formula | Y | $3.50 | $4.50 | [8] | |

Data taken from Medicaid State Plan Amendments

Data taken from NY Medicaid web site

Data taken from statutory amendments to NY laws included in a letter from George Henderson II, Assistant U.S. Attorney, dated May 3, 2008

Data provided by James Donnelly, 9/3/08, 9/5/08, 9/23/08, 9/24/08, 10/3/08, 10/21/08, 10/22/08, 10/28/08

[1] If a drug has an upper payment limit (FUL) established by the Federal Government, then the reimbursement rate is equal to the lower of the usual and customary charge or the upper payment limit (FUL).  If there is no FUL, use the lower of EAC, or the usual and customary price charged to the general public.

[2] Although the SMAC legislation was dated 10/1/2004, SMAC prices were not implemented until 9/5/2006.

[3] Effective 10/1/2004, the EAC for specialized HIV pharmacies is defined as AWP less 12% for sole or multi-source brand drugs or multi-source brand drugs written without DAW, and FUL or the lower of AWP-12% or State MAC or U&C for multi-source generic drugs. Note: HIV Specialty pharmacies are paid off-line for the difference between other pharmacy reimbursement and the speciality rate.

[4] Effective July 1, 2008, NY Medicaid started reimbursing the lower of FUL, SMAC or EAC.

[5] The State used Medispan for pricing through October 2002 and then switched to First DataBank beginning November 2002.

[6] Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public for the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($2.60) and a compounding fee ($0.75).

[7] Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public for the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($4.50) and a compounding fee ($0.75).

[8] Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public for the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($3.50) and a compounding fee ($0.75). Starting around December 1, 2000 there appeared to be an option to bill compounds using the NDCs of the individual ingredients.  If this option is used the claim for the compound can not be distinguished from a claim for a non-compounded prescription.  Each ingredient payable would be reimbursed at the current dispensing rate plus a dispensing fee less a copay. With this option, there is no compound indicator on these claims , there is no compounding fee with these claims and they look like other non-compound claims.

[9] Effective 7/1/2008, the EAC for specialized HIV pharmacies is defined as AWP less 12% for sole or multi-source brand drugs written with DAW, and the lower of AWP-12% or the FUL or State MAC for multi-source generic drugs.  HIV Specialty pharmacies are paid off-line for the difference between other pharmacy reimbursement and the speciality rate.

[10] DOJ pricing was implemented on May 1, 2000 and is still used where available.

[11] NY Medicaid had a contracted mail order pharmacy program from 4/15/1991 through 4/4/1996. The single contracted pharmacy was reimbursed at AWP-13.5% plus a dispensing fee of $2.50. It was not available to New York City beneficiaries and was discontinued due to low utilization.

12/01/08

**D R A F T**

**State of North Carolina**

**Medicaid Pharmacy Reimbursement Methodology**

| | | | | | | Legend/Prescription Drugs | | | | | | |

| | | **"Lower of" Reimbursement Methodology** | | | | | | | | | | |

| Effective Time Period | Usual and Customary | FUL | EAC[4] | Lowest Charge to Other 3rd Party Payors | SMAC | Estimated Acquisition Cost (EAC)[3] Brand | Generic | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee[1] Brand | Generic | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/1989  -  12/31/1991 | Y | Y | Y | Y | N | AWP - 10% | AWP - 10% | | Y | $4.85 | $4.85 | |
| 1/1/1992  -  6/30/1992 | Y | Y | Y | Y | N | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 7/1/1992  -  11/30/2001 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 12/1/2001  -  Present | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | [2] | Y | $4.00 | $5.60 | [5] |

  Data taken from Medicaid State Plan Amendments

Data provided by Lisa Weeks, Pharmacy Policy Supervisor, 6/2/08, 6/4/08, 10/28/08

[1] Per the North Carolina State Plans, the dispensing fee is paid to all providers for the initial dispensing.  Refills within the same month are not paid a dispensing fee.

[2] SMAC methodology - reimbursement is based on 150 percent of the lowest priced generic.  In cases where 150 percent results in a price less than the cost of the second-lowest generic product, at least an additional 10 percent margin is added to the cost of the second-lowest drug to establish the MAC price.  For established generic drugs with only one supplier, the MAC price is established between the actual acquisition cost and the average wholesale price of the generic drug.  A minimum reimbursement of 20 percent above actual acquisition is guaranteed for these drugs.  In most cases, MAC pricing is substantially higher than the 20 percent.

[3] State uses First DataBank for pricing.

[4] EAC is referred to as NCEAC or North Carolina Estimated Acquisition Cost.

[5] Compound drugs have been treated like generics regarding dispensing fee ($5.60) since the 2001 reduction in the brand dispensing fee to $4.00. If these drugs come through pharmacy point-of-sale, then they are reimbursed as other drugs.

**DRAFT**

State of: __North Dakota__

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | Brand/Generic | Physician Override (DAW, Brand Medically Necessary) | Brand | Generic | Compound Drugs | Pill Splitting |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[3] | | Dispensing Fee | | | |
| 7/1/1990 - 6/30/1991 | Y | Y | Y | N | AWP-10% | | $3.56 | $3.56 | | |
| 7/1/1991 - 6/30/1995 | Y | Y | Y | N | AWP-10% | | $4.25 | $4.25 | | |
| 7/1/1995 - 7/31/1997 | Y | Y | Y | N | AWP-10% | | $4.50 | $4.50 | | |
| 8/1/1997 - 3/31/2002 | Y | Y | Y | N | AWP-10% | Y | $4.60 | $4.60 | | |
| 4/1/2002 - 1/5/2003 | Y | Y | Y | N | AWP-10% | Y | $4.60 | $4.60 | $10.00[5] | + $.15/pill[2] |
| 1/6/2003 - 7/31/2003 | Y | Y | Y | Y[1] | AWP-10% | Y | $5.10 | $5.10 | $10.00[5] | + $.15/pill[2] |
| 8/1/2003 - 9/30/2005 | Y | Y | Y | Y | AWP-10% | Y | $4.60 | $5.60 | $10.00[5] | + $.15/pill[2] |
| 10/1/2005 - Present | Y | Y | Y | Y | Lesser of: AWP-10% or WAC+12.5%[4] | Y | $4.60 | $5.60 | $10.00[5] | + $.15/pill[2] |

Data taken from Medicaid State Plan Amendments
Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council
Data provided by Brendan K. Joyce, PharmD, Administrator, Pharmacy Services, 5/16/08, 11/18/08, and 12/2/08
Data provided by the North Dakota Provider Manual for Pharmacies

[1] State MAC effective 1/6/2003. Methodology is based on actual costs for pharmacies and not WAC or AWP. State MAC includes hemophilia factors, Synagis, immunoglobulin.

[2] Pill splitting will only be permitted when Medical Services determines it is cost effective, the pill is scored for ease of splitting, and the pharmacy staff splits the pill. This fee will only be allowed for medications that have been evaluated by the state for cost-effectiveness and entered into the Point-of-Sale system.

[3] The State used First DataBank for pricing.

[4] State asked First Data Bank to change reimbursement rates to the lesser of AWP-10% or WAC+12.5% effective 10/1/2005, but it wasn't loaded until December 2005.

[5] Compounds are reimbursed by calculating EAC for all ingredients and then given a dispensing fee of $10 for the entire compound.

12/02/08

DRAFT

**State of:**   **Ohio**

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | *"Lower of"* Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[7] | | | Physician Override (Brand Medically Necessary) | Dispensing Fee[5] | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC | SMAC | Brand and Non-SMAC Generic | SMAC Description | | | Brand | Generic | Compound Drugs |
| 1/1/1991  -  6/30/1994 | Y | Y | Y | Y | AWP - 7%; DC[1] | [3] | N | $3.23 [2] | $3.23 [2] | |
| 7/1/1994  -  12/31/1995 | Y | Y | Y | Y | AWP - 7%; DC[1] | [3] | N | $3.50 | $3.50 | |
| 1/1/1996  -  12/31/1997 | Y | Y | Y | Y | AWP - 7.5%; DC[1] | [3] | Y | $3.50 | $3.50 | |
| 1/1/1998  -  6/30/1998 | Y | Y | Y | Y | AWP - 7.5%; DC[1] | [3] | Y | $3.60 | $3.60 | |
| 7/1/1998  -  4/30/2002 [4] | Y | Y | Y | Y | WAC + 11% or AWP - 11.2% if WAC not available | [3] | Y | $3.70 | $3.70 | |
| 5/1/2002 [4]  -  9/30/2005 [4] | Y | Y | Y | Y | WAC + 9% or AWP - 12.8% if WAC not available | [3] | Y | $3.70 [6] | $3.70 [6] | [8] |
| 10/1/2005  -  Present | Y | Y | Y | Y | WAC + 7% or AWP - 14.4% if WAC not available | [3] | Y | $3.70 | $3.70 | [9] |

██  Data taken from Medicaid State Plan Amendments

██  Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

██  Data provided by Robert Reid, Pharmacy Program, 6/30/08, 8/4/08

██  Data provided by Pharmacy administrative rule forwarded by Mr. Reid.

[1] Reimbursement for the products of the following manufacturers is direct cost: Lederle, Merck, Squibb,Wyeth-Ayerst, Upjohn (Per NPC summary 1992); Lederle, Merck, Wyeth-Ayerst, Upjohn (1993 and 1994);  Lederle, Wyeth-Ayerst, and Upjohn (1995 and 1996); and Lederle, Wyeth-Ayerst, and Pharmacia & Upjohn (1997 - 6/30/98).

[2] Effective 4/13/89.

[3] The Ohio MAC rates are based on the 65th percentile of the estimated acquisition cost of all readily available generically equivalent drugs.

[4] Effective dates taken from the 10/1/05 State Plan.

[5] Ohio implemented the Long Term Care Pharmacy Best Practices Management Incentive Payment Program for SFYs 2003 (July 1, 2002 - June 30, 2003) and 2004 (July 1, 2003 - June 30, 2004) with final payments made by March 31, 2005 to test the assumption that incentive based drug utilization management can reduce pharmacy expenditures for Medicaid consumers living in nursing facilities and ICF-MR facilities without compromising patient care.

[6] Beginning with the 2003 NPC profile, there is a $.50 fee for flu vaccines.

[7] The State uses First Data Bank for prices.

[8] Reimbursement for compound drugs other than total parenteral nutrition will receive a single $6.00 dispensing fee for claims submitted prior to 11/17/2003. When multiple bags of compounded pharmaceuticals are dispensed, each bag will receive a $6.00 dispensing fee, to a maximum of $60.00, regardless of the number bags dispensed beyond ten for claims submitted prior to 11/17/2003. Infusion compounds include intravenous (IV) therapy for chemotherapy, pain management and antibiotics. Claims submitted on or after 11/17/2003 for infusion compounds will receive a dispensing fee of $10.00 per day, with a maximum of $70.00. Claims submitted on or after 11/17/2003 for total parenteral nutrition should be submitted as a compound and will receive a dispensing fee of $15.00 per day, with a maximum dispensing fee of $150. Compounded drugs that are not infusion compounds or total parenteral nutrition claims will receive a singe $6.00 dispensing fee per prescription when submitted on or after 11/17/2003.

[9] Effective 12/31/2007 by emergency rule, infusion compounds include intravenous (IV) therapy for chemotherapy, pain management and antibiotics. Claims submitted for infusion compounds will receive a dispensing fee of $10.00 per day, with a maximum dispensing fee of $70.00. Total parenteral nutrition claims will receive a dispensing fee of $15.00 per day, with a maximum dispensing fee of $150.00. Compounded drugs that are not infusion compounds or total parenteral nutrition claims will receive a single $6.00 dispensing fee per prescription.

12/12/08

**DRAFT**

State of:   **Oklahoma**

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[5] | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | |
| **Effective Time Period** | Usual and Customary | FUL | EAC | DOJ Pricing[6] | SMAC | Brand | Generic | SMAC Description | | Brand | Generic |
| 3/1/1990  -  9/30/1995 | Y | Y | Y | Y[1] | | AWP-10.5% | AWP-10.5% | [2] | | Max. $5.10 | Max. $5.10 |
| 10/1/1995  -  2/11/2002 | Y | Y | Y | | Y | AWP-10.5% | AWP-10.5% | [3] | Y | Max. $4.15 | Max. $4.15 |
| 2/12/2002  -  Present | Y | Y | Y | | Y | AWP-12% | AWP-12% | [4] | Y | Max. $4.15 | Max. $4.15 |

▮ Data taken from Medicaid State Plan Amendments

▮ Data provided by Dr. Nancy Nesser, Director Pharmacy Division, 5/28/08.

▮ Data taken from OHCA pharmacy program website, 10/27/08

[1] State MAC established effective 7/1/93.

[2] Per TN #93-16, State MAC products and price are established based upon the recommendation of a special committee consisting of representatives from the Medical, Osteopathic and Pharmaceutical Associations. The price is set as a percentile of the available medication specific products.

[3] Per TN #00-02, effective 4/8/2000, the SMAC price is established for certain products which have an FDA approved generic equivalent. The products and SMAC price are established based upon the recommendation of the DUR Board to the Agency CEO based on an average of two pricing formulas:  (1) the OK State and Education Employees Group Insurance Board (OSEEGIB) MAC value and (2) the lower of AWP-15% or WAC plus 12%. The DUR Board computes formula number (1) and computes the lower of formula number (2). The formulas in (1) and (2) will then be averaged to comprise the SMAC price.

[4] Per TN #03-15, the SMAC is established for certain products which have an FDA approved generic equivalent and are not narrow therapeutic index drugs. There are two calculations done for each product. The first is unit AWP-15% and the second is unit WAC+12%. For each product, the lower value is to be considered. The median value of the "lower of" or "lesser of" values then becomes the SMAC price.

[5] Division has always used First DataBank for pricing.

[6] Oklahoma is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

DRAFT

**State of:** __Oregon__

Medicaid Pharmacy Reimbursement Methology

| Effective Time Period | Reimbursement is always lowest of either FUL or EAC or SMAC or U&C | | | | Estimated Acquisition Cost (EAC)[7] Pay the lower of each formula listed | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | Compound Drug Fee (Retail) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC[2] | Retail | Institutional | Mail Order[6] Brand | Generic | | Retail | Institutional | |
| 1/1/1991  -  9/30/2001 | Y | Y | Y | N | DP[1]; AWP-11% | DP[1]; AWP-11% | | | Y | $3.91 [3] | [3] | |
| 10/1/2001  -  8/30/2002 | Y | Y | Y | Y[4] | AWP-13% | AWP-13% | | | Y | $3.50 | $3.91 | |
| 9/1/2002  -  2/14/2003 | Y | Y | Y | Y | AWP-14%[5] | AWP-14%[5] | | | Y | $3.50 | $3.91 | |
| 2/15/2003  -  5/30/2003 | Y | Y | Y | Y | AWP-14% | AWP-14% | AWP-21% | AWP-60% | Y | $3.50 | $3.91 | |
| 6/1/2003  -  11/2/2003 | Y | Y | Y | Y | AWP-15% | AWP-11% | AWP-21% | AWP-60% | Y | $3.50 | $3.91 | |
| 11/3/2003  -  Present | Y | Y | Y | Y | AWP-15% | AWP-11% | AWP-21% | AWP-60% | Y | $3.50 | $3.91 | $7.50 [8] |

 Data taken from Medicaid State Plan Amendments

 Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Roger Magrish, Pharmacy Program Manager, 7/25/08, 8/15/08



[1] NPCs report direct price (DP) for 9 selected companies.

[2] Oregon MAC is referred to as OMAC.

[3] Dispensing fee payment mechanism is four-tiered, based on yearly prescription sales volume, the percentage of dispensing sales volume that is Medicaid dispensings, and the type of unit dose dispensing system used: $4.05 for 15-30K volume of scripts; $4.17 for 1-15K; and $4.28 for 1-15K with 20% > Medicaid volume.

[4] OMAC became effective on 3/1/2002. OMAC is determined on selected multiple-source drugs designated as bioequivalent by the FDA. The upper limit of payment for a selected multiple-source drug is set at a level where one bioequivalent drug product is available from at least two wholesalers serving the State of Oregon.  When the OMAC is based upon AWP, it will be set at 14% below AWP and below 11% for institutional pharmacies.

[5] From 9/1/2002 through 7/1/2005, DOJ pricing was used on selected drugs from First DataBank.

[6] Brand drugs purchased through DHS mail order vendor are paid the lesser of OMAC, FULs, AWP-21%; plus DF. Generic drugs purchased through DHS mail order vendor are paid the lesser of OMAC, FULs, AWP-60%; plus DF.

[7] The State has always used First DataBank for pricing.

[8] Fee allowances are made for preparation time and dispensing of compound prescriptions. Pharmacies must list all applicable NDCs included in the compound and will receive a DF of $7.50 for each ingredient listed.

DRAFT

**State of:**  Pennsylvania

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | Exceptions | | Dispensing Fee | |
| | Brand | | | | Generic | | | | | | Physician Override (DAW, Brand Medically Necessary) | | |
| | "Lower of" | | | DOJ Pricing[3] | | "Lower of" | | | | Compound Prescription | | | |
| Effective Time Period | EAC | Usual and Customary | EAC[2] | | EAC | FUL | SMAC | Usual and Customary | EAC[2] | | | Brand | Generic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/1/1987 - 1/9/1991 | Y | Y | AWP | | Y | Y | Y | Y | AWP | Y[1] | Y | $2.75 | $2.75 |
| 1/10/1991 - 9/30/1995 | Y | Y | AWP | | Y | Y | Y | Y | AWP | Y[1] | Y | $3.50 | $3.50 |
| 10/1/1995 - 8/9/2005 | Y | Y | AWP-10% | | Y | Y | Y | Y | AWP-10% | Y[1] | Y | $4.00 | $4.00 |

| | Brand | | | | Generic | | | | | | | Dispensing Fee | |
| | "Lower of" | | | | | "Lower of" | | | | | | | |
| | EAC | Usual and Customary | Brand EAC[2] "Lower of" | | EAC | FUL | Usual and Customary | SMAC | Generic EAC[2] "Lower of" | | | | |
| Effective Time Period | | | | | | | | | | | | Brand | Generic |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/10/2005 - Present | Y | Y | WAC+7% | AWP-14% | Y | Y | Y | Y | WAC+66% | AWP-25% | Y[1] | Y | $4.00 | $4.00 |



- Data taken from Medicaid State Plan Amendments
- Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council
- Data taken from Pennsylvania Medical Assistance Bulletins
- Data provided by Terri Cathers, Director Pharmacy Programs, 8/11/08, 8/14/08, 10/28/08, 12/16/08

[1] The Department will pay a pharmacy for a compensable compound prescription at the lower of the cost of all the ingredients plus a $1.00 fee in addition to the regular dispensing fee or the provider's usual and customary charge to the general public.  A compounded prescription, for purposes of medical assistance payment, is one which is prepared in the pharmacy by combining two or more ingredients and involves the weighing of at least one solid ingredient which shall be a compensable item or a legend drug in a therapeutic amount.  (This information was later corroborated by SPA TN #95-22)

[2] Beginning on 1/10/2005 until 8/9/2005, the State used "dynamic pricing" from First DataBank, Micromedex, and Medi-Span, to determine the lower of the AWP or WAC, as well as the pricing formula of AWP-10%. Then from 8/10/2005 to present, EAC is calculated utilizing AWP from the three vendors as well as new pricing formulas.  Prior to dynamic pricing, beginning 10/1/1995, EAC is calculated based upon AWP-10% from one pricing vendor, First DataBank.

[3] Pennsylvania is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

**DRAFT**

State of:  **Rhode Island**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[4] | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC[1] | Brand/Generic | | In-home | Institution |
| 10/1/1987 - 12/31/1994 | Y | Y | Y | Y | AWP; DP[2] | Y | $3.40 | $2.85 |
| 1/1/1995 - 6/30/1995 | Y[3] | Y | Y | N | WAC+10% | Y | $3.40 | $2.85 |
| 7/1/1995 - 7/31/2006 | Y[3] | Y | Y | N | WAC+5% | Y | $3.40 | $2.85 |
| 8/1/2006 - Present | Y[3] | Y | Y | N | WAC | Y | $3.40 | $2.85 |

▮ Data taken from Medicaid State Plan Amendments

▮ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

▮ Data provided by Paula Avarista, Chief of Pharmacy, on 7/15/08, 7/22/08, and 7/23/08

[1] SMAC referred to as State Upper Payment Limits.  SMAC program was discontinued effective 1/1/1995.

[2] Direct Price applies to ten manufacturers in 1991-1992 (Abbott-Ross, Lederle, Merck Sharp & Dohme, Parke-Davis, Pfipharmics, Pfizer-Roerig, Squibb, Upjohn, Warner-Chilcott, Wyeth-Ayerst) and nine in 1993-1994 (Abbott-Ross, Lederle, Merck & Co., Pfipharmics, Pfizer-Roerig, Squibb, Upjohn, Warner-Chilcott, Wyerst-Ayerst.

[3] The usual and customary charge to the general public should include all discounts such as senior citizen discounts, or if lower, the amount reimbursed by other third party payors.

[4] First DataBank used for pricing throughout time period.

**DRAFT**

State of:    South Carolina

**Medicaid Pharmacy Reimbursement Methodology**

**Legend/Prescription Drugs**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) | SMAC Description | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC[3] | DOJ Pricing | SMAC | Brand/Generic | | | Independent | Institutional | |
| 7/1/1990  -  8/31/1991 | Y | Y | Y | | Y | AWP - 9 1/2% | SMAC - 9 1/2% | Y | $3.05 | $2.15 | [1, 2] |
| 9/1/1991  -  9/30/1995 | Y | Y | Y | | Y | AWP - 9 1/2% | SMAC - 9 1/2% | Y | $4.05 | $3.15 | |
| 10/1/1995  -  9/30/1999 | Y | Y | Y | | Y | AWP - 10% | SMAC - 10% | Y | $4.05 | $3.15 | |
| 10/1/1999  -  10/31/1999 | Y | Y | Y | | Y | AWP - 13% | SMAC - 13% | Y | $4.05 | $3.15 | |
| 11/1/1999  -  6/30/2000 | Y | Y | Y | | Y | AWP - 13% | SMAC - 13% | Y | $4.05 | $3.15 | |
| 7/1/2000  -  11/30/2001 | Y | Y | Y | Y[6] | Y | AWP - 10% | SMAC - 10% | Y | $4.05 | $3.15 | |
| 12/1/2001  -  Present | Y[4,5] | Y[4,5] | Y[4,5] | Y[6] | Y[4,5] | AWP - 10% | SMAC - 10% | Y | $4.05 | $3.15 | [4, 5] |

▉  Data taken from Medicaid State Plan Amendments

▉  Data provided by Mr. James Assey, Division Director of Health Services, 5/15/08, 11/13/08, 11/14/08.

[1] For pharmaceutical products having no AWP and whose billing price includes services other than ingredient cost, the state will impute its EAC based on available data. Final reimbursement is based on the imputed EAC plus the current dispensing fee.

[2] A provider of pharmaceutical services to LTC facilities may opt to be reimbursed under the Alternate Reimbursement Methodology (ARM).  The ARM rate is based on historical reimbursement and utilization data for prescriptions of residents of LTC facilities. Reimbursement is based on the established rate times the estimated patient day totals for those recipients served by the contracted provider. Adjustment of the reimbursement is made when a comparison of the estimated vs. actual patient days for the month yields a difference. The ARM rate will not exceed the upper limits of payments under the non-LTC reimbursement methodology. Discontinued on 1/1/06 according to State Plan 05-013.

[3] Pricing compendium has always been First DataBank.

[4] Per SC DHHS Medicaid Bulletin Pharm 01-06 dated November 7, 2001: Effective with dates of service December 1, 2001, the Medicaid prescription payment amount shall not exceed the lowest of: AWP less 10%, plus the dispensing fee of $4.05, **less $2.05**; FUL or SCMAC less 10%, plus the dispensing fee of $4.05, **less $2.05**; or the provider's usual and customary charge.

[5] Effective with dates of service July 1, 2002, the Medicaid prescription payment amount shall not exceed the lowest of: AWP less 10%, plus the dispensing fee of $4.05; FUL or SCMAC less 10%, plus the dispensing fee of $4.05; or the provider's usual and customary charge. (The reduction of "less $2.05" was removed).

[6] The state applied DOJ pricing supplied by First Data Bank to the same price methodology.

**DRAFT**

State of:   **South Dakota**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Prescription/Legend Drugs | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Unit Dose |
|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[2] | | | | |
| | Usual and Customary | FUL | EAC | SMAC | Class II Substances and Non-SMAC | | Brand | Generic | |
| 1/1/1990   -   6/30/1991 | Y | Y | Y | N | AWP-10.5% | Y | $4.25 | $4.25 | $5.05 |
| 7/1/1991   -   11/15/2002 | Y | Y | Y | N | AWP-10.5% | Y | $4.75 | $4.75 | $4.75 + $.80 |
| 11/16/2002   -   Present | Y | Y | Y | Y[1] | AWP-10.5% | Y | $4.75 | $4.75 | $4.75 + $.80 |

<span style="color:blue">████</span>   Data taken from Medicaid State Plan Amendments

<span style="color:red">████</span>   Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

<span style="color:purple">████</span>   Data provided by Mike Jockheck, Pharmacy Consultant, 5/12/08 and 5/9/08.

[1] MAC methodology unknown because prices are determined by an outside vendor.

[2] Pricing provided by First DataBank.

**DRAFT**

State of: **Tennessee**

**Medicaid Pharmacy Reimbursement Methodology**

| | Legend/Prescription Drugs | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology Pay the Lower of each formula listed | | | | Estimated Acquisition Cost (EAC) | | | | Dispensing Fee | | | | | |
| | | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Pharmacies | | Specialty Network Pharmacy and Non-Network Pharmacies | Unit Dose | | Compound Drugs |
| **Effective Time Period** | Usual and Customary | FUL | EAC | SMAC[1] | Brand/Generic | Specialty Network Pharmacy and Non-Network Pharmacies | Schedule II Drugs | | Brand | Generic | | Brand | Generic | |
| 10/1/1990 - 6/30/1998 | Y | Y | Y | Y | AWP-8%[2,3] | | 100% AWP[2] | N | $3.91 | $3.91 | | $6.00 | $6.00 | |
| 7/1/1998 - 6/30/2000 | Y | Y | Y | Y | AWP-13%[4] | | 100% AWP[2] | N | $2.50[5] | $2.50[5] | | $6.00 | $6.00 | |
| 7/1/2000 - 6/30/2003 | Y | Y | Y | Y | AWP-13%[4] | | 100% AWP[2] | N | $2.50[6] | $2.50[6] | | $5.00[7] | $5.00[7] | $25.00 |
| 7/1/2003 - 9/30/2008 | Y | Y | Y | Y | AWP-13%[4,8] | | | N | $2.50[10] | $3.00[10] | | $5.00[9] | $6.00[9] | $25.00 |
| 10/1/2008 - Present | Y | Y | Y | Y | AWP-13%[4,8] | AWP-16%[11] | | N[12] | $2.50 | $3.00 | $1.50[11] | $5.00[13] | $6.00[13] | $25.00 |



Data taken from Medicaid State Plan Amendments

Data provided by Nicole Woods, TennCare, on 1/6/2009 and 1/8/2009

Data provided by TennCare Pharmacy Manual Version 2.1 October 2008

[1] State MAC is defined as Tennessee Maximum Allowable Cost, TMAC.

[2] EAC is defined as Blue Book published AWP - 8% for legend drugs except for DEA Schedule II drugs which shall be Blue Book published AWP.

[3] When covered drugs are repackaged by an FDA-licensed repackager into unit dose packaging, an additional amount not to exceed a maximum of **$0.03** per unit dose packaging will be allowed.

[4] Payment for covered drugs may be made through a contract with one or more pharmacy benefits vendors or directly to participating pharmacies.

[5] The dispensing fee is $2.50 for each prescription dispensed by pharmacy providers who comply with state-approved preferred provider credentialing requirements or special exemption requirements, and $2.00 for each prescription dispensed by other pharmacy providers.

[6] The dispensing fee is $2.50 for each prescription dispensed by pharmacy providers who comply with all of the TennCare pharmacy requirements.

[7] Long-term care unit dose vendors who comply with all of the TennCare pharmacy requirements will receive a $5.00 dispensing fee for residents when the quantity dispensed is greater than a 28-day supply and $2.50 if the quantity is less.

[8] Payment for legend drugs will be AWP-13% as described by First DataBank, except for DEA Schedule II drugs which shall be 100% AWP, plus the DF.

[9] Paid for long-term care phamacy claims when the days supply is greater than 28 days.

[10] Pharmacy providers who maintain a 90% or greater compliance with TennCare's preferred drug list (PDL) for each 6 month time period, will be paid an additional $0.10 for each TennCare prescription dispensed during that period.  This policy is believed to have ended with the increase to a $3.00 generic dispense fee, which occurred in late 2004 or early 2005.

[11] Pricing for special network pharmacies and non-network pharmacies are always the lesser of:  applicable discount rate from the Specialty Pharmaceutical Pricing list; or, AWP-16% + dispense fee, or; Federal MAC + dispense fee, or; MAC + dispense fee, or; Usual and Customary, or: Gross Amount Due. No dispensing if included in Specialty Pharmaceutical Pricing List, and $1.50 if not included in the Specialty Pharmaceutical Pricing List.

[12] TennCare is a mandatory generic program, in which DAW1 is not allowed to override the mandatory generic requirement; exceptions may be requested through the PBM, SXC Health Solutions.  There is also a short list of exceptions to the mandatory generic policy where TennCare prefers a brand product over a generic. For these medications, pharmacies are paid AWP-13% plus $3.00.

[13] Paid for drugs with days supply greater than or equal to 28 days.

State of: **Texas**                                                                 <u>DRAFT</u>

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[6,7] (Pay lower of WEAC, DEAC or MAC) | | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Formula/ Average Dispensing Fee | Dispensing Fee Formula Factors | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | WEAC[8] (Pay lower of) | DEAC[7] | SMAC[7] | | | | Dispensing Expense | Inventory Management Factor | Delivery |
| 5/1/1990 - 1/31/1991 | Y | Y | Y | | AWP-10.49% or WAC +12% | 3 | Y | | Y | 1,2,4 | 4.26 | 3.0% | 0.10 |
| 2/1/1991 - 3/30/1992 | Y | Y | Y | | AWP-10.49% or WAC +12% | 3 | Y | | Y | 1,2,4 | 4.53 | 3.0% | 0.10 |
| 4/1/1992 - 8/31/1992 | Y | Y | Y | | AWP-10.49% or WAC +12% | 3 | Y | | Y | 1,2,4 | 4.55 | 3.0% | 0.10 |
| 9/1/1992 - 8/31/1997 | Y | Y | Y | | AWP-10.49% or WAC +12% | 3 | Y | | Y | 1,2,4,5 | 4.55 | 7.0% | 0.10 |
| 9/1/1997 - 10/15/2003 | Y | Y | Y[7] | Y[8] | AWP-15% or WAC +12% [9] | 10,11 | Y[12] | 12 | Y | 5.27 [13] | 5.27 | 2.0% | 0.15 |
| 10/16/2003 - 11/30/2004 | Y | Y | Y | Y[8] | AWP-15% or WAC +12% [9] | | Y | 12 | Y | $5.14 [14] | 5.14 | 1.95% | 0.15 |
| 12/1/2004 - 8/31/2007 | Y | Y | Y | Y[8] | AWP-15% or WAC +12% [9] | | Y | 12 | Y | $5.14 [14,15,16] | 5.14 | 1.95% | 0.15 |
| 9/1/2007 - Present | Y | Y | Y | Y[8] | AWP-15% or WAC +12% [9] | | Y | 12 | Y | $5.14 [14,15,16] | 7.5 | 2.00% | 0.15 |



Data taken from Medicaid State Plan Amendments

Data taken from National Pharmaceutical Council Benefits Summaries

Data provided by Barbara Dean, Senior Pharmacy Policy Analyst on 12/9/08, 12/16/08, 12/17/08

[1] TN 90-12 and 96-01 (5/1/90 - 8/31/1997) report that the Department reimburses contracted Medicaid pharmacy providers on a **cost-related basis** (through cost reports) for prescription dispensing services and drug products provided to Medicaid recipients. This reimbursement is accomplished through **assignment of a dispensing fee (DF) for each prescription**. The department determines the DF after analyzing statewide financial and demographic information about the total cost of dispensing prescriptions.

[2] TN 90-12 and 96-01 (5/1/90 - 8/31/1997) report that the dispensing fee is based on the projected statewide median dispensing expense and a predetermined formula that provides an opportunity for profit on each prescription.

[3] NPC Summaries for 1992, 1993, and 1994 report Direct Prices only for Abbott, Merck, Upjohn and Wyeth-Ayerst. NPC Summaries for 1994-1996 report DP only for Abbott, Upjohn and Wyeth-Ayerst. NPC Summaries for 1997, 1998, and 1999 report Direct Prices only for Abbott, Pharmacia & Upjohn, and Wyeth-Ayerst.

[4] NPC 1990 formula: (EAC + 4.26) divided by 0.970 = amount paid + $.10 delivery service. NPC 1991 formula: (EAC + 4.53) divided by 0.970 = amount paid + $.10 delivery service. NPC 1992 formula: (EAC + 4.53) divided by 0.970 = amount paid + $.10 delivery service. NPC 1992 formula: (EAC + 4.55) divided by 0.970 = amount paid + $.10 delivery service. NPCs 1993 - 1995 formulae: (EAC + 4.55) divided by 0.930 = amount paid + $.10 delivery service.

[5] NPC 1996 and 1997 formula: (EAC + 4.55) divided by 0.930 = amount paid + $.10 delivery service.

[6] The Department uses First DataBank and the Redbook as pricing references.

[7] EAC defined as the wholesale estimated acquisition cost (WEAC), direct estimated acquisition cost (DEAC), according to the pharmacist's usual purchasing source and the pharmacist's usual purchasing quantity; or maximum allowable cost (MAC) for multi-source drugs.

[8] The Department began reducing drug costs based on DOJ pricing beginning in 2000.

[9] All drug purchases from a central purchasing entity must be billed to the department as warehouse purchases. The WEAC is established by the department using the current Redbook, Redbook update, First Databank or manufacturer pricing less a discount of 15%, which represents discounts received by pharmacists on wholesale drug purchases. The WEAC may not exceed wholesaler costs, as supplied by the drug manufacturers, plus a 12% markup representing wholesaler operating costs and profits. Exceptions to the percentages may be made on certain drugs and/or drug categories where additional information supplied to the department by the manufacturer indicates that application of the specific WEAC percentages does not reflect customarily

[10] The DEAC is established by the department using direct price information supplied by drug manufacturers. Providers are reimbursed only at the DEAC on all drug products that are available from select manufacturers/distributors who actively seek and encourage direct purchasing.

[11] NPC Summaries for 2000, 2001 and 2002 report that DEAC was available only for Wyeth-Ayerst. NPC 2003 reports that  DEAC was available only for Wyeth-Ayerst and Abbott.

[12] SMAC referred to as Texas Maximum Allowable Cost, or TMAC. The TMAC reimbursement limit applies only to multi-source drugs included in the Vendor Drug Program's formulary (Texas Drug Code Index, or TDCI).  Multi-source drugs are sorted into therapeutic categories based on the drug and strenth, and in some cases, on the dosage form and package size. The TMAC reimbursement limit selected for each therapeutic category is determined using the WEAC of all drugs in the respective category. The TMAC reimbursement limits are maximum reimbursment limits. If a pharmacy provider dispenses a drug with a WEAC or DEAC below the TMAC limit, reimbursement is made at the lower cost based on the provider's source of purchase of the drug. If a drug is subject to both TMAC limits and federal upper limits, the lower of the two limits is the maximum reimbursement limit.

[13] Eff. 09-01-97 (TN 97-15), the dispensing fee is determined by the following formula: Dispensing Fee = (((Estimated Drug Ingredient Cost + Estimated Dispensing Expense) divided by (1 - Inventory Management Factor)) - Estimated Drug Ingredient Cost) + Delivery Incentive. NPC 1999 - 2002 formula: (EAC + 5.27) divided by 0.980 = amount paid + $0.15 delivery service. NPC 2003 formula: (EAC + 5.14) divided by 0.9805 = amount paid + $0.15 delivery service.

[14] Beginning on 10/16/2004, the estimated dispensing expense was $5.14, and the inventory management factor was 1.95%. The total dispensing fee should not exceed $200 per prescription. The delivery incentive was $0.15 per prescription.

[15] Dispensing fee is determined by the following formula: Dispensing Fee = (((Estimated Drug Ingredient Cost + Estimated Dispensing Expense) divided by (1 - Inventory Management Factor)) - Estimated Drug Ingredient Cost) + Delivery Fee + Preferred Generic Fee.

[16] A generic drug dispensing incentive of $0.50 per prescription shall be paid on all Medicaid prescriptions filled for preferred generic drugs for which a manufacturer has agreed to pay a supplemental rebate. Preferred generic drugs are subject to the requirements for placement on the Preferred Drug List.

DRAFT

State of:    **UTAH**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | Usual and Customary | FUL | EAC[10] | Provider's Submitted Charge | MAC | DOJ Pricing | Estimated Acquisition Cost (EAC)[1] Brand/Generic | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Brand/Generic | Rural Pharmacy Brand/Generic | Category J[8] | Category K[8] | Category L[8] | Category M[8] | Special Category Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1989  -  6/30/1990 | Y | Y | Y | Y | Y[2] | | AWP - 12% | | $3.65 | $4.15 | | | | | |
| 7/1/1990  -  3/31/2001 | Y | Y | Y | Y | Y | | AWP - 12% [4] | Y[5] | $3.90 | $4.40 [3] | | | | | 6 |
| 4/1/2001  -  12/31/2002 | Y | Y | Y | Y | Y | Y[9] | AWP - 12% | Y | $3.90 | $4.40 | $8.90 | $18.90 | $22.90 | $33.90 | 7 |
| 1/1/2003  -  Present | Y | Y | Y | Y | Y | Y[9] | AWP - 15% | Y[11] | $3.90 | $4.40 | $8.90 | $18.90 | $22.90 | $33.90 | 7 |

Prescription/Legend Drugs — "Lower of" Reimbursement Methodology

■ Data taken from Medicaid State Plan Amendments

■ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

■ Data taken from Other Source (United State Medicaid DUR Committee - The Amber Sheet, Volume 9, dated April 2001 or Pharmacy Manual)

■ Data provided by Tim Morley, R.Ph., Pharmacy Director on 1/7/09

[1] Per TN #89-02, effective 01/01/1989:  The Average Wholesale Price (AWP) is determined for each drug by the Utah contract with American Druggist, Blue Book First Data Bank.  They provide a monthly update of drug prices for the Reference File.  First Data Bank uses AWP from wholesalers in many states for determining AWP in specific regions.  Except for special category fees, reimbursement is based on lower of State MAC, EAC, FUL, or AWP.

[2] Per TN #89-02, effective 01/01/1989:  Utah Maximum Allowable Cost reimbursement established by the Utah Department of Health, Division of Health Care Financing, for selected multiple-source (generic) drugs not appearing on the federal upper limit list.  These drugs are listed in the Pharmacy Provider Manual.

[3] Per TN #93-02, effective 01/01/1993:  In recognition of lower volume and higher acquisition costs, rural pharmacies are paid a $.50 dispensing fee differential.  The differential is paid in addition to the dispensing fee paid to urban pharmacies.  Rural is defined as those pharmacies located outside of Weber, Davis, Utah and Salt Lake counties.

[4] Per 1994 NPC Publication:  An increasing number of Medicaid recipients are enrolled in MCOs, and pharmacy benefits are received through the Managed Care.  Per 1997 NPC Publication, pharmacy benefit is a carve-out from managed care.  Methodology not provided.

[5] Per 1996 NPC Publication:  Override requires "Brand Medically Necessary."

[7] Per TN #97-007, effective 09/12/1997:  The Department shall impose a copayment in the amount of $1.00 for each prescription filled when a non-exempt Medicaid client, as designated on his Medicaid card, receives the prescribed medication.  The Department shall limit

[6] Per TN #93-002, effective 01/01/1993:  Special Category Fees apply to the following: (1) Payment for insulin, birth control pills, and non-legend (OTC) drugs and (2) Payment for non-legend OTC antacid liquids.  This fee is a negotiated fee initially developed in cooperation with the Utah Pharmaceutical Association and other key pharmacists to apply to specific drugs historically advertised and dispensed to the general public at minimum prices.

[7] Per TN #01-004, effective 04/01/2001:  Special Category Fees includes addition of Differential fee payment for selected drugs reconstitute for Home IV infusion as typically prepared by a specialty pharmacy.  Specialty pharmacies have low volume but high overhead expenses.  The Department of Justice (DOJ) in year 2000 repriced the AWP for 437 NDC specific products.  The repriced products necessitated four new dispensing fees.  The four fees are defined as Category J, Category K, Category L, and Category M.

[8] Per the United State Medicaid DUR Committee - The Amber Sheet, Volume 9, dated April 2001:  Categories two through five (J-M) are increasingly difficult prescriptions with category five being the most difficult and expensive to prepare.  Category five includes chemotherapy IVs, pain management, and cardiac ionotropics; Category four includes complex antibiotics that require laboratory monitoring and reporting; Category three includes simple IV antibiotics, anticoagulant treatments, IV gamma globulin, etc.; Category two includes nucleator preparations, growth hormone, etc.

[9] DOJ prices were implemented on an effective date of August 1, 2001. This included the establishment of a "true AWP" for 437 NDC specific products, each of which is placed into one of five categories and assigned a new dispensing fee.

[10] Pricing provided by First DataBank since 1989 or 1990.

[11] According to the Utah Medicaid Provider Manual, Pharmacy Services, (updated January 2007), brand name drugs require a prior approval if an 'AB' rated generic alternative is available. The Utah Pharmacy Practice Act mandates use of a generic unless the treating physician demonstrates to the Department of Health a medical necessity for dispensing the non-generic, brand-name legend drug.

**DRAFT**

State of: __Vermont__

**Medicaid Pharmacy Reimbursement Metholodgy**

| | Prescription/Legend Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology<br>Pay the lower of each formula listed | | | | | Estimated Acquisition Cost (EAC)[1] | | Compound Drugs | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand | Generic | | | | Brand | Generic | Out-of-State |
| 1/1/1991 - 6/30/1991 | ? | ? | ? | ? | | ? | ? | | | ? | | | |
| 7/1/1991 - 3/31/1996 | Y | Y | Y | N | | AWP-10% | AWP-10% | | | | $4.25 [2] | $4.25 [2] | |
| 4/1/1996 - 11/14/2001 | Y | Y | Y | N | | AWP - 10% | AWP-10%[3] | 5 | | Y[4] | $4.25 | $4.25 | |
| 11/15/2001 - 12/31/2004 | Y | Y | Y | Y | | AWP - 10% | AWP-10%[3] | 5 | | Y[4] | $4.25 | $4.25 | |
| 1/1/2005 - 7/1/2007 | Y | Y | Y | Y | | AWP - 11.9% | AWP-11.9%[3] | 5 | | Y[6] | $4.25 | $4.25 | $3.65 |
| 7/2/2007 - Present | Y | Y | Y | Y | | AWP - 11.9% | AWP-11.9%[3] | AWP-11.9% plus $15.00 | | Y[6] | $4.25 | $4.25 | $3.65 |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data taken from Mary Day on 08/04/08

[1] State used First DataBank until 1/1/2006 and then switched to Medispan

[2] Dispensing fee becomes 10% of cost of ingredients when ingredients exceed $42.50, capped at $7.50. This provision is not reported anymore beginning with NPC 1996.

[3] State Plan reports that multiple source drugs are paid at average wholesale price (100% AWP?) plus dispensing fee.

[4] TN # 96-6 reports that physician certified as brand necessary are paid at the lower of the amount charged or the average wholesale price less 10 percent plus a dispensing fee.

[5] Payment for compounded prescriptions is made at the lower of the amount charged at the AWP on file, plus a compounding fee plus a dispensing fee.

[6] TN # 00-06 reports that physician certified as brand necessary are paid at the lower of the amount charged or the average wholesale price less 11.9 percent plus a dispensing fee.

DRAFT

**State of:** Virginia

**Medicaid Pharmacy Reimbursement Methodology**

### Legend/Prescription Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC)[2] | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Home Infusion Therapy |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC[1] | Brand | Generic | | | Brand | Generic | Unit Dose | |
| 10/1/1990 - 6/30/1995 | Y | Y | Y | Y | AWP - 9% | AWP - 9% | 3 | Y | $4.40 | $4.40 | 4 | |
| 7/1/1995 - 6/30/2002 | Y | Y | Y | Y | AWP - 9% | AWP - 9% | 3 | Y | $4.25 | $4.25 | 4 | 10 |
| 7/1/2002 - 6/30/2003 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 3 | Y | $4.25 | $4.25 | 4 | 10 |
| 7/1/2003 - 11/5/2003 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 3 | Y | $3.75 | $3.75 | 4 | 10 |
| 11/6/2003 - 11/30/2004 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 5 | Y | $3.75 | $3.75 | $5.00 6 | 10 |
| 12/1/2004 - 6/30/2005 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 7 | Y | $3.75 | $3.75 | $5.00 6 | 10 |
| 7/1/2005 - 4/30/2006 | Y | Y | Y | Y | AWP - 10.25% | AWP - 10.25% | 7 | Y | $3.75 | $4.00 | $5.00 6 | 10 |
| 5/1/2006 - Present | Y | Y | Y | Y | AWP - 10.25%[8] | AWP - 10.25%[8] | 7, 9 | Y | $4.00 | $4.00 | $5.00 6 | 10 |

 Data taken from Medicaid State Plan Amendments

 Data provided by Jennifer Gobble, Office of Attorney General, 7/10/08 and 7/15/08

Data provided in AWP-MDL Deposition Transcript and Exhibits

[1] State MAC referred to as VMAC.

[2] First DataBank used for pricing.

[3] VMAC based on 60th percentile or maximum cost level.

[4] Program pays additional reimbursement for the 24-hour unit dose delivery system of dispensing drugs for patients residing in NFs.  Per Abbott Exhibit 1160 (11-4-08) VAC MDL 75692: Effective 10/1/1990, for unit-dose packaging, an allowance of $0.0157 per tablet, per capsule, or per 10 ml (average dose) oral liquid for non-commercial unit-dose packaging; and for unit-dose dispensing fee, an allowance of add-on payment of a $0.01 per oral tablet or oral capsule (the add-on is also applicable to each 10 ml of oral liquid dispensed). Effective 7/1/2002, if the claim is coded with 4 in the Unit dose field, $0.0157 for each tablet, capsule, and $0.0016 for each ml (repackaging).

[5] VMAC defined as the 75th percentile cost level, or the 60th percentile cost level for unit dose drugs, of the aggregate for each generic manufacturers' drug for each GCN. Manufacturers' costs are supplied by most  current First Data Bank File.

[6] For nursing facility residents, the unit dose dispensing fee is $5.00 per recipient per month per pharmacy provider.

[7] VMAC shall be the higher of either: (i) the lowest WAC plus 10%, or (ii) the second lowest WAC plus 6%. Additional detail for development of the VMAC is also included in the State Plan.

[8] DMAS confirms that EAC for hemophilia drugs is AWP-25%.

[9] Effective July 1, 2008, DMAS initiated a Specialty MAC program. The drug classes that will be priced by the Specialty MAC program include: (1) Hematopoietic Agents; (2) Anti Tumor Necrosis Factor Agents (Rheumatoid Arthritis); (3) Immunomodulator Agents (Immune Suppressants); (4) Agents to treat Muscular Sclerosis; (5) Growth Hormones; and, (6) Interferon Agents for Hepatitis C. The new Specialty MAC reimbursement amount will be determined by and based on the Wholesale Acquisition Cost (WAC) + 4.75%.

[10] Virginia Register of Regulations, dated 10/11/1999, page 209 reports that: "The following therapy categories shall have pharmacy service day rate payment allowable: hydration therapy, chemotherapy, pain management therapy, drug therapy, total parenteral nutrition (TPN). The service day rate payment for the pharmacy component shall apply to the basic components and services intrinsic to the therapy category.

DRAFT

State of: **Washington**

**Medicaid Pharmacy Reimbursement Methodology**

### Prescription/Legend Drugs

| Effective Time Period | "Lower of" Reimbursement Methodology[1,7] | | | | | DOJ Pricing | Estimated Acquisition Cost (EAC)[12] Pay the lower of each formula listed | | | | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | E-AC[10] | A-MAC[11] | S-MAC[9] | | Brand | Generic | Schedule II Drugs | A-MAC | | Retail pharm. <15,000 Rxs | Retail pharm. 15,000-35,000 | Retail pharm. >35,000 Rxs | Unit dose sys. NH Rxs | Contracted Mail-order |
| 1/1/1990   -   6/30/1992 | Y | | Y | | Y | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.33 | $3.70 | $3.24 | $4.33 | |
| 7/1/1992   -   12/31/1992 | Y | | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.38 | $3.75 | $3.45 | $4.38 | |
| 1/1/1993   -   6/30/1995 | Y | | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.50 | $3.90 | $3.65 | $4.50 | |
| 7/1/1995   -   6/30/1996 | Y | | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | | | $4.59 | $3.98 | $3.72 | $4.59 | |
| 7/1/1996   -   6/30/1997 | Y | Y | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | [3] | Y | $4.68 | $3.98 | $3.79 | $4.68 | |
| 7/1/1997   -   6/30/1999 | Y | Y | Y | | Y[2] | | AWP - 11% | AWP - 11% | 100% AWP[8] | [3] | Y | $4.82 | $4.18 | $3.90 | $4.82 | |
| 7/1/1999   -   6/30/2001 | Y | Y | Y | | Y | | AWP - 11% | AWP - 11% | 100% AWP[8] | | Y | $4.92 | $4.26 | $3.98 | $4.92 | |
| 7/1/2001   -   7/31/2002 | Y | Y | Y | | Y | Y[11] | AWP - 11% | AWP - 11% | 100% AWP[8] | | Y | $5.12 | $4.44 | $4.14 | $5.12 | |
| 8/1/2002   -   1/31/2003 | Y | Y | Y | Y | Y | Y[11] | AWP- 14% | AWP-14%/AWP-50%[4] | | | | $5.20 | $4.51 | $4.20 | $5.20 | |
| 2/1/2003   -   6/30/2005 | Y | Y | Y | Y | Y | Y[11] | AWP- 14%[5] | AWP-14%/AWP-50%[4,5] | | | Y | $5.20 | $4.51 | $4.20 | $5.20 | $3.25 [5] |
| 7/1/2005   -   Present | Y | Y | Y | Y | Y | Y[11] | AWP- 14%[5] | AWP-14%/AWP-50%[4,5] | | | Y | $5.25 | $4.56 | $4.24 | $5.25 | $3.25 [5,6] |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Myra Davis, Manager Pharmacy Rates Unit on 6/6/08, 6/11/08, 7/22/08, 8/4/08, 12/9/08

[1] Primary pricing source was First DataBank drug file; secondary was Redbook for comparisons, special issues, etc.

[2] The 1990 and 1992 S-MAC list may have been for specific drugs or specific NDCs but since the mid-nineties, S-MACs have been GCN based with only a few being NDC specific.

[3] Per TN# 97-04, automated maximum allowable cost (AMAC) pricing shall apply to m.s. drugs which are not on HCFA upper limits or the agency's MAC list but are produced by three or more manufacturers/labelers under the federal drug rebate agreement. AMAC reimbursement for all products within a generic code number sequence shall be at the EAC of the third lowest priced product in that sequence, or the EAC of the lowest priced drug under a federal rebate agreement in that sequence, whichever is higher. AMAC is recalculated each time there are pricing updates to any product in the sequence.

[4] EAC is AWP- 14% for multisource drugs with four or fewer manufacturers/labelers; AWP- 50% for multisource drugs with five or more manufacturers/labelers and no MAC or FUL; and 100% of certified AWP for  infusion, injectable, and inhalation drugs with certified AWPs.  Per TN# 02-022, these EAC percentages are effective for dates of service on and after 8/1/02.

[5] For the contracted mail-order delivery service of prescription drugs, the contractor/pharmacy guarantees that the average annual multisource discount, in aggregate for all drugs dispensed will be at least 60% of AWPand for brand drugs AWP-19%. An annual reconciliation will be performed and the contractor will pay any shortfall on a dollar-for-dollar basis.

[6] Mail order service ended on 1/31/2008.

[7] On 3/13/1996, State implemented HRSA's point-of-sale (POS) system that looks at multiple items to price and pay a claim: group file, plan file, drug file, specific system logic (examples: peak-flow meters and spacers; S-MAC'd drugs or specific product exclusions from AWP-50% pricing). Authorizations and provider files are also part of the information used to process the claims. The POS pays the lesser of the prices posted to the drug file for the drug in question. The drug's manufacturer must have a signed federal rebate agreement in order for the drug to be payable on the system. (There are a very few exceptions to the rebate requirement.) The POS system calculates the system's allowable ingredient cost (units x the lesser of EAC,  S-MAC, A-MAC, or FUL) and compares it to the submitted ingredient cost. The lesser of the two is the allowed ingredient cost. Then it adds the allowed ingredient cost plus the dispensing fee and this figure becomes the allowed charge shown on the claim. It then compares the allowed charge to the total claim charge and the lesser amount equals the amount paid on the claim.

[8] Paid 100% AWP for schedule II drugs from 1/1/92 - 3/31/02. On 4/01/02, began paying Schedule II drugs at AWP-11% like all other drugs.

[9] The State Maximum Allowable Cost (S-MAC) sets a price on multiple source drugs as a result of specific knowledge of available products and pharmacy acquisition costs. S-MAC is a fixed price across an entire Generic Code Number (GCN) that overrides A-MACs.  New or revised S-MACs are published monthly and loaded into the system on a monthly basis. The current S-MAC list has approximately 1200 GCNs on the list.

[10] E-AC is HRSA's estimate of the price providers generally and currently pay for a drug marketed or sold by a particular manufacturer or retailer. It is generally the price paid for single-source or brand-name drugs and is the highest available price on the drug file. When there is specific information informing the estimate of acquisition costs, the State may have a different, lower amount payable on the drug file such as for some clotting factors.

[11] Per the state, Certified AWPs (CAWP) were applied for particular products according to instruction. These CAWPs were entered as fixed sums into the "lesser than" payment algorithm. For systems functionality reasons, the CAWPs were entered into the MAC field but are not MACs and have always been known as certified AWPs.  Also due to functionality reasons in the legacy system, the CAWPs have remained in the payment algorithm. They will be removed in the new POS system. (We have been told it is no longer necessary to maintain them.)

[12] According to a long-time employee, there was a demonstration project related to infusion therapies, in which infusion therapy providers were reimbursed on a per diem basis.  The project took place sometime in the mid-1990's and ran only a short time.

DRAFT

**State of:**    West Virginia

**Medicaid Pharmacy Reimbursement Metholodogy**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[7] Pay the lower of each formula listed | | SMAC Description | Physician Override (DAW,Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | | Brand | Generic | Compounded Prescriptions |
| 1/1/1991[1]  -  12/31/1995[1] | Y | Y | Y | | N | 100% AWP | 100% AWP | | Y | $2.75 | $2.75 | Add $1.00 |
| 1/1/1996[1,3]  -  6/30/2005 | Y | Y | Y | Y[8] | N | AWP-12% | AWP-12% | | Y | $3.90 | $3.90 | Add $1.00[2] |
| 7/1/2005  -  4/16/2006 | Y | Y | Y | Y[8] | Y | AWP-12% | AWP-12% | [4] | Y | $3.90 | $3.90 | Add $1.00[2] |
| 4/17/2006  -  Present | Y | Y | Y | Y[8] | Y | AWP-15%[5,6] | AWP-30%[5,6] | [4] | Y | $2.50 | $5.30 | Add $1.00[2] |

 Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by the Bureau for Medical Services on 6/5/08, 6/24/08, 7/21/08, 7/23/08, 8/4/08, 10/24/08, 10/27/08

[1] Month and day effective dates arbitrarily assigned since no State Plan information was available.

[2] Effective 1/1/01 per TN #00-11, payment for all compounded drug mixtures with at least one legend ingredient and for parentally administered drugs will be based upon the EAC of the drug plus a compounding fee determined by the agency to cover the cost of specially prepared admixtures and case management services for drugs requiring parenteral administration.

[3] 1/1/1996 through 12/31/1997 information obtained from NPC since no State Plan information was available.

[4] Per TN #03-10, effective 9/15/2003, SMAC will be determined using **130% of the lowest WAC** as provided by national drug informaion suppliers for 3 manufacturers or SMAC based on a mean average of pharmacy provider costs obtained through a survey of a percentage of pharmacy providers that are representative of the overall geographical distribution, service volume, and business structures of all pharmacies serving the WV Medicaid Program. In those instances where less than 3 manufacturers supply products in the marketplace, the following steps are followed (See Attachment 4.19-B, Page 9, 9a and 9b).

[5] Reimbursement will be at the Medicare price or Bureau for Medical Services assigned fee for any drug that has an HCPCS code.

[6] For drugs described in section 340B of Public Law 102-585, the Veteran's Health Act of 1992, payment will be based on **the actual acquisition cost plus a dispensing fee of $8.25, if lower than EAC, FUL, SMAC, or Medicare Price in footnote #5. This does not however, apply to 340B entities that contract with regular retail pharmacies.**

[7] First DataBank has been used for at least the last ten years.

[8] DOJ prices for the originally identified 437 NDC coes (some no longer active) have been used since 1/1/2001.

DRAFT

State of:  **Wisconsin**

**Medicaid Pharmacy Reimbursement Methodology**

| Effective Time Period | | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[1] Pay the lower of each formula listed | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand | Generic | Schedule II[3] | | Traditional | Unit Dose | |
| 7/1/1990 - | 6/30/1997 | Y | Y | Y | Y | | AWP-10%; DP[2] | AWP-10%; DP[2] | 100% AWP | Y | 4.69 [4] | $6.67 | 5,6,7 |
| 7/1/1997 | 6/30/1998 | Y | Y | Y | Y | | AWP-10%; DP[2] | AWP-10%; DP[2] | 100% AWP | Y | 4.78 [4] | $6.67 | 5,6,7 |
| 7/1/1998 - | 3/31/2000 | Y | Y | Y | Y | | AWP-10%; DP[2] | AWP-10%; DP[2] | 100% AWP | Y | $4.88 [4] | $6.94 | 5,6,7 |
| 4/1/2000 - | 6/30/2001 | Y | Y | Y | Y | Y[8] | AWP - 10% | AWP - 10% | | Y | $4.88 [4] | $6.94 | 5,6,7 |
| 7/1/2001 - | 8/14/2003 | Y | Y | Y | Y | Y[8] | AWP - 11.25% | AWP - 11.25% | | Y | $4.88 [4] | $6.94 | 5,6,7 |
| 8/15/2003 - | 6/30/2004 | Y | Y | Y | Y | Y[8] | AWP - 12% | AWP - 12% | | Y | $4.88 [4] | $6.94 [9] | 5,6,7 |
| 7/1/2004 - | Present | Y | Y | Y | Y | Y[8] | AWP - 13% | AWP - 13% | | Y | $4.88 [4] | | 5,6,7 |



████  Data taken from Medicaid State Plan Amendments

████  Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

████  Data provided by Kimberly Smithers, Medicaid Systems Specialist, 7/3/08, 7/21/08, 7/22/08, 7/24/08, 7/28/08, 8/4/08, 10/16/08, 10/17/08, 10/20/08

[1] The State uses First DataBank for pricing.

[2] From 7/1/1990 through 03/31/2000, Direct Price for drugs marketed by selected manufacturers: Bristol-Myers Squibb, Wyeth-Ayerst, Merck Sharp & Dohme, and Upjohn.

[3] From 1/1/1992 through 03/31/2000, pricing applies to Schedule II drugs that were not on the MAC table.

[4] Maximum of two dispensing fees per month.

[5] Effective 07/01/1996, the dispensing fees for pharmaceutical care are dependent upon the pharmaceutical care intervention being performed: $9.45 for 1-5 min.; $14.68 for 6-15 min.; $22.16 for 16-30 min.; $40.11 for 31-60 min.; $40.11 for 60+ min.  Effective 04/01/1998, the time allowance for compound drugs is dependent upon the time it takes the pharmacist to complete the compound:  $9.45 for 0-5 min.; $14.68 for 6-15 min.; $22.16 for 16-30 min.; $22.16 for 31-60 min.; $22.16 for 60+ min. Compound drugs prior to 1998 were priced manually by pharmacy consultants. With the implementation of the point-of-sale system in 1998, compound drugs could have been priced manually or using the pricing methodologies previously documented.

[6] Effective 07/01/95, per prescription drug payment reduction of $0.50 per prescription dispensed.

[7] Effective 4/1/1997, dispensing allowance for re-packaging of $0.015/unit.

[8] DOJ pricing went into effect for specific drugs beginning on 05/01/2000 and remains in effect through the present.

[9] Reimbursement for unit dose dispensing fee was discontinued on 9/1/2003.

**DRAFT**

**State of:**   Wyoming

**Medicaid Pharmacy Reimbursement Metholodogy**

| Effective Time Period | | "Lower of" Reimbursement Methodology Pay the lower of each formula listed | | | | Estimated Acquisition Cost (EAC) | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Usual and Customary | FUL | EAC | SMAC | Brand | Generic | | | Retail | Nursing Home |
| 1/1/1991 - 6/30/2001 | | Y | Y | Y | N | AWP-4%[1] | AWP-4%[1] | | Y | $4.70 [1] | $4.70 [1] |
| 7/1/2001 - Present | | Y | Y | Y | Y | AWP-11% | AWP-11% | [2] | Y | $5.00 [3] | $5.00 [3] |



Data taken from Medicaid State Plan Amendments

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

Data provided by Colleen Jones, 5/27/08

[1] State Plan reported the EAC as AWP-11% and the DF as $4.70 = .07(AWP).  Per the Wyoming State Pharmacist, this could not be implemented in the claims processing and pharmacy systems without confusion, so the other formulas were used with the same result. There should be Myers and Stauffer dispensing fee studies that document this.

[2] Beginning in 2002, State began very limited SMAC to address some specific NDCs.  A new SMAC Program was implemented in 2003. NPCs 2002 - 2003 report State MAC pricing for 6 drugs, and NPCs 2004 - 2005/2006 report 1,226 drugs on MAC list.

[3] Although TN 01-004 includes general language only with both the specific EAC formula and dispensing fee amount for legend drugs removed, NPCs 2001 and 2002 report EAC = AWP-11% and $5.00 DF effective 7/1/01.  The $5.00 DF amount (not the EAC) is then formally re-added to the State Plan via TN #02-002, effective 4/1/2002.