# EXHIBIT 205

Westlaw.

42 U.S.C.A. § 1395u

**Effective: December 08, 2003 to December 31, 2004**

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 7. Social Security
      Subchapter XVIII. Health Insurance for Aged and Disabled
        Part B. Supplementary Medical Insurance Benefits for Aged and Disabled

→ **§ 1395u. Use of carriers for administration of benefits**

(a) Authority of Secretary to enter into contracts with carriers

In order to provide for the administration of the benefits under this part with maximum efficiency and convenience for individuals entitled to benefits under this part and for providers of services and other persons furnishing services to such individuals, and with a view to furthering coordination of the administration of the benefits under part A of this subchapter and under this part, the Secretary is authorized to enter into contracts with carriers, including carriers with which agreements under section 1395h of this title are in effect, which will perform some or all of the following functions (or, to the extent provided in such contracts, will secure performance thereof by other organizations); and, with respect to any of the following functions which involve payments for physicians' services on a reasonable charge basis, the Secretary shall to the extent possible enter into such contracts:

  **(1)(A)** make determinations of the rates and amounts of payments required pursuant to this part to be made to providers of services and other persons on a reasonable cost or reasonable charge basis (as may be applicable);

  **(B)** receive, disburse, and account for funds in making such payments;  and

  **(C)** make such audits of the records of providers of services as may be necessary to assure that proper payments are made under this part;

  **(2)(A)** determine compliance with the requirements of section 1395x(k) of this title as to utilization review;  and

  **(B)** assist providers of services and other persons who furnish services for which payment may be made under this part in the development of procedures relating to utilization practices, make studies of the effectiveness of such procedures and methods for their improvement, assist in the application of safeguards against unnecessary utilization of services furnished by providers of services and other persons to individuals entitled to benefits under this part, and provide procedures for and assist in arranging, where necessary, the establishment of groups outside hospitals (meeting the requirements of section 1395x(k)(2) of this title) to make reviews of utilization;

  **(3)** serve as a channel of communication of information relating to the administration of this part;  and

  **(4)** otherwise assist, in such manner as the contract may provide, in discharging administrative duties necessary to carry out the purposes of this part.

(b) Applicability of competitive bidding provisions;  findings as to financial responsibility, etc., of carrier;  contractual duties imposed by contract

**(1)** Contracts with carriers under subsection (a) of this section may be entered into without regard to section 5 of Title 41 or any other provision of law requiring competitive bidding.

**(2)(A)** No such contract shall be entered into with any carrier unless the Secretary finds that such carrier will perform its obligations under the contract efficiently and effectively and will meet such requirements as to financial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



42 U.S.C.A. § 1395u

responsibility, legal authority, and other matters as he finds pertinent. The Secretary shall publish in the Federal Register standards and criteria for the efficient and effective performance of contract obligations under this section, and opportunity shall be provided for public comment prior to implementation. In establishing such standards and criteria, the Secretary shall provide a system to measure a carrier's performance of responsibilities described in paragraph (3)(H), subsection (h) of this section, and section 1395w-1(e)(2) of this title. The Secretary may not require, as a condition of entering into or renewing a contract under this section or under section 1395hh of this title, that a carrier match data obtained other than in its activities under this part with data used in the administration of this part for purposes of identifying situations in which section 1395y(b) of this title may apply.

**(B)** The Secretary shall establish standards for evaluating carriers' performance of reviews of initial carrier determinations and of fair hearings under paragraph (3)(C), under which a carrier is expected--

    **(i)** to complete such reviews, within 45 days after the date of a request by an individual enrolled under this part for such a review, in 95 percent of such requests, and

    **(ii)** to make a final determination, within 120 days after the date of receipt of a request by an individual enrolled under this part for a fair hearing under paragraph (3)(C), in 90 percent of such cases.

**(C)** In the case of residents of nursing facilities who receive services described in clause (i) or (ii) of section 1395x(s)(2)(K) of this title performed by a member of a team, the Secretary shall instruct carriers to develop mechanisms which permit routine payment under this part for up to 1.5 visits per month per resident. In the previous sentence, the term "team" refers to a physician and includes a physician assistant acting under the supervision of the physician or a nurse practitioner working in collaboration with that physician, or both.

**(D)** In addition to any other standards and criteria established by the Secretary for evaluating carrier performance under this paragraph relating to avoiding erroneous payments, the carrier shall be subject to standards and criteria relating to the carrier's success in recovering payments made under this part for items or services for which payment has been or could be made under a primary plan (as defined in section 1395y(b)(2)(A) of this title).

**(E)** With respect to the payment of claims for home health services under this part that, but for the amendments made by section 4611 of the Balanced Budget Act of 1997, would be payable under part A of this subchapter instead of under this part, the Secretary shall continue administration of such claims through fiscal intermediaries under section 1395h of this title.

(3) Each such contract shall provide that the carrier--

    **(A)** will take such action as may be necessary to assure that, where payment under this part for a service is on a cost basis, the cost is reasonable cost (as determined under section 1395x(v) of this title);

    **(B)** will take such action as may be necessary to assure that, where payment under this part for a service is on a charge basis, such charge will be reasonable and not higher than the charge applicable, for a comparable service and under comparable circumstances, to the policyholders and subscribers of the carrier, and such payment will (except as otherwise provided in section 1395gg(f) of this title) be made--

        **(i)** on the basis of an itemized bill;  or

        **(ii)** on the basis of an assignment under the terms of which (I) the reasonable charge is the full charge for the service, (II) the physician or other person furnishing such service agrees not to charge (and to refund amounts already collected) for services for which payment under this subchapter is denied under section 1320c-3(a)(2) of this title by reason of a determination under section 1320c-3(a)(1)(B) of this title, and (III) the physician or other person furnishing such service agrees not to charge (and to refund amounts already collected) for such service if payment may not be made therefor by reason of the provisions of paragraph (1) of section 1395y(a) of this title, and if the individual to whom such service was furnished was without fault in incurring the expenses of such service, and if the Secretary's determination that payment (pursuant to such assignment) was incorrect and was made subsequent to the third year following the year in which notice of such payment was sent to such individual;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

except that the Secretary may reduce such three-year period to not less than one year if he finds such reduction is consistent with the objectives of this subchapter (except in the case of physicians' services and ambulance service furnished as described in section 1395y(a)(4) of this title, other than for purposes of section 1395gg(f) of this title);

but (in the case of bills submitted, or requests for payment made, after March 1968) only if the bill is submitted, or a written request for payment is made in such other form as may be permitted under regulations, no later than the close of the calendar year following the year in which such service is furnished (deeming any service furnished in the last 3 months of any calendar year to have been furnished in the succeeding calendar year);

(C) will establish and maintain procedures pursuant to which an individual enrolled under this part will be granted an opportunity for a fair hearing by the carrier, in any case where the amount in controversy is at least $100, but less than $500, when requests for payment under this part with respect to services furnished him are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy;

(D) will furnish to the Secretary such timely information and reports as he may find necessary in performing his functions under this part;

(E) will maintain such records and afford such access thereto as the Secretary finds necessary to assure the correctness and verification of the information and reports under subparagraph (D) and otherwise to carry out the purposes of this part;

(F) will take such action as may be necessary to assure that where payment under this part for a service rendered is on a charge basis, such payment shall be determined on the basis of the charge that is determined in accordance with this section on the basis of customary and prevailing charge levels in effect at the time the service was rendered or, in the case of services rendered more than 12 months before the year in which the bill is submitted or request for payment is made, on the basis of such levels in effect for the 12-month period preceding such year;

(G) will, for a service that is furnished with respect to an individual enrolled under this part, that is not paid on an assignment-related basis, and that is subject to a limiting charge under section 1395w-4(g) of this title--

(i) determine, prior to making payment, whether the amount billed for such service exceeds the limiting charge applicable under section 1395w-4(g)(2) of this title;

(ii) notify the physician, supplier, or other person periodically (but not less often than once every 30 days) of determinations that amounts billed exceeded such applicable limiting charges; and

(iii) provide for prompt response to inquiries of physicians, suppliers, and other persons concerning the accuracy of such limiting charges for their services;

(H) if it makes determinations or payments with respect to physicians' services, will implement--

(i) programs to recruit and retain physicians as participating physicians in the area served by the carrier, including educational and outreach activities and the use of professional relations personnel to handle billing and other problems relating to payment of claims of participating physicians; and

(ii) programs to familiarize beneficiaries with the participating physician program and to assist such beneficiaries in locating participating physicians;

(I) will submit annual reports to the Secretary describing the steps taken to recover payments made under this part for items or services for which payment has been or could be made under a primary plan (as defined in section 1395y(b)(2)(A) of this title); and

(J), (K) Repealed. Pub.L. 101-234, Title II, § 201(a), Dec. 13, 1989, 103 Stat. 1981

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

(L) will monitor and profile physicians' billing patterns within each area or locality and provide comparative data to physicians whose utilization patterns vary significantly from other physicians in the same payment area or locality;

and shall contain such other terms and conditions not inconsistent with this section as the Secretary may find necessary or appropriate. In determining the reasonable charge for services for purposes of this paragraph, there shall be taken into consideration the customary charges for similar services generally made by the physician or other person furnishing such services, as well as the prevailing charges in the locality for similar services. No charge may be determined to be reasonable in the case of bills submitted or requests for payment made under this part after December 31, 1970, if it exceeds the higher of (i) the prevailing charge recognized by the carrier and found acceptable by the Secretary for similar services in the same locality in administering this part on December 31, 1970, or (ii) the prevailing charge level that, on the basis of statistical data and methodology acceptable to the Secretary, would cover 75 percent of the customary charges made for similar services in the same locality during the 12-month period ending on the June 30 last preceding the start of the calendar year in which the service is rendered. In the case of physicians' services the prevailing charge level determined for purposes of clause (ii) of the preceding sentence for any twelve-month period (beginning after June 30, 1973) specified in clause (ii) of such sentence may not exceed (in the aggregate) the level determined under such clause for the fiscal year ending June 30, 1973, or (with respect to physicians' services furnished in a year after 1987) the level determined under this sentence (or under any other provision of law affecting the prevailing charge level) for the previous year except to the extent that the Secretary finds, on the basis of appropriate economic index data, that such higher level is justified by year-to-year economic changes. With respect to power-operated wheelchairs for which payment may be made in accordance with section 1395x(s)(6) of this title, charges determined to be reasonable may not exceed the lowest charge at which power-operated wheelchairs are available in the locality. In the case of medical services, supplies, and equipment (including equipment servicing) that, in the judgment of the Secretary, do not generally vary significantly in quality from one supplier to another, the charges incurred after December 31, 1972, determined to be reasonable may not exceed the lowest charge levels at which such services, supplies, and equipment are widely and consistently available in a locality except to the extent and under the circumstances specified by the Secretary. The requirement in subparagraph (B) that a bill be submitted or request for payment be made by the close of the following calendar year shall not apply if (I) failure to submit the bill or request the payment by the close of such year is due to the error or misrepresentation of an officer, employee, fiscal intermediary, carrier, or agent of the Department of Health and Human Services performing functions under this subchapter and acting within the scope of his or its authority, and (II) the bill is submitted or the payment is requested promptly after such error or misrepresentation is eliminated or corrected. Notwithstanding the provisions of the third and fourth sentences preceding this sentence, the prevailing charge level in the case of a physician service in a particular locality determined pursuant to such third and fourth sentences for any calendar year after 1974 shall, if lower than the prevailing charge level for the fiscal year ending June 30, 1975, in the case of a similar physician service in the same locality by reason of the application of economic index data, be raised to such prevailing charge level for the fiscal year ending June 30, 1975, and shall remain at such prevailing charge level until the prevailing charge for a year (as adjusted by economic index data) equals or exceeds such prevailing charge level. The amount of any charges for outpatient services which shall be considered reasonable shall be subject to the limitations established by regulations issued by the Secretary pursuant to section 1395x(v)(1)(K) of this title, and in determining the reasonable charge for such services, the Secretary may limit such reasonable charge to a percentage of the amount of the prevailing charge for similar services furnished in a physician's office, taking into account the extent to which overhead costs associated with such outpatient services have been included in the reasonable cost or charge of the facility.

(4)(A)(i) In determining the prevailing charge levels under the third and fourth sentences of paragraph (3) for physicians' services furnished during the 15-month period beginning July 1, 1984, the Secretary shall not set any level higher than the same level as was set for the 12-month period beginning July 1, 1983.

(ii)(I) In determining the prevailing charge levels under the third and fourth sentences of paragraph (3) for physicians' services furnished during the 8-month period beginning May 1, 1986, by a physician who is not a participating physician (as defined in subsection (h)(1) of this section) at the time of furnishing the services, the Secretary shall not set any level higher than the same level as was set for the 12-month period beginning July 1, 1983.

(II) In determining the prevailing charge levels under the fourth sentence of paragraph (3) for physicians' services furnished during the 8-month period beginning May 1, 1986, by a physician who is a participating physician (as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

defined in subsection (h)(1) of this section) at the time of furnishing the services, the Secretary shall permit an additional one percentage point increase in the increase otherwise permitted under that sentence.

(iii) In determining the maximum allowable prevailing charges which may be recognized consistent with the index described in the fourth sentence of paragraph (3) for physicians' services furnished on or after January 1, 1987, by participating physicians, the Secretary shall treat the maximum allowable prevailing charges recognized as of December 31, 1986, under such sentence with respect to participating physicians as having been justified by economic changes.

(iv) The reasonable charge for physicians' services furnished on or after January 1, 1987, and before January 1, 1992, by a nonparticipating physician shall be no greater than the applicable percent of the prevailing charge levels established under the third and fourth sentences of paragraph (3) (or under any other applicable provision of law affecting the prevailing charge level). In the previous sentence, the term "applicable percent" means for services furnished (I) on or after January 1, 1987, and before April 1, 1988, 96 percent, (II) on or after April 1, 1988, and before January 1, 1989, 95.5 percent, and (III) on or after January 1, 1989, 95 percent.

(v) In determining the prevailing charge levels under the third and fourth sentences of paragraph (3) for physicians' services furnished during the 3- month period beginning January 1, 1988, the Secretary shall not set any level higher than the same level as was set for the 12-month period beginning January 1, 1987.

(vi) Before each year (beginning with 1989), the Secretary shall establish a prevailing charge floor for primary care services (as defined in subsection (i)(4) of this section) equal to 60 percent of the estimated average prevailing charge levels based on the best available data (determined, under the third and fourth sentences of paragraph (3) and under paragraph (4), without regard to this clause and without regard to physician specialty) for such service for all localities in the United States (weighted by the relative frequency of the service in each locality) for the year.

(vii) Beginning with 1987, the percentage increase in the MEI (as defined in subsection (i)(3) of this section) for each year shall be the same for nonparticipating physicians as for participating physicians.

(B)(i) In determining the reasonable charge under paragraph (3) for physicians' services furnished during the 15-month period beginning July 1, 1984, the customary charges shall be the same customary charges as were recognized under this section for the 12-month period beginning July 1, 1983.

(ii) In determining the reasonable charge under paragraph (3) for physicians' services furnished during the 8-month period beginning May 1, 1986, by a physician who is not a participating physician (as defined in subsection (h)(1) of this section) at the time of furnishing the services--

   (I) if the physician was not a participating physician at any time during the 12-month period beginning on October 1, 1984, the customary charges shall be the same customary charges as were recognized under this section for the 12-month period beginning July 1, 1983, and

   (II) if the physician was a participating physician at any time during the 12- month period beginning on October 1, 1984, the physician's customary charges shall be determined based upon the physician's actual charges billed during the 12-month period ending on March 31, 1985.

(iii) In determining the reasonable charge under paragraph (3) for physicians' services furnished during the 3-month period beginning January 1, 1988, the customary charges shall be the same customary charges as were recognized under this section for the 12-month period beginning January 1, 1987.

(iv) In determining the reasonable charge under paragraph (3) for physicians' services (other than primary care services, as defined in subsection (i)(4) of this section) furnished during 1991, the customary charges shall be the same customary charges as were recognized under this section for the 9-month period beginning April 1, 1990. In a case in which subparagraph (F) applies (relating to new physicians) so as to limit the customary charges of a physician during 1990 to a percent of prevailing charges, the previous sentence shall not prevent such limit on customary charges under such subparagraph from increasing in 1991 to a higher percent of such prevailing charges.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(C)** In determining the prevailing charge levels under the third and fourth sentences of paragraph (3) for physicians' services furnished during periods beginning after September 30, 1985, the Secretary shall treat the level as set under subparagraph (A)(i) as having fully provided for the economic changes which would have been taken into account but for the limitations contained in subparagraph (A)(i).

**(D)(i)** In determining the customary charges for physicians' services furnished during the 8-month period beginning May 1, 1986, or the 12-month period beginning January 1, 1987, by a physician who was not a participating physician (as defined in subsection (h)(1) of this section) on September 30, 1985, the Secretary shall not recognize increases in actual charges for services furnished during the 15-month period beginning on July 1, 1984, above the level of the physician's actual charges billed in the 3-month period ending on June 30, 1984.

**(ii)** In determining the customary charges for physicians' services furnished during the 12-month period beginning January 1, 1987, by a physician who is not a participating physician (as defined in subsection (h)(1) of this section) on April 30, 1986, the Secretary shall not recognize increases in actual charges for services furnished during the 7-month period beginning on October 1, 1985, above the level of the physician's actual charges billed during the 3-month period ending on June 30, 1984.

**(iii)** In determining the customary charges for physicians' services furnished during the 12-month period beginning January 1, 1987, or January 1, 1988, by a physician who is not a participating physician (as defined in subsection (h)(1) of this section) on December 31, 1986, the Secretary shall not recognize increases in actual charges for services furnished during the 8-month period beginning on May 1, 1986, above the level of the physician's actual charges billed during the 3-month period ending on June 30, 1984.

**(iv)** In determining the customary charges for a physicians' service furnished on or after January 1, 1988, if a physician was a nonparticipating physician in a previous year (beginning with 1987), the Secretary shall not recognize any amount of such actual charges (for that service furnished during such previous year) that exceeds the maximum allowable actual charge for such service established under subsection (j)(1)(C) of this section.

**(E)(i)** For purposes of this part for physicians' services furnished in 1987, the percentage increase in the MEI is 3.2 percent.

**(ii)** For purposes of this part for physicians' services furnished in 1988, on or after April 1, the percentage increase in the MEI is--

   **(I)** 3.6 percent for primary care services (as defined in subsection (i)(4) of this section), and

   **(II)** 1 percent for other physicians' services.

**(iii)** For purposes of this part for physicians' services furnished in 1989, the percentage increase in the MEI is--

   **(I)** 3.0 percent for primary care services, and

   **(II)** 1 percent for other physicians' services.

**(iv)** For purposes of this part for items and services furnished in 1990, after March 31, 1990, the percentage increase in the MEI is--

   **(I)** 0 percent for radiology services, for anesthesia services, and for other services specified in the list referred to in paragraph (14)(C)(i),

   **(II)** 2 percent for other services (other than primary care services), and

   **(III)** such percentage increase in the MEI (as defined in subsection (i)(3)) as would be otherwise determined for primary care services (as defined in subsection (i)(4)) of this section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(v)** For purposes of this part for items and services furnished in 1991, the percentage increase in the MEI is--

    **(I)** 0 percent for services (other than primary care services), and

    **(II)** 2 percent for primary care services (as defined in subsection (i)(4) of this section).

**(5)** Each contract under this section shall be for a term of at least one year, and may be made automatically renewable from term to term in the absence of notice by either party of intention to terminate at the end of the current term; except that the Secretary may terminate any such contract at any time (after such reasonable notice and opportunity for hearing to the carrier involved as he may provide in regulations) if he finds that the carrier has failed substantially to carry out the contract or is carrying out the contract in a manner inconsistent with the efficient and effective administration of the insurance program established by this part.

**(6)** No payment under this part for a service provided to any individual shall (except as provided in <u>section 1395gg</u> of this title) be made to anyone other than such individual or (pursuant to an assignment described in subparagraph (B)(ii) of paragraph (3)) the physician or other person who provided the service, except that (A) payment may be made (i) to the employer of such physician or other person if such physician or other person is required as a condition of his employment to turn over his fee for such service to his employer, or (ii) where the service was provided under a contractual arrangement between such physician or other person and an entity, to the entity if, under the contractual arrangement, the entity submits the bill for the service and the contractual arrangement meets such program integrity and other safeguards as the Secretary may determine to be appropriate, (B) payment may be made to an entity (i) which provides coverage of the services under a health benefits plan, but only to the extent that payment is not made under this part, (ii) which has paid the person who provided the service an amount (including the amount payable under this part) which that person has accepted as payment in full for the service, and (iii) to which the individual has agreed in writing that payment may be made under this part, (C) in the case of services described in <u>clause (i) of section 1395x(s)(2)(K)</u> of this title, payment shall be made to either (i) the employer of the physician assistant involved, or (ii) with respect to a physician assistant who was the owner of a rural health clinic (as described in <u>section 1395x(aa)(2)</u> of this title) for a continuous period beginning prior to August 5, 1997 and ending on the date that the Secretary determines such rural health clinic no longer meets the requirements of <u>section 1395x(aa)(2)</u> of this title, payment may be made directly to the physician assistant, (D) payment may be made to a physician for physicians' services (and services furnished incident to such services) furnished by a second physician to patients of the first physician if (i) the first physician is unavailable to provide the services; (ii) the services are furnished pursuant to an arrangement between the two physicians that (I) is informal and reciprocal, or (II) involves per diem or other fee-for-time compensation for such services; (iii) the services are not provided by the second physician over a continuous period of more than 60 days; and (iv) the claim form submitted to the carrier for such services includes the second physician's unique identifier (provided under the system established under subsection (r) of this section) and indicates that the claim meets the requirements of this subparagraph for payment to the first physician. No payment which under the preceding sentence may be made directly to the physician or other person providing the service involved (pursuant to an assignment described in subparagraph (B)(ii) of paragraph (3)) shall be made to anyone else under a reassignment or power of attorney (except to an employer or entity as described in subparagraph (A) of such sentence); but nothing in this subsection shall be construed (i) to prevent the making of such a payment in accordance with an assignment from the individual to whom the service was provided or a reassignment from the physician or other person providing such service if such assignment or reassignment is made to a governmental agency or entity or is established by or pursuant to the order of a court of competent jurisdiction, or (ii) to preclude an agent of the physician or other person providing the service from receiving any such payment if (but only if) such agent does so pursuant to an agency agreement under which the compensation to be paid to the agent for his services for or in connection with the billing or collection of payments due such physician or other person under this subchapter is unrelated (directly or indirectly) to the amount of such payments or the billings therefor, and is not dependent upon the actual collection of any such payment. For purposes of subparagraph (C) of the first sentence of this paragraph, an employment relationship may include any independent contractor arrangement, and employer status shall be determined in accordance with the law of the State in which the services described in such clause are performed, (E) in the case of an item or service (other than services described in <u>section 1395yy(e)(2)(A)(ii)</u> of this title) furnished by, or under arrangements made by, a skilled nursing facility to an individual who (at the time the item or service is furnished) is a resident of a skilled nursing facility, payment shall be made to the facility, (F) in the case of home health services

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

(including medical supplies described in section 1395x(m)(5)of this title, but excluding durable medical equipment to the extent provided for in such section) furnished to an individual who (at the time the item or service is furnished) is under a plan of care of a home health agency, payment shall be made to the agency (without regard to whether or not the item or service was furnished by the agency, by others under arrangement with them made by the agency, or when any other contracting or consulting arrangement, or otherwise), and (G) in the case of services in a hospital or clinic to which section 1395qq(e) of this title applies, payment shall be made to such hospital or clinic.

(7)(A) In the case of physicians' services furnished to a patient in a hospital with a teaching program approved as specified in section 1395x(b)(6) of this title but which does not meet the conditions described in section 1395x(b)(7) of this title, the carrier shall not provide (except on the basis described in subparagraph (C)) for payment for such services under this part--

(i) unless--

(I) the physician renders sufficient personal and identifiable physicians' services to the patient to exercise full, personal control over the management of the portion of the case for which the payment is sought,

(II) the services are of the same character as the services the physician furnishes to patients not entitled to benefits under this subchapter, and

(III) at least 25 percent of the hospital's patients (during a representative past period, as determined by the Secretary) who were not entitled to benefits under this subchapter and who were furnished services described in subclauses (I) and (II) paid all or a substantial part of charges (other than nominal charges) imposed for such services; and

(ii) to the extent that the payment is based upon a reasonable charge for the services in excess of the customary charge as determined in accordance with subparagraph (B).

(B) The customary charge for such services in a hospital shall be determined in accordance with regulations issued by the Secretary and taking into account the following factors:

(i) In the case of a physician who is not a teaching physician (as defined by the Secretary), the carrier shall take into account the amounts the physician charges for similar services in the physician's practice outside the teaching setting.

(ii) In the case of a teaching physician, if the hospital, its physicians, or other appropriate billing entity has established one or more schedules of charges which are collected for medical and surgical services, the carrier shall base payment under this subchapter on the greatest of--

(I) the charges (other than nominal charges) which are most frequently collected in full or substantial part with respect to patients who were not entitled to benefits under this subchapter and who were furnished services described in subclauses (I) and (II) of subparagraph (A)(i),

(II) the meaning of the charges (other than nominal charges) which were collected in full or substantial part with respect to such patients, or

(III) 85 percent of the prevailing charges paid for similar services in the same locality.

(iii) If all the teaching physicians in a hospital agree to have payment made for all of their physicians' services under this part furnished to patients in such hospital on an assignment-related basis, the customary charge for such services shall be equal to 90 percent of the prevailing charges paid for similar services in the same locality.

(C) In the case of physicians' services furnished to a patient in a hospital with a teaching program approved as specified in section 1395x(b)(6) of this title but which does not meet the conditions described in section 1395x(b)(7) of this title, if the conditions described in subclauses (I) and (II) of subparagraph (A)(i) are met and if the physician elects

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

payment to be determined under this subparagraph, the carrier shall provide for payment for such services under this part on the basis of regulations of the Secretary governing reimbursement for the services of hospital-based physicians (and not on any other basis).

**(D)(i)** In the case of physicians' services furnished to a patient in a hospital with a teaching program approved as specified in <u>section 1395x(b)(6)</u> of this title but which does not meet the conditions described in <u>section 1395x(b)(7)</u> of this title, no payment shall be made under this part for services of assistants at surgery with respect to a surgical procedure if such hospital has a training program relating to the medical specialty required for such surgical procedure and a qualified individual on the staff of the hospital is available to provide such services; except that payment may be made under this part for such services, to the extent that such payment is otherwise allowed under this paragraph, if such services, as determined under regulations of the Secretary--

**(I)** are required due to exceptional medical circumstances,

**(II)** are performed by team physicians needed to perform complex medical procedures, or

**(III)** constitute concurrent medical care relating to a medical condition which requires the presence of, and active care by, a physician of another specialty during surgery,

and under such other circumstances as the Secretary determines by regulation to be appropriate.

**(ii)** For purposes of this subparagraph, the term "assistant at surgery" means a physician who actively assists the physician in charge of a case in performing a surgical procedure.

**(iii)** The Secretary shall determine appropriate methods of reimbursement of assistants at surgery where such services are reimbursable under this part.

**(8)(A)(i)** The Secretary shall by regulation--

**(I)** describe the factors to be used in determining the cases (of particular items or services) in which the application of this subchapter to payment under this part (other than to physicians' services paid under <u>section 1395w-4</u> of this title) results in the determination of an amount that, because of its being grossly excessive or grossly deficient, is not inherently reasonable, and

**(II)** provide in those cases for the factors to be considered in determining an amount that is realistic and equitable.

**(ii)** Notwithstanding the determination made in clause (i), the Secretary may not apply factors that would increase or decrease the payment under this part during any year for any particular item or service by more than 15 percent from such payment during the preceding year except as provided in subparagraph (B).

**(B)** The Secretary may make a determination under this subparagraph that would result in an increase or decrease under subparagraph (A) of more than 15 percent of the payment amount for a year, but only if--

**(i)** the Secretary's determination takes into account the factors described in subparagraph (C) and any additional factors the Secretary determines appropriate,

**(ii)** the Secretary's determination takes into account the potential impacts described in subparagraph (D), and

**(iii)** the Secretary complies with the procedural requirements of paragraph (9).

**(C)** The factors described in this subparagraph are as follows:

**(i)** The programs established under this subchapter and subchapter XIX are the sole or primary sources of payment for an item or service.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(ii)** The payment amount does not reflect changing technology, increased facility with that technology, or reductions in acquisition or production costs.

**(iii)** The payment amount for an item or service under this part is substantially higher or lower than the payment made for the item or service by other purchasers.

**(D)** The potential impacts of a determination under subparagraph (B) on quality, access, and beneficiary liability, including the likely effects on assignment rates and participation rates.

**(9)(A)** The Secretary shall consult with representatives of suppliers or other individuals who furnish an item or service before making a determination under paragraph (8)(B) with regard to that item or service.

**(B)** The Secretary shall publish notice of a proposed determination under paragraph (8)(B) in the Federal Register--

**(i)** specifying the payment amount proposed to be established with respect to an item or service,

**(ii)** explaining the factors and data that the Secretary took into account in determining the payment amount so specified, and

**(iii)** explaining the potential impacts described in paragraph (8)(D).

**(C)** After publication of the notice required by subparagraph (B), the Secretary shall allow not less than 60 days for public comment on the proposed determination.

**(D)(i)** Taking into consideration the comments made by the public, the Secretary shall publish in the Federal Register a final determination under paragraph (8)(B) with respect to the payment amount to be established with respect to the item or service.

**(ii)** A final determination published pursuant to clause (i) shall explain the factors and data that the Secretary took into consideration in making the final determination.

**(10)(A)(i)** In determining the reasonable charge for procedures described in subparagraph (B) and performed during the 9-month period beginning on April 1, 1988, the prevailing charge for such procedure shall be the prevailing charge otherwise recognized for such procedure for 1987--

**(I)** subject to clause (iii), reduced by 2.0 percent, and

**(II)** further reduced by the applicable percentage specified in clause (ii).

**(ii)** For purposes of clause (i), the applicable percentage specified in this clause is--

**(I)** 15 percent, in the case of a prevailing charge otherwise recognized  (without regard to this paragraph and determined without regard to physician specialty) that is at least 150 percent of the weighted national average (as determined by the Secretary) of such prevailing charges for such procedure for all localities in the United States for 1987;

**(II)** 0 percent, in the case of a prevailing charge that does not exceed 85 percent of such weighted national average; and

**(III)** in the case of any other prevailing charge, a percent determined on the basis of a straight-line sliding scale, equal to 3/13 of a percentage point for each percent by which the prevailing charge exceeds 85 percent of such weighted national average.

**(iii)** In no case shall the reduction under clause (i) for a procedure result in a prevailing charge in a locality for 1988 which is less than 85 percent of the Secretary's estimate of the weighted national average of such prevailing charges

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

for such procedure for all localities in the United States for 1987 (based upon the best available data and determined without regard to physician specialty) after making the reduction described in clause (i)(I).

**(B)** The procedures described in this subparagraph are as follows: bronchoscopy, carpal tunnel repair, cataract surgery (including subsequent insertion of an intraocular lens), coronary artery bypass surgery, diagnostic and/or therapeutic dilation and curettage, knee arthroscopy, knee arthroplasty, pacemaker implantation surgery, total hip replacement, subrapubic prostatectomy, transurethral resection of the prostate, and upper gastrointestinal endoscopy.

**(C)** In the case of a reduction in the reasonable charge for a physicians' service under subparagraph (A), if a nonparticipating physician furnishes the service to an individual entitled to benefits under this part, after the effective date of such reduction, the physician's actual charge is subject to a limit under subsection (j)(1)(D) of this section.

**(D)** There shall be no administrative or judicial review under section 1395ff of this title or otherwise of any determination under subparagraph (A) or under paragraph (11)(B)(ii).

**(11)(A)** In providing payment for cataract eyeglasses and cataract contact lenses, and professional services relating to them, under this part, each carrier shall--

    **(i)** provide for separate determinations of the payment amount for the eyeglasses and lenses and of the payment amount for the professional services of a physician (as defined in section 1395x(r) of this title), and

    **(ii)** not recognize as reasonable for such eyeglasses and lenses more than such amount as the Secretary establishes in guidelines relating to the inherent reasonableness of charges for such eyeglasses and lenses.

**(B)(i)** In determining the reasonable charge under paragraph (3) for a cataract surgical procedure, subject to clause (ii), the prevailing charge for such procedure otherwise recognized for participating and nonparticipating physicians shall be reduced by 10 percent with respect to procedures performed in 1987.

**(ii)** In no case shall the reduction under clause (i) for a surgical procedure result in a prevailing charge in a locality for a year which is less than 75 percent of the weighted national average of such prevailing charges for such procedure for all the localities in the United States for 1986.

**(C)(i)** The prevailing charge level determined with respect to A-mode ophthalmic ultrasound procedures may not exceed 5 percent of the prevailing charge level established with respect to extracapsular cataract removal with lens insertion.

**(ii)** The reasonable charge for an intraocular lens inserted during or subsequent to cataract surgery in a physician's office may not exceed the actual acquisition cost for the lens (taking into account any discount) plus a handling fee (not to exceed 5 percent of such actual acquisition cost).

**(D)** In the case of a reduction in the reasonable charge for a physicians' service or item under subparagraph (B) or (C), if a nonparticipating physician furnishes the service or item to an individual entitled to benefits under this part after the effective date of such reduction, the physician's actual charge is subject to a limit under subsection (j)(1)(D) of this section.

**(12)** Repealed. Pub.L. 105-33, Title IV, § 4512(b)(2), Aug. 5, 1997, 111 Stat. 444

**(13)(A)** In determining payments under section 1395l(l) of this title and section 1395w-4 of this title for anesthesia services furnished on or after January 1, 1994, the methodology for determining the base and time units used shall be the same for services furnished by physicians, for medical direction by physicians of two, three, or four certified registered nurse anesthetists, or for services furnished by a certified registered nurse anesthetist (whether or not medically directed) and shall be based on the methodology in effect, for anesthesia services furnished by physicians, as of August 10, 1993.

**(B)** The Secretary shall require claims for physicians' services for medical direction of nurse anesthetists during the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

periods in which the provisions of subparagraph (A) apply to indicate the number of such anesthetists being medically directed concurrently at any time during the procedure, the name of each nurse anesthetist being directed, and the type of procedure for which the services are provided.

**(14)(A)(i)** In determining the reasonable charge for a physicians' service specified in subparagraph (C)(i) and furnished during the 9-month period beginning on April 1, 1990, the prevailing charge for such service shall be the prevailing charge otherwise recognized for such service for 1989 reduced by 15 percent or, if less, 1/3 of the percent (if any) by which the prevailing charge otherwise applied in the locality in 1989 exceeds the locally-adjusted reduced prevailing amount (as determined under subparagraph (B)(i)) for the service.

**(ii)** In determining the reasonable charge for a physicians' service specified in subparagraph (C)(i) and furnished during 1991, the prevailing charge for such service shall be the prevailing charge otherwise recognized for such service for the period during 1990 beginning on April 1, reduced by the same amount as the amount of the reduction effected under this paragraph (as amended by the Omnibus Budget Reconciliation Act of 1990) for such service during such period.

**(B)** For purposes of this paragraph:

**(i)** The "locally-adjusted reduced prevailing amount" for a locality for a physicians' service is equal to the product of--

**(I)** the reduced national weighted average prevailing charge for the service (specified under clause (ii)), and

**(II)** the adjustment factor (specified under clause (iii)) for the locality.

**(ii)** The "reduced national weighted average prevailing charge" for a physicians' service is equal to the national weighted average prevailing charge for the service (specified in subparagraph (C)(ii)) reduced by the percentage change (specified in subparagraph (C)(iii)) for the service.

**(iii)** The "adjustment factor", for a physicians' service for a locality, is the sum of--

**(I)** The practice expense component (percent), divided by 100, specified in appendix A (pages 187 through 194) of the Report of the Medicare and Medicaid Health Budget Reconciliation Amendments of 1989, prepared by the Subcommittee on Health and the Environment of the Committee on Energy and Commerce, House of Representatives, (Committee Print 101-M, 101st Congress, 1st Session) for the service, multiplied by the geographic practice cost index value (specified in subparagraph (C)(iv) for the locality, and

**(II)** 1 minus the practice expense component (percent), divided by 100.

**(C)** For purposes of this paragraph:

**(i)** The procedures specified (by code and description) in the Overvalued Procedures List for Finance Committee, Revised September 20, 1989, prepared by the Physician Payment Review Commission which specification is of physicians' services that have been identified as overvalued by at least 10 percent based on a comparison of payments for such services under a resource-based relative value scale and of the national average prevailing charges under this part.

**(ii)** The "national weighted average prevailing charge" specified in this clause, for a physicians' service specified in clause (i), is the national weighted average prevailing charge for the service in 1989 as determined by the Secretary using the best data available.

**(iii)** The "percentage change" specified in this clause, for a physicians' service specified in clause (i), is the percent difference (but expressed as a positive number) specified for the service in the list referred to in clause (i).

**(iv)** The geographic practice cost index value specified in this clause for a locality is the Geographic Overhead Costs

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

Index specified for the locality in table 1 of the September 1989 Supplement to the Geographic Medicare Economic Index: Alternative Approaches (prepared by the Urban Institute and the Center for Health Economics Research).

**(D)** In the case of a reduction in the prevailing charge for a physicians' service under subparagraph (A), if a nonparticipating physician furnishes the service to an individual entitled to benefits under this part, after the effective date of such reduction, the physician's actual charge is subject to a limit under subsection (j)(1)(D) of this section.

**(15)(A)** In determining the reasonable charge for surgery, radiology, and diagnostic physicians' services which the Secretary shall designate (based on their high volume of expenditures under this part) and for which the prevailing charge (but for this paragraph) differs by physician specialty, the prevailing charge for such a service may not exceed the prevailing charge or fee schedule amount for that specialty of physicians that furnish the service most frequently nationally.

**(B)** In the case of a reduction in the prevailing charge for a physician's service under subparagraph (A), if a nonparticipating physician furnishes the service to an individual entitled to benefits under this part, after the effective date of the reduction, the physician's actual charge is subject to a limit under subsection (j)(1)(D) of this section.

**(16)(A)** In determining the reasonable charge for all physicians' services other than physicians' services specified in subparagraph (B) furnished during 1991, the prevailing charge for a locality shall be 6.5 percent below the prevailing charges used in the locality under this part in 1990 after March 31.

**(B)** For purposes of subparagraph (A), the physicians' services specified in this subparagraph are as follows:

**(i)** Radiology, anesthesia and physician pathology services, the technical components of diagnostic tests specified in paragraph (17) and physicians' services specified in paragraph (14)(C)(i).

**(ii)** Primary care services specified in subsection (i)(4) of this section, hospital inpatient medical services, consultations, other visits, preventive medicine visits, psychiatric services, emergency care facility services, and critical care services.

**(iii)** Partial mastectomy; tendon sheath injections and small joint arthrocentesis; femoral fracture treatments; trochanteric fracture and endotracheal intubation; thoracentesis; thoracostomy; aneurysm repair; cystourethroscopy; transurethral fulguration and resection; tympanoplasty with mastoidectomy; and ophthalmoscopy.

**(17)** With respect to payment under this part for the technical (as distinct from professional) component of diagnostic tests (other than clinical diagnostic laboratory tests, tests specified in paragraph (14)(C)(i), and radiology services, including portable x-ray services) which the Secretary shall designate (based on their high volume of expenditures under this part), the reasonable charge for such technical component (including the applicable portion of a global service) may not exceed the national median of such charges for all localities, as estimated by the Secretary using the best available data.

**(18)(A)** Payment for any service furnished by a practitioner described in subparagraph (C) and for which payment may be made under this part on a reasonable charge or fee schedule basis may only be made under this part on an assignment-related basis.

**(B)** A practitioner described in subparagraph (C) or other person may not bill (or collect any amount from) the individual or another person for any service described in subparagraph (A), except for deductible and coinsurance amounts applicable under this part. No person is liable for payment of any amounts billed for such a service in violation of the previous sentence. If a practitioner or other person knowingly and willfully bills (or collects an amount) for such a service in violation of such sentence, the Secretary may apply sanctions against the practitioner or other person in the same manner as the Secretary may apply sanctions against a physician in accordance with subsection (j)(2) of this section in the same manner as such section applies with respect to a physician. Paragraph (4) of subsection (j) of this section shall apply in this subparagraph in the same manner as such paragraph applies to such section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(C)** A practitioner described in this subparagraph is any of the following:

**(i)** A physician assistant, nurse practitioner, or clinical nurse specialist (as defined in section 1395x(aa)(5) of this title).

**(ii)** A certified registered nurse anesthetist (as defined in section 1395x(bb)(2) of this title).

**(iii)** A certified nurse-midwife (as defined in section 1395x(gg)(2) of this title).

**(iv)** A clinical social worker (as defined in section 1395x(hh)(1) of this title).

**(v)** A clinical psychologist (as defined by the Secretary for purposes of section 1395x(ii) of this title).

**(vi)** A registered dietitian or nutrition professional.

**(D)** For purposes of this paragraph, a service furnished by a practitioner described in subparagraph (C) includes any services and supplies furnished as incident to the service as would otherwise be covered under this part if furnished by a physician or as incident to a physician's service.

**(19)** For purposes of section 1395l(a)(1) of this title, the reasonable charge for ambulance services (as described in section 1861(s)(7)) provided during calendar year 1998 and calendar year 1999 may not exceed the reasonable charge for such services provided during the previous calendar year (after application of this paragraph), increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the year involved reduced by 1.0 percentage point.

(c) Advances of funds to carrier; prompt payment of claims

**(1)** Any contract entered into with a carrier under this section shall provide for advances of funds to the carrier for the making of payments by it under this part, and shall provide for payment of the cost of administration of the carrier, as determined by the Secretary to be necessary and proper for carrying out the functions covered by the contract. The Secretary shall provide that in determining a carrier's necessary and proper cost of administration, the Secretary shall, with respect to each contract, take into account the amount that is reasonable and adequate to meet the costs which must be incurred by an efficiently and economically operated carrier in carrying out the terms of its contract. The Secretary shall cause to have published in the Federal Register, by not later than September 1 before each fiscal year, data, standards, and methodology to be used to establish budgets for carriers under this section for that fiscal year, and shall cause to be published in the Federal Register for public comment, at least 90 days before such data, standards, and methodology are published, the data, standards, and methodology proposed to be used.

**(2)(A)** Each contract under this section which provides for the disbursement of funds, as described in subsection (a)(1)(B) of this section, shall provide that payment shall be issued, mailed, or otherwise transmitted with respect to not less than 95 percent of all claims submitted under this part--

**(i)** which are clean claims, and

**(ii)** for which payment is not made on a periodic interim payment basis,

within the applicable number of calendar days after the date on which the claim is received.

**(B)** In this paragraph:

**(i)** The term "clean claim" means a claim that has no defect or impropriety (including any lack of any required substantiating documentation) or particular circumstance requiring special treatment that prevents timely payment from being made on the claim under this part.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

(ii) The term "applicable number of calendar days" means--

(I) with respect to claims received in the 12-month period beginning October 1, 1986, 30 calendar days,

(II) with respect to claims received in the 12-month period beginning October 1, 1987, 26 calendar days (or 19 calendar days with respect to claims submitted by participating physicians),

(III) with respect to claims received in the 12-month period beginning October 1, 1988, 25 calendar days (or 18 calendar days with respect to claims submitted by participating physicians),

(IV) with respect to claims received in the 12-month period beginning October 1, 1989, and claims received in any succeeding 12-month period ending on or before September 30, 1993, 24 calendar days (or 17 calendar days with respect to claims submitted by participating physicians), and

(V) with respect to claims received in the 12-month period beginning October 1, 1993, and claims received in any succeeding 12-month period, 30 calendar days.

(C) If payment is not issued, mailed, or otherwise transmitted within the applicable number of calendar days (as defined in clause (ii) of subparagraph (B)) after a clean claim (as defined in clause (i) of such subparagraph) is received, interest shall be paid at the rate used for purposes of section 3902(a) of Title 31 (relating to interest penalties for failure to make prompt payments) for the period beginning on the day after the required payment date and ending on the date on which payment is made.

(3)(A) Each contract under this section which provides for the disbursement of funds, as described in subsection (a)(1)(B) of this section, shall provide that no payment shall be issued, mailed, or otherwise transmitted with respect to any claim submitted under this subchapter within the applicable number of calendar days after the date on which the claim is received.

(B) In this paragraph, the term "applicable number of calendar days" means--

(i) with respect to claims submitted electronically as prescribed by the Secretary, 13 days, and

(ii) with respect to claims submitted otherwise, 26 days.

(4) Neither a carrier nor the Secretary may impose a fee under this subchapter--

(A) for the filing of claims related to physicians' services,

(B) for an error in filing a claim relating to physicians' services or for such a claim which is denied,

(C) for any appeal under this subchapter with respect to physicians' services,

(D) for applying for (or obtaining) a unique identifier under subsection (r) of this section, or

(E) for responding to inquiries respecting physicians' services or for providing information with respect to medical review of such services.

(5) Each contract under this section which provides for the disbursement of funds, as described in subsection (a)(1)(B) of this section, shall require the carrier to meet criteria developed by the Secretary to measure the timeliness of carrier responses to requests for payment of items described in section 1395m(a)(15)(C) of this title.

(6) No carrier may carry out (or receive payment for carrying out) any activity pursuant to a contract under this subsection to the extent that the activity is carried out pursuant to a contract under the Medicare Integrity Program under section 1395ddd of this title.  The previous sentence shall not apply with respect to the activity described in section 1395ddd(b)(5) of this title (relating to prior authorization of certain items of durable medical equipment under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

section 1395m(a)(15) of this title).

(d) Surety bonds

Any contract with a carrier under this section may require such carrier or any of its officers or employees certifying payments or disbursing funds pursuant to the contract, or otherwise participating in carrying out the contract, to give surety bond to the United States in such amount as the Secretary may deem appropriate.

(e) Liability of certifying or disbursing officers or carriers

(1) No individual designated pursuant to a contract under this section as a certifying officer shall, in the absence of gross negligence or intent to defraud the United States, be liable with respect to any payments certified by him under this section.

(2) No disbursing officer shall, in the absence of gross negligence or intent to defraud the United States, be liable with respect to any payment by him under this section if it was based upon a voucher signed by a certifying officer designated as provided in paragraph (1) of this subsection.

(3) No such carrier shall be liable to the United States for any payments referred to in paragraph (1) or (2).

(f) "Carrier" defined

For purposes of this part, the term "carrier" means--

(1) with respect to providers of services and other persons, a voluntary association, corporation, partnership, or other nongovernmental organization which is lawfully engaged in providing, paying for, or reimbursing the cost of, health services under group insurance policies or contracts, medical or hospital service agreements, membership or subscription contracts, or similar group arrangements, in consideration of premiums or other periodic charges payable to the carrier, including a health benefits plan duly sponsored or underwritten by an employee organization; and

(2) with respect to providers of services only, any agency or organization (not described in paragraph (1)) with which an agreement is in effect under section 1395h of this title.

(g) Authority of Railroad Retirement Board to enter into contracts with carriers

The Railroad Retirement Board shall, in accordance with such regulations as the Secretary may prescribe, contract with a carrier or carriers to perform the functions set out in this section with respect to individuals entitled to benefits as qualified railroad retirement beneficiaries pursuant to section 426(a) of this title and section 231f(d) of Title 45.

(h) Participating physician or supplier; agreement with Secretary; publication of directories; availability; inclusion of program in explanation of benefits; payment of claims on assignment-related basis

(1) Any physician or supplier may voluntarily enter into an agreement with the Secretary to become a participating physician or supplier. For purposes of this section, the term "participating physician or supplier" means a physician or supplier (excluding any provider of services) who, before the beginning of any year beginning with 1984, enters into an agreement with the Secretary which provides that such physician or supplier will accept payment under this part on an assignment-related basis for all items and services furnished to individuals enrolled under this part during such year. In the case of a newly licensed physician or a physician who begins a practice in a new area, or in the case of a new supplier who begins a new business, or in such similar cases as the Secretary may specify, such physician or supplier may enter into such an agreement after the beginning of a year, for items and services furnished during the remainder of the year.

(2) Each carrier having an agreement with the Secretary under subsection (a) of this section shall maintain a toll-free telephone number or numbers at which individuals enrolled under this part may obtain the names, addresses, specialty,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

and telephone numbers of participating physicians and suppliers and may request a copy of an appropriate directory published under paragraph (4). Each such carrier shall, without charge, mail a copy of such directory upon such a request.

**(3)(A)** In any case in which a carrier having an agreement with the Secretary under subsection (a) of this section is able to develop a system for the electronic transmission to such carrier of bills for services, such carrier shall establish direct lines for the electronic receipt of claims from participating physicians and suppliers.

**(B)** The Secretary shall establish a procedure whereby an individual enrolled under this part may assign, in an appropriate manner on the form claiming a benefit under this part for an item or service furnished by a participating physician or supplier, the individual's rights of payment under a medicare supplemental policy (described in section 1395ss(g)(1) of this title) in which the individual is enrolled. In the case such an assignment is properly executed and a payment determination is made by a carrier with a contract under this section, the carrier shall transmit to the private entity issuing the medicare supplemental policy notice of such fact and shall include an explanation of benefits and any additional information that the Secretary may determine to be appropriate in order to enable the entity to decide whether (and the amount of) any payment is due under the policy. The Secretary may enter into agreements for the transmittal of such information to entities electronically. The Secretary shall impose user fees for the transmittal of information under this subparagraph by a carrier, whether electronically or otherwise, and such user fees shall be collected and retained by the carrier.

**(4)** At the beginning of each year the Secretary shall publish directories (for appropriate local geographic areas) containing the name, address, and specialty of all participating physicians and suppliers (as defined in paragraph (1)) for that area for that year. Each directory shall be organized to make the most useful presentation of the information (as determined by the Secretary) for individuals enrolled under this part. Each participating physician directory for an area shall provide an alphabetical listing of all participating physicians practicing in the area and an alphabetical listing by locality and specialty of such physicians.

**(5)(A)** The Secretary shall promptly notify individuals enrolled under this part through an annual mailing of the participation program under this subsection and the publication and availability of the directories and shall make the appropriate area directory or directories available in each district and branch office of the Social Security Administration, in the offices of carriers, and to senior citizen organizations.

**(B)** The annual notice provided under subparagraph (A) shall include--

   **(i)** a description of the participation program,

   **(ii)** an explanation of the advantages to beneficiaries of obtaining covered services through a participating physician or supplier,

   **(iii)** an explanation of the assistance offered by carriers in obtaining the names of participating physicians and suppliers, and

   **(iv)** the toll-free telephone number under paragraph (2)(A) for inquiries concerning the program and for requests for free copies of appropriate directories.

**(6)** The Secretary shall provide that the directories shall be available for purchase by the public. The Secretary shall provide that each appropriate area directory is sent to each participating physician located in that area and that an appropriate number of copies of each such directory is sent to hospitals located in the area. Such copies shall be sent free of charge.

**(7)** The Secretary shall provide that each explanation of benefits provided under this part for services furnished in the United States, in conjunction with the payment of claims under section 1395l(a)(1) of this title (made other than on an assignment-related basis), shall include--

   **(A)** a prominent reminder of the participating physician and supplier program established under this subsection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

(including the limitation on charges that may be imposed by such physicians and suppliers and a clear statement of any amounts charged for the particular items or services on the claim involved above the amount recognized under this part),

**(B)** the toll-free telephone number or numbers, maintained under paragraph (2), at which an individual enrolled under this part may obtain information on participating physicians and suppliers,

**(C) (i)** an offer of assistance to such an individual in obtaining the names of participating physicians of appropriate specialty and **(ii)** an offer to provide a free copy of the appropriate participating physician directory, and

**(D)** in the case of services for which the billed amount exceeds the limiting charge imposed under section 1395w-4(g) of this title, information regarding such applicable limiting charge (including information concerning the right to a refund under section 1395w-4(g)(1)(A)(iv) of this title).

**(8)** The Secretary may refuse to enter into an agreement with a physician or supplier under this subsection, or may terminate or refuse to renew such agreement, in the event that such physician or supplier has been convicted of a felony under Federal or State law for an offense which the Secretary determines is detrimental to the best interests of the program or program beneficiaries.

(i) Definitions

For purposes of this subchapter:

**(1)** A claim is considered to be paid on an "assignment-related basis" if the claim is paid on the basis of an assignment described in subsection (b)(3)(B)(ii) of this section, in accordance with subsection (b)(6)(B) of this section, or under the procedure described in section 1395gg(f)(1) of this title.

**(2)** The term "participating physician" refers, with respect to the furnishing of services, to a physician who at the time of furnishing the services is a participating physician (under subsection (h)(1) of this section); the term "nonparticipating physician" refers, with respect to the furnishing of services, to a physician who at the time of furnishing the services is not a participating physician; and the term "nonparticipating supplier or other person" means a supplier or other person (excluding a provider of services) that is not a participating physician or supplier (as defined in subsection (h)(1) of this section).

**(3)** The term "percentage increase in the MEI" means, with respect to physicians' services furnished in a year, the percentage increase in the medicare economic index (referred to in the fourth sentence of subsection (b)(3) of this section) applicable to such services furnished as of the first day of that year.

**(4)** The term "primary care services" means physicians' services which constitute office medical services, emergency department services, home medical services, skilled nursing, intermediate care, and long-term care medical services, or nursing home, boarding home, domiciliary, or custodial care medical services.

(j) Monitoring of charges of nonparticipating physicians; sanctions; restitution

**(1)(A)** In the case of a physician who is not a participating physician for items and services furnished during a portion of the 30-month period beginning July 1, 1984, the Secretary shall monitor the physician's actual charges to individuals enrolled under this part for physicians' services during that portion of that period. If such physician knowingly and willfully bills individuals enrolled under this part for actual charges in excess of such physician's actual charges for the calendar quarter beginning on April 1, 1984, the Secretary may apply sanctions against such physician in accordance with paragraph (2).

**(B)(i)** During any period (on or after January 1, 1987, and before the date specified in clause (ii)), during which a physician is a nonparticipating physician, the Secretary shall monitor the actual charges of each such physician for physicians' services furnished to individuals enrolled under this part. If such physician knowingly and willfully bills on a repeated basis for such a service an actual charge in excess of the maximum allowable actual charge determined

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

under subparagraph (C) for that service, the Secretary may apply sanctions against such physician in accordance with paragraph (2).

**(ii)** Clause (i) shall not apply to services furnished after December 31, 1990.

**(C)(i)** For a particular physicians' service furnished by a nonparticipating physician to individuals enrolled under this part during a year, for purposes of subparagraph (B), the maximum allowable actual charge is determined as follows: If the physician's maximum allowable actual charge for that service in the previous year was--

**(I)** less than 115 percent of the applicable percent (as defined in subsection (b)(4)(A)(iv) of this section) of the prevailing charge for the year and service involved, the maximum allowable actual charge for the year involved is the greater of the maximum allowable actual charge described in subclause (II) or the charge described in clause (ii), or

**(II)** equal to, or greater than, 115 percent of the applicable percent (as defined in subsection (b)(4)(A)(iv) of this section) of the prevailing charge for the year and service involved, the maximum allowable actual charge is 101 percent of the physician's maximum allowable actual charge for the service for the previous year.

**(ii)** For purposes of clause (i)(I), the charge described in this clause for a particular physicians' service furnished in a year is the maximum allowable actual charge for the service of the physician for the previous year plus the product of (I) the applicable fraction (as defined in clause (iii)) and (II) the amount by which 115 percent of the prevailing charge for the year involved for such service furnished by nonparticipating physicians, exceeds the physician's maximum allowable actual charge for the service for the previous year.

**(iii)** In clause (ii), the "applicable fraction" is--

**(I)** for 1987, 1/4,

**(II)** for 1988, 1/3,

**(III)** for 1989, 1/2 , and

**(IV)** for any subsequent year, 1.

**(iv)** For purposes of determining the maximum allowable actual charge under clauses (i) and (ii) for 1987, in the case of a physicians' service for which the physician has actual charges for the calendar quarter beginning on April 1, 1984, the "maximum allowable actual charge" for 1986 is the physician's actual charge for such service furnished during such quarter.

**(v)** For purposes of determining the maximum allowable actual charge under clauses (i) and (ii) for a year after 1986, in the case of a physicians' service for which the physician has no actual charges for the calendar quarter beginning on April 1, 1984, and for which a maximum allowable actual charge has not been previously established under this clause, the "maximum allowable actual charge" for the previous year shall be the 50th percentile of the customary charges for the service (weighted by frequency of the service) performed by nonparticipating physicians in the locality during the 12-month period ending June 30 of that previous year.

**(vi)** For purposes of this subparagraph, a "physician's actual charge" for a physicians' service furnished in a year or other period is the weighted average (or, at the option of the Secretary for a service furnished in the calendar quarter beginning April 1, 1984, the median) of the physician's charges for such service furnished in the year or other period.

**(vii)** In the case of a nonparticipating physician who was a participating physician during a previous period, for the purpose of computing the physician's maximum allowable actual charge during the physician's period of nonparticipation, the physician shall be deemed to have had a maximum allowable actual charge during the period of participation, and such deemed maximum allowable actual charge shall be determined according to clauses (i) through (vi).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(viii)** Notwithstanding any other provision of this subparagraph, the maximum allowable actual charge for a particular physician's service furnished by a nonparticipating physician to individuals enrolled under this part during the 3-month period beginning on January 1, 1988, shall be the amount determined under this subparagraph for 1987. The maximum allowable actual charge for any such service otherwise determined under this subparagraph for 1988 shall take effect on April 1, 1988.

**(ix)** If there is a reduction under subsection (b)(13) of this section in the reasonable charge for medical direction furnished by a nonparticipating physician, the maximum allowable actual charge otherwise permitted under this subsection for such services shall be reduced in the same manner and in the same percentage as the reduction in such reasonable charge.

**(D)(i)** If an action described in clause (ii) results in a reduction in a reasonable charge for a physicians' service or item and a nonparticipating physician furnishes the service or item to an individual entitled to benefits under this part after the effective date of such action, the physician may not charge the individual more than 125 percent of the reduced payment allowance (as defined in clause (iii)) plus (for services or items furnished during the 12-month period (or 9-month period in the case of an action described in clause (ii)(II)) beginning on the effective date of the action) 1/2 of the amount by which the physician's maximum allowable actual charge for the service or item for the previous 12-month period exceeds such 125 percent level.

**(ii)** The first sentence of clause (i) shall apply to--

**(I)** an adjustment under subsection (b)(8)(B) of this section (relating to inherent reasonableness),

**(II)** a reduction under subsection (b)(10)(A) or (b)(14)(A) of this section (relating to certain overpriced procedures),

**(III)** a reduction under subsection (b)(11)(B) of this section (relating to certain cataract procedures),

**(IV)** a prevailing charge limit established under subsection (b)(11)(C)(i) or (b)(15)(A) of this section,

**(V)** a reasonable charge limit established under subsection (b)(11)(C)(ii) of this section, and

**(VI)** an adjustment under section 1395l(l)(3)(B) of this title (relating to physician supervision of certified registered nurse anesthetists).

**(iii)** In clause (i), the term "reduced payment allowance" means, with respect to an action--

**(I)** under subsection (b)(8)(B) of this section, the inherently reasonable charge established under subsection (b)(8) of this section;

**(II)** under subsection (b)(10)(A), (b)(11)(B), (b)(11)(C)(i), (b)(14)(A), or (b)(15)(A) of this section or under section 1395l(l)(3)(B) of this title, the prevailing charge for the service after the action; or

**(III)** under subsection (b)(11)(C)(ii) of this section, the payment allowance established under such subsection.

**(iv)** If a physician knowingly and willfully bills in violation of clause (i) (whether or not such charge violates subparagraph (B)), the Secretary may apply sanctions against such physician in accordance with paragraph (2).

**(v)** Clause (i) shall not apply to items and services furnished after December 31, 1990.

**(2)** Subject to paragraph (3), the sanctions which the Secretary may apply under this paragraph are--

**(A)** excluding a physician from participation in the programs under this chapter for a period not to exceed 5 years, in accordance with the procedures of subsections (c), (f), and (g) of section 1320a-7 of this title, or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(B)** civil monetary penalties and assessments, in the same manner as such penalties and assessments are authorized under section 1320a-7a(a) of this title,

or both. The provisions of section 1320a-7a of this title (other than the first 2 sentences of subsection (a) and other than subsection (b)) shall apply to a civil money penalty and assessment under subparagraph (B) in the same manner as such provisions apply to a penalty, assessment, or proceeding under section 1320a-7a(a) of this title, except to the extent such provisions are inconsistent with subparagraph (A) or paragraph (3).

**(3)(A)** The Secretary may not exclude a physician pursuant to paragraph (2)(A) if such physician is a sole community physician or sole source of essential specialized services in a community.

**(B)** The Secretary shall take into account access of beneficiaries to physicians' services for which payment may be made under this part in determining whether to bar a physician from participation under paragraph (2)(A).

**(4)** The Secretary may, out of any civil monetary penalty or assessment collected from a physician pursuant to this subsection, make a payment to a beneficiary enrolled under this part in the nature of restitution for amounts paid by such beneficiary to such physician which was determined to be an excess charge under paragraph (1).

(k) Sanctions for billing for services of assistant at cataract operations

**(1)** If a physician knowingly and willfully presents or causes to be presented a claim or bills an individual enrolled under this part for services for services as an assistant at surgery for which payment may not be made by reason of section 1395y(a)(15) of this title, the Secretary may apply sanctions against such physician in accordance with subsection (j)(2) of this section in the case of surgery performed on or after March 1, 1987.

**(2)** If a physician knowingly and willfully presents or causes to be presented a claim or bills an individual enrolled under this part for charges that includes a charge for an assistant at surgery for which payment may not be made by reason of section 1395y(a)(15) of this title, the Secretary may apply sanctions against such physician in accordance with subsection (j)(2) of this section in the case of surgery performed on or after March 1, 1987.

(l) Prohibition of unassigned billing of services determined to be medically unnecessary by carrier

**(1)(A)** Subject to subparagraph (C), if--

**(i)** a nonparticipating physician furnishes services to an individual enrolled for benefits under this part,

**(ii)** payment for such services is not accepted on an assignment-related basis,

**(iii)** (I) a carrier determines under this part or a peer review organization determines under part B of subchapter XI of this chapter that payment may not be made by reason of section 1395y(a)(1) of this title because a service otherwise covered under this subchapter is not reasonable and necessary under the standards described in that section or (II) payment under this subchapter for such services is denied under section 1320c-3(a)(2) of this title by reason of a determination under section 1320c-3(a)(1)(B) of this title, and

**(iv)** the physician has collected any amounts for such services,

the physician shall refund on a timely basis to the individual (and shall be liable to the individual for) any amounts so collected.

**(B)** A refund under subparagraph (A) is considered to be on a timely basis only if--

**(i)** in the case of a physician who does not request reconsideration or seek appeal on a timely basis, the refund is made within 30 days after the date the physician receives a denial notice under paragraph (2), or

**(ii)** in the case in which such a reconsideration or appeal is taken, the refund is made within 15 days after the date the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

physician receives notice of an adverse determination on reconsideration or appeal.

**(C)** Subparagraph (A) shall not apply to the furnishing of a service by a physician to an individual in the case described in subparagraph (A)(iii)(I) if--

    **(i)** the physician establishes that the physician did not know and could not reasonably have been expected to know that payment may not be made for the service by reason of <u>section 1395y(a)(1)</u> of this title, or

    **(ii)** before the service was provided, the individual was informed that payment under this part may not be made for the specific service and the individual has agreed to pay for that service.

**(2)** Each carrier with a contract in effect under this section with respect to physicians and each peer review organization with a contract under part B of subchapter XI of this chapter shall send any notice of denial of payment for physicians' services based on <u>section 1395y(a)(1)</u> of this title and for which payment is not requested on an assignment-related basis to the physician and the individual involved.

**(3)** If a physician knowingly and willfully fails to make refunds in violation of paragraph (1)(A), the Secretary may apply sanctions against such physician in accordance with subsection (j)(2) of this section.

(m) Disclosure of information of unassigned claims for certain physicians' services

**(1)** In the case of a nonparticipating physician who--

    **(A)** performs an elective surgical procedure for an individual enrolled for benefits under this part and for which the physician's actual charge is at least $500, and

    **(B)** does not accept payment for such procedure on an assignment-related basis,

the physician must disclose to the individual, in writing and in a form approved by the Secretary, the physician's estimated actual charge for the procedure, the estimated approved charge under this part for the procedure, the excess of the physician's actual charge over the approved charge, and the coinsurance amount applicable to the procedure. The written estimate may not be used as the basis for, or evidence in, a civil suit.

**(2)** A physician who fails to make a disclosure required under paragraph (1) with respect to a procedure shall refund on a timely basis to the individual (and shall be liable to the individual for) any amounts collected for the procedure in excess of the charges recognized and approved under this part.

**(3)** If a physician knowingly and willfully fails to comply with paragraph (2), the Secretary may apply sanctions against such physician in accordance with subsection (j)(2) of this section.

**(4)** The Secretary shall provide for such monitoring of requests for payment for physicians' services to which paragraph (1) applies as is necessary to assure compliance with paragraph (2).

(n) Elimination of markup for certain purchased services

**(1)** If a physician's bill or a request for payment for services billed by a physician includes a charge for a diagnostic test described in <u>section 1395x(s)(3)</u> of this title (other than a clinical diagnostic laboratory test) for which the bill or request for payment does not indicate that the billing physician personally performed or supervised the performance of the test or that another physician with whom the physician who shares a practice personally performed or supervised the performance of the test, the amount payable with respect to the test shall be determined as follows:

    **(A)** If the bill or request for payment indicates that the test was performed by a supplier, identifies the supplier, and indicates the amount the supplier charged the billing physician, payment for the test (less the applicable deductible and coinsurance amounts) shall be the actual acquisition costs (net of any discounts) or, if lower, the supplier's reasonable charge (or other applicable limit) for the test.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(B)** If the bill or request for payment (i) does not indicate who performed the test, or (ii) indicates that the test was performed by a supplier but does not identify the supplier or include the amount charged by the supplier, no payment shall be made under this part.

**(2)** A physician may not bill an individual enrolled under this part--

**(A)** any amount other than the payment amount specified in paragraph (1)(A) and any applicable deductible and coinsurance for a diagnostic test for which payment is made pursuant to paragraph (1)(A), or

**(B)** any amount for a diagnostic test for which payment may not be made pursuant to paragraph (1)(B).

**(3)** If a physician knowingly and willfully in repeated cases bills one or more individuals in violation of paragraph (2), the Secretary may apply sanctions against such physician in accordance with subsection (j)(2) of this section.

(o) Reimbursement for drugs and biologicals

**(1)** If a physician's supplier's, or any other person's bill or request for payment for services includes a charge for a drug or biological for which payment may be made under this part and the drug or biological is not paid on a cost or prospective payment basis as otherwise provided in this part, the amount payable for the drug or biological is equal to the following:

**(A)** In the case of any of the following drugs or biologicals, 95 percent of the average wholesale price:

**(i)** A drug or biological furnished before January 1, 2004.

**(ii)** Blood clotting factors furnished during 2004.

**(iii)** A drug or biological furnished during 2004 that was not available for payment under this part as of April 1, 2003.

**(iv)** A vaccine described in subparagraph (A) or (B) of section 1395x(s)(10) of this title furnished on or after January 1, 2004.

**(v)** A drug or biological furnished during 2004 in connection with the furnishing of renal dialysis services if separately billed by renal dialysis facilities.

**(B)** In the case of a drug or biological furnished during 2004 that is not described in--

**(i)** clause (ii), (iii), (iv), or (v) of subparagraph (A),

**(ii)** subparagraph (D)(i), or

**(iii)** subparagraph (F), the amount determined under paragraph (4).

**(C)** In the case of a drug or biological that is not described in subparagraph (A)(iv), (D)(i), or (F) furnished on or after January 1, 2005, the amount provided under section 1395w-3 of this title, section 1395w-3a of this title, section 1395w-3b of this title, or section 1395rr(b)(13) of this title, as the case may be for the drug or biological.

**(D)(i)** Except as provided in clause (ii), in the case of infusion drugs furnished through an item of durable medical equipment covered under section 1395x(n) of this title on or after January 1, 2004, 95 percent of the average wholesale price for such drug in effect on October 1, 2003.

**(ii)** In the case of such infusion drugs furnished in a competitive acquisition area under section 1395w-3 of this title on or after January 1, 2007, the amount provided under section 1395w-3 of this title.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(E)** In the case of a drug or biological, consisting of intravenous immune globulin, furnished--

  **(i)** in 2004, the amount of payment provided under paragraph (4); and

  **(ii)** in 2005 and subsequent years, the amount of payment provided under  section 1395w-3a of this title.

**(F)** In the case of blood and blood products (other than blood clotting factors), the amount of payment shall be determined in the same manner as such amount of payment was determined on October 1, 2003.

**(G)** In the case of inhalation drugs or biologicals furnished through durable medical equipment covered under section 1395x(n) of this title that are furnished--

  **(i)** in 2004, the amount provided under paragraph (4) for the drug or biological; and

  **(ii)** in 2005 and subsequent years, the amount provided under  section 1395w-3a of this title for the drug or biological.

**(2)** If payment for a drug or biological is made to a licensed pharmacy approved to dispense drugs or biologicals under this part, the Secretary may pay a dispensing fee (less the applicable deductible and coinsurance amounts) to the pharmacy.  This paragraph shall not apply in the case of payment under paragraph (1)(C).

**(3)(A)** Payment for a charge for any drug or biological for which payment may be made under this part may be made only on an assignment-related basis.

**(B)** The provisions of subsection (b)(18)(B) shall apply to charges for such drugs or biologicals in the same manner as they apply to services furnished by a practitioner described in subsection (b)(18)(C).

**(4)(A)** Subject to the succeeding provisions of this paragraph, the amount of payment for a drug or biological under this paragraph furnished in 2004 is equal to 85 percent of the average wholesale price (determined as of April 1, 2003) for the drug or biological.

**(B)** The Secretary shall substitute for the percentage under subparagraph (A) for a drug or biological the percentage that would apply to the drug or biological under the column entitled "Average of GAO and OIG data (percent)" in the table entitled "Table 3.--Medicare Part B Drugs in the Most Recent GAO and OIG Studies" published on August 20, 2003, in the Federal Register (68 Fed. Reg. 50445).

**(C)(i)** The Secretary may substitute for the percentage under subparagraph (A) a percentage that is based on data and information submitted by the manufacturer of the drug or biological by October 15, 2003.

**(ii)** The Secretary may substitute for the percentage under subparagraph (A) with respect to drugs and biologicals furnished during 2004 on or after April 1, 2004, a percentage that is based on data and information submitted by the manufacturer of the drug or biological after October 15, 2003, and before January 1, 2004.

**(D)** In no case may the percentage substituted under subparagraph (B) or (C) be less than 80 percent.

**(5)(A)** Subject to subparagraph (B), in the case of clotting factors furnished on or after January 1, 2005, the Secretary shall, after reviewing the January 2003 report to Congress by the Comptroller General of the United States entitled "Payment for Blood Clotting Factor Exceeds Providers Acquisition Cost", provide for a separate payment, to the entity which furnishes to the patient blood clotting factors, for items and services related to the furnishing of such factors in an amount that the Secretary determines to be appropriate.  Such payment amount may take into account any or all of the following:

  **(i)** The mixing (if appropriate) and delivery of factors to an individual, including special inventory management and storage requirements.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

(ii) Ancillary supplies and patient training necessary for the self-administration of such factors.

(B) In determining the separate payment amount under subparagraph (A) for blood clotting factors furnished in 2005, the Secretary shall ensure that the total amount of payments under this part (as estimated by the Secretary) for such factors under paragraph (1)(C) and such separate payments for such factors does not exceed the total amount of payments that would have been made for such factors under this part (as estimated by the Secretary) if the amendments made by section 303 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 had not been enacted.

(C) The separate payment amount under this subparagraph for blood clotting factors furnished in 2006 or a subsequent year shall be equal to the separate payment amount determined under this paragraph for the previous year increased by the percentage increase in the consumer price index for medical care for the 12-month period ending with June of the previous year.

(6) In the case of an immunosuppressive drug described in subparagraph (J) of section 1395x(s)(2) of this title and an oral drug described in subparagraph (Q) or (T) of such section, the Secretary shall pay to the pharmacy a supplying fee for such a drug determined appropriate by the Secretary (less the applicable deductible and coinsurance amounts).

(7) There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of determinations of payment amounts, methods, or adjustments under paragraphs (4) through (6).

(p) Requiring submission of diagnostic information

(1) Each request for payment, or bill submitted, for an item or service furnished by a physician or practitioner specified in subsection (b)(18)(C) of this section for which payment may be made under this part shall include the appropriate diagnosis code (or codes) as established by the Secretary for such item or service.

(2) In the case of a request for payment for an item or service furnished by a physician or practitioner specified in subsection (b)(18)(C) of this section on an assignment-related basis which does not include the code (or codes) required under paragraph (1), payment may be denied under this part.

(3) In the case of a request for payment for an item or service furnished by a physician not submitted on an assignment-related basis and which does not include the code (or codes) required under paragraph (1)--

(A) if the physician knowingly and willfully fails to provide the code (or codes) promptly upon request of the Secretary or a carrier, the physician may be subject to a civil money penalty in an amount not to exceed $2,000, and

(B) if the physician knowingly, willfully, and in repeated cases fails, after being notified by the Secretary of the obligations and requirements of this subsection, to include the code (or codes) required under paragraph (1), the physician may be subject to the sanction described in subsection (j)(2)(A) of this section.

The provisions of section 1320a-7a of this title (other than subsections (a) and (b)) shall apply to civil money penalties under subparagraph (A) in the same manner as they apply to a penalty or proceeding under section 1320a-7a(a) of this title.

(4) In the case of an item or service defined in paragraph (3), (6), (8), or (9) of subsection 1395x(s) of this title ordered by a physician or a practitioner specified in subsection (b)(18)(C) of this section, but furnished by another entity, if the Secretary (or fiscal agent of the Secretary) requires the entity furnishing the item or service to provide diagnostic or other medical information in order for payment to be made to the entity, the physician or practitioner shall provide that information to the entity at the time that the item or service is ordered by the physician or practitioner.

(q) Anesthesia services; counting actual time units

(1)(A) The Secretary, in consultation with groups representing physicians who furnish anesthesia services, shall

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

establish by regulation a relative value guide for use in all carrier localities in making payment for physician anesthesia services furnished under this part. Such guide shall be designed so as to result in expenditures under this subchapter for such services in an amount that would not exceed the amount of such expenditures which would otherwise occur.

**(B)** For physician anesthesia services furnished under this part during 1991, the prevailing charge conversion factor used in a locality under this subsection shall, subject to clause (iv), be reduced to the adjusted prevailing charge conversion factor for the locality determined as follows:

**(i)** The Secretary shall estimate the national weighted average of the prevailing charge conversion factors used under this subsection for services furnished during 1990 after March 31, using the best available data.

**(ii)** The national weighted average estimated under clause (i) shall be reduced by 7 percent.

**(iii)** The adjusted prevailing charge conversion factor for a locality is the sum of--

**(I)** the product of (a) the portion of the reduced national weighted average prevailing charge conversion factor computed under clause (ii) which is attributable to physician work and (b) the geographic work index value for the locality (specified in Addendum C to the Model Fee Schedule for Physician Services (published on September 4, 1990, 55 Federal Register pp. 36238- 36243)); and

**(II)** the product of (a) the remaining portion of the reduced national weighted average prevailing charge conversion factor computed under clause (ii) and (b) the geographic practice cost index value specified in subsec. (b)(14)(C)(iv) of this section for the locality.

In applying this clause, 70 percent of the prevailing charge conversion factor shall be considered to be attributable to physician work.

**(iv)** The prevailing charge conversion factor to be applied to a locality under this subparagraph shall not be reduced by more than 15 percent below the prevailing charge conversion factor applied in the locality for the period during 1990 after March 31, but in no case shall the prevailing charge conversion factor be less than 60 percent of the national weighted average of the prevailing charge conversion factors (computed under clause (i)).

**(2)** For purposes of payment for anesthesia services (whether furnished by physicians or by certified registered nurse anesthetists) under this part, the time units shall be counted based on actual time rather than rounded to full time units.

(r) Establishment of physician identification system

The Secretary shall establish a system which provides for a unique identifier for each physician who furnishes services for which payment may be made under this subchapter. Under such system, the Secretary may impose appropriate fees on such physicians to cover the costs of investigation and recertification activities with respect to the issuance of the identifiers.

(s) Application of fee schedule

**(1)** Subject to paragraph (3), the Secretary may implement a statewide or other areawide fee schedule to be used for payment of any item or service described in paragraph (2) which is paid on a reasonable charge basis. Any fee schedule established under this paragraph for such item or service shall be updated each year by the percentage increase in the consumer price index for all urban consumers (United States city average) for the 12-month period ending with June of the preceding year, except that in no event shall a fee schedule for an item described in paragraph (2)(D) be updated before 2003.

**(2)** The items and services described in this paragraph are as follows:

**(A)** Medical supplies.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

**(B)** Home dialysis supplies and equipment (as defined in section 1395rr(b)(8) of this title).

**(C)** Therapeutic shoes.

**(D)** Parenteral and enteral nutrients, equipment, and supplies.

**(E)** Electromyogram devices.

**(F)** Salivation devices.

**(G)** Blood products.

**(H)** Transfusion medicine.

**(3)** In the case of items and services described in paragraph (2)(D) that are included in a competitive acquisition program in a competitive acquisition area under section 1395w-3(a) of this title--

**(A)** the payment basis under this subsection for such items and services furnished in such area shall be the payment basis determined under such competitive acquisition program; and

**(B)** the Secretary may use information on the payment determined under such competitive acquisition programs to adjust the payment amount otherwise applicable under paragraph (1) for an area that is not a competitive acquisition area under section 1395w-3 of this title, and in the case of such adjustment, paragraphs (8) and (9) of section 1395u(b) of this title shall not be applied.

(t) Requests for payment or bill submitted to include medicare provider number

Each request for payment, or bill submitted, for an item or service furnished to an individual who is a resident of a skilled nursing facility for which payment may be made under this part shall include the facility's medicare provider number.

CREDIT(S)

(Aug. 14, 1935, c. 531, Title XVIII, § 1842, as added July 30, 1965, Pub.L. 89-97, Title I, § 102(a), 79 Stat. 309, and amended Jan. 2, 1968, Pub.L. 90- 248, Title I, § § 125(a), 154(d), 81 Stat. 845, 863; Oct. 30, 1972, Pub.L. 92-603, Title II, § § 211(c)(3), 224(a), 227(e)(3), 236(a), 258(a), 262(a), 263(d)(5), 281(d), 86 Stat. 1384, 1395, 1407, 1414, 1447 to 1449, 1455; Oct. 16, 1974, Pub.L. 93-445, Title III, § 307, 88 Stat. 1358; Dec. 31, 1975, Pub.L. 94-182, Title I, § 101(a), 89 Stat. 1051; July 16, 1976, Pub.L. 94-368, § § 2, 3(a), (b), 90 Stat. 997; Oct. 25, 1977, Pub.L. 95-142, § 2(a)(1), 91 Stat. 1175; Dec. 20, 1977, Pub.L.95-216, Title V, § 501(b), 91 Stat. 1565; Dec. 5, 1980, Pub.L. 96-499, Title IX, § § 918(a)(1), 946(a), (b), 948(b), 94 Stat. 2625, 2642, 2643; Aug. 13, 1981, Pub.L. 97-35, Title XXI, § 2142(b), 95 Stat. 798; Sept. 3, 1982, Pub.L. 97-248, Title I, § § 104(a), 113(a), 128(d)(1), 96 Stat. 336, 340, 367; July 18, 1984, Pub.L. 98-369, Div. B, Title III, § § 2303(e), 2306(a), (b)(1), (c), 2307(a)(1), (2), 2326(c)(2), (d)(2), 2339, 2354(b)(13), (14), Title VI, § 2663(j)(2)(F)(iv), 98 Stat. 1066, 1070, 1071, 1073, 1087, 1088, 1093, 1101, 1170; Nov. 8, 1984, Pub.L. 98-617, § 3(a)(1), (b)(5), (6), 98 Stat. 3295, 3296; Apr. 7, 1986, Pub.L. 99-272, Title IX, § § 9219(b)(1)(A), (2)(A), 9301(b)(1), (2), (c)(2) to (4), (d)(1) to (3), 9304(a), 9306(a), 9307(c), 100 Stat. 182 to 188, 190, 193, 194; Oct. 21, 1986, Pub.L. 99-509, Title IX, § § 9307(c)(2)(A), 9311(c), 9320(e)(3), 9331(a)(1) to (3), (b)(1) to (3), (c)(3)(A), 9332(a)(1), (b)(1), (2), (c)(1), (d)(1), 9333(a), (b), 9334(a), 9338(b), (c), 9341(a)(2), 100 Stat. 1995, 1998, 2015, 2018 to 2026, 2028, 2035, 2038; Oct. 22, 1986, Pub.L. 99-514, Title XVIII, § 1895(b)(14)(A), (15), (16)(A), 100 Stat. 2934; Aug. 18, 1987, Pub.L. 100-93, § 8(c)(2), 101 Stat. 692; Dec. 22, 1987, Pub.L. 100-203, Title IV, § § 4031(a)(2), 4035(a)(2), 4041(a)(1)(B), (3)(A), 4042(a) to (c), 4044(a), 4045(a), (c)(1), (2)(B), (D), 4046(a), 4047(a), 4048(a), (e), 4051(a), 4052(a), 4053(a), formerly 4052(a), 4054(a), formerly 4053(a), 4063(a), 4081(a), 4082(c), 4085(g)(1), (i)(5) to (7), (i)(22)(C), (24) to (27), 4096(a)(1), 101 Stat. 1330-76, 1330-78, 1330-83, 1330-85 to 1330-87, 1330-89, 1330-93, 1330-97, 1330-109, 1330-126, 1330-128, 1330-131, 1330-132, 1330-139; renumbered and amended July 1, 1988, Pub.L. 100-360, Title II, § § 201(c), 202(c)(1), (e)(1) to (3)(A), (C), (4)(A), (5), (g), 223(b),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

(c), Title IV, § 411(a)(3)(A), (C)(i), (f)(1)(A), (B), (2)(C) to (F), (3)(A), (B), (4)(A) to (C), (5), (6)(B), (7)(A), (B), (9), (11)(A), (14), (g)(2)(A) to (C), (i)(1)(A), (2), (4)(C)(vi), (j)(4)(A), 102 Stat. 702, 713, 716, 717, 747, 768, 776 to 781, 783, 787, 788, 789, 790, 791; Oct. 13, 1988, Pub.L. 100-485, Title VI, § 608(d)(5)(A) to (D), (F) to (H), (17), (21)(A), (B), (D), (24)(B), 102 Stat. 2414, 2418, 2420, 2421; Dec. 13, 1989, Pub.L. 101-234, Title II, § 201(a)(1), Title III, § 301(b)(2), (6), (c)(2), (d)(3), 103 Stat. 1981, 1985, 1986;   Dec. 19, 1989, Pub.L. 101-239, Title VI, § § 6003(g)(3)(D)(ix), 6102(b), (e)(2) to (4), (9), 6104, 6106(a), 6107(b), 6108(a)(1), (b)(1), (2), 6114(b), (c), 6202(d)(2), 103 Stat. 2153, 2184, 2187, 2188, 2208 to 2210, 2212, 2213, 2218, 2234; Nov. 5, 1990, Pub.L. 101-508, Title IV, § § 4101(a), (b)(1), 4103, 4105(a)(1), (2), (b)(1), 4106(a)(1), (b)(2), 4108(a), 4110(a), 4118(a)(1), (2), (f)(2)(A) to (C), (i)(1), (j)(2), 4155(c), 104 Stat. 1388-54, 1388-58 to 1388-63, 1388-66, 1388-67, 1388-69 to 1388-71, 1388-87; Nov. 16, 1990, Pub.L. 101-597, Title IV, § 401(c)(2), 104 Stat. 3035;   Aug. 10, 1993, Pub.L. 103-66, Title XIII, § § 13515(a)(2), 13516(a)(2), 13517(b), 13568(a), (b), 107 Stat. 583 to 585, 608;   Oct. 31, 1994, Pub.L. 103-432, Title I, § § 123(b)(1), (2)(B), (c), 125(a), (b)(1), 126(a)(1), (c), (e), (g)(9), (h)(2), 135(b)(2), 151(b)(1)(B), (2)(B), 108 Stat. 4411 to 4416, 4423, 4434;   Aug. 21, 1996, Pub.L. 104-191, Title II, § § 202(b)(2), 221(b), 110 Stat. 1998, 2011;   Aug. 5, 1997, Pub.L. 105-33, Title IV, § § 4201(c)(1), 4205(d)(3)(B), 4302(b), 4315(a), 4316(a), 4317, 4432(b)(2), (4), 4512(b)(2), (c), 4531(a)(2), 4556(a), 4603(c)(2)(B)(i), 4611(d), 111 Stat. 251, 382, 390, 392, 421, 444, 450, 462, 473; Nov. 29, 1999, Pub.L. 106-113, Div. B, § 1000(a)(6) [Title II, § 223(c), Title III, § § 305(a), 321(k)(4)], 113 Stat. 1536, 1501A-353, 1501A-361, 1501A-366;   Dec. 21, 2000, Pub.L. 106-554, Title I, § 1(a)(6) [Title I, § § 105(d), 114(a), Title II, § 222(a), Title III, § 313(b)(1), (2), Title IV, § 432(b)(2)], 114 Stat. 2763, 2763A-472, 2763A-473, 2763A-487, 2763A-499, 2763A-526;  Dec. 8, 2003, Pub.L. 108-173, Title III, § § 302(d)(3), 303(b), (e), (g)(1), (i)(1), 305(a), Title VII, § 736(b)(8), (9), Title IX, § 952(a), (b), 117 Stat. 2233, 2238, 2252 to 2255, 2356, 2427.)

AMENDMENT OF HEADING

  <Pub.L. 108-173, Title IX, § 911(c)(1), (d), Dec. 8, 2003, 117 Stat. 2383, 2385, provided that, effective Oct. 1, 2005, the heading is amended to read as follows:  "Provisions relating to the administration of part B of this subchapter".>

AMENDMENT OF SUBSEC. (A)

  <Pub.L. 108-173, Title IX, § 911(c)(2), (d), Dec. 8, 2003, 117 Stat. 2383, 2385, provided that, effective Oct. 1, 2005, subsection (a) is amended to read as follows:>

    <(a) The administration of this part shall be conducted through contracts with medicare administrative contractors under section 1395kk-1 of this title.>

REPEAL OF SUBSEC. (B)(1)

  <Pub.L. 108-173, Title IX, § 911(c)(3)(A), (d), Dec. 8, 2003, 117 Stat. 2383, 2385, provided that, effective Oct. 1, 2005, subsection (b) is amended by striking paragraph (1).>

REPEAL OF SUBSEC. (B)(2)(A), (B)

  <Pub.L. 108-173, Title IX, § 911(c)(3)(B)(i), (d), Dec. 8, 2003, 117 Stat. 2383, 2385, provided that, effective Oct. 1, 2005, subsection (b)(2) is amended by striking subparagraphs (A) and (B).>

AMENDMENT OF SUBSEC. (B)(2)(C)

  <Pub.L. 108-173, Title IX, § 911(c)(3)(B)(ii), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(2) is amended in subparagraph (C), by striking "carriers" and inserting " medicare administrative contractors".>

REPEAL OF SUBSEC. (B)(2)(D), (E)

  <Pub.L. 108-173, Title IX, § 911(c)(3)(B)(iii), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

effective Oct. 1, 2005, subsection (b)(2) is amended by striking subparagraphs (D) and (E).>

AMENDMENT OF SUBSEC. (B)(3)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(i), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended in the matter before subparagraph (A), by striking "Each such contract shall provide that the carrier" and inserting "The Secretary".>

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(viii), (ix), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended in the first sentence, after subparagraph (L), by striking "and shall contain" and all that follows through the period;  and in the seventh sentence, by inserting "medicare administrative contractor," after "carrier,".>

AMENDMENT OF SUBSEC. (B)(3)(A), (B), (F) TO (H), (L)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(ii), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended by striking "will" the first place it appears in each of subparagraphs (A), (B), (F), (G), (H), and (L) and inserting "shall".>

AMENDMENT OF SUBSEC. (B)(3)(B)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(iii), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended in subparagraph (B), in the matter before clause (i), by striking "to the policyholders and subscribers of the carrier" and inserting "to the policyholders and subscribers of the medicare administrative contractor".>

REPEAL OF SUBSEC. (B)(3)(C) TO (E)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(iv), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended by striking subparagraphs (C), (D), and (E).>

AMENDMENT OF SUBSEC. (B)(3)(H)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(v), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3)(H) is amended by striking "if it makes determinations or payments with respect to physicians' services," in the matter preceding clause (i);  and by striking "carrier" and inserting "medicare administrative contractor" in clause (i).>

REPEAL OF SUBSEC. (B)(3)(I)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(vi), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended by striking subparagraph (I).>

AMENDMENT OF SUBSEC. (B)(3)(L)

<Pub.L. 108-173, Title IX, § 911(c)(3)(C)(vii), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b)(3) is amended in subparagraph (L), by striking the semicolon and inserting a period.>

REPEAL OF SUBSEC. (B)(5)

<Pub.L. 108-173, Title IX, § 911(c)(3)(D), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b) is amended by striking paragraph (5).>

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

AMENDMENT OF SUBSEC. (B)(6)(D)(IV)

<Pub.L. 108-173, Title IX, § 911(c)(3)(E), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b) is amended in paragraph (6)(D)(iv), by striking "carrier" and inserting "medicare administrative contractor".>

AMENDMENT OF SUBSEC. (B)(7)

<Pub.L. 108-173, Title IX, § 911(c)(3)(F), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (b) is amended in paragraph (7), by striking "the carrier" and inserting "the Secretary" each place it appears.>

REPEAL OF SUBSEC. (C)(1)

<Pub.L. 108-173, Title IX, § 911(c)(4)(A), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (c) is amended by striking paragraph (1).>

AMENDMENT OF SUBSEC. (C)(2)(A)

<Pub.L. 108-173, Title IX, § 911(c)(4)(B), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (c) is amended in paragraph (2)(A), by striking "contract under this section which provides for the disbursement of funds, as described in subsection (a)(1)(B)," and inserting "contract under section 1395kk-1 of this title that provides for making payments under this part".>

AMENDMENT OF SUBSEC. (C)(3)(A)

<Pub.L. 108-173, Title IX, § 911(c)(4)(C), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (c) is amended in paragraph (3)(A), by striking "subsection (a)(1)(B)" and inserting "section 1395kk-1(a)(3)(B) of this title".>

AMENDMENT OF SUBSEC. (C)(4)

<Pub.L. 108-173, Title IX, § 911(c)(4)(D), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (c) is amended in paragraph (4), in the matter preceding subparagraph (A), by striking "carrier" and inserting "medicare administrative contractor".>

REPEAL OF SUBSEC. (C)(5), (6)

<Pub.L. 108-173, Title IX, § 911(c)(4)(E), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (c) is amended by striking paragraphs (5) and (6).>

REPEAL OF SUBSEC. (D) TO (F)

<Pub.L. 108-173, Title IX, § 911(c)(5), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsections (d), (e), and (f) are repealed.>

AMENDMENT OF SUBSEC. (G)

<Pub.L. 108-173, Title IX, § 911(c)(6), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (g) is amended by striking "carrier or carriers" and inserting "medicare administrative contractor or contractors".>

AMENDMENT OF SUBSEC. (H)(2)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

<Pub.L. 108-173, Title IX, § 911(c)(7)(A), (d), Dec. 8, 2003, 117 Stat. 2384, 2385, provided that, effective Oct. 1, 2005, subsection (h)(2) is amended by striking "Each carrier having an agreement with the Secretary under subsection (a) of this section" and inserting "The Secretary"; and by striking "Each such carrier" and inserting "The Secretary".>

AMENDMENT OF SUBSEC. (H)(3)(A)

<Pub.L. 108-173, Title IX, § 911(c)(7)(B), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (h) is amended in paragraph (3)(A), by striking "a carrier having an agreement with the Secretary under subsection (a)" and inserting "medicare administrative contractor having a contract under section 1395kk-1 of this title that provides for making payments under this part"; and by striking "such carrier" and inserting "such contractor".>

AMENDMENT OF SUBSEC. (H)(3)(B)

<Pub.L. 108-173, Title IX, § 911(c)(7)(C), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (h) is amended in paragraph (3)(B) by striking "a carrier" and inserting "a medicare administrative contractor" each place it appears; and by striking "the carrier" and inserting "the contractor" each place it appears.>

AMENDMENT OF SUBSEC. (H)(5)(A), (B)(III)

<Pub.L. 108-173, Title IX, § 911(c)(7)(D), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (h) is amended in paragraphs (5)(A) and (5)(B)(iii), by striking "carriers" and inserting "medicare administrative contractors" each place it appears.>

AMENDMENT OF SUBSEC. (L)(1)(A)(III)

<Pub.L. 108-173, Title IX, § 911(c)(8)(A), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (l) is amended in paragraph (1)(A)(iii), by striking "carrier" and inserting "medicare administrative contractor".>

AMENDMENT OF SUBSEC. (L)(2)

<Pub.L. 108-173, Title IX, § 911(c)(8)(B), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (l) is amended in paragraph (2), by striking "carrier" and inserting "medicare administrative contractor".>

AMENDMENT OF SUBSEC. (P)(3)(A)

<Pub.L. 108-173, Title IX, § 911(c)(9), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (p)(3)(A) is amended by striking "carrier" and inserting "medicare administrative contractor".>

AMENDMENT OF SUBSEC. (Q)(1)(A)

<Pub.L. 108-173, Title IX, § 911(c)(10), (d), Dec. 8, 2003, 117 Stat. 2385, provided that, effective Oct. 1, 2005, subsection (q)(1)(A) is amended by striking "carrier".>

AMENDMENT OF SUBSEC. (S)(2)

<Pub.L. 108-173, Title VI, § 627(b)(2), (c), Dec. 8, 2003, 117 Stat. 2321, provided that, applicable to items furnished on or after Jan. 1, 2005, (s)(2) is amended by striking subparagraph (C).>

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C.A. § 1395u

Pub.L. 108-173, Title IX, § 952(c), Dec. 8, 2003, 117 Stat. 2427, provided that:  "The amendments made by this section [amending subsec. (b)(6) of this section] shall apply to payments made on or after the date of the enactment of this Act [Dec. 8, 2003]."

42 U.S.C.A. § 1395u, 42 USCA § 1395u

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT