UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

IN RE PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION
_____

THIS DOCUMENT RELATES TO:
*State of California, ex rel. Ven-A-Care v.*
*Abbott Laboratories, Inc., et al.*
Case No: 03-cv-11226-PBS
_____

)
)
)
)
)
)
)
)
)
)
)
)

MDL No. 1456
Master File No. 01-12257-PBS
Subcategory Case No. 06-11337

**Judge Patti B. Saris**

### STATE OF CALIFORNIA'S OPPOSITION TO SANDOZ INC.'S MOTION TO DETERMINE THE SUFFICIENCY OF ITS RESPONSES TO SANDOZ INC.'S FIRST SET OF REQUESTS FOR ADMISSION

Sandoz, Inc. ("Sandoz") served the State of California ("California") with requests for admission on the final day of a nearly two year period (August 1, 2007 to June 15, 2009) identified as that within which the parties were directed by this Court to conduct discovery. California objected to the requests as untimely and declined to further respond. Sandoz has filed a motion (Dkt. 6392, "Sandoz RFA Mot.") for an order finding California's responses to Sandoz's requests for admission insufficient and deemed admitted; or in the alternative, an order compelling California to supplement its responses. Sandoz argues its requests, (1) are not subject to the time period designated for discovery in this case, and (2) even if they were subject to the discovery calendar, they are timely because they were *served* on the last day of discovery. *Id*. at 4-5.  Sandoz also claims that responding to its requests would impose no burden or prejudice on California. *Id*. at 5-6.

Sandoz is wrong in all respects. The majority of courts construe requests for admission as subject to case management orders managing discovery, and subject to the deadlines established

therein. Moreover, even if the minority view were deemed appropriate on the facts of this case, California would be prejudiced by having to respond to the requests for admission in question.

## I.

## LEGAL AND FACTUAL BACKGROUND TO THIS DISCOVERY DISPUTE

On August 1, 2007, the Court issued Case Management Order (CMO) 31, which set forth dates regulating discovery in this case (Dkt. 4586, Ex. 1). CMO 31 describes requests for admission as a "discovery request." *Id*. at ¶ 7.A, 7.F.  CMO 31 states that December 15, 2008 is the date by which "All fact discovery shall be completed." *Id*. at ¶ 9.

On November 14, 2008, the parties jointly requested that the Court extend the fact discovery deadline from December 15, 2008 to June 15, 2009.  In their Memorandum in Support of Joint Motion to Extend Discovery Schedule and Amend CMO 31 (Dkt. 5682, Ex. 2), the parties noted they "will not be able to complete the fact discovery by December 15." *Id*. at 1. Accordingly, the parties sought, and the Court granted, an extension until June 15, 2009 as the new date by which "all fact discovery *shall be completed*." (Dkt. 5942, Ex. 3, at 1, emphasis added.)

On May 8, 2009, counsel for Sandoz directed California's attention to the "June 15, 2009 deadline for completion of fact discovery" and requested dates in May and June for depositions so that they could be completed prior to June 15, 2009.  *See* Letter from H. McDevitt to N. Paul, dated 5/8/09 (Ex. 4).

Notwithstanding the June 15 deadline for the completion of fact discovery, Sandoz served California with its first set of requests for admission on June 15, 2009.  California responded by objecting to the requests for admission on the basis that they were untimely

because they were served on the last day for fact discovery, while not waiving its right to assert other appropriate objections. (Sandoz RFA Mot., Weedman Decl., Ex. B).

On June 24, 2009, in response to California's objections, counsel for Sandoz contended the requests for admission were timely (*and indicated he understood them to be a form of discovery*) because they were served on June 15, 2009. Counsel stated: "Defendants do not understand Judge Saris' order of March 3, 2009 to require the parties to serve final responses to discovery requests by June 15, 2009. Rather, Defendants read the order to require the parties to serve all fact discovery requests by that date." *See* Letter from P. Carberry to R. Glazer, dated June 24, 2009 (Ex. 5).[1] The parties met and conferred, to no avail, on July 13, 2009.

On August 21, 2009, Sandoz brought its motion to determine the sufficiency of Plaintiff's responses. Although the parties met and conferred regarding California's untimeliness objections, Sandoz never sought a meet and confer nor made any other effort (either before or after the expiration of fact discovery) toward the alternative of moving this Court for an extension of the June 15, 2009 "[a]ll fact discovery shall be completed" deadline applicable to this case under the amended CMO (Dkt. 5942, Ex. 3, at 1).

## II.

## ARGUMENT

### 1. The Majority of Courts Hold That Requests for Admission Are Covered By The Rules Governing Discovery.

There is a split of authority as to whether requests for admission are a form of discovery, and if so, whether they should be subject to discovery cutoff dates.

---

[1] Sandoz states in its memorandum that it "responded to Plaintiff on June 24, noting that the June 15 cut-off for discovery would not apply to Plaintiff's responses to the Requests." (Sandoz RFA Mot. at 2.) Actually, as evidenced by the content of the June 24, 2009 letter to which Sandoz refers, that assertion does not appear in the letter. *See* Letter from P Carberry to R. Glazer, dated June 24, 2009 (Ex. 5).

3

A few courts, to which Sandoz directs the Court's attention, have held that requests for admission are not subject to discovery cutoff dates.[2] *See, e.g., O'Neill v. Medad*, 166 F.R.D. 19, 21-22 (E.D. Mich. 1996) (holding that Requests for Admission served on the discovery cutoff date must be responded to because they were not subject to the discovery cutoff); *Hurt v. Coyne Cylinder Co.*, 124 F.R.D. 614, 614 (W.D. Tenn. 1989) (noting, with little reasoning other than that since requests for admission are designed to streamline evidence at trial, they are not governed by the discovery deadline).[3]

Courts within the First Circuit have held otherwise. In *Kershner v. Beloit Corp.*, 106 F.R.D. 498, 499 (D. Me. 1985), the court noted that the purposes served by requests for admission do not change the fact of their nature as discovery devices, and accordingly, "any general deadline for completion of discovery facially applies to requests for admissions." *Id*.[4]

---

[2] Sandoz's motion inexplicably fails to discuss, or even acknowledge, (1) the fact of the split in authority among the courts on the question of whether requests for admission are discovery and whether they are subject to discovery deadlines, (2) the existence of a single case contrary to its asserted position or the cases it cites, or (3) the fact that a majority of courts hold that requests for admission are a discovery device and are subject to discovery case management orders.

[3] *None* of the remaining six cases cited by Sandoz in its motion support its contention that its requests for admission are not subject to the deadlines set forth in the controlling CMO. In *McFadden v. Ballard, Spahr, Andrews & Ingersoll*, 243 F.R.D. 1 (D.D.C. 2007) Magistrate Judge Facciola states: "As I have pointed out in other opinions, Requests for Admissions are not a discovery device but are designed to narrow the issues for trial." *Id*. at 7. The context, however, did not deal with whether such requests are governed by discovery cutoffs, and all the requests at issue had been served and responded to within the cutoff. *Henry v. Champlain Enter., Inc*., 212 F.R.D. 73 (N.D.N.Y. 2003) includes a general discussion of the function of requests for admission, without any holding as to appropriate timing. *See id.* at 77. *Bouchard v. United States*, 241 F.R.D. 72 (D. Me. 2007) is to the same effect. In Bouchard, the Court notes that the Requests were served on September 19, 2006 and responded to on October 16, 2006, "eleven days before discovery expired." *Id*. at 75-76. The only issue was whether the government could move to deem certain facts admitted when it had not previously moved under Rule 36 to "determine the sufficiency of the answers or objections." *Id*. at 74. *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) similarly discusses the functions served by requests for admission, but does not address the issue of timeliness. In *Misco, Inc. v. U.S. Steel Corp.*, 784 F.2d 198 (6th Cir. 1986), while the court stated that requests for admission are not a "general discovery device," the issue was whether a party was limited to 30 requests for admission when there was such a limit on interrogatories; the court found that the service of over 2,000 requests for admission was an abuse of discovery. *Id*. at 205-06. Similarly, *Pickens v. Equitable Life Assurance Soc'y*, 413 F.2d 1390 (5th Cir. 1969), did not involve the appropriate timing of requests for admission and is inapposite here.

[4] Nonetheless, finding that there was no real prejudice and that the request would lead to efficiencies at trial, the court allowed the late requests. *Kershner*, 106 F.R.D. at 499.

4

*Compare Central Maine Power Co. v. Foster Wheeler Corp.,* 115 F.R.D. 294, 295 (D. Me. 1987) (declining to compel responses to requests for admission served two weeks after discovery deadline, and departing from *Kershner* result because "[t]he Court has reviewed the content of the requested admissions, and finds that few of the twenty-two questions propounded are capable of a simple answer and that requiring CMP to respond would impose upon it a burdensome and time-consuming task.")[5]

In *Gluck v. Ansett Austl. Ltd.*, 204 F.R.D. 217 (D.D.C. 2001), under circumstances analogous to the instant case, plaintiff served requests for admissions on defendant just days before the discovery cutoff date. The Magistrate Judge granted the defendant's motion for a protective order because the thirty-day period that a served party has to respond to a request for admission would have ended beyond the date for completing the first phase of discovery. *Id.* at 219-20. The District Judge, upholding the Magistrate Judge's opinion, declared that "the text, structure and purpose of the federal rules and the scheduling order in this case suggest that service of plaintiff's requests for discovery was subject to the discovery deadline." *Id.* at 219. The *Gluck* court ultimately concluded that requests for admissions are a discovery tool and therefore are subject to general discovery deadlines. Supporting this argument, the court stated Rule 26(a)(5)[6] explicitly lists requests for admissions as a means of obtaining discovery, and noted that the drafters of the Federal Rules of Civil Procedure included Rule 36 in the chapter of the rules governing depositions and discovery. The *Gluck* court further noted that since the rules were designed to provide for fair and speedy resolutions of disputes, it was fair to conclude that

---

[5] Similarly and as set forth below, California contends it would be prejudiced by having to respond to Sandoz's requests for admission.

[6] Formerly, Rule 26(a)(5) expressly listed the discovery methods provided by the rules and included requests for admission. According to the Advisory Committee's notes on the 2007 Amendments, that provision was "deleted as redundant." *See* Fed. R. Civ. Pro. Advisory Committee Notes, 2007 Amendments.

the framers of the rules intended that requests for admissions be subject to the rules applicable to other discovery tools, including Rule 16(b)(3) under which discovery deadlines are fixed in scheduling orders. *Gluck*, 204 F.R.D. at 219.

Elsewhere around the country, a number of courts treat requests for admissions as discovery,[7] and a majority treat requests for admission as a form of discovery which, like other discovery, is subject to discovery deadlines and case management orders regulating discovery. *See Coram Health Care Corp. of Ill. v. MCI Worldcom Communications, Inc.,* 2001 WL 1467681, at *3 (N.D. Ill. Nov 15, 2001) (holding that a request for admission is a tool of discovery subject to discovery cutoff dates); *Brodeur v. McNamee*, 2005 WL 1774033, at *2 (N.D.N.Y. July 27, 2005) (examining conflicting authority and concluding "that the interests of promoting orderly and efficient litigation are best served by subjecting requests for admissions to case management discovery deadlines"); *Revlon Consumer Prods. Corp. v. Estee Lauder Co., Inc.,* 2001 WL 521832, at *1 (S.D.N.Y. May 16, 2001) (holding that requests for admissions are a form of discovery subject to discovery cutoff dates);[8] *Toone v. Federal Express Corp.,* 1997 WL 446257, at *8 (D.D.C. July 30, 1997) (denying motion to compel responses to request for admissions because request was served on the date for completion of discovery); *Shroyer v.*

---

[7] *See Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 758 (2002) (noting that requests for admission are a discovery device under the Federal Rules of Civil Procedure); *Burnham v. Super. Ct. of Cal.,* 495 U.S. 604, 639 n. 13, (1990) (concurring opinion) (defendant "can use relatively inexpensive methods of discovery, such as ... requests for admission [.]"); *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.,* 325 F.3d 903, 905 (7th Cir. 2003) (characterizing requests for admission as discovery); *DP Aviation v. Smiths Indus.,* 268 F.3d 829, 842 (9th Cir. 2001) (same).

[8] The *Revlon* court pointedly held that "[t]here should be no doubt that Requests for Admissions pursuant to Fed.R.Civ.P. 36 are a discovery device, from (1) the placement of Rule 36 in the section of the Federal Rules of Civil Procedure labeled 'V. Depositions and Discovery,' (2) the provision in Rule 36 that Requests for Admissions 'may not be served before the time specified in Rule 26(d),' which section is entitled 'Timing and Sequence of Discovery,' (3) language in the Advisory Committee Notes to Rule 36 (1970 and 1993 Amendments) that makes clear that Rule 36 is part of 'discovery procedures' and 'discovery rules,' and (4) the ability to impose sanctions under Rule 37 (entitled 'Failure to Make Disclosure or Cooperate in Discovery') for violations of Rule 36. Clearly, Requests for Admissions are a discovery device and are covered by the discovery cut-off date." *Revlon*, 2001 WL 521832 at *1.

*Vaughn* 2002 WL 32144316, at 2, fn. 2 (N.D. Ind. July 10, 2002) (agreeing "with the majority view that the structure and purpose of the federal rules suggest that requests for admission are discovery subject to discovery deadlines"); *Jarvis v. Wal-Mart Stores, Inc.,* 161 F.R.D. 337, 339 (N.D. Miss. 1995) (treating "requests for admission as a discovery device for purposes of establishing a deadline for service upon the other party"); *Bailey v. Broder,* 1997 WL 752423, at *3 (S.D.N.Y. Dec. 5, 1997) ("While there is some disagreement as to the issue among districts across the country, in this circuit there is not, and the courts have consistently held that requests for admission are to be made within the discovery deadline."); *Giraldi v. Mann,* 1995 WL 574451, at *4 (N.D.N.Y. Sept. 22, 1995) ("The magistrate judge acted appropriately in not considering the requests for admissions for two reasons: 1) the requests were not filed until May 6, 1994, after the deadline for discovery had passed[.]"); *see also* Wright, Miller & Marcus, Federal Practice and Procedure § 2257 (2005 Supp.) ("Even though they are not technically discovery requests, requests for admissions have been held subject to discovery cut off dates.").

In sum, the clear majority of courts hold that requests for admission are both a form of discovery, and subject to the discovery deadlines imposed by the Court. To treat them otherwise, as another court explained, would be to leave requests for admission "afloat in the pretrial process, a situation which seems to be at odds with the purpose of the [scheduling] order." *Bieganek v. Wilson,* 110 F.R.D. 77, 78 (N.D. Ill. 1986).

In the District Court for the District of Massachusetts, requests for admission are considered discovery. Throughout the Local Rules for this Court, requests for admission are consistently and explicitly referred to as discovery, and included along with other discovery devices in the accompanying promulgation of court policies. *See* Local Rules, LR 26.1(c), LR 26.2(b), LR 26.6(a) and LR 37.1(b) (4).

Finally, in this MDL action, the Court has described requests for admission as discovery. In CMO 31, under the heading "SCOPE OF DISCOVERY," Judge Saris has included Requests for Admissions, along with Document Requests and Interrogatories, as discovery devices to which she directs various limitations. (Ex. 2, para. 7(D)-(E) at 4-5).

Even counsel for Sandoz has referred to its requests for admission as discovery. On June 24, 2009, in response to California's objection, counsel for Sandoz explained:

> "This letter is in response to your missive dated June 17, 2009 relating to California responses to Defendants' outstanding discovery requests. Regarding Defendant Dey and Mylan's subpoena directed to the California Department of General Services, Defendant Sandoz' First Set of Requests for Admission, and Defendant Sandoz' Second Set of Interrogatories. . ."

*See* Letter from P. Carberry to R. Glazer, dated June 24, 2009 (Ex. 5).

The language employed in the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Case Management Order for the instant litigation, and at least some of the expressions employed by the parties themselves collectively imply the same understanding. Without disciplined adherence to such an understanding, the parties would almost certainly be vulnerable to the kind of prejudice that would result from the "sharp practice" of "eleventh hour" requests for admission. *Gluck,* 204 F.R.D. at 219-20.

**2.   The Motion Should Be Denied Even Under the Minority View.**

Under the minority view that has been followed by some courts, a party may be compelled to answer untimely requests, so long as: (1) there is no demonstrable prejudice from its doing so, and (2) the court concludes that the requests are highly likely to save the parties time and expense and to benefit the court by avoidance of unduly prolonging the trial for no significant purpose. *See Bouchard*, 241 F.R.D. at 75-76, citing *Kershner*, 106 F.R.D. at 499-500 and *Central Maine Power Co.*, 115 F.R.D. at 295.

In *Kershner* the court found that "any general deadline for completion of discovery facially applies to requests for admissions." *Kershner*, 105 F.R.D. at 499. However, the court was persuaded by the fact that responses to the particular requests in question were "highly likely to save the parties time and expense and to benefit the court by avoidance of unduly prolonging the trial for no significant purpose." *Id*. Further, the court emphasized that the plaintiffs had made no showing that they would suffer actual prejudice if they were required to respond to the request. *Id*.

Applying the same standard set forth in *Kershner*, the court in *Central Maine Power Co.* reached a different result. There, the court found that few of the requests could be responded to in a simple answer and that requiring plaintiff to respond would impose a burdensome and time-consuming task. *Central Maine Power Co.,* 115 F.R.D. at 295. Given the late date and the necessity to complete other aspects of final trial preparation, the court in *Central Maine Power Co.* concluded that plaintiffs would likely suffer prejudice if a response were required. *Id*. Furthermore, the court found that responses to the particular admissions in that case would be unlikely to significantly narrow the range of disputed factual issues. *Id*.

Even under this minority view, if one were to apply the standards set forth in *Kershner* and explained in *Central Maine Power Co*., this motion should be denied because (1) California will suffer actual prejudice if it is required to respond to the requests, and (2) responses would be unlikely to significantly narrow the range of disputed factual issues.

Few of the requests are capable of a simple answer, and requiring California to respond will impose upon it a burdensome and time-consuming task. It would be patently unfair if California was burdened with responding to complex discovery during the shortened and compressed expert discovery and dispositive motion phases of this litigation.

Sandoz states that its "delay in the service of the Requests is a direct result of Plaintiff's own actions." They argue that "Plaintiff did not substantially complete its production until March 16, 2009," and ". . . even made a production on the eve of the fact discovery cutoff of June 15, 2009." However, the documents that are the subject of Sandoz's Requests for Admission were produced to Sandoz by California on *March 19, 2008* and *August 12, 2008*. As the subject documents were produced almost one year before Sandoz propounded the Requests, it cannot credibly argue that its "delay in the service of the Requests is a direct result of Plaintiff's own actions." Further, contrary to Sandoz's unsupported assertion that, "responses will benefit the court by avoidance of unduly prolonging the trial for no significant purpose," (Sandoz RFA Mot. at 5), responses to these requests are unlikely to significantly narrow the range of disputed factual issues. These requests seek admissions to material issues that remain in dispute and will likely represent the heart of the case.

Sandoz also argues that its requests "seek straightforward and easily addressed admissions." As an example, it cites Request Number 16, which it characterizes as "asking Plaintiff to authenticate several documents." Contrary to Sandoz's characterization, the request is not a "straightforward" authentication request. In addition to authenticating the documents under Rule 901 of the Federal Rules of Evidence, the request also asks California to admit that the documents also identify "the AMP and calculated rebate for Geneva Pharmaceuticals, Inc.'s, now known as Sandoz's, drugs." In other words, beyond simply asking that California admit or deny the referenced documents' authenticity, Sandoz demands that California make an affirmative representation concerning what the documents might or might not say about Sandoz's AMPs and any calculated rebates based thereon. This would require California to review each of Sandoz's referenced document, search California's documents for information

10

relevant to the requests, cross-compare any such information in California's possession with that which is included in the documents referenced by Sandoz, and even go so far as to determine the accuracy of the calculated rebates for each drug identified in the referenced documents. Sandoz's "simplest" of Requests, therefore, is hardly as "straightforward and easily addressed" as it has represented in its moving papers.

The remaining Requests are also less "straightforward" or "limited in scope" as Sandoz would have the Court believe. For instance, Requests Nos. 23 through 25 each demand that California make affirmative representations concerning whether or not California was "aware" that California "retailer pharmacies" purchased Sandoz's drugs at less than AWP-5% prior to 2002, less than AWP-10% prior to 2004, and less than AWP-17% for all other time periods. To properly respond to these requests, California would likely have to review all of the deposition testimony of DHCS personnel taken in this action, conduct additional interviews of additional existing and former DHCS personnel, review myriad documents provided to Sandoz in this action, and then categorize the results across multiple time periods.

In another instance, Sandoz's request No. 10 demands that California admit that since 1991, "or every quarter Sandoz timely reported AMP information to CMS or HCFA," California received quarterly URAs for the "Sandoz Drugs at Issue that were the subject of utilization and reimbursement under the Medicaid system for California patients." This so-described "straightforward" and "easily addressed" request would require California to initially identify all of the "timely" reports Sandoz submitted to CMS/HCFA--a federal government agency over which California has no control--and then correlate those reports to URAs California allegedly received for each of the Sandoz Subject Drugs on a quarterly basis since 1991.

## CONCLUSION

The majority of courts across the country hold that requests for admission are a form of discovery, and as such are subject to discovery deadlines. Here, Sandoz propounded requests for admission, without having sought any discussion whatsoever on an extension of the discovery period, on the final day of a nearly two year-long discovery period. There is no apparent explanation or justification for Sandoz's dilatory conduct of discovery as to its requests for admissions. Just as nothing in the record betrays an intention by this Court or the parties to treat the fact-discovery cutoff date as anything other than the date by which "fact discovery shall be completed" (Ex. 3 at 1), none of Sandoz's requests for admission can reasonably be characterized as "straightforward," "easily addressed," or "limited in scope."  Because the action has now moved on to the work-intensive expert discovery phase (scheduled to terminate on September 30) and the quickly-approaching dispositive motion phase (to be completed by October 31), California would be prejudiced if it were now required to respond to Sandoz's requests for admission.  As Sandoz's requests were manifestly untimely and California would be prejudiced if responses were required, the motion should be denied.

                Respectfully submitted,

Dated:  September 4, 2009        EDMUND G. BROWN JR.
                   Attorney General of the State of California

             By:  */s/ Nicholas N. Paul*
                 NICHOLAS N. PAUL
                 CA State Bar No. 190605
                 Supervising Deputy Attorney General
                 Bureau of Medi-Cal Fraud and Elder Abuse
                 Office of The Attorney General
                 1455 Frazee Road, Suite 315
                 San Diego, CA  92108

**CERTIFICATE OF SERVICE**

I, Nicholas N. Paul, hereby certify that on September 4, 2009, I caused a true and correct copy of the foregoing, to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                        _/s/ Nicholas N. Paul_ .
                                                  NICHOLAS N. PAUL
                                                  Supervising Deputy Attorney General