**EXHIBIT 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) MDL No. 1456 ) Master File No. 01-12257-PBS ) Subcategory Case No. 06-11337 ) |
| THIS DOCUMENT RELATES TO: | ) (Original Central District of California ) No. 03-CV-2238) ) |
| State of California, *ex rel*. Ven-A-Care v. Abbott Laboratories, Inc., *et al.,* CASE # 1:03-cv-11226-PBS | ) Judge Patti B. Saris ) ) ) |

**MEMORANDUM IN SUPPORT OF JOINT MOTION TO
EXTEND DISCOVERY SCHEDULE AND AMEND CMO 31**

On August 1, 2007, this Court signed Case Management Order No. 31 governing the schedule in this case. That Order, among other things, provides for a fact discovery cut-off of December 15, 2008. As that deadline approaches, it has become clear, despite the best efforts of both Plaintiffs State of California and relator Ven-A-Care of the Florida Keys ("Plaintiffs") and Defendants Dey, Inc., Mylan Pharmaceuticals Inc., Sandoz Inc., and Warrick Pharmaceutical Corp. ("Defendants") as summarized below, that the parties will not be able to complete fact discovery by December 15.[1] Accordingly, Plaintiffs and Defendants jointly request that the Court extend the fact discovery deadline to June 15, 2009.

**I.    Background on Discovery Taken in this Action.**

On March 22, 2007, this Court denied in part and granted in part Defendants' Motions to Dismiss the First Amended Complaint (the "FAC"). Defendants answered the FAC on May 21, 2007. Pursuant to CMO 31, Plaintiffs, both the State of California and the relator, served Initial

---

[1] Additional remaining Defendants include parents, predecessors or related entities to the Defendants listed in the footnoted sentence, including Dey L.P., Mylan Inc., Geneva Pharmacueticals Inc. and Schering-Plough Corp. Plaintiffs have dismissed, settled, or reached tentative settlements through mediation with all other Defendants.

Disclosures, pursuant to Fed. R. Civ. P. 26(a)(1) to each Defendant. Along with the initial disclosures, California made a substantial production of documents it had identified in the disclosures as likely to contain information relevant to the allegations set forth in the First Amended Complaint. This initial production included claims data covering the entire claims period, produced to each Defendant for the drugs at issue in this case (the "Subject Drugs") manufactured or sold by that Defendant. Likewise, the relator produced tens of thousands of pages of material along with its initial disclosures.

Defendants served their initial disclosures on August 27, 2007. In addition, pursuant to CMO 31, Defendants, to the extent they had not already done so, produced to Plaintiffs documents that had previously been produced either in other proceedings before this MDL Court or in other AWP litigation pending around the country. Such production included transcripts of depositions taken in other AWP cases.

In the fall of 2007, Plaintiffs served separate sets of and Interrogatories and Requests for Production of Documents on each Defendant. Around the same time, Defendants served on California joint Interrogatories and joint Requests for Production. The parties responded to those interrogatories and requests for production in December 2007 and January 2008 and began producing responsive materials, on a rolling basis, shortly thereafter even as the parties continued to meet and confer to discuss the sufficiency of responses to interrogatories and requests for production. As additional document productions were made, additional issues arose requiring that the parties confer to discuss potential resolution in an effort to avoid motion practice. For example, when Defendants raised as an issue of concern Plaintiffs' assertion of privilege based on the privilege log provided, Plaintiffs agreed to re-review documents previously held back as privileged, consider the propriety of the original privilege designation,

and, if they continued to believe the document was privileged, consider producing the document in redacted form. That process, while time consuming, served to narrow the dispute between the parties with respect to Plaintiffs' assertion of privilege.

Though, as outlined below, document production is not yet complete, all parties have made substantial document productions to date. California has produced approximately 137,200 pages of documents and 12 CDs of data and other materials to all Defendants as well as additional Defendant specific productions. California has completed its production of hard copy documents that are responsive to Defendants' Requests for Production and has begun its production of responsive, electronic documents. In addition, the relator, Ven-A-Care, has produced approximately 64,900 pages to Defendants. As for the Defendants, Dey has produced over 2.3 million pages of documents and 20 CDs of transactional data, Mylan has produced over 4 million pages of documents and 4 DVDs of transactional data, Sandoz has produced over 620,000 pages of documents and 4 CDs of data and other materials, and Warrick has produced to Plaintiffs over 900,000 pages of documents and 65 CDs of data and other materials which, if printed, would yield millions more pages.

Even as the parties produced documents on a rolling basis and even though such productions are not complete, Plaintiffs and Defendants have begun taking depositions. More than 25 depositions have been taken that were noticed or cross-noticed in this matter by Defendants. That includes seven depositions of current and former employees of the California Department of Healthcare Services, both 30(b)(1) and 30(b)(6) depositions, with five more currently scheduled. In addition, 34 depositions of current and former employees of Defendants have been taken that were noticed or cross noticed in this case, with seven more currently scheduled. Except for one Defendant currently negotiating the issue with Plaintiffs, the parties

have also agreed, in an effort to streamline discovery, that depositions of current or former employees of Defendants that were taken in previous AWP litigation and not cross-noticed in the California case, will be deemed useable as if noticed in the California case.

## II. Despite the Parties' Best Efforts, Outstanding Discovery Tasks Cannot be Completed by December 15.

As outlined above, the parties have obtained significant discovery already in this action. Nonetheless, much discovery remains to be taken, and the discovery that is outstanding, for the reasons described below, cannot be completed within the existing December 15, 2008 cut-off for fact discovery.

### A. *California Cannot Complete its Search, Review, and Production of Electronic Documents Until March 15, 2009 at the Earliest.*

One of the main categories of discovery that remains outstanding is California's production of responsive, electronically stored information. Defendants have worked with California in an effort to expedite their review and production of these materials and, to the extent possible, minimize the burden on California in doing so. As an initial step toward facilitating production of electronic documents, Defendants provided a list of search terms for California to use in searching the electronic materials it had collected for potentially responsive documents. After having run the searches requested by Defendants, California informed Defendants that the searches resulted in so many "hits" that it would be unreasonable and unduly burdensome to require California to review all the documents identified in those searches. After additional conferences between the parties, California agreed to begin reviewing those documents identified by searches that yielded 1,000 or less hits and, where appropriate, producing such documents. California made a production of this subset of responsive electronic documents —those identified in searches yielding 1,000 or less hits —on October 24, 2008. In the process of reviewing those documents, California identified some responsive documents that,

-4-

in its view, must be redacted before production. California, along with its technological consultant, is in the process of making those redactions, and has indicated that it will make an additional production containing many of the redacted documents by November 21, 2008.

While California began its review of those documents identified in searches yielding relatively few hits, the parties continued to discuss how to refine the other searches so as to minimize the burden on California while still ensuring that Defendants obtained the documents necessary to mount their defense. Although reserving their rights to request documents from additional custodians, Defendants have provided California with a revised, shorter list of search terms along with a specific list of twelve electronic custodians.[2] Some of the search terms yielded high numbers of results and the parties have continued to work together, and with their technological consultants, to try to minimize, to the extent possible, the burden on California in searching and producing these materials. Despite those efforts, however, there are still massive amounts of electronic documents, hundreds of thousands, and possibly millions, of pages, that California must still review and, potentially, produce. California has represented that it cannot commit to completing its review and production of all those materials until March 15, 2009 at the earliest. Defendants believe these documents are likely to be some of the most critical to Defendants' case. They have been identified using search terms such as AWP, FUL, and MAC. Depositions cannot be completed until these electronic documents are produced.

  **B.**  *California Likewise Needs Additional Time, until March 15, 2009, to Identify and Produce Other Electronically Stored Information.*

In addition to the search and production of the electronic documents described above—Word documents, e-mails, and the like—the parties encountered difficulty in dealing with certain other types of electronically stored information. California's Medicaid program uses a database,

---

[2] The list of custodians identified by Defendants was based on a list, provided to them by California, of those current and former DHCS employees whose electronic documents California had collected.

-5-

called Live Link, to communicate with its fiscal intermediary, Electronic Data Systems (EDS). That database likely contains material responsive to Defendants document requests. Unfortunately, the database was not constructed in a way that makes it possible to electronically search and extract particular documents. California worked diligently with technological experts who employed a number of techniques in an unsuccessful attempt to extract from Live Link the potentially relevant material. In light of that difficulty, the parties have agreed to an alternative method of obtaining discovery of the materials in Live Link—production of paper copies of a certain type of document that is also stored on Live Link along with samples of other types of documents that reside only on Live Link. Though the parties are hopeful that they have arrived at a mutually workable solution, that cannot be said with any certainty until Defendants have a chance to review those documents that are produced according to this compromise. California will produce the initial wave of Live Link documents on November 14. The parties will need to confer on subsequent categories of Live Link documents sought by Defendants, if any.

In addition, at a recent 30(b)(6) deposition, Defendants and California learned of additional sources of potentially responsive electronic information, not previously collected or searched, that may contain responsive material. The parties are in the process of discussing the logistics around the collection, search, review, and production of those materials. Though the parties do not yet know all the details surrounding the production of these categories of documents, the parties can say, definitively, that they require additional time in order for California to collect, review, and produce any responsive material that may be found.

Again, Defendants need these electronic documents in order to complete depositions that have already begun but were left open because the productions were not complete. Moreover, additional depositions have not been commenced because it was not efficient or cost-effective

-6-

for the parties to do so until the electronic production was completed. As noted above, the parties have taken numerous depositions. Several more have been noticed for the coming weeks. These depositions cannot, however, be completed until California's document production is completed.

### C. *Defendants Require Additional Time to Make Their Corporate Representatives and Other Witnesses Available for Deposition*

The parties require additional time to complete fact discovery for another reason. Although California has diligently pursued depositions of Defendants' corporate representatives and other potential trial witnesses, and Defendants have worked cooperatively with California in scheduling these depositions, several remain to be completed.[3] Extending the schedule has the collateral benefit of permitting not only sufficient time for the state to complete these depositions, but also to permit these depositions to be coordinated with depositions to be taken in other AWP cases pending both before this Court and around the country. The parties are continuing to work together to schedule and complete these depositions, but would be greatly aided by the extension jointly requested.

### CONCLUSION

For the foregoing reasons, the parties jointly request in the interest of justice that the fact discovery deadline be extended until June 15, 2009, and that all subsequent deadlines in CMO 31 be similarly extended. No trial date has been set. The parties have been working diligently and cooperatively, but need additional time to complete fact discovery and prepare their respective cases.

---

[3] As noted above, Defendants have noticed and are proceeding with Rule 30(b)(6) depositions of California. However, California disputes the propriety of certain of Defendants' proposed topics and has indicated that it is not willing to produce witnesses to testify on these topics. Defendants have been negotiating with California in good faith to resolve or narrow these issues, but there is a possibility that Court intervention may be required. Extending the discovery deadline will ensure that the parties have an adequate opportunity to try to work these issues out and, if necessary, that the Court has an adequate opportunity to resolve them.

-7-

Respectfully Submitted,


By:     /s/ Nicholas N. Paul
NICHOLAS N. PAUL
CA State Bar No: 190605
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse
Office of The Attorney General
1455 Frazee Road, Suite 315
San Diego, California  92108
Tel:   (619) 688-6099
Fax:   (619) 688-4200

**Attorneys for Plaintiff,
STATE OF CALIFORNIA**



THE BREEN LAW FIRM, P.A.
By:     /s/ James J. Breen
JAMES J. BREEN
5755 No. Point Parkway, Suite 260
Alpharetta, Georgia  30022
Telephone:  (770) 740-0008
Fax:  (770) 740-9109

**Attorneys for *Qui Tam* Plaintiff,
VEN-A-CARE OF THE
FLORIDA KEYS, INC.**

**On behalf of Defendants,**

By:  /s/ Daniel J. Bennett
Brien T. O'Connor (BBO #546767)
John P. Bueker (BBO #636435)
Daniel J. Bennett (BBO #663324)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

**Attorneys for Defendants Schering-Plough
Corporation and Warrick Pharmaceuticals
Corporation**


Dated:  November 14, 2008

-8-

-9-

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2008, I caused a true and correct copy of the MEMORANDUM IN SUPPORT OF JOINT MOTION TO EXTEND DISCOVERY SCHEDULE AND AMEND CMO 31 to be served on all counsel of record by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL 1456.

    /s/ *Daniel J. Bennett*
Daniel J. Bennett