**EXHIBIT 7**

# EXHIBIT A

## Defendants' List of Possible Deponents[1]

### I. Medi-Cal Fact Witnesses

| Possible Deponent | Reason(s) for Taking the Deposition[2] |
|---|---|
| Katherine (Cabacungan) Ahrens | Ms. Ahrens was a pharmacist in the Pharmacy Unit of Medi-Cal from 1998 through 2006. Defendants seek to depose Ms. Ahrens because she was involved in discussions with manufactures regarding the listing of their drugs, including certain of the subject drugs, on Medi-Cal's Contract Drug List (*i.e.*, Medi-Cal's formulary). |
| Tom Ahrens | Mr. Ahrens was a pharmacist in the Pharmacy Unit of Medi-Cal from the early 1990s through at least 2000. Defendants seek to depose Mr. Ahrens because he assisted in the analysis of various bills relating to Medicaid pharmaceutical reimbursement rate reductions and rebates and because of his role in the 2000 "Drug Task Force." |
| Kimberly Belshe | Ms. Belshe served as Director of the California Department of Health Services (DHS) from approximately 1993 to 1999. Defendants seek to depose Ms. Belshe due to her involvement with certain legislative proposals, including those pertaining to prescription drug reimbursement rate reductions, state supplemental rebates, and changes in the reimbursement methodology involving AWP, as well as her involvement in correspondence with the California State Controller regarding its 1996 audits of Medi-Cal. |
| Allen Fung | Mr. Fung was a pharmacist in the Pharmacy Unit of Medi-Cal from approximately 1985 to 1995. Defendants seek to depose Mr. Fung due to his involvement with a 1994 and 1995 study by the United States Department of Health and Human Services, Office of Inspector General of California Medicaid providers' actual acquisition costs for prescription drugs. |

---

[1] This list is based on documents produced to date by the State of California and various third-parties, and will be revised based on the results of California's electronic production – either to include additional persons not previously identified or thought to be relevant and/or reduced because the electronic document production demonstrates that the deposition will be duplicative or unlikely to yield relevant information. In addition to these depositions, Defendants are continuing to take their Rule 30(b)(6) deposition of the California Department of Health Services as to which California has lodged certain objections which may lead to a motion for a protective order.

[2] The reasons provided are illustrative and other reasons for seeking the depositions listed exist. To the extent that the Court is not persuaded to grant leave to take the depositions, Defendants respectfully request an opportunity to make a more fulsome showing of need.

- 1 -

11506588_1.DOC  85.1

| Mary J. Griffin | Ms. Griffin was with DHS, from 1985 through 1990, during which time she served as Deputy Director of External Affairs, among other positions. Defendants seek to depose Ms. Griffin because she was the liaison between DHS and the Legislature and in this role testified before the Legislature regarding pharmaceutical reimbursement rate issues including possibly the meaning of AWP. Additionally, Ms. Griffin communicated with manufacturers regarding proposed Legislation concerning reimbursement of pharmaceuticals. |
|---|---|
| Marianne Lewis | Ms. Lewis worked for Medi-Cal in the Contracting Section from 2000 through 2001 and in the Benefits Branch from 2001 through 2002. Defendants seek to depose Ms. Lewis because of her involvement in various bill analyses, including proposals relating to Medi-Cal's reimbursement formula for drugs and Medi-Cal's supplemental rebate program, because of her involvement with discussions regarding adding manufacturer products to the Medi-Cal Contract Drug list, and because she was a participant in the 2000 Drug Task Force. |
| Roberto Martinez | Mr. Martinez was the Chief of Medi-Cal's Rate Development Branch from 1994 through 1999 and became Chief of Medi-Cal's Policy Division in 2000 where he remained through 2005. Defendants seek to depose Mr. Martinez because he served as Medi-Cal's primary contact person for CMS regarding several State Plan Amendments ("SPAs") relating to Medicaid drug reimbursement rate changes. |
| David Mitchell | Mr. Mitchell served as the Chief of the Medi-Cal Benefits Branch from 1998 to 2000. Defendants seek to depose Mr. Mitchell due to his involvement in the March 2000 Medi-Cal Prescription Drug Cost Containment Task Force as well as his involvement in responding to a 2000 FOIA request for documents pertaining to Medi-Cal's knowledge of the relationship between AWP and pharmacy acquisition costs. |
| Mike Namba | Mr. Namba served as a Pharmaceutical Consultant in the DHS Pharmacy Policy Unit and then as the Chief of the Medi-Cal Pharmacy Contracting Unit between 2000 and 2006. Defendants seek to depose Mr. Namba regarding his involvement in negotiations with prescription drug manufacturers regarding inclusion on the Medi-Cal Contract Drug List (*i.e.*, Medi-Cal's formulary) and negotiation of state supplemental rebates, including negotiations involving the defendant manufacturers and certain of the subject drugs. |

| Michael Neff | Mr. Neff was in the Medi-Cal Contracting Section from 1990 through 1996 and served as Acting Chief of that Section from August 1994 through October 1994.  Mr. Neff was also in the Office of Medi-Cal Procurement from 1997 through 1999 and was Chief Negotiator for the Medi-Cal Discount Program in 2002.  Defendants seek to depose Mr. Neff because he was the contact person on correspondence and bill analyses regarding changes in pharmaceutical reimbursement rates and the rebate program. Additionally, Mr. Neff was the contact person for DHS's response to the 1991 California Office of the Auditor General Report "How Medi-Cal and Other Healthcare Providers Manage their Pharmaceutical Expenditures."  In November of 1990, Mr. Neff attended a meeting of the State Medicaid Directors' Association Pharmacy Technical Advisory Group, at which representatives of state Medicaid pharmacy programs requested access to AMP information "to establish a pharmacist reimbursement baseline."  California's Rule 30(b)(6) designee had limited knowledge of this meeting and indicated that Mr. Neff would be more knowledgeable. |
|---|---|
| George Pennebaker | Mr. Pennebaker served as a Pharmacy Consultant to Medi-Cal through its fiscal intermediary, EDS, for a substantial period of time, including 1993 to 2005.  Defendants seek to depose Mr. Pennebaker due to his involvement in developing "AWP," and his involvement in conducting Medi-Cal's "Advanced Billing Workshops" for California providers. |
| J. Douglas Porter | Mr. Porter served as Deputy Director of Medi-Cal Care Services from 1996 to 1999.  Defendants seek to depose Mr. Porter regarding his involvement in SPAs including those pertaining to changes in the Medi-Cal reimbursement methodology based on AWP, and due to his involvement in DHS communications with the California State Controller's Office during its audits of Medi-Cal in 1996. |
| John Rodriguez | Mr. Rodriguez served as the Deputy Director of Medical Care Services from 1985 to 1997.  Defendants had scheduled his deposition because, among other things, he signed most SPAs during that period, including several by which Medi-Cal reduced its prescription drug reimbursement rate. |
| Stanley Rosenstein | Mr. Rosenstein was a DHS employee from at least 1986 through 2005, his roles include Assistant Deputy Director of Medi-Cal Care Services from August 1987 through July 2002, Acting Deputy Director in February 2004, and Deputy Director from October of 2004 through August 2005.  He has testified as a Rule 30(b)(6) designee for DHS.  Defendants seek to depose Mr. Rosenstein because he was involved in communications with CMS regarding SPAs, including SPAs related to changes to Medi-Cal's AWP based reimbursement of pharmaceuticals. |

- 3 -

| Sandra Shewry | Ms. Shewry is the current Director of the Department of Healthcare Services (DHCS), formerly known as the Department of Health Services, and has been since 2004.  Previously, Ms. Shewry worked for DHS in the late 1980s through 1990.  Defendants seek to depose Ms. Shewry because she was involved in the analysis of various bills including those related to reducing pharmaceutical reimbursement rates, implementing MACs, and moving from AWP-based reimbursement rates to ASP-based reimbursement rates, because she was involved in communications with CMS regarding SPAs, and because she has been the signatory for the supplemental rebates between CA and various manufacturers. |
|---|---|
| Roy Takeuchi | Mr. Takeuchi was a pharmacist who worked in Medi-Cal's Pharmacy Unit from the early 1980s through 2004.  Defendants seek to depose Mr. Takeuchi because previous deponents have indicated that he was involved with setting state MACs.  Additionally, Mr. Takeuchi was listed as the contact person regarding pricing reports on a "FAQ" document provided to manufacturers seeking to have their products included on the Medi-Cal Contract Drug List. |
| Thomas Temmerman | Mr. Temmerman is a Senior Assistant Attorney General for the State of California.  Defendants seek to depose Mr. Temmerman because he attended a presentation with the relator in the late 1990s, because of his involvement with respect to the relator's original qui tam Complaint, and because of a presentation Mr. Temmerman gave to the California Pharmacists Association (CPhA) regarding fraud in Medi-Cal. |
| Virgil Toney | Mr. Toney served as the Chief of Medi-Cal policy and then as the Chief of Medi-Cal Operation from 1987 to 2001.  Defendants seek to depose Mr. Toney due to his involvement in communicating with CMS regarding SPAs, including those pertaining to changes in the Medi-Cal reimbursement methodology based on AWP. |
| Victor Walker | Mr. Walker was a pharmacist in the Pharmacy Unit of Medi-Cal from the late 1990s through 2005.  Defendants seek to depose Mr. Walker because he was involved in various bill analyses and other discussions of proposals related to reducing reimbursement for pharmaceuticals. |
| Pilar Williams | Ms. Williams has been in DHCS's Pharmacy Policy and Contracting Section since 2000.  She became Chief of that Section in 2005.  Defendants seek to depose Ms. Williams because of her involvement in efforts to move the Medi-Cal reimbursement formula away from AWP-based reimbursement and because of her role in communicating with CMS regarding SPAs. |

| | |
|---|---|
| Rule 30(b)(6) Deposition of California | On April 15, 2003, Dey brought an action against First DataBank, among other entities, in connection with First DataBank's reporting of AWPs for certain of Dey's products.[3] Following the initiation of the lawsuit and the entry of a temporary restraining order against First DataBank, First DataBank and Dey engaged in discussions aimed at resolving the dispute. Although not a party to the lawsuit, representatives of the State of California took part in these discussions since First DataBank's AWP reporting was relevant to the Medi-Cal program. In particular, one aspect of the discussions was an effort to "level the playing field" for pharmacy reimbursement (*i.e.*, to ensure, given the role that AWP plays in Medicaid reimbursement, that a change in one generic manufacturers' reported AWP would not lead to a competitive disadvantage because the AWP for other manufacturers' versions of that generic drug remained unchanged). Defendants seek a Rule 30(b)(6) deposition of a representative of California concerning California's understanding of the "level playing field" concept, California's efforts, if any, to "level the playing field," correspondence and communications between California and other governmental entities concerning this concept, and California's participation in the First DataBank lawsuit discussions. |

## II.     Representatives of the Plaintiff Relator Ven-A-Care

Zachery Bentley
John Lockwood
T. Mark Jones
Luis Cobo

## III.     Possible Third-Party Witnesses

| Possible Deponents | Reason(s) for Taking the Deposition |
|---|---|
| Rule 30(b)(6) Deposition of the California Controller | Documents produced by DHS show that, in 1996, the California State Controller's Office did an audit of Medi-Cal and recommended several changes, including to the reimbursement rate for pharmaceutical products, because AWP overstated pharmacists acquisition cost. Defendant seek a Rule 30(b)(6) deposition of the State Controller's Office regarding, among other things, the audits it did of Medi-Cal and what was communicated to Medi-Cal as a result of those audits. |

---

[3] *Dey, L.P. v. First DataBank, Inc., et al.*, Case No. 26-21019 (Cal. Super. Ct., Napa Cty.)

- 5 -

| Walter Barnes | Mr. Barnes worked at DHS before joining the California State Controller's Office. Documents suggest that he had significant involvement in the Controller's 1996 audit of Medi-Cal. In the event that Mr. Barnes is not named as the State Controller's Office Rule 30(b)(6) designee, Defendants might seek his deposition regarding his involvement in, among other things, the 1996 Controller's audit. |
|---|---|
| Rule 30(b)(6) Deposition of the California Department of General Services | The California Department of General Services purchases pharmaceutical products for various California state agencies (*e.g.*, the Department of Corrections) pursuant to a single contract. Dr. Gorospe, California's primary Rule 30(b)(6) designee recalls acquiring drugs under that contract in the early 1980's before coming to work at DHS. While he recalls acquiring drugs at a discount-off AWP, he cannot quantify the discount. DHS also used the Department of General Services' contract from time-to-time as a benchmark for its own reimbursement rate. Accordingly, Defendants seek discovery of the rates at which Department of General Services was able to acquire drugs over time and what information about those rates, if any, it shared with DHS either directly or through Dr. Gorospe. |
| Rule 30(b)(6) Deposition of the California Legislative Analyst's Office | The California Legislative Analyst's Office is an independent "watch-dog" that serves the California Legislature. It has from time-to-time studied Medi-Cal drug reimbursement including in 1991. Defendants seek discovery of its independent reviews of Medi-Cal drug reimbursement, especially to the extent that the results of those reviews were shared with the Legislature in connection with its consideration of changes to the Medi-Cal prescription drug reimbursement rate. |
| Rule 30(b)(6) Deposition of the California Pharmacists Association | Numerous documents produced by DHS show successful lobbying efforts by the California Pharmacists' Association is avoiding Medicaid pharmacy reimbursement rate reductions. Defendants seek discovery into, among other things, those lobbying efforts. |
| Carlo Michelotti | Throughout most of the relevant time, Mr. Michelotti served as the Executive Director of the California Pharmacists' Association. In the event that Mr. Michelotti is not named as the Rule 30(b)(6) designee on behalf of the California Pharmacists' Association, Defendants anticipate seeking his testimony regarding the Association's lobbying while he served as its Executive Director. |
| Rule 30(b)(6) Deposition of the California Public Employees' Retirement System | Several documents that DHS has produced show that DHS used the California Public Employees' Retirement System's ("CALPERS") reimbursement rates form time-to-time as benchmarks for its own reimbursement rates. Accordingly, Defendants seek discovery of the rates at which CALPERS reimbursed drugs over time and what information about those reimbursement rates, if any, it shared with DHS. |

- 6 -

| Rule 30(b)(6) Deposition of the California State Auditor General | Among the documents that DHS has produced in discovery to date is the California Office of the Auditor General's 1991 Report "How Medi-Cal and Other Healthcare Providers Manage their Pharmaceutical Expenditures." Defendant seek a Rule 30(b)(6) deposition of the State Auditor General's Office regarding, among other things, the audits it did of Medi-Cal and what was communicated to Medi-Cal as a result of those audits. |
|---|---|
| First DataBank | First DataBank contracted with EDS, California's fiscal agent, to provide the pricing information used in processing Medicaid claims for pharmaceutical reimbursement. Defendants are negotiating a stipulation with First DataBank that may obviate the need for formal discovery, but in the event that negotiation is unsuccessful, Defendants may need discovery of First DataBank at least as to its pricing files. |
| Myers & Stauffer | Myers & Stauffer is an independent accounting firm that performed two very detailed studies of pharmacy acquisition cost and the adequacy of Medi-Cal's reimbursement rate in California in 2002. Defendants have obtained copies of these studies in discovery. Furthermore, Myers & Stauffer has returned its work-papers to the State, which is in the process of producing them to Defendants. Once Defendants receive copies of the work-papers, they will decide whether a deposition of Myers & Stauffer would be productive. |
| Rule 30(b)(6) Deposition of the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, Division of Medicaid, Region XI Regional Office | This subdivision of the Centers for Medicare and Medicaid Services ("CMS") is the federal body that interacts directly with the Medi-Cal program. Defendants seek a Rule 30(b)(6) deposition of this entity concerning, among other things, CMS's approval of Medi-Cal's pharmaceutical reimbursement methodologies. |
| Rule 30(b)(6) Depositions of AmerisourceBergen Corp., Cardinal Health, Inc., and McKesson Corp. | AmerisourceBergen, Cardinal Health, and McKesson are drug wholesalers. Defendants seek a Rule 30(b)(6) deposition of these entities concerning, among other things, their provision of wholesale pricing information to Medi-Cal. |
| Rule 30(b)(6) Deposition of Electronic Data Systems, LLC | Electronic Data Systems ("EDS") is Medi-Cal's fiscal agent, and processes reimbursement claims submitted by Medi-Cal pharmacy providers. Defendants seek a Rule 30(b)(6) deposition of EDS concerning, among other things, the claims data Medi-Cal has produced to support its claims in this action. |

- 7 -

11506588_1.DOC   85.1