# Exhibit 24
# Part A

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Amended Exhibit 24 to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | |
| THIS DOCUMENT RELATES TO: | ) ) | MDL No. 1456 |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS; | ) ) ) ) | Civil Action No. 01-12257-PBS Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; and | ) ) ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS. | ) ) ) ) ) | |

**DECLARATION OF MYERS and STAUFFER LC**

I, Kristopher Knerr, do hereby declare as follows:

1.      I am currently a member of Myers and Stauffer LC (Myers and Stauffer).  Except to the extent specifically noted, I have personal knowledge of the matters stated herein and speak on behalf of Myers and Stauffer with regard to the information contained in this declaration.

2.      I have been a Certified Public Accountant since 1993, and I have been personally involved in a supervisory capacity in the efforts described herein from September 2007 through the present.

3.      Myers and Stauffer is a firm that provides professional accounting, consulting, data management and analysis services to state and federal agencies managing government-

sponsored health care programs.  The firm has extensive experience assisting State Medicaid agencies with reimbursement issues.  Myers and Stauffer's practice includes working with public health care agencies on various health care related projects, and with the Centers for Medicare & Medicaid Services (CMS) on projects involving the Medicare and Medicaid programs.

4.     On September 14, 2007, Myers and Stauffer was retained by the United States Department of Justice (DOJ) through a subcontract arrangement with Lockheed Martin, and subsequently under a contract with DOJ, to provide research and consulting services in connection with the above-captioned litigation. Myers and Stauffer's instruction from DOJ was to provide support to the government's damages expert, Mark Duggan, Ph.D.  Professor Duggan instructed Myers and Stauffer to research, obtain and document drug reimbursement methodologies of State Medicaid agencies from 1991 to the present, and provide summaries of that information to assist him with his calculations of damages.

5.     The summaries contained in Attachment 1 are true and accurate summaries of the information Myers and Stauffer compiled concerning the drug reimbursement methodologies used by 48 State Medicaid agencies[1] and the District of Columbia (which we refer to in the remainder of this declaration as a "State").  The supporting documentation upon which Myers and Stauffer has relied in preparing these summaries has been provided to DOJ.  DOJ has advised Myers and Stauffer that this information has been or is being produced to the Defendants.  The discussion of State Medicaid drug reimbursement programs in this declaration is limited to the 49 states identified in Attachment 1, hereto.

---

[1]     Attachment 1 does not contain summaries of the drug reimbursement methodologies used by the states of Arizona or Ohio.

2

6.      Each summary in Attachment 1 generally describes the Medicaid prescription drug reimbursement methodology in chronological date order.  The source of the information contained in the summaries is indicated by the color of the font:  blue represents information obtained from Medicaid State Plan Amendments and related correspondence; green represents information obtained from State 30(b)(6) and other depositions and exhibits, documents produced during discovery, and declarations made by state officials and others; black represents information obtained from other published sources, such as statutes, regulations, state provider manuals and bulletins; purple represents information obtained in direct communications with State Medicaid agency officials; and red represents information obtained from the National Pharmaceutical Council (NPC) *Pharmaceutical Benefits Under State Medical Assistance Programs* publications for 1990 through 2005/2006.  In the following paragraphs, the information-gathering process Myers and Stauffer used to prepare these summaries, and the nature of the underlying information is described.

Preparation of the Summaries

7.      Before Myers and Stauffer began gathering and reviewing information about State Medicaid drug reimbursement methodologies, Professor Duggan instructed Myers and Stauffer to take measures to ensure the reliability of the information gathered and the summaries that Myers and Stauffer would prepare based on that information.  The measures included using published sources of industry and government information, written communications with government officials, documenting the sources of information, and, where information was obtained through oral communications, recording the substance of those communications.  DOJ has advised Myers and Stauffer that this information has been produced to the Defendants.

3

8.      Myers and Stauffer began the process of gathering information by obtaining state-specific materials from DOJ.  DOJ advised Myers and Stauffer that this information was produced to DOJ by CMS (formerly known as the Health Care Financing Administration (HCFA)).  Included among these documents were "State Medicaid Plans" (State Plans), which lay out the design of each State's Medicaid program in a standard format. CMS reviews and approves State Plans, and all subsequent changes to State Plans.  Formal changes to a State Plan are contained in what are known as State Plan Amendments (SPAs).  DOJ advised Myers and Stauffer that approved SPAs in the possession of CMS marked with Bates-stamped numbers bearing the prefixes "HHD" and "HHC" were provided by CMS to DOJ, and were subsequently produced by DOJ to Defendants and to Myers and Stauffer.  Myers and Stauffer relied on SPA documents if the SPA had been approved by CMS/HCFA, which was normally indicated by an "approved" date in the footer of the SPA documents.  A list of the specific SPA pages bearing the prefixes "HHD" and "HHC" and relied upon by Myers and Stauffer is set forth in Attachment 2 to this declaration.

9.      Myers and Stauffer also reviewed copies of annual publications of the NPC *Pharmaceutical Benefits Under State Medical Assistance Programs*, from 1990 through 2005/2006.  These publications contain information about state Medicaid pharmacy benefits, including information concerning the reimbursement methodology of each state.

10.     During 2008 and 2009, Myers and Stauffer also contacted Medicaid officials to obtain additional information concerning drug reimbursement methodologies and to review and confirm the accuracy of the state drug reimbursement methodology summary prepared for each state.  During these communications, Myers and Stauffer provided the Medicaid officials with

4

the State's drug reimbursement methodology summary for their review and approval.

Communications were made by telephone, e-mail, facsimile, and First Class mail.  Myers and

Stauffer maintained written records of these communications, which were provided to DOJ.

DOJ advised Myers and Stauffer that these records were produced to the Defendants.

11.     In June 2008, in connection with the production of the expert report of Professor

Duggan in *United States ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories*,

Civil Action No. 06-11337-PBS ("the *Abbott* case"), Myers and Stauffer prepared and provided

summaries of the drug reimbursement methodologies.  The summaries were similar to those in

Attachment 1, except that the time period covered in those summaries extended only through

2001, and as described in paragraphs 12 and 13 below, the summaries in Attachment 1 have been

further updated.  Myers and Stauffer provided these summaries to DOJ, and DOJ advised Myers

and Stauffer that these summaries were produced to the Defendants.

12.     After June 2008, Myers and Stauffer made updates to the summaries, in

preparation for Professor Duggan's anticipated reports in *United States of America ex rel. Ven-a-*

*Care of the Florida Keys, Inc. v. Dey, Inc.*, Civil Action No. 05-11084-PBS ("the *Dey* case"),

and *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., v. Boehringer*

*Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS ("the *Boehringer/ Roxane* case").

Myers and Stauffer updated the summaries to include time periods through the present and

further documented the methodology descriptions based on communications with State Medicaid

officials.  Myers and Stauffer also reviewed depositions of some State Medicaid officials taken

in AWP litigation provided to Myers and Stauffer by DOJ, including related deposition exhibits.

In addition, Myers and Stauffer reviewed documents that were provided by DOJ, and that Myers

and Stauffer was advised had been produced by states pursuant to subpoenas issued by one or more of the Defendants in the above-captioned cases. These updated versions of the summaries were provided to DOJ in January 2009 in connection with the expert report of Professor Duggan in the *Dey* case, and in February 2009 in connection with the *Boehringer/Roxane* case. DOJ has advised Myers and Stauffer that these summaries, and the supporting documentation, were produced to the Defendants.

13.    Between March 2009 and the date of this declaration, in conjunction with plaintiff attorneys who attended depositions of State Medicaid officials, Myers and Stauffer made additional updates to the summaries based on further review of deposition testimony and documents obtained through subpoenas, as described above. In addition, for some states Myers and Stauffer obtained and reviewed declarations, regulations and statutes that were provided to Myers and Stauffer by DOJ, and obtained policy manuals and provider bulletins and other pertinent documents available on State Medicaid agency Web sites. These additional updates to the drug reimbursement methodology summaries consist primarily of changes to the color of the font and additional footnote citations to specific pages of deposition testimony, litigation documents, declarations, or statutes and/or regulations. Myers and Stauffer has provided these updated summaries to DOJ. DOJ has advised Myers and Stauffer that these summaries and any additional supporting documentation relied upon in preparing the summaries are being produced to the Defendants contemporaneously with the filing of this declaration.

14.    Between September 14, 2007 and June 30, 2009, Myers and Stauffer has spent more than 1,900 hours researching State Medicaid pharmacy reimbursement methodologies, preparing summaries of the methodologies, verifying the accuracy of the information, preparing

updates to the summaries and creating a binder for each state which contains documentation supporting each field on the respective summaries.

15.     By way of example, Attachments 3 and 4 to this declaration contain supporting documentation relied upon by Myers and Stauffer for the States of North Carolina and Louisiana. The supporting documentation that Myers and Stauffer relied upon for all other states has been provided to DOJ.  DOJ has advised Myers and Stauffer that this information has been produced to the Defendants.  Should the Court request, a copy of the supporting documentation for all other states will be made available.

Description of the Summaries

16.     In paragraphs 17 – 23 below, Myers and Stauffer provides background information about the summaries.  In paragraph 24 below, Myers and Stauffer summarizes information from the summaries included as Attachment 1 to this declaration, to provide an overview of the Medicaid reimbursement methodologies of the 49 states.

17.     In each summary included as Attachment 1, the parameters of the prescription drug reimbursement methodology are described in row and column format, so that the effective time period and chronological changes are presented.  The first two columns at the left indicate the effective time periods applicable to the methodology parameters that are described in the columns to the right.

18.     The first several columns to the right of the time period, under the heading "Lower of Reimbursement Methodology" or "Lesser of Reimbursement Methodology" describe a feature that is followed by all but one (1) of the states identified in Attachment 1.  Forty-eight

(48) of forty-nine (49) states[2] currently reimburse pharmacy providers for prescription drugs under a "lower of" algorithm in which payment is made based, at least in part, on the lower of (a) the State's estimated acquisition cost (EAC) plus a dispensing fee, (b) the pharmacy's usual and customary charge (U&C) (sometimes referred to as the "billed amount"), or (c) the Federal Upper Limit (FUL)[3] plus a dispensing fee.  Many states also include other pricing components as described in paragraphs 19, 20 and 21.

19.     The second sentence of paragraph 18 above is true for the entire period except as to six (6) states.  Michigan used Actual Acquisition Cost with a limit based on AWP instead of EAC before September 1, 1995.  Delaware also used Actual Acquisition Cost before changing to EAC effective May 1, 1997.  In addition, Alaska, New York, Arkansas, and Massachusetts, each for specific periods of time, did not include the EAC in their "lower of" algorithms when the drug was subject to a FUL.

20.     Many states (the number differs depending on the time period) add to the above-described algorithm a State Maximum Allowable Cost (State MAC) plus a dispensing fee.  A State MAC is an upper limit established by the state, similar to the FUL, but often determined based on criteria different than the FUL.  States that utilize a State MAC reimburse based, at least in part, on the lower of (a) EAC plus a dispensing fee, (b) U&C, (c) the FUL (if any) plus a dispensing fee, or (d) the SMAC plus a dispensing fee.[4]

---

[2]     As of 1/30/2008, Indiana removed FUL pricing from its reimbursement methodology.

[3]     FULs are established by CMS under that agency's FUL program, described at 42 C.F.R. § 447.332.

[4]     Hawaii does not apply the SMAC if a FUL applies.

8

21.     Twenty-nine (29) states also have used the "DOJ Price" plus a dispensing fee as part of their reimbursement methodology.  The term "DOJ Price" refers to prices provided in 2000 by the DOJ and the National Association of Medicaid Fraud Control Units and published by First DataBank.  For a few of these twenty-nine (29) states, the DOJ prices were used for only a short period of time.  For another three (3) states, a 2001 report of the HHS Office of Inspector General[5] identified the state as using the DOJ prices, but Myers and Stauffer was unable to confirm this with state agency staff.  All of the states that used the DOJ Prices used them as part of their "lower of" reimbursement methodology.

22.     Further to the right in the methodology summaries is a column entitled, "Physician Override (DAW/Brand Medically Necessary)."   This column indicates the feature that requires the pharmacist to dispense the generic version of a brand-name drug unless the prescribing physician expressly writes on the prescription "Brand Medically Necessary," "Dispense as Written," "DAW," "no substitution," or something similar to override the presumption in favor of a generic version.

23.     Further to the right in the methodology summaries is a column entitled, "Dispensing Fee."  All states provide for payment of a dispensing fee where reimbursement is based on EAC, FUL, SMAC or the DOJ prices, if applicable.

24.     Following is a summary of information aggregated from the drug reimbursement methodologies for the forty-nine (49) states:

a.  Forty-nine (49) states have used AWP during at least some of the period covered by the summary as a component for determining EAC.  Forty-two

---

[5]     HHS OIG, *Medicaid's Use of Revised Average Wholesale Prices*, OEI-03-01-00010, September 2001.

(42) states have used AWP during the entire time period covered by the summary as a component for determining EAC.

b.   Of the forty-nine (49) states, four (4) states used both AWP and Wholesale Acquisition Cost (WAC) during the entire time period covered by the summary as components for determining EAC.  An additional eight (8) states used WAC during at least some of the period covered by the summary as a component for determining EAC.

c.   All forty-nine (49) states used First DataBank for part of the period covered by the summary.  Of these, forty-three (43) states currently use First DataBank, or First DataBank together with MediSpan or Redbook, as their source for drug pricing.  Of the remaining six (6) states, five (5) states currently use MediSpan as their source for drug pricing, and one (1) state currently uses Redbook as its source for drug pricing.  During the time periods presented in Attachment 1, some states have changed the compendia they use for their prescription pricing, and such cases are noted on the respective summaries.

d.   For prescription drugs for which a FUL or SMAC has not been established, for all periods covered by the summary, forty-seven (47)[6] states have implemented a "lower of" methodology that provides for payment based in part on the lower of EAC plus a dispensing fee, or U&C.

---

[6]      The limited exceptions are Delaware and Michigan, which used Actual Acquisition Cost (AAC) instead of EAC prior to May 1, 1997, and September 1, 1995, respectively.

e.   For prescription drugs for which a FUL and/or SMAC has been established, except as noted below, all forty-nine (49) states reimburse based on the lower of the EAC (or AAC as noted above), the FUL, SMAC, or U&C.  This has been true for the entire time period covered except that (i) Hawaii does not use the SMAC if a FUL is effective, (ii) Alaska (prior to May 2003), Arkansas (beginning in 2002), Massachusetts (until 1995) and New York (prior to July 2008) reimbursed based on the FUL even if the EAC was lower; and (iii) Indiana (beginning January 30, 2008) removed the FUL from its reimbursement methodology.  Twenty-nine (29) states add to the "lower of" reimbursement methodology the DOJ prices referenced in paragraph 21 above, for at least some of the time period covered by the summary.

f.   Forty-two (42) states have implemented a SMAC program during some of the time period covered by the summary.  Of these, only twenty-two (22) states have utilized a SMAC program during the entire time period. Fifteen (15) states commenced their SMAC programs on or after January 1, 2000.

I swear under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge. Executed this _23_ day of July, 2009.

Kristopher Knerr

Myers and Stauffer LC

11

**Attachment 1**

Myers and Stauffer Summaries of the Drug Reimbursement

Methodologies of the 49 States (48 States and the District of Columbia)

State of: __ALABAMA__

Medicaid Pharmacy Reimbursement Methodology Summary

### Legend/Prescription Drugs

| Effective Time Period | "Lesser of" Reimbursement Methodology [1] | | | | | Alabama Estimated Acquisition Cost (AEAC) [2] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | Selected Price — Pay "Lesser of" | | | DOJ Pricing | Brand/Generic | Schedule II Drugs | | | Retail | Institution | Compound |
| | | FUL/FAC | EAC | AFAC[3]/AMAC[7] | | | | | | | | |
| 1/1/1991 - 9/30/1991 | Y | Y | Y | N | | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5,11] | | | | $3.75[10,12] | | |
| 10/1/1991[10] - 5/31/1992 | Y | Y | Y | N | | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5,11] | Lower of U&C, AWP | | | $5.40[10] | | |
| 6/1/1992 - 5/18/1997 | Y | Y | Y | N | | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5,11] | Lower of U&C, AWP | | Y | $5.40[10] | $3.99[10] | $5.40[9] |
| 5/19/1997 - 4/30/2000 | Y | Y | Y | Y | | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5,11] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40[9] |
| 5/1/2000 - 1/9/2003 | Y | Y | Y | Y | Y[8] | WAC + 9.2%[4] or AWP-10.2%; Direct Price[5,11] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40[9] |
| 1/10/2003 - 1/29/2004 | Y | Y | Y | Y | Y | Pay lower of: WAC + 9.2%[6] or AWP-10.2%; Direct Price[5,11] | Lower of U&C, AWP | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40[9] |
| 1/30/2004 - Present | Y | Y | Y | Y | Y | Pay lower of: WAC + 9.2%[6] or AWP-10.2%[11] | | 65th percentile of EAC pricing | Y | $5.40[10] | $3.99[10] | $5.40[9] |

■ Data provided by Alabama Medicaid State Plan Amendments

■ Data taken from Mary A. Finch depositions 5/23/07, 5/24/07, 08/08/07, 08/09/07

■ Data provided by Pharmacy Manuals and Provider Bulletins

■ Data provided by Alabama Medicaid

[1] Reimbursement is based on the lesser of the Selected Price and Usual & Customary; and Selected Price is based on the lesser of the FUL/FAC (Federal Upper Limit also referred to as FAC), the EAC, and the SMAC/AMAC. (5/23/07 deposition pp. 244-246, 335-338, 351-357.) DOJ pricing was added to the lesser of methodology later (deposition p. 674.)

[2] Per deposition 5/23/07 p. 61, Alabama has always contracted with First DataBank for pricing information.

[3] Per TN #98-05 and #92-07, effective 6/1/1992, State MAC referred to as the Alabama Upper Limit (AFAC)   (HHD137-0174)

[4] Beginning in 1990 and through 2003, pricing logic applied WAC or AWP according to **which was more recent**. If both were equally current, then WAC + 9.2% was used (5/23/08 deposition p.240-246, 261).

[5] Direct price begin date is unknown, but was discontinued sometime in 2003 (5/23/08 deposition p.331-333).

[6] Beginning in 2003, reimbursement was based **on the lower of** WAC + 9.2% and AWP - 10%  (5/23/08 deposition p.244-245).

[7] The State MAC program has been in place since May of 1997 (5/23/07 deposition p.241). An AMAC is an extension of the State MAC program in which a drug ceiling was applied to a group of drugs that don't qualify for the FUL or State MAC program.  Its use has been limited to H2 antagonists (drugs like Zantac and Tagamet that are used for GERD) (5/23/07 deposition p.355-357).

[8] DOJ pricing was adopted sometime in 2000 and remains in effect through the present. DOJ prices for hemophilia drugs were discontinued on 1/10/03. (05/24/07 deposition p. 673-676)

[9] Per Provider Insider dated February 2/25/08, compounded drugs may be billed on one claim for up to 25 ingredients and are eligible for an additional $0.25/minute reimbursement through a Prior Authorization process. One dispensing fee will be paid based on the claim total.  Prior to that time, compounded drug claims were billed per each ingredient and were still eligible for the compounded time through PA (see Pharmacy Manuals dated April 2005 and January 2006.)

[10] 10/1/1991 effective date per deposition 5/24/07 p. 511-514 and Ex. 9; $5.40 dispensing fee per deposition 5/24/07 p. 476.   Between 8/3/87 and 5/14/04, there was an additional management fee paid for Clozaril/clozapine.  The amount of the fee varied from $3.00-$49.00 throughout those years.

[11] Pharmacy tax imposed by state law of $0.10 per claim for every prescription over $3.00, used to fund the dispensing fee (Finch 05/24/07, p. 436-437, 476).

[12] Per Finch 5/24/07 deposition pp. 512-514, dispensing fee prior to 10/1/91 was $3.75.

07/21/09

State of:   **ALASKA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | For FUL Drugs | | For Non-FUL Drugs | | | | | | | |
| | Pay Lower of [13] | | Pay Lower of | | | | | | | |
| **Effective Time Period** | Amount Billed/Usual and Customary [11] | FUL | EAC | DOJ Pricing | SMAC | Amount Billed/Usual and Customary [11] | Estimated Acquisition Cost (EAC) Non-FUL/Brand | | Dispensing Fee | Additional Compounding Rate | Other |
| 2/1/1989 - 4/30/2000 | Y [12] | Y | Y [4] | | N | Y [12] | AWP - 5% | Y | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. [6] | 3, 5 |
| 5/1/2000 - 9/30/2000 | Y [12] | Y | Y [4] | Y [9] | N | Y [12] | AWP - 5% [9] | Y | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. [6] | 3, 5 |
| 10/1/2000 - 5/X/2003 | Y [12] | Y | Y [4] | Y [9] | N | Y [12] | AWP - 5%; 100% AWP [9] | Y | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. [6] | 3, 5, 8 |

| Pay Lower of for All Legend Drugs [13] | | | | | Generic/Brand | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/X/2003 - 12/31/2003 | Y [12] | Y | Y [4] | Y [9] | N | | AWP - 5%; 100% AWP [9] | Y | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. [6] | 3, 5, 7, 8 |
| 1/1/2004 - 9/22/2004 | Y [12] | Y | Y [4] | Y [9] | N | | AWP - 5%; 100% AWP [9] | Y | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. [6] | 3, 5, 7, 8, 10 |
| 9/23/2004 - Present | Y [12] | Y | Y [4] | | N | | AWP - 5% | Y | $3.45 - $11.46 [1] | $5.75 per 15 min.[2]; IV $10.00 per 15 min. [6] | 3, 5, 7, 8, 10 |



■ Data taken from Alaska Medicaid State Plan Amendments

■ Data provided by Campana deposition taken 8/21/08 and exhibits

■ Data provided by David Campana, Manager Pharmacy Program

[1] Per TN #89-2   (HHC020-1268)  the dispensing fee is based on the result of surveys of Alaska pharmacies' cost of dispensing prescriptions. For each pharmacy, the dispensing fee will be determined using the following formula: $23,192 is added to the result of multiplying the annual number of prescriptions by 5.070. To this number is added the result of multiplying the annual number of Medicaid prescriptions by 12.44. From this number is subtracted the result of multiplying the total store volume expressed in square feet by 2.103. The resulting number is then divided by the total annual number of prescriptions.  To the result of this division is added $0.73. However, the division will not pay a dispensing fee less than $3.45 or more than the 90th percentile of all fees determined under the formula. New pharmacies which do not have the information available to establish a fee will be assigned the statewide average fee until a year of data is available. (7AAC 43.591(g) and Campana Ex. DCUS 002)

[2] Per TN #89-2  (HHC020-1268)  the payment for compounding prescriptions will be the sum of the costs of each of the ingredients as established above, plus the dispensing fee, plus an additional compounding rate of $5.75 for each 15 minutes required to compound the prescription.  (AWP-AK-00000157, 7AAC 43.591(f) and Campana Ex. DCUS 002)

[3] Per TN #89-2 (HHC020-1268)  reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to the recipient. Handling charges are included in the dispensing fee and are not directly reimbursed. If a pharmacy does not provide dispensing fee data as requested by the division, the division will either pay that pharmacy the minimum dispensing fee ($3.45) or sanction the pharmacy.

[4] Per TN #89-2 (HHC020-1269)  the average wholesale price published by First DataBank, as updated monthly, is used in the calculation of pharmacy reimbursement; except for payments to providers outside of Alaska, which will be made at the Medicaid rate of their state. For Canadian providers, payments will be the lesser of the normal charge to the typical walk-in, cash paying customer or the lowest total payment made for the same drug to a provider in Alaska. (7AAC 43.591(j) and Campana Ex. DCUS 002)

[5] Per AWP-AK-00000159, a provider dispensing drugs in unit doses to a resident in a nursing home or other long-term care facility will receive the highest dispensing fee paid in Alaska under (g) of this section for each unit dose prescription, refill, or dosage change.   $11.46 dispensing fee is paid once monthly.

[6] Per AWP-AK-00000159-160 and 7AAC 43.591(l) and Campana Ex. DCUS 002, a provider preparing and dispensing pharmaceuticals that are commonly described as high technology drugs will be reimbursed the EAC of the drug, plus the highest dispensing fee paid in Alaska under (g) of this section, plus a preparation fee of $10.00 for each 15 min. or portion thereof reasonably required to prepare these drugs in a sterile or protective environment;  from 2/1989 through present.

[7] Per HHD074-0101 and TN #01-001 et al., payment is restricted to drugs supplied by manufacturers who have a signed national agreement or an approved existing agreement under the Medicaid Drug Rebate program of Sec. 1902(a)(54) and Sec. 1927 of the Act, and the only drugs supplied by such manufacturers that are not reimbursed are those excluded under Attached Sheet to Attachment 3.1A.

[8] Per TN #00-007  (HHD074-0005)  "reimbursement will be made to the provider for reasonable and necessary postage or freight costs incurred in the delivery of the prescription from the dispensing pharmacy to a recipient in a rural area. Cross-town postage or delivery charges are not covered. Handling charges are included in the dispensing fee and are not directly reimbursed.

[9] Per DCUS Ex. 9 and Campana deposition pp. 46-48 and 286, drugs whose pricing is established by the average sale price (as provided by the U.S. Department of Justice) were reimbursed at AWP - 5% until 9/12/2001 and then at 100% AWP from 9/13/2001 through 9/22/2004.

[10] Per TN # 04-01 effective 1/1/04, Alaska will begin negotiating supplemental rebates in addition to, and separate from, Federal rebates. CMS authorized the State of Alaska to enter into the Michigan multi-state pooling agreement. The Amendment to the Supplemental Drug Rebate Agreement was submitted to CMS on April 13, 2004 and has been authorized by CMS.

[11] The Usual and Customary field is defined in the NCPDP 5.1 standard data element dictionary as the "Amount charged cash customers for the prescription exclusive of sales tax or other amounts claimed".

[12] Per deposition pp. 58-60 and 84-85 and Campana Ex. 060 ( 7 AAC 43.040), Alaska has a most favored nation clause, which was adopted 8/7/96 and changed to present form 2/1/1997.

[13] Per deposition pp. 44-46, before May 2003, if an FUL was in place, Alaska paid lower of FUL and U&C and would not consider EAC.  Beginning May 2003, Alaska began paying FUL drugs using the same "lower of" formula as for non-FUL brand drugs; i.e. lower of: FUL, U&C,or EAC.

**State of:** __ARKANSAS__

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Prescription/Legend Drugs | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Costs [11] | | | | | |
| | SUL | FUL | Usual and Customary | EAC [11] | Brand | Generic | | EAC | State Upper Limit/FUL | |
| 8/1/1990 [2] - 6/30/1991 | Y [2] | Y [2] | Y [2] | Y [2] | AWP - 10.5% [2] | AWP - 10.5% [2] | Y [2] | $4.16 + (.093) EAC [2] | $4.16 + (.093) EAC [2] | 10 |
| 7/1/1991 [4] - 6/30/1999 | Y [4] | Y [4] | Y [4] | Y [4] | AWP - 10.5% [4] | AWP - 10.5% [4] | Y [4] | $4.51 + (.103) EAC [4] | $4.51 + (.103) CFA/SUL [4] | 10 |
| 7/1/1999 - 4/27/2000 | Y [5] | Y [1] | Y | Y | AWP - 10.5% [3] | AWP - 10.5% [3] | Y | $5.51 [2] | $5.51 [2] | 10 |
| 4/28/2000 - 5/7/2000 [6] | Y [5] | Y [1] | Y | Y | AWP - 17.3% Chains [6]  AWP 10.5% independent | AWP - 17.3% Chains [6]  AWP -10.5% independent | Y | $5.51 [2] | $5.51 [2] | 10 |
| 5/8/2000 [6] - 2/28/2002 | Y [5,7] | Y [1,7] | Y | Y | AWP - 10.5% | AWP - 10.5% | Y | $5.51 [2] | $5.51 [2] | 10 |
| | **Pay the lower of U&C and SUL/FUL if there is one, OR the lower of U&C and EAC [9]** | | | | | | | | | |
| 3/1/2002 - Present [12] | Y [7] | Y [7] | Y | Y | AWP - 14% | AWP - 20% | Y | $5.51 [2,8] | $5.51 [2,8] | 10 |

■ Data taken from Arkansas Medicaid State Plan Amendments

■ Data taken from Bridges 12/10/08 Deposition and Exhibits and documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

[1] Per TN #99-03, the Federal upper limit (FUL) standard that has been adopted for certain multiple source drugs identified in the State Medicaid Manual, Part 6, is based on an aggregate payment equal to an amount that includes the ingredient cost of the drug calculated according to the formula described as follows: The FUL is an amount equal to 150% of the published price for the least costly therapeutic equivalent (using all available national compendia). The aggregate, rather than each individual drug identified by HCFA will be less than or equal to the HCFA defined multiple source cost listed in 42 CFR 447.332.  (HHD076-0017, HHD076-0015)

[2] Pricing information and effective date established in Exhibit 004; BMN established in ARK00002769 effective 10/1/85.

[3] Per TN #99-03, reimbursement for ingredient cost of these drugs is limited to the State generic upper limit.  (HHD076-0019)

[4] Pricing information and effective date established in Ex. 005, Ex. 006, ARK00002769 and 3551, dep. p. 39. Dispensing Fee capped at $20 from 07/01/91 to 6/30/1999. (Dep. pp. 41-43, 231, Ex. 006 p. ARK00003570)

[5] Per TN 99-03, effective 07/01/1999, Arkansas Medicaid identifies certain generically available drugs and places an upper limit of reimbursement on these drugs.  These are generic drugs not currently listed on the HCFA Upper Limit List.  Acquisition costs on these generically available brands are obtained from multiple sources.  The highest acquisition cost plus a percentage is used to set the State Upper Limit.  Reimbursement for the ingredient cost of these drugs is limited to the State generic upper limit.  (HHD076-0017, HHD076-0015)

[6] Per TN #99-23 (HHD076-0015) and TN #00-05, the ingredient cost for a chain-owned pharmacy (supplier owns eleven or more retail pharmacies nationally) is set at AWP minus 17.3%.  Per deposition pp. 48-49 and 53, this was only in system for a few days before being discontinued due to a lawsuit.

[7] Per TN 01-07 effective 08/01/2001, Arkansas Medicaid identified certain brand and generically available drugs and places an upper limit on these drugs. Acquisition costs on these drugs are obtained from multiple sources. Depending on the variance, either the highest acquisition cost or an average of the acquisition costs is obtained and a percentage applied to determine a state upper limit. Those drugs identified administratively, judicially or by a federal agency as having an AWP far exceeding the actual acquisition cost, and whose average sales price is presented to the state, will be subject to a state upper limit set by reference to the average acquisition cost. Reimbursement for the ingredient cost of these drugs is limited to the lesser of the state upper limit, FUL or the provider usual and customary. The State may deviate from the lesser of payment in the event that the State determines under a HCFA approved separate/supplemental drug rebate agreement, that in the aggregate the expenditures for these drugs agreed to in the separate/supplemental rebate agreement would be reduced. Payment for brand name drugs and all other drugs for which a specific limit has not been established is limited to the lesser of the provider's U&C charge or the established formula (AWP - 10.5%).

[8] Per TN 02-07 effective 03/01/2002, an additional differential dispensing fee of $2.00 shall be given to pharmacy providers when a generic that does not have a State or federal upper limit is dispensed.  (Ex. 013)

[9] Initially state developed upper limits for drugs that did not have FULs. Prior to 3/2002, the State always paid the lower of U&C, EAC, and SUL/FUL. Beginning 3/2002, State always paid the lower of U&C or SUL/FUL if there is one, or the lower of U&C or EAC. (Verified in Ex. 003 and deposition pp. 31-33, 58-61, and Ex. 014 pp. 2163-2164)

[10] The ingredient cost per NDC has been the same for all NDC's regardless if they are billed in a compound or as separate ingredients. With the HIPAA conversion, a compound field was developed that allowed multiple ingredients of one compound to be billed as one claim. One DF was paid per claim. Prior to the HIPAA conversion, if a pharmacy billed for a compound, the state really could not differentiate that claim as a compound. Each payable ingredient could be billed as a separate Rx and a DF applied to each Rx. (Verified in Ex. 003 and deposition pp. 31-33)

[11] State has always used First DataBank for pricing. (Verified in Ex. 003 and deposition pp. 31-33, 44, 61)

[12] Pricing established on 3/1/2002 with TN #AR-02-07 and continues through present per deposition p. 58.

State of:   **CALIFORNIA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

### Legend/Prescription Drugs

| Effective Time Period | "Lower of " Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC) [4] | | SMAC Description | Physician Override [6] (DAW, Brand Medically Necessary) | Dispensing Fee | | Other Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | EAC | FUL [1] | SMAC [2] | Direct Price | Selling Price | | Brand/Generic | | | Brand/Generic | NF/ICF | |
| 10/16/1989  -  11/30/2002 [15] | Y | Y | Y | Y | Y | Y | AWP - 5%; DP [3] | | [5, 8] | Y | $4.05 [17] | | 7 |
| 12/1/2002 [15]  -  8/31/2004 | Y | Y | Y | Y | N | [11] | AWP - 10% | | [5, 10] | Y | $4.05 | | 7, 9 |
| 9/1/2004  -  Present [16] | Y | Y | Y | Y | N | [13] | AWP - 17% | | [5, 14] | Y | $7.25 | $8.00 | 12 |

<span style="color:blue">▬▬▬</span> Data taken from California Medicaid State Plan Amendments

<span style="color:green">▬▬▬</span> Rule 30(b)(6) deposition of State of CA DHSS (Gorospe) 12/3/2008; exhibits thereto; or documents produced by CA in discovery (CAAG/DHS)

▬▬▬ Data provided by California Legislation

<span style="color:purple">▬▬▬</span> Data and supporting documents provided by Kevin Gorospe, Chief Pharmacy Policy Branch

[1] Per SPA #89-08 et al., Federal upper limit in California is also referred to as the "Federal Allowable Cost" (FAC)  (CAAG/DHS 0013328).

[2] Per SPA #89-08 et al., State MAC in California referred to as "Maximum Allowable Ingredient Cost" (MAIC)  (CAAG/DHS 0013328); effective in or before 1990. (Ex. 13)  (CA LEGIS 1643 (1990))

[3] California Code of Regulations identified 11 pharmaceutical manufacturers whose products were reimbursed at Direct Price:  Abbott, Ayerst, Lederle, Merck, Parke Davis, Pfizer, Roerig, Ross, Squibb, Upjohn, and Wyeth (Ex. 17 (section 51513.5)).  Direct Price was discontinued effective 11/30/2002 (Ex. 22, Ex. 23, Gorospe 258-259).

[4] AWP and Direct Prices obtained from First DataBank (Gorospe 208, 223-226).

[5] MAIC is based on a reference drug brand which is generically equivalent to the innovator brand, and which is manufactured by a company with production capability to meet the statewide needs of the Medi-Cal program for that drug. (Gorospe 216-220)  (CA LEGIS 1643 (1990))

[6] Physician override: DAW (dispense as written) to override FUL/MAIC pricing is allowed only through a state prior authorization mechanism (Ex.13).

[7] Balanced Budget Act of 1994 mandated reimbursement reductions:  $0.50 reduction per claim with dates of service on or after 1/1/1995; $0.25 reduction per claim with dates of service on or after 1/1/2000; $0.10 reduction per claim for dates of service on or after 7/1/2002; $0.50 reduction per claim for dates of service on or after 10/1/2002 (for nursing facilities, the reduction remained at $0.10.); and $0.10 reduction per claim for dates of service on or after 7/1/2004 through 8/31/2004. (Ex. 19; Ex. 20; Ex. 22; Ex. 23; Gorospe 230-234, 247-249, 260-261)

[8] MAIC redefined effective 9/30/2002; the MAIC shall be based on the mean of the wholesale selling prices (WSPs) of drugs generically equivalent to the innovator brand available from wholesale distributors.  WSP means the price, including discounts and rebates, paid by a pharmacy to a wholesaler.  WSP pricing was never implemented, so MAICs from the original definition (FN #5) remain in place.  (Ex. 22; Gorospe 250-252)

[9] Effective 1/1/03, TN 03-012 authorizes pharmacy providers to be reimbursed a $4.05 restocking fee for SNF residents; language subsequently changed effective 9/1/04 (TN 04-010) to "...pharmacy providers will be reimbursed a restocking fee equal to the professional fee for legend drugs dispensed in a SNF..."; language removed in TN 05-027, effective 10/01/05.  Restocking fee was never implemented.

[10] WSP redefined effective 8/16/2004:  WSP "means the weighted (by unit volume) mean price, including discounts, and rebates, paid by a pharmacy to wholesale drug distributors."   WSP pricing not implemented to date, so MAICs from the original definition (FN #5) remain in place. (Ex. 22; Gorospe 250-252, 263-271)

[11] Effective 8/16/2004, Selling Price (SP) means the price used in the establishment of the estimated acquisition cost.  The Department shall base the Selling Price on the average sales price reported by the manufacturers. Selling Price was never implemented. (Ex. 25; Gorospe 263-271)

[12] Reimbursement reductions described in Footnote 7 discontinued on 9/1/04 per the California Welfare and Institutions Code. (West's Ann.Cal.Welf.& Inst.Code Section 14105.337, effective 9/1/2004)  (Gorospe 249)

[13] Selling Price redefined effective 8/24/2007; Selling price shall be based on the average manufacturer's price (AMP) plus a percent markup to represent the average purchase price paid by retailers. Selling Price not implemented to date. (Ex. 27; Gorospe 279-285)

[14] MAIC redefined effective 8/24/2007; MAIC pricing shall be based on the average manufacturer's price (AMP) of drugs generically equivalent to innovator drugs plus a percent markup to represent the average price paid by retailers.  AMP-based MAICs not implemented to date, so MAICs from the original definition (FN #5) remain in place. (Ex. 27; Gorospe 279-285)

[15] 12/1/2002 date established in Gorospe 247-259 (discussing Ex. 22).

[16] "Present" pricing established in Ex. 25; Ex. 26; Ex. 27.

[17] Dispensing fee of $4.05 established in CAAG/DHS 0040295; Gorospe 274-275.

State of:   **COLORADO**

Medicaid Pharmacy Reimbursement Methodology Summary

| Effective Time Period | Usual and Customary | FUL | EAC | SMAC | Brand | Direct Price | Generic | Rural | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Pharmacies | Institutions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **'Lower of" Reimbursement Methodology** | | | | **Estimated Acquisition Cost (EAC)** [9] — Pay the lower of each formula listed | | | | | | **Dispensing Fee** | |
| 1/1/1990 [11] - 6/30/1990 [11] | | | | | | | | | | | $3.78 | $1.75 |
| 7/1/1990 - 12/31/1996 [11] | Y | Y | Y | N [8] | AWP - 10% [1] | MDC + 18% [2] | AWP - 10% [1] | | [3] | | $4.08 | $1.89 |
| 1/1/1997 [11] - 6/30/2001 | Y | Y | Y | N [8] | AWP - 10% [1] | DP + 18% | AWP - 10% [1] | | [3] | | $4.08 | $1.89 |
| 7/1/2001 - 3/31/2002 | Y | Y | Y | N [8] | AWP - 11% [5] | DP + 18% | AWP - 11% [5] | | [4] | | $4.00 | $1.89 |
| 4/1/2002 - 6/30/2002 | Y | Y | Y | N [8] | AWP - 12% [5] | DP + 18% | AWP - 12% [5] | | [4] | | $4.00 | $1.89 |
| 7/1/2002 - 9/30/2002 | Y | Y | Y | N [8] | AWP - 14% [5] | DP + 18% | AWP - 45% [5] | [6] | [4] | | $4.00 | $1.89 |
| 10/1/2002 - Present | Y | Y | Y | N [8] | AWP - 13.5% [5] | DP + 18% | AWP - 35% [5] | AWP - 12% [5] | [4] | Y [7] | $4.00 | $1.89 [10] |

▉ Data taken from Colorado Medicaid State Plan Amendments

▉ Data provided by Chapman deposition taken 12-15-08 and exhibits and Declaration of Robert Douglas, Jr. dated 7/21/09

[1] Per TN #90-03, EAC is the lower of the modified AWP or the modified direct cost. The modified AWP is AWP -10%, except for certain high volume single source drugs or multi-source drugs with bioequivalence problems. The pricing for these high volume EAC drugs shall be lower than AWP-10% and will be based on package sizes greater than 100 or pints. EAC for medical institutions, clinic pharmacies and government owned or operated pharmacies shall be the actual cost of the ingredient, if less than the AWP-10% or direct cost plus a handling fee.  (Chapman Ex. 5)

[2] Per TN #90-03, the modified direct cost (MDC) is the direct cost plus a handling fee.  (Chapman Ex. 5)

[3] Per TN #90-03, State MACs are determined based upon recommendations of the Colorado Drug Formulary Advisory Committee.  (Chapman Ex. 5)

[4] Per TN #01-011 et al., State MAC, pharmacy acquisition cost of generic drugs available in the state market place plus 18%.  (Chapman Ex. 6)

[5] Per TN #01-011 et al., if the AWP cannot be determined by the Department, then the distributors' or manufacturers' prices will be used to estimate AWP to be modified and used in the drug-pricing file and the price of the drug. (Chapman Ex. 6)

[6] Per TN #02-011 effective 7/1/2002, any pharmacy that is the only Medicaid serving pharmacy within a 25 mile radius may invoice for the difference in price between AWP - 4% and AWP - 12% for name-brand drugs and AWP - 45% and AWP - 12% for generic drugs. The invoice shall be submitted to the Department within 30 days of sale and shall contain all the information set forth in Section 8.840 as well as the difference between prices as set forth above and documentation that the pharmacy is the only pharmacy available within a 25 mile radius. The pharmacy shall be reimbursed for the difference between pricing methodologies.

[7] TN 03-018, effective 7/29/03, is the first documentation to describe these requirements in the State Plan.

[8] Per Traugott letter dated 5/21/08, while the Department has had the authority to implement a State Maximum Allowable Cost Program, such a program does not exist at this time. The Department did place Clozapine on the SMAC 9/1/2002 but was unable to continue the program. (See also Chapman deposition pp. 164, 198-199)

[9] The Department used Medi-Span and Red Book until 8/1/1996 when it switched to First DataBank.  (See also TN #01-011 et al.)  (Chapman deposition pp. 317-319)

[10] Effective 5/14/07 with the implementation of an updated computer system, unit dose medications are reimbursed using the same methodology as multiple dose medications.

[11] Dates, SMAC, dispensing fees, EAC, and other information reviewed and verified as accurate in Douglas Declaration.

**State of:**   **CONNECTICUT**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Prescription/Legend Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [1] | | | | Dispensing Fee | | |
| **Effective Time Period** | Usual and Customary | FUL/FAC | EAC | DOJ Pricing | SMAC | Brand/Generic | (Factorate, Antihemophilic Factor, AHF) | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Brand/Generic | Incentive Payment | Compound Drugs | Unit Dose |
| 1/1/1991  -  9/30/1995 | Y | Y | Y | | N | AWP - 8% | | | Y | $4.10 | $0.50 [2] | 7 | |
| 10/1/1995  -  6/30/2000 | Y | Y | Y | Y [6] | N | AWP - 12% | | | Y | $4.10 | $0.50 [2] | 7 | |
| 7/1/2000  -  8/31/2002 | Y | Y | Y | Y [6] | N | AWP - 12% | AAC + 8% [3] | | Y | $4.10 | $0.50 [2] | 7 | |
| 9/1/2002  -  2/4/2003 | Y | Y | Y | Y [6] | N | AWP - 12% | AAC + 8% | | Y | $3.85 | $0.50 [2] | 7 | |
| 2/5/2003  -  3/2/2003 | Y | Y | Y | Y [6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.85 | | 7 | |
| 3/3/2003  -  9/30/2003 | Y | Y | Y | Y [6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.60 | | 7 | |
| 10/1/2003  -  6/30/2004 | Y | Y | Y | Y [6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.30 | | 7 | |
| 7/1/2004  -  7/31/2005 | Y | Y | Y | Y [6] | Y | AWP - 12% | AAC + 8% | AWP - 40% [4] | Y | $3.15 | | 7 | |
| 8/1/2005  -  Present | Y | Y | Y | Y [6] | Y | AWP - 14% | AAC + 8% | AWP - 40% [5] | Y | $3.15 | | 7 | 8 |

▬ Data taken from Connecticut Medicaid State Plan Amendments

▬ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , MDL No. 1456

▬ Data taken from Connecticut Medicaid Policy Manuals and Provider Bulletins pb02-34, pb03-16, pb03-38, pb03-85, pb04-47, pb00-50, pb06-78

▬ Data provided by Jason Gott, Pharmacy Consultant

[1] The State uses First DataBank for its pricing compendium.

[2] Per Provider Manual (Issued by MS91-10), the Department will pay an incentive  professional dispensing fee of fifty cents per prescription, in addition to any other dispensing fee, for substituting a generically equivalent drug product, in accordance with Section 20-185p of the Connecticut General Statutes, for the drug prescribed by the licensed authorized practicioner for a Medicaid recipient except in the following instances:  1)  When a drug product is dispensed for which HCFA has designated a F.A.C.; or 2)  When a compounded prescription is being dispensed; or 3)  When a nonlegend drug is dispensed; or 4)  When the substitution is required by Federal law or regulation.  The generic incentive program was implemented prior to 1991 (probably in 1987) and was repealed in 10/2002.

[3] Beginning with TN #00-006 effective 7/1/00, the maximum allowable cost paid for Factor VIII (Factorate, Antihemophilic Factor, AHF) pharmaceuticals shall be the Actual Acquisition Cost (AAC) plus eight percent.  (HHD040-0233)

[4] Effective 02/05/2003 per TN #03-002B, the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing Fee:  at least three suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and oral dosage form (including tablets, capsules, and liquids).

[5] Per TN #05-006 effective 08/01/05, the maximum allowable cost paid for selected multi-source brand and generic drugs meeting the following criteria shall be the Average Wholesale Price (AWP-40% plus a reasonable professional Dispensing fee:  at least two suppliers of the generic product are available, drug is not on the Federal Upper Limit (FUL) list or the Department of Justice List, and all dosage forms (including tablets, capsules, eye drops, inhalers, topicals, and liquids).   (HHD040-0215)

[6] Per PB-00-50 dated July 2000, DOJ pricing became effective with dates of service 5/1/2000 for about 400 NDCs and continues to be used today.   (Reference to DOJ list prices included in SPAs beginning with TN #03-002B)

[7] Per Provider Manual Issued by MS91-10 p. 10, for compounded prescriptions, a dispensing fee is applied to each detail (ingredient) listed on the claim.

[8] Per Provider Bulletin PB 2006-78 dated September 2006, effective with dates of service 1/1/06 and after, Connecticut began reimbursing for drugs dispensed in unit dose packaging for clients residing in nursing facilities, chronic disease hospitals, and ICFs/MR.  Prior to that, the state did not reimburse for any drug dispensed in unit dose if it were also available in non-unit dose packaging.

State of:   **DELAWARE**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Prescription/Legend Drugs** | | | | | | | | | |
| | | | | | | **Estimated Acquisition Cost (EAC)** [4] | | | | |
| | **"Lower of" Reimbursement Methodology** | | | | | Traditional Pharmacy | Non-Traditional Pharmacy | | **Physician Override (DAW, Brand Medically Necessary)** | **Dispensing Fee** |
| **Effective Time Period** | Usual and Customary | FUL | EAC | DMAC | DOJ Pricing | Brand/Generic | Brand/Generic | **SMAC Methodology** | | Brand/Generic |
| 10/31/1987 - 4/30/1997 | Y | Y | Y | N | | AAC [1] | AAC [1] | | Y | $3.65 [1] |
| 5/1/1997 - 12/31/2002 | Y | Y | Y | Y | [6] | AWP - 12.9% [1] | AWP - 12.9% | [2] | Y | $3.65 |
| 1/1/2003 - 3/30/2009 | Y | Y | Y | Y | [6] | AWP - 14% [1,3,8] | AWP - 16% [1,3,8] | [5] | Y [7] | $3.65 |
| 4/1/2009 - 6/30/2009 | Y | Y | Y | Y | [6] | AWP - 16% [1,3,9] | AWP - 18% [1,3,9] | [5] | Y [7] | $3.65 |
| 7/1/2009 - Present | Y | Y | Y | Y | [6] | AWP - 15% [1,3,9] | AWP - 18% [3,9] | [5] | Y [7] | $3.65 |



■ (blue) Data provided by Delaware Medicaid State Plan Amendments

■ (green) Data provided by Denmark depositions taken 12/8/09 and 12/9/08, O'Connor deposition taken 2/10/08 and exhibits, and by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

■ (black) Data provided by Pharmacy Provider Manual Revision Table (Section 4.1.4.2, revision date 6/26/09)

■ (purple) Information provided by Linda Murphy, Chief of Program Integrity Unit, and Ann Woolfolk

[1] Per Denmark deposition pp. 122-124 and 134, pricing methodology was based on the lower of U&C, AAC, and FUL.  AAC was capped at AWP - 5.61% unless providers could demonstrate that their costs exceeded the cap.  Based on this, it was very rare that a provider would have exceeded the estimated maximum.   Beginning with TN #SP-294 effective 1/1/91, Medicaid reimbursement is limited to only those drugs supplied from manufacturers that have a signed national agreement or an approved existing agreement under Section 1927(a) of the Social Security Act.   Per Denmark deposition pp. 107-108, $3.65 dispensing fee has been in place since at least 1993.

[2] Per TN #SP-371, the DMAC payment limits will be calculated, for drugs selected by the DMAP, by First DataBank (FDB) under contract with Delaware Medicaid using the following protocol:
  * All DMACs will be based on the direct prices
  * FDB will use the lowest of either Geneva Generic or Rugby prices. These are national generic labelers/manufacturers that sell directly to pharmacies.
  * Prices for solid dosing forms will be based on a package size of 100. If that size is not available, the next largest size will be used.
  * Prices for liquid products will be based on 120 ml for over-the-counter (OTC) medications and 473-480 ml for legend products.
  * All unit dose packaging calculations will be eliminated.
  * If neither identified labeler markets the product, the median of all other HCFA rebate participating sources will be used to establish a price.
Drugs are selected based on experience with charges from pharmacies which indicates that the product cost is less than or equal to AWP-20%. Additional medications will be added to the DMAC program after general provider notification.

[3] Per TN #SP-397 effective 01/01/2003: Non-Traditional Pharmacy includes long term care and speciality pharmacies, and Traditional Pharmacy includes retail independent and retail chain pharmacies.   (HHD039-0082)

[4] Per Denmark deposition p. 463, Redbook is currently used for pricing  (beginning 7/2002).   First DataBank was used before that.

[5] Per TN #SP-397: Delaware Maximum Allowable Cost (DMAC) - a maximum price set for reimbursement:  (1) for generics available from three (3) or more approved sources, or (2) when a single source product has Average Selling Prices provided by the manufacturer that indicates the AWP is exaggerated, or (3) if a single provider agrees to a special price.  Any willing provider can dispense the product.   (HHD039-0083)

[6] Per Denmark deposition pp. 247-253, Delaware implemented undiscounted DOJ prices most likely within 90 days after being notified by the DOJ, but no longer uses them (discontinuation date unknown).

[7] Per TN #SP-397, medical necessity must be documented on a FDA Med-Watch form based on the client experiencing an adverse reaction. Other exceptions will be made if documentation provided demonstrates that the product can only be obtained at a higher rate.  (HHD039-0082)

[8] Change to EAC pricing confirmed in O'Connor deposition pp. 60-61.

[9] Effective 4/1/09, Delaware adjusted the reimbursement rate for traditional/community pharmacies from AWP - 14% to AWP - 16% and for non-traditional pharmacies from AWP - 16% to AWP - 18%.  On 6/09/09, NACDS filed a lawsuit against Delaware challenging the rate adjustment for traditional/community pharmacy (non-traditional pharmacy rate is un-challenged.). Effective 7/1/09, Delaware adjusted the rate for traditional/community pharmacies from AWP - 16% to AWP - 15%.  SPAs for both the 4/1/09 and 7/1/09 rate changes are pending CMS approval.

State of:   **DISTRICT OF COLUMBIA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Prescription/Legend Drugs | | | | | Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology [5, 6] | | | | Estimated Acquisition Cost (EAC) [4] | | | | Nursing Home Pharmacy Providers | | |
| | Usual and Customary | FUL | EAC | SMAC | Brand/Generic | | Standard | Compounds | Non - IV | IV | Cassettes, TPN, Container Related |
| 1/1/1991 [1] - x/x/1996 [2] | Y | Y | Y | N | AWP - 10% | | $4.50 | $5.50 [1] | | | |
| x/x/1996 [2] - 7/31/1997 | Y | Y | Y | N | AWP - 10% | Y | $3.00 [3] | | | | |
| 8/1/1997 - 3/31/2003 | Y | Y | Y | N | AWP - 10% | Y | $3.75 | | | | |
| 4/1/2003 - 12/31/2005 | Y | Y | Y | N | AWP - 10% | Y | $4.50 | | | | |
| 1/1/2006 - Present | Y | Y | Y | N [7] | AWP - 10% | Y | $4.50 | | $4.50 [8] | $7.25 [8] | $17.25 [8] |

■ (blue)  Data taken from District of Columbia Medicaid State Plan Amendments

■ (green)  Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

■ (purple)  Data provided by Charlene Fairfax, Pharmacy Consultant, DOH

■ (red)  Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] 1/1/1991 established as effective date since EAC and dispensing fees are unchanged from those reported in the 1990 NPC.  No further changes in pricing methodology reported until NPC 1996, which drops the dispensing fee special pricing reference to compound drugs.

[2] Per 1996 thru 1998 NPC Publications, approximately 75,000 Medicaid recipients are enrolled in managed care; most receive pharmacy benefits through MCOs.  NPC 1999 reports 62,000.  This, however, conflicts with state information that indicates that fee-for-service pharmacy reimbursement has always been separate from managed care capitation.

[3] $3.00 dispensing fee taken from CMS letter of approval for SPA 97-08 (date-stamped 10/23/1997), which references a change from $3.00 to $3.75 effective 08/01/1997.  Exact effective begin date for the $3.00 dispensing fee unknown.    (HHD039-0021)

[4] Per TN 97-08 effective 08/01/1997 et al., the average wholesale price shall be the price, at the time of service, set forth in the most recent listing supplied by First DataBank National Drug Data File Services.

[5] Per TN 05-05, effective 01/01/2006, the Medicaid Agency restricts payment to only those drugs supplied from manufacturers that have signed a national agreement, as specified in Section  1927(a) or have an approved existing agreement.  In addition, the Department shall supplement the CMS listing by adding drugs and their prices which, in the judgment of CMS, meet the following requirements:  (a) The formulation of the drug approved by the U.S. Food and Drug Administration (FDA) has been evaluated as therapeutically equivalent in the most current edition of its publication, Approved Drug Products with Therapeutic Equivalence Evaluations including supplements or in successor publications); and (b) At least two (2) suppliers list the drug (which has been classified by the FDA as category "A" in its publication, Approved Drug Products with Therapeutic Equivalence Evaluations, including supplements or in successor publications) based on the listing of drugs which are locally available.  (HHD039-0026 and 0015)

[6] Per telephone call on 9/8/08, pricing prior to 8/1/1997 can not be confirmed by current State staff.

[7] Per telephone call on 9/8/08, implementation of a State MAC program is currently pending while the District awaits approval of a State Plan Amendment submitted June 2008.

[8] Per TN 05-05  (HHD039-0016)  pharmacy claims for nursing home pharmacy providers shall be reimbursed at the lower of the following:  a)  The allowable cost, established pursuant to section 5b, 5c, or 5d.3, as appropriate, plus a dispensing fee of four dollars and fifty cents ($4.50) per non-IV (intravenous) prescription; or seven dollars and twenty five cents ($7.25) per IV prescription; or seventeen dollars and twenty-five cents ($17.25) for cassette, TPN (total parenteral nutrition) or container-related prescriptions; or the pharmacy's usual and customary charge for non-Medicaid residents.

State of:    **FLORIDA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[7] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
| | | | | | | Pay the lower of each formula listed | | | | | |
| **Effective Time Period** | Usual and Customary | FUL/GULP[6] | EAC[7] | DOJ Pricing | SMAC | Brand/Generic | CII DEA Controlled Substances | SMAC Description | | Brand/Generic | Nursing Home | In-House Unit Dose Packaging |
| 1986[10] - 9/30/1993 | Y[10] | Y[10] | Y[10] | | N | WAC + 7%[10] | AWP[8] | | Y | $4.23[10] | | Add 1 1/2 cents[10] |
| 10/1/1993 - 6/30/1999 | Y | Y | Y | | Y[3] | WAC + 7% | AWP; WAC + 7%[8] | [3] | | 4.23[2] | | Add 1 1/2 cents |
| 7/1/1999 - 6/30/2000 | Y | Y | Y | Y[1] | Y[3] | AWP - 11.5% or Direct + 7% or WAC + 7%[11] | WAC + 7%[8] | [3] | Y | 4.23[2] | | Add 1 1/2 cents |
| 7/1/2000 - 4/29/2002 | Y | Y | Y | Y[1] | Y[3] | AWP - 13.25%[4] | | [3] | Y | $4.23 | $4.73[5] | Add 1 1/2 cents |
| 4/30/2002[12] - 6/30/2004 | Y[12] | Y[12] | Y[12] | Y[1] | Y[3,12] | AWP - 13.25% or WAC + 7%[12] | | [3] | Y | $4.23[12] | $4.73[5] | Add 1 1/2 cents[9] |
| 7/1/2004 - 6/30/2008 | Y | Y | Y | Y[1] | Y[3] | AWP - 15.4% or WAC + 5.75% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |
| 7/1/2008 - Present | Y | Y | Y | Y[1] | Y[3] | AWP - 16.4% or WAC + 4.75% | | [3] | Y | $4.23 | | Add 1 1/2 cents[9] |

Data taken from Florida Medicaid State Plan Amendments

Data taken from Jerry Wells' depositions and 5/24/05 amended affidavit

Data taken from the 2008 Florida Statutes 409.908(14) and Provider Handbooks

Data provided by AHCA

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per deposition 5/25/04 pp. 603-604, Florida implemented the DOJ list of AWPs in May 2000.  The state initially used the DOJ AWP - 11.5%, and then applied  the DOJ AWPs as State Maximum Allowable Cost in its pricing logic. This was within weeks of the initial implementation (see deposition 8/15/06 p. 1011-1012), most likely by July of 2000.

[2] Per the AHCA, the November 1997 and July 1999 Provider Handbooks document a $1 and $2 incentive fee for 60 or 90 day supplies; reference was deleted in the 2000 Handbook.

[3] Per amended affidavit, p. 2, first State MACs set July 1, 1994. Per Wells 12/16/2004 Deposition pp. 255-272, State MACs are determined on an ad hoc basis and not according to a specific formula.   Prior to contracting the SMAC calculation function in October 2004, the program researched actual provider's invoices for appropriate NDCs and set SMACs within a reasonable range based upon provider's acquisition costs.  A more detailed and comprehensive methodology is used by the SMAC contractor for a broader range of products, however individual review of invoices is still required in some situations prior to setting SMAC prices to ensure adequate reimbursement for providers.

[4] AWP-13.25% was legislatively added effective 7/1/2000 to the WAC+7% to pay the lower of the two, but an erroneous computer programming change inadvertently bypassed the WAC+7% reimbursement methodology from the reimbursement system from July 3, 2000 through April 30, 2002. (Wells 5/24/2005, p.4)

[5] Per Ex. 70, dispensing fees for nursing home patient prescriptions increased to $4.73 in August 2001; remained in effect through at least 4/3/2003;  dispensing fee then returned to $4.23.

[6] Per TN 92-08 et al., federal upper limit referred to as the GULP - generic upper limit of payment as established by the HCFA or the state agency for multiple source drugs.

[7] Per Wells depositions 12/16/2004 p.263 and 8/15/06 p. 927, prices always provided by First DataBank.  (See also State Plan #93-56).

[8] Per AHCA, when WAC + 7% started in 1986, Class II drugs were initially left at AWP and exempted from WAC pricing because there was no wholesaler discount.   The February 1996 and November 1997 Provider Handbooks state that Class II drugs or items that frequently require drop shipment or purchase from a secondary supplier are priced at the AWP.  When AWP pricing was added in 1999, Class II drugs were exempted and still reimbursed at WAC+7% because the drugs were not initially discounted by the wholesaler. Once wholesaler discounts were implemented, the drugs were no longer exempted.

[9] Per AHCA, Florida Statute Section 409.908 (beginning 2003): Unit Dose Return to Stock was implemented on 7/1/2004 and remains effective.

[10] Per 12/15/08 deposition pp. 41-43, 135, 145 and 12/15/04 deposition, Vol. 1 p. 37, pricing formula (WAC + 7% and $4.23 dispensing fee) in place since 1986  (actual start date 3/11/1986).  See also 12/15/08 deposition pp. 40-44 for "lesser of" (FUL and U&C) and unit dose.

[11] Ex. 61; Ex. 2.

[12] Ex. 70.

07/21/09

State of:   **GEORGIA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lower of" Reimbursement Methodology [2,4,5] | | | | Estimated Acquisition Cost (GEAC) [8] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Profit Pharmacies | | Not for Profit Pharmacies | |
| | Usual and Customary | FUL | GEAC [8] | GMAC [1] | Brand | Generic | Schedule II Controlled Drugs | | Brand | Generic | Brand | Generic |
| 1/1/1990 - 6/30/1993 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3] | $4.41 | $4.41 | $4.11 | $4.11 |
| 7/1/1993 [9] - 12/31/1995 | Y | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3] | 9 | 9 | 9 | 9 |
| 1/1/1996 [10] - 6/30/1998 | Y [7] | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3] | $4.41 [10] | $4.41 [10] | $4.41 [10] | $4.41 [10] |
| 7/1/1998 [11] - 5/31/2001 | Y [7] | Y | Y | Y | AWP-10% | AWP-10% | AWP [13] | Y [3,6] | $4.63 [11] | $4.63 [11] | $4.33 [11] | $4.33 [11] |
| 6/1/2001 [12] - 6/30/2004 | Y [7] | Y | Y | Y | AWP-10% | AWP-10% | | Y [3,6] | $4.63 [12] | $5.13 [12] | $4.33 [12] | $4.83 [12] |
| 7/1/2004 - 6/30/2005 | Y [7] | Y | Y | Y | AWP-11% | AWP-11% | | Y [3,6] | $4.63 [12] | $5.13 [12] | $4.33 [12] | $4.83 [12] |
| 7/1/2005 - Present [14] | Y [7] | Y | Y | Y | AWP-11% | AWP-11% | | Y [3,6] | $4.63 | $4.63 | $4.33 | $4.33 |

■ Data taken from Georgia Medicaid State Plan Amendments

■ Data provided by Jerry Dubberly and Etta Hawkins

■ Data provided by Dubberly deposition taken 12/15/08 and exhibits

[1] Per TN #91-13 et al., state MAC program referred to as GMAC.

[2] Per TN #91-13, effective 01/01/1991, Drug Rebate Agreement was implemented. "Unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification."  A supplemental rebate program was later implemented.

[3] State does not allow pharmacists at the retail pharmacy to certify a branded drug is necessary when generics are available, with the exception of Dilantin and Tegretol. That requires a PA with info from the MD to the PBM. At least two A-rated generics must be available in the marketplace before the Department considers requiring the use of the generic.

[4] Per TN #01-001, effective 06/01/2001 outpatient drugs from non-participating rebate manufacturers may be excluded from coverage per Section 1927(d)2 of the Act.

[5] Per TN #01-030, effective 07/01/2001 the co-payment structure was established to administer the Preferred Drug List Program.

[6] Per TN #03-007, effective July 1, 1998, the pharmacist may enter an appropriate override at the point of sale to exceed the monthly prescription limit for the drugs deemed medically necessary by prescriber."

[7] Beginning with TN #96-007 effective 7/1/96, the Department defines usual and customary as the lower of the lowest price reimbursed to the pharmacy by other third party payers (including HMOs), or the lowest price routinely offered to any segment of the general public. Donations or discounts provided to charitable organizations or fees charged to or paid by federal or state funded program are not considered usual and customary charges.

[8] Per deposition pp. 57-59, 35-36, through its claims processing contractors, the State used First DataBank (FDB) 7/1/2000 - 12/31/2006 (and probably since 1991) and a combination of FDB and Medispan from 1/1/07 - present.

[9] Per Exhibits 4 and 6 and deposition pp. 52-53, dispensing fee effective with dates of service beginning 7/1/1993 was 10% of the GEAC with a maximum of $15.00. GMAC drugs = GMAC + Dispensing Fee of 10% GEAC up to $15.00.

[10] Per Exhibit 4, between 11/1/1996 and 3/31/1998, pharmacies servicing nursing home residents received a monthly prescription monitoring fee of $18.00 in lieu of a dispensing fee of $4.41 per prescription. Change reflected in TN #96-007 effective 7/1/1996.

[11] Per Exhibit 4 and Exhibit 10.

[12] Per Exhibit 4, dispensing fee change described in TN #01-001, became effective on April 1, 2001.   Per TN 301-001, the dispensing fee shall be $4.63 for profit pharmacy and $4.33 for non-profit pharmacies for each non-generic or non-preferred drug dispensed by the pharmacy; and $5.13 for profit pharmacies and $4.83 for non-profit pharmacies for each generic or preferred drug dispensed by the pharmacy.  The reference to preferred and non-preferred drug status was then dropped in TN 02-004 effective May 15, 2002.

[13] Schedule II pricing at AWP established in TN #90-3 beginning 1/1/90.   Per Exhibit 4, Schedule II controlled substances were reimbursed at the AWP from May 1993  through June 2001.

[14] Deposition pp. 46-47, 277.

State of:  **HAWAII**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC) [1] | | | |
| Effective Time Period | Billed Charges | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand/Generic | | | |
| 5/9/1990 [10] - 9/14/1997 | Y | Y | Y [3] | Y | N | | AWP - 10.5% [10] | Y [3] | $4.67 [2, 10] | [9] |
| 9/15/1997 - 4/31/2000 | Y | Y | Y [3] | Y | N [4] | | AWP - 10.5% | Y [3] | $4.67 [2] | [9] |
| 5/1/2000 - 12/31/2000 | Y | Y | Y [3] | Y [5] | N [4] | Y [5] | AWP - 10.5% [5] | Y [3] | $4.67 [2] | [9] |
| 1/1/2001 - 5/31/2002 | Y | Y | Y [3] | Y [7] | N [4] | Y [6] | AWP - 10.5%; AWP [7] | Y [3] | $4.67 [2] | [9] |
| 6/1/2002 [4] - Present | Y | Y | Y [3] | Y [7] | Y [3, 8] | Y [6] | AWP - 10.5%; AWP [7] | Y [3] | $4.67 [2] | [9] |

■ (blue)  Data taken from Hawaii Medicaid State Plan Amendments

■ (green)  Data provided by Hiramatsu Depositions 5/1/2008 and 5/2/2008 and Exhibits

■ (black)  Data provided by Westlaw Haw. Admin. Rules (HAR) Section 17-1739.1-11 (Westlaw 2009)

■ (purple)  Data provided by Linda Donovan, Pharmacy Consultant

[1] Beginning with TN #92-08 effective 4/1/92  (HHD041-0081) , the average wholesale price will be derived from the most commonly used packaged size in the Bluebook;  per deposition p. 345, First Data Bank used through present.

[2] Beginning with TN #96-002, effective 2/1/96, the dispensing fee for any maintenance or chronic medication shall be extended only once per thirty days without medical authorization from the medical assistance program  (See also HI_HI 00006467).  Other appropriate limits regarding the number of dispensing fees paid per interval of time shall be determined as necessary by the medical assistance program.

[3] Per HI_HI 00006467, prior authorization for payment above the FUL was implemented 2/26/1996.  (See also HI_HI 000005552.)  Per HI_HI 000005557, exceptions to the FULs and SMACs are: anticonvulsants for seizure, birth control pills, and Coumadin.  OxyContin was added 4/10/2007.

[4] State Plan #97-005, effective 9/15/97 was the first to include a State MAC provision, defined as the "average of the estimated acquisition costs of the three least expensive generics available. At least one of the three products shall be provided by a manufacturer who participates in the Federal drug rebate program."  Per Exhibit 057 (HI_HI 000001794), State MAC program not implemented until 6/1/2002.

[5] Per HI_HI 000015079, the Department of Justice AWPs were provided by First DataBank and were implemented on 5/1/2000; 10.5% was deducted to determine the EAC.

[6] The DOJ AWPs began being paid at 100% AWP, which continues through the present.

[7] Beginning with TN #01-004  (HHD041-0066),  payment for single source or multiple source drugs was amended: the EAC or the average wholesale price (AWP) when the AWP is the average selling price, plus a dispensing fee.  (See also 5/2/08 deposition pp. 353-358)

[8] Per HI_HI 000001582, the lower of reimbursement methodology is used except if there is a FUL and a SMAC for the same drug.  In this case, the SMAC is not applied and only the FUL is considered.  Prior authorization is required for payment above the SMAC.   Per state, in rare instances, the SMAC was lifted due to generics not being available.   (See Westlaw Haw. Admin. Rules Section 17-1739.1-11) (Westlaw 2009)

[9] Per the Medicaid Provider Manual, 19.1.8.4 Compounding Fees (HI_HI 000005565): "Compounded drug allowances are determined as follows: a) Solutions and/or suspensions compounded from 2 liquids are reimbursed based on the cost of each solution or suspension plus the dispensing fee and  $1.00 compounding fee; b) Ointments or creams compounded from two or more ointments or creams are reimbursed based on the cost of each ointment or cream plus the dispensing fee and  $1.50 compounding fee; c) Ointments or creams compounded from substances levigated into ointment or cream base are reimbursed based on the cost of each ointment or cream plus the dispensing fee and  $2.50 compounding fee."  Per the state, this policy has been effective since May 1989.

[10] Dispensing fee established 5/9/1990 per Exhibit 027 (HI_HI 000002759). EAC of AWP - 10.5% effective 8/16/1989 per Exhibit 011 (HI_HI 000014764).

**State of:**   __IDAHO__

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Prescription/Legend Drugs [9] | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | | Estimated Acquisition Cost (EAC) [6] | | | |
| | Usual and Customary | FUL | EAC | SMAC | Direct Pricing | DOJ Pricing [2] | Brand/Generic | | Brand/Generic | Unit Dose |
| 1/1/1991    -    7/31/1991 | Y | Y | Y | N | Y [1] | | AWP | | $4.30 | $5.25 |
| 8/1/1991    -    1/31/1993 | Y | Y | Y | N | Y [1] | | AWP | | $4.60 | $5.65 |
| 2/1/1993    -    6/30/1995 | Y | Y | Y | N | Y [1] | | AWP | | $4.30 | $5.25 |
| 7/1/1995    -    6/30/1996 | Y | Y | Y | N | Y [1] | | AWP | | $4.41 | $5.38 |
| 7/1/1996    -    2/28/1999 | Y | Y | Y | N | Y [1] | | AWP | Y | $4.54 | $5.54 [4] |
| 3/1/1999    -    10/14/2001 | Y | Y | Y | Y | N [7] | | AWP - 11% | Y [5] | $4.94 [7] | $5.54 [4] |
| 10/15/2001    Present | Y | Y | Y | Y [8] | N | | AWP - 12% | Y [5] | $4.94 | $5.54 [4] |

   Data taken from Idaho Medicaid State Plan Amendments

Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and Declaration of Paul Leary dated 7/21/09

[1] Per NPC Publications for 1992 through 1995, direct account pricing for the following manufacturers:  Wyeth-Ayerst, Merck Sharp & Dohme, Parke-Davis, Pfizer, Pfipharmecs, Roerig, and Upjohn.

[2] Idaho is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

[3] Per NPC Publications, direct account pricing for the following manufacturers: 1996 - Wyeth-Ayerst, Merck Sharp & Dohme, Pfizer, Roerig, Upjohn, ESI, Robbins, Lederle, and Storz; 1997 - Wyeth-Ayerst, Merck & Co., Pfizer, Roerig, Pharmacia & Upjohn, ESI, Robbins, Lederle, Pratt, and Storz; and 1998 - Wyeth-Ayerst, Merck & Co, Pfizer, Roerig, Pharmacia & Upjohn, ESI, Robbins, Lederle, Pratt, and Storz.

[4] Per TN 99-001 effective 03/01/1999 et al.: Unit dose fee is $5.54 per prescription, and is defined as a system of providing individually sealed and appropriately labeled unit dose medication that ensures no more than a 24-hour supply in any client's drug tray at any given time.  These trays shall be delivered to the facility at least five days per week.   (HHD074-0251)

[5] Per 2000, 2001, and 2002 NPC Publications, override requires prior authorization.  Per 2003 and 2004 NPC publications, override requires prior authorization; override requires failure of two generic formulations and submission of a MedWatch form.  Per 2005/2006 NPC publication, override requires medically necessary and submission of appropriation documentation through the prior authorization process.

[6] Pricing compendium used was First DataBank.

[7] Direct pricing discontinued 3/15/1999; dispensing fee change not effective until 3/17/99.

[8] The methodology for establishing SMACs changed in January 2003 when Myers and Stauffer was retained to establish SMACs.

[9] All information on this summary reviewed and verified as accurate in Leary Declaration.

**State of:**   <u>**ILLINOIS**</u>

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [9, 12] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) [8] | Professional/Dispensing Fee [14] | | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC [9] | SMAC | AMWP [10] | Brand | Generic | | | Brand | Generic | |
| 9/1/1989 - 6/30/1995 | Y | Y | Y | Y | N [14] | AWP - 10% | AWP -10% | [5] | N [8] | $3.58 to $15.00 [1] | $3.58 to $15.00 [1] | [7] |
| 7/1/1995 - 6/30/1998 | Y | Y | Y | Y | N [14] | AWP - 10% | AWP - 12% | [5] | N [8] | $3.30 to $14.72 [2] | $3.58 to $15.00 [2] | [7] |
| 7/1/1998 - 6/30/1999 | Y | Y | Y | Y | N [14] | AWP - 10% | AWP - 12% | [5] | N [8] | $3.40 to $15.16 [3] | $3.69 to $15.45 [3] | [7] |
| 7/1/1999 - 12/14/2000 | Y | Y | Y | Y | Y [11, 14] | AWP - 10% | AWP - 12% | [5] | N [8] | $3.45 to $15.40 [4] | $3.75 to $15.70 [4] | [7] |
| 12/15/2000 - 6/30/2001 | Y | Y | Y | Y | Y [14] | Lower of: AWP - 10% or WAC + 8% | Lower of: AWP - 12% or WAC + 12% | [5] | N [8] | $4.17 | $4.17 | [7] |
| 7/1/2001 - 6/30/2002 | Y | Y | Y | Y | Y [14] | AWP - 11% | AWP - 20% | [5] | N [8] | $4.00 | $5.10 | [7] |
| 7/1/2002 - Present | Y | Y | Y | Y | Y [14] | AWP - 12% | AWP - 25% | [6] | N [8] | $3.40 | $4.60 | [7] |

■ (blue) Data taken from Illinois Medicaid State Plan Amendments

■ (green) Data provided by Parker 11/18/08 deposition and exhibits and Declaration of James Parker dated 7/21/09

[1] The formula for calculating the professional/dispensing fee is: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[2] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.58 minus $0.28 for EAC up to $35.80, and 10% of EAC minus $0.28 for EAC above $35.80, up to a maximum dispensing fee of $15.00 minus $0.28; GENERIC: $3.58 for EAC up to $35.80, and 10% for EAC above $35.80, up to a maximum dispensing fee of $15.00.

[3] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.69 minus $0.29 for EAC up to $36.90, and 10.3% of EAC minus $0.29 for EAC above $36.90, up to a maximum dispensing fee of $15.45 minus $0.29; GENERIC: $3.69 for EAC up to $36.90, and 10.3% for EAC above $36.90, up to a maximum dispensing fee of $15.45.

[4] The formula for calculating the professional/dispensing fee is as follows. BRAND: $3.75 minus $0.30 for EAC up to $37.50, and 10.46% of EAC minus $0.30 for EAC above $37.50, up to a maximum dispensing fee of $15.70 minus $0.30. GENERIC: $3.75 for EAC up to $37.50, and 10.46% for EAC above $37.50, up to a maximum dispensing fee of $15.70.

[5] Per deposition pp. 389-390, MAC was a reference NDC up until 7/1/2002.

[6] From 7/1/2002 to 3/1/2005, MACs were set based on EAC and other State Medicaid MAC rates. From 3/1/2005 to present, Myers & Stauffer LC, contractor, sets rates.  (See also deposition pp. 97-98, 178.)

[7] Per deposition p. 366, State allows one dispensing fee per ingredient  (begin date unknown).

[8] State has never used the DAW code on the claim to pay differently; has always required medical justification through the PA process.

[9] Per deposition pp. 62-65 and 255, State uses First DataBank for pricing.

[10] AMWP stands for Average Market Wholesale Price.

[11] Illinois first used AMWPs on 5/1/2000. From 5/1/2000 through 5/31/2002, Illinois treated DOJ prices sent by First DataBank as AMWPs.  (See also deposition pp. 363-364)

[12] The State had a separate formula for reimbursing providers for physician-administered drugs.  See 89 Ill. Admin. Code § 140.414.

[14] Dates, dispensing fees, compound fees and all other information contained in this summary reviewed and verified as accurate by Parker Declaration.

07/21/2009

State of:   **INDIANA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **"Lower of" Reimbursement Methodology** | | | | | **Estimated Acquisition Cost (EAC)** [3] | | **SMAC Methodolog** | **Physician Override (DAW, Brand Medically Necessary)** | **Dispensing Fee** | **Compounded Prescriptions** |
| **Effective Time Period** | Usual and Customary | FUL | EAC [3] | SMAC | DOJ Pricing | Brand | Generic | | | Brand/Generic | |
| 12/1/1989 [7] - 5/29/2002 | Y | Y | Y | N | [6] | AWP - 10% | AWP - 10% | | Y | $4.00 [7] | [5] |
| 5/30/2002 [2] - 9/30/2005 | Y [1] | Y | Y | Y | | AWP - 13.5% | AWP - 20% | [4] | Y | $4.90 | [5] |
| 10/1/2005 - Present | Y [1] | Y [8] | Y | Y | | AWP - 16% | AWP - 20% | [4] | Y | $4.90 | [5] |

 Data taken from Indiana Medicaid State Plan Amendments

 Data provided by Shirley deposition taken 12/3/08 and exhibits and Sharp Exhibit 953 (Abbott)

Data provided by the Office of Medicaid Policy and Planning

Data provided by Indiana Health Coverage Programs Banner Page (BR200805 dated January 29, 2008)

[1] Per TN #93-032 et al., usual and customary represents the provider's submitted charge.

[2] Changes to EAC, DF, and implementation of SMAC apply to claims with dates of service beginning on 5/30/02.

[3] For purposes of calculating the EAC, the State initially used Redbook, then switched to Medi-Span, and then to First DataBank beginning sometime prior to 2000.  (See also deposition p. 420.)

[4] According to the SMAC Manual, drug acquisition costs were obtained through an acquisition cost survey from a sample of pharmacies.  An acquisition cost survey was performed three times, each of which resulted in new State MAC rates, or rate rebasing, effective on June 19, 2002, October 6, 2003, and February 14, 2005. Beginning in June 2005, the State negotiated agreements with a small group of Indiana pharmacies to obtain drug acquisition cost data on a monthly basis in electronic format in order to determine updates and additions to State MAC rates. (Deposition pp. 400-411, and Sharp Ex. 953)

[5] Per the Pricing Manual, compounded prescriptions are calculated at the detail level. Each ingredient of the compounded prescription is priced individually, following the same pricing methodology as if it were a single ingredient claim. The amounts are added together and compared to the overall billed amount.  A dispensing fee of up to $4.90 is added to the total ingredient cost of each legend compounded prescription to arrive at the calculated Medicaid-allowable amount. The amount should never exceed the billed amount.  (Per deposition pp. 579-584, this pricing methodology dates back to the late 1980's.)

[6] According to deposition pages 385-396, the state implemented the DOJ prices sometime in Spring 2000 but removed them shortly thereafter .

[7] On 12/1/1989, EAC changed to AWP - 10% according to Exhibit 1 and deposition pp. 454, 467-470. Ex. 1 lists dispensing fee as either $4.00 or $3.00, but $4.00 is confirmed at least effective 12/1/1993.

[8] Effective 1/30/08, the Office of Medicaid Policy and Planning (OMPP) removed the FUL pricing from the payment calculation.  Aggregate reimbursement requirements, as required by the CMS, will be satisfied by the application of rates established through the State MAC program.

State of:   **IOWA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | Physician Override (DAW, Brand Medically Necessary) [11] | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [6] | | SMAC Description [11] | | | | |
| **Effective Time Period** | Usual and Customary | FUL [1] | EAC [6] | DOJ Pricing [11] | SMAC [1] | Brand/Generic | | | MAC and Schedule II drugs | Non-MAC drugs | Unit Dose | Compound Drugs [11] |
| 7/1/1990 - 1/31/1999 | Y | Y | Y | | N | Lesser of AWP-10% or submitted acquisition cost [2] | | Y | $4.02 [2, 3] | $6.25 [2, 3] | 4 | 10 |
| 2/1/1999 - 7/20/1999 | Y | Y | Y | | N | AWP-10% | | Y | $4.02 [5] | $6.25 | 4 | 10 |
| 7/21/1999 - 6/30/2000 [11] | Y | Y | Y | | N | AWP-10% | | Y | $4.10 | $6.38 | 4 | 10 |
| 7/1/2000 [11] - 10/31/2002 | Y | Y | Y | Y [9] | N | AWP-10% | | Y | $4.13 [11] | $6.42 [11] | 4 | 10 |
| 11/1/2002 [7] - 6/30/2003 | Y | Y | Y | Y [9] | Y [7] | AWP-10% | 8 | Y | $5.17 | $5.17 | 4 | 10 |
| 7/1/2003 - 6/30/2005 | Y | Y | Y | Y [9] | Y | AWP-12% | 8 | Y | $4.26 | $4.26 | 4 | 10 |
| 7/1/2005 - 6/30/2006 [11] | Y | Y | Y | Y [9] | Y | AWP-12% | 8 | Y | $4.39 | $4.39 | 4 | 10 |
| 7/1/2006 [11] - Present [11] | Y | Y | Y | Y [9] | Y | AWP-12% | 8 | Y | $4.52 [11] | $4.52 [11] | 4 | 10 |

◼ Data taken from Iowa Medicaid State Plan Amendments

◼ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and by Jennifer Vermeer Declaration dated 7/16/09

[1] Beginning with TN #MS-90-13, the FUL is described as the maximum allowable cost or MAC in all of Iowa's State Plan documents, and the state MAC is later (beginning with TN #MS-02-24) referred to as SMAC.  (HHD077-0069)

[2] Per TN #MS-90-13, the dispensing fee for MAC and Schedule II drugs is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $4.02. The dispensing fee for non-MAC drugs is the lower of: the pharmacist's customary fee to the general public, the 75th percentile of fees charged in the state, or a fee of $6.25.   (HHD077-0069)

[3] Beginning in 1987 and through 2/29/92, an incentive fee of $.50 was paid to pharmacies if $1.50 was saved per prescription by the use of generics.

[4] Beginning with TN #MS-90-13, an additional reimbursement of one cent per dose shall be added to the allowable ingredient cost of a prescription for an oral solid if the drug is dispensed to a patient in a nursing home in unit dose packing prepared by the pharmacist.  (HHD077-0069)

[5] Beginning with TN #MS-99-2, Schedule II drugs no longer referenced.  (HHD077-0069)

[6] Beginning with TN #MS-90-13, the State of Iowa used the Average Wholesale Price (AWP) as published by First Data Bank. Per TN #MS-05-013 eff. 6/25/05   (HHD077-0064)  Iowa has used the AWP as published by MediSpan.  (HHD077-0069)

[7] TN #MS 02-24   (HHD077-0072)  effective 11/01/02 establishes a $5.17 dispensing fee effective on 7/1/02 and a SMAC program .  Per the State, SMAC rates were implemented on January 13, 2003.

[8] Beginning 11/1/02, SMAC prices were set as Average Wholesale Acquisition Price for a drug and all equivalents adjusted by a multiplier of at least 1.0, plus a dispensing fee.  The multiplier is set by the Department on a quarterly basis, or as necessary, to ensure adequate product availability.  Drug acquisition cost information is obtained through surveys of providers who are required to submit invoices. The Department used a multiplier of 2.1 until 3/28/03, when the multiplier was reduced to 1.4. The initial criteria for inclusion of a drug in the SMAC rate setting was:
  * SMAC Multiplier: Once the multiplier is applied to the average acquisition cost (brand cost information is included), any SMAC rate that exceeds the EAC or the FUL rate would not be applied.
  * Minimum FDA Drug Rating:  Require AB-Rated Products  (Beginning 9/13/04, the minimum drug rating was changed to A-Rated Products.)
  * Minimum Availability Threshold: Require generic products available from a minimum of 3 separate drug manufacturers.
  * Minimum Cost Information: Require at least 30 pricing observations for any brand product and its equivalent drugs.
  * Narrow Therapeutic Index drugs may have been excluded from inclusion in SMAC rates based on feedback from the Drug Utilization Review Commission Commission.  However, an FUL rate may/may not have been applied.

[9] DOJ pricing was implemented on 12/1/2001 and continues to be used through the present.

[10] Effective 10/1/2003 with NCPDP version 5.1 implementation, all compounds had to be billed on an ingredient by ingredient basis. Prior to 5.1, Iowa Medicaid allowed pharmacies to bill for compounded claims using the NDC of one of the active ingredients, adjusting the price to the full compound price online for those claims $30 and under. Claims that exceeded $30 had to be billed on the Universal Claim Form on an ingredient by ingredient basis.

[11] Dates, dispensing fees, and other information reviewed and verified as accurate in Vermeer Declaration dated 7/16/09

State of:   **KANSAS**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[10] | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Effective Time Period** | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Single Source | Multi-Source | IV Fluids | Blood Fraction Products | | **Brand/Generic** |
| x/x/1991 - x/x/1992 | Y | Y | Y | | Y | AWP - 10%; DP[6] | AWP - 10%; DP[6] | | | Y[8] | $3.75 - $6.10[1,2] |
| x/x/1992 - 12/31/1994 | Y | Y | Y | | Y | AWP - 10%; DP[6] | AWP - 10%; DP[6] | | | Y[8] | $3.85 - $6.97[1,2] |
| 1/1/1995 - 4/30/1996 | Y | Y | Y | | Y | AWP - 10%; DP[6] | AWP - 10%; DP[6] | AWP - 50% | | Y[8] | $3.85 - $6.97[1,2,3,4,5] |
| 5/1/1996 - x/x/1997 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[12] | Y[8] | $2.52 - $6.71[1,2] |
| x/x/1997 - x/x/1998 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[12] | Y[8] | $4.82 (avg)[1,2] |
| x/x/1998 - x/x/1999 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[12] | Y[8] | $4.95 (avg)[2] |
| x/x/1999 - 7/31/2000 | Y | Y | Y | Y[11] | N | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[12] | Y[8] | $2.78 - $6.71[2] |
| 8/1/2000 - 6/30/2002 | Y | Y | Y | Y[11] | | AWP - 10% | AWP - 10% | AWP - 50% | AWP - 30%[12] | Y[8] | $4.50 |
| 7/1/2002 - 2/17/2003 | Y | Y | Y | Y[11] | | AWP - 11%[13] | AWP - 27%[13] | AWP - 50% | AWP - 30%[12] | Y[8] | $3.40 |
| 2/18/2003 - 10/15/2003 | Y | Y | Y | Y[11] | | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[12] | Y[8] | $3.40 |
| 10/16/2003 - 5/27/2004 | N[7] | Y | Y | Y[11] | | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[12] | Y[8] | $3.40 |
| 5/28/2004 - 4/3/2005 | N[7] | Y | Y | Y[11] | | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[12] | Y[9] | $3.40 |
| 4/4/2005 - Present | Y[7] | Y | Y | Y[11] | | AWP - 13% | AWP - 27% | AWP - 50% | AWP - 30%[12] | Y[9] | $3.40 |

Legend/Prescription Drugs

Data taken from Kansas Medicaid State Plan Amendments

Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

Data provided by the Kansas Health Policy Authority

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per 1991, 1992, 1993, 1994, 1996, 1997 NPC Publications:  The professional fees are based upon each individual pharmacy's historical operating costs as determined by analysis of verifiable data submitted by each pharmacy to the agency. Professional fee determination is limited to the lowest of:  (a) the 85th percentile of allocated costs per prescription for all pharmacies filing a cost report plus a reasonable profit, or (b) usual and customary fee charges of each individual pharmacy as determined by survey.  "Acquisition cost" means the   allowable price determined by the agency for each covered drug in accordance with state and federal regulations.

[2] 1991 - 2000 NPC Publications report:  Variable fee per prescription established for each individual participating pharmacy within the ranges of  (1991) $3.75 - $6.10; (1992, 1993, 1994, 1995) $3.85 - $6.97; (1996) $2.52 - $6.71; (1997) average $4.82; (1998) average $4.94; (1999) average $4.95; (2000) $2.78 - $6.71, $4.94 average. Per State, dispensing fees set by an accounting firm.

[3] Per TN MS-95-02, effective 01/01/1995: The dispensing fee assigned to each pharmacy provider is based upon agency determinations which consider the lesser of the individual pharmacies' average gross margin per prescription as charged to the general public and determined by a usual and customary prescription price survey submitted by the pharmacy, or the fee determined per analysis of the individual pharmacies' cost study report, which is submitted by the pharmacy and reflects the labor and overhead costs required to dispense a single prescription, plus a standard profit factor.  The totals from these calculations are reduced by $.26 for the final dispensing fee determination.  The individual pharmacies' allowable expenses are subject to percentile limitations as determined by an array of participating providers.  Individual fee determinations are also subject to reevaluation and adjustment when report data exceeds regression analysis norms by a factor greater than 1.0 standard error of estimation.  (HHD077-0098)

[4] Per TN MS-95-02, effective 01/01/1995: Pharmacy providers who do not submit a usual and customary prescription price survey and a cost study report, when required, are reimbursed at the agency-determined allowable product cost for covered drugs with a zero dispensing fee.  (HHD077-0098)

[5] Per TN MS-95-02, effective 01/01/1995:  Each of the three following types will have a dispensing fee assignment set at the mean fee determined from the pharmacy cost study analysis:  (1) Out-of-state pharmacies which are not located in border cities as defined in the Provider Manual, and do not exceed 100 prescription claims annually; (2) New pharmacies, with less than six months' history completed prior to the date specified in the cost report; (3) Acute care institutional pharmacies.  (HHD077-0098)

[6] Per 1991, 1992, 1993 NPC Publications, reimbursement includes direct prices for one company. 1994,1995 NPC Publications report **direct prices for Merck.**  Direct price reference removed in 1996 NPC.

[7] When the new MMIS was implemented on 10/16/03, the Gross Amount Due (GAD) field was inadvertently taken from the NCPDP 5.1 claim, and the Usual & Customary pricing field was not carried forward in the new MMIS.  This was corrected effective with processing date beginning 4/4/05.

[8] Higher reimbursement for certain brand drugs paying at SMAC or FUL. This began 2/19/1990 with a small list of NDCs.

[9] Implemented policy E2003-032 to allow single source reimbursement (currently AWP-13%) for brand multi-source drugs if criteria met.

[10] The State used MediSpan under the old EDS contract and First DataBank with BCBS and the current EDS contract.

[11] Effective May 1, 2000, Kansas used the DOJ prices on the 400 to 500 NDCs as an AWP. Currently these SMACs remain on several of the DOJ NDCs. Some of the DOJ NDCs have been adjusted to meet provider costs because several pharmacies could not access certain DOJ NDCs at the DOJ AWP's.

[12] Reimbursement for blood fractions is AWP-30% or the Kansas Department of Health and Environment contract pricing, whichever is less.

[13] Per state, EAC changes established in TN #MS-02-09 (HHD077-0101) effective 7/01/02 were not implemented until 10/1/02.

07/21/09

State of:   __KENTUCKY__

**Medicaid Pharmacy Reimbursement Methodology**

| | Prescription/Legend Drugs | | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | | Compound Drugs |
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [2] | | SMAC Methodology | | | | | | | |
| Effective Time Period | Usual and Customary | Gross Amount Due | FUL/FMAC | EAC [2] | SMAC | Brand | Generic | | | Brand | Generic | Brand NF Resident | Generic NF Resident | Unit Dose Packaging | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/28/1990 - 3/31/1991 | Y | Y | Y | Y | N | AWP - 10% or DP [3] | AWP - 10% or DP [3] | | Y | $3.25 | $3.25 | $3.25 | $3.25 | Plus $.02-$.04 [5] | |
| 4/1/1991 - 6/30/1991 | Y | Y | Y | Y | N | AWP - 10% or DP [6] | AWP - 10% or DP [6] | | Y | $3.25 | $3.25 | $3.25 | $3.25 | Plus $.02-$.04 [5] | |
| 7/1/1991 - 1/15/2001 | Y | Y | Y | Y | N | AWP - 10% or DP [4] | AWP - 10% or DP [4] | | Y | $4.75 | $4.75 | $5.75 | $5.75 | Plus $.02-$.04 [8] | |
| 1/16/2001 - 3/31/2002 | Y | Y | Y | Y | N | AWP - 10% [7] | AWP - 10% [7] | | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | |
| 4/1/2002 - 3/31/2003 | Y | Y | Y | Y | N | AWP - 12% | AWP - 12% | | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | [12] |
| 4/1/2003 - 12/2/2004 | Y | Y | Y | Y | Y | AWP - 12% | AWP - 12% | [10] | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | [12] |
| 12/3/2004 - 2/22/2005 | Y [1] | Y [13] | Y | Y | Y | AWP - 12% | AWP - 12% | [11] | Y | $4.51 | $4.51 | $4.51 | $4.51 | Plus $.02-$.04 [9] | [12] |
| 2/23/2005 - Present | Y [1] | Y [15] | Y | Y | Y | AWP - 15% | AWP - 14% | [11] | Y | $4.50 | $5.00 | $4.50 | $5.00 | Plus $.02 [14] | [12] |

<span style="color:blue">▅</span> Data taken from Kentucky Medicaid State Plan Amendments

<span style="color:purple">▅</span> Data provided by John Hoffmann, Division of Information Systems

<span style="color:green">▅</span> Data provided by Bahr deposition taken 1/29/08, Kustra deposition taken 5/29/08, and document production by Kentucky to Roxane

<span style="color:black">▅</span> Data provided by administrative rule 907 KAR 1:020 and 1:021

[1] Per KY_DMS_00000000176297, the usual and customary charge is the amount that a pharmacist can typically expect to receive from a pharmacy benefits manager (PBM); reflects the real world experience in actual reimbursement rates from PBMs.

[2] Per Kustra deposition pp. 366-367 and Bahr deposition pp.149 and 293-294, the Commonwealth uses First DataBank for pricing.

[3] Per 907 KAR 1:020 Section 1(1)(b) adopted 6/19/91, when an AWP and a direct price are listed for drugs provided by those companies who had determined that at least 50% of their products were sold directly to Kentucky pharmacies, and for which the Medicaid Program used direct pricing as of 9/30/1990, reimbursement for the drug cost shall be **the lesser of the direct price, the FMAC, or AWP-10%, or the usual and customary billed charge.**

[4] Per TN #91-12, the EAC for drugs shall not exceed AWP - 10%; if an AWP is not listed, the EAC shall be the direct price. Reimbursement for drugs provided to patients in nursing facility brain injury units and nursing facility ventilator dependent units shall be as a part of the all inclusive rate for the unit and the payments for such drugs shall be in accordance with the MAC/EAC upper limits.

[5] Per 907 KAR 1:020 Section 1(1)(e) and Section 2(2) adopted 6/19/91, for nursing facility residents meeting Medicaid patient status criteria, there shall be no more than one(1) dispensing fee allowed per drug within a calendar month for maintenance drugs, and no more than two (2) dispensing fee allowed per drug within a calendar month for other drugs, except Schedules II, III, and IV controlled substances and non-solid dosage forms, including topical medication preparations, for which no more than four (4) dispensing fees per drug shall be allowed within a calendar month. An addition to the $3.25 dispensing fee shall be made for drugs dispensed through the pharmacy outpatient drug program in the amount of two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist; effective 5/1/1991 the unit dose dispensing fee addition shall be paid, as appropriate, even though the usual dispensing fee is not paid due to monthly limits on dispensing fees.

[6] Per 907 KAR 1:020 Section 1(1)(b) adopted 6/19/91, when an AWP is listed, reimbursement for the drug cost shall be the lesser of the FMAC or AWP - 10% plus a dispensing fee (and unit dose add-on as appropriate) or the usual and customary billed charge. If an AWP is not listed, reimbursement shall be the lesser of the FMAC or Direct Price plus a dispensing fee (and unit-dose add-on as appropriate) or the usual and customary billed charge.

[7] Per TN #01-04, the following drugs are excluded from coverage through the Outpatient Pharmacy Program: LTE (less than effective) FDA rated drugs; a drug that has reached the termination date established by the drug manufacturer; a drug for which the drug manufacturer has not entered into or has not complied with a rebate agreement in accordance with 42 USC 1396r-8(a) unless there has been a review and determination by the department that it shall be in the best interest of Medicaid recipients for the department to make payment for the non-rebated drug; and, a drug provided to a recipient in an institution in which drugs are considered a part of the reasonable allowable costs under the Kentucky Medicaid Program.

[8] Per TN #91-12, for nursing facility residents meeting Medicaid patient status criteria, there shall be no more than one dispensing fee allowed per calendar month for maintenance drugs and no more than two (2) dispensing fees allowed per drug within a calendar month for other drugs, except for Schedules II, III, and IV controlled substances and for non-solid dosage forms, including topical medication preparations, for which no more than four (4) dispensing fees per drug per calendar month. An addition to the $5.75 dispensing fee shall be made in the amount of two (2) cents per unit dose for unit dose drugs packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

[9] Beginning with TN 01-23 effective 8/15/01, for nursing facility residents meeting Medicaid patient status, in addition to the $4.51 dispensing fee two (2) cents per unit dose for unit dose packaged in unit dose form by the manufacturer and four (4) cents per unit dose for unit dose drugs packaged in unit dose form by the pharmacist.

[10] Per TN #03-009, a SMAC may be established for a drug only if a federal upper limit did not exist for the drug and at least one readily and nationally available A-rated generic product did exist.    (See also KY_DMS_00000000176298)

[11] Per TN #04-007, a SMAC may be established for any drug (including generic) for which two or more A-rated therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference exist. The SMAC will be determined by taking into account drug price status (non-rebatable, rebatable), marketplace status (obsolete, regional availability), equivalency rating (A-rated) and relative comparable pricing. Other factors considered are clinical indications of generic substitution, utilization, and availability in the marketplace. Products are then sorted into drug groups by GCN, and then a filter is applied to remove all drug products that are obsolete, are not therapeutically equivalent, or are not available in the marketplace. The acquisition cost for the remaining drug products are analyzed to produce the EAC for the drug group give due consideration (i.e. utilization and availability) to the lower cost products.

[12] Per KY_DMS_00000000176305, payment for compounded prescription will be based upon the EAC from the current price in effect on the date of service for each ingredient, one of which must be a legend item.    Effective sometime prior to 2004, a fee of $1.00 will be added to the reasonable dispensing fee for the extra compounding time required by the pharmacist.

[13] Per KY_DMS_00000000176297, the gross amount due is defined as the acquisition costs of the ingredients plus the expected dispensing fee paid. This does not represent the amount that a pharmacist would expect as reimbursement from the PBM.

[14] Per TN #05-004, for nursing facility residents meeting Medicaid patient status, an incentive of two (2) cents per unit dose shall be paid to the long term care pharmacist for repackaging a non-unit dose drug in unit dose form.

[15] Per KY_DMS_00000000176303 (TN #05-004 effective 2/23/2005), the gross amount due is defined as the total price of a drug claimed from all sources. This includes the drug ingredient cost paid, the dispensing fee paid, and any applicable unit dose re-packaging incentive payments.

**State of:**   **LOUISIANA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement for Brand Drugs | | "Lower of" Reimbursement for Generic Drugs | | | | Estimated Acquisition Cost (EAC) [5] | | LMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | TPN |
| **Effective Time Period** | Usual and Customary | EAC | Usual and Customary | FUL | EAC | LMAC | Independent | Chain | | | | |
| 9/1/1990 [7] - 9/30/1991 | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | AWP - 10.5% [7] | AWP - 10.5% [1,7] | [2] | Y [7] | $4.68 [7] | |
| 10/1/1991 [7] - 6/30/1992 | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | AWP - 10.5% [7] | AWP - 10.5% [1,7] | [2] | Y [7] | $5.00 [7] | |
| 7/1/1992 - 6/30/1993 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.30 [7] | |
| 7/1/1993 [7] - 6/30/1994 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.54 [7] | |
| 7/1/1994 [7] - 6/30/1999 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.77 | |
| 7/1/1999 - 1/31/2000 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 13.5% [3] | [2] | Y | $5.77 | |
| 2/1/2000 - 8/5/2001 | Y | Y | Y | Y | Y | Y | AWP - 15.0% | AWP - 16.5% [4] | [2] | Y | $5.77 | |
| 8/6/2001 - Present [7] | Y | Y | Y | Y | Y | Y | AWP - 13.5% | AWP - 15.0% [4] | [2] | Y | $5.77 | [6] |

  Data taken from Louisiana Medicaid State Plan Amendments

  Data provided by Terrebonne deposition taken 11/7/08 and exhibits and Declaration of M.J. Terrebonne dated 7/20/09

[1] Note: Prior to TN #99-12 effective 7/1/1999, independent and chain pharmacies were not separately distinguished for reimbursement.

[2] Per TN #92-01 et al., the Louisiana Maximum Allowable Cost (LMAC) is the median AWP cost for a specific strength/unit drug determined by listing the wholesale costs for each readily available manufacturer, labeler, etc. and taking the median of those AWP costs.   Per deposition pp. 88-89, this definition also applies to the first two time periods.

[3] Per TN #99-12, chain pharmacies have five or more Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[4] Per TN #00-08 and TN #01-08, chain pharmacies have more than 15 Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[5] Per deposition pp. 78-81, drug file pricing is provided by First DataBank.

[6] Beginning on 7/1/2005, Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

[7] Dates, dispensing fees, compound fees and other information reviewed and verified as accurate in Declaration.

State of:   **MAINE**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Prescription/Legend Drugs | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Reimbursement Methodology Pay the "Lower of" the amounts listed | | | | | Estimated Acquisition Cost (EAC) [17] | | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC [17] | DOJ Pricing | SMAC [1] | Brand | Retail Generic | Institutional [7] | Specialty [14] | Covered brand/ generic drugs **Not** on DSDL [9] | Covered brand/ generic drugs on DSDL [9] | Mail Order Pharmacy Brand | Mail Order Pharmacy Generic | | Brand/Generic | Compound Drugs | All Mail Order Drugs |
| 12/1/1989  -  3/14/1996 | Y | Y | Y | | Y | [2] | [2] | | | | | | | | $3.35 | [3] | |
| 3/15/1996  -  6/30/2002 | Y | Y | Y | Y [19] | Y | AWP-10% | AWP-10% | AWP-71/2% [7] | | | | | | Y | $3.35 | [3, 4, 5, 6] | |
| 7/1/2002  -  8/7/2003 | Y | Y | Y | Y [19] | Y | AWP-13% [8] | AWP-13% [8] | [7] | | | | | | Y [18] | $3.35 | [6] | |
| 8/8/2003  -  2/2/2004 | Y | Y | Y | Y [19] | Y | | | | | AWP-13% [9] | AWP-17% [9] | | | N | $3.35 | [10] | |
| 2/3/2004  -  5/15/2004 | Y | Y | Y | Y [19] | Y | AWP-15% [11] | AWP-13% [11] | | | | AWP-17% [9] | | | N | $3.35 | [10] | |
| 5/16/2004  -  10/31/2005 | Y | Y | Y | Y [19] | Y | AWP-15% [13] | AWP-13% [13] | | | AWP-17% [12] | | AWP-20% | AWP-60% | N | $3.35 | [10] | $1.00 |
| 11/1/2005  -  6/30/2006 | Y | Y | Y | Y [19] | Y | AWP-15% [13] | AWP-13% [13] | AWP-17% [14] | | | | AWP-20% | AWP-60% | N | $3.35 | [10] | $1.00 |
| 7/1/2006  -  Present | Y | Y | Y | Y [19] | Y | AWP-15% [15] | AWP-13% [15, 16] | AWP-17% | | | | AWP-20% | AWP-60% | N | $3.35 | [10] | $1.00 |

<span style="color:blue">████</span>  Data taken from Maine Medicaid State Plan Amendments

<span style="color:green">████</span>  Data provided by Walsh deposition taken 3/26/08 and *U.S. v. Abbott Laboratories* Response to Subpoena Duces Tecum Request No. 2 Section 80 Pharmacy Rule Changes

<span style="color:purple">████</span>  Policy clarification provided by Ms. Jude Walsh

[1] Beginning with TN #90-21, Maine identifies its State SMAC program as the Maine Maximum Allowable Cost (MMAC) program. (HHD040-0120)

[2] EAC is, as close as feasible, the price paid for high volume drugs by providers. The Department will periodically publish a list of drugs covered by EAC, MAC, or MMAC and their prices. Reimbursement at the AWP will be made for those drugs not covered by EAC, MAC or MMAC. AWP is the price generally charged by wholesalers and will not exceed 18% above direct cost. All unit dose or modified unit dose drugs except liquids and ointments and Class II controlled drugs shall be returned to the pharmacy for credit.

[3] Professional fees for compound drugs are as follows:  $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; and $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[4] Effective 7/23/1998, the previous list of professional fees for compound drugs was expanded to include a tier of lower fees for claims electronically submitted. The new rates added were: $3.10 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.10 for compounding handmade suppositories, powder papers, capsules and talbet triturates and for mixing home TPN (hyperalimentation); and $4.10 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions.

[5] Effective 1/15/2001, the list of professional fees for compound drugs was further expanded to include:  $12.50 for filling insulin syringes for a maximum 14-day supply for all claims electronically submitted.

[6] Effective 7/1/2001, $5.35 will be paid for all claims submitted electronically for the most expensive ingredient in the compound as long as it has a valid NDC and is covered under a State's rebate agreement. Eff. 8/29/01, the compounding fees of $3.35, $5.35, $4.35, and $12.50 as described previously remain in place but apply to paper submissions only. The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $0.25 or less, $0.25 is the allowed charge.

[7] For pharmacy providers serving nursing facilities, ICFs/MR and boarding homes for which Medicaid is billed, reimbursement is at AWP-7 1/2% for only the actual doses administered, with one dispensing fee per month; and the program results in no drugs subject to return for credit.  This was discontinued on 7/1/2002.

[8] Per TN #02-005, as a result of a temporary restraining order imposed on the State of Maine, EAC was defined as AWP-10% for the period from 11 am 7/29/02 until 8/7/02. (HHD040-0096)

[9] Effective 8/8/03 by emergency rule, Direct Supply Drug List (DSDL) was established to replace reimbursement for retail pharmacies.  DSDL is defined as a list of covered drugs established by the Department, consisting of certain maintenance drugs including specialty drugs, caloric supplements and substitutes, and medical foods that the Department has determined may be obtained safely and efficiently through mail order.  The Department may pay a lower rate for drugs on the DSDL to any mail order pharmacy that agrees by contract with the Department to accept such lower reimbursement rate for such drugs.

[10] Effective on or before 8/8/03, professional fees for compound drugs were reestablished at the following rates:  $3.35 for an amount dispensed from a stock supply, or for solutions or lotions involving no weighing; $5.35 for compounding handmade suppositories, powder papers, capsules and tablet triturates and for mixing home TPN hyperalimentation; $4.35 for compounding ointments and for solutions or lotions involving weighing one or more ingredients and mixing home intravenous (IV) solutions; and $12.50 for filling insulin syringes for a maximum 14 day supply.  The ingredient cost is the sum of the cost of the defined ingredients contained in the compound drug. For any ingredients that cost $.25 or less, $.25 is the allowed charge.

[11] Effective 2/3/04 by emergency rule, rate applies only to covered generic and generic drugs not on the Direct Supply Drug List. These rates replace the more general "Covered Drug Not on DSDL" category that was effective for the previous period.

[12] Reimbursement definitions changed by rule, so this rate now applies to Direct Supply Retail Drug List (DSRDL) providers and Direct  Supply Mail Order Drug List (DSMODL) providers for both generic and brand name drugs.

[13] Effective 11/2/04, pharmacies serving members in rural areas became eligible to receive an incentive payment  applied as a professional fee  and calculated by creating a percentile score based on established criteria; determined and paid quarterly.  The definition of eligible pharmacy was expanded on 5/5/05 to include pharmacies that are not located in rural areas but that serve a large number of members who live in rural areas.

[14] New Specialty Pharmacy provider category defined as pharmacies approved by the Department to dispense specialty drugs defined as covered drugs that, due to their high cost, short shelf life, special handling requirements and instruction, or other factors, are obtained from Specialty Pharmacy providers. Specialty drugs are prescribed for a limited number of usually chronic conditions that generally affect a relatively small portion of the population.

[15] Effective 3/1/2007, rule language amended to allow the Rural Dispensing Fee Adjustment as a supplemental dispensing fee that ranges from $0.55 to $0.65 per prescription, which will change quarterly to reflect the prior quarter's number of prescriptions filled.

[16] Effective 3/1/2007, a new pricing option was added to the lower of methodology for reimbursement of generic drugs to retail pharmacies:  EAC is the lowest of: U&C; AWP-13%, FUL, MMUL, or the State Upper Limit (250% of Average Manufacturer's Cost for multi-source generic drugs).

[17] Per deposition p. 72, the State used First DataBank for pricing and then switched to MediSpan.  Per State, the switch occurred on 7/1/02.

[18] DAW 1 logic turned off on 7/1/2003.

[19] DOJ pricing was implemented on 5/1/2000 and remains in effect through today.

State of : __MARYLAND__

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[12] Brand/Generic | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee — Brand | | Dispensing Fee — Generic | | Compounded Home IV Therapy[10] |
| | Usual and Customary | FGUL | EAC | SMAC | DOJ Pricing | | | Retail | Nursing Home | Retail | Nursing Home | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1991 - 3/31/1991 | Y | | Y | Y[1] | | AWP or Direct Price[2] | Y | $3.70[8] | | $3.70[8] | | [10] |
| 4/1/1991 - 6/30/1992 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | [4] | | [4] | | [10] |
| 7/1/1992 - 6/30/1995 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | [5] | | [5] | | [10] |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | $4.66 | | $4.66 | | $7.70 |
| 7/1/1996 - 9/30/1998 | Y | Y | Y | Y[1] | | WAC+10% or Direct Price+10% or Distributor's Price+10% or AWP-10%[3] | Y | $4.21 | | $4.21 | | $7.25 |
| 10/1/1998 - 12/2/2002 | Y | Y | Y | Y[1] | Y[13] | Lowest of: WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10%[6] | Y | $4.21 | $5.25[6,9] | $4.21 | $5.25[6,9] | $7.25 |
| 12/3/2002[14] - 6/30/2003 | Y | Y | Y | Y[7] | | Lowest of: WAC + 10%, Direct Price + 10%, Distributor's Price + 10%, and AWP - 10% | Y | $3.69[14] | $4.65[9,14] | $4.69[14] | $5.65[9,14] | $7.25 |
| 7/1/2003 - 1/31/2004 | Y | Y | Y | Y[7] | | Lowest of : WAC + 9%, Direct Price + 9%, Distributor's Price + 9%, and AWP - 11%[8] | Y | $3.69 | $4.65[9] | $4.69 | $5.65[9] | $7.25 |
| 2/1/2004 - 6/30/2004 | Y | Y | Y | Y[7] | | Lowest of : WAC + 8%, Direct Price + 8%, Distributor's Price + 8%, and AWP - 12% | Y | $3.69 | $4.65[9] | $4.69 | $5.65[9] | $7.25 |
| 7/1/2004 - Present | Y | Y | Y | Y[7] | | Lowest of: WAC + 8%, Direct Price + 8%, and AWP - 12%[10] | N[11] | $2.69 | $3.69[9] | $3.69 | $4.69[9] | $7.25 |

Legend/Prescription Drugs

- ■ (blue) Data taken from Maryland Medicaid State Plan Amendments
- ■ (green) Data provided by Fine deposition taken 12-9-08 and Abbott Exhibits
- ■ (black) Data taken from Maryland Pharmacy Program Advisory No. 10 Revised
- ■ (purple) Data received from Jeff Gruel, Director, Pharmacy Program

[1] Per TN #88-8 (HHD039-0220-HHD039-0221) et al., the maximum amount the Program will reimburse for selected, approved interchangeable multiple source drugs is called the Interchangeable Drug Cost (IDC). The IDC is determined by ascertaining the availability of the product from the two principal sources of supply within the State and determining the lowest cost from among the approved interchangeable multiple source products available from each source and selecting the higher of these two costs. Maximum allowable costs will be reviewed and updated at least once every year, whenever there is an emergency recall by the Food and Drug Administration, or temporarily, if there is an active shortage of supply from available sources. (Beginning 1994, see also Fine deposition pp. 201-205, Ex. 15)

[2] Per Fine deposition pp. 151-152, EAC was AWP or Direct Price for top 100 drugs.   Per TN #91-19  (HHD039-0222), the EAC is the amount generally paid by providers for a drug based on the cost and availability of the most commonly stocked package size and the cost of the product from the least expensive usual source of supply. The allowable cost is the EAC established by the Department. The Department determines EACs by consulting local wholesalers' price listings, published drug compendia, and distributors/manufacturers' catalogues. Certain highly utilized drugs have EACs based on direct rather than wholesale prices and/or in larger than minimum package sizes. EACs for products not available through local wholesale sources are based on distributors' direct prices. For medically necessary brand drugs, the EAC of the brand drug is the allowable cost.

[3] Per TN #91-21  (Ex. 9),  the EAC is based on the following criteria in order of selection: WAC + 10%; or Direct Price + 10% if WAC is not available; or Distributor's Price + 10% if neither WAC nor Direct Price is available; or AWP - 10% if WAC, Direct Price, or Distributor's Price are not available.

[4] Per Abbott MD 8, from 4/1/1991 - 7/29/1991 the DF was $4.69 if ingredient cost < $34.92 and $5.92 if ingredient cost = or > $34.92. From 7/30/1991 - 6/30/1992 the DF was $5.94 if ingredient cost < $36.34 and $7.17 if ingredient cost = or > $36.34.

[5] Per Abbott MD 8, from 7/1/1992 - 6/30/1993 the DF was $4.94 if ingredient cost < $47.83 and $6.17 if ingredient cost = or > $47.83. From 7/1/1993 - 6/30/1994 the DF was $4.94 if ingredient cost < $56.87 and $6.17 if ingredient cost = or > $56.87. From 7/1/1994 - 6/30/1995 the DF was $4.94 if ingredient cost < $61.94 and $6.17 if ingredient cost = or > $61.94.

[6] Per Abbott MD 8, effective July 1,1998 the state implemented a change to the EAC methodology and a higher dispensing fee $5.25 for nursing home (NH) prescriptions (Rxs). Per TN #99-3  (HHD039-0178),  for NH Rxs, credits, less the paid dispensing fee, for unused unit dose medication and any other medication which may legally be returned to stock shall be made within 60 days of Program payment and include adjustments for leave of absence Rxs; and multiple Rxs dispensed to a recipient residing in a NH for the same drug product or compound Rx shall receive only one professional fee per calendar month except for: leave of absence Rxs, compounded Rxs for home IV therapy, and Rxs for Schedule II - IV controlled dangerous substances.

[7] Per TN #03-7 effective 12/3/02, the State of Maryland began determining the IDC costs as follows. The IDC is determined as the higher of: the lowest estimated acquisition cost of the generically equivalent products in the State, or the lowest cost from among the approved interchangeable multiple source products from each wholesaler that the Program has current and accurate pricing information, or utilizing a price from a commercial generic pricing source.  (For IDC pricing, see also Fine deposition pp. 201-205, Ex. 15)

[8] Abbott Ex. MD 8, p. MD0000739.

[9] Per TN #99-3 et al., standard dispensing fee applies to nursing home resident prescriptions not dispensed for home IV therapy.

[10] Compounded drugs over a certain dollar threshold were priced manually. (Fine deposition pp. 162 - 167, 185, 311-317, Tetkoski deposition pp. 102-103)

[11] Effective 10/15/04, the Program implemented a Brand Medically Necessary edit, requiring the prescriber to first obtain prior authorization.

[12] State uses First DataBank and the Red Book for pricing.  (See Fine deposition pp. 267, 311-312 and Tetkoski deposition pp. 122, 127-131, 245)

[13] Per Tetkoski deposition pp. 121-123, Maryland implemented DOJ prices for only a short time.

[14] Per state, dispensing changes reflected in TN #99-3 were revised effective 11/1/2002.

07/21/2009

State of:   **MASSACHUSETTS**

**Medicaid Pharmacy Reimbursement Methodology Summary**

### Legend/Prescription Drugs

| Effective Time Period | Non-MAC/non-MMAC Drugs Pay lower of:[4] EAC[3] | Non-MAC/non-MMAC Drugs Pay lower of:[4] Usual and Customary[1] | Multi-Source Drugs with MAC or MMAC Pay lower of:[4] FUL/MAC | Multi-Source Drugs with MAC or MMAC Pay lower of:[4] MMAC/MUL | Multi-Source Drugs with MAC or MMAC Pay lower of:[4] Usual and Customary[1] | Estimated Acquisition Cost (EAC)[3] FUL/MMAC Drugs | Estimated Acquisition Cost (EAC)[3] Non-FUL/MMAC Drugs | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Brand | Dispensing Fee Generic | Compounds |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/1989 - 1/31/1995 | Y | Y | Y | Y | Y | | WAC + 10%; AWP - 10% [3] | Y | $4.06 | $4.06 | [8] |
| | | | **Pay "Lower of" for All Legend Drugs**[4]  | | | | | | | | |
| 2/1/1995 - 12/16/2001 | Y | Y[5] | Y | Y | Y[5] | WAC + 10% [2]; AWP - 10% [3] | WAC + 10% [2]; AWP - 10% [3] | Y | $3.00 | $3.00 | [8] |
| 12/17/2001 [3] - 8/2/2002 | Y | Y[5] | Y | Y | Y[5] | WAC + 10%; AWP - 12% [3] | WAC + 10%; AWP - 12% [3] | Y | $3.00 | $3.00 | [8] |
| 8/3/2002 [3] - 10/31/2002 | Y | Y[5] | Y | Y | Y[5] | WAC + 6%; AWP - 15.2% [3] | WAC + 6%; AWP - 15.2% [3] | Y | $3.00 | $3.00 | [8] |
| 11/1/2002 [9] - 3/30/2003 | Y | Y[5] | Y | Y | Y[5] | WAC + 6%; AWP - 15.2% [3] | WAC + 6%; AWP - 15.2% [3] | Y | $5.00 | $3.50 | [8] |
| 4/1/2003 [6] - 11/30/2003 | Y[6] | Y[5] | Y | Y[6] | Y[5] | WAC + 5% [7]; AWP - 16% [11] | WAC + 5% [7]; AWP - 16% [11] | Y | $5.00 | $3.50 | [8] |
| 12/1/2003 - Present [11] | Y | Y[5,10] | Y | Y[6] | Y[5,10] | WAC + 5% [7]; AWP - 16% [11] | WAC + 5% [7]; AWP - 16% [11] | Y | $3.00 | $3.00 | [8] |

■ (blue)   Data taken from Massachusetts Medicaid State Plan Amendments

■ (green)   Data taken from Declarations filed on behalf of the Commonwealth of Massachusetts in U.S. District Court (D. Mass.), Case No. 1:03-cv-11865-PBS Document Nos. 479-2, 445, 436-2, and 514-2; and regulations from Massachusetts State Library

■ (black)   Data provided by Westlaw 114.3 MA ADC 31.01 - 31.08

[1] Until 3/15/95, the Usual and Customary Charge was defined as "the price charged for a given volume of drugs (legend or non-legend) on a given day by an eligible pharmacy provider to its retail customers (institutional purchasers as well as over the counter purchasers). If a drug is on sale for a one week period, the usual and customary charge for that drug during that week is the sale price. If the price of a drug is discounted to certain groups of retail customers, the usual and customary charge for that volume of drugs for that group is the discounted price. (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 pp. 13, 17, 19))

[2] Effective 11/1/1988, the State Upper Payment Limit is the Massachusetts Maximum Allowable Charge (MMAC), which is based on 150% of the lowest price listed (in package sizes of 100 units or the commonly listed size) in accordance with the methodology employed by HCFA pursuant to 42 CFR Section 446.332 as amended effective 10/29/1987. (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 p. 12)). Per MA011894 (TN #89-3), WAC + 10% established as EAC.

[3] Per declarations made in U.S. District Court - District of Massachusetts by David Sibor (Case 1:03-cv-11865-PBS Document 445 filed 02/28/2008), Account Manager with ACS State Healthcare (Massachusetts Medicaid Pharmacy claims processing contractor), and Paul Jeffrey, Director of Pharmacy for the Massachusetts Office of Medicaid (Case 1:03-cv-11865-PBS Document 436-2 filed 02/28/2008), MA Medicaid pharmacy claims have been processed primarily using pricing data received from First DataBank (FDB). There was an approximate two year period where the Commonwealth did not receive an update to the pricing from FDB [2000-2001]. Prior to 12/17/2001, when ACS assumed Medicaid Pharmacy claims processing responsibilities, where FDB reported a WAC for a drug, the EAC is WAC + 10%. Where FDB did not report a WAC for a drug and only reported AWP, the EAC was determined as AWP - 10%. (See also Doc 436-2 p. 7.) For the period on and after 12/17/2001, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 10% (if the WAC was available) or AWP - 12% (if the WAC was unavailable). Effective 8/3/2002, ACS was directed to program the payment algorithm to calculate the EAC as WAC + 6% (if WAC was available) or AWP - 15.2% (if WAC was unavailable).

[4] Before 1995, the payment for generics for which an FUL or MMAC was established was the lower of FUL, MMAC or U&C (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 p. 20)). Beginning 2/1/1995, regulations were amended to make the EAC apply to all multiple-source drugs. In addition, the definition of MMAC was dropped and replaced by the Massachusetts Upper Limit (MUL), which was essentially the same as the MMAC but was limited to multiple source drugs for which there was no federal upper limit. (Doc 479-2 pp. 23, 24)

[5] Effective beginning 3/15/95 (First Supplemental Declaration of Richard C. Heidlage, Ex. 1 (Case 1:03-cv-11865-PBS Doc. 479-2 filed 03/31/08 p.23), the Usual and Customary Charge was defined as "the lowest price charged or accepted as payment for a given volume of drugs (legend or non-legend) by an eligible pharmacy provider to any purchaser or reimburser. If a provider can demonstrate to the appropriate governmental agency that a particular contract represents less than 1% of its total prescription revenue, the agency may eliminate that contract from consideration in determining the lowest price." This definition was extended by rule effective 4/1/03 (See Doc. 479-2 p. 33.

[6] Per emergency regulation #5628 (MA Register Numbers 970 and 977), effective 4/1/03, EAC is WAC + 5%, and the definition of the MUL was changed to "... an amount equal to 130% of the price of the least costly therapeutic equivalent as listed in any published or other public source for the most frequently purchased package size." (Per Doc. No. 514-2 (Donohue tutorial) p. 31, this eliminated the restriction on its applicability to multiple source drugs that do not have a FUL and expanded the applicable pricing sources.) (See also Doc. 479-2, pp. 32-33)

[7] A preliminary injunction was entered in *Long Term Care Pharmacy Alliance v. Ferguson*, so WAC + 6% continued to be paid until WAC + 5% was finally implemented on 7/1/04. (See Doc. No. 514-2 (Donohue tutorial) p. 31 and Sibor Declaration dated 7/8/09 p. 3)

[8] For compounded drugs pay the dispensing fee plus: an additional $1.00 for compounding ointments or solutions, or preparing solutions (excluding cough preparations) which involve the weighing of ingredients; or an additional $2.00 for compounding suppositories, or compounding capsules, tablets, triturates or powders.

[9] Per regulation #5616 (MA Register Number 965) effective November 1, 2002, the dispensing fees were increased to $3.50 per single-source prescription dispensed and $5.00 per multi-source prescription dispensed.

[10] Per Doc. #479-2 p. 36, effective 2/1/05, the Usual and Customary Charge was re-defined as "the lowest price that a pharmacy charged or accepted from any health insurer or pharmacy benefit manager for the same quantity of a drug dispensed to a Massachusetts resident on the same date of service. When an insurer and the provider have a contract that specifies that the insurer will pay an average or similarly computed fixed amount for multiple categories of drugs with different acquisition costs, the fixed amount will not be the provider's usual and customary charge. Drugs will be identified by NDC number." (See also TN #05-003 effective 1/1/05). Per Westlaw Register #1130, this definition was further modified to read "the lowest price that an Eligible Provider charges or accepts from any payer for the same quantity of a drug on the same date of service, in Massachusetts, including but not limited to the shelf price, sale price, or advertised price of an over-the-counter drug".

[11] Per Sibor Declaration made on 7/8/09 p.3.

State of: **MICHIGAN**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | | | | | | | | | | | Dispensing Fee ("Lower of") [1,4] | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **"Lower of" Reimbursement Methodology** | | | | | | **Estimated Acquisition Cost (EAC)** [7] | | | **Non-Long Term Care Pharmacy** | | | | **Long Term Care Pharmacy** | | | |
| | | | | | | | | | | | | | **Compounding** | | | | **Compounding** | |
| **Effective Time Period** | Usual and Customary | Actual Acquisition Cost (AAC) [5] | FUL | EAC | Provider's Submitted Charge | SMAC | Chain Pharmacies 5 or > Stores; LTC Pharmacies w/ No Retail Business | Independent & Chain Pharmacies of < Five Stores | Pharmacies which serve beneficiaries with a level of care (LOC) 02 | Physician Override (DAW, Brand Medically Necessary) | Standard | IV Admixtures | Standard | Caps/ Powders/ Suppositories | Standard | IV Admixtures | Unit Dose [6] | Standard | Caps/ Powders/ Suppositories |
| 8/1/1990 [1] - 9/30/1994 [10] | Y | Y | Y | N | Y [10] | Y | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | | Y [10] | $3.72 | | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) [10] | $3.72 | | $0.015 per tablet or capsule | $1.00 | $3.00 (1-24 units); $4.00 (25-48 units); $5.00 (over 48 units) [10] |
| 10/1/1994 [10] - 8/31/1995 [10] | Y | Y | Y | N | Y [10] | Y | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | Lesser of: AAC [5] or AWP-10%; Direct Price [2] | | Y [3] | $3.72 | | $1.00 | $5.00 [10] | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 [10] |
| 9/1/1995 [9] - 7/4/2000 [10] | Y [3] | N | Y | N | Y [10] | Y | AWP - 15.1% | AWP - 13.5% | | Y [3] | $3.72 | | $1.00 | $5.00 | $3.72 | | $0.015 per tablet or capsule | $1.00 | $5.00 |
| 7/5/2000 [10] - 9/30/2000 [10] | Y [10] | N | Y | Y [10] | Y [10] | Y | AWP-15.1% [10] | AWP - 13.5% [10] | | Y [3, 10] | $3.72 [10] | | $6.00 [10] | $10.00 [10] | $3.72 [10] | | $0.015 per tablet or capsule [10] | $6.00 [10] | $10.00 [10] |
| 10/1/2000 [10] - 12/31/2001 [10] | Y [10] | N | Y | Y [10] | Y [10] | Y | AWP-15.1% [10] | AWP - 13.5% [10] | | Y [3, 10] | $3.77 [10] | | $6.00 [10] | $10.00 [10] | $3.77 [10] | | $0.015 per tablet or capsule [10] | $6.00 [10] | $10.00 [10] |
| 1/1/2002 [10] - 12/31/2003 | Y | N | Y | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y [3, 10] | $3.77 | | $6.00 | $10.00 | $3.77 | | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 1/1/2004 - 10/31/2004 [10] | Y [10] | N | Y [10] | Y [10] | Y [10] | Y [10] | AWP-15.1% [10] | AWP - 13.5% [10] | | Y [3, 10] | $3.77 [10] | $7.50 [10] | $6.00 [10] | $10.00 [10] | $3.77 [10] | $7.50 [10] | $0.030 per tablet or capsule | $6.00 [10] | $10.00 [10] |
| 11/1/2004 [10] - 3/31/2005 [10] | Y | N | Y [10] | Y | Y | Y | AWP - 15.1% | AWP - 13.5% | | Y [3, 10] | $2.50 | $7.50 [10] | $6.00 | $10.00 | $2.75 | $7.50 [10] | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2005 [10] - 3/31/2008 [10] | Y | N | Y | AWP - 15.1% [8] | Y | Y | AWP - 13.5% | AWP-15.1% [10] | | Y [3, 10] | $2.50 | $7.50 [10] | $6.00 | $10.00 | $2.75 | $7.50 [10] | $0.030 per tablet or capsule | $6.00 | $10.00 |
| 4/1/2008 [10] - Present | Y | N | Y [10] | Y [10] | Y [10] | | AWP - 13.5% [10] | AWP-15.1% [10] | | Y [3, 10] | $2.50 | $7.50 [10] | $6.00 [10] | $10.00 [10] | $2.75 | $7.50 [10] | | $6.00 [10] | $10.00 [10] |

■ Data taken from Michigan Medicaid State Plan Amendments

■ Data taken from Kenyon deposition taken 3/25/08 and Abbott Deposition Exhibits and Parker Declaration dated July 22, 2009

[1] Effective date and pricing established in Abbott Deposition Exhibit 659 and 660. Dispensing fee for 1991 - 1995 not to exceed standard fees as indicated above.

[2] Reimbursement for the products of Merck, Pfizer, and Upjohn is based on direct price. (Abbott Deposition Ex. 659)

[3] Imposes State MAC upper Limits with nearly 1,000 drugs on MAC list today. Override requires prior authorization - "Dispense as Written." See also TN #95-11 (Abbott Deposition Exhibit 661) effective 8/1/95.

[4] Per Pharmacy Manual III.13.2 (01-02-02), the program does NOT reimburse for prescriptions filled but not dispensed to the beneficiary. For prescriptions returned to stock/not picked up prescriptions, pharmacies must claim adjust or reverse the claim for any payment received, including the dispensing fee.

[5] Per Abbott Deposition Exhibit 657, AAC is payment at the actual invoice cost for a drug product to the pharmacy. Except for a 2% allowance for cash discounts, AAC must reflect trade and quantity discounts, rebates, free goods, and price concessions. Per Pharmacy Manual Ch. III, p.6, Rev. 9-1-91, Medicaid has a screening process for actual acquisition costs payments. Screens are set by: AWP-10%. In most cases, the price allowed will be that associated with the lowest purchase size except unit dose. However, the Program has several drugs where a larger purchase size is used to determine the screen. The size of these larger purchase quantities is indicated to the right of the drug name in Appendix F, Michigan Medicaid Drug List. Exceptions: AWP - Schedule II Drugs; Estimated Retail Price - Reagents, syringes, dietary forumulas; Direct Prices - Products made by: Merck, Sharp and Dohme, Pfizer, and Upjohn.

[6] Per Pharmacy Manual Ch. III, p.9, Rev. 9-1-91, unit dose payment is not allowed for oral liquids.

[7] Michigan Medicaid has had a long term contract with First DataBank.

[8] Effective 4/1/2005, reimbursement for pharmacies with no retail business was discontinued, and LTC pharmacies began receiving reimbursement according to the new definition of "pharmacies who serve beneficiaries with a level of care (LOC) 02".

[9] Per Abbott Deposition Exhibits 658, 663, 669.

[10] Dates, dispensing fees, and other information reviewed and verified as accurate in Parker Declaration.

State of: **MINNESOTA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | DOJ Pricing | Estimated Acquisition Cost (EAC) [10] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Parenteral Nutrition w/Mixing | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | SMAC | | Brand/Generic | Specialty Drugs | | | Brand/Generic | Intravenous Drugs w/Mixing | 1 Liter Qty | >1 Liter Qty |
| 7/1/1990 - 7/31/1991 | Y | Y | Y | Y | | AWP - 10% | | 9 | Y | $4.10 | | | |
| 8/1/1991 - 12/31/1994 | Y | Y | Y [2] | Y | | AWP - 10% | | 9 | Y | $4.10 [1,3] | 8.00 | 30.00 | 44.00 |
| 1/1/1994 - 6/30/1995 | Y | Y | Y | Y | | AWP - 7.6% | | 9 | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 7/1/1995 - 6/30/1997 | Y | Y | Y | Y | | AWP - 9% | | 9 | Y | $4.10 [1] | 8.00 | 30.00 | 44.00 |
| 7/1/1997 - 2/28/2003 | Y | Y | Y | Y | | AWP - 9% | | 9 | Y | $3.65 [1,5] | 8.00 | 30.00 | 44.00 |
| 3/1/2003 - 6/29/2003 | Y | Y | Y | Y | Y [4] | AWP - 14% | | 9 | Y | $8.00 [12] | 30.00 | 44.00 | |
| 7/1/2003 - 7/31/2005 | Y | Y | Y | Y | Y [4] | AWP - 11.5% | | 9 | Y [6] | $3.65 [1,7] | $8.00 [12] | 30.00 | 44.00 |
| 8/1/2005 - Present | Y | Y | Y | Y | | AWP - 12% | 8 | 9,11 | Y [6] | $3.65 [1] | $8.00 [12] | 30.00 | 44.00 |

<span style="color:blue">■</span> Data taken from Minnesota Medicaid State Plan Amendments

<span style="color:green">■</span> Data taken from videotaped deposition of Wiberg, 5/4/2006 (ATP004-0002 thru ATP004-0078) and documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

<span style="color:purple">■</span> Data taken from Jarvis Jackson, Staff Pharmacist

<span style="color:red">■</span> Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Beginning with TN #91-21 (HHD075-0358), effective 08/01/1991, an additional $.30 dispensing fee allowed for legend drug prescriptions dispensed using a pharmacy packaging unit-dose blister card system.

[2] Per TN #91-21 (HHD075-0349) et al., the prescribed drug must be a drug or compounded prescription that is made by a manufacturer that has a rebate with the Health Care Financing Admininstration (HCFA) and included in the Minnesota Department of Human Services formulary. The formulary is established in accordance with Section 1927 of the Social Security Act.

[3] Per TN 91-21 (HHD075-0349) : A prescribed drug must be dispensed in the quantity specified on the prescription unless the pharmacy is using unit dose dispensing or the specified quantity is not available in the pharmacy when the prescription is dispensed. Only one dispensing fee is allowed for dispensing the quantity specified. Except as provided in item (6), the dispensing fee billed by or paid to a particular pharmacy or dispensing physician for a maintenance drug for recipients is limited to one fee per 30-day supply: (6) More than one dispensing fee per calendar month for maintenance drugs for a recipient is allowed if (a) the record kept by the pharmacy or dispensing physician documents that there is a significant chance of overdosage by the recipient if a larger quantity is dispensed, and if the pharmacist or dispensing physician writes a statement of this reason on the prescription; or (b) the drug is clozapine.

[4] Per TN 91-21 effective 03/01/2003 (HHD075-0242) , the State agency establishes the acquisition cost to equal (AWP minus 14%), except when a drug has its wholesale price reduced as a result of the actions of the National Association of Medicaid Fraud Control Units. In that case, the State establishes the actual acquisition cost at the reduced AWP without the percent reduction.

[5] Per TN 98-32 effective 09/21/1998 (HHD075-0363) : an additional dispensing fee per prescription shall be paid to pharmicists using an in-pharmacy packaged unit dose system (except OTC) approved by the Board of Pharmacy for the return of drugs when dispensing to recipients in a long-term care facility if 1) the pharmacy is registered with the Department, 2) a minimum 30-day supply of the drug is dispensed, although alesser quantity may be dispensed for an acute course of medication therapy for a specified time period.

[6] Per TN 03-29 (HHD075-0247) , generic drugs must be dispensed to recipients if the practitioner has not written in his/her own handwriting "DAW-Brand Necessary on the prescription. Effective 01/02/2004, even if the practitioner has written "DAW-Brand Necessary" on the prescription, authorization is required to dispense brand name drugs.

[7] Per TN 03-29 (HHD075-0253) , effective 10/01/2003, the dispensed quantity of a prescribed drug must not exceed a 34-day supply unless authorized by the Department.

[8] Per TN 05-09 (HHD075-0327) : effective 07/1/2005: (1) For antihemophilic factor drugs, the State agency establishes the actual acquisition cost to equal 70% of the average wholesale price (AWP-30%). (2) The rate for specialty pharmacy products is 86%, 85%, or 83% of average wholesale price. The rate used is dependent upon the actual acquisition cost for the product. Specialty pharmacy products are those used by a small number of recipients or recipients with complex and chronic diseases that require expensive and challenging drug regimens. A chart is provided listing the class of specialty pharmacy products receiving the various discounts.

[9] State has had the ability to have SMACs back to 1-1-1990. Logic has been to pay the lower of U&C (submitted), EAC or whatever value populated theSMAC/FUL field. FULs were used almost exclusively until year 2000 when the state increased its use of SMAC. The list now includes all commonly used generics; FULs are now only used if a SMAC doesn't exist.

[10] Per Wiberg ATP004-0078, the State has used FDB pricing throughout entire period.

[11] SMACs are based on an informal survey of a few retail pharmacies that have agreed to share their costs. The State tries to include an average profit of about $7.00 for each prescription using SMAC. This $7 includes the $3.65 dispensing fee. The SMAC are maintained using information from pharmacies referenced above, the PDL contractor, and MAC list from other states.

[12] Per TN #03-01 (HHD075-0243), the dispensing fee for IV drugs which require mixing by the pharmacist is $8.00, except Cancer Chemotherapy IVS, which is $14.00.

State of:   **MISSISSIPPI**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Mississippi Estimated Acquisition Cost (MEAC) [14] | | Schedule II Drugs | | Pharmacy | | Home Infusion Drugs |
| **Effective Time Period** | Usual and Customary [11] | FUL | MEAC | SMAC | Brand | Generic | | | Brand | Generic | |
| 5/1/1990 - 6/30/1991 | Y | Y | Y [2] | N | AWP - 10% [1] | AWP - 10% [1] | | N | $4.91 | $4.91 | |
| 7/1/1991 - 3/31/2002 | Y | Y | Y [3, 4] | N | AWP - 10% [6] | AWP - 10% [5, 6] | AWP [12] | Y | $4.91 [6, 7] | $4.91 [6, 7] | [13] |
| 4/1/2002 - 10/27/2003 | Y | Y | Y [4] | N | AWP - 12% | AWP - 12% | AWP [12] | Y | $3.91 | $3.91 | [13] |
| 10/28/2003 - 6/30/2005 | Y | Y | Y [4] | N | AWP - 12% [8] | AWP - 12% [8] | | Y | $3.91 | $3.91 | [13] |
| 7/1/2005 - 4/30/2008 | Y | Y | Y [4] | N | Lesser of: AWP - 12%; WAC + 9% [8, 9] | AWP - 25% [8, 9] | | Y | $3.91 [10] | $4.91 [10] | [13] |
| 5/1/2008 [15] - Present | Y | Y | Y [4] | N | Lesser of: AWP - 12%; WAC + 9% [8, 15] | AWP - 25% [8, 15] | | Y | $3.91 [15] | $5.50 [15] | [13] |

 Data taken from Mississippi Medicaid State Plan Amendments

▇ Data obtained from Provider Manual

▇ Data provided by Phyllis Williams, Division of Medicaid

[1] Per TN #88-3, only drugs that are listed in the Medicaid Drug Formulary and its supplements will be compensable. Exceptions for the use of non-covered drugs may be made in special circumstances when prior authorization is given by Medicaid.

[2] Per TN #90-02, Mississippi Estimated Acquisition Cost (MEAC) "...is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

[3] Per TN #91-07 and TN #92-11, "MEAC is defined as the Division's best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drug most frequently purchased by providers."

[4] Beginning with TN #00-03, "MEAC is defined as the Division's best estimate of the actual purchase price generally and currently paid by providers for a drug, identified by NDC number, marketed or sold by a particular manufacturer or labeler."

[5] Per TN #91-07, "the Division shall make no payment for an innovator multiple-source drug dispensed after July 1, 1991, if, under applicable state law, a less expensive non-innovator multiple-source drug (other than the innovator multiple-source drug) could have been dispensed."

[6] Per TN #91-07, "the Division shall make no reductions in reimbursement limits on covered outpatient drugs or dispensing fees during the period of time beginning January 1, 1991 and ending December 31, 1994."

[7] Per TN #91-22, the dispensing fee will be increased by 5% effective August 1, 1991.  Subsequent State Plan Amendments and NPC Surveys do not indicate that this was ever implemented.

[8] Per TN #05-002, the Mississippi Medicaid Preferred Drug List (PDL) was established effective 1/1/05. The PDL is a list of recommended generic and brand name drugs that are selected based on safety, efficacy, and cost effectiveness. Exceptions to the PDL may be approved if the preferred agents would not be effective or would cause adverse effects in the recipient.

[9] Per TN #05-010 effective 7/1/2005, for brand name (single source, innovator multiple source) and single source generic drugs, pay the lesser of: usual and customary, FUL + dispensing fee, AWP - 12% + dispensing fee, or WAC + 9% + dispensing fee. For multiple source generic drugs, pay the lesser of: usual and customary, FUL + dispensing fee, and AWP - 25% + dispensing fee.

[10] Per TN #05-010, a dispensing fee of $3.91 is paid for sole source drugs and institutionalized beneficiaries, and $4.91 is paid for multi-source drugs.

[11] Beginning with TN #90-02 and continuing through the current State Plan, usual and customary charge is defined as the charge to the non-Medicaid patient.

[12] Schedule II drugs were paid at straight AWP from 2001 to October 2003.

[13] According to the State, the 1996 Pharmacy Provider Manual dated 2/95 reported that a $7 dispensing fee will be paid for each drug ingredient (NDC number) used in the preparation of compounded sterile parenteral products. Each ingredient is considered to be a separate prescription. It is not, however, clear if this ever worked systematically. Since 10/2003, it has not been set up systematically. The 1996 Provider Manual also reports an enhanced dispensing fee of maximum of $30 per liter for TPNs.  Per Provider Policy Manual Section 31.14 dated 02/01/04, this continues to be the dispensing fee.

[14] Beginning with TN # 90-02, pricing provided by First DataBank.

[15] Pricing effective beginning 5/1/2008 found in the Provider Policy Manual Pharmacy Section 31.04 p.1; the dispensing fee for prescriptions to beneficiaries in long term care facilities for multi-source generic drugs is limited to $3.91.

State of:     **MISSOURI**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Legend/Prescription Drugs [10] | | | | | Estimated Acquisition Cost (EAC) [5] | Physician Override (DAW, Brand Medically Necessary) | Professional/Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | DOJ Pricing | Pay the lower of formula listed | | (In-State) | (Out-of-State) | LTC (In-State) | LTC (Out-of-State) |
| | Usual and Customary | FUL | EAC | SMAC | | Brand/Generic | | | | | |
| 3/11/1988 [1]  -  9/16/1991 | Y [1] | Y [1] | Y [1] | Y [1] | | AWP or DP [1] | N [2] | $3.15 [1] | $3.15 [1] | $3.30 | $3.30 |
| 9/17/1991  -  6/30/2001 | Y | Y | Y | Y | Y [6] | AWP - 10.43% or DP [3] | N [2] | $4.09 [1] | $4.09 [1] | $4.24 | $4.24 |
| 7/1/2001 [9]  -  6/30/2002 | Y | Y | Y | Y | | AWP - 10.43% or WAC + 10% or DP [3] | N [2] | $4.09 [1] | $4.09 [1] | $4.24 [4] | $4.24 |
| 7/1/2002 [7]  -  6/30/2007 | Y | Y | Y | Y | | AWP - 10.43% or WAC + 10% or DP [3,8] | N [2] | $8.04 [7] | $4.09 | $8.19 | $4.24 |
| 7/1/2007  -  Present | Y | Y | Y | Y | | AWP - 10.43% or WAC + 10% or DP [3] | N [2] | $9.66 | $4.84 | $9.81 [4] | $4.99 |



Data taken from Missouri Medicaid State Plan Amendments

Data provided by depositions taken by McCann on 10/3/07, Driver on 10/18/07, and Oestreich on 11/27/07, and exhibits; and Declaration of George Oestreich on July 24, 2009

[1] Per Oestreich Exhibit 154 MO.046607, "payment was at the lesser of the provider's usual and customary charge or the lower of direct price for products of certain manufacturers (Abbott, Merck Sharp & Dohme, Pfizer, Parke-Davis, Roerig, Squibb, Upjohn and Wyeth) federal generic reimbursement limitation, state maximum allowable cost, or Average Wholesale Price (AWP), plus the standard dispensing fee." (See also McCann deposition 10/3/07 pp.102-103.) Effective 7/1/1990, the standard dispensing fee was $3.15. Effective 9/17/1991 and through 2001 dispensing fee was $4.09.

[2] Per Exhibit 16 (MO 002472-002473), prior authorization became effective on 8/6/1992.  (See also MO 012779, MO 012781-012782)

[3] Per Oestreich Exhibit 154 MO.046607, effective 9/17/1991, direct price is no longer used.   (Per state, direct price nevertheless remains part of the methodology.)

[4] Per TN #01-45, effective 10/1/2001, pharmacy providers are required to provide a credit to the state agency for medications dispensed on behalf of Missouri Medicaid beneficiaries in nursing facilities that are subsequently returned and which, in compliance with applicable state and federal law and regulation and in the pharmacist's professional judgement, may be reused. Providers will be reimbursed an amount not to exceed $4.24 as a handling fee for submitting each credit, when the ingredient cost of the returned medication equals or exceeds that amount. The federal portion of any credits received under this policy will be returned as required in accordance with other recovery and financial accounting procedures.   (See also 13 CSR 70-20.050 (4).)

[5] Per Exhibit 44 (HHD006-0454), the State uses First DataBank for pricing.  See also McCann 10/03/07 deposition pp. 54-55, 137.

[6] Per Exhibit 44 (HHD006-0455), the State implemented DOJ prices on 5/1/2000 and discontinued them on 6/30/2000.  Per Exhibit 43 (MO 000684), claims paid with DOJ prices were retroactively adjusted to the original prices.

[7] Per GO-000415 - GO-000416, effective 7/1/2002, Missouri Medicaid fee-for-service pharmacies will be given an enhanced dispensing fee of $3.95, for a total dispensing fee of $8.04.

[8] Per Driver deposition 10/18/07, pp. 162-163, pricing prior to 2005 was AWP- 10.43% or WAC+ 10%, or SMAC, or FUL, or Usual and Customary.  In May 2005 (p. 86), AWP was no later provided/supported by First DataBank and WAC became the base for EAC.  AWP was only used when WAC, SMAC, or FUL not available (pp. 220 - 221).

[9] Per Oestreich 11/27/07 deposition pp. 68 - 69 and 11/28/07 deposition pp. 323, 503, WAC + 10 added to the pricing methodology on July 1, 2001.

[10] All pricing information contained in the summary reviewed and verified as accurate in the Oestreich Declaration.

State of: __MONTANA__

**Medicaid Pharmacy Reimbursement Methodology Summary**

Prescription/Legend Drugs [14]

| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [6] Pay the lower of each formula listed | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Compound Drugs | Home Infusion Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Effective Time Period | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | Minimum | Maximum | Unit Dose Systems | | |
| 5/1/1988  -  6/30/1997 | Y | Y | Y | | N | AWP - 10%; DP [1] | FUL | Y | $2.00 [2] | $4.08 [2] | Plus $0.75 | 8 | 9 |
| 7/1/1997  -  6/30/1998 | Y | Y | Y | | N | AWP - 10%; DP [1] | FUL | Y | $2.00 [2] | $4.14 [2] | Plus $0.75 | 8 | 9 |
| 7/1/1998  -  9/30/2000 | Y | Y | Y | | N | AWP - 10%; DP [1] | FUL | Y | $2.00 [2,4] | $4.20 [2,4] | Plus $0.75 | 8 | 9 |
| 10/1/2000  -  9/30/2002 | Y | Y | Y | Y [7] | N | AWP - 10%; DP [3] | FUL | Y | $2.00 [2,4] | $4.20 [2,4] | Plus $0.75 | 8 | 9 |
| 10/1/2002  -  9/30/2007 | Y | Y | Y | | N | AWP - 15% [10] | FUL | Y | $2.00 [5] | $4.70 [5,10] | Plus $0.75 | 8 | 9 |
| 10/1/2007  -  6/30/2008 | Y | Y | Y | | N | AWP - 15% | FUL | Y | $2.00 | $4.86 [11] | Plus $0.75 | 8 | 9 |
| 7/1/2008 [12]  -  6/30/2009 | Y | Y | Y | | N | AWP - 15% | FUL | Y | $2.00 | $4.94 [11,12] | Plus $0.75 | 8 | 9 |
| 7/1/2009 [13]  -  Present | Y | Y | Y | | N | AWP - 15% | FUL | Y | $2.00 [13] | $5.04 [13] | Plus $0.75 | 8 | 9 |



■ Data taken from Montana Medicaid State Plan Amendments

■ Data taken from documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and Declaration of Daniel W. Peterson dated 7/21/09

[1] Per TN #88(10)02 (HHD038-1056) and #95-01 (HHD038-1054) the policy for reimbursement of Direct Price (DP) drugs is the current direct price charged by manufacturers to retailers in effect on the service date for the claim.

[2] State Plans for this time period through 9/30/2002 report that a variable dispensing fee will be established by the state agency, by using the results of a cost survey of pharmacy's operational costs. However, a pharmacy may be assigned a different (enhanced) dispensing fee to cover additional costs for a "unit dose" method of dispensing a prescription. Provider dispensing fee(s) are available on-line in the MMIS provider file and the Medicaid Prescription Drug Card System (PDCS) provider plan file.  NPCs for 1990 thru 1996 report a dispensing fee range from $2.00 - $4.08 (eff. 7/1/90), with an additional $0.75 per Rx allowed for nursing home unit dose systems.

[3] Per TN #00-008 effective 10/1/00 (HHD038-1047) the Direct Price (DP), the price charged by manufacturers to retailers, will be paid unless the DP is not available to providers in the state. If no DP is available, drugs paid by their AWP will be paid at AWP-10%. If the state agency determines that acquisition cost is lower than either the available DP or AWP-10%, then the state agency may set an allowable acquisition cost based on data provided by the drug pricing file contractor. Exception: for outpatient drugs provided to Medicaid recipients in state institutions, reimbursement will conform to the state contract for pharmacy services; or for institutions not participating in the state contract for pharmacy services, reimbursement will be the actual cost of the drug and dispensing fee. In either case, reimbursement will not exceed, in the aggregate, the EAC or the MAC plus the dispensing fee. Direct price was discontinued on 6/5/2002. Prior to discontinuation, any drugs manufactured by the following labels were paid at direct price: Pfizer 00049, Pfizer 00069, Pfizer 00063, Pfizer 00995, and Abbott 00074.

[4] NPC 1998 thru 2000 report a dispensing fee range of $2.00 - $4.20 (eff. 7/1/98), with an additional $0.75 added to prescriptions unit dosed by the pharmacy. NPC 2001 reports a dispensing fee of $2.00-$4.20 effective 7/1/98 but adds that pharmacies submit documentation showing their costs for a dispensing fee maximum of $4.20. Pharmacies that do not submit documentation receive a dispensing fee of $2.00.

[5] Effective 10/01/02 with TN #03-002, a variable dispensing fee will be established by the state agency. The dispensing fee is based on the pharmacy's average cost of filling a prescription. The average cost of filling a prescription will be based on the direct and indirect costs that can be allocated to the cost of the prescription department and that of filling a prescription, as determined from the Montana dispensing fee questionnaire. A provider's failure to submit, upon request, the dispensing fee questionnaire properly completed will result in the assignment of the minimum dispensing fee offered.Dispensing fees assigned shall range between $2.00 - $4.70. Out-of-state and in-state providers new to the Program will be assigned an interim $3.50 dispensing fee until a dispensing fee questionnaire can be completed for six months of operation. At that time a new dispensing fee will be assigned which will be the lower of the dispensing fee calculated or $4.70. Failure to comply with the questionnaire requirement will result in a dispensing fee of $2.00. An additional $0.75 will be paid for unit dose prescriptions not packaged by the drug manufacturer.

[6] The State uses First DataBank for pricing.

[7] Per the June 17, 2002 Montana Medicaid Pharmacy Provider Notice, DOJ pricing discontinued effective July 1, 2002.  Per State, pricing was implemented on October 5, 2001.

[8] Until January 22, 2008 (begin date unknown) the Department reimbursed compound prescription drugs utilizing "local" NDC codes. An average wholesale price (AWP) of $25 was set for each of the local codes.  The discount, the provider's dispensing fee and client cost share were applied to the reimbursement algorithm. A provider would submit X number of units depending on what they thought would cover the cost of the compound.   Per Montana Medicaid Notice dated 12/21/2007, effective 1/22/08, pharmacies will be reimbursed for compounding drugs only if the client's drug therapy needs cannot be met by commercially available dosage strengths and/or forms of the therapy. Prior authorization shall be required for a dispensing fee over $12.50. The dispensing fee for each compounded drug shall be $12.50, $17.50, or $22.50 based on the level of effort required by the pharmacist.

[9] Since December 1996, providers are reimbursed for home infusion therapy through a per diem rate which included equipment, supplies & professional services, while drugs are reimbursed through the pharmacy program.  Total Parenteral Nutrition (TPN) included the basic parenteral solution along with the per diem.  Prior to 12/96, there was no distinct Home Infusion Therapy program and services were reimbursed under various Medicaid service categories.

[10] Per the June 17, 2002 Montana Medicaid Pharmacy Provider Notice, changes to EAC and DF as established in TN #03-002 effective 10/1/02 (HHD038-0961 and 0964) were actually implemented on 7/1/2002.

[11] 10/1/2007 effective date and dispensing fee change established in Administrative Rule, 37.86.1105 (12/31/07).

[12] Per 5/21/08 Programs Notice eff. 7/1/08, the maximum dispensing fee for pharmacy providers will increase to $4.94. Out of state and new providers will remain at $3.50, and pharmacies not submitting a cost-to-dispense survey will remain at $2.00.

[13] Per 6/29/09 Programs Notice, effective 7/1/09, the maximum dispensing fee for pharmacy providers will increase to $5.04.  In-state providers new to Medicaid will also receive an initial $5.04 dispensing fee. Out of state pharmacies will remain at $3.50.

[14] All information on this summary reviewed and verified as accurate in Peterson Declaration.

State of:    **NEBRASKA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lowest of" Reimbursement Methodology [9] | | | | | Estimated Acquisition Cost (EAC) [7] | | SMAC Description | Physician Override (MC-6, Brand Medically Necessary) | Dispensing Fee | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | Submitted Charge/Gross Amount Due | FUL Plus DF | EAC Plus DF | SMAC Plus DF | Pay the lower of: Brand/Generic | Schedule II Drugs | | | Added to calculated drug cost (FUL, EAC, SMAC) to set upper limit | |
| 10/29/1987 [1] - 1/18/1993 | Y [1] | Y [1,8] | Y [1] | Y [1] | Y [1] | WAC + 12.52 or AWP - 8.71% or DP [1,3] | 5 | 4 | Y | $2.84 - $5.05 [2,3] | 10 |
| 1/19/1993 - 12/31/2001 | Y | Y [8] | Y | Y | Y | AWP - 8.71% or DP [1,3] | 5 | 4 | Y | $2.84 - $5.05 [2,3] | 10 |
| 1/1/2002 - 10/1/2002 | Y | Y [1,8] | Y | Y | Y | AWP - 10% | | 4 | Y | $3.84 - $5.05 [3] | 10 |
| 10/2/2002 - 6/30/2007 | Y | Y [1,8] | Y | Y | Y | AWP - 11% | | 4 | Y | $3.27 - $5.00 [3] | 10 |
| 7/1/2007 - Present | Y | Y [1,8] | Y | Y | Y | AWP - 11% | | 4,6 | Y | $3.20 - $5.05 [3] | 10 |

■ Data taken from Nebraska Medicaid State Plan Amendments

■ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

■ Data provided by Gary Cheloha, Pharmacy Consultant

■ Data provided by Cheloha depositions taken 12/2/08 and 12/3/08

[1] Effective date, "lowest of", and BMN from Ex. Dey 912. EAC formulas from Cheloha deposition p.357. Up until about 2001, pharmacies purchased through a wholesaler or directly from a small number of manufacturers (This was determined from the 1980s survey). Manufacturers continued to raise their minimum purchase amounts so that eventually virtually no pharmacies bought "direct" (12/2/08 deposition pp. 279-283). Per Ex. Dey 913 (Mordy letter dated 5/12/1986) and Ex. Dey 914 (Provider Memo dated 1/19/1993), direct price companies included: Abbott, Ayerest, Lederle, Merck Sharpe and Dohme, Pfizer, Roerig, and Ross.

[2] NPCs 1991-1994 report that in addition to the assigned dispensing fee for each retail pharmacy, there is a "maintenance drug-month supply" supplemental fee of $1.00 for maintenance drugs used in a chronic manner. MS #87-18 includes general language (not specific fee of $1.00); language removed in MS-95-07 effective 4/26/1995.

[3] MS-87-18 references EAC = actual cost, which was determined by a survey performed by Dr. Jacobs or the direct price for seven manufacturers (12/2/08 deposition pp. 155-157, Dey Ex. 914). Beginning in 1996, fees for new stores were assigned the average dispensing fee of $4.66, which continues to be the practice today.

[4] Per 12/2/08 deposition pp. 129-137, State MAC rate-setting process has been generally the same since it was first implemented: looking at the availability and the difference between the price of the brand and the generic on a case-by-case basis and receive recommendations or information from providers, from Pace Alliance (purchasing organization), and from mailings from drug companies about the availability of their generic version of a brand name.

[5] Schedule II drug prices were set at the AWP in the mid-1980s (see Ex. Dey 913). On 8/1/1989, several CII drugs were added to the SMAC/FUL lists due to legislation that allowed substitution for all bioequivalent Schedule II controlled substances. Per Ex. Dey 914, on January 19, 1993, non-SMAC/FUL Schedule II drug prices were set at the AWP from Medispan. This ended sometime between 1996 and 12/6/2001, when Schedule II drug pricing was set to follow standard EAC pricing.

[6] Per 12/2/08 deposition, p. 137, there are about 1500 drugs that have either a SMAC or an FUL.

[7] Per Ex. Dey 914, the State initially used Medispan. Then from 1995 to present, the State's contracted POS vendor has contracted with First DataBank for pricing (12/3/08 deposition pp. 343-344).

[8] Per Ex. Dey 912 (TN #MS 87-18) and 12/2/08 deposition pp. 107-110, pharmacies are also required to complete the submitted charge (or gross amount due) field on each claim. Per the State, the only time that the submitted charge was not required was from the April 1995 Point of Sale implementation until September 15, 1997. During that time the state captured only the Usual and Customary and compared it to the calculated upper limit based on EAC, SMAC, or FUL, plus DF.  (See also Ex. Dey 906)

[9] Beginning with TN #MS-87-18 (Ex. Dey 912), Nebraska pays the lowest of the (a) usual and customary, or (b) submitted charge, or (c) the calculated upper limit of FUL, EAC, or SMAC plus dispensing fee on each claim.

[10] Per 12/2/08 deposition pp. 286-288 (see also Abbott NE 004), until the point-of-sale system was implemented with First Health in 1995, IV therapy compounding was priced manually using an EAC of up to 100% AWP. After that, from about 1998 until 2003, the department required EAC to be the same as other drugs but allowed one dispensing fee per ingredient.  After that all drugs were paid the same.

**State of:** __NEVADA__

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Usual and Customary | SUL[2]/FUL | EAC [7] | Actual/Billed Charge | SMAC | DOJ Pricing | Estimated Acquisition Cost (EAC) [7] Brand/Generic | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Outpatient Pharmacist Brand/Generic | Home Health IV | Nursing Facility IV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/1991 [1, 9] - 9/30/1991 | Y | Y | Y | Y | N | | AWP - 10% [9] | | | $3.95 [9] | | |
| 10/1/1991 - 12/31/1994 | Y | Y | Y | Y | N | | AWP - 10% | | Y | $4.42 | $16.80 (1st); $5.60 (2nd) [3] | $11.20 (1st); $5.60 (2nd) [3] |
| 1/1/1995 - 9/30/1998 [9] | Y | Y | Y | Y | N | | AWP - 10% | | Y | $4.64 | $16.80 (1st); $5.60 (2nd) [3] | $11.20 (1st); $5.60 (2nd) [3] |
| 10/1/1998 [9] - 7/31/2002 | Y | Y | Y | Y | N | Y [8, 9] | AWP - 10% | | Y | $4.76 [9] | $16.80 (1st); $5.60 (2nd) [3] | $11.20 (1st); $5.60 (2nd) [3] |
| 8/1/2002 - 12/16/2003 | Y | Y | Y | Y | N | Y [8, 9] | AWP - 15% | | Y | $4.76 [6, 9] | $16.80 (1st); $5.60 (2nd) [3] | $11.20 (1st); $5.60 (2nd) [3] |
| 12/17/2003 [5] - 12/14/2004 | Y | Y | Y | Y | Y | Y [8, 9] | AWP - 15% | [4] | Y | $4.76 | $16.80 (1st); $5.60 (2nd) [3] | $11.20 (1st); $5.60 (2nd) [3] |
| 12/15/2004 - Present [9] | Y | Y | Y | Y | Y | Y [8, 9] | AWP - 15% | [4] | Y | $4.76 | $22.40 per day | $16.80 per day |



■ Data taken from Nevada Medicaid State Plan Amendments

■ Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 and Declaration of John Liveratti dated 7/10/09

[1] Date established as 1/1/1991 because same pricing information was reported in 1990 NPC. Per 6/3/08 telephone call, State can not confirm any information prior to 1991.  (Verified as accurate per Declaration.)

[2] Per TN #91-21 effective 10/01/1991:  Payment for multiple source drugs shall be the lowest of (a) Specific Upper Limit (SUL) as established by the Health Care Financing Administration (HCFA) for multi-source drugs.  The SUL reference was changed to FUL in TN #03-16.  (HHD041-0245)

[3] Per TN #91-21 effective 10/01/1991 through TN #04-02 effective 01/01/04, the State's dispensing fees are defined as (a) those given to outpatient pharmacists at a rate of $X.XX per prescription; (b) those given to Home Health Care providers for home intravenous therapy at $16.80 per dose for the first medication and $5.60 per dose for a second medication given concurrently; (c) those given to pharmacists for Intravenous therapy in the nursing facility at $11.20 per dose for the first medication and $5.60 per dose for a second medication given concurrently. (HHD041-0248)

[4] Per TN #03-16 effective 12/17/2003:  A generic drug may be considered for MAC pricing if there are 2 or more therapeutically equivalent, multi-source, non-innovator drugs with a significant cost difference.  The SMAC will be based on drug status (Including non-rebateable, rebateable, obsolete, therapeutic equivalency ratings) marketplace availability and cost.  The obsolete drug status will be taken into account to ensure that MAC pricing is not influenced by the prices listed for obsolete drugs.  The SMAC will be based on drug prices obtained from a nationally recognized comprehensive data file maintained by a vendor under contract with the Department.   (HHD041-

[5] Per TN #04-02 effective 01/01/2004:  CMS has authorized the State of Nevada to enter into the Michigan multi-state pooling agreement.  The model supplemental agreement entitled "Michigan Multi-State Pooling Supplemental Rebate Agreement: was submitted to CMS on January 16, 2004 and has been authorized by CMS.  (HHD041-0224)

[6] Although TN #02-12 effective 8/1/2002  (HHD 041-0246) still shows standard dispensing fee at $4.64, the dispensing fee increase to $4.76 confirmed with Nevada Medicaid Policy News bulletin (N1502-06) dated August 2, 2002.  This was later corrected in TN #03-16 effective 12/17/03  (HHD 041-0245).  (Verified as accurate per Declaration.)

[7] Per State Plan Amendments and Medicaid Services Manual, First DataBank always used for pricing.

[8] Per Nevada Medicaid Services Manuals MTL 44/03 Section 1202 p. 1 dated 12/16/03 and MTL 25/06 dated 12/20/07, DOJ pricing was immediately implemented and remains in effect today. (Verified as accurate per Declaration.)

[9] Dates, dispensing fees, and other information reviewed and verified as accurate in Liveratti Declaration dated 7/10/09.

State of:   **NEW HAMPSHIRE**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [5] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Compounded Prescription |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC [5] | SMAC | DOJ Pricing | Brand/Generic | | Brand | Single Source Brand | Generic/Branded Generic | |
| 7/1/1990 [1]  -  4/30/1994 | Y | Y | Y | N | | AWP - 10% | Y | $3.25 [8] | $3.65 [8] | $3.65 [8] | $3.25 [1] |
| 5/1/1994  -  1/31/1996 | Y | Y | Y | N | | AWP - 10% | Y | $3.25 [8] | $3.65 [8] | $4.15 [8] | $3.25 [1, 6] |
| 2/1/1996  -  11/2/2001 | Y | Y | Y | N | Y [3] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | $2.50 [1, 6, 7] |
| 11/3/2001  -  3/11/2004 | Y | Y | Y | Y [2] | Y [3, 4] | AWP - 12% | Y | $2.50 | $2.50 | $2.50 | $2.50 [1, 7] |
| 3/12/2004  -  Present | Y | Y | Y | Y | Y [3, 4] | AWP - 16% | Y | $1.75 | $1.75 | $1.75 | $1.75 [1, 7] |



Data taken from New Hampshire Medicaid State Plan Amendments

Data provided by Farrand deposition taken 10/28/08 and exhibits and documents produced by the State of New Hampshire pursuant to subpoena

Data provided by Donna Arcand, Pharmacy Financial Manager, DHHS

[1] Per TN 90-14 (HHD040-0166) et al., prescriptions for maintenance medications will be reimbursed only one time per 34 days, per recipient per provider, and any refill prescriptions for these maintenance medications within the 34 days will be reimbursed at the cost of the medication only.  For compound drugs, payment is based on actual costs (ingredient cost and time of preparation) plus applicable dispensing fee.  Per Exhibit Farrand USA 5 (NH05169) and deposition p.217, the labor rate for compounding is $.30 per minute.  Per Dey Ex. 72 p. 6 (NH04057), however, regulation reads as follows: for compound prescriptions the payment shall be based on the pharmacy's actual ingredient cost plus cost of labor at the rate established by the Office of Medical Services, plus the dispensing fee; or the usual and customary charge to the general public, whichever is less.

[2] Per TN #01-11 (HHD040-0152) effective 11/03/2001, a State MAC program was implemented. This was part of the new PBM (Pharmacy Benefit Management) contract with First Health (Per Farrand deposition pp. 103 and 264 and Exhibits Farrand USA 9 and USA 10).

[3] DOJ pricing began when it was first introduced on 5/1/2001 and continues through today. (Farrand deposition pp. 135-137, 220 and 260.)

[4] NH put into effect special rules for Blood Factor products on the DOJ price list with reimbursements for dates of service on or after 2001 to pay at DOJ AWP and the dispensing fee.  (See NH04139 and NH04894 dated 10/23/2001.)

[5] First DataBank has been used for pricing throughout the time period. (10/28/08 Farrand deposition pp. 68-69, 235)

[6] Per Dey Exhibit 76, NH Medicaid Bulletin Vol.I Issue IV, December 1995 page 11 (NH03376), effective January 1, 1996 dates of service, compound prescription payment will be based on the pharmacy's acquisition cost, plus a $2.50 dispensing fee, plus the cost of labor set at $0.30 per minute. Pharmacies will be reimbursed an additional $10.50 per day for sterile preparations for parenteral use.

[7] Per (NH04904) effective November 3, 2001, compounds submitted via POS for under $50 are paid in Usual and Customary.  Claims over $50 must be submitted on the universal claim form.  According to NH00863, the previous limit effective sometime after 12/23/1996 may have been $25. Per Farrand deposition pp. 213-215, home infusion therapies are paid like a compound, plus a $10.50 a day per diem.

[8] Dispensing fees per Exhibit Farrand USA 5 (NH05169).

State of: **NEW JERSEY**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Type | Prior Year Prescription Volume | Usual and Customary | FUL | EAC [5] | Retail | AWP Discount Threshold [1] | Physician Override (DAW, Brand Medically Necessary) | Base Dispensing Fee for Retail Pharmacies [2] | Dispensing Fee Add-Ons | Compounded Prescriptions | Long Term Care |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Methodology** | | | **Estimated Acquisition Cost (EAC)** [5] | | | **Dispensing Fees** | | | |
| 10/1/1987  -  2/20/1995 | Category I | 1 - 14999 | Y | Y | Y | AWP | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category II | 15000 - 19999 | Y | Y | Y | AWP - 2% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category III | 20000 - 29999 | Y | Y | Y | AWP - 3% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 4% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category V | 40000 - 49999 | Y | Y | Y | AWP - 5% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| | Category VI | 50000 + | Y | Y | Y | AWP - 6% | $24.99 | Y | $3.73 | [6] | [4] | [3] |
| 2/21/1995  -  1/1/1996 | Category I | 1 - 14999 | Y | Y | Y | AWP | | Y | $3.73 | [6] | [4] | [3] |
| | Category II | 15000 - 19999 | Y | Y | Y | AWP - 2% | | Y | $3.73 | [6] | [4] | [3] |
| | Category III | 20000 - 29999 | Y | Y | Y | AWP - 3% | | Y | $3.73 | [6] | [4] | [3] |
| | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 4% | | Y | $3.73 | [6] | [4] | [3] |
| | Category V | 40000 - 49999 | Y | Y | Y | AWP - 5% | | Y | $3.73 | [6] | [4] | [3] |
| | Category VI | 50000 + | Y | Y | Y | AWP - 6% | | Y | $3.73 | [6] | [4] | [3] |
| 1/2/1996  -  7/14/1996 | Category I | 1 - 14999 | Y | Y | Y | AWP - 2% | | Y | $3.73 | [6] | [4] | [3] |
| | Category II | 15000 - 19999 | Y | Y | Y | AWP - 4% | | Y | $3.73 | [6] | [4] | [3] |
| | Category III | 20000 - 29999 | Y | Y | Y | AWP - 5% | | Y | $3.73 | [6] | [4] | [3] |
| | Category IV | 30000 - 39999 | Y | Y | Y | AWP - 6% | | Y | $3.73 | [6] | [4] | [3] |
| | Category V | 40000 - 49999 | Y | Y | Y | AWP - 7% | | Y | $3.73 | [6] | [4] | [3] |
| | Category VI | 50000 + | Y | Y | Y | AWP - 8% | | Y | $3.73 | [6] | [4] | [3] |
| 7/15/1996  -  6/30/2003 | Legend/OTC | | Y | Y | Y | AWP - 10% | | Y | $3.73 | [6] | [4] | [3] |
| 7/1/2003  -  7/7/2008 | Legend/OTC | | Y | Y | Y | AWP - 12.5% | | Y | $3.73 | [6] | [4] | [3] |
| 7/8/2008 [8]  -  Present [7] | Legend/OTC | | Y | Y | Y | AWP - 15% | | Y | $3.73 | [7] | [4] | [3] |

■ Data taken from New Jersey Medicaid State Plan Amendments

■ Data provided by Vaccaro depositions taken 12/2/09 and 12/3/09

■ Data provided by Pharmacy Provider Bulletin (8/1/1988) and the New Jersey Pharmaceutical Services Manual (Rev. 11/87)

■ Data provided by DMAHS, DHS

[1] Per 12/2/08 deposition pp. 64-65 and 12/3/08 deposition p. 745 (and the New Jersey Pharmaceutical Services Manual (Rev. 11/87)), if the drug cost is greater than $24.99, then EAC = AWP with no discount applied. This threshold was terminated effective 2/21/1995.

[2] Per 12/2/08 deposition pp. 93-94 (See also New Jersey Health Services Program Newsletter dated August 1, 1998), the basic dispensing fee of $3.73 was established by state regulations effective 8/1/1988. However, additional increments are applied per prescription based on various criteria.

[3] Per TN #87-20B et al., long term care (LTC) pharmacies can be retail or institutional and are paid for ingredient costs according to the same EAC (regression) formula as non-institutional providers. Legend drugs for patients in approved long-term care facilities are, however, reimbursed according to a capitated fee schedule: LTC institutional providers are paid at 75% of the capitation rate, and LTC retail pharmacies are paid at 100% of the capitation rate. There may be a few institutional pharmacies, but the majority of pharmacies serving clients in long term care skilled nursing facilities are retail pharmacies.

[4] Per TN #87-20B et al., compound claims are paid by determining the reimbursement rate for each ingredient which includes subtracting the regression. These elements are then totaled and the dispensing fee is added to arrive at the total reimbursement. The NJ Medicaid program will reimburse a pharmacy provider up to $0.25 for any ingredient in a compound claim whose cost is less than $0.25.

[5] Per TN #96-29 (HHD037-0121) effective 7/15/1996, the state receives its pricing from First DataBank.

[6] Per TN #87-20B et al., additional increments are applied per prescription to the base dispensing fee based on various criteria: add $0.11 for 24-hour emergency service availability; add $.08 for Patient Consultation; and add $0.15 for Impact Allowance. Maximum dispensing fee is $4.07. (See also 12/2/07 deposition pp. 91-92.)

[7] Effective 7/8/2008, the $.08 add-on for Patient Consultation was eliminated. Therefore, additional increments applied per prescription to the base dispensing fee continue to be based on the following criteria: add $0.11 for 24-hour emergency service availability; and add $0.15 for Impact Allowance. Per 12/2/08 deposition p. 92, maximum dispensing fee is $3.99.

[8] Per State, effective date was 7/8/08 and not 7/1/08.

State of:  **NEW MEXICO**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[6] | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| | Pay the lower of each formula listed | | | | | | | SMAC Description | | | | |
| Effective Time Period | Usual and Customary | FUL | EAC[6] | SMAC[1] | DOJ Pricing | Brand | Generic | | | Brand | Generic | Compound Drugs |
| 1/1/1991 - 6/30/1991 | Y | Y | Y | Y | | AWP - 10.5% | AWP - 10.5% | [2] | Y | $4.00 | $4.00 | |
| 7/1/1991 - 1/5/1992 | Y | Y | Y | Y | | AWP - 10.5% | AWP - 10.5% | [2] | Y | $4.25 | $4.25 | |
| 1/6/1992 - 6/30/1997 | Y | Y | Y | Y | | AWP - 10.5% | AWP - 10.5% | [2] | Y | $4.00 | $4.00 | |
| 7/1/1997 - 5/31/2002 | Y | Y | Y | Y | Y[7] | AWP - 12.5% | AWP - 12.5% | [2] | Y | $4.00 | $4.00 | |
| 6/1/2002 - 8/14/2004 | Y | Y | Y | Y | Y[7] | AWP - 12.5% | AWP - 12.5% | [2] | Y | $3.65 | $3.65 | |
| 8/15/2004 - Present | Y | Y | Y | Y | Y[7] | AWP - 14%[4] | AWP - 14%[4] | [3, 5, 9] | Y | $3.65 | $3.65 | $30[8] |

█  Data taken from New Mexico Medicaid State Plan Amendments

█  Data provided by Stevens 12/15/08 deposition and exhibits and documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456".

█  Data provided by Robert Stevens, NM Medicaid

[1] Per TN #91-06, SMAC is called State Allowed Cost (SAC) and was effective on 8/1/1982. (HHD076-0069, HHD076-0074)

[2] Per TN #91-06 et al., reimbursement is limited to a lesser-expensive therapeutically equivalent drug per the state Product Selection Act as amended and according to the "FDA Approved Therapeutically Equivalent Drugs" list.

[3] Per TN #04-10  (HHD076-0066)  state allowed costs are established after (1) assuring availability of FDA A-rated therapeutically equivalent drugs using information available from the FDA and from the American Society of Hospital Pharmacists on drug shortages; and (2) determining the typical package size used. SAC amounts will be calculated at 150% of the lowest cost product (from among Medicare reimbursement prices when available manufacturer prices, wholesaler prices, and invoice prices) and will be at least 20% above the second lowest cost. This calculated amount may be lowered as follows: (1) To 60% of the average price of all available therapeutically equivalent multi-source drug products, but not below the cost for which an item is determined to be consistently and readily available from local wholesale sources in the state; or (2) When 2 or more therapeutically equivalent multi-source drug products are determined to be consistently and readily available from local wholesale sources within the state, the SAC may be lowered to the price at which the product is consistently and readily available.    Per State, issues with shortages are rare.

[4] Per TN #04-10  (HHD076-0066)  EAC is equal to the lower of AWP-14%, the WAC as submitted to the state, the manufacturer price as submitted to the state, or the pharmacy invoice price as obtained through audits. This amount may be lowered as follows: (1) When the AWP-14% is shown not to approximate average acquisition cost, in which case EAC shall be the actual amount at which an item can be shown to be consistently and readily available; or (2) When a pharmacy practice is specialized or limited to the extent that its buying practices do not approximate a retail pharmacy and AWP-14% is shown not to accurately approximate the average actual acquisition costs, such as a pharmacy limited to mail order, limited to supplying items for chronic use, or an institutional or facility pharmacy with significant buying discounts not available to retail pharmacies. In these cases, the percent discount from AWP may range from 14%-20%, based on audited data, to more accurately approximate actual cost.

[5] Effective 12/1/04, many of the pharmacy claims began to be processed under the NMRx program, using Presbyterian Health Care as the PBM rather than ACS/PDCS. Presbyterian still sends the claim record showing payment, etc. for the MMIS System. The current state plan for SMACs was approved effective 8/15/04 but was not implemented until 12/1/04. Prior to that date, and still true for claims that are processed by ACS/PDCS (the PBM), the SMAC is slightly less stringent. (Price basis is 150% of lowest cost product; calculated price must be at least 20% above second lowest cost product; deviations occasionally required; and, if only one supplier available, MAC price is established at least 20% above cost of generic product.)

[6] Per deposition pp. 254-255, the program has used First DataBank since 1991.

[7] DOJ pricing was used  from September 2001 through October 2006 but was seldom paid because the State MAC pricing was usually lower (deposition pp. 196-198).

[8] Per deposition pp. 200-224, beginning in 2006, the state allows pharmacies to bill for each of the ingredient costs and then the dispensing fee and then up to $30 for a compounding fee.

[9] Per deposition pp. 58-59 and Exhibit Dey 527 (p. 5 of the NM Pharmacy Service Provider Manual (MAD-MR:05-20)) effective 1/1/06, the State MAC methodology is based on the following criteria: 1) At least one A-rated generic is readily available; and 2) the State MAC for the brand name drug products and for all A-rated therapeutic equivalents shall be determined by taking the lowest available cost for all of the A-rated therapeutic equivalent drugs regardless of manufacturer, and multiplying that cost by a factor set by MAD to cover the pharmacy's estimated administration and overhead plus a dispensing fee.

07/21/09

State of:   **NEW YORK**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | | | | | |
| | FUL Drugs | | Non-FUL Drugs | | | | Estimated Acquisition Cost (EAC) [5] | | | | | Dispensing Fee | | | |
| | Pay "Lower of" [1] | | Pay "Lower of" | | | | | | | | Physician Override (DAW, Brand Medically Necessary) | | | | |
| Effective Time Period | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Usual and Customary | Brand | Generic | Specialized HIV Pharmacies | SMAC Description | | Brand | Generic | Compound Drugs | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/1990 - 12/31/1994 | Y | Y | Y | | N | Y | AWP | AWP | | | Y | $2.60 | $2.60 | 6 | 11 |
| 1/1/1995 - 7/31/1998 | Y | Y | Y | | N | Y | AWP - 10% | AWP - 10% | | | Y | $4.50 | $5.50 | 7 | 11 |
| 8/1/1998 - 6/30/2003 [13] | Y | Y | Y | Y [10] | N | Y | AWP - 10% | AWP - 10% | | | Y | $3.50 | $4.50 | 8 | |
| 7/1/2003 - 9/30/2004 | Y | Y | Y | Y | N [2, 13] | Y | AWP - 12% | AWP - 12% | | | Y | $3.50 | $4.50 | 8 | |
| 10/1/2004 - 7/14/2006 [13] | Y | Y | Y | Y | N [2, 13] | Y | AWP - 12.75% | AWP - 16.5% | 3 | | Y | $3.50 | $4.50 | 8 | |
| 7/15/2006 [13] - 6/30/2007 [13] | Y | Y | Y | Y | Y [2] | Y | AWP - 13.25% [13] | AWP - 20% [13] | 3 | Proprietary [12] | | $3.50 | $4.50 | 8 | |
| 7/1/2007 [13] - 6/30/2008 [13] | Y | Y | Y | Y | Y | Y | AWP - 14% [13] | AWP - 25% [13] | 3 | Proprietary [12] | Y | $3.50 | $4.50 | 8 | |
| **Pay "Lower of" for All Legend Drugs [4]** | | | | | | | | | | | | | | | |
| 7/1/2008 [13] - Present [13] | Y | Y | Y | Y [10] | Y | | AWP - 16.25% [13] | AWP - 25% [13] | 9 | Proprietary [12] | | $3.50 | $4.50 | 8 | |

▬▬▬   Data taken from New York Medicaid State Plan Amendments

▬▬▬   Data taken from statutory amendments to NY laws included in a letter from George Henderson II, Assistant U.S. Attorney, dated May 3, 2008 and Declaration of James Donnelly on 7/20/09

[1] If a drug has an upper payment limit (FUL) established by the Federal Government, then the reimbursement rate is equal to the lower of the usual and customary charge or the upper payment limit (FUL).  If there is no FUL, use the lower of EAC, or the usual and customary price charged to the general public.

[2] Although the SMAC legislation was approved 8/20/2004, SMAC prices were not implemented until 9/5/2006.

[3] Effective 10/1/2004, the EAC for specialized HIV pharmacies is defined as AWP less 12% for sole or multi-source brand drugs or multi-source brand drugs written without DAW, and FUL or the lower of AWP-12% or State MAC or U&C for multi-source generic drugs. Note: HIV Specialty pharmacies are paid off-line for the difference between other pharmacy reimbursement and the speciality rate.

[4] Effective July 1, 2008, NY Medicaid started reimbursing the lower of FUL, SMAC or EAC.

[5] The State used Medispan for pricing through October 2002 and then switched to First DataBank beginning November 2002.

[6] Reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public for the total sum of the ingredients, up to the maximum reimbursable amount ($50.00), plus a dispensing fee ($2.60) and a compounding fee ($0.75).

[7] Per TN 95-13, reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public for the total sum of the ingredients, up to the maximum reimbursable amount ($50.00),  plus a dispensing fee ($4.50) and a compounding fee ($0.75).

[8] Beginning with TN 98-30, reimbursement for each compound prescription is restricted to the usual and customary price charged to the general public for the total sum of the ingredients, up to the maximum reimbursable amount ($50.00),  plus a dispensing fee ($3.50) and a compounding fee ($0.75).  Starting around December 1, 2000 there appeared to be an option to bill compounds using the NDCs of the individual ingredients.  If this option is used the claim for the compound can not be distinguished from a claim for a non-compounded prescription.  Each ingredient payable would be reimbursed at the current dispensing rate plus a dispensing fee less a copay. With this option, there is no compound indicator on these claims, there is no compounding fee with these claims and they look like other non-compound claims.

[9] Effective 7/1/2008, the EAC for specialized HIV pharmacies is defined as AWP less 12% for sole or multi-source brand drugs written with DAW, and the lower of AWP-12% or the FUL or State MAC for multi-source generic drugs. HIV Specialty pharmacies are paid off-line for the difference between other pharmacy reimbursement and the speciality rate.

[10] DOJ pricing was implemented on May 1, 2000 and was discontinued in February or March 2009.

[11] NY Medicaid had a contracted mail order pharmacy program from 4/15/1991 through 4/4/1996. The single contracted pharmacy was reimbursed at AWP-13.5% plus a dispensing fee of $2.50. It was not available to New York City beneficiaries and was discontinued due to low utilization.

[12] Per TN 06-30, While the final SMAC pricing methodology is proprietary, multiple drug pricing resources are utilized to determine the preliminary acquisition cost for generic drugs. The preliminary acquisition cost for each product is maintained in a SMAC pricing file database. Products are then sorted into drug groups by GSN, which denotes the same generic name, strength, and dosage form. The proprietary formula is applied to the EACs in each GSN giving due consideration to the lower cost products. Multipliers are used to increase the applicable lowest price by a percentage. The resulting price becomes the SMAC price which is then applied to all drug products in that specific GSN.

[13] Dates, dispensing fees, and other information reviewed and verified as accurate in Donnelly Declaration dated 7/20/09.

**State of:**   <u>**NORTH CAROLINA**</u>

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | span **Legend/Prescription Drugs** | | | | | | | | | | | |

| Effective Time Period | Usual and Customary | FUL | EAC [4] | Lowest Charge to Other 3rd Party | SMAC | Estimated Acquisition Cost (EAC) [3] | | SMAC Methodology | Physician Override (DAW, Brand Medically | Dispensing Fee [1] | | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Brand | Generic | | | Brand | Generic | |
| 10/1/1989 - 12/31/1991 | Y | Y | Y | Y [7] | N | AWP - 10% [6] | AWP - 10% [6] | | Y | $4.85 | $4.85 | |
| 1/1/1992 - 6/30/1992 | Y | Y | Y | Y [7] | N | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 7/1/1992 - 11/30/2001 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 12/1/2001 - Present | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | [2] | Y | $4.00 | $5.60 | [5] |

Note: The "Lower of" Reimbursement Methodology spans Usual and Customary, FUL, EAC, Lowest Charge to Other 3rd Party, and SMAC columns.



■ (blue)  Data taken from North Carolina Medicaid State Plan Amendments

■ (green)  Data provided by Weeks 10/21/08 deposition and exhibits

■ (purple)  Data provided by Lisa Weeks, Pharmacy Policy Supervisor

[1] Per TN #89-09 et al. (Ex. 11, 12), the dispensing fee is paid to all providers for the initial dispensing.  Refills within the same month are not paid a dispensing fee.

[2] SMAC methodology - reimbursement is based on 150 percent of the lowest priced generic.  In cases where 150 percent results in a price less than the cost of the second-lowest generic product, at least an additional 10 percent margin is added to the cost of the second-lowest drug to establish the MAC price. (Deposition pp. 45-46, 49) For established generic drugs with only one supplier, the MAC price is established between the actual acquisition cost and the average wholesale price of the generic drug.  A minimum reimbursement of 20 percent above actual acquisition is guaranteed for these drugs.  In most cases, MAC pricing is substantially higher than the 20 percent. (Deposition pp. 95, 263-265, Ex. 13)

[3] Per TN #92-05 et al., the state uses First DataBank for pricing  (Ex. 12). (See also deposition pp. 43-44, 91-92)

[4] Per TN #89-09 et al., EAC is referred to as NCEAC or North Carolina Estimated Acquisition Cost.   (See also deposition pp. 86-87)

[5] Compound drugs have been treated like generics regarding dispensing fee ($5.60) since the 2001 reduction in the brand dispensing fee to $4.00. If these drugs come through pharmacy point-of-sale, then they are reimbursed as other drugs.

[6] Per deposition pp. 41-43, AWP - 10% was implemented in the early 1990's.  Prior to that, EAC was set at 100% AWP.

[7] Per deposition pp. 82-85, state had no way to enforce lowest charge to other 3rd party, therefore it was removed from the State Plan (pp. 89-90).

State of:     **NORTH DAKOTA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [3] | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC [3] | SMAC | DOJ Pricing | Brand/Generic | | Brand | Generic | Compound Drugs | Pill Splitting |
| 7/1/1990  -  6/30/1991 [8] | Y | Y | Y | N | | AWP - 10% | Y | $3.56 [8] | $3.56 [8] | | |
| 7/1/1991 [8]  -  6/30/1995 [8] | Y | Y | Y | N | | AWP - 10% | | $4.25 [8] | $4.25 [8] | | |
| 7/1/1995 [8]  -  7/31/1997 [8] | Y | Y | Y | N | | AWP - 10% | | $4.50 [8] | $4.50 [8] | | |
| 8/1/1997 [8]  -  3/31/2002 | Y | Y | Y | N | Y [6] | AWP - 10% | Y [8] | $4.60 [8] | $4.60 [8] | | |
| 4/1/2002  -  1/5/2003 | Y | Y | Y | Y [1, 8] | | AWP - 10% | Y [8] | $4.60 | $4.60 | $10.00 [5, 8] | + $.15/pill [2] |
| 1/6/2003  -  7/31/2003 | Y | Y | Y | Y [1] | | AWP - 10% | Y [8] | $5.10 | $5.10 | $10.00 [5, 8] | + $.15/pill [2] |
| 8/1/2003 [7]  -  9/30/2005 [8] | Y | Y | Y | Y [1] | | AWP - 10% | Y [8] | $4.60 [7] | $5.60 [7] | $10.00 [5, 8] | + $.15/pill [2] |
| 10/1/2005 [8]  -  Present [8] | Y | Y | Y | Y [1] | | Lesser of: AWP - 10% or WAC + 12.5% [4] | Y | $4.60 | $5.60 | $10.00 [5, 8] | + $.15/pill [2] |

   Data taken from North Dakota Medicaid State Plan Amendments

   Data provided by Joyce deposition taken on 12-12-08 and Dey Exhibits

[1] Per TN #02-022  (HHD038-0107) , State MAC added. SMAC pricing did not become effective until 1/6/2003. Methodology is based on actual costs for pharmacies and not WAC or AWP.  State MAC includes hemophilia factors, Synagis, immunoglobulin.

[2] Beginning with TN #02-013  (HHD038-0100) , a fee of fifteen cents per pill will be added to the dispensing fee for the service of pill-splitting. Pill splitting is entirely voluntary for the patient and the pharmacist. Pill splitting will only be permitted when Medical Services determines it is cost effective, the pill is scored for ease of splitting, and the pharmacy staff splits the pill. This fee will only be allowed for medications that have been evaluated by the state for cost-effectiveness and entered into the Point-of-Sale system.

[3] Beginning with TN #90-06   (HHD038-0034)  First DataBank used for pricing.  (See also Deposition Ex. 723, HHD006-0301.)

[4] State asked First Data Bank to change reimbursement rates to the lesser of AWP-10% or WAC+12.5% effective 10/1/2005, but it wasn't loaded until December 2005.  (Contained in Ex. 001; verified as accurate per deposition pp. 249-253.)  (EAC change effective 11/1/05 per TN #05-005  (HHD038-0120) .)

[5] Compounds are reimbursed by calculating EAC for all ingredients and then given a dispensing fee of $10 for the entire compound.  (Contained in Ex. 001; verified as accurate per deposition pp. 249-253.)

[6] State implemented DOJ prices in June 2000 and discontinued them in August 2000. (Deposition Ex. 723, HHD006-0302)  (Contained in Ex. 001; verified as accurate per deposition pp. 249-253.)

[7] Per TN #03-009  (Ex. 714, deposition pp. 135-136.)

[8] Dates, dispensing fees, compound fees and other information contained in Ex. 001 verified as accurate per deposition pp. 249-253.

**State of:** <u>**OKLAHOMA**</u>

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [5] | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Usual and Customary | FUL | EAC [5] | DOJ Pricing | SMAC | Brand | Generic | | | Brand | Generic |
| 3/1/1990 - 9/30/1995 | | Y | Y | Y | | Y [1] | AWP - 10.5% | AWP - 10.5% | 1 | Y [2] | Max. $5.10 | Max. $5.10 |
| 10/1/1995 - 2/11/2002 | | Y | Y | Y | Y [6] | Y [7] | AWP - 10.5% | AWP - 10.5% | 3 | Y | Max. $4.15 | Max. $4.15 |
| 2/12/2002 - Present [8] | | Y | Y | Y | 6 | Y | AWP - 12% | AWP - 12% | 4 | Y | Max. $4.15 | Max. $4.15 |

 Data taken from Medicaid State Plan Amendments

Data taken from Nesser Deposition (12-12-08) and Roxane Exhibits

Data taken from OHCA pharmacy program website 10/27/08 and 6/18/09

[1] State MAC established effective 7/1/93 per TN #93-16: State MAC products and price are established based upon the recommendation of a special committee consisting of representatives from the Medical, Osteopathic and Pharmaceutical Associations. The price is set as a percentile of the available medication specific products. (HHD076-0084)

[2] Per TN #93-16, brand necessary exception does not apply to State MAC.  (HHD076-0081)

[3] Per TN #00-02, effective 4/8/2000, the SMAC price is established for certain products which have an FDA approved generic equivalent. The products and SMAC price are established based upon the recommendation of the DUR Board to the Agency CEO based on an average of two pricing formulas:  (1) the OK State and Education Employees Group Insurance Board (OSEEGIB) MAC value and (2) the lower of AWP-15% or WAC plus 12%. The DUR Board computes formula number (1) and computes the lower of formula number (2). The formulas in (1) and (2) will then be averaged to comprise the SMAC price. (HHD075-0080)

[4] Per TN #03-15 effective 10/1/2003, the SMAC is established for certain products which have an FDA approved generic equivalent and are not narrow therapeutic index drugs. There are two calculations done for each product. The first is unit AWP-15% and the second is unit WAC+12%. For each product, the lower value is to be considered. The median value of the "lower of" or "lesser of" values then becomes the SMAC price.  (HHD076-0077)

[5] Division has always used First DataBank for pricing. (Deposition pp. 317-318)

[6] Per Roxane Exhibit 022 dated 12-12-08, OK implemented DOJ prices on May 1, 2000 and was still using those prices as of 1/11/2001 (See also deposition pp. 232-233) Per deposition p. 343, DOJ prices are no longer being used; they have been replaced with invoice information over time.

[7] Per Nesser deposition pages 198 and 202, OK established a State MAC program in the 1980's, then the program dwindled and was re-established in 2000.

[8] Per deposition pp. 78-80, the basic formula for reimbursement has not changed since 2002.

State of:   **OREGON**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | | | | | | Prescription/Legend Drugs | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Reimbursement is always lowest of either FUL or EAC or SMAC or U&C | | | | | Estimated Acquisition Cost (EAC) [10] Pay the lower of each formula listed | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
| | | | | | | | | Mail Order | | | | | |
| Effective Time Period | Usual and Customary | FUL | EAC | SMAC [2] | DOJ Pricing | Retail | Institutional | Brand | Generic | SMAC Methodology | | Retail | Institutional | Compound Drug Fee (Retail) |
| 1/1/1991 - 9/30/2001 | Y | Y | Y | N | Y [11] | DP [1]; AWP - 11% | DP [1]; AWP - 11% | | | | Y | $3.91 [3] | [3] | |
| 10/1/2001 - 8/31/2002 | Y | Y | Y | Y [2] | Y [11] | AWP - 13% | AWP - 13% | | | | Y | $3.50 | $3.91 | $3.50 [8] |
| 9/1/2002 - 2/14/2003 | Y | Y | Y | Y | Y [11] | AWP - 14% | AWP - 14% | | | [4] | Y | $3.50 | $3.91 | $3.50 [8] |
| 2/15/2003 - 5/31/2003 | Y | Y | Y | Y | Y [11] | AWP - 14% | AWP - 14% | AWP - 21% [6] | AWP - 60% [6] | [5] | Y | $3.50 | $3.91 | $3.50 [8] |
| 6/1/2003 - 10/31/2003 | Y | Y | Y | Y | Y [11] | AWP - 15% | AWP - 11% | AWP - 21% [6] | AWP - 60% [6] | [7] | Y | $3.50 | $3.91 | $3.50 [8] |
| 11/1/2003 - Present | Y | Y | Y | Y | Y [11] | AWP - 15% | AWP - 11% | AWP - 21% [6] | AWP - 60% [6] | [7] | Y | $3.50 | $3.91 | $7.50 [9] |



■ Data taken from Oregon Medicaid State Plan Amendments

■ Data provided by Anderson deposition taken 12/16/08 and exhibits and by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

■ Data provided by Roger Magrish, Pharmacy Program Manager

■ Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] NPCs report direct price (DP) for 9 selected companies.  (See also deposition pp. 62-66, Ex. 1)

[2] Per TN #91-8  (HHD074-0266) , Oregon MAC is referred to as OMAC and became effective on 3/1/2002 per the state.

[3] Per TN #91-8  (HHD074-0265) , dispensing fee payment mechanism is four-tiered, based on yearly prescription sales volume, the percentage of dispensing sales volume that is Medicaid dispensings, and the type of unit dose dispensing system used: $4.05 for 15-30K volume of scripts; $4.17 for 1-15K; and $4.28 for 1-15K with 20% > Medicaid volume.  (Deposition pp. 62-66, Ex. 1)

[4] Per TN #02-04  (HHD074-0328) , OMAC is determined on selected multiple-source drugs designated as bioequivalent by the FDA. The upper limit of payment for a selected multiple-source drug is set at a level where one bioequivalent drug product is available from at least two wholesalers serving the State of Oregon.  When the OMAC is based upon AWP, it will be set at 14% below AWP.

[5] Per TN #02-16  (HHD074-0413) , OMAC is determined on selected multiple-source drugs designated as bioequivalent by the FDA. The upper limit of payment for a selected multiple-source drug is set at a level where one bioequivalent drug product is available from at least two wholesalers serving the State of Oregon.  When the OMAC is based upon AWP, it will be set at 14% below AWP and below 11% for institutional pharmacies.

[6] Per TN #02-16  (HHD074-0413) et al., brand drugs purchased through DHS mail order vendor are paid the lesser of OMAC, FULs, AWP-21%; plus dispensing fee. Generic drugs purchased through DHS mail order vendor are paid the lesser of OMAC, FULs, AWP-60%; plus dispensing fee.

[7] Per TN #02-17  (HHD074-0418) , OMAC is determined on selected multiple-source drugs designated as bioequivalent by the FDA. The upper limit of payment for a selected multiple-source drug is set at a level where one bioequivalent drug product is available from at least two wholesalers serving the State of Oregon.  When the OMAC is based upon AWP, it will be set at 14% below AWP and below 11% for institutional pharmacies.

[8] Per TN #01-12  (HHD074-0389) et al., fee allowances are made for preparation time and dispensing of compound prescriptions. Pharmacies must list all applicable NDCs included in the compound and will receive a dispensing fee of $3.50 for each ingredient listed.

[9] Per TN #04-10  (HHD074-0316) , fee allowances are made for preparation time and dispensing of compound prescriptions. Pharmacies must list all applicable NDCs included in the compound and will receive a dispensing fee of $7.50 for each ingredient listed.

[10] The State has always used First DataBank for pricing.  (Deposition pp. 226-227, and pp. 62-66, Ex. 1)

[11] Per deposition pp. 203-206, from 2001 DOJ prices were being paid instead of First DataBank's AWP.  Per state, DOJ pricing was used on selected drugs from First DataBank through 7/1/2005.

State of:   **PENNSYLVANIA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

**Legend/Prescription Drugs**

| Effective Time Period | Brand Usual and Customary | Brand EAC | Generic Usual and Customary | Generic FUL | Generic EAC | Generic SMAC | DOJ Pricing [3] | Estimated Acquisition Cost (EAC) [2] Brand/Generic | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Brand | Dispensing Fee Generic | Dispensing Fee Compound Prescription |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/1/1987 - 1/9/1991 | Y | Y | Y | Y | Y | Y | | AWP | Y | $2.75 | $2.75 | Y [1] |
| 1/10/1991 - 9/30/1995 | Y | Y | Y | Y | Y | Y | | AWP | Y | $3.50 | $3.50 | Y [1] |
| 10/1/1995 - 8/9/2005 | Y | Y | Y | Y | Y | Y | | AWP-10% | Y | $4.00 | $4.00 | Y [1] |

**"Lower of" Reimbursement Methodology**

| Effective Time Period | Brand Usual and Customary | Brand EAC | Generic Usual and Customary | Generic FUL | Generic EAC | Generic SMAC | Estimated Acquisition Cost (EAC) [2] Brand Pay the "lower of" | Estimated Acquisition Cost (EAC) [2] Generic Pay the "lower of" | Physician Override | Dispensing Fee Brand | Dispensing Fee Generic | Dispensing Fee Compound |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/10/2005 - Present | Y | Y | Y | Y | Y | Y [4] | WAC + 7% or AWP - 14% | WAC + 66% or AWP - 25% | Y | $4.00 | $4.00 | Y [1] |



Data taken from Pennsylvania Medicaid State Plan Amendments

Data taken from Pennsylvania Medical Assistance Bulletins

Data provided by Terri Cathers, Director Pharmacy Programs

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per NPC summaries beginning with 1991, for compound prescriptions, an additional fee of $1.00 fee is allowed to a pharmacy, bringing the total dispensing fee to $3.75. A compounded prescription for the purposes of medical assistance payment is one which is prepared at the time of dispensing and involves the weighing of at least one solid ingredient which must be a compensable item or a legend drug in a therapeutic amount. (This information was later corroborated by SPA TN #95-22)

[2] Beginning on 1/10/2005 until 8/9/2005, the State used "dynamic pricing" from First DataBank, Micromedex, and Medi-Span, to determine the lower of the AWP or WAC, as well as the pricing formula of AWP-10%. Then from 8/10/2005 to present, EAC is calculated utilizing AWP from the three vendors as well as new pricing formulas. Prior to dynamic pricing, beginning 10/1/1995, EAC is calculated based upon AWP-10% from one pricing vendor, First DataBank.

[3] Pennsylvania is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

[4] Per State, effective 8/22/05, the State MAC pricing methodology was changed to the lower of: FUL; or, if the generic product is available from more than one manufacturer, the base price of 150% of the lowest acquisition cost for the generic product, unless 150% of the lowest acquisition cost is not at least 120% of the second lowest acquisition cost, the base price will be set at 120% of the second lowest acquisition cost. If the generic product is available from only one manufacturer, the base price is 120% of the acquisition cost for the generic product.

**State of:**   <u>**RHODE ISLAND**</u>

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Prescription/Legend Drugs [8] | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) [4] | | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC [4] | SMAC | Brand/Generic | | In-home | Institution |
|---|---|---|---|---|---|---|---|---|
| 10/1/1987 - 12/31/1994 | Y | Y | Y | Y [1] | Pay lower of: AWP [5,] DP [2] | Y | $3.40 | $2.85 |
| 1/1/1995 - 6/30/1995 | Y [3] | Y | Y | N | WAC + 10% [7] | Y | $3.40 | $2.85 |
| 7/1/1995 - 7/31/2006 | Y [3] | Y | Y | N | WAC + 5% [7] | Y | $3.40 | $2.85 |
| 8/1/2006 - Present | Y [3] | Y | Y | N | WAC [6,7] | Y | $3.40 | $2.85 |

   Data taken from Rhode Island Medicaid State Plan Amendments

Data provided by Young deposition taken on 12/3/08 and by Avarista deposition taken on 12/4/08 and Declaration of Paula Avarista dated 7/21/09

[1] Per TN #87-15  (HHD040-0062)  SMAC referred to as State Upper Payment Limits.  State MAC program was discontinued effective 1/1/1995 (Avarista deposition p.102).

[2] Per NPC reports for 1991 and 1992, Direct Price applies to ten manufacturers: Abbott-Ross, Lederle, Merck Sharp & Dohme, Parke-Davis, Pfipharmics, Pfizer-Roerig, Squibb, Upjohn, Warner-Chilcott, Wyeth-Ayerst). NPCs for 1993 and 1994 report nine: Abbott-Ross, Lederle, Merck & Co., Pfipharmics, Pfizer-Roerig, Squibb, Upjohn, Warner-Chilcott, Wyerst-Ayerst.  (Direct price confirmed Avarista deposition p. 59.)

[3] Beginning with TN #95-005 effective 1/1/1994, the usual and customary charge to the general public should include all discounts such as senior citizen discounts, or if lower, the amount reimbursed by other third party payors.   (HHD040-0061)

[4] Per Avarista deposition pp. 204-205, MediSpan was used for pricing until 1991 and was then switched to First DataBank, which has been used ever since.

[5] Per Avarista deposition pp.  43-44, 59, 201-202.

[6] Per Young deposition pp. 165 and 229, WAC + 5 changed to WAC.

[7] Per Avarista deposition pp. 210-211,  since 1995, WAC is primary pricing.  However, AWP - 15% is used for pricing if WAC, direct price, or FUL are not available.

[8] All information on summary reviewed and verified as accurate in Avarista Declaration.

**State of:**   <u>SOUTH CAROLINA</u>

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | | Legend/Prescription Drugs | | | | | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC)[3] | | | | |
| | | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand/Generic | | | Independent | Institutional |
| 7/1/1990 - 8/31/1991 | | Y | Y | Y | | Y | AWP - 9 1/2% [1,2] | SMAC - 9 1/2% | Y | $3.05 | $2.15 |
| 9/1/1991 - 9/30/1995 | | Y | Y | Y | | Y | AWP - 9 1/2% [1,2] | SMAC - 9 1/2% | Y | $4.05 | $3.15 |
| 10/1/1995 - 9/30/1999 | | Y | Y | Y | | Y | AWP - 10% [1,2] | SMAC - 10% | Y | $4.05 | $3.15 |
| 10/1/1999 - 6/30/2000 | | Y | Y | Y | | Y | AWP - 13% [1,2] | SMAC - 13% | Y | $4.05 | $3.15 |
| 7/1/2000 - 11/30/2001 | | Y | Y | Y | Y [6] | Y | AWP - 10% [1,2] | SMAC - 10% | Y | $4.05 | $3.15 |
| 12/1/2001 - Present | | Y [4,5] | Y [4,5] | Y [4,5] | Y [6] | Y [4,5] | AWP - 10% [1,2] | SMAC - 10% | Y | $4.05 | $3.15 |

 Data taken from South Carolina Medicaid State Plan Amendments

■ Data provided by Medicaid Bulletins

■ Data provided by James Assey, Division Director of Health Services

[1] Beginning with MA #90-20 effective 7/1/1990, for pharmaceutical products having no AWP and whose billing price includes services other than ingredient cost, the state will impute its EAC based on available data. Final reimbursement is based on the imputed EAC plus the current dispensing fee.

[2] Beginning with MA #90-20 effective 7/1/1990, a provider of pharmaceutical services to LTC facilities may opt to be reimbursed under the Alternate Reimbursement Methodology (ARM).  The ARM rate is based on historical reimbursement and utilization data for prescriptions of residents of LTC facilities. Reimbursement is based on the established rate times the estimated patient day totals for those recipients served by the contracted provider. Adjustment of the reimbursement is made when a comparison of the estimated vs. actual patient days for the month yields a difference. The ARM rate will not exceed the upper limits of payments under the non-LTC reimbursement methodology. Discontinued on 1/1/06 according to State Plan #05-013.

[3] Per 5/15/08 telephone call, pricing compendium has always been First DataBank.

[4] Per SC DHHS Medicaid Bulletin Pharm 01-06 dated November 7, 2001: Effective with dates of service December 1, 2001, the Medicaid prescription payment amount shall not exceed the lowest of: AWP less 10%, plus the dispensing fee of $4.05, **less $2.05**; FUL or SCMAC less 10%, plus the dispensing fee of $4.05, **less $2.05**; or the provider's usual and customary charge.

[5] Per SC DHHS Medicaid Bulletin Pharm 02-04 dated June 26, 2002: Effective with dates of service July 1, 2002, the Medicaid prescription payment amount shall not exceed the lowest of: AWP less 10%, plus the dispensing fee of $4.05; FUL or SCMAC less 10%, plus the dispensing fee of $4.05; or the provider's usual and customary charge. (The reduction of "less $2.05" was removed).

[6] The State applied DOJ pricing supplied by First Data Bank to the same price methodology.

State of: __SOUTH DAKOTA__

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Prescription/Legend Drugs [6] | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Unit Dose |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) [2] | | | | | |
| | Usual and Customary | FUL | EAC [2] | SMAC | Brand/Generic (Non-SMAC) | Class II Substances | | Brand | Generic | |
| 1/1/1990   -   6/30/1991 | Y | Y | Y | N [1] | AWP - 10.5% | 100% AWP [5] | Y | $4.25 | $4.25 | $5.05 |
| 7/1/1991   -   11/15/2002 | Y | Y | Y | N [1] | AWP - 10.5% | 100% AWP [5] | Y | $4.75 [3] | $4.75 [3] | $4.75 + $.80 |
| 11/16/2002 [1]   -   Present | Y | Y | Y | Y [4] | AWP - 10.5% | | Y | $4.75 | $4.75 | $4.75 + $.80 |

   Data taken from South Dakota Medicaid State Plan Amendments

Data provided by Iversen deposition taken 12/15/2008 and exhibits; and Declaration of Mike Jockheck dated July 22, 2009

[1] Per 12/15/08 Iversen deposition p. 76, 78, and 87, SMAC was set at the FUL until November 2002 when a state-specific MAC was implemented.

[2] Pricing provided by First DataBank. (12/15/08 Iversen deposition p. 139)

[3] Per 12/15/08 Iversen deposition p. 79.

[4] Per dep. p. 87-89, 100-101, MAC methodology unknown because prices are determined by an outside vendor.

[5] State plans TN #90-11 and #91-16 report Schedule II paid at 100% AWP, but state reports that AWP - 10.5% was paid.

[6] All pricing information in this summary reviewed and verified as accurate in Jockheck Declaration.

07/22/09

State of:   **TENNESSEE**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **"Lower of" Reimbursement Methodology** | | | | | **Estimated Acquisition Cost (EAC)[8]** | | | | **Physician Override (DAW, Brand Medically Necessary)** | **Dispensing Fee** | | | | | | |
| **Effective Time Period** | Usual and Customary | FUL | EAC[8] | SMAC[1] | DOJ Pricing | Retail Pharmacy Network | Specialty Network Pharmacy | Non-Network Pharmacy | Schedule II Drugs | | **Retail Pharmacy Network** | | Specialty Network Pharmacy | Non-Network Pharmacy | **Unit Dose** | | Compound Drugs |
| | | | | | | | | | | | Brand | Generic | | | Brand | Generic | |
| 10/1/1990 - 6/30/1998 | Y | Y | Y | Y | | AWP - 8%[2, 3] | | | 100% AWP[2] | N | $3.91 | $3.91 | | | $6.00 | $6.00 | |
| 7/1/1998 - 6/30/2000 | Y | Y | Y | Y | Y[17] | AWP - 13%[4] | | | 100% AWP | N[11] | $2.50[5] | $2.50[5] | | | $6.00 | $6.00 | |
| 7/1/2000 - 6/30/2003 | Y | Y | Y | Y | Y[17] | AWP - 13%[4] | | | 100% AWP[2] | N[11] | $2.50[6] | $2.50[6] | | | $5.00[7] | $5.00[7] | $25.00[16] |
| 7/1/2003 - 9/30/2008 | Y | Y | Y | Y | Y[17] | AWP - 13%[4] | | | | N[11] | $2.50[10] | $3.00[10] | | | $5.00[9] | $6.00[9] | $25.00[16] |
| 10/1/2008 - Present | Y | Y | Y | Y | Y[17] | AWP - 13%[4, 12] | [13] | AWP - 16%[14] | | N[11] | $2.50[12] | $3.00[12] | $1.50[13] | $1.50[14] | $5.00[15] | $6.00[15] | $25.00[16] |

■ (blue) Data taken from Tennessee Medicaid State Plan Amendments

■ (green) Data provided by Sullivan deposition taken 3/12/08 and exhibits

■ (black) Data provided by TennCare Pharmacy Manual Version 1.2 dated February 7, 2008 and Version 2.1 dated October 2008

■ (purple) Data provided by TennCare staff

[1] Per TN #90-32 et al., state MAC is defined as Tennessee Maximum Allowable Cost, TMAC.

[2] Per TN #90-32 and #2003-2, DEA Schedule II drugs shall be Blue Book published AWP.   Discontinuation of Schedule II pricing occurred sometime prior to 7/1/2003.

[3] Per TN #90-32, when covered drugs are repackaged by an FDA-licensed repackager into unit dose packaging, an additional amount not to exceed a maximum of $0.03 per unit dose packaging will be allowed.

[4] Per TN #98-9 et al., payment for covered drugs may be made through a contract with one or more pharmacy benefits vendors or directly to participating pharmacies.

[5] Per TN #98-9, the dispensing fee is $2.50 for each prescription dispensed by pharmacy providers who comply with state-approved preferred provider credentialing requirements or special exemption requirements, and $2.00 for each prescription dispensed by other pharmacy providers.

[6] Per TN #2000-6, the dispensing fee is $2.50 for each prescription dispensed by pharmacy providers who comply with all of the TennCare pharmacy requirements.

[7] Per TN #2000-6, long-term care unit dose vendors who comply with all of the TennCare pharmacy requirements will receive a $5.00 dispensing fee for residents when the quantity dispensed is greater than a 28-day supply and $2.50 if the quantity is less.

[8] Per deposition pp. 265-266 (see also Abbott Exhibit 583), pricing provided by First DataBank until 9/30/08, at which time pricing service was switched to MediSpan as part of the SXC contract as the TennCare PBM, (per 2/6/09 telephone call with the State).

[9] Per TN #2003-2, paid for long-term care pharmacy claims when the days supply is greater than 28 days.

[10] Per TN #2003-2, pharmacy providers who maintain a 90% or greater compliance with TennCare's preferred drug list (PDL) for each 6 month time period, will be paid an additional $0.10 for each TennCare prescription dispensed during that period.    Per 1/8/09 telephone call with the State, this policy is believed to have ended with the increase to a $3.00 generic dispense fee, which occurred in late 2004 or early 2005.

[11] TennCare is a mandatory generic program, in which DAW1 is not allowed to override the mandatory generic requirement; exceptions may be requested through the PBM.  There is also a short list of exceptions to the mandatory generic policy where TennCare prefers a brand product over a generic. For these medications, pharmacies are paid the generic dispensing fee.

[12] Pharmacies in the Retail Pharmacy Network are reimbursed the lesser of AWP-13% + dispensing fee, or MAC + dispensing fee, or FUL + dispensing fee, or U&C.  Exceptions to this rule occur if the retail pharmacy dispenses a Specialty Pharmacy product, in which case they are reimbursed the lesser of the Specialty Rate, or AWP + $1.50 dispensing fee, or FUL + $1.50 dispensing fee.

[13] Pharmacies in the Specialty Pharmacy Network are reimbursed the lesser of the Specialty Rate, or AWP-16% + $1.50 dispensing fee (if the product is not on the Specialty list), or MAC + $1.50 dispensing fee, or FUL + $1.50 dispensing fee, or U&C.

[14] Non-Network pharmacies are reimbursed the lesser of AWP-16% + $1.50 dispensing fee (DF), or MAC + $1.50 DF, or FUL + $1.50 DF, or U&C.  Exceptions to this include specialty products, for which non-network pharmacies are reimbursed at a 2% deeper discount than the Specialty Rate plus a $1.50 DF (for example, if the Specialty Rate is AWP-17%, then the non-network rate for that product would be AWP-19% + $1.50).

[15] Paid for drugs with days supply greater than or equal to 28 days.

[16] For compound drug pricing, each individual ingredient is priced according to the "lower of" methodology plus the applicable dispense fee. The lesser of calculated amount, Usual and Customary, and Gross Amount Due are reimbursed. Dispense fees up to $25.00 are allowed; however, antibiotics are not authorized for this amount and pay the standard $2.50 dispense fee.

[17] Per Abbott Exhibit 583 and deposition pp. 223-233, 238-241, DOJ prices were implemented 5/1/2007 but it is unclear whether the prices remain in effect today.

State of:   **TEXAS**

**Medicaid Pharmacy Reimbursement Methodology Summary**

**Reimbursement of Legend Drugs [17]**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) [6, 7] (Pay lower of WEAC, DEAC or MAC) | | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee Formula/ Average Dispensing Fee | Dispensing Fee Formula Factors | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC [6] | DOJ Pricing | WEAC [7] (Pay lower of) | DEAC [7] | MAC/ SMAC [7] | | | | Dispensing Expense | Inventory Management Factor | Delivery |
| 5/1/1990 - 1/31/1991 | Y | Y | Y | | AWP - 10.49% or wc + 12% [9] | [3] | Y | | Y | [1,2,4] | 4.26 | 3.0% | $0.10 |
| 2/1/1991 - 3/30/1992 | Y | Y | Y | | AWP - 10.49% or wc + 12% [9] | [3] | Y | | Y | [1,2,4] | 4.53 | 3.0% | $0.10 |
| 4/1/1992 - 8/31/1992 | Y | Y | Y | | AWP - 10.49% or wc + 12% [9] | [3] | Y | | Y | [1,2,4] | 4.55 | 3.0% | $0.10 |
| 9/1/1992 - 8/31/1997 | Y | Y | Y | | AWP - 10.49% or wc + 12% [9] | [3] | Y | | Y | [1, 2, 4, 5] | 4.55 | 7.0% | $0.10 |
| 9/1/1997 - 10/15/2003 | Y | Y | Y [7] | Y [8] | AWP - 15% or wc + 12% [9] | [3, 7, 10, 11] | Y [7, 12] | [12] | Y | $5.27 [5, 13] | 5.27 | 2.0% | $0.15 |
| 10/16/2003 - 11/30/2004 | Y | Y | Y [7] | Y [8] | AWP - 15% or wc + 12% [9] | [10, 11] | Y [7, 12] | [12] | Y | $5.14 [14] | 5.14 | 1.95% | $0.15 |
| 12/1/2004 - 8/31/2007 | Y | Y | Y [7] | Y [8] | AWP - 15% or wc + 12% [9] | [10, 11] | Y [7, 12] | [12] | Y | $5.14 [14, 15, 16] | 5.14 | 1.95% | $0.15 |
| 9/1/2007 - Present | Y | Y | Y [7] | Y [8] | AWP - 15% or wc + 12% [9] | [10] | Y [7, 12] | [12] | Y | $5.14 [14, 15, 16] | 7.50 | 2.0% | $0.15 |

■ Data taken from Texas Medicaid State Plan Amendments

■ Data provided by the Declaration of Barbara Dean dated 7/24/09

[1] TN 90-12 and 96-01 (5/1/90 - 8/31/1997) report that the Department reimburses contracted Medicaid pharmacy providers on a **cost-related basis** (through cost reports) for prescription dispensing services and drug products provided to Medicaid recipients. This reimbursement is accomplished through **assignment of a dispensing fee for each prescription**. The department determines the dispensing fee after analyzing statewide financial and demographic information about the total cost of dispensing prescriptions.

[2] TN 90-12 and 96-01 (5/1/90 - 8/31/1997) report that the dispensing fee is based on the projected statewide median dispensing expense and a predetermined formula that provides an opportunity for profit on each prescription.

[3] NPC summaries for 1990 and 1991 list DEAC as part of the pricing formula. Summaries for 1992, 1993, and 1994 report Direct Prices for Abbott, Merck, Upjohn and Wyeth-Ayerst. Summaries for 1995 and 1996 report DP for Abbott, Upjohn and Wyeth-Ayerst. NPC Summaries for 1997, 1998, and 1999 report Direct Prices for Abbott, Pharmacia & Upjohn, and Wyeth-Ayerst.

[4] NPC 1990 formula: (EAC + 4.26) divided by 0.970 = amount paid + $.10 delivery service. NPC 1991 formula: (EAC + 4.53) divided by 0.970 = amount paid + $.10 delivery service. NPC 1992 formula: (EAC + 4.55) divided by 0.970 = amount

[5] NPC Summaries for 1993 through 1997 report the following formula: (EAC + 4.55) divided by 0.930 = amount paid + $.10 delivery service.

[6] The Department uses First DataBank and the Redbook as pricing references.

[7] Per TN #97-15 et al., EAC is defined as wholesale estimated acquisition cost (WEAC) or direct estimated acquisition cost (DEAC), according to the pharmacist's usual purchasing source and the pharmacist's usual purchasing quantity; or as a maximum allowable cost (MAC) for multi-source products.

[8] The Department began reducing drug costs based on DOJ pricing beginning in 2000.

[9] Per TN #97-15, all drug purchases from a central purchasing entity must be billed to the department as warehouse purchases. The WEAC is established by the department using the current Redbook, Redbook update, First Databank or manufacturer pricing less a discount of 15%, which represents discounts received by pharmacists on wholesale drug purchases. The WEAC may not exceed wholesaler cost (wc), as supplied by the drug manufacturers, plus a 12% markup representing wholesaler operating costs and profits. Exceptions to the percentages may be made on certain drugs and/or drug categories where additional information supplied to the department by the manufacturer indicates that application of the specific WEAC percentages does not reflect customarily available prices. Wholesaler cost (wc) clarified to be a net cost effective 10/21/2001 (TAC section 355.8541)

[10] Per TN #97-15, the DEAC is established by the department using direct price information supplied by drug manufacturers. Providers are reimbursed only at the DEAC on all drug products that are available from select manufacturers/distributors who actively seek and encourage direct purchasing.

[11] NPC Summaries for 2000, 2001 and 2002 report DEAC available only for Wyeth-Ayerst. Summaries for 2003, 2004, and 2005/2006 report DEAC available for Wyeth-Ayerst and Abbott.

[12] Per TN #97-15, SMAC referred to as Texas Maximum Allowable Cost, or TMAC. The TMAC reimbursement limit applies only to multi-source drugs included in the Vendor Drug Program's formulary (Texas Drug Code Index, or TDCI). Multi-source drugs are sorted into therapeutic categories based on the drug and strength, and in some cases, on the dosage form and package size. The TMAC reimbursement limit selected for each therapeutic category is determined using the WEAC of all drugs in the respective category. The TMAC reimbursement limits are maximum reimbursement limits. If a pharmacy provider dispenses a drug with a WEAC or DEAC below the TMAC limit, reimbursement is made at the lower cost based on the provider's source of purchase of the drug. If a drug is subject to both TMAC limits and federal maximum allowable cost limits, the lower of the two limits is the maximum reimbursement limit.

[13] Eff. 09-01-97 (TN 97-15), the dispensing fee is determined by the following formula: Dispensing Fee = (((Estimated Drug Ingredient Cost + Estimated Dispensing Expense) divided by (1 - Inventory Management Factor)) - Estimated Drug Ingredient Cost) + Delivery Incentive. NPC 1999 - 2002 formula: (EAC + 5.27) divided by 0.980 = amount paid + $0.15 delivery service. NPC 2003 formula: (EAC + 5.14) divided by 0.9805 = amount paid + $0.15 delivery service.

[14] Beginning with TN #03-26, the estimated dispensing expense is $5.14, and the inventory management factor is 1.95%. The total dispensing fee cannot exceed $200 per prescription. The delivery incentive was $0.15 per prescription.

[15] Per TN #04-31 effective 12/1/2004, dispensing fee is determined by the following formula: Dispensing Fee = (((Estimated Drug  Ingredient Cost + Estimated Dispensing Expense) divided by (1 - Inventory Management Factor)) - Estimated Drug Ingredient Cost) + Delivery Fee + Preferred Generic Fee.

[16] Per TN #04-31 effective 12/1/2004, a generic drug dispensing incentive of $0.50 per prescription shall be paid on all Medicaid prescriptions filled for preferred generic drugs for which a manufacturer has agreed to pay a supplemental rebate. Preferred generic drugs are subject to the requirements for placement on the Preferred Drug List.

[17] All information contained in this summary reviewed and verified as accurate in Dean Declaration.

State of:   **UTAH**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Prescription/Legend Drugs | | | | | | Physician Override (DAW, Brand Medically Necessary) [1] | Dispensing Fee | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [1] | | | | | | | |
| | Usual and Customary | FUL | EAC [1] | MAC [2] | DOJ Pricing | Brand/Generic | | Brand/Generic | Rural Pharmacy [3] | Category J [8] | Category K [8] | Category L [8] | Category M [8] |
| 7/1/1990   -   X/X/1992 | Y | Y | Y | Y | | AWP - 12% | | $3.65 | $4.15 | | | | |
| X/X/1992   -   3/31/2001 | Y | Y | Y | Y | | AWP - 12% [4, 6] | Y [5] | $3.90 | $4.40 | | | | |
| 4/1/2001   -   12/31/2002 | Y | Y | Y | Y | Y [9] | AWP - 12% | Y [5] | $3.90 | $4.40 | $8.90 [7] | $18.90 [7] | $22.90 [7] | $33.90 [7] |
| 1/1/2003   -   Present | Y | Y | Y | Y | Y [9] | AWP - 15% | Y [5, 10] | $3.90 | $4.40 | $8.90 [7] | $18.90 [7] | $22.90 [7] | $33.90 [7] |



Data taken from Utah Medicaid State Plan Amendments

Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

Data taken from United State Medicaid DUR Committee - The Amber Sheet, Volume 9, dated April 2001 and Pharmacy Manual

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Beginning with TN #89-02, effective 01/01/1989, the Average Wholesale Price (AWP) is determined for each drug by the Utah contract with American Druggist, Blue Book First DataBank.  They provide a monthly update of drug prices for the Reference File.  First Data Bank uses AWP from wholesalers in many states for determining AWP in specific regions.  Except for special category fees, reimbursement is based on lower of : 1) the Utah MAC plus a reason dispensing fee or the provider's usual and customary charge (billed charge) to the general public; 2) the Utah EAC plus a reasonable dispensing fee or the provider's usual and customary charge (billed charge) to the general public.  (HHD038-0535)

[2] Per TN #89-02, effective 01/01/1989 (and continuing through the present), the Utah Maximum Allowable Cost reimbursement established by the Utah Department of Health, Division of Health Care Financing, for selected multiple-source (generic) drugs not appearing on the federal upper limit list.  These drugs are listed in the Pharmacy Provider Manual.  (HHD038-0535)

[3] Per TN #93-002, effective 01/01/1993:  In recognition of lower volume and higher acquisition costs, rural pharmacies are paid a $.50 dispensing fee differential.  The differential is paid in addition to the dispensing fee paid to urban pharmacies.  Rural is defined as those pharmacies located outside of Weber, Davis, Utah and Salt Lake counties.  (HHD038-0538)

[4] Per 1994 - 1996 NPC Publications:  An increasing number of Medicaid recipients are enrolled in MCOs, and pharmacy benefits are received through the Managed Care.  Per 1997 NPC Publication, pharmacy benefit is a carve-out from managed care.  Per 1998 - 2000 NPC Publications, pharmacy benefits provided through state.

[5] Per 1996 - 2004 NPC Publications, override requires "Brand Medically Necessary"; per 2005/2006 NPC, override requires prior approval and chart documentation that generic(s) have been tried and failed.

[6] Per TN #93-002, effective 01/01/1993: special category fees apply to the following: (1) Payment for insulin, birth control pills, and non-legend (OTC) drugs and (2) Payment for non-legend OTC antacid liquids.  This fee is a negotiated fee initially developed in cooperation with the Utah Pharmaceutical Association and other key pharmacists to apply to specific drugs historically advertised and dispensed to the general public at minimum prices.  (HHD038-0797)

[7] Beginning with TN #01-004, effective 04/01/2001: special category fees includes differential fee payment for select drugs reconstituted for Home IV infusion as typically prepared by a specialty pharmacy.  Specialty pharmacies have low volume but high overhead expenses.  The Department of Justice (DOJ) in year 2000 repriced the AWP for 437 NDC specific products.  The repriced products necessitated four new dispensing fees.  The four fees are defined as Category J, Category K, Category L, and Category M.  (HHD038-0824)

[8] Per the United State Medicaid DUR Committee - The Amber Sheet, Volume 9, dated April 2001:  Categories two through five (J - M) are increasingly difficult prescriptions with category five being the most difficult and expensive to prepare.  Category five include chemotherapy IVs, pain management, and cardiac ionotropics; Category four includes complex antibiotics that require laboratory monitoring and reporting; Category three includes simple IV antibiotics, anticoagulant treatments, IV gamma globulin, etc.; Category two includes nebulizer preparations, growth hormone, etc.  (HHD038-0816)

[9] Per the Utah Medicaid Provider Manual Pharmacy Services, Page Updated January 2007, DOJ prices were implemented with an effective date of August 1, 2001. This included the establishment of a "true AWP" for 437 NDC specific products, each of which is placed into one of five categories and assigned a new dispensing fee.

[10] According to the Utah Medicaid Provider Manual, Pharmacy Services, (updated January 2007), brand name drugs require a prior approval if an 'AB' rated generic alternative is available. The Utah Pharmacy Practice Act mandates use of a generic unless the treating physician demonstrates to the Department of Health a medical necessity for dispensing the non-generic, brand-name legend drug.

State of:  __Vermont__

Medicaid Pharmacy Reimbursement Methodology Summary

| | Prescription/Legend Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology Pay the lower of each formula listed | | | | | Estimated Acquisition Cost (EAC) [1] | | Specialty Pharmacy | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | Compound Drugs |
| Effective Time Period | Usual and Customary | FUL | EAC [1] | SMAC | DOJ Pricing [12] | Brand | Generic | | | In-State | Out-of-State | |
| 10/1/1990 - 10/31/1991 | Y | Y | Y | N | | AWP - 10% | AWP - 10% | | | $3.95 [2] | | |
| 11/1/1991 - 4/30/1996 | Y | Y | Y | N | | AWP - 10% | AWP [4] | | Y [6] | $4.25 [3] | | |
| 5/1/1996 - 1/31/2000 | Y | Y | Y | N | | AWP - 10% | AWP [4] | | Y [6] | $4.25 | | [5] |
| 2/1/2000 - 6/30/2005 | Y | Y | Y | Y | | AWP - 10% | AWP [4] | | Y [6] | $4.25 | | [5] |
| 7/1/2000 - 6/30/2005 | Y | Y | Y | Y | | AWP - 11.9% | AWP [4] | | Y [7] | $4.25 | | [5] |
| 7/1/2005 - 7/1/2007 | Y | Y | Y | Y | | AWP - 11.9% [8] | AWP [4,8] | | Y [7] | $4.75 | $3.65 | $5.25 [5, 9] |
| 7/2/2007 - Present | Y | Y | Y | Y | | AWP - 11.9% [8] | AWP [4,8] | [11] | Y [7] | $4.75 | $3.65 | $15.00 [10] |

■ Data provided by Vermont Medicaid State Plan Amendments

■ Data provided by Rugg deposition taken 12/15/08 and exhibits, and other documents produced by the Government on December 11, 2008

■ Data provided by Pharmacy Provider Manual and Bulletins

■ Data provided by Mary Day

■ Data provided by the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per Rugg deposition pp. 355-356, state used First DataBank since at least 1993 (and maybe earlier) and switched to Medispan on January 1, 2006.

[2] Per NPC 1990, dispensing fee becomes 10% of cost of ingredients when ingredients exceed $39.50, capped at $7.50.

[3] Per NPC 1991, dispensing fee becomes 10% of cost of ingredients when ingredients exceed $42.50, capped at $7.50. This provision is not reported anymore beginning with NPC 1996.

[4] Beginning with TN #91-12 (Ex. Rugg 6), state plan amendments report that multiple source drugs are paid at the lowest of the amount charged, the average wholesale price plus dispensing fee or the uper limit determined by the state (EAC) derived from the upper limit established by HCFA plus a dispensing fee.  (See also deposition testimony pp. 90 - 135).

[5] Beginning with TN # 91-12, payment for compounded prescriptions is made at the lower of the actual amount charged or at the AWP on file plus a compounding fee plus a dispensing fee.   (HHD040-0198)

[6] Beginning with TN # 91-12, "physician certified as brand necessary" are paid at the lower of the amount charged or the average wholesale price less 10 percent plus a dispensing fee.

[7] TN # 00-06 reports that physician certified as brand necessary are paid at the lower of the amount charged or the average wholesale price less 11.9 percent plus a dispensing fee.

[8] Per 33 V.S.A. 1955b (DOJ HHD301-0008), beginning July 1, 2005, each pharmacy's monthly assessment shall be $0.10 for each prescription filled and refilled.

[9] According to NPC 2005/2006, effective 1/1/06, pharmacists will receive an additional $5.25 for compounded scripts.

[10] According to Pharmacy Provider Bulletin, dated 10/30/07, an additional fee of $15.00 for level of effort and other changes in pharmacy compound fees were implemented on 7/2/2007. Claims submissions were difficult, therefore, an automatic assignment of $15.00 per properly billed compound drugs was implemented on 11/1/2007. The $15.00 fee is in addition to the EAC and the standard dispensing fee.

[11] According to the Provider Manual (OVHA PBM Provider Manual 010609), two specialty pharmacies have been selected to service Medicaid beneficiaries. Dispensing of specialty drugs is limited to these pharmacies. Implementation dates are 10/1/2008, 22/3/2008, and 2/16/2009.

[12] Vermont is listed as a "DOJ special pricing state" in the OIG Report, "Medicaid's Use of Revised Average Wholesale Prices" (OEI-03-01-00010, September 2001), but state staff were unable to verify implementation of this pricing policy.

State of:   __VIRGINIA__

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | Estimated Acquisition Cost (EAC) [2] | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | Home Infusion Therapy |
| **Effective Time Period** | Usual and Customary | FUL | EAC | SMAC [1] | Brand | Generic | | | Brand | Generic | Unit Dose | |
| 10/1/1990 [1] - 6/30/1995 | Y | Y | Y | Y | AWP - 9% | AWP - 9% | | Y | $4.40 | $4.40 | [4] | |
| 7/1/1995 - 6/30/2002 | Y | Y | Y | Y | AWP - 9% | AWP - 9% | [3] | Y | $4.25 | $4.25 | [4] | [10] |
| 7/1/2002 - 6/30/2003 | Y | Y | Y | Y | AWP - 10.25% [8] | AWP - 10.25% [8] | [3] | Y | $4.25 | $4.25 | [4] | [10] |
| 7/1/2003 - 11/5/2003 | Y | Y | Y | Y | AWP - 10.25% [8] | AWP - 10.25% [8] | [3] | Y | $3.75 | $3.75 | [4] | [10] |
| 11/6/2003 - 11/30/2004 | Y | Y | Y | Y | AWP - 10.25% [8] | AWP - 10.25% [8] | [5] | Y | $3.75 | $3.75 | $5.00 [6] | [10] |
| 12/1/2004 - 6/30/2005 | Y | Y | Y | Y | AWP - 10.25% [8] | AWP - 10.25% [8] | [7] | Y | $3.75 | $3.75 | $5.00 [6] | [10] |
| 7/1/2005 - 4/30/2006 | Y | Y | Y | Y | AWP - 10.25% [8] | AWP - 10.25% [8] | [7] | Y | $3.75 | $4.00 | $5.00 [6] | [10] |
| 5/1/2006 - Present [11] | Y | Y | Y | Y [9] | AWP - 10.25% [8] | AWP - 10.25% [8] | [7, 9] | Y | $4.00 | $4.00 | $5.00 [6] | [10] |

Data provided by Virginia Medicaid State Plan Amendments

Data provided in AWP-MDL Deposition Transcript and Exhibits; Hayashi 12/4/08 deposition; Tomlinson 11/3/08 deposition

Data provided in 2/12/09 letter with attachments from Usha Koduru to Laurie Oberembt (Bates stamped 000002396 - 000002448)

[1] Pricing information for this period provided in TN #91-30 (Roxane VA Ex. 5, 11/3/08).  State MAC referred to as VMAC.

[2] Per Hayashi deposition pp. 23-24 and Tomlinson deposition p. 73, First DataBank used for pricing.

[3] Per TN #95-07 (HHC007-0920), VMAC based on 60th percentile or maximum cost level.

[4] Per TN #02-08 et al., program pays additional reimbursement for the 24-hour unit dose delivery system of dispensing drugs for patients residing in NFs.  Per Abbott Exhibit 1160 (11-4-08) VAC MDL 75692: Effective 10/1/1990, for unit-dose packaging, an allowance of $0.0157 per tablet, per capsule, or per 10 ml (average dose) oral liquid for non-commercial unit-dose packaging; and for unit-dose dispensing fee, an allowance of add-on payment of a $0.01 per oral tablet or oral capsule (the add-on is also applicable to each 10 ml of oral liquid dispensed).  Per TN #02-08, effective 7/1/2002, if the claim is coded with 4 in the unit dose field, $0.0157 for each tablet, capsule, and $0.0016 for each ml (repackaging).

[5] Per TN #03-09 (HHD039-0414), VMAC defined as the 75th percentile cost level, or the 60th percentile cost level for unit dose drugs, of the aggregate for each generic manufacturers' drug for each GCN.  Manufacturers' costs are supplied by the most  current First Data Bank File.

[6] Per TN #03-09 (HHD039-0415), for nursing facility residents, the unit dose dispensing fee is $5.00 per recipient per month per pharmacy provider.

[7] Per TN #04-16 (HHD039-0386), VMAC shall be the higher of either: (i) the lowest WAC plus 10%, or (ii) the second lowest WAC plus 6%. Additional detail for development of the VMAC is also included in the State Plan.

[8] Per Bates Stamp #000002437, beginning 11/1/2002, EAC for hemophilia drugs is AWP-25%.   Pricing continues through today per Tomlinson deposition p. 203.

[9] Effective July 1, 2008, DMAS initiated a Specialty MAC program. The drug classes that will be priced by the Specialty MAC program include: (1) Hematopoietic Agents; (2) Anti Tumor Necrosis Factor Agents (Rheumatoid Arthritis); (3) Immunomodulator Agents (Immune Suppressants); (4) Agents to treat Muscular Sclerosis; (5) Growth Hormones; and, (6) Interferon Agents for Hepatitis C. The new Specialty MAC reimbursement amount will be determined by and   based on the Wholesale Acquisition Cost (WAC) + 4.75%. (Bates Stamp #000002401)

[10] Per Roxane VA Ex. 12, 11-3-008, the Virginia Register of Regulations, dated 10/11/1999, page 209 reports that: "The following therapy categories shall have pharmacy service day rate payment allowable: hydration therapy, chemotherapy, pain management therapy, drug therapy, total parenteral nutrition (TPN). The service day rate payment for the pharmacy component shall apply to the basic components and services intrinsic to the therapy category.   (See also TN #02-08.)

[11] Pricing established or in effect on 5/1/2006 and later according to footnotes #8 and #9 are effective through the present according to Bates Stamp #000002434-2436.

State of: **WASHINGTON**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Prescription/Legend Drugs** | | | | | | | | | | | | | | | | | | |
| | "Lower of" Reimbursement Methodology [1,7] — Pay the lower of each formula listed | | | | | | Estimated Acquisition Cost (EAC) | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | | | |
| **Effective Time Period** | Usual and Customary | FUL | E-AC [10] | A-MAC | S-MAC [9] | DOJ Pricing | Brand | Generic | Schedule II Drugs | Mail Order | | Retail pharm. <15,000 Rxs | Retail pharm. 15,000-35,000 | Retail pharm. >35,000 Rxs | Unit dose sys. NH Rxs | Contracted Mail-order | Compound Drugs [12] |
| 1/1/1990 - 6/30/1992 | Y | Y | Y | | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | | $4.33 | $3.70 | $3.24 | $4.33 | | 2 |
| 7/1/1992 - 12/31/1992 | Y | Y | Y | | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | | $4.38 | $3.75 | $3.45 | $4.38 | | |
| 1/1/1993 - 6/30/1995 | Y | Y | Y | | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | | $4.50 | $3.90 | $3.65 | $4.50 | | 2 |
| 7/1/1995 - 6/30/1996 | Y | Y | Y | | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | | $4.59 | $3.98 | $3.72 | $4.59 | | 2, 6 |
| 7/1/1996 - 6/30/1997 | Y | Y | Y | Y [3] | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | Y | $4.68 | $4.06 | $3.79 | $4.68 | | 6 |
| 7/1/1997 - 6/30/1999 | Y | Y | Y | Y [3] | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | Y | $4.82 | $4.18 | $3.90 | $4.82 | | 6 |
| 7/1/1999 - 6/30/2001 | Y | Y | Y | Y [3] | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | Y | $4.92 | $4.26 | $3.98 | $4.92 | | 6 |
| 7/1/2001 - 6/30/2002 | Y | Y | Y | Y [3] | Y | | AWP - 11% [8] | AWP - 11% [8] | 100% AWP [8] | | Y | $5.12 | $4.44 | $4.14 | $5.12 | | 6 |
| 7/1/2002 - 1/31/2003 | Y | Y | Y | Y [3] | Y | Y [11] | AWP - 14% [4] | AWP - 14%; AWP - 50% [4] | | | Y | $5.20 | $4.51 | $4.20 | $5.20 | | 6 |
| 2/1/2003 - 6/30/2005 | Y | Y | Y | Y [3] | Y | Y [11] | AWP - 14% [4] | AWP - 14%; AWP - 50% [4] | | 5 | Y | $5.20 | $4.51 | $4.20 | $5.20 | $3.25 | 6 |
| 7/1/2005 - Present | Y | Y | Y | Y [3] | Y | Y [11] | AWP - 14% [4] | AWP - 14%; AWP - 50% [4] | | 5 | Y | $5.25 | $4.56 | $4.24 | $5.25 | $3.25 [5] | 6 |

Data provided by Washington Medicaid State Plan Amendments

Data provided by Hautee-Wimpee depositions taken 11/24/08 and 12/2/08, Davis deposition taken 12/3/08, and exhibits; and by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

Data provided by Westlaw Wash. Admin. Code 388-530-7000, 7050, 7250, 7350, 8000, 8050, 8100, and 8150

Data provided by Myra Davis, Manager Pharmacy Rates Unit

Data provided by the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Primary pricing provided by First DataBank drug file; secondary was Redbook for comparisons, special issues, etc. Switched to Medispan on 10/20/2008. (Hautea-Wimpee dep. pp.51,137; Davis dep. pp. 22-24; Ex. 011)

[2] Per Ex. Abbott 578 Sullivan 3/12/08, Jan.-Feb. 1988, pharmacies paid an additional $13.95/hr or $1.16 per 5 min. for compounding time. Per Ex. 011 Hautea-Wimpee, July 1993, pharmacies paid an additional $15.60/hr or $1.30 per 5 min.

[3] Per Hautea-Wimpee Ex. 022 and 11/24/08 dep. pp. 168-169, A-MAC became effective on 11/8/1996. Per TN# 97-04 (and TN #03-019), automated maximum allowable cost (AMAC) pricing shall apply to multi-source drugs which are not on HCFA upper limits or the agency's MAC list but are produced by three or more manufacturers/labelers under the federal drug rebate agreement. AMAC reimbursement for all products within a generic code number sequence shall be at the EAC of the third lowest priced product in that sequence, or the EAC of the lowest priced drug under a federal rebate agreement in that sequence, whichever is higher. AMAC is recalculated each time there are pricing updates to any product in the sequence. (HHD074-0484, DOJ Ex. 026)

[4] Per TN# 02-022 (ATP081-0045) these EAC percentages are effective for dates of service on and after 8/1/02; EAC is AWP- 14% for multisource drugs with four or fewer manufacturers/labelers; AWP- 50% for multisource drugs with five or more manufacturers/labelers and no MAC or FUL; and 100% of certified AWP for infusion, injectable, and inhalation drugs with certified AWPs. (See also Hautea-Wimpee 11/24/08 dep. pp. 406, 78)

[5] Per TN #03-004 and #03-019, for the contracted mail-order delivery service of prescription drugs, the contractor/pharmacy guarantees that the average annual multisource discount, in aggregate for all drugs dispensed will be at least 60% of AWP. An annual reconciliation will be performed and the contractor will pay any shortfall on a dollar-for-dollar basis. EAC percentages for the contractor/pharmacy are: AWP-19% for single source drugs; and AWP-15% for multi-source drugs. (HHD074-0434, HHD074-0440, DOJ Ex. 025, 026). Per Davis dep. pp. 50-51, mail order service ended sometime in 2008 (1/31/2008).

[6] Per Ex. Abbott-WA-002, effective 3/13/1996, each reimbursable ingredient for a compound drug will receive a separate dispensing fee; a separate compounding fee for time will no longer be paid. (See also TN #97-04.)

[7] On 3/13/1996, State implemented HRSA's point-of-sale (POS) system that looks at multiple items to price and pay a claim: group file, plan file, drug file, specific system logic (examples: peak-flow meters and spacers: S-MAC'd drugs or specific product exclusions from AWP-50% pricing). Authorizations and provider files are also part of the information used to process the claims. The POS pays the lesser of the prices posted to the drug file for the drug in question. The drug's manufacturer must have a signed federal rebate agreement in order for the drug to be payable on the system. (There are a very few exceptions to the rebate requirement.) The POS system calculates the system's allowable ingredient cost (units x the lesser of EAC, S-MAC, A-MAC, or FUL) and compares it to the submitted ingredient cost. The lesser of the two is the allowed ingredient cost. Then it adds the allowed ingredient cost plus the dispensing fee and this figure becomes the allowed charge shown on the claim. It then compares the allowed charge to the total claim charge and the lesser amount equals the amount paid on the claim.

[8] Per Hautea-Wimpee dep. p. 77, "lower of" methodology and EAC unchanged from 1991-2002. EAC for Schedule II drugs/Clozaril paid 100% AWP (pp. 114-116)   Special pricing discontinued on 4/01/02.

[9] The State Maximum Allowable Cost (S-MAC) sets a price on multiple source drugs as a result of specific knowledge of available products and pharmacy acquisition costs. S-MAC is a fixed price across an entire Generic Code Number (GCN) that overrides A-MACs.  New or revised S-MACs are published monthly and loaded into the system on a monthly basis. The current S-MAC list has approximately 1200 GCNs on the list.

[10] E-AC is HRSA's estimate of the price providers generally and currently pay for a drug marketed or sold by a particular manufacturer or retailer. It is generally the price paid for single-source or brand-name drugs and is the highest available price on the drug file. When there is specific information informing the estimate of acquisition costs, the State may have a different, lower amount payable on the drug file such as for some clotting factors.

[11] Per Hautea-Wimpee dep. pp. 175-178, 438-440, 534, Certified AWPs (CAWP) were applied for particular products according to instruction. These CAWPs were entered as fixed sums into the "lesser than" payment algorithm.   For systems functionality reasons, the CAWPs were entered into the MAC field but are not MACs and have always been known as certified AWPs.  Also due to functionality reasons in the legacy system, the CAWPs have remained in the payment algorithm. They will be removed in the new POS system coming.

[12] Per Hautea-Wimpee dep., pp. 494-495 and 589-591, clinical staff implemented a demonstration project related to infusion therapies, in which infusion therapy providers were reimbursed on a per diem basis.  The project took place sometime in the mid-1990's and ran only a short time.

State of:   **WEST VIRGINIA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [6] | | SMAC Description | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Usual and Customary | FUL | EAC | DOJ Pricing | SMAC | Brand | Generic | | | Brand | Generic | Compounded Prescriptions |
| 1/1/1991 [1] - 12/31/1995 | Y | Y | Y | | N | 100% AWP | 100% AWP | | Y | $2.75 | $2.75 | Add $1.00 |
| 1/1/1996 [2] - 9/14/2003 | Y | Y | Y | Y [7] | N | AWP - 12% | AWP - 12% | | Y | $3.90 | $3.90 | Add $1.00 [2] |
| 9/15/2003 [3] - 6/30/2005 | Y | Y | Y | Y [7] | Y [3] | AWP - 12% | AWP - 12% | [3] | Y | $3.90 | $3.90 | Add $1.00 [2] |
| 7/1/2005 [4] - Present | Y | Y | Y | Y [7] | Y [3] | AWP - 15% [4, 5] | AWP - 30% [4, 5] | [3] | Y | $2.50 [4] | $5.30 [4] | Add $1.00 [2] |

<span style="color:blue">■</span> Data taken from West Virginia Medicaid State Plan Amendments

<span style="color:green">■</span> Data provided by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

<span style="color:purple">■</span> Data provided by the Bureau for Medical Services

<span style="color:red">■</span> Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Month and day begin date arbitrarily assigned since no State Plan information was available.

[2] 1/1/1996 through 12/31/1997 information obtained from NPC since no State Plan information was available.   Effective 1/1/1998 per TN #97-12  (HHD039-0546),  a fee of $1.00 will be added to the reasonable dispensing fee for the extra compounding time by the pharmacist. Effective 1/1/01 per TN #00-11   (HHD039-0538 thru 0539),  payment for parentally administered drugs will be based upon the EAC of the drug plus a compounding fee determined by the agency to cover the cost of specially prepared admixtures and case management services for drugs requiring parenteral administration.   Per State, the $1.00 fee applies to all compounded drug mixtures with at least one legend ingredient, and not just for parentally administered drugs.

[3] Per TN #03-10 effective 9/15/03, SMAC will be determined using **130% of the lowest WAC** as provided by national drug information suppliers for 3 manufacturers or SMAC based on a mean average of pharmacy provider costs obtained through a survey of a percentage of pharmacy providers that are representative of the overall geographical distribution, service volume, and business structures of all pharmacies serving the WV Medicaid Program. In those instances where less than 3 manufacturers supply products in the marketplace, the following steps are followed (See Attachment 4.19-B, Page 9, 9a and 9b).  Per State, SMAC was not actually implemented until 7/1/2005.

[4] Per State, changes to EAC and DFs included in  TN #05-03 effective 7/1/2005  (HHD039-0567 and HHD039-0471)  did not actually become effective until 4/17/2006.

[5] TN #05-03  (HHD039-0471)  includes a fifth pricing option in the "lower of" methodology: (e) reimbursement will be at the Medicare price or Bureau for Medical Services assigned fee for any drug that has an HCPCS code.

[6] First DataBank has been used for at least the last ten years.

[7] DOJ prices for the originally identified 437 NDC codes (some no longer active) have been used since 1/1/2001.

07/21/2009

State of:   **WISCONSIN**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| Effective Time Period | Legend/Prescription Drugs | | | | | | | | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology | | | | | Estimated Acquisition Cost (EAC) [1] Pay the lower of each formula listed | | | | Traditional | | | |
| | Usual and Customary | FUL | EAC | SMAC | DOJ Pricing | Brand | Generic | Schedule II [3] | | Brand | Generic | Unit Dose | Other |
| 7/1/1990  -  6/30/1997 | Y | Y | Y | Y | | AWP-10%; DP [2] | AWP-10%; DP [2] | 100% AWP | Y | 4.69 [4] | 4.69 [4] | $6.67 | 5, 6, 7 |
| 7/1/1997  -  6/30/1998 | Y | Y | Y | Y | | AWP-10%; DP [2] | AWP-10%; DP [2] | 100% AWP | Y | 4.78 [4] | 4.78 [4] | $6.67 | 5, 6, 7 |
| 7/1/1998  -  3/31/2000 [2] | Y | Y | Y | Y | | AWP-10%; DP [2] | AWP-10%; DP [2] | 100% AWP | Y | $4.88 [4] | $4.88 [4] | $6.94 | 5, 6, 7 |
| 4/1/2000 [2]  -  6/30/2001 | Y | Y | Y | Y | Y [8] | AWP - 10% | AWP - 10% | | Y | $4.88 [4] | $4.88 [4] | $6.94 | 5, 6, 7 |
| 7/1/2001  -  8/14/2003 | Y | Y | Y | Y | Y [8] | AWP - 11.25% | AWP - 11.25% | | Y | $4.88 [4] | $4.88 [4] | $6.94 | 5, 6, 7 |
| 8/15/2003  -  6/30/2004 | Y | Y | Y | Y | Y [8] | AWP - 12% | AWP - 12% | | Y | $4.88 [4] | $4.88 [4] | $6.94 [9] | 5, 6, 7 |
| 7/1/2004  -  11/7/2008 | Y | Y | Y | Y | Y [8] | AWP - 13% | AWP - 13% | | Y [10] | $4.88 [4] | $4.88 [4] | | 5, 6, 7 |
| 11/8/2008  -  Present | Y | Y | Y | Y | Y [8] | AWP - 14% | AWP - 14% | | Y [10] | $3.44 | $3.94 | | |

Data taken from Wisconsin Medicaid State Plan Amendments

Data provided by Vavra depositions taken 8/16/07 and 9/27/07, and documents produced during discovery in  *In Re Pharmaceutical Industry Average Wholesale Price Litigation* , MDL No. 1456

Data provided by on-line BadgerCare Plus and Medicaid Handbook, Medicaid Update August 2003, No. 2003-142, and 2/10/09 email message from Kimberly Smithers to Frank Remington

Data provided by Kimberly Smithers, Medicaid Systems Specialist

Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] Per TN #90-0003 et al., the State uses First DataBank for pricing.   See also Vavra 8/16/07 deposition pp. 208 - 209.

[2] Per TN #90-0003 effective 7/1/1990, EAC for drugs marketed by Bristol-Myers Squibb, Wyeth-Ayerst, Merck Sharp & Dohme, and Upjohn will be at the direct price.   Discontinued on 3/31/2000 per state.
(See also Vavra 8/16/07 deposition pp. 54-56, 125 and 9/27/07 deposition p. 603)

[3] From 1/1/1992 through 03/31/2000, pricing applies to Schedule II drugs that were not on the MAC table.

[4] Maximum of two dispensing fees per month.

[5] Per TN #01-009, effective 07/01/1996, the dispensing fees for pharmaceutical care are dependent upon the pharmaceutical care intervention being performed: $9.45 for 1-5 min.; $14.68 for 6-15 min.; $22.16 for 16-30 min.; $40.11 for 31-60 min.; $40.11 for 60+ min.   Effective 04/01/1998, the time allowance for compound drugs is dependent upon the time it takes the pharmacist to complete the compound:   $9.45 for 0-5 min.; $14.68 for 6-15 min.; $22.16 for 16-30 min.; $22.16 for 31-60 min.; $22.16 for 60+ min.   Compound drugs prior to 1998 were priced manually by pharmacy consultants. With the implementation of the point-of-sale system in 1998, compound drugs could have been priced manually or using the pricing methodologies previously documented.   (See also HHD075-0421.)

[6] Per TN #01-009, effective 07/01/95, per prescription drug payment reduction of $0.50 per prescription dispensed.   (See also HHD075-0421 and Vavra 8/16/07 deposition p. 123.)

[7] Per TN #01-009, effective 4/1/1997, dispensing allowance for re-packaging of $0.015/unit.   (See also HHD075-0421.)

[8] DOJ pricing went into effect for specific drugs beginning on 05/01/2000. Effective 8/1/2000, WI Medicaid set a MAC price for IV materials higher than the DOJ prices.   Pricing remains in effect through the

[9] Reimbursement for unit dose dispensing fee was discontinued on 9/1/2003.   (See also Vavra 8/16/07 deposition pp. 136-137)

[10] BMN current policy per Vavra 9/27/07 deposition p. 562.

State of:   **WYOMING**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Prescription/Legend Drugs | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement Methodology Pay the lower of each formula listed | | | | Estimated Acquisition Cost (EAC) [4] | | SMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | |
| **Effective Time Period** | Usual and Customary | FUL | EAC [4] | SMAC | Brand | Generic | | | Retail | Nursing Home |
| 1/1/1991  -  6/30/2001 | Y | Y | Y | N | AWP - 4% [1] | AWP - 4% [1] | | Y | $4.70 [1] | $4.70 [1] |
| 7/1/2001  -  Present [6] | Y | Y | Y | Y [2] | AWP - 11% [5] | AWP - 11% [5] | | Y | $5.00 [3, 5] | $5.00 [3, 5] |

  Data taken from Wyoming Medicaid State Plan Amendments

<span style="color:green">████</span>  Data provided by depositions taken 12/2/08 and 12/3/08 by Homar and 12/3/08 by Jones, exhibits, and by documents produced during discovery in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456

<span style="color:red">████</span>  Data taken from the Pharmaceutical Benefits Survey published by the National Pharmaceutical Council

[1] TN #91-09  (HHD038-0840 and 0841)  reports the EAC as AWP-11% and the dispensing fee as $4.70 + .07(AWP).  Per Homar deposition 12-2-08, pp. 343 and 265, neither was implemented, and the State used AWP - 4% plus $4.70 instead.

[2] Per Homar 12/2/08 deposition pp.194 and 219, Wyoming implemented a limited SMAC program beginning in 2001. The program was expanded beginning in 2002.

[3] TN #01-004  (HHD038-0827)  includes general language only with both the specific EAC formula and dispensing fee amount for legend drugs removed.  The $5.00 dispensing fee amount (but not the EAC) is then formally re-added to the State Plan through TN #02-002 effective 4/1/2002  (HHD038-0874).

[4] TN #01-004  (HHD038-0827) reports use of First DataBank for pricing  (see also 12/3/2008 deposition p. 315.)

[5] Pricing methodology confirmed in Roxane, WY, Exhibit 18, Final Rule dated January 24, 2002.

[6] Present pricing confirmed in Jones deposition pp. 48-49.

07/21/09