# Exhibit 24
# Part C

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Amended Exhibit 24 to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

**Attachment 3**

Supporting Documentation Relied Upon by Myers and Stauffer

For the State of North Carolina

# DOJ Pharmacy Reimbursement Project

# North Carolina

## July 2009

Summary

State of: **NORTH CAROLINA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

**Legend/Prescription Drugs**

**"Lower of" Reimbursement Methodology**

| Effective Time Period | Usual and Customary | FUL | EAC [4] | Lowest Charge to Other 3rd Party | SMAC | Estimated Acquisition Cost (EAC) [3] Brand | Estimated Acquisition Cost (EAC) [3] Generic | SMAC Methodology | Physician Override (DAW, Brand Medically) | Dispensing Fee [1] Brand | Dispensing Fee [1] Generic | Compound Drugs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/1989 - 12/31/1991 | Y | Y | Y | Y [7] | N | AWP - 10% [6] | AWP - 10% [6] | | Y | $4.85 | $4.85 | |
| 1/1/1992 - 6/30/1992 | Y | Y | Y | Y [7] | N | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 7/1/1992 - 11/30/2001 | Y | Y | Y | | N | AWP - 10% | AWP - 10% | | Y | $5.60 | $5.60 | |
| 12/1/2001 - Present | Y | Y | Y | | Y | AWP - 10% | AWP - 10% | [2] | Y | $4.00 | $5.60 | [5] |



- Data taken from North Carolina Medicaid State Plan Amendments
- Data provided by Weeks 10/21/08 deposition and exhibits
- Data provided by Lisa Weeks, Pharmacy Policy Supervisor

[1] Per TN #89-09 et al. (Ex. 11, 12), the dispensing fee is paid to all providers for the initial dispensing.  Refills within the same month are not paid a dispensing fee.

[2] SMAC methodology - reimbursement is based on 150 percent of the lowest priced generic.  In cases where 150 percent results in a price less than the cost of the second-lowest generic product, at least an additional 10 percent margin is added to the cost of the second-lowest drug to establish the MAC price. (Deposition pp. 45-46, 49) For established generic drugs with only one supplier, the MAC price is established between the actual acquisition cost and the average wholesale price of the generic drug.  A minimum reimbursement of 20 percent above actual acquisition is guaranteed for these drugs.  In most cases, MAC pricing is substantially higher than the 20 percent. (Deposition pp. 95, 263-265, Ex. 13)

[3] Per TN #92-05 et al., the state uses First DataBank for pricing  (Ex. 12). (See also deposition pp. 43-44, 91-92)

[4] Per TN #89-09 et al., EAC is referred to as NCEAC or North Carolina Estimated Acquisition Cost.  (See also deposition pp. 86-87)

[5] Compound drugs have been treated like generics regarding dispensing fee ($5.60) since the 2001 reduction in the brand dispensing fee to $4.00. If these drugs come through pharmacy point-of-sale, then they are reimbursed as other drugs.

[6] Per deposition pp. 41-43, AWP - 10% was implemented in the early 1990's.  Prior to that, EAC was set at 100% AWP.

[7] Per deposition pp. 82-85, state had no way to enforce lowest charge to other 3rd party, therefore it was removed from the State Plan (pp. 89-90).

10/1/1989 – 12/31/1991

#91-5 *replace this page*

Attachment 4.19-B
Section 12, Page 1a

MEDICAL ASSISTANCE
State NORTH CAROLINA

PAYMENTS FOR MEDICAL AND REMEDIAL CARE AND SERVICE

1. **Other Drugs** -

    Reimbursement for covered drugs other than the multiple-source *lower of drugs with HCFA upper limits shall not exceed the lower of:

    (i) The North Carolina estimated acquisition cost (NCEAC) for the drug plus a reasonable dispensing fee; or

    (ii) The provider's lowest charge to other third party payors; or

    (iii) The provider's usual and customary charge to the general public for the drug.

2. **North Carolina Estimated Acquisition Cost (NCEAC)** *FN#4

    NCEAC is defined as the reasonable and best estimate of the price paid by providers for a drug as obtained from a manufacturer or * other legal distributor. As determined by the Division the $EAC =$ reasonable and best estimate is based on the average wholesale price (AWP) less 10 percent. For the AWP information the $AWP - 10\%$ Division uses the Red Book, manufacturer's price list, or other nationally published sources. Telephone contact with manufacturer or distributors may be utilized when a published source is not available.

3. **Dispensing Fees**

    Dispensing fees are determined on the basis of surveys that are conducted periodically by Division of Medical Assistance (DMA) or other recognized sources and takes into account various pharmacy operational costs, such as salary, overhead, etc. Between surveys the dispensing fee may be adjusted based upon various factors, i.e., Consumer Price Index (CPI). The Division reviews the fees of other states and other information } *FN#/ (i.e., National Pharmacy Surveys). The dispensing fee is paid to all providers for the initial dispensing. Refills within the same month are not paid a dispensing fee. The dispensing * DF fee is $4.85.

TN No. 92-09
Supersedes
TN No. NEW

Approval Date SEP 18 1990

Eff. Date 10/1/92

faxed to LW 1/17/08

HHD137-0248

Weeks Ex. 11

Attachment 4.19-B
Section 12, Page 1

MEDICAL ASSISTANCE
State <u>NORTH CAROLINA</u>

PAYMENTS FOR MEDICAL AND REMEDIAL CARE AND SERVICE

---

12. Prescribed drugs, dentures, and prosthetic devices; and eye-glasses prescribed by a physician skilled in diseases of the eye or by an optometrist.

   a. Prescribed drugs. ✱

   Drugs will be reimbursed at the lowest of: the estimated acquisition cost as described below plus a reasonable dispensing fee; the provider's lowest charge to other third party payors; or, the provider's charge to the general public. A dispensing fee will not be paid for prescriptions refilled in the same month, whether it is the same drug or generic equivalent drug. *[handwritten: lowest charge]* *[FN#1]*

   <u>Multiple Source Drugs</u> – North Carolina has implemented the list of drugs and their prices as published by the Health Care Financing Administration. All drugs on this list are reimbursed at limits set by HCFA unless the physician writes in his own handwriting on the face of the prescription "brand necessary, dispense as written," or words of similar meaning. *[handwritten: FUL]* *[handwritten: ✱ BMN]*

*[handwritten: Replaced by 01-25]*

TN No. <u>89-09</u>
Supersedes
TN No. <u>87-19</u>     Approval Date  SEP 18 1990     Eff. Date <u>10/1/90</u>

*[handwritten: dpt 2/14/01]*

**86**

1  limit prior, earlier today?
2     A. Yes.
3     Q. The paragraph that you just read refers
4  to the estimated acquisition cost as described
5  below.
6        Do you see that there?
7     A. Yes.
8     Q. Does the state plan define the
9  estimated acquisition cost below, as that
10 paragraph says that it does?
11    A. No, not in that next section.
12    Q. Does it describe the estimated
13 acquisition cost as part of the plan?
14    A. It does as part of the plan.
15    Q. And where does it describe it? What
16 paragraph?
17    A. In another paragraph under North
18 Carolina estimated acquisition cost.
19    Q. And could you read that out loud,
20 please?
21    A. Yes. NCEAC --
22    Q. What does that stand for, I'm sorry?

**87**

1     A. North Carolina Estimated Acquisition
2  Cost.
3     Q. Thank you.
4     A. Is defined as the reasonable and best
5  estimate of the price paid by providers for a
6  drug, as obtained from a manufacturer or other
7  legal distributor. As determined by the
8  division, the reasonable and best estimate is
9  based on the average wholesale price, (AWP) less
10 ten percent. For the AWP information, the
11 division uses the Red Book manufacturer's price
12 list or other nationally published sources.
13 Telephone contact with manufacturer or
14 distributors may be utilized when a published
15 source is not available.
16    Q. Thank you. Is that the estimated
17 acquisition cost as described below that was
18 referred to on the prior page?
19    A. Yes.
20    Q. And the last line of that paragraph
21 that begins with telephone contact, did North
22 Carolina contact manufacturers or distributors

**88**

1  when a public source was not available?
2     A. I believe on occasion but very rarely.
3     Q. And by very rarely, how often per year
4  do you mean?
5     A. Would only be for manual claims that we
6  didn't have the AWP available. And I don't have
7  an exact number, but it's very rare.
8     Q. Very rare that you contacted them, or
9  very rare that you did not have the AWP
10 available?
11    A. Both.
12    Q. And if you look at the prior paragraph,
13 No. 1, other drugs, would you take a minute to
14 look that over, please?
15    A. Yes.
16       (Pause.)
17    A. Okay.
18    Q. Does this reflect the reimbursement
19 logic that you set forth at the earlier part of
20 the deposition as far as the formula?
21    A. It's similar.
22    Q. And why don't you explain that to me?

**89**

1     A. Over time it's changed somewhat, but
2  it's similar in that North Carolina uses the
3  lesser of logic. We will pay the estimated
4  acquisition cost or the providers -- or the
5  provider's usual and customary. We no longer
6  have the lowest charge to other third-party
7  payors in our state plan.
8     Q. And again, what is the date of the
9  state plan that we are reviewing right now?
10    A. 10-1-89.
11       MS. YAVELBERG: I'd like to mark this
12 next document as Plaintiff's Exhibit 12.
13       (The document referred to was
14 marked Plaintiff's Exhibit Weeks 012 for
15 identification.)
16    Q. Ms. Weeks, do you recognize this
17 document?
18    A. Yes.
19    Q. And what is it?
20    A. It's another North Carolina State plan.
21    Q. And what is this one dated?
22    A. July 1, 1992.

**38**

1  A. It's approved by the Medicaid director,
2  it's approved by the secretary of health and
3  human services before it goes to CMS.
4  Q. Where is it submitted?
5  A. Where?
6  Q. Where is it formally submitted?
7  A. From the secretary's office.
8  Q. And to whom is it submitted?
9  A. CMS.
10  Q. And what is CMS?
11  A. Centers for Medicare and Medicaid
12  Services.
13  Q. Is that a state organization?
14  A. That's a federal organization.
15  Q. And what is the relationship between
16  that federal organization and the North Carolina
17  Medicaid program?
18  A. The North Carolina Medicaid program
19  obtains the federal funding from there, for the
20  Medicaid program.
21  Q. The federal share?
22  A. The federal share, right.

**39**

1  Q. Does the state maintain copies of the
2  plans that it submits?
3  A. Yes.
4  Q. I believe earlier you referred to the
5  federal upper limit. Do you remember that?
6  A. Yes.
7  Q. What do you mean by federal upper
8  limit? What does that stand for?
9  A. The federal upper limit is a maximum
10  cost set on certain generic drugs by CMS.
11  Q. And where is the federal upper limit?
12  Where is that term defined or referenced from?
13  A. I don't understand the question.
14  Q. Is it a state term? Is the federal
15  upper limit something that the state has anything
16  to do with?
17  A. No, it's the federal upper limit.
18  Q. Let me refer you to Exhibit 2, which is
19  this regulation here, Section 447.301 and .331
20  and .332. If you flip to the backside, Section
21  447.332, do you see that there, upper limits for
22  multiple source drugs?

**40**

1  A. Yes.
2  Q. Is that the federal upper limit that
3  you're referring to?
4  A. Yes.
5  Q. And when you said, I'm sorry, if you
6  could clarify this. The federal upper limit
7  applies to all drugs or only certain types of
8  drugs?
9  A. Only certain generics.
10  Q. And remind me again, I think earlier
11  you stated that the state's formula involved, you
12  said average wholesale price minus ten percent,
13  the federal upper limit, the state maximum
14  allowable costs?
15  A. Yes.
16  Q. And usual and customary?
17  A. Right.
18  Q. I'd like to go through each of those,
19  to get a better understanding of what all those
20  terms are, okay?
21  A. Okay.
22  Q. So the federal upper limit, I think

**41**

1  you've testified that it's a federal determined
2  amount, determined limit on payment?
3  A. Yes.
4  Q. And the state does not set that amount,
5  is that correct?
6  A. That's correct.
7  Q. Next, let's talk about estimated
8  acquisition costs, which is referred to in that
9  regulation a little bit earlier.
10     Does North Carolina itself define
11  estimated acquisition cost?
12  A. North Carolina has defined it for North
13  Carolina.
14  Q. And where has North Carolina written
15  the definition for estimated acquisition cost?
16  A. In the state plan.
17  Q. And what does EAC, is that a common
18  abbreviation for estimated acquisition cost? If
19  I call it EAC, is that something that you will
20  understand?
21  A. Yes.
22  Q. And how does the State of North

*FN #6 (pp. 41-43)

**42**

1  Carolina define EAC or estimated acquisition
2  costs?
3       A.  **The state defines that as AWP minus ten**
4  **percent.**
5       Q.  And in what year did the state define
6  estimated acquisition cost of AWP minus ten
7  percent?
8           MR. KATZ:  Objection, form.
9       A.  **Early '90s, I think 1990.**
10      Q.  And prior to that time, what was the
11  definition of estimated acquisition cost?
12      A.  **AWP, I believe.**
13      Q.  And was that the first time that North
14  Carolina has defined estimated acquisition cost?
15      A.  **I'm sorry, I don't understand what you**
16  **just asked.**
17      Q.  The AWP minus ten percent was I think
18  you said roughly in 1990?
19          MR. KATZ:  Objection to form.
20      A.  **Yes.**
21      Q.  And prior to that time, North Carolina
22  had defined estimated acquisition cost as AWP?

**43**

1       A.  **Um-hum.**
2           MR. KATZ:  Objection to form.
3       Q.  Do you mean AWP with no discount?
4       A.  **Yes.**
5       Q.  And what does AWP stand for?
6       A.  **Average wholesale price.**
7       Q.  And prior to 1990, when the state first
8  proposed AWP with no discount, was that
9  definition with estimated acquisition cost used?
10          MR. KATZ:  Objection to form.
11      A.  **No, I believe that, if I remember, CMS**
12  **would not approve the state plan without a**
13  **discount.**
14      Q.  A discount to what?
15      A.  **To AWP.**
16      Q.  Where does North Carolina get its AWPs?
17      A.  **From First Data Bank.**
18      Q.  And why would North Carolina use First
19  Data Bank to get average wholesale price
20  information?
21      A.  **Because they provided a file that we**
22  **can use in our claims processing that has that**

**44**

1  information.
2       Q.  Does North Carolina have any other
3  source available for average wholesale prices?
4       A.  **No.**
5           MR. KATZ:  Objection, form.
6       Q.  Why did North Carolina choose average
7  wholesale price minus ten percent as its
8  estimated acquisition cost?
9           MR. KATZ:  Objection, form.
10      A.  **It was the state's best estimate of the**
11  **cost of drugs.**
12      Q.  Why wouldn't the state use actual
13  acquisition cost on every claim that was
14  submitted?
15      A.  **Because we don't have that available.**
16      Q.  What if the pharmacies provided it on
17  every claim that they submitted to the state?
18      A.  **We're not -- our processes would not**
19  **accommodate that.**
20      Q.  Why not?
21      A.  **Because of the volume of claims we**
22  **process.**

**45**

1       Q.  You talked about another component of
2  the formula, the state maximum allowable cost?
3       A.  **Yes.**
4       Q.  Could you describe what that means?
5       A.  **It's a state specific limit on generic**
6  **drugs that have more than two generics available.**
7       Q.  And how does a state maximum allowable
8  cost affect the reimbursement formula?
9           MR. KATZ:  Objection to form.
10      A.  **It's one of the reference prices that**
11  **we use when we process a claim.**
12      Q.  And if you could clarify the formula.
13  You mentioned the various components of the
14  formula.  How do they -- how does the claims
15  processing know which basis to pay a claim?
16      A.  **The claims processing systems selects**
17  **the lower or the lowest of the previously**
18  **mentioned pricing methodology, AWP minus ten**
19  **percent, the federal upper limit, the state**
20  **maximum allowable cost list or usual and**
21  **customary.**
22      Q.  Does the state maximum allowable costs

NC Department of Health and Human Services (Lisa Weeks)                           October 21, 2008
# Raleigh, NC

22 (Pages 82 to 85)

### 82

1   A. Yes.
2   Q. And if you look at the second sentence:
3   We have implemented a policy of not allowing
4   providers to bill more for Medicaid prescriptions
5   than they are receiving from the lowest third-
6   party plan.
7   Do you see that there?
8   A. Yes.
9   Q. Did the state implement that provision?
10  A. Not that I'm aware of.
11  Q. And why not?
12  A. I don't think it was possible to
13  implement.
14  Q. Why not?
15  A. Because I don't think the state had
16  access to the lowest third-party plan costs.
17  Q. So it is -- but it is part of the
18  proposed reimbursement policy, correct?
19  A. Yes.
20  Q. And the state's reimbursement
21  methodology was consistent with the state plan,
22  or inconsistent?

### 83

1   A. It was consistent.
2   Q. Did it exercise this option of not
3   allowing providers to bill more for Medicaid
4   prescriptions than are receiving, than they are
5   receiving from the lowest third-party plan?
6   A. I believe that it was stated that that
7   would be good if that were possible, but I don't
8   think the state was able to enforce it.
9   Q. And why not?
10  A. Because I don't believe the state had
11  access to the costs associated with other third-
12  party plans.
13  MS. YAVELBERG: I'd like to mark this
14  next document as Plaintiff's Exhibit 11.
15  (The document referred to was
16  marked Plaintiff's Exhibit Weeks 011 for
17  identification.)
18  Q. It's two pages. I've handed you
19  Exhibit 11, Ms. Weeks. Do you have that there?
20  A. Yes.
21  Q. It's a two-page document.
22  Do you recognize this document?

### 84

1   A. Yes.
2   Q. What is it?
3   A. Again, it's North Carolina State plan
4   sections regarding drug reimbursement.
5   Q. And there's some handwriting on this
6   and also some markings on it. Did you make those
7   markings?
8   A. No.
9   Q. Were they -- they were on the document
10  as handed to you, correct?
11  A. Yes.
12  Q. Had you made the markings at any time
13  prior to today's deposition?
14  A. No.
15  Q. If you'll look at the first page, which
16  is dated 10-1-1990, do you see that there on the
17  bottom right-hand corner?
18  A. Yes.
19  Q. And if you look at Section 12A
20  prescribed drugs, will you read that out loud,
21  please?
22  A. Yes. Drugs will be reimbursed at the

### 85

1   lowest of the estimated acquisition cost, as
2   described below, plus a reasonable dispensing
3   fee, the provider's lowest charge to other third-
4   party payors or the provider's charge to the
5   general public. A dispensing fee will not be
6   paid for prescriptions refilled in the same way,
7   whether it is the same drug or generic equivalent
8   drug.
9   Q. And the next paragraph refers to
10  multiple source drugs. Do you see that there?
11  A. Yes.
12  Q. And it says: North Carolina has
13  implemented a list of drugs and the prices, as
14  published by the Health Care Finance
15  Administration.
16  Do you see that?
17  A. Yes.
18  Q. Is that the same list published by the
19  Health Care Finance Administration that we
20  referred to in the prior state plan?
21  A. Yes.
22  Q. And as we refer to as the federal upper

*handwritten margin note:* * FN #7 Re: Lowest charge to Other 3rd Party

**Page 86**

1  limit prior, earlier today?
2      A. Yes.
3      Q. The paragraph that you just read refers
4  to the estimated acquisition cost as described
5  below.
6           Do you see that there?
7      A. Yes.
8      Q. Does the state plan define the
9  estimated acquisition cost below, as that
10 paragraph says that it does?
11     A. No, not in that next section.
12     Q. Does it describe the estimated
13 acquisition cost as part of the plan?
14     A. It does as part of the plan.
15     Q. And where does it describe it? What
16 paragraph?
17     A. In another paragraph under North
18 Carolina estimated acquisition cost.
19     Q. And could you read that out loud,
20 please?
21     A. Yes. NCEAC --
22     Q. What does that stand for, I'm sorry?

**Page 87**

1      A. North Carolina Estimated Acquisition
2  Cost.
3      Q. Thank you.
4      A. Is defined as the reasonable and best
5  estimate of the price paid by providers for a
6  drug, as obtained from a manufacturer or other
7  legal distributor. As determined by the
8  division, the reasonable and best estimate is
9  based on the average wholesale price, (AWP) less
10 ten percent. For the AWP information, the
11 division uses the Red Book manufacturer's price
12 list or other nationally published sources.
13 Telephone contact with manufacturer or
14 distributors may be utilized when a published
15 source is not available.
16     Q. Thank you. Is that the estimated
17 acquisition cost as described below that was
18 referred to on the prior page?
19     A. Yes.
20     Q. And the last line of that paragraph
21 that begins with telephone contact, did North
22 Carolina contact manufacturers or distributors

**Page 88**

1  when a public source was not available?
2      A. I believe on occasion but very rarely.
3      Q. And by very rarely, how often per year
4  do you mean?
5      A. Would only be for manual claims that we
6  didn't have the AWP available. And I don't have
7  an exact number, but it's very rare.
8      Q. Very rare that you contacted them, or
9  very rare that you did not have the AWP
10 available?
11     A. Both.
12     Q. And if you look at the prior paragraph,
13 No. 1, other drugs, would you take a minute to
14 look that over, please?
15     A. Yes.
16          (Pause.)
17     A. Okay.
18     Q. Does this reflect the reimbursement
19 logic that you set forth at the earlier part of
20 the deposition as far as the formula?
21     A. It's similar.
22     Q. And why don't you explain that to me?

**Page 89**

1      A. Over time it's changed somewhat, but
2  it's similar in that North Carolina uses the
3  lesser of logic. We will pay the estimated
4  acquisition cost or the providers -- or the
5  provider's usual and customary. We no longer
6  have the lowest charge to other third-party
7  payors in our state plan.
8      Q. And again, what is the date of the
9  state plan that we are reviewing right now?
10     A. 10-1-89.
11         MS. YAVELBERG: I'd like to mark this
12 next document as Plaintiff's Exhibit 12.
13         (The document referred to was
14 marked Plaintiff's Exhibit Weeks 012 for
15 identification.)
16     Q. Ms. Weeks, do you recognize this
17 document?
18     A. Yes.
19     Q. And what is it?
20     A. It's another North Carolina State plan.
21     Q. And what is this one dated?
22     A. July 1, 1992.

*[Handwritten margin note: * FN #7 Re: lowest charge to other 3rd party (pp. 88-90)]*

NC Department of Health and Human Services (Lisa Weeks)   October 21, 2008

Raleigh, NC

24 (Pages 90 to 93)

**Page 90**

1  Q. I'd like you to -- and what section of
2  the state plan is it?
3  A. It is regarding reimbursement of drugs.
4  Q. And if you look at that first section,
5  No. 1, other drugs, and you look at that
6  reimbursement formula there?
7  A. Yes.
8  Q. I think you were just discussing that
9  the lowest third-party plan portion of the
10  reimbursement formula was omitted at a certain
11  time, is that correct?
12  A. Yes.
13  Q. And this 1992 plan does not include
14  that language, correct?
15  A. That's correct.
16  Q. Okay. Does this plan reflect the 1992
17  North Carolina reimbursement formula for drugs?
18  A. Yes.
19  Q. And what was the formula as set forth
20  in the state plan?
21  A. Okay. The North Carolina estimated
22  acquisition cost, okay, I'm sorry, I don't

**Page 91**

1  understand the question.
2  Q. What was the reimbursement formula, as
3  set forth in the state plan in 1992?
4  A. Okay. The state reimbursed based on
5  AWP minus ten percent or the provider's usual and
6  customary charge to the general public at the
7  lower of either of those.
8  Q. And did North Carolina define estimated
9  acquisition cost in the state plan?
10  A. Yes.
11  Q. And where did it do so?
12  A. It does so in this section two, North
13  Carolina estimated acquisition cost. It defines
14  it as AWP less ten percent.
15  Q. And does the state plan say where North
16  Carolina obtained information about average
17  wholesale price?
18  A. Yes.
19  Q. And where is that from? Where does it
20  say it obtained the information?
21  A. It says it obtained it from using the
22  First Data Bank price update service,

**Page 92**

1  manufacturer's price list or other nationally
2  published sources, telephone contact with
3  manufacturer distributors may be utilized when a
4  published source is not available.
5  Q. Did North Carolina in fact obtain AWP
6  information from the First Data Bank price update
7  service, manufacturer's list price or other
8  nationally published sources?
9  A. Yes.
10  Q. And this document is dated 1992,
11  correct?
12  A. Yes.
13  Q. From 1992 to the present, did North
14  Carolina obtain its AWP information from the
15  First Data Bank price update service,
16  manufacturer's price list or other nationally
17  published sources?
18  A. Yes.
19  MS. YAVELBERG: I'd like to mark this
20  next document as Exhibit 13.
21  (The document referred to was
22  marked Plaintiff's Exhibit Weeks 013 for

**Page 93**

1  identification.)
2  MS. YAVELBERG: It's three pages.
3  Q. Ms. Weeks, if you can take a minute to
4  look the document over.
5  (Pause.)
6  Q. And do you recognize this document?
7  A. Yes.
8  Q. What is it?
9  A. It is, again North Carolina state plan
10  section for drug reimbursement.
11  Q. And the first page of the document that
12  I've handed you.
13  A. Yes.
14  Q. What is this document? What is this
15  page?
16  A. It looks like the page where the state
17  plan was transmitted to CMS.
18  Q. Is it a specific form?
19  A. Yes.
20  Q. And what is the form?
21  A. It says transmittal and notice of
22  approval of state plan material.