# Exhibit 24
# Part D

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Amended Exhibit 24 to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

1/1/1992 – 6/30/1992

Attachment 4.19-B
Section 12, Page 1a

MEDICAL ASSISTANCE
State: NORTH CAROLINA

PAYMENTS FOR MEDICAL AND REMEDIAL CARE AND SERVICE

1. Other Drugs

   Reimbursement for covered drugs other than the multiple-source drugs with HCFA upper limits shall not exceed the lower of:  *lower of*

   (i) The North Carolina estimated acquisition cost (NCEAC) for the drug plus a reasonable dispensing fee; or
   (ii) The provider's lowest charge to other third party payors; or
   (iii) The provider's usual and customary charge to the general public for the drug.

2. North Carolina Estimated Acquisition Cost (NCEAC)

   NCEAC is defined as the reasonable and best estimate of the price paid by providers for a drug as obtained from a manufacturer or other legal distributor. As determined by the Division the reasonable and best estimate is based on the average wholesale price (AWP) less 10 percent. For the AWP information the Division uses the First Databank Price Update Service, manufacturer's price list, or other nationally published sources. Telephone contact with manufacturer or distributors may be utilized when a published source is not available.

   $EAC = AWP - 10\%$
   FDB

3. Dispensing Fees

   Dispensing fees are determined on the basis of surveys that are conducted periodically by Division of Medical Assistance (DMA) or other recognized sources and takes into account various pharmacy operational costs, such as salary, overhead, etc. Between surveys the dispensing fee may be adjusted based upon various factors, i.e., Consumer Price Index (CPI). The Division reviews the fees of other states and other information (i.e., National Pharmacy Surveys). The dispensing fee is paid to all providers for the initial dispensing. Refills within the same month are not paid a dispensing fee. The dispensing fee is $5.60.

   *FN#1
   *change to DF*

*Superseded by 92-24*

TN No. 92-05
Supersedes
TN No. 89-09  Approval Date  4/27/92    Eff. Date 1/1/92

HHD137-0247

**42**

1  Carolina define EAC or estimated acquisition
2  costs?
3     A. The state defines that as AWP minus ten
4  percent.
5     Q. And in what year did the state define
6  estimated acquisition cost of AWP minus ten
7  percent?
8        MR. KATZ: Objection, form.
9     A. Early '90s, I think 1990.
10    Q. And prior to that time, what was the
11 definition of estimated acquisition cost?
12    A. AWP, I believe.
13    Q. And was that the first time that North
14 Carolina has defined estimated acquisition cost?
15    A. I'm sorry, I don't understand what you
16 just asked.
17    Q. The AWP minus ten percent was I think
18 you said roughly in 1990?
19       MR. KATZ: Objection to form.
20    A. Yes.
21    Q. And prior to that time, North Carolina
22 had defined estimated acquisition cost as AWP?

**43**

1     A. Um-hum.
2        MR. KATZ: Objection to form.
3     Q. Do you mean AWP with no discount?
4     A. Yes.
5     Q. And what does AWP stand for?
6     A. Average wholesale price.
7     Q. And prior to 1990, when the state first
8  proposed AWP with no discount, was that
9  definition with estimated acquisition cost used?
10       MR. KATZ: Objection to form.
11    A. No, I believe that, if I remember, CMS
12 would not approve the state plan without a
13 discount.
14    Q. A discount to what?
15    A. To AWP.
16    Q. Where does North Carolina get its AWPs?
17    A. From First Data Bank.
18    Q. And why would North Carolina use First
19 Data Bank to get average wholesale price
20 information?
21    A. Because they provided a file that we
22 can use in our claims processing that has that

**44**

1  information.
2     Q. Does North Carolina have any other
3  source available for average wholesale prices?
4     A. No.
5        MR. KATZ: Objection, form.
6     Q. Why did North Carolina choose average
7  wholesale price minus ten percent as its
8  estimated acquisition cost?
9        MR. KATZ: Objection, form.
10    A. It was the state's best estimate of the
11 cost of drugs.
12    Q. Why wouldn't the state use actual
13 acquisition cost on every claim that was
14 submitted?
15    A. Because we don't have that available.
16    Q. What if the pharmacies provided it on
17 every claim that they submitted to the state?
18    A. We're not -- our processes would not
19 accommodate that.
20    Q. Why not?
21    A. Because of the volume of claims we
22 process.

**45**

1     Q. You talked about another component of
2  the formula, the state maximum allowable cost?
3     A. Yes.
4     Q. Could you describe what that means?
5     A. It's a state specific limit on generic
6  drugs that have more than two generics available.
7     Q. And how does a state maximum allowable
8  cost affect the reimbursement formula?
9        MR. KATZ: Objection to form.
10    A. It's one of the reference prices that
11 we use when we process a claim.
12    Q. And if you could clarify the formula.
13 You mentioned the various components of the
14 formula. How do they -- how does the claims
15 processing know which basis to pay a claim?
16    A. The claims processing systems selects
17 the lower or the lowest of the previously
18 mentioned pricing methodology, AWP minus ten
19 percent, the federal upper limit, the state
20 maximum allowable cost list or usual and
21 customary.
22    Q. Does the state maximum allowable costs

*FN#3 re: FDB (pp. 43; 91-92)*

**90**

1  Q. I'd like you to -- and what section of
2  the state plan is it?
3  A. It is regarding reimbursement of drugs.
4  Q. And if you look at that first section,
5  No. 1, other drugs, and you look at that
6  reimbursement formula there?
7  A. Yes.
8  Q. I think you were just discussing that
9  the lowest third-party plan portion of the
10 reimbursement formula was omitted at a certain
11 time, is that correct?
12 A. Yes.
13 Q. And this 1992 plan does not include
14 that language, correct?
15 A. That's correct.
16 Q. Okay. Does this plan reflect the 1992
17 North Carolina reimbursement formula for drugs?
18 A. Yes.
19 Q. And what was the formula as set forth
20 in the state plan?
21 A. Okay. The North Carolina estimated
22 acquisition cost, okay, I'm sorry, I don't

**91**

1  understand the question.
2  Q. What was the reimbursement formula, as
3  set forth in the state plan in 1992?
4  A. Okay. The state reimbursed based on
5  AWP minus ten percent or the provider's usual and
6  customary charge to the general public at the
7  lower of either of those.
8  Q. And did North Carolina define estimated
9  acquisition cost in the state plan?
10 A. Yes.
11 Q. And where did it do so?
12 A. It does so in this section two, North
13 Carolina estimated acquisition cost. It defines
14 it as AWP less ten percent.
15 Q. And does the state plan say where North
16 Carolina obtained information about average
17 wholesale price?
18 A. Yes.
19 Q. And where is that from? Where does it
20 say it obtained the information?
21 A. It says it obtained it from using the
22 First Data Bank price update service,

**92**

1  manufacturer's price list or other nationally
2  published sources, telephone contact with
3  manufacturer distributors may be utilized when a
4  published source is not available.
5  Q. Did North Carolina in fact obtain AWP
6  information from the First Data Bank price update
7  service, manufacturer's list price or other
8  nationally published sources?
9  A. Yes.
10 Q. And this document is dated 1992,
11 correct?
12 A. Yes.
13 Q. From 1992 to the present, did North
14 Carolina obtain its AWP information from the
15 First Data Bank price update service,
16 manufacturer's price list or other nationally
17 published sources?
18 A. Yes.
19    MS. YAVELBERG: I'd like to mark this
20 next document as Exhibit 13.
21    (The document referred to was
22 marked Plaintiff's Exhibit Weeks 013 for

**93**

1  identification.)
2     MS. YAVELBERG: It's three pages.
3  Q. Ms. Weeks, if you can take a minute to
4  look the document over.
5     (Pause.)
6  Q. And do you recognize this document?
7  A. Yes.
8  Q. What is it?
9  A. It is, again North Carolina state plan
10 section for drug reimbursement.
11 Q. And the first page of the document that
12 I've handed you.
13 A. Yes.
14 Q. What is this document? What is this
15 page?
16 A. It looks like the page where the state
17 plan was transmitted to CMS.
18 Q. Is it a specific form?
19 A. Yes.
20 Q. And what is the form?
21 A. It says transmittal and notice of
22 approval of state plan material.

7/1/1992 – 11/30/2001