# Exhibit 24
# Part F

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Amended Exhibit 24 to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for
Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary
Judgment

**Attachment 4**

Supporting Documentation Relied Upon by Myers and Stauffer

For the State of Louisiana

# DOJ Pharmacy Reimbursement Project

# Louisiana

## July 2009

Summary

**State of:** **LOUISIANA**

**Medicaid Pharmacy Reimbursement Methodology Summary**

| | Legend/Prescription Drugs | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | "Lower of" Reimbursement for Brand Drugs | | "Lower of" Reimbursement for Generic Drugs | | | | Estimated Acquisition Cost (EAC) [5] | | | | | |
| **Effective Time Period** | Usual and Customary | EAC | Usual and Customary | FUL | EAC | LMAC | Independent | Chain | **LMAC Methodology** | **Physician Override (DAW, Brand Medically Necessary)** | **Dispensing Fee** | **TPN** |
| 9/1/1990 [7] - 9/30/1991 | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | AWP - 10.5% [7] | AWP - 10.5% [1, 7] | [2] | Y [7] | $4.68 [7] | |
| 10/1/1991 [7] - 6/30/1992 | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | Y [7] | AWP - 10.5% [7] | AWP - 10.5% [1, 7] | [2] | Y [7] | $5.00 [7] | |
| 7/1/1992 - 6/30/1993 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.30 [7] | |
| 7/1/1993 [7] - 6/30/1994 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.54 [7] | |
| 7/1/1994 [7] - 6/30/1999 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.77 | |
| 7/1/1999 - 1/31/2000 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 13.5% [3] | [2] | Y | $5.77 | |
| 2/1/2000 - 8/5/2001 | Y | Y | Y | Y | Y | Y | AWP - 15.0% | AWP - 16.5% [4] | [2] | Y | $5.77 | |
| 8/6/2001 - Present [7] | Y | Y | Y | Y | Y | Y | AWP - 13.5% | AWP - 15.0% [4] | [2] | Y | $5.77 | [6] |

   Data taken from Louisiana Medicaid State Plan Amendments

   Data provided by Terrebonne deposition taken 11/7/08 and exhibits and Declaration of M.J. Terrebonne dated 7/20/09

[1] Note: Prior to TN #99-12 effective 7/1/1999, independent and chain pharmacies were not separately distinguished for reimbursement.

[2] Per TN #92-01 et al., the Louisiana Maximum Allowable Cost (LMAC) is the median AWP cost for a specific strength/unit drug determined by listing the wholesale costs for each readily available manufacturer, labeler, etc. and taking the median of those AWP costs.   Per deposition pp. 88-89, this definition also applies to the first two time periods.

[3] Per TN #99-12, chain pharmacies have five or more Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[4] Per TN #00-08 and TN #01-08, chain pharmacies have more than 15 Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[5] Per deposition pp. 78-81, drug file pricing is provided by First DataBank.

[6] Beginning on 7/1/2005, Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

[7] Dates, dispensing fees, compound fees and other information reviewed and verified as accurate in Declaration.

*See attached Ex. 1 for FN#1*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS;<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; and<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS | MDL No. 1456<br>Civil Action No. 01-12257-PBS<br><br>Subcategory No. 06-11337-PBS<br><br>Hon. Patti B. Saris |

DECLARATION OF M.J. TERREBONNE
ON BEHALF OF THE STATE OF LOUISIANA
2

I, M.J. Terrebonne, do hereby declare and state as follows:

1.      I am currently employed as Medicaid Pharmacy Director of the Louisiana Department of Health and Hospitals (DHH). I have been employed by DHH in various capacities since 1983. I am authorized to provide this declaration pertaining to the matters contained herein, including Louisiana's Medicaid pharmacy prescription drug reimbursement methodology dating from 1991 to the present.

2.      From before 1991 to the present, a component of DHH, was the single state agency responsible for administering the Medicaid program for the State of Louisiana .

3.      Based on my personal knowledge, my review of documents created and maintained by DHH setting forth the activities of the agency, and my discussions with other knowledgeable DHH employees, I am familiar with the Medicaid pharmacy prescription drug reimbursement methodologies utilized by the State of Louisiana, and have confirmed what those methodologies were from 1991 to the present.

4.      Attached as Exhibit 1 is an accurate summary of Louisiana's Medicaid prescription drug reimbursement methodologies from 1991 to the present.   This summary was prepared by Myers and Stauffer LLC in close consultation with the DHH. I and other employees of the DHH have reviewed this summary or prior drafts of it in order to comment on it and assure its accuracy.  DHH provided to Myers and Stauffer supporting documentation, including copies of past Pharmacy Bulletins issued by DHH and DHH's Pharmacy Manual and amendments thereto.   Exhibit 1 accurately reflects the pharmacy reimbursement methodologies used by the State of Louisiana's Medicaid program from 1991 to the present.

5.      On Exhibit 1, the use of the letter "Y" reflects, that "yes" a policy or provision was in effect during the designated time period.  The use of the letter "N" reflects that "no" the identified policy or provision was not in effect in Louisiana during the designated time period.

2

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

M.J. Terrebonne
Medicaid Pharmacy Director

Executed this 20th day of July, 2009

3

**Exhibit 1 to Declaration**

DRAFT

State of:  Louisiana

Medicaid Pharmacy Reimbursement Methodology

| | "Lower of" Reimbursement for Brand Drugs | | "Lower of" Reimbursement for Generic Drugs | | | | Estimated Acquisition Cost (EAC) [5] | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Effective Time Period | Usual and Customary | EAC | Usual and Customary | FUL | EAC | LMAC | Independent | Chain | LMAC Methodology | Physician Override (DAW, Brand Medically Necessary) | Dispensing Fee | TPN |
| 9/1/1990 - 9/30/1991 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $4.68 | |
| 10/1/1991 - 6/30/1992 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.00 | |
| 7/1/1992 - 6/30/1993 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.30 | |
| 7/1/1993 - 6/30/1994 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.54 | |
| 7/1/1994 - 6/30/1999 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 10.5% [1] | [2] | Y | $5.77 | |
| 7/1/1999 - 1/31/2000 | Y | Y | Y | Y | Y | Y | AWP - 10.5% | AWP - 13.5% [3] | [2] | Y | $5.77 | |
| 2/1/2000 - 8/5/2001 | Y | Y | Y | Y | Y | Y | AWP - 15.0% | AWP - 16.5% [4] | [2] | Y | $5.77 | |
| 8/6/2001 - Present | Y | Y | Y | Y | Y | Y | AWP - 13.5% | AWP - 15.0% [4] | [2] | Y | $5.77 | [6] |

▩  Data taken from Medicaid State Plan Amendments

▩  Data taken from National Pharmaceutical Council Benefits Summary

▩  Data taken from Louisiana Provider Updates

▩  Data provided by MJ Terrebonne and Rachel Broussard, DHH, on 10/7/08, 10/8/08, 10/21/08, 10/23/08

▩  Data provided by Terrebonne deposition taken 11/7/08 and exhibits

[1] Note: Prior to TN #99-12 effective 7/1/1999, independent and chain pharmacies were not separately distinguished for reimbursement.

[2] Per TN #92-01 et al., the Louisiana Maximum Allowable Cost (LMAC) is the median AWP cost for a specific strength/unit drug determined by listing the wholesale costs for each readily available manufacturer, labeler, etc. and taking the median of those AWP costs.   Per deposition pp. 88-89, this definition also applies to the first two time periods.

[3] Per TN #99-12, chain pharmacies have five or more Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[4] Per TN #00-08 and TN #01-08, chain pharmacies have more than 15 Medicaid enrolled pharmacies under common ownership.  If not a chain, then it is considered an independent pharmacy.

[5] Per deposition pp. 78-81, drug file pricing is provided by First DataBank.

[6] Beginning on 7/1/2005, Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount. TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

9/1/1990 – 9/30/1991

| From: | "M J TERREBONNE" <mterrebo@dhh.la.gov> |
| To: | "Judith Becherer" <Jbecherer@MSLC.COM> |
| Date: | Tuesday - October 7, 2008 1:36 PM |
| Subject: | Re: Medicaid Pharmacy Pricing Follow-Up |

Judith,

Per my review,  below are the changes,

The dispensing fees are as follows :
7-1-1989   $4.00   NA
4-1-1990   $4.41   N/A
9-1-1990   $4.68   ✓
10-1-1991  $5.00   ✓
7-1-1992   $5.30
7-1-1993   $5.54   ✓
7-1-1994   $5.77

*Beginning effective date for 1st time period and DF*

_____

Insert 2 for the following:

✓ 7-1-1989 thru 9-30-1991 - LMAC Description - 2

*FN#2 (See 7/1/1992 time period, TN# 92-01 for language)*

_____

According to the approved state plans, the EACs are as follows:

✓ July 1, 1989 --AWP minus 10.5%   *- EAC and FN#1*
✓ July 1, 1999--AWP minus 10.5% for independents, AWP minus 13.5 for chains - Chains - *FN#3* five or more Medicaid enrolled pharmacies under common ownership
✓ February 1, 2000 - AWP minus 15% for independents, AWP minus 16.5% for chain *FN#4* pharmacies - Chains -more than fifteen Medicaid enrolled pharmacies under common ownership
*FN#5* August 6, 2001 -AWP minus 13.5% for independents, AWP minus 15% for chain pharmacies - Chains -mmore than fifteen Medicaid enrolled pharmacies under common ownership

thanks, mj
>>> "Judith Becherer" <Jbecherer@MSLC.COM> 10/6/2008 4:17 PM >>>
Dear MJ,
    Good afternoon!  I know that you have had considerable issues resulting from the recent hurricane, so I have tried to delay making a follow-up contact with you for as long

Administration:

Public assistance programs are administered by the Department of Health and Hospital.

IV.  Provisions Relating to Prescribed Drugs:

A. Open formulary.  Certain drug categories are excluded from reimbursement, i.e., anorexic, cough and cold preparations, cosmetics, DESI, experimental and most OTC drugs. For information contact:  M. J. Terrebone, 504/342-3081.

B. Prescribing or Dispensing Limitations:

1. Quantity of Medication:  New prescription must be issued for drugs given on a continuing basis, after 5 refills or after 6 months.

Maximum payment quantity for prescriptions shall be either one month's treatment or 100 unit doses.

2. Refills:  Permitted as indicated by physician within 6 months and not to exceed 5 refills.

3. Dollar Limits:  None.

C.   Prescription Reimbursement Formula:

Medicaid reimbursement for pharmacy services will be based on the lower of:



a. The provider's usual and customary charge to other payors;
b. Louisiana Maximum Allowable Costs (LMAC) or the Federal Upper Limit plus the dispensing fee;


physician override

c. EAC (Estimated Acquisition Cost) plus the dispensing fee (EAC is 10.5% less than AWP reported by First DataBank) for drugs which are not subject to LMAC or FUL or drugs which are subject to a physician's certification for a brand name drug (MAC override).  Dispensing fee is $4.68.

D. Fiscal Intermediary:

Unisys
P.O. Box 91030
Baton Rouge, LA  70821
504/924-7051

Officials, Consultants and Committees

1.  Department of Health and Hospital Administration Officials:

David L. Ramsey, Secretary
Department of Health and Hospitals
504/342-9500

Carolyn O. Maggio, P. D., Director
Bureau of Health Services Financing
Department of Health and Hospitals
1201 Capitol Access Road
Baton Rouge, LA  70821
504/342-3891

M. J. Terrebonne, P. D., Pharmacist Consultant II
504/342-3086

2.  Medicaid Rebate Contacts:

*Technical:*     Carol Simpson, 504-342-3855

*Policy:*        Mary J. Terrebone, 504/342-3086

3.  Medicaid Drug Program Committee:

Cathi Fontenot, M.D.
LSU Medical Center
1542 Tulane Avenue
New Orleans, LA 70112
504/568-4791

Naurang Agrawal, M.D.
Tulane Medical School of Medicine
Gastroenterologist
1430 Tulane Avenue
New Orleans, LA  70112
504/588-5838

Keith C. Ferdinand, M.D.
1201 Poland Avenue
New Orleans, LA  70117
504/943-1177

Elvin G. Tubre, M.D.
Internal Medicine
3418 Medical Park Drive
Suite 22
Monroe, LA  71201
318/361-0016

Milton C. Chapman, M.D.
Pediatrician
921 Shreveport—Barksdale Hwy.
Shreveport, LA 71105
318/865-5646

Terrebonne, Mary Julia

March 31, 2008

23 (Pages 86 to 89)

|  | 86 |
|---|---|
| 1 | Q.  Do you know who -- who would know the |
| 2 | answer to that question, or where could I find the |
| 3 | answer to that question? |
| 4 | A.  Probably Richard O'Shee and Carolyn |
| 5 | Maggio. |
| 6 | Q.  If we go to the next section, there is |
| 7 | reference to an LMAC.  That refers to Louisiana |
| 8 | Maximum Allowable Cost Program, correct? |
| 9 | A.  Yes. |
| 10 | Q.  Can you tell us what that is? |
| 11 | A.  The Louisiana maximum, or when there are |
| 12 | generic drugs available, the state of Louisiana |
| 13 | sets a maximum allowable cost limitation on those |
| 14 | generic products. |
| 15 | Q.  Do you know when the LMAC started? |
| 16 | A.  I do not. |
| 17 | Q.  Was it prior to you joining the |
| 18 | department in 1983? |
| 19 | A.  I believe so. |
| 20 | Q.  Do you have an understanding of why it |
| 21 | was that Louisiana had a Maximum Allowable Cost |
| 22 | Program for the period 1990 at least through today? |

|  | 87 |
|---|---|
| 1 | A.  We have it to set limitations, |
| 2 | reimbursement limitations on the generic products. |
| 3 | Q.  Why would you need to have that? |
| 4 | A.  So that we would pay accordingly rather |
| 5 | than pay the full price of the innovator products, |
| 6 | because the generics were normally less expensive. |
| 7 | Q.  Why couldn't you take the price reported |
| 8 | in the compendia for generic drugs by NDC and make |
| 9 | that the reimbursement price? |
| 10 | MR. FAUCI:  Objection, form. |
| 11 | THE WITNESS:  I believe the intent was to set |
| 12 | a maximum price so that the price would be less. |
| 13 | BY MR. TORBORG |
| 14 | Q.  And was the purpose of establishing and |
| 15 | maintaining the LMAC program because the state knew |
| 16 | that the AWP reported in the compendia for generic |
| 17 | drugs was not a reliable source for what it |
| 18 | actually costs providers to purchase the drugs? |
| 19 | MR. FAUCI:  Objection. |
| 20 | THE WITNESS:  I'm not aware of that. |
| 21 | BY MR. TORBORG |
| 22 | Q.  Did you have an understanding of why |

|  | 88 |
|---|---|
| 1 | there was an LMAC provision? |
| 2 | A.  Because normally the AWPs for the |
| 3 | generics were less expensive than the AWP of the |
| 4 | innovator products. |
| 5 | Q.  Let's talk about how it was that the LMAC |
| 6 | worked.  How did the maximum allowable cost for an |
| 7 | individual drug get created? |
| 8 | A.  That was prior to me arriving here, so I |
| 9 | don't know. |
| 10 | Q.  Well, this provides the mechanism, does |
| 11 | it not? |
| 12 | A.  Yes. |
| 13 | Q.  It states, "LMAC is the median AWP cost |
| 14 | for a specific strength unit drug determined by |
| 15 | listing the wholesale costs for each readily |
| 16 | available manufacturing labeler, et cetera, and |
| 17 | taking the median of those AWP costs (one half |
| 18 | would be above the median cost and one half will be |
| 19 | below the median cost).  LMAC limits may be |
| 20 | adjusted by Medicaid of Louisiana based on charges |
| 21 | in the availability and EAC of the drugs."  I |
| 22 | believe it means to say changes.  I think it's a |

|  | 89 |
|---|---|
| 1 | typo. |
| 2 | Ms. Terrebonne, is this consistent with |
| 3 | your understanding of how Louisiana set maximum |
| 4 | allowable cost limits for generic drugs for the |
| 5 | period 1991 through 2001? |
| 6 | A.  Yes. |
| 7 | Q.  Was there any other method that Louisiana |
| 8 | used other than taking the median AWP to determine |
| 9 | the LMAC limit? |
| 10 | A.  No.  We followed what was in the state |
| 11 | plan. |
| 12 | Q.  Do you know whose idea it was to use this |
| 13 | methodology in creating the LMAC? |
| 14 | A.  I do not. |
| 15 | Q.  Was there ever any consideration to |
| 16 | changing the methodology for establishing the LMAC |
| 17 | limits to some other way? |
| 18 | A.  There has been discussion. |
| 19 | Q.  Tell me about that. |
| 20 | A.  Just discussion that perhaps we need to |
| 21 | review the methodology to determine an alternative |
| 22 | methodology. |

*
LMAC
Methodology
FN#2

Terrebonne, Mary Julia                    March 31, 2008

21 (Pages 78 to 81)

### Page 78

1    A.   We go to our drug file.
2    Q.   Where is that?
3    A.   That is in our MMIS system.
4    Q.   And where do the prices come from that
5    are in your drug file?
6    A.   First DataBank.
7    Q.   When you use the term average wholesale
8    price in your work, does it refer to prices that
9    were published by First DataBank or other price
10   services like that?
11   MR. FAUCI:  Object to the form.
12   THE WITNESS:  Yes.
13   BY MR. TORBORG
14   Q.   And you have discussed the term, or used
15   the term average wholesale price or AWP with your
16   colleagues in other states, correct?
17   A.   Have I used the term before?
18   Q.   That term has been used by your
19   colleagues in other states?
20   A.   Yes.
21   Q.   At meetings you attended, correct?
22   A.   Yes.

### Page 79

1    Q.   From your personal experiences at
2    Louisiana Medicaid and from your interactions with
3    other state pharmacy administrators, do you believe
4    it is well-established in the industry that the
5    term average wholesale price refers to prices in
6    the drug compendia, such as the First DataBank?
7    MR. FAUCI:  Objection, form.
8    THE WITNESS:  I'm sorry, can you repeat the
9    question?
10   BY MR. TORBORG
11   Q.   From your personal experience working in
12   the Louisiana Department of Health and Hospitals
13   for over 20 years, and from your interactions with
14   other state pharmacy administrators, do you believe
15   it is well-established in the industry that the
16   term average wholesale price refers to prices in
17   the drug compendia, such as First DataBank?
18   A.   Yes, it is a price that is available to
19   First DataBank.
20   Q.   When you use the term AWP, you mean to
21   refer to prices in the compendia, correct?
22   MR. FAUCI:  Objection, form.

### Page 80

1    THE WITNESS:  Yes.
2    BY MR. TORBORG
3    Q.   And that is how other state pharmacy
4    administrators have used the term as well, correct?
5    MR. FAUCI:  Objection, form.
6    THE WITNESS:  Yes.
7    BY MR. TORBORG
8    Q.   Do you believe it would be fair for
9    anyone to suggest that it is not well-established
10   that AWP refers to prices in the compendia?
11   MR. FAUCI:  Objection, form.
12   THE WITNESS:  Please repeat the question.
13   BY MR. TORBORG
14   Q.   Do you believe it would be fair for
15   anyone to suggest that it is not well-established
16   that the term average wholesale price refers to
17   prices in the drug compendia, such as First
18   DataBank?
19   A.   I think it is a price available through
20   First DataBank.  I know there is a lot going on
21   with First DataBank as well with the average
22   wholesale price, but average wholesale price is a

*FDB
FN#5

### Page 81

1    benchmark used throughout the country for pricing.
2    Q.   And it refers to prices in the compendia,
3    correct?
4    A.   Yes.
5    (Exhibit Abbott 1050 was marked.)
6    MR. TORBORG:  For the record, what I have
7    marked as Abbott Exhibit 1050 bears Bates No.
8    JD-SUB-LA-001522 through 32.  For the record, these
9    were documents that were produced in response to
10   the subpoena to Ms. Terrebonne.  They were produced
11   to us without Bates numbers so we went ahead and
12   put some Bates numbers on them.  The JD refers to
13   Jones Day, and the SUB means subpoena, and LA
14   equals Louisiana.
15   BY MR. TORBORG
16   Q.   Ms. Terrebonne, if you would take a look
17   at that document and let me know if you are
18   familiar with it.
19   A.   I am.
20   Q.   Can you tell us what it is?
21   A.   It is the State Plan for Medicaid
22   Reimbursement for Drugs.

10/1/1991 – 6/30/1992