# Exhibit 24
# Part H

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Amended Exhibit 24 to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

7/1/1994 – 6/30/1999

# PROVIDER UPDATE

## VOLUME 11, NUMBER 4

## JULY/AUGUST 1994



*Handwritten annotation:* Dispensing Fee 7/1/94 $5.77 (See next 2 pages) for Eff. date and DF?

| | |
|---|---|
| Message from the Medical Director | Code 91033 Funded |
| Code 93016 Funded | Code 90700 Funded |
| Increase in UVS for Code 99183 | Placement of Deleted Codes in Non-Pay Status |
| Monthly Medical Card Changes | Revised Limits for MHR Option |
| Notice to NEMT Providers | Clarifications and Revised Limits for MHR Option: Effective July 1, 1994 |
| Target Population for Mental Health Rehabilitation Services | LADUR Education Article |
| Billing for Professional Services Under Pre-Admission Certification/LOS | Independent Labs - Medicare Crossover Claims |
| Supervised Independent Living Providers: Consultation Information | Authorization of Services for the Chronically Mentally Ill Which Exceeds the Maximum Units Per Year |
| New Dispensing Costs for Pharmacists | HCPC DME Code Changes and Additions |
| Changes in Case Management Program | Case Management for Persons With Serious Mental Illness |

## Message from the Medical Director

### Louisiana Drug Utilization Review Program Update (LADUR)

**LADUR is a drug review program required by OBRA 90, the goal of which is to enhance and improve the quality of pharmaceutical care and Medicaid patient outcomes by ensuring that prescriptions are appropriate, medically necessary, and not likely to result in adverse medical effects. LADUR is important because it helps achieve quality and cost containment without compromising access to medically necessary therapy.**

**LADUR focuses on interventions that convey to physicians individual Medicaid recipients drug utilization patterns as it impacts therapeutic exception criteria. Program activities include developing new therapeutic exception criteria, developing educational articles, surveying the provider population, coordinating a drug utilization review board, and communicating with providers via regional committees. 1993 activity focused on over-utilization or drug-to-drug problems in either high cost or particularly risky therapeutic drug classes.**

**In 1993, nearly 5,000 LADUR provider letters were mailed to physicians,**

5. Necessity and frequency of consultations is determined by the case management ID team based on appropriate documentation. Consultations are entered on both the Comprehensive and Service Plans of Care as separate items.

6. Consultations take place on a reasonable schedule (i.e., sufficiently often to determine that staff is following instructions). Consultations are typically necessary no more often than monthly or quarterly.

7. Consultations are available for persons living in an Independent Supervised Living arrangement for whom base rate is applicable.

8. Consultants shall furnish a written report of each consultation including date and duration of contact, persons involved, pertinent findings and recommendations, and, if appropriate, progress since a previous consultation. The report shall be filed in the recipient's case record maintained by the provider and shall be available for review by staff as necessary.

Please report suspected instances of incorrect consultation code use to Louise Dubroc at (504) 342-5457.

## Authorization of Services for the Chronically Mentally Ill Which Exceed the Maximum Units Per Year

All requests for additional units of service (for dates of service prior to August 1, 1994) which exceed the maximum specified in the DHH Medicaid Case Management Services manual must be submitted in writing to OMH regional coordinator for continuation of services.

The request should document the circumstances which led to the high need for services, the necessity for additional services, and the number of additional units requested. All service logs and progress notes should also be submitted with the request for additional services.

## New Dispensing Costs for Pharmacists



The maximum allowable overhead cost (dispensing fee) for Medicaid prescription services was increased to $5.77 effective for services beginning July 1, 1994.

This fee includes the provider fee mandated under state law for every

prescription filled by a pharmacy or dispensing physician. Also, please be reminded that providers are required to bill their usual and customary charges.

## HCPC DME Code Changes and Additions

The following changes have been made recently for these DME procedure codes.

1. Code V5014 has been added as a payable code to replace V5299 for hearing aid repairs.

2. Three additional codes have been added to the automatic pricing file (PAC = 850):
   E0244 = $65.00 (Raised Toilet Seat)
   E0243 = $60.00 (Toilet Rail, Each)
   E0246 = $60.00 (Transfer Tub Rail Attachment)

3. Code L3907 (EHFO, Wrist Gauntlet with Thumb Spica, Molded to Patient Model) has been added as a payable code to be automatically priced (PAC = 850) at $323.92.

Also, the following new procedure codes have been created by HCFA and will be entered on the DME file as payable codes.

1. Codes K0001-K0117 have been created for wheelchairs and accessories. These codes will be made payable retroactive to 1/1/94 (see the list beginning on page y of this *Provider Update*). All will be automatically priced except for K0108, K0109, and K0177.

2. Codes K0126-K0165 are new codes created for already covered items including orthotic devices, urinary catheters, and ostomy supplies. These are also being added retroactive to 1/1/94 (see list on page 7).

3. Codes XX030-XX072 have been created for category IV and V enteral formula products for which Medicare has descriptive and pricing information on file. They will replace codes B4154 and B4155 for these products. Codes B4154 and B4155 may still be used, however, for other formulas in these categories for which no "XX" code has been assigned (see list on page 7).

4. Codes L0984-L8490 on attached list have also been added by HCFA as payable codes for additional orthotic and prosthetic items (see list on page 7). The items will be automatically priced.

Page 66

1  discussed, yes.
2      Q. What do you recall about those
3  discussions?
4      A. Not much other than it is just probably
5  -- we normally go around and do a roundtable and
6  discuss what our reimbursement rate is and that
7  kind of thing. So when I say discussed, that's
8  normally what we do. How many scripts you paid for
9  a year, what is your budget, that kind of thing.
10     Q. When you say what is your budget, what do
11 you mean by that?
12     A. What the Medicaid programs spend on
13 expenditures.
14     Q. From 1991 through 2001, which is the
15 operative time period for which the United States
16 is seeking damages from Abbott, how was the
17 dispensing fee set? How was the number calculated?
18     MR. FAUCI: Objection, form.
19     THE WITNESS: In the State of Louisiana?
20 BY MR. TORBORG
21     Q. Yes.
22     A. As I recall, Postlethwaite & Netterville

Page 67

1  did a dispensing cost survey. Subsequent to that,
2  Myers and Stauffer did a dispensing cost survey.
3      Q. How were the result of the survey used in
4  coming up with the dispensing fee amount?
5      MR. FAUCI: Objection, form.
6      THE WITNESS: I don't recall exactly how that
7  occurred, but the results were used.
8  BY MR. TORBORG
9      Q. What impact does the state budget have on
10 the dispensing fee amounts that are paid?
11     MR. FAUCI: Objection.
12     THE WITNESS: I'm not sure I understand your
13 question.
14 BY MR. TORBORG
15     Q. Does the state budget have a set amount
16 for dispensing fees?
17     MR. FAUCI: Same objection.
18     THE WITNESS: I would say no.
19 BY MR. TORBORG
20     Q. What the state budget provides for the
21 Louisiana Medicaid pharmacy program, what impact,
22 if any, does that have on the dispensing fee

Page 68

1  amount?
2      A. I'm still not following your question.
3      Q. Well, there is a state -- the state gives
4  you a set budget for the pharmacy program. Is that
5  correct or not?
6      A. I don't believe so.
7      Q. Okay.
8      A. And that is a budget question to ask.
9      Q. Okay. Can you give me anymore insight
10 into how the Postlethwaite study was used to
11 establish fees on the dispensing fee amounts?
12     A. I will tell you what I remember, which is
13 not very much, but I believe that the dispensing
14 fee was a lower amount prior to the Postlethwaite
15 study, and the Postlethwaite study came out and
16 determined whatever the fee was going to be at the
17 time and allowed for some type of factor to be
18 applied on an annual basis to increase the
19 dispensing fee. And it subsequently was frozen in
20 some year, and I don't remember the year, at $5.77.
21     Q. Why was it frozen at $5.77?
22     A. Probably because of budgetary factors at

Page 69

1  the time.
2      Q. If I can ask you to take out Exhibit 326
3  in the binders there. Probably in the second box
4  there to your right.
5      MR. TORBORG: For the record, what was marked
6  previously as Abbott Exhibit 326 is a cover page of
7  certain pages out of a publication that was done by
8  the National Pharmaceutical Council, in particular,
9  we have taken out pages that set forth the
10 dispensing fee and ingredient reimbursement basis
11 for the years 1990 through 2006 and made them into
12 one exhibit.
13 BY MR. TORBORG
14     Q. Ms. Terrebonne, are you familiar with the
15 publication that is prepared by the National
16 Pharmaceutical Council?
17     A. Yes.
18     Q. You have had occasion to reference that
19 in your work?
20     A. Yes.
21     Q. If we look at -- if we start with the
22 first page in the exhibit, this is titled "Medicaid

[Handwritten margin note: *DF $5.77 frozen since 1994]

                                                          70

1   Drug Reimbursement Report 1990." Under Louisiana,
2   do we see the dispensing fee there of $4.41?
3       A. Yes.
4       Q. And then if you go to the next -- if you
5   go two more pages, there is one also entitled
6   "Medicaid Drug Reimbursement Report for 1990," but
7   it has MPC1991 in the upper left-hand corner. It
8   says Louisiana, $4.61. Do you see that?
9       A. Yes.
10      Q. And if we skip two more pages, for the
11  1992 report, it shows the dispensing fee for
12  Louisiana of $5. Do you see that?
13      A. Yes.
14      Q. And 1993, if you skip a couple more past,
15  it shows $5.30. Do you see that?
16      A. Yes.
17      Q. Skip another couple of pages, 1994, it
18  shows the dispensing fee at $5.77. Do you see that?
19      A. Yes.
20      Q. And then if we go to the next page, you
21  will see that it is still $5.77?
22      A. Yes.

                                                          71

1       Q. Does that refresh your recollection at
2   all about when it was that the dispensing fee was
3   frozen?
4       A. Yes.
5       Q. And your recollection as refreshed is
6   what?
7       A. 1994.
8       Q. If you look through the report, I think
9   you will see it stays at $5.77 through 2002, and in
10  2003, if I could ask you to go to the third page
11  from the end of the exhibit, I wanted to ask you a
12  question about something there.
13          See there, under Louisiana dispensing
14  fee, it shows $4.45, and in parentheses it says
15  "(AVG)," and I assume that means average, to $5.77.
16  Do you see that?
17      A. No. I'm sorry --
18      Q. It's the page in the upper right-hand
19  corner, "Pharmaceutical Benefits, 2003."
20          You know what? You have double sided and
21  I don't. So I think if you go to the upper
22  right-hand corner, see where it says 2003?

                                                          72

1       A. Okay. Yes.
2       Q. There it seems to indicate for this year,
3   2003, a dispensing fee of $4.45 average to $5.77.
4   Do you see that?
5       A. Yes.
6       Q. Do you know what that means?
7       A. I have got $4.45 is our average paid
8   dispensing fee.
9       Q. And the maximum number would $5.77?
10      A. Yes.
11      Q. Who would get $4.45 and who would get
12  $5.77?
13      A. When providers bill, they bill their
14  usual and customary charge, so they don't always
15  bill $5.77.
16      Q. Who gets the $4.45?
17      A. That is the average when you look at the
18  dispensing fee portion divided by the number of
19  claims we paid.
20      Q. I see. If somebody -- let me back up.
21          In determining how much to pay a provider
22  to dispense drugs to a Medicaid beneficiary, you

                                                          73

1   pay ingredient cost and dispensing fee. Correct?
2       A. Correct.
3       Q. And the ingredient cost portion would be
4   the lower of a series of things. Correct?
5       A. Right.
6       Q. If the lower -- if the provider's usual
7   and customary charge is the lowest of that
8   criteria, what dispensing fee would they be paid?
9       A. I don't understand your question.
10      Q. Okay. If Louisiana reimburses on usual
11  and customary charge, they don't pay a separate
12  dispensing fee; is that right? Or do they?
13      A. They will go through the calculation of
14  the ingredient cost, and whatever was remaining,
15  they would pay up to $5.77. But if you charged
16  less, we would pay less.
17      Q. Has that been the case throughout 1991
18  through 2001?
19      A. Yes.
20      Q. Do you know why the dispensing fee was
21  frozen in 1994 at $5.77?
22      A. I don't recall exactly, but I would

STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT   Attachment 4.19-B
MEDICAL ASSISTANCE PROGRAM   Item 12.a.
   Page 4

ATE OF LOUISIANA

PAYMENTS FOR MEDICAL AND REMEDIAL CARE AND SERVICES
METHODS AND STANDARDS FOR ENSURING PAYMENT RATES

OTHER TYPES OF CARE OR SERVICES LISTED IN SECTION 1902(a) OF THE ACT THAT ARE INCLUDED IN THE PROGRAM UNDER THE PLAN ARE DESCRIBED AS FOLLOWS:

| CITATION | Medical and Remedial |
|---|---|
| 42 CFR | Care and Services |
| 447 Subpart D. | Item 12.a.(Continued) |

Superseded By 05-10

D. Lower of Reimbursement For Multiple Source Drugs

The agency shall make payments for Multiple Source Drugs other than drugs subject to "Physician Certification" based on the lower of:

1. Any applicable Louisiana Maximum Allowable Cost limit, plus the established maximum allowable overhead cost;
2. Any applicable Federal Upper Limit for multiple source drugs, plus the established maximum allowable overhead cost;
3. The provider's usual and customary charges to the general public, not to exceed the "Maximum Pharmaceutical Price Schedule", and
4. The average wholesale price of the drug product, subject to Medicaid of Louisiana's limits on purchasing practices as outlined in the definition of EAC and IV.K.

E. Physician Certifications

Limits on payments for multiple source drugs shall not be applicable when the prescriber certifies in his own handwriting that a specified brand name drug is medically necessary for the care and treatment of a beneficiary. Such certification shall be written directly on the prescription or on a separate sheet which is attached to the prescription. The wording of the certification should testify to the medical necessity of the brand name drug by stating either "brand medically necessary" or "brand necessary".

Any practice which precludes the prescriber's handwritten statement, shall not be accepted as valid certification. Such practices include, but are not limited to:
1. A printed box on the prescription blank that could be checked by the prescriber to indicate brand necessity.
2. A handwritten statement transferred to a rubber stamp and then stamped on the prescription blank.
3. Preprinted prescription forms using a facsimile of the prescribers handwritten statement.

IV. GENERAL REQUIREMENTS APPLICABLE TO ALL PRESCRIPTIONS

A. For all prescriptions, the maximum quantity payable shall be a month's supply or 100 unit doses, whichever is greater. The quantity billed shall be that prescribed, unless it exceeds the maximum quantity payable. In such cases, the maximum quantity payable shall be filled. The maximum quantity payable for prescription drugs for the treatment of erectile dysfunction is six (6) units per month.

B. When maintenance drugs are prescribed and dispensed for chronic illness, they shall be in quantities sufficient to effect economy in dispensing and yet be medically sound. Listed below are drugs Medicaid of Louisiana considers to be maintenance type drugs and which should be prescribed and dispensed in a month's supply:

98-11 Approval Date 28-98   Effective Date 5-22-98
-persedes
TN# 92-01

7/1/1999 – 1/31/2000

STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT  ATTACHMENT 4.19-B
MEDICAL ASSISTANCE PLAN  Item 12.a., Page 2

STATE OF __LOUISIANA__

PAYMENT FOR MEDICAL AND REMEDIAL CARE AND SERVICES *Superseded By 02-08*
METHODS AND STANDARDS FOR ESTABLISHING PAYMENT RATES

OTHER TYPES OF CARE OR SERVICES LISTED IN SECTION 1902(a) OF THE ACT THAT ARE INCLUDED IN THE PROGRAM UNDER THE PLAN, ARE DESCRIBED AS FOLLOWS:

<u>CITATION</u>   Medical and Remedial Care and Services
42 CFR 447    Item 12.1. (Continued)
Subpart D

"Multiple Source Drug" means a drug marketed or sold by two or more manufacturers or labelers or a drug marketed or sold by the same manufacturer or labeler under two or more different proprietary names or both under a proprietary name and without such a name.

"Average Wholesale Price" (AWP) means the wholesale price of a drug product as reported to Medicaid of Louisiana by one or more national compendia on a weekly basis.

"Estimated Acquisition Cost" (EAC) means the modified Average Wholesale Price of the drug dispensed and identified by the manufacturer number, product number, and package number usually purchased by a provider from a supplier whose products are generally available to all pharmacies and reported in one or more national compendia. EAC for drug products supplied through repackaging into smaller quantities by chain drugstore central purchasing shall be based on the package size purchased by the central purchasing unit. Supporting documentation (invoices) shall be made available to the agency or its designee upon request. This limitation includes drug products which are repackaged or relabeled by the manufacturer or third party under any type of purchase contract or agreement. Bulk purchase practices which result in price reductions not generally available to all pharmacies shall also be subject to this limitation. If the package size is larger than the largest size listed by Medicaid of Louisiana, then EAC will be based on the largest size listed in the American Druggist Blue Book or other national compendia utilized by the State to update the Medicaid Management Information System (MMIS).

"Modified" means the lower of the following applicable limits:

AWP minus either 10.5% for independent pharmacies (all pharmacies not included in the chain pharmacy designation) or 13.5% for chain pharmacies (five or more Medicaid enrolled pharmacies under common ownership) for:
   Other Drugs not subject to LMAC limits; and
   Drugs exempt from LMAC or Federal Upper Limits by physician override;

*Change to EAC   FN #3*

LMAC limits on multiple source drugs established by Medicaid of Louisiana as set forth below; and

Federal Upper Limits on multiple source drugs established by HCFA as set forth below.

"Maximum Allowable Overhead Cost" means the expense incurred by pharmacy providers in dispensing covered drugs as determined by Medicaid of Louisiana. Section V. of Item 12.a. describes the complete methodology utilized.

B. Federal Upper Limits (FUL) For Multiple Source Drugs

1. Except for drugs subject to "Physician Certification", Medicaid of Louisiana shall utilize listing established by HCFA that identify and set upper limits for multiple source drugs that meet the following requirements:

(a) All of the formulations of the drug approved by the Food and Drug Administration (FDA) have been evaluated as therapeutically equivalent in the most current edition of their publication, Approved Drug

TN#  __99-12__     Approval Date __3-9-00__     Effective Date __7-1-99__
Supersedes
TN# __92-01__

Page 66

```
 1  discussed, yes.
 2      Q.  What do you recall about those
 3  discussions?
 4      A.  Not much other than it is just probably
 5  -- we normally go around and do a roundtable and
 6  discuss what our reimbursement rate is and that
 7  kind of thing. So when I say discussed, that's
 8  normally what we do. How many scripts you paid for
 9  a year, what is your budget, that kind of thing.
10      Q.  When you say what is your budget, what do
11  you mean by that?
12      A.  What the Medicaid programs spend on
13  expenditures.
14      Q.  From 1991 through 2001, which is the
15  operative time period for which the United States
16  is seeking damages from Abbott, how was the
17  dispensing fee set? How was the number calculated?
18      MR. FAUCI: Objection, form.
19      THE WITNESS: In the State of Louisiana?
20  BY MR. TORBORG
21      Q.  Yes.
22      A.  As I recall, Postlethwaite & Netterville
```

Page 67

```
 1  did a dispensing cost survey. Subsequent to that,
 2  Myers and Stauffer did a dispensing cost survey.
 3      Q.  How were the result of the survey used in
 4  coming up with the dispensing fee amount?
 5      MR. FAUCI: Objection, form.
 6      THE WITNESS: I don't recall exactly how that
 7  occurred, but the results were used.
 8  BY MR. TORBORG
 9      Q.  What impact does the state budget have on
10  the dispensing fee amounts that are paid?
11      MR. FAUCI: Objection.
12      THE WITNESS: I'm not sure I understand your
13  question.
14  BY MR. TORBORG
15      Q.  Does the state budget have a set amount
16  for dispensing fees?
17      MR. FAUCI: Same objection.
18      THE WITNESS: I would say no.
19  BY MR. TORBORG
20      Q.  What the state budget provides for the
21  Louisiana Medicaid pharmacy program, what impact,
22  if any, does that have on the dispensing fee
```

Page 68

```
 1  amount?
 2      A.  I'm still not following your question.
 3      Q.  Well, there is a state -- the state gives
 4  you a set budget for the pharmacy program. Is that
 5  correct or not?
 6      A.  I don't believe so.
 7      Q.  Okay.
 8      A.  And that is a budget question to ask.
 9      Q.  Okay. Can you give me anymore insight
10  into how the Postlethwaite study was used to
11  establish fees on the dispensing fee amounts?
12      A.  I will tell you what I remember, which is
13  not very much, but I believe that the dispensing
14  fee was a lower amount prior to the Postlethwaite
15  study, and the Postlethwaite study came out and
16  determined whatever the fee was going to be at the
17  time and allowed for some type of factor to be
18  applied on an annual basis to increase the
19  dispensing fee. And it subsequently was frozen in
20  some year, and I don't remember the year, at $5.77.
21      Q.  Why was it frozen at $5.77?
22      A.  Probably because of budgetary factors at
```

Page 69

```
 1  the time.
 2      Q.  If I can ask you to take out Exhibit 326
 3  in the binders there. Probably in the second box
 4  there to your right.
 5      MR. TORBORG: For the record, what was marked
 6  previously as Abbott Exhibit 326 is a cover page of
 7  certain pages out of a publication that was done by
 8  the National Pharmaceutical Council, in particular,
 9  we have taken out pages that set forth the
10  dispensing fee and ingredient reimbursement basis
11  for the years 1990 through 2006 and made them into
12  one exhibit.
13  BY MR. TORBORG
14      Q.  Ms. Terrebonne, are you familiar with the
15  publication that is prepared by the National
16  Pharmaceutical Council?
17      A.  Yes.
18      Q.  You have had occasion to reference that
19  in your work?
20      A.  Yes.
21      Q.  If we look at -- if we start with the
22  first page in the exhibit, this is titled "Medicaid
```

Handwritten margin note: * DF $5.77 beginning 1994 (pp. 68-73)

**70**

1  Drug Reimbursement Report 1990." Under Louisiana,
2  do we see the dispensing fee there of $4.41?
3      A. Yes.
4      Q. And then if you go to the next -- if you
5  go two more pages, there is one also entitled
6  "Medicaid Drug Reimbursement Report for 1990," but
7  it has MPC1991 in the upper left-hand corner. It
8  says Louisiana, $4.61. Do you see that?
9      A. Yes.
10     Q. And if we skip two more pages, for the
11 1992 report, it shows the dispensing fee for
12 Louisiana of $5. Do you see that?
13     A. Yes.
14     Q. And 1993, if you skip a couple more past,
15 it shows $5.30. Do you see that?
16     A. Yes.
17     Q. Skip another couple of pages, 1994, it
18 shows the dispensing fee at $5.77. Do you see that?
19     A. Yes.
20     Q. And then if we go to the next page, you
21 will see that it is still $5.77?
22     A. Yes.

**71**

1      Q. Does that refresh your recollection at
2  all about when it was that the dispensing fee was
3  frozen?
4      A. Yes.
5      Q. And your recollection as refreshed is
6  what?
7      A. 1994.
8      Q. If you look through the report, I think
9  you will see it stays at $5.77 through 2002, and in
10 2003, if I could ask you to go to the third page
11 from the end of the exhibit, I wanted to ask you a
12 question about something there.
13         See there, under Louisiana dispensing
14 fee, it shows $4.45, and in parentheses it says
15 "(AVG)," and I assume that means average, to $5.77.
16 Do you see that?
17     A. No. I'm sorry --
18     Q. It's the page in the upper right-hand
19 corner, "Pharmaceutical Benefits, 2003."
20         You know what? You have double sided and
21 I don't. So I think if you go to the upper
22 right-hand corner, see where it says 2003?

**72**

1      A. Okay. Yes.
2      Q. There it seems to indicate for this year,
3  2003, a dispensing fee of $4.45 average to $5.77.
4  Do you see that?
5      A. Yes.
6      Q. Do you know what that means?
7      A. I have got $4.45 is our average paid
8  dispensing fee.
9      Q. And the maximum number would $5.77?
10     A. Yes.
11     Q. Who would get $4.45 and who would get
12 $5.77?
13     A. When providers bill, they bill their
14 usual and customary charge, so they don't always
15 bill $5.77.
16     Q. Who gets the $4.45?
17     A. That is the average when you look at the
18 dispensing fee portion divided by the number of
19 claims we paid.
20     Q. I see. If somebody -- let me back up.
21         In determining how much to pay a provider
22 to dispense drugs to a Medicaid beneficiary, you

**73**

1  pay ingredient cost and dispensing fee. Correct?
2      A. Correct.
3      Q. And the ingredient cost portion would be
4  the lower of a series of things. Correct?
5      A. Right.
6      Q. If the lower -- if the provider's usual
7  and customary charge is the lowest of that
8  criteria, what dispensing fee would they be paid?
9      A. I don't understand your question.
10     Q. Okay. If Louisiana reimburses on usual
11 and customary charge, they don't pay a separate
12 dispensing fee; is that right? Or do they?
13     A. They will go through the calculation of
14 the ingredient cost, and whatever was remaining,
15 they would pay up to $5.77. But if you charged
16 less, we would pay less.
17     Q. Has that been the case throughout 1991
18 through 2001?
19     A. Yes.
20     Q. Do you know why the dispensing fee was
21 frozen in 1994 at $5.77?
22     A. I don't recall exactly, but I would