# Exhibit 24
# Part I

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*,
Civil Action No. 01-12257-PBS

Amended Exhibit 24 to the July 24, 2009, Declaration of George B. Henderson, II
In Support of United States' Common Memorandum of Law in Support of Cross-Motions for Partial Summary Judgment and in Opposition to the Defendants' Motions for Summary Judgment

2/1/2000 – 8/6/2001

Superseded by LA 01-08

TATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
EDICAL ASSISTANCE PLAN

ATTACHMENT 4.19-B
Item 12.a., Page 2

TATE OF LOUISIANA

PAYMENT FOR MEDICAL AND REMEDIAL CARE AND SERVICES
METHODS AND STANDARDS FOR ESTABLISHING PAYMENT RATES

OTHER TYPES OF CARE OR SERVICES LISTED IN SECTION 1902(a) OF THE ACT THAT ARE INCLUDED IN THE PROGRAM UNDER THE PLAN, ARE DESCRIBED AS FOLLOWS:

STATE Louisiana
DATE REC'D 12-21-00
DATE APPV'D 11-21-00
DATE EFF 02-01-00
HCFA 179 00-08
A

CITATION 42 CFR 447 Subpart D

Medical and Remedial Care and Services
Item 12.1. (Continued)

"Multiple Source Drug" means a drug marketed or sold by two or more manufacturers or labelers or a drug marketed or sold by the same manufacturer or labeler under two or more different proprietary names or both under a proprietary name and without such a name.

"Average Wholesale Price" (AWP) means the wholesale price of a drug product as reported to Medicaid of Louisiana by one or more national compendia on a weekly basis.

"Estimated Acquisition Cost" (EAC) means the modified Average Wholesale Price of the drug dispensed and identified by the manufacturer number, product number, and package number usually purchased by a provider from a supplier whose products are generally available to all pharmacies and reported in one or more national compendia. EAC for drug products supplied through repackaging into smaller quantities by chain drugstore central purchasing shall be based on the package size purchased by the central purchasing unit. Supporting documentation (invoices) shall be made available to the agency or its designee upon request. This limitation includes drug products which are repackaged or relabled by the manufacturer or third party under any type of purchase contract or agreement. Bulk purchase practices which result in price reductions not generally available to all pharmacies shall also be subject to this limitation. If the package size is larger than the largest size listed by Medicaid of Louisiana, then EAC will be based on the largest size listed in the American Druggist Blue Book or other national compendia utilized by the State to update the Medicaid Management Information System (MMIS).

"Modified" means the lower of the following applicable limits:

AWP minus either 15% for independent pharmacies (all pharmacies not included in the chain pharmacy designation) or 16.5% for chain pharmacies (more than fifteen Medicaid enrolled pharmacies under common ownership) for:

Other Drugs not subject to LMAC limits; and
Drugs exempt from LMAC or Federal Upper Limits by physician override;

* Change to EAC

LMAC limits on multiple source drugs established by Medicaid of Louisiana as set forth below; and

Federal Upper Limits on multiple source drugs established by HCFA as set forth below.

"Maximum Allowable Overhead Cost" means the expense incurred by pharmacy providers in dispensing covered drugs as determined by Medicaid of Louisiana. Section V. of Item 12.a. describes the complete methodology utilized.

B. Federal Upper Limits (FUL) For Multiple Source Drugs

1. Except for drugs subject to "Physician Certification", Medicaid of Louisiana shall utilize listing established by HCFA that identify and set upper limits for multiple source drugs that meet the following requirements:

(a) All of the formulations of the drug approved by the Food and Drug Administration (FDA) have been evaluated as therapeutically equivalent in the most current edition of their publication, Approved Drug

TN# 00-08 Approval Date 11-21-00 Effective Date 02-01-00
Supersedes TN# 99-12

discussed, yes.
Q. What do you recall about those discussions?
A. Not much other than it is just probably -- we normally go around and do a roundtable and discuss what our reimbursement rate is and that kind of thing. So when I say discussed, that's normally what we do. How many scripts you paid for a year, what is your budget, that kind of thing.
Q. When you say what is your budget, what do you mean by that?
A. What the Medicaid programs spend on expenditures.
Q. From 1991 through 2001, which is the operative time period for which the United States is seeking damages from Abbott, how was the dispensing fee set? How was the number calculated?
MR. FAUCI: Objection, form.
THE WITNESS: In the State of Louisiana?
BY MR. TORBORG
Q. Yes.
A. As I recall, Postlethwaite & Netterville



did a dispensing cost survey. Subsequent to that, Myers and Stauffer did a dispensing cost survey.
Q. How were the result of the survey used in coming up with the dispensing fee amount?
MR. FAUCI: Objection, form.
THE WITNESS: I don't recall exactly how that occurred, but the results were used.
BY MR. TORBORG
Q. What impact does the state budget have on the dispensing fee amounts that are paid?
MR. FAUCI: Objection.
THE WITNESS: I'm not sure I understand your question.
BY MR. TORBORG
Q. Does the state budget have a set amount for dispensing fees?
MR. FAUCI: Same objection.
THE WITNESS: I would say no.
BY MR. TORBORG
Q. What the state budget provides for the Louisiana Medicaid pharmacy program, what impact, if any, does that have on the dispensing fee



amount?
A. I'm still not following your question.
Q. Well, there is a state -- the state gives you a set budget for the pharmacy program. Is that correct or not?
A. I don't believe so.
Q. Okay.
A. And that is a budget question to ask.
Q. Okay. Can you give me anymore insight into how the Postlethwaite study was used to establish fees on the dispensing fee amounts?
A. I will tell you what I remember, which is not very much, but I believe that the dispensing fee was a lower amount prior to the Postlethwaite study, and the Postlethwaite study came out and determined whatever the fee was going to be at the time and allowed for some type of factor to be applied on an annual basis to increase the dispensing fee. And it subsequently was frozen in some year, and I don't remember the year, at $5.77.
Q. Why was it frozen at $5.77?
A. Probably because of budgetary factors at

*DF $5.77 beginning 1994 (pp. 68-73)



the time.
Q. If I can ask you to take out Exhibit 326 in the binders there. Probably in the second box there to your right.
MR. TORBORG: For the record, what was marked previously as Abbott Exhibit 326 is a cover page of certain pages out of a publication that was done by the National Pharmaceutical Council, in particular, we have taken out pages that set forth the dispensing fee and ingredient reimbursement basis for the years 1990 through 2006 and made them into one exhibit.
BY MR. TORBORG
Q. Ms. Terrebonne, are you familiar with the publication that is prepared by the National Pharmaceutical Council?
A. Yes.
Q. You have had occasion to reference that in your work?
A. Yes.
Q. If we look at -- if we start with the first page in the exhibit, this is titled "Medicaid

Drug Reimbursement Report 1990." Under Louisiana, do we see the dispensing fee there of $4.41?

A. **Yes.**

Q. And then if you go to the next -- if you go two more pages, there is one also entitled "Medicaid Drug Reimbursement Report for 1990," but it has MPC1991 in the upper left-hand corner. It says Louisiana, $4.61. Do you see that?

A. **Yes.**

Q. And if we skip two more pages, for the 1992 report, it shows the dispensing fee for Louisiana of $5. Do you see that?

A. **Yes.**

Q. And 1993, if you skip a couple more past, it shows $5.30. Do you see that?

A. **Yes.**

Q. Skip another couple of pages, 1994, it shows the dispensing fee at $5.77. Do you see that?

A. **Yes.**

Q. And then if we go to the next page, you will see that it is still $5.77?

A. **Yes.**



Q. Does that refresh your recollection at all about when it was that the dispensing fee was frozen?

A. **Yes.**

Q. And your recollection as refreshed is what?

A. **1994.**

Q. If you look through the report, I think you will see it stays at $5.77 through 2002, and in 2003, if I could ask you to go to the third page from the end of the exhibit, I wanted to ask you a question about something there.

See there, under Louisiana dispensing fee, it shows $4.45, and in parentheses it says "(AVG)," and I assume that means average, to $5.77. Do you see that?

A. **No. I'm sorry --**

Q. It's the page in the upper right-hand corner, "Pharmaceutical Benefits, 2003."

You know what? You have double sided and I don't. So I think if you go to the upper right-hand corner, see where it says 2003?



A. **Okay. Yes.**

Q. There it seems to indicate for this year, 2003, a dispensing fee of $4.45 average to $5.77. Do you see that?

A. **Yes.**

Q. Do you know what that means?

A. **I have got $4.45 is our average paid dispensing fee.**

Q. And the maximum number would $5.77?

A. **Yes.**

Q. Who would get $4.45 and who would get $5.77?

A. **When providers bill, they bill their usual and customary charge, so they don't always bill $5.77.**

Q. Who gets the $4.45?

A. **That is the average when you look at the dispensing fee portion divided by the number of claims we paid.**

Q. I see. If somebody -- let me back up.

In determining how much to pay a provider to dispense drugs to a Medicaid beneficiary, you



pay ingredient cost and dispensing fee. Correct?

A. **Correct.**

Q. And the ingredient cost portion would be the lower of a series of things. Correct?

A. **Right.**

Q. If the lower -- if the provider's usual and customary charge is the lowest of that criteria, what dispensing fee would they be paid?

A. **I don't understand your question.**

Q. Okay. If Louisiana reimburses on usual and customary charge, they don't pay a separate dispensing fee; is that right? Or do they?

A. **They will go through the calculation of the ingredient cost, and whatever was remaining, they would pay up to $5.77. But if you charged less, we would pay less.**

Q. Has that been the case throughout 1991 through 2001?

A. **Yes.**

Q. Do you know why the dispensing fee was frozen in 1994 at $5.77?

A. **I don't recall exactly, but I would**

8/6/2001 - Present

'E PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
ATTACHMENT 4.19-B
Item 12.a., Page 2
:AL ASSISTANCE PLAN

.TE OF LOUISIANA

| STATE | Louisiana | |
|---|---|---|
| DATE REC'D | 08-07-01 | A |
| DATE APPV'D | 02-22-02 | |
| DATE EFF | 08-06-01 | |
| HCFA 179 | LA-01-08 | |

PAYMENT FOR MEDICAL AND REMEDIAL CARE AND SERVICES
METHODS AND STANDARDS FOR ESTABLISHING PAYMENT RATES

OTHER TYPES OF CARE OR SERVICES LISTED IN SECTION 1902(a) OF THE ACT THAT ARE INCLUDED IN THE PROGRAM UNDER THE PLAN, ARE DESCRIBED AS FOLLOWS:

CITATION 42 CFR 447 Subpart D — Medical and Remedial Care and Services Item 12.1. (Continued)

**Superseded By** 05-10

"Multiple Source Drug" means a drug marketed or sold by two or more manufacturers or labelers or a drug marketed or sold by the same manufacturer or labeler under two or more different proprietary names or both under a proprietary name and without such a name.

"Average Wholesale Price" (AWP) means the wholesale price of a drug product as reported to Medicaid of Louisiana by one or more national compendia on a weekly basis.

"Estimated Acquisition Cost" (EAC) means the modified Average Wholesale Price of the drug dispensed and identified by the manufacturer number, product number, and package number usually purchased by a provider from a supplier whose products are generally available to all pharmacies and reported in one or more national compendia. EAC for drug products supplied through repackaging into smaller quantities by chain drugstore central purchasing shall be based on the package size purchased by the central purchasing unit. Supporting documentation (invoices) shall be made available to the agency or its designee upon request. This limitation includes drug products which are repackaged or relabled by the manufacturer or third party under any type of purchase contract or agreement. Bulk purchase practices which result in price reductions not generally available to all pharmacies shall also be subject to this limitation. If the package size is larger than the largest size listed by Medicaid of Louisiana, then EAC will be based on the largest size listed in the American Druggist Blue Book or other national compendia utilized by the State to update the Medicaid Management Information System (MMIS).

change to EAC

"Modified" means the lower of the following applicable limits:

AWP minus either 13.5% for independent pharmacies (all pharmacies not included in the chain pharmacy designation) or 15% for chain pharmacies (more than fifteen Medicaid enrolled pharmacies under common ownership) for:

Other Drugs not subject to LMAC limits; and
Drugs exempt from LMAC or Federal Upper Limits by physician override;

FN#4

LMAC limits on multiple source drugs established by Medicaid of Louisiana as set forth below; and

Federal Upper Limits on multiple source drugs established by HCFA as set forth below.

"Maximum Allowable Overhead Cost" means the expense incurred by pharmacy providers in dispensing covered drugs as determined by Medicaid of Louisiana. Section V. of Item 12.a. describes the complete methodology utilized.

B. Federal Upper Limits (FUL) For Multiple Source Drugs

1. Except for drugs subject to "Physician Certification", Medicaid of Louisiana shall utilize listing established by HCFA that identify and set upper limits for multiple source drugs that meet the following requirements:

(a) All of the formulations of the drug approved by the Food and Drug Administration (FDA) have been evaluated as therapeutically equivalent in the most current edition of their publication, Approved Drug

TN# 01-08 Approval Date 02-22-02 Effective Date 08-06-01
Supersedes TN# 00-08

66

discussed, yes.
Q. What do you recall about those discussions?
**A. Not much other than it is just probably -- we normally go around and do a roundtable and discuss what our reimbursement rate is and that kind of thing. So when I say discussed, that's normally what we do. How many scripts you paid for a year, what is your budget, that kind of thing.**
Q. When you say what is your budget, what do you mean by that?
**A. What the Medicaid programs spend on expenditures.**
Q. From 1991 through 2001, which is the operative time period for which the United States is seeking damages from Abbott, how was the dispensing fee set? How was the number calculated?
MR. FAUCI: Objection, form.
THE WITNESS: In the State of Louisiana?
BY MR. TORBORG
Q. Yes.
**A. As I recall, Postlethwaite & Netterville**

67

**did a dispensing cost survey. Subsequent to that, Myers and Stauffer did a dispensing cost survey.**
Q. How were the result of the survey used in coming up with the dispensing fee amount?
MR. FAUCI: Objection, form.
THE WITNESS: I don't recall exactly how that occurred, but the results were used.
BY MR. TORBORG
Q. What impact does the state budget have on the dispensing fee amounts that are paid?
MR. FAUCI: Objection.
THE WITNESS: I'm not sure I understand your question.
BY MR. TORBORG
Q. Does the state budget have a set amount for dispensing fees?
MR. FAUCI: Same objection.
THE WITNESS: I would say no.
BY MR. TORBORG
Q. What the state budget provides for the Louisiana Medicaid pharmacy program, what impact, if any, does that have on the dispensing fee

68

amount?
**A. I'm still not following your question.**
Q. Well, there is a state -- the state gives you a set budget for the pharmacy program. Is that correct or not?
**A. I don't believe so.**
Q. Okay.
**A. And that is a budget question to ask.**
Q. Okay. Can you give me anymore insight into how the Postlethwaite study was used to establish fees on the dispensing fee amounts?
**A. I will tell you what I remember, which is not very much, but I believe that the dispensing fee was a lower amount prior to the Postlethwaite study, and the Postlethwaite study came out and determined whatever the fee was going to be at the time and allowed for some type of factor to be applied on an annual basis to increase the dispensing fee. And it subsequently was frozen in some year, and I don't remember the year, at $5.77.**
Q. Why was it frozen at $5.77?
**A. Probably because of budgetary factors at**

* DF $5.77 beginning 1994 (pp. 68-73)

69

**the time.**
Q. If I can ask you to take out Exhibit 326 in the binders there. Probably in the second box there to your right.
MR. TORBORG: For the record, what was marked previously as Abbott Exhibit 326 is a cover page of certain pages out of a publication that was done by the National Pharmaceutical Council, in particular, we have taken out pages that set forth the dispensing fee and ingredient reimbursement basis for the years 1990 through 2006 and made them into one exhibit.
BY MR. TORBORG
Q. Ms. Terrebonne, are you familiar with the publication that is prepared by the National Pharmaceutical Council?
**A. Yes.**
Q. You have had occasion to reference that in your work?
**A. Yes.**
Q. If we look at -- if we start with the first page in the exhibit, this is titled "Medicaid

Drug Reimbursement Report 1990." Under Louisiana, do we see the dispensing fee there of $4.41?
A. Yes.
Q. And then if you go to the next -- if you go two more pages, there is one also entitled "Medicaid Drug Reimbursement Report for 1990," but it has MPC1991 in the upper left-hand corner. It says Louisiana, $4.61. Do you see that?
A. Yes.
Q. And if we skip two more pages, for the 1992 report, it shows the dispensing fee for Louisiana of $5. Do you see that?
A. Yes.
Q. And 1993, if you skip a couple more past, it shows $5.30. Do you see that?
A. Yes.
Q. Skip another couple of pages, 1994, it shows the dispensing fee at $5.77. Do you see that?
A. Yes.
Q. And then if we go to the next page, you will see that it is still $5.77?
A. Yes.



Q. Does that refresh your recollection at all about when it was that the dispensing fee was frozen?
A. Yes.
Q. And your recollection as refreshed is what?
A. 1994.
Q. If you look through the report, I think you will see it stays at $5.77 through 2002, and in 2003, if I could ask you to go to the third page from the end of the exhibit, I wanted to ask you a question about something there.
See there, under Louisiana dispensing fee, it shows $4.45, and in parentheses it says "(AVG)," and I assume that means average, to $5.77. Do you see that?
A. No. I'm sorry --
Q. It's the page in the upper right-hand corner, "Pharmaceutical Benefits, 2003."
You know what? You have double sided and I don't. So I think if you go to the upper right-hand corner, see where it says 2003?



**A. Okay. Yes.**
Q. There it seems to indicate for this year, 2003, a dispensing fee of $4.45 average to $5.77. Do you see that?
**A. Yes.**
Q. Do you know what that means?
**A. I have got $4.45 is our average paid dispensing fee.**
Q. And the maximum number would $5.77?
**A. Yes.**
Q. Who would get $4.45 and who would get $5.77?
**A. When providers bill, they bill their usual and customary charge, so they don't always bill $5.77.**
Q. Who gets the $4.45?
**A. That is the average when you look at the dispensing fee portion divided by the number of claims we paid.**
Q. I see. If somebody -- let me back up.
In determining how much to pay a provider to dispense drugs to a Medicaid beneficiary, you



pay ingredient cost and dispensing fee. Correct?
**A. Correct.**
Q. And the ingredient cost portion would be the lower of a series of things. Correct?
**A. Right.**
Q. If the lower -- if the provider's usual and customary charge is the lowest of that criteria, what dispensing fee would they be paid?
**A. I don't understand your question.**
Q. Okay. If Louisiana reimburses on usual and customary charge, they don't pay a separate dispensing fee; is that right? Or do they?
**A. They will go through the calculation of the ingredient cost, and whatever was remaining, they would pay up to $5.77. But if you charged less, we would pay less.**
Q. Has that been the case throughout 1991 through 2001?
**A. Yes.**
Q. Do you know why the dispensing fee was frozen in 1994 at $5.77?
**A. I don't recall exactly, but I would**

**From:** "Rachel Broussard" <RBroussa@dhh.la.gov>
**To:** "Judith Becherer" <Jbecherer@MSLC.COM>
**CC:** "M J TERREBONNE" <MTERREBO.MVA-PRIM-PO01.DHH-BTR-DO01@dhh.la.gov>
**Date:** 10/21/2008 10:49 AM
**Subject:** Re: Medicaid Pharmacy Pricing Follow-Up

** Low Priority **

Judith,

Louisiana Medicaid reimburses TPN at 80% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

TPN supplies are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

TPN infusion pumps are reimbursed at 70% of the Medicare Fee Schedule amount or billed charges, whichever is the lesser amount.

*FN#6 (See next page for start date)

Thanks,

Rachel Broussard, RPh
Louisiana Medicaid
Pharmacy Benefits Management Unit
225-342-9768
225-342-1980 (fax)
rbroussa@dhh.la.gov

PRIVACY AND CONFIDENTIALITY WARNING
This E-mail may contain Protected Health Information, Individually Identifiable Health Information and other information which is protected by law. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this E-mail and any attachments thereto, is strictly prohibited. If you have received this E-mail in error, please notify the sender immediately and destroy the contents of this E-mail and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

>>> "Judith Becherer" <Jbecherer@MSLC.COM> 10/13/2008 6:46 PM >>>
MJ,

Thank you for the information. Can you please advise how TPN are reimbursed and during what time period(s)? Regarding your question about U.S. DOJ pricing, DOJ prices were implemented by a number of states after a DOJ study that identified specific revised AWP prices for some drugs.

Once I hear from you, I will complete the revision and return it to you for final approval.

Judith

Judith E. Becherer
Health Policy Consultant
Myers and Stauffer, LC
Certified Public Accountants
9265 Counselors Row, Suite 200
Indianapolis, Indiana 46240-6419

---

From: "Rachel Broussard" <RBroussa@dhh.la.gov>
To: "Judith Becherer" <jbecherer@MSLC.COM>
CC: "M J TERREBONNE" <MTERREBO@dhh.la.gov>
Date: Thursday - October 23, 2008 2:40 PM
Subject: Re: Medicaid Pharmacy Pricing Follow-Up

---

** Low Priority **

Judith,

The policy was effective in the pharmacy program effective 7-1-2005. Prior to 7-1-2005, Louisiana Medicaid DME program handled the TPN. * FN#6

Thanks,

Rachel Broussard, RPh
Louisiana Medicaid
Pharmacy Benefits Management Unit
225-342-9768
225-342-1980 (fax)
rbroussa@dhh.la.gov

PRIVACY AND CONFIDENTIALITY WARNING
This E-mail may contain Protected Health Information, Individually Identifiable Health Information and other information which is protected by law. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this E-mail and any attachments thereto, is strictly prohibited. If you have received this E-mail in error, please notify the sender immediately and destroy the contents of this E-mail and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

>>> "Judith Becherer" <jbecherer@MSLC.COM> 10/21/2008 10:28 AM >>>
Can you please advise when this policy became effective, and what if any policy preceded it (and for what time periods?).
Thanks, Judith

Q. Well, the AMP FUL rule has not been implemented, correct?

A. **Correct.**

Q. There is an injunction in federal court preventing it, correct?

A. **Correct.**

Q. Today, what is Louisiana paying as a dispensing fee?

A. **The maximum is $5.77.**

Q. So, because CMS has not approved it, you have not implemented that in the program?

A. **Correct.**

Q. The legislature told you not to implement it until you got approval from CMS?

A. **Correct.**

Q. Has CMS indicated to you that they may approve the plan if the EAP rule goes into effect?

A. **They have not.**

Q. Have they drawn -- have they stated to you that approval of your increase in dispensing fees would be tied to whether or not the AMP rule goes into effect?

* Present DF

A. I do not.
Q. In this time frame?
A. I do not.
Q. It has been something that has been discussed more recently in connection with the AMP proposal?
A. Have dispensing fees been discussed more recently? Yes.
Q. Do you recall conversations earlier than that about the potential need to reduce the dispensing fee if there is a reduction in the ingredient side?
A. Not recently.
Q. Something that could have been discussed, you just don't recall?
A. We haven't discussed it in quite some time, since the implementation of the $5.77 and the AWM minus 13 and a half and 15.

* Present EAC

Q. But here we have -- this is a communication amongst state pharmacies that talks directly about the potential need to increase the dispensing fee if reimbursement is reduced to AAC.