# Exhibit 187

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp. et al.*
Civil Action No. 07-10248-PBS
Exhibit to the September 22, 2009, Supplemental Declaration of James J. Fauci
In Support of Plaintiff's Motion for Partial Summary Judgment and
In Opposition to the Roxane Defendants' Motion For Partial Summary Judgment



## Federal Trade Commission
### Protecting America's Consumers

For Release: December 21, 1998

# Mylan, Nation's Second Largest Generic Drug Maker, Charged with Restraint of Trade, Conspiracy & Monopolization

### Illegal Conduct Resulted in Price Increases of up to 3000 Percent for Two Anti-anxiety Drugs, FTC Alleges; Agency to Seek $120 Million in Consumer Refunds

Mylan Laboratories, Inc., the nation's second largest generic drug manufacturer, and three other companies, were charged today by the Federal Trade Commission with restraint of trade, monopolization and conspiracy to monopolize the markets for two widely-prescribed anti-anxiety drugs, lorazepam and clorazepate. The illegal activity allowed Mylan to dramatically increase the price of the two drugs used by millions of Americans, the Commission alleged. In January of this year, the company raised the wholesale price of clorazepate from $11.36 to approximately $377.00 per bottle of 500 tablets. And, in March, the wholesale price of lorazepam went from $7.30 for a bottle of 500 tablets to approximately $190.00. The FTC's complaint, which will be filed in U.S. District Court, seeks at least $120 million from Mylan and the other defendants -- an estimate of the ill-gotten gains resulting from the illegal conduct. Where possible, the agency said, it would restore to consumers the monetary harm they have suffered. Attorneys General from 10 states announced that they intend to file a similar complaint seeking damages and other relief.

"Mylan's outrageous price increases have cost consumers at least $120 million in higher prices," said William J. Baer, Director of the FTC's Bureau of Competition. "But the monetary harm that Mylan and others caused is only half the story. Mylan made its enormous profits on drugs that are used to treat anxiety and hypertension and are widely-prescribed to treat the elderly and infirm. Consumers take lorazepam and clorazepate for long periods of time and it can be dangerous to discontinue their treatment too quickly. Mylan's illegal conduct deprived some consumers of access to these important drugs and put some consumers' health at risk."

"Generic pharmaceutical firms have been the leaders in bringing low priced drugs to the market. Competition among generic firms brings substantial benefits to consumers and this competition saves consumers several billion dollars annually," Baer explained. "Our enforcement action today seeks to preserve competition among these firms so that consumers continue to have low priced alternatives to these critical drugs."

The FTC's complaint will charge that Mylan, Cambrex Corporation, Profarmaco S.R.L., and Gyma Laboratories of America, Inc., violated the FTC Act when they conspired to obtain monopoly power for Mylan in the generic lorazepam and clorazepate tablets markets in the United States. The complaint also will charge monopolization of and restraint of trade in the markets through exclusive licensing arrangements for the supply of the raw materials necessary to produce lorazepam and clorazepate tablets.

Generic drugs are chemically identical versions of branded drugs that are marketed after the patent on the branded drug has expired, the agency's complaint states. Firms that manufacture and market generic drugs often specialize in such drugs, although Mylan manufactures both generic and branded drugs. Generic drugs typically are sold at substantial discounts from the price of branded drugs, the agency said.

Generic drug manufacturers require the approval of the U.S. Food and Drug Administration to market a

generic product. Typically, the company purchases an active pharmaceutical ingredient ("API") -- the chemical that allows the drug to affect the body -- from a specialty chemical manufacturer.

Lorazepam and clorazepate are two of the approximately 87 generic drugs that Mylan currently manufactures and sells in tablet form. Lorazepam, the generic version of Ativan, is used to treat anxiety, tension, agitation, and insomnia, and as a preoperative sedative. Doctors issue over 18 million prescriptions a year for lorazepam. Clorazepate, the generic version of Tranxene, is used to treat anxiety, as well as hypertension, and in adjunct therapy for nicotine and opiate withdrawal. Doctors issue over three million clorazepate prescriptions a year.

Mylan, located in Pittsburgh, Pa., develops, licenses, manufactures, markets, and distributes generic and propriety pharmaceutical and wound care products. In the 12 months ending March 31, 1998, Mylan had revenues of $555.4 million and net income of $100.7 million.

Cambrex, located in East Rutherford, N.J., manufactures and sells chemicals for pharmaceuticals, cosmetics, agriculture, and other industrial uses. In 1997, Cambrex had revenues of $380 million and net income of $17.8 million. Profarmaco, a wholly-owned subsidiary of Cambrex, is based in Milan, Italy. Profarmaco manufactures chemicals, including APIs, and sells them to drug manufacturers in the United States. Cambrex has ultimate control over the activities of Profarmaco, the FTC said.

Gyma, located in Westbury, N.Y., sells APIs and other chemicals to the pharmaceutical industry. In 1997, Gyma had sales of approximately $91 million. It is Profarmaco's distributor in the United States. It buys APIs from Profarmaco and other firms and resells them to generic drug manufacturers in the United States.

The agency's complaint will charge that Mylan sought to obtain an exclusive license for certain APIs and thereafter increased the prices on several generic drugs made from those APIs. The effect of the exclusive license was to prevent any other generic drug manufacturer from using that suppliers API to sell that drug in the United States. The exclusive license would thereby exclude some or all of its competitors from the market and it would be easier to raise prices.

On January 12, 1998, despite no significant increase in its costs, Mylan raised its prices of clorazepate tablets to wholesalers, retail pharmacy chains, and other customers by amounts ranging from 1,935 percent to 3,219 percent, depending on bottle size and strength. On March 3, 1998, Mylan raised its price of lorazepam tablets by amounts ranging from 1,940 percent to 2,682 percent, depending on the bottle size and strength. Mylan's competitors matched Mylan's price increases for lorazepam and clorazepate tablets.

In addition to the conspiracy and monopolization charges, the complaint will allege that Mylan attempted to monopolize the markets for lorazepam and clorazepate tablets and that the two exclusive license agreements were unreasonable restraints of trade. The Commission's complaint will seek to enjoin the alleged illegal agreements as well as obtain monetary relief.

The Commission has established a **Consumer Information Line (202) 326-2204** for those wanting up-to-date information about the FTC's case against Mylan and three other companies. Consumers wishing to write the Commission about the cases can e-mail the agency at mylan@ftc.gov (no period).

The Commission vote to authorize the staff to file the complaint was 4-0. The complaint will be filed in U.S. District Court for the District of Columbia.

Attorneys General from Connecticut, Florida, Illinois, Minnesota, New York, Ohio, North Carolina, Pennsylvania, West Virginia and Wisconsin will file a complaint in U.S. District Court for the District of Columbia. (See attached list for state contacts.)

**NOTE:** The Commission files a complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. The complaint is not a

finding or ruling that the defendant has actually violated the law. The case will be decided by the court.

**Copies** of the news release and **memorandum opinion** are available from the FTC's web site at *http://www.ftc.gov* and also from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580; 202-FTC-HELP (202-382-4357); TDD for the hearing impaired 1-866-653-4261. To find out the latest news as it is announced, call the FTC NewsPhone recording at 202-326-2710.

**Media Contact:**

Victoria Streitfeld,
*Office of Public Affairs*
202-326-2180

(FTC File No. 9810145)

**E-mail this News Release**
If you send this link to someone else, the FTC will not collect any personal information about you or the recipient.

| Related Documents: |
|---|
| |

Last Modified: Monday, 25-Jun-2007 16:08:00 EDT