# Exhibit 6

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------X

In Re: PHARMACEUTICAL INDUSTRY     ) MDL No. 1456

AVERAGE WHOLESALE PRICE LITIGATION) CIVIL ACTION:

---------------------------------X 01-CV-12257-PBS

THIS DOCUMENT RELATES TO:          )

U.S. ex rel. Ven-A-Care of the     ) Judge Patti B.

Florida Keys, Inc., v. Abbott      ) Saris

Laboratories, Inc., No.            )

06-CV-11337-PBS; U.S. ex rel.      ) Magistrate Judge

Ven-A-Care of the Florida Keys,    ) Marianne Bowler

Inc. v. Abbott Laboratories, Inc.,)

No. 07-CV-11618-PBS; U.S. ex rel. )

Ven-A-Care of the Florida Keys,    )  DEPOSITION OF

Inc. v. Dey, Inc., et al., No.     )   JERRY WELLS

05-11084-PBS; U.S. ex rel.         )

Ven-A-Care of the Florida Keys,    ) DECMEBER 15, 2008

Inc., et al. v. Boehringer         )  TALLAHASSEE, FL

Ingelheim Corp., et al., No.       )

07-10248-PBS                       )

---------------------------------X

Page 2

1            VIDEOTAPED DEPOSITION OF
2                  JERRY WELLS
3       Taken on behalf of Abbott Laboratories
4
5           Monday, December 15, 2008
6             Commencing at 9:18 a.m.
7             Concluding at 4:43 p.m.
8
9                 Holland & Knight
10      315 South Calhoun Street, Suite 600
11                Tallahassee, Florida
12   Reported by Barbara J. Memory, RPR, CCR B-2036
13
14
15
16
17
18
19
20
21
22

Wells, Jerry              PORTIONS HIGHLY CONFIDENTIAL December 15, 2008
                                    Tallahassee, FL

Page 115

1       Q.   Yes.  So is it more accurate to say
2   that you don't recall whether you did or didn't?
3            MS. ST. PETE-GRIFFITH:  Object to the
4   form.
5            THE WITNESS:  In the 1980s, I don't
6   recall whether I did or didn't.
7   BY MR. COOK:
8       Q.   Do you recall whether you had this
9   understanding of pricing for injectable products
10  and associated intravenous fluids as of 1992 when
11  you returned to the Medicaid program?
12      A.   I don't know how to answer that
13  question accurately, because I had worked for
14  manufacturers.  I knew that there were special
15  prices for non-profit hospitals, which, I think,
16  nobody objected to.  And -- but they didn't make
17  their way into the retail marketplace.
18           I had -- when I returned to Medicaid in
19  1992, I had been working for the Department of
20  Health and managing the county public health unit
21  pharmacies, and I was aware of 340B pricing,
22  which nobody objected to.  And I was aware of

Page 254

1    Q.   Did you ask them?
2    A.   No.
3    Q.   Why not?
4    A.   Why should I?  I don't ask Eckerd or
5    Walgreens what kind of profit they're making.
6    Q.   You'll agree with me -- well, let me
7    ask you: Would it have assisted you in
8    administrating the Florida Medicaid to know what
9    it was that providers were actually paying for
10   infusion and IV products?
11            MR. BREEN:  Objection, form.
12            THE WITNESS:  It was always our goal to
13   be able to set reimbursement levels according to
14   the guidelines we were given by the state
15   legislature and by the feds, and to that end, it
16   was our desire to know what true cost was.
17   BY MR. COOK:
18   Q.   You'll agree with me that one way to
19   determine true cost would have been to ask
20   providers such as Ven-a-Care what their cost was,
21   right?
22            MS. ST. PETER-GRIFFITH:  Object to the

812a0173-a18d-4a8c-ab7c-e36f57f53cf3