# Exhibit 8

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------X

| | |
|---|---|
| IN RE: PHARMACEUTICAL | ) MDL No. 1456 |
| INDUSTRY AVERAGE WHOLESALE | ) Master File No. |
| PRICE LITIGATION | ) 01-CV-12257-PBS |
| ---------------------------) | Subcategory Case |
| THIS DOCUMENT RELATES TO: ) | No. 06-11337 |
| United States of America ex ) | |
| rel. Ven-A-Care of the ) | Hon. Patti B. Saris |
| Florida Keys, Inc., et al. ) | |
| v. Dey, Inc., et al., Civil ) | |
| Action No. 05-11084-PBS, and) | VIDEOTAPED DEPOSITION |
| United States of America ex ) | OF THE INDIANA FAMILY |
| rel. Ven-A-Care of the ) | AND SOCIAL SERVICES |
| Florida Keys, Inc., et al. ) | ADMINISTRATION by |
| v. Boehringer Ingelheim ) | CARL MARK |
| Corp., et al., Civil Action ) | SHIRLEY, R.Ph. |
| No. 07-10248-PBS ) | VOLUME I |

---------------------------X

DECEMBER 2, 2008

INDIANAPOLIS, INDIANA

Page 2

1  The videotaped deposition upon oral examination
2  of CARL MARK SHIRLEY, R.Ph., a witness produced and
3  sworn before me, Dana S. Miller, RPR, CRR, Notary
4  Public in and for the County of Hendricks, State of
5  Indiana, taken on behalf of the Defendants Dey and
6  Defendant Abbott at the Hilton Indianapolis North
7  Hotel, 8181 North Shadeland Avenue, Indianapolis,
8  Indiana, on December 2, 2008, at 9:07 a.m.,
9  pursuant to the Federal Rules of Civil Procedure.
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 242

1    information that was available back then.  It
2    makes sense that as part of our overall analysis
3    of the possibility of moving that way, there
4    would have been some information as to how
5    providers typically acquire generic drugs.
6         Q.   Was it Indiana's intent to move
7    reimbursement for generic drugs -- ingredient-
8    cost reimbursement for generic drugs to a level
9    consistent with what it believed pharmacies were
10   acquiring pharmaceutical products?  That is, was
11   it trying to make AWP minus 20 approximate
12   average acquisition cost?
13        A.   I think our goal always has been to
14   have our product reimbursement as much in line
15   with the federal EAC as possible.
16        Q.   What is --
17        A.   The federal EAC is federal estimated
18   acquisition cost.
19        Q.   And what did Indiana do in -- at this
20   time to try to align its EAC reimbursement with
21   federal EAC reimbursement?
22        A.   What this shows is that AWP went for --

1   excuse me, EAC for brand-name drugs went from AWP
2   minus 10 to AWP minus 13 1/2.
3           And then in addition, for generic drugs
4   as opposed to reimbursing for generic drugs at
5   AWP minus 13 1/2, it was moving to AWP minus 20
6   percent, which would be a better, apparently,
7   approximation of EAC.
8       Q.   And what is EAC, if you could just
9   quickly --
10      A.   EAC is defined in federal law.  It's
11  the agency's best estimate of what providers pay
12  for drugs.
13      Q.   And so was AWP minus 20 percent
14  Indiana's best estimate for the price at which
15  providers were acquiring generic drugs at the
16  time?
17      A.   Apparently there would have been some
18  information that would have led the agency to
19  accept AWP minus 20 percent as the agency's best
20  estimate for EAC.
21      Q.   But you have no knowledge that the
22  agency in fact believed --

Page 244

1   A.   I have no specifics.
2   Q.   -- that -- okay, thank you. Can I just
3   quickly ask you to review the second point on
4   this page, non-leaven -- pardon me, that's my
5   inner Jew shining through. It's not quite
6   Passover yet. The non-legend over-the-counter
7   drug medical supplies paragraph.
8              (Witness complied with request.)
9   Q.   I guess I'll pose the question and
10  allow you to continue reviewing the paragraph.
11             It appears that one of the pricing
12  metrics permitted on non-legend pharmaceutical
13  products is that a pharmacy may be reimbursed at
14  AWP minus 150 percent; is that correct?
15  A.   No, that's not correct.
16  Q.   I'm not sure I understand. What --
17  A.   You said --
18  Q.   I'm sorry.
19  A.   -- AWP minus 150 percent.
20  Q.   I'm absolutely incorrect. At 150
21  percent --
22  A.   Yes.

Page 359

1   buying albuterol at AWP?
2        A.   If that's what the report stated.
3        Q.   Does Indiana have a definition of
4   average wholesale price separate and apart from
5   any guidance from the federal government?
6        A.   Not that I'm aware of.
7        Q.   Nothing in statute regulation or
8   otherwise?
9        A.   Not that I'm aware of.
10       Q.   Thank you.
11            MR. JULIE:  I don't have any time left,
12  do I?
13            VIDEOGRAPHER:  One minute.
14            MR. JULIE:  I'll save it.  Thank you.
15            VIDEOGRAPHER:  This concludes today's
16  testimony in the deposition of Mr. Shirley
17  consisting of seven tapes in total.  We're off
18  the record at 5:34.
19            AND FURTHER THE DEPONENT SAITH NOT
20
21
22