# Exhibit 10

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

IN RE PHARMACEUTICAL INDUSTRY

AVERAGE WHOLESALE PRICE

LITIGATION

_____/

THIS DOCUMENT RELATES TO         MDL No. 1456

State of California, ex rel.     Civil Action:

Ven-A-Care v. Abbott             01-12258-PBS

Laboratories, Inc., et al.

_____/


--oOo--

TUESDAY, SEPTEMBER 23, 2008

--oOo--

VIDEOTAPED DEPOSITION OF

DOUGLAS B. HILLBLOM

--oOo--


Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

              Registered Merit Reporter

Hillblom, Douglas B.                                   September 23, 2008
                         Sacramento, CA

                                                                  Page 2
 1      APPEARANCES:
 2              For the STATE OF CALIFORNIA:
 3                  BUREAU OF MEDI-CAL FRAUD & ELDER ABUSE
 4                  BY:   NICHOLAS N. PAUL
 5                      Supervising Deputy Attorney
 6                      General
 7                  Civil Prosecutions Unit
 8                  P.O. Box 85266
 9                  110 West A Street, #1100
10                  San Diego, California  95186
11                  619.688.6099
12                  nicholas.paul@doj.ca.gov
13                          and
14                  BUREAU OF MEDI-CAL FRAUD & ELDER ABUSE
15                  BY:   THOMAS A. TEMMERMAN
16                      Senior Assistant Attorney GGeneral
17                  Chief Prosecutor
18                  1425 River Park Drive, Suite 300
19                  Sacramento, California  95815
20                  916.274.2942
21                  tom.temmerman@doj.ca.gov
22

Hillblom, Douglas B.                                September 23, 2008
                              Sacramento, CA

Page 93

1  discussions where the concept of using invoices as
2  a basis for reimbursement for pharmacy dispensed
3  prescription drugs was the topic of conversation?
4       A.   Not what I would call a "discussion" --
5  a flippant remark maybe.
6       Q.   By whom?
7       A.   I can't recall.
8       Q.   Did you ever make that kind of a
9  flippant remark?
10      A.   Not that I recall.
11      Q.   Recall ever considering why it wasn't --
12 why wasn't it possible to reimburse prescription
13 drugs on the same basis as blood clotting factors,
14 for example?
15           MR. PAUL:  Objection to form.
16           THE WITNESS:  Pharmacy reimbursement is a
17 multi-component item.
18           Cost of the drug product is only one
19 component.
20 BY MR. BUEKER:
21      Q.   The other component is dispensing fee;
22 correct?

Page 94

1        A.    Correct.
2        Q.    And that's a rate that was set
3   independently of the ingredient cost reimbursement
4   rate; is that fair?
5        A.    Yes.
6        Q.    And together the two had to total
7   something that the Department considered
8   reasonable; right?
9        A.    Yes.
10       Q.    But in terms of the actual calculation
11  of the two components, the calculation of the two
12  components, that portion of it was done separately?
13       A.    Yes.
14       Q.    So it would have been possible to
15  calculate the ingredient cost rates in a -- in a
16  different way?
17            MR. PAUL:  Objection to form.
18            THE WITNESS:  Could you please clarify
19  what you mean by "different form."
20  BY MR. BUEKER:
21       Q.    Yeah.
22            It would have been possible to calculate

Hillblom, Douglas B.                                September 23, 2008
                         Sacramento, CA

Page 348

1    Q.   To your knowledge did the -- during your
2    time at the Department of Health Services did the
3    Department of Health Services have an expectation
4    that drug manufacturers would report the AWPs to
5    First DataBank honestly and truthfully?
6              MR. BUEKER:  Objection to form.
7              MS. BERWANGER:  Objection to form.
8              MR. ROBBEN:  I thought he wasn't a
9    30(b)(6) witness.
10             THE WITNESS:  My understanding is that
11   the expectation of the Department was that the --
12   the data supplied was the appropriate data, that it
13   was accurate.
14   BY MR. PAUL:
15   Q.   To your knowledge has any pharmaceutical
16   manufacturer ever sent -- during your tenure at DHS
17   ever sent DHS written information stating what the
18   manufacturer's AWP was based on?
19   A.   No.
20   Q.   So that would -- your answer would
21   obviously apply to Mylan, Sandoz, Geneva, Dey,
22   Warrick, and Schering, since they're drug