# Exhibit 15

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 1

```
              UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

IN RE:  PHARMACEUTICAL        )  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE    )  CIVIL ACTION

PRICE LITIGATION              )  01-CV-12257-PBS

THIS DOCUMENT RELATES TO      )

U.S. ex rel. Ven-a-Care of    )  Judge Patti B. Saris

the Florida Keys, Inc.        )

     v.                       )  Chief Magistrate

Abbott Laboratories, Inc.,    )  Judge Marianne B.

No. 06-CV-11337-PBS           )  Bowler

- - - - - - - - - - - - - - - -

         (captions continue on following pages)




       Videotaped deposition of FRANK T. TETKOSKI



                    Baltimore, Maryland

                    Thursday, December 11, 2008

                    9:00 a.m.
```

Page 2

1

2

3

4        Videotaped deposition of FRANK T. TETKOSKI, held

5   at the Renaissance Baltimore Harborplace Hotel, 202

6   East Pratt Street, Baltimore, Maryland 21202, the

7   proceedings being recorded stenographically by

8   Jonathan Wonnell, a Registered Professional Court

9   Reporter and Notary Public of the State of Maryland,

10  and transcribed under his direction.

11

12

13

14

15

16

17

18

19

20

21

22

Tetkoski, Frank T.                                    December 11, 2008
                        Baltimore, MD

                                                              Page 146

1                A F T E R N O O N   S E S S I O N

2                                                      (1:44 p.m.)

3                           *   *   *   *   *

4              Whereupon,

5                    FRANK T. TETKOSKI,

6            the witness testifying at the time of

7        recess, having been previously duly sworn,

8        was further examined and testified as

9        follows.

10                          *   *   *   *   *

11              THE VIDEOGRAPHER:  This is the beginning of

12   tape 3 in the deposition of Frank Tetkoski.  On the

13   record at 1:44.

14   EXAMINATION RESUMED BY COUNSEL FOR ABBOTT LABORATORIES

15              BY MR. TORBORG:

16        Q.    Welcome back, Mr. Tetkoski.

17        A.    Thank you.

18        Q.    You stated at the end of our last session

19   before we took a break that you believed that any

20   margin would be unacceptable on ingredient cost

21   payments; is that right?

22              MS. YAVELBERG:  Objection, form.

Tetkoski, Frank T.                                December 11, 2008
                        Baltimore, MD

Page 147

1   A.   With the idea being that they should be
2   separate, that ingredients should be reimbursed
3   separately from dispensing fee.
4   Q.   Is it your testimony that any margin paid
5   on the ingredient side, for whatever reason, is in
6   violation of federal regulations?
7           MS. YAVELBERG:  Objection, form.
8   A.   I think it's a practical aspect there.
9   It's impossible, I guess, to pay exactly.  So you have
10  to do your best on that.  But your goal should be to
11  pay as close as possible for the ingredient cost.
12  Q.   And you've had discussions within the
13  department, have you not, that it would be necessary
14  at least to have some profit in order to keep
15  providers in the system, right?
16          MS. YAVELBERG:  Objection, form.
17  A.   Profit?  Pharmacies have to make a profit I
18  guess to stay in business.  I guess if you have to err
19  on one side, you could probably err on slightly
20  overpaying if you had to err.
21  Q.   And you were around the department when --
22  and we'll get into this documents later, but you were

Page 186

1      A.   No, I really don't.
2      Q.   Under the section comments these minutes
3  indicate "We presented the results of our AWP review.
4  State officials believed that our results were in line
5  with what they had anticipated and confirmed that
6  current state practices of reimbursing ingredient cost
7  below AWP was appropriate."  Do you see that?
8      A.   Below AWP, yeah.
9      Q.   Do you recall that OIG's findings were
10 consistent with your expectations?
11          MS. YAVELBERG:  Objection, form.
12     A.   Looking back on it I guess if you're
13 looking for numeric, I think in my mind I had maybe
14 around minus 13 or 14 or 15 and it turned out to be
15 the minus 18 for your retail pharmacies.  So looking
16 back we knew it would be below AWP, but I think the
17 little surprise was that -- yeah, it was a little more
18 than we thought.
19     Q.   How about for generics?  They had found I
20 think on the national level AWP minus about 42 and a
21 half.  Was that a surprise to you?
22     A.   I knew generics would be more.  I don't

Tetkoski, Frank T.  December 11, 2008
Baltimore, MD

Page 187

1  know what the statistical amount is.  But there seems
2  to be with brand names more consistency.  With
3  generics there doesn't seem to be the consistency
4  there, if you know what I'm getting at.  So generics
5  you knew they were off.  Yeah, the number was a
6  surprise I guess being that much, this average.
7      Q.   And OIG had said the average was AWP minus
8  I think 42.5, right?
9      A.   (Nods head).
10     Q.   And Maryland was AWP minus 41.9, right?
11     A.   What --
12     Q.   I think the Maryland-specific findings were
13 AWP minus 41.9 percent for generics?
14     A.   For Maryland.  Something like that.  Pretty
15 close.
16     Q.   And you knew that there would be generic
17 products where the discount was less than 42 percent,
18 right?
19     A.   If that's an average, yes.
20     Q.   And you knew that there would be products
21 that had discounts of higher than 42 percent, right?
22     A.   Right.