# Exhibit 19

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 265

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

| | |
|---|---|
| IN RE:  PHARMACEUTICAL | ) MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | ) CIVIL ACTION |
| PRICE LITIGATION | ) 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO | ) |
| U.S. ex rel. Ven-a-Care of | ) Judge Patti B. Saris |
| the Florida Keys, Inc. | ) |
| v. | ) Chief Magistrate |
| Abbott Laboratories, Inc., | ) Judge Marianne B. |
| No. 06-CV-11337-PBS | ) Bowler |

- - - - - - - - - - - - - - - -

(captions continue on following pages)

Videotaped deposition of CHARLES R. BOOTH

Volume II

Washington, D.C.

Monday, October 29, 2007

10:00 a.m.

Charles R. Booth                                          October 29, 2007
                         Washington, DC

                                                                Page 266

 1                IN THE CIRCUIT COURT OF
 2              MONTGOMERY COUNTY, ALABAMA
 3    - - - - - - - - - - - - - - - - - -
 4    STATE OF ALABAMA,                    )
 5              Plaintiff,                 )
 6       vs.                               ) Case No. CV-05-219
 7    ABBOTT LABORATORIES, INC.,           ) Judge Charles Price
 8    et al.,                              )
 9              Defendants.                )
10    - - - - - - - - - - - - - - - - - -
11
12
13          STATE OF WISCONSIN CIRCUIT COURT
14                   DANE COUNTY
15    - - - - - - - - - - - - - - - - - -
16    STATE OF WISCONSIN,                  )
17              Plaintiff,                 )
18       vs.                               ) CASE NO. 04-CV-1709
19    AMGEN INC., et al.,                  )
20              Defendants.                )
21    - - - - - - - - - - - - - - - - - -
22

                    Henderson Legal Services
                        202-220-4158

432ce50a-616b-406d-b9bd-d3b4c631b461

Charles R. Booth                                          October 29, 2007
                          Washington, DC

Page 306

1    Q.    Well, yeah.  Let me break it down a
2    little bit.
3          If the surveys had shown that physicians
4    purchased at a wide range of prices or a wide range
5    of price points, how was it that CMS or the carriers
6    would go about determining where in that range to
7    establish an allowable amount?
8          MR. GOBENA:  Objection, form.
9    A.    If the range were wide, I don't know.  We
10   expected in most instances that the range would be
11   fairly narrow, but always lower than the average
12   wholesale price.  And the range might be different
13   for pharmacist versus physicians, for example.  But
14   since we never really got the surveys we never found
15   out.
16   Q.    And so did you expect the range to be the
17   same for generics or multiple source drugs as
18   opposed to single source products?
19   A.    I don't think I ever reflected on that
20   question.
21   Q.    But you expected that the range could
22   vary from one product to another, correct?

Page 310

1   A.  And we were the ones who would be setting
2   the initial changes in price were they to be made.
3   Q.  To your knowledge did anybody else within
4   the Office of Payment Policy have any expectation
5   between what acquisition costs should be and what
6   AWPs should be?
7         MR. GOBENA:  Objection, form.
8   A.  I have no idea.
9   Q.  And so certainly nobody expressed to you
10  an expectation that there would be some relationship
11  between acquisition cost and AWP?
12        MR. GOBENA:  Objection, form.
13  A.  I certainly don't remember any.
14  Q.  Did that change over time?
15  A.  No.
16  Q.  And that would mean that your
17  expectations -- your lack of expectations didn't
18  change over time, correct?
19  A.  I had no idea what the relationship would
20  be between the cost to a physician or a pharmacist
21  of a particular drug and AWP.
22  Q.  Were you involved at all in the attempt

Page 311

1    to use surveys to establish an estimated acquisition
2    cost after the promulgation of the regulations in
3    November of 1991?
4         A.    Yes.
5         Q.    What was your involvement?
6         A.    We reviewed some of the drugs that we
7    thought would be appropriate for surveys.  And I
8    reviewed a proposed survey instrument.
9         Q.    We'll look at some documents relating to
10   this.  But to fast forward a little bit, the surveys
11   were never implemented as I recall, correct?
12        A.    That is correct.
13        Q.    Why were they never implemented?
14        A.    Because we did not get approval from the
15   Office of Management and Budget to conduct them.
16        Q.    Do you know why the Office of Management
17   and Budget did not approve the surveys?
18              MR. GOBENA:  Objection, form.
19        A.    I do not.
20        Q.    Do you know who at the Office of
21   Management and Budget considered or participated in
22   any considerations relating to these surveys?