# Exhibit 30

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Chang, Debbie                                                April 17, 2009
                              Washington, DC

                                                                    Page 1

                    UNITED STATES DISCTRICT COURT

                  FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - -x

IN RE:  PHARMACEUTICAL           :  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE       :  CIVIL ACTION

PRICE LITIGATION                 :  01-CV-12257-PBS

THIS DOCUMENT RELATES TO         :

U.S. ex rel. Ven-a-Care of       :  Judge Patti B. Saris

the Florida Keys, Inc.           :

     v.                          :

Abbott Laboratories, Inc.,       :  Chief Magistrate

No. 06-CV-11337-PBS              :  Judge Marianne B.

- - - - - - - - - - - - - - -x     Bowler

        (CROSS NOTICED CAPTIONS ON FOLLOWING PAGES)

          Videotaped deposition of DEBBIE CHANG

                         Volume I

                                    Washington, D.C.

                                    Friday, April 17, 2009

                                    9:05 a.m.

Chang, Debbie                                            April 17, 2009
                         Washington, DC

```
                                                              Page 2
 1        IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
 2             THIRD JUDICIAL DISTRICT OF ANCHORAGE
 3    - - - - - - - - - - - - - -x
 4    STATE OF ALASKA,                :
 5             Plaintiff,             :Case No. 3AN-06-12026CI
 6        vs.                         :
 7    ALPHARMA BRANDED PRODUCTS       :
 8    DIVISION, INC., et al.,         :
 9             Defendants.            :
10    - - - - - - - - - - - - - -x
11
12    IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA
13
14    In the Matter of:
15    ALABAMA MEDICAID PHARMACEUTICAL       :Master Docket No.
16    AVERAGE WHOLESALE PRICE LITIGATION    :CV-2005-219
17    --------------------------------------:
18    This document relates to:             :
19    State of Alabama v. Abbott            :
20    Laboratories, Inc.                    :
21    No. 2005-219.01                       :
22    --------------------------------------:
```

Henderson Legal Services, Inc.
202-220-4158                              www.hendersonlegalservices.com

9e514eb0-adde-4c27-89a6-ca68551d4c1d

Page 30

1  Policy relate specifically to the payment for
2  prescription drugs?
3       A.    Not that I remember.  Now, what would
4  happen is I was involved in a managed care project
5  looking at how states -- you know, their relationship
6  between managed care programs and how they run their
7  managed care programs.  One of those areas was -- was
8  drug coverage.  And I also helped with the overall
9  annual state conference.  In the annual state
10 conference, it's very likely that a panel might have
11 been focused on drug coverage.  That's what I
12 remember.
13      Q.    And you were there at the National Academy
14 for State Health Policy from April 2003 through
15 January 2004, right?
16      A.    Correct.
17      Q.    The next, going backwards in time, the
18 next entry on your CV is from June 1999 through March
19 2003 with the Department of Health and Mental Hygiene
20 for the State of Maryland.  Do I have that correct?
21      A.    Yes.
22      Q.    And when you referred to yourself as being

Page 31

1   the director of Medicaid for Maryland, is that the
2   position you were referring to?
3        A.    Yes.
4        Q.    What were your duties as the director of
5   Medicaid for the State of Maryland?
6        A.    It was generally to -- to lead and operate
7   the Medicaid program in the State of Maryland that
8   also included the SCHIP program.
9        Q.    As the head of the -- director of Medicaid
10  for the State of Maryland, did your responsibilities
11  include the manner in which the state Medicaid
12  program paid for prescription drugs?
13       A.    Yes.
14       Q.    Do you recall what was your involvement
15  with that aspect of the Maryland Medicaid program
16  during those approximately four years?
17       A.    Yeah.  My major focus when I was at the
18  State of Maryland was on managed care, because the
19  state's managed care program was a little bit in a --
20  let's see how to say it, it was having some problems.
21             And so my main thing that I first focused
22  on was trying to get the payment system in order to

Chang, Debbie                                    April 17, 2009
                       Washington, DC

```
                                                    Page 144
 1         A.    What I said was that under the Medicaid
 2   law, there was a provision about access.  And that I
 3   also made the point that it was -- it was important
 4   that Medicaid beneficiaries have access.  I also made
 5   the point that Medicaid beneficiaries have different
 6   needs than private pay, so that doesn't necessarily
 7   mean equal access.  And it's going to -- and that's
 8   what I said, which is not exactly what you said.
 9         Q.    Okay.  Well, let's -- I'm much more
10   interested in how you describe it than how I do, so
11   in this statement, though, it's certainly the case,
12   isn't it, that in your experience, state Medicaid
13   administrators will want to account for the concern
14   or the risk that pharmacists might leave the Medicaid
15   program if reimbursement rates were set, for example,
16   too low?
17               MR. DRAYCOTT:  Objection.
18               THE WITNESS:  In my experience, what --
19   and should I go ahead and answer?
20               MR. DRAYCOTT:  You can answer, yes, if you
21   can.
22               THE WITNESS:  Oh.  Okay.  In my experience
```

Chang, Debbie                                              April 17, 2009
                             Washington, DC

Page 145

1    as a Medicaid director, you have to balance a lot of
2    different things.  You're trying to balance the cost
3    of the program with access to the beneficiary, for
4    the beneficiary of services, together with
5    provider-related issues, and you've got to balance
6    all those things.
7            BY MR. RIDINGS:
8       Q.   And all of those considerations go into
9    setting the reimbursement rate for prescription
10   drugs, don't they?  They have to.
11           MR. DRAYCOTT:  Objection.
12           THE WITNESS:  There is federal direction
13   that is very clear.  And so when there is clear
14   federal direction, the other stuff kind of -- I mean,
15   you got to follow the federal laws and federal
16   regulations.  So I just -- so my statement was more
17   about the fact that, that it's a federal/state
18   program that we talked about earlier.  There are
19   federal rules and regulations that need to be
20   followed.
21           Within that, there is state flexibility.
22   When you're dealing with the state flexibility, then

Page 146

1   you're trying to balance these different things about
2   budget, about access for beneficiaries, about
3   provider participation, you know, other types of
4   things.  Those are just three.
5           BY MR. RIDINGS:
6       Q.  Now, in this response to CMS, the State of
7   Washington tells the federal Medicaid agency --
8   refers to the study showing that pharmacists in
9   Washington bought drugs at an average discount of
10  17.3 percent from average wholesale price, correct?
11          MR. DRAYCOTT:  Objection.
12          BY MR. RIDINGS:
13      Q.  In the first paragraph.
14      A.  What the first paragraph is saying to me
15  is that they are saying that the OIG reported this
16  average discount of 17.3 from the average wholesale
17  price.
18      Q.  And the state is proposing to set the
19  reimbursement rate at AWP minus 14 percent, correct,
20  for single source drugs?
21      A.  Yes.  That's in the second paragraph.
22      Q.  That's right.  So it's clear, isn't it,