# Exhibit 34

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Raleigh, NC

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

----------------------------------x

In Re:  PHARMACEUTICAL INDUSTRY      ) MDL No. 1456

AVERAGE WHOLESALE PRICE LITIGATION ) Civil Action

----------------------------------x 01-12257-PBS

THIS DOCUMENT RELATES TO:          )

United States of America, ex rel.  ) Hon. Patti B.

Ven-A-Care of the Florida Keys,    )    Saris

Inc., v. Abbott Laboratories, Inc.,)

Civil Action No. 06-11337-PBS      )

and United States of America ex    ) Video 30(b)(6)

rel. Ven-a-Care of the Florida     ) Deposition of

Keys, Inc., v. Dey, Inc., et al.,  ) State of North

Civil Action No. 05-11084-PBS      ) Carolina Dept.

and United States of America ex    ) of Health &

rel. Ven-a-Care of the Florida     ) Human Services

Keys, Inc., v. Boehringer          ) by Lisa Weeks

Ingelheim Corp., et al., Civil     )

Action No. 07-10248-PBS            ) Raleigh, NC

----------------------------------x October 21, 2008

Reporter: Marisa Munoz-Vourakis-RMR, CRR, Notary Public

Page 2

1   Video Deposition of THE NORTH CAROLINA
2   DEPARTMENT OF HEALTH AND HUMAN SERVICES by LISA WEEKS,
3   taken by the Plaintiffs, at the US Attorney's Office,
4   310 New Bern Avenue, Terry Sanford Building, Raleigh,
5   North Carolina, on the 21st day of October, 2008 at
6   9:15 a.m., before Marisa Munoz-Vourakis, Registered
7   Merit Reporter, Certified Realtime Reporter and Notary
8   Public.

1   A.   Okay.

2   Q.   I have handed Ms. Weeks a copy of 52
3   Federal Register 28657, year 1987.  It is a two-
4   sided page from the Federal Register, and it
5   announces amendments to 42 CFR Part 413.

6        Ms. Weeks, if I could -- let's see, the
7   date on the regulation you see at the top is
8   1987.  Do you see that there?

9   A.   Yes.

10  Q.   If I could direct your attention to
11  Section 447.331(b), other drugs.  If you take a
12  minute to read that paragraph.

13           (Pause.)

14  A.   Okay.

15  Q.   Do you see where it says that it refers
16  to payment levels, that the agency has determined
17  by a applying the lower of one, estimated
18  acquisition costs plus reasonable expense and
19  fees established by the agency; or two,
20  provider's usual and customary charges to the
21  general public?

22           Do you see that there?

e9d4b181-38e8-4b10-b632-ab9063ece5ef

1   A.   Yes.
2   Q.   Has your agency established a
3   reimbursement methodology that applies these
4   elements?
5   A.   Yes.
6   Q.   And how has it done so?
7   A.   It has determined that the estimated
8   acquisition costs we base -- we use the AWP, the
9   Average Wholesale Price plus a dispensing fee.
10  Q.   And what about the usual and customary
11  charges to the general public, does your state
12  provide for that as well?
13  A.   Yes.  If the usual and customary charge
14  provided to the general public is less, than we
15  would reimburse at that rate.
16  Q.   I'd like to refer you to just above
17  that at the top of the right-hand side of the
18  page, Section 447.301 definitions.  Do you see
19  that there?  And the second definition says
20  estimated acquisition costs.  Can you take a
21  minute to read that?
22                    (Pause.)

1  A. Okay.
2  Q. Are you familiar with that definition?
3  A. Yes.
4  Q. And has the state endeavored to
5  determine estimated acquisition costs in
6  accordance with that definition?
7  A. Yes.
8  Q. And how has it done so?
9  A. We, again, use the average wholesale
10 price minus a discount to determine the estimated
11 acquisition cost.
12 Q. Does the state have a formula for
13 reimbursing for the drug ingredient portion of
14 pharmacy claims?
15 A. Yes.
16 Q. And what is that formula as of today?
17 You can put that aside.
18 A. Okay. We use AWP minus ten percent or
19 the federal upper limits or the state maximum
20 allowable cost, or the usual and customary, the
21 lesser of those, plus a dispensing fee and minus
22 the copayment.

1    Q.    And where is it written down that that
2    is the state's formula?
3    A.    It is written in the state plan.
4    Q.    And can DMA modify the formula on its
5    own?
6          MR. KATZ:  Objection to form.
7    A.    No, it cannot.
8    Q.    What is a state plan?
9    A.    It is a plan that the state has with
10   the federal government or CMS to -- it's an
11   agreement so that the state can draw down the
12   federal funds.
13   Q.    Is it a requirement?
14   A.    Yes.
15   Q.    Has the state, is the state plan
16   submitted to the federal government?
17   A.    It's submitted to CMS, which is part of
18   the federal government.
19   Q.    And who prepares the state plan?
20   A.    The Department of Health and Human
21   Services.
22   Q.    And North Carolina has a state plan?

Page 36

1  A.   Yes.
2  Q.   Has the state plan been amended from
3  time to time?
4  A.   Yes.
5  Q.   And about how often is the state plan
6  amended?
7  A.   Not frequently.  Not very often.
8  Q.   Is it amended every year?
9  A.   No.
10 Q.   Every couple of years?
11 A.   No.
12 Q.   Every five to ten years?
13 A.   There's no schedule.  It just depends,
14 but generally, I mean, it has been amended from
15 time to time.
16 Q.   And when did the state make an
17 amendment? If there's no schedule, how does the
18 state know whether to make an amendment or not?
19 A.   If the state plan is different than
20 what the state does, then the state has to amend
21 the state plan.
22 Q.   Does the state plan have provisions

NC Department of Health and Human Services (Lisa Weeks)                October 21, 2008
Raleigh, NC

Page 77

1       A.    Yes.
2       Q.    I'd like to read that sentence.
3             We would also clarify our policy that a
4   dispensing fee determination must be separate and
5   distinct from the EAC determination and unrelated
6   to the cost of the drug product.
7             Do you see that there?
8       A.    Yes.
9       Q.    Is your state's reimbursement formula
10  and state plan consistent or inconsistent with
11  this policy?
12            MR. KATZ:  Objection, form.
13      A.    It's consistent.
14      Q.    Does the state have any practice or
15  policy of paying increased ingredient costs in
16  order to make up for inadequate dispensing fees?
17            MR. KATZ:  Objection, form.
18      A.    No.
19      Q.    Did North Carolina increase its
20  dispensing fees in response, for example, to the
21  Deficit Reduction Act?
22            MR. KATZ:  Objection, form.