# Exhibit 40

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 323

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

------------------------------X

In re: PHARMACEUTICAL            ) MDL No. 1456

INDUSTRY AVERAGE WHOLESALE       ) Civil Action No.

PRICE LITIGATION                 ) 01-12257-PBS

------------------------------X

THIS DOCUMENT RELATES TO:        ) Hon. Patti B. Saris

United States of America         )

ex rel. Vena-A-Care of the       )

Florida Keys, Inc.,              )

v. Dey, Inc., et al., Civil      )

Action No. 05-11084-PBS          )

------------------------------X


Continued Videotaped Deposition Of

THE STATE OF NEW JERSEY DEPARTMENT

OF HUMAN SERVICES by EDWARD J. VACCARO


DECEMBER 3, 2008

TRENTON, NEW JERSEY

9:04 A.M.

1    Continued videotaped deposition of the
2    State of New Jersey Department of Human Service's
3    Rule 30(b)(6) Designee, EDWARD J. VACCARO, taken
4    at the Trenton Marriott at Lafayette Yard, 1 West
5    Lafayette Street, Trenton, New Jersey  08608,
6    before Debra Sapio Lyons, a Registered Diplomat
7    Reporter, a Certified Realtime Reporter, an
8    Approved Reporter of the United States District
9    Court for the Eastern District of Pennsylvania,
10   and a Certified Court Reporter and Notary Public
11   for the State of New Jersey.
12
13
14
15
16
17
18
19
20
21
22

1   shortfall in one component, do you consid --
2   would you consider the other component?
3         A.   Position --
4              MS. YAVELBERG:  Objection, form.
5              THE WITNESS:  The State's position was,
6   and still is, that the dispensing fee in New
7   Jersey is adequate to reimburse pharmacies
8   reasonably for the cost of dispensing
9   medications.
10  BY MR. KIM:
11        Q.   This was the State's position in 1994;
12  is that correct?
13        A.   Yes, sir.
14        Q.   So are you contending that when it says
15  State officials New Jersey was not included
16  amongst those states?
17             MS. YAVELBERG:  Objection, form.
18             THE WITNESS:  Say that question again.
19  BY MR. KIM:
20        Q.   Just to read the second paragraph here
21  under Comments, it says, "The State officials
22  expressed concern that our review was limited to

Page 670

1    Q.   Well, tell me of that situation first.
2    Go ahead.
3    A.   All right.  In the situation where we
4    set up -- or we -- we -- we have implemented
5    procedure codes called HCPCS codes, and we talked
6    about this earlier, for the purpose of carrying a
7    description of an injectable drug we assigned a
8    fee to it per unit.  That fee was representative
9    of the median average wholesale price at the
10   current time less the discount for all the NDCs
11   that represented that particular drug.
12        Are you with me?
13   Q.   I am with you.  I understand.
14   A.   All right.  All the -- all the
15   physician had to do was report on the claim form
16   the procedure code of the drug, and, by the way,
17   the new -- the new forms now also allow them to
18   report the NDC, okay, and a number of units.
19   Then we could calculate a payment off of the
20   system.
21   Q.   They -- they submitted a procedure
22   code, but they also submitted the actual

b8f82058-8500-490d-b833-e6b27705e427

Page 757

1   measures from other groups besides providers?
2       A.   Depending upon what the nature of the
3   proposal might be, you might have gotten some
4   pushback from client advocacy groups, their
5   associations.  For example, if we attempted to
6   put prior authorization on mental health drugs,
7   then advocates for the Mental Health Association
8   would react strongly to that.  If we attempt to
9   force generic substitution on mental health
10  drugs, again, the association would step up to
11  the plate and -- and lobby the legislature and
12  the Governor's office to say you can't do that.
13  So there were lost opportunities for the State to
14  contain -- to contain drug costs as examples.
15      Q.   And -- and would there also have been
16  discussions with pharmaceutical manufacturers?
17      A.   Depending, again, what the nature of
18  the proposal was.
19      Q.   And can you give me an example of where
20  a pharmaceutical manufacturer would have opposed
21  a cost containment measure?
22      A.   They are currently and have in the past

Page 758

1   opposed strongly a preferred drug list in New
2   Jersey.
3        Q.   Have they opposed other measures in the
4   past?
5        A.   They attempted in the past to oppose
6   the medical exception process, but that got
7   through and is working very efficiently, and
8   there has been no further opposition to it.
9        Q.   And I believe yesterday you talked
10  about the budget process --
11       A.   Yes.
12       Q.   -- and the fact that many parties have
13  input and it's an open budget process --
14       A.   That is correct.
15       Q.   -- is that correct?
16            And you testified that you would sit
17  down with many entities, pharmacy associations,
18  but also pharmaceutical manufacturers; is that
19  correct.
20       A.   That is correct.
21       Q.   And when you sat down with
22  pharmaceutical manufacturers in that annual