# Exhibit 48

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 1

```
            UNITED STATES DISTRICT COURT

        FOR THE DISTRICT OF MASSACHUSETTS


IN RE:   PHARMACEUTICAL INDUSTRY        MDL NO. 1456

AVERAGE WHOLESALE PRICE LITIGATION      Civil Action:

                                        01-CV-12257-PBS

THIS DOCUMENT RELATES TO U.S.           Judge Patti B. Saris

Ex rel. Ven-A-Care of the Florida       Magistrate Judge

Keys, No. 06-CV-11337-PBS               Marianne B. Blower

                                /




      The Videotaped Deposition of JAMES KENYON,

      Taken at 2860 Eyde Parkway,

      East Lansing, Michigan,

      Commencing at 4:13 p.m.,

      Tuesday, March 25, 2008,

      Before Cynthia A. Chyla, CSR 0092.
```

1    APPEARANCES:

2

3    GEORGE B. HENDERSON, ESQ.

4    Assistant United States Attorney

5    U.S. Department of Justice, U.S. Attorney's Office

6    United States Courthouse

7    1 Courthouse Way, Suite 9200

8    Boston, Massachusetts 02210

9    (617) 748-3272

10        Appearing on behalf of the United States

11        of America.

12

13   LOUIS P. GABEL, ESQ.

14   Jones Day

15   51 Louisiana Avenue, N.W.

16   Washington, D.C. 20001-2113

17   (202) 879-3939

18        Appearing on behalf of Abbott Laboratories.

19

20

21

22

Kenyon, James                                          March 25, 2008

Page 14

1   Q.   Did you compile documents in response to the
2   subpoena?
3   A.   No.
4   Q.   Did someone --
5   A.   Well, I take that back.  I did have some
6   documents which I supplied.
7   Q.   Prior to seeing that subpoena, had anyone
8   told you to withhold from destroying documents that
9   might be related to AWP matters or drug pricing issues?
10  A.   No.
11  Q.   Since being issued that subpoena, has anyone
12  instructed you to withhold from destroying documents
13  relating to drug pricing issues?
14  A.   No.
15  Q.   In your role in the pharmacy audit -- is it
16  a department or section?
17  A.   Program investigation section is the audit
18  section I currently am in.
19  Q.   Okay.  I'll refer to that as the audit
20  section just to --
21  A.   That's fine.
22  Q.   -- dumb it down for my sake.

Kenyon, James                                      March 25, 2008

Page 15

1              Did you also audit dispensing fees?
2        A.    We looked at the whole claim that was billed
3    to the pharmacy.
4        Q.    Did you ever compare dispensing fees to what
5    it would cost the provider to actually dispense a drug?
6        A.    No.
7        Q.    Are you -- I'm sorry.
8              What's the current dispensing fee
9    for pharmacists in Michigan?
10       A.    The current dispensing fee depends whether
11   there's long-term care or whether they're a regular
12   pharmacy.  It's $2.50 for standard retail pharmacy;
13   2.75 for the long-term care.
14       Q.    At one time the dispensing fees were greater
15   than that; is that right?
16       A.    Correct.
17       Q.    About a dollar greater than that?
18       A.    Roughly.
19       Q.    Do you know why they were decreased?
20       A.    No.
21       Q.    Do you believe that a $2.50 dispensing fee
22   is adequate to cover all the pharmacist's cost in

1   dispensing drugs?
2                    MR. HENDERSON:  Objection.
3       A.    I have not done any analysis.  I couldn't
4   say.
5   BY MR. GABEL:
6       Q.    In your experience as a pharmacist, and
7   although this was a number of years ago, do you believe
8   that $2.50 would be adequate to cover the cost you
9   would incur on dispensing a drug?
10                   MR. HENDERSON:  Objection to form.
11      A.    I had nothing to do with billing.  I really
12  couldn't evaluate that on an analysis.
13  BY MR. GABEL:
14      Q.    Okay.  With respect to the dispensing fee
15  for Michigan, do you know if it is intended to cover
16  overhead for drugs?
17      A.    Not having done the analysis, I do not know.
18      Q.    If I were to ask you whether any particular
19  elements were to be covered by the dispensing fee, is
20  it right that you couldn't tell me just because that's
21  not something you've analyzed?
22      A.    Correct.

1    Q.    Who determines what the dispensing fee is to
2    be for Michigan Medicaid participants?
3    A.    The dispensing fees I've seen have been
4    mandated by the legislature.
5    Q.    Do you know how they arrived at those
6    dispensing fee numbers?
7    A.    I do not know the entire process, no.
8    Q.    I'd like to show to you -- do you have the
9    stack of documents we used in the previous deposition.
10                  MR. MATUS:  I don't have the actual.
11   I have my stack.
12                  MR. GABEL:  Do you?
13                  THE COURT REPORTER:  No.  I hope the
14   witness didn't take them.
15                  MR. GABEL:  I hope so as well.
16                  MR. MATUS:  She may have.  You can
17   use my set.
18                  MR. GABEL:  We should track her
19   down.  You want to give her a -- let's go off the
20   record for just a second.
21           (Discussion had off the record.)
22                  MR. GABEL:  We can go back.

1   along, your rights are reserved.

2                  MR. GABEL:  Thank you.

3                  MR. HENDERSON:  The United States

4   does not agree with you.  But let me ask a few

5   questions of Mr. Kenyon.

6   EXAMINATION BY MR. HENDERSON:

7        Q.    Mr. Kenyon, you were asked a few questions

8   about Exhibit Number 657 which was Sandy Kramer's March

9   1994 report, and specifically you were asked a question

10  or two about some language on page 4 also marked as

11  MSA 33.

12       A.    Correct.

13       Q.    Now -- and you were asked questions about

14  the sentence saying "Payers are able to have low

15  dispensing fee rates if they have high EAC screens."

16                 Mr. Kenyon, are you aware of any

17  policy by the State of Michigan to increase payments

18  under the EAC component of its reimbursement

19  methodology in order to make up for inadequate

20  dispensing fees?

21       A.    No.

22       Q.    Does Michigan have any policy to -- withdraw