# Exhibit 49

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories,*
*Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

```
1:1             UNITED STATES DISTRICT COURT

  2          FOR THE DISTRICT OF MASSACHUSETTS

  3     ----------------------------------X

  4     In Re: PHARMACEUTICAL INDUSTRY      ) MDL No. 1456

  5     AVERAGE WHOLESALE PRICE LITIGATION ) Master File No.

  6     ----------------------------------) 01-CV-12257-PBS

  7     THIS DOCUMENT RELATES TO:          )

  8     United States of America ex rel.   ) Hon. Patti B.

  9     Ven-A-Care of the Florida Keys,    )     Saris

 10     Inc., et al. v. Dey, Inc., et al., )

 11     Civil Action No. 05-11084-PBS,     ) VIDEOTAPED

 12     and United States of America ex    ) DEPOSITION

 13     rel. Ven-A-Care of the Florida     ) OF THE NEW

 14     Keys, Inc., et al. v. Boehringer   ) HAMPSHIRE DEPT.

 15     Ingelheim Corp., et al., Civil     ) OF HEALTH &

 16     Action No. 07-10248-PBS and United ) HUMAN SERVICES

 17     States, ex rel. Ven-A-Care of the  ) BY LISE C.

 18     Florida Keys v. Abbott             ) FARRAND

 19     Laboratories, Inc. Civil Action    )

 20     Nos. 06-CV-11337 and 07-CV-11618   ) OCTOBER 28, 2008

 21     ----------------------------------X

 22
```

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

```
2:1   Deposition of THE NEW HAMPSHIRE DEPARTMENT OF HEALTH

  2        AND HUMAN SERVVICES by LISE C. FARRAND

  3                 Concord, New Hampshire

  4               Tuesday, October 28, 2008

  5                      9:00 a.m.

  6

  7

  8

  9                 A P P E A R A N C E S

 10

 11   On behalf of the United States of America:

 12

 13        GEORGE B. HENDERSON, ESQ.

 14        Assistant United States Attorney

 15        United States Courthouse

 16        1 Courthouse Way

 17        Suite 9200

 18        Boston, MA  02210

 19        617-748-3272

 20        george.henderson2@usdoj.gov

 21

 22   (CONTINUED)
```

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

248:1          MR. KATZ:  This is already marked.  You

       2   can mark it again if you want.

       3          MR. HENDERSON:  It is.  Let's go ahead

       4   and mark it.  It will be quicker than finding the

       5   other copy.  Yes, my notes indicate this was also

       6   marked as Dey Exhibit 75.

       7              (Exhibit Farrand USA 005 marked

       8   for identification.)

       9   BY MR. HENDERSON:

      10      Q.   But the same document is now marked

      11   Exhibit Farrand USA Exhibit 5.  And this

      12   describes changes to the co-pay and the

      13   dispensing fees.  Do you recall that these

      14   changes were made in approximately May of 1994?

      15      A.   Yes.

      16      Q.   And did you testify previously that one

      17   of the reasons for the increase in the dispensing

      18   fee for generic drugs was to encourage the

      19   dispensing of generic drugs?

      20      A.   I believe so, yes.

      21      Q.   Have this next exhibit marked as 6.

      22              (Exhibit Farrand USA 006 marked

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

249:1  for identification.)

2     Q.   This is a state Medicaid agency

3  regional bulletin from HCFA Region 1, HCFA now

4  known as CMS, dated -- this is dated September 6,

5  1994.

6         Did the New Hampshire Health and Human

7  Services periodically receive bulletins from HCFA

8  Region 1 on Medicaid issues?

9     A.   We got -- there were paper bulletins

10  sent to the commissioner's office.  Whether or

11  not they came from Region 1 or national, I don't

12  know.

13     Q.   Could you look at this and tell me

14  whether you have any recollection of seeing it or

15  knowing about the subject that's discussed here?

16        MR. KATZ:  Objection, form.

17        THE WITNESS:  I remember seeing

18  something about the moratorium expiring.

19  BY MR. HENDERSON:

20     Q.   Just for the record, this describes or

21  indicates that on December 31, 1994 a moratorium

22  expires that prohibits states from reducing the

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

250:1    limits for covered outpatient drugs.

2              Is it possible that you may have seen

3    this?

4        A.   Yes.

5        Q.   I'd like to ask you to look at page 2

6    and ask you to read aloud the last paragraph of

7    this memo starting "we would like to."

8        A.   "We would like to clarify HCFA policy

9    that a dispensing fee determination must be

10   separate and distinct from the EAC determination

11   and unrelated to the cost of the drug product.

12   In every instance, regardless of the state

13   determination of individual prescription payment

14   limits, the state must have established the

15   reasonable dispensing fees which would be used to

16   determine whether the state is in compliance with

17   the upper limits as specified in current drug

18   regulations at 42 C.F.R. 447.331."

19       Q.   In the mid 1990s, did you have an

20   understanding that states should make their

21   dispensing fee determination separate and

22   distinct from the EAC determination?

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

251:1          MR. KATZ:  Objection, form.

    2          THE WITNESS:  I see that that's what

    3     this says.  I don't know that that was ever done

    4     by the state.

    5     BY MR. HENDERSON:

    6          Q.   Well, let me ask you.  When the --

    7     after the date of this, the next time when state

    8     of New Hampshire changed its or made changes to

    9     its reimbursement methodology was in relation to

   10     House Bill 32?

   11          A.   1996.

   12          Q.   Okay.  And are you aware of whether or

   13     not in determining the dispensing fee whether or

   14     not the state of New Hampshire took into account

   15     the cost of the drug?

   16          MR. KATZ:  Objection, form.

   17     BY MR. HENDERSON:

   18          Q.   Was that part of the determination of

   19     dispensing fee?

   20          A.   No, I don't believe so.

   21          Q.   All right.  And conversely, when the

   22     state determined what the EAC should be, if you

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

252:1    know, did the state base that on the amount of

2    costs of dispensing of the drug?

3             MR. KATZ:  Objection, form.

4             THE WITNESS:  No.

5    BY MR. HENDERSON:

6       Q.   So in that regard, was the state's

7    determination of dispensing fee separate and

8    distinct from its determination of Estimated

9    Acquisition Cost?

10            MR. KATZ:  Objection, form.

11           THE WITNESS:  Yes.

12    BY MR. HENDERSON:

13      Q.   Are you aware of any policy or practice

14    by the state of New Hampshire in the time that

15    you've been working there to base Estimated

16    Acquisition Cost in part on the cost of

17    dispensing the drug?

18      A.   No.

19      Q.   And similarly, are you aware at any

20    time that the state has based the dispensing fee

21    in part on the costs of acquiring the drug?

22            MR. KATZ:  Objection, form.

Farrand, Lise C. - October 28, 2008 09:00:00 a.m.

253:1            THE WITNESS:  No.

    2    BY MR. HENDERSON:

    3        Q.    Now if you could look at Dey Exhibit

    4    76.  It is a New Hampshire Medicaid Bulletin

    5    dated December 1995.  You gave some testimony on

    6    this earlier.  And you also mentioned House Bill

    7    32.  House Bill 32, what is your understanding or

    8    recollection of what that was?

    9        A.    It was a budget cut bill and it -- part

    10   of the budget cut was the Most Favored Nation

    11   definition, and basically it decreased

    12   reimbursement to just about every provider type

    13   in the Medicaid program.

    14       Q.    You said it was a House Bill.  Was it

    15   passed by the legislature?

    16       A.    Yes.

    17       Q.    There's a description in Exhibit 76 at

    18   the page marked in the lower right-hand corner,

    19   NH 03378.  Is that description consistent with

    20   your recollection of the law that you referred to

    21   as House Bill 32?

    22            MR. KATZ:  Objection to form.