# Exhibit 52

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 604

```
              UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

IN RE:   PHARMACEUTICAL       ) MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE    ) CIVIL ACTION

PRICE LITIGATION              ) 01-CV-12257-PBS

THIS DOCUMENT RELATES TO      )

U.S. ex rel. Ven-a-Care of    ) Judge Patti B. Saris

the Florida Keys, Inc.        )

     v.                       ) Chief Magistrate

Abbott Laboratories, Inc.,    ) Judge Marianne B.

No. 06-CV-11337-PBS           ) Bowler

- - - - - - - - - - - - - - - -

         (captions continue on following pages)




         Videotaped deposition of LARRY REED

                   Volume III



                   Washington, D.C.

                   Tuesday, March 18, 2008

                   9:00 a.m.
```

Page 605

1              IN THE CIRCUIT COURT OF
2            MONTGOMERY COUNTY, ALABAMA
3     - - - - - - - - - - - - - - - - -
4     STATE OF ALABAMA,                )
5                Plaintiff,            )
6         vs.                          ) Case No. CV-2005-219
7     ABBOTT LABORATORIES, INC.,       ) Judge Charles Price
8     et al.,                          )
9                Defendants.           )
10    - - - - - - - - - - - - - - - - -
11
12
13       IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
14                  STATE OF HAWAII
15    - - - - - - - - - - - - - - - - -
16    STATE OF HAWAII,                 )
17                Plaintiff,           ) Case No.
18         vs.                         ) 06-1-0720-04 EEH
19    ABBOTT LABORATORIES, INC.,       )
20    et al.,                          ) JUDGE EDEN
21                Defendants.          ) ELIZABETH HIFO
22    - - - - - - - - - - - - - - - - -

Page 659

1        MR. WINGET-HERNANDEZ:  Objection, form.
2        A.    There could be instances where the
3    costs of dispensing would be different -- the
4    costs of dispensing as determined by some studies
5    may be different than what would be in a state's
6    plan as a dispensing fee.  But that didn't
7    necessarily mean that that dispensing fee was not
8    reasonable.
9        Q.    And why would that be?
10       A.    Because the regulations -- and again,
11   we have to live by the regulations so that's what
12   I need to keep referring back to -- didn't say
13   that reasonable meant it had to be the actual
14   costs of dispensing.  It could be determined on
15   things like what other parties paid for that cost
16   of dispensing, what other states paid for that
17   cost of dispensing.
18       Q.    And could it also not consider the
19   profit being paid on the ingredient side?
20       A.    Under the federal regulations it could
21   not.
22       Q.    How about in the real world, could it?

1  reimbursements and drug purchase costs?
2       A.   -- is that what you're telling me.
3       Q.   I'm trying to read the sentence and see
4  if you agree.  It appears to be talking about
5  drug purchase costs to me.  That's not how you
6  read it?
7       A.   Again, I'm simply not sure, because
8  when I skimmed through this earlier, if I can go
9  back to page 2, the first partial paragraph,
10 "Because our study compared purchase prices to
11 Medicaid reimbursements, it did not include the
12 pharmacies' cost to dispense specific drugs or
13 the state's reimbursements for dispensing costs."
14          So with that statement in mind, I'm not
15 sure whether they're talking that Medicaid
16 reimbursement is ingredient costs only.
17      Q.   You've referred a number of times to
18 the regulatory requirements when talking about
19 what Medicaid programs are required to pay for
20 drugs; is that right?
21      A.   That's correct.
22      Q.   And you would agree with me that

Page 684

1    there's no regulatory or statutory requirement
2    anywhere that prohibits a state from paying a
3    margin on ingredient cost reimbursement for a
4    particular drug, correct?
5              MS. MARTINEZ:  Objection, form.
6        A.    No.  I don't think I could agree with
7    that.  The ingredient cost would be under the
8    regulation the EAC.  And if I can go a little bit
9    farther, I think we do have an upper limit that
10   would be based partially on the EAC or the
11   payment or the pharmacy's usual and customary
12   charge.
13       Q.    Let's take out the FUL requirement.
14   Putting that aside, for drugs that do not have a
15   FUL you would agree with me that there is no
16   regulatory or statutory requirement anywhere that
17   prohibits a state from paying a margin on the
18   ingredient cost reimbursement for a particular
19   drug?
20             MS. MARTINEZ:  Objection, form.
21       A.    And are you talking the ingredient cost
22   alone?

1   statement.
2       Q.   And let me see if I understand your
3   previous testimony correctly.  Is it your
4   testimony that under the federal regulations a
5   state Medicaid program is not permitted to
6   subsidize insufficient dispensing fees with
7   excess payments being made on the ingredient
8   side?
9            MS. MARTINEZ:  Objection, form.
10      A.   That's not quite what the federal
11  regulations require.  The federal regulations
12  require a reasonable dispensing fee and a
13  reasonable determination of the estimated -- of
14  the ingredient cost.
15      Q.   Let me try my question again.  Is it
16  your testimony that under the federal regulations
17  a state may not subsidize insufficient dispensing
18  fees with the margin on the ingredient cost side?
19           MS. MARTINEZ:  Objection, form.
20      A.   We would not -- I don't know what a
21  state might have in its own mind in submitting a
22  state plan amendment, but we would not approve a

1   state plan amendment that cross-subsidized
2   dispensing fees with an excess of ingredient
3   costs.
4       Q.   You believed that that would violate
5   federal regulations, correct?
6       A.   Correct.
7       Q.   And if a state deliberately did that,
8   cross-subsidized insufficient dispensing fees
9   with the margin on ingredient costs, you believe
10  that they were violating federal regulations;
11  isn't that right?
12          MS. MARTINEZ:  Objection, form.
13      A.   And again, I can't say what a state in
14  its own determination would be doing.  But when
15  they would present that state plan to us it would
16  have to be a reasonable dispensing fee and a
17  determination of ingredient cost.
18      Q.   If a state official testified that he
19  or she deliberately cross-subsidized insufficient
20  dispensing fees with a margin on ingredient cost,
21  would you believe that that individual was
22  violating federal regulations?