# Exhibit 59

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

----------------------------------X

IN RE: PHARMACEUTICAL INDUSTRY    ) MDL No. 1456

AVERAGE WHOLESALE PRICE           ) Civil Action No.

LITIGATION                        ) 01-12257-PBS

----------------------------------X

THIS DOCUMENT RELATES TO:         ) Hon. Patti B.

United States of America ex rel. ) Saris

Ven-A-Care of the Florida Keys,   )

Inc. v. Dey, Inc., et al., Civil  )

Action No. 05-11084-PBS; and      )

United States of America ex rel. )

Ven-A-Care of the Florida Keys,   )

Inc. v. Boehringer Ingelheim      )

Corp., et al., Civil Action No.   )

07-10248-PBS                      )

----------------------------------X

VIDEOTAPED DEPOSITION OF THE OREGON DEPARTMENT

OF HUMAN SERVICES by JESSE ANDERSON

PURSUANT TO FEDERAL RULE 30(B)(6)

TUESDAY, DECEMBER 16, 2008

**62**

1  near the top rather -- Well, it wasn't in the
2  in the list of Roxane exhibits; it was probably
3  after that.
4        THE WITNESS:  So the first?
5        MS. SCHNEIDER THOMAS:  No.  It's --
6  It's -- Do you want to help him?  It's the MNS
7  chart.
8        MR. DAVIS:  Can we see that stack
9  there.
10       MR. HEINZ:  Looks just like this.
11       MR. DAVIS:  One moment, please.
12            (Sotto voce remarks.)
13    Q.  BY MR. HEINZ:  Mr. Anderson, I'd like
14  for you just to look over plaintiffs' Exhibit 1,
15  specifically the chart at the top of the page.
16  No need to review in great detail; just become
17  familiar with it and let me know when you're
18  finished.
19    A.  Okay.
20    Q.  I'd like to direct your attention to
21  the chart at the top of plaintiffs' Oregon 1.
22  And just looking at the columns titled

**63**

1  "reimbursement is always lowest of either FUL or
2  EAC or SMAC or U&C," and then the columns with
3  the title "estimated acquisition cost, pay the
4  lower of each formula listed."
5        Looking at that information and the
6  time frames on the left-hand side of the page, if
7  you could review that and let me know if the
8  reimbursement methodology listed there is
9  consistent with your memory of the reimbursement
10 changes over time.
11    A.  That looks correct.
12    Q.  So just as an overview:  It appears
13 that during the majority of the 1990s and through
14 most of 2001, Oregon Medicaid defined its EAC for
15 retail pharmacies as the lower of DP or AWP minus
16 11 percent; correct?
17       MS. SCHNEIDER THOMAS:  Objection, form.
18       THE WITNESS:  My understanding of
19 Medicaid is that we have always paid the lower of
20 anything, whether they did the bill -- whatever
21 was the lowest amount.  If it was a federal upper
22 limit, if there was -- if they billed less, if

**64**

1  our AWP was less, that's what it was going to
2  pay.
3    Q.  BY MR. HEINZ:  Understood.  And I just
4  want you to look at the columns there under the
5  EAC heading "estimated acquisition costs, pay the
6  lower of each formula listed."
7    A.  Um-hum.
8    Q.  And then under "retail," you'll see
9  that, for the 1991 through September 30th, 2001,
10 time period, for retail pharmacies it has DP and
11 AWP minus 11 percent.  Do you see that?
12    A.  Yes.
13    Q.  So am I correct that, during that time
14 frame, Oregon Medicaid defined its estimated
15 acquisition costs as the lower of DP or AWP minus
16 11 percent?
17       MS. SCHNEIDER THOMAS:  Objection, form.
18       THE WITNESS:  No, I don't think that's
19 correct.  Because we -- there was still, as far
20 as I knew -- I don't know when the FULs came in;
21 but if there was a federal or upper limit, we
22 still took that into account.  So if that was

**65**

1  lower than the AWP -- DP, again, was before my
2  time, so I don't know what that was -- that we
3  would pay the lowest.
4    Q.  BY MR. HEINZ:  And I think that's what
5  this chart is understanding -- and let me know if
6  I'm incorrect -- that they paid the lower of FUL,
7  EAC, SMAC, or U&C?
8    A.  Yes.
9    Q.  Is that your understanding?
10   A.  Yes.
11   Q.  And I'm just looking at the EAC portion
12 of that, of that formula.  And just looking at
13 the EAC portion, understanding that they pay the
14 lower of FUL, EAC, SMAC, or U&C, that during the
15 1991 through 2001 time frame, they defined just
16 the EAC portion as DP or AWP minus 11 percent.
17 Do you see that?
18       MS. SCHNEIDER THOMAS:  Objection, form.
19       THE WITNESS:  But I don't think that's
20 what it says; because, you know, I -- In how --
21 In the rules that we had, EAC meant that it was
22 the lowest of any of these things.  So it wasn't