# Exhibit 67

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Hiramatsu, Aileen - Individual and State of Hawaii 30(b)(6) - Vol. II          May 2, 2008

Honolulu, HI

Page 315

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

-------------------------------

| STATE OF HAWAII, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. |
| ABBOTT LABORATORIES INC., | ) 06-1-0720-04 EEH |
| et al., | ) 07-1-1639-09 EEH |
| Defendants. | ) |

-------------------------------

| STATE OF HAWAII | ) |
| Plaintiff, | ) |
| v. | ) |
| SCHERING CORPORATION; DOE | ) |
| CORPORATIONS 1-100; DOE | ) |
| ENTITIES 1-100, | ) |
| Defendants. | ) |

-------------------------------

VOLUME II

VIDEOTAPED 30(b)(6) DEPOSITION OF

THE STATE OF HAWAII by AILEEN HIRAMATSU

and VIDEOTAPED DEPOSITION OF AILEEN HIRAMATSU

Henderson Legal Services, Inc.

202-220-4158                           www.hendersonlegalservices.com

3e7cf9be-549f-45a6-89c5-368377075660

Honolulu, HI

Page 316

```
 1        UNITED STATES DISTRICT COURT
 2     DISTRICT OF MASSACHUSETTS OF HAWAII
 3
 4   ----------------------------X
 5   In Re: PHARMACEUTICAL    : MDL NO.
 6   INDUSTRY AVERAGE WHOLESALE : 1456
 7   PRICE LITIGATION         : CIVIL NO.
 8   ----------------------------X  01-12257-PBS
 9   This relates to United   :
10   States of America ex rel. ;
11   Ven-a-Care of the FLorida ;
12   Keys, Inc. et al., v. Dey, :
13   Inc., et al., Civil Action :
14   No. 05-11084-PBS, and    :
15   United States of America, :
16   ex rel. Ven-a-Care of the :
17   Florida Keys, Inc., et al., :
18   v. Boehringer Ingelheim  :
19   Corp., et al., Civil Action :
20   No. 07-10248-PBS.        :
21   ----------------------------X
22
```

Page 317

```
 1              VOLUME II
 2
 3     VIDEOTAPED 30(b)(6) DEPOSITION OF
 4    THE STATE OF HAWAII by AILEEN HIRAMATSU
 5   and VIDEOTAPED DEPOSITION OF AILEEN HIRAMATSU
 6
 7
 8   Taken at the law offices of McCorriston Miller
 9   Mukai MacKinnon LLP, Five Waterfront Plaza, 4th
10   Floor, Honolulu, Hawaii, commencing at 9:00 a.m.
11   on Friday, May 2, 2008 pursuant to Notice.
12
13
14
15   REPORTED BY:  LYNANN NICELY, RPR/RMR/CSR #354
16
17
18
19
20
21
22
```

Page 318

```
 1             A P P E A R A N C E S
 2
 3   Special Deputy Attorney General for the Plaintiff:
 4       RICK J. EICHOR, ESQUIRE
 5       Price Okamoto Himeno & Lum
 6       Ocean View Center
 7       707 Richards Street, Suite 728
 8       Honolulu, Hawaii 96813
 9
10   For Plaintiff State of Hawaii:
11       MICHAEL WINGET-HERNANDEZ, ESQUIRE
12       Winget-Hernandez, LLC
13       101 South College Street
14       Dripping Springs, Texas 78763
15
16   For Plaintiff State of Hawaii:
17       CLINTON C. CARTER, ESQUIRE
18       H. CLAY BARNETT, III, ESQUIRE
19       Beasley, Allen, Crow, Methvin, Portis & Miles
20       272 Commerce Street
21       Post Office Box 4160
22       Montgomery, Alabama  56105-4160
```

Page 319

```
 1       A P P E A R A N C E S  (CONTINUED)
 2
 3   For Defendants Pfizer, Inc. and Pharmacia Corp.:
 4       SANDRA D. LYNCH, ESQUIRE
 5       Bronster Hoshibata
 6       1003 Bishop Street, Suite 2300
 7       Honolulu, Hawaii 96813
 8
 9   For Defendant Novartis Pharmaceuticals Corporation:
10       JACQUELINE L.S. EARLE, ESQUIRE
11       Goodsill Anderson Quinn & Stifel
12       1099 Alakea Street, Suite 1800
13       Honolulu, Hawaii  96813
14
15   For Defendant AstraZeneca Pharmaceuticals LP and
16   AstraZeneca LP:
17       KENNETH J. MANSFIELD, ESQUIRE
18       McCorriston Miller Mukai MacKinnon LLP
19       Five Waterfront Plaza, 4th Floor
20       500 Ala Moana Boulevard
21       Honolulu, Hawaii  96813
22
```

```
                                   Page 344
 1  correct in understanding that the Section 17-750-
 2  8 became effective September 23, 1988?
 3      A.  Yes.
 4      Q.  And then similarly turning to Exhibit
 5  49, does this set forth the State of Hawaii's
 6  administrative rule regarding payment for drugs
 7  and related supplies effective June 29, 1982?
 8      A.  Yes.
 9      Q.  Now, Ms. Hiramatsu, I notice that
10  neither of these versions of the administrative
11  rules in Exhibit 48 and 49, neither of them
12  define the term Estimated Acquisition Cost.  And
13  I think yesterday you testified about the current
14  version of the administrative rules and again in
15  that I didn't see any definitions of Estimated
16  Acquisition Cost.  Has it been the practice of
17  DHS to set forth its definition of Estimated
18  Acquisition Cost as something other than the
19  administrative rules?
20          MR. TOSCANO:  Objection to form.
21          THE WITNESS:  No, we generally would
22  have put our definitions into the rules.  If we
```

```
                                   Page 345
 1  felt it needed defining, it would have been in
 2  the rulemaking process.
 3  BY MR. HENDERSON:
 4      Q.  I see.  Okay.  I'm going to turn now to
 5  the second topic and that deals with the Hawaii
 6  Department of Human Services' use of prices
 7  published by First DataBank or any other
 8  publisher of prices.  And let me ask you in
 9  determining reimbursement for prescription drugs
10  in the noninstitutional setting, does the Hawaii
11  Department of Human Services use the prices
12  published by First DataBank?
13      A.  We do.
14      Q.  Do you know how long Hawaii has used
15  First DataBank as its source of published prices?
16      A.  I don't know how long specifically.  I
17  do know that since I had been with the division,
18  it had been using First DataBank.
19      Q.  When you began there?
20      A.  Yes.
21      Q.  Okay.  And does Hawaii use the
22  published average wholesale prices or AWPs?
```

```
                                   Page 346
 1      A.  Yes, whatever is produced by the First
 2  DataBank.
 3      Q.  Okay.  I have a few other questions.
 4  Ms. Hiramatsu, the United States, in its
 5  complaint in the federal case, and I'll start
 6  with the complaint against the Dey Defendants,
 7  the government alleges that Dey knowingly
 8  reported falsely inflated AWPs to First DataBank
 9  and that they did this with the intention of
10  causing the Medicaid program to pay inflated
11  reimbursements to Dey's customers.  And the
12  government alleges that Dey did this for the
13  purpose of increasing the sales of its drugs and
14  Dey's market shares for the drugs.
15          Now, if that were true, if the
16  government's allegations were true, to your
17  knowledge has the State of Hawaii ever approved
18  that sort of conduct?
19          MR. TOSCANO:  Objection to form.
20          THE WITNESS:  Have we approved the
21  conduct of the manufacturers reporting inflated
22  AWPs?
```

```
                                   Page 347
 1  BY MR. HENDERSON:
 2      Q.  That's correct.
 3      A.  No, we would never have approved of
 4  such behavior.
 5      Q.  Okay.  Has the State of Hawaii, to your
 6  knowledge, ever acquiesced in that kind of
 7  behavior?
 8      A.  No, but we had no way of knowing what
 9  was being reported.
10      Q.  Okay.  And if the State of Hawaii ever
11  had approved that sort of behavior, is that
12  something you would have known about had it
13  occurred?
14      A.  Yes.
15          MS. LORENZO:  Objection.
16          MR. MOORE:  I join in that objection.
17  BY MR. HENDERSON:
18      Q.  Was there an answer to that?
19      A.  Can you ask me the question again?
20      Q.  If the State of Hawaii had approved
21  this sort of behavior, is that something you
22  would have known about had it occurred?
```

Page 348

1    MR. MOORE:  Objection; form.
2    THE WITNESS:  Okay.  I want to make
3  sure I understand the question.  If the State of
4  Hawaii had known about the manufacturers'
5  misrepresentation of the AWPs, we would have --
6  BY MR. HENDERSON:
7    Q.  I'm just asking whether this is
8  something that you would have known about had the
9  agency approved of this kind of conduct.
10    MR. MOORE:  Objection; form.
11  BY MR. HENDERSON:
12    Q.  Or is it outside the scope of your
13  knowledge?
14    A.  I think that's probably outside the
15  scope of my knowledge.
16    Q.  Okay.  So are you suggesting that it's
17  possible that somebody else could have approved
18  of that sort of behavior and you would not know
19  about it?
20    A.  Based on what I know of the operations
21  of the division and of the individuals who worked
22  there, I don't believe anybody would approve of

Page 349

1  such behavior.
2    Q.  Okay.  Thank you.
3    MR. MOORE:  Excuse me.  Objection;
4  nonresponsive.  Move to strike.  Go ahead.
5  BY MR. HENDERSON:
6    Q.  Well, let me try to respond to the
7  objection.  Ms. Hiramatsu, based on your
8  experience as an employee of the agency from 1994
9  through 2007 and based on your experience as head
10  of the Medicaid division from 2000 to 2004, do
11  you have an opinion as to whether or not an
12  employee, an authorized employee of the state
13  Medicaid agency would approve of the type of
14  behavior that I just described?
15    MR. MOORE:  Objection; form.
16    THE WITNESS:  Based on my experience
17  with the division, I'd say there was no one there
18  who would have approved of such behavior.
19  BY MR. HENDERSON:
20    Q.  Now, with regard to the defendant
21  Boehringer, Ingelheim and Roxane, the United
22  States in its complaint against these companies

Page 350

1  alleges that the Boehringer, Ingelheim, Roxane
2  defendants knowingly reported falsely inflated
3  AWPs to First DataBank and they did this with the
4  intention of causing the Medicaid program to pay
5  inflated reimbursements to their customers, and
6  that these defendants did this for the purpose of
7  increasing the sales of their drugs and for the
8  purpose of increasing their market shares for the
9  drugs.
10    Again, to your knowledge, has the State
11  of Hawaii ever approved of that sort of behavior
12  with regard to the Boehringer, Ingelheim, Roxane
13  defendants?
14    MS. LORENZO:  Object to form.
15    THE WITNESS:  Based on my knowledge of
16  the division, I don't believe anyone would have
17  approved of reporting false information.
18    MR. HENDERSON:  Okay.  I have no
19  further questions.  Thank you very much.
20
21          EXAMINATION
22  BY MR. MOORE:

Page 351

1    Q.  My name is Mike Moore and I represent
2  Schering Plough and Warrick.  I have a few
3  questions for you.  Can we start with what you
4  were just looking at and would you get Exhibits
5  46 and 47 and turn to page six of each of those
6  exhibits and let's compare the language.  Would
7  you do that, would you turn to those pages,
8  please?  Put them side by side.
9    All right.  Just to get oriented a
10  little bit, Exhibit 46 that Mr. Henderson just
11  talked to you about, that's the November 10, 1999
12  description of Hawaii Medicaid's drug
13  reimbursement, correct?
14    A.  Correct.
15    Q.  And Exhibit 47 is the June 7, 2001
16  description?
17    A.  Yes.
18    Q.  And they're different, are they not?
19    A.  Yes.
20    Q.  And let's look at some of the
21  differences.  Let's start with Exhibit 46 in 1999
22  and let's start with single source drugs.  If you

10 (Pages 348 to 351)