# Exhibit 72

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

 **ABBOTT**

**INTEROFFICE CORRESPONDENCE**

From: David Landsidle
Divisional Vice President,
Washington

Dept: Washington Office
202/659-8524

TO: Mark Barmak

DATE: June 20, 1997

cc: Cynthia Sensibaugh

RE: *Lobbying Medicare Drug Reimbursement*

- - - - - - - - - -VIA FAX- - - - - - - - - -

The House and Senate are expected to vote next week on the budget reconciliation bills. The bills will pass and the conference committee will begin work the week of July 7. The conference could take anywhere from 2 to 4 weeks. The Congress plans to vote on the conference bill before the August 2 start of the summer recess.

Regarding the Medicare reimbursement issue, the House has a good provision although we need to add "specific" drug or biological. The Senate provision is not good. It says:

- payment could not exceed 95% of the AWP, as specified by the Secretary

- the effective date is retroactive to May 1, 1997 (changed by a Moseley-Braun amendment from January 1, 1997)

- the amount payable is limited by an annual CPI adjustment

- an HHS study is required to determine the AWP or other appropriate price of outpatient prescription drugs which then could be used to "further adjust the payment amounts for outpatient prescription drugs.

The Senate provision also lacks the "specific" drug language.

Lupron and Calcijex benefit enormously from Medicare reimbursement. In 1994, (the last year for which I have data) the HHS allowance for TAP's Lupron was $381.2 million, by far the largest allowance. The second largest was only $74.3 million. HPD's Calcijex comprises 1/3 of division's profits. For these reasons, I suggest two additional lobbying actions be considered.



Highly Confidential

ABT-DOJ 296200

First, targeted grassroots to specific conferees calling on them to support the House bill over the Senate bill. For example, Congressman Bill Archer (R-TX) will be a conferee. While he's from Houston, we could ask employees at our Texas plants in Austin and Irving to write. Or, Rep. Denny Hastert (R-IL) is a likely conferee. We could have Illinois employees write Hastert. Texas Senator Gramm (R) and Illinois Senator Moseley-Braun (D) will not be conferees but are on the Finance Committee and could be asked in letters to talk to conferees. The drawback to grassroots is that the reimbursement rate message is not a good grassroots message, although not giving the Secretary discretionary powers could be put in a letter.

Second, I suggest having Duane come to town to lobby. We would see conferees or those who could influence conferees, such as the four cited above. Our basic message would be to support the House provision. This office, in consultation with you and others, would prepare background papers.

Abbott has a lot at stake in the reimbursement fight. I do not want to feel, or having others feel, we did not do everything possible to win in conference. Duane could help. I can not get an appointment with Archer during conference. With Duane I can. A visit by him increases the importance of Abbott to the issue, which congressmen can understand. He reinforces our efforts and those of Nancy Taylor, our consultant. Nancy has done a good job--she got Senator Hatch to introduce our amendment--but a CEO adds a good deal of clout. Using Duane certainly does not guarantee success, but it increases our chances.

The downside is Duane being exposed to having to defend our position which is profit motivated. There is no way to avoid that fact. But our reasons for opposing the Senate bill are justifiable and defendable. Also he would be seeing people who are either with us (i.e. Archer who wants the House language to prevail) or are inclined to help if possible (i.e. Moseley-Braun). He is not going to see someone like Henry Waxman.

Duane's lobbied before, on 936, trade and the Clinton health bill. He is good and knows CEOs have influence on Capitol Hill. I do not know if he is available to come to Washington, but if he is, do you think he should be asked?

Highly Confidential

ABT-DOJ 295994