# Exhibit 79

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 328

```
              UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

IN RE:  PHARMACEUTICAL         )  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE     )  CIVIL ACTION

PRICE LITIGATION               )  01-CV-12257-PBS

THIS DOCUMENT RELATES TO       )

U.S. ex rel. Ven-a-Care of     )  Judge Patti B. Saris

the Florida Keys, Inc.         )

     v.                        )  Chief Magistrate

Abbott Laboratories, Inc.,     )  Judge Marianne B.

No. 06-CV-11337-PBS            )  Bowler

- - - - - - - - - - - - - - - -

        (captions continue on following pages)




    Videotaped deposition of NANCY-ANN MIN DEPARLE

                    Volume 2
```

```
                                                Page 329
 1      IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
 2           IN AND FOR LEON COUNTY, FLORIDA
 3   THE STATE OF FLORIDA
 4   ex rel.
 5   -----------------
 6   VEN-A-CARE OF THE FLORIDA KEYS,   )
 7   INC., a Florida Corporation, by and )
 8   through its principal officers and  )
 9   directors, ZACHARY T. BENTLEY and   )
10   T. MARK JONES,             )
11          Plaintiffs,       ) Civil Action
12      vs.             ) No. 98-3032G
13   MYLAN LABORATORIES INC.; MYLAN     )
14   PHARMACEUTICALS INC.; NOVOPHARM    ) Judge William
15   LTD., SCHEIN PHARMACEUTICAL, INC.; ) L. Gary
16   TEVA PHARMACEUTICAL INDUSTRIES     )
17   LTD.; TEVA PHARMACEUTICAL USA; and )
18   WATSON PHARMACEUTICALS, INC.,      )
19          DEFENDANTS.        )
20   -----------------
21
22
```

```
                                                Page 330
 1         IN THE CIRCUIT COURT OF
 2         MONTGOMERY COUNTY, ALABAMA
 3   ---------------
 4   STATE OF ALABAMA,          )
 5          Plaintiff,     )
 6      vs.           ) Case No. CV-2005-219
 7   ABBOTT LABORATORIES, INC.,   ) Judge Charles Price
 8   et al.,           )
 9          Defendants.    )
10   ---------------
11
12         STATE OF WISCONSIN CIRCUIT COURT
13                DANE COUNTY
14   -----------------
15   STATE OF WISCONSIN,          )
16          Plaintiff,    )
17      vs.           ) Case No. 04-CV-1709
18   AMGEN INC., et al.,       )
19          Defendants.    )
20   -----------------
21
22
```

```
                                                Page 331
 1      IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
 2                STATE OF HAWAII
 3   ---------------
 4   STATE OF HAWAII,         )
 5          Plaintiff,   ) Case No.
 6      vs.          ) 06-1-0720-04 EEH
 7   ABBOTT LABORATORIES, INC.,  )
 8   et al.,          ) JUDGE EDEN
 9          Defendants.  ) ELIZABETH HIFO
10   ---------------
11
12    IN THE FOURTH JUDICIAL DISTRICT OF THE STATE OF
13         IDAHO, IN AND FOR THE COUNTY OF ADA
14   ---------------
15   STATE OF IDAHO,         )
16          Plaintiff,   )
17      vs.          ) Case No. CV OC 0701846
18   ABBOTT LABORATORIES,     )
19          Defendant.   )
20   ---------------
21
22
```

```
                                                Page 332
 1    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 2        COUNTY DEPARTMENT, CHANCERY DIVISION
 3   ---------------
 4   THE PEOPLE OF THE STATE OF  )
 5   ILLINOIS,           )
 6          Plaintiff,   ) Case No. 05 CH 02474
 7      vs.          )
 8   ABBOTT LABORATORIES, et al., )
 9          Defendants.  )
10   ---------------
11
12         COMMONWEALTH OF KENTUCKY
13        FRANKLIN CIRCUIT COURT - DIV. II
14   -----------------
15   COMMONWEALTH OF KENTUCKY,      )
16          Plaintiff,    ) Civil Action
17      vs.           ) NO. 03-CI-1134
18   ABBOTT LABORATORIES, INC., et al., )
19          Defendants.   )
20   -----------------
21
22
```

                                          2 (Pages 329 to 332)

Page 333

1    IN THE COMMONWEALTH COURT OF PENNSYLVANIA
2    -----------------
3    COMMONWEALTH OF PENNSYLVANIA by   )
4    THOMAS W. CORBETT, JR., in his   )
5    capacity as Attorney General of the)
6    Commonwealth of Pennsylvania,   )
7           Plaintiff,         )
8        vs.                   )
9    TAP PHARMACEUTICAL PRODUCTS, INC., )
10   et al.,                   )
11          Defendants.        )
12   -----------------
13              Washington, D.C.
14              Wednesday, December 5, 2007
15              9:00 a.m.
16       Videotaped deposition of NANCY-ANN MIN
17   DEPARLE, held at the law offices of Jones Day, 51
18   Louisiana Avenue, N.W., Washington, D.C.
19   20001-2113,, the proceedings being recorded
20   stenographically by Jonathan Wonnell, a Notary
21   Public in and for the District of Columbia, and
22   transcribed under his direction.

Page 334

1       A P P E A R A N C E S   O F   C O U N S E L
2
3       On behalf of the United States of America:
4          REBECCA A. FORD, ESQ.
5          U.S. Department of Justice
6          Civil Division, Commercial Litigation
7          601 D Street, N.W., Room 9133
8          Washington, D.C. 20044
9          (202) 514-1511
10         rebecca.ford@usdoj.gov
11
12      On behalf of the United States of America:
13         JAMIE ANN YAVELBERG, ESQ.
14         U.S. Department of Justice
15         Civil Division
16         P.O. Box 261, Ben Franklin Station
17         Washington, D.C. 20044
18         (202) 514-6514
19
20
21
22

Page 335

1          A P P E A R A N C E S (Cont'd)
2
3   On behalf of the U.S. Department of Health and
4      Human Services:
5      DEBORAH M. CHASAN-SLOAN, ESQ.
6      U.S. Department of Health & Human
7        Services
8      Office of General Counsel, CMS Division
9      330 Independence Avenue, S.W., Room 5345
10     Washington, D.C. 20201
11     (202) 619-2603
12
13  On behalf of the State of Alabama:
14     H. CLAY BARNETT, III, ESQ. (via phone)
15     Beasley, Allen, Crow, Methvin, Portis &
16       Miles, P.C.
17     218 Commerce Street
18     Montgomery, Alabama 36104
19     (800) 898-2034
20     clay.barnett@beasleyallen.com
21
22

Page 336

1          A P P E A R A N C E S (Cont'd)
2
3   On behalf of the State of California:
4      NICHOLAS N. PAUL, ESQ. (via phone)
5      Supervising Deputy Attorney General
6      Civil Prosecutions Unit
7      P.O. Box 85266
8      110 West A Street, #1100
9      San Diego, California 82186
10     (619)-688-6099
11     nicholas.paul@doj.ca.gov
12
13  On behalf of the State of Florida:
14     MARY S. MILLER, ESQ. (via phone)
15     Office of the Attorney General of Florida
16     PL-01, The Capitol
17     Tallahassee, Florida 32399-1050
18     (850) 414-3600
19     mary_miller@oag.state.fl.us
20
21
22

3 (Pages 333 to 336)

DeParle, Nancy-Ann Min - Vol. II                                December 5, 2007
                            Washington, DC

Page 657

 1     A.  No.
 2         MR. HAVILAND:  Okay.  I have no more
 3  questions, Ms. DeParle.  I appreciate your time.
 4         MR. LIBMAN:  This is Ms. Libman.  Am I
 5  next up with a few questions, if I could?
 6         MS. YAVELBERG:  Yes.
 7
 8             EXAMINATION BY COUNSEL FOR THE
 9             STATES OF ALASKA, HAWAII, IDAHO,
10             ILLINOIS, KENTUCKY, SOUTH CAROLINA
11             AND WISCONSIN
12  BY MR. LIBMAN:
13     Q.  Ms. DeParle, I'm having a hard time
14  hearing you.  Let me try something else here.
15  Can you hear me Ms. DeParle?
16     A.  Yes.
17     Q.  Great.  My name is Robert Libman.  And
18  I'm outside counsel seven states I identified
19  earlier -- they include Alaska, Hawaii, Idaho,
20  Illinois, Kentucky, South Carolina and Wisconsin
21  -- in litigation brought against numerous drug
22  companies, including those who have been sued by

Page 658

 1  the U.S. Department of Justice.
 2         Our claims are brought under state law
 3  and among other things allege that all the
 4  defendants have reported and caused to be
 5  published average wholesale price for their drugs
 6  that are in fact not true prices, not true
 7  average prices and not true average wholesale
 8  prices.  In other words, not the price, the
 9  average price charged by wholesalers to their
10  customers.
11         Do you have any knowledge or have you
12  heard anything about the litigation brought by
13  the seven states that I represent?
14     A.  I believe I've seen articles in the
15  newspapers about the state litigation.  But
16  otherwise, no.
17     Q.  Okay.  Well, I only have a few
18  questions for you.  Starting with -- and I
19  apologize.  I don't have the exhibit number in
20  front of me.  But you were shown one OIG report.
21  Do you recall that I believe Mr. Cook read a
22  portion of it to you that made a representation

Page 659

 1  therein that the drug companies themselves were
 2  the ones who set the AWPs that were published by
 3  First Databank, Medi-Span and Red Book?  Do you
 4  recall that?
 5         MR. COOK:  Objection to form.
 6     A.  I recall -- well, generally.  I'm
 7  hesitating because you said First Databank and I
 8  don't remember that.  I remember Red Book, Blue
 9  Book and Medi-Span.
10     Q.  Okay.  But as to those three publishers
11  you understood that among other things they
12  published information including AWPs for certain
13  drugs; is that correct?
14     A.  Yes.
15     Q.  And do you recall the HHS OIG report,
16  one of those that was shown to your earlier
17  today, indicated that it was the drug company
18  that set the AWPs that were published by those
19  publications?
20     A.  You know, I'm sorry.  It's been a long
21  day.  I don't remember that precisely.
22     Q.  That's fine.  Was that your

Page 660

 1  understanding during the time you were HCFA
 2  administrator that the AWPs that were published
 3  in those publications were in fact set and
 4  controlled by the drug manufacturers?
 5     A.  No.
 6     Q.  Are you aware that in the cases for the
 7  states whom I represent that the drug companies,
 8  many of the drug companies have admitted that
 9  they in fact reported AWPs to these publications
10  intending that the identical AWPs would be
11  published by those publications?
12     A.  I'm not really aware of the claims or
13  testimony in the state litigation.
14     Q.  Okay.  Let me ask you to assume for the
15  next series of questions that that is in fact the
16  case; that is, that the drug companies controlled
17  the AWPs either by directly reporting an AWP that
18  was published in its identical form by these
19  publications or reported a different number known
20  as a WAC, a wholesale acquisition cost, by which
21  the publication applied a mathematical formula to
22  arrive at an AWP.  And then let me ask you a few

84 (Pages 657 to 660)

Page 681

1  that the actual wholesale price is lower than the
2  average wholesale price?
3       MS. YAVELBERG: Objection, form.
4    A. I'm sorry. This chart has six columns
5  or seven columns. And it's got the lowest, the
6  highest. Which one are you looking at?
7    Q. I'm looking at the first two columns.
8  The average Medicare allowed amount in column 1
9  and the actual average wholesale price in column
10 2.
11   A. All right.
12   Q. Can you confirm for me that in each of
13 those instances the that actual average wholesale
14 price reported by the OIG is lower than the
15 average Medicare allowed amount?
16   A. Yes.
17   Q. And so at least as of October 1, 1997
18 you knew that for those 22 drugs representing 67
19 percent of Medicare Part B spending on drugs that
20 the average wholesale prices published in
21 compendia were not actual averages of wholesale
22 prices, correct?

Page 682

1       MS. YAVELBERG: Objection, form.
2    A. No, I can't say that. I knew that for
3  these 22 drugs based on a statistical sampling
4  the OIG had determined what she called an actual
5  average wholesale price that was different in the
6  ways that were described in this chart. But I
7  don't know if that was an actual wholesale price.
8  It was a statistical sampling. We had a
9  discussion about what that is earlier.
10      So some might have been lower, some
11 might have been higher. I don't know -- the word
12 actual is a pretty technical term.
13   Q. And leaving semantics aside, is it fair
14 to say that the October 1, 1997 memorandum that
15 you initialed and that appears at page D2 of
16 Exhibit Abbott 002 accurately represents what you
17 understood and believed as of October 1, 1997?
18      MR. HAVILAND: Object to the form.
19   A. Yes.
20   Q. Three very quick questions, Ms.
21 DeParle. Has anyone representing Abbott ever
22 made any inappropriate lobbying attempts with

Page 683

1  respect to you or Congress of which you're aware?
2       MS. YAVELBERG: Objection to form.
3       MS. ALBEE: Objection to form.
4       MR. HAVILAND: Objection to form.
5    A. I don't recall.
6    Q. Can you tell me of any
7  misrepresentations that anybody representing
8  Abbott has ever made to you or to the government
9  of which you're aware?
10      MR. HAVILAND: Objection.
11      MS. YAVELBERG: Objection.
12   A. Well, I can't speak for the government,
13 first of all. To me, I can't recall.
14   Q. And can you recall or testify about any
15 instance in which Abbott ever made any
16 representations to you about AWP, how it was
17 reported or what it represents?
18   A. To me, no.
19      MR. COOK: I have no more questions.
20      MR. HAVILAND: I have a couple of
21 follow-ups unless others do in the room.
22      MR. WALLACH: I have two. Jason

Page 684

1  Wallach on behalf of Baxter.
2       MR. GORTNER: Why don't we go in order.
3       MR. WALLACH: Oh, I apologize.
4       THE VIDEOGRAPHER: I'm going to have to
5  change tapes.
6       MS. YAVELBERG: Okay.
7       THE VIDEOGRAPHER: This is the end of
8  tape 5. Off the record at 5:09.
9          (Recess.)
10      THE VIDEOGRAPHER: This is the
11 beginning of tape 6 in the deposition of Ms.
12 DeParle. On the record at 5:22.
13
14          FURTHER EXAMINATION BY COUNSEL FOR
15          THE DEY COMPANIES
16 BY MS. REID:
17   Q. This is Sarah Reid again. And I only
18 have a few questions.
19      You had testified not too long ago your
20 belief that when you started as administrator
21 that AWP reflected an actual average price. Do
22 you remember that testimony?

90 (Pages 681 to 684)

Page 685

1      MR. HAVILAND:  Can counsel bring her
2   voice up?  It's real hard to hear on the phone.
3   I apologize for interjecting.
4      Q.   Do you recall that's the testimony that
5   you gave to Mr. Haviland?
6      A.   I thought average wholesale price meant
7   average wholesale price, yeah.
8      Q.   An actual price.  That AWP was an
9   actual price.
10     A.   I don't know that I would use the word
11  actual.  What I meant was that I thought that the
12  Red Book and the Blue Book had the wholesale
13  prices that were paid out there in the
14  marketplace and that's what it's an average of.
15  I guess that's actual.
16     Q.   So I want to direct your attention to
17  March of 1998, shortly after you became the
18  administrator and you had your meeting with Ven-
19  A-Care representatives.  And we've marked when
20  you were examined on the first day of your
21  deposition the materials of Ven-A-Care presented
22  at that meeting.  Do you recall?

Page 686

1           MS. YAVELBERG:  Objection, form.
2      A.   This is from day one.  I don't think
3   we've looked at it today.  But yeah, I recall
4   that Mr. Cook presented those to me.
5      Q.   And during that meeting Ven-A-Care
6   representatives told you that AWP was not an
7   actual price or an actual average price, didn't
8   they?
9           MS. YAVELBERG:  Objection to form.
10     A.   I don't recall that.  What I recall is
11  that they said that the drug companies were
12  committing fraud.
13     Q.   And do you recall that they explained
14  to you or showed you material of how the AWPs
15  were reported to the publications and that they
16  did not represent any actual price?  Do you
17  recall any discussion about that whatsoever?
18          MS. YAVELBERG:  Objection, form.
19     A.   I don't.
20     Q.   And do you recall their discussion
21  about how they alleged the manufacturers and the
22  pharmaceutical companies were marketing the

Page 687

1   spread?
2           MS. YAVELBERG:  Objection, form.
3      A.   I don't recall those words, no.
4      Q.   And do you recall seeing any slides in
5   which Ven-A-Care basically explained how the
6   spread was used to cover Medicare's 20 percent
7   copayment, to pay kickbacks and provide windfall
8   profits?
9           MS. YAVELBERG:  Objection to form.
10     A.   No, I don't.
11     Q.   Let me just show you that page that was
12  marked as Exhibit Abbott 206.  And if you can't
13  find it I'll just hand this one up to you.  It's
14  a whole volume.  It's Exhibit Abbott 206.
15     A.   It's several hundred pages, it looks
16  like.
17     Q.   If you look in Exhibit Abbott 206 at
18  what's been Bates stamped as 2900669 --
19     A.   As I said before, I don't recall having
20  seen this.  And I'm puzzled when I look at the
21  first page of it because it says HCFA Office of
22  Financial Management.  I don't remember anyone

Page 688

1   from there being at this meeting or having
2   anything to do with it.  So I wonder if this was
3   actually given to me.
4           Tell me the number again.
5      Q.   2900669.  It has a slide on the top
6   where it talks about the spread?
7      A.   Yes.
8      Q.   You see what it's referring to, that
9   the spread is used to -- and then it goes through
10  its five bullet points?
11     A.   (Nods head).
12     Q.   So is your testimony this having
13  attended this meeting with Ven-A-Care you have
14  absolutely no memory whatsoever that the
15  gentleman from Ven-A-Care basically came in and
16  told you that AWP was a false figure being
17  falsely reported to the various compendia in
18  order to pay kickbacks, provide windfall profits,
19  drive utilization, influence which drug a
20  physician utilizes?  Is that your testimony?
21          MS. YAVELBERG:  Objection to the form.
22          MS. ALBEE:  Objection to the form.