# Exhibit 83

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 285

```
            UNITED STATES DISTRICT COURT

        FOR THE DISTRICT OF MASSACHUSETTS

----------------------------------X  MDL NO. 1456

IN RE:  PHARMACEUTICAL INDUSTRY   :  CIVIL ACTION:

AVERAGE WHOLESALE PRICE LITIGATION : 01-CV-12257-PBS

----------------------------------X

THIS DOCUMENT RELATES TO:         :

U.S. ex rel. Ven-A-Care of the    :  CIVIL ACTION:

Florida Keys, Inc. v. Abbott      :  06-CV-11337-PBS

Laboratories, Inc.                :

----------------------------------X


            IN THE CIRCUIT COURT OF

         MONTGOMERY COUNTY, ALABAMA

----------------------------------X

STATE OF ALABAMA,                 :  CASE NO.

        Plaintiff,                :  CV-05-219

    v.                            :

ABBOTT LABORATORIES, INC.,        :  JUDGE

et al.,                           :  CHARLES PRICE

        Defendants.               :

----------------------------------X
```

```
                                          Page 286
 1  STATE OF WISCONSIN    CIRCUIT COURT    DANE COUNTY
 2  ---------------------------------X
 3  STATE OF WISCONSIN,              : CASE NO.
 4       Plaintiff,                  : 04-CV-1709
 5    v.                             :
 6  AMGEN INC., et al.,              :
 7       Defendants.                 :
 8  ---------------------------------X
 9
10           IN THE COURT OF COMMON PLEAS
11             FIFTH JUDICIAL CIRCUIT
12  ---------------------------------X
13  STATE OF SOUTH CAROLINA, and     : STATE OF
14  HENRY D. McMASTER, in his official : SOUTH CAROLINA
15  capacity as Attorney General for : COUNTY OF
16  the State of South Carolina,     : RICHLAND
17       Plaintiff,                  :
18    v.                             : CIVIL ACTION:
19  MYLAN LABORATORIES, INC.         : 07-CP-40-0283
20       Defendant.                  :
21  ---------------------------------X
22
```

```
                                          Page 287
 1     IN THE COURT OF THE SECOND JUDICIAL CIRCUIT
 2         IN AND FOR LEON COUNTY, FLORIDA
 3  THE STATE OF FLORIDA
 4  ex rel.
 5  ------------------x
 6  VEN-A-CARE OF THE FLORIDA        :
 7  KEYS, INC., a Florida            :
 8  Corporation, by and through its  :
 9  principal officers and directors, :
10  ZACHARY T. BENTLEY and           :
11  T. MARK JONES,                   :
12       Plaintiffs,                 :
13    vs.                            : Civil Action
14  MYLAN LABORATORIES, INC.; MYLAN  : No.: 98-3032G
15  PHARMACEUTICALS INC.; NOVOPHARM  : Judge:
16  LTD., SCHEIN PHARMACEUTICAL, INC.; : William L.
17  TEVA PHARMACEUTICAL INDUSTRIES   : Gary
18  LTD., TEVA PHARMACEUTICAL USA;   :
19  and WATSON PHARMACEUTICALS, INC. :
20       Defendants.                 :
21  ------------------x
22
```

```
                                          Page 288
 1  IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
 2             STATE OF MISSOURI
 3  ------------------x
 4  STATE OF MISSOURI, ex rel.,      :
 5  JEREMIAH W. (JAY) NIXON,         :
 6  Attorney General,                :
 7  and                              :
 8  MISSOURI DEPARTMENT OF SOCIAL    :
 9  SERVICES, DIVISION OF MEDICAL    : Case No.:
10  SERVICES,                        : 054-1216
11       Plaintiffs,                 : Division
12                                   : No. 31
13    vs.                            :
14  DEY INC., DEY, L.P., MERCK KGaA, :
15  EMD, INC., WARRICK               :
16  PHARMACEUTICALS CORPORATION,     :
17  SCHERING-PLOUGH CORPORATION, and :
18  SCHERING CORPORATION,            :
19       Defendants.                 :
20  ------------------x
21
22
```

```
                                          Page 289
 1               New York, New York
 2               Thursday, June 21, 2007
 3
 4       CONTINUED Videotaped Deposition of
 5  BRUCE C. VLADECK, Ph.D., a witness herein, called
 6  for examination by counsel for Abbott Laboratories
 7  in the above-entitled matter, pursuant to
 8  Subpoena, the witness being duly sworn by JOMANNA
 9  DEROSA, a Notary Public in and for New York, taken
10  at the offices of Jones Day, 222 East 41st Street,
11  New York, New York, at 8:54 a.m. on Thursday, June
12  21, 2007, and the proceedings being taken down by
13  Stenotype by JOMANNA DEROSA, and transcribed under
14  her direction.
```

Vladeck, Ph.D., Bruce C. - Vol. II                                          June 21, 2007
New York, NY

Page 382

1    A.   I would distinguish two processes.
2    There are political considerations that, in
3    addition to legal considerations, prevented us
4    from seeking to change the policy
5    administratively.  And then there was political
6    opposition to -- efforts to change the law itself.
7        Q.   And so, it wasn't -- what I'm
8    trying to get at is HCFA wasn't overpaying because
9    it was fooled into believing that what it was
10   paying was actual acquisition costs.
11       Correct?
12          MS. LIANG:  Object to the form.
13          MR. BREEN:  Objection.  Form.
14          MS. BROOKER:  Objection.  Form.
15       A.   We did not believe we were paying
16   actual acquisition costs.
17          MR. COOK:  Let's take a short
18   break.
19          THE VIDEOGRAPHER:  The time is
20   10:47 a.m.  We're going off the record, concluding
21   Tape No. 7.
22          (Recess taken.)

Page 383

1           THE VIDEOGRAPHER:  The time is
2    11:01 a.m.  We're going back on the record,
3    starting Tape No. 8.
4        Q.   Dr. Vladeck, I'd like to ask you
5    just a few questions about the attempted survey
6    that HCFA undertook pursuant to 42 CFR 405.517, as
7    it was promulgated in November of 1991.
8           I've asked you to turn to Exhibit
9    Abbott 038 in the exhibit books before you.
10          MR. COOK:  And for the record,
11   Exhibit Abbott 038 is a copy of that regulation
12   from 1991 before it was amended several years
13   later.
14       Q.   And if you could look to Paragraph
15   B, which describes the methodology.  Do you see
16   that?
17       A.   Yes, sir.
18       Q.   And am I correct that Paragraph B
19   describes the methodology under which HCFA would
20   pay for drugs under Part B -- as Part B of
21   Medicare -- at the lower of either the national
22   average wholesale price or the estimated

Page 384

1    acquisition cost, and the estimated acquisition
2    cost would be determined based upon a survey of
3    the actual invoice prices paid for the drug?
4           Is that correct?
5        A.   That's correct.
6        Q.   And that in estimating the
7    acquisition cost, the agency or the agency's
8    carriers, at least, would be allowed to include
9    such factors as inventory waste and spoilage.
10          Right?
11       A.   That's correct.
12       Q.   As I understand it, HCFA never
13   undertook the surveys authorized by Section
14   405.517.  Right?
15       A.   Not to get into semantics, the
16   surveys were never, in fact, conducted, I believe.
17       Q.   Who was responsible for -- well,
18   let me strike that.
19          Did HCFA take any steps towards
20   conducting such surveys?
21       A.   My understanding, which, frankly, I
22   think is based on information that's become

Page 385

1    available to me in the course of either my
2    preparation for this deposition or my earlier
3    involvement with Mr. Azorsky on the other
4    litigation, is that HCFA actually was prepared to
5    direct its carriers to undertake this survey, and
6    then the process was stopped -- I believe I have
7    been told, or I read somewhere that that was
8    because the Office of Management and Budget
9    refused to approve the survey instrument itself.
10       Q.   Do you know why it was the Office
11   of Management and Budget refused to approve the
12   survey?
13          MS. BROOKER:  Objection.  Form.
14       A.   I don't know why.  I am -- I am
15   aware that in that time period the Office of
16   Management and Budget was very sensitive to
17   concerns about allegations about the burden that
18   government surveys in general were imposing on the
19   private sector that was, in part, the rationale
20   for why OMB had to approve all surveys.
21          And it is my understanding, again,
22   secondhand or thirdhand, that there was

26 (Pages 382 to 385)