# Exhibit 90

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Civil Action No. 01-12257-PBS<br><br>Subcategory No. 06-11337-PBS |
| THIS DOCUMENT RELATES TO: | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS;<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; and<br><br>*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS | |

## DECLARATION OF MARK DUGGAN, PH.D.

I, Mark G. Duggan, hereby declare as follows:

1. I have been retained as an expert by the United States and relator Ven-A-Care of the Florida Keys, Inc. I am preparing this affidavit to respond to the Declaration of David Bradford, Ph.D., dated August 28, 2009, and as a supplement to my prior declarations. I have not set forth herein an exhaustive rebuttal of each point raised by Dr. Bradford. Rather, I have limited my response to the key points reasonably made in the time available.

2. In paragraphs 4 through 7 and Figures 1 and 2 of his August 28, 2009 declaration, Dr. Bradford isolates data from one NDC/quarter, draws conclusions based on it, and extrapolates those conclusions to all 26 NDCs and 65 quarters. Even with this one NDC/quarter, Dr. Bradford's conclusions are not sound.

3. Dr. Bradford's Figure 1 purports to show that the "average paid amounts across

states vary significantly." He does this as a method of contradicting statements I have made to the effect that the average amounts paid for each NDC were very similar. However, Dr. Bradford calculated and compared the average amount paid *per claim*, not the average amount paid *per unit*. He then failed to account for differences in the number of units on the typical claim in each state. Since the number of units per claim varies significantly from state to state for this NDC/quarter (e.g., 219 in NY vs 109 in PA), an examination of average paid amount per claim will suggest a false inconsistency.

4. It is more appropriate to look at the average paid amount per unit, which reveals greater consistency across states using the same reimbursement bases. States reimbursing based on AWPs are fairly consistent with each other as shown in Exhibit 1. States reimbursing based on WACs (Massachusetts and Missouri) are consistent with each other. Michigan is in between and appears to have reimbursed based on a state MAC for this NDC in this quarter.

5. Dr. Bradford then uses his Figure 2 to attempt to contradict my statement that the ratio of the damages to total Medicaid spending across the various states - despite the different adjudication methodologies - is stable. Here, Dr. Bradford purports to show that the average overcharge from one state to another is quite different. However, his analysis is again misleading.

6. One reason that Dr. Bradford's use of his Figure 2 is misleading is that he quoted my prior statement out of context. I did not say that the ratio of damages is similar in *every* case. When Dr. Bradford quoted from a portion of my prior statement, he failed to include the part where I specifically state that the ratio of damages is "in general" similar across states. Plus, my prior statement was made in the context of my description of the analysis that I performed in connection with all three defendants, Dey, Roxane and Abbott. Dr. Bradford has only examined the claims related to a single defendant, Dey. Thus, his comparison is incomplete.

7. In addition, a closer look at Dr. Bradford's Figure 2 demonstrates that it does

more to confirm than dispute my assertion that reimbursement amounts and overcharges are consistent across states with similar reimbursement methodologies. It can be seen from Dr. Bradford's Figure 2 that the two WAC states, Massachusetts and Missouri, have similar damage ratios (as would be expected.) The next lowest state in his chart, Michigan, appears to have used MACs during this quarter, thereby reducing the damages somewhat but not as much as the use of WACs. The remaining states all primarily relied upon AWPs[1] and demonstrate similar average overcharges in the range of approximately 60 to 70%.

8. Dr. Bradford then uses his Figure 3 to attempt to show that the extrapolation methodology I employed using the SMRF/MAX/MSIS/SDUD data is invalid for the purposes of this litigation because his claim-level analysis results in substantially lower damages. However, this is not an apples-to-apples comparison for at least two reasons. First, Dr. Bradford begins with a lower Medicaid utilization amount than I would have in either an extrapolation or a claims level analysis. Second, Dr. Bradford did not properly replicate my methodology when he calculated damages using state claims-level data.

9. With respect to the Medicaid utilization amount, when I conducted my claims-level analyses, I compared all sources of data to each other, preferring state claims-level data to SMRF/MAX to MSIS to SDUD and opted for the less preferred source only when the preferred source appeared to be incomplete (i.e., half or less than indicated by other sources). Dr. Bradford used different, unknown criteria to prefer state claims-level data over other sources.

10. Using a set of state claims data files produced by Dr. Bradford and filling in missing quarters with SMRF/MAX/MSIS/SDUD data to get a more accurate utilization figure, I calculate a total of $80.31 million in total Medicaid spending – much closer to my $78.9 million figure than the $73.1 million figure in the column labeled "Total Medicaid paid amount using

---

[1] Note that while Florida used both AWP and WAC in reimbursing claims during most of the relevant period, during the quarter in Dr. Bradford's chart Florida did not consider WAC in its reimbursement methodology due to a computer programming glitch.

claims data ($mm)" in Dr. Bradford's Figure 3. I cannot determine exactly how Dr. Bradford handled the data because of limitations in the supporting data produced by Dr. Bradford. However, two unambiguous instances of such differences include 3 quarters (1998 Q4-1999 Q2) in Kansas where state claims data is missing more than $500,000 in comparison to SMRF/MAX/MSIS/SDUD data, and 4 quarters (2007 Q1-2007 Q4) in Alaska that Dr. Bradford ignores entirely and that amounts to more than $47,000 in SMRF/MAX/MSIS/SDUD data.

11. Once Dr. Bradford assembled his smaller starting point of $73.1 million in paid claims, he then proceeded to eliminate additional claims from consideration in his damage calculations using an algorithm designed to test the data in connection with the reimbursement methodology of each state. If the claim failed his test, it was culled from the sample. Dr. Bradford has not identified how many additional claims were culled from the sample and the data he has made available to the United States is insufficient to replicate his work. Although I also culled claims from the data collected directed from the states for this case, I am unable to determine whether or not Dr. Bradford culled a comparable amount. In any event, he did not actually calculate his version of damages from the $73.1 million in claims that he identifies in his chart, but calculated damages from some lesser, unknown figure.

12. I understand the defendants to argue that their inflated prices do not have any causal impact on Medicaid reimbursement for claims where the original basis of payment was a FUL, MAC, or U&C. This is contradicted by the "lower of" payment methodology documented in the Myers and Stauffer state methodology summaries, which make clear that, in general, if an AWP-based or WAC-based amount is lower than a FUL, MAC, or U&C, the AWP-based or WAC-based amount will be used as the basis for payment. (A few states, most notably New York, have not followed this approach all the time.) State claims-level data confirms this conclusion. The attached Exhibit 2 shows the billing data maintained by Florida in connection with seven claims processed in 2001 for Abbott's NDC 00074-7101-02. In each of the seven

examples, the data suggests that the same Florida MAC (called the "general upper limit price" or GULP by Florida) is in place.[2] Also, for each example, it can be seen from the data that Florida calculated the payment using the AWP-based EAC and the charge-based U&C. In each example, the actual reimbursement was set at the lowest of the MAC, EAC or U&C. Thus, when the EAC resulted in an allowed amount less than the MAC, the actual reimbursement was based on the EAC, not on the MAC.

13.  That particular situation – where the EAC was lower than the MAC – occurred in these examples when Abbott caused its AWP to drop on this 250ml bag of saline from $16.95 to just $3.31 (effective April 6, 2001) by reducing its catalog price from $14.27 to $2.86. The data shows that, when the EAC was lower than the GULP, Florida paid the claim using the EAC amount, not the GULP amount. The alternative AWPs used in my calculation of damages for Abbott on this drug ranged from $2.33 to $2.40 during 2001. Had First DataBank published an AWP of, say $2.40, Florida would have paid $2.08 per 250ml bag (or .008328 per ml), which is lower than the GULP amount. Florida's reliance upon and use of the Abbott AWP of $3.31 to set reimbursement, which resulted from Abbott's voluntary 2001 catalog price drop, also demonstrates that the states would have used AWPs comparable to the alternative AWPs that I calculated.

14.  I understand that an issue has been raised concerning claims for compounded drugs in the state of Georgia. In my damages analysis, I did not calculate damages for compounded drugs. A compound drug claim in Georgia lists the NDC as "00000000888," populates the "drug name" field with the actual NDC, and sets the value of the "drug compound"

---

[2] The data does not directly identify the GULP which only appears on claims that are actually paid based on it. I was able to determine the GULP by using the allowed charge source variable and then reverse engineering. For claims paid at U&C or EAC, I am assuming the GULP was the same as I see in contemporaneous or nearly contemporaneous claims. I checked this assumption by examining claims for other .9% sodium chloride NDCs and found that their GULPs (based again on claims paid based on their GULP) did not change throughout the same time period.

field to "Y." When I filtered the Georgia claims data to select claims for analysis, I selected only claims with NDC field values matching those in the complaints and did not use the "drug name" field. Therefore, no claims for compounded drugs were included in the determination of damages. I followed a similar approach using the state claims-level data of other states. My exclusion of compounded drugs was conservative and would tend to understate damages.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this __21st__ day of September, 2009.

_____
Mark Duggan, Ph.D.



**Exhibit 2: Florida FMMIS Claims Showing Lesser-of Methodology (NDC: 00074710102, SODIUM CHLORIDE 0.9% SOLN)**

| Field Name | Claim 1 | Claim 2 | Claim 3 | Claim 4 | Claim 5 | Claim 6 | Claim 7 |
|---|---|---|---|---|---|---|---|
| STECK_ID | 1440155343 | 1606426620 | 1628780941 | 1612486231 | 1477664803 | 1550624060 | 1471202113 |
| CLM-INPUT-MEDIUM-IND | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| BATCH-DATE | 1058 | 1162 | 1298 | 1298 | 1345 | 1310 | 1354 |
| MICROFILM-MACHINE-NO | 9 | 9 | 9 | 9 | 9 | 9 | 9 |
| MICROFILM-ROLL-NO | 9 | 9 | 9 | 9 | 9 | 9 | 9 |
| BATCH-NUMBER | 73 | 111 | 62 | 57 | 21 | 55 | 73 |
| DOCUMENT-NUMBER | 752 | 261 | 98 | 137 | 674 | 775 | 342 |
| LINE-NUMBER | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| TOTAL-CLAIM-CHARGE | $ 76.80 | $ 743.83 | $ 46.49 | $ 29.10 | $ 8.56 | $ 19.36 | $ 7.54 |
| CLM-RECIP-PMT-AMT | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| THIRD-PARTY-PMT-AMT | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| AMT-PAID-BY-MCARE | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| NET-CLAIM-CHARGE | $ 76.80 | $ 743.83 | $ 46.49 | $ 29.10 | $ 8.56 | $ 19.36 | $ 7.54 |
| REIMBURSEMENT-AMOUNT | $ 20.97 | $ 196.74 | $ 46.49 | $ 29.10 | $ 7.60 | $ 13.35 | $ 7.54 |
| SPENDDOWN-AMOUNT | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PRESC-PROV-LICENS-NO | ME0066680 | ME0012314 | ME0029538 | ME0031413 | ME0039740 | ME0045500 | ME0055974 |
| DRUG-QUANTITY | 1000 | 11500 | 3000 | 1750 | 250 | 750 | 250 |
| DRUG-DISPENSING-FEE | $ 4.23 | $ 4.23 | $ 4.23 | $ 4.23 | $ 4.73 | $ 4.73 | $ 4.73 |
| ALLOWED-CHARGE | $ 20.97 | $ 196.74 | $ 54.45 | $ 33.52 | $ 7.60 | $ 13.35 | $ 7.60 |
| ALLOWED-CHRG-SOURCE | G | G | B | B | E | E | B |
| STECK_FIRST-DATE-OF-SVC | 20010107 | 20010107 | 20010108 | 20010118 | 20011206 | 20011106 | 20011219 |
| STECK_NDC | 00074710102 | 00074710102 | 00074710102 | 00074710102 | 00074710102 | 00074710102 | 00074710102 |
| GULP Unit Price in Effect | 0.01674 | 0.01674 | 0.01674 | 0.01674 | 0.01674 | 0.01674 | 0.01674 |
| Allowed Amount if at GULP | $ 20.97 | $ 196.74 | $ 54.45 | $ 33.52 | $ 8.91 | $ 17.28 | $ 8.91 |
| Reimbursement if at GULP | $ 20.97 | $ 196.74 | $ 54.45 | $ 33.52 | $ 8.91 | $ 17.28 | $ 8.91 |
| AWP Unit Price in Effect | 0.06778 | 0.06778 | 0.06778 | 0.06778 | 0.01325 | 0.01325 | 0.01325 |
| AWP-13.25% | 0.05880 | 0.05880 | 0.05880 | 0.05880 | 0.01149 | 0.01149 | 0.01149 |
| Allowed Amount if at AWP-13.25% | $ 63.02 | $ 680.42 | $ 180.62 | $ 107.12 | $ 7.60 | $ 13.35 | $ 7.60 |
| Reimbursement if at AWP-13.25% | $ 63.02 | $ 680.42 | $ 180.62 | $ 107.12 | $ 7.60 | $ 13.35 | $ 7.60 |
| Reimbursement if at Billed Amount | $ 76.80 | $ 743.83 | $ 46.49 | $ 29.10 | $ 8.56 | $ 19.36 | $ 7.54 |
| Est_Source | GULP | GULP | Billed Amount | Billed Amount | AWP-13.25% | AWP-13.25% | Billed Amount |
| Reimbursed | $ 20.97 | $ 196.74 | $ 46.49 | $ 29.10 | $ 7.60 | $ 13.35 | $ 7.54 |
| **Florida Version of MAC (GULP)** | **$ 20.97** | **$ 196.74** | $ 54.45 | $ 33.52 | $ 8.91 | $ 17.28 | $ 8.91 |
| **FL EAC (based on AWP-13.25%)** | $ 63.02 | $ 680.42 | $ 180.62 | $ 107.12 | **$ 7.60** | **$ 13.35** | $ 7.60 |
| **U&C (billed Amount)** | $ 76.80 | $ 743.83 | **$ 46.49** | **$ 29.10** | $ 8.56 | $ 19.36 | **$ 7.54** |
| **Reimbursed by Florida Medicaid** | **$ 20.97** | **$ 196.74** | **$ 46.49** | **$ 29.10** | **$ 7.60** | **$ 13.35** | **$ 7.54** |