# Exhibit 94

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

```
                                                          Page 200

           FOR THE DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - -x
IN RE:  PHARMACEUTICAL          :  MDL NO. 1456
INDUSTRY AVERAGE WHOLESALE      :  CIVIL ACTION
PRICE LITIGATION                :  01-CV-12257-PBS
THIS DOCUMENT RELATES TO        :
U.S. ex rel. Ven-a-Care of      :  Judge Patti B. Saris
the Florida Keys, Inc.          :
     v.                         :
Abbott Laboratories, Inc.,      :  Chief Magistrate
No. 06-CV-11337-PBS             :  Judge Marianne B.
- - - - - - - - - - - - - - - -x    Bowler

       (CROSS NOTICED CAPTIONS ON FOLLOWING PAGES)

      Videotaped deposition of DR. THOMAS A. GUSTAFSON

                      Volume II

                              Washington, D.C.

                              Monday, December 17, 2007

                              9:19 a.m.
```

0f5405d9-4c43-466a-acf4-74791a0d4549

1   billion claims a year, and the administrative
2   resources available are slender, and not typically
3   increased when Congress puts on new mandates for
4   different changes in law.
5           So in this instance, we more or less
6   stayed still, as I recall, and continued to use the
7   Red Book-based average wholesale price as a
8   reasonable way of proceeding in reflecting the
9   statute.
10          BY MR. COOK:
11      Q.  Now, as I understand this particular
12  statute, the Balanced Budget Act of 1997, was
13  addressed to the agency, correct?
14      A.  The mandate typically runs to the
15  Secretary, but allowing that precision, yes.
16      Q.  So the mandate runs to the Secretary who
17  then delegates it to the agency, in this case it was
18  HCFA, right?
19      A.  That's correct.
20      Q.  You said that the agency first must
21  interpret the statute to determine what the mandate
22  is, right?  I'm sorry.  You have to verbalize.  Is

Gustafson, Dr. Thomas A.                              December 17, 2007

Page 258

1     that correct?
2          A.    I believe so.  Yes.
3          Q.    How did the agency interpret the statute
4     in this particular instance?
5          A.    I think it's well-known.  We used average
6     wholesale price in the Red Book as a reflection of
7     average wholesale price as called for by the statute.
8          Q.    Who made the decision to interpret the
9     statute in that manner?
10              MR. MAO:  You can answer except to the
11    extent that it reveals deliberative process and
12    deliberative discussions that they had internally.
13              MR. AZORSKY:  Objection to form.
14              THE WITNESS:  I don't think I can say
15    anything on that subject without invading
16    deliberative process questions.
17              BY MR. COOK:
18         Q.    Well, let me break it down just a little
19    bit.  Congress gives a mandate to pay 95 percent of
20    the average wholesale price, correct?
21         A.    Uh-huh.
22         Q.    Someone within the agency has to make a