# Exhibit 98

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-----------------------x

IN RE:  PHARMACEUTICAL    )MDL NO. 1456

INDUSTRY AVERAGE          )

WHOLESALE PRICE           )CIVIL ACTION:

LITIGATION                )01-CV-12257-PBS

                          )

THIS DOCUMENT RELATES TO)

U.S. ex rel. Ven-A-Care  )

of the Florida Keys,     )

Inc. v. Abbott           )

Laboratories, Inc., et   )

al. No. 06-CV-11337-PBS  )

-----------------------x

               March 13, 2008

    VIDEOTAPED 30(b)(6) DEPOSITION OF

        CIGNA (CAROLYN HELTON)

    Taken on Behalf of the Defendants

30(b)(6) Cigna (Helton, Carolyn)                          March 13, 2008
                          Nashville, TN

Page 2

1  APPEARANCES:
2          FOR THE PLAINTIFF:
3              U.S. DEPARTMENT OF JUSTICE
4              U.S. ATTORNEY'S OFFICE
5              BY GEORGE B. HENDERSON, ESQ.
6              United States Courthouse
7              1 Courthouse Way
8              Suite 9200
9              Boston, Massachusetts  02210
10             (617) 748-3272
11             george.henderson2@usdoj.gov
12         FOR THE DEFENDANT ABBOTT LABORATORIES,
13         INC.:
14
15             REED WEITKAMP SCHELL & VICE, PLLC
16             BY DAVID J. HALE, ESQ.
17             500 West Jefferson Street
18             Suite 2400
19             Louisville, Kentucky  40202-2812
20             (502) 589-1000
21             dhale@rwsvlaw.com
22             - and -

Page 295

1   the VMS system?
2   A     When we were doing them monthly, it would
3   be within a day or two of when we completed the
4   array.  When we were doing them quarterly, it
5   was as close to the business -- first business
6   day of each quarter that we could get to.
7   Q     Okay.  Now, referring you to Roxane
8   Exhibit 58, I believe you testified in some
9   response to questions by Mr. Heck that with
10  regard to the arrays shown in the first three
11  pages of this document, Roxane does not appear
12  in any of the arrays; is that correct?
13  A     That's correct.
14  Q     Now, with respect to all of the arrays
15  beginning April 1, 1997, through the end of the
16  time period covered by this document, if the Red
17  Book had reported lower prices for ipratropium
18  bromide in the forms covered by K0518 and J7644,
19  would the allowed amount calculated -- let me
20  back up.
21          If the Red Book had reported lower
22  prices for Roxane's ipratropium bromide, say, of

Page 296

1   $1.00 per milligram, would the allowed amounts
2   have been lower?
3            MS. LIEBERMAN:  Objection.  Lack of
4   foundation.
5            THE WITNESS:  Yes.
6   BY MR. HENDERSON:
7   Q    Is that true with respect to all of the
8   arrays after April 1 -- on or after --
9            MS. LIEBERMAN:  Objection.
10  BY MR. HENDERSON:
11  Q    -- on or after April 1, 1997?
12           MS. LIEBERMAN:  Objection.
13           THE WITNESS:  I am not quite sure on
14  all of the arrays.  If we are considering just
15  the Roxane products being $1.00 --
16  BY MR. HENDERSON:
17  Q    You might have to do some calculations?
18  A    Yes, because there's nine -- for example,
19  on the 12/21/96, you actually have eight
20  products that are in the generic.  If only the
21  three from Roxane changed, the array --
22  Q    12/21/96?

Page 297

1  A     I'm sorry, '98.
2  Q     Okay.
3  A     The 00960.
4  Q     I'm sorry, the 960?
5  A     The Bates stamp.
6  Q     Let me get it.  All right.  Thank you.
7  Okay.
8  A     If you only changed Roxane to $1.00 --
9  Q     Yep.
10 A     -- that's your bottom three.  Generally
11 when you have eight items your fourth and your
12 fifth items are going to be averaged or -- so
13 the middle two.  So those would fall below and
14 would not -- it would have calculated off of the
15 3.22 and the 3.52.
16 Q     Okay.
17 A     And it would have made it lower because
18 you would have averaged the 3.22 and the 3.52.
19 But I don't know exactly how much lower.
20 Q     Okay.  All right.  If both Dey and Roxane
21 had reported or if Red Book had published prices
22 for ipratropium bromide of $1.00 --

Page 298

1   approximately of $1.00 for both Dey and Roxane,
2   the allowed amount would have been considerably
3   lower; is that fair to say?
4   A     Yes.
5             MS. LIEBERMAN:  Object.
6   BY MR. HENDERSON:
7   Q     Is that true with respect to all of the
8   arrays after April 1, 1997?
9   A     Yes.
10  Q     Now, if you could find Abbott Exhibit 603,
11  which I'm trying to find myself.  Okay.  If --
12  looking at the first page, which is an array for
13  J3370, vancomycin.  If Abbott -- if the
14  Abbott -- if -- I'm sorry.
15            If the Red Book had reported AWP's
16  for the two Abbott drugs of, for example, $2.00
17  and $6.00 instead of the $10.56 and the $29.36,
18  would the allowed amount have been lower?
19            MR. HALE:  Objection.
20            MS. RAMSEY:  Objection.
21            MS. GIULIANA:  Objection.
22            THE WITNESS:  Yes.