# Exhibit 101

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc v. Abbott Laboratories, Inc.; Dey, Inc., et al.; Boehringer Ingelheim Corp., et al.;*
Civil Action No. 01-12257-PBS

Exhibit to the September 22, 2009, Declaration of George B. Henderson, II
In Support of Plaintiff's Response to Defendants' Combined Local Rule 56.1
Statement of Additional Material Facts Pertinent to the United States' Motions
for Partial Summary Judgment Against Defendants

Page 240

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL | ) | MDL NO. 1456 |
| INDUSTRY AVERAGE WHOLESALE | ) | CIVIL ACTION |
| PRICE LITIGATION | ) | 01-CV-12257-PBS |
| | ) | |
| THIS DOCUMENT RELATES TO | ) | |
| U.S. ex rel. Ven-a-Care of | ) | Judge Patti B. Saris |
| the Florida Keys, Inc. | ) | |
| v. | ) | Chief Magistrate |
| Abbott Laboratories, Inc., | ) | Judge Marianne B. |
| No. 06-CV-11337-PBS | ) | Bowler |

- - - - - - - - - - - - - - - -

Videotaped deposition of MARK G. DUGGAN, PH.D.

Volume II

Washington, D.C.

Tuesday, May 19, 2009

9:30 a.m.

Duggan, Ph.D., Mark G. - Vol. II                                      May 3, 2009
                                Washington, DC

Page 241

1    Continued videotaped deposition of MARK G.
2    DUGGAN, PH.D., held at the law offices of Jones Day,
3    51 Louisiana Avenue, N.W., Washington, D.C. 20001,
4    the proceedings being recorded stenographically by
5    Jonathan Wonnell, a Registered Professional Court
6    Reporter and Notary Public of the District of
7    Columbia, and transcribed under his direction.

Page 242

1           A P P E A R A N C E S   O F   C O U N S E L
2
3       On behalf of the United States of America:
4           GEJAA T. GOBENA, ESQ.
5           U.S. Department of Justice
6           Civil Division
7           P.O. Box 261, Ben Franklin Station
8           Washington, D.C. 20044
9           (202) 305-9300
10          gejaa.gobena@usdoj.gov
11          justin.draycott@usdoj.gov
12
13      On behalf of Abbott Laboratories:
14          DAVID TORBORG, ESQ.
15          TARA M. STUCKEY, ESQ.
16          Jones Day
17          51 Louisiana Avenue, N.W.
18          Washington, D.C. 20001-2113
19          (202) 879-3939
20          dstorborg@jonesday.com
21          tmstuckey@jonesday.com
22

Page 243

1              A P P E A R A N C E S  (Cont'd)
2
3    ALSO PRESENT:
4       CONWAY BARKER, videographer

Page 244

1                    C O N T E N T S
2
3    WITNESS NAME                                     PAGE
4    MARK G. DUGGAN, PH.D.
5       By Mr. Torborg............................ 248
6
7
8                       E X H I B I T S
9    NUMBER              DESCRIPTION              PAGE
10   Exhibit Duggan Rebuttal 001 - Handwritten notes
11              by Dr. Duggan.... 272
12   Exhibit Duggan Rebuttal 002 - Rebuttal expert
13              report of Mark G.
14              Duggan, Ph.D..... 291
15   Exhibit Duggan Rebuttal 003 - Expert report of
16              James W. Hughes.. 314
17   Exhibit Duggan Rebuttal 004 - Expert report of
18              James W. Hughes.. 325
19   Exhibit Duggan Rebuttal 005 - Excerpts from the
20              deposition of
21              Thomas A. Scully
22              dated 5/15/07.... 332

                                                  2 (Pages 241 to 244)

Henderson Legal Services, Inc.
202-220-4158                                www.hendersonlegalservices.com

55243b38-09c2-4172-9b82-b49a74344d24

Page 341

1   MR. TORBORG:  We've only been going for
2   about a half hour.  Do you want to go for another
3   ten minutes?
4   THE WITNESS:  Yeah.  Another ten
5   minutes.  I just see it over there and it's
6   inviting.  I appreciate it.
7   BY MR. TORBORG:
8   Q.  If you would go to paragraph 40 of Dr.
9   Hughes' report.  Dr. Hughes wrote "First, as is
10  the case with Medicare, Dr. Duggan's damage
11  estimates for Medicaid are tainted by reliance on
12  a but-for world that is at odds with the record in
13  this matter.  For Medicaid Dr. Duggan's but-for
14  world relies on the following assumptions."
15  Now I'm going to paraphrase these to
16  move along.  The first is that your analysis
17  assumes the state and federal officials were
18  unaware of basically the difference between AWP,
19  WAC and marketplace prices.  The second is it
20  assumes that had officials been aware of these
21  pricing realities they would not only have changed
22  reimbursement policy immediately but they would

Page 342

1   have also based Medicaid reimbursement on his
2   calculation of average acquisition cost.
3   Third is it assumes in the but-for world
4   dispensing fees would not increase.  And fourth,
5   it assumes that all states are the same and they
6   would respond in the same way to challenges and
7   obstacles.
8   Did I fairly paraphrase those?
9   A.  Sure.
10  Q.  Now, in your rebuttal report you tackle
11  the issue that is classified under the third
12  category, right?  "Third, Dr. Duggan assumes in
13  the but-for world that dispensing fees would not
14  increase."  That's something that your rebuttal
15  report addresses, correct?
16  A.  It discusses the issue of ingredient
17  cost changes in states' methodologies and the
18  relationship if anything with dispensing fee
19  changes.
20  Q.  Does your rebuttal report address the
21  criticism Dr. Hughes makes that your analysis
22  assumes the state and federal officials were

Page 343

1   unaware for the entire relevant time period that
2   AWP did not constitute a selling price and WAC did
3   not include discounts and rebates?
4   A.  As I mentioned earlier today, the
5   knowledge of government officials was not an area
6   that I focus on for my analysis.
7   Q.  Let me ask you this.  Does your
8   difference calculation consider what state and
9   federal officials understood contemporaneously
10  about the relationship between AWP, WAC and actual
11  prices in the marketplace?
12  MR. GOBENA:  Objection to form.
13  THE WITNESS:  Can you repeat the
14  question?
15  Q.  I can read it back.
16  A.  Okay.
17  Q.  Does your difference calculation
18  consider what state and federal officials
19  understood contemporaneously about the
20  relationship between AWP, WAC and actual prices in
21  the marketplace?
22  MR. GOBENA:  Same objection.

Page 344

1   A.  As I said, that's really not -- there
2   were many state and federal officials employed at
3   the agencies during this time period.  And it has
4   not been a focus of what I set out to do or what
5   I've done.
6   Q.  In your rebuttal report do you address
7   the criticism that Dr. Hughes makes that your
8   difference calculation assumes that had officials
9   been aware of these pricing realities they would
10  not only have changed reimbursement policy
11  immediately but also that they would have based
12  Medicaid reimbursement on its calculation of
13  average acquisition cost?
14  A.  My analysis examines how Medicaid
15  spending would have changed if transaction-based
16  AWPs had been used holding other factors constant.
17  So had Abbott reported more accurately its prices
18  for vancomycin and the other products at issue in
19  this case to First Databank in some cases, Red
20  Book in other cases, state governments in other
21  cases, and those values been utilized in
22  adjudication methodologies, my analysis determines

27 (Pages 341 to 344)

Duggan, Ph.D., Mark G. - Vol. II                                May 3, 2009
                            Washington, DC

Page 345

1  how spending would have changed.
2          And so my analysis calculates how --
3  this is sort of, once again, touching on this
4  knowledge of government officials issue.  And it's
5  really -- that just wasn't the focus of my
6  analysis.
7      Q.  Is it your understanding that what Dr.
8  Hughes is saying there -- just to try to
9  paraphrase just to move along -- is that he's
10 saying that your difference calculation assumption
11 that states would have used much lower prices in
12 calculating ingredient prices if they were
13 available?
14     A.  It assumes that state agencies would
15 have used the AWPs when adjudicating the claims,
16 the alternative AWPs.
17     Q.  And I think we covered this at length in
18 your prior deposition so I don't want to belabor
19 it here.  But you've agreed that whether states
20 would have used much lower prices in adjudicating
21 ingredient cost reimbursements is an assumption in
22 your report, correct?

Page 346

1      A.  My analyses assume that the alternative
2  AWPs that I calculate from Abbott's data would
3  have been used by state Medicaid programs in
4  adjudicating the claims.  That is correct.  In
5  some cases, however, they would not have been --
6  they would have been overwritten by things like
7  usual and customary, for example.  So --
8      Q.  And have you done anything more in your
9  work on this case to consider or test the
10 assumption that states would have used much lower
11 prices in calculating ingredient reimbursements?
12         THE WITNESS:  Can you read that back?
13         (Whereupon, the requested portion
14 was read by the reporter.)
15     A.  That is an -- so I -- since receiving
16 this report I have not examined this issue
17 further.  However, I examined it, considered it to
18 some extent earlier in my earlier report.
19 BY MR. TORBORG:
20     Q.  Okay.  You would agree with me that your
21 rebuttal report doesn't address the issue of
22 whether or not states would have used lower prices

Page 347

1  akin to the prices you calculate in calculating
2  ingredient reimbursements, correct?
3      A.  It to some extent addresses it in that
4  it discusses the events that followed the change
5  in AWPs that's apparent from figure 1 and figure 2
6  for Abbott products and that's summarized
7  elsewhere in the report and that were later used -
8  - and then one can see the decline in Medicaid
9  spending that followed that.
10     Q.  Can you show me where in your report you
11 address this question, in your rebuttal report?
12     A.  Well, in an indirect way I am addressing
13 it when I discuss the change to Abbott's AWPs that
14 happened in 2001.  And it is apparent from -- it's
15 my own table 11.  There was a sharp decline in
16 Medicaid spending that followed that.  So I
17 address it tangentially, but not head-on, perhaps.
18         THE WITNESS:  Is this --
19         MR. TORBORG:  Why don't we take a lunch
20 break.
21         THE WITNESS:  Okay.  Great.
22         THE VIDEOGRAPHER:  Off the record at

Page 348

1  12:37.
2          (Whereupon, at 12:37 p.m. a lunch
3  recess was taken.)

28 (Pages 345 to 348)