Exhibit A

1

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                                   )
IN RE: PHARMACEUTICAL INDUSTRY     )
AVERAGE WHOLESALE PRICE            )
LITIGATION                         )
                                   )   NO. 1:07-CV-12257-PBS
                                   )
                                   )
- - - - - - - - - - -              )
                                   )
                                   )
UNITED STATES OF AMERICA EX REL    )
LINNETTE SUN AND GREG HAMILTON,    )
                 Plaintiffs,       )
                                   )
vs.                                )   NO. 1:08-cv-11200-PBS
                                   )
                                   )
BAXTER HEMOGLOBIN THERAPEUTICS     )
ET AL.,                            )
                 Defendants.       )
```

BEFORE:   THE HONORABLE PATTI B. SARIS


MOTION HEARING


John Joseph Moakley United States Courthouse
Courtroom No. 19
One Courthouse Way
Boston, MA 02210
June 22, 2009
4:10 p.m.


Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

```
 1   APPEARANCES:
 2
          LAW OFFICES OF MARK ALLEN KLEIMAN
 3        By:  Mark R. Correro, Esq.
          2907 Stanford Avenue
 4        Venice, CA 90292
          On behalf of the Plaintiffs.
 5
          DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
 6        By:  Merle M. Delancey, Jr., Esq.
          2101 L. Street N.W.
 7        Washington, D.C.  20037
          On behalf of the Defendant Baxter Healthcare.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    P R O C E E D I N G S:
 2          THE CLERK:  In re: Pharmaceutical Industry Average
 3   Wholesale Price Litigation, Civil Action 01-12257 will now be
 4   heard before this Court.
 5          Counsel please identify themselves for the record.
 6          MR. CORRERO:  Mark Correro, from the Law Offices of
 7   Mark Allen Kleiman, for plaintiffs Linnette Sun and Greg
 8   Hamilton.
 9          MR. DELANCEY:  Merle Delancey, for Baxter Healthcare,
10   from Dickstein Shapiro in Washington.
11          THE COURT:  Thank you.  I'm glad you're here.  Welcome
12   to Boston to you.  Welcome to this case.
13          Is this the first time you've been involved in this
14   case?
15          MR. CORRERO:  Yes, your Honor.
16          THE COURT:  Tell me about your case.
17          MR. CORRERO:  What I can tell you about our case,
18   since I am so new to both the firm and this case, is that we
19   have a proposed case management order.
20          MR. DELANCEY:  We do.
21          THE COURT:  But tell me what the case is about.  I
22   don't know anything about your case.  I've been doing this
23   wonderful case for eight years, so each one has a slightly
24   different twist to it.  So, what is it about?
25          MR. CORRERO:  Our case has to do with some biologics
```

```
 1   that are manufactured by the defendant and our allegations are
 2   that the --
 3           THE COURT:  Who are you?  Who do you represent?
 4           MR. CORRERO:  Linnette Sun and Greg Hamilton.
 5           THE COURT:  What is that?
 6           MR. CORRERO:  Linnette Sun is a former employee of
 7   Baxter.
 8           THE COURT:  Okay.
 9           MR. CORRERO:  And Greg Hamilton is also a relator in
10   our case.
11           THE COURT:  This is a False Claims Act case, so it's a
12   little different than a lot of my cases.  This is more like the
13   Ven-A-Care cases.
14           MR. CORRERO:  Yes, your Honor.
15           THE COURT:  So, who are your people?  Are they former
16   employees?
17           MR. CORRERO:  One is a former employee; yes, your
18   Honor.
19           THE COURT:  And what are they claiming?
20           MR. CORRERO:  They're claiming that Baxter misreported
21   the price of -- its lowest price to the government, thereby
22   causing the government to pay exorbitantly for the cost of the
23   biologic --
24           THE COURT:  Is this an AWP case or a WAC case?
25           MR. CORRERO:  AWP case.
```

1    THE COURT: Average wholesale pricing case. And has
2  the government not intervened?
3    MR. CORRERO: The government filed, as it has in I
4  think every *qui tam* case; except for some of the Ven-A-Care
5  cases declined to intervene so far.
6    THE COURT: And how many drugs are we talking about?
7    MR. CORRERO: I'm not sure, your Honor. I know there
8  are two biologics at issue.
9    THE COURT: Which are what?
10   MR. CORRERO: Factor VIII, and another one --
11   THE COURT: Factor VIII is what, growth?
12   MR. DELANCEY: Hemophilia clotting factor.
13   THE COURT: And what's the price you claim that Baxter
14  reported as opposed to what the price actually was?
15   MR. CORRERO: I'm so new to the case, I couldn't
16  answer that question for you, your Honor. I apologize.
17   THE COURT: Well, is this a Medicare and Medicaid
18  case?
19   MR. CORRERO: Yes, your Honor; Medicare and Medicaid
20  case.
21   THE COURT: And how much are the potential damages?
22   MR. CORRERO: I think, from reading over the complaint
23  and some of the documents, I've seen the inflation of some of
24  the prices as high as 40,000 percent.
25   THE COURT: Okay. Now from your point of view -- so,

1   is it a brand-new case?
2           MR. DELANCEY: No, no.
3           THE COURT: It's been sitting in some --
4           MR. DELANCEY: This is the same cases you've been, you
5   know, herding since 2000.
6           THE COURT: Biologics are a little different.
7           MR. DELANCEY: No, no. They're in the case, though.
8   Baxter biologics are in the main Hagens Berman consolidated
9   complaint. This is nothing new. They have best-price
10  allegations counts, they have False Claims Act AWP, False
11  Claims best price, and then they've got a bunch of
12  employment-related, retaliatory discharge for Ms. Sun.
13          Hamilton -- there's two relators. Hamilton never
14  worked for Baxter, doesn't purport to have any -- he never
15  worked for us.
16          THE COURT: Will never qualify as an original source.
17          MR. DELANCEY: He will never -- at best, he'll qualify
18  as an expert or as a consultant, but he'll never qualify as
19  independent or direct knowledge.
20          THE COURT: How does she have direct knowledge?
21          MR. CORRERO: She was an employee.
22          THE COURT: And?
23          MR. CORRERO: She was an employee, and I don't want to
24  misrepresent her employment.
25          MR. DELANCEY: Go ahead, because I'm sure if you're

1    not accurate, I'll clear you up.
2             THE COURT:  He seems not to be shy.
3             MR. DELANCEY:  Yeah.  I got this one.
4             MR. CORRERO:  She was an employee for Baxter, and I'm
5    not sure in what capacity she was an employee, because I'm so
6    new to the case.  I apologize.
7             THE COURT:  Are you a partner in the firm?
8             MR. CORRERO:  No, associate.
9             THE COURT:  An associate.
10            MR. CORRERO:  Just started with the firm in November.
11            THE COURT:  All right.  Well, congratulations you've
12   got a job, but next time tell -- who's the partner in charge of
13   this?
14            MR. CORRERO:  Mark Kleiman.
15            THE COURT:  Tell him to come or to teach you what it's
16   about.  All right?
17            So, you've got a case management order.  Are you
18   raising any False Claims Act kinds of defenses?
19            MR. DELANCEY:  Yes.  Do you have it in front of you?
20            THE COURT:  Actually, when I went running upstairs, I
21   think I left it upstairs.  Do you have an extra one?
22            We know that generally defendants here show up.  So,
23   the only issue is did we screw up and how we noticed it.  So,
24   it was really the plane, right.
25            MR. DELANCEY:  It's called rain and fog, and we were

1   an hour in DC before we even left.  I'm sorry.
2            On the best-price part, this is -- their case is worse
3   than the Ortho, which you've already ruled on.  I mean, there
4   you at least have an employee, a sales rep, who possibly might
5   have some knowledge of best price.  Here, Hamilton has none,
6   sun didn't even work in the same office.  I mean, she was out
7   in California.  They're computing best price in Chicago.
8            THE COURT:  So, what I never know -- because these
9   things are like sleeping dogs, they're under the radar
10  screen -- when did they file --
11           MR. DELANCEY:  2005.
12           THE COURT:  2005, and then it was kept under wraps,
13  under seal, where, what District?
14           MR. DELANCEY:  Colorado.
15           THE COURT:  In Colorado.  So, at some point some judge
16  must have unsealed it, because there was a declination, is that
17  what happened, and then it got transferred here?
18           MR. CORRERO:  It was transferred here from the
19  District of Colorado.
20           THE COURT:  So, as of 2005, not only was my
21  mega-complaint filed, but a slew of state cases have been
22  filed.
23           MR. DELANCEY:  Eleven.  Three had best-price claims in
24  them:  New York, Montana, Nevada.  Eleven pure AWP.  I mean,
25  this is not --

```
 1              THE COURT:  The same drugs.
 2              MR. DELANCEY:  Well, to the extent a drug existed,
 3    yes.  I mean, sometimes -- for example, they have Advate in
 4    their complaint.  Advate wasn't launched until -- I don't know
 5    the exact date -- but it's still -- it's covered in other
 6    complaints.  When we get releases, we get releases from states
 7    for everything.
 8              THE COURT:  So, I'm assuming you're going to file a
 9    motion to dismiss on those grounds.
10              MR. DELANCEY:  Big time.
11              THE COURT:  Have you looked at this issue yet?
12              MR. CORRERO:  No, your Honor.  We will fully brief the
13    issue when --
14              THE COURT:  Someone must have looked at it under Rule
15    11, right, whether or not they were otherwise disclosed?
16              MR. CORRERO:  I'm sorry?
17              THE COURT:  The partner must have looked at this.  I
18    mean, I've had the other cases come up like this, where it was
19    the master case and how much somebody else qualified as an
20    original source.
21              MR. DELANCEY:  Public disclosure, original source,
22    they're killed.  I mean, we tried -- we've engaged in serious
23    letter-writing campaign, going, Tell us what you're trying to
24    do here.  You say our best prices are wrong; what should they
25    have been?  He sends me a copy of a marketing research bureau,
```

1   a periodical that's published --

2   MR. CORRERO:  I have to interject.  I know one thing.

3   The letter-writing that went back and forth was pursuant to

4   settlement negotiations, and it's confidential.

5   THE COURT:  That may be.

6   MR. DELANCEY:  Well, I can tell you mine aren't but --

7   THE COURT:  I'll leave that alone.

8   MR. DELANCEY:  Fair enough.

9   THE COURT:  So, there's a motion to dismiss that's

10  going to filed on August 15th; opposition September 15th; reply

11  September 30th.

12  But what I'm sort of worrying about is whether there

13  should be any discovery at all until I figure out what's left.

14  The only issues that I've allowed discovery on is to the extent

15  that it applied to jurisdictional kinds of issues.  So, I don't

16  know if we can parse it that thinly.

17  MR. DELANCEY:  We have thought about that, your Honor.

18  I'd like to see what they say in response to our opposition,

19  and then, if there's discovery, we'll ask for it.  Based on the

20  complaint, there is nowhere for them to run.  We think this --

21  I mean --

22  THE COURT:  So, I'm going to stay discovery, pending

23  their motion to dismiss, and if you think you need targeted

24  discovery on the jurisdictional issues, you will let me know.

25  MR. CORRERO:  Yes, your Honor.

1  THE COURT: Okay. So, I'm staying it without
2  prejudice to this briefing schedule. Defendant's reply comes
3  in September 30th. Why don't we talk about late October for a
4  hearing date. This guy should come in, or you, if you're going
5  to be -- but whoever has knowledge should come in, and even
6  though I know it's far away, away from Texas, it's too
7  difficult to do over the telephone.
8  MR. DELANCEY: California.
9  THE COURT: California?
10  MR. CORRERO: Houston.
11  MR. DELANCEY: Oh. Mark's in California.
12  MR. CORRERO: Right.
13  THE CLERK: October 22nd at 2:00 p.m.
14  MR. DELANCEY: We will make it happen, and we'll be on
15  time. I'm sorry.
16  THE COURT: We don't need this on the record.
17  (Discussion held off the record)
18  THE COURT: I'll docket the case management order to
19  the extent the briefing schedule; otherwise, discovery is
20  stayed, and we'll just figure out if I have jurisdiction. I'll
21  do a jurisdictional analysis. I'm hoping what you all can do
22  is just if, in fact, there is some quick discovery, I could see
23  why you would possibly need a deposition of Ms. Sun. That
24  might be relevant, because if she puts in an affidavit saying
25  she's the original source, you lose.

12

1        MR. DELANCEY:  Please, bring that affidavit, and then
2  we will definitely ask for discovery if we see that.
3        THE COURT:  Or this other guy.
4        MR. DELANCEY:  Because it's not going to happen.
5        THE COURT:  I don't know.
6        MR. DELANCEY:  They can put the affidavit in, but in
7  terms of original source --
8        THE COURT:  I just have a basic prejudice; there is
9  nothing simple about this case ever.  If you present me with
10 something simple, I'll be a very happy woman.  So, this is a
11 very complicated, dense case that's gone on for eight years on
12 very important issues, and as far as I can tell, nothing's been
13 simple.  But I will give you narrow discovery on the
14 jurisdictional issues, but, otherwise, we won't do the broad
15 discovery till I've done the analysis.
16       Okay.  Good.  Thank you.
17       MR. DELANCEY:  Thank you, your Honor.
18       THE CLERK:  Court is in recess.
19 (Whereupon, proceedings concluded at 4:35 p.m.)
20
21
22
23
24
25

```
 1                    C E R T I F I C A T E
 2
 3
 4        I, Brenda K. Hancock, RMR, CRR and Official Reporter
 5   of the United States District Court, do hereby certify that the
 6   foregoing transcript, from Page 1 to Page 12, constitutes, to
 7   the best of my skill and ability, a true and accurate
 8   transcription of my stenotype notes taken in the matter of In
 9   Re: Pharmaceutical Industry Average Wholesale Price Litigation,
10   1:07-cv-12257-PBS, Sun, et al v Baxter Hemoglobin Therapeutics
11   et al., 1:08-cv-11200.
12
13
14
15
16
17            /s/ Brenda K. Hancock
18            Brenda K. Hancock, RMR, CRR
19            Official Court Reporter
20
21
22
23
24
25
```