**Exhibit A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
IN RE: PHARMACEUTICAL INDUSTRY    )
AVERAGE WHOLESALE PRICE           )
LITIGATION                        )
                                  )  NO. 1:07-CV-12257-PBS
                                  )
                                  )
- - - - - - - - - - - -           )
                                  )
                                  )
UNITED STATES OF AMERICA EX REL   )
LINNETTE SUN AND GREG HAMILTON,   )
                   Plaintiffs,    )
                                  )
vs.                               )  NO. 1:08-cv-11200-PBS
                                  )
                                  )
BAXTER HEMOGLOBIN THERAPEUTICS    )
ET AL.,                           )
                   Defendants.    )
```

BEFORE:  THE HONORABLE PATTI B. SARIS


MOTION HEARING


John Joseph Moakley United States Courthouse
Courtroom No. 19
One Courthouse Way
Boston, MA 02210
June 22, 2009
4:10 p.m.


Brenda K. Hancock, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way
Boston, MA 02210
(617)439-3214

1
APPEARANCES:

2
    LAW OFFICES OF MARK ALLEN KLEIMAN

3
    By:  Mark R. Correro, Esq.
    2907 Stanford Avenue

4
    Venice, CA 90292
    On behalf of the Plaintiffs.

5
    DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

6
    By:  Merle M. Delancey, Jr., Esq.
    2101 L. Street N.W.

7
    Washington, D.C.  20037
    On behalf of the Defendant Baxter Healthcare.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      P R O C E E D I N G S:

2          THE CLERK:  In re: Pharmaceutical Industry Average

3  Wholesale Price Litigation, Civil Action 01-12257 will now be

4  heard before this Court.

5          Counsel please identify themselves for the record.

6          MR. CORRERO:  Mark Correro, from the Law Offices of

7  Mark Allen Kleiman, for plaintiffs Linnette Sun and Greg

8  Hamilton.

9          MR. DELANCEY:  Merle Delancey, for Baxter Healthcare,

10  from Dickstein Shapiro in Washington.

11          THE COURT:  Thank you.  I'm glad you're here.  Welcome

12  to Boston to you.  Welcome to this case.

13          Is this the first time you've been involved in this

14  case?

15          MR. CORRERO:  Yes, your Honor.

16          THE COURT:  Tell me about your case.

17          MR. CORRERO:  What I can tell you about our case,

18  since I am so new to both the firm and this case, is that we

19  have a proposed case management order.

20          MR. DELANCEY:  We do.

21          THE COURT:  But tell me what the case is about.  I

22  don't know anything about your case.  I've been doing this

23  wonderful case for eight years, so each one has a slightly

24  different twist to it.  So, what is it about?

25          MR. CORRERO:  Our case has to do with some biologics

1    that are manufactured by the defendant and our allegations are

2    that the --

3            THE COURT:  Who are you?  Who do you represent?

4            MR. CORRERO:  Linnette Sun and Greg Hamilton.

5            THE COURT:  What is that?

6            MR. CORRERO:  Linnette Sun is a former employee of

7    Baxter.

8            THE COURT:  Okay.

9            MR. CORRERO:  And Greg Hamilton is also a relator in

10    our case.

11            THE COURT:  This is a False Claims Act case, so it's a

12    little different than a lot of my cases.  This is more like the

13    Ven-A-Care cases.

14            MR. CORRERO:  Yes, your Honor.

15            THE COURT:  So, who are your people?  Are they former

16    employees?

17            MR. CORRERO:  One is a former employee; yes, your

18    Honor.

19            THE COURT:  And what are they claiming?

20            MR. CORRERO:  They're claiming that Baxter misreported

21    the price of -- its lowest price to the government, thereby

22    causing the government to pay exorbitantly for the cost of the

23    biologic --

24            THE COURT:  Is this an AWP case or a WAC case?

25            MR. CORRERO:  AWP case.

1        THE COURT:  Average wholesale pricing case.  And has

2   the government not intervened?

3        MR. CORRERO:  The government filed, as it has in I

4   think every *qui tam* case; except for some of the Ven-A-Care

5   cases declined to intervene so far.

6        THE COURT:  And how many drugs are we talking about?

7        MR. CORRERO:  I'm not sure, your Honor.  I know there

8   are two biologics at issue.

9        THE COURT:  Which are what?

10       MR. CORRERO:  Factor VIII, and another one --

11       THE COURT:  Factor VIII is what, growth?

12       MR. DELANCEY:  Hemophilia clotting factor.

13       THE COURT:  And what's the price you claim that Baxter

14   reported as opposed to what the price actually was?

15       MR. CORRERO:  I'm so new to the case, I couldn't

16   answer that question for you, your Honor.  I apologize.

17       THE COURT:  Well, is this a Medicare and Medicaid

18   case?

19       MR. CORRERO:  Yes, your Honor; Medicare and Medicaid

20   case.

21       THE COURT:  And how much are the potential damages?

22       MR. CORRERO:  I think, from reading over the complaint

23   and some of the documents, I've seen the inflation of some of

24   the prices as high as 40,000 percent.

25       THE COURT:  Okay.  Now from your point of view -- so,

1  is it a brand-new case?

2          MR. DELANCEY:  No, no.

3          THE COURT:  It's been sitting in some --

4          MR. DELANCEY:  This is the same cases you've been, you

5  know, herding since 2000.

6          THE COURT:  Biologics are a little different.

7          MR. DELANCEY:  No, no.  They're in the case, though.

8  Baxter biologics are in the main Hagens Berman consolidated

9  complaint.  This is nothing new.  They have best-price

10  allegations counts, they have False Claims Act AWP, False

11  Claims best price, and then they've got a bunch of

12  employment-related, retaliatory discharge for Ms. Sun.

13          Hamilton -- there's two relators.  Hamilton never

14  worked for Baxter, doesn't purport to have any -- he never

15  worked for us.

16          THE COURT:  Will never qualify as an original source.

17          MR. DELANCEY:  He will never -- at best, he'll qualify

18  as an expert or as a consultant, but he'll never qualify as

19  independent or direct knowledge.

20          THE COURT:  How does she have direct knowledge?

21          MR. CORRERO:  She was an employee.

22          THE COURT:  And?

23          MR. CORRERO:  She was an employee, and I don't want to

24  misrepresent her employment.

25          MR. DELANCEY:  Go ahead, because I'm sure if you're

1  not accurate, I'll clear you up.

2       THE COURT:  He seems not to be shy.

3       MR. DELANCEY:  Yeah.  I got this one.

4       MR. CORRERO:  She was an employee for Baxter, and I'm

5  not sure in what capacity she was an employee, because I'm so

6  new to the case.  I apologize.

7       THE COURT:  Are you a partner in the firm?

8       MR. CORRERO:  No, associate.

9       THE COURT:  An associate.

10      MR. CORRERO:  Just started with the firm in November.

11      THE COURT:  All right.  Well, congratulations you've

12  got a job, but next time tell -- who's the partner in charge of

13  this?

14      MR. CORRERO:  Mark Kleiman.

15      THE COURT:  Tell him to come or to teach you what it's

16  about.  All right?

17      So, you've got a case management order.  Are you

18  raising any False Claims Act kinds of defenses?

19      MR. DELANCEY:  Yes.  Do you have it in front of you?

20      THE COURT:  Actually, when I went running upstairs, I

21  think I left it upstairs.  Do you have an extra one?

22      We know that generally defendants here show up.  So,

23  the only issue is did we screw up and how we noticed it.  So,

24  it was really the plane, right.

25      MR. DELANCEY:  It's called rain and fog, and we were

1    an hour in DC before we even left.  I'm sorry.

2           On the best-price part, this is -- their case is worse

3    than the Ortho, which you've already ruled on.  I mean, there

4    you at least have an employee, a sales rep, who possibly might

5    have some knowledge of best price.  Here, Hamilton has none,

6    sun didn't even work in the same office.  I mean, she was out

7    in California.  They're computing best price in Chicago.

8           THE COURT:  So, what I never know -- because these

9    things are like sleeping dogs, they're under the radar

10   screen -- when did they file --

11          MR. DELANCEY:  2005.

12          THE COURT:  2005, and then it was kept under wraps,

13   under seal, where, what District?

14          MR. DELANCEY:  Colorado.

15          THE COURT:  In Colorado.  So, at some point some judge

16   must have unsealed it, because there was a declination, is that

17   what happened, and then it got transferred here?

18          MR. CORRERO:  It was transferred here from the

19   District of Colorado.

20          THE COURT:  So, as of 2005, not only was my

21   mega-complaint filed, but a slew of state cases have been

22   filed.

23          MR. DELANCEY:  Eleven.  Three had best-price claims in

24   them:  New York, Montana, Nevada.  Eleven pure AWP.  I mean,

25   this is not --

1       THE COURT:  The same drugs.

2       MR. DELANCEY:  Well, to the extent a drug existed,

3    yes.  I mean, sometimes -- for example, they have Advate in

4    their complaint.  Advate wasn't launched until -- I don't know

5    the exact date -- but it's still -- it's covered in other

6    complaints.  When we get releases, we get releases from states

7    for everything.

8       THE COURT:  So, I'm assuming you're going to file a

9    motion to dismiss on those grounds.

10      MR. DELANCEY:  Big time.

11      THE COURT:  Have you looked at this issue yet?

12      MR. CORRERO:  No, your Honor.  We will fully brief the

13   issue when --

14      THE COURT:  Someone must have looked at it under Rule

15   11, right, whether or not they were otherwise disclosed?

16      MR. CORRERO:  I'm sorry?

17      THE COURT:  The partner must have looked at this.  I

18   mean, I've had the other cases come up like this, where it was

19   the master case and how much somebody else qualified as an

20   original source.

21      MR. DELANCEY:  Public disclosure, original source,

22   they're killed.  I mean, we tried -- we've engaged in serious

23   letter-writing campaign, going, Tell us what you're trying to

24   do here.  You say our best prices are wrong; what should they

25   have been?  He sends me a copy of a marketing research bureau,

1 a periodical that's published --

2 MR. CORRERO: I have to interject. I know one thing.

3 The letter-writing that went back and forth was pursuant to

4 settlement negotiations, and it's confidential.

5 THE COURT: That may be.

6 MR. DELANCEY: Well, I can tell you mine aren't but --

7 THE COURT: I'll leave that alone.

8 MR. DELANCEY: Fair enough.

9 THE COURT: So, there's a motion to dismiss that's

10 going to filed on August 15th; opposition September 15th; reply

11 September 30th.

12 But what I'm sort of worrying about is whether there

13 should be any discovery at all until I figure out what's left.

14 The only issues that I've allowed discovery on is to the extent

15 that it applied to jurisdictional kinds of issues. So, I don't

16 know if we can parse it that thinly.

17 MR. DELANCEY: We have thought about that, your Honor.

18 I'd like to see what they say in response to our opposition,

19 and then, if there's discovery, we'll ask for it. Based on the

20 complaint, there is nowhere for them to run. We think this --

21 I mean --

22 THE COURT: So, I'm going to stay discovery, pending

23 their motion to dismiss, and if you think you need targeted

24 discovery on the jurisdictional issues, you will let me know.

25 MR. CORRERO: Yes, your Honor.

1    THE COURT: Okay. So, I'm staying it without

2    prejudice to this briefing schedule. Defendant's reply comes

3    in September 30th. Why don't we talk about late October for a

4    hearing date. This guy should come in, or you, if you're going

5    to be -- but whoever has knowledge should come in, and even

6    though I know it's far away, away from Texas, it's too

7    difficult to do over the telephone.

8            MR. DELANCEY: California.

9            THE COURT: California?

10           MR. CORRERO: Houston.

11           MR. DELANCEY: Oh. Mark's in California.

12           MR. CORRERO: Right.

13           THE CLERK: October 22nd at 2:00 p.m.

14           MR. DELANCEY: We will make it happen, and we'll be on

15   time. I'm sorry.

16           THE COURT: We don't need this on the record.

17           (Discussion held off the record)

18           THE COURT: I'll docket the case management order to

19   the extent the briefing schedule; otherwise, discovery is

20   stayed, and we'll just figure out if I have jurisdiction. I'll

21   do a jurisdictional analysis. I'm hoping what you all can do

22   is just if, in fact, there is some quick discovery, I could see

23   why you would possibly need a deposition of Ms. Sun. That

24   might be relevant, because if she puts in an affidavit saying

25   she's the original source, you lose.

1       MR. DELANCEY: Please, bring that affidavit, and then
2   we will definitely ask for discovery if we see that.
3       THE COURT: Or this other guy.
4       MR. DELANCEY: Because it's not going to happen.
5       THE COURT: I don't know.
6       MR. DELANCEY: They can put the affidavit in, but in
7   terms of original source --
8       THE COURT: I just have a basic prejudice; there is
9   nothing simple about this case ever. If you present me with
10  something simple, I'll be a very happy woman. So, this is a
11  very complicated, dense case that's gone on for eight years on
12  very important issues, and as far as I can tell, nothing's been
13  simple. But I will give you narrow discovery on the
14  jurisdictional issues, but, otherwise, we won't do the broad
15  discovery till I've done the analysis.
16      Okay. Good. Thank you.
17      MR. DELANCEY: Thank you, your Honor.
18      THE CLERK: Court is in recess.
19  (Whereupon, proceedings concluded at 4:35 p.m.)
20
21
22
23
24
25

1        C E R T I F I C A T E

2

3

4        I, Brenda K. Hancock, RMR, CRR and Official Reporter

5   of the United States District Court, do hereby certify that the

6   foregoing transcript, from Page 1 to Page 12, constitutes, to

7   the best of my skill and ability, a true and accurate

8   transcription of my stenotype notes taken in the matter of *In*

9   *Re: Pharmaceutical Industry Average Wholesale Price Litigation,*

10  1:07-cv-12257-PBS, *Sun, et al v Baxter Hemoglobin Therapeutics*

11  *et al.,* 1:08-cv-11200.

12

13

14

15

16

17                    /s/ Brenda K. Hancock

18                    Brenda K. Hancock, RMR, CRR

19                    Official Court Reporter

20

21

22

23

24

25