# EXHIBIT D

# Memorandum

**To:** Mark Trail

**From:** Jerry Dubberly

**Date:** 8/02/2004

**Re:** Log 2073: Finely & Buckley

---

I have reviewed the letter to Commissioner Burgess regarding Average Wholesale Price litigation. The prospect of participating in such a case may produce a financial windfall for the State. However, there are certain areas that still need clarification.

1. With the full disclosure that "no regulation exist on how AWP's are calculated," it is not evident to me as to how a manufacturer can be liable for falsely reporting something that is not defined in any regulations. There may be a "smoking gun" that absent such regulation still shows a blatant attempt to commit some illegal activity. This is a question for legal.

2. The letter hints that pharmaceutical companies give physicians free samples and "encourage" them to give the drugs to their patients and bill for them. Any such practice that does exist would be an extreme outlier. These samples are clearly marked that they are samples and not for resale.

    A lawsuit pointing to this practice may make the manufacturers hesitant to sample physicians OR make physicians reconsider their acceptance of samples out of fear of their own liability down the road with similar questionable suits. In either case, for medications Medicaid covers without PA, this could mean additional cost to the State. It is better find that a patient cannot tolerate samples than for Medicaid to have paid for a 34-day supply, and the patient toss the script after 3 days.

    This point in the claim seems to be very thin. I don't accept this practice as anything other than a rare anomaly.

3. The statement is made that "PBMs get drugs at the same highly 'discounted' actual price...but base their price to private health plans off the inflated trade publication AWP less a percentage discount."

    At first review, this point is not relevant to our interest in the suit. PBMs (other than those providing in-house mail order services) do not purchase drugs. Georgia does not utilize a mail order benefit. However, the lawsuit may be using this behavior to show corruption or the type behavior that should be considered in the suit.

4. Lastly, the letter states, "the defendants readily admitted that the AWP was inflated." Again, with AWP and the formula by which AWP is derived being unregulated, what is the claim?

*October 18, 2007*

Cynically, how different is this from an inflated price on a car, home or any other product in today's marketplace.

There are a few other things to consider. First, any settlement will probably result in price increases of the manufacturers products. Therefore, is a win really a win? Second, what impact (if any) does this have with manufacturer relationships with the State and their willingness to be active business partners (ex. participation in the supplemental rebate program, fund the asthma disease state management program, etc.)? Third, what type administrative burden and time requirements on DCH staff would such a suit produce? Are the odds of a successful suit great enough to make this worthwhile?

From reviewing the letter and the materials left by this firm during their last meeting, unanswered questions remain. Without knowing what type incriminating evidence exists, it is difficult to assess the credibility of this suit. I'm sure the legal experts have reviewed the case and feel it is viable. I would suggest additional meetings with this firm to get answers and learn more about evidence prior to agreeing to participate.

CONFIDENTIAL