# EXHIBIT E



Dear Mr. Finley:

Thank you for your continued efforts to provide the Georgia Department of Community Health (DCH) with information regarding the litigation over pharmaceutical manufacturers' inflated Average Wholesale Price (AWP). Our mutual discussions have been informative, and I appreciate the time you have dedicated to educating DCH staff on the basis for this suit and your experience in other states.

The fact that AWP is an artificially inflated price is not news to DCH. The Department has attempted to fulfill its obligation under the Social Security Act to pay estimated acquisition cost of drugs using a reimbursement methodology that includes a discount off AWP. However, this has been challenging both due to the unknown inflated value of AWP as well as unsuccessful attempts to adjust provider reimbursement through the Georgia legislative process. Another challenge is the fact that the methodology by which manufacturers are to calculate AWP is not defined in statute or other government guidance.

Nonetheless, DCH has not stood idly by. We have taken active steps to tighten our reimbursement model to obtain discounts more reflective of the acquisition cost of drugs. These steps include institution of a maximum allowable cost (MAC) program, enforcement of Most Favored Nation (MFN) pricing, as well as, implementation of a preferred drug list (PDL) and an aggressive supplemental rebate program. Our supplemental rebate program includes contracts with manufacturers to provide the state with rebates based on utilization of the manufacturers' products. This effort is in conjunction with a PDL that promotes the utilization of less costly generics before branded products where clinically appropriate. Our effective discount off AWP for branded drugs after consideration of the invoiced rebates is AWP-32%.

Another area we have mutually discussed is the methodology utilized to determine any potential damage to the State of Georgia arising from the inflated AWPs. The information provided by your organization suggests a potential overpayment of 21.84% based upon a GAO study. DCH has concerns that overpayemnts are ill-defined applying this global figure to Georgia data without consideration of the other Georgia-specific reimbursement factors listed above (ex. MFN, MAC, PDL, and supplemental rebates). Additionally, if this general methodology were to be applied to generics, there could be questions as to whether Georgia underpaid providers for generic medications. Our current MAC carries an effective discount of AWP-66% which is consistent with other OIG reports claiming average actual acquisition discount of around 72.1% for drugs with a Federal MAC. DCH has not underpaid providers for generic drugs.

Based upon our internal review of all information available at this time, DCH has made a decision not to participate in the AWP litigation effort. As stated above, the reasons include:

- The AWP calculation methodology has not been set forth in any statute or government guidance. Therefore, a claim that an undefined calculation methodology is unfair or misreported is not one that DCH can support.
- DCH has made reasonable attempts through the pricing methodology and rebate program to mitigate some portion of the inflated AWP pricing practices of pharmaceutical manufacturers.
- The methodology utilized to estimate potential overpayments by the State is not Georgia-specific. Application of a global GAO study figure without an in-depth analysis of reported AWP compared to pharmacy actual acquisition costs would have to prove out the proposed methodology. This has not been performed.
- Should the methodology proposed be applied to the generic utilization for Georgia Medicaid, there is a question of potential underpayment to providers for generic drugs. While the DCH Medicaid MAC payment for generics is aggressive, it does not pay providers below acquisition cost for drugs.

Again, DCH appreciates your diligent efforts to supply us with the information necessary to make this final decision.

Sincerely,


Charemon Grant