# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br>Subcategory Docket: 06-CV-11337-PBS |
| THIS DOCUMENT RELATES TO | ) ) | Judge Patti B. Saris |
| *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.,* No. 06-CV-11337-PBS | ) ) ) ) | Magistrate Judge Marianne B. Bowler |

### ABBOTT LABORATORIES INC.'S REPLY IN SUPPORT OF ITS STATEMENT OF ADDITIONAL FACTS THAT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF THE GOVERNMENT

Dated: October 5, 2009

James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Counsel for Defendant Abbott Laboratories Inc.*

**PRELIMINARY STATEMENT**

Abbott respectfully submits the following limited reply in support of its Statement of Additional Facts That Preclude Summary Judgment In Favor Of The Government (Dkt. No. 6448). In its response (Dkt. No. 6529), the United States does not dispute statements 1, 4, 5, 6, 9, 10, 14, 16, 17, 20, 21, 28, 29, 30, 31, 32, 49, 50, 65, 59, 70, 71, 72, 73, 77, 78, 81.[1] These facts are more than sufficient, by themselves, to show that the complex questions of False Claims Act ("FCA") liability posed by the Government are not amenable to summary judgment as a matter of law. For many other statements, the Government simply incorporates its response to the Defendants' Combined Statement of Additional Material Facts Pertaining To The United States' Motions For Partial Summary Judgment Against Defendants (Dkt. 6525). As to those facts, Abbott incorporates Defendants' Combined Reply (Dkt. No. 6566.).

The Government's remaining responses are addressed briefly below. In many instances, the Government has not contested the actual facts alleged by Abbott, but responds instead by discussing other facts that it deems relevant to the particular issues. This is not responsive, and Abbott is under no obligation under Local Rule 56.1 to address these additional facts set forth by the Government. No facts are admitted or positions otherwise conceded by reason of Abbott's silence in reply to any particular response by the United States to Abbott's Statement of Additional Facts.

---

[1] The Government did not respond to statement 99. This statement should be deemed undisputed.

## I. **EXPERT ELVIN MONTANEZ, PHARM. D. (AF 2, 3, 110)**[2]

The Government does not contest the veracity of the facts set forth in paragraphs 2, 3 and 110, and does not offer any facts or testimony to rebut the statements made by Dr. Montanez. Instead, the Government relies on pot-shots aimed at Dr. Montanez himself, but these shots are wide of the mark. The Government has not moved to preclude Dr. Montanez's opinions under *Daubert*. Accordingly, at the summary judgment stage of these proceedings, the Court should read Dr. Montanez's testimony in the light most favorable to the non-moving party, *i.e*., Abbott. *Tebo v. Potter*, 345 F.Supp.2d 61, 63 (D.Mass. 2004).

The Government's claim that Dr. Montanez's report is hearsay should be disregarded. Dr. Montanez has 14 years of home infusion experience. (Montanez Rept. at 2.) During that time, he has had numerous dealings with government payors regarding payment for drugs dispensed in the home infusion setting. (*Id*. at 3.) Based on Dr. Montanez's many years of experience in providing home infusion services and his dealings with government payors, he opined in his report and testified in his deposition about the level of care, manufacturing, equipment and other costs necessary to provide the Subject Drugs to home infusion patients, including Medicare and Medicaid beneficiaries. (*Id*. at 11-21; 4/29/09 Montanez Dep. at 174:15-176:15, 195:1-203:16, 235:1-240:1, Ex. A.) As such, Dr. Montanez's testimony is admissible under several Federal Rules of Evidence, including, but not limited to:

---

[2] Citations to *Abbott Laboratories Inc.'s Rule 56.1 Statement Of Additional Facts That Preclude Summary Judgment In Favor Of The Government*, (Dkt. No. 6448), are noted (AF ¶__.). Citations to the Government's response to that statement of additional facts (Dkt. No. 6530) are noted (AF Resp. ¶ ___.). Citations to *Abbott Laboratories Inc.'s Memorandum In Opposition To The United States' Motion For Partial Summary Judgment, And Reply In Support Of Abbott's Motion For Partial Summary Judgment* (Dkt. No. 6440) are noted (Abt. Opp. ___.). Citations to the *Combined Memorandum Of Defendants Abbott Laboratories, Inc., Dey, Inc., And Boehringer Ingelheim, Corp. In Opposition To The United States' Cross-Motions For Partial Summary Judgment* (Dkt. No. 6429) are noted (C. Br. ___.). Citations to the Government's response to the Combined Statement of Additional Material Facts Pertinent To The United States' Motions For Partial Summary Judgment Against Defendants (Dkt. No. 6525) are noted (C. AF __).

- o Rule 803(6) (Hearsay exception for a "memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made . . . from information transmitted by a person with knowledge")

- o Rule 807 (residual hearsay exception for statements not covered by other rules, but with "equivalent circumstantial guarantees of trustworthiness.")

Moreover, the hearsay rule does not apply where statements are relevant for purposes other than the truth of the matter asserted, including to show a party's knowledge, motivation, intent, or state-of-mind. *See, e.g., Akamai Techs., Inc. v. Limelight Newtords, Inc.,* 614 F. Supp,. 2d 90, 103 (D. Mass. 2009) (overruling hearsay objection to documents introduced in order "to show the Inventors' knowledge . . . in late 1998 and early 1999). In this case, the statements that Dr. Montanez recounts from various government payors are relevant to show the payors' states of mind and motivation in selecting AWP as the benchmark for payments to providers.

Finally, the Government is hard pressed to argue that expert reports ought not be considered at summary judgment, since its own motion relies extensively upon such reports. (*See, e.g.*, Dkt. No. 6295.)

## II. ABBOTT'S SALES AND REVENUES (AF 7, 8, 11, 12, 13)

The Government does not materially contest the facts in statements 7, 8, 11, 12 and 13 that (i) Abbott's former Hospital Products Division ("HPD") had two business sectors: the Hospital Business Sector ("HBS") and the Alternate Site business sector ("Alternate Site"); (ii) HBS accounted for approximately 90% of total HPD revenues; (iii) HBS' hospital customers were not reimbursed based on AWP; (iv) Alternate Site accounted for about 10% of total HPD revenues and was divided into three business units: Renal, Alternate Site Product Sales, and Home Infusion Services; (v) Renal accounted for about half of Alternate Site revenues, or 5% of HPD revenues, and is not at issue in this case; (vi) Alternate Site Products Sales and Home Infusion, which are the focus of this case, together accounted for the remaining half of Alternate

Site revenues, or 5% of HPD revenues. Unable to contest these facts, the Government claims that Abbott failed to produce relevant discovery. This is simply false. Abbott produced it's annual reports from 1995 to 2003 (*See, e.g*., ABT-DOJ 0194001-0194270), the Home Infusion financial statements (*See*, ABT-DOJ 0226544 – 0226549) and Alternate Site financial statements detailing revenues (*See e.g*., ABT-DOJ 0265230, 0264822, 2559688, 0261340.).[3] Additionally, Abbott produced national sales data for the Subject Drugs for all customers, including the HBS hospital customers (*See*, ABT-DOJ 0309974 – 0309999). Abbott also offered expert testimony from Steven J. Young on this topic, including the percentage of sales of the Subject Drugs to hospitals. (Young Rept. at ¶ 21.) For purposes of this analysis, Mr. Young relied upon the national sales data that Abbott produced to the Government. (*Id*.) The Government deposed Mr. Young for 2 days. In short, the Government cannot elude these facts by claiming non-existent discovery violations.

The Government also claims, without explanation, that the facts set forth in statements 7, 8, 11, 12, and 13 are immaterial. The Government's say-so, of course, is not controlling. Abbott explained in detail in its opposition brief (Dkt. No. 6440 at 10-11 ) how the organization of HPD is relevant to a number of issues, including *scienter*.

## III. ABBOTT'S HOME INFUSION SERVICES (AF 15, 18, 19, 22, 23, 24, 25)

The Government does not dispute the veracity of the facts highlighted by Abbott in paragraphs 15, 18, 19, 22, 23, 24, and 25 relating to the former Home Infusion Services business, which was a small business that Abbott decided to close in 1998.[4] Unable to controvert any of

---

[3] Abbott is happy to provide copies of the documents referenced in this reply upon request of the Court.

[4] Abbott has moved to strike allegations regarding Home Infusion Services as untimely. *See* Abbott's Response to the Amended Statement of Undisputed Facts in Support of United States' Memorandum of Law in Support of Cross-Motion for Partial Summary Judgment and In Opposition To Abbott Laboratories Inc.'s Motion for Summary Judgment, Dkt. No. 6455 at ¶¶ 132-146.)

the facts cited by Abbott, the Government instead responds in rote fashion with figures that it contends constitute the gross amounts of billings to third-party payors including Medicare and Medicaid, and revenues to Abbott through this business. Of course, the Government cannot and does not contest that Abbott offered a wide variety of services through Home Infusion beyond drug products, such as inventory management systems and training – all of which factor into the negotiated compensation rates that Abbott received, either in the form of per-diem payments or as a portion of the customer's receivables. (*See* AF ¶¶ 16, 19.) The financial information the Government trumpets, which Abbott does not concede is even accurate, does no more that highlight the disputed issues of material fact surrounding the Home Infusion Services business. In light of these disputes, summary judgment is not appropriate.

Finally, the Government suggests that Abbott did not produce financial data relating to Home Infusion Services, but this is false. Abbott produced voluminous data from its long defunct Home Infusion system (which Abbott restored at great expense in order to comply with the Government's discovery requests) (*See,* ABT-DOJ 0295695 – 0295757, 0423261, 0423360); and financial documents showing the revenue received by customer; and the expenses attributed to this business unit. (*See, e.g.*, ABT-DOJ 0312188, 0312219, 0312248, 0312279, 0312306, 0312399, 0312583, 0312710.) In addition, the Government deposed 13 witnesses who once worked in Abbott's former Home Infusion Services. Once again, the Government cannot erase a factual dispute by conjuring up a discovery violation.

## IV.     HPD'S PRICE SETTING AND PRICE REPORTING (AF 26, 27, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 79, 80)

The Government does not materially dispute the substance of statements by Abbott in paragraphs 26, 27, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 79, and 80 (indeed, many of its responses begin "The United States does not dispute that . . ." (*e.g.*, Resp. ¶

34)). Importantly, the Government cannot contest that (i) the List Price for the Subject Drugs was set exclusively by HBS, whose customers were not reimbursed on the basis of AWP; (ii) Alternate Site, including Home Infusion Services, had no role in setting List Price; (iii) Abbott's List Prices were real prices with value in the marketplace; and (iv) Abbott did not set an AWP and did not report an AWP for the Subject Drugs to the compendia. Beyond these undisputed facts, all of the additional facts that the Government lards into its responses (*e.g.*, ¶ 48) do no more than reinforce the point that should such additional facts be considered by the Court in evaluating the Government's motion for summary judgment there are numerous disputed issues of fact surrounding Abbott's price setting and price reporting practices as they relate to the Subject Drugs precluding summary judgment.

## V. UNDERSTANDING OF AWP (AF 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61)

The Government does not dispute the veracity of the testimony set forth in paragraphs 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, and 61, but simply offers additional, immaterial facts for the Court to consider. The additional facts offered by the Government do not dispute the import of these paragraphs, namely that (i) the Government deposed more than 65 individuals who were formerly employed by Abbott's HPD; and (ii) witness after witness testified that they were not aware how the compendia calculated AWP for the Subject Drugs, and/or that they did not understand the nature of AWP at all. Further, to the extent that the additional facts offered by the DOJ in its responses to these paragraphs are deemed material, they simply underscore the disputed issues of fact surrounding the understanding of AWP within Abbott, making clear yet again that the Government's motion for summary judgment must be denied. *Massachusetts v. Mylan Laboratories*, 608 F. Supp.2d 127, 154-155 (D. Mass. 2008).

## VI. ABBOTT'S REPORTED AMP (AF 62, 63)

The Government does not dispute the veracity of the facts set forth in paragraphs 62 and 63, showing that Abbott reported AMPs (which were substantially below the compendia AWPs) for the Subject Drugs directly to the Government on a quarterly basis throughout the claims period 1991-2001. Once again, the Government responds by not responding, but instead pointing out other facts that it finds relevant, including the fact that Abbott corrected its AMP reporting at one point during the claims period. There was nothing untoward about this re-calculation (indeed, as Abbott previously pointed out, the error in Abbott's calculation resulted in excess rebates being paid to the Government) (Response to the Amended Statement of Undisputed Facts in Support of US' Memo of Law in Support of Cross-Motion for Partial Summary Judgment and in Opposition to Abbott's Motion for Summary Judgment at ¶ 116, Dkt. No. 6455), and the re-calculation in no way changes the fact that the AMPs as reported for the Subject Drugs were still substantially below the compendia AWPs – undermining the DOJ's so-called "litigation position" that the Government understood AWPs to be representative of actual market prices. At a minimum, the provision of AMP information gives rise to a dispute of fact surrounding the Government payors' expectations, as well as Abbott's *scienter*, and thus precludes summary judgment in favor of the Government. *See In re Pharm. Indus. Average Wholesale Price Litig*. No. 08-1056, __ F.3d. __, slip op. at 54; (1st Cir. Sept. 23, 2009) ("Astra-Zeneca"); *In re Pharm. Indus. Average Wholesale Price Litig.,* No. 08-1002, __ F.3d __, slip op. at 15 (1st Cir. Sept. 29, 2009) ("J&J").

## VII. ABBOTT'S MARKETING OF THE SUBJECT DRUGS (AF 64, 66, 67, 68)

The Government disputes the series of facts in paragraphs 64, 66, 67 and 68, surrounding how the Alternate Site sales force marketed the Subject Drugs. Abbott stands by its factual assertions and does not concede the veracity of any additional facts offered by the Government

in its responses. This Court has recognized that marketing practices are relevant to several issues in AWP cases, including *scienter*. *Massachusetts v. Mylan Laboratories*, 608 F. Supp.2d 127,154-55 (D. Mass 2008). That the Government (however misguided) disputes Abbott's contentions regarding how the Subject Drugs were marketed to customers is, by itself, sufficient to give rise to a genuine issue of material fact sufficient to preclude summary judgment.

## VIII. ABBOTT'S 2001 PRICE REDUCTION (AF 71, 74, 75, 76)

The Government disputes several critical facts in paragraphs 71, 74, 75 and 76, that surround the price reductions that Abbott implemented for many of its HPD products in 2001. Perhaps most important, the Government disputes Abbott's contention that the spread that developed over the years for the Subject Drugs was unintentional and not designed to influence Government payments under the Medicare or Medicaid programs. (*See* Resp. ¶ 74.) The Government cannot contest that record evidence supports Abbott's contention, but it refers to other evidence that it believes tips the scale on this issue in its favor. The development of the "spread" on the Subject Drugs, and Abbott's intentions and actions surrounding that spread, are critical issues that bear on a number of elements of the Government's FCA claims. *Mylan*, 608 F. Supp.2d at 155, *In Re Pharmaceutical Industry Average Wholesale Price Litigation,* Order on Motion to Dismiss at 13, (May 8, 2007). That the Government believes it has facts on its side of the ledger on this issue is not surprising, but it certainly does not enable this Court to render judgment as a matter of law. Instead, it confirms the existence of a disputed issue of material fact, making summary judgment in the Government's favor inappropriate.

## IX. THE MEDICARE WORKING GROUP (AF 82)

The Government cannot and does not dispute the statements that the so-called Medicare Working Group that existed briefly at Abbott reviewed, but took no action on, legislation, which is the only the factual statement in paragraph 82. The Government's response is an attempt to

falsely inflate the significance of this study group beyond anything that the member witnesses addressed in their depositions, or that the documents support. For instance, the Government utilizes the fact that one member of the Medicare Working Group worked in Abbott's Government Affairs group to attempt to establish some connection between the Medicare Working Group and Abbott's lobbying efforts. No such connection exists; there is absolutely no evidence in the record to suggest that the Medicare Working Group was affirmatively involved in lobbying, or indeed in any affirmative action with respect to legislation. (*See* AF ¶ 82 and record citations therein.)

Unable to dispute the Medicare Working Group's charge or the facts actually alleged in ¶ 82, the Government instead responds with an extended diatribe about Abbott's alleged lobbying efforts. Abbott does not concede the veracity of any of the additional, non-responsive facts set forth by the Government. Abbott's lobbying efforts were fully described by its 30(b)(6) representative on this subject. Abbott's corporate designee testified that Abbott took no position on the 1991 proposed regulation (proposing a reduction in reimbursement to 85% AWP), the 1998 proposed regulation (implementing the 1997 legislation), the 2000 Program Memorandum (DOJ AWPs), or the 1994 Booth effort to conduct surveys of providers. (3/7/08 Sensibaugh 30(b)(6) Dep. at 74:9-75:6; 83:16-84:6: 140:22-141:7, Ex. B) With regard to the 1997 BBA, Abbott favored the House version of the bill because it provided more certainty and clarity than the Senate version of the same proposal. (*Id*. at 115:8-116:2.) Abbott took no position on any move to acquisition cost reimbursement. (*Id*. at 74:22-75:6, 86:11-18) At most, the additional facts included in the Government's response relating to lobbying and the significance of any lobbying, establish a material issue of fact, making summary judgment in the Government's favor inappropriate.

## X. THE GOVERNMENT'S KNOWLEDGE OF ACQUISITION COST (AF 83, 86, 88, 89, 90)

The Government does not dispute the substance of statements 83, 86, 88, 89 and 90, but rather offers additional, immaterial facts for the Court to consider. The additional facts offered by the Government do not dispute the import of these paragraphs, namely that, (i) even before 1991, the Government and CMS were aware that providers could purchase generic drugs at significant discounts (including specifically that OIG found that Abbott's Vancomycin could be purchased at discounts of about 80% off of AWP); and (ii) AWP, as published in the compendia, was not a reliable indicator of acquisition cost for generic drugs. The Government suggests that perhaps the proof Abbott cites is not of sufficient magnitude to have put the Government on notice of these issues (Resp. ¶ 83), but that is a pure fact dispute. Like all of the other facts laced into the Government's responses on this issue (none of which are conceded by Abbott), this quibble over how much evidence is enough when it comes to Government studies and knowledge of drug pricing – all of which bear on the Government's "expectations" – just serves to underscore the critical factual disputes that preclude summary judgment on the Government's FCA claims. *See Astra-Zeneca*, slip op. at 31; *id*. at 46-60; *J&J*, slip op. at 6, *id*. at 12-16.

## XI. REPORTS DETAILING THE COST OF HOME INFUSION THERAPY (AF 94, 95)

The Government cannot and does not dispute the contents or findings of the reports discussed in paragraphs 94 and 95. These studies were prepared by the very experts the Government has retained in this litigation and commissioned by the same entities the DOJ represents. The Government's sole objection is that some of the reports cited are outside the damages period and therefore are supposedly immaterial. These reports, both during and after the conclusion of the damages period, highlight the inadequacy of the Medicaid dispensing fees for home infusion therapy and go directly to the "expectations" of government payors, including

why they chose for years to pay a premium (the spread) for drugs to healthcare providers in order to cross-subsidize the inadequate fee payments. *See Astra-Zeneca*, slip op at 31; *id*. at 46-60 ; *J&J,* slip op. at 6, *id*. at 12-16. The Government's response emphasizes the factual dispute that exists, a dispute which precludes summary judgment in favor of the Government.

## XII. TESTIMONY BY STATE AND FEDERAL OFFICIALS (AF 97, 98, 100, 101, 105, 106)

In the paragraphs 97, 98, 100, 101, 105 and 106, Abbott set forth testimony from a number of Government officials, all of which bears directly on their "expectations" with respect to the spread on generic drugs and the relationship (or lack thereof) between the compendia AWPs and actual market prices. The Government cannot and does not contest that the officials gave the excerpted testimony; it simply argues that other facts or testimony are more relevant, or suggest (without support) that the testimony of these officials should be discounted as "personal views." This is not responsive. The Government officials gave the testimony cited by Abbott, under oath, and this testimony is, by itself, sufficient to present a genuine dispute regarding the Government payors' "expectations" and therefore to compel denial of the Government's motion for summary judgment. *See Astra-Zeneca*, slip op. at 31; *id*. at 46-60; *J&J,* slip op. at 6, *id*. at 12-16.

Further, the Government's frequent response that "Abbott has correctly, but selectively, quoted excerpts" of documents and depositions lacks any legal basis, as Abbott is not required to include the entirety of a document or deposition in its Local Rule 56.1 statement. Rather, the Local Rules expressly call for a "concise statement of the material facts" with "page reference to affidavits, documents, and other documentation)." D. Mass. Local R. 56.1.

In addition, the Government's frequent response that the witnesses' testimony was "given in their individual capacities," and not on "behalf of their respective States" or CMS, is

immaterial. There is no rule that only testimony from 30(b)(6) witnesses is relevant to or admissible in this matter. To the contrary, those witnesses testifying in their individual capacity (*e.g.*, Florida's Jerry Wells) were typically identified by the Government as potential trial witnesses, and in any event were long-time state Medicaid personnel with actual first-hand knowledge of the facts. Their testimony is relevant, admissible, and absolutely at odds with the Government's motion for summary judgment.

## XIII. TESTIMONY OF HOME INFUSION PROVIDERS (AF 111, 112, 113)

The Government disputes the facts set forth in paragraphs 111, 112 and 113 by citing to additional facts and testimony. These additional facts do not diminish the import of these paragraphs, namely that, (i) Illinois Medicaid was aware that the AWP, as published in the compendia was a list price and did not reflect actual market prices; (ii) Illinois Medicaid was cross-subsidizing the significant under-payment for dispensing home infusion therapies with an overpayment for drugs associated with these therapies; and (iii) a reduction in the Illinois Medicaid payment for drugs would impact the ability of certain home infusion providers to participate in the Illinois Medicaid program. The additional testimony cited by the Government creates a genuine issue of material fact and, therefore, summary judgment in favor of the Government is not appropriate.

Further, the Government's claim that this testimony is "hearsay" should be disregarded, as the Government develops no argumentation in support of its theory. *See United States v. Aannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, the hearsay rule does not apply where statements are relevant for the purposes other than the truth of the matter asserted, including to show a party's knowledge, motivation, intent, or state-of-mind. *See, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc*., 6104 F. Supp. 2d 90, 103 (D.

Mass. 2009) (overruling hearsay objection to documents introduced in order "to show the Inventors' knowledge . . . in late 1998 and early 1999.")  Here, the testimony is relevant to show Illinois' Medicaid's knowledge of AWP and motivation in using AWP as the benchmark for payments to providers.

## XIV. THE GOVERNMENT'S FAILURE TO ESTABLISH FEDERAL UPPER LIMITS FOR THE SUBJECT DRUGS (AF 114, 115, 116, 117, 118, 120, 121, 122, 123)

The Government does not dispute the veracity of any of the facts set forth in statements 114, 115, 116, 117, 118, 120, 121, 122, and 123, namely that (i) the Omnibus Reconciliation Act of 1990 required the Government to establish a Federal Upper Limit ("FUL") for the Subject Drugs; and (ii) that the Government did not set FULs for the Subject Drugs.  In particular, the Government offers no reason why it chose to ignore the statutory requirement.  The Government's sole dispute with these paragraphs is the unsupported suggestion that this information is immaterial.  That is wrong.

The facts set forth in these paragraphs go directly to falsity.  For example, a jury could reasonably infer that the reason the Government ignored the statutory requirement to impose a FUL for the Subject Drugs is because the Government fully intended to pay providers (particularly home infusion therapy providers) a premium for these products by using the higher compendia AWPs as the benchmark for payments, in order to compensate the providers for the admittedly inadequate service fees.  In that event, the claims surely could not be considered "false" for purposes of the FCA.  At the summary judgment stage of these proceedings, the Court should read these facts in the light most favorable to the non-moving party, *i.e.*, Abbott and therefore, summary judgment in favor of the Government is not appropriate.  *Tebo v. Potter*, 345 F.Supp.2d 61, 63 (D. Mass. 2004).

Dated:  October 5, 2009                              Respectfully submitted,

/s/  Brian J. Murray
Daniel E. Reidy
James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories Inc.*

**CERTIFICATE OF SERVICE**

        I, Brian J. Murray, an attorney, hereby certify that I caused a true and correct copy of the foregoing to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 5th day of October, 2009.

                                      /s/ Brian J. Murray
                                      Brian J. Murray