# EXHIBIT 2



**Hughes Hubbard**

Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: 202-721-4600
Fax: 202-721-4646
hugheshubbard.com

Robert B. Funkhouser
Litigation Counsel
Direct Dial: 202-721-4780
funkhous@hugheshubbard.com

October 12, 2007

<u>By Fax and E-Mail</u>

Joanne M. Cicala, Esq.
Kirby McInerney & Squire, LLP
830 Third Avenue
New York, NY 10022

> Re:   *City of New York and Consolidated NY Counties v. Abbott Labs, Inc., et al.*
> MDL No. 1456 (D. Mass.) (PBS)

Dear Joanne:

   As you know, we represent defendant Merck & Co., Inc. ("Merck") in these cases. I am writing you to request that certain Merck drugs on Plaintiffs' revised Exhibit B-24, which are alleged to be "Merck NDCs at Issue with Spreads of 30% and Above" be excluded from discovery based on the criteria set by Judge Saris, problems with the Plaintiffs' data, and low aggregate New York utilization. While we do not concede that any of these drugs (or any Merck drug) is properly at issue in this lawsuit and while we continue to have a number of questions about the underlying wholesaler data, the defects in Exhibit B-24 data and other reasons described below should lead you to exclude these drugs from discovery at this time.

   <u>The Spreads Alleged</u>

   <u>First</u>, the spreads alleged for Merck drugs Elspar®, Indocin®, and Noroxin® on the "Spreads of 30% and Above" exhibit are 30%. In addition, two of the three NDCs for Hyzaar® are alleged to be 30%, while the third is alleged to be 32%. Pursuant to CMO 33, discovery is stayed as to these drugs. In addition, these drugs should also be excluded for one or more of the reasons discussed below.

   <u>Second</u>, for certain Merck drugs, the data on Exhibit B-24 are inconsistent with the Court's instruction that Plaintiffs use a weighted average, or typical price for each drug calculated on a reasonable good faith basis consistent with the Court's prior rulings. The following drugs should be excluded because the alleged spreads in excess of 30% are derived from small samples (in terms of expenditures or number of units) that were calculated over very short time periods:

      o Cogentin® — spread of 39% alleged on the basis of less than a thousand purchases over a period of less than a month (11/12/01 to 12/11/01).

Joanne M. Cicala, Esq.
October 12, 2007
Page 2

- Mefoxin® — spreads ranging (by NDC) from 38% to 122% alleged on the basis of small samples (ranging from as little as 3 to 222 purchases) used over comparatively short periods of time. For example, three purchases on a single day were used to calculate the spread for Mefoxin 2 gm vials.

- Pepcid® — spreads of 37% alleged on the basis of small samples (ranging from 8 to 877 purchases) used over time spans of under a month.

- Prinivil® — spreads ranging (by NDC) from 30% to 178% alleged on the basis of small samples in a short period, including an 8 day period in 2002.

- Timoptic-XE® — multiple purchases on a single day were used to generate a 31% spread.

- Vioxx® suspension products — a two-day time period is used to calculate a 33% spread.

Third, at least some of the alleged spreads in excess of 30% appear to have been generated by comparing a higher AWP that took effect on or the day before the Start Date to purchases by providers that almost certainly include drugs purchased by the wholesaler prior to the AWP increase. The distorting effects of this faulty comparison are particularly acute where the drug purchases by providers occur over a short time period. The following Merck drugs had price increases during the time period or the day before the Start Date selected by Plaintiffs for Exhibit B-24 that result in exaggerated AWP spreads:

- Elspar® — price increase on 5/31/01, the Start Date for an 18-day period that allegedly resulted in a 30% spread.

- Pepcid® vials — price increase on 11/17/00, the Start Date for a 25-day period that allegedly resulted in 37% spreads.

- Primaxin® (IM and IV) — price increases on 10/31/03 and 7/28/04, the Start Dates for 2 month periods that allegedly resulted in spreads ranging from 32% to 44%.

- Vioxx® suspension products — price increase on 6/24/03, the Start Date for a two-day time period that allegedly resulted in spreads of 33%.

Applying Plaintiffs' pricing data but using the AWP in effect the day before the start of the time period selected by Plaintiffs results in spreads for these drugs under 30%. These Merck drugs should be removed from the 30% spread exhibit and excluded from discovery.

Joanne M. Cicala, Esq.
October 12, 2007
Page 3

### Low Utilization

Separate and apart from these objections to the methodology used in Exhibit B-24, there are certain Merck drugs that should be excluded based on low aggregate utilization. We reviewed aggregate utilization data for all of New York State from the CMS website http://www.cms.hhs.gov/MedicaidDrugRebateProgram/SDUD/list.asp for the 1997-2005 time period for the drugs in Plaintiffs' chart of Merck drugs with 30% or more spreads in Exhibit B-24. (These reimbursement amounts include dispensing fees, which we understand are not at issue.) Aggregating all NDCs, including NDCs that are not included in the exhibits, the following drugs had aggregate utilization over those eight years in the following amounts:

- Elspar® $51,895;
- Mefoxin® $168,000;
- Mustargen® $14,917;
- Noroxin® $274,722;
- Periactin® $200,705.

Approximately one quarter of each of these aggregate reimbursement amounts would be the aggregate local government share for all of New York. The CMS utilization data does not reflect how these amounts are divided up among New York City and the New York counties you represent as opposed to those New York counties that are not included in the Consolidated Complaint. Moreover, Elspar®, Mefoxin®, and Mustargen® are identified as "dual channel" drugs for which some Medicaid reimbursement is made on an "actual cost" basis, and accordingly some or all of these amounts may not be subject to AWP-based reimbursement.

Given the small amounts of reimbursement and prescriptions at issue, it seems intuitively unlikely that each of the entities you represent can show actual purchases of these Merck drugs during the specific time periods referenced in the exhibit. Even if each can, the minimal amounts at issue would alone be an appropriate reason why these Merck drugs should be dropped from the Complaint, or at least excluded from discovery.

### Vaccines:

Finally, Exhibit B-24 includes Pneumovax®, which is a vaccine. Vaccines are priced, marketed and reimbursed on a different basis than the other Merck drugs on the Plaintiffs' exhibits. The CMS website reflects no Medicaid utilization by New York State for this vaccine, and there are no allegations in the First Amended Consolidated Complaint regarding pricing, marketing or reimbursement of vaccines. There is simply no basis for expanding this action to encompass this or any other vaccine, and we request that you exclude it.

Joanne M. Cicala, Esq.
October 12, 2007
Page 4

Please call me if you would like to discuss the data or any other aspect of this letter.

Sincerely,

Robert B. Funkhouser