# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL DOCKET NO. 1456<br><br>Master File No. 01-CV-12257<br>Subcategory Case No. 06-CV-11337 |
| THIS DOCUMENT RELATES TO: ) ) | Judge Patti B. Saris |
| *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.,* No. 06-CV-11337-PBS ) ) ) | Magistrate Judge Marianne B. Bowler |

**MEMORANDUM OF ABBOTT LABORATORIES INC.
IN OPPOSITION TO THE CORRECTED MOTION BY THE UNITED STATES TO
QUASH OUT-OF-TIME DEPOSITION NOTICES SERVED BY ABBOTT
LABORATORIES OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

# **INTRODUCTION**

Magistrate Judge Bowler previously denied the Government's motions for protective orders, thereby directing the Government to produce CMS Office of Legislation employee Ira Burney and 30(b)(6) designees on several topics unquestionably relevant to this case for deposition. Those topics include:

- How did CMS actually interpret the term AWP in Medicare law?

- What steps did CMS take to prevent alleged overpayments after learning of the allegations contained in Ven-A-Care's under-seal complaints?

- Why did CMS not establish Federal Upper Limits for the Subject Drugs in accordance with its statutory obligations?

- What, if anything, did the Government do to preserve evidence in response to a request from manufacturers in March of 2000?

Rather than simply providing the requested testimony, the Government has made yet another motion seeking to avoid these questions and now stands in open defiance of this Court's previous rulings.[1] It refuses to produce the required witnesses in response to Abbott's deposition notices.[2]

Seeking to excuse its inappropriate refusal to produce witnesses, the Government now argues that Abbott waited too long to notice the depositions. Yet the Government cannot by fiat nullify court orders that it does not like. Nor can the Government ignore that it substantially contributed to the delay in scheduling these depositions it now seeks to quash as untimely. As

---

[1] The Government's obligation to comply with this Court's prior rulings is neither discretionary nor time limited. *See Torres-Vargas v. Pereira*, 431 F.3d 389, 393 (1st Cir. 2005) (stating "[i]t is settled law that a party flouts a court order at his peril," and noting "a party's disregard of a court order is a paradigmatic example of extreme misconduct"); *Serra-Lugo v. Consortium-Las Marias*, 271 F.3d 5, 6 (1st Cir. 2001) ("Counsel who choose to disregard the orders of the district court place themselves and their clients at risk."). The Government provides no legal authority or support to explain why it is no longer bound by Magistrate Bowler's prior rulings. That is a dangerous course of action, as failure to comply with a discovery order can give rise to sanctions under Rule 37, including even a finding of contempt. *See United States v. Claros,* 17 F.3d 1041, 1047 n. 4 (7th Cir. 1994).

[2] The depositions for which the Government has been ordered to produce witnesses are properly noticed for October 14, 15 and 16, 2009. Abbott remains willing to negotiate a mutually convenient time and location for these depositions. Department of Justice ("DOJ") lawyers have stated that the Government does not intend to produce witnesses as ordered, regardless of the time or location. (*See* Ex. A.)

described below, the Government's failure to produce documents timely and its refusal to provide dates and Rule 30(b)(6) designations extended the timeline for taking the testimony at issue until Abbott was forced to serve deposition notices without agreed dates in order to obtain the testimony to which it is entitled under Court order.

Indeed, the only thing that is "too late" is the Government's instant motion for a protective order, which was not filed within 20 business days of Abbott's July 13, 2009 request for 30(b)(6) deposition dates, as required by Case Management Order No. 29.  The Government's motion as it pertains to Mr. Burney is even more untimely, as it would have been due within 15 business days of Abbott's July 13, 2009 request.

The Government's untimely motion provides no reason for this Court to revisit its prior rulings compelling these depositions, and the Government cannot, at this late date, challenge the correctness of the Court's decision to require that testimony.[3]  Accordingly, this Court should, once again, order the Government to produce Mr. Burney and CMS's 30(b)(6) designees for deposition.  As always, Abbott remains ready and willing to work with the Government to schedule mutually agreeable dates.

## BACKGROUND

The sequence of events set forth in the Government's motion is inaccurate and incomplete.  The truth is much easier to state:  the parties understood at all times that, before convening the ordered depositions, Abbott was waiting for the Government to complete its production of documents and for the Special Master to resolve outstanding motions to compel the production of documents withheld under the deliberative process privilege.  The whole idea, of course, was to avoid convening these depositions twice.  Shortly after these outstanding issues

---

[3] The Government did not appeal Magistrate Judge Bowler's rulings to Judge Saris, nor did it object to the rulings within the time parameters set forth in Rule 72.

were resolved on June 29, 2009, Abbott requested dates and Rule 30(b)(6) designations from the Government. The Government ignored this request for nearly two months, and then announced in an August 31, 2009 letter that this Court's prior rulings no longer required production of its witnesses.

The sequence of events between December 4, 2008 and this motion is revealing:

**December 4, 2008:**  Magistrate Bowler denied the Government's motions for protective orders relating to the depositions of Mr. Burney and various Rule 30(b)(6) topics.

**January 15, 2009:**  Two days after Abbott requested a meet-and-confer to schedule the ordered depositions, the Government filed a brief stating that it was still reviewing for potential production to Defendants documents from the CMS Office of Legislation, where Mr. Burney worked. (Dkt. No. 5847 at 9.) The Government asserted that it "expect[ed] to be able to give a final report regarding the status of the on-going review within 30 days, if not sooner." (*Id.*) The Government never provided that report, and did not complete its production from the Office of Legislation until late March 2009.

**January 22, 2009:**  Abbott's counsel emailed DOJ to request a meet-and-confer to discuss "what makes sense in terms of scheduling the outstanding depositions in light of the outstanding document reviews/disputes." (Ex. B.)

**January 23, 2009:**  Counsel for Abbott advised DOJ counsel in a meet-and-confer that Abbott counsel did not believe it made sense to go forward with the outstanding depositions until the Government completed its document production. (Ex. C, Torborg Decl. ¶ 4.) DOJ's counsel commented that Abbott had "preserved" its right to take these depositions and that, in any event, the Government was not in a hurry to complete the depositions. (*Id.*)

**January 27, 2009:**  Counsel for Abbott asked DOJ to "provide, as has been the practice, a witness designation for each of the outstanding 30(b)(6) areas of inquiry as soon as possible, and to inquire of available dates for the weeks of February 23rd, March 9th, and March 16th." (Ex. D.)  Those dates were premised on the Government's statement in its January 15, 2009 brief that it would complete its document production by mid-February, "if not sooner."  (Dkt. No. 5847 at 9.)  As noted, that did not happen.

**February 12, 2009:**  The Government began producing new documents relevant to the depositions of Mr. Burney and the Rule 30(b)(6) topics.  (Ex. E.)  Additional documents were produced on **March 17, 2009** and **March 25, 2009**.  (*See* Exs. F & G.)  One of these documents referred to a "*revised opinion from [Office of General Counsel] indicating that HCFA <u>can require</u> carriers to use the DOJ data, even without rule making*."  (Ex. H) (emphasis in original). This, like other documents in the production, was plainly relevant to the 30(b)(6) topics for which the Court ordered testimony, as it suggests that CMS had *changed* its interpretation of "AWP" in the Balanced Budget Act of 1997 so as to permit use of the non-compendia "DOJ AWPs."  Many of the newly-produced documents of particular interest were redacted in critical respects.  (*E.g.*, Exs. I & J.)

**February 18, 2009:**  DOJ emailed Abbott's counsel, stating: "I haven't lost sight of need to get you depo dates – still waiting on CMS OGC."  (Ex. K.)

**February 23, 2009:**  DOJ provided dates in the first and second weeks of March for the deposition of "D. Thompson as R. 30b6 designee." (Ex. L.)  The email stated:  "I'll get back to you later this week on the specs that Don will cover."  (*Id.*)  DOJ, however, never provided the "specs" that Mr. Thompson would cover.

**March 11, 2009:**  Recognizing the potential importance of the newly produced documents to the outstanding depositions, Abbott's counsel sent an email to DOJ that stated as follows:  "Regarding Mr. Thompson and the 30(b)(6) topic on how CMS interpreted AWP, we are waiting to receive the OGC opinions on AWP (see Cook and Lavine email correspondence on this) before conducting that deposition.  I think you would want to have Mr. Thompson review those opinions – or learn about any oral advice given on the question – before we take that deposition."  (Ex. M.)

**March 30, 2009:**  Magistrate Bowler entered an Order granting Defendants' motion for appointment of a special master to review certain materials that were subject to the Government's assertion of the deliberative process privilege.  The documents subject to review by the Special Master were relevant to the depositions of Mr. Burney and to the 30(b)(6) topics.

**March 30, 2009:**  Abbott's counsel sent DOJ a letter requesting again that DOJ "provide the names of the witnesses, and corresponding topics, that the United States is designating."  (Ex. N.)  That letter requested dates for each 30(b)(6) witness the Government was designating.

**April 3, 2009:**  DOJ partially responded to Abbott's requests for dates, acknowledging that Abbott was deferring the 30(b)(6) deposition of Donald Thompson (CMS's designee on "topics pertaining to the Medicare program") pending resolution of document issues.  DOJ's letter also noted that Larry Reed (CMS's designee on "topics pertaining to the Medicaid program") was available in the last week of April.[4]  DOJ's letter did not provide a date for Mr.

---

[4] Many of the documents subject to the Special Master's review were relevant to the 30(b)(6) deposition of Mr. Reed.  This includes a final, unredacted version of a 2002 "decision memorandum" involving Mr. Reed, which shows that CMS followed a policy of allowing state Medicaid programs to reimburse providers more than the states' best estimate of "estimated acquisition cost" – for generic drugs, at levels DOJ would term "mega-spreads."  (*See* Dkt. No. 5173 at 2-6; Dkt. No. 5813 at 11-12.)  Eventually, on June 22, 2009, the Special Master ordered the Government to produce an unredacted final version of the decision memorandum.  In order to avoid additional burden on the parties and witness, Abbott deferred Mr. Reed's deposition until the Special Master completed his review.  Abbott requested dates for Mr. Reed's 30(b)(6) deposition shortly after receiving a copy of the decision memorandum from DOJ on July 6, 2009.

Burney. DOJ has never provided a date for Mr. Burney's deposition; rather, DOJ advised Abbott's counsel that Mr. Burney's ongoing work at CMS made scheduling his deposition difficult. (Ex. C, Torborg Decl. ¶ 3.)

**May 12, 2009:** DOJ and Abbott filed a stipulation to have the Special Master review eight documents produced in redacted form in February and March 2009. These documents, produced from the files of the Office of Legislation, were relevant to the deposition of Burney and to many of the Rule 30(b)(6) topics.

**May 26, 2009:** In preparation for a court hearing on May 28, 2009, counsel for the Government, Abbott, Dey, and Roxane participated in a conference call to discuss summary judgment briefing. (Ex. C, Torborg Decl. ¶ 5.) During that call, DOJ acknowledged that outstanding depositions remained to be completed and inquired (given the demands already placed on counsel) whether Defendants believed those depositions needed to take place before or at the same time as the parties' summary judgment briefing. (*Id.*) Counsel for Abbott summarized the depositions that needed to be completed – including, specifically, the depositions of Mr. Burney and the Rule 30(b)(6) designees – and made clear that Abbott was awaiting the resolution of the document issues by the Special Master before convening those depositions. (*Id.*) *At no time did the Government even hint that it would refuse to go forward with these Court-ordered depositions if Abbott elected to wait for the Special Master's ruling.* (*Id.*) Rather, it appeared everyone understood that outstanding depositions remained to be completed, and the only question was whether they needed to be completed at the same time counsel was working on summary judgment briefing. (*Id.*)[5]

---

[5] Defendants indicated that they did not believe the depositions were required for their limited affirmative motions for summary judgment, but that the depositions might be pertinent to the Government's filing.

**June 22, 2009** and **June 29, 2009**:  The Special Master issued written opinions setting forth his rulings on the outstanding deliberative process privilege issues.  On **July 14, 2009**, Abbott filed written Objections to the rulings.  (Dkt. No. 6290.)

**July 13, 2009:**  Abbott's counsel sent DOJ a letter asking for specific 30(b)(6) designations and dates for those depositions and for the deposition of Mr. Burney.  (Ex. O.)

**August 3, 2009 and August 10, 2009:**  Under CMO 29, the Government had 15 business days from Abbott's July 13, 2009 letter (until August 3, 2009) to move for a protective order relating to the deposition of Mr. Burney.  (*See* Ex. P, CMO 29 ¶ 12.)  The Government had 20 business days from Abbott's July 13, 2009 letter (until August 10, 2009) to move for a protective order relating to the 30(b)(6) depositions.  (*Id.* ¶ 13.)  DOJ ignored Abbott's July 13th letter and failed to move for protective orders in a timely manner.

**August 14, 2009:**  Abbott's counsel sent an email to DOJ that attached the July 13, 2009 letter and once again asked for 30(b)(6) designations and proposed dates for the outstanding depositions.  The email stated, in part:  "I understand that we all are busy on briefing various motions and that we must adjust our deposition schedule accordingly.  Still, we really need to get these depositions on the calendar so that they can be completed in the next two months.  At the very latest, we need to complete these depositions at least a week before the summary judgment hearing scheduled for October 20th."  (Ex. Q.)

**August 31, 2009:**  DOJ responded with a letter stating that it would refuse to produce Mr. Burney and the 30(b)(6) designees for deposition.  (Ex. R.)

**September 2, 2009:**  Abbott's counsel urged the DOJ lawyer who wrote the August 31 letter to learn from his colleagues what was discussed during the parties' May 26, 2009 conference call regarding these depositions.  (Ex. S.)  In a follow-up email that day, Abbott's

counsel detailed his recollection of that call to DOJ counsel.  (Ex. T.)  DOJ counsel did not provide a different recollection of that conference call.

**September 25, 2009:**  In a call initiated by Abbott's counsel, DOJ agreed to provide a final answer on whether the Government would offer dates for Mr. Burney and the Rule 30(b)(6) designees by Monday, September 28, 2009.  DOJ did not provide its response on the 28th, forcing Abbott's counsel to contact DOJ counsel again.  (Ex. U.)

**September 29 & 30, 2009:**  DOJ advised Abbott's counsel unambiguously that it would not provide witnesses in response to deposition notices issued by Abbott, notwithstanding this Court's rulings.  (Exs. A & V.)

**September 30, 2009:**  Abbott issued deposition notices requiring the production of Mr. Burney and the Rule 30(b)(6) designees on October 14, 15 and 16, 2009.

In light of these facts, the Government has no basis to ignore this Court's rulings or to contend that Abbott ever "abandoned its intention" to take these depositions.  (Gov't Br. at 1.)

## ARGUMENT

**I.    THE GOVERNMENT'S MOTION IS UNTIMELY AND LEGALLY INSUFFICIENT ON ITS FACE.**

**A.    The Government's Motion Is Untimely.**

Case Management Order No. 29 in this MDL sets forth specific rules pertaining to the timing of requests for depositions and motions for protective orders.  Paragraph 13 of the CMO provides that, for 30(b)(6) depositions, "[a]ny motion for protective order shall be filed no later than 20 business days from receiving the requesting party's initial request" for the deposition.  (Ex. P, CMO 29 ¶ 13.)[6]  For 30(b)(1) depositions, "[a]ny motion for protective order shall be filed no later than 15 business days from receiving the requesting party's initial request" for the

---

[6] Under the CMO 29, both 30(b)(1) and 30(b)(6) depositions of parties are initiated by a *written request* to the opposing counsel, not deposition notices.  (*Id.* ¶¶ 12-13.)

deposition.  (*Id.* ¶ 12.)

The Government's motion, filed on October 7, 2009, is untimely under CMO 29, inasmuch as Abbott made a formal written request for deposition dates on July 13, 2009.  DOJ ignored this request entirely, filing a motion for protective order only after Abbott was forced to issue notices of deposition without agreed dates.  As a result, the Government's motion should be rejected as untimely.[7]

### B.  The Government Identifies No Good Cause For A Protective Order.

The Government has articulated no justification for the entry of a protective order to prevent depositions ordered by this Court.  The Rules of Civil Procedure set forth the standards by which such relief is granted, and courts issue opinions every day adjudicating motions for protective orders.  Yet, the Government did not manage to cite a single case, statute, or rule in support of its motion.

Rule 26(c)(1) authorizes protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *See McCarron v. J.P. Morgan Securities, Inc.*, 2008 WL 2066940, at *2 (D. Mass. 2008) (denying motion for protective order, stating "[t]he Federal Rules of Civil Procedure contemplate open and generous discovery").  The burden to establish "good cause" for a protective order rests on the party seeking it.  *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 10 (D. Mass. 1990).  "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990).

The Government does not even attempt to meet the standard set forth in Rule 26(c).  That

---

[7] The Government's decision to flout the CMO is not without consequences.  Numerous other parties have cross-noticed these depositions.  The CMO which DOJ ignored was designed to avoid ambiguity about depositions going forward while motions for protective orders are pending.

failure is not surprising.  Because the Government failed to appeal or seek reconsideration of the Magistrate Judge's prior rulings denying a protective order as to these very depositions, the Government has no legitimate basis on which to seek a protective order.  Its motion must, therefore, fail.

## II.     ABBOTT'S DEPOSITION NOTICES DO NOT SEEK TO "REOPEN" DISCOVERY.

The Government erroneously claims that Abbott is seeking to "reopen discovery."  (*See, e.g.*, Gov't Br. at 2, 9-10.)  But the Government concedes that Magistrate Bowler's December 4, 2008 rulings requiring the Government to produce witnesses for these depositions issued *after* the closing of fact discovery.  Likewise, the Government's belated production of critical documents in February and March of 2009 took place after the close of fact discovery.  And in the context of the Government's continued production of documents and the Special Master's review of privilege claims, the Court did not set deadlines for completing the depositions ordered.

Abbott's patience in scheduling these depositions was entirely appropriate.  It made no sense to convene these depositions while the Government was still producing relevant documents or while the Special Master was considering claims of privilege over relevant documents.[8]  The parties engaged in a continuum of dialogue about the scheduling of these depositions without objection by the Government until DOJ asserted for the first time on August 31, 2009 that Abbott's forbearance in the face of Government delay constituted a forfeiture of its rights.

DOJ's claim that discovery is closed for all purposes is further belied by the fact that the parties are currently negotiating deposition dates for the *same witnesses* as a result of the Special's Master's ruling overturning the Government's assertion of the deliberative process

---

[8] Had Abbott taken these depositions in January 2009, there is little doubt that the Government would have objected to reconvening the depositions to address later-produced documents, regardless how relevant.

privilege during depositions. (Ex. W, June 29, 2009 Special Master Order.)[9] In this regard, at least, discovery obviously is not closed. Denying the Government's motion for protective order will not, therefore, delay any aspect of these cases, and will not even inconvenience the witnesses themselves.

### III. THE FIRST CIRCUIT'S RECENT OPINION IS IRRELEVANT TO THE DEPOSITIONS AT ISSUE.

DOJ asserts without explanation that these depositions "are now demonstrably irrelevant" in light of the recent First Circuit decision of *In re Pharm. Indus. Average Wholesale Price Litig.*, ---F.3d ---, 2009 WL 3019691 (1st Cir. 2009) (Gov't Br. at 2.) To the contrary, the First Circuit affirmed the importance of determining the paying party's "expectations" in deciding whether that party was defrauded. In any event, DOJ offers no explanation of how this decision relates to any of the 30(b)(6) areas of inquiry, such as communications to the compendia regarding the publication AWP data (Topic 10); CMS's efforts to establish Federal Upper Limits for the Subject Drugs (Topic 16); requirements for state Medicaid agencies to make findings and assurances (Topic 18); efforts to preserve evidence (Topic 22); or any other topic.

### CONCLUSION

The Government has offered no legal authority supporting its untimely motion for a protective order. Abbott has been and remains ready to proceed with these depositions, which will not affect any of the Court's deadlines, reopen discovery, or cause prejudice to any party.

For the foregoing reasons, the Court should **DENY** the United States' motion.

---

[9] The Government has indicated that Mr. Thompson and Mr. Reed will be at least two of CMS's designees for the Rule 30(b)(6) depositions ordered by the Court. These witnesses will be deposed as a result of the Special Master's ruling.

-12-

Dated:  October 13, 2009            Respectfully submitted,

/s/ R. Christopher Cook
James R. Daly
Jason G. Winchester
Brian J. Murray
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

R. Christopher Cook
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Abbott Laboratories Inc.*

**CERTIFICATE OF SERVICE**

    I, David S. Torborg, an attorney, hereby certify that I caused a true and correct copy of the foregoing to be served on all counsel of record electronically by causing same to be posted via LexisNexis, this 13th day of October, 2009.

                                       /s/ David S. Torborg
                                       David S. Torborg