IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF MASSACHUSETTS


        IN RE:                         )
                                       )  CA No. 01-12257-PBS
        PHARMACEUTICAL INDUSTRY AVERAGE  )
        WHOLESALE PRICE LITIGATION      )  Pages 1 - 25
                                       )




                            STATUS HEARING

                   BEFORE THE HONORABLE PATTI B. SARIS
                        UNITED STATES DISTRICT JUDGE




                        United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts
                        October 8, 2009, 4:10 p.m.




                        LEE A. MARZILLI
                    OFFICIAL COURT REPORTER
                  United States District Court
                  1 Courthouse Way, Room 7200
                        Boston, MA  02210
                        (617)345-6787

f3da2c85-9ef4-4c9b-9bb3-a85f290e97db

1    A P P E A R A N C E S:

2        THOMAS R. SOBOL, ESQ., Hagens Berman Sobol Shapiro,
     LLP, 55 Cambridge Parkway, Cambridge, Massachusetts, 02142,
3    for the Class Plaintiffs.

4        STEVE W. BERMAN, ESQ., Hagens Berman Sobol Shapiro,
     LLP, 1301 5th Avenue, Suite 2900, Seattle, Washington,
5    98101-1090, for the Class Plaintiffs.

6        JENNIFER FOUNTAIN CONNOLLY, ESQ., Wexler Wallace, LLP,
     55 W. Monroe Street, Suite 3300, Chicago, Illinois, 60603,
7    for the Class Plaintiffs.

8        DONALD E. HAVILAND, ESQ. and MICHAEL LoRUSSO, ESQ.,
     The Haviland Law Firm, LLC, 111 S. Independence Mall East,
9    Suite 1000, Philadelphia, Pennsylvania, 19106, for the
     Plaintiffs, Therese Shepley and Larry Young.

10

11        ANDREW D. SCHAU, ESQ., Patterson Belknap Webb & Tyler,
     LLP, 1133 Avenue of the Americas, New York, New York,
     10036-6710, for the Defendant, Johnson & Johnson.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            P R O C E E D I N G S

2            THE CLERK:  In Re:  Pharmaceutical Industry

3    Average Wholesale Price Litigation, Civil Action 01-12257,

4    will now be heard before this Court.  Will counsel please

5    identify themselves for the record.

6            MR. SOBOL:  Good afternoon, your Honor.  Tom Sobol

7    for the class plaintiffs.

8            MR. BERMAN:  Steve Berman for the class.

9            MS. CONNOLLY:  Good afternoon, your Honor.

10   Jennifer Connolly for the class.

11           MR. HAVILAND:  Your Honor, Don Haviland for

12   Therese Shepley and Larry Young.

13           MR. LoRUSSO:  Good afternoon, your Honor.  Michael

14   LoRusso for Therese Shepley and Larry Young.

15           MR. SCHAU:  Andrew Schau, Johnson & Johnson.

16           THE COURT:  So, first of all, what's happening

17   next week?  Someone told me there's a First Circuit argument

18   next week.

19           MR. BERMAN:  There was a First Circuit argument

20   today of the consumer AstraZeneca case.

21           THE COURT:  Oh, that's the consumer.  So what's

22   that about?  I've lost track of them all.

23           MR. BERMAN:  That was the settlement we had of the

24   consumers, Track One.  Mr. Haviland objected to the

25   settlement.

1    THE COURT:  This is your objection.  That's why

2  you're all here.

3    MR. BERMAN:  Yes.

4    THE COURT:  I got it, I got it, because Robert

5  said it's got to be today.  So that's because there was an

6  argument today, and you came in from Washington?  Is that

7  it?

8    MR. BERMAN:  Correct.

9    THE COURT:  And then next week we have Track Two,

10  right?  Is that wrong?  Because a lot of these old dates are

11  on calendars, and I'm confused.

12    MR. BERMAN:  The Track Two settlement I think has

13  been changed.

14    MS. CONNOLLY:  We just asked.

15    MR. BERMAN:  We just asked.  We still haven't

16  gotten the data to send the notice out.

17    THE COURT:  I see.  So there is nothing in

18  Track Two coming up?

19    MR. BERMAN:  Not imminently, no.  I think we just

20  filed a motion this week explaining to you where we are on

21  that, asking for a new notice to come out and for some new

22  dates.

23    THE COURT:  And where are the national class

24  actions?  Is that on appeal to the First -- see, I'm glad

25  you're here because I have no memory.  The national class

1    actions, did I stay that pending the AWP opinion?

2              MR. BERMAN:  You did.

3              THE COURT:  So that now needs to go up there.

4              MR. BERMAN:  Well, it's in the First Circuit, and

5    the First Circuit sustained your verdict on AstraZeneca.

6              THE COURT:  Right.

7              MR. BERMAN:  So we're back down here.

8              THE COURT:  No, but what about the thing we spent

9    six months or I spent six months on -- God knows how long

10   you spent -- trying to figure out the groupings of the

11   different statutes?  Where is that?

12             MR. BERMAN:  That you stayed pending the appeal,

13   which has now been decided.

14             THE COURT:  All right, so now it's here.

15             MR. BERMAN:  It's here.

16             THE COURT:  So now AstraZeneca may want to appeal

17   that on a national -- they're not sitting here, so --

18             MR. BERMAN:  They have filed a petition for

19   rehearing today of your verdict decision, and they're going

20   to petition the Supreme Court, so they want to go further

21   up.

22             THE COURT:  So we're not even close to hitting the

23   national class groupings.  Remember, I grouped for some, I

24   struck out some states, and then I said, another way to do

25   this would be state by state.

1        MR. BERMAN:  I think we're fairly close because

2   the petition for hearing is denied, which they usually act

3   fairly quickly.  Then I think we're back here because

4   there's no stay while they're filing a cert petition.

5        THE COURT:  No, but then they have a right to

6   appeal me, right, under 23(f) on the class cert, which I'd

7   be surprised if they didn't.  So it's premature to set a

8   trial date on that, right, or not?  Maybe I should have a

9   status on that as well once we're --

10       MR. BERMAN:  I think I would like that, yes.

11       THE COURT:  So now we're at Johnson & Johnson, and

12   one of the things that confused me about this -- I barely

13   remember it.  Let's start with that basic fact.  It was at

14   the tail end of the trial.  I think what I thought I was

15   doing was resolving Class 1 under 93A, not under every state

16   statute.  Now, was that not true?

17       MR. BERMAN:  Well, we thought that you had, and

18   the judgment reflects that you had done it nationwide.

19       MR. SCHAU:  That's correct.  I can't tell you what

20   you anticipated you were doing.

21       THE COURT:  Well, all we talked about in court was

22   93A.  So, truthfully, that wasn't my intent at all to

23   resolve it nationally.  Does it say "nationally," or does it

24   just say "93A"?  I only had 93A.  I hadn't certified a

25   national class.  How could I possibly have --

1          MR. SCHAU:  You had certified a national class for

2     Class 1.

3          MR. BERMAN:  For Class 1 you had a national class

4     without --

5          THE COURT:  Well, I had no intent to dismiss it

6     other than for Massachusetts.  Let's put it this way:  No

7     one was more surprised than I.  Maybe the language went in

8     too fast or whatever.  But I did intend for Massachusetts.

9     I couldn't have possibly thought through the country because

10    at that point I hadn't gone through all the national laws.

11    So I did it under 93A was my intent.  And if I was negligent

12    in how I phrased it, I think I just took your wording, and I

13    just didn't intend that, I didn't write on it.  But I did

14    intend it for 93A.  So where does that leave us?

15         MR. BERMAN:  Well, I think, as I interpret the

16    First Circuit opinion, because Class 1 was not -- there was

17    no Class 1 93A trial, and they have a right to a jury, I'm

18    not sure that your decision is binding.  I mean, we never

19    presented Class 1 --

20         THE COURT:  I thought 93A you don't get a right to

21    a jury.

22         MR. BERMAN:  You don't get a jury, okay.

23         THE COURT:  So let's just back up a little.  So it

24    came up in about ten minutes at the tail end of the case.

25    My intent was that under 93A, that it wouldn't fly.  If I

f3da2c85-9ef4-4c9b-9bb3-a85f290e97db

1   wrote it more broadly, it's because I took your language,

2   and it wasn't my intent, all right?  So if someone had

3   simply moved for reconsideration, I could have clarified

4   that point on national versus state.

5          But right now all I'm thinking about is the state,

6   and so what -- that was my view is that it wasn't -- you

7   know, I had said there were no per se liability.  I had

8   found that that was the industry and government norm.  The

9   30 percent bump, which was yours, I bought hook, line, and

10  sinker and was affirmed on that.  But I think, even under

11  just the state law, what the First Circuit was saying is, I

12  need to at least officially go through the summary

13  judgment's last trial piece of it.

14         MR. BERMAN:  And apply the summary judgment

15  standard as to --

16         THE COURT:  Right, yes.  So that's what I'm

17  planning on doing.  You asked for the status probably

18  because you were in town.

19         MR. BERMAN:  Because I wanted to know how you

20  wanted us to proceed.

21         THE COURT:  Well, that's absolutely correct.  So

22  the issue really is 93A Massachusetts.  I couldn't possibly

23  decide it under every state law in the country because I

24  hadn't even done that yet, right?  I mean, I hadn't even

25  looked at them yet.

1       MR. BERMAN:  Well, you had distinguished between

2  the consumers and the third-party payors, and you certified

3  nationwide, because you didn't think the difference in law

4  was so great, basically all the states.

5       THE COURT:  Right.  Well, I did that subsequently.

6       MR. BERMAN:  Right, and so --

7       THE COURT:  But let me just say, under 93A, there

8  is a certain level of outrageousness, and the question is,

9  is anything within the 30 percent that outrageous?  And so

10 we need to at least have that argument with the clear signal

11 from the First Circuit.

12      MR. BERMAN:  Okay.  So I think it's their burden

13 to bring a summary judgment motion.

14      THE COURT:  Yes.

15      MR. SCHAU:  Yes, I would think that perhaps two

16 steps are in order.  If you intended to enter judgment under

17 93A against consumers in Massachusetts, I don't think it's

18 necessary to move for --

19      THE COURT:  Yes, it is.

20      MR. SCHAU:  Okay, we can make a motion limited to

21 Massachusetts.  Then I think Johnson & Johnson would also

22 like to make a motion directed to the balance of the

23 Class 1.  We think you have already decided in your 2006

24 summary judgment decision granting summary judgment against

25 Class 1 for the period 2004 forward that the relevant

1   question --

2            THE COURT:  Let me put it this way:  I have not,

3   intentionally anyway, ruled on the rest of the states.  Now,

4   I've actually, unfortunately, plowed through the laws in all

5   these different states.  So the question really is, on

6   Johnson & Johnson, I found there was no liability with

7   respect to the third-party payors and the consumer

8   plaintiffs.  So now the question is, should I simply have a

9   bench trial, which is all you get, based on the old

10  evidence, and make a finding with respect to Class 1?

11  Should I do it based on summary judgment?  How do you want

12  me to proceed on Class 1 with 93A?  And then we can address

13  what we should do with respect to the nation because as the

14  First Circuit points out, and I actually found, many of

15  these states require jury trials.  So --

16           MR. SCHAU:  Well, I think, under 93A, if I read

17  the First Circuit's decision correctly, we should probably

18  move for summary judgment and have you decide.

19           THE COURT:  I'm not sure, or whether you just want

20  to go based on the evidence of the bench trial and make

21  findings on fact and law.  I think that's almost a better

22  way to go.

23           MR. SCHAU:  Okay.

24           MR. BERMAN:  I'm okay with that.

25           THE COURT:  Because I have heard it.  There's no

f3da2c85-9ef4-4c9b-9bb3-a85f290e97db

1    new evidence, exact same lawyer, exact same plaintiffs.

2              MR. SOBOL:  The exact same lawyer?

3              THE COURT:  What?  I mean plaintiffs' lawyers, the

4    plaintiffs' lawyers, right?  It's the exact same thing.  So

5    the only issue is whether I should apply it a little

6    differently or a lot differently because it involves

7    Medicare beneficiaries as opposed to third-party payor

8    consumers, right?

9              MR. BERMAN:  Correct.

10             THE COURT:  Why should I go through the whole

11   rain dance of summary judgment when I've actually got a

12   record?

13             MR. SCHAU:  Sure.

14             THE COURT:  But then there's another issue with

15   respect to the rest of the class.

16             MR. SCHAU:  Right.  I guess I'm a little confused

17   now.

18             THE COURT:  I was confused.  I wasn't sure what

19   was argued up there.  I don't know what was said.  They

20   definitely left it open for me to do summary judgment, for

21   me to do basically what I felt was appropriate.  And the

22   issue is whether or not on Massachusetts only I should do it

23   based on the evidence that I have, and I think answer is

24   "yes" because then I'm making fact findings rather than

25   drawing all reasonable inferences.  Then we get to the rest

1    of the country, right?

2              MR. BERMAN:  Correct.

3              THE COURT:  And then we have to decide that, I

4    think.

5              Now I'm going to ask you all this:  If there were

6    a separate trial for the rest of the country -- let's talk

7    about the rest of the country right now -- do we want to do

8    that on summary judgment?  Or is there new evidence that you

9    would deal with for the rest of the country?  Or do you want

10   me to just rely on the same evidence for the rest of the

11   country?

12             MR. BERMAN:  Well, I think that given the fact

13   that you called it a close call, right, and that there's

14   deferential scale on summary judgment, evidence is construed

15   in the light most favorable to the plaintiff, I don't see

16   how we could ever find summary judgment is appropriate.

17   You're just going to wind up with a bunch of boxes.  It's a

18   triable issue.

19             THE COURT:  Not on -- well, 93A I think we can

20   easily do on the evidence.

21             MR. BERMAN:  I understand that, but in a jury

22   trial states, if you read this very carefully, I think that

23   the First Circuit is saying --

24             THE COURT:  Well, I think what we should do is

25   leave you the chance to file a motion for summary judgment,

1    see what happens with AstraZeneca, because I'm not going

2    to -- and I need to make findings under 93A, which I already

3    thought I had done, but I understand why there's confusion.

4    So now I need to deal with what to do with the rest of the

5    country.  What do you want to do with the rest of the

6    country?  Do you want to file a motion for summary judgment

7    for the rest of the country?

8                  MR. SCHAU:  I do.  I think that there's no

9    particular urgency to that, and therefore I'd be interested

10   in what you would expect from us.

11                 THE COURT:  I've already been doing this for eight

12   years.

13                 MR. SCHAU:  Right.

14                 THE COURT:  My sense of urgency is just to finish

15   it, at least the class end, okay?  I've got all these

16   federal government cases.  Talk about rooms of documents,

17   wait till you see what's happening in the relator cases.

18   It's unbelievable.  And I have all the state cases.  It's

19   overwhelming at this point.  It's more, not less.  So you

20   don't want to get bogged down in all of that.

21                 I am going to make fact-findings as a trial judge

22   on Class 1.  That's what I thought I was doing last time,

23   and I didn't do it well enough.  On the rest of it, I didn't

24   think I was doing the whole thing.  Now, maybe I was tired

25   at the end and didn't notice what the language said, and no

1   one asked me to clarify, so, okay, I wasn't planning on

2   doing it for the country.  So now we have the second piece

3   of it.

4           MR. BERMAN:  He wants to move for summary

5   judgment.  I've explained why I think it's just going to be

6   a waste of paper, but, okay, and I'd like to set a trial

7   date.  This has got to end.  I feel the same sense of

8   urgency as you.

9           THE COURT:  It's not worth it until I find out

10  whether or not they're willing to try a national class in

11  this courtroom.  That's why I asked the original case first.

12  I'm not sure whether that means --

13          MR. BERMAN:  I'm not following you.  By the time

14  we --

15          THE COURT:  In other words, I certified a national

16  class with respect to AstraZeneca, right?

17          MR. BERMAN:  You did for third-party payors.

18          THE COURT:  Right.

19          MR. BERMAN:  And that's a different standard in

20  terms of state laws.  You haven't grouped them for consumers

21  because you found you didn't have to.  So whatever happens

22  in the First Circuit --

23          THE COURT:  I don't remember that.  I actually

24  don't remember that, whether or not -- I know there were no

25  individualized issues with respect to individual consumers

1    because they knew nothing, but the issue is, isn't there

2    still a difference in state laws?

3              MR. BERMAN:  Well, some state laws, for example,

4    don't allow TPPs to sue.  There's all kinds of special

5    issues about third-party payors.

6              THE COURT:  I'm sorry, I'm just not remembering,

7    and, I'm sorry, I didn't actually know you were coming in

8    today till about 25 minutes ago, so I'm focusing.  You came

9    in, I take it, just because you happened to be in town?  Is

10   that it?

11             MR. BERMAN:  Yes.

12             THE COURT:  When I certified a national class of

13   consumers, Medicare beneficiaries, under what statutes?  All

14   the state statutes?

15             MR. BERMAN:  Correct.

16             THE COURT:  Was that appealed?

17             MR. BERMAN:  Yes.

18             THE COURT:  That's what's appealed, right?

19             MR. BERMAN:  And it was denied.

20             THE COURT:  With respect to AstraZeneca.

21             MR. SCHAU:  Permission to appeal was denied.

22             THE COURT:  What?

23             MR. SCHAU:  Permission to appeal was denied.

24             MR. BERMAN:  Correct.

25             MR. SCHAU:  That has not -- we sought to appeal

1    your Class 1 national finding.  We were denied permission to

2    bring that appeal.  So it was appealed only in the sense

3    that we sought permission, and we were not allowed to.

4              THE COURT:  So, now, why isn't he right then, I

5    mean, if it's a different issue than what's on appeal now,

6    or will be on appeal?

7              MR. SCHAU:  Because I think -- well, there may

8    come a time --

9              THE COURT:  AstraZeneca settled, right, on the

10   Class 1?

11             MR. BERMAN:  Exactly.

12             MR. SCHAU:  There may come a time when you ought

13   to set a trial date, but I would like the opportunity to

14   move for summary judgment.  And we don't need to argue the

15   merits of that motion today, but we think we have a sound

16   motion.

17             MR. BERMAN:  As everyone does, and we set trial

18   dates, and if you win, we strike the trial date.

19             THE COURT:  At the time, I might have done all

20   this.  I have now become fully cognizant of the variations

21   in the various statutes.  So some do require jury trials.

22             MR. SCHAU:  Unless you grant summary judgment.

23             THE COURT:  So the question is, if I grant summary

24   judgment on one that doesn't, does that apply to all the

25   other ones that don't?

1          MR. BERMAN:  You can't --

2          THE COURT:  And just send the ones with jury

3     trials to the jury?

4          MR. BERMAN:  Correct.

5          THE COURT:  Is that realistically what we're

6     talking about?

7          MR. BERMAN:  Yes, if you grant summary judgment.

8     I don't think that's going to happen, but --

9          THE COURT:  No, no, no, no, hear me out.  If I

10    find as a matter of 93A law, which has a certain level of

11    outrageousness to it, that it was a close call but this

12    isn't that outrageous, like I did with the other ones, does

13    that then preclude all the other states where it's just a

14    bench trial?  And I would just send to trial the jury trial?

15    We all have to think about these issues.

16         MR. BERMAN:  I'd need to think about that.  I

17    don't want to shoot off the top --

18         THE COURT:  Because as I'm now much more

19    sophisticated about, and you are too, right, all these 93A

20    statutes, it's not clear that every state construes it at

21    the level of outrageousness, if you will, that 93A does.

22         MR. BERMAN:  That's correct.

23         THE COURT:  I'm now a lot more sophisticated about

24    this stuff.  We all need to go back through that.

25         MR. BERMAN:  Yes, I agree, to figure out which

1   states are now -- to group the states a little more

2   precisely like we did with AstraZeneca.

3           THE COURT:  It may just be for outrageousness

4   states, you know what I mean, the ones that just sort of get

5   you to the high level of rascality that just make you want

6   to vomit kind of standard, the vomit standard.  I think some

7   are lower than that.  Am I wrong?

8           MR. BERMAN:  Some are lower than that.

9           THE COURT:  We didn't know that at the time.

10          MR. SCHAU:  Well, first of all, you have --

11          THE COURT:  You think I did, that some were lower?

12          MR. BERMAN:  I don't know.  It wasn't briefed with

13   that precision.

14          THE COURT:  It wasn't briefed, yes.

15          MR. SCHAU:  We still think we have a valid summary

16   judgment motion.  And when I said I was confused before,

17   what I was about to raise with you was the fact that you

18   have already entered summary judgment against the entirety

19   of a national Class 1 claim based on government knowledge as

20   of 2003.

21          THE COURT:  Right.

22          MR. SCHAU:  Okay?  So the question of whether or

23   not you can do that, according to the logic of your own 2006

24   decision, is, you can based on what the government knew, and

25   that that conclusion controls the claims of all Class 1

1   members, be they resident of Massachusetts or anywhere else.

2   And that will be essentially the basis of our motion.

3           THE COURT:  Sure.  All right, so --

4           MR. SCHAU:  And we will say that, we would concede

5   that consumers have never heard of AWP, and therefore do not

6   themselves have expectations one way or the other; that

7   therefore, based on the logic of your 2006 decision, the

8   relevant question is what the government knew because they

9   were the ones that imposed the 20 percent payment obligation

10  on consumers.

11          THE COURT:  No, no.  That was imposed by statute.

12          MR. SCHAU:  The government, Congress, okay?  And

13  it is conceded and undisputed that the government knew of

14  the kinds of spreads applicable to the two Johnson & Johnson

15  drugs at issue.  So even for mega spreads, which are not

16  what we're talking about, you've entered summary judgment

17  against all consumers throughout the country 2004 forward

18  based on what the government knew.

19          THE COURT:  But, no, that's based on the fact that

20  the statute had changed.  Wasn't it?

21          MR. SCHAU:  Well, you said that --

22          THE COURT:  Medicare Modernization --

23          MR. SCHAU:  Well, you said that by 2003, it had

24  become a term of art, and so when Congress used the term --

25          THE COURT:  All right, so let's do this, let's do

f3da2c85-9ef4-4c9b-9bb3-a85f290e97db

1   this:  You'll file a motion for summary judgment for the

2   rest of the class.

3           MR. SCHAU:  Yes.

4           THE COURT:  And a motion for judgment based on the

5   old trial record, which is what I thought I was doing

6   before.

7           MR. SCHAU:  For Massachusetts.

8           THE COURT:  But I'm not even sure the court had as

9   much trouble with that as they did the whole country, just

10  reading the opinion, but you're going to file that.

11          You're going to file an opposition to the motion

12  for summary judgment, and you're going to file an opposition

13  to the 93A.  But more importantly from you, I think you need

14  to come up with a little bit of a trial plan for me.

15          MR. BERMAN:  Right.

16          THE COURT:  Because I'm thinking out loud now

17  because we have done so much more since that.  That was,

18  like, ten minutes of my life kind of thing as opposed to the

19  rest of it.  We know a lot more about these statutes.  And

20  whether or not -- I believe, if I'm remembering, that a

21  bunch -- there are a huge number of little FTCA acts which

22  are identical to Massachusetts.  There's a huge amount of

23  unconscionability that it takes to get you there.  But there

24  are many other statutes that weren't that onerous.

25          MR. BERMAN:  That's correct.

1          THE COURT:  Were you involved at all in watching

2     it?  So I'm just trying to figure out --

3          MR. SCHAU:  I looked at it a little bit from a

4     distance, but -- and I say "I" meaning me personally.  I

5     wasn't involved in that briefing.  But, you know, I mean,

6     there is the fact that Mr. Berman explained to you earlier

7     in the proceedings, not today, that 93A has the most liberal

8     standard, other than perhaps California, for the imposition

9     of liability, so --

10          THE COURT:  Weren't some of them --

11          MR. SCHAU:  Pardon me?

12          THE COURT:  I think there were two or three that

13     were negligence standards, for example.

14          MR. BERMAN:  Why don't we do this.

15          MR. SCHAU:  All of them prohibit deceptive

16     conduct.

17          THE COURT:  Right.

18          MR. SCHAU:  Some of them prohibit unfair conduct.

19          THE COURT:  Right.

20          MR. SCHAU:  Okay?  Those that prohibit

21     deceptive --

22          THE COURT:  -- conduct only, you might win.

23          MR. SCHAU:  Right, on deceptive, right.  So then

24     the question is, those that add a layer of unfairness --

25          THE COURT:  Right.

1          MR. SCHAU:  -- okay, could you find liability

2    against Johnson & Johnson based on an unfairness prong,

3    where the relevant knowledge base is in the government

4    rather than the consumers themselves?  Because I don't think

5    any of us would dispute, the consumers have never heard of

6    AWP.

7          THE COURT:  No, but the -- you know, let me not

8    comment any further.  I haven't reread that huge decision in

9    a while.  But I remember in thinking about it, most of the

10   little FTCA acts fell either in the category of unfair and

11   deceptive or just deceptive, but there were a few outliers.

12         MR. BERMAN:  Well, may I make a suggestion?

13         THE COURT:  Yes.

14         MR. BERMAN:  We've done the work.  We did this in

15   AstraZeneca, and you issued a ruling.  Why don't we submit

16   kind of a proposed trial plan.

17         THE COURT:  Yes, and when you file your motion for

18   summary judgment, just read that and see if any of them

19   would -- because the issue is, once I make that decision,

20   whether or not that binds the rest of the country.  I don't

21   know.

22         MR. BERMAN:  Well, we would refine it for you.  We

23   would say:  Here's a like statute, jury trial or nonjury

24   trial, so you get an idea of how many states are entitled to

25   a jury trial on those issues, because that bears on, I

1    think, whether it binds the states.

2            THE COURT:  But why wouldn't I just wait and see

3    what happened with AstraZeneca?  Or you would say, try it

4    separately in any event?

5            MR. BERMAN:  Right, because you've already

6    indicated in a prior order that the trials would be separate

7    between J & J and AstraZeneca.

8            THE COURT:  Because AstraZeneca already settled

9    Class 1?

10           MR. BERMAN:  Right.

11           THE COURT:  And every other --

12           MR. BERMAN:  This is the last Class 1.

13           THE COURT:  All right.

14           MR. SCHAU:  I think, as a practical matter, if

15   AstraZeneca were to prevail on its appeal of a national

16   class under Classes 2 and 3, that might well counsel for

17   allowing us then to appeal the grant of a national class on

18   Class 1.

19           THE COURT:  Have you already -- it's too late,

20   isn't it?

21           MR. SCHAU:  We tried to appeal and were denied

22   that.  I don't think that would preclude us from seeking

23   leave to appeal in light of a new decision that shed light

24   on that question.  It may be that the Class 2 and 3 appeal

25   by AstraZeneca cuts against us.

1        THE COURT:  Well, can I say this, and maybe I'm

2    being naive here:  I would be shocked if the First Circuit

3    didn't allow some sort of national set of trials to go

4    forward.  I thought it was difficult whether it was all

5    here, because it would be very difficult for me, or whether

6    it was fifty different or thirty-six different trials.  I

7    think reasonable people could disagree on what was a

8    superior way of going, but I don't think they're going to

9    say that it's over.  The issue is, do you want to try this

10   in fifty different states, or do you want to try it in one

11   state?  That's sort of -- am I -- that's how I put it,

12   right?  I mean, you get the one or the other, but I don't

13   think it goes away.

14       MR. SCHAU:  I think you're probably right that --

15   my question simply is, does it make sense to wait to hear

16   what the First Circuit says?

17       THE COURT:  No.  That I'm not going to do.  That

18   I'm not doing.  So when can you file briefs?

19       MR. SCHAU:  At your pleasure.  We could do it by

20   the end of the year.  I mean, I'm pretty busy, but --

21       THE COURT:  The end of the year?

22       MR. SCHAU:  Thirty days?

23       MR. BERMAN:  I was thinking no later than thirty

24   days.

25       THE COURT:  Thirty days makes sense, thirty days.

1            MR. SCHAU:  Fair enough.

2            THE COURT:  On the motion for summary judgment, at

3      least.  And I suppose that that will be a motion for summary

4      judgment nationally?  Is that what you're saying?

5            MR. SCHAU:  I think, logically, I may divide it

6      into two, a Massachusetts-only based on --

7            THE COURT:  Which is just based on the findings,

8      and then a motion for summary judgment on the state.  You'll

9      get another thirty days to respond.  And I don't know what

10     the timetable for these other cases are.

11            Now, in the meantime, let's go off the record.

12            (Discussion off the record.)

13            (Adjourned, 4:46 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      C E R T I F I C A T E

3

4

   UNITED STATES DISTRICT COURT )
5  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
6

7

8            I, Lee A. Marzilli, Official Federal Court

9  Reporter, do hereby certify that the foregoing transcript,

10 Pages 1 through 25 inclusive, was recorded by me

11 stenographically at the time and place aforesaid in Civil

12 Action No. 01-12257-PBS, In Re:  Pharmaceutical Industry

13 Average Wholesale Price Litigation, and thereafter by me

14 reduced to typewriting and is a true and accurate record of

15 the proceedings.

16           In witness whereof I have hereunto set my hand

17 this 20th day of October, 2009.

18

19

20

21

22           /s/ Lee A. Marzilli

23           _____
             LEE A. MARZILLI, CRR
             OFFICIAL FEDERAL COURT REPORTER
24

25

f3da2c85-9ef4-4c9b-9bb3-a85f290e97db