**ANDERSON EXHIBIT 2F**

CIVIL ACTION NO. 00 CV 10698 MLW

126. On page 20 of its July 24, 1998 S-1 filing with the SEC, DEY stated in a section headed "Year Ended December 31, 1996 Compared to the Year Ended December 31, 1995," that:

> Net sales increased by 21.8%, from $136.7 million to $166.5 million. The increase resulted primarily from $14.0 million in net sales due to the introduction of albuterol MDI, a $9.8 million increase in net sales of cromolyn sodium inhalation solution and a $5.00 million increase in albuterol sulfate inhalation solution net sales.
>
> Gross profit increased by 4.6%, from $97.7 million to $102.2 million. Gross profit as a percentage of net sales decreased from 71.5% to 61.4%. The decrease in gross profit percentage resulted primarily from the loss on albuterol MDI products partially offset by a high gross margin on cromolyn sodium inhalation solution. Because of the albuterol MDI losses, during 1996, the Company renegotiated the supply agreements on terms more favorable to the Company. Excluding albuterol MDI products, the 1996 gross profit percentage would have been 69.3%, compared to 71.5% in 1995.

127. On page 25-26 of its July 24, 1998 S-1 filing, DEY stated in a footnote (2) the following:

> (2) 1997 net sales represents sales commencing in July 1997 when Dey acquired the exclusive right to market this product.
>
> Albuterol Sulfate. . . . In 1997, the total U.S. market for all forms of albuterol sulfate inhalation products to treat respiratory diseases was estimated by IMS to be $549.7 million. Dey markets three separate albuterol sulfate products:
>
> o   Sterile, unit dose inhalation solution. The FDA approved Dey's ANDA for this product in 1992. IMS reported that the U.S. albuterol sulfate unit dose market was approximately $119.2 million in 1997.
>
> o   MDI aerosol. This product is an MDI form of albuterol that uses CFC propellant and is manufactured for the Company by Glaxo Wellcome, the manufacturer of the brand version

131

CIVIL ACTION NO. 00 CV 10698 MLW

of the product. IMS reported that the U.S. albuterol sulfate MDI market was approximately $381.2 million in 1997.

o   Inhalation solution concentrate. This product is a multi-dose concentrate form of albuterol. It is also manufactured for the Company by Glaxo Wellcome. IMS reported that the U.S. market for albuterol sulfate inhalation solution concentrate was approximately $49.3 million in 1997.

128. Dey's independent auditors' report by KPMG Peat Marwick LLP begins on page 50 of the July 24, 1998 Dey S-1 filing with SEC and stated at Note 10, Commitments and Contingencies, the following excerpted entries:

> In December 1996, the Company entered into a ten year agreement with a pharmaceutical company whereby the Company was granted exclusive selling, marketing, and distribution rights for a product in the United States, excluding Puerto Rico and the Virgin Islands (the Territory). Under the terms of the agreement, the Company is required to make minimum payments of forty percent (40%) of the contribution margin resulting from sales of the Product within the Territory. For purposes of this contract, contribution margin is defined as sales less cost of sales, marketing, selling, distribution, clinical testing and administrative expenses.
>
> . . .
>
> A number of pharmaceutical companies, including the Company, have received federal subpoenas in connection with an ongoing investigation of the reporting of 'wholesale acquisition cost' data. Six states use such data to determine the rate at which they reimburse pharmacies for pharmaceuticals dispensed under Medicaid programs. The Company is not able to predict what relief, if any, any federal or state authority may assert as a result of this investigation.

129. On April 30, 1999, DEY filed its third amended prospectus with the SEC. On pages 7 and 8, DEY, in an extensive disclosure, discussed the federal subpoenas from the Office of Inspector General describing investigations into both WAC and AWP price reporting frauds of which DEY is a named subject.

CIVIL ACTION NO. 00 CV 10698 MLW

130. On page 11 of its third amended SEC filing on April 30, 1999, DEY stated as a risk its reliance on third parties to manufacture some of its products including its albuterol sulfate MDI aerosol and inhalation solution concentrate products. DEY did not in its original S-1 filing list this risk of the manufacturer of its albuterol sulfate MDI aerosol and inhalation solution concentrate products in the importance of DEY's reliance on third parties.

131. In its third amended S-3 SEC filing on April 30, 1999, DEY stated, at page 20 in its overview of management's discussion and analysis of financial condition and the results of operations,

> During the period from 1992 through 1998, the Company experienced significant growth, with net sales increasing from $50 million in 1992 to $266 million in 1998. The increase in net sales was primarily due to the introduction of three sterile, unit dose inhalation solution products (albuterol sulfate in 1992, cromolyn sodium in 1994, and ipratropium bromide in 1997) and the acquisition of the exclusive marketing rights of EpiPen (Registered) products in 1997. In general, the gross profit margins of generic drug products decline as the products become more mature and as new competitors enter the market. During the period of 1992 through 1998, the Company was able to maintain annual gross margins of not less than 61.4% through the introduction of new products and by capturing large market shares during such period.

132. On page 23 of its third amended prospectus filed with the SEC on April 30, 1999, DEY stated regarding the year ended December 31, 1997 compared to the year ended December 31, 1996, that:

> Gross profit increased by 39.5%, from $102.2 million to $142.6 million. Gross profit as a percentage of net sales incrased from 61.4% to 64.9% due to the introduction of ipratropium bromide inhalation solution and due to an improved gross profit margin on albuterol MDI. Ipratropium bromide inhalation solution, which was introduced in early 1997, contributed $45.2 million in gross profit. The gross profit percentage on albuterol MDI

133

CIVIL ACTION NO. 00 CV 10698 MLW

improved from a negative gross margin in 1996 to a 23.0% gross margin profit in 1997. The 1996 negative gross margin on albuterol MDI was attributable to relatively high purchase prices from the manufacturer and competitive pricing pressures in the market.

133. The independent auditor's report of KPMG LLP begins at page 54 of the S-3 filing of DEY's third amended prospectus on April 30, 1999, at Note 5 regarding related party transactions, the auditors noted the following:

> The Company's cost of sales includes licensing fees due to an affiliate. Effective July 1, 1997, the Company agreed to pay licensing fees on a licensed product of 16.5% of up to $15.75 million of net sales for 1997 and up to $31.50 million of net sales for 1998 through 2010, respectively. In the event the Company does not achieve certain minimum net sales or gross margins on the licensed product, both parties agree to negotiate in good faith to determine a new royalty percentage which should be applicable. Minimum net sales and gross margins were achieved in 1997 and 1998. Total licensing fees relating to this agreement were $0, $2,600,000, $5,200,000 and $1,200,000 for the years ended December 31, 1996, 1997, 1998 and the three months ended March 31, 1999 . . . .

134. In its Note 9, Commitments and Contingencies, DEY's independent auditor, KPMG LLP, in the third amended prospectus filed on April 30, 1999, stated the following:

> In December 1996, the Company entered into a ten year agreement with a pharmaceutical company whereby the Company was granted exclusive selling, marketing, and distribution rights for a product in the United States, excluding Puerto Rico and the Virgin Islands (the Territory). Under the terms of the agreement, the Company is required to make payments of forty percent (40%) of the contribution margin resulting from sales of a product within the Territory subject to a minimum payment schedule. For purposes of this contract, contribution margin is defined as sales less cost of sales, marketing, selling, distribution, clinical testing and administrative expenses. Pursuant to the agreement, the Company made an initial payment of $500,000 in 1996 and made a minimum payment of $500,000 in 1997. The rights and obligations of this contract were assigned to EM Pharma, Inc. on September 1, 1998 and were transferred with the sale of EM Pharma, Inc. to Lipha Americas. The Company accrued $667,000 for the 1998 minium payments during 1998 prior to the transfer of EM Pharma, Inc.

CIVIL ACTION NO. 00 CV 10698 MLW

135. On pages 43 and 44 of DEY's third amended prospectus filed on April 30, 1999, DEY described its officers and the background of its officers, and stated the following:

> F. Ronald Stanton has been a director of Dey since April 1999. Since 1998, Mr. Stanton has served as Executive Vice President and Chief Commercial Officer of LipoMed, Inc. From 1996 to 1997, he was Managing Director of F. R. Stanton, LLC. Between 1988 and 1995, he held several positions with Glaxo, Inc., including Vice President and General Manager of the Health Management Division of Glaxo Wellcome and Vice President and General Manager of the Allen & Hanburys Division of Glaxo, Inc.

On August 20, 1999, DEY withdrew its application for initial public offering of $14 million shares of securities from the SEC.

### i.  Conclusion

136. Therefore, Ven-A-Care has concluded from its investigation that DEY has fraudulently paid a lower Medicaid rebate than required by federal law on NDC #49502-0303-17, NDC #49502-0303-27 and NDC #49502-0196-20 and has defrauded the States' Medicaid programs out of a minimum of 4.1 % of a rebate based on the fact that the drugs that were distributed by DEY were Glaxo's innovator drugs. The SEC filings clearly show that the unnamed company with which DEY had a ten (10) year exclusive distributorship in the UNITED STATES is Glaxo Wellcome, that the unnamed product DEY was distributing is Ventolin, Glaxo's innovator drug,[1]

---

[1] DEY was not only making false statements about its drug being generic in order to pay less rebate, it was also participating in the false price reporting kickback scheme. As of January 4, 1996, DEY's AWP was listed at $21.77 a carton for the inhaler kit while the contract price to Caremark was initially $11.50 a carton. Additional documents show that the group purchasing organization GNYHA was also paying $11.50 for the inhaler kit, but by October 25, 1996 the price was

CIVIL ACTION NO. 00 CV 10698 MLW

and that the reason for the secrecy and obfuscation of the DEY/Glaxo exclusive distribution agreement was to inhibit the federal and states' governments from discovering that the governments were being defrauded out of the difference between the Medicaid rebate amount owed on the distribution of Glaxo's innovator Ventolin drugs and the lower other drug (generic) rebates DEY paid. All of which caused the FEDERAL GOVERNMENT to pay more money to the States' Medicaid pharmacy programs for DEY's drugs than it should have paid and was thus damaged.

## COUNT I

### FALSE CLAIMS ACT;
### CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS

137. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

---

revised to $5.50 for the inhaler kit and $5.25 for the refill kit. GNYHA was again advised of the price decrease on December 16, 1996, down to $4.50 for the kit and $4.25 for the refill. DEY dropped its prices rapidly in an effort to remain competitive and to increase its markert share.

CIVIL ACTION NO. 00 CV 10698 MLW

138. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

139. The DEFENDANTS from a date on or before April 7, 1994, to the present date, knowingly [as defined in 31 USC, §3729(b)] caused to be presented to officers or employees of the States' Medicaid Programs false or fraudulent claims [as explained in United States v. Neifert-White, 390 US 228, 232-233 (1968)] for payment or approval, in that the DEFENDANTS caused to be presented to officers or employees of the States' Medicaid Programs false or fraudulent price and cost information for the drugs specified herein and caused States' Medicaid Programs to pay out sums of money to the providers and suppliers of the DEFENDANTS' specified drugs grossly in excess of the amounts permitted by law, resulting in great financial loss to the States' Medicaid Programs and the UNITED STATES.

140. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).

## COUNT II

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT

141. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE

CIVIL ACTION NO. 00 CV 10698 MLW

LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

142. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

143. The DEFENDANTS, from a date on or before April 7, 1994 to the present date, knowingly [as defined in 31 U.S.C. §3729(b)] caused false records or statements to be made or used to get false or fraudulent claims [as explained in United States v. Neifert-White, 390 US 228, 232-233 (1968)] to be paid or approved by the States' Medicaid Programs, in that the DEFENDANTS, caused false records or statements of prices and costs of the DEFENDANTS' drugs specified herein to be used by the States' Medicaid Programs to pay or approve claims presented by the providers and suppliers of the DEFENDANTS' specified drugs, which claims were grossly in excess of the amounts permitted by law, resulting in great financial loss to the UNITED STATES.

144. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(2).

CIVIL ACTION NO. 00 CV 10698 MLW

## COUNT III

### FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR STATEMENTS TO BE USED TO CONCEAL AN OBLIGATION TO PAY MONEY TO THE GOVERNMENT

145. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

146. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

147. The DEFENDANTS, from a date on or before April 7, 1994 to the present date, knowingly [as defined in 31 U.S.C. §3729(b)] caused false records or statements to be made or used to conceal obligations to pay money to the States' Medicaid Programs, in that: the DEFENDANTS knew that the States' Medicaid Programs were using the DEFENDANTS' false price and cost representations for purposes of paying or approving claims of the providers and suppliers of the DEFENDANTS' specified drugs; the DEFENDANTS knew that sums of money paid by the UNITED STATES and States' Governments to the providers and suppliers of the DEFENDANTS' specified drugs were grossly in excess of the amounts permitted by law; the DEFENDANTS knew it was the obligation of the States' and UNITED STATES' Governments to recoup governments'

CIVIL ACTION NO. 00 CV 10698 MLW

funds paid in excess of the amounts permitted by law; the DEFENDANTS, nevertheless, continued to cause the using and making of false records or statements of prices and costs for the specified drugs that were grossly in excess of the reasonable amounts permitted by law; and the DEFENDANTS thus concealed from the States' Governments an obligation of the providers and suppliers of the DEFENDANTS' specified drugs to pay recoupment monies to the States' Medicaid Programs, resulting in great financial loss to the UNITED STATES and States' Governments.

148.  Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(7).

## COUNT IV

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION

149.  This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

150.  Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

CIVIL ACTION NO. 00 CV 10698 MLW

151. The DEFENDANTS, from on or about April 7, 1994 to the present date, knew that the prices charged to their customers for the specified drugs were significantly reduced in amount from the prices and costs represented by the DEFENDANTS and upon which the DEFENDANTS knew Medicaid claims would be approved and paid. Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the States' Medicaid Programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C§2.

152. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

153. The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to the States' Medicaid Programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

154. The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2), in causing the omission of material information from the claims, and in causing the failure to properly

141

CIVIL ACTION NO. 00 CV 10698 MLW

disclose and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to be false or fraudulent claims and caused the claims to be presented to the States' Medicaid Programs for payment and approval in violation of 31 U.S.C §3729(a)(1).

155. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars (10,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

### COUNT V

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; ILLEGAL REMUNERATION

156. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

157. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

158. The DEFENDANTS, from on or before April 7, 1994 to the present date, knew that the prices charged to their customers for the specified drugs were significantly

CIVIL ACTION NO. 00 CV 10698 MLW

reduced in amount from the prices and costs represented by the DEFENDANTS and upon which the DEFENDANTS knew Medicaid claims would be approved and paid. Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the States' Medicaid Programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

159. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the specified drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

160. The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to the States' Medicaid Programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

161. The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)2, in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to be false records or statements that were made and used to get a false

or fraudulent claim paid or approved by the Government. The DEFENDANTS' actions herein caused said false records or statements to be made and used as prohibited by 31 U.S.C. §3729(a)(2).

162. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

## COUNT VI

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS

163. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

164. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

165. The DEFENDANTS, from on or before April 7, 1994 to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished

CIVIL ACTION NO. 00 CV 10698 MLW

pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

166. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the outpatient prescription drugs to the States' Medicaid Programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C. §1395nn(a)(1)(B).

167. The DEFENDANTS knowingly presented or caused their referring physicians, physician groups and outpatient clinics to present claims or bills for the DEFENDANTS' outpatient prescription drugs to the States' Medicaid Programs for payment or approval that were false or fraudulent.

168. The DEFENDANTS' knowing actions in having compensation arrangements for its referring physicians, physician groups and outpatient clinics prohibited by 42 U.S.C. §1395nn(a)(1)(B) and in presenting or causing the presentment of prohibited claims in violation of 42 U.S.C. §1395nn(a)(1)(B) for payment or approval caused the claims for the outpatient prescription drugs presented to the States' Medicaid Programs to be false or fraudulent claims in violation of 31 U.S.C §3729(a)(1).

169. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

CIVIL ACTION NO. 00 CV 10698 MLW

## COUNT VII

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS

170. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC., APOTHECON, INC., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS, under the False Claims Act, 31 U.S.C. §§3729-3732.

171. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

172. The DEFENDANTS, from on or before April 7, 1994, to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services [outpatient prescription drugs] furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

CIVIL ACTION NO. 00 CV 10698 MLW

173. The DEFENDANTS knew that the States' Medicaid Programs would not pay or approve claims for the outpatient prescription drugs if it were disclosed to the States' Medicaid Programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C. §1395nn(a)(1)(B).

174. The DEFENDANTS knowingly made or used or caused their referring physicians, physician groups or outpatient clinics to make or use false records or statements to get false or fraudulent claims and bills for the DEFENDANTS' outpatient prescription drugs to be paid or approved by the States' Medicaid Programs.

175. The DEFENDANTS' knowing presentment or causing others to present, claims or bills to the States' Medicaid Programs in violation of 42 U.S.C. §1395nn(a)(1)(B) without disclosing facts revealing said violations constituted the making or using, or the causing others to make or use, false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. §3729(a)(2).

176. Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

## COUNT VIII

### FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR STATEMENTS TO BE USED TO DECREASE AN OBLIGATION TO PAY MONEY OR PROPERTY TO THE GOVERNMENT

177. This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the

CIVIL ACTION NO. 00 CV 10698 MLW

DEFENDANTS: DEY INC., MYLAN PHARMACEUTICALS, INC., and others, under the False Claims Act, 31 U.S.C. §§3729-3732.

178. Relator realleges and incorporates by reference paragraphs 1 through 136 as if fully set forth herein and further alleges as follows:

179. The DEFENDANTS DEY, MYLAN and others from a date on or before April 7, 1994 to the present date, knowingly [as defined in §3729(b)] caused false records or statements to be made or used to decrease an obligation to pay money or property to the States' Medicaid Programs in that: the DEFENDANT DEY and the DEFENDANT MYLAN each knew that the States' Medicaid Programs were using the DEFENDANT'S false price and cost representations for purposes of paying or approving claims of the providers and suppliers of each DEFENDANT'S specified drugs; each DEFENDANT knew that sums of money paid by the UNITED STATES and the States' Governments to the providers and suppliers of each DEFENDANT'S specified drugs were grossly in excess of the amounts permitted by law; DEFENDANT DEY, DEFENDANT MYLAN and others each knew its obligation under the United States Rebate Program, 42 U.S.C. 1396r-8, to make and use truthful records or statements regarding covered outpatient drugs to determine the required amount of rebate each defendant drug manufacturer had to pay to each State's Medicaid Program so that each State would receive the Best Price available to any of the drug manufacturer's customers (with specified exceptions) and that each State would be a prudent purchaser of the covered outpatient drugs; and the DEFENDANT DEY, the DEFENDANT MYLAN and others, nevertheless, continued to cause the using and making of false records or statements regarding the covered outpatient drugs in order to decrease