**ANDERSON EXHIBIT 5**

UNITED STATES DISTRICT COURT SEALED
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
Ex Rel )
    VEN-A-CARE OF THE )
    FLORIDA KEYS, INC. )
    a Florida Corporation, )
    by and through its principal )
    officers and directors, )
    ZACHARY T. BENTLEY and )
    T. MARK JONES, )
                  Plaintiff, )

v. )

ABBOTT LABORATORIES, INC.; )
APOTHECON, INC.; )
BOEHRINGER INGELHEIM, CORP.; )
BRISTOL-MYERS SQUIBB )
COMPANY; )
DEY, INC.; )
GENEVA PHARMACEUTICALS, INC.; )
GLAXO WELLCOME, INC.; )
HOECHST MARION ROUSSEL, INC.; )
IVAX  CORP. ,MYLAN )
PHARMACEUTICALS, INC.; )
PURDUE PHARMA L.P.; )
PURDUE FREDERICK COMPANY; )
ROXANE LABORATORIES, INC.; )
SCHEIN PHARMACEUTICAL, INC.; )
SCHERING-PLOUGH CORP.; )
SMITHKLINE BEECHAM CORP.; )
WARRICK PHARMACEUTICALS )
CORP.; and ZENITH )
GOLDLINE PHARMACEUTICALS, INC. )
               Defendants. )

CIVIL ACTION NO. 00 CV-10698 MEL

FILED IN CAMERA AND UNDER SEAL

SECOND AMENDED COMPLAINT

For Money Damages and Civil
Penalties Under the False Claims Act
31 U.S.C. §§3729-3732

SECOND AMENDED COMPLAINT
FOR MONEY DAMAGES AND CIVIL PENALTIES UNDER THE FALSE
CLAIMS ACT 31 U.S.C. §§3729-3732

**CIVIL ACTION NO. 00 CV 10698 MEL**

COMES NOW, the UNITED STATES OF AMERICA ("UNITED STATES" or "GOVERNMENT"), by and through VEN-A-CARE OF THE FLORIDA KEYS, INC. ("VEN-A-CARE" or "the Relator"), and its principal officers and directors, ZACHARY T. BENTLEY and T. MARK JONES, and by and through the undersigned attorneys on behalf of the UNITED STATES and on the Relator's own behalf and brings this action against ABBOTT LABORATORIES, INC.; APOTHECON, INC.; BOEHRINGER INGELHEIM, CORP.; BRISTOL-MYERS SQUIBB COMPANY; DEY INC.; GENEVA PHARMACEUTICALS, INC.; GLAXO WELLCOME, INC.; HOECHST MARION ROUSSEL, INC.; IVAX CORPORATION; MYLAN PHARMACEUTICALS, INC.; PURDUE PHARMA L.P.; PURDUE FREDERICK COMPANY; ROXANE LABORATORIES, INC.; SCHEIN PHARMACEUTICAL, INC.; SCHERING-PLOUGH CORPORATION; SMITHKLINE BEECHAM CORPORATION; WARRICK PHARMACEUTICALS CORPORATION,   and ZENITH GOLDLINE PHARMACEUTICALS, INC.; (sometimes referred to collectively as "DEFENDANTS"), for money damages and civil penalties arising out of the DEFENDANTS' violations of the Federal False Claims Act, 31 U.S.C., §§3729-3732 from on or about April 7, 1994, to the present date.

CIVIL ACTION NO.  00 CV 10698 MEL

## <u>TABLE OF CONTENTS</u>

Page No:

**SECTION NO. 1**
  SUMMARY OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**A.**  **DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS**
  **INVOLVING RETAIL PHARMACIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**B.**  **DRUG MANUFACTURERS' FALSE PRICE REPRESENTATION**
  **INVOLVING  SPECIALIZED INFUSION PHYSICIANS**
  **AND PHARMACIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**SECTION NO. 2**
  THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**SECTION NO. 3**
  JURISDICTION & VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**SECTION NO. 4**
  HOW MEDICARE AND MEDICAID REIMBURSEMENT
  IS AFFECTED BY DRUG MANUFACTURERS'
  PRICE AND COST REPRESENTATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**SECTION NO. 5**
  ROLE OF THE DRUG WHOLESALER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**SECTION NO. 6**
  BACKGROUND OF HOW UNITED STATES' MONIES
  ARE PAID FOR DRUG CLAIMS UNDER "PART B"
  OF THE MEDICARE PROGRAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**SECTION NO. 7**
  BACKGROUND OF HOW UNITED STATES' MONIES
  ARE PAID FOR DRUG CLAIMS UNDER
  THE STATES' MEDICAID PROGRAMS . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

i

**CIVIL ACTION NO.  00 CV 10698 MEL**

**SECTION NO. 8**
     **THE FALSE CLAIMS SCHEME**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

**SECTION NO.  9**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **ABBOTT AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **58**

**SECTION NO.  10**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **APOTHECON AS TO MEDICAID**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **65**

**SECTION NO. 11**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **BRISTOL-MYERS SQUIBB AS TO MEDICARE**  . . . . . . . . . . . . . . . . . . . . . . . **69**

**SECTION NO. 12**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **DEY AS TO MEDICAID**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **72**

     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT DEY**
     **AS TO MEDICARE**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **74**

**SECTION NO. 13**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF**
     **DEFENDANT GENEVA AS TO MEDICAID**  . . . . . . . . . . . . . . . . . . . . . . . . . . **76**

**SECTION NO. 14**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **GLAXO AS TO MEDICARE AND MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . **82**

CIVIL ACTION NO.  00 CV 10698 MEL

**SECTION NO. 15**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **HOECHST AS TO MEDICARE AND MEDICAID** . . . . . . . . . . . . . . . . . . . . . . **84**

**SECTION NO. 16**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **MYLAN PHARMACEUTICALS AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . **87**

**SECTION NO. 17**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **ROXANE AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **144**

     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **ROXANE AS TO MEDICARE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **147**

**SECTION NO. 18**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **SCHEIN AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **150**

**SECTION NO. 19**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **SMITHKLINE AS TO MEDICARE AND MEDICAID** . . . . . . . . . . . . . . . . . . **154**

**SECTION NO. 20**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **WARRICK AS TO MEDICAID** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **156**

**SECTION NO. 21**
     **THE SPECIFIC FALSE PRICE AND COST**
     **REPRESENTATIONS OF DEFENDANT**
     **ZENITH GOLDLINE AS TO MEDICARE** . . . . . . . . . . . . . . . . . . . . . . . . . . **159**

CIVIL ACTION NO.  00 CV 10698 MEL

SECTION NO. 22
    DEFENDANTS APOTHECON, BRISTOL-MEYERS,
    DEY, PURDUE PHARMA, PURDUE
    FREDERICK AND SCHEINS' FRAUD IN CONNECTION
    WITH THE MEDICAID REBATE PROGRAM  . . . . . . . . . . . . . . . . . . . . . . . .  161

COUNT I

    FALSE CLAIMS ACT; CAUSING PRESENTATION OF
    FALSE OR FRAUDULENT CLAIMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  174

COUNT II
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD
    OR STATEMENT TO BE MADE OR USED TO GET A
    FALSE OR FRAUDULENT CLAIM PAID OR APPROVED
    BY THE GOVERNMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  175

COUNT III
    FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE
    OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION  . . . . . . . . . . . . .  177

COUNT IV
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET A FALSE
    OR FRAUDULENT CLAIM PAID OR APPROVED BY THE
    GOVERNMENT; ILLEGAL REMUNERATION  . . . . . . . . . . . . . . . . . . . . . . .  179

COUNT V
    FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE
    OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS,
    CLAIMS AND COMPENSATION ARRANGEMENTS  . . . . . . . . . . . . . . . . .  181

COUNT VI
    FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
    STATEMENT TO BE MADE OR USED TO GET  A FALSE
    OR FRAUDULENT CLAIM PAID OR APPROVED BY THE
    GOVERNMENT; PROHIBITED REFERRALS, CLAIMS
    AND COMPENSATION ARRANGEMENTS  . . . . . . . . . . . . . . . . . . . . . . . .  183

iv

CIVIL ACTION NO.  00 CV 10698 MEL

## COUNT VII

    **FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR
STATEMENTS TO BE USED TO DECREASE AN OBLIGATION
TO PAY MONEY OR PROPERTY TO THE GOVERNMENT** . . . . . . . . . . . **185**

**REQUESTS FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **187**

**DEMAND FOR JURY TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **190**

**CIVIL ACTION NO.  00 CV 10698 MEL**

## SECTION NO. 1
## SUMMARY OF THE ACTION

1.      This is an action for damages, treble damages, civil penalties and costs against the DEFENDANTS for violation of the False Claims Act as set out in Counts I through VII, pages 174 through 189.

2.      The Medicare and Medicaid programs pay claims for the prescription drugs specified herein only if three distinct requirements are met.  First, the drug manufacturer must make price and cost information about the drug publicly available.  Second, the programs must elect to cover the drug when medically necessary.  Third, the physician, pharmacy or other health care provider who purchases the drug must confirm that it was administered or dispensed to an eligible person covered by the applicable program.  In some cases, most notably that of the Texas Medicaid Program, manufacturers must report costs and prices directly to the program to satisfy the price disclosure requirement.

3.      The DEFENDANTS benefitted economically when health care providers purchased their drugs in anticipation of Medicare or Medicaid reimbursement, and each of the DEFENDANTS has knowingly made cost and price information about its drugs publicly available, at least in part, to satisfy the first requirement for reimbursement by Medicare and Medicaid.  In the case of the specified prescription drugs at issue, the DEFENDANTS knowingly reported inflated cost and price information that caused Medicare and Medicaid to pay excessive reimbursements.

**CIVIL ACTION NO.  00 CV 10698 MEL**

4.     This false claims action  reveals an intentional scheme by certain pharmaceutical companies, (the " DEFENDANTS"), to arrange financial inducements aimed at pharmacies, specialized physicians (oncologists, infectious disease physicians, etc.) and clinics to increase sales of their prescription drugs which are reimbursed by the Medicare and States' Medicaid programs. The financial inducements arranged by the DEFENDANTS are intentionally concealed so that  federally funded health care programs will not benefit from the true prices in the marketplace. The DEFENDANTS,  participating in what has amounted to a kickback scheme, created financial inducements by falsely inflating reports of the price and cost of their drugs and through additional inducements such as free goods, direct monetary payments and rebates thus causing the Medicare and States' Medicaid programs to pay inflated reimbursement to the pharmacy, specialized physician or clinic providing the covered drug to the drug recipient (collectively "the Providers").   Each of the participating DEFENDANTS made a decision to report average wholesale prices, direct prices, and/or other prices or costs that they knew would be used by Medicare and Medicaid in establishing reimbursement amounts.  Each DEFENDANT, had it so chosen, could have reported prices and costs for the specified drugs that were consistent with the prices actually being charged and paid in the marketplace.  The DEFENDANTS  were free to elect not to report prices and thus not have their drugs covered by Medicare and Medicaid.  Rather than choose either of these paths, each of the participating DEFENDANTS opted to report inflated prices and costs for the express purpose of

2

**CIVIL ACTION NO.  00 CV 10698 MEL**

creating a "spread" between the resulting Medicare and Medicaid reimbursement amounts and the prices actually being charged to the Providers. The DEFENDANTS were fully aware that the Medicare and Medicaid programs were required by their reimbursement policies to use the  DEFENDANTS' reported drug prices and costs in calculating reimbursement amounts.  The following chart demonstrates how DEFENDANTS DEY and ROXANE caused the Medicare program to pay materially inflated reimbursement amounts for the respiratory drug Ipratropium Bromide 0.02% Sol., by reporting inflated prices for the drug for reimbursement purposes while actually selling the drug for a substantially lower amount.  The second column in the chart represents the amount by which the Providers were reimbursed by Medicare for the drug pursuant to the prices Dey and Roxane reported.  The third column represents VEN-A-CARE's true prices paid for Dey and Roxane's Ipratropium Bromide. The chart shows that unlike the Providers, the Medicare program never benefitted from the Dey and Roxane price reductions which actually did take place with respect to the drug.

3

CIVIL ACTION NO.  00 CV 10698 MEL

## Ipratropium Bromide 0.02% Sol.
## HCPCS code J7645 & (K0518)

| YEAR | MEDICARE REIMBURSEMENT AMOUNT PER UNIT* | VenACare COST PER MEDICARE UNIT | "SPREAD" (PROFIT) $ | "SPREAD" (PROFIT) % | MEDICARE EXPENDITURES $ |
|------|------|------|------|------|------|
| 1995 | $ 3.11/mg. ($0.62/ml) | $3.11 | $0.00 | 0% | $14,426,108 |
| 1996 | $ 3.75/mg. ($0.75/ml) | $3.26 | $0.49 | 15% | $47,388,622 |
| 1997 | $ 3.50/mg. ($0.70/ml) | $2.15 | $1.35 | 63% | $96,204,639 |
| 1998 | $ 3.34/mg. | $1.70 | $1.64 | 96% | $176,887,868 |
| 1999 | $ 3.34/mg. | $1.60 | $1.74 | 108% | $253,400,414 |
| 2000 | $ 3.34/mg. | $0.94 | $2.40 | 255% | $347,527,960 |
| 2001 | $ 3.34/mg. | $0.82 | $2.52 | 307% | |

\* Medicare Units were converted from ml's to mg's for the years 1995, 1996 & 1997 (5 ml=1 milligram)  & 1998-2001 @ 95% of AWP

5.     Additionally, some of the DEFENDANTS, in order to pay a lesser rebate to the States under the Medicaid Rebate Program, falsely reported selling  drugs  with an Abbreviated New Drug Application when, in truth and fact, they were selling branded drugs.

### A.     DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS INVOLVING RETAIL PHARMACIES

6.   The DEFENDANTS falsely represented the prices that they charged wholesalers and direct prices for certain of their generic prescription drugs (hereinafter sometimes referred to as the "specified retail pharmacy drugs") in order to cause various State Medicaid programs to pay claims in excessive amounts.  More than half of the amounts paid consisted of federal funds from which the States were required to

4

pay claims based upon the drug's Estimated Acquisition Cost ("EAC") to the pharmacy submitting the claim.  42 CFR § 447.331. The DEFENDANTS knew that each of the States' Medicaid programs had implemented a mechanism to estimate the acquisition cost of prescription drugs to a pharmacy.  Most states used the DEFENDANTS' representation of their Average Wholesale Price ("AWP") (hereinafter sometimes referred to as "AWP STATES") and some States including but not limited to Alabama, Colorado, Florida, Maryland, Massachusetts, Ohio, Rhode Island, and Texas used the DEFENDANTS' representation of the prices they charged wholesalers for the specified drugs.  In the case of the specified retail pharmacy drugs, the DEFENDANTS falsely inflated their reports of the drug prices and costs so that Medicaid pharmacy providers would be paid excessive amounts and thus choose the specified retail pharmacy drugs over competing generic versions.  The DEFENDANTS' false price representations were made directly to the States by the DEFENDANTS and through First Data Bank, the company that assembles drug price data for the State Medicaid programs.

7.     The DEFENDANTS reported truthful prices for many drugs and the States' Medicaid programs were thus able to accurately estimate acquisition costs when paying claims for those drugs.

8.     By using falsely inflated cost and price representations the DEFENDANTS created a "Spread" between the inflated acquisition cost that they caused the States to calculate and use for reimbursement purposes and the actual cost of the drug to the retail pharmacies.  This "Spread", which constituted an unlawful financial inducement

5

**CIVIL ACTION NO. 00 CV 10698 MEL**

arranged by the DEFENDANTS, directly benefitted the DEFENDANTS because it caused their Medicaid provider customers to order the DEFENDANTS' specified drugs instead of their competitors'.  The DEFENDANTS thus duped the States'' Medicaid programs into paying claims for the specified drugs at inflated amounts in order to increase the DEFENDANTS' sales.  The DEFENDANTS lied about the price and cost of their specified drugs in order to cause the States to expend Medicaid program dollars to unwittingly fund  unlawful kickbacks to Medicaid providers.

9.      The DEFENDANTS' wrongful exploitation of the States' Medicaid programs caused the UNITED STATES and the States' Medicaid programs to incur single damages in excess of Ten Million Dollars for which the UNITED STATES and States' Medicaid programs are entitled to recover treble damages plus up to Ten Thousand Dollars per false claim, interest, costs and attorneys' fees.

**B.      DRUG MANUFACTURERS' FALSE PRICE REPRESENTATIONS INVOLVING  SPECIALIZED PHYSICIANS AND PHARMACIES**

10.      The DEFENDANTS made false representations of prices and costs for certain of their drugs and biologicals (hereinafter sometimes referred to as the "specified physician drugs"):  directly to Medicare Carriers and Durable Medical Equipment Regional Carriers ("DMERC's") who approve and pay Medicare claims; directly to the States' Medicaid Pharmacy programs which approve and pay the  States' Medicaid claims; and indirectly through drug price and cost reporting compendia including First Data Bank, Medical Economics, and Medi-Span.  The DEFENDANTS knew that the Medicare and States' Medicaid programs intended to base their

6

**CIVIL ACTION NO.  00 CV 10698 MEL**

payments of "reimbursement" for the specified physician drugs on reasonable

estimations of cost. The Medicare and Medicaid programs utilized the prices reported

by the DEFENDANTS in estimating costs. The DEFENDANTS marketed their specified

physician drugs to specialized physicians (oncologists, infectious disease physicians,

etc.), clinics and pharmacies (hereinafter referred to as "Physician Drug Providers"),

including the Relator, through financial inducements, including but not limited to,

reporting falsely inflated price and cost figures (thus creating a "Spread"), discounts,

free goods and other financial incentives. The DEFENDANTS were in a position to

mislead the Medicare and Medicaid programs because the DEFENDANTS often report

truthful prices for their other drugs that are not the subject of this action. The

DEFENDANTS thus wrongfully exploited the Medicare and States' Medicaid programs

by causing them to pay Physician Drug Providers grossly inflated amounts that far

exceeded a reasonable reimbursement amount based on an estimation of costs.  This

wrongful exploitation by DEFENDANTS caused the United States to incur single

damages in excess of Ten Million Dollars for which the UNITED STATES and States'

Medicaid programs are entitled to recover treble damages plus up to Ten Thousand

Dollars per false claim, interest, costs and attorneys' fees.

### SECTION NO. 2
### THE PARTIES

11.    The Plaintiff in this action is the UNITED STATES.  At all times material to

this civil action, the United States Department of Health and Human Services ("HHS"),

the Health Care Financing Administration ("HCFA"),and its successor agency the

Centers for Medicare and Medicaid Services ("CMS") and The Bureau of Program

Operations ("BPO") were agencies and instrumentalities of the UNITED STATES and

their activities, operations and contracts in administering the Medicare program were

paid from UNITED STATES' funds.  The UNITED STATES and its subcontractors

performing on behalf of the UNITED STATES provided Medicare benefits to qualified

beneficiaries which included payment of claims for the prescription drugs specified

herein manufactured by the DEFENDANTS and used the false and fraudulent price and

cost representations made by the DEFENDANTS in approving and paying claims.

        12.     The States, United States Territories, and the District of Columbia

provided Medicaid benefits to qualified recipients which included payment of claims for

the prescription drugs specified herein manufactured by the DEFENDANTS and used

the false and fraudulent price and cost representations made by the DEFENDANTS in

approving and paying claims.  A significant percentage (at least 50%) of said Medicaid

reimbursement was paid from United States Government funds pursuant to 42 U.S.C.

§ 1396(b).

        13.     The Relator, VEN-A-CARE, is a corporation organized under the laws of

the State of Florida, with its principal offices in Key West, Florida.  The Relator's

principal officers and directors include Zachary T. Bentley and T. Mark Jones, who are

each citizens of the United States and reside in Key West, Florida.  The Relator is a

pharmacy and provides prescription drugs and biologicals specified in this Second

Amended Complaint and has been a Medicare Part B supplier and a Florida Medicaid

8

provider.  The Relator has direct and independent knowledge of the information, and is the "original source" of the information on which these allegations are based within the meaning of 31 U.S.C.  §3730(e)(4)(A) and (B).  The Relator has standing to bring this action pursuant to 31 U.S.C. §3730(b)(1).  The information upon which these allegations are based was voluntarily provided by the Relator to the Federal Government prior to November 1996 and thereafter has been frequently supplemented by the Relator.

14.    Ven-A-Care's principals were aware that Medicare and Medicaid reimbursed for drugs at amounts that were intended to be based on an estimation of cost and not provide for huge windfall profits at  the GOVERNMENT's expense.  Ven-A-Care attempted to alert the responsible state and Federal Government officials to the scheme being perpetrated by the DEFENDANTS.  However, the government agencies lacked sufficient resources and expertise to adequately respond.  Accordingly, the Relator commenced this action based upon its original source information.

15.    DEFENDANT, ABBOTT LABORATORIES, INC. ("ABBOTT"), is a corporation organized under the laws of Delaware with its principal offices in Abbott Park, Illinois.  At all times material to this civil action, ABBOTT has transacted business in the Federal Judicial District of  Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

9

**CIVIL ACTION NO.  00 CV 10698 MEL**

16.    DEFENDANT, APOTHECON, INC. ("APOTHECON"), is a corporation organized under the laws of Delaware with its principal offices in New York City, New York, and is a subsidiary of DEFENDANT BRISTOL-MYERS SQUIBB.  BRISTOL-MYERS SQUIBB, a corporation organized under the laws of the laws of Delaware with its principal offices in New York, New York, is the corporate parent of APOTHECON and to the extent that the acts of APOTHECON  at issue herein were performed by or otherwise attributable to BRISTOL-MYERS SQUIBB , or any subsidiary or affiliate of it, then judgment should be entered against BRISTOL-MYERS SQUIBB  where appropriate.  At all times material to this civil action, APOTHECON has transacted business in the Federal Judicial District of  Massachusetts by, including but not limited to, selling directly or through wholesalers its prescription drugs specified herein in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

17.    DEFENDANT, BRISTOL-MYERS SQUIBB COMPANY ("BRISTOL-MYERS") f/k/a BRISTOL-MYERS COMPANY ("BRISTOL-MYERS") is a corporation organized under the laws of Delaware with its principal offices in New York, New York. At all times material to this civil action, BRISTOL-MYERS has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its prescription drugs specified herein in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and Medicare beneficiaries and for which claims would be paid from federal funds.

10

**CIVIL ACTION NO.  00 CV 10698 MEL**

18.    DEFENDANT, DEY, INC. f/k/a DEY LABORATORIES, INC. ("DEY"), is a corporation organized under the laws of Delaware with its principal offices in Napa, California.  At all times material to this civil action, DEY has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs specified herein in the District of Massachusetts  knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and for which claims would be paid from federal funds.

19.    DEFENDANT, GENEVA PHARMACEUTICALS INC. ("GENEVA"), is a corporation organized under the laws of Colorado with its principal offices in Broomfield, Colorado.  Novartis AG, a corporation organized under the laws of Delaware, with its principal offices in East Hanover, New Jersey, is the corporate parent of GENEVA  and to the extent that the acts of GENEVA  at issue herein were performed by or otherwise attributable to Novartis AG, or any subsidiary or affiliate of it, then judgment should be entered against Novartis AG  where appropriate.  At all times material to this civil action, GENEVA  has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

20.    The DEFENDANT, GLAXO WELLCOME, INC., f/k/a BURROUGHS WELLCOME, INC.,  ("GLAXO WELLCOME/ CERENEX"), is a corporation organized

11

under the laws of North Carolina, with its principal offices in Research Triangle Park,

North Carolina, that sometimes transacts business through its CERENEX division.  At

all times material to this civil action, GLAXO WELLCOME/CERENEX transacted

business in the Federal Judicial District of Massachusetts by, including, but not limited

to, selling and distributing prescription drugs to purchasers within the  District of

Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and

Medicaid recipients  and for which claims would be paid from federal funds.

21.     The DEFENDANT, HOECHST MARION ROUSSEL, INC.  ("HOECHST"),

is a corporation organized under the laws of Delaware,  with its principal offices in

Kansas City, Missouri .  At all times material to this civil action, HOECHST has

transacted business in the Federal Judicial District of the  District of   Massachusetts

by, including, but not limited to, selling and distributing prescription drugs to purchasers

within the District of Massachusetts knowing that the drugs would be supplied to

Medicare beneficiaries and Medicaid recipients  and for which claims would be paid

from federal funds.

22.     DEFENDANT, IVAX CORPORATION ("IVAX") is a corporation organized

under the laws of Florida with its principal offices in Miami , Florida.  At all times

material to this civil action, IVAX has transacted business in the Federal Judicial District

of Massachusetts by, including but not limited to, selling directly or through wholesalers

its specified prescription drugs in the District of Massachusetts  knowing that the drugs

12

would be supplied to Medicare beneficiaries and Medicaid recipients and for which claims would be paid from federal funds.

23.    The DEFENDANT, SMITHKLINE BEECHAM CORPORATION f/k/a SMITHKLINE BECKMAN CORPORATION f/k/a SMITHKLINE CORPORATION ("SMITHKLINE"), is a corporation organized under the laws of Pennsylvania, with its principal offices in Philadelphia, Pennsylvania.  At all times material to this civil action, SMITHKLINE has transacted business in  the Federal Judicial  District of Massachusetts  by, including, but not limited to, selling and distributing prescription drugs to purchasers within the District of   Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients  and for which claims would be paid from federal funds.

24.    DEFENDANT, MYLAN PHARMACEUTICALS, INC. ("MYLAN"), is a corporation organized under the laws of West Virginia  with its principal offices in Morgantown, West Virginia.   At all times material to this civil action, MYLAN  has transacted business in the Federal Judicial District of  Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

25.    DEFENDANT, PURDUE PHARMA L.P. ("PURDUE PHARMA"), is a limited partnership organized and existing under the laws of the State of Delaware, having places of business in Norwalk, Connecticut and Ardsley, New York.  At all times

13

material in this civil action, PURDUE PHARMA has transacted business in the Federal

Judicial District of  Massachusetts by, including but not limited to, selling directly or

through wholesalers its specified prescription drugs in the District of Massachusetts

knowing that the drugs would be supplied to Medicaid recipients and for which claims

would be paid from Medicaid funds.

     26.    DEFENDANT, PURDUE FREDERICK COMPANY ("PURDUE

FREDERICK"), is a corporation organized and existing under the laws of the State of

New York, having its principal place of business in Connecticut.  At all times material in

this civil action, PURDUE FREDERICK has transacted business in the Federal Judicial

District of  Massachusetts by, including but not limited to, selling directly or through

wholesalers its specified prescription drugs in the District of Massachusetts knowing

that the drugs would be supplied to Medicaid recipients and for which claims would be

paid from Medicaid funds.

     27.    DEFENDANT, ROXANE LABORATORIES, INC. ("ROXANE"), is a

corporation organized under the laws of Delaware with its principal offices in Columbus,

Ohio.  BOEHRINGER INGELHEIM CORPORATION ("BOEHRINGER"), a corporation

organized under the laws of Nevada, with its principal officers in Ridgefield, Connecticut

is the corporate parent of Roxane and to the extent that the acts of Roxane are at issue

herein were performed by or otherwise attributable to BOEHRINGER, or any subsidiary

or affiliate of it, then judgment should be entered against BOEHRINGER where

appropriate.  At all times material to this civil action, ROXANE has transacted business

14

in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and for which claims would be paid from federal funds.

28.    DEFENDANT, SCHEIN PHARMACEUTICAL, INC. ("SCHEIN"), is a corporation organized under the laws of New York with its principal offices in Florham Park, New Jersey.  At all times material to this civil action, SCHEIN has transacted business in the Federal Judicial District of  Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

29.    DEFENDANT, WARRICK PHARMACEUTICALS CORPORATION ("WARRICK"), is a corporation organized under the laws of Delaware with its principal offices in Reno, Nevada.  SCHERING-PLOUGH CORPORATION, a corporation organized under the laws of New Jersey, with its principal offices in Madison, New Jersey, is the corporate parent of WARRICK and to the extent that the acts of WARRICK at issue herein were performed by or otherwise attributable to SCHERING-PLOUGH CORPORATION, or any subsidiary or affiliate of it, then judgment should be entered against SCHERING-PLOUGH CORPORATION where appropriate.  At all times material to this civil action, WARRICK has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through

15

wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and for which claims would be paid from Medicaid funds.

30.    DEFENDANT, ZENITH GOLDLINE PHARMACEUTICALS, INC. ("ZENITH"), is a corporation organized under the laws of Florida with its principal offices in Miami, Florida. IVAX CORPORATION, a corporation organized under the laws of Delaware with its principal offices in Miami, Florida, is the corporate parent of  ZENITH and to the extent that the acts of ZENITH at issue herein were performed by or otherwise attributable to IVAX CORPORATION, or any subsidiary or affiliate of it, then judgment should be entered against  IVAX CORPORATION  where appropriate.   At all times material to this civil action, ZENITH has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly or through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and for which claims would be paid from federal funds.

31.    Any and all acts alleged herein to have been committed by any or all of the DEFENDANTS were committed by each DEFENDANT'S parents, affiliates, subsidiaries, officers, directors, employees, or agents who at all times acted on behalf of their respective DEFENDANT.

16

**CIVIL ACTION NO.  00 CV 10698 MEL**

### SECTION NO. 3
### JURISDICTION & VENUE

32.    Jurisdiction is founded upon the Federal False Claims Act  (the "Act"), 31

U.S.C. §3729-32, specifically 31 U.S.C. §3732, and also 28 U.S.C. §§1331, 1345.

33.    Venue in the District of Massachusetts is appropriate under 31 U.S.C.

§3732(a) and sufficient contacts exist for jurisdiction in that each of the DEFENDANTS

transacted  business in the District of Massachusetts by selling directly or through

wholesalers their specified prescription drugs in the District of Massachusetts which the

respective DEFENDANTS knew would be supplied to Medicare beneficiaries and

Medicaid recipients and knew claims for reimbursement with respect to DEFENDANTS'

specified prescription drugs would be made by Medicaid and Medicare providers.

34.    A copy of the initial Complaint and this Second  Amended Complaint and

written disclosure of substantially all material evidence and information VEN-A-CARE

possesses were served on the Government pursuant to Rule 4(i)(1)(A) and (B),

Fed.R.Civ.P., prior to the filing of the initial Complaint and this Second Amended

Complaint **in camera and under seal** by delivering a copy of the initial Complaint and

this Second Amended Complaint, material evidence and information to the United

States Attorney for the District of Massachusetts and by sending a copy of the initial

Complaint and this Second Amended Complaint, material evidence and information by

certified mail to the Attorney General of the United States at Washington, District of

Columbia.

17

**CIVIL ACTION NO.  00 CV 10698 MEL**

## SECTION NO. 4

### HOW MEDICARE AND MEDICAID REIMBURSEMENT IS AFFECTED BY DRUG MANUFACTURERS' PRICE AND COST REPRESENTATIONS

35.    Drug manufacturers, including the DEFENDANTS, the Medicare and Medicaid programs, drug price and cost reporting services, hospitals, pharmacies, physicians, wholesalers, third party payors and administrators (i.e. insurance companies), governmental health benefit plans (i.e. federal and state employees) and others involved in the health care industry communicate about drug  prices and costs by describing the price and cost with terms such as:

      a)      Average Wholesale Price ("AWP")

      b)      Wholesaler Acquisition Cost ("WAC")

      c)      List Price

      d)      Direct Price ("DP")

      e)      Wholesale Net Price

36.    Of the above terms,  Average Wholesale Price, or AWP, is  most utilized by the health care industry and by third party payors including the Medicare and Medicaid programs to describe the price of a drug sold to a retailer (i.e. Physicians, Hospitals and Pharmacies) who then provides the drug to its ultimate recipient.

37.    During the time covered by this complaint  until January 1, 1998, Medicare based its reimbursement for prescription drugs, including the drugs at issue, on the manufacturers' published AWP for patented  ("single source") drugs  as represented by the manufacturer, and at the median published AWP, as represented by the

18

manufacturers, for drugs with generic equivalents and for biologicals.  Pursuant to

Congressional investigation, and in an effort to arrive at reasonable Medicare drug

reimbursement amounts, the Federal Government changed the Medicare drug

reimbursement formula pursuant to the Balanced Budget Act of 1997.  Thus, from

January 1, 1998 until the present, Medicare has based its reimbursement for drugs at

95% of the published AWP for single source patented drugs as represented by the

manufacturer, and at 95 % of the median published AWP, as represented by the

manufacturers, for drugs with generic equivalents and for biologicals.   Throughout the

period covered by this complaint the United States Congress, CMS and the States'

Medicaid programs have attempted to address the impact of drug costs on the

Medicare and Medicaid programs, however, their efforts have been impeded by the

inflated price and costs reports at issue in this action.

     38.    The States' Medicaid programs are required by 42 CFR 447.331 to

reimburse providers at the provider's Estimated Acquisition Cost ("EAC").  CMS, which

must approve all State reimbursement plans for prescription drugs, has approved

approximately 38 state plans whose methodology for arriving at the provider's EAC

includes discounting a percentage off of the published AWP prices.  This discounting

ranges from Alaska, whose state formula is AWP minus 5%, to Michigan, whose state

formula is AWP minus 13.5 - 15.1 %. Nineteen states' formulas are  AWP minus 10%.

Texas uses direct drug manufacturers' prices representations.  Six states' formulas are

WAC plus a percentage or an AWP discount/WAC hybrid.  The State of Delaware

bases reimbursement on the providers' actual acquisition cost ("AAC").  The balance of the states use a EAC/AWP discount mix.

39.    The Office of Personnel Management administers health insurance for all federal employees. Benefits and reimbursements for prescription drugs are based upon the published AWP's as represented by the drug manufacturers.

40.    The Department of Defense's CHAMPUS program, now known as Tricare,  bases benefits and reimbursements for prescription drugs upon the published AWPs LP  as represented by the drug manufacturers.

41.    The Relator's investigation has determined that most private third party health insurers also use the published AWPs as represented by the drug manufacturers in establishing prices for prescription drug benefits.

42.    The drug manufacturing industry, including the DEFENDANTS, uses various forms of media to publicize the prices and cost of their drugs  including but not limited to:

a)    Direct mailings or electronic communications (i.e. fax or e-mails) to hospitals, pharmacies, physicians, the States' Medicaid programs and the Medicare carriers;

b)    Advertisements in bi-monthly medical publications, such as :

(i)    *Medical Economics,* that is mailed bi-monthly to most physicians and hospitals, free of charge by its publisher; and

20

**CIVIL ACTION NO.  00 CV 10698 MEL**

      (ii)    *Drug Topics*, that is mailed bi-monthly to most pharmacies and hospitals, free of charge by its publisher;

    c)    *PDR Generics* published annually by Medical Economics, Inc. who also publishes *The Physicians Desk Reference ("PDR")*

    d)    Advertisements provided directly to physicians and pharmacists by drug companies' representatives.

    43.    The Relator's information provided to the Government demonstrates the common and widespread use of the term "Average Wholesale Price" (AWP) to describe drug prices in a manner whereby interested parties can make decisions that are affected by price, including but not limited to:

    a)    Representative examples of advertisements  routinely delivered  by some of the DEFENDANTS and Non-Defendant drug manufacturers directly to individual State Medicaid programs that were delivered to the State of New Jersey's Medicaid Pharmacy Program.

    b)    Representative examples of advertisements  routinely delivered  by the  DEFENDANTS and Non-Defendant drug manufacturers directly to individual Medicare carriers responsible for approving and paying Medicare claims in the States of Florida and Utah.

    c)    Representative examples of direct mail advertisements sent  to the Relator by  Non-Defendant drug companies expressing their respective drug prices in terms of AWP .

21

d)     Representative examples of advertisements that the DEFENDANTS caused to be published  in *Medical Economics* that express their respective drug prices in terms of AWP.

e)     Representative examples  of advertisements that the respective drug manufacturers caused to be published  in *Drug Topics* that express their respective drug prices in terms of AWP.

f)     Representative examples of the publisher's representations about the 1996 edition of  *PDR Generics,* which contains representations about drugs at issue in this case including price and cost information expressed in terms of AWP.  The advertisement also states that  *PDR Generics*  provides physicians and other health care professionals with "cost of therapy tables" that enable the physician to compare cost of therapies.  The cost of therapies are based upon the manufacturers' published AWPs for the respective drugs.

44.     Drug manufacturers including some of the DEFENDANTS  also represent drug prices in terms of AWP when comparing the price and cost of their drugs to the prices and costs of their competitors' drugs. These comparisons of prices are promoted to physicians, pharmacists and hospitals touting that one company's drug is less costly than that of its competitors.

45.     Medical Economics, Inc., the Hearst Corporation and Medi-Span are nationally recognized companies that specialize in gathering drug pricing and cost

22

**CIVIL ACTION NO.  00 CV 10698 MEL**

information including Average Wholesale Price ("AWP"), Wholesaler Acquisition Cost ("WAC") and Direct Price ("DP").

46.    Medical Economics, Inc. publishes annually a book entitled *Drug Topics Red Book* that expresses drug prices and costs in terms of AWP.  Representative examples  of *Drug Topics Red Book*  for the years 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998 and 1999 contain approximately the following number of pages expressing drug prices and costs in terms of AWP:

      a)    1991 - 605 pages

      b)    1992 - 575 pages

      c)    1993 - 542 pages

      d)    1994 - 331 pages

      e)    1995 - 369 pages

      f)    1996 - 413 pages

      g)    1997 - 454 pages

      h)    1998 - 470 pages

      i)    1999 - 454 pages

47.    Medical Economics also provides addendums to the annual *Red Book* that express drug prices and costs in terms of AWP.

48.    Representative excerpts of advisements contained in the annual *Red Book* publications for the years 1995, 1996, 1997, 1998 and 1999 include:

23

a)    The 1995 advertisement describes the price information as "nationally recognized average wholesale prices (AWPs, direct prices and federally upper limited prices for prescription drugs)."

b)    The 1996 advertisement states "nationally recognized Average Wholesale Prices (AWPs), Direct Prices and Federal Upper Limit prices for prescription drugs that help you make sure your prices are on-target."

c)    The 1997 advertisement states "complete pricing information: AWPs, direct and suggested retail prices."

d)    The 1998 advertisement states "RED BOOK is the first and only source of accurate, up-to-date product information, prices on prescription drugs, OTC items and reimbursable medical supplies and more!"

e)    The 1999 advertisement states "nationally recognized Average Wholesale Prices (AWPs), Direct Prices and Federal Upper Limit prices for prescription drugs that help you make sure your prices are on-target."

49.    Medical Economics, Inc. also publishes a monthly update that contains current packaging and pricing data expressed in terms of AWP on the most widely prescribed drugs in the United States together with any updated prices expressed in terms of AWP for new products.

50.    The Relator's information provided to the Government reveals that approximately 90% of the Medicare carriers use the AWPs as represented in Medical Economics annual *Drug Tropics Red Book* publication and the *Red Book* monthly

24

CIVIL ACTION NO.  00 CV 10698 MEL

updates in determining the reimbursement amounts for Medicare prescription drug claims.

51.    Until 1997, the Hearst Corporation annually published through 1997, through its subsidiary First Data Bank, a  book entitled  *the Blue Book* that expressed drug prices and costs in terms of AWP. Representative examples of  the *First Data Bank Blue Book*  for the years 1990, 1991, 1992, 1993, 1994, 1995 and 1996  contain approximately the following number of pages expressing drug prices and costs in terms of AWP:

        a)     1990 -  498  pages

        b)     1991 -  492  pages

        c)     1992 -  482  pages

        d)     1993 -  402 pages

        e)     1994 -  755 pages

        f)     1995 -  391 pages

        g)     1996 -  432 pages

52.    First Data Bank ("FDB") is a nationally recognized company that specializes in collecting and publishing drug data including pricing.  FDB currently provides prices and costs for approximately 80,000 different drugs, sizes and strengths expressed in terms of AWP and WAC through an electronic or automated service. More than 90% of the States' Medicaid Pharmacy programs utilized the AWPs and

25

**CIVIL ACTION NO.  00 CV 10698 MEL**

WACs as communicated by First Data Bank's automated services in determining reimbursement amounts for Medicaid prescription drug claims.

53.    First Data Bank also publishes a monthly update entitled "Price Alert" that expresses drug prices and costs in terms of AWP.

54.    The monthly newsletter *Monthly Interest*, Vol. 6 No. 9, September 1991, published by First Data Bank was mailed to the States' Medicaid Pharmacy programs. The article entitled "Understanding AWP"  describes in detail First Data Bank's methods for determining  AWPs in order to insure the State Medicaid programs "that  the AWP reflects reality."

55.    Medi-Span provides drug prices and costs for approximately 60,000 drugs, sizes and strengths through an electronic or automated service.  The Relator's investigation has determined that only the State of New York's Medicaid program uses Medi-Span's automated service in determining reimbursement amounts for New York Medicaid prescription drug claims. Medi-Span was acquired by the Hearst Corporation/First Data Bank.

56.    First Data Bank, Medical Economics and Medi-Span all receive and rely upon the respective drug manufacturers', including the DEFENDANTS, representations of their drugs' prices and cost in determining the drug pricing data that they report.

57.    First Data Bank, Medical Economics and Medi-Span all report drug prices that  include a representation of the drugs' AWP.

26

58.    The Relators investigation has determined that drug manufacturers including the DEFENDANTS provide First Data Bank, Medical Economics and Medi-Span with the specific prices and costs of their drugs and instructions, if necessary, expressed in a manner that allows the price reporting companies to establish the necessary pricing information for publication that is utilized by  Medicare, Medicaid and others in determining reimbursements for prescription drugs.

59.    The Relator's information is, during the time covered by this complaint, that:

a)    Medical Economics/*RED BOOK* has  defined AWP as the price a retail hospital or pharmacy pays if it purchases the drug from a wholesaler before a discount if any.

b)    First Data Bank/*BLUE BOOK* has defined AWP as an average price which a wholesaler charges for a particular drug.

c)    Medi-Span has defined AWP as the most common wholesaler price charged to the retailer or hospital.

60.    A form entitled "New Product Submission Form" is provided by First Data Bank to drug manufacturers to transmit information including their prices to First Data Bank. The form permits drug manufacturers to submit prices expressed in terms of Wholesale (Distributor) Price, Direct Price and AWP Price.

61.    A form entitled "Product Listing Verification" is provided by Medical Economics / *Red Book* to drug manufacturers to transmit information including their

27

**CIVIL ACTION NO. 00 CV 10698 MEL**

prices to Medical Economics / *Red Book*. The form permits drug manufacturers to submit prices expressed in terms of AWP and WAC.

62.     The Relator's information revealed that each of the DEFENDANTS had been the source of the price and cost information reported by First Data Bank and Medical Economics to the Medicare and States' Medicaid programs at all times at issue in this action.   The Relator reported its information to the Government, including specific identification of representatives of First Data Bank and Medical Economics to whom such information was reported.   Thereafter, the Government conducted an investigation which confirmed the information supplied by the Relator.

A.     The Government's investigation revealed that each of the DEFENDANTS  has repeatedly and systemically communicated with First Data Bank and Medical Economics for the express purpose of causing First Data Bank and Medical Economics to report prices and costs of the drugs at issue in this case in amounts set by the DEFENDANTS.

B.     The Government's investigation secured documentary information between the DEFENDANTS and First Data Bank and Medical Economics wherein the DEFENDANTS caused specific prices and costs for their drugs to be reported by First Data Bank and Medical Economics.

63.     The DEFENDANTS' fraudulent inflation of price and cost information to cause the Government to pay excessive reimbursement for the specified drugs at issue

28

is in stark contrast to the truthful representations that the DEFENDANTS make when they are not offering financial inducements to their customers.

64.    Unlike the specialized physicians, clinics and pharmacies which receive the financial inducements for ordering the drugs at issue in this action, most providers do not receive grossly excessive reimbursements for prescribing the majority of other drugs and instead rely on the manufacturers' truthful representations of price and cost in an effort to minimize the cost of drugs to their patients.

65.    The vast majority of drug manufacturers, including the DEFENDANTS, are truthful when representing prices and costs of all or most drugs, except for the drugs at issue in this case.

## SECTION NO. 5
## THE ROLE OF THE DRUG WHOLESALER

66.    The majority of the DEFENDANTS' drugs, including the specified drugs at issue in this action, are distributed through drug wholesalers who resell and distribute the drugs to hospitals, pharmacies, physicians and clinics.

67.    Four companies, McKesson Drug, Cardinal, Bergen Brunswig and Ameri-Source, comprise approximately eighty (80%) of the 53 billion dollar annual wholesale drug market.  Wholesalers generally sell to any  person or entity  (i.e. pharmacies, physicians  and hospitals) who can lawfully purchase prescription drugs.

68.    Wholesalers purchase the specified drugs at prices that are unilaterally set and controlled by the DEFENDANTS.  The wholesalers in turn add a percentage (commonly referred to as an "up-charge") to the price to cover the wholesaler's

expenses such as warehousing, delivery, billing and collections and provides a profit.
The percentage of up-charge is negotiated between the pharmacy and the wholesaler
and is usually based on the pharmacy's purchasing volume.  By way of example, the
Relator's up-charge from McKesson is 6.5%.

      69.    The DEFENDANTS also sell directly and indirectly to hospitals and retail
pharmacies through group purchasing organizations (" GPO's") and buying groups.
GPO's and buying groups represent smaller providers and provide members with lower
costs by negotiating prices for specific drugs from the manufacturers.  The GPO or
buying group member is able to purchase the drugs at the GPO's or buying group's
negotiated price either directly from the manufacturer or from a wholesaler that has a
"charge-back" agreement with the specific manufacturer.

      70.    The DEFENDANTS' "charge-back" arrangements with wholesalers allows
the DEFENDANTS to sell drugs, including some of the drugs at issue in this case, to
the wholesalers at a fictitiously inflated price.  When a wholesaler sells a drug, the price
of which has been negotiated with a GPO or buying group, the wholesaler is credited by
the DEFENDANT for the difference between the false price and the true price to the
DEFENDANTS' customer plus the agreed "up-charge" for the wholesaler.  The
DEFENDANTS' exploitation of the "charge-back" scheme allows the DEFENDANTS to
control prices charged by wholesalers while fictitiously reporting inflated wholesaler
cost.

**CIVIL ACTION NO.  00 CV 10698 MEL**

71.    The "charge-back" scheme is illustrated by the following example of the drug,  Nadolol 20mg, bottle of 100, NDC# 59772-2461-01, manufactured by DEFENDANT APOTHECON/BRISTOL-MYERS and wholesaled through McKesson Drug Co. ("McKesson"):

a)    McKesson's March 2000 published wholesale price for Nadolol 20mg, bottle of 100, NDC# 59772-2461-01, is $29.48;

b)    Ven-A-Care is a member of the Servall buying group.  Servall is a McKesson sponsored buying group that is available to any retail pharmacy that purchases prescription drugs from McKesson;

c)    Ven-A-Care's Servall buying group's price for Nadolol 20mg, bottle of 100, NDC# 59772-2461-01, is $7.93.  Therefore, Ven-A-Care can purchase a bottle of Nadolol 20mg 100's from  McKesson for $8.45 which includes McKesson's 6.5% up-charge to Ven-A- Care. This is $21.03 less than McKesson purportedly paid DEFENDANT APOTHECON/BRISTOL-MYERS;

d)    McKesson claims a "charge-back" from DEFENDANT APOTHECON/BRISTOL-MYERS of $21.55 which represents the difference in price from what  McKesson  paid ($29.48) versus the price McKesson sold it to Ven-A-Care ($7.93), not including McKesson's up-charge.

72.    In order to monitor the wholesalers' compliance, the DEFENDANTS require all drug wholesalers to periodically (generally quarterly) report back to the

31

CIVIL ACTION NO.  00 CV 10698 MEL

DEFENDANTS all prescription drug sales by NDC number, provider name and sales price.

73.    A representative example of this practice was demonstrated when Ven-A-Care was informed by a Glaxo sales representative that Glaxo and other drug manufacturers consider this information vital in determining how and where to market their prescription drugs.  The Glaxo representative informed VAC that Glaxo prepared reports for every sales representative based on the information compiled from all wholesalers' reports and that the Glaxo report was broken down by postal zip code, provider, NDC number, quantity and sales prices.

### SECTION NO. 6

### BACKGROUND OF HOW UNITED STATES' MONIES ARE PAID FOR DRUG CLAIMS UNDER "PART B" OF THE MEDICARE PROGRAM

74.    The Department of Health and Human Services ("HHS"), through the Centers for Medicare and Medicaid Services ("CMS"), provides health insurance benefits to aged and disabled Americans pursuant to the provisions of the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq.

75.    The Medicare program provides covered health care benefits to certain targeted populations such as those persons who are over age 65, persons who are disabled, and persons who have end stage renal disease.

76.    The Medicare program is divided into two distinct parts: (A) Medicare Part A (Hospital Insurance for the Aged and Disabled) which covers services and goods furnished by hospitals, home health agencies, hospices, and skilled nursing facilities;

32

and (B) Medicare Part B (Supplementary Medical Insurance for the Aged and Disabled) which covers physician services, and a range of other noninstitutional services, such as durable medical equipment ("DME"), oxygen concentrators, diagnostic laboratory tests, X-rays, and certain limited drug products and supplies.

77.    With respect to the specified physician drugs, this case focuses on the Medicare program's limited benefit for drugs which are provided either:  (A) incident to a physician's service and cannot be self administered; or, (B) in conjunction with the medical necessity of a pump or nebulizer or other DME device payable under Medicare's DME benefit.  Because this limited drug benefit is provided on an "incident to" a physician's service basis or in conjunction with the medical necessity of a DME device, Congress' statutes and the corresponding HHS regulations and CMS policies have sought to limit Medicare's payments for claims for the drugs at issue to a reasonable amount based upon the cost of the drug.   This is due, in part, to the fact that the Medicare program is already paying for the physicians' professional fees and for the covered DME equipment.  The exorbitant profits created by the DEFENDANTS' false price and cost representations have totally thwarted the fundamental requirements of the Medicare Program (and States' Medicaid programs) that payment of claims for the specified drugs be limited to reasonable amounts to cover the added cost of the drugs.

78.    CMS administers the Medicare program.  CMS  awards cost-reimbursement contracts to private companies (hereinafter referred to as "Carriers") to

evaluate and to process Medicare beneficiaries' claims for payment on behalf of CMS.

Under Part A, CMS refers to contractors as "intermediaries". Under Part B, CMS refers

to contractors as "carriers" and durable medical equipment regional carriers

("DMERCs").  Under Part B, CMS pays the carriers and the DMERCs to process claims

for covered benefits supplied to eligible beneficiaries and to make payments to the

providers or to the Medicare beneficiaries for the covered services rendered under

Medicare Part B.  42 U.S.C. §1395(j) et seq.

79.    Congress has mandated that the Medicare program pay no more than

eighty percent (80%) of: (1) the reasonable cost of drugs covered under Part B

pharmaceutical claims from federal funds through 1997 and (2) no more than 95% of

the drug's Average Wholesale Price, after 1997.  42 U.S.C. §1395(l) et seq.

80.    Medicare Regulation 42 CFR, §405.517, effective January 1, 1992, sets

out the methodology to determine the reasonable charge for payment of claims for

drugs and biologicals.  The methodology for single source drugs is based on the lower

of estimated acquisition cost or the national average wholesale price of the drug.  The

methodology for multiple source drugs is based on the lower of the estimated

acquisition cost or the wholesale price that is the median price for all sources of the

generic form of the drug.  The instructions state that the estimated acquisition cost is to

be based on surveys of actual invoice prices of drugs paid by the providers.  The

regulation also states that other factors such as inventory, waste and spoilage may be

considered in calculating the estimated acquisition cost of the drug but does not provide

34

CIVIL ACTION NO.  00 CV 10698 MEL

for profit on the drug itself.  For purposes of reimbursement, CMS reimburses biologicals under the same methodology as other drugs. Claims are to be paid at the lesser of an estimated amount based upon average wholesale price ("AWP") or actual acquisition cost (taking into consideration inventory cost and waste but including no profit on the drug itself).

81.    The Medicare program has been unable to determine actual acquisition costs for the drugs at issue in this case.  Therefore, until January 1, 1998, Medicare paid claims based upon  the average wholesale price for single source patented drugs as represented by the manufacturer, and at the median average wholesale price, as represented by the manufacturers, for drugs with generic equivalents and for biologicals. From January 1, 1998 until the present, Medicare has paid claims based upon 95% of the average wholesale price for single source patented drugs as represented by the manufacturer, and at 95% of the median average wholesale price, as represented by the manufacturers, for drugs with generic equivalents and for biologicals.

82.    The following is an example of how in 1997 the Medicare Carriers established reimbursement for the generic Chemotherapy drug Etoposide 100 mg. HCPSC J9182.  First, the Carrier references the 1997 *Drug Topics Red Book* listing for Etoposide.  Second, the Carrier arrays the listings from the most expensive to the least expensive of all the manufacturers' generics (in this case DEFENDANT BRISTOL-

35

**CIVIL ACTION NO.  00 CV 10698 MEL**

MYERS' Vepesid is the Brand so it is not included) that list a 100 mg. size (20 mg/ml, 5 ml = 100mg.) as follows:

**Gensia)**
    (M.D.V.)
    20 mg/ml, 5 ml........**00703-5643-01**      141.97      = $ 141.97 ea.
**(Schein)**
INJ, IJ (M.D.V.)
    20 mg/ml, 5 ml.........**00364-3028-53**      141.50      = $ 141.50 ea.
**(Supergen)**
INJ, IJ (M.D.V.)
    20 mg/ml, 5 ml.........**58406-0711-12**      141.00      = $ 141.00 ea.
**TOPOSAR (Pharmacia/Upjohn)**
**etopside**
INJ, IJ (M.D.V.)
    20 mg/ml, 5 ml........**00013-7336-91**      136.49      = $ 136.49 ea.
**(Bedford)**
INJ, IJ  (M.D.V.)
    20 mg/ml, 5 ml.........**55390-0291-01**      110.00      = $ 110.00 ea.
**Astra USA)**
INJ, IJ (VIAL)
    20 mg/ml,5 ml 10s ..**00186-1571-31**      387.50      = $   38.75 ea.

Third, the Carrier finds the median AWP. In this instance the median is between Supergen  NDC# 58406-0711-12 at $141.00 ea. and Toposar NDC# 00013-7336-91 at $136.49. The Relators investigation has determined that some Carriers choose the higher listing of the median and some choose the lower.

83.    Part B drug claims are submitted either in hard copy form or through an electronic claims filing procedure.

84.    Providers submit claims for payment to the Medicare program for the specified drugs at issue in this case using CMS's Common Procedure Coding System ("HCPCS").  The HCPCS system for pharmaceuticals is a 5 digit alphanumeric code, such as Leucovorin, 50 mg. = HCPCS Code J0640.

85.    CMS requires all Part B Carriers and the DMERC's to report to CMS Central quarterly claims activity by HCPCS Code for all drugs submitted by providers for reimbursement by the Medicare program.  This quarterly data collected by CMS Central from all the Part B Carriers and the DMERCs is summarized in a report known as the Part B Extract and Summary System ("BESS") or Bess Reports.

86.    Beneficiaries' claims are processed by the Carriers and the DMERC's as either "assigned", those claims for which payment is made directly to the provider, or "unassigned", those claims for which payment is made directly to the beneficiaries.

87.    All or nearly all drug claims for the charges at issue are made on an assigned basis.

88.    During the early 90's the Medicare Carriers' attempted  to survey physicians' actual invoice prices paid for drugs to comply with the regulation 42 CFR §405.517 but were stopped by a complaint filed by the American Society of Clinical Oncologists ("ASCO") with the Executive Office of Management and Budget asserting that the Paperwork Reduction Act had been violated.  A subsequent effort by CMS to design a new survey to determine physicians' actual invoice costs was also stopped by ASCO.  ASCO complained that the actual prices being paid were discounts and confidential in nature and that the survey had other flaws.

89.    At all times at issue in this case, the Medicare program used the drug price and cost information represented by the DEFENDANTS to determine reimbursement amounts.

37

CIVIL ACTION NO.  00 CV 10698 MEL

## SECTION NO. 7

### BACKGROUND OF HOW UNITED STATES' MONIES
### ARE PAID FOR DRUG CLAIMS UNDER
### THE STATES' MEDICAID PROGRAMS

90.    The United States Government partially funds state sponsored medical

assistance programs for the poor pursuant to Title XIX of the Social Security Act, 42

U.S.C. § 1396 et seq.

91.    Benefits for drugs are optional but all states have opted to provide

Medicaid drug reimbursement coverage.

92.    The federal portion of States' Medicaid payments, Federal Medical

Assistance Percentage ("FMAP") is a percentage amount based on a state's per capita

income compared to the national average.  The federal portion consists of a minimum

of 50% up to a maximum of 83%.  By example, Florida's FMAP contributed by the

United States in 1995 was 56.28%.

93.    The States, United States Territories and the District of Columbia are

required to implement a State Health Plan containing certain specified minimum criteria

for coverage and payment of claims in order to qualify for federal funds for Medicaid

expenditures.  42 U.S.C. §1396a(a)(30)(A).

94.    State Health Plans must, in part, provide for payment of claims for

prescription drugs pursuant to a formula approved by the Secretary of HHS which

determines the maximum allowable claim amount for each drug manufactured by each

manufacturer whose prescription drugs qualify for Medicaid reimbursement based upon

38

**CIVIL ACTION NO.  00 CV 10698 MEL**

an estimation of the provider's acquisition cost plus a reasonable dispensing fee. 42 CFR 447.331.

95.    CMS has approved approximately 38 state plans whose methodology for arriving at a provider's Estimated Acquisition Cost ("EAC") as required by 42 CFR 447.331 includes discounting a percentage off of the AWP prices, separately for each covered drug,  as computed by or collected by and published by First Data Bank.  This discounting ranges from Alaska, whose state formula is AWP minus 5%, to Michigan, whose state formula is AWP minus 13.5 - 15.1 %. Nineteen CMS approved states' formulas are on a basis of AWP minus 10%.  Seven states' formulas are WAC plus a percentage or an AWP discount/WAC hybrid.  The State of Florida's formula is WAC plus 7%.  The State of Delaware bases reimbursement on AAC.

96.    The Food and Drug Administration ("FDA") assigns National Drug Codes, called NDC numbers, to identify each individual manufacturer and its drugs' strengths and sizes.  NDC numbers are eleven digits, with the first five digits identifying the manufacturer or labeler, the next four digits identifying the product and the last two digits identifying the package size.

97.    Providers are required to utilize the FDA's NDC numbers when submitting claims for reimbursement for drugs to the States' Medicaid programs.

98.    The vast majority of States award cost-reimbursement contracts to private companies to evaluate and process Medicaid recipients' claims for payment.  The States refer to these contractors as fiscal agents.

39

**CIVIL ACTION NO.  00 CV 10698 MEL**

99.    Prescription drug claims are submitted either in hard copy form or through an electronic claims filing procedure.

100.    At all times at issue in this case, all of the States' Medicaid programs used the drug price and cost information represented by the DEFENDANTS to determine reimbursement amounts.

101.    CMS has approved state plans whose methodology formulae for arriving at a pharmacy's estimated acquisition cost as required by 42 CFR 447.331 includes:

    a.    discounting a percentage off of the AWP prices as computed by or collected by and published by First Data Bank ;

    b.    adding a percentage to the WAC prices as computed by or collected by  and published by First Data Bank ; and,

    c.    requiring the drug companies, including the DEFENDANTS, to certify their prices directly in writing to the Texas Medicaid Vendor Drug Program.

**CIVIL ACTION NO.  00 CV 10698 MEL**

102.    The HCFA approved State plans for the WAC STATES at issue are:

|  | Drug | Dispensing Fee |
|---|---|---|
| Alabama | WAC+9.2% | $5.40 |
| Colorado | lesser of AWP-10% or WAC+18% | $4.08 |
| Florida | WAC+7% | $4.23 |
| Maryland | WAC+10% | $4.21 |
| Massachusetts | WAC+10% | $3.00 |
| Ohio | WAC+11% | $3.70 |
| Rhode Island | WAC+5% | $2.85-$3.40 |

103.    The Texas Medicaid Program has gone to exceptional lengths  to verify that drug manufacturers, including the DEFENDANTS, provide truthful price and cost information for reimbursement purposes. The Texas Medicaid authorities, acting pursuant to 25 Texas Administrative Code 35.801, required the DEFENDANTS to certify, in writing, the accuracy of their price and cost representations as a condition to their drugs being covered for reimbursement.  The Relator's investigation has revealed that each of the DEFENDANTS, when responding to Texas about their specified drugs, either affirmatively lied about their true prices, or omitted material information in order to mislead the Texas Medicaid officials.

104.    The State of Texas pays reimbursement for drugs covered by its Vendor Drug Program at the lesser of the provider's usual and customary charge or  Estimated Acquisition Cost ("EAC"). In Texas' Pharmacy Provider Handbook, EAC is defined as

41

**CIVIL ACTION NO.  00 CV 10698 MEL**

either the Wholesale Estimated Acquisition Cost ("WEAC") or the Direct Estimated

Acquisition Cost ("DEAC"). WEAC is the estimated price paid by providers purchasing a

drug from a wholesaler. DEAC is the estimated price paid by a provider purchasing the

drug directly from the drug's manufacturer.

105.   The State of Texas required the DEFENDANTS to complete a specific

form regarding the prices of their drugs. Immediately before the required signature by

the DEFENDANTS' representatives is the following language:

> I hereby certify that the information submitted is correct to the best of my
> knowledge . . . I also agree to inform the Texas Department of Health of
> any changes in . . . price . . . within fifteen (15) days of such change.

Attached hereto as **Exhibit "1"** is a true and correct copy of the current certification

used by the Texas Medicaid Vendor Drug Program.

106.   Congress has attempted to assist the States' Medicaid programs in

limiting reimbursement amounts for certain generic prescription drugs to a reasonable

estimate of acquisition cost by empowering CMS to set a Federal Upper Limit ("FUL")

for drugs paid for by the Medicaid programs.  Under the plan, CMS may impose a FUL

on any generic drug if:

a.      All formulations of the drug have been evaluated as therapeutically

equivalent by the FDA;

b.      At least three (3) companies list their drugs in current published

compendia with their cost; and

42

**CIVIL ACTION NO.  00 CV 10698 MEL**

        c.     If the above criteria are met, the drugs are available for sale nationally.

    107.   CMS then finds the least costly generic as listed in all available national compendia that can be purchased by pharmacies and multiplies this amount by 150%. The product then becomes the FUL for all manufacturers' generic form of the drug or the maximum amount a State Medicaid program can pay.

    108.   Pharmacies are reimbursed for prescription drugs by the States' Medicaid programs in accordance with:

        i)     the State's CMS approved plan (i.e. Massachusetts' WAC+ 10%);

        ii)    the pharmacies usual and customary charges to the general public; or,

        iii)   the Federal Upper Limit ("FUL") plus a reasonable professional or dispensing fee.

    109.   First Data Bank receives and uses the drug manufacturers',  including the DEFENDANTS', representations of their drug prices and costs including the prices at which the DEFENDANTS sell their drugs to wholesalers (WAC) in determining the drug pricing data that they report to the States.

    110.   The Relator's investigation has determined that the DEFENDANTS provide First Data Bank with either the WAC price of its drugs or instructions, if necessary, expressed in a manner that allows First Data Bank to establish the WAC.

111.    During the time covered by this complaint, First Data Bank has defined WAC as "wholesaler acquisition cost" for a particular drug.  A form entitled "New Product Submission Form" is provided by First Data Bank to drug manufacturers, including the DEFENDANTS, to transmit information, including their prices, to First Data Bank.  The form permits drug manufacturers to submit prices expressed in terms of Wholesale (Distributor) Price, Direct Price and AWP Price.  Attached hereto is true and exact copy of said form as **Exhibit "2"**.

112.    The Relator's information revealed that each of the DEFENDANTS had been the source of the price and cost information which was reported by First Data Bank to the States' Medicaid programs at all times at issue in this action.  The Relator reported its information to the Government, including specific identification of representatives of First Data Bank to whom such information was reported.

113.    The States' Medicaid programs also receive price and cost representations directly from the DEFENDANTS and use them to confirm the accuracy of price and cost in computing reimbursement amounts.  Attached hereto as Composite **Exhibit "3"** are true and correct copies of price representations made by DEFENDANTS WARRICK and ROXANE to the State of Florida Medicaid Pharmacy Program on or about December 20, 1994 and September 26, 1994.  Attached hereto as **Exhibit "4"** is a true and correct copy of price representations provided to Texas Medicaid by DEFENDANT WARRICK on or about March 6, 1997.

**CIVIL ACTION NO. 00 CV 10698 MEL**

114.  The importance that drug manufacturers represent truthful costs and prices and how these representations affect reimbursements is demonstrated by the following examples:

| DRUG STRENGTH & SIZE, NDC# | BRISTOL-MYERS REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| PRAVACHOL 20mg. 90's 00003-5178-05 | $174.96 | $183.79 | $187.21 | $3.42 (under 2 %) |

| DRUG STRENGTH & SIZE, NDC# | BRISTOL-MYERS REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| MONOPRIL 10mg. 90's 00087-0609-42 | $66.96 | $71.44 | $71.65 | $0.21  (under ½ %) |

| DRUG STRENGTH & SIZE, NDC# | ROXANE'S REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| MARINOL 5mg. 100's 00054-2602-25 | $505.66 | $539.48 | $541.06 | $1.60 or (under ½ %) |

| DRUG STRENGTH & SIZE, NDC# | SHERING/PLOUGH'S REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| PROVENTIL REPETAB 4 mg. 100's 00085-0431-02 | $66.94 | $70.78 | $71.63 | $0.85 or (under 2 %) |

45

## SECTION NO. 8
## THE FALSE CLAIMS SCHEME

### a.    A description of the False Claims Scheme.

115.    The DEFENDANTS are each liable under the False Claims Act because they caused the Medicare and the Medicaid Programs to pay claims for certain of their prescription drugs in exorbitant amounts, far in excess of the reasonable reimbursement permitted under the applicable statutes and regulations.  The DEFENDANTS manufactured and/or distributed the specified prescription drugs in this action and sold the specified prescription drugs either directly to pharmacies, physicians, clinics and others or indirectly through such intermediaries as wholesalers and group purchasing organizations. The false claims for excessive reimbursement were then submitted to the Medicare and the States' Medicaid programs by the DEFENDANTS through their false price and cost statements.  The Providers thereby received a windfall financial benefit in the amount by which the Government's approved "reimbursement" exceeded a reasonable estimate of acquisition cost.

116.    The DEFENDANTS also caused the submission of false claims by actively marketing their specified drugs to Providers by the use of financial inducements created by "the spread"  between the DEFENDANTS' true costs and prices to their customers and the Medicare and the States' Medicaid programs reimbursements based on the DEFENDANTS' falsely inflated costs and prices reported to Medicare and the States' Medicaid programs and their subcontractors.  The financial inducements were in many cases enhanced by additional inducements such as free goods, discounts, rebates, direct money payments, off invoice pricing and deceptive invoicing.

46

117.    The DEFENDANTS knew that the Medicare and States' Medicaid programs would not pay or approve claims for the specified drugs if it were disclosed to the Medicare and States' Medicaid programs that said claims were for amounts that included illegal remuneration prohibited by the anti-kickback statutes, 42 U.S.C. §1320a-7b(b)(2) and 1395nn(a)(1)(B).

118.    The DEFENDANTS also knew that the Providers, in presenting claims for the specified drugs to the Medicare and States' Medicaid programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2) and 1395nn(a)(1)(B).

119.    The DEFENDANTS each carried out their scheme to defraud the Government by knowingly providing  false and misleading price and cost information to the Medicare and Medicaid programs so that the Providers  would be reimbursed in excessive amounts and thus be financially induced to prescribe and purchase the DEFENDANTS' specified drugs. The DEFENDANTS thus each participated in a fraudulent scheme to cause the Government to pay and approve false claims in excessive amounts.

120.    The claims in question are each false claims under the False Claims Act, in part, because they were each supported by, and the payment amount determined due to the Government's use of,  the false and misleading price and cost information provided by the DEFENDANTS in connection with their respective specified drugs. The false and misleading price and cost information provided by the DEFENDANTS was used in setting Medicare and Medicaid reimbursement amounts and each DEFENDANT acted knowingly, as defined in the False Claims Act, in providing the

47

false and misleading price and cost information that caused the Government to pay

claims for the DEFENDANTS' drugs in excessive amounts.  The price and cost

information provided by the DEFENDANTS was provided to cause the Government to

pay amounts based on the information and thus constitutes claims submitted to the

Government.

   121.   The false claims at issue in this action were each submitted to the

Medicare and Medicaid programs by or on behalf of, Providers that  sought and

received payment in excessive amounts because of  false and misleading price and

cost representations made by the DEFENDANTS directly or indirectly to the Medicare

and Medicaid programs. The specific false claims are thus each and every claim

submitted to the Medicare or Medicaid program for which the payment amount  was

determined  by use, in whole or to any degree, of the false and misleading price

representations of the DEFENDANTS. The false claims at issue number in the tens of

thousands and each claim is in the possession of a state's Medicaid program or

Medicare Carrier to which it was submitted. The Relator has identified the specific false

claims to the Government by providing the truthful prices concealed from the

Government by the DEFENDANTS for each drug, providing  information about the

DEFENDANTS' exploitation of financial inducements to induce utilization of the

specified drugs and specific identification information about the prescription drugs and

the specific false price representations in question from which the Relator and the

Government identified the specific false claims.

   122.   The damages sought herein include, but are not limited to, those arising

from the false claims for the specified drugs set out in Sections 8 through 22 and

elsewhere throughout this Second Amended Complaint. The false claims for the specified drugs set out herein are alleged to meet the specificity and particularity requirements for pleading under the Federal Rules of Civil Procedure. The damages sought herein encompass all damages and penalties recoverable due to the false claim scheme of the DEFENDANTS alleged herein relating to all drugs of all sizes about which false price and cost representations or records were used in connection with, considered or made available in, caused, aided or otherwise affected the presentment, payment or approval of false claims. These claims also encompass recovery of the funds paid for false claims due to the DEFENDANTS' false drug price and cost representations, regardless of the Government program that actually expended the funds, the person or entity that ultimately received the funds or the person or entity from which the United States ultimately recovers the funds.

### b.    The DEFENDANTS Each Acted Knowingly

123.    The DEFENDANTS are prohibited by the False Claims Act from making false representations in connection with claims for Government funds, are required by the Food and Drug Act to report true prices and are prohibited by the Medicare and Medicaid Anti-Kickback laws from arranging financial inducements for providers.

124.    The patients, Medicare and the States' Medicaid programs were not aware of the prices actually paid for the specified drugs by the pharmacies presenting the claims for payment. The DEFENDANTS concealed from Medicare and the States' Medicaid programs price reductions occurring due to competition in the marketplace and falsely or fraudulently represented drug prices that far exceeded the truthful prices.

49

125.   At all times material to this action, each of the DEFENDANTS acted "knowingly" as that term is defined at 31 U.S.C. §3729(b) by:

a)   Causing the presentation of false or fraudulent claims for payment or approval by Medicare and/or the States' Medicaid programs, and

b)   Making or using false statements or records for the purpose of getting false or fraudulent claims approved or paid by Medicare and/or the States' Medicaid programs.

126.   The DEFENDANTS were clearly placed on notice that their conduct would cause Medicare and/or  the States' Medicaid programs to pay claims for the specified drugs in amounts exceeding that permitted by applicable law, in part, because:

a)   Each of the DEFENDANTS was on notice of federal statutes and regulations limiting payment of Medicare and/or Medicaid claims for the specified drugs to an amount necessary to cover the cost of the drug.

b)   Each of the DEFENDANTS was on notice that the Medicare program and the States' Medicaid programs were not authorized or permitted by applicable law to pay claims for the specified drugs in excessive amounts.

c)   Each of the DEFENDANTS was on notice that federal statutes and regulations prohibited it from making misleading representations about the specified drugs, including misleading price or cost representations.

127.   Each of the DEFENDANTS was on notice that federal statutes and regulations governing food and drugs  prohibited it from making misleading

50

representations about the specified drugs, including misleading price or cost representations, in part, because:

      a)    Each of the DEFENDANTS is required to comply with the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301 et. seq., and the regulations promulgated pursuant thereto.

      b)    The price and cost representations about the specified drugs constitute advertising that is included in the "labeling" provisions of the Federal Food, Drug and Cosmetic Act and related regulations. 21 U.S.C. §§321; 352.

      c)    Each of the DEFENDANTS is prohibited from disseminating any information about its prices or costs of the specified drugs that is "false or misleading in any particular . . ." 21 U.S.C. §§352(a).

      d)    Each of the DEFENDANTS was on notice that it possessed a duty to assure that representations about prices and costs of the specified drugs were not misleading, taking into account:

> . . . not only representations made or suggested by statement, word, design, device, or any combination thereof, but also to the extent to which the labeling or advertising fails to reveal facts material in light of such representations.

21 U.S.C. §321(a) .

      e)    The DEFENDANTS can and do make truthful representations of wholesaler prices for most of their other drugs.

    128.    Each DEFENDANT was on notice that it was  prohibited by federal statutes from paying or causing the payment of, directly or indirectly, money or other financial benefit to induce its customers to order the specified drugs when the Medicare

or States' Medicaid programs would be paying claims. 42 U.S.C. §1320a-7b(b)(2) and

42 U.S.C. §1395nn(a)(1)(B).

129.   Notwithstanding the DEFENDANTS' knowledge that the Government

used the DEFENDANTS' representations of price and cost and their knowledge of the

applicable statutory requirements and prohibitions, each of the DEFENDANTS

repeatedly, systematically and falsely  reported inflated wholesaler prices as specified

in Sections 9 through 21.

   **c.     The DEFENDANTS directly benefitted through increased sales**.

130.   The DEFENDANTS benefitted directly from their false pricing scheme by

maximizing their products' sales volume while capturing market share.  An example of

how the DEFENDANTS directly benefit from their false pricing scheme is demonstrated

by data for the first quarter of 1997 from the State of Florida's Medicaid program setting

out Florida Medicaid's reimbursements paid to pharmacies for the drug Albuterol

Sulfate, 0.083% Solution ("Albuterol"), by DEFENDANTS DEY and WARRICK versus

their competing manufacturers Geneva and Zenith/Goldline.

131.   Albuterol is a prescription drug which is administered by inhalation and is

used for the treatment of many respiratory illnesses.  First quarter 1997 reimbursement

data from the State of Florida's Medicaid program demonstrates that the wider "the

Spread" between the true cost paid by providers versus the reimbursement paid by

Medicaid the more a specific manufacturer's product will be utilized instead of a

competitor's product.  The DEFENDANTS WARRICK and DEY and the pharmaceutical

manufacturers Zenith/Goldline and Geneva, have all made representations of

Wholesaler Acquisition Cost to the State of Florida as set out in the chart below.  As a

132.    The grossly inflated payments unwittingly made by the States' Medicaid programs not only served as an inducement to providers to purchase a particular manufacturer's product but also served to drive over-utilization.  The Relator, prior to filing the  Complaint, surveyed three national pharmacy providers of Albuterol to determine their business practices for their sales of Albuterol to the Medicare and States' Medicaid programs.  The Relator's principals used positions in an affiliated home health care company to pose as an interested customer.  The Relator determined that the payment of kickbacks and/or split fees were common place between the pharmacies and home health care companies who could provide the pharmacies with patient referrals.  One marketing scheme offered by one of the pharmacies was the automatic shipping of refills of Albuterol every month without verifying continuing need with the patient or physician in order to maximize the sales of Albuterol and reimbursement.

> **d.    The DEFENDANTS' False Claim Scheme deprived the Government of the protection of The Federal Upper Limits ("FUL").**

133.    A representative example of the DEFENDANTS' efforts to deprive the Government of the benefit of the Federal Upper Limit, described at ¶ 106 herein), involves the drug Atenolol.  In a letter dated November 7, 1996, DEFENDANT APOTHECON made false price representations about the company's drug Atenolol to the State of Florida Medicaid Agency (Attached hereto as **Exhibit "5"** is a true and correct copy of said letter).  Application of Florida's methodology of WAC plus 7%, to the prices represented by DEFENDANT APOTHECON would have resulted in

reimbursement for one hundred (100) 50mg tablets, (old NDC #00003-5040-50, new

NDC#62269-0256-24), of  $59.65 (WAC = $55.75 + 7% = $59.65), plus the

professional dispensing fee.  However, Atenolol falls under the FUL program and its

reimbursement was limited as of January, 1997, to $0.0464 per 50mg tablet or $4.64

per one hundred (100) 50mg tablets.

134.     After having been alerted to the false claim scheme by the Relator,

representatives of the State of Florida's Medicaid program refused to cover

DEFENDANT APOTHECON'S generic Atenolol until such time as the State received

from DEFENDANT APOTHECON what the State considered to be DEFENDANT

APOTHECON'S truthful prices for Atenolol.  The fact that Florida was not covering

DEFENDANT APOTHECON Atenolol led to complaints to DEFENDANT APOTHECON

from pharmacies in Florida who had dispensed DEFENDANT APOTHECON'S Atenolol

to Florida Medicaid recipients and who were receiving denials for payment by Unisys,

the State's fiscal agent.

135.     Approximately one month later, a State of Florida official received a

telephone call from a person who stated he represented DEFENDANT APOTHECON

and requested immediate coverage of Atenolol.  The Florida Medicaid official stated

she would not cover the drug unless she received truthful prices.  The person who

represented DEFENDANT APOTHECON stated words to the effect, "What does it

matter?  This drug is covered by the FUL program".  The Florida official stated that it did

matter as it could affect not only the reimbursement amount the State paid for Atenolol

but also, if all manufacturers followed DEFENDANT APOTHECON'S course and

55

conduct of making false pricing representations, it would cause the entire FUL program to be set at inflated amounts and completely frustrate the Government policy implemented by the FUL program.

136.    Only when it became clear to DEFENDANT APOTHECON'S representative that the Florida official was standing her ground, did DEFENDANT APOTHECON provide a written disclosure dated December 5, 1996, of the truthful prices, (Attached hereto as **Exhibit "6"** is a true and exact copy of said letter). Applying Florida's Medicaid reimbursement methodology to DEFENDANT APOTHECON'S truthful prices, the State pays $4.24 for one hundred (100) 50mg Atenolol tablets (WAC $3.96 + 7% = $4.24).  The truthful prices saved the U.S. Government and the State of Florida $0.40 for each one hundred 50mg tablets.

137.    The persistence of the Florida Medicaid representatives curtailed DEFENDANT APOTHECON from circumventing the protections of the FUL program and caused DEFENDANT APOTHECON to report a truthful WAC to First Data Bank. The following table summarizes the above allegations:

| DRUG STRENGTH & SIZE, NDC#s | APOTHECON/ BRISTOL-MYERS ORIGINAL FALSE REPORTED WAC | APOTHECON TRUE  WAC | FLORIDA MEDICAID PAYMENT @ TRUE WAC+7% | FUL |
|---|---|---|---|---|
| ATENOLOL 50mg 100's 62269-0256-24 | $55.75 | $3.96 | $4.24 | $4.64 |

138.    The following Table illustrates reimbursements and the corresponding harm caused to the States' Medicaid programs as a result of DEFENDANT

56

APOTHECON'S false representations of wholesaler prices for other drugs covered by

the FUL program.

| DRUG, STRENGTH & SIZE, NDC#s | APOTHECON REPORTED FALSE WACs | RELATOR'S COST @ WAC + 6.5% (3/25/00) | MASSACHUSETTS MEDICAID PAYMENTS WITH TRUE WACs +10% | "FUL" 1/1/00 | DIFFERENCE BETWEEN "FUL" AND WHAT MASSACHUSETTS MEDICAID SHOULD HAVE PAID |
|---|---|---|---|---|---|
| AMANTADINE 100mg 100's 62269-0211-24 | $29.26 | $10.12 | $10.41 | $17.62 | $7.21 |
| CEFACLOR 250mg 100's 59772-7491-04 | $156.40 | $43.67 | $44.91 | $119.48 | $74.57 |
| CEFACLOR 500mg 100's 59772-7494-04 | $306.40 | $86.27 | $88.72 | $239.85 | $151.13 |
| ESTRADIOL 0.5mg 100's 59772-0025-03 | $18.80 | $11.18 | $11.49 | $21.52 | $10.03 |
| ESTRADIOL 1mg 100's 59772-0026-03 | $25.06 | $14.91 | $15.33 | $28.87 | $13.54 |
| ESTRADIOL 2mg 100's 59772-0027-03 | $36.59 | $22.37 | $23.00 | $41.92 | $18.92 |
| ETODOLAC 300MG 100's 62269-0360-24 | $100.18 | $35.79 | $36.80 | $59.32 | $22.52 |

## SECTION NO. 9
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## ABBOTT AS TO MEDICAID

139.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT ABBOTT knowingly caused the States' Medicaid

programs to pay false or fraudulent claims for drugs specified in this Section and further

57

made or used false or fraudulent records and/or statements to get such claims paid or

approved.  As a result of the actions of DEFENDANT ABBOTT and those persons and

entities acting directly or indirectly in concert with DEFENDANT ABBOTT, the States'

Medicaid programs paid grossly excessive, unreasonable and unlawful amounts for

claims for the drugs specified in this Section.  The acts committed by DEFENDANT

ABBOTT that caused the States' Medicaid programs to pay or approve said false or

fraudulent claims included, but were not necessarily limited to, knowingly making false

or fraudulent representations about the direct and wholesaler prices of the drugs

specified in this Section which DEFENDANT ABBOTT knew would be used by the

States' Medicaid programs in paying or approving claims for the drugs specified in this

Section.  Each of said representations was in fact used by the States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.

140.    DEFENDANT ABBOTT knowingly caused its false or fraudulent

wholesaler price representations to be transmitted by First Data Bank's automated

services, made or used false records or statements regarding its direct and wholesaler

prices of the drugs specified in this section and submitted them to the States' Medicaid

programs continuously throughout the years specified in this section.  Within this

paragraph is a table, organized by drug and NDC number, which reflects the recent

false wholesaler prices in First Data Bank's automated services.  The information in the

table under the heading "ABBOTT'S False Reported WAC" reflects DEFENDANT

ABBOTT'S false representations of price it charged wholesalers for drugs.  The

heading "Relator's Cost" reflects the true price that DEFENDANT ABBOTT charged the

Relator for the drug or caused another entity to charge the Relator for the drug.

| DRUG STRENGTH & SIZE, NDC#s | ABBOTT'S FALSE REPORTED WAC | RELATOR'S COST (in or about January 2001) |
|---|---|---|
| Erythromycin Base 250 mg Tab 100's 00074-6326-13 | $11.16 | $7.40 |
| Erythromycin Base 250 mg Tab 500's 00074-6326-53 | $56.19 | $35.89 |
| Erythromycin Stearate 250 mg Tab 100's 00074-6346-20 | $11.00 | $7.86 |
| Erythromycin Stearate 250 mg Tab 500's 00074-6346-53 | $52.25 | $38.18 |
| Erythromycin Stearate 500 mg Tab 100's 00074-6316-13 | $19.88 | $15.30 |
| Erythromycin Stearate UD 250 mg Tab 100's 00074-6346-38 | $14.28 | $10.03 |
| ERY-TAB E/C 250 mg, 30's 00074-6304-30 | $6.36 | $2.76 |
| ERY-TAB E/C 250 mg, 100's 00074-6304-13 | $21.31 | $7.72 |
| ERY-TAB E/C UD 250 mg, 100's 00074-6304-11 | $23.20 | $9.90 |
| E.E.S. 200 Susp. 100 ml 00074-6306-13 | $3.82 | $3.45 |

| DRUG STRENGTH & SIZE, NDC#s | ABBOTT'S FALSE REPORTED WAC | RELATOR'S COST (in or about January 2001) |
|---|---|---|
| ERY E-Succ/Sulfisoxazole 200 mg, 100 ml 00074-7156-13 | $10.21 | $4.21 |
| ERY E-Succ/Sulfisoxazole 200 mg, 150 ml 00074-7156-43 | $15.31 | $6.32 |
| ERY E-Succ/Sulfisoxazole 200 mg 200 ml 00074-7156-53 | $19.86 | $8.42 |

141.   Through its direct prices DEFENDANT ABBOTT knowingly defrauded California's Medicaid program as well as those of other States.

142.   The false price and cost representations, as they were submitted to the State of Texas on or after April 7, 1994, are organized in a chart within this paragraph by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"), "Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount under the heading "Relator's Cost" is the true price that DEFENDANT ABBOTT charged the Relator for the drug or caused another entity to charge the Relator for the drug. A comparison of the Relator's cost with DEFENDANT ABBOTT'S price representations shows the falsity of DEFENDANT ABBOTT'S price representations for the specified drugs. Furthermore, the table shows the impact of DEFENDANT ABBOTT'S false statements because it shows health care providers made a profit for

60

prescribing DEFENDANT ABBOTT'S drugs.  Texas Medicaid, which intended to pay for

drugs based upon estimated acquisition costs, never intended to pay the amounts

under the heading "Gross Profit."

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost<br>(in or about<br>January<br>2001) | WEAC<br>Provider's<br>Gross Profit<br>$<br><br>DEAC<br>Provider's<br>Gross Profit<br>$ | WEAC<br>Provider'<br>s Gross<br>Profit %<br><br>DEAC<br>Provider'<br>s Gross<br>Profit % |
| Erythromycin<br>Base<br>250 mg Tab<br>100's | 00074-6326-13 | $12.46<br><br>$12.45 | $7.40 | $5.06<br><br>$5.05 | 41%<br><br>41% |
| Erythromycin<br>Base<br>250 mg Tab<br>500's | 00074-6326-53 | $59.705<br><br>$59.15 | $35.89 | $23.815<br><br>$23.26 | 40%<br><br>39% |

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ / DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % / DEAC Provider's Gross Profit % |
| Erythromycin Stearate 250 mg Tab 100's | 00074-6346-20 | $12.98 $12.28 | $7.86 | $5.12 $4.42 | 39% 36% |
| Erythromycin Stearate 250 mg Tab 500's | 00074-6346-53 | $61.665 $58.35 | $38.18 | $23.485 $20.17 | 38% 35% |
| Erythromycin Stearate 500 mg Tab 100's | 00074-6316-13 | $24.42 $22.19 | $15.30 | $9.12 $6.89 | 37% 31% |
| ERY-TAB E/C 250 mg, 100's | 00074-6304-13 | $ $21.20 | $7.72 | $ $13.48 | % 64% |

62

| DEFENDANT ABBOTT | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC ‾‾‾ DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ ‾‾‾ DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % ‾‾‾ DEAC Provider's Gross Profit % |
| ERY E-Succ/ Sulfisoxazole 200 mg, 100 ml | 00074-7156-13 | $ ‾‾‾ $10.75 | $4.21 | $ ‾‾‾ $6.54 | % 61% |
| ERY E-Succ/ Sulfisoxazole 200 mg, 150 ml | 00074-7156-43 | $ ‾‾‾ $15.90 | $6.32 | $ ‾‾‾ $9.58 | % 60% |
| ERY E-Succ/ Sulfisoxazole 200 mg 200 ml | 00074-7156-53 | $ ‾‾‾ $20.90 | $8.42 | $ ‾‾‾ $12.48 | % 60% |

143.    As a direct and proximate result of the actions of the DEFENDANT ABBOTT alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

### SECTION NO. 10
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### APOTHECON AS TO MEDICAID

144.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT APOTHECON knowingly caused the States' Medicaid

programs to pay false or fraudulent claims for drugs specified in this Section and further

made or used false or fraudulent records and/or statements to get such claims paid or

approved.  As a result of the actions of DEFENDANT APOTHECON and those persons

and entities acting directly or indirectly in concert with DEFENDANT APOTHECON, the

States' Medicaid programs paid grossly excessive,  unreasonable and unlawful

amounts for claims for the drugs specified in this Section.  The acts committed by

DEFENDANT APOTHECON that caused the States' Medicaid programs to pay or

approve said false or fraudulent claims included, but were not necessarily limited to,

knowingly making false or fraudulent representations about the wholesaler prices of the

drugs specified in this Section which DEFENDANT APOTHECON knew would be used

by the States' Medicaid programs in paying or approving claims for the drugs specified

in this Section.  Each of said representations was in fact used by the States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.

145.    On or after April 7, 1994, DEFENDANT APOTHECON  knowingly caused

its false or fraudulent wholesaler price representations to be transmitted by First Data

Bank's automated services, made or used false records or statements regarding its

wholesaler prices of the drugs specified in this section and submitted them to the

States' Medicaid programs continuously throughout the years specified in this section.

Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services.  The information in the table under the heading "APOTHECONS' False Reported WAC" reflects DEFENDANT APOTHECONS' false representations of price it charged wholesalers for drugs.  The heading "Relator's Cost" reflects the true price that DEFENDANT APOTHECON charged the Relator for the drug or caused another entity to charge the Relator for the drug.

| DRUG STRENGTH & SIZE, NDC#s | APOTHECONS' FALSE REPORTED WAC | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| ALBUTEROL INHALATION AEROSOL 17 gm 59772-6175-01 | $15.79 | $4.61 |
| AMANTADINE HCL 100mg 100's 62269-0211-24 | $29.26 | $10.12 |
| AMOXICILLIN 500mg 100's 00003-0109-55 | $34.73 | $8.36 |
| CAPTOPRIL 12.5 mg 100's 59772-7045-01 | $48.31 | $2.13 |
| CAPTOPRIL 25mg 100's 59772-7046-01 | $52.22 | $2.66 |
| CAPTOPRIL 100mg 100's 59772-7048-01 | $119.25 | $8.52 |
| CEFACLOR 250mg 100's 59772-7491-04 | $156.40 | $43.67 |
| CEFACLOR 500mg 100's 59772-7494-04 | $306.40 | $86.27 |

**CIVIL ACTION ..O. 00 CV 10698 MEL**

| DRUG STRENGTH & SIZE, NDC#s | APOTHECONS' FALSE REPORTED WAC | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| CEPHALEXIN 250mg 100's 00003-0749-50 | $47.50 | $7.04 |
| CEPHALEXIN 500mg 100's 00003-0874-50 | $93.10 | $14.62 |
| DOXYCYCLINE 100mg 59772-0940-01 | $50.14 | $3.34 |
| ESTRADIOL 0.5mg 100's 59772-0025-03 | $18.80 | $11.18 |
| ESTRADIOL 1mg 100's 59772-0026-03 | $25.06 | $14.91 |
| ESTRADIOL 2mg 100's 59772-0027-03 | $36.59 | $22.37 |
| ETODOLAC 300MG 100's 62269-0360-24 | $100.18 | $35.79 |
| POTASSIUM CHLORIDE 10 mEq (750 mg) 100's 59772-6910-01 | $13.06 | $3.23 |

146.    The false price and cost representations, as they were submitted to the

State of Texas on or after April 7, 1994, are organized in a chart within this paragraph

by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),

"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount

under the heading "Relator's Cost" is the true price that DEFENDANT APOTHECON

charged the Relator for the drug or caused another entity to charge the Relator for the

drug. A comparison of the Relator's cost with DEFENDANT APOTHECONS' price

66

**CIVIL ACTION NO. 00 CV 10698 MEL**

representations shows the falsity of DEFENDANT APOTHECONS' price

representations for the specified drugs.  Furthermore, the table shows the impact of

DEFENDANT APOTHECONS' false statements because it shows health care providers

made a profit for prescribing DEFENDANT APOTHECONS' drugs.  Texas Medicaid,

which intended to pay for drugs based upon estimated acquisition costs, never intended

to pay the amounts under the heading "Gross Profit."

| DEFENDANT APOTHECON | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Albuterol 17 gm | 59772-6175-02 | $1.12922/gm $19.20<br>$1.06118/gm $18.04 | $5.00 | $14.20<br>$13.04 | 74%<br>72% |
| Cefadroxil 500 mg 100's | 59772-7271-04 | $2.57880/ea $257.88<br>$2.42370/ea $242.37 | $82.90 | $174.98<br>$159.47 | 68%<br>66% |
| Cefaclor 125 mg/ 5 ml 150 ml | 59772-7490-04 | $.16724/ml $25.08<br>$.15720/ml $23.58 | $9.27 | $15.81<br>$14.31 | 63%<br>61% |
| Captopril/ HCTZ 25 mg-15 mg 100's | 59772-5160-05 | $.61009/ea $61.00<br>$.60450/ea $60.45 | $19.17 | $41.83<br>$41.28 | 69%<br>68% |

| DEFENDANT APOTHECON | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Captopril/ HCTZ 50 mg-25 mg 100's | 59772-5163-05 | $1.04784/ea $104.78<br>$1.03810/ea $103.81 | $25.94 | $78.84<br>$77.87 | 75%<br>75% |
| Estradiol 2 mg 100's | 59772-0027-03 | $.40985/ea $40.98<br>$.38520/ea $38.52 | $22.37 | $18.61<br>$16.15 | 45%<br>42% |
| Potassium Chloride 10 mEq 100's | 59772-6910-01 | $.14627/ea $14.62<br>$.13740/ea $13.74 | $3.50 | $11.12<br>$10.24 | 76%<br>75% |
| Potassium Chloride 10 mEq 1000's | 59772-6910-02 | $.14313/ea $143.13<br>$.13453/ea $134.53 | $28.90 | $114.23<br>$105.63 | 80%<br>79% |

147.   As a direct and proximate result of the actions of the DEFENDANT

APOTHECON alleged herein, the UNITED STATES has sustained damages

recoverable under the False Claims Act, together with treble damages, penalties,

attorneys' fees and costs.

## SECTION NO. 11

### THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT BRISTOL-MYERS SQUIBB AS TO MEDICARE

148.   At various times from on or after April 7, 1994, and continuing through the

68

present date, DEFENDANT BRISTOL-MYERS SQUIBB knowingly caused the

Medicare program  to pay false or fraudulent claims for drugs specified in this Section

and further made or used false or fraudulent records and/or statements to get such

claims paid or approved.  As a result of the said actions of DEFENDANT BRISTOL-

MYERS SQUIBB and those persons and entities acting directly or indirectly in concert

with DEFENDANT BRISTOL-MYERS SQUIBB, the Medicare program paid grossly

excessive, unreasonable and unlawful amounts for claims for the drugs specified in this

Section. The acts committed by DEFENDANT BRISTOL-MYERS SQUIBB that caused

the Medicare program to pay or approve said false or fraudulent claims included, but

were not necessarily limited to, knowingly making false or fraudulent representations

about the direct and wholesaler prices of the drugs specified in this Section which

DEFENDANT BRISTOL-MYERS SQUIBB knew or should have known would be used

by the Medicare program in paying or approving claims for the drugs specified in this

Section. Each of said representations was in fact used by the Medicare program in

paying or approving claims for the drugs specified in this Section.

149.   DEFENDANT BRISTOL-MYERS SQUIBB knowingly caused its false or

fraudulent price and cost representations to be published in the years specified in this

Section  in the Red Book and further made or used false records or statements

regarding its direct and wholesaler prices of the drugs specified in this Section  and

submitted same to the Medicare program continuously throughout the years specified in

this Section.   For the purposes of specificity and particularity, the said false price and

cost representations as they were reflected in the Red Book have been organized into a

chart form for each drug in question . The information provided under the columns for

69

**CIVIL ACTION ₦O.  00 CV 10698 MEL**

DEFENDANT's Published Price, and Red Book  "AWP" and "DP" reflects the false price

and cost representations made by the DEFENDANT BRISTOL-MYERS.  The

information under the Relator's Cost columns reflects the true price that DEFENDANT

BRISTOL-MYERS  charged the Relator for the drug or caused another entity to charge

the Relator for the drug.  As a very small  pharmacy, the Relator does not always

receive the lowest prices available to volume purchasers.  Accordingly, a comparison of

the Relator's costs with the price and cost representations made by the DEFENDANT

BRISTOL-MYERS establishes the falsity of BRISTOL-MYERS's representations for the

drugs and years specified as follows:

## DRUG: TAXOL 6mg./ml, 5 ml (30mg.)
## MEDICARE  HCPCS J9265

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------------------------------|----------|------|---------------------------|------------------------|
|      |                              | "AWP" | "DP" |                           |                        |
| 2000 |                              | $182.63  |      | $145.35                   |                        |
| 2001 |                              | $182.63  |      | $144.61                   | $121.60                |

70

**CIVIL ACTION NO. 00 CV 10698 MEL**

## DRUG: BLENOXANE 15u
## MEDICARE HCPCS J9040

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|
| | | "AWP" | "DP" | | |
| 1995 | | $276.29 | | $ | |
| 1996 | | $291.49 | | $253.43 | $160.00 |
| 1997 | | $304.60 | | $249.90 | $160.00 |
| 1998 | | $304.60 | | $249.90 | $160.00 |
| 1999 | | $304.60 | | $255.86 | $145.00 |
| 2000 | | $304.60 | | $185.22 | $145.00 |
| 2001 | | $304.60 | | $150.00 | $118.00 |

150.   As a direct and proximate result of the actions of the DEFENDANT

BRISTOL-MYERS alleged herein, the UNITED STATES has sustained damages

recoverable under the False Claims Act, together with treble damages, penalties,

attorneys' fees and costs.

### SECTION NO. 12
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### DEY AS TO MEDICAID

151.   At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT DEY knowingly caused the States' Medicaid programs

to pay false or fraudulent claims for drugs specified in this Section and further made or

used false or fraudulent records and/or statements to get such claims paid or approved.

As a result of the actions of DEFENDANT DEY and those persons and entities acting

directly or indirectly in concert with DEFENDANT DEY, the States' Medicaid programs

71

paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section.  The acts committed by DEFENDANT DEY that caused the States' Medicaid programs to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about the wholesaler prices  of the drugs specified in this Section which DEFENDANT DEY knew would be used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section.  Each of said representations was in fact used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section.

152.   DEFENDANT DEY knowingly caused its false or fraudulent wholesaler price  representations to be transmitted by First Data Bank's automated services made or used false records or statements regarding its wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid programs continuously throughout the years specified in this section.  Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services.  The information in the table under the heading "DEY'S Reported False WACs" reflects DEFENDANT DEY'S false representations of price it charged wholesalers for drugs.  The heading "Relator's Cost" reflects the true price that DEFENDANT DEY charged the Relator for the drug or caused another entity to charge the Relator for the drug.

72

| DRUG STRENGTH & SIZE, NDC#s | DEY's REPORTED FALSE WACs | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| ALBUTEROL INHALATION AEROSOL 17 gm 49502-0303-17 | $5.99 | $2.90 |
| ALBUTEROL INHALATION AEROSOL (refill) 17 gm 49502-0303-27 | $5.74 | $2.99 |

153.    The false price and cost representations, as they were submitted to the

State of Texas on or after April 7, 1994, are organized in a chart within this paragraph

by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),

"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount

under the heading "Relator's Cost" is the true price that DEFENDANT DEY charged the

Relator for the drug or caused another entity to charge the Relator for the drug. A

comparison of the Relator's cost with DEFENDANT DEY'S price representations shows

the falsity of DEFENDANT DEY'S price representations for the specified drugs.

Furthermore, the table shows the impact of DEFENDANT DEY'S false statements

because it shows health care providers made a profit for prescribing DEFENDANT

DEY'S drugs. Texas Medicaid, which intended to pay for drugs based upon estimated

acquisition costs, never intended to pay the amounts under the heading "Gross Profit."

73

| DEFENDANT DEY | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br><br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br><br>DEAC Provider's Gross Profit % |
| Albuterol 17 gm | 49502-0303-17 | $0.39520/gm<br>$6.71<br>$0.352940/gm<br>$5.99 | $2.90 | $3.81<br>$3.09 | 57%<br>52% |
| Albuterol refill | 49502-0303-27 | $0.378810/gm<br>$6.44<br>$0.338230/gm<br>$5.75 | $2.99 | $3.45<br>$2.76 | 54%<br>48% |

## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## DEY AS TO MEDICARE

154.   At various times from on or after April 7, 1994, and continuing through the

present date, DEFENDANT DEY knowingly caused the Medicare program to pay false

or fraudulent claims for drugs specified in this Section and further made or used false or

fraudulent records and/or statements to get such claims paid or approved.  As a result

of the said actions of DEFENDANT DEY and those persons and entities acting directly

or indirectly in concert with DEFENDANT DEY, the Medicare program paid grossly

excessive,  unreasonable and unlawful amounts for claims for the drugs specified in

this Section.  The acts committed by DEFENDANT DEY that caused the Medicare

program to pay or approve said false or fraudulent claims included, but were not

necessarily limited to, knowingly making false or fraudulent representations about

prices and costs of the drugs specified in this Section which DEFENDANT DEY knew or

should have known would be used by the Medicare program in paying or approving claims for the drugs specified in this Section.  Each of said representations was in fact used by the Medicare program in paying or approving claims for the drugs specified in this Section.

155.   DEFENDANT DEY knowingly caused its false or fraudulent price and cost representations to be published in the years specified in this Section  in the Red Book and further made or used false records or statements regarding its prices and costs of the drugs specified in this Section  and submitted same to the Medicare program continuously throughout the years specified in this Section.   For the purposes of specificity and particularity, the said false price and cost representations as they were reflected in the Red Book have been organized into a chart form for each drug in question.  The information provided under the columns for DEFENDANT's Published Price, and Red Book  "AWP" and "DP" reflects the false price and cost representations made by the DEFENDANT DEY.  The information under the Relator's Cost columns reflects the true price that DEFENDANT DEY charged the Relator for the drug or caused another entity to charge the Relator for the drug.  As a very small pharmacy, the Relator does not always receive the lowest prices available to volume purchasers. Accordingly, a comparison of the Relator's costs with the price and cost representations made by the DEFENDANT DEY establishes the falsity of DEY's representations for the drugs and years specified as follows:

## DRUG: IPRATROPIUM BROMIDE
## MEDICARE HCPCS J7644 Per mg.

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|
| | | "AWP" | "DP" | | |
| 1999 | | $44.10 | | $11.72 | $13.50 |
| 2000 | | $44.10 | | $11.72 | $12.00 |
| 2001 | | $44.10 | | $9.22 | $10.00 |
| 2002 | | | | | |

156.   As a direct and proximate result of the actions of the DEFENDANT DEY, alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

### SECTION NO. 13

### THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT GENEVA AS TO MEDICAID

157.   At various times from on or after April 7, 1994, and continuing through the present date, DEFENDANT GENEVA knowingly caused the States' Medicaid programs to pay false or fraudulent claims for drugs specified in this Section and further made or used false or fraudulent records and/or statements to get such claims paid or approved.  As a result of the actions of DEFENDANT GENEVA  and those persons and entities acting directly or indirectly in concert with DEFENDANT GENEVA, the States' Medicaid programs paid grossly excessive, unreasonable and unlawful amounts for

76

claims for the drugs specified in this Section.  The acts committed by DEFENDANT

GENEVA that caused the States' Medicaid programs to pay or approve said false or

fraudulent claims included, but were not necessarily limited to, knowingly making false

or fraudulent representations about the wholesaler prices  of the drugs specified in this

Section which DEFENDANT GENEVA  knew would be used by the States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.  Each of

said representations was in fact used by the States' Medicaid programs in paying or

approving claims for the drugs specified in this Section.

     158.    DEFENDANT GENEVA  knowingly caused its false or fraudulent

wholesaler price  representations to be transmitted by First Data Bank's automated

services made or used false records or statements regarding its wholesaler prices of

the drugs specified in this section and submitted them to the States' Medicaid programs

continuously throughout the years specified in this section.  Within this paragraph is a

table, organized by drug and NDC number, which reflects the recent false wholesaler

prices in First Data Bank's automated services.  The information in the table under the

heading "GENEVA'S" Reported False WACs" reflects DEFENDANT GENEVA'S false

representations of price it charged wholesalers for drugs.  The heading "Relator's Cost"

reflects the true price that DEFENDANT GENEVA charged the Relator for the drug or

caused another entity to charge the Relator for the drug.

| DRUG STRENGTH & SIZE, NDC#s | GENEVAS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Alprazolam 0.25 mg Tab 1000's 00781-1061-10 | $18.23 | $9.68 |
| Alprazolam 1 mg Tab 500's 00781-1079-05 | $13.02 | $7.04 |
| Alprazolam 1 mg Tab 1000's 00781-1079-10 | $25.86 | $13.91 |
| Amiodarone 200 mg Tab 60's 00781-1230-60 | $79.62 | $39.32 |
| Azathioprine 50 mg Tab 100's 00781-1059-01 | $87.74 | $49.30 |
| Fiortal/Codine #3 30 mg Cap 100's 00781-2221-01 | $56.86 | $28.82 |
| Fluphenazine HCL 5 mg Tab 500's 00781-1438-05 | $99.00 | $49.36 |
| Fluphenazine HCL 10 mg Tab 100's 00781-1439-01 | $28.36 | $12.71 |
| Imipramine HCL 50 mg Tab 1000's 00781-1766-10 | $103.88 | $75.23 |
| Lonox 2.5-.025 mg Tab 500's 00781-1262-05 | $154.26 | $49.74 |

| DRUG STRENGTH & SIZE, NDC#s | GENEVAS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Terazosin 1 mg Cap 100's 00781-2051-01 | $102.76 | $26.29 |
| Terazosin 2 mg Cap 100's 00781-2052-01 | $102.76 | $26.29 |
| Terazosin 5 mg Cap 100's 00781-2053-01 | $102.76 | $26.29 |
| Terazosin 10 mg Cap 100's 00781-2054-01 | $102.76 | $26.29 |
| Triamterene/HCTZ 37.5/25 Tab 100's 00781-1123-01 | $16.86 | $7.84 |
| Trifluoperazine 5 mg Tab 100's 00781-1034-01 | $28.47 | $17.47 |
| Trifluoperazine 10 mg Tab 100's 00781-1036-01 | $36.02 | $18.84 |
| Trifluoperazine 10 mg Tab 1000's 00781-1036-10 | $357.05 | $179.03 |

159. The false price and cost representations, as they were submitted to the
State of Texas on or after April 7, 1994, are organized in a chart within this paragraph
by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),
"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount
under the heading "Relator's Cost" is the true price that DEFENDANT GENEVA

charged the Relator for the drug or caused another entity to charge the Relator for the

drug. A comparison of the Relator's cost with DEFENDANT GENEVA'S price

representations shows the falsity of DEFENDANT GENEVA'S price representations for

the specified drugs. Furthermore, the table shows the impact of DEFENDANT

GENEVA'S false statements because it shows health care providers made a profit for

prescribing DEFENDANT GENEVA'S drugs. Texas Medicaid, which intended to pay for

drugs based upon estimated acquisition costs, never intended to pay the amounts

under the heading "Gross Profit."

| DEFENDANT GENEVA | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Alprazolam 0.25 mg Tab 1000's | 00781-1061-01 | $20.41<br>$21.85 | $9.68 | $10.73<br>$12.17 | 110%<br>125% |
| Alprazolam 1 mg Tab 500's | 00781-1079-05 | $14.58<br>$15.60 | $7.04 | $7.54<br>$8.56 | 107%<br>121% |
| Alprazolam 1 mg Tab 1000's | 00781-1079-10 | $28.96<br>$30.99 | $13.91 | $15.05<br>$17.08 | 108%<br>122% |
| Amiodarone 200 mg Tab 60's | 00781-1230-60 | $89.18<br>$95.43 | $39.32 | $49.86<br>$56.11 | 126%<br>142% |
| Azathioprine 50 mg Tab 100's | 00781-1059-01 | $98.26<br>$105.15 | $49.30 | $48.96<br>$55.85 | 99%<br>113% |

| DEFENDANT GENEVA | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Fiortal/Codine #3 30 mg Cap 100's | 00781-2221-01 | $63.68<br>$68.14 | $28.82 | $34.86<br>$39.32 | 120%<br>136% |
| Fluphenazine HCL 5 mg Tab 500's | 00781-1438-05 | $110.88<br>$118.64 | $49.36 | $61.52<br>$69.28 | 124%<br>140% |
| Fluphenazine HCL 10 mg Tab 100's | 00781-1439-01 | $31.76<br>$33.99 | $12.71 | $19.05<br>$21.28 | 149%<br>167% |
| Imipramine HCL 50 mg Tab 1000's | 00781-1766-10 | $116.34<br>$124.99 | $75.23 | $41.11<br>$49.76 | 55%<br>65% |
| Lonox 2.5-.025 mg Tab 500's | 00781-1262-05 | $151.55<br>$162.17 | $49.74 | $101.81<br>$112.43 | 204%<br>226% |
| Terazosin 1 mg Cap 100's | 00781-2051-01 | $115.00<br>$123.00 | $26.29 | $88.71<br>$96.71 | 337%<br>368% |
| Terazosin 2 mg Cap 100's | 00781-2052-01 | $115.00<br>$123.00 | $26.29 | $88.71<br>$96.71 | 337%<br>368% |
| Terazosin 10 mg Cap 100's | 00781-2054-01 | $115.00<br>$123.00 | $26.29 | $88.71<br>$96.91 | 337%<br>368% |
| Triamterene/ HCTZ 37.5/25 Tab 100's | 00781-1123-01 | $18.88<br>$20.21 | $7.84 | $11.04<br>$12.37 | 140%<br>157% |
| Trifluoperazine 5 mg Tab 100's | 00781-1034-01 | $31.88<br>$34.12 | $17.47 | $14.41<br>$16.65 | 82%<br>95% |

| DEFENDANT GENEVA | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br><br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br><br>DEAC Provider's Gross Profit % |
| Trifluoperazine 10 mg Tab 100's | 00781-1036-01 | $40.34<br>$43.17 | $18.84 | $21.50<br>$24.33 | 114%<br>129% |
| Trifluoperazine 10 mg Tab 1000's | 00781-1036-10 | $399.89<br>$427.89 | $179.03 | $220.86<br>$248.86 | 123%<br>139% |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

160.    As a direct and proximate result of the actions of the DEFENDANT

GENEVA alleged herein, the UNITED STATES has sustained damages recoverable

under the False Claims Act, together with treble damages, penalties, attorneys' fees

and costs.

### SECTION NO. 14
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### GLAXO AS TO MEDICARE AND MEDICAID

161.    At various times from on or after April 7, 1994, and continuing through the

present date, DEFENDANT GLAXO knowingly caused the Medicare and States'

Medicaid programs to pay false or fraudulent claims for drugs specified in this Section

and further made or used false or fraudulent records and/or statements to get such

claims paid or approved.  As a result of the said actions of DEFENDANT GLAXO and

those persons and entities acting directly or indirectly in concert with DEFENDANT

GLAXO, the Medicare and States' Medicaid programs paid grossly excessive,

unreasonable and unlawful amounts for claims for the drugs specified in this Section.

The acts committed by DEFENDANT GLAXO that caused the Medicare and States'

Medicaid programs to pay or approve said false or fraudulent claims included, but were

not necessarily limited to, knowingly making false or fraudulent representations about

prices and costs of the drugs specified in this Section which DEFENDANT GLAXO

knew or should have known would be used by the Medicare and States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.  Each of

said representations was in fact used by the Medicare  and States' Medicaid programs

in paying or approving claims for the drugs specified in this Section.

162.   DEFENDANT GLAXO knowingly caused its false or fraudulent price and

cost representations to be published in the years specified in this Section  in the Red

Book and further made or used false records or statements regarding its prices and

costs of the drugs specified in this Section  and submitted same to the Medicare and

States' Medicaid programs continuously throughout the years specified in this Section.

For the purposes of specificity and particularity, the said false price and cost

representations as they were reflected in the Red Book have been organized into a

chart form for each drug in question . The information provided under the columns for

DEFENDANT's Published Price, and Red Book  "AWP" and "DP" reflects the false price

and cost representations made by the DEFENDANT GLAXO.  The information under

the Relator's Cost columns reflects the true price that DEFENDANT GLAXO charged

the Relator for the drug or caused another entity to charge the Relator for the drug. As a very small pharmacy, the Relator does not always receive the lowest prices available to volume purchasers. Accordingly, a comparison of the Relator's costs with the price and cost representations made by the DEFENDANT GLAXO establishes the falsity of GLAXO's representations for the drugs and years specified as follows:

### DRUG: NAVELBINE 10mg./ml 1 ml
### MEDICARE  HCPCS J9390

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|---|---|---|---|---|---|
| | | "AWP" | "DP" | | |
| 1997 | | | | | |
| 1998 | | | | | |
| 1999 Feb | | $69.72 | | $60.40 | $62.94 |
| 1999 Aug | | $72.63 | | $60.40 | $62.94 |
| 2000 Feb | | $79.48 | | $66.10 | $62.94 |
| 2001 Jan | | $83.45 | | $66.75 | $62.94 |
| 2001 May | | $95.50 | | $66.75 | $66.09 |

163.    As a direct and proximate result of the actions of the DEFENDANT GLAXO alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

### SECTION NO. 15

### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### HOECHST AS TO MEDICARE AND MEDICAID

164.   At various times from on or after April 7, 1994, and continuing through the

present date, DEFENDANT HOECHST knowingly caused the Medicare and States'

Medicaid programs to pay false or fraudulent claims for drugs specified in this Section

and further made or used false or fraudulent records and/or statements to get such

claims paid or approved.  As a result of the said actions of DEFENDANT HOECHST

and those persons and entities acting directly or indirectly in concert with DEFENDANT

HOECHST, the Medicare and States' Medicaid programs paid grossly excessive,

unreasonable and unlawful amounts for claims for the drugs specified in this Section.

The acts committed by DEFENDANT HOECHST that caused the Medicare and States'

Medicaid programs to pay or approve said false or fraudulent claims included, but were

not necessarily limited to, knowingly making false or fraudulent representations about

prices and costs of the drugs specified in this Section which DEFENDANT HOECHST

knew or should have known would be used by the Medicare and States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.  Each of

said representations was in fact used by the Medicare and States' Medicaid programs

in paying or approving claims for the drugs specified in this Section.

164.  DEFENDANT HOECHST knowingly caused its false or fraudulent price

and cost representations to be published in the years specified in this Section  in the

Red Book and further made or used false records or statements regarding its prices

and costs of the drugs specified in this Section  and submitted same to the Medicare

and States' Medicaid programs continuously throughout the years specified in this

Section.  For the purposes of specificity and particularity, the said false price and cost

representations as they were reflected in the Red Book have been organized into a

85

chart form for each drug in question .  The information provided under the columns for

DEFENDANT's Published Price, and Red Book  "AWP" and "DP" reflects the false price

and cost representations made by the DEFENDANT HOECHST.  The information

under the Relator's Cost columns reflects the true price that DEFENDANT HOECHST

charged the Relator for the drug or caused another entity to charge the Relator for the

drug.  As a very small pharmacy, the Relator does not always receive the lowest prices

available to volume purchasers.  Accordingly, a comparison of the Relator's costs with

the price and cost representations made by the DEFENDANT HOECHST establishes

the falsity of HOECHST's representations for the drugs and years specified as follows:

### DRUG: ANZEMET TABLETS 100 mg. 5s
### MEDICARE  HCPCS JQ0180

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK "AWP" | "DP" | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|-----------------------------|----------------|------|---------------------------|-----------------------|
| 1997 |                             | $330.00        |      | $289.75                   |                       |
| 1998 |                             | $330.00        |      | $289.45                   |                       |
| 1999 |                             | $343.20        |      | $318.50                   |                       |
| 2000 |                             | $343.20        |      | $318.50                   |                       |
| 2001 |                             | $366.54        |      | $218.40                   | $198.00               |

166.   DEFENDANT, HOECHST caused the payment or approval of false or

fraudulent claims during the years specified in the above chart by the Medicare program

and for the following additional size(s) of ANZEMET:

CIVIL ACTION NO. 00 CV 10698 MEL

| SIZE | MEDICARE HCPCS |
|------|----------------|
| 50 mg. | S0174 |

167.    As a direct and proximate result of the actions of the DEFENDANT

HOECHST alleged herein, the UNITED STATES has sustained damages recoverable

under the False Claims Act, together with treble damages, penalties, attorneys' fees

and costs.

### SECTION NO. 16
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### MYLAN PHARMACEUTICALS AS TO MEDICAID

168.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT MYLAN PHARMACEUTICALS knowingly caused the

States' Medicaid programs to pay false or fraudulent claims for drugs specified in this

Section and further made or used false or fraudulent records and/or statements to get

such claims paid or approved.  As a result of the actions of DEFENDANT MYLAN

PHARMACEUTICALS and those persons and entities acting directly or indirectly in

concert with DEFENDANT MYLAN PHARMACEUTICALS, the States' Medicaid

programs paid grossly excessive,  unreasonable and unlawful amounts for claims for

the drugs specified in this Section.  The acts committed by DEFENDANT MYLAN

PHARMACEUTICALS that caused the States' Medicaid programs to pay or approve

said false or fraudulent claims included, but were not necessarily limited to, knowingly

making false or fraudulent representations about the wholesaler prices of the drugs

specified in this Section which DEFENDANT MYLAN PHARMACEUTICALS knew

87

would be used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section.  Each of said representations was in fact used by the States' Medicaid programs in paying or approving claims for the drugs specified in this Section.

169.   DEFENDANT MYLAN PHARMACEUTICALS knowingly caused its false or fraudulent wholesaler price representations to be transmitted by First Data Bank's automated services, made or used false records or statements regarding its wholesaler prices of the drugs specified in this section and submitted them to the States' Medicaid programs continuously throughout the years specified in this section.  Within this paragraph is a table, organized by drug and NDC number, which reflects the recent false wholesaler prices in First Data Bank's automated services.  The information in the table under the heading "MYLAN PHARMACEUTICALS' False Reported WAC" reflects DEFENDANT MYLAN PHARMACEUTICALS' false representations of price it charged wholesalers for drugs.  The heading "Relator's Cost" reflects the true price that DEFENDANT MYLAN PHARMACEUTICALS charged the Relator for the drug or caused another entity to charge the Relator for the drug.

| DRUG STRENGTH  & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Acebutolol HCL 200 mg Cap 100's 00378-1200-01 | $30.75 | $17.09 |
| Acebutolol HCL 400 mg Cap 100's 00378-1400-01 | $44.75 | $27.16 |

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Acyclovir 200 mg Cap 100's 00378-2200-01 | $25.53 | $12.31 |
| Acyclovir 200 mg Cap 500's 00378-2200-05 | $121.29 | $59.11 |
| Acyclovir 400 mg Tab 100's 00378-0253-01 | $49.50 | $19.01 |
| Acyclovir 800 mg Tab 100's 00378-0302-01 | $96.41 | $43.20 |
| Allopurinol 300 mg Tab 500's 00378-0181-05 | $47.70 | $31.95 |
| Amiloride HCL & HCTZ 50 - 5 mg Tab 100's 00378-0577-01 | $4.99 | $2.98 |
| Amiloride HCL & HCTZ 50 - 5 mg Tab 500's 00378-0577-05 | $23.70 | $14.79 |
| Amitriptyline HCL 10 mg Tab 100's 00378-2610-01 | $2.80 | $1.97 |
| Amitriptyline HCL 25 mg Tab 100's 00378-2625-01 | $3.30 | $1.78 |
| Amitriptyline HCL 25 mg Tab 1000's 00378-2625-10 | $25.00 | $15.74 |
| Amitriptyline HCL 50 mg Tab 100's 00378-2650-01 | $4.00 | $2.31 |

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Amitriptyline HCL 50 mg Tab 1000's 00378-2650-10 | $30.00 | $20.83 |
| Amitriptyline HCL 75 Mg Tab 100's 00378-2675-01 | $7.00 | $3.38 |
| Amitriptyline HCL 100 mg Tab 100's 00378-2685-01 | $9.00 | $3.86 |
| Amitriptyline HCL 150 Mg Tab 100's 00378-2695-01 | $12.00 | $7.34 |
| Atenolol 25 mg Tabs 100's 00378-0218-01 | $5.50 | $2.08 |
| Atenolol 25 mg Tabs 1000's 00378-0218-10 | $54.50 | $19.17 |
| Atenolol 50 mg Tab 100's 00378-0231-01 | $2.95 | $1.90 |
| Atenolol 50 mg Tab 1000's 00378-0231-10 | $25.90 | $15.19 |
| Atenolol 100 mg Tab 100's 00378-0757-01 | $4.95 | $3.14 |
| Atenolol/Chlorthal 50/25 mg 100's 00378-2063-01 | $17.00 | $7.70 |
| Atenolol/Chlorthal 100/25 mg 100's 00378-2064-01 | $26.00 | $11.84 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Azathioprine 500 mg 100's 00378-1005-01 | $91.75 | $47.34 |
| Bumetanide 0.5 mg Tab 100's 00378-0245-01 | $11.62 | $8.14 |
| Bumetanide 1.0 Mg Tab 100's 00378-0370-01 | $18.76 | $9.08 |
| Bumetanide 2.0 Mg Tab 100's 00378-0417-01 | $31.39 | $12.67 |
| Bupropion HCL 75 mg 100's 00378-0433-01 | $50.45 | $33.23 |
| Bupropion HCL 100 mg 100's 00378-0435-01 | $67.30 | $45.05 |
| Captopril 12.5 Mg Tab 100's 00378-3007-01 | $3.25 | $1.69 |
| Captopril 12.5 Mg Tab 1000's 00378-3007-10 | $24.94 | $14.58 |
| Captopril 25 Mg Tab 100's 00378-3012-01 | $3.75 | $2.30 |
| Captopril 25 Mg Tab 1000's 00378-3012-10 | $33.75 | $21.81 |
| Captopril 50 Mg Tab 100's 00378-3017-01 | $6.15 | $3.88 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Captopril 50 Mg Tab 1000's 00378-3017-10 | $55.35 | $36.92 |
| Captopril 100 Mg Tab 100's 00378-3022-01 | $13.46 | $8.17 |
| Captopril/HCTZ 25/15 Mg 100's 00378-0081-01 | $19.95 | $13.31 |
| Captopril/HCTZ 25/25 Mg 100's 00378-0083-01 | $19.95 | $13.31 |
| Captopril/HCTZ 50/15 Mg 100's 00378-0084-01 | $31.25 | $19.83 |
| Captopril/HCTZ 50/25 Mg 100's 00378-0086-01 | $31.25 | $19.83 |
| Cefaclor 250 Mg Caps 100's 00378-7250-01 | $44.00 | $27.53 |
| Cefaclor 500Mg Caps 100's 00378-7500-01 | $86.00 | $54.10 |
| Cefaclor 125 mg/5 Ml O/S 150 ml 00378-7602-06 | $10.00 | $7.03 |
| Cefaclor 12.5 Mg/5 ml O/S 75 ml 00378-7602-12 | $5.00 | $3.73 |
| Cefaclor 12.5 Mg/5 ml O/S 100 ml 00378-7604-02 | $10.00 | $7.03 |

CIVIL ACTION ᴎO.  00 CV 10698 MEL

| DRUG<br>STRENGTH  & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Cefaclor<br>12.5 Mg/5 ml O/S 50 ml<br>00378-7604-09 | $5.00 | $3.73 |
| Cefaclor<br>250 Mg/5 ml O/S 150 ml<br>00378-7610-06 | $17.00 | $13.37 |
| Cefaclor<br>250 Mg/5 ml O/S 75 ml<br>00378-7610-12 | $9.00 | $6.92 |
| Cefaclor<br>375 Mg/5 ml O/S 100 ml<br>00378-7612-02 | $17.00 | $13.37 |
| Cefaclor<br>375 Mg/5 ml O/S 50 ml<br>00378-7612-09 | $9.00 | $6.92 |
| Cimetidine<br>200 Mg Tab 100's<br>00378-0053-01 | $8.75 | $6.84 |
| Cimetidine<br>300 Mg Tab 100's<br>00378-0317-01 | $9.25 | $5.56 |
| Cimetidine<br>300 Mg Tab 500's<br>00378-0317-05 | $44.25 | $27.64 |
| Cimetidine<br>400 Mg Tab 100's<br>00378-0372-01 | $10.75 | $6.64 |
| Cimetidine<br>400 Mg Tab 500's<br>00378-0372-05 | $51.75 | $32.74 |
| Cimetidine<br>800 Mg Tab 100's<br>00378-0541-01 | $19.75 | $13.62 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Clomipramine HCL 25 Mg Cap 100's 00378-3025-01 | $25.50 | $11.25 |
| Clomipramine Hcl 50 Mg Cap 100's 00378-3050-01 | $34.25 | $16.76 |
| Clomipramine HCL 75 MG Cap 100's 00378-3075-01 | $44.15 | $22.37 |
| Clonazepam 0.5 Mg Tab 100's 00378-1910-01 | $18.40 | $3.57 |
| Clonazepam 0.5 Mg Tab 1000's 00378-1910-10 | $175.00 | $31.95 |
| Clonazepam 1 Mg Tab 100's 00378-1912-01 | $21.40 | $4.74 |
| Clonazepam 1 Mg Tab 1000's 00378-1912-10 | $203.30 | $42.60 |
| Clonazepam 2 Mg Tab 100's 00378-1914-01 | $29.25 | $5.91 |
| Clonazepam 2 Mg Tab 500's 00378-1914-05 | $139.00 | $26.04 |
| Clorazepate 3.75 Mg Tab 100's 00378-0030-01 | $61.85 | $45.95 |
| Clorazepate 3.75 Mg Tab 500's 00378-0030-05 | $305.45 | $218.59 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Clorazepate 7.5 Mg Tab 100's 00378-0040-01 | $76.95 | $57.72 |
| Clorazepate 7.5 Mg Tab 500's 00378-0040-05 | $377.00 | $274.66 |
| Clorazepate 15 Mg Tab 100's 00378-0070-01 | $104.40 | $81.37 |
| Clozapine 25 Mg 100's 00378-0825-01 | $93.75 | $60.71 |
| Clozapine 100 Mg 100's 00378-0860-01 | $243.25 | $156.56 |
| Cyclobenzaprine HCL 10 Mg Tab 100's 00378-0751-01 | $6.04 | $3.79 |
| Cyclobenzaprine HCL 10 Mg Tab 1000's 00378-0751-10 | $46.67 | $28.09 |
| Diazepam 2 Mg Tab 100's 00378-0271-01 | $2.00 | $1.44 |
| Diazepam 2 Mg Tab 500's 00378-0271-05 | $8.50 | $4.37 |
| Diazepam 5 Mg Tab 100's 00378-0345-01 | $2.10 | $1.54 |
| Diazepam 5 Mg Tab 500's 00378-0345-05 | $9.00 | $4.90 |

CIVIL ACTION ..O. **00 CV 10698 MEL**

| DRUG<br>STRENGTH & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Diazepam<br>10 Mg Tab 100's<br>00378-0477-01 | $2.30 | $1.86 |
| Diazepam<br>10 Mg Tab 500's<br>00378-0477-05 | $10.00 | $5.86 |
| Diclofenac Potassium<br>50 Mg 100's<br>00378-2474-01 | $78.00 | $26.31 |
| Dicyclomine HCL<br>10 Mg Caps 100's<br>00378-1610-01 | $8.15 | $4.74 |
| Dicyclomine HCL<br>10 Mg Caps 500's<br>00378-1610-05 | $39.50 | $22.15 |
| Dicyclomine HCL<br>20 MG Tabs 100's<br>00378-1620-01 | $10.15 | $6.23 |
| Dicyclomine HCL<br>20 MG Tabs 500's<br>00378-1620-05 | $49.25 | $28.12 |
| Diltiazem HCL<br>30 Mg Tab 100's<br>00378-0023-01 | $5.32 | $2.88 |
| Diltiazem HCL<br>30 MG Tab 500's<br>00378-0023-05 | $21.25 | $12.57 |
| Diltiazem HCL<br>60 Mg Tab 100's<br>00378-0045-01 | $7.69 | $5.06 |
| Diltiazem HCL<br>60 MG Tab 500's<br>00378-0045-05 | $36.63 | $23.59 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Diltiazem HCL 90 Mg Tab 100's 00378-0135-01 | $9.82 | $7.99 |
| Diltiazem HCL 90 MG Tab 500's 00378-0135-05 | $46.73 | $37.49 |
| Diltiazem HCL 120 Mg Tab 100's 00378-0525-01 | $15.53 | $10.38 |
| Diltiazem HCL Er 60 MG Cap 100's 00378-6060-01 | $48.75 | $24.54 |
| Diltiazem HCL ER 90 Mg Cap 100's 00378-6090-01 | $55.75 | $35.91 |
| Diltiazem HCL ER 120 Mg Cap 100's 00378-6120-01 | $72.65 | $52.56 |
| Diltiazem HCL ER 180 Mg Cap DT 500's 00378-5280-05 | $310.00 | $224.25 |
| Diltiazem HCL ER 240 Mg Cap DT 100's 00378-5340-01 | $74.00 | $51.72 |
| Diltiazem HCL ER 240 MG Cap DT 500's 00378-5340-05 | $367.50 | $245.08 |
| Diphenoxyliatropine 2.5/.025 100's 00378-0415-01 | $29.69 | $18.37 |
| Diphenoxyliatropine 2.5/.025 1000's 00378-0415-10 | $252.20 | $165.34 |

97

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Doxycycline Hyclate 100 mg Tab 50's 00378-0167-89 | $4.60 | $4.53 |
| Estradiol 0.5 mg Tabs 100's 00378-1452-01 | $11.95 | $4.79 |
| Estradiol 0.5 mg Tabs 500's 00378-1452-05 | $56.50 | $22.79 |
| Estradiol 1.0 mg Tabs 100's 00378-1454-01 | $14.70 | $7.40 |
| Estradiol 1.0 mg Tabs 500's 00378-1454-05 | $63.30 | $35.15 |
| Estradiol 2.0 mg Tabs 100's 00378-1458-01 | $20.40 | $10.60 |
| Estradiol 2.0 mg Tas 500's 00378-1458-05 | $96.90 | $50.32 |
| Etodolac 200 mg Cap 100's 00378-7200-01 | $32.00 | $17.09 |
| Etodolac 300 mg Cap 100's 00378-7233-01 | $34.00 | $18.48 |
| Etodolac 300 mg Cap 500's 00378-7233-05 | $161.50 | $87.76 |
| Etodolac 400 mg Tab 100's 00378-0237-01 | $35.67 | $20.08 |

**CIVIL ACTION ɴо.  00 CV 10698 MEL**

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Etodolac 400 mg Tab 500's 00378-0237-05 | $174.57 | $95.37 |
| Etodolac 500 mg Tab 100's 00378-1242-01 | $92.70 | $25.93 |
| Etodolac 500 mg Tab 500's 00378-1242-05 | $440.00 | $123.17 |
| Fluphenazine HCL 1 mg Tab 100's 00378-6004-01 | $12.50 | $9.35 |
| Fluphenazine Hcl 1 mg Tab 500's 00378-6004-05 | $60.00 | $40.50 |
| Fluphenazine HCL 2.5 mg Tab 100's 00378-6009-01 | $18.50 | $12.73 |
| Fluphenazine HCL 2.5 mg Tab 500's 00378-6009-05 | $90.00 | $68.77 |
| Fluphenazine HCL 5 mg Tab 100's 00378-6074-01 | $24.50 | $16.26 |
| Fluphenazine HCL 5 mg Tab 500's 00378-6074-05 | $120.00 | $80.39 |
| Fluphenazine HCL 10 mg Tab 100's 00378-6097-01 | $36.50 | $20.95 |
| Fluphenazine Hcl 10 mg Tab 500's 00378-6097-05 | $180.00 | $96.40 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Flurazepam Hcl 15 mg Cap 100's 00378-4415-01 | $6.00 | $4.69 |
| Flurbiprofen 50 mg Tab 100's 00378-0076-01 | $15.00 | $9.97 |
| Flurbiprofen 100 mg Tab 100's 00378-0093-01 | $24.50 | $15.09 |
| Flurbiprofen 100 mg Tab 500's 00378-0093-05 | $120.00 | $71.36 |
| Furosemide 20 mg Tab 100's 00378-0208-01 | $3.80 | $1.83 |
| Furosemide 20 mg Tab 1000's 00378-0208-10 | $23.10 | $13.63 |
| Furosemide 40 mg Tab 100's 00378-0216-01 | $4.05 | $2.16 |
| Furosemide 40 mg Tab 1000's 00378-0216-10 | $25.35 | $17.04 |
| Furosemide 80 mg Tab 100's 00378-0232-01 | $5.80 | $4.06 |
| Furosemide 80 mg Tab 500's 00378-0232-05 | $24.85 | $17.89 |
| Glipizide 5 mg Tab 100's 00378-1105-01 | $6.35 | $3.59 |

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Glipizide 5 mg Tab 500's 00378-1105-05 | $30.00 | $14.30 |
| Glipizide 10 mg Tab 100's 00378-1110-01 | $9.30 | $5.56 |
| Glipizide 10 mg Tab 500's 00378-1110-05 | $44.00 | $21.30 |
| Glyburide 1.5 mg Tab 100's 00378-1113-01 | $17.75 | $5.64 |
| Glyburide 3 mg Tab 100's 00378-1125-01 | $22.50 | $7.67 |
| Glyburide 3 mg Tab 1000's 00378-1125-10 | $210.00 | $72.85 |
| Glyburide 6 mg 100's 00378-1142-01 | $58.00 | $22.42 |
| Guanfacine 1 mg Tab 100's 00378-1160-01 | $35.00 | $14.75 |
| Guanfacine 2 mg Tab 100's 00378-1190-01 | $48.00 | $20.02 |
| Hydroxychloroquine 200 mg Tab 100's 00378-0373-01 | $56.90 | $28.40 |
| Indapamide 1.25 mg Tab 100's 00378-0069-01 | $7.96 | $4.48 |

CIVIL ACTION ѵO.  00 CV 10698 MEL

| DRUG<br>STRENGTH  & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Indapamide<br>1.25 mg Tab 500's<br>00378-0069-05 | $34.21 | $21.30 |
| Indapamide<br>2.5 mg Tab 100's<br>00378-0080-01 | $10.50 | $7.38 |
| Indapamide<br>2.5 mg Tab 1000's<br>00378-0080-10 | $99.00 | $61.48 |
| Indomethacin<br>25 mg Cap 100's<br>00378-0143-01 | $4.00 | $2.61 |
| Indomethacin<br>25 mg Cap 1000's<br>00378-0143-10 | $34.20 | $22.79 |
| Indomethacin<br>50 mg Cap 100's<br>00378-0147-01 | $4.85 | $3.78 |
| Indomethacin<br>50 mg Cap 500's<br>00378-0147-05 | $23.00 | $17.20 |
| Ketoconazole<br>200 mg Tabs 100's<br>00378-0261-01 | $185.00 | $64.91 |
| Ketoprofen<br>50 mg Cap 100's<br>00378-4070-01 | $14.10 | $8.00 |
| Ketoprofen<br>75 mg Cap 100's<br>00378-5750-01 | $16.55 | $9.56 |
| Ketorolac Tromethamine<br>10 mg 100's<br>00378-1134-01 | $64.70 | $44.98 |

CIVIL ACTION No.  00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Lactulose Solution 10 gm/15 ml 8 oz 00378-3331-70 | $5.15 | $3.32 |
| Lactulose Solution 10 gm/15 ml 16 oz 00378-3331-72 | $9.45 | $4.97 |
| Lactulose Solution 10 gm/15 ml 32 oz 00378-3331-74 | $18.50 | $8.88 |
| Loperamide HCL 2 mg Cap 100's 00378-2100-01 | $10.00 | $7.26 |
| Loperamide HCL 2 mg Cap 500's 00378-2100-05 | $47.00 | $33.97 |
| Lorazepam 0.5 mg Tab 100's 3078-0321-01 | $30.60 | $14.16 |
| Lorazepam 0.5 mg Tab 500's 00378-0321-05 | $145.05 | $67.25 |
| Lorazepam 1.0 mg Tab 100's 00378-0457-01 | $40.20 | $18.00 |
| Lorazepam 1.0 mg Tab 500's 00378-0457-05 | $191.50 | $85.47 |
| Lorazepam 1.0 mg Tab 1000's 00378-0457-10 | $378.40 | $161.99 |
| Lorazepam 2.0 mg Tab 100's 3078-0777-01 | $59.60 | $27.16 |

CIVIL ACTION NO. **00 CV 10698 MEL**

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Lorazepam 2.0 mg Tab 500s 00378-0777-05 | $285.20 | $129.02 |
| Methotrexate 2.5 mg Tab 100's 00378-0014-01 | $84.25 | $42.01 |
| Methyldopa 250 mg Tab 100's 00378-0611-01 | $6.75 | $6.53 |
| Nadolol 20 mg Tab 100's 00378-0028-01 | $31.00 | $7.25 |
| Nadolol 40 mg Tab 100's 00378-1171-01 | $38.50 | $11.97 |
| Nadolol 40 mg Tab 1000's 00378-1171-10 | $379.00 | $113.14 |
| Nadolol 80 mg Tab 100's 00378-1132-01 | $53.50 | $20.16 |
| Nadolol 80 mg Tab 1000's 00378-1132-10 | $529.00 | $195.07 |
| Nicardipine HCL 20 mg Cap 90's 00378-1020-77 | $24.53 | $8.84 |
| Nicardipine HCL 20 mg Cap 500's 00378-1020-05 | $119.03 | $46.65 |
| Nicardipine HCL 30 mg Cap 90's 00378-1430-77 | $39.02 | $14.86 |

**CIVIL ACTION nO. 00 CV 10698 MEL**

| DRUG<br>STRENGTH  & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Nicardipine HCL<br>30 mg Cap 500's<br>00378-1430-05 | $189.19 | $78.38 |
| Nitrofurantoin<br>50 mg Cap 100's<br>00378-1650-01 | $33.75 | $17.68 |
| Nitrofurantoin<br>50 mg Cap 500's<br>00378-1650-05 | $160.48 | $83.98 |
| Nitrofurantoin<br>10 mg Cap 100's<br>00378-1700-01 | $56.49 | $31.42 |
| Nortriptyline HCL<br>10 mg Cap 100's<br>00378-1410-01 | $6.95 | $3.73 |
| Nortriptyline HCL<br>25 mg Cap 100's<br>00378-2325-01 | $9.60 | $5.38 |
| Nortriptyline HCL<br>50 mg Cap 100's<br>00378-3250-01 | $11.70 | $6.75 |
| Nortriptyline HCL<br>75 mg Cap 100's<br>00378-4175-01 | $14.95 | $8.40 |
| Orphenadrine Citrate ER<br>100 mg 100's<br>00378-3358-01 | $121.50 | $64.91 |
| Orphenadrine Citrate ER<br>100 mg 500's<br>00378-3358-05 | $596.95 | $308.32 |
| Orphenadrine W/AC<br>385/30/26 mg 100's<br>00378-3354-01 | $55.00 | $21.30 |

**CIVIL ACTION NO. 00 CV 10698 MEL**

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Orphenadrine W/AC 770/60/50 mg 100's 00378-3356-01 | $80.00 | $28.40 |
| Pentoxifyline ER 400 mg Tab 100's 00378-0357-01 | $38.51 | $15.82 |
| Perphenazine / AMIT 2/10 Tab 100's 038-0330-01 | $4.35 | $2.61 |
| Perphenazine/ AMIT 2/10/Tab 500's 00378-0330-05 | $18.60 | $12.38 |
| Perphenazine/ AMIT 2/25/ Tab 100's 00378-0442-01 | $5.80 | $3.50 |
| Perphenazine/ AMIT 2/25/ Tab 500's 00378-0442-05 | $25.25 | $14.79 |
| Perphenazine/ AMIT 4/10 Tab 100's 00378-0042-01 | $5.25 | $3.61 |
| Pindolol 5 mg Tab 100's 00378-0052-01 | $12.95 | $5.56 |
| Pindolol 10 mg Tab 100's 00378-0127-01 | $16.95 | $8.65 |
| Piroxicam 10 mg Cap 100's 00378-1010-01 | $5.94 | $3.61 |
| Piroxicam 20 mg Cap 100's 00378-2020-01 | $7.54 | $4.38 |

106

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Piroxicam 20 mg Cap 500's 00378-2020-05 | $33.53 | $19.53 |
| Prazosin HCL 1 mg Cap 100's 00378-1101-01 | $5.50 | $3.67 |
| Prazosin HCL 1 mg Cap 1000's 00378-1101-10 | $49.75 | $28.22 |
| Prazosin HCL 2 mg Cap 100's 00378-2302-01 | $6.95 | $4.21 |
| Prazosin HCL 2 mg Cap 1000's 00378-2302-10 | $61.75 | $35.68 |
| Prazosin HCL 5 mg Cap 100's 00378-3205-01 | $11.50 | $7.56 |
| Prazosin HCL 5 mg Cap 250's 00378-3205-25 | $26.95 | $19.44 |
| Prednisolone Syrup 15 mg/5 ml 210 ml 00378-3425-24 | $41.25 | $9.44 |
| Prednisolone Syrup 15 mg/5 ml 480 ml 00378-3425-48 | $66.70 | $18.88 |
| Probenecid 500 mg Tab 100's 00378-0156-01 | $49.50 | $37.28 |

107

CIVIL ACTION NO. 00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Prochlorperazine MAL 5 mg 100's 00378-5105-01 | $32.00 | $18.07 |
| Prochlorperazine MAL 10 mg 100's 00378-5110-01 | $48.00 | $27.24 |
| Propoxyphene /APAP 65/650 Tab 100's 00378-0130-01 | $11.25 | $7.07 |
| Propoxyphene /APAP 65/650 Tab 500's 00378-0130-05 | $53.40 | $30.32 |
| Propranolol HCL 10 mg Tab 100's 00378-0182-01 | $3.30 | $2.08 |
| Propranolol HCL 10 mg Tab 1000's 00378-0182-10 | $23.00 | $8.58 |
| Propranolol HCL 20 mg Tab 100's 00378-0183-01 | $3.60 | $2.38 |
| Propranolol HCL 20 mg Tab 1000's 00378-0183-10 | $26.00 | $9.47 |
| Propranolol HCL 40 mg Tab 100's 00378-0184-01 | $4.60 | $2.84 |
| Propranolol HCL 40 mg Tab 1000's 00378-0184-10 | $36.00 | $17.17 |

**CIVIL ACTION NO. 00 CV 10698 MEL**

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Propranolol HCL 80 mg Tab 100's 00378-0185-01 | $7.60 | $3.49 |
| Propranolol HCL 80 mg Tab 500's 00378-0185-05 | $34.00 | $13.03 |
| Propranolol HCTZ 25 - 40 mg Tab 100's 00378-0731-01 | $5.25 | $3.05 |
| Propranolol HCTZ 25 - 80 mg Tab 100's 00378-0347-01 | $7.80 | $4.47 |
| Ranitidine 150 mg Tab 60's 00378-3252-91 | $14.00 | $4.36 |
| Ranitidine 150 mg Tab 100's 00378-3252-01 | $22.75 | $7.34 |
| Ranitidine 150 mg Tab 500's 00378-3252-05 | $110.00 | $34.88 |
| Ranitidine 300 mg Tab 30's 00378-3254-93 | $14.00 | $5.33 |
| Ranitidine 300 mg Tab 100's 00378-3254-01 | $45.50 | $15.98 |
| Ranitidine 300 mg Tab 500's 00378-3254-05 | $220.00 | $81.52 |

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG<br>STRENGTH & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Spironolactone<br>25 mg Tab 100's<br>00378-2146-01 | $20.00 | $11.91 |
| Spironolactone<br>25 mg Tab 500's<br>00378-2146-05 | $94.00 | $55.55 |
| Spironolactone/HCTZ<br>25/25 Tab 100's<br>00378-0141-01 | $21.50 | $13.23 |
| Spironolactone/HCTZ<br>25/25 Tab 500's<br>00378-0141-05 | $101.50 | $62.16 |
| Terazosin HCL<br>10 mg Cap 100's<br>00378-1570-01 | $112.35 | $41.27 |
| Terazosin HCL<br>1 mg Cap 100's<br>00378-2260-01 | $112.35 | $41.27 |
| Terazosin HCL<br>2 mg Cap 100's<br>00378-2264-01 | $112.35 | $41.27 |
| Terazosin HCL<br>5 mg Cap 100's<br>00378-2268-01 | $112.35 | $41.27 |
| Thioridazine HCL<br>10 mg Tab 100's<br>00378-0612-01 | $10.30 | $6.28 |
| Thioridazine HCL<br>10 mg Tab 1000's<br>00378-0612-10 | $93.00 | $61.54 |

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG<br>STRENGTH  & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Thioridazine HCL<br>25 mg Tab 100's<br>00378-0614-01 | $12.10 | $7.82 |
| Thioridazine HCL<br>25 mg Tab 1,000's<br>00378-0614-10 | $113.00 | $73.37 |
| Thioridazine HCL<br>50 mg Tab 100's<br>00378-0616-01 | $19.35 | $11.44 |
| Thioridazine HCL<br>50 mg Tab 1000's<br>00378-0616-10 | $185.50 | $120.71 |
| Thioridazine HCL<br>100 mg Tab 100's<br>00378-0618-01 | $25.50 | $15.64 |
| Thioridazine HCL<br>100 mg Tab 1000's<br>00378-0618-10 | $247.00 | $160.35 |
| Thiothixene<br>1 mg Cap 100's<br>00378-1001-01 | $5.95 | $3.89 |
| Thiothixene<br>2 mg Cap 100's<br>00378-2002-01 | $7.95 | $5.15 |
| Thiothixene<br>2 mg Cap 1,000's<br>00378-2002-10 | $69.95 | $51.18 |
| Thiothixene<br>5 mg Cap 100's<br>00378-3005-01 | $11.25 | $7.60 |

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Thiothixene 5 mg Cap 1000's 00378-3005-10 | $105.00 | $73.13 |
| Thiothixene 10 mg Cap 100's 00378-5010-01 | $16.75 | $10.65 |
| Thiothixene 10 mg Cap 1,000's 00378-5010-10 | $155.00 | $111.83 |
| Timolol Maleate 5 mg Tab 100's 00378-0055-01 | $11.50 | $8.23 |
| Timolol Maleate 10 mg Tab 100's 00378-0221-01 | $15.95 | $12.55 |
| Timolol Maleate 20 mg Tab 100's 00378-0715-01 | $31.95 | $22.37 |
| Tolazamide 25 mg Tab 100's 00378-0217-01 | $8.50 | $6.17 |
| Tolazamide 500 mg Tab 100's 00378-0551-01 | $16.50 | $11.46 |
| Tolbutamide 500 mg Tab 100's 00378-0215-01 | $12.31 | $7.40 |
| Tolbutamide 500 mg Tab 500's 00378-0215-05 | $60.35 | $34.61 |

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Triamter/HCTZ 37.5/25 Cap 100's 00378-2537-01 | $21.21 | $11.18 |
| Triamter/HCTZ 37.5/25 Cap 1000's 00378-2537-10 | $203.96 | $106.23 |
| TriamterHCTZ 37.5/25 Tab 100's 00378-1352-01 | $20.40 | $10.35 |
| Triamter/HCTZ 37.5/25 Tab 500's 00378-1352-05 | $99.19 | $44.85 |
| Triamter/HCTZ 75/50 Tab 100's 00378-1355-01 | $4.00 | $2.53 |
| Triamter/HCTZ 75/50 Tab 500's 00378-1355-05 | $18.00 | $9.41 |
| Trifluoperazine HCL 1 mg 100's 00378-2401-01 | $16.22 | $10.60 |
| Trifluoperazine HCL 2 mg 100's 00378-2402-01 | $23.68 | $15.34 |
| Trifluoperazine HCL 5 mg 100's 00378-2405-01 | $28.47 | $17.73 |
| Trifluoperazine HCL 5 mg 500's 00378-2405-05 | $126.69 | $84.24 |

113

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG<br>STRENGTH  & SIZE,<br>NDC#s | MYLAN PHARMACEUTICALS'<br>FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Trifluoperazine HCL<br>10 mg 100's<br>00378-2410-01 | $36.02 | $23.59 |
| Trifluoperazine HCL<br>10 mg 500's<br>00378-2410-05 | $162.09 | $112.04 |
| Verapamil<br>80 mg Tab 100's<br>00378-0512-01 | $4.15 | $3.49 |
| Verapamil<br>80 mg Tab 1000's<br>00378-0512-10 | $36.25 | $30.71 |
| Verapamil<br>120 mg Tab 500's<br>00378-0772-05 | $28.30 | $21.90 |
| Verapamil HCL ER<br>120 mg Tab (Isoptin) 100's<br>00378-1120-01 | $60.21 | $45.26 |
| Verapamil HCL ER<br>240 mg Tab (Isoptin) 100's<br>00378-0411-01 | $18.00 | $13.61 |
| Verapamil HCL ER<br>240 mg Tab (isoptin) 500's<br>00378-0411-05 | $78.50 | $58.29 |
| Verapamil HCL ER<br>120 mg Caps (Verelan) 100's<br>00378-6320-01 | $55.00 | $41.27 |
| Verapamil HCL ER<br>180 mg Caps (Verelan) 100's<br>00378-6380-01 | $58.00 | $44.84 |

114

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | MYLAN PHARMACEUTICALS' FALSE REPORTED WAC | VAC's COST |
|---|---|---|
| Verapamil HCL ER 240 mg Caps (Verelan) 100's 00378-6440-01 | $66.00 | $49.52 |

170.    The false price and cost representations, as they were submitted to the
State of Texas on or after April 7, 1994, are organized in a chart within this paragraph
by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),
"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit."  The amount
under the heading "Relator's Cost" is the true price that DEFENDANT MYLAN
PHARMACEUTICALS charged the Relator for the drug or caused another entity to
charge the Relator for the drug.  A comparison of the Relator's cost with DEFENDANT
MYLAN PHARMACEUTICALS' price representations shows the falsity of DEFENDANT
MYLAN PHARMACEUTICALS' price representations for the specified drugs.
Furthermore, the table shows the impact of DEFENDANT MYLAN
PHARMACEUTICALS' false statements because it shows health care providers made a
profit for prescribing DEFENDANT MYLAN PHARMACEUTICALS' drugs.  Texas
Medicaid, which intended to pay for drugs based upon estimated acquisition costs,
never intended to pay the amounts under the heading "Gross Profit."

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Acebutolol HCL 200 mg Cap 100's | 00378-1200-01 | $34.40<br>$<br>$ | $17.09 | $17.31<br>$ | 50%<br>% |
| Acebutolol HCL 400 mg Cap 100's | 00378-1400-01 | $50.12<br>$<br>$ | $27.16 | $22.96<br>$ | 46%<br>% |
| Acyclovir 200 mg Cap 100's | 00378-2200-01 | $28.59<br>$<br>$ | $12.31 | $16.28<br>$ | 57%<br>% |
| Acyclovir 400 mg Tab 100's | 00378-0253-01 | $55.54<br>$<br>$ | $19.01 | $36.53<br>$ | 66%<br>% |
| Acyclovir 800 mg Tab 100's | 00378-0302-01 | $107.97<br>$<br>$ | $43.20 | $ 64.77<br>$ | 60%<br>% |
| Allopurinol 300 mg Tab 500's | 00378-0181-05 | $59.36<br>$<br>$ | $31.95 | $27.41<br>$ | 46%<br>% |
| Amiloride HCL & HCTZ 50 - 5 mg Tab 100's | 00378-0577-01 | $5.58<br>$<br>$ | $2.98 | $2.60<br>$ | 47%<br>% |
| Amiloride HCL & HCTZ 50 - 5 mg Tab 500's | 00378-0577-05 | $26.54<br>$<br>$ | $14.79 | $12.05<br>$ | 45%<br>% |

116

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Amitriptyline HCL 10 mg Tab 100's | 00378-2610-01 | $3.13<br>$<br>$ | $1.97 | $1.16<br>$ | 37%<br>% |
| Amitriptyline HCL 25 mg Tab 100's | 00378-2625-01 | $3.69<br>$<br>$ | $1.78 | $1.91<br>$ | 52%<br>% |
| Amitriptyline HCL 25 mg Tab 1000's | 00378-2625-10 | $28.00<br>$<br>$ | $15.74 | $12.26<br>$ | 44%<br>% |
| Amitriptyline HCL 50 mg Tab 100's | 00378-2650-01 | $4.48<br>$<br>$ | $2.31 | $2.17<br>$ | 48%<br>% |
| Amitriptyline HCL 50 mg Tab 1000's | 00378-2650-10 | $33.60<br>$<br>$ | $20.83 | $12.77<br>$ | 38%<br>% |
| Amitriptyline HCL 75 Mg Tab 100's | 00378-2675-01 | $7.84<br>$<br>$ | $3.38 | $4.46<br>$ | 57%<br>% |
| Amitriptyline HCL 100 mg Tab 100's | 00378-2685-01 | $10.08<br>$<br>$ | $3.86 | $6.22<br>$ | 62%<br>% |
| Amitriptyline HCL 150 Mg Tab 100's | 00378-2695-01 | $13.44<br>$<br>$ | $7.34 | $6.10<br>$ | 45%<br>% |
| Atenolol 25 mg Tabs 100's | 00378-0218-01 | $6.16<br>$<br>$ | $2.08 | $4.08<br>$ | 66%<br>% |

117

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC ____<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ ____<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Atenolol<br>25 mg Tabs 1000's | 00378-0218-10 | $61.04 ____<br>$<br>$ | $19.17 | $41.87 ____<br>$ | 69% ____<br>% |
| Atenolol<br>50 mg Tab 100's | 00378-0231-01 | $3.30 ____<br>$<br>$ | $1.90 | $1.40 ____<br>$ | 42% ____<br>% |
| Atenolol<br>50 mg Tab 1000's | 00378-0231-10 | $29.00 ____<br>$<br>$ | $15.19 | $13.81 ____<br>$ | 48% ____<br>% |
| Atenolol<br>100 mg Tab 100's | 00378-0757-01 | $5.54 ____<br>$<br>$ | $3.14 | $2.40 ____<br>$ | 43% ____<br>% |
| Atenolol/Chlorthal<br>50/25 mg 100's | 00378-2063-01 | $19.04 ____<br>$<br>$ | $7.70 | $11.34 ____<br>$ | 60% ____<br>% |
| Atenolol/Chlorthal<br>100/25 mg 100's | 00378-2064-01 | $29.12 ____<br>$<br>$ | $11.84 | $17.28 ____<br>$ | 59% ____<br>% |
| Azathioprine<br>500 mg 100's | 00378-1005-01 | $102.76 ____<br>$<br>$ | $47.34 | $55.42 ____<br>$ | 54% ____<br>% |
| Bumetanide<br>0.5 mg Tab 100's | 00378-0245-01 | $13.01 ____<br>$<br>$ | $8.14 | $4.87 ____<br>$ | 37% ____<br>% |
| Bumetanide<br>1.0 Mg Tab 100's | 00378-0370-01 | $21.01 ____<br>$<br>$ | $9.08 | $11.93 ____<br>$ | 57% ____<br>% |

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost<br>(in or about<br>January<br>2001) | WEAC<br>Provider's<br>Gross Profit<br>$<br>DEAC<br>Provider's<br>Gross Profit<br>$ | WEAC<br>Provider's Gross<br>Profit %<br>DEAC<br>Provider's Gross<br>Profit % |
| Bumetanide<br>2.0 Mg Tab 100's | 00378-0417-01 | $35.15<br>$<br>$ | $12.67 | $22.48<br>$ | 64%<br>% |
| Captopril<br>12.5 Mg Tab 100's | 00378-3007-01 | $3.64<br>$<br>$ | $1.69 | $1.95<br>$ | 54%<br>% |
| Captopril<br>12.5 Mg Tab 1000's | 00378-3007-10 | $27.93<br>$<br>$ | $14.58 | $13.35<br>$ | 48%<br>% |
| Captopril<br>25 Mg Tab 100's | 00378-3012-01 | $4.20<br>$<br>$ | $2.30 | $1.90<br>$ | 45%<br>% |
| Captopril<br>25 Mg Tab 1000's | 00378-3012-10 | $37.80<br>$<br>$ | $21.81 | $15.99<br>$ | 42%<br>% |
| Captopril<br>50 Mg Tab 100's | 00378-3017-01 | $<br>$<br>$<br>$ | $3.88 | $<br>$ | %<br>% |
| Captopril<br>50 Mg Tab 1000's | 00378-3017-10 | $61.99<br>$<br>$ | $36.92 | $25.07<br>$ | 40%<br>% |
| Captopril<br>100 Mg Tab 100's | 00378-3022-01 | $15.07<br>$<br>$ | $8.17 | $6.90<br>$ | 46%<br>% |
| Captopril/HCTZ<br>25/15 Mg 100's | 00378-0081-01 | $44.74<br>$<br>$ | $13.31 | $31.43<br>$ | 70%<br>% |

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Captopril/HCTZ 25/25 Mg 100's | 00378-0083-01 | $44.74<br>$<br>$ | $13.31 | $31.43<br>$ | 70%<br>% |
| Captopril/HCTZ 50/15 Mg 100's | 00378-0084-01 | $76.44<br>$<br>$ | $19.83 | $56.61<br>$ | 74%<br>% |
| Captopril/HCTZ 50/25 Mg 100's | 00378-0086-01 | $76.44<br>$<br>$ | $19.83 | $56.61<br>$ | 74%<br>% |
| Cefaclor 250 Mg Caps 100's | 00378-7250-01 | $49.28<br>$<br>$ | $27.53 | $21.75<br>$ | 44%<br>% |
| Cefaclor 500Mg Caps 100's | 00378-7500-01 | $96.32<br>$<br>$ | $54.10 | $42.22<br>$ | 44%<br>% |
| Cefacaclor 250 Mg/5 ml O/S 150 ml | 00378-7610-06 | $19.03<br>$<br>$ | $13.37 | $5.66<br>$ | 30%<br>% |
| Cefaclor 250 Mg/5 ml O/S 75 ml | 00378-7610-12 | $10.08<br>$<br>$ | $6.92 | $3.16<br>$ | 31%<br>% |
| Cefaclor 375 Mg/5 ml O/S 100 ml | 00378-7612-02 | $19.04<br>$<br>$ | $13.37 | $5.67<br>$ | 30%<br>% |
| Cefaclor 375 Mg/5 ml O/S 50 ml | 00378-7612-09 | $10.08<br>$<br>$ | $6.92 | $3.16<br>$ | 31%<br>% |

120

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Clonazepam 0.5 Mg Tab 100's | 00378-1910-01 | $20.60<br>$<br>$ | $3.57 | $17.03<br>$ | 83%<br>% |
| Clonazepam 0.5 Mg Tab 1000's | 00378-1910-10 | $196.00<br>$<br>$ | $31.95 | $158.05<br>$ | 81%<br>% |
| Clonazepam 1 Mg Tab 100's | 00378-1912-01 | $23.96<br>$<br>$ | $4.74 | $19.22<br>$ | 80%<br>% |
| Clonazepam 1 Mg Tab 1000's | 00378-1912-10 | $227.69<br>$<br>$ | $42.60 | $185.09<br>$ | 81%<br>% |
| Clonazepam 2 Mg Tab 100's | 00378-1914-01 | $32.76<br>$<br>$ | $5.91 | $26.85<br>$ | 82%<br>% |
| Clonazepam 2 Mg Tab 500's | 00378-1914-05 | $155.68<br>$<br>$ | $26.04 | $129.64<br>$ | 83%<br>% |
| Clorazepate 3.75 Mg Tab 100's | 00378-0030-01 | $69.27<br>$<br>$ | $45.95 | $23.32<br>$ | 34%<br>% |
| Clorazepate 3.75 Mg Tab 500's | 00378-0030-05 | $342.10<br>$<br>$ | $218.59 | $123.51<br>$ | 36%<br>% |
| Clorazepate 7.5 Mg Tab 100's | 00378-0040-01 | $86.18<br>$<br>$ | $57.72 | $28.46<br>$ | 33%<br>% |

122

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost<br>(in or about<br>January<br>2001) | WEAC<br>Provider's<br>Gross Profit<br>$<br>DEAC<br>Provider's<br>Gross Profit<br>$ | WEAC<br>Provider'<br>s Gross<br>Profit %<br>DEAC<br>Provider'<br>s Gross<br>Profit % |
| Clorazepate<br>7.5 Mg Tab 500's | 00378-0040-05 | $422.24<br>$<br>$ | $274.66 | $147.58<br>$ | 35%<br>% |
| Clorazepate<br>15 Mg Tab 100's | 00378-0070-01 | $116.93<br>$ | $81.37 | $35.56<br>$ | 30%<br>% |
| Clozapine<br>100 Mg 100's | 00378-0860-01 | $175.00<br>$<br>$ | $156.56 | $18.44<br>$ | 11%<br>% |
| Cyclobenzaprine<br>HCL<br>10 Mg Tab 100's | 00378-0751-01 | $6.76<br>$<br>$ | $3.79 | $2.97<br>$ | 44%<br>% |
| Cyclobenzaprine<br>HCL<br>10 Mg Tab 1000's | 00378-0751-10 | $52.27<br>$<br>$ | $28.09 | $24.18<br>$ | 46%<br>% |
| Diazepam<br>2 Mg Tab 100's | 00378-0271-01 | $2.24<br>$<br>$ | $1.44 | $0.80<br>$ | 36%<br>% |
| Diazepam<br>2 Mg Tab 500's | 00378-0271-05 | $9.52<br>$<br>$ | $4.37 | $5.15<br>$ | 54%<br>% |
| Diazepam<br>5 Mg Tab 100's | 00378-0345-01 | $2.35<br>$<br>$ | $1.54 | $0.81<br>$ | 34%<br>% |
| Diazepam<br>5 Mg Tab 500's | 00378-0345-05 | $10.08<br>$<br>$ | $4.90 | $5.18<br>$ | 51%<br>% |

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Diazepam 10 Mg Tab 100's | 00378-0477-01 | $2.57<br>$<br>$ | $1.86 | $0.71<br>$ | 28%<br>% |
| Diazepam 10 Mg Tab 500's | 00378-0477-05 | $11.20<br>$<br>$ | $5.86 | $5.34<br>$ | 48%<br>% |
| Diclofenac Potassium 50 Mg 100's | 00378-2474-01 | $87.36<br>$<br>$ | $26.31 | $61.05<br>$ | 70%<br>% |
| Dicyclomine HCL 10 Mg Caps 100's | 00378-1610-01 | $9.12<br>$<br>$ | $4.74 | $4.38<br>$ | 48%<br>% |
| Dicyclomine HCL 10 Mg Caps 500's | 00378-1610-05 | $44.24<br>$<br>$ | $22.15 | $22.09<br>$ | 50%<br>% |
| Dicyclomine HCL 20 MG Tabs 100's | 00378-1620-01 | $11.36<br>$<br>$ | $6.23 | $5.13<br>$ | 45%<br>% |
| Dicyclomine HCL 20 MG Tabs 500's | 00378-1620-05 | $55.16<br>$<br>$ | $28.12 | $27.04<br>$ | 49%<br>% |
| Diltiazem HCL 30 Mg Tab 100's | 00378-0023-01 | $5.95<br>$<br>$ | $2.88 | $3.07<br>$ | 52%<br>% |
| Diltiazem HCL 30 MG Tab 500's | 00378-0023-05 | $23.80<br>$<br>$ | $12.57 | $11.23<br>$ | 47%<br>% |

124

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost<br>(in or about<br>January<br>2001) | WEAC<br>Provider's<br>Gross Profit<br>$<br>DEAC<br>Provider's<br>Gross Profit<br>$ | WEAC<br>Provider's Gross<br>Profit %<br>DEAC<br>Provider's Gross<br>Profit % |
| Diltiazem HCL<br>60 Mg Tab 100's | 00378-0045-01 | $8.61<br>$<br>$ | $5.06 | $3.55<br>$ | 41%<br>% |
| Diltiazem HCL<br>60 MG Tab 500's | 00378-0045-05 | $41.02<br>$<br>$ | $23.59 | $17.43<br>$ | 42%<br>% |
| Diltiazem HCL<br>90 Mg Tab 100's | 00378-0135-01 | $10.99<br>$<br>$ | $7.99 | $3.00<br>$ | 27%<br>% |
| Diltiazem HCL<br>90 MG Tab 500's | 00378-0135-05 | $52.33<br>$<br>$ | $37.49 | $14.84<br>$ | 28%<br>% |
| Diltiazem HCL<br>120 Mg Tab 100's | 00378-0525-01 | $17.39<br>$<br>$ | $10.38 | $7.01<br>$ | 40%<br>% |
| Diltiazem HCL Er<br>60 MG Cap 100's | 00378-6060-01 | $54.60<br>$<br>$ | $24.54 | $30.06<br>$ | 55%<br>% |
| Diltiazem HCL ER<br>90 Mg Cap 100's | 00378-6090-01 | $62.44<br>$<br>$ | $35.91 | $26.53<br>$ | 42%<br>% |
| Diltiazem HCL ER<br>120 Mg Cap 100's | 00378-6120-01 | $81.36<br>$<br>$ | $52.56 | $28.80<br>$ | 35%<br>% |
| Diltiazem HCL ER<br>180 Mg Cap DT<br>500's | 00378-5280-05 | $347.20<br>$<br>$ | $224.25 | $122.95<br>$ | 35%<br>% |

125

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>——<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>——<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>——<br>DEAC Provider's Gross Profit % |
| Diltiazem HCL ER 240 Mg Cap DT 100's | 00378-5340-01 | $82.88<br>$<br>$ | $51.72 | $31.61<br>$ | 38%<br>% |
| Diltiazem HCL ER 240 MG Cap DT 500's | 00378-5340-05 | $411.60<br>$<br>$ | $245.08 | $166.52<br>$ | 40%<br>% |
| Diphenoxyliatropine 2.5/.025 100's | 00378-0415-01 | $33.25<br>$<br>$ | $18.37 | $14.88<br>$ | 45%<br>% |
| Diphenoxyliatropine 2.5/.025 1000's | 00378-0415-10 | $282.46<br>$<br>$ | $165.34 | $117.12<br>$ | 41%<br>% |
| Fluphenazine HCL 1 mg Tab 100's | 00378-6004-01 | $14.00<br>$<br>$ | $9.35 | $4.65<br>$ | 33%<br>% |
| Fluphenazine HCL 1 mg Tab 500's | 00378-6004-05 | $67.20<br>$<br>$ | $40.50 | $26.70<br>$ | 40%<br>% |
| Fluphenazine HCL 2.5 mg Tab 100's | 00378-6009-01 | $20.72<br>$<br>$ | $12.73 | $7.99<br>$ | 39%<br>% |
| Fluphenazine HCL 2.5 mg Tab 500's | 00378-6009-05 | $100.80<br>$<br>$ | $68.77 | $32.03<br>$ | 32%<br>% |
| Fluphenazine HCL 5 mg Tab 100's | 00378-6074-01 | $27.44<br>$<br>$ | $16.26 | $11.18<br>$ | 41%<br>% |

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Fluphenazine HCL 5 mg Tab 500's | 00378-6074-05 | $134.40<br>$<br>$ | $80.39 | $54.01<br>$ | 40%<br>% |
| Fluphenazine HCL 10 mg Tab 100's | 00378-6097-01 | $40.88<br>$<br>$ | $20.95 | $19.93<br>$ | 49%<br>% |
| Fluphenazine Hcl 10 mg Tab 500's | 00378-6097-05 | $201.60<br>$<br>$ | $96.40 | $105.20<br>$ | 52%<br>% |
| Flurazepam Hcl 15 mg Cap 100's | 00378-4415-01 | $5.88<br>$<br>$ | $4.69 | $1.19<br>$ | 20%<br>% |
| Flurbiprofen 50 mg Tab 100's | 00378-0076-01 | $16.80<br>$<br>$ | $9.97 | $6.83<br>$ | 41%<br>% |
| Flurbiprofen 100 mg Tab 100's | 00378-0093-01 | $27.44<br>$<br>$ | $15.09 | $12.35<br>$ | 45%<br>% |
| Flurbiprofen 100 mg Tab 500's | 00378-0093-05 | $134.40<br>$<br>$ | $71.36 | $63.04<br>$ | 47%<br>% |
| Furosemide 20 mg Tab 100's | 00378-0208-01 | $2.35<br>$<br>$ | $1.83 | $0.52<br>$ | 22%<br>% |
| Furosemide 20 mg Tab 1000's | 00378-0208-10 | $17.92<br>$<br>$ | $13.63 | $4.29<br>$ | 24%<br>% |

127

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Furosemide 40 mg Tab 100's | 00378-0216-01 | $2.80<br>$<br>$ | $2.16 | $0.64<br>$ | 23%<br>% |
| Furosemide 40 mg Tab 1000's | 00378-0216-10 | $22.40<br>$<br>$ | $17.04 | $5.36<br>$ | 24%<br>% |
| Furosemide 80 mg Tab 100's | 00378-0232-01 | $5.26<br>$<br>$ | $4.06 | $1.20<br>$ | 23%<br>% |
| Furosemide 80 mg Tab 500's | 00378-0232-05 | $23.52<br>$<br>$ | $17.89 | $5.63<br>$ | 24%<br>% |
| Glipizide 5 mg Tab 100's | 00378-1105-01 | $7.11<br>$<br>$ | $3.59 | $3.52<br>$ | 50%<br>% |
| Glipizide 5 mg Tab 500's | 00378-1105-05 | $33.60<br>$<br>$ | 14.30 | $19.30<br>$ | 57%<br>% |
| Glipizide 10 mg Tab 100's | 00378-1110-01 | $10.41<br>$<br>$ | $5.56 | $4.85<br>$ | 47%<br>% |
| Glipizide 10 mg Tab 500's | 00378-1110-05 | $49.28<br>$<br>$ | $21.30 | $27.98<br>$ | 57%<br>% |
| Glyburide 1.5 mg Tab 100's | 00378-1113-01 | $19.88<br>$<br>$ | $5.64 | $14.24<br>$ | 72%<br>% |

128

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost<br>(in or about<br>January<br>2001) | WEAC<br>Provider's<br>Gross Profit<br>$<br><br>DEAC<br>Provider's<br>Gross Profit<br>$ | WEAC<br>Provider'<br>s Gross<br>Profit %<br><br>DEAC<br>Provider'<br>s Gross<br>Profit % |
| Glyburide<br>3 mg Tab 100's | 00378-1125-01 | $25.20<br>$<br>$ | $7.67 | $17.53<br>$ | 70%<br>% |
| Glyburide<br>3 mg Tab 1000's | 00378-1125-10 | $235.20<br>$<br>$ | $72.85 | $162.35<br>$ | 69%<br>% |
| Glyburide<br>6 mg 100's | 00378-1142-01 | $64.96<br>$<br>$ | $22.42 | $42.54<br>$ | 65%<br>% |
| Guanfacine<br>1 mg Tab 100's | 00378-1160-01 | $39.20<br>$<br>$ | $14.75 | $24.45<br>$ | 62%<br>% |
| Guanfacine<br>2 mg Tab 100's | 00378-1190-01 | $53.76<br>$<br>$ | $20.02 | $33.74<br>$ | 63%<br>% |
| Hydroxychloroquine<br>200 mg Tab 100's | 00378-0373-01 | $63.72<br>$<br>$ | $28.40 | $35.32<br>$ | 55%<br>% |
| Indapamide<br>1.25 mg Tab 100's | 00378-0069-01 | $8.91<br>$<br>$ | $4.48 | $4.43<br>$ | 50%<br>% |
| Indapamide<br>1.25 mg Tab 500's | 00378-0069-05 | $38.31<br>$<br>$ | $21.30 | $17.01<br>$ | 44%<br>% |
| Indapamide<br>2.5 mg Tab 100's | 00378-0080-01 | $11.76<br>$<br>$ | $7.38 | $4.38<br>$ | 37%<br>% |

CIVIL ACTION NO. 00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br><br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br><br>DEAC Provider's Gross Profit % |
| Indapamide 2.5 mg Tab 1000's | 00378-0080-10 | $110.88<br>$<br>$ | $61.48 | $49.40<br>$ | 45%<br>% |
| Indomethacin 25 mg Cap 100's | 00378-0143-01 | $3.30<br>$<br>$ | $2.61 | $0.69<br>$ | 21%<br>% |
| Indomethacin 25 mg Cap 1000's | 00378-0143-10 | $28.56<br>$<br>$ | $22.79 | $5.77<br>$ | 20%<br>% |
| Indomethacin 50 mg Cap 100's | 00378-0147-01 | $4.76<br>$<br>$ | $3.78 | $0.98<br>$ | 21%<br>% |
| Indomethacin 50 mg Cap 500's | 00378-0147-05 | $21.56<br>$<br>$ | $17.20 | $4.36<br>$ | 20%<br>% |
| Ketoconazole 200 mg Tabs 100's | 00378-0261-01 | $207.20<br>$<br>$ | $64.91 | $142.29<br>$ | 69%<br>% |
| Ketoprofen 50 mg Cap 100's | 00378-4070-01 | $15.79<br>$<br>$ | $8.00 | $7.79<br>$ | 49%<br>% |
| Ketoprofen 75 mg Cap 100's | 00378-5750-01 | $18.53<br>$<br>$ | $9.56 | $8.97<br>$ | 48%<br>% |
| Ketorolac Tromethamine 10 mg 100's | 00378-1134-01 | $72.46<br>$<br>$ | $44.98 | $27.48<br>$ | 38%<br>% |

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Lactulose Solution 10 gm/15 ml 8 oz | 00378-3331-70 | $5.76<br>$<br>$ | $3.32 | $2.44<br>$ | 42%<br>% |
| Lactulose Solution 10 gm/15 ml 16 oz | 00378-3331-72 | $10.58<br>$<br>$ | $4.97 | $5.61<br>$ | 53%<br>% |
| Lactulose Solution 10 gm/15 ml 32 oz | 00378-3331-74 | $20.71<br>$<br>$ | $8.88 | $11.83<br>$ | 57%<br>% |
| Loperamide HCL 2 mg Cap 100's | 00378-2100-01 | $11.20<br>$<br>$ | $7.26 | $3.94<br>$ | 35%<br>% |
| Loperamide HCL 2 mg Cap 500's | 00378-2100-05 | $52.64<br>$<br>$ | $33.97 | $18.67<br>$ | 35%<br>% |
| Lorazepam 0.5 mg Tab 100's | 3078-0321-01 | $34.27<br>$<br>$ | $14.16 | $20.11<br>$ | 59%<br>% |
| Lorazepam 1.0 mg Tab 100's | 00378-0457-01 | $45.02<br>$<br>$ | $18.00 | $27.02<br>$ | 60%<br>% |
| Lorazepam 1.0 mg Tab 500's | 00378-0457-05 | $214.48<br>$<br>$ | $85.47 | $129.01<br>$ | 60%<br>% |
| Lorazepam 1.0 mg Tab 1000's | 00378-0457-10 | $423.80<br>$<br>$ | $161.99 | $261.81<br>$ | 62%<br>% |

131

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Lorazepam 2.0 mg Tab 100's | 3078-0777-01 | $66.75<br>$<br>$ | $27.16 | $39.59<br>$ | 59%<br>% |
| Lorazepam 2.0 mg Tab 500s | 00378-0777-05 | $319.42<br>$<br>$ | $129.02 | $190.40<br>$ | 60%<br>% |
| Methotrexate 2.5 mg Tab 100's | 00378-0014-01 | $94.36<br>$<br>$ | $42.01 | $52.35<br>$ | 55%<br>% |
| Methyldopa 250 mg Tab 100's | 00378-0611-01 | $7.56<br>$<br>$ | $6.53 | $1.03<br>$ | 14%<br>% |
| Nadolol 20 mg Tab 100's | 00378-0028-01 | $34.72<br>$<br>$ | $7.25 | $27.47<br>$ | 79%<br>% |
| Nadolol 40 mg Tab 100's | 00378-1171-01 | $43.12<br>$<br>$ | $11.97 | $31.15<br>$ | 72%<br>% |
| Nadolol 40 mg Tab 1000's | 00378-1171-10 | $424.48<br>$<br>$ | $113.14 | $311.34<br>$ | 73%<br>% |
| Nadolol 80 mg Tab 100's | 00378-1132-01 | $59.92<br>$<br>$ | $20.16 | $39.76<br>$ | 66%<br>% |
| Nadolol 80 mg Tab 1000's | 00378-1132-10 | $592.48<br>$<br>$ | $195.07 | $397.41<br>$ | 67%<br>% |

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Nicardipine HCL 20 mg Cap 90's | 00378-1020-77 | $27.47<br>$<br>$ | $8.84 | $18.63<br>$ | 68%<br>% |
| Nicardipine HCL 20 mg Cap 500's | 00378-1020-05 | $133.31<br>$<br>$ | $46.65 | $86.66<br>$ | 65%<br>% |
| Nicardipine HCL 30 mg Cap 90's | 00378-1430-77 | $43.70<br>$<br>$ | $14.86 | $28.84<br>$ | 66%<br>% |
| Nicardipine HCL 30 mg Cap 500's | 00378-1430-05 | $211.89<br>$<br>$ | $78.38 | $133.51<br>$ | 63%<br>% |
| Nitrofurantoin 50 mg Cap 100's | 00378-1650-01 | $37.80<br>$<br>$ | $17.68 | $20.12<br>$ | 53%<br>% |
| Nitrofurantoin 50 mg Cap 500's | 00378-1650-05 | $179.73<br>$<br>$ | $83.98 | $95.75<br>$ | 53%<br>% |
| Nitrofurantoin 10 mg Cap 100's | 00378-1700-01 | $63.26<br>$<br>$ | $31.42 | $31.84<br>$ | 50%<br>% |
| Nortriptyline HCL 10 mg Cap 100's | 00378-1410-01 | $7.78<br>$<br>$ | $3.73 | $4.05<br>$ | 52%<br>% |
| Nortriptyline HCL 25 mg Cap 100's | 00378-2325-01 | $10.75<br>$<br>$ | $5.38 | $5.37<br>$ | 50%<br>% |

133

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>___<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>___<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>___<br>DEAC Provider's Gross Profit % |
| Nortriptyline HCL 50 mg Cap 100's | 00378-3250-01 | $13.10<br>$<br>$ | $6.75 | $6.35<br>$ | 48%<br>% |
| Nortriptyline HCL 75 mg Cap 100's | 00378-4175-01 | $16.74<br>$<br>$ | $8.40 | $8.34<br>$ | 50%<br>% |
| Orphenadrine Citrate ER 100 mg 100's | 00378-3358-01 | $136.08<br>$<br>$ | $64.91 | $71.17<br>$ | 52%<br>% |
| Orphenadrine Citrate ER 100 mg 500's | 00378-3358-05 | $668.58<br>$<br>$ | $308.32 | $360.26<br>$ | 54%<br>% |
| Orphenadrine W/AC 385/30/26 mg 100's | 00378-3354-01 | $61.60<br>$<br>$ | $21.30 | $40.30<br>$ | 65%<br>% |
| Orphenadrine W/AC 770/60/50 mg 100's | 00378-3356-01 | $89.60<br>$<br>$ | $28.40 | $61.20<br>$ | 68%<br>% |
| Pentoxifyline ER 400 mg Tab 100's | 00378-0357-01 | $43.13<br>$<br>$ | $15.82 | $27.31<br>$ | 63%<br>% |
| Pindolol 5 mg Tab 100's | 00378-0052-01 | $14.50<br>$<br>$ | $5.56 | $8.94<br>$ | 62%<br>% |
| Pindolol 10 mg Tab 100's | 00378-0127-01 | $18.98<br>$<br>$ | $8.65 | $10.33<br>$ | 54%<br>% |

134

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Piroxicam 10 mg Cap 100's | 00378-1010-01 | $6.65<br>$<br>$ | $3.61 | $3.04<br>$ | 46%<br>% |
| Piroxicam 20 mg Cap 100's | 00378-2020-01 | $8.44<br>$<br>$ | $4.38 | $4.06<br>$ | 48%<br>% |
| Piroxicam 20 mg Cap 500's | 00378-2020-05 | $37.55<br>$<br>$ | $19.53 | $18.02<br>$ | 48%<br>% |
| Prazosin HCL 1 mg Cap 100's | 00378-1101-01 | $6.16<br>$<br>$ | $3.67 | $2.49<br>$ | 40%<br>% |
| Prazosin HCL 1 mg Cap 1000's | 00378-1101-10 | $55.72<br>$<br>$ | $3.67 | $52.05<br>$ | 93%<br>% |
| Prazosin HCL 2 mg Cap 100's | 00378-2302-01 | $7.78<br>$<br>$ | $4.21 | $3.57<br>$ | 46%<br>% |
| Prazosin HCL 2 mg Cap 1000's | 00378-2302-10 | $69.16<br>$<br>$ | $35.68 | $33.48<br>$ | 49%<br>% |
| Prazosin HCL 5 mg Cap 100's | 00378-3205-01 | $12.88<br>$<br>$ | $7.56 | $5.32<br>$ | 41%<br>% |
| Prazosin HCL 5 mg Cap 250's | 00378-3205-25 | $30.18<br>$<br>$ | $19.44 | $10.74<br>$ | 36%<br>% |

135

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Probenecio 500 mg Tab 100's | 00378-0156-01 | $55.44<br>$<br>$ | $37.28 | $18.16<br>$ | 33%<br>% |
| Prochlorperazine MAL 5 mg 100's | 00378-5105-01 | $35.84<br>$<br>$ | $18.07 | $17.77<br>$ | 50%<br>% |
| Prochlorperazine MAL 10 mg 100's | 00378-5110-01 | $53.76<br>$<br>$ | $27.24 | $26.52<br>$ | 49%<br>% |
| Propoxyphene /APAP 65/650 Tab 100's | 00378-0130-01 | $12.60<br>$<br>$ | $7.07 | $5.53<br>$ | 44%<br>% |
| Propoxyphene /APAP 65/650 Tab 500's | 00378-0130-05 | $59.80<br>$<br>$ | $30.32 | $29.78<br>$ | 50%<br>% |
| Propranolol HCL 10 mg Tab 100's | 00378-0182-01 | $3.69<br>$<br>$ | $2.08 | $1.61<br>$ | 44%<br>% |
| Propranolol HCL 10 mg Tab 1000's | 00378-0182-10 | $25.76<br>$<br>$ | $8.58 | $17.18<br>$ | 67%<br>% |
| Propranolol HCL 20 mg Tab 100's | 00378-0183-01 | $4.03<br>$<br>$ | $2.38 | $1.65<br>$ | 41%<br>% |
| Propranolol HCL 20 mg Tab 1000's | 00378-0183-10 | $29.12<br>$<br>$ | $9.47 | $19.65<br>$ | 67%<br>% |

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Propranolol HCL 40 mg Tab 100's | 00378-0184-01 | $5.15<br>$<br>$ | $2.84 | $2.31<br>$ | 45%<br>% |
| Propranolol HCL 40 mg Tab 1000's | 00378-0184-10 | $40.32<br>$<br>$ | $17.17 | $23.15<br>$ | 57%<br>% |
| Propranolol HCL 80 mg Tab 100's | 00378-0185-01 | $8.51<br>$<br>$ | $3.49 | $5.02<br>$ | 59%<br>% |
| Propranolol HCL 80 mg Tab 500's | 00378-0185-05 | $38.08<br>$<br>$ | $13.03 | $25.05<br>$ | 66%<br>% |
| Propranolol HCTZ 25 - 40 mg Tab 100's | 00378-0731-01 | $5.88<br>$<br>$ | $3.05 | $2.83<br>$ | 48%<br>% |
| Propranolol HCTZ 25 - 80 mg Tab 100's | 00378-0347-01 | $8.73<br>$<br>$ | $4.47 | $4.26<br>$ | 49%<br>% |
| Ranitidine 150 mg Tab 60's | 00378-3252-91 | $15.67<br>$<br>$ | $4.36 | $11.31<br>$ | 72%<br>% |
| Ranitidine 150 mg Tab 100's | 00378-3252-01 | $25.48<br>$<br>$ | $7.34 | $18.14<br>$ | 71%<br>% |
| Ranitidine 150 mg Tab 500's | 00378-3252-05 | $123.20<br>$<br>$ | $34.88 | $88.32<br>$ | 72%<br>% |

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Ranitidine 300 mg Tab 30's | 00378-3254-93 | $15.68<br>$<br>$ | $5.33 | $10.35<br>$ | 66%<br>% |
| Ranitidine 300 mg Tab 100's | 00378-3254-01 | $50.96<br>$<br>$ | $15.98 | $34.98<br>$ | 69%<br>% |
| Ranitidine 300 mg Tab 500's | 00378-3254-05 | $246.40<br>$<br>$ | $81.52 | $164.88<br>$ | 67%<br>% |
| Spironolactone 25 mg Tab 100's | 00378-2146-01 | $22.40<br>$<br>$ | $11.91 | $10.49<br>$ | 47%<br>% |
| Spironolactone 25 mg Tab 500's | 00378-2146-05 | $105.28<br>$<br>$ | $55.55 | $49.73<br>$ | 47%<br>% |
| Spironolactone/HCTZ 25/25 Tab 100's | 00378-0141-01 | $24.08<br>$<br>$ | $13.23 | $10.85<br>$ | 45%<br>% |
| Spironolactone/HCTZ 25/25 Tab 500's | 00378-0141-05 | $113.68<br>$<br>$ | $62.16 | $51.52<br>$ | 45%<br>% |
| Terazosin HCL 10 mg Cap 100's | 00378-1570-01 | $125.83<br>$<br>$ | $41.27 | $84.56<br>$ | 67%<br>% |
| Terazosin HCL 1 mg Cap 100's | 00378-2260-01 | $125.83<br>$<br>$ | $41.27 | $84.56<br>$ | 67%<br>% |

138

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Terazosin HCL<br>2 mg Cap 100's | 00378-2264-01 | $125.83<br>$<br>$ | $41.27 | $84.56<br>$ | 67%<br>% |
| Terazosin HCL<br>5 mg Cap 100's | 00378-2268-01 | $125.83<br>$<br>$ | $41.27 | $84.56<br>$ | 67%<br>% |
| Thioridazine HCL<br>10 mg Tab 100's | 00378-0612-01 | $11.53<br>$<br>$ | $6.28 | $5.25<br>$ | 46%<br>% |
| Thioridazine HCL<br>10 mg Tab 1000's | 00378-0612-10 | $106.40<br>$<br>$ | $61.54 | $44.86<br>$ | 42%<br>% |
| Thioridazine HCL<br>25 mg Tab 100's | 00378-0614-01 | $13.55<br>$<br>$ | $7.82 | $5.73<br>$ | 42%<br>% |
| Thioridazine HCL<br>25 mg Tab 1,000's | 00378-0614-10 | $126.56<br>$<br>$ | $73.37 | $53.19<br>$ | 42%<br>% |
| Thioridazine HCL<br>50 mg Tab 100's | 00378-0616-01 | $21.67<br>$<br>$ | $11.44 | $10.23<br>$ | 47%<br>% |
| Thioridazine HCL<br>50 mg Tab 1000's | 00378-0616-10 | $207.76<br>$<br>$ | $120.71 | $87.05<br>$ | 42%<br>% |
| Thioridazine HCL<br>100 mg Tab 100's | 00378-0618-01 | $28.56<br>$<br>$ | $15.64 | $12.92<br>$ | 45%<br>% |

CIVIL ACTION NO. 00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC / DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ / DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % / DEAC Provider's Gross Profit % |
| Thioridazine HCL 100 mg Tab 1000's | 00378-0618-10 | $276.64 $ $ | $160.35 | $116.29 $ | 42% % |
| Thiothixene 1 mg Cap 100's | 00378-1001-01 | $6.66 $ $ | $3.89 | $2.77 $ | 42% % |
| Thiothixene 2 mg Cap 100's | 00378-2002-01 | $8.90 $ $ | $5.15 | $3.75 $ | 42% % |
| Thiothixene 2 mg Cap 1,000's | 00378-2002-10 | $78.34 $ $ | $51.18 | $27.16 $ | 35% % |
| Thiothixene 5 mg Cap 100's | 00378-3005-01 | $12.60 $ $ | $7.60 | $5.00 $ | 40% % |
| Thiothixene 5 mg Cap 1000's | 00378-3005-10 | $117.60 $ $ | $73.13 | $44.47 $ | 38% % |
| Thiothixene 10 mg Cap 100's | 00378-5010-01 | $18.76 $ $ | $10.65 | $8.11 $ | 43% % |
| Thiothixene 10 mg Cap 1,000's | 00378-5010-10 | $173.60 $ $ | $111.83 | $61.77 $ | 36% % |
| Timolol Maleate 5 mg Tab 100's | 00378-0055-01 | $12.88 $ $ | $8.23 | $4.65 $ | 36% % |

140

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br><br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br><br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br><br>DEAC Provider's Gross Profit % |
| Timolol Maleate 10 mg Tab 100's | 00378-0221-01 | $17.86<br>$<br>$ | $12.55 | $5.31<br>$ | 30%<br>% |
| Timolol Maleate 20 mg Tab 100's | 00378-0715-01 | $35.78<br>$<br>$ | $22.37 | $13.41<br>$ | 37%<br>% |
| Tolazamide 25 mg Tab 100's | 00378-0217-01 | $9.52<br>$<br>$ | $6.17 | $3.35<br>$ | 35%<br>% |
| Tolazamide 500 mg Tab 100's | 00378-0551-01 | $18.48<br>$<br>$ | $11.46 | $7.02<br>$ | 38%<br>% |
| Tolbutamide 500 mg Tab 100's | 00378-0215-01 | $13.78<br>$<br>$ | $7.40 | $6.38<br>$ | 46%<br>% |
| Tolbutamide 500 mg Tab 500's | 00378-0215-05 | $67.59<br>$<br>$ | $34.61 | $32.98<br>$ | 49%<br>% |
| Triamter/HCTZ 37.5/25 Cap 100's | 00378-2537-01 | $23.76<br>$<br>$ | $11.18 | $12.58<br>$ | 53%<br>% |
| Triamter/HCTZ 37.5/25 Cap 1000's | 00378-2537-10 | $228.43<br>$<br>$ | $106.23 | $122.20<br>$ | 53%<br>% |
| TriamterHCTZ 37.5/25 Tab 100's | 00378-1352-01 | $22.84<br>$<br>$ | $10.35 | $12.49<br>$ | 55%<br>% |

141

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Triamter/HCTZ 37.5/25 Tab 500's | 00378-1352-05 | $111.09<br>$<br>$ | $44.85 | $66.24<br>$ | 60%<br>% |
| Triamter/HCTZ 75/50 Tab 100's | 00378-1355-01 | $4.48<br>$<br>$ | $2.53 | $1.95<br>$ | 44%<br>% |
| Triamter/HCTZ 75/50 Tab 500's | 00378-1355-05 | $20.16<br>$<br>$ | $9.41 | $10.75<br>$ | 53%<br>% |
| Trifluoperazine HCL 1 mg 100's | 00378-2401-01 | $18.16<br>$ | $10.60 | $7.56<br>$ | 42%<br>% |
| Trifluoperazine HCL 2 mg 100's | 00378-2402-01 | $26.52<br>$<br>$<br>$ | $15.34 | $11.18<br>$ | 42%<br>% |
| Trifluoperazine HCL 5 mg 100's | 00378-2405-01 | $31.88<br>$<br>$ | $17.73 | $14.15<br>$ | 44%<br>% |
| Trifluoperazine HCL 5 mg 500's | 00378-2405-05 | $141.89<br>$<br>$ | $84.24 | $57.65<br>$ | 41%<br>% |
| Trifluoperazine HCL 10 mg 100's | 00378-2410-01 | $40.34<br>$<br>$ | $23.59 | $16.75<br>$ | 42%<br>% |
| Trifluoperazine HCL 10 mg 500's | 00378-2410-05 | $181.54<br>$<br>$ | $112.04 | $69.50<br>$ | 38%<br>% |

142

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Verapamil 80 mg Tab 100's | 00378-0512-01 | $4.64<br>$<br>$ | $3.49 | $1.15<br>$ | 25%<br>% |
| Verapamil 80 mg Tab 1000's | 00378-0512-10 | $40.60<br>$<br>$ | $30.71 | $9.89<br>$ | 24%<br>% |
| Verapamil 120 mg Tab 500's | 00378-0772-05 | $31.69<br>$<br>$ | $21.90 | $9.79<br>$ | 31%<br>% |
| Verapamil HCL ER 120 mg Tab (Isoptin) 100's | 00378-1120-01 | $67.43<br>$<br>$ | $45.26 | $22.17<br>$ | 33%<br>% |
| Verapamil HCL ER 240 mg Tab (Isoptin) 100's | 00378-0411-01 | $20.16<br>$<br>$ | $13.61 | $6.55<br>$ | 32%<br>% |
| Verapamil HCL ER 240 mg Tab (isoptin) 500's | 00378-0411-05 | $87.92<br>$<br>$ | $58.29 | $29.63<br>$ | 34%<br>% |
| Verapamil HCL ER 120 mg Caps (Verelan) 100's | 00378-6320-01 | $61.60<br>$<br>$ | $41.27 | $20.33<br>$ | 33%<br>% |
| Verapamil HCL ER 180 mg Caps (Verelan) 100's | 00378-6380-01 | $64.96<br>$<br>$ | $44.84 | $20.12<br>$ | 31%<br>% |

CIVIL ACTION NO. 00 CV 10698 MEL

| DEFENDANT MYLAN PHARMACEUTICALS | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $<br><br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br><br>DEAC Provider's Gross Profit % |
| Verapamil HCL ER 240 mg Caps (Verelan) 100's | 00378-6440-01 | $73.92<br>$<br>$ | $49.52 | $24.40<br>$ | 33%<br>% |

171.    In addition to falsely inflating its drug price representations for Medicaid

reimbursement purposes, DEFENDANT MYLAN PHARMACEUTICALS failed to pay

the States' Medicaid programs the full amount of the Medicaid rebate required by 42

U.S.C. §1396r-8(b)(1)(A) for drugs specified herein.   Medicaid rebate amounts are

intended to enable the Medicaid programs to benefit from the best drug prices available

to large commercial customers.   DEFENDANT MYLAN PHARMACEUTICALS was

required to truthfully report Average Manufacturers Prices (AMP) for the specified drugs

to CMS  pursuant to 42 U.S.C. §1396r-8(b)(3)(A) and  42 U.S.C. §1396r-8(b)(3)(C)(ii).

The Medicaid rebate amount is sufficient to meet the intent of the Rebate Statute only

when MYLAN's WAC amounts, used for reimbursement, are also truthfully reported.

MYLAN's AMP reports for the specified drugs are excessively less than its reports of

WAC.  Accordingly, MYLAN's false reports of prices include any AMPs that it

understated and/or WACs that it overstated.  The Federal Government's expenditures

increased as a direct result of DEFENDANT MYLAN PHARMACEUTICALS'

144

underpayment of its Medicaid rebate obligations, and/or manipulation of Medicaid

reimbursement amounts.

172.    As a direct and proximate result of the actions of the DEFENDANT

MYLAN PHARMACEUTICALS alleged herein, the UNITED STATES has sustained

damages recoverable under the False Claims Act, together with treble damages,

penalties, attorneys' fees and costs.

## SECTION NO. 17
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## ROXANE AS TO MEDICAID

173.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT ROXANE knowingly caused the States' Medicaid

programs  to pay false or fraudulent claims for drugs specified in this Section and

further made or used false or fraudulent records and/or statements to get such claims

paid or approved.  As a result of the actions of DEFENDANT ROXANE and those

persons and entities acting directly or indirectly in concert with DEFENDANT ROXANE,

the States' Medicaid programs paid grossly excessive, unreasonable and unlawful

amounts for claims for the drugs specified in this Section.  The acts committed by

DEFENDANT ROXANE that caused the States' Medicaid programs to pay or approve

said false or fraudulent claims included, but were not necessarily limited to, knowingly

making false or fraudulent representations about the wholesaler prices of the drugs

specified in this Section which DEFENDANT ROXANE knew would be used by the

States' Medicaid programs in paying or approving claims for the drugs specified in this

CIVIL ACTION NO.  00 CV 10698 MEL

Section.  Each of said representations was in fact used by the States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.

174.    DEFENDANT ROXANE knowingly caused its false or fraudulent

wholesaler price representations to be transmitted by First Data Bank's automated

services, made or used false records or statements regarding its wholesaler prices of

the drugs specified in this section and submitted them to the States' Medicaid programs

continuously throughout the years specified in this section.  Within this paragraph is a

table, organized by drug and NDC number, which reflects the recent false wholesaler

prices in First Data Bank's automated services.  The information in the table under the

heading "ROXANE'S Reported False WACs" reflects DEFENDANT ROXANE'S false

representations of price it charged wholesalers for drugs.  The heading "Relator's Cost"

reflects the true price that DEFENDANT ROXANE charged the Relator for the drug or

caused another entity to charge the Relator for the drug.

| DRUG STRENGTH  & SIZE, NDC#s | ROXANE'S REPORTED FALSE WACs | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| IPRATROPIUM BROMIDE 2.5ml 25's 00054-8402-11 | $15.45 | $11.70 |

175.    The false price and cost representations, as they were submitted to the

State of Texas on or after April 7, 1994, are organized in a chart within this paragraph

by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),

"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit."  The amount

CIVIL ACTION NO.  00 CV 10698 MEL

under the heading "Relator's Cost" is the true price that DEFENDANT ROXANE

charged the Relator for the drug or caused another entity to charge the Relator for the

drug.  A comparison of the Relator's cost with DEFENDANT ROXANE'S price

representations shows the falsity of DEFENDANT ROXANE'S price representations for

the specified drugs.  Furthermore, the table shows the impact of DEFENDANT

ROXANE'S false statements because it shows health care providers made a profit for

prescribing DEFENDANT ROXANE'S drugs.  Texas Medicaid, which intended to pay

for drugs based upon estimated acquisition costs, never intended to pay the amounts

under the heading "Gross Profit."

| DEFENDANT ROXANE | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC<br>DEAC | RELATOR'S COST<br>(in or about March 2000) | WEAC Provider's Gross Profit $<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>DEAC Provider's Gross Profit % |
| Ipratropium Bromide 2.5 ml, 25's | 00054-8402-11 | 0.36736/ml<br>$22.96<br>.3608/ml<br>$22.55 | $11.70 | $11.24<br>$10.83 | 49%<br>48% |
| Ipratropium Bromide 2.5 ml, 60's | 00054-8402-21 | 0.36736/ml<br>$55.10<br>.360800/ml<br>$54.12 | $28.12 | $26.98<br>$26.00 | 49%<br>48% |

176.    As a direct and proximate result of the actions of the DEFENDANT

ROXANE alleged herein, the UNITED STATES has sustained damages recoverable

147

**CIVIL ACTION NO.  00 CV 10698 MEL**

under the False Claims Act, together with treble damages, penalties, attorneys' fees
and costs.

### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### ROXANE AS TO MEDICARE

177.   At various times from on or after April 7, 1994, and continuing through the
present date, DEFENDANT ROXANE knowingly caused the Medicare program  to pay
false or fraudulent claims for drugs specified in this Section and further made or used
false or fraudulent records and/or statements to get such claims paid or approved.  As a
result of the said actions of DEFENDANT ROXANE and those persons and entities
acting directly or indirectly in concert with DEFENDANT ROXANE, the Medicare
program paid grossly excessive,  unreasonable and unlawful amounts for claims for the
drugs specified in this Section.  The acts committed by DEFENDANT ROXANE that
caused the Medicare program to pay or approve said false or fraudulent claims
included, but were not necessarily limited to, knowingly making false or fraudulent
representations about prices and costs of the drugs specified in this Section which
DEFENDANT ROXANE knew or should have known would be used by the Medicare
program in paying or approving claims for the drugs specified in this Section.  Each of
said representations was in fact used by the Medicare program in paying or approving
claims for the drugs specified in this Section.

178.   DEFENDANT ROXANE knowingly caused its false or fraudulent price and
cost representations to be published in the years specified in this Section  in the Red

148

**CIVIL ACTION NO.  00 CV 10698 MEL**

Book and further made or used false records or statements regarding its prices and

costs of the drugs specified in this Section  and submitted same to the Medicare

program continuously throughout the years specified in this Section.   For the purposes

of specificity and particularity, the said false price and cost representations as they were

reflected in the Red Book have been organized into a chart form for each drug in

question .  The information provided under the columns for DEFENDANT's Published

Price, and Red Book  "AWP" and "DP" reflects the false price and cost representations

made by the DEFENDANT ROXANE.  The information under the Relator's Cost

columns reflects the true price that DEFENDANT ROXANE  charged the Relator for the

drug or caused another entity to charge the Relator for the drug.  As a very small

pharmacy, the Relator does not always receive the lowest prices available to volume

purchasers.  Accordingly, a comparison of the Relator's costs with the price and cost

representations made by the DEFENDANT ROXANE establishes the falsity of

ROXANE's representations for the drugs and years specified as follows:

## DRUG: IPRATROPIUM BROMIDE 0.02% Sol.
## HCPCS code J7645 & (K0518)
Medicare Units were converted from ml's to mg's for the years 1995, 1996, and 1997.
(5ml = 1mg) and 1998-2001 @95% of AWP

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|
| | | "AWP" | "DP" | | |
| 1999 | | $44.06 | | | $13.00 |
| 2000 | | $44.06 | | $11.70 | $8.50 |
| 2001 | | $44.06 | | $8.63 | $8.50 |
| 2002 | | | | | |

149

**CIVIL ACTION NO.  00 CV 10698 MEL**

179.     As a direct and proximate result of the actions of the DEFENDANT

ROXANE alleged herein, the UNITED STATES has sustained damages recoverable

under the False Claims Act, together with treble damages, penalties, attorneys' fees

and costs.

**SECTION NO. 18**
**THE SPECIFIC FALSE PRICE AND COST**
**REPRESENTATIONS OF DEFENDANT**
**SCHEIN AS TO MEDICAID**

180.    At various times from on or after April 7, 1994, and continuing through

the present date, DEFENDANT SCHEIN knowingly caused the States' Medicaid

programs to pay false or fraudulent claims for drugs specified in this Section and further

made or used false or fraudulent records and/or statements to get such claims paid or

approved.  As a result of the actions of DEFENDANT SCHEIN and those persons and

entities acting directly or indirectly in concert with DEFENDANT SCHEIN, the States'

Medicaid programs paid grossly excessive,  unreasonable and unlawful amounts for

claims for the drugs specified in this Section.  The acts committed by DEFENDANT

SCHEIN that caused the States' Medicaid programs to pay or approve said false or

fraudulent claims included, but were not necessarily limited to, knowingly making false

or fraudulent representations about the wholesaler prices of the drugs specified in this

Section which DEFENDANT SCHEIN knew would be used by the States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.  Each of

150

CIVIL ACTION NO.  00 CV 10698 MEL

said representations was in fact used by the States' Medicaid programs in paying or

approving claims for the drugs specified in this Section.

181.    DEFENDANT SCHEIN knowingly caused its false or fraudulent

wholesaler price representations to be transmitted by First Data Bank's automated

services, made or used false records or statements regarding its wholesaler prices of

the drugs specified in this section and submitted them to the States' Medicaid programs

continuously throughout the years specified in this section.  Within this paragraph is a

table, organized by drug and NDC number, which reflects the recent false wholesaler

prices in First Data Bank's automated services.  The information in the table under the

heading "SCHEIN'S False Reported WAC" reflects DEFENDANT SCHEIN'S false

representations of price it charged wholesalers for drugs.  The heading "Relator's Cost"

reflects the true price that DEFENDANT SCHEIN charged the Relator for the drug or

caused another entity to charge the Relator for the drug.

| DRUG STRENGTH & SIZE, NDC#s | SCHEIN'S FALSE REPORTED WAC | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| Methylphen 20 mg Tab 00364-0562-02 | $495.55 | $268.59 |
| Methylphen 20mg Tab 00364-0562-01 | $50.85 | $23.54 |
| Methylphen 5 mg Tab 00364-0561-02 | $241.65 | $138.50 |

151

**CIVIL ACTION NO.  00 CV 10698 MEL**

| DRUG STRENGTH  & SIZE, NDC#s | SCHEIN'S FALSE REPORTED WAC | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| Methylphen 5 mg Tab 00364-0561-01 | $24.80 | $11.59 |
| Lactulose Solution 10 g/15 ml Syrup/Ounce 00364-2519-32 | $17.40 | $10.64 |
| Orphenad ER 100 mg Tab 00364-2830-01 | $121.50 | $81.70 |
| Ketoprofen CP E 200 mg Cap 00364-2667-01 | $175.88 | $91.43 |
| Verapam SR 240 Mg Cap 00364-2884-01 | $89.55 | $49.25 |

182.    The false price and cost representations, as they were submitted to the

State of Texas on or after April 7, 1994, are organized in a chart within this paragraph

by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),

"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit." The amount

under the heading "Relator's Cost" is the true price that DEFENDANT SCHEIN charged

the Relator for the drug or caused another entity to charge the Relator for the drug.  A

comparison of the Relator's cost with DEFENDANT SCHEIN'S price representations

shows the falsity of DEFENDANT SCHEIN'S price representations for the specified

drugs.  Furthermore, the table shows the impact of DEFENDANT SCHEIN'S false

statements because it shows health care providers made a profit for prescribing

DEFENDANT SCHEIN'S drugs.  Texas Medicaid, which intended to pay for drugs

152

based upon estimated acquisition costs, never intended to pay the amounts under the

heading "Gross Profit."

| DEFENDANT SCHEIN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | WEAC DEAC | Relator's Cost (in or about January 2001) | WEAC Provider's Gross Profit $ DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit % DEAC Provider's Gross Profit % |
| Methylphen 20 mg Tab 1,000's | 00364-0562-02 | $555.01 $550.61 | $268.59 | $286.42 $282.02 | 52% 51% |
| Methylphen 20mg Tab 100's | 00364-0562-01 | $56.95 $56.50 | $23.54 | $33.41 $32.96 | 59% 58% |
| Methylphen 5 mg Tab 1,000's | 00364-0561-02 | $270.64 $268.50 | $138.50 | $132.14 $130.00 | 49% 48% |
| Methylphen 5 mg Tab 100's | 00364-0561-01 | $27.77 $27.59 | $11.59 | $16.18 $16.00 | 58% 58% |
| Lactulose Solution 10 g/15 ml Syrup/Ounce 946 ml | 00364-2519-32 | $19.48 $19.31 | $10.64 | $8.84 $8.67 | 45% 45% |
| Orphenad ER 100 mg Tab 100's | 00364-2830-01 | $136.08 $135.00 | $81.70 | $54.38 $53.30 | 40% 39% |
| Ketoprofen CP E 200 mg Cap 100's | 00364-2667-01 | $196.98 $185.14 | $91.43 | $105.55 $93.71 | 54% 51% |
| Verapam SR 240 Mg Cap 100's | 00364-2884-01 | $100.29 $99.50 | $49.25 | $51.04 $50.25 | 51% 51% |

183.   As a direct and proximate result of the actions of the DEFENDANT

SCHEIN alleged herein, the UNITED STATES has sustained damages recoverable

under the False Claims Act, together with treble damages, penalties, attorneys' fees

and costs.

### SECTION NO. 19
### THE SPECIFIC FALSE PRICE AND COST
### REPRESENTATIONS OF DEFENDANT
### SMITHKLINE AS TO MEDICARE AND MEDICAID

184.   At various times from on or after April 7, 1994, and continuing through the

present date, DEFENDANT SMITHKLINE knowingly caused the Medicare and States'

Medicaid programs to pay false or fraudulent claims for drugs specified in this Section

and further made or used false or fraudulent records and/or statements to get such

claims paid or approved.  As a result of the said actions of DEFENDANT SMITHKLINE

and those persons and entities acting directly or indirectly in concert with DEFENDANT

SMITHKLINE, the Medicare and States' Medicaid programs paid grossly excessive,

unreasonable and unlawful amounts for claims for the drugs specified in this Section.

The acts committed by DEFENDANT SMITHKLINE that caused the Medicare and

States' Medicaid programs to pay or approve said false or fraudulent claims included,

but were not necessarily limited to, knowingly making false or fraudulent

representations about prices and costs of the drugs specified in this Section which

DEFENDANT SMITHKLINE knew or should have known would be used by the

Medicare and States' Medicaid programs in paying or approving claims for the drugs

154

CIVIL ACTION NO.  00 CV 10698 MEL

specified in this Section.  Each of said representations was in fact used by the Medicare
and States' Medicaid programs in paying or approving claims for the drugs specified in
this Section.

185.   DEFENDANT SMITHKLINE knowingly caused its false or fraudulent price
and cost representations to be published in the years specified in this Section  in the
Red Book and further made or used false records or statements regarding its prices
and costs of the drugs specified in this Section  and submitted same to the Medicare
and States' Medicaid programs continuously throughout the years specified in this
Section.  For the purposes of specificity and particularity, the said false price and cost
representations as they were reflected in the Red Book have been organized into a
chart form for each drug in question . The information provided under the columns for
DEFENDANT's Published Price, and Red Book  "AWP" and "DP" reflects the false price
and cost representations made by the DEFENDANT SMITHKLINE. The information
under the Relator's Cost columns reflects the true price that DEFENDANT
SMITHKLINE  charged the Relator for the drug or caused another entity to charge the
Relator for the drug. As a very small pharmacy, the Relator does not always receive
the lowest prices available to volume purchasers. Accordingly, a comparison of the
Relator's costs with the price and cost representations made by the DEFENDANT
SMITHKLINE establishes the falsity of SmithKline's representations for the drugs and
years specified as follows:

155

CIVIL ACTION NO.  00 CV 10698 MEL

## DRUG: KYTRIL 1mg. TABLETS 2's
## MEDICARE
## HCPCS Q0166

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
|------|------|------|------|------|------|
| | | "AWP" | "DP" | | |
| 1995 | | $78.75 | | $63.40 | |
| 1996 | | $78.75 | | $63.40 | |
| 1997 | | $82.55 | | $66.45 | $66.04 |
| 1998 | | $85.50 | | $68.85 | $66.04 |
| 1999 | | $89.70 | | $72.25 | $63.00 |
| 2000 | | $94.10 | | $72.52 | $63.00 |
| 2001 | | $94.10 | | $63.00 | $63.00 |

186.  As a direct and proximate result of the actions of the DEFENDANT SmithKline alleged herein, the UNITED STATES has sustained damages recoverable under the False Claims Act, together with treble damages, penalties, attorneys' fees and costs.

## SECTION NO. 20
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## WARRICK AS TO MEDICAID

187.  At various times from on or after April 7, 1994, and continuing through the present date, DEFENDANT WARRICK knowingly caused the States' Medicaid programs to pay false or fraudulent claims for drugs specified in this Section and further made or used false or fraudulent records and/or statements to get such claims paid or approved.  As a result of the actions of DEFENDANT WARRICK and those persons

156

**CIVIL ACTION NO.  00 CV 10698 MEL**

and entities acting directly or indirectly in concert with DEFENDANT WARRICK, the

States' Medicaid programs paid grossly excessive, unreasonable and unlawful amounts

for claims for the drugs specified in this Section.  The acts committed by DEFENDANT

WARRICK that caused the States' Medicaid programs to pay or approve said false or

fraudulent claims included, but were not necessarily limited to, knowingly making false

or fraudulent representations about the wholesaler prices of the drugs specified in this

Section which DEFENDANT WARRICK knew would be used by the States' Medicaid

programs in paying or approving claims for the drugs specified in this Section.  Each of

said representations was in fact used by the States' Medicaid programs in paying or

approving claims for the drugs specified in this Section.

188.    DEFENDANT WARRICK knowingly caused its false or fraudulent

wholesaler price representations to be transmitted by First Data Bank's automated

services, made or used false records or statements regarding its wholesaler prices of

the drugs specified in this section and submitted them to the States' Medicaid programs

continuously throughout the years specified in this section.  Within this paragraph is a

table, organized by drug and NDC number, which reflects the recent false wholesaler

prices in First Data Bank's automated services.  The information in the table under the

heading "WARRICK'S False Reported WAC" reflects DEFENDANT WARRICK'S false

representations of price it charged wholesalers for drugs.  The heading "Relator's Cost"

reflects the true price that DEFENDANT WARRICK charged the Relator for the drug or

caused another entity to charge the Relator for the drug.

157

CIVIL ACTION NO.  00 CV 10698 MEL

| DRUG STRENGTH & SIZE, NDC#s | WARRICK'S FALSE REPORTED WAC | RELATOR'S COST (in or about March 2000) |
|---|---|---|
| ALBUTEROL INHALATION AEROSOL 17 gm 59930-1560-01 | $10.71 | $2.58 |
| ALBUTEROL INHALATION AEROSOL (refill) 17 gm 59930-1560-02 | $9.99 | $2.49 |

189.    The false price and cost representations, as they were submitted to the

State of Texas on or after April 7, 1994, are organized in a chart within this paragraph

by "Drug", "NDC Number", Texas Medicaid Payment Amount ("WEAC"/"DEAC"),

"Relator's Cost", the "Gross Profit" and the percentage of "Gross Profit."  The amount

under the heading "Relator's Cost" is the true price that DEFENDANT WARRICK

charged the Relator for the drug or caused another entity to charge the Relator for the

drug.  A comparison of the Relator's cost with DEFENDANT WARRICK'S price

representations shows the falsity of DEFENDANT WARRICK'S price representations

for the specified drugs.  Furthermore, the table shows the impact of DEFENDANT

WARRICK'S false statements because it shows health care providers made a profit for

prescribing DEFENDANT WARRICK'S drugs.  Texas Medicaid, which intended to pay

for drugs based upon estimated acquisition costs, never intended to pay the amounts

under the heading "Gross Profit."

158

CIVIL ACTION NO.  00 CV 10698 MEL

| DEFENDANT WARRICK | | | | | |
|---|---|---|---|---|---|
| **Drug** | NDC # | WEAC<br>———<br>DEAC | Relator's Cost (in or about March 2000) | WEAC Provider's Gross Profit $<br>———<br>DEAC Provider's Gross Profit $ | WEAC Provider's Gross Profit %<br>———<br>DEAC Provider's Gross Profit % |
| Albuterol 17 gm | 59930-1560-01 | $0.705600/gm<br>$11.99 | $2.58 | $9.41 | 78% |
| Albuterol refill | 59930-1560-02 | $0.652230/gm<br>$11.09 | $2.49 | $8.60 | 78% |

190.    As a direct and proximate result of the actions of the DEFENDANT

WARRICK alleged herein, the UNITED STATES has sustained damages recoverable

under the False Claims Act, together with treble damages, penalties, attorneys' fees

and costs.

## SECTION NO. 21
### THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ZENITH GOLDLINE AS TO MEDICARE

191.    At various times from on or after June 23, 1989, and continuing through

the present date, DEFENDANT ZENITH GOLDLINE knowingly caused the Medicare

program and the States' Medicaid programs throughout the United States and its

territories to pay false or fraudulent claims for drugs specified in this Section and further

made or used false or fraudulent records and/or statements to get such claims paid or

approved.  As a result of the said actions of DEFENDANT ZENITH GOLDLINE and

159

those persons and entities acting directly or indirectly in concert with DEFENDANT

ZENITH GOLDLINE, the Medicare and States' Medicaid programs paid grossly

excessive, unreasonable and unlawful amounts for claims for the drugs specified in

this Section. The acts committed by DEFENDANT ZENITH GOLDLINE that caused the

Medicare and States' Medicaid programs to pay or approve said false or fraudulent

claims included, but were not necessarily limited to, knowingly making false or

fraudulent representations about prices and costs of the drugs specified in this Section

which DEFENDANT ZENITH GOLDLINE knew or should have known would be used by

the Medicare and States' Medicaid programs in paying or approving claims for the

drugs specified in this Section. Each of said representations was in fact used by the

Medicare and States' Medicaid programs in paying or approving claims for the drugs

specified in this Section.

192.  DEFENDANT ZENITH GOLDLINE knowingly caused its false or

fraudulent price and cost representations to be published in the years specified in this

Section in the Red Book, the Blue Book and the First Data Bank's Automated Services

and further made or used false records or statements regarding its prices and costs of

the drugs specified in this Section and submitted same to the Medicare and States'

Medicaid programs continuously throughout the years specified in this Section. For the

purposes of specificity and particularity, the said false price and cost representations as

they were reflected in the Red Book and Blue Book have been organized into a chart

form for each drug in question and for each NDC Number assigned to each drug in

160

question.  The information provided under the columns for DEFENDANT's Published

Price, and Red Book "AWP" and "DP" reflects the false price and cost representations

made by the DEFENDANT ZENITH GOLDLINE.  The information under the Relator's

Cost columns reflects the true price that DEFENDANT ZENITH GOLDLINE charged the

Relator for the drug or caused another entity to charge the Relator for the drug.  As a

very small pharmacy, the Relator does not always receive the lowest prices available to

volume purchasers.  Accordingly, a comparison of the Relator's costs with the price and

cost representations made by the DEFENDANT ZENITH GOLDLINE establishes the

falsity of ZENITH GOLDLINE's representations for the drugs and years specified as

follows:

## DRUG: ONXOL 6mg./ml 5 ml. (30mg.)
## MEDICARE HCPCS J9265

| YEAR | DEFENDANT'S PUBLISHED PRICE | RED BOOK | | RELATOR'S WHOLESALER COST | RELATOR'S DIRECT COST |
| --- | --- | --- | --- | --- | --- |
| | | "AWP" | "DP" | | |
| 2001 | | $172.72 | | $125.43 | $112.83 |

193.   As a direct and proximate result of the actions of the DEFENDANT

ZENITH GOLDLINE alleged herein, the UNITED STATES has sustained damages

recoverable under the False Claims Act, together with treble damages, penalties,

attorneys' fees and costs.

**CIVIL ACTION NO.  00 CV 10698 MEL**

## SECTION NO. 22
## DEFENDANTS APOTHECON, BRISTOL-MEYERS, DEY,
## PURDUE PHARMA, PURDUE FREDERICK AND SCHEINS'
## FRAUD IN CONNECTION WITH THE MEDICAID REBATE PROGRAM

194.   In addition to the fraud arising from DEFENDANTS' reporting of inflated

prices and costs for Medicaid and Medicare reimbursement purposes, several of the

DEFENDANTS, APOTHECON, BRISTOL-MYERS, DEY,  PURDUE PHARMA,  PURDUE

FREDERICK and SCHEIN (collectively "the REBATE DEFENDANTS") underpaid the

Medicaid rebate amounts each was legally required to pay by falsifying periodic

submissions to CMS in violation of 31 U.S.C. §3729(a)(7).

195.   After hearings in 1989, the Congress concluded that the Federal

government, as the largest payor for prescription drugs, was paying significantly more

under the States' Medicaid programs than certain private payors. See, e.g.,

Skyrocketing Drug Prices: Hearings Before the Special Committee on Aging, United

States Senate, 101st. Congress, 290-297 (1989).

196.   The Congress addressed this inequity in the Omnibus Budget

Reconciliation Act of 1990 ("OBRA 1990"), which established the Medicaid Rebate

Program. PL-101-508, 104 Stat. 1388 (1990) . The stated purpose of the Medicaid

Rebate Program was to give the State Medicaid programs the "benefit of the best price

for which a manufacturer [sold] a prescription drug to any.... private purchaser." H.R.

Rep. No. 101-881, at 96 (1990).

197.   The rebate program requires all manufacturers whose drugs are paid for

by Medicaid to enter into an agreement with the Secretary of the Department of Health

162

and Human Services, under which the manufacturer agrees to pay each State a quarterly rebate. The amount received by  a State in rebates is considered a reduction in the total amount expended under any given State's plan.  Therefore, the less any given State receives in rebates the greater the total amount expended by the State is and the more the Federal government must correspondingly pay to each State (because the Federal government contributes a set percentage of the total amount each State expends.).

198.   Prior to the selling or marketing of a prescription drug, all drug manufacturers must file either a New Drug Application ("NDA") or an Abbreviated New Drug Application ("ANDA") with the FDA or enter into an agreement with another manufacturer/company who has already obtained the requisite FDA approval.  All drugs which are approved with an  NDA  are, by definition, either a single source or an innovator multiple-source drug for purposes of the calculation of the Medicaid rebate. An NDA is frequently a time-intensive and costly process because, among other things, it must contain detailed clinical studies of the drug's safety and efficacy.  See 21 U.S.C. §355.  If the FDA approves the NDA, it publishes a listing of the drug and patents on the drug's approved aspects in Approved Drug Products With Therapeutic Equivalence calculations, otherwise known as the Orange Book 21 U.S.C. §355(j)(7)(A)(iii).

199.   An Abbreviated New Drug Application ("ANDA") offers an expedited approval process for generic drugs.  Instead of filing with the FDA a full NDA with new safety and efficacy studies, in an ANDA a  manufacturer may rely in part on the work of

a manufacturer who pioneered the new drug (and submitted an NDA) by submitting

data demonstrating the generic drug's bioequivalence with the previously approved

drug.  21 U.S.C. §355(j)(2)(A)(Supp. V. 1999).  All drugs for which an ANDA has been

filed are, by definition, prescription drugs whose patent has expired.  All drugs  which

are approved with an  NDA  are, by definition, either a single source or an innovator

multiple-source drug (collectively "innovator drugs") for purposes of the calculation of

the Medicaid rebate.

200.    At all times relevant to this Complaint, under the Medicaid prescription

drug rebate program, the rebate which drug manufacturers must pay for drugs sold

under an  NDA  approval, that is to say innovator drugs (sometimes referred to as brand

drugs) was greater than the rebate for drugs sold under an ANDA, namely, non-

innovator drugs.

201.    At all times relevant to this Complaint, the basic rebate amount for single

source drugs and innovator multiple source drugs  was equal to the product of:

(A)      the total number of units sold of each dosage form and

strength dispensed multiplied by

(B)      the "Average Manufacturers Price" ("AMP") minus the

manufacturer's "Best Price" ("BP") (There is a minimum rebate amount of 15.1% of the

units sold times AMP used only if BP is greater than 84.9% of AMP).

202.    BP is generally defined as the lowest price (inclusive of cash

discounts, free goods, volume discounts, etc.) available from the manufacturer during

the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, etc. excluding direct government purchases, i.e. federal supply schedule prices.

203.   AMP is generally defined as the average price paid to the manufacturer during the rebate period by wholesalers for drugs distributed to the retail pharmacy class of trade, after deducting customary prompt pay discounts.

204.   At all times relevant to this Complaint, the basic rebate for all other prescription drugs (generic drugs) was equal to the product of:

> (i)     the total number of units dispensed multiplied by
>
> (ii)    the AMP   multiplied by
>
> (iii)   11%

205.   Manufacturers report their AMP's and BP's  to CMS on a quarterly basis. CMS, in turn, calculates the rebate amount as either AMP minus BP (or uses the 15.1% minimum) for single source drugs and innovator multiple source drugs (brand drugs) or AMP multiplied by 11% for non-innovator drugs and forwards the figures by NDC number (the identification number for each dosage and unit size for each drug) to the States.  The States then multiply the rebate amount by the number of units that the State paid for during the quarter for each NDC number to determine the rebate amount due and submits the requested amount to the manufacturer for payment.  The manufacturer remits this payment on a quarterly basis, withholding any disputed amount.

206.    The Medicaid Rebate fraud scheme alleged herein is based, in part, on the requirement that all companies including a distributor, repackager, or relabeler who distribute a prescription drug under an NDA must pay the same Medicaid rebate that the manufacturer who holds the NDA is required to pay since they are all included in the definition of "manufacturer" in the rebate statute. 42 U.S.C. § 1396r-8(k)(5)(B). Also, the Medicaid rebate statute defines "innovator multiple source drug" as a multiple source drug that was originally marketed under an original new drug application ("NDA") approved by the Food & Drug Administration ("FDA"). 42 U.S.C. §1396r-8(k)(7)(A)(ii).

207.    DEFENDANTS BRISTOL- MYERS, DEY and SCHEIN knowingly reported that certain of their drugs reimbursed by Medicaid were multi-source non-innovator drugs, when in fact, they were innovator drugs which BRISTOL- MYERS, DEY and SCHEIN distributed and for which another drug manufacturer held the NDA. Therefore, BRISTOL- MYERS, DEY and SCHEIN were required to identify these drugs as innovator drugs for Medicaid rebate purposes. BRISTOL- MYERS, DEY and SCHEINS' quarterly submissions to CMS regarding these certain drugs resulted in under-payments to the Medicaid program and constituted a false claim in violation of 31 U.S.C. §3729. With respect to these DEFENDANTS, the following chart lists who distributed the specific drug and dosage at issue, the company actually holding the NDA, the NDA approval number and the time period during which the respective DEFENDANT falsely reported that the subject drug was a non-innovator for Medicaid rebate purposes:

**CIVIL ACTION NO.  00 CV 10698 MEL**

| Company | Drug NDC# | Company Holding NDA | NDA Approval # | Time period of false reporting |
|---------|-----------|---------------------|----------------|-------------------------------|
| Bristol-Myers | Cefaclor 250mg 59772-7491-04 | CEPH INTL | 062205 | 9/27/1996 to the present |
| Bristol-Myers | Cefaclor 500mg 59772-7494-04 | CEPH INTL | 062205 | 9/30/1996 to the present |
| Bristol-Myers | Cefaclor125mg/5 ml 59772-7490-02 | Eli Lilly | 062206 | 9/12/1996 to the present |
| Bristol-Myers | Cefaclor 125mg/ml 59772-7490-04 | Eli Lilly | 062206 | 9/9/1996 to the present |
| Bristol-Myers | Cefaclor 187mg/ml 59772-7497-01 | Eli Lilly | 062206 | 9/25/1996 to the present |
| Bristol-Myers | Cefaclor 187mg/ml 59772-7497-03 | Eli Lilly | 062206 | 9/13/1996 to the present |
| Bristol-Myers | Cefaclor 250mg/ml 59772-7492-02 | Eli Lilly | 062206 | 9/18/1996 to the present |
| Bristol-Myers | Cefaclor 250mg/ml 59772-7492-04 | Eli Lilly | 062206 | 9/9/1996 to the present |
| Bristol-Myers | Cefaclor 375mg/ml 59772-7493-01 | Eli Lilly | 062206 | 9/25/1996 to the present |
| Bristol-Myers | Cefaclor 375mg/ml 59772-7493-03 | Eli Lilly | 062206 | 9/25/1996 to the present |

**CIVIL ACTION NO.  00 CV 10698 MEL**

| Dey | EpiPen Jr.<br>49502-0501-01 | Survival Technology, Inc. | 19-430 | 9/30/90<br>to the present |
|---|---|---|---|---|
| Dey | EpiPen<br>49502-0500-01 | Survival Technology, Inc. | 19-430 | 9/30/1990<br>to the present |
| Dey | Albuterol Inhalation Aerosol, 17gm refill<br>49502-0303-27 | Glaxo, Inc | 18-473 | 11/20/1996 to 2/28/2002 |
| Dey | Albuterol Inhalation Aerosol, 17gm<br>49502-0303-17 | Glaxo, Inc. | 18-473 | 10/21/1996 to 2/28/2003 |
| Dey | Albuterol Inhalation solution 0.5%, 20ml<br>49502-0196-20 | Glaxo, Inc. | 19-269 | 2/29/1996 to 12/31/2000 |
| Schein | Albuterol Inhalation Aerosol 17gm<br>00364-2632-98 | Schering (Warrick) | 17-559 | 10/5/1996 to 8/31/2001 |
| Schein | Albuterol Inhalation Aerosol, 17gm refill<br>00364-2632-17 | Schering (Warrick) | 17-559 | 10/5/1996<br>to the present |
| Schein | Dipivefrin Hydrochloride Opthalmic Sol 0.1%<br>5ml, 10ml, 15ml<br>00364-3040-53<br>00364-3040-54<br>00364-3040-72 | Allergan/<br>Pacific Pharma | 18-239 | 3/1/1994<br>to the present |

| Schein | Levobunolol Hydrochloride Opthalmic Sol 0.25% 5ml,10ml,15ml 00364-3053-53 (5) 00364-3053-54 (10) | Allergan Pharmace uticals | 19-219 | 9/1/1994 to2/28/2000 |
|---|---|---|---|---|
| Schein | Levobunolol Hydrochloride Opthalmic Sol 0.25% 5ml,10ml,15ml 00364-3039-53 (5) 00364-3039-54 (10) 00364-3039-72 (15) | Allergan Pharmace uticals | 19-219 | 3/18/1994 to the present |
| Schein | Gemfibrozil 600 mg tablets 60's and 500's 00364-2566-06 (60) 00364-2566-05 (500) | Warner Chilcott | 18-422 | 11/14/1994 to withdrawal from the market |
| Schein | Perphenazine Tablets 2,4,8,and 16mg 100''s 00364-2623-01 (2) 00364-2624-01 (4) 00364-2625-01 (8) 00364-2626-01 (16) | Schering Warrick | 10-775 | 4/7/1995 to withdrawal from the market |

CIVIL ACTION NO.  00 CV 10698 MEL

| Schein | Sterile Methylprednisolone Acetate Suspension 1ml and 1mlx25 00364-3064-51 (1) 00364-3064-46 (25) 00364-3065-51 (1) 00364-3065-46 (25) | The Upjohn Company | 11-757 | 9/8/1995 to withdrawal from the market |
|---|---|---|---|---|
| Schein | Verapamil HCL sustained caps 120mg, 180mg, 240mg, 360mg 100's 00364-2880-01(120) 00364-2882-01(180) 00364-2884-01(240) 00364-2886-01(360) | Elan Pharmaceuticals | 19-614 | 5/51999 to withdrawal from the market |
| Schein | Cytarabine Inj 500mg 00364-2468-54 | The Upjohn Company | 16-793 | 9/30/1990 to 12/31/2001 |
| Schein | Vancomycin HCL 1gm 10x30ml 00364-2473-91 | Lederle Laboratories | 62-682/S004 | 11/12/1993 to withdrawal from the market |
| Schein | Benzonatate100mg 100's 00364-2536-01 | Ciba | 11-210 | 4/1/1993 to withdrawal from the market |

| Schein | Folic Acid tablets 1mg 00364-0137-01 | Danbury | 80-680 | 11/2/1993 to withdrawal from the market |
|--------|--------------------------------------|---------|--------|-----------------------------------------|
| Schein | Buffered PCN G K 20MMU 00364-2908-61 | Pfizer | 60-657 | 5/30/2000 to withdrawal from the market |

208.    In addition to the Medicaid rebate fraud arising from false reporting of innovator drugs as non-innovators by DEFENDANTs who distributed a drug for which another manufacturer held the NDA, DEFENDANTS APOTHECON, PURDUE PHARMA and PURDUE FREDERICK directly misrepresented to CMS innovator drugs as non-innovators, drugs for which they themselves held the NDA.  The following chart identifies each of these drugs by NDC number and the time period during which the false reporting took place:

| Company | Drug NDC# | Company Holding NDA | NDA Approval # | Time period of false reporting |
|---------|-----------|---------------------|----------------|-------------------------------|
| Apothecon | Estradiol Tab 0.5mg 59772-0025-03 | Bristol-Myers Squibb | 081295 | 4/22/1996 to the present |
| Apothecon | Estradiol Tab 1.0mg 59772-0026-03 | Bristol-Myers Squibb | 084499 | 4/22/1996 to the present |
| Apothecon | Estradiol Tab 1.0mg 59772-0026-04 | Bristol-Myers Squibb | 084499 | 4/22/1996 to the present |

171

**CIVIL ACTION NO.  00 CV 10698 MEL**

| Apothecon | Estradiol Tab 2.0mg 59772-0027-03 | Bristol-Myers Squibb | 084500 | 4/22/1996 to the present |
|---|---|---|---|---|
| Apothecon | Estradiol Tab 2.0mg 59772-0027-04 | Bristol-Myers Squibb | 084500 | 4/22/1996 to the present |
| Purdue Pharma | Oxycontin 40 mg 59011-0105-25 | Purdue Pharma | 020553 | 8-30-1996 to the present |
| Purdue Pharma | Oxycontin 80 mg 59011-0107-10 | Purdue Pharma | 020553 | 1-8-1997 to the present |
| Purdue Pharma | Oxycontin 80 mg 59011-0107-25 | Purdue Pharma | 020553 | 1-29-1997 to the present |
| Purdue Pharma | Oxycontin 160 mg 59011-0109-10 | Purdue Pharma | 020553 | 4-27-2000 to the present |
| Purdue Pharma | Oxycontin 160 mg 59011-0109-25 | Purdue Pharma | 020553 | 4-27-2000 to the present |
| Purdue Frederick | MS Contin 200mg 00034-0513-10 | Purdue Frederick | 019516 | 12-1-1993 to the present |
| Purdue Frederick | MS Contin 200mg 00034-0513-25 | Purdue Frederick | 019516 | 11-30-1993 to the present |
| Purdue Frederick | MS Contin 15 mg 00034-0514-10 | Purdue Frederick | 019516 | 5-1-1990 to the present |
| Purdue Frederick | MS Contin 15mg 00034-0514-25 | Purdue Frederick | 019516 | 5-1-1990 to the present |
| Purdue Frederick | MS Contin 15 mg 00034-0514-90 | Purdue Frederick | 019516 | 11-1-1991 to the present |
| Purdue Frederick | MS Contin 30mg 00034-0515-10 | Purdue Frederick | 019516 | 5-29-1987 to the present |
| Purdue Frederick | MS Contin 30 mg 00034-0515-25 | Purdue Frederick | 019516 | 5-29-1987 to the present |
| Purdue Frederick | MS Contin 30 mg 00034-0515-45 | Purdue Frederick | 019516 | 5-29-1987 to the present |

CIVIL ACTION NO. 00 CV 10698 MEL

| Purdue Frederick | MS Contin 30 mg 00034-0515-50 | Purdue Frederick | 019516 | 5-29-1987 to the present |
|---|---|---|---|---|
| Purdue Frederick | MS Contin 30 mg 00034-0515-90 | Purdue Frederick | 019516 | 5-29-1987 to the present |
| Purdue Frederick | MS Contin 60 mg 00034-0516-10 | Purdue Frederick | 019516 | 5-1-1988 to the present |
| Purdue Frederick | MS Contin 60 mg 00034-0516-25 | Purdue Frederick | 019516 | 5-1-1988 to the present |
| Purdue Frederick | MS Contin 60 mg 00034-0516-90 | Purdue Frederick | 019516 | 11-1-1991 to the present |
| Purdue Frederick | MS Contin 100 mg 00034-0517-10 | Purdue Frederick | 019516 | 5-1-1990 to the present |
| Purdue Frederick | MS Contin 100 mg 00034-0517-25 | Purdue Frederick | 019516 | 5-1-1990 to the present |
| Purdue Frederick | MS Contin 100 mg 00034-0517-90 | Purdue Frederick | 019516 | 11-1-1990 to the present |

209.   As a result of APOTHECON, BRISTOL- MYERS, DEY, PURDUE PHARMA, PURDUE FREDERICK and SCHEINS' submissions of false claims, the United States has suffered actual damages in excess of one million dollars ($1,000,000), all in violation of 31 U.S.C. §3729 et seq.

## COUNT I

### FALSE CLAIMS ACT;
### CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS

210.   This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTs: ABBOTT LABORATORIES, INC., APOTHECON, INC., BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY

**CIVIL ACTION NO. 00 CV 10698 MEL**

INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT

MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS,

INC., PURDUE PHARMA L.P., PURDUE FREDERICK COMPANY, ROXANE

LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH

CORPORATION, SMITHKLINE BEECHAM CORPORATION,  WARRICK

PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS, INC. under the

False Claims Act, 31 U.S.C. §§3729-3732.

211.   Relator realleges and incorporates by reference paragraphs 1 through

209 as if fully set forth herein and further alleges as follows:

212.   The DEFENDANTS from a date on or after April 7, 1994, to the present

date, knowingly [as defined in 31 U.S.C., §3729(b)] caused to be presented to officers

or employees of Medicare and/or the States' Medicaid programs false or fraudulent

claims [as explained in United States v. Neifert-White, 390 US 228, 232-233 (1968)] for

payment or approval, in that the DEFENDANTS caused to be presented to officers or

employees of Medicare and/or the States' Medicaid programs false or fraudulent price

and cost information for the drugs specified herein and caused Medicare and/or States'

Medicaid programs to pay out sums of money to the providers and suppliers of the

DEFENDANTS' specified drugs grossly in excess of the amounts intended by law,

resulting in great financial loss to Medicare and/or the States' Medicaid programs and

the UNITED STATES.

**CIVIL ACTION NO.  00 CV 10698 MEL**

213.   This count also applies with respect to the REBATE DEFENDANTS and

their false quarterly submissions to CMS in connection with the Medicaid rebate

program and as explained in Section 22 herein.

214.   Because of the DEFENDANTS' conduct as set forth in this Count, the

UNITED STATES suffered actual damages in excess of Ten Million Dollars

($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).

## COUNT II

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT

215.   This is a civil action by the Plaintiff, UNITED STATES, and the Relator,

VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against

the DEFENDANTs: ABBOTT LABORATORIES, INC., APOTHECON, INC.,

BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY

INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT

MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS,

INC., PURDUE PHARMA L.P., PURDUE FREDERICK COMPANY, ROXANE

LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH

CORPORATION, SMITHKLINE BEECHAM CORPORATION,  WARRICK

PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS, INC. under the

False Claims Act, 31 U.S.C. §§3729-3732.

175

216.    Relator realleges and incorporates by reference paragraphs 1 through 209 as if fully set forth herein and further alleges as follows:

217.    The DEFENDANTS, from a date on or after April 7,1994 to the present date, knowingly [as defined in 31 U.S.C. §3729(b)] caused false records or statements to be made or used to get false or fraudulent claims [as explained in United States v. Neifert-White, 390 US 228, 232-233 (1968)] to be paid or approved by Medicare and/or by the States' Medicaid programs, in that the DEFENDANTS, caused false records or statements of prices and costs of the DEFENDANTS' drugs specified herein to be used by Medicare and/or by the States' Medicaid programs to pay or approve claims presented by the providers and suppliers of the DEFENDANTS' specified drugs, which claims were grossly in excess of the amounts intended by law, resulting in great financial loss to the UNITED STATES.

218.    This court also applies with respect to the REBATE DEFENDANTS and their false quarterly submissions to CMS in connection with the Medicaid rebate program and as explained in Section 22 herein.

219.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(2).

**CIVIL ACTION NO.  00 CV 10698 MEL**

## COUNT III

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF
### FALSE OR FRAUDULENT CLAIMS; ILLEGAL REMUNERATION

220.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator,

VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against

the DEFENDANTs: ABBOTT LABORATORIES, INC., APOTHECON, INC.,

BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY

INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT

MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS,

INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC.,

SCHERING-PLOUGH CORPORATION, SMITHKLINE BEECHAM CORPORATION,

WARRICK PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS,

INC., under the False Claims Act, 31 U.S.C. §§3729-3732.

221.    Relator realleges and incorporates by reference paragraphs 1 through

209 as if fully set forth herein and further alleges as follows:

222.    The DEFENDANTS, from on or about April 7, 1994 to the present date,

knew that the prices charged to their customers for the specified drugs were

significantly reduced in amount from the prices and costs represented by the

DEFENDANTS and upon which the DEFENDANTS knew Medicare and/or Medicaid

claims would be approved and paid.  Accordingly, the DEFENDANTS have each

knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly

or covertly, in cash or in kind, remuneration to their customers in the form of price

177

reductions and/or in the form of illegal remuneration from Medicare and/or the States' Medicaid programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by Medicare and/or the States' Medicaid programs.  Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C§2.

223.   The DEFENDANTS knew that Medicare and/or the States' Medicaid programs would not pay or approve claims for the specified drugs if it were disclosed to Medicare and/or to the States' Medicaid programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

224.   The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to Medicare and/or to the States' Medicaid programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

225.   The DEFENDANTS' knowing actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2), in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the claims,  caused the claims for the specified drugs to be false or fraudulent claims and caused the claims to be presented to Medicare and/or to the States' Medicaid programs for payment and approval in violation of 31 U.S.C §3729(a)(1).

**CIVIL ACTION NO. 00 CV 10698 MEL**

226.   Because of the DEFENDANTS' conduct as set forth in this Count, the

UNITED STATES suffered actual damages in excess of Ten Million Dollars

(10,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

### COUNT IV

### FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT; ILLEGAL REMUNERATION

227.   This is a civil action by the Plaintiff, UNITED STATES, and the Relator,

VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against

the DEFENDANTs: ABBOTT LABORATORIES, INC., APOTHECON, INC.,

BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY

INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT

MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS,

INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC.,

SCHERING-PLOUGH CORPORATION, SMITHKLINE BEECHAM CORPORATION,

WARRICK PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS,

INC.,  under the False Claims Act, 31 U.S.C. §§3729-3732.

228.   Relator realleges and incorporates by reference paragraphs 1 through

209 as if fully set forth herein and further alleges as follows:

229.   The DEFENDANTS, from on or after April 7, 1994 to the present date,

knew that the prices charged to their customers for the specified drugs were

significantly reduced in amount from the prices and costs represented by the

179

DEFENDANTS and upon which the DEFENDANTS knew Medicare and/or Medicaid claims would be approved and paid.  Accordingly, the DEFENDANTS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind,  remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from Medicare and/or from the States' Medicaid programs to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified drugs for which the DEFENDANTS knew that payment would be made, in whole or in part, by Medicare and/or the States' Medicaid programs.  Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

230.    The DEFENDANTS knew that Medicare and/or the States' Medicaid programs would not pay or approve claims for the specified drugs if it were disclosed to Medicare and/or to the States' Medicaid programs that said claims were for amounts that included remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

231.    The DEFENDANTS also knew that their customers, in presenting claims for the specified drugs to Medicare and/or to the States' Medicaid programs, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

232.    The DEFENDANTS' knowing actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)2, in causing the omission of material information from the claims, and in causing the failure to properly disclose

and appropriately reflect the remuneration in the claims, caused the claims for the specified drugs to be false records or statements that were made and used to get a false or fraudulent claim paid or approved by the Government.  The DEFENDANTS' actions herein caused said false records or statements to be made and used as prohibited by 31 U.S.C. §3729(a)(2).

233.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(2).

## COUNT V

### FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS; PROHIBITED REFERRALS, CLAIMS AND COMPENSATION ARRANGEMENTS

234.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the DEFENDANTS: ABBOTT LABORATORIES, INC., APOTHECON, INC., BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS, INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION, SMITHKLINE BEECHAM CORPORATION, WARRICK PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS, INC., under the False Claims Act, 31 U.S.C. §§3729-3732.

**CIVIL ACTION NO.  00 CV 10698 MEL**

235.    Relator realleges and incorporates by reference paragraphs 1 through 209 as if fully set forth herein and further alleges as follows:

236.    The DEFENDANTS, from on or after April 7, 1994 to the present date, knowingly presented or caused to be presented, prohibited claims or bills to individuals and other entities for designated health services (outpatient prescription drugs) furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS had financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by Medicare and/or the States' Medicaid programs.  Such prohibited referrals, claims, bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C §2.

237.    The DEFENDANTS knew that Medicare and/or the States' Medicaid programs would not pay or approve claims for the outpatient prescription drugs to Medicare and/or the States' Medicaid programs that said claims were for amounts that included claims or bills prohibited by 42 U.S.C.  §1395nn(a)(1)(B).

238.    The DEFENDANTS knowingly presented or caused their referring physicians, physician groups and outpatient clinics to present claims or bills for the DEFENDANTS' outpatient prescription drugs to Medicare and/or the States' Medicaid programs for payment or approval that were false or fraudulent.

239.    The DEFENDANTS' knowing actions in having compensation arrangements for its referring physicians, physician groups and outpatient clinics

182

**CIVIL ACTION NO. 00 CV 10698 MEL**

prohibited by 42 U.S.C. §1395nn(a)(1)(B) and in presenting or causing the presentment

of prohibited claims in violation of 42 U.S.C. §1395nn(a)(1)(B) for payment or approval

caused the claims for the outpatient prescription drugs presented to Medicare and/or

the States' Medicaid programs to be false or fraudulent claims in violation of 31 U.S.C

§3729(a)(1).

  240. Because of the DEFENDANTS' conduct as set forth in this Count, the

UNITED STATES suffered actual damages in excess of Ten Million Dollars

($10,000,000.00) all in violation of 31 U.S.C. §3729(a)(1).

**COUNT VI**

**FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
STATEMENT TO BE MADE OR USED TO GET
A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE
GOVERNMENT; PROHIBITED REFERRALS,
CLAIMS AND COMPENSATION ARRANGEMENTS**

  241. This is a civil action by the Plaintiff, UNITED STATES, and the Relator,

VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against

the DEFENDANTS: ABBOTT LABORATORIES, INC., APOTHECON, INC.,

BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY

INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT

MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS,

INC., ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC.,

SCHERING-PLOUGH CORPORATION, SMITHKLINE BEECHAM CORPORATION,

183

**CIVIL ACTION NO.  00 CV 10698 MEL**

WARRICK PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS,

INC., under the False Claims Act, 31 U.S.C. §§3729-3732.

242.    Relator realleges and incorporates by reference paragraphs 1 through

209 as if fully set forth herein and further alleges as follows:

243.    The DEFENDANTS, from on or after April 7, 1994, to the present date,

knowingly presented or caused to be presented, prohibited claims or bills to individuals

and other entities for designated health services (outpatient prescription drugs)

furnished pursuant to prohibited referrals from physicians, physician groups and/or

outpatient clinics with which the DEFENDANTS had financial relationships, for which

the DEFENDANTS knew that payment would be made, in whole or in part, by Medicare

and/or the States' Medicaid programs.  Such prohibited referrals, claims, bills and

compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B)

and 18 U.S.C §2.

244.    The DEFENDANTS knew that Medicare and/or the States' Medicaid

programs would not pay or approve claims for the outpatient prescription drugs if it were

disclosed to Medicare and/or the States' Medicaid programs that said claims were for

amounts that included claims or bills prohibited by 42 U.S.C. §1395nn(a)(1)(B).

245.    The DEFENDANTS knowingly made or used or caused their referring

physicians, physician groups or outpatient clinics to make or use false records or

statements to get false or fraudulent claims and bills for the DEFENDANTS' outpatient

184

CIVIL ACTION NO.  00 CV 10698 MEL

prescription drugs to be paid or approved by Medicare and/or by the States' Medicaid programs.

246.     The DEFENDANTS' knowing presentment or causing others to present, claims or bills to Medicare and/or the States' Medicaid programs in violation of 42 U.S.C. §1395nn(a)(1)(B) without disclosing facts revealing said violations constituted the making or using, or the causing others to make or use, false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. §3729(a)(2).

247.     Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of One Million Dollars ($1,000,000.00)  all in violation of 31 U.S.C. §3729(a)(2).

### COUNT VII

### FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR STATEMENTS TO BE USED TO DECREASE AN OBLIGATION TO PAY MONEY OR PROPERTY TO THE GOVERNMENT

248.     This is a civil action by the Plaintiff, UNITED STATES, and the Relator, VEN-A-CARE, on behalf of the UNITED STATES and on behalf of the Relator, against the REBATE DEFENDANTS and MYLAN, under the False Claims Act, 31 U.S.C. §§3729-3732.

249.     Relator realleges and incorporates by reference paragraphs 1 through 209 as if fully set forth herein and further alleges as follows:

250.     The REBATE DEFENDANTS and MYLAN knowingly [as defined in §3729(b)] caused false records or statements to be made or used to decrease an

**CIVIL ACTION NO. 00 CV 10698 MEL**

obligation to pay money or property to the States' Medicaid programs in that each of the

REBATE DEFENDANTS and MYLAN knew its obligation under the Untied States

Rebate program, 42 U.S.C. 1396r-8, to make and use truthful records or statements

regarding covered outpatient drugs to determine the required amount of rebate that

each DEFENDANT drug manufacturer had to pay to each State's Medicaid program.

The REBATE DEFENDANTS and MYLAN, nevertheless, have continued to  make, use

or cause to be made or used false records or statements regarding the covered

outpatient drugs in order to decrease an obligation to pay or transmit money or property

to the State's Medicaid programs for DEFENDANT's drugs that it should have paid thus

directly resulting in great financial loss to the United States and States' Governments.

Nevertheless, the REBATE DEFENDANTS and MYLAN each caused records to be

made or used to decrease their Medicaid Rebate obligation to pay money or property to

the federally funded Medicaid program by falsely indicating in their rebate submissions

that rebates were payable at the non-innovator rate when in fact they were payable at

the higher innovator rate for the drugs specified in Section 21 above.  The REBATE

DEFENDANTS and MYLAN thus caused great financial loss to the United States and

the States' Governments.

251.    Because of the REBATE DEFENDANTS' and MYLAN's conduct as set

forth in this Count, the United States and State's Governments suffered actual

damages in excess of One Million Dollars ($1,000,000.00), all in violation of 31 U.S.C.

§3729(a)(7).

186

**CIVIL ACTION NO.  00 CV 10698 MEL**

**REQUESTS FOR RELIEF**

252.   WHEREFORE, the Relator, on behalf of the UNITED STATES, demands that judgment be entered in its favor and against DEFENDANTS: ABBOTT LABORATORIES, INC., APOTHECON, INC.,  BOEHRINGER INGELHEIM CORP., BRISTOL-MYERS SQUIBB COMPANY, DEY INC., GENEVA PHARMACEUTICALS, INC., GLAXO WELLCOME, INC., HOESCHT MARION ROUSSEL, INC., IVAX CORPORATION, MYLAN PHARMACEUTICALS, INC., PURDUE PHARMA L.P., PURDUE FREDERICK COMPANY, ROXANE LABORATORIES INC., SCHEIN PHARMACEUTICAL, INC., SCHERING-PLOUGH CORPORATION, SMITHKLINE BEECHAM CORPORATION,  WARRICK PHARMACEUTICALS AND ZENITH GOLDLINE PHARMACEUTICALS, INC., with judgment to be entered against each DEFENDANT for the amount of damage:  to the UNITED STATES arising from claims for each DEFENDANT's respective specified drugs as follows:

253.   On Count I (False Claims Act; Causing Presentation of False Claims) for triple the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false claim;

254.   On Count II (False Claims Act; Causing False Statements To Be Used To Get False Claims Paid By The GOVERNMENT) for triple the amount of UNITED STATES' damages plus civil penalties of no more than TEN THOUSAND DOLLARS

187

**CIVIL ACTION NO.  00 CV 10698 MEL**

($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false

statement;

255.    On Count III (False Claims Act; Causing Presentation of False or

Fraudulent Claims; Illegal Remuneration) for triple the amount of the UNITED STATES'

damages, plus civil penalties of no more than TEN THOUSAND DOLLARS

($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false

claim;

256.    On Count IV (False Claims Act; Causing A False Record Or Statement

To Be Made Or Used To Get A False Or Fraudulent Claim Paid Or Approved by the

Government; Illegal Remuneration) for triple the amount of UNITED STATES' damages

plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) and no

less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

257.    On Count V (False Claims Act; Causing Presentation of False or

Fraudulent Claims; Prohibited Referrals, Claims and Compensation Arrangements) for

triple the amount of the UNITED STATES' damages, plus civil penalties of no more

than TEN THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND

DOLLARS ($5,000.00) for each false statement;

258.    On Count VI (False Claims Act; Causing a False Record or Statement to

be Made or Used to get a False or Fraudulent Claim Paid or Approved by the

Government; Prohibited Referrals, Claims and Compensation Arrangements) for triple

the amount of the UNITED STATES' damages, plus civil penalties of no more than TEN

188

**CIVIL ACTION NO. 00 CV 10698 MEL**

THOUSAND DOLLARS ($10,000.00) and no less than FIVE THOUSAND DOLLARS ($5,000.00) for each false statement;

259. On Count VII (False Claims Act; Causing False Records or Statements To Be Used To Decease An Obligation To Pay Money Or Property To The Government) for triple the amount of the UNITED STATES' and States' damages, plus civil penalties of no more than Ten Thousand Dollars ($10,000.00) and no less than Five Thousand Dollars ($5,000.00) for each false record or statement.

260. For all fees and costs of this civil action; and

261. For such other and further relief as the Court deems just and equitable.

Further, the Relator, on its behalf, requests that it receive the maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the UNITED STATES, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Relator requests that its award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities not parties to this action.

CIVIL ACTION NO.  00 CV 10698 MEL

## DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Dated: February 1,  2002

Respectfully submitted,
Attorneys for
the Private Person Plaintiff,
Ven-A-Care of the Florida Keys, Inc.

_Jonathan Shapiro_

Jonathan Shapiro
BBO No.: 454220
Stern, Shapiro, Weissberg & Garin, LLP
90 Canal Street
Boston, MA 02114-2022
(617) 742-5800

THE BREEN LAW FIRM
James J. Breen
 Florida Bar No. 297178
The Crossroad Building
8201 Peters Road
Suite 1000
Plantation, Florida 33324
(954) 916-2713

Attorneys for the United States
of America by and through
Ven-A-Care of the Florida
Keys, Inc., the Relator

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Susan S. Thomas
Jeanne A. Markey
Joy Clairmont
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

GOODE, CASSEB, JONES,
RIKLIN, CHOATE & WATSON
John E. Clark
2122 North Main Avenue
San Antonio, Texas 78212-9680
(210) 733-6030

190

**CIVIL ACTION NO.  00 CV 10698 MEL**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of February, 2002, I caused an original and a copy of this Second Amended Complaint to be filed under seal and in camera for sixty (60) days and not to be served on the DEFENDANTs named herein or until further order of this Honorable Court.

I HEREBY CERTIFY that prior to this 1st day of February, 2002, I caused a copy of this Second Amended Complaint and written disclosure of substantially all material evidence and information the Relator, VEN-A-CARE possesses to be served on the Government pursuant to Rule 4(i)(1)(A) and (B), Fed.R.Civ.P., prior to the filing of this Second Amended Complaint by delivering a copy of the Second Amended Complaint, material evidence and information to the United States Attorney for the District of Massachusetts, and by sending a copy of the Second Amended Complaint, material evidence and information by Certified Mail, Return Receipt Requested, to the Attorney General of the United States in Washington, D.C.

Jonathan Shapiro
BBO No.: 454220
Stern Shapiro Weissberg & Garin, LLP
90 Canal Street
Boston, MA 02114
(617) 742-5800

G:\SSWG\VEN-A-CARE\FINALAMEND.BOSTONCOMP.wpd

191

EXHIBIT 1



## Texas Department of Health

William R. Archer III, M.D.
Commissioner of Health

*http://www.tdh.state.tx.us*

1100 West 49th Street
Austin, Texas 78756-3199
(512) 458-7111

Patti J. Patterson, M.D., M.P.H.
Executive Deputy Commissioner

Under the Omnibus Budget Reconciliation Act (OBRA) of 1990, the state of Texas Vendor Drug Program will continue to request completed questionnaire as a requirement for the production addition to the Texas Vendor Drug Index (TVDI). A form is included so that all necessary information from the manufacturer will be available for pricing and dosing recommendations. Questionnaires should be limited to no more than 20 per submittal request for any one month period. A separate questionnaire is to be submitted for each drug and strength. <u>Please supply a cover sheet listing all products, strengths and package sizes for which you are submitting applications.</u> Questions must be answered in full <u>(NO - N/A).</u> This form may be reproduced.

All inquiries regarding this questionnaire for BVD and revisions are to be directed to:

> Texas Department of Health
> Bureau Vendor Drug
> 1100 West 49th Street
> Austin, Texas 78756-3174

Drugs are listed in the BVD using the NDC number of the manufacturer or distributor who is holding the drug forth as his own and has his company's name on the label of the container that is sold to the pharmacy. If your company has a product to which the "New Drug Coverage" applies, please add the FDA approval date of the New Drug Application (NDA), Product License Approval (PLA), Establishment License Approval (ELA), or Antibiotic Drug Approval (ADA) to the questionnaire.

Martha McNeill, R.Ph.
Director of Product Management
Bureau of Vendor Drug
(512)338-6965
(512)338-6462-Fax
(512)338-6932-Secretary

## EXHIBIT "1"

*An Equal Employment Opportunity Employer*

1

## REQUEST FOR INFORMATION FOR NEW DRUG PRODUCT OR FOR ADDITIONAL INFORMATION OF PRODUCTS CURRENTLY INCLUDED IN TEXAS MEDICAID

Please fill out the following information for consideration on Texas Medicaid

CLUDE A COPY OF FILE CARD, PACKAGE INSERT AND OR MATERIAL FOR PHYSICIANS

### DRUG DESCRIPTION

| DC. NO: | PACKAGE QTY: | |
|---|---|---|
| uultiple package size of same strength | products may be included) | |
| RODUCT BRAND NAME: | | |
| ·ENERIC NAME: | | |
| *STRUCTURALLY RELATED DRUGS: | | |
| .RUG STRENGTH: | | |
| :OLOR: | FLAVOR: | ORANGE BOOK RATING: |
| ·OSAGE FORM: | IS THIS DRUG LEGEND OR OTC? | DEA SCHEDULE OF THE DRUG: |
| 1AXIMUM DAILY DOSE: | | |
| ECOMMENDED DAILY DOSE: | | |
| NGREDIENTS/DESCRIPTION: | | |
| *LIST SHELF LIFE: | | |
| *ESTIMATED AVG. DURATION OF THERAPY: | | |
| 'MAXIMUM DURATION OF TREATMENT: | | |

A - Drug products that FDA considers to be therapeutically equivalent to other pharmaceutically equivalent products.

B - Drug products that FDA at this time, considers not to be therapeutically equivalent to other pharmaceutically equivalent products.

C - Not listed in Orange Book

** NEW ADDITIONAL INFORMATION - revised (April 1, 1998)

**ATTACH COPIES OF PRICE LIST & ADD TO MAILING LIST IF NOT CURRENTLY LISTED\*\***

## PRICE INFORMATION

| | |
|---|---|
| AVERAGE OF SUGGESTED WHOLESALE PRICE TO PHARMACY (AWP) | $ |
| PRICE TO WHOLESALER AND/OR DISTRIBUTOR | $ |
| DIRECT PRICE TO PHARMACY | $ |
| PRICE TO CHAIN WAREHOUSE | $ |
| INSTITUTIONAL OR OTHER CONTRACT PRICE\*\* (Nursing Home, Home Health Care) | $ |
| OTHER PRICE | $ |

One set of price lists is sufficient for multiple submittals.
**Notes: If prices vary by specific contract or customer arrangement, you may provide a price range.\*\***

Please circle the companies to whom you report pricing information.

FIRST DATA BANK PRICE ALERT                     RED BOOK

MEDI-SPAN                                        BLUE BOOK

OTHER:_____

Do you sell to distributors, repackagers, or relablers, other than full-service drug wholesalers,      who in turn
sell your product to the retail trade bearing your NDC number?

If yes, attach a listing.

Attach a copy of your sales agreement with retail pharmacists (contract, policy, etc)

Attach a copy of your Vendor Liability Insurance:

a. Included or

b. Previously submitted or unchanged. (Do not need to resubmit)

Available date through WHOLESALERS_____

| ame of firm: | | |
|---|---|---|
| ddress: | | |
| ity: | State: | Zip: |

ame and address of Manufacturer of drug:

| ity: | State: | Zip: |
|---|---|---|

ame and Address of representatives/government affairs persons covering the Texas area; if applicable:

| ity: | State: | Zip: |
|---|---|---|
| hone: | | |

Is this product now marketed under an approved NDA or ANDA?

Submit a copy of the FDA letter of approval of the NDA or ANDA, or, if not applicable, a copy of the FDA 'etter of approval for marketing.

Please circle DESI classification of this product.

2   Non-DESI/IRS:  safe and effective

3   DESI/IRS under review

4   LTE DESI/IRS for some indications

5   Non-Covered - LTE DESI/IRS for all indications

6   Non-Covered - LTE DESI/IRS withdrawn form the market

product added to the Texas Vendor Drug Program must bear the labeler code, as defined by the FDA, of the ty, with the exception of a bonafide full-service drug wholesaler, marketing the final sale to the provider.

nufacturers or distributors having one or more of their pharmaceuticals included in the program are responsible submitting notification of any changes pertaining to any of the above information not later than such revisions scheduled to occur to:

Texas Department of Health
Bureau of Vendor Drug
Attn: Martha McNeill, R.Ph.
Director of Product Management
1100 West 49th Street
Austin, Texas 78756-3174

~tify that the information submitted is correct to the best of my knowledge and that this product is not now in lation of either Federal or State Law. I also agree to inform the Texas Department of Health, in writing, of any nges in formulation, product status, price or availability as herein describe, within fifteen (15) days of such nge.

_____                          _____
sponsible Person (Type or Print)                          Signature

__

_____          _____          _____          _____
dress                                     City            State           Zip

                                          (    )
_____          _____
mpany Name                                Telephone

EXHIBIT 2

**Point-of-Care Knowledge Bases**

## First DataBank

# New Product Submission Form

For your convenience, you may use this form to add products to the National Drug Data File (NDDF). Please make copies of this form for each add.

| | |
|---|---|
| **NDC Number** | |
| **UPC Number** | |
| **Product Name** | |
| **RX or OTC** | |
| **Package Size (ml, gm, each)** | |
| **Dosage Form (tablet, capsule, powder filled vial, ampul, ointment, etc...)** | |
| **Wholesale (Distributor) Price** | |
| **Direct Price** | |
| **AWP Price** | |
| **Effective Date (start ship date)** | |
| **Active Ingredients & strengths (Package Insert and Label are preferred.)** | |

Company Name: _____

Your Name: _____

Telephone: _____

The Hearst Corporation, 1111 Bayhill Drive, San Bruno, California 94066 Tel: (415)588-5454 Fax: (425)588-6867

EXHIBIT "2"

EXHIBIT 3



# Warrick
## Pharmaceuticals



7500 North Natchez Avenue, Niles, Illinois 60714-3804 • Telephone 1 800 547-3869

December 20, 1994

*Here Warrick's price is based on direct price*

Gerry F. Wello
Pharmacy Program Manager
Medicaid Pharmacy Services
Agency for Health Care Administration
1317 Winewood Blvd.
Tallahassee FL    32301-0700

Dear Ms. Wello:

Warrick Pharmaceuticals, a unit of Schering-Plough Corporation, is pleased to announce the availability of Griseofulvin Ultramicrosize Tablets, USP, a generic to Fulvicin®P/G (griseofulvin ultramicrosize) Tablets, USP. Product information for package sizes and pricing information is as follows:

*EAC = Direct + 7%*

| PRODUCT | Package Size | NDC # 59930– | AWP | Direct Wholesale/ Chain Price | |
|---|---|---|---|---|---|
| Griseofulvin Tablets, USP 125 mg | 100 | 1620-1 | $33.11 | $24.95 | 26.70 |
| Griseofulvin Tablets, USP 250 mg | 100 | 1621-1 | $64.96 | $48.75 | 52.16 |
| Griseofulvin Tablets, USP 330 mg | 100 | 1624-1 | $82.47 | $61.85 | 66.18 |

Please be advised that Warrick does not sell direct to retail pharmacies. Package Inserts, statement of Therapeutic Equivalence, and the FDA Approval Letter are enclosed. See INDICATIONS section of package insert for Indications/Use. This product is being marketed under the Fulvicin P/G NDA, #61-996. This information is provided in the event it is required for reimbursement purposes. If you require additional information, please do not hesitate to contact us.

Sincerely,

Phyllis T. Sinoradzki
Executive Assistant

# RECEIVED

## JAN 0 3 1995

# PDMP

## EXHIBIT "3"



# ⊞ **Roxane**
### Laboratories, Inc.

P.O. Box 16532 • Columbus, Ohio 43216-6532 • Phone 614/276-4000 • Fax 614/274-0974

September 26, 1994

Susan McCloud
Acting Pharmacy Program Manager
Medicaid Office of Program Development
Department of Health & Rehabilitative Services
B-6, R-280
1317 Winewood Blvd.
Tallahassee  FL 32399-0700

*(handwritten, upper right):*
EAC= Wholesale + 7%

This one pays as we expect.
Because we pay on Wholesale/direct,
not AWP, we get significant saving

what we pay
% AWP
↓

## MEDICAID PRODUCT ADDITION NOTIFICATION

Trade Name:  not applicable

Generic Name:  Methotrexate Tablets USP, 2.5 mg

Dosage Form & Strength:  tablet, 2.5 mg

| NDC (0054) | Package Size | Direct Price | Wholesale Price | AWP = 40.4% |
|---|---|---|---|---|
| 4550-25 | Bottle of 100 Tablets | $188.40 | $157.00 +7%=167.99 | $305.16 — 45% |
| 4550-15 | Bottle of 36 Tablets | $69.60 | $58.00 | $133.88 |
| 8550-25 | 10 x 10 UD Blisters | $206.80 | $172.33 +7%=184.39 | $305.16 — 40.6% |
| 8550-03 | 4 x 2 Dosage Pack | $17.85 | $15.50 | $23.00 |
| 8550-05 | 4 x 3 Dosage Pack | $26.50  30 | 1.9/63=3% $23.00  30508 | 2.9163 34.3% $35.00 — 64  — 29.7 |
| 8550-06 | 4 x 4 Dosage Pack | $35.35 | $30.75 | $49.00  42 |
| 8550-07 | 4 x 5 Dosage Pack | $44.25 | $38.50 | $61.00  53 |
| 8550-10 | 4 x 6 Dosage Pack | $53.25 | $46.25 | $72.00  64 |

*(handwritten left margin: 799, 39, not, 3/week, tabs)*

NDA Number:  40-054                      Approval Date:  8-1-94

ROXANE • PAIN • INSTITUTE ™

1 • 800 • 335 • 9100

**RECEIVED**

OCT 05 1994

**PDMP**

EXHIBIT 4



**Warrick**
PHARMACEUTICALS

12125 Moya Boulevard, Reno, Nevada 89506-2600 • Telephone 1 800 547-3869

March 6, 1997

Ms. Martha McNeil
Texas Department of Health
Vendor Drug Program
Texas State Medicaid
1100 West 49th Street
Austin, Texas 78756-3174

Dear Ms. McNeil:

Enclosed please find a copy of the most current Warrick Pharmaceuticals Product Line which
includes the Product Name, Package Size, NDC#, Therapeutic Rating, AWP and WAC pricing.

Please call Ms. Amy Stivale at 908-629-3604 if you require anything further.

Regards,

Louis Manfredi
Manager
Business Development

LM:ajs

lm70219c

# EXHIBIT "4"

| DESCRIPTION/STRENGTH | PKG | NDC# | Rating | AWP | Catalog Price/WAC |
|---|---|---|---|---|---|
| Cimetidine Tablets 400 mg | 100 | 59930-1802-1 | AB | $138.82 | $64.09 |
| | 500 | 59930-1802-2 | AB | 694.10 | 283.36 |
| | 1000 | 59930-1802-3 | AB | 1388.20 | 544.68 |
| Cimetidine Tablets 800 mg | 100 | 59930-1803-1 | AB | 246.01 | 113.61 |
| | 500 | 59930-1803-2 | AB | 1230.05 | 511.20 |
| | 1000 | 59930-1803-3 | AB | 2460.10 | 956.60 |
| Clotrimazole Cream, USP 1% | 15 g | 59930-1570-1 | AT | 7.85 | 6.25 |
| | 30 g | 59930-1570-2 | AT | 13.40 | 10.50 |
| | 45 g | 59930-1570-3 | AT | 16.25 | 12.75 |
| | 2 x 45 g | 59930-1570-9 | AT | 22.25 | 17.50 |
| Flurbiprofen Tablets, USP 50 mg | 100 | 59930-1771-1 | AB | 68.02 | 42.25 |
| Flurbiprofen Tablets, USP 100 mg | 100 | 59930-1772-1 | AB | 107.58 | 65.00 |
| | 500 | 59930-1772-2 | AB | 521.76 | 292.50 |
| Glyburide Tablets 1.25 mg | 100 | 59930-1592-1 | AB | 18.35 | 8.60 |
| Glyburide Tablets 2.5 mg | 100 | 59930-1622-1 | AB | 30.60 | 12.65 |
| Glyburide Tablets 5 mg | 100 | 59930-1639-1 | AB | 53.00 | 18.88 |
| | 500 | 59930-1639-2 | AB | 228.00 | 89.70 |
| | 1000 | 59930-1639-3 | AB | 440.00 | 170.00 |
| Griseofulvin Ultramicrosize Tablets, USP 125 mg | 100 | 59930-1620-1 | AB | 33.11 | 27.43 |
| Griseofulvin Ultramicrosize Tablets, USP 250 mg | 100 | 59930-1621-1 | AB | 64.96 | 53.80 |
| Griseofulvin Ultramicrosize Tablets, USP 330 mg | 100 | 59930-1624-1 | AB | 82.47 | 68.30 |
| Metoprolol 50 mg | 100 | 59930-1795-1 | AB | 41.75 | 10.12 |
| Metoprolol 100 mg | 100 | 59930-1797-1 | AB | 62.75 | 15.40 |
| Mexiletine HCl Capsules, USP 150 mg | 100 | 59930-1685-1 | AB | 69.24 | 54.35 |
| Mexiletine HCl Capsules, USP 200 mg | 100 | 59930-1686-1 | AB | 82.22 | 64.75 |
| Mexiletine HCl Capsules, USP 250 mg | 100 | 59930-1687-1 | AB | 95.66 | 75.30 |

lm70215b.

| WARRICK PRODUCTS | PACKAGE SIZE | NDC # | THER CAT | AWP | DIRECT PRICE |
|---|---|---|---|---|---|
| Albuterol, USP Inhalation Aerosol 17 g | Box of 1 | 59930-1560-1 | AN | $ 21.41 | $ 21.41 |
| Albuterol, USP Inhalation Aerosol Refill 17 g | Box of 1 | 59930-1560-2 | AN | 19.79 | 19.79 |
| Albuterol Sulfate, USP Tablets 2 mg | 100 | 59930-1520-1 | AB | 23.65 | 2.50 |
| | 500 | 59930-1520-2 | AB | 112.25 | 8.69 |
| Albuterol Sulfate, USP Tablets 4 mg | 100 | 59930-1530-1 | AB | 35.20 | 4.50 |
| | 500 | 59930-1530-2 | AB | 168.25 | 17.38 |
| Albuterol Sulfate, USP Inhalation Solution, 0.083 % | 60 x 3mL | 59930-1500-6 | AN | 72.60 | 44.86 |
| | 25 x 3mL | 59930-1500-8 | AN | 30.25 | 18.69 |
| Albuterol Sulfate, USP Solution for Inhalation, 0.5% | 20 mL | 59930-1515-4 | AN | 14.99 | 9.45 |
| Albuterol Sulfate, USP Syrup, 2 mg/5 mL | 16 oz. | 59930-1510-5 | AA | 24.75 | 9.95 |
| Augmented Betamethasone Dipropionate Ointment 0.05 % | 15 g | 59930-1575-1 | AT | 21.47 | 16.46 |
| | 45 g | 59930-1575-2 | AT | 43.20 | 33.63 |
| | 50 g | 59930-1575-3 | AT | 51.30 | 47.75 |
| Captopril Tablets, USP 12.5 mg | 100 | 59930-1655-1 | AB | 59.13 | 3.50 |
| Captopril Tablets, USP 25 mg | 100 | 59930-1656-1 | AB | 63.93 | 6.75 |
| | 500 | 59930-1656-2 | AB | 301.66 | 32.91 |
| | 1000 | 59930-1656-3 | AB | 565.95 | 64.13 |
| Captopril Tablets, USP 50 mg | 100 | 59930-1657-1 | AB | 109.62 | 12.00 |
| | 500 | 59930-1657-2 | AB | 520.71 | 58.50 |
| | 1000 | 59930-1657-3 | AB | 989.36 | 114.00 |
| Captopril Tablets, USP 100 mg | 100 | 59930-1658-1 | AB | 149.98 | 22.00 |
| Cimetidine Tablets 200 mg | 100 | 59930-1800-1 | AB | 79.92 | 36.92 |
| | 500 | 59930-1800-2 | AB | 388.60 | 166.14 |
| | 1000 | 59930-1800-3 | AB | 799.20 | 313.82 |
| Cimetidine Tablets 300 mg | 100 | 59930-1801-1 | AB | 83.65 | 38.64 |
| | 500 | 59930-1801-2 | AB | 418.26 | 173.83 |
| | 1000 | 59930-1801-3 | AB | 836.52 | 328.44 |

lm70218b.

| | | NDC # | | | Cost (WAC) |
|---|---|---|---|---|---|
| Perphenazine Tablets, USP 2 mg | 100 | 59930-1600-1 | AB | $ 46.00 | $21.85 |
| Perphenazine Tablets, USP 4 mg | 100 | 59930-1603-1 | AB | 65.00 | 28.85 |
| Perphenazine Tablets, USP 8 mg | 100 | 59930-1605-1 | AB | 78.00 | 35.98 |
| Perphenazine Tablets, USP 16 mg | 100 | 59930-1610-1 | AB | 108.00 | 48.03 |
| Selegiline HCl Tablets, USP 5 mg | 60 | 59930-1537-1 | AB | 122.45 | 97.96 |
| | 500 | 59930-1537-2 | AB | 1010.20 | 808.16 |
| | 1000 | 59930-1537-3 | AB | 2000.00 | 1600.00 |
| Theophylline Extended Release Tablets 100 mg | 100 | 59930-1650-1 | AB | 11.70 | 4.31 |
| | 500 | 59930-1650-2 | AB | 38.00 | 19.00 |
| | 1000 | 59930-1650-3 | AB | 74.00 | 36.97 |
| Theophylline Extended Release Tablets 200 mg | 100 | 59930-1660-1 | AB | 19.00 | 6.25 |
| | 500 | 59930-1660-2 | AB | 82.00 | 28.75 |
| | 1000 | 59930-1660-3 | AB | 155.00 | 54.93 |
| Theophylline Extended Release Tablets 300 mg | 100 | 59930-1670-1 | AB | 22.00 | 8.00 |
| | 500 | 59930-1670-2 | AB | 98.00 | 38.20 |
| | 1000 | 59930-1670-3 | AB | 190.00 | 73.43 |
| Theophylline Extended Release Tablets 450 mg | 100 | 59930-1680-1 | AB | 27.75 | 23.12 |

lm702185.

EXHIBIT 5

# ⊠APOTHECON

P.O. Box 4500  Princeton, NJ 08543-4500  609 897-2000

NOF
11/7

November 7, 1996

an McLeod, R.Ph.
ior Pharmacist
dicaid Office
), Box 12600
lahassee, FL 32317-2600

ar Ms. McLeod:

I am writing to inform you of changes in the availability for Apothecon's Atenolol 50 mg and 100 mg tablets. : previous NDC numbers, new NDC numbers, and pricing information for these products are listed below. ducts bearing the old NDC numbers will be available until current stocks are depleted. The last expiration date products with the previous NDC numbers is November 1, 1998.

| Product Description | Previous NDC Number | New NDC Number | Direct List Price | WAC | AWP |
|---|---|---|---|---|---|
| enolol 50 mg Tablets, 100's | 00003-5040-50 | 62269-0256-24 | $55.68 | $55.75 | $66.90 |
| enolol 50 mg Tablets, 1000's | 00003-5040-75 | 62269-0256-54 | $526.32 | $500.00 | $600.00 |
| enolol 100mg Tablets, 100's | 00003-5240-50 | 62269-0257-24 | $84.42 | $80.20 | $96.24 |

Apothecon is a participating manufacturer in the Medicaid rebate agreement. Pricing information has been : to First Databank, Red Book, and Medi-Span.

If you have any questions, please do not hesitate to contact me at (609) 897-2476 or (609) 897-6349 (fax).

Sincerely,

*Nick Di Malo /pc*

Nick DiMalo
Associate Director, Marketing

## EXHIBIT "5"

 A Bristol-Myers Squibb Company

EXHIBIT 6

# ☑APOTHECON

P.O. Box 4500   Princeton, NJ 08543-4500   609 897-2000

December 5, 1996

Susan McLeod, R.Ph.
Senior Pharmacist
Medicaid Office
P.O. Box 12600
Tallahassee, FL 32317-2600

Dear Ms. McLeod:

I am writing to amend information submitted to you on November 7, 1996 related to Apothecon's Atenolol Tablets. The corrected NDC number for Atenolol 50 mg, bottle of 1000 is shown below. In addition, wholesaler acquisition cost (WAC) for these products is provided. Previously submitted pricing information included the wholesaler list price which is based on average wholesale price (AWP).

| Product Description | NDC Number | WAC Price | AWP Price |
|---|---|---|---|
| Atenolol 50 mg Tablets, 100's | 62269-0256-24 | $3.96 | $69.69 |
| Atenolol 50 mg Tablets, 1000's | 62269-0256-30 | $30.59 | $625.00 |
| Atenolol 100 mg Tablets, 100's | 62269-0257-24 | $6.51 | $100.25 |

Thank you for your assistance. Please do not hesitate to call me at (609) 897-2476 if you have any questions.

Sincerely,

Nick DiMaio/pr

Nick DiMaio
Associate Director, Marketing

## EXHIBIT "6"

 A Bristol-Myers Squibb Company