**ANDERSON EXHIBIT 6B**

CIVIL ACTION NO. 00 CV10698 MEL

## C. DRUG MANUFACTURERS' FALSE PRICE AND COST REPRESENTATIONS INVOLVING PHYSICIANS AND PHARMACIES AND THE STATE MEDICAID PROGRAMS AS WELL AS MEDICARE

15. The DEFENDANTS reported false prices and costs for the specified Medicare/Medicaid drugs: to Medicare Carriers and Durable Medical Equipment Regional Carriers ("DMERC's") who approve and pay Medicare claims; to the States' Medicaid Pharmacy Programs which approve and pay the States' Medicaid claims; and to Medicare/Medicaid through recognized publishing compendia including First Data Bank, Medical Economics, and Medi-Span. The DEFENDANTS knew that the Medicare and States' Medicaid Programs intended to base their payments of "reimbursement" for the specified Medicare/Medicaid drugs on reasonable estimations of acquisition cost. Just as in the case of the specified retail pharmacy drugs, the Medicare and Medicaid Programs utilized the prices reported by the DEFENDANTS in estimating acquisition costs for the specified Medicare/Medicaid drugs. The DEFENDANTS marketed their specified Medicare/Medicaid drugs to Providers such as oncologists and infectious disease physicians, clinics and pharmacies (including the Relator) through financial inducements. The financial inducements included, but were not limited to, inflated spreads, which the DEFENDANTS created by reporting false, inflated prices and costs for the drugs. The DEFENDANTS were in a position to mislead the Medicare and Medicaid Programs with their false price and cost figures for the specified Medicare/Medicaid drugs because the DEFENDANTS typically reported prices generally and currently available in the marketplace for their other drugs that are not the subject of this action. The

19

DEFENDANTS thus wrongfully exploited the Medicare and States' Medicaid Programs by causing them to pay Providers grossly inflated amounts that far exceeded a reasonable reimbursement amount based on an estimation of costs. This wrongful exploitation by DEFENDANTS caused the United States and the States' Medicaid Programs to incur single damages in excess of Ten Million Dollars. The UNITED STATES and the States' Medicaid Programs are entitled to recover three times their damages plus up to Eleven Thousand Dollars per false claim, together with interest, costs and attorneys' fees.

### D. CERTAIN DEFENDANTS FALSELY IDENTIFIED THEIR DRUGS TO THE FEDERAL GOVERNMENT AS NON-INNOVATOR DRUGS IN ORDER TO PAY A SMALLER REBATE AMOUNT TO THE STATES UNDER THE MEDICAID REBATE PROGRAM

16. In addition to the fraud arising from DEFENDANTS' reporting of inflated prices and costs for Medicare/Medicaid reimbursement purposes, some of the DEFENDANTS, specifically DEY, INC., PURDUE PHARMA, L.P., PURDUE FREDERICK COMPANY, and SCHEIN PHARMACEUTICAL, INC., (the "REBATE DEFENDANTS") underpaid the rebates they owed pursuant to the federal Medicaid Rebate Program as required by the Omnibus Budget Reconciliation Act of 1990 ("OBRA 1990"), which established the Medicaid Rebate Program (the "Rebate Program"). PL101-508, 104 Stat. 1388 (1990).

17. As a condition of coverage of their drugs by State Medicaid Programs, the DEFENDANTS have agreed to participate in the Medicaid Rebate Program. The Rebate Program requires all drug manufacturers whose drugs are paid for by Medicaid to enter

into an agreement with the Secretary of the federal Department of Health and Human Services. Under the Medicaid Rebate Agreement, the manufacturer agrees to pay each state a quarterly rebate comprising a percentage of the drug sales revenue the manufacturer has received in that quarter as a result of the state's Medicaid utilization of each of the manufacturer's Medicaid covered drugs. The amount of the rebate due for each drug largely depends upon which of two categories a given drug falls under. One category consists of single source drugs and innovator multiple source drugs (hereinafter collectively referred to as "innovator drugs") and includes all drugs being sold under a New Drug Application ("NDA") approved by the Food and Drug Administration ("FDA"). The other category consists of non-innovator multiple source drugs (hereinafter referred to as "non-innovator drugs") and includes all those drugs sold under an Abbreviated New Drug Application ("ANDA") approved by the FDA.

18.     At all times relevant herein, the rebate percentage applicable to revenue derived from sales of an innovator drug was larger than the rebate percentage applicable to revenue derived from sales of a non-innovator drug. Throughout the time periods specifically set forth herein, the REBATE DEFENDANTS have falsely reported to the Federal Government that certain of their prescription drugs (hereinafter the "Rebate Drugs") were non-innovator drugs when, in truth, they were innovator drugs. These false reports have enabled the REBATE DEFENDANTS to improperly pay smaller rebate amounts and avoid paying the larger rebate amounts they owed, all to the direct detriment of both the Federal and State governments, since the Federal and State governments

21

jointly fund Medicaid. The Federal Government's share of Medicaid funding is 50% or more for every state.

19.   The REBATE DEFENDANTS were also able to increase their potential to benefit financially from their reporting of inflated prices and costs for reimbursement purposes by falsely reporting their drugs under the Rebate Program as being non-innovators as opposed to innovators. As explained further herein, this result arose from the different formulas used to calculate the rebate amounts for innovator and non-innovator drugs. The added benefit of a non-innovator drug classification provided a further motive for REBATE DEFENDANTS to falsely report their drugs as non-innovators, separate and apart from the motive of minimizing the amount paid back to Medicaid pursuant to the Rebate Program.

### E.   DAMAGES CAUSED BY THE DEFENDANTS' FALSE CLAIMS SCHEMES

20.   The DEFENDANTS are liable for damages based on the amounts by which they caused inflated Medicare and Medicaid reimbursements through their false price representations that did not fairly and reasonably represent the prices generally and currently available in the marketplace. In addition, the DEFENDANTS are liable for damages based on the amounts by which their false representations enabled them to decrease or avoid their monetary obligations under the Medicaid Rebate Program.

21.   The calculation of damages arising from the DEFENDANTS' false price representations and false representations that drugs were non-innovators must further

take into consideration the rebates paid by the DEFENDANTS to the States under the Medicaid Rebate Program. To the extent any DEFENDANT underpaid a rebate that it owed for any of the specified drugs, or for other drugs sold with any of the specified drugs through bundling agreements, the DEFENDANTS' underpayments to the Medicaid Rebate Program will increase total damages.

22. The total amount of damages for which the DEFENDANTS are liable includes the damages incurred by the United States Government alleged herein, as well as damages incurred by each of the States' Medicaid Programs arising from the same transactions and occurrences, recoverable under the States' laws as contemplated by 31 U.S.C. § 3732(b), and recoverable by the United States on behalf of the States pursuant to such federal laws as may be applicable.

23. Damages incurred by the United States as a result of the DEFENDANTS' fraud on the Medicaid Program further include, but are not necessarily limited to, the amount by which the United States paid more to fund its share of each State's Medicaid Program than would have been required to pay, but for:

   a. The States' payments of inflated drug reimbursement amounts due to the DEFENDANTS' false representations of price and cost information about the specified drugs; and

   b. The States' collections from the DEFENDANTS of less than the amounts of quarterly Medicaid Rebates prescribed by law, as a result of those DEFENDANTS' false representations that drugs were non-innovator drugs and/or of those

DEFENDANTS' false representations of pricing information of the specified drugs or drugs sold with any of the specified drugs through bundling agreements, required under the Medicaid Rebate Program.

24. Damages incurred by the United States as a result of the DEFENDANTS' fraud on the Medicare Program further include, but are not necessarily limited to, the total of the amounts by which payments of United States funds to the Medicare Carriers and ESRD Medicare claims contractors exceeded the amount that such payments would have been, but for the Carriers' payments of inflated drug reimbursement amounts due to the DEFENDANTS' false representations of price and cost information about the specified drugs.

## SECTION NO. 2
## THE PARTIES

25. The Plaintiff in this action is the UNITED STATES. At all times material to this civil action, the United States Department of Health and Human Services ("HHS"), the Health Care Financing Administration ("HCFA") and its successor agency the Centers for Medicare and Medicaid Services ("CMS"), and The Bureau of Program Operations ("B.P.O.") were agencies and instrumentalities of the UNITED STATES, and their activities, operations and contracts in administering the Medicare and Medicaid programs were paid from UNITED STATES' funds. The UNITED STATES and its subcontractors performing on behalf of the UNITED STATES provided Medicare benefits to qualified beneficiaries, which included payment of claims for the prescription drugs specified herein manufactured

by the DEFENDANTS, and utilized the false and fraudulent price and cost representations made by the DEFENDANTS in approving and paying claims.

26. The States, United States Territories, and the District of Columbia provided Medicaid benefits to qualified recipients, which included payment of claims for the prescription drugs specified herein manufactured by the DEFENDANTS, and utilized the false and fraudulent price and cost representations made by the DEFENDANTS in approving and paying claims. A significant percentage (at least 50%) of said Medicaid reimbursement was paid from United States Government funds pursuant to 42 U.S.C. § 1396b.

27. The Relator, VEN-A-CARE, is a corporation organized under the laws of the State of Florida, with its principal offices in Key West, Florida. The Relator's principal officers and directors during the time relevant to this action include Zachary T. Bentley and T. Mark Jones, who are each citizens of the United States and reside in Key West, Florida. The Relator is a pharmacy and is licensed to provide prescription drugs specified in this Third Amended Complaint and has, during at least part of the relevant period of this Complaint, provided drugs reimbursed by Medicare and Florida Medicaid.

28. DEFENDANT, ABBOTT LABORATORIES, INC., f/k/a Abbott Laboratories, ("ABBOTT"), is a corporation organized under the laws of Illinois with its principal offices in North Chicago, Illinois. At all times material to this civil action, ABBOTT has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing or selling through wholesalers its drugs, including those

CIVIL ACTION NO. 00 CV10698 MEL

identified in this Complaint, in the District of Massachusetts, knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds. At the end of April, 2004 ABBOTT spun off its Hospital Products Division into a separate corporation. The new corporation formed was HOSPIRA, INC.("HOSPIRA"). HOSPIRA is a corporation organized under the laws of Delaware with its principal offices in Lake Forest, Illinois. HOSPIRA was incorporated on September 16, 2003 as ABC 2003 NEWCO, INC., a wholly owned subsidiary of ABBOTT. On December 12, 2003, ABC 2003 NEWCO, INC. changed its name to HOSPIRA, INC. On or about May 3, 2004, HOSPIRA began trading as an independent company after ABBOTT spun off its Hospital Products business under HOSPIRA. ABBOTT is named as a defendant throughout the relevant time period. From the beginning of the relevant time period until in or about May 2004, HOSPIRA is named as a successor in interest; after that time until the present, HOSPIRA is named as a defendant in its own right. ABBOTT and HOSPIRA are referred to collectively as ABBOTT. At all times material to this civil action, HOSPIRA has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

29. The DEFENDANT ALPHARMA USPD, INC. f/k/a BARRE-NATIONAL, INC. ("ALPHARMA USPD"), is a corporation organized under the laws of Maryland with its

principal offices in Baltimore, Maryland. BARRE PARENT CORP. ("BARRE"), a corporation organized under the laws of Delaware with its principal offices in Baltimore, Maryland is the corporate parent of ALPHARMA USPD. ALPHARMA, INC. ("ALPHARMA") is a corporation organized under the laws of Delaware with its principal offices in Fort Lee, New Jersey and is the ultimate parent of BARRE. To the extent the acts of ALPHARMA USPD at issue here were performed or otherwise attributable to its corporate parents BARRE and/or ALPHARMA, or any subsidiary or affiliate to it, then judgment should be entered against them where appropriate. At all times material in this civil action, ALPHARMA USPD has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

30. DEFENDANT, APOTHECON, INC. ("APOTHECON"), is a corporation organized under the laws of Delaware with its principal offices in New York, New York and is a subsidiary of DEFENDANT BRISTOL-MYERS SQUIBB COMPANY. BRISTOL-MYERS SQUIBB, a corporation organized under the laws of Delaware with its principal offices in New York, New York, is the corporate parent of APOTHECON and to the extent that the acts of APOTHECON at issue herein were performed by or otherwise attributable to BRISTOL-MYERS SQUIBB, or any subsidiary or affiliate of it, then judgment should be

entered against BRISTOL-MYERS SQUIBB where appropriate. In December 2000, GENEVA PHARMACEUTICALS, INC. acquired the United States rights of APOTHECON. At all times material to this civil action, APOTHECON has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds. At all times material hereto, the senior management and officers of BRISTOL-MYERS SQUIBB and GENEVA had knowledge of the false price and cost representations of APOTHECON and possessed the managerial ability and duty to intervene and cause APOTHECON to cease making the false price and cost representations. However, rather than take such action, the senior management and officers of BRISTOL-MYERS SQUIBB and GENEVA permitted and encouraged APOTHECON to continue making its false representations in order to increase the economic benefit of the ownership interests in APOTHECON of BRISTOL-MYERS SQUIBB and later GENEVA.

31. The DEFENDANT, AVENTIS PHARMACEUTICALS, INC. ("AVENTIS"), is a Delaware corporation with its headquarters in Bridgewater, New Jersey. AVENTIS was formed on or about December 15, 1999, when HOECHST MARION ROUSSEL, INC. merged with RHONE-POULENC RORER PHARMACEUTICALS, INC. AVENTIS is properly named as a defendant herein from the beginning of the relevant time period until

December 15, 1999 as a successor by merger with respect to HOECHST MARION ROUSSEL, INC. and immediately after that time period until the present as a defendant in its own right. At all times material to this civil action, AVENTIS has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and Medicare beneficiaries and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

32.   The DEFENDANT BARR PHARMACEUTICALS, INC. ("BPI") is a corporation organized under the laws of Delaware with its principal offices in Woodcliff Lake, New Jersey. The DEFENDANT, BARR LABORATORIES, INC. ("BARR LABS") is a corporation organized under the laws of New York with its principal offices in Pomona, New York and is a subsidiary of BPI. DURAMED RESEARCH, INC. ("DURAMED") is also a subsidiary of BPI and is organized under the laws of Delaware with its principal offices in Cincinnati, Ohio. BARR LABS and DURAMED are referred to collectively herein as "BARR". To the extent the acts of BARR at issue herein were performed or otherwise attributable to BPI or any subsidiary or affiliate thereof, then judgment should be entered against BPI, where appropriate. At all times material in this civil action, BARR has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare and Medicaid

recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

33. DEFENDANT, BRISTOL-MYERS SQUIBB COMPANY ("BRISTOL-MYERS") f/k/a BRISTOL-MYERS COMPANY ("BRISTOL-MYERS") is a corporation organized under the laws of Delaware with its principal offices in New York, New York. At all times material to this civil action, BRISTOL-MYERS has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and Medicare beneficiaries and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

34. The DEFENDANT, DEY, INC., is a corporation organized under the laws of Delaware with its principal offices in Napa, California. DEY, INC. is the general partner of DEY, L.P., a limited partnership organized and existing under the laws of the State of Delaware. EM PHARMA, INC., a division of DEY, INC., is organized under the laws of Delaware also with principal offices in Napa, California. At all times material hereto, all acts committed by or on behalf of DEY, INC. were also committed by or on behalf DEY, L.P., a limited partnership. DEY, INC. and DEY L.P. are referred to herein collectively as "DEY". At all times material to this civil action, DEY has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this

CIVIL ACTION NO. 00 CV10698 MEL

Complaint, to purchasers within the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and Medicare beneficiaries and for which claims would be paid from Medicare and Medicaid funds. The DEFENDANT EMD PHARMACEUTICALS, INC. ("EMD") is a corporation whose headquarters are located in Durham, North Carolina. EMD is the sole shareholder of DEY. DEFENDANT LIPHA, S.A. ("LIPHA") is a corporation based in Lyon, France. LIPHA is the sole shareholder of EMD. DEFENDANT MERCK-LIPHA, S.A. ("MERCK-LIPHA") is a corporation based in Lyon, France. MERCK-LIPHA is the sole shareholder of LIPHA. DEFENDANT MERCK KGaA ("MERCK") is a German company based in Darmstadt, Germany. MERCK is the sole shareholder of MERCK-LIPHA. To the extent the acts of DEY at issue herein were performed by or otherwise attributable to EMD, LIPHA, MERCK-LIPHA or MERCK, or to any subsidiary or affiliate of any of these four defendants, then judgment should be entered against EMD, LIPHA, MERCK-LIPHA or MERCK where appropriate. At all times material hereto, the senior management and officers of EMD, LIPHA, MERCK and MERCK-LIPHA had knowledge of the false price and cost representations of DEY and possessed the managerial ability and duty to intervene and cause DEY to cease making the false price and cost representations. However, rather than take such action, the senior management and officers EMD, LIPHA, MERCK and/or MERCK-LIPHA permitted and encouraged DEY to continue making its false representations in order to increase the economic benefit of the ownership interests in DEY of EMD, LIPHA, MERCK and MERCK-LIPHA. MERCK was aware of the acts of its subsidiaries described herein including DEY and EM PHARMA,

both run by Charles Rice. For example, when EM PHARMA raised the AWP on or about May 1998 on Euthyrox, Mr. Rice informed MERCK. In a Sales Commentary dated May 1, 1998 addressing the reasons for increasing the AWP, Mr. Rice explained to MERCK that the AWP increase will not impact the selling price but will increase the Spread and therefore assist in the marketing of Euthyrox:

> In May we will revise our AWP [on Euthyrox] to improve our position relative to the competition and communicate this to customers through new price lists. This could result in helping Euthyrox displace existing substitution generic business, which will help sales in the short term. This does not impact the selling price on our margins.

DL 82805-06

35. The DEFENDANT ETHEX CORPORATION ("ETHEX") is a corporation organized under the laws of Missouri with its principal offices in Maryland Heights, Missouri. The DEFENDANT KV PHARMACEUTICAL COMPANY ("KV") is a corporation organized under the laws of Delaware with its principal offices in Saint Louis, Missouri and is the corporate parent of ETHEX. To the extent the acts of ETHEX at issue herein were performed or otherwise attributable to KV or any subsidiary or affiliate thereof, then judgment should be entered against KV, where appropriate. At all times material in this civil action, ETHEX has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

36. DEFENDANT, GENEVA PHARMACEUTICALS INC. ("GENEVA"), is a corporation organized under the laws of Colorado with its principal offices in Princeton, New Jersey. GENEVA became known as SANDOZ, INC. ("SANDOZ") in or about December, 2003. GENEVA n/k/a SANDOZ is a corporation organized under the laws of Colorado with its principal offices in Princeton, New Jersey. GENEVA is named as a defendant throughout the relevant time period. From the beginning of the relevant time period until in or about December 2003, SANDOZ is named as a successor in interest; after that time until the present, SANDOZ is named as a defendant in its own right. GENEVA and SANDOZ are referred to collectively as GENEVA. At all times material to this civil action, GENEVA has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

37. The DEFENDANT, GLAXO WELLCOME, INC. f/k/a BURROUGHS WELLCOME, INC., ("GLAXO WELLCOME/CERENEX" or "GLAXO"), was, until on or about December 27, 2000, a corporation organized under the laws of North Carolina with its principal offices in Research Triangle Park, North Carolina that sometimes transacted business through its CERENEX division. GLAXO WELLCOME/CERENEX is named herein as a defendant from the beginning of the relevant time period until the present. On or about December 27, 2000, GLAXO WELLCOME/CERENEX merged with SMITHKLINE

BEECHAM CORPORATION to form GLAXOSMITHKLINE plc, which is incorporated under British law with United States operational headquarters in Philadelphia, Pennsylvania and Research Triangle Park, North Carolina. At all times material to this civil action, GLAXO WELLCOME/CERENEX transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, to purchasers within the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds. GLAXO WELLCOME/CERENEX and GLAXOSMITHKLINE plc are referred to collectively herein as the GLAXO DEFENDANTS.

38.    The DEFENDANT, HOECHST MARION ROUSSEL, INC. ("HOECHST"), was until on or about December 15, 1999, a corporation organized under the laws of Delaware, with its principal offices in Kansas City, Missouri. On or about December 15, 1999 HOECHST merged with RHONE-POULENC RORER PHARMACEUTICALS, INC. to form AVENTIS PHARMACEUTICALS, INC. ("AVENTIS"), a Delaware corporation with its headquarters in Bridgewater, New Jersey. HOECHST and AVENTIS are collectively referred to as HOECHST. At all times material to this civil action, HOECHST transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, to purchasers within the District of Massachusetts knowing that

the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

39. DEFENDANT, MAJOR PHARMACEUTICALS, INC.("MAJOR"), is a corporation organized under the laws of Delaware with its principal offices in Chicago, Illinois until on or about July 1, 1997 when it merged with several other companies and became one entity under the name of HARVARD DRUG GROUP, LLC ("HARVARD"). HARVARD continues to do business under the name of MAJOR PHARMACEUTICALS. HARVARD is a limited liability company organized under the laws of Michigan with its principal offices in Livonia, Michigan. MAJOR is named as a DEFENDANT throughout the relevant time period. From the beginning of the relevant time period until on or about July 1, 1997, HARVARD is named as a successor by merger. After July 1, 1997 until the present, HARVARD is named as a DEFENDANT in its own right. HARVARD and MAJOR are referred to collectively herein as HARVARD. At all times material to this civil action, HARVARD has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

40. DEFENDANT, MYLAN PHARMACEUTICALS, INC. ("MYLAN"), is a corporation organized under the laws of West Virginia with its principal offices in