**ANDERSON EXHIBIT 6C**

Morgantown, West Virginia. MYLAN is a subsidiary of MYLAN LABORATORIES, INC., a corporation organized under the laws of Pennsylvania with principal offices in Canonsburg, Pennsylvania. To the extent the acts of MYLAN PHARMACEUTICALS, INC. at issue herein were performed by or are otherwise attributable to MYLAN LABORATORIES, INC., or any subsidiary or affiliate thereof, then judgment should be entered against it where appropriate. At all times material to this civil action, MYLAN has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

41.   DEFENDANT, PAR PHARMACEUTICALS, INC. ("PAR") is a corporation organized under the laws of New Jersey with principal offices in Spring Valley, New Jersey. PAR is a subsidiary of PHARMACEUTICAL RESOURCES, INC. n/k/a PAR PHARMACEUTICAL COMPANIES, INC. ("PPC"). PPC is organized under the laws of the State of Delaware, having principal offices in Woodcliff Lake, New Jersey. To the extent the acts of PAR at issue herein were performed or otherwise attributable to PPC or any subsidiary or affiliate thereof, then judgment should be entered against PPC where appropriate. At all times material in this civil action, PAR has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of

Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

42. DEFENDANT, PURDUE PHARMA L.P. ("PURDUE PHARMA"), is a limited partnership organized and existing under the laws of the State of Delaware, having places of business in Stamford, Connecticut. PURDUE PHARMA, INC., organized under the laws of New York with its principal offices in New York, New York, is the corporate parent of PURDUE PHARMA. To the extent the acts of PURDUE PHARMA at issue herein were performed by or otherwise attributable to PURDUE PHARMA, INC. or any subsidiary or affiliate thereof, then judgment should be entered against PURDUE PHARMA, INC., where appropriate. At all times material in this civil action, PURDUE PHARMA has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

43. DEFENDANT, PURDUE FREDERICK COMPANY ("PURDUE FREDERICK"), is a corporation organized and existing under the laws of the State of New York, having its principal place of business in Stamford, Connecticut. At all times material in this civil action, PURDUE FREDERICK has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts

knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

44.     DEFENDANT, PUREPAC PHARMACEUTICAL CO. ("PUREPAC"), is a corporation organized and existing under the laws of the State of Delaware having principal offices in Elizabeth, New Jersey. ALPHARMA, INC. organized under the laws of Delaware with its principal offices in Fort Lee, New Jersey, is the corporate parent of PUREPAC. To the extent the acts of PUREPAC at issue herein were performed or otherwise attributable to ALPHARMA, INC. or any subsidiary or affiliate thereof, then judgment should be entered against ALPHARMA, INC. where appropriate. At all times material in this civil action, PUREPAC has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

45.     DEFENDANT, QUALITEST PHARMACEUTICALS, INC. ("QUALITEST"), is a corporatoin organized under the laws of the State of Alabama having principal offices in Huntsville, Alabama. At all times material in this civil action, QUALITEST has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare and

Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

46. DEFENDANT, ROXANE LABORATORIES, INC. ("ROXANE"), is a corporation organized under the laws of Delaware with its principal offices in Cleveland, Ohio. BOEHRINGER INGELHEIM CORPORATION ("BOEHRINGER"), a corporation organized under the laws of Nevada, with its principal offices in Ridgefield, Connecticut is the corporate parent of ROXANE. BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. ("BIPI"), a corporation organized under the laws of Delaware, with its principal offices in Ridgefield, Connecticut, is a subsidiary of BOEHRINGER. BOEHRINGER is a wholly owned subsidiary of PHARMA-INVESTMENT LIMITED ("PHARMA-INVESTMENT"), a Canadian company headquartered in Burlington, Ontario. PHARMA-INVESTMENT is a wholly owned subsidiary of BOEHRINGER INGELHEIM INTERNATIONAL GmbH ("BGmbH"), also known as BOEHRINGER INGELHEIM AUSLANDSBETEILIGUNGS GmbH, a German Corporation headquartered in Ingelheim am Rhein, Germany. BgmbH is a wholly owned subsidiary of C.H. BOEHRINGER SOHN ("CHBS") a German corporation headquarted in Ingelheim am Rhein, Germany. At all times material to this civil action, ROXANE has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and

Medicaid funds. At all times material hereto, the senior management and officers of BOEHRINGER, BIPI, PHARMA-INVESTMENT and BGmbH had knowledge of the false price and cost representations of ROXANE and possessed the managerial ability and duty to intervene and cause ROXANE to cease making the false price and cost representations. However, rather than take such action, the senior management and officers of BOEHRINGER, BIPI, PHARMA-INVESTMENT and BGmbH permitted and encouraged ROXANE to continue making its false representations in order to increase the economic benefit of the ownership interests in ROXANE, BOEHRINGER, BIPI, PHARMA-INVESTMENT and BGmbH. Furthermore, BOEHRINGER, PHARMA-INVESTMENT and BGmbH, ROXANE'S corporate parents, aided and abetted ROXANE'S actions. To the extent that the acts of ROXANE at issue herein were performed by or otherwise attributable to BOEHRINGER, BIPI, PHARMA-INVESTMENT, BgmbH, CHBS, or any subsidiary or affiliate of it, then judgment should be entered against to BOEHRINGER, BIPI, PHARMA-INVESTMENT, BgmbH or CHBS where appropriate.

47. The DEFENDANT, SCHEIN PHARMACEUTICAL INC. ("SCHEIN"), is a corporation organized under the laws of Delaware with its principal offices in Florham Park, New Jersey. In or about September 2000, SCHEIN was merged into WATSON PHARMACEUTICALS, INC. ("WATSON"), a Nevada corporation with its headquarters in Corona, California. WATSON is properly named as a defendant herein as a successor by merger from the beginning of the relevant time period until it merged with SCHEIN and from that time forward as a defendant in its own right. At all times material to this civil

action, SCHEIN and WATSON have transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers, including those identified in this Complaint, to purchasers within the District of Massachusetts knowing that such drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

48.     The DEFENDANT, SMITHKLINE BEECHAM CORPORATION ("SMITHKLINE"), was a corporation organized under the laws of Pennsylvania with its principal offices in Philadelphia, Pennsylvania. SMITHKLINE is named as a defendant from the beginning of the relevant time period through the present. On or about December 27, 2000, GLAXOWELLCOME/CERENEX merged with SMITHKLINE BEECHAM CORPORATION to form GLAXOSMITHKLINE plc, which is incorporated under British law with United States operational headquarters in Philadelphia, Pennsylvania and Research Triangle Park, North Carolina. At all times material to this civil action, SMITHKLINE transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, to purchasers within the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds. SMITHKLINE and GLAXOSMITHKLINE plc are referred to collectively herein as the SMITHKLINE DEFENDANTS.

49.     DEFENDANT TEVA PHARMACEUTICALS USA ("TEVA"), is a corporation organized under the laws of Delaware with its principal offices in North Wales, PA. TEVA is a subsidiary of TEVA PHARMACEUTICAL INDUSTRIES LTD., a foreign corporation headquartered in Petach Tikva, Israel. To the extent the acts of TEVA at issue herein were performed by or are otherwise attributable to TEVA PHARMACEUTICAL INDUSTRIES LTD., or any subsidiary or affiliate thereof, then judgment should be entered against it where appropriate. At all times material to this civil action, TEVA has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicaid funds.

50.     The DEFENDANT, UDL LABORATORIES, INC. ("UDL") is a corporation organized under the laws of Illinois with its principal offices in Rockford, Illinois. UDL is a wholly-owned subsidiary of DEFENDANT MYLAN LABORATORIES, INC. and to the extent the acts of UDL that are at issue herein were performed by or otherwise attributable to MYLAN LABORATORIES, INC., or any subsidiary or affiliate of it, then judgment should be entered against MYLAN LABORATORIES, INC. where appropriate. At all times material to this civil action, UDL has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts

knowing that the drugs would be supplied to Medicaid recipients and Medicare beneficiaries and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

51.   The DEFENDANT, WARRICK PHARMACEUTICALS CORPORATION ("WARRICK"), is a corporation organized under the laws of Delaware represented that its principal offices are in Reno, Nevada.  However, WARRICK'S principal offices are in Madison, New Jersey in the same offices as SCHERING CORPORATION ("SCHERING"). DEFENDANT WARRICK has asserted in other Court actions that SCHERING-PLOUGH CORPORATION("SCHERING-PLOUGH"), a corporation organized under the laws of New Jersey, with its principal offices in Kenilworth, New Jersey, is a stock holding company and SCHERING is the direct corporate parent of WARRICK and to the extent that the acts of WARRICK at issue herein were performed by or otherwise attributable to SCHERING-PLOUGH, SCHERING or any subsidiary or affiliate of it, then judgment should be entered against SCHERING-PLOUGH or SCHERING where appropriate.   Furthermore, SCHERING sometimes did business as SCHERING LABORATORIES.  At all times material to this action, WARRICK has transacted business in the Federal District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, in the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.  At all times material hereto, the senior

management and officers of SCHERING and SCHERING-PLOUGH had knowledge of the false price and cost representations of WARRICK and possessed the managerial ability and duty to intervene and cause WARRICK to cease making the false price and cost representations. However, rather than take such action, the senior management and officers of SCHERING and SCHERING-PLOUGH permitted and encouraged WARRICK to continue making its false representations in order to increase the economic benefit of the ownership interests in WARRICK, SCHERING and SCHERING-PLOUGH. The senior management representatives and employees of SCHERING, including but not limited to John Hoffman, SCHERING'S corporate counsel, and Richard Zahn, SCHERING'S President, actively participated in WARRICK'S creation and reporting of false price and cost information for the purpose of causing inflated Medicare and Medicaid reimbursement for its drugs.

52.     The DEFENDANT, WATSON LABORATORIES ("WATSON"), is a wholly owned subsidiary of WATSON PHARMACEUTICALS, INC., a corporation organized under the laws of Nevada with its principal offices in Corona, California and to the extent that the acts of WATSON at issue herein were performed by or otherwise attributable to WATSON, or any subsidiary or affiliate of it, then judgment should be entered against WATSON where appropriate. At all times material to this action, WATSON has transacted business in the Federal District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its drugs, including those identified in this Complaint, in the District of Massachusetts knowing that the drugs would be supplied

to Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

53.     The DEFENDANT, ZENITH GOLDLINE PHARMACEUTICALS, INC. ("ZENITH") is a corporation organized under the laws of Florida with its principal offices in Miami, Florida. In 2001, ZENITH changed it name to IVAX PHARMACEUTICALS, INC. hereinafter referred to as "ZENITH/IVAX". IVAX CORPORATION, a corporation organized under the laws of Delaware with its principal offices in Miami, Florida, is the corporate parent of ZENITH/IVAX and to the extent that the acts of ZENITH/IVAX at issue herein were performed by or otherwise attributable to IVAX CORPORATION, or any subsidiary or affiliate of it, then judgment should be entered against IVAX CORPORATION where appropriate. At all times material to this civil action, ZENITH/IVAX has transacted business in the Federal Judicial District of Massachusetts by, including but not limited to, selling directly, distributing, or selling through wholesalers its specified prescription drugs in the District of Massachusetts knowing that the drugs would be supplied to Medicare beneficiaries and Medicaid recipients and that reimbursement claims for the drugs would be paid to Providers from Medicare and Medicaid funds.

54.     Any and all acts alleged herein to have been committed by any or all of the DEFENDANTS were committed by each DEFENDANT'S parents, affiliates, subsidiaries, officers, directors, employees, or agents who at all times acted on behalf of their respective DEFENDANT.

## SECTION NO. 3
## JURISDICTION & VENUE

55. Jurisdiction is founded upon the Federal False Claims Act, 31 U.S.C. §3729-32, specifically 31 U.S.C. §3730, and also 28 U.S.C. §§1331, 1345.

56. Jurisdiction over claims under State law for the recovery of funds paid by a state or local government arising from the same transaction or occurrence, as this False Claims Act case, is founded upon the Federal False Claims Act, 31 USC 93732(b).

57. Venue in the District of Massachusetts is appropriate under 31 U.S.C. §3732(a). Sufficient contacts exist for jurisdiction and venue in this District in that each of the DEFENDANTS transacted business in the District of Massachusetts by selling directly, distributing or selling through wholesalers their prescription drugs, including those identified in this Complaint, in the District of Massachusetts, knowing that those drugs would be supplied to Medicare beneficiaries and Medicaid recipients in the District of Massachusetts and that claims for reimbursement with respect to the specified drugs would be made by Medicaid and Medicare Providers.

58. The Relator has standing to bring and has brought this action on behalf of itself and the United States pursuant to the provisions of 31 U.S.C. §3730.

CIVIL ACTION NO. 00 CV10698 MEL

## SECTION NO. 4
## HOW DRUG MANUFACTURERS' PRICE AND COST REPRESENTATIONS ARE OBTAINED BY THE MEDICARE AND STATE MEDICAID PROGRAMS WHICH THEN UTILIZE THEM TO CALCULATE DRUG REIMBURSEMENT AMOUNTS

59.  Prescription drug manufacturers, including the DEFENDANTS, and the Medicare and Medicaid Programs, drug price and cost publishing services, hospitals, pharmacies, physicians, wholesalers, private third party payors and administrators (e.g., insurance companies), governmental health benefit plans (e.g., federal and state employee plans) and others involved in the health care industry communicate about drug prices and costs by describing prices and costs with terms such as:

   a)   AWP

   b)   WAC

   c)   List Price

   d)   DP

   e)   Wholesale Net Price

60.  AWP is the drug price most commonly utilized by the healthcare industry and by third party payors, including the Medicare and State Medicaid Programs, to calculate the reimbursement amount for a given drug.

61.  During the time period covered by this Complaint, Medicare based its reimbursement for prescription drugs on the reported AWP of each drug, as represented by the manufacturer.

62.     The States' Medicaid programs, as required by 42 CFR §§447.331 and 447.332, reimburse Providers for drugs at the lower of: (1) Estimated Acquisition Cost ("EAC") plus a reasonable dispensing fee; (2) provider's Usual and Customary charges; (3) Federal Upper Limit(if applicable); and (4) State Maximum Allowable Charge (if applicable). CMS, which must approve all State reimbursement plans for prescription drugs, has approved approximately 48 states' plans (plus that of Washington, D.C.) whose methodology for arriving at the provider's EAC includes discounting a percentage off the reported AWP prices. This discounting ranges from AWP minus 5% to AWP minus 40%. Texas uses price representations obtained directly from drug manufacturers. Some states' formulas are WAC plus a percentage or an AWP discount/WAC hybrid. Some states, such as Texas and California, also consider the manufacturer's reports of DP in setting reimbursement.

63.     Medical Economics, Inc., the Hearst Corporation (First Data Bank) and Medi-Span are nationally recognized companies that specialize in gathering drug pricing and cost information, including AWP, WAC and DP.

64.     Medical Economics, Inc. annually publishes a book entitled *Drug Topics Red Book*, (along with periodic addendums to that book), which expresses drug prices and costs in terms of AWP. Medical Economics, Inc. also publishes a monthly update that contains current packaging and pricing data expressed in terms of AWP on the most widely prescribed drugs in the United States, together with any updated prices, expressed in terms of AWP, for new products.

65. The Relator's information provided to the Government reveals that approximately 90% of all Medicare Carriers contracted by CMS to process Medicare Part B reimbursement claims use the AWPs, as represented in Medical Economics annual *Drug Topics Red Book* publication and the *Red Book* monthly updates, in determining the reimbursement amounts for Medicare prescription drug claims.

66. Additionally, the DEFENDANTS regularly make representations of false price and cost information directly to the Carriers.

67. The Hearst Corporation, through its First DataBank Division, published annually until 1997 a book titled *the First DataBank Blue Book* that expressed drug prices and costs in terms of AWP, Suggested Retail Price ("SRP") and Direct Price. Throughout the relevant time period First DataBank (sometimes referred to herein as "FDB") has also offered an automated database service through which the DEFENDANTS reported their representations in the form of AWP, Direct Price and Wholesale Net/WAC.

68. First DataBank's automated service provides drug prices and costs for approximately 60,000 national drug code numbers ("NDC" numbers), comprising different drugs, sizes and strengths expressed in terms of AWP, Wholesale Net and Direct Price. First DataBank, at least on an annual basis, verifies data directly with each drug manufacturer. Each drug manufacturer, including each DEFENDANT, filled out, at the request of First DataBank, a "National Drug Data File Product Update Report" including pricing information such as WAC (Wholesale Net), Direct Price ("DP"), and AWP. The Relator's investigation has determined that more than 90% of the States' Medicaid

Pharmacy Programs have utilized the AWPs, DPs and WACs as reported by First DataBank through either the Blue Book or First DataBank's automated services in determining reimbursement amounts for Medicaid prescription drug claims.

69.  Medi-Span provides drug prices and costs for approximately 60,000 NDC numbers comprising different drugs, sizes and strengths through an electronic or automated service expressed in terms of AWP, Direct Price and WAC. The Relator's investigation has determined that at least one state has at times used Medi-Span's automated service in determining reimbursement amounts. Medi-Span was acquired by the Hearst Corporation/First DataBank in January 1998 and was subsequently divested to Lippincott, Williams & Wilkins, a subsidiary of Wolters Kluwer, in January, 2002. From the beginning of 1998 through 2001, therefore, First DataBank included Medi-Span. Medi-Span's reported drug prices are the same as or similar to the prices reported by First DataBank. Any variance between the prices reported by the two companies is minimal.

70.  In determining the drug pricing data which they report, First DataBank, Medical Economics and Medi-Span all receive and rely upon the price and cost representations of the respective drug manufacturers, including the DEFENDANTS.

71.  The drug manufacturers made or cause to be made price reports including representations of AWP that were ultimately reported by First DataBank, Medical Economics and Medi-Span.

72.  The Relator's investigation has determined that drug manufacturers, including the DEFENDANTS, provided First DataBank, Medical Economics and Medi-Span with the