# ANDERSON EXHIBIT 6G

## SECTION NO. 14
## THE DEFENDANTS HAVE REPEATEDLY UNDERMINED EFFORTS OF THE FEDERAL AND STATE GOVERNMENTS TO ENSURE THAT GOVERNMENT DRUG REIMBURSEMENT AMOUNTS ARE REASONABLE

183. The DEFENDANTS each knowingly and actively impeded the numerous efforts made by the government to provide for reimbursement of prescription drugs at a reasonable rate.

184. **Defendants Intentionally Impeded the Governments' Efforts to Accurately Estimate Providers' Drug Costs under Medicare/Medicaid**. DEFENDANTS impede such efforts on the part of the government by knowingly reporting inflated price and cost information, as alleged throughout this Third Amended Complaint, and by additional affirmative acts such as those alleged herein.

185. **Some State Medicaid Programs Took Exceptional Measures In Their Efforts To Verify That Drug Manufacturers Provide Good Faith Price And Cost Information For Reimbursement Purposes.** By way of example, the Texas Medicaid authorities, during the time at issue in this Third Amended Complaint, required each of the DEFENDANTS to certify, in writing, their price and cost representations as a condition of their drugs being covered for reimbursement. The Relator's investigation has revealed that each of the DEFENDANTS, when responding to Texas, either affirmatively lied about the prices generally and currently available in the marketplace, or omitted material information in order to mislead the Texas Medicaid officials.

186. Had the DEFENDANTS disclosed price and cost information about the specified drugs based on prices generally and currently available in the marketplace, Texas

Medicaid would have set reimbursement amounts for the specified drugs consistent with a reasonable estimation of acquisition cost. Because each of the DEFENDANTS having a duty to make disclosures based on prices available in the marketplace made false statements or omissions about the specified drugs, Texas Medicaid reimbursement was paid at substantially greater amounts than intended by applicable law and Texas Medicaid policy.

187. **The DEFENDANTS Thwarted Governments' Efforts to Receive the Benefit of Drug Manufacturers' Prices to Their Best Commercial Customers Under the Medicaid Rebate Program.** As previously alleged herein, the DEFENDANTS each participated in the Rebate Program and as such were required to calculate BP and/or AMP of their drugs.

188. Unless a manufacturer falsely reports its WAC for a drug, WAC and AMP will be related numbers, in that WAC will be drug manufacturer's reported cost to wholesalers (based on the manufacturer's good-faith review of information available to it), and AMP will be a weighted average of all sales by the manufacturer, including direct sales as well as sales to wholesalers. However, for reimbursement purposes the DEFENDANTS in many instances falsely and fraudulently represented inflated (or caused to be inflated by reporting inflated DP or wholesale net prices to price publishing compendia as described in paragraph 159, supra) AWPs and WACs that are in some cases more than 500% of their AMPs. These inflated reported prices and costs virtually nullified the intended effect of the Rebate Program, which is to provide the Government with the benefit of the DEFENDANTS' prices

to best commercial customers in the market place without controlling or affecting the prices generally and currently available to Providers in the marketplace.

189. **The DEFENDANTS Directly Misrepresented Price and Cost Information for the Specified Drugs to State Medicaid Programs.** The States' Medicaid Programs also receive price and cost representations directly from the DEFENDANTS and use them to compute reimbursement amounts. Examples of direct price and cost representations to a state Medicaid program are attached as Composite **Exhibit "7,"** which comprises true and correct copies of price representations made by DEFENDANTS WARRICK and ROXANE to the State of Florida Medicaid Pharmacy Program on or about December 20, 1994 and September 26, 1994. An additional example, attached hereto as **Exhibit "8"** is a true and correct copy of price representations provided to Texas Medicaid by DEFENDANT WARRICK on or about March 6, 1997.

190. The importance of drug manufacturers' truthful representations of costs and prices generally and currently available based on their own business records and information, and how the representations affect reimbursements is demonstrated by the following examples, which contrast sharply with the DEFENDANTS' practice of reporting false, inflated prices and costs to create large, inflated Spreads between cost and reimbursement:

| DRUG STRENGTH & SIZE, NDC# | BRISTOL-MYERS REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| PRAVACHOL 20mg. 90's 00003-5178-05 | $174.96 | $183.79 | $187.21 | $3.42 (under 2 %) |

| DRUG STRENGTH & SIZE, NDC# | BRISTOL-MYERS REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| MONOPRIL 10mg. 90's 00087-0609-42 | $66.96 | $71.44 | $71.65 | $0.21 (under ½ %) |

| DRUG STRENGTH & SIZE, NDC# | SCHERING/PLOUGH'S REPORTED WAC | RELATOR'S COST McKESSON 3/31/00 | FLORIDA MEDICAID PAYMENT @ WAC+7% | DIFFERENCE BETWEEN RELATOR'S COST & FLORIDA MEDICAID REIMBURSEMENT |
|---|---|---|---|---|
| PROVENTIL REPETAB 4 mg. 100's 00085-0431-02 | $66.94 | $70.78 | $71.63 | $0.85 or (under 2 %) |

(Please note that the examples in this paragraph are time specific.)

191. **The DEFENDANTS' False Claim Scheme deprived the Government of the protection of The Federal Upper Limits ("FUL").** CMS limits Medicaid reimbursement for certain therapeutically equivalent, multisource oral drugs by setting a "Federal Upper Limit" ("FUL") on the amount any state's Medicaid program may pay for any version of those drugs. Because the FUL applicable to all versions of a particular multisource drug is

determined with reference to the reported prices of all versions of that drug, a single manufacturer's false, inflated price reports can cause the FUL for all versions of that drug to be set at a higher amount than would be set if the manufacturer reported the prices generally and currently available in the marketplace, based on its own business records and information. Thus, FULs distorted by the false price reports of manufacturers, including the DEFENDANTS, to recognized publishing compendia circumvented the Government's efforts to limit amounts paid for claims. One false report can affect the FUL by distorting the median price.

## SECTION NO. 15
## THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ABBOTT AS TO MEDICAID

192. From on or before December 31, 1995 and continuing through the present date, ABBOTT knowingly caused Medicaid to pay false or fraudulent claims for prescription drugs, including those specified in this Section, and further made or used false records statements to get such false or fraudulent claims paid or approved. As a result of the said actions of ABBOTT and those persons and entities acting directly or indirectly in concert with ABBOTT, Medicaid paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section. The acts committed by ABBOTT that caused Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent

representations about prices and costs of the drugs, including those specified in this Section which ABBOTT knew would be utilized by Medicaid in paying or approving claims for such drugs and using the inflated Spread created by its false representations of prices and costs as a financial inducement to increase or maintain sales and marketshare of those drugs. Each of ABBOTT'S false representations was utilized by Medicaid in paying or approving claims for the drugs, including those specified in this Section.

193. During the entire period of time specified in this Section, ABBOTT knowingly caused its false or fraudulent price and cost representations to be reported by the recognized price publishing compendia known as Red Book, Blue Book and First DataBank's Automated Services and Medi-Span and further made or used false records or statements regarding the prices and costs of its drugs, including those specified in this Section and submitted same to Medicaid. ABBOTT made or caused to be made approximately 9,792,222 false statements in the form of false or fraudulent price and cost representations to the state Medicaid Programs.

194. By way of example, ABBOTT'S price and cost representations for certain of the drugs in question, as reported by ABBOTT are shown in the following chart. In comparison, the amount listed under the Relator's Cost column represents the actual contract prices that were available to the Relator for the listed drugs. The column "invoice price to wholesaler" represents the prices listed as invoice prices by one or more major wholesalers such as McKesson or Bergen Brunswig and available to the Relator through catalogs or computer purchasing software. As a very small infusion pharmacy, the Relator

did not receive the lowest prices available to volume purchasers. Accordingly, in many instances the cost to Providers for the drugs was significantly lower than that paid by the Relator. For Providers that paid less, the Spread on the drugs was correspondingly greater than the Spread on the same drugs available to the Relator. A listing of drugs with respect to which ABBOTT knowingly caused Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in **Exhibit "1"** (Medicaid only) attached hereto and incorporated herein by reference. Attached as **Exhibits "9"** and **"10"** are charts showing ABBOTT's WACs and WEACs for certain of the drugs in question.

| Defendant ABBOTT<br>Erythromycin Stearate<br>250mg Tablets 500s<br>NDC #00074-6346-53 | | | | | | |
|---|---|---|---|---|---|---|
| **Year** | **False "AWP" Reported Through Red Book** | **False "AWP" Reported Through FDB Blue Book** | **Medispan "AWP"** | **False Direct Price Reported Through FDB or Blue Book** | **Relator's Cost**<br>**Contract Price** | **Invoice Price to Wholesaler** |
| 1993 | $65.31 | $65.31 | $65.31 | $55.00 | | |
| 1994 | $65.31 | $65.31 | $65.31 | $55.00 | | $28.76 |
| 1995 | $65.31 | $65.31 | $65.31 | $55.00 | | $37.07 |
| 1996 | $65.31 | $65.31 | $65.31 | $55.00 | | $37.07 |
| 1997 | $67.21 | | $67.21 | | | $38.18 |
| 1998 | $67.21 | | $67.21 | | | $38.18 |
| 1999 | $67.21 | | $67.21 | $58.35 | | $38.18 |
| 2000 | $69.29 | | $69.29 | $58.35 | | $38.18 |
| 2001 | $69.29 | | $69.29 | $58.35 | $33.20 | $38.18 |

Defendant ABBOTT
Erythromycin Stearate
250 mg Tablets 500's
NDC #00074-6346-53

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
|---|---|---|---|---|---|---|
| 2002 | $69.29 | | $69.29 | | $29.80 | $38.18 |
| 2003 | $69.29 | | $69.29 | | | $38.18 |
| 2004 | $69.29 | | $72.69 | | $37.69 | $56.54 |

Defendant ABBO[illegible]
[illegible]
[illegible]
[illegible]

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
|---|---|---|---|---|---|---|
| 1993 | $24.85 | $24.85 | $24.86 | $20.93 | | |
| 1994 | $24.85 | $24.85 | $24.86 | $20.93 | | $13.37 |
| 1995 | $24.85 | $24.85 | $24.86 | $20.93 | | $14.85 |
| 1996 | $24.85 | $24.85 | $24.86 | $20.93 | | $14.85 |
| 1997 | $25.58 | | $25.58 | NA | | $15.30 |
| 1998 | $25.58 | | $25.58 | NA | | $15.30 |
| 1999 | $25.58 | | $25.58 | $22.19 | | $15.30 |
| 2000 | $26.35 | | $26.35 | $22.19 | | $15.30 |
| 2001 | $26.35 | | $26.35 | $22.19 | $13.30 | $15.30 |
| 2002 | $26.35 | | $26.35 | | $13.30 | $15.30 |

CIVIL ACTION NO. 00 CV10698 MEL

**Defendant ABBOTT**
**Erythromycin Stearate**
**500 mg Tablets 100's**
**NDC #00074-6316-13**

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
|---|---|---|---|---|---|---|
| 2003 | | | $26.35 | | | $15.30 |
| 2004 | | | $27.65 | | $14.59 | $21.89 |

**Defendant ABBO[illegible]**
**[illegible]**
**[illegible]**
**NDC #[illegible]**

| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
|---|---|---|---|---|---|---|
| 1993 | $23.75 | $23.75 | $23.75 | $20.00 | | |
| 1994 | $23.75 | $23.75 | $23.75 | $20.00 | | $7.50 |
| 1995 | $23.75 | $23.75 | $23.75 | $20.00 | | $7.50 |
| 1996 | $23.75 | $23.75 | $24.44 | $20.00 | | $7.50 |
| 1997 | $24.44 | | $24.44 | | | $7.72 |
| 1998 | $24.44 | | $24.44 | | | $7.72 |
| 1999 | $24.44 | | $25.18 | $21.20 | | $7.72 |
| 2000 | $25.18 | | $25.18 | $21.20 | | $7.72 |
| 2001 | $25.18 | | $25.18 | $21.20 | $7.21 | $7.72 |
| 2002 | $25.18 | | $25.18 | | $6.60 | $7.72 |

| Defendant ABBOTT<br>ERY-TAB E/C<br>250 mg Tablets 100's<br>NDC #00074-6304-13 | | | | | | |
|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
| 2003 | $25.18 | | $25.18 | | | $7.47 |
| 2004 | $25.18 | | $26.41 | | $16.21 | $24.32 |

195. As a result of ABBOTT'S actions as alleged herein, the UNITED STATES has sustained damages, and ABBOTT is liable to the United States for civil penalties and treble damages as provided by the False Claims Act.

## SECTION NO. 16
## THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT ALPHARMA AS TO MEDICARE AND MEDICAID

196. From on or before August 1, 1995 and continuing through the present date, ALPHARMA knowingly caused Medicare/Medicaid to pay false or fraudulent claims for prescription drugs, including those specified in this Section, and further made or used false records or statements to get such false or fraudulent claims paid or approved. As a result of the said actions of ALPHARMA and those persons and entities acting directly or

indirectly in concert with ALPHARMA, Medicare/Medicaid paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section. The acts committed by ALPHARMA that caused Medicare/Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs, including those specified in this Section, which ALPHARMA knew would be utilized by Medicare/Medicaid in paying or approving claims for such drugs and using the inflated spread created by its false representations of prices and costs as a financial inducement to increase or maintain sales and marketshare of those drugs. Each of ALPHARMA's representations was utilized by Medicare/Medicaid in paying or approving claims for the drugs, including those specified in this Section.

197. During the entire period of time specified in this section, ALPHARMA knowingly caused its false or fraudulent price and cost representations to be reported by Red Book, Blue Book and First DataBank's Automated Services and Medispan and further made or used false records or statements regarding the prices and costs of its drugs, including those specified in this Section and submitted same to the Medicare/Medicaid. ALPHARMA made and/or caused to be made approximately 55,361,389 false statements in the form of false or fraudulent price and costs representations to the state Medicaid Programs and the Medicare Program.

198. By way of example, ALPHARMA's price and cost representations for certain of the drugs in question, as reported by ALPHARMA are shown in the following chart. In

comparison, the amount listed under the Relator's Cost column reflects the actual contract prices that were available to the Relator for the listed drugs. The column "invoice price to wholesaler" represents the prices listed as invoice prices by one or more major wholesalers such as McKesson or Bergen Brunswig and available to the Relator through catalogs or computer purchasing software. As a very small infusion pharmacy, the Relator did not receive the lowest prices available to volume purchasers. Accordingly, in many instances the cost to Providers for the drugs was significantly lower than that paid by the Relator. For Providers that paid less, the spread on the drugs was correspondingly greater than the spread on the same drugs available to the Relator. A listing of drugs with respect to which ALPHARMA knowingly caused Medicare/Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in **Exhibits "1"** (Medicaid) **and "2"** (Medicare/Medicaid) attached hereto.

| Defendant ALPHARMA<br>PAREGORIC ELIXIR<br>2mg/5mg, 480ml<br>NDC # 00472-0802-16 | | | | | | |
|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost<br>Contract Price | Invoice Price to Wholesaler |
| 1993 | $7.30 | $7.30 | $7.30 | | | |
| 1994 | $8.03 | $8.03 | $8.03 | | | |
| 1995 | $8.03 | $8.03 | $8.03 | | | |
| 1996 | $8.03 | $8.03 | $8.03 | | | |

| Defendant: ALPHARMA<br>PAREGORIC ELIXIR<br>2mg/5mg, 480ml<br>NDC # 00472-0802-16 | | | | | | |
|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Relator's Cost<br>Contract Price | Invoice Price to Wholesaler |
| 1997 | $8.03 | | $8.03 | | $4.31 | $5.83 |
| 1998 | $8.03 | | $10.13 | | $4.31 | $5.83 |
| 1999 | $10.13 | | $10.13 | | | |
| 2000 | $10.13 | | $10.13 | | $4.26 | $7.41 |
| 2001 | $10.13 | | $11.50 | | $4.98 | $7.41 |
| 2002 | $27.60 | | $27.60 | | $6.32 | $21.37 |
| 2003 | $142.86 | | $142.86 | | | $79.37 |
| 2004 | $142.86 | | $142.86 | | $69.99 | $104.99 |

199. As a result of ALPHARMA's actions alleged herein, the UNITED STATES has sustained damages, and ALPHARMA is liable to the United States for civil penalties and treble damages as provided by False Claims Act.

## SECTION NO. 17
## THE SPECIFIC FALSE PRICE AND COST REPRESENTATIONS OF DEFENDANT APOTHECON AS TO MEDICAID

200. From on or before December 31, 1995 and continuing through the present date, APOTHECON knowingly caused Medicaid to pay false or fraudulent claims for prescription drugs, including those specified in this Section, and further made or used false records statements to get such false or fraudulent claims paid or approved. As a result of the said actions of APOTHECON and those persons and entities acting directly or indirectly in concert with APOTHECON, Medicaid paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section. The acts committed by APOTHECON that caused Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs, including those specified in this Section which APOTHECON knew would be utilized by Medicaid in paying or approving claims for such drugs and using the inflated Spread created by its false representations of prices and costs as a financial inducement to increase or maintain sales and marketshare of those drugs. Each of APOTHECON'S false representations was utilized by Medicaid in paying or approving claims for the drugs, including those specified in this Section.

201. During the entire period of time specified in this Section, APOTHECON knowingly caused its false or fraudulent price and cost representations to be reported by the recognized price publishing compendia known as Red Book, Blue Book and First

DataBank's Automated Services and Medi-Span and further made or used false records or statements regarding the prices and costs of its drugs, including those specified in this Section and submitted same to Medicaid. APOTHECON made or caused to be made approximately 20,463,583 false statements in the form of false or fraudulent price and cost representations to the state Medicaid Programs.

202. By way of example, APOTHECON'S price and cost representations for certain of the drugs in question, as reported by APOTHECON are shown in the following chart. In comparison, the amount listed under the Relator's Cost column represents the actual contract prices that were available to the Relator for the listed drugs. The column "invoice price to wholesaler" represents the prices listed as invoice prices by one or more major wholesalers such as McKesson or Bergen Brunswig and available to the Relator through catalogs or computer purchasing software. As a very small infusion pharmacy, the Relator did not receive the lowest prices available to volume purchasers. Accordingly, in many instances the cost to Providers for the drugs was significantly lower than that paid by the Relator. For Providers that paid less, the Spread on the drugs was correspondingly greater than the Spread on the same drugs available to the Relator. A listing of drugs with respect to which APOTHECON knowingly caused Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in **Exhibit "1"**

(Medicaid only) attached hereto and incorporated herein by reference. Attached as **Exhibits "9"** and **"10"** are charts showing APOTHECON's WACs and WEACs for certain of the drugs in question.

| Defendant APOTHECON<br>Drug: Cefadroxyl<br>Size: 500mg, 100s<br>NDC#: 59772-7271-04 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Relator's Cost Contract Price | Invoice Price to Wholesaler |
| 1996 | $287.81 | | $287.81 | | | | |
| 1997 | $287.81 | | $287.81 | | | | $223.48 |
| 1998 | $287.81 | | $287.81 | | | | $223.48 |
| 1999 | $287.81 | | $305.00 | | $259.25 | | $223.48 |
| 2000 | $305.00 | | $305.00 | | $259.25 | $79.15 | $223.48 |
| 2001 | $305.00 | | $305.00 | | $118.64 | $79.15 | $223.48 |

| Defendant: APOTHECON<br>Drug: Estradiol<br>Size: 1mg, 500<br>NDC#: 59772-0026-04 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Texas "WEAC" Medicaid Reimburse-ment Based On False Reported Prices ** | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
| 1996 | $140.39 | | $140.39 | | | | |
| 1997 | $148.81 | | $140.39 | | $126.49 | | $86.44 |
| 1998 | $148.81 | | $140.39 | | $126.49 | | $86.44 |
| 1999 | $148.81 | | $140.39 | | $126.49 | | $86.44 |
| 2000 | $148.81 | | $140.39 | | $126.49 | $38.96 | $86.44 |
| 2001 | $148.81 | | $140.39 | | $126.49 | $38.96 | $86.44 |
| 2002 | $148.81 | | $166.97 | | | $13.00 | $86.44 |
| 2003 | $166.97 | | $166.97 | | | | $76.52 |

203. As a result of APOTHECON'S actions as alleged herein, the UNITED STATES has sustained damages, and APOTHECON is liable to the United States for civil penalties and treble damages as provided by the False Claims Act.