**ANDERSON EXHIBIT 6L**

CIVIL ACTION NO. 00 CV10698 MEL

| | UDL TEMAZEPAM 30mg, 100s UD NDC # 51079-0419-21 | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | False Direct Price Reported Through FDB or Blue Book | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Relator's Cost Contract Price | Invoice Price to Wholesaler |
| 1993 | $24.13 | $24.13 | $24.13 | $20.11 | | | |
| 1994 | $24.13 | $24.13 | $24.13 | $20.11 | | $22.63 | |
| 1995 | $24.13 | $24.13 | $24.13 | $20.11 | | $5.46 | |
| 1996 | $24.13 | $24.13 | $24.13 | $20.11 | | $5.22 | |
| 1997 | $24.13 | | $24.13 | $20.11 | | $5.22 | |
| 1998 | $24.13 | | $24.13 | $20.11 | | $5.22 | |
| 1999 | $24.11 | | $24.13 | $20.11 | $9.75500 | $4.95 | |
| 2000 | $24.13 | | $83.33 | $20.11 | $14.28000 | $11.92 | $13.58 |
| 2001 | $83.33 | | $83.33 | $66.66 | $14.28000 | $10.29 | $13.58 |
| 2002 | $83.33 | | $83.33 | $66.66 | | $10.29 | $13.58 |

** Amounts contained in the Texas WEAC (Wholesale Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated. See paragraphs 112 - 114 herein.

272. As a result of UDL's actions alleged herein, the UNITED STATES has sustained damages, and UDL is liable to the United States for civil penalties and treble damages as provided by False Claims Act.

## SECTION NO. 35
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## WARRICK AS TO MEDICAID

273.   From on or before December 31, 1996 and continuing through the present date, WARRICK knowingly caused Medicaid to pay false or fraudulent claims for prescription drugs, including those specified in this Section, and further made or used false records or statements to get such false or fraudulent claims paid or approved. As a result of the said actions of WARRICK and those persons and entities acting directly or indirectly in concert with WARRICK, Medicaid paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section. The acts committed by WARRICK that caused Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs, including those specified in this Section, which WARRICK knew would be utilized by Medicaid in paying or approving claims for such drugs and using the inflated Spread created by its false representations of prices and costs as a financial inducement to increase or maintain sales and marketshare of those drugs. Each of WARRICK's representations was utilized by Medicaid in paying or approving claims for the drugs, including those specified in this Section.

274.   During the entire period of time specified in this section, WARRICK knowingly caused its false or fraudulent price and cost representations to be reported by Red Book, Blue Book and First DataBank's Automated Services and Medispan and further made or used false records or statements regarding the prices and costs of its drugs, including

182

those specified in this Section and submitted same to the Medicaid. WARRICK made and/or caused to be made approximately 29,887,796 false statements in the form of false or fraudulent price and costs representations to the state Medicaid Programs.

275. By way of example, WARRICK's price and cost representations for certain of the drugs in question, as reported by WARRICK are shown in the following chart. In comparison, the amount listed under the Relator's Cost column reflects the actual contract prices that were available to the Relator for the listed drugs. The column "invoice price to wholesaler" represents the prices listed as invoice prices by one or more major wholesalers such as McKesson or Bergen Brunswig and available to the Relator through catalogs or computer purchasing software. As a very small infusion pharmacy, the Relator did not receive the lowest prices available to volume purchasers. Accordingly, in many instances the cost to Providers for the drugs was significantly lower than that paid by the Relator. For Providers that paid less, the Spread on the drugs was correspondingly greater than the Spread on the same drugs available to the Relator. A listing of drugs with respect to which WARRICK knowingly caused Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in **Exhibit "1"** (Medicaid) attached hereto. Attached as **Exhibit "9"** is a chart showing WARRICK's WACs for certain of the drugs in question.

| | Defendant WARRICK ALBUTEROL INHALATION Aerosol 17 gm 59930-1560-01 | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | False "AWP" Reported To CA or TX Through FDB Automated System | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Florida Medicaid Reimbursement Based On False Reported "WAC"*** | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
| 1996 | $21.41 | $21.41 | | | $15.19 | | $15.47 |
| 1997 | $21.41 | $21.41 | | $12.00 | $15.18 | $4.95 | $5.84 |
| 1998 | $21.41 | $21.41 | $21.41-TX | $12.00 | $6.19 | $2.95 | $5.26 |
| 1999 | $21.41 | $21.41 | $21.41-TX | $12.00 | $6.61 | $2.79 | $5.26 |
| 2000 | $21.41 | $21.41 | $21.41-TX | $12.00 | $6.64 | $2.58 | $5.26 |
| 2001 | $21.41 | $21.41 | $21.41-TX | $4.42 | $17.22 | $3.24 | $5.26 |
| 2002 | $21.41 | | | | | $3.75 | $9.87 |
| 2003 | $21.41 | | | $3.45 | | $2.58 | $10.15 |

\* Defendant WARRICK reported a false AWP of $21.41 for years 1998 - 2001 to the State of Texas through First Data Bank's automated system.

\*\* Amounts contained in the Texas WEAC (Wholesale Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated. See paragraphs 112 - 114 herein.

\*\*\* Amounts contained in the Florida Medicaid reimbursement column reflect the falsely inflated reported First DataBank WAC costs because Florida's reimbursement methodology for the years listed in each chart was WAC (as reported in First DataBank) plus 7%

| | Defendant WARRICK ALBUTEROL INHALATION Aerosol (refill) 17 gm 59930-1560-02 | | | | |
|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Relator's Cost Contract Price | Invoice Price to Wholesaler |
| 1996 | $19.79 | $19.79 | | | $13.95 |
| 1997 | $19.79 | $19.79 | $11.09 | $4.85 | $5.47 |
| 1998 | $19.79 | $19.79 | $11.09 | $2.95 | $5.00 |
| 1999 | $19.79 | $19.79 | $11.09 | $2.89 | $5.00 |
| 2000 | $19.79 | $19.79 | $11.09 | $2.49 | $5.00 |
| 2001 | $19.79 | $19.79 | $2.54 | | $5.00 |
| 2002 | $19.79 | | | | |
| 2003 | $19.79 | | | | |

** Amounts contained in the Texas WEAC (Wholesale Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated. See paragraphs 112 - 114 herein.

276. As a result of WARRICK's actions alleged herein, the UNITED STATES has sustained damages, and WARRICK is liable to the United States for civil penalties and treble damages as provided by False Claims Act.

CIVIL ACTION NO. 00 CV10698 MEL

## SECTION NO. 36
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## WATSON AS TO MEDICAID

277. From on or before August 1, 1995 and continuing through the present date, WATSON knowingly caused Medicaid to pay false or fraudulent claims for prescription drugs, including those specified in this Section, and further made or used false records statements to get such false or fraudulent claims paid or approved. As a result of the said actions of WATSON and those persons and entities acting directly or indirectly in concert with WATSON, Medicaid paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section. The acts committed by WATSON that caused Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs, including those specified in this Section which WATSON knew would be utilized by Medicaid in paying or approving claims for such drugs and using the inflated Spread created by its false representations of prices and costs as a financial inducement to increase or maintain sales and marketshare of those drugs. Each of WATSON'S false representations was utilized by Medicaid in paying or approving claims for the drugs, including those specified in this Section.

278. During the entire period of time specified in this Section, WATSON knowingly caused its false or fraudulent price and cost representations to be reported by the

186

recognized price publishing compendia known as Red Book, Blue Book and First DataBank's Automated Services and Medi-Span and further made or used false records or statements regarding the prices and costs of its drugs, including those specified in this Section and submitted same to Medicaid. WATSON made or caused to be made approximately 36,566,613 false statements in the form of false or fraudulent price and cost representations to the state Medicaid Programs.

279.  By way of example, WATSON'S price and cost representations for certain of the drugs in question, as reported by WATSON are shown in the following chart. In comparison, the amount listed under the Relator's Cost column represents the actual contract prices that were available to the Relator for the listed drugs. The column "invoice price to wholesaler" represents the prices listed as invoice prices by one or more major wholesalers such as McKesson or Bergen Brunswig and available to the Relator through catalogs or computer purchasing software. As a very small infusion pharmacy, the Relator did not receive the lowest prices available to volume purchasers. Accordingly, in many instances the cost to Providers for the drugs was significantly lower than that paid by the Relator. For Providers that paid less, the Spread on the drugs was correspondingly greater than the Spread on the same drugs available to the Relator. A listing of drugs with respect to which WATSON knowingly caused Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in **Exhibit "1"** (Medicaid only) attached hereto and incorporated herein by reference.

CIVIL ACTION NO. 00 CV10698 MEL

| | WATSON CHLORDIAZEPOXIDE HCl 10mg, 100s NDC # 52544-0786-01 | | | | |
|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | Medispan "AWP" | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
| 1998 | $7.04 | $7.04 | | | |
| 1999 | $7.04 | $21.06 | $4.3680 | $2.35 | $4.10 |
| 2000 | $21.06 | $21.06 | $4.3680 | $5.26 | $6.14 |
| 2001 | $31.59 | $31.59 | $6.5520 | $5.76 | $7.31 |
| 2002 | $31.59 | $31.59 | | $5.76 | $7.31 |
| 2003 | $31.59 | $31.59 | | | $6.33 |
| 2004 | $31.59 | $31.59 | | $5.41 | |

** Amounts contained in the Texas WEAC (Wholesale Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated. See paragraphs 112 - 114 herein.

| | WATSON VERAPAMIL HCl 120mg, 100s NDC # 52544-0345-01 | | | | | |
|---|---|---|---|---|---|---|
| Year | False "AWP" Reported Through Red Book | False "AWP" Reported Through FDB Blue Book | Medispan "AWP" | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
| 1993 | $29.93 | $29.93 | $29.93 | | | |
| 1994 | $29.93 | $29.93 | $29.93 | | | |
| 1995 | $29.93 | $29.93 | $29.93 | | | |
| 1996 | $29.93 | $29.93 | $29.93 | | | |
| 1997 | $29.93 | | $29.93 | | | |
| 1998 | $29.93 | | $29.93 | $4.8940 | $5.49 | |
| 6/1999 11/1999 | $29.93 | | $35.70 $37.20 | $4.8940 | $4.60 $6.96 | |
| 2000 | $37.20 | | $37.20 | $4.8940 | $4.60 | |
| 2001 | $68.43 | | $68.43 | $8.5680 | $3.62 | $8.05 |
| 2002 | $68.43 | | $68.43 | | $6.43 | $8.05 |
| 2003 | $68.43 | | $68.43 | | | $8.28 |
| 2004 | $68.43 | | $68.43 | | $5.86 | |

** Amounts contained in the Texas WEAC (Wholesale Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated. See paragraphs 112 - 114 herein.

280.    As a result of WATSON'S actions as alleged herein, the UNITED STATES has sustained damages, and WATSON is liable to the United States for civil penalties and treble damages as provided by the False Claims Act.

CIVIL ACTION NO. 00 CV10698 MEL

## SECTION NO. 37
## THE SPECIFIC FALSE PRICE AND COST
## REPRESENTATIONS OF DEFENDANT
## ZENITH/IVAX AS TO MEDICARE AND MEDICAID

281. From on or before August 1, 1995 and continuing through the present date, ZENITH/IVAX knowingly caused Medicare/Medicaid to pay false or fraudulent claims for prescription drugs, including those specified in this Section, and further made or used false records or statements to get such false or fraudulent claims paid or approved. As a result of the said actions of ZENITH/IVAX and those persons and entities acting directly or indirectly in concert with ZENITH/IVAX, Medicare/Medicaid paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs, including those specified in this Section. The acts committed by ZENITH/IVAX that caused Medicare/Medicaid to pay or approve said false or fraudulent claims included, but were not necessarily limited to, knowingly making false or fraudulent representations about prices and costs of the drugs, including those specified in this Section, which ZENITH/IVAX knew would be utilized by Medicare/Medicaid in paying or approving claims for such drugs and using the inflated Spread created by its false representations of prices and costs as a financial inducement to increase or maintain sales and marketshare of those drugs. Each of ZENITH/IVAX's representations was utilized by Medicare/Medicaid in paying or approving claims for the drugs, including those specified in this Section.

282. During the entire period of time specified in this section, ZENITH/IVAX knowingly caused its false or fraudulent price and cost representations to be reported by Red Book, Blue Book and First DataBank's Automated Services and Medispan and further

made or used false records or statements regarding the prices and costs of its drugs, including those specified in this Section and submitted same to the Medicare/Medicaid. ZENITH/IVAX made and/or caused to be made approximately 78,537,363 false statements in the form of false or fraudulent price and costs representations to the state Medicaid Programs and the Medicare Program.

283. By way of example, ZENITH/IVAX's price and cost representations for certain of the drugs in question, as reported by ZENITH/IVAX are shown in the following chart. In comparison, the amount listed under the Relator's Cost column reflects the actual contract prices that were available to the Relator for the listed drugs. The column "invoice price to wholesaler" represents the prices listed as invoice prices by one or more major wholesalers such as McKesson or Bergen Brunswig and available to the Relator through catalogs or computer purchasing software. As a very small infusion pharmacy, the Relator did not receive the lowest prices available to volume purchasers. Accordingly, in many instances the cost to Providers for the drugs was significantly lower than that paid by the Relator. For Providers that paid less, the Spread on the drugs was correspondingly greater than the Spread on the same drugs available to the Relator. A listing of drugs with respect to which ZENITH/IVAX knowingly caused Medicare/Medicaid to pay falsely inflated reimbursement amounts by reporting falsely inflated drug costs and prices is contained in **Exhibits "1"** (Medicaid) **and "2"** (Medicare/Medicaid) attached hereto.

**Defendant ZENITH**
**CEFADROXIL**
**500 mg Capsules, 100s**
**00172-4058-60**

| Year | False "AWP" Reported Through Red Book | Medispan "AWP" | Texas "WEAC" Medicaid Reimbursement Based On False Reported Prices ** | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
|---|---|---|---|---|---|
| 1996 | $284.65 | $284.65 | | | |
| 1997 | $284.65 | $284.65 | | $174.23 | $205.76 |
| 1998 | $284.65 | $284.65 | $218.96 | $149.50 | $205.76 |
| 1999 | $305.00 | $305.00 | $218.96 | $149.50 | $205.76 |
| 2000 | $327.95 | $327.95 | $218.96 | $90.53 | $205.76 |
| 2001 | $327.95 | $327.92 | $117.09 | $46.00 | $205.76 |
| 2002 | $327.95 | $327.95 | | $37.11 | $205.76 |
| 2003 | $414.69 | $414.69 | $179.19 | $79.27 | $173.21 |

** Amounts contained in the Texas WEAC (Wholesale Estimated Acquisition Cost) reimbursement column also reflect the fact that the Defendant's price and cost representations were falsely inflated. See paragraphs 112 - 114 herein.

**Defendant ZENITH**
**ONXOL**
**6 mg/ml 5 ml (30 mg)**
**00172-3754-73**
**HCPCS J9265**

| Year | False "AWP" Reported Through Red Book | Medispan "AWP" | Relator's Cost / Contract Price | Invoice Price to Wholesaler |
|---|---|---|---|---|
| 2000 | $179.89 | $179.89 | $122.95 | |
| 2001 | $172.72 | $172.72 | $112.83 | $165.58 |
| 2002 | $172.72 | $172.72 | $ 53.50 | $161.45 |
| 2003 | $172.72 | $172.72 | $ 37.00 | $161.45 |
| 2004 | $172.72 | $172.72 | $ 23.74 | $ 35.61 |

192

284. As a result of ZENITH/IVAX's actions alleged herein, the UNITED STATES has sustained damages, and ZENITH/IVAX is liable to the United States for civil penalties and treble damages as provided by False Claims Act.

## SECTION NO. 38
## RECOVERY OF STATES' SHARES OF DAMAGES
## TO THE MEDICAID PROGRAM

285. 31 U.S.C. §3732(b) provides that the Court has jurisdiction over claims under state law that arise from the same transactions or occurrence as brought in this False Claims Act case.

286. Several states have enacted qui tam statutes similar to the federal False Claims Act, including the following:

| STATE | STATUTE |
| --- | --- |
| Arkansas | ARK. CODE ANN. Sec 20-77-901 et seq. (2000). |
| California | CAL. Gov't Code Sec 12650 et seq.(DEERING 2000). |
| Delaware | DEL. CODE. ANN. tit. 6, Sec 1201 et seq. (2000). |
| District of Columbia | D.C. CODE ANN. Sec 1-1188.13 et seq.(2000). |
| Florida | FLA. STAT. 68.081 et seq. (2000) |
| Hawaii | HAW. REV. STAT. Sec 661-22 et seq. (2000). |
| Illinois | 740 ILL. COMP. STAT. ANN. Sec 175/1 et seq. (2000). |
| Louisiana | LA. REV. STAT. ANN. Sec 46:439.1 et seq. (2000). |
| Massachusetts | MASS ANN. LAWS CH. 12, Sec 5(A)-(O) |

| STATE | STATUTE |
|---|---|
| New Mexico | NEW MEXICO MEDICAID FALSE CLAIMS ACT, 46th legislature, second session, 2004, Chapter 49, HOUSE BILL 468, Signed by Governor Effective May 19, 2004. |
| Nevada | NEV. REV. STAT. Sec357.010 et seq. (1999). |
| Tennessee | TENN. CODE. ANN. Sec 71-5-181 et seq. (2000) |
| Texas | TEX. HUM. RES. CODE Sec 36.001-36.117 |
| Utah | UTAH CODE ANN. Sec 26-20-1 et seq. (2000). |
| Virginia | VIRGINIA Code Sec 8.01-216.1 et seq., effective Jan. 1, 2003 |

287. The laws of all states provide for the recovery of sums that the state unlawfully pays.

288. The allegations of this Complaint also state claims for which relief can be granted pursuant to said state statutes.

289. Accordingly, the claims alleged herein also encompass the States' shares of the Medicaid funds at issue, together with such additional damages, penalties and other relief as may be available under applicable law.

CIVIL ACTION NO. 00 CV10698 MEL

## COUNT I

## FALSE CLAIMS ACT;
## CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS

290.  This is a claim under the False Claims Act, 31 U.S.C. §§3729-3733, as amended.

291.  Relator realleges and incorporates by reference paragraphs 1 through 289 as if fully set forth herein and further alleges as follows:

292.  From the dates specified in Sections 15 through 37 to the present date the DEFENDANTS knowingly caused to be presented to officers or employees of the UNITED STATES GOVERNMENT and STATE GOVERNMENTS false or fraudulent claims for payment or approval, in that the DEFENDANTS caused to be presented to officers or employees of the UNITED STATES GOVERNMENT and STATE GOVERNMENTS false or fraudulent price and cost information for the specified drugs (as the term "specified drugs" has been defined throughout the Complaint) and caused the UNITED STATES and STATE GOVERNMENTS to pay out sums of money to the Providers and suppliers of the DEFENDANTS' specified drugs, grossly in excess of the amounts permitted by law, resulting in great financial loss to the UNITED STATES and STATE GOVERNMENTS.

293.  Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Ten Million Dollars ($10,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).