**ANDERSON EXHIBIT 25**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
| **THIS DOCUMENT RELATES TO:** | ) ) | **MDL No. 1456** **Civil Action No. 01-12257-PBS** |
| *US ex rel. Ven-a-Care of the Florida Keys, Inc., v. Abbott Laboratories, Inc.* NO. 07-CV-11618-PBS | ) ) ) ) ) ) ) | Hon. Patti B. Saris |

**PLAINTIFF VEN-A-CARE OF THE FLORIDA KEYS, INC.'S, SECOND AMENDED ANSWERS AND OBJECTIONS TO ABBOTT LABORATORIES INC.'S FIRST SET OF INTERROGATORIES**

Ven-A-Care of the Florida Keys, Inc. ["Plaintiff', "Relator" or "Ven-A-Care"], pursuant to Federal Rules of Civil Procedure 26 and 33, by and through its undersigned counsel, serves this Plaintiff Ven-A-Care of the Florida Keys, Inc.'s Second Amended Answers and Objections to Abbott Laboratories Inc.'s First Set of Interrogatories.

**GENERAL OBJECTIONS**

1)  To the extent these interrogatories are not limited to the specific drugs which are at issue in the latest active pleadings these interrogatories are inherently unreasonable, vague and unduly burdensome in scope because of the enormous amount of drugs which are the subject of Medicaid claims.  The responses will be limited to the specific drugs at issue in this litigation referred to in the Relator's pending Complaint.

2)  Ven-A-Care objects to these interrogatories to the extent that they seek information protected from disclosure by any privilege or doctrine, including the attorney-client privilege, the investigative files privilege, the work-product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the law

enforcement privilege or any other applicable basis for invoking privilege. Ven-A-Care does not, by responding to these interrogatories, waive any claim of privilege or the protection of any doctrine.

3)   To the extent any interrogatory seeks information concerning any governmental or private investigation of possible qui tam litigation or pending qui tam litigation whether state of federal, if any exists, it is objectionable on the following grounds:

> (a.) such information is highly confidential and protected from disclosure pursuant to applicable state and federal seal requirements, court orders, and other laws, including but not limited to the Federal False Claims Act 31 U.S.C. § 3729-3733,
>
> (b.) such information is protected from disclosure by the attorney-client and/or work product privilege,
>
> (c.) such information is protected by the governmental investigative privilege.

4)   Ven-A-Care objects to these interrogatories to the extent they require it to draw legal conclusions or otherwise seek to impose upon Ven-A-Care any requirements beyond those established by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts or the False Claims Act.

5)   Ven-A-Care objects to the scope of these interrogatories to they extent that they call for information or documents that are not within the possession, custody, or control of Ven-A-Care.

6) Ven-A-Care objects to these interrogatories as overly broad, unduly burdensome, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information beyond the time period at issue in the pending Complaint.

7)   The objections set forth herein are based on information now known to Ven-A-Care and its attorneys and are made without prejudice to Ven-A-Care's right to assert additional objections should grounds for objection be discovered at a later time.  Ven-A-Care's responses shall not be construed as a waiver of any objection to other discovery requests involving or relating to the same or similar subject matter of any of these

interrogatories. Additionally, the fact that Ven-A-Care responds to any particular interrogatory should not be construed as an admission or acknowledgment of any fact set forth in, assumed by, or inferred from any such interrogatory.

8)   Ven-A-Care objects to these interrogatories or parts thereof to the extent that they seek information or documents which are publicly available and thus equally available to Abbott.

9)   When Ven-A-Care responds that it will produce documents in response to an interrogatory, it will produce such documents to the extent that they exist and can be reasonably obtained. By stating that it will produce documents, Ven-A-Care does not represent that any such documents to things, in fact, exist or are within its possession, custody, or control.

10) Each response is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all other objections on grounds that would require the exclusion of any statement or information contained therein if the introduction of such evidence was sought at the time of trial, all of which objections and grounds are reserved and may be interposed at the time of trial. The fact that Ven-A-Care has responded to any part or all of any particular interrogatory is not intended to and shall not be construed to be a waiver by Ven-A-Care of any objection to relevance or admissibility of any evidence in this or any other action.

11) These general objections are not repeated after each interrogatory, but rather are set forth herein and hereby incorporated into each response. The assertion of the same, similar, or additional objections or the provision of partial responses to an individual interrogatory does not and should not be construed to waive or modify any of Ven-A-Care's general objections.

## INTEROGATORY ANSWERS AND SPECIFIC OBJECTIONS

**INTERROGATORY NO. 1:**  Did Ven-A-Care purchase any of the subject Drugs? If yes, for each NDC identify:

(a) the dates of purchase(s);

(b) the quantities for each purchase;

(c) the entity from which each purchase was made;

(d) the terms of each purchase (e.g., contract terms, purchase requirements);

(e) all information concerning the amount paid for the purchase(s), including invoice price and any discounts or rebates received; and

(f) The amount and source of any reimbursement that Ven-A-Care received from a third-party other than a paying patient/customer.

**RESPONSE:**

Ven-a-Care objects to this Interrogatory as being irrelevant and beyond the scope of discovery. This Interrogatory is also unduly burdensome in that it seeks to require Ven-a-Care to isolate each purchase of a specific Drug through the review of voluminous records pertaining to all purchases of pharmaceuticals by Ven-a-Care over many years. Furthermore, this Interrogatory seeks information which exceeds the scope of discovery. The purchase of Drug(s) by the Relator, Ven-a-Care, is not a necessary element of Ven-a-Care's instant claims brought on behalf of the United States. In its Disclosures and other discovery responses to Abbott, Ven-a-Care has clearly referenced and produced insider drug market pricing charged to pharmacies. Subject to and without waiver of these specific Objections and the incorporated general Objections, Ven-a-Care provides the following Answer:

Ven-a-Care had access to market pricing information for many drugs, including the Drugs named in this case. Ven-a-Care did purchase drug products, including Abbott drugs, at those market prices; however, due to the voluminous nature of Ven-a-Care's paper purchase records spanning many years Ven-a-Care cannot verify that it purchased the Drugs. While Ven-a-Care was licensed to and did dispense oral drugs such as the named Drugs, Ven-a-Care's current officers and directors have no present recollection of Ven-a-Care having purchased the Drugs. Ven-a-Care does note however that its pharmacist had information about the market prices at which the Drugs were purchased by pharmacies. Ven-a-Care reserves the right to supplement its Answer to this harassing and unduly burdensome Interrogatory.

**INTERROGATORY NO. 2:** Identify all Persons whom Ven-A-Care or anyone on Ven-A-Care's behalf, including Ven-A-Care's attorneys, have contacted or consulted, outside a formal deposition, regarding the allegations in the Complaint. Identify for each person his or her name, employment affiliation, and job title at the time or times of contact and present (or last known) contact information, and the subject(s) on which he or she was contacted or consulted and specifically identify every person who provided support for, or refuted, the allegation that "[n]o governmental payor knew of or sanctioned Abbott's conduct as set forth in this Complaint" as alleged in Paragraph 40 of the Complaint

**RESPONSE:**

Ven-a-Care objects to this Interrogatory as it is overly broad, unduly burdensome, and harassing.  This Interrogatory is not limited to persons within specific organizations or even specific industry sectors.  Furthermore, this Interrogatory technically seeks the identity of Ven-a-Care's legal counsel which is not only known to Abbott but cannot possibly lead to the discovery of admissible evidence and therefore exceeds the scope of allowable discovery.  Subject to its objections, Ven-a-Care states that over the years it has communicated with many persons concerning drug pricing matters.  With respect to Abbott's apparent focus upon governmental personnel, Ven-a-Care had communications with many persons in many different governmental organizations concerning many allegations, including the specifically referenced allegation, which are part of the Complaint in this case and other Complaints filed by Ven-a-Care.  It is unduly burdensome and practically impossible for Ven-a-Care to "identify" all such persons.  Ven-a-Care will state that it communicated with government attorneys, Health Care Financing Administration "HCFA" (now known as the Centers for Medicare and Medicaid "CMS") personnel, and the Office of Inspector General for HCFA/CMS "OIG" personnel;  among others.  Some of these government legal counsel were Suzanne Durrell, Peter Levitt, and T. Reed Stephens of the Boston United States Attorney's Office or the United States Department of Justice.  Some of the HCFA/CMS personnel were Nancy Ann Min DeParle, Bruce Vladeck, and Tom Scully.  The OIG personnel, included but were not limited to, Rob Vito.  Other government personnel are also identified in Ven-a-Care's privilege logs.  Some government personnel who were contacted over the years are identified herein:

<u>United States Attorney's Office</u>
<u>District of Massachusetts</u>

Suzanne E. Durrell, Esquire
former Deputy Chief, Civil Division
Former contact information:
United States Attorney's Office
District of Massachusetts, Suite 9200
1 Courthouse Way
Boston, MA   02210

George B. Henderson, II (Bunker)
Assistant U.S. Attorney
United States Courthouse
1 Courthouse Way - Suite 9200
Boston, MA 02210
Telephone: 617-748-3282

Peter A. Mullin, Esquire
former Assistant U.S. Attorney
former contact information:
U.S. Attorney's Office
United States Courthouse
Suite 9200
One Courthouse Way
Boston, MA   02110

George Vien, Esquire
United States Attorney's Office
District of Massachusetts
Suite 9200, 1 Courthouse Way
Boston, MA   02110
Phone:  617-748-3236

Peter Levitt
Assistant U.S. Attorney
U.S. Attorney's Office
District of Massachusetts
United States Courthouse - Suite 9200
1 Courthouse Way
Boston, MA 02110

Nancy Rue, Esquire, AUSA
Civil Division
United States Attorney's Office
District of Massachusetts
Suite 9200

1 Courthouse Way
Boston, MA   02210
Phone:   617-748-3260

Paul Rusitgian
United States Attorney's Office
District of Massachusetts
Suite 9200
1 Courthouse Way
Boston, MA   02210
Phone: 617-748-3277

Tish Connolly, Esquire
Assistant United States Attorney
United States Attorney's Office
District of Massachusetts
Suite 9200
1 Courthouse Way
Boston, MA   02210


United States Department of Justice

Mike Theis
former contact information:
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
P. O. Box 261
Ben Franklin Station
Washington, DC 20044

Sally Strauss
former contact information:
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Fraud Section
P. O. Box 261
Ben Franklin Station
Washington, DC 20044

T. Reed Stephens, former Trial Attorney
former contact information:
U.S. Department of Justice

Civil Division
Commercial Litigation Branch
Fraud Section
P. O. Box 261
Ben Franklin Station
Washington, DC 20044

Gejaa T. Gobena, Trial Attorney
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004
Phone: 202-307-1088

Laurie Oberembt, Trial Attorney
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004
Phone: 202-514-3345
Fax: 202-305-7868

Andy J. Mao, Trial Attorney
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004
Phone: 202-616-0539
Fax: 202-514-7361

Jamie Yavelberg
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004
phone: 202-514-6514

Michael F. Hertz, Director / Chief
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004

Joyce Branda, Chief
U.S. Attorney's Office
Civil Division

601 "D" Street, N.W.
Washington, DC   20004

Diana Younts, Trial Attorney
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004

David W. Ogden
Acting Assistant Attorney General
U.S. Attorney's Office
Civil Division
601 "D" Street, N.W.
Washington, DC   20004

<u>Health Care Financing Administration</u>
<u>Department of Health and Human Services</u>

Dr. Bruce Vladeck
former Administrator
Health Care Financing Administration
Department of Health and Human Services
200 Independence Blvd., S.W.
Hubert Humphrey Building Room 314G
Washington, DC   20201

Nancy Ann Min-Deparle
former Administrator
Health Care Financing Administration
Department of Health and Human Services
200 Independence Blvd., S.W.
Hubert Humphrey Building Room 314G
Washington, DC   20201

Thomas Scully
former Administrator
Health Care Financing Administration
Department of Health and Human Services
200 Independence Blvd., S.W.
Hubert Humphrey Building Room 314G
Washington, DC   20201

Thomas Hoyer
Health Care Financing Administration

Department of Health and Human Services
200 Independence Blvd., S.W.
Hubert Humphrey Building Room 314G
Washington, DC   20201

Sheree Kanner, Esquire
Counsel
Health Care Financing Administration
Department of Health and Human Services
200 Independence Blvd., S.W.
Hubert Humphrey Building Room 314G
Washington, DC   20201

United States Attorney's Office
Southern District of Florida - Miami

Mark A. Lavine
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, FL   33132
Telephone: 305-961-9303

Alicia Valle
former Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, FL   33132

Ann St. Peter Griffin
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, FL   33132

Ani Martinez
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street, 3rd Floor
Miami, FL   33132

Department of Health & Human Services
Office of Inspector General

Mary E. Riordan, Senior Counsel
Department of Health & Human Services
Office of Inspector General - Civil Recoveries
330 Independence Avenue, S.W., Room 5527
Washington, DC 20201

Lewis Morris, Esquire
Assistant Inspector General for Legal Affairs
Department of Health and Human Services
Office of Inspector General - Civil Recoveries
330 Independence Avenue, S.W.
Room 5527
Washington, DC   20201
Telephone:     202-619-2078

D. McCarty Thornton
Chief Counsel to the Inspector General
Office of the Inspector General
Department of Health and Human Services
330 Independence Avenue, S.W.
Room 5527
Washington, DC 20201

Rob Vito
Office of the Inspector General
Department of Health and Human Services

June Gibbs Brown
Inspector General
Office of the Inspector General
Department of Health and Human Services
330 Independence Avenue, S.W.
Room 5527
Washington, DC 20201

National Association of Medicaid Fraud Control Units

Patrick Lupinetti, former Director
former contact information:
Special Projects Division
Medicaid Fraud Control Unit
State of New York
Office of Attorney General
One Blue Hill Plaza
P.O. Box 1747

10th Floor, Suite 1037
Pearl River, NY 10965-1747
Telephone:    914-732-7550

Mark Moskovitz
Special Assistant Attorney General
Medicaid Fraud Control Unit
State of New York
Office of the Attorney General
120 Broadway, 13th Floor
New York, NY 10271-0007
Telephone:    212-417-5384

Richard J. Morrissey
Supervising Investigator
Medicaid Fraud Control Unit
The Capitol
Albany, NY   12224-0341
Telephone:    518-474-3032

Theresa White
Auditor/Investigator
Medicaid Fraud Control Unit
120 Broadway, 26th Floor
New York, NY   10271-0007
Telephone:    212-417-5317

Kerry O'Brien
Director, MFCU
Medicaid Fraud Control Unit of Maine
Office of the Attorney General
State House, Station 6
Augusta, ME   04333
Telephone:    207-626-8800

L. Timothy Terry
Director, MFCU
Medicaid Fraud Control Unit of Nevada
Office of the Attorney General
400 W. King Street, Suite 406
Carson City, NV 89710
Telephone:    775-684-1100

David W. Waterbury
Director, MFCU
Medicaid Fraud Control Unit of Washington

Office of the Attorney General
1019 Pacific Avenue, 3rd Floor
Tacoma, WA 98402
Telephone: 253-593-2154

Mark Schlein
Director, MFCU
Medicaid Fraud Control Unit of Florida
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Telephone: 850-414-3909

Bill Avery, Chief Investigator
Medicaid Fraud Control Unit of Florida
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Telephone:    (850)414-3906

Carolyn McElroy (President of MFCU)
State of Maryland
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202-2021
Phone: 410-576-6521

San Martin, Chief Investigator
Medicaid Fraud Control Unit
1300 I Street, Suite 1540
Sacramento, CA   95814
Telephone:    916-324-5187

Lea A. Norbut, Esquire
Assistant Attorney General
Medicaid Fraud Control Unit
Office of the Attorney General
State of Illinois
100 West Randolph Street
Chicago, IL 60601
Telephone:    312-814-5395

Scott E. Stephenson
Director, Medicaid Fraud Control Unit
Office of the Attorney General
State of Texas

Post Office Box 12307
Austin, TX 78711-2307
Telephone:     512-463-2011

State of California

Thomas Temmerman,
Senior Assistant Attorney General
Director of Medi-Cal Fraud
Bureau of Medi-Cal Fraud
1425 River Park Drive, Suite 300
Sacramento, CA    95815
Telephone:     916-274-2942

William Schneider,
Deputy Attorney General
Bureau of Medi-Cal Fraud
San Diego, CA
Telephone:     (619) 688-6099

Terry L. Porter, Investigative Auditor
Bureau of Medi-Cal Fraud
110 West "A" Street
P. O. Box 852666
San Diego, CA 92186-5266
Telephone:     (619) 645-3082

Tim Foote
Deputy Attorney General
California BMFEA
1455 Frazee Road, Suite 315
San Diego, CA 92108
Telephone: 619-688-6114

Nicholas Paul, Division Chief
Deputy Attorney General
California BMFEA
1455 Frazee Road, Suite 315
San Diego, CA 92108
Telephone: 619-688-6114

Eliseo Cisneros
Deputy Attorney General

California BMFEA
1455 Frazee Road, Suite 315
San Diego, CA 92108
Phone: 619-688-6043

Suzanne Graydon
California BMFEA
1455 Frazee Road, Suite 315
San Diego, CA 9210


State of Connecticut

Michael Cole, Esquire
Assistant Attorney General
Antitrust Unit, MacKenzie Hall
110 Sherman Street
Hartford, CT  06105-2294
Phone:  860-808-5540


State of Florida

Mark S. Thomas, Esquire
Assistant Attorney General
Medicaid Fraud Control Unit
107 West Gaines Street
Tallahassee, FL   32399-1050
Telephone:     (850) 414-3918

Mary Miller, Esquire
former Assistant Attorney General
Medicaid Fraud Control Unit
107 West Gaines Street
Tallahassee, FL   32399-1050

Vincent Foulk, Esquire
Assistant Attorney General
Assistant Attorney General
Medicaid Fraud Control Unit
107 West Gaines Street
Tallahassee, FL   32399-1050
Telephone: (850) 414-3920

Jerry Wells
former Medicaid Chief

Agency for Healthcare Administration
State of Florida
Tallahassee, FL

Susan McCloud
Agency for Healthcare Administration
State of Florida
Tallahassee, FL

Steve Gregis, Esq,
General Counsels Office
Agency for Healthcare Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, FL 32308
(850) 922-5873 / SC 292-5873

William H. Roberts
Chief Counsel
Counsel for Agency for Healthcare Administration
State of Florida
2727 Mahan Drive
Tallahassee, Florida 32308
Phone (850) 922-5873

Susan C. Felker-Little
Assistant General Counsel
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308


State of Illinois

Robert Barba
Assistant Attorney General
Office of the Attorney General
State of Illinois
100 West Randolph Street
12th Floor
Chicago, IL 60601
Telephone:    312-814-4498 (direct)

Patrick Keenan, Esq.
Assistant Attorney General
Medicaid Fraud Control Unit
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor

Chicago, IL 60601
Telephone:      312-814-3796

Nicholas R. Cozzolino, Senior Inspector
Illinois State Police
8151 W. 183rd St., Suite F
Tinley Park, IL   60477
Phone: 708-633-5518

Jeffrey P. Gray
Special Assistant Attorney General
Medicaid Fraud Bureau
State of Illinois
Office of the Attorney General
8330 S. Martin Luther King Dr.
Chicago, IL 60619
Telephone:      773-602-5668

Michael C. Rosenblat
Deputy Bureau Chief
Medicaid Fraud Unit
State of Illinois
Office of the Attorney General
8330 S. Martin Luther King Dr.
Chicago, IL 60619
Telephone:      773-602-5668

Paul E. Keller
Deputy Inspector General
Illinois Department of Public Aid
Office of Inspector General
400 N. 5th Street
Springfield, IL 62762
Telephone:      217-524-5489

State of Kentucky

Todd Leatherman
Director, Consumer Protection Division
Kentucky Attorney General's Office
1024 Capital Center Drive
Frankfort, KY  40601
Phone: 502-696-5389

State of Minnesota

Michael J.  Vanselow, Esq.
Assistant Attorney General
NCL Tower, Suite 100
445 Minnesota Street
St. Paul, MN 55101-2128
Phone: 651-296-9418

Ann M. Bildsten, Esq.
Assistant Attorney General
NCL Tower, Suite 100
445 Minnesota Street
St. Paul, MN 55101-2128
Phone: 651-296-7343


State of New York

Thomas Staffa, Chief
Criminal Division
Office of the Attorney General
State of New York
120 Broad Way
New York, NY 10271
Telephone:     212-417-5261

State of Texas

Patrick O'Connell, former Chief
Civil Medicaid Fraud
Office of the Attorney General of Texas
300 West 15th, 9th Floor
Austin, TX   78701

Susan Miller, Esquire
Civil Medicaid Fraud
Office of the Attorney General of Texas
300 West 15th, 9th Floor
Austin, TX   78701

Paul Carmona
former Division Chief
Elder Law and Public Health Division
Office of the Attorney General, State of Texas

Robert E. Agnor
former Assistant Attorney General

Civil Medicaid Fraud
Office of the Attorney General of Texas
300 West 15th, 9th Floor
Austin, TX   78701

Martha McNeill, former formulary manager
Texas Department of Health
Bureau of Vendor Drugs

Raymond Winter
Chief
Civil Medicaid Fraud  Divison
Office of the Attorney General of Texas
300 West 15th, 9th Floor
Austin, TX   78701

Cynthia O'Keefe
Deputy Chief
Civil Medicaid Fraud
Office of the Attorney General of Texas
300 West 15th, 9th Floor
Austin, TX   78701

United States Congress

Mark Paoletta
Counsel to
Committee on Commerce
U.S. House of Representatives
2125 Rayburn House Office Building
Washington, DC 20515
phone: 202-225-2047

Charles M. Clapton
Counsel to
Committee on Commerce
U.S. House of Representatives
2125 Rayburn House Office Building
Washington, DC 20515
Direct Telephone #:    202-226-4311

Edith Holleman
Democratic Counsel
Committee on Commerce
U.S. House of Representatives
564 Ford House Office Building

Washington, D.C.   20515
Telephone:      202-226-3400

Hon. Fortney Pete Stark, Representative, United States Congress –
House of Representatives
Committee on Ways and Means
U.S. House of Representatives
Washington, DC 20515

Mr. Bill Vaughan
Subcommittee Minority
Committee on Ways and Means
U.S. House of Representatives
Washington, DC 20515
Telephone:      202-225-4318

Hon. Thomas Bliley, Representative, United States Congress
U.S. House of Representatives
Washington, DC 20515

Hon. Billy Tauzin, former Representative, United States Congress
U.S. House of Representatives
Washington, DC 20515

State and federal government representatives, including those named above, were
unaware of Abbott's fraudulent course of conduct in general and did not have NDC-
specific, actual pricing information over material time frames that pointed to specific
drugs, by NDC number, where the fraud was being committed.  Ven-a-Care experienced
this lack of information first with the responsible DOJ and OIG representatives, and
subsequently with state Medicaid officials and Attorneys General.  Later, Ven-a-Care
experienced a similar lack of information among senior members of the United States
Congress and their staffs.  In fact, the Department of Justice used Ven-a-Care's pricing
data to cause First Data Bank to adjust published AWPs in 2000 and Abbott personnel
internally referred to these new AWPs at the time as the "Ven-a-Care AWPs."

**INTERROGATORY NO. 3:** Identify, by his or her name, employment affiliation, job
title, present (or last known) contact information:

(a) specific individuals involved with any State Medicaid Program or the United States Government that You understand believe or believed that AWP is the price, net any discounts or rebates, at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer; and

(b) specific individuals involved with any State Medicaid Program or the United States Government that You understand does not believe or did not believe that AWP is the price, net any discounts or rebates, at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer.

**RESPONSE:**

Ven-a-Care objects to this Interrogatory because it misstates Relator's allegations in paragraph 44 of the Complaint and otherwise;  therefore, the Interrogatory is argumentative and inherently misleading.  Furthermore, this Interrogatory is unduly burdensome, overbroad and harassing because it inherently requires Ven-a-Care to canvass the entire current and former staff of every state Medicaid program and federal Medicaid organization.  Subject to and without waiver of these specific Objections and the incorporated general Objections, Ven-a-Care provides the following Answer:

Multiple public explanations and/or definitions of AWP have been set forth over the years which characterized AWP as being used to refer to the price at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then dispenses or administers it to a patient.  As the primary data publication utilized by state Medicaid programs, First Data Bank published repeated explanations/definitions of AWP from 1991 through at least 2002 which conformed to this characterization.  (See exhibits from deposition of Marilyn Davis as corporate representative of First Data Bank in MDL 1456.) Ven-a-Care has reason to believe state Medicaid personnel would have received these materials in the ordinary course of their receipt of materials from First Data Bank. First Data Bank has provided admissible information, made a part of MDL 1456 and the cases in MDL 1456, including this case, to this effect as well.  Additionally, in 1993 the United States Dept. of Commerce and in 1994 the United States Health Care Financing Administration also published AWP definitions which comport with the above

characterization.  Interestingly, Abbott itself defined AWP consistent with this characterization.  (See TXABT 507189).

Ven-a-Care also notes that in its discussions with the government counsel and personnel identified in answer to Interrogatory No. 2 no person provided a differing characterization of AWP.  Instead, government personnel indicated AWP was intended to reference the prices at which a pharmaceutical firm or a wholesaler sells a drug to a retail Customer who then dispenses or administers it to a patient.  Ven-a-Care believes many published AWPs for many drug products have acted as reliable indicators of prices charged to retail pharmacies.

**INTERROGATORY NO. 4:** Identify, separately for each State Medicaid Program, the definition(s) of WAC, AWP and DP used by each State Medicaid Program during the Relevant Claim Period. If a particular State Medicaid Program has had no definition for AWP, WAC or DP, please so indicate. Include in your response:

> (a) the date(s) for which such a definition was in effect;
>
> (b) whether the definition changed at any point in time and Your understanding of why the definition changed;
>
> (c) the source of the definition(s) (e.g., statute, program memorandum); and
>
> (d) any individuals currently or formerly within the individual State Medicaid Program that You believe can verify the definition.

**RESPONSE:**

Ven-a-Care objects to this Interrogatory.  This Interrogatory is unduly burdensome, overbroad and harassing because it inherently requires Ven-a-Care to canvass the entire current and former staff of every state Medicaid program and federal Medicaid organization.  Furthermore, this Interrogatory is argumentative and impermissibly calls for a legal conclusion.  The terminology utilized in the statutory and regulatory framework of Medicaid drug reimbursement is subject to judicial interpretation utilizing the rules of statutory construction.  An individual person's view of terminology meaning does not control the judicial determination of the term.  Subject to and without waiver of

these specific Objections and the incorporated general Objections, Ven-a-Care provides the following Answer:

Abbott is participating in ongoing and past discovery of state Medicaid programs to gather information such as that requested above.  Ven-a-Care has no greater access to such information than Abbott.  At this time, Ven-a-Care is not aware of any requested State Medicaid Program definition except for the information provided previously concerning the published definitions from First Data Bank, the Department of Commerce, the Health Care Financing Administration, and otherwise which Ven-a-Care incorporates by reference to its Answer to Interrogatory No. 3 above.

**INTERROGATORY NO. 5:** For each quarter during the Relevant Time Period, Identify, for each NDC, the reported prices (AWP and WAC), Relator Cost (as that term is used in the Complaint) and the corresponding spreads (the difference between the prices at which the drugs were sold and their reported prices) for the Subject Drugs and the Equivalent Drugs.

**RESPONSE:**

Ven-a-Care objects to this Interrogatory because is unduly burdensome.  Subject to and without waiver of this specific Objection and the incorporated general Objections, Ven-a-Care provides the following Answer:

Ven-a-Care has produced all Relator Cost information to Abbott.  Relator Cost source information has been indentified in Ven-a-Care's Amended Disclosures as well as set forth more specifically in the Complaint and the exhibit(s).  Ven-a-Care has also produced reported pricing information, such as AWPs and charts including cost information and AWP information, pertinent to the Drugs at issue and named in Relator's pending Complaint.  For examples of both types of documentation, see the documentation referenced by bates numbers in Ven-a-Care's Responses to Abbott's First Request for Production No.  7, 8 and No. 50.  Furthermore, in MDL 1456 all parties have been provided a comprehensive National Drug Data File database from First Data Bank which contains the reported prices.  In light of Ven-a-Care's production and First Data

Bank's production of the NDDF database, Abbott is in as good a position as Ven-a-Care to analyze the corresponding spreads of the Drugs.  Although it is unclear this Interrogatory asks for damages analysis or related information, Ven-a-Care states that it fully expects to provide an expert report which will provide analysis pertinent to Ven-a-Care's disclosed damages model.

**INTERROGATORY NO. 6:** Identify and provide all facts known to Ven-A-Care and its attorneys relating to each and every instance in which Abbott marketed the "spread" of a Subject Drug to any Provider as alleged in Paragraph 70 of the Complaint, and for each such instance, Identify:

> (a) the employee of Abbott who allegedly marketed the spread;

> (b) the Provider to whom the spread was marketed (and the individual employees of the Provider involved in the interaction);

> (c) the NDC of the drug that was marketed;

> (d) the place and time of the alleged marketing;

> (e) the content of the alleged marketing (including the precise facts on which You base your assertion that the employee "marketed the spread");

> (f) whether the Provider purchased or did not purchase the product; and

> (g) if applicable, all evidence that supports or refutes Your contention that the Provider purchased the product because of the spread between acquisition cost and reimbursement, as opposed to some other reason.

**RESPONSE:**

Ven-a-Care objects to this Interrogatory because it is unduly burdensome, overbroad and harassing.  This Interrogatory is also impermissibly argumentative in misstating Ven-a-Care's contentions.  Ven-a-Care has not alleged and its claims do not require proof that Drugs were purchased as a result of spread.  Ven-a-Care must simply show that Medicaid drug cost reimbursements for the Drugs dispensed would have decreased if Abbott had reported or caused to be reported lower pricing.  Ven-a-Care also objects because it is not required to set forth each and every instance of the alleged conduct set forth in paragraph 70 of Relator's Complaint.  The dissemination of spread or reimbursement-related information, including AWP information, to the pharmacy marketplace was widespread.

Some mechanisms by which this reimbursement information was conveyed are advertisements, pharmacy purchasing software (often provided by wholesalers), sales presentations, bid documentation, and standard communications such as sell sheets, stocking sheets, pharmacy/wholesaler correspondence, and/or product information sheets. The enumeration of each such instance is impossible, but Abbott witnesses admit these mechanisms were utilized frequently.  Furthermore, discovery is ongoing and Ven-a-Care reserves the right to supplement its Answer to this Interrogatory.  Subject to and without waiver of these specific Objections and the incorporated general Objections, Ven-a-Care provides the following additional response:

Abbott knowingly caused the publication of prices for the Drugs which were utilized in the setting of Medicaid drug reimbursement amounts.  Abbott knew these prices significantly exceeded market prices generally and currently paid by pharmacies for the Drugs.  Abbott also knew pharmaceutical reimbursers, such as Medicaid, generally based Drug reimbursements, in part, upon the published pricing information.  Abbott also knew that pharmacies considered such reimbursement or benchmarks for reimbursement, such as AWP, in making purchasing decisions concerning the Drugs and Abbott communicated such AWP information in industry documentation such as product listings, order sheets, sell sheets, and stocking sheets.  (See DeYoung Exh. 519, Lehn Exh. 11 (aka Pavlik Exh. 2) and DeYoung, Lehn, and Pavlik testimony.)  Specifically, pharmacies or representatives of pharmacies were able to compare relative reimbursement or reimbursement benchmarks through the use of industry materials such as promotional materials, form letters, and other communications to customers which contained AWP.  (See retail buying group information,  TX ABT 244823 - 843;  see also Neil Warren Exh. #2 Cardinal's "Leader" catalog. pp. CH 055678 – 80 and Neil Warren testimony.)  Other mechanisms for the marketing or communication of spreads or reimbursement-related information such as AWPs  includes pharmacy purchasing software such as Cardinal's Choice software (See deposition, with exhibits, of Don Lyle taken in MDL 1456), McKesson's Econolink software (See  Econolink McKesson mf zips produced by Ven-a-Care to Abbott), and AmerisourceBergen's Echo software (See Amerisource Bergen Southeast Region – Echo Support Cust #119262 Disk 1 of 11/18/02

ZCOM30 file, AmeriSource Bergen Southeast Region – Echo Support Cust #119262 – Disk 1 of 2 11/18/02 Delta File, AmeriSource Bergen Southeast Region – Echo Support Cust #119262 – Disk 2 of 2 11/18/02 Delta File, Echow Databases, Echow 3.1.15 AmeriSource Bergen  produced by Ven-a-Care to Abbott). In addition, Abbott contracted with Group Purchasing Organizations (GPOs), wholesaler source programs and chain pharmacies for the express purpose of marketing Abbott's subject drugs based, in part, on the spread.  Abbott paid some added compensation to such customers in relation to volume of sales or purchases generated by those customers.   In the bid process related to these types of dealings between Abbott and these customers, AWP information was historically communicated by Abbott to these customers during the bid process.  (See Fiske March 21 and 22, 2007 testimony.) AWP information continues to be part of the customers' bid criteria and Abbott is aware of this fact.  Now, when AWP information is sought from Abbott by customers Abbott simply refers the customers to First Data Bank published prices which Abbott causes to be published for Abbott drugs.  Ven-A-Care has provided additional responsive information in response to Abbott's interrogatories in the pending action involving Abbott's HPD division.

Dated: January 30, 2009

Respectfully submitted,


/s/ Jarrett Anderson

C. Jarrett Anderson
Anderson LLC
208 West 14th Street, Suite 203
Austin, TX 78701
Phone: 512-469-9191
Fax: 512-532-0585
EMAIL: jarrett@anderson-llc.com

James J. Breen
The Breen Law Firm
P.O. Box 297470
Pembroke Pines, FL  33029-7470
Phone:  954-874-1635
Fax:  954-874-1739
EMAIL:  jbreen@breenlaw.com
For Ven-A-Care of the Florida Keys, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused an electronic copy of the above **PLAINTIFF VEN-A-CARE OF THE FLORIDA KEYS, INC.'S, SECOND AMENDED ANSWERS AND OBJECTIONS TO ABBOTT LABORATORIES INC.'S FIRST SET OF INTERROGATORIES** to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No.2 by sending a copy to Lexis Nexis File and Serve for posting and notification to all parties.

<u>/s/ Jarrett Anderson</u>

Dated: January 30, 2009