**ANDERSON EXHIBIT 29**



PB94-187689



Information is our business.

# ASSESSMENT OF ADEQUACY OF REIMBURSEMENT RATES TO PHARMACIES AND ITS IMPACT ON THE ACCESS TO MEDICATION AND PHARMACY SERVICES BY MEDICAID RECIPIENTS

SYSTEMETRICS, INC.
CAMBRIDGE, MA

HEALTH CARE LIBRARY
PRICEWATERHOUSECOOPERS LLP
203 N. LaSalle St.
Chicago, IL 60601-1210

AUG 93



U.S. DEPARTMENT OF COMMERCE
National Technical Information Service

Case 1:01-cv-12257-PBS   Document 6625-113   Filed 11/02/09   Page 3 of 9



PB94-187689

# ASSESSMENT OF ADEQUACY OF REIMBURSEMENT RATES TO PHARMACIES AND ITS IMPACT ON THE ACCESS TO MEDICATION AND PHARMACY SERVICES BY MEDICAID RECIPIENTS

HCFA Contract No. 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
Delivery Order No. 3

*Submitted by*

E. Kathleen Adams, Ph.D.
Norma Gavin

SysteMetrics
A Division of MEDSTAT® Systems, Inc.
125 CambridgePark Drive
Cambridge, MA 02140

David H. Kreling, Ph.D.
University of Wisconsin
School of Pharmacy

August 25, 1993

APPROVED BY
U.S. Department of Commerce
National Technical Information Service
Springfield, Virginia 22161

| 50272-101 | | | PB94-187689 |
|---|---|---|---|
| **REPORT DOCUMENTATION PAGE** | **1. REPORT NO.** | **2.** | |

| 4. Title and Subtitle | 5. Report Date |
|---|---|
| Report to Congress—Adequacy of reimbursement rates to pharmacies and its impact on the access to medication and pharmacy services by Medicaid recipients | |

| 7. Author(s) | 8. Performing Organization Rept. No. |
|---|---|
| E. Kathleen Adams, Norma Gavin | |

| 9. Performing Organization Name and Address | 10. Project/Task/Work Unit No. |
|---|---|
| SysteMetrics<br>125 Cambridge Park Drive<br>Cambridge, MA 02140 | |
| | 11. Contract(C) or Grant(G) No.<br>(C)<br>(G) |

| 12. Sponsoring Organization Name and Address | 13. Type of Report & Period Covered |
|---|---|
| HCFA<br>6325 Security Boulevard<br>2504 Oak Meadows Building<br>Baltimore, MD 21207 | |
| | 14. |

**15. Supplementary Notes**

**16. Abstract (Limit 200 words)**

The Omnibus Budget Reconciliation Act of 1990 mandated that a study be conducted that determines the adequacy of reimbursement rates to pharmacists under each State's Medicaid program and the extent to which reimbursement rates under Medicaid have an effect on beneficiary access to medications.

The report, submitted to Congress on March 30, 1994, addresses research questions in two major areas, adequacy and access. The difference between payment and cost measures forms the base for the adequacy measure. The major question regarding adequacy is whether State payments are adequate in relation to the costs of dispensing drugs. The major question regarding access is whether there is a relationship between the adequacy of State payment and access. The report concluded that in general payment to pharmacies providing service to Medicaid appears adequate to insure access.

**17. Document Analysis   a. Descriptors**

Medicaid, Pharmacy

**b. Identifiers/Open-Ended Terms**

Prescription Drugs, Dispensing Fees, Drug Ingredient Cost

**c. COSATI Field/Group**

| 18. Availability Statement | 19. Security Class (This Report)<br>Unclassified | 21. No. of Pages<br>112 |
|---|---|---|
| Unlimited Distribution | 20. Security Class (This Page)<br>Unclassified | 22. Price |

(See ANSI-Z39.18)   See Instructions on Reverse   OPTIONAL FORM 272 (4-77)<br>(Formerly NTIS-35)<br>Department of Commerce

## 1.2   BACKGROUND

In this section and the remainder of the report, numerous definitions of terms specific to the pharmaceutical industry are introduced. To aid the reader, we have provided a glossary of terms, shown in Table 1.1. This can serve as a reference for much of the following text.

Table 1.1
Definitions of Terms Specific to the Pharmaceutical Industry

| TERM | DEFINITION |
|---|---|
| Actual Acquisition Cost (AAC) | Pharmacist's net payments made to purchase a drug from any source (e.g., manufacturer, wholesaler) net of discounts, rebates, etc. |
| Estimated Acquisition Cost (EAC) | An estimate of pharmacies' actual acquisition costs that are made by the States and other third-party payers. |
| Maximum Allowable Cost (MAC) | A maximum dollar amount for which the pharmacist is reimbursed for selected products. |
| Average Manufacturer's Price (AMP) | The average price paid by wholesalers to manufacturers for products to be distributed to retailers. |
| Average Wholesale Price (AWP) | The manufacturer's *suggested* wholesale price to the retailer which is listed in either the Red or Blue Book. |
| Wholesale Acquisition Cost (WAC) | The wholesaler's net payment made to purchase a drug product from the manufacturer, net of purchasing allowances and discounts. |

It is also helpful to consider how these terms relate to the adequacy measures estimated by this study. There are two components to this measure: dispensing and ingredient. All of the terms in Table 1.1 relate to the latter component. With respect to drug ingredients, the cost to the pharmacist is referred to as the Actual Acquisition Cost (AAC). Given the complexity of measuring these costs, States have used an approximation which is referred to as Estimated Acquisition Cost (EAC).

The information used to estimate these acquisition costs is generally the Average Wholesale Price (AWP) which is not, however, a direct measure of true acquisition costs. This is actually the suggested wholesale price to the pharmacy; in reality, wholesalers compete with each other by offering pharmacies different discounts from this price. In addition, some pharmacies purchase directly from the manufacturer, skipping the wholesaler entirely and thereby reducing costs. Estimates of the range of discounts from AWP available to pharmacies include 10-18 percent (HCFA, 1992). In light of this,

the majority of States estimate acquisition costs by deducting a percentage from the published AWP. Others use information on the Wholesaler's Acquisition Cost (WAC) and add a certain percentage. This reflects the fact that wholesalers commonly add a percentage mark-up to their own acquisition costs when establishing a price to charge the pharmacy. Ultimately, these State estimates may be an under- or over-statement of actual costs. This study uses data on wholesalers' invoices to pharmacies by region to gain some insight on pharmacists' AAC by State.

### 1.2.1   Legislation

Over the years, there has been significant Federal legislation on Medicaid payment policy for prescription drugs. The impetus for this legislation has often been the desire to control program costs for prescription drug benefits. As noted, controls on the amounts paid for the ingredient cost of prescriptions had been in the form of Federal upper limits, or MACs, but concerns with access led to increased flexibility for the States. MAC refers to a set dollar limit above which pharmacists can not be reimbursed for selected products. In 1987, under new Federal regulations (52 FR 28648), States were given more flexibility in establishing these MACs and other payment methodologies. State reimbursement policy now varies for the drugs which are multi-source and those which are not. For the multi-source drugs, there can be State MACs in place that differ from the Federal maximums, although States' payments must stay within the Federal aggregate expenditure limits. For other drugs, States reimburse for the lower of the pharmacy's usual and customary charges or the EAC as estimated by the State.

Section 4401(d)(4) of OBRA 1990 requires the Secretary to conduct a "Study on reimbursement rates to Pharmacists." The specific mandates for the study are to determine:

"(i)   the adequacy of current reimbursement rates to pharmacists under each State medical assistance programs (sic) conducted under Title XIX of the Social Security Act; and

(ii)  the extent to which reimbursement rates under such programs have an effect on beneficiary access to medications covered and pharmacy services under such programs."

The 1990 law did not provide for any increase in the allocations for pharmacy payments, but there can be no reductions to drug product and dispensing fee reimbursements from their January 1991 levels until 1995. However, changes in terms of the requirements for prior approval (excluding newly approved pharmaceutical products for six months), requirements for use of generic substitutions, and under prior approval programs, response within 24 hours of a given request, may lead to increased paperwork and uncertainty for pharmacies. OBRA 1993 amended provisons of OBRA 1990. States may subject any covered outpatient

drug to prior authorization. However, this provision was not in place at the time of this study. Pharmacies may inadvertently dispense drugs that are not approved or are not the required generic. This could adversely affect their profits as the State will reimburse at the MAC level only for multiple-source drugs and may deny reimbursement altogether for those dispensed without prior approval. Thus, pharmacies may be operating within a more complicated Medicaid environment that might discourage their participation.

### 1.2.2   Pharmacy Industry

In analyzing the pharmacy payment, it is important to recognize some salient characteristics of the pharmacy industry and recent changes. First, the structure of the industry is varied as prescription medications are dispensed in a variety of settings. These include: 1) independent pharmacies that provide goods and sundries in addition to prescriptions and that operate as small business entities; 2) professional pharmacies that sell only prescriptions and that operate as small business entities; 3) chain pharmacies, that may be freestanding or located within a grocery or other type of retail store and which buy pharmaceuticals in volume; 4) pharmacies situated in health clinics, hospital outpatient departments and HMOs; and 5) mail order pharmacies that offer prescription drug services to specially enrolled groups. This study does not include information on either of the last two settings.

Other aspects of the industry also make cost analysis difficult. For many providers, drugs are not the only type of goods sold or services provided. Moreover, Medicaid is a relatively small fraction of the total business for most providers. Independents have historically provided a larger percentage of their services to Medicaid enrollees than chain stores have. Whereas Medicaid covered 18.9 percent of all retail prescriptions in 1989 (Schondelmeyer and Thomas, 1990), Medicaid prescriptions accounted for more than 23.5 percent of all prescriptions dispensed by independents and only 11.2 percent of those dispensed by chain stores. Finally, much of the cost of providing prescriptions, the ingredient costs, are not under the direct control of the pharmacy.

An important trend in the pharmacy industry is the continued decline in the importance of the smaller, independent pharmacy. While the total number of retail community pharmacies has held relatively constant, the number of independents has decreased. In 1950, 92 percent of all pharmacies were independents; by 1970, this number had declined to 87 percent and by 1992, independents represented only 55 percent of the approximately 57,000 retail community pharmacies. The causes of this decline are many. One factor may be the increased role of third-party reimbursement; another may be the inability of smaller pharmacies to effectively compete. If there is a difference in the location and/or propensity of independents

and chain pharmacies to participate in Medicaid programs, the declining number of independents may affect access of Medicaid enrollees.

### 1.2.3 Medicaid

As noted earlier, issues surrounding pharmacy reimbursement in Medicaid must be considered in light of the dramatic increases in the growth rate in expenditures experienced by the majority of States. While prescription expenditures remain a relatively small percentage of the total, this perhaps understates their importance in the overall management and treatment of an episode of illness and/or chronic condition. In many instances drugs can, when used appropriately, effectively lower total expenditures for an episode of illness from what they might otherwise be. Thus, in efforts to control overall program outlays, Medicaid drug payment policy must consider not only the role of payment policy in affecting total expenditures but in creating an environment for access to appropriate and effective drug therapy.

Overall, States are directed to pay on a retrospective fee-for-service basis with payments limited to the lower of 1) the pharmacy's usual and customary charge, or 2) the EAC of the drug product plus an established dispensing fee to cover the pharmacy's overhead and profit. Medicaid payment policy for pharmaceutical services varies from State to State in terms of the drugs covered by MACs, the basis of payment for drugs (e.g., AWP or WAC), the level of the payment for dispensing fees, and other aspects of the payment program that can affect access. Furthermore, there are factors other than the reimbursement amounts that will affect pharmacy profits and beneficiary access. In particular, access may be affected by the continuation and/or implementation of Prior Authorization (PAR) programs, which are being used by States to control the drugs that are reimbursed within each Medicaid program. That is, in spite of the agreement that all drugs of a manufacturer involved in the rebate program are to be reimbursed by Medicaid, States may be effectively restricting access by requiring prior approval. Some States are exempting only two or three drugs within a therapeutic class from PAR, others are considering a price based system where providers and beneficiaries will have unrestricted access only to the "cheapest" drug within a therapeutic class. Such programs may compromise access to certain drugs for Medicaid beneficiaries.



U.S. DEPARTMENT OF COMMERCE
Technology Administration
National Technical Information Service
Springfield, VA 22161    (703) 487-4650