# ANDERSON EXHIBIT 4

TO

OPPOSITION TO EXCLUDE TESTIMONY
OF EXPERT MARK G. DUGGAN PH.D.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) | |
| ) | MDL No. 1456 |
| ) | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ) | |
| ) | Subcategory No. 07-11618-PBS |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 07-CV-11618-PBS ) ) | |
| ) | Hon. Patti B. Saris |
| ) ) | |

**DECLARATION OF J. KEVIN GOROSPE**

I, J. Kevin Gorospe, do hereby declare as follows:

1.    My name is J. Kevin Gorospe. I am currently employed as the Chief of Medi-Cal Pharmacy Policy, California Department of Health Care Services ("DHCS"). I have been employed with the DHCS since 1995. I have personal knowledge of the matters stated in this declaration.

2.    The purpose of this declaration is to explain a feature of California's Medi-Cal drug provider reimbursement program concerning pharmacy claims for reimbursement in the Medi-Cal fee-for-service program.

3.  Since at least 1994, the beginning of the relevant time period identified in California's AWP action against certain drug manufacturers (*State of California, ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Abbott Laboratories, Inc., et al.*), California's Medi-Cal program has included a fee-for-service program that reimburses providers for prescription drugs. The reimbursement amount for a drug product is the lowest of (a) the product's estimated acquisition cost ("EAC"); (b) the state's Maximum Allowable Ingredient Cost ("MAIC") for the product; (c) the product's Federal Upper Limit ("FUL"); or (d) the provider's usual and customary charge to the general public. California's EAC has been established at various times as Direct Price ("DP") or AWP-5%, AWP-10%, or AWP-17%. A fixed dispensing fee is also added.

4.  Since 1994, EAC in California has been established on an NDC-by-NDC basis, and it has been based exclusively on the pricing information that the manufacturers have published and/or have caused to be published in First Databank's drug-pricing compendium.

5.  Medi-Cal's MAIC is similar to a FUL inasmuch as it imposes a cap on reimbursement at a predetermined level. Unlike a federally-instituted FUL, however, Medi-Cal's MAIC is instituted by the state. That a MAIC has been established for a drug product, however, does not necessarily mean that the product will be reimbursed by Medi-Cal at the MAIC price; rather, in California, if a drug product's FUL is lower than that drug's established MAIC, then the FUL serves as a ceiling price for the drug. This is a result of the "lower of" reimbursement methodology employed by Medi-Cal as described above, which requires Medi-Cal to reimburse at the "lower of" price, irrespective of the established FUL or MAIC.

6.  Given this, since 1994, it has often been the case that Medi-Cal's established MAIC for a drug product has exceeded that product's FUL. In such instances, the federally-imposed FUL, rather than the state-imposed MAIC, has acted as the drug product's ceiling for reimbursement.

7.  In California's AWP action currently before this Court, it is my understanding that California's Medi-Cal program is seeking recovery regarding Medicaid claims which were reimbursed using a FUL. I understand that California contends lower prices should have been reported by the defendants. I also understand that California further contends these lower prices would have resulted in an EAC for a given NDC which was lower than the applicable FUL at which reimbursement was actually made. Accordingly, it is my belief that reimbursement would have decreased due to this lower EAC on a given NDC, if defendants had reported lower prices for that respective NDC.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 29, 2009

_____
J. KEVIN GOROSPE