# EXHIBIT B

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Abbott | Ex J | 1996 06 10 | News Media | Barron's Article: Hooked on Drugs Why do insurers pay such outrageous prices for pharmaceuticals | The June 1996 Barron's article, in relevant part, discusses only one manufacturer's drug product relevant to this action, Abbott's Vancomycin. The article identifies Abbott as the maker of Vancomycin and sets forth the reported AWP, the wholesale price and % price under AWP. The article includes the following report: the opinion of a Ft Worth Tx based pharmacy director that Leucovorin is one of the cancer drugs that typifies a basic drug-industry pricing convention which is a multibillion-dollar fraud; that drug providers pay prices 60%-90% below AWP used in reimbursement claims; that a segment of health care industry has thrived on huge spreads between published prices and prices paid; that drug mfrs inflated price lists and the opportunity for profiteering they afford to middlemen gain them market share; that Medicare reimbursement changes could affect companies, including Abbott; that nebulizer drugs, including albuterol sulfate, first studied by auditors; the existence of a separate OIG report re feeding tube liquids, including Abbott Labs Ensure products; that OIG looking at big-ticket drugs and intravenous liquids; table entitled "AWP Ain't What's Paid" listing several drugs and each drug's use, maker, AWP, Whls price, and % under AWP (58% -91%); Barron's examination of top 20 MediCare drugs and various intravenous solutions and statement generics mfrs price was 60% - 85% below AWP; pricing worse for intravenous nutritionals and solutions, a category dominated by Abbott and Baxter with whls prices 80%-93% off AWP. Same as Dey Exh 25 and Roxane Tab 95 | Y | N | The Barron's article is not a public disclosure for purposes of this action because it was published after VAC filed its Miami federal action on June 23, 1995 which included a claim against Abbott for Vancomycin. If the article is considered a public disclosure, the disclosure is limited to Abbott's Vancomycin and, as supported by the Affidavit of Dr. John Lockwood, VAC has direct and independent knowledge of the information on which the allegations in its amended complaint are based. |
| Abbott | Ex K | 1987 07 05 | News Media | Lexington Herald "Drug industry overcharging Medicaid Prescriptions costs taxpayers millions of extra dollars", | Generalized discussion of average differences between reported AWP and actual costs; AWPs provided by the drug companies to compendia are inflated; Kentucky referred cases to AG but there was insufficient evidence of wrongdoing to prosecute; companies market the spread; spreads from 13-16% of AWP; 1985 Texas survey and single example of penicillin product with $100 AWP purchased by pharmacists for $30. Same as Dey Ex 24 and Roxane Tab 73 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, NDC, false prices, actual individual prices, or mega spreads or industry-wide wrongdoing. Speculation that fraud might occur in the future does not constitute a public disclosure. |
| Abbott | Ex L | 1992 10 00 | OIG Report | (A-01-91-00526) Memorandum from the Office of Inspector General entitled "Cost of Dialysis-Related Drugs" | Generalized discussion that most drugs are purchased below AWP and of average differences between reported AWP and actual costs: Proposal to change MCare reimbursement of ESRD drugs to 85% AWP; OIG review at request of HCFA to 1) determine impact of change and 2) obtain data to identify high volume separately billable drugs for inclusion under prospective composite rate; review of dialysis facilities disclosed 28 of 30 sampled facilities purchased at prices less than AWP; median cost for 2 brand drugs 15-20 % off AWP; HCFA reports that AWP is 10-20% over prices actually paid; OIG finding that AWP is 15.5% higher; everyone admits that AWP is not a real price. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, or actual individual prices, except for Vancomycin which is not identified by a manufacturer-specific NDC. |

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Abbott | Ex N | 2007 05 04 | Unfiled Deposition Testimony | HCFA Administrator Dr. Bruce Vladek's deposition testimony | General discussion of inflated AWP prices, including his perception the larger chains receive greater price discounts; the "Modern Healthcare" article concerning group purchasing discounts up to 99%; his perception list prices are essentially meaningless; his knowledge AWP was not an average; the relationship between AWP and AMP; his statement that information from which a "spread" could be calculated was available to HCFA employees; and HCFA's neglect while he was Administrator to verify manufacturer prices. | N | N | Unfiled, depositions testimony does not fall within any of the exlusive statutory public disclosure source categories. Also, the deposition testimony is inadmissible hearsay because it refers to the purported content of an article that the witness recalls reading almost two decades ago, and the witness's testimony about his vague recollection of the content is clearly hearsay.<br><br>Even if the depostion testimony is considered as a qualified statutory public disclosure source, it is not a public disclosure because it occurred long after the institution of this action and there is no allegation of fraud and no readily identifiable information relevant to this action concerning any Defendant manufacturer or drug product. |
| Abbott | Ex O | 1980 07 00 | Industry Trade Journal | Modern Healthcare article by Esther Kuntz: Hospitals play into hands of vendors who try to break group contracts | Discussion of manufacturer's efforts to break up GPO contracts | N | N | Industry Trade Journals do not fall within any of the exclusive statutory public dislcosure source categories.<br><br>Even if this trade journal article is recognized as a qualified statutory public disclosure source, it is not a public disclosure because there is --<br>No allegation of fraud; and<br>No readily identifiable information relevant to this action concerning the false set of facts or true set of facts from which fraud could be inferred. Furthermore, the article discusses the hospital supply marketplace which is a sub-market not at issue in the present case and which traditionally benefited from large discounts not available to outpatient pharmacies, and it is therefore irrelevant and immaterial. |

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Abbott | Ex P | 1994 11 07 | Industry Trade Journal | LATELINES Drug Topics- HCFA Taking Hard Look at Drug Costs | Discusses HCFA attempt to determine difference between actual acquisition cost and AWP from 12-state 43 pharmacy random sampling. Same as Dey Ex 33 | N | N | Industry Trade Journals do not fall within any of the exclusive statutory public disclosure source categories. Even if this trade journal article is considered a statutory source, it is not a public disclosure because there is -- No allegation of fraud; and No readily identifiable information concerning the false set of facts or true set of facts from which fraud could be inferred. |
| Abbott | Ex Q | 1994 11 18 | OIG letter to FL Medicaid agency | OIG letter to FL Medicaid agency requesting cooperation with 11-state review | See description | N | N | This letter does not fall within any of the exclusive statutory public disclosure source categories, and there is no showing it was made public at the time. Even if this OIG letter is considered a statutory source it is not a public disclosure because there is -- No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, NDC, actual individual prices, mega spreads or the scheme or industry-wide wrongdoing. |
| Abbott | Ex R | 2008 06 24 | Unfiled Deposition Testimony | OIG agent Paul Chesser's deposition testimony | Testimony that he facilitated 12-state OIG study; that the study's purpose was to compare AWP prices with pharmacies' acquisition costs; that there was no implication of fraud and that he was not investigating for fraud; and that there was an average discount of 42.5 % off AWP for drugs sold to Medicaid beneficiaries | N | N | Unfiled, deposition testimony does not fall within any of the exlusive statutory public disclosure source categories and there is no showing it was made public at the time. Even if the depostion testimony is considered as a qualified statutory public disclosure source, it is not a public disclosure because it occurred long after the institution of this action and there is no allegation of fraud and no readily identifiable information relevant to this action concerning any Defendant manufacturer or drug product. |

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| Dey | SJEx48 | 1996 06 00 | OIG Report | (OEI-03-94-00392) "A Comparison of Albuterol Sulfate Prices" | Comparison of Medicare allowance for J7620 (albuterol .083%) with prices from GPOs, mail-order, and retail pharmacies: many retail pharmacies and all mail-order pharmacies charged less; all buying groups negotiated prices 56% - 70% lower than Medicare allowance; OIG statement Medicare allowance "may be inappropriately high" and recommendation HCFA should use a discounted AWP or rebates or competitive bidding to reduce payments; HCFA response: concur; reviewing approaches. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, or actual individual prices, or the scheme, except for albuterol average negotiated prices.  Albuterol is identified by a J-Code, as opposed to a manufacturer-specific NDC. Additionally, Ven-A-Care was a source of this report, and the government obviously elected not to include its allegations of fraud in the report.  With respect to mail order pharmacies, this class of trade does not necessarily reflect prices generally and currently paid. |
| Dey | SJEx49 | 1996 06 00 | OIG Report | (OEI-03-94-00393) "Suppliers' Acquisition Costs for Albuterol Sulfate" | Comparison of average acquisition cost of albuterol with Medicare allowance: Medicare paying much more for albuterol than suppliers are paying; Medicare allowance is $.43/ml and avg. acquisition cost to supplier is $.19/ml. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, or actual individual prices, or the scheme, except for albuterol supplier average acquisition cost information. Ven-A-Care was a source of this report and the government obviously elected to not include its allegations of fraud in the report. |

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| Dey | SJ Ex51 | 1998 11 00 | OIG Report | (OEI-03-97-00293) "Comparing Drug Reimbursement: Medicare and Dept. of Veterans Affairs" | Comparison of Medicare allowances for 34 drugs with prices available to VA: Medicare reimbursement 15% - 1600% more than VA acquisition cost; Albuterol (HCPS K0504 & K0505, ipratropium (HCPS K0518) included in review; OIG acknowledgement that Medicare and VA by statute have different payment methodologies; cite to previous IG reports finding Medicare payments for inhalation drugs to be excessive.  Same as Roxane Tab 129 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, actual individual prices, or mega spreads, or the scheme. Although albuteral and ipratroprium were among the 34 drugs prices reviewed, there was no specific information readily identifiable to these drugs from the generalized discussions. Another reason the report does not constitute a public disclosure for purposes of this action is because VA acquisition costs are generally less than prices available in the retail pharmacy market and a comparison of Medicare reimbusement and below-market, VA negotiated acquisition costs are not anologous and can't fairly be extended to a comparison of Medicare reimbursement to the retail pharmacy market prices involved in this action. The defense expert, Robert Helms, PhD confirmed that VA prices are not pertinent to Medicare and Medicaid reimbursement. |
| Dey | SJEx 47 | 1996 02 00 | OIG Report | (A-06-94-000390) "Medicare Payment for Nebulizer Drugs" | Examines differences in reimbursement methodologies used by Medicare and Medicaid programs, focusing on three nebulizer drugs: Medicare pays lower of EAC or AWP; Medicaid pays discounted AWP amount and has a rebate program; comparison of Medicare and Medcaid costs in 17 states for three drugs indicated Medicare paid more than Medicaid would have paid; recommendation for HCFA to reexamine Medicare reimbursement methodologies; study demonstrated Medicare could have saved $MM by discounting AWP and establishing rebate program; to implement recommendation HCFA would have to revise Medicare's claims coding system which does not identify the manufacturer or indicate if the drug is brand or generic, information needed to discount AWP and obtain a rebate.  Same as Roxane Tab 127 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, the number of nebulizer drug manufacturers, or actual individual prices, or the scheme. |

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Dey | Ex 9 | 1968 00 00 | HEW Report | "The Drug Makers and The Drug Distributors" Task Force on Presciption Drugs Excerpts from Background Papers | The excerpts discuss the history and complexity of the pharmaceutical industry; that Red and Blue Book compendia quote maximum prices to the retailer and do not reflect actual manufacturer prices; the use of various discounts; that a number of factors affect the difference between published prices and customers' invoices and the difficulty in determining drug prices. Abbott is identified as licensee of Lilly for a drug not relevant to this action | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any drug product, false prices, actual prices, or mega spreads or the scheme. A 1968 report, regardless of its content, could not possibly be a public disclosure of a fraud scheme that would not occur until decades into the future and especially after Medicare and Medicaid adopted (or reaffirmed) their formulaic reimbursement methodolgies in the late 1980s and the 1990s. Note: Medicare at this time was using HCPCS, not NDCs. |
| Dey | Ex 10 | 1984 00 00 | OIG Report | Transmittal 84-12 and OIG Report - Changes could save millions) | Comparison of AWP to invoice prices based on review of 38 drugs and 60 pharmacies: 99.3% of prices 15.74% less than AWP Abbott identified as one of a number of manufacturers which the State of Oregon reimbursed at EAC based on direct prices | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads or the scheme, except for mention of EES tabs. |
| Dey | Ex 11 | 1989 10 03 | OIG Report | (A-06-89-00037) "Medicare and Medicaid Reimbursement for Drugs" | OIG recommendation for HCFA to require Medicaid Agencies that base reimbursement on AWP to use discounted AWP and for HCFA to consider using a different reimbursement methodology: AWP is not a real price; HCFA report that AWP is 10-20% over prices actually paid; OIG finding AWP is 15.5% higher. Same as Roxane Tab 82 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads, or the scheme. Moreover, the 1987 Medicaid regulation was designed to address the problems identified in the 1984 report and included an Estimated Acquisition Cost requirement. |

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Dey | Ex 12 | 1994 01 00 | GAO Report | GAO report "Prescription Drugs; Companies Typically Charge More In The United States than in the United Kingdom" (GAO/HEHS-94-29) | Comparison of drug manufacturer prices for frequently dispensed drugs sold in both the United States and the United Kingdom: focus on manufacturer prices, brand-name drugs, and the market segment in which retail pharmacies generally to not receive manufacturers' discounts; examined the top 200 drug products most frequently dispensed in the U.S. in 1991 and matched 77 products with identical drugs sold in the United Kingdom; results of analysis restricted to May 1, 1992 prices analyzed and cannot be projected beyond the scope of the study; study based on prices for which drug manufacturers sell to wholesalers; generic drugs excluded from sample; concentrated analysis on typical consumer who buys drugs at retail pharmacies who generally do not benefit from discounts; estimation of price differential that would occur if American consumers substituted generic drugs in the sample; market basket of 77 frequently dispensed drugs analyzed would cost 60% more in the U.S. than in the U.K.; 66 drugs (86%) were priced higher in the U.S. and 47 (61%) were priced more than twice as high in the U.S.; U.S.prices ranged from 62% lower to 1,712 % higher than the U.K. prices. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads, or the scheme,, except for mention of Abbott's Erythrocin Staerate with reference to differences in manufaturers' U.S. and U.K. prices (May 1, 1992). |
| Dey | Ex 30 | 1996 Ed. | Pricing Compendium | Blue Book excerpts (1996) re Dey albuterol products | See Description Reported prices for albuterol products— Excerpts from Blue Book to show Dey reported prices (also shows other Albuterol manufacturers' data) | N | N | The Blue Book does not fall within any of the exclusive statutory public disclosure source categories. Even if the Blue Book is recognized as a qualified statutory public disclosure source, the excerpts contain - No allegation of fraud; and No readily identifiable information concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads, or the scheme involved in this action, except for the identification of Dey and its reported prices for albuterol. Indeed, the Blue Book Publication repeatedly stated that AWP was an average price to the retailer determined through surveys. |

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| 19 | Dey | Ex 50 | 1997 12 00 | OIG Report | (OEI-03-97-00290) Excessive Medicare Payments for Prescription Drugs | Compares AWP-based Medicare allowances for 22 drugs, including albuterol, with catalog prices obtained from some wholesalers and GPOs: chart with drugs listed by JCodes; .083% albuterol, J7620, average wholesale price of $.15 compared to average Medicare reimbursement of $.42; published AWPs used by Medicare bear little or no resemblance to actual average wholesale prices available to physicians and suppliers; recommends changing Medicare reimbursement to Medicaid methodology.<br><br>Same as Roxane Tab 97 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads, or the scheme, except for the information concerning albuterol outlined in the summary.<br><br>This report also postdates Ven-A-Care's filing of its AWP FCA case in Miami in 1995, and the OIG relied exclusively on prices it received from Ven-A-Care. The OIG obviously opted not to include any allegations of fraud or sufficient specific pricing information about a specific company over time. |
| 20 | Dey | Ex24 | 1987 07 05 | News Media | Lexington Herald "Drug industry overcharging Medicaid Prescriptions costs taxpayers millions of extra dollars", | Generalized discussion of average differences between reported AWP and actual costs<br><br>Same as Abbott Ex K and Roxane Tab 73 | Y | N | No allegation of fraud; and No readily identifiable information concerning any Defendant manufacturer, drug product, NDC, actual individual prices, or mega spreads involved in this action.<br><br>This article was published in the decade before the fraud scheme at issue and at the time when the government was taking action to address perceived deficiencies in the Medicad reimbursement system. It would eviscerate the effectiveness of the FCA if entire industries could be effectively immunized from a qui tam action just because of a report that some unnamed manufacturers may possibly engage in a fraud scheme in the future. |
| 21 | Dey | Ex 33 Abbott Ex P | 1994 11 07 | Industry Trade Journal | LATELINES Drug Topics-HCFA Taking Hard Look at Drug Costs | Discusses HCFA attempt to determine difference between AAC and AWP from 12-state 43 pharmacy random sampling.<br><br>Same as Abbott Ex P | N | N | Even if this trade journal article is considered a statutory source it is not a public disclosure because there is --<br>No allegation of fraud; and<br>No readily identifiable information concerning the false set of facts or true set of facts from which fraud could be inferred. |

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| 22 | Dey | Exh 25 Same as Roxane 95 and Abbott J | 1996 06 10 | News Media | Barron's Article: Hooked on Drugs Why do insurers pay such outrageous prices for pharmaceuticals | Same as Abbott Ex J and Roxane Tab 95 | Y | N | With respect to Dey, there is - No allegation of fraud; and No readily identifiable information concerning Dey, its drug products, NDCs, false prices, actual individual prices, or mega spreads, or the scheme involved in this action. |
| 23 | Dey | ESHSJ46 | 1998 08 00 | OIG Report | (OEI-03-97-00292) "Are Medicare Allowances for Albuterol Sulfate Reasonable?" | Medicare pays more for albuterol than other agencies, including Medicaid, and mail order and retail pharmacy customers: Pharmacy acquisition costs substantially less than Medicare reimbursement. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, false prices, actual individual prices, or mega spreads or the scheme, except with respect to albuteral. Although albuteral is the subject of the report, there was no allegation of fraud or information from which fraud could be inferred. |
| 24 | Roxane | Tab 82 | 1989 10 03 | OIG Report | (A-06-89-00037) OIG report concerning Medicare and Medicaid Reimbursement for Drugs | OIG recommendation for HCFA to require Medicaid Agencies that base reimbursement on AWP to use discounted AWP and for HCFA to consider using a different reimbursement methodology: AWP is not a real price; HCFA report that AWP is 10-20% over prices actually paid; OIG finding AWP is 15.5% higher. Same as Dey Ex 11 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads, or the scheme. The report pre-dates the fraud scheme and merely shows the government was taking action to use formulas to estimate acquisition cost, which Ven-A-Care alleged certain manufacturers exploited by reporting falsely inflated prices to create financial inducements. |

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Roxane | Tab 127 | 1996 02 00 | OIG Study | Medicare Payments for Nebulizer Drugs | Examines differences in reimbursement methodologies used by Medicare and Medicaid programs, focusing on three nebulizer drugs: Medicare pays lower of EAC or AWP; Medicaid pays discounted AWP amount and has a rebate program; comparison of Medicare and Medicaid costs in 17 states for three drugs indicated Medicare paid more than Medicaid would have paid; recommendation for HCFA to reexamine Medicare reimbursement methodologies; study demonstrated Medicare could have saved $MM by discounting AWP and establishing rebate program; to implement recommendation HCFA would have to revise Medicare's claims coding system which does not identify the manufacturer or indicate if the drug is brand or generic, information needed to discount AWP and obtain a rebate.<br><br>Same as Dey SJ Ex 47 | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, the number of nebulizer drug manufacturers, or actual individual prices, or the scheme. |
| Roxane | Tab 89 | 1997 08 00 | OIG Report | Medicaid Pharmacy - Acquisition Cost of Generic Prescription Drug Products (A-06-97-00011) Eleven-State Report | Estimate pharmacies pay average of 42% off AWP for drugs sold to Medicaid beneficiaries; reference to 1984 OIG report stating on average pharmacies purchase brand and generic drugs 15.9% off AWP and 1989 report brand and generic drugs purchased 15.5% off AWP; reference to statement in 1989 HCFA State Medicaid Manual that AWP overstated prices to pharmacies by 10-20%; reference to Barron's 06/10/96 Hooked on Drugs article stating brand prices 10-20% and generic prices 60-85% below AWP; and statement reimbursement for generic drugs which do not have upper limits is greatly in excess of actual cost | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, or actual prices, or the scheme. |
| Roxane | Tab 97 | 1997 12 00 | OIG Report | (OEI-03-97-00290) Excessive Medicare Payments for Prescription Drugs | Same as Dey Ex 50<br><br>Compares AWP-based Medicare allowances for 22 drugs, including albuterol, with catalog prices obtained from some wholesalers and GPOs: chart with drugs listed by JCodes; .083% albuterol, J7620, average wholesale price of $.15 compared to average Medicare reimbursement of $.42; published AWPs used by Medicare bear little or no resemblance to actual average wholesale prices available to physicians and suppliers; recommends changing Medicare reimbursement to Medicaid methodology. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads, or the scheme, except for the information concerning albuterol outlined in the summary. |
| Roxane | Tab 98 | 1997 12 13 | News Media | Remarks by the President (Clinton) in Radio Address to the Nation | Progess report on fight against waste, fraud , and abuse in the Medicare system: sometimes waste and abuses are not even illegal, but embedded in the system; HHS confirmed MedCare has been overpaying doctors and clinics for drugs; MedCare reimburses doctors according to AWP, a sticker price few doctors pay; some doctors pay one tenth of published price; and proposed submission of legislation to Congress limiting reimbursement to the price doctors pay for drugs. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, false prices, actual individual prices, or mega spreads or the scheme. |

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| Roxane | Tab 104 | 1999 09 02 | Press Release | Stark Press Release: Stark Releases List of Drugs Where Medicare Beneficiaries' 20% Co-Pay Is Actually Higher Than The Cost Of The Drug To The Provider | Drugs where Medicare 20% co-pay is higher than cost of drug to provider; in some cases, profits over 1000%; MCare pays 95% AWP; AWP is a joke and stands for Ain't What's Paid; real prices to doctors and others are much lower; AWP system phony; list of drugs in press release provided by pharmacist concerned about financial abuse; 1998 proposal by President to reimburse on basis of actual acquisition cost defeated by lobbying; proposed legislation to provide for payment of actual acquisition cost plus handling fee. | N | N | Assuming a Congressman's press release, absent evidence of publication, is considered a statutory source, there is -- No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, false prices, actual individual prices, or mega spreads or the scheme.<br><br>Press release addresses physician administered drugs paid under J-Codes which do not identify drug manufacturer. |
| Roxane | Tab 129 | 1998 11 00 | OIG Report | November 1998 OIG Report, Comparing Drug Reimbursement: Medicare and Department of Veterans Affairs | Comparison of Medicare allowances for 34 drugs with prices available to VA: Medicare reimbursement 15% - 1600% more than VA acquisition cost; Albuterol (HCPS K0504 & K0505, ipratropium (HCPS K0518) included in review; OIG acknowledgement that Medicare and VA by statute have different payment methodologies; cite to previous IG reports finding Medicare payments for inhalation drugs to be excessive.<br><br>Same as Dey SJ Ex51 | Y | N | No allegation of fraud; and No readily identifiable information concerning any Defendant manufacturer, actual individual prices, or mega spreads or the scheme involved in this action.<br><br>Although albuteral and ipratroprium were among the 34 drugs prices reviewed, there was no specific information readily identifiable to these drugs from the generalized discussions.<br><br>Another reason the report does not constitute a public disclosure for purposes of this action is because VA acquisition costs are generally less than prices available in the retail pharmacy market and a comparison of Medicare reimbusement and below-market, VA negotiated acquisition costs are not anologous and can't fairly be extended to a comparison of Medicare reimbursement to the retail pharmacy market prices involved in this action. |

| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
|---|---|---|---|---|---|---|---|---|
| Roxane | Tab 130 | 1999 09 01 | Press Release | Stark Press Release "Drug Utilization Soars as Profits Soar" | Cost of Ipratropium Bromide to druggists dropped 50%, but the amount Medicare paid remained the same; utilization increased as profit margin soared; and proposal to adopt actual acquisition cost reimbursement methodology. | N | N | Assuming a Congressman's press release, absent evidence of publication, is considered a statutory source, there is -- No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, false prices, actual prices, or mega spreads or the scheme, except for statement noted in summary that Medicare reimbursement for ipratroprium remained the same while the price decreased 50%. |
| Roxane | Tab 131 | 2001 09 00 | GAO Report | September 2001 GAO Report, "Payments for Covered Outpatient Drugs Exceed Providers' Cost" | Recent HHS OIG, DOJ and House reports found that in some cases Medicare's payment for Part B drugs were significantly higher than providers' actual costs and that AWPs used by Medicare to calculate payment rates were not representative of actual costs; pharmacy suppliers provide DME administered drugs and oral drugs like immunosuppressives; average discounts 78% off AWP for ipratropium bromide and 85% off AWP for albuterol; prices for two oral drugs 14%-77% off AWP; AWP described as list/sticker price which is not necessarily the price paid; physicians obtain drugs at prices generally 13-34% below Medicare reimbursements; pharmacy suppliers can obtain drugs at prices lower than Medicare payment levels and at an average discount of 69 - 85% below AWP for inhalation drugs and of 14-77% below AWP for immunosuppressive drugs; WAC is list price that does not include discounts; by tying reimbursement to AWP, a price that may be neither an average nor what wholesalers charge, Medicare pays much more than provider's likely acquisition costs; Medicare's AWP-based methodology does not incorporate actual transaction prices. | Y | N | No allegation of fraud; and No readily identifiable information relevant to this action concerning any Defendant manufacturer, drug product, actual individual prices, or mega spreads or the scheme involved in this action, except for statement concerning average discounts of 78% off AWP for ipratripium and 85% off AWP for albuterol. Ven-A-Care had already filed its FCA actions relating to these drugs and provided information to the GAO and to the House Commerce Committee that is used in the report. |

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| Roxane | Ex A - K | * | Hearing | Texas and other state complaints | Roxane's referenced state complaints/ petitions and asserted dates:<br>A - Tx 2004 11 17<br>B - Conn 2004 03 05,<br>C - FL 2003 07 09,<br>D - Mass 2003 09 25<br>E - PA 2004 03 10<br>F - NYC 2004 08 04<br>G - WI 2004 11 01<br>H - KY 2004 11 04<br>I - OH 2004 11 17<br>J - AL 2005 01 26<br>K - ILL 2005 02 07 | Y as to unsealed complaints | N | This action was filed, under seal, April 10 2000 and pre-dates each of the referenced state pleadings. Public disclosures which occur after the filing of a cause of action do not trigger the public disclosure bar. In this regard, drug products added by amendment which concern the same scheme, manufactufurer, marketing division, marketing personnel, price reporting personnel, etc. as the original/prior action are part of the original/prior action and do not consitute a new action for purposes of public disclosure bar.<br><br>With regard to the Texas and Florida state pleadings, even if those pleadings are considered as public disclosures, to the extent this action would be considered to be based upon such complaints, VAC was source and publisher of the allegations in those pleadings. VAC has direct and independent knowledge of the information alleged in its complaint, as amended. |
| Roxane | Tab 95 | 1996 06 10 | News Media | Barron's Article: Hooked on Drugs Why do insurers pay such outrageous prices for pharmaceuticals | Same as Abbott Ex J and Dey Exh 25 | Y | N | With respect to Roxane, there is -<br>No allegation of fraud; and<br>No readily identifiable information concerning Roxane, its drug products, NDCs, false prices, actual individual prices, or mega spreads, or the scheme involved in this action.<br><br>The Roxane ipratropium bromide fraud scheme and actions occurred after the article. |

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Def | Ex No | Date | Source | Description | Summary | Statutory Source | Public Disclosure | Analysis |
| 35 | Roxane | Tab73 | 1987 07 05 | News Media | Lexington Herald-Leader<br><br>Drug Industry Overcharging Medicaid Prescriptions Cost Taxpayers Millions of Extra Dollars | Generalized discussion of average differences between reported AWP and actual costs<br><br>Same as Abbott Ex K and Dey Ex 24 | Y | N | No allegation of fraud; and No readily identifiable information concerning any Defendant manufacturer, drug product, NDC, actual individual prices, or mega spreads involved in this action.<br><br>The Roxane ipratropium bromide fraud scheme and actions occurred after the article. |
| 36 | Abbott Ery | Ex 11 - MTD; Ex 16 - SOF MPSJ | 1992 07 31 | Congressional Hearing | Hearing before the Subcommittee on Health and the Environment of the Committee on Energy and Commerce House of Rep. re Prescription Drug Rebate Program | Abbott falsely cites its misleadingly incomplete SOF Exh. 16 (aka MTD Exh. 11) for the proposition that the National Association of Retail Druggists ("NARD") "submitted a comparison of the contract prices (available to members of its organization) and published AWPs." (See Abbott SOF ¶ 29.) NARD's members were retail pharmacies. NARD represented "40,000 independent pharmacies" responsible for "nearly 85% of the Medicaid pharmaceutical services". (See Anderson Dec. Exh. ___ - July 1992 Congressional record p. 280.) NARD did not provide the Prucare prices to Congress to show retail pharmacies were receiving low prices. These Prucare prices were represented to be "hospital prices." Id. at p. 295 and 298. NARD's point was that only non-retail pharmacies such as hospitals, HMOs, and mail order, for instance, were getting discounts beyond 15% off of AWP. (See Anderson Dec. Exh. ___ - p. 286, 295 and 301.) The full version of the July 1992 Congressional record shows NARD was presenting the low prices as "hospital" prices which "were discounted beyond the amount (AWP-15%) that might be available to retail pharmacists." (See Anderson Dec. Exh. ___ p. 295 and 301.) NARD continued in stating "An way you slice it our | Y | N | No allegation of fraud; and no identification of any discounts available to retail pharmacies which exceeded 15% off of AWP. To the contrary, retail pharmacy was affirmatively informing Congress they could not receive any such discounts. |
| 37 | | | | | | | | | |
| 38 | | | | | | | | | |