# EXHIBIT 24

## RULES AND REGULATIONS

**(5)** Any other costs not approved in the plan and budget.

**§ 200.12   Interest and other income.**

(a) Pursuant to section 203 of the Intergovernmental Cooperation Act of 1968 (Public Law 90-577), a State, as defined in section 102 of that Act, will not be held accountable for interest earned on grant funds, pending their disbursement for program purposes. A State, as defined in the Intergovernmental Cooperation Act, section 102, means any one of the several States, the District of Columbia, Puerto Rico, any territory or possession of the United States, or any agency or instrumentality of a State, but does not include the governments of the political subdivisions of the State. All other grantees must return to the Social and Rehabilitation Service all interest earned on grant funds.

(b) All grantees must return to the Social and Rehabilitation Service a part of any other project income proportionate to the grant contribution to the support of the project.

**§ 200.13   Equipment.**

Items of equipment purchased with project funds are to be used for the purposes of the project, and the grantee shall maintain complete equipment inventory and adequate property controls.

**§ 200.14   Control of project funds or services.**

Funds or services made available to the project for project purposes, whether or not utilized to meet the grantee's share of the cost, shall be under the control of the grantee and expended and utilized in accordance with this part, policies and procedures governing the project, and the project plan and budget as approved.

**§ 200.15   Effect of State or local law.**

Except as otherwise authorized, where the grantee is a public agency, administrative provisions of State or local law applicable to the moneys appropriated to the public agency shall apply to the project funds.

**§ 200.16   Termination.**

A grant may be terminated in whole or in part at any time at the discretion of the Administrator of Social and Rehabilitation Service. Noncancellable obligations of the grantee properly incurred prior to the receipt of the notice of termination will be honored. The grantee shall be promptly notified of such termination in writing and given the reasons therefor.

**§ 200.17   Records and reports.**

(a) The grantee shall maintain such records, including medical, fiscal, and other health records, and make such reports, as the Bureau may prescribe.

(b) All fiscal transactions by a grantee relating to grants under this part are subject to audit by the Department to determine whether expenditures have been made in accordance with this part, policies and procedures governing the project, and the project plan and budget approved.

**§ 200.18   Copyright.**

The Government of the United States reserves a royalty free, nonexclusive license to use and authorize others to use all copyrightable or copyrighted material resulting from a project.

**§ 200.19   Effect of payment.**

Neither the approval of a project plan nor any certification of funds or payment to a grantee pursuant thereto shall be deemed to waive the obligation of the grantee to observe before or after such action any Federal requirements, or to waive the right or duty of the Administrator of Social and Rehabilitation Service to withhold funds for noncompliance with Federal requirements.

*Effective date.* The regulations in this part shall be effective on the date of their publication in the FEDERAL REGISTER.

Dated: January 15, 1969.

JOSEPH H. MEYERS,
*Acting Administrator, Social and Rehabilitation Service.*

Approved: January 18, 1969.

WILBUR J. COHEN,
*Secretary.*

[F.R. Doc. 69-1002; Filed, Jan. 24, 1969; 8:50 a.m.]

# Title 45—PUBLIC WELFARE

## Chapter II—Social and Rehabilitation Service (Assistance Programs), Department of Health, Education, and Welfare

### PART 226—PURCHASE OF SERVICES UNDER PUBLIC ASSISTANCE PROGRAMS

Chapter II of Title 45 of the Code of Federal Regulations is amended by adding a new Part 226 as set forth below. This part is added to provide regulations for the provision of services by purchase from public, nonprofit or proprietary private agencies, or individuals, in the programs administered under Title I, IV—Part A, X, XIV, or XVI of the Social Security Act, pursuant to the 1967 amendments to the Act.

Sec.
226.1  State plan requirements.
226.2  Federal financial participation.

AUTHORITY: The provisions of this Part 226 issued under sec. 1102, 49 Stat. 647, 42 U.S.C 1302.

**§ 226.1   State plan requirements.**

(a) A State plan under Title I, IV—Part A, X, XIV, or XVI of the Social Security Act which authorizes the provision of services by purchase from other State or local public agencies, from nonprofit or proprietary private agencies or organizations, or from individuals, must, with respect to services which are purchased:

(1) Include a description of the scope and types of services which may be purchased under the State plan;

(2) Provide that the State or local agency will retain continuing, basic responsibility for determination as to

(i) The eligibility of individuals for services, and

(ii) The authorization, selection, quality, effectiveness, and execution of a plan or program of services suited to the needs of an individual or of a group of individuals;

(3) Provide that the State agency will work with established and newly organized suppliers of purchased services to provide consultation and technical assistance, to assure satisfactory performance in providing such services, including periodic review, and to develop new and more effective approaches and methods of delivering purchased services.

(4) In the case of services authorized under the Vocational Rehabilitation program, that such services will be obtained from the State vocational rehabilitation agency when that agency is willing and able to provide them, and that such services will be purchased from another source only when they are not obtainable from the State vocational rehabilitation agency;

(5) Assure progressive development of arrangements with a number and variety of agencies and other sources which meet applicable standards as to quality of services and rates of payment with the aim of providing opportunities for individuals to exercise choice with regard to the source of purchased service;

(6) Assure that the sources from which services are purchased are licensed, approved as meeting State licensing standards, meet applicable accrediting standards, or in the absence of licensing or accrediting standards, meet standards or criteria established by the State agency to assure quality of service, including standards appropriate for services provided by new self-help groups and other organizations for which licensing or accrediting do not exist; and

(7) (i) Provide for the establishment of rates of payment for such services which:

(a) Do not exceed the amounts reasonable and necessary to assure quality of services, and in the case of services purchased from other public agencies, are in accordance with the cost reasonably assignable to such services; and

(b) Whenever possible are based on consideration of full cost of the services;

(ii) Describe the methods used in establishing and maintaining such rates; and

(b) Indicate that information to support such rates of payment will be maintained in accessible form.

(b) In the case of services provided, by purchase, as emergency assistance to needy families with children under Title IV—Part A, the State plan may provide for an exception from the requirements in subparagraphs (5), (6), and (7) of paragraph (a) of this section, but only to the extent and for the period necessary to deal with the emergency situation.

(c) All other requirements governing the State plan shall apply to this part.

PRD0008.0001

1211                                     RULES AND REGULATIONS

of this section are applicable to the pur- | PART 250—ADMINISTRATION OF | of customary charges ...
chase of services ... that ...                MEDICAL ASSISTANCE PROGRAMS      sonable.
  (1) General provisions such as those     Subpart C—General Administration    Accordingly such re...
relating to single State agency, ...                                           ...
hearings and grievances, safeguarding      Interim Policy Statement No. 6 set-  ...
information, civil rights, and financial  ting forth regulations to implement section | § 250.30  Reasonable charges.
control and reporting requirements; and   1902(a)(30) of title XIX of the Social
  (2) Specific provisions as to the pro-  Security Act, with respect to reasonable | (a) State plan requirements. A State
grams of services such as those on re-    charges for medical services in the medi- | plan for medical assistance under title
quired services, State-wideness and max-  cal assistance program, was published in | XIX of the Social Security Act must
imum utilization of other agencies pro-   the FEDERAL REGISTER of July 17, 1968 (33  (1) Include a description of the policy
viding services, to the extent feasible.  F.R. 10233) The views of interested per-  and the methods to be used in establish-
                                          sons were requested, received, and con-   ing payment rates for each type of care
§ 2262  Federal financial participation.   sidered, and, in the light thereof, certain | or service listed in section 1905(a) of the
                                          changes in the regulation were made.     Act that is included in the State's med-
  (a) Federal financial participation is                                           ical assistance program.
available in expenditures for purchase of   (a) Drugs. Comments were received       (2) Provide that payments for care or
services under the State plans listed in  concerning the use of the term "actual   service are not in excess of the upper
§ 226.1 to the extent that payment for    acquisition cost" in the Interim Policy  limits described in paragraph (b) of this
purchased services is in accordance with  Statement. In its place, other definitions | section
rates of payment established by the       were suggested such as invoice price,    (3) Provide that the single State
State which do not exceed the amounts     Red Book/Blue Book price, etc. The policy | agency will take whatever measures are
reasonable and necessary to assure qual-  has been changed to permit flexibility   necessary to assure appropriate audit
ity of service and, in the case of services | in a State's operational definition of | of records wherever reimbursement is
purchased from other public agencies,     drug cost.                               based on costs of providing care or serv-
the cost reasonably assignable to such      Comments were received concerning     ice or fee plus costs of materials.
services ---                              the policy statement which based the
  (b) Services which may be purchased     upper limit for payment on a "fixed     (b) Upper limits. The upper limits for
with Federal financial participation are  fee." In its place, there was suggested a | payments for care and services under a
those for which Federal financial partic- | policy based on usual and customary     medical assistance plan are as follows:
ipation is otherwise available under      charges or on a percentage markup. The   The State agency may pay less than the
Title I, IV—Part A, X, XIV, or XVI of the | policy has been changed to permit a    upper limit except for services described
Social Security Act and which are in-     State to set the upper limit for payment | in subparagraph (1) of this paragraph.
cluded under the approved State plan     based on a dispensing fee for individual
  (c) Payments for subsistence (includ-   pharmacies, by categories based on size,  (1) Inpatient hospital services. (i)
ing payments for foster care), other      geographic or economic area and factors | For each hospital also participating in
items of individual or family need        such as physician, ... A State          the Health Insurance for the Aged pro-
normally included in assistance pay-      may also use a second ... not based on   gram under title XVIII of the Social Se-
ments, and medical or remedial care or    customary charges which are reasonable.  curity Act, apply the same standards, cost
services are not considered to be serv-                                            reporting period, cost reimbursement
ice costs. However, Federal financial par- | Comments were received concerning   principles, and method of cost appor-
ticipation is available in expenditures for | the policy statement requiring the upper | tionment currently used in computing
the purchase of services which include    limit of payment to be based on the     reimbursement to such hospital under
the price or medical care items (as      lower of cost plus a fee or the charge   title XVIII of the Act.
contrasted with payments made to pro-     to the public. The usual comment was
vide financial or medical assistance),    that such a policy would have an infla-  (ii) For each hospital not participat-
such as:                                  tionary effect on all drug charges. The  ing in the program under title XVIII of
  (1) Subsistence and medical care        policy has been changed by deleting the  the Social Security Act, apply the stand-
when they are included as an essential    requirement and inserting language that  ards and principles described in sections
component of the furnishing of services   will promote the same end of economy.   1-1 through 1-12 of "Principles of Re-
in an institutional setting and cannot be                                          imbursement for Provider Costs"
separately identified, such as in a com-    Comments were received concerning    (Health Insurance Manual-5 Revised)
prehensive rehabilitation center; and     the policy statement requiring the upper (Code of Federal Regulations, Title 20,
  (2) Under Title IV—Part A of the Act,   limit of payment for over-the-counter   Chapter III, Part 405) and the related
medical care for such items as           drugs (nonlegend items) to be based on  ¶¶ 405.415–405.429 in Health Insurance
  (i) Family planning services; and       the pharmacist's price to the public. It Regulations-4 (8/67) (Code of Federal
  (ii) Medical examinations required for  was stated that a billing allowance     Regulations, Title 20, Chapter III, Part
child care staff, when not otherwise      should be permitted for handling and    405) issued by the Social Security Ad-
available.                                administrative costs. The policy has been | ministration and either (a) one of the
                                          changed to permit a State some leeway    acceptable cost apportionment methods
(For details as to these and other special | in the matter.                         in section 2-2 of HIM-5 (Revised) or (b)
conditions, see the pertinent regulations,                                         the "Gross RCC Method" of cost appor-
such as those for emergency assistance to   (b) Other services. Comments were    tionment applied as follows: The total
needy families with children, § 233.120   received concerning the policy statement | allowable annual inpatient cost of
of this chapter, and services to children | requiring States to determine the upper operating a hospital is divided by the
and families under Title IV—Part A of     limit of reasonable charges by determin- | total annual charges for inpatients; the
the Act, to be published at a later date.) | ing the usual payments received by pro- | resulting percentage is applied to the
                                          viders from private patients, from inter- | bill of each inpatient under the medi-
Effective date. The regulations in this   mediaries and carriers for the Social    cal assistance program.
part shall be effective on the date of    Security Administration, and from other
their publication in the FEDERAL REGISTER. | third-party insuring organizations. It  (2) Drugs. (i) The upper limit for
                                          was stated that payment should be on    payment for prescribed drugs—whether
Dated: January 15, 1969.                  the basis of usual and customary charges. | legend items (for which a prescription is
                  JOSEPH H. MEYERS,        The policy in effect recognizes such a   required under Federal law) or non-
          Acting Administrator, Social    method to the extent that it is the basis | legend items—shall be based on the fol-
            and Rehabilitation Service    for settlement recognized by other third- | lowing methods:
                                          party payers. However, in the interest of
Approved: January 18, 1969                enlisting the widest acceptance by medi-  (a) Cost as defined by the State
                                          cal providers of the title XIX program,  agency plus a dispensing fee. The dis-
  WILBUR J. COHEN,                        policy has been changed to provide for   pensing fee should be ascertained by
  Secretary.                              ... the basis        analysis of pharmacy operational data
                                                                                   which includes such components as over-
                                                                                   head, professional services, and profit

RULES AND REGULATIONS

Indices to be considered should include payment practices of other third-party organizations, including other Federal programs. Both the cost and the dispensing fee may vary according to the type and location of the pharmacy and according to whether the dispensing is done by a pharmacist or by an outlet in a drug department of an institution, and according to whether the drug is a legend or a nonlegend item. In evaluating a dispensing fee by analysis of operational data, the objective of the State agency should be to insure that the average prescription price paid by the State agency does not exceed the average prescription price paid by the general public.

(b) The method described for Other Services in subparagraph (3)(i) of this paragraph.

(i) The provisions of subdivision (i) of this subparagraph do not apply to payment for drugs in institutions where drugs are included in a reimbursement formula.

(ii) The provisions of subdivision (i) of this subparagraph do not apply where a public agency makes bulk purchase of drugs. In such cases payment will be made in accordance with the governmental statutes and regulations governing such purchases.

(iii) The use of a formulary is optional, as are provisions for use of generic drugs. Where either is employed, there must be standards for quality, safety, and effectiveness under the supervision of professional personnel.

(3) *Other services*. The upper limit for payment for other services shall be the following:

(i) [illegible]

The prevailing charges in the locality for comparable services under comparable circumstances shall set the upper limit of payments. In reviewing prevailing charges for reasonableness, the State agency should consider the combined payments received by providers (for furnishing comparable services under comparable circumstances) from the carriers under title XVIII of the Social Security Act and the combined payments received from other third-party insuring organizations and their regular policy holders and subscribers where whichever of these criteria or other criteria are appropriate to the particular provider service.

(ii) [illegible]. Reasonable [illegible] standards and [illegible] for computing reimbursement [illegible] in such institutions [illegible] the Social Security [illegible]

[illegible] capitation arrangements. The upper limit for payment for services [illegible] on a prepaid capitation basis is [illegible] by ascertaining what other third parties are paying for comparable services under comparable circumstances. The cost for providing a given scope of services to a given number of individuals under a capitation arrangement should be used in the cost of [illegible] under the [illegible] agreements, unless [illegible]

(c) [illegible] limitations on reimbursement imposed by the provisions of this section may be waived by the Secretary with respect to experiments conducted under the provisions of section 402, Public Law 90-248, Incentives for Economy Experimentation.

(e) Federal financial participation. Federal financial participation is available for payments, within the upper limits described in paragraph (b) of this section, in accordance with the provisions of the State plan.

(Sec. 1102, 49 Stat. 647, 42 U.S.C. 1302)

*Effective date.* The regulations in this section are effective on the date of their publication in the FEDERAL REGISTER.

Dated, January 18, 1969.

JOSEPH H. MEYERS,
*Acting Administrator, Social and Rehabilitation Service.*

Approved: January 19, 1969

WILBUR J. COHEN,
*Secretary.*

[F.R. Doc. 69-1003, Filed, Jan 21, 1969, 8:49 a.m.]

---

Chapter IV—Social and Rehabilitation Service (Rehabilitation Programs), Department of Health, Education, and Welfare

PART 407—NATIONAL CENTER FOR DEAF-BLIND YOUTHS AND ADULTS

Notice of proposed regulations was published in the FEDERAL REGISTER of December 4, 1968 (33 F.R. 18048) pertaining to the entry into an agreement and payment of the costs of establishment of a center for vocational rehabilitation of handicapped individuals who are both deaf and blind, to be known as the National Center for Deaf-Blind Youths and Adults, authorized by section 16 of the Vocational Rehabilitation Act.

No objections have been received and the proposed regulations are hereby adopted without change. Accordingly, Chapter IV of Title 45 of the Code of Federal Regulations is amended by adding a new Part 407 as set forth below.

Federal financial assistance extended under this part is subject to the regulations in 45 CFR Part 80, issued by the Secretary of Health, Education and Welfare and approved by the President, to effectuate the provisions of section 601 of the Civil Rights Act of 1964 (42 U.S.C. 2000d).

Sec.
407.1 Terms.
407.2 Purpose.
407.3 Proposals.
407.4 Agreement.
407.5 [illegible]
407.6 Selection of grantee.

AUTHORITY: The provisions of this Part 407 issued under sec. 7(b), 68 Stat. 653, 29 U.S.C. [illegible]; sec. 16, 81 Stat. 251, 29 U.S.C. 385, as [illegible].

§ 407.1 Terms.

For the purposes of this part—

(a) "Act" means the Vocational Rehabilitation Act.

(b) "Administrator" means the Administrator, Social and Rehabilitation Service.

(c) [illegible] have the same meaning [illegible] § 401.1 of this chapter.

(c) "Center" means the National Center for Deaf-Blind Youths and Adults.

(d) "Construction" means construction of new buildings, acquisition of existing buildings, and expansion, remodeling, alteration, and renovation of existing buildings, and initial equipment of such new, newly acquired, expanded, remodeled, altered, or renovated buildings; and includes the cost of architects' fees and acquisition of land in connection with any of the foregoing, but does not include the cost of off-site improvements;

(e) "Deaf-blind" and "deaf and blind" refer to persons who have substantial visual and hearing losses, such that the combination of the two causes extreme difficulty in learning;

(f) "Grantee" means the public or nonprofit private agency or organization selected as the party to the agreement to receive funds for the construction and operation of the National Center for Deaf-Blind Youths and Adults

§ 407.2 Purpose.

An agreement is authorized for the purpose of paying all or part of the costs of the establishment and operation, including construction and equipment, of a center for the vocational rehabilitation of handicapped individuals who are both deaf and blind and to accomplish the purposes of section 16(a) of the Act, which shall be known as the National Center for Deaf-Blind Youths and Adults

§ 407.3 Proposals.

The scope of the commitment in the proposal for an agreement under section 16 of the Act shall extend at least to the following areas of activity:

(a) The construction of a facility for the vocational rehabilitation of handicapped individuals who are deaf and blind, which will be especially adapted to the needs of the deaf-blind and in compliance with appropriate safety standards, and which in its construction and operation will meet applicable labor standards and other pertinent Federal statutory and regulatory requirements;

(b) The provision of services, particularly specialized intensive services for vocational rehabilitation of the deaf-blind.

(c) The provision of training for professional personnel and allied personnel needed to staff facilities specially designed to provide such services;

(d) The conduct of research with respect to the problems of the deaf-blind and their rehabilitation

(e) Aid in activities for the expansion and improvement of services for the deaf-blind; and

(f) Aid in activities for improvement of public understanding about the problems of the deaf-blind.

§ 407.4 Agreement.

The agreement shall:

[illegible]

PRD0008.0003