# EXHIBIT 49

Page 1

```
         IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

                      STATE OF HAWAII

-------------------------------
STATE OF HAWAII,              )
                              )
         Plaintiff,           )
                              )
    v.                        ) CIVIL NO.
                              )
ABBOTT LABORATORIES INC.,     ) 06-1-0720-04 EEH
                              )
et al.,                       ) 07-1-1639-09 EEH
                              )
         Defendants.          )
-------------------------------
STATE OF HAWAII               )
                              )
         Plaintiff,           )
                              )
    v.                        )
                              )
SCHERING CORPORATION; DOE     )
                              )
CORPORATIONS 1-100; DOE       )
                              )
ENTITIES 1-100,               )
                              )
         Defendants.          )
-------------------------------


              DEPOSITION OF LYNN DONOVAN

                    APRIL 29, 2008

                   HONOLULU, HAWAII
```

Page 186

1    Q. (BY MR. MOORE) Ms. Donovan, staying
2  with Exhibit 10, I've got quite a few questions
3  just on this document. Were you recommending
4  that the State substitute the First Health MAC
5  prices for the Hawaii MAC prices to save money?
6    A. I wouldn't say I was recommending it,
7  but then I wasn't opposing it. I -- the
8  contractor was hired and they were making
9  recommendations.
10   Q. Okay. But you weren't -- were you just
11 neutral on the subject or did you have a view one
12 way or the other?
13   A. Did I have a view? It seemed like it
14 would save the program money based on the
15 recommendation, and if that's what the program
16 wanted, fine.
17   Q. Okay. Let's go to the next one. The
18 second paragraph in Exhibit 10 it says, currently
19 the Hawaii algorithm requires the FUL to override
20 the Hawaii MAC. Do you see that?
21   A. Yes.
22   Q. And in your testimony when you started

Page 187

1  the deposition today, you mentioned briefly
2  something about this, that the -- under the
3  Hawaii reimbursement system that it was set up so
4  that the FUL price would override the Hawaii MAC
5  price; is that true?
6    A. That's correct.
7    Q. Okay. And that's even if the FUL price
8  is higher, right?
9    A. That's correct.
10   Q. So in other words, you could have even
11 -- and has this been the case since you
12 implemented the State MAC program in 2001?
13     Has it always been that way, to your
14 knowledge, that the FUL -- the higher FUL price
15 would override a lower Hawaii MAC price?
16   A. Well, the FUL overrides the SMAC
17 regardless --
18   Q. Okay.
19   A. -- of whether it's more or less.
20   Q. Okay. But I want to concentrate on the
21 situation where the FUL is higher than the SMAC,
22 okay?

Page 188

1    A. Uh-huh.
2    Q. Since you implemented the State MAC
3  program in 2001, if you had a FUL in the system
4  that was higher than the State MAC, it would
5  override on the reimbursement, correct?
6    A. It would pay at the FUL.
7    Q. It would pay at the higher price,
8  right?
9    A. Whatever the FUL is.
10   Q. Okay. And that's been the case all the
11 way up until today, correct?
12   A. That's correct.
13   Q. It's still being done that way?
14   A. Yes.
15   Q. Why would you have a system where you
16 have a lower MAC price and a higher federal FUL
17 price and use the highest of the two prices
18 rather than the lowest of the two prices? Why do
19 you do that?
20   A. That was the input from the Hawaii
21 Pharmacy Association and that was the agreement.
22   Q. Okay. So I think you said -- picking

Page 189

1  up again on your testimony earlier today -- that
2  in the '96, '97 time frame -- I'm looking at my
3  notes here, there was notice given to the
4  pharmacy association about implementing the State
5  MAC program and you said several considerations
6  were reached with the pharmacy association. That
7  was the term you used, correct?
8    A. Correct.
9    Q. Is that the same thing as a deal? In
10 other words, you reached a deal with the
11 pharmacists?
12   A. A deal?
13   Q. A deal.
14     Do you know what I mean by that?
15   A. No.
16   Q. I'll give you something, if you'll give
17 me something in return; a deal. That's a term
18 you understand?
19   A. I think -- I would call it input.
20   Q. Input, okay. Whatever we call it, and
21 I don't think it really matters, it was an
22 agreement -- an understanding was reached in --

48 (Pages 186 to 189)