# EXHIBIT 74



**Illinois Department of Public Aid**
Inter-Office Memorandum

TO: Robert W. Wright
Director

DATE: May 1, 1995

FROM: A. George Hovanec, Administrator
Division of Medical Programs

RE: Briefing on IRMA/IPhA Budget Proposal

---

This is to brief you regarding the written proposal submitted April 24, 1995 by IRMA and IPhA. Although some of their ideas have merit, they have avoided mentioning the hurdles which would have to be overcome before any attempt at implementation could occur. Some of their other ideas are impractical or boarder on being illegal under Federal law.

Their proposals all center on alternatives for saving pharmacy money in place of the Department's budget initiatives while we believe that any other acceptable ideas for savings should be in addition to those initiatives already decided upon. Primary among their ideas is the restriction of virtually all single source drugs to prior authorization regardless of the availability of generics for interchange. They shared their ideas with drug manufacturers on April 25th and this industry has alerted us they plan to aggressively oppose any decision to implement a generic formulary. The proposal has also been discussed with ISMS who is equally opposed to any change that restricts physician practice preferences regarding patient therapy so severely. ISMS continues to support the use of physicians to advise the Department regarding which drugs should require prior authorization. ISMS also believes some of their other proposals are problematic.

The proposal contains 10 initiatives which they propose have a potential for generating $82.7 Million in savings. Their savings are entirely unrealistic in that they overstate front-end savings, do not consider the loss of rebates and ignore the spending that would occur through prior authorization. Their proposal totally opposes our implementation of "most favored Nations billing requirements" even though their concerns with policy detail needed for implementation has plenty of room for discussion and clarification. They oppose our addition of the use of wholesale acquisition cost (WAC) data in the determination of our maximum reimbursement because this number does not include certain operating cost factors even though the Department's proposal includes a mark-up for this purpose. We suspect that their real problem with this initiative is that the current methodologies for maximum reimbursement create higher profits for generics than for brand name drugs. This is because average wholesale price has become most meaningless for generic drugs. A significant reason behind IRMA and IPhA arguments for a completely generic formulary is that, with the current reimbursement methodology, they make higher profits when dispensing generic drugs. It is also interesting to note that, while they opposed using WAC pricing, many of their savings estimates used WAC prices for comparision to current reimbursement.

Their specific proposals and our comments are as follows:

CONFIDENTIAL

AWP-IL-00016260

Briefing on IRMA/IPhA Budget Proposal (continued)
May 1, 1995
Page 2

### MANDATORY ON-LINE ADJUDICATION

**Proposed Action**: Require all pharmacies to transmit prescription claims via modem in real-time. They believe this method of transmission is necessary for the Department to do refill-too-soon editing.

**Savings Proposed**: $1,360,000

**IDPA Comments**: The Department supports mandating every participating in-state pharmacy and every out-of-state pharmacy doing any significant volume be enrolled in our electronic claims processing system. It has been the IPhA who has opposed this in the past because there is still a small area of the State without touch-tone phone capacity and because electronic claim submission is often not practical for home infusion pharmacies. However, they are wrong regarding their assumption about refill-too-soon editing as the Department began performing the same refill-too-soon and prospective DUR edits on paper claims over a year ago. Thus the savings from mandating electronic participation would be from the reduction in staffing needs to handle paper and would be minimal because the vast majority of claims are already electronic. It is important to remember that there will always be paper drug claims because of claims which require attachments such as spenddown cases, eligibility problems, claims from out-of-state providers, or for DCFS problem cases.

### PERMANENT RECIPIENT IDENTIFICATION CARDS

**Proposed Action**: Issue permanent identification cards to recipients and discontinue monthly printing and mailing of paper cards. They also assume that eligibility will be switched from monthly to instant eligibility with this change.

**Savings Proposed**: $2,120,000

**IDPA Comments**: The Department supports the conversion to permanent identification cards. The Inspector General and others are already working on enhancements which include this concept. Several types of providers oppose any conversion to instant electronic eligibility and thus there is significant work which must be done before this proposal can be implemented. Providers most concerned are those who do not necessarily have a direct encounter with our recipients in order to generate charges. Examples of services these providers believe to be problematic include lab or x-ray services where the reading physician does not see the patient or providers of rental equipment such as oxygen equipment or hospital beds. It is to early in the Department's process for converting to permanent cards to assess Illinois' savings.

CONFIDENTIAL

AWP-IL-00016261

Briefing on IRMA/IPhA Budget Proposal (continued)
May 1, 1995
Page 3

### SILENT WITNESS PROGRAM

Proposed Action:  Create a program to reward informants of provider or recipient abuse.

Saving Proposed:  Unknown

IDPA Comments:  The Medical Programs Division defers to the Inspector General for comments.

### CONTROLLED SUBSTANCES-STRICTER DISPENSING GUIDELINES

Proposed Action:  Create stricter dispensing guidelines for controlled substances.

Potential Savings:  $1,000,000

IDPA Comments:  The Department believes that provisions of Illinois' Pharmacy Practice Act already require pharmacists to address abuse as a component of their dispensing activity. Failure to do so already has the potential to affect both the license of the pharmacist and the pharmacy. The Department is willing work with the Department of Alcoholism and Substance Abuse (DASA), who by Illinois Law is responsible for dispensing policy and procedures for controlled substances. We are also willing to work with any of the interest groups regarding ideas for reform but we find it interesting that at the same time they are making this proposal to the Department one of these interest groups is seeking DASA changes to reduce requirements regarding controlled substances. We believe that the most savings impact would be received from enhanced investigation and prosecution of drugs diverted to street use. With sufficient investigator activity, their proposed saving would be achievable and we would defer to the Inspector General for information regarding the offsetting operational costs.

### IDPA FORMULARY REVISIONS

Proposed Action:  Revise the IDPA formulary based on competitive manufacturer bids by therapeutic category. This is a combination of their original "generic formulary" proposal and the California competitive biding approach. In a competitive bid approach, manufacturers of interchangeable drugs and potentially even similar but not interchangeable drugs are asked to submit bids regarding the amount of rebate to be paid to the State in order to have their drugs openly covered. Federal rules require that each contract negotiated be approved by HCFA before going into affect and restrictions apply regarding the potential exclusion of single source drugs.

Savings Proposed:  $27,240,000

CONFIDENTIAL

Briefing on IRMA/IPhA Budget Proposal (continued)
May 1, 1995
Page 4

> IDPA Comments: During the emergency budget crisis of the early 80's, the Department implemented what, for the time, was a fairly aggressive drug formulary using the ISMS and a committee of Department consulting pharmacists for advice. Drug manufacturers opposed the formulary thus developed and were able to pass legislation which severely limited the Department's ability to use prior authorization is several notable classes of drugs, an action which required almost 8 years to over turn. This previous experience in Illinois was also a factor motivating drug manufacturers to aggressively seek Federal restrictions on State's ability to have drug formularies or to use prior authorization programs. Many of the restrictions manufactures were able to get into OBRA'90 remain in effect today. Significant political hurdles will also have to be cleared before the Department can either restrict open coverage to generic drugs or implement a State run negotiation process for drug rebates. Test negotiations regarding Illinois specific rebate contracts undertaking in 1990 and early 1991 determined that significant human resources would be required to operate such a program. Further, the Department had already requested the D&T Committee of the ISMS to review some therapeutic classes to reassess which drugs should require prior authorization. The Committee has, on its own, completed review of another class and is working on others. The current plan to review which drugs require prior authorization does more to impact the future growth in program expenditures than to generate spending reductions. Reductions in the rate of program growth are usually handled through the budget process.

PRIOR APPROVALS

> Proposed Actions: Enforce stronger justification and closer scrutiny (slower processing) for issuing prior approvals. They propose that some States take up to 3 weeks to "scrutinize" requests for prior authorizations.
>
> Savings Proposed: $1,989,948
>
> IDPA Comments: To some extent, this proposal is based upon their knowledge of actions already being taken by the Department's medical consultants in reviewing prior authorization requests. To the extent permitted by system limitations and the availability of consulting physicians, prescribing physicians are being telephoned and questioned before certain requests are acted upon. Most requests for dispensing a brand name for which a Department of Public Health approved generic is available are followed up on as well as other prescriptions when appropriate. Enhancements to the current drug prior authorization system have been requested to permit more than one medical consultant to effectively work on-line in the prior authorization system at the same time and once implemented even further detailed follow-up procedures can be used. Experience has shown that contact with prescribing physicians is most affective when the support of a Department consulting physician is used to supplement our consulting pharmacists but it is not always possible to have sufficient physician support available.

CONFIDENTIAL

AWP-IL-00016263

Briefing on IRMA/IPhA Budget Proposal (continued)
May 1, 1995
Page 5

The Department believes that delays in the Federally mandated 24 hour turnaround of requests, except for the purpose of obtaining specific supporting medical information, would not be sustained in a court challenge. Further, we believe that their proposed savings based upon their analysis of payment data for antihistamines is flawed as it does not recognize the "gatekeeper" affect of the prior authorization review already done on these drugs. A significant volume of prior authorization requests for antihistamines are not even filed because of the long standing practice of reviewing all requests to eliminate inappropriate requests, such as requests for the treatment of coughs or colds. Conditions such as asthma, allergies or sinus conditions are examples of allowed therapies and diphenhydramine is often not affective in these cases. Their proposal also ignores the requirement in Federal law which restricts approval decisions to medical issues based upon whether the drug is medically appropriate to treat the condition. Decisions may not be based upon the cost of a drug. We believe the savings from the requested system enhancement are more likely to be half of their proposed savings and will be offset by minor increases in reimbursement for medical consultants.

COLLECT MANUFACTURER REBATES

Proposed Action: The State must collect all the monies due from manufacturer rebates. The Department had proposed staffing a Drug Rebate Unit to bring the State into compliance with Federal time frames for addressing manufacturer disputes and proposed that with this staffing $4.5 Million in disputes could be resolved in the Departments favor.

Savings Proposed: $18,000,000

IDPA Comments: We find their comment that 100% of manufacturer disputes should be obtained "most interesting" because the majority of disputes are because manufacturers question the claim data submitted by pharmacies. Situations such as pharmacies billing for the brand name NDC even though a generic was dispensed or billing for one generic product while dispensing another are examples identified by BMQA's investigation of current disputes. Our savings estimate was based upon the BMQA investigation and upon data supplied by drug manufacturers who had done their own investigation of the validity of pharmacy claim data.

EXPAND ILLINOIS PUBLIC HEALTH FORMULARY

Proposed Action: Speed the process and increase the number of substitutable drugs and manufacturers approved for substitution in the Illinois formulary.

Savings Proposed: $2,000,000

CONFIDENTIAL

AWP-IL-00016264

Briefing on IRMA/IPhA Budget Proposal (continued)
May 1, 1995
Page 6

> IDPA Comments: The Department supports the Department of Public Health's Illinois Formulary process and uses it for setting State generated upper limits for drugs determined interchangeable in this State but not yet on the Federal Upper Limit listing (Orange Book interchangeable listing). Thus we support any speeding up or otherwise making improvements in that process. However, we need to point out that such changes would likely increase costs for the Department of Public Health.
>
> Most importantly, this proposal is an attempt to seek continued State support of their opposition to drug manufacturer's attempts to change the Illinois Formulary process. Pharmacists oppose drug manufacturer attempts to prohibit Public Health from reviewing, for interchange, drugs having the same chemicals but differing mechanisms for releasing those chemicals into the body in a sustained release fashion. Pharmacists want Public Health's committee of physicians and pharmacists to continue reviewing such drugs while manufacturers are aggressively pushing legislation to stop this review. The manufacturer's proposal (HB 1888) is currently being held in the House and their plans are to make sure it is reconsidered during the fall legislative session. The other component of the pharmacist's proposal is to allow the interchange of generic Levothyroxine for the brand name manufactured by Boots and called Synthroid. Public Health's Illinois Formulary process determined that the generic should be interchangeable with the brand name but their Administrative Rules filed to permit the interchange were heavily lobbied against by the brand name manufacturer and were not approved. HB 1888 also contains language to avoid Public Health's being able to again raise this issue. Generic Levothyroxine is substantially cheaper than the brand name based upon a comparison of WAC pricing (also interesting since they separately opposed WAC as a component of our maximum pricing determination).

CASE MANAGEMENT INTERVENTIONS

> Proposed Action: Investigate alternative pay methods and payment for services that offer savings to the State.
>
> Saving Proposed: $25,000,000
>
> IDPA Comments: Just as overturning "any willing Nation requirements" is important to chain stores, getting alternative reimbursement is important to independent pharmacies who, in the future, will have to turn to alternative sources of revenue because they can not compete with the purchasing and contracting power of chain stores. Although lots of fancy words can be used, this is basically a proposal to pay for cognitive services. The concept is that by paying specifically for pharmacists to counsel patients and otherwise participate in the monitoring of patient care, certain prescriptions will not need to be filled, i.e. paying pharmacists for not dispensing. OBRA'90 provided for a study of this kind of concept and 3 State pilots have or are being conducted.

CONFIDENTIAL

No results are ready for publishing from these Medicaid studies and there are no significant examples of where this kind of program is being reimbursed by private payers. Thus, the savings estimated are very difficult for pharmacists to defend. Nationally, physicians have been unsupportive of proposals that pharmacists change prescriptions or alter plans of treatment. Illinois' physicians have been very unsupportive of these concepts as well. Current systems require that pharmacists work with the prescribing physician and provide that only physician authorized changes be permitted. Illinois' physicians continue to express reservations regarding this proposal.

I am available if you have any questions.

Enclosure

cc: James Berger
    Norman Ryan
    Rob Miller
    Mary Ann Langston
    Jacquetta Ellinger
    Fred Sapetti
    Fred Backfield
    Roberta Hardy
    Jim Donkin
    Marvin Hazelwood
    file
    7/7847

CONFIDENTIAL

AWP-IL-00016266