# EXHIBIT 91



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                     Office of Inspector General

NOV 29 2001

**Memorandum**

Date

From     Thomas D. Roslewicz
         Deputy Inspector General
            for Audit Services

Subject

To       Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the
         Medicaid Prescription Drug Program of the Texas Health and Human Services
         Commission (A-06-01-00001)

         Neil Donovan
         Director, Audit Liaison Staff
         Centers for Medicare & Medicaid Services


This memorandum is to alert you to the issuance on **November 30, 2001,**
of our final report entitled, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed
Under the Medicaid Prescription Drug Program of the Texas Health and Human Services
Commission." A copy of the report is attached. We suggest you share this report with
components of the Centers for Medicare and Medicaid Services involved with program
integrity, provider issues, and State Medicaid agency oversight, particularly the Center for
Medicaid and State Operations.

Most States use average wholesale price (AWP) minus a percentage discount, which varies
by State, as a basis for reimbursing pharmacies for drug prescriptions. Therefore, the
objective of this review was to develop for the Texas Medicaid program an estimate of the
discount below AWP at which pharmacies purchase brand name and generic drugs.

Through use of statistical sampling, we obtained from Texas retail pharmacies 1,635 invoice
prices for brand name drugs, and 909 invoice prices for generic drugs. Our estimate of the
overall discount below AWP for the invoice prices we reviewed was 22.17 percent for brand
name drugs and 62.84 percent for generic drugs. Our national estimates, included in reports
we previously issued to you,[1] were 21.84 percent and 65.93 percent, respectively. The
estimates combined the results for four categories of pharmacies including rural-chain, rural-
independent, urban-chain, and urban-independent. The estimates excluded the results
obtained from non-traditional pharmacies (nursing home pharmacies, hospital pharmacies,
home IV, etc.) because we believe such pharmacies are able to purchase drugs at
substantially greater discounts than retail pharmacies and those discounts would inflate our
estimates.

We recommended that the Texas Health and Human Services Commission (State Agency)
consider the results of our review in any future changes to pharmacy reimbursement for

---

[1] Final report dated August 10, 2001 entitled, "Medicaid Pharmacy-Actual Acquisition Cost of Brand Name
Prescription Drug Products (A-06-00-00023)." Draft report dated August 20, 2001 entitled, "Medicaid
Pharmacy-Actual Acquisition Cost of Generic Prescription Drug Products (A-06-01-00053)."

Page 2 – Neil Donovan

Medicaid drugs.  The State Agency was appreciative of our report and stated that they planned to use the data along with their own invoice survey in determining changes to pharmacy reimbursement.

Any questions or comments on any aspect of this memorandum are welcome.  Please address them to George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410) 786-7104 or Gordon L. Sato, Regional Inspector General for Audit Services, Region VI, at (214) 767-8414.

Attachment

# Department of Health and Human Services

# OFFICE OF
# INSPECTOR GENERAL

# REVIEW OF PHARMACY ACQUISITION COSTS FOR DRUGS REIMBURSED UNDER THE MEDICAID PRESCRIPTION DRUG PROGRAM OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION



**JANET REHNQUIST**
**INSPECTOR GENERAL**

**NOVEMBER 2001**
A-06-01-00001

 **DEPARTMENT OF HEALTH AND HUMAN SERVICES**                    Office of Inspector General

Office of Audit Services
1100 Commerce, Room 6B6
Dallas, TX  75242

NOV  3 0

Common Identification Number:  A-06-01-00001

Patsy Napier, R.Ph.
Chief, Bureau of Vendor Drugs
Texas Health and Human Services Commission
4900 North Lamar, Fourth Floor
Austin, Texas  78751

Dear Ms. Napier:

Enclosed are two copies of the Department of Health and Human Services (HHS), Office of
Inspector General (OIG), Office of Audit Services' (OAS) final report entitled, "Review of
Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug
Program of the Texas Health and Human Services Commission."  A copy of this report will be
forwarded to the action official noted below for review and any action deemed necessary.

Final determination as to actions taken on all matters reported will be made by the HHS action
official.  We request that you respond to the HHS action official within 30 days from the date of
this letter.  Your response should present any comments or additional information that you
believe may have a bearing on the final determination.

In accordance with the principles of the Freedom of Information Act, 5 U.S.C. 552, as amended
by (Public Law 104-231, OIG, OAS reports issued to the Department's grantees and contractors
are made available to members of the press and general public to the extent information
contained therein is not subject to exemptions in the Act which the Department chooses to
exercise.  (See 45 CFR part 5.)

To facilitate identification, please refer to Common Identification Number A-06-01-00001 in all
correspondence relating to this report.

Sincerely yours,

Gordon L. Sato
Regional Inspector General
  for Audit Services

Enclosures

Page 2 – Patsy Napier, R.Ph.

**Direct Reply to HHS Action Official**:

Dr. James R. Farris, MD
Regional Administrator
Centers for Medicare & Medicaid Services
1301 Young Street, Room 714
Dallas, Texas  75202

## SUMMARY

As a follow-up to our previous work, the Office of Inspector General conducted a nationwide review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program.  Most States use average wholesale price (AWP) minus a percentage discount, which varies by State, as a basis for reimbursing pharmacies for drug prescriptions.  Therefore, the objective of this review was to develop an estimate of the discount below AWP at which pharmacies purchase brand name and generic drugs.

To accomplish our objective, we selected a stratified random sample of 8 States from a universe of 48 States and the District of Columbia.  Arizona was excluded from the universe of States because the Medicaid drug program is a demonstration project using prepaid capitation financing.  Tennessee was also excluded because of a waiver received to implement a managed care program for Medicaid.  Texas was one of the sample States selected, as well as Colorado, Florida, Indiana, Montana, Washington, West Virginia, and Wisconsin.

In addition, a random sample of Medicaid provider pharmacies from each State was selected.  The pharmacies were selected from each of five categories--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, home IV, etc.).  We included the non-traditional category so as to be able to exclude those pharmacies from our overall estimates.  We believe such pharmacies are able to purchase drugs at substantially greater discounts than retail pharmacies, and including them would inflate our estimates.

We compared each invoice drug price to AWP for that drug and calculated the percentage, if any, by which the invoice price was discounted below AWP.  We then projected those differences to the universe of pharmacies in each category for each State and calculated an overall estimate for each State.  Additionally, we projected the results from each State to estimate the nationwide difference between invoice price and AWP for each category.

In Texas, we obtained drug pricing information from 38 pharmacies (including non-traditional).  Specifically, we obtained 1,635 invoice prices for brand name drugs, and 909 invoice prices for generic drugs (excluding non-traditional).  For Texas, the overall estimate of the extent that the invoice price was discounted below AWP was 22.17 percent for brand name drugs and 62.84 percent for generic drugs.  The national estimates were 21.84 percent and 65.93 percent, respectively.  Our previous estimates, based on Calendar Year 1994 pricing data, were 18.30 percent and 42.45 percent, respectively.  The estimates combined the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent and excluded the results obtained from non-traditional pharmacies.

We recommended that the Texas Health and Human Services Commission (State Agency) consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs.  The State Agency responded to our draft report in a letter dated September 26, 2001.  The State Agency stated they were conducting a statewide invoice audit and planned to use our data along with their data to determine changes to pharmacy reimbursement.

# TABLE OF CONTENTS

PAGE

INTRODUCTION                                           1

BACKGROUND                                             1

SCOPE                                                  2

FINDINGS                                               3

CONCLUSIONS AND RECOMMENDATION                         5

APPENDICES

     APPENDIX 1 - SAMPLE DESCRIPTION

     APPENDIX 2 - TEXAS SAMPLE RESULTS-AWP

     APPENDIX 3 - NATIONWIDE SAMPLE RESULTS-AWP

     APPENDIX 4 - TEXAS SAMPLE RESULTS-WAC

     APPENDIX 5 - NATIONWIDE SAMPLE RESULTS-WAC

     APPENDIX 6 - STATE AGENCY's COMMENTS

# INTRODUCTION

The Office of Inspector General (OIG) conducted a review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program of the Texas Health and Human Services Commission (State Agency).  The objective of this review was to develop an estimate of the discount below average wholesale price (AWP) at which pharmacies purchase brand name and generic drugs.  This review was conducted as a part of a nationwide review of pharmacy acquisition costs.  Texas was one of eight States randomly selected as part of the nationwide review.

## BACKGROUND

Medicaid regulations provide for the reimbursement of drugs using two methods.  If a drug is a multiple source (generic) drug, then reimbursement is based on the lower of the pharmacist□s usual and customary charge to the general public or an upper limit amount plus a dispensing fee.  The Federal upper limit amounts are established by Centers for Medicare and Medicaid Services (CMS).  If a drug is a single source (brand name) drug, or a generic drug for which an upper limit amount has not been established, then the reimbursement is the lower of the pharmacist's usual and customary charge to the general public or the estimated acquisition cost (EAC) plus a reasonable dispensing fee.  The State agencies are responsible for determining the EAC and the dispensing fee.

The EAC for most States is calculated by using AWP for a drug less a percentage discount.  The AWP is the price assigned to the drug by its manufacturer and is compiled by the **Red Book**, **First DataBank**, and **Medi-Span** for use by the pharmaceutical community.  Prior to 1984, most States used 100 percent of AWP for reimbursement of acquisition costs.  However, the OIG issued a report in 1984, which stated that, on average, pharmacies purchased drugs for 15.9 percent below AWP.  In 1989, the OIG issued a follow-up report that found that pharmacies were purchasing drugs at discounts of 15.5 percent below AWP.  Both the 1984 and 1989 reports combined brand name and generic drugs in calculating the percentage discounts and included a comparison of 3,469 and 4,723 purchases, respectively.

In 1989, CMS issued a revision to the State Medicaid Manual which pointed out that a preponderance of evidence demonstrated that AWP overstated prices that pharmacies actually paid for drugs by as much as 10 to 20 percent.  The Manual issuance further provided that, absent valid documentation to the contrary, it would not be acceptable for a State to make reimbursements using AWP without a significant discount.

In 1997, OIG issued separate reports on the actual acquisition cost of brand name and generic drugs.  The 1997 reports were based on comparisons of 18,973 invoice prices for brand name products and 9,075 invoice prices for generic products.  The reports showed average discounts of 18.30 percent below AWP and 42.45 percent below AWP, respectively.  Medicaid drug program

expenditures in Calendar Year (CY) 1994 totaled about $9.4 billion.  In CY 1999, nationwide drug expenditures for the program increased to about $17.9 billion.  Texas reported Medicaid drug expenditures of $996 million in CY 1999.

**SCOPE**

Our review was performed in accordance with generally accepted government auditing standards. The objective of our review was to develop an estimate of the difference between AWP and the actual invoice prices of both brand name and generic prescription drugs to Medicaid pharmacy providers.  Our objective did not require that we identify or review any internal control systems

Our review was limited to ingredient acquisition costs and did not address other areas such as: the effect of Medicaid business as a contribution to other store sales; the cost to provide professional services other than dispensing a prescription for instances such as therapeutic interventions, patient education, and physician consultation; and the cost of dispensing which includes costs for computers, multi-part labels, containers, technical staff, transaction fees, Medicaid-specific administrative costs, and general overhead.

We obtained a listing of all Medicaid pharmacy providers from the State Agency.  The State Agency was responsible for classifying each pharmacy as chain, independent, or non-traditional. For purposes of this review, a chain was defined as four or more pharmacies with common ownership.  We determined whether each pharmacy was rural or urban by comparing the county location for each pharmacy to a 1999 listing of metropolitan statistical areas and their components.  We selected a stratified random sample of 40 pharmacies with 8 pharmacies selected from each of 5 strata--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.)  We included the non-traditional category so as to be able to exclude those pharmacies from our estimates.  We believe that such pharmacies are able to purchase drugs at substantially greater discounts than a retail pharmacy and would inflate our estimate.

We requested, from each pharmacy selected, the largest invoice from each different source of supply for a specified month in CY 1999.  Supply sources include wholesalers, chain warehouse distribution centers, generic distributors, and manufacturers.  Each pharmacy was initially assigned a month from January 1999 through December 1999 in order to provide a cross-section of this 12-month time period.  However, we permitted some pharmacies to provide invoices from other months in 1999, if invoices were not available for the requested period.

We reviewed every line item on the invoices supplied by the sample pharmacies to ensure that the invoices contained the information necessary for our review.  We eliminated over-the-counter items.  Some invoices did not include National Drug Codes (NDC), which were needed to obtain AWP for the drug.  We attempted to obtain NDCs in those instances.  We used the **2000 Red Book**, a nationally recognized reference for drug product and pricing information, to obtain

NDCs and identify over-the-counter items.  Two prominent wholesalers, as well as four chain stores, whose invoices contained the wholesaler item number rather than NDCs, provided us with a listing that converted their item numbers to an NDC.  If we were unable to identify the NDC for a drug, we eliminated the drug.

To verify the drug name, we utilized the drug product file on the CMS web site.  In addition to verifying the drug name, we were also able to determine the drug-type indicator from this file. The drug-type indicator showed whether the drug was a brand name or generic drug.
We obtained a drug pricing file from **First DataBank** through the State of Florida for the purpose of obtaining the AWP for each drug.  We compared the invoice drug price to AWP for each drug and calculated the percentage, if any, by which the invoice price was discounted below AWP.  If a drug from an invoice was not on the pricing file we eliminated that drug.

Since some States also use wholesalers acquisition cost (WAC) in their reimbursement methodology, we also compared the invoice drug price to WAC for each drug for which WAC was available on the pricing file.  We calculated the percentage, if any, by which WAC must be increased to equate the invoice price.  The results of the WAC comparisons are reported in **APPENDICES 4** and **5**.

We used OIG Office of Audit Services (OAS) statistical software to calculate all estimates, as well as to generate all random numbers.  We obtained the total number of pharmacies in the universe from the National Council for Prescription Drug Programs.  We did not independently verify any information obtained from third party sources.  Additionally, we did not attempt to identify any special discounts, rebates, or other types of special incentives not reflected on the invoices.  Our review was conducted by our Little Rock, Arkansas OAS field office from July 2000 through June 2001.

## FINDINGS

**BRAND NAME DRUGS**

We estimated that the invoice price for brand name drugs was 22.17 percent below AWP.  The estimate combined all pharmacy categories except non-traditional pharmacies and was based on the comparison to AWP of 1,635 invoice prices received from 31 pharmacies.  The standard deviation for this estimate was 1.47 percent (see **APPENDIX 2**).

The estimates by individual categories for brand name drugs are summarized in the following table:

**Estimated Difference Between AWP and Invoice Price**
**for Brand Name Drugs**

| Category | Percent Below AWP (Point Estimate) | Standard Deviation | Sample Pharmacies | Prices Compared |
|---|---|---|---|---|
| Rural-Chain | 18.74 | 1.69 | 7 | 303 |
| Rural-Independent | 19.90 | 1.64 | 8 | 348 |
| Urban-Chain | 21.59 | 4.62 | 8 | 643 |
| Urban-Independent | 25.56 | 13.09 | 8 | 341 |
| Non-Traditional | 27.94 | 11.74 | 7 | 185 |
| Overall (Exc. Non-Trad.) | 22.17 | 1.47 | 31 | 1,635 |

**GENERIC DRUGS**

We estimated that the invoice price for generic drugs was 62.84 percent below AWP. Once again, the estimate combined all pharmacy categories except non-traditional pharmacies. The estimate was based on the comparison to AWP of 909 invoice prices received from 31 pharmacies. The standard deviation for this estimate was 1.70 percent (see **APPENDIX 2**). The following table summarizes the results by category for generic drugs:

**Estimated Difference Between AWP and Invoice Price**
**for Generic Drugs**

| Category | Percent Below AWP (Point Estimate) | Standard Deviation | Sample Pharmacies | Prices Compared |
|---|---|---|---|---|
| Rural-Chain | 56.07 | 19.87 | 7 | 187 |
| Rural-Independent | 65.34 | 4.21 | 8 | 164 |
| Urban-Chain | 63.54 | 7.08 | 8 | 390 |
| Urban-Independent | 62.02 | 9.59 | 8 | 168 |
| Non-Traditional | 67.83 | 17.18 | 7 | 123 |
| Overall (Exc.Non-Trad) | 62.84 | 1.70 | 31 | 909 |

**WAC RESULTS**

In addition to our comparison of AWP to acquisition cost, we also compared WAC to invoice price. This was done because some States use WAC plus a percentage in their pharmacy reimbursement methodology. We estimated that the invoice price for brand name drugs was 2.12 percent below WAC rather than a percentage to be added to WAC. The estimate combined all pharmacy categories except non-traditional pharmacies and was based on the comparison to AWP of 1,212 invoice prices received from 31 pharmacies.

We also estimated that the invoice price for generic drugs was 26.13 percent below WAC. The estimate also combined all pharmacy categories except non-traditional pharmacies and was based on the comparison to AWP of 674 invoice prices received from 31 pharmacies. A more detailed description of the WAC results, including the nationwide estimates is shown in **APPENDICES 4** and **5**.

## CONCLUSIONS AND RECOMMENDATION

Based on our review, we have determined that there was a significant difference between AWP and pharmacy acquisition costs. The difference between AWP and pharmacy acquisition costs was significantly greater for generic drugs than for brand name drugs. We recognize that acquisition cost is just one factor in pharmacy reimbursement policy and that any change to that policy should also consider the other factors discussed in the **SCOPE** section of our report. Additionally, the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations should be taken into consideration. However, a change in any of the factors affecting pharmacy reimbursement could have a significant impact on expenditures because of the size of the program. We believe that the difference between AWP and pharmacy acquisition costs as determined by our review was significant enough to warrant consideration by the State in any evaluation of the drug program. Therefore, we recommend that the State Agency consider the results of this review as a factor in determining any future changes to pharmacy reimbursement for Medicaid drugs.

STATE AGENCY'S COMMENTS

The State Agency responded to our draft report in a letter dated September 26,2001. The State Agency indicated that they were conducting a statewide invoice audit and would use their data as well as our date to determine changes to pharmacy reimbursement. The State Agency noted that the discount off AWP was greater for independents than for chains and speculated that this was the result of using store invoices rather than going to the chain corporate office and obtaining original invoices. The State Agency also questioned whether the date of the AWP on the pricing file corresponded to the invoice date of the data. The complete text of the State Agency's comment is included in **APPENDIX 6**.

OIG RESPONSE

The OIG shares the State Agency's concern regarding the discount off AWP of independent pharmacies being greater than the chain pharmacies.  We did obtain prices from some of the corporate offices for some of the chains, but not all.  Additionally, the mix of drugs appearing on an invoice can affect the discount percentages.  Further, independent pharmacies have realized significant buying power through membership in retail pharmacy buying groups, in our opinion. We are also considering a follow-up review of some of the pricing information provided to us from chain pharmacies.  With regard to correspondence of dates between the pricing file and invoices, the pricing file from **First DataBank** contained several prices for each drug and the effective date for each price.  We matched the invoice date with the price that was in effect for that date.

# APPENDICES

**APPENDIX 1**
**PAGE 1 of 2**

**SAMPLE DESCRIPTION**

<u>Sample Objectives:</u>

Develop an estimate of the extent of the discount below average wholesale prices (AWP) of actual invoice prices to Medicaid pharmacies in Texas for brand name drugs and for generic drugs.

<u>Population:</u>

The sampling population was pharmacy providers participating in the Medicaid prescription drug program of the State Agency.

<u>Sampling Frame:</u>

The sampling frame was a listing of all pharmacy providers participating in the Medicaid prescription drug program.

<u>Sample Design:</u>

A sample of 8 pharmacies was randomly selected from each of 5 strata. The 5 strata of pharmacies were rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.) Each pharmacy was assigned a month from 1999 for which to provide invoices. All pharmacies were initially assigned a month from January through December in a method designed to provide a cross-section of the twelve-month period. However, some pharmacies were permitted to submit invoices from other months as invoices were not available for the month originally assigned. The largest invoice from each of four different sources of supply was requested. The sources of supply were identified as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. All invoice prices were compared to AWP.

<u>Sample Size:</u>

Eight pharmacies were selected from each stratum for a total of forty pharmacies.

<u>Source of Random Numbers:</u>

OAS statistical sampling software was used to generate the random numbers.

**APPENDIX 1**
**PAGE 2 of 2**

<u>Characteristics to be Measured:</u>

From our review of the pharmacy invoices, we calculated the percentage discount below AWP of actual invoice prices for all drugs on the invoices submitted.

<u>Treatment of Missing Sample Items:</u>

No spare was substituted for a pharmacy that did not provide information.  If a pharmacy did not send an invoice for a particular type of supplier, we assumed that the pharmacy did not purchase drugs from that type of supplier during the month assigned to the pharmacy.

<u>Estimation Methodology:</u>

We used OAS statistical software to project the percentage difference between AWP and actual invoice prices for each stratum, as well as an overall percentage difference.  The overall percentage difference excluded the non-traditional pharmacies.  The projections were done separately for brand name drugs and generics.

<u>Other Evidence:</u>

We obtained AWP from a pricing file received from the State of Florida.

**APPENDIX 2**

# TEXAS SAMPLE RESULTS -AWP

| | | | | Sample | | 90 Percent Confidence Level | |
|---|---|---|---|---|---|---|---|
| **BRAND NAME DRUGS – AWP** | | | | | | | |
| **Category** | **Universe of Pharmacies** | **Sample Pharmacies** | **Prices Compared** | **Mean** | **Standard Deviation** | **Lower Limit** | **Upper Limit** |
| RURAL-CHAIN | 225 | 7 | 303 | 18.74 | 1.69 | 17.71 | 19.77 |
| RURAL-INDEPENDENT | 398 | 8 | 348 | 19.90 | 1.64 | 18.96 | 20.84 |
| URBAN-CHAIN | 1,682 | 8 | 643 | 21.59 | 4.62 | 18.90 | 24.27 |
| URBAN-INDEPENDENT | 778 | 8 | 341 | 25.56 | 13.09 | 17.99 | 33.14 |
| NON-TRADITIONAL | 214 | 7 | 185 | 27.94 | 11.74 | 20.77 | 35.12 |
| OVERALL (EXCL. NON TRAD.) | 3,083 | 31 | 1,635 | 22.17 | 1.47 | 19.75 | 24.58 |

| | | | | Sample | | 90 Percent Confidence Level | |
|---|---|---|---|---|---|---|---|
| **GENERIC DRUGS – AWP** | | | | | | | |
| **Category** | **Universe of Pharmacies** | **Sample Pharmacies** | **Prices Compared** | **Mean** | **Standard Deviation** | **Lower Limit** | **Upper Limit** |
| RURAL-CHAIN | 225 | 7 | 187 | 56.07 | 19.87 | 43.91 | 68.23 |
| RURAL-INDEPENDENT | 398 | 8 | 164 | 65.34 | 4.21 | 62.92 | 67.76 |
| URBAN-CHAIN | 1,682 | 8 | 390 | 63.54 | 7.08 | 59.43 | 67.64 |
| URBAN-INDEPENDENT | 778 | 8 | 168 | 62.02 | 9.59 | 56.47 | 67.58 |
| NON-TRADITIONAL | 214 | 7 | 123 | 67.83 | 17.18 | 57.33 | 78.33 |
| OVERALL (EXCL. NON TRAD.) | 3,083 | 31 | 909 | 62.84 | 1.70 | 60.04 | 65.65 |

APPENDIX 3

# NATIONWIDE SAMPLE RESULTS - AWP

| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Percent Below AWP (Point Estimate) |
|---|---|---|---|---|
| **BRAND NAME DRUGS – AWP** | | | | |
| Rural-Chain | 1,008 | 52 | 3,533 | 20.68 |
| Rural-Independent | 1,243 | 55 | 2,628 | 20.86 |
| Urban-Chain | 5,745 | 56 | 7,719 | 22.19 |
| Urban-Independent | 2,398 | 53 | 2,324 | 22.00 |
| Non-Traditional | 1,123 | 61 | 1,528 | 31.18 |
| Overall (Excl. Non-Trad.) | 10,394 | 216 | 16,204 | 21.84 |

| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | Percent Below AWP (Point Estimate) |
|---|---|---|---|---|
| **GENERIC DRUGS – AWP** | | | | |
| Rural-Chain | 1,008 | 52 | 2,073 | 64.39 |
| Rural-Independent | 1,243 | 55 | 1,142 | 66.64 |
| Urban-Chain | 5,745 | 56 | 4,491 | 66.97 |
| Urban-Independent | 2,398 | 54 | 1,022 | 63.70 |
| Non-Traditional | 1,123 | 58 | 1,185 | 67.07 |
| Overall (Excl. Non-Trad.) | 10,394 | 217 | 8,728 | 65.93 |

**APPENDIX 4**

# TEXAS RESULTS - WAC

| | | | | Sample | | 90 Percent Confidence Level | |
|---|---|---|---|---|---|---|---|
| **BRAND NAME DRUGS – WAC** | | | | | | | |
| **Category** | **Universe of Pharmacies** | **Sample Pharmacies** | **Prices Compared** | **Mean** | **Standard Deviation** | **Lower Limit** | **Upper Limit** |
| RURAL-CHAIN | 225 | 7 | 189 | 0.11 | 2.71 | -1.54 | 1.77 |
| RURAL-INDEPENDENT | 398 | 8 | 287 | -1.69 | 1.66 | -2.64 | -0.73 |
| URBAN-CHAIN | 1,682 | 8 | 511 | -0.91 | 6.37 | -4.61 | 2.78 |
| URBAN-INDEPENDENT | 778 | 8 | 225 | -5.59 | 8.66 | -10.60 | -0.58 |
| NON-TRADITIONAL | 214 | 6 | 146 | -7.73 | 16.81 | -18.86 | 3.40 |
| OVERALL (EXCL. NON TRAD.) | 3,083 | 31 | 1,212 | -2.12 | 1.45 | -4.50 | 0.27 |

| | | | | Sample | | 90 Percent Confidence Level | |
|---|---|---|---|---|---|---|---|
| **GENERIC DRUGS – WAC** | | | | | | | |
| **Category** | **Universe of Pharmacies** | **Sample Pharmacies** | **Prices Compared** | **Mean** | **Standard Deviation** | **Lower Limit** | **Upper Limit** |
| RURAL-CHAIN | 225 | 7 | 153 | -18.20 | 17.55 | -28.94 | -7.46 |
| RURAL-INDEPENDENT | 398 | 8 | 114 | -24.48 | 7.54 | -28.82 | -20.13 |
| URBAN-CHAIN | 1,682 | 8 | 282 | -28.84 | 10.56 | -34.96 | -22.71 |
| URBAN-INDEPENDENT | 778 | 8 | 125 | -23.41 | 9.83 | -29.10 | -17.72 |
| NON-TRADITIONAL | 214 | 7 | 99 | -37.13 | 26.66 | -53.43 | -20.83 |
| OVERALL (EXCL. NON TRAD.) | 3,083 | 31 | 674 | -26.13 | 2.29 | -29.89 | -22.37 |

APPENDIX 5

# NATIONWIDE SAMPLE RESULTS - WAC

| BRAND NAME DRUGS – WAC | | | | |
|---|---|---|---|---|
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | WAC Plus Percent (Point Estimate) |
| Rural-Chain | 1,008 | 52 | 2,249 | -1.93 |
| Rural-Independent | 1,243 | 55 | 2,101 | -2.59 |
| Urban-Chain | 5,745 | 56 | 6,239 | -1.13 |
| Urban-Independent | 2,398 | 53 | 1,543 | -2.98 |
| Non-Traditional | 1,123 | 58 | 1,168 | -14.99 |
| Overall (Excl. Non-Trad.) | 10,394 | 216 | 12,132 | -1.81 |
| GENERIC DRUGS – WAC | | | | |
| Category | Universe of Pharmacies | Sample Pharmacies | Drug Prices Reviewed | WAC Plus Percent (Point Estimate) |
| Rural-Chain | 1,008 | 52 | 1,569 | -27.13 |
| Rural-Independent | 1,243 | 55 | 856 | -27.01 |
| Urban-Chain | 5,745 | 56 | 3,193 | -33.04 |
| Urban-Independent | 2,398 | 54 | 752 | -27.80 |
| Non-Traditional | 1,123 | 56 | 893 | -35.97 |
| Overall (Excl. Non-Trad.) | 10,394 | 217 | 6,370 | -30.55 |



TEXAS HEALTH AND HUMAN SERVICES COMMISSION

Don A.Gilbert, M.B.A.
COMMISSIONER

September 26, 2001

Mr. Gordon L. Sato
Regional Inspector General
    for Audit Services
Department of Health and Human Services
1100 Commerce, Room 6B6
Dallas, TX  75242

Dear Mr. Sato:

I received the draft report of the results of the Office of Inspector General's review of pharmacy acquisition costs for drugs reimbursed under the Texas Medicaid Vendor Drug Program. I appreciate Texas being selected in this nationwide review. This report is very timely in that the Vendor Drug Program is currently conducting a large scale statewide invoice audit to compare invoice price to average wholesale price (AWP), wholesale acquisition cost (WAC), and the Vendor Drug Program's wholesale estimated acquisition cost (WEAC). The results of this study along with your study will be used to determine if the current pricing formula (the lower of AWP – 15% or WAC + 12%) needs revision. We were very pleased to see that the WAC comparison was included in the study. We are also in the final stages of a reimbursement rule change to allow revision of the formulary pricing structure once we have completed the invoice study.

Two observations that I would like to make regarding the methodology noted in the report.

- I noticed in most instances that the amount of discount off of AWP was greater for independents than chains. When looking at the methodology, apparently the survey was sent to individual chain stores where they might use the chain warehouse distribution center source type. I think these invoices would include add-on expenses related to distribution, etc. In the invoice audit that the Vendor Drug Program is currently conducting, we are going to the chain corporate office and obtaining the original invoices, not the ones they use to bill the individual stores.

- My other comment is regarding the drug-pricing file from First DataBank through the State of Florida for the purpose of obtaining the AWP for each drug. My question would be, did the date of the AWP used from this file correspond to the invoice date of the data. Although this would probably not make a huge difference, we have had problems in the past when trying to get a good match of these dates.

P. O. Box 13247   •   Austin, Texas 78711   •   4900 North Lamar, Fourth Floor, Austin, Texas  78751

Mr. Gordon L. Sato
September 26, 2001
Page Two


Again, we really appreciate the report and do plan to use the data along with our own invoice
survey in determining changes to pharmacy reimbursement. The argument to make any such
change is solidified with similar statewide and nationwide results from the Department of Health
& Human Services.

Sincerely,

Patsy Napier, R.Ph.
Chief, Bureau of Vendor Drugs