EXHIBIT 109

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---------------------------------X

In Re: PHARMACEUTICAL INDUSTRY      )

AVERAGE WHOLESALE PRICE LITIGATION  )

---------------------------------X MDL No. 1456

THIS DOCUMENT RELATES TO:           ) Master File No.

United States of America ex rel.    ) 01-CV-12257-PBS

Ven-A-Care of the Florida Keys,     )

Inc., et al. v. Dey, Inc., et al.,  )

Civil Action No. 05-11084-PBS,      ) Hon. Patti B.

and United States of America ex     ) Saris

rel. Ven-A-Care of the Florida      )

Keys, Inc., et al. v. Boehringer    )

Ingelheim Corp., et al., Civil      )

Action No. 07-10248-PBS             )

---------------------------------X

VIDEOTAPED DEPOSITION OF

THE RHODE ISLAND DEPARTMENT OF HUMAN SERVICES

by JOHN YOUNG

Providence, Rhode Island

Wednesday, December 3, 2008

e56b5548-1f6a-4f27-a21d-46b66f77af45

Page 2

```
 1          A P P E A R A N C E S
 2
 3  On behalf of Boehringer Ingelheim Corp. and Roxane
 4  Laboratories:
 5
 6        SARA K. RANKIN, ESQ.
 7        Kirkland & Ellis LLP
 8        200 East Randolph Drive
 9        Chicago, IL  60601
10        312-861-3486
11        srankin@kirkland.com
12
13
14  On behalf of the United States of America:
15
16        BARBARA HEALY SMITH, ESQ.
17        Assistant United States Attorney
18        United States Courthouse
19        1 Courthouse Way, Suite 9200
20        Boston, MA  02210
21        617-748-3272
22        barbara.h.smith@usdoj.gov
```

Page 4

```
 1        A P P E A R A N C E S (CONTINUED)
 2
 3  On behalf of Abbott Laboratories, Inc.:
 4
 5        CAROL GEISLER, ESQ.
 6        (Via telephone.)
 7        Jones Day
 8        77 West Wacker
 9        Chicago, IL  60601-1672
10        312-269-4117
11        cgeisler@jonesday.com
12
13
14  ALSO PRESENT:
15
16        Patrick Battle, Videographer
17        Kerrie Shae, Rhode Island Notary
18
19
20
21
22
```

Page 3

```
 1        A P P E A R A N C E S (CONTINUED)
 2
 3  On behalf of the Witness:
 4
 5        BRENDA D. BAUM, ESQ.
 6        Assistant Attorney General
 7        Rhode Island Department of Attorney General
 8        150 South Main Street
 9        Providence, RI  02903
10        401-274-4400, ext. 2294
11
12
13  On behalf of Dey, Inc.:  (Via telephone.)
14
15        BRENDAN J. CYR, Esq.
16        Kelley Drye & Warren LLP
17        101 Park Avenue
18        New York, NY  10178
19        212-808-5021
20        bcyr@kelleydrye.com
21
22  (CONTINUED)
```

Page 5

```
 1               I N D E X
 2  WITNESS: JOHN YOUNG                           PAGE
 3     Examination By Ms. Rankin....... 010, 251, 268
 4     Examination By Mr. Cyr.................... 198
 5     Examination By Ms. Geisler................ 204
 6     Examination By Ms. Smith............. 223, 264
 7
 8             E X H I B I T S
 9  NUMBER            DESCRIPTION              PAGE
10  Exhibit Roxane-RI 001 - Amended Notice of
11              Deposition..............018
12  Exhibit Roxane-RI 002 - Organizational chart
13              HHD040-0001.............045
14  Exhibit Roxane-RI 003 - Medicaid Drug
15              Reimbursement Report
16              1990....................048
17  Exhibit Roxane-RI 004 - Medicare and Medicaid
18              Guide, New Developments,
19              pages 10,191 - 10,209...052
20  Exhibit Roxane-RI 005 - Transmittal and Notice
21              of Approval Of State
22              Plan Material...........065
```

2 (Pages 2 to 5)

Page 6

| | EXHIBITS (CONTINUED) | |
|---|---|---|
| NUMBER | DESCRIPTION | PAGE |

Exhibit Roxane-RI 006 - Fax cover sheet,
                       5/18/01 and letter to
                       Ronald Preston, Ph.D....071
Exhibit Roxane-RI 007 - Pharmacy Services Claim
                       Form....................084
Exhibit Roxane-RI 008 - Copy of legal notices,
                       6/30/95, Attachments....096
Exhibit Roxane-RI 009 - Letter to Preston,
                       5/31/01 from Young......099
Exhibit Roxane-RI 010 - CCPA Fact Sheet on
                       Thornton study, Cost of
                       Dispensing Study
                       summary, January 2007;
                       and Thornton National
                       Study to Determine the
                       Cost of Dispensing
                       Prescriptions in
                       Community Retail
                       Pharmacies, Jan. 2007...116
(CONTINUED)

Page 7

| | EXHIBITS (CONTINUED) | |
|---|---|---|
| NUMBER | DESCRIPTION | PAGE |

Exhibit Roxane-RI 011 - GAO, Fact Sheet for
                       Congressional
                       Committees, March 1993..132
Exhibit Roxane-RI 012 - DHHS, 3/14/02 memo with
                       attached OIG Report.....140
Exhibit Roxane-RI 013 - Receipt for Ven-A-Care
                       presentation Material
                       at NAMFCU Conference,
                       3/19/98.................148
Exhibit Roxane-RI 014 - United States'
                       Complaint, U.S. vs.
                       Boehringher Ingelheim
                       and Roxane..............153
Exhibit Roxane-RI 015 - P-TAG Position Paper,
                       9/11/2000...............160
Exhibit Roxane-RI 016 - 9/18/02 Letter from CMS.162
Exhibit Roxane-RI 017 - OIG Report, August 1996.255
Exhibit Roxane-RI 018 - OIG Report, August 1997.257

Page 8

    P R O C E E D I N G S

        VIDEOGRAPHER:  We are now recording on
the record.  My name is Patrick Battle.  I'm a
legal video specialist on behalf of Henderson
Legal Services.  Our business address is 1015,
15th Street, Northwest, Suite 525, Washington,
D.C., 20005.  Today is December 3, 2008 and the
time is 9:43.  This is the deposition of John
Young in the matter of In Re:  Pharmaceutical
Industry AWP versus United States of America, ex
rel. Ven-A-Care of the Florida Keys, Inc., et al.
v. Dey, Inc., et al., Civil Action Number 05-
11084-PBS, and United States of America, ex rel.
Ven-A-Care of the Florida Keys, Inc., et al. v.
Boehringer Ingelheim Corp., et al., Civil Action
Number 07-10248-PBS, in the United States Court
for the District of Massachusetts, Master File
Number 01-CV-12257-PBS.
        This deposition is being taken at 1
West Exchange Place, Providence, Rhode Island.
The court reporter is Jane Eaton of Henderson

Page 9

Legal Services.  Counsel will state their
appearances and the court reporter will
administer the oath.
        MS. RANKIN:  My name is Sara Rankin.  I
represent Roxane and the Boehringer entities.
        MS. BAUM:  My name is Brenda Baum, and
I am Assistant Attorney, Rhode Island Department
of Attorney General, here on behalf of the
deponent, John Young.
        MS. SMITH:  Barbara Healy Smith
representing the United States.
        MS. RANKIN:  Counsel on the phone?
        MS. GEISLER:  Carol Geisler
representing Abbott Laboratories.
        MR. CYR:  This is Brendan Cyr from
Kelley Drye and Warren representing Dey, Inc.,
Dey LP and Dey LP, Inc.

        J O H N  Y O U N G,
Having first been duly sworn by the notary, was
examined and testified as follows:

3 (Pages 6 to 9)

Page 74

 1  more detailed information that explains the
 2  state's reimbursement methodology and the amount
 3  of dispensing fees.  It says here that the
 4  proposed reimbursement methodology defines the
 5  estimated acquisition cost of the drug product as
 6  wholesale acquisition cost plus a 10 percent
 7  markup.  The second paragraph says, "The previous
 8  method is based on the Estimated Acquisition Cost
 9  on the average wholesale price."
10          Does this help to refresh your
11  recollection about what the reimbursement
12  methodology was that was in place prior to Rhode
13  Island seeking a change in the reimbursement
14  methodology to wholesale acquisition cost plus a
15  10 percent markup?
16      A.  It does reflect that AWP was used as
17  the basis, yes.
18      Q.  Rhode Island response goes on to say,
19  "The AWP represents the manufacturer's suggested
20  price which generally is higher than the actual
21  cost of the drug paid by the pharmacy.  Indeed,
22  pharmacies typically purchase drug products at

Page 75

 1  prices much less than AWP.  The largest savings
 2  from the WAC plus 10 pricing methodology will
 3  come from generic products.  Our experience is
 4  that the AWP for a generic product can be up to
 5  10 times the WAC."  Did I read that correctly?
 6      A.  You did.
 7      Q.  Do you recall any discussions about
 8  Rhode Island's determination that the AWP is
 9  higher than the actual cost of the drug paid by
10  the pharmacy?
11      A.  I don't recall specific discussions,
12  no.
13      Q.  Do you recall any discussions about why
14  Rhode Island determined that the largest savings
15  from the WAC plus 10 pricing methodology would
16  come from generic products?
17      A.  I don't recall specific discussions,
18  no.
19      Q.  Do you have any recollection of what
20  your understanding was at the time regarding this
21  move to a WAC plus 10 pricing methodology, the
22  rationale for it?

Page 76

 1      A.  I was not involved in the discussion,
 2  and so at this point in time we would be simply
 3  trying to secure approval for the request made in
 4  1995.
 5      Q.  Who would you -- let's see.  This
 6  letter is submitted by Christine Ferguson; is
 7  that correct?
 8      A.  That's correct.
 9      Q.  And it is copied to you and Paula
10  Avarista?
11      A.  Yes, I believe so.
12      Q.  And Ann Martino?
13      A.  Correct.
14      Q.  Who is Ann Martino?
15      A.  Ann Martino was the chief of the office
16  of policy.
17      Q.  She is the individual you identified
18  earlier as someone who may be a custodian for
19  State Plan Amendment information?
20      A.  Correct.
21      Q.  As Medicaid Director, would you have
22  wanted to understand why the pricing methodology

Page 77

 1  for generic products was being adjusted?
 2      A.  If it was an action I had proposed,
 3  then yes, I would.
 4      Q.  What if it was an action you hadn't
 5  proposed? Would you care to understand the
 6  reasoning for why the WAC plus 10 pricing
 7  methodology?
 8      A.  To the extent it was an outstanding
 9  action, I would certainly have wanted to be
10  briefed for informational reasons.
11      Q.  But you have no recollection of
12  whatever briefing you may have received on why
13  this change was made?
14      A.  I do not.
15      Q.  The paragraph below the one that I just
16  read has a second sentence, and it says, "On a
17  claim specific basis the payment that results
18  from the state's formula frequently is less than
19  and never exceeds the amount that would be paid
20  under the federal upper limits."
21          Do you understand what federal upper
22  limits are?

                                        20 (Pages 74 to 77)

Page 254

 1        MS. BAUM:  Objection to form of the
 2   question and foundation.
 3        THE WITNESS:  This report would have
 4   been a supposition that it might be as much as.
 5   A factual basis for assertion would be something
 6   that was more direct and would not be expressed
 7   as a range.  That there might be a vulnerability
 8   in using AWP I think this report and certainly
 9   other things I have read over time suggest that
10   AWP specifically is less -- is more prone to
11   variability than, I will say, acquisition costs
12   might have been, for example.
13   BY MS. RANKIN:
14        Q.  And based on this report, Rhode Island
15   Medicaid would have been on notice that the
16   magnitude could be as great as AWP minus 42?
17        MS. SMITH:  Objection.
18        MS. BAUM:  Objection.
19   BY MS. RANKIN:
20        Q.  Is that correct?
21        A.  With the stress on the word "could be,"
22   yes.

Page 255

 1        Q.  I would like to ask the court reporter
 2   to mark as Roxane Exhibit 17.
 3        (Exhibit Roxane-RI 017 marked for
 4   identification.)
 5   BY MS. RANKIN:
 6        Q.  Another report from the Department of
 7   Health and Human Services, Office of Inspector
 8   General, dated August 13, 1996.  Subject is:
 9   Review of Pharmacy Acquisition Costs For Drugs
10   Reimbursed Under the Medicaid Prescription Drug
11   Program of the Florida Agency For Health Care
12   Administration.  The first full paragraph, last
13   two sentences state:  Most states reimbursed
14   pharmacies for Medicaid prescriptions using a
15   formula which generally discounts the average
16   wholesale price by 10.5 percent.  The objective
17   of our review was focused on developing an
18   estimate of the difference between the actual
19   acquisition costs of drugs of pharmacies and AWP
20   for both brand name and generic drugs.
21        Then in the third paragraph it says,
22   third sentence:  The overall estimate of the

Page 256

 1   extent that AWP exceeded pharmacy purchase
 2   invoice prices was 20.2 percent for brand name
 3   drugs and 41.5 percent for generic drugs.  The
 4   national estimates are 18.3 percent and 42.5
 5   percent respectively.
 6        Again, these OIG reports would have
 7   been routinely received and reviewed by whatever
 8   state Medicaid Director was in place at the time,
 9   correct?
10        A.  Correct.
11        MS. BAUM:  Objection, foundation.
12   BY MS. RANKIN:
13        Q.  And so isn't it fair to say based on
14   this OIG report Rhode Island Medicaid had notice
15   of some magnitude of difference between AWP and
16   actual acquisition costs, namely, the OIG's
17   estimate of 42.5 percent for generic drugs?
18        MS. BAUM:  Objection, form of the
19   question, foundation.
20        THE WITNESS:  Certainly this would
21   suggest that there was a difference between
22   average wholesale price and actual acquisition

Page 257

 1   cost.
 2   BY MS. RANKIN:
 3        Q.  A difference that could have the
 4   magnitude of 42.5 percent, correct, for generic
 5   drugs?
 6        A.  Correct.
 7        Q.  Like to ask the court reporter to mark
 8   as Roxane Exhibit 18 another OIG report.
 9        (Exhibit Roxane-RI 018 marked for
10   identification.)
11        Q.  Dated August 4, 1997.  Subject:
12   Medicare Pharmacy Actual Acquisition Costs of
13   Generic Prescription Drug Products.  And the
14   first paragraph describes the report as the
15   consolidated results of our review of pharmacy
16   acquisition costs for generic drugs reimbursed
17   under the Medicaid prescription drug program.
18   Few sentences down from there it says -- it
19   describes the objective of their review as,
20   quote, to develop a nationwide estimate of the
21   discount below AWP at which pharmacies purchase
22   generic drugs.  Third full paragraph starts with

Page 258

 1  this sentence:  We estimated that pharmacies pay
 2  an average of 42.5 percent less than AWP for
 3  drugs sold to Medicaid beneficiaries.
 4        If you look at the first page of this
 5  report, which should have a number on the bottom
 6  of number 1, do you see that number in the center
 7  of the bottom of the page?
 8     A.  I do.
 9     Q.  This page recounts a number of
10  different reports and findings from the OIG
11  regarding magnitudes of percentages that actual
12  acquisition cost was discovered to be below AWP.
13  There's a citation in the third full paragraph to
14  the 1984 OIG report which we've already
15  discussed.  There's a citation to a 1989 OIG
16  report where it concludes that pharmacies were
17  purchasing drugs at discounts of 15.5 percent
18  below AWP.  Then there's a recounting of a 1989
19  HCFA revision to the state Medicaid manual
20  pointing out by, quote, a preponderance of the
21  evidence demonstrated that AWP overstated prices
22  that pharmacies actually paid for drugs by as

Page 259

 1  much as 10 to 20 percent.  The manual issuance
 2  further provided that absent valid documentation
 3  to the contrary it would not be acceptable for a
 4  state to make reimbursements using AWP without
 5  significant discount.
 6        And then it cites at the very bottom of
 7  that page an article from 1996, 1996 Barron's
 8  article entitled "Hooked on Drugs."  And it says,
 9  it quotes, focused additional attention on AWP
10  and its relationship to actual acquisition costs.
11  Barron's compared about 300 dose forms of the top
12  20 Medicare drugs and concluded that the true
13  cost was 10 to 20 percent below AWP for brand
14  name drugs and 60 to 85 percent below AWP for
15  generic drugs.  Barron's also reported that
16  industry insiders joke that AWP really means
17  "Ain't What's Paid."
18        Consistent with your testimony about
19  the 1996 OIG report, isn't it fair to say that as
20  of August 1997 Rhode Island Medicaid was on
21  notice of all of these various findings recounted
22  in this report that show that the magnitude of

Page 260

 1  difference between AWP and actual acquisition
 2  cost could be as high as 85 percent?
 3        MS. BAUM:  Objection.  Form of the
 4  question.  Foundation.
 5        MS. SMITH:  Objection.
 6        THE WITNESS:  It certainly would call
 7  into he question the validity of AWP as a sound
 8  element to a pricing formula.
 9  BY MS. RANKIN:
10     Q.  And the reason for that is because of
11  this magnitude of difference between AWP and
12  actual acquisition costs?
13        MS. BAUM:  Objection, form of the
14  question.
15        THE WITNESS:  I think this suggests a
16  level of variability that regardless of magnitude
17  would call to question whether or not this was
18  the price point you wanted to tie your
19  reimbursement methodology to.
20        (Off-the-record discussion.)
21  BY MS. RANKIN:
22     Q.  Okay.  If you can turn to previously

Page 261

 1  marked Exhibit Roxane 12.  This is another OIG
 2  report from March 14, 2002.  We've already
 3  discussed this exhibit.  The subject, just to
 4  remind you, is, again, actual acquisition costs.
 5  And, as you'll recall, we talked about this
 6  report noting that actual acquisition costs was
 7  an average of 65.93 percent below AWP.  And
 8  additionally on page 7 of the report concluded
 9  that WAC was significantly higher than the actual
10  acquisition costs for generic drugs.
11        Consistent with your testimony
12  regarding the other OIG reports we've discussed,
13  isn't it fair to say Rhode Island Medicaid as of
14  March 2002 was on notice that AWP could have a
15  magnitude of difference from actual acquisition
16  cost of 65.93 percent and that WAC was
17  significantly higher than actual acquisition
18  cost?
19        MS. BAUM:  Objection to the form of the
20  question.
21  BY MS. RANKIN:
22     Q.  As stated in this report?