# EXHIBIT 111

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------X

In Re: PHARMACEUTICAL INDUSTRY         )

AVERAGE WHOLESALE PRICE LITIGATION     )

------------------------------------X MDL No. 1456

THIS DOCUMENT RELATES TO:              ) Master File No.

United States of America ex rel.       ) 01-CV-12257-PBS

Ven-A-Care of the Florida Keys, Inc.,)

et al. v. Dey, Inc., et al.,           )

Civil Action No. 05-11084-PBS,         ) Hon. Patti B.

and United States of America ex rel.   ) Saris

Ven-A-Care of the Florida Keys, Inc.,)

et al. v. Boehringer Ingelheim Corp.,)

et al., Civil Action No. 07-10248-PBS)

------------------------------------X


VIDEOTAPED DEPOSITION OF

THE VERMONT DEPARTMENT OF HEALTH by ANN RUGG

Montpelier, Vermont

Monday, December 15, 2008

9:00 a.m.

                                                                          Page 2

 1                    A P P E A R A N C E S
 2
 3   On behalf of Dey, Inc., Dey L.P., Inc. And
 4   Dey, L.P.:
 5        SUNG W. KIM, ESQ.
 6        Kelley Drye & Warren LLP
 7        101 Park Avenue
 8        New York, NY  10178
 9        212-808-7962
10        sukim@kelleydrye.com
11
12
13   On behalf of the United States of America:
14        JAMES J. FAUCI, ESQ.
15        Assistant United States Attorney
16        United States Courthouse
17        1 Courthouse Way
18        Suite 9200
19        Boston, MA  02210
20        617-748-3298
21        jeff.fauci@usdoj.gov
22

                                                                          Page 4

 1                    I N D E X
 2
 3   WITNESS: ANN RUGG                                  PAGE
 4       Examination By Mr. Kim.................... 008
 5       Examination By Ms. Geisler................ 324
 6       Examination By Mr. Fauci.................. 347
 7       Examination By Mr. Kim.................... 380
 8
 9
10                    E X H I B I T S
11   NUMBER           DESCRIPTION                      PAGE
12   Exhibit Rugg 001 - Notice of Deposition........ 012
13   Exhibit Rugg 002 - Westlaw, 42 C.F.R. Section
14           447.204..................... 044
15   Exhibit Rugg 003 - OVHA Provider Enrollment.... 065
16   Exhibit Rugg 004 - Vermont Pharmacy Manual,
17           1993........................ 065
18   Exhibit Rugg 005 - Universal Claim Form sample. 074
19   Exhibit Rugg 006 - Title XIX, State Plan
20           Amendments.................. 088
21   Exhibit Rugg 007 - OIG survey, 2001............ 129
22   Exhibit Rugg 008 - OHVA Provider Manual........ 156

                                                                          Page 3

 1           A P P E A R A N C E S  (CONTINUED)
 2   On behalf of the Witness:
 3        MICHAEL N. DONOFRIO, ESQ.
 4        EARL F. FECHTER, ESQ.
 5        Assistant Attorney General
 6        Office of the Attorney General
 7        109 State Street
 8        Montpelier, VT  05609
 9        802-828-6906
10        mdonofrio@atg.state.vt.us
11
12
13   On behalf of Abbott Laboratories, Inc.:
14        CAROL GEISLER, ESQ.  (Via telephone.)
15        Jones Day
16        77 West Wacker
17        Chicago, IL  60601-1672
18        312-269-4117
19        cgeisler@jonesday.com
20
21   ALSO PRESENT:  Cindy LaWare
22            Andy Hoffman, Videographer

                                                                          Page 5

 1              E X H I B I T S  (CONTINUED)
 2   NUMBER           DESCRIPTION                      PAGE
 3   Exhibit Rugg 009 - 1986 MAC list............... 170
 4   Exhibit Rugg 010 - 10/15/86 letter to HCFA..... 175
 5   Exhibit Rugg 011 - Survey, 1989................ 189
 6   Exhibit Rugg 012 - MAC list, 2002.............. 194
 7   Exhibit Rugg 013 - State MAC information....... 201
 8   Exhibit Rugg 014 - University Rhode Island
 9           study....................... 207
10   Exhibit Rugg 015 - Westlaw 18 V.S.A. Section
11           4605........................ 215
12   Exhibit Rugg 016 - CBO Study, July 1998........ 219
13   Exhibit Rugg 017 - Memo to Regional
14           Administrators, 1994........ 226
15   Exhibit Rugg 018 - Memo re: Arkansas Amendment. 229
16   Exhibit Rugg 019 - Reimbursment Methodology,
17           Draft....................... 238
18   Exhibit Rugg 020 - Report to Congress, June
19           1994........................ 242
20   Exhibit Rugg 021 - OHVA Medicaid Generic
21           Reimbursement Reductions and
22           Dispensing Fee Study Jan 07. 252

```
                                                  Page 6
 1          E X H I B I T S   (CONTINUED)
 2   NUMBER         DESCRIPTION                 PAGE
 3   Exhibit Rugg 022 - E-mail chain/Nancy Nesser,
 4             5/8/2007.................... 264
 5   Exhibit Rugg 023 - Drug Topics newsletter,
 6             May 21, 2007................ 279
 7   Exhibit Rugg 024 - Letter to Ron Preston,
 8             9/18/2000................... 287
 9   Exhibit Rugg 025 - HCFA Memo and survey, 1989.. 297
10   Exhibit Rugg 026 - E-mail from Shepherd,
11             6/23/2000................... 302
12   Exhibit Rugg 027 - National Symposium material. 309
13   Exhibit Rugg 028 - Letter from Dey, 7/18/2000.. 315
14   Exhibit Rugg 029 - 42 C.F.R. sections.......... 364
15   Exhibit Rugg 030 - State Plan Amendment 2/1/00. 374
16
17
18
19
20
21
22
```

```
                                                  Page 7
 1            P R O C E E D I N G S
 2
 3            VIDEOGRAPHER:  We are now recording and
 4   on the record.  My name is Andy Hoffman.  I am a
 5   certified legal video specialist on behalf of
 6   Henderson Legal Services.  Today is December 15,
 7   2008, and the time is 8:58 a.m.  This is the
 8   deposition of Ann Rugg, In Re:  Pharmaceutical
 9   Industry Average Wholesale Price Litigation.
10   This deposition is being taken at 109 State
11   Street, Montpelier, Vermont.  The court reporter
12   is Jane Eaton of Henderson Legal Services.
13   Counsel will please state their appearances and
14   the court reporter will administer the oath.
15            MR. KIM:  Sung W. Kim.  I am
16   representing the Dey entities in this case.
17            MR. FAUCI:  Jim Fauci here on behalf of
18   United States.
19            MR. DONOFRIO:  Mike Donofrio here on
20   behalf of the witness.
21            MR. FECHTER:  Earl Fechter here on
22   behalf of the witness.
```

```
                                                  Page 8
 1            THE REPORTER:  Counsel on the phone?
 2            MS. GEISLER:  Carol Geisler from Jones
 3   Day representing Abbott Laboratories, Inc.
 4
 5            A N N   R U G G,
 6   Having first been duly sworn, was examined and
 7   testified as follows:
 8
 9            EXAMINATION
10   BY MR. KIM:
11       Q.  Good morning, Ms. Rugg.
12       A.  Good morning.
13       Q.  Just going to go over some ground rules
14   for the deposition prior to starting.  So just
15   want you -- well, first, you understand that you
16   are testifying under oath today?
17       A.  I do.
18       Q.  And you understand that the oath is the
19   same oath that you would take in a court of law?
20       A.  I do.
21       Q.  And you understand that you have sworn
22   to tell the truth?
```

```
                                                  Page 9
 1       A.  I do.
 2       Q.  And do you also understand that if this
 3   case goes to trial, you can be called as a
 4   witness for any of the parties present here?
 5       A.  I do.
 6       Q.  Just to go over some ground rules.  Now
 7   if there's a question pending and you need a
 8   break, please let me know and I'll try to
 9   accommodate you.
10       A.  Okay.
11       Q.  I'd also ask that we try not to speak
12   over one another for the sake of the record.  And
13   if you could, just let me finish my question
14   before you answer and I'll do the same to let you
15   finish your answer before I ask another question.
16       A.  Okay.
17       Q.  I also ask that you answer questions
18   verbally rather than with a nod or with a head
19   shake.
20       A.  I understand.
21       Q.  So that your response can be
22   transcribed.  From time to time, your attorney
```

3 (Pages 6 to 9)

Page 306

1    A.  I see, okay.
2    Q.  In your understanding of spread, does
3  spread generally mean the spread between AWP and
4  AAC?
5    A.  AAC here being defined as what?
6    Q.  Actual Acquisition Cost.  Well, let me
7  rephrase the question then.  What is your
8  understanding of spread?
9    A.  Well, that there are discounts that are
10 recognized discounts in the business.  There
11 might be things like prompt pay discounts or
12 volume discounts or so there's the difference
13 between what the Average Wholesale Price is and
14 whatever discounts may be available as it reaches
15 the pharmacy.
16    Q.  So --
17    A.  So I was just saying that that is why
18 Vermont and other states apply a discount to AWP.
19    Q.  So the spread would be, would you say,
20 or would you agree that the spread would be the
21 difference between the AWP and the net price
22 that's paid by providers?

Page 307

1    A.  It certainly would be part of it, yes.
2  I mean, we haven't talked about all possible
3  components, but yes.
4    Q.  What other components are you?
5    A.  That's what I'm just -- I'm saying, you
6  know, that I recognize that there are discounts
7  that are available for things like paying
8  promptly or being a volume purchaser or, you
9  know, what is it, affiliated relationships like
10 stores will have with a distributor.  So there
11 are discounts in there.  So I would say that's
12 the spread, the discounts that are available
13 between what the wholesale price and what price
14 they can secure between the -- before it reaches
15 the pharmacy.
16    Q.  Okay.  And what is your understanding
17 of net price or Actual Acquisition Cost?
18    A.  Well, I can't say in the reading of the
19 whole of this.
20    Q.  Well, let's disregard --
21    A.  Yeah, okay.
22    Q.  What is your understanding of Actual

Page 308

1  Acquisition Cost?
2    A.  Using an expression that is expressly
3  decided here.
4    Q.  Yes.  What is your -- what is Vermont
5  Medicaid's understanding of actual acquisition
6  costs?
7    A.  If you're -- I'm torn because there's
8  big letters here, the AAC.
9    Q.  Does Vermont's understanding of Actual
10 Acquisition Cost include these discounts that you
11 were talking about, prompt pays, volume
12 discounts?
13       MR. FAUCI:  Objection to form.
14       THE WITNESS:  Uh-hum.  Vermont does
15 assume that there would be some discount off
16 Average Wholesale Price in the aggregate across
17 the business, yes.
18 BY MR. KIM:
19    Q.  So Vermont's understanding as AWP does
20 not equal Actual Acquisition Cost?
21    A.  That's correct.
22    Q.  And when did Vermont come to this

Page 309

1  understanding that Average Wholesale Price does
2  not equal Actual Acquisition Cost?
3    A.  I can't tell you the moment it dawned
4  on them.  But the reflection of a discount
5  against AWP is a reflection of that assumption.
6    Q.  Could that have been in 1989?
7    A.  I don't know.
8    Q.  Now we discussed briefly OIG reports
9  earlier today?
10   A.  Yes.
11   Q.  And did you know that in 1997 OIG
12 published a report which reported about a 45
13 percent discount that pharmacies were paying off
14 of AWP?
15   A.  I am not aware of that.
16   Q.  On national average?
17   A.  I'm not aware of that.
18   Q.  Could this report have been viewed by
19 any other people at Vermont Medicaid?
20   A.  It might very well have been.
21   Q.  Mark this as next exhibit.
22       (Exhibit Rugg 027 marked for