# EXHIBIT 112

Page 371

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------X

In re:   PHARMACEUTICAL INDUSTRY ) MDL No. 1456

AVERAGE WHOLESALE PRICE          ) Master File No.

LITIGATION                       ) 01-CV-12257-PBS

-------------------------------X

United States of America ex rel.) Hon. Patti B. Saris

Ven-A-Care of the Florida Keys, )

Inc., et al. v. Dey, Inc., et   ) 30(b)(6) VIDEO

al., Civil Action No.           ) DEPOSITION OF

05-11084-PBS, and United States ) NONPARTY STATE OF

of America ex rel. Ven-A-Care of) WYOMING DEPARTMENT

the Florida Keys, Inc., et al.  ) OF HEALTH by and

v. Boehringer Ingelheim Corp.,  ) through ROXANNE

et  al., Civil Action No.       ) HOMAR

07-10248-PBS, and U.S. ex rel.  )

Ven-A-Care of the Florida Keys, )    VOLUME II

Inc., v. Abbott Laboratories,   ) DECEMBER 3, 2008

Inc., Nos. 06-CV-11337-PBS and  ) CHEYENNE, WYOMING

07-CV-11618-PBS                 )

-------------------------------X

Page 372

1  Pursuant to Notice and the Federal Rules
2  of Civil Procedure, the 30(b)(6) deposition of
3  NONPARTY STATE OF WYOMING DEPARTMENT OF HEALTH, by
4  and through ROXANNE HOMAR, Volume II, taken by
5  Defendants, was held at 9:09 a.m., on Wednesday,
6  December 3, 2008, at 2800 W. Lincolnway, Cheyenne,
7  Wyoming, before Jason T. Meadors, Registered
8  Professional Reporter, Certified Realtime Reporter,
9  and Notary Public for the State of Colorado.

Page 373

1           APPEARANCES:
2
3  For Plaintiff-Relator Ven-A-Care of the Florida
4  Keys, Inc.
5
6       Susan Schneider Thomas, Esq.
7       Berger & Montague, P.C.
8       1622 Locust Street
9       Philadelphia, PA 19103
10      (215) 875-3000
11
12 For Defendants Boehringer Ingelheim Corp.,
13 Boehringer Ingelheim Pharmaceuticals, Inc.,
14 Boehringer Ingelheim Roxane, Inc., and Roxane
15 Laboratories, Inc.
16
17      Miriam Lieberman, Esq.
18      Kirkland & Ellis, LLP
19      200 East Randolph Drive
20      Chicago, IL 60601
21      (312) 861-2000
22

Page 374

1       APPEARANCES: (CONTINUED)
2
3  For Defendants Dey, Inc., Dey, L.P., Inc., and
4  Dey, L.P.
5
6       Lisa Khandhar, Esq.
7       Kelley Drye & Warren, LLP
8       101 Park Avenue
9       New York, NY 10178
10      (212) 808-7800
11
12
13 For Defendant Abbott Laboratories, Inc.
14 (By phone)
15
16      Tara A. Fumerton, Esq.
17      Jones Day
18      77 West Wacker Drive
19      Chicago, IL 60601
20      (312) 269-4335
21
22 (CONTINUED)

Page 375

1       APPEARANCES: (CONTINUED)
2
3  For State of Wyoming Medicaid and Roxanne Homar
4
5       K. Shaun Wilkerson, Esq.
6       State of Wyoming
7       Attorney General's Office
8       123 Capitol Bldg.
9       Cheyenne, WY 82002
10      (307) 777-3730
11
12
13 Also present:
14
15      Jennifer Kemper, Videographer

Page 376

```
 1            I N D E X
 2  WITNESS: ROXANNE HOMAR                    PAGE
 3      Examination by Ms. Thomas............ 378, 546
 4      Examination by Ms. Lieberman.............. 473
 5      Examination by Ms. Khandhar............... 495
 6      Examination by Ms. Fumerton............... 504
 7
 8        P L A I N T I F F ' S   E X H I B I T S
 9  NUMBER          DESCRIPTION              PAGE
10  Exhibit Plaintiffs-WY 001 - Methodology Table.. 405
11  Exhibit Plaintiffs-WY 002 - Page of Report..... 450
12  Exhibit Plaintiffs-WY 003 - WY00000870 to 871.. 450
13  Exhibit Plaintiffs-WY 004 - Vancomycin Table... 466
14
15         R O X A N E   E X H I B I T S
16  NUMBER          DESCRIPTION              PAGE
17  Exhibit Roxane-WY 020 - Survey of Costs........ 475
18
19         A B B O T T   E X H I B I T S
20  NUMBER          DESCRIPTION              PAGE
21  Exhibit Abbott-WY 003 - July 11, 1996, Memo.... 517
22  Exhibit Abbott-WY 004 - August 4, 1997, Memo... 517
```

Page 377

```
 1            P R O C E E D I N G S
 2
 3       VIDEOGRAPHER:  This is the videotape
 4  deposition of Roxanne Homar, taken in the matter
 5  of United States of America ex rel. Ven-A-Care of
 6  the Florida Keys, Incorporated, et al., versus
 7  Dey, Incorporated, et al., Civil Action Number
 8  05-11084-PBS, and the United States of America ex
 9  rel. Ven-A-Care of the Florida Keys,
10  Incorporated, et al., versus Boehringer Ingelheim
11  Corp., et al., Civil Action Number 07-10248-PBS -
12  - excuse me -- taken on December 3rd, 2008, at
13  9:09 a.m., taken at the Little America in
14  Cheyenne, Wyoming.
15       The court reporter is Jason Meadors,
16  and the videographer is Jennifer Kemper, for
17  Henderson Legal Services.
18       Counsel, please introduce yourselves
19  and state your appearances.
20       MS. LIEBERMAN:  This is Miriam
21  Lieberman with Kirkland & Ellis, representing
22  Roxane Laboratories, Inc., and certain other
```

Page 378

```
 1  entities affiliated with Boehringer Ingelheim
 2  Corporation.
 3       MS. KHANDHAR:  This is Lisa Khandhar
 4  with Kelley, Drye & Warren, representing the Dey
 5  defendants.
 6       MS. WILKERSON:  This is Shaun
 7  Wilkerson, representing Wyoming Medicaid.
 8       MS. THOMAS:  Susan Schneider Thomas,
 9  representing Ven-A-Care of the Florida Keys.
10  Tara?
11       MS. FUMERTON:  Tara Fumerton, from
12  Jones Day, representing Abbott Laboratories, Inc.
13
14            EXAMINATION
15  BY MS. THOMAS:
16     Q.  Ms. Homar, you understand that you are
17  still under oath in this proceeding?
18     A.  Yes.
19     Q.  All right.  Just as a matter of
20  background, the single State agency that is
21  appointed in Wyoming to administer the Medicaid
22  program is what, please?
```

Page 379

```
 1     A.  The Department of Health.
 2     Q.  Okay.  And the particular office that
 3  does the program administration?
 4     A.  The Office of Health Care Financing.
 5     Q.  And the office of Medicaid is what?
 6     A.  One of the offices under the Office of
 7  Health Care Financing, along with our Office of
 8  Pharmacy Services.
 9     Q.  Now, in addition to reining in prices
10  for pharmaceuticals as one of the jobs that you
11  pursue, how else do you attempt to -- or does the
12  Wyoming Medicaid program attempt to manage its
13  pharmaceutical budget?
14       MS. LIEBERMAN:  Objection.
15     A.  We have a whole number of tactics or
16  types of programs that we do.  It's kind of like
17  the spokes on a wheel.  I guess I would say we
18  have a prior authorization program associated
19  with our preferred drug list.  We have things
20  regarding reimbursement.  We have utilization
21  programs that look at not only -- we have drug
22  utilization review, and through that, we have
```

3 (Pages 376 to 379)

Page 508

1  know there aren't the broad swings in -- in the
2  difference between the acquisition and the
3  published AWP.
4      Q.  So Wyoming knows that AWP, even for
5  branded drugs, does not represent an actual
6  average of prices but instead represents some
7  published price that is higher than the actual
8  average prices paid by providers; is that
9  correct?
10         MS. THOMAS:  Objection to form.
11     A.  I'll need you to repeat that question.
12         MS. FUMERTON:  Could you please read
13 back the question?  The court reporter?
14         (Last question read.)
15     A.  You're not stating a correct statement,
16 in my opinion.  There is a -- a ceiling that is
17 recognized with AWP in relation to brand name
18 drugs.  That same ceiling does not hold in
19 reference to generic drugs.
20     Q.  (By Ms. Fumerton)  What is the ceiling
21 that's -- that you're referring to with respect
22 to branded drugs?

Page 509

1      A.  It is recognized that there aren't
2  broad swings in the difference between
3  acquisition costs and published AWP and brand
4  name drugs.
5      Q.  But you do recognize for even branded
6  drugs that AWP is higher than the acquisition
7  cost providers, correct?
8         MS. THOMAS:  Objection to form.
9      A.  Generally, I think I answered that
10 question yes.
11     Q.  (By Ms. Fumerton)  When did you first
12 become aware that AWP, the published AWP, was
13 higher than acquisition costs for branded drugs?
14        MS. THOMAS:  Objection to form.
15     A.  I don't have a particular time, but I
16 know I became aware of it.  Again, it was an
17 evolutional process trying to figure out and
18 understand the complicated world of pricing, as
19 driven by manufacturers.
20     Q.  (By Ms. Fumerton)  Well, Wyoming
21 Medicaid, at least for the time period of 1991 to
22 the present, to your knowledge, has always

Page 510

1  discounted a certain amount off of AWP for its
2  reimbursement, correct?
3      A.  Yes, that is correct.
4      Q.  And Wyoming did that because it
5  understood that AWP, the published AWP, did not
6  actually represent the prices that were being
7  paid by providers; is that correct?
8         MS. THOMAS:  Objection to form.
9         MS. WILKERSON:  Objection.
10     A.  We understood it to represent an
11 average.
12     Q.  (By Ms. Fumerton)  So you understood
13 that AWP represented an average price and that
14 Wyoming, by discounting it by 4 percent, intended
15 to reimburse providers, on average, of 4 percent
16 below their cost for ingredients, for the cost of
17 the drug?
18     A.  That reference of discounting it off 4
19 percent, I don't think, ever represented a cost
20 for the drug.  It was the -- the discount was off
21 the average wholesale price.  If it was off -- if
22 you're saying cost to the pharmacies -- that's

Page 511

1  what I understood you to say.  Is that what you
2  meant?
3      Q.  Right.  And that's -- and you said
4  there's a difference, because average wholesale
5  price has never represented the actual average
6  wholesale price to that provider to pay, correct?
7      A.  You have to speak about it in different
8  terms between brands and generics.
9      Q.  Well, I thought we just established
10 that for -- even for branded drugs, that you
11 expected that AWP would be higher than the
12 average price that was being paid by a provider.
13     A.  Right, with a ceiling.  We didn't see
14 that same thing in generics.  We saw broad swings
15 in generics.
16     Q.  But AWP has always, in your view,
17 represented a price that was going to be higher
18 than the price that was paid by providers,
19 correct?
20     A.  To some degree.  And with wide
21 variation.
22     Q.  Now, are you familiar with the fact

36 (Pages 508 to 511)