# EXHIBIT 151

## AFFIDAVIT OF RON GOTTRICH

I, Ron Gottrich, declare under penalty of perjury:

1. From February 1980 to March 2004, I worked in the Illinois Department of Public Health (IDPH). From approximately 1981 to 1994, I also served as a Consultant Pharmacist with the Illinois Department of Public Aid (IDPA), the state agency which administered Illinois Medicaid's pharmacy benefit. From approximately 1994 to the end of my tenure at IDPH, I continued to have discussions with IDPA officials on matters relating to Illinois Medicaid's pharmacy benefit.

2. In my role as a Consultant Pharmacist, I worked extensively with IDPA staff. Among other things, I was involved in setting maximum allowable costs for generic products, managing the program's drug file and formulary, and overseeing prior authorization requirements. I was very familiar with the policies underlying Illinois's reimbursement to providers for dispensing prescription drugs to Illinois citizens eligible to receive Medicaid assistance.

3. During the entirety of my time at IDPH, I was aware that the Average Wholesale Prices, or "AWPs," published in the drug compendia, such as *Red Book* and *Blue Book/First Databank*, were list prices not reflective of the actual prices – net of discounts, rebates, and chargebacks – paid by pharmacies in the marketplace. In particular, I was aware that the differences between AWPs published in the compendia and the actual prices paid in the marketplace were significantly greater for generic drugs. I was also aware that the difference between AWPs published in the compendia and the actual prices paid in the marketplace could be substantial for intravenous

1

solutions (such as sodium chloride and dextrose) and injectable drugs commonly infused or injected into patients. Based on my discussions with them, I understand that these facts were well known among the IDPA staff who worked with Illinois Medicaid's pharmacy benefit.

4. It was commonly discussed amongst those who administered Illinois Medicaid's pharmacy benefit that the dispensing fees paid by Illinois Medicaid were not sufficient to cover pharmacies' cost to dispense medication to Medicaid participants, much less provide a profit. I recall discussions amongst those who administered Illinois Medicaid's pharmacy benefit that any updated cost of dispensing study would highlight the inadequacy of Illinois Medicaid's dispensing fee.

5. It was also commonly discussed amongst those who administered Illinois Medicaid's pharmacy benefit that Illinois Medicaid's reimbursement formula for ingredient cost provided a margin relative to the cost of the drug, and that this margin served to both offset the inadequacy of the dispensing fee and compensate for the fact that Illinois Medicaid did not reimburse drug claims in a timely manner.

6. In the course of my time at IDPH, I routinely spoke with pharmacists over the phone and at meetings around the state which I attended. Often, I was asked to speak at meetings attended by Illinois pharmacists. I recall specifically discussing with other Illinois pharmacists the fact that the margin paid on ingredient cost served to offset the acknowledged inadequacy of Illinois Medicaid's dispensing fee and the delay in receiving payments from Illinois Medicaid.

7. Attached to this Declaration is a June 12, 2000 letter from John Carmody, President of Cottage Home Options/Option Care, to three Illinois legislatures. Mr. Carmody's letter discusses Illinois Medicaid's reduction in reimbursements for the drug component of IV medications based on an investigation by the federal Department of Justice. Mr. Carmody's letter refers to prior discussions he recalls having with me relating to Illinois's reimbursement of IV medications. His letter states, in part:

> "Some years ago when the State of Illinois developed its current reimbursement mechanism, I had many discussions with the then pharmacy coordinator, Ron Gottrich concerning the mechanism for reimbursing IV medications. It is and was understood that the dispensing fee in NO WAY is able to compensate the pharmacy organization for the costs of preparing and delivering compounded IV solutions, HOWEVER, it was further understood that IV pharmacies were and are able to purchase pharmaceuticals at well below AWP pricing thus partially compensating them for their costs from the drug component."[1]

8. While I do not recall the specifics of discussions with Mr. Carmody, I do recall having conversations with Mr. Carmody concerning Illinois Medicaid's pharmacy benefit. The discussions referenced by Mr. Carmody in his letter are consistent with my recollection of numerous conversations with pharmacists over the years where it was recognized and understood that the margin paid on ingredient cost served to offset the acknowledged inadequacy of Illinois Medicaid's dispensing fee and the delay in receiving payment from Illinois Medicaid. Furthermore, I would agree that pharmacies dispensing IV medications have higher costs that are not seen in the traditional retail pharmacy practice. Finally, as noted, it was also well understood by pharmacists and

---

[1] While I worked extensively with IDPA on Medicaid pharmacy issues, I never served as the pharmacy coordinator.

3

Medicaid officials with whom I spoke that the difference between AWPs published in the compendia and the actual prices paid in the marketplace could be substantial for intravenous solutions and other injectable and infusion drugs commonly used by IV pharmacies. Based on my previous work in a hospital pharmacy, I was aware that published AWPs for these types of drugs could be several times greater than actual prices paid in the marketplace.

FURTHER AFFIANT SAYETH NAUGHT.

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I certify that the statements set forth in this affidavit are true and correct.

_____
Ron Gottrich

6-21-09
Date

JCAHO Accredited
**COTTAGE HOME** *options*                                             **option**care

**SPECIALISTS IN HOME HEALTH SERVICES AND PRODUCTS**

| ☒ 427 East Fremont Street<br>Galesburg, IL 61401<br>(309) 343-9031<br>(309) 343-8057 Fax | ☐ 952 East Eldorado<br>Suite 200<br>Decatur, IL 62521<br>(217) 423-6004<br>(217) 423-9882 Fax | ☐ 4239 War Memorial Drive<br>Suite 203<br>Peoria, IL 61614<br>(309) 688-1780<br>(309) 688-1824 Fax | ☐ 320 North Third Street<br>Suite 416<br>Burlington, IA 52601<br>(319) 752-0483<br>(319) 752-0854 Fax |

6-12-00

Congressman Lane Evans
✓ Senator Carl Hawkinson
Representative David Hultgren

Gentlemen:

Please allow me to thank you all in advance for what I assume will be your usual sympathetic attention to the item which I am bringing before you today.

Our company provides home health services through a broad area of central Illinois and eastern Iowa; these services include home health nursing and therapy, medical equipment and perhaps, most importantly, home infusion or home intravenous services. This last area is somewhat unique in that far fewer companies provide these services than do the aforementioned others and do to our lack of significant numbers of providers many times our voice is lost in the bureaucratic jungle of lobbyists and power brokers. A significant issue regarding governmental reimbursement for our services has suddenly occurred and it is one which I believe deserves your attention in order that access to care for our disadvantaged citizens does not occur.

On May 1st of this year the Illinois Department of Public Aid drastically reduced reimbursement for the "drug component" of IV medication services based upon an investigation which was promulgated by the Federal department of Justice. A copy of a memorandum from the State of New York Attorney General is enclosed along with news clippings from USA Today which offer an explanation of why the department has taken the step of drastically reducing reimbursement. For your edification, approximately 10 other states have also reduced reimbursement and Medicare has indicated its intention to follow later this year.

This issue resolves around the concept of AWP or average wholesale price of drugs, a concept which quite frankly has outlived its usefulness in today's marketplace. Prescription drugs are routinely priced via some multiple of AWP, sometimes with a fee for dispensing the medication. In the case of Medicaid, drugs are costed at AWP less either 10 or 12% and in the case of Medicare, a discount of 5% is attached. A minimal dispensing fee is added for Medicaid prescriptions and no dispensing fee for Medicare prescriptions.

Some years ago when the State of Illinois developed its current reimbursement mechanism, I had many discussions with the then pharmacy coordinator, Ron Gottrich concerning the mechanism for reimbursing IV medications. It is and was understood that the dispensing fee in NO WAY is able to compensate the pharmacy organization for the costs of preparing and delivering compounded IV

*"We have the solution for you"*

CONFIDENTIAL                                                                                    AWP-IL-00016908

solutions, HOWEVER, it was further understood that IV pharmacies were and are able to purchase pharmaceuticals at well below AWP pricing thus partially compensating them for their costs from the drug component. For your edification there are significant costs associated with the preparation and delivery of sterile intravenous products for patient home use that are NOT seen in the standard pharmacy "pour and count" practice, i.e. traditional pharmacy practice. Such costs include accreditation by JCAHO (Joint Commission on Accreditation of Homecare Organizations), which as an aside for our last accreditation was $27,000; significantly more pharmacist time which must be spent on professional activities, delivery costs and certainly far greater time spent in compounding activities - illustratively it takes less than a minute to count pills and label a vial while it may take hours to compound complex sterile IV products.

What I find incredibly interesting is that ONLY IV medications have been targeted for the reduction in AWP prices that is indicated in the attached memorandum. Oral medications, which surely account for the lion's share of pharmacy costs are NOT targeted. I can assure you that pharmacies receive every bit as deep of a discount on oral drugs as we IV providers do on IV products, yet general pharmacy products have been left untouched. I might also indicate to you that my pharmacy, which is one of the larger in the area is unable to purchase anything at the new revised pricing which has been issued. If we therefore assume that I am to cover my costs under the dispensing fee, which both sides agree is inadequate to do so, it should leave me with no rational business alternative than to reduce my services to Medicaid and Medicare patients. At this point we intend to allow our private business to subsidize the losses we will occur under Medicaid and Medicare, however, I am not certain that other providers will do the same, nor that we can do this forever.

Many states have NOT put into place the absurd price rollbacks that have created this crisis and I urge you learned gentlemen to persuade the Illinois department of Public Aid to either reverse the rollback on costs or greatly increase the dispensing fees. The alternative, I fear, is that many disadvantaged recipients of home intravenous services will be left without an alternative to institutionalization. The department should also remember their tacit agreement of years ago that allowed providers such as myself to service their clients and cover our costs. Perhaps the time has come to adequately reimburse pharmacy providers for the services associated with product dispensation, rather than to invent systems that rely on "devious" reimbursement methods which make great headlines but little or no sense.

I would be glad to discuss this serious issue with any of you at any time.

Thank you,

John Carmody BS, MS, RPh
President

CONFIDENTIAL

AWP-IL-00016909