# EXHIBIT 155

Newark, DE

Page 273

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

--------------------------------X

IN RE: PHARMACEUTICAL INDUSTRY     ) MDL No. 1456

AVERAGE WHOLESALE PRICE            ) Civil Action No.

LITIGATION                         ) 01-12257-PBS

--------------------------------X

THIS DOCUMENT RELATES TO:          ) Hon. Patti B.

United States of America ex rel.   ) Saris

Ven-A-Care of the Florida Keys,    )

Inc. v. Dey, Inc., et al., Civil   )

Action No. 05-11084-PBS; and       )

United States of America ex rel.   )

Ven-A-Care of the Florida Keys,    )

Inc. v. Boehringer Ingelheim       )

Corp., et al., Civil Action No.    )

07-10248-PBS                       )

--------------------------------X

    Videotaped deposition of

 THE DELAWARE DIVISION OF MEDICAID AND MEDICAL

  ASSISTANCE by CYNTHIA DENEMARK - VOLUME II

   December 10, 2008 - Newark, Delaware

Page 274

```
 1        A P P E A R A N C E S:
 2
 3   Counsel for the United States of America
 4       UNITED STATES ATTORNEY'S OFFICE
 5       BY:  BARBARA HEALY SMITH, ESQUIRE
 6       barbara.h.smith@usdoj.gov
 7       Assistant U.S. Attorney
 8       John J. Moakley U.S. Courthouse
 9       1 Courthouse Way
10       Boston, Massachusetts 02110
11       617-748-3100
12
13   Counsel for the State of Delaware
14       DEPARTMENT OF JUSTICE
15       BY:  A. ANN WOOLFOLK, ESQUIRE
16       ann.woolfolk@state.de.us
17       BY:  SUSAN PURCELL, ESQUIRE
18       spurcell@state.de.us
19       Carvel Office Building, 6th Floor
20       820 N. French Street
21       Wilmington, Delaware 19801
22       302-577-8400
```

Page 275

```
 1        A P P E A R A N C E S: (CONTINUED)
 2
 3   Counsel for EDS and the Witness
 4       EDS, LLC
 5       BY:  ANNE SHUTTEE, ESQUIRE
 6       anne.shuttee@eds.com
 7       5400 Legacy Drive
 8       H3-3A-05
 9       Plano, Texas 75024
10       972-605-5509
11
12   Counsel for Dey, Inc., Dey, L.P.
13   and Dey L.P., Inc.
14       KELLEY DRYE & WARREN LLP
15       BY:  BRENDAN J. CYR, ESQUIRE
16       bcyr@kelleydrye.com
17       101 Park Avenue
18       New York, New York 10178
19       212-808-5021
20
21
22   (CONTINUED)
```

Page 276

```
 1        A P P E A R A N C E S: (CONTINUED)
 2
 3   Counsel for Abbott Laboratories
 4       JONES DAY
 5       BY:  HILARY A. RAMSEY, ESQUIRE
 6       haramsey@jonesday.com
 7       51 Louisiana Avenue, N.W.
 8       Washington, D.C. 2001-2113
 9       202-879-3939
10
11
12   ALSO PRESENT:
13
14       Chris Weiss, Videographer
```

Page 277

```
 1                I N D E X
 2
 3   WITNESS:  Cynthia Denemark              PAGE
 4       Examination By Ms. Ramsey............ 280, 490
 5       Examination By Ms. Healy Smith............ 454
 6       Examination By Mr. Cyr.................... 488
 7
 8
 9     A B B O T T   D E L A W A R E   E X H I B I T S
10   NUMBER         DESCRIPTION                 PAGE
11   Exhibit Abbott-DE 001 - Abbott's Cross-Notice.. 336
12   Exhibit Abbott-DE 002 - Document Produced by
13                 Ven-A-Care............. 408
14   Exhibit Abbott-DE 003 - Document Supplied by
15                 Cynthia Denemark with
16                 info about Delaware's
17                 DMAC Reimbursement..... 436
18   Exhibit Abbott-DE 004 - Two-page Document.
19                 Second Page is a Letter
20                 Dated 06/23/95 from
21                 Cynthia Denemark to
22                 Sue Gaston............. 437
```

2 (Pages 274 to 277)

Page 362

1   Delaware's knowledge about the inadequacy of the
2   dispensing fee?
3       A.  I had discussions with Beth Laucius
4   about general conversations about pharmacy
5   reimbursement.
6       Q.  I'm sorry.  Who was the individual that
7   you listed?
8       A.  Beth Laucius.
9       Q.  Can you spell her last name, please?
10      A.  L-a-u-c-i-u-s.
11      Q.  And who was Ms. Laucius?
12      A.  Ms. Laucius was an employee of the
13  Division that I reported to in some areas of my
14  capacity as pharmacist consultant related to
15  matters of administering the program.
16      Q.  What discussions did you have relating
17  to the dispensing fee in 1993?
18      A.  It was probably in line with what had
19  been submitted for the budget for changes in
20  dispensing fee and, based on my recollection,
21  that those budget requests and changes were
22  turned down.

Page 363

1       Q.  So is it fair to say that Delaware
2   wanted to increase its dispensing fee, but
3   because of political reasons or budgetary reasons
4   it was unable to do so?
5           MS. HEALY SMITH:  Objection.
6           THE WITNESS:  I would agree to the
7   budgetary constraints.  I don't know anything
8   related to the political nature of it.
9   BY MS. RAMSEY:
10      Q.  Now, is it fair to say that because of
11  the frustrations relating to the dispensing fee
12  level, Delaware knowingly allowed margins on the
13  ingredient cost to supplement the inadequate
14  dispensing fee?
15          MS. HEALY SMITH:  Objection.
16          THE WITNESS:  I don't think I ever
17  mentioned that anybody was frustrated.
18  BY MS. RAMSEY:
19      Q.  Well, you indicated that the Delaware
20  Medicaid Program wanted to increase the
21  dispensing fee but because of budgetary reasons
22  you were not able to do so; is that correct?

Page 364

1       A.  That's correct.
2       Q.  Okay.  So is it fair to say that
3   because the Delaware Medicaid Program was unable
4   to increase dispensing fees due to budgetary
5   constraints that it was aware that providers
6   relied upon a margin on the ingredient costs in
7   some instances supplement for the inadequate
8   dispensing fee?
9       A.  Yes.
10      Q.  But it was Delaware's Medicaid or --
11  excuse me.  It was Delaware's belief that, in the
12  aggregate, the payment was reasonable; --
13          MS. HEALY SMITH:  Objection.
14  BY MS. RAMSEY:
15      Q.  -- is that correct?
16      A.  No.
17      Q.  No?  Why not?
18      A.  When I talk about aggregate, I'm not
19  speaking about ingredient costs and dispensing
20  fee as the aggregate of the cost.  My reference
21  to aggregate was, in looking at all of the NDCs
22  that are covered, and in the aggregate of all of

Page 365

1   the claims, is this a reasonable reimbursement
2   methodology, so we're defining -- we're using two
3   different sets to -- to talk about aggregate.
4           So now I understand that you're talking
5   about -- when you talk about aggregate, that's
6   the aggregate of the ingredient costs and the
7   dispensing fee, which is not what I was talking
8   about.
9           When I talk about aggregate, I'm saying
10  all of the claims.
11      Q.  I see.
12      A.  So can you ask your question again now
13  that I understand what aggregate you're
14  referencing?
15          MS. RAMSEY:  Sure do you want to --
16          THE REPORTER:  Sure.
17          MS. RAMSEY:  -- re-read the question?
18          (Requested testimony read back.)
19  BY MS. RAMSEY:
20      Q.  Does the witness understand the
21  question?
22      A.  I understand the question.

24 (Pages 362 to 365)