# EXHIBIT 159

EXHIBIT
Abbott 492

From: David Shepherd [DShepher@dmas.state.va.us]
Sent: Friday, June 23, 2000 3:57 PM
To: Martha.McNeill@tdhex.tdh.state.tx.us
Subject: Re: [NMPAA-talk] NAMFCU Drug Pricing Issue

National Medicaid Pharmacy Administrators

Thank You - David Shepherd - Virginia

>>> Cody.C.Wiberg@state.mn.us 06/22/00 07:09PM >>>
National Medicaid Pharmacy Administrators

Greetings from Minnesota,

Thought I would share with you the text of e-mail that I sent to First DataBank last week:

> "I am the Pharmacy Program Manager for the Minnesota Department of Human
> Services (DHS). As you are aware, First DataBank (FDB) has been working with
> representatives of state Medicaid Fraud Control Units on drug pricing
> issues. Since early May, FDB has been reporting to state Medicaid agencies
> "AWPs" for approximately 428 NDCs that are different than the real AWP that
> is being reported to your commercial customers. In Minnesota, pharmacy
> providers are usually reimbursed at AWP - 9% plus a dispensing fee. After
> checking local wholesale prices, I have discovered that the new "AWP" you
> are reporting to us is often at or below the actual acquistion cost (AAC)
> for which pharmacies can purchase the drugs. After subtracting an additional
> 9%, pharmacies will actually be reimbursed less than their cost for those
> products - even after adding back a dispensing fee. I have received a number
> of complaints from pharmacies about reimbursement. Those pharmacies have
> stated that they will stop supplying the products in question to our
> recipients if the new "AWPs" remain in effect.
> In Minnesota, the reimbursement rate for drugs was established in statute by
> our legislature. While the legislators did not define AWP, we believe that
> their intent was to use "AWP" to mean a single estimate of wholesale price
> as published in a compendia such as Redbook or by First DataBank. My
> understanding is that FDB is now publishing two sets of "AWPs" for the 428
> drugs in question - one for Medicaid agencies and one for everyone else.
> The fact that the legislators chose to estimate actual acquistion cost at
> AWP - 9% indicates that they were aware that the single, published AWP was
> actually higher than the price for which most pharmacies could buy drug
> products. Had they known that AWP would be reduced to AAC, they would not
> have established a 9% discount off of AWP.
> Consequently, the Minnesota Department of Human Services has determined that
> we must use the AWPs that FDB is reporting to its commercial customers and
> NOT the "AWPs" that you are currently reporting to us for the 428 drugs in
> question. DHS staff intends to bring this issue to the attention of our
> legislature during the next scheduled session. But for now, I am formally
> requesting that First DataBank supplies the Minnesota Department of Human

Rodriguez
EXHIBIT NO. 207
10/11/06
G. Barker

Services with the AWPs it supplies to other commercial, non-Medicaid customers as soon as possible. Please feel free to contact me with any questions or concerns."

First DataBank contacted me today and confirmed that they will honor this request. Like many of you, I have spent a considerable amount of time on this issue. (I even spent half of one Sunday in a pharmacy verifying their actual acquisition cost for over one hundred of the drugs in question.
For almost all of those drugs AAC was at or above the new "AWP"). A number of pharmacy providers, ranging from independents to chains to specialty infusion pharmacies have written or called to complain. Many of them called about specific drugs after realizing that they were being reimbursed at less than cost.

There is no doubt in my mind that NAMFCU is correct when it points out that the spread between AWP and AAC is too large for many, even most, of these drugs. The question is – what should be done about it? Almost everyone who is familiar with pharmacy reimbursement knows that AWP "Ain't What's Paid". That's why most states and private pharmacy benefit managers reimburse pharmacies at AWP minus a discount (anywhere from 5-15% or more).
It is also one reason why there is a federal upper limit list and why many states and private PBMs have maximum allowable cost programs. The spread between AAC and AWP is taken into account when determining what to pay for a dispensing fee. For drugs not on the FUL, 42CFR447.331(b) states:

"b) Other drugs. The agency payments for brand name drugs certified in accordance with paragraph (c) of this section     and drugs other than multiple source drugs for which a specific limit has been established under Sec. 447.332 must     not exceed in the aggregate, payment levels that the agency has determined by applying the lower of the-- (1)     Estimated acquisition costs plus reasonable dispensing fees established by the agency; or (2) Providers' usual     and customary charges to the general public".

Some public and private third party payers have purposely kept the dispensing fee low precisely because there is a spread between AWP and AAC. In fact, when pharmacy organizations have sought an increase in dispensing fees, the AWP spread has been pointed out to legislators. It is true that ingredient reimbursement is supposed to be based on estimated acquistion cost. The ancillary costs of dispensing the drug are supposed to be accounted for by the dispensing fee. If the AWP spread disappears, the dispensing fee may have to be increased, especially for many of the 428 drugs currently in question. Many of these drugs require some type of compounding or other preparation.

The point, I guess, is that NAMFCU's solution is really a substantial change that may very well have a negative impact on pharmacy providers and, even more importantly, patients. In Minnesota, we believe that something should be done about the AWP spread. However, the problem should be approached in one of two ways:

1. State Medicaid agencies should be allowed to work out their own solutions (by increasing the discount off of AWP, adjusting the dispensing fee, establishing MACs, etc); or
2. A national solution should be pursued that accounts for all aspects of the problem and that is developed by and with input from all interested parties (NAMFCU, HCFA, state Medicaid agencies, private third party payers, First DataBank, pharmacy organizations, etc).

Cody Wiberg, Pharm.D., R.Ph.
Pharmacy Program Manager
Minnesota Department of Human Services

(651) 296-8515
(651) 282-6744 (FAX)

To unsubscribe, write to NMPAAtalk-unsubscribe@listbot.com

To unsubscribe, write to NMPAAtalk-unsubscribe@listbot.com