# EXHIBIT 172



*experience does matter*

**CASE:  In re: Pharmaceutical Industry Average Wholesale Price Litigation**
**DATE:  August 28, 2007**

Enclosed is the Original of the transcript of the testimony of Catherine V. Babington along with the errata sheet in the above-titled case.  Please have the witness read the deposition and sign the signature page before a Notary Public.

After the signature page has been notarized, please return the original transcript and errata sheets to the custodial attorney within 30 days of receipt for proper filing.

Thank you for your attention to this matter and please feel free to contact us with any questions or concerns.

Sincerely,

Henderson Legal Services

Encl.

Henderson Legal Services
Phone: 202-220-4158
Fax: 202-220-4162
Website: www.hendersonlegalservices.com

Babington, Catherine V. CONFIDENTIAL - ATTORNEYS' EYES ONLY                August 28, 2007
Chicago, IL

Page 1

IN THE UNITED STATES

DISTRICT OF MASSACHUSETTS

IN RE:  PHARMACEUTICAL            )
INDUSTRY AVERAGE WHOLESALE        )
PRICE LITIGATION                  ) MDL No. 1456
                                  ) Civil Action No.
THIS DOCUMENT RELATES TO:         ) 01-CV-12257-PBS
                                  )
ALL CASES                         )
                                  ) Judge Patti B. Saris

**************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

CATHERINE V. BABINGTON

August 28, 2007


CONFIDENTIAL, ATTORNEYS' EYES ONLY


**************************************************

Page 2

```
 1            NO. D-1-GV-04-001286
 2
 3  THE STATE OF TEXAS      ) IN THE DISTRICT COURT
 4                          )
 5  ex rel.                 )
 6                          )
 7  VEN-A-CARE OF THE       )
 8  FLORIDA KEYS, INC.,     )
 9                          )
10       Plaintiffs,        )
11                          )
12  VS.                     ) TRAVIS COUNTY, TEXAS
13                          )
14  ABBOTT LABORATORIES, INC., )
15  ABBOTT LABORATORIES, and   )
16  HOSPIRA, INC.,          )
17                          )
18       Defendants.        ) 201ST JUDICIAL COURT
19  *************************************************
20       ORAL AND VIDEOTAPED DEPOSITION OF
21  CATHERINE V. BABINGTON, taken in the
22  above-entitled cause pursuant to the Federal
```

Page 3

```
 1  Rules of Civil Procedure of the United States
 2  District Courts, pertaining to the taking of
 3  depositions, taken before JANICE M. KOCEK, a
 4  Notary Public within and for the County of Cook,
 5  and the State of Illinois, and a Certified
 6  Shorthand Reporter, taken at 77 West Wacker
 7  Drive, Suite 3500, Chicago, Illinois, on the 28th
 8  day of August, 2007, at the hour of 9:10 a.m.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

Page 4

```
 1              A P P E A R A N C E S
 2  FOR THE PLAINTIFF OF THE STATE OF TEXAS:
 3       MS. MARGARET MOORE
 4       Assistant Attorney General
 5       Antitrust & Civil Medicaid Fraud Division
 6       P.O. Box 12548
 7       Austin, Texas 78711-2548
 8
 9  FOR THE PLAINTIFF UNITED STATES OF AMERICA:
10       MR. GEJAA T. GOBENA
11       United States Department of Justice
12       Civil Division
13       Commercial Litigation - Fraud Section
14       601 D Street, NW
15       PHB-9028/P.O. Box 261
16       Washington, DC 20044
17
18
19
20
21
22
```

Page 5

```
 1       A P P E A R A N C E S (CONTINUED)
 2  FOR THE PLAINTIFF THE STATE OF ARIZONA
 3  AND MDL PLAINTIFFS:
 4       MS. AMBER M. NESBITT
 5       Wexler Toriseva Wallace
 6       55 West Monroe Street
 7       Suite 3300
 8       Chicago, Illinois 60603
 9
10  FOR THE PLAINTIFF THE STATE OF CALIFORNIA:
11       MR. ELISEO SISNEROS
12       Deputy Attorney General
13       BMFEA
14       Bureau of Medi-Cal Fraud & Elder Abuse
15       State of California Department of Justice
16       110 West A Street #1100
17       San Diego, California 92101
18
19
20
21
22
```

2 (Pages 2 to 5)

Page 62

1   BY MR. GOBENA:
2       Q.  But as a general proposition, when,
3   when you're talking about a position paper that
4   the company is taking that's going to be in the
5   public sphere on, on public policy, would you
6   have been involved in any approval process on
7   behalf of Public Affairs?
8           MR. DALY:  Object to the form.
9           THE WITNESS:  Could you ask me the
10  question again?
11          THE WITNESS:  The court reporter can
12  read back that.
13              (Record read as requested.)
14          MR. DALY:  Same objection.
15          THE WITNESS:  It was likely that I
16  would have been involved.
17  BY MR. GOBENA:
18      Q.  Your sign-off would have been required
19  on behalf of Public Affairs for that -- any
20  approval such as the one described on this
21  document to have taken place?
22          MR. DALY:  Objection.  Sorry, objection

Page 63

1   to the form.
2           THE WITNESS:  I can't say that my
3   sign-off would have been required.  It's likely
4   the vice president of Public Affairs would review
5   a position of the company.
6   BY MR. GOBENA:
7       Q.  Well, if you -- if you weren't the
8   person to sign-off on it, who within your shop
9   would have the -- would have had the authority to
10  approve or disapprove a proposed position paper
11  on Medicare reform?
12          MR. DALY:  Object to the form.
13          THE WITNESS:  I can't say with
14  certainty.
15  BY MR. GOBENA:
16      Q.  Do you know whether this position paper
17  that is attached here to this exhibit was ever
18  approved by Public Affairs?
19      A.  I don't know for certain.
20      Q.  I believe you testified earlier that
21  you knew James Miller; is that correct?
22      A.  Correct.

Page 64

1       Q.  And that you had worked with him,
2   correct?
3       A.  Correct.
4       Q.  All right.  Okay.  Did you know that
5   Mr. Miller gave a deposition in connection with
6   this case that -- for which you're appearing
7   today?
8       A.  No.
9       Q.  Okay.  Well, Mr. Miller was asked about
10  this report, this proposed paper, and he
11  testified that Public Affairs never approved it.
12          Do you have any recollection of Public
13  Affairs in November of 1996 not approving or
14  disapproving of a position paper that Abbott was
15  going to take on Medicare reform?
16          MR. DALY:  Before you answer, I just
17  want to object in the sense of -- I'm not saying
18  you characterized it right or wrong.  All I want
19  to do is let the witness know who said it
20  wasn't.  She didn't know he was deposed.
21          That you don't necessarily have to
22  accept what Mr. Gobena says that Mr. Miller

Page 65

1   testified to.
2           THE WITNESS:  Uh-huh.
3           MR. DALY:  But I'm not saying he did it
4   wrong.  But that was just sort of a prefatory
5   remark.  So with that objection, you can go ahead
6   and answer.
7           THE WITNESS:  Uh-huh.  So I would just,
8   you know, again state I'm not familiar with this
9   document.  I don't remember it.  And I don't
10  remember whether we did or did not have any
11  involvement with it.
12  BY MR. GOBENA:
13      Q.  But like I said, you worked with
14  Mr. Miller previously, though, correct?
15      A.  Yes.
16      Q.  Did you believe him to be an honest
17  person?
18          MR. DALY:  Object to the form.
19          THE WITNESS:  Yes.
20  BY MR. GOBENA:
21      Q.  So if he recalls that Public Affairs
22  did not approve of this report, you have no

17 (Pages 62 to 65)

Page 66

```
 1   reason to question his, his statement in that
 2   regard; do you?
 3           MR. DALY:  Object to the form.
 4           THE WITNESS:  You know, I'm not going
 5   to speculate on whether he may or may not have
 6   remembered.  I don't know.
 7         MR. GOBENA:  I don't believe this was
 8   previously marked in a deposition, so I guess
 9   we'll have it marked here now.  I can't recall
10   what the next number is.
11           THE REPORTER:  Plaintiff's Exhibit 1302.
12           MR. GOBENA:  Plaintiff's Exhibit 1302.
13               (Plaintiff's Exhibit 1302
14                for Identification
15                was so marked.)
16   BY MR. GOBENA:
17     Q.  I'm actually not going to ask you about
18   the attachment.  I'm just going to ask you about
19   the cover memo, so why don't you just look at
20   that.
21     A.  Okay.  Okay.
22     Q.  Okay.  You'll see on the top right
```

Page 67

```
 1   corner this is a memorandum from Richard Rieger,
 2   and it says here his title is Manager for
 3   Strategic Planning.
 4         Does this all -- at all, that title at
 5   all refresh your recollection any more about who
 6   Mr. Rieger was?
 7     A.  It does not.
 8     Q.  The memorandum is dated December 6th,
 9   1996 and there's a bunch of addressees there
10   listed, including yourself?
11     A.  Yes.
12     Q.  And there's some other -- there's some
13   names that we've seen from other documents that
14   may be familiar, such as Mr. Buell?
15     A.  Yes.
16     Q.  Ms. Tobiason?
17     A.  Yes.
18     Q.  Mr. Tootell, Mr. Landsidle and
19   Ms. Haas.  Do you see those names there?
20     A.  Yes, uh-huh.
21     Q.  And if you go to the re line, it says,
22   "Re:  Medicare Working Group Update"?
```

Page 68

```
 1     A.  Uh-huh.
 2     Q.  Do you see that?
 3     A.  Yes.
 4     Q.  Do you know what the Medicare Working
 5   Group was, as referenced here in the December '96
 6   memorandum?
 7     A.  No.
 8     Q.  Do you recall ever being a member of an
 9   entity at Abbott known as the Medicare Working
10   Group?
11     A.  I do not recall that.
12     Q.  But you are listed here in the "to"
13   line, though, in a discussion about the Medicare
14   Working Group; isn't that correct?
15     A.  That is correct.
16     Q.  Do you recall ever participating in
17   meetings with some of the individuals listed here
18   where Medicare issues were ever discussed in this
19   time frame?
20     A.  No, I don't.
21     Q.  And if you received this memorandum
22   from Mr. Rieger, would you have reviewed it?
```

Page 69

```
 1           MR. DALY:  Object to the form.
 2           THE WITNESS:  I don't know.
 3   BY MR. GOBENA:
 4     Q.  Did you generally as a matter of course
 5   review documents that were addressed to you when
 6   you're -- during your time of employ at Abbott?
 7           MR. DALY:  Object to the form.  Go
 8   ahead.
 9           THE WITNESS:  I get, you know,
10   thousands of documents a week.  I don't review
11   every one of them.
12   BY MR. GOBENA:
13     Q.  Okay.  This document has been
14   previously marked as Exhibit 1170.  And I'm not
15   going to spend much time on the attachment.  I
16   want you to sort of to, to look at the cover
17   memorandum here.
18     A.  Okay, okay, uh-huh.
19     Q.  Again, if, if you go to the center of
20   this document, which is dated December 13th, '96,
21   there's a reference to the Medicare Working Group
22   meeting on December 16th, 1996.
```