# EXHIBIT 181



experience *does* matter

**CASE:  In re:  Pharmaceutical Industry Average Wholesale Price
Litigation
DATE:  June 10, 2009**

Enclosed is the Original of the transcript of the testimony of **Ann Maxwell** along with the errata sheet in the above-titled case.  Please have the witness read the deposition and sign the signature page before a Notary Public.

After the signature page has been notarized, please return the original transcript and errata sheets to the custodial attorney within 30 days of receipt for proper filing.

Thank you for your attention to this matter and please feel free to contact us with any questions or concerns.


Sincerely,

Henderson Legal Services


Encl.

Maxwell, Ann - 30(b)(6)                        June 10, 2009
Chicago, IL

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

In Re:  PHARMACEUTICAL              )

INDUSTRIAL AVERAGE WHOLESALE        )  MDL No. 1456

PRICE LITIGATION                    ) Civil Action No.

_____    ) 01-12257-PBS

THIS DOCUMENT RELATES TO:           )

United States of America ex         )

rel. Ven-a-Care of the              )

Florida Keys, Inc., et al.          )

v. Dey, Inc., et al.,               )

Civil Action No. 05-11084-PBS )


         (cross captions appear on following pages)


      Videotaped 30(b)(6) deposition of the United States

               through ANN MAXWELL

               Chicago, Illinois

                June 10, 2009

                 1:06 p.m.

Maxwell, Ann - 30(b)(6)                          June 10, 2009
                          Chicago, IL

| Page 2 | Page 4 |
|---|---|

**Page 2**

1    IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
2            CIVIL COURT DEPARTMENT
3   In the Matter of:           )
4   KANSAS MEDICAID PHARMACEUTICAL  ) MASTER DOCKET
5   AVERAGE WHOLESALE PRICE        ) NO. 08-MV-2190
6   LITIGATION                )  Division 7
7   _____)
8   This Document Relates to:    )
9   All Cases                )
10
11     IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
12           CIVIL COURT DEPARTMENT
13  In the Matter of:           )
14  KANSAS MEDICAID PHARMACEUTICAL  ) MASTER DOCKET
15  AVERAGE WHOLESALE PRICE        ) NO. 08-MV-0668
16  LITIGATION                )  Division 7
17  _____)
18  This Document Relates to:    )
19  State of Kansas v. Abbott     )
20  Laboratories Inc.,        )
21  Case Number: 08-CV-2127      )
22

**Page 3**

1    IN THE CHANCERY COURT OF RANKIN COUNTY, MISSISSIPPI
2          20TH CHANCERY COURT DIVISION
3
4   STATE OF MISSISSIPPI,    )
5        Plaintiff,    ) Civil Action No.
6        vs.        )  G2009-65587
7   ABBOTT LABORATORIES, INC.,  )
8        Defendant.    )
9   _____)
10
11  STATE OF SOUTH CAROLINA   IN THE COURT OF COMMON PLEAS
12  COUNTY OF RICHLAND      FOR THE FIFTH JUDICIAL CIRCUIT
13  STATE OF SOUTH CAROLINA, and  )
14  HENRY D. McMASTER, in his    )
15  official capacity as Attorney  )
16  General for the State of South  )
17  Carolina,         ) Case No.
18       Plaintiff,    ) 2006-CP-40-4394
19  vs.            )
20  ABBOTT LABORATORIES, INC.,  )
21       Defendant.    )
22  _____)

**Page 4**

1        IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
2           THIRD JUDICIAL DISTRICT AT ANCHORAGE
3   STATE OF ALASKA,       )
4        Plaintiff,   ) Case No.
5        vs.        ) 3AN-06-12297 CI
6   ABBOTT LABORATORIES and   )
7   DEY, INC.,         )
8        Defendants.    )
9   _____)
10
11      IN THE DISTRICT COURT OF THE FOURTH
12    JUDICIAL DISTRICT OF THE STATE OF IDAHO
13        IN AND FOR COUNTY OF ADA
14  STATE OF IDAHO,        )
15       Plaintiff,    ) Case No.
16  vs.            ) CV OC 0701846
17  ABBOTT LABORATORIES,     )
18       Defendant.    )
19
20
21
22

**Page 5**

1       STATE OF NEW YORK
2      SUPREME COURT:  COUNTY OF ERIE
3   _____
4   In re Coordinated AWP Litigation ) Index No. 2439/2005e
5                ) Index No. 4101/2009c
6   _____) Index No. 4449/2009e
7
8
9   IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
10    COUNTY DEPARTMENT, CHANCERY DIVISION
11
12  THE PEOPLE OF THE STATE OF ILLINOIS, )
13        Plaintiff,    )
14  vs.            ) No. 05 CH 2474
15  ABBOTT LABORATORIES, INC., et al.  )
16       Defendant.    )
17  _____)
18
19      The videotaped 30(b)(6) deposition of the
20  United States by ANN MAXWELL, called as a witness
21  for examination, taken pursuant to the Federal Rules
22  of Civil Procedure of the United States District

Maxwell, Ann - 30(b)(6)                                    June 10, 2009
Chicago, IL

| Page 6 | Page 8 |
|---|---|
| 1  Courts pertaining to the taking of depositions, | 1  APPEARED TELEPHONICALLY: |
| 2  taken before KELLY M. FITZGERALD, a Certified | 2     BEASLEY, ALLEN, CROW, METHVIN, PORTIS & |
| 3  Shorthand Reporter of said state, at Suite 3600, 333 | 3     MILES, P.C., by: |
| 4  West Wacker Drive, Chicago, Illinois, on 10th day of | 4     MR. J. PAUL LYNN |
| 5  June, A.D. 2009, at 1:06 p.m. | 5     218 Commerce Street |
| 6  | 6     Montgomery, Alabama  36104 |
| 7  | 7     800-898-2034 |
| 8  APPEARANCES: | 8        appeared on behalf of the States of |
| 9  | 9        Mississippi, South Carolina and Kansas; |
| 10     U.S. DEPARTMENT OF JUSTICE, by: | 10 |
| 11     MS. LAURIE A. OBEREMBT | 11  PATTON BOGGS LLP, by: |
| 12     950 Pennsylvania Avenue, NW | 12  MR. ED GEHRES |
| 13     Washington, DC 20530-0001 | 13  2550 M Street, NW |
| 14        -and- | 14  Washington, DC  20037 |
| 15     U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES | 15     appeared On behalf of Sepracor, Inc. |
| 16     OFFICE OF INSPECTOR GENERAL, by: | 16     in the Kansas AWP litigation. |
| 17     MR. THOMAS W. BEIMERS | 17 |
| 18     MS. MARY RIORDAN (Telephonically) | 18  ALSO PRESENT: |
| 19     330 Independence Avenue, SW | 19     JOSHUA URBAN, Videographer. |
| 20     Washington, D.C.  20201 | 20 |
| 21        appeared on behalf of the Plaintiffs; | 21  REPORTED BY:  KELLY M. FITZGERALD, CSR, RMR, CRR |
| 22 | 22        CSR No. 84-4318. |

| Page 7 | Page 9 |
|---|---|
| 1     APPEARANCES:  (Continued) | 1            I N D E X |
| 2 | 2  WITNESS                    EXAMINATION |
| 3        KELLEY DRYE & WARREN LLP, by: | 3  ANN MAXWELL |
| 4        MS. LISA R. KHANDHAR | 4     By Ms. Khandhar          12 |
| 5        101 Park Avenue | 5 |
| 6        New York, New York 10178 | 6 |
| 7        212-808-5030 | 7         E X H I B I T S |
| 8           appeared on behalf of the Dey Defendants; | 8  NUMBER                 MARKED FOR ID |
| 9 | 9  Exhibit Dey Maxwell 001          39 |
| 10     JONES DAY, by: | 10     notice of deposition |
| 11     MS. TARA A. FUMERTON | 11  Exhibit Dey Maxwell 002          80 |
| 12     77 West Wacker Drive | 12     Prescription Drug Trends - |
| 13     Chicago, Illinois  60601-1692 | 13     A Chartbook from the Kaiser |
| 14     312-782-3939 | 14     Family Foundation dated July 2000 |
| 15        appeared on behalf of Defendant | 15 |
| 16        Abbott Laboratories; | 16 |
| 17 | 17 |
| 18 | 18 |
| 19 | 19 |
| 20 | 20 |
| 21 | 21 |
| 22 | 22 |

3 (Pages 6 to 9)

Maxwell, Ann - 30(b)(6)                          June 10, 2009
                         Chicago, IL

Page 126

1 developing these recommendations other than the
2 team that you had mentioned earlier?
3     A.  No.
4     Q.  And if you look on page 19, there's
5 the beginning of outlining three options for
6 approving estimated acquisition cost.  And in
7 particular, I would like to discuss option 3,
8 which is on page 21.
9     A.  Mm-hmm.
10    Q.  And action 3 discusses specifically
11 average manufacturer price data.  And as we
12 established earlier from the chart on page 7, the
13 average manufacturer price is an actual selling
14 price, correct?
15        MS. OBEREMBT:  Objection.
16 BY THE WITNESS:
17    A.  Yeah, it's a price set in statute
18 meant to represent transactions.
19 BY MS. KHANDHAR:
20    Q.  I'm sorry.  Meant to represent
21 transactions?
22    A.  Transactions between -- I'll be

Page 127

1 specific. All right.  We have the average
2 manufacturer price is the average unit price paid
3 the manufacturer for the drug by wholesalers.
4        MS. KHANDHAR:  This is actually a good
5 time to stop and change the tape.
6        MS. OBEREMBT:  Okay.
7        THE WITNESS:  Okay.
8        MS. KHANDHAR:  Before I delve too far
9 into this.
10       THE WITNESS:  Okay.
11       THE VIDEOGRAPHER:  Going off the record
12 at 3:45 p.m.  This is the end of tape 2.
13          (WHEREUPON, a recess was had.)
14       THE VIDEOGRAPHER:  We are back on the
15 record at 3:56 p.m.  This is the beginning of
16 tape 3.
17 BY MS. KHANDHAR:
18    Q.  Before our break, we had discussed --
19 we started to discuss the average manufacturer
20 price. And if you look at page 21 at the top of
21 the page, it states, "Unlike AWP, which is a
22 suggested list price, AMP is a calculation that

Page 128

1 reflects actual transactions between drug
2 manufacturers and commercial purchasers."
3        And would you agree with this -- with
4 this statement and -- actually -- strike that.
5        Would you say that this statement
6 generally agrees with what's on the chart on page
7 7?
8     A.  Yes.
9     Q.  And do you know what the source would
10 have been for the statement?
11    A.  The same sources we discussed for the
12 chart.
13    Q.  Now, at the bottom of the page, it
14 states, "Option 3:  Share average manufacturer
15 price data with states so that they can
16 accurately set Medicaid reimbursement rates."
17        And again, to -- to refresh what these
18 options were, these are options for improving
19 estimated acquisition costs, correct?
20    A.  They were options for improving
21 estimated acquisition costs for the 16 HIV/AIDS
22 drugs that we examined.

Page 129

1     Q.  If you look at page 22.  And this is
2 going to be a long passage that I read here, but
3 if you can read along with me, "Currently, CMS
4 interprets the confidentiality clause very
5 narrowly. This interpretation prevents CMS from
6 sharing average manufacturer price data with
7 State Medicaid agencies.  The CMS reports only
8 the unit rebate amounts to states, from which
9 states cannot deduce AMP because of the complex
10 unit rebate methodology. It would seem plausible,
11 however, to interpret the confidentiality
12 provision more broadly as a safeguard to prevent
13 manufacturers from gaining access to the pricing
14 information of their competitors.  The
15 legislation specifically prohibits the State
16 Medicaid agencies from disclosing average
17 manufacturer price and Best Price, which implies
18 a legislative assumption that State Medicaid
19 agencies would have access to that information."
20        Did you draft this paragraph?
21    A.  I can't say whether I drafted it.  I
22 certainly reviewed it and approved it.

33 (Pages 126 to 129)

Maxwell, Ann - 30(b)(6)                          June 10, 2009
                        Chicago, IL

| Page 130 | Page 132 |
|---|---|
| 1    Q.  And do you recall evaluating this<br>2  issue of whether State Medicaid agencies had<br>3  access to average manufacturer prices?<br>4    MS. OBEREMBT:  Objection.<br>5  BY THE WITNESS:<br>6    A.  I don't remember anything directly<br>7  about this time.<br>8  BY MS. KHANDHAR:<br>9    Q.  You -- you don't remember anything<br>10  directly relating to this paragraph or at all?<br>11    A.  I don't have very many specific<br>12  memories of the year 2000, you know, I mean,<br>13  honestly.  So in general, you know -- yeah, I'm<br>14  sorry.<br>15    Q.  Does this paragraph reflect your<br>16  understanding of -- of the access State Medicaid<br>17  agencies have to average manufacturer prices?<br>18    A.  It -- yeah, it accurately reflects the<br>19  -- our interpretation of the confidentiality<br>20  provisions that are in -- or discusses the<br>21  confidentiality provisions around AMP.<br>22    Q.  So I'm sorry.  You say -- you would | 1  anyone, either in your office or at CMS,<br>2  regarding the ability of CMS to share AMP data<br>3  with -- with the states?<br>4    A.  I don't recall any conversations.<br>5    Q.  Do you recall any other discussion<br>6  other than conversations, perhaps e-mails or<br>7  memos or reports?<br>8    A.  CMS does have the -- is given the<br>9  opportunity to comment formally on the report,<br>10  which they did so in this report and it is<br>11  included in this report.  And they voice -- they<br>12  voice their interpretation of the confidentiality<br>13  provision, which is that they are statutorily<br>14  prohibited from sharing the information with<br>15  states.<br>16    Q.  And do you agree with that<br>17  interpretation?<br>18    MS. OBEREMBT:  Are you asking her in<br>19  her individual capacity?<br>20    MS. KHANDHAR:  No.<br>21  BY MS. KHANDHAR:<br>22    Q.  Does -- based on what's in this |

| Page 131 | Page 133 |
|---|---|
| 1  say that this paragraph accurately discusses the<br>2  confidentiality provisions surrounding AMP?<br>3    A.  Yes.<br>4    Q.  Do you recall any conversations at any<br>5  time regarding the ability of CMS to share AMP<br>6  data with states?<br>7    A.  Again, I don't recall specifically.<br>8  But in our work papers, we do have logged a<br>9  conversation with Mary Riordan of our office of<br>10  general counsel discussing --<br>11    MS. OBEREMBT:  You know, I would<br>12  caution you not to reveal communications with<br>13  counsel.<br>14    THE WITNESS:  Okay.<br>15    MS. OBEREMBT:  So I don't think you can<br>16  finish that answer.<br>17    THE WITNESS:  Okay.  I will not finish<br>18  that answer.<br>19  BY MS. KHANDHAR:<br>20    Q.  Other than the conversation with your<br>21  counsel regarding the ability of CMS to share AMP<br>22  data, do you recall any other conversations with | 1  report, does OIG agree with that interpretation?<br>2    MS. OBEREMBT:  Objection.<br>3  BY THE WITNESS:<br>4    A.  In our agency comments on page 27, in<br>5  response to CMS's interpretation, we put forth<br>6  the possibility that the mandate implies a<br>7  legislative assumption that those agencies, by<br>8  that, it means the State Medicaid agencies, would<br>9  have access to AMP information.<br>10  BY MS. KHANDHAR:<br>11    Q.  Okay.  And the beginning of that<br>12  paragraph states, "Our interpretation of the<br>13  confidentiality provision for AMP leads us to<br>14  believe that CMS could legally share AMP with the<br>15  State Medicaid programs," correct?<br>16    A.  That's what that sentence says,<br>17  correct.<br>18    Q.  Now, earlier you mentioned that states<br>19  have flexibility in determining estimated<br>20  acquisition costs, correct?<br>21    A.  Within certain parameters, correct.<br>22    Q.  And does each state determine its own |

                              34 (Pages 130 to 133)

d44d0f7d-c591-4c8b-83ec-35e66702bed1