# EXHIBIT 128



**DEPARTMENT OF HEALTH & HUMAN SERVICES**  Office of Inspector General

# Memorandum

Date: MAY 31 1996

From: June Gibbs Brown
Inspector General

Subject: Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services (A-06-95-00062)

To: Bruce C. Vladeck
Administrator
Health Care Financing Administration

Attached for your information and use is our final report entitled, Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services." This review was conducted as part of a nationwide audit of pharmacy drug acquisition costs at the Health Care Financing Administration's request. Most States reimburse pharmacies for Medicaid prescriptions using a formula which generally discounts the average wholesale price (AWP) by 10.5 percent. The objective of our review was focused on developing an estimate of the difference between the actual acquisition costs of drugs of pharmacies and AWP for both brand name and generic drugs.

The California Department of Health Services (State Agency) was 1 of 11 States randomly selected as part of the nationwide review. California reported drug expenditures of $1.3 billion in Calendar Year 1994.

Through statistical sampling, we obtained pricing information from 34 California pharmacies. We obtained 1,198 invoice prices for brand name drugs, and 660 invoice prices for generic drugs. The overall estimate of the extent that AWP exceeded pharmacy purchase invoice prices was 17.5 percent for brand name drugs and 41.4 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent. The estimates exclude the results obtained from non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, home IV, etc.) because such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inappropriately inflated our percentages.

DEPOSITION EXHIBIT
Abbott
325

Page 2 - Bruce C. Vladeck

We are recommending that the State Agency consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs.

In response to our draft report, the State Agency stated: (1) our audit results substantiated their position that current drug ingredient cost reimbursement does not reflect actual purchasing activity of California pharmacies and (2) they intend to use the report data to support a provision in the California Governor's budget proposal to decrease drug ingredient reimbursement.

We welcome any comments you have on this California State report. If you have any questions, call me or have your staff contact George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410) 786-7104.

To facilitate identification, please refer to Common Identification Number A-06-95-00062.

Attachment



**DEPARTMENT OF HEALTH & HUMAN SERVICES** — Office of Inspector General

MAY 31 1996

Washington, D.C. 20201

Ms. S. Kimberly Belshe
Director
California Department of Health Services
714 P Street
Sacramento, California 95814

Dear Ms. Belshe:

Enclosed are two copies of the U.S. Department of Health and Human Services, Office of Inspector General, Office of Audit Services' report entitled, "Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services." Our review was performed at the request of the Health Care Financing Administration and was conducted as part of a nationwide review of pharmacy drug acquisition costs. This report provides you with the final results of our review. As pointed out in our draft report, we determined that there is a significant difference between average wholesale price and pharmacy acquisition costs.

In our draft report, we recommended that the California Department of Health Services (State Agency) consider the results of our review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. In response to the draft report, the State Agency has concurred with our recommendation and intends to use the report data to support a provision in the California Governor's budget proposal to decrease drug ingredient reimbursement. The State Agency's comments are incorporated in our final report.

Once again, our office would like to express how supportive State Agency officials, Allen Fung, Roy Takeuchi, and Doug Hillblom of John Rodriguez's staff were of this project. Our office would like to take this time to thank you for your support in helping us achieve the objectives of this review.

If you have any questions, please call me or have your staff contact George M. Reeb, Assistant Inspector General for Health Care Financing Audits, at (410) 786-7104. We would appreciate receiving your final comments within 15 days from the date of this letter.

To facilitate identification, please refer to Common Identification Number A-06-95-00062 in all correspondence relating to this report.

Sincerely,

June G. Brown
June Gibbs Brown
Inspector General

Enclosures

HHD014-0546    L

HHD014-0546

# Department of Health and Human Services

# OFFICE OF INSPECTOR GENERAL

## REVIEW OF PHARMACY ACQUISITION COSTS FOR DRUGS REIMBURSED UNDER THE MEDICAID PRESCRIPTION DRUG PROGRAM OF THE CALIFORNIA DEPARTMENT OF HEALTH SERVICES



JUNE GIBBS BROWN
Inspector General

MAY 1996
A-06-95-00062

HHD014-0547    F
HHD014-0547

# SUMMARY

At the request of the Health Care Financing Administration (HCFA), the Office of Inspector General (OIG) conducted a nationwide review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program. Since most States reimburse pharmacies for Medicaid prescriptions using a formula which discounts the average wholesale price (AWP), the objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs of the pharmacies and AWP for both brand name and generic drugs.

To accomplish our objective, we selected a random sample of 11 States from a universe of 48 States and the District of Columbia. Arizona was excluded from the universe of States because the Medicaid drug program is a demonstration project using prepaid capitation financing and Tennessee was excluded because of a waiver received to implement a statewide managed care program for Medicaid. California was one of the sample States, as well as Delaware, District of Columbia, Florida, Maryland, Missouri, Montana, Nebraska, New Jersey, North Carolina, and Virginia.

Additionally, we selected a sample of Medicaid pharmacy providers from each State and obtained invoices of their drug purchases. The pharmacies were selected from each of five categories-- rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional pharmacies (nursing home pharmacies, hospital pharmacies, etc.). We included the non-traditional category so as to be able to exclude those pharmacies from our overall estimates. We believed such pharmacies purchase drugs at substantially greater discounts than retail pharmacies, and including them would have inflated our percentages.

We compared each invoice drug price to AWP for that drug and calculated the percentage, if any, by which AWP exceeded the invoice price. We then projected those differences to the universe of pharmacies in each category for each State and calculated an overall estimate for each State. Additionally, we projected the results from each State to estimate the nationwide difference between AWP and invoice price for each category.

In California, we obtained pricing information from 34 pharmacies. Specifically, we obtained 1,198 invoice prices for brand name drugs, and 660 invoice prices for generic drugs. For California, the overall estimate of the extent that AWP exceeded invoice prices was 17.5 percent for brand name drugs and 41.4 percent for generic drugs. The national estimates are 18.3 percent and 42.5 percent, respectively. The estimates combine the results for four categories of pharmacies including rural-chain, rural-independent, urban-chain, and urban-independent and exclude the results obtained from non-traditional pharmacies.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the California Department of Health Services

*i*

HHD014-0548

HHD014-0548

We are recommending that the California Department of Health Services (State Agency) consider the results of this review as a factor in any future changes to pharmacy reimbursement for Medicaid drugs. We will share the information with HCFA from all 11 States in a consolidation report for their use in evaluating the overall Medicaid drug program.

The Deputy Director of the State Agency responded to our draft report in a letter dated March 25, 1996. The State Agency stated that the audit results substantiated their position that current drug ingredient cost reimbursement does not reflect actual purchasing activity of California pharmacies and that they intended to use the report data to support a provision in their Governor's budget proposal to decrease drug ingredient reimbursement. The State Agency's response is included in its entirety as Appendix 4 of this report.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the California Department of Health Services
ii

HHD014-0549

HHD014-0549

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
| SCOPE | 2 |
| FINDINGS AND RECOMMENDATIONS | 4 |
| CONCLUSIONS AND RECOMMENDATION | 6 |

APPENDICES

    APPENDIX 1 - SAMPLE DESCRIPTION

    APPENDIX 2 - CALIFORNIA SAMPLE RESULTS

    APPENDIX 3 - NATIONWIDE SAMPLE RESULTS

    APPENDIX 4 - STATE AGENCY COMMENTS

HHD014-0550

HHD014-0550

## INTRODUCTION

At the request of HCFA, OIG, Office of Audit Services (OAS) conducted a review of pharmacy acquisition costs for drugs reimbursed under the Medicaid prescription drug program of the California Department of Health Services (State Agency). The objective of our review was to develop an estimate of the difference between the actual acquisition costs of drugs and AWP. This review was conducted as a part of a nationwide review of pharmacy acquisition costs. California was 1 of 11 States randomly selected as part of the nationwide review.

### *BACKGROUND*

Medicaid regulations provide for the reimbursement of drugs using two methods. If a drug is a multiple source (generic) drug, then reimbursement is based on the lower of the pharmacist's usual and customary charge to the general public or an upper limit amount plus a dispensing fee. The Federal upper limit amounts are established by HCFA. If a drug is a single source (brand name) drug, or a generic drug for which an upper limit amount has not been established, then the reimbursement is the lower of the pharmacist's usual and customary charge to the general public or the estimated acquisition cost (EAC) plus a reasonable dispensing fee. The State agencies are responsible for determining the EAC and the dispensing fee.

The EAC for most States is calculated by using AWP for a drug less some percentage. The AWP is the price assigned to the drug by its manufacturer and is listed in either the *Red Book*, *Medispan* or the *Blue Book*--publications universally used in the pharmaceutical industry. Prior to 1984, most States used 100 percent of AWP for reimbursement of acquisition costs. However, OIG issued a report in 1984 which stated that, on average, pharmacies purchased drugs for 15.9 percent below AWP. In 1989, OIG issued a follow-up report which concluded that pharmacies were purchasing drugs at discounts of 15.5 percent below AWP. Both the 1984 and 1989 reports combined brand name and generic drugs in calculating the percentage discounts and included a comparison of 3,469 and 4,723 purchases, respectively.

In 1989, HCFA issued a revision to the State Medicaid Manual which pointed out that a preponderance of evidence demonstrated that AWP overstated prices that pharmacies actually paid for drugs by as much as 10 to 20 percent. The Manual further provided that, absent valid documentation to the contrary, it would not be acceptable for a State to make reimbursements using AWP without a significant discount.

In November 1990, the Omnibus Budget Reconciliation Act of 1990 was passed which placed a 4-year moratorium on changes to States' reimbursement policies. The moratorium expired on December 31, 1994 and HCFA requested that we, once again, determine the difference between AWP and actual pharmacy acquisition cost.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the California Department of Health Services

1

HHD014-0551

HHD014-0551

The State Agency reported drug expenditures of $1.3 billion in Calendar Year (CY) 1994.

## *SCOPE*

Our review was performed in accordance with generally accepted government auditing standards. The objective of our review was to develop an estimate of the difference between AWP and the actual invoice prices of both brand name and generic prescription drugs to Medicaid pharmacy providers. Our objective did not require that we identify or review any internal control systems.

Our review was limited to ingredient acquisition costs and did not address other areas such as: the effect of Medicaid business as a contribution to other store sales; the cost to provide professional services other than dispensing a prescription such as therapeutic interventions, patient education, and physician consultation; and the cost of dispensing which includes costs for computers, multi-part labels, containers, technical staff, transaction fees, Medicaid specific administrative costs, and general overhead. We also did not take into consideration the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations. We plan to evaluate the effect of the Federal upper limit amounts on generic drug reimbursements in a subsequent review.

We obtained a listing of all Medicaid pharmacy providers from the State Agency. The State Agency was responsible for classifying each pharmacy as chain, independent or non-traditional. For purposes of this review, a chain was defined as four or more pharmacies with common ownership. We determined whether each pharmacy was rural or urban by comparing the county location for each pharmacy to a December 31, 1992 listing of metropolitan areas and their components. We selected a stratified random sample of 60 pharmacies with 12 pharmacies selected from each of 5 strata--rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.) We included the non-traditional category so as to be able to exclude those pharmacies from our estimates. We believed that such pharmacies are able to purchase drugs at substantially greater discounts than a retail pharmacy and would inflate our estimate.

We requested, from each pharmacy selected, the largest invoice from each different source of supply for a specified month in CY 1994. We identified the sources of supply as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. Each pharmacy was assigned a month from January through September in order to provide a cross-section of this 9-month time period.

We reviewed every line item on the invoices supplied by the sample pharmacies to ensure that the invoices contained the information necessary for our review. We eliminated over-the-counter items. Some invoices did not include National Drug Codes (NDC), which were needed to obtain AWP for the drug. We attempted to obtain NDCs in those instances. We used the 1994 *Red Book*, a nationally recognized reference for drug product and pricing information, to obtain NDCs

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program
of the California Department of Health Services

2

HHD014-0552

HHD014-0552

or identify over-the-counter items. One prominent wholesaler, whose invoices contained that wholesaler's item number rather than NDCs, provided us with a listing that converted their item number to an NDC. If we were unable to identify the NDC for a drug, we eliminated the drug. This was a common occurrence for generic drugs where there was no indication on the invoice as to the manufacturer of the drug.

We obtained a listing from HCFA that indicated whether a drug is a brand name or generic drug. We used that listing to classify each drug on the invoices as brand or generic. If a drug was not on the HCFA listing, we used the *Red Book* to determine whether the drug was brand or generic. Additionally, we obtained drug expenditure information from HCFA-64 Reports.

The State of Missouri provided us with a pricing file for the purpose of obtaining the AWP for each drug. We compared the invoice drug price to AWP for each drug and calculated the percentage, if any, by which AWP exceeded the invoice price. If a drug from an invoice was not on the pricing file we eliminated that drug.

An initial meeting was held in Richmond, Virginia on August 30 - 31, 1994, with Medicaid pharmacy representatives from the sample States. At this meeting, we presented a methodology for performing the review and the methodology was refined with input from the State representatives. At a follow-up meeting held in Richmond, Virginia, on September 27 - 28, 1995, we presented the results of our review with the sample States.

We used OAS statistical computer software to calculate all estimates as well as to generate all random numbers. We did not independently verify any information obtained from third party sources. Our review was conducted by our Little Rock, Arkansas OAS field office with assistance from our OAS field offices in Baton Rouge, Louisiana, and Austin, Texas from September 1994 to September 1995.

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services

3

HHD014-0553

HHD014-0553

## FINDINGS AND RECOMMENDATIONS

### *BRAND NAME DRUGS*

We estimate that AWP exceeded invoice prices for *brand name drugs* by 17.5 percent. The estimate combined all pharmacy categories except for non-traditional pharmacies and was based on the comparison to AWP of 1,111 invoice prices received from 29 pharmacies. The standard deviation for this estimate was 0.34 percent (see Appendix 2).

The estimates that AWP exceeded invoice prices for *brand name drugs* are summarized in the following table:



**Estimated Difference**

| Rural Chain | Rural Independent | Urban Chain | Urban Independent | Non-Traditional (NonT) | Overall (Excluding NonT) |
|---|---|---|---|---|---|
| 16.5 | 17.4 | 17.4 | 17.8 | 23.3 | 17.5 |

The following table shows the number of pharmacies sampled and the number of prices reviewed by individual category for *brand name drugs*.



| | Number of Sample Pharmacies | Prices from Sample Pharmacies |
|---|---|---|
| Rural-Chain | 6 | 427 |
| Rural-Independent | 12 | 345 |
| Urban-Chain | 4 | 175 |
| Urban-Independent | 7 | 161 |
| Non-Traditional | 5 | 87 |
| Overall (Exc. NonT) | 29 | 1111 |

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services

4

HHD014-0554

HHD014-0554

## GENERIC DRUGS

We estimate that AWP exceeded invoice prices for *generic drugs* by 41.4 percent. Once again, the estimate combined all pharmacy categories except non-traditional pharmacies. The estimate was based on the comparison to AWP of 608 invoice prices received from 29 pharmacies. The standard deviation for this estimate was 5.41 percent (see Appendix 2).

The estimates that AWP exceeded invoice prices for *generic drugs* are summarized by individual categories in the following table:



The following table shows the number of pharmacies sampled and the number of prices reviewed by individual category for the *generic drugs*.



---

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of the California Department of Health Services

5

HHD014-0555

HHD014-0555

## CONCLUSIONS AND RECOMMENDATION

Based on our review, we have determined that there is a significant difference between AWP and pharmacy acquisition costs. The difference between AWP and pharmacy acquisition costs is significantly greater for generic drugs than for brand name drugs. In general, State representatives believed that the review supported current State practices to establish pharmacy reimbursement for ingredient cost at levels below AWP.

We recognize that acquisition cost is just one factor in pharmacy reimbursement policy and that any change to that policy should also consider the other factors discussed in the Scope section of our report. Additionally, the effect of Federal upper limit amounts on generic drug reimbursements or usual and customary charge limitations should be taken into consideration. However, a change in any of the factors affecting pharmacy reimbursement could have a significant impact on expenditures because of the size of the program ($1.3 billion) in California. We believe that the difference between AWP and pharmacy acquisition costs as determined by our review is significant enough to warrant consideration by the State in any evaluation of the drug program. Therefore, we recommend that the State Agency consider the results of this review in determining any future changes to pharmacy reimbursement for Medicaid drugs.

### *STATE AGENCY COMMENTS*

The Deputy Director of the State Agency responded to our draft report in a letter dated March 25, 1996. The State Agency stated that the audit results substantiated their position that current drug ingredient cost reimbursement does not reflect actual purchasing activity of California pharmacies and that they intended to use the report data to support a provision in their Governor's budget proposal to decrease drug ingredient reimbursement. The full text of State Agency's comments are included in Appendix 4.

HHD014-0556

HHD014-0556

# *APPENDICES*

HHD014-0557

HHD014-0557

*APPENDIX 1*
*PAGE 1 of 2*

## SAMPLE DESCRIPTION

### Sample Objectives:

Develop an estimate of the extent that Average Wholesale Prices (AWP) exceed actual invoice prices to Medicaid pharmacies in California for brand name drugs and for generic drugs.

### Population:

The sampling population was pharmacy providers participating in the Medicaid prescription drug program of the State Agency.

### Sampling Frame:

The sampling frame was a listing of all pharmacy providers participating in the Medicaid prescription drug program.

### Sample Design:

A sample of 12 pharmacies was randomly selected from each of 5 strata. The five strata of pharmacies were rural-chain, rural-independent, urban-chain, urban-independent, and non-traditional (nursing home pharmacies, hospital pharmacies, home IV, etc.). Each pharmacy was assigned a month from 1994 for which to provide invoices. All pharmacies were initially assigned a month from January through September in a method designed to provide a cross-section of the 9-month period. The largest invoice from each of four different sources of supply was requested. The sources of supply were identified as wholesalers, chain warehouse distribution centers, generic distributors, and direct manufacturer purchases. All invoice prices were compared to AWP.

### Sample Size:

Twelve pharmacies were selected from each stratum for a total of 60 pharmacies.

### Source of Random Numbers:

OAS statistical sampling software was used to generate the random numbers.

*APPENDIX 1*
*PAGE 2 of 2*

### Characteristics to be Measured:

From our review of the pharmacy invoices, we calculated the percentage that AWP exceeded actual invoice prices for all drugs on the invoices submitted.

### Treatment of Missing Sample Items:

No spare was substituted for a pharmacy that did not provide information. If a pharmacy did not send an invoice for a particular type of supplier, we assumed that the pharmacy did not purchase drugs from that type of supplier during the month assigned to the pharmacy.

### Estimation Methodology:

We used OAS Statistical Software to project the percentage difference between AWP and actual invoice prices for each stratum, as well as an overall percentage difference. The overall percentage difference excluded the non-traditional pharmacies. The projections were done separately for brand name drugs and generics.

### Other Evidence:

We obtained AWP from First DataBank.

*APPENDIX 2*

## CALIFORNIA SAMPLE RESULTS
## BRAND NAME AND GENERIC DRUGS

| | CATEGORY | SAMPLE UNIVERSE | SAMPLE SIZE | DRUG PRICES REVIEWED | POINT ESTIMATE | STANDARD DEVIATION | 90 PERCENT CONFIDENCE LEVEL LOWER LIMIT | 90 PERCENT CONFIDENCE LEVEL UPPER LIMIT |
|---|---|---|---|---|---|---|---|---|
| B R A N D | RURAL-CHAIN | 109 | 6 | 427 | 16.5 | 2.82 | 14.61 | 18.29 |
| | RURAL-INDEPENDENT | 130 | 12 | 348 | 17.4 | 1.15 | 16.87 | 17.91 |
| | URBAN-CHAIN | 2,999 | 4 | 175 | 17.4 | 0.90 | 16.66 | 18.14 |
| | URBAN-INDEPENDENT | 2,621 | 7 | 161 | 17.6 | 1.45 | 16.73 | 18.53 |
| | NON-TRADITIONAL | 853 | 5 | 87 | 23.3 | 7.88 | 17.56 | 29.12 |
| | OVERALL (EXCL. NON-TRAD) | 5,859 | 29 | 1,111 | 17.5 | 0.34 | 16.93 | 18.04 |
| G E N E R I C | RURAL-CHAIN | 109 | 6 | 283 | 52.9 | 5.77 | 49.17 | 56.70 |
| | RURAL-INDEPENDENT | 130 | 12 | 178 | 53.5 | 9.16 | 49.40 | 57.69 |
| | URBAN-CHAIN | 2,999 | 4 | 34 | 31.9 | 20.72 | 14.82 | 48.88 |
| | URBAN-INDEPENDENT | 2,621 | 7 | 113 | 51.2 | 6.40 | 47.25 | 55.20 |
| | NON-TRADITIONAL | 853 | 4 | 52 | 56.4 | 10.82 | 47.47 | 65.23 |
| | OVERALL (EXCL. NON-TRAD) | 5,859 | 29 | 608 | 41.4 | 5.41 | 32.50 | 50.29 |

*APPENDIX 3*

## NATIONWIDE SAMPLE RESULTS
## BRAND NAME AND GENERIC DRUGS

| | NATIONWIDE | SAMPLE UNIVERSE | SAMPLE SIZE | DRUG PRICES REVIEWED | POINT ESTIMATE | STANDARD ERROR | 95 PERCENT CONFIDENCE LEVEL LOWER LIMIT | 95 PERCENT CONFIDENCE LEVEL UPPER LIMIT |
|---|---|---|---|---|---|---|---|---|
| **BRAND** | RURAL-CHAIN | 1,095 | 73 | 5,723 | 17.4 | 1.05 | 15.67 | 19.13 |
| | RURAL-INDEPENDENT | 1,499 | 78 | 3,043 | 16.4 | 1.07 | 14.63 | 18.15 |
| | URBAN-CHAIN | 8,194 | 73 | 7,198 | 18.5 | 0.52 | 17.60 | 19.31 |
| | URBAN-INDEPENDENT | 6,242 | 91 | 3,009 | 18.7 | 0.90 | 17.22 | 20.19 |
| | NON-TRADITIONAL | 2,026 | 66 | 1,762 | 27.5 | 2.28 | 23.76 | 31.27 |
| | OVERALL (EXCL. NON-TRAD) | 17,030 | 315 | 18,973 | 18.3 | 0.66 | 17.21 | 19.38 |
| **GENERIC** | RURAL-CHAIN | 1,095 | 73 | 2,963 | 47.5 | 1.63 | 44.82 | 50.20 |
| | RURAL-INDEPENDENT | 1,499 | 78 | 1,798 | 47.4 | 0.93 | 45.85 | 48.92 |
| | URBAN-CHAIN | 8,194 | 72 | 2,634 | 37.6 | 2.82 | 32.97 | 42.26 |
| | URBAN-INDEPENDENT | 6,242 | 91 | 1,680 | 46.7 | 2.44 | 42.70 | 50.73 |
| | NON-TRADITIONAL | 2,026 | 59 | 1,262 | 57.7 | 1.98 | 54.43 | 60.96 |
| | OVERALL (EXCL. NON-TRAD) | 17,030 | 314 | 9,075 | 42.5 | 0.90 | 40.97 | 43.93 |

HHD014-0561

HHD014-0561

APPENDIX 4

STATE OF CALIFORNIA—HEALTH AND WELFARE AGENCY     PETE WILSON, Governor

**DEPARTMENT OF HEALTH SERVICES**
714/744 P STREET
P.O. BOX 942732
SACRAMENTO, CA 94234-7320
(916) 654-0391



MAR 2 5 1996

Ms. June Gibbs Brown
Inspector General
United States Department of
 Health & Human Services
7500 Security Boulevard
Baltimore, MD 21244-1850

Dear Ms. Brown:

Thank you for your letter of February 15, 1996 to S. Kimberly Belshé, Director, Department of Health Services (DHS), regarding the results of the review of California pharmacy acquisition cost for drugs reimbursed under the Medicaid program. Your letter has been referred to this office for reply.

We received your correspondence and the copy of the draft report on February 28, and have reviewed the results of the audit contained in the draft report. The draft report data indicates that a reduction in our drug ingredient cost reimbursement would be appropriate at this time. DHS intends to use these results, when published in the final report, to support a provision of our Governor's budget proposal to decrease drug ingredient reimbursement. The audit results will, hopefully, substantiate DHS' position that current drug ingredient cost reimbursement by the Medi-Cal program does not reflect actual purchasing activity of California pharmacies.

I appreciate the opportunity to be involved in this audit and I am pleased that we had the opportunity to work with your staff and the representatives of the other ten states in developing this report. I am looking forward to receiving your final report in a timely manner so we may use this information in support of our proposed budget legislation.

Sincerely,

John Rodiguez
Deputy Director
Medical Care Services

HHD014-0562

HHD014-0562