# EXHIBIT 149

Page 1

```
              UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -

IN RE:  PHARMACEUTICAL          )  MDL NO. 1456

INDUSTRY AVERAGE WHOLESALE      )  CIVIL ACTION

PRICE LITIGATION                )  01-CV-12257-PBS

                                )

THIS DOCUMENT RELATES TO        )

U.S. ex rel. Ven-a-Care of      )  Judge Patti B. Saris

the Florida Keys, Inc., et      )

al.                             )

     v.                         )

Abbott Laboratories, Inc.       )

No. 07-CV-11618-PBS             )

- - - - - - - - - - - - - - - -


    Videotaped deposition of MARK G. DUGGAN, PH.D.




                     Baltimore, MD

                     Friday, April 17, 2009

                     9:00 a.m.
```

a99e1414-3f69-4076-ba2d-0db2932a0774

|  | Page 2 |
|---|---|
| 1 | Videotaped deposition of MARK G. DUGGAN, PH.D., |
| 2 | held at the Westin Baltimore Washington Airport Hotel, |
| 3 | 1110 Old Elk Ridge Landing Road, Baltimore, Maryland |
| 4 | 21090, the proceedings being recorded stenographically |
| 5 | by Jonathan Wonnell, a Registered Professional Court |
| 6 | Reporter and Notary Public of the State of Maryland, |
| 7 | and transcribed under his direction. |

|  | Page 3 |
|---|---|
| 1 | APPEARANCES OF COUNSEL |
| 2 |  |
| 3 | On behalf of Ven-A-Care of the Florida Keys, |
| 4 | Inc.: |
| 5 | C. JARRETT ANDERSON, ESQ. |
| 6 | Anderson LLC |
| 7 | 208 West 14th Street, Suite 3-B |
| 8 | Austin, Texas 78701 |
| 9 | (512) 469-9191 |
| 10 | jarrett@anderson-llc.com |
| 11 |  |
| 12 | On behalf of Abbott Laboratories, Inc.: |
| 13 | CAROL P. GEISLER, ESQ. |
| 14 | Jones Day |
| 15 | 77 West Wacker |
| 16 | Chicago, Illinois 60601 |
| 17 | (312) 782-3939 |
| 18 | cgeisler@jonesday.com |
| 19 |  |
| 20 |  |
| 21 | ALSO PRESENT: |
| 22 | MATT DE LEON, Videographer |

|  | Page 4 |
|---|---|
| 1 | C O N T E N T S |
| 2 |  |
| 3 | WITNESS NAME                               PAGE |
| 4 | MARK G. DUGGAN, PH.D. |
| 5 | Examination By Ms. Geisler................ 008 |
| 6 |  |
| 7 |  |
| 8 | E X H I B I T S |
| 9 | NUMBER         DESCRIPTION             PAGE |
| 10 | Exhibit Duggan 001 - Expert report of Mark G. |
| 11 | Duggan Ph.D............... 009 |
| 12 | Exhibit Duggan 002 - Myers and Stauffer state |
| 13 | summaries................. 012 |
| 14 | Exhibit Duggan 003 - Transcript of the |
| 15 | deposition of Nancy L. |
| 16 | Carlson (277 pgs.)........ 030 |
| 17 | Exhibit Duggan 004 - Myers and Stauffer report |
| 18 | entitled "A survey of |
| 19 | acquisition costs of |
| 20 | pharmaceuticals in the |
| 21 | State of California" |
| 22 | dated 6/02................ 141 |

|  | Page 5 |
|---|---|
| 1 | E X H I B I T S  (CONTINUED) |
| 2 | NUMBER         DESCRIPTION             PAGE |
| 3 | Exhibit Duggan 005 - Myers and Stauffer report |
| 4 | entitled "Determination of |
| 5 | the cost of dispensing |
| 6 | pharmaceutical |
| 7 | prescriptions for the |
| 8 | Texas Vendor Drug Program" |
| 9 | dated 8/02................ 148 |
| 10 | Exhibit Duggan 006 - Myers and Stauffer |
| 11 | reporter entitled "A |
| 12 | survey of costs of |
| 13 | dispensing prescriptions |
| 14 | and estimated acquisition |
| 15 | cost in the state of |
| 16 | Kentucky " dated 8/98..... 166 |
| 17 | Exhibit Duggan 007 - Transcript of the |
| 18 | deposition of C. Benny |
| 19 | Rideout dated 12/5/08 |
| 20 | (353 pgs)................. 169 |
| 21 |  |
| 22 | (CONTINUED) |

Duggan, Ph.D., Mark G.  April 17, 2009
Baltimore, MD

Page 6

       E X H I B I T S   (CONTINUED)
NUMBER          DESCRIPTION                PAGE
Exhibit Duggan 008 - Transcript of the
          deposition of Larry
          Reed dated 3/18/08 (vol.
          3, p. 604-695)............ 180
Exhibit Duggan 009 - OIG report entitled
          "Medicaid pharmacy actual
          acquisition cost of
          generic prescription drug
          products" dated 3/02
          (HHD 014-0764 - 0782)..... 186
Exhibit Duggan 010 - Report to the Maryland
          Department of Health and
          Mental Hygiene attaching a
          study conducted by the
          University of Maryland
          (MD 0003813 - 3855)....... 202

Page 7

           P R O C E E D I N G S
              (9:04 a.m.)
        THE VIDEOGRAPHER:  The time is now 9:03.
Today's date is April 17th 2009 and we are now on
the record with tape number 1 of the videotaped
deposition of Dr. Mark G. Duggan in the United
States District Court in the District of
Massachusetts In Re: Pharmaceutical Industry
Average Wholesale Price Litigation related to the
United States of America ex rel. Ven-A-Care of the
Florida Keys, Incorporated versus Abbott Labs
Incorporated, 07-CV-11618-PBS under the MDL Number
1456, Civil Action Number 01-12257-PBS.
        My name is Matt DeLeon and I am the
certified legal video specialist on behalf of
Henderson Legal Services.  Today's court reporter
is Jon Wonnell in association with Henderson Legal
Services.  Will counsel please introduce
themselves and state your appearances for the
record?
        MS. GEISLER:  Carol Geisler representing
Abbott Laboratories.

Page 8

        MR. ANDERSON:  Jarrett Anderson
representing the relator.
        THE VIDEOGRAPHER:  Will the court
reporter please swear in the witness?

Whereupon,
        MARK G. DUGGAN, PH.D.,
called as a Witness, was duly sworn by Jonathan
Wonnell, a Notary Public in and for the State of
Maryland, and was examined and testified as
follows.

        EXAMINATION BY COUNSEL FOR ABBOTT
        LABORATORIES
BY MS. GEISLER:
   Q.  Good morning, Dr. Duggan.
   A.  Good morning.
   Q.  Please state your name for the record,
please?
   A.  Mark Duggan.
   Q.  I see you've got something in front of
you.  What did you bring with you today?

Page 9

   A.  I brought with me my report for this
case.
   Q.  Okay.  Do you have any notes or anything
written on that?
   A.  Not that I recall.  I doodled a little
bit on the front.  But other than that not much.
Nothing that I recall.
   Q.  We're going to start by marking an
official copy of your report for today.  So I'd
like to use this copy.
   A.  Okay.
       (Exhibit Duggan 001 was marked for
identification.)
BY MS. GEISLER:
   Q.  And why don't you take a minute to look
through it.  But what we've marked as Duggan
Exhibit 1 is a copy of the report that was filed
in this case on March 27th 2009.
   A.  Okay. Let's see.  Hold on one second.
Okay.  I just wanted to make sure all the tables
and stuff were here.
   Q.  Okay.  And can you look at page 93 for

3 (Pages 6 to 9)

Duggan, Ph.D., Mark G.                                            April 17, 2009
                              Baltimore, MD

Page 154

1  actual average prices was typically, at least
2  before 2003, in the neighborhood of three, three
3  and a half to one.  I think it's a table in my
4  report.  Let me just get to it.
5         Yeah.  If one looks, for example, in
6  table 1 or in table 6, typically -- there's
7  heterogeneity across these products for some.  But
8  the average ratio of AWP to the price for the
9  whole time period is about 2.84, almost three
10 times greater.  And that's depicted also at least
11 for the top selling products in figure 1 and 2
12 where one can see -- sort of compare the AWP with
13 the actual average price.  So from that one can
14 see that, you know, for a time, at least for this
15 product, the ratio was on the order of 3.8 to 1.
16 But that declined to about 2 to 1 in the middle of
17 2003.
18     Q.  And what's the dollar value of that
19 spread?
20     A.  It depends on the claim.
21     Q.  Approximately?
22         MR. ANDERSON:  Objection, vague and

Page 155

1  ambiguous.
2     A.  Right.  It just depends on the claim.
3     Q.  Well, is it $30?  Is it $3,000?  Is it
4  $3?
5         MR. ANDERSON:  Same objections.
6     A.  So looking across all the claims the
7  average differences typically -- the average
8  difference per claim is typically on the order of
9  3 -- a little more than $3.
10    Q.  Okay.
11    A.  With -- of course this likely varied
12 over the time period given the sharp increase in
13 actual transaction prices, the diffusion of state
14 MAC prices and so forth in the later part of the
15 period.
16    Q.  So the --
17    A.  So just to -- so if I can finish, so
18 that's an average across all the time periods.
19 Telescoping in on a specific NDC quarter the
20 results might be somewhat different.
21    Q.  But on average the dollar difference
22 between the AWP and the average price that you

Page 156

1  calculate is about $3, correct?
2     A.  Well, it depends on if one is looking at
3  it from the perspective of the claim or from the
4  perspective of let's say, in that earlier example
5  that we talked about, like the bottle.  So it
6  seems plausible that -- like that figure 1, where
7  there's a difference between -- there's an AWP of
8  about $36 when the average price is about $10.
9  But as we talk about before, for many of these --
10 in many cases the number of units in a
11 prescription will fall below the number of units
12 in a bottom.
13        Because these are antibiotics so it may
14 be the prescription is a week long or five days or
15 ten days.  And maybe in the bottle -- I don't have
16 memorized how many pills or tablets there are in
17 these packages.  Maybe there's like a hundred.  So
18 if there's a hundred maybe -- so it depends on
19 whether one's looking at it from the perspective
20 of a bottle or package, whatever one wants to call
21 it, or from the perspective of the Medicaid claim.
22        Because these claims, the duration of

Page 157

1  the prescriptions is often somewhat short given
2  they're antibiotics.
3     Q.  Can you look at Exhibit 2, please, the
4  sheet for California?
5     A.  Yeah.  The Medicaid adjudication
6  methodology?
7     Q.  Mm-hmm.  In the column marked dispensing
8  fee where it says brand or generic, until 2004 the
9  dispensing fee was $4.05, correct?
10    A.  Until August 31st 2004 it was $4.05,
11 that's correct.
12    Q.  And if -- based on your calculation the
13 average per claim difference between what Medicaid
14 paid and what Medicaid would have paid had they
15 used your alternative price is $3, right?
16    A.  I don't know that we're doing an apples
17 to apples here, because the time periods I think
18 differ somewhat.  But it is the case that on
19 average if one uses a difference -- if the
20 difference is $3 for the average prescription
21 then, right, the difference is on average $3 --
22 you know, California may later have put in place

                                         40 (Pages 154 to 157)