**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 |
| | ) | Civil Action No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) ) | Subcategory No. 06-11337-PBS |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.*, Civil Action No. 06-11337-PBS; | ) ) ) ) ) | Hon. Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS; and | ) ) ) ) ) | |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Civil Action No. 07-10248-PBS | ) ) ) ) | |

**DECLARATION OF T. MARK JONES**

1. My name is T. MARK JONES. I am above the age of 18, of sound mind, competent to provide the testimony set forth herein. I understand that this declaration will be presented to the United States District Court in support of the Relator's opposition to Abbott Laboratories, Inc.'s ("Abbott"), Dey, Inc.'s ("Dey"), Roxane Laboratories, Inc.'s ("Roxane"), and related companies' motions to dismiss.

2. I am a resident of Key West, Florida. I am the President and a Director of Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"), the qui tam relator in the above styled actions.

3. I am employed by the Relator in this action, Ven-A-Care. I am a shareholder of Ven-A-Care, which was created as a Florida corporation in 1987. I have been employed full time by Ven-A-Care since 1987. Ven-A-Care has been a licensed pharmacy since 1987. Ven-A-Care received its community pharmacy license in 1991.

4. I am testifying to the following based upon my personal knowledge, my knowledge from my employment experience at Ven-A-Care and my review of Ven-A-Care's records and files.

5. I submit this Affidavit on behalf of Ven-A-Care in support of Ven-A-Care of the Florida Keys, Inc.'s Combined Opposition to Motions to Dismiss Filed by Abbott, Dey and Roxane.

6. Ven-A-Care was organized for the purpose of providing infusion, inhalation, injectable and other drugs to patients in their homes and other locations outside of the hospital setting.

7. Attached as Exhibit 1 is a list of drugs filed in the False Claims Actions against Abbott, Dey and Roxane at issue. The list, broken down by drug type, shows the date when each drug type was first alleged in a False Claims Action by Ven-A-Care. The list also indicates the dates when each specific NDC within a drug type was first alleged by Ven-A-Care.

8. Ven-A-Care has continuously and voluntarily provided the Government with information regarding drug prices, reimbursement and unlawful behavior in the pharmaceutical marketplace since 1992. Specifically, Ven-A-Care provided

information to the Department of Justice and the Office of Inspector General for the Department of Health and Human Services about each of the Defendants Abbott, Dey and Roxane and the drugs at issue prior to filing the claims reflected in Exhibit 1; including but not limited to its allegations that they were committing the False Claims Act violations at issue in these actions; specific transaction prices for their drugs compared with reported prices over time; information about how the reported prices and resultant inflated spreads were marketed and impacted Medicare and Medicaid reimbursement and about sources of industry insider pricing and marketing information that Ven-A-Care made available to assist the government in its investigations.  Specific communications with the Government voluntarily made prior to filing claims are reflected in Composite Exhibit 2.  Composite Exhibit 2 shows communications by date.

9. Prior to the filing of each complaint and each amended complaint, Ven-A-Care voluntarily provided the basis of its allegations to the Government.  With respect to Abbott, Ven-A-Care, through its attorney James J. Breen, first notified the Government of the prices available in the marketplace for Vancomycin, a drug marketed and manufactured by Abbott, in August of 1992 when Mr. Breen sent a letter to Judith A. Moreland of the Federal Trade Commission, copying Bill Vaughan of Congressman Pete Stark's Office.  See, VAC MDL 73854-73870, contained in Composite Exhibit 2 attached.  Ven-A-Care began supplying the United States with actual market transaction prices for the Abbott's injectable and infusion drugs in 1993.  As an example, on February 24, 1994, Ven-A-Care provided an Abbott

catalogue to Maritza Penniston of the Department of Health and Human Services Office of Inspector General ("OIG") showing the prices available to Ven-A-Care in the marketplace for Abbott's drugs, including Vancomycin, Dextrose, Water for Injection and Sodium Chloride. See, VAC MDL 74185-74252, contained in Composite Exhibit 2 attached. Additionally, Ven-A-Care provided its Abbott pricing to Peter Barbera of the OIG as well as the Department of Justice attorneys working on Ven-A-Care's NMC qui tam case during 1994.

10. On December 9, 1994, Ven-A-Care sent a letter to Alicia Valle, Assistant United States Attorney, Southern District of Florida, regarding discrepancies in Medicare reimbursement. See, 2202500 – 2202513, MPL 64, contained in Composite Exhibit 2 attached. Ven-A-Care's officers further explained to Department of Justice officials, including but not limited to Miami Assistant United States Attorneys Mark Lavine and Alicia Valle, in the course of various meetings and phone discussions during the months of January through June 1995, how the defendants in the Original Ven-A-Care Complaint, including Abbott, created and marketed inflated spreads on Medicare and Medicaid reimbursement by reporting falsely inflated drug prices and thereby creating financial inducements.

11. On June 23, 1995, prior to filing its first False Claims Action for false, inflated drug price reporting, Ven-A-Care provided the Department of Justice with documents bates labeled VAC MDL 71362 – 74703, containing specific prices for pharmaceuticals available to Ven-A-Care as well as the "AWP"s in Red Books for 1994 and 1995 and the Blue Books for 1993, 1994 and 1995. These documents were

4

produced to the Defendants on November 21, 2007. The documents given to the Government on June 23, 1995, prior to filing, comprised the basis for the allegations in its complaint and later amended complaints. Attached as Composite Exhibit 3 is a spreadsheet list of example prices available to Ven-A-Care for the Abbott drugs at issue given to the United States prior to filing and the documents underlying the example prices. The list shows the price, the NDC and references the corresponding document by bates number.

12. After its Original qui tam action was filed, Ven-A-Care continued to supply the United States with pricing and other relevant information to the investigation of the fraud at issue. As an example, Ven-A-Care provided the United States Department of Justice Trial Attorney T. Reed Stephens information including detailed price information and spreads related to Acyclovir and then later added Acyclovir to its Fourth Amended Complaint. See VAC MDL 83912-83920, contained in Exhibit 2 attached.

13. In January of 2001, Ven-A-Care provided the United States with the McKesson Econolink Database on a lap top computer prior to filing its First Amended Complaint in the District of Massachusetts. Ven-A-Care also provided that same McKesson Econolink Database to attorneys in the Southern District of Florida in the form of CD Roms prior to filing its Fourth Amended Complaint in the Southern District of Florida. The Database contained all prices available to Ven-A-Care through McKesson. Attached as Composite Exhibit 7 is a spreadsheet list of prices, by drug type, created using the McKesson Econolink Database currently available to

Ven-A-Care.  The Abbott prices for the following dates reflected in Exhibit 7 were provided to the United States prior to filing the Fourth Amended Complaint in the Southern District of Florida on December 11, 2002:   8/31/2000, 10/23/2000, 12/12/2000, 2/22/2001, 4/20/2001, 6/19/2001, 8/9/2001, 11/12/2001, 1/28/2002, 3/10/2002, 5/8/2002 and 6/25/2002.

14. In August of 1995 Ven-A-Care was presented with an opportunity to enrich itself through reimbursement for nebulizer drugs such as those distributed by Defendants Dey and Roxane.  Ven-A-Care immediately notified Mark Lavine, Assistant United States Attorney , Southern District of Florida, of the "Pulmo Dose" flyer it received and reported the prices available to it for Ipratroprium Bromide and Albuterol.  See, VAC MDL 48643-48644, contained in Exhibit 2 attached.  Thereafter it notified other government officials of the spreads available to customers such as Ven-A-Care for the inhalant drugs.  See also, VAC MDL 80390-80395, VAC MDL 86162 – 86175 and VAC MDL 61035-61045, contained in Composite Exhibit 2 attached.  Ven-A-Care also discussed the spreads available to it for albuterol reimbursement with officials of the Health Care Financing Administration on September 14, 1995.  See VAC MDL 86162-86175, contained in Composite Exhibit 2 attached.

15. From early 1996 forward, Ven-A-Care worked closely with Rob Vito, OIG, and continuously provided Mr. Vito with Dey's prices for Albuterol, Ipratropium Bromide and Cromolyn Sodium along with the AWPs for those drugs.  See, VAC MDL 49888-49896, VAC MDL 49881-49887, 49875-49880, VACMDL 49851-

49858, VAC MDL 43585-43586, 43647-43650, VAC MDL 43715-43720, contained in Composite Exhibit 2 attached.  Ven-A-Care also met with Mr. Vito and Ms. Ragone on April 29, 1997 and provided them with further information about the pharmaceutical marketplace.  Specifically, Ven-A-Care provided Mr. Vito with RDI Buying Group prices for both Dey and Roxane Ipratroprium Bromide on April 4, 1997 and Dey Ipratroprium Bromide on June 19, 1997.  See VAC MDL 43585-43586 and VAC MDL 43647-43650, contained in Composite Exhibit 2 attached.

16. Ven-A-Care provided further market information regarding Dey to the United States, both Mike Theis and Mark Lavine and later T. Reed Stephens.  See VAC MDL 97552-97562, VAC MDL 48700-48708, VAC MDL 45083-45087 and VAC MDL 85688-85695, contained in Composite Exhibit 2 attached.  Ven-A-Care personally met with Mr. Theis on January 26, 1996 and discussed the spreads on all drugs Ven-A-Care was investigating at the time, including Dey's inhalation drugs at issue in the instant case.

17. Attached as Composite Exhibit 4 is a spreadsheet list of example prices available to Ven-A-Care for the Dey drugs at issue.  Composite Exhibit 4 also includes the documents underlying the example prices that Ven-A-Care provided to the Government prior to filing the action against Dey in 1997 in the Southern District of Florida and prior to filing the action against Dey in the District of Massachusetts in 2000.  The list shows the price, the NDC and references the corresponding document by bates number.

18. Ven-A-Care provided the United States with prices available to Ven-A-Care for Dey's Ipratroprium Bromide prior to filing its Second Amended Complaint in the Southern District of Florida. See, for example, VAC MDL 43647-43650 and VAC MDL 43585-43586, contained in Composite Exhibit 2 attached. Ven-A-Care continued to provide the United States with prices for Dey's drugs at issue after filing its Second Amended Complaint in the Southern District of Florida with allegations against Dey, including prices for Ipratroprium Bromide. See, for example, VAC MDL 43715-43720, contained in Composite Exhibit 2 attached which shows pricing for Ipratroprium Bromide and other Dey drugs.

19. Ven-Care continuously informed the Government of new information of fraud occurring in the marketplace including, but not limited to, the new fraud that it eventually pled in its April 2000 Complaint in the District of Massachusetts. On April 6, 2000, Ven-A-Care met with the United States Attorney's Office for the District of Massachusetts to provide the basis of new allegations it intended to file against Dey and Roxane. Prior to that time, Ven-A-Care had continuously provided the United States with information regarding Albuterol and Ipratroprium Bromide products marketed and sold by both Dey and Roxane. See also, VAC MDL 48643-48644, VAC MDL 79801-79811, VAC MDL 64203-64214, VAC MDL 84206-VAC MDL 84329, contained in Composite Exhibit 2 attached.

20. Attached as Exhibit 5 is an index of documents provided to the United States on April 6, 2000 with reference to the bates number of the document produced in

discovery in this case. Ven-A-Care also provided the United States with a power point presentation on that date with additional information.

21. Attached as Composite Exhibit 6 is a spreadsheet list of example prices available to Ven-A-Care for the Roxane drugs, by drug type, and the underlying documents related to those examples given to the United States Department of Justice by Ven-A-Care prior to the filing of its False Claims Action in the District of Massachusetts on April 10, 2000. The list shows the price, the NDC and references the corresponding document by bates number.

22. On October 18, 2000, Ven-A-Care notified the attorneys for the United States that it intended to amend its claims in the District of Massachusetts to include claims related to Abbott's Erythromycin drugs. See VAC MDL 94120-94129, contained in Composite Exhibit 2 attached.

23. In January of 2001, Ven-A-Care provided the United States with the McKesson Econolink Database on a lap top computer prior to filing its First Amended Complaint in the District of Massachusetts. The Database contained all prices available to Ven-A-Care through McKesson and contained the basis for the allegations in Ven-A-Care's First Amended and later amended complaints. Attached as Composite Exhibit 7 is a spreadsheet list of prices, by drug type, created using the McKesson Econolink Database currently available to Ven-A-Care. The spreadsheet shows prices available to Ven-A-Care, over time, for all the relevant drugs. The prices for the following dates were voluntarily provided to the United States prior to

filing its First Amended Complaint on February 15, 2001:  8/31/2000, 10/23/2000 and 12/12/2000.

24. Prior to filing the Third Amended Complaint in the District of Massachusetts, on February 15, 2005, Ven-A-Care supplemented the McKesson Econolink Database and provided additional pricing information to the United States.  The Dey, Abbott and Roxane prices for the following dates were provided to the United States prior to filing the Third Amended Complaint in the District of  Massachusetts on February 15, 2005:   8/31/2000, 10/23/2000, 12/12/2000, 2/22/2001, 4/20/2001, 6/19/2001, 8/9/2001, 11/12/2001, 1/28/2002, 3/10/2002, 5/8/2002 and 6/25/2002.

25. Ven-A-Care was encouraged by Gerry Dunham, Office of Inspector General, in 1994 to file its first qui tam against National Medical Care ("NMC")*: United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. National Medical Care, et al.*, Case No. 94-1234-CIV, United States District Court Southern District of Florida (the "NMC Action").  The NMC case involved an illegal split fee arrangement that hinged on using funds generated by inflated pharmaceutical reimbursements to induce participating physicians to increase prescriptions of expensive pharmaceutical therapies and falsifying certificates of medical necessity in order to qualify patients for expensive nutritional therapies.  Ultimately, the NMC Action settled for $486 Million in 1999.

26. Ven-A-Care, then filed its first pharmaceutical pricing fraud action in June of 1995 in the Southern District of Florida.  Ven-A-Care's investigation of

pharmaceutical pricing fraud has led to tremendous recoveries to state and federal governments.

27. The claims brought by Ven-A-Care against the following drug manufacturers in *United States ex rel. Ven-A-Care of the Florida Keys, Inc., et al. vs. Abbott Labs., et al.*, Case No. 95-1354, United States District Court for the Southern District of Florida and *United States ex rel. Ven-A-Care of the Florida Keys, Inc., et al. vs. Abbott Labs., et al.*, Case No. 00-10698, United States District Court for the District of Massachusetts, contributed to the following settlements: Bayer Corporation settled for $14 Million; Glaxo-SmithKline and related companies settled for $150 Million; Bristol-Myers Squibb settled for $515 Million; and Aventis Pharmaceuticals, Inc. and related companies settled for $190 Million.

28. The claims brought by Ven-A-Care in the following actions in the State of Texas have led to the following settlements. *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Roxane Laboratories, Inc. et al.*, Cause No. GV03-03079, 201st Judicial District Court of Travis County, Texas settled for $10 Million. *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc. et al.*, Cause No. GV002327, 53rd Judicial District Court of Travis County, Texas: Dey, Inc. and related companies settled for $18.5 Million and Warrick Pharmaceuticals, Inc. and related companies settled for $27 Million. *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., et al.*, Cause No. GV-04-001286, 201st Judicial District Court of Travis County, Texas: Abbott Laboratories, Inc. and related companies settled for $28 Million and Baxter Healthcare Corp. settled for $8.5 Million.

29. The claims in *State of California, ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories Inc., et al.*, Case No. 722855, Filed In Camera Under Seal, Superior Court of the State of California, removed to the United States District Court for the Central District of California, Case No. 03-CV-2238 and transferred to the United States District Court for the District of Massachusetts, MDL 1456, Master File No. 01-12257-PBS., United States District Court for the District of Massachusetts against Abbott Laboratories Inc., B. Braun Medical Inc., Baxter Healthcare Corporation, Roxane Laboratories, Inc. and related companies and ZLB Behring, L.L.C. have been settled for a total of $23 Million.

30.     In addition to the actions in front of this Court in the District of Massachusetts, Ven-A-Care is the relator in multiple unsealed actions currently being litigated in state courts:  *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Alpharma, Inc., et al.*, Case No. D-1-GV-08-001566;  *State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc., et al. vs. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032A, Circuit Court of the Second Judicial Circuit in and for Leon County, Florida; *State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc., et al. vs. Mylan Laboratories Inc., et al.*, Case No. 98-3032G, Circuit Court of the Second Judicial Circuit in and for Leon County, Florida; and *State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc., et al. vs. Alpharma, Inc., et al.*, Case No. 98-3032F, Circuit Court of the Second Judicial Circuit in and for Leon County, Florida.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 3, 2009.

T. Mark Jones