# EXHIBIT 11

Page 297

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


IN RE: PHARMACEUTICAL            )
INDUSTRY AVERAGE WHOLESALE       ) MDL No. 1456
PRICE LITIGATION                 )
_____) Master File
                                 ) No. 01-CV-12257-PBS
THIS DOCUMENT RELATES TO:        )
_____) Subcategory
                                 ) No. 06-CV-11337-PBS
United States of America,        )
ex rel. Ven-A-Care of the        )
Florida Keys, Inc., v.           )
Abbott Laboratories, Inc.,       )
CIVIL ACTION NO. 06-11337-PBS)    VOLUME II


Videotaped Deposition of JAMES W. HUGHES, Ph.D., at 77 West Wacker Drive, 35th Floor, Chicago, Illinois, commencing at the hour of 9:09 a.m. on Wednesday, May 6, 2009.

1    truthful explication of damages, that it would be
2    a good idea for you to try to do something like
3    that?
4           MR. BERLIN:  Objection, form.
5           THE WITNESS:  Could you read that
6    question back, please.
7           MR. BREEN:  Please read it back.
8               (The record was read back as
9    requested.)
10          THE WITNESS:  Well, no.  There was no
11   conversation like that.  It's a fairly convoluted
12   question.
13   BY MR. BREEN:
14       Q.   Let me ask it this way:  Did you ever
15   ask Abbott or their lawyers, its lawyers, whether
16   they wanted you to help them get to a truthful and
17   accurate estimation of damages in this case?
18       A.   I never asked them that because the, as
19   I say in the first paragraph of my report, is that
20   I was hired to comment on the adequacy and
21   validity of the methods and the conclusions of Dr.
22   Duggan.

1  methodology tried in the first report for
2  Medicaid?
3      A.   That's not what I said.
4           I was agreeing with you that, yes, he
5  claimed to be conservative, and that he says where
6  there were two places, two choices that he could
7  make, he chose the one always with smaller
8  damages.
9           I took issue with that on a number of
10 occasions.  But I agree with you that it's Dr.
11 Duggan's belief that he was always conservative.
12     Q.   Now, from all the things that you've
13 listed that could have been used to test his
14 sample, the seventy percent sample or whatever it
15 was, it sounded to me like all those things were
16 available in the materials that Dr. Duggan had
17 available to him; weren't they?
18     A.   I suppose so.
19     Q.   The Myers & Stauffer surveys were in
20 there; right?
21     A.   Oh, oh, the things that I've been
22 citing, yes.  They were all available.

1  Q.  They were all available.  They were made
2  available to you; right?
3  A.  That's correct.
4  Q.  And you're a competent economist.  You
5  could have tested this if you wanted to; couldn't
6  you?
7  A.  I wasn't directed to do that.
8  Q.  That's not my question.
9      Could you have done it if you wanted to?
10 A.  I could have done it if I was directed
11 to.
12 Q.  Okay.  In other words, so your
13 independence only goes so far?  You only do things
14 exactly as you're directed to; is that it?
15      MR. BERLIN:  Objection, form.
16      THE WITNESS:  I perform the assignments
17 that I'm asked to do.  And if I'm not asked to do
18 an assignment, you know, I'm under a
19 confidentiality order like everybody else in this
20 case.  So I'm not free to just take the data and
21 go do what I want with it.
22 BY MR. BREEN: