# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ———————————————— ) | | |
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | MDL NO. 1456 |
| LITIGATION | ) | Civil Action No. 01-12257-PBS |
| ———————————————— ) | | |
| | ) | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) | |
| CLASS 1 RESIDENTS OF THE | ) | |
| DISTRICT OF COLUMBIA AND | ) | |
| STATES OTHER THAN THE | ) | |
| COMMONWEALTH OF | ) | |
| MASSACHUSETTS | ) | |
| ———————————————— ) | | |

## THE J&J DEFENDANTS' MEMORANDUM IN
## SUPPORT OF THEIR POST-REMAND MOTION FOR SUMMARY JUDGMENT
## AGAINST CLASS 1 RESIDENTS OF THE DISTRICT OF COLUMBIA AND
## STATES OTHER THAN THE COMMONWEALTH OF MASSACHUSETTS

## Table of Contents

Table of Authorities ............................................................................................................ iv

Preliminary Statement......................................................................................................... 1

Abbreviated Procedural History ......................................................................................... 1

Summary of Argument ........................................................................................................ 1

Argument ............................................................................................................................. 4

I.     Summary Judgment Is Warranted Based on the Court's Prior Legal
     Rulings and the Undisputed Facts ............................................................................. 4

     A.    The Summary Judgment Standard ................................................................ 4

     B.    Plaintiffs Conceded, and the Court Found, That Industry and
          Government Expected Spreads in the Range of 30 Percent ......................... 5

     C.    Plaintiffs Conceded, and the Court Found, That the Spreads on
          Procrit and Remicade Were Approximately 30 Percent or Less .................. 6

     D.    It Is Undisputed That Class 1 Consumers Did Not Know About
          AWP and Had No Expectations Concerning Reasonable Spreads ............... 7

     E.    The Government's Expectation Concerning Reasonable Spreads Should
          Be the Controlling Expectation for Assessing Liability in Class 1 .............. 9

     F.    The Other Liability Factors Identified in the Court's June 2007 Liability
          Opinion Do Not Provide Any Reason To Deny Summary Judgment .......... 11

     G.    The Liability Standard Applied in the Track One Trial and
          Applicable to Class 1 Was the Broadest in the Nation .............................. 12

II.    Summary judgment Is Warranted Based on a State-by-State Analysis
     of the Applicable Unfair Trade Practices Statutes ................................................... 14

     A.    The Residents of South Carolina and Tennessee Must Be Dismissed
          From Class 1 Because Their Unfair Trade Practices Statutes Do
          Not Permit Class Actions .......................................................................... 15

          1.    South Carolina, Tennessee ............................................................. 15

     B.    The J&J Defendants Are Entitled to Summary Judgment in Those
          States That Require Proof of Actual Injury ............................................... 16

          1.    Arizona, Arkansas, California, Colorado, Connecticut,
              Delaware, Florida, Idaho, Illinois, Kansas, Maryland,

Michigan, Missouri, Nebraska, New Jersey, New Mexico,
New York, North Carolina, Oklahoma, Oregon, Pennsylvania,
Rhode Island, South Dakota, Utah, Washington, Wisconsin,
Wyoming ........................................................................................16

C.      The J&J Defendants Are Entitled to Summary Judgment Against Class
        Members in States That Do Not Provide a Right to a Jury Trial .........18

        1.      Illinois, Nebraska, New Hampshire, California ..........................18

        2.      North Carolina ...........................................................................19

D.      The J&J Defendants Are Entitled to Summary Judgment Against Class
        Members Residing in States with Uniquely Onerous Consumer
        Protection Statutes ...............................................................................20

        1.      Ohio, Utah ..................................................................................20

E.      The J&J Defendants Are Entitled to Summary Judgment On Claims
        Brought Under California Civil Code § 1770......................................20

        1.      California Civil Code § 1770......................................................20

F.      The J&J Defendants Are Entitled to Summary Judgment Against Class
        Members in States that Require Proof of Reliance ..............................21

        1.      Arizona, California, Indiana, Maryland, Michigan, Minnesota,
                North Carolina, Oregon, Pennsylvania, South Dakota, Wyoming ..........21

G.      The J&J Defendants Are Entitled to Summary Judgement Against Class
        Members in States that Prohibit "Deceptive" Acts, "Unfair" Conduct
        or Conduct that Is "Unconscionable"...................................................24

        1.      Arizona, Colorado, Delaware, District of Columbia, Indiana,
                Michigan, Minnesota, Nevada, New York, North Dakota,
                Oregon, Pennsylvania,  Utah ......................................................24

        2.      Connecticut, Florida, Hawaii, Illinois, Maryland, Missouri,
                Nebraska, New Hampshire, North Carolina, Oklahoma,
                Rhode Island, Vermont, Washington, West Virginia,
                Wisconsin, Wyoming ..................................................................25

        3.      Arkansas, Florida, Idaho, Kansas, New Jersey, New Mexico, Texas .........28

H.      The J&J Defendants Are Entitled to Summary Judgment Against Class
        Members in States that Require Misrepresentations to be Material ...................30

1.    California, Connecticut, District of Columbia, Hawaii, Illinois, Kansas, Maryland, Michigan, New Jersey, New York, Pennsylvania, Texas, Vermont ................................................................. 30

Conclusion ............................................................................................................................ 31

Appendix ............................................................................................................................... 33

# Table of Authorities

**CASES**                                                                    **Pages**

*Alicke v. MCI Commc'ns Corp.,*
   111 F.3d 909 (D.C. Cir. 1997) ...................................................................30

*Aspinall v. Philip Morris Cos.,*
   442 Mass. 381, 813 N.E.2d 476 (2004) ............................................12, 13

*Baptist Health v. Murphy,*
   226 S.W.3d 800 (Ark. 2006) ......................................................................29

*Blake v. Federal Way Cycle Ctr.,*
   698 P.2d 578 (Wash. Ct. App. 1985) .........................................................27

*Blue Cross Blue Shield of Mass. v. AstraZeneca Pharm. LP,*
   582 F.3d 156 (1st Cir. 2009) ........................................................................5

*Buckland v. Threshold Enters., Ltd.,*
   66 Cal. Rptr. 3d 543, (Ct. App. 2007) .......................................................16

*Caldor, Inc. v. Heslin,*
   577 A.2d 1009 (Conn. 1990) ......................................................................30

*Caro v. Proctor & Gamble Co.,*
   22 Cal. Rptr. 2d 419 (Ct. App. 1993) .........................................................30

*Carter v. Gugliuzzi,*
   716 A.2d 17 (Vt. 1998) .........................................................................30, 31

*Chroniak v. Golden Inv. Corp.,*
   983 F.2d 1140 (1st Cir. 1993) ....................................................................26

*CitaraManis v. Hallowell,*
   613 A.2d 964 (Md. 1992) ...........................................................................17

*Colaizzi v. Beck,*
   895 A.2d 36 (Pa. Super. Ct. 2006) .......................................................30, 31

*Commercial Union Ins. Co v. Seven Provinces Ins. Co.,*
   217 F.3d 33 (1st Cir. 2000) ........................................................................13

*Courbat v. Dahana Ranch, Inc.,*
   141 P.3d 427 (Haw. 2006) ...................................................................30

*Cox v. Sears Roebuck & Co.,*
   647 A.2d 454 (N.J. 1994)...............................................................17, 29

*Crowell Corp. v. Himont USA, Inc.,*
   1994 WL 762663 (Del. Super. Ct. Dec. 8, 1994) ......................................16

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.,*
   678 S.E.2d 430 (S.C. 2009) ...............................................................15

*Dix v. Am. Bankers Life Assur. Co. of Fla.,*
   415 N.W.2d 206 (Mich. 1987)............................................................22

*Farrell v. General Motors,*
   815 P.2d 538 (Kan. 1991) .................................................................31

*Feitler v. Animation Celection, Inc.,*
   13 P.3d 1044 (Or. Ct. App. 2000) ........................................................21

*Forbes v. Par Ten Group, Inc.,*
   394 S.E.2d 643 (N.C. Ct. App. 1990) ...............................................19, 27

*Garside v. Osco Drug, Inc.,*
   976 F.2d 77 (1st Cir. 1992)................................................................10

*Group Health Plan, Inc. v. Philip Morris Inc.,*
   621 N.W.2d 2 (Minn. 2001)...............................................................22

*Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.,*
   965 A.2d 1032 (N.H. 2009) ...............................................................18

*Hall v. Walter,*
   969 P.2d 224 (Colo. 1998) ................................................................16

*Hedrick v. Spear,*
   907 P.2d 1123 (Or. App. 1995)...........................................................17

*Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.,*
   445 Mass. 790, 840 N.E.2d 526 (2006) ..................................................16

*Holeman v. Neils,*
   803 F. Supp. 237 (D. Ariz. 1992) ....................................................16, 21

*Howerton v. Arai Helmet, Ltd.,*
    581 S.E.2d 816 (N.C. Ct. App. 2003) ........................................................................21

*Ji v. Palmer,*
    755 A.2d 1221 (N.J. Super Ct. App. Div. 2000)...................................................30, 31

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.,*
    732 N.W.2d 792 (Wis. 2007)......................................................................................17

*Laura v. DaimlerChrysler Corp.,*
    711 N.W.2d 792 (Mich. Ct. App. 2006) ....................................................................30

*Leardi v. Brown,*
    394 Mass. 151, 474 N.E.2d 1094 (1985) ....................................................................13

*Legg v. Castruccio,*
    642 A.2d 906 (Md. Ct. Spec. App. 1994) ..................................................................26

*Leingang v. Pierce County Med. Bureau, Inc.,*
    930 P.2d 288 (Wash. 1997)........................................................................................17

*Luskin's, Inc. v. Consumer Prot. Div.,*
    726 A.2d 702 (Md. 1999) .....................................................................................30, 31

*Martin v. Heinold Commodities, Inc.,*
    643 N.E.2d 734 (Ill. 1994) ........................................................................................18

*Northwestern Pub. Serv. v. Union Carbide Corp.,*
    236 F. Supp. 2d 966 (D.S.D. 2002) ...........................................................................22

*Nygaard v. Sioux Valley Hosp. & Health Sys.,*
    731 N.W.2d 184 (S.D. 2007) .....................................................................................17

*Okura & Co. v. Careau Group,*
    783 F. Supp. 482 (C.D. Cal. 1991) ...........................................................................18

*Oliveira v. Amoco Oil Co.,*
    776 N.E.2d 151 (Ill. 2002) ........................................................................................17

*PMP Assocs., Inc. v. Globe Newspaper Co.,*
    366 Mass 593, 321 N.E.2d 915 (1975) .....................................................................26

*Patterson v. Beall,*
    19 P.3d 839 (Okla. 2000)...........................................................................................17

*Peery v. Hansen,*
    585 P.2d 574 (Ariz. Ct. App. 1978) ..........................................................................21

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    230 F.R.D. 61 (D. Mass. 2005) ..........................................................2, 5, 7, 8, 14, 22

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    233 F.R.D. 229 (D. Mass. 2006) ........................................................................1, 15

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    460 F. Supp. 2d 277 (D. Mass. 2006) ......................................................3, 4, 9, 10, 11

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    491 F. Supp. 2d 20 (D. Mass. 2007) ................................................................ *passim*

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    252 F.R.D. 83 (D. Mass. 2008) ..............................................19, 20, 21, 22, 23, 24, 25

*Philip Morris, Inc. v. Angeletti,*
    752 A.2d 200 (Md. 2000) ....................................................................................21

*Raad v. Wal-mart Stores, Inc.,*
    13 F. Supp. 2d 1003 (D. Neb. 1998) ..................................................................18, 26

*Robinson v. Toyota Motor Credit Corp.,*
    775 N.E.2d 951 (Ill. 2002) ..................................................................................26

*Rollins, Inc. v. Butland,*
    951 So.2d 860 (Fla. Dist. Ct. App. 2006) .................................................................16

*Ryan v. Wersi Elec. GmbH & Co.,*
    59 F.3d 52 (7th Cir. 1995) ..............................................................................30, 31

*Samuels v. King Motor Co.,*
    782 So. 2d 489 (Fla. Dist. Ct. App. 2001) ................................................................26

*Schuchman v. Air Servs. Heating & Air Conditioning,*
    199 S.W.3d 228 (Mo. Ct. App. 2006) .....................................................................26

*Shepley v. Johnson & Johnson,*
    582 F.3d 231 (1st Cir. 2009) ..............................................................................1, 8

*Shurtliff v. Northwest Pools, Inc.,*
    815 P.2d 461 (Idaho Ct. App. 1991) .......................................................................17

*State by Bronster v. United States Steel Corp.*,
919 P.2d 294 (Haw. 1996) ...................................................................................26

*Stutman v. Chem. Bank*,
731 N.E.2d 608 (N.Y. 2000)...........................................................................17, 30

*Swanston v. McConnell Air Force Base Fed. Credit Union*,
661 P.2d 826 (Kan. Ct. App. 1983) .....................................................................28

*Thomas v. Hoffman-LaRoche, Inc.*,
949 F.2d 806 (5th Cir. 1992) ...............................................................................10

*In re Tobacco II Cases*,
207 P.3d 20 (Cal. 2009) .......................................................................................22

*Vermont Mobile Home Owners' Ass'n, Inc. v. Lapierre*,
94 F. Supp. 2d 519 (D. Vt. 2000)........................................................................27

*Walker v. Geico General Ins. Co.*,
558 F.3d 1025 (9th Cir. 2009) .............................................................................16

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
249 S.W.3d 301 (Tenn. 2008)..............................................................................15

*Weinberg v. Sun Co.*,
777 A.2d 442 (Pa. 2001) ......................................................................................21

*Willard v. Bic Corp.*,
788 F. Supp. 1059 (W.D. Mo. 1991) ....................................................................17

*Willow Springs Condo Ass'n v. Seventh BRT Dev. Corp.*,
717 A.2d 77 (Conn. 1998) ...................................................................................26

*Wilson v. Blue Ridge Elec. Membership Corp.*,
578 S.E.2d 692 (N.C. Ct. App. 2003) ..................................................................17

*Young v. Joyce*,
351 A.2d 857 (Del. 1975) ....................................................................................16

## STATUTES

42 U.S.C. § 13951....................................................................................................8

Ariz. Rev. Stat. § 44-1522, *et seq* ...........................................................16, 21, 24

Ark. Code Ann. § 4-88-113(f) ................................................................................16

Ark. Code Ann. § 4-88-107(a)(10) .................................................................28

Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251 .....................................8

Cal. Bus. & Prof. Code §17200 .................................................16, 18, 19, 20

Cal. Bus. & Prof. Code §17204 .................................................................16

Cal. Civ. Code § 1770(a) .................................................16, 20, 21, 30

Cal. Civ. Code § 1780(a) .................................................................16

Colo. Rev. Stat. § 6-1-113 .................................................................16

Colo. Rev. Stat. § 6-1-105(1).................................................................24

Conn. Gen. Stat. § 42-110b(a) .................................................16, 25, 30

Conn. Gen. Stat. § 42-110g(a) .................................................................16

D.C. Code § 28-3904(e).................................................................24, 30

Del. Code tit. 6 § 2513(a).................................................................16, 24

Fla. Stat. §501.211(2).................................................................16

Fla. Stat. § 501.204(1).................................................................25, 28

Haw. Rev. Stat. § 480-2(a).................................................................25

Idaho Code Ann. § 48-603(18) .................................................................28

Idaho Code Ann. § 48-603C(2) .................................................................29

Idaho Code Ann. § 48-608 .................................................................17

815 Ill. Comp. Stat. 505/10a .................................................................17

815 Ill. Comp. Stat. 505/1, *et seq*.................................................................18

815 Ill. Comp. Stat. 505/2.................................................................25, 30

Ind. Code § 24-5-0.5-3(a) .................................................................24

Ind. Code § 24-5-0.5-4(a) .................................................................22

Kan. Stat. Ann. § 50-627 .................................................................................28, 29

Kan. Stat. Ann. § 50-634(d) ................................................................................17

Mass. Gen. Laws Ch. 93A ................................................2, 12, 13, 14, 16, 18, 19

Md. Code Com. Law § 13-301, *et seq* ...................................................21, 25, 30

Mich. Comp. Laws § 445.903, *et seq* ..................................................22, 24, 30

Mich. Comp. Laws § 445.911(3) .........................................................................17

Minn. Stat. § 325F.69 .........................................................................................24

Mo. Rev. Stat. § 407.020(1) ..........................................................................17, 25

Mo. Rev. Stat. § 407.025(1) ................................................................................17

N.C. Gen. Stat. § 75-1, *et seq* ...........................................................................21

N.C. Gen. Stat. § 75-1.1(a) ............................................................................19, 25

Neb. Rev. Stat § 59-1601, *et seq* ......................................................................18

Neb. Rev. Stat. § 59-1602 .............................................................................17, 25

Neb. Rev. Stat. § 59-1606 ...................................................................................17

Neb. Rev. Stat. § 59-1609 ...................................................................................17

Nev. Rev. Stat. § 598.0915 .................................................................................24

N.H. Rev. Stat. § 358-A:1, *et seq* ...............................................................18, 25

N.J. Stat. Ann. § 56:8-2.......................................................................................28

N.J. Stat. § 56:8-19 .............................................................................................17

N.M. Stat. § 57-12-2(E) ......................................................................................29

N.M. Stat. § 57-12-10(B) ....................................................................................17

N.Y. Gen. Bus. Law § 349(a) .......................................................................24, 30

N.D. Cent. Code § 51-15-02 ...............................................................................24

Ohio Rev. Code § 1345.09(B) ........................................................................20

Okla. Stat. Ann. tit. 15 § 761.1(A) ...............................................................17

Okla. Stat. Tit. 15, § 752(14) .......................................................................27

Okla. Stat. tit. 15, § 753(20) .........................................................................25

Or. Rev. Stat § 646.608, *et seq* .............................................................21, 24

Or. Rev. Stat. § 646.638(8) ...........................................................................17

73 Pa. Cons. Stat. § 201-1, *et seq* ...............................................................21

73 Pa. Cons. Stat. § 201-9.2(a) .....................................................................17

73 Pa. Cons. Stat. § 201-2 .......................................................................24, 30

73 Pa. Cons. Stat. § 201-3 .............................................................................24

R.I. Gen. Laws § 6-13.1-1(6) ........................................................................25

R.I. Gen. Laws § 6-13.1-3 .............................................................................27

R.I. Gen. Laws § 6-13.1-5.2(a) .....................................................................17

S.C. Code Ann. § 39-5-10, *et seq* ...............................................................15

S.C. Code Ann. § 39-5-20 .............................................................................15

S.C. Code Ann. § 39-5-140 ...........................................................................15

S.D. Codified Laws § 37-24-1, *et seq.* ........................................................24

S.D. Codified Laws § 37-24-6(1). ................................................................24

S.D. Codified Laws § 37-24-31 .....................................................................17

Tenn. Code Ann. § 47-18-101, *et seq* .........................................................15

Tenn. Code Ann. § 47-18-109 .......................................................................15

Tenn. Code Ann. § 47-18-115 .......................................................................27

Tex. Bus. & Com. Code Ann. § 17.45(5) ......................................................29

Tex. Bus. & Com. Code Ann. § 17.50(a)(3)................................................................28

Utah Code Ann. § 13-11-4.......................................................................................24

Utah Code Ann. § 13-11-19(4) ..........................................................................17, 20

Vt. Stat. Ann. tit. 9, § 2453(a) .................................................................................25

W. Va. Code § 46A-6-101(1) ...................................................................................27

W.Va. Code § 46A-6-104 .........................................................................................25

Wash. Rev. Code § 19.86.020............................................................................17, 25

Wis. Stat. § 100.18(11) .............................................................................................17

Wis. Stat. § 100.20...................................................................................................25

Wyo. Stat. Ann. § 40-12-101, *et seq*......................................................................22

Wyo. Stat. § 40-12-105(a) ........................................................................................25

Wyo. Stat. Ann.§ 40-12-108(a).................................................................................17

## MISCELLANEOUS

H.R. Rep. No. 98-156 (1983).....................................................................................26

H.R. Rep. No. 108-178 (2003).....................................................................................6

Fed. R. Civ. P. 23(a) ..............................................................................................1, 7

Fed. R. Civ. P. 54(b) ..................................................................................................3

Harold K. Gordon, *Eat, Drink, and Sue:  A New Mass Tort?*,
    N.Y.L.J., Mar. 30, 2006 .....................................................................................12

Medicare Program, Fee Schedule for Physician Services,
    56 Fed. Reg. 59,502 (Nov. 25, 1991)....................................................................8

Restatement (Third) of Agency § 5.03 (2006)...........................................................23

Johnson & Johnson, Centocor, Inc., and Ortho Biotech Products, LP (the "J&J Defendants") submit this memorandum of law in support of their motion for summary judgment against Class 1 residents of the District of Columbia and states other than the Commonwealth of Massachusetts.[1]

## Preliminary Statement

This motion by the J&J Defendants is one of two motions for summary judgment with respect to the claims asserted by members of Class 1.  This motion seeks summary judgment with respect to consumers who do not reside in Massachusetts.  The J&J Defendants have moved separately with respect to Massachusetts residents.

## Abbreviated Procedural History

The Abbreviated Procedural History set forth in the Massachusetts-specific motion is incorporated by reference.  The J&J Defendants re-emphasize here only that the First Circuit Court of Appeals, in remanding the case to this Court for further proceedings, made it clear that its decision should not be interpreted necessarily to require a trial or to preclude this Court from granting judgment in favor of the J&J Defendants based on a properly framed motion for summary judgment.  *Shepley v. Johnson & Johnson*, 582 F.3d 231, 237 (1st Cir. 2009).

## Summary of Argument

When the Court certified a nationwide class of Medicare beneficiaries under Fed. R. Civ. P. 23(a), it noted that one important benefit of certification was that it would promote a "uniformity of results" across the states, which the Court said was "appropriate for a nationwide

---

[1] For the J&J Defendants, Class 1 is a "nationwide" class of natural persons who made, or who incurred an enforceable obligation to make, a co-payment for Procrit® or Remicade® based on AWP.  *In re Pharm. Indus. Average Wholesale Price Litig.* ("*In re AWP*"), 233 F.R.D. 229, 230 (D. Mass. 2006).  The residents of nine states—Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana, and Virginia—were excluded from Class 1 on the grounds that the consumer protection statutes in those states do not permit class actions.  *Id.*

reimbursement program." *In re Pharm. Indus. Average Wholesale Price Litig.* ("*In re AWP*"), 230 F.R.D. 61, 85 (D. Mass. 2005).  This comment is just as applicable to summary judgment as it would be to a trial.  The outcome for Class 1 consumers should be uniform across the states, because the reimbursement rate was set by the Health Care Financing Administration (in 1991) and by Congress (in 1997), and there are no relevant differences between the consumers in one state versus another.

To be sure, there are variations in state consumer protection laws, including differences in the requirements for establishing reliance, proximate cause, scienter, damages and statutes of limitation.  *Id.*  But the Court has already concluded that, in the context of Class 1, these variations are "*unlikely to be material*."  *Id.* (emphasis added).  Thus, variations in state law do not present an obstacle to summary judgment with respect to Class 1.

In fact, the Court has already granted partial summary judgment against Class 1 notwithstanding the differences in state law.  The Track One Defendants moved for summary judgment with respect to Classes 1 and 2 in March 2006.  Insofar as the motion related to Class 1, it was based on the argument that plaintiffs could not prove causation under any state's law.  *See* Exh. 1[2] (Mem. of Law in Support of Track 1 Defs.' Joint Mot. for Summ. J.) at 16 ("[E]very state consumer fraud statute requires that a private plaintiff must prove causation.  Establishing a causal nexus between the challenged statement and the plaintiff's injury is thus an essential element of a plaintiff's burden in order to prevail on a state consumer fraud claim.").  Defendants' motion relied on cases from numerous states around the country; it was in no sense limited to Mass. Gen. Laws Ch. 93A.  *Id.* at 16 n.48.

---

[2] All "Exh." cites are to the exhibits to the November 23, 2009 Declaration of Andrew D. Schau in support of this Motion.

Consistent with the nationwide scope of defendants' motion, the Court's summary judgment decision was not based on Ch. 93A.  Indeed, the Massachusetts statute is not even mentioned in the Court's opinion.  *See In re AWP*, 460 F. Supp. 2d 277 (D. Mass. 2006).  Rather, the Court ruled that defendants were entitled to summary judgment for drugs "furnished in 2004," because when Congress enacted the Medicare Prescription Drug, Improvement and Modernization Act ("MMA") in 2003, Congress understood that "AWP was different than average sales price and was not reflective of actual prices in the marketplace." *Id.* at 288.  This ruling, which is based on what Congress understood when it passed the MMA, confirms two things:  (1) that Class 1's claims should be resolved based on what *Congress* knew about AWP, and (2) that the resolution of Class 1's claims should be uniform across all states.

Finally, the Court has already made it clear that Dr. Raymond Hartman's 30% liability yardstick applies to Class 1 consumers in Massachusetts.  Exh. 2 (07/03/07 Hrg. Tr.) at 8:19-11:3 (30% yardstick applies to Class 1);  Exh. 3 (10/08/09 Hrg. Tr.) at 6-7 (Class 1 judgment under Fed. R. Civ. P. 54(b) was intended to apply to consumers in Massachusetts). There is nothing unique about Massachusetts consumers or Massachusetts law that would justify applying one liability yardstick to claims by consumers in Massachusetts and a different liability yardstick or yardsticks to claims by consumers in other states.  There is only one published AWP per drug code which does not vary from one state to another.  Medicare Part B is a federal program and the decision to peg the reimbursement rate to published AWPs was made by federal Medicare officials and by Congress, not by individual consumers or states.  Plaintiffs conceded, and the Court found, that HCFA and Congress chose to use AWP as the Medicare reimbursement benchmark knowing and expecting that spreads were in the range of approximately 30%. *In re AWP*, 491 F. Supp. 2d 20, 56, 104 (D. Mass. 2007).  Based on this

expectation, the federal government assigned a uniform co-payment obligation to all Medicare beneficiaries in all states.  The spreads on the J&J Defendants' drugs were admittedly within the range that HCFA and Congress expected.  The J&J Defendants therefore should be granted summary judgment with respect to all of Class 1.

## ARGUMENT

**I.   SUMMARY JUDGMENT IS WARRANTED BASED ON THE COURT'S PRIOR LEGAL RULINGS AND THE UNDISPUTED FACTS**

**A.   The Summary Judgment Standard**

As the Court noted in its prior summary judgment decision,

[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.' " *Barbour*, 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.' " *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36.

*In re AWP*, 460 F. Supp. 2d at 284.

> **B.     Plaintiffs Conceded, and the Court Found, That Industry and Government Expected Spreads in the Range of 30 Percent**

This case was never about whether industry and government knew that there were "modest spreads (such as those created by prompt-pay discounts or formulaic markups from other published prices)." *Blue Cross Blue Shield of Mass. v. AstraZeneca Pharm. LP*, 582 F.3d 156, 172 (1st Cir. 2009). Rather, the critical dispute was whether "the government and industry were aware of the *magnitude* of the spread." *In re AWP*, 230 F.R.D. at 71 (emphasis added); *see also* Exh. 4 (4/6/06 Hartman Decl. in Opp. to S.J.) ¶¶ 5-8 ("Liability is alleged not because AWP exceeds the ASP; rather liability is alleged because it exceeded ASP by the unreasonably and unexpectedly substantial amounts reflected in the 'mega-spreads' recognized by [the Court] and Dr. Berndt."). Dr. Meredith Rosenthal testified that a drug's AWP should "track" its average selling price, but "not certainly [be] equal." Exh. 5 (11/27/06 Trial Tr.) at 71:1-6.

Plaintiffs conceded, and the Court found, that "it is undisputed that the market understood and expected a 20 to 25 percent formulaic markup from WAC to AWP." *In re AWP*, 491 F. Supp. 2d at 91; *see also id.* at 40 ("[T]hroughout the class period, most knowledgeable insiders understood that AWP did not reflect the average sales price to providers, but that it bore a formulaic relationship to WAC of a 20 to 25 percent markup."). Plaintiffs also conceded, and the Court found, that "payors were aware there was some discounting from WAC." *Id.* at 40. The Court endorsed Dr. Hartman's contention that the formulaic markup, coupled with modest discounts from WAC, resulted in a marketplace expectation of spreads in the range of approximately 30%. *Id.* at 92 (finding that Dr. Hartman's 30% yardstick was a reliable measure of marketplace expectations); *see also* Exh. 6 (11/21/06 Trial Tr.) at 120:17-23 (testimony by Dr. Hartman that his 30% yardstick generally reflected what "payors either understood or just basically took as for granted").

Plaintiffs conceded, and the Court found, that the government shared the market's understanding of spreads in the range of 30%. *In re AWP*, 491 F. Supp. 2d at 32; *see also id.* at 40 (citing Dr. Hartman's testimony that "government [and] policy makers" expected that "AWP did not exceed the average sales price by more than 30 percent"); *see also* Exh. 7 (11/20/06 Trial Tr.) at 118:19-21 (testimony by Dr. Hartman that "[t]he government has set reimbursement rates that reflect an understanding that is comparable to what I would say is – in my yardsticks"); *id.* at 119:17-25, 120:1-19 (testimony by Dr. Hartman that his 30% liability yardstick was appropriately applied to Medicare); H.R. Rep. No. 108-178, II, at 194, 197-98 (2003) ("Congress has long recognized AWP is a list price and not a measure of actual prices.").[3]

### C.    Plaintiffs Conceded, and the Court Found, that the Spreads on Procrit and Remicade Were Approximately 30 Percent or Less

The spreads on Procrit were always less than 30%, and usually less than 25%. *In re AWP*, 491 F. Supp. 2d at 56, 104. The spreads on Remicade "hovered very near to 30% throughout the class period." *Id.* at 58. For both drugs, the published AWP closely tracked the average selling price. *Id.* at 104. The Court found that the spreads on Procrit and Remicade "never substantially exceeded the range of what was generally expected by the industry and government." *Id.* at 31.

---

[3] The Court's finding that the government expected moderate spreads is consistent with the government's position in the Lupron criminal prosecution. According to Michael K. Loukes, former Chief of the Health Care Fraud Unit for the U.S. Attorney's Office in Boston, Congress expected AWP to reflect a percentage markup over WAC. *See* Exh. 8 (6/24/04 Hrg. Tr., *United States v. MacKenzie*, CR-01-10350-DPW (D. Mass)) at 67:23-68:6 ("As a matter of fact, Your Honor, a historical fact … everybody got the spread between AWP and list price, the same 25 percent…. And the 25 percent, everyone gets that. That's there. *That's what Congress expected with AWP.*" (emphasis added)).

**D.**     **It Is Undisputed That Class 1 Consumers Did Not Know About AWP
and Had No Expectations Concerning Reasonable Spreads**

Although the First Circuit invited plaintiffs to proffer evidence about Class 1's

expectations concerning reasonable spreads, the record already establishes, and the Court has

already found, that consumers knew nothing about AWP.  As such, Class 1 had no expectations

concerning the existence or magnitude of spreads between AWP and average selling prices.

The fact that consumers have never heard of AWP has never been disputed.  From

the outset, the Court's decision to certify a nationwide class of consumers was based, in part, on

its observation that consumer co-payments were fixed by statute and, therefore, the consumers'

knowledge of AWP (or, more precisely, their lack of knowledge of AWP) would be uniform

across class members.  Thus, in discussing the predominance requirement under Fed. R. Civ. P.

23(b)(3), the Court noted that:

> Defendants have spent little time challenging the predominance of
> factual issues with respect to consumers who co-pay for physician-
> administered drugs under Medicare Part B.  Here, common factual
> issues predominate since a typical consumer *by statute* simply pays
> a percentage of AWP as a co-pay.  There is therefore *no separate
> factual issue* regarding the knowledge and reliance of each class
> member.

*In re AWP*, 230 F.R.D. at 82 (emphasis added).  The Court made similar statements in its choice

of law analysis:

> However, in this context, where consumers … make a percentage
> co-payment based on the stated AWP, there is no indication that
> different definitions of reliance and causation will matter or cannot
> be resolved as a matter of law prior to trial.

*Id.* at 85.

These observations, which were instrumental to the Court's decision to certify a

nationwide consumer class, proved prescient.  Plaintiffs called two consumer witnesses at trial,

Anna Choice and Rebecca Hopkins.  Not surprisingly they had never heard of AWP.  *In re AWP*, 491 F. Supp. 2d at 38.  Ms. Choice testified she had no "knowledge regarding what AWP meant."  Exh. 9 (11/07/06 Trial Tr.) at 74:13-15.  Ms. Hopkins testified that she did not "know anything about AWP at all."  *Id.* at 107:23-25.

The class representatives designated to pursue consumer claims against the J&J Defendants gave similar testimony at their depositions.  Mr. Young, the class representative for Remicade, testified that he never heard of AWP, and that he did not know how or by whom AWP was calculated.  Exh. 10 (11/09/05 Young Dep. Tr.) at 61.  Mr. Shepley, the class representative for Procrit, also testified that he was not familiar with AWP.  Exh. 11 (11/11/05 Shepley Dep. Tr.) at 29:8-14.

Obviously, consumers who have never heard of AWP cannot possibly have formed any "expectations with respect to reasonable spreads."  *Shepley v. Johnson & Johnson*, 582 F.3d at 237.  Moreover, since their co-payment obligations were set by federal regulation in 1991[4] and by federal statute in 1997,[5] their lack of expectations concerning spreads had no effect on the amount of their co-payments.  *See In re AWP*, 230 F.R.D. at 71 (noting that the 80/20 payment allocation between Medicare and Medicare beneficiaries is fixed by 42 U.S.C. § 13951(a)(1)(S)).  In short, the absence of any consumer expectation concerning spreads had no bearing whatsoever on the amount the federal government required them to pay for Part B medications.

---

[4] Medicare Program, Fee Schedule for Physician Services, 56 Fed. Reg. 59,502 (Nov. 25, 1991).

[5] Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251.

**E.      The Government's Expectation Concerning Reasonable Spreads Should Be the Controlling Expectation for Assessing Liability in Class 1**

Since the consumers' co-payment was fixed by regulation or statute, it stands to reason that the liability yardstick for Class 1 should be based on what HCFA and Congress knew and expected when they selected AWP as the reimbursement benchmark, not what consumers knew and expected. Indeed, in the Court's 2006 summary judgment ruling, the Court granted summary judgment against Class 1 with respect to all drugs "furnished in 2004" (when reimbursement was set at 85% of AWP) because, when Congress enacted the MMA in 2003, "Congress clearly did understand AWP was different than average sales price and was not reflective of actual prices in the marketplace." *In re AWP*, 460 F. Supp. 2d at 288 (emphasis added). Thus, the Court has already determined that where an AWP-based co-payment is set by statute, the yardstick for liability and damages is based on what *Congress understood* about AWP, not what *consumers understood* about AWP. *Id.*

This result makes sense. Plaintiffs contended that HCFA and Congress chose AWP as the Medicare reimbursement benchmark with the expectation that the difference between a drug's average sales price and AWP would not exceed approximately 30%. The Court agreed with this contention, concluding that the AWPs for Procrit and Remicade were not excessive because they were within the range that HCFA and Congress expected. *In re AWP*, 491 F. Supp. 2d at 56, 104. It follows that neither the Medicare program (which paid 80% of the reimbursement amount), nor Medicare beneficiaries (who paid 20%), paid more for Procrit and Remicade than Congress intended them to pay. Put differently, for drugs with moderate spreads within the range that HCFA and Congress expected, the government was not duped, and the percentage co-payments that the government assigned to Medicare beneficiaries were not excessive. Indeed, Dr. Hartman conceded at trial that application of his 30% yardstick to Procrit

and Remicade yielded $0 in damages for Medi-Gap insurers in Class 2. Exh. 12 (12/11/06 Trial
Tr.) at 95:1-6. By definition, the same 30% yardstick would yield $0 in damages for Medicare
beneficiaries in Class 1.

It is perfectly appropriate to look to the government's understanding of AWP to
determine the liability standard for Medicare beneficiaries in Class 1. Congress enacted the
Medicare program for the benefit of consumers in Class 1. *In re AWP*, 460 F. Supp. 2d at 279.
These consumers knew nothing about AWP. They depended on the federal government to set
the reimbursement rate and impose appropriate statutory co-payments. As Dr. Eric Gaier
testified, "individual Medicare beneficiaries are in some sense protected by Medicare. I mean,
they don't go in and choose the amount of their reimbursement. It's set by Medicare . . . ." Exh.
13 (11/29/06 Trial Tr.) at 88:3-6.

An apt analogy is found in the "learned intermediary" rule concerning a
pharmaceutical manufacturer's duty to warn about the potential adverse effects of its
medications. Based on this doctrine, the duty to warn runs to the physician, not to the patient.
As the First Circuit Court of Appeals explained in *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80
(1st Cir. 1992), "[t]he rationale underlying the prescription drug rule is that the prescribing
physician, as the 'learned intermediary' standing between the manufacturer and
consumer/patient, is generally in the best position to evaluate the potential risks and benefits of
ingesting a certain drug and to advise the patient accordingly." (citing *Thomas v. Hoffman-
LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir.), cert. denied, 504 U.S. 956, 112 S. Ct. 2304, 119 L.
Ed. 2d 226 (1992)).

Here, government officials chose AWP knowing that it was based on a fixed
markup over WAC. These officials stand between the manufacturer and the consumer because

they were in the best (indeed only) position to evaluate whether AWP was an appropriate reimbursement benchmark.  Of course, based on the logic of the Court's 2007 liability opinion, if the manufacturer duped the government by creating "mega-spreads" that were not within the expected range, then the manufacturer can be held liable for taking unfair advantage of the government's reimbursement system.  *In re AWP*, 491 F. Supp. 2d at 31.  But if, as in the case of the J&J Defendants, the manufacturer's spreads were not excessive, then the government was not duped, and neither the Medicare program nor Medicare beneficiaries can be said to have "overpaid" for the drug.

Moreover, if the Court were to find that the consumer's lack of knowledge about spreads gives rise to potential liability for drugs with spreads within the range of government expectations, then liability could attach anytime the government elects to reimburse a provider at a premium over acquisition cost.  This would include, for example, the current reimbursement system based on average sales price.  Under the current system, Congress decided to give physicians a statutory margin of six percent over average sales price.  *In re AWP*, 460 F. Supp. 2d at 283 & n.6.  Consumers, presumably, are not aware of this "spread," and many of them might credibly claim that they assume physicians are reimbursed at no more than their acquisition cost.  It would nevertheless be absurd to conclude that such consumers, because they are unaware of the six percent margin, would have a claim against the pharmaceutical manufacturer.  If the drug's spread is within the range that the federal government expected, the consumer should not have a cause of action under any state's law.

F.     **The Other Liability Factors Identified in the Court's June 2007 Liability Opinion Do Not Provide Any Reason To Deny Summary Judgment**

The evidence presented at the bench trial on Classes 2 and 3 enabled the Court to fully evaluate each of the liability factors identified in its June 2007 decision.  Although the

"most important" factor—whether the spreads on Procrit and Remicade exceeded approximately 30%—was undisputed, the facts relating to the other, less important liability factors were hotly contested.  Notably, the Court resolved nearly all of those fact disputes *against* the J&J Defendants and in favor of plaintiffs.  For example, the Court found that J&J Defendants' conduct was "at times troubling," that they sometimes "marketed the spread," etc.  *In re AWP*, 491 F. Supp. 2d at 31, 103-04.

This is not the occasion to revisit the Court's findings of fact.  Suffice it to say that the J&J Defendants do not necessarily agree with them.[6]  However, disagreements over the Court's findings are irrelevant to whether the J&J Defendants are entitled to summary judgment. If a jury were to resolve these fact disputes in favor of the J&J Defendants, the outcome of the trial would be the same as in the Track One bench trial.  Thus, consideration of the secondary liability factors identified in the Court's June 2007 decision does not provide a reason to deny summary judgment.

G.     **The Liability Standard Applied in the Track One Trial and Applicable to Class 1 Was the Broadest in the Nation**

The Massachusetts consumer protection statute is considered one of the most pro-consumer statutes in the country.  *See Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394, 813 N.E.2d 476, 491 (2004) ("G.L. c. 93A is a statute of broad impact, which forms a comprehensive substantive and procedural business and consumer protection package." (internal quotation marks omitted)); *see also* Harold K. Gordon, *Eat, Drink, and Sue:  A New Mass Tort?*, N.Y.L.J., Mar. 30, 2006, at 5 (noting that Massachusetts is a favored forum for consumer class actions due

---

[6] The J&J Defendants wish to preserve, to the maximum extent possible, their right to object to or appeal from any ruling they believe was erroneous.

to its "liberal consumer protection law").  In fact, plaintiffs concede that Ch. 93A is the broadest

consumer protection statute in the United States:

> The Court:  What would you say … would be the broadest state
> consumer protection statute?
>
> Mr. Berman:  Massachusetts, Your Honor.
>
> The Court:  More than California?
>
> Mr. Sobol:  Yes.

Exh. 14 (5/23/06 Hrg. Tr.) at 51.  Thus, by plaintiffs' admission, the consumer protection statutes

of other states do not provide greater protection to consumers in comparison to Ch. 93A.

In cases governed by § 11 of Ch. 93A, where the plaintiff alleges "unfair" acts or

practices in the conduct of any trade or commerce, misconduct is not actionable unless it attains

a particular "level of rascality" or had "an extortionate quality that gives it the rancid flavor of

unfairness."  *See Commercial Union Ins. Co v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st

Cir. 2000) (internal citations omitted).  This higher standard was not applied in the Track One

trial, because the Court assessed defendants' liability under the more lenient provisions of § 9.

*In re AWP*, 491 F. Supp. 2d at 80-82, 93-94.  Moreover, where the plaintiff claims "deception"

under § 9, Massachusetts law is exceedingly liberal.  Conduct is "deceptive" if it possesses a

tendency to deceive.  *Leardi v. Brown*, 394 Mass. 151, 156, 474 N.E.2d 1094, 1099 (1985).  A

plaintiff claiming deception is not required to prove that the deception was intentional.  *Aspinall*,

442 Mass. at 394, 813 N.E.2d at 486.

The Court's decision to evaluate plaintiffs' claims under § 9 gave plaintiffs every

advantage.  They tried their claims under the most liberal provision of the nation's broadest

consumer protection statute, yet they did not show that the J&J Defendants' conduct was

deceptive or unfair.  As we discuss below, the J&J Defendants are entitled to summary judgment under the consumer protection statutes of the other certified states as well.

## II.  SUMMARY JUDGMENT IS WARRANTED BASED ON A STATE-BY-STATE ANALYSIS OF THE APPLICABLE UNFAIR TRADE PRACTICES STATUTES

Plaintiffs provided a "Summary of State Unfair Trade Practice Law" as part of their April 6, 2007 submission in support of the proposed jury instructions for the Class 1 AstraZeneca trial.  Exh. 15 (Pls.' Proposed Jury Instruction Mem.) at App. C.  Plaintiffs emphasized in the memorandum that accompanied that submission that most of the variations in the Unfair and Deceptive Trade Practices Acts ("UDTPAs") of the various states were "immaterial to Class Plaintiffs' evidence and claims."  *Id.* at 17.  Plaintiffs argued that the states' different definitions of intent and knowledge were "immaterial," because all of the UDTPAs that require proof of intent are satisfied by proof of "intentional misconduct," which plaintiffs said they were prepared to prove.  *Id.*; *see also In re AWP*, 230 F.R.D. at 85 (noting that plaintiffs were pressing "only the theory that defendants intentionally made fraudulent misrepresentations of AWP").  Plaintiffs also argued that differences in the causation standards were "not material," because all state UDTPAs can be satisfied by proof of "direct, 'but for' causation," which they said they would also prove.  Exh. 15 at 18-19.  Thus, even if there were relevant, material differences in state UDTPAs, which plaintiffs deny, consumers in a Class 1 jury trial would not benefit from a more lenient standard of proof than the Court applied in the Track One trial under § 9 of Ch. 93A.  To the contrary, in order to persuade the Court that trial of a nationwide class was manageable, plaintiffs undertook to try their claims based on standards of proof that, in certain respects, are more onerous than those imposed by Ch. 93A.

The following sections explain why summary judgment should be entered in favor of the J&J Defendants under the UDTPA of every state whose residents are included in

14

Class 1.  The states are grouped according to different criteria.  Because the criteria are not

mutually exclusive, some states are listed in more than one group.  A short, two-page summary

of the applicable legal requirements is provided as an Appendix to this Memorandum.

### A. The Residents of South Carolina and Tennessee Must Be Dismissed From Class 1 Because Their Unfair Trade Practices Statutes Do Not Permit Class Actions

#### 1. South Carolina, Tennessee

When the Court certified Class 1 in 2006, it included consumers claiming under

the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq*, and the

Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.  See In re AWP*, 233

F.R.D. 229, 230-31 (D. Mass. 2006).  Since then, the South Carolina Supreme Court has ruled

that the South Carolina Unfair Trade Practices Act "prohibits a plaintiff from bringing a suit in a

representative capacity" and, therefore, "SCUTPA claims may not be maintained in a class

action law suit."  *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C.

2009).  In so holding, the court was construing S.C. Code Ann. § 39-5-140, which provides,

> Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 *may bring an action individually, but not in a representative capacity*, to recover actual damages.

S.C. Code Ann. § 39-5-140(a) (emphasis added).

Similarly, the Tennessee Supreme Court has held that the Tennessee Consumer

Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*, does not allow class actions.  *See Walker

v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308-11 (Tenn. 2008) (holding that

language of Tenn. Code Ann. § 47-18-109(a)(1) providing that "'[a]ny person ... *may bring an

action individually* to recover actual damages'" was unambiguous, and declining to "extend the

statute's provisions beyond its obvious meaning" (emphasis in original)).

In light of these recent holdings, consumers in South Carolina and Tennessee must be dismissed from Class 1.

**B.     The J&J Defendants Are Entitled to Summary Judgment in Those States That Require Proof of Actual Injury**

**1.     Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Idaho, Illinois, Kansas, Maryland, Michigan, Missouri, Nebraska, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Utah, Washington, Wisconsin, Wyoming**

Under the laws of most states, including Massachusetts, plaintiffs cannot prevail absent proof that the defendant's deceptive or unfair conduct resulted in a cognizable loss.  *See Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 791, 840 N.E.2d 526, 528 (2006) ("Proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under our consumer protection statute [Ch. 93A].").[7]  Based on

---

[7] *See Holeman v. Neils*,  803 F. Supp. 237, 242 (D. Ariz. 1992) (private claim under Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*, requires proof of "consequent and proximate injury"); Ark. Code Ann. § 4-88-113(f) (providing cause of action to "[a]ny person who suffers actual damage or injury as a result of an offense or violation"); Cal. Civ. Code § 1780(a) (damages must be "as a result of" the unlawful practice [defined by Cal. Civ.  Code § 1770]); *Buckland v. Threshold Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 550 (Ct. App. 2007) ("[Cal. Civ.  Code § 1780] actions [for damages] may be b[r]ought only by a consumer who suffers *any damage as a result of the use or employment* of a proscribed method, act, or practice.  This language does not create an automatic award of statutory damages upon proof of an unlawful act.  Relief under [Cal. Civ.  Code § 1780] is specifically limited to those who suffer damage, making causation a necessary element of proof." (internal quotation marks omitted) (emphasis in original)); *Walker v. Geico General Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. ) (standing under Cal. Bus. & Prof. Code §17200 "requires a plaintiff to establish that it has 'suffered injury in fact and has lost money or property'" (quoting Cal. Bus. & Prof. Code §17204)), *cert. denied*, 2009 WL 2406256 (U.S. Oct. 13, 2009); *Hall v. Walter*, 969 P.2d 224, 231, 235 (Colo. 1998) (rejecting "literal reading of the phrase 'any person' [which] would permit a private cause of action regardless of whether the plaintiff had suffered injury in fact" and holding that Colo. Rev. Stat. § 6-1-113 requires "that the challenged practice caused the plaintiff's injury"); Conn. Gen. Stat. § 42-110g(a) ("Any person who suffers any ascertainable loss of money or property . . . as a result of [a violation of] section 42-110b, may bring an action . . . to recover actual damages."); *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975) ("[T]he individual consumer harmed by a violation of § 2513 [is] allowed to recoup any actual losses suffered as a result of fraud or deception practiced against him."); *see also Crowell Corp. v. Himont USA, Inc*., 1994 WL 762663, at *4 (Del. Super. Ct. Dec. 8, 1994) ("[A]ll damages proximately caused by and naturally flowing from a violation of the Act are recoverable."); Fla. Stat. §501.211(2) ("[A] person who has suffered a loss as a result of a violation of this part . . . may recover actual damages" and costs.); *see also Rollins, Inc. v. Butland*, 951

(footnote continues on next page)

So.2d 860, 869 (Fla. Dist. Ct. App. 2006) ("[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."); *Shurtliff v. Northwest Pools, Inc*., 815 P.2d 461, 464 (Idaho Ct. App. 1991) ("[A]n ascertainable loss of money or property must be proved in order for a person to be awarded damages under [Idaho Code Ann.] § 48-608(1)."); 815 Ill. Comp. Stat. 505/10a (limiting private actions to "any person who suffers actual damage as a result of a violation"); *Oliveira v. Amoco Oil Co*., 776 N.E.2d 151, 155 (Ill. 2002) (plaintiff must "demonstrate that the fraud complained of proximately caused" actual damages); Kan. Stat. Ann. § 50-634(d) ("A consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused by an act or practice" violating the statute.); *CitaraManis v. Hallowell*, 613 A.2d 964, 968 (Md. 1992) ("It is manifest from the language employed in § 13-408(a) that the General Assembly intended that a plaintiff pursuing a private action under the CPA prove actual 'injury or loss sustained.'"); Mich. Comp. Laws § 445.911(3) ("A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by" a violation.); Mo. Rev. Stat. § 407.025(1) ("Any person who . . . suffers an ascertainable loss of money or property. . . as a result of [a violation of] section 407.020, may bring a private civil action . . . to recover actual damages."); *Willard v. Bic Corp*., 788 F. Supp. 1059, 1070 (W.D. Mo. 1991) (plaintiff must show that "an injury was proximately caused by defendant's actions"); Neb. Rev. Stat. § 59-1609 ("Any person who is injured in his or her business or property by a violation of sections 59-1602 to 59-1606 . . . may bring a civil action . . . to recover the actual damages" plus costs.); N.J. Stat. Ann. § 56:8-19 ("Any person who suffers any ascertainable loss of moneys or property. . . as a result of [a violation] . . . may bring an action"); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 464 (N.J. 1994) ("'causation' provision [of N.J. Stat. Ann. § 56:8-19]. . . requires plaintiff to prove that the unlawful consumer fraud caused" an "ascertainable loss"); N.M. Stat. § 57-12-10(B) (any person who suffers a "loss of money or property . . .as a result of" unlawful acts may bring an action); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000) (plaintiff must have "suffered [actual] injury as a result of the deceptive act"); *Wilson v. Blue Ridge Elec. Membership Corp*., 578 S.E.2d 692, 694 (N.C. Ct. App. 2003) (plaintiff must show that violation "proximately caused actual injury to plaintiff"); Okla. Stat. tit. 15 § 761.1(A); *see also Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000) (unlawful practice must have caused the plaintiff injury in fact); Or. Rev. Stat. § 646.638(8) (class plaintiffs can recover statutory damages "only if the plaintiffs in the action establish that the members have sustained an ascertainable loss of money or property as a result of" a violation); *see also Hedrick v. Spear*, 907 P.2d 1123, 1126 (Or. Ct. App. 1995) (although "*amount* of ascertainable loss [need not be proven] in order to recover nominal damages . . . there must, at least, be *some* cognizable loss" (emphasis in original) (internal citation omitted)); 73 Pa. Cons. Stat. § 201-9.2(a) (any person who "suffers any ascertainable loss of money or property . . . as a result of [a violation] . . . may bring a private action to recover actual damages"); R.I. Gen. Laws § 6-13.1-5.2(a) (providing private action for any person who "suffers any ascertainable loss of money or property . . . as a result of" a violation); S.D. Codified Laws § 37-24-31 (providing private action for "the recovery of actual damages suffered as a result of" a violation); *see also Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W.2d 184, 197 (S.D. 2007) (plaintiffs "must … plead[] that their economic damages were proximately caused by" a violation); Utah Code Ann. § 13-11-19(4)(a) ("A consumer who suffers loss as a result of a violation of this chapter may bring a class action for the actual damages caused by an act or practice" previously held to violate Act by a court or enforcing authority); *Leingang v. Pierce County Med. Bureau., Inc.,* 930 P.2d 288, 296 (Wash. 1997) ("To prevail in a private action brought under the Consumer Protection Act, [Wash. Rev. Code § 19.86.090], the plaintiff must establish that . . . [he] has suffered injury in his or her business or property [and] a causal link exists between the unfair or deceptive act and the injury suffered."); Wis. Stat. § 100.18(11)(b)(2) ("Any person suffering pecuniary loss because of a violation of this section … may sue … [to] recover such pecuniary loss" and costs); *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 798 (Wis. 2007) (one element of private claim under Act is "that the representation caused the plaintiff a pecuniary loss"); Wyo. Stat. Ann.§ 40-12-108(a) ("A person relying upon an uncured unlawful deceptive trade practice may bring an

(footnote continues on next page)

the 30% yardstick Dr. Hartman used to calculate liability and damages, Class 1 was not damaged

by the J&J Defendants' AWPs. *See* Exh. 12 (12/11/06 Trial Tr.) at 95:1-6 ($0 damages for Class

2).

Moreover, in the case of the J&J Defendants, plaintiffs were not damaged by any

of the other practices that the Court considered in determining whether the defendant's conduct

was "unfair" (*e.g.*, "marketing the spread"). Although the Court considered this conduct relevant

to assessing *liability* under Ch. 93A, there is no evidence that plaintiffs suffered a loss because of

it. To the contrary, plaintiffs' damages calculations were based solely on Dr. Hartman's

"formulaic" measurement of reimbursement payments based on spreads in excess of 30%.

Conduct that did not result in spreads greater than 30% did not cause a cognizable loss. *Id.*

### C.   The J&J Defendants Are Entitled to Summary Judgment Against Class Members in States That Do Not Provide a Right to a Jury Trial

#### 1.   Illinois, Nebraska, New Hampshire, California

Certain state UDTPAs do not provide the right to a jury trial. These states are

Illinois,[8] Nebraska,[9] and New Hampshire.[10] Further, there is no right to a jury for claims brought

under § 17200 of California's Business & Professional Code.[11] Thus, in these non-jury states, as

in Massachusetts, this Court's findings of fact are dispositive. There is no possibility or occasion

for a jury to decide the facts differently than they have already been decided by the Court.

---

action … for the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice.").

[8] 815 Ill. Comp. Stat. 505/1, *et seq.*; *see Martin v. Heinold Commodities*, *Inc.*, 643 N.E.2d 734, 754 (Ill. 1994).

[9] Neb. Rev. Stat § 59-1601, *et seq.*; *see Raad v. Wal-mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1004 (D. Neb. 1998).

[10] N.H. Rev. Stat. § 358-A:1, *et seq.*; *see Hair Excitement, Inc. v. L'Oreal U.S.A., Inc.*, 965 A.2d 1032, 1036-38 (N.H. 2009).

[11] *See Okura & Co. v. Careau Group*, 783 F. Supp. 482, 491 (C.D. Cal. 1991).

Summary judgment in favor of the J&J Defendants in these states is appropriate for the same reasons it is appropriate in Massachusetts.  Plaintiffs do not contend that the applicable liability standards are materially different than the standard imposed under Ch. 93A.  To the contrary, they characterize them as being essentially similar.  *Compare* Exh. 15 at App. C, 40-42 (MA law), *with id.* at App. C, 6-7 (§ 17200, CA law), 28-29 (IL law), 55 (NE law), and 59-60 (NH law).

The Court has already found that the J&J Defendants' conduct was not "deceptive or unfair" under the liberal standard in Ch. 93A.  The Court's findings warrant entry of summary judgment in favor of the J&J Defendants in Illinois, Nebraska, New Hampshire, and under § 17200 of the California Business & Professional Code.[12]

### 2.        North Carolina

In a similar vein, the J&J Defendants are entitled to summary judgment in North Carolina because, under the North Carolina statute (N.C. Gen. Stat. § 75-1.1(a)), the court determines whether the defendant's acts or practices are deceptive or unfair.  *See Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643, 650-51 (N.C. Ct. App. 1990); *see also In re AWP*, 252 F.R.D. 83, 110 n.26 (D. Mass. 2008).  The Court has already found that the J&J Defendants' conduct was not deceptive or unfair.  *In re AWP*, 491 F. Supp. 2d at 103-04.  Accordingly, based on this Court's existing findings, summary judgment should be entered against Class 1 residents of North Carolina.

---

[12] Whether Wisconsin's consumer protection statutes provide a right to a jury trial is unsettled; the issue is currently the subject of briefing in a case pending in Wisconsin state court.

**D.     The J&J Defendants Are Entitled to Summary Judgment Against Class Members Residing in States with Uniquely Onerous Consumer Protection Statutes**

**1.     Ohio, Utah**

The UDTPAs in Ohio and Utah have "uniquely onerous elements" that Plaintiffs concede they are unable to meet in the context of a class action.  *See In re AWP*, 252 F.R.D. at 95 ("Plaintiffs have not sought to certify the classes under the UDTPAs of Ohio and Utah because of their 'uniquely onerous elements.'" (quoting Dkt. # 49034)).  Specifically, in order to recover damages in a class action, Ohio requires that the challenged practice previously have been declared to be deceptive or unconscionable by prior rule or court decision.  *See* Ohio Rev. Code § 1345.09(B).  Utah requires that the specific practice must previously have been declared to violate the Utah Consumer Sales Practices Act.  *See* Utah Code Ann. § 13-11-19(4)(a).  Because there are no such rulings or decisions, the J&J Defendants are entitled to summary judgment against Class 1 in Ohio and Utah.  *See also* Exh. 15 at App. C, 73 (OH law) and 93 (UT law).

**E.     The J&J Defendants Are Entitled to Summary Judgment on Claims Brought Under California Civil Code § 1770**

**1.     California Civil Code § 1770**

Unlike § 17200 of California's Bus. & Prof. Code which broadly prohibits business acts or practices that are "unlawful, unfair or fraudulent," *see In re AWP*, 252 F.R.D. at 95, Cal. Civ. Code § 1770 narrowly prohibits a specific set of proscribed conduct, including, relevant here:

> (5) Representing that goods or services have . . . characteristics . . . which they do not have. . . ;
> . . . .
>
> (7) Representing that goods . . . are of a particular standard . . . if they are of another;
> . . . .

(9) Advertising goods or services with intent not to sell them as
advertised; [and]
. . . .

(13) Making false or misleading statements of fact concerning
reasons for, existence of, or amounts of price reductions.

Cal. Civ. Code § 1770(a).

In ruling on plaintiffs' motion to certify nationwide classes for Classes 2 and 3,

the Court determined that the statements at issue in this case "do not constitute

misrepresentations about standards, characteristics, price reductions or advertising of goods." *In

re AWP*, 252 F.R.D. at 95. This holding applies with equal force to the claims by Medicare

consumers in Class 1. Accordingly, the J&J Defendants are entitled to summary judgment under

Cal. Civ. Code § 1770.

**F.     The J&J Defendants Are Entitled to Summary Judgment Against
         Class Members in States that Require Proof of Reliance**

**1.     Arizona, California, Indiana, Maryland, Michigan, Minnesota,
         North Carolina, Oregon, Pennsylvania, South Dakota,
         Wyoming**

In ruling on plaintiffs' motion for nationwide classes for Classes 2 and 3, the

Court determined that the following states' UDTPAs require proof of reliance: Arizona,[13]

Maryland,[14] North Carolina,[15] Oregon,[16] Pennsylvania,[17] South Dakota, [18] and Wyoming.[19]  *In re*

---

[13] Ariz. Rev. Stat. § 44-1522(A) *et seq.*; *see also Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992); *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978).

[14] Md. Code Com. Law § 13-301, *et seq.*; *see also Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 235 (Md. 2000).

[15] N.C. Gen. Stat. § 75-1, *et seq.*; *see also Howerton v. Arai Helmet, Ltd.*, 581 S.E.2d 816, 830 (N.C. Ct. App. 2003), *rev'd on other grounds*, 597 S.E.2d 674 (N.C. 2004).

[16] Or. Rev. Stat § 646.608, *et seq.*; *see also Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1047 (Or. Ct. App. 2000).

[17] 73 Pa. Cons. Stat. §§ 201-1, *et seq.*; *see also Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001).

*AWP*, 252 F.R.D. at 97-99.  In addition, the Court concluded that Michigan[20] requires proof that reliance would have been reasonable.  *Id.* at 98 n.16.  Minnesota is similar in that, while proof of individual reliance is not required, reliance is nevertheless a component of the causal nexus that must be shown by either direct or circumstantial evidence.[21]  Indiana's statute expressly requires reliance.  *See* Ind. Code § 24-5-0.5-4(a) ("A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater.").  Further, in a decision rendered after this Court's ruling on plaintiffs' Class 2 and 3 certification motion, the California Supreme Court concluded that a plaintiff must prove individualized reliance unless the "false statements were part of an extensive and long-term advertising campaign."  *In re Tobacco II Cases*, 207 P.3d 20, 40-41 (Cal. 2009).[22]

As an initial matter, it is undisputed that Class 1 consumers did not individually rely upon published AWPs when they made statutory co-payments.  Acknowledging this fact, the Court ruled that, for Class 1 consumers who made percentage co-payments based on AWP, "there is no indication that different definitions of reliance and causation will matter or cannot be resolved as a matter of law prior to trial."  *In re AWP*, 230 F.R.D. at 85.

---

[18] S.D. Codified Laws § 37-24-1, *et seq.*; *see also Northwestern Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 973-74 (D.S.D. 2002).

[19] Wyo. Stat. Ann. § 40-12-101, *et seq.*

[20] Mich. Comp. Laws § 445.903, *et seq.*; *see also Dix v. Am. Bankers Life Assur. Co. of Fla.*, 415 N.W.2d 206, 209-10 (Mich. 1987).

[21] *See, e.g., Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13-14 (Minn. 2001) ("[W]here, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. Therefore, in a case such as this, it will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement.").

[22] In its Class 2 and 3 decision, the Court described California case law on reliance as being "in a state of flux."  *In re AWP*, 252 F. Supp. 2d at 99.

The reliance issue for Class 1 is now ripe for summary judgment in favor of the J&J Defendants. In fact, the issue has already been addressed in the context of Non-Medicare consumers in Class 3. The Court ruled that consumers in Class 3 who were beneficiaries of sophisticated TPPs could not prove reliance because "the knowledge of the TPP is imputed to the consumer." *In re AWP*, 252 F.R.D. at 97 (citing Restatement (Third) of Agency § 5.03 (2006)). Medicare consumers in Class 1 cannot establish reliance for the same reason. What Class 1 did not know about spreads, the government did know. The government's expectation of spreads in the range of 30% should be imputed to Class 1 as a matter of law. Because the government's knowledge should be imputed to Class 1, consumers in states that require proof of reliance cannot prove their claims.

As the J&J Defendants have stressed throughout this memorandum, the federal government picked AWP as the reimbursement benchmark, so only the government can be said to have "relied" on published AWPs. In the case of "mega-spreads," which the Court found the government did not know about until 2001, *In re AWP*, 491 F. Supp. 2d at 41, the government's reliance on published AWPs may have been misplaced. But the opposite is true for drugs with spreads within the 30% range that the government understood and expected. For those drugs, including Procrit and Remicade, the government's reliance on AWP was not misplaced, and the government's decision to base reimbursement on published AWPs did not result in unexpected or excessively large reimbursement payments. Accordingly, summary judgment should be entered in Arizona, California, Indiana, Maryland, Michigan, Minnesota, North Carolina, Oregon, Pennsylvania, South Dakota, and Wyoming.

G.   **The J&J Defendants Are Entitled to Summary Judgement Against Class Members in States that Prohibit "Deceptive" Acts, "Unfair" Conduct, or Conduct that Is "Unconscionable"**

1.   **Arizona, Colorado, Delaware, District of Columbia, Indiana, Michigan, Minnesota, Nevada, New York, North Dakota, Oregon, Pennsylvania, Utah**

The Court has already determined that many state statutes, while prohibiting "false, misleading or deceptive" acts and practices, do not prohibit practices that are "unfair" or "unconscionable." This ruling applies to Arizona, Colorado, Delaware, the District of Columbia, Michigan, Minnesota, Nevada, New York, North Dakota, Oregon, Pennsylvania and South Dakota.[23] In addition, the applicable statutes in Indiana and Utah are also limited to "deceptive" acts.[24] In these "deception-only" states, the secondary liability factors identified in the Court's June 2007 liability decision, *e.g.*, "marketing the spread," would play no role in determining liability.

It is undisputed that the J&J Defendants did not make deceptive statements to consumers, as consumers were never exposed to published AWPs. Thus, under Plaintiffs' liability theory, Class 1 cannot prevail absent proof that the HCFA and Congress were deceived by spreads in the range of 30%.

Because plaintiffs admit that the government knew of spreads in the range of 30%, no reasonable jury could conclude that HCFA and Congress were deceived by the spreads on Procrit and Remicade. Accordingly, the Court should enter summary judgment against

---

[23] *See In re AWP*, 252 F.R.D. at 95, 110-11, App. D (*citing* Arizona (Ariz. Rev. Stat. § 44-1522(A)); Colorado (Colo. Rev. Stat. § 6-1-105(1)(*l*)); Delaware (Del. Code tit. 6 § 2513(a)); District of Columbia (D.C. Code § 28-3904(e)); Michigan (Mich. Comp. Laws § 445.903(1)(bb)); Minnesota (Minn. Stat. § 325F.69); Nevada (Nev. Rev. Stat. § 598.0915); New York (N.Y. Gen. Bus. Law § 349(a)); North Dakota (N.D. Cent. Code § 51-15-02); Oregon (Or. Rev. Stat. § 646.608(1)(s)); Pennsylvania (73 Pa. Cons. Stat. §§ 201-3, 201-2(4)); and South Dakota (S.D. Codified Laws § 37-24-6(1))).

[24] *See* Ind. Code § 24-5-0.5-3(a); Utah Code Ann. § 13-11-4.

Class 1 in states that prohibit "deceptive" conduct, but that do not also prohibit "unfair" or

"unconscionable" conduct.

> ###    2.    Connecticut, Florida, Hawaii, Illinois, Maryland, Missouri, Nebraska, New Hampshire, North Carolina, Oklahoma, Rhode Island, Vermont, Washington, West Virginia, Wisconsin, Wyoming

Several states besides Massachusetts prohibit "unfair" conduct, in addition to

"deceptive" conduct.[25]  These states are Connecticut, Florida, Hawaii, Illinois, Maryland,

Missouri,[26] Nebraska, New Hampshire, North Carolina, Oklahoma, Rhode Island, Vermont,

Washington, West Virginia, Wisconsin,[27] and Wyoming.

The Massachusetts standard for assessing "unfairness" is typical of the standard

applied in other states.  In considering whether conduct is unfair, Massachusetts considers:

---

[25] *See In re AWP*, 252 F.R.D. at 109-10, App. C (citing Conn. Gen. Stat. § 42-110b(a) ("No person shall engage in ... unfair or deceptive acts or practices in the conduct of any trade or commerce."); Fla. Stat. § 501.204(1) ("unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful"); Haw. Rev. Stat. § 480-2(a) ("unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful"); 815 Ill. Comp. Stat. 505/2 ("unfair or deceptive acts or practices ... in the conduct of any trade or commerce are hereby declared unlawful"); Md. Code Com. Law § 13-303(1) ("A person may not engage in any unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in: (1) The sale ... of any consumer goods."); Md. Code Com. Law § 13-301 ("Unfair or deceptive trade practices include any: ... (1) False, falsely disparaging, or misleading oral or written statement ... (9) Deception, fraud, false pretense, false premise, misrepresentation ... in connection with: (I) The ... sale of any consumer goods."); Neb. Rev. Stat. § 59-1602 ("unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful"); N.H. Rev. Stat. § 358-A:2 ("It shall be unlawful for any person to use ... any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."); N.C. Gen. Stat. § 75-1.1(a) ("unfair or deceptive acts or practices in or affecting commerce, are declared unlawful"); Okla. Stat. tit. 15, § 753(20) ("A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act ... [when that person] (20) Commits an unfair or deceptive trade practice as defined in Section 752 of this title.")); R.I. Gen. Laws § 6-13.1-1(6) ("'unfair or deceptive acts or practices' means any one or more of the following . . . "); Vt. Stat. Ann. tit. 9, § 2453(a) ("unfair or deceptive acts or practices in commerce, are hereby declared unlawful"); Wash. Rev. Code § 19.86.020 ("unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful"); W.Va. Code § 46A-6-104 ("unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful"); and Wyo. Stat. § 40-12-105(a)(xv) ("A person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly: ... (xv) Engages in unfair or deceptive acts or practices.")).

[26] *See* Mo. Rev. Stat. § 407.020(1).

[27] *See* Wis. Stat. § 100.20.

> (1) whether the practice . . . is within at least the penumbra of some
> common-law, statutory, or other established concept of unfairness;
> (2) whether it is immoral, unethical, oppressive, or unscrupulous;
> (3) whether it causes substantial injury to consumers (or
> competitors or other businessmen).

*PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass 593, 596, 321 N.E.2d 915, 917-18 (1975)

(internal quotation marks omitted).

Applying Massachusetts law, the Court held that "defendants' actions cannot be said to be unfair . . . within the meaning of Chapter 93A so long as the spread stayed generally within th[e] expected range." *In re AWP*, 491 F. Supp. 2d at 32. This conclusion applies with equal force under the nearly identical unfairness standards of Connecticut, Florida, Hawaii, Illinois, Maryland, Missouri, Nebraska, New Hampshire, North Carolina, Oklahoma, Rhode Island, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.[28]

---

[28] *See, e.g., Willow Springs Condo Ass'n v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 99-100 (Conn. 1998) (act or practice is unfair if it (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers, competitors or other business persons); *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001) (an unfair practice is one that "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"); *State by Bronster v. United States Steel Corp.*, 919 P.2d 294, 313 (Haw. 1996) (same as Florida); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (factors to consider are "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers"); *Legg v. Castruccio*, 642 A.2d 906, 915 (Md. Ct. Spec. App. 1994) (factors to consider in determining unfairness are (1) "whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness"; (2) "whether it is immoral, unethical, oppressive, or unscrupulous"; and (3) "whether it causes substantial injury to consumers," as refined by Letter from Federal Trade Commission to Senators Ford and Danforth (Dec. 17, 1980), *reprinted in* H.R. Rep. No. 98-156, Pt. 1, at 33-40 (1983)); *Schuchman v. Air Servs. Heating & Air Conditioning*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) (unfair if it "(1) offends any public policy as it has been established by the Constitution, statutes or common law of this state or by the Federal Trade Commission, or its interpretive decisions *or* (2) is unethical, oppressive, or unscrupulous; *and* (3) presents a risk of, or causes, substantial injury to consumers" (emphasis in original)); *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998) (factors to consider are whether (1) the practice fell within some common-law, statutory, or other established concept of unfairness, or (2) was immoral, unethical, oppressive, or unscrupulous); *Chroniak v. Golden Inv. Corp.*, 983 F.2d 1140, 1146 (1st Cir. 1993) ("practice is "unfair" [under New Hampshire statute] if (1) it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness, (2) it is immoral, unethical,

(footnote continues on next page)

No reasonable jury could find that reporting AWPs within the range the government expected violates an "established public policy" or is "immoral, unethical, oppressive, or unscrupulous."  Similarly, the AWPs for Procrit and Remicade cannot be said to have "cause[d] substantial injury to consumers," because, as plaintiffs admit, Dr. Hartman's damages calculations show that the Medicare program and its beneficiaries did not "overpay" for Procrit and Remicade.  *See* Exh. 12 (12/11/06 Trial Tr.) at 95:1-6 ($0 damages for Class 2).  Thus, summary judgment should be granted under the unfairness standards of Connecticut, Florida, Hawaii, Illinois, Maryland, Missouri, Nebraska, New Hampshire, North Carolina, Oklahoma, Rhode Island, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

---

oppressive, or unscrupulous, or (3) it causes substantial injury to consumers" (internal quotation marks omitted)); *Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643, 650 (N.C. Ct. App. 1990) ("A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."); Okla. Stat. Tit. 15, § 752(14) ("'Unfair trade practice' means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."); *Vermont Mobile Home Owners' Ass'n, Inc. v. Lapierre*, 94 F. Supp. 2d 519, 522 (D. Vt. 2000) (factors to consider are "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." (internal quotation marks omitted)); *Blake v. Federal Way Cycle Ctr.*, 698 P.2d 578, 583 (Wash. Ct. App. 1985) (same as Maryland); *see also* R.I. Gen. Laws § 6-13.1-3 ("It is the intent of the legislature that, in construing this article, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters."); Tenn. Code Ann. § 47-18-115 (act "shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1))"); W. Va. Code § 46A-6-101(1) ("It is the intent of the legislature that, in construing this article, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters.").

3.      **Arkansas, Florida, Idaho, Kansas, New Jersey, New Mexico, Texas**

A few states prohibit "unconscionable" practices.  These states include Arkansas, Florida, Idaho, Kansas,[29] New Jersey, New Mexico, and Texas.[30]  Kansas's definition of an unconscionable act is typical:

> (1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;
>
> (2) when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;
>
> (3) the consumer was unable to receive a material benefit from the subject of the transaction;
>
> (4) when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;
>
> (5) the transaction the supplier induced the consumer to enter into was excessively one-sided in favor of the supplier;
>
> (6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and
>
> (7) except as provided by K.S.A. 50-639, and amendments thereto, the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability and fitness for a

---

[29] The applicable Kansas statute, (Kan. Stat. Ann. § 50-627(b)), provides that the question of whether an act or practice is "unconscionable" is decided by the court rather than the jury  *See Swanston v. McConnell Air Force Base Fed. Credit Union*, 661 P.2d 826, 830 (Kan. Ct. App. 1983); *see also* Exh. 15 (Pl. Jury Instruction Mem.) at App. C, 35 (same).  Thus, the only question that could be considered by a jury under Kansas law would be whether the Procrit and Remicade spreads were "deceptive."  Because plaintiffs conceded that the spreads on Procrit and Remicade were within Dr. Hartman's 30% yardstick, no reasonable jury could find that their spreads were deceptive.  *See In re AWP*, 491 F. Supp. 2d at 104 (finding "no secret or deceptive spreads").

[30] *See* Arkansas (Ark. Code Ann. § 4-88-107(a)(10)); Florida (Fla. Stat. § 501.204); Idaho (Idaho Code Ann. § 48-603(18)); Kansas (Kan. Stat. Ann. § 50-627(a)); New Jersey (N.J. Stat. Ann. § 56:8-2); New Mexico (N.M. Stat. § 57-12-3); and Texas (Tex. Bus. & Com. Code Ann. § 17.50(a)(3)).

particular purpose or any remedy provided by law for a breach of
those warranties.

Kan. Stat. Ann. § 50-627(b).[31]

No reasonable jury could find that the spreads on Procrit and Remicade were

"unconscionable" under this or any similar standard.  The J&J Defendants had no direct dealings

with consumers.  There is no evidence they tried to take advantage of any consumer's physical

infirmity, ignorance, illiteracy, or inability to understand the language of an agreement.  To the

contrary, plaintiffs admit that the J&J Defendants did not create "mega-spreads" and thus did not

take unfair advantage of the AWP-based reimbursement system.  Although the Court faulted the

J&J Defendants for sometimes "marketing the spread" on Procrit and Remicade, the spreads

were not excessive and there is no evidence that the marketing practices which troubled the

Court resulted in any type of harm to consumers.  There is also no evidence that the J&J

Defendants' prices were grossly excessive in comparison to the price of similar medications.  In

short, no reasonable jury could find that the J&J Defendants' conduct was "unconscionable"

---

[31] *See also* Idaho Code Ann. § 48-603C(2) (explaining that to determine unconscionability, Court should
consider "(a) Whether the alleged violator knowingly or with reason to know, took advantage of a
consumer reasonably unable to protect his interest because of physical infirmity, ignorance, illiteracy,
inability to understand the language of the agreement or similar factor; (b) Whether, at the time the
consumer transaction was entered into, the alleged violator knew or had reason to know that the price
grossly exceeded the price at which similar goods or services were readily available in similar
transactions by similar persons, although price alone is insufficient to prove an unconscionable method,
act or practice; (c) Whether the alleged violator knowingly or with reason to know, induced the consumer
to enter into a transaction that was excessively one-sided in favor of the alleged violator; (d) Whether the
sales conduct or pattern of sales conduct would outrage or offend the public conscience, as determined by
the court"); N.M. Stat. § 57-12-2(E) (defining unconscionable act as one that "(1) takes advantage of the
lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a
gross disparity between the value received by a person and the price paid"); Tex. Bus. & Com. Code Ann.
§ 17.45(5) (defining unconscionable act as "an act or practice which, to a consumer's detriment, takes
advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair
degree"); *cf. Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (unconscionable implies a "lack
of good faith, honesty in fact and observance of fair dealing" (internal quotation marks omitted)); *Baptist
Health v. Murphy*, 226 S.W.3d 800, 811 n.6 (Ark. 2006) (unconscionable act is one that "'affront[s] the
sense of justice, decency, or reasonableness'" (quoting Black's Law Dictionary 1561 (8th ed. 2004))).

within the meaning of the UDTPAs of Arkansas, Florida, Idaho, Kansas, New Jersey, New

Mexico, and Texas.

> **H.  The J&J Defendants Are Entitled to Summary Judgment Against Class Members in States that Require Misrepresentations to be Material**
>
> > **1.  California, Connecticut, District of Columbia, Hawaii, Illinois, Kansas, Maryland, Michigan, New Jersey, New York, Pennsylvania, Texas, Vermont**

In many states a misrepresentation is not actionable unless it is "material."  These

jurisdictions include California, Connecticut, the District of Columbia, Hawaii, Illinois, Kansas,

Maryland, Michigan, New Jersey, New York, Pennsylvania, Texas, and Vermont.[32]

Michigan's definition of a "material" misrepresentation is typical.  Under

Michigan law, a misrepresentation is material if it is important to a transaction or affects the

consumer's decisions.  *Laura v. DaimlerChrysler Corp.*, 711 N.W.2d 792, 794 (Mich. Ct. App.

2006).[33]

---

[32] *See Caro v. Proctor & Gamble Co.*, 22 Cal. Rptr. 2d 419, 432-33 & n.19 (Ct. App. 1993) (concerning Cal. Civ. Code 1770, *et seq.*); *Caldor, Inc. v. Heslin*, 577 A.2d 1009, 1013 (Conn. 1990) (concerning Conn. Gen. Stat. 42-110b(a)); D.C. Code § 28-3904(e); *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (plaintiff must allege material misrepresentation or omission); *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006) (adopting *Cliffdale Associates* test where an act or practice is deceptive if it is "(1)  a representation, omission or practice[] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) [] the representation, omission or practice is material); *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53-54 (7th Cir. 1995) (concerning 815 Ill. Comp. Stat. 505/2); Kan. Stat. Ann. § 50-626(b)(2); *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 713 (Md. 1999) (concerning Md. Code. Com. Law I § 13-301, *et seq.*); Mich. Comp. Laws § 445.903(1)(bb) (the applicable provision); *Ji v. Palmer*, 755 A.2d 1221, 1228 (N.J. Super Ct. App. Div. 2000) (concerning N.J. Stat. Ann. § 56:8-1, *et seq.*); *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000) (concerning N.Y. Gen. Bus. Law § 349, *et seq.*); *Colaizzi v. Beck*, 895 A.2d 36, 39-40 (Pa. Super. Ct. 2006) (concerning 73 Pa. Cons. Stat. § 201-2(4)(xxi) (the applicable catch-all provision)); *Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 567 (Tex. Ct. App. 1997) (concerning Tex. Bus. & Comm. Code Ann. § 17.41, *et seq.*); *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998) (concerning Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*).

[33] *See, e.g.*, *Caro*, 22 Cal. Rptr. at 433 ("A misrepresentation is material if it induced the plaintiff to alter his position to his detriment." (internal quotation marks omitted)); *Caldor*, 577 A.2d at 1013 (likely to affect consumer decisions or conduct); *Courbat*, 141 P.3d at 435 ("A representation, omission or practice is considered 'material' if it involves information that is important to consumers and, hence, likely to

(footnote continues on next page)

No reasonable jury could find that the J&J Defendants made a "material" misrepresentation concerning the AWPs for Procrit and Remicade.  In fact, plaintiff's expert, Dr. Rosenthal, conceded that there was no "misrepresentation" at all, because, in her opinion, a drug's AWP should "track" its average selling price, but "not certainly [be] equal."   Exh. 5 (11/27/06 Trial Tr.) at 71:10-13.  Given plaintiffs' admission that a drug's AWP should track but not equal its average selling price, publishing an AWP that does not result in an unexpected "mega-spread" cannot be a material misrepresentation.  Thus, no reasonable jury could find that the J&J Defendants made a "material" misrepresentation of fact when they reported AWPs that tracked average selling prices and did not exceed the 30% range that the government expected.

## CONCLUSION

For the foregoing reasons, the J&J Defendants respectfully request summary judgment with respect to Class 1 residents of the District of Columbia and states other than the Commonwealth of Massachusetts.

---

affect their choice of, or conduct regarding, a product." (internal quotation marks omitted)); *Ryan*, 59 F.3d at 54 ("To be material under Illinois law, the misrepresented fact must be essential to the transaction between the parties."); *Farrell v. General Motors*, 815 P.2d 538, 548 (Kan. 1991) (a matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction involved); *Luskin's, Inc*, 726 A.2d at 713 ("[A] material misrepresentation . . . involves information that is important to consumers and, hence, likely to affect their choice . . . of a product." (internal quotation marks omitted); *Ji,* 755 A.2d at 1228 ("A statement or matter is material if: (a) a reasonable person would attach importance to its existence in determining a choice of action ...; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." (internal quotation marks omitted)); *Colaizzi*, 895 A.2d at, 39-40 ("misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated"); *Carter*, 716 A.2d at 23 ("likely to affect the consumer's conduct or decision regarding the product").

Dated:  November 23, 2009

/s/ Andrew D. Schau
Andrew D. Schau
Adeel A. Mangi
Elizabeth Shofner
Michael Jacobsohn
**PATTERSON BELKNAP WEBB & TYLER** LLP
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000
*Attorneys for the J&J Defendants*

# APPENDIX

## STATE-BY-STATE UDTPA COMPARISON

| | |
|---|---|
| MA | actual damages required; no right to a jury trial; deceptive or unfair conduct required |
| AZ | actual damages required; reliance required; deception required |
| AR | actual damages required; deceptive or unconscionable conduct required |
| CA §1770 | actual damages required; failure to state a claim under § 1770 because specific unfair or deceptive conduct required; reliance required; materiality required |
| CA §17200 | actual damages required; no right to a jury trial on § 17200 claims; reliance required; unfair or fraudulent conduct required |
| CO | actual damages required; deception required |
| CT | actual damages required; deceptive or unfair conduct required; materiality required |
| DE | actual damages required; deception required |
| DC | deception required; materiality required |
| FL | actual damages required; deceptive, unfair or unconscionable conduct required |
| HI | deceptive or unfair conduct required; materiality required |
| ID | actual damages required; deceptive or unconscionable conduct required |
| IL | actual damages required; no right to a jury trial; deceptive or unfair conduct required; materiality required |
| IN | reliance required; deception required |
| KS | actual damages required; court determines if unconscionable conduct; deceptive or unconscionable conduct required; materiality required |
| MD | actual damages required; no right to a jury trial; deceptive or unfair conduct required; materiality required; reliance required; deceptive or unfair conduct required; materiality required |
| MI | actual damages required; reasonable reliance required; deception required; materiality required |
| MN | reliance part of causal nexus; deception required |
| MO | actual damages required; deceptive or unfair conduct required |
| NE | actual damages required; no right to a jury trial; deceptive or unfair conduct required |
| NV | deception required |
| NH | no right to a jury trial; deceptive or unfair conduct required |

| NJ | actual damages required; deceptive or unconscionable conduct required; materiality required |
|----|---------------------------------------------------------------------------------------------|
| NM | actual damages required; deceptive or unconscionable conduct required |
| NY | actual damages required; deception required; materiality required |
| NC | actual damages required; court determines if unfair or deceptive; reliance required; deceptive or unfair conduct required |
| ND | deception required |
| OH | no right to class damages absent prior ruling; deceptive or unfair conduct required |
| OK | actual damages required; deceptive or unfair conduct required |
| OR | actual damages required; reliance required; deception required |
| PA | actual damages required; reliance required; deception required; materiality required |
| RI | actual damages required; deceptive or unfair conduct required |
| SC | class actions not allowed |
| SD | actual damages required; reliance required; deception required |
| TN | class actions not allowed |
| TX | deceptive or unconscionable conduct required; materiality required |
| UT | actual damages required; no right to class damages absent prior ruling; deception required |
| VT | deceptive or unfair conduct required; materiality required |
| WA | actual damages required; deceptive or unfair conduct required |
| WV | deceptive or unfair conduct required |
| WI | actual damages required; deception or unfair conduct required |
| WY | actual damages required; reliance required; deceptive or unfair conduct required |

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on November 23, 2009 a true and correct copy of the foregoing was delivered via electronic service to all counsel of record pursuant to Case Management Order No. 2.

        /s/ Andrew D. Schau
        Andrew D. Schau