# Exhibit C

*State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*

Exhibit to Plaintiffs' Motion for Partial Summary Judgment



West's Ann.Cal.Bus. & Prof.Code § 4426

Page 1

C

**Effective: September 30, 2002**

West's Annotated California Codes Currentness
  Business and Professions Code (Refs & Annos)
    Division 2. Healing Arts (Refs & Annos)
      Chapter 9. Pharmacy (Refs & Annos)
        Article 24. Prescription **Rates** for Medicare Beneficiaries (Refs & Annos)

→ **§ 4426. Adequacy of reimbursement rates; study**

The **State Department** of **Health Services shall conduct** a study of the **adequacy** of **Medi-Cal** pharmacy reimbursement **rates** including the cost of providing prescription drugs and **services**.

CREDIT(S)

(Added by Stats.1999, c. 946 (S.B.393), § 1. Amended by Stats.2001, c. 693 (S.B.696), § 1; Stats.2002, c. 1161 (A.B.442), § 1, eff. Sept. 30, 2002.)

HISTORICAL AND STATUTORY NOTES

2003 Main Volume

Legislative intent and appropriation relating to Stats.2001, c. 693 (S.B.696), see Historical and Statutory Notes under Health and Safety Code § 130400.

Governor Davis issued the following signing message regarding Stats.2001, c. 693 (S.B.696):

"To the Members of the California Legislature:

"I am signing Senate Bill 696.

"This bill would create the Golden Bear State Pharmaceutical Assistance Program for Medicare, a discount prescription drug program that would be voluntary for Medicare beneficiaries, pharmacies and drug manufacturers. It would be created and administered by Department of Health Services (DHS) and funded with rebates paid by drug manufacturers.

"We have an important opportunity here to make a significant difference to California seniors who currently cannot afford to fill their drug prescriptions. The Golden Bear program will build on the current State Medicare discount drug program, resulting in even greater discounts on prescription drugs for Medicare recipients. Therefore, I am directing DHS to immediately confirm with the major pharmaceutical manufacturers that they are interested in participating in this program.

"After confirmation of the drug manufacturers' interest, I will authorize DHS to use up to $250,000 of the one million dollar General Fund loan provided in this legislation to hire contract staff to begin drug rebate negotiations and to assess, based on these negotiations, the viability of this program. Should DHS determine that the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

West's Ann.Cal.Bus. & Prof.Code § 4426

Page 2

program is viable, the remainder of the loan will be used to institute system changes needed to administer the program.

"If, at any point in the process, DHS determine that this program is not viable, I will direct DHS to stop all activity and return any unspent monies to the General Fund. This will limit the risk to the General Fund, while providing every opportunity to make the Golden Bear program work for the benefit of California seniors.

"Sincerely,

"GRAY DAVIS"

Sections 93 to 105 of Stats.2002, c. 1161 (A.B.442), eff. Sept. 30, 2002, prior to repeal of § 103 by Stats.2002, c. 1164 (A.B.3006), eff. Sept. 30, 2002, provide:

"SEC. 93. The State Department of Health Services may adopt emergency regulations to implement the applicable provisions of this act in accordance with the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code). The initial adoption of emergency regulations and one readoption of the initial regulations **shall** be deemed to be an emergency and necessary for the immediate preservation of the public peace, **health,** or general welfare. Initial emergency regulations and the first readoption of those regulations **shall** be exempt from review by the Office of Administrative Law. The initial emergency regulations and the first readoption of those regulations authorized by this section **shall** be submitted to the Office of Administrative Law for filing with the Secretary of **State** and publication in the California Code of Regulations and each **shall** remain in effect for no more than 180 days.

"SEC. 94. The **department** may not recoup any overpayment made to a provider before October 1, 2002, pursuant to Section 14109 of the Welfare and Institutions Code for ambulance transport **services**, if the overpayment is not due to the fault of the provider.

"SEC. 95. (a) The **State Department** of **Health Services shall** complete the design and implementation of the Children's **Medical Services** Network (CMS Net) Enhancement 47 project to ensure that all system enhancements for CMS Net, the California Medicaid Management Information System (CA-MMIS), and the California Dental Management Information System (CD-MMIS) that are required to enable providers in the California Children's Services (CCS) provider network to submit electronic claims for reimbursement for services provided to CCS eligible children are operational by August 1, 2004.

"(b) The department shall work in cooperation with county CCS programs that are not yet participating in CMS Net to take all necessary action within available resources to expedite the transition of these county programs to CMS Net for the provision of automated case management and service authorization for all CCS eligible children in their county caseload.

"SEC. 96. (a) The California Health and Human Services Agency shall develop a comprehensive plan describing the actions that California may take to improve its long-term care system so that its residents have available an array of community care options that allow them to avoid unnecessary institutionalization. The plan shall respond to the decision of the United States Supreme Court in Olmstead v. L.C. (1999) 527 U.S. 581 and shall embody the six principles for an "Olmstead Plan" as articulated by the federal Center for Medicaid and Medicare Services. These principles include:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

West's Ann.Cal.Bus. & Prof.Code § 4426

"(1) A comprehensive, effectively working plan.

"(2) A plan development and implementation process that provides for the involvement of consumers and other stakeholders.

"(3) The development of assessment procedures and practices that prevent or correct current and future unjustified institutionalization of persons with disabilities.

"(4) An assessment of the current availability of community-integrated services, identification of gaps in service availability, and evaluation of changes that could be made to enable consumers to be served in the most integrated setting possible.

"(5) The inclusion in the plan of practices by which consumers are afforded the opportunity to make informed choices among the services available to them.

"(6) Elements in the plan that ensure that services are provided in the most integrated setting appropriate and that the quality of services meets the needs of the consumers.

"(b) The plan required under subdivision (a) shall be submitted to the Legislature on or before April 1, 2003.

"SEC. 97. It is the intent of the Legislature that a significant portion of funds received in the 2003-04 fiscal year and subsequent fiscal years, due to increased federal financial participation attributable to the medicaid home- and community-based waiver program under Section 1396n of Title 42 of the United States Code or other similar initiatives, shall be used to increase the rates for community-based providers serving individuals with developmental disabilities and other actions related to expanding and improving services and supports. The purpose of these fund adjustments shall be to increase community living options, provide expanded consumer choice, provide for increased health and physical safety, and improve the overall stability of community-based services and supports.

"SEC. 98. The State Department of Developmental Services shall ensure that funds appropriated in Item 4300-101-0001 of the Budget Act of 2002 to address concerns regarding the potential underfunding of regional center operations shall be used by each regional center toward achieving and maintaining service coordinator caseloads, as contained in subdivision (c) of Section 4640.6 of the Welfare and Institutions Code. In addition, these funds may be used to provide for increased clinical staff as necessary to meet requirements under the federal home- and community-based waiver program (42 U.S.C. Sec. 1396n).

"SEC. 99. The State Department of Developmental Services shall ensure that funds appropriated in Item 4300-101-0001 of the Budget Act of 2002 for the purpose of funding a federal program coordinator position at each regional center will be used only for that purpose. This position shall address issues pertaining to federally funded programs serving individuals with developmental disabilities as appropriate, including the home- and community-based waiver program (42 U.S.C. Sec. 1396n), as well as seeking increased federal financial participation when practicable.

"SEC. 100. (a) Of the amount appropriated in Item 4300-101-0001 of the Budget Act of 2002, up to five million six hundred thousand dollars ($5,600,000) may be used to provide one-time only grant awards to community-based service providers to conduct resource development activities for hard-to-serve populations, including dual diagnosis, and medically and behaviorally challenged individuals who have been identified through the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

West's Ann.Cal.Bus. & Prof.Code § 4426

community placement plan process as being appropriate for community placement and whose needs cannot otherwise be met within the existing array of **service** options in the community.

"(b) The grant awards **shall** be allocated pursuant to subdivision (a) by the **State Department** of Developmental **Services** with the intent to improve the quality of local **services** and to stabilize **service** systems. Regional centers may serve as the fiscal agent for these one-time grants.

"SEC. 101. (a) Of the amount appropriated in Item 4260-111-0001 of the Budget Act of 2002 from the Cigarette and Tobacco Products Surtax Fund, twenty-four million eight hundred three thousand dollars ($24,803,000) shall be allocated in accordance with subdivision (b) for the 2002-03 fiscal year from the following accounts:

"(1) Nine million fifteen thousand dollars ($9,015,000) from the Hospital Services Account.

"(2) Two million three hundred twenty-eight thousand dollars ($2,328,000) from the Physician Services Ac- count.

"(3) Thirteen million four hundred sixty thousand dollars ($13,460,000) from the Unallocated Account.

"(b) The funds specified in subdivision (a) shall be allocated proportionately as follows:

"(1) Twenty-two million three hundred twenty-four thousand dollars ($22,324, 000) shall be administered and allocated for distribution through the California Healthcare for Indigents Program (CHIP), Chapter 5 (commencing with Section 16940) of Part 4.7 of Division 9 of the Welfare and Institutions Code.

"(2) Two million four hundred seventy-nine thousand dollars ($2,479,000) shall be administered and allocated through the rural health services program, Chapter 4 (commencing with Section 16930) of Part 4.7 of Division 9 of the Welfare and Institutions Code.

"(c) Funds allocated by this section from the Physician Services Account and the Unallocated Account in the Cigarette and Tobacco Products Surtax Fund shall be used only for the reimbursement of uncompensated emergency services, as defined in Section 16953 of the Welfare and Institutions Code. Funds shall be transferred to the Physician Services Account in the county Emergency Medical Services Fund established pursuant to Sections 16951 and 16952 of the Welfare and Institutions Code.

"(d) Funds allocated by this section from the Hospital Services Account in the Cigarette and Tobacco Products Surtax Fund shall be used only for reimbursement of uncompensated emergency services, as defined in Section 16953 of the Welfare and Institutions Code, provided in general acute care hospitals providing basic, comprehensive, or standby emergency services. Reimbursement for emergency services shall be consistent with Section 16952 of the Welfare and Institutions Code.

"SEC. 102. Notwithstanding any other provision of law, the unencumbered balances, as of June 30, 2002, of the amounts appropriated in Item 4260-001- 0589 of Chapter 50 of the Statutes of 1999, Item 4260-001-0589 of Chapter 52 of the Statutes of 2000, and Item 4260-001-0589 of Chapter 106 of the Statutes of 2001 are hereby reappropriated for the purposes specified in those items, and **shall** be available for encumbrance and expenditure until July 30, 2005.

"SEC. 103. (a) In order to implement changes in the level of funding for **Medi-Cal services** in the Budget Act of 2002, effective August 1, 2002, the Director of **Health Services shall** eliminate all provider **rate** increases that

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

were provided, effective August 1, 2000, for services rendered in the Medi-Cal program, except for the supplemental rate for the California Children's Services Program, home health services, shift nursing, nonemergency medical transportation, and family planning physician services. The director shall take this action pursuant to the rate-setting authority provided under subdivision (a) of Section 14105 of the Welfare and Institutions Code. The director shall also conform the rates for the same services rendered by the same provider types in non-Medi-Cal programs pursuant to Section 14105.18 of the Welfare and Institutions Code to those paid in the Medi-Cal program, absent regulations adopted pursuant to subdivision (c) of Section 14105.18 of the Welfare and Institutions Code. The rates for managed health care plans shall be reduced by the actuarial equivalent amount of the provider rate reductions made by this section at the time of the plan's next rate determination.

"(b) For purposes of this section, "provider" means any provider participating in the Medi-Cal program that received a rate increase, effective August 1, 2000, but does not include the following:

"(1) A general acute care hospital as defined in subdivision (a) of Section 1250 of the Health and Safety Code.

"(2) A skilled nursing facility as defined in subdivision (c) of Section 1250 of the Health and Safety Code.

"(3) An intermediate care facility/developmentally disabled as defined in subdivision (g) of Section 1250 of the Health and Safety Code.

"(4) An intermediate care facility/developmentally disabled habilitative as defined in subdivision (e) of Section 1250 of the Health and Safety Code.

"(5) An intermediate care facility/developmentally disabled-nursing as defined in subdivision (h) of Section 1250 of the Health and Safety Code.

"(6) An adult day health care center as defined in subdivision (b) of Section 1570.7 of the Health and Safety Code.

"SEC. 104. It is the intent of the Legislature that, in implementing Section 14105.33 of the Welfare and Institutions Code during the 2002-03 fiscal year, the Director of Health Services shall direct the department to negotiate as aggressively as necessary to achieve savings levels related to pharmaceutical contracting identified in the Budget Act of 2002.

"SEC. 105. Notwithstanding Section 17610 of the Government Code, if the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code. If the statewide cost of the claim for reimbursement does not exceed one million dollars ($1,000,000), reimbursement shall be made from the State Mandates Claims Fund."

Governor Davis issued the following signing message regarding Stats.2002, c. 1161 (A.B.442):

"To the Members of the California State Assembly:

"I am signing Assembly Bill 442, the Omnibus Health trailer bill, which, among other things, rescinds the 2000-01 Medi-Cal provider rate increases in their entirety, with specified exemptions.

"The intent of the Legislature was to rescind the provider rate reductions proposed in the May Revision and

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

West's Ann.Cal.Bus. & Prof.Code § 4426

Page 6

maintain those reductions proposed in the January 10 Governor's Budget. However, due to the late enactment of the 2002- 03 Budget, the **Department** of **Health Services** (DHS) would be unable to implement the partial **rate** reductions until January 2003. This late implementation of the **rate** reductions would place the DHS in the position of paying providers **rates** that are higher than those statutorily authorized. If the **rate** reductions were implemented, providers would be forced to return overpayments or the DHS would withhold significant payments to make up for the difference. Return of overpayments or significant withholding of payments could cause providers to drop out of the Medi-Cal program, thus reducing access.

"For these reasons, I will also be signing AB 3006.

"Sincerely,

"GRAY DAVIS"

Section 103 of Stats.2002, c. 1161 (A.B.442), eff. Sept. 30, 2002, requiring elimination of specified provider rate increases, was repealed by Stats.2002, c. 1164 (A.B.3006), § 1, eff. Sept. 30, 2002.

Section 2 of Stats.2002, c. 1164 (A.B.3006), eff. Sept. 30, 2002, provides:

"SEC. 2. Section 1 of this act shall be operative only if Assembly Bill 442 of the 2001-2002 Regular Session [Stats.2002, c. 1161, eff. Sept. 30, 2002], is enacted on or before January 1, 2003."

Governor Davis issued the following signing message regarding Stats.2002, c. 1164 (A.B.3006):

"To Members of the California **State** Assembly:

"I am signing Assembly Bill 3006.

"Before I took office, California had nearly the lowest **reimbursement rate** for physicians in the **Medi-Cal** system of any **state** in the country. These low **reimbursement rates** reduced access to **medical** care by reducing the number of physicians willing to serve Med-Cal patients. In the last three years, we've made substantial efforts to improve **reimbursement rates**, expand eligibility, and increase the number of people with **health** coverage.

"We've made great progress. More than a million children have **health** coverage today who did not have coverage three years ago. Fewer seniors and disabled persons have to spend down to poverty before accessing **Medi-Cal services**, and persons with HIV don't have to wait to develop full blown AIDS to receive coverage.

"In this difficult budget year, the Administration and legislative leaders discussed rolling back some of the **rate** increases approved in recent years. However, any savings that might accrue by signing AB 442, the omnibus **health** budget trailer bill, and rolling back **rates** to pre-August 2000 levels would be offset by costs associated with increases in emergency room visits, administrative costs of implementing the **rate** reductions, and the loss of physicians who would surely leave the **Medi-Cal** program.

"Although next year will be a difficult budget year, this bill maintains California's commitment to improving **health** care in this **state**, and demonstrates our support for the physicians who are making these improvements possible.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

West's Ann.Cal.Bus. & Prof.Code § 4426

Page 7

"Sincerely

"GRAY DAVIS"

Former § 4426, added by Stats.1984, c. 900, § 1, amended by Stats.1991, c. 654 (A.B.1893), § 45.2, relating to definitions, was repealed by Stats.1996, c. 890 (A.B.2802), § 2. See Business and Professions Code § 4361.

West's Ann. Cal. Bus. & Prof. Code § 4426, CA BUS & PROF § 4426

Current with urgency legislation through Ch. 634 of the 2009 Reg.Sess., Ch. 12
of the 2009-2010 2nd Ex.Sess., Ch. 30 of the 2009-2010 3rd Ex.Sess., and
Ch. 24 of the 2009-2010 4th Ex.Sess., Governor's
Reorganization Plan No. 1 of 2009, Prop. 1F, approved at the 5/19/2009 election,
and propositions on the 6/8/2010 ballot received as of 10/15/2009

© 2009 Thomson Reuters

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.