# Exhibit 13

*State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v.
Abbott Laboratories, Inc., et al.*

Exhibit to the Declaration of Nicholas N. Paul in Support of Plaintiffs' Motion for Summary Judgment as to Defendant Dey

```
                    CAUSE NO. GV002327

THE STATE OF TEXAS           )   IN THE DISTRICT COURT
ex rel.                      )
    VEN-A-CARE OF THE        )
    FLORIDA KEYS, INC.       )
                             )
        Plaintiffs,          )
                             )
VS.                          )   TRAVIS COUNTY, TEXAS
                             )
DEY, INC.; ROXANE            )
LABORATORIES, INC. and       )
WARRICK PHARMACEUTICALS      )
CORPORATION,                 )
                             )
        Defendants.          )   53rd JUDICIAL DISTRICT


        ************************************************
                ORAL AND VIDEOTAPED DEPOSITION OF
                        CHARLES A. RICE
                        October 30, 2001
        ************************************************
```

ORAL DEPOSITION OF CHARLES A. RICE, produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on the 30th day of October 2001, from 9:06 a.m. to 5:02 p.m., before Randall N. Finch, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Coudert Brothers, 600 Beach Street, Third Floor, San Francisco, California 94109, pursuant to Notice, the Texas Rules of Civil Procedure and the provisions as previously set forth.

1   again I'm quoting from memory -- I believe in 1995
2   where one individual at Dey took it upon herself to
3   report an increasing WAC to a single data reporting
4   service.
5           For reasons unbeknownst to us she did
6   not report it to all the data reporting services and we
7   can find no evidence that she reported it to any state.
8   That was discovered by Dey several -- well, several
9   months later, I believe six months later, at which time
10  it was corrected with the one data reporting service.

1:39P
11      Q.   Was that one data reporting service First Data
12  Bank?
13      A.   I -- it is called First Data Bank today.  I'm
14  not sure what it was called then.  It may have been
15  just called Blue Book --
16      Q.   Blue Book?
17      A.   -- at the time.  But yes, that's correct.
18      Q.   That's the data reporting agency that the
19  state Medicaid programs primarily look to for their
20  reimbursement information?
21      A.   I don't think so.  I think they look at all of
22  them, don't they?  I mean, there are -- there are at
23  least three that keep being referenced to us by the
24  individual states.
25      Q.   And those are?

1     A.   I believe one is called now Medi-Span and the
2     other I believe is the Red Book.
3     Q.   And the other is First Data Bank, formerly
4     Blue Book?
5     A.   I believe that's correct, sir, yes.
6     Q.   Based upon your understanding?
7     A.   Yes.
8     Q.   Okay.  That one instance you found of the one
9     person increasing certain Dey -- a WAC or certain WACs,
10    and reported to one data reporting service, was that
11    done to meet actions by competition?
12    A.   I actually can't say why it was done.  I
13    didn't ever speak to the individual.  The individual
14    left our employ a few months after this action was
15    taken.
1:40P  16    Q.   Who was the individual?
17    A.   The individual -- individual's name was
18    Ms. Helen Burnham, B-u-r-n-h-a-m.
19    Q.   Was she fired?
20    A.   I don't believe she was fired, no, sir.
21    Q.   Was she asked to leave?
22    A.   I don't believe so.
23    Q.   As the CEO of Dey, Incorporated, do you
24    believe it is proper for your employees to report
25    increases in WAC for the purposes of meeting action by