# Exhibit 18

*State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Laboratories, Inc., et al.*

Exhibit to the Declaration of Nicholas N. Paul in Support of Plaintiffs' Motion for Summary Judgment as to Defendant Dey

```
NO. GV002327
THE STATE OF TEXAS          ) IN THE DISTRICT COURT
EX REL.                     )
    VEN-A-CARE OF THE       )
    FLORIDA KEYS, INC.,     )
        PLAINTIFF(S),       )
                            )
VS.                         ) TRAVIS COUNTY, TEXAS
                            )
DEY, INC.; ROXANE           )
LABORATORIES, INC., WARRICK )
PHARMACEUTICALS CORPORATION,)
SCHERING CORPORATION,       )
SCHERING-PLOUGH CORPORATION,)
LIPHA, S.A., MERCK-LIPHA,   )
S.A., MERCK, KGAA, AND EMD  )
PHARMACEUTICALS, INC.,      )
        DEFENDANT(S).       ) 53RD JUDICIAL DISTRICT
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF

EVE FAGRELL GMEINER

JANUARY 20TH, 2003

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


    ORAL AND VIDEOTAPED DEPOSITION OF EVE FAGRELL

GMEINER, PRODUCED AS A WITNESS AT THE INSTANCE OF THE

PLAINTIFF(S), AND DULY SWORN, WAS TAKEN IN THE

ABOVE-STYLED AND NUMBERED CAUSE ON JANUARY 20TH, 2003,

FROM 10:06 A.M. TO 5:36 P.M., BEFORE CYNTHIA VOHLKEN,

CSR IN AND FOR THE STATE OF TEXAS, REPORTED BY MACHINE

SHORTHAND, AT THE DOUBLETREE HOTEL, 1 DOUBLETREE

DRIVE, ROHNERT PARK, CALIFORNIA PURSUANT TO THE TEXAS

RULES OF CIVIL PROCEDURE.

1  SERVICES?
2  A.   NO.   WE OFFICIALLY DIDN'T SEND OUT A REPORT.
3  THE ONLY TIME I WOULD COMMUNICATE WITH THE DATA
4  REPORTING SERVICES WAS WHEN A PRICE CHANGED AND THAT
5  WAS NOT NECESSARILY AT A CONSISTENT TIME OF YEAR.
6  CERTAINLY WHEN I STARTED FOR EPIPEN IT BECAME AN
7  ANNUAL PRICE INCREASE THAT I KNEW WAS REPORTED OUT TO
8  THEM.   BUT WHEN I STARTED I RECALL IT -- IT WAS NOT --
9  IT WAS WHATEVER WAS GOING ON IN THE MARKET AND THEN WE
10 DECIDE TO CHANGE PRICES TYPICALLY DOWN AND THEN HAVE
11 TO REPORT THOSE OUT.
12 Q.   AND JUST SO I UNDERSTAND, ANYTIME A PRICE
13 CHANGED YOU WOULD HAVE TO NOTIFY THE DATA REPORTING
14 SERVICES.
15 A.   YES.   WELL, THAT WAS PART OF MY
16 RESPONSIBILITY, YES.
17 Q.   AND THOSE PRICES THAT YOU WERE COMMUNICATING
18 WITH AND REGARDING WERE ALWAYS AWPS AND WACS?
19 A.   YES.
20 Q.   WERE THERE ANY OTHER BROAD PRICE CATEGORIES
21 THAT YOU WOULD COMMUNICATE TO THE DATA REPORTING
22 SERVICES --
23 A.   NO.
24 Q.   -- OTHER THAN AWP OR WAC?
25 A.   HUH-UH.

1  Q. FOR EXAMPLE --
2  A. NO.
3  Q. -- CONTRACT PRICES, WOULD YOU COMMUNICATE
4  THOSE TO FIRST DATABANK?
5  A. NEVER COMMUNICATED CONTRACT PRICES.
6  Q. WOULD YOU ALWAYS COMMUNICATE WITH THE SAME
7  PERSON AT EACH DATA REPORTING SERVICE? FOR EXAMPLE,
8  YOU'VE TOLD US HOW YOU WERE THE CENTRAL POINT OF
9  CONTACT FOR THEM, THE DATA REPORTING SERVICES, IF THEY
10 NEEDED TO CONTACT DEY. WAS THERE SOMEBODY CONVERSELY
11 AT FIRST DATABANK THAT YOU WOULD ALWAYS COMMUNICATE
12 WITH?
13 A. TYPICALLY YES. I MEAN, AS LONG AS THAT STAFF
14 PERSON DIDN'T CHANGE, YES, I WOULD COMMUNICATE WITH
15 THE SAME PERSON AND IF THEY HAPPENED TO -- YOU KNOW,
16 KIMBERLY OR SOMEBODY, WHATEVER, LEFT HER POST AND
17 SOMEBODY ELSE CAME ON BOARD THEN THAT PERSON, WE WOULD
18 AT SOME POINT COMMUNICATE AND I WOULD UPDATE MY LITTLE
19 SPREADSHEET OR WHATEVER IT WAS THAT I HAVE OF THE
20 CONTACT NAMES AND THEN SEND IT OUT TO THAT PERSON.
21 Q. DO YOU RECALL A GENTLEMAN BY THE NAME OF ED
22 EDELSTEIN?
23 A. YES.
24 Q. DID YOU COMMUNICATE WITH HIM?
25 A. NOT DIRECTLY PER -- I MEAN, NO.