# EXHIBIT 6

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs, Inc. et al.*, **Civil Action No. 03-11226-PBS**

**Exhibit to the November 25, 2009 Declaration of Sarah L. Reid in Support of Dey's Motion for Partial Summary Judgment**

Page 300

```
 1                UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3    ---------------------------------X
 4    IN RE PHARMACEUTICAL INDUSTRY     )
 5    AVERAGE WHOLESALE PRICE LITIGATION)
 6    ---------------------------------X Volume 1
 7    THIS DOCUMENT RELATES TO:         ) MDL NO. 1456
 8    The City of New York, et al.,     ) Civil Action
 9        V.                            ) No. 01-12257-PBS
10    Abbott Laboratories, et al.       )
11    ---------------------------------X
12    THIS DOCUMENT RELATES TO:         )
13    State of California, ex rel.      )
14    Ven-A-Care v. Abbott Laboratories,)
15    Inc., et al., Case No.            )
16    03-cv-11226-PBS                   )
17    ---------------------------------X
18                    JULY 10, 2008
19         DEPOSITION OF DEY, L.P. AND DEY, INC.
20              BY PAMELA MARRS - VOLUME II
21
22    Reported By: WENDY L. VAN MEERBEKE, CSR No. 3676
```

Dey, L.P. and Dey, Inc. (Pamela Marrs) - Vol. II    Napa, CA    July 10, 2008

Page 460

1    MS. GIULIANA: Same objection.

2    THE WITNESS: I think what I said was

3  that it -- it was my understanding it was

4  industry practice to set AWPs for generics at a

5  percentage off of the brand and that that

6  information was generally obtained from Ed

7  Edelstein at First DataBank when his advice was

8  sought by Bob Mozak.

9    MR. HENDERSON:

10   Q.   Okay. So I -- to prepare for this

11 particular topic, what did you do?

12   A.   This week, nothing. Before, I do

13 recall reading a transcript of a deposition where

14 the contact with Ed Edelstein was referenced.

15 It's something that I have just generally heard

16 from the attorneys as well as Mr. Mozak in the

17 course of providing documents for this

18 litigation.

19       Other than the reference to Mr.

20 Edelstein, I don't recall a specific document

21 right now that talked about industry practice.

22 It was more just what he indicated to me.

```
 1              MS. GIULIANA:  Objection to the form.
 2              THE WITNESS:  It appears that there
 3     would be no prohibition for making it more than
 4     ten percent.
 5              MR. HENDERSON:
 6        Q.    Okay.  And, therefore, do you agree
 7     that Dey could have, had it chosen, to report an
 8     AWP that was, for example, 50 percent below the
 9     AWP of the brand?
10              MS. GIULIANA:  Objection to the form.
11              THE WITNESS:  I think what that
12     question ignores is general business.  And let's
13     just take albuterol as an example.  So in the
14     case of albuterol, we were first to launch.  We
15     had no other generic competitors in the
16     marketplace.  And since AWP drives WAC and WAC is
17     the invoice price to the wholesaler, if you -- if
18     you chose to set your AWP at 50 percent off when
19     in fact you didn't have to because the
20     competitive requirement didn't require that, you
21     know, from a business standpoint that just
22     doesn't make any sense.
```

Page 487

```
 1              MR. HENDERSON:
 2         Q.   Why does AWP drive WAC?
 3         A.   Because that's part of the industry
 4    practice.  You've got brand AWP, generic AWP, and
 5    then WAC is a percentage off of AWP.  That's my
 6    understanding of how the generic industry works.
 7         Q.   Is it Dey's belief that AWP should be
 8    tied to some actual price?
 9              MS. GIULIANA:  Objection.  Form.
10              THE WITNESS:  The generic AWP is a
11    percentage off the brand AWP.
12              MR. HENDERSON:
13         Q.   Is that Dey's definition of AWP, is a
14    percentage off the brand AWP?
15              MS. GIULIANA:  Objection.  Form.
16              THE WITNESS:  I think you've come
17    across many pages of testimony.  AWP is a very --
18    it's not a defined term in the regs.  It's a
19    misunderstood term.  There's a lot of confusion
20    about what it actually does mean.
21              MR. HENDERSON:
22         Q.   In this Exhibit 32, it says on the
```

1      A.   I believe that's what is represented in
2  these documents in Exhibit 33.  And if I could
3  just add one thing, because before when we spoke
4  about this question, we were focused on the AWP
5  piece.  We didn't really talk about the WAC
6  piece, which to me is confusing because it says,
7  "WACs that were higher than actual wholesale
8  acquisition costs."
9           Well, by definition -- by Dey's
10 definition and I believe by industry definition -
11 - although I'm not 100 percent sure if everyone
12 in the industry does this.  Our WAC is our
13 invoice price to the wholesaler.  So from our
14 standpoint, WAC equals invoice price -- actual
15 invoice price.  So to me these are saying the
16 same thing.
17     Q.   Okay.  Let's discuss that topic.
18 You're right.  Our previous questions and your
19 testimony was -- did not cover the WAC issue.
20          You said Dey's WACs are Dey's invoice
21 prices?
22     A.   To wholesalers.