# EXHIBIT 43

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs, Inc. et al.*, **Civil Action No. 03-11226-PBS**

**Exhibit to the November 25, 2009 Declaration of Sarah L. Reid
in Support of Dey's Motion for Partial Summary Judgment**

State of California—Health and Human Services Agency                                         Department of Health Services

7/20

## GOVERNOR'S ACTION REQUESTED

*cyd —*
*pls finalize.*
*MC*

**TO:** File

**ATTENTION:** Susan P. Kennedy
Cabinet Secretary

**FROM:** Grantland Johnson
Secretary, Health and Human Services Agency

Prepared by: Doug Hillblom, Pharm.D.
Medi-Cal Benefits Branch
657-0539

**DATE:**

**SUBJECT:** Change in Prices for Medi-Cal Drugs      *effective April 2000,*

☒ Request for Approval                ☐ For Governor's Information
☐ Request for Cabinet Discussion      ☐ For Governor's Signature

**SUMMARY/PRO-CON ARGUMENTS:** As a result of litigation, Medi-Cal's primary drug price reference source has reduced the Average Wholesale Prices for approximately 400 drug products. If implemented, access to these important drugs may be reduced (see attached discussion).

**EFFECT ON EXISTING LAW:** N/A   *→ due to decreased reimbursement to providers.*

**ESTIMATED COST:** The aggregate savings from implementing the new prices has not been determined.

**TIME FACTOR:** A decision on whether to implement the new prices is needed as soon as possible.

**RECOMMENDATION:** The Department advises that the new prices for the identified drugs not be implemented.

**APPROVED:**

| | | | |
|---|---|---|---|
| Diana M. Bontá, R.N., Dr.P.H.<br>Director | Date | Susan P. Kennedy<br>Cabinet Secretary | Date |
| | | Michael J. Gotch<br>Legislative Secretary | Date |
| Grantland Johnson<br>Secretary | Date | Gray Davis<br>Governor | Date |

DHS 1049 (4/00)


EXHIBIT 019
WIT: Hillblom
DATE: 9-23-08
CAROL NYGARD DROBNY

CAAG/DHS0076372

The Medi-Cal program has an immediate need for a decision on whether to implement a change in drug reimbursement to providers as a result of a recent settlement of a drug price reporting lawsuit. If implemented, Medi-Cal fee-for-service (FFS) provider reimbursement levels will be reduced for certain drugs. The provider categories affected are physicians, clinics, home health agencies and pharmacies.

Background:

First Data Bank is the primary drug price reference source utilized by the Medi-Cal fee-for-service program and essentially all other state Medicaid programs. A recent national investigation by State and Federal agencies revealed a pattern of misrepresentations by some drug manufacturers of the average wholesale prices (AWP) and wholesale acquisition costs of certain products. The basis of the litigation was that the federal Medicaid fee-for-service program was paying excessive prices for drugs based on the manufacturer reported AWPs which were then published by First Data Bank.

It is our understanding that the intent of the lawsuit was to mitigate the potential for excessive profit margin that would encourage physicians to administer drugs as part of patients' routine office visits. This incentive for profit is based on the difference between the manufacturers' inflated AWPs which is the basis for Medicaid reimbursement and the actual cost of the product to physicians or other providers of these drugs.

As a result, the National Association of Medicaid Fraud Control Units (NAMFCU), which conducted the investigation, entered into a settlement agreement with First Data Bank, which affects the manner in which the AWPs are calculated and reported to state Medicaid fee-for-service agencies. The California Attorney General, Medicaid Fraud Control Unit, has been a participant in this legal class action.

First Data Bank's new AWP reporting system, in accordance with the settlement, is based on their survey of drug wholesalers and manufacturer sales to members of group purchasing organizations (GPO) and other purchasers. These GPO's currently appear to include all wholesale prime vendor networks such as California's State contracts and the United States Public Health Services Office of Drug Pricing. The inclusion of these deeply discounted programs in the survey impact the reported AWPs for the drugs by lowering them substantially. Additionally, these AWPs are only reported to state Medicaid agencies and not to other third party payers. These AWPs will also be reported to Medicare carriers in determining Medicare drug allowances. There is no requirement in either the settlement or by the Federal Government that state Medicaid programs implement the new AWPs as the basis for drug reimbursement to providers.

Impact:

CAAG/DHS0076373

The Medi-Cal program has an immediate need for a decision on whether to implement a change in drug reimbursement to providers as a result of a recent settlement of a drug price reporting lawsuit. If implemented, Medi-Cal fee-for-service (FFS) provider reimbursement levels will be reduced for certain drugs. The provider categories affected are physicians, clinics, home health agencies and pharmacies.

Background:

First Data Bank is the primary drug price reference source utilized by the Medi-Cal fee-for-service program and essentially all other state Medicaid programs. A recent national investigation by State and Federal agencies revealed a pattern of misrepresentations by some drug manufacturers of the average wholesale prices (AWP) and wholesale acquisition costs of certain products. The basis of the litigation was that the federal Medicaid fee-for-service program was paying excessive prices for drugs based on the manufacturer reported AWPs which were then published by First Data Bank.

It is our understanding that the intent of the lawsuit was to mitigate the potential for excessive profit margin that would encourage physicians to administer drugs as part of patients' routine office visits. This incentive for profit is based on the difference between the manufacturers' inflated AWPs which is the basis for Medicaid reimbursement and the actual cost of the product to physicians or other providers of these drugs.

As a result, the National Association of Medicaid Fraud Control Units (NAMFCU), which conducted the investigation, entered into a settlement agreement with First Data Bank, which affects the manner in which the AWPs are calculated and reported to state Medicaid fee-for-service agencies. The California Attorney General, Medicaid Fraud Control Unit, has been a participant in this legal class action.

First Data Bank's new AWP reporting system, in accordance with the settlement, is based on their survey of drug wholesalers and manufacturer sales to members of group purchasing organizations (GPO) and other purchasers. These GPO's currently appear to include all wholesale prime vendor networks such as California's State contracts and the United States Public Health Services Office of Drug Pricing. The inclusion of these deeply discounted programs in the survey impact the reported AWPs for the drugs by lowering them substantially. Additionally, these AWPs are only reported to state Medicaid agencies and not to other third party payers. These AWPs will also be reported to Medicare carriers in determining Medicare drug allowances. There is no requirement in either the settlement or by the Federal Government that state Medicaid programs implement the new AWPs as the basis for drug reimbursement to providers.

Impact:

Accepting these new AWP's as the basis for provider reimbursement in Medi-Cal is a serious policy consideration. This change would result in dramatic decreases in the reported AWP for approximately 400 drugs - decreases of as much as 80% in some cases. The new AWP reductions apply to drugs which are usually administered in physicians' offices or clinics. However, the same drugs are often administered at patients' homes via pharmacy dispensing and home health care administration. Cancer drugs are included among these 400 drugs as well as a number of blood factors used by those with hemophilia and drugs for inhalation therapy. The aggregate savings to the Medi-Cal fee-for-service program from the new AWPs for these 400 drugs has not been determined.

Following are just two examples of the price differentials between the traditional AWP pricing mechanism and the new mechanism.

Albuterol Sulfate 0.83% 3ml     (Bronchodilator for Asthma and Chronic Obstructive Pulmonary Disease)

| NDC (National Drug Code) | Current AWP | New |
|---|---|---|

CAAG/DHS0076374

49502-0697-03          $30.25              $12.20

Cisplatin 1mg/ml (Chemotherapy for cancer)

| NDC | Current AWP | | New |
|---|---|---|---|
| 50mg/50ml vial | | | |
| 63323-0103-51 | $210.90 | $162.64 | |
| 100mg/100ml vial | | | |
| 63323-0103-65 | $421.80 | $321.00 | |

The above examples were chosen at random from the documents provided to the Department from the New York State Attorney General Office.

Concerns:

The Department is concerned that providers affected by the new AWPs may discontinue serving FFS Medi-Cal patients if the new prices are implemented. If this occurs, patients would either not have access to these important drugs or patients would be directed to a hospital to obtain them. The Department has already received correspondence from various advocacy groups such as hemophilia organizations and pharmacist organizations (see Attachment A) expressing their serious concerns over the new AWPs. We have not yet received similar contact from physicians and clinic provider groups.

Department staff recently participated in a national teleconference on this subject involving other state Medicaid pharmacy programs. Most pharmacy program administrators indicated that they were not implementing the new AWPs at this time because of concerns over provider discontinuation and resultant patient access problems. On the other side of this issue, NAMFCU representatives in a letter dated May 18, 2000 challenge the states' assertions that provider access will be negatively impacted by the adoption of the new AWP's. (Attachment B)

For Medi-Cal, a further consideration is that the new AWP's apply only to FFS, not managed care. This could create a discrepancy between FFS patients and those enrolled in Medi-Cal managed care from the standpoint of access to physician administered medications. An additional impact would be on the Medi-Cal Drug Rebate Program since there would be two different AWPs used as cost bases for reimbursement, compounding drug rebate disputes from drug manufacturers and affecting rebate collections. As a result of the implications of applying the new AWP's which became available in April 2000, DHS has advised EDS to continue to update the formulary file with the standard AWP's until further notice.

Options:

A) The Department could implement these price changes.
Pro:
The Medi-Cal program would save an undetermined amount of drug cost.

Con:
Providers, may choose not to provide these services to Medi-Cal beneficiaries.
Providers may hospitalize patients to obtain the medically necessary services, resulting in increased program costs.

B) The Department could delay implementation of these price changes until a mechanism has been established to transfer the drug cost savings to increased provider professional fee reimbursement.

CAAG/DHS0076375

Pro:
The Department would lower the risk of decreasing provider participation, by addressing provider reimbursement concerns.

Con:
The Department could set a precedent of transferring savings from one area of provider reimbursement to fund other areas of provider reimbursement.
The Department would not experience the maximum amount of potential cost savings available.

C)The Department could not implement the new price reporting mechanism.

Pro:
This would have the least impact on provider participation and patient access to health services.
No changes would be necessary in the claims processing system.

Con:
The Department would not receive any savings from the decrease in reported AWPs.

Recommendation:

We recommend that Medi-Cal not implement the new price reporting mechanism due to the serious impact on both the providers and beneficiaries.

CAAG/DHS0076376