# EXHIBIT D

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

--o0o--

IN RE PHARMACEUTICAL INDUSTRY

AVERAGE WHOLESALE PRICE

LITIGATION

_____/ MDL No. 1456

THIS DOCUMENT RELATES TO:      Civil Action:

State of California, ex rel.   01-12257-PBS

Ven-A-Care v. Abbott

Laboratories, Inc., et al.,

_____/


--o0o--

WEDNESDAY, JUNE 10, 2009

--o0o--

VIDEOTAPED DEPOSITION OF

ROY TAKEUCHI

--o0o--

Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

Registered Merit Reporter

Takeuchi, Roy                                                      June 10, 2009
Sacramento, CA

Page 142

1  CAAG/DHS-SAN000067, --
2     A.  Yes.
3     Q.  -- you'll see there's another table like
4  the one we just looked at titled "Medicaid Fourth
5  Quarter 1994, California;" correct?
6     A.  Yes.
7     Q.  And -- if you look back to the cover
8  letter, the fourth quarter 1994 is the same time
9  period that covers the rebate check that Mr.
10 Hartmann is sending; correct?
11    A.  Fourth quarter -- yes.
12    Q.  If you turn back to Bates Stamped
13 000067, for the products listed on this chart Mr.
14 Hartman is including, again, the AMP for each
15 product; correct?
16        MR. LIDDY:  Objection to form.
17        THE WITNESS:  That's what it appears to
18 be.
19        MS. BERWANGER:  Okay.  You can put that
20 document away.
21        19 then, please.
22        (Exhibit Takeuchi 019 was marked

Page 143

1  for Identification.)
2        THE WITNESS:  Thank you.
3  BY MS. BERWANGER:
4     Q.  The Court Reporter has placed in front
5  of you a document Bates stamped CAAG/DHS-SAN000296
6  through 000329.
7     A.  Okay.
8     Q.  And have you ever seen this document
9  before?
10    A.  No.
11    Q.  Have you ever seen a document like it?
12    A.  No.
13    Q.  If you'd turn to the fourth page of the
14 document, the page Bates stamped 0000299.
15    A.  Okay.
16    Q.  There's another letter from Ron Hartmann
17 to the State of California, Department of Health
18 Services; correct?
19    A.  Correct.
20    Q.  And this letter is dated May 21st, 1996;
21 correct?
22    A.  Right.

Page 144

1     Q.  And Mr. Hartmann in the body of the
2  letter says that he's enclosing the rebate check
3  for the State of California for October 1st, 1995
4  through December 31st, 1995; correct?
5     A.  Correct.
6     Q.  Which is the fourth quarter of 1995;
7  correct?
8     A.  Yes.
9     Q.  And he is also including a print-out
10 identifying the AMP and calculated rebate for each
11 product; correct?
12    A.  Yes.
13    Q.  And if you turn with me to page -- Bates
14 stamped 000303, there's another table that's
15 labeled "Medicaid Fourth Quarter 1995,
16 California;" correct?
17    A.  Yes.
18    Q.  And, again, Mr. Hartmann is including
19 the AMPs for all the products listed on this
20 table; correct?
21        MR. LIDDY:  Objection to form.
22        THE WITNESS:  That's what it says.

Page 145

1        MS. BERWANGER:  You can put that aside.
2  BY MS. BERWANGER:
3     Q.  Mr. Takeuchi, --
4     A.  Yes.
5     Q.  -- based on Exhibit 17 through 19 would
6  you agree with me that California received
7  Sandoz's AMPs for its products reimbursed by
8  California?
9        MR. LIDDY:  Objection -- objection --
10 objection to form.
11       THE WITNESS:  Just what I see, it looks
12 like it.
13       MS. BERWANGER:  Okay.
14       THE WITNESS:  I don't know if that's
15 everything.
16 BY MS. BERWANGER:
17    Q.  But California did receive AMPs for at
18 least some products from Geneva from 1992 through
19 1996; correct?
20       MR. LIDDY:  Objection to form.
21       THE WITNESS:  If -- if the mailing and
22 everything else was correct, looks like it.

37 (Pages 142 to 145)

Page 146

1  BY MS. BERWANGER:
2      Q.  Okay.  And is that consistent with your
3  understanding that AMP was a more accurate price?
4          MR. LIDDY:  Objection to form.
5          THE WITNESS:  Is it a more accurate
6  pricing?
7          Well, I always thought that.
8          I'm really not sure.  I think that's
9  what it was.
10 BY MS. BERWANGER:
11     Q.  In your mind AMP was a more accurate
12 price than other prices available?
13     A.  I think that's what was considered, yes.
14     Q.  Okay.  Thanks.
15         Mr. Takeuchi, do you know whether during
16 your time at the Department of Health Services
17 Medi-Cal ever purchased drugs directly from
18 manufacturers?
19     A.  Directly?
20     Q.  Uh-huh.
21     A.  No.
22         MS. BERWANGER:  Okay.  Why don't we go

Page 147

1  off the record for a minute, just give me a chance
2  to review.
3          VIDEOGRAPHER:  We're now going off the
4  video record at approximately 1:34.
5          (Thereupon a recess was taken at
6  1:34 p.m. and the deposition resumed at 1:43
7  p.m.)
8          VIDEOGRAPHER:  We're back on the video
9  record at approximately 1:43.
10 BY MS. BERWANGER:
11     Q.  Mr. Takeuchi, before we broke we were
12 discussing notes that you kept of meetings with
13 manufacturers?
14     A.  Notes that I kept at that time probably,
15 yeah.
16     Q.  Right.
17     A.  Yeah, right.
18     Q.  And I believe that you said that what
19 ultimately happened to the notes when you left the
20 Department was that Allied Waste took the notes
21 away?
22     A.  I trashed them.

Page 148

1      Q.  You trashed them.
2          If you had been instructed at the time
3  to retain those notes, would you have followed
4  that instruction?
5      A.  Who would say that?
6          No.  I --
7          Well, if somebody said, yeah, hold it
8  for six months, I probably would have, yeah.
9      Q.  If someone had told you to hold the
10 notes for any pending litigation, would you have -
11 - would you have complied?
12     A.  If somebody said that, yeah.
13     Q.  Okay.
14     A.  I mean, I follow -- I follow orders
15 pretty good.
16         MS. BERWANGER:  Subject to any further
17 document production from the State or any further
18 questioning by the State I have no further
19 questions for the witness.
20         THE WITNESS:  Good.
21         MR. LIDDY:  I have no questions.
22         MR. MALONEY:  Subject to the same

Page 149

1  conditions I have no further questions.
2          MR. LIDDY:  Barbara?
3          MS. DAYVAULT:  No questions.
4          THE WITNESS:  I have no questions.
5          VIDEOGRAPHER:  This concludes today's
6  videotaped deposition.
7          We are now off the record at
8  approximately 1:44.
9          (Thereupon the deposition was
10 adjourned at 1:44 p.m.)
11
12
13
14
15              --o0o--
16      Signed under penalty of perjury:
17      _____
18            ROY TAKEUCHI
19      _____
20             Date
21
22

38 (Pages 146 to 149)