# Exhibit 3

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.
Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben
in Support of Defendants' Joint Motion for Partial Summary Judgment**

 **DEPARTMENT OF HEALTH & HUMAN SERVICES**          Health Care Financing Administration



The Administrator
Washington, D.C.   20201

'John F. Schlegel, Pharm. D.
President
American Pharmaceutical Association
2215 Constitution Avenue, NW
Washington, DC 20037

Dear Dr. Schlegel:

Thank you for your letter in which you express concern that the final Medicaid rule governing aggregate upper limits for prescription drugs does not assure adequate reimbursement to pharmacists. You also indicated your view that the final rules are flawed because they differ significantly from the proposed rules published August 19, 1986. Further, you state that an opportunity to issue a uniform rule or single national policy on Medicaid drug reimbursement was missed and as a result, State agencies may continue to offer inadequate reimbursement to participating pharmacies. I regret that my response has been delayed.

In the notice of Proposed Rulemaking (NPRM) published on August 19, 1986, the Department of Health and Human Services outlined three different alternatives to change the Medicaid reimbursement regulations that determine upper limits on payments for prescription drugs. The notice of rulemaking proposed to replace the existing regulations with one of the following methodologies: (1) a revised Maximum Allowable Cost (MAC) Program; (2) the Pharmacist Incentive Program (PhIP); and (3) the Competitive Incentive Program (CIP).

In evaluating the public response to the three alternatives, we considered all the comments received as well as the availability of resources to implement the proposed alternatives. Although your association supported the Competitive Incentive Program, implementation of this methodology would have been problematic in terms of administrative costs, program benefit costs and delays in implementation. The reformed MAC Program was not selected because even with the reforms we were proposing, the program would still be too cumbersome to enable us to respond to the rapidly changing drug market. Thus, by a process of

prepared by:HCFA:BERC:ORP:DARS:RODLER 09/01/87:48060
Disc: Debbie #2
Computer: schlegel
Typist: Debbie T.:76336

HHC002-0564

2

elimination, we found that the policy goals of State flexibility
and straight forward calculation of aggregate Federal upper
limits for selected therapeutically equivalent multiple source
drugs are best served by the adoption of the proposed formula
approach.  The upper limit for all other drugs is an aggregate
upper limit that must not exceed the limit as calculated by the
State Medicaid Agency under the estimated acquisition cost
principles set forth in the notice of proposed rulemaking.

Since both of the approaches are embodied in the notice of
proposed rulemaking, we are quite surprised to learn that you
believe that the final rule differs significantly from the
original and is, therefore, flawed.  Further, we cannot agree
with your concerns that the new rules do not assure adequate
reimbursement to pharmacists because we did not issue a single
uniform national payment policy for Medicaid drug payments.
Please note that it was never our intent to set forth a
particular payment system that must be followed by the
individual State Medicaid agencies.  Rather, it has always been
our intent to permit and encourage the States to exercise
maximum flexibility in designing a variety of payment systems
that would be subject to maximum payment levels established by
Federal regulations.  Moreover, these maximum payment levels
include sufficient margins in both the mark-up factor for
generic substitutes and the reasonable dispensing fees that
would enable pharmacists to realize profits through prudent
purchasing and efficient business operations.

As with any new significant rules there is bound to be a
"settling in" process during which time States and affected
associations work closely together to assure mutual goals.  Let
us begin that process together by working with the individual
State agencies and assisting them in the implementation of these
new rules.  I am confident that these new rules, once
implemented, will result in both fair and equitable payments for
pharmacists as well as enhanced savings to both the Federal and
State governments through the greater usage of therapeutically
equivalent but less costly, generic drugs.

We appreciate your taking time to share with us you views on
this very important issue.

Sincerely,


William L. Roper, M.D.
Administrator