# Exhibit 9

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.
Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben
in Support of Defendants' Joint Motion for Partial Summary Judgment**

336

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-----------------------------------x

In re: PHARMACEUTICAL INDUSTRY     )
AVERAGE WHOLESALE PRICE            )
LITIGATION                         )
-----------------------------------)
United States of America ex rel.)   MDL No. 1456
Ven-A-Care of the Florida Keys, )
Inc. v. Abbott Laboratories,    )   Civil Action
Inc., Civil Action No. 06-      )   No. 01-12257-PBS
11337-PBS; and United States of )
America ex rel. Ven-A-Care of   )   Honorable
the Florida Keys, Inc., v. Dey, )   Patti B. Saris
Inc., et al., Civil Action No.  )
05-11084-PBS; and United States )
of America ex rel. Ven-A-Care   )
of the Florida Keys, Inc., v.   )
Boehringer Ingelheim Corp., et  )
al., Civil Action No. 07-10248- )
PBS                             )
-----------------------------------x

30 (b)(6) Arkansas Dept of HS - Vol. II                December 11, 2008
Little Rock, A

464

1    access would be an issue.
2        Q.   (By Mr. Reale) So it's fair to say that
3    the State's determination of estimated
4    acquisition cost is a balance of all the factors
5    that we talked about today, not solely the cost
6    of the drug to some pharmacies?
7        A.   Well, again, and I know I've said this
8    and repeated it a lot of times, but there is
9    always that variance off of the AWP.  So we know
10   that AWP is discounted.  We don't want to -- so
11   we're going to set something that's a balance
12   that will allow access to be maintained by the
13   providers.
14       Q.   And it's a balance, on the one hand,
15   between Arkansas' own budget pressures and the
16   need to try to ensure the efficiency and economy
17   in its Medicaid program, and on the other hand,
18   we have pressures from providers who voluntarily
19   participate in the program and the need to ensure
20   that there's access for Medicaid patients.  Would
21   you say that's a fair representation?
22              MS. MOSLEY-SIMS:  Objection.

465

1   A.   I would say it's a fair statement.  I
2   don't know if it's complete, but it's fair.
3   Q.   (By Mr. Reale) And there may be other
4   factors that play in the cost, determination of
5   estimated acquisition cost.  Yes?
6   A.   There could be.  Right off the top of
7   my head, I don't have any answer for you.
8       MR. REALE:  Okay.  I have no questions
9   further at this time.  I don't know if Eric or
10  Anne want to go next, but I know you both have
11  documents, so give me a minute to pull those out
12  for you.
13      MR. BERLIN:  We do, and actually, we
14  hadn't spoken as to which of us should go first.
15  Anne, do you have a preference?
16      MS. MANGIARDI:  I don't.  Either way.
17      (Whereupon an off-the-record was held.)
18      [Marked Exhibit Abbott-ARK 001]
19
20          EXAMINATION QUESTIONS BY MR. BERLIN:
21  Q.   First, actually, I've already forgot.
22  You prefer Suzette, but if I have to call you by

1   represent any actual price which will or has been
2   charged or paid for this product.
3           Generally, it is Dey's practice to set
4   an AWP before a product is first sold and not to
5   subsequently change that AWP. We understand that
6   this is consistent with industry practice. We
7   believe this to be clearly understood by state
8   and federal Medicaid regulator. Dey has chosen
9   to change the AWP on these products at this time
10  principally due to current conditions in the
11  marketplace."
12       Q.   Thank you.
13       A.   You're welcome.
14       Q.   Are those statements about AWP and WAC
15  consistent with your earlier testimony about what
16  you understood those terms to mean?
17       MS. OBEREMBT:   Objection.
18       A.   Again, all I stated earlier was that
19  WAC, what I know to be is wholesale acquisition
20  cost, and it's not available on every product,
21  and that we don't utilize WAC for our
22  reimbursement. AWP is average wholesale price,

1   that -- there are discounts off of AWP that have
2   variables to them. And, as we just discussed,
3   that it was my understanding that AWP is what was
4   presented to First DataBank. I don't know that
5   that's exactly what this -- this -- the whole
6   paragraph states.
7       Q.   (By Ms. Mangiardi) Okay. Thank you.
8   And do you see the last sentence at the bottom,
9   which says that if you need additional
10  information, please feel free to contact Virginia
11  Farret. I believe you testified earlier that you
12  had never -- you had never contacted Dey about
13  anything?
14      A.   Not -- no.
15      Q.   That is correct?
16      A.   I -- I haven't contacted them about a
17  document such as this.
18      Q.   Do you know if anyone else at DHS has
19  ever done so?
20      A.   Not that I'm aware of.
21      Q.   Would you agree that Dey here is
22  expressly informing you that AWP does not

539

1  represent the actual price charged or paid for
2  the product?
3           MR. BERLIN:  Objection.
4       A.  Based on the document that's -- it is
5  stating that it is not the actual price.
6           MS. MANGIARDI:  Now, John, could you
7  please hand the witness the document behind Tab
8  5?
9           MR. REALE:  I've handed the witness a
10 document which has been previously marked as Dey
11 Exhibit 226.
12      Q.  (By Ms. Mangiardi) Now, this document
13 is a chart which represents the AWPs and WAC
14 reported by Dey to First DataBank for
15 Ipratropium, 25 milliliters, NDC No. 49502-68503.
16      A.  Okay.  I'm sorry.  I forgot to respond.
17 I'm just reading and think you're going to
18 continue.
19      Q.  It wasn't really a question.  It was
20 more for the record.  Please take a second to
21 look it over and tell me when you're ready for
22 questions.