# Exhibit 13

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben**
**in Support of Defendants' Joint Motion for Partial Summary Judgment**



LEXISNEXIS® FILE & SERVE
17771862
E-SERVICE
Dec 21 2007
5:49PM

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**State of California,** *ex rel.* **Ven-A-Care v.**<br>**Abbott Laboratories,** *et al.*<br>**03-CV-11226-PBS** | ) **MDL No. 1456**<br>) **Master File No.  01-12257-PBS**<br>)<br>) **Judge Patti B. Saris**<br>)<br>)<br>)<br>)<br>)<br>) |

### STATE OF CALIFORNIA'S OBJECTIONS AND RESPONSES
### TO DEFENDANT ABBOTT'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the State of California ("Plaintiff") provides these objections and responses to the combined Defendants First Set of Interrogatories ("Interrogatories").

### Introductory Statement and General Objections

1.      These Interrogatories are unclear, vague, and ambiguous to the extent they are directed jointly toward Plaintiff's "agents," reasonably construed to refer to the Relator, Ven-A-Care of the Florida Keys, Inc. ("Relator").  Plaintiff further objects to the extent it is unclear as to whether Defendants seek responses to particular Interrogatories from either Plaintiff or the Relator, or both.  Plaintiff objects to each Interrogatory directed, in whole or in part, to the Relator.  Plaintiff is not obligated to respond to any Interrogatory that is directed to the Relator. Accordingly, Plaintiff responds only to those Interrogatories, in whole or in part that appear to be directed toward Plaintiff.

2.      These Interrogatories are unclear and confusing to the extent the Defendants' Definitions and Instructions in Defendants' First Set of Requests for Production are incorporated by reference in these Interrogatories.  Notwithstanding this, Plaintiff incorporates, herein, the

1

objections to Defendants' Definitions and Instructions in Plaintiff's Response to Defendants' First Set of Request for Production.

3.      Subject to and without waiving its specific and general objections, and objections to Defendants' Definitions and Instructions, the responses set forth herein are based on information currently known to Plaintiff, and their attorneys, and are made without prejudice to the right of Plaintiff to assert additional objections should grounds for objection be discovered at a later time. Discovery in this case has only just commenced, and Defendants have only recently responded to Plaintiff's discovery requests.  Thus, Plaintiff has not completed its discovery of the facts pertaining to this action or its preparation of this case for trial. Plaintiff reserves the right to rely on any facts, documents, or other evidence that may be developed by the parties, or come to Plaintiff's attention, and to supplement these Interrogatories when and if appropriate at a later time.

4.      The fact that Plaintiff may answer or object to part or all of any particular Interrogatory should not be construed as an admission or acknowledgment of any fact set forth in, assumed by, or implied by any such Interrogatory.

5.      Plaintiff reserves the right to object to the introduction into evidence in this or any other action, any of the responses or objections set forth in response to these Interrogatories. The fact that Plaintiff has responded to any part or all of any particular Interrogatory is not intended, and shall not be construed, to be a waiver of any objection to the competence, relevance, materiality, privilege or admissibility of any evidence in this or any other action.

6.      Plaintiff's responses or objections to these Interrogatories shall not be construed as a waiver of the right to object on any ground to other discovery requests involving or relating to the subject matter of these Interrogatories.

7.      Plaintiff objects to these Interrogatories to the extent they seek information protected from disclosure by privilege or doctrine, including but not limited to, the attorney-client privilege, the work product doctrine, the joint prosecution/common interest doctrine, the deliberative process privilege, the law enforcement investigative files privilege or any other

2

applicable basis for invoking privilege.  Plaintiff will screen materials and information to be released to Defendants to remove privileged materials.  To the extent there is any inadvertent disclosure of privileged information, Plaintiff reserves its right to argue that such inadvertent disclosure shall not constitute any waiver of the privileges.  Plaintiff reserves the right to object to the introduction into evidence before the Court at any time before or at trial of information that is privileged or otherwise protected under law and that has been revealed or produced inadvertently.  By responding to these Interrogatories, Plaintiff does not waive any claim of privilege or the protection of any doctrine.

8.     Plaintiff objects to these Interrogatories to the extent responding would require it to violate any seal imposed by a Court, by statute in the context of a False Claims Act *qui tam* matter, or the Federal Rules of Criminal Procedure, a grand jury proceeding, a criminal sentencing or other disposition, or any other matter.  Plaintiff will not separately object to any specific Interrogatory to assert this ground where doing so would itself identify a case currently under seal.

9.     Plaintiff objects to these Interrogatories to the extent they seek material not subject to release in the absence of a protective order under Federal Rule of Civil Procedure 26(c)(7) or other applicable law.  To the extent that these Interrogatories call for material subject to any applicable protective order in this case, it will be produced subject to the terms of that order.

10.     Plaintiff objects to these Interrogatories to the extent they require Plaintiff to draw legal conclusions or otherwise seek to impose upon Plaintiff any requirements beyond those established by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, or applicable court orders.

11.     Plaintiff objects to these Interrogatories to the extent they exceed the allowed amount in violation of Case Management Order No. 31, in the absence of an agreement between the parties, or a court order.

12.     Plaintiff objects to the scope of these Interrogatories to the extent they call for information from documents not within the possession, custody or control of the California Department of Health Care Services ( "DHCS") and the California Health & Human Service Agency ( "HHSA").

13.     Plaintiff objects to these Interrogatories as overly broad, vague, unduly burdensome, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information beyond the relevant claim period.

14.     Plaintiff objects to these Interrogatories as overbroad, unduly burdensome, not relevant nor reasonably calculated to lead to the discovery of admissible evidence, to the extent they seek information about drugs, manufacturers, other entities or providers not named or referenced in Plaintiff's First Amended Complaint.

15.     With respect to Defendant Abbott, Plaintiff objects to these Interrogatories to the extent they are unreasonably cumulative and duplicative of Defendant Abbott's third party subpoena issued against "California Department of Health Services" in the action known as *U.S. ex rel. Ven-A-Care of the Florida Keys, Inc. et al., Abbott Laboratories, Inc., et al.* (Civil Action No. 06-CV-11337, Lead Case No. 01-CV-12257).

16.     Plaintiff objects to the extent: (a) the discovery sought by any Interrogatory is unreasonably cumulative or duplicative, or can be obtained from some other source (including but not limited to, a public source) that is more convenient, less burdensome, or less expensive; (b) the discovery sought is in Defendants' possession; (c) the discovery sought is equally available to Defendants; and (d) compliance with any Interrogatory would be unduly burdensome, unduly expensive, harassing, or oppressive.

17.     These general objections apply to each Interrogatory.  For convenience, they are not repeated after each Interrogatory, but set forth herein and hereby incorporated into each response.  The assertion of the same, similar, or additional objections or the provision of partial responses to individual Interrogatories does not and should not be construed to waive or modify any of Plaintiff's general objections.

4

18.     Plaintiff objects to the extent some Interrogatories contain multiple subparts not logically related to the basic Interrogatory and which cause the total number of Interrogatories to exceed the limitation imposed by CMO 31.

19.     Any information or documents supplied in response to these Interrogatories are for use in this litigation and for no other purpose.

## Objections to Definitions and Instructions

1.     Plaintiff objects to the Interrogatories' Definitions and Instructions because they are unclear, vague, and ambiguous to the extent the Interrogatories are directed jointly at the Plaintiff and its agents, pursuant to the definitions provided by the Defendants, and the Relator.

2.      Plaintiff objects to Defendants' definition of "Communication" to the extent it purports to impose discovery obligations broader than the scope of permissible discovery under the Federal Rules of Civil Procedure.

3.     Plaintiff objects to Definition and Instruction A insofar as the Interrogatories request information not in the custody, possession or control of DHCS and/or HHSA. Subject to and without waiving this objection, Plaintiff will interpret Definition and Instruction A to refer to the offices within DHCS that may reasonably possess such responsive information or documents and all employees of these offices.

4.     Plaintiff objects to Definition and Instruction B insofar as it calls for speculation by requiring Plaintiff to assume meanings of terms.

5.     Plaintiff objects to Definition and Instruction C insofar as the terms "You and Your" are overbroad, including agencies, entities and individuals other than DHCS and/or HHSA. Further, Plaintiff objects to Definition and Instruction C insofar as it requests information protected by all applicable privileges and doctrines, including but not limited to, the attorney-client privilege, the work product doctrine, and the deliberative process privilege. Plaintiff also objects to Definition and Instruction C insofar as it requests expert information prior to the deadline for disclosure provided in CMO 31.

6.      Plaintiff objects to Definition and Instruction E to the extent it is overbroad, seeking information outside the custody and control of DHCS and/or HHSA.

7.      Plaintiff objects to Definition and Instruction F to the extent the time period is vague and ambiguous.

8.      Plaintiff objects to Definition and Instruction H to the extent it requires a response beyond that required by the Federal Rules of Civil Procedure and interpretive case law.

9.      Plaintiff objects to Definition and Instruction I to the extent it requires a response beyond that required by the Federal Rules of Civil Procedure and interpretive case law.

10.     Plaintiff objects to Definition and Instruction J to the extent it requires a response beyond that required by the Federal Rules of Civil Procedure and interpretive case law.

## Interrogatories

### INTERROGATORY NO. 1

Identify all departments and agencies of the State of California that have purchased, or reimbursed a Provider for, prescription drugs.

### RESPONSE:

Plaintiff objects to the extent this Interrogatory seeks information not accessible to DHCS, not relevant to any claim or defense, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the only agencies that are represented in this litigation are DHCS and HHSA. The identity of any other agencies or departments that might have purchased or reimbursed Providers for drugs is equally available to Defendants through the discovery and subpoena process.

### INTERROGATORY NO. 2

Do You contend that any reimbursement by You for a Subject Drug that exceeds the price paid by a Provider to acquire such Subject Drug constitutes an unlawful overpayment?

### RESPONSE:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the terms "any reimbursement" and "unlawful overpayment," and to the extent the question calls for a

legal conclusion.  Plaintiff objects to the extent this Interrogatory is a premature request for information that may be contained in the reports of Plaintiff's testifying experts that will be disclosed in accordance with Federal Rule of Civil Procedure 26, other applicable law, and any applicable scheduling orders, including CMO 31. Plaintiff objects to the extent this Interrogatory is premature and unreasonable at this early stage of discovery, before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken, and before third-party discovery has commenced.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:  No.

INTERROGATORY NO. 3

If Your response to Interrogatory Number 2 is anything other than an unqualified "Yes," state, as a percentage of Provider's acquisition cost, how large the "spread" or difference between the amount reimbursed by You for a Subject Drug and the price paid by a Provider to acquire such Subject Drug must be to constitute an unlawful overpayment or grounds for liability to You for such alleged "overpayment" by the manufacturer of that Subject Drug?

RESPONSE:

Plaintiff objects to the extent the question seeks a legal conclusion.  Plaintiff objects to the extent this Interrogatory is a premature request for information that may be contained in the reports of Plaintiff's testifying experts that will be disclosed in accordance with Federal Rule of Civil Procedure 26, other applicable law, and any applicable scheduling orders, including CMO 31.  Plaintiff objects to the extent this Interrogatory is premature and unreasonable at this early stage of discovery before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken, and before third-party discovery has commenced. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

There is no fixed percentage of a Provider's acquisition cost that determines how large the "spread" or difference is that constitutes an unlawful overpayment.  The ultimate issue of what constitutes the alleged fraud is subject to proof.

7

INTERROGATORY NO. 4

Identify, by Manufacturer, drug name, NDC, and quarter, the amount that You contend You overpaid for each Subject Drug as a result of each Defendants' alleged misconduct, as described in Your Complaint, and explain the basis for your calculation.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is a premature request for information that may be contained in the reports of Plaintiff's testifying experts that will be disclosed in accordance with Federal Rule of Civil Procedure 26, other applicable law, and any applicable scheduling orders, including CMO 31. Plaintiff objects to the extent this Interrogatory purports to require Plaintiff to draw pure conclusions of law. Plaintiff objects to the extent this contention Interrogatory is overly broad and unduly burdensome, premature and unreasonable at this early stage of discovery, before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken and before third-party discovery has commenced. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Plaintiff refers Defendants to the Exhibits served with the Initial Disclosures on or about July 30, 2007, which provide by each specific NDC the total units, the reimbursed amounts, and other responsive information. There is no fixed percentage of a Provider's acquisition cost that determines how large the "spread" or difference is that constitutes an unlawful overpayment. The ultimate issue of what constitutes this fraud is subject to proof.

INTERROGATORY NO. 5

Identify all Persons, including all current or former employees or agents of the State of California, who received or were made aware of the Ven-A-Care Qui Tam Complaint, any disclosure statement filed by Ven-A-Care pursuant to the California False Claims Act, or any of the allegations contained in the Ven-A-Care Qui Tam Complaint. For each person identified state when and under what circumstances that Person became aware of Ven-A-Care's allegations and what information was provided to them.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney work product and the law enforcement investigative privilege.  Plaintiff objects to the extent this Interrogatory is unduly burdensome in light of the number of current and former employees at DHCS.  There is no specification of job title or position for who might have come into contact with the documents.  Plaintiff objects to the extent this Interrogatory requests information under seal pursuant to California Government Code section 12652.  Plaintiff objects to the extent the Interrogatory is overbroad, seeking current contact information (including residence) for former or current employees of Plaintiff who should be contacted through counsel for Plaintiff.  Plaintiff objects to the extent disclosure of personal information, including home addresses, of any current or former government employee is prohibited under federal and state privacy laws.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

1.     California Department of Health Services Asst. Chief Counsel [Audits & Investigations] Taylor Carey: First notified of qui tam case April 13, 2000 by e-mail from Senior Assistant Attorney General Thomas Temmerman.

2.     Presentation made by Ven-A-Care to the Attorney General's Office and the Department of Health Service on or about October 19 or October 20, 2000 at the Headquarters Office of the California Department of Justice located in Sacramento, California.  The following individuals were present [Name followed by affiliation]:

- Terry Porter [Auditor, Bureau of Medi-Cal Fraud & Elder Abuse, San Diego]
- Atlee Wampler [Wampler, Buchanan & Breen- Relator's counsel]
- John Lockwood, M.D. [Relator]
- Zach Bentley [Relator]
- Jim Breen [Relator's counsel]
- Luis Cobo [Relator]

9

- T.Mark Jones [Relator]

- Alison W. Simon [Wampler Buchanan & Breen -paralegal]

- Bob Rose [Attorney- Rose & Associates, San Diego]

- Chris Green [Litigation Support, Attorney General's Office, Sacramento]

- Len Terra [Pharmacist, California Department of Health Services]

- Douglas Hilblom [Pharmacist, California Department of Health Services]

- J. Kevin Gorospe [Pharmacist, California Department of Health Services]

- Marianne Lewis [California Department of Health Services]

- Larry Malin [Investigator, California Department of Health Services]

- Diana Ducay [Investigator, California Department of Health Services]

- Sheila Nolan [Office of Legal Services- California Department of Health Services]

- Belinda Whitsett [Office of Legal Services- California Department of Health Services]

- Jeanette Smith [Office of Legal Services- California Department of Health Services]

- Peter Siggins [California Attorney General's Office]

- Bill Lockyer [Attorney General for the State of California]

- Cecilia Garcia [Paralegal, Bureau of Medi-Cal Fraud & Elder Abuse, San Diego]

- Thomas A. Temmermann [Senior Asst. Atty. Genl, Sacramento]

3.     Meeting between Bureau of Medical Fraud & Elder Abuse [BMFEA] and California Department of Health Services on October 3, 2002.  The following individuals were present [Name followed by affiliation]:

- Thomas A. Temmermann [Senior Asst. Atty. Genl, BMFEA, Sacramento]

- Terry Porter [Auditor, BMFEA, San Diego]

- William Schneider [Deputy Attorney General, BMFEA, San Diego]

- Sheila Nolan [Office of Legal Services- California Department of Health Services]

- Diana Ducay [Audits & Investigations, California Department of Health Services]

- Stan Rosenstein [Director, California Department of Health Services]

- Gail Margolis [California Department of Health Services]

- Jan Inglish [Audits & Investigations, California Department of Health Services]

- Bob Martinez [Calif. DHS Medi-Cal Payments Division]

- Jane Lamborn [Office of Legal Services- California Department of Health Services]

- Mary Stober [Office of Legal Services- California Department of Health Services]

- Tod Beach [Office of Legal Services- California Department of Health Services]

- Barbara Yonemura [Office of Legal Services- California Department of Health Services]

4.      Letter from Senior Asst. Attorney General Thomas A. Temmerman  to Chief Counsel Barbara Yonemura of California Department of Health Services dated September 25, 2003 advising of the potential categories of documents that will potentially be sought by defendants under investigation.  Others individuals subsequently involved as a direct result of this letter include Vic Walker and Katherine Ahrens [Pharmacists, California Department of Health Services].

INTERROGATORY NO. 6

Identify all Persons that you contacted, interviewed, spoke with, questioned or deposed in connection with Your investigation of the allegations in the Ven-A-Care Qui Tam Complaint.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information subject to the work product doctrine and the law enforcement investigative privilege.  Plaintiff objects to the extent the Interrogatory is overbroad, seeking current contact information (including residence) for former or current employees of Plaintiff who should be contacted through counsel for Plaintiff. Plaintiff objects to the extent disclosure of personal information, including home addresses, of any current or former government employee is prohibited under federal and state privacy laws. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

- Atlee Wampler [Wampler, Buchanan & Breen- Relator's counsel]
- John Lockwood, M.D. [Relator]
- Zach Bentley [Relator]
- Jim Breen [Relator's counsel]
- Luis Cobo [Relator]
- T.Mark Jones [Relator]
- Alison W. Simon [Wampler Buchanan & Breen -paralegal]
- Bob Rose [Attorney- Rose & Associates, San Diego]
- Chris Green [Litigation Support, Attorney General's Office, Sacramento]
- Len Terra [Pharmacist, California Department of Health Services]
- Douglas Hilblom [Pharmacist, California Department of Health Services]
- J. Kevin Gorospe [Pharmacist, California Department of Health Services]
- Marianne Lewis [California Department of Health Services]
- Larry Malin [Investigator, California Department of Health Services]
- Diana Ducay [Investigator, California Department of Health Services]

12

- Sheila Nolan [Office of Legal Services- California Department of Health Services]

- Belinda Whitsett [Office of Legal Services- California Department of Health Services]

- Jeanette Smith [Office of Legal Services- California Department of Health Services]

- Peter Siggins [California Attorney General's Office]

- Bill Lockyer [Attorney General for the State of California]

- Cecilia Garcia [Paralegal, Bureau of Medi-Cal Fraud & Elder Abuse, San Diego]

- Thomas A. Temmermann [Senior Asst. Atty. Genl, Sacramento]

- William  Schneider [Deputy Attorney General, BMFEA, San Diego]

- Stan Rosenstein [Director, California Department of Health Services]

- Gail Margolis [California Department of Health Services]

- Jan Inglish [Audits & Investigations, California Department of Health Services]

- Bob Martinez [Calif. DHS Medi-Cal Payments Division]

- Jane Lamborn [Office of Legal Services- California Department of Health Services]

- Mary Stober [Office of Legal Services- California Department of Health Services]

- Tod Beach [Office of Legal Services- California Department of Health Services]

- Barbara Yonemura [Office of Legal Services- California Department of Health Services]

INTERROGATORY NO. 7

Identify each false claim that forms the basis of your allegations in the Complaint.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is unduly burdensome as the case involves millions of false claims.  Plaintiff objects to the extent this Interrogatory is premature and unreasonable at this early stage of discovery before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken and before third-party discovery has commenced.  Further, this Interrogatory is cumulative to the extent Plaintiff has already provided the information in its initial disclosures under Federal Rule of Civil Procedure 26. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Plaintiff refers Defendants to the Exhibits served with the Initial Disclosures on or about July 30, 2007, which provides by each specific NDC the total units, the reimbursed amounts, and other responsive information.  At this point, Plaintiff has not completed discovery of the underlying facts of the case and is unable to fully respond to this Interrogatory.  Plaintiff reserves the right to supplement this response when and if the requested information becomes accessible to it.

INTERROGATORY NO. 8

Identify all actions taken by You and Ven-A-Care to insure the preservation of evidence, witness testimony, data, or other information relevant to or discoverable in this litigation, including, without limitation, the date on which the action was taken, the Persons who took the action, the specific direction to preserve evidence, the persons to whom it was communicated, and the parties to the Communication relating to the preservation of evidence.

RESPONSE:

Plaintiff objects to this Interrogatory as unduly burdensome and overbroad.  Plaintiff

objects to this Interrogatory to the extent it requests information regarding actions taken by the

relator. Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney

work product and the law enforcement investigative privilege.  Subject to and without waiving

its specific and general objections and its objections to Defendants' definitions and instructions,

Plaintiff responds:

      1.    The Office of Legal Services ("OLS")  coordinated the actions taken to

identify, locate and preserve all documents within the Department of Health

Services ("Department") (now Department of Health Care Services) that could be

relevant or discoverable in this litigation.  For these purposes, "document"

included both paper and electronic documents and was defined to include any

kind of tangible material, whether written, recorded, microfilmed, microfiched,

photographed, computerized, or reduced to an electronic or magnetic impulse,

including papers, agreements, contracts, notes, memoranda, electronic or

computer-transmitted messages, letters, emails, facsimile transmissions,

statement, invoices, record books, reports, studies, analyses, minutes, working

papers, charts, graphs, drawings, calendars, appointment books, diaries, indices,

or tapes, and all written, printed, recorded, taped, typed, duplicated, reproduced or

other tangible matter.

      2.    OLS was notified of the pending litigation by letter dated September 25,

2003, from the Bureau of Medi-Cal Fraud & Elder Abuse ("Bureau").  The letter

notified OLS of the pending litigation, the potential defendants and the anticipated

discovery demands. The letter also listed specific items and categories of documents.

3.      By letter dated September 10, 2004, the Bureau requested the material identified in its previous letter of September 25, 2003.  The Pharmacy Policy and Contracting Section ("Pharmacy Policy"),  Medi-Cal  Benefits Branch, Medi-Cal Policy Division,  Medical Care Services, was notified of the need to locate and preserve all documents that could be potentially discoverable in relation to the litigation.

4.      On November 5, 2004 OLS met with Pharmacy Policy to review the specific items and categories of documents that had been identified as being subject to discovery demands in the pending litigation, and  Pharmacy Policy was directed to preserve all documents that could be discoverable.   On November  8, 2004,  OLS met with Pharmacy Policy and the Rebate Collection & Vision Care Section ("Rebate Section") to discuss the pending litigation and the need to identify and preserve all documents that could  be discoverable.

5.      On December 2, 2005, OLS met with Pharmacy Policy and again reviewed the need to preserve all documents.  The following areas of the Department were identified as those that could have discoverable documents:

      a.      The Executive Office of the Department;

      b.      Medical Care Services, including Pharmacy Policy, Rebate Section,  and the Medical Policy Section;

      c.      Medi-Cal Operations Division;

      d.      Payment Systems Division, including the fiscal intermediary, electronic Data Systems ("EDS");

      e.      Audits and Investigations;

      f.      Information Technology Services Division;

      g.      Legislative and Governmental Affairs;

      h.      Fiscal Forecasting and Data Management Branch, Administration; and

      i.      OLS.

6.      On December 9, 2005, OLS sent an email notice to all the branches and offices listed in paragraph No. 5, above, notifying them of the pending litigation and the need to preserve all documents that could be discoverable.  The notice was also sent to the offices listed below:

      a.      California Conference of Local Health Officers;

      b.      Office of Long Term Care;

      c.      Primary Care and Family Health;

      e.      Prevention Services;

      g.      Health Information and Strategic Planning;

      h.      Office of Aids; and

      i.      Office of Public Affairs.

7.      Notices to identify and preserve all discoverable documents were also sent to all the offices listed in paragraph 5 on April 12, 2006, August 5, 2006 and June 22, 2007.  Additional notices have been sent to individual offices and sections on December 23, 2005, December 29 and 30, 2005, January 20, 2006, February 22,

2006, February 23, 2006,  March 3, 2006, , March 30, 2006, April 6, 2006, April 20, 2006, October 18, 2006, December 8, 2006, December 11, 2006, December 27, 2006, and June 22, 2007.

8.      OLS has met in person with staff in the offices listed in paragraph 5 to discuss the pending litigation, the need to preserve documents and the need to identify and locate all discoverable documents on the following dates:  December 22, 2005, January 3, 2006, January 6, 2006, January 13, 2006, January 26, 2006, February 17, 2006, February 23, 2006, February 24, 2006, March 8, 2006, March 15, 2006, March 20, 2006, March 30, 2006, April 3, 2006, April 12, 2006,  April 20, 2006, May 1, 2006, May 2, 2006, May 5, 2006, May 10, 2006, May 17, 2006, May 24, 2006,June 29, 2006, July 26, 2006,December 19, 2006, January 5, 2007, February 7, 2007, March 1, 2007, June 7, 2007, June 25, 2007, October 17, 2007, October 18, 2007.

9.      OLS also took additional steps to preserve electronic data.  On December 23, 2005, OLS sent a notice to the Information Technology Division to immediately suspend deletion of all back-up tapes and servers.  A litigation hold was imposed on all electronic data created and stored by the Department, including email back-up tapes and servers.

10.      On December 29, 2005, a notice was sent to the Information Technology Division to suspend cleaning and reassigning of computers.

11.      On December 29, 2005, the local LAN administrators for Pharmacy Policy, the Medi-Cal Policy Division,  Medi-Cal Operations and Audits and Investigations were told to suspend deletion of back-up tapes and servers.

12.     On March 15, 2006, and October 17, 2007, OLS met with the local LAN administrators and gave them a presentation on the litigation and need to preserve data.

13.     On March 30, 2006, OLS sent a reminder notice to the local LAN administrators not to delete any data from backup tapes, or to overwrite tapes that had been previously used, or to destroy any data on servers that were not being backed up and not to wipe clean any servers that had been taken offline.

14.     Based upon its discussions and meetings with the various areas of the Department affected by the litigation hold, OLS determined that some areas and sections do not have any potentially discoverable documents.  The litigation hold was therefore lifted for these areas as listed below:

       a.     On March 24, 2006, the hold was lifted for approximately 40 servers, maintained by the Network Technology Support Section, Infrastructure Support Branch, Information Technology Services, that provide infrastructure support, but do not contain any documents within the subject area of potential discovery requests;

       b.     Laboratory Field Services;

       c.     Office of County Health Services;

       d.     Office of Women's Health;

       e.     Multicultural Health;

       f.     Office of Long Term Care;

       g.     Prevention Services;

h.     Administrative Claiming Local & Schools Services Section, Benefits Analysis Section, Medi-Cal Benefits Branch;

i.     Program Review Section and Policy Sections A, B and C, Medi-Cal Eligibility Branch;

j.     In-Home Operations and Monitoring & Oversight Section, Home & Community Based Services Branch;

k.     California Conference of Local Health Officers (CCLHO); and

l.     Health Information & Strategic Planning.

15.    On February 15, 2007, the litigation hold on computer servers was modified by changing from a daily backup of all tapes and servers subject to the hold to a monthly backup.  The monthly backup has been continued for all units and sections that have not been released from the litigation hold.

16.    In addition to the actions described above, the Bureau has also sent notices to the Department, reminding it of its duty to preserve and produce all discoverable electronic data and documents, by letters dated January 17, 2006, October 17, 2006, July 20, 2007, September 28, 2007, November 1, 2007 and December 3, 2007.

<u>INTERROGATORY NO. 9</u>

Identify the statutes, regulations, rules or other authority on which You rely to claim that Defendants had a legal duty to price their prescription drugs in any particular way; refrain from discounting the prices of their prescription drugs; refrain from confidential price negotiations concerning their prescription drugs; or, publicly disclose the results of confidential price negotiations.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is vague and ambiguous as to the term "confidential price negotiation."  Plaintiff objects to the extent this Interrogatory is unduly burdensome and overbroad to the extent it misstates and exceeds the scope of the Complaint. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds: Cal. Welf & Inst. Code §§ 14105.3(a); 14105.31(b);14105.33; 14105.35; 14105.39; 14105.45; 14105.46; 14124.5(a) and 22 CA Admin. C. [post-1987 called the California Code of Regulations] §§ 51513(a) (6); 51513(a) (12) with Reg. 87, No. 44; 51513.5.

INTERROGATORY NO. 10

Describe, in detail, the manner in which the amount paid and/or the amount allowed was determined for the allegedly false claims as to which Plaintiffs seek damages and/or penalties in this case. For Medicaid claims reimbursed through use of J Codes or X Codes (or any other reimbursement methodology not directly tied to the Subject Drugs' NDC), Your response should explain the manner in which the amount paid and/or the amount allowed was determined. In particular, for Medicaid claims reimbursed through use of J Codes or X Codes (or any other reimbursement methodology not directly tied to the Subject Drugs' NDC), Your explanation should (1) describe how any applicable payment amount was calculated, (2) identify the array of all prices that were used to determine each payment amount, (3) identify the source (e.g., Red Book) from which AWP or other pricing data was obtained. Your explanation should contain responsive information applicable to the entire Relevant Claim Period for each of the Subject Drugs. To the extent that documents are referred to in response to this Interrogatory, You are requested to identify (1) the control (Bates) number of each document, (2) the time period for which the information contained in each document is applicable, and (3) to which of the allegedly false claims the information in each document relates. To the extent that You are unable to provide the requested information for all of the allegedly false claims as to which Plaintiffs seek damages and/or penalties, You are requested to identify the allegedly false claims

21

upon which You are able to provide responsive information.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is vague and ambiguous as to the terms "allegedly false claim" and "the manner in which the amount paid and/or the amount allowed." Plaintiff objects to the extent the Interrogatory seeks information subject to the deliberative process privilege.  The process of developing policies, regulations and rules regarding reimbursement of drug purchases is an inherently pre-decisional and policy-based process that includes requests for legal advice, which would be protected by the attorney-client privilege and the work product doctrine.  The identities of all individuals who were involved or consulted in that process, as well as any documents generated, are also subject to the deliberative process privilege, as well as the attorney-client privilege and work product doctrine.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Plaintiff refers Defendants to the DHCS Formulary File that was served with California's Initial Disclosures on or about July 30, 2007.  Furthermore, pharmacy reimbursement policy can be found at http://files.medi-al.ca.gov/pubsdoco/publications/masters-mtp/part2/reimbursement-_p00.doc. Additionally, DHCS relied upon the following statutes in the calculation of payments Cal. Welf. & Inst. Code §§ 14105.3(a); 14105.31(b);14105.33; 14105.35; 14105.39; 14105.45; 14105.46; 14124.5(a) and 22 CA Admin. C. [post-1987 called the California Code of Regulations] §§ 51513(a)(6); 51513(a)(12) with Reg. 87, No. 44; 51513.5; 51509(h). Additionally, Plaintiff obviously relied on the published prices available through First DataBank in determining the 'amount paid' or 'amount allowed for reimbursement of the various drugs on the formulary.  As far as the remainder of the Interrogatory, Plaintiff reserves the right to provide further answers once the investigation is completed.

INTERROGATORY NO. 11

Identify all reimbursement methodologies that You have ever used or considered using to reimburse for physician-administered drugs, the Subject Drugs, and/or pharmacy claims under

the California Medicaid Program, and the dates during which each reimbursement methodology was in effect, and for each reimbursement methodology so identified, identify the person(s) most knowledgeable about each considered and implemented methodology.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information subject to the deliberative process privilege, the attorney-client privilege and the work product doctrine.  The process of developing policies, regulations and rules regarding reimbursement of drug purchases, is an inherently pre-decisional and policy-based process that includes requests for legal advice. The identities of all individuals who were involved or consulted in that process, as well as any documents generated, are also subject to the deliberative process privilege, as well as the attorney-client privilege and work product doctrine. Plaintiff objects to the scope of this Interrogatory, as the term "ever used" is overbroad. The request for "reimbursement methodologies that You have ever used or considered using to reimburse for physician-administered drugs" is overbroad and seeks information irrelevant to the claims of the case.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds: Plaintiff refers Defendants to the California Department of Health Care Services [DHCS] Formulary File that was served with California's Initial Disclosures on or about July 30, 2007. Additionally, DHCS relied upon the following statutes in the calculation of payments: Cal. Welf & Inst. Code §§ 14105.3(b); 14105.31(f);14105.33; 14105.45; 14105.46; 14105.336; 14105.337; 14124.5(a); and  22 CA Admin. C. [post-1987 called the California Code of Regulations] §§; 51513 with Reg. 87, No. 44; 51513.5.  The individual most knowledgeable about current methodologies used for pharmacy reimbursement is J. Kevin Gorospe, Pharm.D, Chief, Medi-Cal policy Branch.  As for the remainder of the Interrogatory, Plaintiff reserves the right to provide further answers once the investigation is completed.

INTERROGATORY NO. 12

Describe whether and how You use or used the DOJ Medicaid AWPs.

RESPONSE:

Plaintiff objects to the term "DOJ Medicaid AWPs" as vague and ambiguous.  Plaintiff also objects to the Interrogatory as vague as to the time period for which information is requested.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

The DOJ generated AWPs were not used.  At the time of the April 2000 DOJ letter, the Department was bound by section 51513(a)(7) of Title 22 of the California Code of Regulations (CCR), which provides:

> (7) Average Wholesale Price (AWP), excepting temporary updates as provided in subdivision (a)(13), means the price for a drug product or a medical supply product listed for a standard package in the Department's primary price reference source, or for products not listed in the Department's primary price reference source, the price listed for a standard package in the secondary price reference source; and, if not listed in the secondary price source, the principal labeler's catalogue. The selection of the primary price reference source and the secondary price reference source shall be based upon an evaluation of the various price reference sources available in relation to the following criteria:
>
> (A)   Accuracy and currentness of prices.
> (B)   Comprehensiveness of data base.
> (C)   Capability to meet the needs of the Department's fiscal intermediary.
>
> The primary price reference source will be the price reference source that, in the judgment of the Director, best meets the criteria specified above. The secondary price reference source will be the price reference source that, in the judgment of the Director when evaluated against the criteria listed above, is inferior to the primary price reference source but superior to all others evaluated.

The AWPs created pursuant to the letter were not considered comprehensive or current

and therefore were not implemented by the Department.

INTERROGATORY NO. 13

Describe the methods and corresponding reasons and rationale for determining or calculating reimbursements for each Subject Drug that You based on FUL, FAC, MAC or MAIC, including, but not limited to providing the specific calculations used to determine the initial MAC or MAIC price applicable to each NDC and specific calculations used to determine every change in the applicable MAC or MAIC thereafter, explaining how and why Medi-Cal set the formula for calculating MAC or MAIC ("MAC Formula") and identifying all information and documents reviewed, considered, or relied upon, in setting the MAC Formula, including but not limited to all alternatives considered and reasons for rejecting them. This Interrogatory is addressed to Plaintiff whether it currently has such information or whether it must obtain such information from any of its agents, including, but not limited to Electronic Data Systems Corporation and/or First DataBank, Inc.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information regarding MAICs, which is not relevant to any claim in the complaint, or to any defense stated by Defendants. Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the terms "reasons" and "rationale." Further, the Interrogatory is overbroad, beyond the scope of discovery and beyond the control of Plaintiff to the extent it seeks information from First DataBank. Plaintiff objects to the extent the Interrogatory seeks information subject to the deliberative process privilege. The process of developing policies, regulations and rules regarding reimbursement of drug purchases is an inherently pre-decisional and policy-based process that includes requests for legal advice. The identities of all individuals who were involved or consulted in that process, as well as any documents generated, are also subject to the deliberative process privilege, as well as the attorney-client privilege and work product doctrine. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions,

Plaintiff responds:

The Department does not calculate the FUL and relies on the FUL prices provided in Addendum A change transmittals from the Centers for Medicare and Medicaid Services (CMS). The Federal Upper Limit (FUL) prices provided by the Centers for Medicare and Medicaid Services (CMS) as listed in the State Medicaid Manual, Part 6, Payment for Services, Addendum A and subsequent changes made by CMS to Addendum A, on the implementation dates provided by CMS.

On January 1, 1994, calculations used to determine the initial MAC or MAIC price applicable to each NDC and specific calculations used to determine every change in the applicable MAC or MAIC thereafter were specified in California Welfare and Institutions Code section 14105.45.  The reimbursement methodology used for determining or calculating reimbursements based on FUL, FAC, MAC or MAIC was based on regulations set forth in section 51513,of Title 22 of the CCR.  Currently available documents do not indicate how this methodology was determined.  Changes after January 1, 1994, to the reimbursement methodology used for pharmacy claims were determined by changes in the Welfare and Institutions Code.  The amount reimbursed to providers is based on the lowest amount billed by the provider or the maximum rate of reimbursement as determined by the Department, minus any adjustments required by law.  The Estimated Acquisition Cost (EAC) and dispensing fee used to calculate the maximum reimbursement rate and adjustments to reimbursement from January 1, 1994, through December 31, 2003, occurred as follows:

| Date | Estimated Acquisition Cost | Dispensing Fee** | Other Adjustment |
|---|---|---|---|
| 1/1/1994 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs. tit. 22, § 51513) | $4.05 (Cal. Code Regs. tit. 22, § 51513) | |
| 1/1/1995 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs. tit. 22, § 51513) | $4.05 (Cal. Code Regs. tit. 22, § 51513) | 50-cents deducted calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.336) |

| 1/1/2000 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs. tit. 22, § 51513) | $4.05 (Cal. Code Regs. tit. 22, § 51513) | 25-cents deducted from calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.337) |
| --- | --- | --- | --- |
| 1/1/2002 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs. tit. 22, § 51513 | $4.05 (Cal. Code Regs. tit. 22, § 51513) | 10-cents deducted from calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.337) |
| 12/1/2002 | Lowest of : AWP-10% or FUL or MAIC or ASP (Cal. Code Regs. tit. 22, § 51513 and Cal. Welf. & Inst. Code §  14105.46) | $4.05 (Cal. Code Regs. tit. 22, § 51513) | 50-cents deducted from calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.337) |
| 7/1/2004 | Lowest of : AWP-10% or FUL or MAIC or ASP (Cal. Code Regs. tit. 22, § 51513 and Cal. Welf. & Inst. Code § 14105.46) | $4.05 (Cal. Code Regs. tit. 22, § 51513) | |
| 9/1/2004 | Lowest of : AWP-17% or FUL or MAIC or Selling Price (Cal. Welf. & Inst. Code § 14105.45) | $7.25 $8.00 for beneficiaries in nursing facilities (Cal. Welf. & Inst. Code § 14105.45) | |

* Direct Price used only for Abbott Laboratories, Ayerst Laboratories, Lederle Laboratories, Merck, Sharpe and Dohme, Parke Davis and Company, Pfizer Laboratories, Roerig, J. B. and Company, Ross Laboratories, Squibb, E. R. and Sons, The Upjohn Company, and Wyeth Laboratories pursuant to Section 51513.5 of the California Code of Regulations.

**Pursuant to section 51513.5(e) of the California Code of Regulations, additional charges for extemporaneously compounded prescriptions are allowed according to the following schedule:

    Capsules and Papers
        6-36............................................$1.98
        37-100........................................$3.95
    Ointments
        up to 180 Gm.............................$1.64
        180 Gm and over........................$3.29
    Suppositories
        up to 24.......................................$3.29
        24 and over.................................$5.76
    Sterile Eye Preparations

          All.............................................$2.04
Nose and Ear Preparations
          All.............................................$ 0.81
Emulsions
          Up to 240cc...............................$ 0.81
          240cc and over..........................$1.64
Liquids other than simple pouring or reconstituting
          All.............................................$ 0.99

INTERROGATORY NO. 14

Identify Your method for ensuring that pharmacist reimbursement rates established for

the prescription drugs under the Medi-Cal program estimate the price generally and currently

paid by Providers as required by 42 C.F.R. § 447.331, including but not limited to the method

You currently use, and/or have used historically, for calculating the EAC for each type of

pharmaceutical product or aggregate EAC; the date of any change to the method for calculating

EAC; the date of any proposed change, whether or not implemented, for calculating EAC; the

reasons for implementing or not implementing each proposed change in the method of

calculating EAC; the identity of each Person who proposed, recommended, or authorized the

changes in the method for calculating EAC; and the identity of the Persons most knowledgeable

about Your methods for calculating EAC and the changes to those methods.  Additionally,

Identify Your method for ensuring that pharmacist reimbursement rates established for the

prescription drugs under the Medi-Cal program do not exceed in the aggregate, payment levels

determined by applying for each drug entity a reasonable dispensing fee established by the

agency plus an amount established by CMS that is equal to 150 percent of the published price for

the least costly therapeutic equivalent, as required by 42 C.F.R. § 447.332, including but not

limited to the method You currently use, and/or have used historically, for calculating the FUL

for each type of pharmaceutical product or aggregate FUL; the date of any change to the method

for calculating FUL; the date of any proposed change, whether or not implemented, for

calculating FUL; the reasons for implementing or not implementing each proposed change in the method of calculating FUL; the identity of each Person who proposed, recommended, or authorized the changes in the method for calculating FUL; and the identity of the Persons most knowledgeable about Your methods for calculating FUL and the changes to those methods.

RESPONSE:

Plaintiff objects to the Interrogatory as vague and ambiguous and unintelligible as written. Plaintiff objects to the extent the Interrogatory seeks information that is privileged pursuant to the deliberative process privilege.  The process of developing policies, regulations and rules regarding reimbursement of drug purchases, is an inherently pre-decisional and policy-based process that includes requests for legal advice.  The identities of all individuals who were involved or consulted in that process, as well as any documents generated, are also subject to the deliberative process privilege, as well as the attorney-client privilege and work product doctrine. Plaintiff also objects to the extent the Interrogatory is vague and ambiguous as to the term "method for ensuring."  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Pharmacy provider reimbursement rates are set via the state regulations and/or statutes. Rates set via regulation are proposed by the Department of Health Care Services and presented to the public for comment prior to implementation.  Rates set via statute are determined by the State Legislature and enacted by the Governor pursuant to his signature.  Generally, rates can be based on information provided through a rate study, a survey, legislative testimony or other public input. On January 1, 1994, the maximum rate of reimbursement to pharmacies for drugs was based on regulations set forth in section 51513 of Title 22 of the CCR.  Currently, available documents do not indicate how this rate was determined.  The individual most likely to recall

this information, Len Terra, retired from the Department in the year 2000.  Changes after January 1, 1994, to the reimbursement rate formula, dispensing fee or claim reimbursement to a pharmacy occurred pursuant to changes in the Welfare and Institutions Code.  The amount reimbursed to providers is based on the lowest amount billed by the provider or the maximum rate of reimbursement as determined by the Department, minus any adjustments required by law. The Estimated Acquisition Cost (EAC) and dispensing fee used to calculate the maximum reimbursement rate and adjustments to reimbursement from January 1, 1994, through December 31, 2003, occurred as follows:

| Date | Estimated Acquisition Cost | Dispensing Fee** | Other Adjustment |
|---|---|---|---|
| 1/1/1994 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs tit. 22, §51513) | $4.05 (Cal. Code Regs tit. 22, §51513) | |
| 1/1/1995 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs tit. 22, §51513) | $4.05 (Cal. Code Regs tit. 22, §51513) | 50-cents deducted calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.336) |
| 1/1/2000 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs tit. 22, §51513) | $4.05 (Cal. Code Regs tit. 22, §51513) | 25-cents deducted from calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.337) |
| 1/1/2002 | Lowest of : AWP-5% or FUL or MAIC or Direct Price* (Cal. Code Regs tit. 22, §51513) | $4.05 (Cal. Code Regs tit. 22, §51513) | 10-cents deducted from calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.337) |
| 12/1/2002 | Lowest of : AWP-10% or FUL or MAIC or ASP (Cal. Code Regs tit. 22, §51513 and Cal. Welf. & Inst. Code § 14105.46) | $4.05 (Cal. Code Regs tit. 22, §51513) | 50-cents deducted from calculated reimbursement amount (Cal. Welf. & Inst. Code § 14105.337) |
| 7/1/2004 | Lowest of : AWP-10% or FUL or MAIC or ASP (Cal. Code Regs tit. | $4.05 (Cal. Code Regs tit. | |

| | | | |
|---|---|---|---|
| | 22, §51513 and Cal. Welf. & Inst. Code § 14105.46) | 22, §51513) | |
| 9/1/2004 | Lowest of : AWP-17% or FUL or MAIC or Selling Price (Cal. Welf. & Inst. Code § 14105.45) | $7.25 $8.00 for beneficiaries in nursing facilities (Cal. Welf. & Inst. Code § 14105.45) | |

*Direct Price used only for Abbott Laboratories, Ayerst Laboratories, Lederle Laboratories, Merck, Sharpe and Dohme, Parke Davis and Company, Pfizer Laboratories, Roerig, J. B. and Company, Ross Laboratories, Squibb, E. R. and Sons, The Upjohn Company, and Wyeth Laboratories pursuant to section 51513.5 of the California Code of Regulations.

**Pursuant to section 51513.5(e) of the California Code of Regulations, additional charges for extemporaneously compounded prescriptions are allowed according to the following schedule:

Capsules and Papers
    6-36............................................$1.98
    37-100........................................$3.95
Ointments
    up to 180 Gm..............................$1.64
    180 Gm and over.........................$3.29
Suppositories
    up to 24.......................................$3.29
    24 and over.................................$5.76
Sterile Eye Preparations
    All.............................................$2.04
Nose and Ear Preparations
    All.............................................$ 0.81
Emulsions
    Up to 240cc...............................$ 0.81
    240cc and over..........................$1.64
Liquids other than simple pouring or reconstituting
    All.............................................$ 0.99

The individuals likely involved with the above changes are the same as those identified in

Interrogatory No. 15.  The most knowledgeable individual currently employed by the

Department regarding the methods of calculating EAC is J. Kevin Gorospe, Pharm.D., Chief,

Medi-Cal Pharmacy Policy Branch.

The Department ensures it is in compliance with the aggregate payment levels required by 42 C.F.R. § 447.332 by implementing the Federal Upper Limit (FUL) prices provided by the Centers for Medicare and Medicaid Services (CMS) as listed in the State Medicaid Manual, Part 6, Payment for Services, Addendum A and subsequent changes made by CMS to Addendum A, on the implementation dates provided by CMS.  The Department does not calculate the FUL and relies on the FUL prices provided in Addendum A change transmittals from CMS.  There are no records of any proposed changes to the method of calculating the FUL being made by the Department.

<u>INTERROGATORY NO. 15</u>

Identify all Persons currently or formerly employed by You who were involved in any way in the preparation of assurance letters to the U.S. Government (including but not limited to Federal Agencies) representing that Your EAC as calculated was the best estimate of the prices that Providers were currently and generally paying for drugs and that your pharmacist reimbursement rates do not exceed in the aggregate, payment levels determined by applying for each drug entity a reasonable dispensing fee established by the agency plus an amount established by CMS that is equal to 150 percent of the published price for the least costly therapeutic equivalent.

<u>RESPONSE</u>:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "drug entity."  Plaintiff objects to the extent disclosure of personal information, including home addresses, of any current or former government employee is prohibited under federal and state privacy laws.  Plaintiff objects to the extent this Interrogatory seeks information or documents protected by the attorney-client and deliberative process privilege.  Plaintiff objects to the extent

this Interrogatory seeks information already provided in Plaintiff's initial disclosures.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds: The Medi-Cal fee-for-service (FFS) drug program does not provide reimbursement to individual pharmacists and therefore, has not established a pharmacist reimbursement rate.  The Department establishes reimbursement rates for and provides reimbursement to pharmacy entities.  That being said, the Medi-Cal FFS drug program does not provide assurance letters to the US Government representing that the EAC utilized by the Medi-Cal FFS drug program is the best estimate of prices that Providers are currently and generally paying for drugs.  Rather, a State Plan Amendment (SPA) discussing reimbursement methodologies is submitted.  Individuals who may have been formerly and are currently involved in the preparation, review, and submission of the SPA are as follows:

Individuals currently employed by the Department of Health Care Services (DHCS):

Kathleen Henry, AGPA
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

James Kevin Gorospe, Pharm D
Pharmaceutical Program Consultant
Chief, Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Pilar Williams
Chief, Medi-Cal Pharmacy Benefits Division
Former Chief, Medi-Cal Contracting Section, DHS

Stan Rosenstein
Chief Deputy Director of Health Care Programs
Former Deputy Director, Medical Care Services, DHS

Toby Douglas
Deputy Director, Health Care Policy
Former Assistant Deputy Director, Medical Care Services, DHS

Sandra Shewry
Director, Medical Care Services

Individuals formerly employed by the DHCS, formerly known as the Department of Health
Services (DHS):

Tom Ahrens, Pharm. D.
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section

Leonard Terra, RPh
Former Pharmaceutical Program Consultant
Chief, Pharmacy Unit
Medi-Cal Pharmacy Benefits Division

Bud Lee
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Doug Hillblom, Pharm. D.
Former Pharmaceutical Program Consultant
Chief, Contracting Unit A
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Mike Neff
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Jan Howard
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Daryl Nixon
Former Chief, Medi-Cal Benefits Branch
Medi-Cal Policy Division

David Mitchell
Former Chief, Medi-Cal Benefits Branch
Medi-Cal Policy Division

Marianne Lewis
Former Branch Chief, Medi-Cal Benefits Branch
Former Section Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Roberto Martinez
Former Chief, Medi-Cal Policy Division

Benjamin Thomas
Former Chief, Medi-Cal Policy Division

Joseph Kelly
Former Chief, Medi-Cal Policy Division

Richard Bayqeun
Former Chief Deputy Director
Medical Care Services

Doug Porter
Former Chief Deputy Director
Medical Care Services

John Rodriguez
Former Chief Deputy Directory
Medical Care Services

Gail Margolis, Esq.
Former Deputy Director, Medical Care Services

Diana Bontá, Dr PH, RN
Former Director, Medical Care Services

Kimberly Belshé
Secretary, Health and Human Services Agency
Former Director, Medical Care Services

Molly J, Coye, M.D., M.P.H.
Former Director, Medical Care Services

The Medi-Cal FFS drug program does not perform calculations to determine whether in the aggregate pharmacy reimbursement exceeds payment levels determined by applying for each drug entity a reasonable dispensing fee plus the amount established by CMS that is equal to 150 percent of the published price for the least costly therapeutic equivalent and therefore, does not prepare any assurance letters to the US Government reporting such.

INTERROGATORY NO. 16

Identify all Persons currently or formerly employed by You or serving as a contractor to You with any knowledge that, at any time, the reimbursement for a pharmaceutical drug product based on AWP or Direct Price might result in reimbursement to a provider in excess of actual acquisition cost.

RESPONSE:

To the extent the Interrogatory seeks the identity of persons who had "knowledge" that a certain consequence "might result," the Interrogatory is vague, ambiguous and calls for speculation.  Plaintiff objects to the extent disclosure of personal information, including home addresses, of any current or former government employee is prohibited under federal and state privacy laws.  Plaintiff objects to the Interrogatory to the extent the term "at any time" is overbroad and exceeds the scope of the allegations of the complaint.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

>Pilar Williams, Chief
>Medi-Cal Pharmacy Benefits Division
>California Department of Health Care Services
>1501 Capitol Avenue
>Sacramento, CA 95814
>
>Stan Rosenstein
>Chief Deputy Director of Health Care Programs
>California Department of Health Care Services
>1501 Capitol Avenue
>Sacramento, CA 95814
>
>Toby Douglas
>Deputy Director
>Health Care Policy
>California Department of Health Care Services
>1501 Capitol Avenue
>Sacramento, CA 95814

James Kevin Gorospe, Pharm D
Chief, Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Vic Walker, RPh
Pharmaceutical Consultant II (supervisor)
Pharmacy Policy Branch
Data Analysis Unit
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Katherine Ahrens, Pharm D (aka Katherine Cabacungan)
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Marco Gonzales, Pharm D
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Pauline Chan, RPh, MBA
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Teresa Miller, Pharm D
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Lori Bradley, RPh
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Sara Umeda, Pharm D
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Mike Wofford, Pharm D
Chief, Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Pansy Watson, RPh
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Marilyn Hirning, Pharm D
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Paul Pontrelli, Pharm D
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Vickie Fu, Pharm D
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Diane Furukawa, Pharm D
Pharmaceutical Program Consultant
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Sam Hodges, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Christopher Amaral, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Rodney Yamamura, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Jeffrey Smith, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Jan Howard
Assistant Chief Developmental Centers
Department of Developmental Services
1600 9th Street
Sacramento, CA 95814
Former Chief
Medi-Cal Contracting Section
Medi-Cal Policy Division
California Department of Health Services
Sacramento, CA 95814

Marianne Lewis
Deputy Branch Chief
Women, Infants, and Children Program
California Department of Public Health
3901 Lennane Drive
Sacramento, CA 95834
Former Branch Chief, Medi-Cal Benefits Branch
Former Section Chief, Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Cassie McCreary, Pharm D
Currently living in Italy
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Greg Doe, Pharm D
Pharmaceutical Program Consultant
Department of General Services
707 3rd Street, 2nd Floor, 02-208
West Sacramento, CA 95605
Former Pharmaceutical Consultant II (Specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
California Department of Health Services
Sacramento, CA 95814

Roy Takeuchi, Pharm D
Pharmaceutical Consultant II (supervisor)
Northern Drug Unit
Medi-Cal Operations Division
400 East Main Street, Suite 700
Stockton, CA 95202
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Tom Ahrens, Pharm. D.
Pharmaceutical Program Consultant
Strategic National Stockpile Coordinator
Chief, Emergency Pharmaceutical Services Unit
Emergency Preparedness Office
California Department of Public Health
1615 Capitol Avenue
Sacramento, CA 95814
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Louis Lallo, Pharm D
Pharmaceutical Consultant II (specialist)
Emergency Pharmaceutical Services Unit
Emergency Preparedness Office
California Department of Public Health
1615 Capitol Avenue
Sacramento, CA 95814
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
California Department of Health Services
Sacramento, CA 95814

Elisa Ashton, Pharm D
Pharmaceutical Consultant II (specialist)
Medi-Cal Managed Care Division
1501 Capitol Avenue, Suite 71.3041
Sacramento, California  95899-7413
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Doug Hillblom, Pharm D
Former Chief, Medi-Contracting Section
Medi-Cal Policy Division
Former Pharmaceutical Program Consultant
Chief, Contracting Unit A
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Mike Namba, Pharm D, MS
Clinical Pharmacist
Maxor
428 J Street, Suite 610
Sacramento, CA 95814
Former Pharmaceutical Program Consultant
Chief, Contracting Unit B
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Laurie Squartsoff, RPh
Former Pharmaceutical Program Consultant
Chief, Contracting Unit B
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Steve Pondel, Pharm D
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Richard Morita, Pharm D
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Yvette Crockell, Pharm D
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Bruce Boelter, Pharm D
Former Pharmaceutical Consultant II (specialist) on contract through EDS
Pharmacy Policy Unit
Medi-Cal Policy Division
California Department of Health Services
1501 Capitol Avenue, Suite 71.5131
Sacramento, CA 95814

Mike Neff (retired)
Former Chief
Medi-Cal Contracting Section
Medi-Cal Policy Division
California Department of Health Services
Sacramento, CA 95814

Bud Lee (retired)
Former Chief
Medi-Cal Contracting Section
Medi-Cal Policy Division
California Department of Health Services
Sacramento, CA 95814

Leonard Terra, RPh (retired)
Former Pharmaceutical Program Consultant
Chief, Pharmacy Unit
Medi-Cal Pharmacy Benefits Division
California Department of Health Care Services
Sacramento, CA 95814

Allen Fung, Pharm D (retired)
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Eddie Kanenaga, RPh (retired)
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

Milt Kurschnereit, RPh
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
California Department of Health Services
Sacramento, CA 95814

George Pennebaker, Pharm D
Pharmacist Consultant
EDS/Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA  95670

Duc Ngyuen
Pharmact Technician
Formulary File
EDS/Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

Patrick Robinson, RPh, MBA
Former Pharmaceutical Consultant II
Pharmacy Policy Unit
Medi-Cal Policy Division
Former Pharmacist Consultant [contractor]
EDS/Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

INTERROGATORY NO. 17

For each instance in which You claim that Defendants reported false or inflated prices for their products to First DataBank, as alleged in paragraph No. 43 of the Complaint; that Defendants utilized the spread to seize market share and fraudulently increase their profits, as alleged in paragraph No. 44 of the Complaint; and that Defendants gave Providers discounts, off invoice pricing, free goods, charge backs, volume discounts, credit memos, "consulting" fees, debt forgiveness, educational and promotional grants, and other financial incentives for dispensing Defendants' Subject Drugs as alleged in paragraph No. 45 of the Complaint, please Identify each Person who has personal knowledge of the facts concerning the allegations in the Complaint; and describe all facts about which each such Person has knowledge.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is premature because Plaintiff will rely on documents and material requested from, but not yet produced by, defendants to determine the actual acquisition costs for drugs and the amounts by which defendants inflated the reported prices upon which payment amounts were based.  Plaintiff also objects to the extent this Interrogatory is a premature request for information that may be contained in Plaintiff's subsequent disclosure and testifying experts' reports that will be disclosed in accordance with Federal Rule of Civil Procedure 26 and any applicable scheduling orders.  Plaintiff objects to the extent the Interrogatory seeks information already provided as part of Plaintiff's Rule 26 Initial Disclosures.  Plaintiff objects to the extent this Interrogatory seeks documents protected by the attorney-work product doctrine and attorney client privilege.  Plaintiff objects to the extent the

45

Interrogatory seeks information subject to the law enforcement investigative privilege. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

- Atlee Wampler [Wampler, Buchanan & Breen- Relator's counsel]
- John Lockwood, M.D. [Relator]
- Zach Bentley [Relator]
- Jim Breen [Relator's counsel]
- Luis Cobo [Relator]
- T.Mark Jones [Relator]
- Alison W. Simon [Wampler Buchanan & Breen -paralegal]
- Len Terra [Pharmacist, California Department of Health Services]
- Douglas Hilblom [Pharmacist, California Department of Health Services]
- J. Kevin Gorospe [Pharmacist, California Department of Health Services]
- Marianne Lewis [California Department of Health Services]
- Larry Malin [Investigator, California Department of Health Services]
- Diana Ducay [Investigator, California Department of Health Services]
- Sheila Nolan [Office of Legal Services- California Department of Health Services]
- Belinda Whitsett [Office of Legal Services- California Department of Health Services]
- Jeanette Smith [Office of Legal Services- California Department of Health Services]
- Peter Siggins [California Attorney General's Office]
- Bill Lockyer [Attorney General for the State of California]
- Cecilia Garcia [Paralegal, Bureau of Medi-Cal Fraud & Elder Abuse, San Diego]
- Thomas A. Temmermann [Senior Asst. Atty. Genl, Sacramento]

46

- Terry Porter [Auditor, BMFEA, San Diego]

- William Schneider [Deputy Attorney General, BMFEA, San Diego]

- Sheila Nolan [Office of Legal Services- California Department of Health Services]

- Diana Ducay [Audits & Investigations, California Department of Health Services]

- Stan Rosenstein [Director, California Department of Health Services]

- Gail Margolis [California Department of Health Services]

- Jan Inglish [Audits & Investigations, California Department of Health Services]

- Bob Martinez [Calif. DHS Medi-Cal Payments Division]

- Jane Lamborn [Office of Legal Services- California Department of Health Services]

- Mary Stober [Office of Legal Services- California Department of Health Services]

- Tod Beach [Office of Legal Services- California Department of Health Services]

<u>INTERROGATORY NO. 18</u>

Please identify the date on which You first contacted an attorney for the purpose of evaluating potential claims similar to those made by You in the Complaint, or the date on which any attorney or any other Person or governmental authority first contacted You with regard to potential claims or investigation(s) of allegations similar to those made in the Complaint.

<u>RESPONSE</u>:

Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney client privilege.  Plaintiff objects to the extent this Interrogatory seeks information which is protected by the joint prosecution/common interest doctrine.  Plaintiff objects to the extent the Interrogatory is vague and ambiguous with regard to the terms "potential claims" and "similar

<div align="center">47</div>

to."   Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds: On or about July 30, 1998.

INTERROGATORY NO. 19

Explain in detail, and identify all documents relating to, how and when You first became aware that Providers could obtain prescription drugs at prices that were lower than that drug's published AWP.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the phrase "You first became aware," in reference to an entire state agency.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

At this point in time, Plaintiff is unable to identify a specific date, time, location or names of individuals that relate to the first awareness of when DHCS discovered it could obtain prescription drugs at prices lower than the drug's published AWP.  Likewise, any non-privileged documents relevant to this Interrogatory will be produced pursuant to Defendant's Request for Production of Documents, which was served on Plaintiff on or about October 4, 2007.

INTERROGATORY NO. 20

Identify any State medical assistance program, other than Medi-Cal, including but not limited to any program within the California Department of Health Services, the California Department of Public Health, the California Department of Social Services, the California Department of Mental Health, the University of California, and the California Department of Corrections and Rehabilitation, which uses AWP and/or Direct Price in its reimbursement methodology for Providers and for which the State seeks damages relating to Defendants' conduct.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is overbroad and asks for information about "any State medical assistance program."  Plaintiff responds only on behalf of DHCS and

48

HHSA.  Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the terms

"any program within."  Subject to and without waiving its specific and general objections and its

objections to Defendants' definitions and instructions, Plaintiff responds:

As articulated in the Objections in the preface of these Responses, the Plaintiff in this

action is specifically limited to DHCS and HHSA and does not purport to represent any other

state agency, board or any other type of program.  As such, Plaintiff is not in the position to

identify any and all reimbursement methods that may or may not be used by other unrelated

agencies and that information is equally available to Defendant through the subpoena process.

Notwithstanding this, in response to Interrogatory No. 20, the Plaintiff in this action is seeking

only those damages attributable to DHCS and not for any other state agency or program. Plaintiff

is not seeking any damages relating to Defendant's conduct other than those sustained by the

California Medical Assistance Program.

INTERROGATORY NO. 21

Identify any State medical assistance program, other than Medi-Cal, including but not

limited to any program within the California Department of Health Services, the California

Department of Public Health, the California Department of Social Services, the California

Department of Mental Health, the University of California, and the California Department of

Corrections and Rehabilitation, that uses a reimbursement methodology other than AWP and/or

Direct Price.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is overbroad, asking for information about

"any State medical assistance program."  Plaintiff responds only on behalf of DHCS and HHSA.

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the terms "any

program within."  Subject to and without waiving its specific and general objections and its

objections to Defendants' definitions and instructions, Plaintiff responds:

As articulated in the Objections in the preface of these Responses, the Plaintiff in this

action is specifically limited to the DHCS and HHSA and does not purport to represent any other

state agency, board or any other type of program.  As such, Plaintiff is not in the position to

identify any and all reimbursement methods that may or may not be used by other unrelated

agencies and that information is equally available to Defendant through the subpoena process.

INTERROGATORY NO. 22

Identify the date on which California began seeking rebates for physician administered

drugs administered under the medical assistance programs.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous and lacks

specificity as to the term "rebates."  Subject to and without waiving its specific and general

objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

DHCS first sent out invoices for HCPCS rebates on February 4, 1998 for calendar

quarters of utilization 4Q1996 through 3Q1997.

INTERROGATORY NO. 23

Identify all departments, state agencies, Federal Agencies, boards, commissions,

organizations, consultants, accountants, task forces, or any other entity, including the members

of such entities, that have reviewed or analyzed, at any time, Your reimbursement of or

expenditures for pharmaceutical products or dispensing fees, including but not limited to any

State "medical care advisory committee" (42 C.F.R. § 431.12(b)).

RESPONSE:

Plaintiff objects to the extent the Interrogatory is overbroad and without reasonable

limitation in scope.  Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to

the terms "departments," "state agencies," "boards," "commissions," "organizations,"

"consultants," "accountants," "tasks forces," "any other entity."  Plaintiff responds only on

behalf of DHCS and HHSA, and objects to the extent this Interrogatory calls for information not

in the possession or control of DHCS and HHSA. Subject to and without waiving its specific and

general objections and its objections to Defendants' definitions and instructions, Plaintiff

responds:

**March 2002 Drug Task Force Members**

Timothy E. Albertson MD, PhD
Chief, Division of Pulmonary and Critical Care Medicine
University of California, Davis
Primary Care Center, Room 3107
4301 X Street, Professional Bldg., Room 2120
Sacramento, CA 95817

Clifford Allenby, Director
California Department of Developmental Services
1600 9th Street, Room 240
Sacramento, CA 95814

Michael Ashcraft, Consultant
Office of Senator Jackie Speier
State Capitol, Room 2032
Sacramento, CA 95814

ElaineBatchlor, MD
California HealthCare Foundation
476 Ninth Street
Oakland, CA 94607

Sharon Bishop, Chief Consultant
Republican Fiscal Committee
State Capitol, Room 6027
Sacramento, CA 95814

Diana Bonta', R.N, Dr.P.H.
Director
California Department of Health Services
714 P Street, Room 1250
Sacramento, CA 95814

Teri Boughton, Chief Consultant
California Legislature, Assembly Committee on Health
State Capitol, Room 6005
Sacramento, CA 94249-0001

Cynthia Bryant
Health Consultant
Senate Republican Caucus
1020 N. Street, Room 234
Sacramento, CA 95814

Tim Burtholtz
Health Access Foundation
942 Market Street, Suite 402
San Francisco, CA 94102

Paul Carlton
Deputy Director
California Department of Developmental Services
1600 9th Street, Room 240
Sacramento, CA 95814

Kathleen Connell
State Controller
State Controller Office
300 Capitol Mall, Suite 1850
Sacramento, CA 95814

Gail Derschewitz
Director, Management Information and Evaluation
Department of Public Social Services, Los Angeles County
3220 Rosemead Blvd., Suite 106
El Monte, CA 91731

Deborah Durham-Walker
Department of Public Social Services
Los Angeles County
12860 Crossroads Parkway South
City of Industry, CA 91746-3411

Don Enderton
Principal Program Budget Analyst
California Department of Finance
915 L Street, Ninth Floor
Sacramento, CA 95814

Richard Figueroa
Deputy Legislative Secretary
Office of Governor Davis
State Capitol
Sacramento, CA 95814

Jennifer Fitzgerald
Health Consultant
Republican Caucus
1020 N. Street #400
Sacramento, CA 95814

Chris Flammer
Senator Richard Polanco's Office
State Capitol, Room 313
Sacramento, CA 95814

Shirley Ann Floyd
Blue Cross of California
131 Chester Avenue, Suite A
Bakersfield, CA 93301

Robert Freeman
Executive Director
Santa Barbara Regional Health Authority
110 Castillian Drive
Goleta, CA 93117-3028

Tim Gage
Director
California Department of Finance
State Capitol, Room 1145
Sacramento, CA 95814

John Gallapa
American Association of Retired Persons
980 9th Street, Suite 700
Sacramento, CA 95814

Mike Genest
Staff Director, Senate Republican Fiscal Committee
Senate Budget & Review Committee, Subcommittee #3, Health & Human Services
1020 N. Street, Room 234
Sacramento, CA 95814

Patricia Harris
Executive Officer
California State Board of Pharmacy
400 R Street, Suite 4070
Sacramento, CA 95814

Michael B. Huff, MD
314 West Fourth Street
Oxnard, CA 93030

Betsy Imholtz
Director
Consumers Union
1535 Mission Street
San Francisco, CA 94103

Merrill J. Jacobs
Director, Western Regional Office
Pharmaceutical Research & Manufacturers of America
980 9th Street, Suite 2200
Sacramento, CA 95814

Greg Jolivette
Budget Consultant
Assembly Budget Committee
State Capitol, Room 6026
Sacramento, CA 95814

Peter Kellison
Legislative Affairs
California Pharmacists Association
1112 I Street, Suite 300
Sacramento, CA 95814

Richard Kravitz, MD, MSPH
Director, Center for Health Services Research and Primary Care
University of California
Center  for Health Services
4150 V Street, Ste. 2500
Sacramento, CA 95817

Gary Kuwarabara
California Department of Aging
1600 K. Street, 4th Floor
Sacramento, CA 95814

Sheila Lawler
Director, State Program Contracts; Regulatory Services
Kaiser Foundation Health Plan, Inc.
1800 Harrison St., 9th Floor
Oakland, CA 94612-2998

Joan Lee
Gray Panthers
P.O. Box 19438
Sacramento, CA 95819

Robert J. Matutat, PharmD
Clinical Specialist for International Drug DataBases
First DataBank
1425 S. Main
Walnut Creek, CA 94596

Stephen W. Mayberg, PhD
Director
California Department of Mental Health
1600 9th Street, Room 151
Sacramento, CA 95814

Grace McAndrews
Executive Director
California Alliance for the Mentally Ill
111 Howe Ave
Sacramento, CA 95825

Janeen McBride, RPh
National Sales Manager
Rx America
1500 South Anaheim Blvd.
Anaheim, CA 92815-0017

Gary M. McCart, PharmD
Division of Clinical Pharmacy
University of California School of Pharmacy
A-123m Box 0622
San Francisco, CA 94143-0622

Gerald A. McIntyre
Directing Attorney
National Senior Citizens Law Center
2639 S. La Cienega Blvd.
Los Angeles, CA 90034

Carlo Michelotti, RPh, MPH (retired)
Chief Executive Officer
California Pharmacists Association
1112 I Street, Suite 300
Sacramento, CA 95814

John Miller
Staff Director
Senate Health and Human Services
State Capitol, Room 2191
Sacramento, CA 95814

Linda Minamoto
Associate Regional Administrator
Division of Medicaid
Health Care Financing Administration
75 Hawthorne Street, 5th Floor
San Francisco
CA94105-3901

Anoush Miridjanian
Staff Internist
Southern California Permanente Medical Group
Assistant Clinical Professor, University of California-San Diego School of Medicine
4647 Zion Ave.
San Diego CA92120

Holly Mitchell
Legislative Advocate
Western Center on Law and Poverty
1225 8th Street, #415
Sacramento CA 95814

John Monahan
General Manager
Blue Cross of California
5151A Camino Ruiz
Camarillo CA 93012

Robert Mowers
Pharmacy Services
University of California, Davis
2221 Stockton Blvd
Sacramento CA 95817

William B.Ness MD
65 North 14th Street
San Jose CA  95112-6264

Michael Nichol PhD
Chair, Department of Pharmaceutical Economics and Policy
University of Southern California
School of Pharmacy
1540 East Alcazar Street, CHP 140
Los Angeles CA 90033

Melinda Paras
Executive Director
Health Access Foundation
942 Market Street, Suite 402
San Francisco CA 94102

Betty Perry
Public Policy Director
Older Women's League of California
926 J Street, #1117
Sacramento CA 95814

J.C. Pickett MD
President
California Medical Association
P.O. Box 7690
San Francisco
CA  94120-7690

Bill Powers
Legislative Director
Congress of California Seniors
1228 N Street, #29
Sacramento CA 95814

Dan Rabovsky
Principal Fiscal and Policy Analyst
Legislative Analyst Office
925 L. Street, Suite 1000
Sacramento CA 95814

Judith Reigel
Executive Officer
County Health Executives Association of California
1100 K Street, Suite 101
Sacramento CA 95814

James "Jamie" C. Robinson PhD
Professor of Health Economics
School of Public Health
University of California
Berkeley CA 94720-7360

Anthony D. Rodgers
Chief Executive Officer
L.A. Care Health Plan
3530 Wilshire Blvd., 9th Floor
Los Angeles CA 90010

Dan Savage
Chief of Staff
Assembly Budget Committee, Health & Human Services, Subcommittee #1
State Capitol, Room 5016
Sacramento CA 95814

Stuart Schweitzer PhD
Professor, School of Public Health
University of California-Los Angeles
235 Denslow Avenue
Los Angeles CA 90049

Rusty Selix
Executive Director
Mental Health Association of California
1127 11th Street, Suite 830
Sacramento CA 95814

Mark D. Smith MD
President and Chief Executive Officer
California HealthCare Foundation
476 Ninth Street
Oakland CA 94607

Stephen M. Stahl MD, PhD
Director, Clinical Neuroscience Research Center and Adjunct Professor, Department of
Psychiatry
University of California, San Diego School of Medicine
8899 University Center Lane, Suite 130
San Diego California  92122

DianeVan Maren
Principal Consultant
Senate Budget & Fiscal Review Committee, Subcommittee #3, Health & Human
Services
State Capitol, Room 5013
Sacramento CA 95814

Michael Wilkes MD
Dept. of Medicine-Div. of Gen'l Internal Medicine
University of California, Los Angeles
10833 Le Conte Ave. B-976 Factor Bldg.
Los Angeles CA 90095-1736

Adrian M.Wong PharmD
17 Warren Drive
San Francisco CA 94131

Patricia Yeager
Executive Director
California Foundation for Independent Living Centers
660 J Street, Suite 270
Sacramento CA 95814-2413

**Other Entities**

California Legislature and their staff

California Department of General Services

California State Controller's Office

Centers for Medicaid and Medicare Services

Office of the Inspector General

California Bureau of State Audits

California Association for Health Services at Home

California Pharmacists Association

California Retailers Association

California Attorney General's Office

The Coalition for Community Pharmacy Action

PhRMA

David Topp

California State Department of Finance

Myers and Stauffer LC, Certified Public Accountants

INTERROGATORY NO. 24

If reimbursement, or a proposal for reimbursement, for any Subject Drug was ever based on a percentage adjustment from a benchmark, including but not limited to AWP or Direct Price, explain the policy or other reasons for the percentage adjustment, and any Findings regarding the impact of any such adjustments on Medicaid Beneficiaries, including but not limited to, any internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on Your behalf (whether or not performed at Your direction) regarding the possible effect various reimbursement amounts or methodologies could potentially have, or were having, on beneficiary access to medicine or medical treatment, and all Persons who were involved in such internal or external assessments, studies, analyses, reviews, plans, reports, or audits conducted by You or on behalf of You (whether or not performed at Your direction).

RESPONSE:

Plaintiff objects to the extent the Interrogatory is argumentative as to the term "benchmark." Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "possible effect." Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney work-product and attorney-client privileges, and the deliberative process privilege. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Any and all non-privileged documents responsive to this Interrogatory will be produced pursuant to Defendant's Request for Production of Documents served on Plaintiff on or about October 4, 2007. Additionally, Defendants are referred to Plaintiff's Response to Interrogatory No. 14.

INTERROGATORY NO. 25

Identify each Third Party Administrator, fiscal agent, Benefits Consultant, other consultant, or PBM contacted, considered, retained, or hired by You to perform any services for You concerning pharmaceutical product prices, costs, reimbursement, utilization, or benefits, and describe the activity that Person performed or was considered for, and the period of time during which that Person was contracted, considered, retained, or hired by You.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney work-product and attorney-client privileges, and the deliberative process privilege. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds: The Third Party Administrator is EDS, 5400 Legacy Drive, Plano, Texas 75024. Since 1988, California has contracted EDS, a national data processing company to process claims. Prior to 1988, the Third Party Administrator was Computer Systems Corporation. Most Medi-Cal prescription drug claims are processed electronically. A pharmacy which has filled a prescription and dispensed a drug to a person with Medi-Cal benefits will then electronically submit its claim for reimbursement. This electronic claim goes directly to EDS which then compares the amount billed by the provider with the 'allowed amount' in the EDS database and the lower amount is selected as the reimbursement amount. This 'allowed amount' is based on drug prices provided by the pharmaceutical companies and published by First DataBank and entered into the EDS database. Once a week, EDS reports this data to DHCS and the State of California then issues and mails a check to the provider. Additionally, Myers and Stauffer LC, Certified Public Accountants were engaged to conduct a survey which ultimately resulted in a report in June 2002 entitled "A Survey of

Acquisition Costs of Pharmaceuticals In The State of California." Myers and Stauffer LC is currently engaged in a study of pharmacy acquisition cost and dispensing cost. That report has not yet been completed.

INTERROGATORY NO. 26

Identify all Pricing Compendia used by the [sic] You to calculate reimbursement rates for prescription drugs, specifying the time-frame during which each was used.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "You," as it relates to the conduct of an entire state agency. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Since 1988, and for the time frame relevant to this litigation, DHCS utilized the "Blue Book" published by First DataBank to calculate reimbursement rates for prescription drugs.

INTERROGATORY NO. 27

Identify all communications between You and any other state or the U.S. Government, including but not limited to Federal Agencies, CMS, NAMFCU, the Department of Health & Human Services, OIG, DOJ, the GAO, Congress, its officials, agents employees, commissions, boards, divisions, departments agencies, instrumentalities, administrators, and other Persons or entities acting on their behalf, concerning usual and customary charges, AWP, WAC, Direct Price, AMP, MAC, MAIC, EAC, FAC, FUL, Best Price, CDP, or other prices, costs, reimbursement rates, or other benchmarks.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is argumentative as to the term "benchmarks." Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "communications." To the extent the Interrogatory seeks information about communications with "other Persons or entities acting on their behalf," Plaintiff objects on the grounds that it is overly broad, unduly burdensome, and seeks information not relevant to any

claim or defense and not reasonably calculated to lead to the discovery of admissible evidence.
Plaintiff objects to the extent the Interrogatory seeks information and documents subject to the
work product doctrine, the attorney-client privilege, common interest privilege, consulting expert
privilege, law enforcement investigative privilege, and the deliberative process privilege.
Subject to and without waiving its specific and general objections and its objections to
Defendants' definitions and instructions, Plaintiff responds:

Any and all non-privileged communications responsive to this Interrogatory will be
produced pursuant to Defendant's Request for Production of Documents served on Plaintiff on or
about October 4, 2007.

INTERROGATORY NO. 28

Identify all communications between You and any person, organization, institution, or
association, including pharmacy and pharmacist associations and the National Association of
Chain Drug Stores, concerning usual and customary charges, AWP, WAC, Direct Price, AMP,
MAC, MAIC, EAC, FAC, FUL, Best Price, CDP, or other prices, costs, reimbursement, or other
benchmarks.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is argumentative as to the term
"benchmarks." Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the
term "communications."  To the extent the Interrogatory seeks information about
communications with "other Persons or entities acting on their behalf," Plaintiff objects on the
grounds that it is overly broad, unduly burdensome, and seeks information not relevant to any
claim or defense and not reasonably calculated to lead to the discovery of admissible evidence.
Plaintiff objects to the extent the Interrogatory seeks information and documents subject to the
work product doctrine, the attorney-client privilege, common interest privilege, consulting expert
privilege, law enforcement investigative privilege, and the deliberative process privilege.
Subject to and without waiving its specific and general objections and its objections to
Defendants' definitions and instructions, Plaintiff responds: Any and all non-privileged

communications responsive to this Interrogatory will be produced pursuant to Defendant's

Request for Production of Documents served on Plaintiff on or about October 4, 2007.

<u>INTERROGATORY NO. 29</u>

Identify all periodicals, listservs, publications, associations, or other media or group to

which You subscribe or belong and that publish or distribute information concerning health care

benefits, prices, costs, and reimbursement or state or federal health care benefit programs.

<u>RESPONSE</u>:

Plaintiff objects to the extent the Interrogatory is overbroad, unduly burdensome, and

seeks information not relevant to any claim or defense and not reasonably calculated to lead to

the discovery of admissible evidence.  Plaintiff objects to the extent the Interrogatory is vague,

ambiguous as to the phrase "to which You subscribe," as it relates to conduct of an entire state

agency.  Subject to and without waiving its specific and general objections and its objections to

Defendants' definitions and instructions, Plaintiff responds:

The list of all periodicals, listservs, publications, associations, or other media or group to

which the DHCS Medi-Cal Pharmacy Benefits Division subscribes or belongs and that publishes

or distributes information concerning health care benefits, prices, costs, and reimbursement or

state or federal health care benefit programs is as follows:

ADURS Listserv

Agency for Healthcare Research and Quality (AHRQ) Electronic Newsletter
American Hospital Formulary Service
AIDSmeds.com News
Alchemist Newsletter from ChemWeb.com
Alerts@ModernHealthcare.com
AMCP Learning Center e-newsletter
AMCP Weekly News
Am J Health Syst Pharm Table of Contents for 1 October 2007; Vol. 64, No. 19
American Pharmacists Association
ASHP's Government Affairs Division
BioMed Central
Biotechnology Healthcare
California Health Advocates
California Healthcare Foundation

- CHCF  Mailing List
- California Healthline
- iHealthbeat

California Pharmacists Association newsletters
California Pharmacists Association CEO Weekly message
The Center for Medicare Advocacy
Clinical Pharmacology Online
Clinical Psychiatry
Clinisphere (Facts and Comparisons)
CMS Medicare Provider Feedback Group
Doctors Guide to the Internet
Drug Benefit Trends
DRUGDEX
Drug Patent Watch (Drug Patent Bulletin)
Drug Store News
Drug Store News Events
Drug Topics
e-Clips@hcbs.org
Emerging Infectious Diseases (NIH)
EPI-X Today
Epocrates
Epocrates Clinical Updates
Facts and Comparisons Drug News Monthly
Families for Early Autism Treatment (FEAT) Newsletter
FDA Center for Devices and Radiological Health (CDRH)
FDC Reports

- Drug Approvals Monthly
- Pink Sheet

Formulary Journal
The Formulary Monograph Service
Global health Reports Weekly Update
healthaction@familiesusa.org
Healthcare Update News Service
HIV ForeSite
Hospital Pharmacy
ICE Broadcast
iHealthBeat
IHI (Institute of Healthcare Improvement)
JAMA archives
Jobson CME
Journal of Managed Care Pharmacy
Kaiser Family Foundation newsletters

- Kaiser Weekly Update
- Kaiser Family Foundation Daily Update
- StateHealthFacts
- kaiserEDU.org

- KaiserNetwork First Edition
- Kaisernetwork Daily Health Policy Update
- Kaiser Monthly Health Policy Picks

Lumetra Monthly Quality Insights
Medical Letter weekly with annual and online
Medical Letter Treatment Guidelines
Medicare Drug Focus
Medicare/Medicaid Update News Service
Medigap Regulation and Enforcement Activities
Medscape
Medscape Pharmacist CE
Modern Healthcare
Morbidity and Mortality Weekly Report (MMWR)
NACDS Monthly e-practice memo
NACDS SmartBrief
NAS DME Updates [dme@noridian.com]
NCPDP News
NCSLnet
New England Journal of Medicine
New from The National Academies Press
NIH Listserv

- ALLODF-L (All Open Door Forums)
- BENEOMBUDODF-L (Beneficiary Ombudsman Open Door Forum)
- CDERNEW (CDER Daily Update)
- CDERWEEK (New postings to the CDER site – weekly)
- CMS-COVERAGE (Updates to CMS Coverage Pages)
- CMS-MA-L (Medicare Advantage Health Plans )
- CMS_RESEARCH (The CMS Research Information List)
- CMS_REGIONIX_STAKEHOLDERS (All CMS stakeholders in Region IX)
- FDA-HIV-AIDS (FDA HIV/AIDS listserv)
- FDA-NEWSDIGEST-L (Current FDA news and activities)
- FDA-ONCOLOGY (Updates about the FDA Oncology site)
- HHS CMS PRESS (CMS Press Release and Fact Sheets)
- HHSPRESS (US Dept of HHS: Press Releases, Other Info)
- HIPAA-REGS (Notification of Regulation Publication)
- HIPAA-OUTREACH-L (HHS HIPAA Administrative Simplification Info)
- HOMEHEALTH_HOSPICE_DMEODF-L
- HOSPITALS-ACUTE-L (Medicare Acute Care provider information)
- MEDWATCH (The FDA Safety Information and Adverse Event Reporting Program)
- MLNMATTERS-L (Articles posted to Medicare Learning Network)
- MMA_STATES (CMS MMA_States)
- NIH-ODS-L (News from NIH Office of Dietary Supplements)

- NIHPRESS (NIH news releases and news items)
- OCR-PRIVACY-LIST (OCR HIPAA Privacy Rule information distribution)
- PHARMACYODF-L (pharmacy Open Door Forum)

Ostomy Wound Management
Patient Safety & Quality Healthcare e-Newsletter
Pharmacist e-Link
Pharmacist's Letter
Pharmacy Board
PharmacyOneSource.com News Team
Physician's First Watch
PRIME Inc. (continuing education)
Princeton CME
Psychiatric Times weekly
P&T Journal
Public Library of Science
Scientific American Medicine
USP-DI
Vector One: National (VONA) (previously called Verispan or Scott Levin Source Prescription Audit

INTERROGATORY NO. 30

Identify all federal or state assessments, studies, analyses, reviews, or audits conducted regarding the reimbursement of prescription drugs by the Medi-Cal program, which the State was aware of prior to filing its Original Complaint and, for each such assessment, study, analysis, review or audit, Identify its date and title; its authors; the employees or agents of the State who received or obtained it; the employees or agents of the State who are most knowledgeable about any such assessment, study, analysis, review, or audit; the results, conclusions, or findings of any such assessment, study, analysis, review, or audit; and any action taken by the State in response to any such assessment, study, analysis, review, or audit, including but not limited to any change in the reimbursement methodology or amount used by the State for reimbursing the prescription drugs under the Medi-Cal program.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information from documents in the possession, custody or control of other state agencies or the federal government, and which are not in the possession, custody or control of DHCS and/or HHSA.  Plaintiff objects to the extent

this Interrogatory seeks information from documents in the possession, custody or control of Defendants or is publicly available and thus equally accessible to both parties.  Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "aware," in reference to a state agency.  To the extent the Interrogatory seeks the identity of all state employees or agents who received any of the studies, the Interrogatory is unduly burdensome and seeks information not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent the Interrogatory seeks information and documents protected by the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Any and all non-privileged documents responsive to this Interrogatory will be produced pursuant to Defendant's Request for Production of Documents served on Plaintiff on or about October 4, 2007.

INTERROGATORY NO. 31

Identify any non-privileged communications with individuals in which You discussed issues surrounding the filing of this lawsuit, including but not limited to the date(s) of such communication; the context of the communication; the general subject matter of the communication; and all documents relating to such communications.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the phrase "in which You discussed," as it relates to conduct of an entire state agency. Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the phrase "issues surrounding the filing of this lawsuit."  Plaintiff objects to the extent the Interrogatory is unduly burdensome, seeking the identity of anyone who may have discussed a lawsuit that was publicized in the media and seeking information not relevant to any claim or defense and not reasonably

calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Any and all non-privileged documents responsive to this Interrogatory will be produced pursuant to Defendant's Request for Production of Documents served on Plaintiff on or about October 4, 2007.

INTERROGATORY NO. 32

Identify all current and former employees or agents that have testified, provided statements to, or been interviewed by agencies of other states; CMS; NAMFCU; HHS; OIG; DOJ; the GAO; Congress; or any other federal or state institution, agency, department, or office regarding AWP, Direct Price, the pricing of prescription drugs, the methodologies for reimbursing prescription drugs since the inception of each Medical Assistance Program, or the establishment of EAC, including but not limited to the date(s) of the testimony, statement, or interview; the context of the testimony, statement, or interview (i.e., deposition, affidavit, and other responsive information.); the general subject matter of the testimony, statement, or interview; and all documents relating to such testimony.

RESPONSE:

Plaintiff objects to the extent the Interrogatory seeks information or documents protected by the attorney-client privilege, the work product doctrine, the common interest privilege, the consulting expert privilege, the law enforcement investigative files privilege, and the deliberative process privilege.  To the extent the Interrogatory seeks information "since the inception of each Medical Assistance Program," the Interrogatory is overbroad, unduly burdensome, and goes beyond the time period covered in the Complaint, seeking information not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

The list of all current and former employees or agents that have testified, provided statements to, or been interviewed by agencies of other states; CMS; NAMFCU; HHS; OIG; DOJ; the GAO; Congress; or any other federal or state institution, agency, department, or office regarding AWP, Direct Price, the pricing of prescription drugs, the methodologies for reimbursing prescription drugs since the inception of each Medical Assistance Program, or the establishment of EAC, including but not limited to the date(s) of the testimony, statement, or interview; the context of the testimony, statement, or interview (i.e., deposition, affidavit, and other responsive information.); the general subject matter of the testimony, statement, or interview; and all documents relating to such testimony is as follows:

Individuals currently employed by the DHCS:

> James Kevin Gorospe, Pharm D
> Pharmaceutical Program Consultant
> Chief, Pharmacy Policy Branch
> Medi-Cal Pharmacy Benefits Division
>
> Pilar Williams
> Chief, Medi-Cal Pharmacy Benefits Division
> Former Chief, Medi-Cal Contracting Section, DHS
>
> Stan Rosenstein
> Chief Deputy Director of Health Care Programs
> Former Deputy Director, Medical Care Services, DHS
>
> Toby Douglas
> Deputy Director, Health Care Policy
> Assistant Deputy Director, Medical Care Services, DHS

Individuals formerly employed by the DHCS:

> Tom Ahrens, Pharm. D.
> Former Pharmaceutical Consultant II (specialist)
> Medi-Cal Contracting Section
> Medi-Cal Policy Division

Leonard Terra, RPh
Former Pharmaceutical Program Consultant
Chief, Pharmacy Unit
Medi-Cal Pharmacy Benefits Division
Medi-Cal Policy Division

Bud Lee
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Doug Hillblom, Pharm. D.
Former Pharmaceutical Program Consultant
Chief, Contracting Unit A
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Mike Neff
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Jan Howard
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Marianne Lewis
Former Branch Chief, Medi-Cal Benefits Branch
Former Section Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Roberto Martinez
Former Chief, Medi-Cal Policy Division

Doug Porter
Former Chief Deputy Director, Medical Care Services

Gail Margolis, Esq.
Former Deputy Director, Medical Care Services

Kimberly Belshé
Former Director, Medical Care Services

Contractor:
George Pennebaker, Pharm D
EDS Pharmacist Consultant
EDS – Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

<u>INTERROGATORY NO. 33</u>

Identify the fact and expert witnesses that You intend to call at trial and the area(s) of their testimony.

<u>RESPONSE</u>:

Plaintiff objects to the extent this Interrogatory is a premature request for information that may be contained in Plaintiff's subsequent disclosure and testifying experts' reports that will be disclosed in accordance with Fed. R. Civ. P. 26 and any applicable scheduling orders.  Plaintiff objects to the extent this Interrogatory is premature and unreasonable at this early stage of discovery, before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken and before third-party discovery has commenced. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Plaintiff will identify such witnesses in accordance with the dates and deadlines as established by the Case Management Order entered in this case.

<u>INTERROGATORY NO. 34</u>

Describe whether and how You used the Average Sales Price information or any other pricing letters that You received from certain pharmaceutical manufacturers and whether and how You use AMPs provided to you from defendants or from other sources, such as the federal government.

<u>RESPONSE</u>:

Plaintiff objects to the extent the Interrogatory seeks information or documents protected by the deliberative process privilege. Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "received from certain pharmaceutical manufacturers." To the extent

the Interrogatory seeks information regarding the pricing of drugs for non-defendant manufacturers, it is overly broad, goes beyond the scope of the Complaint, and seeks information not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

ASP is used for the purpose of calculating reimbursement for blood products. Manufacturers of blood products submit the quarterly ASPs to DHCS. Certain manufacturers, pursuant to a Corporate Integrity Agreement between the manufacturer and the Office of Inspector General, send the DHCS the ASP for certain drugs on a quarterly basis.  DHCS does not use ( nor does it have statutory provisions for the use of)  these ASPs in the Medi-Cal program.

Quarterly AMPs sent to DHCS by certain manufacturers are used for the purpose of calculating and invoicing State Supplemental rebates. Only manufacturers with active AMP-based State Supplemental Rebate Agreements in place submit the quarterly AMP to DHCS only for those drugs for which there is a contract.  Other pricing letters from individual manufacturers sent to DHCS are used for the purpose of negotiating State Supplemental Rebate Agreements and only for those drugs for which drug contract negotiations are underway.

The monthly AMP file sent to DHCS is used as a secondary source of AMP information when AMP is not otherwise available during drug contract negotiations and drug therapeutic category reviews to analyze the fiscal impact of adding to, not adding to, or deleting drugs from the Medi-Cal List of Contract Drugs.

INTERROGATORY NO. 35

For each Subject Drug, Identify why the reported AWP and WAC was were [sic] false, how the AWP and WAC should have been calculated, and what You contend the AWP and WAC should have been throughout the period for which You seek damages.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is a premature request for information that may be contained in Plaintiff's subsequent disclosure and testifying experts' reports that will be disclosed in accordance with Federal Rule of Civil Procedure 26 and any applicable scheduling orders.  Plaintiff objects to the extent this Interrogatory is premature and unreasonable at this early stage of discovery before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken and before third-party discovery has commenced.  Subject to and without waiving its specific and general objections to and its objections to Defendants' definitions and instructions, Plaintiff responds:

Plaintiff will respond to this specific Interrogatory once the necessary discovery is completed.

INTERROGATORY NO. 36

For each generic Subject Drug, identify the period(s) of time during which Your reimbursement of that drug was based on the reported AWP or Direct Price and not a MAC, MAIC, FAC or FUL.

RESPONSE:

To the extent the Interrogatory requires Plaintiff to create a summary, it is unduly burdensome.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

The information requested in this Interrogatory is contained in the formulary, which was provided with Plaintiff's Initial Disclosures under Federal Rule of Civil Procedure 26.

INTERROGATORY NO. 37

Except for communication by counsel in connection with this lawsuit, identify each

conversation, correspondence or other communication between You and any Defendant concerning drug pricing by date, subject matter and persons involved, and identify any documents reflecting or concerning such communications.

RESPONSE:

To the extent the Interrogatory does not specify a time period and is not limited to Defendants' drugs, it is overbroad and burdensome. Further, Plaintiff objects to the extent the Interrogatory seeks information equally available to Defendants. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Any and all non-privileged documents responsive to this Interrogatory will be produced pursuant to Defendant's Request for Production of Documents served on Plaintiff on or about October 4, 2007.

INTERROGATORY NO. 38

Identify by author, recipient, date, form and content, each representation made by Defendants that You claim to be false, and for each such representation, describe with particularity how You relied upon it.

RESPONSE:

To the extent this action involves millions of false claims, the Interrogatory, as phrased, is unduly burdensome.  Further, Plaintiff has already produced to Defendants all claims and utilization data for each of the Defendant's subject drugs.  Plaintiff objects to the extent the Interrogatory is a premature request for information that may be contained in Plaintiff's testifying experts' reports that will be disclosed in accordance with Federal Rule of Civil Procedure 26 and any applicable scheduling orders. Plaintiff objects to the extent the

Interrogatory purports to require Plaintiff to draw pure conclusions of law.  Plaintiff also objects

to the extent this Interrogatory is premature and unreasonable at this early stage of discovery,

before Defendants have responded to all of Plaintiff's discovery requests, before all depositions

have been taken and before third-party discovery has commenced.  Subject to and without

waiving its specific and general objections and its objections to Defendants' definitions and

instructions, Plaintiff responds:

Plaintiff will respond to this specific Interrogatory once the necessary discovery is

completed.

INTERROGATORY NO. 39

Identify all persons with personal knowledge of any decision to rely or not to rely

upon WAC, AWP, FAC, FUL, MAIC, MAC, Direct Price, Best Price, AMP or Acquisition Cost

in determining Medicaid-related reimbursements for Defendants' Subject Drugs.

RESPONSE:

Plaintiff objects to the extent this Interrogatory is unduly burdensome given the number

of current and former employees at DHCS.  Plaintiff objects to the extent the term "all persons

with personal knowledge" is vague and ambiguous.  To the extent the Interrogatory seeks

information from persons not in the employ of DHCS and refers to "Medicaid-related

reimbursements" not related to Medi-Cal, the Interrogatory is overbroad and seeks information

not relevant to any claim or defense and not reasonably calculated to lead to the discovery of

admissible evidence.  Further, the Interrogatory is overbroad to the extent it seeks current contact

information (including residence) for former or current employees of Plaintiff who should be

contacted through counsel for Plaintiff.   Disclosure of personal information, including home

addresses, of any current or former government employee is prohibited under federal and state

privacy laws.  Plaintiff objects to the extent this Interrogatory requests information under seal

pursuant to Section 12652 of the California Government Code.  Plaintiff objects to the extent the

Interrogatory seeks information subject to the deliberative process privilege.  The process of

developing policies, regulations and rules regarding reimbursement of drug purchases is an

inherently pre-decisional and policy based process that includes requests for legal advice.

Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney-client,

attorney work product and the law enforcement investigative privilege.  Subject to and without

waiving its specific and general objections and its objections to Defendants' definitions and

instructions, Plaintiff responds:

All persons with personal knowledge of any decision to rely or not to rely upon WAC,

AWP, FAC, FUL, MAIC, MAC, Direct Price, Best Price, AMP or Acquisition Cost in

determining Medicaid-related reimbursements for Defendants' Subject Drugs are as follows:

1.      California State Legislature and legislative staff involved in proposing and/or

enacting statute directing Medi-Cal drug reimbursement rates.

2.      Defendants' employees involved in the negotiation and implementation of signed

state supplemental rebate agreements whereby the amount of the state supplemental

rebate paid is based on the net cost of the drug to the Medi-Cal program.

3.      <u>Individuals currently employed by the DHCS</u>:

James Kevin Gorospe, Pharm D
Chief, Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Vic Walker, RPh
Pharmaceutical Consultant II (supervisor)
Pharmacy Policy Branch
Data Analysis Unit
Medi-Cal Pharmacy Benefits Division

Katherine Ahrens, Pharm D (aka Katherine Cabacungan)
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Marco Gonzales, Pharm D
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division
Former Pharmacist Consultant (contract pharmacist)
EDS – Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

Pauline Chan, RPh, MBA
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Teresa Miller, Pharm D
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Lori Bradley, RPh
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Sarah Umeda, Pharm D
Pharmaceutical Consultant II (specialist)
Pharmacy Policy Branch
Medi-Cal Pharmacy Benefits Division

Mike Wofford, Pharm D
Chief, Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division

Pansy Watson, RPh
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division

Marilyn Hirning, Pharm D
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division

Paul Pontrelli, Pharm D
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division

Vickie Fu, Pharm D
Pharmaceutical Consultant II (specialist)
Medical Supply/Enteral Supply Benefit Branch
Medi-Cal Pharmacy Benefits Division

Diane Furukawa, Pharm D
Pharmaceutical Program Consultant
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division

Sam Hodges, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division

Christopher Amaral, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division

Rodney Yamamura, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division

Jeffrey Smith, Pharm D
Pharmaceutical Consultant II (specialist)
Drug Contracting Branch
Medi-Cal Pharmacy Benefits Division

Roy Takeuchi, Pharm D
Pharmaceutical Consultant II (supervisor)
Northern Drug Unit
Medi-Cal Operations Division
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section

Elisa Ashton, Pharm D
Pharmaceutical Consultant II (specialist)
Medi-Cal Managed Care Division
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
Former Pharmacist Consultant (contract pharmacist)
EDS – Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

Pilar Williams
Chief, Medi-Cal Pharmacy Benefits Division
Former Chief, Medi-Cal Contracting Section, DHS

Stan Rosenstein
Chief Deputy Director of Health Care Programs
Former Deputy Director, Medical Care Services, DHS

Loretta Wallis
Chief
Fiscal Forecasting and Data Management Branch
Department of Health Care Services

Karen Fairgrieves
SSM I Specialist
Fiscal Analysis and Estimates Section
Fiscal Forecasting and Data Management Branch
Department of Health Care Services

4.      Individuals formerly employed by the DHCS, formerly known as the DHS:

Maura Donovan (retired)
Former Chief
Fiscal Forecasting and Data Management Branch
Department of Health Care Services

Toby Douglas
Deputy Director, Health Care Policy
Former Assistant Deputy Director, Medical Care Services, DHS

Jan Howard
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Marianne Lewis
Former Branch Chief, Medi-Cal Benefits Branch
Former Section Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Cassie McCreary, Pharm D
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division

Greg Doe, Pharm D
Former Pharmaceutical Consultant II (Specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division

Tom Ahrens, Pharm. D.
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
Medi-Cal Policy Division

Patrick Robinson, RPh, MBA
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
Former Pharmacist Consultant (contractor)
EDS – Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

Doug Hillblom, Pharm D
Former Chief, Medi-Contracting Section
Former Pharmaceutical Program Consultant
Chief, Contracting Unit A
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Policy Division

Mike Namba, Pharm D, MS
Former Pharmaceutical Program Consultant
Chief, Contracting Unit B
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Policy Division

Steve Pondel, Pharm D
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
Medi-Cal Policy Division

Laurie Squartsoff, RPh
Former Pharmaceutical Program Consultant
Chief, Contracting Unit B
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Policy Division

Richard Morita, Pharm D
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
Medi-Cal Policy Division

Mike Neff
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Bud Lee
Former Chief, Medi-Cal Contracting Section
Medi-Cal Policy Division

Leonard Terra, RPh
Former Pharmaceutical Program Consultant
Chief, Pharmacy Unit
Medi-Cal Policy Division

Allen Fung, Pharm D
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
Medi-Cal Policy Division

Eddie Kanenaga, RPh (retired)
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
Medi-Cal Policy Division

Milton Kuschnereit, RPh
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section
Medi-Cal Policy Division

INTERROGATORY NO. 40

Identify all employees and agents of the State who have had access to the Unit Rebate

Amounts for Defendants' drugs.

<u>RESPONSE</u>:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous as to the term "Unit Rebate Amounts."  Plaintiff objects to the extent the Interrogatory seeks information subject to the attorney-client, attorney work product and the law enforcement investigative privilege.  Plaintiff objects to the extent this Interrogatory is unduly burdensome given the number of current and former employees at DHCS.  Moreover, to the extent the Interrogatory seeks the identity of employees who "have had access," the Interrogatory is overbroad and unduly burdensome.  Plaintiff also objects to the extent the Interrogatory seeks current contact information (including residence) for former or current employees of Plaintiff who should be contacted through counsel for Plaintiff.  Plaintiff objects to the extent disclosure of personal information, including home addresses, of any current or former government employee is prohibited under federal and state privacy laws.  Plaintiff objects to the extent the Interrogatory is overbroad and burdensome, seeking information not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

**<u>Individuals currently employed by the DHCS:</u>**

Drug Rebate Branch

Medi-Cal Pharmacy Benefits Division

      Craig Miller, Chief, Drug Rebate Branch

      Maribel Garbanzos, Office Technician

      Martha Perez, Chief, Drug Rebate Unit A

      Phoc Chi, Analyst, Drug Rebate Unit A

      William Garrity, Analyst, Drug Rebate Unit A

      Lorreen Malone, Research Analyst I, Drug Rebate Unit A

Karen Villacres, Research Analyst I, Drug Rebate Unit A

William Yee, Research Analyst I, Drug Rebate Unit A

Janelle Hiam, Chief, Drug Rebate Unit B

Mary Franco, Analyst, Drug Rebate Unit B

Erh-Hsin Ling, Research Analyst II, Drug Rebate Unit B

Angelina Pamplona, Analyst, Drug Rebate Unit B

Greg Savage, Analyst, Drug Rebate Unit B

Mark Taylor, Analyst, Drug Rebate Unit B

Jeff Freer, Analyst, Drug Rebate Unit C

Kaihleen Grogan, Research Analyst II, Drug Rebate Unit C

Eric Hauptman, Analyst, Drug Rebate Unit C

Erin LaPerle, Analyst, Drug Rebate Unit C

Alan Eng, Former Staff Services Manager I

Bill Henry, Former Staff Services Manager I

Ana Jaime, Former Rebate Analyst

Brian Nanoo, Former Rebate Analyst

Cecilia Wolff, Former Rebate Analyst

Denise Stanton, Former Rebate Analyst

Floydena (Dena) Agnew, Former Rebate Analyst

Isabel Hernandez, Former Rebate Analyst

Kelli Flores, Former Rebate Analyst

Mark Harlan, Former Rebate Analyst

Peggy Tseng, Former Rebate Analyst

Sue Bottini, Former Rebate Analyst

William Vien, Former Rebate Analyst

Medi-Cal Pharmacy Benefits Division

Adriana Gutierrez, Office Technician

Medi-Cal Pharmacy Benefits Division

Pharmacy Policy Branch

James Kevin Gorospe, Pharm. D
Chief, Pharmacy Policy Branch


Katherine Ahrens, Pharm D (fka Katherine Cabacungan)
Pharmaceutical Consultant II (specialist)

Marco Gonzales, Pharm D
Pharmaceutical Consultant II (specialist)
Former Pharmacist Consultant (contract pharmacist)
EDS – Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

Pauline Chan, RPh, MBA
Pharmaceutical Consultant II (specialist)

Teresa Miller, Pharm D
Pharmaceutical Consultant II (specialist)

Lori Bradley, RPh
Pharmaceutical Consultant II (specialist)

Sarah Umeda, Pharm D
Pharmaceutical Consultant II (specialist)

Medi-Cal Pharmacy Benefits Division

Medical Supply/Enteral Supply Benefit Branch

Mike Wofford, Pharm D
Chief, Medical Supply/Enteral Supply Benefit Branch

Pansy Watson, RPh
Pharmaceutical Consultant II (specialist)

Marilyn Hirning, Pharm D
Pharmaceutical Consultant II (specialist)

Paul Pontrelli, Pharm D
Pharmaceutical Consultant II (specialist)

Vickie Fu, Pharm D
Pharmaceutical Consultant II (specialist)

Ed Boes, RN
Nurse Consultant III

Robin Schmidt, RN
Nurse Consultant III

Jean Treaster, RN
Nurse Consultant III

Beth Ladd, MPH, RD
Public Health Nutritional Consultant III

Kathleen Henry, Analyst

Rhonda Kitchen, Analyst

Rose Green-Rishell, Analyst

Medi-Cal Pharmacy Benefits Division
Drug Contracting Branch

Diane Furukawa, Pharm D
Chief, Drug Contracting Branch

Sam Hodges, Pharm D
Pharmaceutical Consultant II (specialist)

Christopher Amaral, Pharm D
Pharmaceutical Consultant II (specialist)

Rodney Yamamura, Pharm D
Pharmaceutical Consultant II (specialist)

Jeffrey Smith, Pharm D
Pharmaceutical Consultant II (specialist)

Kirk Rodgers, Analyst

Medi-Cal Pharmacy Benefits Division

Pharmacy Policy Branch

Data Analysis Unit

Vic Walker, RPh
Pharmaceutical Consultant II (supervisor)
Chief, Data Analysis Unit

Olsen, Linda, Research Analyst II

Vince Richardson, Research Program Specialist I

Roy Takeuchi, Pharm D
Pharmaceutical Consultant II (supervisor)
Northern Drug Unit
Medi-Cal Operations Division
Former Pharmaceutical Consultant II (specialist)
Medi-Cal Contracting Section

Elisa Ashton, Pharm D
Pharmaceutical Consultant II (specialist)
Medi-Cal Managed Care Division
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Medi-Cal Policy Division
Former Pharmacist Consultant (contract pharmacist)
EDS – Medi-Cal
3215 Prospect Park Drive Rancho Cordova, CA 95670

Janice (Hall) Spitzer
Former Associate Government Program Analyst
Pharmacy Policy Unit
Medi-Cal Policy Division

DHCS/FI-COD/FI-ITMB (fka PSD)

Pharmacy & Medical Supply Unit

>Maureen Tooker, Chief, Pharmacy & Medical Supply Unit

>Cathy Corgiat, Staff Information Systems Analyst

>Patty Nichol, Staff Information Systems Analyst

>PhyllisBurns, Staff Information Systems Analyst

>Kelly Robbins, Associate Information Systems Analyst

>Paula Barnes, Associate Information Systems Analyst

>Kathy Fundus, Former Associate Information Systems Analyst

>Vincent Green, Former Associate Information Systems Analyst

>Kathy Sable, Former Staff Information Systems Analyst

DHCS/ITSD

>Kelly Klemins, Staff Program Analyst Specialist

>Chander Arora, Staff Program Analyst Specialist

**Current staff through contract**

EDS – Medi-Cal
3215 Prospect Park Drive
Cordova, CA 95670

>Bradley Scott

>Christiane Savegh Rogers

>Dave Ahnell

>David Chang

>Doan Pham

>Donna Henderson

>Emily Torres

Hugh Del Villa

Janetlynn Vazquez-Reed

Joel Ahnell

John Padyala

Kishore Kambhampati

LaTanya Norse

Mahesh Selvaraj

Martin Ferrier

Mike Luk

Pete Witcka

Ping Pan

Ralph Rogers

Ralph Silva

Rick McKinney

Romila Singh

Sandy Ripperger

Shantharam (Sean) Karanam

Sharon Gary

UNISYS, EDS Onsite:

Brent Grote

Chris Greene

Hong Nguyen

Linda de Jong

Scott Sterling

**Individuals formerly employed by the DHCS:**

Pharmacy Analysis Group

Medi-Cal Pharmacy Benefits Division

Jim Klein, Former Research Program Specialist II

Nancy Paulus, Former Research Program Specialist I

Brason Lee, Former Research Analyst II

Drug Rebate Branch

Medi-Cal Pharmacy Benefits Division

Claudia Desmangles, Former Staff Services Manager I

Gene Morrow, Former Staff Services Manager I

Betty Castle, Former Rebate Analyst

Brenda Gaffney, Former Rebate Analyst

Brett Jackson, Former Rebate Analyst

Carlene Hess, Former Rebate Analyst

Cathy Greenhouse, Former Rebate Analyst

Dalayna Crawford, Former Rebate Analyst

Gloria Marie, Former Rebate Analyst

Greg Santa Ana, Former Rebate Analyst

Janice Taylor, Former Rebate Analyst

Judith Dolman-Anable, Former Rebate Analyst

Julie In, Former Rebate Analyst

Kanika Randall, Former Rebate Analyst

Laura Franco, Former Rebate Analyst

Laurie Stanton, Former Rebate Analyst

Lilia Lewis-Coleman, Former Rebate Analyst

Michele Grant, Former Rebate Analyst

Sue Miller, Former Rebate Analyst

Susan Parsons, Former Rebate Analyst

Terry Jansen, Former Rebate Analyst

Tina Pierini, Former Rebate Analyst

Ugo Nnaji, Former Rebate Analyst

Yolanda Aguila, Former Rebate Analyst

Hillary Parker, Former Office Technician

Medi-Cal Policy Division:

Patrick Robinson, RPh, MBA
Former Pharmaceutical Consultant II (specialist)
Pharmacy Policy Unit
Former Pharmacist Consultant (contractor)
EDS – Medi-Cal
3215 Prospect Park Drive
Rancho Cordova, CA 95670

Doug Hillblom, Pharm D
Former Chief, Medi-Contracting Section
Former Pharmaceutical Program Consultant
Chief, Contracting Unit A
Former Pharmaceutical Consultant II (specialist)

Mike Namba, Pharm D, MS
Former Pharmaceutical Program Consultant
Chief, Contracting Unit B
Former Pharmaceutical Consultant II (specialist)

Laurie Squartsoff, RPh
Former Pharmaceutical Program Consultant
Chief, Contracting Unit B

Former Pharmaceutical Consultant II (specialist)

Yvette J. Crockell, MHA, R.Ph, Former Pharmaceutical Consultant II (specialist)

Cassie McCrary, Pharm D, Former Pharmaceutical Consultant II (specialist)

Greg Doe, Pharm D, Former Pharmaceutical Consultant II (Specialist)

Cheryl Martinson, RPh, Former Pharmaceutical Consultant II (Specialist)

Nancy Morita, Pharm D, Former Pharmaceutical Consultant II (Specialist)

Stephen Berk, Pharm D, Former Pharmaceutical Consultant II (Specialist)
Ellis Ellis, Pharm.D, Former Pharmaceutical Consultant II (Specialist)

Cheryl Machado, Former Office Technician

DHCS, Accounting

Mike Wilken, Accounting Section Manager

Terry Lee

**Former staff through contract**

EDS – Medi-Cal
3215 Prospect Park Drive
Cordova, CA 95670

Amra Ajanovic

Andy Stone

Annie Arent

Andrew Osika

Bee-Kheng Chua

Cathy Ly

Cindy Lewis

Connie Tropple

Curt Bany

Deviyani Master

Edwin Narayan

Gloria Taczka

Greg Greenfield

Hemang Timbadia

Hugh Hackie

Joe Huang

Joel SanChez

Karen Sutterfield

Keith Stock

Linda Wolfe

Marites Balanza

Mike Sturdevant

Nalini Sridharan

Nancy Padrick

Nazmin Ali

Robert McAfee

Roopa Vashi

Rose Hamilton

Ruby Dougherty

Samone Loria

Stephen Kung

Steve Dane

Steve Fugate

Tess Balanza

Tim Charmin

Toby Jecks-Wright

UNISYS, EDS Onsite:

Carol Sweet

Chris Paige

Venkat Indukuri

Lian Song

Trinity Technology Group Incorporated

Al Thurlow

Independent Validation & Verification Consultant

Trinity Technology Group Incorporated

4120 Douglas Blvd #306-386

Granite Bay, CA 95746

INTERROGATORY NO. 41

Of all persons identified in response to these Interrogatories, name those who are or have

been a physician, a pharmacist or otherwise licensed to prescribe or dispense prescription drugs.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is overbroad and burdensome, seeking

information not relevant to any claim or defense and not reasonably calculated to lead to the

discovery of admissible evidence.  Subject to and without waiving its specific and general

objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

For all the names identified in these Responses, if an individual is either a pharmacist or physician, that designation will be included with the name and will be self-evident.

INTERROGATORY NO. 42

Describe in detail each category of damages for which You seek recovery from Defendants in this action, including the amount of damages; the methodology used in calculating or deriving that amount; and the facts or documents upon which You rely to support Your claims as to the nature and extent of each category of damages.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is vague and ambiguous with respect to the term "in detail."  Plaintiff objects to the extent this Interrogatory is a premature request for information that may be contained in Plaintiff's subsequent disclosure and testifying experts' reports that will be disclosed in accordance with Federal Rule of Civil Procedure 26 and any applicable scheduling orders.  Plaintiff objects to the extent the Interrogatory is premature and unreasonable at this early stage of discovery, before Defendants have responded to all of Plaintiff's discovery requests, before all depositions have been taken and before third-party discovery has commenced.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Plaintiff has already provided substantial materials, which are responsive to this Interrogatory as part of its Initial Disclosures served pursuant to Rule 26 of the Federal Rules of Civil Procedure.

INTERROGATORY NO. 43

Identify any law or regulation that prohibited You from setting prescription drug reimbursement equal to a Provider's Actual Acquisition Cost.

RESPONSE:

Plaintiff objects to the extent the Interrogatory purports to require Plaintiff to draw pure conclusions of law.  Plaintiff further objects to the extent this Interrogatory is argumentative. Plaintiff objects to the extent the Interrogatory seeks information subject to the deliberative process privilege.  The process of developing policies, regulations and rules regarding reimbursement of drug purchases is an inherently pre-decisional and policy-based process that includes requests for legal advice.  Plaintiff objects to the extent the Interrogatory requires Plaintiff to perform legal research on behalf of Defendants.  Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

Any law or regulation that prohibited DHCS from setting prescription drug reimbursement equal to a Provider's Actual Acquisition Cost is identified in response to Interrogatory Number 14.

INTERROGATORY NO. 44

Identify all steps taken by You to comply with the "equal access" provision found in 42 U.S.C. § 1396a(a)(30).

RESPONSE:

To the extent the Interrogatory seeks information regarding "all steps taken [by DHCS] to comply with the 'equal access' provision found in 42 U.S.C. § 1396a(a)(30)," the Interrogatory is overbroad and seeks information not relevant to any claim or defense and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent the Interrogatory seeks information subject to the deliberative process privilege.  The process of developing policies, regulations and rules regarding reimbursement of drug purchases is an inherently pre-decisional and policy based process that includes requests for legal advice. Subject to and without waiving its specific and general objections and its objections to Defendants' definitions and instructions, Plaintiff responds:

DHCS safeguards against unnecessary utilization of prescribed drug services through the

use of various utilization control mechanisms including a prior authorization program that is in

compliance with the requirements found in 42 U.S.C. § 1396r-8(d)(5).

The payment for prescribed drugs under the Medi-Cal program comply with 42 U.S.C. §

1396a (a) (30) as they are set pursuant to Legislative action.  In doing so, the rate of payment is

discussed in a public forum and voted on by representatives from the entire State of California.

Additionally, the rate of reimbursement is detailed in Supplement 2 to Attachment 4.19-B

"PAYMENT METHODOLOGY FOR PRESCRIPTION DRUGS" of Medi-Cal's State Plan.

The State Plan is reviewed for compliance with federal laws (including compliance with the

provisions of 42 U.S.C. § 1396a (a) (30)) by the Centers for Medicare and Medicaid Services.

INTERROGATORY NO. 45

If You contend that any Federal Upper Limit for a Subject Drug was inflated, separately

for each such FUL, state the basis for such claims, Identify the persons with knowledge of the

basis of Your contention and Identify what the Federal Upper Limit should have been.

RESPONSE:

Plaintiff objects to the extent the Interrogatory is a premature request for information that

may be contained in Plaintiff's subsequent disclosure and testifying experts' reports that will be

disclosed in accordance with Federal Rule of Civil Procedure 26 and any applicable scheduling

orders.  Plaintiff objects to the extent this Interrogatory is premature and unreasonable at this

early stage of discovery, before Defendants have responded to all of Plaintiff's discovery

requests, before all depositions have been taken and before third-party discovery has

commenced.  Plaintiff also objects to the extent the Interrogatory seeks information subject to the

deliberative process privilege.  Subject to and without waiving its specific and general objections

and its objections to Defendants' definitions and instructions, Plaintiff responds:

 Without the benefit of discovery, Plaintiff is unable to respond to this Interrogatory.

Specifically, this Interrogatory requires Plaintiff to quantify how much the "spread" was on the

drugs for which a Federal Upper Limit (FUL) was attached and to identify what the 'correct'

FUL should have been in these cases.  Without the data and information of what each of those

specific drug's actual selling prices were to the retail market which will be gathered during the current discovery process, Plaintiff does not possess all of the necessary components in which to calculate what the "correct" FUL should have been or what the specific percentage of the spread between any inflated FUL and what the FUL actually should have been based on accurate price reporting.

<div style="margin-left: 40%;">

Respectfully submitted,
EDMUND G. BROWN JR.
Attorney General for the State of California

</div>

Dated:  December 21, 2007          By:   _/s/ Nicholas N. Paul_
                                   NICHOLAS N. PAUL
                                   CA State Bar No:  190605
                                   Supervising Deputy Attorney General
                                   Bureau of Medi-Cal Fraud and Elder Abuse
                                   Office of the Attorney General
                                   1455 Frazee Road, Suite 315
                                   San Diego, California  92108
                                   Tel:  (619) 688-6099
                                   Fax:  (619) 688-4200

                                   **Attorneys for Plaintiff,**
                                   **STATE OF CALIFORNIA**

## CERTIFICATE OF SERVICE

I, Nicholas N. Paul, hereby certify that on December 21, 2007, I caused a true and correct copy of the foregoing to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

<div align="center">

_/s/ Nicholas N. Paul_
NICHOLAS N. PAUL
Supervising Deputy Attorney General

</div>

## VERIFICATION

I declare under penalty of perjury that the facts provided in the answers of the California Department of Health Care Services Care [DHCS] in the foregoing responses to Interrogatory numbers 25 and 26 from Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Signed by: _____

Dated: *12-19-07*

Name: Phil Hinton

Title: Chief, Fiscal Intermediary Information Technology Management Branch in the Fiscal Intermediary Contract Oversight Division

VERIFICATION

I declare under penalty of perjury that the facts provided in the answers of the California Department of Health Care Services Care [DHCS] in the foregoing responses to Interrogatory numbers [1-24 and 27-45] from Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

Signed by: _____

Dated: 12 / 21 / 07

Name: J. Kevin Gorsope, Pharm.D

Title: Chief, Pharmacy Policy Branch