# Exhibit 24

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben
in Support of Defendants' Joint Motion for Partial Summary Judgment**

ISSUE:

Restructuring of drug ingredient cost reimbursement.

DESCRIPTION:

Medi-Cal currently reimburses pharmacy providers for ingredient costs, and provides a professional fee for filling the prescription. The current formula for calculating ingredient cost is the lowest of: (1) Average Wholesale Price (AWP) less 5 percent; (2) Direct Price for a selected list of manufacturers; (3) the State Maximum Allowable Ingredient Cost (MAIC); or (4) the Federal Upper Limit (FUL).

PROPOSAL:

*insert C*

This proposal would replace Average Wholesale Price (AWP) less 5% and the Direct Price reimbursement elements in the formula for calculating Medi-Cal's estimate of pharmacy drug acquisition costs with AWP less 10% or Wholesale Acquisition Cost (WAC) plus 7%, whichever is lower, on a drug-by-drug basis. This would more closely approximate actual acquisition costs of drugs by pharmacies.

Most Medicaid states use the AWP less X% method exclusively; most of these states reimburse at AWP less 10%. Five states use the WAC plus X% method exclusively, with an average of WAC plus 9.2%. Three states use a combination of AWP less X% or WAC plus X%, whichever is less.

Implementation date:   November 1, 1997

ACTION REQUIRED:

Requires change to, or override of, 22 CCR 51513, which specifies the ingredient cost reimbursement formula.

PROS:

- Reduces drug expenditures by reducing ingredient cost reimbursement to make it more consistent with the actual acquisition cost of drugs, and other third party payers.

- Would result in General Fund savings.

CONS:

- Will be opposed by pharmacy providers just as they opposed a previous legislative proposal on this issue.

- Will undermine working relationship between the Department of Health Services and the California Pharmacists Association (CPhA) in efforts to develop a regulatory solution that reduces ingredient costs while recognizing other inequities in the reimbursement policies.

- Some pharmacy providers will stop providing services to Medi-Cal beneficiaries because of the reduced payment.

| FISCAL IMPACT: | TOTAL FUNDS | GENERAL FUND |
|---|---|---|
| FY 97/98 | $19.3 million | $ 9.65 million |



EXHIBIT 007
WIT: Hillbkm
DATE: 9-23-08
CAROL NYGARD DROBNY

CAAG/DHS0078869

BUDGET CHANGE PROPOSAL
Detail of Proposed Changes
FY 1997-98

Restructuring of Drug Ingredient Cost Reimbursement

A. Nature of Request:

A Budget Change Proposal has been submitted for the Local Assistance item that would replace Average Wholesale Price (AWP) less 5 percent and the Direct Price reimbursement elements in the formula for calculating Medi-Cal's estimate of pharmacy drug acquisition costs with AWP less 10 percent or Wholesale Acquisition Cost (WAC) plus 7 percent, whichever is lower, on a drug-by-drug basis for drugs dispensed in the Medi-Cal fee-for-service outpatient drug program. This Local Assistance BCP projects General Fund savings of $9.7 million. A permanent half-time Pharmaceutical Consultant II position is requested to perform ongoing program monitoring upon implementation of this proposal to change drug ingredient cost reimbursement to pharmacies. This new position is necessary to provide DHS with the minimum level of program oversight related to the appropriate level of drug ingredient cost reimbursement and how it correlates to possible changes in pharmacy provider participation, beneficiary access to outpatient drugs and pharmacies' actual drug acquisition costs. Priority for this proposal is high due to DHS's commitment to increase awareness of internal controls and strengthen monitoring of the Medi-Cal drug program as outlined in the DHS Strategic Plan. The activities related to this position will be integrated into current Medi-Cal Benefits Branch, Pharmaceutical Unit staffing.

B. Background/History:

As cited in Title 22, California Code of Regulations, Section 51513, the formula for calculating ingredient cost for pharmacy dispensed drugs in the Medi-Cal outpatient fee-for-service program is the lowest of: (1) Average Wholesale Price (AWP) less 5 percent; (2) Direct Price for a selected list of manufacturers; (3) the State Maximum Allowable Ingredient Cost (MAIC); or (4) the Federal Upper Limit (FUL). DHS proposes to replace AWP less 5 percent and the Direct Price reimbursement elements in the formula for calculating Medi-Cal's estimate of pharmacy drug acquisition costs with AWP less 10 percent or Wholesale Acquisition Cost (WAC) plus 7 percent, which ever is lower, on a drug by drug basis. This would more closely approximate actual acquisition costs of drugs by pharmacies. Most Medicaid states use the AWP less X percent method exclusively; most of these reimburse at AWP less 10 percent. Five states use the WAC plus X percent method exclusively, with an average of WAC plus 9 percent. Three states use a combination of AWP less X percent or WAC plus X percent, whichever is less. Variations exists between state Medicaid reimbursement methodologies and actual pharmacy acquisition drug costs. DHS does not have an ongoing program which monitors the most

1

appropriate formula for reimbursing pharmacy providers for their actual acquisition drug costs. DHS is unaware of any such activity in other state Medicaid programs.

**C. State Level Considerations:**

This proposal is consistent with the Governor's policy regarding the initiation of a comprehensive assessment of the programs and activities of state government for opportunities to improve efficiency and effectiveness so that state government operates as a competitive enterprise; as such, the proposal represents a "California Competes" activity. The proposal also is consistent with DHS' Strategic Plan Goals and Objectives; particularly the following goals:

Goal #1: Demonstrate leadership in the reform of health care.
Goal #9: Reform DHS administration and program management, into a rational, business-like, and outcome-oriented approach.

There is no impact of this proposal on other State departments.

**D. Justification:**

Two specific objectives, as outlined in the DHS Strategic Plan, are associated with this proposal.

- Increase awareness of internal controls and strengthen monitoring and accountability of all DHS programs. This will be accomplished by creating an ongoing audit strategy that will ensure that drug ingredient cost reimbursement methodologies most accurately reflect actual pharmacy drug ingredient acquisition costs.

- Explore alternative reimbursement payment methodologies for fee-for-service Medi-Cal. This will be accomplished through the audit strategy noted above and the monitoring of the impact on beneficiary access and provider participation to determine appropriateness of the methodology implemented.

The proposal to change the pharmacy dispensed drug reimbursement methodology from the currently employed AWP less 5 percent or direct price (for specified manufacturers only), and replace it with the methodology of AWP less 10 percent or WAC plus 7 percent, whichever is less, reflects DHS' estimate as to actual pharmacy drug ingredient acquisition costs. However, this may not be entirely accurate as this methodology was established without validating actual acquisition costs of drugs within each of the wide variety of pharmacy provider types (i.e., chain drug stores, independent pharmacies, home-care and IV infusion pharmacies, hospital outpatient departments, HMO's and mail order pharmacies). Historically, Medi-Cal drug ingredient cost reimbursement rates have been based on a combination of estimating actual drug ingredient acquisition costs versus what most other third party payers offer in terms of drug ingredient cost

2

reimbursement. This was appropriate ten or even five years ago, but is no longer a valid approach due to increased competition in the provider marketplace. Much of this change in marketplace pressure is due to managed care programs, both public and private.

In recent years, continuous changes in the marketplace have resulted in a myriad of prescription drug buying schemes (e.g., various deals made through wholesale vendors, direct purchases from manufacturers, special deals made based on projected sales, prices based on volume purchases, prompt payment discounts, cooperative buying groups, etc.). This has made it very difficult to determine, on average, what drug ingredient acquisition costs are for pharmacy providers in Medi-Cal. Other third party payers face the same dilemma with respect to serving their patient populations. This has resulted in a variety of ingredient cost reimbursement methodologies used by third party insurance payers for outpatient pharmacy dispensed drugs. Some of these ingredient cost reimbursement methodologies are based on contractual agreements between a closed group of pharmacies and the third party payor.

Medi-Cal does not contract with providers for pharmacy outpatient fee-for-services. This has been proposed in the recent past, but was abandoned due to intense opposition from individual pharmacies and professional pharmacy organizations, and because of DHS's concern over continued beneficiary assess to care in many rural locations within the state. DHS has never developed an ongoing investigative approach to the problem addressed in this proposal. Current level of staffing has not been sufficient to accomplish this level of program monitoring. This proposal intends to develop such a program. What is needed is an ongoing review process, utilizing audits, surveys, and drug acquisition studies of pharmacies in order to ensure adequate accountability of DHS expenditures. Specifically, this would be accomplished by: drug ingredient acquisition price audit determinations in the different pharmacy practice settings within California and elsewhere in the nation; surveys of Medi-Cal provider participation to ascertain any negative impact of lowering reimbursement for drug ingredient costs; and studies to determine if beneficiary access to pharmaceutical care has been compromised (including beneficiary satisfaction surveys). Results from these studies would be utilized in program policy development to ensure that adequate safeguards reside over DHS financial assets and that adequate patient care has not been compromised at the cost of less provider participation. Implementing this proposal would ultimately provide DHS with the necessary information to establish new (and possibly more realistic) drug ingredient cost reimbursement methodologies. Another outcome of this proposal would be the ability to compare Medi-Cal drug ingredient cost reimbursement methodology with that of other state Medicaid programs. While the pharmacy provider community is expected to be in intense opposition to any rate decrease such as this proposed methodology change, this opposition may be mitigated to a degree by DHS studying the outcome and the appropriateness of this proposal.

This proposal requests funding for the following position:

> One, half-time, permanent, Pharmaceutical Consultant II position in Medi-Cal Benefits Branch, and related benefits and operating expenses.

3

CAAG/DHS0078872

One computer at $4500.

### E. Analysis of All Feasible Alternatives:

1. Do nothing.

    Pro: No increase in state staff.

    Con: Without this proposal, DHS would not be able to invest the necessary time to begin and continue the effort to determine if this drug ingredient cost reimbursement change is the most cost effective and appropriate policy change.

2. Contract out this function to a private firm.

    Pro: Potentially acceptable, and no increase to state staff.

    Con: It would entail some DHS oversight in terms of contractor responsibilities which would consume more DHS management time to procure the contractor than the time needed to supervise the half-time position associated with this proposal.

3. Augment staffing by one half-time Pharmacy Consultant II

    Pro: It would be most cost effective and efficient to integrate this position into the existing pharmaceutical unit staffing.

    Con: Increase in state staff.

### F. Timetable:

July 1997: Legislation enacted, to change drug ingredient cost reimbursement.
July-Sept 1997: Recruit and hire staff.
October-December 1997: Train staff
January 1998: Implementation and ongoing monitoring

4

CAAG/DHS0078873

WORKLOAD STANDARDS
PHARMACEUTICAL CONSULTANT II
DRUG INGREDIENT COST REIMBURSEMENT--MONITORING

Annual
Hours

313   Ongoing surveys of pharmacy providers to determine actual drug ingredient acquisition costs.

120   Ongoing surveys and monitoring of provider participation, versus baseline levels, after initiation of drug ingredient cost reimbursement methodology changes.

120   Ongoing monitoring of beneficiary access and surveys of beneficiary satisfaction of drug access and availability, versus baseline levels, after initiation of drug ingredient cost reimbursement methodology changes.

120   Respond to correspondence from legislators, providers, beneficiaries and manufacturers regarding implementation of drug ingredient cost reimbursement methodology changes.

144   Ongoing review of drug ingredient cost reimbursement policies of other states.

72    Ongoing review of DHS' drug ingredient cost reimbursement policies/methodology, utilizing the data obtained from the various sources stated above, for possible modification.

---

889 hours

CAAG/DHS0078874