# Exhibit 29

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben**
**in Support of Defendants' Joint Motion for Partial Summary Judgment**

| BILL ANALYSIS | | | HEALTH AND HUMAN SERVICES AGENCY |
|---|---|---|---|
| Department: Health Services | AUTHOR: Corbett | | BILL NUMBER: AB 1915 |
| C...HSA DEPTS. cc'd: | SPONSOR: Office of the State Controller | | VERSION: Original |
| ASSIGNMENT: X P A OTHER | | | RELATED BILLS: AB 461 |
| SUBJECT: Medi-Cal Rate Reviews and Drug Ingredient Reimbursement | | | |

**SUMMARY:** AB 1915 mandates a biennial review of reimbursement rates for health care services by the Department which would become the basis for future reimbursement calculations. Additionally, requires for prescription drugs that the estimated acquisition cost shall be the direct price for those drugs as determined by CCR Sec. 51513.5, or, in all other cases, average wholesale price (AWP) minus 15 percent.

**POSITION AND SUPPORTING ARGUMENTS: OPPOSE.** The provision regarding mandatory biennial rate reviews commits the Department to an inflexible schedule that will be impossible to maintain without a significant increase in staff resources and ongoing expenditures. Additionally, as these rate reviews <u>shall</u> be used as a basis for establishing rates for the healthcare services, a failure to raise rates after a rate review would be sure to trigger lawsuits from the healthcare provider industry. The provision setting the AWP at minus 15 percent is in conflict with federal law governing the establishment of reimbursement rates for pharmacy providers, and may result in an inadequate network of Medi-Cal pharmacy providers, particularly in rural areas.

**SPECIFIC FINDINGS:**

__X__ Requires Regulatory Action

__X__ Requires Legislative Reports

____ Requires/Impacts Commissions, Boards, Etc.

__X__ Urgency Clause

The imposition of biennial reviews of reimbursement rates would require an unprecedented staff and support services augmentation. This new review staff would have to be separate from the staff that actually sets the rates in order to maintain the integrity of the review function. More importantly, because

| OTHER DEPARTMENTS (NOT CC'D ABOVE) THAT MAY BE AFFECTED | | ☐ GOVERNOR'S APPT. ☐ STATE MANDATE |
|---|---|---|
| DEPARTMENT POSITION<br>___ S   _X_ O<br>___ SA  ___ OUA<br>___ N   ___ NP<br>___ NA  ___ NAR<br>___ Defer to: | AGENCY POSITION<br>___ S   ___ O<br>___ SA  ___ OUA<br>___ N   ___ NP<br>___ NA  ___ NAR<br>___ Defer | GOVERNOR'S OFFICE USE<br>☐ Position Approved<br>☐ Position Disapproved<br>☐ Position Noted<br>By:             Date: |
| DEPARTMENT DIRECTOR       DATE | AGENCY SECRETARY       DATE | |

DEPOSITION EXHIBIT 14  11-06-08

EXHIBIT 6 WIT: Ravenstein DATE: 5-19-04 CAROL NYGARD DROBNY

every rate review would trigger either an increase in rates or a lawsuit over the failure to increase rates, the Department could be facing over $1 billion in rate increases for physician services alone. Additional rate increases for other healthcare services would surely follow, as future rate reviews are completed.

Reducing the Medi-Cal EAC for drugs with AWP minus 5 percent to AWP minus 15 percent would not be merited without first taking steps to determine an appropriate rate of reimbursement. Federal law requires that the state assure that "...payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers..." [Social Security Act Section 1902(a)(30)(A)] which can best be demonstrated through performance of a proper rate study.

If the proposed AWP minus 15 percent were to be implemented, together with the current direct price component, California would be last in drug ingredient cost pharmacy reimbursement when compared to other "AWP minus" states. At this point, Medi-Cal may suffer a serious patient access problem as providers disenroll from Medi-Cal rather than accept the reduced payment.

Although attempting to reduce manufacturer prices, this bill instead reduces pharmacy reimbursement prices.

Additionally, changes to the Medi-Cal Pharmacy Claims Processing system would be needed to implement this legislation, requiring approximately nine months to complete.

**LEGISLATIVE HISTORY:** This legislation is sponsored by the State Controllers Office in an attempt to reduce drug costs at the Manufacturer level. The author's staff has stated that they might be amending the bill to read AWP minus 10 percent, based on the drastic results that could come about from the AWP minus 15 percent implementation. A previous bill, AB 461(Hertzberg, 1999), had a requirement to annually review reimbursement in five comparable states and report the results annually to the legislature. This bill was vetoed by the Governor because of the administrative burden to meet the reporting deadlines; the Legislature is able to request this information at will, staff augmentation would be necessary to complete the additional workload and lawsuits would result if we failed to raise rates based on the annual rate reviews.

**FINDINGS/HISTORY OF OTHER STATES:** All other states of large population and the majority of all other states have higher Medicaid reimbursement rates for covered healthcare services than California. This is the result of a deliberate decision to implement a cost containment system for Medi-Cal expenditures, beginning in the 1980's.

**PROGRAM BACKGROUND:** Health care service rates are currently set by a number of different methodologies, including rate studies, depending on the type of program and/or service. Rate studies are not completed on a routine basis due to the labor-intensive needs of these studies. The Department sets rates for nine capitated programs with 69 providers, over 30 types of outpatient providers (including physicians, hospital outpatient departments, physical/occupational therapists, outpatient clinics, ambulance companies, clinical laboratories, and durable medical equipment dealers), 28 different peer groupings of Long Term Care facilities, and providers of dental services. Medi-Cal fee-for-service rates have been set intentionally low since the 1980's when a series of cost containment restrictions were codified into the CCR's. This bill would create an obligation to increase rates whenever a rate review concludes that current rates are low. Because of Medi-Cal's cost containment efforts over the last two decades we would be forced to raise rates or to defend our failure to do so, each time a rate review was completed.

The Medi-Cal fee-for-service program reimburses pharmacies for drugs. Reimbursement consists of a net professional dispensing fee of $3.80 plus the drug's ingredient cost, based on its Estimated Acquisition Cost (EAC). EAC is defined to be the direct price for drugs by eleven manufacturers that are sold direct to pharmacies and the Average Wholesale Price (AWP) minus 5 percent for all other manufacturers. Pharmacist lobbies have held that although Medi-Cal's formula for reimbursement of drug ingredient cost may seem high, it is actually not because of other requirements that are fiscally unfavorable for pharmacies, including the fact that Medi-Cal does not give monetary incentives for preferred drugs and that prior authorization must be requested for many drugs. In addition, Medi-Cal does not pay a patient management fee, and does not offer revenue sharing contracts with providers.

## FISCAL IMPACT (Dollars in Thousands):

|       | Current FY | Budget FY | Annual Ongoing |
|-------|------------|-----------|----------------|
| G.F.  | $0         | Indeterminate, but Significant | Indeterminate, but Significant |
| Other | $0         | Indeterminate, but Significant | Indeterminate, but Significant |
| Total | $0         | Indeterminate, but Significant | Indeterminate, but Significant |
| PY's  | N/A        | Unknown   | Unknown        |

An indeterminate but significant increase in Medi-Cal expenditures due to rate increases, possibly over $1 billion.

## PROS (Program/Fiscal):

- More timely data on which to base rate setting decisions.

- Prescription drug costs to the Medi-Cal program would be reduced.

## CONS (Program/Fiscal):

- Increased ongoing administrative costs due to the staff augmentation required to implement biennial rate studies.

- Lawsuits could result if we failed to raise rates based on completed reviews.

- Indeterminate, but significant increase in Medi-Cal expenditures when rates are increased as reviews are completed.

- Serious patient access problems due to provider disenrollment as the result of approximately 10 percent reduction in Medi-Cal reimbursement to pharmacy providers per prescription.

| BILL ANALYSIS | Page 4 | BILL NUMBER: AB 1915 |
|---|---|---|

**PROPONENTS:** California Office of State Controller

**OPPONENTS:** California Pharmacy provider organizations, client access rights organizations.

**DEPARTMENT CONTACT/TELEPHONE:** Larry Bernstein/(916) 657-0626

**LEGISLATIVE CONTACT/TELEPHONE:** Maureen Childs/ (916) 654-0584

Dept of Health Services
AB 1915, 2000

SECRETARY OF STATE, DEBRA BOWEN
The Original of This Document is in
CALIFORNIA STATE ARCHIVES
1020 "O" STREET
SACRAMENTO, CA 95814