# Exhibit 40

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben**
**in Support of Defendants' Joint Motion for Partial Summary Judgment**

M. JAMES LORENZ (CA Bar #038619)
LORENZ, ALHADEFF, CANNON & ROSE, LLP
550 West "C" Street, 19th Floor
San Diego, California  92101-3540
Telephone:      (619) 231-8700
Facsimile:      (619) 231-8323

ATLEE W. WAMPLER, III (FL Bar #311227)
JAMES J. BREEN (FL Bar #297178)
WAMPLER, BUCHANAN & BREEN, P.A.
900 Sun Trust Building
777 Brickell Avenue
Miami, Florida  33131
Telephone:      (305) 577-0044
Facsimile:      (305) 577-8545

Attorneys for the Plaintiffs,
THE STATE OF CALIFORNIA <u>Ex</u> <u>Rel</u>
The Qui Tam Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE CITY AND COUNTY OF SAN DIEGO

| | |
|---|---|
| THE STATE OF CALIFORNIA<br><br><u>ex rel.</u><br><br>    VEN-A-CARE OF THE<br>    FLORIDA KEYS, INC.<br>    a Florida Corporation,<br>    by and through its principal<br>    officers and directors,<br>    ZACHARY T. BENTLEY and<br>    T. MARK JONES,<br><br>                Plaintiff,<br>v.<br><br>██████████<br>██████████ | CIVIL ACTION NO.<br><br><u>FILED IN CAMERA AND UNDER<br>SEAL</u><br>COMPLAINT<br>For Money Damages and Civil<br>Penalties Under the California<br>False Claims Act, Cal. Gov. Code<br>§§12651(a) and 12652(c)(1), <u>et</u>. <u>seq</u>. |

CASE NO:_____



)
)
)
)
)
**DEY LABORATORIES;** )
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
_____ **Defendants.** _____ )

## COMPLAINT FOR MONEY DAMAGES AND
## CIVIL PENALTIES UNDER THE CALIFORNIA FALSE
## CLAIMS ACT CAL. GOV. CODE §§12651(a) AND 12652(c)(1), et. seq.

COMES NOW, the STATE OF CALIFORNIA ("GOVERNMENT" or "STATE"), by

and through and in their own persons VEN-A-CARE OF THE FLORIDA KEYS, INC., a

Florida corporation, by and through its principal officers and directors, ZACHARY T.

BENTLEY and T. MARK JONES ("VEN-A-CARE" or "VAC"), as the "Qui Tam Plaintiff"

CASE NO: _____

and by the undersigned attorneys on behalf of the STATE OF CALIFORNIA and on the

Qui Tam Plaintiff's own behalf and bring this action against ███████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████ DEY

LABORATORIES; ████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

(sometimes referred to collectively as, "DEFENDANT PHARMACEUTICAL

MANUFACTURERS"), for money damages and civil penalties arising out of the

DEFENDANT PHARMACEUTICAL MANUFACTURERS' violations of the California

False Claims Act, Cal. Gov. Code §§12651(a) and 12652(c)(1),  from on or before

January 1, 1988 to the present date.

CASE NO: _____

## SECTION NO. 1
## SUMMARY OF THE ACTION

1.      This is an action for damages, treble damages, civil penalties and costs

against the DEFENDANT PHARMACEUTICAL MANUFACTURERS arising from :

A.      the DEFENDANT PHARMACEUTICAL MANUFACTURERS

repeatedly and knowingly:   causing the making and using of grossly inflated, false price

and cost records and statements regarding certain pharmaceutical products specified

herein to get false claims paid or approved by the State of California Medicaid Program;

causing to be presented to an officer or employee of the State of California false claims

for payment or approval regarding certain pharmaceutical products specified herein,

and;

B.      the DEFENDANT PHARMACEUTICAL MANUFACTURERS

repeatedly and knowingly providing discounts, rebates, free pharmaceuticals, grants

and other forms of remuneration that were in most cases not reflected, reported or

disclosed on the invoices to their customers which caused:   the providers' true

purchase prices to be obfuscated: the State of California to approve and pay providers'

Medicaid claims in amounts that grossly exceeded the reasonable amounts permitted

by law;  the creation of excessive illegal profits for the providers;  and overutilization by

the providers of the pharmaceuticals of the DEFENDANT PHARMACEUTICAL

MANUFACTURERS.

CASE NO: _____

2.      The specified pharmaceuticals are ordinarily sold by the DEFENDANT PHARMACEUTICAL MANUFACTURERS directly or through wholesalers to physicians or outpatient clinics, such as oncology group physician practices, and to specialty infusion pharmacies, such as the Qui Tam Plaintiff, which then provide the drugs and biologicals and related supplies directly to the patient intravenously, by injection or inhalation.  These infusion, injectable and inhalation drugs and biologicals are primarily used to treat the most seriously ill patients who are afflicted with cancer, Acquired Immune Deficiency Syndrome ("AIDS"), severe infections, respiratory diseases and immune deficiency diseases.

3.      The false price and cost records and statements were knowingly made and used by the Defendants in a manner to cause the State of California Medicaid Program to rely upon them in paying claims for the pharmaceuticals specified herein sold by the DEFENDANT PHARMACEUTICAL MANUFACTURERS.  As a direct and proximate result of the use of the false price and cost records and statements and the use of the undisclosed discounts and other forms of illegal remuneration provided by the DEFENDANT PHARMACEUTICAL MANUFACTURERS, the State of California's Medicaid Program was caused to pay and approve claims for the pharmaceuticals specified herein of the DEFENDANT PHARMACEUTICAL MANUFACTURERS in amounts that grossly and materially exceeded the reasonable payment amount for such pharmaceuticals permitted by the applicable federal and state law.  The claims for payment in grossly excessive amounts were false claims because they were based on

5

CASE NO: _____

false and fraudulent price and cost records and statements made by the DEFENDANT

PHARMACEUTICAL MANUFACTURERS and because they were for amounts that

exceeded the reasonable amount permitted to be paid under applicable law.  The claims

were fraudulent claims because they were paid in such excessive amounts only

because of the falsely inflated price and cost records and statements knowingly made

and used by the DEFENDANT PHARMACEUTICAL MANUFACTURERS.  The

Defendants thus caused the presentation of false claims for payment and approval to

officers or employees of the State.  Additionally, the Defendants' false reports of price

and cost information constituted false statements and/or records that were made and

used for the purpose of getting false claims approved or paid by the State.

4.   ████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

CASE NO: _____

████████████████████████████████████████████

████████████████████████████████████████████

5.     █████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████

6.     By falsely representing their price and cost information, the DEFENDANT PHARMACEUTICAL MANUFACTURERS induced the State to pay exorbitant and unreasonable sums of money to the customers of the DEFENDANT PHARMACEUTICAL MANUFACTURERS to which they were not entitled and which induced them to utilize more of the specified drugs to obtain greater excessive profits.

7.     The DEFENDANT PHARMACEUTICAL MANUFACTURERS' customers participated in the false claims scheme by filing and/or presenting claims for the specified pharmaceuticals in grossly excessive amounts without disclosing that the amounts were excessive or the existence of deep discounts, rebates and other forms of financial remuneration paid directly or indirectly to induce the customers to utilize the DEFENDANT PHARMACEUTICAL MANUFACTURERS' specified pharmaceutical products.  Certain of the customers furthered the fraud scheme by using the exorbitant "reimbursement" amounts received in payment for claims presented to the State of

CASE NO:_____

California to fund additional illegal financial inducements paid to referring and/or prescribing physicians of the specified pharmaceuticals for California Medicaid beneficiaries.

8.    The DEFENDANT PHARMACEUTICAL MANUFACTURERS knew or should have known that their false representations of prices and costs would cause the State Medicaid program to pay grossly excessive and unreasonable amounts of money for claims for their pharmaceutical products and that said payments would, in significant part, be made by the State.  DEFENDANT PHARMACEUTICAL MANUFACTURERS have caused the State since on or before January 1, 1988 to date to sustain damages as a result of the false representations of prices and costs knowingly made by them. Accordingly, the State is entitled to recover treble damages, plus civil penalties and costs from the DEFENDANT PHARMACEUTICAL MANUFACTURERS in excess of ONE HUNDRED MILLION AND 00/100 DOLLARS ($100,000,000.00) pursuant to   Cal. Gov. Code §§12651(a)(1) and (2) and 12652(c)(1), et. seq.

**SECTION No. 2**

**THE PARTIES**

9.    The Plaintiff in this action is the State of California.  At all times material to this civil action, the California Department of Health and Human Services, the Department of Health Services and Medi-Cal were agencies and instrumentalities of the State and their activities, operations and contracts in administering the Medicaid program were paid from State's funds.  The State and its subcontractors performing on

8

CASE NO: _____

behalf of the State provided Medicaid benefits to qualified recipients which included

payment of claims for the pharmaceuticals specified herein manufactured by the

DEFENDANT PHARMACEUTICAL MANUFACTURERS and relied upon the false  price

and cost representations made by the DEFENDANT PHARMACEUTICAL

MANUFACTURERS in approving and paying claims.

10.     The Qui Tam Plaintiff, VEN-A-CARE, is a corporation organized under the

laws of the State of Florida, with its principal offices in Key West, Florida.  The Qui Tam

Plaintiff's principal officers and directors include Zachary T. Bentley and T. Mark Jones,

who are each citizens of the United States and reside in Key West, Florida.  The Qui

Tam Plaintiff is an infusion pharmacy and provides pharmaceuticals, such as the

intravenous, injectable or inhalation drugs and biologicals specified in this Complaint as

a Florida Medicaid provider and as a Medicare Part B supplier .  The Qui Tam Plaintiff

has direct and independent knowledge of the information and is the "original source" of

the information on which these allegations are based within the meaning of Cal. Gov.

Code §12652(d)(3)(A) and (B) .  The Qui Tam Plaintiff has standing to bring this action

pursuant to Cal. Gov. Code §12652(c)(1).  The information upon which these allegations

are based was voluntarily provided by the Qui Tam Plaintiff to the State and has been

frequently supplemented by the Qui Tam Plaintiff.  A portion of the original source

information provided by the Qui Tam Plaintiff consists of truthful price and cost

information for the specified pharmaceuticals which is available to the Qui Tam Plaintiff

as an industry insider,  albeit a very small one.  Ven-A-Care's cost information provided

CASE NO:_____

herein is, therefore, very conservative and the truthful cost and price information for the

specified pharmaceuticals to California Medicaid providers is equal to or less than that

alleged herein as the actual cost to Ven-A-Care because those California providers have

larger businesses than Ven-A-Care and can command greater volume purchasing

reduction in prices.

     11. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████

███████

     12. ██████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████

     13. ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

10

CASE NO:_____

14. ███████████████████████████

15. ████████████████████████

16. ████████████████████████

11

CASE NO:_____

17. █████████████████████████████████

████████████████████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████

18. █████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████████

████████████████████████████████████

█████

19. █████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████████████████

█████

CASE NO: _____

20.    The Defendant, DEY LABORATORIES ("DEY"), is a corporation organized under the laws of Delaware with its principal offices in Napa, California.  At all times material to this civil action, DEY has transacted business in the State of California by, including but not limited to, selling and distributing the specified pharmaceutical products to purchasers within the State of California including San Diego County.

21.  ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
██████████

22.  ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
█████████████████████████████████████████
██████████

23.  ████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████

CASE NO:_____

24.

25.

26.

14

CASE NO:_____

27. ██████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████

28. ███████████████████████████████

███████████████████████████

████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

██████████████████████████████████

█████████████████████████

29. █████████████████████████████

██████████████████████████████████

███████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████

30. ███████████████████████████████

██████████████████████████████████

██████████████████████████████████

15

CASE NO:_____

███████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████

31.   ██████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

████████████████████

32.   ████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████

33.   ██████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

███████████████████

CASE NO.: _____

34.     The Defendants specified in paragraphs 11 through 33 are sometimes referred to herein collectively as the "DEFENDANT PHARMACEUTICAL MANUFACTURERS".  Any and all acts alleged herein to have been committed by any or all of the DEFENDANT PHARMACEUTICAL MANUFACTURERS were committed by said Defendant's officers, directors, employees, or agents who at all times acted on behalf of their respective DEFENDANT DRUG MANUFACTURER.

### SECTION NO. 3

### JURISDICTION & VENUE

35.     Jurisdiction is founded upon the State of California False Claims Act, (the "Act") Cal. Gov. Code §§12651(a) and 12652(c)(1) et. seq.  The purpose of the Act is intended to deter persons from knowingly causing or assisting in causing State government to pay claims that are false and to provide remedies for civil penalties of up to $10,000.00 for each false claim plus three (3) times the amount of damages which the State sustains when money is obtained from State government by reason of a false claim, Cal. Gov. Code §§12651(a) and 12652(c)(1).

36.     The  Act reaches the type of false claims activity alleged herein in accordance with the express language of the Act as well as precedents arising from applications of the  substantially similar Federal False Claims Act .  Specifically, the United States Supreme Court's application of the Federal False Claims Act in United States v. Neifert-White Company, 390 U.S. 228; 88 S.Ct. 959 (1968) found:

17

CASE NO:_____

A.      ". . . the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." 88 S.Ct., at 961.

B.      The Act applies to the conduct of a Defendant manufacturer that supplies falsely inflated price information in support of a customer's claim.  88 S.Ct., at 960.

C.      The Act applies even where the price information supplied by the Defendant manufacturer is inflated by only approximately 25% over the truthful price. 88 S.Ct., at 960.

D.      The Act applies even though the Defendant did not  submit the false price information directly and received no direct payment off funds.  The Act applies even though the inflated portion of the price was received by customers of the Defendant  who are not parties to the case. 88 S.Ct., at 960.

37.     Venue in the Superior Court of San Diego County, California is appropriate and sufficient contacts for jurisdiction exist  in that each of the DEFENDANTS transacted  business in the State of California by selling directly or through others their specified pharmaceutical products in the State of California including San Diego County which the respective DEFENDANTS knew would be supplied to Medi-Cal recipients including those residing in San Diego County and for which the DEFENDANTS knew that grossly excessive and unreasonable payments for claims would be made to the providers/suppliers by the  Medi-Cal program.

18

CASE NO: _____

38.     A copy of this Complaint and written disclosure of substantially all material evidence and information VEN-A-CARE possesses were served on the State pursuant to Cal. Gov. Code §12652(c)(3) on the same day as this Complaint was filed  in camera and under seal by service via registered mail, return receipt requested on the Attorney General in Sacramento, California.

39.     The Qui Tam Plaintiff alleges: (A) that no allegation or transaction of defrauding the  State was made prior to the filing of the Complaint in public disclosures regarding the subject matter herein against any of the DEFENDANTS; (B) that none of the DEFENDANTS was named in public disclosures made prior to the filing of the Complaint regarding the subject matter herein; and (C), if the Court makes a finding against the Qui Tam Plaintiff as to the allegations set forth in (A) and/or (B), the Qui Tam Plaintiff is the original source of the information and has direct and independent knowledge of the information on which these allegations are based within the meaning of  Cal. Gov. Code §12652(d)(3)(A) and (B) and has voluntarily provided the information to the State before filing the Complaint which is based on the information provided by the Qui Tam Plaintiff to the State.

## SECTION NO. 4

## SYNOPSIS OF THE FALSE CLAIM SCHEME

### 4(A)    BACKGROUND

40.     In the United States, prescription drugs and biologicals are only provided or dispensed to patients upon the order of a physician.

19

CASE NO: _____

41.     Prescription drugs provided outside of the hospital setting are sold ordinarily by community retail pharmacies (i.e. Longs, Saveon, Rite Aid and neighborhood independent drug stores) directly to the patient. Typically a patient is provided a prescription for a particular drug by a physician. The patient takes the prescription and independently selects the pharmacy at which the prescription will be filled. Thus, the prescribing physician has no financial incentive or financial inducement to prescribe a particular drug or recommend a specific drug as the therapy of choice over that of a possible alternative therapy.

42.     This case, however, focuses on a different and distinct type of pharmaceuticals which cannot be taken by mouth and cannot be self administered. The specified pharmaceuticals are generally administered to the patient by a professional (i.e. a nurse) intravenously, by injection or inhalation. Many of the specified pharmaceuticals are commonly referred to as "chemotherapy", "chemo" or "oncology" drugs. The other drugs at issue include, but are not limited to, those drugs which are used in conjunction with chemotherapy and intravenous IV antibiotics, IV antiviral and IV antifungals. The biologicals at issue include but are not limited to those which are used to treat a variety of immune deficiency disorders. A biological product is one which has been obtained directly from, or has been derived from, living matters. The above described types of drugs and biologicals are collectively hereinafter sometimes referred to as "infusion, injectable or inhalation pharmaceuticals" and the particular

20

CASE NO: _____

pharmaceuticals at issue in this case are sometimes referred to as "the specified pharmaceuticals."

43.     The specified pharmaceuticals at issue in this Complaint are generally not available for sale at community retail pharmacies.  In most cases, the specified pharmaceuticals are only available through a hospital (either inpatient or outpatient), a specialized physician or clinic operated by a group of physicians or a specialized pharmacy.

44.     Specialized pharmacies such as the Qui Tam Plaintiff's are sometimes known as home infusion pharmacies, IV pharmacies or home IV pharmacies. Throughout the United States, it is very common to have physicians financially associated directly or indirectly with specialized pharmacies.  This association may be through an ownership interest, service as consultant or medical director, or other financial relationships.  The Qui Tam Plaintiff's pharmacy has three physician investors, none of which owns more than 5%.

45.     The DEFENDANT PHARMACEUTICAL MANUFACTURERS refer to these specialized pharmacies as "closed Pharmacies" or by a similar descriptive name which generally means the pharmacies are not open to the public.

46.     The specified pharmaceuticals are ordinarily prescribed by specialized physicians for the treatment of people who are afflicted with various forms of cancer, AIDS  and HIV diseases.

CASE NO: _____

47.     Physicians who specialize in the treatment of cancers and their associated blood disorders are known as oncologists and hematologists.  Physicians who specialize in the treatment of AIDS and HIV diseases are known as Infectious Disease or "ID" physicians.

48.     The specialized physicians are in a unique relationship with the DEFENDANT PHARMACEUTICAL MANUFACTURERS for the specified pharmaceuticals in this Complaint in that the physicians not only prescribe the specified pharmaceuticals, but also directly provide and administer or arrange for provision and administration of the specified pharmaceuticals.

49.     The DEFENDANT PHARMACEUTICAL MANUFACTURERS have each acted to induce physicians to order the pharmaceuticals at issue in this case by falsely representing inflated price and cost information such as direct prices, wholesale acquisition costs, published prices and average wholesale prices so that claims submitted to the  State Medicaid Program for these drugs will be paid to the physicians or specialized pharmacies  in amounts that grossly exceed the reasonable amount permitted by law.

**4(B)    SPECIFIC FACT PATTERNS**

50.     The false claim scheme of the DEFENDANT PHARMACEUTICAL MANUFACTURERS is typically implemented in the following ways:

A.      A pharmaceutical manufacturer possesses a patented or formerly patented pharmaceutical and the manufacturer desires to induce physicians to utilize the

CASE NO:_____

manufacturer's pharmaceutical for their patients.  The pharmaceutical manufacturer will knowingly reduce its true prices for the pharmaceuticals but will make false representations of inflated cost and price information upon which California Medicaid claims will be approved and paid.  The physician ordering the pharmaceutical and submitting the claim will thus receive substantially more money for the pharmaceutical than a reasonable amount and will thus be induced financially to order it for his or her patients.

       B.     Generic versions of a pharmaceutical become available and compete with the "brand name" manufacturer that held the patent on the pharmaceutical.  The generic manufacturers sell the pharmaceutical to physicians, clinics and specialty pharmacies at prices far below the price level reported by the brand manufacturer but make false representations of their pharmaceuticals' prices.  Often, the false prices reported by the generic manufacturers exceed the already inflated price reported by the brand name manufacturer.  As a result, physicians, who must decide whether to order a particular pharmaceutical, and their clinics and specialty pharmacies receive payments from the California Medicaid Program for claims for infusion and injectable pharmaceuticals that far exceed their cost.

       C.     Manufacturers of brand and generic drugs and biologicals  report false and fraudulent price and cost information to the California Medicaid Program and cause providers to receive unreasonably high payments for claims so that providers are

23

CASE NO: _____

induced to prescribe or administer the manufacturer's pharmaceutical rather than an alternative pharmaceutical or non-pharmaceutical therapy.

### 4(C)   SURROUNDING CIRCUMSTANCES

51.    The false claim scheme perpetrated by the DEFENDANT PHARMACEUTICAL MANUFACTURERS is aided by circumstances which include, but are not limited to the following:

A.    The infusion and injectable cancer chemotherapy and AIDS therapy pharmaceuticals at issue in this case are generally perceived to be high priced and often are high priced during the time they are subject to a patent held by the brand name manufacturer.

B.    Consumers are unable to price shop for the pharmaceuticals at issue in this case as they do with pharmaceuticals purchased at community retail pharmacies.

C.    The price and cost representations made by pharmaceutical manufacturers, in general, including the DEFENDANT PHARMACEUTICAL MANUFACTURERS, for many other pharmaceuticals bear a truthful relationship to their true prices and costs and the State of California thus routinely relies on these representations.

D.    Patients who receive the specified pharmaceuticals are extremely ill and not in a position to question their physician's decision as to who will provide the

CASE NO: _____

specified pharmaceuticals, which manufacturer's pharmaceuticals to use or as to the amount claimed for providing the specified pharmaceuticals.

      E.    The patients and third party payers, including the California Medicaid Program, are not aware of the prices actually paid for the specified pharmaceuticals by the physician, clinic or specialty pharmacy which presented the claim for payment. The DEFENDANT PHARMACEUTICAL MANUFACTURERS conceal from the State's Medicaid Program price reductions occurring due to competition in the marketplace and falsely and fraudulently represent pharmaceutical prices that far exceed the truthful prices.

      F.    The California Medicaid Program is required to pay claims for the specified pharmaceuticals by estimating the wholesale acquisition cost to the provider and relies on the price and cost representations made by the manufacturer in determining the payment amount for the specific manufacturer's pharmaceuticals.

      G.    Physicians, clinics and specialty pharmacies submitting claims to the State Medicaid Program for the pharmaceuticals at issue in this case are paid for their professional services which are separately reimbursable charges. The State's Medicaid Program is prohibited by law from paying and never intended to pay the grossly excessive amounts for the specified pharmaceuticals. Those providers or referrers of the specified pharmaceuticals in a position to increase utilization of the specified pharmaceuticals thus receive exorbitant sums of money in excess of the

CASE NO:_____

reasonable amounts provided by law, all due to the false price and cost representations

made by the DEFENDANT PHARMACEUTICAL MANUFACTURERS.

52.     The DEFENDANT PHARMACEUTICAL MANUFACTURERS each occupy

positions of privilege and trust in the United States because they develop new

pharmaceutical products and produce life saving pharmaceuticals.  In return, the

Pharmaceutical Manufacturers benefit from patents on new pharmaceutical products

that can be sold at prices, set by the manufacturers, that enable the manufacturers to

enjoy huge profits above costs as an accepted inducement to develop the new

pharmaceutical products.   When patents expire and other manufacturers bring "generic"

versions of the formerly patented pharmaceutical to the market, prices ordinarily fall due

to competition and due to the fact that the generic manufacturers did not expend the

large sums of money on research and development as did the original brand

manufacturers.  Prices also fall when manufacturers compete against alternative

therapies.  Manufacturers also reduce prices so that third party payers will cover their

pharmaceutical for payment.  Due to the Qui Tam Plaintiff's position in the industry, the

Qui Tam Plaintiff has been made privy to the truthful cost and price information that has

been concealed from the California Medicaid Program and have directly witnessed the

methods employed by each of the DEFENDANT PHARMACEUTICAL

MANUFACTURERS  in carrying out the false and fraudulent claims schemes set out

herein.   The Qui Tam Plaintiff has further witnessed that the California Medicaid

Program incurred damages because the DEFENDANT PHARMACEUTICAL

CASE NO: _____

MANUFACTURERS concealed price reductions and caused the illusion that the

specified pharmaceuticals continued to be sold at the price levels commanded by brand

manufacturers before the price reductions occurred resulting from competition.

53. ████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

CASE NO:_____

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

| | ██████ | | | | |
|---|---|---|---|---|---|
| ██████ | ████ | ███ | █████ | █████ | █████ |
| ██████ | █████ | ██████████ | ██████ | ██████ | █████ |
| ██████ | █████ | ██████████ | ██████ | ██████ | █████ |

| | | █████ | | | | |
|---|---|---|---|---|---|---|
| ███████ | ████ | ███ | █████████ | █████ | ███████ |
| ████ | ██████ | ████████ | █████ | █████ | █████ | ██████ |
| ████ | ██████ | ████████ | █████ | █████ | █████ | ██████ |

CASE NO: _____

### 4(D)   AN EFFECT OF FALSE PRICING SCHEME AND RESULTING ILLEGAL SPLIT FEE ARRANGEMENTS IS TO DRIVE LAW ABIDING COMPETITORS OUT OF BUSINESS

54.     The actions of the DEFENDANT PHARMACEUTICAL MANUFACTURERS alleged herein result in grossly excessive amounts being paid to their customers by the California Medicaid Program for claims submitted for the specified pharmaceuticals. Accordingly, the exorbitant payments induce physicians, clinics and specialty pharmacies to increase the utilization of the specified pharmaceuticals.  The DEFENDANT PHARMACEUTICAL MANUFACTURERS were in a position to increase the utilization of their specified pharmaceuticals by causing an enormous concealed financial inducement to be unwittingly paid by the California Medicaid Program to the DEFENDANT PHARMACEUTICAL MANUFACTURERS' customers, the physicians and specialized pharmacies.   The financial inducement was so great for many of the specified pharmaceuticals at issue in this  Complaint that the profits derived from the provision of the specified pharmaceuticals greatly exceeded the physicians' professional fees and provided what can only be characterized as "windfall profits."   In many markets, including the Qui Tam Plaintiff's, specialty pharmacies and clinics are unable to compete unless they enter financial arrangements with prescribing physicians whereby the grossly excessive amounts paid by the State's Medicaid Program are split with the prescribing physicians.  Over the last six (6) years, the Qui Tam Plaintiff's business has all but been extinguished because of the Qui Tam Plaintiff's refusal to participate in the

29

CASE NO: _____

false claims schemes specified herein.  The Qui Tam Plaintiff has been unable to

effectively compete with those physicians as well as clinics and specialty pharmacies

who participate in the DEFENDANT PHARMACEUTICAL MANUFACTURERS' false

claims scheme paying illegal financial inducements to the prescribing physicians.

**4(E)   FALSE PRICING SCHEME  -  "THE SPREAD"**
**Direct Benefits to Pharmaceutical Manufacturers -**
**Maximizing Sales Volume, Capturing Market Share**
**and Increasing Utilization of Products**

55.     The DEFENDANT PHARMACEUTICAL MANUFACTURERS benefit

directly from their false pricing scheme of concealing their true prices while making

grossly inflated false and fraudulent representations of prices and costs by maximizing

their products' sales volume, capturing market share for their products, and increasing

utilization of their products by providers.  An example of how the DEFENDANT

PHARMACEUTICAL MANUFACTURERS directly benefit from their false pricing scheme

is demonstrated by data for the first quarter of 1997 from the State of Florida's Medicaid

Program setting out Florida's Medicaid reimbursements paid to the customers of

pharmaceutical manufacturers and utilization of their products by their customers for the

drug ███████████ ██████ ██████ ("██████").

56.     Albuterol is a pharmaceutical which is administered by inhalation and is

used for the treatment of many respiratory illnesses.  Albuterol provides an example of

how two (2) pharmaceutical manufacturers, DEFENDANTS ████████ and DEY,

maximized sales volume and captured the Florida Medicaid pharmacy market for

CASE NO: _____

Albuterol to the detriment of Florida's Medicaid Program.   The methods used to capture

Medicaid Pharmacy business is typical of those employed by the DEFENDANT

PHARMACEUTICAL MANUFACTURERS in other states, including California.

Pharmaceutical manufacturers capture market share and  maximize their sales volume

by concealing their true prices while falsely and fraudulently representing grossly inflated

prices which creates a spread between the providers' costs and the amount of

reimbursement from a state's Medicaid Program.  The Qui Tam Plaintiff's evidence

demonstrates that providers will purchase and utilize the pharmaceutical manufacturer's

product that has the widest spread between the provider's true cost and the

reimbursement paid by third parties including the States' Medicaid Programs and

Medicare.  First quarter, 1997 reimbursement data from the State of Florida's Medicaid

Program demonstrates that the wider the spread between the true cost paid by

providers versus the reimbursement paid by Medicaid the more a specific

manufacturer's product will be utilized instead of a competitor's product.  The

DEFENDANT PHARMACEUTICAL MANUFACTURERS ████████ DEY and the

pharmaceutical manufacturers ████████████████, have all made

representations of Wholesale Acquisition Cost to the State of Florida as set out in the

chart below.  As a result of the false representations of prices and costs, the

DEFENDANT PHARMACEUTICAL MANUFACTURERS ████████DEY caused

the State of Florida's Medicaid Program unwittingly to pay more than one million dollars

for the first quarter of 1997 over the reasonable reimbursement amounts which the State

31

CASE NO: _____

of Florida intended to pay.  The chart further sets out the number of reimbursed claims,

VEN-A-CARE's cost per ml and "the spread" between Medicaid reimbursement and true

cost.

**FALSE PRICING SCHEME - "THE SPREAD"**
**FLORIDA MEDICAID REIMBURSEMENT (1st Quarter 1997)**
███████████████████████

| Manufacturer | VAC's Cost per ml | Florida Medicaid Reimbursement per ml | The Spread | # of claims | Reimbursement paid by Florida Medicaid |
|---|---|---|---|---|---|
| ███ | ███ | ███ | ███ | ███ | ███ |
| ██ | ███ | ███ | ███ | ██ | ███ |
| █████ | ██ | ███ | ██ | ██ | ███ |
| ███ | ███ | ███ | █ | ██ | ███ |
| TOTAL REIMBURSEMENT BY THE STATE OF FLORIDA MEDICAID PROGRAM (January 1 through March 31, 1997) | | | | | $1,477,075.86 |
| ** | The use of the spread to falsify claims is evidenced by the fact that █████ and ████ customers will receive a greater windfall by purchasing █████ and ████ product than the customers could if the customers somehow acquired the same product from ████████ or ██████ free of charge. | | | | |

57.    The grossly inflated payments unwittingly made by the State's Medicaid

Program not only served as an inducement to providers to purchase a particular

manufacturer's product but also served to drive over utilization.  The Qui Tam Plaintiff,

prior to filing the  Complaint, surveyed three national pharmacy providers of ██████ to

determine their business practices for their sales of ██████ to the Medicare and

States' Medicaid Programs.  The Qui Tam Plaintiff's principals used positions in an

CASE NO: _____

affiliated home health care company to pose as an interested customer.  The Qui Tam

Plaintiff determined that the payment of kickbacks and/or split fees were common place

between the pharmacies and home health care companies who could provide the

pharmacies with patient referrals.  One marketing scheme offered by one of the

pharmacies was the automatic shipping of refills of ███████ every month without

verifying continuing need with the patient or physician in order to maximize the sales of

███████ and reimbursement.

58.    For many of the specified pharmaceuticals, the DEFENDANT

PHARMACEUTICAL MANUFACTURERS' false and fraudulent representations of price

and cost caused the Medicare Program  to pay and approve claims at such excessive

amounts that the 20% co-payment exceeded the true price of the pharmaceuticals. In

the cases of Medicare beneficiaries who are additionally eligible for Medicaid benefits as

the secondary payor, the State's Medicaid Program paid the excessive, inflated

Medicare 20% co-payment.   The chart below lists some of those specified

pharmaceuticals, the amount approved in 1996 by California Medicare, the 20% co-

payment  and the true price paid by the Qui Tam Plaintiff.

| ███████████████ | | | | |
|---|---|---|---|---|
| ███ | ███ | ███████ | ███ | ████████ |
| ████████ | ███ | ████ | ██ | ████ |

CASE NO:_____

| | | | | |
|---|---|---|---|---|
| ████ | █████ | ████████ | ██████ | ███████ |
| ███████ | ████ | ████ | ████ | ████ |
| ████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |
| ████████ | ████ | ████ | ████ | ████ |
| ████████ | ████ | ████ | ████ | ████ |
| █████████ | ████ | ████ | ████ | ████ |

CASE NO: _____

|  |  |  |  |  |
|---|---|---|---|---|
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |
| █ | █ | █ | █ | █ |

59.     Through the above described scheme of concealing their true prices and representing falsely inflated prices and costs, the DEFENDANT PHARMACEUTICAL MANUFACTURERS caused the State's Medicaid Program to pay kickbacks (illegal remuneration)  from Federal and State funds to the DEFENDANT PHARMACEUTICAL MANUFACTURERS'  customers.

60.     In many instances, the kickbacks paid from State and Federal funds were in excess of 1,000% over the providers' true costs and over the reasonable reimbursement amounts which the State intended to pay.  The grossly excessive profits have led to a proliferation of illegal split fee arrangements between the pharmaceutical manufacturers' customers and persons or entities who are in a position to refer patients.

CASE NO: _____

The split fee/kickbacks also serve as a financial inducement for the referrals of more patients and greater utilization of the products.

61.     This case focuses on the specified pharmaceuticals manufactured by and/or distributed by the DEFENDANT PHARMACEUTICAL MANUFACTURERS and sold either directly, through wholesalers or through group purchasing organizations to physicians, such as oncologists, hematologists and infectious disease physicians and others as well as the specialized "closed" pharmacies.

## SECTION NO. 5

## BACKGROUND OF HOW
## PHARMACEUTICAL CLAIMS ARE PAID FOR UNDER
## THE STATE OF CALIFORNIA'S MEDICAID PROGRAM

62.     The United States Government partially funds state sponsored medical assistance programs for the poor pursuant to Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq.

63.     Benefits for pharmaceuticals are optional but all states have opted to provide Medicaid pharmaceutical reimbursement coverage.

64.     The federal portion of state Medicaid payments, Federal Medical Assistance Percentage ("FMAP") is based on a state's per capita income compared to the national average.  The federal portion consists of a minimum of 50% up to a maximum of 83%.   California's FMAP contributed by the United States in 1995 was 50.00%.

CASE NO: _____

65.    The States, United States Territories and the District of Columbia are required to implement a State Health Plan containing certain specified minimum criteria for coverage and payment of claims in order to qualify for federal funds for Medicaid expenditures.  42 U.S.C. §1396a(a)(30)(A).

66.    State Health Plans must, in part, provide for payment of claims for prescription pharmaceuticals pursuant to a formula approved by the Secretary of the Department of Health and Human Services which determines maximum allowable claim amount for each pharmaceutical manufactured by each manufacturer whose prescription pharmaceuticals qualify for Medicaid reimbursement based upon an estimation of the provider's acquisition cost plus a reasonable dispensing fee. 42 CFR 447.331.

67.    In order to comply with the requirements of 42 CFR 447.331 to estimate a provider's costs for specific pharmaceuticals, the States' Medicaid programs acquire and receive price and cost information from the DEFENDANT PHARMACEUTICAL MANUFACTURERS directly and indirectly from entities equipped to do specialized data collection.

68.    Medical Economics, Inc. and the Hearst Corporation are nationally recognized companies that specialize in gathering pharmaceutical pricing and cost information including Average Wholesale Price ("AWP"), Wholesale Acquisition Cost ("WAC"), Direct Price ("DP"), Actual Acquisition Cost ("AAC") and Estimated Acquisition Cost ("EAC"). Medical Economics  publishes pharmaceutical pricing information in "The

CASE NO:_____

Red Book".   The Hearst Corporation publishes pharmaceutical pricing information

through its First Data Bank Division, which is a automated data base service.

　　　　69.　　The Qui Tam Plaintiff's investigation has shown that during the time

covered by this Complaint that:

　　　　　　　　A.　　The California Medicaid program pays for pharmaceuticals under

two programs:

　　　　　　　　　　　　(i)　　　Pharmacy and;

　　　　　　　　　　　　(ii)　　Incident to a physician's service

　　　　　　　　B.　　The State of California's reimbursement formula for a

pharmaceutical  is a multi-faceted determination of estimated acquisition cost set forth

as follows:  Estimated Acquisition Cost ("EAC") for . . . a drug product shall be:

　　　　　　　　　　　　(i)　　　The Direct Price as determined pursuant to Section 51513.5;

or

　　　　　　　　　　　　(ii)　　The Average Wholesale Price minus 5% (AWP - 5%) for all

other drug products.

　　　　　　　　C.　　The California Code describes how Medi-Cal determines AWP as

follows: Average Wholesale Price (AWP), excepting temporary updates provided in

subdivision (a)(13), means the price for a drug product or medical supply product listed

for a standard package in the Department's primary price reference source, or for

products not listed in the Department's primary price reference source, the price listed

for a standard package in the secondary price reference source; and, if not listed in the

38

CASE NO:_____

secondary price source, the principal labeler's catalogue.  The selection of the primary

price reference source and the secondary price reference source shall be based upon

an evaluation of the various price reference sources available in relation to the following

criteria:

      (i)     Accuracy and currentness of prices.

      (ii)    Comprehensiveness of data base.

      (iii)   Capability to meet the needs of the Department's fiscal

intermediary.

      The primary price reference source will be the price reference source that,

in the judgment of the Director, best meets the criteria specified above.  The secondary

price reference source will be the price reference source that, in the judgment of the

Director when evaluated against the criteria listed above, is inferior to the primary price

reference source but superior to all others evaluated.

      D.    The Estimated Acquisition Cost that is the Direct Price is

determined pursuant to California Code Section 51513.5 as set out as follows:

      (i)     The estimated acquisition cost for all of the drug products

manufactured or distributed by a pharmaceutical company listed below shall be the

direct price listed for a standard package in the Department's primary reference source;

or for products not listed in the Department's primary price reference source, the direct

price listed for a standard package in the secondary price reference source; or, if not

listed in the secondary price source, the principal labeler's catalogue.

39

CASE NO: _____

    (ii)     Pharmaceutical Company List:

| BILLING CODE | PHARMACEUTICAL COMPANY |
| --- | --- |
| AB | Abbot Laboratories |
| AY | Ayerst Laboratories |
| LE | Lederle Laboratories |
| MS | Merck, Sharpe and Dohme |
| PD | Parke Davis and Company |
| PF | Pfizer Laboratories |
| RR | Roerig, J.B. and Company |
| RS | Ross Laboratories |
| SQ | Squibb, E.R. and Sons |
| UP | Upjohn Company, The |
| WY | Wyeth Laboratories |

    E.    The reasoning of the California Legislature for paying the eleven

(11) manufacturers on their Direct Price rather than AWP minus 5% for all other

pharmaceutical manufacturers was that the California Medicaid Program was aware that

the vast majority of sales of these 11 manufacturers was on a direct sale basis from the

manufacturer to the provider.  California Medicaid reimbursement methodology of AWP

minus 5% was intended to pay for a reasonable wholesaler's mark-up for the wholesaler

services provided.  Therefore, for the 11 manufacturers who sold directly to the

providers, the State of California's Medicaid Program wanted to eliminate the

40

CASE NO:_____

wholesalers' mark-ups to make sure that the State paid the lower true Direct Price when no wholesaler was used.

      F.    The State of California's reimbursement for pharmaceuticals incident to a physician's services is based on a Level 3 HCPS Code from the Physician's Handbook which is unique to California Medicaid.  California physicians are paid by how much of the pharmaceuticals are dispensed, i.e. 51 mg, instead of how much was purchased.

      G.    The State of California's Medicaid pharmacy program has relied upon representations of AWP and Direct Price supplied by the Hearst Corporation's First Data Bank  in setting reimbursement amounts for pharmaceuticals;

      H.    The Hearst Corporation's First Data Bank relies  solely upon the pricing information provided by the DEFENDANT PHARMACEUTICAL MANUFACTURERS for the drugs specified in this Complaint in establishing or reporting the DEFENDANT PHARMACEUTICAL MANUFACTURERS' AWPs and Direct Prices.

      I.    Reimbursement for pharmaceuticals incident to a physician's service has been set by California Medicaid Pharmacy Services.

    70.    Pharmacy claims are submitted in one of two ways.  The first is by submitting to the fiscal agent or state agency a completed (hard copy 30-1) pharmacy claim form.  The second is through an electronic claims filing procedure whereby the same information required to be included on the hard copy is transmitted electronically to the Medicaid fiscal agent or state agency.

41

CASE NO: _____

71.    Pharmacies must bill Medicaid by utilizing National Drug Codes ("NDC") numbers.  The Food and Drug Administration ("FDA") assigns NDC  numbers to identify each individual manufacturer and their pharmaceuticals' strength and size.  NDC numbers are eleven digits, with the first five digits identifying the manufacturer or labeler, the next four digits identifying the product and the last two digits identifying the package size.

72.    Claims for pharmaceuticals incident to a physician service are submitted in one of two ways.  The first is by submitting to the fiscal agent or state agency a completed (hard copy) HCFA 1500 claim form.  The second is through an electronic claims filing procedure whereby the same information required to be included on the hard copy is transmitted electronically to the Medicaid fiscal agent or State Agency.

73.    Physicians must bill Medicaid for pharmaceuticals by utilizing an 5-digit alpha numeric system created by the State of California and referred to as a HCPCS Level 3.  By way of example, the 5-digit code for submitting claims for the drug ███████████████████████████████████.  In addition to being reimbursed for the cost of the pharmaceutical, physicians receive a payment of $3.93 to cover the cost of the needle, syringe and alcohol swab.

74.    The State of California awards cost-reimbursement contracts to private companies to evaluate and process Medicaid recipients' claims for payment.  The State refers to these contractors as fiscal agents.

CASE NO: _____

75.    This case focuses on the specified pharmaceuticals that are covered under the California Medicaid Program which are sold and/or distributed by the DEFENDANT PHARMACEUTICAL MANUFACTURERS and for which the California Medicaid Program relied on the false cost and price representations reported by the DEFENDANT PHARMACEUTICAL MANUFACTURERS to pay and approve claims.

### SECTION NO. 6

### THE DEFENDANT PHARMACEUTICAL MANUFACTURERS' KNOWLEDGE OF THE FALSE CLAIMS SCHEME

76.    At all times material to this action, each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS acted "knowingly" as that term is defined in Cal. Gov. Code §§12650(b)(2)  by:

A.    Causing the presentation of false claims for payment or approval by the State's Medicaid Program; and

B.    Causing the making and using of false statements and/or records for the purpose of getting false claims approved or paid by the State's Medicaid Program.

77.    The DEFENDANT PHARMACEUTICAL MANUFACTURERS were clearly placed on notice that their conduct would cause the State's Medicaid program to pay claims for the specified pharmaceuticals in amounts exceeding that permitted by applicable law, in part, because:

43

CASE NO: _____

    A.    Each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS was on notice of federal statutes and regulations limiting payment of Medicaid claims for the specified pharmaceuticals to an amount necessary to cover the cost of the pharmaceutical.

    B.    Each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS was on notice that the California Medicaid Program was not authorized or permitted by applicable law to pay claims for the specified pharmaceuticals in excessive amounts.

    C.    Each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS was on notice that federal and California statutes and regulations prohibited them from making misleading representations about the specified pharmaceuticals, including misleading price or cost representations:

    (i)    Each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS is required to comply with the Federal Food, Drug and Cosmetic Act 21 U.S.C. §321 et. seq., and the regulations promulgated pursuant thereto.

    (ii)    The price and cost representations about the specified pharmaceuticals constitute advertising that is included in the "labeling" provisions of the Federal Food and Drug Act and related regulations. 21 U.S.C. §§201(m); 202.1(k)(2).

    (iii)    Each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS is prohibited from disseminating any information about their prices

44

CASE NO: _____

or costs of the specified pharmaceuticals that is "false or misleading in any particular . . ." 21 U.S.C. §§5.02; 302(b).

(iv)    Each of the DEFENDANT PHARMACEUTICAL MANUFACTURERS was on notice that they possessed a duty to assure that their representations about prices and costs of the specified pharmaceuticals were not misleading, taking into account:

> " . . . not only representations made or suggested by statement, word, design, device, or any combination thereof, but also to the extent to which the labeling or advertising fails to reveal facts material in light of such representations"

21 U.S.C. §201(n).

78.    The DEFENDANT PHARMACEUTICAL MANUFACTURERS regularly make direct representations of false price and cost information to the State of California's Medicaid agency that are relied upon in approving and paying claims. ▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬

79.    Another example of a pharmaceutical manufacturer making direct false and fraudulent representations of price and cost to a state Medicaid pharmacy program is the non defendant, ▬▬▬▬▬▬▬▬▬▬▬▬ ("▬▬▬▬") that manufacturers the drug, ▬▬▬▬. ▬▬▬▬ is a drug recently introduced that is administered to resolve

45

CASE NO: _____

nausea in patients undergoing chemotherapy. When ████████ entered the market,
potential alternatives were ███████████████████████████████
████████████████, both of which are  the subject of false price representations
beginning before the entry of ████████.   ████████ is manufactured in both tablet and
injectable form.

80.    A State of Florida Pharmacy Program Official directly contacted ████████
and informed its representative that Florida Medicaid needed accurate and truthful
wholesale price information about ████████ in order to verify the pricing information that
Florida had received through First Data Bank.   In response to this request, ████████
provided the written representations on December 17, 1997 that are attached as **Exhibit
"6"**.   ████████ made AWP and Net Price representations about six different versions of
its oral ████████ and also about its one version of the injectable, ███████████████,
████████████. California would ordinarily estimate wholesale acquisition cost (
"WAC")  by adding 7% to ████████ representation of Net Price which in the instant case
lead to a reimbursement of $133.62 for the 100 mg/5ml vial.   While the Florida Official
was asking ████████ for truthful prices for ████████ so that reimbursement amounts
could be verified, the Qui Tam Plaintiff contacted ████████ representatives through its
"████████████".  The Qui Tam Plaintiff made it very clear that it did not want to
receive any amount from Medicaid in excess of that which Florida Medicaid intended to
pay.  The Qui Tam Plaintiff requested that the ████████ representative  calculate the
proper Florida Medicaid reimbursement amount for injectable ████████.  In response,

46

CASE NO:_____

the Qui Tam Plaintiff received, on December 18, 1997, what is attached as **Exhibit "7"**.
On the cover page, the representative of the "███████████" calculated Florida's
reimbursement for the ███████ injectable using a price of $70.00 and applying WAC
plus 7%.  The Florida Medicaid reimbursement was thus calculated by ███████
representatives to be $74.90.  **Exhibit "8"** is a price list for ███████ through its
distributor ████████████████████ and lists the truthful prices for ███████
available to the Qui Tam Plaintiff.  A wholesale cost of $70.00 is specified as the price
for the injectable in orders of as little as one unit.

Applying truthful prices to Florida's WAC methodology results in a maximum
reimbursement of $74.90 for one unit of the 100 mg/5ml vial of injectable ███████.
**Exhibit "9"**,███████represented that its true Net Price is $124.90.  When the WAC
plus 7% formula is applied, a reimbursement of $133.64 results which is 78% greater
than the amount that even ███████ admits would result from reliance upon truthful
prices.

**Exhibits "8" and "9"** also contain price representations for the oral versions of
███████.  A comparison of those representations and the resulting reimbursement
amounts with the injectable reveals that Florida's reimbursement methodology works
when it is supplied with truthful prices.  The following Charts illustrate the impact of false
price representations on the State of Florida Medicaid Pharmacy Program:

47

CASE NO: _____





The following charts illustrate that reimbursement amounts are set at the State of Florida's and the State of California's intended reasonable levels when the manufacturer tells the truth for the oral or tablet form of the drug and at unintended excessive levels when the manufacturer lies about the injectable form of the drug:

48

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ████ | ████ | ████ | ██ | ██ | ██ |
| ████ | ██ | ██ | ██ | ██ | █ |
| ████ | ██ | ██ | ██ | ██ | █ |
| ████ | ██ | ██ | ██ | ██ | █ |

As the ████ example illustrates, the State's Medicaid Program continues to receive false price representations from manufacturers of certain infusion, injectable and inhalation drugs that mislead reimbursement officials into paying excessive amounts to the Manufacturer's customers, physicians and specialty pharmacies.

81.    The DEFENDANT PHARMACEUTICAL MANUFACTURERS were each fully capable of making truthful representations about prices and costs of the specified pharmaceuticals and do so when it is economically beneficial to them.

82.    The DEFENDANT PHARMACEUTICAL MANUFACTURERS each participated in the Medicaid rebate program mandated by the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90") and thus were required to pay rebates to the State Medicaid program based upon their average manufacturer's price ("AMP") for non-innovator multi-source pharmaceuticals (generics) or best price ("BP") single source innovator drugs (Brand) for the specified pharmaceuticals at issue in this case.  The

CASE NO: _____

AMP rebate amount is currently 11% and the BP is currently a minimum of 17% or more based on a formula between the drug manufacturers' difference in AMP and BP.  The method of calculating rebates, therefore, causes it to be in the economic interests of the DEFENDANT PHARMACEUTICAL MANUFACTURERS to report the lowest AMPs and Best Prices based on the data available to them.

The following examples demonstrate that the DEFENDANT DRUG MANUFACTURES are able to report accurate prices when they choose to:

A.

B.

51

CASE NO: _____

████████████████████████████████

███████████████████████████████

████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████

83.     When reporting prices to First Data Bank and directly to the State's Medicaid program for the pharmaceuticals at issue in this case, the DEFENDANT PHARMACEUTICAL MANUFACTURERS falsely reported amounts far in excess of those reported for OBRA '90 rebate purposes. Therefore, when it benefitted the DEFENDANT PHARMACEUTICAL MANUFACTURERS to report highest prices to maximize the reimbursement amount for the select providers from the Medicare and Medicaid programs, they used the false and grossly inflated prices and, when it benefitted the DEFENDANT PHARMACEUTICAL MANUFACTURERS to report their true prices to minimize the rebates they were required to pay the State's Medicaid

CASE NO: _____

Program, they used the true prices driven low by competition.  Accordingly, the

DEFENDANT PHARMACEUTICAL MANUFACTURERS knowingly reported false

inflated price and cost information, in part, because each DEFENDANT DRUG

MANUFACTURER's participation in the rebate program demonstrates its ability to report

accurate prices, yet each DEFENDANT DRUG MANUFACTURER knowingly failed to

use that ability when it knew its price and cost reports were being relied upon in paying

and approving Medicaid claims.

84.    The effect on payment when a DEFENDANT DRUG MANUFACTURER

changes a representation of its drug cost or price can be dramatic regardless of whether

a State's reimbursement methodology estimates a provider's actual acquisition cost

pursuant to federal regulation 42 CFR 447.331 as AWP minus a percentage or WAC

plus a percentage.  The representations made by the DEFENDANT

PHARMACEUTICAL MANUFACTURERS regarding their direct prices to First Data

Bank, Medical Economics and directly to the States' Medicaid Programs are material for

the establishment of reasonable reimbursements by the States' Medicaid Programs.

The importance that Pharmaceutical Manufacturers represent truthful direct prices and

how the representations of direct prices affect reimbursements in States whose formula

is WAC plus a percentage and States whose formula is AWP minus a percentage  is

demonstrated by the following example:

A.    ████████████████████████████████████

████████████████████████████████████████████████

CASE NO:_____

███████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████

████████████

B.   ██████████████████████

█████████████████████████████████

████████████████████████████████

███████████████████████████████

█████████████████████████████████

██████████████████████████████

███████████████████████████████

███████████████████

C.   ██████████████████████

█████████████████████████████████

███████████████████████████████

█████████████████████████████████

CASE NO: _____

**(1)** ████████████████

**(2)** ████████████████

85.   Each DEFENDANT DRUG MANUFACTURER was on notice that it was prohibited by federal statute, from paying, or causing the payment of, directly or indirectly,  money or other financial benefit to induce its customers to order the specified pharmaceuticals when the California Medicaid Program would be paying claims. 42 U.S.C. §1320a-7b(b)(2).

86.   Notwithstanding the above statutory requirements and prohibitions:

CASE NO: _____

A.    Defendants ███████████████████, and ███████████

repeatedly, systematically and falsely represented to the Medicare and California

Medicaid Programs that the prices of certain of the generic versions of the specified

drugs were the same or higher than the published price for the equivalent brand drug

when they knew that, in truth and in fact, the price of their generic drug was far less than

the published price of the brand and that the State's Medicaid Program  would pay and

approve claims based upon their representations of the false price of their drugs.

**THE MEDI-CAL PROGRAM**
**DUPED INTO PAYING AS MUCH OR MORE**
**FOR GENERIC DRUGS THAN THEIR EQUIVALENT BRAND**

| ███████████ | | | | |
|---|---|---|---|---|
| **COMPANY** | **SIZE** | **NDC #** | **MEDI-CAL** | **QUI TAM PLAINTIFF'S COST** |
| ██████ | ████ | █████████ | █████ | ██████ |

| ███████████ | | | | |
|---|---|---|---|---|
| **COMPANY** | **SIZE** | **NDC #** | **MEDI-CAL** | **QUI TAM PLAINTIFF'S COST** |
| ██████ | ████ | █████████ | █████ | ██████ |

| ███████████ | | | | |
|---|---|---|---|---|
| **COMPANY** | **SIZE** | **NDC #** | **MEDI-CAL** | **QUI TAM PLAINTIFF'S COST** |
| ██████ | ███ | █████████ | █████ | █████ |

CASE NO: _____

| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
|---------|------|-------|----------|--------------------------|
| ███ | ██ | ██████ | ███ | ███ |

| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
|---------|------|-------|----------|--------------------------|
| ██ | ██ | ██████ | ███ | ███ |

| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
|---------|------|-------|----------|--------------------------|
| ████ | ██ | ██████ | ███ | ███ |

| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
|---------|------|-------|----------|--------------------------|
| ██ | ███ | ██████ | ███ | ███ |

| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
|---------|------|-------|----------|--------------------------|
| ███ | ███ | ██████ | ███ | ███ |

CASE NO: _____

| | | | | |
|---|---|---|---|---|
| ██████████ | | | | |
| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
| ████ | ████ | ██████ | ████ | ██████ |

| | | | | |
|---|---|---|---|---|
| ██████████ | | | | |
| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
| ████ | █████ | ██████ | ████ | █████ |

| | | | | |
|---|---|---|---|---|
| ██████████ | | | | |
| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
| ████████ | ███ | ██████ | █████ | ██████ |

| | | | | |
|---|---|---|---|---|
| ██████████ | | | | |
| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
| ██████ | ███ | ███████ | █████ | ██████ |

| | | | | |
|---|---|---|---|---|
| ██████████ | | | | |
| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
| ██████ | ██▄ | ███████ | █████ | ██████ |

CASE NO: _____

| COMPANY | SIZE | NDC # | MEDI-CAL | QUI TAM PLAINTIFF'S COST |
|---------|------|-------|----------|--------------------------|
| ██ | █▊ | ████████ | ████ | ████ |

87.    Defendants ██████████████████████████ ██████████████████████████ repeatedly, systematically and falsely represented to the California Medicaid Program that the prices of certain of their specified pharmaceuticals were increasing or remaining constant when they knew that in truth and in fact the prices had fallen substantially and the California Medicaid Program would pay and approve claims based on their representations of the false price of their pharmaceuticals. ██████████████████████ ██████████████████████████████████ ████████████████████████████ ██████████

████████████

| ██ | ███ | ████ | █████ |
|----|-----|------|-------|
| ██ | ███ | ███ | ███ |
| ██ | ███ | ███ | ███ |
| ██ | ███ | ███ | ███ |
| ██ | ███ | ███ | ███ |
| ██ | ███ | ███ | ███ |
| ██ | ███ | ███ | ███ |

CASE NO: _____

## SECTION NO. 7

## FINANCIAL INDUCEMENT

88.     The financial inducement to those in a position to increase the utilization of the Defendants' pharmaceuticals is illustrated by the following examples of common drug therapies for certain of the specified drugs:

A.     Patient "A" is diagnosed with Metastatic Gastric Carcinoma and prescribed a combination chemotherapy regimen to be given on three consecutive days every twenty-one to twenty-eight days for ten (10) cycles.  The prescription for this therapy is:

████     ████████████████████████

████     ████████████████████████

████     ████████████████████████

████████████████

**Calculation of Each Drug's Dosage**:

████     █████████████████████

████     █████████████████████

████     █████████████████████

████████████████████████████████

| ████ | ████ | ██ | ████ |
|------|------|------|------|
| ████████ | ████ | ██████ | ████████ |

CASE NO:_____

CASE NO: _____

| COMPARISONS OF QUI TAM PLAINTIFF'S COST VS. MEDICARE ALLOWABLE AND MEDICAID REIMBURSEMENT FOR ONE (1) CYCLE: | | |
|---|---|---|
| Qui Tam Plaintiff's COST | vs | California MEDICAID |
| $184.78 | | $2,981.88 |

| COMPARISONS OF QUI TAM PLAINTIFF'S COST VS. MEDICAID REIMBURSEMENT FOR TEN (10) CYCLES: | | |
|---|---|---|
| Qui Tam Plaintiff's COST | vs | California MEDICAID |
| $1,847.80 | | $29,818.80 |

The above example is of a chemotherapy regimen obtained from <u>Handbook of Commonly Used Chemotherapy Regimens</u>, F. Anthony Greco, M.D., Precept Press, 1996.  It does not include any professional or dispensing fees, supportive drugs or intravenous fluids prescribed which are all separately reimbursable by Medicare and the State's Medicaid Program.

B.      Patient "B" is diagnosed with Colon Cancer and is prescribed a chemotherapy regimen of ████████ and ████████ once a week for six (6) cycles. The prescription for this therapy is:

████████  ████████████████

████████  ████████████████

████████████████

<u>Calculation of Each Drug's Dosage Is</u>:

████████  ████████████████████

████████  ████████████████████

████████████████████████████

CASE NO: _____

| | | | |
|---|---|---|---|
| ██████ | █████ | ████ | ██████ |
| ████████ | █████ | ██████ | █████████ |
| ████████ | █████ | ██████ | █████████ |
| █████████████ | | ████ | |

██████████████

| | | | | |
|---|---|---|---|---|
| ████ | █████ | ██████ | ████████ | ███ |
| ████ | █████ | █████ | ██████ | █████ |
| ████ | █████ | █████ | ██████ | █████ |
| ████████████ | | | | $1,079.18 |

| COMPARISONS OF QUI TAM PLAINTIFF'S COST VS. MEDICAID REIMBURSEMENT FOR ONE (1) CYCLE: | | |
|---|---|---|
| Qui Tam Plaintiff's COST | vs | California MEDICAID |
| $40.17 | | $1,079.18 |

| COMPARISONS OF QUI TAM PLAINTIFF'S COST VS. MEDICAID REIMBURSEMENT FOR SIX (6) CYCLES (6 WEEKS): | | |
|---|---|---|
| Qui Tam Plaintiff's COST | vs | California MEDICAID |
| $241.02 | | $6,475.08 |

The above example is of a chemotherapy regimen obtained from Journal of Clinical Oncology, 5: 1559-1565, 1987.  It does not include any professional or

CASE NO: _____

dispensing fees, supportive drugs or intravenous fluids prescribed which are all
separately reimbursable by Medicare and State's Medicaid Program.

     C.    Patient "C" is diagnosed with Small Cell Lung Cancer and is
prescribed a chemotherapy regimen consisting of ██████ and ██████ for five (5)
days every twenty-one (21) days for four (4) cycles.   The prescription for this therapy is:

**Calculation of Each Drug's Dosage**:

CASE NO: _____

| ██ | █████ | ██ | █████ | ███ |
|---|---|---|---|---|
| █████████████████ | | | | ███ |

| COMPARISONS OF QUI TAM PLAINTIFF'S COST VS. MEDICAID REIMBURSEMENT FOR ONE (1) CYCLE: | | |
|---|---|---|
| Qui Tam Plaintiff's COST | vs | California MEDICAID |
| **$680.68** | | **$1,670.12** |

| COMPARISONS OF QUI TAM PLAINTIFF'S COST VS. MEDICAID REIMBURSEMENT FOR FOUR (4) CYCLES: | | |
|---|---|---|
| Qui Tam Plaintiff's COST | vs | California MEDICAID |
| **$2,722.72** | | **$6,680.48** |

The above example is of a chemotherapy regimen obtained from <u>Handbook of Commonly Used Chemotherapy Regimens</u>, F. Anthony Greco, M.D., Precept Press, 1996. It does not include any professional or dispensing fees, supportive drugs or intravenous fluids prescribed which are all separately reimbursable by Medicare and State's Medicaid Program.

89.    The knowledge of the DEFENDANT PHARMACEUTICAL MANUFACTURERS is further demonstrated by their systematic and ongoing, written and verbal communications with customers  whereby they encourage and induce them to submit claims to Medicare and Medicaid to receive the excessive payments resulting from the Defendants' false price and cost representations.  ████████████

██████████████████████████████████████████████

65

CASE NO:_____

██████████████████ ████████████ ██████████████

█████████████████ ██████████

Additionally DEFENDANTS ████████████████████ and ██████████

each maintain an "800" number, staffed with personnel trained to assist customers in

securing payment of claims in the excessive amounts at issue in this action.

      90.    As an example of the DEFENDANT PHARMACEUTICAL

MANUFACTURERS' use of their false and fraudulent practices to market their products

follows:

      A.    ███████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████████████

█████████████████████

      B.    In or about 1995, VEN-A-CARE began ordering ████████ from ████

through their sales representative, ████████ (hereinafter referred to as "████"). ████

also gave VEN-A-CARE prices for other manufacturers' ████████████. VEN-A-CARE

then began purchasing ████████ (████████) since the purchase price for ████████ was

$5.00 to $6.00 less per gram.

66

CASE NO:_____

C.      When ▮▮▮▮▮ realized that VEN-A-CARE was no longer purchasing ▮▮▮▮▮ but using ▮▮▮▮▮ she called T. Mark Jones on March 20, 1996 at 9:40 A.M. During this phone conversation, ▮▮▮▮▮ informed Jones that she was concerned with VEN-A-CARE's purchasing ▮▮▮▮▮ instead of ▮▮▮▮▮▮▮▮▮. She stated that, even though VEN-A-CARE could save a few dollars on the initial acquisition cost of ▮▮▮▮▮, VEN-A-CARE would not benefit from the amount of reimbursement related to ▮▮▮▮▮ greater AWP. She stated that ▮▮▮▮▮ AWP in the 1996 Red Book was $290.00 for 5 grams and ▮▮▮▮▮▮▮▮ AWP in 1996 was $340.00 for 5 grams.  She stated that the larger spread from ▮▮▮▮▮ allows VEN-A-CARE to make $50.00 more per 5 gram purchases. ▮▮▮▮▮ stated that VEN-A-CARE needed to compare ▮▮▮▮▮ AWP to other manufacturers when purchasing ▮▮ for Medicaid patients since ▮▮▮▮▮ has the largest spread.

91.     An example of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' admission that their price and cost representations are false follows:

A.      On or about December 3, 1996, VEN-A-CARE's Bentley and Jones were contacted by a Florida Medicaid Pharmacy Official. The Official requested Bentley's and Jones' assistance in providing the State of Florida with truthful prices for the drug,  Immune Globulin Intravenous (Human) ("IVIG").

B.      The Official remembered that Bentley had inquired of the Official a couple of years prior (in 1994) concerning the utilization of IVIG in the Florida Medicaid

67

CASE NO:_____

Pharmacy Program.  Bentley informed the Official that the true prices being paid for IVIG by providers were significantly less than the Florida Medicaid Program's reimbursement, Bentley informed the Official that VEN-A-CARE's current cost was approximately $25.00 per gram.  Bentley also informed the Official that the grossly excessive reimbursement by Florida's Medicaid Pharmacy Program was a concealed financial inducement for providers to increase the utilization of IVIG and pay illegal kickbacks to the prescribing physician.  In response to Bentley's request, the Official provided Bentley with data for the utilization and expenditures of IVIG in the Florida Medicaid Pharmacy Program for the second quarter of 1994.  The data indicated approximately 1.1 Million Dollars in utilization.

C.     Since 1994, the utilization and cost to the Medicaid Program of IVIG has increased dramatically and has become a significant expenditure for the Florida Medicaid Pharmacy Program,  approaching approximately 20 Million Dollars annually.

D.     In response to the dramatic increase in utilization of IVIG, the State of Florida Medicaid official  examined Florida's pricing reimbursement and upon review, the Official lowered Florida's reimbursement from approximately $80.00 per gram to approximately $37.00 per gram.

E.     After the reduction of the IVIG reimbursement amount by Florida Medicaid, some, if not all, of the DEFENDANT PHARMACEUTICAL

68

CASE NO: _____

MANUFACTURERS producing IVIG contacted the Official in an effort to reinstate the prior IVIG reimbursement prices.

      F.     Florida requested VEN-A-CARE to provide copies of invoices, catalogues and any other pricing information on IVIG in order to substantiate Florida's reimbursement position for IVIG.

      G.     The State of Florida Medicaid representatives used the information provided by Ven-A-Care in their discussions with certain of the DEFENDANT PHARMACEUTICAL MANUFACTURERS, and, as a result, the manufacturers retreated from their contentions that Florida should continue to pay exorbitant amounts for claims for IVIG and adjusted their price representations.

      92.     The damages sought herein include, but are not limited to, those arising from the specific pharmaceuticals set out in Sections 8 through 28  and elsewhere throughout this  Complaint.  The specific pharmaceuticals set out herein are alleged to meet the specificity required in pleading the claims alleged as required by law.  The damages sought herein encompass all damages and penalties arising from the false claims relating to all pharmaceuticals of all sizes of the DEFENDANT PHARMACEUTICAL MANUFACTURERS about which false price and cost representations and records caused the presentment of false claims for payment and approval.  These claims also encompass recovery of the funds paid due to the false claims, regardless of the person or entity that  ultimately  received  the funds.

69

CASE NO:_____

## SECTION NO. 8

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ████████ | ███ | █████ | ███████ | █████ | █████ |
| ████ | ████████ | ████ | ███ | ████ | ████ |
| ████ | ████████ | ███ | ████ | ███ | ███ |
| ████ | ████████ | ███ | ███ | ███ | ███ |
| ████ | ████████ | ████ | ████ | ████ | █████ |
| ████ | ████████ | ████ | ████ | ████ | █████ |
| ████ | ████████ | ████ | ████ | ████ | ███ |
| ████ | ████████ | ███ | ████ | ███ | |
| ████ | ████████ | ████ | ████ | ███ | ███ |
| ████ | ████████ | ███ | ████ | ████ | ████ |
| ████ | ██████ | ███ | ███ | ███ | ███ |

72

CASE NO:_____

| | | | | | |
|---|---|---|---|---|---|
| ██████ | ██ | ████ | ██████ | ████ | ████ |
| █████ | █████ | ██ | ██ | ██ | ██ |
| ██ | ██████ | ███ | ██ | ██ | ██ |
| ██ | ██████ | ███ | ██ | ██ | ██ |
| ██ | ██████ | ███ | ██ | ██ | ██ |
| █████ | ██████ | ███ | ██ | ██ | ██ |
| █████ | ██████ | ███ | ██ | ██ | ██ |
| █████ | ██████ | ███ | ██ | ██ | ██ |
| █████ | ██████ | ████ | ██ | ██ | ██ |
| █████ | █████ | ██ | ██ | ██ | ██ |
| ██████ | █████ | ██ | ██ | ██ | ██ |
| █████ | ██████ | ███ | ██ | ██ | ██ |
| █████ | ██████ | ██ | ██ | ██ | ██ |

CASE NO:_____

| | | | | | |
|---|---|---|---|---|---|
| ███████ | ██ | | | | |
| ██████ | | █████ | ████████ | ██████ | █████ |
| ██████ | █████████ | ████ | ███ | ████ | ████ |
| ██████ | █████████ | ███ | ███ | ████ | ████ |
| ██████ | █████████ | ███ | ████ | ████ | ████ |
| ██████ | █████████ | ███ | ████ | ████ | ████ |
| ██████ | █████████ | █████ | █████ | █████ | ████ |
| ██████ | █████████ | ███ | ████ | ████ | ████ |
| ██████ | █████████ | ███ | ████ | ████ | ████ |
| ██████ | █████████ | ████ | ████ | ████ | ████ |
| ██████ | █████████ | ███ | ████ | ████ | ████ |
| ██████ | █████████ | █████ | █████ | █████ | ████ |
| ██████ | █████████ | ████ | ███ | █████ | ████ |

CASE NO:_____

CASE NO: _____



95.    The acts of Defendant ▮▮▮▮ in knowingly providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid Program to pay unwittingly excessive amounts for the Defendant's pharmaceuticals.

C.    Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

CASE NO: _____

D.     Were committed knowingly in order to induce financially the Defendant's customers and those acting in concert with them to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar pharmaceuticals of competitors, or prescribe alternative therapies.

E.     Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing pharmaceuticals or alternative therapies.

## SECTION NO. 9



CASE NO:_____

CASE NO:_____

███████████████████████████████████████████████████

████████████████████

| | | ████████████ | | | |
|---|---|---|---|---|---|
| ███████ | ██████ | ████ | ██████████ | ██▇ | ██▇ |
| █▌ | ████████ | ██████ | █████ | ████████ | ████ |
| █▌ | ████████ | █████ | █████ | ██████ | ███ |
| █▌ | ████████ | █████ | █████ | ██████ | ███ |
| █▌ | ████████ | █████ | █████ | ██████ | ███ |
| █▌ | ████████ | █████ | █████ | ██████ | ███ |
| █▌ | ████████ | █████ | ████ | ██████ | ███ |
| █▌ | ████████ | █████ | █████ | ██████ | ███ |
| █▌ | ████████ | █████ | ████ | █████ | ██ |

79

CASE NO: _____

98.     The acts of Defendant ▮▮▮▮ in knowingly providing false and misleading price information to the California Medicaid Program:

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to pay unwittingly excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to induce financially the Defendant's customers and those acting in concert with them to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar pharmaceuticals of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing pharmaceuticals or alternative therapies.

**SECTION NO. 10**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CASE NO:_____

CASE NO:_____

█████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

| | ████████████ | | | | |
|---|---|---|---|---|---|
| █████████ | ██ | ████ | ███████ | ████ | ████ |
| █████ | ███████ | █████ | █████ | █████ | ████ |
| █████ | ███████ | █████ | █████ | █████ | ████ |
| █████ | ███████ | █████ | ████ | ████ | ████ |

CASE NO: _____

| | █████████ | | | | |
|---|---|---|---|---|---|
| ████████ | ██ | ████ | ██████ | ██ █ | ██ █ |
| █ █ | ██████ | ████ | ████ | ████ | ███ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ████ | ██ |
| █ █ | ██████ | ████ | ████ | ███ | ██ |

101.   The acts of Defendant ████████ in knowingly providing false and

misleading price information to the California Medicaid Program:

CASE NO: _____

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar pharmaceuticals of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing pharmaceuticals or alternative therapies.

**SECTION NO: 11**

CASE NO:_____

CASE NO:_____

| | | | | | |
|---|---|---|---|---|---|
| ██████ | ███ | ████ | ████ | ██ | ██ |
| ██████ | ████████ | ███ | ███ | ███ | ███ |
| ██████ | ████████ | ███ | ███ | ███ | ███ |
| ██████ | ████████ | ███ | ███ | ██ | ████ |
| ██████ | ████████ | ███ | ███ | ████ | ██ |
| ██████ | ████████ | ███ | ███ | ███ | ███ |

CASE NO:_____

| | | | | | |
|---|---|---|---|---|---|
| ██████ | ██ | ████ | █████▄ | ██▄█ | ██▄█ |
| █▙ | ██████ | ███ | ██ | ███ | ███ |
| █▙ | ██████ | ███ | ██ | ███ | ███ |
| █▙ | ██████ | ██ | ██ | ██ | ███ |
| █▙ | ██████ | ██ | ██ | ██ | ███ |
| █▙ | ██████ | ██ | ██ | ██ | ██ |
| █▙ | ██████ | ██ | ██ | ██ | ██ |
| █▙ | ██████ | ██ | ██ | ██ | ██ |
| █▙ | ██████ | ██ | ██ | ██ | ███ |
| █▙ | ██████ | ██ | ██ | ██ | ██ |

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ███ | ██ | ███ | █████ | ███ | ███ |
| ███ | █████ | ██ | ██ | ███ | ███ |
| ███ | █████ | ██ | ██ | ███ | ██ |
| ████ | █████ | ███ | ███ | ███ | ██ |
| ████ | █████ | ███ | ███ | ███ | ██ |
| ███ | █████ | ██ | ███ | ███ | ██ |
| ███ | █████ | ███ | ███ | ███ | ██ |
| ███ | █████ | ████ | ███ | ███ | ██ |
| ███ | █████ | ███ | ███ | ███ | ██ |

104.   The acts of Defendant ██████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.   Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

CASE NO: _____

B.     Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.     Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.     Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar pharmaceuticals of competitors, or prescribe alternative therapies.

E.     Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing pharmaceuticals or alternative therapies.

**SECTION NO. 12**

89

CASE NO:_____

CASE NO:_____

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████

| | ████████████ | | | | |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ██████ | █████ | █████ |
| ████ | ██████ | ████ | ████ | ████ | ██ |
| ████ | ██████ | ████ | ████ | ████ | ██ |
| ████ | ██████ | ████ | ████ | ████ | ██ |
| ████ | ██████ | ████ | ████ | ████ | ██ |
| ███ | ████████ | ████ | ████ | ████ | ██ |
| ███ | ████████ | ████ | ████ | ████ | ██ |

CASE NO: _____

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| ███ | ███ | ███ | ███ | ███ | ███ |
| ███ | ███ | ███ | ███ | ███ | ███ |

107.   The acts of Defendant ███████████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.   Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.   Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.   Were committed knowingly in order to  induce financially the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.   Were committed knowingly in order to induce financially the Defendant's customers, and those acting in concert with them, to select the Defendant's drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

CASE NO: _____

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 13**

CASE NO:_____

CASE NO:_____

| | | | | | |
|---|---|---|---|---|---|
| | | ███████████ | | | |
| ██ | ██ | █████ | █████ ██ | ██████ | ██████ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |
| █████ | █████████ | ██ | ██ | ██ | ██ |

CASE NO: _____

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| ██ | ██ | ███ | ████ ██ | ██ | ██ |
| ███ | ████ | ██ | ██ | ██ | ██ |
| ███ | ████ | ██ | ██ | ██ | ██ |

110.    The acts of Defendant ████████████████ in knowingly

providing false and misleading price information to the California Medicaid Program:

A.      Were committed knowingly in order to cause California Medicaid's

Program to pay amounts for claims for the specified pharmaceuticals that substantially

exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid

Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to induce financially the Defendant's

customers, and those acting in concert with them, to cause the Defendant's specified

pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to induce financially the Defendant's

customers, and those acting in concert with them, to select the Defendant's

pharmaceutical products for Medicaid recipients rather than select similar drugs of

competitors, or prescribe alternative therapies.

CASE NO: _____

    E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 14**



97

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |

113.    The acts of Defendant ██████████████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

99

CASE NO: _____

C.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

## SECTION NO. 15

100

CASE NO:_____

CASE NO:_____

███████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████

| ███████████████ | | | | |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ████▄ | █▀ █ | █▀ █ |
| █▄ | ███████ | ███ | ██ | ███ | ██ |
| █▄ | ███████ | ███ | ██ | ███ | ██ |
| █▄ | ███████ | ███ | ██ | ███ | ██ |
| █▄ | ███████ | ███ | ██ | ████ | ███ |
| █▄ | ████████ | █ | ██ | ██ | ██ |
| █▄ | ████████ | █ | ██ | ██ | ██ |
| █▄ | ███████ | █ | ██ | ████ | ██ |
| █▄ | ███████ | ██ | ██ | ████ | ██ |
| █▄ | ███████ | █ | ██ | ██ | ██ |
| █▄ | ████████ | ██ | ██ | ███ | ██ |

102

CASE NO: _____

116.    The acts of Defendant ▮▮▮▮▮▮▮▮ in knowingly providing false and misleading price information to the California Medicaid Program:

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.


**SECTION NO. 16**

**THE SPECIFIC FALSE PRICE AND COST
REPRESENTATIONS OF DEFENDANT
DEY LABORATORIES**


103

CASE NO: _____

117.   At various times from on or before January 1, 1988 and continuing through the present date, Defendant DEY LABORATORIES knowingly caused the State of California's  Medicaid Program to pay false claims for drugs specified in this Section No. 16 and further made or used false records and/or statements to get such claims paid or approved.  As a result of the said actions of Defendant DEY LABORATORIES and those persons and entities acting directly or indirectly in concert with Defendant DEY LABORATORIES, the State of California's Medicaid Program paid grossly excessive, unreasonable and unlawful amounts for claims for the drugs specified in this Section 16. The acts committed by Defendant DEY LABORATORIES that caused the State's Medicaid Program to pay or approve said false claims included, but were not necessarily limited to, knowingly making false representations about prices and costs of the drugs specified in this Section 16 which Defendant DEY LABORATORIES knew or should have known would be relied upon by the State's Medicaid Program in paying or approving claims for the drugs specified in this Section 16.  Each of said representations were material and were relied upon by the State's Medicaid Program in paying or approving claims for the drugs specified in this Section 16.

118.   Defendant DEY LABORATORIES knowingly caused its false price and cost representations to be published in the years specified in this Complaint by  First Data Bank's Automated Services and Medical Economic's Red Book and further made or used false records or statements regarding its prices and costs of the drugs specified in this Section 16 and submitted same to the State's Medicaid Program continuously

104

CASE NO:_____

throughout the years specified in this Section 16. For the purposes of specificity and

particularity, the said false price and cost representations as they were submitted to

First Data Bank in 1996 have been organized into a chart form for each drug  by name,

NDC number, California Medicaid payment Qui Tam Plaintiff's cost, the gross profit and

the gross profit expressed as a percentage.  The amount listed under the Qui Tam

Plaintiff's cost columns reflects the true price that Defendant DEY LABORATORIES

charged the Qui Tam Plaintiff for the drug or caused another entity to charge the Qui

Tam Plaintiff for the drug.  As a very small infusion pharmacy, the Qui Tam Plaintiff

does not always receive the lowest prices available to volume purchasers.  Accordingly,

a comparison of the Qui Tam Plaintiff's costs with the price and cost representations

made by the Defendant DEY LABORATORIES establishes the falsity of DEY

LABORATORIES's representations for the drugs and years specified as follows:

| DEFENDANT DEY | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | MEDI-CAL PAYMENT | Qui Tam Plaintiff's COST | PROVIDER'S GROSS PROFIT $ | PROVIDER'S GROSS PROFIT % |
| Albuterol Sulfate 0.083% 3 ml, 25s | 49502-0697-03 | $28.74 | $8.50 | $20.25 | 238% |
| Albuterol Sulfate 0.083% 3 ml, 30s | 49502-0697-33 | $34.49 | $10.20 | $24.29 | 238% |
| Albuterol Sulfate 0.083%, 3 ml 60s | 49502-0697-60 | $68.98 | $20.40 | $48.58 | 238% |

CASE NO: _____

| DEFENDANT DEY | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | MEDI-CAL PAYMENT | Qui Tam Plaintiff's COST | PROVIDER'S GROSS PROFIT $ | PROVIDER'S GROSS PROFIT % |
| Acetylcysteine Solution 10% 30 ml | 49502-0181-30 | $34.99 | $19.65 | $15.34 | 78% |
| Acetylcysteine Solution 20% 10 ml | 49502-0182-10 | $15.41 | $9.90 | $5.51 | 55% |
| Acetylcysteine Solution 20% 30 ml | 49502-0182-30 | $42.25 | $24.63 | $17.62 | 71% |
| Acetylcysteine Solution 20% 100 ml | 49502-0182-00 | $154.09 | $24.50 | $129.59 | 528% |
| Cromolyn Sodium 2 ml 60s | 49502-0689-02 | $39.90 | $24.50 | $15.40 | 62% |
| Cromolyn Sodium 2 ml 120s | 49502-0689-12 | $79.80 | $49.00 | $30.80 | 62% |
| Metaproterenol Sulfate 0.4% | 49502-0678-03 | $24.34 | $6.25 | $18.09 | 289% |
| Metaproterenol Sulfate 0.6% 2.5 ml 25 s | 49502-0676-03 | $24.34 | $6.25 | $18.09 | 289% |
| Sodium Chloride 0.9% 15 ml | 49502-0830-15 | $13.39 | $5.02 | $8.37 | 166% |
| Sodium Chloride 3% 15 ml 50s | 49502-0640-15 | $48.45 | $27.50 | $20.95 | 76% |

CASE NO: _____

| DEFENDANT DEY | | | | | |
|---|---|---|---|---|---|
| Drug | NDC # | MEDI-CAL PAYMENT | Qui Tam Plaintiff's COST | PROVIDER'S GROSS PROFIT $ | PROVIDER'S GROSS PROFIT % |
| Sodium Chloride 10% 15 ml 50s | 49502-0641-15 | $48.45 | $27.50 | $20.95 | 76% |

119.    The acts of Defendant DEY in knowingly providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

CASE NO: _____

E.    Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 17**

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ██████ | | | | | |
| ██ | ██ | ████ | ████ ██ | ████ | ████ |
| ████ | ██████ | ████ | ████ | ████ | ████ |
| ██ | ██████ | ████ | ████ | ████ | ████ |

122.    The acts of Defendant ████████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.     Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.     Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.     Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.     Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's

110

CASE NO: _____

pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

     E.    Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 18**

111

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ███ | | | | | |
| ██ | | ███ | ██████ | ███ | ████ |
| █████ | ███████ | ██ | ██ | ██ | ██ |
| ███ | ████████ | ██ | ██ | ██ | ██ |
| ███ | ████████ | ██ | ██ | ███ | ██ |
| ████ | ████████ | █ | ██ | ███ | ██ |
| ███ | ███████ | ██ | ██ | ███ | ██ |
| ███ | ██████ | ██ | ██ | ███ | ██ |
| ███ | ██████ | ██ | ██ | ███ | ██ |
| ███ | ██████ | ██ | ██ | ███ | ██ |
| ███ | ██████ | ██ | ███ | ███ | ██ |
| █████ | ███████ | ██ | ██ | ██ | ██ |

125.    The acts of Defendant ██████ in knowingly providing false and
misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's
Program to pay amounts for claims for the specified pharmaceuticals that substantially
exceeded the amounts that would otherwise would have been paid according to law.

113

CASE NO: _____

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 19**

█████████████████████
███████████████████████████
██████████

██     ██████████████████████████████
███████████████████████████████
█████████████████████████████████
███████████████████████████████
██████████████████████████████████
████████████████████████████████

CASE NO:_____

115

CASE NO:_____

███████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████

██████████████████████████

| | | ████████ | | | |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ███ | ██ | ██ |
| ███ | █████ | ████ | ███ | ████ | ██ |
| ███ | █████ | ████ | ███ | ████ | ██ |
| ███ | █████ | █████ | ███ | █████ | ██ |
| ███ | █████ | ███ | ██ | ████ | ██ |
| ███ | █████ | ███ | ██ | ████ | ███ |
| ███ | █████ | ███ | ██ | ████ | ██ |
| ███ | █████ | ████ | ██ | ████ | ██ |
| ███ | █████ | ████ | ███ | ████ | ██ |
| ███ | ████ | ███ | ██ | ███ | ██ |

CASE NO: _____

|  |  |  |  |  |  |
|--|--|--|--|--|--|
|  | ███████████ |  |  |  |  |
| ██ | ██ | ████ | ██████ | ████ | ████ |
| █████ | ██████ | ████ | ████ | ████ | ██ |
| ████ | ██████ | ████ | ████ | ███ | ███ |

128.    The acts of Defendant ██████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

CASE NO:_____

E.     Did in fact cause the Defendant's customers, and those acting in concert

with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid

recipients rather than competing drugs or alternative therapies.

**SECTION NO. 20**

118

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ████ | ████ | ████ |
| ████ | ████ | ████ | ████ | ████ | ██ |
| ████ | ████ | ████ | ████ | ████ | ██ |

131.    The acts of Defendant ████████████████████ in knowingly

providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's

Program to pay amounts for claims for the specified pharmaceuticals that substantially

exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid

Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.    Were committed knowingly in order to financially induce the Defendant's

customers, and those acting in concert with them, to cause the Defendant's specified

pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.    Were committed knowingly in order to financially induce the Defendant's

customers, and those acting in concert with them, to select the Defendant's

pharmaceutical products for Medicaid recipients rather than select similar drugs of

competitors, or prescribe alternative therapies.

CASE NO: _____

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 21**

CASE NO:_____

CASE NO:_____

| ████ | ████ | ████████ | ██████ ███ | ██████ | ██████ |
|------|------|----------|------------|--------|--------|
| ████████ | ██████████ | ████ | ████ | ██████ | ████ |
| ████████ | ██████████ | ████ | ████ | ██████ | ████ |
| ████████ | ██████████ | ████ | ████ | ██████ | ████ |
| ████████ | ██████████ | ████ | ████ | ██████ | ████ |
| ████████ | ██████████ | ████ | ████ | ██████ | ████ |
| ████████ | ██████████ | ████ | ████ | ██████ | ████ |
| ████████ | ██████████ | ██████ | ████ | ████████ | ████ |
| ████████ | ██████████ | ██████ | ██████ | ████████ | ████ |
| ████████ | ██████████ | ██████ | ██████ | ████████ | ████ |
| ████████ | ██████████ | ████ | ████ | ████ | ████ |
| ████████ | ██████████ | ████ | ████ | ████ | ████ |
| ████████ | ██████████ | ████ | ████ | ████ | ████ |
| ████████ | ██████████ | ████ | ████ | ████ | ████ |
| ████████ | ██████████ | ████ | ████ | ████ | ████ |

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ | | | | | |
| ▆▆ | ▆▆ | ▆▆▆ | ▆▆▆▆ | ▆▆▆ | ▆▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆ |
| ▆▆▆▆ | ▆▆▆▆▆ | ▆▆ | ▆▆ | ▆▆ | ▆▆ |

134.    The acts of Defendant ▆▆▆▆▆▆▆▆ in knowingly providing false and misleading price information to the California Medicaid Program:

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

124

CASE NO:_____

C.     Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.     Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.     Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

### SECTION NO. 22



125

CASE NO:_____

CASE NO:_____

█████████████████████████████████████

█████████████████████████████████████

███████████████

| ███████████████ | | | | | |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ███ | ████ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ███ |
| ████████ | ██████████ | ███ | ███ | ███ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ███ |
| ████████ | ██████████ | ███ | ███ | ███ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ███ |
| ████████ | ██████████ | ███ | ███ | ███ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ████ |
| ████████ | ██████████ | ███ | ███ | ████ | ████ |
| ████████ | ██████████ | ███ | ███ | ███ | ███ |

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |

137.   The acts of Defendant ████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

CASE NO: _____

E.      Did in fact cause the Defendant's customers, and those acting in concert

with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid

recipients rather than competing drugs or alternative therapies.

**SECTION NO. 23**

CASE NO:_____

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ■ | ■ | ■ | ■ ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |
| ■ | ■ | ■ | ■ | ■ | ■ |

140.   The acts of Defendant ▇▇▇▇▇▇▇▇ in knowingly providing false and misleading price information to the California Medicaid Program:

A.   Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.   Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.   Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

131

CASE NO: _____

D.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.    Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO: 24**

132

CASE NO:_____

CASE NO: _____

███████████████████████████████████████████

██████████████████████████

| | ████████████████████ | | | | |
|---|---|---|---|---|---|
| ██ | ██ | ████ | ██████ | ████ | ████ |
| █████ | ██████ | ████ | ████ | ████ | ███ |
| █████ | ██████ | ███ | ███ | ████ | ███ |
| █████ | ██████ | ███ | ███ | ████ | ███ |
| ██████ | ██████ | ████ | ███ | █████ | ███ |
| █████ | ██████ | ████ | ███ | █████ | ███ |
| █████ | ███████ | ████ | ███ | █████ | ███ |
| ██████ | ███████ | ██ | ███ | ███ | ███ |
| █████ | ███████ | ██ | ███ | ████ | ███ |
| █████ | ██████ | ███ | ███ | ████ | ███ |
| ██████ | ██████ | ███ | ███ | ████ | ███ |
| ██████ | ██████ | ███ | ███ | ███ | ███ |

143.   The acts of Defendant ████████ in knowingly providing false and

misleading price information to the California Medicaid Program:

134

CASE NO: _____

A.      Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.      Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 25**

███████████████████████
██████████████████████████
████████████

██  ████████████████████████████
████████████████████████████████
████████████████████████████████

CASE NO:_____

CASE NO:_____

██████████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| ██ | ██ | ████ | ██ | ███ | ███ |
| ████ | ██████ | ████ | ████ | ████ | ██ |

146.    The acts of Defendant ████████████████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

137

CASE NO:_____

C.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.      Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 26**



CASE NO:_____

CASE NO: _____

███████████████████████████████████████

███████████████████████████████████████

███████████████████

| | █████████████ | | | | |
|---|---|---|---|---|---|
| ███ | ████ | ██████ | █████████ | ██████ | ██████ |
| █████████ | █████████ | ██████ | █████ | █████ | █████ |
| ███████ | █████████ | ██████ | █████ | █████ | █████ |

149.    The acts of Defendant ██████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's

140

CASE NO: _____

pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.      Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 27**



141

CASE NO:_____

CASE NO: _____

152.    The acts of Defendant ███████████████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.    Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.    Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.    Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

E.    Did in fact cause the Defendant's customers, and those acting in concert with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

143

CASE NO:_____

## SECTION NO. 28

CASE NO:_____

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████

| | ████████ | | | | |
|---|---|---|---|---|---|
| ████ | ████ | █████ | ██████ | ██████ | ██████ |
| ████ | ████████ | █████ | █████ | █████ | ████ |
| ████ | ████████ | ████ | █████ | █████ | ████ |

CASE NO: _____

| | | | | | |
|---|---|---|---|---|---|
| ███ | ███ | ███ | ████ | ████ | ████ |
| █████ | █████ | ███ | ███ | ███ | ███ |

155.   The acts of Defendant ████████ in knowingly providing false and misleading price information to the California Medicaid Program:

A.     Were committed knowingly in order to cause California Medicaid's Program to pay amounts for claims for the specified pharmaceuticals that substantially exceeded the amounts that would otherwise would have been paid according to law.

B.     Were committed knowingly in order to cause California's Medicaid Program to unwittingly pay excessive amounts for the Defendant's pharmaceuticals.

C.     Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to cause the Defendant's specified pharmaceuticals to be utilized for the treatment of Medicaid recipients.

D.     Were committed knowingly in order to financially induce the Defendant's customers, and those acting in concert with them, to select the Defendant's pharmaceutical products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

CASE NO: _____

E.      Did in fact cause the Defendant's customers, and those acting in concert

with them, to utilize the Defendant's specified pharmaceuticals for treatment of Medicaid

recipients rather than competing drugs or alternative therapies.

## COUNT I

### CALIFORNIA FALSE CLAIMS ACT; CAUSING PRESENTATION OF FALSE CLAIMS

156.   This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the

Qui Tam Plaintiff, VEN-A-CARE, on behalf of THE STATE OF CALIFORNIA, against the

Defendants, ███████████████████████████████████

███████████████████████████████████████

██ ███████████████████████████████

█████████████████████████████████████████

█████████████████████████████████

███████████████ DEY LABORATORIES; ██████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

CASE NO:_____

under the California False Claims Act, Cal. Gov. Code §§12651(a)(1) and 12652(c)(1) et. seq.

157.   Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 155 as if fully set forth herein and further alleges as follows:

158.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS from a date on or before January 1, 1988 to the present date, knowingly [as defined in Cal. Gov. Code §§12650(b)(2)] caused to be presented to officers or employees of THE STATE OF CALIFORNIA false claims for payment or approval, in that the DEFENDANT PHARMACEUTICAL MANUFACTURERS caused to be presented to officers or employees of THE STATE OF CALIFORNIA false price and cost information for the pharmaceuticals specified herein and caused THE STATE OF CALIFORNIA to pay out sums of money to the providers and suppliers of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' specified pharmaceuticals, grossly in excess of the amounts permitted by law, resulting in great financial loss to THE STATE OF CALIFORNIA.

159.   Because of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' conduct as set forth in this Count, THE STATE OF CALIFORNIA suffered actual damages in excess of One Hundred Million Dollars ($100,000,000.00), all in violation of Cal. Gov. Code §12651(a)(1).

CASE NO: _____

## COUNT II

**CALIFORNIA FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE CLAIM PAID OR APPROVED BY THE STATE OF CALIFORNIA**

160.    This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the Qui Tam Plaintiff, VEN-A-CARE, on behalf of THE STATE OF CALIFORNIA, against the Defendants, ███████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████ ████████████ DEY LABORATORIES; █████████████████████ █████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ █████████████████████████████████████████████ under the California False Claims Act,   Cal. Gov. Code §§12651(a)(2) and 12652(c)(1) et. seq.

161.    Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 155 as if fully set forth herein and further alleges as follows:

149

CASE NO: _____

162.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS, from a date

on or before January 1, 1988 to the present date, knowingly [as defined in Cal. Gov.

Code §12650(b)(2)] caused false records or statements to be made or used to get false

claims to be paid or approved by THE STATE OF CALIFORNIA, in that the

DEFENDANT PHARMACEUTICAL MANUFACTURERS, caused false records or

statements of prices and costs of the DEFENDANT PHARMACEUTICAL

MANUFACTURERS' pharmaceuticals specified herein to be used by THE STATE OF

CALIFORNIA to pay or approve claims presented by the providers and suppliers of the

DEFENDANT PHARMACEUTICAL MANUFACTURERS' specified pharmaceuticals,

which claims were grossly in excess of the amounts permitted by law, resulting in great

financial loss to THE STATE OF CALIFORNIA.

163.   Because of the DEFENDANT PHARMACEUTICAL MANUFACTURERS'

conduct as set forth in this Count, THE STATE OF CALIFORNIA suffered actual

damages in excess of One Hundred Million Dollars ($100,000,000.00), all in violation of

Cal. Gov. Code §12651(a)(2).

## COUNT III

**CALIFORNIA FALSE CLAIMS ACT; CAUSING FALSE RECORDS OR
STATEMENTS TO BE USED TO CONCEAL AN OBLIGATION
TO PAY MONEY TO THE STATE OF CALIFORNIA**

This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the Qui

Tam Plaintiff, VEN-A-CARE, on behalf of THE STATE OF CALIFORNIA, against the

Defendants, ██████████████████████████████

CASE NO: _____

██████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████ DEY LABORATORIES; ██████████████████

████████████████████████████████████████

██████████████████████ ██████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

under the California False Claims Act,  Cal. Gov. Code §§12651(a)(7) and 12652(c)(1)

et. seq.

164.   Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 155 as if fully set forth herein and further alleges as follows:

165.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS, from a date on or before January 1, 1988 to the present date, knowingly [as defined in  Cal. Gov. Code §12650(b)(2)] caused false records or statements to be made or used to conceal obligations to pay money to THE STATE OF CALIFORNIA, in that: the DEFENDANT PHARMACEUTICAL MANUFACTURERS knew that THE STATE OF CALIFORNIA's Medicaid program was using the DEFENDANT PHARMACEUTICAL

151

CASE NO: _____

MANUFACTURERS' false or fraudulent price and cost representations for purposes of paying or approving claims of the providers and suppliers of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' specified pharmaceuticals; the DEFENDANT PHARMACEUTICAL MANUFACTURERS knew that sums of money paid by THE STATE to the providers and suppliers of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' specified pharmaceuticals were grossly in excess of the amounts permitted by law; the DEFENDANT PHARMACEUTICAL MANUFACTURERS knew it was the obligation of THE STATE OF CALIFORNIA to recoup State funds paid in excess of the amounts permitted by law; the DEFENDANT PHARMACEUTICAL MANUFACTURERS, nevertheless, continued to cause the using and making of false records or statements of prices and costs for the specified pharmaceuticals that were grossly in excess of the reasonable amounts permitted by law; and the DEFENDANT PHARMACEUTICAL MANUFACTURERS thus concealed from THE STATE an obligation of the providers and suppliers of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' specified pharmaceuticals to pay recoupment monies to THE STATE OF CALIFORNIA, resulting in great financial loss to THE STATE OF CALIFORNIA.

166.   Because of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' conduct as set forth in this Count, THE STATE OF California suffered actual damages in excess of One Hundred Million Dollars ($100,000,000.00), all in violation of  Cal. Gov. Code §12651(a)(7).

CASE NO: _____

## COUNT IV

**CALIFORNIA FALSE CLAIMS ACT; CAUSING PRESENTATION OF
FALSE CLAIMS; ILLEGAL REMUNERATION**

167.    This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the

Qui Tam Plaintiff, VEN-A-CARE, on behalf of the STATE OF CALIFORNIA, against the

Defendants, ███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████ DEY LABORATORIES ██████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

under the California False Claims Act,  Cal. Gov. Code §§12651(a)(1) and 12652(c)(1) et.

seq.

168.    Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1

through 155 as if fully set forth herein and further alleges as follows:

CASE NO: _____

169.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS, from on or before  January 1, 1988 to the present date, knew that the prices charged to their customers for the specified pharmaceuticals were significantly reduced in amount from the prices and costs represented by the DEFENDANT PHARMACEUTICAL MANUFACTURERS and upon which the Defendants knew the State's Medicaid claims would be approved and paid.  Accordingly, the DEFENDANT PHARMACEUTICAL MANUFACTURERS have each knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or in the form of illegal remuneration from the State's Medicaid Program to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified pharmaceuticals for which the DEFENDANT PHARMACEUTICAL MANUFACTURERS knew that payment would be made, in whole or in part, by the State's Medicaid Program.  Such financial inducement is specifically prohibited by Federal Statues  42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

170.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS knew that the State's Medicaid Program would not pay or approve claims for the specified pharmaceuticals if it were disclosed to the State's Medicaid Program that said claims were for amounts that included remuneration prohibited by Federal Statue 42 U.S.C. §1320a-7b(b)(2).

171.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS also knew that their customers, in presenting claims for the specified pharmaceuticals to the State's

154

CASE NO: _____

Medicaid Program, would not and did not disclose that the claim amounts included the

remuneration prohibited by Federal Statue 42 U.S.C. §1320a-7b(b)(2).

172.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS' knowing and

willful actions in arranging for their customers to receive remuneration prohibited by

Federal Statue 42 U.S.C. §1320a-7b(b)(2), in causing the omission of material

information from the claims, and in causing the failure to properly disclose and

appropriately reflect the remuneration in the claims,  caused the claims for the specified

pharmaceuticals to be false claims and caused the claims to be presented to the State's

Medicaid Program for payment and approval in violation of  Cal. Gov. Code §12651(a)(1).

173.   Because of the DEFENDANT PHARMACEUTICAL MANUFACTURERS'

conduct as set forth in this Count, THE STATE OF CALIFORNIA suffered actual

damages in excess of One Hundred Million Dollars ($100,000,000.00) all in violation of

Cal. Gov. Code §12651(a)(1).

## COUNT V

### CALIFORNIA FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE CLAIM PAID OR APPROVED BY THE STATE OF CALIFORNIA; ILLEGAL REMUNERATION

174.   This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the

Qui Tam Plaintiff, VEN-A-CARE, on behalf of THE STATE OF CALIFORNIA, against the

Defendants, ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

CASE NO: _____

████████████████████████████████████████

██████████████████████████████████████

████████ DEY LABORATORIES ██████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

under the California False Claims Act,   Cal. Gov. Code §§12651(a)(2) and 12652(c)(1)
et. seq.

175.    Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1
through 155 as if fully set forth herein and further alleges as follows:

176.    The DEFENDANT PHARMACEUTICAL MANUFACTURERS, from on or
before January 1, 1988 to the present date, knew that the prices charged to their
customers for the specified pharmaceuticals were significantly reduced in amount from
the prices and costs represented by the DEFENDANT PHARMACEUTICAL
MANUFACTURERS and upon which the Defendants knew the State's Medicaid claims
would be approved and paid.  Accordingly, the DEFENDANT PHARMACEUTICAL
MANUFACTURERS have each knowingly offered or paid, or caused to be offered or
paid, directly or indirectly, overtly or covertly, in cash or in kind,  remuneration to their

CASE NO: _____

customers in the form of price reductions and/or in the form of illegal remuneration from the State's Medicaid Program to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified pharmaceuticals for which the DEFENDANT PHARMACEUTICAL MANUFACTURERS knew that payment would be made, in whole or in part, by the State's Medicaid Program.  Such financial inducement is specifically prohibited by Federal Statues 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2.

177.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS knew that the State's Medicaid Program would not pay or approve claims for the specified pharmaceuticals if it were disclosed to the State's Medicaid Program that said claims were for amounts that included remuneration prohibited by Federal Statue 42 U.S.C. §1320a-7b(b)(2).

178.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS also knew that their customers, in presenting claims for the specified pharmaceuticals to the State's Medicaid Program, would not and did not disclose that the claim amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2).

179.   The DEFENDANT PHARMACEUTICAL MANUFACTURERS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)2, in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the claims, caused false records or statements to be made and used to get false claims paid or approved by THE STATE for the specified pharmaceuticals.  The DEFENDANT

CASE NO: _____

PHARMACEUTICAL MANUFACTURERS' actions herein caused said false records or statements to be made and used as prohibited by Cal. Gov. Code §12651(a)(2).

180.   Because of the DEFENDANT PHARMACEUTICAL MANUFACTURERS' conduct as set forth in this Count, THE STATE OF CALIFORNIA suffered actual damages in excess of One Hundred Million Dollars ($100,000,000.00), all in violation of Cal. Gov. Code §12651(a)(2).

**PRAYER FOR RELIEF**

WHEREFORE, the Qui Tam Plaintiff, on behalf of THE STATE OF CALIFORNIA, demands:

1.   That judgment be entered in its favor and against Defendants, ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████ DEY LABORATORIES; █████████████████████

██████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

158

CASE NO: _____

███████████████████████████████████

███████████████████████████████████

with judgment to be entered against each Defendant for the amount of damages to the

State's Medicaid Program arising from claims for each Defendant's respective specified

pharmaceuticals; and  from claims arising for those pharmaceuticals classified under

the NDC numbers and HCPCS codes covering their specified pharmaceuticals, jointly

and severally with such other defendants whose pharmaceuticals fall under said NDC

numbers and HCPCS codes, as follows:

    A.    On Count I (California False Claims Act; Causing Presentation of False

        Claims to the STATE OF CALIFORNIA) for triple the amount of THE

        STATE OF CALIFORNIA's damages, plus civil penalties of no more than

        TEN THOUSAND DOLLARS ($10,000.00) for each false claim;

    B.    On Count II (California False Claims Act; Causing False Records or

        Statements To Be Used To Get False Claims Paid By THE STATE OF

        CALIFORNIA) for triple the amount of THE STATE OF CALIFORNIA's

        damages plus civil penalties of no more than TEN THOUSAND DOLLARS

        ($10,000.00) for each false record or statement;

    C.    On Count III (California False Claims Act; causing False Statements To

        Be Used To conceal An Obligation To Pay Money To THE STATE OF

        CALIFORNIA) for triple the amount of THE STATE OF CALIFORNIA's

CASE NO:_____

damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false record or statement used or made;

D.   On Count IV (California False Claims Act; Causing Presentation of False Claims; Illegal Remuneration) for triple the amount of THE STATE OF CALIFORNIA's damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false claim;

E.   On Count V (California False Claims Act; Causing A False Record Or Statement To Be Made Or Used To Get A False Claim Paid Or Approved by THE STATE OF CALIFORNIA; Illegal Remuneration) for triple the amount of THE STATE OF CALIFORNIA's damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false record or statement; and

2.   For all fees and costs of this civil action; and

3.   For such other and further relief as the Court deems just and equitable.

Further, the Qui Tam Plaintiff, on its behalf, requests that it receive thirty percent (33%), or such other maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by THE STATE OF CALIFORNIA, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Qui Tam Plaintiff requests that its percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

160

CASE NO: _____

# DEMAND FOR JURY TRIAL

A jury trial is demanded in this case.

Respectfully submitted,

Plaintiff, The State of California ex. rel.
Ven-A-Care of the Florida Keys, Inc.

_____

M. James Lorenz
California Bar No: 038619
Lorenz, Alhadeff, Cannon & Rose, LLP
550 West "C" Street, 19th Floor
San Diego, California 92101-3540
Telephone:   (619) 231-8700
Facsimile:    (619) 231-8323

OF COUNSEL:

_____

Atlee W. Wampler, III
Florida Bar No. 311227

_____

James J. Breen
Florida Bar No. 297178
WAMPLER, BUCHANAN & BREEN, P.A.
900 Sun Trust Building
777 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 577-0044
Facsimile:    (305) 577-8545

CASE NO: _____

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this _____ day of July, 1998, I caused an original of this Complaint to be filed under seal and <u>in camera</u> for sixty (60) days and not to be served on the Defendants named herein or until further order of this Honorable Court.

      I HEREBY CERTIFY that on this _____ day of July, 1998, I caused a copy of this Complaint and written disclosure of substantially all material evidence and information the Qui Tam Plaintiff possess to be served on the Attorney General of the State of California the same day as the filing of this Complaint by Certified Mail, Return Receipt Requested.

Respectfully submitted,

_____
M. James Lorenz
California Bar No: 038619
Lorenz, Alhadeff, Cannon & Rose, LLP
550 West "C" Street, 19th Floor
San Diego, California 92101-3540
Telephone:   (619) 231-8700
Facsimile:    (619) 231-8323

OF COUNSEL:

_____
Atlee W. Wampler, III
Florida Bar No. 311227

_____
James J. Breen
Florida Bar No. 297178
WAMPLER, BUCHANAN & BREEN, P.A.
900 Sun Trust Building
777 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 577-0044
Facsimile:    (305) 577-8545