# Exhibit 42-3

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben**
**in Support of Defendants' Joint Motion for Partial Summary Judgment**

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Lactulose Solution 10 gm/15 ml 32 oz | 00378-3331-74 | $ 51.97 | $8.88 | $ 43.09 | 485% |
| Loperamide HCL 2 mg Cap 100's | 00378-2100-01 | $ 64.79 | $7.26 | $ 57.53 | 792% |
| Loperamide HCL 2 mg Cap 500's | 00378-2100-05 | $ 298.02 | $33.97 | $ 264.05 | 777% |
| Lorazepam 0.5 mg Tab 100's | 3078-0321-01 | $ 64.36 | $14.16 | $ 50.20 | 355% |
| Lorazepam 0.5 mg Tab 500's | 00378-0321-05 | $ 314.50 | $67.25 | $ 247.25 | 368% |
| Lorazepam 1.0 mg Tab 100's | 00378-0457-01 | $ 84.31 | $18.00 | $ 66.31 | 368% |
| Lorazepam 1.0 mg Tab 500's | 00378-0457-05 | $ 408.55 | $85.47 | $ 323.08 | 378% |
| Lorazepam 1.0 mg Tab 1000's | 00378-0457-10 | $ 801.04 | $161.99 | $ 639.05 | 395% |
| Lorazepam 2.0 mg Tab 100's | 3078-0777-01 | $ 122.03 | $27.16 | $ 94.87 | 349% |
| Lorazepam 2.0 mg Tab 500s | 00378-0777-05 | $ 596.74 | $129.02 | $ 467.72 | 363% |
| Methotrexate 2.5 mg Tab 100's | 00378-0014-01 | $ 302.77 | $42.01 | $ 260.76 | 621% |
| Methyldopa 250 mg Tab 100's | 00378-0611-01 | $ 33.92 | $6.53 | $ 27.39 | 419% |
| Nadolol 20 mg Tab 100's | 00378-0028-01 | $ 85.31 | $7.25 | $ 78.06 | 1077% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Nadolol 40 mg Tab 100's | 00378-1171-01 | $ 99.75 | $11.97 | $ 87.78 | 733% |
| Nadolol 40 mg Tab 1000's | 00378-1171-10 | $ 977.27 | $113.14 | $ 864.13 | 764% |
| Nadolol 80 mg Tab 100's | 00378-1132-01 | $ 135.19 | $20.16 | $ 115.03 | 571% |
| Nadolol 80 mg Tab 1000's | 00378-1132-10 | $ 1,321.74 | $195.07 | $ 1,126.67 | 578% |
| Nicardipine HCL 20 mg Cap 90's | 00378-1020-77 | $ 39.14 | $8.84 | $ 30.30 | 343% |
| Nicardipine HCL 20 mg Cap 500's | 00378-1020-05 | $ 212.15 | $46.65 | $ 165.50 | 355% |
| Nicardipine HCL 30 mg Cap 90's | 00378-1430-77 | $ 56.05 | $14.86 | $ 41.19 | 277% |
| Nicardipine HCL 30 mg Cap 500's | 00378-1430-05 | $ 304.29 | $78.38 | $ 225.91 | 288% |
| Nitrofurantoin 50 mg Cap 100's | 00378-1650-01 | $ 67.64 | $17.68 | $ 49.96 | 283% |
| Nitrofurantoin 50 mg Cap 500's | 00378-1650-05 | $ 324.24 | $83.98 | $ 240.26 | 286% |
| Nitrofurantoin 10 mg Cap 100's | 00378-1700-01 | $ 115.71 | $31.42 | $ 84.29 | 268% |
| Nortriptyline HCL 10 mg Cap 100's | 00378-1410-01 | $ 41.14 | $3.73 | $ 37.41 | 1003% |
| Nortriptyline HCL 25 mg Cap 100's | 00378-2325-01 | $ 81.80 | $5.38 | $ 76.42 | 1420% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Nortriptyline HCL 50 mg Cap 100's | 00378-3250-01 | $ 154.19 | $6.75 | $ 147.44 | 2184% |
| Nortriptyline HCL 75 mg Cap 100's | 00378-4175-01 | $ 234.94 | $8.40 | $ 226.54 | 2697% |
| Orphenadrine Cit. ER 100 mg 100's | 00378-3358-01 | $ 206.63 | $64.91 | $ 141.72 | 218% |
| Orphenadrine Cit. ER 100 mg 500's | 00378-3358-05 | $ 837.90 | $308.32 | $ 529.58 | 172% |
| Orphenadrine w/AC 385/30/26 mg 100's | 00378-3354-01 | $ 75.53 | $21.30 | $ 54.23 | 255% |
| Orphenadrine w/AC 770/60/50 mg 100's | 00378-3356-01 | $ 109.63 | $28.40 | $ 81.23 | 286% |
| Pentoxifyline ER 400 mg Tab 100's | 00378-0357-01 | $ 60.85 | $15.82 | $ 45.03 | 285% |
| Perphenazine / AMITRIP 2/10 Tab 100's | 0378-0330-01 | $ 24.89 | $2.61 | $ 22.28 | 854% |
| Perphenazine/AMITRIP 2/10/Tab 500's | 00378-0330-05 | $ 121.70 | $12.38 | $ 109.32 | 883% |
| Perphenazine/ AMITRIP 2/25/ Tab 100's | 00378-0442-01 | $ 28.88 | $3.50 | $ 25.38 | 725% |
| Perphenazine/ AMITRIP 2/25/ Tab 500's | 00378-0442-05 | $ 141.17 | $14.79 | $ 126.38 | 855% |
| Perphenazine/ AMITRIP 4/10 Tab 100's | 00378-0042-01 | $ 28.41 | $3.61 | $ 24.80 | 687% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Pindolol 5 mg Tab 100's | 00378-0052-01 | $ 69.16 | $5.56 | $ 63.60 | 1144% |
| Pindolol 10 mg Tab 100's | 00378-0127-01 | $ 94.24 | $8.65 | $ 85.59 | 989% |
| Piroxicam 10 mg Cap 100's | 00378-1010-01 | $ 133.76 | $3.61 | $ 130.15 | 3605% |
| Piroxicam 20 mg Cap 100's | 00378-2020-01 | $ 250.71 | $4.38 | $ 246.33 | 5624% |
| Piroxicam 20 mg Cap 500's | 00378-2020-05 | $ 1,228.54 | $19.53 | $ 1,109.01 | 5678% |
| Prazosin HCL 1 mg Cap 100's | 00378-1101-01 | $ 27.31 | $3.67 | $ 23.64 | 644% |
| Prazosin HCL 1 mg Cap 1000's | 00378-1101-10 | $ 257.36 | $28.22 | $ 229.14 | 812% |
| Prazosin HCL 2 mg Cap 100's | 00378-2302-01 | $ 35.48 | $4.21 | $ 31.27 | 743% |
| Prazosin HCL 2 mg Cap 1000's | 00378-2302-10 | $ 336.21 | $35.68 | $ 300.53 | 842% |
| Prazosin HCL 5 mg Cap 100's | 00378-3205-01 | $ 60.56 | $7.56 | $ 53.00 | 701% |
| Prazosin HCL 5 mg Cap 250's | 00378-3205-25 | $ 147.87 | $19.44 | $ 128.43 | 661% |
| Prednisolone Syrup 15 mg/5 ml 210 ml | 00378-3425-24 | $ 70.78 | $9.44 | $ 61.34 | 650% |
| Prednisolone Syrup 15 mg/5 ml 480 ml | 00378-3425-48 | $ 113.24 | $18.88 | $ 94.36 | 500% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Probenecid 500 mg Tab 100's | 00378-0156-01 | $ 209.86 | $37.28 | $ 172.58 | 463% |
| Prochlorperazine MAL 5 mg 100's | 00378-5105-01 | $ 56.53 | $18.07 | $ 38.46 | 213% |
| Prochlorperazine MAL 10 mg 100's | 00378-5110-01 | $ 85.03 | $27.24 | $ 57.79 | 212% |
| Propoxyphene /APAP 65/650 Tab 100's | 00378-0130-01 | $ 28.88 | $7.07 | $ 21.81 | 308% |
| Propoxyphene /APAP 65/650 Tab 500's | 00378-0130-05 | $ 137.18 | $30.32 | $ 106.86 | 352% |
| Propranolol HCL 10 mg Tab 100's | 00378-0182-01 | $ 18.72 | $2.08 | $ 16.64 | 800% |
| Propranolol HCL 10 mg Tab 1000's | 00378-0182-10 | $ 184.02 | $8.58 | $ 175.44 | 2045% |
| Propranolol HCL 20 mg Tab 100's | 00378-0183-01 | $ 24.99 | $2.38 | $ 22.61 | 950% |
| Propranolol HCL 20 mg Tab 1000's | 00378-0183-10 | $ 241.40 | $9.47 | $ 231.93 | 2449% |
| Propranolol HCL 40 mg Tab 100's | 00378-0184-01 | $ 37.81 | $2.84 | $ 34.79 | 1225% |
| Propranolol HCL 40 mg Tab 1000's | 00378-0184-10 | $ 370.98 | $17.17 | $ 353.81 | 2061% |
| Propranolol HCL 80 mg Tab 100's | 00378-0185-01 | $ 45.13 | $3.49 | $ 41.64 | 1193% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Propranolol HCL 80 mg Tab 500's | 00378-0185-05 | $ 442.32 | $13.03 | $ 429.29 | 3295% |
| Propranolol HCTZ 25 - 40 mg Tab 100's | 00378-0731-01 | $ 34.06 | $3.05 | $ 31.01 | 1017% |
| Propranolol HCTZ 25 - 80 mg Tab 100's | 00378-0347-01 | $ 41.85 | $4.47 | $ 37.38 | 836% |
| Ranitidine 150 mg Tab 60's | 00378-3252-91 | $ 90.56 | $4.36 | $ 86.20 | 1977% |
| Ranitidine 150 mg Tab 100's | 00378-3252-01 | $ 148.39 | $7.34 | $ 141.05 | 1922% |
| Ranitidine 150 mg Tab 500's | 00378-3252-05 | $ 772.07 | $34.88 | $ 737.19 | 2114% |
| Ranitidine 300 mg Tab 30's | 00378-3254-93 | $ 83.53 | $5.33 | $ 78.20 | 1467% |
| Ranitidine 300 mg Tab 100's | 00378-3254-01 | $ 272.37 | $15.98 | $ 256.39 | 1604% |
| Ranitidine 300 mg Tab 500's | 00378-3254-05 | $ 1,347.48 | $81.52 | $ 1,265.96 | 1553% |
| Spironolactone 25 mg Tab 100's | 00378-2146-01 | $ 39.43 | $11.91 | $ 27.52 | 231% |
| Spironolactone 25 mg Tab 500's | 00378-2146-05 | $ 193.04 | $55.55 | $ 137.49 | 248% |
| Spironolactone/HCTZ 25/25 Tab 100's | 00378-0141-01 | $ 42.47 | $13.23 | $ 29.24 | 221% |
| Spironolactone/HCTZ 25/25 Tab 500's | 00378-0141-05 | $ 205.87 | $62.16 | $ 143.71 | 231% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Terazosin HCL 10 mg Cap 100's | 00378-1570-01 | $ 152.48 | $41.27 | $ 111.21 | 270% |
| Terazosin HCL 1 mg Cap 100's | 00378-2260-01 | $ 152.48 | $41.27 | $ 111.21 | 270% |
| Terazosin HCL 2 mg Cap 100's | 00378-2264-01 | $ 152.48 | $41.27 | $ 111.21 | 270% |
| Terazosin HCL 5 mg Cap 100's | 00378-2268-01 | $ 152.48 | $41.27 | $ 111.21 | 270% |
| Thioridazine HCL 10 mg Tab 100's | 00378-0612-01 | $ 31.54 | $6.28 | $ 25.26 | 402% |
| Thioridazine HCL 10 mg Tab 1000's | 00378-0612-10 | $ 308.85 | $61.54 | $ 247.31 | 402% |
| Thioridazine HCL 25 mg Tab 100's | 00378-0614-01 | $ 44.37 | $7.82 | $ 36.55 | 467% |
| Thioridazine HCL 25 mg Tab 1,000's | 00378-0614-10 | $ 434.53 | $73.37 | $ 361.16 | 492% |
| Thioridazine HCL 50 mg Tab 100's | 00378-0616-01 | $ 55.48 | $11.44 | $ 44.04 | 385% |
| Thioridazine HCL 50 mg Tab 1000's | 00378-0616-10 | $ 534.19 | $120.71 | $ 413.48 | 343% |
| Thioridazine HCL 100 mg Tab 100's | 00378-0618-01 | $ 63.18 | $15.64 | $ 47.54 | 304% |
| Thioridazine HCL 100 mg Tab 1000's | 00378-0618-10 | $ 612.94 | $160.35 | $ 452.59 | 282% |
| Thiothixene 1 mg Cap 100's | 00378-1001-01 | $ 21.85 | $3.89 | $ 17.96 | 462% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Thiothixene 2 mg Cap 100's | 00378-2002-01 | $ 28.88 | $5.15 | $ 23.73 | 461% |
| Thiothixene 2 mg Cap 1,000's | 00378-2002-10 | $ 280.06 | $51.18 | $ 228.91 | 447% |
| Thiothixene 5 mg Cap 100's | 00378-3005-01 | $ 43.80 | $7.60 | $ 36.20 | 476% |
| Thiothixene 5 mg Cap 1000's | 00378-3005-10 | $ 425.22 | $73.13 | $ 352.09 | 482% |
| Thiothixene 10 mg Cap 100's | 00378-5010-01 | $ 61.75 | $10.65 | $ 51.10 | 480% |
| Thiothixene 10 mg Cap 1,000's | 00378-5010-10 | $ 599.26 | $111.83 | $ 487.43 | 436% |
| Timolol Maleate 5 mg Tab 100's | 00378-0055-01 | $ 29.17 | $8.23 | $ 20.94 | 254% |
| Timolol Maleate 10 mg Tab 100's | 00378-0221-01 | $ 36.39 | $12.55 | $ 23.84 | 190% |
| Timolol Maleate 20 mg Tab 100's | 00378-0715-01 | $ 67.36 | $22.37 | $ 44.99 | 201% |
| Tolazamide 25 mg Tab 100's | 00378-0217-01 | $ 24.42 | $6.17 | $ 18.25 | 296% |
| Tolazamide 500 mg Tab 100's | 00378-0551-01 | $ 51.40 | $11.46 | $ 39.94 | 349% |
| Tolbutamide 500 mg Tab 100's | 00378-0215-01 | $ 26.89 | $7.40 | $ 19.49 | 263% |
| Tolbutamide 500 mg Tab 500's | 00378-0215-05 | $ 125.40 | $34.61 | $ 90.79 | 262% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Triamter/HCTZ 37.5/25 Cap 100's | 00378-2537-01 | $  37.43 | $11.18 | $   26.25 | 235% |
| Triamter/HCTZ 37.5/25 Cap 1000's | 00378-2537-10 | $ 363.09 | $106.23 | $  256.86 | 242% |
| TriamterHCTZ 37.5/25 Tab 100's | 00378-1352-01 | $  33.92 | $10.35 | $   23.60 | 228% |
| Triamter/HCTZ 37.5/25 Tab 500's | 00378-1352-05 | $ 167.49 | $44.85 | $  122.64 | 274% |
| Triamterene/HCTZ 75/50 Tab 100's | 00378-1355-01 | $  84.27 | $2.53 | $   81.74 | 3231% |
| Triamterene/HCTZ 75/50 Tab 500's | 00378-1355-05 | $ 408.69 | $9.41 | $  399.28 | 4243% |
| Trifluoperazine HCL 1 mg 100's | 00378-2401-01 | $  55.39 | $10.60 | $   44.79 | 423% |
| Trifluoperazine HCL 2 mg 100's | 00378-2402-01 | $  81.61 | $15.34 | $   66.27 | 432% |
| Trifluoperazine HCL 5 mg 100's | 00378-2405-01 | $ 102.79 | $17.73 | $   85.06 | 480% |
| Trifluoperazine HCL 5 mg 500's | 00378-2405-05 | $ 498.75 | $84.24 | $  414.51 | 492% |
| Trifluoperazine HCL 10 mg 100's | 00378-2410-01 | $ 154.95 | $23.59 | $  131.36 | 557% |
| Trifluoperazine HCL 10 mg 500's | 00378-2410-05 | $ 751.17 | $112.04 | $  639.13 | 570% |
| Verapamil 80 mg Tab 100's | 00378-0512-01 | $  29.21 | $3.49 | $   25.72 | 737% |

| DEFENDANT MYLAN | | | | | |
|---|---|---|---|---|---|
| Drug | NDC# | Medi-Cal Payment | Qui-tam Plaintiff's Cost | Provider's Gross Profit $ "Spread" | Spread As % Of Actual Cost |
| Verapamil 80 mg Tab 1000's | 00378-0512-10 | $ 270.70 | $30.71 | $ 239.99 | 781% |
| Verapamil 120 mg Tab 500's | 00378-0772-05 | $ 171.29 | $21.90 | $ 149.39 | 682% |
| Verapamil HCL ER 120 mg Tab 100's | 00378-1120-01 | $ 86.45 | $45.26 | $ 41.19 | 91% |
| Verapamil HCL ER 240 mg Tab 100's | 00378-0411-01 | $ 120.65 | $13.61 | $ 107.04 | 787% |
| Verapamil HCL ER 240 mg Tab 500's | 00378-0411-05 | $ 585.01 | $58.29 | $ 526.72 | 904% |
| Verapamil HCL ER 120 mg Caps 100's | 00378-6320-01 | $ 130.25 | $41.27 | $ 88.98 | 216% |
| Verapamil HCL ER 180 mg Caps 100's | 00378-6380-01 | $ 136.71 | $44.84 | $ 91.87 | 205% |
| Verapamil HCL ER 240 mg Caps 100's | 00378-6440-01 | $ 154.66 | $49.52 | $ 105.14 | 212% |

186. In addition to falsely inflating its drug price representations for Medicaid reimbursement purposes, DEFENDANT MYLAN failed to pay Medi-Cal the full amount of the Medicaid rebate required by 42 U.S.C. §1396r-8(b)(1)(A) for drugs specified herein. Medicaid rebate amounts are intended to enable the Medicaid programs to benefit from the best drug prices available to large commercial customers. DEFENDANT MYLAN was required to truthfully report AMP for the specified drugs to CMS. The Medicaid rebate amount is sufficient to meet the intent of the Rebate Program only when MYLAN's AWP amounts, used for Medi-Cal reimbursement, are also truthfully reported. MYLAN's AMP reports for the specified drugs are excessively less than its reports of AWP. Accordingly, MYLAN's false reports of prices include

1   any AMPs that it understated and/or AWPs that it overstated. Medi-Cal's expenditures increased

2   as a direct result of DEFENDANT MYLAN'S underpayment of its Medicaid rebate obligations,

3   and/or manipulation of Medicaid reimbursement amounts.

4       187.   The acts of DEFENDANT MYLAN in knowingly providing false and misleading

5   price information to Medi-Cal:

6       a.   Were committed knowingly in order to cause Medi-Cal to pay amounts for

7   claims for the drugs that substantially exceeded the amounts that would otherwise have been paid

8   according to law.

9       b.   Were committed knowingly in order to cause Medi-Cal to unwittingly pay

10   excessive amounts for the DEFENDANT's drugs.

11       c.   Were committed knowingly in order to financially induce the

12   DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

13   drugs to be utilized for the treatment of Medicaid recipients.

14       d.   Were committed knowingly in order to financially induce the

15   DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's

16   drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

17   alternative therapies.

18       e.   Did in fact cause the DEFENDANT's customers, and those acting in concert

19   with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

20   competing drugs or alternative therapies.

21                               **SECTION NO. 29**

24   188.



189.

190.    The acts of DEFENDANT ▓▓▓ in knowingly providing false and misleading price information to Medi-Cal:

a.    Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

b.    Were committed knowingly in order to cause Medi-Cal to unwittingly pay excessive amounts for the DEFENDANT's drugs.

c.    Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's drugs to be utilized for the treatment of Medicaid recipients.

d.    Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's drugs products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

e.    Did in fact cause the DEFENDANT's customers, and those acting in concert with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 30**

191.

First Amended Complaint                                     119                                     Case No. 722855



192.

193.    The acts of DEFENDANT ████████████████ in knowingly providing false and misleading price information to Medi-Cal:

    a.    Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

    b.    Were committed knowingly in order to cause Medi-Cal to unwittingly pay excessive amounts for the DEFENDANT's drugs.

    c.    Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's drugs to be utilized for the treatment of Medicaid recipients.

    d.    Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

    e.    Did in fact cause the DEFENDANT's customers, and those acting in concert with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO: 31**



194.

195.

///



196.    The acts of DEFENDANT ▆▆▆▆▆▆ in knowingly providing false and misleading price information to Medi-Cal:

a.    Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

b.      Were committed knowingly in order to cause Medi-Cal to unwittingly pay excessive amounts for the DEFENDANT's drugs.

c.      Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's drugs to be utilized for the treatment of Medicaid recipients.

d.      Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe alternative therapies.

e.      Did in fact cause the DEFENDANT's customers, and those acting in concert with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than competing drugs or alternative therapies.

**SECTION NO. 32**

197.

198.



199. The acts of DEFENDANT ▮▮▮▮▮ in knowingly providing false and misleading price information to Medi-Cal:

      a.     Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

      b.     Were committed knowingly in order to cause Medi-Cal to unwittingly pay excessive amounts for the DEFENDANT's drugs.

      c.     Were committed knowingly in order to financially induce the DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

1    drugs to be utilized for the treatment of Medicaid recipients.

2           d.    Were committed knowingly in order to financially induce the

3    DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's

4    drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

5    alternative therapies.

6           e.    Did in fact cause the DEFENDANT's customers, and those acting in concert

7    with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

8    competing drugs or alternative therapies.

9    / / /

10    / / /

11    / / /

12

13    **SECTION NO. 33**

14    ███████████████████████████████

15    ██████████████████████████

16    200.    ████████████████████████████████████████

17    ████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████

20    ████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████

22    ████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████

26    ████████████████████████████████████████████████████

27    ████████████████████████████████████████████████████

28    201.    ████████████████████████████████████████

First Amended Complaint        126        Case No. 722855



202.   The acts of DEFENDANT [REDACTED] in knowingly providing false and misleading price information to Medi-Cal:

      a.   Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

      b.   Were committed knowingly in order to cause Medi-Cal to unwittingly pay

1   excessive amounts for the DEFENDANT's drugs.

2           c.      Were committed knowingly in order to financially induce the

3   DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

4   drugs to be utilized for the treatment of Medicaid recipients.

5           d.      Were committed knowingly in order to financially induce the

6   DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's

7   drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

8   alternative therapies.

9           e.      Did in fact cause the DEFENDANT's customers, and those acting in concert

10  with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

11  competing drugs or alternative therapies.

12  / / /

13                          **SECTION NO. 34**

14

15

16      203.

17

18

19

20

21

22

23

24

25

26

27

28



204.    The acts of DEFENDANT ▮▮▮▮▮ in knowingly providing false and misleading price information to Medi-Cal:

a.    Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

b.    Were committed knowingly in order to cause Medi-Cal to unwittingly pay excessive amounts for the DEFENDANT's drugs.

c.    Were committed knowingly in order to financially induce the

1   DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

2   drugs to be utilized for the treatment of Medicaid recipients.

3         d.      Were committed knowingly in order to financially induce the

4   DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's

5   drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

6   alternative therapies.

7         e.      Did in fact cause the DEFENDANT's customers, and those acting in concert

8   with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

9   competing drugs or alternative therapies.

10   / / /

11   / / /

12   / / /

13   / / /

14                    **SECTION NO. 35**

15   ████████████████████████████████████

16   ████████████████████████████████████

17   205. ███████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████

26   ████████████████████████████████████████

27   ████████████████████████████████████████

28   ████████████████████████████████████████



206.

207.   The acts of the ██████████ DEFENDANTS In knowingly providing false and misleading price information to Medi-Cal:

a.      Were committed knowingly in order to cause Medi-Cal to pay amounts for

1   claims for drugs that substantially exceeded the amounts that would otherwise have been paid

2   according to law.

3          b.      Were committed knowingly in order to cause Medi-Cal to unwittingly pay

4   excessive amounts for the DEFENDANTS' drugs.

5          c.      Were committed knowingly in order to financially induce the

6   DEFENDANTS' customers, and those acting in concert with them, to cause the DEFENDANTS'

7   drugs to be utilized for the treatment of Medicaid recipients.

8          d.      Were committed knowingly in order to financially induce the

9   DEFENDANTS' customers, and those acting in concert with them, to select the DEFENDANTS'

10  drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

11  alternative therapies.

12         e.      Did in fact cause the DEFENDANTS' customers, and those acting in

13  concert with them, to utilize the DEFENDANTS' drugs for treatment of Medicaid recipients rather

14  than competing drugs or alternative therapies.

15                          **SECTION NO. 36**

16  ████████████████████████████████

17  ████████████████████████████████

18      208.  ████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████

25  ████████████████████████████████████

26  ████████████████████████████████████

27  ████████████████████████████████████

28  ████████████████████████████████████



209.

210.   The acts of DEFENDANT ███████ in knowingly providing false and

1  misleading price information to Medi-Cal:

2     a.  Were committed knowingly in order to cause Medi-Cal to pay amounts for

3  claims for drugs that substantially exceeded the amounts that would otherwise have been paid

4  according to law.

5     b.  Were committed knowingly in order to cause Medi-Cal to unwittingly pay

6  excessive amounts for the DEFENDANT's drugs.

7     c.  Were committed knowingly in order to financially induce the

8  DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

9  drugs to be utilized for the treatment of Medicaid recipients.

10     d.  Were committed knowingly in order to financially induce the

11  DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's

12  drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

13  alternative therapies.

14     e.  Did in fact cause the DEFENDANT's customers, and those acting in concert

15  with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

16  competing drugs or alternative therapies.

17           **SECTION NO. 37**



20    211.



212.

213.    The acts of DEFENDANT ████████████████ in knowingly providing false and misleading price information to Medi-Cal:

a.      Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid according to law.

b.      Were committed knowingly in order to cause Medi-Cal to pay unwittingly excessive amounts for the DEFENDANT's drugs.

First Amended Complaint                        136                        Case No. 722855

1          c.     Were committed knowingly in order to financially induce the

2    DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

3    drugs to be utilized for the treatment of Medicaid recipients.

4          d.     Were committed knowingly in order to financially induce the

5    DEFENDANT's customers and those acting in concert with them to select the DEFENDANT's

6    drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

7    alternative therapies.

8          e.     Did in fact cause the DEFENDANT's customers, and those acting in concert

9    with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

10   competing drugs or alternative therapies.

11   ///

12   ///

13   ///

14

15   **SECTION NO. 38**

16   ██████████████████████████████████

17   ████████████████████

18   214.   ███████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████████

25   ██████████████████████████████████████████████████████████

26   ██████████████████████████████████████████████████████████

27   ██████████████████████████████████████████████████████████

28   ██████████████████████████████████████████████████████████



215. ████████████████████████████████████

216.   The acts of DEFENDANT ██████ in knowingly providing false and misleading price information to Medi-Cal:

    a.    Were committed knowingly in order to cause Medi-Cal to pay amounts for claims for drugs that substantially exceeded the amounts that would otherwise have been paid

1  according to law.

2     b.  Were committed knowingly in order to cause Medi-Cal to unwittingly pay

3  excessive amounts for the DEFENDANT's drugs.

4     c.  Were committed knowingly in order to financially induce the

5  DEFENDANT's customers, and those acting in concert with them, to cause the DEFENDANT's

6  drugs to be utilized for the treatment of Medicaid recipients.

7     d.  Were committed knowingly in order to financially induce the

8  DEFENDANT's customers, and those acting in concert with them, to select the DEFENDANT's

9  drug products for Medicaid recipients rather than select similar drugs of competitors, or prescribe

10  alternative therapies.

11     e.  Did in fact cause the DEFENDANT's customers, and those acting in concert

12  with them, to utilize the DEFENDANT's drugs for treatment of Medicaid recipients rather than

13  competing drugs or alternative therapies.

14  / / /

15            **SECTION NO. 39**

16  ██████████████████████████████████████████

17  ██████████████████████████████████████████

18  ██████████████████████████████████████████

19     217.  In addition to the fraud arising from DEFENDANTS' reporting of inflated prices

20  and costs for Medi-Cal reimbursement purposes, many of the DEFENDANTS including

21  ██████████████████████████████████████████

22  ██, MYLAN, ████████████████████████████████

23  ██████████████████████████████████████████

24  ████████████ underpaid the federal Medicaid rebate amounts each was legally required to pay

25  by falsifying periodic submissions to CMS in violation of 31 U.S.C. §3729(a)(7).

26     218.  After hearings in 1989, Congress concluded that the Federal government, as the

27  largest payor for prescription drugs, was paying significantly more under the State's Medicaid

28  Programs than certain private payors. See, e.g., Skyrocketing Drug Prices: Hearings Before the

1   Special Committee on Aging, United States Senate, 101st. Congress, 290-297 (1989).

2   219.   Congress addressed this inequity in OBRA 1990, which established the Medicaid

3   Rebate Program. PL-101-508, 104 Stat. 1388 (1990) . The stated purpose of the Rebate Program

4   was to give the State Medicaid Programs the "benefit of the best price for which a manufacturer

5   [sold] a prescription drug to any. . . . private purchaser." H.R. Rep. No. 101-881, at 96 (1990).

6   220.   The Rebate Program requires all manufacturers whose drugs are paid for by

7   Medicaid to enter into an agreement with the Secretary of the Department of Health and Human

8   Services, under which the manufacturer agrees to pay each State a quarterly rebate. The amount

9   received by  a State in rebates is considered a reduction in the total amount expended under any

10   given State's plan.  Therefore, the less any given State receives in rebates, the greater the total

11   amount expended by the State.

12   221.   At all times relevant to this First Amended Complaint, the basic rebate amount for

13   single source drugs and innovator multiple source drugs (collectively "innovator drugs") was equal

14   to the product of:

15          a.      the total number of units sold of each dosage form and strength dispensed

16   multiplied by

17          b.      the "Average Manufacturers Price" ("AMP") minus the manufacturer's

18   "Best Price" ("BP") (There is a minimum rebate amount of 15.1% of the units sold times AMP

19   used only if BP is greater than 84.9% of AMP).

20   222.   Pursuant to 42 U.S.C. §1396r-8, BP is  defined as the following:

21          (i)     The term "best price" means, with respect to a single source drug or
               innovator multiple source drug of a manufacturer, the lowest price
22             available from the manufacturer during the rebate period to any wholesaler,
               retailer, provider, health maintenance organization, nonprofit entity, or
23             government entity within the United States, excluding - -

24          (I)     any prices charged on or after October 1, 1992, to the Indian Health
               Service, the Department of Veterans Affairs, a State home
25             receiving funds under section 1741 of title 38, United States Code,
               the Department of Defense, the Public Health Service, or a covered
26             entity described in subsection (a)(5)(B);

27          (II)    any prices charged under the Federal Supply Schedule of the
               General Services Administration;

28

1      (III) any prices used under a State pharmaceutical assistance program; and

2

3      (IV) any depot prices and single award contract prices, as defined by the Secretary, of any agency of the Federal Government.

4   (ii) Special rules.  The term "best price" - -

5      (I) shall be inclusive of cash discounts, free goods that are contingent on any purchase requirement, volume discounts, and rebates (other

6         than rebates under this section);

7      (II) shall be determined without regard to special packaging, labeling, or identifiers on the dosage form or product or package; and

8

9      (III) shall not take into account prices that are merely nominal in amount.

10   223. Pursuant to 42 U.S.C.S. § 1396r-8 AMP means, during the rebate period, "the

11 average price paid to the manufacturer for the drug in the United States by wholesalers for drugs

12 distributed to the retail pharmacy class of trade, after deducting customary prompt pay discounts."

13   224. At all times relevant to this First Amended Complaint, the basic rebate for all other

14 prescription (non-innovator) drugs was equal to the product of:

15   a. the total number of units dispensed multiplied by

16   b. the AMP   multiplied by

17   c. 11%

18   225. Manufacturers report their AMP's and BP's  to CMS on a quarterly basis.  CMS,

19 in turn, calculates the rebate amount as either AMP minus BP (or uses the 15.1% minimum) for

20 innovator drugs) or AMP multiplied by 11% for non-innovator drugs.  CMS then forwards the

21 figures by NDC number (the identification number for each dosage and unit size for each drug)

22 to each State, including California.  California then multiplies the rebate amount by the number

23 of units that the State paid for during the quarter for each NDC number to determine the rebate

24 amount due and submits the requested amount to the manufacturer for payment.  The manufacturer

25 remits this payment on a quarterly basis, withholding any disputed amount.

26   226. Throughout the relevant period each of the REBATE DEFENDANTS knew that

27 CMS used the information the REBATE DEFENDANTS supplied to it to calculate the rebate

28 amount and also knew that CMS transmitted the rebate amounts it had calculated to Medi-Cal

1   which then multiplied that figure by the number of units paid for a given drug.

2      227.   At all times relevant to this First Amended Complaint each of the REBATE

3   DEFENDANTS took advantage of the fact that the Medi-Cal rebate amount is less for a drug if

4   it is classified as a non-innovator than the rebate amount for that same drug if it is classified as an

5   innovator drug (or a biological which is classified as an innovator drug). They accomplished this

6   by falsely reporting drugs (or biologicals), including those listed in this Section, to CMS as non-

7   innovator drugs when they were, in fact, innovator drugs (or biologicals). They thereby directly

8   employed their false statements about these drugs to CMS to decrease a payment owed to Medi-

9   Cal under the Rebate Program. The allegations in this Section include all the drugs or biologicals

10   which the REBATE DEFENDANTS falsely identified as a non-innovator for purposes of the

11   Medicaid Rebate Program.

12      228.   The REBATE DEFENDANTS had an additional financial motive for falsely

13   reporting that their drugs were non-innovators under the Rebate Program. By falsely reporting a

14   drug as being a non-innovator, they also stood to gain more financially from reporting inflated

15   prices and costs for their drugs for Medi-Cal reimbursement purposes. This is because the rebate

16   calculation for an innovator drug is the number of units sold times the difference between AMP

17   minus BP. Therefore, if a drug manufacturer seeks to increase the Spread by offering discounts

18   off an innovator drug's reported costs or prices, the BP number for rebate calculation purposes will

19   decrease thereby directly increasing the amount of rebate which the drug manufacturer must pay

20   for the drugs under the Rebate Program. On the other hand, if a drug is classified as a non-

21   innovator, the rebate calculation is not dependent on the BP number as it  is simply the number

22   of units sold times AMP times 11%. Therefore, in the case of non-innovator drugs the drug

23   manufacturers can offer providers deep discounts off the reported costs and prices without ever

24   increasing their rebate obligation.

25      229.   ██████████████████████████████████████ the Medicaid

26   Rebate fraud scheme alleged herein is based on the requirement that all distributors, repackagers,

27   or relabelers who distribute a given prescription drug must classify their drug as an innovator drug

28   when another drug manufacturer holds an NDA for that drug. 42 U.S.C. § 1396r-8(k)(5)(B).

Also, the Medicaid rebate statute defines "innovator multiple source drug" as a multiple source drug that was originally marketed under an original new drug application ("NDA") approved by the Food & Drug Administration ("FDA").  42 U.S.C. §1396r-8(k)(7)(A)(ii).

230.  ████████████████████████████ knowingly reported that certain of their drugs reimbursed by Medi-Cal were non-innovator drugs, when in fact, they were drugs which ██████████████████ distributed and for which another drug manufacturer held an NDA.  Therefore, ████████████████████ were required to identify these drugs as innovator drugs for Medicaid rebate purposes. ████████████ ████████████ quarterly submissions to CMS regarding these certain drugs resulted in under-payments to the Medi-Cal program and constituted a false claim in violation of the California False Claims Act §12651(a)(7).  With respect to these DEFENDANTS, the following chart lists who distributed the specific drug and dosage at issue, the company actually holding the patent (and that filed the NDA), the NDA approval number and the time period during which the respective DEFENDANT falsely reported that the subject drug was a non-innovator for Medicaid rebate purposes:



231.

232.





233.

234.

235.    In addition to the Medicaid rebate fraud arising from false reporting of innovator drugs as non-innovators by DEFENDANTS which distributed a drug for which another manufacturer held the NDA or which misidentified biologicals as non-innovators, DEFENDANTS

1   MYLAN, ████████████████████████████████████████████████████

2   ████████████████████████████████████████████ directly misrepresented

3   to CMS that innovator drugs for which they themselves held the NDA were non-innovators.

4   DEFENDANTS ███████████████████████████████████████████████

5   ██████ MYLAN, ██████████████████████████████████████████

6   ████████████████████████████████████ quarterly submissions to CMS

7   regarding these certain drugs resulted in under-payments to Medi-Cal and constituted false claims

8   in violation of the California False Claims Act §12651(a)(7). The chart attached hereto Exhibit 15

9   identifies each of these drugs by NDC number and the time period during which the false reporting

10  took place.

11        236.    As a result of the REBATE DEFENDANTS' submissions of false claims, the State

12  of California has suffered actual damages in excess of one million dollars ($1,000,000), all in

13  violation of the California False Claims Act and the California Unfair Business Practices Act.

## COUNT I

### CALIFORNIA FALSE CLAIMS ACT;
### CAUSING PRESENTATION OF FALSE CLAIMS

16        237.    ████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28

1   ████████████████████████████████████████████████;

2   MYLAN   PHARMACEUTICALS,   INC.; ███████████████████████

3   ████████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████████████ under, the California False Claims Act,   Cal.   Gov.   Code

11  §§12651(a)(1) and 12652(c)(1) et. seq.

12      238.    Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 231

13  as if fully set forth herein and further alleges as follows:

14      239.    The DEFENDANT DRUG MANUFACTURERS from a date on or before January

15  1, 1988 to the present date ████████████ for which the relevant time period extends to the first

16  quarter of 2001), knowingly [as defined in Cal. Gov. Code §§12650(b)(2)] caused to be presented

17  to officers or employees of THE STATE OF CALIFORNIA false claims for payment or approval,

18  in that the DEFENDANT DRUG MANUFACTURERS caused to be presented to officers or

19  employees of THE STATE OF CALIFORNIA false price and cost information for the drugs

20  named herein, and others, and caused THE STATE OF CALIFORNIA to pay out sums of money

21  to the providers and suppliers of the DEFENDANT DRUG MANUFACTURERS' drugs, grossly

22  in excess of the amounts contemplated by law, resulting in great financial loss to THE STATE OF

23  CALIFORNIA.

24      240.    This count also applies with respect to the REBATE DEFENDANTS and their false

25  quarterly submissions to CMS in connection with the Medicaid rebate program and as explained

26  in Section 37 herein.

27      241.    Because of the DEFENDANT DRUG MANUFACTURERS' conduct as set forth

28  in this Count, THE STATE OF CALIFORNIA suffered actual damages in excess of One Hundred

1    Million Dollars ($100,000,000.00), all in violation of Cal. Gov. Code §12651(a)(1).

2    **COUNT II**

3    **CALIFORNIA FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR**
     **STATEMENT TO BE MADE OR USED TO GET A FALSE**
4    **CLAIM PAID OR APPROVED BY THE STATE OF CALIFORNIA**

5        242.    This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the Qui

6    Tam Plaintiff, VEN-A-CARE, on behalf of THE STATE OF CALIFORNIA, against the

7    ███████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████████████████

11   ███████████████████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████████

18   MYLAN  PHARMACEUTICALS,  INC.; ████████████████████████████████████

19   ███████████████████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████████████████

21   ███████████████████████████████████████████████████████████████████

22   ███████████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████████████████

26   ████████████████████████████under the California False Claims Act, Cal. Gov. Code

27   §§12651(a)(2) and 12652(c)(1) et. seq.

28       243.    Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 231

First Amended Complaint                    150                    Case No. 722855

1    as if fully set forth herein and further alleges as follows:

2        244.   The DEFENDANT DRUG MANUFACTURERS, from a date on or before January

3    1, 1988 to the present date ████████████████ for which the relevant time period extends to the first

4    quarter of 2001), knowingly [as defined in   Cal. Gov. Code §12650(b)(2)] caused false records

5    or statements to be made or used to get false claims  to be paid or approved by THE STATE OF

6    CALIFORNIA, in that the DEFENDANT DRUG MANUFACTURERS, caused false records or

7    statements of prices and costs of the DEFENDANT DRUG MANUFACTURERS' drugs named

8    herein, and others, to be used by THE STATE OF CALIFORNIA to pay or approve claims

9    presented by the providers and suppliers of the DEFENDANT DRUG MANUFACTURERS'

10   drugs, which claims were grossly in excess of the amounts contemplated by law, resulting in great

11   financial loss to THE STATE OF CALIFORNIA.

12       245.   This count also applies with respect to the REBATE DEFENDANTS and their false

13   quarterly submissions to CMS in connection with the Medicaid rebate program as explained in

14   Section 37 herein.

15       246.   Because of the DEFENDANT DRUG MANUFACTURERS' conduct as set forth

16   in this Count, THE STATE OF CALIFORNIA suffered actual damages in excess of One Hundred

17   Million Dollars ($100,000,000.00), all in violation of Cal. Gov. Code §12651(a)(2).

18   **COUNT III**

19   **CALIFORNIA FALSE CLAIMS ACT; CAUSING PRESENTATION OF**
   **FALSE CLAIMS; ILLEGAL REMUNERATION**

20

21       247.   This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the Qui

22   Tam Plaintiff, VEN-A-CARE, on behalf of the STATE OF CALIFORNIA, against the

23

24

25

26

27

28



1  [redacted]

2  [redacted]

3  [redacted]

4  [redacted]

5  [redacted]

6  MYLAN   PHARMACEUTICALS,   INC.;   [redacted]

7  [redacted]

8  [redacted]

9  [redacted]

10  [redacted]

11  [redacted]

12  [redacted]

13  [redacted]

14  [redacted]   under the  California  False  Claims  Act,   Cal. Gov. Code

15  §§12651(a)(1) and 12652(c)(1) et. seq.

16      248.    Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 231

17  as if fully set forth herein and further alleges as follows:

18      249.    The DEFENDANT DRUG MANUFACTURERS, from on or before  January 1,

19  1988 to the present date  [redacted]  for which the relevant time period extends to the first

20  quarter of 2001), knew that the prices charged to their customers for the drugs named herein, and

21  others, were significantly reduced in amount from the prices and costs represented by the

22  DEFENDANT DRUG MANUFACTURERS and upon which the DEFENDANTs knew Medi-Cal

23  claims  would  be  approved  and  paid.    Accordingly,  the  DEFENDANT  DRUG

24  MANUFACTURERS have each knowingly offered or paid, or caused to be offered or paid,

25  directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers in the

26  form of price reductions and/or in the form of illegal remuneration from Medi-Cal to induce them

27  to purchase, order or arrange or to recommend purchasing, arranging or ordering the drugs for

28  which the DEFENDANT DRUG MANUFACTURERS knew that payment would be made, in

1  whole or in part, by Medi-Cal. Such financial inducement is specifically prohibited by Federal

2  Statutes 42 U.S.C. §1320a-7b(b)(2) and 18 U.S.C §2, and the Medi-Cal anti-kickback statute, Cal.

3  Welfare & Inst. Code, §14107.2.

4          250.    The DEFENDANT DRUG MANUFACTURERS knew that Medi-Cal would not

5  pay or approve claims for the specified drugs if it were disclosed to Medi-Cal that said claims

6  were for amounts that included remuneration prohibited by Federal Statute 42 U.S.C. §1320a-

7  7b(b)(2) and Cal. Welfare & Inst. Code, §14107.2.

8          251.    The DEFENDANT DRUG MANUFACTURERS also knew that their customers,

9  in presenting claims for the specified drugs to Medi-Cal, would not and did not disclose that the

10  claim amounts included the remuneration prohibited by Federal Statute 42 U.S.C. §1320a-7b(b)(2)

11  and by Cal. Welfare & Inst. Code, §14107.2.

12          252.    The DEFENDANT DRUG MANUFACTURERS' knowing and willful actions in

13  arranging for their customers to receive remuneration prohibited by Federal Statute 42 U.S.C.

14  §1320a-7b(b)(2) and by Cal. Welfare & Inst. Code, §14107.2., in causing the omission of material

15  information from the claims, and in causing the failure to properly disclose and appropriately

16  reflect the remuneration in the claims, caused the claims for the specified drugs to be false claims

17  and caused the claims to be presented to Medi-Cal for payment and approval in violation of Cal.

18  Gov. Code §12651(a)(1).

19          253.    Because of the DEFENDANT DRUG MANUFACTURERS' conduct as set forth

20  in this Count, THE STATE OF CALIFORNIA suffered actual damages in excess of One Hundred

21  Million Dollars ($100,000,000.00) all in violation of Cal. Gov. Code §12651(a)(1).

22                              **COUNT IV**

23       **CALIFORNIA FALSE CLAIMS ACT; CAUSING A FALSE RECORD OR
         STATEMENT TO BE MADE OR USED TO GET**

24       **A FALSE CLAIM PAID OR APPROVED BY THE
         STATE OF CALIFORNIA; ILLEGAL REMUNERATION**

25

26          254.    This is a civil action by the Plaintiff, THE STATE OF CALIFORNIA, and the Qui

27  Tam Plaintiff, VEN-A-CARE, on behalf of THE STATE OF CALIFORNIA, against the

28



1

2

3

4

5

6

7

8

9

10                                                                                        ;

11   MYLAN   PHARMACEUTICALS,   INC.;

12

13

14

15

16

17

18

19                                        under the California False Claims Act,     Cal. Gov. Code

20   §§12651(a)(2) and 12652(c)(1) et. seq.

21        255.   Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 231

22   as if fully set forth herein and further alleges as follows:

23        256.   The DEFENDANT DRUG MANUFACTURERS, from on or before January 1,

24   1988 to the present date                         for which the period extends to first quarter 2001),

25   knew that the prices charged to their customers for the drugs named herein, and others, were

26   significantly reduced in amount from the prices and costs represented by the DEFENDANT

27   DRUG MANUFACTURERS and upon which the DEFENDANTs knew Medi-Cal claims would

28   be approved and paid. Accordingly, the DEFENDANT DRUG MANUFACTURERS have each

1  knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or

2  covertly, in cash or in kind, remuneration to their customers in the form of price reductions and/or

3  in the form of illegal remuneration from Medi-Cal to induce them to purchase, order or arrange

4  or to recommend purchasing, arranging or ordering drugs for which the DEFENDANT DRUG

5  MANUFACTURERS knew that payment would be made, in whole or in part, by Medi-Cal. Such

6  financial inducement is specifically prohibited by Federal Statutes 42 U.S.C. §1320a-7b(b)(2) and

7  18 U.S.C §2 and by Cal. Welfare & Inst. Code, §14107.2.

8      257.   The DEFENDANT DRUG MANUFACTURERS knew that Medi-Cal would not

9  pay or approve claims for such drugs if it were disclosed to Medi-Cal that said claims were for

10  amounts that included remuneration prohibited by Federal Statue 42 U.S.C. §1320a-7b(b)(2) and

11  by Cal. Welfare & Inst. Code, §14107.2.

12     258.   The DEFENDANT DRUG MANUFACTURERS also knew that their customers,

13  in presenting claims for such drugs to Medi-Cal, would not and did not disclose that the claim

14  amounts included the remuneration prohibited by 42 U.S.C. §1320a-7b(b)(2) and by Cal. Welfare

15  & Inst. Code, §14107.2.

16     259.   The DEFENDANT DRUG MANUFACTURERS' knowing and willful actions in

17  arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b)2 and

18  by Cal. Welfare & Inst. Code, §14107.2, in causing the omission of material information from the

19  claims, and in causing the failure to properly disclose and appropriately reflect the remuneration

20  in the claims, caused false records or statements to be made and used to get false claims paid or

21  approved by THE STATE for such drugs. The DEFENDANT DRUG MANUFACTURERS'

22  actions herein caused said false records or statements to be made and used as prohibited by Cal.

23  Gov. Code §12651(a)(2).

24     260.   Because of the DEFENDANT DRUG MANUFACTURERS' conduct as set forth

25  in this Count, THE STATE OF CALIFORNIA suffered actual damages in excess of One Hundred

26  Million Dollars ($100,000,000.00), all in violation of Cal. Gov. Code §12651(a)(2).

27  ## COUNT V

28  ## FALSE CLAIMS ACT; CAUSING FALSE RECORDS

**OR STATEMENTS TO BE USED TO DECREASE
AN OBLIGATION TO PAY MONEY OR
PROPERTY TO THE GOVERNMENT**

261.    This is a civil action by the Plaintiff, STATE OF CALIFORNIA, and the Qui Tam Plaintiff, VEN-A-CARE, on behalf of the STATE OF CALIFORNIA, against the REBATE DEFENDANTS under the California False Claims Act §12651(a)(7).

262.    The Qui Tam Plaintiff realleges and incorporates by reference paragraphs 1 through 231 as if fully set forth herein and further alleges as follows:

263.    The REBATE DEFENDANTS knowingly [as defined in Cal. Gov. Code §12650(b)(2)] caused false records or statements to be made or used to decrease an obligation to pay or transmit money or property to Medi-Cal in that each of the REBATE DEFENDANTS knew its obligation under the United States Rebate Program, 42 U.S.C. 1396r-8, to make and use truthful records or statements regarding covered outpatient drugs to determine the required amount of rebate that each DEFENDANT DRUG manufacturer had to pay to each State's Medicaid Program. The REBATE DEFENDANTS nevertheless, have continued to make, use or cause to be made or used false records or statements regarding the covered outpatient drugs in order to decrease an obligation to pay or transmit money or property to Medi-Cal for DEFENDANT's drugs that it should have paid thus directly resulting in great financial loss to the State's Government. The REBATE DEFENDANTS each caused records to be made or used to decrease their Medicaid Rebate obligation to pay money or property to the Medi-Cal by falsely indicating in their rebate submissions that rebates were payable at the non-innovator rate when in fact they were payable at the higher innovator rate for the drugs specified in Section 39 above in the case of the REBATE DEFENDANTS, by understating AMP in the case of MYLAN and ███████████████ ███████    The REBATE DEFENDANTS thus caused great financial loss to the State of California.

264.    Because of the REBATE DEFENDANTS' conduct as set forth in this Count, the State Government suffered actual damages in excess of One Million Dollars ($1,000,000.00), all in violation of Cal. Gov. Code §12651(a)(7).

**PRAYER FOR RELIEF**

1    WHEREFORE, the Qui Tam Plaintiff, on behalf of THE STATE OF CALIFORNIA,

2   demands:

3        1.    That judgment be entered in its favor and against DEFENDANTs, ████████

4   ████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████          MYLAN

15  PHARMACEUTICALS,   INC.; ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████    with judgment to be entered against each DEFENDANT for the

24  amount of damages to Medi-Cal arising from claims for each DEFENDANT's respective drugs;

25  and from claims arising for those pharmaceuticals classified under the NDC numbers and HCPCS

26  codes covering their pharmaceuticals, jointly and severally with such other DEFENDANTs whose

27  drugs fall under said NDC numbers and HCPCS codes, as follows:

28       A.    On Count I (California False Claims Act; Causing Presentation of False  Claims

First Amended Complaint                    157                    Case No. 722855

to the STATE OF CALIFORNIA) for triple the amount of THE STATE OF CALIFORNIA's damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false claim;

B.   On Count II (California False Claims Act; Causing False Records or Statements To Be Used To Get False Claims Paid By THE STATE OF CALIFORNIA) for triple the amount of THE STATE OF CALIFORNIA's damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false record or statement;

C.   On Count III (California False Claims Act; Causing Presentation of False Claims; Illegal Remuneration) for triple the amount of THE STATE OF CALIFORNIA's damages, plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false claim;

D.   On Count IV (California False Claims Act; Causing A False Record Or Statement To Be Made Or Used To Get A False Claim Paid Or Approved by THE STATE OF CALIFORNIA; Illegal Remuneration) for triple the amount of THE STATE OF CALIFORNIA's damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false record or statement; and

E.   On Count V - (California False Claims Act; Causing False Records or Statements To Be Used To Decrease An Obligation To Pay Money Or Property To The Government) for triple the amount of THE STATE OF CALIFORNIA'S damages plus civil penalties of no more than TEN THOUSAND DOLLARS ($10,000.00) for each false record or statement.

F.   For all fees and costs of this civil action; and

G.   For such other and further relief as the Court deems just and equitable.

Further, the Qui Tam Plaintiff, on its behalf, requests that it receive the maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by THE STATE OF CALIFORNIA, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Qui Tam Plaintiff requests that its award be based upon

1  the total value recovered, both tangible and intangible, including any amounts received from

2  individuals or entities not parties to this action.

3                                                   Respectfully submitted,

4                                                   Plaintiff, The State of California ex. rel.
                                                    Ven-A-Care of the Florida Keys, Inc.
5

6                                                   _____
                                                    David B. Zlotnick, SBN 195607
                                                    1010 Second Avenue, Suite 1750
7                                                   San Diego, CA 92010
                                                    (619) 232-0331
8
   OF COUNSEL:
9
   THE BREEN LAW FIRM
10 James J. Breen, Florida Bar No. 297178
   Alison W. Simon, Florida Bar No. 0109568
11 The Crossroad Building
   8201 Peters Road, Suite 1000
12 Plantation, Florida 33324
   (954) 916-2713
13
   BERGER & MONTAGUE, P.C.
14 Sherrie R. Savett
   Susan S. Thomas
15 Jeanne A. Markey
   Joy Clairmont
16 1622 Locust Street
   Philadelphia, PA 19103
17 (215) 875-3000

18
   GOODE, CASSEB, JONES,
19  RIKLIN, CHOATE & WATSON
   John E. Clark
20 2122 North Main Avenue
   San Antonio, Texas 78212-9680
21 (210) 733-6030

22

23

24

25

26

27

28

First Amended Complaint                        159                          Case No. 722855

1

**DEMAND FOR JURY TRIAL**

2

A jury trial is demanded in this case as to all issues so triable.

3

Respectfully submitted,

4

Plaintiff, The State of California ex. rel.
Ven-A-Care of the Florida Keys, Inc.

5

6

_____
David B. Zlotnick, SBN 195607
1010 Second Avenue, Suite 1750
San Diego, CA 92010
(619) 232-0331

7

8

OF COUNSEL:

9

THE BREEN LAW FIRM
James J. Breen, Florida Bar No. 297178
Alison W. Simon, Florida Bar No. 0109568
The Crossroad Building
8201 Peters Road, Suite 1000
Plantation, Florida 33324
(954) 916-2713

10

11

12

13

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Susan S. Thomas
Jeanne A. Markey
Joy Clairmont
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

14

15

16

17

18

GOODE, CASSEB, JONES,
 RIKLIN, CHOATE & WATSON
John E. Clark
2122 North Main Avenue
San Antonio, Texas 78212-9680
(210) 733-6030

19

20

21

22

23

24

25

26

27

28

First Amended Complaint

160

Case No. 722855

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of _____, I caused an original of this First Amended Complaint to be filed under seal and <u>in camera</u> for sixty (60) days and not to be served on the DEFENDANTS named herein or until further order of this Honorable Court.

I HEREBY CERTIFY that on this _____ day_____, I caused a copy of this First Amended Complaint and written disclosure of substantially all material evidence and information the Qui Tam Plaintiff possess to be served on the Attorney General of the State of California the same day as the filing of this First Amended Complaint by Certified Mail, Return Receipt Requested.

Respectfully submitted,


_____
David Zlotnick

OF COUNSEL:

THE BREEN LAW FIRM
James J. Breen, Florida Bar No. 297178
Alison W. Simon, Florida Bar No. 0109568
The Crossroad Building
8201 Peters Road, Suite 1000
Plantation, Florida 33324
(954) 916-2713

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Susan S. Thomas
Jeanne A. Markey
Joy Clairmont
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

GOODE, CASSEB, JONES,
 RIKLIN, CHOATE & WATSON
John E. Clark
2122 North Main Avenue
San Antonio, Texas 78212-9680
(210) 733-6030