# Exhibit 44

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Philip D. Robben**
**in Support of Defendants' Joint Motion for Partial Summary Judgment**

LYNN S. CARMAN, State Bar 028860
Medicaid Defense Fund
28 Newport Landing Dr.
Novato, CA 94949-8214
Telephone: (415) 927-4023
Facsimile : (415) 499-1687
Email:      a7827@comcast.net

STANLEY L. FRIEDMAN, State Bar 120551
445 S. Figueora St., 27th Floor
Los Angeles, CA  90071-1631
Telephone: (213) 629-1500
Facsimile : (213) 489-6899
Email:     friedman@friedmanlaw.org

Attorneys for Plaintiffs Independent Living Center
of Southern California, Inc.; Gerald Shapiro, Pharm.D.,
dba Uptown Pharmacy & Gift Shoppe; Sharon Steen,
dba Central Pharmacy; and Tran Pharmacy, Inc., dba
Tran Pharmacy

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MANAGED PHARMACY CARE, a California corporation;[1] INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, INC., a California corporation; GERALD SHAPIRO, Pharm.D., doing business as Uptown Pharmacy & Gift Shoppe; SHARON STEEN, doing business as Central Pharmacy; and Tran Pharmacy, Inc., a California corporation,<br>　　　　　　　Plaintiffs,<br>-vs.-<br>DAVID MAXWELL-JOLLY, Director of Department of Health Care Services of the State of California,<br>　　　　　　　Defendant. | CV-09-0382 CAS (MANx)<br><br>Date:　　Feb. 23, 2009<br>Time:　　10 a.m.<br>Courtroom:　5<br>Judge:　　Honorable Christina A. Snyder<br><br>**PLAINTIFFS' NOTICE OF MOTION, AND MOTION, FOR PRELIMINARY INJUNCTION**<br>**and**<br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION** |

---

[1] This plaintiff, Managed Pharmacy Care "MPC") was dismissed as a plaintiff on January 26, 2009 by virtue of filing a voluntary dismissal of MPC's causes of action in this case.

**NOTICE OF MOTION, AND MOTION**

**TO THE DEFENDANT DAVID MAXWELL-JOLLY, Director of the Department of Health Care Services of the State of California, and your counsel:**

**PLEASE TAKEN NOTICE** that on February 23, 2009, in Courtoom 5 of the above entitled Court, located at 312 N. Spring Street, Los Angeles, California, that each and all of the Plaintiffs (except the plaintiff MANAGED PHARMACY CARE who has been dismissed from this case), will move the Court, -- and the said Plaintiffs do hereby move the Court, -- for a preliminary and permanent injunction to be issued to command the defendant, DAVID MAXWELL-JOLLY, Director of California Department of Health Care Services, to set aside his preempted policy to implement § 14105.19 Welf. & Inst. Code, of AB 1183, and the 5% Rate Reduction, and, to refrain from implementing the same; including but not limited to refraining from reducing payments by 5 percent or by any other deduction, to pharmacy providers in the Medi-Cal fee-for-sevice program, for services furnished on and after March 1, 2009; together with sith such other relief as may be just.

Said motion shall be made upon all grounds set forth in the Plaintiffs' Memorandum in Support of Preliminary Injunction which is set forth below.

The said motion shall be made and based upon this Notice of Motion, the above-stated Motion, and the aforesaid Plaintiffs' Memorandum in Support of Preliminary Injunction; and upon all Declarations served and filed herewith; and upon Requests for Judicial Notice filed herewith or which may be filed before or at the said hearing; and upon

//
//
//
//

-1-

1 | oral argument.
2 | Dated: February 2, 2009
3 | LYNN S. CARMAN
  | STANLEY L. FRIEDMAN
4 | By:    /s/ Lynn S. Carman
  |     Attorneys for Plaintiffs
5 |     Independent Living Center of Southern California, Inc.;
  |     Gerald Shapiro, Pharm.D. dba Uptown Pharmacy & Gift
6 |     Shoppe; Sharon Steen, dba Central Pharmacy; Tran
  |     Pharmacy, dba Tran Pharmacy; Vietnamese American
7 |     Pharmacy Association; and California Korean Pharmacists
  |     Association

***********************

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

This is a Supremacy Clause preemption case.[2]

Plaintiffs are:

-- three pharmacies who are providers in the Medi-Cal fee-for-service program;

-- an independent living center whose disabled clients are Medi-Cal fee-for-service;

who seek preliminary injunction, to order the Director ("Director") of the California Department of Health Care Services ("Department") to set aside his action and policy to implement, and to refrain from implementing, Section 45 of Assembly Bill (AB) 1183, (enacted Sept. 30, 2008 as Stats. 2008, Chapter 758), which enacts (new) § 14105.191, subds. (a) and (b)(3) Cal. Welf. & Inst. Code, which legislatively command and requires

---

[2] The Supremacy Clause (article VI, cl. 2 of U.S. Constitution) provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, . . . shall be the supreme law of the land; and the judges of every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary, notwithstanding."

-2-

the Director, without fail, to cut payments 5% to pharmacies in the Medi-Cal fee-for-service program, for dates of service on and after **March 1, 2008.**

More particularly, § 14105.191, subds. (a) and (b)(3), provide:

> "(a) Notwithstanding any other provision of law, **in order to implement changes in the level of funding for health care services,** the director shall reduce provider payments, as specified in this section.
> (b) . . . (3) Except as provided in subdivision (d), for dates of service on and after March 1, 2009, Medi-Cal fee-for-service payments to pharmacies shall be reduced by 5 percent.
> . . . (e) Notwithstanding Chapter 3.5 (commencing with Section 11340) of {Part 1 of Division 3 of Title 2, of the Government Code, the department may implement this section by means of a provider bulletin, or similar instruction, without taking regulatory action." (Boldface emphasis supplied.)

Sec. 76 of AB 1183 provided:

> "**This act is an emergency statute** necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. **The facts constituting the necessity are:**
> **In order to make the necessary statutory changes to implement the Budget Act of 2008** at the earliest possible time, it is necessary that this act take effect immediately." (Boldfrace emphasis supplied.)

However, these provisions of Sec. 45 of AB 1183, and the Legislature's action to enact these provisions, and the action of the Director to adopt a policy to implement these provisions of Sec. 45 of AB 1183, including reducing payments 5% to pharmacies in the Medi-Cal fee-for-service program for services on and after March 1, 2009, are contrary to and are in direct conflict with the below federal Medicaid statutes, so as to be preempted, -- due to the Supremacy Clause, -- by the below preempting federal statutes; namely:

- the "quality of care" clause of subd. (a)(30)(A) of 42 U.S.C. § 1396a, -- herein, "Sec. 30(A);[3] and,

---

[3] The "quality of care" clause of Sec. 30(A) provides in relevant part:

> "(a) A state plan for medical assistance must– (30)(A) provide such methods and procedures relating to the . . . payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care . . . "

-3-

- the "equal access" clause of Sec. 30(A).[4]

Further, as shown by the voluminous declarations filed in support of preliminary injunction, this aforesaid State action and statute, and the state action and policy of the Director to adopt and implement the 5% pharmacy payment reduction, foreseeably reduces the payments to pharmacies in the Medi-Cal fee-for-service program so low that (1) the reduced Medi-Cal payments to pharmacies for their cost to acquire both brand drugs and many generic drugs will be less than **what the pharmacies pay** both **to acquire these brand drugs** and **to acquire a large percentage of generic drugs**; plus (3) **is so low that the new reduced $6.88 dispensing fee** to be paid under AB 1183 is at least **$4.61 less than the $11.49 it costs pharmacies in overhead**, on average, to dispense a prescription.

Accordingly, as the direct inevitable result of the 5% reduced rate, pharmacies throughout the state, including the three Plaintiff pharmacies, will stop dispensing all brand prescriptions and many generic prescriptions, in the Medi-Cal fee-for-service program, causing immediate and widespread injury, and continual threat of injury, to millions of Medi-Cal beneficiaries, **including the patients of the three pharmacy Plaintiffs, and the 7,000-plus dusabled Medi-Cal recipients who are the clients of the Plaintiff independent living center;** -- all due to their inability or difficulty in obtaining life-necessary brand medicines, and generic medicines, caused by the 5% pharmacy rate

---

[4] The "equal access" clause of Sec. 30(A) provides in relevant part:

> "(a) A state plan for medical assistance must– (30)(A) provide such methods and procedures relating to the . . . payment for, care and services available under the the plan . . . as may be necessary . . . to assure that payments  . . . are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."

-4-

reduction.

Further, the declarations of:

- Plaintiff Sharon Steen, owner of Central Pharmacy in Santa Monica,

- Plaintiff Thu-Hang Tran, Pharm.D., owner of Tran Pharmacy and president of the 20-pharmacy-member Vietnamese American Pharmacy Association in Orange County,

- Martin Kim, R.Ph., president of the 130-pharmacy-member California Korean Pharmacists Association in Southern California,

establish that another further direct effect of the 5% rate cut is that hundreds of thousands of mental patients, -- who depend on highpriced psychotropic brand drugs such as Zyoprexa, Seroquel, Abilifyt, Geodon, Lamictal, Wllbrutin, Effexor, Lesapro, to stay out of Emergency Rooms and institutions, -- will be unable to obtain these brand medications because pharmacies, not being reimbursed their cost to acquire these expensive brands from wholesalers, will simply not dispense them anymore, even to dangerously psychotic Medi-Cal recipients who endanger themselves and others if their psychotropic medicine is withheld.

Further there is not a shadow of a question of a doubt that because AB 1183 (1) **specifically directs and commands** the Director to implement the 5% rate cut of AB 1183, that the Director **is not free in this case** to consider any relevant factors required by Sec. 30A to be considered. before implementing a new Medicaid. -- such that the Director, by the specific legislative command, is not free to contend otherwise in the case at bar, and must carry out the legislative command of AB 1183 whether the Director wishes to or not. He will not be heard by a court to say, "I am free to consider whether the new rates are consistent with qaulity of care" as required by Sec. 30A, when the Legislature has

-5-

specifically commanded him otherwise.

Further, executive officers and agencies are commanded by Article 3.5 of the California Constitution to carry out every command of the Legislature, -- no matter unlawful the Legislative command is, -- absent an appeals court ruling that the law in question is constitutionally or otherwise void.

Thus:

Welf. & Inst. Code § 14109.191, enacted by Section 45 of AB 1183, expressly provides:

> "(a) Notwithstanding any other provision of law, or order to implement changes in the level of funding for health care services, **the director shall reduce** provider payments, as specified in this section. . . .
> (b) (3) Except as otherwise provided in subdivision (d), for dates of service on and after March 1, 2009,.Medi-Cal fee-for-service payments to pharmacies **shall be reduced** by 5 percent.." [5] (Emphasis supplied).

Also, Cal. Const. article 3.5 expressly provides:

> "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:
>     . . .
> (c) To declare a statute unenforceable, or to refuse to enforce a statute **on the basis that federal law or federal regulations prohibit the enforcement** of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations." (Emphasis supplied.)

**Conclusion**

The *Ex Parte Young*, 209 U.S. 123 (1908) line of cases, culminating in *Independent Living Center of Southern California, Inc. v. Shewry*, 543 F.3d 1050 (9th Cir. 2008), control this case and compel that injunction be issued to prevent this threat of injury, from this State action which is contrary to, hence preempted under the Supremacy Clause, by

---

[5] Subd. (d) of Welf. & Inst. Code 14105.191 excuses this 5% reduction in respect to a number of providers who are not licensed pharmacies, such as for example rural health clinics.

-6-

1 | Sec. 30A.

## DISCUSSION

Sec. 45 of AB 1183 was enacted by a legislative history replete with gubernatorial and legislative declarations which identify the bill as a pure budget reducing measure, not, any measure in respect to which the Legislature engaged in any inquiry whatsoever as to whether pharmacies could sustain the reduction without loss of quality or equal access for Medi-Cal recipients. Accordingly, under the rule laid down by *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491, 1500 (9th Cir. 1997), the reduced 5% rate and AB 1183 which enacted it, and the action of the Director to implement it, are **arbitrary and capricious,** hence contrary to law, -- due to the fact, as held by *Orthopaedic Hosp.,* 103 F.3d at 1500:

> "Without an appropriate consideration of the relevant factors, the [rate setter] cannot possibly comclude that there is a rational relationship of those factors to the rates set. Therefore the [rate setter's] action in [setting] . . . the rates **were arbitrary and capricious, and contrary to law**,"

hence (1) contrary to the "quality of services" requirement of Sec. 30A so as to hence, under the Supremacy Clause, be preempted by Sec. 30A.

## LEGISLATIVE HISTORY OF ASSEMBLY BILL 1183

Assembly Bill ("AB") 1183 was a **health trailer bill** whose sole purpose and function was to reduce State expenditures so as to **implement the budget cutting decisions of the 2008-2009 Budget Bill.** It was enacted September 30, 2008 and was chaptered as Chapter 758, Statutes 2008-2009.

Note: AB 1183 was introduced Feb. 2, 2008 as a hazardous material bill and was amended several times as solely a hazardous material bill. However, on September 15, 2008, the bill was amended in the Senate so as to be at once turned into a trailer bill, on many different subjects, to enact all provisions necessary to implement the provisions of the 2008-2009 Budget Bill; all without any public hearings or any hearing by any committee of the Legislature; was passed shortly before midnight of the same day of

-7-

September 15, 2008 by the Senate; was sent to the Assembly, and was immediately passed by the Assembly before 2:08 a.m. of September 16, 2008, -- all within the space of a few hours, -- and was signed by the Governor and filed with the Secretary of State on September 30, 2008.

By such legislative history, there were no committee hearings on AB 1183.

Further, there are **hundreds of different health care subjects** in AB 1183, each of which required separate consideration by the Legislature if any **reasoned or principled** decision was to be made by any legislator in the Senate or the Assembly in deciding to vote for or against particular provisions in the hundreds of different subjects contained in the bill.

AB 1183 was hence the pure product of pure logrolling, where, if any member of the legislature wished his or her health care provision in the multi-provisioned AB 1183 to be enacted, that legislator had to accept blindly all the other provisions relating to the hundreds of other subjects in the same bill.

The manner of the insertion of the 5% rate cut proposal in the 2008-2009 Budget Act health trailer bill containing hundreds of different and conflicting provisions, was as reasonable and principled as if the Chief Judge of a federal district court ordered 50 cases, pending before 11 district court judges, be consolidated into one lawsuit, and that the 11 district judges cast a vote, in which the majority vote counted, such that in a majority vote of "yea," all the plaintiffs in the 100 cases would be automatically awarded judgment in their favor; but if the majority of the 11 judges voted "no" on the package of cases, then, judgment would be given in favor of all the 100 defendants, instead.

Is that justice? Is that reasoned? Is that principled? But this is the

-8-

unlawful and totally inappropriate and capricious manner by which the Legislature enacted the 5% rate cut of AB 1183, in the multi-sectioned 2008-2009 Budget Act health trailer bill! And, which arbitrary enactment the Director will carry out and injure Medi-Cal beneficiaries, unless restrained by the Court,.

(If this is an appropriate consideration of the relevant factor of "quality of services" which Sec. 30A requires every Medicaid rate setter to perform before enacting or adopting new Medicaid rates for that state, surely the Attorney General will explain in his Answer brief how is "reasoned" and "priniipled," and indeed a guide to all States as how best to comply with the duty, under Sec. 30A, to consider the factor of quality of services, in setting a new Medicaid provider rate, to best protect beneficiaries' health, and enable quality services to be furnished.)

**Conclusion**

It is manifest that individual legislators who voted on AB 1183, and the Legislature as a whole, could not and did not appropriately consider, and did not consider at all, whether or not the reduced rates of the 5% Rate Reduction for pharmacy services were consistent with quality of services, or consistent with equal access of beneficiaries to quality services, in the Medi-Cal FFS program.

By each and all of the above facts, the action of the Legislature in enacting, and the action of the Director to implement, the 5% Rate Reduction provisions of AB 1183 were and are **facially, without more,** arbitrary, capricious, and contrary to law, (namely, contrary to the quality and equal access clauses of Sec. 30A, and contrary to the requirement of Sec. 30A that a Medicaid rate setter consider the factors of quality and equal access of beneficiaries in the course of setting new Medicaid rates for payment of providers); so that the provisions of (new) Welf. & Inst. Code § 14105.191, subds. (a) and (b) which enacted the 5% Rate Reduction

-9-

in respect to Pharmacy services, effective March 1, 2009, violated and hence are preempted, under the Supremacy Clause, by Sec. 30A.

**Irreparable injury, and threat of irreparable injury.**

Further, unless restrained by the Court by an appropriate injunction, the defendant Director will implement the aforesaid 5% Rate Reduction in respect to pharmacy providers, who, -- because the rates are too low to enable them to even purchase brand drugs, and many generic drugs, from their wholesalers; which in turn inevitably and quickly will result in injury to the Medi-Cal patients and clients of the Plaintiffs. This will quickly occur because pharmacies, unable to purcahse brand drugs and generic drugs from their wholesaler, will necessarily stop accepting new Medi-Cal patients, or stopg serving Medi-Cal patients at all, or will reduce, kinds, amounts, locations, and levels of services to Medi-Cal beneficiaries, or will necessarily go out of business, -- so that thereby Medi-Cal beneficiaries will manifestly be denied access to life-vital Pharmacy services and treatment in the Medi-Cal fee-for-service program, (either at all or in a timely fashion), so as to manifestly result in great physical suffering and injury to Medi-Cal beneficiaries, including beneficiaries who are patients and clients of Plaintiffs; all to the irreparable injury, and threat of irreparable injury, also to thousands of Medi-Cal beneficiaries including the beneficiaries served by Plaintiffs.

**Conclusions**

The State's sole purpose, and the conclusive factor in enacting the 5% Rate Reduction was to reduce the budget deficit.

Accordingly, by each and all of the foregoing facts shown in this motion, (new) § 14105.191 Welf. & Inst. Code, and the 5% Rate Reduction in respect to Pharmacy providers, were and are contrary to and in violation of the quality and

-10-

access provisions of Sec. 30A, so as to be preempted, under the Supremacy Clause, by the quality and access provisions of Sec. 30A, such that the Defendant Director is and will be acting in excess of and without jurisdiction to implement § 14105.191 Welf. & Inst. Code, including the 5% Rate Reduction, to Pharmacy providers, commencing March 1, 2009, and injure Medi-Cal beneficiaries in so doing; which injury by its nature is irreparable.

Accordingly, for the reasons given, the Plaintiffs pray as follows;

A. That a preliminary and permanent injunction be issued to command the Director DAVID MAXWELL-JOLLY to set aside his preempted policy to implement § 14105.19 Welf. & Inst. Code, of AB 1183, and the 5% Rate Reduction, and, to refrain from implementing the same; including but not limited to refraining from reducing payments by 5 percent or by any other deduction, to pharmacy providers in the Medi-Cal FFS program, for services furnished on and after March 1, 2009.

Respectfully submitted,

LYNN S. CARMAN
STANLEY L. FRIEDMAN

By: /s/ Lynn S. Carman
Attorneys for Plaintiffs
Independent Living Center of Southern California, Inc.; Gerald Shapiro, Pharm.D. dba Uptown Pharmacy & Gift Shoppe; Sharon Steen, dba Central Pharmacy; Tran Pharmacy, dba Tran Pharmacy; Vietnamese American Pharmacy Association; and California Korean Pharmacists Association