# Exhibit D

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Christopher C. Palermo**
**in Support of Mylan's Motion for Partial Summary Judgment**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE FEDERAL TRADE COMMISSION, | ) CASE NO. MDL 1290 |
| | ) Misc No 99-276 (TFH/JMF) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 1:98-CV-3114 (TFH) |
| | ) |
| MYLAN LABORATORIES, INC., | ) |
| CAMBREX CORP., | ) |
| PROFARMACO S.R.L., and | ) |
| GYMA LABORATORIES OF AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| THE STATE OF CONNECTICUT, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 1:98-CV-3115 (TFH) |
| | ) |
| MYLAN LABORATORIES, INC., | ) |
| CAMBREX CORP., | ) |
| PROFARMACO S.R.L., | ) |
| GYMA LABORATORIES OF AMERICA, INC., | ) |
| and SST CORP., | ) |
| Defendants. | ) |

**FILED**

**FEB 0 1 2001**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## NOTICE OF SETTLEMENT AND FILING OF
## SETTLEMENT AGREEMENTS

Plaintiff State of Ohio, as liaison counsel for Plaintiff States, and on behalf of
Plaintiff Federal Trade Commission and Defendants Mylan Laboratories, Inc., Cambrex
Corp., Profarmaco S.r.l., Gyma Laboratories of America, Inc., and SST Corp., hereby
provides notice to this Court that all parties in the above-captioned actions have entered



CAMylan0400519                                                    CAMylan04005195

into settlement agreements, which are filed herewith.

Respectfully Submitted,

Betty D. Montgomery
Attorney General of Ohio

Mitchell L. Gentile, Esq.
Principal Attorney
Office of the Ohio Attorney General
Antitrust Section
140 E. Town St., 12th Floor
Columbus, Ohio   43215
Phone: (614) 466-4328

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Notice of Settlement and Filing of Settlement Agreements was sent by ordinary U.S. mail the first day of February 2001 to:

Richard A. Feinstein
Melvin H. Orlans
Federal Trade Commission
4500 Pennsylvania Avenue, N.W.
Washington, DC 20580

James B. Weidner
James Miller
Clifford Chance Rogers & Wells, LLP
200 Park Avenue
New York, NY 10166

Joseph Simons
Clifford Chance Rogers & Wells, LLP
607 Fourteenth Street, N.W.
Washington, DC 20005-2018

Thomas Campbell
John T. Cusack
Gardner, Carton & Douglas
321 North Clark Street, Suite 3000
Chicago, IL 60610-4795

Stanley Grossman
Linda P. Nussbaum
Pomerantz, Haudek, Block, Grossman & Gross LLP
100 Park Avenue
New York, NY 10017

Bernard Persky
Goodkind Labaton Rudoff & Sucharow, LLP
100 Park Avenue
New York, NY 10017

Robert S. Schachter
Joseph Tusa
Zwerling Schachter & Zwerling, LLP
767 Third Avenue
New York, NY 10017

Sidney S. Rosdeitcher
Robert Kravitz
Paul, Weiss, Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019

F. Barron Grier, III
Grier Law Firm, LLC
810 Dutch Square Boulevard, Suite 103
Columbia, South Carolina 29210

Gary W. Kubek
Christopher K. Tahbaz
Debevoise & Plimpton
875 Third Avenue
New York, NY 10022

Irving Scher
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

David Hickerson
Weil, Gotshal & Manges, LLP
1615 L Street, N.W.
Suite 700
Washington, D.C. 20036

Notice of Settlement



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE LORAZEPAM AND CLORAZEPATE ANTITRUST LITIGATION | ) ) ) | CASE NUMBER MDL 1290 (TFH) |
| | | |

UNITED WISCONSIN SERVICES, INC., on
behalf of itself, its subsidiaries and affiliates,          )       CASE NUMBER 1:99-CV-01082
including BLUE CROSS & BLUE SHIELD           )
UNITED OF WISCONSIN, INC., COMPCARE      )       JUDGE: THOMAS F. HOGAN
HEALTH INSURANCE CORPORATION,                )
UNITY HEALTH PLANS INSURANCE                    )
CORPORATION, VALLEY HEALTH PLAN            )
INCORPORATED and all others similarly                )
situated,                                                                       )
401 West Michigan Street                                           )
Milwaukee, Wisconsin  53203                                   )
                                                                                  )
BLUE CROSS BLUE SHIELD OF KANSAS,        )
INC., on behalf of itself and all others similarly      )
situated,                                                                       )
1133 Topeka Boulevard                                             )
Topeka, Kansas 66612                                               )
                                                                                  )
      -and-                                                               )
                                                                                  )
GROUP HOSPITALIZATION and MEDICAL       )
SERVICES, INC., d/b/a CAREFIRST BLUE        )
CROSS BLUESHIELD, on behalf of itself and all  )
others similarly situated,                                             )
550 12th Street S.W.                                                  )
Washington, D.C. 20065,                                           )
                                                                                  )
                                 Plaintiffs,           )
                                                                                  )
     v.                                                                       )
                                                                                  )
MYLAN LABORATORIES, INC.                            )
130 Seventh Street                                                     )
1030 Century Building                                               )
Pittsburgh, Pennsylvania  15222                               )
                                                                                  )
MYLAN PHARMACEUTICALS, INC.                   )
781 Chesnut Ridge Road                                            )
Morgantown, West Virginia 26505                            )
CAMBREX CORPORATION                                   )
One Meadowlands Plaza                                            )
East Rutherford, New Jersey  07073                          )

|   | ) |
|---|---|
| - and - | ) |
|   | ) |
| GYMA LABORATORIES OF AMERICA, INC. | ) |
| 135 Cantiague Rock Road | ) |
| Westbury, New York  11590, | ) |
|   | ) |
| Defendants. | ) |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the annexed Plaintiffs' Motion For

Preliminary Approval of Proposed Settlement, and the accompanying Memorandum of Law and

Affidavit of Bernard Persky, Plaintiffs will move this Court, at the United States Courthouse,

District Court for the District of Columbia, 333 Constitution Avenue, N.W., Washington, D.C.,

on February 9, 2001, at 1:30 p.m. or as soon thereafter as counsel may be heard, for preliminary

approval of proposed settlement, and for such other relief as the Court deems appropriate.

Dated:    February ⌊ , 2001
          New York, New York

                              ZWERLING, SCHACHTER
                              & ZWERLING, LLP

                              Robert S. Schachter
                              Joseph Lipofsky
                              Joseph S. Tusa
                              767 Third Avenue
                              New York, New York 10017-2023
                              Tel. No. (212) 223-3900
                              Fax No. (212) 371-5969

                                    - and-

- 2 -

CAMylan0400519                                      CAMylan04005199

**GOODKIND LABATON RUDOFF**
**& SUCHAROW LLP**

Bernard Persky
Barbara J. Hart
Hollis L. Salzman
100 Park Avenue
New York, New York 10017-5563
Tel. No. (212) 907-0700
Fax No. (212) 818-0477

Indirect Purchaser Lead Counsel

**LOWEY DANNENBERG BEMPORAD**
**& SELINGER, P.C.**
Richard W. Cohen
The Gateway
One North Lexington Avenue
White Plains, NY 10601-1714
Tel. No. (914) 997-0500
Fax No. (914) 997-0035

- and -

**GARY D. McCALLISTER**
**& ASSOCIATES, LTD.**
Gary D. McCallister
29 South LaSalle Street, Suite 1210
Chicago, IL 60603
Tel. No. (312) 345-0611
Fax No. (312) 345-0612

Third Party Payor Lead Class Counsel

**DONALDSON, GUIN & SLATE, LLC**
Pamela B. Slate
The Morgan Keegan Center
Suite 230
2900 Highway 280
Birmingham, AL 35223
Tel. No. (205) 879-9994
Fax No. (205) 879-8886

- and –

- 3 -

CAMylan0400520                    CAMylan04005200

**JACK C. SANDO, ESQ.**
4922A St. Elmo Avenue
Bethesda, MD 20814-6032
Tel. No. (301) 986-0818
Fax No. (301) 907-0965

Class Counsel

CAMylan0400520                    CAMylan04005201

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFF STATES, THE FEDERAL TRADE COMMISSION AND MYLAN LABORATORIES, INC., GYMA LABORATORIES OF AMERICA, INC., PROFARMACO S.R.L., CAMBREX CORP.

This Settlement Agreement is made and entered into this 30th day of January, 2001, by and between the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, through their respective Attorneys General, and the District of Columbia, through its Corporation Counsel, plus any other state that has elected or elects to join in the terms of the Settlement Agreement, through their respective Attorneys ("Plaintiff States" as defined below), the Federal Trade Commission ("Commission"), and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l. and Cambrex Corp., through their undersigned counsel, (collectively, the "Parties"). Any state electing to join in the terms of the Settlement Agreement shall do so by executing a signature page which shall be appended to this Agreement.

WHEREAS, the Litigating Plaintiff States (as defined in Section I.N below) on December 21, 1998, as amended on February 8, 1999, and again on May 13, 1999, filed suit against Settling Defendants and SST Corporation in the United States District Court for the District of Columbia on their own behalf, on behalf of state agencies, and through their equitable or common law authority or as representative of or *parens patriae* on behalf of natural person citizens of those states, alleging monopolization, attempted monopolization, and agreements in restraint of trade, in violation of

1

federal and state antitrust and unfair competition or consumer protection laws, and seeking injunctive relief, civil penalties, damages, divestment, disgorgement, restitution and other equitable relief;

WHEREAS, a Third Amended Complaint will be filed contemporaneously with this Settlement Agreement by the Plaintiff States in the United States District Court for the District of Columbia adding those states which have chosen to opt into this Settlement Agreement;

WHEREAS, the Commission on December 21, 1998, as amended on February 8, 1999, filed its Complaint against Settling Defendants in the United States District Court for the District of Columbia seeking permanent injunctive and other equitable relief, including disgorgement, and alleging that Settling Defendants monopolized, attempted to monopolize, conspired to monopolize and entered into agreements that unreasonably restrained trade in the markets for lorazepam and clorazepate active pharmaceutical ingredients and tablets;

WHEREAS, the Parties have engaged in extensive analysis of the pertinent facts. The Litigating Plaintiff States and the Commission have conducted an extensive investigation relating to the claims and underlying events and transactions alleged in the Commission's Complaint and the Plaintiff States' Complaint, as well as extensive legal research. As a result, the Litigating Plaintiff States and the Commission are thoroughly familiar with the liability and damages aspects of the claims they have asserted in the Commission's Complaint and the Plaintiff States' Complaint;

WHEREAS, over the course of the Parties' extensive arm's-length negotiations, the Litigating Plaintiff States have concluded that the proposed settlement embodied in this Settlement Agreement is fair, adequate and reasonable. Among the factors considered in that determination are the sharply contested legal and factual issues involved in these actions and the risks and costs attendant upon further prosecution of these actions;

2

CAMylan0400520                                    CAMylan04005203

WHEREAS, Settling Defendants, likewise recognizing the many sharply contested legal and factual issues involved and the risks and costs attendant upon further litigation of the claims in these actions, and while continuing to deny vigorously the allegations, any violation of law or wrongdoing, and any liability with respect to any and all claims asserted in the Commission's Complaint and in the Plaintiff States' Complaint, have concluded that it is desirable that all of the claims in these actions which have, or could have, been asserted against Settling Defendants be compromised and settled;

WHEREAS, the Parties have each determined it to be in their respective best interests to resolve this dispute and enter into this Settlement Agreement;

NOW, THEREFORE, WITNESSETH:

## I. DEFINITIONS

As used herein:

A.      "Agency Account" means a separate account, to be established within the State Fund, funded pursuant to Section IV.A. below.  The Agency Account shall be distributed as specified in the Government Compensation Plan.

B.      "Class" means the members of a class to be certified for settlement purposes only pursuant to this Settlement Agreement and Rule 23 of the Federal Rules of Civil Procedure, which shall include all natural person consumers within Plaintiff States where such a class action may be brought, not otherwise represented by the Plaintiff States as *parens patriae*, who purchased either or both of the Relevant Drugs  during the Relevant Period.

C.      "Commission" means the Federal Trade Commission.

3

CAMylan0400520                                CAMylan04005204

D.     "Commission's Complaint" means the complaint filed by the Commission on December 21, 1998, as amended on February 8, 1999, against Settling Defendants in the United States District Court for the District of Columbia.

E.     "Consumer Distribution Plan" means the plan or method of allocation of the Consumer Fund, which shall be submitted to the Court for approval, and which is consistent with the Guidelines Governing Development of Consumer Distribution Plan, included as Attachment 7.

F.     "Consumer Fund" means an interest-bearing escrow account, established pursuant to the Escrow Agreement and administered by the Escrow Agent.  The principal of the Consumer Fund shall be funded as set forth in section IV.A. below.  The Consumer Fund  shall be distributed as specified in the Consumer Distribution Plan

G.     " Cost and  Fee Account" means a segregated account to be established within the State Fund, to be funded as set forth in Section IV.B.

H.     "Court" means the United States District Court for the District of Columbia.

I.     "Effective Date" means the date on which this Settlement Agreement becomes effective.  The Effective Date shall occur when all of the following conditions have been satisfied, unless one or more of such conditions is modified in a writing signed by the Parties:

1.     Execution of this Settlement Agreement;

2.     Entry by the Court of the Stipulated Permanent Injunction;

3.     Entry by the Court of a Preliminary Approval Order substantially in conformance with the terms of this Settlement Agreement;

4

4.      Expiration of the period within which consumers represented *parens patriae* and members of the proposed Class must exercise their rights to be excluded from *parens patriae* representation or from the Class;

5.      Final approval by the Court of the Settlement embodied herein;

6.      Entry by the Court of the Final Judgment and Order substantially in conformity with the terms of this Settlement Agreement;

7.      The Final Judgment and Order shall become final, which shall be deemed to occur upon the expiration of the tenth day after the applicable time for appeals of the Final Judgment and Order (whether as of right or upon showing of excusable neglect or good cause) without any appeal having been taken, or, if an appeal is taken, upon the expiration of the tenth day after the Final Judgment and Order is affirmed by the appellate court with no possibility of subsequent appeal or judicial review thereof.  For purposes of this Subsection, an "appeal" shall include any Petition for a Writ of Certiorari that may be filed in connection with the approval or disapproval of this Settlement Agreement; and

8.      As of the time the conditions contained in Subsections I.I.1. through I.I.7. above are satisfied, the right to terminate and withdraw from this Settlement Agreement granted pursuant to Section X below shall not have been exercised by any of the Parties.

J.      "Escrow Agent" means the person or entity chosen by the Plaintiff States and designated pursuant to the Escrow Agreement to administer the Consumer Fund  and  State Fund pursuant to the terms of this Settlement Agreement.

K.      "Escrow Agreement" means the escrow agreement, substantially in the form of Attachment 1 hereto.

5

CAMylan0400520                                    CAMylan04005206

L.       "Final Judgment and Order" means the Court's final, appealable order, substantially in the form of Attachment 2 hereto.

M.       "Government Compensation Plan" means the plan or method of allocation of the State Fund, which shall be submitted to the Court, and which is consistent with the Guidelines Governing Development of Government Compensation Plan, included as Attachment 6.

N.       "Litigating Plaintiff States" means the 33 Plaintiff States that participated in the litigation and negotiation of the settlement of these actions: Alaska, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin.[1]

O.       "Notice" means the notice or notices of this Settlement Agreement and hearing thereof that are to be published and/or mailed to members of the Settlement Group pursuant to Section VII.

P.       "Notice Plan" means the Court-approved process by which the Plaintiff States will effectuate the Notice.

Q.       "Person" means any natural person, partnership, corporation, or business entity.

---

[1] For purposes of the litigation and this settlement, the definition of "Litigating Plaintiff States" or "Plaintiff States" does not include the University of California. It is stipulated by the Parties that the California Attorney General has not represented the interests of the University of California in the litigation or the settlement thereof, and the University of California has not been participating in this action.

6

CAMylan0400520                                              CAMylan04005207

R.     "Plaintiff States" means the Litigating Plaintiff States and any State which is or which becomes a party to this Settlement Agreement, as provided in Section IX. hereof, through the State's Attorney General, individually and as authorized by law, in the State's sovereign capacity, on behalf of state agencies, in a statutory, equitable and/or common law capacity, and as representative of and/or *parens patriae* on behalf of all natural person citizens of such state who have purchased either or both of the Relevant Drugs during the Relevant Period.

S.     "Plaintiff States' Complaint" means the complaint filed by the Litigating Plaintiff States on December 21, 1998, as amended on February 8, 1999 and again on May 13, 1999 and the Third Amended Complaint filed herewith by the Plaintiff States.

T.     "Preliminary Approval Order" means the Court's order preliminarily approving this Settlement Agreement and establishing a schedule for Notice and further proceedings, as set forth in Section VII below, and substantially in the form of Attachment 3 hereto.

U.     "Released Claims" means all claims, counterclaims, set-offs, demands, actions, rights, liabilities, and causes of action arising under federal or state antitrust, unfair methods of competition, or consumer protection laws, under state or federal unfair or deceptive trade practices acts, or under common law, asserted or that could have been asserted, by the Commission, by Settling Members of the Settlement Group, or by the Plaintiff States on behalf of state agencies and/or natural person consumers within the Plaintiff States against Settling Defendants arising from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged in the Commission's Complaint or in the Plaintiff States' Complaint.

V.     "Relevant Drugs" means generic lorazepam or clorazepate sold in the United States.

W.     "Relevant Period" means the period from January 1, 1998 to December 31, 1999.

CAMylan0400520                                                    CAMylan04005208

X.      "Settlement Group" means all natural person consumers represented by Attorneys General for the Plaintiff States, individually and as authorized by law in a statutory, equitable and/or common law capacity, as *parens patriae* and/or as representatives of the Class.

Y.      "Settling Defendants" means Mylan Laboratories, Inc. ("Mylan"), Gyma Laboratories of America, Inc. ("Gyma"), Profarmaco S.r.l. ("Profarmaco"), Cambrex Corp., ("Cambrex") and any and all of their affiliates, subsidiaries, divisions and other organizational units of any kind, their successors and assigns, and their former, current and future officers, directors, employees, agents, attorneys, representatives, shareholders, partners and other persons acting on their behalf.

Z.      "Settling Members of the Settlement Group" means each and every member of the Settlement Group who does not exercise his or her right to exclude himself or herself from the Settlement Group pursuant to a proper written request for exclusion postmarked on or before the date to be set by the Court.

AA.     " State Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement and administered by the Escrow Agent.  The principal of the State Fund shall be funded as set forth in Sections IV.A. and B. below, and shall be segregated into an Agency Account and a  Cost and  Fee Account.

BB.     "State Liaison Counsel" or "Liaison Counsel for Plaintiff States" means the Attorney General of the State of Ohio.

CC.     "Stipulated Permanent Injunction" means the injunction entered into between the Commission and the Settling Defendants and approved by the Commission on November 29, 2000, in the action entitled *Federal Trade Commission v. Mylan, et al.*, in the form of Attachment 4.

8

## II. AGREEMENT

Subject to the approval of the Court, the Parties agree to compromise, settle and resolve fully and finally on the terms set forth herein, all Released Claims.

## III. INJUNCTION

As part of this Settlement Agreement, the Commission and the Settling Defendants have entered into the Stipulated Permanent Injunction in the form of Attachment 4, the terms and conditions of which are incorporated into this Settlement Agreement as though set forth in this Section III in full. The term set forth in the Stipulated Permanent Injunction shall govern the term of enforcement of this Section III. The Stipulated Permanent Injunction may be enforced by the Plaintiff States in the following manner:

A.      Settling Defendants shall provide the notices and/or reports pursuant to Sections VI, VII and VIII of the Stipulated Permanent Injunction to State Liaison Counsel, c/o Chief, Antitrust Section, Office of the Ohio Attorney General, 140 East Town Street, 12th Floor, Columbus, Ohio 43215.

B.      Communications involving the Stipulated Permanent Injunction shall be communicated to Settling Defendants by State Liaison Counsel. All such communications shall be addressed to Settling Defendants as provided for in Section XI(G) of this Settlement Agreement.

C.      Each Plaintiff State shall enforce Sections III, IV and V of the Stipulated Permanent Injunction through a committee comprised of the Offices of the Attorneys General for the States of Ohio, Maryland and Kentucky (the "Committee").

D.      The Stipulated Permanent Injunction shall be enforced by the Plaintiff States by and through the Committee in the District Court for the District of Columbia.

9

## IV. MONETARY PAYMENT

A.      Mylan Pharmaceuticals, Inc. has agreed to pay $100 million in cash in full and final settlement of the claims against all Settling Defendants as set forth in the Commission's Complaint and in the Plaintiff States' Complaint and in exchange for the release of all Released Claims. This amount has been paid in two wire transfers, as set forth below, c/o the Escrow Agent appointed pursuant to Section V of this Agreement. Of the $100 million, $28,217,983.00 has been paid into the Agency Account of the State Fund, and the remaining $71,782,017.00 has been paid into the Consumer Fund.

B.      Mylan Pharmaceuticals, Inc. further agrees to pay the Litigating Plaintiff States up to $8 million for their attorneys' fees and costs incurred in the investigation and litigation of this matter. This amount shall be paid into the Cost and Fee Account of the State Fund within five (5) business days following entry of the Final Judgment and Order by the Court.

C.      The payments made by Mylan Pharmaceuticals, Inc. pursuant to Sections IV.A. and IV.B. are not, and shall not, be considered the payment of a penalty or fine under any state or federal laws, rules or regulations or any other applicable statute or provision.

D.      Plaintiff States, on behalf of state agencies and Settling Members of the Settlement Group, and the Commission agree to release the Released Claims in exchange for the injunctive and monetary provisions contained in this Settlement Agreement. Upon the Effective Date, Plaintiff States, Settling Members of the Settlement Group and the Commission shall be deemed to have released and forever discharged Settling Defendants from all liability for the Released Claims.

E.      Mylan warrants that, as of the date of this Settlement Agreement, neither it nor any of its affiliates, including but not limited to Mylan Pharmaceuticals, Inc., is insolvent, nor will any

10

payment to the Consumer Fund and State Fund render it or any of its affiliates, including but not limited to, Mylan Pharmaceuticals, Inc., insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code. If a case is commenced with respect to Mylan or any of its affiliates, under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the payment of the principal amount of the Consumer Fund or State Fund, and any accrued interest, or any portion thereof, by or on behalf of Mylan or any affiliate of Mylan, to be a preference, voidable transfer, fraudulent transfer or similar transaction, and if pursuant to an order of a court of competent jurisdiction monies paid by Mylan or any of its affiliates, into the Consumer Fund or the State Fund pursuant to this agreement are either not delivered or are returned to Mylan or any of its affiliates, or the trustee, receiver, or conservator appointed by a court in any bankruptcy proceeding with respect to Mylan or any of its affiliates, then this Settlement Agreement shall be terminated and cancelled as set forth in Section X herein. In the event that Mylan has funded the Cost and Fee Account prior to any filing under Title 11 of the United States Code, this Section IV.E shall apply to the Consumer Fund and the Agency Account only.

F. Plaintiff States, Settling Members of the Settlement Group and the Commission shall also be deemed to have expressly waived any rights or benefits, if available, under Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the debtor.

11

CAMylan0400521                                              CAMylan04005212

Settling Members of the Settlement Group shall be advised of the statutory language of California Civil Code Section 1542 in the Notice and, with this understanding, nevertheless shall elect to and shall assume all risks for claims heretofore and hereafter arising, whether known or unknown, from the subject of the Released Claims, and specifically waive any rights they may have under California Civil Code Section 1542. Settling Members of the Settlement Group shall also be fully advised that if the facts with respect to which the Released Claims are given and the dismissal with prejudice contained in the Final Judgment and Order are found hereafter to be other than, or different from, the facts now believed by them to be true, they shall expressly accept and assume the risk of such possible differences and facts, and shall agree that the release shall be and remain effective notwithstanding such differences in facts.

G.     The Parties agree that the decision by the Court regarding the amount to be deposited into the Cost and Fee Account and the disbursement thereof under the Guidelines Governing Payment of Attorneys' Fees and Litigation Costs (Attachment 5 hereto) shall be severable from this Settlement Agreement, and that regardless of such decision, Plaintiff States will not object to or oppose approval of the remainder of the Settlement Agreement by the Court, or otherwise delay or affect approval of the settlement, or entry of the Final Judgment and Order. Settling Defendants agree not to oppose the approval of the Litigating Plaintiff States' costs and attorneys' fees and the disbursement thereof under the Guidelines Governing Payment of Attorneys Fees and Litigation Costs, providing that the Litigating Plaintiff States shall use their best efforts to avoid duplicative, unreasonable or unnecessary costs and fees in determining the total amount requested to be approved by the Court, and further provided that Settling Defendants may request the Court to order the

12

Litigating Plaintiff States to provide an accounting of costs and fees if they are in good faith unsatisfied with the Litigating Plaintiff States' cost and fee summary.

## V. SETTLEMENT ADMINISTRATION

A.     The Escrow Agent for the Consumer Fund and State Fund (collectively, the "Settlement Accounts") shall be determined by the Plaintiff States. The Escrow Agent shall invest the Consumer Fund and State Fund in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies, or in pre-refunded or escrowed municipal bonds which are federally insured to obtain the highest available return on investment, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Escrow Agent shall bear all risks related to the investment of the escrow funds.

B.     The Settlement Accounts shall be administered pursuant to the Consumer Distribution Plan, the Government Compensation Plan, the Escrow Agreement, this Settlement Agreement, and any order of the Court, as applicable.

C.     All funds held in the Settlement Accounts shall be deemed to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such Settlement Accounts are fully distributed, or upon further order(s) of the Court.

D.     <u>Tax Treatment of Settlement Accounts</u>

1.     The Settlement Accounts shall be treated as being at all times "qualified settlement funds" within the meaning of Treas. Reg. 1.468B-1. The Escrow Agent, and, as required, the Parties, shall timely make such elections as necessary or advisable to carry out the provisions of this Section V.D., including the "relation-back election" (as defined in Treas. Reg. 1.468B-1), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and

13

requirements contained in such regulation. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

       2.    For the purpose of Treas. Reg. 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Accounts (including, without limitation, the returns described in Treas. Reg. 1.468B-2(K and L)). Such returns (as well as the election described in Section V.D.1.) shall be consistent with this Section V.D and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Accounts shall be paid out of the appropriate Settlement Account as provided in Section V.D.3 herein.

       3.    All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by a Settlement Account, including any taxes or tax detriments that may be imposed upon Settling Defendants with respect to any income earned by a Settlement Account for any period during which such Settlement Account does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Section V.D (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section V.D) ("Tax Expenses"), shall be paid out of the affected Settlement Account.

14

CAMylan04005215

4.      Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the appropriate Settlement Account with respect to which such Taxes and/or Tax Expenses have accrued, without prior order from the Court.  The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution out of the appropriate Settlement Account any funds necessary to pay such amounts including the establishment for adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. 1.468B-2(1), (2)).

5.      The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section V.D.  For purposes of this Section V.D, references to a Settlement Account shall include such Settlement Account and any earnings thereon.

E.      Settling Defendants will have no responsibility or liability for any distributions of the Settlement Accounts or interest earned thereon, or any reporting requirements that may relate thereto, and no person shall have any claim against any of the Parties, their respective counsel, the Escrow Agent or any agent designated by the Escrow Agent based on the distributions made substantially in accordance with this Settlement Agreement and any orders of the Court.

## VI.      SETTLEMENT DISBURSEMENTS

A       Disbursement of Administrative Costs:

15

1.   <u>Agency Account</u>: The Escrow Agent shall pay from the Agency Account only those administrative costs and expenses incurred in writing checks and otherwise incurred in distributing the Agency Account.

2.   <u>Consumer Fund</u>: The Escrow Agent shall pay from the Consumer Fund all administrative costs and expenses, other than those identified in Section VI.A.1. above, associated with administering this settlement, including without limitation, costs and expenses necessary to secure court approval of the Settlement Agreement, such as an expert's affidavit, costs and expenses for providing proper notice of this Settlement Agreement, the processing and payment of claims and the fees and expenses of the Escrow Agent.

B.   <u>Distribution to States</u>:

1.   <u>Disbursement of Attorneys' Fees and Litigation Costs:</u>

The Escrow Agent shall disburse the Cost and Fee Account in accordance with the Court's Final Judgment and Order.  Guidelines Governing Payment of Attorneys' Fees and Litigation Costs are included as Attachment 5 to this Settlement Agreement.

2.   <u>Distribution to State Agencies</u>: The Escrow Agent shall distribute all funds remaining in the Agency Account after payment of the costs set forth in subsection VI.A.1. above, according to the Government Compensation Plan.  The Government Compensation Plan shall be consistent with the Guidelines Governing Development of Government Compensation Plan, included as Attachment 6 to this Settlement Agreement.

C.   <u>Distribution to Consumers</u>: The Escrow Agent and/or a claims administrator employed by the Plaintiff States shall distribute and/or administer the distribution of all funds remaining in the Consumer Fund after payment of the costs and expenses set forth in Section VI.A.2

16

above, according to the Court-approved Consumer Distribution Plan. The Consumer Distribution Plan shall be consistent with the Guidelines Governing Development of Consumer Distribution Plan, included as Attachment 7 to this Settlement Agreement.

      D.    <u>Timing of Disbursements</u>:

      1.    The Escrow Agent shall pay the cost of administering this Settlement Agreement, as specified in Section VI.A. above, as these costs accrue, upon submission to the Escrow Agent of invoices for these costs as provided in the Escrow Agreement.

      2.    The Escrow Agent shall distribute the Cost and Fee Account and the portion of the Agency Account not already distributed pursuant to Section VI.A.1. above, within thirty (30) days of the Effective Date.

      3.    The Escrow Agent shall, in conjunction with the claims administrator, begin distributing the portion of the Consumer Fund not already distributed pursuant to section VI.A.2. above within thirty (30) days of the Effective Date and shall continue with such distributions according to the terms of the Court-approved Consumer Distribution Plan until the Consumer Fund is fully distributed.

## VII. NOTICE AND SETTLEMENT HEARING

      A.    Within ninety (90) days after execution of this Settlement Agreement, Liaison Counsel for Plaintiff States shall file with the Court a motion for Preliminary Approval of the Settlement Agreement. This motion shall include this Settlement Agreement and attachments, a proposed Notice Plan, and the Plaintiff States' Consumer Distribution Plan and Government Compensation Plan and the Preliminary Approval Order. The Preliminary Approval Order shall be substantially in the form of Attachment 3. At least fifteen (15) business days prior to filing their

17

motion requesting entry of the Preliminary Approval Order, the Liaison Counsel for Plaintiff States shall provide a draft copy of such motion (including all exhibits and attachments of such motion) to the Commission and Settling Defendants for review and comment.

B.    Within ninety (90) days after entry by the Court of the Preliminary Approval Order, Liaison Counsel for Plaintiff States shall effectuate the Notice Plan.

C.    The Parties contemplate a notice period of  ninety (90) to one hundred twenty (120) days, or such other time period as set by the Court ("Notice Period").  Within  ninety (90) days following the conclusion of the Notice Period, Liaison Counsel for Plaintiff States shall file with the Court a motion seeking final approval of the Final Judgment and Order.  The Final Judgment and Order shall be substantially in the form of Attachment 2.  At least five (5) business days before the filing of the Motion for Final Approval, Liaison Counsel for the Plaintiff States shall provide a draft copy of such motion (including all exhibits and attachments of such motion) to the Commission and Settling Defendants for review and comment.  Counsel for all of the Parties shall use all reasonable efforts to obtain the entry of the Final Judgment and Order.

## VIII.  COOPERATION AND IMPLEMENTATION

A.    The Parties, and their respective counsel, agree to use all reasonable practicable efforts and to take all steps reasonably necessary to effectuate this Settlement Agreement.

B.    The Parties agree that all discovery relating to the Released Claims is stayed and that such discovery may resume only upon agreement by the Parties or by order of the Court.

## IX.  BENEFIT AND BINDING EFFECT

A.    The terms of this Settlement Agreement shall be binding on, and shall inure to the benefit of, the Parties and their successors and assigns.  The Parties expressly disclaim any intention

18

to create rights under this Settlement Agreement which may be enforced by any other person under any circumstances whatsoever, except as provided in this Settlement Agreement.

B.      The terms of this Settlement Agreement may be entered into by the Attorney General of any state who takes the following actions within 30 days of the execution of this Settlement Agreement:

1.      Signs an opt-in agreement and signature page which will be appended onto the body of the Settlement Agreement which will be filed with the Court; and

2.      Designates the Liaison Counsel for Plaintiff States to represent such state and agrees to be named as a plaintiff in the Plaintiff States' Third Amended Complaint.

## X. EFFECT OF TERMINATION OR DISAPPROVAL

A.      If this Settlement Agreement is not approved or is terminated, cancelled, voided or the Effective Date does not occur for any reason, all monies paid into the Consumer Fund and the State Fund, and any interest accrued thereon, shall be refunded to Mylan Pharmaceuticals, Inc., reduced by the amount of actual out-of-pocket costs and expenses incurred or committed in the administration of this Settlement Agreement to the date of disapproval, cancellation, termination, voiding or the Effective Date not occurring.  Refund to Mylan Pharmaceuticals, Inc. shall occur within thirty (30) days of the disapproval, cancellation, termination, voiding or the Effective Date not occurring.  In such event, this Settlement Agreement shall become null and void, shall have no further force and effect, and the Commission and Plaintiff States shall retain full rights to assert any and all causes of action against Settling Defendants, and Settling Defendants shall retain any and all defenses thereto.  These actions shall thereupon revert forthwith to their respective procedural and substantive status prior to the date of execution hereof and shall proceed as if this Settlement

19

Agreement, and all other related orders and papers, including the Stipulated Permanent Injunction, had not been executed, and the Parties shall jointly request that any order contemplated hereby, including the Stipulated Permanent Injunction, which shall have been entered be vacated. Notwithstanding the foregoing, the provisions of Section XI. I. shall survive the termination of this Settlement Agreement for any reason.

B.      If the Court does not enter the orders or judgments contemplated by this Settlement Agreement in substantially the form provided herein, or if the Court enters the orders or judgments and appellate review is sought, and on such review any such order or judgment is materially modified, then this Settlement Agreement shall be cancelled and terminated, subject to the provisions of this Settlement Agreement, unless all Parties to this Settlement Agreement, within thirty (30) days from the date of the mailing of such ruling to such Parties, provide written notice to all other Parties hereto of their intent to proceed with the settlement.

## XI. MISCELLANEOUS

A.      This Settlement Agreement and the Attachments contain the entire agreement and understanding of the Parties.  There are no additional promises or terms of the Settlement Agreement other than those contained herein.

B.      The terms or provisions of this Settlement Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by all Parties with the consent of the Court.  Any failure by any party to insist upon the strict performance by any other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions hereof, and that party, notwithstanding that failure, shall have the right thereafter to

20

CAMylan0400522                                    CAMylan04005221

insist upon the strict performance of any and all of the provisions of this Settlement Agreement to be performed by the other party.

C.      The undersigned counsel for each of the Parties hereby represents that he or she is authorized to enter into this Settlement Agreement on behalf of that Party.

D.      The Settlement Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

E.      The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision hereof.

F.      The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

G.      Any and all notices, requests, consents, directives, or communications by any party intended for any other party shall be in writing and shall, unless expressly provided otherwise herein, be given personally, by express courier, or by postage prepaid mail, or by facsimile transmission followed by postage prepaid mail, and shall be addressed as follows:

To Plaintiff States or the Class:

> Chief, Antitrust Section
> Office of the Attorney General
> 140 East Town Street, l2th Floor
> Columbus, OH 43215

To the Commission:

> Assistant Director

21

Health Care Services and Product Division
Bureau of Competition
Federal Trade Commission
601 Pennsylvania Avenue, NW
Washington, DC 20580

To Defendants:

Clifford Chance Rogers & Wells LLP
James B. Weidner
200 Park Avenue
New York, New York 10166

Debevoise & Plimpton
Gary W. Kubek
875 Third Avenue
New York, New York 10022

Weil, Gotshal & Manges LLP
Irving Scher
767 Fifth Avenue
New York, New York 10153

Any one of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above provided, ten (10) calendar days before the change is effective.

H.      This Settlement Agreement, including, but not limited to, the releases contained herein, shall be governed by, and construed in accordance with, the laws of the State of New York without regard to its conflict of laws principles.  The parties to this Settlement agree that the Final Judgment and Order shall provide that the Court shall retain jurisdiction to enforce all provisions and terms of this Settlement Agreement.  This Settlement Agreement shall be enforced in the United States District Court for the District of Columbia.  The Parties, on behalf of themselves and the

22

Settling Members of the Settlement Group, waive any objection that each of them may now have or hereafter have to the venue of any such suit, action or proceeding and irrevocably consent to the jurisdiction of the Court and agree to accept and acknowledge service in any such suit, action or proceeding.

      I.      Neither this Settlement Agreement nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by Settling Defendants as to the validity of any claim that has been or could have been asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by Settling Defendants.  Neither this Settlement Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or in any arbitration, except in connection with the Parties' application for approval or enforcement of this Settlement Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to Litigating Plaintiff States.

      J.      Within thirty (30) days after the Effective Date, the Commission and the Plaintiff States shall return all  materials and documents produced in these actions by any party or non-party to the person or entity that produced those documents or, upon written request by that person or entity, shall have those documents destroyed.  In the event that documents are destroyed, the Plaintiff States shall provide prompt notice to the person or entity that produced those documents, certifying their destruction.  In the event that the Plaintiff States or the Commission are requested by subpoena or other legal process to provide such information to any person, they shall immediately inform the Settling Defendants of the subpoena or legal process, shall decline to waive any such privileges and

CAMylan0400522                    CAMylan04005224

objections to disclose as may exist, and shall reasonably cooperate with the Settling Defendants who shall have the right and responsibility to challenge such subpoena or legal process. The obligations of the Plaintiff States and the Commission are governed by the Court's Protective Order entered March 16, 1999.

K.      Notwithstanding Section XI.I above, this Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims. The Parties agree that for any such proceeding, the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding. The Parties further agree that this Settlement Agreement may be pleaded as necessary for the purpose of enforcing the Settlement Agreement.


**FOR MYLAN LABORATORIES, INC. and**
**MYLAN PHARMACEUTICALS, INC.**


_____
James B. Weidner, Esq.
Clifford Chance Rogers & Wells LLP
200 Park Avenue
New York, New York 10166


24

CAMylan0400522                                    CAMylan04005225

**FOR GYMA LABORATORIES OF AMERICA, INC.**

_____
Irving Scher, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, N.Y.  10153

**FOR PROFARMACO S.R.L. and CAMBREX CORP.**

_____
Gary W. Kubek, Esq.
Debevoise & Plimpton
875 Third Avenue
New York, N.Y.  10022

NY1:\990757\01\L8H1011.DOC\47759.0004

25

CAMylan0400522                                    CAMylan04005226

**FOR GYMA LABORATORIES OF AMERICA, INC.**

_____

David Hickerson, Esq.
Weil, Gotshal & Manges LLP
1615 L Street N.W., Suite 700
Washington, D.C. 20036

**FOR PROFARMACO S.R.L. and CAMBREX CORP.**

_____
Gary W. Kubek, Esq.
Christopher K. Tahbaz, Esq.
Debevoise & Plimpton
875 Third Avenue
New York, New York 10022

Settlement agreement(MylanFinal).doc

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

United States Federal Trade Commission

By: _Richard A. Feinstein_

| | |
|---|---|
| Name | Richard A. Feinstein, Esquire |
| Title | Assistant Director<br>Heath Care Services and Products Division<br>Bureau of Competition |
| Address | 601 Pennsylvania Avenue, NW<br>Room S-3115<br>Washington, DC 20580 |
| Phone | (202) 326 3688 |

CAMylan0400522                                        CAMylan04005228

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

Bill Pryor
Attorney General
State of Alabama
11 South Union Street
Alabama Statehouse
Montgomery, Alabama 36104
(334) 242-7310

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.


ATTORNEY GENERAL BRUCE M. BOTELHO
ATTORNEY GENERAL OF ALASKA


By: _____
Julia Coster
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
(907) 269-5100

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.R.L., and Cambrex Corp.


ATTORNEY GENERAL JANET NAPOLITANO
ATTORNEY GENERAL OF ARIZONA


By: _____
Timothy A. Nelson
Special Counsel and Antitrust Unit Chief
1275 West Washington
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7752

CAMylan0400523                                    CAMylan04005231

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL MARK PRYOR
ATTORNEY GENERAL OF ARKANSAS

By: _____
Teresa Brown, AR Bar no. 84113
Senior Assistant Attorney General
323 Center St. Ste. 200
Little Rock, AR 72201
(501) 682-3561

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL BILL LOCKYER
ATTORNEY GENERAL OF CALIFORNIA

By: _____
Natalie S. Manzo
Deputy Attorney General
Office of the Attorney General
300 S. Spring St., Suite 5000N
Los Angeles, CA 90013
(213)897-2707

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL KEN SALAZAR
ATTORNEY GENERAL OF COLORADO

By: _____
       MARIA BERKENKOTTER
First Assistant Attorney General
Antitrust Unit
(303) 866-5079

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL RICHARD BLUMENTHAL
ATTORNEY GENERAL OF CONNECTICUT

BY:

Steven M. Rutstein
Antitrust Department Head
Assistant Attorney General

Arnold B. Feigin
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Tel:  (860) 808-5540

Settlement Agreement among Plaintiff states, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S. r. l., and Cambrex Corp.

**ATTORNEY GENERAL M. JANE BRADY**
**ATTORNEY GENERAL OF DELAWARE**

By:  _____

Stuart B. Drowos, ID #427
Deputy Attorney General
Department of Justice
State of Delaware
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Of Counsel

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ROBERT R. RIGSBY
CORPORATION COUNSEL,
DISTRICT OF COLUMBIA

By: _____

Sharon Styles-Anderson (D.C. Bar #412158)
Senior Deputy Corporation Counsel for
Public Protection and Enforcement

_____
Charlotte W. Parker (D.C. Bar #186205)
Acting Deputy Corporation Counsel
Civil Division

_____
Bennett Rushkoff (D.C. Bar #386925)      .
Senior Counsel
Office of the Corporation Counsel
441 4th Street, N.W., Suite 450-N
Washington, DC 20001
202-727-3500

Attorneys for the District of Columbia

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.


ROBERT A. BUTTERWORTH
ATTORNEY GENERAL OF FLORIDA

By: _____
RICHARD E. DORAN
Deputy Attorney General
PATRICIA A. CONNERS
Chief, Antitrust Section
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3600

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL THURBERT E. BAKER
ATTORNEY GENERAL OF GEORGIA

By: _____
Name:   Harold D. Melton
Title:    Senior Assistant Attorney General
Address:  40 Capitol Square, S.W.
           Atlanta, Georgia 30334
Phone:   (404) 656-3337

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL EARL I. ANZAI
ATTORNEY GENERAL OF HAWAII

By: _____

Name     Earl I. Anzai
Title       Attorney General of Hawaii
Address  425 Queen Street
           Honolulu, Hawaii 96813
Phone:   (808) 586-1500

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.


ALAN G. LANCE
ATTORNEY GENERAL
STATE OF IDAHO


_____
BRETT T. DeLANGE  (ISB No. 3628)
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
Len B. Jordan Building
650 W. State St., Lower Level
P. O. Box 83720
Boise, Idaho 83720-0010
Telephone:        (208) 334-2424
FAX:              (208) 334-2830
bdelange@ag.state.id.us


CAMylan0400524                    CAMylan04005241

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL JIM RYAN
ATTORNEY GENERAL OF THE STATE OF ILLINOIS

By: _____

Christine H. Rosso
Chief, Public Interest Division
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
312-814-5610

 

Settlement agreement among plaintiff states, the FTC and Mylan Laboratories, Inc, Gyma Laboratories of America, Inc., Profarmaco S.R.L. and Cambres Corp.

Stephen Carter
Attorney General of Indiana

CAMylan0400524                                    CAMylan04005243

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL THOMAS J. MILLER
ATTORNEY GENERAL OF IOWA

By: _____
John F. Dwyer
Attorney
Iowa Dept. of Justice
310 Maple Street
Des Moines, Iowa 50319
Tel: (515) 281-8414

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

OFFICE OF THE ATTORNEY GENERAL
CARLA J. STOVALL

By _____

Rex G. Beasley
Assistant Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-3751

ALBERT B. CHANDLER III
ATTORNEY GENERAL OF KENTUCKY

David R. Vandeventer
Assistant Attorney General
1024 Capitol Center Drive
Frankfort, KY 40601

CAMylan0400524                                                      CAMylan04005246



**State of Louisiana**
DEPARTMENT OF JUSTICE
PUBLIC PROTECTION DIVISION
**Baton Rouge**
70825

ONE AMERICAN PLACE
301 MAIN ST., SUITE 1250
TELEPHONE (225) 342-7900
FAX (225) 342-7901

RICHARD P. IEYOUB
ATTORNEY GENERAL

RICHARD P. IEYOUB
ATTORNEY GENERAL OF LOUISIANA

BY:  Jane Bishop Johnson

Jane Bishop Johnson
Assistant Attorney General
Louisiana Department of Justice
301 Main Street, Suite 1250
Baton Rouge, LA 70801
(225) 342 2754

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL G. STEVEN ROWE
ATTORNEY GENERAL OF MAINE

By: _____
    Francis Ackerman
    Assistant Attorney General
    6 State House Station
    Augusta, Maine 04333
    207/626-8800

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex, Corp.

J. JOSEPH CURRAN, JR.
ATTORNEY GENERAL OF MARYLAND

ELLEN S. COOPER
Chief, Antitrust Division

MEREDYTH SMITH ANDRUS
Assistant Attorney General
Office of the Attorney General
Antitrust Division
200 St. Paul Place
Baltimore, MD 21202
410-576-6470

CAMylan0400524                                    CAMylan04005249

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL THOMAS F. REILLY
COMMONWEALTH OF MASSACHUSETTS

By: _____
Freda Fishman
Chief, Consumer Protection & Antitrust Division
One Ashburton Place
Boston, MA 02108
(617) 727-2200

CAMylan0400525                                    CAMylan04005250

STATE OF MICHIGAN

JENNIFER M. GRANHOLM
ATTORNEY GENERAL

Paul F. Novak
Assistant Attorney General
Consumer Protection Division
Antitrust and Franchise Section
670 G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30213
Lansing, Michigan 48913
(517) 373-7117

CAMylan0400525                    CAMylan04005251

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL MIKE HATCH
ATTORNEY GENERAL OF MINNESOTA

By: _____
STEPHEN F. SIMON
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN  55101-2130
(651) 296-6468

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan
Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL MIKE MOORE
ATTORNEY GENERAL OF MISSISSIPPI

By: _____

T. Hunt Cole, Jr.
Special Assistant Attorney General
Civil Litigation Division
P. O. Box 220
Jackson, MS 39205
(601) 359-3680