Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL JEREMIAH W. (JAY) NIXON
ATTORNEY GENERAL OF MISSOURI


_____
Michael J. Delaney, #49597
Assistant Attorney General
Wainwright State Office Building
111 North Seventh Street , Suite 204
St. Louis, MO 63101
PHO: (314) 340-6816

CAMylan0400525                                    CAMylan04005254

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL MIKE MCGRATH
ATTORNEY GENERAL OF MONTANA

By: _____
MIKE MCGRATH
Montana Attorney General
Justice Building
215 North Sanders
P.O. Box 201401
Helena, MT  59620-1401
(406) 444-2026

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

Attorney General Don Stenberg
Attorney General of the State of Nebraska

Dale A. Comer, NBA # 15365
Assistant Attorney General
Chief, Legal Services Section
Nebraska Department of Justice
2115 State Capitol
Lincoln, NE 68509
Tel:  (402) 471-2682
Fax: (402) 471-3835

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.


FRANKIE SUE DEL PAPA
ATTORNEY GENERAL OF NEVADA


By: _____
Jacqueline B. Rombardo
Senior Deputy Attorney General
Nevada Bar #6799
1000 E. William Street, Suite 209
Carson City, NV   89701-3117
Telephone: (775) 687-6300, Ext. 239

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL PHILIP T. MCLAUGHLIN
ATTORNEY GENERAL NEW HAMPSHIRE

By: _____
M. Kristin Spath
Senior Assistant Attorney General
33 Capitol Street
Concord, New Hampshire  03301
603-271-3643

CAMylan0400525                                    CAMylan04005258

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL JOHN J. FARMER, JR.
ATTORNEY GENERAL OF THE STATE OF
NEW JERSEY

By: _____
             Robert J. Donaher

Name:     Robert J. Donaher
Title:       Deputy Attorney General
Address:  CN 085, Trenton, NJ 08628
Phone:     (609) 984-1034

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL PATRICIA A. MADRID
ATTORNEY GENERAL OF NEW MEXICO

By: _____
Glenn R. Smith
Special Counsel to the Attorney General
6301 Indian School Rd. N.E., Suite 400
Albuquerque, New Mexico 87110
(505) 841-8098

 

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

Date:   December 21, 2000
New York, NY

ELIOT SPITZER
Attorney General of the
    State of New York

HARRY FIRST
Chief, Antitrust Bureau

By: _____
ROBERT L. HUBBARD
Assistant Attorney General
Director of Litigation, Antitrust Bureau
120 Broadway
New York, NY 10271

Of Counsel
John A. Ioannou
Assistant Attorney General
Antitrust Bureau

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ROY COOPER
ATTORNEY GENERAL OF NORTH CAROLINA

By: _____

K. D. Sturgis
Assistant Attorney General
N.C. State Bar No. 9486
North Carolina Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: 919/716.6000

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

STATE OF NORTH DAKOTA
WAYNE STENEHJEM
ATTORNEY GENERAL

By: _____

Parrell D. Grossman, ID No. 04684
Assistant Attorney General
Director, Consumer Protection &
    Antitrust Div.
Office of Attorney General
600 E Boulevard Ave Dept. 125
Bismarck, ND 58505-0040
(701) 328-2811

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL BETTY D. MONTGOMERY
ATTORNEY GENERAL OF OHIO

By: _____
Mitchell L. Gentile
Principal Attorney
Doreen C. Johnson
Chief, Antitrust Section
140 E. Town St., 12th Floor
Columbus, OH 43215
Phone: 614-466-4328

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA

By: _____
Thomas A. Bates
Assistant Attorney General
4545 N. Lincoln Blvd., Suite 260
Oklahoma City, OK. 73105
405-522-1013

**CAMylan0400526**                                    CAMylan04005265

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

HARDY MYERS
ATTORNEY GENERAL OF OREGON

By: _____
Name:        Andrew E. Aubertine, OSB # 83013
Title:       Assistant Attorney General
Address:     Oregon Department of Justice
             1162 Court Street NE
             Salem OR 97301-4096
Phone:       (503) 378-4732

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

COMMONWEALTH OF PENNSYLVANIA

**D. MICHAEL FISHER**
ATTORNEY GENERAL

By: _____
James A. Donahue, III
Chief Deputy Attorney General
Antitrust Section

Joseph S. Betsko
Tracy W. Wertz
Deputy Attorneys General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-4530

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL SHELDON WHITEHOUSE
ATTORNEY GENERAL OF RHODE ISLAND

By: _____
GERALD COYNE
Deputy Attorney General
150 South Main Street, Providence, R.I. 02903
(401) 274-4400

CHARLIE CONDON
Attorney General of South Carolina


BY: _____
C. HAVIRD JONES, JR.
Senior Assistant Attorney General

P. O. Box 11549
Columbia, SC   29211
(803) 734-3680

**CAMylan0400526**                                    CAMylan04005269

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corporation.

ATTORNEY GENERAL MARK BARNETT
ATTORNEY GENERAL OF SOUTH DAKOTA

By: _____
Name:       Jeffrey P. Hallem
Title:      Assistant Attorney General
Address:    Office of Attorney General
            500 East Capitol Avenue
            Pierre, SD  57501-5070
Telephone:(605) 773-3215

CAMylan0400527                                    CAMylan04005270

STATE OF TENNESSEE
PAUL G. SUMMERS
Attorney General and Reporter


Paul G. Summers


Dennis G. Garvey
Deputy Attorney General
Antitrust Division


J. Patrick Riceci
Assistant Attorney General
Antitrust Division
425 th Avenue North
Nashville, Tennessee 37243
(615) 741-3694

**Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.**

JOHN CORNYN
Attorney General of Texas
ANDY TAYLOR
First Assistant Attorney General
JEFFREY S. BOYD
Deputy Attorney General for Litigation
DAVID A. TALBOT, JR.
Chief, Consumer Protection Division
MARK TOBEY
Chief, Antitrust Section


JOHN T. PRUD'HOMME, JR.
Assistant Attorney General
300 W. 15th Street, 9th Floor
Austin, TX  78711
(512) 463-2185

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL MARK L. SHURTLEFF
ATTORNEY GENERAL OF UTAH

By: _____

Name          Wayne Klein
Title          Assistant Attorney General
Address      160 East 300 South, 5th Floor
                  Box 140872
                  Salt Lake City, UT 84114-0872
Phone        (801) 366-0358

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL WILLIAM H. SORRELL
ATTORNEY GENERAL OF VERMONT

By: _____   1. 9 2001
David Borsykowsky
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier VT 05609-1001
802-828-1057

SETTLEMENT AGREEMENT AMONG PLAINTIFF STATES, THE FEDERAL TRADE COMMISSION, MYLAN LABORATORIES, INC., GYMA LABORATORIES OF AMERICA, INC., PROFARMACO S.R.L., AND CAMBREX CORP.

MARK L. EARLEY
Attorney General

BY: _____
ANNE MARIE CUSHMAC
Assistant Attorney General
Antitrust and Consumer Litigation Section
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-2116
(804) 786-0122 (fax)

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL CHRISTINE O. GREGOIRE
ATTORNEY GENERAL OF WASHINGTON


By: _____
Tina E. Kondo
Senior Assistant Attorney General
Chief, Antitrust Division
Marta Lowy
Assistant Attorney General
900 Fourth Avenue, Suite 2000
Seattle, WA 98164
(206) 464-6433



Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.


ATTORNEY GENERAL DARRELL V. McGRAW, JR.
ATTORNEY GENERAL OF WEST VIRGINIA


By: _____

    Jill L. Miles, Deputy Attorney General
    Office of the Attorney General of West Virginia
    Consumer Protection/Antitrust Division
    Post Office Box 1789
    Charleston, West Virginia  25326-1789
    (304) 558-8986

CAMylan0400527                                    CAMylan04005277

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL JAMES E. DOYLE
ATTORNEY GENERAL OF WISCONSIN

By: _____
KEVIN J. O'CONNOR
Assistant Attorney General
123 West Washington Avenue,
Box 7857
Madison, WI 53707
(608)266-8986

Settlement Agreement among Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

ATTORNEY GENERAL GAY WOODHOUSE
ATTORNEY GENERAL OF WYOMING

By: _____
Christopher Petrie
Assistant Attorney General
Wyoming Attorney General's Office
Consumer protection Unit
123 Capitol Building
Cheyenne, WY  82002
(307) 777-5838

 

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE LORAZEPAM AND CLORAZEPATE ANTITRUST LITIGATION | ) ) ) | CASE NUMBER MDL 1290 (TFH) |
| UNITED WISCONSIN SERVICES, INC., on behalf of itself, its subsidiaries and affiliates, including BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, INC., COMPCARE HEALTH INSURANCE CORPORATION, UNITY HEALTH PLANS INSURANCE CORPORATION, VALLEY HEALTH PLAN INCORPORATED and all others similarly situated, 401 West Michigan Street Milwaukee, Wisconsin 53203 | ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NUMBER 1:99-CV-01082  JUDGE: THOMAS F. HOGAN |
| BLUE CROSS BLUE SHIELD OF KANSAS, INC., on behalf of itself and all others similarly situated, 1133 Topeka Boulevard Topeka, Kansas 66612 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| GROUP HOSPITALIZATION and MEDICAL SERVICES, INC., d/b/a CAREFIRST BLUE CROSS BLUESHIELD, on behalf of itself and all others similarly situated, 550 12th Street S.W. Washington, D.C. 20065, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| MYLAN LABORATORIES, INC. 130 Seventh Street 1030 Century Building Pittsburgh, Pennsylvania 15222 | ) ) ) ) ) ) | |
| MYLAN PHARMACEUTICALS, INC. 781 Chesnut Ridge Road Morgantown, West Virginia 26505 | ) ) ) ) | |

CAMylan0400528                                    CAMylan04005280

CAMBREX CORPORATION )
One Meadowlands Plaza )
East Rutherford, New Jersey 07073 )
)
    - and - )
)
GYMA LABORATORIES OF AMERICA, INC. )
135 Cantiague Rock Road )
Westbury, New York 11590, )
)
                         Defendants. )

**AFFIDAVIT OF BERNARD PERSKY IN
SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED
SETTLEMENT**

2

**CAMylan0400528**                              CAMylan04005281

STATE OF NEW YORK      )
                          ) ss:
COUNTY OF NEW YORK   )

BERNARD PERSKY, being duly sworn, deposes and says:

1.  I am a member of the firm Goodkind Labaton Rudoff & Sucharow LLP, co-indirect purchaser lead counsel with Zwerling, Schachter & Zwerling, LLP in this action.

2.  This affidavit is submitted in support of Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement in this action ("Motion"). I am familiar with the facts of this case and have personal knowledge of the matters set forth herein.

3.  On January 29, 2001, Plaintiffs individually and on behalf of a proposed class of third party payors that reimbursed or otherwise paid, in whole or in part, for prescriptions of tablets of generic Lorazepam and generic Clorazepate, entered into a Stipulation of Settlement with the defendants, Mylan Laboratories, Inc., Mylan Pharmaceuticals. Inc., Cambrex Corporation, and Gyma Laboratories of America, Inc., and SST Corporation.

4.  Plaintiffs now move for entry of the Order Conditionally Certifying Settlement Class and Preliminarily Approving Proposed Settlement, submitted herewith.

5.  In addition, in support of its Motion, Plaintiffs also submit the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Settlement.

6.  Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation of Settlement, executed by counsel for the settling parties on January 29, 2001 and filed with the Court on February 1, 2001.

7.  Attached hereto as Exhibit 2 is a true and correct copy of the Allocation and Distribution Plan which the Plaintiffs also propose to be preliminarily approved by the Court.

8.  Attached hereto as Exhibit 3 are materials describing the publications in which Plaintiffs propose the summary notice appear.

3

 

9.   Attached hereto as Exhibit 4 are materials describing the qualifications and experience of Complete Claim Solutions, Inc., the proposed Settlement Administrator.

10. Attached hereto as Exhibit 5 is an order dated May 21, 1999 entered in the action pending in the State of Tennessee entitled *Middle Tennessee Teamsters Trust Fund v. Mylan Laboratories, Inc.*, Case No. 98-3833.

11. Attached hereto as Exhibit 6 is an order dated May 28, 1999 entered in the action pending in the State of New Jersey entitled *Cement Masons Local #699 Health and Welfare Fund v. Mylan Laboratories, Inc.*, Case No. MER-L-00431-99.

WHEREFORE, for the reasons set forth in the Motion, Plaintiffs respectfully request that the Motion be granted.

Bernard Persky

Sworn to before me this
1st day of February 2001

Notary Public

PATRICIA KLOS
Notary Public, State of New York
No. 41-4604998
Qualified in Suffolk County
Term Expires May 31, 20 0 1

428736v1

4

CAMylan0400528                                    CAMylan04005283

1

CAMylan0400528

CAMylan04005284

# ATTACHMENT 1

## FINAL ESCROW AGREEMENT

THIS FINAL ESCROW AGREEMENT, dated as of January__, 2001 ("Final Escrow"), is entered into by the State of Ohio as liaison counsel, through its Attorney General, on behalf of the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming (herein referred to as "Plaintiff States"), Mylan Pharmaceuticals, Inc.("Mylan"), SST Corporation ("SST") and Fifth Third Bank, as Escrow Agent hereunder ("Escrow Agent").

## WHEREAS:

The Plaintiff States, the Federal Trade Commission, and defendants Mylan Laboratories Inc.,Gyma Laboratories of America, Inc.,Profarmaco S.r.l., and Cambrex Corp. have entered into a settlement agreement (the "Settlement") pursuant to which litigation by the Plaintiff States and the Federal Trade Commission against these defendants will be resolved, upon Court approval,and under which Mylan has paid pursuant to an interim escrow agreement ("Interim Escrow", attached hereto as exhibit A), c/o the Escrow Agent, $28,217,983 into the Mylan Antitrust Action State Claims Account 28  28 002 6013106 (the "State Fund") and $71,782,017 into the Mylan Antitrust Action Consumer Claims Account 2828 002 6013098 (the "Consumer Fund"), and Mylan has agreed to pay up to an additional $8,000,000 to the Cost and Fee Account for fees and costs of litigation incurred by the Litigating Plaintiff States;

A settlement agreement (the "SST Settlement") has also been entered into between the Plaintiff States and defendant SST that provides that SST shall pay, c/o the Escrow Agent, at least $500,000 as follows: $108,750 into the SST Agency Account, $266,250 into the SST Consumer Fund, and at least $125,000, plus certain additional funds that may accrue to the Plaintiff States as a result of SST's settlement with the Plaintiff States and proposed settlements with private plaintiffs, into the SST Cost and Fee Account;

Plaintiff States have appointed the Attorney General of the State of Ohio as Liaison Counsel (as defined below) to represent them in connection with the litigation and the settlement thereof, and;

Counsel for the Plaintiff States, by and through the Plaintiff States' Liaison Counsel, agree to appoint Fifth Third Bank as the Escrow Agent, and Fifth Third Bank is willing to act as Escrow Agent hereunder in accordance with the terms and conditions of this Final Escrow. In order to administer the Escrow Funds (as defined below), the parties hereto have entered into this Final Escrow.

## STATEMENT OF AGREEMENT

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, for themselves, their successors and assigns, hereby agree to the foregoing and as follows:

FILED

1.   Definitions:

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

a.    All capitalized terms used herein shall have the same meaning as provided for in the Settlement or SST Settlement, whichever is applicable, unless the capitalized term is expressly defined herein.

b.    "Written Direction" shall mean a written notification, signed by the Plaintiff States' Representatives, in the form attached hereto as Exhibit B. Each Written Direction shall include a certification by the Plaintiff States' Representatives that the instructions in the notification are being made pursuant to the terms of the Settlements and this Final Escrow.

c.    "Escrow Funds" shall mean (i) the funds deposited by Mylan with the Escrow Agent pursuant to the Interim Escrow including interest earned thereon (defined in the Interim Escrow therein as "Escrow Amounts"), (ii) funds deposited pursuant to this Final Escrow to the Cost and Fee Account, the SST Agency Account, the SST Consumer Fund, and the SST Cost and Fee Account, and (iii) any and all earnings and/or interest from investment of the Escrow Funds.

d.    "Liaison Counsel for the Plaintiff States" or "Liaison Counsel" means the State of Ohio, through Betty D. Montgomery, Attorney General, or any other person or persons designated by her or any official successor.

e.    "Plaintiff States' Representatives" shall mean Betty D. Montgomery, Attorney General of the State of Ohio, and J. Joseph Curran, Jr., Attorney General of the State of Maryland, or any other person or persons designated by them or any official successors.

f.    "Settlements" shall mean the Settlement and the SST Settlement.

2.    <u>Appointment of and Acceptance by Escrow Agent</u>.    The Plaintiff States' Representatives hereby appoint Fifth Third Bank to serve as the Escrow Agent hereunder. Escrow Agent hereby accepts such appointment and agrees to hold, invest and disburse all Escrow Funds in accordance with this Final Escrow.

3.    <u>Distribution Accounts</u>.

a.    In addition to the State Fund and the Consumer Fund already established under the Interim Escrow, Escrow Agent shall separately establish the SST State Fund and the SST Consumer Fund (collectively, the "Accounts").

b.    Escrow Agent shall establish two (2) segregated subaccounts within the State Fund: the Agency Account and the Cost and Fee Account. Mylan shall fund the Cost and Fee Account by wire transfer pursuant to the Final Order within five (5) business days following entry of the Final Order. Escrow Agent shall segregate the payment already made by Mylan to the State Fund pursuant to the Interim Escrow, including interest thereon, into the Agency Account. Escrow Agent shall continue to maintain the Consumer Fund separately. Escrow Agent shall also account separately for the interest earned upon the Cost and Fee Account, Agency Account, and the Consumer Fund.

c.    SST shall fund by wire transfer the SST Consumer Fund within twenty (20) days after preliminary approval of the SST Settlement. Escrow Agent shall establish two (2) segregated subaccounts within the SST State Fund: the SST Agency Account and the SST Cost and Fee Account. SST shall fund by wire transfer the SST Agency Account within twenty (20) days after preliminary approval of the SST Settlement. SST shall wire transfer $125,000 to the SST Cost and Fee Account within twenty (20) days after preliminary approval of the SST Settlement. Any additional funds accruing to the Plaintiff States

2

pursuant to SST's settlement with the Plaintiff States and proposed settlements with private plaintiffs shall be transferred to the SST Cost and Fee Account within twenty (20) days of such funds accruing to the Plaintiff States. Escrow Agent shall account separately for the interest earned upon the SST Cost and Fee Account, the SST Agency Account, and the SST Consumer Fund.

4. <u>Disbursement of Escrow Funds.</u>

a. The Escrow Agent shall disburse Escrow Funds solely as provided for herein or by order of the Court. At the Effective Date, as defined in the Mylan Settlement Agreement, which is incorporated herein as Exhibit D, the Plaintiff States and Mylan shall jointly instruct the Escrow Agent, in writing, that it may disburse funds from the Consumer Fund and State Fund pursuant to this Paragraph 4c, d and e. At the Effective Date, as defined in the SST Settlement Agreement, which is incorporated herein as Exhibit E, the Plaintiff States and SST shall jointly instruct the Escrow Agent, in writing, that it may disburse funds from the SST Consumer Fund and SST State Fund pursuant to this Paragraph 4c, d and e.

b. Escrow Agent shall pay from the Consumer Fund the costs and expenses associated with administering the Settlements, including, without limitation, costs and expenses for providing proper notice of the Settlements, expert or consulting fees, the processing and payment of claims, and the fees and expenses of the Escrow Agent; except those expenses incurred in writing checks and distribution of the Agency Account shall be paid from the Agency Account. Taxes and Tax Expenses shall be paid as provided for in Paragraph 8 below.

c. Escrow Agent shall distribute Escrow Funds for compensation to natural persons only from the Consumer Fund and the SST Consumer Fund. Escrow Agent shall distribute the Consumer Fund for compensation to natural persons upon Written Direction from Plaintiff States' Representatives. Escrow Agent shall distribute the SST Consumer Fund to natural persons upon Written Direction from Plaintiff States' Representatives. If requested by Plaintiff States' Representatives, and if approved by the Court, Escrow Agent shall distribute any residue and/or interest remaining in the Consumer Fund and/or the SST Consumer Fund to the Litigating Plaintiff States for *cy pres* distribution by their respective Attorneys General.

d. Escrow Agent shall distribute Escrow Funds for compensation to state agencies only from the Agency Account and the SST Agency Account. Escrow Agent shall distribute the Agency Account for compensation to state agencies upon Written Direction from Plaintiff States' Representatives. Escrow Agent shall distribute the SST Agency Account for compensation to state agencies upon Written Direction from Plaintiff States' Representatives.

e. Escrow Agent shall distribute Escrow Funds for reimbursement of attorney fees and costs incurred by Litigating Plaintiff States, and/or contribution to the NAAG Milk Fund, solely from the Cost and Fee Account and the SST Cost and Fee Account. Escrow Agent shall distribute the Cost and Fee Account for such reimbursement and/or contribution upon Written Direction from Plaintiff States' Representatives. Escrow Agent shall distribute the SST Cost and Fee Account for such reimbursement and/or contribution upon Written Direction from Plaintiff States' Representatives.

5. <u>Cooperation with Other Parties.</u> Escrow Agent shall, at the direction of the Plaintiff States' Representatives, cooperate with and provide all account and other necessary information to any company or person employed by the Plaintiff States to administer a consumer claims procedure, including any cooperation necessary for the issuance of consumer refund checks by such claims administrator.

3

CAMylan0400528                                    CAMylan04005287

6. _Termination of Settlement Agreement._ If the Settlement is not approved or is terminated, cancelled, voided or the Effective Date does not occur for any reason ("Terminating Event"), all Escrow Funds paid by Mylan (and interest thereon) shall be refunded to Mylan, reduced by the actual out-of-pocket costs and expenses incurred or committed in the administration of the Settlements to the date of the Terminating Event. In such case, refund shall occur within thirty (30) days of notification of the Terminating Event, in writing, from Mylan and the Plaintiff States'Representatives to the Escrow Agent. If the SST Settlement is not approved or is terminated, cancelled, voided or the Effective Date of the SST Settlement does not occur for any reason ("SST Terminating Event"),all Escrow Funds paid by SST (and interest thereon) shall be refunded to SST. In such case, refund shall occur within thirty (30) days of notification of the SST Terminating Event, in writing, from SST and the Plaintiff States'Representatives to the Escrow Agent. The refund to Mylan and/or SST shall be reduced by the pro-rata share of any Taxes and Tax Expenses (as those terms are defined below) paid or owed by the effected Account(s) through, as applicable, the date of the Terminating Event and/or the SST Terminating Event.

7. _Investment of Escrow Funds._ Escrow Agent shall, in accordance with Written Directions, invest the Escrow Funds in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies, or in pre-refunded or escrowed municipal bonds which are federally insured, to obtain the highest available return on investment, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. Escrow Agent shall bear all risks related to the investment of Escrow Funds. The Escrow Funds shall be deemed and considered to be in _custodia legis_ of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such Escrow Funds are fully distributed or upon further order(s) of the Court.

8. _Preparation and Payment of Taxes._ Escrow Agent shall establish and treat the Accounts as each being at all times a separate "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, and ensure that each Account is treated as a separate taxpayer. In addition, Escrow Agent and, as required, the parties hereto shall jointly and timely make such elections as necessary or advisable to carry out the provisions of the Settlements, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation. It shall be the responsibility of Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing(s) to occur. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to each Account (including without limitation the returns described in Treas. Reg. §1.468B-2 K and L). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by each Account shall be paid by the effected Account. All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by an Account, including any taxes or tax detriments that may be imposed upon Mylan and/or SST with respect to any income earned by that Account for any period during which that Account does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described herein) ("Tax Expenses"), shall be paid out of effected Account. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlements and shall be timely paid by Escrow Agent out of the effected Account without prior order from the Court, and Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Plaintiff States any monies necessary to pay such amounts including the establishment for adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas.

4

Reg. §1.468B-2(1), (2)); Mylan and SST are not responsible and shall have no liability therefor or for any reporting requirements that may relate thereto. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph. Escrow Agent shall be responsible for and liable for any negligence in preparation and filing of Taxes and Tax Expenses (including, without limitation, taxes payable by reason of such negligence).

9.    Resignation and Removal of Escrow Agent. Escrow Agent may resign from the performance of its duties hereunder at any time by giving sixty (60) days prior written notice to the Plaintiff States' Representatives or may be removed, with or without cause, by the Plaintiff States' Representatives, by furnishing thirty (30) days prior written notice to Escrow Agent. Such resignation or removal shall take effect upon the appointment of a successor Escrow Agent as provided herein. Upon any such notice of resignation or removal, the Plaintiff States' Representatives shall appoint a successor Escrow Agent hereunder, subject to the approval of Mylan and SST. Upon the acceptance in writing of any appointment as Escrow Agent hereunder by a successor Escrow Agent, such successor Escrow Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Escrow Agent, and the retiring Escrow Agent shall be discharged from its duties and obligations under this Final Escrow, but shall not be discharged from any liability for actions taken as Escrow Agent hereunder prior to such succession. The retiring Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all Escrow Funds to the successor Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable and after deduction by and payment to the retiring Escrow Agent (after written notice to Plaintiff States' Representatives) of all fees and expenses incurred by or expected to be incurred by the retiring Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

10.    Liability of Escrow Agent. The duties and obligations of the Escrow Agent shall be determined by the express provisions of this Final Escrow and the Settlements, and no implied duties or obligations shall be inferred or otherwise imposed upon or against the Escrow Agent, and the Escrow Agent shall not be liable except for the performance of such duties and obligations as are specifically set out in this Final Escrow and the Settlements.

11.    Fees and Expenses of Escrow Agent.

a.    The Escrow Agent shall be compensated for its services hereunder in accordance with Exhibit C attached hereto, pursuant to the bid accepted by Liaison Counsel.

b.    Escrow Agent is authorized to, and may disburse, to itself the amount of any compensation due and payable hereunder in accordance with Paragraph 4(b) above and this Paragraph. Such compensation may be directly disbursed by the Escrow Agent to itself on a monthly basis, thirty (30) days after giving written notice, consisting of an itemization of compensation earned, and copies of invoices, to the Plaintiff States' Representatives and Mylan.

12.    Reports and Accounting. Escrow Agent will provide monthly reports to Plaintiff States' Representatives, and, if requested, to Mylan and SST, in a form that is acceptable to the Plaintiff States' Representatives, reflecting income and disbursement activity of the Escrow Funds for the period and year to date. The Escrow Agent shall further issue a final report and accounting which will summarize the income, expenses, and disbursements associated with the administration of the Escrow Funds and such other reports as the Plaintiff States' Representatives may reasonably require from time to time. Escrow Agent shall provide copies of the final report and accounting to Mylan and SST. Reports and the status of all accounts shall be accessible to the Plaintiff States' Representatives on-line. The Escrow Agent will provide the name of the

5

officer who will have principal responsibility of the management of the Escrow Funds and the Escrow Agent's relationship with the Office of the Ohio Attorney General.

13.    Consent to Jurisdiction and Venue.  In the event that any party hereto commences a lawsuit or other proceeding relating to or arising from this Escrow Agreement, the parties hereto agree that the District Court for the District of Columbia shall have the sole and exclusive jurisdiction over any such proceedings.  Such Court shall have proper venue for any such lawsuit or judicial proceeding and the parties hereto waive any objection to such venue.  The parties hereto consent to and agree to submit to the jurisdiction of such court and agree to accept service of process to vest personal jurisdiction over them in such Court.

14.    Notices.  All notices and other communications hereunder shall be in writing and shall be deemed to have been validly served, given or delivered five (5) days after deposit in the United States mails, by certified mail with return receipt requested and postage prepaid, when delivered personally, one (1) day after delivery to any overnight courier, or when transmitted by facsimile transmission facilities, and addressed to the party to be notified as follows:

If to Plaintiff States at:

Doreen C. Johnson
Chief, Antitrust Section
Mitchell L. Gentile
Principal Attorney
Office of the Ohio Attorney General
140 East Town Street, 12th Floor
Columbus, Ohio 43215

Meredyth Andrus
Assistant Attorney General
Office of the Attorney General of Maryland
Antitrust Division
200 St. Paul Place, 19th Floor
Baltimore, Maryland 21202-2021

If to Mylan at:

James B. Weidner
Clifford Chance Rogers & Wells LLP
200 Park Avenue
New York, New York 10166-0153

If to SST at:

Sidney S. Rosdeitcher
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, New York 10019-6064

If to Escrow Agent at:

Fifth Third Bank
Frank Wojcik
Vice President
21 East State Street
Columbus, Ohio  43215

or to such other address as each party may designate for itself by like notice.

6

CAMylan0400529                                   CAMylan04005290

15. <u>Rights to Account.</u> Neither the Plaintiff States, their agencies or departments, nor any member of any *parens* or consumer class, shall have any rights or title to or interest in any portion of any Escrow Funds or Accounts except as provided by order of the Court.

16. <u>Amendment or Waiver.</u> This Final Escrow may be changed, waived, discharged or terminated only by a writing signed by Liaison Counsel for the Plaintiff States, Mylan, SST, and the Escrow Agent. No delay or omission by any party in exercising any right with respect hereto shall operate as a waiver. A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion. Escrow Agent agrees to enter into an amendment of this Final Escrow with respect to the treatment, designation, and/or use of the Escrow Funds, including, without limitation, the tax treatment of the Escrow Funds, should such amendment be deemed warranted by Plaintiff States' Representatives, Mylan and SST.

17. <u>Governing Law.</u> This Final Escrow shall be construed and interpreted in accordance with the laws of the State of Ohio without giving effect to the conflict of laws principles thereof.

18. <u>Entire Agreement.</u> This Final Escrow and the Settlements constitute the entire agreement between the parties relating to the holding, investment and disbursement of the Escrow Funds and set forth in their entirety the obligations and duties of Escrow Agent with respect to the Escrow Funds.

19. <u>Binding Effect.</u> All of the terms of this Final Escrow, as may be amended from time to time, shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, successors and assigns.

20. <u>Execution in Counterparts.</u> This Final Escrow may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement.

21. <u>Dealings.</u> Nothing herein shall preclude the Escrow Agent from acting in any other capacity for any party, person or entity referenced herein.

**IN WITNESS WHEREOF**, the parties hereto have caused this Final Escrow to be executed under seal as of the date first above written.

### PLAINTIFF STATES

By: _____

Title: <u>Director of Administration for Liaison Counsel</u>

### MYLAN PHARMACEUTICALS, INC.

By: _____

Counsel for Mylan Pharmaceuticals, Inc.

### SST CORPORATION

7

By: _____

Counsel for SST Corporation

**FIFTH THIRD BANK**

By: _____

Title: _Vice President_____

8

### EXHIBIT B

### JOINT WRITTEN DIRECTION
### EXAMPLE

### STATE OF CONNETICUT ET AL V MYLAN PHARMACEUTICALS ET AL
### ESCROW # _____

In accord with the Final Escrow Agreement, dated _____, 2001 and the

Settlement Agreements referenced in the Escrow Agreement, the Plaintiff States' Representatives

direct _____ as the Escrow Agent to take the following action with

respect to the Escrow Funds.  The Escrow Agent shall:

_____

_____

_____

_____

DATED: _____, 2001          **PLAINTIFF STATES**

                                    By: _____

                                    By: _____

                                    Plaintiffs' States' Representatives

9

**Exhibit C**

**Schedule of Fees and Expenses**

**Out of Pocket Expenses:**         $0  (Absorbed in the Administrative Fee)

**Annual Administration Fee:**         $20,000

**Investment Fee:**
    For Interest-Bearing or Money

    Market Account:       3 basis points      (.0003) times average annual   Assets.

    For purchases of
    Treasury Securities:       $0

**Other:**       $0

Fifth Third Bank
21 East State Street
Columbus, Ohio 43215
Attention:  Frank Wojcik
(614) 233-4413

Schedule of Fees and Expenses Exhibit C

10

**CAMylan0400529**          CAMylan04005294

2

CAMylan0400529   CAMylan04005295

ATTACHMENT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 1:98-CV-3114 (TFH) |
| | ) |
| MYLAN LABORATORIES, INC., | ) |
| CAMBREX CORP., | ) |
| PROFARMACO S.R.L., and | ) |
| GYMA LABORATORIES OF AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| THE STATE OF CONNECTICUT, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 1:98-CV-3115 (TFH) |
| | ) |
| MYLAN LABORATORIES, INC., | ) |
| CAMBREX CORP., | ) |
| PROFARMACO S.R.L., | ) |
| GYMA LABORATORIES OF AMERICA, INC., | ) |
| and SST CORP., | ) |
| Defendants. | ) |
| | ) |

## [PROPOSED] FINAL JUDGMENT AND ORDER

**WHEREAS** the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana,

Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New

1

FILED

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, and the Commonwealths of Kentucky, Massachusetts, Pennsylvania, and Virginia, through their Attorneys General, and the District of Columbia through its Corporation Counsel ("Plaintiff States" as defined below), and the Federal Trade Commission, have filed Complaints for damages, divestment, disgorgement, restitution and other equitable relief, injunctive relief, and civil penalties against the defendants Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp., alleging violations of the Sherman Act, Federal Trade Commission Act, and state antitrust and unfair competition and/or consumer protection laws.

**WHEREAS** Plaintiff States, the Commission and Settling Defendants desire to resolve any and all disputes arising from the Complaints. The parties executed a settlement agreement on _____(the "Mylan Settlement Agreement"). The Mylan Settlement Agreement was filed with the Court on _____, 2001. The Mylan Settlement Agreement does not constitute any evidence against or an admission of liability by the Settling Defendants.

**WHEREAS** in full and final settlement of the claims set forth in the Complaints, Mylan Pharmaceuticals, Inc. has paid $100 million in cash, of which $71,782,017.00 was paid into a Consumer Fund, to be distributed in accordance with the Consumer Distribution Plan, and of which $28,217,983.00 was paid into a State Fund, to be distributed in accordance with the Government Compensation Plan, as set forth in the Mylan Settlement Agreement. Mylan Pharmaceuticals, Inc. has further agreed to pay up to $8 million in cash into the Cost and Fee Account, as set forth in the

2

Mylan Settlement Agreement. Settling Defendants have also agreed to entry of this Final Judgment and Order.

**WHEREAS** the Commission and Settling Defendants have entered into a Stipulated Permanent Injunction, which was approved by the Commission on November 29, 2000, Attachment 4 to the Mylan Settlement Agreement, incorporated herein by reference.

**WHEREAS** the Plaintiff States have also filed a Complaint for damages, divestment, disgorgement, restitution and other equitable relief, and civil penalties against SST Corporation ("SST"), alleging violations of the Sherman Act and state antitrust and unfair competition and/or consumer protection laws ("SST Complaint").

**WHEREAS** the Plaintiff States and SST Settling Defendant desire to resolve any and all disputes arising from the SST Complaint. The parties executed a settlement agreement on _____, 2001 (the "SST Settlement Agreement"). The SST Settlement Agreement was filed with the Court on _____, 2001. The SST Settlement Agreement does not constitute any evidence against or an admission of liability by SST Settling Defendant.

**WHEREAS** in full and final settlement of the claims set forth in the SST Complaint, SST has paid to the Plaintiff States $500,000, c/o the Escrow Agent appointed pursuant to the Settlement Agreements, and the Plaintiff States' share of the $1 million payment made pursuant to SST's settlement in the Advocate Action. SST Settling Defendant has also agreed to the entry of this Final Judgment and Order.

**WHEREAS** Plaintiff States have agreed to release the claims of consumers residing in the Plaintiff States who have not submitted valid and timely requests for exclusion from the Settlement

3

CAMylan0400529                                    CAMylan04005298

Group in accordance with the instructions contained in the Notice, and the Commission has agreed to release its equitable claims.

**WHEREAS** pursuant to a Preliminary Approval Order, Notice of the Settlement Agreements was given to the Settlement Group pursuant to Court order in accordance with Federal Rules of Civil Procedure 23(c)(2) and 23(e), state *parens patriae* laws and/or state equitable authority and the requirements of due process.

**WHEREAS** an opportunity to be heard was given to all members of the Settlement Group requesting to be heard in accordance with this Court's orders. The Court has reviewed and considered the terms of the Settlement Agreements, the submissions of the parties in support thereof, and the comments received in response to the Notice. After holding a hearing on _____, 2001 at which all interested parties were given an opportunity to be heard,

**NOW, THEREFORE**, before the taking of any testimony, without trial or adjudication of any issue of fact or law herein, without any admission of liability or wrongdoing by Settling Defendants or SST Settling Defendant and upon the consent of the Parties hereto, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

### I. JURISDICTION

The Court has jurisdiction over the subject matter of this action and the parties hereto. The Plaintiff States brought this action asserting claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and claims under state antitrust, unfair competition and consumer protection statutes, and common law. The Commission brought this action under Sections 5 and 13(b) of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 53(b). Jurisdiction lies in this Court pursuant

4

to 28 U.S.C. §§ 1331, 1337 and 1367(a).  Venue is proper in the District of the District of Columbia.

## II. DEFINITIONS

As used in this Final Judgment and Order, the following definitions shall apply:

A.       "Advocate Action" means the action entitled *Advocate Health Care, et al. v. Mylan Laboratories, Inc., et al.,* which is one of the coordinated cases in *In re Lorazepam and Clorazepate Antitrust Litigation,* Case No. MDL-1290 in this Court.

B.       "Agency Account" means a separate account, established within the State Fund, funded and distributed as specified in the Mylan Settlement Agreement.

C.       "Class" means the class certified for settlement purposes only as provided in Section IV. hereof.

D.       "Commission" means the Federal Trade Commission.

E.       "Commission's Complaint" means the complaint filed by the Commission on December 21, 1998, as amended on February 8, 1999, against Settling Defendants in the United States District Court for the District of Columbia.

F.       "Consumer Distribution Plan" means the plan and method of allocation of the Consumer Fund and the SST Consumer Fund submitted for this Court's approval by the Plaintiff States.

G.       "Consumer Fund" means an interest-bearing escrow account, established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the Mylan Settlement Agreement.

5

H.     "Cost and Fee Account" means a segregated account established within the State Fund and funded as set forth in the Mylan Settlement Agreement.

I.     "Court" means the United States District Court for the District of Columbia.

J.     "Escrow Agent" means the person or entity chosen by the Plaintiff States and designated pursuant to the Escrow Agreement to administer the Consumer Fund and State Fund as set forth in the terms of the Mylan Settlement Agreement, and the SST Consumer Fund and SST State Fund as set forth in the terms of the SST Settlement Agreement.

K.     "Escrow Agreement" means the escrow agreement, attached to the Settlement Agreements as Attachment 1.

L.     "Government Compensation Plan" means the plan and method of allocation of the State Fund and the SST State Fund submitted for this Court's Approval by the Plaintiff States.

M.     "Litigating Plaintiff States" means the 33 Plaintiff States that participated in the litigation and negotiation of the settlements of these actions: Alaska, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin.[1]

N.     "Mylan Settlement Agreement" means the Settlement Agreement between Plaintiff

---

[1] For purposes of the litigation and this settlement, the definition of "Litigating Plaintiff States" or "Plaintiff States" does not include the University of California. It is stipulated by the Parties that the California Attorney General has not represented the interests of the University of California in the litigation or the settlement thereof, and the University of California has not been participating in this action.

6

States, the Federal Trade Commission and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

O.     "Notice" means the notice or notices of these Settlement Agreements and hearing thereof that were disseminated to the members of the Settlement Group pursuant to this Court's Order of _____.

P.     "Notice Plan" means the Court-approved process by which the Plaintiff States notified the Settlement Group of the Settlement Agreements.

Q.     "Parties" means Plaintiff States, the Commission, Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., Cambrex Corp. and SST Corporation.

R.     "Person" means any natural person, partnership, corporation, or business entity.

S.     "Plaintiff States" means the Litigating Plaintiff States and any State that became a party to the Settlement Agreements, through the State's Attorney General, individually and as authorized by law, in the state's sovereign capacity, on behalf of state agencies, in a statutory, equitable and/or common law capacity, and as representative of and/or *parens patriae* on behalf of all natural person citizens of such State who purchased either or both of the Relevant Drugs during the Relevant Period.

T.     "Plaintiff States' Complaint" means the complaint filed by the Litigating Plaintiff States on December 21, 1998, as amended on February 8, 1999 and again on May 13, 1999 and the Third Amended Complaint filed by the Plaintiff States on _____,2001.

7

CAMylan0400530                                                    CAMylan04005302

U.     "Preliminary Approval Order" means the Court's Order of _____, 2001 preliminarily approving the Settlement Agreements and establishing a schedule for Notice and further proceedings.

V.     "Released Claims" means all claims, counterclaims, set-offs, demands, actions, rights, liabilities, and causes of action arising under federal or state antitrust, unfair methods of competition, or consumer protection laws, under state or federal unfair or deceptive trade practices acts, or under common law, asserted or that could have been asserted, by the Commission, by Settling Members of the Settlement Group, or by the Plaintiff States on behalf of state agencies and/or natural person consumers within the Plaintiff States against Settling Defendants and SST Settling Defendant arising from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged in the Commission's Complaint or in the Plaintiff States' Complaint.

W.     "Relevant Drugs" means generic lorazepam or clorazepate sold in the United States.

X.     "Relevant Period" means the period from January 1, 1998 through December 31, 1999.

Y.     "Settlement Agreements" means the Mylan Settlement Agreement and the SST Settlement Agreement.

Z.     "Settlement Group" means all natural person consumers represented by Attorneys General for the Plaintiff States, individually and as authorized by law in a statutory, equitable and/or common law capacity, as *parens patriae* and/or as representatives of the Class.

AA.    "Settling Defendants" means Mylan Laboratories, Inc. ("Mylan"), Gyma Laboratories

8

of America, Inc. ("Gyma"), Profarmaco S.r.l. ("Profarmaco"), Cambrex Corp. ("Cambrex"), and any and all of their affiliates, subsidiaries, divisions and other organizational units of any kind, their successors and assigns, and their former, current and future officers, directors, employees, agents, attorneys, representatives, shareholders, partners and other persons acting on their behalf.

BB.    "Settling Members of the Settlement Group" means each and every member of the Settlement Group who did not exercise his or her right to exclude himself or herself from the Settlement Group pursuant to a proper written request for exclusion postmarked on or before _____, 2001.

CC.    "SST" or "SST Corporation" means SST Corporation, a New Jersey Corporation with its principal place of business in Clifton, New Jersey.

DD.    "SST Agency Account" means a separate account established within the SST State Fund, funded and distributed as specified in the SST Settlement Agreement.

EE.    "SST Consumer Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the SST Settlement Agreement.

FF.    "SST Cost and Fee Account" means a segregated account established within the SST State Fund and funded as set forth in the SST Settlement Agreement.

GG.    "SST Settlement Agreement" means the Settlement Agreement between Plaintiff States and SST Corporation.

HH.    "SST Settling Defendant" means SST Corporation, and any and all of its affiliates, subsidiaries, divisions and other organizational units of any kind, their successors and assigns, and

9

CAMylan0400530                                    CAMylan04005304

the former, current and future officers, directors, employees, agents, attorneys, representatives, shareholders and partners of each of the foregoing, and other persons acting on their behalf.

II.     "SST State Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the SST Settlement Agreement.

JJ.    "State Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the Mylan Settlement Agreement

KK.   "State Liaison Counsel" or "Liaison Counsel for Plaintiff States" means the Attorney General of the State of Ohio.

LL.    "Stipulated Permanent Injunction" means the injunction entered into between the Commission and the Settling Defendants in the action entitled *Federal Trade Commission v. Mylan, et al.*, approved by the Commission on November 29, 2000, in the form of Attachment 4 to the Mylan Settlement Agreement.

### III. APPLICABILITY

This Final Judgment and Order shall apply to the Plaintiff States, the Commission, the Settling Members of the Settlement Group, the Settling Defendants, and SST Settling Defendant.

### IV. FINAL APPROVAL OF SETTLEMENTS AND CERTIFICATION OF THE SETTLEMENT CLASS

A.     With respect to the claims set forth in the Plaintiff States' Complaint, the Court confirms its Preliminary Approval Order and finds under the circumstances of these settlements that

10

the prerequisites to a class action set forth in Federal Rules of Civil Procedure 23(a) and (b) are

satisfied, that the questions of law and fact common to the members of the class predominate over

any questions affecting only individual members, and that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

Accordingly, for the purpose of these settlements only, a class consisting of

all natural person consumers within Plaintiff States where such a class
action may be brought, not otherwise represented by the Plaintiff States as
*parens patriae*, who purchased generic lorazepam and/or clorazepate sold
in the United States from January 1, 1998 through December 31, 1999

(the "Class") is hereby certified.  The States within that Class are set forth in Section VI. below.

B.      The Court finds that the Notice was the best notice practicable under the

circumstances and constitutes due and sufficient notice.

C.      The terms of the Settlement Agreements are adjudged as fair, reasonable and adequate

and in the best interest of consumers in the Plaintiff States and the Settlement Group as a whole, and

satisfy the requirements of Federal Rule of Civil Procedure 23(e), state *parens patriae* laws and/or

state equitable authority and due process.

D.      The Settlement Agreements are hereby approved, and the Parties are directed to

implement the settlements in accordance with their terms.

E.      The Consumer Distribution Plan and Government Compensation Plan are hereby

approved, and Plaintiffs are directed to cause the settlement funds to be distributed in accordance

with said plans.

F.      All members of the Settlement Group were afforded the opportunity to exclude

themselves from the Settlement Group.  A list of those members of the Settlement Group who timely

11

and properly requested exclusion is attached hereto as Exhibit A.

G.      All payments made by Mylan Pharmaceuticals, Inc. and SST Corporation pursuant to the Settlement Agreements are not, and shall not, be considered the payment of a penalty or fine under any state or federal laws, rules or regulations, or any other applicable statute or provision.

## V. INJUNCTION

The terms of the Stipulated Permanent Injunction entered into by Settling Defendants and the Commission, which was approved by the Commission on November 29, 2000, shall be binding on all the parties to the Mylan Settlement Agreement, and may be enforced by the Plaintiff States for the term provided for in the Stipulated Permanent Injunction in the following manner:

A.      Settling Defendants shall provide the notices and/or reports pursuant to Sections VI, VII and VIII of the Stipulated Permanent Injunction to State Liaison Counsel, c/o Chief, Antitrust Section, Office of the Ohio Attorney General, 140 East Town Street, 12th Floor, Columbus, Ohio 43215.

B.      Communications involving the Stipulated Permanent Injunction shall be communicated to Settling Defendants by State Liaison Counsel. All such communications shall be addressed to Settling Defendants as provided for in Secion XI(G) of the Mylan Settlement Agreement.

C.      Each Plaintiff State shall enforce Sections III, IV and V of the Stipulated Permanent Injunction through a committee comprised of the Offices of the Attorneys General for the States of Ohio, Maryland and Kentucky (the "Committee").

12

D.      The Stipulated Permanent Injunction shall be enforced by the Plaintiff States by and through the Committee in the District Court for the District of Columbia.

## VI. DISMISSAL OF ACTIONS AND RELEASES OF CLAIMS

Subject to the provisions of Section IX of this Final Judgment and Order, the Commission's and the Plaintiff States' Complaints are dismissed with prejudice.  The Commission, Plaintiff States, and Settling Members of the Settlement Group are barred from further prosecution of the Released Claims, and Settling Defendants and SST Settling Defendant are released and forever discharged from liability for the Released Claims.

The States of Alabama, Alaska, Arizona, California, Colorado, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin have authority to release, and are releasing, Settling Members of the Settlement Groups' claims pursuant to each Attorney General's *parens patriae* authority under state law.

The States of Alaska, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Wisconsin, and Wyoming further have authority to release, and are releasing, Settling Members of the Settlement Groups' claims pursuant to each Attorney General's authority under Rule 23 of the Federal Rules of Civil Procedure.

13

CAMylan0400530                                    CAMylan04005308

The State of Colorado has further authority to release, and is releasing, Settling Members of the Settlement Groups' claims pursuant to the Attorney General's equitable authority under §6-4-111 C.R.S (2000).

The State of Maryland has authority to release, and is releasing, Settling Members of the Settlement Groups' claims pursuant to the Attorney General's equitable authority under Md. Com. Law Code Ann. §11-209.

The State of Washington has further authority to release, and is releasing, its claims for the benefit of Settling Members of the Settlement Group pursuant to the Attorney General's equitable authority under R.C.W. §19.86.080.

The State of Wyoming has further authority to release, and is releasing Settling Members of the Settlement Groups' claims pursuant to the Attorney General's authority under Wyoming Statute §40-12-106.

## VII. FEES AND COSTS

The Court approves the funding of the Cost and Fee Account as set forth in the Mylan Settlement Agreement in the amount of $_____, and the funding of the SST Cost and Fee Account as set forth in the SST Settlement Agreement in the amount of $_____, and directs the Escrow Agent to disburse the funds accordingly.

## VIII. FINALITY OF JUDGMENT

The Court finds that this Final Judgment and Order adjudicates all the claims, rights and liabilities of the Parties, and is final and shall be immediately appealable.  Neither this Final Judgment and Order nor the Settlement Agreements shall constitute any evidence or admission of

14

liability by any Settling Defendant or SST Settling Defendant, nor shall they be offered in evidence or used for any other purpose in this or any other matter or proceeding other than as may be necessary to consummate or enforce the Settlement Agreements or the terms of this Final Judgment and Order, or by any Settling Defendant or SST Settling Defendant in connection with any action asserting Released Claims.

## IX. RETENTION OF JURISDICTION

Without affecting the finality of this Order, the Court retains jurisdiction for the purposes of enforcing the terms of the Settlement Agreements and enabling any of the Parties to this Final Judgment and Order to apply to this Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of this Final Judgment and Order for the modification of any of the provisions hereof, and for the enforcement of compliance herewith.

Dated_____                        _____
                                              Honorable Thomas F. Hogan
                                              United States District Judge

15

CAMylan0400531                                              CAMylan04005310

3

CAMylan04005311

**ATTACHMENT 3**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:98-CV-3114 (TFH) |
| | ) | |
| MYLAN LABORATORIES, INC., | ) | |
| CAMBREX CORP., | ) | |
| PROFARMACO S.R.L., and | ) | |
| GYMA LABORATORIES OF AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| THE STATE OF CONNECTICUT, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:98-CV-3115 (TFH) |
| | ) | |
| MYLAN LABORATORIES, INC., | ) | |
| CAMBREX CORP., | ) | |
| PROFARMACO S.R.L., | ) | |
| GYMA LABORATORIES OF AMERICA, INC., | ) | |
| and SST CORP., | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER PRELIMINARILY APPROVING PROPOSED SETTLEMENTS**

WHEREAS the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado,

Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana,

Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New

1

FILED

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming and the Commonwealths of Kentucky, Massachusetts, Pennsylvania, and Virginia, through their Attorneys General, and the District of Columbia, through its Corporation Counsel, individually and as authorized by law, in the State's sovereign capacity, on behalf of state agencies, in a statutory, equitable and/or common law capacity, and as representative of and/or as *parens patriae* on behalf of all natural person citizens of such state who have purchased either or both of the Relevant Drugs during the Relevant Period, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp., by and through their counsel of record in this litigation, have entered into settlement of this litigation;

WHEREAS the terms of this settlement are set forth in the Settlement Agreement between the Plaintiff States and Commission and the Settling Defendants ("Mylan Settlement Agreement");

WHEREAS the Plaintiff States and SST Corp., by and through their counsel of record in this litigation, have entered into settlement of this litigation;

WHEREAS the terms of this settlement are set forth in the Settlement Agreement between the Plaintiff States and SST Corp. ("SST Settlement Agreement");

WHEREAS these settlements will, subject to this Court's final approval, fully and finally compromise, settle and resolve the Released Claims subject to the terms and conditions set forth in the Mylan and SST Settlement Agreements ("the Settlement Agreements");

2