WHEREAS the parties to these Settlement Agreements (the "Parties") have filed them with the Court and requested that the Court grant preliminary and final approval of these settlements pursuant to Federal Rule of Civil Procedure 23(e), and state *parens patriae* and/or statutory and equitable authority;

WHEREAS the Court has read and considered the Settlement Agreements, the proposed Notice Plan, and the pleadings and documents submitted in connection with the Parties' request for preliminary approval of the Settlement Agreements, and good cause appearing therefor;

IT IS HEREBY ORDERED as follows:

## PRELIMINARY APPROVAL OF SETTLEMENTS AND CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

1.   This Court has jurisdiction over this action and each of the Parties.

2.   The terms of the Settlement Agreements are hereby preliminarily approved, subject to further consideration thereof at the Settlement Hearing provided for below. The Court preliminarily finds that the settlements encompassed by the Settlement Agreements (the "Settlements"), including the proposed methods of distribution and allocation of the monies paid in settlement of these actions as outlined in the Consumer Distribution Plan and the Government Compensation Plan, are fair, reasonable and adequate and in the best interest of consumers in the Plaintiff States and the Settlement Group as a whole, and their terms satisfy Federal Rule of Civil Procedure 23(e), state equitable and/or *parens patriae* laws, and due process so that notice of the Settlements should be given as provided in this Order.

3.   For the purpose of these settlements only, a class consisting of

> All natural person consumers within Plaintiff
> States where such a class action may be brought,

3

> not otherwise represented by the Plaintiff States as *parens patriae*, who purchased generic lorazepam and/or clorazepate sold in the United States from January 1, 1998 through December 31, 1999

(the "Class") is hereby conditionally certified, pending final approval of the settlements herein.

    4.    The Court preliminarily finds that:

    (a)    The Attorneys General of the States of Alaska, California, Illinois, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Texas, Utah, Virginia and Wisconsin, pursuant to their respective state's *parens patriae* authority and Fed. R. Civ. P. 23, have the authority to represent, settle and release the claims of natural persons residing within their states.

    (b)    The Attorneys General of the States of Alabama, Arizona, Colorado, Delaware, Hawaii, Idaho, Maine, Missouri, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Tennessee, Vermont, Washington, West Virginia, and the District of Columbia, pursuant their respective state's *parens patriae* authority, have the authority to represent, settle and release the claims of natural persons residing within their states.

    (c)    The Attorneys General of the States of Arkansas, Connecticut, Florida, Georgia, Indiana, Iowa, Nebraska, Oklahoma South Carolina, and Wyoming have the authority to represent, settle and release the claims of natural persons residing within their states pursuant to Fed. R. Civ. P. 23.

    (d)    The Attorneys General of the States of Colorado and Maryland have the authority to represent, settle and release the claims of natural persons residing within their states

4

CAMylan0400531                    CAMylan04005315

pursuant to their equitable authority under §6-4-111C.R.S. (2000) and Md. Com. Law Code Ann. §11-209, respectively.

(e)     The Attorney General of the State of Washington has the further authority to bring equitable claims for the benefit of natural persons residing within her state, and to settle and release such claims, pursuant to R.C.W. §19.86.080.

(f)     The Attorney General of the State of Wyoming has the further authority to represent, settle and release the claims of natural persons residing within the state under Wyoming Statute §40-12-106.

## NOTICE OF SETTLEMENT

5.     The Court finds that the form and content of the proposed notice (the "Notice"), attached as Appendix ____ to Plaintiff States' Memorandum in Support of Motion for Preliminary Approval of Settlement Agreements, is in full compliance with the requirements of Federal Rule of Civil Procedure 23, state *parens patriae* laws, and state equitable authority and satisfies due process. The Court further finds that the Notice provides to the Settlement Group sufficient information to make an informed and meaningful decision regarding their options in this litigation and the effect of these settlements on their rights, and that the Notice Plan is the best practicable method of notice under the circumstances. The Court approves the Notice and the Notice Plan.

6.     The Court finds that the proposed _____-day Notice Period is adequate. The Notice Period shall run from _____, 2001 until_____,2001.

7.     The Court confirms the Attorney General of the State of Ohio as Liaison Counsel for the Plaintiff States.

5

8.      As soon as practicable after entry of this Order, but no later than ninety (90) days after the date of entry hereof, State Liaison Counsel shall cause notice to be disseminated to the Settlement Group in accordance with the Notice Plan and the terms of this Order.

## REQUESTS FOR EXCLUSION

9.      All natural persons within the Settlement Group who submit valid and timely requests for exclusion from the Settlement Group postmarked on or before_____, 2001 pursuant to instructions contained in the Notice, shall not have any rights under the Settlement Agreements and shall not be bound by the Settlement Agreements or the Final Judgment and Order.

10.     All members of the Settlement Group who do not submit valid and timely requests for exclusion from the Settlement Group postmarked on or before _____, 2001 pursuant to instructions contained in the Notice shall be bound by the Settlement Agreements and by the Final Judgment and Order.

## THE SETTLEMENT HEARING

11.     A hearing on final settlement approval (the "Settlement Hearing") is hereby scheduled to be held before the undersigned on _____, 2001 at 10:00 a.m. in Courtroom No. 9, United States Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001 to consider:  (a) the fairness, reasonableness and adequacy of the Settlements, (b) the dismissal with prejudice of these actions, and (c) the entry of the Final Judgment and Order in these actions.

12.     Any member of the Settlement Group who does not file a Request for Exclusion in the manner set forth above may appear at the Settlement Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness,

6

reasonableness and adequacy of the Settlements and the dismissal with prejudice of these actions as

to the Settling Defendants and SST Settling Defendant, and the entry of final judgment provided,

however, that no person shall be heard in opposition to the Settlements, or dismissal and/or entry of

final judgment, and no papers or briefs submitted by or on behalf of any such person shall be

accepted or considered by the Court, unless on or before _____, 2001 such person: (a) files with

the Clerk of the Court a notice of such person's intention to appear ("Notice of Appearance"), as well

as a statement that indicates the basis for such person's opposition to the Settlements, or the

dismissal of claims and/or the entry of final judgment ("Statement"), and any documentation in

support of such opposition, and (b) serves copies of such Notice of Appearance, Statement and

documentation, as well as any other papers or briefs that such person files with the Court, either in

person or by mail, upon the Mylan Antitrust Litigation Administrator, at P.O. Box _____, Faribault,

Minnesota, and upon the following counsel:

Mitchell L.Gentile, Esq.
Office of the Attorney General
140 East Town Street, 12th Floor
Columbus, OH 43215

Richard Feinstein, Esq.
Federal Trade Commission
601 Pennsylvania Avenue, NW
Washington, DC 20580

James B. Weidner, Esq.
Clifford Chance Rogers
  & Wells LLP
200 Park Avenue
New York, NY 10166

Sidney S. Rosdeitcher, Esq.
Paul Weiss Rifkind Wharton &
Garrison
1285 Avenue of the Americas
New York, NY 10019-6064

13.    The date and time of the Settlement Hearing shall be set forth in the  Notices, but

shall be subject to adjournment by the Court without further notice other than that which may be

posted at the Court and on the Court's web site.

7

14.     All discovery and other pretrial proceedings in these actions were stayed and suspended as of August 4, 2000, pending the Effective Date of the Settlements as defined in the Settlement Agreements ("Final Approval"), and such stay continues, except such proceedings as are provided for in the Settlement Agreements, or which may be necessary to implement the terms of the Settlement Agreements or this Order.

15.     The Parties shall file with the Court any pleadings or memoranda in support of the Settlements and Settlement Agreements, including a statement that the Plaintiff States have effectuated the Notice Plan, no later than _____, 2001.

16.     Any Settling Member of the Settlement Group may hire an attorney at his or her own expense to appear in this action. Such attorney shall serve the Notice of Appearance, Statement, and any supporting documentation on the counsel set forth in paragraph 12 on or before _____, 2001, and file it with the Court on or before _____, 2001.

17.     Pending Final Approval, the Settling Members of the Settlement Group, Plaintiff States and the Commission, either directly, representatively, or in any other capacity, shall not commence or prosecute against the Settling Defendants or SST Settling Defendant, any action or proceeding in any court or tribunal asserting any of the claims or causes of action that are to be released by the Settlement Agreements upon Final Approval; and, upon Final Approval, all members of the Settlement Group who have not timely and validly excluded themselves from the Settlements, the Plaintiff States and the Commission ("Releasing Parties") shall be forever enjoined and barred from asserting any of the claims or causes of action released by the Settlement Agreements, and any such Releasing Party shall be deemed to have forever released any and all such claims and causes

8

of action as provided for in the Settlement Agreements.

## **OTHER PROVISIONS**

18.     The Court, for purposes of this Order, adopts the definitions set forth in the Settlement Agreements, unless otherwise defined herein.

19.     In the event the Settlements are terminated in accordance with the provisions of the Settlement Agreements, the Settlements and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreements, and without prejudice to the *status quo ante* rights of the Settling Defendants and SST Settling Defendant and the Releasing Parties.

20.     All proceedings in these actions against the Settling Defendants and SST are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlements and, if it approves the Settlements, enters the Final Judgment and Order as provided in the Settlement Agreements.

21.     Neither this Order nor the Settlement Agreements shall constitute any evidence or admission of liability by any Settling Defendant or SST Settling Defendant, nor shall they be offered in evidence in this or any other proceeding except to consummate or enforce the Settlement Agreements or the terms of this Order, or by any Settling Defendant or SST Settling Defendant in connection with any action asserting Released Claims.

SO ORDERED this _____ day of _____ 2001.


_____
Honorable Thomas F. Hogan
United States District Judge

9

**4**

CAMylan0400532

CAMylan04005321

 **ATTACHMENT 4**    126

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 98-CV-3114 (TFH) |
| | ) |
| MYLAN LABORATORIES, INC., | ) |
| CAMBREX CORP., | ) |
| PROFARMACO S.R.L., and | ) |
| GYMA LABORATORIES OF AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |

## JOINT MOTION TO APPROVE PERMANENT INJUNCTION

The parties jointly request that the Court approve the attached Order and Stipulated

Permanent Injunction.  It is part of the overall settlement of these matters.

RESPECTFULLY SUBMITTED,

**Federal Trade Commission**

BY: _Richard A. Feinstein_
Richard A. Feinstein (D.C. Bar #324848)
Assistant Director, Bureau of Competition
Federal Trade Commission
601 Pennsylvania Ave., NW
Washington, D.C. 20580
(202) 326-3688

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153

BY: _Irving Scher (by RAF)_
Irving Scher, Esquire
(212) 310 8000
Attorneys for Defendant Gyma Laboratories

Dated: November 29, 2000
        Washington, DC

**Clifford Chance Rogers & Wells LLP**
200 Park Avenue
New York, NY 10166

BY: _James B. Weidner (by RAF)_
James B. Weidner, Esquire
(212) 878-8000
Attorneys for Defendant Mylan Laboratories, Inc.

**Debevoise & Plimpton**
875 Third Avenue
New York, NY 10022

BY: _Christopher Tahbaz (by RAF)_
Christopher Tahbaz, Esquire
(212) 909-6543
Attorneys for Defendants Cambrex & Profarmaco

**FILED**

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil 1:98CV03114 (TFH) |
| v. | ) | |
| | ) | |
| MYLAN LABORATORIES, INC., | ) | |
| CAMBREX CORPORATION, | ) | |
| PROFARMACO S.R.L., and | ) | |
| GYMA LABORATORIES OF AMERICA, INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## ORDER AND STIPULATED PERMANENT INJUNCTION

Whereas Plaintiff Federal Trade Commission ("Commission") has filed its amended

Complaint against Defendants Mylan Laboratories, Inc., Cambrex Corporation, Profarmaco

S.r.l., and Gyma Laboratories of America, Inc., pursuant to Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. § 53(b), seeking injunctive and other equitable relief

for violations of Section 5 of the FTC Act, 15 U.S.C. § 45; whereas the Commission and

Defendants have stipulated and agreed to entry by the Court, without further notice, of the

following findings and permanent injunction; whereas this Order is entered for settlement

purposes only and does not constitute any evidence against or an admission of liability by the

Defendants; and whereas the Court, being advised in the premises, finds:

1.  The Commission brings this action under Sections 5 and 13(b) of the FTC Act,

    15 U.S.C. §§ 45 and 53(b).  In its Amended Complaint (dated February 8, 1999), the

1

Commission seeks permanent injunctive and other equitable relief, including disgorgement. The Commission alleges that the Defendants conspired to monopolize and entered into agreements that unreasonably restrained trade in the lorazepam and clorazepate tablet and active pharmaceutical ingredient markets. The Commission further alleges that Mylan Laboratories, Inc., monopolized and attempted to monopolize the markets for lorazepam and clorazepate tablets. This Court has held that, pursuant to Section 13(b), the Commission has authority to seek the relief it has requested.

2.  This Court has jurisdiction over the parties and the subject matter of this action. Venue is proper in the District of the District of Columbia. This Court has held that the Complaint states a claim upon which relief may be granted against Defendants under Sections 5 and 13(b) of the FTC Act, 15 U.S.C. §§ 45, 53(b).

3.  The Defendants' activities are in or affecting commerce, as defined in 15 U.S.C. § 44.

4.  This Court has held that this case is a proper case for the issuance of a permanent injunction pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

5.  Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Final Order and Stipulated Permanent Injunction, and Defendants waive any claim under the Equal Access to Justice Act, 28 U.S.C. § 2412.

6.  Each Defendant, without admitting that it has violated Section 5 of the FTC Act, 15 U.S.C. § 45, or that entering an injunction under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), is proper, agrees to the entry of this Order under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

7.  Entry of this order is in the public interest.

2

I.

**IT IS ORDERED** that, as used in this Order, the following definitions shall apply:

A.    "Agreement" means anything that would constitute an agreement under Section 1 of the

Sherman Act, 15 U.S.C. § 1, or Section 5 of the Federal Trade Commission Act,

15 U.S.C. § 45.

B.    "ANDA" means Abbreviated New Drug Application, as defined under 21 U.S.C. § 355(j)

*et seq.*

C.    "API" means active pharmaceutical ingredient.

D.    "Cambrex" means Cambrex Corporation; its divisions and subsidiaries; and their

directors, officers, employees, agents, representatives, successors and assigns, and all

other persons or entities in active concert or participation with them, who receive actual

notice of this Order by personal service or otherwise.

E.    "Commerce" has the same definition as it has in 15 U.S.C. § 44.

F.    "Commission" means the Federal Trade Commission.

G.    "DMF" means Drug Master File, as provided under 21 C.F.R. 314.420.

H.    "Enter into" means join, participate in, or implement.

I.    "FDA" means the  United States Food and Drug Administration.

J.    "Gyma" means Gyma Laboratories of America; its divisions and subsidiaries; and their

directors, officers, employees, agents, representatives, successors and assigns, and all

other persons or entities in active concert or participation with them, who receive actual

notice of this Order by personal service or otherwise.

3

CAMylan0400532                                         CAMylan04005325

K.    "Mylan" means Mylan Laboratories, Inc.; its divisions and subsidiaries, including Mylan

Pharmaceuticals; and their directors, officers, employees, agents, representatives,

successors and assigns, and all other persons or entities in active concert or participation

with them, who receive actual notice of this Order by personal service or otherwise.

L.    "Person" means any natural person, partnership, corporation, or business entity.

M.    "Profarmaco" means Profarmaco S.r.l.; its divisions and subsidiaries; and their directors,

officers, employees, agents, representatives, successors and assigns, and all other persons

or entities in active concert or participation with them, who receive actual notice of this

Order by personal service or otherwise.

N.    "Settlement Agreement" means the agreement (and attachments thereto) executed by the

Commission, the Plaintiff States, and Defendants, which governs the resolution of the

above-captioned matter and the *States Action*.

## II.

**IT IS FURTHER ORDERED** that, not later than three (3) days after service of this

Order, Mylan Pharmaceuticals, Inc., pay $71,782,017 to an escrow fund for purposes of

satisfying consumer claims in the related matter *Connecticut v. Mylan*, Civil 1:98CV03115

(D.D.C.) (the *States Action*), and $28,217,983 to an escrow fund for purposes of satisfying state

agency claims in the *States Action*. The escrow funds are intended to be qualified settlement

funds within the meaning of Treas. Reg. Sections 1.468B-1, et seq., and distributions from the

escrow funds are subject to the Settlement Agreement and further order from this Court.

4

**CAMylan0400532**                                   CAMylan04005326

## III.

**IT IS FURTHER ORDERED** that Defendants Mylan, Cambrex, Profarmaco, and Gyma are each enjoined from entering into or attempting to enter into any agreement with any person, in or affecting commerce, concerning any API if the agreement (1) prohibits the API supplier from supplying any person not a party to the agreement, (2) prohibits any person not a party to the agreement from referencing the API supplier's DMF, or (3) exclusively licenses the API supplier's DMF; and further provided that the effect of such an agreement is to unreasonably restrain trade, create an unlawful monopoly, or attempt to create an unlawful monopoly.

## IV.

**IT IS FURTHER ORDERED** that Defendant Mylan is enjoined for five (5) years from the date this Order is entered from entering into or attempting to enter into any agreement, in or affecting commerce, with Defendants Cambrex, Profarmaco, or Gyma that (1) prohibits Profarmaco, Cambrex, or Gyma from selling lorazepam or clorazepate API to any person, (2) prohibits any person from referencing Profarmaco's DMF for lorazepam or clorazepate API, or (3) exclusively licenses Profarmaco's lorazepam or clorazepate DMF to Mylan.

## V.

**IT IS FURTHER ORDERED** that Defendant Mylan is enjoined from entering into or attempting to enter into any agreement with any person, in or affecting commerce, concerning any API, if (a) Mylan does not reference the API supplier's DMF and (b) the agreement (1) prohibits the API supplier from supplying any person not a party to the agreement, (2) prohibits any person not a party to the agreement from referencing the API supplier's DMF, or (3) exclusively licenses the API supplier's DMF.

5

## VI.

**IT IS FURTHER ORDERED** that, for five (5) years from the date this Order is entered, Mylan shall notify the Commission thirty (30) days before entering into any agreement, in or affecting commerce, with any person concerning any API for which the API supplier has a DMF, if the agreement (1) prohibits the API supplier from selling the API to any person not a party to the agreement, (2) prohibits any person not a party to the agreement from referencing the API supplier's DMF, or (3) exclusively licenses the API supplier's DMF to Mylan.  Such notice shall include:

    (a)    A copy of the proposed agreement;

    (b)    To the extent not reflected therein, the identification of all parties to such agreement, the API(s) involved, and all terms relating to exclusivity and compensation (including prices, profit-sharing, royalties, and other payments); and

    (c)    For the three most recent years, all IMS data, purchased in the ordinary course of business, relating to the finished drug product involved in the agreement, or, if no IMS data is available, any available data on sales in units, prescriptions, and dollars of the finished drug product involved.

## VII.

**IT IS FURTHER ORDERED** that, for five (5) years from the date this Order is entered, Cambrex, Profarmaco or Gyma shall notify the Commission thirty (30) days before entering into any agreement, in or affecting commerce, with any person concerning any API for which the API supplier has a DMF, if the agreement (1) prohibits the API supplier from selling the API to any

6

CAMylan0400532

CAMylan04005328

person who references the DMF, (2) prohibits any person not a party to the agreement from referencing the API supplier's DMF, or (3) exclusively licenses the API supplier's DMF. Such notice shall include:

    (a)    A copy of the proposed agreement;

    (b)    To the extent not reflected therein, the identification of all parties to such agreement, the API(s) involved, and all terms relating to exclusivity and compensation (including prices, profit-sharing, royalties, and other payments); and

    (c)    Data sufficient to show each sale of the API involved in the agreement in the past three years, the identity and location of the customer for each sale, the amount in kilograms of each sale, and the total amount in dollars of each sale of the API involved.

## VIII.

**IT IS FURTHER ORDERED** that each Defendant shall:

A.    File a verified, written report with the Commission setting forth in detail the manner and form in which it has complied and is complying with this Order: (1) within ninety (90) days from the date this Order is entered, (2) annually thereafter for five (5) years on the anniversary of the date this Order is entered, and (3) at such other times as the Commission may require by written notice.

B.    For a period of five (5) years from the date this Order is entered, maintain and make available to Commission staff for inspection and copying upon reasonable

7



notice, records sufficient to describe in detail any action taken in connection with the activities covered by this Order.

C.   Notify the Commission at least thirty (30) days prior to (1) any proposed change in the corporate Defendant, such as its dissolution, assignment, or sale resulting in the emergence of a successor corporation, or (2) any other change or the creation or dissolution of subsidiaries that may affect compliance obligations arising out of this Order.

D.   Address each notice and report that this Order requires to Federal Trade Commission, Office of the Secretary, 600 Pennsylvania Avenue, NW, Washington, DC 20580, and send a copy of each notice pursuant to paragraphs VI and VII to the Assistant Director of Health Care, Bureau of Competition, at the same address.

## IX.

**IT IS FURTHER ORDERED** that the following do not violate, and are not subject to, the Order:

A.   Any agreement relating to:

(1)   Any API or finished drug product during the period the manufacture and sale of which is protected by a patent.

(2)   The development of any patentable API or finished drug product for which a New Drug Application would be necessary to sell the finished drug product in the United States.

(3)   The development of any API or generic finished drug product, if the API supplier has not filed a DMF with the FDA at the time of the agreement.

8

CAMylan0400533                              CAMylan04005330



(4) The development of any generic finished drug product, if there is no existing or pre-existing commercially available generic finished drug product that references the API supplier's DMF at the time of the agreement.

B. Any exclusive distributorship agreement, such as that currently in effect between Profarmaco and Gyma, by which the API supplier designates an exclusive distributor of one or more APIs to API purchasers in the United States or any portion thereof.

C. Any purchase order for any API submitted to, and accepted by, an API supplier in the ordinary course of business.

## X.

**IT IS FURTHER ORDERED** that this Order shall take effect on, and expire ten (10) years from, the date this Order is entered, and that this Order may become null and void before the expiration of the ten-year period as provided in the Settlement Agreement or by further order of the Court.

## XI.

**IT IS FURTHER ORDERED** that the Court retains jurisdiction of this matter for purposes of construction, modification and enforcement of this order.

Washington, DC, this          day of                   2000.

_____
Thomas F. Hogan
UNITED STATES DISTRICT JUDGE

9

CAMylan0400533                                      CAMylan04005331

5

CAMylan0400533

CAMylan04005332

## ATTACHMENT 5

## GUIDELINES GOVERNING PAYMENT OF
## ATTORNEYS' FEES AND LITIGATION COSTS

The Escrow Agent shall disburse the Cost and Fee Account, exclusive of any interest

earned thereon, to the Attorneys General representing the Litigating Plaintiff States as payment

for their attorneys' fees and costs incurred in investigating, litigating and settling this action.

Such costs shall include reimbursement of the National Association of Attorneys General Milk

Fund Account ("NAAG Milk Fund") for consultant and expert fees expended from the NAAG

Milk Fund by the Litigating Plaintiff States. After reimbursement is made to the NAAG Milk

Fund, the remaining portion of the Cost and Fee Account shall be apportioned among the

Litigating Plaintiff States in their sole discretion and such apportionments shall then be used by

the Litigating Plaintiff States' Attorneys General for one or more of the following purposes, as

determined by the Attorney General of each Litigating Plaintiff State, at his or her exclusive

option, and as otherwise consistent with the laws of his or her respective state:[1]

    (1).    Reimbursement of Litigating Plaintiff States' attorneys' fees and/or investigation, litigation and settlement administration costs incurred by such state;

    (2).    Reimbursement of Litigating Plaintiff States' consultants' and experts' fees and costs incurred by such state;

    (3).    Antitrust or consumer protection enforcement by the Attorney General of such state;

    (4).    Deposit into a state antitrust or consumer protection account (e.g., revolving

---

[1]With respect to the State of Colorado, its apportionment shall be used first for reimbursement of Colorado's actual costs and attorneys fees and second, to be held, along with any interest thereon, in trust by the Attorney General for future consumer education, consumer fraud or antitrust enforcement efforts. With respect to the State of Maine, its apportionment shall be used for enforcement of the Maine Unfair Trade Practices Act, pursuant to 5 M.R.S.A. §209.

1

FILED

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

account, trust account) for use in accordance with the state laws governing that account;

(5).     Deposit into a fund exclusively dedicated to assisting the State Attorney General to defray the cost of experts, economists, and consultants in multistate antitrust investigations and litigations.

The Escrow Agent may pay all interest accrued on the Cost and Fee Account, up to a maximum of $200,000, into the NAAG Milk Fund to partially reimburse the Fund for past unreimbursed expenditures from the Fund.  The Court's consideration of cost and fees shall be separate from the Court's consideration of the fairness, reasonableness and adequacy of the remaining terms of this Settlement Agreement.  The Plaintiff States hereby explicitly agree that in the event the Court adopts a plan for payment of fees and costs other than that contained herein, the Plaintiff States will not object to or oppose approval of the remainder of the Settlement Agreement by the Court, or otherwise delay or affect approval of the settlement, or entry of the Final Judgment and Order.

2

**6**

**CAMylan0400533**                    CAMylan04005335

## ATTACHMENT 6
## GUIDELINES GOVERNING DEVELOPMENT OF
## GOVERNMENT COMPENSATION PLAN

The Escrow Agent shall distribute all funds remaining in the Agency Account of the State Fund after payment of the costs set forth in subsection VI.A.1. of the Settlement Agreement, according to the Government Compensation Plan. In the event a state or states do not opt into this Settlement Agreement pursuant to the terms of Section IX.B of the Settlement Agreement, the Government Compensation Plan shall be amended to distribute such state's share of the Agency Account among the Plaintiff States based on estimates of actual damages. Each Plaintiff State, through its Attorney General or as otherwise authorized by state law, shall be responsible for determining how to allocate its portion of the Agency Account. The Plaintiff States shall submit the Government Compensation Plan to the Court with the motion for Preliminary Approval of the settlement.

The Parties agree and understand that the Government Compensation Plan is not a part of the Settlement Agreement and the Court's consideration of the fairness of the Government Compensation Plan is to be considered separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Settlement Agreement. Any order or proceedings relating to the Government Compensation Plan shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Court's judgment approving the Settlement Agreement, the Final Judgment and Order, or any other orders entered pursuant to the Settlement Agreement.

1

**FILED**

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

of the unclaimed remainder of the Consumer Fund to the Court for approval with their motion for final approval of the settlement.

The Parties agree and understand that the Consumer Distribution Plan is not a part of the Settlement Agreement and the Court's consideration of the fairness of the Consumer Distribution Plan is to be considered separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Settlement Agreement. Any order or proceedings relating to the Consumer Distribution Plan shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Court's judgment approving the Settlement Agreement, the Final Judgment and Order, or any other orders entered pursuant to the Settlement Agreement.

2

 CAMylan04005337

**7**

CAMylan0400533          CAMylan04005338

## ATTACHMENT 7

### GUIDELINES GOVERNING DEVELOPMENT
### OF CONSUMER DISTRIBUTION PLAN

The Escrow Agent shall distribute and/or administer the distribution of all funds remaining in the Consumer Fund after payment of the costs and expenses set forth in Section VI.A.2 of the Settlement Agreement, according to the Court-approved Consumer Distribution Plan. The following provisions shall govern the Consumer Distribution Plan.  The Consumer Distribution Plan shall provide for distribution of that portion of the Consumer Fund that remains unclaimed following direct payment of consumer claims.  Such remainder shall be allocated to the Litigating Plaintiff States for *cy pres* distribution.  The following provision applies to any *cy pres* distribution of settlement proceeds:

> Each Litigating Plaintiff State, through its Attorney General or as otherwise authorized by state law, shall direct that its share of the unclaimed remainder of the Consumer Fund be distributed to that State, a political subdivision(s) thereof, and/or a charitable organization(s) qualified as an exempt organization under §501(c)(3) of the Internal Revenue Code, with express conditions and in accordance with the Court-approved Consumer Distribution Plan ensuring that the funds are used in a manner reasonably targeted to specifically benefit the health care needs of a substantial number of the persons injured by the increased prices of the Relevant Drugs during the Relevant Period.  A Litigating Plaintiff State choosing to directly receive its share of the unclaimed remainder of the Consumer Fund may directly appropriate such funds, subject to the above-stated conditions, or may distribute such funds to a political subdivision(s) thereof, and/or a charitable organization(s) qualified as an exempt organization under §501(c)(3) of the Internal Revenue Code to be used subject to the express conditions stated above.

The Plaintiff States shall submit their proposed Consumer Distribution Plan, together with a proposed Notice Plan, to the Court for approval with the motion for preliminary approval of the settlement.  Litigating Plaintiff States shall submit their proposals for *cy pres* distribution

1

FILED

FEB 0 1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFF STATES AND SST CORPORATION

This Settlement Agreement is made and entered into this 30th day of January, 2001, by and between the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, through their respective Attorneys General, and the District of Columbia, through its Corporation Counsel, plus any other state that has elected or elects to join in the terms of this Settlement Agreement (hereinafter "SST Settlement Agreement"), through their respective Attorneys General ("Plaintiff States" as defined below), and SST Settling Defendant, through their undersigned counsel (collectively, the "Parties"). Any state electing to join in the terms of the SST Settlement Agreement shall do so by executing a signature page which shall be appended hereto.

WHEREAS, the Litigating Plaintiff States (as defined in Section I.I below) on December 21, 1998, as amended on February 8, 1999, and again on May 13, 1999, filed suit against SST Corporation and others in the United States District Court for the District of Columbia on their own behalf, on behalf of state agencies, and through their equitable or common law authority, or as representative of or *parens patriae* on behalf of natural person citizens of those states, alleging monopolization, attempted monopolization, and agreements in restraint of trade, in violation of

1

CAMylan0400534   CAMylan04005340

federal and state antitrust and unfair competition or consumer protection laws, and seeking injunctive relief, civil penalties, damages, divestment, disgorgement, restitution and other equitable relief;

WHEREAS, a Third Amended Complaint will be filed contemporaneously with this SST Settlement Agreement by the Plaintiff States in the United States District Court for the District of Columbia adding those states which have chosen to opt into this SST Settlement Agreement;

WHEREAS, the Parties have engaged in extensive analysis of the pertinent facts. The Litigating Plaintiff States have conducted an extensive investigation relating to the claims and underlying events and transactions alleged in the Plaintiff States' Complaint, as well as extensive legal research. As a result, the Litigating Plaintiff States are thoroughly familiar with the liability and damages aspects of the claims they have asserted in the the Plaintiff States' Complaint;

WHEREAS, over the course of the Parties' extensive arm's-length negotiations, the Litigating Plaintiff States have concluded that the proposed settlement embodied in this SST Settlement Agreement is fair, adequate and reasonable. Among the factors considered in that determination are the sharply contested legal and factual issues involved in the action and the risks and costs attendant upon further prosecution of the action;

WHEREAS, SST Settling Defendant, likewise recognizing the many sharply contested legal and factual issues involved and the risks and costs attendant upon further litigation of the claims in the action, and while continuing to deny the allegations, any violation of law or wrongdoing, and any liability with respect to any and all claims asserted in the Plaintiff States' Complaint, has concluded that it is desirable that all of the claims in the action which have, or could have, been asserted against SST Settling Defendant be compromised and settled;

2

WHEREAS, the Plaintiff States and SST Settling Defendant have determined it to be in their best interests to resolve this dispute and enter into this SST Settlement Agreement;

NOW, THEREFORE, WITNESSETH:

## I. DEFINITIONS

As used herein:

A.      "Class" means the members of a class to be certified for settlement purposes only pursuant to this SST Settlement Agreement and Rule 23 of the Federal Rules of Civil Procedure, which shall include all natural person consumers within Plaintiff States where such a class action may be brought, not otherwise represented by the Plaintiff States as *parens patriae*, who purchased either or both of the Relevant Drugs during the Relevant Period.

B.      "Consumer Distribution Plan" means the plan or method of allocation of the SST Consumer Fund, which shall be submitted to the Court for approval, and which is consistent with the Guidelines Governing Development of Consumer Distribution Plan, included as Attachment 6.

C.      "Court" means the United States District Court for the District of Columbia.

D.      "Effective Date" means the date on which this SST Settlement Agreement becomes effective.  The Effective Date shall occur when all of the following conditions have been satisfied, unless one or more of such conditions is modified in a writing signed by State Liaison Counsel and SST Corporation:

1.      Execution of this SST Settlement Agreement;

2.      Entry by the Court of the Stipulated Permanent Injunction;

3.      Entry by the Court of a Preliminary Approval Order substantially in conformance with the terms of this SST Settlement Agreement;

3

4.       Expiration of the period within which consumers represented *parens patriae* and members of the proposed Class must exercise their rights to be excluded from *parens patriae* representation or from the Class;

5.       Final approval by the Court of the SST Settlement Agreement embodied herein;

6.       Entry by the Court of the Final Judgment and Order substantially in conformity with the terms of the SST Settlement Agreement;

7.       The Final Judgment and Order shall become final, which shall be deemed to occur upon the expiration of the tenth day after the applicable time for appeals of the Final Judgment and Order (whether as of right or upon showing of excusable neglect or good cause) without any appeal having been taken, or, if an appeal is taken, upon the expiration of the tenth day after the Final Judgment and Order is affirmed by the appellate court with no possibility of subsequent appeal or judicial review thereof. For purposes of this Subsection, an "appeal" shall include any Petition for a writ of certiorari that may be filed in connection with the approval or disapproval of this SST Settlement Agreement; and

8.       As of the time the conditions contained in Subsections I.D.1. through I.D.7. above are satisfied, the right to terminate and withdraw from this SST Settlement Agreement granted pursuant to Sections VIII and IX below shall not have been exercised by any of the Parties.

E.       "Escrow Agent" means the person or entity chosen by the Plaintiff States and designated pursuant to the Escrow Agreement to administer the Consumer Fund and State Fund pursuant to the terms of the Mylan Settlement Agreement, and the SST Consumer Fund and SST State Fund pursuant to the terms of the SST Settlement Agreement.

4

CAMylan0400534                                      CAMylan04005343

F.      "Escrow Agreement" means the escrow agreement, substantially in the form of Attachment 1 hereto.

G.      "Final Judgment and Order" means the Court's final, appealable order, substantially in the form of Attachment 2 hereto.

H.      "Government Compensation Plan" means the plan or method of allocation of the SST State Fund, which shall be submitted to the Court, and which is consistent with the Guidelines Governing Development of Government Compensation Plan, included as Attachment 5.

I.      "Litigating Plaintiff States" means the 33 Plaintiff States that participated in the litigation and negotiation of the settlement of this lawsuit: Alaska, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin.[1]

J.      "Mylan Settlement Agreement" means the settlement agreement entered into by and among the Plaintiff States, the Federal Trade Commission, and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corporation.

---

[1] For purposes of the litigation and this settlement, the definition of "Litigating Plaintiff States" or "Plaintiff States" does not include the University of California. It is stipulated by the Parties that the California Attorney General has not represented the interests of the University of California in the litigation or the settlement thereof, and the University of California has not been participating in this action.

5

CAMylan0400534                                                CAMylan04005344

K.     "Notice" means the notice or notices of this SST Settlement Agreement and hearing thereof that are to be published and/or mailed to members of the Settlement Group pursuant to Section VI.

L.     "Notice Plan" means the Court-approved process by which the Plaintiff States will effectuate the Notice.

M.     "Person" means any natural person, partnership, corporation, or business entity.

N.     "Plaintiff States"  means the Litigating Plaintiff States and any State which is or which becomes a party to this SST Settlement Agreement, as provided in Section VIII. hereof, through the State's Attorney General, individually and as authorized by law, in the State's sovereign capacity, on behalf of state agencies, in a statutory, equitable and/or common law capacity, and as representative of and/or *parens patriae* on behalf of all natural person citizens of such state who have purchased either or both of the Relevant Drugs during the Relevant Period.

O.     "Plaintiff States' Complaint" means the complaint filed by the Litigating Plaintiff States on December 21, 1998, as amended on February 8, 1999 and again on May 13, 1999 and the Third Amended Complaint filed herewith by the Plaintiff States.

P.     "Preliminary Approval Order" means the Court's order preliminarily approving this SST Settlement Agreement and establishing a schedule for Notice and further proceedings, as set forth in Section VI below, and substantially in the form of Attachment 3 hereto.

Q.     "Related Actions" means the actions entitled: *United Wisconsin Services, Inc. et al. v. Mylan Laboratories, Inc., et al.*, No 1:99-CV-1082 (D.D.C.)(the "*United Wisconsin* Action"), *Arkansas Carpenters Health and Welfare Fund, et al., v. Mylan Laboratories, Inc., et al.*, (D.D.C.)(the "*Arkansas Carpenters* Action"), *Advocate Health Care, et al. v. Mylan Laboratories,*

6

CAMylan0400534                                        CAMylan04005345

*Inc., et al.*, Case No. 1:99-CV-00790, consolidated with Case No. 99 C2228 (the "*Advocate* Action"), each of which has been consolidated for pretrial proceedings in *In re Lorazepam and Clorazepate Antitrust Litigation*, Case No. MDL 1290, in the United States District Court for the District of Columbia, and *Generic Drug Antitrust Cases: Mylan Generic Drug Antitrust Pharmacy*, Judicial Counsel Coordination Proceeding No. 4075, in the Superior Court of the State of California for the County of San Francisco ("the "*Galloway* Action").

      R.      "Released Claims" means all claims, counterclaims, set-offs, demands, actions, rights, liabilities, and causes of action arising under federal or state antitrust, unfair methods of competition, or consumer protection laws, under state or federal unfair or deceptive trade practices acts, or under common law, asserted or that could have been asserted by Settling Members of the Settlement Group, or by the Plaintiff States on behalf of state agencies and/or natural person consumers within the Plaintiff States against SST Settling Defendant arising from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged in the Plaintiff States' Complaint.

      S.      "Relevant Drugs" means generic lorazepam or clorazepate sold in the United States.

      T.      "Relevant Period" means the period from January 1, 1998 to December 31, 1999.

      U.      "Settlement Group" means all natural person consumers represented by Attorneys General for the Plaintiff States, individually and as authorized by law in a statutory, equitable and/or common law capacity, as *parens patriae* and/or as representatives of the Class.

      V.      "Settling Members of the Settlement Group" means each and every member of the Settlement Group who does not exercise his or her right to exclude himself or herself from the

7

Settlement Group pursuant to a proper written request for exclusion postmarked on or before the date to be set by the Court.

W.    "SST" or "SST Corporation" means SST Corporation, a New Jersey corporation with its principal place of business in Clifton, New Jersey.

X.    "SST Agency Account" means a separate account established within the SST State Fund which will be funded by SST as set forth in Section III.A below.

Y.    "SST Consumer Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement and administered by the Escrow Agent. The principal of the SST Consumer Fund shall be funded as set forth in Section III.A below.

Z.    "SST Settling Defendant" means SST Corporation and any and all of its affiliates, subsidiaries, divisions and other organizational units of any kind, their successors and assigns, and the former, current and future officers, directors, employees, agents, attorneys, representatives, partners and shareholders of each of the foregoing, and other persons acting on their behalf.

AA.    "SST Cost and Fee Account" means a separate account established within the SST State Fund which will be funded by SST as set forth in Section III.A. and III.B. below.

BB.    "SST State Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement and administered by the Escrow Agent. The principal of the SST State Fund shall be funded as set forth in Section III.A. below, and shall be segregated into an SST Agency Account and an SST Cost and Fee Account.

CC.    "State Liaison Counsel" or "Liaison Counsel for Plaintiff States" means the Attorney General of the State of Ohio.

DD.    "Stipulated Permanent Injunction" means the injunction between the Federal Trade

8

CAMylan0400534                                              CAMylan04005347

Commission and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corporation, in the action entitled *Federal Trade Commission v. Mylan, et al.*, approved by the Federal Trade Commission on November 29, 2000, and in the form of Attachment 4 to the Mylan Settlement Agreement.

## II. AGREEMENT

Subject to the approval of the Court, the Parties agree to compromise, settle and resolve fully and finally on the terms set forth herein, all Released Claims.

## III. MONETARY PAYMENT

A.    Concurrently with this Settlement, SST has agreed to proposed settlements with the plaintiffs and proposed classes in the Related Actions. In full settlement and compromise of all claims brought against SST in this Action and the Related Actions, and in exchange for the release of all Released Claims, and subject to the terms and conditions of this SST Settlement Agreement, execution of the proposed settlement agreements in each of the Related Actions, and the terms and conditions thereof, SST has agreed to pay a total of two million dollars ($2,000,000.00). If all of the proposed settlements are executed, finally approved, and become effective, SST's two million dollar payment will be allocated among the settlements as follows: (I) $500,000 will go to the Settlement in this Action; (ii) $400,000 will go to the settlements in the *United Wisconsin* and *Arkansas Carp*enters Actions; (iii) $500,000 will go to the settlement in the *Advocate* Action; (iv) $100,000 will go to the settlement in the *Galloway* Action; and (v) the remaining $500,000 will be divided among the settlements as follows: (1) up to $250,000 will be designated to cover the notice costs of the settlement in the *Advocate* Action; (2) the balance of the remaining $500,000 (after deducting the *Advocate* notice costs of up to $250,000) will be divided into three equal parts, with one-third

9

going to the settlement funds in this Action, one-third going to the settlement fund in the *Advocate* Action, and one-third going to the settlement funds in the *Galloway* Action, the *United Wisconsin* Action, and the *Arkansas Carpenters* Action (together, the "Indirect Purchaser Actions").

If the proposed settlement in the *Advocate* Action is not executed, is terminated, or does not become effective for any reason and all other settlements, including this one, become effective, SST's total payment shall be one million dollars ($1,000,000) and the total amount of that one million dollars allocated to this settlement shall be five hundred thousand dollars ($500,000). If the settlement in any of the Indirect Purchaser Actions is also terminated or does not become effective for any reason, SST's total payment will be reduced accordingly, and the amount allocated to this settlement shall remain $500,000.

B.      In accordance with Section III.A. above, SST shall pay $500,000 to the Plaintiff States within 20 business days after the preliminary approval of this SST Settlement Agreement. This amount  shall be paid in three separate wire transfers, as set forth below, c/o the Escrow Agent appointed pursuant to Section IV of this Agreement. Of the $500,000.00, $108,750.00 shall be paid into the SST Agency Account of the SST State Fund, $266,250.00 shall be paid into the SST Consumer Fund, and $125,000.00 shall be paid into the SST Cost and Fee Account.

C.      If SST's proposed settlement in the *Advocate* Action is executed and becomes effective, the escrow agent appointed in connection with that settlement shall transfer SST's additional payment to the Plaintiff States (as set forth above) to the SST Cost and Fee Account within 20 business days after the settlement in the *Advocate* Action becomes effective, unless, prior to that time, this SST Settlement Agreement shall have been terminated, cancelled or voided or the Effective Date does not occur.

10

D.      The payments made by SST Corporation pursuant to Sections III.A., III.B., and Section III.C. are not, and shall not be considered, the payment of a penalty or fine under any state or federal laws rules or regulations or any other applicable statute or provision.

E.      Plaintiff States, on behalf of state agencies and Settling Members of the Settlement Group, agree to release the Released Claims in exchange for the monetary provisions contained in this SST Settlement Agreement. Upon the Effective Date, Plaintiff States and Settling Members of the Settlement Group shall be deemed to have released and forever discharged SST Settling Defendant from all liability for the Released Claims.

F.      SST Corporation warrants that, as of the date of this SST Settlement Agreement, it is not insolvent, nor will any payment to the SST Consumer Fund or the SST State Fund render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code. If a case is commenced with respect to SST Corporation under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the payment of the principal amount of the SST Consumer Fund or SST State Fund, and any accrued interest, or any portion thereof, by or on behalf of SST Corporation to be a preference, voidable transfer, fraudulent transfer or similar transaction, and if pursuant to an order of a court of competent jurisdiction monies paid by SST Corporation into the SST Consumer Fund or the SST State Fund pursuant to this SST Settlement Agreement are either not delivered or are returned to SST Corporation or the trustee, receiver, or conservator appointed by a court in any bankruptcy proceeding with respect to SST Corporation, then this SST Settlement Agreement shall be terminated and cancelled as set forth in Section IX herein.

11

CAMylan0400535                                    CAMylan04005350

G.     Plaintiff States and Settling Members of the Settlement Group shall also be deemed to have expressly waived any rights or benefits, if available, under Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the debtor.

Settling Members of the Settlement Group shall be advised of the statutory language of California Civil Code Section 1542 in the Notice and, with this understanding, nevertheless shall elect to and shall assume all risks for claims heretofore and hereafter arising, whether known or unknown, from the subject of the Released Claims, and specifically waive any rights they may have under California Civil Code Section 1542.  Settling Members of the Settlement Group shall also be fully advised that if the facts with respect to which the Released Claims are given and the dismissal with prejudice contained in the Final Judgment and Order are found hereafter to be other than, or different from, the facts now believed by them to be true, they shall expressly accept and assume the risk of such possible differences and facts, and shall agree that the release shall be and remain effective notwithstanding such differences in facts.

H.     The Parties agree that the decision by the Court regarding the amounts to be deposited into the  SST Cost and Fee Account and the disbursement thereof under the Guidelines Governing Payment of Attorneys' Fees and Litigation Costs (Attachment 4 hereto) shall be severable from this SST Settlement Agreement, and that regardless of such decision, Plaintiff States will not object to or oppose approval of the remainder of the SST Settlement Agreement by the Court, or otherwise delay or affect approval of the settlement, or entry of the Final Judgment and Order.  SST Settling Defendant agrees not to oppose the approval of the States' costs and attorneys' fees and the

12

disbursement thereof under the Guidelines Governing Payment of Attorneys Fees and Litigation Costs.

## IV. SETTLEMENT ADMINISTRATION

A.      The Escrow Agent for the SST Consumer Fund and SST State Fund (collectively, the "SST Settlement Accounts") shall be determined by the Plaintiff States. The Escrow Agent shall invest the SST Settlement Accounts in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies, or or in pre-refunded or escrowed municipal bonds which are federally insured to obtain the highest available return on investment, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Escrow Agent shall bear all risks related to the investment of the escrow funds.

B.      The SST Settlement Accounts shall be administered pursuant to the Consumer Distribution Plan, the Government Compensation Plan, the Escrow Agreement, this SST Settlement Agreement, and any order of the Court, as applicable.

C.      All funds held in the SST Settlement Accounts shall be deemed to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such SST Settlement Accounts are fully distributed, or upon further order(s) of the Court.

D.      Tax Treatment of Settlement Accounts

1.      The SST Settlement Accounts shall be treated as being at all times "qualified settlement funds" within the meaning of Treas. Reg. 1.468B-1. The Escrow Agent, and as required, the Parties, shall timely make such elections as necessary or advisable to carry out the provisions of this Section IV.D., including the "relation-back election" (as defined in Treas. Reg. 1.468B-1), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and

13

requirements contained in such regulation. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

      2.     For the purpose of Treas. Reg. 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the SST Settlement Accounts (including, without limitation, the returns described in Treas. Reg. 1.468B-2(K and L)). Such returns (as well as the election described in Section IV.D.1.) shall be consistent with this Section IV.D and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the SST Settlement Accounts shall be paid out of the appropriate SST Settlement Account as provided in Section IV.D.3 herein.

      3.     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the SST Settlement Accounts, including any taxes or tax detriments that may be imposed upon SST Settling Defendant with respect to any income earned by an SST Settlement Accounts for any period during which such SST Settlement Account does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Section IV.D (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section IV.D) ("Tax Expenses"), shall be paid out of the affected SST Settlement Accounts.

14

CAMylan0400535                               CAMylan04005353

4.      Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the SST Settlement Agreement and shall be timely paid by the Escrow Agent out of the appropriate SST Settlement Account with respect to which such Taxes and/or Tax Expenses have accrued, without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution out of the appropriate SST Settlement Account any funds necessary to pay such amounts including the establishment for adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. 1.468B-2(1), (2)).

5.      The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section IV.D.  For purposes of this Section IV.D, references to a SST Settlement Account shall include such SST Settlement Account and any earnings thereon.

E.      SST Settling Defendant will have no responsibility or liability for any distributions of the SST Settlement Accounts or interest earned thereon, or any reporting requirements that may relate thereto, and no person shall have any claim against any of the Parties, their respective counsel, the Escrow Agent or any agent designated by the Escrow Agent based on the distributions made substantially in accordance with this SST Settlement Agreement and any orders of the Court.

## V.  SETTLEMENT DISBURSEMENTS

A.      <u>Disbursement of Attorneys' Fees and Litigation Costs:</u>

15

The Escrow Agent shall disburse the SST Cost and Fee Account in accordance with the Court's Final Judgment and Order. Guidelines Governing Payment of Attorneys' Fees and Litigation Costs are included as Attachment 4 to this SST Settlement Agreement.

B.      Distribution to State Agencies: The Escrow Agent shall distribute all funds in the SST Agency Account according to the Government Compensation Plan. The Government Compensation Plan shall be consistent with the Guidelines Governing Development of Government Compensation Plan, included as Attachment 5 to this SST Settlement Agreement.

C.      Distribution to Consumers: The Escrow Agent and/or a claims administrator employed by the Plaintiff States shall distribute and/or administer the distribution of all funds remaining in the SST Consumer Fund after payment of any tax obligations according to the Court-approved Consumer Distribution Plan. The Consumer Distribution Plan shall be consistent with the Guidelines Governing Development of Consumer Distribution Plan, included as Attachment 6 to this SST Settlement Agreement.

D.      Disbursement of Administrative Costs: The Escrow Agent shall pay from the SST Consumer Fund and the SST Agency Account only those costs and expenses incurred in connection with the payment of taxes and tax expenses.

E.      Timing of Disbursements:

1.      The Escrow Agent shall distribute the SST Cost and Fee Account and the SST Agency Account within thirty (30) days of the Effective Date.

2.      The Escrow Agent shall, in conjunction with the claims administrator, begin distributing the SST Consumer Fund within thirty (30) days of the Effective Date and shall

16

continue with such distributions according to the terms of the Court-approved Consumer Distribution Plan until the SST Consumer Fund is fully distributed.

       3.     No monies shall be distributed from any of the SST accounts prior to the Effective Date except for the payment of taxes and tax expenses.

## VI.   NOTICE AND SETTLEMENT HEARING

      A.     Within ninety (90) days after execution of this SST Settlement Agreement, Liaison Counsel for Plaintiff States shall file with the Court a motion for  Preliminary Approval of the SST Settlement Agreement.  This motion shall include this SST Settlement Agreement and attachments, a proposed Notice Plan, and the Plaintiff States' Consumer Distribution Plan and Government Compensation Plan and the Preliminary Approval Order.  The Preliminary Approval Order shall be substantially in the form of Attachment 3.  At least fifteen  (15) business days prior to filing their motion requesting entry of the Preliminary Approval Order, the Liaison Counsel for Plaintiff States shall provide a draft copy of such motion (including all exhibits and attachments of such motion) to SST Corporation for review and comment.

      B.     Within ninety (90) days after entry by the Court of the Preliminary Approval Order, Liaison Counsel for Plaintiff States shall effectuate the Notice Plan.

      C.     The Parties contemplate a notice period of  ninety (90) to one hundred twenty (120) days, or such other time period as set by the Court ("Notice Period").  Within  ninety (90) days following the conclusion of the Notice Period, Liaison Counsel for Plaintiff States shall file with the Court a motion seeking final approval of  the Final Judgment and Order.  The Final Judgment and Order shall be substantially in the form of Attachment 2.  At least five (5) business days before the filing of the Motion for Final Approval, the Liaison Counsel for the Plaintiff States shall provide a

CAMylan0400535                              CAMylan04005356

draft copy of such motion (including all exhibits and attachments of such motion) to SST Corporation for review and comment. Counsel for all of the Parties shall use all reasonable efforts to obtain the entry of the Final Judgment and Order.

## VII. COOPERATION AND IMPLEMENTATION

A.    The Parties, and their respective counsel, agree to use all reasonable practicable efforts and to take all steps reasonably necessary to effectuate this SST Settlement Agreement.

B.    The Parties agree that all discovery relating to the Released Claims is stayed and that such discovery may resume only upon agreement by the Parties or by order of the Court.

## VIII. BENEFIT AND BINDING EFFECT

A.    The terms of this SST Settlement Agreement shall be binding on, and shall inure to the benefit of the Parties and their successors and assigns.  The Parties expressly disclaim any intention to create rights under this SST Settlement Agreement which may be enforced by any other person under any circumstances whatsoever, except as provided in this SST Settlement Agreement.

B.    The terms of this SST Settlement Agreement may be entered into by the Attorney General of any state who takes the following actions within 30 days of the execution of this SST Settlement Agreement:

1.    Signs an opt-in agreement and signature page which will be appended onto the body of the SST Settlement Agreement which will be filed with the Court; and

2.    Designates the Liaison Counsel for Plaintiff States to represent such state and agrees to be named as a plaintiff in the Plaintiff States' Third  Amended Complaint.

C.    If  twenty-five thousand (25,000) or more members of the Settlement Group nationwide, or five thousand (5,000) or more within any Plaintiff State exercise their right to opt out

18

of the settlement between Plaintiff States and SST, SST shall have the right, but not the obligation, to terminate and withdraw from the SST Settlement Agreement.  SST's right to withdraw hereunder must be exercised no later than 30 business days following the deadline for submission of requests for exclusion set by the Court.   SST shall exercise any such right by notifying the Court and State Liason Counsel in writing at least 5 business days prior to such right being exercised.

## IX.  EFFECT OF TERMINATION OR DISAPPROVAL

A.      If this SST Settlement Agreement is not approved or is terminated, cancelled, voided or the Effective Date does not occur for any reason, all monies paid into the SST Consumer Fund and the SST State Fund, and any interest accrued thereon, shall be refunded to SST Corporation. Refund to SST Corporation shall occur within thirty (30) days of the disapproval, cancellation, termination, voiding or the Effective Date not occurring.  In such event, this SST Settlement Agreement shall become null and void, shall have no further force and effect, and the Plaintiff States shall retain full rights to assert any and all causes of action against SST Settling Defendant, and SST Settling Defendant shall retain any and all defenses thereto.  These actions shall thereupon revert forthwith to their respective procedural and substantive status prior to the date of execution hereof and shall proceed as if this SST Settlement Agreement, and all other related orders and papers, had not been executed, and the Parties shall jointly request that any order contemplated hereby which shall have been entered be vacated.  Notwithstanding the foregoing, the provisions of Section X.I. shall survive the termination of this SST Settlement Agreement for any reason.

B.      If the Court does not enter the orders or judgments contemplated by this SST Settlement Agreement in substantially the form provided herein, or if the Court enters the orders or judgments and appellate review is sought, and on such review any such order or judgment is

19

materially modified, then this SST Settlement Agreement shall be cancelled and terminated, subject to the provisions of this SST Settlement Agreement, unless all Parties to this SST Settlement Agreement, within thirty (30) days from the date of the mailing of such ruling to such Parties, provide written notice to all other Parties hereto of their intent to proceed with the SST Settlement Agreement.

## X. MISCELLANEOUS

A.       This SST Settlement Agreement and the Attachments contain the entire agreement and understanding of the Parties.  There are no additional promises or terms of the SST Settlement Agreement other than those contained herein.

B.       The terms or provisions of this SST Settlement Agreement may not be changed, waived, modified, or varied in any manner whatsoever unless in a writing duly signed by all Parties with the consent of the Court.  Any failure by any party to insist upon the strict performance by any other party of any of the provisions of this SST Settlement Agreement shall not be deemed a waiver of any of the provisions hereof, and that party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this SST Settlement Agreement to be performed by the other party.

C.       The undersigned counsel for each of the Parties hereby represents that he or she is authorized to enter into this SST Settlement Agreement on behalf of that Party.

D.       The SST Settlement Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

E.       The captions contained in this SST Settlement Agreement are inserted only as a

20

CAMylan0400535                                        CAMylan04005359

matter of convenience and in no way define, limit, extend, or describe the scope of this SST

Agreement or the intent of any provision hereof.

       F.      The SST Settlement Agreement may be executed in one or more counterparts. All

executed counterparts and each of them shall be deemed to be one and the same instrument. A

complete set of original executed counterparts shall be filed with the Court.

       G.     Any and all notices, requests, consents, directives, or communications by any party

intended for any other party shall be in writing and shall, unless expressly provided otherwise herein,

be given personally, by express courier, or by postage prepaid mail, or by facsimile transmission

followed by postage prepaid mail, and shall be addressed as follows:

               To Plaintiff States or the Class:

                       Chief, Antitrust Section
                       Office of the Attorney General
                       140 East Town Street, 12th Floor
                       Columbus, OH 43215
                       Facsimile: (614) 995-0266

               To SST Corporation:

                       Paul, Weiss, Rifkind, Wharton & Garrison
                       Sidney S. Rosdeitcher
                       1285 Avenue of the Americas
                       New York, NY 10019
                       Facsimile: (212) 373-2795

Any one of the Parties may, from time to time, change the address to which such notices, requests,

consents, directives, or communications are to be delivered, by giving the other Parties prior written

notice of the changed address, in the manner herein above provided, ten (10) calendar days before

the change is effective.

CAMylan0400536                                        CAMylan04005360

H.      This SST Settlement Agreement, including, but not limited to, the releases contained herein, shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of laws principles.  The parties to this settlement agree that the Final Judgment and Order shall provide that the Court shall retain jurisdiction to enforce all provisions and terms of this SST Settlement Agreement.  This SST Settlement Agreement shall be enforced in the United States District Court for the District of Columbia.  The Parties, on behalf of themselves and the Settling Members of the Settlement Group, waive any objection that each of them may now have or hereafter have to the venue of any such suit, action or proceeding and irrevocably consent to the jurisdiction of the Court and agree to accept and acknowledge service in any such suit, action or proceeding.

I.      Neither this SST Settlement Agreement nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence or an admission or concession by SST Settling Defendant as to the validity of any claim that has been or could have been asserted against it or as to any liability by it, which liability is hereby expressly denied and disclaimed by SST Settling Defendant.  Neither this SST Settlement Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or in any arbitration, except in connection with the Parties' application for approval or enforcement of this SST Settlement Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to Litigating Plaintiff States.

J.      Within thirty (30) days after the Effective Date, the Plaintiff States shall return all materials and documents produced in these actions by any party or non-party to the person or entity

22

CAMylan0400536                                        CAMylan04005361

that produced those documents or, upon written request by that person or entity, shall have those documents destroyed. In the event that documents are destroyed, the Plaintiff States shall provide prompt notice to the person or entity that produced those documents, certifying their destruction. In the event that the Plaintiff States are requested by subpoena or other legal process to provide such information to any person, they shall immediately inform SST Settling Defendant of the subpoena or legal process, shall decline to waive any such privileges and objections to disclose as may exist, and shall reasonably cooperate with SST who shall have the right and responsibility to challenge such subpoena or legal process. The obligations of the Plaintiff States are governed by the Court's Protective Order entered March 16, 1999.

K.    Nothwithstanding Section X.I. above, this SST Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that may be instituted, prosecuted or attempted with respect to any of the Released Claims. The Parties agree that for any such proceeding, the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding. The Parties further agree that this SST Settlement Agreement may be pleaded as necessary for the purpose of enforcing the SST Settlement Agreement.

FOR SST CORPORATION

Sidney S. Rosdeitcher, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Counsel for SST Corporation

Settlement agreement(SSTFinal).doc

23

CAMylan0400536                                    CAMylan04005362

Settlement Agreement between Plaintiff States and SST Corporation.


Bill Pryor
Attorney General
State of Alabama
11 South Union Street
Alabama Statehouse
Montgomery, Alabama 36104
(334) 242-7310

CAMylan0400536                                    CAMylan04005363

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL BRUCE M. BOTELHO
ATTORNEY GENERAL OF ALASKA

By: _____
Julia Coster
Assistant Attorney General
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
(907) 269-5100

CAMylan0400536                                           CAMylan04005364

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL JANET NAPOLITANO
ATTORNEY GENERAL OF ARIZONA


By: _____
Timothy A. Nelson
Special Counsel and Antitrust Unit Chief
1275 West Washington
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7752

**CAMylan0400536**                                            CAMylan04005365

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL MARK PRYOR
ATTORNEY GENERAL OF ARKANSAS

By: _____
Teresa Brown
Senior Assistant Attorney General
323 Center St., Ste. 200
Little Rock, Arkansas 72201
(501) 682-3561

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL BILL LOCKYER
ATTORNEY GENERAL OF CALIFORNIA


By: _____
Natalie S. Manzo
Deputy Attorney General
Office of the Attorney General
300 S. Spring St., Ste. 5000N
Los Angeles, CA 90013
(213)897-2707

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL KEN SALAZAR
ATTORNEY GENERAL OF COLORADO

By: _____
　　 MARIA BERKENKOTTER
First Assistant Attorney General
Antitrust Unit
(303) 866-5079

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL RICHARD BLUMENTHAL
ATTORNEY GENERAL OF CONNECTICUT

BY:

Steven M. Rutstein
Antitrust Department Head
Assistant Attorney General

Arnold B. Feigin
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Tel:  (860) 808-5540

CAMylan0400536                                    CAMylan04005369

Settlement Agreement among Plaintiff States and SST Corporation.




**ATTORNEY GENERAL M. JANE BRADY**
**ATTORNEY GENERAL OF DELAWARE**

By: _____

           Stuart B. Drowos, ID #427
           Deputy Attorney General
           Department of Justice
           State of Delaware
           820 North French Street, 6th Floor
           Wilmington, Delaware 19801
           (302) 577-8400
           Of Counsel

Settlement Agreement between Plaintiff States and SST Corporation.

ROBERT R. RIGSBY
CORPORATION COUNSEL
DISTRICT OF COLUMBIA

By:

Sharon Styles-Anderson (D.C. Bar #412158)
Senior Deputy Corporation Counsel for
Public Protection and Enforcement

Charlotte W. Parker (D.C. Bar #186205)
Acting Deputy Corporation Counsel
Civil Division

Bennett Rushkoff (D.C. Bar #386925)
Senior Counsel
Office of the Corporation Counsel
441 4th Street, N.W., Suite 450-N
Washington, DC  20001
202-727-3500

Attorneys for the District of Columbia

**CAMylan0400537**                                CAMylan04005371

Settlement Agreement between Plaintiff States and SST Corporation.


ROBERT A. BUTTERWORTH
ATTORNEY GENERAL OF FLORIDA

By: _____

    RICHARD E. DORAN
    Deputy Attorney General
    PATRICIA A. CONNERS
    Chief, Antitrust Section
    Office of the Attorney General
    State of Florida
    PL-01, The Capitol
    Tallahassee, Florida 32399-1050
    (850) 414-3600

Settlement Agreement between Plaintiff States and SST Corporation.

ATTORNEY GENERAL THURBERT E. BAKER
ATTORNEY GENERAL OF GEORGIA

By:
Name:     Harold D. Melton
Title:     Senior Assistant Attorney General
Address:  40 Capitol Square, S.W.
          Atlanta, Georgia 30334
Phone:    (404) 656-3337

CAMylan0400537          CAMylan04005373