# Exhibit A

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Labs, Inc. et al., Civil Action No. 03-11226-PBS*

**Exhibit to the November 25, 2009 Declaration of Christopher C. Palermo**
**in Support of Mylan's Motion for Partial Summary Judgment**

99ms276

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE LORAZEPAM & CLORAZEPATE ANTITRUST LITIGATION | ) ) ) ) ) ) | MDL Docket No. 1290 (TFH) Misc. No. 99ms276 (TFH) |
| This Opinion applies to: | ) ) ) | |
| STATE OF CONNECTICUT, et al., Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| MYLAN LABORATORIES, INC. et al., Defendants. | ) ) ) | FILED |
| and | ) ) | FEB - 1 2002 |
| FEDERAL TRADE COMMISSION, Plaintiff, | ) ) ) | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |
| v. | ) ) | |
| MYLAN LABORATORIES, INC. et al., Defendants. | ) ) ) | |

## ORDER AND FINAL JUDGMENT

WHEREAS the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, and the Commonwealths of

(N)

219

Kentucky, Massachusetts, Pennsylvania, and Virginia, through their Attorneys General, and the District of Columbia through its Corporation Counsel ("Plaintiff States" as defined below), and the Federal Trade Commission("Commission"), have filed Complaints for damages, divestment, disgorgement, restitution and other equitable relief, injunctive relief, and civil penalties against the defendants Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.("Settling Defendants"), alleging violations of the Sherman Act, Federal Trade Commission Act, and state antitrust and unfair competition and/or consumer protection laws.

**WHEREAS** Plaintiff States, the Commission and Settling Defendants desire to resolve any and all disputes arising from the Complaints. The parties executed a settlement agreement on January 30, 2001 (the "Mylan Settlement Agreement"). The Mylan Settlement Agreement was filed with the Court on February 1, 2001. The Mylan Settlement Agreement does not constitute any evidence against or an admission of liability by the Settling Defendants.

**WHEREAS** in full and final settlement of the claims set forth in the Complaints, Mylan Pharmaceuticals, Inc. has paid $100 million in cash, of which $71,782,017.00 was paid into a Consumer Fund, to be distributed in accordance with the Consumer Distribution Plan, and of which $28,217,983.00 was paid into a State Fund, to be distributed in accordance with the Government Compensation Plan, as set forth in the Mylan Settlement Agreement. Mylan Pharmaceuticals, Inc. has further agreed to pay up to $8 million in cash into the Cost and Fee Account, as set forth in the Mylan Settlement Agreement. Settling Defendants have also agreed to entry of this Order and Final Judgment.

**WHEREAS** the Commission and Settling Defendants have entered into a Stipulated

2

Permanent Injunction, which was approved by the Commission on November 29, 2000,

Attachment 4 to the Mylan Settlement Agreement, incorporated herein by reference.

**WHEREAS** the Plaintiff States have also filed a Complaint for damages, divestment,

disgorgement, restitution and other equitable relief, and civil penalties against SST Corporation

("SST"), alleging violations of the Sherman Act and state antitrust and unfair competition and/or

consumer protection laws ("SST Complaint").

**WHEREAS** the Plaintiff States and SST Settling Defendant desire to resolve any and all

disputes arising from the SST Complaint.  The parties executed a settlement agreement on

January 30, 2001 (the "SST Settlement Agreement").  The SST Settlement Agreement was filed

with the Court on February 1, 2001.  The SST Settlement Agreement does not constitute any

evidence against or an admission of liability by SST Settling Defendant.

**WHEREAS** in full and final settlement of the claims set forth in the SST Complaint,

SST has paid to the Plaintiff States $500,000, c/o the Escrow Agent appointed pursuant to the

Settlement Agreements, and the Plaintiff States' share of the $1 million payment made pursuant

to SST's settlement in the Advocate Action.  SST Settling Defendant has also agreed to the entry

of this Order and Final Judgment.

**WHEREAS** Plaintiff States have agreed to release the claims of consumers residing in

the Plaintiff States who have not submitted valid and timely requests for exclusion from the

Settlement Group in accordance with the instructions contained in the Notice, and the

Commission has agreed to release its equitable claims.

**WHEREAS** pursuant to a Preliminary Approval Order, Notice of the Settlement

Agreements was given to the Settlement Group pursuant to Court order in accordance with

3

CAMylan0400542                    CAMylan04005429

Federal Rules of Civil Procedure 23(c)(2) and 23(e), state *parens patriae* laws and/or state equitable authority and the requirements of due process.

**WHEREAS** an opportunity to be heard was given to all members of the Settlement Group requesting to be heard in accordance with this Court's orders. The Court has reviewed and considered the terms of the Settlement Agreements, the submissions of the parties in support thereof, and the comments received in response to the Notice. After holding a hearing on November 29, 2001 at which all interested parties were given an opportunity to be heard,

**NOW, THEREFORE**, before the taking of any testimony, without trial or adjudication of any issue of fact or law herein, without any admission of liability or wrongdoing by Settling Defendants or SST Settling Defendant and upon the consent of the Parties hereto,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

### I. JURISDICTION

The Court has jurisdiction over the subject matter of this action and the parties hereto. The Plaintiff States brought this action asserting claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and claims under state antitrust, unfair competition and consumer protection statutes, and common law. The Commission brought this action under Sections 5 and 13(b) of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 53(b). Jurisdiction lies in this Court pursuant to 28 U.S.C. §§ 1331, 1337 and 1367(a). Venue is proper in the District of the District of Columbia.

4

## II. DEFINITIONS

As used in this Order and Final Judgment, the following definitions shall apply:

A.     "Advocate Action" means the action entitled <u>Advocate Health Care, et al. v. Mylan Laboratories, Inc., et al.</u>, which is one of the coordinated cases in <u>In re Lorazepam and Clorazepate Antitrust Litigation</u>, Case No. MDL-1290 in this Court.

B.     "Agency Account" means a separate account, established within the State Fund, funded and distributed as specified in the Mylan Settlement Agreement.

C.     "Class" means the class certified for settlement purposes only as provided in Section IV. hereof.

D.     "Commission" means the Federal Trade Commission.

E.     "Commission's Complaint" means the complaint filed by the Commission on December 21, 1998, as amended on February 8, 1999, against Settling Defendants in the United States District Court for the District of Columbia.

F.     "Consumer Distribution Plan" means the plan and method of allocation of the Consumer Fund and the SST Consumer Fund submitted for this Court's approval by the Plaintiff States.

G.     "Consumer Fund" means an interest-bearing escrow account, established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the Mylan Settlement Agreement.

H.     "Cost and Fee Account" means a segregated account established within the State Fund and funded as set forth in the Mylan Settlement Agreement.

I.     "Court" means the United States District Court for the District of Columbia.

5

CAMylan0400543                                                    CAMylan04005431

J.    "Escrow Agent" means the person or entity chosen by the Plaintiff States and designated pursuant to the Escrow Agreement to administer the Consumer Fund and State Fund as set forth in the terms of the Mylan Settlement Agreement, and the SST Consumer Fund and SST State Fund as set forth in the terms of the SST Settlement Agreement.

K.    "Escrow Agreement" means the escrow agreement, attached to the Settlement Agreements as Attachment 1.

L.    "Government Compensation Plan" means the plan and method of allocation of the State Fund and the SST State Fund submitted for this Court's Approval by the Plaintiff States.

M.    "Litigating Plaintiff States" means the 33 Plaintiff States that participated in the litigation and negotiation of the settlements of these actions: Alaska, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin.[1]

N.    "Mylan Settlement Agreement" means the Settlement Agreement between Plaintiff States, the Federal Trade Commission and Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., and Cambrex Corp.

O.    "Notice" means the notice or notices of these Settlement Agreements and hearing thereof that were disseminated to the members of the Settlement Group pursuant to this Court's

---

[1] For purposes of the litigation and this settlement, the definition of "Litigating Plaintiff States" or "Plaintiff States" does not include the University of California. It is stipulated by the Parties that the California Attorney General has not represented the interests of the University of California in the litigation or the settlement thereof, and the University of California has not been participating in this action.

6

Order of April 27, 2001.

P.     "Notice Plan" means the Court-approved process by which the Plaintiff States notified the Settlement Group of the Settlement Agreements.

Q.     "Parties" means Plaintiff States, the Commission, Mylan Laboratories, Inc., Gyma Laboratories of America, Inc., Profarmaco S.r.l., Cambrex Corp. and SST Corporation.

R.     "Person" means any natural person, partnership, corporation, or business entity.

S.     "Plaintiff States" means the Litigating Plaintiff States and any State that became a party to the Settlement Agreements, through the State's Attorney General, individually and as authorized by law, in the state's sovereign capacity, on behalf of state agencies, in a statutory, equitable and/or common law capacity, and as representative of and/or *parens patriae* on behalf of all natural person citizens of such State who purchased either or both of the Relevant Drugs during the Relevant Period.

T.     "Plaintiff States' Complaint" means the complaint filed by the Litigating Plaintiff States on December 21, 1998, as amended on February 8, 1999 and again on May 13, 1999 and the Third Amended Complaint filed by the Plaintiff States on February 1, 2001.

U.     "Preliminary Approval Order" means the Court's Order of April 27, 2001 preliminarily approving the Settlement Agreements and establishing a schedule for Notice and further proceedings.

V.     "Released Claims" means all claims, counterclaims, set-offs, demands, actions, rights, liabilities, and causes of action arising under federal or state antitrust, unfair methods of competition, or consumer protection laws, under state or federal unfair or deceptive trade practices acts, or under common law, asserted or that could have been asserted, by the Commission, by Settling Members

7

of the Settlement Group, or by the Plaintiff States on behalf of state agencies and/or natural person

consumers within the Plaintiff States against Settling Defendants and SST Settling Defendant arising

from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions,

or failures to act set forth or alleged in the Commission's Complaint or in the Plaintiff States'

Complaint.

      W.     "Relevant Drugs" means generic lorazepam or clorazepate sold in the United

States.

      X.     "Relevant Period" means the period from January 1, 1998 through December 31,

1999.

      Y.     "Settlement Agreements" means the Mylan Settlement Agreement and the SST

Settlement Agreement.

      Z.     "Settlement Group" means all natural person consumers represented by Attorneys

General for the Plaintiff States, individually and as authorized by law in a statutory, equitable

and/or common law capacity, as *parens patriae* and/or as representatives of the Class.

      AA.    "Settling Defendants" means Mylan Laboratories, Inc. ("Mylan"), Gyma

Laboratories of America, Inc. ("Gyma"), Profarmaco S.r.l. ("Profarmaco"), Cambrex Corp.

("Cambrex"), and any and all of their affiliates, subsidiaries, divisions and other organizational

units of any kind, their successors and assigns, and their former, current and future officers,

directors, employees, agents, attorneys, representatives, shareholders, partners and other persons

acting on their behalf.

      BB.    "Settling Members of the Settlement Group" means each and every member of the

Settlement Group who did not exercise his or her right to exclude himself or herself from the

8

Settlement Group pursuant to a proper written request for exclusion postmarked on or before August 31, 2001.

CC.    "SST" or "SST Corporation" means SST Corporation, a New Jersey Corporation with its principal place of business in Clifton, New Jersey.

DD.    "SST Agency Account" means a separate account established within the SST State Fund, funded and distributed as specified in the SST Settlement Agreement.

EE.    "SST Consumer Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the SST Settlement Agreement.

FF.    "SST Cost and Fee Account" means a segregated account established within the SST State Fund and funded as set forth in the SST Settlement Agreement.

GG.    "SST Settlement Agreement" means the Settlement Agreement between Plaintiff States and SST Corporation.

HH.    "SST Settling Defendant" means SST Corporation, and any and all of its affiliates, subsidiaries, divisions and other organizational units of any kind, their successors and assigns, and the former, current and future officers, directors, employees, agents, attorneys, representatives, shareholders and partners of each of the foregoing, and other persons acting on their behalf.

II.    "SST State Fund" means an interest-bearing escrow account established pursuant to the Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the SST Settlement Agreement.

JJ.    "State Fund" means an interest-bearing escrow account established pursuant to the

9

Escrow Agreement, administered by the Escrow Agent and funded and distributed as set forth in the Mylan Settlement Agreement.

KK.     "State Liaison Counsel" or "Liaison Counsel for Plaintiff States" means the Attorney General of the State of Ohio.

LL.     "Stipulated Permanent Injunction" means the injunction entered into between the Commission and the Settling Defendants in the action entitled <u>Federal Trade Commission v.</u> <u>Mylan, et al.</u>, approved by the Commission on November 29, 2000, in the form of Attachment 4 to the Mylan Settlement Agreement.

### III. APPLICABILITY

This Order and Final Judgment shall apply to the Plaintiff States, the Commission, the Settling Members of the Settlement Group, the Settling Defendants, and SST Settling Defendant.

### IV. FINAL APPROVAL OF SETTLEMENTS AND CERTIFICATION OF THE SETTLEMENT CLASS

A.     With respect to the claims set forth in the Plaintiff States' Complaint, the Court confirms its Preliminary Approval Order and finds under the circumstances of these settlements that the prerequisites to a class action set forth in Federal Rules of Civil Procedure 23(a) and (b) are satisfied, that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Accordingly, for the purpose of these settlements only, a class consisting of

> all natural person consumers within Plaintiff States where such a class action may be brought, not otherwise represented by the Plaintiff States as *parens patriae*, who purchased generic lorazepam and/or clorazepate sold in the United States from

10

January 1, 1998 through December 31, 1999

(the "Class") is hereby certified. The States within that Class are set forth in Section VI. below.

B.      The Court finds that the Notice was the best notice practicable under the circumstances and constitutes due and sufficient notice.

C.      The terms of the Settlement Agreements are adjudged as fair, reasonable and adequate and in the best interest of consumers in the Plaintiff States and the Settlement Group as a whole, and satisfy the requirements of Federal Rule of Civil Procedure 23(e), state *parens patriae* laws and/or state equitable authority and due process.

D.      The Settlement Agreements are hereby approved, and the Parties are directed to implement the settlements in accordance with their terms.

E.      The Consumer Distribution Plan and claims procedure, and the Government Compensation Plan are adjudged as fair, reasonable and adequate and are hereby approved. Plaintiffs are directed to cause the settlement funds to be distributed in accordance with said plans.

F.      All members of the Settlement Group were afforded the opportunity to exclude themselves from the Settlement Group.

G.      All payments made by Mylan Pharmaceuticals, Inc. and SST Corporation pursuant to the Settlement Agreements are not, and shall not, be considered the payment of a penalty or fine under any state or federal laws, rules or regulations, or any other applicable statute or provision.

## V. INJUNCTION

The terms of the Stipulated Permanent Injunction entered into by Settling Defendants and

11

CAMylan0400543                                    CAMylan04005437

the Commission, which was approved by the Commission on November 29, 2000, shall be
binding on all the parties to the Mylan Settlement Agreement, and may be enforced by the
Plaintiff States for the term provided for in the Stipulated Permanent Injunction in the following
manner:

     A.    Settling Defendants shall provide the notices and/or reports pursuant to Sections
VI, VII and VIII of the Stipulated Permanent Injunction to State Liaison Counsel, c/o Chief,
Antitrust Section, Office of the Ohio Attorney General, 140 East Town Street, 12th Floor,
Columbus, Ohio 43215.

     B.    Communications involving the Stipulated Permanent Injunction shall be
communicated to Settling Defendants by State Liaison Counsel.  All such communications shall
be addressed to Settling Defendants as provided for in Section XI(G) of the Mylan Settlement
Agreement.

     C.    Each Plaintiff State shall enforce Sections III, IV and V of the Stipulated
Permanent Injunction through a committee comprised of the Offices of the Attorneys General for
the States of Ohio, Maryland and Kentucky (the "Committee").

     D.    The Stipulated Permanent Injunction shall be enforced by the Plaintiff States by
and through the Committee in the District Court for the District of Columbia.

### VI. DISMISSAL OF ACTIONS AND RELEASES OF CLAIMS

     A.    Subject to the provisions of Section IX of this Order and Final Judgment, the
Commission's and the Plaintiff States' Complaints are dismissed with prejudice.  The
Commission, Plaintiff States, and Settling Members of the Settlement Group are barred from

12

further prosecution of the Released Claims, and Settling Defendants and SST Settling Defendant are released and forever discharged from liability for the Released Claims.

      B.    The Court finds:

          (1)    The Attorneys General of the States of Alaska, California, Florida, Illinois, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Dakota, Texas, Utah, Virginia, Wisconsin and Wyoming pursuant to their respective state's *parens patriae* or equivalent authority, and additionally under Federal Rule of Civil Procedure 23, have the authority to represent, settle and release the claims of natural person consumers residing within their states.

          (2)    The Attorneys General of the States of Alabama, Arizona, Colorado, Delaware, Hawaii, Idaho, Maine, Missouri, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Tennessee, Vermont, Washington, West Virginia, and the District of Columbia, pursuant to their respective state's *parens patriae* or equivalent authority, have the authority to represent, settle and release the claims of natural person consumers residing within their states.

          (3)    The Attorneys General of the States of Arkansas, Connecticut, Georgia, Indiana, Iowa, Nebraska, Oklahoma, and South Carolina have the authority to represent, settle and release the claims of natural person consumers residing within their states pursuant to Fed. R. Civ. P. 23.

          (4)    The Attorney General of the State of Maryland has, and the Attorney General of the State of Colorado further has, the authority to represent, settle and release the

13

claims of natural person consumers residing within their states pursuant to their equitable

authority under Md. Com. Law Code Ann. §11-209 and §6-4-111 C.R.S (2000), respectively.

(5)The Attorney General of the State of Washington has the further authority to bring equitable

claims for the benefit of natural person consumers residing within her state, and to settle and

release such claims, pursuant R.C.W. §19.86.080.

## VII. FEES AND COSTS

The Court approves the funding of the Cost and Fee Account and orders Mylan to fund

said account as set forth in the Mylan Settlement Agreement in the amount of $7,985,947.58.

The Court approves the funding of the SST Cost and Fee Account as set forth in the SST

Settlement Agreement in the amount of $125,000.00, and orders the Escrow Agent in the

Advocate Action to further fund said account with the Plaintiff States' share of the $1 million

payment pursuant to SST's settlement in the Advocate Action if and when that settlement

becomes effective, as defined in that settlement. Escrow Agent shall disburse the funds in the

Cost and Fee accounts accordingly. The Court further approves the expenditure of up to

$8,250,000.00 from the Consumer Fund for the payment of notice and claims administration

costs, and the costs of securing approval of the Settlement Agreements.

## VIII. FINALITY OF JUDGMENT

The Court finds that this Order and Final Judgment adjudicates all the claims, rights and

liabilities of the Parties, and is final and shall be immediately appealable. Neither this Order and

Final Judgment nor the Settlement Agreements shall constitute any evidence or admission of

liability by any Settling Defendant or SST Settling Defendant, nor shall they be offered in

14

evidence or used for any other purpose in this or any other matter or proceeding other than as may be necessary to consummate or enforce the Settlement Agreements or the terms of this Order and Final Judgment, or by any Settling Defendant or SST Settling Defendant in connection with any action asserting Released Claims.

## IX. RETENTION OF JURISDICTION

Without affecting the finality of this Order, the Court retains jurisdiction for the purposes of enforcing the terms of the Settlement Agreements and enabling any of the Parties to this Order and Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of this Order and Final Judgment for the modification of any of the provisions hereof, and for the enforcement of compliance herewith.

**SO ORDERED**.

February 1st, 2002

Thomas F. Hogan
Chief Judge

15