Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into by Ven-A-Care of the Florida

Keys, Inc. (the "Relator") on behalf of the United States of America; the attorneys for the

Relator; the State of California ("California"); the State of Florida ("Florida"); and Schering-

Plough Corporation ("Schering-Plough"), Schering Corporation ("Schering"), and Warrick

Pharmaceuticals Corporation ("Warrick") (collectively, "Schering/Warrick").  Collectively, all

of the above will be referred to as "the Parties."

### II. PREAMBLE

As a preamble to this Settlement Agreement and Release, the Parties agree to the

following:

A.      WHEREAS, at all relevant times, Schering-Plough Corporation was a New Jersey

corporation headquartered in Kenilworth, New Jersey; and

B.      WHEREAS, at all relevant times, Schering Corporation, a New Jersey

corporation and wholly-owned subsidiary of Schering-Plough Corporation, manufactured,

marketed, and sold branded pharmaceutical products in the United States; and

C.      WHEREAS, at all relevant times, Warrick Pharmaceuticals Corporation, a

Delaware corporation and wholly-owned subsidiary of Schering, marketed and sold generic

pharmaceutical products in the United States; and

D.      WHEREAS, Ven-A-Care of the Florida Keys, Inc. is a corporation with its

principal place of business in Key West, Florida.  Zachary T. Bentley, T. Mark Jones, John M.

Lockwood, and Luis B. Cobo are or were officers of Ven-A-Care of the Florida Keys, Inc.; and

24054478_1.DOC                                          - 1 -

E.      WHEREAS, on or about June 23, 1995, Ven-A-Care of the Florida Keys, Inc., Zachary T. Bentley and T. Mark Jones filed a *qui tam* action in the United States District Court for the Southern District of Florida captioned *United States ex rel. Ven-A-Care of the Florida Keys, Inc.* v. *Bristol Myers Squibb Co., et al.*, Civil Action No. 95-1354 (S.D. Fla.) (the "Florida Civil Action"), which asserted claims with regard to brand and generic drugs; and

F.      WHEREAS, in 1997, that complaint, which remained sealed at the time, was amended to add claims against Schering/Warrick based on the information that Ven-A-Care supplied to the United States about Schering/Warrick's inhalation products; and

G.      WHEREAS, on or about April 10, 2000, Ven-A-Care, Zachary T. Bentley, T. Mark Jones, John M. Lockwood, and Luis B. Cobo filed another *qui tam* action in the United States District Court for the District of Massachusetts captioned *United States ex rel Ven-A-Care of the Florida Keys, Inc.* v. *Apothecon et al.*, Civil Action No. 00-10698 (D. Mass.) (the "Massachusetts Civil Action") (together, with the Florida Civil Action, the "Civil Actions"), asserting claims as to additional Schering/Warrick products; and

H.      WHEREAS, on or about January 5, 2009, the claims first asserted in the Florida Civil Action against Schering/Warrick were severed, and the Relator filed a Complaint in the Southern District of Florida under the caption *United States ex rel Ven-A-care of the Florida Keys, Inc.* v. *Schering Corporation et al.*, Civil Action No. 09-10003 (S.D. Fla.); and

I.      WHEREAS, that severed case was transferred to MDL No. 1456 and, on July 24, 2009, the Relator filed an Amended Complaint under the caption *United States ex rel Ven-A-care of the Florida Keys, Inc.* v. *Schering Corporation et al.*, Civil Action No. 09-CV-10547 (D. Mass.); and

J.      WHEREAS, the State of California and Ven-A-Care are pursuing relief in an

action styled *State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott*

*Laboratories Inc., et al.*, Case No. 722855, Filed In Camera Under Seal, Superior Court of the

State of California, removed to the United States District Court for the Central District of

California, Case No. 03-CV-2238, and transferred to the United States District Court for the

District of Massachusetts, Case No. 03-cv-11226-PBS, MDL 1456, Master File No. 01-12257-

PBS; and

K.      WHEREAS, the State of Florida and Ven-A-Care are pursuing relief in an action

styled *State of Florida, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim*

*Corp., et al.*, Case No. 98-3032 A, Filed In Camera Under Seal, Circuit Court of the Second

Judicial Circuit in and for Leon County, Florida, removed to United States District Court for the

Northern District of Florida, Case No. 06-cv-00476, transferred to the United States District

Court for the District of Massachusetts, Case No. 06-12160, MDL 1456, Master File No. 01-

12257-PBS, and remanded to the Circuit Court of the Second Judicial Circuit in and for Leon

County, Florida, Case No. 98-3032 A; and

L.      WHEREAS, the Relator on behalf of the United States contends that Schering and

Warrick submitted, or caused to be submitted, false claims to the Medicaid Program. As a result,

the Relator contends that the United States has certain claims against Schering/Warrick for

engaging in the following conduct (hereinafter the "Covered Conduct"). Specifically, the

Relator on behalf of the United States contends that, during the period from January 1, 1991

through the date that this Agreement is executed by all parties (the "Relevant Period"),

Schering/Warrick knowingly set, reported, and maintained or caused to be set, reported and

maintained false, fraudulent, and inflated Average Wholesale Prices, Suggested List Prices,

Wholesale Acquisition Costs, Wholesale Net Prices, Direct Prices, Wholesale Direct Prices, and Net Direct Prices, among others, (the "Reported Prices") for all drugs manufactured, marketed, or sold by Labeler 59930 (the "Warrick Covered Drugs"). These reported prices were higher, and sometimes substantially higher, than the prices paid by Schering/Warrick's customers for certain of the Warrick Covered Drugs. Schering/Warrick allegedly used the artificially inflated spread between the Reported Prices and the actual selling prices for these drugs in marketing, promoting, and selling drugs to existing and potential customers. Schering/Warrick allegedly knew that the reporting of false, fraudulent, and inflated Reported Prices in connection with certain drugs and/or marketing those drugs based on the artificially inflated spread between the Reported Prices and the actual selling prices would cause the customers and others to submit false, fraudulent, and excessive claims for reimbursement to the Medicaid Program; and

M.     WHEREAS, the Relator on behalf of the United States contends that the Medicaid Program was damaged as a result of the Covered Conduct; and

N.     WHEREAS, in separate actions brought by California and Florida, California and Florida also contend that Schering/Warrick submitted, or caused to be submitted, for payment by the Medicaid Program false, fraudulent, and excessive claims for reimbursement as a result of the Covered Conduct resulting in damage to California and Florida. Schering/Warrick and California, and Schering/Warrick and Florida will execute separate settlement agreements in exchange for the payment specified in Paragraph III.1 below and in accordance with any terms and conditions specified in such separate settlement agreements; but

O.     WHEREAS, as a part of a private class action lawsuit in MDL No. 1456 (the "MDL Class Action Case") against *intra alia* Schering/Warrick, the Court ruled that Schering's reported prices for Intron-A, Proventil, and Temodar did not give rise to liability under Chapter

93A of the Massachusetts Consumer Protection Act; and Schering has provided to the United States a drug pricing analysis similar to the one presented to the Court in the MDL Class Action Case for its Schering brand drugs (which analysis is attached hereto as Exhibit A)(hereinafter, the "Schering Brand Drug Analysis"); and, based in part on that pricing analysis, the United States has declined to intervene in this case or pursue a damages claim against Schering/Warrick on the basis of Schering's price reporting for its brand drugs and will consent to the voluntary dismissal with prejudice of the Amended Complaint; and

P.     WHEREAS, since the inception of this litigation, similar to the "30% yardstick" applied by the Court, *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 491 F. Supp.2d 20, 32 (D. Mass. 2007), and recently affirmed by the First Circuit on appeal, *In re Pharm. Indus. Avg. Wholesale Price Litig.*, __ F.3d __, No. 08-1056, 2009 WL 3019691 (1st Cir. Sept. 23, 2009), it has been the Relator's position that AWPs for brand-name drugs that are set based on an industry standard 20%-25% mark-up from a WAC at or about which substantial sales are made cannot form the basis for a false statement or False Claims Act violation.  Consistent with this perspective, the Relator and Schering have reviewed the analyses of spreads (measured as the difference between AWP and AMP) and sales within 5% of WAC for the Schering brand drugs attached hereto as Exhibit A and concluded that the patterns of spreads and sales at list price for those drugs fall within the parameters described above for which the MDL Court found no liability for the Schering brand drugs.  The Relator made this determination on the basis of its independent pricing information and otherwise assumed that the confidential AMP information provided by Schering was the AMP data that Schering reported to CMS.  Applying these standards, Ven-A-Care has concluded that there is no liability for the Schering brand drugs; and

Q.    WHEREAS, California has made its own independent analysis and concluded that, on the basis of the information within its possession and consistent with the standards applied by California in litigating the case described in paragraphs J and N above, it has no claims related to the price reporting for reimbursement purposes for Schering-brand drugs; and

R.    WHEREAS, Florida has made its own independent analysis and concluded that it has no viable claims related to the price reporting for reimbursement purposes for Schering-brand drugs; and

S.    WHEREAS, this Settlement is intended to fully, finally, and forever resolve all claims related to the federal-share (defined to mean that portion of Medicaid expenditures paid by the United States) of any Medicaid overpayment resulting from the Covered Conduct described above and any claims that could have been asserted relating to price reporting for reimbursement purposes for Labeler Codes 00085 and 11523 (the "Schering Covered Drugs") (together with the Warrick Covered Drugs, the "Covered Drugs").

T.    WHEREFORE, this Agreement is the result of a compromise of disputed issues of law and fact, and the execution and delivery of this Agreement shall not constitute or be construed as an admission of fault, liability, or wrongdoing by any of the Parties, nor does it constitute evidence of any liability or unlawful conduct on the part of the Parties, and the Relator, California, and Florida will not urge or seek to admit this Agreement as evidence of any fault or liability of the Parties in any investigation, administrative claim, action, suit, or proceeding, or federal or state court or arbitration proceeding; and

U.    WHEREFORE, Schering/Warrick deny all of the claims and allegations brought on behalf of the United States and by California and Florida, deny any wrongdoing, and deny that they have any liability relating to the Covered Conduct; and

V.     WHEREFORE, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these disputed claims, and as a result of a mutual desire to settle their disputes, the Parties have reached a full, fair, and final settlement as set forth in this Agreement. The parties agree that this Agreement is not punitive in purpose or effect.

## III. **TERMS AND CONDITIONS**

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations set forth below in this Settlement Agreement, and for good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     In full and final settlement of all claims that were brought or that could have been brought by the Relator on behalf of the United States, and all claims that were brought or that could have been brought by the States of California and Florida, Schering/Warrick shall pay the sum of Sixty-Nine Million Dollars ($69,000,000.00) (the "Settlement Amount"). This Settlement Amount is intended to resolve, fully and finally, all of the claims that were brought or could have brought on behalf of the United States, and also all claims that were brought or that could have been brought by the States of California and Florida as set forth more fully in the separate settlement agreements by and between Schering/Warrick and California and Schering/Warrick and Florida. The Parties further agree that all amounts payable to the Relator and its attorneys shall be paid out of the Settlement Amount.

2.     Within fifteen (15) business days from the Effective Date of this Agreement, Schering/Warrick shall pay the Settlement Amount by wire transfer into an escrow account at RBS Citizens N.A. ("Escrow Agent") in accordance with the terms of the separate Escrow Agreement. The disbursement of the Settlement Amount shall be directed by the Mediator, Eric

D. Green, Esq. The allocation of the Settlement Amount among the United States, California, and Florida, and the Relator and their counsel is a matter that shall be handled separately by and among the United States, the Relator, the Relator's attorneys, California, Florida, and the Mediator without any involvement by or input from Schering/Warrick. Each of the Parties agrees that Schering/Warrick was not consulted about the allocation, nor has Schering/Warrick had any input into the allocation. The Plaintiffs have not informed Schering/Warrick as to how they will allocate the Settlement Amount among themselves. For this reason, Schering/Warrick is not in a position to agree to the allocation and, as a part of the settlement, will not contest such allocation.

3.     The Escrow Agent shall hold the Settlement Amount and any interest earned thereon in escrow pursuant to the terms of the separate Escrow Agreement executed by an among the parties to this Settlement Agreement. The Escrow Agent shall not distribute any portion of the Settlement Amount until courts of competent jurisdiction have allowed and ordered (i) the dismissal with prejudice of the Civil Actions as contemplated by Paragraph III.7 below and (ii) the dismissal with prejudice of the actions brought by California and Florida against Schering/Warrick, and all such orders have become final and non-appealable. Then, upon receiving written notice from Schering/Warrick's attorneys demonstrating to the reasonable satisfaction of the Escrow Agent that each of these four cases has been dismissed with prejudice, and instructions as to the allocation from the Mediator, Eric D. Green, Esq. within three business days, the Escrow Agent shall distribute the Settlement Amount and any interest earned thereon, pursuant to the written wire instructions concerning the allocation of the Settlement Amount and any interest earned thereon received from Eric Green.

4.      In consideration of the obligations of Schering/Warrick in this Settlement Agreement, and conditioned on Schering/Warrick's payment in full of the Settlement Amount in accordance with Paragraphs III.1, III.2, and III.3 above, the Relator on behalf of itself and its predecessors, successors, subsidiaries, parents, assigns, and affiliates and any current or former shareholders, directors, officers, agents, employees, servants, and attorneys, fully and finally release, acquit, and forever discharge Schering/Warrick, their present and former parents, affiliates, divisions, and subsidiaries, their predecessors and successors, their current and former officers, directors, employees, agents, servants, and attorneys from any claim, action, suit, or proceeding, whether sealed or unsealed, whether civil or administrative (including for expenses, attorney fees, costs, penalties, punitive damages, liabilities, obligations, and expenses of every kind and however denominated) that the Relator has asserted or could have asserted on behalf of the United States or on its own behalf arising out of or related to the Covered Conduct or the price reporting for reimbursement purposes the Covered Drugs during the Relevant Period, including but not limited to the federal-share of any claim brought by a state arising out of or related to the Covered Conduct or the price reporting for reimbursement purposes for Covered Drugs. This release further discharges Schering/Warrick from, among other things, any such civil obligation to the Relator or its attorneys, including any Relator's Share, expenses, attorneys' fees, and costs associated with the Civil Actions to which Relator or its attorneys may be entitled, except as provided for in this Settlement Agreement.

5.      In consideration of the obligations of the Relator set forth in this Settlement Agreement, Schering/Warrick, on behalf of themselves and their predecessors, successors, subsidiaries, parents, assigns, and affiliates and any current or former shareholders, directors, officers, agents, employees, servants, and attorneys fully and finally release the Relator, its

present and former parents, affiliates, divisions, and subsidiaries, their predecessors and

successors, its current and former officers, directors, employees, agents, servants, and attorneys

from any claims relating to the Covered Conduct, or the investigation or litigation of claims

relating to the Covered Conduct for the Relevant Period which Schering/Warrick have or could

have asserted.

     6.     Notwithstanding any other term of this Settlement Agreement, including the

release provisions in Paragraphs III.4 and III.5 above, specifically reserved and excluded from

the scope and terms of this Settlement Agreement, and from the scope and terms of the releases,

as to any entity or person (including the Parties), are any and all of the following:

     (a)     Any claims based upon such obligations as are created by this Settlement Agreement;

     (b)     The subrogation rights to claims for personal injury or injury to real or personal property arising from usage by a participant in the Medicaid Program of any of the Subject Drugs covered there under;

     (c)     Any claims based on a failure to deliver products or services due;

     (d)     Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

     (e)     Any criminal liability not specifically released by this Settlement Agreement; and

     (f)     Any express or implied warranty claims or other claims for defective or deficient products and services provided by Defendants.

     7.     Within three (3) business days of the Effective Date of this Settlement Agreement

and Release, the Relator and Schering/Warrick will file with the Court the Joint Stipulation of

Dismissal with Prejudice attached hereto as Exhibit B, which Joint Stipulation of Dismissal with

Prejudice shall have attached to it the proposed form of Order of Dismissal with Prejudice

(attached hereto as Exhibit C). Within three (3) business days of the later of (i) the Court's entry

of an Order of Dismissal with Prejudice in the form attached hereto as Exhibit C and that Order

having become final and non-appealable and (ii) the dismissal with prejudice of the actions

brought by California and Florida against Schering/Warrick and such orders have become final

and non-appealable, Schering/Warrick shall direct the Escrow Agent to disburse the Settlement

Amount in accordance with III.2 above.

8.     The Parties each represent that this Settlement Agreement is freely and

voluntarily entered into without any degree of duress whatsoever.

9.     Except as expressly provided to the contrary in this Settlement Agreement, each

Party shall bear its own legal and other costs incurred in connection with this matter, including

the preparation and performance of this Settlement Agreement.

10.     This Settlement Agreement shall be governed by the laws of the United States.

The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and

among the Parties under this Agreement shall be the United States District Court for the District

of Massachusetts and that the United States District Court for the District of Massachusetts shall

retain continuing jurisdiction over the enforcement of this Settlement Agreement and all releases

provided for herein, including for purposes of issuing an injunction in protection of the Court's

jurisdiction to enforce the terms, conditions, and releases provided for in this Settlement

Agreement.

11.     This Settlement Agreement, together with the separate settlement agreements

entered into between Schering/Warrick and California and Schering/Warrick and Florida and the

Escrow Agreement, shall constitute the complete agreement between the Parties with regard to

the Covered Conduct.  This Settlement Agreement may not be amended except by written

consent of all of the Parties.

12.     The individuals signing this Agreement on behalf of Schering/Warrick represent and warrant that they are authorized by Schering-Plough, Schering, and Warrick to execute this Settlement Agreement.  The individuals signing on behalf of the Relators and their attorneys represent and warrant that they are authorized by that Relator to execute this Settlement Agreement.  The California and Florida signatories represent that they are signing this Settlement Agreement in their official capacities and that they are authorized to execute this Settlement Agreement.

13.     This Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

14.     This Settlement Agreement is binding on Schering, Schering-Plough, and Warrick's successors, transferees, heirs, and assigns.

15.     This Settlement Agreement is binding on Relator's successors, transferees, heirs, and assigns.

16.     This Settlement Agreement has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Settlement Agreement.  In addition, this Settlement Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties.  Accordingly, none of the Parties shall be entitled to have any provisions of the Settlement Agreement construed against any of the other Parties in accordance with any rule of law, legal decision, or doctrine regarding the construction of ambiguous language in a contract.  The provisions of this Settlement Agreement shall be interpreted in a reasonable manner to effect the purposes of the Parties and this Settlement Agreement.

17.     If any provision of this Settlement Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Settlement Agreement, and application of such provision to other circumstances, shall remain in effect and be interpreted so as best reasonably to effect the intent of the Parties.  Notwithstanding the foregoing, if either the payment or any of the release provisions hereof are found to be unenforceable or invalid by a court of competent jurisdiction, then such invalidity or unenforceability shall be cause for voiding the entire Settlement Agreement at the election of the Party the interests of which are injured by the finding of invalidity or unenforceability.

18.     This Settlement Agreement is effective on the date of signature of the last signatory to this Settlement Agreement ("Effective Date").  Facsimiles or .pdfs of signatures shall constitute acceptable binding signatures for purposes of this Agreement.

[Remainder of this page is intentionally left blank]

## SCHERING-PLOUGH, SCHERING, AND WARRICK

**Defendant Warrick Pharmaceuticals Corporation**

BY

_____ Date: 12/4/09

Bruce N. Kuhlik
Executive Vice President and General Counsel

**Defendant Schering Corporation**

BY

_____ Date: 12/4/09

Bruce N. Kuhlik
Executive Vice President and General Counsel

**Defendant Merck & Co., Inc. (formerly known as Schering Plough Corporation)**

BY

_____ Date: 12/4/09

Bruce N. Kuhlik
Executive Vice President and General Counsel

RELATOR AND IT's ATTORNEY

By: _____   Dated: 11/05/09

    James J. Breen
    The Breen law Firm, P.A.
    Suite 260
    ~~P.O. Box 297470~~ *5755 North Point Parkway*
    ~~Pembroke Pines, FL 33029~~ *Alpharetta, GA 30022*
    Counsel to Ven-A-Care of the Florida Keys, Inc.

By: _____   Dated:

    T. Mark Jones, President
    Ven-A-Care of the Florida Keys, Inc.

## CALIFORNIA

**State of California**
**Office of the Attorney General**

By: _____

Date: _____11/17/05_____

Nicholas Paul
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud & Elder Abuse
Office of the Attorney General
1455 Frazee Road, Suite 315
San Diego, CA 92108

## FLORIDA

**State of Florida**
**Office of the Attorney General**

By: _____

Date: _____

## RELATOR AND IT's ATTORNEY

By: _____          Dated:

James J. Breen
The Breen law Firm, P.A.
Suite 260
P.O. Box 297470
Pembroke Pines, FL  33029
Counsel to Ven-A-Care of the Florida Keys, Inc.

By: _____          Dated: 12/12/05

T. Mark Jones, President
Ven-A-Care of the Florida Keys, Inc.

### CALIFORNIA

**State of California**
**Office of the Attorney General**

By: _____
Date: _____   11/17/05

Nicholas Paul
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud & Elder Abuse
Office of the Attorney General
1455 Frazee Road, Suite 315
San Diego, CA 92108

### FLORIDA

**State of Florida**
**Office of the Attorney General**

By: _____
Date: _____

12331987_2.DOC                       - 15 -

12/02/2009 09:17 FAX    RECEIVED  12/02/2009 11:24   8504100179          FL AG MFCU CCEB TLH
                                                                              ☒005/005

12/02/2009  08:39    8504100179              FL AG MFCU CCEB TLH                 PAGE  33/33

### RELATOR AND IT's ATTORNEY

By: _____     Dated:

James J. Breen
The Breen law Firm, P.A.
Suite 260
P.O. Box 297470
Pembroke Pines, FL 33029
Counsel to Ven-A-Care of the Florida Keys, Inc.

By: _____     Dated:

T. Mark Jones, President
Ven-A-Care of the Florida Keys, Inc.

### CALIFORNIA

State of California
Office of the Attorney General

By: _____

Date: _____4/12/05_____

Nicholas Paul
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud & Elder Abuse
Office of the Attorney General
1455 Frazee Road, Suite 315
San Diego, CA 92108

### FLORIDA

State of Florida
Office of the Attorney General

By: _____

Date: ___12 12 09_____

12331987_2.DOC                        - 15 -

EXHIBIT A

# ROPES & GRAY

Boston
New York
Palo Alto
San Francisco
Washington, DC

# Analysis of Schering's Brand Drugs

## February 4, 2008



# Overview of Analysis

<u>Analysis Done:</u>

- Applying Judge Saris' Criteria for Determining Liability

- On a Drug-By-Drug Basis for Each of Schering's Prescription Drugs for Years During Which They Were Actively Marketed

  – We did not perform an analysis for periods when a drug had been listed as "obsolete" (FDB) or "inactive" (Medispan), had been publicly announced as being moved to over-the-counter, had become "functionally obsolete" (*i.e.*, gross sales to the AMP classes of trade dropped to less than 10% of sales in prior quarters and AMP units were generally negative), or for which there were not at least six months of sales data for sales made to the AMP classes of trade

- Includes an Analysis of All Drugs at Issue in Any State Case in Which Schering or Schering-Plough Had Been Sued as of September 21, 2007

- Analysis Completed for Likely Statute of Limitations Period

2



# Judge Saris' Criteria
## For Determining Liability

Applying Judge Saris' criteria, there is no liability for any Schering-brand drug at issue in any of the state cases.

<u>Judge Saris' Criteria</u>

- "*First*, the most important inquiry asks: were there egregious spreads above the 30% yardstick expected in the industry? In particular, I focus on the extent and duration of the spreads to evaluate egregiousness." *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 101-02 (D. Mass. 2007).

  – An "isolated, anomalous occurrence" of a spread, even one of a "significant magnitude," does not give rise to liability in Judge Saris' view. *Id.* at 108.

3



# Judge Saris' Criteria
## For Determining Liability (cont.)

- "Also relevant to this analysis is the legitimacy of the list price from which the markup is derived: Is it a real list price at which substantial sales were made or an unfair and deceptive price used to jack up the AWP?" *Id.* at 102.

  – "I find and hold that if more than 50 percent of all sales were made at or about the list price, the list price will not be deemed fictitious." *Id.* at 105.

  – "[A]t or about the list price" is defined as "within 5% of the list price [WAC]." *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, 01-CV-12257-PBS, at *6 (D. Mass Nov. 1, 2007)

- *Third*, did the defendant engage in a proactive scheme to market the spread . . . ." 491 F. Supp. 2d 20 at 102.

4



# The Schering-Brand Drugs

- As to the particular drugs at issue in the MDL, Judge Saris concluded as follows:

  – <u>Temodar</u>: "[A]ll spreads are below 30%"; "I therefore find no liability." *Id.* at 108.

  – <u>Intron A</u>: As to the physician-administered NDCs, "the spread exceeds 30% in only 3 years, 1996, 2001 and 2002. The highest spread is 32.6% in 2001." "Given the isolated, minor spreads and little evidence of spread marketing, I find no liability for…Intron-A." *Id.*



# The Schering-Brand Drugs (cont.)

- Proventil: "Although there are spreads consistently in the 30%-60% range for 1992-1997, from 1998 until 2003 there is only a single occurrence of a spread exceeding 30%. In 2002, one of the four Proventil NDCs had a spread of 163%." *Id.* at 108. "Although the spread in 2002 is of significant magnitude, it is an isolated, anomalous occurrence on one of the four Proventil NDCs. As such, I do not find [liability]." *Id.* at 108.

- In addition, Judge Saris found "no evidence" of Schering's "marketing the spread." *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d at 108.