# Exhibit B

**Enalapril Maleate 20 mg (Eff. 8/24/03 – 11/28/08) FUL:  $0.9150 (Attachment A to Second Gaston Declaration)**

Ms. Gaston concedes that the WAC for Major Pharmaceuticals product (NDC 00904-5504-60) was valid and in effect and that, if used, it would have resulted in a lower FUL than CMS set. *See* 2nd Gaston Decl. at App. A, ¶ 7.

**Lorazepam 1 mg (Eff. 7/01/94 – 9/30/97) FUL:  $0.0207 (Attachment B to Second Gaston Declaration)**

Ms. Gaston concedes that if the Unknown, Royce, Martec, Mutual, Qualitest, and Actavis WACs "had all been found to be valid prices for widely available products, the FUL would very likely have been set based on the 'Unknown' NDC #53978500809" (a price lower than the Martec price used to set the FUL). *Id.* at App. B, ¶ 6.  Earlier she acknowledges, "There is no hard-copy documentation indicating the basis for the FUL." *Id.* at ¶ 1.  Accordingly, she is left to speculate as to whether CMS called Royce because of "conflicting prices," *see id.* at ¶ 3 ("it was (and is) the CMS practice that, if the price was potentially important to a FUL determination, the manufacturer would be contacted to determine which price was valid and whether the product was widely available"), but she cannot say for sure one way or the other.  Similarly, she guesses that the Mutual and Qualitest prices "would have prompted telephone calls for clarification," *see id.* at ¶ 4, but again she cannot say in the absence of documentation.  As to the Unknown NDC in Dr. Addanki's array, Ms. Gaston identifies it as a Med-Pro product and avers that Med-Pro had an effective Rebate Agreement on file at the time the FUL was set, leading her to speculate that, "Had this price appeared in the FULs System print-out used to determine the FUL, CMS would have contacted the manufacturer." *See id.* at ¶ 5.  Of course, she cannot say what the result of that call was or even whether the call ever happened.  In short, there is no evidence in the record (only Ms. Gaston's speculation) as to why the lower Med-Pro or Martec prices were not used by CMS to set a lower FUL and plenty of evidence in the record of valid and existing lower published prices that CMS apparently chose to disregard in setting the FUL.

**Lorazepam 1 mg (Eff. 10/1/97 – 2/11/98) FUL:  $0.0203 (Attachment C to Second Gaston Declaration)**

Again, Ms. Gaston concedes, "There is no hard-copy documentation indicating the basis for this FUL." *Id.* at App. C, ¶ 1.  Nevertheless, she goes on to acknowledge that, "The Labeler Agreements file indicates [Royce] did have an effective Rebate Agreement," and "Had this [Royce] NDC" (which Dr. Addanki identifies) "appeared in the FULs System printout at the time the FUL was established, I believe it would have been used to set the FUL, not the [higher] Qualitest price" that was used to set the FUL. *Id.* at ¶ 3.  "For this reason," though, Ms. Gaston goes on to speculate:  "I suspect the FULs System logic excluded this NDC from the database for some other reason dictated by the FULs System program logic," but she does not identify any such reason.  Moreover, she speculates, "If the product was not excluded by the FULs System logic, the manufacturer may have been contacted and [the] product determined to have been unavailable or the price not valid." *Id.*  There is, however, no evidence in the record to support

Ms. Gaston's speculation, and it is more likely that CMS simply exercised its discretion to ensure access as DOJ's brief states it sometimes did.  *See* Supp. Br. at 3.

**Lorazepam 1 mg (Eff. 9/1/98 – 6/1/00) FUL:  $0.6684 (Attachment D to Second Gaston Declaration)**

As to the FUL set for Lorazepam in September 1998, Ms. Gaston concedes, "If the Mylan price (for NDC 00378045701)" (which Dr. Addanki identifies) "had been present in the FULs System printout available at the time this FUL was determined, and if it was the lowest WAC price in the printout, CMS likely would have used it to calculate" a lower FUL, "provided it was found to be a valid price and widely available and the resulting FUL was higher than at least three WACs." *Id.* at App. D, at ¶ 10.  Notably, Ms. Gaston does not say that these conditions were not satisfied.  Instead, she speculates:  "It is possible that the manufacturer was contacted and gave CMS a [different] WAC," or "It is also possible that the FULs analyst found the product to be temporarily unavailable," or "it is possible the WAC was published only by Medi-Span and for this reason not received by the FULs System" (despite the plain language of the regulation requiring the use of data from all three national pricing compendia).  *Id.*  However, again, "There is no hard-copy documentation indicating the basis for this FUL," and we will never know for sure why CMS decided to disregard this lower Mylan price or other lower prices in setting the FUL.  But, again, that is defendants' (and Dr. Addanki's) point.

**Clonazepam 1 mg (Eff. 10/1/97 – 8/31/98) FUL:  $0.8702 (Attachment F to Second Gaston Declaration)**

"If any of the lower Teva or Actavis WAC prices identified in paragraph 2 above" (and by Dr. Addanki) "appeared in the FULs system printout and was determined to be a valid price for a widely available product, and if the Roche WAC products and prices" (which Dr. Addanki also identified) "were found to be available and valid, CMS likely would not have used the Teva DIR price to calculate the FUL but instead would have uses a lower price" to set a lower FUL.  *Id.* at App. F, ¶ 4.  However, Ms. Gaston speculates, "Since it appears that CMS did use the Teva DIR price to calculate the FUL, it is likely that either the lower NDCs and prices were excluded in the FULs System printout, or, if they were included, CMS contacted one or more of the manufacturers (Roche, Teva, and/or Actavis) and found that some of the products were not available or the prices were not valid." *Id.*  But, again, we will never know why CMS chose to disregard these actual, existing lower published prices, because again "There is no hard-copy documentation indicating the basis for this FUL." *Id.* at ¶ 1.

**Clonazepam 0.5 mg (Eff. 12/7/00 – 1/2/02) FUL:  $0.2760 (Attachment G to Second Gaston Declaration)**

In Attachment G, Ms. Gaston identifies three lower Teva WACs that she does not disqualify for any identifiable or known reason.  *Id.* at App. G, ¶ 3.  Instead, she indicates that she "believes that these products may have been excluded from consideration when the manufacturer was contacted and the products were found not to be widely available or the DP/WAC prices found to be incorrect." *Id.*  However, she does not report having such a conversation and certainly these products were not excluded because they were not widely enough available.  At this time, Teva

represented, conservatively, 40% of all CMS reimbursement nationally for this drug.  *See* 6/30/09 Aff. of Dr. Sumanth Addanki, at Ex. 6 (Dkt. No. 6219).  As for the other "reasons" Ms. Gaston posits, we will never know why CMS chose to disregard these actual, existing lower published prices when setting this FUL because, as with many of the other FULs Ms. Gaston analyzes, "There is no hard-copy documentation indicating the basis for this FUL."  *Id.* at ¶ 1.