UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                              X
                                              :
IN RE PHARMACEUTICAL INDUSTRY AVERAGE         :    01-CV-12257- PBS
WHOLESALE PRICE LITIGATION                    :    MDL No. 1456
                                              X
```

**OBJECTING CLASS MEMBER JAMES W. WILSON'S AMENDED OBJECTION
TO THE COURT'S APPROVAL OF ATTORNEYS' FEES IN EXCESS OF $10 MILLION**

James King, on behalf of James W. Wilson, respectfully submits this Amended Objection in support of the opposition to this Honorable Court's approval of attorneys' fees in excess of $10 million. This initial objection filed by James W. Wilson was docketed with the Court on November 28, 2008, Docket No. 5738.

Counsel for Objector Wilson was present at the second Fairness Hearing in April of 2009.

**I.    AVERAGE WHOLESALE PRICE SETTLEMENT**

This case involves the defendants reporting false and inflated Average Wholesale Price for all of the drugs covered in the Settlement.

In the Settlement Agreement, it states that plaintiffs' counsel will apply to the Court for an award from the Settlement Fund for attorneys' fees up to 33 1/3% of the settlement fund, plus interest and litigation expenses. In fact, class counsel did request a fee of thirty percent (30%) of the $125 million settlement fund. Objector Wilson argues that the fee in this matter should be limited to $10 million and any amount greater than that is not reasonable and should be reduced in accord with applicable law of this District Court and the First Circuit. Objector Wilson sets forth the basis of his objection at length herein. Moreover, the lawyers were awarded approximately $70 million from the McKesson and $23 million from the GSK settlement based on the same lodestar included herein.

1

## II. ARGUMENT

### A. THE COURT MUST LIMIT COUNSELS' LEGAL FEE TO $10 MILLION

The Supreme Court has repeatedly held in cases involving the computation of common fund fee award that it is appropriate for the fee to be determined as a percentage-of-the-fund. See *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the common fund doctrine, ... a reasonable fee is based on a percentage of the fund bestowed on the class"); see also *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 165-66 (1939); *Cent. R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 124-25 (1885); *Trustees v. Greenough,* 105 U.S. 527, 532 (1881). In a percentage fee award, the fee is measured by the benefit conferred upon the class.

Although the First Circuit has left it to the trial court's discretion as to whether to apply the lodestar or percentage-of-the-fund ("POF") method to award attorneys' fees, it has also recognized that the POF method is the prevailing approach used in common fund cases and that there are distinct advantages for using it in such cases, such as the fact that it is less burdensome to administer, that it lessens the possibility of collateral disputes, that it enhances efficiency throughout litigation, and that it better approximates the workings of the marketplace. See *In re: Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295 at 307-08 (1st Cir. 1995); *see also In re Fidelity/Micron,* 167 F.3d 735 at 737 (1st Cir. 1999). Furthermore, district courts within the First Circuit have indicated their preference for the percentage-of-the-fund method over the lodestar method. See e.g., *In re Fidelity/Micron*, 167 F.3d 735; *Branch v. FDIC,* 1998 WL 151249 at *2-4 (D. Mass. 1998); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 215 (D. Me. 2003) (describing the method as determining whether the "total fee [is] reasonable when examined as a percentage of recovery"); *Duhaime,* 989 F.Supp. 375, 377 (D. Mass 1997); *Conley v. Sears, Roebuck & Co.,* 222 B.R. 181, 187 (D. Mass 1998).

This Honorable Court has already awarded a 33 1/3% attorney fee in the GSK settlement of $70 million which amounted to a $23 million fee along with the attorneys' fees awarded in the McKesson Settlement which was $70 million from the $350 million settlement.

The Notice of Settlement states that Co-Lead counsel will apply for a legal fee of up to thirty three and one third percent (33 1/3%) of the Settlement Fund of $125,000,000 plus expenses. Here, co-lead counsel did apply for a fee of 30% of the Settlement Fund or $37.5 million. Objector Wilson maintains that a 30% fee is a high percentage for a large settlement fund. Due to the previous fee awarded in the GSK Settlement along with the McKesson fee awarded, Objector Wilson argues that the legal fee should be limited to $10 Million of the Settlement Fund. Based on the settlement that was proffered by the Co-Lead Counsel on other fees awarded, a fee of $10,000,000.00 would be fair, adequate and reasonable in conjunction with the other fee awards. See *Conley v. Sears & Roebuck Co.*, 222 B.R. 181, 187 (D.Mass 1998).

### 1.   A Review of the Lodestar of Class Counsel Should Serve to Limit the Fee

The First Circuit does not require a court to cross check the percentage of the settlement fund against the lodestar in its determination of the reasonableness of the requested fee. *In re Thirteen Appeals*, 56 F.3d at 307. However, although the primary basis of the fee award remains the percentage method, the lodestar may provide useful perspective on the reasonableness of a given percentage award. *Manual for Complex Litigation Section 14.122*. This Honorable Court should scrutinize the lodestar of class counsel as a basis to award the legal fee.

On November 14, 2008, Marc H. Edelson, Esquire filed a Declaration which set forth counsels' time in litigating this matter in the different lawsuits. (Docket No. 5688). In the Declaration, Edelson claims that the lodestar for Tier I through July 2008 is $79,208,132 which is 68.1% of the total lodestar in the case. Further, the lodestar for Tier II is $10,271,190 which represents 14.2% of the total lodestar in the case. The lodestar for Tier III is $12,773,881 which

represents 17.68% of the total lodestar. Objector Wilson maintains that the lodestar of class counsel is completely inflated. Counsel should be forced to specify the tasks which were done in this matter so that the Court can determine if the work was necessary and not duplicative in nature. Moreover, class counsel must be forced to segregate their lodestar so the Court can know how much time was spent on this settlement.

In addition to that argument, Objector Wilson maintains that there is no possible way in which these lawyers spent almost $80 million worth of time in this matter. The alleged lodestar is completely inflated. Moreover, there are a total of 26 firms involved with this litigation. The many hours involved by the law firms most certainly involved duplicative work. The Court must inquire as to the basis of the firms' activities and the time spent in this matter. See *Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992).

### 2. The Fee Should Be Limited Due To The Mistakes of Class Counsel

As the Court is aware, this matter has came before the Court on three (3) separate occasions to seek approval. The case had to be continued as a result of problems with the proposed settlement. These problems are directly attributable to mistakes by class counsel. Objector Wilson argues that the attorneys' fees should be limited as a result of the mistakes.

### 3. Counsel Did Not Perform Difficult Tasks In This Litigation Which Should Serve To Limit The Fee

Class counsel will claim that the litigation here was hard fought, but in reality that is far from being true. During the second Final Fairness Hearing, the Court did express some concern that this Settlement was relatively easy for class counsel. The settlement was straight forward and simple. Careful review of the dockets reflect that class counsel had not really begun to prepare for trial. Additionally, there were no ground breaking legal issues which loomed significant in this litigation. In applying the principles of moderation and fairness, Objector Wilson respectfully

4

requests that the award of attorneys' fee be reduced to a reasonable award.

### 4. Marc Edelson Completely Inflated His Firm's Lodestar

Marc Edelson in his Declaration filed with the Court on November 14, 2008, states in No. 1 the following:

"I am a partner of the law firm Hoffman & Edelson, LLC."

See Edelson Declaration at 1 (Docket No. 5688).

All of the documents in this case refer to Edelson as being counsel at a firm called Edelson & Associates. Even the Notice of Settlement lists Marc Edelson as being a partner in Edelson & Associates. Objector Wilson maintains that Edelson did this on purpose to attempt to make his firm look more impressive. Edelson was the founding partner of a firm known as Hoffman & Edelson, LLC that was comprised of five (5) lawyers. The firm ceased to exist in 2005. At best Edelson & Associates is comprised of two (2) lawyers, Edelson and Adam Araten, Esquire.

It is offensive that Edelson is claiming that his firm has a lodestar of almost $10 million in this case. Perhaps, the only explanation is that Edelson is attempting to charge an hourly rate of $10,000 per hour which would explain a $10 million lodestar. This Honorable Court must scrutinize Marc Edelson's time and expenses as well as the other attorneys' time in this case. Objector Wilson demands that class counsel submit detailed time records in this matter.

### B. CO-LEAD COUNSEL HERE HAS OBJECTED IN CASES

Class counsel argued that an objectors' counsel, John Pentz, is a serial objector in class action cases. However, Marc Edelson, who is one of the lead attorneys in this matter, did file an objection to a class action settlement in *Checkmate Strategic Group, Inc. v. Yahoo! Inc.*, USDC Central District CA, Case No. 05-CV04588. People in glass houses should not throw stones.

### III. ADDITIONAL OBJECTIONS

Objector WIlson adopts all bona fide objections filed by other objectors in this case and

reserves the right to respond to class counsel's filings.

## IV. CONCLUSION

Wherefore, Objector Wilson requests appropriate general relief:

1. That the Court withdraw its conditional approval of the Proposed Settlement and enter Orders withdrawing its conditional proceedings so as to effect substantial justice in the cause between the parties and absent class members.

2. That the Court deny the request of plaintiffs' counsel for an amount greater that $10 million in attorneys' fees.

3. Objector, James Wilson reserves the right to amend and refine his objection as may be necessary as information is made available.

Respectfully submitted,

Dated: December 9, 2009

JAMES P. DUGGAN, Esquire
50 Congress Street
Suite 525
Boston, MA 02109
Ph.: 617-523-7222

*- and -*

JAMES W. KING, Esquire
Offerman & King, LLP
6420 Wellington Place
Beaumont, Texas 77706
(409) 860-9000
*Attorneys for Objector James W. Wilson*