# EXHIBIT J

346

1                 UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF MASSACHUSETTS

3       - - - - - - - - - - - - - -

4       IN RE:  PHARMACEUTICAL        ) MDL NO. 1456

5       INDUSTRY AVERAGE WHOLESALE    ) CIVIL ACTION

6       PRICE LITIGATION              ) 01-CV-12257-PBS

7       THIS DOCUMENT RELATES TO      )

8       U.S. ex rel. Ven-A-Care of    ) Judge Patti B. Saris

9       the Florida Keys, Inc.,       )

10      vs.                           ) Chief Magistrate

11      Abbott Laboratories, Inc.,    ) Judge Marianne B.

12      No. 06-CV-11337-PBS           ) Bowler

13      - - - - - - - - - - - - - -

14          (Captions continued on following pages)

15       VOLUME II - CONTAINS HIGHLY CONFIDENTIAL PORTIONS

16          DEPOSITION OF VEN-A-CARE (T. MARK JONES)

17         Videotaped deposition of Ven-A-Care (T. Mark

18      Jones), held at the Law Offices of Hunton & Williams,

19      LLP, 1111 Brickell Avenue, Suite 2500, Miami, Florida,

20      33131, on Wednesday, March 19, 2008, commencing at

21      8:59 a.m., before Donald W. McKay, RMR, CRR, a Notary

22      Public for the State of Florida.

401

1              MR. BREEN:  Objection to form.

2              THE WITNESS:  No.

3     BY MR. COOK:

4         Q.   You would contend to me that as of

5     March 28, 1997, Ven-a-Care had evidence to

6     suggest that Abbott was actively promoting the

7     difference between its AWP's and the purchase

8     price for its drugs?

9         A.   Yes.

10        Q.   Could you briefly describe for me the

11    nature of the evidence that Ven-a-Care had, as of

12    March 28, 1997, of such active promotion of

13    spreads.

14        A.   It had its GPO prices, its price list.

15    It had prices in the catalogs that we were

16    ordering from.  We knew the difference between

17    Abbott's price and Red Book price, Blue Book

18    price.  The spreads were obvious.

19        Q.   But you would agree with me that as of

20    March 28, 1997, Ven-a-Care certainly had no

21    evidence that Abbott was running advertisements

22    that promoted the difference between its AWP's

402

1    and its -- and its negotiated contract prices.

2    Right?

3        A.    I'm sorry.  What date were we talking

4    about?

5        Q.    March 28th of 1997.

6            MR. BREEN:  At this point, could you

7    read the question back.

8                (The question referred to was

9    thereupon read by the reporter as above

10   recorded.)

11           THE WITNESS:  I don't recall.

12   BY MR. COOK:

13       Q.    As of March 28, 1997, you will agree

14   with me that no sales rep or representative of

15   Abbott had expressly encouraged Ven-a-Care to

16   purchase Abbott's products because there was a

17   difference between Abbott's AWP and the price at

18   which Ven-a-Care could purchase Abbott's

19   products.  Correct?

20       A.    Our interaction with sales reps were to

21   meet with them.  They bring catalogs -- you know,

22   the price catalogs and their contracts.

403

1      Q.   But no Abbott sales rep told you, buy

2   Abbott's product because we have a high AWP and

3   you can make a big spread between the contract

4   price and the AWP.  Isn't that true?

5      A.   Dennis Walker.

6      Q.   That occurred after March 28, 1997.

7   Correct?

8      A.   I believe so.

9      Q.   And that communication was as a result

10  of Mr. Bentley calling Abbott to request Abbott's

11  AWP's for Acyclovir.  Correct?

12     A.   I don't know that he called to request

13  them.  I think he called to talk to him.  And as

14  a part of that conversation, he was able to get

15  that information, yes.

16     Q.   And, in fact, the facsimile that was

17  sent back indicates that the prices were being

18  provided to Mr. Bentley as Mr. Bentley requested.

19  Right?

20     A.   Do you have the facsimile that I could

21  see it?  I mean, I know what you're saying and I

22  may agree --

404

1      Q.    It says what it says.

2      A.    Yeah.   I just don't know that it said

3    that this is what you requested.

4      Q.    By the way, this interchange between

5    Mr. Bentley and Mr. Walker occurred between this

6    March 28, 1997 dismissal of Abbott and the August

7    filing of Ven-a-Care's Amended Complaint in which

8    it added Abbott in as a defendant.   Correct?

9      A.    If that's the dates, you know --

10      Q.    So, as of March 28, 1997, Ven-a-Care

11    had no communications with any representative of

12    Abbott in which Abbott undertook any actions to

13    actively market the spread for its products?

14      A.    Not that I can remember.

15      Q.    Other than that one interchange with

16    Mr. Bentley and Mr. Walker relating to Acyclovir,

17    there are no other instances to which Ven-a-Care

18    complained of Abbott actively marketing the

19    spread for its products.   Correct?

20          MR. BREEN:   Objection, form.

21          THE WITNESS:   What is the time frame

22    you're talking about?

T. Mark Jones - Vol. II 3-19-2008

405

1   BY MR. COOK:

2       Q.   At any time.

3       A.   Well, I've done a lot of document

4   reviews now.  I've seen a lot of Abbott's

5   documents and how they market the spread.  So, I

6   mean --

7       Q.   That would be document reviews that

8   you've conducted in connection with this case.

9   Right?

10      A.   Yes.

11      Q.   That wouldn't be something that Ven-a-

12  Care observed as an infusion pharmacy in the

13  marketplace.  Right?

14          MR. BREEN:  Objection to form.

15          THE WITNESS:  Not in the levels of the

16  documents that we've seen.

17  BY MR. COOK:

18      Q.   And if we were to distinguish between

19  facts that you, Mr. Jones, have learned through

20  discovery in this case and facts that Ven-a-Care

21  learned as a participant in the marketplace, what

22  you're referring to was learned through the

406

1    discovery process.  Correct?

2        A.   The documents that I'm talking about

3    now would be through the discovery process.

4        Q.   And limiting ourselves to what Ven-a-

5    Care saw as an infusion pharmacy operating in the

6    marketplace, the only instance of Abbott taking

7    any action to actively market the spread for its

8    products to which you can point is this

9    communication in August of 1997 between Mr.

10   Walker and Mr. Bentley.  Correct?

11            MR. BREEN:  Objection to form.

12            THE WITNESS:  I guess if your

13   definition is active and if active means

14   marketing the spread to you -- there is passive

15   marketing the spread, and it's just marketing the

16   spread.

17   BY MR. COOK:

18       Q.   So your answer would be yes?

19       A.   That Abbott passively marketed the

20   spread to all of its customers by sending their

21   contracts and their price lists.  And there is a

22   huge difference between what the contract price

407

1    is, what their list price is, what their AWP's

2    are.

3         Q.    And Ven-a-Care saw that, because Ven-a-

4    Care received catalogues and was able to look at

5    price lists that were available to the public.

6    Right?

7              MR. BREEN:  Objection, form.

8              THE WITNESS:  I don't know that the

9    price lists were available to the public.

10   BY MR. COOK:

11        Q.    Compendia available to the public.

12        A.    I'm talking about Abbott's published

13   price list, and the compendia as well.

14        Q.    But in terms of actively marketing the

15   spread, as opposed to, as you describe it,

16   passively marketing the spread, the only instance

17   of Abbott actively marketing the spread that Ven-

18   a-Care witnessed, as you describe it, would be

19   this interchange between Mr. Walker and Mr.

20   Bentley.  Correct?

21             MR. BREEN:  Objection, form.  And

22   again, you're only talking about -- you're not