# Exhibit 18

*State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Laboratories, Inc., et al.*

Exhibit to the Declaration of Rita Hanscom in Support of
Plaintiffs' Opposition to Dey, Inc. and Dey, L.P.'s Motion for Partial Summary Judgment

Sacramento, CA

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

-------------------------------X

IN RE PHARMACEUTICAL INDUSTRY     )

AVERAGE WHOLESALE PRICE           )   MDL No. 1456

LITIGATION                        )

-------------------------------X

THIS DOCUMENT RELATES TO          )   Civil Action:

State of California, ex rel.      )   01-12258-PBS

Ven-A-Care v. Abbott              )

Laboratories, Inc., et al.        )

-------------------------------X

--oOo--

WEDNESDAY, DECEMBER 3, 2008

--oOo--

VIDEOTAPED DEPOSITION OF

THE CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES

by J. KEVIN GOROSPE, Pharm.D.

--oOo--


Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

Registered Merit Reporter

CA Dept of Health Care Services (Gorospe, PharmD, J. Kevin)                December 3, 2008
Sacramento, CA

Page 237

1    sorts of discrepancies?
2              MR. BUEKER:  Objection to form.
3              MR. COLE:  Objection to form.
4              MS. DANNA:  Objection to form.
5              THE WITNESS:  No.
6    BY MR. HENDERSON:
7         Q.   Do you recall the Department making any
8    statement approving of drug manufacturers
9    reporting false pricing information about their
10   drugs to price reporting publishers?
11             MR. COLE:  Object to form.
12             MS. DANNA:  Objection the form.
13             MR. BUEKER:  We do have the
14   stipulation; right?
15             MR. HENDERSON:  Yes, one -- an
16   objection by one defense counsel is an objection
17   by all.
18             THE WITNESS:  The answer to your
19   question is no.
20   BY MR. HENDERSON:
21        Q.   Okay.  In 1999 did the California
22   Legislature instruct the Department to prepare a

CA Dept of Health Care Services (Gorospe, PharmD, J. Kevin)                December 3, 2008
Sacramento, CA

Page 238

1    study on the -- the adequacy of reimbursements to
2    pharmacies?
3              MR. BUEKER:  Objection as to form.
4              THE WITNESS:  Pursuant to Senate Bill
5    393 the Legislature directed the Department to do
6    a study.
7    BY MR. HENDERSON:
8         Q.   Okay.  And was that in 1999?
9         A.   That was in 1999.
10        Q.   Okay.  Did -- did the Department take
11   any action within the next year on that?
12        A.   No.
13        Q.   Did the Legislature subsequently
14   establish a deadline for a study -- such a study
15   -- if you recall?
16        A.   Not that I can recall --
17        Q.   Okay.
18        A.   -- specifically.
19        Q.   In any event, did the Department then
20   take some action to have such a study prepared?
21        A.   Yes.
22             In 2001 the Department issued an RFP,

Page 239

1  Request for Proposal, to find a -- company to do
2  such a study.
3       Q.   All right.  And that -- that request
4  for proposal ultimately resulted in an
5  arrangement with Myers and Stauffer, and they
6  produced two reports that have been discussed in
7  your testimony previously; is that right?
8       A.   That's correct.
9            They -- they produced essentially two
10 reports.  They were -- one on dispensing costs
11 and one on acquisition costs.
12      Q.   So about how long did it take between
13 when the Department first started the process of
14 preparing a request for proposal and when the
15 Myers and Stauffer studies were actually issued?
16      A.   Roughly 18 months.
17      Q.   Do you recall approximately how much it
18 cost to have those studies done?
19      A.   Approximately $250,000.
20      Q.   The Myers and Stauffer study that was
21 done --
22           MR. HENDERSON:  Let's have this next

CA Dept of Health Care Services (Gorospe, PharmD, J. Kevin)                December 3, 2008
Sacramento, CA

Page 246

1            MR. BUEKER:  Objection as to form.
2            THE WITNESS:  Not to my knowledge.
3    BY MR. HENDERSON:
4        Q.   Well, let me ask you this.
5             If -- well, let me --
6             Let me withdraw that question and move
7    on.
8             After this report was -- was issued by
9    Myers and Stauffer did the California Legislature
10   enact changes to the reimbursement methodologies
11   by California?
12       A.   There were changes in the methodology
13   in 2002, but the report -- this report was issued
14   too late in the budget cycle process for it to be
15   used in those decisions by the Legislature.  They
16   had already moved forward a proposal.
17       Q.   I see.
18            So the -- the proposal was in the works
19   already by the time the Myers and Stauffer report
20   was issued?
21       A.   That is correct.
22            This report was -- was used to some

Page 247

1    extent by the Legislature in 2004.

2             MR. HENDERSON:  I see.  Okay.

3             I'd like this next document marked as

4    Exhibit 22.

5             (Exhibit CA-Gorospe 022 was marked

6    for Identification.)

7             MR. HENDERSON:  And I'm sorry.  There's

8    no Bates number on this -- this document.

9             This is a copy of the first page of

10   Assembly Bill Number 442 followed by selected

11   pages from what was a lengthy bill.

12            This states, indicates, on the first

13   page that it was approved by the Governor and

14   filed with the Secretary of State on September

15   30, 2002.

16            The -- do you recall that changes were

17   made in the reimbursement methodology that became

18   effective on approximately September 30, 2002?

19       A.   Yes, changes to the reimbursement

20   pursuant to this would be the health budget

21   trailer bill of 2002, were made effective

22   December 1st of that year.

CA Dept of Health Care Services (Gorospe, PharmD, J. Kevin)                    December 3, 2008
Sacramento, CA

Page 296

```
 1         A.    Potentially.
 2         Q.    To your knowledge has --
 3               Let me withdraw that and ask a
 4   different question.
 5               If Abbott Laboratories reported grossly
 6   inflated Average Wholesale Prices to First
 7   DataBank knowing and intending that those prices
 8   would be used by state Medicaid agencies,
 9   including Medi-Cal, to pay inflated
10   reimbursements to customers, people who bought
11   Abbott drugs, would you consider that to be
12   deceptive?
13               MR. COLE:  Objection.  Form.
14               THE WITNESS:  Yes.
15   BY MR. HENDERSON:
16         Q.    Did Dey ever to your knowledge come to
17   the California Department of Health Care Services
18   and tell the Department that it was reporting
19   grossly inflated Average Wholesale Prices on its
20   drugs?
21               MR. ROBBEN:  Objection as to form.
22               THE WITNESS:  No.
```