# Exhibit 19

*State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Laboratories, Inc., et al.*

Exhibit to the Declaration of Rita Hanscom in Support of
Plaintiffs' Opposition to Dey, Inc. and Dey, L.P.'s Motion for Partial Summary Judgment

Page 1

CAUSE NO. GV002327

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT |
| ex rel. | ) | |
|    VEN-A-CARE OF THE | ) | |
|    FLORIDA KEYS, INC. | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| VS. | ) | TRAVIS COUNTY, TEXAS |
| | ) | |
| DEY, INC.; ROXANE | ) | |
| LABORATORIES, INC. and | ) | |
| WARRICK PHARMACEUTICALS | ) | |
| CORPORATION, | ) | |
| | ) | |
|      Defendants. | ) | 53rd JUDICIAL DISTRICT |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ORAL AND VIDEOTAPED DEPOSITION OF
CHARLES A. RICE
October 30, 2001
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

     ORAL DEPOSITION OF CHARLES A. RICE, produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on the 30th day of October 2001, from 9:06 a.m. to 5:02 p.m., before Randall N. Finch, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Coudert Brothers, 600 Beach Street, Third Floor, San Francisco, California 94109, pursuant to Notice, the Texas Rules of Civil Procedure and the provisions as previously set forth.

Page 113

1  correct?
2      A.  I believe it is, yes.
3      Q.  Okay.  As chief executive officer of Dey
4  Laboratories, is there any area of the company that you
5  are not ultimately responsible for?
6      A.  Technically, no.
7      Q.  Now, you're aware that this case involves
8  price representations to Medicaid authorities, correct?
9      A.  I'm aware of that, yes, sir.
10     Q.  If those price representations were wrong, is
11 it Mr. Johnson's responsibility to make sure they were
12 correct?
13     A.  In my view, no.
14     Q.  Is it your responsibility?
15     A.  Inevitably my responsibility is to the entire
16 company, so in part, yes.  But there are other people
17 also responsible.
18     Q.  Now, you've been aware for more than two years
19 now that an issue exists regarding Dey Laboratories'
20 reports of prices to government authorities, haven't
21 you?
22     A.  I have been aware that there have been some
23 issues, yes.
24     Q.  How long have you been aware of that?
25     A.  Probably since about 1997.

```
 1        Q.   '97.
 2        A.   Mm-hmm.
 3        Q.   And how did you become aware of that?
 4        A.   There were communications between our
 5   attorney, ourselves and the Department of Justice
 6   regarding a potential action, which we're still waiting
 7   to hear about.
 8        Q.   Since 1997 and becoming aware that there was
 9   an issue regarding the reports of Dey Laboratories'
10   prices to government reimbursement authorities, have
11   you taken any direct responsibility for that -- the
12   performance of that function on your -- by your
13   company?
14        A.   I have not taken any direct responsibilities,
15   no.
16        Q.   Have you taken any --
17        A.   Well, clarification:  that did not already
18   exist.
19        Q.   That did not already exist?
20        A.   Yes.
21        Q.   Have you increased your scrutiny of that area
22   as the chief executive officer?
23        A.   I have not increased my scrutiny of that area,
24   no.
25        Q.   Have you done anything whatsoever to make sure
```

(timestamp 1:28P at line 14)

     1    that Dey Laboratories reports accurate prices to

     2    government reimbursement authorities since becoming

     3    aware of the investigation?

     4             MR. HUDSPETH:  Objection; form.

     5             THE WITNESS:  Yes, I have.

     6    Q.  (By Mr. Breen)  What?

     7    A.  I'm afraid that would be subject to privilege

     8    with counsel.

     9             MR. BREEN:   I would respectfully

    10    submit, Mr. Hudspeth, that if -- if this witness did

    11    anything since becoming aware of these investigations

    12    that bears upon his performance of chief executive

    13    officer duties to ensure that his company is reporting

    14    truthful prices, I don't see how that's privileged and

    15    I would ask that the question be responded to.

    16             MR. HUDSPETH:  Well, I think he better

    17    tell me what he has in mind.  Maybe we ought to talk

    18    about that separately.  Why don't we take a break --

    19             MR. BREEN:  Let's take a break.

    20             MR. HUDSPETH:  -- and hear what the

    21    answer is.

1:29P    22             MR. BREEN:  That's a good idea.

    23             VIDEOGRAPHER:  We're off the record at

    24    1:28 p.m.

1:30P    25             (Discussion off the record)

1                    VIDEOGRAPHER:  We're back on the record

2         at 1:35 p.m.

3                    MR. HUDSPETH:  Mr. Rice will testify

4         about those matters that did not involve

5         attorney/client communications.

6         Q.   (By Mr. Breen)  What, if anything, did you do

7         as CEO of Dey Pharmaceutical -- or Dey Laboratories --

8         or Dey, Inc. I think we are referring to the company in

9         this deposition -- since becoming aware of the

10        government investigations to make sure that Dey

11        reported proper prices to government reimbursement

12        authorities?

1:36P    13        A.   On a number of different fronts I took action,

14        which includes speaking to various members of my direct

15        staff, including Mr. Marrs -- Ms. Marrs and Mr. Mozak,

16        providing them with information regarding the

17        government's -- in this case Department of Justice

18        assertions, making sure that they understood the

19        gravity of the situation, the importance of making sure

20        that the prices we were reporting were, in fact, the

21        prices that we have on our records.

22                    We volunteered to speak to anyone and

23        everyone who would listen to us on the legislative

24        front.  I made several personal visits to Capitol Hill

25        and spoke with numerous legislators, congressmen,

1  congresspersons, as well as senators and their aides
2  and their staff.
3          We've talked with a number of
4  professional organizations regarding the subject as
5  well. We've done a number of different things as a
6  result of this -- the initial request for information
7  under subpoena we received in 1997.

1:37P  8    Q.   (By Mr. Breen) So other than speaking to your
9  staff and speaking to Congress and their aides and
10 speaking with professional organizations, did Dey
11 actually do anything about its prices reports?
12   A.   In our price reporting we do include now a
13 statement regarding the nature of both Average
14 Wholesale Price and also WAC, which we believe was
15 already understood. We felt that what we were printing
16 on our price notifications was already commonly known
17 throughout the industry and also to regulators. That
18 change was made at the recommendation of counsel.
19   Q.   Is that it?
20   A.   To the extent I can comment, yes.
21   Q.   Change your price representations?
22   A.   To my knowledge, there were no changes in
23 price representations.
24   Q.   Did you change your reports of Wholesale
25 Acquisition Cost?