# Exhibit 17

*State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v.*
*Abbott Laboratories, Inc., et al.*

Exhibit to the Declaration of Nicholas N. Paul in Support of
Plaintiffs' Opposition to Defendants' Joint Motion for Partial Summary Judgment

Page 1

```
             UNITED STATES DISTRICT COURT

              DISTRICT OF MASSACHUSETTS

-----------------------------X

IN RE PHARMACEUTICAL INDUSTRY

AVERAGE WHOLESALE PRICE

LITIGATION

-----------------------------X  MDL No. 1456

THIS DOCUMENT RELATES TO:       Civil Action:

State of California, ex rel.    01-12257-PBS

Ven-A-Care v. Abbott

Laboratories, Inc., et al.,

-----------------------------X


                TUESDAY, MAY 19, 2009

                      --o0o--

             VIDEOTAPED DEPOSITION OF

                STANLEY ROSENSTEIN

                      --o0o--


Ref. No. 6620

Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

              Registered Merit Reporter
```

Page 171

1   in this report; correct?
2        A.   Yes.
3             I mean, it -- this may have been
4   prepared slightly before it was passed, but it was
5   on the way to being passed.
6        Q.   Okay.  If you could turn to page 10 of
7   the document.
8             Actually, my apologies.
9             Before we go to page 10, just to stay on
10  the first page for a moment, AB 442 was designed
11  to implement portions of the 2002/2003 State
12  budget; correct?
13       A.   That is correct.
14       Q.   If you could go to page 10.
15       A.   Yes.
16       Q.   Bottom of page 10 there's -- appears to
17  be a summary of Section 73 of the bill.
18            This summary says "This section would
19  change the estimated acquisition cost of drugs
20  from AWP-5 percent to AWP-10 percent and would
21  eliminate the use of direct price in the
22  calculation of EAC, or Estimated Acquisition

Rosenstein, Stanley May 19, 2009
Sacramento, CA

Page 178

1        You know, there was a -- it wasn't
2  necessarily the Department's compromise.
3        It was done as a -- part of the
4  legislative process, and -- this was explaining to
5  the Governor's Office and the Governor why they
6  should accept the compromise.
7     Q.   Would you turn back to the third
8  paragraph there on page 93.
9        The final sentence says, "In recognition
10 of CPhA's contentions, the DHS modified the
11 original May Revision proposal to AWP-10 percent
12 for all drugs;" correct?
13    A.   That's right.
14    Q.   Doesn't that suggest that the Department
15 itself did compromise in its original proposal?
16        MR. PAUL:  Objection to form.
17        THE WITNESS:  Yeah.  As I said, it was a
18 compromise.
19        You know, we negotiated this between the
20 legislative staff and the stakeholders.
21 BY MR. GANDESHA:
22    Q.   And in this document the Department is

Page 179

1   recommending that the Governor not veto Section
2   73; correct?
3       A.   Well, recommending he not veto the
4   entire bill.
5            With the trailer bill he does not have
6   line item veto, so he either signs the entire bill
7   or vetoes the entire bill.
8       Q.   And that would include Section 73?
9       A.   That's right.
10      Q.   As a result Section 73 became law in
11  California; is that right?
12      A.   That's correct.
13      Q.   And among other things the reimbursement
14  rate was changed from AWP-5 percent to AWP-10
15  percent; correct?
16      A.   That's correct.
17           And I believe we also eliminated the --
18  direct pricing here, but I'm not positive.
19      Q.   I think, if you turn back to page 92, --
20      A.   I can't remember if this is where we
21  eliminated drug pricing or not.
22           Yeah, it did eliminate drug pricing.