# Exhibit 5

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc.*
*v. Abbott Laboratories, Inc., et al.*, **Master Civil Action No. 01-12257-PBS,**
**Subcategory Case No. 06-11337**

**Exhibit to the December 21, 2009 Declaration of Sarah L. Reid in Support of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment**

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III     PORTIONS DESIGNATED HIGHLY CONFIDENTIAL                         October 2, 2008
Napa, CA

Page 576

```
 1                UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MASSACHUSETTS

 3   --------------------------------X

 4   IN RE PHARMACEUTICAL INDUSTRY    )

 5   AVERAGE WHOLESALE PRICE LITIGATION)

 6   --------------------------------X  Volume III

 7   THIS DOCUMENT RELATES TO:        ) MDL NO. 1456

 8   The City of New York, et al.,    ) Civil Action

 9      V.                            ) No. 01-12257-PBS

10   Abbott Laboratories, et al.      )

11   --------------------------------X

12   THIS DOCUMENT RELATES TO:        ) PORTIONS OF THIS

13   State of California, ex rel.     ) TRANSCRIPT ARE

14   Ven-A-Care v. Abbott Laboratories,) DESIGNATED

15   Inc., et al., Case No.           ) HIGHLY

16   03-cv-11226-PBS                  ) CONFIDENTIAL

17   --------------------------------X

18                   OCTOBER 2, 2008

19         DEPOSITION OF DEY, L.P. AND DEY, INC.

20            BY PAMELA MARRS - VOLUME III

21

22   Reported By: WENDY L. VAN MEERBEKE, CSR No. 3676
```

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III     PORTIONS DESIGNATED HIGHLY CONFIDENTIAL     October 2, 2008
Napa, CA

Page 736

1     Q.   Do you know whether or not risks

2   arising from the AWP litigation was a factor in

3   Mylan's decision-making?

4          MR. DOYLE:  And to the extent that it

5   obviously involves anything privileged, you can't

6   testify to it.

7          THE WITNESS:  I mean, I can't tell you

8   for sure, but I can tell you it never came up in

9   any conversations I was involved in.

10         MR. HENDERSON:

11    Q.   So you haven't --

12    A.   I -- I'm -- you know, who knows what

13  goes on behind closed doors.  But from my

14  perspective, what I saw was purely a business

15  decision from a strategy standpoint to -- to

16  basically bring Dey closer into the Mylan fold

17  and -- and maximize the opportunities they could

18  get out of it.  I never heard any reference to

19  the litigation in that context.

20         MR. HENDERSON:

21    Q.   Okay.  Coming back to the more

22  immediate subject of Dey's reporting for --

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III     PORTIONS DESIGNATED HIGHLY CONFIDENTIAL     October 2, 2008
Napa, CA

Page 737

1    reporting prices for its generic products, am I

2    correct in understanding that as a general

3    matter, Dey's practice has been for generic

4    products to set its AWP at or around the time of

5    launch and to not change it thereafter,

6    understanding that there have been a few

7    exceptions?

8        A.    That has been the general practice.

9    Yes.

10       Q.    Okay.  And if Dey, for example, reduces

11   its WAC on a generic product, it would keep the

12   AWP unchanged, generally speaking; is that true?

13       A.    That's correct.

14       Q.    Why is that?

15       A.    Because -- why is it we don't change

16   our AWP when we change our WAC for generics?

17       Q.    Yes.

18       A.    It's my understanding that that's what

19   the industry practice was, and that's basically

20   what everyone in the industry did.

21       Q.    Any other reason?

22       A.    Not that I can recall.  No.

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III   PORTIONS DESIGNATED HIGHLY CONFIDENTIAL   October 2, 2008
Napa, CA

Page 773

```
 1   is a percentage below AWP, however you choose to
 2   look at it.
 3           MS. HANSCOM:
 4       Q.  Does Dey have a definition of the term
 5   "level playing field"?  I've heard you use it.
 6           MR. DOYLE:  Objection as to form.
 7           THE WITNESS:  When I use it, what I
 8   mean is the same rules apply to all the
 9   competitors in the marketplace.
10           MS. HANSCOM:
11       Q.  And which rules are you talking about?
12       A.  Well, in the case of -- when I referred
13   to it in the past, it has typically been with
14   respect to AWP.  And if -- if the rules are
15   defined and well established and everyone follows
16   the same rules, then that would be a level
17   playing field.  If it's expected that one company
18   do something different from another company which
19   puts it at a competitive disadvantage in the
20   marketplace, then that would not be a level
21   playing field.
22       Q.  Did Dey ever ask Medi-Cal -- do you
```