# Exhibit 9

***State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.*, Master Civil Action No. 01-12257-PBS, Subcategory Case No. 06-11337**

**Exhibit to the December 21, 2009 Declaration of Sarah L. Reid in Support of Dey's Opposition to Plaintiffs' Motion for Partial Summary Judgment**

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

| | | |
|---|---|---|
| THE STATE OF FLORIDA<br><br>ex rel.<br><br>VEN-A-CARE OF THE FLORIDA KEYS, INC., a Florida Corporation, by and through its principal officers and directors, ZACHARY T. BENTLY and T. MARK JONES,<br><br>Plaintiffs,<br><br>VS.<br><br>BOEHRINGER INGELHEIM CORPORATION; DEY, INC.; DEY, L.P.; EMD PHARMACEUTICALS, INC.; LIPHA, S.A.; MERCK, KgaA; MERCK-LIPHA, S.A.; SCHERING CORPORATION; SCHERING-PLOUGH CORPORATION; ROXANE LABORATORIES, INC.; and WARRICK PHARMACEUTICALS CORPORATION,<br><br>Defendants. | ) | CIVIL ACTION NO. 98-3032A |




VIDEOTAPED DEPOSITION OF

**TODD CHRISTOPHER GALLES**

VOLUME 1

February 28, 2006

**FREDERICKS-CARROLL REPORTING & LITIGATION SERVICES, INC.**

7719 Wood Hollow Drive ❖ Suite 156 ❖ Austin, Texas 78731 ❖ (800) 234-3376 ❖ (512)477-9911 ❖ (512) 345-1417 Fax
9 Greenway Plaza ❖ Suite 3112 ❖ Houston, TX 77046 ❖ (800) 234-3376 ❖ (713) 572-8897 ❖ (512) 345-1417 Fax
909 N.E. Loop 410 ❖ Suite 810 ❖ San Antonio, TX 78209 ❖ (800) 767-9161 ❖ (210) 222-9161 ❖ (210) 225-1476 Fax

because that meant the pharmacist had to dispense that product.

Q. What other strategies did you employ while you were at Dey Laboratories to maximize the exposure of the generics that you were responsible for in the market? 10:08

MS. GIULIANA: Object to the form.

Q. (BY MR. THOMAS) You can answer.

A. Well, one additional strategy was to attend trade shows. 10:09

Q. You had mentioned in response to a question I had asked you didn't just market on price while you were employed with Dey Laboratories. Is price an important part of marketing in the generic marketplace? 10:09

MR. McDONALD: Object to the form.

MS. GIULIANA: Object to the form.

A. Price certainly can be and it -- I think as long as it's a level playing field, which was always my goal, it -- it shouldn't be. I mean, first of all, 10:09 generics are all offering a discount off of brand, so with regard of having a lower price than the brand, it's critical. But having the same price parity to other generics, then it was fine. Then you could talk about packaging. You could say for Ipratropium you 10:10

are using, whatever, 25 percent of the same -- of the shelf space that their package would offer and you could say, okay, what is that worth to you on your -- your shelf. You could talk about maybe wastage due to packaging. Different things like that. 10:10

But if -- if your price wasn't in line, then it probably would become an issue for sales. So I tried to -- I focused on showing the benefits of the product. And for the most part generics should all be in the same range. Once a product is launched, the pricing erodes down over time, but it generally erodes down in combination with all the other products in that segment. 10:10

Q. When you say that there need be price parity with other generics in order to be able to address other marketing issues, how -- how is price parity achieved? 10:11

MS. GIULIANA: Object to the form.

A. Well, initially I would analyze the market and if there were generics in the market I would recommend a price within a tight range to the generics that were there because that's the price the market would bear. If -- I think there was always a generic there. I guess for cromolyn, I don't think I probably set the price for cromolyn because I think I came in 10:11 10:12