# Exhibit B

**State of California ex rel. Ven-A-Care of the Florida Keys, Inc.
v. Abbott Laboratories, Inc., et al., Master Civil Action No. 01-12257-PBS,
Subcategory Case No. 06-11337**

Exhibit to the December 21, 2009 Declaration of Christopher C. Palermo in Support
of Defendants Mylan Inc. and Mylan Pharmaceuticals Inc's. Opposition to Plaintiffs' Motion for Partial Summary
Judgment

```
                                                              Page 1
 1              IN THE UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MASSACHUSETTS

 3                          - - - -

 4   ------------------------------X

 5   THE COMMONWEALTH                )

 6   OF MASSACHUSETTS,               )

 7                    Plaintiff,     )  Civil Action

 8        -vs-                       )  No. 03-11865-PBS

 9   MYLAN LABORATORIES, INC.,       )

10   IVAX CORPORATION, WARRICK       )  November 26, 2007

11   PHARMACEUTICALS CORPORATION,    )  Monday, 9:42 a.m.

12   WATSON PHARMACEUTICALS, INC.,   )

13   SCHEIN PHARMACEUTICAL, INC.,    )  Canonsburg, PA

14   TEVA PHARMACEUTICALS USA, INC.,)

15   PAR PHARMACEUTICAL, INC.,       )

16   ETHEX CORPORATION, PUREPAC      )

17   PHARMACEUTICAL CO., and         )

18   ROXANE LABORATORIES, INC.,      )

19                    Defendants.    )

20   ------------------------------X

21         VIDEOTAPE DEPOSITION OF HARRY A. KORMAN

22
```

Page 2

1   VIDEOTAPE DEPOSITION OF: HARRY A. KORMAN
2
3        DATE:   November 26, 2007
4                Monday, 9:00 a.m.
5        LOCATION:   Hilton Garden Inn
6                    1000 Corporate Drive
7                    Canonsburg, PA
8        TAKEN BY:   Plaintiff
9        REPORTED BY:   Nina Warren Biehler
10                      Notary Public
11
12       VIDEOTAPE DEPOSITION OF HARRY A. KORMAN,
13  a witness, called by the Plaintiff for examination,
14  in accordance with the Federal Rules of Civil
15  Procedure, taken by and before Nina Warren Biehler,
16  a Court Reporter and Notary Public in and for the
17  Commonwealth of Pennsylvania, at the Westmoreland
18  Room of the Hilton Garden Inn, Pittsburgh,
19  Pennsylvania, on Monday, November 26, 2007,
20  commencing at 9:42 a.m.
21
22

Page 3

1   APPEARANCES:
2
3   FOR THE PLAINTIFF:
4        Peter A. Mullin, Esq.
5        Robert C. Molvar, Esq.
6        Assistant Attorneys General
7        Medicaid Fraud Control Unit
8        100 Cambridge Street
9        Boston, MA  02114
10       P 617-727-2200 / F 617-727-2008
11       robert.molvar@ago.state.ma.us
12
13  FOR THE DEFENDANT MYLAN LABORATORIES, INC.:
14       William A. Escobar, Esq.
15       Kelley Drye & Warren, LLP
16       101 Park Avenue
17       New York, New York  10178
18       P 212-808-7771 / F 212-808-7897
19       Wescobar@kelleydrye.com
20
21  ALSO PRESENT:
22       Matt Martin, Videotape Technician

Page 4

1                    I N D E X
2
3   WITNESS: HARRY A. KORMAN                    PAGE
4       Examination by Mr. Mullin................... 007
5
6
7                    E X H I B I T S
8   NUMBER          DESCRIPTION              PAGE
9   Exhibit Korman 001, Memorandum of 12-11-2000... 083
10  Exhibit Korman 002, E-mail of 11-8-2001........ 091
11  Exhibit Korman 003, 1252973 and 1252974........ 094
12  Exhibit Korman 004, 195884..................... 105
13  Exhibit Korman 005, 65785 - 65790.............. 129
14  Exhibit Korman 006, Memorandum of 11-27-1998... 147
15  Exhibit Korman 007, 2298877.................... 189
16  Exhibit Korman 008, 2305037.................... 197
17  Exhibit Korman 009, California No. 121 - 123... 209
18  Exhibit Korman 010, California No. 111 - 113... 214
19  Exhibit Korman 011, 1896515.................... 220
20  Exhibit Korman 012, 1261008.................... 230
21  Exhibit Korman 013, 1261248.................... 230
22  Exhibit Korman 014, E-mail of 5-15-2000........ 236

Page 5

1             E X H I B I T S (CONTINUED)
2   NUMBER          DESCRIPTION              PAGE
3   Exhibit Korman 015, 64395 - 64398.............. 247
4   Exhibit Korman 016, MYLCA 000105 - 000106...... 271
5   Exhibit Korman 017, 1253761.................... 294
6   Exhibit Korman 018, 1253633.................... 294
7   Exhibit Korman 019, Report of 6-21-2000........ 309
8   Exhibit Korman 020, 1994164 - 1994178.......... 317
9   Exhibit Korman 021, MAMylan000100 - 112........ 323

Korman, Harry A.  
Canonsburg, PA  
November 26, 2007

Page 70

1  1998 to 2003.
2      Q.  Okay.  I may also use, in the course of
3  questions, the term subject drugs.  Essentially,
4  the case we've sued on relates to three drugs,
5  Lorazepam, Clozapine and Phenytoin Sodium.
6          Do you understand what I'm saying when
7  I say subject drugs?
8      A.  Yes, I understand what you're saying.
9      Q.  And the entity, the corporation that
10  was sued in this case, is Mylan Laboratories,
11  Incorporated.  Are you familiar with that
12  corporation?
13          MR. ESCOBAR:  Objection, asked and
14  answered.
15          MR. MULLIN:  Not in this deposition.
16  BY MR. MULLIN:
17      Q.  Are you familiar with that corporation?
18      A.  Mylan Laboratories, Inc., yes, I'm
19  familiar with that corporation.
20      Q.  And is it -- has it recently changed
21  its name to Mylan, Inc., I-N-C?
22      A.  Yes, I believe that's what it's changed

Page 71

1  its name to.
2      Q.  And is it fair, is it accurate to say
3  that that company is a holding company?
4      A.  Yes, it's fair to say that Mylan, Inc.
5  is a holding company.
6      Q.  And that one of the things it holds is
7  Mylan Pharmaceuticals, Inc.?
8      A.  Yes, one of the assets of Mylan, Inc.
9  is Mylan Pharmaceuticals, Inc.
10      Q.  And throughout the relevant time
11  period, January '98 through September 2003, what
12  was the business of Mylan Pharmaceuticals, Inc.?
13      A.  The primary business of Mylan
14  Pharmaceuticals, Inc. was to sell generic
15  pharmaceuticals into the marketplace.
16      Q.  It both manufactured them and sold
17  them?
18      A.  Yes, it did.
19      Q.  Okay.  In addition, did Mylan
20  Laboratories, Inc., now Mylan, Inc., hold a
21  company by the name of UDL Laboratories, Inc.?
22          MR. ESCOBAR:  Are you talking '98 to

Page 72

1  2003?
2          MR. MULLIN:  Yes.
3          THE WITNESS:  Yes.
4  BY MR. MULLIN:
5      Q.  And what was the business of UDL?
6      A.  The business of UDL, primary business,
7  was to sell generic pharmaceuticals in a unit
8  dose format to the institutional marketplace.
9      Q.  And did UDL manufacture any products?
10      A.  UDL may have manufactured products in
11  the 1998 to 19 -- or to the approximate 2000 time
12  frame.
13      Q.  And would that be a minor part of its
14  business or was that a minor part of its business
15  during that time period?
16          MR. ESCOBAR:  Objection to the form.
17          THE WITNESS:  Can you quantify minor?
18  BY MR. MULLIN:
19      Q.  Five, ten percent.
20      A.  No, it would not have been minor.
21      Q.  Because it would be more than five or
22  ten percent?

Page 73

1      A.  Yes.
2      Q.  What's your best estimate as to, when
3  it was manufacturing, what percentage of the
4  product that it sold it manufactured?  What's the
5  peak?
6          MR. ESCOBAR:  Objection to the form.
7          THE WITNESS:  Could have been 15
8  percent of net sales.
9  BY MR. MULLIN:
10      Q.  And somewhere by 2000 it stopped
11  manufacturing?
12      A.  The manufacturing division was sold off
13  some time shortly, I believe, after 2000.
14      Q.  And the products that UDL sold, did it
15  acquire at least some of its product from Mylan
16  Pharmaceuticals, Inc.?
17      A.  Yes, it acquired some of its products.
18      Q.  And is it fair, is it accurate to say
19  that throughout the relevant time period that UDL
20  acquired most of its, the product that it sold,
21  from Mylan Pharmaceuticals, Inc.?
22          MR. ESCOBAR:  Objection to the form.

Page 142

1  understand.
2       MR. MULLIN: How Mylan's product was
3  being reimbursed by the Medicaid program.
4       MR. ESCOBAR: Objection to the form.
5       THE WITNESS: No, I don't believe Mylan
6  kept track, that I recall, of how our products
7  were being reimbursed by, I think you said, the
8  Medicaid system.
9  BY MR. MULLIN:
10      Q. Looking at Exhibit Korman 005, the
11 January 30, 1998 memorandum from Steve Krinke, to
12 Sue Gaston, isn't it true that the reason Mylan
13 was sending this memorandum to the Health Care
14 Financing Administration was that it was
15 concerned that the Federal Upper Limit with
16 regard to Lorazepam would interfere with the
17 ability of Mylan to increase its prices relating
18 to Lorazepam?
19      MR. ESCOBAR: Objection to the form.
20 And that's a gross mischaracterization of the
21 document that you're looking at.
22      THE WITNESS: Can you read it back? I

Page 143

1  think there were two questions there, I'm not
2  sure how to respond to that.
3       MR. MULLIN: Let's read it back.
4
5          (The record was read back by the
6  Reporter.)
7
8       THE WITNESS: On the page that I've
9  looked at, no, I don't see that contained in this
10 document.
11 BY MR. MULLIN:
12      Q. I'm not asking you to read the document
13 and see if those words are there, I'm asking you
14 whether or not that isn't the purpose, the
15 reason, that the company was sending this
16 document to Sue Gaston.
17      A. And I think I've answered you, I don't
18 think that was the purpose of why we were sending
19 this document.
20      Q. Why did Mylan care what the Federal
21 Upper Limit was on the product?
22      MR. ESCOBAR: Objection to the form.

Page 144

1  No foundation. There's nothing in here that
2  suggests that.
3       THE WITNESS: Again, on the page I
4  don't -- I don't see where it says Mylan cared.
5  BY MR. MULLIN:
6       Q. Well, what's the first line of the
7  letter?
8       A. Please review the following product for
9  potential discontinuance of Federal Upper Limits.
10      Q. Doesn't that indicate that the company
11 cares?
12      MR. ESCOBAR: Objection to the form,
13 calls for speculation.
14      THE WITNESS: Again, I think it's just
15 -- it's just stating a request or a fact, please
16 review the following products. What happens, I
17 don't think it states here.
18 BY MR. MULLIN:
19      Q. Mr. Krinke, on behalf of Mylan
20 Pharmaceuticals, is asking the Health Care
21 Financing Administration to do something, right?
22      MR. ESCOBAR: Objection to the form,

Page 145

1  mischaracterizes the document. The document,
2  including the letter and everything that follows
3  from that letter.
4  BY MR. MULLIN:
5       Q. Isn't he asking them to do something?
6       A. He's asking them to review the
7  products.
8       Q. Right. And he wants them to
9  discontinue the Federal Upper Limit, right?
10      MR. ESCOBAR: Objection to the form,
11 that's not even what it says.
12      Why are you mischaracterizing the
13 document, Mr. Mullin? What's your purpose --
14      MR. MULLIN: You can state your
15 objections. I'd ask you to state them in the
16 form of a federal civil action, which is to not
17 state an argumentative objection, to just state
18 the grounds of your objection.
19      MR. ESCOBAR: Well, that's correct, as
20 long as you're asking a proper question. When
21 all you're doing is mischaracterizing a document
22 as the basis for your question and when all