Page 1

```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                            )
                                  )  CA No. 01-12257-PBS
PHARMACEUTICAL INDUSTRY AVERAGE   )  CA No. 06-11337-PBS
WHOLESALE PRICE LITIGATION        )  Pages 1 - 14
                                  )




                  SETTLEMENT HEARING

           BEFORE THE HONORABLE PATTI B. SARIS
              UNITED STATES DISTRICT JUDGE







                      United States District Court
                      1 Courthouse Way, Courtroom 19
                      Boston, Massachusetts
                      December 11, 2009, 3:00 p.m.
```

```
              LEE A. MARZILLI
           OFFICIAL COURT REPORTER
         United States District Court
         1 Courthouse Way, Room 7200
              Boston, MA  02210
                (617)345-6787
```

1  A P P E A R A N C E S:

2

3       NICHOLAS N. PAUL, ESQ., Supervising Deputy Attorney
   General, Office of the Attorney General, Bureau of Medi-Cal
   Fraud & Elder Abuse, 110 West A Street, #1100, P.O. Box 85266,
4  San Diego, California, 92186, for the State of California.

5       JAMES J. BREEN, ESQ., The Breen Law Firm, P.A.,
   3562 Old Milton Parkway, Alpharetta, Georgia, 30005,
6  for Ven-A-Care of The Florida Keys.

7       L. KIRK ROGERS, ESQ., Assistant Attorney General, Complex
   Civil Enforcement Bureau, Medicaid Fraud Control Unit, Office
8  of the Attorney General, State of Florida, PL-01, The Capitol,
   Tallahassee, Florida, 32399-1050, for the State of Florida.
9
        PETER A. MULLIN, ESQ., Office of the Attorney General,
10 One Ashburton Place, Boston, Massachusetts, 02108, for the
   Commonwealth of Massachusetts.
11
        GEORGE B. HENDERSON, ESQ., Assistant United States
12 Attorney, Office of the United States Attorney, 1 Courthouse
   Way, Boston, Massachusetts, 02210, for the United States of
13 America.

14      JOHN T. MONTGOMERY, ESQ. and JOHN P. BUEKER, ESQ.,
   Ropes & Gray, LLP, One International Place, 02110,
15 for Schering-Plough and Warrick Pharmaceuticals.

16

17

18

19

20

21

22

23

24

25

c76408d0-419a-4d0a-9dca-da4f48c0b6f9

1                    P R O C E E D I N G S
2          THE CLERK:  In Re:  Pharmaceutical Industry Average
3  Wholesale Price Litigation, Civil Action 01-12257 and 06-11337,
4  will now be heard before this Court.  Will counsel please
5  identify themselves for the record.
6          MR. PAUL:  Good afternoon, your Honor.  Nicholas Paul
7  for California.
8          MR. BREEN:  Jim Breen for the Relator, Ven-A-Care of
9  the Florida Keys.
10         MS. ROGERS:  Kirk Rogers for the State of Florida.
11         MR. MONTGOMERY:  John Montgomery for Schering and
12 Warrick.
13         MR. BUEKER:  John Bueker for Schering and Warrick.
14         MR. HENDERSON:  George Henderson for the United
15 States.
16         MR. MULLIN:  Good afternoon, your Honor.  Peter Mullin
17 on behalf of the Commonwealth of Massachusetts.
18         THE COURT:  Anybody here from any other state that
19 wants to be heard from?  No, okay.
20         MR. MONTGOMERY:  I don't believe so, your Honor.  Your
21 Honor, as you know, we have achieved a settlement --
22         THE COURT:  Excuse me.  Can I just say, I haven't
23 looked today at my docket.  Has any other state filed anything?
24         MR. MONTGOMERY:  Yes, and I'll get to that in just a
25 moment.

1    THE COURT: Okay, I haven't even been back in my
2 chambers, so --
3    MR. MONTGOMERY: So the parties to this case have
4 achieved a settlement which accomplishes the finality goal,
5 which, as your Honor knows, Schering and Warrick have had from
6 the beginning. The United States has filed a consent to that
7 settlement and to the entry of an order of dismissal in a form
8 that is before your Honor.
9    New York today, which had previously objected to the
10 prior form of settlement, has this afternoon filed with the
11 court a withdrawal of its objections in exchange for a modest
12 adjustment in one section of the Order of Dismissal, and we
13 have a copy of that to hand up to your Honor, though it has
14 been filed, and we can certainly, if it's of interest, explain
15 the wording changes.
16    Other states that have objected, either directly or
17 through an amicus brief, have declined to renew those
18 objections, or to submit any new objections to this form of
19 settlement, and have expressly declined to appear to advance
20 any objection, which leaves us only with the Commonwealth of
21 Massachusetts.
22    Now, before I get to the Commonwealth, let me just
23 direct the Court's attention to the critical provision of the
24 Order of Dismissal, and it provides, your Honor --
25    THE COURT: Thank you.

1       MR. MONTGOMERY: So directing your attention to the
2  third and final page of the Order of Dismissal and to
3  Paragraph 2, the settlement to which the parties have agreed
4  and the United States has consented provides that this order,
5  if your Honor enters it, fully, finally, and forever resolves
6  all claims related to the federal share, defined to mean that
7  portion of Medicaid expenditures paid by the United States of
8  any Medicaid overpayment allegedly arising out of the covered
9  conduct, as defined in the settlement agreement, or the price
10 reporting for reimbursement of the covered drugs, including but
11 not limited to the federal share of any claim brought by a
12 state arising out of or related to the covered conduct, or the
13 price reporting for reimbursement purposes for covered drugs,
14 consistent with the principles of claim preclusion set forth in
15 Taylor V. Sturgell and Giragosian V. Ryan.
16      That is the critical provision, your Honor, which
17 separates us and the Commonwealth of Massachusetts. It
18 effectively declares, of course, that the settlement resolves
19 all claims for the federal share, and as you know --
20      THE COURT: Nationally?
21      MR. MONTGOMERY: Nationally.
22      THE COURT: Across the United States of America?
23      MR. MONTGOMERY: By any state.
24      THE COURT: By any state, all right.
25      MR. MONTGOMERY: And, as I think we've told you

1  before, there are a number of pending state actions against
2  Schering and Warrick.  The number is fifteen.  We have a list
3  of those actions if it would be helpful for your Honor to have
4  them identified.
5       THE COURT:  And just to add in, they all know about
6  this in the sense of --
7       MR. MONTGOMERY:  Yes.  I think you directed that
8  interested states be advised.  We certainly have communicated
9  with counsel for virtually all of those states.  Let me just
10 check and see if there's an exception.
11      THE COURT:  I think I did ask somebody to notify.  I
12 think it was the government, the federal government.
13      MR. MONTGOMERY:  It was.
14      MR. BUEKER:  John Bueker, your Honor.  I've actually
15 had communications with counsel for every one of the states on
16 the list today, so they are advised.
17      THE COURT:  Okay, thank you.
18      MR. MONTGOMERY:  So, your Honor, Paragraph 2 requires
19 the Court to essentially review the underlying legal premise of
20 the settlement; namely, preclusion.  If you concur that the
21 state claims for the so-called "federal share" are precluded,
22 then, under the agreement of the parties, you should approve
23 the settlement.  If, on the other hand, you don't agree that
24 preclusion principles control here, then there is no settlement
25 for you to approve; you should not sign it.

c76408d0-419a-4d0a-9dca-da4f48c0b6f9

1       Now, Massachusetts has consistently made its position
2  clear that there can be no claim preclusion.  They have shifted
3  slightly and only procedurally in a filing that was made late
4  yesterday, and they now assert that while there can be no
5  preclusion, they do not object to your execution of this
6  settlement; but they assert that they do so because the issue
7  of claim preclusion with respect to their case is not ripe.
8  They say it's not ripe because they may in the future withdraw
9  their claim for the federal share, and the objection filed by
10 Massachusetts recites some discussions that they have had with
11 the federal government on the consequences of proceeding either
12 to pursue the federal share or to withdraw the federal share.
13      Now, while Massachusetts could in theory withdraw its
14 claim for the federal share, as the case was originally pled,
15 of course, the complaint seeks the federal share.  Massachusetts
16 is required, as are all the states --
17      THE COURT:  First of all, is it public?  How much
18 money are we talking about?
19      MR. MONTGOMERY:  How much money are we talking about
20 in the case of Massachusetts?
21      THE COURT:  And in general, what's the settlement for?
22      MR. MONTGOMERY:  Oh, the settlement.  The settlement
23 is for $69 million.
24      THE COURT:  And that's going to be paid to --
25      MR. MONTGOMERY:  That's going to be paid to

1  California, Florida, and to the federal government in a lump
2  sum, subject to allocation privately amongst the three of them.
3          THE COURT:  Okay, and so that part has stayed --
4          MR. MONTGOMERY:  That's right.
5          THE COURT:  You had increased it somewhat, and that's
6  why the federal government decided to sign on.  I just wanted
7  it for anyone who's sitting here trying to follow this.  The
8  big picture is, there's a payment.
9          MR. MONTGOMERY:  Yes, your Honor.
10         THE COURT:  And I approve that.  It's agreement by the
11 Department of Justice, as I understand, which is what we didn't
12 have before.  Is that right, Mr. Henderson?
13         MR. HENDERSON:  That's correct.
14         THE COURT:  The Department of Justice is on board.
15 California is on board, right?
16         MR. PAUL:  Very much so, your Honor.
17         THE COURT:  Florida is on board, right?
18         MS. ROGERS:  Absolutely.
19         THE COURT:  All right, so I've got the withdrawal from
20 New York, and as far as I'm concerned, forty-nine states and
21 the District of Columbia are on board, and this is the only
22 issue.
23         MR. MONTGOMERY:  Thank you, your Honor, and I
24 apologize for leaping ahead to the remaining issue.
25         THE COURT:  Yes, I understand it's been intense, but

1  let's just -- so I just want to make sure that there's no other
2  pending issue that anyone has got with this, and so we're just
3  going to focus on this.  That's the issue of res judicata.
4  It's been the issue right from the beginning.  There are no
5  surprises here.  And it makes sense now because the Department
6  of Justice has approved it.  Before, it didn't make sense.
7           So let me ask you this.  Can I just jump?  I know
8  where you are, and I'm in the middle of this other proceeding
9  where, you know, I think everyone is desperate to finish it
10 today because I have this one witness who's got to be out of
11 here.
12          So, Mr. Mullin, why doesn't -- the federal government
13 can settle this federal share.
14          MR. MULLIN:  The federal government certainly can
15 settle its case, and it's seeking the damages under the federal
16 False Claims Act.
17          The Commonwealth of Massachusetts is doing something
18 different.  We've sued under the Massachusetts False Claims
19 Act.  We paid all the damages.  We paid all the money to the
20 pharmacists as a result of the false price reporting by
21 Schering and Warrick.  The issue that's before your Honor is
22 claims preclusion.
23          THE COURT:  Right.
24          MR. MULLIN:  And in general the law is that if a party
25 is not a party to the prior judgment, then that prior judgment

c76408d0-419a-4d0a-9dca-da4f48c0b6f9

1  cannot act to preclude its case.  In the Sturgell case, the
2  last term in the Supreme Court, the Supreme Court said:  That's
3  the law.  Normally, usually, if you're not a party to a
4  judgment, there's no claim preclusion.  But there are six
5  exceptions, and they lay out those six exceptions.  I believe
6  it's a unanimous opinion by Justice Ginsberg, and essentially
7  Schering and Warrick is arguing, "We think we fit within three
8  of those exceptions."  We filed a brief yesterday articulating
9  why we think they do not fit within those three exceptions.
10 It's an affirmative defense, and they would have the burden --
11         THE COURT:  Yes, but you're trying to hold up every
12 settlement that's going to exist across the United States of
13 America essentially.  You think that a state has the right
14 to -- the federal government should have the right to settle
15 the federal share of Medicaid.
16         MR. MULLIN:  It certainly can.
17         THE COURT:  Yes?
18         MR. MULLIN:  But claims preclusion, your Honor, is a
19 doctrine that runs in both directions.  So that if you were to
20 hold that the judgment in the federal case to which the
21 Commonwealth is not a party precludes the Commonwealth, then
22 the reverse would also be true.  If the Commonwealth were to
23 settle its case, it could preclude and prevent the federal
24 government from pursuing its claims.
25         THE COURT:  But it -- I think that's actually a great

1   issue, which I don't have to decide today.
2           MR. MULLIN:  I don't think you have to decide either
3   one of those issues.
4           THE COURT:  I do have to.  As a practical matter, I do
5   because Schering-Plough wants finality, and I was not going to
6   give it finality unless the Department of Justice signed on.  I
7   can't remember who was at what meeting, but I made that crystal
8   clear.  I can't remember if you were here at that particular
9   one.  Now the Department of Justice has settled nationally the
10  claims against Schering-Plough.  That's a good thing because,
11  frankly, I'm being buried under the weight of these cases.
12  There needs to be some finality here when a company wants to
13  settle that at least the federal share can be settled, and I
14  don't see who would be a better person to settle the federal
15  share than the federal government.  And it can't be that
16  Massachusetts because it has the right to sue for the state
17  share, and also the federal share if it wants -- if the federal
18  government wants to settle its own, why can't it?
19          MR. MULLIN:  The federal government can settle its
20  case, its claims, but in essence what has happened here is, two
21  separate sovereigns have enacted two false claims acts, and the
22  conduct which the defendant engaged in violated the statutes of
23  both sovereigns, and there's liability that runs from that.
24  And the fact that the federal government has settled doesn't
25  preclude the Commonwealth from pursuing all the damages that it

Page 12

1   paid.

2           THE COURT:  It's a different kind of scheme because
3   you both work as partners.  But, anyway, what does the federal
4   government think about that argument?

5           MR. HENDERSON:  Your Honor, the United States consents
6   to the settlement, consents to the form of the proposed order.
7   The United States tends to agree with the Commonwealth that the
8   issue is not ripe.  Beyond that, your Honor, the United States
9   has no position.

10          THE COURT:  Well, you can't take both.  You can't take
11  both positions, Mr. Henderson.  You can't say that the form of
12  the order is correct where I've said there's issue preclusion,
13  and then say but you're not taking sides.  I know your hands
14  are tied, but let me just say, you can't say you agree to
15  Paragraph 2 and then say it's not ripe.

16          MR. HENDERSON:  I wish I could help you out, your
17  Honor.  I can't because the United States in approving this
18  settlement did not internally decide that issue.

19          THE COURT:  Okay.

20          MR. HENDERSON:  Now, we approve the form of order.  We
21  consent to the judgment --

22          THE COURT:  Well, I've just signed it.  So what's
23  today?  It's the 11th.  Congratulations.  I'll see you on the
24  next.  When do I have a trial with you?

25          MR. MULLIN:  February 22.

c76408d0-419a-4d0a-9dca-da4f48c0b6f9

1        MR. MONTGOMERY:  Thank you, your Honor.
2        MR. BREEN:  Thank you, your Honor.
3        MR. PAUL:  Thank you, your Honor.
4        MR. MONTGOMERY:  For the state share.
5        THE COURT:  For the state share, which is still a lot.
6   How much are you looking for?
7        MR. MULLIN:  $12 million singly, federal plus
8   penalties.
9        MR. MONTGOMERY:  That includes the federal share.
10       THE COURT:  No, but what's the state share?
11       MR. MONTGOMERY:  $6 million.
12       MR. MULLIN:  We were reimbursed $6 million by the
13  federal government of the $12 million in damages we incurred.
14       THE COURT:  Are we -- we, I'm a member of the
15  Commonwealth -- a 50 percent state?
16       MR. MULLIN:  We are, although under the False Claims
17  Act, we would recover 60 percent of whatever --
18       THE COURT:  I know, that's your incentive payment.  I
19  understand that.
20       So let me just say this:  We need to get going on the
21  Mylan case, but to Florida and California, is this it for you,
22  or are there other companies that you're still pursuing?
23       MR. PAUL:  For California, we're in the middle of
24  summary judgment briefing, your Honor.  We still have three
25  defendants, Dey, Mylan, and Sandoz.

c76408d0-419a-4d0a-9dca-da4f48c0b6f9

1           THE COURT: How about Florida?

2           MS. ROGERS: We have many more cases. We just

3   announced one settlement last week.

4           THE COURT: So you're all still here.

5           MS. ROGERS: Oh, yes.

6           THE COURT: Are you going to be with me for the rest

7   of my judicial career?

8           MS. ROGERS: Well, our cases are in state court in

9   Florida, so --

10          THE COURT: Fabulous. All right, by the way, do you

11  know this woman back here who's from the U.S. Attorney's office

12  in Florida?

13          MS. ROGERS: Ann? Yes.

14          THE COURT: Okay, I just wanted to make sure to

15  introduce you.

16          MS. ROGERS: Thank you.

17          MR. MONTGOMERY: Thank you, your Honor.

18          THE CLERK: Court is in recess.

19          (Adjourned, 3:18 p.m.)

20

21

22

23

24

25

1                C E R T I F I C A T E

2

3

     UNITED STATES DISTRICT COURT )
4    DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter,

8    do hereby certify that the foregoing transcript, Pages 1

9    through 14 inclusive, was recorded by me stenographically at

10   the time and place aforesaid in Civil Action No. 01-12257-PBS,

11   In Re:  Pharmaceutical Industry Average Wholesale Price

12   Litigation, and thereafter by me reduced to typewriting and is

13   a true and accurate record of the proceedings.

14         In witness whereof I have hereunto set my hand this 21st

15   day of December, 2009.

16

17

18

19

20              /s/ Lee A. Marzilli
                _____
21              LEE A. MARZILLI, CRR
                OFFICIAL FEDERAL COURT REPORTER
22

23

24

25