# Exhibit 1

- 1 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS COUNSEL'S PROPOSED FUTURE FEE ALLOCATION GUIDELINES**

## I.   INTRODUCTION

In an electronic Order issued on December 10, 2008, the Court directed "lead counsel to consult with all firms regarding its plan for allocating fees in this MDL in the future and submit a proposal to the Court within 30 days." In that same Order, the Court held that any objections to Lead Class Counsel's future fee allocations will "be reviewed on an abuse of discretion standard."

Thus far, the Court has granted final approval to the GSK Settlement and the AstraZeneca Class 1 Settlement. Lead Class Counsel have distributed the fees and expenses awarded in the GSK Settlement. The AstraZeneca Class 1 Settlement is not yet final, as the appeal period has not expired. Consequently, there has not yet been a fee and expense distribution from that settlement. In addition to the foregoing settlements, settlements are pending in favor of all Classes with respect to the Track 2 Defendants, and Lead Class Counsel hope to present the BMS Class 1 Settlement to the Court for preliminary approval shortly.

Claims on behalf of multi-state Classes 2 and 3 are still pending against both AstraZeneca and BMS, and the Court has not yet entered a final order certifying those classes or set those claims for trial. We may spend millions in costs and fees preparing for and prosecuting those claims at trial, and Plaintiffs may yet lose the trials. In addition, the First Circuit Court of Appeals has yet to issue a decision on the appeals arising from the trial of the claims of Massachusetts Classes 2 and 3. It is possible that a partial retrial of claims may follow the First Circuit decision.

Given that (i) substantial claims remain to be litigated in this case, (ii) two proposed settlements still await final approval, and (iii) the inability to predict with any certainty the magnitude of expense reimbursements and fees that may be approved by the Court in the future, Lead Class Counsel are unable to submit to the Court a detailed fee allocation plan at this time.

- 1 -

However, we outline below the guidelines that we intend to apply to all future fee allocations. As was done in allocating the GSK award, Lead Class Counsel will be guided by factors that courts consider in awarding fees in class litigation.  *See*, *e.g.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  Lead Class Counsel will apply a multi-factor analysis in an objective manner in allocating expenses and fees in a process similar to that used in allocating the GSK fee, which resulted in only a single objection from the 25 firms involved.  As the Court requested, Lead Class Counsel have communicated the below guidelines to all Plaintiffs' counsel in this case.

## II.   THE GUIDELINES

### A.   Reimbursing Advanced Expenses.

As a first step in allocating any future fee awards, Lead Class Counsel will reimburse a specific portion of total expenses advanced.  Expenses are paid first because they are substantial out-of-pocket outlays that magnify risk.  In addition, it is important to partially recharge expense budgets on an ongoing basis as out-of-pocket costs, and particularly expert costs, continue to accrue in the case.  The aggregate amount allocated to expenses will be reduced from the total fee award to determine the net amount remaining to be allocated as "fees."

### B.   The Primary Fee Allocation Factors.

Courts delegate substantial discretion to lead counsel to allocate a fee award across participating counsel and will not disturb that allocation provided that is fair and reasonable.  The Court has recognized this by stating in its December 10 Order that any objections to Lead Class Counsel's future fee allocations will "be reviewed on an abuse of discretion standard."

Lead Class Counsel's fee allocation decisions will be guided by the factors that courts consider in awarding fees in class litigation, including the following three factors as the "primary" drivers of discerning each firm's contribution to the litigation: (i) the risks borne by

- 2 -

counsel in litigating a complex case on a contingency fee basis, (ii) the quality of the representation provided, and (iii) the time and labor expended by counsel. *See*, *e.g.*, *Goldberger*, 209 F.3d at 50; *Gunter*, 223 F.3d at 195 n.1.

We consider risk to be the most important factor. *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."). This Court has already recognized the magnitude of risk faced by class counsel in this case. *See* May 1, 2008 Hearing Tr. at 24. This litigation has entailed, and continues to entail, an extraordinarily high level of risk. It has involved novel and complex legal and factual issues, and the limited resources of Lead Class Counsel have been pitted against the seemingly infinite resources of defendants and their well-heeled counsel, who pursue appeals at every opportunity. In assessing risk profiles, Lead Class Counsel will consider the magnitude of advanced expenses and each firm's commitment of full-time firm personnel to the exclusion of other case opportunities.

With respect to the quality of representation factor, we will primarily consider each firm's leadership position; its quality and volume of substantive work; whether the firm was an integral component of the trial team; the number, experience and quality of the partners and senior associates assigned to the case and whether and to what extent lower value contract lawyers were utilized; and the consistency of the firm's commitment throughout the duration of the litigation, including work on appellate issues.

With respect to the time and labor expended by counsel factor, we will consider each firm's productive lodestar. Lodestar will not be the sole or even determinative factor in Lead Class Counsel's analysis. Lead Class Counsel have collected and reviewed, and will continue to collect and review, unaudited lodestar and expense information. In determining reasonableness,

- 3 -

we have reviewed, and will continue to review, hourly rates, the time asserted to have been spent, and the work performed.

**C.  The Tiers.**

Lead Class Counsel have employed the foregoing factors and will group the 25 Plaintiffs' firms reporting time and expenses in the AWP litigation into three tiers based on their contributions to the litigation as follows:[1]

| Tier | Firm |
|---|---|
| I | Hagens Berman Sobol Shapiro LLP<br>Wexler Toriseva Wallace LLP<br>Spector, Roseman, Kodroff & Willis, P.C.<br>Hoffman & Edelson, LLC |
| II | Heins, Mills & Olson, P.L.C.<br>Kline & Specter, P.C. |
| III | Audet & Partners, LLP<br>Bolognese & Associates, LLC<br>Carey & Danis, LLC<br>Cuneo Gilbert & Laduca, LLP<br>Freeman & Lorry, P.C.<br>Hanzman, Criden & Love, P.A.<br>Hulett Harper Stewart, LLP<br>Karmel Law Firm<br>Law Office of Adam S. Levy<br>Piper & Associates<br>RodaNast, P.C.<br>Rossbacher Firm<br>Sheller, P.C.<br>Shepherd, Finkleman, Miller & Shah, LLC<br>Squitieri & Fearon, LLP<br>Trujillo Rodriguez & Richards, LLC<br>Weller, Green, Toups & Terrell, L.L.P.<br>Williams Law Firm<br>Young, Pickett & Lee |

We will allocate a specific percentage of each fee award to each tier, similar to the approach taken in the GSK fee allocation. In light of the contributions highlighted below, the Tier I firms will receive a higher percentage of future fee allocations than the other tiers.

---

[1] These are the same tiers that were utilized in allocating the GSK fee, except that the three sub-tiers previously employed for Tier III have been removed.

- 4 -

### 1. The Tier I contributions.

The Tier I firms have led the case from inception to the present, done most of the work, advanced the most expenses (approximately 84% to date), shouldered most of the risk of nonpayment and were the primary drivers of the results achieved thus far. Among other work, certain members of the Lead Class Counsel team have made the following contributions: headed the litigation; comprised the trial team; spearheaded all substantive oral arguments and served as the primary "face" of the team in court; prepared most, if not all, of the substantive briefing; conducted the expert work; were liaison counsel to the Court; handled almost all of the case filings for the Plaintiffs; led on all case management order and pre-trial order negotiations and drafting; coordinated and conducted third-party TPP discovery; covered the so-called "government knowledge" depositions; coordinated with the DOJ on federal issues; conducted wholesaler discovery; conducted publisher discovery, with some help from a Tier III firm; and were responsible for discovery of all of the defendants.

### 2. The Tier II contributions.

The Tier II firms once participated in leadership roles and, for a time, shared some of the Tier I responsibilities. The Tier II firms' former participation in leadership roles differentiates them from the Tier III firms, although the Tier II firms dropped out of the case and thereby minimized their risks.

### 3. The Tier III contributions.

The roles of the Tier III firms were primarily but not exclusively limited to participating in document review projects early in the litigation. This work was important and necessary to filter the literally millions of documents produced by the defendants in this case. And the fact that many Plaintiffs' counsel participated in document review projects does not mean that time spent reviewing documents was duplicative. To the contrary, all of the documents produced

- 5 -

needed to be read, coded, and analyzed whether the case was litigated by few firms or many. Lead Class Counsel instituted procedures designed to avoid duplication and inefficiency and divided document review responsibilities in a cogent manner.  The Tier III firms did not play a leadership role and generally have either no or minimal additional time and expenses in the case after 2006.

**D.     Lead Class Counsel's Aspirational Goals.**

As we have explained to the Court in prior submissions, the total lodestar of Plaintiffs' counsel in this case dwarf the fees awarded thus far and will likely do so for some time.  In addition, expenses and lodestar continue to grow as the case progresses.  Both the timing and magnitude of any future fee awards are difficult if not impossible to predict, especially since a significant part of the case is still being litigated.  Under these circumstances, it should come as no surprise that we cannot guarantee that any firm – including each firm on the Lead Class Counsel team – will recover its total lodestar.

We have, however, set certain fee allocation goals that pertain to the ultimate resolution of the case, that is, after all litigation is over.  In the event that all awarded fees from all AWP MDL cases at the conclusion of all matters total less than the collective lodestar and expenses of all Plaintiffs' counsel (the "Total Lodestar Over Total Fees Percentage"), Lead Class Counsel will endeavor in good faith to provide each firm up to a total of 80 percent of its lodestar and expense reimbursement.  If the Court awards the percentage fees requested in all settlements and/or judgments, and if the Total Lodestar Over Fees Percentage exceeds 100 percent, then Lead Class Counsel will endeavor in good faith to provide each firm 100 percent of its lodestar and expense reimbursement.  Given the uncertainty associated with future fee recoveries, the foregoing are aspirational goals and not guarantees.  There are several scenarios under which we

would be unable to meet these goals, including an aggregate result where the Total Lodestar Over Fees Percentage is close to or less than 80 percent.

### III.  CONCLUSION

Lead Class Counsel intend to objectively deploy the three primary *Goldberger* factors outlined above in allocating future fee awards across the proposed tiers. The process has been and will remain fair and transparent, as the Court has directed.

DATED:  January 9, 2009.                        By      /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

>Kenneth A. Wexler
>Jennifer Fountain Connolly
>Wexler Wallace LLP
>55 W. Monroe, Suite 3300
>Chicago, IL  60603
>Telephone: (312) 346-2222
>Facsimile: (312) 346-0022
>
>Marc H. Edelson
>Hoffman & Edelson LLC
>45 West Court Street
>Doylestown, PA  18901
>Telephone: (215) 230-8043
>Facsimile: (215) 230-8735
>
>**CLASS COUNSEL**

- 8 -

- 9 -

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing submission to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                        **/s/ Steve W. Berman**
                                        Steve W. Berman