# Exhibit 1


LEXISNEXIS FILE & SERVE
23986322
E-SERVICE
Feb 27 2009
4:17PM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File No.: 01-CV-12257-PBS<br>(original S. D. Iowa No. 4:07-cv-00461-JAJ-CFB) |
| THIS DOCUMENT RELATES TO:<br><br>*State of Iowa v. Abbott Laboratories, et al.* | Judge Patti B. Saris |

### DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF, THE STATE OF IOWA

PLEASE TAKE NOTICE that Defendants Teva Pharmaceuticals USA, Inc. and Novopharm USA, Inc. (collectively "Teva"), by and through their undersigned counsel, hereby request, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that Plaintiff State of Iowa ("Plaintiff"), within thirty (30) days of this request, produce for examination, inspection and copying all of the following documents or items listed below that are in its possession, custody or control, at the offices of KIRKLAND & ELLIS, LLP, or at such other place as may be mutually agreed upon by counsel.

PLEASE TAKE FURTHER NOTICE that Plaintiff is required by Rule 34 to serve a written response within thirty (30) days of receipt of this request and that failure to respond or to produce the documents or items requested will be grounds for a motion to compel production of documents, pursuant to the provisions of Rule 37 of the Federal Rules of Civil Procedure.

### DEFINITIONS

The terms used in these Requests, regardless of capitalization, are defined as follows:

1.        "AAC" means Actual Acquisition Cost.

2. "AMP" means Average Manufacturer Price as reported to the Secretary of Health and Human Services pursuant to 42 U.S.C. § 1396r-8.

3. "ASP" means Average Sales Price as defined in 42 U.S.C. § 1395w-3a(c).

4. "AWP" or "Average Wholesale Price" means any figure so formulated, categorized and/or periodically published by one or more pharmaceutical industry compendia, including the Drug Topics Red Book (the "Red Book"), American Druggist First Databank Annual Directory of Pharmaceuticals ("First Databank" or "Blue Book") and Medi-Span's Master Drug Database ("Medi-Span").

5. "Best Price" shall have the meaning ascribed to that term pursuant to 42 U.S.C. § 1396r-8(c)(1)(C).

6. "Complaint" means the Complaint filed on October 9, 2007 by Plaintiff in the United States District Court for the Southern District of Iowa, Case No. No. 4:07-cv-00461-JAJ-CFB, or any amendment thereto.

7. "CMS" means the United States Centers for Medicare and Medicaid Services and all its agents, employees, commissioners, and anyone else acting on its behalf and its sub-agencies and departments, any of its predecessors, including the Health Care Financing Administration, the Social Rehabilitative Service, and the Department of Health, Education & Welfare.

8. The term "Communication" means any form of written or oral communication and exchange, including, without limitation, letters, memoranda, electronic mail, voicemail,

telegrams, invoices, telephone conversations, face-to-face meetings, and other similar forms of communication or correspondence.

9. "Concern" or "Concerning" means directly or indirectly referring to, relating to, regarding, constituting, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, analyzing, evidencing, discussing, or evaluating.

10. "Describe" means to describe fully by reference to underlying facts, rather than by ultimate facts or conclusions of facts or law, and to particularize as to time, place, and manner.

11. The term "Document" has the same full meaning as construed by the Federal Rules of Civil Procedure and includes, without limitation, the original (or identical duplicate when the original is not available) and all non-identical copies and all electronically stored information.

12. "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.301.

13. "FDB" shall refer to the pharmaceutical data publishing service, First Data Bank, Inc.

14. "Federal Agencies" means CMS, Health Care Financing Administration and all its predecessors, including the Social Rehabilitative Service and the Department of Health, Education & Welfare, the United States Department of Health and Human Services, the Office of the Inspector General, or the United States Department of Justice and all their agents, employees, commissioners, and anyone else acting on their behalf.

15. "Findings" means any conclusions or statements of fact or rationale supporting a determination, proposal, regulation, or statute concerning reimbursement for any pharmaceutical product, including but not limited to findings pursuant to 42 C.F.R. § 447.333.

16. "FUL" means "Federal Upper Limit" and shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332.

17. "Generic Drug" shall mean drugs to which pharmaceutically and therapeutically equivalent drugs containing the same active ingredient exist.

18. "HCFA" refers to the Health Care Financing Administration.

19. "HHS" means the United States Department of Health and Human Services, including all its agents, employees, and anyone else acting on its behalf.

20. "Identify" when used in reference to a Document, means to provide, to the extent known, information about: (i) the type of Document; (ii) its general subject matter; (iii) the date of the Document; (iv) its author(s); and (v) each addressee. If any such Document was, but is no longer, in Your possession, custody or control, or in existence, state whether it: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of. Furthermore, in each instance, explain the facts and circumstances surrounding such disposition, identify the person(s) who authorized such disposition, and state the date or approximate date of such disposition.

21. "Identify" when used in reference to a Person, means to provide, to the extent known, (i) the person or entity's full name; (ii) present or last known address; (iii) phone number; and (iv) the present or last known place of employment.

22. "Identify" with respect to any entity other than a natural Person, means to provide all of the following information, to the extent known: (i) the full name or title thereof, and d/b/a, and its state of incorporation (where applicable); (ii) the principal place of business thereof; (iii) the nature or type of entity, if known; and (iv) the principal business thereof.

23. "Identify" with respect to oral communications means to give: (i) the communication medium; (ii) the date of such communication; (iii) the full name and current business and residential address of those who were present at each communication; and (iv) the substance and nature of each communication.

24. "IME" or "Iowa Medicaid" means the Iowa Medicaid Enterprise, the Division of Medical Services, and all their components, bureaus, predecessors and supervisory agencies, including the Iowa Department of Human Services ("DHS"), the Iowa Medical Assistance Program ("MAP") and all their agents, employees, commissioners, and anyone else acting on their behalf.

25. "MAC" or "Maximum Allowable Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 50.504 or any analogous state statute or regulation, and shall include but is not limited to any MAC used by a PBM or other third party who provided services to You or to Your Participants and Beneficiaries, and shall include any MAC which preceded the FUL instituted by statute in 1986.

26. "Medicaid" means the jointly funded federal and state health insurance program, enacted in 1965 under Title XIX of the Social Security Act to pay for the costs of certain health care expenses of eligible Beneficiaries.

27. "Medicaid Rebate" means any rebate paid pursuant to 42 U.S.C. § 1396r-8 or an agreement thereunder.

28. "Medicaid State Plan" shall mean a "State plan" as described in 42 C.F.R. § 447.333.

29. "Medical Assistance Programs" means any Medical Assistance Program wholly or partially funded by the State of Iowa, IME, or other state agency irrespective of whether the State seeks recovery of damages associated with such programs.

30. "Method for calculating" and "methodology" mean any fact, statistic, report, analysis or other source or factor taken into consideration by Plaintiff in providing its responses.

31. "MMCAP" means the Minnesota Multi-State Contracting Alliance for Pharmacy.

32. "NAMFCU" means the National Association of Medicaid Fraud Control Units.

33. "NASMD" means the National Association of State Medicaid Directors.

34. "NDC" means the unique 11-digit code assigned to each prescription drug product sold in the United States by the United States Food and Drug Administration, which identifies the drug manufacturer, product, and package size of each such drug product.

35. "OIG" means the Office of the Inspector General of the Department of Health and Human Services.

36. "Participant" or "Beneficiary" means a Person for whom You provide health insurance coverage, including policyholders and dependents, or any other health care or health benefits via any program.

37. "PBM" means pharmacy benefits manager.

38. "Person" means any natural person or any business, corporation, partnership, proprietorship, association, organization, governmental entity, group of Persons, or any other legal or governmental entity or association whatsoever.

39. "Plaintiff," "You," "Your," "State," or "Iowa" refers to the State of Iowa, including but not limited to the Department of Human Services, Governor's Office, Attorney General's Office, General Assembly and legislative agencies (including the Legislative Fiscal Bureau and Legislative Services Bureau), officials, agents, employees, commissions, boards, divisions, departments, agencies, instrumentalities, administrators and all other persons or entities acting on its behalf and/or involved in procuring prescription drugs or administering, overseeing, or monitoring any program (including Medicaid) or facility that furnishes prescription drugs or is responsible for reimbursement for prescription drugs.

40. "Provider" means any person that provides health care to any Participant or Beneficiary, or any Person to whom You provide reimbursement for drugs dispensed to a Participant or Beneficiary.

41. "Pricing Compendia" or "Publisher" means any pharmaceutical data publishing service, including but not limited to Red Book, First DataBank, Blue Book, and Medi-Span.

42. "Pricing data" means any information relating to the prices of pharmaceutical drug products, including but not limited to AAC, AWP, AMP, WAC, Best Price and/or FUL.

43. "Refer," "relate," and "relating to" mean in any way concerning, consisting of, containing, regarding, showing, involving, evidencing, or connected with, in any way, directly or indirectly, the subject matter of the Request, and is meant to include, among other Documents, Documents underlying, characterizing, supporting, now or previously attached or appended to, or used in the preparation of any Document called for by each Request.

44. "Reimbursement" means the amount of payment by Medicare or the Iowa Medical Assistance Programs to Providers for administering or dispensing pharmaceutical drug products to a beneficiary.

45. "Reimbursement Rate" or "Reimbursement Methodology" means the formula used to calculate the amount of payment designated by Medicare or Iowa Medicaid to reimburse healthcare Providers for administering or dispensing pharmaceutical drug products to a beneficiary.

46. "Subject Drugs" means the drugs that You attribute to Teva in Attachment B to the Complaint, for which You contend the AWP or WAC was inflated or manipulated, or upon which You otherwise contend that You are entitled to obtain relief (whether damages or other relief) in this lawsuit.

47. "URA" means the Unit Rebate Amount computed and sent to the State by the United States Centers for Medicare and Medicaid Services and/or any of its sub-agencies and

departments or its predecessors, including but not limited to the Health Care Financing Administration.

48. "Utilization Data" means the information that each State agency is required to report to drug manufacturers pursuant to 42 U.S.C. § 1396r-8(b)(2)(A).

49. "WAC" or "Wholesale Acquisition Cost" means a Manufacturer's list price for a drug to wholesalers or direct purchasers in the United States (not including prompt pay or other discounts, rebates or reductions in price) or any price periodically published as WAC by a Publisher, or WAC as used by You in the Amended Complaint or any amendment thereto.

## INSTRUCTIONS

1. Respond to each Request separately.

2. To the extent that the answer to any Request varies for any of the agencies or departments included within the definition of "You," each agency or department should answer separately.

3. In producing Documents and other materials, You are to furnish all Documents or materials in Your possession, custody or control, regardless of the physical location of the Document or thing, or whether such Documents or materials are possessed directly by You or Your directors, officers, agents employees, representatives, managing agents, affiliates, investigators; or by Your attorneys or their agents, employees, representatives or investigators.

4. If You cannot answer a Request after exercising due diligence to secure the information to do so:

    (a) answer to the extent possible;

    (b) state the basis for Your inability to answer the remainder;

    (c) state whatever information or knowledge You have concerning the unanswered portion; and

    (d) specify the type of information that You contend is not available, the reason the information is not available to You and what You have done to locate such information.

5. Pursuant to the Federal Rules of Civil Procedure and all other applicable rule governing this Court, these requests are continuing in nature so as to require, whenever necessary, continuing production and supplementation of responses between the initial date for production set forth above and the end of trial.

10

6. In producing Documents, You are requested to produce the original of each Document requested, together with all non-identical copies and drafts of such Document. If the original of any Document cannot be located, a copy shall be produced in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

7. Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these Requests, or if such Documents are attached to Documents called for by these Requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluations or similar materials.

8. Unless otherwise specified, the Interrogatories below refer to the period of January 1, 1992 to December 31, 2005. If it is necessary to refer to a prior time to fully answer a particular request, please do so. This instruction is without prejudice to objections by Teva as to a different or identical date range cited by the State in its discovery requests.

9. Each Request seeks the requested Documents in their entirety, without abbreviation, redaction, or expurgation, including all attachments or other matters affixed to them.

10. All Documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business. If any Documents have been removed from the files in which they were found for purposes of producing them in response to these Requests, indicate for each Document the file(s) from which the Document(s) was (were) originally located.

11. If You object to any part of a Request, set forth the basis for Your objection and respond to all parts of the Request to which You do not object.

12. If You decline to answer all or part of a Request based on a claim of privilege or immunity:

    (a) answer to the extent possible, and

    (b) provide a description of the basis of the claimed privilege and all information necessary for Teva and the Court to assess the claim of privilege, including:

       (i) its date;

       (ii) its title;

       (iii) its author;

       (iv) its addressee;

       (v) all recipients copied;

       (vi) the specific privilege under which it is withheld;

       (vii) its general subject matter; and

       (viii) a description of it that You contend is adequate to support Your contention that it is privileged.

13. If any otherwise responsive Document was, but is no longer, in existence or in Your possession, custody, or control, identify the type of information contained in the Document, its current or last known custodian, the location/address of such Document, the identity of all persons having knowledge or who had knowledge of the Document and describe in full the circumstances surrounding its disposition from Your possession or control.

14. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all responses that otherwise might be construed to be outside of its scope.

16. When the word "including" is followed by one or more specific examples, those specific examples do not limit in any way the Documents requested, for such examples are illustrative, not exhaustive.

17. These Requests are directed to the State of Iowa and any Iowa office, agency, or body that may be in possession of responsive Documents.

## DOCUMENTS REQUESTED

1. All Documents consulted, retrieved, used or referred to in responding to Teva's First Set of Interrogatories to Plaintiff State of Iowa.

2. Except for Communications with counsel in connection with this lawsuit, all Documents reflecting or concerning Communications between Teva and the State relating to Teva's pharmaceutical products, drug purchasing, pricing, reporting, utilization, rebates, and/or reimbursement.

3. All Documents reflecting or concerning the difference between the reimbursement amount paid to a Provider and a Provider's costs to purchase any Teva Subject Drug.

4. All Documents concerning any requests by You for information concerning price, costs, or reimbursement for any of the Teva Subject Drugs, including but not limited to any responses to such requests, contracts, memoranda of understanding, agreements, Provider

contracts, or Communications concerning the calculation, monitoring, tracking, processing, or payment of claims for any of the Teva Subject Drugs.

5. Documents showing any MAC or FUL available for each of the Teva Subject Drugs, including the period of time during which it was in effect.

6. All Documents constituting, concerning or relating to Your deliberation and/or decision to set or not to set MACs for any of the Teva Subject Drugs.

7. All Documents constituting, concerning or relating to Your deliberation and/or decision to request or not to request AMP data from Teva for its Subject Drugs, including all documents containing any AMP data for any Subject Drug and all documents concerning the calculation of an AMP from a URA.

8. All Documents containing a representation by Teva that You claim to be false or misleading.

9. All Documents, including communications, memoranda (internal and external), or analyses, concerning Medicaid Rebates for the Teva Subject Drugs, including but not limited to the following:

   (a) URA transactional data for the Teva Subject Drugs, whether received from CMS, HCFA or any other entity;

   (b) Your claims for rebates for the Teva Subject Drugs;

   (c) All communications between You and Teva concerning rebates on its Subject Drugs;

   (d) Your calculation of claims for Medicaid Rebates for the Teva Subject Drugs;

   (e) Documents reflecting rebates paid to You by Teva; and,

14

    (f)    Invoices for Medicaid Rebates sent to Teva for its Subject Drugs.

10. All Documents reflecting or concerning Communications between the State and any Provider or Publisher regarding the price or cost to the Provider of any of the Teva Subject Drugs.

11. All Documents concerning any discussion, hearing, conference, meeting, or other assembly with You from 1991 to the present in which dispensing fees, pricing data, drug reimbursement, drug utilization, and/or Medicaid Rebates were discussed for any of the Teva Subject Drugs, including all Documents concerning Your actual or potential contractual relationships with PBMs, Third-Party Administrators, Benefit Consultants, auditors, Wholesalers, Manufacturers, insurers, independent practice associations, retailers, mail-order pharmacies, Providers, trade associations, or lobbyists, where such relationships relate to reimbursement of, purchases of, or expenditures for the Teva Subject Drugs, including, but not limited to, agreements, requests for proposals, invoices, presentations, reports, analyses, reviews, correspondence, and comments submitted in response to public notices or proposals to change reimbursement methodologies.

12. All Documents concerning Federal Supply Schedule or Veterans' Affairs pricing for Teva Subject Drugs.

13. All Documents concerning comparisons of IME reimbursement for Teva Subject Drugs in the State to the acquisition costs of such prescription drugs of any other entity, including, but not limited to, providers, wholesalers, any other state agency or department, or any other state Medicaid programs.

14. All Documents concerning any research or price determinations, including drug-pricing files, made by IME or Iowa Medicaid's fiscal agent for the Teva Subject Drugs.

15. All Documents concerning communications between You and any Healthcare Management Organization, Benefit Consultant or PBM concerning reimbursement of the Teva Subject Drugs.

16. All communications between You - including Iowa Medicaid and its fiscal agents - and any person or entity, including, but not limited to, Providers, FDB, Redbook, Medi-Span, any Federal Agencies, NAMFCU, MMCAP, NASMD and any other State Medicaid Agency, regarding the price, including the Reimbursement Rate or Reimbursement Methodology, for any Teva Subject Drug.

17. All documents received from any of FDB, Medi-Span and Redbook, by the Plaintiff - including Iowa Medicaid and its fiscal agents - regarding the Reimbursement Rate or Reimbursement Methodology for any Teva Subject Drug.

18. All documents concerning or referring to Suggested Wholesale Price or SWP for any Teva Subject Drug.

19. For any Teva Subject Drug, all documents indicating, stating or otherwise concerning the fact that AWP does not represent an average price at which wholesalers acquire pharmaceutical products from manufacturers.

20. All documents that Iowa Medicaid, the Pharmaceutical and Therapeutics Committee, IME's fiscal agents, or any other entity or agency relied upon to determine whether any Teva Subject Drug should or should not be included in the Iowa PDL.

21. All Communications, including Communications to or from You, the Pharmaceutical and Therapeutics Committee, IME's fiscal agents, or any other entity or agency, concerning or relating to the factors considered in assessing whether to place any Teva Subject Drug on the Iowa PDL.

22. All documents reflecting the actual or estimated losses, damages, or alleged overpayments You made with respect to the Teva Subject Drugs as a result of Teva's alleged conduct, including Documents reflecting, containing or discussing: (i) the amount of damages; (ii) the methodology used to calculate or derive that amount; and (iii) all facts and Documents upon which You rely to support your claims as to the nature and extent of each category of damages.

23. All documents concerning actual or proposed supplemental rebates relating to any Teva Subject Drug, including but not limited to any discussions or analyses performed by You or on Your behalf concerning a request or solicitation of supplemental rebates, or implementation of any supplemental rebate program relating to Teva Subject Drugs.

DATED: February 27, 2009

Respectfully submitted,

/s/ Jennifer G. Levy
Jennifer G. Levy, Esq. (admitted *pro hac vice*)
Patrick M. Bryan, Esq. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

Counsel for Defendants
TEVA PHARMACEUTICALS USA, INC.
and NOVOPHARM USA, INC.

17

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 27th day of February 2009, a true and correct copy of the foregoing pleading was electronically served on all counsel of record by transmission to Lexis Nexis File & Serve.

              */s/ Jennifer G. Levy*
              Counsel for Defendants
              Teva Pharmaceuticals USA, Inc.
              and Novopharm USA, Inc.