# Exhibit 2



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File No.: 01-CV-12257-PBS<br>(original S. D. Iowa No. 4:07-cv-00461-JAJ-CFB) |
| THIS DOCUMENT RELATES TO:<br><br>*State of Iowa v. Abbott Laboratories, et al.* | Judge Patti B. Saris |

### DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND NOVOPHARM USA, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF, THE STATE OF IOWA

PLEASE TAKE NOTICE that Defendants Teva Pharmaceuticals USA, Inc. and Novopharm USA, Inc. (collectively "Teva"), by their undersigned counsel, hereby request, pursuant to Rule 33 of the Federal Rules of Civil Procedure, that Plaintiff State of Iowa ("Plaintiff") answer, under oath, the interrogatories served upon it herewith.

In answering the interrogatories, you are required not only to furnish such information which is in your possession, but also that in the possession of your attorneys, investigators, insurance carriers, or anyone else acting on your behalf.

PLEASE TAKE FURTHER NOTICE that the answers to the interrogatories must be served upon the undersigned no later than thirty (30) days after service hereof. These interrogatories shall be deemed to be continuing. Information sought by these interrogatories and obtained after you serve your answers must be disclosed to Teva by supplementary answers in accordance with Rule 26(e)(1) of the Federal Rules of Civil Procedure.

## DEFINITIONS

The terms used in these Interrogatories, regardless of capitalization, are defined as follows:

1. "IME" or "Iowa Medicaid" means the Iowa Medicaid Enterprise, the Division of Medical Services, and all their components, bureaus, predecessors and supervisory agencies, including the Iowa Department of Human Services ("DHS"), the Iowa Medical Assistance Program ("MAP") and all their agents, employees, commissioners, and anyone else acting on their behalf.

2. "Iowa PDL" shall refer to the preferred drug list considered, developed and/or implemented by Iowa Medicaid.

3. "AMP" means Average Manufacturer Price as reported to the Secretary of Health and Human Services pursuant to 42 U.S.C. § 1396r-8.

4. "Complaint" means the Complaint filed on October 9, 2007 by Plaintiff in the United States District Court for the Southern District of Iowa, Case No. No. 4:07-cv-00461-JAJ-CFB, or any amendment thereto.

5. "CMS" means the United States Centers for Medicare and Medicaid Services and all its agents, employees, commissioners, and anyone else acting on its behalf and its sub-agencies and departments, any of its predecessors, including the Health Care Financing Administration, the Social Rehabilitative Service, and the Department of Health, Education & Welfare.

6. The term "Communication" means any form of written or oral communication and exchange, including, without limitation, letters, memoranda, electronic mail, voicemail, telegrams, invoices, telephone conversations, face-to-face meetings, and other similar forms of communication or correspondence.

7. "Concern" or "Concerning" means directly or indirectly referring to, relating to, regarding, constituting, comprising, containing, setting forth, summarizing, reflecting, stating, describing, recording, noting, embodying, mentioning, studying, analyzing, evidencing, discussing, or evaluating.

8. "Describe" means to describe fully by reference to underlying facts, rather than by ultimate facts or conclusions of facts or law, and to particularize as to time, place, and manner.

9. "FUL" means "Federal Upper Limit" and shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332.

10. "HCFA" refers to the Health Care Financing Administration.

11. "Identify" when used in reference to a Document, means to provide, to the extent known, information about: (i) the type of Document; (ii) its general subject matter; (iii) the date of the Document; (iv) its author(s); and (v) each addressee. If any such Document was, but is no longer, in Your possession, custody or control, or in existence, state whether it: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of. Furthermore, in each instance, explain the facts and circumstances surrounding such disposition, identify the person(s)

who authorized such disposition, and state the date or approximate date of such disposition.

12. "Identify" when used in reference to a Person, means to provide, to the extent known, (i) the person or entity's full name; (ii) present or last known address; (iii) phone number; and (iv) the present or last known place of employment.

13. "Identify" with respect to any entity other than a natural Person, means to provide all of the following information, to the extent known: (i) the full name or title thereof, and d/b/a, and its state of incorporation (where applicable); (ii) the principal place of business thereof; (iii) the nature or type of entity, if known; and (iv) the principal business thereof.

14. "Identify" with respect to oral communications means to give: (i) the communication medium; (ii) the date of such communication; (iii) the full name and current business and residential address of those who were present at each communication; and (iv) the substance and nature of each communication.

15. "MAC" or "Maximum Allowable Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 50.504 or any analogous state statute or regulation, and shall include but is not limited to any MAC used by a PBM or other third party who provided services to You or to Your Participants and Beneficiaries, and shall include any MAC which preceded the FUL instituted by statute in 1986.

16. "Medicaid" means the jointly funded federal and state health insurance program, enacted in 1965 under Title XIX of the Social Security Act to pay for the costs of certain health care expenses of eligible Beneficiaries.

17. "Medicaid Rebate" means any rebate paid pursuant to 42 U.S.C. § 1396r-8 or an agreement thereunder.

18. "NDC" means the unique 11-digit code assigned to each prescription drug product sold in the United States by the United States Food and Drug Administration, which identifies the drug manufacturer, product, and package size of each such drug product.

19. "OIG" means the Office of the Inspector General of the United States Department of Health and Human Services.

20. "Participant" or "Beneficiary" means a Person for whom You provide health insurance coverage, including policyholders and dependents, or any other health care or health benefits via any program.

21. "PBM" means pharmacy benefits manager.

22. "Person" means any natural person or any business, corporation, partnership, proprietorship, association, organization, governmental entity, group of Persons, or any other legal or governmental entity or association whatsoever.

23. "Plaintiff," "You," "Your," "State," or "Iowa" refers to the State of Iowa, including but not limited to the Department of Human Services, Iowa Medicaid Enterprise, Governor's Office, Attorney General's Office, General Assembly and legislative agencies (including the Legislative Fiscal Bureau and Legislative Services Bureau), officials, agents, employees, commissions, boards, divisions, departments, agencies, instrumentalities, administrators and all other persons or entities acting on its behalf and/or involved in procuring prescription drugs or administering, overseeing, or monitoring any program

(including Medicaid) or facility that furnishes prescription drugs or is responsible for reimbursement for prescription drugs.

24. "Provider" means any person that provides health care to any Participant or Beneficiary, or any Person to whom You provide reimbursement for drugs dispensed to a Participant or Beneficiary.

25. "Publication" or "Pricing Compendium" shall refer to the pharmaceutical data publishing service, First DataBank.

26. "Refer," "relate," and "relating to" mean in any way concerning, consisting of, containing, regarding, showing, involving, evidencing, or connected with, in any way, directly or indirectly, the subject matter of the Interrogatory, and is meant to include, among other Documents, Documents underlying, characterizing, supporting, now or previously attached or appended to, or used in the preparation of any Document called for by each Interrogatory.

27. "Reimbursement Rate" or "Reimbursement Methodology" means the formula used to calculate the amount of payment designated by Medicare or the Iowa Medicaid Enterprise to reimburse healthcare Providers for administering or dispensing pharmaceutical drug products to a beneficiary.

28. "Subject Drugs" means the drugs that You attribute to Teva in Attachment B to the Complaint, for which You contend the AWP or WAC was inflated or manipulated, or upon which You otherwise contend that You are entitled to obtain relief (whether damages or other relief) in this lawsuit.

29.  "URA" means the Unit Rebate Amount computed and sent to the State by the United States Centers for Medicare and Medicaid Services and/or any of its sub-agencies and departments or its predecessors, including but not limited to the Health Care Financing Administration.

## INSTRUCTIONS

1.  The responses to each of these Interrogatories shall include all knowledge and information available to You or subject to Your reasonable inquiry, access, or control, including all information in the actual or constructive possession of You, Your attorneys, investigators, agents, employees, experts retained by You or Your agents, attorneys, or other representatives or anyone else acting on Your behalf, including Your counsel in this case.

2.  To the extent that the answer to any Interrogatory varies for any of the agencies or departments included within the definition of "You," each agency or department should answer separately.

3.  Unless otherwise specified, the Interrogatories below refer to the period of January 1, 1992 to December 31, 2005.  If it is necessary to refer to a prior or later time period to fully answer a particular Interrogatory, please do so.  This instruction is without prejudice to objections by Teva as to a different or identical date range cited by the State in its discovery requests.

4.  If You cannot answer all or part of an Interrogatory after exercising due diligence to secure the full information to do so:

       (a)      Answer to the extent possible;

       (b)      State the basis of Your inability to answer the remainder;

       (c)      State whatever information or knowledge You have concerning the unanswered portion; and

       (d)      Specify the type of information that You contend is not available, the reason the information is not available to You, and what You have done to locate such information.

5.      If you decline to answer all or part of an Interrogatory on the grounds of privilege or immunity:

       (a)      Answer to the extent possible, and

       (b)      State the specific grounds for not answering in full and the facts that You contend will allow Teva and the Court to assess the claim of privilege or immunity.

6.      To the extent that you consider any Interrogatory objectionable:

       (a)      Identify the portion claimed to be objectionable and state the nature and basis of the objection;

       (b)      Identify any information withheld pursuant to such objections in sufficient detail to permit the Court to determine whether that information falls within the scope of such objections; and

       (c)      Please answer the remainder of the Interrogatory.

7.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of an Interrogatory all responses that otherwise might be construed to be outside of its scope.

8.      When the word "including" is followed by one or more examples, the specific examples do not limit in any way the information requested, for such examples are illustrative, not exhaustive.

9. Pursuant to the Federal Rules of Civil Procedure and all other applicable rule governing this Court, these Interrogatories are continuing in nature so as to require, whenever necessary, supplemental responses if You obtain further or different information after the date on which You provide responses.

10. When an Interrogatory asks You to "state the basis" of or for a particular claim, assertion, allegation, or contention, please:

    (a) Identify each and every Document (and, where pertinent, the section, article, or subparagraph thereof) which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the Interrogatory;

    (b) Identify each and every Communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the Interrogatory;

    (c) State separately the acts or omissions to act on the part of any Person (Identifying the acts or omissions to act by stating their nature, time, and place and Identifying the Persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the Interrogatory; and

    (d) State separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the Interrogatory.

11. The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular form.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify: (i) each Communication between You and Teva concerning the direct or indirect purchase of, pricing of, or reimbursement for any of Teva's pharmaceutical products; and (ii) the persons involved in each such Communication, as well as the date, form, and content of each such Communication.

**RESPONSE:**

**INTERROGATORY NO. 2:**

Identify each representation made by Teva that You claim to be false and/or deceptive, and for each such representation, describe with particularity how You relied upon it.

**RESPONSE:**

**INTERROGATORY NO. 3:**

Identify each person currently or formerly employed by the State of Iowa You allege was misled by Teva with respect to the actual prices of the Teva Subject Drugs and the manner in which they were misled.

**RESPONSE:**

**INTERROGATORY NO. 4:**

Identify and describe each instance in which You allege that Teva marketed or promoted the "spread" to an Iowa provider.

**RESPONSE:**

**INTERROGATORY NO. 5:**

Describe each and every step taken by You prior to and after the filing of the Complaint to ensure that You paid providers no more than their actual acquisition costs for the Teva Subject Drugs.

**RESPONSE:**

**INTERROGATORY NO. 6:**

For the period January 1, 1992 through December 31, 2005, Identify, by drug name, date and NDC, the amount You contend that You overpaid for any Subject Drug as a result of Teva's alleged misconduct, and the method utilized to calculate any such alleged overpayment.

**RESPONSE:**

**INTERROGATORY NO. 7:**

State all facts supporting Your allegation in Paragraph 84 of Your Complaint that Teva "foiled Iowa's attempt to reimburse providers at EAC by fraudulently misrepresenting the true prices at which [Teva] sell[s its] drugs and reporting false and inflated prices instead."

**RESPONSE:**

**INTERROGATORY NO. 8:**

State all facts supporting Your allegation in Paragraph 104 of Your Complaint that Teva's "failure to submit accurate pricing data to the publishing compendia can cause false and inflated FULs to issue."

**RESPONSE:**

11

**INTERROGATORY NO. 9:**

State all facts supporting Your allegation in Paragraph 106 of Your Complaint that Teva "manipulate[s its] own reported reimbursement prices and the secret deep discounts [it offers] in order to gain or maintain a competitive advantage in the market for [its] generic products."

**RESPONSE:**

**INTERROGATORY NO. 10:**

State all facts supporting Your allegation in Paragraph 141 of Your Complaint that Teva has "concealed [that it causes false and inflated AWPs to be published] to create spreads between actual cost and reimbursement amounts that permit [Teva] to influence market share."

**RESPONSE:**

**INTERROGATORY NO. 11:**

State all facts supporting Your allegation in Paragraph 569 of Your Complaint that "the Teva Group has known that it can promote its drugs by selling them at substantial undisclosed discounts, while at the same time maintaining false and inflated reimbursement prices."

**RESPONSE:**

**INTERROGATORY NO. 12:**

State all facts supporting Your allegation in Paragraph 570 of Your Complaint that the "Teva Group has instructed its sales force to market the spread for its products."

**RESPONSE:**

**INTERROGATORY NO. 13:**

Identify all Documents constituting, concerning or relating to Your deliberation and/or decision to request or not to request AMP data from Teva for any of its pharmaceutical products, and identify all employees and agents of the State who have had access to URAs or communicated with CMS regarding URA amounts for any of Teva's pharmaceutical products.

**RESPONSE:**

**INTERROGATORY NO. 14:**

For the period January 1, 1992 through December 31, 2005, for each Teva Subject Drug for which You reimbursed a pharmacy or other provider, Identify by NDC the basis for reimbursement (e.g., AWP, WAC, FUL, MAC, Usual & Customary), and the amount reimbursed.

**RESPONSE:**

**INTERROGATORY NO. 15:**

For the period January 1, 1992 through December 31, 2005, for each Teva Subject Drug, Identify whether You ever established a MAC, the rate established and the date of that MAC's applicability, and any calculations reviewed or relied upon in established each MAC rate.

**RESPONSE:**

**INTERROGATORY NO. 16:**

Identify all Communications, including Communications to or from You, the Pharmaceutical and Therapeutics Committee, IME's fiscal agents, or any other entity or agency, concerning or relating to whether a Teva Subject Drug should be placed on the Iowa PDL.

**RESPONSE:**


**INTERROGATORY NO. 17:**

Identify each Person who has personal knowledge of Your answers to each of the preceding Interrogatories and identify which Interrogatory response(s) each such individual has personal knowledge of.

**RESPONSE:**


DATED: February 27, 2009

Respectfully submitted,

*/s/ Jennifer G. Levy*
Jennifer G. Levy, Esq. (admitted *pro hac vice*)
Patrick M. Bryan, Esq. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

Counsel for Defendants
TEVA PHARMACEUTICALS USA, INC.
and NOVOPHARM USA, INC.

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2009, a true and correct copy of the foregoing pleading was electronically served on all counsel of record by transmission to Lexis Nexis File & Serve.

>*/s/ Jennifer G. Levy*
>Counsel for Defendants
>Teva Pharmaceuticals USA, Inc.
>and Novopharm USA, Inc.