Exhibit 4



24936987

Apr 29 2009
3:01PM

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| The State Of Iowa | ) MDL NO. 1456 ) Civil Action No. 01-12257-PBS |
| v. | ) |
| Abbott Laboratories, Inc., *et al.* | ) Judge Patti B. Saris ) ) ) ) ) ) |

## STATE OF IOWA'S OBJECTIONS AND RESPONSES TO DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND NOVOPHARM USA, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF, THE STATE OF IOWA

Pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court of Massachusetts and the relevant case management order, plaintiff The State of Iowa (hereinafter "plaintiff" or "Iowa") responds as follows to Defendants Teva Pharmaceuticals USA, Inc. and Novopharm USA, Inc.'s (hereinafter "Teva") First Set of Interrogatories to Plaintiff, the State of Iowa.

## GENERAL OBJECTIONS

1.     Plaintiff objects to the "definitions" and "instructions" to the extent they are vague, confusing and ambiguous.

2.      Plaintiff objects to the "definitions and "instructions" to the extent they seek to create obligations broader than what is required by the Federal Rules of Civil Procedure, the Local Rules of the Transferor Court and/or the local rules of this Court.

3.      Plaintiff objects to the interrogatories to the extent they seek information subject to the attorney-client, attorney work product, legislative, deliberative process, common interest, consulting expert, investigative or any other applicable evidentiary or other privilege, immunity or restriction.  Plaintiff's response or production of any document is without waiver of any privilege, claim of confidentiality or other objection.

4.      Plaintiff objects to the interrogatories to the extent that they seeks facts known to plaintiff's counsel rather than plaintiff.  Such facts obtained by counsel through their investigation constitute privileged attorney work-product.

5.      Plaintiff objects to the interrogatories to the extent they call for plaintiff to make legal conclusions.

6.      Plaintiff objects to the interrogatories to the extent they seek information and documents that defendants already have obtained or could obtain from third-parties on the grounds that production would be unduly burdensome, duplicative and expensive.

7.      Plaintiff reserves all objections or other positions it may have to the competency, relevance, materiality, privilege or admissibility of any information or documents produced in response to the interrogatories, or any and all other objections on grounds that would require the exclusion of any statement or information contained herein if the introduction of such evidence was sought at the time of trial, all of which objections and grounds are reserved and may be interposed at time of trial.  The fact that plaintiff has responded to any part or all of any

particular interrogatories is not intended to and shall not be construed to be a waiver by plaintiff of any objection to the relevance or admissibility of any evidence in this or any other action.

8.      Plaintiff objects to each interrogatory individually, and taken as a whole, to the extent that they are overbroad and unduly burdensome, and are designed to harass plaintiff and/or to deter the assertion of claims by plaintiff.

9.      Plaintiff objects to each interrogatory individually, and taken as a whole, on the grounds that the interrogatories are unduly burdensome to the extent they seek duplicative material.

10.     Plaintiff objects to the interrogatories to the extent they call for production of documents or information not relevant to the issues in this action or are not reasonably calculated to lead to the discovery of admissible evidence.

11.     Plaintiff objects to each interrogatory to the extent that it calls for production of information readily available to Teva from public or other sources that are more convenient, less burdensome or less expensive than recourse to plaintiff.

12.     In providing responses to each interrogatory, plaintiff does not in any way waive or intend to waive, but rather intends to preserve and is preserving:

        a)      All objections as to the competency, relevancy, materiality and admissibility of each interrogatory, the responses and their subject matter;

        b)      All objections as to the vagueness, ambiguity or other infirmity in each interrogatory and any objections based on the undue burden imposed by the interrogatory;

        c)      All rights to object on any ground to the use of any of the responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;

d)      All rights to object on any ground to any further interrogatory or other discovery requests involving or related to the subject matter of the interrogatory;

e)      The right to supplement responses to the interrogatories prior to trial;

f)      Any and all privileges and/or rights under the applicable Federal Rules of Civil Procedure, the Local Rules of the United States District Court of Massachusetts, the Local Rules of the Transferor Court and other statutes or the common law;

13.     Plaintiff's responses are based upon, and therefore limited by, plaintiff's present recollections.  Consequently, plaintiff reserves the right to make any changes in these responses if it appears that at any time, inadvertent errors or omissions have been made or additional information becomes available.

14.     Plaintiff reserves its right to object or answer to part or all of any particular interrogatory, and the fact that plaintiff may answer or object to part or all of any particular interrogatory should not be taken as an admission or acknowledgement of any fact set forth in, assumed by, or inferred from any such interrogatory.

15.     Plaintiff reserves the right to identify additional employees of the Iowa Medicaid Program who may be identified at a later time who possess some knowledge of the information sought in the interrogatories.

16.     Subject to and without waiving its objections, plaintiff will respond to interrogatories or portions thereof to the best of its present ability.  Because plaintiff has not completed its discovery of the facts pertaining to this action or its preparation of this case for trial, plaintiff reserves its right to supplement or amend its responses based upon any facts, documents, or other evidence that may develop or come to its attention at a later time.

17.     Any information or documents supplied in response to these Interrogatories are for use in this litigation and for no other purpose.

18.     All of plaintiff's general objections are incorporated into each of the specific responses below.

## SPECIFIC OBJECTIONS

1.     These Interrogatories includes numerous subparts in violation of the Iowa CMO and the Federal Rules of Civil Procedure.  The CMO provides:  "For purposes of this paragraph, each subpart of a discovery request shall count as a separate request."  *See* Iowa CMO, Discovery ¶ 10(A) at p. 5.  *See also* Fed. R. Civ. Pro. 33(a)(1).  These interrogatories contain many more the 17 that Teva purports to include.

2.     This suit is brought exclusively on behalf of the Iowa Medicaid Program. Plaintiff objects to the definitions of "Plaintiff", "You", "your", "Iowa" "and other variants" on the grounds that said definitions are overly broad, cumulative, unduly burdensome, and impose discovery obligations that are beyond the scope of plaintiff's obligations under the Federal Rules of Civil Procedure, and to the extent that they seek to impose on plaintiff the obligation to respond for, or produce documents maintained by, Iowa's citizens, "all other citizens or entities", other branches or agencies of the Iowa State Government not involved in the operation of the Iowa Medicaid program.  Plaintiff also objects on the grounds that persons "acting on its behalf," insofar as it concerns activity not related to Medicaid prescription drug reimbursement; "procuring prescription drugs"; and "furnishing prescription drugs" are not relevant to any claims in the Complaint and are therefore not reasonably calculated to lead to the discovery of admissible evidence.

3.      All of plaintiff's specific objections are incorporated into each of the specific responses below.

## DUTY TO SUPPLEMENT

Plaintiff acknowledges its ongoing duty to supplement its responses to these interrogatories if and when it obtains additional relevant information.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

**Identify: (i) each Communication between You and Teva concerning the direct or indirect purchase of, pricing of, or reimbursement for any of Teva's pharmaceutical products; and (ii) the persons involved in each such Communication, as well as the date, form, and content of each such Communication.**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad insofar as it is not confined to the relevant Iowa Medicaid providers, the drugs at issue in the Iowa AWP litigation or the claims at issue in this case.  To the extent that the interrogatory does not specify a time period, it is overbroad and unduly burdensome.  Plaintiff further objects on the grounds that the term "drug pricing" is vague, ambiguous, overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects on the grounds that defendants seek information that is already in their possession.  Plaintiff further objects to the extent this interrogatory seeks information that is subject to the legislative, deliberative process, common interest or other applicable privilege.

Subject to and without waiver of the aforesaid objections: plaintiff is in the process of producing documents responsive to this interrogatory.

**INTERROGATORY NO. 2:**

   **Identify each representation made by Teva that You claim to be false and/or deceptive, and for each such representation, describe with particularity how You relied upon it.**

**RESPONSE:**

   Plaintiff objects to this interrogatory on the grounds that it is unduly burdensome in that the case involves millions of false representations and Teva is already in possession of all of them, insofar as Teva controls the published AWP and other published prices for their drugs. Teva knows, far better than Iowa and particularly given the early stage of discovery, who within Teva set and reported the false prices throughout the entire relevant time period. Plaintiff further objects to the extent the interrogatory seeks information subject to the common interest or other applicable privilege. Plaintiff further objects to the extent that this interrogatory calls for a legal conclusion.

   Subject to and without waiver of the aforesaid objections: contrary its legal obligations, Teva caused prices to be published in the pricing compendia, such as First DataBank, Medi-Span and Redbook, that were unfair, false, misleading and inflated. Teva reported these unfair, false, misleading and inflated prices from at least 1992 to the present. Plaintiff contends that *each time* Teva caused an unfair, false, misleading and inflated AWP to be published it made a false representation, and *each time* the AWP was used for reimbursement was a violation. Teva made these representations knowing that Iowa Medicaid calculated reimbursements to relevant providers based upon the reported AWPs and that Iowa was using the published prices to estimate providers' acquisition costs as required by federal law. Teva cannot argue that it was not aware of Iowa's Medicaid reimbursement formula as it was obligated by law to be aware of it. *See Massachusetts v. Mylan Labs., Inc.*, 2008 WL 5650859, at * 25 (D. Mass. Dec. 23, 2008)

("Furthermore, having entered into the rebate agreements, the defendants were required, as a matter of law, to familiarize themselves with the legal requirements, standards and procedures of the Medicaid program.  These include the procedures and legal requirements applicable to reimbursements.") (internal citations omitted).

Furthermore, Teva is improperly attempting to shift the burden on plaintiff.  Teva had a legal obligation to publish or cause to be published true and accurate prices upon which it knew plaintiff would rely (*see id.*), and it should not have been plaintiff's burden to evaluate the accuracy of the published prices.  Plaintiff will respond further to this interrogatory once the necessary discovery is completed.

**INTERROGATORY NO. 3:**

**Identify each person currently or formerly employed by the State of Iowa You allege was misled by Teva with respect to the actual prices of the Teva Subject Drugs and the manner in which they were misled.**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad and unduly burdensome and harassing insofar as it seeks the names of "each person" affected by a scheme that began at least as early as 1992 and continues to the present.  Plaintiff further objects to the extent the interrogatory seeks information about persons employed by "the State of Iowa".  As articulated in the Specific Objections above, the plaintiff in this action is specifically limited to the Iowa Medicaid Program. Plaintiff responds only on behalf of the Iowa Medicaid Program. Plaintiff objects further on the grounds that the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects further on the grounds that the interrogatory is vague and confusing.

Subject to and without waiver of the aforesaid objections: plaintiffs' complaint makes clear that Iowa was statutorily required to calculate Medicaid drug reimbursements based on defendant's published prices. It is indisputable that Teva's published WACs and AWPs were not tethered in any way to Teva's actual prices to its customers and did not otherwise reflect Teva's actual prices to its customers.  It is also indisputable that the Court has found that both AWP and WAC are to be construed according to their plain meaning.

**INTERROGATORY NO. 4:**

**Identify and describe each instance in which You allege that Teva marketed or promoted the "spread" to an Iowa provider.**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad insofar as it is not confined to the relevant Iowa Medicaid providers, the drugs at issue in the Iowa AWP litigation or the claims at issue in this case.  Plaintiff further objects on the grounds that Teva seeks information that it already possesses.  Plaintiff further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects on the grounds that it is unduly burdensome in that the case involves millions of instances in which Teva marketed the spread to Iowa providers, and Teva knows, far better than Iowa and particularly given the early stage of discovery, when its employees marketed the spread.  Plaintiff further objects on the grounds that this interrogatory is a premature request for information at this stage in the proceedings, at the very beginning of discovery, and plaintiff will rely on documents and material it has not yet received from Teva.

Subject to and without waiving the aforesaid objections: Teva caused to be published AWPs that neither reflected an average nor included relevant discounts such as contract pricing, rebates, administrative fees, free goods and other financial incentives offered by Teva.  Teva manipulated or "marketed" the spreads between these AWPs and the prices at which its subject drugs were available in the marketplace by a variety of techniques, including selling its drugs to providers based on the profit to be made due to the spread between reimbursement of AWP and cost, and secretly offering discounts, rebates or drugs at nominal prices, maintaining and/or raising its AWP while lowering the actual cost.  Plaintiff contends that Teva marketed the spread *each time* it reported, published or caused an AWP to be published while providing discounts, rebates or other incentives that were not incorporated into or reflected in the reported AWP, in violation of the Office of Inspector General Guidelines.  Plaintiff's ability to respond more thoroughly to this interrogatory is limited by the incomplete production of responsive information from Teva and the fact that responsive information is particularly within Teva's control.  Plaintiff will supplement this response if and when additional information becomes available.

**INTERROGATORY NO. 5:**

**Describe each and every step taken by You prior to and after the filing of the Complaint to ensure that you paid providers no more than their actual acquisition costs for the Teva Subject Drugs.**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad insofar as it is not confined to the time period at issue nor the relevant Iowa Medicaid providers.  Plaintiff further objects on the grounds that the Medicaid reimbursement rate is determined by the Iowa State

Legislature, and to the extent that the interrogatory seeks information subject to the legislative and deliberative process privileges, given that the process of developing policies, regulations and rules regarding reimbursement of drug purchases is an inherently pre-decisional and policy-based process.   Plaintiff further objects to Teva's improper attempt to shift the burden on plaintiff.   Teva published AWPs knowing that Iowa Medicaid calculated reimbursements to relevant providers based upon the reported AWPs and that Iowa was using the published prices to estimate providers' acquisition costs as required by federal law.   Teva cannot argue that it was not aware of Iowa's Medicaid reimbursement formula as it was obligated by law to be aware of it.   *See Massachusetts v. Mylan Labs., Inc.*, 2008 WL 5650859, at * 25 ("Furthermore, having entered into the rebate agreements, the defendants were required, as a matter of law, to familiarize themselves with the legal requirements, standards and procedures of the Medicaid program.   These include the procedures and legal requirements applicable to reimbursements.") (internal citations omitted).   Teva had a legal obligation to publish or cause to be published true and accurate prices upon which Teva knew plaintiff would rely.

**INTERROGATORY NO. 6:**

    **For the period January 1, 1992 through December 31, 2005, Identify, by drug name, date and NDC, the amount You contend that You overpaid for any Subject Drug as a result of Teva's alleged misconduct, and the method utilized to calculate any such alleged overpayment.**

**RESPONSE:**

    Plaintiff objects to this interrogatory to the extent that it is a premature and unreasonable request for information given the early stage of discovery.   Plaintiff further objects to the extent the request calls for the production of documents that are protected by the attorney work-product,

attorney-client, consulting expert or other applicable privilege.  Plaintiff further objects on the grounds that this will be the subject of expert reports and hence it is premature.  Plaintiff further objects on the grounds that it cannot calculate the extent of the overpayments until it learns the true cost to acquire the subject drugs, which information is in the possession of Teva, not yet plaintiff.

Subject to and without waiver of the aforesaid objections: plaintiff reimbursed claims for the subject drugs using a statutorily required formula that was based defendants reported prices.. To the extent those reported prices were unfair, false and misleading, plaintiff was damaged. Plaintiff contends that any alleged overpayment is the difference between what plaintiff paid based on the manufacturer's false reported prices  and what plaintiff would have paid had Teva honestly and accurately reported the prices for its drugs to the pricing compendia.  Plaintiff is unable to respond further to this interrogatory until it obtains all of Teva's transactional data files.

**INTERROGATORY NO. 7:**

**State all facts supporting Your allegation in Paragraph 84 of Your Complaint that Teva "foiled Iowa's attempt to reimburse providers at EAC by fraudulently misrepresenting the true prices at which [Teva] sell[s its] drugs and reporting false and inflated prices instead."**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is a premature and unreasonable request for information given the early stage of discovery.  Plaintiff further objects that the interrogatory is overbroad and unduly burdensome insofar as it seeks "all facts" of a scheme that began at least as early as 1992 and continues to the present.

Subject to and without waiver of the aforesaid objections: Teva was obligated to report accurate prices to the pricing compendia for use as the basis for Medicaid reimbursement. *See Massachusetts v. Mylan Labs., Inc.*, 2008 WL 5650859 at * 25 (D. Mass. Dec. 23, 2008). Teva cannot argue that it was not aware that Iowa based its reimbursement upon prices reported by the pricing compendia as it was obligated by law to be aware of it. *See id.* ("Furthermore, having entered into the rebate agreements, the defendants were required, as a matter of law, to familiarize themselves with the legal requirements, standards and procedures of the Medicaid program. These include the procedures and legal requirements applicable to reimbursements.") (internal citations omitted). Thus, by publishing false and inflated prices upon which it knew plaintiff would rely, it prevented plaintiff from reimbursing providers at a valid EAC, such as would have been generated had Teva reported accurate prices.

**INTERROGATORY NO. 8:**

State all facts supporting Your allegation in Paragraph 104 of Your Complaint that Teva's "failure to submit accurate pricing data to the publishing compendia can cause false and inflated FULs to issue."

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is a premature and unreasonable request for information given the early stage of discovery. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome insofar as it seeks "all facts" of a scheme that began at least as early as 1992 and continues to the present.

Subject to and without waiver of the aforesaid objections: as Teva knows, CMS sets the FUL based on defendants' WACs and AWPs, which defendants set and controlled. To the extent

the WACs and AWPs that Teva reported for its drugs were unfair, false and misleading, those WACs and AWPs caused inflated FULs to issue.

**INTERROGATORY NO. 9:**

State all facts supporting Your allegation in Paragraph 106 of Your Complaint that Teva "manipulate[s its] own reported reimbursement prices and the secret deep discounts [it offers] in order to gain or maintain a competitive advantage in the market for [its] generic products."

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is a premature and unreasonable request for information given the early stage of discovery. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome insofar as it seeks "all facts" of a scheme that began at least as early as 1992 and continues to the present.

Subject to and without waiver of the aforesaid objections: Teva knowingly caused the publication of prices for the subject drugs which, as Teva knew, Iowa was statutorily required to use to calculate Medicaid drug reimbursement amounts.  Teva knew that most third party payors (private or public) used its published prices to calculate reimbursement.  Teva knew that its published prices were not tethered to actual prices. Teva  incentivized providers to purchase their generic products based on the spread between the providers' net cost for the product and the reimbursement amount.

**INTERROGATORY NO. 10:**

State all facts supporting Your allegation in Paragraph 141 of Your Complaint that Teva has "concealed [that it causes false and inflated AWPs to be published] to create spreads between actual cost and reimbursement amounts that permit [Teva] to influence market share."

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is a premature and unreasonable request for information given the early stage of discovery. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome insofar as it seeks "all facts" of a scheme that began at least as early as 1992 and continues to the present.

Subject to and without waiver of the aforesaid objections: plaintiff directs Teva to its response to Interrogatory No. 9.

**INTERROGATORY NO. 11:**

**State all facts supporting Your allegation in Paragraph 569 of Your Complaint that "the Teva Group has known that it can promote its drugs by selling them at substantial undisclosed discounts, while at the same time maintaining false and inflated reimbursement prices."**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is a premature and unreasonable request for information given the early stage of discovery. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome insofar as it seeks "all facts" of a scheme that began at least as early as 1992 and continues to the present.

Subject to and without waiver of the aforesaid objections: plaintiff directs Teva to its response to Interrogatory No. 9.

**INTERROGATORY NO. 12:**

**State all facts supporting Your allegation in Paragraph 570 of Your Complaint that the "Teva Group has instructed its sales force to market the spread for its products."**

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is a premature and unreasonable request for information given the early stage of discovery.  Plaintiff further objects that the interrogatory is overbroad and unduly burdensome insofar as it seeks "all facts" of a scheme that began at least as early as 1992 and continues to the present.

Plaintiff further objects that it is unable at this early stage of the litigation to document every single time, place or Teva employee involved in marketing the spread on Teva's pharmaceuticals.  The details of Teva's marketing scheme are known only to Teva and are contained in Teva's own documents, and at this stage in the litigation plaintiff is unable to state "all facts" concerning Teva's instructions to its sales force.  Furthermore, it is not feasible and unduly burdensome to list all specific acts in a scheme that spanned over at least 14 years and continues to the present.  As discovery continues to go forward in this action, plaintiff will seek additional evidence of Teva's marketing the spread on its products, both through discovery and depositions of Teva's employees.

**INTERROGATORY NO. 13:**

**Identify all Documents constituting, concerning or relating to Your deliberation and/or decision to request or not to request AMP data from Teva for any of its pharmaceutical products, and identify all employees or agents of the State who have had access to URAs or communicated with CMS regarding URA amounts for any of Teva's pharmaceutical products.**

**RESPONSE:**

Plaintiff objects to this interrogatory to the extent that it is duplicative of  Document Request # 7 of Defendant Teva Pharmaceuticals USA, Inc.'s First Set of Requests for Production to Plaintiff, the State of Iowa.  Plaintiff further objects on the grounds that it is overbroad insofar

as it is not confined to the drugs at issue in the Iowa AWP litigation.  Plaintiff further objects on

the grounds that the phrase "constituting, concerning or relating to" is overbroad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff objects further to the extent the request calls for the production of documents that are

protected by the attorney-client, attorney work-product or other applicable privilege.  Plaintiff

further objects to the extent the request calls for the production of data that is already in Teva's

own possession.  Plaintiff further objects to the extent the request implies, improperly and

contrary to law, that Iowa was somehow obliged to use the confidential URAs to reverse

engineer defendants' AMPs or to otherwise use the confidential URAs for any purpose.  *See*

*Massachusetts v. Mylan Labs., Inc.*, 2008 WL 5650859, at * 23 (D. Mass. Dec. 23, 2008).

Plaintiff further objects on the grounds that this interrogatory is not reasonably calculated to lead

to the discovery of admissible evidence insofar as URAs are not used as a basis for

reimbursement and are not part of Iowa's reimbursement formula, and are not relevant to any

claim or defense in this litigation which concerns defendants' obligations to report accurate

prices to the pricing compendia for use as the basis for Medicaid reimbursement.  *See id.* at * 25.


**INTERROGATORY NO. 14:**

  **For the period January 1, 1992 through December 31, 2005, for each Teva Subject Drug for which You reimbursed a pharmacy or other provider, Identify by NDC the basis for reimbursement (e.g., AWP, WAC, FUL, MAC, Usual & Customary), and the amount reimbursed.**


**RESPONSE:**

  Plaintiff objects to this interrogatory on the grounds that it is overbroad insofar as it is not

confined to the relevant Iowa Medicaid providers.  To the extent this interrogatory requires

plaintiff to organize and inventory its reimbursement for every subject drug over a 14 year period, it is unduly burdensome.  Plaintiff further objects on the grounds that plaintiff has produced Medicaid claims data that shows the exact reimbursement amount for every drug. Teva is aware of when drugs were subject to the FUL, plaintiff is providing all defendants with a historic SMAC list, and Teva is aware of its AWPs and thus can make the calculation itself.

**INTERROGATORY NO. 15:**

**For the period January 1, 1992 through December 31, 2005, for each Teva Subject Drug, Identify whether You ever established a MAC, the rate established and the date of that MAC's applicability, and any calculations reviewed or relied upon in established [sic] each MAC rate.**

**RESPONSE:**

Plaintiff objects on the grounds that SMACs are not relevant to any claim in the complaint as plaintiff is not pursuing claims for reimbursement based on the SMAC, nor to any defense stated by defendants.  Therefore, inquiries regarding SMAC-based reimbursements are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the aforesaid objections: plaintiff is providing defendants with a list of the drugs that were subject to the SMAC during the relevant time period.  Teva is more than capable of reviewing the list and identify its own drugs.  Additionally, plaintiff sets the SMAC by conducting a yearly survey of roughly 500 pharmacies selected from all active Medicaid-participating pharmacies.  The SMAC is calculated as a percentage over the average cost of the pharmacists involved in this survey.  Plaintiff has produced invoices used by Myers & Stauffer, an outside contractor employed by plaintiff, to establish the SMAC.

**INTERROGATORY NO. 16:**

Identify all Communications, including Communications to or from You, the Pharmaceutical and Therapeutics Committee, IME's fiscal agent, or any other entity or agency, concerning or relating to whether a Teva Subject Drug should be placed on the Iowa PDL.

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that the phrase "any other entity or agency" is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff responds only on behalf of the Iowa Medicaid Program and objects to the extent that communication between or among any other entity or agency is irrelevant to this litigation and is equally available to Teva through the discovery and subpoena process. Plaintiff further objects to the extent this interrogatory calls for information not in the possession or control of the Iowa Medicaid Program.

Plaintiff further objects on the grounds that it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence given that, among other reasons, plaintiff is not pursuing claims for reimbursement related to the State supplemental Medicaid rebate program, nor is it relevant to any defense stated by Teva. Therefore, inquiries regarding the State supplemental Medicaid rebate program and the PDL are not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of the aforesaid objections: plaintiff is in the process of producing documents responsive to this interrogatory.

**INTERROGATORY NO. 17:**

Identify each Person who has personal knowledge of Your answers to each of the preceding Interrogatories and identify which Interrogatory response(s) each such individual has personal knowledge of.

**RESPONSE:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, insofar as it seeks the identify of "each Person" who is involved in any way in reimbursement for the Teva subject drugs.   Furthermore,  the Complaint alleges that Teva's unfair, misleading and fraudulent conduct was concealed from plaintiff by Teva. Subject to and without waiver of the aforesaid objections: the Iowa Medicaid Program employees most knowledgeable about Iowa's Medicaid program are:

- Eileen Creager, Bureau Chief, Iowa Medicaid Program, January 2002 – present; Pharmacy Point of Sale Unit Manager,  July 2004 – present

- Eugene I. Gessow, Director, Department of Human Services, September 2008 – present; Iowa Medicaid Director, June 2003 – September 2008

- Alisa Horn, Assistant to the Medicaid Director, November 2004 – present

- Amit Jain, Core Unit Programmer, July 2005 – present

- Dennis Janssen, Bureau Chief, Iowa Medicaid Program, June 1999 – present

- Joe Marenholz, Pharmacy Consultant for the Iowa Medicaid Program, August 1968 – January 2001

- Susan L. Parker, Pharm.D. Iowa Medicaid Pharmacy Consultant, January 2002 – present

- Amy Perry, Myers and Stauffer, LC, September 1991 – present; Account Manager for Provider Cost Audit and Rate Setting

- Sandra Pranger, R.Ph., Goold Health Systems (GHS) Account Manager, August 2004 – present; ACS State Healthcare 1999 – July 2004

- Robert Schlueter, ACS State Healthcare enrollment supervisor, June 97 – June 2005; Provider Services Enrollment Supervisor/Operations Manager, Policy Studies, Inc. (PSI), June 2005 – January 2009; Provider Services Account Manager, January 2009 – present.

- Martin B. Swartz, State Policy Specialist, Iowa Medicaid Program Manager, 1998 – present

Dated: April 29, 2009

        Respectfully submitted,

        TOM MILLER
        ATTORNEY GENERAL FOR
        THE STATE OF IOWA

By:    /s/ Joanne M. Cicala
        Joanne M. Cicala (JC 5032)
        Jocelyn R. Normand (JN 0651)

        KIRBY McINERNEY LLP
        Special Counsel to the State of Iowa
        825 Third Avenue, 16th Floor
        New York, New York 10022
        (212) 371-6600

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on the 29th day of April, 2009, she caused a true and correct copy of the State of Iowa's Objections and Responses to Defendants Teva Pharmaceuticals USA, Inc. and Novopharm USA, Inc.'s First Set of Interrogatories to Plaintiff, the State of Iowa to be delivered to counsel of record for defendants by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

/s/ Jocelyn R. Normand
Jocelyn R. Normand
Kirby McInerney LLP
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 371-6600