# Exhibit 59

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc.  v. Abbott Laboratories, Inc., et al.*, **Master Civil Action No. 01-12257-PBS, Subcategory Case No. 06-11337**

Exhibit to the January 15, 2010 Declaration of Philip D. Robben in Support of Defendants' Motion for Partial Summary Judgment
(202) 220-4158

Page 294

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3      - - - - - - - - - - - - - - x

 4     IN RE:  PHARMACEUTICAL        )  MDL NO. 1456

 5     INDUSTRY AVERAGE WHOLESALE    )  Master File No. 01-12257-PBS

 6     PRICE LITIGATION              )  Subcategory Case No. 06-11337

 7     ----------------------------)

 8     THIS DOCUMENT RELATES TO:    )  Hon. Patti B. Saris

 9     State of California, ex rel.)

10     Ven-A-Care v. Abbott          )

11     Laboratories, Inc., et al.  )  VOLUME II

12      - - - - - - - - - - - - - - x

13                      Thursday, September 24, 2009

14                        9:04 a.m. to 4:19 p.m.

15          Videotaped deposition of JEFFREY

16     LEITZINGER, Volume II, held at the law offices of

17     White & Case, 633 West Fifth Street, 19th Floor,

18     Los Angeles, California 90071-2007, the

19     proceedings being recorded stenographically by

20     Lisa O'Sullivan, California Certified Shorthand

21     Reporter No. 7822, RMR, CRR, and transcribed

22     under her direction.
```

Page 346

```
 1    responded to it.
 2           My opinion is, and this is pursuant to
 3    my assignment, that if manufacturers had set out
 4    to report AWPs that reasonably approximated the
 5    prices paid by providers to wholesalers, as best
 6    they could identify those prices based on the
 7    information they had, the prices in Figure 4
 8    represent my opinion as to what they would have
 9    come to.
10       Q.   Okay.  So you're not offering opinion
11    as to what -- in a but-for world, what a
12    manufacturer's obligational reporting would be or
13    what standard they would have had to have met in
14    this hypothetical world.
15           You're not opining on either of those,
16    correct, in terms of their price reporting, what
17    they would have had to do pursuant to any
18    particular standard, or what they understood that
19    standard to be, or what they thought their
20    obligations were in a world in which they
21    obviously thought certain things were different,
22    because you're looking at a different reporting
```

Page 347

1  practice?

2       MR. GLASER:  Objection.

3    A.   As I -- as I would understand it, the

4  obligations and the standards, it's not a

5  question of a but-for world.  Those obligations

6  and standard existed in the actual world.  I'm

7  not -- I'm not opining about what manufacturers

8  should have done to comport with those standards.

9    Q.   And you're not opining as to what those

10 obligations and standards even are?

11   A.   That's correct.

12   Q.   Okay.  So you're not opining as to what

13 the obligations and standards are, you're not

14 opining as to what manufacturers should have done

15 to comport with those standards or obligations,

16 correct?

17   A.   Correct.

18   Q.   What you are opining on is if

19 manufacturers had set out to report AWPs, lower

20 case, okay, to avoid that standard and

21 obligations point -- if manufacturers had set out

22 to report lower-case average wholesale prices

Page 348

```
 1    that reasonably approximated prices wholesalers
 2    charged their customers, then you would get the
 3    results you have in Exhibit 4 in your report; is
 4    that correct?
 5         A.   Yes, with one additional caveat.
 6         Q.   Yes, sir.
 7         A.   Based on the information that was
 8    available to the manufacturers.
 9         Q.   Okay.  And you include, in information
10    available to the manufacturer, the HDMA margins
11    that you use?
12         A.   Yes.  I regard that as a source of
13    information that would have been available to
14    them.
15         Q.   And that's information available to
16    Medicaid, correct?
17         A.   Yes.  I would assume that as well, yes.
18         Q.   And not a secret, that information?
19         A.   No.
20         Q.   Just like AWPs aren't a secret, right?
21         A.   The AWPs that have been reported over
22    time?
```

Page 506

```
 1   different set of reporting goals than presumably
 2   the ones they were following.  And without
 3   knowing what those are, I don't know how to
 4   answer that question.
 5         Q.   Okay.  And that's why you phrased it
 6   as, your calculation, just something they could
 7   have reported, to distinguish from what they
 8   would have done, which is not something you
 9   analyzed?
10         A.   Correct.
11              MR. GALLAGHER:  Okay.  Mark this as the
12   next exhibit, 12.
13              (Exhibit Leitzinger 012 is marked for
14   identification.)
15         Q.   BY MR. GALLAGHER:  We've marked as
16   Exhibit Leitzinger 12, Exhibit 2 from your Sandoz
17   expert report; is that right?
18         A.   Yes.
19         Q.   And this is your list of reviewed and
20   relied-upon materials?
21         A.   Yes.
22         Q.   Under "depositions" -- and I'm not
```