# Exhibit 61A

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc.  v. Abbott Laboratories, Inc., et al.*, **Master Civil Action No. 01-12257-PBS, Subcategory Case No. 06-11337**

Exhibit to the January 15, 2010 Declaration of Philip D. Robben in Support of Defendants' Motion for Partial Summary Judgment
(202) 220-4158

**APPENDIX E**

# Agency Comments


DEPARTMENT OF HEALTH & HUMAN SERVICES

Health Care Financing Administration

Deputy Administrator
Washington, D.C. 20201

DATE:     MAY 18 2001

TO:       Michael F. Mangano
          Acting Inspector General

FROM:     Michael McMullan
          Acting Deputy Administrator

SUBJECT:  Office of Inspector General (OIG) Draft Report: *"Cost Containment of HIV/AIDS Drug Expenditures"* (OEI-05-99-00611)

Thank you for the opportunity to comment on the above-referenced draft report. We appreciate OIG's efforts in comparing the amount that Medicaid reimburses for HIV/AIDS drugs to the prices paid by other government purchasers. We look forward to working with OIG on this and other issues pertinent to the Medicaid drug rebate program.

OIG offers several options in each recommendation for the Health Care Financing Administration (HCFA) to examine as potential means to lower Medicaid expenditures on antiretroviral drugs. We are in agreement with one option within each recommendation, and for legal reasons, we disagree with the remaining options. Our comments are as follows:

OIG Recommendation

For the 16 HIV/AIDS drugs examined, the Health Care Financing Administration should review the current reimbursement methodology and work with states to find a method that more accurately estimates pharmacy acquisition cost.

- Develop safeguards to protect Medicaid from average wholesale price manipulations.

HCFA Response
We agree, and believe that we already comply with this recommendation. While there are problems with the validity of the average wholesale price (AWP) and using it to estimate acquisition cost, we believe the states are given authority under current law to address this issue. Section 42 CFR 447.301 defines estimated acquisition costs as the state agency's "best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler." States continue to retain responsibility for establishing these rates for drugs, and for developing and implementing any necessary safeguards.

The report also suggests that HCFA provide clear guidelines for acceptable calculations that will assist states in maintaining Medicaid's responsiveness to the pharmaceutical marketplace. It is further suggested that we reinforce these guidelines by requiring a more frequent reporting of

Page 2- Michael F. Mangano

payment assurances by states. As section 42 CFR 447.333 requires, states must submit in their state plans, a description of "the agency's payment methodology for prescription drugs." We believe our regulations are sufficiently clear and that no further guidelines are necessary. In addition, as previously noted, states clearly retain the responsibility to establish payment methodologies for prescription drugs and to modify them as the marketplace changes. We encourage states to be proactive in monitoring the pharmaceutical marketplace, and to submit state plan amendments to HCFA, as necessary, to reflect changes in methodology as precipitated by the marketplace. However, we do not believe Federal price controls are the answer.

The report mentions that HCFA is working with state Medicaid programs to implement a revised AWP methodology that the Department of Justice has established with First Databank. We would note that the revised methodology only involves a limited set of drugs and not the set of drugs described in this report.

- Create national estimated acquisition cost for states based upon the average manufacturer price (AMP).

HCFA Response
We disagree. The current law precludes us from disclosing AMP, and this methodology is not workable on a drug-by-drug basis without such disclosure. The restrictions in section 1927(b)(3)(D) of the Social Security Act (the Act) are as follows:

"Notwithstanding any other provision of law, information disclosed by manufacturers or wholesalers under [section 1927] is confidential and shall not be disclosed by the Secretary...in a form which discloses the identity of a specific manufacturer or wholesaler, [or] prices charged for drugs by such manufacturer or wholesaler...."

Given these provisions, it would be problematic for either HCFA or the States to establish a reimbursement methodology based on confidential drug prices.

- Share AMP data with states so that they can accurately set Medicaid reimbursement rates.

HCFA Response
We disagree. Again, AMP data are confidential and cannot be shared with the states for these rate-setting purposes. Without disclosing the AMPs for specific drugs, we do not believe the recommendation could be implemented. However, we agree to examine the current dispensing fee as part of our state plan amendment review process, and we will do so whenever a state proposes a fee change in order to ensure that the state sets a reasonable fee as required by regulation.

OIG Recommendation
The HCFA should initiate a review of Medicaid rebates for the 16 HIV/AIDS drugs examined.

Page 3- Michael F. Mangano

- Increase the rebate percentage of AMP.

#### HCFA Response
Current legislation precludes HCFA from making any changes to the rebate percentage of AMP. We will include this recommendation when we consider legislative changes for the Medicaid program.

- Base the rebates on AWP rather than AMP.

#### HCFA Response
We disagree. Current law precludes HCFA from making any changes to the rebate percentage of AMP. Our response to the OIG report "*Need to Establish Connection Between the Calculation of Medicaid Drug Rebates and Reimbursement for Medicaid Drugs*" (A-06-97-0052) provides a more detailed description of the issues surrounding this recommendation.

Attachment

Page 4- Michael F. Mangano

**Technical Comment**

Page 4, third paragraph: the characterization of the best price calculation is not accurate and should be revised. Section 1927(c)(1)(C) of the Act defines "best price" as the lowest price available from the manufacturer to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States, excluding: (1) any prices charged to the Indian Health Service, the Department of Veteran Affairs, the Department of Defense, the Public Health Service (PHS), and PHS-covered entities; (2) any prices charged under the Federal Supply Schedule; (3) any prices used under state pharmaceutical assistance program prices; and (4) any depot and single award contract prices. The characterization on page 4 fails to recognize all the exclusions set forth in the statute.

**APPENDIX F**

# Related Office of Inspector General Report Summaries

| Need to Establish Connection Between the Calculation of Medicaid Drug Rebates and Reimbursement for Medicaid Drugs (A-06-97-00052) ||
|---|---|
| **Findings** | **Recommendations** |
| Manufacturers use inconsistent methods to calculate AMP. Using AWP in place of AMP could have resulted in 1.15 billion more in drug rebates for 100 brand name drugs in each CY of 1994 through 1996. | Submit a legislative proposal requiring rebates to be based upon AWP. |
| There is no direct financial connection between the calculation of drug rebates and reimbursements to pharmacies | Establish safeguards to ensure that manufacturers do not raise AWP if a proposal is enacted. |
| Requiring drug manufacturers to pay rebates based on AWP would reduce the administrative burden at HCFA and manufacturers. | Study other viable alternatives to the current program of using AMP to calculate the Medicaid rebates such as the establishment of a flat percentage of manufacturers gross sales. |

| Medicaid Pharmacy: Actual Acquisition Cost of Generic Prescription Drug Products (A-06-97-00011) ||
|---|---|
| **Findings** | **Recommendations** |
| Pharmacies pay an average of 42.5 percent less than AWP for generic drugs sold to Medicaid beneficiaries. | HCFA[11] should work to ensure that States reimburse the ingredient portion of Medicaid drugs in a manner more consistent with the findings of this report |
| If reimbursement had been based on the estimates of this report, Medicaid could have saved $145.5 million for CY 1994 and 1995 for 200 drugs. | HCFA should study any of the other factors, such as dispensing fees, which they believe could significantly impact pharmacy reimbursement. |

---

[11] HCFA is the acronym for the Health Care Financing Administration. In June 2001, the Health Care Financing Administration was renamed the Centers for Medicare and Medicaid Services (CMS).

| Medicaid Pharmacy: Actual Acquisition Cost of Prescription Drug Products for Brand Name Drugs (A-06-97-00030) ||
|---|---|
| Findings | Recommendations |
| The actual acquisition cost for brand name drugs is estimated to be a national average of 18.3 percent below AWP. | HCFA should work to ensure that States reimburse the ingredient portion of Medicaid drugs in a manner more consistent with the findings of this report |
| If reimbursement had been based on the estimates of this report, Medicaid could have saved $225 million for 100 drugs in CY 1994. | HCFA should study any of the other factors, such as dispensing fees, which they believe could significantly impact pharmacy reimbursement |

| Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of CA, D.C., DE, FL, MD, MO, MT, NE, NJ, NC, VA (A-06-95-00062 through A-06-95-00072) (This nationwide audit resulted in 11 separate, State-specific reports.) ||
|---|---|
| Findings | Recommendations |
| The estimates of the extent that AWP exceeded pharmacy purchase invoice prices for brand name drugs and generic drugs were: | The State Agencies should consider the results of their audit in determining any future changes to pharmacy reimbursement. |

| State | Brand Name | Generic |
|---|---|---|
| CA | 17.5% | 41.4% |
| DC | 17.3% | 43.8% |
| DE | 19.3% | 37% |
| FL | 20.2% | 41.5% |
| MD | 18.7% | 41.9% |
| MO | 18.5% | 42.5% |
| MT | 16.2% | 48.5% |
| NC | 16.9% | 45.2% |
| NE | 18.7% | 44.9% |
| NJ | 19.8% | 42.5% |
| VA | 17.2% | 45.1% |

| Medicaid Drug Rebates: The Health Care Financing Administration Needs to Provide Additional Guidance to Drug Manufacturers to Better Implement the Program (A-06-91-00092) ||
|---|---|
| **Findings** | **Recommendations** |
| Manufacturers' calculations of AMP are inconsistent. | HCFA should survey manufacturers to identify the variations in determining AMP and develop a more specific policy for manufacturers. |
| There are significant differences among manufacturers' policies on the OIG's right of access to company records. | Establish requirements which provide for unrestricted access by Federal oversight agencies to manufacturer's records pertaining the rebate program |
| There are significant differences among manufacturers in the length of time records relating to drug rebates are retained. | Establish requirements which direct drug manufacturers to retain rebate records for a period of 2 years. |

**APPENDIX G**

# Related Office of Inspector General Reports

Excessive Medicare Payments for Prescription Drugs (OEI-03-97-00290)

Medicare Reimbursement of Albuterol (OEI-03-00-00311)

Medicare Reimbursement of End Stage Renal Disease Drugs (OEI-03-00-00020)

Need to Establish Connection Between the Calculation of Medicaid Drug Rebates and Reimbursement for Medicaid Drugs (A-06-97-00052)

Medicaid Pharmacy: Actual Acquisition Cost of Generic Prescription Drug Products (A-06-97-00011)

Medicaid Managed Care and HIV/AIDS (OEI-05-97-00210)

Medicaid Pharmacy: Actual Acquisition Cost of Prescription Drug Products for Brand Name Drugs (A-06-96-00030)

Review of Pharmacy Acquisition Costs for Drugs Reimbursed Under the Medicaid Prescription Drug Program of _____
California Department of Health Services (A-06-95-00062)
Montana Dept. Of Public Health and Human Services (A-06-95-00068)
Florida Agency for Health Care Administration (A-06-95-00065)
North Carolina Department of Human Resources (A-06-95-00071)
Delaware Department of Health and Social Services (A-06-95-00063)
Virginia Department of Medical Assistance (A-06-95-00072)
New Jersey Department of Human Services (A-06-95-00070)
Nebraska Department of Social Services (A-06-95-00069)
Missouri Department of Social Services (A-06-95-00067)
District of Columbia Department of Human Services (A-06-95-00064)
Maryland Department of Health and Mental Hygiene (A-06-95-00066)

Medicaid Drug Rebates: The Health Care Financing Administration Needs to Provide Additional Guidance to Drug Manufacturers to Better Implement the Program (A-06-91-00092)

Medicaid Drug Rebates: Inaccurate Reporting of Medicaid Drug Data by Pharmacies (A-06-91-00056)

Medicaid Drug Rebates: Improvements Needed in the Health Care Financing Administration's Procedures to implement the Medicaid Drug Rebate Program (A-06-91-00102)

**APPENDIX H**

## End Notes

1. Federal HIV/AIDS Spending: A Budget Chartbook. Fiscal Year 2000. The Henry J. Kaiser Family Foundation.

2. National Center for HIV, STD and TB Prevention, Division of HIV/AIDS Prevention, Centers for Disease Control and Prevention, "HIV/AIDS Among US Women: Minority and Young Women at Continuing Risk."

3. Owens, J., Chief, Medicaid Program Integrity, State of Florida, "New Approaches to Combat Fraud and Abuse in the Medicaid Prescribed Drug Program." Presented at Medicaid Drug Rebate Program Conference, Salt Lake City, September 2000.

4. 42 USC 1396r-8(d) regulates and defines the states' rights to restrict drugs or to impose preauthorization requirements.

5. 42 CFR 447.301

6. National Pharmaceutical Council, "Pharmaceutical Benefits Under State Medical Assistance Programs" 1999, p. 4-57.

7. Section 1927(c)(1)(C) of the Social Security Act defines "best price" as the lowest price available from the manufacturer to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States, excluding: (1) any prices charged to the Indian Health Service, the Department of Veteran Affairs, the Department of Defense, the Public Health Service (PHS), and PHS-covered entities; (2) any prices charged under the Federal Supply Schedule; (3) any prices used under state pharmaceutical assistance program prices; and (4) any depot and single award contract prices.

8. Centers for Disease Control and Prevention's HIV/AIDS Surveillance Report

9. Federal Ceiling prices limit the pharmaceutical prices paid by the Department of Veterans' Affairs, Department of Defense, Public Health Service and the Coast Guard.

10. The full complexity of these formulas are not represented. Only the basic elements have been included in order to more vividly portray the fundamental differences between the various formulas. For instance, the Medicaid rebate is actually the greater of 15.1 percent of AMP or AMP minus the manufacturer's "Best Price".

11. Veteran's Health Care Act of 1992, Title VI, Sec. 603(h)(5)

12. [SSA 1927] 42 USC Sec. 1396r-8(k)K1)

13. State Medicaid Manual, Part 6, Section 6305.1

14. Massachusetts Medicaid agency pays a dispensing fee of $2.50 but beneficiaries pay a $.50 copayment. Thus, the pharmacy receives $3.00 per prescription.

15. The 25 percent is based upon a total expenditure calculation that we made using data provided by each State for expenditures on each drug in our sample. Our survey also asked States to estimate their total spending on antiretrovirals, and this survey question yielded a lower total expenditure estimate. The $51 million savings represents 28 precent of this lower estimated expenditure total.

16. National Center for HIV, STD and TB Prevention, Division of HIV/AIDS Prevention, Centers for Disease Control and Prevention, "HIV/AIDS Among US Women: Minority and Young Women at Continuing Risk."

17. Indianapolis Star. "Director Proposes Cuts in Medicaid" by Kevin Corcoran. January 24, 2001.

18. This is an estimate based on people with HIV/AIDS who are in regular care. Most of these people rely on public sector insurance programs -- estimates range from 68 percent to 83 percent. Bozzette, S.A., et al., "The Care of HIV-infected Adults in the United States", New England Journal of Medicine, Vol. 339, No. 26, 1998.

19. "Need to Establish Connection Between the Calculation of Medicaid Drug Rebates and Reimbursement for Medicaid Drugs" (A-06-97-00052), Attachment 2.

20. 42 CFR 447.333

21. 42 USC 1396r-8(b)(3)(D)

22. 60 FR 48442

23. The full complexity of the formula is not represented here, but it is explained fully in the Background. The rebate formula also accounts for "Best Price" and an inflation indexing methodology.

24. 42 USC 1396r-8(b)(3)(D)

25. 60 FR 48442

26. "Need to Establish Connection Between the Calculation of Medicaid Drug Rebates and Reimbursement for Medicaid Drugs" (A-06-97-00052), Attachment 2.