# EXHIBIT L

Page 199

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

--oOo--

IN RE PHARMACEUTICAL INDUSTRY

AVERAGE WHOLESALE PRICE

LITIGATION

_____/

THIS DOCUMENT RELATES TO        MDL No. 1456

State of California, ex rel.    Civil Action:

Ven-A-Care v. Abbott            01-12257-PBS

Laboratories, Inc., et al.

_____/


--oOo--

WEDNESDAY, OCTOBER 22, 2008

--oOo--

VIDEOTAPED DEPOSITION OF

CRAIG MILLER - VOLUME II

--oOo--


Reported By:   INA C. LeBLANC, CSR No. 6713

**Page 316**

1  reimbursed for?
2      A.  That's correct.
3      Q.  And that URA would -- should in each
4  instance reflect one-tenth of AMP?
5      A.  Yes.
6          MR. BENNETT:  No more questions.
7
8              EXAMINATION
9  BY MS. BERWANGER:
10     Q.  Again, for the record, my name is Lara
11 Berwanger.  I represent Sandoz Inc.
12         Mr. Miller, I believe that you
13 testified earlier today that you had some
14 conversations with Kevin Gorospe about whether
15 California compared AMP or URA as to any other
16 pricing information.
17     A.  Yes.
18     Q.  And from your conversations with him,
19 you determined that California did not compare
20 AMPs or URAs to any other pricing information,
21 correct?
22     A.  Correct.

**Page 317**

1      Q.  Are you familiar with the term AWP?
2      A.  Yes.
3      Q.  Based on your conversation with Mr.
4  Gorospe, is it fair to say that California did
5  not compare AMP or URA information to AWP?
6      A.  In everything but a training that Kevin
7  had done for us where AWP was listed as 100 and
8  AMP, in this example, was listed as 80, and I
9  just assume that's a generally known percentage
10 difference between the two figures.
11     Q.  So you assume it's generally known that
12 AWP is higher than AMP?
13     A.  Yes.
14     Q.  And aside from that training material
15 that I believe was an exhibit to your last
16 deposition --
17     A.  Yes.
18     Q.  -- to your knowledge, there have been
19 no other calculations or comparisons done between
20 AMPs or URAs and AWP?
21     A.  Correct.
22     Q.  I'm going to put in front of you some

**Page 318**

1  documents that we went over at your last
2  deposition.  These are documents marked Miller
3  Exhibit 7 through Miller Exhibit 10.
4          Sorry.  I only have one copy of these.
5          Do you recall seeing these at your last
6  deposition?
7      A.  Yes.
8      Q.  For the record, these are
9  communications from Geneva Pharmaceuticals, which
10 is the former name of my client, Sandoz Inc., to
11 the State of California, correct?
12     A.  Yes.
13     Q.  And I believe you agreed with me at
14 your last deposition that based on these letters,
15 California received AMPs directly from Geneva
16 Pharmaceuticals from 1992 through 1996; is that
17 correct?
18     A.  I need to review this to see the dates
19 here.
20     Q.  Sure.  Take your time.
21     A.  1992, '94, and 1995, 1996 -- yes.
22     Q.  And I believe that at your last

**Page 319**

1  deposition you agreed with Mr. Robben that AMPs
2  were to represent a price generally paid by
3  manufacturers to -- I'm sorry.  Scratch that.
4          I believe at your last deposition you
5  agreed with Mr. Robben that AMPs represented a
6  price paid by wholesalers to manufacturers for
7  their drugs; is that correct?
8      A.  Correct.
9      Q.  So if California had compared --
10 scratch that.
11         Is it fair to say, based on your
12 conversation with Kevin Gorospe, that California
13 never compared Sandoz AMPs that FDB published --
14 that First Data Bank published for Sandoz during
15 the period 1992 to 1996?
16     A.  Yeah.  I so stated.
17     Q.  And is it fair to say that if
18 California had compared the AMPs for Sandoz
19 products from 1992 to 1996 to the AWPs reported
20 in First Data Bank for Sandoz, that it would have
21 found that the AWPs were higher than the AMPs?
22     A.  I've been told that the AWPs should be