UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | MDL No. 1456 |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* Civil Action No. 06-11337 | ) ) ) ) ) | Civil Action No. 01-12257-PBS Subcategory No. 06-11337-PBS |
| | ) ) | Hon. Patti B. Saris |

**MOTION TO DISALLOW DEFENDANT'S NEW EXPERT OPINIONS**

Plaintiffs ask that the Court disallow at the Daubert hearing the new opinions, exhibits and related analysis first disclosed by defendants after the close of business on Friday evening and on Saturday morning, January 15-16, 2010, together with the related documentation disclosed on January 13, 2010. These opinions and exhibits do not simply update or supplement existing analysis (and are not responsive to the supplemental nine-state analysis prepared by Dr. Duggan.) Instead, Abbott's experts have introduced completely new theories which appear to have even been prepared approximately one month after the first two days of the instant Daubert hearing and after this Court stated that no such new analyses would be permitted at the hearing. More importantly, these new analyses are very misleading and will cloud rather than shed light on the pertinent issues.

In large part, the new analyses are rooted in "***standard deviation***" calculations

rooted in almost a quarter of a million calculations used in Dr. Duggan's analysis. The new analyses are also based on an interpretation of the pattern of the data. However, an examination of the expert reports and deposition testimony of Abbott's experts reveal absolutely no reference whatsoever to standard deviations or pattern analysis. The reasoning behind these "standard deviation" and pattern analysis based opinions are therefore completely unknown to the United States and would be unveiled for the first time at the Daubert hearing. Thus, neither the United States' counsel, nor Dr. Duggan, is in a position to fully review, analyze or understand these completely new, complex opinions, especially without the benefit of written defense opinions, as are required by Fed. R. Civ. Proc. 26(a)(2). As a result, the Court will receive a skewed presentation which will not fairly or properly advance the Court's understanding of the pertinent issues.

Abbott's conduct is also in contravention of the Court's express admonition at the Daubert hearing. At the Daubert hearing on December 11, 2009, this Court concluded the proceedings for the day with the clear statement that there should be no new charts, that new charts would not be allowed into evidence and that no related examination would be allowed. See transcript excerpt attached as Exhibit 1. Abbott counsel responded negatively when the Court inquired as to whether there were "any new studies or anything that your experts have done?" In sum, the defendant's Daubert exhibits were to have been limited to what was provided at the prior hearing, plus what Abbott counsel

described as "a little bit on this very new stuff."[1]

In addition, these new analyses and theories are largely based upon information provided to Abbott Laboratories in June 2008, over 18 months ago. It would be unfair and prejudicial for the defendants to be allowed to rely upon these new, complex analyses conceived of and prepared during a break in the Daubert hearing, after having the benefit of the direct and cross-exam of the United States' expert and the comments of the Court, ten months beyond all expert discovery deadlines, after all expert reports, depositions and other discovery have been completed, and after the testimony of Dr. Duggan has concluded.

**ARGUMENT**

**I. The New Exhibits and Related Analysis Should be Stricken**

The exhibits and related analyses do not update or supplement existing analysis. They have never before been disclosed and, therefore, the exhibits, related analyses and opinions should be disallowed. Fed. R. Civ. Proc. 26(a). They also violate the Court's directives stated at the hearing that there should be no new studies or exhibits.

**A. Allowing the New Analysis and Exhibits Would Prejudice the United States and Taint the Daubert Hearing**

Many of these misleading new analyses are complex. One of the supporting spreadsheets has 29 separate worksheets. They include thousands of calculations

---

[1] Consistent therewith, this motion does not seek to strike Abbott's two-page exhibit addressing the analysis of the nine additional states. This motion also does not seek to strike the **20** other exhibits proffered by Abbott on January 4, **five of which are also completely new**. Those exhibits largely address opinions and analyses previously disclosed, or directly respond to the analysis of the nine additional states. The new opinions, exhibits and related analysis addressed in this motion are quite different in nature because the underlying analyses are new and the reasoning of the opinions to be based thereon is unknown.

3

directed at almost a quarter of a million different calculations prepared by Dr. Duggan (and provided to Abbott in June of 2008.) The meaning of these new analyses is not obvious, and the reasoning of the opinions to be based upon them has not been disclosed. A one-sided "ambush" presentation of these new analyses will not properly advance the Court's understanding of the underlying issues. This contravenes the letter and spirit of the Court's scheduling order and Fed.R.Civ.P. 26(B) and (C)(ii).

For example, one new document is an Excel Spreadsheet titled "Medicaid_Diff_Frac_Variation.xlsx" which uses Dr. Duggan's 20,000 fraud ratios for each of the 44 NDCs for each of the 44 quarters for each state[2] and assembles them into a giant, 1,758 row conglomeration. For each of those 1,758 rows, it then performs ten different calculations (identified in column headings such as STDEV, RELATIVE STDEV, MEAN MINUS ONE STDEV, MEAN PLUS ONE STDEV, etc.) thereby generating another 20,000 new results. Exhibit 2 is a copy of the conglomerated data and the new results (without the supporting data).

Abbott then cherry-picks about 300 of these 20,000 new computations to create several charts. However, the demonstrative charts do nothing more than articulate the expert's ultimate conclusion that there is "significant" variability in the fraud for each drug and state. The United States has not been given any explanation of the underlying reasoning or standards applied to reach that conclusion. Until the moment of their

---

[2] Although the spreadsheet used the results of the additional nine states that Dr. Duggan reviewed to supplement his ten state analysis, no version of this spreadsheet based on the ten original states previously existed. Abbott cannot claim to be simply updating a pre-existing analysis.

testimony at the Daubert hearing, there is no way to know the reasoning behind these new analyses and charts. Allowing this new, misleading material at the Daubert hearing will not advance a fair consideration of the underlying science, but will only provide a skewed presentation of Abbott's theory behind this last minute, undisclosed analysis. The demonstrative exhibits based on the new analyses are attached as Exhibit 3.

### B. Abbott Received Dr. Duggan's Expert Report 19 Months Ago and Deposed Dr. Duggan for Five Days

Abbott had the benefit of a leisurely 9 month review of Dr. Duggan's expert report combined with 4 full days of his deposition testimony before having to submit its own expert reports, and then had ten more months combined with a fifth day of deposition with Dr. Duggan before the Daubert hearing. In these circumstances, it is especially appropriate that the preparation and presentation of brand new analysis during the course of the Daubert hearing should not be allowed.

### CONCLUSION

The Court was very clear: no new charts. A one-sided presentation of the misleading new analyses proffered by Abbott will not advance a fair consideration of the relevant issues. The additional exhibits and related analyses should be disallowed at the Daubert hearing.

Respectfully Submitted,

For the United States of America,

| | |
|---|---|
| CARMEN M. ORTIZ<br>UNITED STATES ATTORNEY | TONY WEST<br>ASSISTANT ATTORNEY GENERAL |
| George B. Henderson, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>Phone: (617) 748-3272<br>Fax: (617) 748-3971 | Joyce R. Branda<br>Daniel R. Anderson<br>Renée Brooker<br>Justin Draycott<br>Rebecca Ford<br>Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Phone: (202) 307-1088<br>Fax: (202) 307-3852 |
| JEFFREY H. SLOMAN<br>UNITED STATES ATTORNEY<br>SOUTHERN DISTRICT OF FLORIDA | |
|    /s   Mark Lavine<br>Mark A. Lavine<br>Ann St.Peter-Griffith<br>Special Attorneys for the Attorney General<br>99 N.E. 4th Street, 3rd Floor<br>Miami, FL 33132<br>Phone: (305) 961-9003<br>Fax: (305) 536-4101 | For the relator, Ven-A-Care of the Florida Keys, Inc.<br><br>   /s James J. Breen<br>James J. Breen<br>Alison W. Simon<br>The Breen Law Firm, P.A.<br>3350 S.W. 148th Avenue, Suite 110<br>Miramar, FL 33027<br>Tel: (954) 874-1635<br>Fax: (954) 874-1705 |

January 19, 2010

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

I certify that the moving party communicated with counsel for the defendant in an effort to resolve the dispute referred to in this motion, and that the parties have not been able to reach agreement with respect thereto.

     /s   Mark Lavine
     Mark A. Lavine

CERTIFICATE OF SERVICE

       I hereby certify that I have this day caused an electronic copy of the above "**MOTION TO DISALLOW DEFENDANT'S NEW EXPERT OPINIONS**" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                        /s/ Mark Lavine

January 19, 2010