587 F.3d 49
**(Cite as: 587 F.3d 49)**

H

United States Court of Appeals,
First Circuit.
UNITED STATES of America ex rel. Gordon F.B.
ONDIS, Relator, Appellant,
v.
CITY OF WOONSOCKET Et Al., Defendants, Appellees.
No. 08-2389.

Heard Sept. 15, 2009.
Decided Nov. 18, 2009.

**Background:** Relator brought qui tam action under False Claims Act (FCA) alleging that city and its mayor made false statements to Department of Housing and Urban Development (HUD) in connection with city's application for federal funds. After transfer, 480 F.Supp.2d 434, the United States District Court for the District of Rhode Island, Ernest C. Torres, J., 582 F.Supp.2d 212, dismissed complaint, and relator appealed.

**Holdings:** The Court of Appeals, Selya, Circuit Judge, held that:
(1) city's alleged misrepresentation that it would promote subsidized housing was publicly disclosed prior to relator's suit;
(2) Department of Housing and Urban Development's (HUD) production of documents in response to relator's Freedom of Information Act (FOIA) request constituted "administrative report";
(3) relator's claim was based on previous public disclosures; and
(4) relator's knowledge of city's misrepresentation was not direct or independent.

Affirmed.

West Headnotes

**[1] United States 393 ⚖︎122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases
In determining whether qui tam relator has carried his burden of negating False Claims Act's (FCA) public disclosure bar, court should consider: (1) whether there has been public disclosure of allegations or transactions in relator's complaint; (2) if so, whether public disclosure occurred in manner specified in the statute; and (3) if so, whether relator's suit is based upon those publicly disclosed allegations or transactions. 31 U.S.C.A. § 3730(e)(4).

**[2] Federal Courts 170B ⚖︎870.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk870 Particular Issues and Questions
                    170Bk870.1 k. In general. Most Cited Cases
When district court does not rule on pleadings alone but, rather, takes evidence in connection with motion to dismiss for want of subject matter jurisdiction, court's factual findings are reviewed for clear error.

**[3] Federal Courts 170B ⚖︎33**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, Determination and Waiver
                170Bk33 k. Affidavits and evidence in general. Most Cited Cases

**Federal Courts 170B ⚖︎34**

170B Federal Courts

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, Determination and Waiver
                170Bk34 k. Presumptions and burden of proof. Most Cited Cases

Proponent of federal jurisdiction bears burden of proving its existence by preponderance of evidence.

**[4] United States 393 €—122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

For purposes of False Claims Act's (FCA) public disclosure bar, public disclosure occurs when essential elements exposing particular transaction as fraudulent find their way into public domain, but disclosure must reveal both misrepresented state of facts and true state of facts so that inference of fraud may be drawn. 31 U.S.C.A. § 3730(e)(4).

**[5] United States 393 €—122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

In determining applicability of False Claims Act's (FCA) public disclosure bar, misrepresented state of facts and true state of facts may come from different sources, as long as disclosures together lead to plausible inference of fraud. 31 U.S.C.A. § 3730(e)(4).

**[6] United States 393 €—122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

Government's response to Freedom of Information Act (FOIA) request is act of "public disclosure," for purposes of False Claims Act's (FCA) public disclosure bar, because response disseminates, and thus discloses, information to members of public, and thus outside government's bailiwick. 5 U.S.C.A. § 552(a); 31 U.S.C.A. § 3730(e)(4).

**[7] United States 393 €—122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

City's alleged misrepresentation that it would promote subsidized housing was publicly disclosed prior to relator's qui tam suit, for purposes of False Claims Act's (FCA) public disclosure bar, where alleged misrepresentation was included in city's grant applications to United States Department of Housing and Urban Development (HUD), and relator discovered statement in HUD's response to his Freedom of Information Act (FOIA) request. 5 U.S.C.A. § 552(a); 31 U.S.C.A. § 3730(e)(4).

**[8] United States 393 €—122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

United States Department of Housing and Urban Development's (HUD) production of documents in response to relator's Freedom of Information Act (FOIA) request constituted "administrative report," for purposes of False Claims Act's (FCA) public disclosure bar, regardless of whether underlying document itself emanated from source enumerated in FCA. 5 U.S.C.A. § 552(a); 31 U.S.C.A. § 3730(e)(4).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**[9] United States 393 🗝️122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

For purposes of False Claims Act's (FCA) public disclosure bar, as long as relator's allegations are substantially similar to information disclosed publicly, relator's claim is "based upon" public disclosure, even if he actually obtained his information from different source. 31 U.S.C.A. § 3730(e)(4).

**[10] United States 393 🗝️122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

Relator's claim that city misrepresented that it would promote subsidized housing was based on previous public disclosures, for purposes of False Claims Act's (FCA) public disclosure bar, despite relator claim that he discovered alleged misrepresentation as result of his private investigation, where relevant allegations in relator's complaint bore substantial similarity to what was journalistically disclosed, and relator's claim that city misrepresented to United States Department of Housing and Urban Development (HUD) that it would welcome subsidized public housing was identical to disclosures made in HUD's Freedom of Information Act (FOIA) response. 5 U.S.C.A. § 552; 31 U.S.C.A. § 3730(e)(4).

**[11] United States 393 🗝️122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

Relator's knowledge of city's misrepresentation to United States Department of Housing and Urban Development (HUD) that it would promote subsidized housing was not direct or independent, for purposes of exception to False Claims Act's (FCA) public disclosure bar, despite relator's contention that his background and experience as developer of section 8 housing gave him unique insight into fraud that city was perpetrating, where relator's knowledge was derived from research into public records and review of publicly disclosed information. 31 U.S.C.A. § 3730(e)(4)(B).

**[12] United States 393 🗝️122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and actions therefor. Most Cited Cases

Merely because relator acts through agents does not necessarily render his knowledge indirect, for purposes of original source exception to False Claim Act's (FCA) public disclosure bar. 31 U.S.C.A. § 3730(e)(4)(B).

**[13] Federal Courts 170B 🗝️823**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk823 k. Reception of evidence. Most Cited Cases

District court's exclusion of testimony during evidentiary hearing in False Claims Act (FCA) proceeding was subject to review for abuse of discretion. 31 U.S.C.A. § 3729 et seq.

**[14] United States 393 🗝️122**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Claims and Other Offenses Relating to Claims
      393k122 k. Penalties and actions therefor. Most Cited Cases

District court did not abuse its discretion in qui tam action under False Claims Act (FCA) in declining to permit relator to introduce witnesses' testimony during evidentiary hearing to corroborate his claim that his expertise qualified him as original source, where proffered testimony could not have supported relator's claim of non-disclosure, and was irrelevant to relator's claim that his expertise brought him within FCA's original source exception to public disclosure bar. 31 U.S.C.A. § 3730(e)(4).

**\*51** Leon A. Blais, with whom Blais & Parent was on brief, for appellant.

**\*52** Michael B. Galvin, with whom Justin P. O'Brien and Dwyer & Collora LLP were on brief, for appellees.

Before TORRUELLA, SELYA and HOWARD, Circuit Judges.

SELYA, Circuit Judge.

Invoking the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, a local real estate developer brought a qui tam action against the City of Woonsocket, Rhode Island (the City), and Mayor Susan Menard. The developer claimed, in substance, that the City had defrauded the federal government by making false statements to the Department of Housing and Urban Development (HUD) when applying for federal grants.

Relying upon the FCA's public disclosure bar, the district court dismissed the action. The developer now appeals, raising questions of law not yet settled in this circuit regarding the operation of the public disclosure bar. We resolve those questions and, when all is said and done, affirm the dismissal of the action.

**I. BACKGROUND**

The relator, Gordon F.B. Ondis, directly or indirectly owns several multi-family residential complexes in Woonsocket. A number of the dwelling units in these complexes are classified as subsidized housing. Sometime in 2004, Mayor Menard visited one of the relator's properties and, according to the relator, threatened to do away with all section 8 housing.[FN1] The relator took umbrage and began to look into the City's housing policies. His avowed objective was to ascertain whether the City was reaping a harvest of HUD grants under false pretenses (specifically, by offering assurances that the City would promote subsidized housing programs when, in reality, it was trying to stifle those programs).

> FN1. "Section 8 housing" is a shorthand for housing subsidized by the federal government under the Housing Choice Voucher Program established pursuant to section 8 of the United States Housing Act of 1937 as amended, 42 U.S.C. § 1437.

In the course of this probe, the relator directed his employees to search public records, interview local developers and others with knowledge of the City's housing policies, and obtain documents submitted by the City to HUD.

The investigation revealed that, from 2000 to 2005, the City received roughly $15,000,000 in HUD grants for public works projects, social service programs, and affordable housing. The investigators obtained the City's grant applications through a Freedom of Information Act (FOIA) request. *See* 5 U.S.C. § 552. The applications trumpeted a five-year plan, which referred to preserving section 8 rent subsidies as a means of meeting the City's pressing need for affordable housing.

The relator also discovered (or so he alleges) that, during the same period, the City actually had followed a policy that tended to restrict the spread of subsidized housing. Almost all the specific instances that he identifies to support this thesis were previously disclosed in daily newspapers of general

circulation in Woonsocket, namely, the *Woonsocket Call* and the *Providence Journal.* The only additional data point unarguably came from the public domain-the records of a state-court suit brought by the City against two housing partnerships.

On February 16, 2005, the relator brought a qui tam action against the City and Mayor Menard in the United States District Court for the District of Massachusetts. After the federal government declined to intervene, *see* 31 U.S.C. § 3730(b)(4), the court transferred the **\*53** case to the District of Rhode Island. *United States ex rel. Ondis v. City of Woonsocket* (*Ondis I* ), 480 F.Supp.2d 434, 438 (D.Mass.2007).

The transferee court, in response to the defendants' motion to dismiss for want of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), conducted an evidentiary hearing. Based on the proof presented, the court dismissed the action. *United States ex rel. Ondis v. City of Woonsocket* (*Ondis II* ), 582 F.Supp.2d 212, 214 (D.R.I.2008). This timely appeal ensued.

## II. THE STATUTORY SCHEME

The FCA allows private persons, called relators, to bring qui tam actions on behalf of the United States against persons or entities who knowingly submit false claims to the federal government. 31 U.S.C. § 3730(b)(1). The United States has a right to intervene and assume primary responsibility for prosecuting the action. *Id.* § 3730(c)(1). If the United States declines to intervene, the relator may pursue the action on its behalf. *Id.* § 3730(b)(4). Either way, the relator is eligible to collect a portion of any damages awarded. *Id.* § 3730(d).

The FCA is hedged about with conditions. Among other things, it erects a jurisdictional bar, familiarly known as the public disclosure bar, which may block a putative qui tam action. *Id.* § 3730(e)(4). That bar is designed to foreclose qui tam actions in which a relator, instead of plowing new ground, attempts to free-ride by merely repastinating previously disclosed badges of fraud. *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.,* 579 F.3d 13, 26-27 (1st Cir.2009). To draw an analogy from the world of entomology, the bar seeks to prevent "parasitic" suits. *United States ex rel. McKenzie v. BellSouth Telecomms., Inc.,* 123 F.3d 935, 943 (6th Cir.1997).

In this way, Congress aspired to etch "a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *United States ex rel. S. Prawer & Co. v. Fleet Bank,* 24 F.3d 320, 327 (1st Cir.1994). For this purpose, Congress took pains to delineate the dimensions of the public disclosure bar:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

[1] Based on this prescription, we have formulated a multi-part inquiry for use in determining whether a relator has carried his burden of negating the ubiquity of the bar in a given case. In its initial stages, this formulation asks:

> (1) whether there has been public disclosure of the allegations or transactions in the relator's complaint; (2) if so, whether the public disclosure occurred in the manner specified in the statute; [and] (3) if so, whether the relator's suit is "based upon" those publicly disclosed allegations or transactions....

*United States ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 728 (1st Cir.2007). We conduct that multi-part inquiry here. If the answer to any one of these three

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

questions is in the negative, then the public disclosure bar drops out of the case. If, however, the answers to all three questions are in the affirmative, the relator still may dismantle the public disclosure bar by showing that he qualifies as an "original ***54** source" under 31 U.S.C. § 3730(e)(4)(B). *See Rost,* 507 F.3d at 728. We deal with this possibility separately. *See infra* Part III(D).

## III. DISCUSSION

[2] A district court's order of dismissal for want of subject matter jurisdiction ordinarily engenders de novo review. *Duxbury,* 579 F.3d at 19-20; *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 365 (1st Cir.2001). When the district court does not rule on the pleadings alone but, rather, takes evidence in connection with a motion to dismiss for want of subject matter jurisdiction, the court's factual findings are reviewed for clear error. *See Valentin,* 254 F.3d at 365; *cf. Foster-Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 147-48 (1st Cir.1995) (describing varying standards of review in analogous context).

[3] Federal courts, as courts of limited jurisdiction, must be "scrupulous in applying the tenets that define the limits of their subject matter jurisdiction." *Gabriel v. Preble,* 396 F.3d 10, 16 (1st Cir.2005). The proponent of federal jurisdiction bears the burden of proving its existence by a preponderance of the evidence. *See Campbell v. Gen. Dynamics Gov't Sys. Corp.,* 407 F.3d 546, 551 (1st Cir.2005); *see also* 31 U.S.C. § 3731(d).

With these guideposts in place, we embark on a sequential appraisal of the three *Rost* factors described above. Then, we take up the "original source" exception and a disputed evidentiary ruling.

### A. *Disclosure.*

We start with the question of whether, prior to commencement of this action, there was a public disclosure of the transactions chronicled in the relator's complaint.

[4][5] For the purpose of the FCA, public disclosure occurs when the essential elements exposing the particular transaction as fraudulent find their way into the public domain. *United States ex rel. Feingold v. AdminaStar Fed., Inc.,* 324 F.3d 492, 495 (7th Cir.2003); *United States ex rel. Springfield Term. Ry. Co. v. Quinn,* 14 F.3d 645, 654 (D.C.Cir.1994). "[T]he disclosure must reveal both the misrepresented state of facts and the true state of facts so that the inference of fraud may be drawn." *United States ex rel. Mistick PBT v. Hous. Auth. of Pittsburgh,* 186 F.3d 376, 385 (3d Cir.1999); *accord Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,* 276 F.3d 1032, 1044 (8th Cir.2002). The two states of facts may come from different sources, as long as the disclosures together lead to a plausible inference of fraud. *See United States ex rel. Poteet v. Medtronic, Inc.,* 552 F.3d 503, 512 (6th Cir.2009); *see also United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.,* 384 F.3d 168, 175 (5th Cir.2004).

Against this backdrop, our initial task is to determine whether both the City's alleged misrepresentation (that it would promote subsidized housing) and what the relator alleges was the City's true plan (that it would strive to curtail or eliminate subsidized housing) were sufficiently in the public domain to ground an inference of fraud.

The relator wisely concedes that the events disclosing the City's opposition to subsidized housing, which he contends reflected the City's actual housing policy, were publicized in widely circulated newspaper articles and, thus, were in the public domain. *See* Appellant's Br. at 8-9. He insists, however, that the City's insincere promise to promote subsidized housing was kept under wraps and never publicly ***55** disclosed. This, then, is the bone of contention.

This quandary turns on the fact that the City's promise to promote subsidized housing only became evident from HUD's response to the relator's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

FOIA request. Whether a response to a FOIA request constitutes a public disclosure within the purview of the FCA is a question of first impression in this circuit.[FN2] *See Rost,* 507 F.3d at 728 n. 5 (leaving the question open).

> FN2. There is a related, and equally novel, question as to whether a response to a FOIA request satisfies the second prong of the *Rost* formulation. We will return to that question shortly. *See infra* Part III(B).

Nevertheless, we do not write on a pristine page. Other courts have answered this question in the affirmative. *See, e.g., United States ex rel. Grynberg v. Praxair, Inc.,* 389 F.3d 1038, 1051 (10th Cir.2004) ("It is generally accepted that a response to a request under the FOIA is a public disclosure."); *Reagan,* 384 F.3d at 176 (similar); *Mistick,* 186 F.3d at 383 (similar). We agree with these courts.

[6] We have stated that the "public disclosure" requirement is satisfied when there is "some act of disclosure to the public outside of the government." *Rost,* 507 F.3d at 728. Responding to a FOIA request constitutes such an act. *See Mistick,* 186 F.3d at 383 (noting that, under the FOIA, " '[e]ach agency shall make available *to the public'* certain specified categories of information" (emphasis and alteration in original) (quoting 5 U.S.C. § 552(a))). The Supreme Court reached this conclusion in an analogous context. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108-09, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("[A]s a matter of common usage the term 'public' is properly understood as including persons who are FOIA requesters. A disclosure pursuant to the FOIA would thus seem to be most accurately characterized as a 'public disclosure'...."). Finding this reasoning easily transferable to the jurisprudence of the FCA, we hold that a response to a FOIA request is an act of public disclosure because the response disseminates (and, thus, discloses) information to members of the public (and, thus, outside the government's bailiwick).

[7] In this case, it is uncontested that the City's alleged misrepresentation was disclosed, prior to suit, in HUD's response to the relator's FOIA request. This fact, taken in conjunction with the publication of what the relator admits were the relevant indicia of the City's true housing policy in the local press, means that all the essential elements of the alleged fraud were in the public domain before the relator started suit. We may, therefore, check the first *Rost* factor off the list.

### B. *Source.*

The FCA's public disclosure bar further requires that the disclosure emanate from a source specified in the statute. *See* 31 U.S.C. § 3730(e)(4)(A); *see also United States ex rel. LeBlanc v. Raytheon Co.,* 913 F.2d 17, 20 (1st Cir.1990).

[8] The airing of the events that are said to reflect the City's true housing policy, published in the *Woonsocket Call* and the *Providence Journal,* constitutes a disclosure "from the news media" and, thus, a disclosure from a listed source. *See* 31 U.S.C. § 3730(e)(4)(A). It is less clear whether the disclosure of the City's allegedly false promise, which came about through the FOIA response, falls within the compendium of sources listed in section 3730(e)(4)(A). Although this circuit has not yet answered that question, two ***56** data points lead us to conclude that such a response is an "administrative ... report" and, thus, falls within the taxonomy of section 3730(e)(4)(A).

First, it cannot be gainsaid that responding to a FOIA request constitutes an administrative action. After all, the response originates with a federal agency, and its transmission to the requestor constitutes official government action. *See generally* 5 U.S.C. § 552(a)(3) (describing agency's responsibilities upon receipt of FOIA request). Second, a FOIA response is a report, at least in the sense that it constitutes an official statement concerning the results of the agency's search of its files. *See id.* Given these data points, there is a logical basis for

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

concluding that a FOIA response is an "administrative ... report" within the meaning of section 3730(e)(4)(A). Several courts have so held. *See, e.g., Grynberg,* 389 F.3d at 1049; *Reagan,* 384 F.3d at 176; *Mistick,* 186 F.3d at 383-84.

The Ninth Circuit, however, has reached a different conclusion. *See United States v. Cath. Healthcare W.,* 445 F.3d 1147 (9th Cir.2006). That court suggested that whether a response to a FOIA request triggers the public disclosure bar depends on the nature of the document retrieved by means of the request: unless the underlying document itself emanates from a source enumerated in section 3730(e)(4)(A), the second prong of the public disclosure bar is not satisfied. *Id.* at 1153. The court reasoned that a FOIA response could not categorically qualify as an administrative report because such a characterization "denotes a document that includes an analysis of findings," and responding to a FOIA request "requires little more than duplication" of an agency's files. *Id.*

We see no reason to narrow the definition of "report" so drastically. After all, the word "report" is typically defined as "something that gives information." *Webster's Third New Int'l Dict.* 1925 (2002). The result of an agency's search of its files in response to a FOIA request fits comfortably within this broad definition. *See Mistick,* 186 F.3d at 383-84 & n. 4.

To cinch matters, the Ninth Circuit's interpretation fails to lend any independent significance to the act of responding to a FOIA request. Just as transmittal of the FOIA response to the relator constitutes an act of public disclosure, the end product of the government's search (locating and compiling the requested documents) independently constitutes an administrative report-and this is so regardless of the character of the underlying documents.

The Ninth Circuit also expressed concern that if a FOIA response is categorically deemed an administrative report, it would deter individuals from either making FOIA requests or investigating suspected fraud. *Cath. Healthcare,* 445 F.3d at 1155 n. 5. This is pure speculation-and speculation that ignores legislative intent. Congress plainly intended the FCA "to encourag[e] lawsuits by relators who have *firsthand* knowledge of fraud against the government." *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 910 (7th Cir.2009) (emphasis supplied). An individual who obtains information through FOIA disclosures in order to uncover fraud is not a person with firsthand knowledge (and, thus, not a person whom Congress chose to reward under the FCA).

To say more on this point would be supererogatory. For these reasons, we reject the Ninth Circuit's interpretation of "administrative ... report",[FN3] adopt the majority **\*57** view, and hold that a FOIA response is an administrative report within the purview of the FCA. The second *Rost* requirement is, therefore, satisfied.

> FN3. At the possible expense of carting coal to Newcastle, we add that, as the district court observed, the decision in *Catholic Healthcare* is premised on the notion that in responding to a FOIA request an agency "need not assimilate the information contained in the requested documents." *Ondis II,* 582 F.Supp.2d at 218 (quoting *Cath. Healthcare,* 445 F.3d at 1155). The district court found the instant case "readily distinguishable" because the relator "alleged that HUD not only 'assimilated' the defendants' statements in their application regarding 'affordable housing' but that HUD actually relied on those statements in awarding [the] grants in question." *Id.* We agree with this assessment.

### C. *Basis.*

Because the relator's allegations track facts that were publicly disclosed prior to suit through specified sources, we are left with the last piece of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

tripartite puzzle: whether the relator's qui tam action is "based upon" those disclosures. This inquiry, too, demands that we answer a question of first impression in this circuit.

The courts are divided over the meaning of the phrase "based upon" as that phrase is used in the FCA. The majority view holds that as long as the relator's allegations are substantially similar to information disclosed publicly, the relator's claim is "based upon" the public disclosure even if he actually obtained his information from a different source. *See, e.g., United States ex rel. Meyer v. Horizon Health Corp.,* 565 F.3d 1195, 1199 (9th Cir.2009); *Grynberg,* 389 F.3d at 1051; *Minn. Ass'n of Nurse Anesthetists,* 276 F.3d at 1047; *Mistick,* 186 F.3d at 388; *McKenzie,* 123 F.3d at 940; *United States ex rel. Findley v. FPC-Boron Employees' Club,* 105 F.3d 675, 683 (D.C.Cir.1997); *Cooper v. Blue Cross & Blue Shield of Fl., Inc.,* 19 F.3d 562, 567 (11th Cir.1994); *United States ex rel. Doe v. John Doe Corp.,* 960 F.2d 318, 324 (2d Cir.1992). A few courts have interpreted the phrase more narrowly, requiring proof that the relator's allegations are actually derived from the publicly disclosed information. *See United States v. Bank of Farmington,* 166 F.3d 853, 864 (7th Cir.1999); *United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1347-48 (4th Cir.1994). Earlier this year, however, the tilt in favor of the majority view grew more pronounced; the Seventh Circuit switched from the minority to the majority position. *See Glaser,* 570 F.3d at 910. This leaves the Fourth Circuit alone among the courts of appeals in favoring a narrow reading of the "based upon" language.

[9] Having examined this split, we conclude that the majority view is correct. While the Fourth Circuit's interpretation draws some sustenance from the phrase itself, *see Siller,* 21 F.3d at 1348 (relying on dictionary definition of "base upon" as meaning "to use as a base or basis for"), there are situations in which rigid adherence to semantic orthodoxy must yield to common sense. This is such a situation: the construction of "based upon" spawned by the Fourth Circuit is highly suspect because it renders the FCA's "original source" provision superfluous. We explain briefly.

The FCA pretermits suits "based upon the public disclosure of allegations or transactions ... unless ... the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). For purposes of this exception, the statute defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based." *Id.* § 3730(e)(4)(B).[FN4] If, as the ***58** Fourth Circuit suggests, a relator's allegations actually must be derived from a public disclosure in order to trigger the jurisdictional bar, then the relator's knowledge *never* could be independent of that disclosure. Consequently, the relator could not under any circumstances be an original source. *See Glaser,* 570 F.3d at 916; *United States ex rel. Biddle v. Bd. of Trs. of the Leland Stanford, Jr. Univ.,* 161 F.3d 533, 538 (9th Cir.1998); *Findley,* 105 F.3d at 683.

> FN4. We discuss the original source exception in greater detail *infra.*

There is no principled way in which we can read the "original source" exception out of the statute. Doing so would be contrary to the venerable canon of statutory construction that requires courts, whenever possible, to give meaning to every word and phrase contained in the text of a statute. *Corley v. United States,* --- U.S. ----, 129 S.Ct. 1558, 1566, 173 L.Ed.2d 443 (2009); *Aguilar v. U.S. Immig. & Customs Enf.,* 510 F.3d 1, 10 (1st Cir.2007). Respect for this canon is one of the main reasons why, upon revisiting the question, the Seventh Circuit reversed its field. *See Glaser,* 570 F.3d at 916.

More broadly, the Fourth Circuit's view does not further the policies that undergird the FCA. Congress designed the law to "encourag[e] lawsuits by relators who have firsthand knowledge of fraud against the government." *Id.* at 910. When the material elements of a fraud are already in the public domain, the government has no need for a relator to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**587 F.3d 49**
**(Cite as: 587 F.3d 49)**

bring the matter to its attention. *See Biddle,* 161 F.3d at 539; *Findley,* 105 F.3d at 685. To achieve its real purpose, the FCA should reward only those who come forward with original, direct, and independent knowledge of a fraud. *See Biddle,* 161 F.3d at 539.

We think it follows that the majority view of the meaning of "based upon," rather than the minority view, comports with the overall structure and purpose of the FCA. Accordingly, we hold that the "based upon" requirement is satisfied when the relator's allegations are substantially similar to allegations or transactions already in the public domain at the time he brings his qui tam action. This holding precludes qui tam actions that merely parrot previously disclosed allegations or transactions (unless the relator is an original source).

[10] In the case at hand, the relator insists that he did not base his claim on the newspaper accounts that indicated the City's true housing policy but, rather, on his own private investigation. Even so, the relevant allegations in the relator's complaint bear a substantial similarity to what was journalistically disclosed. Likewise, the relator's claim that the City represented to HUD that it would welcome section 8 housing is substantially similar (indeed, identical) to the disclosures made in HUD's FOIA response. In contemplation of law, then, the relator's qui tam action was "based upon" previous public disclosures from statutorily enumerated sources. No more is exigible to trigger the public disclosure bar.

### D. *The Exception.*

There is an escape hatch from the public disclosure bar, available to relators who qualify as original sources. 31 U.S.C. § 3730(e)(4)(A). The statute defines an "original source" as:

> [A]n individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

*Id.* § 3730(e)(4)(B). It is thus apparent that a relator, in order to qualify as an original source, must have both direct and independent knowledge of the information **\*59** upon which his allegations are based. *See Glaser,* 570 F.3d at 921; *Minn. Ass'n of Nurse Anesthetists,* 276 F.3d at 1048.

The Supreme Court recently held that "the 'information' to which [section 3730(e)(4)(B) ] speaks is the information upon which the *relator's* allegations are based." *Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 470-71, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) (emphasis supplied). Thus, the appropriate inquiry in an FCA case is whether the relator had direct and independent knowledge of the information upon which his own allegations were based.

**1.** *Direct Knowledge.* We begin with whether the relator had direct knowledge of the information upon which he based his claim. "Direct" is defined as "marked by absence of an intervening agency, instrumentality, or influence: immediate." *Webster's Third New Int'l Dict., supra,* at 640. Several courts have transplanted this sort of definition into the FCA. *See, e.g., Minn. Ass'n of Nurse Anesthetists,* 276 F.3d at 1048; *Springfield,* 14 F.3d at 656; *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1160 (3d Cir.1991). We agree that this definition signifies the proper meaning of "direct" as that word is used in the FCA.

[11][12] In this instance, the relator's knowledge was based on a private investigation, which consisted of directing his employees to review public records and interview third parties. A relator is not disqualified as an original source merely because his agents assisted in the investigation into the alleged fraud.[FN5] Here, however, the relator's knowledge was simply a compilation of publicly disclosed information. Knowledge that is based on re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

search into public records, review of publicly disclosed materials, or some combination of these techniques is not direct. *See Reagan,* 384 F.3d at 178-79; *United States ex rel. Barth v. Ridgedale Elec., Inc.,* 44 F.3d 699, 703 (8th Cir.1995).

> FN5. The district court found that the relator did not have direct knowledge in part because his employees, rather than he himself, conducted investigatory steps. *Ondis II,* 582 F.Supp.2d at 220. We disagree with this aspect of the district court's reasoning. Merely because a person acts through agents does not necessarily render his knowledge indirect. *See Minn. Ass'n of Nurse Anesthetists,* 276 F.3d at 1049.

**2.** *Independent Knowledge.* The relator also failed to show that he possessed independent knowledge. Virtually by definition, a relator whose knowledge is dependent upon the public disclosure of allegedly fraudulent transactions cannot be said to have independent knowledge of the fraud. *See Glaser,* 570 F.3d at 921; *Minn. Ass'n of Nurse Anesthetists,* 276 F.3d at 1048; *Mistick,* 186 F.3d at 389; *Barth,* 44 F.3d at 703; *Springfield,* 14 F.3d at 656.

In this instance, the relator, whatever he may have *suspected,* would not have *learned* of the City's alleged misrepresentations to HUD but for the response to his FOIA request. Thus, the relator lacked independent knowledge.

In an effort to dodge this bullet, the relator asserts that his background and experience as a developer of section 8 housing gave him a unique insight into the fraud that the City was perpetrating on the federal government. This is whistling past the graveyard.

"If a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed." *Findley,* 105 F.3d at 688. Expertise that enables a relator to understand the significance of publicly disclosed information, **\*60** without more, is insufficient to qualify him as an original source. *See id.*; *see also United States ex rel. Fried v. W. Indep. Sch. Dist.,* 527 F.3d 439, 443 (5th Cir.2008).

For these reasons, the relator does not qualify for the original source exception.

### E. *Exclusion of Evidence.*

[13] A loose end remains. The relator contends that the district court erred in precluding certain testimony during the evidentiary hearing. We review this contention for abuse of discretion. *See Pike v. Guarino,* 492 F.3d 61, 70 (1st Cir.2007) (explaining that decisions about the scale and scope of an evidentiary hearing are subject to review for abuse of discretion); *see also Valentin,* 254 F.3d at 364 (noting that "when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached").

In a nutshell, the relator wanted to have two witnesses-one of his lawyers and the mayor of a neighboring community-"corroborate" his testimony as to why his background qualified him as an original source. Additionally, he sought, at the end of the hearing, to call Mayor Menard and other Woonsocket planning officials to show that the allegations in his complaint had not been widely appreciated. The district court determined, however, that the testimony of witnesses other than the relator himself was irrelevant to the jurisdictional issue; that is, to establishing what facts, not publicly disclosed, the relator obtained or why he was an original source. We discern no abuse of discretion in this ruling.

A trial court has considerable latitude in making relevancy determinations. *United States v. Tierney,* 760 F.2d 382, 387 (1st Cir.1985). Here, the relator failed to advance any convincing rationale either as to why the proffered testimony was needed or how

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

it would be probative vis-à-vis the jurisdictional issue.

[14] Moreover, the record dashes any hope of such a showing. The proffered testimony of the municipal officials could not have supported the relator's claim of non-disclosure because that testimony would not have contradicted the fact that the newspaper articles had been published, the fact that the FOIA response was requested and received, or the fact that these submissions, taken together, conclusively established public disclosure from statutorily enumerated sources. By the same token, the proffered testimony anent the relator's background and experience would have been irrelevant because, as stated earlier, the relator's expertise in the field of subsidized housing is not enough to bring him within the original source exception. Given those verities, we cannot say that the court below misused its wide discretion. *See, e.g., Richards v. Relentless, Inc.,* 341 F.3d 35, 49-50 (1st Cir.2003) (finding no abuse of discretion where appellant failed to explain the relevance of excluded evidence).

If more is needed-and we doubt that it is-the district court did not base its ultimate decision on the relator's credibility but, rather, on the fact that his testimony, even if true, did not show him to be an original source. *Ondis II,* 582 F.Supp.2d at 220. Consequently, the excluded testimony, which was proffered for corroboration, was cumulative at best. The exclusion of cumulative testimony, if error at all, would be harmless. *See, e.g., Ahern v. Scholz,* 85 F.3d 774, 786 (1st Cir.1996).

## IV. CONCLUSION

We need go no further. For the reasons elucidated above, the district court did not **\*61** err in concluding that the FCA's public disclosure bar applied to divest it of subject matter jurisdiction over this action.

*Affirmed.*

C.A.1 (R.I.),2009.
U.S. ex rel. Ondis v. City of Woonsocket
587 F.3d 49

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.