## DECLARATION OF GREG HAMILTON

I, Greg Hamilton, hereby declare as follows:

1. I am one of the Relators in United States ex rel Sun et al. v. Baxter. If called upon to do so, I could and would testify competently to the following based upon firsthand knowledge.

2. I have worked for pharmaceutical manufacturers and pharmacy benefit managers for over twenty years. During this time I have had extensive contact with Baxter's senior staff as a customer, a colleague and as a competitor. This contact has included numerous meetings Guiheen (the President of Baxter BioScience who is referred to in ¶45 of the Complaint) as well as his superior, Peter O'Malley. Those meetings specifically concerned the pricing of several of the Baxter products discussed in this Complaint.

3. From 2001 – 2004 I was the Senior Director of Strategic Sales and Planning at Specialty Distribution Services for Express Scripts, the Pharmacy Benefit Manager. From 2004 – 2006 I was the Vice-President of the Curascript Bleeding Disorder Program. (CuraScript is an operating division of Express Scripts.)

4. While serving in these positions I frequently met with Baxter's senior management to discuss the market for hemophilia products. Because the market for hemophilia products is extremely lucrative, national hemophilia meetings were typically attended by the leadership from concerned pharmaceutical companies and PBMs. At these conferences I would hold scheduled meetings with Larry Guiheen, who was then Baxter's Vice-President for North America, as well has his boss, Peter O'Malley. I also made at least three trips to Baxter's Deerfield, Illinois, offices to meet with Baxter managers to discuss pricing. At least one of those meetings took place at the request of Peter O'Malley, who was either Baxter's President of North American operations, or vice President of Sales. O'Malley asked me to meet with Baxter's contracting


EXHIBIT
11

staff and describe how to price products for Government customers, and how pricing for the 340B program operates.

5. I had at least three such meetings with Baxter to discuss pricing in barely a year – August 8, 2002, February 3, 2003, and September 26, 2003.

6. During one such meeting I had a long discussion with Larry Guiheen about Baxter's pricing of Advate (Baxter's version of Recombinant Factor VIII.) Within a few months of this meeting Baxter changed its price for Advate to within a penny of what I had recommended.

7. In addition to being a major customer of Baxter's through my work with Express Scripts and Curascript, I also interacted with Baxter's pricing managers as a competitor of Baxter's when I worked for Bayer. While working for Bayer, I served with Baxter executive Peter O'Malley on the Plasma Protein and Therapeutics Association's Reimbursement Committee, and Drug Recall Committee, and had numerous discussions with him about pricing strategies.

8. In addition to my direct discussions with Baxter managers, I learned of Baxter's pricing and some of the specific acts alleged in ¶¶ 36-40 of our complaint while trying to help Kay Morgan, Manager of Editorial Services for First Data Bank. In May or early June of 2001 Kay Morgan called and asked my opinion about why Baxter was refusing to provide its WAC for Recombinate. She told me that Baxter sent a letter saying that their list price was $1.31 and they wanted their AWP reported as $1.31. She told me that when she asked Baxter for the WAC, Baxter merely repeated that the list price for Recombinate was $1.31 and that they wanted the AWP reported as $1.31. Morgan told me that FDB was so mad that they threatened not to publish any information at all.

2

9.   Morgan told me that she, her boss, and the FDB legal department wrote a letter to Baxter threatening that FDB would refuse to publish the AWP information.

10.   Morgan asked me what I thought Baxter was trying to accomplish by this.  I told her that I thought Baxter's goal was to establish an AWP was attractive to the distributors, but to still be able to deny to the hemophilia community that it was Baxter's fault for the high AWP, and to blame FDB.

11.   Throughout my years in the industry I was able to achieve a high level of understanding of Baxter's pricing structure from direct discussions with Baxter's senior management, as well as through the information given me by FDB.

12.   The Market Research Bureau's PLASMA FRACTIONS MARKET IN THE US report is an annual publication for the Plasma industry. This industry is a classic oligopoly consisting of less than 7 manufacturers.

13.   The Market Research Bureau was founded and is operated by Patrick Robert, a former Bayer employee and colleague. He left Bayer and created MRB in the mid 90's to provide the Plasma industry with a much needed data source. The standard source for the drug industry is IMS Health, however they do not audit/cover plasma products.

14.   On September 13, 2009 I called The Market Research Bureau and spoke with Cindy Lynn, Patrick Robert's secretary. She told me that a single issue of this publication costs $16,000, and that there are fewer than 20 subscribers, including manufacturers, a few specialty pharmacies, and a few 340d entities. She also told me that they do not sell or give any of their reports to university libraries or public libraries.

3

I declare under penalty of perjury under the laws of the state of Illinois that the

foregoing is true and correct.  Executed this 15th day of September, 2009, at Algonquin, Illinois.


_/s/ Greg Hamilon_____

Greg Hamilton

## CERTIFICATE OF SERVICE

I hereby certify that I, Mark Kleiman, an attorney, caused a true and correct copy of the foregoing, **MEMORANDUM IN OPPOSITION TO BAXTER INTERNATIONAL INC.'S MOTION TO DISMISS RELATORS' COMPLAINT**, to be delivered to all counsel of record by electronic service on September 15, 2009, for the posting and notification to all parties.

By:    /s/   Mark Allen Kleiman
         MARK ALLEN KLEIMAN
         California State Bar No. 115959
         2907 Stanford Avenue
         Venice, CA 90292
         310-306-8094
         310-306-8491 (fax)

22

# MARK ALLEN KLEIMAN

LAWYER

FOURTH FLOOR
12400 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90025

TELEPHONE   (310) 442-4820
FACSIMILE    (310) 442-4830
MARKKLEIMAN@EARTHLINK.NET

Of Counsel
BethAnne Yeager

April 22, 2005

Hon. Alberto Gonzales
Attorney General
Department of Justice
Department of Justice
10th & Constitution Ave, N.W.
Washington, D.C. 20530

Michael Theis
Assistant United States Attorney
1225 17th Street
Suite Seven Hundred
Denver, Colorado 80202

Re:   United States ex rel Sun, et. al., v. Baxter Hemoglobin Therapeutics, et. al

Dear General Gonzales and Mr. Theis:

I am pleased to forward to you the complaint along with this statement disclosing all material evidence. The immediately available evidence is scant. Only one of the two relators, Ms. Linnette Sun, was employed by Baxter, and her opposition to the practices described herein led t Baxter firing her in and giving her no opportunity to preserve documentary evidence. The other relator, Mr. Greg Hamilton, developed his knowledge of Baxter's practices from his intimate familiarity with the industry, but had no opportunity to develop documentary evidence.

We are nonetheless enclosing two items which will be helpful to an understanding of the allegations:

Exhibit 1 is a tabular summary of the AWP stated by First DataBank for the various products at issue in this case.

Exhibit 2 is a monograph on the Plasma Fractions Market and explains how the market operates, how products are priced, and describes the distribution chain. (The bookmarks in the PDF are my own, and not those of the monograph's author.)

I will be happy to make hard copies of these documents available if you find that preferable. We look forward to working with you.

Sincerely,

Mark Allen Kleiman

MAK/prs

Enclosure

**EXHIBIT**
12

GH001525

i

## SUMMARY OF FIRST DATA BANK INFORMATION ON SELECTED DRUGS

| Drug Name | Unit Strength | NDC | Current AWP and Release Date | Prior AWP | Prior AWP |
|---|---|---|---|---|---|
| **Advate** | 1000U | 00944294003 | 05/13/04 $1.7500 | 08/25/03 $1.8800 | |
| **Advate** | 1500U | 00944294004 | 05/13/04 $1.7500 | 08/25/03 $1.8800 | |
| **Advate** | 250U | 00944294001 | 05/13/04 $1.7500 | 08/25/03 $1.8800 | |
| **Advate** | 500U | 00944294002 | 05/13/04 $1.7500 | 08/25/03 $1.8800 | |
| **Recombinate** | 220 – 400U | 009442138013 | 06/21/01 $1.6250 | 07/19/98 $1.2800 | 09/07/97 $1.2400 |
| **Recombinate** | 401 – 800U | 009442138026 | 06/21/01 $1.6250 | 07/19/98 $1.2800 | 09/07/97 $1.2400 |
| **Recombinate** | 801 – 1240U | 009442138031 | 06/21/01 $1.6250 | 07/19/98 $1.2800 | 09/07/97 $1.2400 |
| **Bebulin** | 200 – 1200U | 641930244027 | 01/15/05 $0.9000 | 11/16/01 $0.7250 | |
| **Feiba** | 400-650U | 64193022034 | 01/17/05 $1.9100 | | |
| **Feiba** | 650-1200U | 64193022046 | 01/17/05 $1.9100 | | |
| **Hemofil-M** | 200 – 1500U | 00944293501 | 06/26/01 $1.2250 | 09/07/97 $0.9500 | 01/09/92 $0.9000 |
| **Gammagard** | 0.5 GM | 00944262001 | 06/26/01 $81.000 | 07/19/98 $64.800 | 01/09/96 $54.9200 |
| **Gammagard** | 10 GM | 00944262004 | 06/26/01 $1,192.5000 | 07/19/98 $870.0000 | 10/20/96 $737.0000 |
| **Gammagard** | 2.5 GM | 00944262002 | 06/26/01 $298.1250 | 07/19/98 $217.5000 | 10/20/96 $184.2500 |
| **Gammagard** | 5 GM | 00944262003 | 06/26/01 $596.2500 | 07/19/98 $435.000 | 10/20/06 $368.5000 |



EXHIBIT
13

GH001526

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

# UNITED STATES DISTRICT COURT

## DISTRICT OF \*\*\*

| | |
|---|---|
| **United States of America ex rel Linnette Sun and Greg Hamilton, Relators,** | § Case No. <br> § <br> § <br> § **COMPLAINT FOR DAMAGES** |
| **State of Arkansas** ex rel Linnette Sun and Greg Hamilton, Relators, | § **UNDER THE FEDERAL** <br> § **FALSE CLAIMS ACT and** <br> § **VARIOUS STATE FALSE** <br> **CLAIMS ACTS** |
| **State of California** ex rel Linnette Sun and Greg Hamilton, Relators, | § <br> § |
| **State of Delaware** ex rel Linnette Sun and Greg Hamilton, Relators, | § <br> § <br> § <br> § |
| **District of Columbia** ex rel Linnette Sun and Greg Hamilton, Relators, | § <br> § |
| **State of Florida** ex rel Linnette Sun and Greg Hamilton, Relators, | § <br> § |
| **State of Hawaii** ex rel Linnette Sun and Greg Hamilton, Relators, | § <br> § |
| **State of Illinois** ex rel Linnette Sun and Greg Hamilton, Relators, | § <br> § |



EXHIBIT 14

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

§
§
**State of Louisiana** ex rel Linnette Sun
and Greg Hamilton, Relators,

§
§
§
**State of Massachusetts** ex rel Linnette
Sun, and Greg Hamilton, Relators

§
§
§
**State of New Mexico** ex rel Linnette
Sun and Greg Hamilton, Relators,

§
§
**State of Nevada** ex rel Linnette Sun and
Greg Hamilton, Relators,

§
§
**State of Tennessee** ex rel Linnette Sun
and Greg Hamilton, Relators,

§
§
**State of Texas** ex rel Linnette Sun and
Greg Hamilton, Relators,

§
§
**State of Utah** ex rel Linnette Sun and
Greg Hamilton, Relators,

§
§
**State of Virginia** ex rel Linnette Sun
and Greg Hamilton, Relators,

2

GH001747

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

|                                          |     |
| ---------------------------------------- | --- |
|                                          | §   |
| **v.**                                   | §   |
|                                          | §   |
| **Baxter International, Inc. *[?]* and**  | §   |
| **Does 1-100**                           | §   |
|                                          | §   |
|                                          | §   |
| **Defendants**                           | §   |

COMES NOW THE RELATORS, Linnette SUN and Greg HAMILTON,

WHO ALLEGES AS FOLLOWS:

Relators, Linnette Sun and Greg Hamilton, bring this action under the False

Claims Act, as amended, 31 U.S.C. §3729 et. seq., as well as various state statutes,

alleges as follows:

## INTRODUCTION

1.  This is a *qui tam* action brought by Linnette Sun and Greg Hamilton

    on

behalf of the United States and various States to recover penalties and damages

arising from fraudulent and illegal practices of Baxter Hemoglobin Therapeutics, a

division of Defendant Baxter International, Inc. (hereinafter "Baxter").  Baxter

makes a variety of specialized pharmaceutical, hematological, and infusion

3

GH001748

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

products, known in the industry as "biologics." Government programs reimburse

providers who purchase these products based upon the published or posted

Average Wholesale Price ("AWP"). Manufacturers, such as Baxter, are to report

an accurate Wholesale Acquisition Costs ("WAC") to the database that calculates

and publishes the AWPs based upon the reported WAC, First DataBank. Inc.

("First DataBank").

2.     It is known throughout the industry and known to Baxter that First

DataBank calculates the

AWP for biologics as: AWP =WAC x 1.25. Since Baxter was aware of this mark-

up, Baxter controlled the published AWP by misreporting the WAC.   Baxter f

refused to report an accurate WAC, or the cost charged to the wholesalers that

distribute the bulk of Baxter's products at issue here, the non-charge back

wholesaler. Instead, Baxter reported a "list sales price" which bore no relationship

to the price charged in the marketplace to the actual wholesalers, but which was an

inflated price charged to very few customers that distributed less than one percent

of these products..

3.     Baxter thus manipulated the AWP, knowing that health care providers

4

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

who were being reimbursed based on AWP were indifferent to the cost of purchasing the drug, but instead focused on the "spread"—as it is known in the industry—between the cost and the AWP-based reimbursement. Because Baxter's spread was larger than competitors, its products were more attractive to these customers, and it could maximize its revenue.

4.     States rely upon First DataBank's published AWP to reimburse providers, and assume that the published AWP is a reasonable indicator of the price paid for the drug. However, because Baxter falsely reported WAC to inflate the AWP and the spread, Baxter deceived the government, and government overpaid for the biologics at issue here.

## THE PARTIES

5.     Relator Linnette Sun is a citizen of the United States and a resident of the State of California. She was employed by Baxter as Director of Medical Outcomes Research and Economics, and as such was a pricing specialist there for more than a year, June 24, 2002 – July 22, 2003. She has been a pricing and reimbursement specialist for ten years, working for Merck, Johnson & Johnson, & Amgen. After telling her superiors and others at Baxter that she strongly opposed

5

GH001750

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

Baxter's practices and thought them to be fraudulent, she was fired.

//

6.     Relator Greg Hamilton is  currently Vice President of the Bleeding

Disorders Program for CuraScript, a Division of Express Scripts, Inc.  He has over

30 years experience working in the pharmaceutical industry, including 13 years

with Bayer.  He is known as a pricing and reimbursement specialist and had

advised pharmaceutical companies on the pricing of products,  including

biologics.  He is aware of the pricing structure Baxter used, specifically, the

correspondence between Baxter and First DataBank regarding Baxter's reporting

of the improper WAC.   Mr. Hamilton has an MBA from Illinois Institute of

Technology.

7.     Defendant Baxter International, Inc., Baxter Hemoglobin
       Therapeutics

has its offices at 2545 Central Av., Suite FD1, in Boulder, Colorado and at One

Baxter Parkway in Deerfield, Illinois.  It is a division of Baxter International, Inc.,

a Delaware corporation, which is a global pharmaceutical company doing business

in this judicial district with its principal executive offices at One Baxter Parkway

6

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

in Deerfield, Illinois.

## JURISDICTION AND VENUE

8.      This is a civil action arising under the laws of the United States, and

specifically, 31 U.S.C. §3730, the "False Claims Act."  Therefore, this Court has

jurisdiction over this action pursuant to 31 U.S.C. §3732 (a) and (b).

Supplemental jurisdiction for Counts  III – XVIII* arises under  28 U.S.C.

§§1367, since these claims are so related to the federal claims that they form part

of the same case or controversy under Article III of the U.S. Constitution.

9.      Venue is proper in this district pursuant to 31 U.S.C. §3732 (a)

because Defendant Baxter transacts business in this district.

## FEDERAL PROGRAMS HARMED BY DEFENDANTS'

## FRAUDULENT AND ILLEGAL PRACTICES

### RAILROAD RETIREMENT MEDICARE PROGRAM

10.     The Railroad Retirement Medicare program, is authorized by the

Railroad Retirement Act of 1974, 45 U.S.C. §§231 *et seq.*  It is administered

through the United States Railroad Retirement Board, "RRB" and furnishes

Medicare coverage to retired railroad employees.

### INDIAN HEALTH SERVICE

11.     The Indian Health Service is responsible for providing
        comprehensive

7

GH001752

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

health services to more than 1,400,000 Native Americans. It is administered by the Department of Health and Human Services pursuant to 42 U.S.C. § 2002, *et seq.* The statute authorizes the Secretary to enter into contracts with independent providers to furnish health services to Native Americans whenever the Secretary determines that independent providers can better meet a population's needs.

## FEDERAL EMPLOYEE HEALTH BENEFIT PLANS

12.   The Federal Employees Health Benefits Program (FEHBP) is administered by the Office of Personnel Management ("OPM") pursuant to 5 U.S.C. §§ 8901, *et seq.* and provides health care coverage to federal employees and their dependents.

## TRI-CARE

13.   The Tri-Care program, formerly CHAMPUS, is administered by the United States Department of Defense through its component agency, CHAMPUS, under the authority of 10 U.S.C. §§ 1071-1106, and provides for care in civilian facilities for members of the Uniformed Services and their dependents.

## VETERAN'S ADMINISTRATION

14.   Pursuant to 38 U.S.C.A. § 8126, and the regulations based thereon, and contracts the Veteran's administration had with manufacturers, drugs are furnished to the Veterans' Administration ("VA") by drug manufacturers.

## MEDICARE AND MEDICAID

8

GH001753

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

15.     HHS, through its subsidiary entities—first the Health Care Financing Administration (HCFA) and now the Center for Medicare and Medicaid Services (CMS)—administers the Medicare program, which is a system of health insurance for the aged (i.e., those over the age of 65 years) and disabled created under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.* The Medicare program is comprised of two "Parts." Part B of the Medicare program authorized payment for certain drugs when a Medicare beneficiary must either (a) have the drugs administered in a physician's office, or (b) use a Medicare-approved mechanical aid or device (known as durable medical equipment) in order to receive the drugs at home. To assist in the administration of Medicare Part B, CMS contracts with Medicare carriers, or insurance companies that provide a variety of services, including processing and paying Part B claims and auditing cost reports.

16.     Through CMS, HHS also administers the Medicaid Program, which provides health care benefits for certain groups, including the poor and the disabled, and which is funded in part from federal funds and in part by the State where the facility is located. 42 U.S.C.A. § 1396 *et seq.*

## BACKGROUND

17.     There are approximately 65,000 different drug products in the United States market, including different doses of the same drug. Baxter manufactures and/or distributes (and thus sets the price) for the following drugs and biologics: Advate, Aralast, Albumin, Bebulin, FeibaH, Gammagard S/D, HemophilM, Propelex LT and Recombinate. Baxter's products are dispensed to patients by or

9

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

through different types of medical providers including, *inter alia*, physicians who administer drugs in an office, home infusion pharmacies, retail pharmacies, and other medical providers.

18.     States routinely cover out-patient prescription drugs as part of their Medicaid programs.  Most States reimburse providers for those drugs based upon a percentage of the AWP, usually 85% of the AWP.  Medicare reimburse providers who furnish covered drugs to beneficiaries the lower of the billed charge or 95% of the AWP pursuant to 42 CFR §405.17.  Baxter's biologics are covered by Medicaid, Medicare and other government programs.

19.     During all times material to this complaint, State Medicaid programs obtained AWP pricing information directly from First DataBank.  First DataBank is a wholly-owned subsidiary of the Hearst Corporation, which, among other things, gathers prescription drug information, including pricing and AWP.  First Databank publishes and distributes this information as a database which is regularly maintained.

20.     There are several other pharmaceutical industry compendia that periodically compile, publish and distribute, in printed and electronic media, AWPs.  These compendia include the *Drug Topics Red Book* (the *"Red Book"*), the *Annual Director of Pharmaceuticals and Essential Director of Pharmaceuticals* (the *"Blue Book"*), and Medi-Span's *Master Drug Database (MediSpan).*  However, government reimbursement is based upon AWP published by First DataBank.

10

GH001755

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

21.    Medicaid, Medicare, and all other systems which base reimbursement rates for drugs on the published AWP rely upon the accuracy of the AWP, and, in turn, depend upon the honesty and accuracy of Baxter and other drug manufacturers in reporting WAC to First DataBank.  As noted above, for biologics, First DataBank posts AWP by multiplying the reported WAC by 1.25. Manufacturers easily determine First DataBank's mark up by comparing the difference between the reported WAC and the published AWP, and are accordingly aware of what First DataBank's published AWP will be when they report WAC to First DataBank.

22.    Providers regularly submit claims for reimbursement seeking payment for Baxter's products from Medicare, Medicaid, and from other federal payors. Manufacturers, including Baxter, were and are fully aware that these payors also rely on First DataBank's published reports of AWP to determine their reimbursement.

23.    All pharmaceutical products except biologics are normally distributed through charge-back wholesalers.  These wholesalers are Bergen Brunswig Drug Company, McKesson Drug Company, Cardinal Health, AmeriSource Health Corporation. However, manufacturers' sales of biologics to charge-back wholesalers  comprise less than 1% of the wholesale market for manufacturers of these specialized products.

24.    Instead, the vast majority of biologics, such as the products Defendants manufactured, were typically distributed to providers by non-charge

11

GH001756

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

back wholesalers.  These wholesalers include, but are not limited to, Chapin
Medical, FFF Enterprises, CT International, ActSys Medical Inc., Williams
Medical, Davis Enterprises, Paragon Scientific Corp., ASD Specialty Healthcare,
IDP, Inc., Blood Diagnostics Inc., National Specialty Services, Florida Infusion,
National Hospital Specialties, Alpine Biologics, Atlantic Business Organization,
Health Coalition, J-Mark Enterprise, BioCare, BioScience, Western Medical
Services,  Davis Enterprises, Biomed Plus, Genesis Bio-Pharmaceuticals, Acysis,
Whitmire Distribution Corp., Adam Diagnostic Laboratories, Alternate Site
Distributors, Besse Medical Supply, Bindley Western, Bio Test, Bryan
Biologicals, Inc., Capital Wholesale Drug, Casad Surgical Pharmacy, Cummumed,
Dakota Drug, Diagnostic Marketing Corp, F D Titus & Sons, Inc., F. Dohmen Co.,
First Choice Medical Inc., General Drug Company, General  Inj. & Vaccines, Inc.,
H D Smith Wholesale, Henry Schein Corp., Henry Schein Surgical, Immucor, Inc.,
Int'l Med Supply, J E Gold & Co, Martin Surgical Supply, Medical Blood
Services, Medical Mart Inc, Medsource Corp, Metro Medical Supply Inc., Micro
Bio Medics, Morris and Dickson, Mullen & Haynes, National Hospital Specialties,
NSS, Inc., Ohio Valley Clarksburg Inc., Organon Teknika Corp, Parks Inc., PSS,
Quala Med Inc., R Weinstein Pharmaceutical, Roane Barker, Scientific Supply
Company, Triad Medical Inc., Walsh-Lumpkin, Accord Clinical Labs, Alternate
Site Distributors, Bellegrove Medical Supply, Bensons Surgical Supply Co.,
British Marketing Enterprises, Expert - Med Inc., Gas Medical, General Drug
Company, Grove Way Medical Supply, Health Coalition, Physician Sales &
Service, R Medical Supply, Summit Medical Supplies, Total Health Products,  A.
J. Buck & Sons Inc., Alternate Site Distributors,  C F Anderson Comp, Inc.,

12

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

Center Medical Supply, Central Supply, Emjay Medical Supplies Corp, Gamma Biologicals, Hawkeye Medical Supply, Interstate Blood Bank, Lake Erie Medical & Surgical, Medical Supply Corp of N.J., Paragon Scientific Corp., Ransdell Surgical Inc., Savoy Medical Supply Co., Shenandoah Medical Supply, Suncoast Surgical Supply, Tri State Physicians Supplies, United Medical Supply, Arizona Blood Services, Bio Care, Bio Med Plus, Blood Center of SE Wisconsin, Health Coalition, Inc., and Mediq Corporation.

25.     The true wholesalers which distribute the bulk of the biologics for Baxter. as well as other manufacturers, are these non-charge back wholesalers. This has been reported by the Marketing Research Bureau Inc. in its study, *The Plasma Fractions Market in the United States 2001*.  This study indicates that the first-tier of the non-charge back wholesalers distribute the overwhelming amount bulk of biologics, and that the remaining are sold directly to providers such as home health agencies or home health systems.

## DEFENDANTS' ILLEGAL SCHEMES

26.     Baxter has used the following schemes to cause state Medicaid programs to pay false claims:

## WAC Falsification

27.     In the case of biologics, Baxter employed what is known in the pharmaceutical industry as "class of trade pricing."  Baxter sold the bulk of its biologics directly to providers.  e.g., home health agencies and home health

13

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

systems. Baxter offered the lowest prices to these providers,  Baxter offered the
next lowest prices are offered to non-charge back wholesalers.  These sales,
varying by product, comprise up to 40% of Baxter's total sales of the products.  At
times, however, Baxter also offered its lowest prices to the non-charge back
wholesalers to move product.  The charge-back wholesalers, to which Baxter
charged the highest prices, comprise less than 1% of Baxter's sales for the
biologicals..

28.    Although the charge-back

wholesalers purchased less than 1% of the biologicals, Baxter reported to First
DataBank that the high prices charged to this tiny market segment was its WAC.
Baxter did this with the knowledge that First DataBank, would, in turn, used to use
this information to calculate AWP, which would then be reported to state and
federal health care programs described herein.  Since the price charged to less than
1% of its market did not affect sales, Baxter could use it to manipulate the
reimbursement system since the published AWP had no correlation to the price
charged to the wholesaler that distributed nearly all of Baxter's biologicals.

29.    The effect of Baxter's false reporting was that Baxter illegally

increased the profitability, or spread, of these drugs to health care providers and
pharmacies, thus giving a financial incentive for their selection and use.  That is, if
the spread for Baxter's product is greater than the spread for competing products,
the provider will profit more by using Baxter's product.  The only way to increase
the spread is to either reduce the acquisition cost to the provider, or to inflate the
reported AWP Medicare and Medicaid rely upon.  Since lowering the sales price

14

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

to providers would decrease Baxter's income, Baxter preferred instead to increase the spread by falsely inflating the AWP.  Consequently, since Baxter sells the biologicals to providers at considerably less than the reported AWP, there is a substantial spread between what Medicare and Medicaid will pay, and there is an exorbitant amount of profit the provider can make on the sale of the product.

30.     In fact, Baxter knew that the actual amounts charged to the non-charge

back wholesalers distributors, as well as providers and others for their products, was not publicly available, because it wsa proprietary pricing information.  Baxter kept this information  highly confidential and secret to maximize its ability to maintain market share by providing the greatest reimbursement spread to these customers.

31.     Baxter increased its revenue not only by gaining more market share by

beating out competitors with a more attractive spread, but also by generating profit from increasing its sale price to the providers.  So long as the providers made a profit from purchasing Baxter's products greater than the profit offered by a competitor's spread, they would be willing pay more for the product.

32.     Baxter knew it could directly control and fabricate the AWP for their products by reporting to First DataBank the highest prices charged for the biologics, those charged to charge-back wholesalers.

15

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

33.   For example, Baxter has reported to First DataBank that the WAC for
Recombinate is $1.30 per unit, and First DataBank has accordingly published an
AWP of $1.6250 per unit. When a Medicare beneficiary receives a drug which is
covered by Part B of Medicare, Medicare reimburses providers 80% of the
allowable cost, which is 95% of the AWP.  Thus, if the AWP for a drug is
$1.6250, the allowable cost is 95% of that, or $1.548, and Medicare pays 80% of
that sum, or $1.235.  Recombinate has been sold to a provider for $0.89, making
the spread, or the difference between the actual acquisition cost of $0.89 and the
Medicare payment of $1.235, $0.345. This nearly 35-cent per unit spread is pure
profit for the provider.  In the case of Medicaid reimbursement, at 85% of AWP,
or $1.381 per unit, the difference between that and the actual acquisition cost of
$0.89 is $0.491.  The nearly 50-cent per unit spread is also pure profit for the
provider.

34.   Baxter falsely reported WAC by claiming it was reporting a "list sales
price." Baxter's Mike Bradley, was Senior Director of National Account
Economics, and  was responsible for pricing and reporting Baxter's pricing to
various databases. In approximately October 2001, Bradley told Relator Linette
Sun that Baxter has repeatedly falsely described its WAC to First DataBank by
reporting a cost  described as "list sale price.",  knowing that First Data would
apply a 125% multiplier to estimate AWP.  Sun was informed that since this
improved the spread between AWP and the prices actually charged to physicians
or other providers, this allowed Baxter to acquire greater market share.  Baxter
management was adamant that it could not hit its sales targets without these

16

GH001761

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

incentives to the providers.

35.     According to knowledge obtained by Relator Greg Hamilton, First
DataBank refused to accept Baxter's"list sales price," and requested the amount
Baxter charges to wholesalers. Baxter had also informed First DataBank the
amounts Baxter wanted First DataBank to publish as the list price and AWP. First
DataBank again told Baxter it had to provide WAC, and that if it continued to
refuse to provide WAC, First DataBank would consider the list price provided as
the WAC. Again, Baxter refused to provide any other number than "list sales
price," and also refused to denote the "list sales price" as WAC.

36.     First DataBank then used Baxter's "list sales price," and applied the
1.25 multiplier First DataBank obtained by researching the mark-up wholesalers
applied.

37.     Shortly thereafter Ms. Sun reviewed the First DataBank materials and
was surprised to see the greatly inflated AWP. She promptly reported this to Nick
Poulios who was, at the time, Baxter's Director of Medical Outcomes Research
and Economics, who encouraged her to bring this up at a meeting that was
scheduled to discuss Baxter's pricing practices. This meeting was attended by
Bradley, Poulios, as well as Mike Baldridge, Director of Planning, and Jill Kadam,
Director of National Accounts Marketing. Bradley again acknowledged his
awareness of the problem and admitted that this actually became a better financial
arrangement for Baxter since it increased reimbursement rates. Bradley repeated
that Baxter knew this all along, and that this benefitted Baxter. Bradley also tried

17

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

to convince Sun that First Databank was a little used information source.

38.     After this meeting Ms. Sun contacted First DataBank directly and
received an email from a sales manager who confirmed that First DataBank reports
were purchased by the United States and by each State's government, and that the
database was used by over 80% the insurance companies.

39.     In approximately October, 2002, Ms. Sun again voiced her concerns
to Nick Poulios, who told her that all Marketing Management had known of this
for years and had no intention of correcting it because, if they got in trouble with
the government, they could blame First Databank.

40.     In April, 2003, Ms. Sun and Poulios informed Larry Guihinn, the
President of Baxter BioScience of the inflated AWP and warned that this could get
Baxter in trouble with the government.  Guihinn stated that Bradley had told him
that Ms. Sun was researching the reporting problem.  Guihinn specifically forbade
Ms. Sun from doing any further research, and specifically forbade Ms.. Sun or
others from contacting First DataBank about this.

41.     In the Spring of 2003 the Global Marketing group had a pricing
meeting (called a margin analysis meeting) to discuss new drug pricing.  Ms. Sun
noticed that the spread was between three and five times greater on Baxter's
products than it was in the industry in general.  At a meeting (called a margin
analysis meeting) convened to discuss the pricing for one of Baxter's products,
Advate, Ms. Sun warned Poulios, Bradley, and Product Director Regina O'Hara
that the spread was too great, before she was silenced by Poulios.  The meeting

18

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

participants were given a written margin analysis writeup so that the participants could indicate their preferences for how to set the WAC, the AWP, and the spread. At the end of the meeting the participants were ordered to destroy the margin analysis report. Guihinn and John Park. Baxter's Global Produc Director, commented that Baxter Management would go to jail if the government ever discovered this material.

42.     In approximately July 2003, at a meeting with Baxter Human Resources personnel and Baxter management, to review Ms. Sun's performance (called a Talent Review Meeting) Poulios told Sun that Jim Howard, a vice-president of North American marketing said that Ms. Sun should visit Baxter customers so that she would understand that sales depended.

43.     In July, 2002, Ms. Sun learned of a pricing report for Advate prepared by Simon  Kucher & Partners, an international marketing consulting firm. Kucher & Partners recommended that to secure market share for Baxter had spent approximately $750,000 for a marketing study for this new product. In order to secure market share Baxter decided to sell Advate for $0.99 per dose, but to report an AWP of $1.60. Ms. Sun voiced her concern to Nick Poulios, John Park, and the VP of Global Marketing. When she warned that Baxter could get into trouble John Park joked that it was all an "innocent" mistake.

44.     Based upon internal documents she studied while working at Baxter, and discussions Ms. Sun had with pricing specialists and senior marketing

GH001764

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

executives, she learned that Baxter has engaged in similar falsification of WAC
with respect to its other pharmaceutical, hematological, and biological products.

## Best Price and Stark Violations

45.     Baxter had a marketing practice of offering "Volume Committed

Contracts" to institutional health care providers (such as hospitals, nursing homes,
and home health agencies).

46.     The Volume Committed Contracts offered such providers discounts
        of

between 50 – 90% off of the purchase price, depending upon the amount of market
share the provider could shift in Baxter's direction.  In an April, 2003 meeting to
discuss pricing policy for Advate and Recombinate, Bradley declared that the U.S.
marketing team was not worried about losing market share to competitors because
they had Volume Committed Contracts for most of their products which would be
in force for the next three years.

47.     Baxter's policy was to be extremely secretive about these contracts
because of their illegal nature.  When Ms. Sun questioned Bradley about the
legality of the Volume Committed Contracts, Bradley replied that Baxter's legal
department would clean up the contracts' language, but that the use of the
inducements contained in these contracts to control market share would continue
unabated.  Ms. Sun had the opportunity to see only one such contract, which was
passed from hand to hand at a pricing meeting in April 2003.  The contract was
read by Relator, Poulios, and John Park (Defendant's Global Products Director).

20

GH001765

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

Bradley then demanded the contract back.  Neither Ms. Sun nor any of the other executives were permitted to keep a copy of this contract.

48.     Ms. Sun is informed and believes and based thereon alleges that the discounts offered under the Volume Committed Contracts violated 42 U.S. §1396r -8 (c) because Baxter failed to offer prices to providers which were lower than the prices offered to the federal programs.

49.     The discounts Baxter offered to institutional providers under the Volume Committed Contracts also violated Stark II, 42 US. §1395nn which prohibits compensation arrangements such as Volume Committed Contracts between entities such as Baxter, which furnishes goods or services, and health care providers, which are in a position to order or refer patients for the receipt of such goods or services.

## Baxter Knew It's Conduct Was Illegal

50.     Before she was silenced by her superior, Ms. Sun made clear to Baxter

executives Poulios, Bradley, O'Hara, Guihinn and others that Baxter should not use the spread as the incentive for selling its products.  the spread was too great, that the prices reported upon which AWP was calculated should be reduced, and that the discounts offered by the Volume Committed Contracts were illegal.

51.     Larry Guihinn, Baxter BioScience's President evidenced his clear understanding of the legal ramifications of the misconduct alleged herein.  At a

21

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

meeting to discuss the pricing of Advate in the late spring or early summer of 2003, Guihinn warned that Baxter would get in trouble if the government were ever to see the margin analysis memo analyzing Baxter's pricing for all of its pharmaceutical, hematological, and biological products.  Park  promised Guihinn that the memorandum would not be attached to any emails, and that hard copies of the memorandum would be destroyed. This meeting was attended by Michael Baldrige, Baxter's Director of Planning, Bradley, Guihinn, Park , Poulios, and Ms. Sun, among others.

52.    In July 2003, after the Advate Pricing Meeting, Ms. Sun gave the Park

team  extensive written materials on the government's prosecution of TAP P for falsification of Lupron's AWP, and the $355 million False Claims Act settlement paid by AstraZeneca for Lupron's competing product, Zoladex.  Guihinn told Ms. Sun point blank, that "your job is to keep me out of jail."  When Poulios reported this to Park, Mike Baldridge, and Karen Chung (Associate Director of Medical Outcomes Research & Economics), Park, Baldridge, and Chung joked that they would not go to jail because they were ignorant of these practices.

## COUNT I

### SUBMISSION OF FALSE FEDERAL FALSE CLAIMS

53.    Relators repeat and reallege each allegation contained in paragraphs 1 through _52 above as if fully set forth herein.

54.    This is a *qui tam* civil action brought by Linnette Sun, Greg Hamilton

22

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

and the government of the United States to recover treble damages and civil penalties under 31 U.S.C. §3729(a) of the False Claims Act.

55.     Baxter violated 31 U.S.C. §3729(a) by conspiring, to present and by causing false claims to be present, used and then presented to the United States Government in connection with its fraudulent and illegal practices.

56.     The United States Government, by and through CMS, DHHS, RRB, OPM, CHAMPUS, and the VA, and possible other Federal agencies, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

57.     Had the United States Government known that Baxter was violating federal laws, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

58.     As a result of Baxter's violations of 31 U.S.C. §3729(a), the United States Government has been damaged in an amount in the millions of dollars, exclusive of interest.

59.     Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to §3730(b) on behalf of themselves and the United States Government.

## COUNT II

### STARK ACT, BEST PRICE VIOLATIONS OF FALSE CLAIMS ACT

23

GH001768

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

60.    Relators repeat and reallege each allegation contained in paragraphs

1 through ___ above as if fully set forth herein.

61.    This is a *qui tam* civil action brought by Linnette Sun, Greg Hamilton

and the government of the United States to recover treble damages and civil

penalties under 31 U.S.C. §3729(a) of the False Claims Act.

62.    Baxter violated 31 U.S.C. §3729(a) by conspiring, to present and by

causing false claims to be present, used and then presented to the United States

Government in connection with its fraudulent and illegal practices.

63.    The Stark Act II, 42 U.S.C.. §1395nn (a)(1), a civil penalty provision,

provides that if a Physician has a financial relationship with an entity,

> (A) the physician may not make a referral to the
> entity for the furnishing of designated health
> services for which payment otherwise may be
> made under this subchapter, and

> the entity may not present or cause to be presented
> a claim under this subchapter or bill to any
> individual, third party payor, or other entity for
> designated health services  furnished pursuant to a
> referral prohibited under subparagraph (A).

U.S.C.A. §1395nn(a)(1).

## *[HOW DO WE WORK IN VOLUME COMMITTED CONTRACTS AS A KICKBACK?]*

64.    The term "financial relationship" under the Stark Act includes

compensation arrangements between a physician and an entity. *See* 42 U.S.C.A.

GH001769

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

§1395nn (a)(2)(B).

65.     The term "designated health services" under the Stark Act includes clinical laboratory services, outpatient prescription drugs, and inpatient and outpatient hospital services. *See* 42 U.S.C.A. §1395nn (h)(6).

66.     Baxter violated 42 U.S.C.A. §1395nn(a) when it knowingly and willfully entered into arrangements in which providers were offered discounts based on their ability to move market share within their institutions, pursuant to Volume Committed Contracts.

67.     Although "safe harbor" regulations exist to protect certain relatively innocuous and even beneficial commercial arrangements, no such provision protects the discounts made by Baxter pursuant to its fraudulent schemes. The discounts by Baxter in this case were made for the sole purpose of increasing Baxter's profits at the expense of patients, it's competitors, and the federal and state governments. The discounts made by Baxter were even strategically based on the impact of choosing particular physicians and hospitals over others (in terms of the effect on Baxter's market share) and were conditioned on the volume and value of referrals made by participating physicians and hospitals. *[??]*

68.     38 U.S.C.A. § 8126, and the regulations based thereon, and contracts signed with Baxter by the federal programs listed herein below require that when drug manufacturers furnish their prescription products to Federal agencies, such as the Veterans' Administration, Public Health Service, including the Indian Health Service, and the Department of Defense, they must furnish them at the "best price."

GH001770

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

69.     In engaging in the fraudulent and illegal practices cited herein, including but not limited to the false reporting of WAC, *[??]* and the "Volume Committed Contracts," Baxter knowingly failed and refused to furnish its products to the Federal agencies at the best price, in violation of 38 U.S.C.A. § 8126, as these same discounts and rebates were not passed on to the Federal agencies.

70.     Compliance with applicable Medicare, Medicaid, best pricing requirements, and various other federal and state laws was an implied, and upon information and belief, also an express condition of payment of claims submitted to the United States Government by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

71.     Had the United States Government known that Baxter was violating federal laws, including the Anti-Kickback provisions, the Stark Act, and the best pricing requirements, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

72.     As a result of Baxter's violations of 31 U.S.C. §3729(a), the United States Government has been damaged in an amount in the millions of dollars, exclusive of interest.

73.     Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to §3730(b) on behalf of themselves and the United States Government. As a result of Baxter's violations of 31 U.S.C. §3729(a), the United

GH001771

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

States Government has been damaged in an amount in the millions of dollars, exclusive of interest.

## COUNT III

## RETALIATION IN VIOLATION OF 31 U.S.C. §3730(h)

74.     Relator Linnette Sun repeats and repleads and incorporate by reference herein each and every one of the allegations contained in paragraphs 1-52__, inclusive, as though fully set forth herein.

75.     Ms. Sun was retaliated against and fired from her employment at Baxter in direct retaliation for her efforts to investigate the false claims described hereinabove, her efforts to develop information which would be used in the prosecution of a false claims action, and her resistance to the submission of false claims. Defendant sued herein carried out these acts in violation of 31 U.S.C. §3730(h).

76.     As a direct, foreseeable, and legal result of said wrongful acts by Defendant, Ms. Sun has suffered and will continue to suffer substantial losses in earnings and other employment benefits, along with other incidental and consequential damages and losses, all in an amount to be proven at time of trial.

77.     As a further direct, foreseeable, and legal result of said wrongful acts of Defendant sued herein, Ms. Sun has suffered and will continue to suffer mental pain and anguish, all other damage in an amount to be proven at time of trial.

78.     As a further direct, foreseeable, and legal result of said wrongful acts

27

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

by said Defendant, Ms. Sun has incurred attorneys' fees and other consequential damages in an amount to be determined, for which Ms. Sun claims a sum to be established according to proof.

## COUNT III

## STARK ACT, BEST PRICE VIOLATIONS OF FALSE CLAIMS ACT

Relators repeat and reallege each allegation contained in paragraphs 1through \_\_\_\_ above as if fully set forth herein.

This is a qui tam civil action brought by Linnette Sun, Greg Hamiltonand the government of the United States to recover treble damages and civil penalties under 31 U.S.C. §3729(a) of the False Claims Act.

Baxter violated 31 U.S.C. §3729(a) by conspiring, to present and bycausing false claims to be present, used and then presented to the United States Government in connection with its fraudulent and illegal practices.

The Stark Act II, 42 U.S.C.. §1395nn (a)(1), a civil penalty provision, provides that if a Physician has a financial relationship with an entity, (A) the physician may not make a referral to the entity for the furnishing of designated health services for which payment otherwise may be made under this subchapter, and

> the entity may not present or cause to be presented a claim under this subchapter or bill to any individual, third party payor, or other entity for designated health services  furnished pursuant to a referral prohibited under subparagraph (A).

28

GH001773

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

U.S.C.A. §1395nn(a)(1).


[HOW DO WE WORK IN VOLUME COMMITTED CONTRACTS AS A KICKBACK?]


The term "financial relationship" under the Stark Act includescompensation arrangements between a physician and an entity. See 42 U.S.C.A. §1395nn (a)(2)(B).

The term "designated health services" under the Stark Act includesclinical laboratory services, outpatient prescription drugs, and inpatient and outpatient hospital services. See 42 U.S.C.A. §1395nn (h)(6).

Baxter violated 42 U.S.C.A. §1395nn(a) when it knowingly andwillfully entered into arrangements in which **

Although "safe harbor" regulations exist to protect certain relativelyinnocuous and even beneficial commercial arrangements, no such provision protects the discounts made by Baxter pursuant to its fraudulent schemes. The discounts by Baxter in this case were made for the sole purpose of increasing Baxter's profits at the expense of patients, it's competitors, and the federal and state governments. The discounts made by Baxter were even strategically based on the impact of choosing particular physicians and hospitals over others (in terms of the effect on Baxter's market share) and were conditioned on the volume and value of referrals made by participating physicians and hospitals. [??]

38 U.S.C.A. § 8126, and the regulations based thereon, and contractssigned

29

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

with Baxter by the federal programs listed herein below require that when drug manufacturers furnish their prescription products to Federal agencies, such as the Veterans' Administration, Public Health Service, including the Indian Health Service, and the Department of Defense, they must furnish them at the "best price."

In engaging in the fraudulent and illegal practices cited herein, includingbut not limited to the false reporting of WAC, [??] and the "Volume Committed Contracts," Baxter knowingly failed and refused to furnish its products to the Federalagencies at the best price, in violation of 38 U.S.C.A. § 8126, as these same discounts and rebates were not passed on to the Federal agencies.

Compliance with applicable Medicare, Medicaid, best pricingrequirements, and various other federal and state laws was an implied, and upon information and belief, also an express condition of payment of claims submitted to the United States Government by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

Had the United States Government known that Baxter was violatingfederal laws, including the Anti-Kickback provisions, the Stark Act, and the best pricing requirements, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

As a result of Baxter's violations of 31 U.S.C. §3729(a), the UnitedStates Government has been damaged in an amount in the millions of dollars, exclusive of interest.

Relators Sun and Hamilton are private persons with direct andindependent knowledge of the allegations of this Complaint, who have brought this action

30

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

pursuant to §3730(b) on behalf of themselves and the United States Government. As a result of Baxter's violations of 31 U.S.C. §3729(a), the United States Government has been damaged in an amount in the millions of dollars, exclusive of interest.

## COUNT VII

## MASSACHUSETTS FALSE CLAIMS ACT

79. Relators repeat and reallege each allegation contained in paragraphs 1 through 55 above as if fully set forth herein.

80. This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. 12 § 5(A) *et seq.*

81. Mass. Gen. Laws Ann. 12 § 5B provides liability for any person who(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

(3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

31

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

(9) is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

82.   Baxter violated Mass. Gen. Laws Ann. 12 § 5B and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Massachusetts from at least 1998 to the present by its reporting of false pricing statements regarding its products.

83.   The State of Massachusetts, by and through the Massachusetts Medicaid program and other state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

84.   Honest reporting of WAC data and provision of the best price to Medicaid was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Massachusetts.

85.   Had the State of Massachusetts known that Baxter was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

32

GH001777

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

86.     As a result of Baxter's violations of Mass. Gen. Laws Ann. 12 § 5B, the State of Massachusetts has been damaged in an amount to be determined, exclusive of interest.

87.     Relators Sun and Hamilton are a private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Mass. Gen. Laws Ann. 12 § 5(c)(2) on behalf of himself and the State of Massachusetts.

## COUNT VIII

## VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT

a.      Relators repeat and reallege each allegation contained in paragraphs 1 through 55 above as if fully set forth herein.

b.      This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650 *et seq.*

c.      Cal. Gov't Code § 12651(a) provides liability for any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof, a false claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

(3) conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.

33

GH001778

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

(8) is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

e.   Baxter violated California laws by knowingly allowing tens of thousands of false

claims to be submitted and presented to the State of California from at least 1998 to the present by its reporting of false pricing statements regarding its products.

f.   The State of California, by and through the California Medicaid program and

other state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

g.   Honest reporting of WAC data and provision of the best price to Medi-Cal was an

implied, and upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Baxter's fraudulent and illegal practices.

h.   Had the State of California known that Baxter was violating the federal and state

laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

34

GH001779

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

i.  As a result of Baxter's violations of Cal. Gov't Code §12651(a), the State of

California has been damaged in an amount to be determined exclusive of interest.

j.  Relators Sun and Hamilton are persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of himself and the State of California.

k.  This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

## COUNT VI

### FOR RETALIATORY DISCHARGE

### IN VIOLATION OF CALIFORNIA PUBLIC POLICY

l.  Relator Ms. Sun repeats and repleads and incorporate by reference herein each and every one of the allegations contained in paragraphs 1-55, inclusive, of the first, and second, causes of action, as though fully set forth herein.

m.  The public policy of California clearly mandates reporting suspected fraud and abuse in connection with the receipt and administration of government health care moneys, as evidenced by *California Government Code* §12650 et. seq. The state's public policies It also

35

GH001780

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

prohibit defendants sued herein from offering financial inducements to physicians in general (*California Business & Professions Code* §650.01)

n.    Defendant sued herein fired Ms. Sun for her opposition to their illegal activities.  Baxter's wrongful discharge of Sun was in retaliation for her refusal to destroy evidence, and her efforts to halt the defendant's wrongful conduct that violated California law and public policy, as set forth above, and her termination was willful and wanton misconduct.

o.    As a direct and proximate result of Baxter's willful and wanton misconduct, Sun is entitled to recover her lost wages, compensatory damages and punitive damages from Baxter Laboratories.

## COUNT VII

## VIOLATION OF THE CALIFORNIA GOVERNMENT CODE

88.    Relator Linette Sun repeats and realleges each allegation contained in paragraphs 1 through ___ above as if fully set forth herein.  *[??]*

89.    *ADD IN ALLEGATIONS RE DISCRIMINATION...*

90.    The conduct alleged hereinabove constitutes unlawful discrimination under *California Government Code* §12940(*??–DEPENDS ON TYPE OF DISCRIMINATION*) *et. seq.*,

91.    As a direct legal result of the actions of defendants, and each of them, Relator Linette Sun has suffered wage loss, job loss, impairment of earning capacity, emotional distress, and other damage in an amount to be proved.

36

GH001781

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

## COUNT VIII

### HAWAII FALSE CLAIMS ACT

92.    Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

93.    This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

94.    Haw. Rev. Stat. § 661-21(a) provides liability for any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(3) conspires to defraud the state by getting a false or fraudulent claim allowed or paid; or

(8) is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

95.    Baxter violated Haw. Rev. Stat. §661-21(a) and knowingly caused tens of

thousands of false claims to be made, used and presented to the State of Hawaii from

37

at least 1998 to the present by its violation of federal and state laws.

96.     The State of Hawaii, by and through the Hawaii Medicaid program and
        other state

health care programs, and unaware of Baxter's fraudulent and illegal practices, paid
the claims submitted by health care providers and third party payers in connection
therewith.

97.     Compliance with applicable Medicare, Medicaid and the various other
        federal and

state laws cited herein was an implied, and upon information and belief, also an
express condition of payment of claims submitted to the State of Hawaii in
connection with Baxter's fraudulent and illegal practices.

98.     Had the State of Hawaii known that Baxter was violating the federal and
        state

laws cited herein, it would not have paid the claims submitted by health care
providers and third party payers in connection with Baxter's fraudulent and illegal
practices.

99.     As a result of Baxter's violations of Haw. Rev. Stat. § 661-21(a) the
        State of

Hawaii has been damaged in an amount to be determined  exclusive of interest.

100.    Relators Sun and Hamilton are private persons with direct and
        independent knowledge of the allegations of this Complaint, who has
        brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of

38

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

himself and the State of Hawaii.

101.   This Court is requested to accept pendant jurisdiction of this related
state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts
separate damage to the State of Hawaii in the operation of its Medicaid program.

## COUNT VII

## ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT

102.   Relators repeat and reallege each allegation contained in paragraphs 1
through

55 above as if fully set forth herein.

103.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the
State of Illinois to recover  treble damages and civil penalties under the
Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.*

104.   740 ILCS 175/3(a) provides liability for any person who-

(1) knowingly presents, or causes to be presented, to an
officer or employee of the State or a member of the Guard
a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used,
a false record or statement to get a false or fraudulent claim
paid or approved by the State;

(3) conspires to defraud the State by getting a false or
fraudulent claim allowed or paid.

39

GH001784

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

105. Baxter violated 740 ILCS 175/3(a) and knowingly caused tens of
     thousands of

false claims to be made, used and presented to the State of Illinois from at least 1998
to the present by its violation of federal and state law as described herein.

106. The State of Illinois, by and through the Illinois Medicaid program and
     other state

health care programs, and unaware of Baxter's fraudulent and illegal practices, paid
the claims submitted by health care providers and third party payers in connection
therewith.

107. Compliance with applicable Medicare, Medicaid and various other
     federal and

state laws was an implied, and upon information and belief, also an express condition
of payment of claims submitted to the State of Illinois in connection with Baxter's
fraudulent and illegal practices.

108. Had the State of Illinois known that Baxter was violating the federal and
     state

laws cited herein, it would not have paid the claims submitted by health care
providers and third party payers in connection with Baxter's fraudulent and illegal
practices.

109. As a result of Baxter's violations of 740 ILCS 175/3(a), the State of
     Illinois has

been damaged in an amount to be determined  exclusive of interest.

GH001785

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

110.   Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to 740 ILCS 175/3(b) on behalf of himself and the State of Illinois.

111.   This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

## COUNT VIII

### FLORIDA FALSE CLAIMS ACT

112.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

113.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

114.   Fla. Stat. § 68.082(2) provides liability for any person who-

(a) knowingly presents, or causes to be presented, to an officer  or employee of an agency a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

41

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

(c) conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

115.   Baxter violated Fla. Stat. § 68.082(2) and knowingly caused tens of thousands of

false claims to be made, used and presented to the State of Florida from at least 1998 to the present by its violation of federal and state laws.

116.   The State of Florida, by and through the Florida Medicaid program and other state

healthcare programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

117.   Compliance with applicable Medicare, Medicaid and various other federal and

state laws was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Florida in connection with Baxter's fraudulent and illegal practices.

118.   Had the State of Florida known that Baxter was violating the federal and state

laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

119.   As a result of Baxter's violations of Fla. Stat. § 68.082(2), the State of

42

GH001787

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

Florida has

been damaged in an amount to be determined  exclusive of interest.

120.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of himself and the State of Florida.

121.   This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program.

## COUNT IX

## TEXAS FALSE CLAIMS ACT

122.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

123.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Texas to recover double damages and civil penalties under V.T.C.A. Hum. Res. Code § 36.001 *et seq.*

124.   V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who-

(1) knowingly or intentionally makes or causes to be made
a false statement or misrepresentation of a material fact:

43

GH001788

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

(a) on an application for a contract, benefit, or payment under the Medicaid program; or

(b) that is intended to be used to determine its eligibility for a benefit or payment under the Medicaid program.

(2) knowingly or intentionally concealing or failing to disclose an event:

(a) that the person knows affects the initial or continued right to a benefit or payment under the Medicaid program of:

(i) the person; or

(ii) another person on whose behalf the person has applied for a benefit or payment or is receiving a benefit or payment; and

(b) to permit a person to receive a benefit or payment that is not authorized or that is greater than the payment or benefit that is authorized;

(4) knowingly or intentionally makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

(b) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

125. Baxter violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused tens of

GH001789

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

thousands of false claims to be made, used and presented to the State of Texas from at least 1998 to the present by its violation of federal and state laws, as described herein.

126.   The State of Texas, by and through the Texas Medicaid program and other state

health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

127.   Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Baxter's fraudulent and illegal practices.

128.   Had the State of Texas known that Baxter was violating the federal and state laws

cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

129.   As a result of Baxter's violations of V.T.C.A. Hum. Res. Code § 36.002, the State

of Texas has been damaged in an amount to be determined  exclusive of interest.

130.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have

45

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of himself and the State of Texas.

131.   This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

## COUNT X

### TENNESSEE FALSE CLAIMS ACT

132.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

133.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 *et seq.*

134.   § 71-5-182(a)(1) provides liability for any person who-

(A) presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

(B) makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

46

GH001791

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

(C) conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

135.  Baxter violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused tens of

thousands of false claims to be made, used and presented to the State of Tennessee from at least 1998 to the present by its violation of federal and state laws as described herein.

136.  Baxter's violations of § 71-5-182 and various other federal and state laws caused

false claims to be submitted for payment to the State of Tennessee.

137.  The State of Tennessee, by and through the Tennessee Medicaid program and

other state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

138.  Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with Baxter's fraudulent and illegal practices.

139.  Had the State of Tennessee known that Baxter violated the federal and state laws

47

GH001792

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

140.   As a result of Baxter's violations of Tenn. Code Ann. § 71-5-182(a)(1), the State

of Tennessee has been damaged in an amount to be determined  exclusive of interest.

141.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(1) on behalf of himself and the State of Tennessee.

142.   This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

## COUNT XI

### DELAWARE FALSE CLAIMS AND REPORTING ACT

143.   Relators repeat and reallege each allegation contained in paragraphs 1 through55

above as if fully set forth herein.

144.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title 6, Chapter 12 of the Delaware Code.

48

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

145.   6 Del. C. § 1201(a) provides liability for any person who-

> (1) knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved; or

> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

146.   Baxter violated 6 Del. C. § 1201(a) and knowingly caused tens of thousands of

false claims to be made, used and presented to the State of Delaware from at least 1998 to the present by its violation of federal and state laws, as described herein.

147.   The State of Delaware, by and through the Delaware Medicaid program and other

state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

148.   Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Delaware in connection with Baxter's fraudulent and illegal practices.

149.   Had the State of Delaware known that Baxter was violating the federal

49

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

and state

laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

150.   As a result of Baxter's violations of 6 Del. C. § 1201(a), the State of Delaware has

been damaged in an amount to be determined exclusive of interest.

151.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to 6 Del. C. § 1203(b) on behalf of himself and the State of Delaware.

152.   This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

## COUNT XII

## LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW

153.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

154.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton, and

50

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law,  La. Rev. Stat. Ann. § 437.1 *et seq.*

155.  La. Rev. Stat. Ann. § 438.3 provides-

(A) No person shall knowingly present or cause to be presented a false or fraudulent claim;

(B) No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds;

(C) No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim;

156.  Baxter violated La. Rev. Stat. Ann. §438.3 and knowingly caused tens of

thousands of false claims to be made, used and presented to the State of Louisiana from at least 1998 to the present by its violation of federal and state laws as described herein.

157.  The State of Louisiana, by and through the Louisiana Medicaid program and other

state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

158.  Compliance with applicable Medicare, Medicaid and the various other

51

GH001796

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

federal and

state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Baxter's fraudulent and illegal practices.

159. Had the State of Louisiana known that Baxter was violating the federal and state

laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

160. As a result of Baxter's violations of La. Rev. Stat. Ann. § 438.3 the State of

Louisiana has been damaged in an amount to be determined exclusive of interest.

161. Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to La. Rev. Stat. Ann. §439.1(A) on behalf of himself and the State of Louisiana.

162. This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

## COUNT XIII

### NEVADA FALSE CLAIMS ACT

52

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

163. Relators repeat and reallege each allegation contained in paragraphs 1
through

55 above as if fully set forth herein.

164. This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the
State of Nevada to recover treble damages and civil penalties under the
Nevada False Claims Act, N.R.S. § 357.010, et. seq.

165. N.R.S. § 357.040(1) provides liability for any person who-

(a) knowingly presents or causes to be presented a false
claim for payment or approval;

(b) knowingly makes or uses, or causes to be made or used,
a false record or statement to obtain payment or approval
of a false claim;

(c) conspires to defraud by obtaining allowance or payment
of a false claim;

(h) is a beneficiary of an inadvertent submission of a false
claim and, after discovering the falsity of the claim, fails to
disclose the falsity to the state or political subdivision
within a reasonable time.

166. In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or
receipt of

anything of value in connection with the provision of medical goods or services for
which payment may be made in whole or in part under the Nevada Medicaid program.

167. Baxter violated  N.R.S. § 357.040(1) and knowingly caused tens of

53

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

thousands of

false claims to be made, used and presented to the State of Nevada from at least 1998 to the present by its violation of federal and state laws as described herein.

168.  The State of Nevada, by and through the Nevada Medicaid program and other

state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

169.  Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Baxter's fraudulent and illegal practices.

170.  Had the State of Nevada known that Baxter was violating the federal and state

laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

171.  As a result of Baxter's violations of N.R.S. § 357.040(1) the State of Nevada has

been damaged in an amount to be determined  exclusive of interest.

54

GH001799

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

172.  Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to N.R.S. § 357.080(1) on behalf of himself and the State of Nevada.

173.  This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

## COUNT XIV

## DISTRICT OF COLUMBIA PROCUREMENT REFORM AMENDMENT ACT

174.  Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

//

175.  This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.13 *et seq.*

176.  D.C. Code § 2-308.14(a) provides liability for any person who-

(1) knowingly presents, or causes to be presented, to an officer  or employee of the District a false claim for payment or approval;

GH001800

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

(3) conspires to defraud the District by getting a false claim allowed or paid by the District;

(8) is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

177. Baxter violated D.C. Code § 2-308.14(a) and knowingly caused tens of thousands

of false claims to be made, used and presented to the District of Columbia from at least 1998 to the present by its violation of federal and state laws as described herein.

178. The District of Columbia, by and through the District of Columbia Medicaid

program and other state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

179. Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the District of Columbia in connection with Baxter's fraudulent and illegal practices.

180. Had the District of Columbia known that Baxter was violating the

56

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

federal and

state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

181.   As a result of Baxter's violations of D.C. Code § 2-308.14(a) the District of

Columbia has been damaged in an amount to be determined  exclusive of interest.

182.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to D.C. Code § 2-308.15(b)  on behalf of himself and the District of Columbia.

183.   This Court is requested to accept pendant jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

## COUNT XV

## NEW MEXICO MEDICAID FALSE CLAIMS ACT

184.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

185.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the

GH001802

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

State of New Mexico for treble damages and penalties under (New Mexico's Medicaid False Claims Act*).*

186.   (New Mexico's Medicaid False Claims Act*).*  provides liability for any person

who

> (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;
>
> (3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;
>
> (4) is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

187.   Baxter violated New Mexico's Medicaid False Claims Act  and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of New Mexico from at least 1998 to the present by its reporting of false pricing statements regarding its products.

188.   The State of New Mexico, by and through the New Mexico Medicaid program and other state health care programs, and unaware of Baxter's fraudulent and

58

GH001803

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

189.   Honest reporting of WAC data and provision of the best price to Medicaid was an

implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico.

190.   Had the State of New Mexico known that Baxter was violating the federal and

state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

191.   As a result of Baxter's  violations of (New Mexico's Medicaid False Claims Act),

the State of New Mexico has been damaged in an amount to be determined, exclusive of interest.

//

//

192.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to (New Mexico's Medicaid False Claims Act). on behalf of themselves and the State of New Mexico.

## COUNT XVI

59

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

## VIRGINIA FRAUD AGAINST TAXPAYERS ACT

193.  Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein.

194.  This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Virginia for treble damages and penalties under Virginia Fraud Against Taxpayers Act, (Virginia Code Chapter 3,  Article 19.1 § 8.01 *et seq.)*

195.  (Virginia Code Chapter 3,  Article 19.1 § 8.01 *et seq.)* provides liability for any

person who

> (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

> (3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

> (4) is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

60

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

//

//

196.   Baxter violated  (Virginia Code Chapter 3,  Article 19.1 § 8.01 *et seq.)* and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Virginia from at least 1998 to the present by its reporting of false pricing statements regarding its products.

197.   The State of Virginia, by and through the Virginia Medicaid program and other state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

198.   Honest reporting of WAC data and provision of the best price to Medicaid was an

implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Virginia.

199.   Had the State of Virginia known that Baxter was violating the federal and

state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

200.   As a result of Baxter's violations of (Virginia Code Chapter 3, Article 19.1 §

GH001806

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

8.01 *et seq.)* , the State of Virginia has been damaged in an amount to be determined, exclusive of interest.

201.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to (Virginia Code Chapter 3, Article 19.1 § 8.01 *et seq.)* on behalf of themselves and the State of Virginia.

//

//

//

## COUNT XVII

### UTAH FALSE CLAIMS ACT

202.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein

203.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Utah for treble damages and penalties under Utah's False Claims Act, Utah Health Code Title 26 *et seq.*

204.   (Utah Health Code Title 26) provides liability for any person who

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval

62

GH001807

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

of a claim by the commonwealth or any political subdivision thereof;

(3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(9) is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

205.  Baxter violated (Utah Health Code Title 26)  and knowingly caused hundreds

of thousands of false claims to be made, used and presented to the State of Utah from at least 1998 to the present by its reporting of false pricing statements regarding its products.

//

206.  The State of Utah, by and through the Utah Medicaid program and other state

health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

207.  Honest reporting of WAC data and provision of the best price to Medicaid was an

implied, and upon information and belief, also an express condition of payment of

63

GH001808

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

claims submitted to the State of Utah.

208.   Had the State of Utah known that Baxter was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

209.   As a result of Baxter's violations of (Utah Health Code Title 26) the State of

Utah has been damaged in an amount to be determined, exclusive of interest.

210.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to (Utah Health Code Title 26) on behalf of themselves and the State of Utah.

## COUNT XVIII

## ARKANSAS MEDICAID FRAUD FALSE CLAIMS ACT

211.   Relators repeat and reallege each allegation contained in paragraphs 1 through

55 above as if fully set forth herein

212.   This is a *qui tam* action brought by Linnette Sun, Greg Hamilton and the State of Arkansas for treble damages and penalties under Arkansas's Medicaid Fraud False Claims Act, (Arkansas Code *§20-77-901 et. Seq.)*

213.   (Arkansas Code *§20-77-901 et. Seq.)*  provides liability for any person

GH001809

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

who

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

(3) conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(9) is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

214.    Baxter violated  (Arkansas Code *§20-77-901 et. Seq.)*  and knowingly caused

hundreds of thousands of false claims to be made, used and presented to the State of Arkansas from at least 1998 to the present by its reporting of false pricing statements regarding its products.

215.    The State of Arkansas, by and through the Arkansas Medicaid program and other

state health care programs, and unaware of Baxter's fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

65

GH001810

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

216.   Honest reporting of WAC data and provision of the best price to Medicaid was an

implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Arkansas.

217.   Had the State of Arkansas known that Baxter was violating the federal and

state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Baxter's fraudulent and illegal practices.

//

218.   As a result of Baxter's violations of (Arkansas Code *§20-77-901 et. Seq.*) the

State of Arkansas has been damaged in an amount to be determined, exclusive of interest.

219.   Relators Sun and Hamilton are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to (Arkansas Code *§20-77-901 et. Seq.*) on behalf of themselves and the State of Arkansas.


## PRAYER FOR RELIEF

## FIRST CAUSE OF ACTION

66

GH001811

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

1.  Judgement be ordered against the Defendant in an amount equal to three times the damages sustained by the United States as a result of Defendants' conduct;

2.  A civil penalty be assessed of not less than five thousand, five hundred dollars ($5,500.00) and not more than eleven thousand dollars ($11,000.00) for each violation of 31 U.S.C. § 3729;

3.  That Relators, as Qui Tam Plaintiffs, be awarded the maximum amount allowed pursuant to 31 U.S.C. §3730(d) and/or any other applicable provision of law;

4.  Attorneys' fees and costs according to proof;

## SECOND CAUSE OF ACTION

5.  General damages;

6.  Two times the amount of back pay;

7.  Interest upon said back pay;

8.  Special damages;

//

9.  Reinstatement with full seniority;

10. Litigation expenses and reasonable attorneys' fees;

## THIRD CAUSE OF ACTION

11. General damages;

12. Back pay;

67

GH001812

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

13.  Interest upon said back pay;

14.  Special damages;

15.  Exemplary damages;

16.  Reinstatement with full seniority;

17.  Litigation expenses and reasonable attorneys' fees;

## FOURTH CAUSE OF ACTION

To the STATE OF MASSACHUSETTS:

18.  Three times the amount of actual damages which the State of Massachusetts has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

19.  A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Massachusetts;

20.  Prejudgment interest; and

21.  All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

22.  The maximum amount allowed pursuant to Mass. Gen. Laws Ann. 12 § 5(A) and/or any applicable provision of law;

23.  Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

24.  An award of reasonable attorneys' fees and costs.

68

GH001813

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

## FIFTH CAUSE OF ACTION

To the STATE OF CALIFORNIA:

25.   Three times the amount of actual damages which the State of California has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

26.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of California;

27.   Prejudgment interest; and

28.   All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

29.   The maximum amount allowed pursuant to Cal. Gov't. Code § 12650 and/or any applicable provision of law;

30.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

31.   An award of reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

To the STATE OF HAWAII:

32.   Three times the amount of actual damages which the State of Hawaii has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

69

GH001814

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

33. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Hawaii;

34. Prejudgment interest; and

35. All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

36. The maximum amount allowed pursuant to Haw. Rev. Stat. § 661-21 and/or any applicable provision of law;

37. Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

38. An award of reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

To the STATE OF ILLINOIS:

39. Three times the amount of actual damages which the State of Illinois has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

40. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Illinois;

41. Prejudgment interest; and

42. All costs incurred in bringing this action.

70

GH001815

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

To RELATOR, Linnette Sun:

43. The maximum amount allowed pursuant to 740 ILCS 175 and/or any applicable provision of law;

44. Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

45. An award of reasonable attorneys' fees and costs.

//

## EIGHTH CAUSE OF ACTION

To the STATE OF FLORIDA:

46. Three times the amount of actual damages which the State of Florida has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

47. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Florida;

48. Prejudgment interest; and

49. All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

50. The maximum amount allowed pursuant to Fla. Stat. § 68.081 and/or any applicable provision of law;

51. Reimbursement for reasonable expenses which Relator incurred in

71

GH001816

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

connection with this action; and

52.   An award of reasonable attorneys' fees and costs.

## NINTH CAUSE OF ACTION

To the STATE OF TEXAS:

53.   Three times the amount of actual damages which the State of Texas has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

54.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Texas;

55.   Prejudgment interest; and

56.   All costs incurred in bringing this action.

//

To RELATOR, Linnette Sun:

57.   The maximum amount allowed pursuant to Tex. Stat. §V.T.C.A. Hum. Res. Code § 36.001 and/or any applicable provision of law;

58.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

59.   An award of reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION

To the STATE OF TENNESSEE:

72

GH001817

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

60.   Three times the amount of actual damages which the State of Tennessee has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

61.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Tennessee;

62.   Prejudgment interest; and

63.   All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

64.   The maximum amount allowed pursuant to Tenn. Code  Ann. §§ 71-5-181  and/or any applicable provision of law;

65.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

66.   An award of reasonable attorneys' fees and costs.

//

//

//

## ELEVENTH CAUSE OF ACTION

To the STATE OF DELAWARE:

67.   Three times the amount of actual damages which the State of Delaware has sustained as a result of Baxter Laboratories' fraudulent and illegal

73

GH001818

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

practices;

68. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Delaware;

69. Prejudgment interest; and

70. All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

71. The maximum amount allowed pursuant to Title 6, Chapter 12 of the Delaware Code and/or any applicable provision of law;

72. Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

73. An award of reasonable attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION

To the STATE OF LOUISIANA:

74, Three times the amount of actual damages which the State of Louisiana has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

75. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Louisiana;

76. Prejudgment interest; and

74

GH001819

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

77.　All costs incurred in bringing this action.

//

To RELATOR, Linnette Sun:

78.　The maximum amount allowed pursuant to La. Rev. Stat. Ann. § 437.1 and/or any applicable provision of law;

79.　Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

80.　An award of reasonable attorneys' fees and costs.

## THIRTEENTH  CAUSE OF ACTION

To the STATE OF NEVADA:

81.　Three times the amount of actual damages which the State of Nevada has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

82.　A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the State of Nevada;

83.　Prejudgment interest; and

84.　All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

85.　The maximum amount allowed pursuant to N.R.S. § 357.010 and/or any applicable provision of law;

75

GH001820

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

86.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

87.   An award of reasonable attorneys' fees and costs.

//

//

//

## FOURTEENTH CAUSE OF ACTION

To the DISTRICT OF COLUMBIA:

88.   Three times the amount of actual damages which the District of Columbia has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

89.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the District of Columbia;

90.   Prejudgment interest; and

91.   All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

92.   The maximum amount allowed pursuant to D.C. Code § 2-308.13 and/or any applicable provision of law;

93.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

76

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

94.    An award of reasonable attorneys' fees and costs.

## FIFTEENTH CAUSE OF ACTION

To the STATE OF NEW MEXICO:

95.    Three times the amount of actual damages which the District of Columbia has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

96.    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the District of Columbia;

97.    Prejudgment interest; and

98.    All costs incurred in bringing this action.

//

To RELATOR, Linnette Sun:

99.    The maximum amount allowed pursuant to D.C. Code § 2-308.13 and/or any applicable provision of law;

100.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

101.   An award of reasonable attorneys' fees and costs.

## SIXTEENTH CAUSE OF ACTION

To the STATE OF VIRGINIA:

102.   Three times the amount of actual damages which the District of

77

GH001822

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

Columbia has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

103.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the District of Columbia;

104.   Prejudgment interest; and

105.   All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

106.   The maximum amount allowed pursuant to D.C. Code § 2-308.13 and/or any applicable provision of law;

107.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

108.   An award of reasonable attorneys' fees and costs.

//

//

//

## SEVENTEENTH CAUSE OF ACTION

To the STATE OF UTAH:

109.   Three times the amount of actual damages which the District of Columbia has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

78

GH001823

*DRAFT January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

110. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the District of Columbia;

111. Prejudgment interest; and

112. All costs incurred in bringing this action.

To RELATOR, Linnette Sun:

113. The maximum amount allowed pursuant to D.C. Code § 2-308.13 and/or any applicable provision of law;

114. Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

115. An award of reasonable attorneys' fees and costs.

## EIGHTEENTH CAUSE OF ACTION

To the STATE OF ARKANSAS:

116. Three times the amount of actual damages which the District of Columbia has sustained as a result of Baxter Laboratories' fraudulent and illegal practices;

117. A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Baxter Laboratories caused to be presented to the District of Columbia;

118. Prejudgment interest; and

119. All costs incurred in bringing this action.

79

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

//

To RELATOR, Linnette Sun:

120. The maximum amount allowed pursuant to D.C. Code § 2-308.13 and/or any applicable provision of law;

121. Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

122. An award of reasonable attorneys' fees and costs.

### FOR ALL CAUSES OF ACTION

123. Such other and further relief as the Court deems proper.

DATED: January ___, 2005     LAW   OFFICES OF MARK ALLEN KLEIMAN


B      y      :
_____

MARK ALLEN KLEIMAN
California State Bar No. 115959
11755 Wilshire Blvd., Ste. 2150
Los Angeles, CA 90025
310-442-4820
310-442-4830 (fax)

DATED: January___, 2005     LAUREN JOHN UDDEN


B      y      :
_____

LAUREN JOHN UDDEN

80

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

California State Bar No. 83118
15 W. Carrillo Street, Suite B
Santa Barbara, California 93101
805-879-7544
805-962-7501 (fax)

ATTORNEYS FOR RELATOR
## DEMAND FOR JURY TRIAL

Relator hereby demands a jury trial.

DATED: January_____, 2005          LAW    OFFICES   OF MARK ALLEN
KLEIMAN

B                              y                    :
_____

MARK ALLEN KLEIMAN
California State Bar No. 115959
12400 Wilshire Blvd., 4th Floor
Los Angeles, CA 90025
310-442-4820
310-442-4830 (fax)

DATED: January _____, 2005          LAUREN JOHN UDDEN

B                              y                    :
_____

LAUREN JOHN UDDEN
California State Bar No. 83118

81

GH001826

*DRAFT  January 5, 2010 (2:47pm)*
*complaint draft 4.2.wpd*

15 W. Carrillo Street, Suite B
Santa Barbara, California 93101
805-879-7544
805-962-7501 (fax)

ATTORNEYS FOR RELATOR

GH001827