# Exhibit 63

*State of California ex rel. Ven-A-Care of the Florida Keys, Inc.  v. Abbott Laboratories, Inc., et al.*, **Master Civil Action No. 01-12257-PBS, Subcategory Case No. 06-11337**

Exhibit to the January 29, 2010 Declaration of Philip D. Robben in Support of Defendants' Joint Sur-Reply Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment

FINAL STATEMENT OF REASONS

R-72-89

The fiscal year 1989-90 Budget Act (Chapter 93, Statutes of 1989) reduced funding for drug products provided through the Medi-Cal program. Section 14105 of the Welfare and Institutions (W&I) Code authorized the Director of Health Services to limit rates of payment for health care services in order to implement the budgeting decisions of the Legislature.

Federal regulations at Section 447.301, 447.302, 447.304, 447.331, 447.332, 447.333 and 447.334, Title 42, Code of Federal Regulations (CFR), as amended effective October 29, 1987, require states to base reimbursement for drug products on the best estimate of the price generally and currently paid by providers for a drug marketed or sold by a particular manufacturer or labeler in the package size of drugs most frequently purchased by providers. The Health Care Financing Administration (HCFA) has informed the Department that a number of studies have shown that in recent years the drug marketplace has changed and that the Average Wholesale Price (AWP) levels contained in various commercially available publications overstate the prices that pharmacists actually pay for drugs by as much as 10-20 percent because they don't reflect discounts, premiums, special offers or other incentives. Consequently, absent valid documentation to the contrary, HCFA will not accept a published AWP as a state's best estimate of prices generally and currently paid by providers. (November 9, 1988 letter from John O'Hara is included in the rule making file.)

The analysis of a statewide survey of current practices and acquisition costs for Medi-Cal drug products (a copy of this analysis is included in the rulemaking file), and Department paid claims data for December, 1988 and January, February and March 1989 (included in the rulemaking file), indicated that using AWP minus five percent as the Estimated Acquisition Cost (EAC) for drug products would result in a savings of approximately $4.6 million ($2.3 million General Fund, $2.3 million federal funds).

The Department is amending Section 51513, Title 22, California Code of Regulations (CCR), to revise Medi-Cal reimbursement rates for drug products to comply with the fiscal year 1989-90 Budget Act (Chapter 93, Statutes of 1989), Section 14105, W&I Code, and the amendments to federal regulations cited above.

This regulation is needed to comply with the clarity requirement of Section 11349 and 11349.1 of the Government Code by defining terminology used in the Medi-Cal program. Without these definitions, program terminology could be misunderstood by providers and beneficiaries, resulting in confusion. Section 51513, Title 22, CCR is amended to distinguish between Estimated Acquisition Cost (EAC) for medical supply product and EAC for a drug product. This amendment clarifies the method to determine EAC for a drug product, by specifying that EAC is AWP minus

LEGISLATIVE INTENT SERVICE    (800) 666-1917

five percent or the direct price pursuant to Section 51513.5, Title 22, CCR.

This amendment was operative October 16, 1989, because W&I Code, Section 14105.7 (b) requires the Department to provide a 30-day notice to pharmacies of any reduction in drug product cost reimbursement.

Local Mandate Determination

The proposed regulations will not impose a new mandate on local agencies or school districts which must be reimbursed by the State pursuant to Part 7 (commencing with Section 17500) of Division 4 of the Government Code.

Alternatives Considered

Volume purchasing and subcontracting with the Department of General Services for the purchase and distribution of Medi-Cal prescription drugs were alternatives considered by the Department.

The alternatives reviewed reduced the choice of drugs, thereby limiting the ability of physicians or pharmacist to order drugs they believe are most suitable for Medi-Cal patients. In addition, the alternatives required pharmacists to maintain dual inventories and increased prior authorization request. An extensive analysis of alternative methods of reducing Medi-Cal drug cost indicated that AWP minus five percent as a pricing mechanism has the greatest savings with the least disruption to the Medi-Cal drug distribution system.

The Department has determined that no alternatives considered would be more effective in carrying out the purpose for which the regulation is proposed or would be less burdensome to affected private persons than the proposed regulations.

(800) 666-1917

LEGISLATIVE INTENT SERVICE

RM - 237