# EXHIBIT 1

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
        In re:                          )
 4      PHARMACEUTICAL INDUSTRY         ) CA No. 01-12257-PBS
        AVERAGE WHOLESALE PRICE         ) MDL No. 1456
 5      LITIGATION                      )
 6
 7
 8                        MOTION HEARING
 9             BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
10
11
12
13
                                United States District Court
14                              1 Courthouse Way, Courtroom 19
                                Boston, Massachusetts
15                              July 6, 2006, 11:35 a.m.
16
17
18
19
20
21
22
                          LEE A. MARZILLI
23                   CERTIFIED REALTIME REPORTER
                    United States District Court
24                  1 Courthouse Way, Room 3205
                       Boston, MA  02210
25                       (617)345-6787
```

```
 1   I've got to make a decision today.  Here's my problem.  I
 2   know you have to be somewhere because of your wife, but as I
 3   understand the affidavit from the government, I need to tell
 4   them today to get in line.  I'm not going to be done by, I
 5   doubt, by 12:15.
 6            MR. WILMOT:  I'll just get there when I get there.
 7            THE COURT:  Well, we can see what we can do.  So
 8   why don't you come up, sir, and see how far I can go.
 9            I don't know why you volunteered to do it.  Just a
10   good egg?
11            MR. WILMOT:  Everyone's on vacation upstairs.
12                     JOHN ALEXANDER FLETCHER
13   having been first duly sworn, was examined and testified as
14   follows:
15            THE COURT:  For the record, what's your name?  And
16   please spell it.
17            THE WITNESS:  John Alexander Fletcher, J-o-h-n
18   A-l-e-x-a-n-d-e-r F-l-e-t-c-h-e-r.
19            THE COURT:  All right, although I know you didn't
20   have a lot of choice, I do appreciate your coming up because
21   this is an extremely important lawsuit, I think to everyone
22   in this room, and the notice issues have become paramount
23   very quickly.
24            THE WITNESS:  You're very welcome, your Honor.
25            THE COURT:  Are you the one who signed the
```

1  affidavit?

2          THE WITNESS:  Yes, ma'am.  Yes, your Honor.

3          THE COURT:  And to whom do you report?  What's your
4  position exactly?

5          THE WITNESS:  I am Division Director of the
6  Division of Medicare and Medicaid Utilization Data
7  Development in the Enterprise Database Group in the Office of
8  Information Services at the Center for Medicare and Medicaid
9  Services in the Department of Health and Human Services.

10         THE COURT:  What do you say for short?

11         THE WITNESS:  DMUD, I'm the Division Director for
12 DMUD.

13         THE COURT:  And to whom do you report?  Do you
14 report directly to the Director?

15         THE WITNESS:  I report to Frank Cipolloni, who's
16 the Group Director for EDG, Enterprise Database Group.

17         THE COURT:  And he reports to the Director.

18         THE WITNESS:  Director of Centers for Medicare?

19         THE COURT:  Yes.

20         THE WITNESS:  He reports to the Chief Information
21 Officer, who is currently Julie Boughn.  She's the new acting
22 office director, and she reports to John Dyer, who is the
23 Office of the Administrator, and he's the assistant to the
24 Office of the Administrator, who does report to Mark
25 McClellan.

1  estimated amount of time that it would take for any given
2  kind of --
3        THE COURT:  Different types of requests have
4  different standards, yes, ma'am.
5        THE COURT:  You don't do it on pure billables?
6        THE WITNESS:  No, ma'am.  The machine time is done,
7  is estimated based on billable-type stuff, but it's really
8  averaged out.
9        THE COURT:  Now, as I understand what you said --
10 we're only having one trial immediately coming up, which is
11 with respect to AstraZenica's drug, so if I just wanted one
12 drug going back to 1991, you're telling me it would take the
13 same amount of time as if I had multiple drugs?
14       THE WITNESS:  Close to the same amount of time, a
15 very marginal less amount of time.  It's the amount of time
16 it's going to take to search through 15 billion claims.
17 Whether I'm looking for one drug or thirty-four drugs, it's
18 the effort of going through 15 billion claims that's going to
19 cost the money.
20       THE COURT:  The 300 drugs may actually slow it down
21 some?
22       THE WITNESS:  Again, marginally.  If there is a
23 phase two to this, we would suggest that it would be cheaper
24 and more efficient to ask for that all at once and to take
25 the time it takes to get it and get it out at one time.

Page 16

1    THE COURT: I've done it in two tracks. Now,
2    suppose I decide, just simply because of the timing in my
3    case, the Track 1, I don't want any delay from whatever it
4    takes to get in the Track 2 lawyers and all this. So when
5    I'm doing this again, so I don't run into this problem again,
6    I have to count on six months for any suit from 1991 to the
7    present basically?
8    THE WITNESS: That would be a standard answer from
9    us, yes, ma'am.
10   THE COURT: And if I wanted the more current data,
11   we're talking about three months?
12   THE WITNESS: Yes, your Honor.
13   THE COURT: And that's defined as 1998 to
14   whenever?
15   THE WITNESS: Yes, your Honor. We're rapidly
16   approaching the point where it would be 2000 and forward. In
17   other words, '98 and '99 are about ready to be dropped off.
18   THE COURT: You had certain expectations that come
19   this fall, we were going to run into problems, so I need it
20   to get in the queue, like, now.
21   THE WITNESS: Yes, ma'am, we have a lot of business
22   coming up this fall.
23   THE COURT: So I should get in the queue, you had
24   said, by tomorrow. Why? Somebody said by tomorrow. You
25   don't know? All right.

1       THE WITNESS:  Our data is considered complete for
2  2005, in that at the end of the June update, it will be
3  98 percent.  Statistically, we will have received all the
4  data we'll ever receive for that year.  At that point, most
5  of the people who are interested in that data will start
6  asking for it, so come in August, we will receive a lot of
7  requests.
8       THE COURT:  So when I hit Track 2, I need to get
9  that in line on the queue before September.
10      THE WITNESS:  You would be well served.
11      THE COURT:  All right, so thank you.  This is all
12 very helpful.  Is there a bulletin that Medicare sends out to
13 all its beneficiaries?
14      THE WITNESS:  Yes, ma'am.  We have a bulletin
15 called "Medicare and You."
16      THE COURT:  So is it possible to put a notice, a
17 class action notice to make sure we reached --
18      THE WITNESS:  I would not know, I apologize, I'm
19 not in the press office, how that bulletin is produced.
20      THE COURT:  Do you know who is the person to
21 contact?
22      THE WITNESS:  I'm afraid I do not know.  I would be
23 happy to find that for you.
24      MR. WILMOT:  I can try to find that out this
25 afternoon, your Honor.

Page 56

1  that's another legal issue we have to work through.  And
2  whether they actually paid and whether they have proof of a
3  claim, it's a mess the further back we go.  So I'm not as
4  worried about the heirs as I am the Medicare beneficiaries.
5          So that will push the trial into March, right?
6  Right.  So we're going to have to come up with a plan that
7  backs that out.  We'll have the plan for the third-party
8  payors, at least with respect to Class 2; open mind about
9  Class 3, okay.
10         You need to come up with a game plan with respect
11 the Track 2 defendants because I don't want to be here again,
12 and we need to come up with a second request.  I'm not going
13 to lump it all at this point unless you can get it together.
14 He said that would delay it some.  I don't want to be there.
15 He said that would delay it some, and I don't want to be
16 there.  That would be too complicated.  They have the
17 right -- they complained in the summary judgment, I think it
18 was, that whatever I ruled here was likely to affect them,
19 and I thought that was right, so I let them add briefs in.
20 So we need to get that in before we hit that mess in
21 September, either a hurricane or the update for the new
22 Medicare Part -- what are they called, Part D beneficiaries?
23         MR. SOBOL:  Right.
24         THE COURT:  We need to get that in the queue.  And
25 as he was leaving, when I said that, Mr. Fletcher nodded, he

1  was right on the mark on that.  So we need to get that in
2  soon for the Track 2 people so that we can just follow right
3  on.
4            MR. SOBOL:  May I address part of that, your
5  Honor?
6            THE COURT:  And you need to give me deadlines for
7  the third-party payors, when you can get those out, and what
8  the opt-outs should be.
9            MR. SOBOL:  Right.  Should we -- well, I want to
10 make one comment about the Class 3 first, and then we'll go
11 down to the Track 2 issue.  On the Class 3, we'll also
12 identify what the Massachusetts publications would be and
13 whether or not they're local third-party payors; you know,
14 Massachusetts Blue Cross Blue Shield, Tufts --
15           THE COURT:  Why do I even need publications if you
16 can mail them out directly to the third-party payors?
17           MR. SOBOL:  I mean, it's probably inexpensive
18 enough that we would do publication anyway to be
19 overinclusive, but let me find out what the answer is also,
20 okay?  Plus you probably have a bunch of minor plans, that
21 kind of thing.  You can't reach out to every health and
22 welfare plan, that kind of thing.  So we'll put that
23 together.
24           Right now you have the Track 2 class certification
25 hearing scheduled for later this month, July 20, and the --

Page 58

1  THE COURT: Oh, is that what I allowed them to
2  separately -- what did I allow them to separately brief?
3  There are so many briefs coming in right now.
4  MR. SOBOL: You got me on that.
5  THE COURT: Summary judgment, summary judgment,
6  yes.
7  MR. SOBOL: Okay. And the plaintiffs' brief is
8  coming in on July 15. We haven't had a chance -- I was just
9  apprised of this issue this morning, so I haven't had a
10 chance to speak to the Track 2 defendants yet about this, but
11 we're probably going to want to see if we could bump that
12 hearing slightly, but I didn't know what your schedule was or
13 what your law clerk situation was either with respect to
14 that.
15 THE COURT: I'm not so worried about the class
16 certification argument as much as I am getting in line for
17 the data. The notices, I thought you did a great job. I
18 mean, I didn't have anything to add to it other than whether
19 I needed my signature on the publication one, and I'm just
20 happy not to have it there if I don't need it there. So the
21 only thing I guess I'm thinking about isn't clear is the
22 court notice?
23 MR. SOBOL: Well, actually, you know, to put things
24 in line, all they have to do is make the data request, and
25 whatever the Court --

Page 59

1           THE COURT: Right, I just want you to do that.
2           MR. SOBOL: That's fine. We can take care of that.
3           THE COURT: I just want you to do that because I
4    think you need to give an attachment, you need to give
5    exactly what drugs. But I don't want it to slow down this
6    piece of it.
7           MR. SOBOL: Right, okay.
8           THE COURT: And you need to tell the Track 2
9    people -- is anyone here from Track 2? You all? So are you
10   the liaisons? Just for the --
11          MR. DeMARCO: We're not liaisons, Judge.
12          THE COURT: Just for the record, why don't you
13   state your name.
14          MR. DeMARCO: My name is Michael DeMarco, and I'm
15   here with Jim Muehlberger. We represent Aventis, and we've
16   been doing some work on behalf of the Track 2s, and there may
17   be other Track 2 representatives here as well.
18          THE COURT: Who's the liaison? Is there one?
19          MR. DeMARCO: There is no liaison, your Honor.
20          THE COURT: All right. Well, could you give them a
21   heads-up about what we just -- because they're going to send
22   out for the information so that we're not backing this -- I
23   don't fall into this again. It would be for the six months
24   without people who are deceased. Isn't that how we've pretty
25   much done it?