# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE TRACK TWO SETTLEMENT APPROVAL OF THE FORM AND METHOD OF NOTICE TO THE CLASS AND SCHEDULING OF A FAIRNESS HEARING**

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ........................................................................................................1

II.     BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS ...........................................2

III.    DESCRIPTION OF THE PROPOSED SETTLEMENT .....................................................3

    A.      The Proposed Settlement Classes ............................................................................3

    B.      Total Settlement Amount and Allocation ................................................................4

    C.      The Proposed Notice Plan........................................................................................4

    D.      The Claims Process...................................................................................................7

    E.      Calculation of Payments ..........................................................................................9

    F.      Attorneys' fees and Expenses and Class Representative Compensation.............14

IV.     ARGUMENT ..............................................................................................................14

    A.      The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and
          23(b)(3) for Purposes of Settlement........................................................................15

          1.      The Requirements of Rule 23(a) have been satisfied ................................15

    B.      Preliminary Approval is Appropriate.....................................................................16

          1.      The proposed Settlement is sufficiently fair, reasonable and
               adequate for preliminary approval ............................................................18

          2.      The proposed Settlement is the result of arduous, arm's lenth
               negotiations conducted by highly experienced counsel............................20

          3.      Sufficient discovery has been conducted in this matter to allow
               counsel to fairly investigate the pertinent legal and factual issues ...........21

    C.      The Court Should Order Notice Be Provided to the Class and Schedule a
          Full Fairness Hearing...............................................................................................21

V.      CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re "Agent Orange" Prod. Liability Litigation*, 597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................................................................20

*Air Lines Stewards & Stewardesses Association Local 550 v. American Airlines, Inc.*, 455 F.2d 101 (7th Cir. 1972) ..............................................................22

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................14, 15, 22

*Argo v. Harris*, 84 F.R.D. 646 (E.D.N.Y. 1979)....................................................................19

*Armstrong v. Board of Sch. Director*, 616 F.2d 305 (7th Cir. 1980)................................19

*Carlough v. Amchem Products, Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993) ............................21

*City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041 (1st Cir. 1996) ....................................................................................................15, 20, 21

*In re Compact Discount Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197 (D. Me. 2003) ......................................................................................16

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985)....................................17

*Duhaime v. John Hancock Mutual Life Insurance Co.*, 183 F.3d 1 (1st Cir. 1999) ..........16

*Durrett v. Housing Authority of Providence*, 896 F.2d 600 (1st Cir. 1990) ...............16, 21

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ...........................19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................22

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) ........................................................20

*In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768 (3d Cir. 1995) ........................................................................................................................18, 21

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ........................................................22

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) .....................22

*Hawkins v. Commissioner of New Hampshire Department of Health & Human Services*, 2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004) ...........14, 16, 18, 20, 21

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)........................................................................19

*Kovacs v. Ernst & Young*, 927 F.2d 155 (4th Cir. 1991)...................................................18

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)......................................23

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) ...........................15

*Levin v. Mississippi River Corp.*, 59 F.R.D. 353 (S.D.N.Y 1973), *aff'd on op.
    below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir.
    1973), *cert. denied*, 414 U.S. 1112 (1973)....................................................................19

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ..........................................23

*Maritimes Steel v. Continental Ill. National Bank & Trust Co.*, 834 F.2d 677 (7th
    Cir. 1987) ........................................................................................................................20

*In re Michael Milken & Associates Sec. Litigation*, 150 F.R.D. 57 (S.D.N.Y.
    1993) ................................................................................................................................23

*In re MicroStrategy, Inc. Sec. Litigation*, 148 F. Supp. 2d 654 (E.D. Va. 2001) .............23

*Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999),
    *aff'd*, 208 F.3d 288 (1st Cir. 2000)..................................................................................16

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................22, 23

*In re NASDAQ Market-Makers Antitrust Litigation*, 176 F.R.D. 99 (S.D.N.Y.
    1997) ................................................................................................................................17

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1 (N.D. Ohio
    1982) ................................................................................................................................19

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976)...........................................................19

*In re Prudential Insurance Co. of America Sales Practices Litigation*, 962 F.
    Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ...............................19, 24

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53 (1st Cir. 2004) .............................22

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ..........................................................21

*In re Screws Antitrust Litigation*, 91 F.R.D. 52 (D. Mass. 1981)......................................16

*Smilow v. Southwestern Bell Mobile System*, 323 F.3d 32 (1st Cir. 2003)......................15

- iii -

*South Carolina National Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) .....................15

*United Founders Life Insurance Co. v. Consumers National Life Insurance Co.*,
    447 F.2d 647 (7th Cir. 1971) ....................................................................................19

*White v. National  Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .................16, 23

*Whitford v. First Nationwide  Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ...........................18

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)........................................................18

## STATE CASES

*Henry v. Sears Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) ...............23

## FEDERAL STATUTES

Fed. R. Civ. P. 23(3) ........................................................................................................14

Fed. R. Civ. P. 23(a) ........................................................................................................15

Fed. R. Civ. P. 23(c)(2)....................................................................................................22

Fed. R. Civ. P. 23(e) ..................................................................................................14, 22

## MISCELLANEOUS

2 Newberg § 1.25..............................................................................................................17

Manual § 30.41  ....................................................................................................17, 22, 24

Newberg § 11.41, at 87-89................................................................................................20

## I.      INTRODUCTION

Class Plaintiffs respectfully submit this Memorandum in support of the Joint Motion for Entry of an Order Granting Preliminary Approval of the Track Two Settlement and Approving the Form and Method of Notice to the Class (the "Joint Motion").  The Settlement encompassed by the Track Two Settlement Agreement and Release (the "Agreement") provides for Track Two Defendants to pay a total of $125 million to settle the claims of all Consumer Class Members, all TPP Class Members, and the claims of all Independent Settling Health Plans ("ISHPs").  All court-awarded fees, costs and expenses, compensation to the named Class Representatives and possible reversion amounts related to TPP opt-outs will be paid out of the total $125 million settlement amount.

The Settlement and the proposed Notice Plan are consumer friendly.  Class Plaintiffs have proposed unique aspects to the notice to consumers as well as simplification of the required consumer claims process in order to both reach more consumers and simplify their ability to make claims.  As more fully set forth below, for instance, Class 1 consumers will not be required to fill out and return a claim form.  Their claim will be calculated by the Claims Administrator based on data obtained by the Centers for Medicare and Medicaid ("CMS") after the consumer returns a simple pre-paid card certifying the consumer paid percentage co-payments under Medicare Part B during the Class Period.  Additionally, consumers in Class 3 will be provided an option to obtain a full refund based on their out-of-pocket expenditures if they can provide some minimal documentation of their claims or instead can choose an "Easy Refund" of up to $35 by certifying that they paid one or more percentage co-payments for the Class Drugs during the Class Period.  Class Plaintiffs believe these measures will help increase consumer participation in the Settlement.

- 1 -

Class Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable and adequate.  It has been reached after months of arm's lenth, intensely fought negotiation, all of which were conducted under the auspices of the Court appointed mediator, Eric Green. Accordingly, the Joint Motion seeks preliminary approval of the Settlement and certification of the Class for settlement purposes and requests, *inter alia*, that the Court order that notice of the Settlement be disseminated to the Class, and that the Court schedule a hearing to determine whether final approval of the Settlement should be granted.  A Proposed Preliminary Approval Order is attached as Exhibit H to the Settlement Agreement filed with the Joint Motion.

At this preliminary stage of the Settlement process, Class Plaintiffs respectfully request that the Court enter an Order:

1.      Certifying the Proposed Classes as a Settlement Classes;

2.      Appointing Class Representative Plaintiffs and the following law firms as Class Settlement Counsel:  Hagens Berman Sobol Shapiro, LLP; Spector, Roseman & Kodroff P.C; Wexler Toriseva Wallace LLP; Edelson & Associates LLC;

3.      Granting preliminary approval of the proposed Settlement;

4.      Scheduling a Fairness Hearing to consider final approval of the Settlement and Plaintiffs' counsel's motion for attorneys' fees, reimbursement of expenses, and compensation to the named plaintiffs;

5.      Approving the proposed forms of Notice and Summary Notice;

6.      Approving the proposed Claim Forms and instructions; and

7.      Authorizing dissemination of the Notices and Claim Forms substantially in the forms attached to the Settlement Agreement as Exhibits by first Class mail to all Third-Party Payor Class Members and Medicare Part B Consumers (as set forth in the proposed Notice Plan), and authorizing publication of the Summary Notices.

## II.      BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS

The Settlement has been reached after many arm's lenth intensely fought negotiation sessions, most of which were conducted with the court appointed mediator, Eric Green.  After the global amount was reached with Track Two Defendants, separate counsel representing the

TPPs, ISHPs, and consumers negotiated allocation of the $125 million in a separate round of hard fought negotiations.

### III.   DESCRIPTION OF THE PROPOSED SETTLEMENT

### A.   The Proposed Settlement Classes

Consistent with the Court's January 30, 2006, Consolidated Order Re:  Motion for Class Certification, the proposed Settlement Classes are as follows:

> **Medicare Part B Co-Payment Class ("Class 1").**
> All natural persons in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.
>
> **Third-Party Payor MediGap Supplemental Insurance Class ("Class 2").**
> All TPPs in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.
>
> **Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3").**
> All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, and all TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, during the period from January 1, 1991, through March 1, 2008.

**B.     Total Settlement Amount and Allocation**

Track Two Defendants, collectively, have agreed to pay a total of $125 million to settle the MDL Actions[1], and all related claims of the Class Plaintiffs and the ISHP Group.  The $125 million will be allocated as follows:

> (i) 17.5% or $21,863,888 will be allocated to satisfy the claims of Consumer Class Members in both Class 1 and Class 3.  Of this amount $15,365,552 has been allocated to pay claims associated with certain Class Drugs designated as Class A drugs on Exhibit B to the Settlement Agreement.  These drugs (primarily single source drugs) are those that were the subject of active litigation as of the date of the parties reached a settlement.  The remaining amount of $6,493,335 will be available to make payments to consumers related to the remaining Class Drugs named in the MDL Complaints, designated as Class B drugs on Exhibit B to the Settlement Agreement (primarily multisource drugs).

> (ii) 82.5% or $103,136,112 will be allocated to satisfy the claims of TPP Class Members in both Class 2 and Class 3 as well as ISHP Group Members.  As in previous AWP MDL settlements involving the ISHP Group, this amount will be initially allocated 50/50 between TPP Class Members and ISHP Class Members. After all TPP Claims have been submitted and the ISHP Group provides its purchases to the Claims Administrator, there will be a true-up based on actual purchases between TPP Class Members and the ISHP Group.

**C.     The Proposed Notice Plan**

The proposed notice plan is set forth in Exhibit G to the Settlement Agreement.  The Notice Plan is summarized as follows.

(i)  Class 1 Consumers

Lead Counsel will seek CMS data, including last known address, payment information and dates of drug administration for all Medicare Part B beneficiaries who were administered a Class Drug during the Class Period and who incurred a percentage co-payment obligation under Medicare Part B.  A simple one page explanation of the settlement will be sent to each individual

---

[1] The amount that each Track Two Defendant has agreed to contribute to the overall $125 million settlement amount was negotiated separately amongst Track Two Defendants and, as a condition of settlement, remains confidential.

identified in the CMS data.  Settlement Agreement, Exh. C.1.  Included with that mailing will be a postage pre-paid reply card which will allow the potential class member to certify under penalties of perjury that they made percentage co-payments under Medicare Part B during the class period (as opposed to flat or no co-payments due to supplemental insurance).  Once in receipt of the Consumer Class Member's certification and reply card, the Claims Administrator will mail a full notice, geared specifically to Class Members in Class 1, Settlement Agreement, Exh. C2, to each individual who replies.

Among other things, the Full Notice describes why the Class Member received the Notice, what the lawsuit is about; advises that the recipient is a member of the Class; describes the terms and benefits of the Settlement and provides instructions for commenting on the Settlement and appearing at the final Fairness Hearing.  Included with the Full Notice will be a printout of each of the Class Drugs that were administered to that particular Class Member along with dates of each administration as derived from CMS data.

If they wish to participate in the Settlement, and they agree with the personal information provided pursuant to CMS data, they need do nothing more.  The Claims Administrator will calculate their claim based on the formula described below.  If they disagree with or have changes to the information provided they will have an opportunity to make changes to the list of drugs and administrations, certify the information as true and return it to the Claims Administrator.

This plan provides direct mail notice to every potential member of Class 1.  It also thereafter minimizes the burden of participation for the vast majority of Class 1 members who will presumably rely on the CMS data for the calculation of their claim amount.

(ii)     <u>Class 3 Consumers</u>

- 5 -

In order to notify Class 3 Consumers of the existence of the Settlement and the availability of refunds Kinsella/Novak Communications ("Kinsella"), who assisted with the Notice of Pendency and the GSK Settlement Notice, has crafted a media plan intended to target potential Class Members in Class 3.  An executive summary of the Notice Plan is attached as Exhibit F to the Settlement Agreement.  The Notice Plan calls for a combination of cable television spots, general internet banner ads as well as ads placed on websites geared specifically to health related issues, publication in health targeted publications as well as national publication in consumer magazines and national newspaper supplements.  Based on Kinsella's substantial experience in designing media programs to reach the broadest possible number of Class Members, as well as utilization of a sophisticated software program identifying which publications provide the optimal reach to a target audience, Kinsella has selected a wide array of media components, including cable television ads and extensive internet advertisement.  Kinsella estimates that this paid media program will reach 85.3% of adults over 35 and 80.1% of adults over 18.  Settlement Agreement, Exh. F.  The Summary Notice designed to reach Class 3 Consumers is attached as Exhibit D1 to the Settlement Agreement.

A detailed Notice and Claim Form geared specifically toward consumers in Class 3, see Settlement Agreement, Exh. D1, will be mailed to any consumer who requests one by phone or on the settlement website.  Among other things, the Notice describes why the Class Member received the Notice, what the lawsuit is about; advises that the recipient may be a member of the Class; describes the terms and benefits of the Settlement and gives instructions for making a claim.

   (iii)  <u>TPPs in Class 2 and Class 3</u>

As further outlined in the Notice Plan, TPP Class Members in both Class 2 and Class 3 will receive direct mail notice of the Settlement, based on a proprietary data base maintained by the Claims Administrator for that purpose.  Settlement Agreement, Exhibit E1.  In addition, Summary Notice directed toward TPP class members will be published in various TPP trade publications.  Settlement Agreement, Exh. E2.

### D.    The Claims Process

(i)  Class 1 Consumers

As noted above, a simple one page explanation of the settlement will be sent to each individual identified in the CMS data.  Settlement Agreement, Exh. C1.  Included will be a postage pre-paid reply card which will allow the potential class member to certify under penalties of perjury that they made percentage co-payments during the class period under Medicare Part B (as opposed to flat or no co-payments due to supplemental insurance).  Once in receipt of the Consumer Class Member's certification and reply card, the Claims Administrator will mail a full notice, geared specifically to Class Members in Class 1, attached as Exhibit C2 to the Settlement Agreement, to each individual who replies.

If they wish to participate in the Settlement, and they agree with the list of Class Drugs provided pursuant to CMS data, they need do nothing more.  The Claims Administrator will calculate their claim based on the accepted formula described below.  If they disagree with, or have changes to the drug administration information provided, they will have an opportunity to make changes to the list of drugs and administrations, certify the information as true and return it to the Claims Administrator.

(ii)  Class 3 Consumers

In light of the difficulty many consumer class members have in obtaining records evidencing their payment of a percentage co-payment for drugs, the Notice to consumers in Class 3 will provide consumers with two options for receipt of a payment:

> (1)    The Easy Refund Option.  If a consumer chooses this option and certifies under pains of perjury that they made one or more percentage co-payments for one or more Class Drugs during the applicable class period outside of Medicare Part B, they will be allocated a $35 payment from the Settlement. They need not provide any documentation or further evidence unless called for by the Claims Administrator as part of the normal audit process for all claims.

> (2)    The Full Estimation Refund Option.  If a consumer chooses this option, they must provide an estimate of their total out-of-pocket expenditures during the Class Period for each Class Drug for which they seek reimbursement.  For each Class Drug for which they seek reimbursement they must also provide at least one (1) form of documentary proof that they incurred a percentage co-payment obligation and sign under penalty of perjury that the information provided is true and accurate.

(iii)  TPPs in Class 2 and Class 3

In order to make a valid claim TPP Class members will be required to submit the amount of purchases of each of the Class Drugs designated as Class A during the period of January 1, 2003 to December 31, 2003.  This period is substituted for claims associated with the full class period in recognition of the difficulty TPPs have in accessing claims data that is older and likely not kept electronically or on current electronic systems.  This "proxy period" will be used to

- 8 -

determine the payments made to each TPP Class Member.  TPP Class members are also required

to submit their claims only associated with the drugs designated as Class A.  This was done in

recognition of the fact that each TPP will receive a proportionate share of the funds set aside for

TPPs.  There is no reason to believe that the relative distribution of the purchases of all Class

Drugs would be different than that of a subset of Class Drugs.  Therefore in order to minimize

the administrative burden on TPP Class Members they need only provide purchases associated

with those Class Drugs designated as Class A.

In order to validate their claim for payment TPP Class Members with claimed purchases

for Class A Drugs during the proxy period that exceed $300,000.00 in total shall be required to

submit electronic claims documentation with their claim.  The form and data required to be

submitted are delineated in the TPP Claim Form.  Settlement Agreement, Exh. E1.  Those TPPs

whose claimed purchases are $300,000.00 or less need not submit electronic claims

documentation with their claim but must furnish such claims documentation upon request of the

Claims Administrator.

### E.    Calculation of Payments

(i)  Class 1 Consumers

For consumers in Class 1 for which the Claims Administrator has obtained records from

CMS evidencing the consumer's total co-payment obligation under Medicare Part B, the

consumer's obligation under Medicare Part B for all Class Drugs during the Class Period, as

evidenced in records from CMS, will be the basis of the consumer's claim.  For those Class

Drugs designated as "Class A" on Exhibit B to the Agreement, the consumer's total obligation

related to Class A Drugs will be multiplied by a factor of three (3x).  This figure will be added to

the consumer's total co-payment obligation for Class Drugs designated as "Class B" on Exhibit

B (without a multiplication factor).  The sum of these two figures will be the Class 1 consumer's

"Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Settlement Class Member.

(ii)  Class 3 Consumers

The amount to which a Class 3 consumer will be entitled will be determined based upon the consumer's election between the Easy Refund and the Full Estimation Refund options.  If a Class 3 consumer elects the Easy Refund and the consumer's claim is accepted by the Claims Administrator, the "Total Recognized Claim" for purposes of calculating the payment made to that consumer will be equal to $35.00.

If a Class 3 consumer elects the Full Estimation Refund the consumer's claim will be based upon their estimation of their out-of-pocket expenditures for each Class Drug, as supported by at least one (1) piece of documentary evidence per drug.  As for the Class 1 consumers, the Class 3 consumer's estimated out-of-pocket expenses for Class A drugs will be multiplied by a factor of three (3x) and added to the consumer's estimated out-of-pocket expenses for Class B drugs (without a multiplication factor).  The sum of these two figures will constitute the Class 3 consumer's "Total Recognized Claim" for purposes of calculating the payment made to each Consumer Settlement Class Member.

If the sum of all valid Total Recognized Claims for all Consumer Settlement Class Members exceeds the amount of the Settlement Funds allocated to satisfy Consumer Settlement Class Member claims, all consumer claims will be reduced proportionately.

(iii)  TPPs and the ISHP Group

In recognition of the fact that the claims of all TPP Settlement Class Members and ISHP Group Members for all Class Drugs would certainly exceed the total amount of funds allocated to satisfy the claims of TPP Settlement Class Members and ISHP Group Members under the

- 10 -

Settlement Agreement, each TPP Settlement Class Member or ISHP Group Member will be paid

a pro-rata portion of the Settlement Amount allocated to TPP Settlement Class Members and the

ISHP Group.  TPP Settlement Class Members and ISHP Group Members will be required to

submit the total amount of purchases during the period of January 1, 2003, to December 31,

2003, of all drugs listed as Class A drugs on Exhibit B to the Agreement.  This figure, if properly

supported by the claimant and accepted by the Claims Administrator, will be the TPP Settlement

Class Member's or ISHP Group Member's "Total Recognized Claim" used for purposes of

calculating the pro-rata payment made to each TPP Settlement Class Member and ISHP Group

Member.

(iv)    ISHP Group Initial Payment and True-Up Between TPPs and the ISHP Group

Shortly after preliminary approval of the Settlement, the ISHP Group will be paid an

initial payment of $25.5 million.  The remaining funds available to pay ISHP claims will be kept

aside and subject to a "true-up" between the ISHP Group and TPP Settlement Class Members.

In exchange for receipt of this initial payment the ISHPs will fully release their claims against

Track Two Defendants.  Because they are separately represented and are not class members, the

ISHP Group can provide a release to Track Two Defendants without the need for Court approval

or the time involved in providing notice.  In return the Agreement provides for an expedited

payment of some portion of the monies the ISHP Group would ultimately be entitled to from the

Settlement.

The $25.5 million initial payment was derived by making certain very conservative

assumptions about the size of the ISHP Group claims as compared to those of TPP Settlement

Class Members.  First, before any monies are paid by Track Two Defendants, and within two

week of the hearing on preliminary approval, the ISHPs must demonstrate that they insure more

than 60% of the "covered lives" (those individuals with private health insurance) in the United States.  In the experience of class counsel this measure has been an effective proxy for the amount of relative claims by the ISHP Group in similar drug settlements.  Despite having demonstrated coverage of 60% of the covered lives in the United States, the ISHP Group have, in the aggregate, been initially allocated only 50% of the total funds allocated to all TPPs.  Second, certain robust assumptions were made about the amount of attorneys' fees and costs that would be applied to the amounts ultimately available to be distributed to the ISHP Group and subtracted from the 50% allocation.  Finally, in determining the initial payment amount, only 75% of the net allocation will be paid out to the ISHP Group as part of the initial payment, leaving the remainder to be subject to the true up between the ISHP Group and TPP Settlement Class Members.

The true-up formula is a simple one.  Each TPP Settlement Class Member and ISHP Group member individual claim is calculated in exactly the same manner, as a percentage of all TPP related claims.  The amount of funds paid to the ISHP Group after all claims have been calculated by the Claims Administrator will account for the $25.5 million initial payment.  Essentially, the $25.5 million will be subtracted from what the ISHP Group is ultimately entitled to and they will be paid the balance of what they are entitled to at the end of the claims and auditing process.

(v)    Reversion to Track Two Defendants

In the event there are valid TPP Opt-Outs from the Class, once all claims of all TPPs, including TPP Class Members and the ISHP Group have been received and audited by the Claims Administrator, Track Two Defendants will be entitled to a refund of a percentage of the $103 million set aside for TPP claims.  The amount of the refund is meant to approximate the

amount of funds the TPP Opt-Out would have been entitled to under the claims process, free of any reduction for attorneys' fees or costs of notice or administration.  Presumably any TPP-Opt out may seek to separately negotiate with or litigate their claims against Track Two Defendants.

The percentage of the $103 million refunded to Track Two Defendants will be equal to the percentage of purchases by TPP Opt-Outs compared to the claimed purchases of all TPPs, including the ISHP Group, that have submitted claims documentation to the Claims Administrator.  So if TPP Opt-Outs represent purchases that are 2% of the purchases of the sum of all TPP purchases, including TPP Class purchases, ISHP Group purchases and TPP Opt-Out purchases, Track Two Defendants will receive 2% of $103 million in refund or approximately $2,060,000.00.  There is no provision for a refund to Track Two Defendants resulting from valid Consumer Opt-Outs.

As part of their request for exclusion, TPP Opt-Outs are requested to provide the Claims Administrator with the amount of their purchases of the Class A Covered Drugs during the relevant time period.  This information is not required in order for a TPP to validly opt-out of the Class but it is requested in order to make the calculation of the refund to Track Two Defendants and the "true-up" of TPP/ISHP claims easier.  In the event insufficient information is provided by TPP Opt-Outs, the parties have agreed to cooperate and use other available information to estimate the purchases of TPP Opt-Outs.

The Settlement Agreement also provides that 33% of any monies refunded to Track Two Defendants will be maintained by Track Two Defendants for up to two years in order to satisfy any claim for attorneys' fees, costs or expenses by Class counsel or the Class.  Track Two Defendants are required to notify Lead Class Counsel of the existence of any settlement with a

- 13 -

TPP Opt-Out and Lead Class Counsel will submit a motion to the Court seeking costs and expenses be paid out of monies set aside for that purpose.

### F.     Attorneys' fees and Expenses and Class Representative Compensation

Class Plaintiffs' Counsel will submit a fee petition for an award of fees, reimbursement of costs and expenses, and reimbursement to appropriate Plaintiffs or Class Representatives. Understanding that the award of attorneys' fees is a matter committed to the sole discretion of this Court, subject to Court approval, Track Two Defendants have agreed that they will not object to Class Counsel's request for a reasonable attorney's fee not to exceed 331/3% of the total settlement amount of $125 million.  Track Two Defendants will also not object to Counsel's request to the Court for an award of reasonable expenses.  Such fees and expenses are to be paid from the total settlement amount of $125 million.  The Settlement Agreement also provides for compensation to the named representatives for the time associated with their work in this case, to be approved by the Court.

Class Counsel have reached an agreement with members of the ISHP Group and ISHP Group Counsel concerning attorneys' fees.  That agreement is identified for the Court pursuant to Fed. R. Civ. P. 23(3).

### IV.     ARGUMENT

A class action cannot be compromised or settled without the approval of the Court.  FED. R. CIV. P. 23(e).  Prior to addressing the adequacy of a proposed Settlement, however, the Court must determine whether the Class, as agreed to by the parties, may be certified for purposes of the Settlement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Hawkins v. Commissioner of New Hampshire Dept. of Health & Human Servs.*, 2004 U.S. Dist. Lexis 807 (D.N.H. Jan. 23, 2004).

- 14 -

A court may grant conditional approval of a class action where, as here, the Class proposed satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *See Amchem*, 521 U.S. at 613; *see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).

If the Court determines that a Settlement Class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement.  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).  First, the Court must preliminarily approve the proposed settlement.  *Id.* at 547.  Second, members of the Class must then be given notice of the proposed settlement.  *Id.*  Third, a hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the Class as a whole, and consistent with the public interest.  *Id.*  This protects the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian for the Class's interests. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996).

## A.  The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement

Preliminary certification of the Settlement Class is appropriate in this case because the four requirements of Fed. R. Civ. P. 23(a) and a part of Rule 23(b) are satisfied.

### 1.  The Requirements of Rule 23(a) have been satisfied

Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation.  *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem*, 521 U.S. at 613).  These issues have been addressed in the Court's January 30, 2006, Consolidated Order Re:  Motion for Class Certification and in subsequent orders related to

- 15 -

approval of settlements with Track Two Defendants GlaxoSmithKline and AstraZeneca and will

not be repeated here.  All Rule 23(a) requirements have been satisfied.

In addition to having satisfied the prerequisites of Rule 23(a), the Class also satisfies

those of Rule 23(b)(3):  namely, (1) questions of law or fact common to Class Members

predominate over any questions affecting only individual members; and (2) the Class action is

superior to other available methods for the fair and efficient adjudication of this matter.

*Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 196-97 (D. Mass. 1999), *aff'd*, 208

F.3d 288 (1st Cir. 2000); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 55 (D. Mass. 1981); *In re

Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003).

These issues have also been addressed by the Court's January 30, 2006, Consolidated Order Re:

Motion for Class Certification.

### B.    Preliminary Approval is Appropriate

Plaintiffs respectfully submit, as they will demonstrate at the Fairness Hearing, that: (i)

the Settlement is in all respects fair, reasonable and adequate to the Class; (ii) they have

investigated the pertinent legal and factual issues; (iii) continued litigation will consume

enormous resources of the parties and the Court; and (iv) there is no hint of collusion between or

among the parties in the Settlement negotiations.  At the Fairness Hearing the Court must

undertake a detailed assessment of the terms of the Settlement, the interests of the Class

Members as well as any third parties that might be affected by the Settlement, and the

circumstances of the litigation and the proposed Settlement.  *See Duhaime v. John Hancock Mut.

Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999); *Durrett v. Housing Auth. of Providence*, 896 F.2d

600, 604 (1st Cir. 1990); *Hawkins*, 2004 U.S. Dist. Lexis 807, at *14.

However, at this stage of the Settlement process, the Court conducts only a preliminary

evaluation to determine whether the proposed Settlement is within the range of possible final

approval, and thus whether Notice to the Class of the terms and conditions of the proposed

Settlement, and the scheduling of a formal Fairness Hearing, are appropriate.  *White v. National*

*Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Thus, the MANUAL FOR COMPLEX

LITIGATION, THIRD ("MANUAL") characterizes the preliminary approval inquiry as a court's

"initial assessment" of the fairness of the proposed settlement, made on the basis of written

submissions and informal presentation from the settling parties, and summarizes the preliminary

approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness or other obvious deficiencies,
> such as unduly preferential treatment of Class representatives or of
> segments of the Class, or excessive compensation for attorneys,
> and appears to fall within the range of possible approval, the court
> should direct that notice . . . be given to the Class Members of a
> formal Fairness Hearing, at which arguments and evidence may be
> presented in support of and in opposition to the settlement.

MANUAL § 30.41; *see also* 2 NEWBERG § 1.25.

As detailed below, the proposed Settlement falls well within the range of reasonableness,

and thus merits preliminary approval.

Initially, Class Plaintiffs note that the law has long favored settlement of litigations.  This

is particularly true in class actions and other complex cases where substantial resources can be

conserved by avoiding the time, cost and rigors of prolonged litigation.  In addition, there is an

overriding public interest in favor of settlement of complex class action suits, especially where

the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or

the social or economic policies to be established."  *See*, *e.g.*, *Donovan v. Estate of Fitzsimmons*,

778 F.2d 298, 307 (7th Cir. 1985).  By supporting the settlement of complex, class action

disputes, the judicial system can help minimize litigation expenses on both sides, reduce the

strain on scarce judicial resources, and avoid the risk of trial to both parties.  MANUAL, §§ 23, 30.4 (Fed. 1995).

These concerns apply with particular force in a case such as this, where thousands of consumers throughout the country, many of them Medicare beneficiaries, were subject to allegedly deceptive and unfair practices in connection with the marketing and sale of drugs manufactured, marketed and sold by Track Two Defendants.  Individual litigation would clog the courts of this and many other states; would take years to resolve; and, given the relatively modest amount of damages suffered by each individual consumer, it likely would be available only to those wealthy and sophisticated enough to retain their own lawyers.  The proposed Settlement is the best and only vehicle to assure that all Class Members, regardless of their means, receive the relief to which they are entitled in a prompt and efficient manner.

1.     **The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval**

In determining whether the Settlement is fair, reasonable and adequate to the Class as a whole, several factors should be considered, including:  (1) the complexity of the litigation, (2) the posture of the case at the time settlement was proposed, (3) the extent of discovery conducted in the case, (4) the circumstances of the settlement negotiations, (5) the experience of counsel, (6) the relative strength of the plaintiffs' case on the merits, the possible defenses, and other risks in the litigation, (7) the anticipated duration and expense of further litigation, and (8) the reaction of the Class and opposition to the settlement.  *Hawkins*, 2004 U.S. Dist. Lexis 807, at *15 (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 785 (3d Cir. 1995); *Kovacs v. Ernst & Young*, 927 F.2d 155, 158 (4th Cir. 1991)); *Williams v. Vukovich*, 720 F.2d 909, 922-24 (6th Cir. 1983).  Some of these factors are not yet relevant at the preliminary approval stage, but others can be used to guide the preliminary approval process.

- 18 -

While the foregoing criteria will guide the Court's analysis, "[a] class action settlement cannot be measured precisely against any particular set of factors." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6-7 (N.D. Ohio 1982)).  Therefore the relevance of the factors set forth above "will vary from case to case."  *Ohio Public Interest Campaign*, 546 F. Supp. at 6-7.

As a general rule, courts will not substitute their own thoughts for the parties' business judgment in arriving at a settlement.  *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976); *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971).  Accordingly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether Class Members will receive as much from a settlement as they might have recovered from victory at trial.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).  It is not the Court's function to reopen and enter into negotiations with the litigants in the hope of improving the terms of the settlement or to substitute its business judgment for that of the parties who worked out the settlement.  *Argo v. Harris*, 84 F.R.D. 646, 648 (E.D.N.Y. 1979) (quoting *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y 1973), *aff'd on op. below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)).  Courts challenged with evaluating a proposed class action settlement recognize that the "essence of settlement is compromise" and will not represent a total win for either side.  *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980)).

Evaluation of the aforementioned factors in this case weigh heavily in favor of ***preliminary approval***.  Coming on the heels of the Class 2 and 3 trial Plaintiffs are very well acquainted with the prospective strengths and risks of the case.  Notwithstanding these risks, with which the Court is also well acquainted, Plaintiffs were able to garner a Settlement Amount of $125,000,000.

> **2.     The proposed Settlement is the result of arduous, arm's lenth negotiations conducted by highly experienced counsel**

There is a presumption of correctness attached to a Class settlement reached in arm's lenth negotiations between experienced, capable counsel.  *City P'ship Co. v. Atlantic*, 100 F.3d at 1043; *see also Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."); *see also* NEWBERG § 11.41, at 87-89.

The United States Court of Appeals for the Seventh Circuit, in approving a class action settlement, noted that "[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation.. . .  The proof of the pudding was indeed in the eating."  *Maritimes Steel v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (most important concern for the court in reviewing a settlement of a class action is the strength of the plaintiffs' case if it were fully litigated).

In the instant action, the parties actively engaged in many rounds of negotiations, for many months.  The parties negotiated arduously and at arm's lenth with the Court-appointed Mediator.  The negotiations involved submissions of proposals, counter-proposals, evaluation of all discovery and factual arguments.  The parties have worked long and hard to reach a resolution

of this matter, and Plaintiffs submit it is fair, appropriate, and in the best interests of the Class

Members.

> **3.      Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues**

A presumption in favor of the proposed Settlement arises when sufficient discovery has

been provided and counsel have experience in similar cases.  *See Hawkins*, 2004 U.S. Dist. Lexis

807, at *15; *see also City P'ship Co. v. Atlantic*, 100 F.3d 1043; *Rolland v. Cellucci*, 191 F.R.D.

3, 6 (D. Mass. 2000).  This factor directs the trial court to consider whether the attorney

participating in the settlement negotiations had access to sufficient information to appreciate the

merits of the class's case.  *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768,

783 (3d Cir. 1995).

In this case, the parties exchanged written discovery, conducted hundreds of depositions,

and obtained extensive discovery from third-party sources such as other pending litigation, trade

associations, physicians and the federal government.  Track Two Defendants produced millions

of documents and Plaintiffs' counsel spent more than four years reviewing said documents,

organizing documents for use, creating an electronic database and making determinations on

utilization of important documents, additional discovery and general assistance in the litigation

of this matter.

> **C.      The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing**

Reasonable notice must be provided to Class Members to allow them an opportunity to

object to the proposed Settlement.  *See Durrett*, 896 F.2d at 604.  Rule 23(e) requires notice of a

proposed settlement "in such manner as the court directs."  In a settlement Class maintained

under Rule 23(b)(3), Class notice must meet the requirements of both the Federal Rules of Civil

Procedure 23(c)(2) and 23(e).  *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25

(E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause).  Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem*, 521 U.S. at 617; *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).

The MANUAL sets forth several elements of the "proper" content of notice.  If these requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2); Fed. R. Civ. P. 23(e); and due process, and binds all members of the Class.  The Notice must:

1.   Describe the essential terms of the Settlement;

2.   Disclose any special benefits or incentives to the Class Representatives;

3.   Provide information regarding attorneys' fees;

4.   Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the Settlement;

5.   Explain the procedures for allocating and distributing Settlement funds; and

6.   Prominently display the address of Class counsel and the procedure for making inquiries.

MANUAL, ¶ 30.212 (3d ed. 1995).  *See*, *e.g.*, *Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process); *accord Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

- 22 -

The proposed Notice program clearly meets this standard.  The proposed Notice is clear, precise, informative, and satisfies the requirements governing notice.  As reflected in the proposed Notice Plan created by a recognized expert, individual Notice will be mailed to all Class Members whose addresses can be reasonably ascertained and who can be reached reasonably economically.  A website will allow Class Members to reach the Administrator, request Notices and ask questions.  An extensive publication of a Summary Notice will take place in a variety of publications directed to the target demographic.  The Notice, the Settlement Agreement and possibly other documents will also be published on the website established for purposes of this Settlement.

Notice via first class mail, publication in nationwide papers and magazines and website publication are all avenues for notice that have been approved by various courts.  *See*, *e.g.*, *White v. National Football League*, 822 F. Supp. at 1400 (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to identified Class members and publication two times in the national edition of USA Today); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in USA Today); *Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669-70 (E.D. Va. 2001) (approving publication of summary notice in nationwide newspapers and posting full notice on websites maintained by co-lead counsel); *Henry v. Sears Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) (the Court directed that the class

- 23 -

Action Settlement Notice be mailed by first class mail to all identified Class members, and the Summary Notice be published twice in the national edition of USA Today); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) (the Court approved Class Notice mailed to the last known address of all Class Members identified through reasonable effort by Defendant, published a Summary Notice on three separate days in a nationally published newspaper, *USA Today*, published the Class Notice and other pertinent information on the internet).  Indeed, the Court has already approved this method of notice with the Notice of Pendency and the GSK Settlement Notice.

The proposed Notice clearly meets the requirements of Rule 23(c)(2) and 23(e), in so much as it meets the new requirements of plain English and ease of reading and includes:  (1) the case caption; (2) a description of the Class; (3) a description of the claims; (4) a description of the Settlement; (5) the names of counsel for the Class; (6) a statement of the maximum amount of attorneys' fees that may be sought by Plaintiffs' Counsel; (7) the Fairness Hearing date; (8) a description of Class Members' opportunity to appear at the hearing; (9) a statement of the procedure and deadline for filing objections to the Settlement; (10) a statement of the procedure and deadline for filing requests for exclusion (for residents in the nine states who had not been previously provided an opportunity to opt out); (11) a statement of the consequences of exclusion; (12) a statement of the consequences of remaining in the Class; and (13) the manner in which to obtain further information.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 496.  *See also* MANUAL § 30.212 (Rule23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation).

Plaintiffs have retained an experienced Notice Administrator to administer notice, have carefully crafted a detailed Notice Plan and have taken all necessary steps to ensure that the proposed Notice Plan meets the requisite due process requirements.  Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the Settlement and their options, and therefore should be approved by the Court.

## V.    CONCLUSION

For all the above-stated reasons, it is respectfully requested that the Joint Motion be granted and the Court enter an order:  (a) granting Preliminary Approval of the Settlement; (b) certifying the Settlement Class; (c) appointing Settlement Class counsel; (d) scheduling a Fairness Hearing and establishing all related deadlines; (e) directing that Notice be provided to the Class in accordance with the Notice Plan, and (f) ordering a stay of all proceedings in this and other class actions with respect to Track Two Defendants until the Court renders a final decision regarding the approval of this Settlement.

DATED: March 7, 2008.

By  **/s/ Steve W. Berman**
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Toriseva Wallace LLP
One North LaSalle Street, Suite 2000
Chicago, IL  60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

001534-16  227015 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on March 7, 2008, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE TRACK TWO SETTLEMENT AND APPROVING THE FORM AND METHOD OF NOTICE TO THE CLASS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


 **/s/ Steve W. Berman**
Steve W. Berman

001534-16  227015 V1

- 27 -