# EXHIBIT 7

```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


 IN RE:                             )
                                    )  CA No. 01-12257-PBS
 PHARMACEUTICAL INDUSTRY AVERAGE    )
 WHOLESALE PRICE LITIGATION         )  Pages 1-88
                                    )




                    SETTLEMENT HEARING

            BEFORE THE HONORABLE PATTI B. SARIS
               UNITED STATES DISTRICT JUDGE






                    United States District Court
                    1 Courthouse Way, Courtroom 19
                    Boston, Massachusetts
                    April 27, 2009, 2:15 p.m.









              LEE A. MARZILLI
           OFFICIAL COURT REPORTER
         United States District Court
         1 Courthouse Way, Room 3205
              Boston, MA  02210
                (617)345-6787
```

cbac3204-2187-45fe-a572-e9859ff8ab23

```
 1   A P P E A R A N C E S:
 2        STEVE W. BERMAN, ESQ. and SEAN R. MATT, ESQ.,
     Hagens Berman Sobol Shapiro, LLP, 1301 Fifth Avenue,
 3   Suite 2900, Seattle, Washington, 98101, for the
     Plaintiffs.
 4
          EDWARD NOTARGIACOMO, ESQ., Hagens Berman Sobol Shapiro,
 5   LLP, One Main Street, Cambridge, Massachusetts, 02142,
     for the Plaintiffs.
 6
          MARC H. EDELSON, ESQ., Edelson & Associates,
 7   45 West Court Street, Doylestown, Pennsylvania, 18901,
     for the Plaintiffs.
 8
          KENNETH A. WEXLER, ESQ., Wexler Wallace, LLP,
 9   55 W. Monroe Street, Suite 3300, Chicago, Illinois, 60603,
     for the Plaintiffs.
10
          JEFFREY L. KODROFF, ESQ., Spector & Roseman,
11   1818 Market Street, Suite 2500, Philadelphia, Pennsylvania,
     19103, for the Plaintiffs.
12
          RICHARD W. COHEN, ESQ., Lowey, Dannenberg, Cohen &
13   Hart, P.C., White Plains Plaza, One North Broadway, White
     Plains, New York, 10601-2310, for the Third-Party Payors.
14
          STEVEN F. BARLEY, ESQ., Hogan & Hartson, LLP,
15   111 South Calvert Street, Suite 1600, Baltimore, Maryland,
     21202, for AmGen Corporation.
16
          PETER W. MORGAN, ESQ., Dickstein Shapiro, LLP,
17   1825 Eye Street, N.W., Washington, D.C., 20006-5403,
     for Baxter International, Inc.
18
          JAMES P. MUEHLBERGER, ESQ., Shook, Hardy & Bacon, LLP,
19   2555 Grand Boulevard, Kansas City, Missouri, 64108-2613,
     for Aventis Pharmaceuticals, Inc.
20
          J. CLAYTON EVERETT, JR., ESQ., Morgan, Lewis & Bockius,
21   LLP, 1111 Pennsylvania Avenue, N.W., Washington, D.C.,
     20004, for Pharmacia Corporation.
22
          TINA M. TABACCHI, ESQ., Jones Day,
23   77 West Wacker, Chicago, Illinois, 60601-1692,
     for Abbott Laboratories.
24
          SARA JANE SHANAHAN, ESQ., Sherin and Lodgen, LLP,
25   101 Federal Street, Boston, Massachusetts, 02110,
     for Watson Pharmaceuticals, Inc.
```

```
 1
     A P P E A R A N C E S:   (Continued)
 2
          RICHARD D. RASKIN, ESQ., Sidley Austin, LLP,
 3   One South Dearborn, Chicago, Illinois, 60603,
     for Bayer Corporation.
 4
          MICHAEL C. OCCHUIZZO, ESQ., Kirkland & Ellis, LLP,
 5   655 Fifteenth Street, N.W., Washington, D.C., 20005,
     for Sicor, Inc.
 6
          CHRISTOPHER C. PALERMO, ESQ., Kelley Drye & Warren,
 7   LLP, 101 Park Avenue, New York, New York, 10178,
     for Dey, Inc.
 8
          KATHLEEN H. McGUAN, ESQ., Reed Smith, LLP,
 9   1301 K Street, N.W., Suite 1100, East Tower, Washington,
     D.C., 20005, for Fujisawa USA, Inc.
10
          MICHAEL DeMARCO, ESQ., K & L Gates,
11   State Street Financial Center, One Lincoln Street, Boston,
     Massachusetts, 02110, for Sanofi-Aventis.
12
          GARY M. RONAN, ESQ., Goulston & Storrs,
13   400 Atlantic Avenue, Boston, Massachusetts, 02110-3333,
     for Immunex Corporation.
14
          JOHN J. PENTZ, ESQ., Class Action Fairness Group,
15   2 Clock Tower Plaza, Maynard, Massachusetts, 01754,
     for Corinna Connick, Connie Pentz, and John Pentz.
16
          EDWARD W. COCHRAN, ESQ., Cochran & Cochran,
17   20030 Marchmont Road, Shaker Heights, Ohio, 44122,
     for Corinna Connick, Connie Pentz, and John Pentz.
18
          RICHARD F. LANDRIGAN, ESQ., Costello & Landrigan,
19   421 Highland Avenue, Davis Square, Somerville,
     Massachusetts, 02144, for Patricia Weatherly.
20
          DONALD E. HAVILAND, JR., ESQ., The Haviland Law Firm,
21   LLC, 111 S. Independence Mall East, Suite 1000,
     Philadelphia, Pennsylvania, 19106, for Reverend David
22   Aaronson, M. Joyce Howe, Larry Young, Therese Shepley,
     Harold Carter, Roger Clark, Ethel Walters, Katie Bean, James
23   Monk, Virginia Newell, Oral Roots, Rebecca Hopkins, and
     George Baker Thomson.
24
          AUSTIN J. FREELEY, ESQ., 221 Lewis Wharf, Boston,
25   Massachusetts, 02110l, for James King.
```

Page 4

1 P R O C E E D I N G S

2 THE CLERK: In Re: Pharmaceutical Industry
3 Average Wholesale Price Litigation, Civil Action 01-12257,
4 will now be heard before this Court. Will counsel please
5 identify themselves for the record.
6 MR. BERMAN: Good afternoon, your Honor. Steve
7 Berman on behalf of plaintiffs.
8 MR. MATT: Good afternoon, your Honor. Sean Matt
9 on behalf of plaintiffs.
10 MR. NOTARGIACOMO: Good afternoon. Ed
11 Notargiacomo on behalf of plaintiffs.
12 MR. LANDRIGAN: Good afternoon, your Honor.
13 Richard Landrigan on behalf of Patricia Weatherly.
14 MR. PENTZ: Good afternoon, your Honor. John
15 Pentz on behalf of the Pentzes and Corinna Connick,
16 objectors.
17 MR. COCHRAN: Your Honor, Edward W. Cochran on
18 behalf of objector Corinna Connick and the Pentzes.
19 MR. MUEHLBERGER: Good afternoon, your Honor. Jim
20 Muehlberger on behalf of Aventis Pharmaceuticals.
21 MR. MORGAN: Good afternoon, Your Honor. Peter
22 Morgan for Baxter.
23 MR. BARLEY: Steve Barley for Amgen.
24 MR. WEXLER: Good afternoon, your Honor. Ken
25 Wexler for the plaintiffs.

Page 5

1        MR. EDELSON: Good afternoon, your Honor. Marc
2   Edelson for the plaintiffs.
3        MR. KODROFF: Jeffrey Kodroff, also for the
4   plaintiffs, your Honor.
5        MR. HAVILAND: Good afternoon, your Honor. Don
6   Haviland for the named consumer plaintiffs.
7        MR. FREELEY: Good afternoon, your Honor. Austin
8   Freeley for James Wilson, the objector.
9        MR. RASKIN: Good afternoon, your Honor. Richard
10  Raskin for defendant Bayer Corporation.
11       MR. COHEN: Your Honor, Richard Cohen, TPP
12  allocation counsel.
13       MR. EVERETT: Clay Everett for Pharmacia.
14       MS. SHANAHAN: Good afternoon, your Honor. Sara
15  Shanahan for Watson.
16       MR. PALERMO: Good afternoon, your Honor. Chris
17  Palermo for Dey.
18       MS. TABACCHI: Tina Tabacchi, your Honor, for
19  Abbott Laboratories.
20       MR. DeMARCO: Michael DeMarco for Aventis.
21       MR. OCCHUIZZO: Mike Occhuizzo for Sicor.
22       MR. RONAN: Gary Ronan for Immunex.
23       MS. McGUAN: Kathleen McGuan for Fugisawa.
24       THE COURT: All right, so have you worked together
25  to figure out essentially an order for presentation? You

cbac3204-2187-45fe-a572-e9859ff8ab23

1  should probably present the settlement first.  I hadn't
2  quite realized -- I've received a lot of briefs, so there
3  are one or two key issues I want to discuss, but there are
4  also other multiple issues that I know have been raised in
5  the pleadings.  Have you discussed a timetable?
6              MR. BERMAN:  We haven't, your Honor.
7              THE COURT:  All right, we're going to go straight
8  through till 4:00.  I have a conference call, and then if I
9  need to, I'll come back out.  And then if we can't do that,
10 then we'll have to set it up for maybe tomorrow morning or
11 something, in other words, or whatever time, but I'm trying
12 to get as much as I can done.
13             The two key issues -- actually, the number one
14 most important issue in my mind that's worried me enormously
15 is the cash payors.  There is at least an argument -- well,
16 first, I want to hear whether everybody here intends for
17 them to be included, something I did not focus on at the
18 time of the preliminary approval, and, if everyone agrees
19 they should be included, whether or not a supplemental
20 notice is necessary.  That's a big issue for me.  We also
21 need to discuss attorneys' fees, and then there are myriad
22 other things that have come up along the way.  But I'm sure
23 you will present all of this and more.
24             MR. BERMAN:  I have some slides.  If I might
25 approach, your Honor?

Page 7

1       THE COURT: Is the mike on so everyone can hear?
2       MR. BERMAN: Good afternoon, your Honor. Steve
3   Berman on behalf of the class.
4       THE COURT: I think they probably can't hear, and
5   there are so many people back there, so --
6       MR. BERMAN: Can you hear me back there?
7       THE COURT: No. At least two said they couldn't.
8   Anyone who's got a serious problem is welcome to come and
9   sit up in the jury box if you'd like to, but go ahead.
10      MR. BERMAN: What I thought I would do, your
11  Honor, is to run through why we think the settlement should
12  be approved, address the cash issue, and then address what I
13  think are the highlights of the objections in my opening
14  remarks, if that's okay with your Honor. Also,
15  procedurally, we're going to have to do -- this can't be the
16  final hearing because the Class 1 Part B class members have
17  not gotten the individual notice yet. CMS --
18      THE COURT: There's no way they can hear you.
19          (Discussion off the record.)
20      MR. BERMAN: As I'm saying, there will have to be
21  another approval hearing.
22      THE COURT: Everyone's nodding. It may be the
23  only time I get that in this room.
24          (Laughter.)
25      MR. BERMAN: There will have to be another

cbac3204-2187-45fe-a572-e9859ff8ab23

Page 8

1  approval hearing, so the best that we can do is to present
2  the record as it exists today.  And we will know more this
3  week when we'll get the data, and we'll be in touch with the
4  Court on that.
5           THE COURT:  Well, do you have some sense of it,
6  how many months?
7           MR. BERMAN:  Well, they said they were going to
8  get us the data this week, and then the question is whether
9  it's adequate.  We have already got it once; it wasn't
10 adequate.  So we're hoping that we can get it and we can get
11 the process going shortly.
12          THE COURT:  And that's only Class 1?
13          MR. BERMAN:  That's correct.
14          So I thought I'd start off by talking about the
15 reasonableness of the settlement amount of $125 million.
16 Prior to the trial -- and I'm talking about the trial we had
17 of the Massachusetts class -- we had Dr. Hartman do a damage
18 study for all the defendants, and his number came out at
19 $1.2 billion.  It seems like a large number, but the trial
20 altered the landscape.
21          So if you look at the defendants in the Track Two
22 settlement, we have Amgen --
23          THE COURT:  Is that all the defendants in
24 Track Two or all the defendants in Track One and Track Two?
25          MR. BERMAN:  Track Two only.  And if you break

cbac3204-2187-45fe-a572-e9859ff8ab23

Page 9

1  those defendants down into the brand-name drug defendants
2  and the multi-source defendants, Dr. Hartman estimated
3  $316 million in damages from Amgen, Aventis, and Watson, and
4  then roughly $800 million from the remaining defendants.
5  All are multi-source drugs.
6          So we had the trial, and we learned the road map
7  from the trial.  One of the important points in evaluating
8  liability was evidence of spread marketing, and you recall
9  the do-the-math type of documents that we spent a lot of
10 time on at the trial.  With respect to the multi-source
11 defendants, there were no such documents.  We had very
12 little evidence that the multi-source defendants were busy
13 marketing the spread.  So we had a liability hole, a
14 significant liability hole.
15         The other issue that we had to overcome, and which
16 was really the big issue here, was the median issue, and
17 I'll show you how that dramatically changes damages in this
18 case.  What I did in this slide here, Page 5, your Honor, is
19 to take the original trial request of Bristol-Myers.  We
20 asked for $4.9 million.  You applied the median analysis,
21 and you awarded $388,000.  For Class 3, it's a similar kind
22 of result, 5 percent.
23         So if we then analyzed the -- and, of course, on
24 Schering, we got nothing.  So we looked at the possible
25 results of another trial on Track Two.  If we could be

cbac3204-2187-45fe-a572-e9859ff8ab23

Page 10

1  zeroed out on some defendants, we might get 7 percent of
2  what we thought the damages were, and BMS came out at about
3  5. So if you use this as a guide, the range of damages for
4  Track Two is somewhere between zero and $40 million, not a
5  big number.
6           Now, if you look at the settlement --
7           THE COURT: Just on the multi-source, right?
8           MR. BERMAN: Yes. If you look at the settlement
9  and you apply percentages to the actual damages, the
10 brand-name settlement of $100 million is roughly 31 percent
11 of Dr. Hartman's damage estimate. That's a very healthy
12 number under the case law, where you see courts approving
13 settlements 5 percent, 8 percent, and 10 percent.
14          If you look at the real multi-source damages where
15 we have $25 million allocated to that group, we're at
16 62 percent of damages using a BMS type of analysis. That
17 doesn't account for the fact that we might be zeroed out by
18 some of these defendants, and we were pretty confident we
19 would be on some of them.
20          So the settlement is a worthwhile settlement. It
21 certainly meets the criteria as to the amount.
22          Now, let me turn to some of the objections because
23 they go to fairness of the settlement. The first objection
24 we got is that -- well, let me back up. From a consumer's
25 standpoint, what does the settlement look like? Well, the