# Attachment A

# United States Court of Appeals
## For the First Circuit

No. 08-2253

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM F. BATER,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]


Before

Lynch, Chief Judge,

Boudin and Stahl, Circuit Judges.


Joseph Wrobleski, Jr., by appointment of the court, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.


February 4, 2010

**BOUDIN**, <u>Circuit Judge</u>.   William Bater was convicted of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e) (2000), and now appeals.  His arguments are that the indictment against him should have been dismissed due to prejudice from delay and that the firearm should itself have been suppressed as the product of an unlawful search.  We outline the history briefly, reserving details until the individual claims are discussed.

The rifle that prompted Bater's indictment was seized by Maine State Police on January 9, 2003, during a visit to Bater's apartment in North Bridgton, Maine.  The police had visited the apartment earlier in the day looking for Bater's nephew, Nicholas Phillips, whom the police were investigating for several burglaries and an arson.  On returning for a second visit, the police secured Bater's consent to search the apartment for Phillips.  The search was conducted by John Hainey, a detective with the Maine State Police.

During the search, Hainey discovered under Bater's bed or mattress a large black case containing a hunting rifle.  Bater claims that Hainey had discovered the case while looking under the bed to see whether Phillips was secreted there and that he (Bater) had denied Hainey permission to open the case.  Hainey's version of events was that he had seen two BB guns under the bed, had then asked Bater whether he had any firearms in the house, and that

Bater had then voluntarily revealed the gun case, which had been hidden under the mattress.

Bater was not arrested but was asked for assistance, and he in turn helped the police locate Phillips who was arrested that same evening. A week or two later, agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began investigating Bater's firearm possession. In an interview with the ATF in January 2003, Bater said that a woman named Sarah Otis bought the rifle for her father and later gave it to Bater's wife, Christina. This conformed to what Bater told Hainey the day the gun was found, and to Christina Bater's testimony in subsequent court proceedings.

Within the month, the ATF confirmed that the gun had been sold to Otis and interviewed her. Otis at first confirmed Bater's version that she purchased the rifle for her father; later, she recanted and instead explained she purchased the rifle for Bater at his request--the position to which she testified at Bater's later trial. In April 2003, the ATF interviewed Phillips--who was then in jail in Maine--about the gun purchase because both Bater and Otis said that Phillips was present at the time. According to the ATF's notes, Phillips corroborated some aspects of Bater's story but contradicted others.

During the interview, the agents told Phillips that they thought he was lying and emphasized that if he lied to the grand

jury he could be subject to federal charges; Phillips then declined to talk further with the agents, and Phillips later disappeared and did not testify during any of the proceedings against Bater.  By May 2003, the ATF had proof of multiple prior felony convictions for Bater, and in June 2003, the ATF recommended to the U.S. Attorney, who had already opened a case file, that Bater be charged as being a felon in possession of a firearm.  Bater was indeed so indicted, but not until more than four years later, in September 2007.

In October 2007, Bater moved to dismiss the indictment because of prejudicial delay in indicting him and also moved to suppress the rifle as unlawfully seized.  Following an evidentiary hearing before a magistrate judge in January 2008, the district court adopted the magistrate judge's recommendation that both motions be denied.  Bater was tried in May 2008 and convicted by the jury, being later sentenced to 204 months in prison.  He now appeals, claiming that the district court erred in denying his pretrial motions.

Bater first argues that the district court erred by not dismissing the indictment for impermissible delay due to the over four-year gap between the finding of the firearm by the police (January 2003) and his indictment (September 2007).  We review a district court's decision to not dismiss for pre-indictment delay for abuse of discretion, United States v. DeCologero, 530 F.3d 36,

77 (1st Cir.), cert. denied, 129 S. Ct. 513, 129 S. Ct. 615 (2008), although the phrase is perhaps more misleading than helpful.[1]

Bater's indictment occurred within the statute of limitations, which is five years for the offense charged, as well as most federal crimes, 18 U.S.C. § 3282(a); but even so, excessive pre-indictment delay can sometimes, albeit rarely, violate the Fifth Amendment's Due Process Clause if the defendant shows both that the "delay caused substantial prejudice to his right to a fair trial" and that "the [g]overnment intentionally delayed indictment . . . to gain a tactical advantage." United States v. Picciandra, 788 F.2d 39, 42 (1st Cir.), cert. denied, 479 U.S. 847 (1986); accord DeCologero, 530 F.3d at 78.

Bater's claim of prejudice is that the delay in indicting him caused Phillips to be unavailable to testify at trial and that had Phillips been available, he would have supported Bater's claim that the rifle had been purchased by Otis and given to Bater's wife as her own possession. The first assertion rests on conjecture; the second is debatable at best. But even if both were true, the claim would still fail because there is no evidence that the

---

[1] Although suggesting great latitude, "abuse of discretion" has this meaning only where the issue invites it--usually in applying a general standard to specific facts (the test being essentially one of reasonableness); but (confusingly) "abuse of discretion" is used as well to embrace mistakes on abstract issues of law (reviewed de novo) and errors of fact (for which clear error is the customary test). See Rogers Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 132 (1st Cir. 2005).

-5-

government delayed the indictment to deprive Bater of Phillips' testimony and this alone defeats the due process claim.

The government says that its lawyers in the Maine U.S. Attorney's office were occupied with other matters, admitting that better track should have been kept of the case. Obviously it is undesirable that indictment be delayed when all the evidence is in hand and no good reason for deferral exists; this is so for multiple reasons too obvious to need recounting. But the statute of limitations is the principal outer limit, United States v. Lovasco, 431 U.S. 783, 789 (1977), and the due process claim under Supreme Court precedent is aimed only at deliberate misconduct by the prosecutor (or at least something very close to that), id. at 795 & n.17; United States v. Marion, 404 U.S. 307, 324 (1971).

Here, Bater has no proof whatever that the prosecutors' delay was in any respect prompted by a wish to deprive Bater of Phillips' help, if help it were. The government itself made efforts to find Phillips in 2006 to testify before the grand jury. Bater complains that the police drove Phillips away by threatening him with perjury, but this has no visible connection with the delay in indictment. Also, there is no indication that the police wanted him to flee, and Hainey and another agent both said that he had not been considered a flight risk. It is thus superfluous that the police said that they customarily warn witnesses of the risk of perjury.

Bater says that the prosecutors were at least reckless, itself a chameleon term sometimes used to suggest knowing indifference to risk and sometimes merely a high level of negligence. United States v. Gonsalves, 435 F.3d 64, 70 (1st Cir. 2006). But nothing in the circumstances of this case suggests recklessness even under the more broader conception of the term. At best, the prosecutors had other more pressing cases (which is what they say), and at worst, the case merely slipped through the cracks. If there is more, it was Bater's burden to show it. United States v. Stokes, 124 F.3d 39, 47 (1st Cir. 1997), cert. denied, 522 U.S. 1139 (1998).

Although this is enough to dispose of the due process claim, other required elements of such a claim are also lacking or doubtful. As to causation, it is unclear exactly when Phillips left Maine or otherwise concealed himself. Short of indicting and trying Bater while Phillips was being held in jail--as he was when interviewed in April 2003--his presence could hardly be guaranteed, and Bater provides no reason to think that indicting Bater sooner rather than later would have decreased the risk of Phillips' absence. See Stokes, 124 F.3d at 47.

Even assuming that Phillips had testified, it is not clear just what he would have said or how much it would have helped Bater. Based on the ATF's account of its interview with Phillips, Bater claims that had Phillips testified, he would have confirmed

-7-

Christina Bater's testimony that Otis gave the rifle to Christina; but Otis herself testified that she bought the rifle for Bater, and the jury credited Otis rather than Christina, who had reason to protect her husband.  One might doubt that support from Phillips, Bater's nephew and himself a felon, would have made a difference. See, e.g., United States v. Kenrick, 221 F.3d 19, 33 (1st Cir.), cert. denied 531 U.S. 961, 531 U.S. 1042 (2000); United States v. McMutuary, 217 F.3d 477, 482 (7th Cir.), cert. denied, 531 U.S. 1001 (2000).

        Bater's second line of argument on appeal is to challenge the denial of his motion to suppress the rifle on grounds of a Fourth Amendment violation.  In reviewing motions to suppress, we review legal determinations de novo, but factual findings for clear error, United States v. Melendez, 301 F.3d 27, 32 (1st Cir. 2002), and will uphold a lower court's denial of a motion to suppress so long as "any reasonable view of the evidence supports it," United States v. Mendez-de Jesus, 85 F.3d 1, 2 (1st Cir. 1996).

        It is undisputed that Bater initially consented to a search only for Phillips, which at first limited the permissible scope of the search.  Florida v. Jimeno, 500 U.S. 248, 251 (1991). But on Hainey's account, Bater when questioned admitted to having a gun in the house and showed Hainey the gun case.  Bater simply denies that this is what happened.  He does not claim, although

perhaps he might have, that tendering the case was not itself an implied consent to Hainey to open it and secure the weapon.

Bater gave a quite different version of events, as already recounted, but the magistrate judge and the district judge credited Hainey. Bater attacks this as clear error, but none of his arguments--and he makes several--establish that the factfinders' conclusion was clear error.[2] Thus, we need not consider the government's claim that Bater has no standing to contest the seizure since he denies owning the gun or the district court's alternative ground of disposition that even on Bater's own account, the plain view doctrine applied.

Finally, Bater argues the magistrate judge was biased against him, and so says the magistrate's opinion is entitled to less deference. As evidence of bias, he points primarily to comments the magistrate judge made about the efforts of Bater and his attorney to track down Phillips. But these comments were in a single footnote in the decision. The entirety of the magistrate judge's report does not support Bater's claim of bias, and, anyway,

---

[2]For example, Bater says that he would not have admitted owning a gun since he was a convicted felon; but once the question was asked, he might well have thought discovery inevitable and sought the benefit of cooperation. Bater also says that if the gun case were produced from under the mattress (as Hainey claimed), Hainey would have noticed a lump in the bed, which he denied seeing; but this depends on the location and size of the lump, about which we know nothing.

-9-

the final word was that of the district judge, who did not adopt the footnote Bater challenges.

<u>Affirmed.</u>