# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re: **PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | ) ) ) ) |
|  | ) |
| **THIS DOCUMENT RELATES TO:** | ) ) |
| *The City of New York, et al.,* | ) ) |
| *Plaintiffs,* | ) ) |
| *v.* | ) ) |
| *Abbott Laboratories, Inc., et al.,* | ) ) |
| *Defendants.* | ) ) |

**MDL No. 1456**
**Civil Action No. 01-CV-12257-PBS**
**Subcategory Case. No. 03-10643-PBS**

**Hon. Patti B. Saris**

**CERTAIN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR AMENDED MOTION TO AMEND THE COURT'S FEBRUARY 9, 2010
AMENDED MEMORANDUM AND ORDER TO INCLUDE A CERTIFICATION
OF AN IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

William A. Escobar (*pro hac vice*)
Neil Merkl (*pro hac vice*)
Christopher C. Palermo (*pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants
Mylan Inc. (formerly known as Mylan
Laboratories Inc.), Mylan Pharmaceuticals
Inc. and UDL Laboratories, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ....................................................................................................................... 3

I.     THE *FUL DECISION* SHOULD BE CERTIFIED FOR AN IMMEDIATE
APPEAL TO THE FIRST CIRCUIT PURSUANT TO 28 U.S.C. § 1292(B) .................. 3

     A.    The Elements of a Claim Under New York Social Services
Law § 145-b Are a Controlling Question of Law .................................................. 4

     B.    There Is A Substantial Ground for Difference of Opinion ................................... 5

     C.    Certification Will Materially Advance
the Orderly Disposition of This Litigation............................................................ 8

II.    CAUSATION IS AN ELEMENT OF N.Y. SOC. SERV. LAW §145-B WHERE
THE STATEMENT AT ISSUE IS A "REPORT OF DATA" ........................................ 9

     A.    The Language "Which Serves As The Basis For"
Requires Proof Of Causation ................................................................................. 9

     B.    The Phrase "Which Serves As The Basis For" Applies to Any
Statement or Representation That Is Not a
Claim for Payment Made Directly to the State .................................................... 11

     C.    The Statute Only Reaches Fraudulent Attempts to Obtain Payment ................... 15

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

A.J. Temple Marble & Tile, Inc. v Union Carbide Marble Care, Inc.
  87 N.Y.2d 574, 663 N.E.2d 890, 640 N.Y.S.2d 849 (1996)......................................................13

AmerisourceBergen Drug Corp. v. Meier
  No. A-03-CV-6769, 2005 WL. 2645000 (E.D. Pa. Oct. 14, 2005) ...........................................9

Bennett v. United States Trust Co.
  770 F.2d 308 (2nd Cir. 1985)................................................................................................15

Blue Cross Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.
  3 N.Y.3d 200, 818 N.E.2d 1140, 785 N.Y.S.2d 399 (2004).....................................................7

City of New York v. Smoke-Spirits.Com Inc.
  12 N.Y.3d 616, 911 N.E.2d 834, 883 N.Y.S.2d 772 (2009)................................................7, 11

Comacho v. Puerto Rico Ports Authority
  369 F.3d 570 (1st Cir. 2004).............................................................................................4, 8

Doe v. Hartz
  970 F. Supp. 1375 (N.D. Iowa 1997)........................................................................................4

Gaidon v. Guardian Life Insurance Co. of America
  94 N.Y.2d 330, 344, 725 N.E.2d 598, 604, 704 N.Y.S.2d 177 (1999)...................................10

Katz v. Carte Blanche Corp.
  496 F.2d 747 (3rd Cir. 1974), cert. denied, 419 U.S. 885 (1974).........................................4, 7

Kuriansky v. Orvieto
  236 A.D.2d 592, 653 N.Y.S.2d 953 (N.Y. App. Div., 2nd Dept. 1997)....................................5

Lopez-Soto v. Hawayek
  175 F.3d 170 (1st Cir. 1999)..................................................................................................14

In re McMillan
  52 A.D.2d 369, 384 N.Y.S.2d 36 (N.Y. App. Div., 3rd Dept. 1976) .......................................12

Morin v. Trupin
  711 F. Supp. 97 (S.D.N.Y., 1989) ..........................................................................................15

In re Mutual Life Insurance Co. of New York Premium Litigation
  299 F. Supp. 2d 4 (D. Mass. 2004) ..........................................................................................9

New York v. Kelly (In re Kelly)
  155 B.R. 75 (Bankr. S.D.N.Y. 1993).........................................................................................5

People v. Brooklyn Psychosocial Rehabilitation Institute
    185 A.D.2d 230, 585 N.Y.S.2d 776 (N.Y. App. Div., 2nd Dept. 1992)....................................5

People v. Rosenberg
    138 N.Y. 410, 34 N.E. 285 (1893)..........................................................................................15

In re Pharmaceutical Industry Average Wholesale Price Litigation
    No. 01-12257-PBS, 2010 U.S. Dist. Lexis 6843 (D. Mass. Jan. 27, 2010); *amended at*
    __ F. Supp. 2d. __, Slip Opinion, (D. Mass. Feb. 9, 2010).............................................. *passim*

In re Pharmaceutical Industry Average Wholesale Price Litigation
    No. 05-11084-PBS, 2008 WL. 163644 (D. Mass. Jan 16, 2008) ........................................3, 7

Philip Morris Inc. v. Harshbarger
    957 F. Supp. 327 (D. Mass. 1997) .......................................................................................4, 5

Runner v. New York Stock Exchange, Inc.
    568 F.3d 383 (2nd Cir. 2009)...............................................................................................6, 7

Shanahan v. City of Chicago
    82 F.3d 776 (7th Cir. 1996) ...................................................................................................14

Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates Inc.
    86 F.3d 656 (7th Cir. 1996) .......................................................................................................4

State ex rel. Norwood v. Kansas City & Memphis Railway & Bridge Co.
    153 S.W. 614 (Ark. 1913)........................................................................................................10

State v. Stokols
    234 A.D.2d 222, 652 N.Y.S.2d 7 (N.Y. App. Div., 1st Dept. 1996).........................................5

Turner v. Secretary of the Department of Health and Human Services
    No. 99-544V, 2007 U.S. Claims LEXIS 394 (Fed. Cl. Ct. Nov. 30, 2007) ...........................10

## STATUTES AND RULES

28 U.S.C. § 1292............................................................................................................... *passim*

26 U.S.C. §§ 621-634 ..............................................................................................................4

New York General Business Law § 349...............................................................................6, 10

New York Social Service Law § 145-b .............................................................................. *passim*

22 New York Codes Rules and Regulations § 500.27................................................................3, 6

# PRELIMINARY STATEMENT

The Court issued a Memorandum and Order, *In re Pharm. Indus. Average Wholesale Price Litig.* Civil Action No. 01-12257-PBS, 2010 U.S. Dist. Lexis 6843 (D. Mass. Jan. 27, 2010), on January 27, 2010 (and amended on February 9, 2010), which, among other things, granted Plaintiffs' Motion for Partial Summary Judgment on Issues Relating to the Federal Upper Limit and Under New York Social Services Law § 145-b against certain Defendants, including Mylan Pharmaceuticals Inc., Mylan Inc., UDL Laboratories, Inc., Par Pharmaceutical Companies, Inc., Par Pharmaceutical, Inc., Purepac Pharmaceutical Co., Teva Pharmaceuticals USA, Inc., Ivax Corporation, Ivax Pharmaceuticals, Inc., Barr Laboratories, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Wyeth ("Defendants").[1] In construing the New York statute, the Court decided that causation is not an element of a Section 145-b claim where the defendant allegedly "gave 'a [false] report of data which serves as the basis for a claim or a rate of payment.'" *See In re Pharm. Indus. Average Wholesale Price Litig.* Civil Action No. 01-12257-PBS, __ F. Supp. 2d __ Slip Op. at 21-23 (D. Mass. Feb. 9, 2010) (the "*FUL Decision*"); Revised First Amended Consolidated Complaint ("RFACC") at ¶ 811. The Court held that: "Causation of improper payments, however, is not an element of Section 145-b. The plain language of Section 145-b makes clear that liability attaches upon an 'attempt to obtain' improper payments. Nothing more is required." *FUL Decision* at 21. As a

---

[1] On January 27, 2010, the Court issued a Memorandum and Order on Plaintiffs' Motion for Partial Summary Judgment on Issues Relating to the Federal Upper Limit and Under New York Social Services Law § 145-b. *See* Docket No. 6863; *In re Pharm. Indus. Average Wholesale Price Litig.* Civil Action No. 01-12257-PBS, 2010 U.S. Dist. Lexis 6843 (D. Mass. Jan. 27, 2010). Defendants moved to amend that Memorandum and Order for certification on February 8, 2010. *See* Docket No. 6903. On February 9, 2010, the Court amended its January 27, 2010 order "to reflect the fact that Boehringer Ingelheim Roxane Inc. f/k/a Roxane Laboratories, Inc. settled with the Plaintiffs during the pendency of the addressed motions." *See* Docket No. 6905, at p.1, n.1.

consequence, the Court determined that Defendants were liable under Section 145-b without determining whether Defendants caused any claim or rate of payment.

Defendants respectfully submit that Plaintiffs are required to prove causation under Section 145-b. Under the express terms of the statute, where the conduct is not based on a "claim for payment" made directly to the State, as alleged here, the actionable representation must "serve as the basis for a claim or a rate of payment, financial information whether in a cost report or otherwise, health care services available or rendered, and the qualifications of a person that is or has rendered health care services." The phrase "serve as the basis for" necessarily requires causation, and possibly heightened causation. Moreover, the statute limits actionable conduct to fraudulent conduct, and therefore necessarily requires a showing of the elements of fraud, including causation. Accordingly, Defendants submit that Section 145-b requires that Plaintiffs must prove a causal link between Defendants' alleged conduct, reporting allegedly inflated prices, and a claim or rate of payment.

The Court was compelled to interpret Section 145-b without any guidance from New York State's highest court, the New York Court of Appeals, as to what the elements of a Section 145-b claim are. Defendants, therefore, respectfully request that the Court certify the following question for an immediate appeal to the First Circuit pursuant to 28 U.S.C. § 1292(b) (the "Certification Question"):

> What are the *prima facie* elements that the Plaintiffs must establish for a claim under N.Y. Soc. Serv. Law § 145-b where the allegedly false statement was not made directly to the State by the defendant?

If granted, Defendants will request that the First Circuit certify the Certification Question to the New York Court of Appeals, the court best suited to resolve this question of New York State law. The District Court cannot certify this question directly to the New York Court of Appeals

because the New York State Court Rules only permit the New York Court of Appeals to accept certified questions from "the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state…" *See* 22 N.Y.C.R.R. § 500.27(a).

All of the prerequisites for an interlocutory appeal under 28 U.S.C. § 1292(b) are met here. The *prima facie* elements of a Section 145-b claim are a controlling question of law. The New York Court of Appeals has never addressed the elements of a Section 145-b claim. The *FUL Decision* marked the first time any court considered it. If the issue is not resolved now by the New York Court of Appeals and is instead left to an appeal from a final judgment, there is a genuine risk that the claims may be adjudicated twice, wasting the Court's and the parties' time and resources.[2]

## ARGUMENT

### I. THE *FUL DECISION* SHOULD BE CERTIFIED FOR AN IMMEDIATE APPEAL TO THE FIRST CIRCUIT PURSUANT TO 28 U.S.C. § 1292(b)

The Court may certify an order for an immediate appeal under 28 U.S.C. § 1292(b) when the order meets the following three criteria: (1) involves "a controlling question of law", (2) "for which there is substantial ground for difference of opinion", and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See In re Pharm. Indus. Average Wholesale Price Litig.*, No. 05-11084-PBS, 2008 WL 163644, *1 (D. Mass. Jan 16, 2008). Each of those elements is met here.

---

[2]    Although this Motion seeks appellate review pursuant to Section 1292(b) as a means of certifying a specific question of law to the New York Court of Appeals, Mylan submits that the Court also erred in other aspects of its *FUL Decison*, including the rulings on falsity and *scienter*.

**A.    The Elements of a Claim Under New York Social Services
Law § 145-b Are a Controlling Question of Law**

A "controlling question of law" is one that is "serious to the conduct of the

litigation, either practically or legally." *See Philip Morris Inc. v. Harshbarger*, 957 F. Supp.

327, 330 (D. Mass. 1997) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3rd Cir.

1974), *cert. denied*, 419 U.S. 885 (1974)).  A question of law need not be dispositive of the entire

action to qualify as a controlling question of law.  *See In re Pharm. Indus. Average Wholesale

Price Litig.*, 2008 WL 163644, at *1.  "A question of law may be deemed 'controlling' if its

resolution is quite likely to affect the further course of the litigation, even if not certain to do so."

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs. Inc.*, 86 F.3d 656, 659 (7th Cir.

1996).

The elements of a claim under N.Y. Soc. Serv. Law § 145-b are plainly a

"controlling question of law."  *See Doe v. Hartz*, 970 F. Supp. 1375, 1433-34 (N.D. Iowa 1997).

Even one element, causation, is a controlling question of law in this action because it concerns

one of the *prima facie* elements of Plaintiffs' Section 145-b claims.  Questions of statutory

interpretation that may be determinative of whether a plaintiff can establish *prima facie* elements

of a claim are appropriate for certification for interlocutory appeal.  *See Comacho v. Puerto Rico

Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004).  For instance, in *Comacho* the First Circuit

accepted an interlocutory appeal of whether the statutory definition of "employer" in the Age

Discrimination in Employment Act, 26 U.S.C. §§ 621-634 ("ADEA") reached the defendant,

where that issue would be determinative of the plaintiff's ADEA claims.  *See* 369 F.3d at 573.

If it is determined that causation is an essential element of a Section 145-b claim,

or that the Court failed to consider other essential elements, then Plaintiffs will bear the burden

of demonstrating any such element at trial and Defendants will be able to defend against

Plaintiffs' claims with evidence showing that Plaintiffs have not established that Defendants' conduct meets the elements.

**B.** **There Is A Substantial Ground for Difference of Opinion**

A "substantial ground for difference of opinion" exists where there is no controlling authority. *See Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997). There is no controlling authority from the New York Court of Appeals. No New York Court of Appeals opinion has ever addressed the elements of a claim under N.Y. Soc. Serv. Law § 145-b. No reported decision has extended N.Y. Soc. Serv. Law § 145-b to a claim involving an allegedly false statement made by a party not receiving the funds to a third party (rather than a statement made directly to the governmental entity that paid the claim), as Plaintiffs allege here. In the entire universe of cases finding discussing N.Y. Soc. Serv. Law § 145-b, (only about 30 cases and no New York Court of Appeals case), violations of section 145-b have been established only if either there was a prior criminal conviction for acts which constitute a violation of § 145-b, or, in one case, where defendant perpetrated a "billing fraud" on Medicaid by seeking reimbursement for services that were not rendered. *See, e.g., Kuriansky v. Orvieto,* 236 A.D.2d 592, 593-94, 653 N.Y.S.2d 953, 955 (N.Y. App. Div., 2nd Dept. 1997); *State v. Stokols,* 234 A.D.2d 222, 222-23, 652 N.Y.S.2d 7 (N.Y. App. Div., 1st Dept. 1996) (finding that defendant was collaterally estopped from contesting the amount of civil damages under N.Y. Soc. Serv. Law § 145-b, since defendant had not contested guilt in the criminal case); *People v. Brooklyn Psychosocial Rehab. Inst.,* 185 A.D.2d 230, 234, 585 N.Y.S.2d 776, 779 (N.Y. App. Div., 2nd Dept. 1992) (finding a violation of § 145-b where defendant "designed, supervised, and implemented BPRI's 'home visit' billing fraud on Medicaid"); *New York v. Kelly (In re Kelly),* 155 B.R. 75, 79 (Bankr. S.D.N.Y. 1993) (holding that due to the debtor's criminal

conviction for grand larceny for submitting false Medicaid claims, "the State is entitled to a judgment against the debtor for treble damages" under § 145-b).

Certification for interlocutory appeal is particularly appropriate here because the First Circuit will be able to certify the question to the New York State Court of Appeals for resolution. Where the question turns on an interpretation of New York law that has not been addressed by New York state courts, certification to the New York Court of Appeals is appropriate, especially when the intent of the New York legislature is an issue. *See Runner v. New York Stock Exchange, Inc.*, 568 F.3d 383, 389 (2nd Cir. 2009). Indeed, it is the policy of New York State to permit all federal appellate courts to certify novel issues of New York law to the New York Court of Appeals. *See* 22 N.Y.C.R.R. § 500.27 (providing procedure for certification of questions to the New York Court of Appeals). This is particularly applicable here where these cases are before the court under MDL referral and will be referred back to the federal district courts in New York where they were filed.

The Court's opinion confirms the need for certification to the New York Court of Appeals. Lacking any precedent from New York courts, the Court sought guidance from cases construing the purpose behind the *federal* False Claims Act to conclude that Section 145-b should be read broadly to cover instances where causation cannot be shown. *See FUL Decision*, at 23-24. However, the legislative intent behind Section 145-b is not necessarily the same as the intent behind the federal False Claims Act. When interpreting similar statutes, the New York Court of Appeals has declined to adopt such broad readings and instead reads statutes more narrowly, to limit the conduct covered by the statute rather than expand it. For example, on a question certified from the Second Circuit Court of Appeals, the New York Court of Appeals held that N.Y. Gen Bus. Law § 349 requires heightened causation to preclude a "tidal wave" of

lawsuits that the legislature did not intend. *City of New York v. Smoke-Spirits.Com Inc.*, 12

N.Y.3d 616, 622-23, 911 N.E.2d 834, 838-39, 883 N.Y.S.2d 772 (2009) (quoting *Blue Cross*

*Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207, 818 N.E.2d 1140,

1144, 785 N.Y.S.2d 399, 403 (2004)). As the Court reasoned:

> In rendering this decision, we noted the lack of any clear indication
> from the Legislature that derivative injuries were actionable under
> section 349(h) . . .[and] our concern with expanding section 349 to
> permit "'a tidal wave of litigation against businesses that was not
> intended by the Legislature.'" *Id*. (internal citation omitted).

The New York Court of Appeals is the best judge of the New York State Legislature's intent and

how the Legislature's intent should direct statutory interpretation. As the United States Court of

Appeals for the Second Circuit held in *Runner* when it certified a novel question of statutory

interpretation to the New York Court of Appeals, "the New York Court of Appeals is in a far

better position to interpret the intent of New York's legislature than we are." 568 F.3d at 389.

Indeed, permitting the New York Court of Appeals to determine the Certification

Question is particularly appropriate, given the implications of the *FUL Decision*. The practical

effect of the Court's holdings in the *FUL Decision* is to permit Plaintiffs to pursue potentially

unprecedented liability against Defendants without any showing that their conduct was the cause

of any claim or rate of payment. Plaintiffs have not pointed to any New York Court of Appeals

decision that imposed liability of the magnitude sought by Plaintiffs without any showing of

causation.

Moreover, as Point II demonstrates, there is at the very least reasonable ground

for differences of opinion on the question of the elements of a claim under Section 145-b, in

particular, whether they include causation.

**C. Certification Will Materially Advance
the Orderly Disposition of This Litigation**

Under Section 1292(b) the standard for certification is whether "the litigation would benefit from prompt resolution of [the question to be certified]." *Comacho*, 369 F.3d at 573; *see also In re. Pharm. Indus. Average Wholesale Price Litig.*, 2008 WL 163644, at *1. One of the guiding policies behind Section 1292(b) is "the avoidance of possibly wasted trial time and litigation expense." *Katz*, 496 F.2d at 756. Certification will advance this policy.

First, whether Plaintiffs' section145-b claims are resolved by the Court on summary judgment or by a jury at trial, the Court and the parties must know what the *prima facie* elements of the claims are to properly litigate and adjudicate them. It makes no sense to proceed with the litigation without first knowing what Plaintiffs must prove to establish their claims.

Second, in the *FUL Decision*, the Court observed that "calculating penalties and damages may well be a daunting task …" but did not award damages and penalties. *FUL Decision*, at 26. The "daunting task" of calculating damages and penalties will likely require hundreds of hours of expert analysis, as well as hundreds of attorney hours of additional expert discovery, all at the expense of the parties. If the Court of Appeals determines that a claim under Section 145-b claim requires a showing of causation or some other element that Plaintiffs have not established, then the case will likely need to be retried and the time and expense of the damages analysis will have been wasted.

Third, the New York Counties of Erie, Oswego, and Schenectady have also brought actions in New York State Supreme Court against drug manufacturers – including many of the same Defendants in this action – setting forth substantially the same allegations that Plaintiffs do here. Also, like Plaintiffs here, they seek recovery under Section 145-b. Therefore, a decision from the New York Court of Appeals clarifying the *prima facie* elements of a Section

145-b will benefit not only this action, but the Erie, Oswego, and Schenectady actions as well. *See In re Mut. Life Ins. Co. of New York Premium Litig.*, 299 F. Supp. 2d 4, 8 (D. Mass. 2004) (allowing certification where "the resolution of the statute of limitations issue could materially advance the ultimate termination not only of this litigation, but potentially other cases as well.")

Allowing an immediate appeal of the Certification Question, therefore, "has the potential to greatly conserve the resources of the judiciary and the parties, avoiding a possible waste of resources on an unnecessary trial…" *AmerisourceBergen Drug Corp. v. Meier,* No. A-03-CV-6769, 2005 WL 2645000, at *4 (E.D. Pa. Oct. 14, 2005) (internal citations and quotations omitted).

## II. CAUSATION IS AN ELEMENT OF N.Y. SOC. SERV. LAW §145-b WHERE THE STATEMENT AT ISSUE IS A "REPORT OF DATA"

In its decision, the Court concluded that the phrase "serves as a basis for" in Section 145-b(1)(b) does not require that there be a causal link between Defendants' reporting of prices and the payment of a claim or rate of payment because liability will attach to an attempt to obtain a payment, not just the actual payment. The Court also concluded that the phrase "serves as a basis for" merely describes certain types of representations covered by the statute and therefore does not create a causation requirement. *See FUL Decision*, at 21-23. The Court's reasoning is not supported by the structure of the statute when read as a whole. Rather, the statute requires that any "statement or representation" that is not a claim for payment made directly to the state must "serve as the basis for" a claim or rate of payment in order to be actionable under Section 145-b.

### A. The Language "Which Serves As The Basis For" Requires Proof Of Causation

The definitions in N.Y. Soc. Serv. Law § 145-b(1) require a showing of causation for liability premised on a "report of data" – the only "statement or representation" covered by

Section 145-b that Plaintiffs allege Defendants made – by limiting actionable "reports of data" to those which "*serve as the basis for* a claim or a rate of payment, financial information whether in a cost report or otherwise, health care services available or rendered, and the qualifications of a person that is or has rendered health care services."  *See* N.Y. Soc. Serv. Law § 145-b(1) (emphasis added).  In other words, a statement or representation is not actionable unless it "serves as the basis for" *i.e.*, creates the foundation for, one of those enumerated items.

> Webster's Dictionary (2003) defines "basis", in pertinent part, as follows:
>
> 1: the bottom of something considered as its foundation[;] 2: the principal component of something[;] 3a: something on which something else is established or based[;] b: an underlying condition or state of affairs…4: the basic principle

Courts interpreting the term "basis" within a statute have defined it similarly.  *See*, *e.g.*, *Turner v. Sec'y of the Dep't of Health and Human Serv.*, No. 99-544V, 2007 U.S. Claims LEXIS 394, at *19 (Fed. Cl. Ct. Nov. 30, 2007) (relying on Black's Law Dictionary's definition of "basis" as "a fundamental principle; groundwork; support; the foundation or groundwork of anything"); *State ex rel. Norwood v. Kansas City & Memphis Ry. & Bridge Co.*, 153 S.W. 614, 616 (Ark. 1913) (relying on Webster's Dictionary and defining "basis" as "foundation, or groundwork, or anything; or that upon which it rests" or "principal component parts of a thing").  Under the plain meaning dictionary definition, an actionable statement must be at the "foundation" of or the "principal component of" a claim or rate of payment.

Additionally, the New York Court of Appeals has interpreted New York statutes to include the element of causation from other phrases when no such element is explicitly stated.  *See FUL Decision*, at 32 (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344, 725 N.E.2d 598, 604, 704 N.Y.S.2d 177 (1999)).  For example, the New York Court of Appeals held that the phrase "by reason of" in N.Y. Gen Bus. Law § 349 not only requires a showing of

causation, but heightened causation beyond merely "but for" causation. *City of New York v. Smoke-Spirits.Com Inc.*, 12 N.Y.3d 616, 623, 911 N.E.2d 834, 839, 883 N.Y.S.2d 772 (2009).

That the statute provides for liability based on an attempt to obtain payment is irrelevant to the causation element contained in Section 145-b(1)(b). The "attempt" language in the statute is tied to obtaining payments, not the reporting of data that serves as a basis for a claim or rate of payment. The inclusion of attempts to obtain payment merely means that Plaintiffs need not show that they actually paid out money on a claim. It does not relieve Plaintiffs of the burden of demonstrating that the Defendants' reported data "serve[d] as the basis" for a claim or rate of payment, *i.e.*, that a price reported by a particular defendant was the "foundation" or the "principal component of" a reimbursement claim or rate of payment.

**B. The Phrase "Which Serves As The Basis For" Applies to Any Statement or Representation That Is Not a Claim for Payment Made Directly to the State**

The Court rested its reasoning, in part, on an argument put forth by Plaintiffs that the phrase "which serves as the basis for" only modifies certain of the "statements or representations" which give rise to liability under N.Y. Soc. Serv. Law § 145-b, and cites "financial information whether in a cost report or otherwise" as a "statement or representation" that does not need to serve as the basis for a claim or rate of payment. *See FUL Decision*, at 22; Pls. Reply Mem. In Support of Motion for Partial Summary Judgment, at p. 6 n. 8. This reading of the statute overlooks important aspects of the structure of the statute. N.Y. Soc. Serv. Law § 145-b(1)(b) describes two categories of statements or representations that potentially give rise to liability. The first category relates to a claim submitted directly to the State:

> a claim for payment made to the state, a political subdivision of the state, or an entity performing services under contract to the state or a political subdivision of the state;

The second category has no requirement that the "statement or representation" be made to the State:

> an acknowledgment, certification, claim, ratification or report of data which serves as the basis for a claim or a rate of payment, financial information whether in a cost report or otherwise, health care services available or rendered, and the qualifications of a person that is or has rendered health care services.

The use of a semicolon between the two phrases indicates an intention to construe each part separately. *See In re McMillan*, 52 A.D.2d 369, 370, 384 N.Y.S.2d 36, 37 (N.Y. App. Div., 3rd Dept. 1976). Plaintiffs explicitly allege the second category only. Plaintiffs do not allege that any Defendant made a "claim for payment" to the New York Medicaid program. *See* RFACC, at ¶ 811.

The second part of Section 145-b(1)(b) further identifies the following types of "statement[s] or misrepresentation[s]" that do not need to be made directly to the State to be actionable: (a) "acknowledgment," (b) "certification," (c) "claim," (d) "ratification", or (e) "report of data." Whichever of these five types of a "statement[s]" or "representation[s]" is in question, it must "serve as the basis for" one of the enumerated items immediately following these words: (a) "claim or a rate of payment," (b) "financial information whether in a cost report or otherwise," (c) "health care services available or rendered," and (d) "the qualifications of a person that is or has rendered health care services." These enumerated items following "serve as the basis for" are not types of statements or representations. The phrase "serve as the basis for" comes after the statements and representations, but before what those statements and representations can serve as a basis for. The statutory provision is set up as follows:



The phrase "which serves as the basis for", therefore, applies to all types of statements and representations in this provision.

Applying the phrase "which serves as the basis for" to all preceding types of statements and representations in the statute is consistent with how the New York Court of Appeals interprets New York statutes. For example, in *A.J. Temple Marble & Tile, Inc. v Union Carbide Marble Care, Inc.*, the New York Court of Appeals interpreted the Franchise Sales Act in a similar manner. *See* 87 N.Y.2d 574, 663 N.E.2d 890, 640 N.Y.S.2d 849 (1996). The issue on appeal was whether the phrase "'who materially aids in the act of [sic] transaction constituting the violation' applies to all or only some of the enumerated categories of persons" preceding that phrase. *Id*. at 580; 663 N.E.2d at 893; 640 N.Y.S.2d at 852. Based on a "plain reading" of the statute, the Court held that the phrase applied to all categories of persons preceding it. *See id*. As the Court further held:

> Ordinary rules of statutory construction support this interpretation as well. Where, as here, a descriptive or qualifying phrase follows a list of possible antecedents, the qualifying phrase generally refers to and modifies all of the preceding clauses. Because the legislative history of the Franchise Sales Act is silent as to the intended scope of joint and several liability, we interpret section 691(3) in accordance with its plain and literal meaning. *Id*. at 580; 663 N.E.2d at 893; 640 N.Y.S.2d at 852 (internal citations omitted).

Additionally, Plaintiffs concede in their complaint that the phrase "which serves as the basis for" applies to their claims. In this action, Plaintiffs allege that Defendants violated Section 145-b(1) by allegedly making false statements regarding their prices. *See* RFACC, at ¶¶ 9-14, 808-813. Plaintiffs explicitly allege that "Defendants made false 'statements or representations' under Section 145-b(1)(b) because they gave 'a [false] report of data which serves as the basis for a claim or a rate of payment.'" *Id.* at ¶ 811. Thus, the type of "statement or representation" implicated in this lawsuit under N.Y. Soc. Serv. Law § 145-b(1)(b) is clear. Notably, in the RFACC, Plaintiffs do not – because they cannot – allege that the allegedly false "statement or representation" was in the form of "a claim for payment made to the state." Instead, Plaintiffs allege that Defendants sent the allegedly false prices to the "non-party publishing compendia such as First Data Bank's Blue Book." RFACC, at ¶ 112. Since Plaintiffs' allegations are grounded in representations made to the "publishing compendia," not the State, Plaintiffs must establish that the statement or representation "serve[d] as a basis for" one of the items enumerated in the statute. Therefore, Plaintiffs admit through their allegations in the RFACC that, under N.Y. Soc. Serv. Law § 145-b, they must establish that Defendants' allegedly false prices were the "basis" for "inflated" FULs.

In any event, the arguments advanced by Plaintiffs concerning the phrase "financial information whether in a cost report or otherwise" are irrelevant because they did not assert it as a ground for recovery in their complaint. Nor could they. Prices – whether list, fully discounted, or otherwise – are not "financial information" as that term is commonly used. Rather, Plaintiffs have explicitly limited their claims to "report[s] of data which serve[] as the basis for a claim or rate of payment." *See* RFACC, at ¶ 811. Plaintiffs cannot use their summary judgment briefs to revise their complaint. *See Shanahan v. City of Chicago*, 82 F.3d 776, 782

(7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Relying on case law indicating that the federal False Claims Act should be construed broadly, the Court further reasoned that the "serve the basis for" language only requires the representation of "data" to be "material" in the sense that it is "the type of data which serves as the basis for a claim or rate of payment." See *FUL Decision*, at 24 (emphasis added). However, the words "type of" do not appear in the statute, and it is improper when interpreting a statute to inject words that modify the scope of the statute without any basis. *See Lopez-Soto v. Hawayek*, 175 F.3d 170, 173 (1st Cir. 1999). That the Court felt it necessary to incorporate words into the statute and rely on the intent behind other statutes to construe its meaning confirms the need to certify this question to the New York Court of Appeals.

### C.     The Statute Only Reaches Fraudulent Attempts to Obtain Payment

In concluding that causation is not an element of a Section 145-b claim, the Court overlooked that the express language of the statute limits liability to "fraudulent schemes" to obtain or attempt to obtain payment from the New York Medicaid program. Section 145-b(1)(a) states: "It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or *other fraudulent scheme or device* …" N.Y. Soc. Serv. Law § 145-b(1)(a) (emphasis added). As a general rule of statutory construction, when a descriptive phrase follows a list of items, it refers to and modifies all the items that preceded it. *People v. Rosenberg*, 138 N.Y. 410, 34 N.E. 285 (1893). The phrase "other fraudulent scheme or device" therefore limits a "false statement or representation" and "deliberate concealment of any material fact" to a fraudulent false statement or concealment, and injects the elements of fraud into the entire statute.

A "fraudulent scheme" requires a showing of fraud. *See Morin v. Trupin,* 711 F. Supp. 97, 105 (S.D.N.Y., 1989). Fraud under New York law requires a showing of causation. *See Bennett v. United States Trust Co.*, 770 F.2d 308, 316 (2nd Cir. 1985). By limiting actionable conduct under Section 145-b to fraudulent conduct, the New York legislature incorporated the elements of fraud into Section 145-b, including causation. The "attempt" language in the statute does not relieve the Plaintiffs of the burden to demonstrate a causal link between Defendants' conduct and the claim or rate of payment had the "attempt" been successful.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court amend its February 9, 2010 Memorandum and Order, and certify the Certification Question for immediate appeal to the First Circuit, and grant Defendants such other, further, and different relief as the Court deems to be just and proper.

Dated: February 12, 2010

Respectfully Submitted,

KELLEY DRYE & WARREN LLP

By: /s/ Neil Merkl
    William A. Escobar *(pro hac vice)*
    Neil Merkl (*pro hac vice*)
    Christopher C. Palermo (*pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants*
*Mylan Inc. (formerly known as Mylan*
*Laboratories Inc.), Mylan Pharmaceuticals*
*Inc. and UDL Laboratories, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

   I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on February 12, 2010 a copy to LexisNexis File & Serve for posting and notification to all parties.

           _____/s/ Neil Merkl_____