IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Judge Patti B. Saris |

**MEMORANDUM IN SUPPORT OF MOTION
TO ENFORCE SETTLEMENT WITH BMS**

The court-appointed named class representative for the Class 1 consumer Sub-Class of

Medicare beneficiaries who purchased drugs manufactured and sold by Bristol Meyers Squibb

("BMS"), by and through his undersigned individual counsel, hereby moves to enforce the

settlement reached between the parties on June 25, 2007 and codified in a Memorandum of

Understanding ("MOU") attached hereto as Exhibit "A".

**I.      Background**

Pursuant to the Court's January 30, 2006 "Consolidated Order re: Motion for Class

Certification," the Aaronsons [Sue Ruth (deceased) and Reverend David] were appointed as the

lone individual consumer class representatives for the certified nationwide sub-class of Medicare

beneficiaries who purchased BMS Subject Drugs.  As this Court found in conjunction with both

its January 30, 2006 Class Certification Order and the Order granting final approval of the class

action settlement with the GlaxoSmithKline Defendants, the Aaronsons were adequate class 1

consumer class representatives because Sue Ruth Aaronson was prescribed and paid part of the

Medicare Part B co-payment for a BMS Subject Drug beginning in 2004.[1]   Pursuant to the

court-ordered mediation in this case before mediator Eric Green, the parties, acting through

counsel, negotiated a settlement by which BMS agreed to pay $13 million ($13,000,000.00) in

settlement of the claims of the Nationwide Medicare Consumer Settlement Class weeks before

that class' claims were due to be tried in this Court in July 2007.  *See* Memorandum of

Understanding dated June 25, 2007 at Exhibit "A" hereto (filed of record in this Court at Docket

No. 5595-3).  As the MOU clearly states, "it constitutes a binding agreement between Bristol-

Meyers Squibb Company ("BMS") and the Plaintiff class 1" as defined in this case.  The MOU

contained all the necessary material terms to constitute a valid and binding settlement agreement

including, but not limited to, the amount of settlement and the terms of the release.  While the

parties contemplated that they "will promptly negotiate and execute a formal settlement

agreement and the related documentation necessary to seek and obtain both preliminary and final

approval by the Court of their settlement", it was made explicitly clear that, "[n]evertheless, this

MOU shall be binding as of the date below and shall not be contingent upon such future

negotiation or execution.  Similarly, the binding nature of this MOU shall not be affected by

decisions or developments in the AWP MDL after the date below [June 25, 2007]."

Significantly, the parties contemplated that "[a]ny disputes concerning the terms and conditions

of the formal settlement agreement and the related documentation shall be resolved through

mediation before the court-appointed mediator, Eric Green."

---

[1]*See* Final Order and Judgment Granting Final Approval to Proposed Class Action Settlement with the GlaxoSmithKline Defendants, approving proposed allocation of settlement funds, and approving class counsel's application for attorneys fees, reimbursement of litigation expenses and compensation to class representatives, at Docket No. 4619.

To make it abundantly clear that the MOU was a final and binding settlement agreement,

the last provision of the MOU provided as follows:

> The undersigned corporate representative of BMS represents and warrants that she
> has the authority on behalf of BMS and the other members of the BMS Group
> to enter into this MOU and to bind the corporation thereto.  The undersigned
> counsel for the Nationwide Medicare Consumer Settlement Class represents and
> warrants that he has authority as court-appointed "lead counsel" for Class 1 in the
> AWP MDL to enter into this MOU and to bind the Class thereto.

*See* Exhibit "A".  After the MOU was executed on June 25, 2007, class counsel filed a Motion to

Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement.  *See*

Docket No. 5517.  The Memorandum in Support of the filing pointed out that, while class

counsel and BMS signed an MOU to settle the Class 1 claims in their entirety, they "have been

unable to craft a final settlement agreement because BMS believes that it has a right to guide the

distribution of the settlement monies and in such a manner as to create a reversion to BMS'

benefit."  *See* Docket No. 5518.  The Memorandum in Support then took the position that "the

MOU did not provide BMS with any right to veto class counsel's distribution plan and left that

right to class counsel's sole discretion.  Moreover, the MOU did not provide BMS with any right

to have unclaimed Class 1 monies to go to satisfy BMS's obligations to Classes II and III."  *Id*.

The Memorandum in Support asked the Court to "rule accordingly" because "[u]ntil the Court

resolves this impasse, the parties cannot finalize a settlement agreement, complete drafts of the

proposed class notices and seek the court's preliminary approval of the BMS Class 1

settlement."*Id.*

In a separate filing, one of the court-appointed plaintiffs' co-lead counsel filed a

declaration which attested to the fact that counsel was "personally involved in the lengthy

negotiations with BMS leading up to the execution of the Memorandum of Understanding

("MOU") said only in the class I claims against BMS." *See* Declaration of Steve W. Berman in

Support of Class Counsel's Motion to Preliminarily Approve Proposed Plan of Distribution for

the BMS Class 1 Settlement at Docket No. 5519.  Mr. Berman also represented that he was

"personally involved in subsequent negotiations with BMS regarding classes II and III." *Id.* at

paragraph 2.  Mr. Berman affirmatively represented that, based on his personal knowledge of the

settlement negotiations with BMS, "the MOU does not grant BMS any rights to guide the

proposed distribution  of the settlement amount to Class 1.  This is because it was made clear

during the mediation that class counsel would themselves develop and propose to the Court a

distribution model, and that BMS would have no right to veto it."  Mr. Berman also represented

that "class counsel [never agreed] that any monies left over after all Class 1 claims were

processed could be set aside for the benefit of Classes II and III.  Indeed, not only did BMS fail to

bargain for this, BMS had the opportunity to settle the Class II and III claims during the

mediation leading up to the Class 1 proposed settlement that expressly declined to settle those

claims.  BMS chose to settle only Class 1 for $13 million and there was no settlement of Classes

II and III despite final proposals being exchanged with respect to those two classes at the end of

the mediation." *Id* at ¶6.

Consequently, both the MOU and class counsel's affirmative representations made clear

that the $13 million bargained for as part of the settlement of the Class 1 consumer claims was

entirely Class 1 consumer money which could not, under any circumstances, be utilized to pay

the claims of Classes II and III (respecting third-party payors).

In response to BMS' Opposition to class counsel's Motion, class counsel filed a Reply

Memorandum which accused BMS of having "buyer's remorse" insofar as it "entered a deal that

it now does not like, thinking it overpaid." *See* Docket No. 5606 at 1.  In their curt response,

class counsel advised this Court "[t]ough luck  A deal is a deal, and the Court should enforce the

MOU and preliminarily approve class counsel's proposed distribution plan.  Once it does so,

class counsel will then file a motion for preliminary approval, including proposed forms of

notice, and the members of class I will be closer to receiving the relief to which they are

entitled".  *Id*.  Class counsel explained their rationale for their hard-lined position as follows:

> In an uncertain environment, the parties were called upon to decide whether to
> settle or to go to trial.  They chose to settle.  The bottom line is that BMS, facing a
> Class 1 trial just a month away from when it executed the MOU, signed on to the
> best deal that BMS believed it could garner at the time.  That it now believes it
> made a bad bargain is immaterial.  BMS must pay the full $13 million to which it
> agreed to pay for the benefit of Class 1.

*Id*. at p. 6.  Class counsel further remarked that "[a] bargain cannot be amended based on

subsequent events that did not turn out as hoped for or predicted, absent an express reservation

for such contingency in the agreement (which BMS did not seek or obtain)."  In support of this

proposition, class counsel cited to this Court the case of *Morales v. Hosp. Hermanos Melendez,*

*Inc.*, 447 F. Supp. 2d. 2d 137, 143-44 (D. P. R. 2006), upholding a settlement agreement over a

settling defendant's objections.  *Id*.

Class counsel also rebuffed BMS' charge that they had "some sort of a conflict in seeking

to maximize recovery for Class 1", as follows:

> This is silly; no conflict can be found in class counsel's aggressive negotiation to
> maximize the payout to Class 1.  Class counsel drove a hard bargain in obtaining
> BMS' capitulation to put up $13 million for Class 1.  BMS cannot conjure a non-
> existent conflict now by insisting that some of the $13 million go towards a future

judgment or settlement in favor of Classes II and III.

*Id.*

Again, class counsel's filing was supported by a Declaration of Steve Berman which rebuffed BMS' claim that there was a "'mutual mistake' in arriving at the $13 million that BMS agreed to pay to settle the Class 1 claims, and only the Class 1 claims. Docket 5607 at ¶4.

In an Electronic Order dated September 29, 2008, this Court ruled on the motion to preliminarily approve the proposed plan of distribution for the BMS Class 1 settlement as follows:

> A plain reading of the MOU demonstrates that BMS does not have the right to 'veto' class counsel's proposed distribution plan. However, BMS raises several interesting questions about the fairness of the plan. Plaintiff shall move for a preliminary approval of the plan, and the Court will hold a hearing where the issues will be vetted. The Court will decide on the appropriate distribution plan.

*See* Order dated September 29, 2008 at Exhibit "B" hereto.

Class Counsel did not move to preliminarily approve the settlement codified in the MOU, as ordered. Instead, the parties went back to the mediator and negotiated an entirely new settlement which now included the claims of Classes 2 and 3. *See* Docket No. 6349 at pp. 1-2. While this new settlement yielded an overall settlement amount of $19 million, as a result of an allocation negotiation between consumers (represented by the Prescription Action Litigation Project ("PAL") and TPPs (represented by counsel for Independent Settling Health Plans ("ISHPs")) in other settlements approved by this Court), consumers were allocated only 33% of the net settlement proceeds (net of fees and costs), yielding an aggregate settlement figure of only $4,370,000.00 for all consumers in Classes 1 and 3. This reduction of $8,630,000.00 in the amount promised to Class 1 consumers by the binding MOU is patently unfair, unreasonable and

inadequate and is the reason for the instant Motion.

II.    **Argument**

The First Circuit has long endorsed a prudential policy favoring settlement as a preferred

alternative to costly, time consuming litigation.  *Mathewson Corp. v. Allied Marine Industries*,

Inc., 827 F.2d 850, 852 (1st Cir. 1987); *Bistany v. PNC  Bank, NA.* 585 F.Supp 2d 179, 182 (D.

Mass 2008)("Policy favors enforcement of settlement agreements so as to hold people to the

contracts they make and to avoid costly and time consuming litigation." ; *T & T Mfg. Co. v. A.T.*

*Cross Co.*, 587 F.2d 533, 538 (1st Cir. 1978).  The Court has characterized settlements

negotiated, as here[2], "under the eyes of the court [as] a most solemn undertaking . . ." *Id* (quoting

*Warner v. Rossognol*, 513 F.2d 678, 682 (1st Cir. 1975).

In terms of enforcing a settlement, a district court possesses the authority to insure due

compliance with such a pact.  *Id.* (*citing Dankese v. Defense Logistics Agency,* 693 F.2d 13, 16

(1st Cir. 1982)(district court "retains an inherent power to supervise and enforce settlement

agreements entered into by parties); *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d

850, 853 (1st Cir. 1987(explaining the court's authority to discern whether a settlement had been

reached and, if so, to enforce it).  Indeed, "[w]here the parties, acting in good faith, settle a

controversy, the courts will enforce the compromise without regard to what the result might have

been had the parties chosen to litigate". *Id* (*quoting Terrain Enterprises, Inc., v. Western*

*Casualty and Surety Co.,* 774 F.2d 13120, 1321 (5th Cir. 1985), *cert denied*, 475 U.S. 1121

(1986)).  "Accordingly, when parties voluntarily enter into a settlement agreement, it cannot be

---

[2]The MOU was negotiated under the direct supervision of the court-appointed Mediator,
Eric Green.

repudiated by either party, and the court will summarily enforce that agreement. The court's

inherent power of enforcement, however, is limited to cases pending before it." *Flebotte v. Dow*

*Jones & Co., Inc*. 2001 WL 35988082 at * 2 ( (D. Mass.2001) (*quoting Petition of Mal de Mer*

*Fisheries, Inc*., 884 F.Supp. 635, 637 (D. Mass.1995)).

       To be enforceable, the trial court "must conclude that agreement has been reached on all

material terms." *Flebotte v. Dow Jones & Co., Inc*. 2001 WL 35988082 at *3 (D.Mass.

2001)(*citing Therma-scan, Inc. v. Thermoscan, Inc*., 217 F.3d 414, 419 (6th Cir.2000). Therefore,

where there exists a genuine question of material fact regarding the existence or terms of the

agreement, the Court may not summarily enforce the agreement, but instead "must take evidence

to resolve the contested issues of fact." *Malave v. Carney Hosp*., 170 F.3d 217, 220 (1st

Cir.2001); *Fidelity and Guaranty Ins. Co. v. Star Equipment Corp*., 541 F.3d 1, 5, (1st Cir. 2008)*.*

Because settlement agreements enjoy great favor with the courts, however, "it is only in the most

extraordinary circumstances that such a pact will be vacated." *Flebotte v. Dow Jones & Co., Inc*.

2001 WL 35988082 at *3 (D.Mass. 2001)(quoting  *McDermitt, Inc. v. Centex-Simpson Constr.*

*Co.*, 34 F.Supp.2d 397, 399 (N.D.W.Va.1999).

       In this case, the MOU contains all the material terms of a binding settlement of the Class 1

consumer claims for $13 million. Class Counsel have reportedly attested to this fact and, on

motion of Class Counsel, the Court so ruled. *See* Exhibit "B" hereto.

       A party to a settlement agreement may seek to enforce the agreement's terms when the

other party reneges. If, at the time of the claimed breach, the court case already has been

dismissed, the aggrieved party may bring an independent action for breach of contract. *Malave v.*

*Carney Hosp.*  170 F.3d 217, 219 -220 (1st Cir.1999)(*citing Kokkonen v. Guardian Life Ins. Co.*,

511 U.S. 375, 381-82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). If, however, the settlement

collapses before the original suit is dismissed, the party who seeks to keep the settlement intact

may file a motion for enforcement. *Id* (*citing United States v. Hardage*, 982 F.2d 1491, 1496

(10th Cir.1993) ("A trial court has the power to summarily enforce a settlement agreement entered

into by the litigants while the litigation is pending before it.") (citations omitted); *Mathewson*

*Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 852-53 (1st Cir.1987).

Here, the court-appointed named consumer class representative Reverend David

Aaronson, seeks to enforce the $13 million settlement against BMS (and Class Counsel, if need

be).

A settlement memorandum of understanding is enforceable as a settlement agreement.

*See, e.g., Fidelity and Guaranty Insurance Co., v. Star Equipment Corp.*, 541 F.3d 1 (1st Cir.

2008).  In the *Fidelity* case, the parties had entered mediation regarding a dispute respecting a

construction contract and emerged with a Settlement Memorandum of Understanding, signed by

all of the parties.  *Id.* at 2.  As part of the settlement, Star Equipment was required to obtain

"approval by municipal authorities" and "execution of customary releases and settlement

agreement".  *Id.* at 4.  Star Equipment thereafter obtained the required approvals and had prepared

the releases, but a party indemnitor asserted that no settlement agreement had been reached and

refused to sign the releases.  *Id*.  On motion, this Court enforced the Settlement Memorandum of

Understanding as a settlement agreement.  *Id*.  On appeal, the First Circuit upheld enforcement of

the Memorandum of Understanding stating that "the [indemnitor's] subjective belief that the

agreement was not 'final' does not bar enforcement in the face of their assent-in writing-to the

memorandum's unambiguous terms".  *Id* at 6.

By way of further example, in *In re Fernald Litigation*, the parties conducted, with the

assistance of the court, a class settlement of $73,000,000.00 as the total amount of the class

settlement, which was to be memorialized by a written document. *In re Fernald Litigation,* 1989

WL 267039 At * 2 (S.D. Ohio 1989).  The settlement was memorialized in a Memorandum of

Understanding executed on behalf of class plaintiffs by class counsel as well as counsel for the

defendants.  *Id*. The parties had intended to execute a formal settlement agreement and to file that

agreement with the court.  *Id*.  However, the parties were unable to do so, despite the assistance of

the Magistrate assigned to the case.  *Id*. The Magistrate thereafter concluded that the

Memorandum of Understanding embraced all of the elements of the contract and was enforceable

in itself.  *Id*.  The Memorandum of Understanding was thereafter made available to the class for

review in place of the final document contemplated by the Memorandum and the notice to the

Class was sent.  *Id*.  At the fairness hearing, the court found the proposed settlement, as detailed in

the Memorandum of Understanding, to be fair, adequate and a reasonable settlement of the

plaintiff's claims and ordered consummation of the settlement according to the terms of the

Memorandum of understanding.  *Id* at * 10.

Here, court-ordered mediation resulted in a Class 1 consumer class settlement of $13

million for the benefit of Class 1 consumers, like Reverend Aaronson only. The settlement was

codified in a MOU dated June 25, 2007. *See* Exhibit "A". When BMS tried to renege on the

MOU, Class Counsel moved to enforce the settlement agreement, and this Court agreed, ordering

class counsel to file a motion for preliminary approval of that settlement. Class counsel failed to

do so; instead, they chose to go back to the bargaining table with BMS, but on behalf of Classes 2

and 3. As a result, Class 1 consumers have lost over $8.5 million in settlement proceeds under the

proposed new settlement.  Such a reduction is patently unfair, unreasonable and inadequate to

Class 1 consumers, like Reverend Aaronson. Accordingly, Reverend Aaronson seeks enforcement

of the final, signed, and binding MOU to ensure that he receives the full measure of the relief

sought and achieved in this case.

**III.    Conclusion**

For the foregoing reasons, Reverend David Aaronson respectfully requests that the Court

grant the Motion to Enforce Settlement with BMS.


Dated: February 16, 2010                          By:      /s/ Donald E. Haviland, Jr.
                                                            Donald E. Haviland, Jr., Esquire
                                                            **HAVILAND HUGHES, LLC**
                                                            111 S. Independence Mall East
                                                            The Bourse, Suite 1000
                                                            Philadelphia, PA 19106
                                                            Telephone: (215) 609-4661
                                                            Facsimile:  (215) 392-4400

                                                            Counsel for Reverend David Aaronson

## CERTIFICATE OF SERVICE

I, Donald E. Haviland, Jr., Esquire, hereby certify that on February 16, 2010, I filed the

Memorandum in Support of Motion to Enforce Settlement with BMS with the Clerk of this Court

and used the CM/ECF system to send notification of such filing to all registered person(s).


/s/ Donald E. Haviland, Jr.