# Exhibit G

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
IN RE:  PHARMACEUTICAL   )MDL NO. 1456
INDUSTRY AVERAGE         )
WHOLESALE PRICE          )CIVIL ACTION:
LITIGATION               )01-CV-12257-PBS
                         )
THIS DOCUMENT RELATES TO)
U.S. ex rel. Ven-A-Care  )
of the Florida Keys,     )
Inc. v. Abbott           )
Laboratories, Inc., et   )
al. No. 06-CV-11337-PBS  )
_____)
```

VIDEOTAPED 30(B)(6) DEPOSITION OF:
CIGNA (PAULA SUE WALKER)
Taken on Behalf of the Defendants
March 12, 2008

**Page 46**

```
 1       program and/or any state
 2       Medicaid program paid Providers
 3       for each claim that sought
 4       payment for the Subject J-Codes,
 5       including:
 6            "(a) how any applicable,
 7       quote, 'median AWP,' unquote,
 8       quote, 'lowest branded AWP,'
 9       unquote, was calculated;
10            "(b) an identification
11       pricing of all pricing arrays
12       that were used to determine
13       pricing amounts and how those
14       pricing arrays were used to
15       determine payment amounts; and
16            "(c) the sources of
17       pricing data that the entity
18       used to establish the payment
19       amount and why the entity used
20       those sources of information."
21            Are you familiar with topic 3 from the
22  letter?
```

**Page 47**

```
 1       A.  Yes.
 2       Q.  And are you prepared to discuss the
 3  issues that are raised there in topic No. 3?
 4       A.  Yes.
 5       Q.  Can you tell me how you prepared
 6  yourself to talk about topic 3?
 7       A.  I reviewed the files in question.
 8  During some of the years I was doing the pricing,
 9  so --
10       Q.  What years would those have been?
11       A.  '95, '96, part of '96.
12       Q.  You were doing pricing for these 11
13  J-Codes?
14       A.  For all J-Codes.
15       Q.  For all J-Codes?
16       A.  Yes.
17       Q.  And that would include these 11;
18  correct?
19       A.  Yes.
20       Q.  Can you tell me about how much total
21  time you spent preparing for the deposition today,
22  including topic 3?
```

**Page 48**

```
 1       A.  Not really.  Not including the two --
 2  for today's, probably 15 hours reviewing stuff that
 3  had been pulled.
 4       Q.  Fair enough.  And in addition to
 5  reviewing documents, did you have occasion to meet
 6  with anyone from CMS or from the Department of
 7  Justice as part of your preparation?
 8       A.  No, other than the attorney.
 9       Q.  I'm sorry?
10       A.  Other than the attorneys.
11       Q.  Other than your counsel at Cigna?
12       A.  And Mr. Henderson.
13       Q.  You did have occasion to meet with Mr.
14  Henderson?
15       A.  Yes.
16       Q.  Okay.  And were those meetings to
17  prepare for this deposition?
18       A.  It was for the documents.
19       Q.  Okay.  When you say it was for the
20  documents, tell me what you mean.
21       A.  To make sure we had all documents that
22  were available.
```

**Page 49**

```
 1       Q.  Okay.  And did you satisfy yourself that
 2  you produced all documents that were available?
 3       A.  Yes.
 4       Q.  As a result of the -- your meetings with
 5  Mr. Henderson or anyone other than your counsel --
 6  and I'm not asking you to talk about meetings that
 7  you would have had with your counsel -- was there
 8  ever any suggestion by anyone you met with that the
 9  Cigna document record was incomplete?
10       A.  Not to my knowledge.
11       Q.  Thank you.
12           And as a result of your meetings with Mr.
13  Henderson or anyone else, again, other than your
14  counsel, were you asked to prepare any documents?
15       A.  Prepare documents?
16       Q.  Yes, ma'am.
17       A.  What do you mean by prepare?
18       Q.  Well, to prepare any documents that
19  would be produced for today's deposition.
20       A.  Yes.
21       Q.  Okay.  Can you tell me what those were?
22       A.  Old paper copies I transferred into the
```

13 (Pages 46 to 49)