## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| BMS | Judge Patti B. Saris |

### CLASS PLAINTIFFS' MOTION FOR LEAVE OF COURT TO RESPOND TO MOTION TO ENFORCE SETTLEMENT WITH BMS AT THE TIME SET FOR RESPONSE TO ALL OTHER OBJECTIONS TO THE BMS SETTLEMENT

On February 16, 2010 Attorney Don Haviland, on behalf of the David Aaronson and the presumably the estate of Sue Ruth Aaronson, filed a Motion to Enforce Settlement with BMS (the "Motion"). For the Court's convenience a copy of the Memorandum in Support of the Motion is attached hereto as Exhibit A. Class Counsel seek leave of Court to respond to the Motion on or before July 16, 2010.

At the recent status conference held on February 18, 2010 Class Counsel sought leave of court to respond to the Motion, along with any other objections to the BMS Settlement, if any, prior to the final approval hearing schedule for July 22, 2010. All objections to the BMS Settlement are due June 25, 2010 and briefs in support of final approval, along with response to any timely filed objections, are due July 16, 2010. The Court had not reviewed the Motion, stated that the Court was amenable to the request, but asked that Class Counsel confer with Mr. Haviland in order to reach agreement on the timing of any response to the Motion. Class counsel and Mr. Haviland have conferred

and are unable to reach an accord.

The Motion seeks to enforce the substance of a prior Memorandum of Understanding concerning settlement of claims against BMS by Class 1 (Medicare consumers) only. The current settlement with BMS contemplates settlement of claims for Classes 1, 2 and 3. Although not styled as such, the Motion is an objection to the Court's approval of the BMS Settlement. Rather than engage in two rounds of briefing of objections to the BMS Settlement (one in response to the Motion and another in response to other objections that may be filed on or before June 25, 2010), Class Counsel believe the most efficient use of the parties and the Court's resources is to engage in a single round of briefing related to all objections to the BMS Settlement, with response to all objections on or before July 16, 2010.

Accordingly, Class Counsel seek leave of Court to submit a response to the Motion on or before July 16, 2010.

DATED: March 2, 2010

By:    s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Liaison Counsel

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Kenneth A. Wexler
Jennifer Fountain Connolly
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Jeffrey Kodroff
John A. Macoretta
SPECTOR, ROSEMAN, KODROFF
   & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
HOFFMAN & EDELSON LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Co-Lead Counsel for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing pleading to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on March 2, 2010, a copy to LexisNexis File & Serve for posting and notification to all parties.

By **/s/ Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
(206) 623-7292

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Judge Patti B. Saris |

**MEMORANDUM IN SUPPORT OF MOTION
TO ENFORCE SETTLEMENT WITH BMS**

The court-appointed named class representative for the Class 1 consumer Sub-Class of Medicare beneficiaries who purchased drugs manufactured and sold by Bristol Meyers Squibb ("BMS"), by and through his undersigned individual counsel, hereby moves to enforce the settlement reached between the parties on June 25, 2007 and codified in a Memorandum of Understanding ("MOU") attached hereto as Exhibit "A".

**I.    Background**

Pursuant to the Court's January 30, 2006 "Consolidated Order re: Motion for Class Certification," the Aaronsons [Sue Ruth (deceased) and Reverend David] were appointed as the lone individual consumer class representatives for the certified nationwide sub-class of Medicare beneficiaries who purchased BMS Subject Drugs. As this Court found in conjunction with both its January 30, 2006 Class Certification Order and the Order granting final approval of the class action settlement with the GlaxoSmithKline Defendants, the Aaronsons were adequate class 1 consumer class representatives because Sue Ruth Aaronson was prescribed and paid part of the

Medicare Part B co-payment for a BMS Subject Drug beginning in 2004.[1]  Pursuant to the court-ordered mediation in this case before mediator Eric Green, the parties, acting through counsel, negotiated a settlement by which BMS agreed to pay $13 million ($13,000,000.00) in settlement of the claims of the Nationwide Medicare Consumer Settlement Class weeks before that class' claims were due to be tried in this Court in July 2007.  *See* Memorandum of Understanding dated June 25, 2007 at Exhibit "A" hereto (filed of record in this Court at Docket No. 5595-3).  As the MOU clearly states, "it constitutes a binding agreement between Bristol-Meyers Squibb Company ("BMS") and the Plaintiff class 1" as defined in this case.  The MOU contained all the necessary material terms to constitute a valid and binding settlement agreement including, but not limited to, the amount of settlement and the terms of the release.  While the parties contemplated that they "will promptly negotiate and execute a formal settlement agreement and the related documentation necessary to seek and obtain both preliminary and final approval by the Court of their settlement", it was made explicitly clear that, "[n]evertheless, this MOU shall be binding as of the date below and shall not be contingent upon such future negotiation or execution.  Similarly, the binding nature of this MOU shall not be affected by decisions or developments in the AWP MDL after the date below [June 25, 2007]."  Significantly, the parties contemplated that "[a]ny disputes concerning the terms and conditions of the formal settlement agreement and the related documentation shall be resolved through mediation before the court-appointed mediator, Eric Green."

---

[1] *See* Final Order and Judgment Granting Final Approval to Proposed Class Action Settlement with the GlaxoSmithKline Defendants, approving proposed allocation of settlement funds, and approving class counsel's application for attorneys fees, reimbursement of litigation expenses and compensation to class representatives, at Docket No. 4619.

To make it abundantly clear that the MOU was a final and binding settlement agreement, the last provision of the MOU provided as follows:

> The undersigned corporate representative of BMS represents and warrants that she has the authority on behalf of BMS and the other members of the BMS Group to enter into this MOU and to bind the corporation thereto. The undersigned counsel for the Nationwide Medicare Consumer Settlement Class represents and warrants that he has authority as court-appointed "lead counsel" for Class 1 in the AWP MDL to enter into this MOU and to bind the Class thereto.

*See* Exhibit "A". After the MOU was executed on June 25, 2007, class counsel filed a Motion to Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement. *See* Docket No. 5517. The Memorandum in Support of the filing pointed out that, while class counsel and BMS signed an MOU to settle the Class 1 claims in their entirety, they "have been unable to craft a final settlement agreement because BMS believes that it has a right to guide the distribution of the settlement monies and in such a manner as to create a reversion to BMS' benefit." *See* Docket No. 5518. The Memorandum in Support then took the position that "the MOU did not provide BMS with any right to veto class counsel's distribution plan and left that right to class counsel's sole discretion. Moreover, the MOU did not provide BMS with any right to have unclaimed Class 1 monies to go to satisfy BMS's obligations to Classes II and III." *Id*. The Memorandum in Support asked the Court to "rule accordingly" because "[u]ntil the Court resolves this impasse, the parties cannot finalize a settlement agreement, complete drafts of the proposed class notices and seek the court's preliminary approval of the BMS Class 1 settlement."*Id.*

In a separate filing, one of the court-appointed plaintiffs' co-lead counsel filed a declaration which attested to the fact that counsel was "personally involved in the lengthy

negotiations with BMS leading up to the execution of the Memorandum of Understanding ("MOU") said only in the class I claims against BMS." *See* Declaration of Steve W. Berman in Support of Class Counsel's Motion to Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement at Docket No. 5519.  Mr. Berman also represented that he was "personally involved in subsequent negotiations with BMS regarding classes II and III." *Id.* at paragraph 2.  Mr. Berman affirmatively represented that, based on his personal knowledge of the settlement negotiations with BMS, "the MOU does not grant BMS any rights to guide the proposed distribution of the settlement amount to Class 1.  This is because it was made clear during the mediation that class counsel would themselves develop and propose to the Court a distribution model, and that BMS would have no right to veto it."  Mr. Berman also represented that "class counsel [never agreed] that any monies left over after all Class 1 claims were processed could be set aside for the benefit of Classes II and III.  Indeed, not only did BMS fail to bargain for this, BMS had the opportunity to settle the Class II and III claims during the mediation leading up to the Class 1 proposed settlement that expressly declined to settle those claims.  BMS chose to settle only Class 1 for $13 million and there was no settlement of Classes II and III despite final proposals being exchanged with respect to those two classes at the end of the mediation."  *Id* at ¶6.

     Consequently, both the MOU and class counsel's affirmative representations made clear that the $13 million bargained for as part of the settlement of the Class 1 consumer claims was entirely Class 1 consumer money which could not, under any circumstances, be utilized to pay the claims of Classes II and III (respecting third-party payors).

In response to BMS' Opposition to class counsel's Motion, class counsel filed a Reply Memorandum which accused BMS of having "buyer's remorse" insofar as it "entered a deal that it now does not like, thinking it overpaid." *See* Docket No. 5606 at 1. In their curt response, class counsel advised this Court "[t]ough luck  A deal is a deal, and the Court should enforce the MOU and preliminarily approve class counsel's proposed distribution plan.  Once it does so, class counsel will then file a motion for preliminary approval, including proposed forms of notice, and the members of class I will be closer to receiving the relief to which they are entitled". *Id*.  Class counsel explained their rationale for their hard-lined position as follows:

> In an uncertain environment, the parties were called upon to decide whether to settle or to go to trial.  They chose to settle.  The bottom line is that BMS, facing a Class 1 trial just a month away from when it executed the MOU, signed on to the best deal that BMS believed it could garner at the time.  That it now believes it made a bad bargain is immaterial.  BMS must pay the full $13 million to which it agreed to pay for the benefit of Class 1.

*Id*. at p. 6.  Class counsel further remarked that "[a] bargain cannot be amended based on subsequent events that did not turn out as hoped for or predicted, absent an express reservation for such contingency in the agreement (which BMS did not seek or obtain)."  In support of this proposition, class counsel cited to this Court the case of *Morales v. Hosp. Hermanos Melendez, Inc.*, 447 F. Supp. 2d. 2d 137, 143-44 (D. P. R. 2006), upholding a settlement agreement over a settling defendant's objections.  *Id*.

Class counsel also rebuffed BMS' charge that they had "some sort of a conflict in seeking to maximize recovery for Class 1", as follows:

> This is silly; no conflict can be found in class counsel's aggressive negotiation to maximize the payout to Class 1.  Class counsel drove a hard bargain in obtaining BMS' capitulation to put up $13 million for Class 1.  BMS cannot conjure a non-existent conflict now by insisting that some of the $13 million go towards a future

5

     judgment or settlement in favor of Classes II and III.

*Id.*

  Again, class counsel's filing was supported by a Declaration of Steve Berman which rebuffed BMS' claim that there was a "'mutual mistake' in arriving at the $13 million that BMS agreed to pay to settle the Class 1 claims, and <u>only</u> the Class 1 claims. Docket 5607 at ¶4.

  In an Electronic Order dated September 29, 2008, this Court ruled on the motion to preliminarily approve the proposed plan of distribution for the BMS Class 1 settlement as follows:

> A plain reading of the MOU demonstrates that BMS does not have the right to 'veto' class counsel's proposed distribution plan. However, BMS raises several interesting questions about the fairness of the plan. Plaintiff shall move for a preliminary approval of the plan, and the Court will hold a hearing where the issues will be vetted. The Court will decide on the appropriate distribution plan.

*See* Order dated September 29, 2008 at Exhibit "B" hereto.

  Class Counsel did not move to preliminarily approve the settlement codified in the MOU, as ordered. Instead, the parties went back to the mediator and negotiated an entirely new settlement which now included the claims of Classes 2 and 3. *See* Docket No. 6349 at pp. 1-2. While this new settlement yielded an overall settlement amount of $19 million, as a result of an allocation negotiation between consumers (represented by the Prescription Action Litigation Project ("PAL") and TPPs (represented by counsel for Independent Settling Health Plans ("ISHPs")) in other settlements approved by this Court), consumers were allocated only 33% of the net settlement proceeds (net of fees and costs), yielding an aggregate settlement figure of only $4,370,000.00 for all consumers in Classes 1 and 3. This reduction of $8,630,000.00 in the amount promised to Class 1 consumers by the binding MOU is patently unfair, unreasonable and

inadequate and is the reason for the instant Motion.

**II.     Argument**

The First Circuit has long endorsed a prudential policy favoring settlement as a preferred alternative to costly, time consuming litigation. *Mathewson Corp. v. Allied Marine Industries*, Inc., 827 F.2d 850, 852 (1st Cir. 1987); *Bistany v. PNC Bank, NA.* 585 F.Supp 2d 179, 182 (D. Mass 2008)("Policy favors enforcement of settlement agreements so as to hold people to the contracts they make and to avoid costly and time consuming litigation." ; *T & T Mfg. Co. v. A.T. Cross Co.*, 587 F.2d 533, 538 (1st Cir. 1978). The Court has characterized settlements negotiated, as here[2], "under the eyes of the court [as] a most solemn undertaking . . ." *Id* (quoting *Warner v. Rossognol*, 513 F.2d 678, 682 (1st Cir. 1975).

In terms of enforcing a settlement, a district court possesses the authority to insure due compliance with such a pact. *Id.* (*citing Dankese v. Defense Logistics Agency,* 693 F.2d 13, 16 (1st Cir. 1982)(district court "retains an inherent power to supervise and enforce settlement agreements entered into by parties); *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 853 (1st Cir. 1987(explaining the court's authority to discern whether a settlement had been reached and, if so, to enforce it). Indeed, "[w]here the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might have been had the parties chosen to litigate". *Id* (*quoting Terrain Enterprises, Inc., v. Western Casualty and Surety Co.,* 774 F.2d 13120, 1321 (5th Cir. 1985), *cert denied*, 475 U.S. 1121 (1986)). "Accordingly, when parties voluntarily enter into a settlement agreement, it cannot be

---

[2] The MOU was negotiated under the direct supervision of the court-appointed Mediator, Eric Green.

repudiated by either party, and the court will summarily enforce that agreement. The court's inherent power of enforcement, however, is limited to cases pending before it." *Flebotte v. Dow Jones & Co., Inc.* 2001 WL 35988082 at * 2 ( (D. Mass.2001) (*quoting Petition of Mal de Mer Fisheries, Inc.*, 884 F.Supp. 635, 637 (D. Mass.1995)).

To be enforceable, the trial court "must conclude that agreement has been reached on all material terms." *Flebotte v. Dow Jones & Co., Inc.* 2001 WL 35988082 at *3 (D.Mass. 2001)(*citing Therma-scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir.2000). Therefore, where there exists a genuine question of material fact regarding the existence or terms of the agreement, the Court may not summarily enforce the agreement, but instead "must take evidence to resolve the contested issues of fact." *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir.2001); *Fidelity and Guaranty Ins. Co. v. Star Equipment Corp.*, 541 F.3d 1, 5, (1st Cir. 2008). Because settlement agreements enjoy great favor with the courts, however, "it is only in the most extraordinary circumstances that such a pact will be vacated." *Flebotte v. Dow Jones & Co., Inc.* 2001 WL 35988082 at *3 (D.Mass. 2001)(*quoting McDermitt, Inc. v. Centex-Simpson Constr. Co.*, 34 F.Supp.2d 397, 399 (N.D.W.Va.1999).

In this case, the MOU contains all the material terms of a binding settlement of the Class 1 consumer claims for $13 million. Class Counsel have reportedly attested to this fact and, on motion of Class Counsel, the Court so ruled. *See* Exhibit "B" hereto.

A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. If, at the time of the claimed breach, the court case already has been dismissed, the aggrieved party may bring an independent action for breach of contract. *Malave v. Carney Hosp.* 170 F.3d 217, 219 -220 (1st Cir.1999)(*citing Kokkonen v. Guardian Life Ins. Co.*,

511 U.S. 375, 381-82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). If, however, the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement. *Id* (*citing United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir.1993) ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.") (citations omitted); *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 852-53 (1st Cir.1987).

Here, the court-appointed named consumer class representative Reverend David Aaronson, seeks to enforce the $13 million settlement against BMS (and Class Counsel, if need be).

A settlement memorandum of understanding is enforceable as a settlement agreement. *See, e.g., Fidelity and Guaranty Insurance Co., v. Star Equipment Corp.*, 541 F.3d 1 (1st Cir. 2008). In the *Fidelity* case, the parties had entered mediation regarding a dispute respecting a construction contract and emerged with a Settlement Memorandum of Understanding, signed by all of the parties. *Id.* at 2. As part of the settlement, Star Equipment was required to obtain "approval by municipal authorities" and "execution of customary releases and settlement agreement". *Id.* at 4. Star Equipment thereafter obtained the required approvals and had prepared the releases, but a party indemnitor asserted that no settlement agreement had been reached and refused to sign the releases. *Id*. On motion, this Court enforced the Settlement Memorandum of Understanding as a settlement agreement. *Id*. On appeal, the First Circuit upheld enforcement of the Memorandum of Understanding stating that "the [indemnitor's] subjective belief that the agreement was not 'final' does not bar enforcement in the face of their assent-in writing-to the memorandum's unambiguous terms". *Id* at 6.

By way of further example, in *In re Fernald Litigation*, the parties conducted, with the assistance of the court, a class settlement of $73,000,000.00 as the total amount of the class settlement, which was to be memorialized by a written document. *In re Fernald Litigation,* 1989 WL 267039 At * 2 (S.D. Ohio 1989). The settlement was memorialized in a Memorandum of Understanding executed on behalf of class plaintiffs by class counsel as well as counsel for the defendants. *Id*. The parties had intended to execute a formal settlement agreement and to file that agreement with the court. *Id*. However, the parties were unable to do so, despite the assistance of the Magistrate assigned to the case. *Id*. The Magistrate thereafter concluded that the Memorandum of Understanding embraced all of the elements of the contract and was enforceable in itself. *Id*. The Memorandum of Understanding was thereafter made available to the class for review in place of the final document contemplated by the Memorandum and the notice to the Class was sent. *Id*. At the fairness hearing, the court found the proposed settlement, as detailed in the Memorandum of Understanding, to be fair, adequate and a reasonable settlement of the plaintiff's claims and ordered consummation of the settlement according to the terms of the Memorandum of understanding. *Id* at * 10.

Here, court-ordered mediation resulted in a Class 1 consumer class settlement of $13 million for the benefit of Class 1 consumers, like Reverend Aaronson <u>only</u>. The settlement was codified in a MOU dated June 25, 2007. *See* Exhibit "A". When BMS tried to renege on the MOU, Class Counsel moved to enforce the settlement agreement, and this Court agreed, ordering class counsel to file a motion for preliminary approval of <u>that settlement</u>. Class counsel failed to do so; instead, they chose to go back to the bargaining table with BMS, but on behalf of Classes 2 and 3. As a result, Class 1 consumers have lost over $8.5 million in settlement proceeds under the

proposed new settlement. Such a reduction is patently unfair, unreasonable and inadequate to Class 1 consumers, like Reverend Aaronson. Accordingly, Reverend Aaronson seeks enforcement of the final, signed, and binding MOU to ensure that he receives the full measure of the relief sought and achieved in this case.

### III. Conclusion

For the foregoing reasons, Reverend David Aaronson respectfully requests that the Court grant the Motion to Enforce Settlement with BMS.

Dated: February 16, 2010          By:     /s/ Donald E. Haviland, Jr.
                                          Donald E. Haviland, Jr., Esquire
                                          **HAVILAND HUGHES, LLC**
                                          111 S. Independence Mall East
                                          The Bourse, Suite 1000
                                          Philadelphia, PA 19106
                                          Telephone: (215) 609-4661
                                          Facsimile:  (215) 392-4400

                                          Counsel for Reverend David Aaronson

**CERTIFICATE OF SERVICE**

    I, Donald E. Haviland, Jr., Esquire, hereby certify that on February 16, 2010, I filed the Memorandum in Support of Motion to Enforce Settlement with BMS with the Clerk of this Court and used the CM/ECF system to send notification of such filing to all registered person(s).

                                                                                    /s/ Donald E. Haviland, Jr.

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") constitutes a binding agreement between Bristol-Myers Squibb Company ("BMS") and plaintiff Class 1 as defined in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, C.A. 01-CV-12257-PBS (the "AWP MDL"). For settlement purposes only, Class 1 shall be expanded to include individuals consumers on a nationwide basis and any such person who was co-insured under Medicare Part B with a Medigap insurer, employer- or union-sponsored health plan, or any other third-party payer for any portion of a payment for one or more of the BMS drugs at issue (the "Nationwide Medicare Consumer Settlement Class"). This MOU settles all claims of the Nationwide Medicare Consumer Settlement Class of the nature alleged or that could have been alleged in the AWP MDL against defendants BMS, Oncology Therapeutics Network Corporation and Apothecon, Inc., said defendants being referred to herein collectively as the "BMS Group." (The BMS Group and the Nationwide Medicare Consumer Settlement Class are referred to herein as the "Parties").

BMS, on behalf of the BMS Group, shall pay thirteen million dollars ($13,000,000.00) in settlement of the claims of the Nationwide Medicare Consumer Settlement Class, inclusive of any and all attorneys' fees and other fees, disbursements or costs that the Nationwide Medicare Consumer Settlement incurred or that the Court may award the Class and its counsel, except that BMS shall also pay for one-half of the cost of the notice to the Class of the settlement up to a maximum payment of one million dollars ($1,000,000.00). The Nationwide Medicare Consumer Settlement Class shall provide releases of the BMS Group and shall dismiss the Class members' claims against the BMS Group with prejudice.

The Parties contemplate that they will promptly negotiate and execute a formal settlement agreement and the related documentation necessary to seek and obtain both preliminary and final approval by the Court of their settlement. Nevertheless, this MOU shall be binding as of the date below and shall not be contingent upon such future negotiation or execution. Similarly, the binding nature of this MOU shall not be affected by decisions or developments in the AWP MDL after the date below.

The Parties' counsel are familiar with the terms and conditions used in settlement agreements and documents in related cases in the AWP MDL and shall use those agreements and documents as guides. Any disputes concerning the terms and conditions of the formal settlement agreement and related documentation shall be resolved through mediation before the court-appointed mediator, Eric Green.

The undersigned corporate representative of BMS represents and warrants that she has authority on behalf of BMS and the other members of the BMS Group to enter into this MOU and to bind the corporation thereto. The undersigned counsel for the Nationwide Medicare Consumer Settlement Class represents and warrants that he has authority as court-appointed "lead counsel" for Class 1 in the AWP MDL to enter into this MOU and to bind the Class thereto.

Dated: June 25, 2007

ON BEHALF OF THE NATIONWIDE MEDICARE CONSUMER SETTLMENT CLASS

_____
Sean Matt, Lead Counsel

ON BEHALF OF BMS GROUP

_____
Zenola Harper, Senior Counsel

**From:** ECFnotice@mad.uscourts.gov
**Sent:** Monday, September 29, 2008 2:45 PM
**To:** CourtCopy@mad.uscourts.gov
**Subject:** Activity in Case 1:01-cv-12257-PBS Citizens for Consume, et al v. Abbott Laboratories,, et al Order on Motion for Order

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

United States District Court

District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 9/29/2008 at 2:44 PM EDT and filed on 9/29/2008
**Case Name:**       Citizens for Consume, et al v. Abbott Laboratories,, et al
**Case Number:**     1:01-cv-12257
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**Judge Patti B. Saris: Electronic ORDER entered re [5517] Motion to Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement. "A plain reading of the MOV demonstrates that BMS does not have the right to "veto" class counsel's proposed distribution plan. However, BMS raises several interesting questions about the fairness of the plan. Plaintiffs shall move for a preliminary approval of the plan, and the Court will hold a hearing where the issues will be vetted. The Court will decide on the appropriate distribution plan." (Patch, Christine)**

**1:01-cv-12257 Notice has been electronically mailed to:**

Louis J. Scerra, Jr  scerral@gtlaw.com, koglins@gtlaw.com, maximn@gtlaw.com

Fred A. Kelly, Jr  fkelly@nixonpeabody.com, mrichman@nixonpeabody.com

Robert J. Muldoon, Jr  rjmuldoon@sherin.com

Scott A. Birnbaum  birnbaum@birnbaumgodkin.com, mcduffee@birnbaumgodkin.com

Thomas E. Dwyer, Jr  tdwyer@dwyercollora.com

Michael DeMarco  michael.demarco@klgates.com, suzan.leblanc@klgates.com

Ralph T. Lepore, III  rlepore@hklaw.com

Frank A. Libby, Jr  falibby@libbyhoopes.com