UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) MDL No. 1456 ) ) Master Case No. 01-12257-PBS ) Subcategory No. 06-11337-PBS |
| THIS DOCUMENT RELATES TO: | ) ) ) Judge Patti B. Saris |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al.,* Civil Action No. 07-10248-PBS | ) ) ) ) |

**UNITED STATES' OPPOSITION TO BIC AND BIPI'S MOTION TO BIFURCATE THE CORPORATE VEIL-PIERCING ISSUES FOR TRIAL**

Defendants' motion to "bifurcate" the "corporate veil-piercing issues" for trial should be denied. The evidence that BIC and BIPI participated in setting inflated AWPs for the drugs at issue is part and parcel of the evidence that Roxane's corporate veil should be pierced. BIPI and Roxane were operated as part of a single business unit, with overlapping employees and shared management. Proof that Roxane employees reported to their BIPI counterparts and that National Account Managers promoted both companies' products is equally relevant to the direct liability and veil-piercing issues. It would waste time and judicial resources to hear this evidence twice.

Defendants' other stated reason for bifurcation – that evidence of the falsity of Roxane's prices and the amount of damages defendants caused would prejudice the jury's consideration of the veil-piercing issues – is also ill-founded. In the First Circuit, the standard for when to pierce the corporate veil includes consideration of such equitable interests as the public convenience, fairness and equity, as well as the degree of injustice to be visited on litigants if the corporate

form were recognized. Evaluation of these considerations cannot be made in a vacuum, and the United States therefore is *entitled* to have the jury consider whether to pierce Roxane's corporate veil in the context of evidence of defendants' fraudulent conduct and the scale of damages defendants caused.

## BACKGROUND

BIC is a holding company and the sole shareholder of Roxane, BIPI, and several other affiliated Boehringer Ingelheim entities in the United States. Boehringer Ingelheim documents describe BIC as having "limited corporate functions," and identify BIPI as the "primary operating company" for Boehringer Ingelheim's United States operations.[1]

Beginning in at least 1994, Boehringer Ingelheim managed the Roxane and BIPI business as part of a common "Business Unit." In order to create a unified management for the Business Unit, several Roxane employees including Ed Tupa (Vice President, Sales and Marketing) and Fred Duy (Vice President, Business Planning and Development) reported "functionally" to Sheldon Berkle, who was employed by BIPI and head of the Business Unit. Roxane and BIPI shared many core business functions, including a common contracts department, a common "Trade Relations" department responsible for calling on wholesalers and other important customers, and a unified pricing process for BIPI and certain Roxane products.

Several Roxane employees in sales and marketing reported to their BIPI counterparts. For example, Gregg Ciarelli was employed by BIPI but served as "Marketing Controller" for the

---

[1] The United States refers to its summary judgment papers for a more complete description of the relationships among BIC, BIPI and Roxane. *See* Master Dkt. Nos. 6410, 6411 and 6575. In addition, defendants' motion makes various functional and legal misstatements (such as the claim that the United States' direct liability claims are newly minted). These misstatements are addressed in the United States' summary judgment papers.

2

entire Business Unit and oversaw various Roxane employees.  Likewise, Jim King, Mike Leonetti, and James Rowenhorst were BIPI employees, but supervised Roxane's branded generic sales force and the Business Unit's Trade Relations Department.  Such employees occupied important positions in Roxane's management structure, and directly approved or endorsed Roxane's pricing and marketing strategies.

During the course of this investigation, Roxane's value as a company has been dramatically diminished.  In each year from 1996 through 2001, Roxane's retained earnings significantly exceeded its total liabilities and, at year-end 2001, Roxane enjoyed retained earnings of over $350 million (compared to total liabilities of $203 million).  Following payment of an "unbudgeted" $320 million dividend to BIC in November 2002, Roxane's retained earnings fell to just $46 million dollars, and its total liabilities swelled to over $300 million dollars.  Roxane's value as a company has never recovered and, in 2007 (the last year for which the United States has full financial records), Roxane's retained earnings were approximately $33 million.[2]

## ARGUMENT

Bifurcation of claims is the exception, not the rule.  *General Elec. Credit Union v. National Fire Ins. of Harford*, 2009 WL 3210348, *2 (S.D. Ohio. 2009); *see also Boutilier v. John Alden Life Ins. Co.*, 2000 WL 1752623, *4 (D. Mass. 2000) (noting that bifurcation is "certainly not encouraged").  The party moving for bifurcation bears the burden of demonstrating that considerations of judicial economy and possible prejudice weigh in favor of

---

[2] Compounding matters, Roxane Laboratories was split into two companies in 2005; a "new" Roxane Laboratories, responsible for sales and marketing, and Boehringer Ingelheim Roxane, a separate company responsible for manufacturing.

3

bifurcation. *Chapman ex rel Estate of Chapman v. Bernard's Inc.*, 167 F. Supp. 2d 406, 417 (D. Mass. 2001). Here, defendants cannot meet that burden.

**1.      Bifurcation of the veil-piercing claims will not promote judicial economy**

Under the federal common law, there is no precise litmus test for determining when the corporate form should be ignored. On the contrary, "the rule in federal cases is founded only on the broad principle that a corporate entity may be disregarded in the interests of public convenience, fairness and equity." *Brotherhood of Locomotive Eng'rs v. Springfield Terminal Ry Co.*, 210 F.3d 18, 25 (1st Cir. 2000) (internal citation and quotation omitted). Relevant factors include, among others, extensive control by shareholders, intermingling of business activities or management, and failure to observe corporate formalities and separateness. *See, e.g.*, *In re Acushnet River & New Bedford Harbor Proceedings*, 675 F. Supp. 22, 33 (D. Mass. 1987).

The evidence in this case establishes that numerous BIC and BIPI employees participated in Roxane's sales and marketing efforts, including the promotion of Roxane's products to its most important customers and decisions to set inflated AWPs for the Subject Drugs. Such evidence is relevant both to proving BIC and BIPI's liability under the False Claims Act *and* to proving that Roxane's corporate veil should be pierced. As noted, proof of extensive control by shareholders and a failure to observe "corporate separateness" are important factors in the veil-piercing analysis. A jury will have to consider the extent and nature of BIC and BIPI's involvement in Roxane's sales and marketing efforts in deciding whether to disregard Roxane's corporate form. This evidence implicates dozens of likely trial exhibits and the testimony of almost every defendant-employee the United States expects to call.

Bifurcation of the veil-piercing claims thus will require presentation of extensive evidence twice: first in the direct liability case and again in a proceeding to determine the corporate veil question. In such a circumstance, judicial economy counsels strongly against bifurcation. *See International Bhd. of Elec. Workers v. American Laundry Mach.*, 2010 WL 200396, * 3 (S.D. Ohio 2010) (denying motion to bifurcate veil-piercing claims because "many of the same witnesses and pieces of evidence would need to be presented if the claims were bifurcated"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d. 147, 152-53 (D. RI 2009).

**2.    Consolidation of the veil-piercing claims will not prejudice defendants**

Defendants also claim that bifurcation is necessary to prevent prejudice. In particular, defendants claim that evidence relating to the truth or falsity of the reported AWPs and the amount of damages caused is "immaterial" to the veil-piercing question and that the jury's consideration of such evidence will prejudice defendants. This is not the case.

Defendants' argument misconstrues the standard for piercing the corporate veil under federal law, which expressly incorporates equitable considerations such as "the degree of injustice that would be visited on the litigants by recognizing the corporate form" as well as considerations of public convenience, fairness, and equity. *See Crane v. Green & Freedman Baking Co., Inc.*, 134 F.3d 17, 23 (1st Cir. 1998); *Brotherhood of Locomotive Eng'rs*, 210 F.3d at 25.[3] To evaluate such considerations meaningfully, a jury must consider the corporate veil question in the context of the charged conduct and the extent of the damage defendants caused. Without such context, a jury cannot evaluate whether piercing the corporate form is fair or

---

[3]Roxane's proffered expert on "corporate governance" issues, Professor Jonathan Macey, testified that interests such as the public convenience and welfare are relevant to determining whether to pierce the corporate veil. *See* May 20, 2009 Deposition of Jonathan Macey, at 272:7-273:19, 274:12-276:21, 279:6-280:11 (excerpts attached hereto as Exhibit A).

equitable, let alone balance the "degree of injustice" caused by recognizing the corporate form.

Moreover, some risk of prejudice is not by itself a reason to order bifurcation. Any possible prejudice caused by the presentation of corporate veil evidence can be minimized through cautionary jury instructions. *See, e.g., Uniloc USA*, 632 F. Supp. 2d. at 152-53 (denying motion for bifurcation, noting that "the risk of distraction or prejudice to [defendant] from presentation of profit and other financial evidence can be minimized by instructions to the jury that damages must be considered apart from liability").

## **CONCLUSION**

For the foregoing reasons, defendants' motion to bifurcate the "veil piercing issue" should be denied.

DATED this 5th day of March, 2010.        Respectfully submitted,

TONY WEST
ASSISTANT ATTORNEY GENERAL

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:    /s/ James J. Fauci
GEORGE B. HENDERSON, II
BARBARA HEALY SMITH
JAMES J. FAUCI
Assistant U.S. Attorneys
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3272

JOYCE R. BRANDA
DANIEL R. ANDERSON
LAURIE A. OBEREMBT
Civil Division
Commercial Litigation Branch
P. O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 514-3345

        For the relator, Ven-A-Care of the Florida Keys, Inc.,

        JAMES J. BREEN
        The Breen Law Firm, P.A.
        Suite 260
        5755 North Point Parkway
        Alpharetta, Georgia 30022
        Phone: (770) 740-0008

        SUSAN S. THOMAS
        GARY L. AZORSKY
        ROSLYN G. POLLACK
        Berger & Montague, P.C.
        1622 Locust Street
        Philadelphia, PA 19103
        Phone: (215) 875-3000


## CERTIFICATE OF SERVICE

      I hereby certify that I have this day caused an electronic copy of the above "UNITED STATES' OPPOSITION TO BIC AND BIPI"S MOTION TO BIFURCATE THE CORPORATE VEIL-PIERCING ISSUES FOR TRIAL" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.


        /s/ James J. Fauci
        JAMES J. FAUCI
Dated: March 5th, 2010        Assistant U.S. Attorney