# Exhibit A

Page 259

```
-------------------------------------------x

UNITED STATES OF AMERICA, ex rel,

VEN-A-CARE, FLORIDA KEYS, INC.,

                    Plaintiffs,

                    Case No. 07-10248

        -against-

BOEHRINGER INGELHEIM CORPORATION,

et al.,

                    Defendants.

-------------------------------------------x


                    May 20, 2009

                    8:03 a.m.


              CONFIDENTIAL

     Continued deposition of JONATHAN R.
MACEY, taken at the offices of Kirkland & Ellis,
Citigroup Center, 153 East 53rd Street, New York,
New York, before Georgette K. Betts, a Certified
Shorthand Reporter, Registered Professional
Reporter and Notary Public within and for the
States of New York and New Jersey.
```

Macey, Jonathan R. - Vol. II CONFIDENTIAL                    May 20, 2009
                          New York, NY

Page 260

1                     A P P E A R A N C E S:

2

3   Attorneys for United States

4

5              U.S. DEPARTMENT OF JUSTICE

6              U.S. ATTORNEY'S OFFICE

7              John Joseph Moakley Federal

8              Courthouse

9              1 Courthouse Way

10             Suite 9200

11             Boston, Massachussettes 02210

12             BY:   JAMES J. FAUCI, ESQ.

13

14

15  Attorneys for Ven-A-Care

16

17             BERGER & MONTAGUE, P.C.

18             1622 Locust Street

19             Philadelphia, Pennsylvania 19103

20             BY:   SHAUNA ITRI, ESQ.

21                   ROSLYN G. POLLACK, ESQ.

22                   (via phone)

Macey, Jonathan R. - Vol. II CONFIDENTIAL                    May 20, 2009
                           New York, NY

Page 272

1  obviously.  My approach would have been I would
2  have been shocked to see somebody getting, you
3  know, one-third of their pay from this entity,
4  one-third of their pay from that entity, one-third
5  of the pay from another entity.  So I was looking
6  for those sources.
7       Q.   Did you consider any interests of
8  fairness or equity in forming your opinion that
9  Roxane's corporate veil should -- well, in forming
10 your opinions in this case?
11      A.   Certainly, yes.
12      Q.   What about interests of the public
13 convenience or welfare?
14      A.   Yes.
15      Q.   Are these concepts relevant to the
16 analysis of whether a court should pierce a
17 corporation's veil?
18      A.   Often they are.
19      Q.   How so?
20      A.   Now just to be clear, in that particular
21 question, just to make my answers as clear as I
22 can, I testified yesterday that at the level of

1   abstraction at which I'm talking there really
2   isn't a difference in the policies and rules of
3   disregarding the corporate form from state to
4   state.
5           Now you're asking me a more specific
6   question having to do with should fairness be
7   taken into account.  And that -- with respect to
8   that more specific question, I will represent to
9   you in answering your question that this is an
10  area in which there are differences.  That is to
11  say, some states require an element of unfairness,
12  most do, as a condition for disregarding the
13  corporate form.  Although there are a few states
14  where that requirement is not in place.
15          I do think that the trend is decidedly
16  in favor of imposing this -- these requirements
17  that you're describing.
18      Q.   How do these concepts enter the
19  analysis?
20      A.   Well --
21          MS. RIVERA:  Can I just object? I just
22  want to object.  You're asking him -- he testified

Macey, Jonathan R. - Vol. II CONFIDENTIAL                May 20, 2009
                        New York, NY

Page 274

1    yesterday he's not giving opinions on the law and
2    what the rules are for piercing the corporate
3    veil.  So are you asking him this outside the
4    context of the expert opinions he's here to
5    testify to in this case?
6              MR. FAUCI:  I'm going to ask Professor
7    Macey, you can just object to the record and if
8    Professor Macey wants clarification he'll ask for
9    it, I assume.
10             MS. RIVERA:  Well, I object.
11             MR. FAUCI:  That's fine.
12        Q.   The question, Professor Macey, is:
13             How do concepts of fairness and the
14   public welfare enter into the analysis of whether
15   or not a corporation's veil should be pierced?
16        A.   Okay.  Well, as I stated in my report,
17   there are strong efficiency reasons for limited
18   liability.  In fact, most economists do not
19   believe that it is possible to have a developed
20   economy that has reasonable levels of income for
21   people unless people are able to organize
22   businesses in the corporate form, and that means

1   limited liability.
2           So that means we have to -- we raise the
3   question under what circumstances should we ignore
4   the corporate form and notwithstanding the proper,
5   you know, incorporation of a firm, we would
6   disregard the corporate form.  And as we -- as I
7   talked about in chapter two -- I'm sorry,
8   paragraph two of my report, I'd say the --
9   piercing the corporate veil should only be done in
10  rare and unusual circumstances.  Generally the way
11  this is organized is a matter of implementing
12  policy is to say, well, we need a whole lot of bad
13  stuff.  Like we need, you know, disregarding
14  corporate form, we need under capitalization, we
15  need fraud, we need all sorts of, you know, these
16  kind of various factor tests.  And then the courts
17  say even where we have that, we will still not
18  disregard the corporate form unless the problems
19  that the various factors that might otherwise go
20  into a decision to disregard the corporate form
21  are combined with elements of unjustness or
22  elements of unfairness.

Macey, Jonathan R. - Vol. II CONFIDENTIAL                    May 20, 2009
New York, NY

Page 276

1   So the way that this plays out as a
2   policy matter, people say -- and essentially the
3   economics is pretty clear, which is, well, you
4   know, suppose a company never has board meetings
5   or suppose a company doesn't have a board, or
6   suppose a company does all sorts of things that
7   are inconsistent with corporate separateness.
8   There's really no harm in that necessarily that
9   would cause anyone damages.  And so the thinking
10  is -- in many cases, so the idea is in order to
11  have that necessary element for culpability for
12  liability, the notion is, well, we're going to
13  have the sort of legal -- once you go through your
14  legal checklist, if you will, to identify the
15  policies associated with -- and practices
16  associated with generating a decision to disregard
17  the corporate form, once that is done, if
18  everything's okay the analysis stops.  But if
19  there's still questions that remain, then you move
20  to the second step about, you know, are there
21  elements of unjustness or unfairness.
22       Q.   Did you agree with the general

Page 279

1   analysis moves to issues of unjustice and
2   unfairness only if certain other factors necessary
3   to pierce the corporate veil have been satisfied;
4   is that correct?
5        A.   Correct.
6        Q.   Did you -- in forming your opinions in
7   this case, did you consider issues of unjustness,
8   inequity, public convenience, and welfare?
9        A.   Yes.
10       Q.   How did those inform -- how did those
11  issues inform your opinions in this case?
12       A.   Well, the kind of standard analysis is
13  that, you know, I look at the formation of the
14  corporation, the reason for the formation of the
15  corporation, did it conduct legitimate business --
16  businesses, did it serve a valid purpose, was
17  there a, you know, was the basic -- was it a
18  criminal enterprise, what -- you know, assuming
19  that we think that kind of what -- I started with
20  the assumption, frankly, that the pharmaceutical
21  industry was -- that it's okay to be in the
22  pharmaceutical industry, that the basic thing that

Macey, Jonathan R. - Vol. II CONFIDENTIAL                           May 20, 2009
                          New York, NY

Page 280

1  they were doing in this case, which is
2  manufacturing, selling medicines and
3  pharmaceuticals, was a legitimate business.  And
4  so I reached the conclusion that this company had
5  been organized for a legitimate business and was
6  pursuing those business ends in a legal and an
7  appropriate way.
8      Q.   Did you consider the scale of the
9  claimed damages by the United States?
10     A.   I certainly -- yes, I considered the
11 government's claims certainly.
12     Q.   Do you know what damages -- what the
13 amount of damages that have been calculated by the
14 United States' damages expert?
15     A.   I haven't seen the government's damage
16 expert report, but I have in my head that it's a
17 very large -- let's...
18     Q.   It's admittedly a complicated question.
19     A.   You know, I've heard the number in sort
20 of nine -- eight or nine digit range.
21     Q.   Did you make any evaluation as to
22 whether or not Roxane's marketing and sales