# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | MDL NO. 1456 <br><br> C.A. No. 01-12257-PBS <br><br> Judge Patti B. Saris |

### OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR LEAVE OF COURT TO RESPOND TO MOTION TO ENFORCE SETTLEMENT WITH BMS AT THE TIME SET FOR RESPONSE TO ALL OTHER OBJECTIONS TO THE BMS SETTLEMENT

After engaging in what the undersigned thought were fruitful telephone discussions with Mr. Notargiocomo – Class Counsel's designee – on the matter of whether Reverend Aaronson's Motion to Enforce Settlement should be decided now or deferred until the Final Approval hearing this summer on an unrelated proposed settlement, Class Counsel chose to not get back to Rev. Aarsonson's counsel with their views, as promised.[1] Instead, they seek leave of Court to extend the time to respond until July 16, 2010 – more than 4 months from now. Class Counsel's only stated reason for the extension is their misbelief that Rev. Aaronson's Motion to Enforce Settlement is really "an objection to the Court's approval of the BMS Settlement", though they

---

[1] Mr. Notargiocomo called Mr. Haviland late Friday, February 19, 2010, the day after a status conference was apparently held to discuss the BMS settlement. [By previous Order of the Court, it was believed the conference had been cancelled which is the reason counsel for Rev. Aaronson did not appear.] He indicated that the Court directed the parties to discuss the appropriate timing for the resolution of the Motion to Enforce with a view to garnering consensus. Mr. Notargiocomo explained Class Counsel's position (that the Motion should be decided as part of the Fairness Hearing) and Rev. Aaronson's counsel explain his reasons for not wanting to wait – as set forth herein. The parties agreed to speak again. The following week, Rev. Aaronson's counsel raised the issue of notice and notice costs, and ask Mr. Notargiocomo to have Class Counsel consider the negative impact of potentially duplicative notice costs on the overall Class settlement. He never responded to this request.

concede it is "not styled as such." Motion at 2. It is noteworthy that BMS has taken no position on either Motion to date.

Reverend Aaronson – as the lone court-appointed Class 1 consumer class representative – has raised a serious issue: why should the Medicare patients in Class 1 not get the benefit of their $13 million bargain obtained from BMS on the eve of their Class 1 consumer trial in July 2007? This issue is a purely legal question involving the enforceability of the Memorandum of Understanding ("MOU") signed by Class Counsel and a duly authorized representative of BMS is binding on BMS. One would think Class Counsel, the court-appointed representatives of Class 1 consumers would *support* Rev. Aaronson's views that the cancer patients in Class 1 should be paid now, without delay, the full value of the settlement achieved on their behalf.[2] Instead, Class Counsel seek to delay the resolution of this important issue, for no other reason than they wrongly claim it is merely an objection to a subsequent settlement achieved for Classes 2 and 3. It is not an objection to this separate settlement: it is a Motion to Enforce the July 2007 settlement, and there is no good reason to delay its determination.

First, resolving the Motion to Enforce Settlement now achieves the certainty and expediency that Class Counsel previously sought and achieved from this Court with respect to the MOU. *See* Motion to Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement [Dkt No. 5517]. As the MOU clearly states, "it constitutes a binding agreement between Bristol-Meyers Squibb Company ("BMS") and the Plaintiff class 1".

---

[2] As detailed in the Motion to Enforce Settlement, Class Counsel previously advocated against BMS that the MOU was enforceable, and this Court agreed. Rev. Aaronson's Motion simply seeks to have the law of this case applied, and the money paid to Class 1 consumers forthwith and without further delay.

Second, resolving the Motion to Enforce Settlement now is critically important both to ensure that the Notice that is distributed to the Class properly contains an accurate description of the settlement's general terms, and also to prevent the possibility that a second round of costly notice will be needed - the cost of which would be bourne by the Class. *See Greenspun v. Bogan,* 492 F.2d 375, 382 (C.A.Mass. 1974) ("the essential purpose of the notice, [is] to fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . .."). Class Counsel's suggestion that the "most efficient use of the parties and the Court's resources is to engage in a single round of briefing relating to all objections to the BMS Settlement", Motion at 2, could not be further from the truth. Rather, the most efficient and logical use of the parties' and the Court's resources is for this Court to resolve the Motion to Enforce prior to the class settlement notice being disseminated so that the individual Class 1 consumers may be adequately informed of the *actual* consideration provided for the release of their claims and thereafter make an informed decision with respect to their rights to either accept the settlement, object to it, or opt-out of the settlement class. Whether the Class 1 consumers will receive $13,000,000, from this Court's enforcement of the MOU, or $4,370,000, pursuant to the new all-in settlement, is a question that could have a considerable impact on that decision.

By treating Reverend Aaronson's Motion to Enforce as an objection to the BMS Settlement - which it is not - the parties and this Court run the risk of wasting considerable resources should this Court ultimately agree that the MOU is binding on BMS. By explanation, if this Court ultimately decides that the MOU is binding, but only addresses it at the Fairness Hearing, then the Court would be forced to reject the Settlement as proposed. Thereafter, regardless of what BMS and Class Counsel choose to do with respect to Classes 2 and 3, at least a

3

second round of notice would have to be sent to the Class 1 consumers informing them of the terms of the settlement as provided in the MOU, namely a $13,000,000 fund exclusively for their benefit, and apprising them of their rights under *that* settlement. The terms of the proposed settlement provide that "BMS will pay one-half of the costs of notice up to a maximum of $1,000,000." Settlement Agreement at 4. Therefore, since at least one-half of the notice cost will be bourne out of the Settlement Fund (likely more since the notice cost will likely exceed $2,000,000), this Court should be wary of agreeing to defer the important issue of the *actual* amount of consideration afforded Class 1 and risk further notice costs being taken from the settlement fund.

Third, Reverend Aaronson would have expected Class Counsel to support his belief that the issue should be resolved sooner rather than later consistent with their view of the need to expedite such considerations in view of the sick and dying class members that comprise Class 1. *See e.g.,* Class Plaintiffs' Opposition to Don Haviland's Motion to Stay Distribution of AstraZeneca Fee Award and for Court Review of Lead Counsel's Allocation of Fees and Reimbursement of Costs at 1, Dkt. No. 6820. ( "…Haviland's frivolous appeal of that settlement effectively stayed the distribution of the fee award, just as Haviland's frivolous appeal has precluded distribution of settlement monies to sick and dying class members and to his own clients."); Brief for Plaintiff-Appellee Leroy Townsend at 18, filed in US Court of Appeals for the First Circuit, Appeal No. 09-1196 ("Unfortunately, Mr. Haviland's desire to further his own interests at the expense of the Class remains unabated, and he continues to delay the distribution of badly needed relief to aging and/or dying Medicare beneficiaries and their families, many of whom have been awaiting redress for over eight years.")

4

For the foregoing reasons, Reverend Aaronson respectfully requests that this honorable Court deny the Motion for Leave to continue the resolution of the Motion to Enforce Settlement and proceed to resolve the same presently.

                                              Respectfully submitted,

Dated: March 5, 2010                 By: /s/ Donald E. Haviland, Jr.
                                              Donald E. Haviland, Jr., Esquire
                                              Michael J. Lorusso, Esquire
                                              **HAVILAND HUGHES, LLC**
                                              111 S. Independence Mall East
                                              The Bourse, Suite 1000
                                              Philadelphia, PA 19106
                                              Telephone: (215) 609-4661
                                              Facsimile: (215) 392-4400

                                              Counsel for Reverend David Aaronson

**CERTIFICATE OF SERVICE**

      I, Donald E. Haviland, Jr., Esquire, hereby certify that on March 5, 2010, I filed the Opposition to Class Plaintiffs' Motion for Leave of Court to Respond to Motion to Enforce Settlement with BMS at the Time Set for Response to all Other Objections to the BMS Settlement with the Clerk of this Court and used the CM/ECF system to send notification of such filing to all registered person(s).

                                                    /s/ Donald E. Haviland, Jr.