```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS


   IN RE:                              )
                                       )   CA No. 01-12257-PBS
   PHARMACEUTICAL INDUSTRY AVERAGE     )
   WHOLESALE PRICE LITIGATION          )   Pages 1 - 11
                                       )




                       STATUS CONFERENCE

             BEFORE THE HONORABLE PATTI B. SARIS
                UNITED STATES DISTRICT JUDGE





                       United States District Court
                       1 Courthouse Way, Courtroom 19
                       Boston, Massachusetts
                       February 18, 2010, 9:45 a.m.







                     LEE A. MARZILLI
                  OFFICIAL COURT REPORTER
               United States District Court
               1 Courthouse Way, Room 7200
                    Boston, MA  02210
                      (617)345-6787
```

077919d5-1d73-46ee-97f3-bcb2fcf9c710

1  A P P E A R A N C E S:

2

3       EDWARD NOTARGIACOMO, ESQ., Hagens Berman Sobol Shapiro,
   LLP, One Main Street, Cambridge, Massachusetts, 02142,
   for the Class Plaintiffs.
4
        LYNDON M. TRETTER, ESQ., (By Telephone), Hogan & Hartson,
5  LLP, 875 Third Avenue, Suite 2600, New York, New York, 10012,
   for Bristol-Myers Squibb Company.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      P R O C E E D I N G S

2           THE CLERK:  In Re:  Pharmaceutical Industry Average

3   Wholesale Price Litigation, Civil Action 02-12257, will now be

4   heard before this Court.  Will counsel please identify

5   themselves for the record.

6           MR. NOTARGIACOMO:  Good morning, your Honor.  Ed

7   Notargiacomo from Hagens Berman Sobol Shapiro for the

8   plaintiffs.

9           MR. TRETTER:  And Lyndon Tretter from Hogan & Hartson

10  for Defendant Bristol-Myers Squibb Company.

11          THE COURT:  Great.  As you know, I signed the request

12  for an extension, but one of the concerns I have is that this

13  seems to be taking so long, and I think, haven't we continued

14  this before?

15          MR. NOTARGIACOMO:  Well, we've continued the Track 2

16  settlement.

17          THE COURT:  For the similar problems.

18          MR. NOTARGIACOMO:  For the similar problem.  This is

19  the first time it's affected the BMS settlement.

20          THE COURT:  Yes, but I just keep kicking it off, and

21  these people are dying and they're old, and I want to have a --

22  is this the same vendor that's creating such a problem?

23          MR. NOTARGIACOMO:  It is the same vendor, but there

24  were issues related to the fact that there was a switch in

25  vendor.  In the interim, by the time we submitted our request,

1  CMS had awarded the contract that fulfills these requests to a
2  different vendor.  That required -- it was supposed to be three
3  or four months for them to load the data into their systems.
4  That ended up taking much longer than even they anticipated,
5  and they had all sorts of problems before they could even begin
6  processing these requests, including our own.  Those have been
7  worked out.  I have expressed the same concerns to the vendor,
8  and I've basically given them sort of a drop-dead, they need to
9  do it this time, otherwise --
10             THE COURT:  Is this true for both Track 2 and this?
11             MR. NOTARGIACOMO:  Yes, the same request, your Honor.
12             THE COURT:  Well, can I have a hearing date, and then
13  we'll subpoena the head of the vendor by a certain date if it
14  isn't done so he can get some heat from me?  Because at some
15  point, especially Track 2, but certainly true of this as well,
16  this is taking an extraordinarily long time.
17             MR. NOTARGIACOMO:  I understand, your Honor, and
18  basically we've told them that that's what the plan is if they
19  don't produce the data.
20             THE COURT:  No, but I want a -- the reason I called
21  you in here -- and I'm sure you're eager for it too -- I mean,
22  A, they're your clients, and, B, I know you have fees and costs
23  that aren't being paid, but I want to hold a hearing.  When is
24  it they've promised it to you?  And then I want a hearing the
25  following week, which you can cancel if it's all been done.

Page 5

1    MR. NOTARGIACOMO:  They promised it to us by the end
2    of next month, so --
3    THE COURT:  So that's the end of March.
4    MR. NOTARGIACOMO:  Right.
5    THE COURT:  All right, so let's set a hearing right
6    now in April, like the first week of April.
7    MR. NOTARGIACOMO:  Okay.
8    THE COURT:  And subpoena them to it if they are not --
9    what's the name of the vendor?
10   MR. NOTARGIACOMO:  Buccaneer.
11   THE COURT:  Buccaneer?
12   MR. NOTARGIACOMO:  Yes.
13   THE COURT:  Where are they located?
14   MR. NOTARGIACOMO:  I think they're in the Maryland
15   area, Baltimore, I think.  They have various facilities, but I
16   think that's the facility we've been dealing with.
17   THE COURT:  Well, I'm not sure we can subpoena them
18   here, right?
19   MR. NOTARGIACOMO:  I haven't thought about it, your
20   Honor.
21   THE COURT:  But I want them here.
22   MR. NOTARGIACOMO:  All right.
23   THE COURT:  Or I can issue an order to them.  I don't
24   want to be there, but it's just the Track 2 has gone over a
25   year.

1           MR. NOTARGIACOMO:  Understood.  We agree.  I think
2   that they understand the gravity of the situation now.
3           THE COURT:  I don't think they do.  I --
4           MR. NOTARGIACOMO:  Well, I'm hopeful we won't have to
5   have that hearing, but I understand your Honor's concern
6   certainly.
7           THE COURT:  So what I'd like to do -- and, Mr. Tretter,
8   I'm sorry that you ended up having to get on the phone for this
9   because in a way I think you haven't --
10          MR. TRETTER:  Look, we're a party to the settlement.
11  We're interested in getting it done too, but it's something
12  that's very much out of my control, so I appreciate your
13  allowing me to appear by phone.
14          THE COURT:  So I think we're going to have a hearing.
15  Pick a time in April on both Track -- is Track 2 supposed to be
16  done by then too?
17          MR. NOTARGIACOMO:  The data, your Honor?  Yes.
18          THE COURT:  All right, so both on Track 2 and on this
19  settlement for an explanation by the vendor.  Actually, it's
20  going to have to be through you.
21          MR. TRETTER:  I mean, your Honor already has, I guess,
22  the J & J Class One summary judgment hearing on March 31.  I
23  don't know if it's just to get an update or you really want
24  a --
25          THE COURT:  Well, I could take an update at that

1  point, but what I wouldn't have time for based on -- that's a
2  big solid hearing.
3              MR. TRETTER:  Well, I'm just saying that I know that
4  the plaintiffs' counsel will be there for that, and so that's
5  the last day.  At least somebody could touch base --
6              THE COURT:  At least somebody can, but if we need an
7  evidentiary hearing or something far more extended, maybe we
8  could do it the next day on April 1.  My problem is that we're
9  pretty thoroughly blocked.
10             THE CLERK:  April 8 at 2:00 o'clock would work.
11             THE COURT:  April 8 at 2:00 o'clock.  And then if it
12 turns out -- I'll get a quick update on the March 31.  If it's
13 not necessary, we'll cancel it far enough in advance that
14 people can get out of here.  In other words, you won't have to
15 come up for it if it's unnecessary.  But would you let the
16 vendor know I'm holding a hearing on what's taking so long?
17             MR. NOTARGIACOMO:  Yes, your Honor.
18             THE COURT:  How long has this vendor been the vendor
19 that's getting us the names?
20             MR. NOTARGIACOMO:  Well, they got awarded the contract
21 in October of '08, but it took them a long time to sort of get
22 up to speed and to start processing things.  The middle of last
23 year they really started, and there's been other problems,
24 but --
25             THE COURT:  Are we their only show in town?

Page 8

1  MR. NOTARGIACOMO: No. They do this for CMS for lots
2 of different purposes.
3  THE COURT: Well, do we keep getting bumped to the end
4 of the line?
5  MR. NOTARGIACOMO: It wasn't so much that we keep
6 getting bumped is that it's a very complex request with lots of
7 different drugs with different NDCs. They ran some of the
8 data. There was difficulty with it. They had to go back to
9 it. I think it had to do more with the switch, you know,
10 taking over the contract, than it did with processing our
11 request.
12  THE COURT: Well, would it make sense for me to give a
13 direct order?
14  MR. NOTARGIACOMO: I don't think it's completely
15 necessary. I think the April 8 date will be sufficiently
16 motivational for them. I think we're going to have the data by
17 then. I've been working with them. It seems that -- and,
18 frankly, we've also, to try to make sure that this date sticks,
19 we've been in touch sort of behind the scenes with some
20 higher-ups at CMS to put pressure on.
21  THE COURT: Could you get in touch with, let's say,
22 Bunker Henderson? Do you know who he is?
23  MR. NOTARGIACOMO: Yes, I know Bunker.
24  THE COURT: And he, I think, works on this issue for
25 the federal government. He's helped us before.

077919d5-1d73-46ee-97f3-bcb2fcf9c710

1    MR. NOTARGIACOMO:  Sure.

2    THE COURT:  I think, wasn't he the one involved
3 before?

4    MR. NOTARGIACOMO:  Uhm, I'm not sure if he was
5 involved, but I've certainly spoken with him in this case
6 before.

7    THE COURT:  So just maybe if he can help out a little
8 bit here.  I mean, it's truthfully holding up two major
9 settlements at this point, and I keep extending deadlines.  And
10 it's easy for me to just write "allowed," but at some point,
11 when I keep seeing it's a vendor problem, I get worried that
12 I'm not putting enough of the heft of the court behind what the
13 problem is.

14    MR. NOTARGIACOMO:  Understood.

15    THE COURT:  As I'm sitting here, I'm wondering whether
16 I even have the authority to give an order to a vendor, but --

17    MR. NOTARGIACOMO:  I think that whether the authority
18 is there or not, I think it will do the trick.

19    THE COURT:  Okay, so I'm seeing you all on the 31st.
20 You'll give me an update then.  If in fact there's still a
21 problem, we're going to have a hearing on the 8th.

22    MR. NOTARGIACOMO:  Okay, your Honor.  There's one
23 other matter, if we're done, that related to the BMS settlement
24 that I just want to bring to the Court's attention.

25    THE COURT:  Yes.

1    MR. NOTARGIACOMO:  Two days ago Mr. Haviland, who I'm
2 sure the Court is aware, filed a motion to enforce the
3 settlement with BMS related to an earlier memorandum of
4 understanding between Class One only and BMS.  I'm sure that
5 the Court hasn't even had a chance to see that filing.
6    THE COURT:  No.  I didn't know about it.
7    MR. NOTARGIACOMO:  I'm certainly not going to argue
8 substance here, but in essence it's an objection to the BMS
9 settlement.  So the only thing that we would request of the
10 Court is leave to file an opposition or a response to
11 Mr. Haviland's filing at the same time we respond to any other
12 objections, in accordance with the schedule in the BMS
13 settlement the Court has already approved, rather than having
14 essentially two rounds of objection and briefing.
15    THE COURT:  Are you on conversant tones with
16 Mr. Haviland?
17    MR. NOTARGIACOMO:  I've always been civil with
18 Mr. Haviland.
19    THE COURT:  Well, call him up and just -- I don't want
20 to do this behind his back when he's not sitting here, so call
21 him up.  It's fine with me.  Why don't you just file some
22 stipulation, okay?
23    MR. NOTARGIACOMO:  Okay.  Thank you, your Honor.
24    THE COURT:  So there, good.  I will see you on the
25 31st for the Johnson & Johnson argument, and you're going to

Page 11

1  give me -- and if this vendor is really still far behind, I
2  will be thinking of equitable order.  So they should get either
3  a lawyer or show up or at least be on a teleconference, because
4  if it's just going to be another delay, I'm going to consider
5  equitable relief.
6          MR. NOTARGIACOMO:  Understood, your Honor.
7          THE COURT:  Okay, thank you.
8          MR. TRETTER:  Thank you, your Honor.
9          THE CLERK:  Court is in recess.
10         (Adjourned, 9:53 a.m.)

1          C E R T I F I C A T E

3
 UNITED STATES DISTRICT COURT )
4 DISTRICT OF MASSACHUSETTS   ) ss.
 CITY OF BOSTON              )

7          I, Lee A. Marzilli, Official Federal Court Reporter,
8 do hereby certify that the foregoing transcript, Pages 1
9 through 11 inclusive, was recorded by me stenographically at
10 the time and place aforesaid in Civil Action No. 01-12257-PBS,
11 In Re:  Pharmaceutical Industry Average Wholesale Price
12 Litigation, and thereafter by me reduced to typewriting and is
13 a true and accurate record of the proceedings.
14     In witness whereof I have hereunto set my hand this 7th
15 day of March, 2010.

20            /s/ Lee A. Marzilli
              _____
21            LEE A. MARZILLI, CRR
              OFFICIAL FEDERAL COURT REPORTER