# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: **PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | ) ) ) ) **MDL No. 1456** **Master File No. 01- 12257-PBS** **Subcategory Case. No. 06-11337** |
| | ) |
| **THIS DOCUMENT RELATES TO:** | ) ) **Hon. Patti B. Saris** |
| *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS | ) ) ) ) ) **Magistrate Judge Marianne B. Bowler** |

## DEY DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION CONCERNING THE USE OF DEPOSITIONS

### PRELIMINARY STATEMENT

The Dey Defendants ("Dey") file this response in partial opposition to Plaintiffs' Motion For an Expedited Order Permitting Use of Depositions of Witnesses More than 100 Miles From the Courthouse and for Leave to Subpoena Witnesses. With one exception, the relief Plaintiffs seek – namely, the unrestricted option to use all depositions taken in all other pharmaceutical pricing cases – is premature. Before depositions from a prior action can be introduced, Rule 32(a)(8) requires a careful consideration of the motivations of the parties in the prior action to develop testimony to ensure that the later use of the deposition is fair to the party it will be used against. Such consideration is impossible at this time. The parties have not yet exchanged witness lists or proposed deposition designations, and there are literally hundreds of depositions that may be caught by the order Plaintiffs seek.

However, with respect to one category of depositions, the record *is* sufficient to permit on ruling on admissibility under Rule 32(a)(8). Depositions of state Medicaid officials taken in related AWP and WAC actions commenced by states to recover Medicaid payments (the

"State Actions") meet the criteria for admission pursuant to Rule 32(a)(8).  There are common issues between those actions and this action, and the states' share the Plaintiffs' motivation to develop testimony

Thus, Dey requests entry of an order (a) directing that all depositions of State Medicaid officials in State Actions are admissible as though taken in this action, and (b) otherwise denying Plaintiffs' motion as premature, without prejudice to renew upon filing appropriate deposition designations.  Additionally, Dey does not oppose the United States' request for an order allowing it to serve subpoenas on witnesses located more than 100 miles from the courthouse, and requests similar relief as to Dey.[1]

**ARGUMENT**

## I.      DEPOSITIONS OF STATE MEDICAID OFFICIALS MEET THE CRITERIA OF RULE 32(A)(8)

Depositions of State Medicaid officials taken in the State Actions are admissible as though taken in this action.  Rule 32(a)(8) of the Federal Rules of Civil Procedure provides as follows:

> A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action.  A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

---

[1]     Roxane also submitted an opposition to Plaintiffs' motion.  Unlike Dey, however, Roxane opposes Plaintiffs' motion in its entirety and seeks to compel Plaintiffs to call all witnesses live unless Plaintiffs can demonstrate unavailability as to each witness.  *See* Docket No. 6958.  While Dey does not necessarily agree with Roxane's position on these issues, it recognizes that Roxane is entitled to defend the claims against it as it sees fit, as is Dey.  However, this divergence in procedural arguments creates the prospect of one single trial with different rules for different defendants, wherein Plaintiffs' case against Roxane proceeds with live witnesses and their case against Dey proceeds at least in part through deposition testimony.  This bizarre situation is the result of Plaintiffs' insistence – solely for tactical reasons –  that Dey and Roxane be tried together.  Denying Plaintiffs' consolidation motion is the best way to obviate this and other procedural quagmires that will likely emerge if Dey and Roxane were to be tried jointly.

Fed. R. Civ. P. 32(a)(8).  Even though Plaintiffs may not have appeared at depositions of State Medicaid officials taken in all actions, Plaintiffs' interests in those actions were adequately protected.

> **A.**     **States Had the Same Motivation as Plaintiffs to Develop Testimony Of State Medicaid Officials In the State Actions**

Rule 32(a)(8) permits the use of depositions from prior actions, provided a party with the same motivation to develop testimony as the party against whom it is sought to be introduced was present or represented at the deposition.  *See Ikerd v. Lapworth*, 435 F.2d 197, 203 (7th Cir. 1970) ("Although it is generally the rule that a deposition is not admissible as to one not having the opportunity to be represented at its taking, the presence of an adversary with the same motive to cross-examine the deponent and identity of issues in the case in which the deposition was taken with the one in which it is sought to be used provide a well-recognized exception to the rule."); *George R. Whitten, Jr. Inc. v. State Univ. Constr. Fund, Inc.*, 359 F. Supp. 1037, 1039 (D. Mass.1973) (holding that, under Rule 32(a), "the presence of an adversary with the same motive to cross-examine the deponent, coupled with substantial identity of issues, in the prior action may suffice to permit the usage of a prior deposition in a subsequent action."); C. Wright & A. Miller, 8A Fed. Prac. & Proc. Civ. § 5120 (3d ed. 2010) (noting that courts interpreting Rule 32(a) "recognize that the real test should be whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent now has.")

For instance, in *Fullerform Continuous Pipe Corp. v. American Pipe and Construction Co.*, an antitrust action, the court allowed the plaintiffs to introduce 26 depositions taken in a prior antitrust action, despite the fact that many defendants had not been party to the prior action.  44 F.R.D. 453, 456 (D. Ariz. 1968).  The court held that the essential issue in the

prior depositions – whether a conspiracy had transpired – was also at issue in this action, and that defendants in the prior action had the same interest in disproving the existence of a conspiracy as the defendants in the instant action.  *Id.*  As the court held,

> The question then is whether a particular … defendant [in the instant action] would be prejudiced by not having been present at a prior deposition which may be used against him.  The answer is no.  Defendants common to both actions have the same primary interest – disproving the existence of a conspiracy.  They would have protected this interest in the [prior action], to the benefit of themselves and all others similarly situated herein.

*Id.*

The plaintiffs in the State Actions – namely, states and certain counties in New York State suing to recover funds expended by their Medicaid programs – have the same motive to develop testimony of the state Medicaid official witnesses as would Plaintiffs.  Both Plaintiffs in this action and the plaintiffs in the State Actions are seeking to recover the same funds, moneys paid out by the State as part of reimbursements for Medicaid providers who dispensed Dey's drugs.  Logically, any deposition testimony adverse to the states' claims in those actions would be equally adverse to Plaintiffs' claims relating to Medicaid reimbursement payments in this action.  Counsel for the states, therefore, had the same motivation as Plaintiffs to develop whatever cross or redirect testimony they felt necessary to counter any adverse testimony elicited by defendants.  Thus, Plaintiffs cannot claim any prejudice because they did not attend those depositions or were not expressly named as parties in those cases.

The conduct by counsel for the United States at several depositions of state Medicaid officials confirms that Plaintiffs and the states understand that their interests are aligned, and they have been jointly prosecuting all of the pricing cases nationwide, whether or not the United States is a party.  At several depositions of state Medicaid officials, counsel for the United States invoked the "common interest" privilege and instructed witnesses (who were

all separately represented by an attorney from the state) not to answer questions concerning communications between the witness and counsel for the United States. *See, e.g.*, March 10, 2010 Declaration of Sarah L. Reid ("Reid Decl.") Ex. 1 at 97:19-100:18; Ex. 2 at 28:1-29:22; Ex. 3 at 221:1-222:16. In some cases, counsel for the state invoked privilege and directed the witness not to answer questions as to communications between the witness and counsel for the United States.[2] *See* Reid Decl. at Ex. 4 at 18:1-15; Ex. 5 at 104:14-107:13; Ex. 6 at 10:20-14:14; Ex. 7 at 81:14-84:8.

These privilege assertions, and the preparation sessions of state Medicaid officials attended jointly by counsel for the states and counsel for the United States, confirm their identity of interests in these matters. Indeed, a common-interest privilege protects communications when they are "made by the client or the client's lawyer to a lawyer representing another in a matter of *common interest*." *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) (emphasis added) (citations and quotation marks omitted). Thus, the common interest privilege will only protect a communication between counsel for the United States and a witness testifying on behalf of a state if the state and the United States share the same interest in the outcome of the litigation, which is certainly true here. *See U.S. v. MIT,* 129 F.3d 681, 686 (1st Cir. 1997) (holding that the common interest doctrine did not apply because the alleged common interest was not "the kind of common interest to which the cases refer in recognizing that *allied lawyers and clients – who are working together in prosecuting or defending a lawsuit* or in certain other legal transactions – can exchange information among themselves without loss of the privilege") (emphasis added).

---

[2]     The communications between the state Medicaid officials and counsel for the United States took place at preparation sessions prior to the depositions that were attended by the witness, counsel for the state, and counsel for the United States.

Therefore, by invoking the common interest privilege at these depositions, both the States and the United States have confirmed that they share a common interest in the outcome of these litigations. Indeed, when invoking the common interest privilege at the deposition of a witness produced by the State of New Hampshire and represented by the New Hampshire Attorney General's Office, counsel for the United States declared "Well, it is our position, Mr. Berlin, that we [*i.e.* the United States and New Hampshire] have a common interest in rooting out fraud against the Medicaid program." Reid Decl. Ex. 3 at 222:14-16. Counsel for the United States made this statement and invoked the privilege despite the fact that New Hampshire has not commenced a separate lawsuit against Dey and will not receive any recovery if Plaintiffs prevail in this action. If the United States shares a "common interest" that is sufficient to support a claim of common interest privilege with a non-litigating state such as New Hampshire, then Plaintiffs have no grounds to complain that their interests were not protected at a deposition in a State Action by counsel for an actively litigating state.

Rule 32(a)(8) is further satisfied in the case of the litigating states because they are acting in those litigations as the "representatives" of the United States. Federal statutes impose an obligation on the states to recover Medicaid overpayments on behalf of the federal government. Pursuant to 42 U.S.C. § 1396a(a)(25)(A)-(B), states are required to "take all reasonable measures to ascertain the legal liability of third parties [for Medicaid reimbursement payments]," including the liability of drug manufacturers, and "seek reimbursement … to the extent of such legal liability." States must also return the federal share of discovered overpayments irrespective of whether they are able to recover the overpayments. *See* 42 U.S.C.

§ 1396b(d); *Commonwealth of Massachusetts v. Sec'y of Health & Human Servs.*, 749 F.2d 89, 96 (1st Cir. 1984).[3]

CMS has taken the position – in no uncertain terms – that these provisions for the return of overpayments are applicable to "overpayments" discovered through AWP lawsuits. On October 28, 2008, CMS sent a letter to all State Health Officials ("SHO Letter"), demanding:

> Any State action taken as a result of harm to a State's Medicaid program must seek to recover damages sustained by the Medicaid program as a whole, including both Federal and State shares. A State may not seek to recover merely the "State share" of computed fraud damages unless appropriate Federal and State authorities formally agree to sever the Federal and State portion of the overpayment and pursue them as separate actions.

Reid Decl., Ex. 8 at 1-2. CMS explicitly instructs states that the requirements apply to actions against "pharmaceutical companies" and "applies irrespective of whether the State action is pursuant to a State FCA or other State statutory or common law cause of action." *Id.* at 2 & n.1.[4] For this reason as well, Rule 32(a)(8) is satisfied as to the depositions of state Medicaid officials in the State Actions.

**B.      Ven-A-Care Protected Plaintiffs' Interests in the Florida and California Actions**

In two State Actions, Plaintiffs' interests were protected not only by litigating states but by the relator in this action, Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"). In

---

[3]      Pursuant to 42 U.S.C. § 1396b(d)(2)(C), after a state discovers an overpayment, it has only 60 days to recover the overpayment. At the end of the 60 days, the Secretary of HHS is empowered to make an adjustment in the federal payment given to the state for Medicaid expenditures irrespective of whether the overpayment was recovered. The exceptions in 42 U.S.C. 1396b(d)(2)(D) and 42 C.F.R. § 433.318 relating to providers that are bankrupt or out of business are not applicable.

[4]      Additionally, the federal government recently enacted a statute to encourage states to actively pursue the recovery of overpayments by allowing the states to keep a portion of the federal share that would otherwise need to be turned over to the Federal Government. *See* 42 U.S.C. § 1396h (effective January 1, 2007); OIG's Guidelines for Evaluating State False Claims Acts, 71 Fed. Reg. 48552, 48553 (2006). Congress has also established a joint federal and state funded Medicaid Fraud Control Unit program to assist States in pursuing Medicaid fraud claims under state law. *See* 42 U.S.C. § 1396b(q).

addition to this action, Ven-A-Care has commenced a state court *qui tam* action against Dey, as well as several other drug manufacturers, on behalf of Florida, *State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp.*, Civil Action No. 98-3032A (Fla. Cir. Ct., Leon Cty.) (the "Florida Action") and California, *State of California v. Abbott Laboratories, et al.*, Civil Action No. 03-11226-PBS (D. Mass.) (the "California Action").   As the relator in this action, Ven-A-Care originally brought this action on behalf of the United States.   *See* 31 U.S.C. § 3730(b)(1).  Even after the United States intervened, Ven-A-Care was entitled to participate in this action, and may receive as much as 25 percent of whatever the United States ultimately obtains.  *See* 31 U.S.C. § 3730(c), (d)(1).  The Florida and California False Claims Acts afforded Ven-A-Care similar rights in the Florida and California Actions.  *See* Fla. Stat. §§  68.083(2), 68.084(1), 68.085(1); Cal. Gov't Code § 12652(c)(1), (e)(1), (g)(2). Thus, Ven-A-Care had the opportunity to participate in the depositions in the Florida and California Actions and, since Ven-A-Care has a significant potential stake in this action, Ven-A-Care had the same interest that the United States would have had if it participated in those depositions.  The depositions in the Florida and California Actions are, therefore, properly admissible against Plaintiffs in this action.

## II.     PLAINTIFFS' MOTION IS OTHERWISE     PREMATURE AND SHOULD BE DENIED

While there is a demonstrable identity of interests between Plaintiffs and the states sufficient to allow the use of State Medicaid official depositions from State Actions in this action, Plaintiffs' motion as to other depositions is premature.  In their moving papers, Plaintiffs make no attempt to demonstrate that Dey had similar motivations to develop testimony as it has here.  Nor do they even indicate specific categories of deposition testimony they seek to introduce against Dey.  Rather, Plaintiffs ask the Court to rule, in a vacuum, that any deposition

taken in any related AWP or WAC action satisfies the criteria of Rule 32(a)(8), without any consideration as to the particular circumstances of any specific deposition or the action in which it was taken. Such a blanket holding is not permissible on this record. Rule 32(a)(8) requires careful consideration of the motivations of the parties in prior actions to develop testimony. Plaintiffs have failed to offer any grounds upon which the Court could conclude that Dey had the same motive to develop testimony at every deposition in every related AWP and WAC action as it does in this action. Nor could Dey reasonably address this issue without knowing what deposition testimony Plaintiffs intend to introduce. Plaintiffs' motion should be denied, at least until Dey and the Court know what depositions Plaintiffs seek to produce.[5]

As discussed above, the inquiry under Rule 32(a)(8) is not limited to a mechanical comparison of the parties. Rather the parties' motivations to develop the testimonial record is the controlling question in determining whether introduction of the deposition is fair. *Wolf v. United Air Lines, Inc.* 12 F.R.D. 1, 4 (S.D.N.Y. 1951). Even if the depositions are offered against a defendant who was also a defendant in the prior action in which the depositions were taken, the requirements of Rule 32(a)(8) are not satisfied unless that defendant had a sufficient motivation and opportunity to develop the record in the prior action.

For instance, in *Wolf* the court refused to admit depositions against the defendant, United Air Lines, taken in a prior action in which the United was also a defendant because United did not have the same motivation to develop cross-examination testimony in both actions. 12 F.R.D. at 3-4. Although United was a defendant in both actions, and both actions were

---

[5]     Plaintiffs distort the record by suggesting that Dey was recalcitrant in meet and confers on the issues raised in this motion. Dey has always been willing to work with Plaintiffs to address the admissibility of testimony on a case-by-case basis, and intends to do so once served with Plaintiffs' witness lists and designations. However, Dey was not willing to stipulate to the wholesale admission of literally hundreds of depositions without at least some consideration of the particular circumstances in which those depositions were taken.

wrongful death suits arising from the same airplane crash, the depositions of United's officials and employees in the prior action were taken in the context of a cross-claim by United against Douglas, its co-defendant and the manufacturer of the crashed plane. *Id.* at 3. The court noted that, in the prior action, "the issues between defendants, United Air Lines and Douglas, were contested prior to and at the time of the trial, and in some respects appeared to overshadow the primary issue of plaintiff's right to recover." *Id.* In the action before the court, by contrast, United was the sole defendant and the issues would necessarily turn on United's direct liability to plaintiff. *Id.* The court concluded the depositions should not be admitted, holding:

> Though many of the depositions were probably relevant to the question of defendant's liability to the plaintiff in this action, under the prevailing circumstances the interest and motive of United Air Lines in its direct and cross-examination of deponents may very well not have been the same at that time as it is now in an action in which Douglas is not a party.

*Id.* at 4.

The same is true here, at least as to certain prior testimony Plaintiffs may – or may not – seek to use. Simply because Dey is named as a defendant in an action that involves subject matter superficially similar to that at issue in this action, it does not necessarily follow that Dey would have had the same motivation to develop testimony in that action as it has in this action. For instance, included in the testimony that would be indiscriminately swept into the record were Plaintiffs' motion granted are depositions of former Dey employees taken in the action *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, No. GV002327 (Tex. Dist. Ct. Travis Cty.) (the "Texas Action"). While the Texas Action sought, and this action seeks, to recover allegedly inflated Medicaid payments, the use of certain of those depositions would be unfair and improper because Dey did not necessarily have the same

motivation to develop testimony of those witnesses in that action as it would have had were they deposed in this action.

This is not to say that Dey will necessarily oppose the use of all deposition testimony of former Dey employees taken in the Texas action, or other deposition testimony covered by Plaintiffs' motion.[6]  Indeed, Dey may not object on Rule 32 grounds to the introduction of Plaintiffs' proposed designations once it has an adequate opportunity to examine them.  However, at this stage, it is simply impossible to say whether every line of testimony covered by Plaintiffs' request actually satisfies the requirements of Rule 32(a)(8).  The better course is to defer judgment on depositions from State Actions (other than those of state Medicaid officials) until the parties have exchanged their proposed designations, so that their admissibility under Rule 32(a)(8) can be considered properly.

## III.    DEY IS ENTITLED TO SERVE SUBPOENAS ON WITNESSES BEYOND 100 MILES FROM THE COURTHOUSE

To minimize witness inconvenience, Dey – like Plaintiffs – intends to use, where appropriate, videotaped deposition testimony in lieu of calling those witnesses live.  However, there are certain witnesses whose presence in the courtroom is critical to Dey's defense, but who may reside more than 100 miles from the courthouse.  Like Plaintiffs and Roxane, Dey submits that 31 U.S.C. § 3731(a) empowers Dey to serve subpoenas nationwide.  Accordingly, like Plaintiffs and Roxane, Dey respectfully requests that the Court order that Dey is entitled to serve trial subpoenas nationwide.

---

[6]    Dey also concedes that some of these depositions may be independently admissible under the Rules of Evidence as, for instance, party admissions.  However, determinations as to their admissibility must be made on a case-by-case basis, and the United States cannot use this motion to side-step its obligations to make such showings.

## CONCLUSION

For the reasons set forth herein, Dey respectfully requests the Court to enter an order permitting the use, by all parties, of the depositions of state Medicaid officials in the State Actions but otherwise denying Plaintiffs' motion as premature. Dey further requests that the Court order that Dey is entitled to serve trial subpoenas nationwide.

Dated: March 10, 2010

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: _____/s/ Sarah L. Reid_____
    Paul F. Doyle, BBO # 133460
    Sarah L. Reid (admitted *pro hac vice*)
    William A. Escobar (admitted *pro hac vice*)
    Neil Merkl (admitted *pro hac vice*)
    Philip D. Robben (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 808-7800 (telephone)
(212) 808-7897 (facsimile)

-and-

Martin F. Murphy, BBO #363250
Robert E. Toone, BBO #663249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000 (telephone)
(617) 832-7000 (facsimile)

*Attorneys for Defendants Dey Pharma, L.P., Dey L.P., Inc., and Dey, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on March 10, 2010, a copy to LexisNexis File and Serve for posting and notification to all parties.

By: <u>   /s/ Sarah L. Reid   </u>
          Sarah L. Reid