# Exhibit 6

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS

**Exhibit to the March 10, 2010 Declaration of Sarah L. Reid in Support of Dey Defendants' Response to Plaintiffs' Motion Concerning The Use of Depositions**

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

----------------------------------X

In Re: PHARMACEUTICAL INDUSTRY     )

AVERAGE WHOLESALE PRICE LITIGATION )

----------------------------------X MDL No. 1456

THIS DOCUMENT RELATES TO:          ) Master File No.

United States of America ex rel.   ) 01-CV-12257-PBS

Ven-A-Care of the Florida Keys,    )

Inc., et al. v. Dey, Inc., et al., )

Civil Action No. 05-11084-PBS,     ) Hon. Patti B.

and United States of America ex    ) Saris

rel. Ven-A-Care of the Florida     )

Keys, Inc., et al. v. Boehringer   )

Ingelheim Corp., et al., Civil     )

Action No. 07-10248-PBS            )

----------------------------------X

VIDEOTAPED DEPOSITION OF THE NORTH DAKOTA DEPARTMENT

OF HUMAN SERVICES-MEDICAID DIVISION by BRENDAN JOYCE

    DATE:          Friday, December 12, 2008

    PLACE:         Bismarck, North Dakota

    REPORTED BY:   Deanna L. Sager, R.P.R.

1  Thomas may object to a question.  Unless your
2  attorney instructs you not to answer the
3  question, you're required to provide a response.
4  Objections are made to preserve the record.
5       If I ask you a question you do not have
6  a full memory as to what occurred, you're
7  instructed to tell me everything you do remember.
8  If you say "I don't know" or "I don't remember" I
9  will assume that you have absolutely no knowledge
10 or memory.
11      Do you understand all these
12 instructions?
13    A.   Yes.
14    Q.   Is there any reason why you cannot give
15 full, accurate, and truthful testimony today?
16    A.   No.
17    Q.   Did you meet with anyone in preparation
18 for this deposition?
19    A.   How far back?  Time frame.
20    Q.   Any meeting in preparation for this
21 specific deposition.
22    A.   Once the subpoena was served met with

1　my department's legal counsel and figured out
2　what had to be pulled for the deposition.  So we
3　met to discuss that a couple of times.  And then
4　I actually ended up having one of the legal
5　counsel come down to my office when we were going
6　through all the file cabinet to pull all the
7　information for the deposition.  And also went to
8　his office a few times to deliver more documents,
9　deliver CDs, make copies of CDs and electronic
10　files.  Then met yesterday with Susan for the
11　first time, late afternoon, to talk a little bit
12　about the deposition.
13　　　　Q.   Was anybody else present at that
14　meeting?
15　　　　A.   Doug was also present.  Mr. Bahr.
16　Sorry.  Whatever.
17　　　　Q.   Did you review any documents at that
18　meeting?
19　　　　A.   We reviewed a couple documents that
20　Susan had.  I believe it was a summary of some --
21　summary of some things.  And also printed out a
22　survey that was done in the last week at the

1  behest of Susan's law firm.
2          MR. BAHR:  Mr. Maloney, just so he can
3  explain that survey, we were going to bring that
4  today.  That was post production.
5          MR. MALONEY:  Okay.
6          MR. BAHR:  And both of us thought each
7  other grabbed it.  So, if needed, I can pick that
8  up over lunch, but you probably have a copy of it
9  anyway so....  Do you want to explain what that
10 survey is? Because that --
11         MS. THOMAS:  We'll mark it later.  It
12 was the Myers & Stauffer North Dakota
13 reimbursement methodology summary.
14         MR. MALONEY:  Okay.
15         MS. THOMAS:  I have a black and white
16 copy which I will be marking later.  We don't
17 have the colored copies with us.
18         THE WITNESS:  Actually the ones I
19 printed off are not color.  I don't have access
20 to a color printer.
21     Q.   (Mr. Maloney continuing)  You said you
22 also reviewed a document that you said was a

1  summary.  Can you give me a better description of
2  that document?
3          MR. BAHR:  First of all, is this a
4  document that we produced?
5          THE WITNESS:  No.  It wasn't a document
6  we produced.  It was the one Susan had.
7          MS. THOMAS:  It was the one we're just
8  --
9          THE WITNESS:  No, the other one that's
10 a summary of arguments, or something, that are
11 made, have been made.  Closing arguments or....
12 Briefs.
13         MR. BAHR:  Brief.
14         THE WITNESS:  It was a brief.  That was
15 about all that I remember as far as description-
16 wise.
17    Q.   (Mr. Maloney continuing)  Was that the
18 first time you had seen that document?
19    A.   Yes.
20    Q.   What was discussed at this meeting?
21         MR. BAHR: Objection.  Attorney/client
22 privilege.

```
 1            MR. MALONEY:  On what basis?
 2            MR. BAHR:  I'm his attorney, and the
 3   meeting was at my direction and to prepare my
 4   client for this deposition.
 5            MR. MALONEY:  And Susan Thomas was
 6   present at that meeting.
 7            MR. BAHR:  She was present at my
 8   request, and it's joint privilege.
 9            MR. MALONEY:  What is the basis for the
10   joint privilege?
11            MR. BAHR:  Basis is that the state is
12   aligned with some other states who are involved
13   in this lawsuit and may be aligned itself down
14   the road in similar litigation.
15       Q.   (Mr. Maloney continuing)  Do you know
16   if the summary of briefs that you mentioned has
17   been produced in response to the subpoena?
18       A.   I have no idea.  It wasn't anything
19   that the state had possession of.
20            MR. MALONEY:  I'll ask that that be
21   produced at some point in time.
22            MR. BAHR:  I don't believe the
```