# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
|  | MDL No. 1456 |
|  | Master File No. 01-CV-12257-PBS Subcategory No. 06-CV-11337-PBS |
| THIS DOCUMENT RELATES TO: *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al., Civil Action No. 07-10248-PBS* | ) ) ) ) ) ) ) ) |
|  | Judge Patti B. Saris |
|  | Magistrate Judge Marianne B. Bowler |

## MEMORANDUM IN SUPPORT OF THE ROXANE DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT RELATED TO PLAINTIFFS' DAMAGES CLAIM

Helen E. Witt, P.C.
Anne M. Sidrys, P.C.
Eric T. Gortner
John W. Reale
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for Defendants
Boehringer Ingelheim Corp.,
Boehringer Ingelheim Pharmaceuticals, Inc.,
Boehringer Ingelheim Roxane, Inc., and
Roxane Laboratories, Inc.*

Dated: March 12, 2010

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

BACKGROUND .......................................................................................................2

LEGAL STANDARD...............................................................................................3

ARGUMENT ............................................................................................................5

I.   THE DOJ'S COMBINED CONDUCT DAMAGES THEORY SHOULD
     BE REJECTED BECAUSE IT IS INCONSISTENT WITH THE PLAIN
     MEANING OF THE FALSE CLAIMS ACT. ........................................5

II.  IN ADDITION, THE DOJ'S COMBINED CONDUCT DAMAGES
     THEORY IGNORES THE LAW OF CAUSATION AND THE RECORD
     IN THIS CASE. ......................................................................................6

     A.   For The Arrays After The Third Quarter Of 2001, The Combined
          Conduct Theory Erroneously Seeks To Hold Roxane Responsible
          For Damages That Were Not The Effect Of Its Statements. .................8

     B.   Even In Pre-Fourth Quarter 2001 Arrays, The DOJ Improperly
          Seeks To Hold Roxane Responsible For Alleged Damages
          Resulting From The Impact Of Dey's Conduct. .......................................13

CONCLUSION..........................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Allison Engine Co. v. United States ex rel. Sanders*,
128 S. Ct. 2123 (2008) .................................................................................. 5, 6, 16

*Brown v. United States*,
514 F. Supp. 2d 146 (D. Mass. 2007) ............................................................. 4

*Clement v. United States*,
980 F.2d 48 (1st Cir. 1992) ........................................................................ 7, 12, 13

*Commonwealth v. Mylan Labs.*,
608 F. Supp. 2d 127 (D. Mass. 2008) ........................................................... 6, 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
491 F. Supp. 2d. 20 (D. Mass. 2007) ............................................................ 9

*Peckham v. Cont'l Cas. Ins. Co.*,
895 F.2d 830 (1st Cir. 1990) ......................................................................... 8

*Petrocelli v. Gallison*,
679 F.2d 286 (1st Cir. 1982) ......................................................................... 4

*Rex Trailer Co. v. United States*,
350 U.S. 148 (1956) ...................................................................................... 5

*Rodriguez-Cirilo v. Garcia*,
115 F.3d 50 (1st Cir. 1997) ........................................................................... 7

*Russo v. Baxter Healthcare Corp.*,
140 F.3d 6 (1st Cir. 1998) ......................................................................... 15, 16

*United States ex rel. Fago v. M & T Mortg. Corp.*,
518 F. Supp. 2d 108 (D.D.C. 2007) ............................................................ 15

*United States ex rel. Franklin v. Parke-Davis*,
2003 WL 22048255 (D. Mass. Aug. 22, 2003) ......................................... 7, 12, 14

*United States ex rel. Hagood v. Sonoma County Water Agency*,
929 F.2d 1416 (9th Cir. 1991) ...................................................................... 5

*United States ex rel. Kinney v. Hennepin County Med. Ctr.*,
2001 WL 964011 (D. Minn. Aug. 22, 2001) .............................................. 15

*United States ex rel. Poteet v. Lenke*,
    604 F. Supp. 2d 313 (D. Mass. 2009) ...................................................................... 6

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
    472 F.3d 702 (10th Cir. 2006).................................................................... 7, 15

*United States v. Bornstein*,
    423 U.S. 303 (1976) ................................................................................... 14

*United States v. Hall*,
    653 F.2d 1002 (5th Cir. 1981) ..................................................................... 4

*United States v. Hibbs*,
    568 F.2d 347 (3rd Cir. 1977)................................................................... 7, 9

*United States v. Lachman*,
    387 F.3d 42 (1st Cir. 2004) ........................................................................ 6

*United States v. Lamberty*,
    778 F.2d 59 (1st Cir. 1985) ........................................................................ 4

*United States v. McLeod*,
    721 F.2d 282 (9th Cir. 1983)..................................................................... 14

*United States v. President & Fellows of Harvard College*,
    323 F. Supp. 2d 151 (D. Mass. 2004) .................................................... 9, 15

*United States v. Rivera*,
    55 F.3d 703 (1st Cir. 1995) ...................................................................... 16

*United States v. TDC Mgmt. Corp.*,
    288 F.3d 421 (D.C. Cir. 2002) .................................................................. 14

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ................................................................................... 6

*Williams v. Taylor*,
    529 U.S. 420 (2000) ................................................................................... 5

**Statutes**

31 U.S.C. § 3729.................................................................................... 1, 5, 14

31 U.S.C. § 3731(d) .................................................................................... 5

**Other Authorities**

PROSSER & KEETON ON TORTS § 42 (5th ed. 1984).................................................... 8

RESTATEMENT (SECOND) OF TORTS § 432 (1965) .......................................................... 7, 12, 13, 14

RESTATEMENT (SECOND) OF TORTS §§ 441-442 (1965) ............................................................. 16

**Rules**

Fed. R. Evid. 104 ............................................................................................................ 3, 4

Fed. R. Evid. 401 ......................................................................................................... 1, 4, 8

Fed. R. Evid. 402 ......................................................................................................... 1, 4, 8

Fed. R. Evid. 403 ...................................................................................................... 1, 2, 4, 8

L. R. 7.1(a)(2) .................................................................................................................. 2

## INTRODUCTION

Pursuant to Federal Rules of Evidence 401, 402 and 403, Boehringer Ingelheim Roxane, Inc., f/k/a Roxane Laboratories, Inc. ("Roxane"), Boehringer Ingelheim Corporation, and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively, the "Roxane Defendants") respectfully move this Court to preclude Plaintiffs United States of America and Ven-A-Care of the Florida Keys, Inc. from introducing any evidence at trial regarding their "combined conduct" theory of damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.*.  (*See* Dkt. No. 6585, DOJ Consol. Mem., 16-17; Dkt. No. 6660, DOJ Consol. Reply, 6-8)   The combined conduct theory— advanced by the Department of Justice in pretrial proceedings, filings, and its expert's reports— seeks to hold Roxane liable for alleged Medicare damages based upon another manufacturer's independent conduct.  Through its combined conduct theory, the DOJ improperly seeks to inflate its Medicare damages for ipratropium bromide by ***more than 865 million dollars***, which would be subject to the automatic trebling provisions of the FCA.

The DOJ's "combined conduct" theory is fundamentally at odds with the plain language of the FCA, which limits damages to those arising out of the particular act of the defendant.  It is also contrary to the law of causation.  Accordingly, any evidence or argument related to this theory of FCA damages is irrelevant to the jury's deliberations and properly excluded under Federal Rules of Evidence 401 and 402.[1]   Moreover, because the combined conduct theory

---

[1] To date, the DOJ has framed its combined conduct theory as related only to the issue of damages, perhaps seeking to avoid its burden to show causation.  (*See* Dkt. No. 6585, DOJ Consol. Mem., 16-17; Dkt. No. 6660, DOJ Consol. Reply, 6-8)  The Court should preclude, however, any evidence or argument concerning "combined conduct," whether pursued as a theory of liability or damages.

would confuse the issues, mislead the jury, waste time, and be more prejudicial than probative, such evidence and argument should be precluded under Federal Rule of Evidence 403.[2]

## BACKGROUND

At the outset, the DOJ makes no allegation of conspiracy, collusion, or concerted action between Roxane and the Dey Defendants. (*See* Dkt. No. 5733, Rox. First Am. Compl. ¶ 2; Dkt. No. 5902, Am. Dey Compl. ¶ 2)  The DOJ does not allege or provide any evidence that Roxane participated in the Dey Defendants' pricing, marketing, or sales decisions.  Nor is there any evidence that Roxane caused the alleged damages that purportedly flowed from the Dey Defendants' independent conduct.  In fact, the record makes clear that Roxane and Dey were fierce competitors in the marketplace, did not control or participate in the pricing decisions of one another, and acted independently of each other and pursuant to their own business interests. (*See* Dkt. No. 6296, DOJ Stmt. of Facts, ¶ 145)  Moreover, the separately pled complaints in the Dey and Roxane cases make clear that the DOJ predicated its FCA claims on independent and unrelated transactions involving the pricing decisions of different companies according to their own particularized business models.  (*See generally* Dkt. No. 5733, Rox. First Am. Compl.; Dkt. No. 5902, Am. Dey Compl.)

In its pretrial proceedings and filings, however, the DOJ has stated that it intends to introduce evidence and argument at trial that, in the case of ipratropium bromide, "Dey and Roxane each legally caused a ***single injury*** to the Medicare program based on the combined conduct of their price reporting on Medicare's allowable reimbursement amount."  (Dkt. No. 6585, DOJ Consol. Mem., 14 (emphasis added))  Indeed, two of the DOJ's four damage models

---

[2] Pursuant to L. R. 7.1(a)(2), undersigned counsel conferred with opposing counsel.  Opposing counsel objects to the relief requested herein.

2

depend on the novel "joint" or "combined" conduct theory.  (Dkt. No. 6207, Rox. Corrected Stmt. of Facts, Tab 166, 2-4)  As discussed below, the DOJ's "combined conduct" theory and resulting damage models seek to hold Roxane liable for damages that Roxane's conduct, standing alone, did not cause.  (*See* Dkt. No. 6585, DOJ Consol. Mem., 16-17; 10/20/09 Hr'g Tr. 25 (attached hereto as Exhibit A))  *First*, the DOJ seeks to recover damages against Roxane for reimbursement based on arrays in which Roxane's AWPs, by themselves, had no impact on the carriers' calculation of the generic median.  It is undisputed that for all arrays after the third quarter of 2001, the generic median for ipratropium bromide would not have changed even if the carriers had used Roxane's fully discounted average selling prices, in place of its published AWPs.  (*See* Myers & Stauffer Arrays After From 2001Q4 To 2003Q4 (attached hereto as Exhibit B); Ex. A, 10/20/09 Hr'g Tr. 25)  *Second*, even for those arrays in which a change in Roxane AWPs, by themselves, may be shown to have affected the calculation of the generic median, the DOJ seeks to hold Roxane responsible for damages far exceeding its impact alone. (*See* Myers & Stauffer Cigna DMERC Array 1998Q4 (attached hereto as Exhibit C); Dkt. No. 6585, DOJ Consol. Mem., 15-16)

Under its combined conduct model, the DOJ inflates its damages claim against Roxane from just over $230 million ***to more than a billion dollars***—amounting ***to more than three billion dollars in damages*** under the automatic trebling provisions of the FCA.  As discussed below, the combined conduct theory is not a legally valid model of damages and should not be permitted in this case.

## LEGAL STANDARD

All evidence is subject to certain basic principles of admissibility under the Federal Rules of Evidence.  Rule 104 of the Federal Rules of Evidence provides that "[p]reliminary questions

3

concerning . . . the admissibility of evidence shall be determined by the court . . ..” Fed. R. Evid. 104; *see also Petrocelli v. Gallison*, 679 F.2d 286, 292 n.6 (1st Cir. 1982) (upholding lower court's exclusion of medical evidence under Rule 104(a), “which gives to the judge the preliminary duty of determining whether—and under what theory—an item of evidence is to be admitted”); *Brown v. United States*, 514 F. Supp. 2d 146, 155 n.14 (D. Mass. 2007) (excluding under Rules 702 and 104(a) expert opinions “that have no foundation or rest on obviously incorrect assumptions or speculative evidence”).   Relevancy is a cornerstone of admissibility. Fed. R. Evid. 402 (“Evidence which is not relevant is not admissible.”)  Evidence is not relevant, and should be excluded, where it does not bear upon an issue of consequence, as determined by the substantive law.   *United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir. 1985) (excluding evidence under Rule 402 that was not “relevant to proving the elements of the counts charged”); *see also United States v. Hall*, 653 F.2d 1002, 1005-6 (5th Cir. 1981) (excluding evidence that was not probative of a proposition “that is of consequence to the determination of the action”) (citation omitted).   In other words, irrelevant evidence does not “hav[e] any tendency to make the existence of any fact that is of consequence to the determination of th[is] action more probable or less probable than it would be without the evidence.”  Fed. R. Evid. 401.  Even if evidence is relevant, however, it should be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time, as provided in Federal Rule of Evidence 403.

4

## ARGUMENT

I.  **THE DOJ'S COMBINED CONDUCT DAMAGES THEORY SHOULD BE REJECTED BECAUSE IT IS INCONSISTENT WITH THE PLAIN MEANING OF THE FALSE CLAIMS ACT.**

The combined conduct theory seeks to hold Roxane liable for damages attributable to the conduct of the Dey Defendants.    (*See* Dkt. No. 6585, DOJ Consol. Mem., 16)  It should be rejected outright because it is contrary to the plain meaning of the FCA's damages provision. *See Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2128 (2008)  ("'[W]e start, as always, with the language of the statute.'" (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000))).

While the government need not prove damages in a FCA case, *Rex Trailer Co. v. United States*, 350 U.S. 148, 153, n.5 (1956); *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991), when actual damages are sought, the statute requires the government to prove such damages by a "preponderance of evidence."  31 U.S.C. § 3731(d).  And, critically, with respect to damages, the plain language of the FCA expressly limits recovery to the loss actually sustained "because of the act" of that particular defendant. Specifically, the FCA provides:

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, *plus 3 times the amount of damages which the Government sustains because of the act of that person* . . . .

31 U.S.C. § 3729 (emphasis added).  Thus, damages are limited to those caused by the specific "act of" the defendant. *Id.*

The combined conduct theory rewrites this limiting clause, dramatically altering the statute's plain meaning in the process, by seeking to hold Roxane liable for treble damages allegedly caused by the independent act of **another person**. The theory is thus fundamentally at odds with the plain meaning of the restrictive, "because of the act" language. It is also impermissible under the Supreme Court's requirement that the FCA be interpreted by its plain meaning. *Allison Engine Co.*, 128 S. Ct. at 2125 (reversing Court of Appeals because its interpretation of the FCA "impermissibly deviate[d] from the statute's language").

As this Court has also observed, "[t]he Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute . . . has a plain and ordinary meaning, courts need look no further and should apply [the statute] as it is written." *Commonwealth v. Mylan Labs.*, 608 F. Supp. 2d 127, 141 (D. Mass. 2008) (quoting *United States v. Lachman*, 387 F.3d 42, 50 (1st Cir. 2004)); *cf. United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 322 n.20 (D. Mass. 2009) (giving plain meaning to first-to-file rule under FCA). The "plain meaning" principle is especially true here, as Plaintiffs seek more than a billion dollars of damages under their erroneous and unprincipled interpretation of a quasi-criminal, punitive statute that provides for automatic trebling. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-86 (2000). Accordingly, the Court should enforce the FCA as written by Congress—not as the DOJ seeks to rewrite it—and reject the combined conduct theory.

## II.   IN ADDITION, THE DOJ'S COMBINED CONDUCT DAMAGES THEORY IGNORES THE LAW OF CAUSATION AND THE RECORD IN THIS CASE.

While the Court need not look any further than the language of the FCA to reject Plaintiffs' argument, common law principles of causation provide no refuge for the theory either. The "because of the act" language of the FCA makes clear that to recover damages the

6

government must satisfy the element of causation.  *See, e.g.*, *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714-15 & n.17 (10th Cir. 2006); *United States ex rel. Franklin v. Parke-Davis*, 2003 WL 22048255, at **4-6 (D. Mass. Aug. 22, 2003). And, in advancing its combined conduct theory, the DOJ has repeatedly argued that causation under the FCA "generally involves application of common-law tort principles."  (Dkt. No. 6585, DOJ Consol. Mem., 16; Dkt. No. 6660, DOJ Consol. Reply Mem., 6); *see also United States v. Hibbs*, 568 F.2d 347, 349 (3rd Cir. 1977) (holding "traditional principles of tort law" apply to causation for damages under the FCA); *Parke-Davis*, 2003 WL 22048255, at **4-6.   To establish damages under the common law, however, the defendant's challenged conduct must be the cause-in-fact of the plaintiff's injury, and it must also be appropriate to hold the defendant legally responsible for that injury.  *See, e.g., Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52-53 (1st Cir. 1997) (concluding the plaintiff's evidence did not establish the "basic notions of tort causation" where it suffered from proximate causation problems and fell short with regard to demonstrating the "but for" aspect of causation) (citing RESTATEMENT (SECOND) OF TORTS § 432 (1965)); *Clement v. United States*, 980 F.2d 48, 54 (1st Cir. 1992) ("Causation-in-fact is, by definition, a factual inquiry which requires a court to determine if an injury would not have occurred but for a defendant's negligence, or, in the situation where there are two or more causes, ***each of which by itself is sufficient to bring about an injury***, whether the defendant's conduct was a substantial factor in bringing about the injury.") (citing RESTATEMENT (SECOND) OF TORTS § 432) (emphasis added)[3]; *Parke-Davis*, 2003 WL 22048255, at *4 ("Causation in tort

---

[3] Section 432(2) provides "if two forces are actively operating, one because of the actor's [tortious conduct], the other not because of any misconduct on his part, ***and each of itself is sufficient to bring about harm to another***, the actor's [tortious conduct] may be found to be a substantial factor in bringing it about."  RESTATEMENT (SECOND) OF TORTS § 432 (emphasis added).

7

law is generally divided into two concepts: causation in fact, or actual causation, and proximate or legal causation.") (Saris, J.); *see also* PROSSER & KEETON ON TORTS § 42, at 272-73 (5th ed. 1984) ("Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for the injury.") (internal footnote omitted).

Yet the DOJ's combined conduct theory ignores that under the common law "causation is binary, comprising causation in fact and proximate (or legal) causation."[4] *See Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990). (*See* Dkt. No. 6585, DOJ Consol. Mem., 16 (analyzing legal causation); Dkt. No. 6660, DOJ Consol. Reply Mem., 6-7 (same); Ex. A, 10/20/2009 Hr'g Tr. 26-27) The theory fails to satisfy either prong of causation. First, the combined conduct theory fails to make any inquiry into or otherwise account for factual causation. Second, the DOJ erroneously seeks to hold Roxane legally responsible for damages arising from another independent actor's alleged fraudulent conduct, failing to satisfy the legal causation standard. The DOJ's combined conduct theory should be precluded—it is legally wrong under the common law, irrelevant, factually unsupported, and highly prejudicial. *See* Fed. R. Evid. 401-403.

### A.   For The Arrays After The Third Quarter Of 2001, The Combined Conduct Theory Erroneously Seeks To Hold Roxane Responsible For Damages That Were Not The Effect Of Its Statements.

By design, the DOJ's combined conduct theory—which aggregates the joint impact of independent actors' separate actions—fails to analyze independently "the relationship between the [defendant's alleged] unlawful act and the injury ultimately sustained." *Hibbs*, 568 F.2d at

---

[4] The Roxane Defendants will be entitled to jury instructions on both the legal and factual causation prongs of causation for liability and damages.

8

351.   It ignores that the issue of causation must be evaluated against a defendant's individual conduct.  *Mylan Labs.*, 608 F. Supp. 2d. at 144; *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d. 20, 49 (D. Mass. 2007); *United States v. President & Fellows of Harvard College*, 323 F. Supp. 2d 151, 186 (D. Mass. 2004).  But to establish causation, the DOJ must show that "but for" Roxane's conduct, the government would not have suffered its claimed loss.

The DOJ cannot meet this burden or show that it would not have suffered damages "but for" Roxane's conduct for any array after the third quarter of 2001.[5]  Indeed, for these arrays Roxane's AWPs, by themselves, have no impact on the generic median calculated by the carriers.  (Ex. B)  In other words, for every quarter after the third quarter of 2001, the generic median would have been the same even if Roxane had supplied the AWPs created by the DOJ expert.  (*Id.*; Ex. A, 10/20/09 Hr'g Tr. 25)  Thus, there is no loss causation for any damages attributable to these quarters.

---

[5] For one of the four Durable Medical Equipment Regional Carriers ("DMERCs"), AdminaStar Federal, Plaintiffs cannot meet this burden even earlier, beginning with the third quarter of 2000.  (*See* Dkt. No. 6291, Rox. Defs.' Mem. In Supp. of Partial Summ. J., 23-24)

9

For example, in the fourth quarter of 2001, DMERC B (AdminaStar Federal) calculated a $3.52 median for ipratropium bromide (J-Code 7644) based on the following array:

| MANUFACTURER DISTRIBUTOR | QUANTITY | NDC | AWP PRICE | PRICE PER MG | ARRAY ALL |
|---|---|---|---|---|---|
| Phys Total Care | 2.5ml 60s | 54868-4082-00 | 53.95 | 1.80 | 1.80 |
| Phys Total Care | 2.5ml 25s | 54868-4082-01 | 26.31 | 2.10 | 2.10 |
| Roxane | 2.5ml 25s | 00054-8402-11 | 44.06 | 3.52 | 3.52 |
| Roxane | 2.5ml 30s | 00054-8402-13 | 52.80 | 3.52 | 3.52 |
| Roxane | 2.5ml 60s | 00054-8402-21 | 105.74 | 3.52 | 3.52 |
| Dey | 2.5ml 30s | 49502-0685-33 | 52.80 | 3.52 | 3.52 |
| Dey | 2.5ml 60s | 49502-0685-60 | 105.60 | 3.52 | (3.52) |
| Dey | 2.5ml 25s | 49502-0685-03 | 44.10 | 3.53 | 3.53 |
| Zenith Goldline | 2.5ml 25s | 00172-6407-44 | 44.10 | 3.53 | 3.53 |
| Zenith Goldline | 2.5ml 60s | 00172-6407-49 | 118.75 | 3.96 | 3.96 |
| Alpharma USPD | 2.5ml 60s | 00472-0751-60 | 118.80 | 3.96 | 3.96 |
| Alpharma USPD | 2.5ml 25s | 00472-0751-23 | 56.50 | 4.52 | 4.52 |
| Alpharma USPD | 2.5ml 30s | 00472-0751-30 | 67.80 | 4.52 | 4.52 |
| MEDIAN | | | | | $ 3.52 |

(Ex. B at 22)

As shown below, if Roxane's AWPs in the carrier array were replaced with the figures calculated by the DOJ expert, the generic median would remain at $3.52:

| MANUFACTURER DISTRIBUTOR | QUANTITY | NDC | AWP PRICE | PRICE PER MG | ARRAY ALL |
|---|---|---|---|---|---|
| Roxane | 2.5ml 60s | 00054-8402-21 | 22.88 | 0.76 | 0.76 |
| Roxane | 2.5ml 25s | 00054-8402-11 | 10.11 | 0.81 | 0.81 |
| Roxane | 2.5ml 30s | 00054-8402-13 | 12.57 | 0.84 | 0.84 |
| Phys Total Care | 2.5ml 60s | 54868-4082-00 | 53.95 | 1.80 | 1.80 |
| Phys Total Care | 2.5ml 25s | 54868-4082-01 | 26.31 | 2.10 | 2.10 |
| Dey | 2.5ml 30s | 49502-0685-33 | 52.80 | 3.52 | 3.52 |
| Dey | 2.5ml 60s | 49502-0685-60 | 105.60 | 3.52 | (3.52) |
| Dey | 2.5ml 25s | 49502-0685-03 | 44.10 | 3.53 | 3.53 |
| Zenith Goldline | 2.5ml 25s | 00172-6407-44 | 44.10 | 3.53 | 3.53 |
| Zenith Goldline | 2.5ml 60s | 00172-6407-49 | 118.75 | 3.96 | 3.96 |
| Alpharma USPD | 2.5ml 60s | 00472-0751-60 | 118.80 | 3.96 | 3.96 |
| Alpharma USPD | 2.5ml 25s | 00472-0751-23 | 56.50 | 4.52 | 4.52 |
| Alpharma USPD | 2.5ml 30s | 00472-0751-30 | 67.80 | 4.52 | 4.52 |
| REVISED MEDIAN | | | | | $ 3.52 |

10

(*Id.* at 23)  Thus, Roxane's AWPs, standing alone, cause *no change in the median price*.  The DOJ concedes this point: "after the third quarter of 2001, . . . [the DOJ] can change the AWPs of Roxane down to 1 cent[], and it still doesn't change the outcome, the median calculation." (Ex. A, 10/20/2009 Hr'g Tr. 25 (counsel for DOJ admitting that after the third quarter of 2001 "Roxane's products in isolation "do not affect the median"))

To suggest "proof" of causation in those time-periods where none otherwise exists for Roxane, the DOJ invokes its combined conduct theory.  This legally bankrupt theory replaces *both* Roxane's and Dey's AWPs in the carrier array with the DOJ-created AWPs, purportedly based on the "average selling prices" of their respective products, for each company.  Thus, under the combined conduct theory, the same array listed above becomes the following:

| MANUFACTURER DISTRIBUTOR | QUANTITY | NDC | AWP PRICE | PRICE PER MG | ARRAY ALL |
|---|---|---|---|---|---|
| Roxane | 2.5ml 60s | 00054-8402-21 | 22.88 | 0.76 | 0.76 |
| Roxane | 2.5ml 25s | 00054-8402-11 | 10.11 | 0.81 | 0.81 |
| Roxane | 2.5ml 30s | 00054-8402-13 | 12.57 | 0.84 | 0.84 |
| Dey | 2.5ml 30s | 49502-0685-33 | 12.55 | 0.84 | 0.84 |
| Dey | 2.5ml 60s | 49502-0685-60 | 25.14 | 0.84 | 0.84 |
| Dey | 2.5ml 25s | 49502-0685-03 | 10.81 | 0.86 | 0.86 |
| Phys Total Care | 2.5ml 60s | 54868-4082-00 | 53.95 | 1.80 | 1.80 |
| Phys Total Care | 2.5ml 25s | 54868-4082-01 | 26.31 | 2.10 | 2.10 |
| Zenith Goldline | 2.5ml 25s | 00172-6407-44 | 44.10 | 3.53 | 3.53 |
| Zenith Goldline | 2.5ml 60s | 00172-6407-49 | 118.75 | 3.96 | 3.96 |
| Alpharma USPD | 2.5ml 60s | 00472-0751-60 | 118.80 | 3.96 | 3.96 |
| Alpharma USPD | 2.5ml 25s | 00472-0751-23 | 56.50 | 4.52 | 4.52 |
| Alpharma USPD | 2.5ml 30s | 00472-0751-30 | 67.80 | 4.52 | 4.52 |
| REVISED MEDIAN | | | | | $1.80 |

(*Id.* at 23)  This same pattern holds true for every array for all four DMERCs after the third quarter of 2001.  (Ex. B)

The DOJ tries to sidestep the fact that it is unable to prove causation-in-fact by referencing the "substantial factor" test of causation, arguing that a defendant's conduct need only be an undefined "substantial factor" in bringing about a particular harm.  (*See* Dkt. No.

11

6660, DOJ Reply Consol., 6-7)   As noted above, the First Circuit has relied upon the Restatement (Second) of Torts when construing common law principles of causation and this Court has looked to the Restatement when construing principles of causation under the FCA. *Parke-Davis*, 2003 WL 22048255, at *4.  And the Restatement makes clear that the causation inquiry does not dispense with the "but for" requirement in multiple cause scenarios.  *See supra* n.3 (quoting RESTATEMENT (SECOND) OF TORTS § 432).  As the Restatement notes, where courts have applied the "substantial factor" test in the context of factual causation, they have done so in the rare situation where ***each*** of multiple independent causes ***was sufficient to cause*** an injury. *See* RESTATEMENT (SECOND) OF TORTS § 432(2).  In other words, proof of damages again requires the damages to be caused by the specific act of the defendant.

The DOJ's own authority makes this clear.   In its consolidation filings, the DOJ principally relies on *Clement v. United States*, 980 F.2d 48 (1st Cir. 1992) to support its novel theory of damages.   (Dkt. No. 6660, DOJ Consol. Reply Mem., 6-7)   However, *Clement* illustrates precisely why the DOJ's theory and arguments fail.  In *Clement*, the decedent's sister brought an action against the United States under the Federal Tort Claims Act, alleging that her brother's suicide was caused by the negligent conduct of the Veteran's Administration Hospital. Under these circumstances, the district court correctly analyzed the issue of causation under Maine law, (which followed traditional causation principles of the common law), stating that a defendant's negligent conduct is actionable only if the negligence in fact caused the injury and the injury was reasonably foreseeable.  *Id.*   The First Circuit, in affirming the lower's court's decision, found that "[c]ausation-in-fact is . . . a factual inquiry which requires a court to determine if an injury would not have occurred but for a defendant's negligence, or, in the situation where there are two or more causes, ***each of which by itself is sufficient to bring about***

12

*an injury*, whether the defendant's conduct was a substantial factor in bringing about the injury."

*Clement*, 980 F.2d at 54 (quoting RESTATEMENT (SECOND) OF TORTS § 432) (emphasis added).

Although the hospital was found to have breached its standard of care, the court concluded that

the hospital's negligence did not in fact cause the decedent's suicide—in other words, it was not

a "but for" cause. Similarly, here, the DOJ admits that it cannot establish that Roxane's conduct

"by itself [was] sufficient to bring about [the government's alleged loss]." *See id.* (*See also*

Ex. A, 10/20/2009 Hr'g Tr. 25)

While there can be multiple "but for" causes of a particular injury, unless a particular

cause is a "but for" cause, it cannot be a factual cause of the injury. In short, the substantial

factor test does not supplant the "but for" test in the ordinary situation where multiple causes

combine to bring about a particular injury, but any one defendant's conduct alone would have

been insufficient. *See* RESTATEMENT (SECOND) OF TORTS § 432(2). Thus, the DOJ cannot

recover damages without any evidence that the government would ***not*** have been damaged in the

specific amount claimed "but for" Roxane's challenged conduct. The DOJ cannot make this

showing and the combined conduct theory cannot circumvent this black letter law. Accordingly,

Roxane cannot be held liable for any Medicare damages after the third quarter 2001.

**B.      Even In Pre-Fourth Quarter 2001 Arrays, The DOJ Improperly Seeks To Hold Roxane Responsible For Alleged Damages Resulting From The Impact Of Dey's Conduct.**

In addition, the DOJ seeks to hold Roxane responsible for damages attributed to Dey's

independent actions. For example, in the fourth quarter of 1998, one of the DMERCs used an

array of six ipratropium bromide AWPs, three of which belonged to Roxane. (Ex. C) The DOJ

admits that if it replaced only Roxane's AWPs with the re-calculated AWPs, the median amount

13

would change to $2.44.  (*Id.*)  However, to inflate its damages claim, one of the DOJ's damage models substitutes both Roxane's and Dey's published AWPs with the DOJ's re-imagined AWPs, reducing the median to $1.63.  (*Id.*)  The DOJ seeks recovery for other pre-2001 quarters under a similar application of its combined conduct theory, inflating its damages by over a half of a billion dollars.

The DOJ's attempt to hold Roxane liable for damages resulting from Dey's conduct finds no support in the language of the FCA or common law principles regarding causation.  *See* 31 U.S.C. § 3729 (a) (limiting damages to the three times amount of loss "which the Government sustains *because of the act of that person* . . ."); RESTATEMENT (SECOND) OF TORTS § 432; *Parke-Davis*, 2003 WL 22048255, at *4 (plaintiff must prove that the injury was sufficiently linked to the defendant's conduct to warrant attaching responsibility for the injury to the conduct).  For these arrays, the DOJ must show that all of the damages it seeks were factually and legally caused by Roxane's conduct.  It can do neither.

*First*, Roxane's conduct cannot be the "but for" cause of any damages resulting from the alleged conduct of another manufacturer.  *See United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 428 (D.C. Cir. 2002) (affirming the district court's decision in FCA case to adopt a "but for" measure of damages tied to the defendant's specific omissions); *United States v. McLeod*, 721 F.2d 282, 285 (9th Cir. 1983) (holding "but for" the defendant's conduct, the government would not have suffered its claimed losses); *cf. United States v. Bornstein*, 423 U.S. 303, 313 (1976) (holding a correct application of the FCA's penalty provision focuses in each case upon the specific conduct of the defendant).  The DOJ admits that Roxane alone did not cause all of the alleged damages it seeks.  (Ex. A, 10/20/09 Hr'g Tr. 25; Dkt. No. 6660, DOJ Consol. Reply

Mem., 6-7)  Thus, the DOJ cannot establish factual causation for any damages associated with the conduct of another manufacturer.

      *Second*, because the FCA is a quasi-criminal, punitive statute, courts typically apply a proximate causation standard to "narrow, rather than enlarge, the field of actions for which FCA liability may be imposed."  *Sikkenga*, 472 F.3d at 715 n.17.  In fact, this Court too limits causation under the FCA, requiring that a defendant must actively participate in the process of submitting the allegedly false claims at issue in order to be held liable.  *See President & Fellows of Harvard College*, 323 F. Supp. 2d at 186.  And when, as is the circumstance here, the alleged misconduct of a third party causes damages that would not have resulted from the defendant's actions alone, the third party's actions are an intervening cause that cuts off the defendant's liability.  *Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 11 (1st Cir. 1998) (granting defendant summary judgment under FCA because legal malpractice was an intervening cause that cut off defendant's liability for negligent failure to obtain foreign patents); *United States ex rel. Kinney v. Hennepin County Med. Ctr.*, 2001 WL 964011, at *10 (D. Minn. Aug. 22, 2001) (dismissing FCA claim for lack of causation where an automated billing system, not defendant's initial certifications, resulted in filing claims under an improper Medicare billing code); *United States ex rel. Fago v. M & T Mortg. Corp.*, 518 F. Supp. 2d 108, 122 (D.D.C. 2007) (granting defendant summary judgment under FCA because mortgage borrower defaults were intervening cause that cut off defendant's liability for forged signatures on loan applications).

      The DOJ does not even allege—let alone have evidence proving—that Roxane "actively participated" in Dey's pricing and marketing decisions, or that Dey's conduct was foreseeable to Roxane.  Nor is there any evidence that Roxane otherwise proximately caused the damages that purportedly flowed from Dey's conduct, as alleged in the separately pled Dey complaint.  In fact,

15

in this case, the DOJ's pled theory is that Roxane's conduct allegedly caused "*its customers* to submit claims for fraudulently inflated Medicare . . . reimbursement." (Dkt. No. 5733, Rox. First Am. Compl. ¶ 5)  Elsewhere in its complaint, the DOJ alleged that the "claims submitted *by Roxane's customers* were based on the inflated AWPs" and that Medicare payment amounts "far exceeded" the actual cost of the drugs Roxane sold to its customers.  (*Id.* ¶¶ 44, 60; *see also id.* ¶ 70 (alleging Roxane knowingly caused to be presented false claims for payment or approval to the United States "for the [Roxane] drugs listed in [complaint] Exhibit A"))  In other words, the DOJ's pled theory is tethered to Roxane's conduct alone and the impact that conduct allegedly had on Medicare reimbursement.  *Nowhere* in the complaint pled against Roxane did the DOJ allege damages (or liability) based on Dey's AWPs, or the impact Dey's AWPs allegedly had on Medicare payments once Dey's customers submitted claims for reimbursement.  In any event, because the FCA attaches liability to the "claim for payment" and requires a false statement to have been "made with the purpose and effect of inducing the Government immediately to part with money," Roxane cannot be held liable for Dey's conduct.  *See United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995) (quotation omitted).  Simply put, Roxane's AWPs were not made with the purpose that Dey's customers would receive reimbursement from the government, nor has that ever been alleged, let alone proven.  *See Allison Engine*, 128 S. Ct. at 2125.

There is no basis upon which to conclude that the DOJ's claims against Dey with respect to the marketing and sale of Dey's drugs were foreseeable *to Roxane*.  In short, Dey's alleged wrongful conduct is the quintessential intervening cause that cuts off Roxane's liability for any damages associated with Dey's (or any other defendant's) conduct.  *See Russo*, 140 F.3d at 11 (attorney's legal malpractice cut off defendant's liability); *see also* RESTATEMENT (SECOND) OF TORTS §§ 441-442 (1965).

## CONCLUSION

For the foregoing reasons, the Roxane Defendants respectfully request that the Court exclude from the trial and argument in this case all reference to the "combined conduct" theory of damages.


Dated: March 12, 2010

/s/ John W. Reale
Helen E. Witt, P.C.
Anne M. Sidrys, P.C.
Eric T. Gortner
John W. Reale
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel for Defendants Boehringer Ingelheim Roxane, Inc., f/k/a Roxane Laboratories, Inc., Boehringer Ingelheim Corporation, and Boehringer Ingelheim Pharmaceuticals, Inc.*

17

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on March 12, 2010, a copy to LexisNexis File and Serve for posting and notification to all parties.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the Roxane Defendants request oral argument on the issues raised in this Motion, which they believe will assist the Court in deciding this motion and request an opportunity to present one.

                    /s/ John W. Reale