# Exhibit 4

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al.*
*v. Dey, Inc., et al.*, **Civil Action No. 05-11084-PBS**

**Exhibit to the March 12, 2010 Declaration of Neil Merkl in Support of**
**Dey Defendants' Motion *In Limine* to Exclude from Evidence the Reports and**
**Testimony of Theodore R. Marmor, Ph.D.**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>) MDL No. 1456<br>) Civil Action No. 01-12257-PBS<br>) |
| THIS DOCUMENT RELATES TO: | )<br>) Hon. Patti B. Saris<br>) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc. et al.,* CIVIL ACTION NO. 06–CV–11337-PBS | )<br>)<br>)<br>) |
| *United States of America, ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corporation, et al.,* CIVIL ACTION NO. 07-10248-PBS | )<br>)<br>)<br>)<br>) |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc.,* Civil Action No. 06–11337-PBS | )<br>)<br>) |

**Supplemental Expert Report of Professor Theodore R. Marmor, PhD**

This addendum updates my previous report to address the applicability of the history and

models used in that report to the Dey and Roxane cases.

1.      First, based on my review of materials specific to the Dey and Roxane cases, I conclude

that the opinions offered in the original report are equally applicable to both these cases. This is

not surprising since to a significant degree, the data necessary to render my original opinions

consist of historical facts and realities of government action that do not necessarily vary by case.

2.      Second, and more specifically, the questions asked in this case and in the prior matter

address the same issues. These include but are not limited to what federal policy was and how it

evolved over time from the origins in the Medicare/Medicaid legislation of 1965 to at least the

Medicare Modernization Act of 2003. The record, extensive already as of the June 2008



DEPOSITION EXHIBIT
Marmor 2
2 /11 /09
Rich Germosen, CSR, CSR-R, RPR, CRR

submission of my report, has been amplified by later depositions, complaints, and responses. Nevertheless, the basic complaint remains unchanged, and the basic defense responses do as well. What remains contested is how to array the relevant facts and what counts as a justified ordering of those facts and their interpretation. My opinions aim to put into context documents that could, in a vacuum, be read in misleading ways.

3.     Third, I apply the same conceptual approaches described in the original report in reviewing additional materials from the three cases. My goal here is to clarify the relevance of the "models" of analysis presented in the original report to the questions I have been asked to answer.

4.     The central question presented to me here and before is what was the policy of the federal government over time toward reimbursement of pharmaceutical products -- broadly construed -- in both the Medicare and Medicaid programs. That historical task was directed at the origins, development, and character of that policy in the time periods at issue in each of the three defendant firms. That time period varies somewhat among the three, but the description of the policy development is more extensive.

5.     The justification for this longer historical narrative arises from the accepted application of what I have called a model two analysis of governmental behavior over time. To understand what was the applicable policy at any particular time requires attention to what that policy has been. The standard operating procedures--expressed formally in legislation and/or guiding regulations---are both necessary for organizations to do their jobs and required to answer questions like the one just posed. The model, then, is one widely employed method of ordering the facts about complex interactions between government and commercial firms over long periods of time.

2

6.     The second set of questions have to do with whether the facts about governmental investigations of drug reimbursement in federal and state programs alter my opinions. Here the level of detail presented in the record is substantial, and extended some by more recent depositions. But the claims remain roughly the same. That government organization units -- OIG, GAO, congressional committees, CMS, state Medicaid units, and more---were concerned about inflation in pharmaceutical prices is not disputed. In dispute is what the combination of attention and the absence of fundamental statutory reform until 2003 means to the narrative and its implications. To make sense of that factual and interpretive dispute requires historical review of a vast body of evidence. At any one time, ordinary modes of political analysis work to describe how a particular dispute took place. This, for instance, would be relevant to understanding the details of how Ven-A-Care conducted what I described as its campaign to convince various governmental organizations that blameworthy manipulation of pricing data was taking place in both Medicare and Medicaid. Or, there is ample evidence of disagreement over the congressional reactions to efforts by either HCFA or the Department of Justice to change reimbursement practices. Any of such examples can be presented through what the report terms a model three account of how particular bargains among actors generate a momentary result. The claim is that accounts structured around clearly stated questions and an articulated logic of reasoning will give a more accurate and dependable narrative. Going into great detail is crucial if the issue is how developments took place. What counts as a defensible inference from these developments is what the third mode of analysis is meant to assist.

7.     Finally, there is the question of whether the defendants' claims of government knowledge challenge the conclusions of my report. My narrative incorporates the claims about government investigations and the role of Ven-A-Care rather than ignores or disputes those claims. But my

3

understanding of their role in these cases depends on my rejection of what I have termed a Model

one account of what 'the government' knew and approved, and what defendants relied upon. I

have found no documentary evidence that firms relied on government knowledge in the way the

defendants allege. There appears to be no documentary evidence supporting the conclusion that

the relevant government officials approved, let alone acquiesced in the pricing behavior of the

defendant firms. Were that the case, one would have imagined by this time that evidence of such

explicit bargains would have surfaced. There are, of course, many examples of problems with

drug pricing being identified. And there were many suggestions of improvement offered over

time. But that does not lead to an inference of acquiescence and approval according to widely

accepted standards of political science analysis of governmental behavior. Put in terms of model

three, if it were true that the government approved of the drug firms' pricing conduct, one would

expect there to be evidence of particular interactions raising the issue of approval and indicating

acceptance of the status quo. That is not what the record in these cases supports factually, nor is

it what the historical record more generally indicates. The failure of many attempts to reform

then cannot be evidence, in itself, of approval of any kind. On its own, inaction has no clear

normative or evidentiary implication for evaluating reimbursement conflicts. Yet, a good deal of

the evidence presented in these cases/disputes concentrates on showing just how much attention

there was over time to the problems of paying for drugs in Medicare and Medicaid.

8.      In conclusion, my opinion is that my original Abbott report remains equally relevant to

the Dey and Roxane cases. Below is a list of the material I have recently reviewed in coming to

these conclusions about the three cases.

_Theodore L. Marmor_     Date: January 21, 2009

Theodore R. Marmor, PhD

## STATE MEDICAID DEPOSITION LIST

| Deponent | State | Date |
|---|---|---|
| Anderson, Jesse | OR | 12/16/2008 |
| Avarista, Paula | RI | 12/4/2008 |
| Bridges, Suzette | AR | 12/10/2008 |
| Bridges, Suzette | AR | 12/11/2008 |
| Campana, Dave | AK | 8/21/2008 |
| Chapman, Allen | CO | 12/15/2008 |
| Cheloha, Gary | WA | 12/2/2008 |
| Clifford, Margaret | NH | 10/29/2008 |
| Davis, Myra | WA | 12/3/2008 |
| Denemark, Cynthia | DE | 12/10/2008 |
| Duarte, Charles | HI Medicaid | 5/21/2008 |
| Dubberly, Jerry | GA | 12/15/2008 |
| Ferrand, Lisa | NH | 10/28/2008 |
| Fine, Joseph | MD | 12/9/2008 |
| Gorospe, Kevin | CA | 12/3/2008 |
| Haase, Anne | ND | 12/1/2008 |
| Hautea-Wimpee, Ayuni | WA | 11/24/2008 |
| Hautea-Wimpee, Ayuni | WA | 12/2/2008 |
| Hayashi, Keith | VA | 12/4/2008 |
| Hiramatsu, Aileen | HI | 5/1/2008 |
| Hiramatsu, Aileen | HI | 5/2/2008 |
| Homar, Roxanne | WY | 12/2/2008 |
| Homar, Roxanne | WY | 12/3/2008 |
| Iversen, Larry | SD | 12/15/2008 |
| Jones, Colleen | WY | 12/3/2008 |
| Joyce, Brendan | ND | 12/12/2008 |
| Kenyon, James | MI | 3/25/2008 |
| Ketchum, Kathy | OR | 12/15/2008 |
| Kramer, Sandra | MI | 3/25/2008 |
| Terreboone, Mary | LA | 11/7/2008 |
| Milliken, Leslie | WY | 12/3/2008 |
| Nesser, Nancy | OK | 12/12/2008 |
| Stevens, Robert | NM | 12/15/2008 |
| O'Connor, Frank | DE | 12/10/2008 |
| Parker, James | IL | 11/18/2008 |
| Ridout, 30.b.1 | NC | 12/5/2008 |
| Rugg, Ann | VT | 12/15/2008 |
| Shirley, Carl Mark | IN | 12/2/2008 |
| Shirley, Carl Mark | IN | 12/3/2008 |
| Tetkoski, Frank | MD | 12/11/2008 |
| Tomlinson, Bryan | VA | 11/3/2008 |
| Tomlinson, Bryan | VA | 11/4/2008 |
| Turk, Omel | HI | 5/14/2008 |
| Vaccaro, Edward | NJ | 12/2/2008 |
| Vaccaro, Edward | NJ | 12/3/2008 |
| Weeks, Lisa | NC | 10/21/2008 |
| Wells, Jerry | FL | 12/15/2008 |
| Young, John | RI | 12/3/2008 |

**Marmor Supplemental List of Materials Considered**

**Depositions**

| Date | Individual Deposed | Affiliation |
|---|---|---|
| 10/30/2001 | Charles Rice | Dey CEO |
| 11/7/2002 | Charles Rice | Dey CEO |
| 3/24/2003 | Charles Rice | Dey CEO |
| 12/15/2008 | Jerry Wells | Florida Medicaid Bureau Chief |
| 5/9/2007 | Mark Jones | Ven-a-Care Representative |
| 3/18/2008 | Mark Jones | Ven-a-Care Representative |
| 3/19/2008 | Mark Jones | Ven-a-Care Representative |
| 12/8/2008 | Mark Jones | Ven-a-Care Representative |
| 12/9/2008 | Mark Jones | Ven-a-Care Representative |
| 2/13/2008 | Raymond Schwartz | Managed Healthcare Associates |
| 6/19/2007 | Robert Vito | OIG |
| 6/20/2007 | Robert Vito | OIG |
| 2/5/2008 | Robert Vito | OIG |
| 2/6/2008 | Robert Vito | OIG |

**Additional Documents**

| Date | Affilated Company | Title | Notes |
|---|---|---|---|
| 4/15/2003 | Dey | Complaint for Injunctive Relief, Damages and Other Relief | Dey suit against First Databank and Medispan for lowering their AWPs starting 2003 |
| 8/24/2006 | Dey | United States Complaint | Dey is being sued for making fraudulent claims on the prices of 3 drugs from 12-31-92 - 2004 |
| 6/23/2008 | Dey | Responses and Objections to Plaintiff's First Set of Interrogatories | US/VAC vs. Dey: Interrogatory responses by Dey |
| 7/3/2008 | Dey | Responses and Objections to Interrogatory Number 22 | Dey requests the plaintiff's not to contact current or former employees and refuse to give out contact info |
| 9/29/2008 | Dey | United States First Amended Complaint | Amended Original Complaint against Dey, time period in question remains 12-31-92 - 2004 |
| 2/9/2007 | Roxanne | United States Complaint | Roxanne is being sued for making fraudulent claims on the prices of 9 drugs from 1996-2004 |
| 11/14/2008 | Roxanne | Responses and Objections to Plaintiff's Second Interrogatories | US/VAC vs. Roxanne: Interrogatory responses by Roxanne |
| 12/2/2008 | Roxanne | United States First Amended Complaint | Amended Original Complaint against Roxanne, time period in question remains 1996-2004 |
| 12/23/2008 | Numerous | Massachusetts vs. Mylan Laboratories: Memorandum and Order | Sans Denies Summary Judgement requested by defendants: Explanation and Order |
| 1/15/2009 | Abbott | United States Ordered Responses to Abbott First Set of Revised Requests for Admission | Responses to Abbott Requests by US Government and Ven-a-Care |

Amicus Curiae Brief of the United States in Response to the    US and Ven-A-Care vs. Activis Mid Atlantic technical legal
Defendants Motion to Dismiss                                     efforts to get the case dismissed

1/15/2009 Numerous