# Exhibit 1

# Boehringer Ingelheim Corporation and Boehringer Ingelheim Pharmaceuticals, Inc.'s Reply Memorandum in Support of Their Motion to Bifurcate the Corporate Veil-Piercing Issues for Trial

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No.1456<br><br>Master File No. 01-CV-12257-PBS<br>Subcategory No. 06-CV-11337-PBS |
| THIS DOCUMENT RELATES TO:<br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., et al. v. Boehringer Ingelheim Corporation, et al.*, Civil Action No. 07-10248-PBS | Judge Patti B. Saris<br><br>Magistrate Judge Marianne B. Bowler |

### BOEHRINGER INGELHEIM CORPORATION AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S REPLY MEMORANDUM IN SUPPORT OF THEIR <u>MOTION TO BIFURCATE THE CORPORATE VEIL-PIERCING ISSUES FOR TRIAL</u>

Helen E. Witt, P.C.
Anne M. Sidrys, P.C.
Eric T. Gortner
John W. Reale
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

*Counsel for Defendants*
*Boehringer Ingelheim Corp. and,*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

Dated: March 12, 2010

## INTRODUCTION

The Government recently urged this Court to bifurcate the Medicare claims and drugs from the Medicaid claims and drugs to make the trial "much shorter and more manageable." (*See* 1/19/10 Consol. Hr'g Tr., 13; *see also* Dkt. No. 6660, DOJ Reply in Supp. of Mot. to Consol., 9) Yet now, the Government opposes bifurcation of the veil-piercing claims against defendants BIC and BIPI from the underlying False Claims Act ("FCA") claims, even though such bifurcation would avoid serious risks of prejudice to BIC and BIPI, greatly reduce the complexity and time of trial and potentially obviate the need for any trial on the veil-piercing issues. The Government exaggerates the amount of overlapping evidence between the FCA and veil-piercing claims, and its argument that the underlying FCA conduct is relevant to the veil-piercing injustice analysis only highlights the risk of prejudice to BIC and BIPI in a combined FCA and veil-piercing case. BIC and BIPI's Motion to Bifurcate should be granted.

## ARGUMENT

### I. THE VEIL-PIERCING ISSUES SHOULD BE BIFURCATED FOR TRIAL TO AVOID PREJUDICE TO BIC AND BIPI.

As outlined in detail in BIC and BIPI's initial brief, there are at least three ways in which a combined trial of the FCA claims against Roxane, BIC and BIPI, and the veil-piercing claims against BIC and BIPI, could seriously prejudice BIC and BIPI: 1) the veil-piercing evidence may improperly bolster and influence the jury with regard to the direct FCA claims against BIC and BIPI; 2) the primarily Roxane-related FCA evidence will inappropriately affect the jury's findings on the veil-piercing issues; and 3) the jury will be so overwhelmed by the sheer mass and complexity of the combined issues and evidence that it would be tremendously difficult for it to make valid, independent determinations regarding the liabiliy of BIC and BIPI under the two distinct legal theories asserted. (Dkt. No. 6931, BIC/BIPI Memo. in Supp. of Mot. to Bifurcate

the Corp. Veil-Piercing Issues, 5-8) The Government does not even attempt to address the first or third threats of prejudice to BIC or BIPI, either one of which warrants bifurcation on its own.

Moreover, the Government's contention that it is "entitled" to have the jury consider whether to pierce Roxane's corporate veil "in the context of the charged conduct and the extent of the damage defendants caused," (Dkt. No. 6946, DOJ Opp'n to BIC/BIPI Mot. to Bifurcate, 2, 5), misconstrues the application of the veil-piercing test and promotes the precise type of prejudicial use of evidence this motion seeks to avoid. While the veil-piercing analysis incorporates concepts of equity and specifically looks to whether substantial injustice would result from maintaining the corporate form, the relevant "injustice" is that which "would be visited on the litigants ***by recognizing the corporate identity***." *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 22 (1st Cir. 1998) (citation omitted) (emphasis added). It is ***not*** the seriousness of the underlying legal violation or the damages allegedly suffered. In other words, the proper question is whether injustice will result because the corporate form was misused, abused or created for the purpose of avoiding legal obligations or shielding the company from legal liabilities and judgments.[1] *See, e.g., United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 40 (D. Mass. 2000) (quoting *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1981)) (indicating "public convenience, fairness and equity" is not threatened where the parent company did not strip the subsidiary of assets "dreading a future day of reckoning in this case . . . ."); *United States ex rel. Siewick v. Jamieson Science & Eng'g*, 191 F. Supp. 2d 17, 22 & n.5 (D.D.C. 2002) (noting that where a defendant's inability to satisfy a

---

[1]  Professor Macey's testimony is not to the contrary, as the Government implies. *(See* Dkt. No. 6946, DOJ Opp'n to BIC/BIPI Mot. to Bifurcate, 5 n.3) Rather, Professor Macey's testimony only confirms that a corporate veil analysis looks to whether the manner in which the corporate form was used would lead to injustice or inequity. (*See* 5/20/09 Dep. of Jonathan Macey, 272-280 (attached as Exhibit A to DOJ Opp'n to BIC/BIPI Mot. to Bifurcate)).

judgment is not "the result of undercapitalization or other fraud . . . [the] potential inability to execute a monetary judgment against the corporation [is not] an inequity"); *Crane,* 134 F.3d at 25 ("manifest injustice" prong met only when "a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business") (citation omitted); *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry.*, 210 F.3d 18, 25-31 (1st Cir. 2000) (discussing fairness and equity concepts which supported piercing the corporate veil where corporate form was purposefully used to avoid collective bargaining agreement, thereby defeating legislative policies).

Unlike in *Brotherhood of Locomotive Engineers*, and the other cases cited above, there is no allegation and no evidence in this case that BIC or BIPI created Roxane in order to defeat the purposes of the FCA such that the nature of the underlying FCA claims would be relevant to the alter ego analysis. Thus, the facts surrounding Roxane's allegedly "bad acts" in reporting false AWPs and the amount the Government allegedly overpaid as a result are not relevant to evaluating "whether piercing the corporate form is fair or equitable," as the Government contends. (Dkt. No. 6946, DOJ Opp'n to BIC/BIPI Mot. to Bifurcate, 5-6)  Indeed, it is the prejudice that would result from misuse of underlying FCA evidence in this manner that is part of what this motion seeks to avoid.  The fact that the Government would affirmatively promote the improper use of evidence in this way underscores the need to try the FCA claims and the veil-piercing claims separately.

Finally, a cautionary jury instruction will not sufficiently quell the risk of prejudice to BIC and BIPI  inherent in a trial that combines allegations of direct FCA liability and independent corporate veil-piercing claims. *See, e.g., Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063-64 (S.D. Tex. 1996), *abrogated on other grounds by Holmes v. Energy Catering*

*Servs., LLC*, 270 F. Supp. 2d 882, 886 (S.D. Tex. 2003); *Malcolm v. Nat'l Gypsum Co.*, 995 F. 2d 346, 352 (2d Cir. 1993) (noting that despite "the number of precautions the district court took to assure that each case maintained its identity. . . . the sheer breadth of the evidence made these precautions feckless in preventing jury confusion").

## II. SEPARATING THE VEIL-PIERCING ISSUE FOR TRIAL WILL PROMOTE ECONOMY AND EFFICIENCY.

There is no question that severing the veil-piercing claims against BIC and BIPI from the Roxane-focused FCA trial could save significant time, money and judicial and party resources. Because BIC and BIPI's liability under a veil-piercing theory is premised on Roxane's liability under the FCA, trying the FCA claims first may moot the veil-piercing claims entirely. *See Chapman v. Bernard's Inc.*, 167 F. Supp. 2d 406, 417 (D. Mass. 2001); *see also Hewlett-Packard Co. v. Genard, Inc.*, 882 F. Supp. 1141, 1157 (D. Mass. 1995) (bifurcation is appropriate "where a single issue could be dispositive of the entire case"); *Int'l Bhd. of Elec. Workers v. Am. Laundry Mach., Inc.*, No. 1:07-cv-324, 2010 WL 200396, at *1 (S.D. Ohio Jan. 13, 2010) (case cited by the Government stating "[b]ifurcation can be appropriate when, for example, litigation of one issue may eliminate the need for litigation of further issues . . ."). The Government fails even to acknowledge this point in its response. Yet while arguing now that "bifurcation is 'certainly not encouraged,'" (Dkt. No. 6946, DOJ Opp'n to BIC/BIPI Mot. to Bifurcate, 3) the Government itself argued a similar (but far less absolute) point in support of its recent bifurcation proposal. (*See* Dkt. No. 6660, DOJ Reply in Supp. of Mot. to Consol., 9) ("[P]roceeding in this manner will serve the interests of judicial economy because the Medicaid phase of the trial might prove unnecessary.").

In addition, the Government ignores that the vast majority of the evidence relevant to the veil-piercing question is irrelevant to the issue of Roxane, BIC and BIPI's liability under the

FCA and vice-versa. (*See* Dkt. No. 6931, BIC/BIPI Memo. in Supp. of Mot. to Bifurcate the Corporate Veil-Piercing Issues at 5-6). There are large categories of evidence that relate solely to the veil-piercing claims, as the "Background" section in the Government's Response demonstrates. There is nothing about the Government's (incorrect) contention that Roxane was, in effect, looted "during the course of this investigation," (Dkt. No. 6946, DOJ Opp'n to BIC/BIPI Mot. to Bifurcate, 3) or the details of Roxane's 2005 reorganization (*Id.* at 3 n.2) that has anything at all to do with the underlying FCA claims.[2] Likewise, details regarding corporate officers and the make-up and actions of various Boards of Directors, the extent and nature of contractual or other interactions between the companies, and the financial systems, "Trade Relations" functions and shared "core business functions" of the three companies over time are not relevant to the FCA claims. (*Id.* at 2)

Moreover, certain evidence relevant only to the Government's alter ego claims may be highly prejudicial to BIC and BIPI on the direct liability claims against them. For example, evidence involving drugs besides the nine at issue in this case may be pertinent to show interaction between the companies for a veil-piercing claim, but has no relevance to and cannot establish direct liability for BIC or BIPI on the FCA claims. Thus, allowing veil-piercing evidence in a trial on the underlying FCA claims would not only risk severe prejudice to BIC and BIPI, but would significantly prolong and complicate what will already be a complex and lengthy trial on the underlying issues. (*See* Dkt. No. 6931, BIC/BIPI Memo. in Supp. of Mot. to Bifurcate the Corporate Veil-Piercing Issues, 7).

Beyond the Government's alleged "justice and fairness" argument, the Government

---

[2] The evidence clearly reveals Roxane's dividend payments to BIC were not prompted by this litigation, nor did they leave Roxane undercapitalized. (*See* Dkt. No. 6192, BIC/BIPI Summ. J. Mem., 4; Dkt. No. 6516 BIC/BIPI Reply Memo. in Supp. of Mot. for Summ. J., 4-6).

points to only one area of potentially overlapping evidence between the two theories of liability against BIC and BIPI – evidence relating to BIC and BIPI's involvement in Roxane's sales and marketing efforts, particularly in setting AWPs for the Subject Drugs. However, even putting aside the questionable relevance of this alleged involvement to the alter ego claims, the Government greatly exaggerates the amount and significance of the overlap. While the Government asserts that this evidence will implicate many trial exhibits and the testimony "of almost every defendant-employee the United States expects to call," it notably cites not a single specific example of a witness or exhibit that would overlap. (*See* Dkt. No. 6946, DOJ Opp'n to BIC/BIPI Mot. to Bifurcate, 4) As discussed in detail in BIC and BIPI's Motion for Summary Judgment and corresponding reply brief, there is very little evidence that BIC or BIPI was directly involved in setting or reporting the AWPs for the nine Roxane drugs at issue. (*See* Dkt. No. 6192, BIC/BIPI Summ. J. Mem., 16-19; Dkt. No. 6516, BIC/BIPI Reply to Mot. for Summ. J., 10-16) Indeed, the Government's direct liabilty evidence against BIC and BIPI comes down to one or two alleged interactions between the companies related to three of the nine drugs at issue. *Id.* Thus, the BIC and BIPI-related evidence will be only a minor part of the underyling FCA trial, which will primarily focus on Roxane's and the Government's conduct and knowledge. This is even more true if the FCA case against Dey is consolidated with the case against Roxane for trial. Likewise, this minimal evidence of BIC and/or BIPI's alleged involvement in specific pricing decisions is relatively inconsequential to the bigger picture alter ego issues and unquestionably pales in comparison to the amount of non-overlapping evidence described above.

In short, the minimal amount of possibly overlapping evidence and chance that a select few witnesses may have to testify at two trials does not offset the advantages of judicial economy

and the avoidance of prejudice to BIC and BIPI that bifurcation would promote in this case. This Court has specifically recognized the fact that avoidance of prejudice and judicial economy are "not outweighed by the possibility that the same witnesses may have to testify at both trials." *Chapman*, 167 F. Supp.2d at 417.

## CONCLUSION

For all the foregoing reasons, the Court should grant BIC and BIPI's Motion To Bifurcate The Corporate Veil-Piercing Issues For Trial.

Dated: March 12, 2010                    Respectfully submitted,

/s/ John W. Reale
Helen E. Witt, P.C.
Anne M. Sidrys, P.C.
Eric T. Gortner
John W. Reale
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for Defendants
Boehringer Ingelheim Corp. and
Boehringer Ingelheim Pharmaceuticals, Inc.,*

.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by posting on March 12, 2010, a copy to LexisNexis File and Serve for notification to all parties.

/s/ John W. Reale
John W. Reale