# Exhibit 13

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc.,
et al. v. Dey, Inc., et al.*, **Civil Action No. 05-11084-PBS**

**Exhibit to the Declaration of Marisa A. Lorenzo in Support of Dey's
Motion to Exclude the Opinions of Mark Duggan, Ph.D.**

Duggan, Ph.D., Mark G.                                                                July 14, 2008
Washington, DC

```
                                                                    Page 1
  1                UNITED STATES DISTRICT COURT

  2              FOR THE DISTRICT OF MASSACHUSETTS

  3    - - - - - - - - - - - - - - - -

  4    IN RE:  PHARMACEUTICAL        )   MDL NO. 1456

  5    INDUSTRY AVERAGE WHOLESALE    )   CIVIL ACTION

  6    PRICE LITIGATION              )   01-CV-12257-PBS

  7    THIS DOCUMENT RELATES TO      )

  8    U.S. ex rel. Ven-a-Care of    )   Judge Patti B. Saris

  9    the Florida Keys, Inc.        )

 10        v.                        )   Chief Magistrate

 11    Abbott Laboratories, Inc.,    )   Judge Marianne B.

 12    No. 06-CV-11337-PBS           )   Bowler

 13    - - - - - - - - - - - - - - - -

 14                                              Volume I

 15

 16       Videotaped deposition of MARK G. DUGGAN PH.D.

 17

 18

 19                              Washington, D.C.

 20                              Monday, July 14, 2008

 21                              9:00 a.m.

 22
```

Duggan, Ph.D., Mark G.  
July 14, 2008  
Washington, DC

Page 214

1     MR. LAVINE: Objection to form.
2     A.    The analyses in my report shed light on how
3  federal government expenditures for Abbott products
4  and the J codes listed in the complaint would have
5  differed if Abbott had reported the alternative prices
6  that I described in my report to First Databank, Red
7  Book and so forth and the state Medicaid agencies and
8  the federal government used those numbers. So
9  absolutely I do believe that the -- given the
10 assumptions that I outline in my report, the report
11 estimates the impact of alternative prices on federal
12 government spending, holding other factors constant.
13     And I should note that in some of these
14 other papers that I mention here I perform -- some of
15 these other publications, I perform similar analyses.
16 So for example had a Medicaid recipient not been in an
17 HMO, but instead been in a fee for service, what would
18 government spending otherwise have been. Had a
19 Medicaid recipient not taken this specific
20 prescription drug, what would Medicaid spending
21 otherwise have been and so forth. That is quite
22 consistent with much of my previous research, the

Page 215

1  approach that I used here.
2     Q.   Are you providing expert opinion in this
3  case on whether the state Medicaid programs or
4  Medicare would have used the alternative prices that
5  you calculate in your report?
6     MR. LAVINE: Objection to form.
7     A.   It is my understanding -- and I try to be
8  specific about this in my report. It is my
9  understanding that -- it is my assumption that if
10 Abbott had reported alternative prices to First
11 Databank as I described in my report and to the Red
12 Book that state Medicaid agencies and Medicare
13 insurance carriers would have used those prices when
14 adjudicating Medicaid and Medicare claims. That is a
15 sort of -- that is an assumption that I am making in
16 my report. And I try to be clear about that.
17     Q.   Yes, you are. And I did get that. I just
18 wanted to make sure that I have it.
19     A.   Yeah.
20     Q.   The question of whether Medicare and
21 Medicaid would have used the revised pricing is an
22 assumption in your report, correct? It's not a

Page 216

1  subject of your testimony?
2     MR. LAVINE: Objection to form.
3     A.   Well, once again, I'm not certain about
4  what I will end up discussing in testimony. But for
5  the purposes of my report for the analyses that emerge
6  from my report that are summarized in the executive
7  summary and in the tables and so forth and throughout
8  the text, so I -- that is an assumption that I make in
9  my report. What I will say about that issue later
10 it's hard for me to speculate now at this point.
11     Q.   Have you done any analysis, reviewed the
12 factual record, to determine if Medicare or Medicaid
13 programs would have used the prices that you calculate
14 in your report?
15     MS. THOMAS: Objection.
16     A.   Well, I have observed in the data that when
17 the prices reported in First Databank and in the Red
18 Book changed for the Abbott products at issue in this
19 case that Medicaid reimbursement and subsequently
20 Medicare reimbursement did decline. So that is an
21 example of one kind of thing that I did to -- does
22 that represent everything that I've done, I'm not

Page 217

1  sure. I would need to go back and look at it.
2     But that's certainly consistent with what
3  one would expect given that assumption Medicaid
4  spending for Abbott products declined -- for the 44
5  Abbott products declined from -- in 2000 and
6  especially 2001, with the details of that varying a
7  bit.
8     Q.   You mentioned something that you saw or did
9  on that point whether or not the Medicare and Medicaid
10 programs would have used those prices. Have you done
11 the analysis you believe would be necessary as an
12 economist to provide an expert opinion on whether the
13 Medicare and Medicaid programs would have used the
14 prices that you calculate in your report?
15     MR. LAVINE: Objection to form.
16     A.   I'm confused by that question. Maybe you
17 can ask it again. I'm not trying to be difficult.
18 It's just a long day.
19     Q.   Have you done the analysis you believe
20 would be necessary as an economist to provide an
21 expert opinion on whether Medicare and Medicaid would
22 have used the revised prices that you calculate in

55 (Pages 214 to 217)

Duggan, Ph.D., Mark G.
Washington, DC
July 14, 2008

Page 218

1 your report?
2     MR. LAVINE: Objection to form.
3   A.  I would need to think more about this,
4 about that issue. To this point that has not been the
5 thrust of my analysis. But as I said, I did a number
6 of things to gauge the accuracy of that assumption to
7 the extent that the data permitted me. As economists
8 we're not often given all of the data we'd like or all
9 of the variation in the world that we would like. But
10 given the available data and the available variation,
11 I believe that I provided useful information on that
12 issue.
13   Q.  **But it's not your understanding of the**
14 **thrust of your work that you're opining on whether or**
15 **not the Medicare and Medicaid programs would have used**
16 **the revised pricing that you calculate, correct?**
17     MR. LAVINE: Objection to form.
18   A.  It has not been the focus of the analysis
19 in my report. But undertaking the analyses that I did
20 in this report I think provides a quite useful -- shed
21 quite informative light on that issue. As I
22 mentioned, the sharp decline in Medicaid spending in

Page 219

1 2000 and especially 2001 and in Medicare spending a
2 year or two after that for the J codes at issue in the
3 case.
4   Q.  **Now, in the Texas report didn't you drop a**
5 **footnote making clear that your difference**
6 **calculations assumed that Texas would have used the**
7 **alternative prices? Do you recall that?**
8   A.  It's -- that was quite a while ago that I
9 drafted that report. And I do not recall dropping
10 that specific footnote. I would want to go back and
11 look at the report and so forth.
12     I should also note that you said earlier
13 ten minutes and it's now about ten minutes. So if
14 it's the lawyer's ten minutes --
15     MR. TORBORG: Why don't we stop there then
16 for the day.
17     MS. BROOKER: Okay.
18     THE VIDEOGRAPHER: This deposition adjourns
19 for the day at 5:13 and consists of four tapes.
20     (Whereupon, at 5:13 p.m. the videotaped
21 deposition was adjourned.)
22         * * * * *

Page 220

5 _____
6 MARK G. DUGGAN PH.D.

9     SUBSCRIBED and SWORN before and to me this
10 day of _____, 2008.

17 _____
18 NOTARY PUBLIC

22 My Commission expires:

Page 221

1 UNITED STATES OF AMERICA  )
2
3 DISTRICT OF COLUMBIA    )
4     I, JONATHAN WONNELL, a Notary Public in and
5 for the District of Columbia, do hereby certify that
6 the within transcript is a true and accurate record of
7 the testimony under oath and other proceedings in the
8 above-entitled matter.
9     I further certify that I am not a relative,
10 employee, attorney or counsel of any of the parties to
11 this action and that I am in no way interested in the
12 outcome of this matter.
13     IN WITNESS WHEREOF, I have hereunto set my
14 hand this _____ day of _____, 2008.
15
16
17
18 _____
19 JONATHAN WONNELL
20
21 My Commission expires:
22 October 1, 2012

56 (Pages 218 to 221)