# Exhibit 14

*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc.,
et al. v. Dey, Inc., et al.*, **Civil Action No. 05-11084-PBS**

**Exhibit to the Declaration of Marisa A. Lorenzo in Support of Dey's
Motion to Exclude the Opinions of Mark Duggan, Ph.D.**

Page 250

```
 1              UNITED STATES DISTRICT COURT

 2           FOR THE DISTRICT OF MASSACHUSETTS

 3    - - - - - - - - - - - - - - - -

 4    IN RE:  PHARMACEUTICAL        )   MDL NO. 1456

 5    INDUSTRY AVERAGE WHOLESALE    )   CIVIL ACTION

 6    PRICE LITIGATION              )   01-CV-12257-PBS

 7    THIS DOCUMENT RELATES TO      )

 8    U.S. ex rel. Ven-a-Care of    )   Judge Patti B. Saris

 9    the Florida Keys, Inc.        )

10         v.                       )   Chief Magistrate

11    Abbott Laboratories, Inc.,    )   Judge Marianne B.

12    No. 06-CV-11337-PBS           )   Bowler

13    - - - - - - - - - - - - - - - -

14            (cross-captions on following pages)

15

16                            Washington, D.C.

17                            Thursday, February 27, 2007

18                            9:00 a.m.

19

20          Videotaped deposition of DEIRDRE DUZOR

21                       Volume II

22
```

Duzor, Deidre - Vol. II  
Washington, DC  
February 27, 2008

Page 527

1 dispensing fees would be sufficient to ensure
2 that pharmacies would dispense drugs to Medicaid
3 beneficiaries?
4       MS. MARTINEZ: Objection to form.
5    A.  I think that that question would need
6 to be considered on a state by state basis to
7 take into account their dispensing fee. Given
8 that they're not all the same I think it just
9 follows that there could not be one answer that
10 would be consistent across all states.
11    Q.  Is it fair to say you can think of
12 states where you would not feel comfortable that
13 paying a true acquisition cost with no other
14 changes to the reimbursement system would not be
15 sufficient to ensure access?
16       MS. MARTINEZ: Objection, form.
17    A.  I don't know where the line would be
18 drawn. But I think that there may be some states
19 that were paying very low dispensing fees where
20 that would not be adequate reimbursement for a
21 pharmacy.
22    Q.  And would you feel comfortable assuming

Page 528

1 that a change to paying actual acquisition cost
2 would not have resulted in any change to
3 dispensing fees at any of the state Medicaid
4 programs?
5       MS. MARTINEZ: Objection, form.
6    A.  No. I think it may have resulted in a
7 change in dispensing fees.
8    Q.  Do you feel comfortable in assuming
9 that had prices been provided in the compendia
10 that were the actual prices at which pharmacies
11 could buy drugs, if those were provided just
12 overnight, there was a change, would you feel
13 comfortable that some states would want to go
14 back to the old prices, would have actually
15 requested to go back to the old prices?
16       MS. MARTINEZ: Objection, form.
17    A.  Given that there's a regulation saying
18 that you have to pay an actual acquisition cost
19 or estimated acquisition cost, I don't understand
20 your question. Would states have requested to.
21 It seems like that would be a nonissue or outside
22 of the realm of possibility.

Page 529

1    Q.  Well, are you familiar with what
2 happened when the Department of Justice and
3 NAMFCU attempted to have states use new AWPs for
4 a subset of drugs in 2000?
5    A.  No. I'm not familiar with that.
6    Q.  Would what happened in that scenario be
7 probative of what happen if there was a sudden
8 change?
9       MR. KELLEY: Objection to form.
10       MS. MARTINEZ: Objection to form.
11    A.  I'm not familiar with what happened
12 there.
13    Q.  Would you feel comfortable in assuming
14 that if the AWP prices in the compendia were the
15 true average acquisition price that the states
16 would not want to have added a markup to drugs to
17 ensure access and a reasonable profit level?
18       MS. MARTINEZ: Objection to form.
19    A.  Indeed I think our regulations would
20 call for them to assure that there was a
21 reasonable dispensing fee such that adequate
22 access would have been maintained for Medicaid.

Page 530

1    Q.  If there had been a sudden change in
2 the way -- a sudden reduction in the AWP prices
3 reported in the compendia, do you feel
4 comfortable in assuming that state legislatures
5 would not have opposed a sudden change in the
6 understanding of what AWPs represented?
7       MS. MARTINEZ: Objection to form.
8    A.  I can't speak to what state
9 legislatures may or may not have done in a
10 hypothetical situation.
11    Q.  Do you feel comfortable in making any
12 assumptions about what the total amount of
13 reimbursement would have been had the AWPs in the
14 compendia actually represented the actual price
15 at which pharmacies purchased drugs?
16       MS. POLLACK: Objection, form.
17    A.  Sitting here I couldn't give you a
18 figure. I think it would be substantial and that
19 such an estimate would be possible.
20    Q.  And that estimate may depend on the
21 specific drugs at issue?
22    A.  Yes. For the drugs at issue.