# Exhibit 2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

In re: PHARMACEUTICAL INDUSTRY AVERAGE
WHOLESALE PRICE LITIGATION

|  |  |
|---|---|
| UNITED STATES OF AMERICA ex rel. | ) |
| VEN-A-CARE OF FLORIDA KEYS, INC. | ) |
| Plaintiff | ) |
| v. | ) CIVIL ACTION |
|  | ) No. 05-11084-PBS |
| DEY, INC., et al | ) |
| Defendants | ) |
|  | ) |

# APPENDICES TO THE
# EXPERT REPORT OF PROFESSOR DAVID BRADFORD, Ph.D.

**March 6, 2009**

Contains highly confidential materials—subject to protective order

Appendices to the Expert Report of Professor David Bradford, Ph.D.

# Appendix F: Medicaid payment basis charts

## F.1. Payment basis and claims data

27.  In this section I describe the analysis, used to identify the basis of payment for each Medicaid claim. I will also summarize the results of this analysis and give a brief review of the state Medicaid claims data processing.

### F.1.1. Claims data preparation

28.  In order to perform a payment basis analysis I first clean the claims data for each state. The steps involved in this process are unique to each state; however, many of the steps are common across states.

29.  I exclude negative claims that are generally adjustments to positive claim records. When I identify a dataset with these adjustments, I attempt to match them to their original claim counterpart using some form of claim ID provided in the data. The result of this process is that certain claims are canceled out and dropped from further analysis. After these adjustments, any remaining negative claims are excluded.

30.  I also perform a series of additional exclusions, which are commensurate to those preformed by plaintiff expert Dr. Duggan. These exclusions include any claims with a negative or missing paid amount, quantity, or billed amount. Claims with an amount billed less than the amount paid are also removed. Furthermore, I drop all claims that occur within a quarter for which there is incomplete data, and all claims with a non-zero third party payer amount. Finally, I do not consider claims when the paid amount is less than the dispensing fee or claims that are identified within the data as having been compounded.

### F.1.2. Payment basis

31.  The payment basis analysis is performed on a claim-by-claim basis using the data for each state created through the initial processing steps described above. I first calculate a unit ingredient reimbursement and a unit ingredient billed amount for each claim in the data set. This is generally done using the following formula:

Case 1:01-cv-12257-PBS   Document 6997-2   Filed 03/23/10   Page 4 of 4

Appendices to the Expert Report of Professor David Bradford, Ph.D.

$$\text{Unit ingredient reimbursement} = (\text{paid amount} + \text{copayment} - \text{dispensing fee}) / \text{quantity}$$

32. If the copayment or dispensing fee fields are not provided in the claims data I generally create these fields using information obtained through research. I have reviewed the research compiled by Myers and Stauffer for use in Dr. Duggan's analysis and generally feel that this information is accurate. Therefore, I use the Myers and Stauffer data in my analyses.

33. I then bring in the price fields necessary for this analysis. I use the published AWP, WAC and FUL prices from the FDB data. Furthermore, I consider the DOJ-revised AWP made available in 2000, as well as any state MAC prices provided to me or that I was able to obtain through publically available sources. I also create prices that reflect up to a 90 day lag in the state's implementation of either a change in price or policy.

34. To identify the basis of payment for each claim that most closely resembles the actual reimbursement, I calculate the difference between the unit ingredient reimbursement and each pricing basis available, including the unit ingredient billed, as a percentage of the unit ingredient reimbursement. I then determine which pricing basis differs the least from the actual unit ingredient reimbursement and assign each claim a basis accordingly. I allow a 0.25% margin for error when assigning these matches. Therefore, if the most closely matching price still differs by more than 0.25% of the claim's ingredient cost I determine the match to be invalid and assign the claim a basis of "other", the "other" category represents claims whose price basis for reimbursements is unknown.

35. Some states did not provide state MAC data, although research indicates that a state MAC program did exist for some portion of the time period at-issue. In order to take this fact into account and maintain a conservative analysis for the states where this is an issue, I calculate further payment basis matches using a process which approximates a potential MAC price.

36. This extension to the payment basis analysis begins with the results of the original payment basis analysis and only considers claims which did not receive a basis during the initial analysis. As such, a basis of payment identified in the initial analysis cannot be overridden by this further analysis. For each NDC and quarter I determine the two prices which occur most often among the previously unmatched claims during quarters in which research indicates a state MAC program existed for that state. These modes must meet the following criteria to continue in the analysis:

    1. The most frequently occurring mode is dropped if the percentage of claims represented by the two modes is not at least 40%.