UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL NO. 1456<br>Civil Action No. 01-12257-PBS<br>Subcategory Case No. 03-10643-PBS<br>Subcategory Case No. 07-12141-PBS |
| THIS DOCUMENT RELATES TO:<br><br>*The City of New York, et al. v. Abbott Labs, et al.*<br>AND<br>*State of Iowa v. Abbott Labs., et al.* | ) ) ) ) ) ) ) ) | Judge Patti B. Saris<br><br>Magistrate Judge Marianne Bowler |

**PLAINTIFFS' RESPONSE TO SCHERING'S MOTION TO QUASH
AND FOR PROTECTIVE ORDER**

This Court ordered Schering to submit to discovery on its brand drugs which had AMP/AWP spreads in excess of 30% on September 22, 2008. *In re Pharmaceutical Industry Average Wholesale Price Litigation*, Cause No. 01-12257-PBS, Docket No. 5605, dated September 22, 2008 (J. Saris). The notices which Schering seeks to quash comply with that order and are limited to those drugs Schering's expert concluded fit this criterion.[1] The tardiness of these notices, as characterized by Schering, is purely a function of Schering's refusal to submit to the discovery which has been required of, and with the exception of Merck[2], produced

---

[1] Plaintiffs' [New York Counties] Third Revised Notice of 30(b)(6) Deposition of Schering-Plough Corporation, Schering Corporation, and Warrick Pharmaceuticals Corporation, dated March 1, 2010; Plaintiffs' [New York Counties] Revised Notice of 30(b)(6) Deposition of Schering-Plough Corporation, Schering Corporation, and Warrick Pharmaceuticals Corporation (Transactional Data), dated March 1, 2010; State of Iowa's Notice of 30(b)(6) Deposition of Schering-Plough Corporation, Schering Corporation, and Warrick Pharmaceuticals Corporation, dated March 2, 2010; and State of Iowa's Revised Notice of 30(b)(6) Deposition of Schering-Plough Corporation, Schering Corporation, and Warrick Pharmaceuticals Corporation (Transactional Data), dated March 2, 2010 (attached collectively hereto as Exhibit A).

[2] The New York Counties' motion to compel production of responsive discovery, including data, from Merck on all drugs with AMP/AWP spreads of greater than 30% remains sub judice. Plaintiffs' Mem. Supp. Motion to Compel Discovery from Defendant Merck & Co., Inc., *In re Pharm. Indus.Average Wholesale Price Litig.*, Case No. 01-12257-PBS, dated September 4, 2009, Docket No. 6488.

by every other brand drug manufacturer in this litigation, and its motion to quash and for protective order should be denied.

## I.     THE SEPTEMBER 2008 STAY DOES NOT APPLY

The latest deposition notices[3] issued by the New York Counties and the State of Iowa do not violate the stay because they seek discovery only of Schering brand drugs which exceed the 30% AMP/AWP spread limit.  Judge Saris' order of September 22, 2008 (attached hereto as Exhibit B) could not be clearer on the question.

That order states:

> "Plaintiffs may conduct discovery with respect to any branded drugs that have an AWP to AMP spread of over 30% for the year."

It is true that the Schering Motion for Protective Order was based on Schering Expert Dr. Sumanth Addanki's February 21, 2008 affidavit.  Affidavit of Sumath Addanki, sworn to February 21, 2008, Docket No. 5299. (attached hereto as Exhibit C).  Since then, Dr. Addanki has produced another similar affidavit dated August 6, 2009.  *See* Affidavit of Sumanth Addanki, sworn to August 6, 2009, Docket No. 6361 (attached hereto as Exhibit D).

Review of these affidavits reveals that Dr. Addanki found AMP/AWP spreads in excess of 30% for the following drugs and years:

All forms of Celestone Soluspan bearing an NDC, the first nine digits of which are 000850566, for the years 2000 and 2003.

All forms of Clarinex bearing an NDC, the first nine digits of which are 000851280, for the year 2003.

---

[3] The original deposition notices, and revisions thereof, were served on 12/07/07, 12/18/07, 12/21/07, 2/11/08, and 3/31`/08, and may have precipitated Schering's Motion for Protective Order resulting in the referenced stay of discovery.  They were not limited, as the current notices are, to the over-30% drugs.

All forms of Diprolene bearing an NDC, the first nine digits of which are 000850517, for the year 2003.

All forms of Diprolene bearing an NDC, the first nine digits of which are 000850575, for the year 2003.

All forms of Diprolene bearing an NDC, the first nine digits of which are 000850634, for the years 2002 and 2003.

All forms of Diprosone bearing an NDC, the first nine digits of which are 000850853, for the years 1998, 1999, and 2000.

All forms of Elocon bearing an NDC, the first nine digits of which are 000850370, for the years 2001 and 2003.

All forms of Elocon bearing an NDC, the first nine digits of which are 000850567, for the years 2001, 2002, and 2003.

All forms of Elocon bearing an NDC, the first nine digits of which are 000850854, for the year 2003.

All forms of IMDUR bearing an NDC, the first nine digits of which are 000851153, for the years 2001 and 2003.

All forms of IMDUR bearing an NDC, the first nine digits of which are 000853306, for the years 2000 and 2001.

All forms of IMDUR bearing an NDC, the first nine digits of which are 000854110, for the years 2000, 2001, and 2002.

All forms of Intron A bearing an NDC, the first nine digits of which are 000851133, for the years 1998 and 1999.

All forms of K-Dur bearing an NDC, the first nine digits of which are 000850787, for the year 2003.

All forms of Lotrimin bearing an NDC, the first nine digits of which are 000850613, for the year 1999.

All forms of Lotrisone bearing an NDC, the first nine digits of which are 000850809, for the years 2001 and 2002.

All forms of Nitro-Dur bearing an NDC, the first nine digits of which are 000850819, for the years 1998, 2002, and 2003.

All forms of Nitro-Dur bearing an NDC, the first nine digits of which are 000853305, for the years 1997, 1998, 1999, 2001, 2002, and 2003.

All forms of Nitro-Dur bearing an NDC, the first nine digits of which are 000853310, for the years 1998, 2001, 2002, and 2003.

All forms of Nitro-Dur bearing an NDC, the first nine digits of which are 000853315, for the years 1998, 2001, 2002, and 2003.

All forms of Nitro-Dur bearing an NDC, the first nine digits of which are 000853320, for the years 2001, 2002, and 2003.

All forms of Nitro-Dur bearing an NDC, the first nine digits of which are 000853330, for the years 1997, 1998, 1999, 2001, 2002, and 2003.

All forms of Normodyne bearing an NDC, the first nine digits of which are 000850244, for the years 2001, 2002, 2003.

All forms of Normodyne bearing an NDC, the first nine digits of which are 000850362, for the years 1997, 1998, 1999, 2000, 2001, 2002, and 2003.

All forms of Proventil bearing an NDC, the first nine digits of which are 000850208, for the years 1997, 2001, and 2002.

All forms of Proventil bearing an NDC, the first nine digits of which are 000850209, for the years 1997 and 2001.

All forms of Proventil bearing an NDC, the first nine digits of which are 000850315, for the year 1997.

All forms of Proventil bearing an NDC, the first nine digits of which are 000851132, for the years 1997, 2001, and 2002.

All forms of Rebetol bearing an NDC, the first nine digits of which are 000851194, for the year 2003.

All forms of Rebetol bearing an NDC, the first nine digits of which are 000851327, for the year 2003.

All forms of Rebetol bearing an NDC, the first nine digits of which are 000851351, for the year 2003.

All forms of Rebetol bearing an NDC, the first nine digits of which are 000851385, for the years 2003.

All forms of Temodar bearing an NDC, the first nine digits of which are 000851244, for the year 2002.

All forms of Temodar bearing an NDC, the first nine digits of which are 000851248, for the year 2002.

All forms of Theo-Dur bearing an NDC, the first nine digits of which are 000850487, for the years 1997 and 1998.

All forms of Theo-Dur bearing an NDC, the first nine digits of which are 000850584, for the year 1997.

All forms of Theo-Dur bearing an NDC, the first nine digits of which are 000850806, for the year 1997.

All forms of Theo-Dur bearing an NDC, the first nine digits of which are 000850933, for the year 1997.

All forms of Vancenase bearing an NDC, the first nine digits of which are 000850649, for the year 2001.

All forms of Vanceril bearing an NDC, the first nine digits of which are 000850736, for the year 2002.

Plaintiffs are entitled, pursuant to Judge Saris' September 22, 2008 modification of Magistrate Bowler's ruling on Schering's Motion for Protective Order, to discovery on these drugs.

## II.   SCHERING HAS ACKNOWLEDGED ITS DUTY TO SUBMIT TO DISCOVERY

Schering has read into Judge Saris' ruling a requirement which does not appear there: that in order to obtain discovery on those over-30% drugs identified by Dr. Addanki, Plaintiffs would have to "submit an affidavit proposing alternative calculations." *See* letter from John Montgomery, dated October 27, 2008 (attached hereto as Exhibit E).  But this is not a condition imposed by Judge Saris on the grant of discovery for the over-30% drugs.  Perhaps such an expert affidavit would be required in order for Plaintiffs to seek discovery on drugs for which Dr. Addanki found spreads of less than 30%, but it is clear that for drugs with AMP/AWP spreads

5

exceeding 30% for a year, Schering must submit to discovery without limitation. *See In re Pharm. Indus. Average Wholesaler Price Litig.*, Cause No. 01-12257-PBS, Docket No. 5605, dated September 22, 2008 (J. Saris). Indeed, Schering fails to cite any authority that bars plaintiffs' discovery of such drugs with spreads greater than 30%. *See* Mem. Supp. Schering's Motion for Protective Order.

Schering's capitulation to the September, 2009 motion to compel[4] suggested to Plaintiffs that Schering had come to understand the Court's ruling to require it to provide discovery on Dr. Addanki's over-30% drugs. But it has become clear that Schering is not inclined to submit to discovery on the brand drugs, other than by providing inadequate and apparently incomplete data,[5] regardless of the simplicity, clarity, and directness of the Court's order.

### III. THE DEPOSITIONS SHOULD PROCEED IN THE INTEREST OF CONVENIENCE, EFFICIENCY, AND JUSTICE

Plaintiffs disagree that it is too late to vacate the stay, but vacating the stay is unnecessary. Schering is not set for trial in any case in the MDL.[6] But Schering will be, as it has already pointed out, subject to ongoing discovery in other jurisdictions across the country. It was Schering, after all, who insisted from the beginning, in the context of the deposition of Harvey Weintraub, that the various plaintiffs across the country proceed in lockstep with one another.[7]

---

[4] Schering provided rebate data as to the Schering branded drugs which Dr. Addanki had identified as having spreads over 30% in exchange for the withdrawal of the motion to compel. This seemed enough of a concession to the propriety of Plaintiffs' discovery demands that further discovery on those drugs would shortly be forthcoming. This was not to be. Plaintiffs' work with those data to determine Schering's true prices continues.

[5] Plaintiffs' efforts at ascertaining Schering's true prices are continually hampered by Schering's piecemeal, apparently incomplete, and partially-overlapping data sets. Schering's latest production of rebate data is no exception, as it lacks, for example, any indication of the trade classes to which each rebate is being paid. This is a typical feature of Schering's transactional data which is now inexplicably absent. Plaintiffs' deposition notices on the subject of Schering's transactional data are designed to identify, illuminate, and rectify this, and other such problems.

[6] Schering is first set for trial on November 22, 2010 in Hawaii, with a discovery deadline sixty days before trial, pursuant to Rule 12(r), Rules of the Circuit Courts of Hawai'i.

[7] Attached hereto as Exhibit F is an excerpt of the deposition of Harvey Weintraub, Schering's principal witness on behalf of its generic subsidiary, Warrick Pharmaceuticals Corporation. Schering's counsel clearly explains how it

Now the shoe is on the other foot. All that need be done is for the Court to deny the motion to quash the depositions, and deny the motion to protect Schering from the use, in the MDL, of evidence gathered in other jurisdictions.

This would have the effect of allowing discovery to proceed in a consolidated way, in due course. It is no insult to the efficiency or authority of the MDL that evidence obtained in other cases should be allowed in trials in the MDL. In fact, such use of evidence gathered in other cases is uniformly encouraged in complex litigation. *See,* Manual of Complex Litigation, Fourth, §§ 11.423, 11.425, and 20.14.[8] Such admissible evidence as may be obtained in other cases should be used, not simply because the interests of justice demand it, but because such uses are entirely consistent with the first principles of the MDL:

> **(a)** "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be *for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions*..."

42 U.S.C. §1407(a) (emphasis supplied).

---

came to pass that the states of Alabama, Arizona, Arkansas, Connecticut, Florida, Hawaii, Illinois, Kentucky, Massachusetts, Mississippi, Missouri, New Jersey, New York Counties, Ohio, Pennsylvania, South Carolina, and Wisconsin were all at the table for a deposition which was unilaterally set and limited by Schering to five half-days, as follows: "... we felt that it was only prudent and proper to notice him in as many cases as we could for this deposition since we had people asking for his deposition. We thought that was the logical and right thing to do and invite everybody to the party and let them ask their questions. It's going to be our position, and I want to make it very clear, that at 1 o'clock on Friday afternoon is going to be the end of the Harvey Weintraub deposition and we will not produce Mr. Weintraub again voluntarily for deposition after that point." Deposition of Harvey J. Weintraub, Vol. 1, 9/18/06, page 34, lines 13-24.

[8] "*Avoiding duplicative discovery.* Judges should encourage techniques that coordinate discovery and avoid duplication, such as those discussed in sections 11.423, 11.443, 11.452, and 11.464. Filing or cross-filing deposition notices, interrogatories, and requests for production in related cases will make the product of discovery usable in all cases and avoid duplicative activity. Relevant discovery already completed should ordinarily be made available to litigants in the other cases." Manual of Complex Litigation, Fourth, §20.14.

Schering cannot deny that where discovery on its brand drugs is not yet complete, will necessarily occur, will be conducted in a consolidated manner, and will not work a prejudice upon it in any case before this court, that these interests are served by allowing that discovery, and by not prohibiting its use here.

## CONCLUSION

For all the foregoing reasons, Schering's motions should be denied in their entirety.

Dated:  March 26, 2010

Respectfully submitted,

**KIRBY McINERNEY, LLP**

By:  /s/   Joanne M. Cicala
Joanne M. Cicala
James P. Carroll, Jr.
Jocelyn R. Normand
Kathryn B. Allen
825 Third Avenue
New York, New York 10022
(212) 371-6600

Michael Winget-Hernandez
**WINGET-HERNANDEZ, LLC**
101 South College St.
Dripping Springs, TX 78620
(512) 858-4181

*On behalf of the MDL litigating New York Counties, Other than the Counties of Nassau and Orange, and State of Iowa*

Ross B. Brooks, Esq.
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300
*Special Counsel for the County of Nassau*

        Theresa A. Vitello, Esq.
**LEVY PHILLIPS & KONIGSBERG, LLP**
800 Third Avenue
New York, NY  10022
(212) 605-6205
*Counsel for the County of Orange*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on the 26th day of March, 2010, she caused a true and correct copy of Plaintiffs' Response to Schering's Motion to Quash and for Protective Order to be delivered to counsel of record for defendants by electronic service pursuant to Case Management Order No. 2 entered by the Honorable Patti B. Saris in MDL No. 1456.

        /s/ James Carroll
        James Carroll
        Kirby McInerney LLP
        825 Third Avenue, 16th Floor
        New York, NY 10022
        (212) 371-6600