Page 1

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


   IN RE:                              )
                                       )  CA No. 01-12257-PBS
   PHARMACEUTICAL INDUSTRY AVERAGE     )
   WHOLESALE PRICE LITIGATION          )  Pages 1 - 17
                                       )




                        STATUS CONFERENCE

               BEFORE THE HONORABLE PATTI B. SARIS
                   UNITED STATES DISTRICT JUDGE






                          United States District Court
                          1 Courthouse Way, Courtroom 19
                          Boston, Massachusetts
                          March 31, 2010, 2:05 p.m.







                        LEE A. MARZILLI
                     OFFICIAL COURT REPORTER
                  United States District Court
                  1 Courthouse Way, Room 7200
                       Boston, MA  02210
                         (617)345-6787
```

```
 1   A P P E A R A N C E S:

 2

         EDWARD NOTARGIACOMO, ESQ., Hagens Berman Sobol Shapiro,
 3   LLP, One Main Street, Cambridge, Massachusetts, 02142,
     for the Class Plaintiffs.
 4
         JENNIFER FOUNTAIN CONNOLLY, ESQ., Wexler Wallace, LLP,
 5   55 West Monroe Street, Suite 3300, Chicago, Illinois, 60603,
     for the Class Plaintiffs.
 6
         ELIZABETH SHOFNER, ESQ., Patterson Belknap Webb & Tyler,
 7   LLP, 1133 Avenue of the Americas, New York, New York,
     10036-6710, for Johnson & Johnson.
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       P R O C E E D I N G S

2           THE CLERK:  In Re:  Pharmaceutical Industry Average

3   Wholesale Price Litigation, Civil Action 01-12257, will now be

4   heard before this Court.  Will counsel please identify

5   themselves for the record.

6           MS. CONNOLLY:  Good afternoon, your Honor.  Jennifer

7   Connolly on behalf of the class.

8           MR. NOTARGIACAMO:  Ed Notargiacomo on behalf of the

9   class.

10          MS. SHOFNER:  Elizabeth Shofner on behalf of the J&J

11  defendants, and I extend my apologies from Andrew Schau, who

12  got turned back on a train today because of flooding.  I'm here

13  in his place.

14          THE COURT:  Really?

15          MS. SHOFNER:  Yes.

16          THE COURT:  Where was the flooding?

17          MS. SHOFNER:  All the way from New York up to here.  I

18  don't know.  They got turned back at around Groton, I think, or

19  New London.

20          THE COURT:  Does anyone know whether Mr. Haviland got

21  notice of today's hearing?

22          MS. CONNOLLY:  He is on ECF, your Honor, and we did

23  speak with him when he filed his notices of voluntary

24  dismissal, so I believe that he knows of the existence of this

25  hearing.  He did tell me that he had no intention of appearing

1    in court in Massachusetts again, so I do believe --

2            THE COURT:  So what has actually happened here?

3            MS. CONNOLLY:  Three days before our hearing on the

4    motions for summary judgment were scheduled, he filed notices

5    of voluntary dismissal for the only two Class One J&J

6    plaintiffs' that we have.  He did this without consulting with

7    class counsel first --

8            THE COURT:  I'm sorry.  I have so many moving parts in

9    this litigation.  The Johnson & Johnson case only involves

10   Class One at this point, right?

11           MS. CONNOLLY:  That's right, your Honor.

12           THE COURT:  And the woman died?

13           MS. CONNOLLY:  Both, actually, of the plaintiffs.

14   Larry --

15           THE COURT:  And does he still represent them?

16           MS. CONNOLLY:  Yes, he does.

17           THE COURT:  And was he appointed class counsel at all

18   in that initial case?  Because I remember over time things

19   changed.

20           MS. CONNOLLY:  Right.  What happened, your Honor, was,

21   when there was the dismissal of the Class One claims, we took

22   it up to the First Circuit, even though Mr. Haviland filed the

23   notice of appeal.  And after he was disqualified as class

24   counsel, we moved to replace ourselves on the appeal.

25           THE COURT:  And did the First Circuit allow that?

1    MS. CONNOLLY:  The First Circuit allowed that.  We --
2    THE COURT:  So is he now the -- I'm sorry.  So did I
3 appoint him class counsel back in the day?
4    MS. CONNOLLY:  No, no.
5    THE COURT:  All right, so I never did, because there
6 was some piece of this that I did appoint him class counsel
7 for, right, and then I disqualified him?
8    MS. CONNOLLY:  That's right, so he is no longer class
9 counsel in any capacity, and he did not do anything with regard
10 to the appeal in the First Circuit.  That was all class
11 counsel.
12    THE COURT:  But still he represents them as
13 individuals?
14    MS. CONNOLLY:  That's right.
15    THE COURT:  And now they've died, and the estate
16 doesn't want to serve in a class representative capacity?
17    MS. CONNOLLY:  Not only is there an estate that
18 doesn't want to serve in a class representative capacity, but
19 the class representative for Procrit, Larry Young, who is still
20 living, likewise apparently doesn't want to proceed anymore.
21 So the notice of voluntary dismissal covered the Shepleys and
22 their estate, which were the Remicade plaintiffs, as well as
23 Larry Young, who is the Procrit plaintiff.
24    THE COURT:  So right now there's no case?
25    MS. CONNOLLY:  That's right.

1    THE COURT: In a way that's the good news for you, but
2 in a way it's not.
3    MS. SHOFNER: It's not, your Honor. We would want
4 this motion, if it was going to be granted, to be granted with
5 prejudice. He's currently seeking --
6    THE COURT: No, I'll never do that with a Medicare
7 class. I'm not going to do it with prejudice.
8    MS. SHOFNER: Or at least on condition that he not
9 file a state court action competing with this?
10   MS. CONNOLLY: That's our concern, your Honor, is that
11 we have reached out to him about the fact that the voluntary
12 dismissal was without prejudice, and asked him to represent
13 that he was not going to be filing in another jurisdiction, and
14 he has refused to make that representation. So there is the
15 concern that --
16   THE COURT: But I can't do it with prejudice. I've
17 got a whole class implicated. To the whole class? Maybe I
18 could make it with prejudice as to that particular estate.
19   MS. CONNOLLY: The notice of voluntary dismissal does
20 say that it is for his client's individual claims. Now,
21 granted, there will not be any plaintiffs remaining if the
22 dismissal is granted; but if we were given time to replace the
23 class representatives, granting his notice of voluntary
24 dismissal, which we don't think can be done without a hearing,
25 but doing that would not effectively dismiss the class claims.

Page 7

1   It would only dismiss his client's individual claims.
2           THE COURT:  Well, let me ask you this:  Do you have
3   any -- you've had trouble with this over the years.  I've
4   always allowed you to replace because this is, I've always
5   said, an aging and dying class.
6           MS. CONNOLLY:  That's right.
7           THE COURT:  That having been said, you've got to find
8   someone.
9           MS. CONNOLLY:  Yes.
10          THE COURT:  And it's always been a problem for you.
11  It takes a long time.
12          MS. CONNOLLY:  Yes, it does take a long time, and
13  these in particular are very difficult clients to find.
14          THE COURT:  My guess is --
15          MS. CONNOLLY:  That we previously turned over heaven
16  and earth to look for them?
17          THE COURT:  To find people.  So I'm trying to figure
18  out what to do here.
19          Have you filed anything?  You haven't filed anything.
20          MS. SHOFNER:  We filed the motion for summary judgment
21  which was originally -- yes, no, no, no.
22          THE COURT:  On this issue.
23          MS. SHOFNER:  No, we haven't.
24          THE COURT:  So should I dismiss this case without
25  prejudice to the class?

1    MS. CONNOLLY: Well, there are a couple of things that
2 we would like for you to do. We would like to have additional
3 time, obviously, to try to find a class representative; but we
4 also believe that the dismissal can't happen without a court
5 order, and that we have some serious concerns that this
6 dismissal was done as part of Mr. Haviland's vendetta to class
7 counsel. It is very oddly coincidental that both of the J&J
8 plaintiffs suddenly decided that they didn't want to
9 participate in the case three days before we were going to have
10 oral argument on the post-remand motions for summary judgment.
11 Our attempts to get a rational explanation from Mr. Haviland
12 about why this was occurring have just not happened, and we
13 believe that he should have to account to this Court why his
14 plaintiffs are seeking to withdraw, and that there should be a
15 hearing under Rule 23(e), and he should have to come forth and
16 represent to this Court that this is in fact what these
17 plaintiffs want to do.
18    THE COURT: What's 23(e)?
19    MS. CONNOLLY: That's the dismissal, what the
20 dismissal would have to be under 23(e) for a voluntary
21 dismissal because we have a 40 -- a certified class.
22    THE COURT: All right, so that's helpful. So you want
23 me to just schedule a 23(e) hearing?
24    MS. CONNOLLY: Yes. And we believe that Mr. Haviland
25 should be required to appear, which he has indicated that he

bf70132e-41e0-420c-a653-b80d0e47e534

1   doesn't want to do.

2           THE COURT: I understand why he doesn't want to. I
3   mean, he's been disqualified here. So if he doesn't appear,
4   then what? I'm just trying to play this out. I've made it
5   pretty clear, I think -- I haven't even read your material --
6   what I'm likely to do on the 93A claim, unless I change my
7   mind, because I haven't looked at it in years. But there is
8   the issue of the national class that's triable to a jury. I
9   thought that was a fair point that was never really teed up
10  before; what do I do with that? And I hate to have the
11  potential for different suits and different statutes argued.

12          MS. SHOFNER: Your Honor, we do have precedent for the
13  idea of barring Mr. Haviland from bringing these as state law
14  claims, In Re: Phillips Petroleum.

15          THE COURT: But I wouldn't be inclined to do that, in
16  the sense of if there's a viable claim somewhere. Here's the
17  thing: I don't remember it well. The issues with respect to
18  Johnson & Johnson came up in a blur at the end. And I do
19  remember my strong feelings about 93A, but I also remember that
20  I didn't focus on -- maybe you didn't focus me on it, or maybe
21  I just didn't focus on it -- the rest of the country. And
22  that's the piece that I think the First Circuit was confused on
23  because I hadn't actually addressed it explicitly, and it came
24  back to me. And I've got to do that. And now let's assume
25  there's no real plaintiff. I can't do it, but that doesn't

1  mean I don't think some other court (Inaudible) would be
2  unbelievably confused about what to do.  I've got to do
3  something.  But I can't just prejudice all these other class
4  members and say no case can ever be brought again when this is
5  now on remand.  I'm not going to do that.
6           MS. CONNOLLY:  Well, the problem with the situation,
7  your Honor, is that, you know, obviously we could have gotten,
8  had these plaintiffs remained in, we could have gotten a ruling
9  from you that would have had an effect on the nationwide class,
10 and we would have known what state claims were surviving.  And
11 so what Mr. Haviland has in effect done is to deprive this
12 Court of the opportunity and plaintiffs of the opportunity of
13 obtaining a ruling from you, only to go file in another
14 jurisdiction.
15          THE COURT:  Well, this is what I think you need to do.
16 You haven't briefed this at all.
17          MS. CONNOLLY:  No.
18          THE COURT:  You haven't briefed it at all.
19          MS. SHOFNER:  No.
20          THE COURT:  I have no idea what the law is.  And this
21 will give you some time over the next few months that we're
22 briefing this to try and find somebody to make this go away, so
23 I can at least rule on different state statutes and what I
24 think is left and deal with your issues.  I haven't even read
25 your papers yet.  I was getting around to doing that when I saw

Case 1:01-cv-12257-PBS   Document 7043   Filed 04/12/10   Page 11 of 18

Page 11

1  this issue. Now, I have to get back into it too. I don't even
2  remember the issues well enough to discuss other states and
3  what evidence there was, and does the 30 -- the --
4          MS. CONNOLLY: The 36 states that you certified under
5  AZ or BMS?
6          THE COURT: Yes, whatever happened to that appeal? Is
7  that still pending?
8          MS. CONNOLLY: There was not actually an appeal of
9  that decision because you had stayed it pending the resolution
10 of what was happening with the appeal of the verdict in front
11 of the First Circuit.
12         THE COURT: So nothing has happened to that?
13         MS. CONNOLLY: No.
14         THE COURT: Oh. I mean, we actually, just on a whole
15 other issue, need to clean up this case, what's left, what's
16 happened on Track 2, right? You're a Track 2 man. Are we on
17 track for Track 2?
18         MR. NOTARGIACAMO: We are. We're getting on track.
19 The data has been collected. They're just running it through a
20 database that updates the addresses, and they should be
21 providing it within the next few days. And I'll provide that
22 to the claims administrator, who needs to load it and figure
23 out what kind of time they need to send out the Class One
24 notice, and then we can provide the Court with a schedule for
25 cleaning up Class One. So that's where we are with that. I'm

1  sorry, Track 2.
2          THE COURT:  So Track 2 is on track right now?
3          MR. NOTARGIACAMO:  It's almost on track.  It will be
4  on track in a few days when I get the data.
5          THE COURT:  And the big national class certification
6  decision is just on hold?
7          MS. CONNOLLY:  That's right.
8          THE COURT:  So I need to do something with that.
9          MS. CONNOLLY:  Yes, you may have to do something about
10 that because it's currently stayed, and now that the First
11 Circuit has resolved the verdict issue --
12         THE COURT:  So you and Mr. Berman and Mr. Sobol talk
13 about what we're supposed to do with that, okay.  That's
14 putting that aside.
15         When do you think you can file motions on what to do
16 about this?
17         MS. CONNOLLY:  I think we could get something on file
18 in ten days?
19         MS. SHOFNER:  Likewise.
20         THE COURT:  And we can serve them on Mr. Haviland as
21 well, and then we'll have a hearing, like, say in early May?
22 Does that make some sense?
23         MS. CONNOLLY:  That's fine, your Honor.
24         THE COURT:  In the meantime, you'd better try and find
25 somebody.

1    MS. CONNOLLY:  We will.

2    THE COURT:  Because otherwise, it's such an old case,
3 and if this was the first time this had ever come up, I would
4 say, "Oh, you'll just find someone else."  But I know you must
5 have tried really hard before, and this is a really aging
6 class.  I'm desperate to resolve this in a way that if there's
7 a viable cause of action, there are people still alive to
8 benefit from it; and if there's not, you can appeal it and just
9 get some ruling on it.

10   MS. CONNOLLY:  We feel the same way.

11   THE COURT:  And I have no desire -- let me just say
12 this:  I found it unbelievably difficult to go through every
13 state law.

14   MS. SHOFNER:  As did we, your Honor.

15   THE COURT:  I tried to group them and did the best
16 that I could.  But another viable option for the First Circuit
17 would be to just do it state by state and just send them all
18 back.  I just was in touch with some judge in Idaho who's doing
19 his own AWP case.  I mean, if worst comes to worst, that's what
20 will happen.  I mean, those are the two choices, right,
21 statewide classes or a national class?

22   MS. SHOFNER:  We do think a national class is still
23 viable, though, your Honor, when you see the papers.

24   THE COURT:  I don't know.  It may be true.  I can't
25 remember anymore.  At one point I was on top of all these

bf70132e-41e0-420c-a653-b80d0e47e534

1  little FTCA acts.  I don't remember them anymore.  But my only
2  point is, we can't do anything without a representative, but I
3  am not going to just bar an entire class that may have a viable
4  claim under the law of New Jersey or something.
5       Now, if he brings it, why do I care if it's just a
6  state law claim?
7       MS. CONNOLLY:  If it's just a state law claim?
8  Because --
9       THE COURT:  Under the laws of New Jersey just for that
10 state?
11      MS. CONNOLLY:  Because what would have happened in
12 this court, you know, is that if he hadn't withdrawn those
13 plaintiffs, you could have made a decision that perhaps those
14 plaintiffs had viable claims, and they could have been in front
15 of this Court.
16      THE COURT:  I don't know what I'm going to do.  That's
17 why you need to brief it.
18      MS. CONNOLLY:  Right.
19      THE COURT:  If you come up with your own class rep,
20 that's one thing.  That's why I'm an MDL court.  If you can't,
21 he's never going to be able to certify a national class, but he
22 might be able to certify a New Jersey class.  Where are they
23 from?
24      MS. CONNOLLY:  Nevada and Oklahoma.
25      THE COURT:  He can't do anything in Federal Court

1  without it coming to me, as a practical matter, but, I mean, he
2  could do just a state-only class for each of those people,
3  right?  Why would I prejudice him from being able to do that if
4  I didn't have anything here?  So that's why it's paramount for
5  you to find somebody.
6          MS. CONNOLLY:  Understood.
7          THE COURT:  And if you can't, I'll dismiss probably
8  without prejudice to his bringing a local, non-national class.
9  Are any state courts now certifying national classes?
10         MS. SHOFNER:  Not to my knowledge, your Honor.
11         THE COURT:  That's almost passe, right?
12         MS. CONNOLLY:  Right.  California, California under
13 some circumstances is certifying nationwide classes under its
14 laws, but that's the only one I'm aware of.
15         THE COURT:  Well, I mean, it's not a real threat to
16 you.  None of these people are from California.
17         So, anyway, you'll file something in ten days.  If you
18 want to reply to it in another ten days.  What day should the
19 hearing be?
20         THE CLERK:  May 3 at 4:00 p.m.
21         THE COURT:  And on that date as well, when do -- if
22 you could give me by that date just from your point of view
23 what's left of AWP, what do I need to do, because I'm now
24 almost to the point where I'm either going to try or settle a
25 lot of the remaining government cases.

1           MS. CONNOLLY:  Sure, your Honor.  We could give you a
2   status report.
3           THE COURT:  I mean, not involving Johnson & Johnson
4   but involving the AWP issue, and sort of I was hoping by the
5   end of next year to wrap up AWP.
6           MS. CONNOLLY:  We hope so too.
7           THE COURT:  It's been a decade.
8           MR. NOTARGIACAMO:  Ten years is a long time, your
9   Honor.
10          THE COURT:  Ten years, it's been a decade.
11          MS. CONNOLLY:  We all have new spouses, children.
12          THE COURT:  I'm finishing up on Neurontin too, so I
13  may be a happy woman within about a year.  Another big MDL I
14  think should be out of here within a year.  So I'm sort of
15  hoping to -- really, ten years is a long time, and we've all
16  worked unbelievably hard, and this is something I should try
17  and resolve.  And the Track 2 and the national class is
18  probably all that's left from you, unless I'm not thinking of
19  something.
20          MS. CONNOLLY:  You've got BMS next week, final
21  approval, I think.
22          THE COURT:  Right, but, I mean, that's what I want,
23  everything that I need to do to clean it up and see what's
24  going on there, okay?  Thank you.  Sorry your colleague got
25  stuck on the --

bf70132e-41e0-420c-a653-b80d0e47e534

1          MS. SHOFNER:  He's spending the entire day on the
2    train, it looks like, so --
3          THE COURT:  Oh, they stopped on the tracks?
4          MS. SHOFNER:  They stopped on the tracks, and then
5    they turned it around, and he had already been on the train
6    four hours, so --
7          THE COURT:  All right, thank you very much.
8          MS. SHOFNER:  Thank you.
9          MS. CONNOLLY:  Thank you, your Honor.
10         MR. NOTARGIACAMO:  Thank you, your Honor.
11         THE CLERK:  Court is in recess.
12         (Adjourned, 2:22 p.m.)

bf70132e-41e0-420c-a653-b80d0e47e534

1 C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS ) ss.
CITY OF BOSTON )

I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 17 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 01-12257-PBS, In Re: Pharmaceutical Industry Average Wholesale Price Litigation, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

In witness whereof I have hereunto set my hand this 12th day of April, 2010.

/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL FEDERAL COURT REPORTER

bf70132e-41e0-420c-a653-b80d0e47e534