UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| IN RE PHARMACEUTICAL INDUSTRY ) <br> AVERAGE WHOLESALE PRICE ) <br> LITIGATION ) <br> _____) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ALL ACTIONS ) <br> _____) | MDL No. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS <br><br> Judge Patti B. Saris |

**PLAINTIFFS' MOTION FOR APPROVAL
OF DISTRIBUTION OF ADDITIONAL GSK SETTLEMENT PROCEEDS**

Plaintiffs seek the Court's approval to distribute additional proceeds of the GSK Settlement. Class Plaintiffs seek approval to 1) make payment of all funds in the TPP Settlement Pool to eligible TPP claimants, including 100 otherwise valid TPP claims that were filed after the claim deadline, 2) make payment of the ISHP Group Reversion Amount to ISHP Counsel in accordance with Section 7(g) of the GSK Settlement Agreement, 3) pay additional consumer claims that have been received as a result of consumers' receipt of additional payments and letters required by the Court's approval of the MDL Mediator's Binding Mediation Decision [Docket No. 6300] ("Mediator's Decision") and 4) make payments to Rust Consulting for additional administrative expenses associated with processing TPP and additional consumer claims.

A.     **PAYMENT OF VALID TPP CLAIMS**

Plaintiffs seek approval to make payments to 1,896 TPPs that filed valid claims. The total payment amount of to all valid TPP claimants is $10,769,892.18[1].  As detailed in the accompanying Affidavit of Eric J. Miller Regarding Allocation and Distribution of Net Settlement Fund to Third-Party Payors and ISHP Group Reversion Amount in the GSK Settlement, attached as Exhibit A ("*Miller TPP Affidavit*"), over 43,000 notice packets were issued to potential TPP class members by first class mail.  All received TPP claims were reviewed and analyzed by Rust Consulting, and any TPP submitting a deficient claim was given the opportunity to fix all deficiencies.  Rust also audited the claims of hundreds of TPPs, including claims of all TPPs with purchases over $300,000.00.  *Miller TPP Affidavit* ¶ 18.  As a result of the auditing process 194 TPP claims had their claims amount reduced, resulting in a total reduction in TPP claims of over $1.2 billion dollars.  The reduction in claims resulted from the disallowance of claims made for purchases outside the class period or for drugs that were not part of the GSK Settlement. *Miller TPP Affidavit* ¶ 19.

Included in the list of eligible TPP claimants are 100 TPP claimants whose claims were postmarked after the filing deadline. *Miller TPP Affidavit* ¶ 23, Ex. 7.   Plaintiffs

---

[1]   Since interest continues to accrue on the settlement funds the total payout will be slightly higher depending on the exact date of distribution.

propose to treat such late filed TPP claims equally with the claims of all other TPPs, and seek the Court's approval to do so.

Class Plaintiffs move the Court for permission to make these payments to TPP class members.

**B.     CALCULATION AND PAYMENT OF THE ISHP GROUP REVERSION AMOUNT**

Pursuant to the Settlement Agreement, ISHPs received the ISHP Group Initial Payment of $11 million shortly after preliminary approval of the Settlement. The amount of the initial payment to ISHPs was based on a percentage of the estimated amount the ISHPs would be entitled to as TPP claimants in the Settlement. The remaining percentage of this estimated amount was retained in the event ISHP actual claimed purchases fell short of expectations. The initial payment to ISHPs consisted of 75% of 50% of the settlement funds allocated to TPPs minus all fees and expenses. In return for this initial payment ISHPs provided GSK with a full release of claims.

Pursuant to Section 7(g) of the Settlement Agreement, once all TPP and ISHP claims were reviewed and audited by the Claims Administrator, Rust conducted a calculation of the ISHP Group Reversion Amount. This calculation, taking into account the $11 million already paid to ISHPs, was made to determine what additional funds, if any, ISHPs would be entitled to based on their actual claims as a percentage of all TPP actual claims, including those of TPP class members. For purposes of this calculation,

3

ISHPs shared equally in all fees and expenses, including attorney's fees. ISHPs claims equaled 62% of all TPP claims. TPP class members comprise the remaining 38% of total TPP claims.[2] The ISHP Group Reversion Amount, as calculated by Rust and agreed to by Class Counsel as well as ISHP Group Counsel, is $6,911,545.23. *Miller TPP Affidavit*, ¶ 28. Class Plaintiffs seek the Court's approval to make this payment to the ISHP Group.

Payment of the ISHP Group Reversion Amount to the ISHP's and the proposed payments to valid TPP claimants will exhaust all remaining funds in the TPP Settlement Pool.

C.   **CONSUMER CLAIMS**

As the Court is aware, consumer claimants previously received payments under the GSK settlement pursuant to the original Court-approved plan of distribution. After this initial distribution there remained approximately $11.6 million in the GSK consumer settlement fund. In accordance with Section 22(b)(vii)(b) of the Settlement Agreement, mediation was held in June 2009 with the MDL Mediator Eric Green, with all constituents present, to determine the disposition of remaining consumer funds. A recommendation was made to the Court by Mediator Green [Docket No. 6300]. On August 4, 2009 the Court endorsed the MDL Mediator's recommendations.

---

[2] Pursuant to the Settlement Agreement the calculation of the ISHP Reversion Amount also includes claims or estimated purchase amounts associated with TPP Opt-Outs. There were 14 TPP Opt-Outs. In consultation with Class Counsel GSK agreed to waive the calculation and payment of any refund associated with TPP Opt-Outs.

Accordingly, Class Plaintiffs instructed Rust to make additional payments to each of 3,192 claimants with valid claims, paying them three times their total recognized claim amount in keeping with distributions in later AWP settlements.  These payments resulted in an additional distribution of $3,687,856.55 to these consumers.  Affidavit of Eric J. Miller Regarding The Distribution of Additional Funds to Consumers in the GSK Settlement, attached hereto as Exhibit B, ("*Miller Consumer Affidavit*"), ¶ 3.  There were 41 claimants who had otherwise valid claims but failed to sign their claim form.  Rust made attempts both by written letter and phone calls to get these consumers to correct this deficiency.  25 consumers have corrected this deficiency and 16 have not.  Payment is being made to those 25 consumers which will result in an additional distribution of $14,540.34.

Finally, all 6,420 consumers whose claims were invalid for lack of documentation or for some other defect, other than lack of signature, were issued the minimum payment of $100.  This resulted in the distribution of an additional $644,364.87 of consumer funds.  Some portion of these checks currently remain uncashed or have been reissued upon request of the claimant.  *Miller Consumer Affidavit*, ¶ 5.

Along with a check for $100 each claimant with an invalid claim was also sent an explanation as to why they were receiving a check.  *Miller Consumer Affidavit*, ¶ 5, Ex.

B. That letter also again provided the consumer instruction as to how to file a claim if they believed they were entitled to more than the minimum payment of $100. As a result of this letter, an additional 166 consumers either corrected deficiencies in their earlier claims or submitted valid claims for the first time. Payment of these newly corrected claims will result in a total additional distribution of $1,262,401.49.[3]

The largest of the newly filed and approved claims is that of Mrs. Brenda Ford of Lisman, Alabama, who is entitled to $331,253.89 (three times the amount of her recognized loss of $110,417.96). Rust has audited Mrs. Ford's claim in detail, including speaking to personnel at her physician's office and her treating hospitals, as well as a review of the voluminous medical records provided by Mrs. Ford. In addition, Plaintiffs' counsel have spoken personally with Mrs. Ford to confirm that she received the medicines she claims, and did in fact pay for such medicines or is still obligated to pay for them. Plaintiffs' counsel brings Mrs. Ford's claim to the attention of the Court both in a sense of thoroughness, and to highlight to the court the substantial benefit being received by consumers through the GSK settlement.

These recently filed claims also include 18 other claims for amounts over $10,000.00. In accordance with prior procedures in this litigation, Rust is conducting an

---

[3] The Miller Consumer Affidavit makes reference to lists identifying the eligible claimants as well as those claimants to be audited, attached as Exhibits C and D. Plaintiffs are not filing those exhibits in order to preserve the identities of individual consumer claimants. Plaintiffs will make those exhibits available if the Court so requests.

audit of these claims to confirm their validity and accuracy. The audit process is ongoing and may result in some of these large claims being denied. Class Plaintiffs seek the Court's approval to pay each of the newly corrected claims, including these large claims once the audit process confirms are valid. Rust anticipates these audits will be complete by late 2010. *Miller Consumer Affidavit*, ¶ 7.

### D.   PAYMENT OF ADMINISTRATIVE EXPENSES

Plaintiffs also seek Court approval to pay Rust Consulting for additional costs and fees relating to attempts to encourage consumer claimants to file valid claims and the processing of new consumer claims, and finalizing the TPP and ISHP payment amounts. Rust Consulting has incurred $80,538.49 of additional expenses related to these efforts and anticipates an additional $31,610.00 in fees to make additional payments outlined herein. *Miller TPP Affidavit*, ¶ 29.

### E.   REMAINING GSK SETTLEMENT FUNDS

There is currently $7,294,328.90 in the GSK consumer settlement pool. Assuming the Court approves all of the payments outlined herein, and assuming subsequent payments to the consumers with claims currently being audited, there will remain approximately $6,017,441.07 in the GSK consumer settlement Pool.[4] *Miller Consumer Affidavit*, ¶ 9. Once all payments have been made and all issued checks have

---

[4] If the court approves all the payments proposed herein, the total distribution to GSK consumer claimants, including original distribution amounts will be $7,404,688.51..

7

been either cashed or remain uncashed for 90 days or more, Rust can determine the final amount outstanding in the Consumer Settlement Pool.  *Id*.  Pursuant the Settlement Agreement and the prior negotiations of the parties, that money will be paid to those State's Attorneys General who participated in the GSK Settlement[5] in amounts pre-negotiated between these States and previously submitted to the Court.  [Docket No. 6365].

**WHEREFORE,** Plaintiffs respectfully requests that this Court grant their Motion and enter the Proposed Distribution Order filed herewith.

DATED:  April 16, 2010

By   /s/ **Steve W. Berman**
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

---

[5] The Participating States include Arizona, Connecticut, Montana, Nevada, New York and Pennsylvania.

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION OF ADDITIONAL GSK SETTLEMENT PROCEEDS**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 16, 2010, a copy to LexisNexis File & Serve for posting and notification to all parties.

        **/s/ Steve W. Berman**
        Steve W. Berman