# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT AND RELEASE OF ASTRAZENECA RELATED TO NON-MASSACHUSETTS CLASSES 2 AND 3, APPROVAL OF THE FORM AND METHOD OF NOTICE TO THE CLASS AND SCHEDULING OF A FAIRNESS HEARING**

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ...........................................................................................1

II. BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS ...........................2

III. DESCRIPTION OF THE PROPOSED SETTLEMENT ....................................3

 A. The Proposed Settlement Classes ............................................................3

 B. Total Settlement Amount and Allocation ...............................................3

 C. The Proposed Notice Plan........................................................................4

 D. The Claims Process...................................................................................6

 E. Calculation of Payments ..........................................................................7

 F. Attorneys' Fees and Expenses and Class Representative Compensation..............12

IV. ARGUMENT .................................................................................................13

 A. The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement........................................................14

  1. The Requirements of Rule 23(a) have been satisfied ................................14

 B. Preliminary Approval is Appropriate......................................................14

  1. The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval .............................................16

  2. The proposed Settlement is the result of arduous, arm's length negotiations conducted by highly experienced counsel............................18

  3. Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues ...........19

 C. The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing..............................................................................20

V. CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re "Agent Orange" Prod. Liability Litigation*, 597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................................................................18

*Air Lines Stewards & Stewardesses Association Local 550 v. American Airlines, Inc.*, 455 F.2d 101 (7th Cir. 1972) ..............................................................20

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .....................................13, 14, 20

*Argo v. Harris*, 84 F.R.D. 646 (E.D.N.Y. 1979)..................................................................17

*Armstrong v. Board of Sch. Director*, 616 F.2d 305 (7th Cir. 1980)..................................18

*Carlough v. Amchem Products, Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993) ..............................20

*City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041 (1st Cir. 1996) ...................................................................................................13, 18, 19

*In re Compact Discount Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197 (D. Me. 2003) ........................................................................................14

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985)....................................16

*Duhaime v. John Hancock Mutual Life Insurance Co.*, 183 F.3d 1 (1st Cir. 1999) ..........15

*Durrett v. Housing Authority of Providence*, 896 F.2d 600 (1st Cir. 1990) ...............15, 20

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ............................17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)..........................................................21

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) .........................................................18

*In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768 (3d Cir. 1995) ..................................................................................................................17, 19

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ...........................................................21

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ......................21

*Hawkins v. Commissioner of New Hampshire Department of Health & Human Services*, 2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004) ............13, 15, 17, 18, 19

- ii -

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)........................................................................18

*Kovacs v. Ernst & Young*, 927 F.2d 155 (4th Cir. 1991)...................................................17

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)......................................21

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) ...........................13

*Levin v. Mississippi River Corp.*, 59 F.R.D. 353 (S.D.N.Y 1973), *aff'd on op. below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)..................................................................18

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ...........................................22

*Maritimes Steel v. Continental Ill. National Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ......................................................................................................................18

*In re Michael Milken & Associates Sec. Litigation*, 150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................................................................................21

*In re MicroStrategy, Inc. Sec. Litigation*, 148 F. Supp. 2d 654 (E.D. Va. 2001) .............22

*Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000).................................................................................14

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................21, 22

*In re NASDAQ Market-Makers Antitrust Litigation*, 176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................................................................15

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1 (N.D. Ohio 1982) ...........................................................................................................................17

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) ...........................................................17

*In re Prudential Insurance Co. of America Sales Practices Litigation*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ...............................17, 23

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53 (1st Cir. 2004) .............................20

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ..........................................................19

*In re Screws Antitrust Litigation*, 91 F.R.D. 52 (D. Mass. 1981) .....................................14

*Smilow v. Southwestern Bell Mobile System*, 323 F.3d 32 (1st Cir. 2003)......................14

*South Carolina National Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) ......................13

*United Founders Life Insurance Co. v. Consumers National Life Insurance Co.*,
    447 F.2d 647 (7th Cir. 1971) ....................................................................................17

*White v. National  Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .................15, 21

*Whitford v. First Nationwide  Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ...........................17

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)........................................................17

## STATE CASES

*Henry v. Sears Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) ...............22

## FEDERAL STATUTES

Fed. R. Civ. P. 23(3) ........................................................................................................12

Fed. R. Civ. P. 23(a) ........................................................................................................14

Fed. R. Civ. P. 23(c)(2).....................................................................................................20

Fed. R. Civ. P. 23(e) ...................................................................................................13, 20

## MISCELLANEOUS

2 Newberg § 1.25..............................................................................................................15

Manual § 30.41  .....................................................................................................15, 20, 23

Newberg § 11.41, at 87-89.................................................................................................18

001534-16  375450 V1

## I.    INTRODUCTION

Class Plaintiffs respectfully submit this Memorandum in support of the Joint Motion for Entry of an Order Granting Preliminary Approval of the AstraZeneca Class 2 and 3 Non-Massachusetts Settlement and Approving the Form and Method of Notice to the Class (the "Joint Motion").  The Settlement encompassed by the AstraZeneca Settlement Agreement and Release (the "Agreement") provides for AstraZeneca to pay a total of $90 million to settle the claims of all Consumer Class Members, all TPP Class Members, and the claims of all Independent Settling Health Plans ("ISHPs").  All court-awarded fees, costs and expenses, compensation to the named Class Representatives and possible reversion amounts related to TPP opt-outs will be paid out of the total $90 million settlement amount.  The parties are filing a separate motion for approval of a separate settlement agreement related to claims for purchases of Class Drugs made in the Commonwealth of Massachusetts.

The Settlement and the proposed Notice Plan are consumer friendly.  Consumers in Class 3 account for a very small percentage of overall damages yet have been allocated up to $10 million or more than 11% of the total Settlement Funds.  Consumers in Class 3 will be provided an option to obtain a full refund of their out-of-pocket expenditures, and for purchases during the so-called "heartland" damage period of 2007 to 2003 up to three times (3x) their out-of-pocket expenditures for the drug Zoladex®.  Consumers also have the option of choosing an "Easy Refund" of up to $150 by certifying that they paid cash or one or more percentage co-payments for the Class Drugs during the Class Period.  Class Plaintiffs believe these measures will help increase consumer participation in the Settlement.

Class Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable and adequate.  It has been reached after extensive arm's length, intensely fought negotiation, all of which were conducted under the auspices of the Court appointed mediator, Eric Green.

- 1 -

Accordingly, the Joint Motion seeks preliminary approval of the Settlement and certification of the Classes for settlement purposes and requests, *inter alia*, that the Court order that notice of the Settlement be disseminated to the Classes, and that the Court schedule a hearing to determine whether final approval of the Settlement should be granted.  A Proposed Preliminary Approval Order is attached as Ex. E to the Settlement Agreement filed with the Joint Motion.

At this preliminary stage of the Settlement process, Class Plaintiffs respectfully request that the Court enter an Order:

1.   Certifying the Proposed Classes as Settlement Classes;

2.   Appointing Class Representative Plaintiffs and the following law firms as Class Settlement Counsel:  Hagens Berman Sobol Shapiro LLP; Spector, Roseman Kodroff & Willis, P.C; Wexler Wallace LLP; and Hoffman & Edelson, LLC;

3.   Granting preliminary approval of the proposed Settlement;

4.   Scheduling a Fairness Hearing to consider final approval of the Settlement and Plaintiffs' counsel's motion for attorneys' fees, reimbursement of expenses, and compensation to the named plaintiffs;

5.   Approving the proposed forms of Notice and Summary Notice;

6.   Approving the proposed Claim Forms and instructions; and

7.   Authorizing dissemination of the Notices and Claim Forms substantially in the forms attached to the Agreement as Exhibits by first class mail to all Third-Party Payor Class Members  (as set forth in the proposed Notice Plan), and authorizing publication of the Summary Notice.

## II.      BRIEF SUMMARY OF SETTLEMENT NEGOTIATIONS

The Settlement has been reached after arm's length and intensely fought negotiation sessions conducted with the court appointed mediator, Eric Green.  After the global amount was reached with AstraZeneca, separate counsel representing the TPPs, ISHPs, and consumers negotiated allocation of the $90 million in a separate round of hard fought negotiations.

### III.    DESCRIPTION OF THE PROPOSED SETTLEMENT

#### A.    The Proposed Settlement Classes

Consistent with the Court's January 30, 2006, Consolidated Order Re:  Motion for Class

Certification, the proposed Settlement Classes are as follows:

> **Third-Party Payor MediGap Supplemental Insurance Class ("Class 2").**
> All TPPs in the United States who, from January 1, 1991 through
> January 1, 2005, made, or incurred an obligation to make,
> reimbursements for any portion of a Medicare Part B co-payment
> for Class Drugs purchased outside the Commonwealth of
> Massachusetts.

> **Consumer and Third-Party Payor Class For Payments Made Outside the
> Medicare Context ("Class 3").**
> All natural persons in the United States who made, or incurred an
> obligation to make, a non-Medicare Part B payment for Class
> Drugs purchased outside the Commonwealth of Massachusetts and
> all TPPs in the United States who made, or incurred an obligation
> to make, non-Medicare Part B reimbursements for Class Drugs
> purchased outside the Commonwealth of Massachusetts, during the
> period from January 1, 1991, through June 11, 2010.

The Court will recall that a separate settlement agreement was reached regarding claims

against AstraZeneca by Class 1 (Medicare Part B Co-Payment Class).  That agreement was

approved by the Court on October 2, 2008.

#### B.    Total Settlement Amount and Allocation

AstraZeneca has agreed to pay a total of $90 million to settle the MDL Actions, and all

related claims of the Class Plaintiffs and the ISHP Group.  On February 24, 2010, separate

counsel representing TPPs and Consumers held their first negotiations to allocate settlement

funds between Consumers and TPPs.  Subsequent arms length negotiations were held over the

following weeks resulting in an overall allocation agreement.  In accordance with that

negotiation, the $90 million will be allocated as follows:

> Up to $10 million is to be allocated to satisfy the claims of Consumers and $80
> million is allocated to satisfy the claims of TPPs and ISHPs combined.  Any

Consumer Funds not distributed to Consumers will be re-allocated to further satisfy TPP/ISHP claims.  Fees and expenses associated with the litigation and administration of the Settlements will be paid in proportion to the total amount allocated to each constituency.

### C.    The Proposed Notice Plan

The proposed notice plan is set forth in Exhibit G to the Settlement Agreement.  The

Notice Plan is summarized as follows:

(i)    Class 3 Consumers

Consumer class members will be notified of the Settlement, and advised of the steps

needed to either submit claims or opt-out of the Settlement, through both direct mail notice to

identifiable consumers and the publication notice program designed by Kinsella Media, as well

as through information on consumer payments submitted by TPPs and ISHPs to CASS, the co-

claims administrator.

Media Publication:  In order to notify Class 3 Consumers of the existence of the

Settlement and the availability of refunds, Kinsella/Novak Communications ("Kinsella") has

crafted a media plan intended to target potential consumer class members in Class 3.  The Notice

Plan calls for a combination of cable television spots, general internet banner ads as well as ads

placed on websites geared specifically to health related issues, publication in health targeted

publications as well as national publication in consumer magazines and national newspaper

supplements. Based on Kinsella's substantial experience in designing media programs to reach

the broadest possible number of consumer class members, as well as utilization of a sophisticated

software program identifying which publications provide the optimal reach to a target audience,

Kinsella has selected a wide array of media components, including cable television ads and

extensive internet advertisement.  Kinsella estimates that this paid media program will reach

80.5% of adults over 50 and 71.5% of adults 25-44.  See Settlement Agreement, Ex. G.  The

- 4 -

Summary Notices designed to reach Class 3 Consumers are attached as Exhibit D.1. to the Settlement Agreement.

Direct Mail Notice:  Because consumer claim amounts are relatively small, traditionally consumers have been less likely than TPPs to submit claims in a class action settlement.  The Court has expressed concerns over this fact in the case on many instances.  To address this concern, Class Counsel has developed a direct mail approach designed to get settlement proceeds into the hands of consumer class members.  To this end, the ISHPs have agreed to use reasonable best efforts to provide consumer co-payment data and contact information of their insureds to the Claims Administrator.  The proposed TPP Claim Form also requests such information from class TPPs.  Consumer Class Members who can be identified through this process will receive individual direct mail notice, see Settlement Agreement Ex. D.2, which promises to enlarge the pool of consumers who can be expected to participate in the claims process and, depending upon the quality and amount of data received, the information provided by TPPs may be used to make a distribution directly to identified consumers.  This process will be in addition to the proposed Media Publication discussed above.

A detailed Notice and Claim Form geared specifically toward consumers in Class 3 will also be mailed to any consumer who requests one by phone or on the settlement website.  Among other things, the Notice describes why the Class Member received the Notice and what the lawsuit is about; advises that the recipient may be a member of the Class; describes the terms and benefits of the Settlement; and gives instructions for making a claim.

(iii)  TPPs in Class 2 and Class 3

As further outlined in the Notice Plan, TPP Class Members in both Class 2 and Class 3 will receive direct mail notice of the Settlement, based on a proprietary database maintained by the Claims Administrator for that purpose.  <u>See</u> Settlement Agreement, Exhibit. E.1.

### D.     The Claims Process

(i)  <u>Class 3 Consumers</u>

In light of the difficulty many consumer class members have in obtaining records evidencing their payment of a percentage co-payment for drugs, the Notice to consumers in Class 3 will provide consumers with two options for receipt of a payment:

(1)      <u>The Easy Refund Option.</u>   If a Consumer elects the "Easy Refund Option" on the claim form provided and the consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating their payment made to each such Consumer Settlement Class Member shall be equal to $150.00.

(2)      <u>The Full Estimation Refund Option.</u>  If a Consumer elects the "Full Estimation Refund Option" then the consumer will be required to estimate the consumer's total out-of pocket expenses associated with percentage co-payments or full cash payments for each drug for which the consumer is seeking payment in the Settlement.  The consumer will also be required to provide documentation to support the consumer's estimated out-of-pocket expenses for each drug.

The Consumer's estimated out-of-pocket expenses for Zoladex® during the period of December 1, 1997 through December 31, 2003 will be multiplied by a factor of three (3x), and added to the consumer's total obligation related to Zoladex® outside of this time period (without a

multiplication factor).  The Consumer's estimated out-of-pocket expenses for Pulmicort Respules® will be multiplied by 0.25.  The sum of these two figures will be used to calculate the payment made to each Consumer.

(ii)  TPPs in Class 2 and Class 3

In order to make a valid claim TPP Class members will be required to submit the amount of purchases of each of the Class Drugs during the period of January 1, 2003 to December 31, 2004.  This period is substituted for claims associated with the full class period in recognition of the difficulty TPPs have in accessing claims data that is older and likely not kept electronically or on current electronic systems.  This "proxy period" will be used to determine the payments made to each TPP Class Member.

In order to validate their claim for payment TPP Class Members with claimed purchases for Class Drugs during the proxy period that exceed $300,000.00 in total shall be required to submit electronic claims documentation with their claim.  The form and data required to be submitted are delineated in the TPP Claim Form.  See Settlement Agreement, Ex. E.2.  Those TPPs whose claimed purchases are $300,000.00 or less need not submit electronic claims documentation with their claim but must furnish such claims documentation upon request of the Claims Administrator.

### E.      Calculation of Payments

(i)  Class 3 Consumers

The amount to which a Class 3 consumer will be entitled will be determined based upon the consumer's election between the Easy Refund and the Full Estimation Refund options.  If a Class 3 consumer elects the Easy Refund and the consumer's claim is accepted by the Claims Administrator, the "Total Recognized Claim" for purposes of calculating the payment made to that consumer will be equal to $150.00.

- 7 -

If a Class 3 consumer elects the Full Estimation Refund the consumer's claim will be based upon the consumer's estimation of out-of-pocket expenditures for each Class Drug, as supported by at least one (1) piece of documentary evidence per drug.   If a Consumer elects the "Full Estimation Refund Option" the consumer will be required to estimate the consumer's total out-of pocket expenses associated with percentage co-payments or full cash payments for each drug for which the consumer is seeking payment in the Settlement.

In keeping with the practice in other AWP Settlements, compensation related to each drug has been tailored to the evidence and the circumstances related to each drug.  Claims related to Zoladex, the subject of extensive liability evidence during the Massachusetts trial, are weighted more heavily than claims related to Pulmicort Respules®.  As has also been done in past AWP Settlements, claims for payments made during the so-called "heartland" damages period, for Zoladex, will be subject to a multiplication factor.  The Consumer's estimated out-of-pocket expenses for Zoladex® during the period of December 1, 1997 through December 31, 2003 will be multiplied by a factor of three (3x), and added to the consumer's total obligation related to Zoladex® outside of this time period (without a multiplication factor).  In recognition of the relatively modest spreads associated with Pulmicort Respules®, Consumer's estimated out-of-pocket expenses for Pulmicort Respules® will be multiplied by 0.25.  The sum of these two figures will be used to calculate the payment made to each Consumer.

If the sum of all valid Total Recognized Claims for all Consumer Settlement Class Members exceeds the amount of the Settlement Funds allocated to satisfy Consumer Settlement Class Member claims, all consumer claims will be reduced proportionately.

If the sum of all valid Total Recognized Claims for all Consumer Settlement Class Members is less than the amount of Settlement Funds allocated to satisfy Consumer Settlement

Class Member Claims, the undistributed funds will be shared equally by TPPs and ISHPs to further satisfy their claims.

(iii)  <u>TPPs and the ISHP Group</u>

In recognition of the fact that the claims of all TPP Settlement Class Members and ISHP Group Members for all Class Drugs would certainly exceed the total amount of funds allocated to satisfy the claims of TPP Settlement Class Members and ISHP Group Members under the Settlement Agreement, each TPP Settlement Class Member or ISHP Group Member will be paid a pro rata portion of the Settlement Amount allocated to TPP Settlement Class Members and the ISHP Group.  TPP Settlement Class Members and ISHP Group Members will be required to submit the total amount of purchases during the period of January 1, 2003, to December 31, 2004, of all Class Drugs.  The TPPs expenditures for Zoladex®, plus their expenditures for Pulmicort Respules® multiplied by .25, will be used as the TPP's or ISHP Group Member's "Total Recognized Claim."  This figure, if properly supported by the claimant and accepted by the Claims Administrator will be used for purposes of calculating the pro rata payment made to each TPP Settlement Class Member and to the ISHP Group.

(iv)  <u>ISHP Group Initial Payment and True-Up Between TPPs and the ISHP Group</u>

Shortly after preliminary approval of the Settlement, the ISHP Group will be paid an initial payment of $18.3 million.  The remaining funds available to pay ISHP claims will be kept aside and subject to a "true-up" between the ISHP Group and TPP Settlement Class Members. In exchange for receipt of this initial payment the ISHPs will fully release their claims against AstraZeneca.  Because they are separately represented and are not class members, the ISHP Group can provide a release to AstraZeneca without the need for Court approval or the time

- 9 -

involved in providing notice.  In return the Agreement provides for an expedited payment of some portion of the monies the ISHP Group would ultimately be entitled to from the Settlement.

The $18.3 million initial payment was derived by making certain very conservative assumptions about the size of the ISHP Group claims as compared to those of TPP Settlement Class Members.  First, the ISHPs demonstrated that they insure more than 60% of the "covered lives" (those individuals with private health insurance) in the United States.  As demonstrated in Exhibit A to the Settlement Agreement, ISHPs have actually demonstrated they insure over 70% of the covered lives in the United States.  In the experience of class counsel this measure has been an effective proxy for the amount of relative claims by the ISHP Group in similar drug settlements.  Despite having demonstrated coverage of 70% of the covered lives in the United States, the ISHP Group Members have, in the aggregate, been initially allocated only 50% of the total funds allocated to all TPPs.  Second, certain robust assumptions were made about the amount of attorneys' fees and costs that would be applied to the amounts ultimately available to be distributed to the ISHP Group and subtracted from the 50% allocation.  Finally, in determining the initial payment amount, only 75% of the net allocation will be paid out to the ISHP Group as part of the initial payment, leaving the remainder to be subject to the true-up between the ISHP Group and TPP Settlement Class Members.

The true-up formula is a simple one.  Each TPP Settlement Class Member and ISHP Group member individual claim is calculated in exactly the same manner, as a percentage of all TPP related claims.  The amount of funds paid to the ISHP Group after all claims have been calculated by the Claims Administrator will account for the $18.3 million initial payment.  Essentially, the $18.3 million will be subtracted from what the ISHP Group is ultimately entitled

to and they will be paid the balance of what they are entitled to at the end of the claims and auditing process.

(v) Reversion to AstraZeneca

Under no circumstances other than those described below will any portion of the Settlement Amount revert to AstraZeneca. In the event there are valid TPP Opt-Outs from the Class, once all claims of all TPPs, including TPP Class Members and the ISHP Group have been received and audited by the Claims Administrator, AstraZeneca will be entitled to a refund of a percentage of the $80 million set aside for TPP claims. The amount of the refund is meant to approximate the amount of funds the TPP Opt-Outs would have been entitled to under the claims process, free of any reduction for attorneys' fees or costs of notice or administration. Presumably any TPP Opt-Out may seek to separately negotiate with or litigate their claims against AstraZeneca.

The percentage of the $80 million refunded to AstraZeneca will be equal to the percentage of purchases by TPP Opt-Outs compared to the claimed purchases of all TPPs, including the ISHP Group, that have submitted claims documentation to the Claims Administrator. So if TPP Opt-Outs represent purchases that are 2% of the purchases of the sum of all TPP purchases, including TPP Class purchases, ISHP Group purchases and TPP Opt-Out purchases, AstraZeneca will receive 2% of the total funds ultimately allocated to TPPs and ISHPs combined ($80 million plus any of the $10 million set aside for Consumer Claims and not claimed by Consumers). There is no provision for a refund to AstraZeneca resulting from valid Consumer Opt-Outs.

As part of their request for exclusion, TPP Opt-Outs are requested to provide the Claims Administrator with the amount of their purchases of the Class Drugs during the relevant time

- 11 -

period of January 1, 2003 to December 31, 2004.  This information is not required in order for a

TPP to validly opt-out of the Class but it is requested in order to make the calculation of the

refund to AstraZeneca and the "true-up" of TPP/ISHP claims easier.  In the event insufficient

information is provided by TPP Opt-Outs, the parties have agreed to cooperate and use other

available information to estimate the purchases of TPP Opt-Outs.

The Settlement Agreement also provides that AstraZeneca notify Lead Class Counsel of

the existence of any settlement with a TPP Opt-Out in excess of $1 million for the purposes of

allowing Lead Class Counsel to seek costs and expenses out of monies paid to any TPP Opt-Out.

### F.    Attorneys' Fees and Expenses and Class Representative Compensation

Class Plaintiffs' Counsel will submit a fee petition for an award of fees, reimbursement

of costs and expenses, and reimbursement to appropriate Plaintiffs or Class Representatives.

Understanding that the award of attorneys' fees is a matter committed to the sole discretion of

this Court, subject to Court approval, AstraZeneca has agreed not to object to Class Counsel's

request for a reasonable attorney's fee not to exceed 33 1/3% of the total settlement amount of

$90 million.  AstraZeneca will also not object to Counsel's request to the Court for an award of

reasonable expenses.  Such fees and expenses are to be paid from the total settlement amount of

$90 million.  The Settlement Agreement also provides for compensation to the named

representatives for the time associated with their work in this case, to be approved by the Court.

Class Counsel have reached an agreement with members of the ISHP Group and ISHP

Group Counsel concerning attorneys' fees.  That agreement is identified for the Court pursuant

to Fed. R. Civ. P. 23(3).  See Settlement Agreement, Exhibit M.

001534-16  375450 v1

# IV.    ARGUMENT

A class action cannot be compromised or settled without the approval of the Court.  FED. R. CIV. P. 23(e).  Prior to addressing the adequacy of a proposed Settlement, however, the Court must determine whether the Class, as agreed to by the parties, may be certified for purposes of the Settlement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *Hawkins v. Commissioner of New Hampshire Dept. of Health & Human Servs.*, 2004 U.S. Dist. Lexis 807 (D.N.H. Jan. 23, 2004).

A court may grant conditional approval of a class action where, as here, the Class proposed satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *See Amchem*, 521 U.S. at 613; *see also South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990).

If the Court determines that a Settlement Class should be certified, the Court must then follow a three-step process prior to granting final approval of a proposed settlement.  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).  First, the Court must preliminarily approve the proposed settlement.  *Id.* at 547.  Second, members of the Class must then be given notice of the proposed settlement.  *Id.*  Third, a hearing must be held, after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the Class as a whole, and consistent with the public interest.  *Id.*  This protects the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian for the Class's interests. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996).

### A.     The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement

Preliminary certification of the Settlement Class is appropriate in this case because the four requirements of Fed. R. Civ. P. 23(a) and a part of Rule 23(b) are satisfied.

### 1.     The Requirements of Rule 23(a) have been satisfied

Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation. *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem*, 521 U.S. at 613).  These issues have been addressed in the Court's January 30, 2006, Consolidated Order Re:  Motion for Class Certification and in subsequent orders related to approval of settlements with GlaxoSmithKline, BMS, AstraZeneca Class 1 Settlement and Track Two Defendants and will not be repeated here.  All Rule 23(a) requirements have been satisfied.

In addition to having satisfied the prerequisites of Rule 23(a), the Class also satisfies those of Rule 23(b)(3):  namely, (1) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (2) the Class action is superior to other available methods for the fair and efficient adjudication of this matter. *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 196-97 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 55 (D. Mass. 1981); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003). These issues have also been addressed by the Court in prior orders.

### B.     Preliminary Approval is Appropriate

Plaintiffs respectfully submit, as they will demonstrate at the Fairness Hearing, that: (i) the Settlement is in all respects fair, reasonable and adequate to the Class; (ii) they have investigated the pertinent legal and factual issues; (iii) continued litigation will consume enormous resources of the parties and the Court; and (iv) there is no hint of collusion between or

- 14 -

among the parties in the Settlement negotiations.  At the Fairness Hearing the Court must

undertake a detailed assessment of the terms of the Settlement, the interests of the Class

Members as well as any third parties that might be affected by the Settlement, and the

circumstances of the litigation and the proposed Settlement.  *See Duhaime v. John Hancock Mut.*

*Life Ins. Co.*, 183 F.3d 1, 2, 7 (1st Cir. 1999); *Durrett v. Housing Auth. of Providence*, 896 F.2d

600, 604 (1st Cir. 1990); *Hawkins*, 2004 U.S. Dist. Lexis 807, at *14.

However, at this stage of the Settlement process, the Court conducts only a preliminary

evaluation to determine whether the proposed Settlement is within the range of possible final

approval, and thus whether Notice to the Class of the terms and conditions of the proposed

Settlement, and the scheduling of a formal Fairness Hearing, are appropriate.  *White v. National*

*Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Thus, the MANUAL FOR COMPLEX

LITIGATION, THIRD ("MANUAL") characterizes the preliminary approval inquiry as a court's

"initial assessment" of the fairness of the proposed settlement, made on the basis of written

submissions and informal presentation from the settling parties, and summarizes the preliminary

approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness or other obvious deficiencies,
> such as unduly preferential treatment of Class representatives or of
> segments of the Class, or excessive compensation for attorneys,
> and appears to fall within the range of possible approval, the court
> should direct that notice . . . be given to the Class Members of a
> formal Fairness Hearing, at which arguments and evidence may be
> presented in support of and in opposition to the settlement.

MANUAL § 30.41; *see also* 2 NEWBERG § 1.25.

As detailed below, the proposed Settlement falls well within the range of reasonableness,

and thus merits preliminary approval.

- 15 -

Initially, Class Plaintiffs note that the law has long favored settlement of litigations.  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation.  In addition, there is an overriding public interest in favor of settlement of complex class action suits, especially where the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established."  *See*, *e.g.*, *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985).  By supporting the settlement of complex, class action disputes, the judicial system can help minimize litigation expenses on both sides, reduce the strain on scarce judicial resources, and avoid the risk of trial to both parties.  MANUAL, §§ 23, 30.4 (Fed. 1995).

These concerns apply with particular force in a case such as this, where thousands of consumers throughout the country were subject to allegedly deceptive and unfair practices in connection with the marketing and sale of the Class Drugs sold by AstraZeneca.  Individual litigation would clog the courts of this and many other states; would take years to resolve; and, given the relatively modest amount of damages suffered by each individual consumer, it likely would be available only to those wealthy and sophisticated enough to retain their own lawyers. The proposed Settlement is the best and only vehicle to assure that all Class Members, regardless of their means, receive the relief to which they are entitled in a prompt and efficient manner.

1.      **The proposed Settlement is sufficiently fair, reasonable and adequate for preliminary approval**

In determining whether the Settlement is fair, reasonable and adequate to the Class as a whole, several factors should be considered, including:  (1) the complexity of the litigation, (2) the posture of the case at the time settlement was proposed, (3) the extent of discovery conducted in the case, (4) the circumstances of the settlement negotiations, (5) the experience of counsel,

- 16 -

(6) the relative strength of the plaintiffs' case on the merits, the possible defenses, and other risks in the litigation, (7) the anticipated duration and expense of further litigation, and (8) the reaction of the Class and opposition to the settlement. *Hawkins*, 2004 U.S. Dist. Lexis 807, at *15 (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 785 (3d Cir. 1995); *Kovacs v. Ernst & Young*, 927 F.2d 155, 158 (4th Cir. 1991)); *Williams v. Vukovich*, 720 F.2d 909, 922-24 (6th Cir. 1983). Some of these factors are not yet relevant at the preliminary approval stage, but others can be used to guide the preliminary approval process.

While the foregoing criteria will guide the Court's analysis, "[a] class action settlement cannot be measured precisely against any particular set of factors." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6-7 (N.D. Ohio 1982)). Therefore the relevance of the factors set forth above "will vary from case to case." *Ohio Public Interest Campaign*, 546 F. Supp. at 6-7.

As a general rule, courts will not substitute their own thoughts for the parties' business judgment in arriving at a settlement. *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976); *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971). Accordingly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether Class Members will receive as much from a settlement as they might have recovered from victory at trial. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). It is not the Court's function to reopen and enter into negotiations with the litigants in the hope of improving the terms of the settlement or to substitute its business judgment for that of the parties who worked out the settlement. *Argo v. Harris*, 84 F.R.D. 646, 648 (E.D.N.Y. 1979) (quoting *Levin*

*v. Mississippi River Corp.*, 59 F.R.D. 353, 361 (S.D.N.Y 1973), *aff'd on op. below sub nom. Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112 (1973)).  Courts challenged with evaluating a proposed class action settlement recognize that the "essence of settlement is compromise" and will not represent a total win for either side.  *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980)).

Evaluation of the aforementioned factors in this case weigh heavily in favor of **preliminary approval**.  Coming on the heels of the Class 2 and 3 trial Plaintiffs are very well acquainted with the prospective strengths and risks of the case.  Notwithstanding these risks, with which the Court is also well acquainted, Plaintiffs were able to garner a Settlement Amount of $90 million.

**2.    The proposed Settlement is the result of arduous, arm's length negotiations conducted by highly experienced counsel**

There is a presumption of correctness attached to a Class settlement reached in arm's length negotiations between experienced, capable counsel.  *City P'ship Co. v. Atlantic*, 100 F.3d at 1043; *see also Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."); *see also* NEWBERG § 11.41, at 87-89.

The United States Court of Appeals for the Seventh Circuit, in approving a class action settlement, noted that "[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation.. . .  The proof of the pudding was indeed in the eating."  *Maritimes Steel v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984) (most important concern for the court in reviewing a settlement of a class action is the strength of the plaintiffs' case if it were fully litigated).

In the instant action, the parties negotiated arduously and at arm's length with the Court-appointed Mediator.  The negotiations involved submissions of proposals, counter-proposals, evaluation of all discovery and factual arguments.  The parties have worked long and hard to reach a resolution of this matter, and Plaintiffs submit it is fair, appropriate, and in the best interests of the Class Members.

> **3.      Sufficient discovery has been conducted in this matter to allow counsel to fairly investigate the pertinent legal and factual issues**

A presumption in favor of the proposed Settlement arises when sufficient discovery has been provided and counsel have experience in similar cases.  *See Hawkins*, 2004 U.S. Dist. Lexis 807, at *15; *see also City P'ship Co. v. Atlantic*, 100 F.3d 1043; *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000).  This factor directs the trial court to consider whether the attorney participating in the settlement negotiations had access to sufficient information to appreciate the merits of the class's case.  *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 783 (3d Cir. 1995).

In this case, the parties exchanged written discovery, conducted hundreds of depositions, and obtained extensive discovery from third-party sources such as other pending litigation, trade associations, physicians and the federal government.  AstraZeneca produced millions of pages of documents and Plaintiffs' counsel spent more than four years reviewing said documents, organizing documents for use, creating an electronic database and making determinations on utilization of important documents, additional discovery and general assistance in the litigation of this matter.  Trial was held with respect to Classes 2 and 3 in Massachusetts and the results of that trial have been upheld by the First Circuit Court of Appeals.

### C.      The Court Should Order Notice Be Provided to the Class and Schedule a Full Fairness Hearing

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement.  *See Durrett*, 896 F.2d at 604.  Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs."  In a settlement Class maintained under Rule 23(b)(3), Class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e).  *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause).  Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem*, 521 U.S. at 617; *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).

The Manual sets forth several elements of the "proper" content of notice.  If these requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2); Fed. R. Civ. P. 23(e); and due process, and binds all members of the Class.  The Notice must:

1.      Describe the essential terms of the Settlement;

2.      Disclose any special benefits or incentives to the Class Representatives;

3.      Provide information regarding attorneys' fees;

4.      Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the Settlement;

5.      Explain the procedures for allocating and distributing Settlement funds; and

6.      Prominently display the address of Class counsel and the procedure for making inquiries.

Manual, ¶ 30.212 (3d ed. 1995).  *See*, *e.g.*, *Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of

- 20 -

proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process); *accord Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

The proposed Notice program clearly meets this standard.  The proposed Notice is clear, precise, informative, and satisfies the requirements governing notice.  As reflected in the proposed Notice Plan created by a recognized expert, individual Notice will be mailed to all Class Members whose addresses can be reasonably ascertained and who can be reached reasonably economically.  A website will allow Class Members to reach the Administrator, request Notices and ask questions.  An extensive publication of a Summary Notice will take place in a variety of publications directed to the target demographic.  The Notice, the Settlement Agreement and possibly other documents will also be published on the website established for purposes of this Settlement.

Notice via first class mail, publication in nationwide papers and magazines and website publication are all avenues for notice that have been approved by various courts.  *See*, *e.g.*, *White v. National Football League*, 822 F. Supp. at 1400 (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to identified Class members and publication two times in the national edition of *USA Today*); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in *USA Today*);

*Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669-70 (E.D. Va. 2001) (approving publication of summary notice in nationwide newspapers and posting full notice on websites maintained by co-lead counsel); *Henry v. Sears Roebuck & Co.*, 1999 WL 33496080 (N.D. Ill. July 23, 1999) (the Court directed that the class Action Settlement Notice be mailed by first class mail to all identified Class members, and the Summary Notice be published twice in the national edition of *USA Today*); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) (the Court approved Class Notice mailed to the last known address of all Class Members identified through reasonable effort by Defendant, published a Summary Notice on three separate days in a nationally published newspaper, *USA Today*, published the Class Notice and other pertinent information on the internet). Indeed, the Court has already approved this method of notice with the Notice of Pendency and the GSK Settlement Notice.

The proposed Notice clearly meets the requirements of Rule 23(c)(2) and 23(e), in so much as it meets the new requirements of plain English and ease of reading and includes: (1) the case caption; (2) a description of the Class; (3) a description of the claims; (4) a description of the Settlement; (5) the names of counsel for the Class; (6) a statement of the maximum amount of attorneys' fees that may be sought by Plaintiffs' Counsel; (7) the Fairness Hearing date; (8) a description of Class Members' opportunity to appear at the hearing; (9) a statement of the procedure and deadline for filing objections to the Settlement; (10) a statement of the procedure and deadline for filing requests for exclusion (for residents in the nine states who had not been previously provided an opportunity to opt out); (11) a statement of the consequences of

exclusion; (12) a statement of the consequences of remaining in the Class; and (13) the manner in which to obtain further information.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 496.  *See also* MANUAL § 30.212 (Rule23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation).

Plaintiffs have retained an experienced Notice Administrator to administer notice, have carefully crafted a detailed Notice Plan and have taken all necessary steps to ensure that the proposed Notice Plan meets the requisite due process requirements.  Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the Settlement and their options, and therefore should be approved by the Court.

## V.    CONCLUSION

For all the above-stated reasons, it is respectfully requested that the Joint Motion be granted and the Court enter an order:  (a) granting Preliminary Approval of the Settlement; (b) certifying the Settlement Class; (c) appointing Settlement Class counsel; (d) scheduling a Fairness Hearing and establishing all related deadlines; (e) directing that Notice be provided to the Class in accordance with the Notice Plan; and (f) ordering a stay of all proceedings in this and other class actions with respect to AstraZeneca until the Court renders a final decision regarding the approval of this Settlement.

DATED: June 18, 2010.                By____/s/ Steve W. Berman_____
                                          Thomas M. Sobol (BBO#471770)
                                          Edward Notargiacomo (BBO#567636)
                                     Hagens Berman Sobol Shapiro LLP
                                     55 Cambridge Parkway, Suite 301
                                     Cambridge, MA  02142
                                     Telephone: (617) 482-3700
                                     Facsimile: (617) 482-3003

                                     **LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson ,LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CO-LEAD COUNSEL FOR
PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on June 18, 2010, I caused copies of **CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE ASTRAZENECA SETTLEMENT AND APPROVING THE FORM AND METHOD OF NOTICE TO THE CLASS** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.


  **/s/ Steve W. Berman**
Steve W. Berman