# Exhibit C

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*,
Civil Action No. 05-11084-PBS

Exhibit to Plaintiff's Memorandum In Support of United States' Motion
In Limine Regarding Testimony of Raymond C. Winter and
Sequencing of Deposition Testimony

IN THE COURT OF THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

THE STATE OF FLORIDA )
)
ex rel. )
)
)
VEN-A-CARE OF THE FLORIDA KEYS, INC., a Florida Corporation, by and through its principal officers and directors, ZACHARY T. BENTLEY and T. MARK JONES, )
)
Plaintiffs, )
)
VS. ) CIVIL ACTION NO. 98-3032A
)
BOEHRINGER INGELHEIM CORPORATION; DEY, INC.; DEY, L.P.; EMD PHARMACEUTICALS, INC.; LIPHA, S.A.; MERCK, KGaA; MERCK-LIPHA, S.A.; SCHERING CORPORATION; SCHERING-PLOUGH CORPORATION; ROXANE LABORATORIES, INC.; and WARRICK PHARMACEUTICALS CORPORATION, )
Defendants. )

*-*-*-*-*

VIDEOTAPED DEPOSITION OF HELEN SELENATI

Volume 2

On the 5th day of May, 2005, between the hours of 9:16 a.m. and 5:38 p.m., at the Marriott San Mateo San Francisco Airport, 1770 South Amphlett Boulevard, San Mateo, California, before me, CYNTHIA VOHLKEN, a Certified Shorthand Reporter for the State of Texas, appeared HELEN SELENATI, who, being by me first duly sworn, gave an oral deposition at the instance of the Plaintiffs in said cause, pursuant to the Florida Rules of Civil Procedure.

A P P E A R A N C E S

FOR THE STATE OF FLORIDA:

Mark S. Thomas, Esquire
Mary S. Miller, Esquire
Assistant Attorneys General
Office of the Attorney General
Medicaid Fraud Control Unit
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3600

FOR THE RELATOR, VEN-A-CARE OF THE FLORIDA KEYS, INC.:

Gary L. Azorsky, Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6305
(215) 875-3000

-and-

Mark D. Eibert, Esquire
Cotchett, Pitre, Simon & McCarthy
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
(650) 697-6000

FOR THE DEFENDANT(S) BOEHRINGER INGELHEIM CORPORATION and ROXANE LABORATORIES, INC.:

Bill L. Bryant, Jr., Esquire
(Not Present)
Akerman Senterfitt
106 East College Avenue, Suite 1200
Post Office Box 1877 (32302-1877)
Tallahassee, Florida 32301
(850) 224-9634

FOR THE DEFENDANT(S) DEY, INC., DEY, L.P., EMD PHARMACEUTICALS, INC., LIPHA S.A., MERCK KGaA and MERCK-LIPHA S.A.:

William A. Escobar, Esquire
Antonia F. Giuliana, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7941

FOR THE DEFENDANT(S) SCHERING CORPORATION, SCHERING-PLOUGH CORPORATION and WARRICK PHARMACEUTICALS CORPORATION:

John P. McDonald, Esquire
Locke Liddell & Sapp, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000

ALSO PRESENT:

Mr. John M. Kling
Senior Vice President, Legal
Dey
Mr. Raymond C. Winter
Texas Office of the
Attorney General
Mr. Richard Rienstra, Videographer

*-*-*-*-*

Q. Did Mr. Mozak attempt to contact you on the phone?

MR. ESCOBAR: When?

Q. (BY MR. AZORSKY) After your -- anytime after your dinner meeting with him in the summer of 2000.

A. Yes, he called on occasion. I think we even had dinner at the end of 2001 and then we had that dinner in the middle of 2002. You know, we spoke on occasion. Are you wanting to know about the November phone call in 2001?

Q. I'm just asking when he contacted you. Did he contact you --

A. Yeah.

Q. -- in November of 2001?

A. Yes. He contacted me in November of 2001.

Q. Do you remember the date?

A. November 5th and November 9th.

Q. Well, what was the nature of the contact that Mr. Mozak made on November 5th, 2001?

A. Well, he left a message on my answering machine saying that he wanted to talk to me about some issues concerning the discovery process and that I should call him at the office using the 800 number and that I should not call from home, but call from an outside phone because he didn't want to have a record

of our conversation.

Q. Did you keep a copy of that message that Mr. Mozak left on your telephone answering machine --

A. Yes. I made --

Q. -- on --

A. I made a tape-recording of that message.

Q. And that's the message that he left on your answering machine on November 5, 2001?

A. Correct.

Q. And do you have the original tape from the -- the answering machine?

A. Yes, I do.

Q. Did you bring that with you to this deposition?

A. Yes, I did.

Q. I'm handing you a cassette player containing a cassette tape and I'll ask you to look at that. Is that your cassette player?

MR. ESCOBAR: We just note on the record that I think it was given to you by Ms. Miller of the Florida attorney general's office.

MR. AZORSKY: Yes, it was.

MR. ESCOBAR: Thank you.

MR. AZORSKY: Thank you.

Q. (BY MR. AZORSKY) Is that your cassette

player?

A. Yes, it is.

Q. And would you take a look at the tape inside the cassette player?

A. Yeah.

Q. Can you identify that tape?

A. Yes, I can.

Q. What is that?

A. It's a tape that I made of the recordings of the messages that Bob Mozak left me on my answering machine on November 5th and November 9th, 2001.

Q. Now, as Mr. Escobar noted, the -- the cassette player and the cassette were handed to me by Ms. Miller of the Florida attorney general's office. How did Ms. Miller come in possession of that cassette player and tape?

A. I brought it in yesterday and gave it to her yesterday.

Q. Does the cassette player and tape appear to be in the same condition as when you gave it to her yesterday?

A. Yes, it does.

Q. You -- you said that the tape contains a recording of the message left on your answering machine by Mr. Mozak on November 5, 2001 and on

November 9, 2001; is that correct?

A. Correct.

Q. So Mr. Mozak called and left a message again on your answering machine on November 9, 2001?

A. That's correct. I didn't return his phone call after that weird message he left me on November 5th and then he re -- he called back on November 9th asking me to call him again.

Q. And aside from the two messages left on your answering machine by Mr. Mozak on November 5 and November 9, 2001, does the tape that you have in front of you contain anything else?

A. No, it doesn't.

Q. Would you turn on your machine so that we can hear the messages that Mr. Mozak left on your answering machine?

A. Sure.

MR. McDONALD: And -- and before we get started, let's just be sure --

A. (Playing tape).

MS. SELENATI: This is a recording that was left on my home phone recorder on Monday the 5th of November and the time difference is one hour off because I haven't yet set my recorder to the correct time after we set the clocks back at the end of

October. This is a message left for me by Bob Mozak.

MR. MOZAK: Hi, Helen. It's a voice from your past. It's Bob. Hope all is going well with you. I haven't talked to you in such a long time. Helen, I needed to talk to you. Can you give me a call at the office and I need to chat with you about this issue that came up a couple of years ago relative to this suit, so I need your assistance. Why don't you give me a call at the office. Use the 800 number. 800-869-9005, extension 2280. 800-869-9005, extension 2280. And probably best that you don't call from home. Why don't you just call from an outside phone because I don't want any record that we had any discussion. So if you give me a call, I would appreciate it. I need to chat with you about this whole issue. So I'll talk to you soon. Take care. Hope all is well.

ANSWERING MACHINE: Monday 10:14 a.m. (Beep) End of final message.

(Stop tape).

A. Do you want to hear the next message?

Q. Yes, please.

A. (Playing tape).

MS. SELENATI: This is the second message left by Bob Mozak on Friday, the 9th of

November.

MR. MOZAK: Hi, Helen. It's Bob, Bob Mozak. How are you doing? I hope all is going well with you. It's been a long time I know. It's probably time to have our annual Christmas drink almost. So I hope all is going well with school with you, but I just needed to chat with you, so if you get a chance, give me a buzz at the office. If you don't remember, use the 800 number. 800-869-9005. Need to chat with you about the -- the legal issues that have come up from the situation I mentioned to you five or six years ago. So if you get a chance, give me a buzz at the office and -- and anyway, call me anyway. I just want to touch base with you and see how things are going and -- and just catch up a little bit. So hope all is well. Talk to you soon, bye-bye.

ANSWERING MACHINE: Friday 4:44 p.m. (Beep) End of final message.

(End of tape).

MR. ESCOBAR: Can we mark the tape as an exhibit?

MR. AZORSKY: Yeah, we can mark it as an exhibit, but I think for purposes of custody Ms. Selenati ought to hold on to possession of it.

MR. ESCOBAR: I don't think so. I think

Q. When did you write these notes?

A. I can't remember. It was a while ago. Maybe before the Texas deposition or maybe it was when I was reviewing my records. I added something on later, yeah. So I think I wrote them first a while ago and then I added a few things towards the end.

Q. What does the last notation refer to?

A. That's the one that I added. That's when I went and testified in front of the grand jury in Boston.

Q. Were you granted immunity when you testified before the grand jury in Boston?

A. No, I wasn't.

Q. After Mr. Mozak left those messages on your telephone answering machine on November 5th and November 9th, 2001, did you subsequently have a telephone conversation with Mr. Mozak?

A. Yes. A few days later after November 9th he actually caught me live on the phone at home and I did have a conversation with him.

Q. What was said during that conversation?

A. Well, Mr. Mozak was trying to get me to admit that I took full responsibility for having written the memo on May 30th, '95 and that he -- he was trying to tell me that he knew nothing about it. And I got

really upset with him because it was clear to me that he was trying to avoid testifying of any knowledge of the situation and he -- he was expecting me to take full responsibility for orchestrating this change in WAC all by myself. And when I objected and told him that we had many discussions about it and how can he be denying this now and -- and what is this all about, he -- I can't say exactly what the words were, but the gist of the conversation was that he told me that he still needs to retire at Dey and that I'm not even working in the industry and there would be no consequence to me if I just took full responsibility for this and he needed his job and he couldn't be held responsible for having any knowledge of what went on with WAC price adjustments.

Q. Well, as a result of your conversation with Mozak in November of 2001 were you willing to and in fact did you change your testimony or alter how you would testify based upon his request that you do so?

MR. ESCOBAR: Objection to the form.

A. I hadn't testified at that stage, so there was nothing that needed to be changed.

Q. (BY MR. AZORSKY) Well, did you decide that you would testify in accordance with how he requested that you testify?