# Exhibit H

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*,
Civil Action No. 05-11084-PBS

Exhibit to Plaintiff's Memorandum In Support of United States' Motion
In Limine Regarding Testimony of Raymond C. Winter and
Sequencing of Deposition Testimony



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION )<br>)<br>)<br>)<br>) | |
| **THIS DOCUMENT RELATES TO:** )<br>) | MDL No. 1456<br>Civil Action No. 01-12257-PBS |
| *United States of America ex rel. Ven-a-Care of the Florida Keys, Inc., et al. v. Dey, Inc., et al.,* Civil Action No. 05-11084-PBS )<br>)<br>)<br>) | Hon. Patti B. Saris |

### UNITED STATES' FIRST AMENDED CROSS-NOTICE OF DEPOSITION OF DEY

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the United States by its undersigned attorneys, cross-notices the deposition of a representative of Defendants Dey, L.P. and Dey, Inc. (collectively, "Dey") who is the most knowledgeable regarding the issues identified herein and the subject drugs of the litigation. Defendant Dey shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The deposition will take place before a notary public, or any officer authorized to administer oaths, commencing at 9:00 a.m. on May 14, 2008, and will continue from day to day until completed, at the Hilton Garden Inn, 3585 Solano Avenue, Napa, California.

The deposition is being taken for the purposes of discovery, for use at trial, and for such other purposes as permitted under the Federal Rules of Civil Procedure. The deposition was originally noticed by the plaintiffs in *City of New York et al. v. Abbott Laboratories, Inc., et al.*, MDL 1456, and the plaintiffs in that case have served a Third Revised Notice of 30(b)(6) Deposition of Dey L.P. and Dey, Inc. A copy of the *City of New York* notice is attached as Exhibit A. The State of California has also cross-noticed the deposition in *State of California ex rel. Ven-a-Care v. Abbott Laboratories, Inc., et al.*, Case No. 03-cv-11226-PBS, MDL 1456. A copy of that notice is attached as Exhibit 2 hereto. In addition, the State of Florida has served a Third Amended Cross Notice of Deposition of Dey, L.P. and Dey, Inc., in *State of Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032 A (Circuit Court, Leon County), a copy of which is attached as Exhibit 3.



Dey shall designate a person or persons to testify under oath about the subjects set forth below. The definitions in Local Rule 26.5 are incorporated herein by reference.[1]

1. The subjects set forth in the Third Revised Notice of 30(b)(6) Deposition of Dey L.P. and Dey, Inc. served by the plaintiffs in *City of New York et al. v. Abbott Laboratories, Inc., et al.*, MDL 1456, attached hereto as Exhibit 1, except that the time period covered by the subjects shall be January 1, 1992, to the present.

2. The subjects set forth in the State of California's Cross-Notice of Deposition of Dey L.P. and Dey, Inc., served by the plaintiffs in *State of California ex rel. Ven-a-Care v. Abbott Laboratories, Inc., et al.*, Case No. 03-cv-11226-PBS, MDL 1456, attached hereto as Exhibit 2, except that the time period covered by the subjects shall be January 1, 1992, to the present.

3. The subjects set forth in the Third Amended Cross Notice of Deposition of Dey, L.P. and Dey, Inc., served by the plaintiffs in *State of Florida ex rel. Ven-a-Care of the Florida Keys, Inc. v. Boehringer Ingelheim Corp., et al.*, Case No. 98-3032 A (Circuit Court, Leon County), a copy of which is attached as Exhibit 3.

4. Dey's knowledge and understanding of the laws, practices, and policies of State Medicaid agencies regarding reimbursement for Dey's drug products, including Dey's knowledge and understanding concerning State Medicaid agencies' use of published AWPs or WAC prices.

5. Dey's knowledge and understanding of the laws, practices, and policies of the U.S. Department of Health and Human Services regarding Medicare reimbursement for Dey's drug products, including Dey's knowledge and understanding concerning the the Medicare program's use of published AWPs in determining reimbursement.

6. With regard to the plaintiffs' claim in the Complaint (at ¶ 50) that Dey made false or fraudulent representations about drug prices and costs to *RedBook*, First DataBank, and Medispan, the factual basis for the statement in Dey's Thirteenth Defense that, "As to any statement asserted against Dey that Plaintiff allege [sic] to be false or misleading, Dey had no reasonable grounds to believe, and did not believe at the time such a statement was made, that the statement was false or misleading." This topic shall include but not be limited to:

---

[1] When a topic requests "the identity of" an person or document, this shall mean "identify" for purposes of LR 26.5.

2

    a.    The identity of each employee (current and former) of Dey who held a belief that Dey's price representations were not false or fraudulent;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the belief.

7.    Dey's belief, if any, regarding any industry practice concerning drug manufacturers' setting or reporting of AWP (for purposes of publication by the compendia) for a new generic drug at the time of launch, and any industry practice concerning subsequently changing or not changing the reported or published AWP. This topic shall include but not be limited to:

    a.    The identity of each employee (current and former) of Dey who held such a belief concerning such industry practice;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the belief.

8.    Dey's belief, if any, that the United States government (or any agency or agent thereof) approved of or acquiesced in Dey's practice of causing the publication of AWPs for Dey products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

    a.    The identity of each employee (current and former) of Dey who held such a belief;

    b.    The time period when such person held that belief;

    c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d.    All other information that formed a basis for the person's belief.

9. Dey's belief, if any, that the United States government (or any agency or agent thereof) had knowledge of Dey's practice of causing the publication of AWPs for Dey's products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

    a. The identity of each employee (current and former) of Dey who held such a belief;

    b. The time period when such person held that belief;

    c. Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d. All other information that formed a basis for the person's belief.

10. Dey's belief, if any, that the United States government (or any agency or agent thereof) approved of or acquiesced in Dey causing the Medicare program to reimburse providers for Dey drugs in amounts significantly in excess of provider acquisition costs plus any established dispensing fee, including:

    a. The identity of each employee (current and former) of Dey who held such a belief;

    b. The time period when such person held that belief;

    c. Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

    d. All other information that formed a basis for the person's belief.

11. Dey's belief, if any, that any State government (or any agency or agent thereof) had knowledge of Dey's practice of causing the publication of AWPs for Dey's drug products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

    a. The identity of each employee (current and former) of Dey who held such a belief;

    b. The time period when such person held that belief;

      c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d.    All other information that formed a basis for the person's belief.

12.    Dey's belief, if any, that any State government (or any agency or agent thereof), approved of or acquiesced in Dey's practice of causing the publication of AWPs for Dey's drug products that were higher than actual average wholesale prices or WACs that were higher than actual wholesale acquisition costs, including:

      a.    The identity of each employee (current and former) of Dey who held such a belief;

      b.    The time period when such person held that belief;

      c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d.    All other information that formed a basis for the person's belief.

13.    Dey's belief, if any, that any State government (or any agency or agent thereof) approved of or acquiesced in Dey causing the Medicaid program to reimburse providers for Dey drugs in amounts significantly in excess of provider acquisition costs plus any established dispensing fee, including:

      a.    The identity of each employee (current and former) of Dey who held such a belief;

      b.    The time period when such person held that belief;

      c.    Each communication and the identity of each document relied upon, considered or used by the person in forming the belief;

      d.    All other information that formed a basis for the person's belief.

14.    The dates of each of Dey's production of documents in response to the subpoena issued to Dey by the Office of the Inspector General of the United States Department of Health and Human Services in or about October 1997, and the bates numbers of the documents produced in each separate production of documents.

15. The dates of Dey's production of documents to the State of Texas in response to the State of Texas' discovery requests in *State of Texas ex rel. Ven-A-Care v. Dey Inc., et al.*, Cause No. GV 002327, and the bates numbers of the documents produced in each separate production of documents.

16. Any and all actions on the part of any Dey employee, attorney or board representative to locate, withhold, or conceal the existence of documents responsive to the subpoena received by Dey from the Office of the Inspector General of the United States Department of Health and Human Services in or about October 1997 or responsive to discovery demands received from the Attorney General of the State of Texas. This includes, but is not limited to, the initial failure to produce and subsequent production of the Memorandum from Robert Mozak to Charles Rice, Pamela Marrs and Jean P. Termier dated February 24, 1992, regarding Dey's albuterol pricing strategies (see DL-TX-0090815 - DL-TX-0090855), and the reimbursement comparison worksheets concerning Dey albuterol products (see DL-TX-0090875 - DL-TX-0090879, and DL-TX-0076254).

17. Any and all actions on the part of any Dey management, employee, attorney or board representative to link compensation paid to Dey sales personnel to their performance of duties involving the marketing of reimbursement spreads to customers or potential customers, including but not limited to their use of the "Reimbursement Comparison Worksheet" (see DL-TX-0076254).

18. With regard to Dey's assertion in the Seventh Defense of its Answer, that "Any and all actions taken by Dey with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established industry practice," all communications between any employee or officer of Dey and Dey's attorneys, whether in-house or outside counsel, concerning the legality of any actions concerning any of the matters alleged in the complaint.

6

| | |
|---|---|
| For the United States of America,<br><br>JEFFREY S. BUCHOLTZ<br>ACTING ASSISTANT ATTORNEY<br>GENERAL<br><br>MICHAEL J. SULLIVAN<br>UNITED STATES ATTORNEY<br><br>/s/ George B. Henderson, II<br>GEORGE B. HENDERSON, II<br>Assistant U.S. Attorney<br>John Joseph Moakley U.S. Courthouse<br>Suite 9200, 1 Courthouse Way<br>Boston, MA 02210<br>(617) 748-3272<br><br>DANIEL R. ANDERSON<br>LAURIE A. OBEREMBT<br>Civil Division<br>Commercial Litigation Branch<br>P. O. Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 514-3345 | For the relator, Ven-A-Care of the<br>Florida Keys, Inc.,<br><br>JAMES J. BREEN<br>The Breen Law Firm, P.A.<br>3350 S.W. 148th Avenue<br>Suite 110<br>Miramar, FL 33027<br>Tel: (954) 874-1635<br>Fax: (954) 874-1705<br><br>SHERRIE R. SAVETT<br>GARY L. AZORSKY<br>SUSAN S. THOMAS<br>JEANNE A. MARKEY<br>JOY CLAIRMONT<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: 215-875-3000<br>Facsimile: 215-875-4636<br><br>Dated: April 7, 2008 |

**CERTIFICATE OF SERVICE**

    I hereby certify that I have this day caused an electronic copy of the above "United States' First Amended Cross-Notice of Deposition of Dey" to be served on all counsel of record via electronic service pursuant to Paragraph 11 of Case Management Order No. 2 by sending a copy to LexisNexis File & Serve for posting and notification to all parties.

Dated: April 7, 2008

                                                                    /s/ George B. Henderson, II
                                                                      George B. Henderson, II