# Exhibit J

*United States of America ex rel. Ven-a-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*,
Civil Action No. 05-11084-PBS

Exhibit to Plaintiff's Memorandum In Support of United States' Motion
In Limine Regarding Testimony of Raymond C. Winter and
Sequencing of Deposition Testimony

Page 576

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---------------------------------X

IN RE PHARMACEUTICAL INDUSTRY     )

AVERAGE WHOLESALE PRICE LITIGATION)

---------------------------------X Volume III

THIS DOCUMENT RELATES TO:         ) MDL NO. 1456

The City of New York, et al.,     ) Civil Action

   V.                             ) No. 01-12257-PBS

Abbott Laboratories, et al.       )

---------------------------------X

THIS DOCUMENT RELATES TO:         )

State of California, ex rel.      )

Ven-A-Care v. Abbott Laboratories,)

Inc., et al., Case No.            )

03-cv-11226-PBS                   )

---------------------------------X

OCTOBER 2, 2008

DEPOSITION OF DEY, L.P. AND DEY, INC.

BY PAMELA MARRS - VOLUME III

Reported By: WENDY L. VAN MEERBEKE, CSR No. 3676

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III                                    October 2, 2008
Napa, CA

Page 577

```
 1    IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
 2           IN AND FOR LEON COUNTY, FLORIDA
 3    ------------------------------------X
 4    THE STATE OF FLORIDA, ex rel.        )
 5    VEN-A-CARE OF THE FLORIDA KEYS,      )
 6    INC., a Florida corporation, by      )
 7    and through its principal Officers   )
 8    and directors, ZACHARY T. BENLEY     )
 9    and T. MARK JONES,                   )
10              Plaintiffs,                )
11        Vs.                              ) Case No.
12    BOEHRINGER INGELHEIM CORPORATION,    ) 98-3032 A
13    et al.                               )
14              Defendants.                )
15    ------------------------------------X
16
17
18
19
20
21
22
```

Henderson Legal Services, Inc.
202-220-4158                              www.hendersonlegalservices.com

85facf6e-1dec-4c6a-a03f-a60f92e71807

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III                                October 2, 2008
Napa, CA

Page 578

1              UNITED STATES DISTRICT COURT
2                DISTRICT OF MASSACHUSETTS
3                       --oOo--
4   In re: PHARMACEUTICAL INDUSTRY
5   AVERAGE WHOLESALE PRICE LITIGATION
6   ------------------------------------X
7   United States of America, ex.          )
8   rel. Ven-A-Care of the Florida         )
9   Keys, Inc vs. Abbott Laboratories,     )
10  Inc., vs. Abbott Laboratories, Inc.,)
11  CIVIL ACTION NO. 06-11337-PBS          )
12  ------------------------------------X
13
14
15
16
17
18
19
20
21
22

Henderson Legal Services, Inc.
202-220-4158                         www.hendersonlegalservices.com

85facf6e-1dec-4c6a-a03f-a60f92e71807

Page 579

1                        A P P E A R A N C E S :

2

3    For DEY LABORATORIES:

4            PAUL F. DOYLE, ESQ.

5            KELLEY, DRYE & WARREN LLP

6            101 Park Avenue

7            New York, New York 10178

8            212.808.7786

9

10   For the UNITED STATES OF AMERICA:

11           GEORGE B. HENDERSON, ESQ.

12           U.S. DEPARTMENT OF JUSTICE

13           One Courthouse Way, Suite 9200

14           Boston, Massachusetts 02210

15

16   For the STATE OF CALIFORNIA:

17           RITA L. HANSCOM,

18           Deputy Attorney General

19           Post Office Box 85266

20           110 West A Street, Suite 1100

21           San Diego, California 92186

22           619.688.6831

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III                                October 2, 2008
Napa, CA

Page 580

1       A P P E A R A N C E S :   (CONTINUED)

2

3   For the STATE OF FLORIDA:

4         L. KIRK ROGERS, ESQ.

5         OFFICE OF THE ATTORNEY GENERAL

6         Medical Fraud Control Unit

7         Complex Civil Enforcement Bureau

8         850.414.3300

9

10  For PLAINTIFF VEN-A-CARE:

11        GARY L. AZORSKY, ESQ.

12        DAVID FILBERT, LITIGATION PARALEGAL

13        BERGER & MONTAGUE, P.C.

14        1622 Locust Street

15        Philadelphia, Pennsylvania 19103-6305

16        215.875.3000

17

18  For CHIRON CORPORATION: (Appearing Via Telephone)

19        BRIAN SCHNEIDER, ESQ.

20        ARENT FOX LLP

21        1050 Connecticut Avenue, NW

22        Washington, DC 20036-5339

Dey, LP and Dey, Inc (Pamela Marrs) - Vol. III                              October 2, 2008
Napa, CA

Page 581

1        A P P E A R A N C E S :   (CONTINUED)

2

3    For the CITY OF NEW YORK AND NEW YORK COUNTIES

4    IN MDL 1456: (Appearing Via Telephone)

5           KATHRYN B. ALLEN, ESQ.

6           KIRBY MCINERNEY LLP

7           825 Third Avenue

8           New York, NY 10022

9           212.371.6600

10

11

12   Videographer:   PETE SAIS

13

14

15

16

17

18

19

20

21

22

Page 667

1    I just don't remember.
2         Q.   Okay.  Can you tell me just for the
3    record so that it's clear the date -- any date
4    when Dey produced documents to the office of
5    inspector general in response to the subpoena
6    which is described in topic 14?
7         A.   I don't recall the specific dates.  I
8    apologize.
9         Q.   Can you give me the Bates ranges of any
10   of those documents?
11        A.   I cannot.
12        Q.   Turning to --
13             MR. DOYLE:  By the way, all these
14   documents have been produced to you, including
15   the Bates ranges.
16             MS. ROGERS:  Objection.
17             MR. HENDERSON:  Mr. Doyle, that's what
18   I would like to establish through testimony of
19   Dey so that there's no dispute about it.  We went
20   back and forth on the relevancy of this.  I
21   stated in a letter why I believed it was
22   relevant.  Ms. Giuliana indicated that Dey would

Page 668

1   be prepared to testify on these topics.
2           MR. DOYLE:  Did you bring the
3   documents?  Did you bring the letters that would
4   -- are you going to show them to her?
5           MS. ROGERS:  Objection.
6           MR. HENDERSON:  I don't have that
7   because it's obvious Ms. Marrs is not prepared to
8   testify and doesn't have any personal knowledge
9   of these things or isn't prepared to give any
10  knowledge of --
11          MR. DOYLE:  I'll say off the record --
12  let me just say this, Bunker.  You've got all
13  those letters.  Okay.  I assumed -- we assumed
14  that you would be showing this to her.  If you're
15  not, that's your choice.  But don't say she's not
16  prepared.
17          MR. HENDERSON:  Ms. Marrs has already
18  said it, Mr. Doyle.
19      Q.  With respect to topic 15, are you
20  prepared to testify on this topic, Ms. Marrs?
21      A.  Well, I'm prepared in a general sense,
22  which is where this letter came from in terms of

1   the Bates numbers that were produced in November
2   of 2002.
3        Q.   And tell me what this Exhibit 39
4   represents.
5        A.   It is the submission of documents just
6   prior to when the attorneys came in and did a
7   wall-to-wall search.  And then I believed there
8   were other documents produced after this.
9        Q.   Were there documents produced before
10  this?
11       A.   Yes.
12       Q.   And what were the Bates ranges?
13       A.   I don't have those with me.
14       Q.   What effort did you make to find out
15  that information?
16       A.   I was under the impression that if we
17  provided this, that would be sufficient.
18            MR. DOYLE:  Excuse me, Bunker, but the
19  letter -- anything that is before DL-TX 0090850
20  would answer your question, if you follow what
21  I'm saying.  In other words, that's the purpose
22  of the letter.  Anything that has that Bates

Page 670

1   number in Texas preceding that would be the
2   answer to your question.
3           MR. HENDERSON:  Ms. Marrs -- Mr. Doyle,
4   I can't call you as a witness unless you're going
5   to agree to testify as a witness at trial.
6           MR. DOYLE:  Do you want the facts or
7   not?  You don't?
8           MR. HENDERSON:  I want admissible
9   testimony.  I want admissible testimony, Mr.
10  Doyle.  Your testifying during a deposition is
11  not admissible unless you're agreeing to testify
12  as a witness at trial.
13          MR. DOYLE:  There's a document there
14  which answers the exact question you just raised.
15          MS. ROGERS:  Objection.
16          MR. HENDERSON:  I'd like to have this
17  marked as the next exhibit.
18              (A document was marked as Exhibit
19  Marrs 040 for identification.)
20          MR. HENDERSON:
21      Q.  Ms. Marrs, I've handed you a document
22  marked Exhibit 40.  Have you ever seen this?

Page 671

1   A. Not that I recall.

2   Q. To your knowledge, did you or anybody

3   acting on Dey's behalf make any effort to obtain

4   cover letters from Dey's counsel with respect to

5   productions of documents to the State of Texas in

6   response to Texas' request for documents?

7       MR. DOYLE: Objection as to form.

8       THE WITNESS: I believe our attorneys

9   have all the documents. I didn't personally see

10  this one.

11      MR. HENDERSON:

12  Q. I take it they have not provided you

13  with any other cover letters other than Exhibit

14  39?

15  A. Not that I recall.

16  Q. Can you tell me -- this document that

17  is Exhibit 40 appears to be a cover letter

18  producing certain documents; correct?

19  A. Correct.

20  Q. Do you know what the Bates ranges of

21  those documents is?

22  A. Well, it doesn't say; does it?

Page 672

1   Q.   No, it does not.  This refers to some
2   pages with a DL prefix.  That's a very different-
3   looking prefix than a DL-TX prefix that's
4   referenced in Exhibit 39; is that correct?
5        MR. DOYLE:  Objection to form.
6        THE WITNESS:  It's different because it
7   has TX in it.  The number of -- the number of
8   characters is different.
9        MR. HENDERSON:  I'd like to have this
10  next document marked as Exhibit 41.
11        (A document was marked as Exhibit
12  Marrs 041 for identification.)
13        MR. HENDERSON:
14   Q.   Showing you what's been marked as
15  Exhibit 41, this is a letter dated May 11, 2000
16  from Stephen Hudspeth to Susan Huber.  Stephen
17  Hudspeth was a Dey attorney; is that correct?
18   A.   He was a Coudert attorney, and he
19  represented us in these lawsuits until we
20  switched to Coudert Brothers -- I mean Kelley
21  Drye.  Sorry about that.
22   Q.   This letter appears to be producing 26

1  pages; is that right?
2      A.   That's correct.
3      Q.   Does it indicate the Bates numbers of
4  those 26 pages?
5      A.   No.  It just says they're the same as
6  the Bates numbers as in the response to the OIG
7  subpoena.
8      Q.   Do you know what -- the Bates numbers
9  that were produced under this cover letter that
10 is Exhibit 41?
11     A.   I do not.
12          MR. HENDERSON:  I'll have this next
13 letter marked.
14          (A document was marked as Exhibit
15 Marrs 042 for identification.)
16          MR. HENDERSON:
17     Q.   Now, Exhibit 42 is a letter dated May
18 25, 2000 from Mr. Hudspeth to Ms. Huber.  Would
19 you agree with me that this appears to be a cover
20 letter enclosing additional documents to the
21 State of Texas?
22     A.   Yes.

Page 674

1   Q.   And there's no indication of the Bates
2   range of these documents; correct?
3   A.   Correct.
4   Q.   And is it fair to say you don't know
5   what those Bates ranges were of the documents
6   that were produced in this letter?
7   A.   I do not.
8   Q.   Did you make any effort at all, to your
9   knowledge, to determine what documents were
10  produced in the letter?
11  A.   No.
12      MR. HENDERSON:  I'd like to have this
13  next document marked as Exhibit 43.
14       (A document was marked as Exhibit
15  Marrs 043 for identification.)
16      MR. HENDERSON:
17  Q.   I've handed you a document marked as
18  Exhibit 43, which is a letter from Mr. Hudspeth
19  to Ms. Huber, June 29, 2000.  Again, this
20  reflects Dey's further production of documents in
21  response to a CID consisting of 21 boxes.  Is it
22  fair to say that there's no Bates range indicated

Page 675

1  that would identify the specific documents that
2  were produced?
3       A.   Correct.
4       Q.   Do you know what documents were
5  produced?
6       A.   I do not.
7       Q.   Did you make any effort to determine
8  what documents were produced?
9       A.   I did not.
10      Q.   Do you know whether or not Coudert
11 Brothers or Kelley Drye has information that
12 would indicate what Bates ranges were of the
13 documents that were produced on this date?
14           MR. DOYLE:  Objection as to form.
15           THE WITNESS:  I would assume they do,
16 but I don't know for sure one way or the other.
17           MR. HENDERSON:
18      Q.   The CID -- do you know what that means?
19      A.   I did at one time.
20      Q.   Would it be a civil investigative
21 demand?
22      A.   That sounds familiar.

Page 676

1    Q.   Do you have any other information, Ms.
2  Marrs -- before I move on to another topic, do
3  you have any other information that you can
4  provide to me regarding the dates of Dey's
5  production of documents to the State of Texas in
6  response to the State of Texas' discovery
7  requests and the Bates numbers of those documents
8  produced in each separate production of
9  documents?
10           MR. DOYLE:  Objection as to form.
11           THE WITNESS:  I don't have any
12  additional information.
13           MR. HENDERSON:
14    Q.   I'd like to move on now to topic 16 as
15  shown in Exhibit 1.  Could you review that topic
16  to yourself, please?
17    A.   Okay.
18    Q.   What did you do to prepare on this
19  topic?
20    A.   I had discussions with the attorneys.
21    Q.   Anything else?
22    A.   No.