# EXHIBIT 1

Stiroh, Ph.D., Lauren J. - Vol. I                                                      May 12, 2009
New York, NY

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF MASSACHUSETTS
 3
 4    IN RE:  PHARMACEUTICAL        ) MDL No. 1456
 5    INDUSTRY AVERAGE WHOLESALE    )
 6    PRICE LITIGATION              ) Master File
 7    -----------------------------) No. 01-CV-12257-PBS
 8    THIS DOCUMENT RELATES TO:     )
 9    -----------------------------) Subcategory
10    United States of America,     ) No. 06-CV-11337-PBS
11    ex rel. Ven-A-Care of the     )
12    Florida Keys, Inc., v.        ) Hon. Patti B. Saris
13    Abbott Laboratories, Inc.,    )
14    CIVIL ACTION NO. 05-11084-PBS) VOLUME I
15                        - - - - -
16             May 12, 2009 - 9:02 a.m.
17         Deposition of LAUREN J. STIROH, Ph.D.,
18    taken by attorneys for Venacare, pursuant to
19    notice, held at the offices of Kelley Drye &
20    Warren LLP, 101 Park Avenue, New York, New York,
21    before Helen Mitchell, a Shorthand Reporter and
22    Notary Public.
```

Stiroh, Ph.D., Lauren J. - Vol. I

New York, NY

May 12, 2009

Page 46

1    A.   Yes.

2    Q.   What contact was that?

3    A.   I had telephone conversations with --
4    that I recall, Gary Walker and Russell Johnson.

5    Q.   In your summary of the plaintiffs'
6    claims in this litigation you make note that the
7    complaint alleges that Dey reported inflated AWPs
8    that bore little or no relationship to the prices
9    paid.

10        I believe it's at page 2, in about the
11   second paragraph.

12   A.   Yes, I see that.

13   Q.   Do you disagree with that allegation
14   that is made by the government?

15   A.   In a sense I do.  The AWP per Dey has
16   meaning per Dey, and so it is not right to say it
17   is false and inflated.  It has an economical
18   meaning in the context in which Dey uses its AWP.

19   Q.   What is the context in which Dey uses
20   AWP?

21   A.   As a signal at launch that it has a
22   generic pharmaceutical product that is generic to

Stiroh, Ph.D., Lauren J. - Vol. I

New York, NY

May 12, 2009

Page 47

```
 1   a brand and is eligible to be substituted for the
 2   brand under generic substitution laws.
 3        Q.   What understanding do you have of what
 4   a company needs to do in order to give that
 5   signal at launch?
 6        A.   My understanding is that a company of
 7   -- generic pharmaceutical manufacturer has to
 8   have a pharmaceutical product that is approved by
 9   the FDA, that it has to be the same dosage,
10   strength, route of administration as the brand to
11   which it is generic, and that the signal that the
12   product that is a generic and available for
13   distribution to end patients comes from a
14   published AWP at launch that is below the brand
15   AWP.
16        Q.   Any amount below?
17        A.   My understanding, there is essentially
18   an industry practice that it is 10 to 20 percent
19   below the AWP.
20        Q.   Where does that understanding come
21   from?
22        A.   As it applies to this case, from
```

Stiroh, Ph.D., Lauren J. - Vol. I
New York, NY
May 12, 2009

Page 48

1  deposition testimony in connection with this
2  case.
3     Q.   Did you have that understanding prior
4  to this case?
5     A.   I don't recall specific understanding.
6  Certainly in reading the deposition testimony
7  connected with the industry practice of
8  publishing an AWP approximately 10 percent below
9  a brand was not outside of any understanding I
10 had prior to this case.
11    Q.   Let me just make sure I understand
12 that.
13         Are you saying that you did not have
14 any particular understanding about setting a
15 generic AWP at 10 to 20 percent below the brand
16 AWP before your involvement in this litigation?
17    A.   No.  I generally had an understanding
18 of distribution chains in the pharmaceutical
19 industry.  And while I don't recall ever having a
20 fixed understanding of the amount by which AWP is
21 below the brand AWP, what I reviewed in this case
22 essentially didn't seem to me to be outside my

Stiroh, Ph.D., Lauren J. - Vol. I

New York, NY

May 12, 2009

Page 157

```
 1        Q.   Why did you feel it significant to
 2   express your opinions about what Dey believed or
 3   what Dey had reason to believe?
 4        A.   My opinion is not on what Dey believed.
 5   My opinions, as summarized in the -- starting on
 6   page 3 -- have to do with whether it is
 7   economically rational or reasonable, given the
 8   full information available in the market, for a
 9   Dey to think that its prices either have or do
10   not have an impact on Medicaid and Medicare
11   reimbursement, whether there is a reasonable
12   basis for them to believe that Medicare and
13   Medicaid were not deceived by its pricing
14   practices, and whether there is an economic
15   reason for Dey to have believed that Medicaid and
16   Medicare reimbursement amounts were inflated or
17   not inflated as a result of their pricing
18   practices.
19             They are, I think, sort of three
20   categories of opinions in those that I discuss in
21   my report because I see them as relevant to the
22   assignment that I was given and the opinions
```