# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
|  | MDL No. 1456 |
|  | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL MASSACHUSETTS CLASS ACTIONS CONCERNING CLASSES 2 & 3 | ) ) ) ) |
|  | Judge Patti B. Saris |

## REVISED SETTLEMENT AGREEMENT AND RELEASE OF ASTRAZENECA RELATED TO MASSACHUSETTS CLASSES TWO AND THREE

# TABLE OF CONTENTS

I.    CLASS DEFINITION. .................................................................................................4

    A.    Third-Party Payor MediGap Supplemental Insurance Class ("Class 2"). ...............4
    B.    Consumer and Third-Party Payor Class For Payments Made Outside the Medicare
Context ("Class 3"). ..........................................................................................................4

II.   OTHER DEFINITIONS. ............................................................................................5

III.  SETTLEMENT TERMS .........................................................................................10

    A.    Certification of Settlement Classes. ........................................................................10
    B.    Settlement Amount. ................................................................................................10
    C.    Settlement Fund/Escrow Account/Qualified Settlement Fund. ..............................11
        1.    Settlement Fund/Escrow Account ................................................................11

        2.    Qualified Settlement Fund. ..........................................................................11

    D.    Refunds to AstraZeneca for TPP Opt-Outs/TPP Opt-Out Requirements. ..............12
        1.    Refunds for TPP Opt-Outs. .........................................................................12

        2.    TPP Opt-Out Requirements. ........................................................................13

        3.    Determination of TPP Opt-Out Amounts and AstraZeneca Opt-Out

            Refund, and Dispute Resolution Process. ...................................................13

    E.    Allocation of Benefits to Settlement Classes. .........................................................15
    F.    Disbursements and Distributions from the Settlement Fund. ..................................15
    G.    Motion for Preliminary Approval. ...........................................................................19
    H.    Stay and Resumption of Proceedings. .....................................................................20
    I.    Entry of Final Judgment. .........................................................................................20
    J.    Effective Date. .........................................................................................................20
    K.    Satisfaction of AstraZeneca's Obligations. .............................................................21
    L.    All Released Claims Satisfied By Settlement Fund. ................................................21

IV.   CLAIMS ADMINISTRATION ...............................................................................21

    A.    Claims Administrator/Claims Office. .......................................................................21
    B.    Notice. .....................................................................................................................23
    C.    Deadlines. ................................................................................................................23
        1.    Opt-Out Deadline. .......................................................................................23

        2.    Claims Deadlines. ........................................................................................24

    D.    Compensation to Consumers and TPPs. ..................................................................24

|   | E. | Court Approval of Disbursements and Distributions. | 24 |
|   | F. | Retention of Records. | 24 |
| V. | | EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS/JURISDICTION | 24 |
|   | A. | Exclusive Remedy. | 24 |
|   | B. | Dismissal of Claims. | 25 |
|   | C. | Jurisdiction. | 25 |
| VI. | | RELEASES AND RESERVATIONS | 25 |
|   | A. | Released Claims. | 25 |
|   |   | 1. Released Consumer Class Claims. | 25 |
|   |   | 2. Released TPP Class Claims. | 26 |
|   | B. | Reservation of Claims and Rights. | 28 |
| VII. | | ADMINISTRATIVE EXPENSES AND ATTORNEYS' FEES | 29 |
|   | A. | Administrative Expenses. | 29 |
|   | B. | Attorneys' Fees. | 29 |
|   |   | 1. Lead Class Counsel. | 29 |
| VIII. | | MISCELLANEOUS PROVISIONS | 30 |
|   | A. | Reasonable Best Efforts. | 30 |
|   | B. | No Admission. | 30 |
|   | C. | Enforcement. | 30 |
|   | D. | Authorization to Enter Agreement. | 30 |
|   | E. | No Party Is the Drafter. | 31 |
|   | F. | Choice of Law. | 31 |
|   | G. | Amendment or Waiver. | 31 |
|   | H. | Execution in Counterparts. | 31 |
|   | I. | Integrated Agreement. | 32 |
|   | J. | Construction. | 32 |
| IX. | | TERMINATION OF THIS AGREEMENT | 32 |
|   | A. | Automatic Termination. | 32 |
|   | B. | Effect of Termination. | 32 |

001534-16 382695 v1

## <u>TABLE OF EXHIBITS</u>

<u>EXHIBIT A</u>   —      Notice Forms to Class 3 Consumers

      A.1.            Short Form Publication Notice to Class 3 Consumers

      A.2.            Long Form Notice to Class 3 Consumers

      A.3.            Consumer Claim Form

<u>EXHIBIT B</u>   —      Notice Forms to TPPs

      B.1             Long Form Notice To TPPs

      B.2             TPPs Claim Form

<u>EXHIBIT C</u>   —      Intentionally Left Blank

<u>EXHIBIT D</u>   —      Full Settlement Notice Program

<u>EXHIBIT E</u>   —      [Proposed] Preliminary Approval Order

<u>EXHIBIT F</u>   —      Escrow Agreement

<u>EXHIBIT G</u>   —      [Proposed] Final Approval Order

<u>EXHIBIT H</u>   —      Claims Process Explanation

001534-16  382695 v1

## SETTLEMENT AGREEMENT AND RELEASE OF ASTRAZENECA RELATED TO MASSACHUSETTS CLASSES TWO AND THREE

This Settlement Agreement and Release ("this Agreement") is submitted to the United States District Court for the District of Massachusetts pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Subject to Court approval, this Agreement is entered into between and among the following parties (the "Parties"), by and through their respective counsel:  (i) Class Representatives of Classes 2 and 3 on behalf of themselves and the Settlement Classes (as such classes are hereinafter defined) (collectively, "Class Plaintiffs"); and (ii) Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca").

WHEREAS, there is a consolidated and coordinated proceeding pending in the United States District Court for the District of Massachusetts (the "Court" or "MDL Court"), *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, No 01-CV-12257-PBS (D. Mass.) ("MDL Class Actions"), comprised of actions in which Class Plaintiffs have alleged, *inter alia*, that AstraZeneca and other entities have engaged in unlawful inflation and misrepresentation of the published Average Wholesale Prices ("AWPs") for various AstraZeneca drugs, and allegedly unlawful use of AWPs in the marketing of such drugs;

WHEREAS, in an Order dated January 30, 2006, the MDL Court certified classes of plaintiffs as to claims asserted in the MDL Class Complaints under Mass G. L. c 93A with respect to Zoladex® and Pulmicort Respules®;

WHEREAS, the Parties have previously engaged in a trial of claims in the MDL Court under Mass. G. L. c 93A which is the subject of the Court's June 21, 2007 Findings of Fact and Conclusions of Law (the "2007 Findings");

WHEREAS, the 2007 Findings were upheld on appeal by the First Circuit Court of Appeals on September 23, 2009;

1

WHEREAS, on March 4, 2010, AstraZeneca filed a petition for certiorari in the Supreme Court of the United States seeking review of the First Circuit's decision;

WHEREAS, AstraZeneca and other entities have asserted a number of defenses to Class Plaintiffs' claims, including defenses related to the ability of Class Members to prove damages consistent with the Court's 2007 Findings, and denies any liability to the Class Plaintiffs;

WHEREAS, AstraZeneca and Class 2 and Class 3 have entered into a separate settlement agreement concerning all claims related to purchases of Zoladex® outside the Commonwealth of Massachusetts (the "AstraZeneca Nationwide Settlement") which has also been submitted to this Court for approval;

WHEREAS, AstraZeneca and Class Representatives of Class 1 (Medicare Part B enrollees) have previously entered into a Settlement Agreement and Release and have settled all claims related to Class 1, as reflected in the Court's Final Order and Judgment Granting Final Approval dated December 19, 2008;

WHEREAS, the Parties agree that this Agreement shall not be deemed or construed as an admission or as evidence of any violation of any statute or law, or of any liability or wrongdoing by any of the AstraZeneca Releasees, or of the truth of any of the claims or allegations alleged in the MDL Class Actions, or as a waiver of any defenses thereto;

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and law relating to the asserted and potential claims and defenses in the MDL Class Actions;

WHEREAS, the Parties have engaged in extensive, arm's-length negotiations regarding settlement of the claims brought by and on behalf of Class 2 and Class 3 in the MDL Class Actions;

WHEREAS, Lead Class Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Class Actions, including the claims asserted in the Complaint and the possible legal and factual defenses thereto, the trial of claims involving the Settlement Classes, and the Court's 2007 Findings, that it would be in the best interest of Class Plaintiffs to enter into this Agreement to avoid the uncertainties, burdens, and risks of further litigation, and to assure that the substantial benefits reflected herein are obtained for Class Plaintiffs and the Settlement Classes, and further, that this Agreement is fair, reasonable, adequate, and in the best interests of all putative members of the Settlement Classes;

WHEREAS, AstraZeneca and other entities have asserted a number of defenses to Class Plaintiffs' claims and have denied and continue to deny Class Plaintiffs' claims in all of the MDL Class Actions;

WHEREAS, AstraZeneca, despite the belief that it has strong defenses to the claims described herein, has agreed to enter into this Agreement to reduce and avoid further expense, burden, and inconvenience of protracted litigation, and to resolve finally and completely the claims of the Class Plaintiffs;

WHEREAS, through counsel, AstraZeneca and Class Plaintiffs, after vigorous, arm's-length negotiations, have conditionally agreed to payment by AstraZeneca of $13 million dollars ($13,000,000.00) in full and final settlement of the Released Claims;

WHEREAS, Consumer Allocation Counsel and TPP Allocation Counsel have engaged in vigorous arm's-length negotiations to apportion the Settlement Amount, as defined below, between Consumers and TPPs (both as hereinafter defined), and reached an agreement which results, in the aggregate, in the apportionment of eleven and 11/100 percent (11.11%) of the

001534-16 382695 v1

Settlement Amount to Consumers and eighty-eight and 89/100 percent (88.89%) of the

Settlement Amount to TPPs;

NOW, THEREFORE, the undersigned counsel on behalf of AstraZeneca and Class

Plaintiffs agree that the Released Claims of Class Plaintiffs in Class 2 and Class 3 in the MDL

Class Actions shall be settled, compromised, released and/or dismissed on the merits and with

prejudice on the terms and conditions set forth in this Agreement, and without costs to

AstraZeneca or Class Plaintiffs (except as provided herein), subject to Court approval of this

Agreement as a good faith, fair, reasonable, and adequate settlement under Fed. R. Civ. P. 23(e).

## I.     CLASS DEFINITION.

The Parties agree and consent, for settlement purposes only, to the certification of the

following classes in the MDL Class Actions (collectively hereafter, the "Settlement Classes"):

> A.     Third-Party Payor MediGap Supplemental Insurance Class ("Class 2").
>
> All TPPs that, from January 1, 1991 through January 1, 2005,
> made, or incurred an obligation to make, reimbursements for any
> portion of a Medicare Part B co-payment for Zoladex® purchased
> in the Commonwealth of Massachusetts.
>
> B.     Consumer and Third-Party Payor Class For Payments Made Outside the
> Medicare Context ("Class 3").
>
> All natural persons who made, or were liable for all or any portion
> of, a non-Medicare Part B payment for Zoladex® purchased in the
> Commonwealth of Massachusetts, and all TPPs that made, or
> incurred an obligation to make, non-Medicare Part B
> reimbursements for Zoladex® purchased in the Commonwealth of
> Massachusetts, during the period from January 1, 1991 through
> June 11, 2010.

Excluded from each of the Settlement Classes are the AstraZeneca Releasees as

hereinafter defined.  (The exclusion of AstraZeneca "employees" from the Settlement Classes

shall not affect the eligibility of any ERISA plans or other TPPs for settlement benefits

regardless whether any plan participants might be excluded "employees.")  Additionally

excluded from each of the Settlement Classes are the following: (1) all natural persons who only

paid flat co-payments, and not any percentage co-payments, for Zoladex® purchased in the

Commonwealth of Massachusetts; (2) all federal, state, and local governmental entities in the

United States, except any such governmental agencies or programs that made or incurred an

obligation to make a reimbursement for Zoladex® purchased in the Commonwealth of

Massachusetts as part of a health benefit plan for their employees, but only with respect to such

payments.

## II.   OTHER DEFINITIONS.

As used in this Agreement and its Exhibits, the following terms shall have the meanings

set forth below.  Terms used in the singular shall include the plural and vice versa.

A.    "AstraZeneca" means AstraZeneca Pharmaceuticals LP.

B.    "AstraZeneca Releasees" means AstraZeneca and its present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and its respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, and its predecessors, successors, heirs, executors, trustees, administrators and assigns as of the dates of this Agreement.  As used in this Section, "affiliates" means entities controlling, controlled by or under common control with AstraZeneca.

C.    "Claims Administrator" and "Claims Office" mean Rust Consulting, Inc. (formerly known as Complete Claims Solutions, Inc.) and Class Action Settlement Services, LLC ("CASS") as joint claims administrators with the responsibilities set forth in Section IV.A.

D.    Intentionally omitted.

E.    "Class Period" means January 1, 1991 through January 1, 2005, inclusive for Class 2 and January 1, 1991 through June 11, 2010, inclusive, for Class 3.

F.    "Class Releasors" means each Settlement Class Member, including (1) all Consumer Settlement Class Members, as well as their successors, heirs, executors, trustees, administrators, and assigns, and (2) all TPP Settlement Class Members, including any self-funded benefit plans for which the TPP, as a third-party administrator, provides prescription drug benefit

services (provided the TPP has the legal right and authority to make such a claim), as well as the TPP Settlement Class Members' respective present and former, direct and indirect parents, subsidiaries, divisions, partners, affiliates, present and former stockholders, officers, directors, employees, managers, agents, attorneys, and legal representatives; and any predecessors, successors, heirs, executors, trustees, administrators, and assigns of the foregoing, in such capacities.  As used in this Section, "affiliates" means entities controlling, controlled by, or under common control with a Class Releasor.

G.      "Class Plaintiffs" mean the Class Representatives on behalf of themselves and the Settlement Classes.  Class Representatives for the two Settlement Classes are as follows

Class 2:  Blue Cross Blue Shield of Massachusetts and Sheet Metal Workers National Health Fund;

Class 3:  Blue Cross Blue Shield of Massachusetts, Pipefitters Local 537 Trust Funds and Vicinity Welfare Trust Fund, and Teamsters Health & Welfare Fund of Philadelphia and Vicinity.

H.      "CMS" means the Center for Medicare and Medicaid Services of the United States Department of Health and Human Services.

I.      "Complaint" means the Fifth Amended Master Consolidated Class Action Complaint.

J.      "Consumer" means any individual falling within the definition of Class 3 who is a natural person and not a TPP.

K.      "Consumer Allocation Counsel" means Wells Wilkinson, Director, Prescription Access Litigation (PAL), 30 Winter Street, 10th floor, Boston, MA.

L.      "Consumer Overage" means the amount of funds remaining in the Consumer Settlement Pool after payment of all fees, expenses and awards and payment of the Recognized Claim Amount to all Authorized Consumer Claimants.  The Consumer Overage will be paid into the TPP Settlement Pool prior to distribution of funds to TPP Consumer Class Members.

M.      "Consumer Settlement Class Member" means a Consumer who is not an Opt-Out.

N.      "Consumer Settlement Pool" means eleven and 11/100 percent (11.11%) of the Settlement Amount, after subtracting fees and expenses as set forth in Section III.F.2.e below, which has been allocated to pay authorized claims of Consumer Class Members.

O.      "Court" and "MDL Court" mean the Honorable Patti B. Saris, or if she is unavailable, another judge of the United States District Court for the District of Massachusetts, presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, No 01-CV-12257-PBS (D. Mass.).

P.      "Effective Date" is the date defined in Section III.J of this Agreement.

Q.      "Escrow Account" means the account established pursuant to Section III.C.1 in this Agreement.

R.      "Escrow Agent" means KeyBank National Association, 127 Public Square, 16th Floor, Cleveland, OH  44114 ("KeyBank").

S.      "Final" or "Final Approval" of this Agreement means that the time has run for any appeals from a final approval order of the MDL Court, or any such appeals have been resolved in favor of this Agreement.

T.      "Final Fairness Hearing" means the hearing conducted by the Court in connection with determining the fairness, adequacy, and reasonableness of this Agreement under Fed. R. Civ. P. 23(e).  The Court shall set the date of the Final Fairness Hearing, which will be communicated to the Settlement Classes in a Court-approved notice pursuant to this Agreement and in accordance with Fed. R. Civ. P. 23(c)(2).

U.      "Lead Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP, Spector Roseman Kodroff & Willis, P.C., Wexler Wallace LLP, and Hoffman & Edelson, LLC.

V.      "MDL Class Actions" means all private class actions included within *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, No 01-CV-12257-PBS (D. Mass.), including those actions in which Class Plaintiffs have alleged, *inter alia*, that any of the AstraZeneca AstraZeneca Releasees have engaged in unfair, deceptive, or unlawful inflation or misrepresentation of published AWPs or the unfair, deceptive, or unlawful use of AWPs in marketing drugs.

W.      "MDL Class Complaints" means all of the Master Consolidated Class Action Complaints (through and including the 5th Amended Master Consolidated Class Action Complaint) filed in the MDL Class Actions, including all counts of such complaints previously dismissed by the MDL Court.

X.      "MDL Mediator" means Eric Green, Resolutions, LLC of Boston, Massachusetts.  If Mr. Green is unable or unwilling to perform any action delegated by this Agreement to the MDL Mediator, the Parties shall work in good faith to identify and employ an individual with sufficient skill and experience to undertake such action or actions.

7

Y.      "Opt-Out" means any natural person or entity falling within the definition
of a Settlement Class who timely and validly submits a request for
exclusion from one or more of the Settlement Classes in accordance with
the procedures set forth in the Settlement Notice.

Z.      "Parties" means AstraZeneca and Class Plaintiffs.

AA.     "Released Claims" means any and all claims released by this Agreement.

BB.     "Released Consumer Class Claims" means any and all claims, demands,
actions, suits, causes of action, damages whenever incurred, liabilities of
any nature whatsoever, including costs, expenses, penalties and attorneys'
fees, known or unknown, suspected or unsuspected, in law or equity, that
any Consumer who has not timely excluded himself or herself from the
Settlement Class, whether or not they object to the settlement and whether
or not they make a claim upon or participate in the Settlement Fund, ever
had, now has, or hereafter can, shall or may have, directly or indirectly,
representatively, derivatively or in any capacity, arising out of any
conduct, events or transactions relating to the marketing, sale, purchase,
cost, reimbursement amount or price of Zoladex® purchased in the
Commonwealth of Massachusetts through the date of this Agreement.
The foregoing includes, but is not limited to, claims relating to any drug
price published by any commercial price reporting service, or provided by
AstraZeneca to any such commercial price reporting service (including
AWP and WAC) and or any marketing activity relating to any such price,
such as any reference to the difference between (1) a price paid and (2)
any reported price or reimbursement rate based on such a reported price,
that were or could have been alleged against AstraZeneca in any of the
MDL Class Complaints with respect to Zoladex®.  "Released Consumer
Class Claims" shall not include those claims excluded pursuant to Section
VI.B of this Agreement entitled "Reservation of Claims and Rights."

CC.     "Released TPP Class Claims" means any and all claims, demands, actions,
suits, causes of action, damages whenever incurred, and liabilities of any
nature whatsoever, including costs, expenses, penalties, and attorneys'
fees, known or unknown, suspected or unsuspected, in law or equity, that
the TPP Settlement Class Members ever had, now has, or hereafter can,
shall, or may have, directly, indirectly, representatively, derivatively, or in
any capacity, arising out of any conduct, events, or transactions relating to
the marketing, sale, purchase, cost, reimbursement amount or price of
Zoladex® purchased in the Commonwealth of Massachusetts through the
date of this Agreement.  The foregoing includes, but is not limited to,
claims relating to any drug price published by any commercial price
reporting service, or provided by AstraZeneca to any such commercial
price reporting service (including AWP and WAC) and or any marketing
activity relating to any such price, such as any reference to the difference
between (1) a price paid and (2) any reported price or reimbursement rate

8

based on such a reported price, that were or could have been alleged against AstraZeneca in any of the MDL Class Complaints with respect to Zoladex®. "Released TPP Class Claims" shall not include those claims excluded pursuant to Section VI.B of this Agreement entitled "Reservation of Claims and Rights."

DD.    "Settlement Amount" means the sum of $13 million dollars ($13,000,000.00).

EE.    "Settlement Class Member" means any natural person and any entity falling within the definition of any of the Settlement Classes, other than any Opt-Out.

FF.    "Settlement Fund" means the fund used to pay all claims relating to the settlement of the claims of Class 2 and Class 3 in the Commonwealth of Massachusetts asserted in the MDL Class Actions and all Released Claims pursuant to this Agreement, which shall be held in the Escrow Account until distributions are made as provided herein.

GG.    "Settlement Notice" means notices, substantially in the form and following the procedures attached as Exhibits A and B, as may be modified in accordance with the Court's rulings with respect to preliminary approval of this Agreement.

HH.    "Third Party Payor" ("TPP") means a private or governmental entity that was or is at risk to pay all or part of the cost of Zoladex® which was prescribed, provided or administered in the United States for individual beneficiaries of the TPP's prescription drug or health coverage.  TPP shall not include:  (1) AstraZeneca Releasees; (2) the U.S. Government and its agencies and departments, and all other governmental entities that made payments pursuant to any state's Medicaid program; and (3) all federal, state or local governmental entities, except for such governmental agencies or programs that made or incurred an obligation to make a reimbursement for Zoladex® as part of a health benefit plan for their employees, but only with respect to such payments.

II.    "TPP Allocation Counsel" means W. Scott Simmer, Blank Rome LLP, Watergate, 600 New Hampshire Ave., N.W., Washington, D.C. 20037.

JJ.    "TPP Settlement Class Members" means any TPP that falls within the definitions of Settlement Classes 2 and/or 3, is a TPP and not a natural person, and is not an Opt-Out.

KK.    "TPP Claimants" means all TPP Settlement Class Members that file a valid claim under this Agreement with the Claims Administrator.

LL.    "TPP Settlement Pool" means eighty-eight and 89/100 percent (88.89%) allocated hereunder to TPPs after subtracting fees and expenses as set

forth in Section III.H.2.e below, which has been allocated to pay authorized claims of TPP Class Members.

### III.   SETTLEMENT TERMS

A.   Certification of Settlement Classes.

AstraZeneca conditionally agrees and consents to certification of the Settlement Classes for settlement purposes only, and within the context of this Agreement only.  AstraZeneca's conditional agreement is contingent upon execution of this Agreement by the Parties and Final Approval by the MDL Court.  If this Agreement, for any reason, is not finally approved or is otherwise terminated, AstraZeneca reserves the right to reassert all of its objections and defenses to certification of any class for trial purposes, and Class Plaintiffs will not offer this conditional agreement in any form (including in response to AstraZeneca's petition for certiorari) as evidence in support of the certification of any class for trial purposes.

B.   Settlement Amount.

In full and final settlement of the Released Claims, AstraZeneca shall pay, in the aggregate, the Settlement Amount of $13 million dollars ($13,000,000.00).  The Settlement Amount shall include the full and complete cost of Settlement Class Member benefits and compensation, settlement notice and claims administration, and Lead Class Counsel's attorneys' fees and expenses (as approved by the MDL Court).  The Settlement Amount shall not be reduced based upon the total amount of authorized claims of Settlement Class Members approved by the Claims Administrator except under the circumstances described in Section III.E to this Agreement.  Under no circumstances, other than those described in Sections III.D and IX to this Agreement concerning TPP Opt-Out Refunds and termination, shall any portion of the Settlement Amount revert to any AstraZeneca Releasee.  It is agreed and understood that no

portion of the Settlement Amount shall be allocated or attributed to or characterized as the payment of fines, penalties, or other punitive damages.

C.   Settlement Fund/Escrow Account/Qualified Settlement Fund.

1.   Settlement Fund/Escrow Account.

In full and final settlement of the Settlement Class Members' claims, AstraZeneca shall pay the Settlement Amount into the Settlement Fund held in the Escrow Account.  The Escrow Account shall be established and administered pursuant to an Escrow Agreement substantially in the form attached as Exhibit F.

Within ten (10) business days after the MDL Court's preliminary approval of this Agreement, AstraZeneca shall cause the Settlement Amount to be transferred to the Escrow Account.  The payment of the Settlement Amount into the Escrow Agreement shall be made by electronic funds transfer (pursuant to written instructions to be provided to AstraZeneca by Lead Class Counsel).  Monies held in the Escrow Account shall be invested by the Escrow Agent (as defined in the Escrow Agreement) in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or other similar short-term United States government obligations, and any interest earned thereon shall become part of the Settlement Fund.

2.   Qualified Settlement Fund.

The Escrow Account shall be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1.  The Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Escrow Agent shall pay from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account, and all related costs and expenses.  The Parties agree to treatment of the Escrow Account as a qualified settlement fund from the earliest

11

possible date and agree to make any available "relation back" election.  If amounts received by

Settlement Class Members or AstraZeneca upon any refund or other reversion, are construed as

income, it is the recipient's sole responsibility to pay taxes on such amount, plus penalties and

interest.

          D.     <u>Refunds to AstraZeneca for TPP Opt-Outs/TPP Opt-Out Requirements.</u>

          1.     <u>Refunds for TPP Opt-Outs.</u>

In the event there are any TPP Opt-Outs, namely TPPs that validly and timely request

exclusion from Settlement Classes 2 or 3, AstraZeneca shall be entitled to a refund for each such

TPP Opt-Out in an amount equal to $11,555,700.00 (which is eighty-eight and 89/100 percent

(88.89%) of $13,000,000.00), plus the Consumer Overage, times a percentage derived by

dividing the amount of each such TPP Opt-Out's Recognized Claim Amount (calculated, by the

Claims Administrator, in the same manner that the Recognized Claim for a TPP remaining in the

Settlement Class would be calculated) by the total of all Recognized Claims of (a) all TPP Class

Members who file acceptable claims, and (b) all TPP Opt-Outs (the "AstraZeneca Opt-Out

Refund").  All such AstraZeneca Opt-Out Refunds, together with accrued interest, shall be paid

to AstraZeneca in accordance with the provisions of Paragraph III.E.2.f below.  AstraZeneca

shall notify Lead Class Counsel of any settlement in excess of one million dollars ($1,000,000)

between AstraZeneca and a TPP Opt-Out (or group of TPP Opt-Outs) related to claims

consistent with those brought in any of the MDL Class Complaints within ten (10) days of the

execution by all parties of any such settlement agreement.  The notice referred to in the

preceding sentence shall be deemed confidential and shall be used by Lead Class Counsel solely

for the purpose of seeking an award of attorneys' fees from the settling TPP Opt-Out (or group

of TPP Opt-Outs) and/or their respective counsel.  Lead Class Counsel agrees that it will not

seek any fee from AstraZeneca in connection with TPP Opt-Out claims or settlement.

The total amount of the Settlement Fund shall be reduced by the amount of AstraZeneca's Opt-Out Refund (together with accrued interest), including for purposes of determining the final amount of the class attorneys' fee award.  This reduction shall be made from the TPP Settlement Pool and shall not reduce the funds made available to satisfy the claims of Consumers.

2.      TPP Opt-Out Requirements.

For purposes of implementation of this Agreement, including Section III.D, a TPP Opt-Out will be required to file a TPP Notice of Exclusion, as will be set forth in the preliminary approval order issued by the MDL Court.  Each TPP Opt-Out will be requested, as part of its Notice of Exclusion, to provide reasonable confirmation that its payments for Zoladex® were based on the AWP of such drugs and the amount of its purchases of such drugs during the period of January 1, 2003 to December 31, 2004, in order to demonstrate that it would otherwise be a TPP Class Member and that it wishes to opt out of Settlement Classes 2 and 3.  If additional information is needed by the parties hereto or the Claims Administrator from any TPP Opt-Out to implement this Section or any other provision of this Agreement, the parties shall cooperate to obtain such information from the TPP Opt-Out, including, but not limited to, seeking an order of the MDL Court to obtain such information.

3.      Determination of TPP Opt-Out Amounts and AstraZeneca Opt-Out Refund, and Dispute Resolution Process.

The Claims Administrator shall in the first instance calculate the AstraZeneca Opt-Out Refund due under this Section for each valid TPP Opt-Out, as well as the total AstraZeneca Opt-Out Refund due to AstraZeneca.

a.      If AstraZeneca's Counsel or Lead Class Counsel dispute the Claims Administrator, or if AstraZeneca's Counsel or

13

Lead Class Counsel determine that they have received insufficient purchase or other information from the Claims Administrator or any TPP Opt-Out to determine the amount of the total AstraZeneca Opt-Out Refund due, and, therefore, a dispute exists regarding the amount of the AstraZeneca Opt-Out Refund, the parties, the Claims Administrator, and the TPP Opt-Out(s) shall attempt informally to resolve any such dispute.

b.      As part of any attempt to resolve such dispute, the Claims Administrator, upon request by AstraZeneca's Counsel or Lead Class Counsel shall seek additional information from the TPP Opt-Out and/or provide AstraZeneca's Counsel and Lead Class Counsel with such additional claims information and data as is reasonably necessary for the AstraZeneca's Counsel and Lead Class Counsel to evaluate the validity of the refund calculation, including any information that would be relevant to calculating a Recognized Claim pursuant to Exhibit H.

c.      If the TPP Opt-Out does not provide such additional information after the parties make reasonable efforts to obtain it, then the parties shall undertake good faith efforts to estimate the TPP Opt-Out amount and AstraZeneca Opt-Out Refund using publicly available or other more easily

14

obtainable information about the TPP Opt-Out, such as the TPP Opt-Out's number of covered lives.

d.    The parties agree to submit promptly any unresolved disputes concerning TPP Opt-Out amounts and/or AstraZeneca Opt-Out Refund to the MDL Mediator, who shall issue a report and recommendation to the MDL Court, and the MDL Court's decision to adopt or reject the report and recommendation shall be binding and final and the Parties waive any right to appeal.

E.    Allocation of Benefits to Settlement Classes.

Pursuant to negotiation between Consumer Allocation Counsel and TPP Allocation Counsel, eleven and 11/100 percent (11.11%) of the Settlement Amount, or $1,444,300.00, minus fees and expenses as set forth in Section III.F.2.e below, will become the "Consumer Settlement Pool," which will be used to pay authorized claims of Consumer Class Members. Eighty-eight and 89/100 percent (88.89%) of the Settlement Amount, or $11,555,700.00, minus fees and expenses as set forth in Section III.F.2.e below, will become the "TPP Settlement Pool," which will be used to pay authorized claims of TPP Settlement Class Members.

F.    Disbursements and Distributions from the Settlement Fund.

The Settlement Fund shall be distributed as follows or as otherwise ordered by the Court:

1.    Prior to the Effective Date of this Agreement:

a.    Any fees and expenses incurred in administering the Escrow Account and the Settlement Fund shall be paid pursuant to the Escrow Agreement.  The costs of notice and claim administration of the Settlement shall be paid by the

15

Escrow Agent to the Claims Administrator as approved by

the MDL Court and at the direction of Lead Class Counsel

with notice of such payments provided to counsel for

AstraZeneca;

b.      Disbursements for the payment of any taxes (including any

estimated taxes, interest or penalties) due, as a result of

income earned by the Settlement Fund, shall be made

promptly by the Escrow Agent pursuant to the Escrow

Agreement with notice of such disbursements provided to

the Lead Class Counsel and Counsel for AstraZeneca.

2.      <u>After the Effective Date of this Agreement</u>, the Settlement Fund

shall be distributed as follows:

a.      Any remaining fees or expenses incurred in connection

with the administration of the Escrow Account and the

Settlement Fund shall be paid pursuant to the Escrow

Agreement, and to the extent, if any, the reasonable fees

and expenses incurred as part of notice and claims

administration of the Settlement have not been paid, such

fees and expenses shall be distributed to the Claims

Administrator by the Escrow Agent with notice of such

disbursements provided to the Lead Class Counsel;

b.      Disbursements for the payment of any taxes (including any

estimated taxes, interest or penalties) due as a result of

income earned by the Settlement Fund shall be made

16

promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to the Lead Class Counsel;

c.    Any compensation determined by the MDL Court for services rendered to the Settlement Classes by the Class Representatives, either in the amounts to be recommended by Lead Class Counsel as set forth in the proposed notice forms attached hereto as <u>Exhibits A-B</u> or as otherwise ordered by the MDL Court, shall be distributed to the Class Representatives;

d.    Any attorneys' fees and litigation expenses awarded by the MDL Court to Class Counsel in connection with Final Approval of this Settlement Agreement. Such attorneys' fees and litigation expenses shall be paid to Lead Class Counsel for distribution to Class Counsel;

e.    The Settlement Fund, net of (1) payment of attorneys' fees and expenses pursuant to Sections III.E.2.d, and (2) payment of other fees, costs, expenses and awards provided for in Sections III.E.1.a and III.E.1.b, and III.E.2.a, b, and c, shall be segregated eleven and 11/100 percent (11.11%) for the benefit of Consumers (the "Consumer Settlement Pool") and eighty-eight and 89/100 percent (88.89%) for

17

the benefit of TPP Class Members (the "TPP Settlement Pool");

f.   The payment to AstraZeneca of any AstraZeneca Opt-Out Refund, together with any accrued interest, attributable to TPP Opt-Outs under Section III.D.  Any such AstraZeneca Opt-Out Refund shall be deducted from the TPP Settlement Pool.

g.   The balance of the Consumer Settlement Pool after deducting the above fees, expenses, costs and awards (the "Net Consumer Settlement Pool"), shall be payable to Consumer Class Members who submit Proofs of Claim that are accepted by the Claims Administrator and approved by the MDL Court ("Authorized Consumer Claimants") in accordance with the applicable procedures established pursuant to Exhibit H.

(i).   If the amount of the Net Consumer Settlement Pool is not sufficient to pay each Authorized Consumer Claimant his or her Recognized Claim Amount as set forth herein, then each Authorized Consumer Claimant shall be paid his or her *pro rata* share of the claimants' Recognized Claim Amount, subject to any minimum payment(s) established by the MDL Court.

18

(ii).    If, on the other hand, there are any unclaimed

monies in the Net Consumer Settlement Pool after

all Authorized Consumer Claimants have been paid

according to their Recognized Claim Amount or

any minimum payment authorized by the Court,

then the balance of the Net Consumer Settlement

Pool (defined herein as the Consumer Overage)

shall be paid into the TPP Settlement Pool to satisfy

the claims of TPP Class Members.  It is agreed that

under no circumstances are any such unclaimed

funds in the Net Consumer Settlement Pool to revert

to AstraZeneca.

h.    The balance of the TPP Settlement Pool after the payment

of the above fees, expenses, costs, and awards (the "Net

TPP Settlement Pool"), shall be payable to TPP Class

Members who submit Proofs of Claim that are accepted by

the Claims Administrator and approved by the Court

("Authorized TPP Claimants"), in accordance with the

applicable procedure established pursuant to Exhibit H.

G.    Motion for Preliminary Approval.

Concurrent with submission of this Agreement for the MDL Court's consideration, Lead

Class Counsel shall submit to the MDL Court a motion for preliminary approval of this

Agreement.  The motion shall request entry of a Preliminary Approval Order substantially in the

001534-16 382695 v1

form attached as <u>Exhibit E</u>, which includes a provision enjoining Settlement Class Members from litigating Released Claims pending Final Approval of this Agreement.

        H.      <u>Stay and Resumption of Proceedings.</u>

Subject to preliminary approval of this Agreement by the MDL Court, all proceedings in the MDL Class Actions as related to the AstraZeneca Releasees, and any proceedings asserting any of the Released Claims, other than proceedings relating to the Settlement contemplated herein and the AstraZeneca Nationwide Settlement, shall be stayed.  In the event the MDL Court does not approve this Agreement, the Effective Date does not occur, or this Agreement is otherwise terminated, all stayed proceedings shall resume in a reasonable manner approved by the MDL Court.

        I.      <u>Entry of Final Judgment.</u>

If the MDL Court approves this Agreement following the Final Fairness Hearing scheduled by the MDL Court pursuant to the Preliminary Approval Order, counsel for the Parties shall request that the MDL Court enter a Final Approval Order substantially in the form attached as <u>Exhibit G</u>, including the Court's express determination under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that separate judgments with respect to all claims by Settlement Class Members of Classes 2 and 3 be deemed as final judgments.

        J.      <u>Effective Date.</u>

This Agreement shall be effective on the first date after all of the following events have occurred:

        1.      Entry of the Preliminary Approval Order, substantially in the form attached as <u>Exhibit E</u>, or entry of a Preliminary Approval Order in an alternative form with respect to which all Parties consent in writing;

2.     Final Approval of this Agreement by the MDL Court, following notice to Settlement Class Members and a Final Fairness Hearing, in accordance with Fed. R. Civ. P. 23;

3.     Entry of the Final Approval Order, substantially in the form attached as <u>Exhibit G</u>, or entry of a Final Approval Order in an alternative form with respect to which all Parties consent in writing; and

4.     The Final Approval Order becomes Final.

K.     <u>Satisfaction of AstraZeneca's Obligations.</u>

AstraZeneca's transfer of $13 million dollars ($13,000,000.00) to the Escrow Account shall fully satisfy AstraZeneca's obligations to make payments under this Agreement, and no other payment by any AstraZeneca Releasee shall be required to resolve the MDL Class Actions or the Released Claims.  AstraZeneca Releasees shall not have any liabilities, obligations or responsibilities thereafter regarding the investment, payment, disposition or distribution of the Settlement Fund or the monies deposited into the Escrow Account.

L.     <u>All Released Claims Satisfied By Settlement Fund.</u>

Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction of all Released Claims as provided in this Agreement.

IV.    **CLAIMS ADMINISTRATION**

A.     <u>Claims Administrator/Claims Office.</u>

The Claims Administrator/Claims Office shall be Rust Consulting, Inc. (formerly known as Complete Claims Solutions, Inc.), subject to Court approval.  In addition, Class Action Settlement Services, LLC ("CASS") shall be appointed as a co-administrator to assist in the claims administration process, subject to Court approval, as outlined herein.  Rust shall provide

21

claims administration services, including the administration of the settlement claims process for both consumers and TPPs, the review of claims, the disbursement of funds, the preparation of tax filings and payment of any taxes due as a result of interest earned by the Escrow Account, and the preparation of a final accounting to the Court.  CASS shall process information provided by insurance companies, self-insured employers, Taft-Hartley plans, and other third-party payors concerning copayments made by insured consumer class members, as delineated below.

TPP Class members will be requested to provide data concerning payments by insured co-payers directly to CASS in order to increase the participation of consumers in the Settlement. TPPs are only required to make reasonable good-faith efforts to provide the requested data, and Consumers will be encouraged to submit their own claim forms when possible.  TPPs are not required to warrant that their data is complete or error-free, and neither they nor the Claims Administrator shall be held liable to Class members or anyone else as a result of errors or omissions in the data.  Class Counsel shall ensure that the data provided in compliance with this provision falls within a HIPPA safe harbor for information provided pursuant to court order.

The Claims Administrator may appoint as many claims officers, experts, and/or advisors as are necessary to carry out the duties of the Claims Office expeditiously.  The Claims Office procedures shall be subject to MDL Court approval and under the continuing jurisdiction of the MDL Court.  Rust shall be responsible for disseminating information to Settlement Class Members concerning settlement procedures, among other ways, by establishing a toll-free "hotline."  In addition, Rust shall assist the MDL Court in processing and tabulating opt-out requests, shall receive all opt-out forms and documentation, shall receive, process, classify, and pay claims as provided in this Agreement and any applicable orders of the MDL Court.  Both Rust and CASS shall operate under the continuing supervision of the MDL Court.

001534-16 382695 v1

B.      Notice.

The class notice program shall be in accordance with Fed. R. Civ. P. 23 and subject to

Court approval.

        1.      Upon preliminary approval of this Agreement by the MDL Court,

and the funding of the Escrow Account pursuant to Section III.C.1,

Lead Class Counsel, in accordance with Fed. R. Civ. P. 23 and the

Preliminary Approval Order, shall provide all Settlement Class

Members who can be identified by reasonable means with the best

notice practicable under the circumstances in substantially the

forms attached hereto as Exhibits A-B, or as otherwise ordered by

the MDL Court.  Such notice shall include publication on a web

site established by Lead Class Counsel or the Claims

Administrator and additional publication and other notice as set

forth in Exhibit D.

        2.      All costs of notice to the Settlement Classes shall be paid

exclusively from the Settlement Fund and in no event shall any

Released Party be responsible for payment of notice costs.

C.      Deadlines.

        1.      Opt-Out Deadline.

As detailed in the proposed Settlement Notices attached hereto as Exhibits A-B, all

requests to opt out of any of the Settlement Classes must be received by the Claims

Administrator no later than fifteen (15) days before the date of the Final Approval Hearing set by

the MDL Court.

001534-16 382695 v1

2.      Claims Deadlines.

All claims deadlines shall be as set forth in the Preliminary Approval Order issued by the

MDL Court, in substantially the form set forth in Exhibit E.

D.      Compensation to Consumers and TPPs.

To the extent practicable and consistent with the principle that only qualified claims will

be paid, the processing of Consumer Settlement Class Member claims and TPP Settlement Class

Member Claims shall be made in accordance with the clear and understandable procedures set

forth in Exhibit H.

E.      Court Approval of Disbursements and Distributions.

Court approval shall be required prior to any disbursement or any distribution from the

Settlement Fund, but not for any fees and expenses incurred to administer the Escrow Account or

the Settlement Fund under the Class Escrow Agreement, or taxes on the Settlement Fund.

F.      Retention of Records.

The Claims Administrator shall retain all records relating to payment of claims under this

Agreement for a period of five (5) years from the Effective Date of the Agreement.  The

confidentiality of any personal health information in those records shall be maintained in

accordance with the Protective Order in the MDL Class Actions.

**V.      EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS/JURISDICTION**

A.      Exclusive Remedy.

This Agreement shall be the exclusive remedy for any and all Released Claims, any claim

arising out of the subject matter of this Agreement, and any complaint by any Settlement Class

Member against AstraZeneca Releasees related to the Released Claims.  No Released Party shall

be subject to liability or expense of any kind to any Settlement Class Member related to the

Released Claims except as provided in this Agreement.  Upon Preliminary Approval of this

24

Agreement, each Settlement Class Member shall be barred from initiating, asserting or prosecuting any Released Claims against any Released Party.  This Agreement shall be binding upon, and inure to the benefit of the Parties' successors and assigns.

       B.      Dismissal of Claims.

The Parties agree that upon the Effective Date of this Agreement, all Released Claims shall be dismissed with prejudice, and the MDL Class Complaints shall be dismissed with prejudice as against AstraZeneca, in accordance with the Final Approval Order substantially in the form attached as Exhibit G.

       C.      Jurisdiction.

The MDL Court shall retain exclusive and continuing jurisdiction over the Complaint, the Parties, and this Agreement with respect to the performance of its terms and conditions (and disputes arising out of or relating to this Agreement), the proper provision of all benefits, and the implementation and enforcement of its terms, conditions, and obligations.

## VI.      RELEASES AND RESERVATIONS

       A.      Released Claims.

          1.      Released Consumer Class Claims.

Upon the Effective Date of this Agreement, the AstraZeneca Releasees shall be released and forever discharged by the Class Releasors from all Released Consumer Class Claims.  All Class Releasors covenant and agree that they shall not hereafter seek to establish liability against any AstraZeneca Releasee based, in whole or in part, on any of the Released Consumer Class Claims.  Each Class Releasor expressly waives and fully, finally, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent Released Consumer Class Claims without regard to the subsequent discovery or existence of different or additional facts.

IN ADDITION, EACH CLASS RELEASOR HEREBY EXPRESSLY WAIVES AND RELEASES, UPON THIS AGREEMENT BECOMING EFFECTIVE, ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS:

> SECTION 1542.  GENERAL RELEASE; EXTENT.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

OR BY ANY LAW OR STATE OR TERRITORY OF THE UNITED STATES, OR PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE.  Each Class Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this Section VI.A.1, but each Class Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Consumer Class Claims with respect to the subject matter of this Section VI.A.1 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Releasee also hereby expressly waives and fully, finally, and forever settles and releases any and all Released Consumer Class Claims it may have against the AstraZeneca Releasees under §§ 17200, *et seq.*, of the California Business and Professions Code.

2.    Released TPP Class Claims.

Upon the Effective Date of this Agreement, the AstraZeneca Releasees shall be released and forever discharged by the Class Releasors from all Released TPP Class Claims.  All Class

26

Releasors covenant and agree that they shall not hereafter seek to establish liability against any

AstraZeneca Releasee based, in whole or in part, on any of the Released TPP Class Claims.

Each Class Releasor expressly waives and fully, finally, and forever settles and releases any

known or unknown, suspected or unsuspected, contingent or non-contingent Released TPP Class

Claims without regard to the subsequent discovery or existence of different or additional facts.

IN ADDITION, EACH CLASS RELEASOR HEREBY EXPRESSLY WAIVES AND

RELEASES, UPON THIS AGREEMENT BECOMING EFFECTIVE, ANY AND ALL

PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA

CIVIL CODE, WHICH READS:

> SECTION 1542.  GENERAL RELEASE; EXTENT.  A
> GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS
> SETTLEMENT WITH THE DEBTOR;

OR BY ANY LAW OR STATE OR TERRITORY OF THE UNITED STATES, OR

PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR

EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE.  Each Class Releasor may

hereafter discover facts other than or different from those which he, she, or it knows or believes

to be true with respect to the claims which are the subject matter of this Section VI.A.2, but each

Class Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon

the Agreement becoming Effective, any known or unknown, suspected or unsuspected,

contingent or non-contingent Released TPP Class Claims with respect to the subject matter of

this Section VI.A.2 whether or not concealed or hidden, without regard to the subsequent

discovery or existence of such different or additional facts.  Each Class Releasee also hereby

expressly waives and fully, finally, and forever settles and releases any and all Released TPP

27

Class Claims it may have against the AstraZeneca Releasees under §§ 17200, *et seq.*, of the California Business and Professions Code.

      B.     <u>Reservation of Claims and Rights.</u>

          1.     Released Consumer Class Claims and Released TPP Class Claims shall not include (a) any claim against any person or entity that is not an AstraZeneca Releasee; (b) any claim to enforce this Agreement; or (c) any claim between any Settlement Class Member and any Released Party that is unrelated to the allegations in the MDL Class Complaints, including:  unrelated breach of contract or economic injury claims; product liability, breach of warranty, personal physical injury, or intellectual property claims; claims relating to the efficacy, safety, or manufacture of pharmaceutical products; and claims stemming from alleged improper off-label marketing, price fixing, antitrust violations, and misrepresentation or fraud in the marketing or sales of pharmaceuticals that are unrelated to the allegations in any of the MDL Class Complaints.  Released TPP Class Claims shall not include claims for subrogation or reimbursement related to payments made by TPP Class Members due to personal physical injury of their insureds.

          2.     The Parties agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents, and discussion associated with it shall be without prejudice to the rights of any Party (other than those compromised herein); shall not be

28

deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by AstraZeneca Releasees, or of the truth of any of the claims or allegations contained in any complaint or pleading, whether in the MDL Class Actions or otherwise.  The Parties expressly reserve all their rights if this Agreement fails to become final and effective substantially in accordance with its terms.

## VII.   ADMINISTRATIVE EXPENSES AND ATTORNEYS' FEES

### A.   Administrative Expenses.

The AstraZeneca Releasees shall not be liable for any litigation expenses of the MDL Class Actions, including without limitation attorneys' fees, notice fees and expenses, claims administration fees and expenses, fees and expenses incurred in administering the Escrow Account or the Settlement Fund, expert witness and consultant fees and expenses, and expenses associated with discovery, motion practice, hearings, and/or appeals.  All such fees and expenses, if and as approved by the MDL Court, shall be paid from the Settlement Fund.

### B.   Attorneys' Fees.

#### 1.   Lead Class Counsel.

Understanding that the award of attorneys' fees to Lead Class Counsel is a matter in the MDL Court's sole discretion, the AstraZeneca Releasees will not object to Lead Class Counsel's request to the MDL Court for an attorneys' fee not to exceed the sum of thirty-three and one-third percent (33-1/3 %) of the Settlement Amount (subject to any reduction of the Settlement Fund pursuant to Section III.D.1), plus expenses (inclusive of any fees or expenses in connection with their work concerning any TPP Opt-Outs).  Such fees and expenses shall be paid exclusively from the Settlement Fund.

29

## VIII.   MISCELLANEOUS PROVISIONS

A.   Reasonable Best Efforts.

The Parties agree to use their reasonable best efforts, including all steps required by this Agreement and other efforts that may be necessary or appropriate, by order of the MDL Court or otherwise, to carry out the terms of this Agreement.

B.   No Admission.

Nothing in this Agreement, including any of its provisions, any statement made or document related to or filed in connection herewith, or the Parties' willingness to enter into this Agreement, shall be construed as an admission as to the propriety of the litigation in this matter or any other litigation, any liability or wrongdoing of any Released Party, or of the truth of any allegations in any complaint against any Released Party; and neither the Agreement nor any statement made or document related to or filed in connection therewith shall be admissible in evidence for any purpose in any proceeding.

C.   Enforcement.

Notwithstanding Section VIII.B above, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims, and may be filed, offered, received into evidence, and otherwise used for such defense.  This Agreement may also be used in connection with the Parties' application for approval or enforcement of this Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs, disbursements and compensation to the Settlement Classes and any disputes arising from this Agreement.

D.   Authorization to Enter Agreement.

The undersigned representatives of AstraZeneca represent that they are fully authorized to enter into and execute this Agreement on behalf of AstraZeneca.  Lead Class Counsel

30

represent that they are fully authorized to conduct settlement negotiations with AstraZeneca's counsel on behalf of Class Plaintiffs and to enter into and execute this Agreement on behalf of Class Plaintiffs, subject to approval by the MDL Court pursuant to Fed. R. Civ. P. 23(e).

E.      No Party Is the Drafter.

None of the Parties to this Agreement shall be considered the drafter of this Agreement or any included provision for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter.

F.      Choice of Law.

This Agreement shall be governed by and interpreted according to the substantive laws of the Commonwealth of Massachusetts without regard to its choice of law or conflict of laws principles.

G.      Amendment or Waiver.

This Agreement shall not be modified in any respect except by a writing executed by all Parties to this Agreement.  The waiver of any rights conferred by this Agreement shall be effective only if made in writing by the waiving Party.  The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior to, subsequent to, or contemporaneous with this Agreement.

H.      Execution in Counterparts.

This Agreement may be executed in counterparts.  Facsimile or PDF signatures shall be valid signatures as of the date thereof, although the original signature pages shall be appended to this Agreement and filed with the MDL Court thereafter.

I.     Integrated Agreement.

This Agreement, including its Exhibits, contains an entire, complete, and integrated statement of the terms agreed to by and between the Parties.  All prior settlement negotiations are merged herein.

J.     Construction.

This Agreement shall be construed and interpreted to effectuate the Parties' intent, which is to resolve completely the Released Claims with respect to the AstraZeneca Releasees through this Agreement.

IX.     TERMINATION OF THIS AGREEMENT

A.     Automatic Termination.

This Agreement shall be terminated automatically, without notice, if the Court declines to enter an order approving this Agreement, or if such approval order does not become Final (as a result of reversal on appeal or otherwise).

B.     Effect of Termination.

In the event of such termination, this Agreement shall be of no force or effect; the Parties shall request the MDL Court to vacate any order certifying the Settlement Classes; and the remaining portion of any monies advanced by AstraZeneca, together with any accrued interest, shall be refunded to AstraZeneca by the Escrow Agent, net of (i) taxes paid or due to be paid on the Escrow Account, (ii) fees and costs paid or incurred for notice and administration of the Settlement, and (iii) any fees or costs paid or incurred for administration of the Escrow Account.

IN WITNESS WHEREOF, the Parties hereto, by and through their fully authorized representatives, have executed this Agreement as of August ___, 2010.

Dated: August 5, 2010

**Counsel for Defendant AstraZeneca**
**Pharmaceuticals LP**

**Lead Counsel for Plaintiffs**

D. Scott Wise
Joel M. Cohen
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Nicholas C. Theodorou (BBO #496730)
Michael B. Keating (BBO #263360)
Michael P. Boudett (BBO #558757)
Katherine B. Schmeckpeper (BBO #663200)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

Thomas M. Sobol (BBO #471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

33

Dated:

**Counsel for Defendant AstraZeneca**
**Pharmaceuticals LP**

**Lead Counsel for Plaintiffs**

_____

_____

D. Scott Wise
Joel M. Cohen
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY  10017

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Nicholas C. Theodorou (BBO #496730)
Michael B. Keating (BBO #263360)
Michael P. Boudett (BBO #558757)
Katherine B. Schmeckpeper (BBO #663200)
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA  02210

Thomas M. Sobol (BBO #471770)
Edward Notargiacomo (BBO #567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

33

Jeffrey Kodroff
John Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611


Kenneth A. Wexler
Wexler Wallace LLP
55 West Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022


Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

001534-16  382695 v1

## EXHIBIT A

## NOTICE FORMS TO CLASS 3 CONSUMERS

## EXHIBIT A.1

## SHORT FORM PUBLICATION NOTICES TO CLASS 3 CONSUMERS

Legal Notice

# If You Paid for Zoladex®,

## You Could Receive Benefits From Class Action Settlements

Zoladex® treats prostate cancer, advanced breast cancer, endometriosis, and fibrosis.

There are two Settlements in a class action concerning the price of Zoladex®. You can get a refund if you paid cash or a percentage co-payment for Zoladex®. A percentage co-payment varies with the cost of the drug. **The lawsuit does not concern the safety of Zoladex®.**

### What is the lawsuit about?

The lawsuit claims that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®. The reported AWPs are used to set drug prices that are paid by private health insurers and consumers paying cash or making percentage co-payments under private health insurance plans. The Settlements are not an admission of wrongdoing or an indication that any law was violated. AstraZeneca has entered into the Settlements to avoid further expense, and to avoid the risks of uncertain litigation. AstraZeneca denies any wrongdoing.

### Am I included?

You are included if you paid cash or made a percentage co-payment for Zoladex® anytime from January 1, 1991 to June 11, 2010. You are not included if you made a flat co-payment or were never obligated to make a co-payment at all. Payments made under Medicare Part B are not included in these Settlements.

### What do the Settlements Provide?

AstraZeneca will pay $90 million in the Nationwide Settlement ($40 million will go to a separate settlement with certain large insurers). AstraZeneca will pay $13 million in the Massachusetts Settlement. After deducting attorneys' fees (not to exceed one-third of both Settlements), expenses, and other costs, the net fund will be distributed in cash to consumers, as well as to insurers and other entities who are included. Up to 11.11% of the net fund in each of the Nationwide Settlement and the Massachusetts

Settlement will go to consumers.

### What can I get from the Settlements?

The amount of money you are eligible to receive will depend on how much Zoladex® you purchased, and on how many Class Members file valid claims. For claims during the years 1997 through 2003 you may receive up to three times your out-of-pocket payments for Zoladex®.

### How do I get a payment?

You will need to submit a Claim Form by **Month 00, 2010** to get a payment. Get a Claim Form at the website or by calling the toll-free number.

### What are my other rights?

If you do not want to be legally bound by a Settlement, you must exclude yourself from that Settlement.  The deadline to exclude yourself from a Settlement is **Month 00, 2010**.  If you stay in a Settlement you will not be able to sue AstraZeneca for any claims relating to that Settlement.  If you stay in a Settlement, you may object to that Settlement by **Month 00, 2010**.  The Court will hold a hearing on **Month 00, 2010** to consider whether to approve the Settlements and a request for attorneys' fees.  The Court has appointed attorneys to represent the Class.  You or your own lawyer may ask to appear and speak at the hearing at your own expense.

For More Information:   1-800-000-0000
www.AstrazenecaSettlement.com

**EXHIBIT A.2**

**LONG FORM NOTICE TO CLASS 3 CONSUMERS**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# If You Paid for Zoladex®,

## You Could Receive Benefits from Class Action Settlements.

**Zoladex®** is used to treat prostate cancer, advanced breast cancer, endometriosis, and fibrosis.

*A federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

Two class action Settlements with AstraZeneca Pharmaceuticals LP ("AstraZeneca"), the maker of Zoladex®, have been reached.  The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.

- You can get a refund if you paid cash or made a percentage co-payment for Zoladex® from January 1, 1991 through June 11, 2010.  A percentage co-payment varies with the cost of the drug.  You cannot get a refund if you paid a flat co-payment.

- Up to $10 million will be paid to consumers who file valid claims in the National Settlement.  Up to $1.4 million will be paid to consumers in the Massachusetts Settlement.  You can receive up to $400 or more for your out-of-pocket payments for Zoladex®.  For claims during the years 1997 through 2004 you may receive up to three times your out of pocket expenses for Zoladex®.

## A Summary of Your Rights and Choices:

**Your Legal Rights Are Affected Even If You Do Not Act.  Read This Notice Carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment from the Settlements. |
| **EXCLUDE YOURSELF FROM ONE OR BOTH SETTLEMENTS** | Get no benefit from that Settlement.  This is the only option that allows you to ever be part of any other lawsuit against AstraZeneca about the claims in this case. |
| **OBJECT/COMMENT** | Remain in the Settlement(s) and write to the Court about what you think about the Settlements. |
| **GO TO A HEARING** | Remain in the Settlement(s) and ask to speak in Court about the fairness of the Settlements. |
| **DO NOTHING** | Get no payment.  Give up rights to sue AstraZeneca about the claims in this lawsuit. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve each of the Settlements.  Payments will be made if the Court approves the Settlements and after any appeals are resolved.  Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

BASIC INFORMATION ……………………………………………………………PAGE 3

    1.     Why is there a notice?
    2.     What is this lawsuit about?
    3.     Why is this a class action?

WHO IS IN THE SETTLEMENTS …………………………………………………PAGE 3

    4.     How do I know if I'm part of the Settlements?
    5.     Who else is included in the Settlements?
    6.     I'm still not sure I'm included.

THE SETTLEMENTS' BENEFITS ……………………………………………………PAGE 4

    7.     What does the Nationwide Settlement provide?
    8.     What does the Massachusetts Settlement provide?
    9.     What do I have to do to get a payment?
    10.    How are payments determined?

REMAINING IN THE SETTLEMENTS …………………………………………...…………PAGE 6

    11.    What happens if I do nothing at all and stay in the Settlements?
    12.    What am I giving up to stay in the Settlements?

EXCLUDING YOURSELF FROM THE SETTLEMENTS …………………………………………PAGE 6

    13.    How do I get out of the Settlements?
    14.    If I don't exclude myself, can I sue AstraZeneca for the same thing later?
    15.    If I exclude myself, can I still get a payment from the Settlements?

THE LAWYERS REPRESENTING YOU ………………………………………………..PAGE 7

    16.    Do I have a lawyer in the case?
    17.    How will the lawyers be paid?

COMMENTING ON THE SETTLEMENTS ……………………………………………………PAGE 8

    18.    How do I tell the Court what I think about the Settlements?
    19.    What's the difference between objecting to and asking to be excluded?

THE COURT'S FAIRNESS HEARING ……………………………………………………PAGE 8

    20.    When and where will the Court decide whether to approve the Settlements?
    21.    Do I have to come to the hearing?
    22.    May I speak at the hearing?

GETTING MORE INFORMATION ………………………………………………....PAGE 9

    23.    How do I get more information?

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

## BASIC INFORMATION

**1. Why is there a notice?**

You have a right to know about two proposed Settlements that are part of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlements.

The Court in charge of the case is the United States District Court for the District of Massachusetts, and the case is called *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456. The people who sued are called Plaintiffs and the company they sued, AstraZeneca Pharmaceuticals LP, is called the Defendant.

**2. What is this lawsuit about?**

The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®. The reported AWPs are used to set drug prices that are paid by Medicare and its beneficiaries, private health insurers, and consumers making percentage co-payments under private health insurance plans.

AstraZeneca denies any wrongdoing, and the Settlements are not an admission of wrongdoing or an indication that any law was violated. AstraZeneca has entered into the Settlements solely to avoid further expense, inconvenience, and the burden of these litigations and to put to rest this controversy and to avoid the risks of uncertain litigation.

**3. Why is this a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All these people are a class or class members, except for those who exclude themselves from the class.

## WHO IS IN THE SETTLEMENTS

To see if you are entitled to benefits from these Settlements, you first have to determine if you are a Class Member.

**4. How do I know if I am part of the Settlements?**

Generally, under both Settlements you must have made a cash or a percentage co-payment for Zoladex® during the period from January 1, 1991, through June 11, 2010.

- A cash payment is a payment for the full cost of the drug without the help of payment by an insurer or other source.
- A percentage co-payment varies with the cost of the drug (e.g. 10% or 20% of the cost of the drug).

**You are not a member of a Class if you only made flat co-payments** (for example, a flat amount of $10 or $25 per prescription regardless of the cost of the drug), **if insurance paid all of your co-payment, or if you were never obligated to make a co-payment at all.**

The **Nationwide Settlement** includes:

- All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for Zoladex® purchased outside of the Commonwealth of Massachusetts, during the period from January 1, 1991, through June 11, 2010.

The **Massachusetts Settlement** includes:

- All natural persons who made, or were liable for all or any portion of, a non-Medicare Part B payment for Zoladex® purchased in the Commonwealth of Massachusetts, during the period from January 1, 1991, through June 11, 2010.

## 5. Who else is included?

Entities, known as "Third-Party Payors" ("TPPs") are also included in the Settlements. TPPs could include health insurers that paid all or part of the cost of Zoladex® for their insured patients. This may also include employee welfare benefit plans, governmental plans or union plans that paid some portion of the cost of Zoladex® for employees or family members of employees insured under these plans. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a Third-Party claims administrator to administer their prescription drugs benefits qualify as TPPs.

A separate settlement has been reached with several large insurers referred to as Independent Settling Health Plans ("ISHPs"). ISHPs will share in the funds set aside for TPPs in the Nationwide Settlement.

## 6. I'm still not sure if I'm included.

If you are still not sure whether you are included, you can call 1-888-812-1643, visit the website AstraZenecaSettlement.com, send an email to info@AstraZenecaSettlement.com or write to AstraZeneca Class 2 and 3 Settlement, P.O. Box 24644, West Palm Beach, FL 33416.

### THE SETTLEMENTS' BENEFITS

## 7. What does the Nationwide Settlement provide?

AstraZeneca will pay $90 million to settle the Plaintiffs' claims in the Nationwide Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to consumers who submit valid claims, as well as to TPPs. Consumers will receive up to 11.11% of the net fund, and up to 88.89% will go to TPPs and a group of ISHPs. If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs and Independent Settling Health Plans. If consumer claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

More details are in Settlement Agreements, available at AstraZenecaSettlement.com.

**8. What does the Massachusetts Settlement provide?**

AstraZeneca will pay $13 million to settle the Plaintiffs' claims in the Massachusetts Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to consumers who submit valid claims, as well as to TPPs. Consumers will receive up to 11.11% of the net fund, and up to 88.89% will go to TPPs. If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs. If consumer claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

More details are in Settlement Agreements, available at AstraZenecaSettlement.com.

**9. What do I need to do to get a payment?**

If you paid cash or a percentage co-payment for Zoladex® between January 1, 1991 and June 11, 2010, you have two options to get a payment:

1) Easy Refund Option: You may sign the attached claim form under penalty of perjury, stating that you paid a percentage co-payment for Zoladex® between January 1, 1991 and June 11, 2010. Under this option you will be entitled to a one-time flat payment of up to $400 depending on how many consumers file valid claims.

OR

2) Full Estimated Refund Option: You may complete the attached Claim Form and provide some documentation of your cash or percentage co-payments for Zoladex® between January 1, 1991 and June 11, 2010, and receive a refund of the total amount you spent. The Claim Form explains what type of documentation is necessary to prove your claim. Please see Question 10 for more details on how the amount will be determined.

Claim Forms must be postmarked by **Month 00, 2010**, and mailed to:

AstraZeneca Class 2 and 3 Settlement
P.O. Box 24644
West Palm Beach, FL 33416

**10. How are payments determined?**

The amount of money you are eligible to receive will depend on how much Zoladex® you purchased, and on how many Class Members file valid claims.

Easy Refund Option: If you select the "Easy Refund Option" you will receive a one-time payment of up to $400 depending on how many consumers file claims.

Full Estimated Refund Option: If you select to estimate your out-of-pocket expenses associated with Zoladex®, and provide the proper documentation (*see* Claim Form), your payment will be calculated as follows:

- Your out-of-pocket payments for Zoladex® during the period of December 1, 1997 through December 31, 2004 will be multiplied by a factor of three (3x) and added to your out-of-pocket payments for Zoladex® outside this period (with no multiplication factor).

   **Example:**  You paid (1) $200 out-of-pocket for Zoladex® during the period of December 1, 1997 through December 31, 2004, and (2) $500 out-of-pocket for Zoladex® outside of this period.

   Payment Calculation:

   Zoladex® = ($200 x 3) + $500 = $1,100

If consumer claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

### REMAINING IN THE SETTLEMENTS

| 11.  What happens if I do nothing at all? |
| --- |

If you do nothing, you will not get any money from the Settlements.  You will be bound by the Court's decisions.  Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against AstraZeneca about the legal issues in this case, ever again.

| 12. What am I giving up to stay in the Settlements? |
| --- |

Unless you exclude yourself from a Settlement, you can't sue AstraZeneca, continue to sue, or be part of any other lawsuit against AstraZeneca about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in each Settlement Agreement and describes exactly the legal claims that you give up if you remain in that Settlement. The Settlement Agreements are available at AstraZenecaSettlement.com.

### EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from a Settlement, and you want to keep the right to sue or continue to sue AstraZeneca on your own about the legal issues in this case, then you must take steps to get out of these Settlements.  This is called excluding yourself – or  "opting out" of the Class.

| 13.  How do I get out of the Settlements? |
| --- |

To exclude yourself from a Settlement, you must send a letter that includes the following:
- Your name, address and telephone number,
- A statement saying that you want to be excluded from either or both of the National AstraZeneca Consumer Class Settlement and the Massachusetts AstraZeneca Consumer Class Settlement in *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456,
- Note whether you want to exclude yourself from the Nationwide Settlement or Massachusetts Settlement (or both), and

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2010**, to:

AstraZeneca Class 2 and 3 Settlement
P.O. Box 24644
West Palm Beach, FL 33416

| **14.  If I don't exclude myself, can I sue AstraZeneca for the same thing later?** |
| --- |

No.  Unless you exclude yourself, you give up the right to sue AstraZeneca for the claims that the Settlements resolve.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

| **15.  If I exclude myself, can I still get a payment from the Settlements?** |
| --- |

No.  You will not get any money if you exclude yourself from the Settlement(s).


### THE LAWYERS REPRESENTING YOU

| **16. Do I have a lawyer in this case?** |
| --- |

Yes.  The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
    *and*
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman Kodroff & Willis, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Wallace LLP
www.wtwlaw.us
55 West Monroe Street, Suite 3300
Chicago, IL 60603

These lawyers are called Class Counsel.  You won't be charged personally for these lawyers, but they will ask the Court to award them a fee that will be paid out of the Settlement Funds.  More information about Class Counsel and their experience is available at the Web sites listed above.

| **17.   How will the lawyers be paid?** |
| --- |

Class Counsel may ask the Court for attorneys' fees not to exceed one-third of the Settlement Funds (after deducting any amount that AstraZeneca gets back from any TPP exclusions) plus reimbursement of their expenses.   Class Counsel will also request each of the Class Representatives who helped the lawyers on behalf of the whole Class be compensated for the time spent helping litigate the case.

## COMMENTING ON THE SETTLEMENTS

You can tell the Court that you don't agree with either Settlement or some part of them.

| **18.    How do I tell the Court what I think about a Settlement?** |
| --- |

If you have comments about, or disagree with, any aspect of the Settlement(s), including the requested attorneys' fees, you may express your views to the Court by writing to the address below.  The written response should include your name, address, telephone number, the case name and number (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), a reference to the National AstraZeneca Consumer Class Settlement and/or the Massachusetts AstraZeneca Consumer Class Settlement, a brief explanation of your reasons for objection, and your signature.  The response must be postmarked no later than **Month 00, 2010** and mailed to:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

| **19.    What's the difference between objecting to and asking to be excluded?** |
| --- |

Objecting is simply telling the Court that you don't like something about the Settlements.  You can object to a Settlement only if you do not exclude yourself from that Settlement.  Excluding yourself from a Settlement is telling the Court that you don't want to be part of that Settlement.  If you exclude yourself from a Settlement, you have no basis to object to that Settlement because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve each of the Settlements and any requests for fees and expenses.  You may attend and you may ask to speak, but you don't have to.

| **20.    When and where will the Court decide whether to approve the Settlements?** |
| --- |

The Court will hold a Fairness Hearing at **Time x.m.** on **Month 00, 2010**, at the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check AstraZenecaSettlement.com for updated information.  At this hearing the Court will consider whether each of the Settlements is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and Class Representatives.  If there are objections or comments, the Court will consider them at this time.  After the hearing, the Court will decide whether to approve each of the Settlements.  We do not know how long these decisions will take.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

**21.  Do I have to come to the hearing?**

Attendance is not required, even if you properly mailed a written response.  Class Counsel is prepared to answer the Court's questions on your behalf.  If you or your personal attorney still want to attend the hearing, you are more than welcome at your expense.  However, it is not necessary that you attend.  As long as the objection was postmarked before the deadline the Court will consider it.

**22.  May I speak at the hearing?**

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), and state that you wish to enter an appearance at the Fairness Hearing.  It also must include your name, address, telephone number, and signature.  Your "Notice of Appearance" must be postmarked no later than **Month 00, 2010**.  You cannot speak at Hearing if you asked to be excluded from a Settlement.

The Notice of Appearance must be filed with the Court at the address in Question 13.

GETTING MORE INFORMATION

**23.  How do I get more information?**

This Notice summarizes the Settlements. You can get more information about the Settlements at AstraZenecaSettlement.com, by calling 1-888-812-1643, sending an email to info@AstraZenecaSettlement.com or writing to AstraZeneca Class 2 and 3 Settlement, P.O. 24644, West Palm Beach, FL 33416.

**<u>EXHIBIT A.3</u>**

**CONSUMER CLAIM FORM**

# ASTRAZENECA CLASS 2 AND 3 MASSACHUSETTS AND NON-MASSACHUSETTS SETTLEMENT CLAIM FORM

### How to Apply for a Payment from the Proposed Settlements

If you would like to submit a claim in either or both of the AstraZeneca Massachusetts Settlement or the AstraZeneca National Settlement, complete this form and mail it to the address below.

## YOUR CLAIM MUST BE POSTMARKED BY MONTH 00, 0000

Your claim should be mailed to:

AstraZeneca Class 2 and 3 Settlement Administrator
c/o Rust Consulting, Inc.
P.O. Box 000000
West Palm Beach, FL 33416

---

**Section A: Claimant Identification**

Please provide us with the following information related to the individual who was prescribed one or more of the Class Drugs. This person is referred to as the "Claimant."

Claimant's Name: _____

Address: _____

City: _____  State: _____  Zip Code: _____

Date of Birth: _____

Daytime Telephone Number: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

---

**Section B: Claimant Representative Information**

If you are the Claimant, do not complete this section. Complete this section only if you are a representative (such as a spouse, guardian, executor or personal representative) filing this claim on behalf of the Claimant listed above. Please provide YOUR name, relationship to the claimant, and YOUR contact information in the spaces provided below.

Contact Name: _____  Relationship to Patient: _____

Address: _____

City: _____  State: _____  Zip Code: _____

Daytime Telephone Number: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

---

**Section C: Should I file a Claim Form?**

Please answer the following questions in order to determine if the Claimant is eligible for cash from the proposed Settlement:

1. Were you, or the Claimant that you are filing on behalf of, prescribed Zoladex® during the period from January 1, 1991 to June 11, 2010?  ☐ Yes  ☐ No

2. Did you, or the Claimant that you are filing on behalf of, pay either the full price of Zoladex® or a percentage of the cost of Zoladex®?  ☐ Yes  ☐ No

Note:   If you paid a flat co-payment (i.e., your out-of-pocket expense was always the same for every drug, like a $10 or $25 co-pay) you did not pay a percentage of the cost.

If you answered *No* to any of the questions above, you are not eligible to receive any benefits from these proposed Settlements.  You may disregard this Notice and Claim Form.  If you answered *Yes* to both of these questions, you should fill out Sections D, Section E and Section G below.

---

**SECTION D:  Choose a Refund Option – You Have Two Options**

Please check one of the boxes below in order to choose your refund option:

☐ **Option 1:** I choose the **EASY REFUND** option.  I understand that I will receive a payment of up to $400.00 from the Settlements and that I will not be required to provide additional documentation unless requested by the Claims Administrator.

☐ **Option 2:** I choose the **FULL REFUND** option. I understand that in order to receive a full refund I must provide one form of proof of a full cash or percentage co-payment for each separate drug for which I am seeking a refund.  The list of acceptable forms of proof are listed below in Section F under "Option 2: FULL REFUND." Please include all proof(s) of payment when submitting this Claim Form.

---

**Section E: Drug Purchase Information – Fill Out ONLY if you chose Option 2 – FULL REFUND**

**Instructions for Completing the Out-of-Pocket Expenditures Chart**

A. In the Out-of-Pocket Expenditures Chart below, please provide the total amount paid (not monthly) by the Claimant for Zoladex®, or the amount the Claimant is obligated to pay for Zoladex®, during the time periods in the table.

- Print clearly
- Do not include flat co-payments in the total amounts paid
- Enter the full amount paid, not a monthly amount

B. For example, if you made a percentage co-payment for Zoladex® 6 times for $200 each, please print $1200 for the Amount.

**OUT-OF-POCKET EXPENDITURES**

| 1. Zoladex® Expenditures in Massachusetts | | |
|---|---|---|
| Total Amount Paid From January 1, 1991 to November 30, 1997 | Total Amount Paid From December 1, 1997 to December 31, 2004 | Total Amount Paid From January 1, 2005 to June 11, 2010 |
| $ | $ | $ |

| 2. Zoladex® Expenditures Outside Massachusetts | | |
|---|---|---|
| Total Amount Paid From January 1, 1991 to November 30, 1997 | Total Amount Paid From December 1, 1997 to December 31, 2004 | Total Amount Paid From January 1, 2005 to June 11, 2010 |
| $ | $ | $ |

**SECTION F: Proof of Payment – Provide ONLY if you chose Option 2 – FULL REFUND**

If you chose Option 2, you must provide proof that you made a full cash payment or a percentage co-payment for each of the drugs you are claiming in the table in Section E above.  You only need to provide one form of proof.

<u>Any one</u> of the following are acceptable as proof of a full cash payment or a percentage co-payment for Zoladex®:

   (1)    A receipt, cancelled check, or credit card statement that shows a payment for Zoladex® (other than a flat co-payment); or

   (2)    A letter from a doctor saying that he or she prescribed one of the drugs and you paid part or all of the cost of Zoladex® (other than a flat co-payment) at least once.

   (3)    An EOB (explanation of benefits) from your insurer that shows you made or are obligated to make full cash or percentage co-payments for Zoladex®.

   (4)    A notarized statement signed by you indicating you paid or are obligated to pay the total cost or a percentage co-payment for prescriptions between January 1, 1991 through June 11, 2010, including the total of all full cash and/or percentage co-payments for the drugs during the time period.

   (5)    Records from your pharmacy showing that you made full cash and/or percentage co-payments for Zoladex® purchased between January 1, 1991 through June 11, 2010.

**SECTION G:  Sworn Statement Regarding Payments Made**

**I declare under penalty of perjury that the information provided here is, to the best of my knowledge, correct.  I also declare under penalty of perjury that I paid the total cost or a percentage co-pay for Zoladex® as indicated in this claim form at some time during the period from January 1, 1991 through June 11, 2010.  If not submitting this for myself, I am authorized to submit this form on behalf of the patient identified above because I am the spouse of a deceased patient or the legal representative of a deceased patient's estate.[1]**


_____

*Signature*                                                                                  *Date*


Mail all pages of this claim form along with proof(s) of payment to the following address:

AstraZeneca Class 2 and 3 Settlement Administrator
c/o Rust Consulting, Inc.
P.O. Box XXXX
West Palm Beach, FL 33416


Toll-Free Telephone: X-XXX-XXX-XXXX


<u>www.website.com</u>

[1]   Please note that your signature on this Claim Form indicates that you declare, under penalty of perjury, that you (or someone on whose behalf you are acting) made a percentage co-payment for Zoladex® at some time during the Class Period.  As a result, providing false information on this Claim Form could constitute perjury.

**<u>EXHIBIT B</u>**

**NOTICE FORMS TO TPPs**

**<u>EXHIBIT B.1</u>**

**LONG FORM NOTICE TO TPPs**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# If You are a Third-Party Payor and You Made Reimbursements for Zoladex®,

## You Could Receive Benefits from Class Action Settlements.

**Zoladex®** is used to treat prostate cancer, advanced breast cancer, endometriosis, and fibrosis.

*A federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

- Two class action Settlements with AstraZeneca Pharmaceuticals LP ("AstraZeneca"), the maker of Zoladex®, have been reached.  The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.

- The Settlements cover Third-Party Payors ("TPPs") payments of all or some portion of an insureds Medicare Part B co-payments for Zoladex® from January 1, 1991 through January 1, 2005 and non-Medicare Part B reimbursements for Zoladex® from January 1, 1991 through June 11, 2010.

- Approximately 88% of the Settlement Funds in the National Settlement Agreement (approximately $80 million) and 88% of the Settlement Funds in the Massachusetts Settlement Agreement (approximately $11.4 million) will be paid to TPPs who file valid claims.  The funds in the National Settlement will also be shared with large insurers, referred to as Independent Settling Health Plans, who have settled separately with AstraZeneca over the same claims.

## A Summary of Your Rights and Choices:

### Your Legal Rights Are Affected Even If You Do Not Act.  Read This Notice Carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment from the Settlements. |
| **EXCLUDE YOURSELF FROM ONE OR BOTH SETTLEMENTS** | Get no benefit from that Settlement.  This is the only option that allows you to ever be part of any other lawsuit against AstraZeneca about the claims in this case. |
| **OBJECT/COMMENT** | Remain in the Settlement(s) and write to the Court about what you think about the Settlements and whether the Court should approve the Settlements. |
| **GO TO A HEARING** | Remain in the Settlement(s) and ask to speak in Court about the fairness of the Settlements. |
| **DO NOTHING** | Get no payment.  Give up rights to sue AstraZeneca about the claims in this lawsuit. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve each of the Settlements.  Payments will be made if the Court approves the Settlements and after any appeals are resolved.  Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ………………………………………………………………………PAGE 3

    1.      Why is there a notice?

    2.      What is this lawsuit about?

    3.      Why is this a class action?

**WHO IS IN THE SETTLEMENTS** ………………………………………………………………..PAGE 3

    4.      How do I know if I'm part of the Settlements?

    5.      Which entities are included?

    6.      I'm still not sure I'm included.

**THE SETTLEMENTS' BENEFITS** ……………………………………………………….………PAGE 4

    7.      What does the Nationwide Settlement provide?

    8.      What does the Massachusetts Settlement provide?

    9.      What do I have to do to get a payment?

    10.    How are payments determined?

**REMAINING IN THE SETTLEMENTS** ……………………………………………………PAGE 6

    11.    What happens if I do nothing at all and stay in the Settlements?

    12.    What am I giving up to stay in the Settlements?

**EXCLUDING YOURSELF FROM THE SETTLEMENTS** ……………………………….……...……PAGE 6

    13.    How do I get out of the Settlements?

    14.    If I don't exclude myself, can I sue AstraZeneca for the same thing later?

    15.    If I exclude myself, can I still get a payment from the Settlements?

**THE LAWYERS REPRESENTING YOU** ……………………………………………..…………...PAGE 7

    16.    Do I have a lawyer in the case?

    17.    How will the lawyers be paid?

**COMMENTING ON THE SETTLEMENTS** ………………………………………..………………PAGE 8

    18.    How do I tell the Court what I think about the Settlements?

    19.    What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** ………………………………………………..………….PAGE 8

    20.    When and where will the Court decide whether to approve the Settlements?

    21.    Do I have to come to the hearing?

    22.    May I speak at the hearing?

**GETTING MORE INFORMATION** …………………………………………………….………PAGE 9

    23.    How do I get more information?

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

## BASIC INFORMATION

**1.  Why is there a notice?**

You have a right to know about two proposed Settlements that are part of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlements.

The Court in charge of the case is the United States District Court for the District of Massachusetts, and the case is called *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456.  The people who sued are called Plaintiffs and the company they sued, AstraZeneca Pharmaceuticals LP, is called the Defendant.

**2.  What is this lawsuit about?**

The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.  The reported AWPs are used to set drug prices that are paid by Medicare and its beneficiaries, private health insurers, and consumers making percentage co-payments under private health insurance plans.

AstraZeneca denies any wrongdoing, and the Settlements are not an admission of wrongdoing or an indication that any law was violated.  AstraZeneca has entered into the Settlements solely to avoid further expense, inconvenience, and the burden of these litigations and to put to rest this controversy and to avoid the risks of uncertain litigation.

**3.  Why is this a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are a class or class members, except for those who exclude themselves from the class.

## WHO IS IN THE SETTLEMENTS

To see if you are entitled to benefits from these Settlements, you first have to determine if you are a Class Member.

**4.  How do I know if I am part of the Settlements?**

The **Nationwide Settlement** includes:

- Third-Party Payors ("TPPs") in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Zoladex® purchased outside of the Commonwealth of Massachusetts.

- TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for Zoladex® purchased outside of the Commonwealth of Massachusetts, during the period from January 1, 1991, through June 11, 2010.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**
3

The **Massachusetts Settlement** includes:

- TPPs in the United States that, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Zoladex® purchased in the Commonwealth of Massachusetts.

- TPPs that made, or incurred an obligation to make, non-Medicare Part B reimbursements for Zoladex® purchased in the Commonwealth of Massachusetts, during the period from January 1, 1991 through June 11, 2010.

### 5.  Which entities are included?

Entities, known as "Third-Party Payors" ("TPPs"), include health insurers (other than the Independent Settling Health Plans) that paid all or part of the cost of Zoladex® for their insured patients.  This may also include employee welfare benefit plans, governmental plans or unions plans that paid some portion of the cost of Zoladex® for employees or family members of employees insured under these plans.  Entities with self-funded plans that contract with a health insurance company or other entity to serve as a Third-Party claims administrator to administer their prescription drug benefits qualify as TPPs.

You are automatically included in the Settlements if you:
- Paid some or all of the purchase price, or reimbursed an insured or health plan participant or beneficiary for some or all of the purchase price for Zoladex®, and
- Reimbursed the purchase price between January 1, 1991 and January 1, 2005 for payments of an insured Medicare co-payment, and/or
- Reimbursed the purchase price between January 1, 1991 and June 11, 2010 for payments outside of Medicare.

A separate settlement has been reached with several large insurers referred to as Independent Settling Health Plans ("ISHPs").  ISHPs will share in the funds set aside for TPPs in the Nationwide Settlement.

### 6.  I'm still not sure if I'm included.

If you are still not sure whether you are included, you can call 1-888-812-1643, visit the website AstraZenecaSettlement.com, send an email to info@AstraZenecaSettlement.com, or write to AstraZeneca Class 2 and 3 Settlement, P.O. Box 24644, West Palm Beach, FL 33416.

### THE SETTLEMENTS' BENEFITS

### 7. What does the Nationwide Settlement provide?

AstraZeneca will pay $90 million to settle the Plaintiffs' claims in the Nationwide Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to TPPs, as well as consumers.  TPPs will receive up to 88.89% of the net fund, and up to 11.11% will go to consumers.  Half of the amounts allocated to TPPs will be used to satisfy the claims of

Independent Settling Health Plans. If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs and Independent Settling Health Plans. If claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

If you are a TPP and you want to get out of the Settlements (*see* the section called "Excluding Yourself From the Settlements" below), the TPP Settlement Fund will be reduced by the amount of money you would have received if you filed a valid claim. More details are in Settlement Agreements, available at AstraZenecaSettlement.com.

## 8. What does the Massachusetts Settlement provide?

AstraZeneca will pay $13 million to settle the Plaintiffs' claims in the Massachusetts Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to TPPs, as well as consumers. TPPs will receive at least 88.89% of the net fund, and up to 11.11% will go to consumers. If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs. If claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

If you are a TPP and you want to get out of the Settlements (*see* the section called "Excluding Yourself From the Settlements" below), the TPP Settlement Fund will be reduced by the amount of money you would have received if you filed a valid claim. More details are in Settlement Agreements, available at AstraZenecaSettlement.com.

## 9. What do I need to do to get a payment?

If you paid reimbursements for Zoladex® between January 1, 1991 and June 11, 2010, you may complete the attached Claim Form and provide documentation of your reimbursements as set forth on the Claim Form. Please see Question 10 for more details on how the amount will be determined.

Claim Forms must be postmarked by **Month 00, 2010**, and mailed to:

AstraZeneca Class 2 and 3 Settlement
P.O. 24644
West Palm Beach, FL 33416

## 10. How are payments determined?

The Settlement Fund amount initially available for TPPs in the class is $40 million and is called the TPP Settlement Pool. A portion of the Court-approved deductions for attorneys' fees, litigation costs and expenses, and the cost of notice and administration will be deducted from this amount. The remaining amount will be paid to TPPs based on the amount they paid for Zoladex® in proportion to what was paid by all TPPs who submit claims.

The Settlement provides that there may be an adjustment of the TPP Settlement Pool and the portion of the Settlement Fund available for TPPs who settled separately from the class (the "ISHP Settlement Pool").

The Settlement Agreement also provides that any undistributed portion of the $10 million allocated to satisfy claims of Consumer Class Members will be distributed to TPPs and ISHPs.

The final TPP Settlement Pool and final ISHP Settlement Pool may be more or less than $40 million, depending on the number and validity of the Claims submitted by TPPs.  This adjustment procedure is intended to ensure that class member TPPs receive the same *pro rata* recovery as the ISHPs.

### REMAINING IN THE SETTLEMENTS

**11.  What happens if I do nothing at all?**

If you do nothing, you will not get any money from the Settlements.  Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against AstraZeneca about the legal issues in this case, ever again.

**12. What am I giving up to stay in the Settlements?**

Unless you exclude yourself from a Settlement, you can't sue AstraZeneca, continue to sue, or be part of any other lawsuit against AstraZeneca about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in each Settlement Agreement and describes exactly the legal claims that you give up if you remain in that Settlement. The Settlement Agreements are available at AstraZenecaSettlement.com.

### EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from a Settlement, and you want to keep the right to sue or continue to sue AstraZeneca on your own about the legal issues in this case, then you must take steps to get out of the Settlements.  This is called excluding yourself – or "opting out" of the Class.

**13.  How do I get out of the Settlements?**

To exclude yourself from a Settlement, you must send a letter that includes the following:
- Your name, address and telephone number,
- A statement saying that you want to be excluded from either or both the National AstraZeneca Settlement and the Massachusetts AstraZeneca Settlement in *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456,
- Note whether you want to exclude yourself from the Nationwide Settlement or Massachusetts Settlement (or both), and
- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2010**, to:
AstraZeneca Class 2 and 3 Settlement
P.O. Box 24644
West Palm Beach, FL 33416

### 14.  If I don't exclude myself, can I sue AstraZeneca for the same thing later?

No.  Unless you exclude yourself, you give up the right to sue AstraZeneca for the claims that the Settlements resolve.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

### 15.  If I exclude myself, can I still get a payment from the Settlements?

No.  You will not get any money if you exclude yourself from the Settlement(s).

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes.  The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
          *and*
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman Kodroff & Willis, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Wallace LLP
www.wtwlaw.us
55 West Monroe Street, Suite 3300
Chicago, IL 60603

These lawyers are called Class Counsel.  You won't be charged personally for these lawyers, but they will ask the Court to award them a fee that will be paid out of the Settlement Funds.  More information about Class Counsel and their experience is available at the Web sites listed above.

### 17. How will the lawyers be paid?

Class Counsel may ask the Court for attorneys' fees not to exceed one-third of the Settlement Funds (after deducting any amount that AstraZeneca gets back from any TPP exclusions) plus reimbursement of their expenses. Class Counsel will also request that each of the Class Representatives who helped the lawyers on behalf of the whole Class be compensated for the time they spent helping litigate the case.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

## COMMENTING ON THE SETTLEMENTS

You can tell the Court that you don't agree with either Settlement or some part of them.

| 18. | How do I tell the Court what I think about a Settlement? |
|-----|----------------------------------------------------------|

If you have comments about, or disagree with, any aspect of the Settlement(s), including the requested attorneys' fees, you may express your views to the Court by writing to the address below.  The written response should include your name, address, telephone number, the case name and number (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), a reference to the National AstraZeneca Class Settlement and/or the Massachusetts AstraZeneca Class Settlement, a brief explanation of your reasons for objection, and your signature.  The response must be postmarked no later than **Month 00, 2010** and mailed to:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

| 19. | What's the difference between objecting and excluding? |
|-----|--------------------------------------------------------|

Objecting is simply telling the Court that you don't like something about the Settlements.  You can object to a Settlement only if you do not exclude yourself from that Settlement.  Excluding yourself from a Settlement is telling the Court that you don't want to be part of that Settlement.  If you exclude yourself from a Settlement, you have no basis to object to that Settlement because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve each of the Settlements and any requests for fees and expenses.  You may attend and you may ask to speak, but you don't have to.

| 20. | When and where will the Court decide whether to approve the Settlements? |
|-----|--------------------------------------------------------------------------|

The Court will hold a Fairness Hearing at **Time x.m**. on **Month 00, 2010**, at the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check AstraZenecaSettlement.com for updated information.  At this hearing the Court will consider whether each of the Settlements is fair, reasonable and adequate. The Court will also consider how much to pay Class Counsel and Class Representatives.  If there are objections or comments, the Court will consider them at this time.  After the hearing, the Court will decide whether to approve each of the Settlements.  Is not known how long these decisions will take.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

**21.  Do I have to come to the hearing?**

Attendance is not required, even if you properly mailed a written response.  Class Counsel is prepared to answer the Court's questions on your behalf.  If you or your personal attorney still want to attend the hearing, you are more than welcome at your expense.  However, it is not necessary that you attend.  As long as the objection was postmarked before the deadline the Court will consider it.

**22.  May I speak at the hearing?**

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."   The Notice of Appearance should include the name and number of the lawsuit (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), and state that you wish to enter an appearance at the Fairness Hearing.   It also must include your name, address, telephone number, and signature.  Your "Notice of Appearance" must be postmarked no later than **Month 00, 2010**.  You cannot speak at the Hearing if you previously asked to be excluded from a Settlement.

The Notice of Appearance must be filed with the Court at the address in Question 13.


GETTING MORE INFORMATION

**23.  How do I get more information?**

This Notice summarizes the Settlements. You can get more information about the Settlements at AstraZenecaSettlement.com, by calling 1-888-812-1643, or writing to AstraZeneca Class 2 and 3 Settlement, P.O. Box 24644, West Palm Beach, FL 33416.

**<u>EXHIBIT B.2</u>**

**TPP CLAIM FORM**

*In re Pharmaceutical Industry Average Wholesale Price Litigation*
Master Docket No. 01-CV-12257-PBS, MDL No. 1456
U.S. District Court for the District of Massachusetts

# THIRD-PARTY PAYOR CLAIM FORM
## Related to AstraZeneca Non-Massachusetts and Massachusetts Classes Two and Three

The information you provide will be kept confidential and will be used only for administering this Proposed Settlement. A Protective Order has been entered by the Court which can be downloaded from the Settlement website, www.xxxxxxxxxxx.com.  If you have any questions, please call the Settlement Administrator at **1-800-xxx-xxxx.**

A TPP Class Member or an authorized agent can complete this Claim Form.  If both a Class Member and its authorized agent submit a Claim Form, the Settlement Administrator will only consider the Class Member's Claim Form. The Settlement Administrator may request supporting documentation. The claim may be rejected if any requested documentation is not provided.

If you are a Class Member submitting a Claim Form on your own behalf, you must provide the information requested in "*Part 1, Section A – COMPANY OR HEALTH PLAN CLASS MEMBER ONLY*," in addition to the other information requested by this Claim Form.

If you are an authorized agent and one or more Class Members have authorized you to submit a Claim Form on its behalf, you must provide the information requested in *Part 1, Section B – "AUTHORIZED AGENTS ONLY*," in addition to the other information requested by this Claim Form. You may submit a separate Claim Form for each Class Member that has duly authorized you to do so, OR you may submit one Claim Form for all such Class Members that have authorized you to do so, as long as you provide the information required (as indicated below) for each Class Member on whose behalf you are submitting the form.

If you are submitting Claim Forms both on your own behalf as a Class Member AND as an authorized agent on behalf of one or more Class Members that have authorized you to do so, you should submit one Claim Form for yourself, completing Section A and another Claim Form or Forms as an authorized agent for the other Class Member(s), completing Section B.  **Do not submit a Claim Form on behalf of any Class Member without obtaining authorization from that Class Member.**

## CLAIM DOCUMENTATION INSTRUCTIONS

Please provide data and information with your Claim Form sufficient to show your purchases of Zoladex® during the period January 1, 2003 to December 31, 2004, net of co-pays, deductibles, rebates, refunds, credits and/or co-insurance. It is mandatory that you provide the data indicated for categories 4, 12, 13, 14, and 17 below. The information called for by all other categories may be produced if you can do so using your reasonable good faith efforts. Pursuant to order of the Court, this information must be kept confidential by the Settlement Administrator and shall be used for the sole purpose of determining settlement payment amounts to consumer co-payors.

Pursuant to order of the Court, TPPs who provide this information will fall within the safe harbor of the Health Insurance Portability and Accountability Act for court-ordered production of personal health information, 45 C.F.R. § 164.5 12(e)( 1 )(i), and TPPs shall have no liability under HIPAA or any state confidentiality statute, regulation, or other requirement, for supplying such member information to the Claims Administrator. Further, TPPs will not be deemed to be guarantors for the completeness or accuracy of the data they provide. TPPs shall not be liable in any way to any party, class member, member, or any other person or entity for any claim related to the completeness or accuracy of any data provided, or for any other liability of any kind.

The requested categories of information are set forth below. For your convenience, a mock spreadsheet is attached at the end of this claim form.  In addition, an Excel spreadsheet can be downloaded from the Settlement website, www.xxxxxxxxxxxxxxx.com.  Please use this format if possible.

1.  **Patient First Name** - The first name of the patient. — Mary
2.  **Patient Middle Name** – The middle name, if any, of the patient. — Jane
3.  **Patient Last Name** - The last name of the patient. — Doe
4.  **Patient Social Security Number or unique patient identification number or code.** *(REQUIRED)* — 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
5.  **Patient Date of Birth** - The date of birth of the patient. Formatted mm/dd/yyyy — 01/01/1900
6.  **Patient Address: Street Number**- The street number of the patient. — 100

1

7.  **Patient Address: Street 1 - The street name for the home residence of the patient. —** Fake Street

8.  **Patient Address: Street 2– Any additional identifier of the street location for the home residence of the Patient, such as apartment number. —** Apt. #3

    NOTE: Categories 6, 7 and 8 may be entered in one field if you are unable to separate them.

9.  **Patient City - The city of residence of the patient. —** Springfield

10. **Patient State – The two character abbreviation of the current state of residence of the patient. —** NY

11. **Patient Zip Code – The zip code of the patient. —** 10003

12. **NDC Code (a list of NDC Codes is included with this Claim Form)** *(REQUIRED)* **—** 00000-0000-00

13. **Fill Date or Date of Service** *(REQUIRED)* **—** 01/01/2004

14. **Amount Billed (not including dispensing fee)** *(REQUIRED)* **—** 100.00

15. **Amount paid by patient: copayment. —** 20.00

16. **Amount paid by patient: coinsurance. —** 20.00

17. **Amount Paid by TPP** net of co-pays, deductibles, rebates, refunds, credits and co-insurance. *(REQUIRED)* **—** 80.00

---

## INSTRUCTIONS FOR ENCRYPTION OF DATA

OPTION 1: Secure Website Upload

a)  Open your browser and navigate to www.xxxxxxxxxxxSettlement.com

- Supported Browsers include:
  - o   Internet Explorer 6/7/8
  - o   Firefox 3+
  - o   Opera 9+

b)  Select the link for "Upload Claim File"

c)  Complete the fields for FEIN, Class Member or Authorized Agent's Name, Contact Name, Contact Email, Contact Phone and the text from the "Security Image"

d)  Click on the Browse button, select your spreadsheet and press OK.  Press the Submit button

e)  You will receive an email to the Contact Email address when the upload starts

f)  When the upload has completed, print two copies of the confirmation page with your confirmation number, one to include with the Claim form and one for your records. This information will also be sent to the Contact Email address

g)  Mail your completed Claim Form along with the printed confirmation page to AstraZeneca Class 2 and 3 Settlement, c/o Rust Consulting, Inc. P.O. Box xxxxx, West Palm Beach, FL  33416, postmarked on or before **xxxxxxxxx x, 2010**.

OPTION 2: Encrypted File on DVD

- NOTE: For all files above 1 gigabyte Option 2 is recommended.

a)  Open your browser and navigate to www.xxxxxxxxxxxxxx.com

b)  Select the link for "Send Encrypted DVD"

c)  Complete the fields for FEIN, Class Member of Authorized Agent's Name, Contact Name, Contact Email and Contact Phone

d)  Download the public key from the link called "AstraZeneca Public PGP Key"

e)  Download the PDF file called "Detailed PGP File Submission Instructions"

f)  Complete the steps in the Detailed PGP File Submission Instructions

g)  Attach the private key generated in step f to an email and send to data@xxxxxxxxxxxxxxxxxxx.com with your contact information.  Be sure to include the name you entered in Section A or Section B in your email.

h)  Mail your completed Claim Form along with the DVD to the Settlement Administrator via Registered US Mail to AstraZeneca Class 2 and 3 Settlement, c/o Rust Consulting, Inc. P.O. Box xxxxx, West Palm Beach, FL  33416, postmarked no later than **xxxxxxxxx x, 2010**.

---

## OTHER INFORMATION

- Finally, each TPP Class Member shall provide a list of the names of all self-funded healthcare plans ("SFP's") or other entities for which it is authorized to make a claim.

- If you are able, please provide units for each transaction.

- If you are not producing encrypted information, if possible, please provide the electronic data in either Microsoft Excel format or ASCII flat file pipe delimited "I" or fixed-width format.

Please contact the Settlement Administrator at 1 -800-xxx-xxxx with any questions about the required claims data.

<table>
<tr>
<td>Must be Postmarked<br>No Later Than<br>Xxxxxxxxx xx, 2010</td>
<td>*In re Pharmaceutical Industry Average Wholesale Price Litigation*<br>Master Docket No. 01-CV-12257-PBS, MDL No. 1456<br><u>U.S. District Court for the District of Massachusetts</u></td>
<td>For Official Use Only</td>
</tr>
</table>

## THIRD-PARTY PAYOR PROOF OF CLAIM AND RELEASE

### Please Type or Print - Use blue or black ink only.

*ATTENTION: THIS FORM IS ONLY TO BE FILLED OUT ON BEHALF OF A COMPANY OR HEALTH PLAN —— NOT INDIVIDUAL CONSUMERS*

## PART I. <u>CLAIMANT IDENTIFICATION:</u> Complete:

| **SECTION A** | | **SECTION B** |
|---|---|---|
| ONLY IF YOU ARE FILING AS A CLASS MEMBER FOR YOUR COMPANY'S HEALTH PLAN | **OR** | ONLY IF YOU ARE AN AUTHORIZED AGENT FILING ON BEHALF OF ONE OR MORE CLASS MEMBERS |

## SECTION A – COMPANY OR HEALTH PLAN CLASS MEMBER ONLY

Company or Health Plan Name

Contact Name

Mailing Address                                             Floor/Suite

City                                        State            Zip Code

Area Code – Telephone Number                 Area Code – Fax Number

Tax Identification Number                     Email Address

List other names by which your company or health plan has been known or other Federal Employer Identification Numbers ("FEINs") it has used from January 1, 2003 through December 31, 2004.

Check the term below that best describes your company/entity:

☐ Health Insurance Company/HMO          ☐ Self-Insured Employee Health Plan

☐ Self-Insured Union Health & Welfare Fund     ☐ Other (Explain): 

\*XXXX\*

In re Pharmaceutical Industry Average Wholesale Price Litigation

For Official Use Only

## SECTION B – AUTHORIZED AGENT ONLY

** As an Authorized Agent, please check how your relationship with the Class Member(s) is best described:

☐ Third Party Administrator

☐ Pharmacy Benefits Manager

☐ Other (Explain): 

Authorized Agent's Firm Name

Contact Name

Mailing Address                                                          Floor/Suite

City                                                    State            Zip Code

Area Code – Telephone Number                            Area Code – Fax Number

Authorized Agent's Tax Identification Number            Email Address

Please list the name and FEIN of every Class Member (*i.e.,* Company or Health Plan) for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this Proof of Claim as necessary). Alternatively, you may submit the requested list of Class Member names and FEINs in an electronic format, such as Excel or a tab-delimited text file saved on a disk. Please contact the Settlement Administrator to determine what formats are acceptable.

CLASS MEMBER'S NAME                                     CLASS MEMBER'S FEIN

*XXXX*

5

## PART II – TOTAL AMOUNT OF ZOLADEX® REIMBURSEMENTS

State the total and final amount paid or reimbursed for Zoladex® with a date of service or fill date from January 1, 2003 to December 31, 2004, net of co-pays, deductibles and co-insurance as well as the total and final amount paid or reimbursed for Zoladex® with a date of service or fill date from January 1, 2003 to December 31, 2004, net of co-pays, deductibles and co-insurance for patients in the Commonwealth of Massachusetts.

Note that this Settlement does not apply to claims relating to any purchase of Zoladex® to the extent the purchase is paid for with funds from Medicare, Medicaid, and/or any other federal or state health care program, state pharmaceutical assistance program, or other state or federal program or plan that may assert, or be entitled to assert, any claim, lien, or right to payment with respect to any settlement funds. This does not exclude private entities who provide prescription drug benefits on a capitated basis to governmental programs (such as Medicare Part D and some Medicaid programs), or to private entities who provide prescription drug benefits on an insured basis to any federal or state employee benefit plan, to the extent the governmental entity for whom the private entity provides such benefits does not possess a claim for reimbursement to any such settlement funds. This also does not exclude private entities that provide prescription drug benefits to self-funded state employee health benefit plans.

**Total Amount Paid for Zoladex®:**   $

**Total Amount Paid for Zoladex® in Massachusetts**   $

If you are claiming more than $300,000 total amount paid for Zoladex®, you will need to provide additional claims data and information as provided in the Claim Documentation Instructions on Page 1.  If you are claiming less than $300,000, you are **not** required to provide additional claims data and information but you may be required to provide them at a later date.

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the claimant.*

## PART III – JURISDICTION OF THE COURT, CERTIFICATION AND INDEMNIFICATION

By signing below, I hereby swear and affirm that: (1) I have authority to submit this Claim Form either directly or on behalf of the Class Member or as its Authorized Agent, and, in turn, have been given the authority to submit this Claim Form by each Class Member identified in this Claim Form and in any attachments to it, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the TPP Settlement Pool to such Class Member; (2) each entity on whose behalf I have submitted a claim is a TPP Class Member; (3) the information contained in this Claim Form and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (4) I, the Authorized Agent (if any), and the Class Member on whose behalf this Claim Form is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts (the "Court") for all purposes associated with this Claim Form and the Proposed Settlement, including resolution of disputes relating to this Claim Form; (5) that I have read and agree to the Release quoted in Part IV below; (6) in the event that amounts from the TPP Settlement Pool are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, Counsel for the Class, Defendants, Counsel for Defendants, and the Settlement Administrator harmless with respect to any claims made by said Class Member; and (7) the Class Member shall indemnify, defend, and hold harmless the Defendants to the extent such Class Member receives settlement funds for which a governmental entity later asserts a claim based on this Settlement, or any payments thereunder (each Class Member's liability is limited to the amount allocated to that Class Member for purchases made on behalf of the government entity asserting a claim against Defendants based on this Settlement.)

*Signature*                                                        *Position/Title*

*Print Name*

*Month/Day/Year*

The following additional information **must be completed** and is to be provided by the Individual that signs and certifies this Claim Form:

I am filing this Claim Form as the authorized employee of the following Class Member or Authorized Agent for Class Member:

*Name of Individual's Employer*

*Contact Name*

*Business Address*   ☐   Check if same as in Section A or Section B

*Floor/Suite*

*City*

*State*

*Zip Code*

*Area Code – Telephone Number*

*Area Code – Fax Number*

Mail the completed Claim Form to the address listed on the reverse side, postmarked no later than Xxxxxxxxx xx, **2010**.

# Part IV – The Release Provided in the Stipulation of Settlement

<u>Class Release and Covenant Not to Sue</u>:  Upon the Effective Date of this Agreement, the AstraZeneca Releasees shall be released and forever discharged by the Class Releasors from all Released TPP Class Claims.  All Class Releasors covenant and agree that they shall not hereafter seek to establish liability against any AstraZeneca Releasee based, in whole or in part, on any of the Released TPP Class Claims.  Each Class Releasor expressly waives and fully, finally, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent Released TPP Class Claims without regard to the subsequent discovery or existence of different or additional facts.

In addition, each Class Releasor hereby expressly waives and releases, upon this Agreement becoming effective, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

Section 1542.  <u>General Release: extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor;

or by any law or state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Class Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this Section VI.A.2, but each Class Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released TPP Class Claims with respect to the subject matter of this Section VI.A.2 whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class Releasee also hereby expressly waives and fully, finally, and forever settles and releases any and all Released TPP Class Claims it may have against the AstraZeneca Releasees under §§ 17200, *et seq.*, of the California Business and Professions Code.

"Release TPP Class Claims" is defined as any and all claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that the TPP Settlement Class Member, ever had, now has, or hereafter can, shall, or may have, directly, indirectly, representatively, derivatively, or in any capacity, arising out of any conduct, events, or transactions relating to the marketing, sale, purchase, cost, reimbursement amount or price of Zoladex® purchased through the date of this Agreement.  The foregoing includes, but is not limited to, claims relating to any drug price published by any commercial price reporting service, or provided by AstraZeneca to any such commercial price reporting service (including AWP and WAC) and or any marketing activity relating to any such price, such as any reference to the difference between (1) a price paid and (2) any reported price or reimbursement rate based on such a reported price, that were or could have been alleged against AstraZeneca in any of the MDL Class Complaints with respect to Class Drugs. "Released TPP Class Claims" shall not include those claims excluded pursuant to the applicable Settlement Agreement entitled "Reservation of Claims and Rights."

Insert Table A here

Insert Mock Spreadsheet

# **EXHIBIT C**

## **INTENTIONALLY LEFT BLANK**

**<u>EXHIBIT D</u>**

**FULL SETTLEMENT NOTICE PROGRAM**

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*



## NOTICE PROGRAM

*In Re Pharmaceutical Industry Average Wholesale Price
Litigation: AstraZeneca Settlement*

MDL No. 1456

CIVIL ACTION: 01-CV-12257-PBS

United States District Court for the District of
Massachusetts

© 2010 KINSELLA MEDIA, LLC

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

# TABLE OF CONTENTS

**PAGE**

**FIRM OVERVIEW** 1

**CASE BACKGROUND**

Situation Analysis 3

Class Definition 4

**NOTICE PROGRAM OVERVIEW**

Program Components 6

Direct Notice 8

Paid Media Program 9

Paid Media Placements Summary 10

**PAID MEDIA METHODOLOGY** 11

**TARGET AUDIENCE**

Selection Methodology 13

Demographics 14

Media Usage 16

**PAID MEDIA PLACEMENTS**

Television 19

Consumer Magazines 20

Newspaper Supplement 22

Local Newspapers 23

Target Audience's Print Readership 24

Internet Advertising 25

**MEDIA DELIVERY** 27

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

## NOTICE DESIGN

Long-Form Notice                                   29

Publication Notice                                 30

TV Ad                                              31

Website and Internet Ads                           32

## TOLL-FREE TELEPHONE SUPPORT                      34

## EXHIBITS

Exhibit 1 – TPP Long Form Notice

Exhibit 2 – Consumer Long Form Notice

Exhibit 3 – Weekend Newspaper Supplement List

Exhibit 4 – Publication Notice

© 2010 KINSELLA MEDIA, LLC

# FIRM OVERVIEW

Kinsella Media, LLC ("KM") is a nationally recognized advertising and legal notification consulting firm specializing in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members.

KM has developed and directed some of the largest and most complex national notification programs, primarily in antitrust, bankruptcy, consumer fraud, mass tort, and product liability litigation.  Specific cases have spanned a broad spectrum of issues, including asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco, and Holocaust claims.  The firm has developed or consulted on over 600 notification programs and has placed over $230 million in paid media notice.

In particular, KM has implemented six notice programs in the Average Wholesale Price litigation, which encompasses *In Re Pharmaceutical Industry Average Wholesale Price Litigation* and *New England Carpenters' Health Benefit Fund*.

KM develops advertisements, press materials, websites, and other notice materials that bridge the gap between litigation complexities and the need for a clear and simple explanation of legal rights.  The firm employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court, and ensures all notice materials are in "plain language" and are fully compliant with Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and comparable state guidelines.

# CASE BACKGROUND

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

# CASE BACKGROUND:
## SITUATION ANALYSIS

The average wholesale price ("AWP") is the published price used to establish reimbursement rates for drugs industry-wide.   Plaintiffs claim that the Defendants control the AWP for their drugs. Specifically, they claim that forty-two drug manufacturers raise and falsely overstated the AWP of over 300 drugs.   This resulted in inflated payments by consumers and other entities such as health and welfare plans and health insurers.  Defendants deny these allegations.

Defendant, AstraZeneca (AstraZeneca, PLC, Zeneca, Inc., AstraZeneca Pharmaceuticals L.P., AstraZeneca U.S.) has entered into two Proposed Settlements with Plaintiffs.  As part of the first Settlement, the Defendant has agreed to pay approximately $90 million to settle claims with Third-Party Payors ("TPPs") and Consumers who made reimbursements for Zoladex® outside of the Commonwealth of Massachusetts.  As part of the second Settlement, the Defendant has agreed to pay $13 million to settle claims with consumers who paid cash or made a percentage co-payment for Zoladex® in the Commonwealth of Massachusetts.

Because direct notice in this case will not reach all potential Class Members, a paid media notice program targeted to unidentified Class Members is necessary.

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

# CASE BACKGROUND:
# CLASS DEFINITION

There are two Proposed Settlements that affect Class 2 and Class 3, providing both national and Massachusetts-only relief.  Class definitions are:

Third-Party Payor MediGap Supplemental Insurance Class ("Class 2")—Nationwide Settlement

> All TPPs in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Class Drugs purchased outside the Commonwealth of Massachusetts.

Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3")—Nationwide Settlement

> All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for Class Drugs purchased outside of the Commonwealth of Massachusetts, and all TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for Class Drugs purchased outside of the Commonwealth of Massachusetts, during the period from January 1, 1991, through _____, 2010.

Third-Party Payor MediGap Supplemental Insurance Class ("Class 2")—Massachusetts-only Settlement

> All TPPs that, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Class Drugs purchased in the Commonwealth of Massachusetts.

Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3")—Massachusetts-only Settlement

> All natural persons who made, or were liable for all or any portion of, a non-Medicare Part B payment for Class Drugs purchased in the Commonwealth of Massachusetts, and all TPPs that made, or incurred an obligation to make, non-Medicare Part B reimbursements for Class Drugs purchased in the Commonwealth of Massachusetts, during the period from January 1, 1991 through _____, 2010.

# NOTICE PROGRAM OVERVIEW

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

NOTICE PROGRAM OVERVIEW:
# PROGRAM COMPONENTS

This Notice Program outlines procedures to provide notice of two Settlements in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

Based upon information provided by Plaintiffs' Counsel, the results of research on Class Members and their response to media and the media habits of the target audiences, KM recommends the following two-part notice program.

## ➤ DIRECT NOTICE:

The *Third-Party Payor Long Form Notice* ("TPP Long Form"—Exhibit 1) will be:

➤ Sent via first-class mail to:

  o All Third-Party Payors ("TPPs") whose names and addresses are readily identifiable.

  o All Class Members who request a copy via the toll-free information line or the P.O. Box detailed in the Publication Notices.

➤ Available on the informational website as a PDF file.

The *Consumer Long Form Notice* ("Consumer Long Form"— Exhibit 2) will be:

➤ Sent via first-class mail to:

  o All Class Members who are identified through data received from Independent Settling Health Plans in the National Settlement and from TPPs filing claims in both the National Settlement and the Massachusetts Settlement.

  o All Class Members who request a copy via the toll-free information line or the P.O. Box detailed in the Publication Notices.

➤ Available on the informational website as a PDF file.

## ➤ PAID MEDIA-BASED NOTICE:   After careful research of the demographics of Class Members, KM recommends broad paid media notice comprised of print, broadcast, and Internet vehicles to reach those Class Members, including:

➤ National television

➤ Consumer magazines,

➤ Newspaper supplement,

➤ Local Massachusetts newspapers, and

➢ Internet banner ads on a targeted website.

To complement the Notice Program and to ensure Class Members' easy access to updated information, KM recommends a dedicated informational website, and Internet search engine sponsorships through keyword/phrase searches to facilitate Class Members' access to the site.

# NOTICE PROGRAM OVERVIEW:
## DIRECT NOTICE

Direct mail notice to TPPs will consist of mailing the TPP Long Form to appropriate identifiable TPP Class Members informing them of their legal rights and how they may participate in or opt-out of the Settlements. The TPP Long Form will be sent to:

➢ Appropriate entities likely to be Class Members, in the proprietary TPP Database compiled by Rust Consulting ("Rust"), the Class Co-Administrator. The Database includes insurance companies, healthcare and welfare funds, employee benefit funds, third-party administrators, pharmacy benefit managers and other record keepers for noticing purposes in TPP class actions. The Database was compiled from contacting, researching and accessing the records of various databases and listings of affiliations, group insurance plans, self-insureds, ERISA funds, pharmacy benefit manager listings, etc. as follows:

- o Pharmacy Benefit Management Institute;
- o Benefits SourceBook;
- o Managed Care Information Centers;
- o Judy Diamond Associates;
- o AM Best Company;
- o Association of Managed Care Providers;
- o Society of Professional Benefit Administrators;
- o American's Health Insurance Plans;
- o Self-Insurance Institute of America; and
- o National Association of Insurance Commissioners.

Included in the Database are:

- o Approximately 29,000 companies with 100 or more employees that have self-funded (fully or partially) plans, derived from Form 5500 filings;
- o 1,356 Third-Party Claim Administrators; and
- o 1,300 member companies of American Health Insurance Plans that provide or administer health insurance benefits to over 200 million Americans which represent 90 percent of the managed care market (HMOs, PPOs and POSs, etc.).

The Database is regularly updated with new entries from the above sources as well as TPPs identified through other class action litigations.

## CALLERS TO THE TOLL-FREE NUMBER

All callers to a toll-free information line who request the TPP Long Form and/or the Consumer Long form will be mailed the requested Notice. A toll-free number for this information line will prominently appear in the Publication Notices. Class Members may also download any of the Long Form Notices, in PDF format, from the Notice Web site.

© 2010 KINSELLA MEDIA, LLC

# NOTICE PROGRAM OVERVIEW:
## PAID MEDIA PROGRAM

Direct notice will be provided to all identifiable Class Members. To reach unidentifiable Class Members, KM recommends the use of measurable paid media. Paid media advertising is guaranteed to appear, allowing for control of the content, timing, and positioning of the message. Newspapers, consumer magazines, television, radio, and the Internet, among other sources, offer paid media opportunities.

In considering which media to use for this case, KM evaluated the media consumption habits of the following target audience:

➢ People who have taken a branded prescription for a Prostate Ailment ("Prostate Prescription Users")

Based on data regarding the target audience's media consumption, KM researched the most appropriate media vehicles that would be best for this case. KM reviewed available consumer magazines, newspaper supplements, and broadcast media for reach of the target audiences as well as compatibility of the editorial. Television, magazines, and newspaper supplement advertising will provide an efficient plan for reaching Prostate Prescription Users.

# NOTICE PROGRAM OVERVIEW:
## PAID MEDIA PLACEMENTS SUMMARY

The following list provides a brief summary of KM's recommended media placements in this case. More detailed information about each publication and its applicability to the target audiences in this case appears in the Paid Media Placements section of this plan.

### PROSTATE PRESCRIPTION USERS

**Television**
  ➢ *Network Television and Cable*
**Consumer Magazines**
  ➢ *AARP Bulletin*
  ➢ *Newsweek*
  ➢ *Reader's Digest*
**Newspaper Supplement**
  ➢ *Parade*
**Newspapers**
  ➢ *All Daily Newspapers (Massachusetts—30 papers)*
**Internet Banner Ads**
  ➢ *Health.com Integrated Solutions*
**Keyword Search**
  ➢ *Google*
  ➢ *Yahoo!*
  ➢ *Bing*

# PAID MEDIA METHODOLOGY

KM notice programs directed to unidentified class members:  (1) identify the demographics of class members and establish a target audience, (2) outline the methodology for selecting the media and other program elements and how they relate to product usage or exposure, and (3) provide results that quantify for the court the adequacy of the notice based upon recognized tools of media measurement.

In the wake of the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the reliability of a notice expert's testimony should be tested against the standards developed within the media industry for determining to what degree and at what frequency a target audience has been reached.  In assessing the expert's reliability, the court must determine whether the testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.  That showing would likely require evidence that the expert's data and methodology are similar to that used by professionals in the relevant field.

In keeping with the *Daubert* and *Kumho* rulings, KM employs methodology and measurement tools used in the media planning and advertising industry for designing and measuring the adequacy of a paid media program to reach a particular audience.

Choosing a target audience that encompasses the characteristics of class members is the first step in designing the paid media program.  KM chooses media vehicles based on their ability to provide effective and cost-efficient penetration of the target audience.  Then it measures selected vehicles against the target audience to quantify the reach of the media program and the frequency of exposure to the media vehicles.  Reach and frequency estimates are two of the primary measurements used to quantify the media penetration of a target audience.

> *Reach* is the estimated percentage of a target audience that is exposed one or more times through a specific media vehicle or combination of media vehicles within a given period.

> *Frequency* is the estimated average number of opportunities an audience member has to see the notice.

# TARGET AUDIENCE

## TARGET AUDIENCE:
## SELECTION METHODOLOGY

To develop a profile of the demographics and media habits of potential Class Members, KM analyzed syndicated data available from GfK MRI's *2009 Doublebase Study*[1].

GfK MRI is the leading U.S. supplier of multimedia audience research. As a nationally accredited research firm, it provides information to magazines, television, radio, Internet and other media, leading national advertisers and over 450 advertising agencies – including 90 of the top 100 in the U.S. GfK MRI's nationally syndicated data are widely used by these companies as the basis for the majority of the media and marketing plans written for advertised brands in the U.S.

Specifically, GfK MRI presents a single-source measurement of major media, products, services, and in-depth consumer demographic and lifestyle characteristics. GfK MRI provides data on media usage, audience composition, and other relevant factors pertaining to all major media types as well as the readership of print vehicles.

Zoladex is used primarily to treat men with prostate cancer. To a lesser degree, it is also used to treat advanced breast cancer, endometriosis, and fibrosis. Because of the overwhelming use of Zoladex to treat prostate cancer, those consumers are our primary focus.

Since it is not possible to measure television and Internet against the target audience Prostate Prescription Users, KM selected the age and gender targets available for all media that are most representative of the Prostate Prescription Users demographics.

> ➢ Of people who are Prostate Prescription Users, 88% are Adults 50 years of age and older. Given this high percentage, the measured delivery of media to Adults 50 years of age and older will be representative of delivery to Class Members.

Therefore, to adequately reach the target audience, KM will purchase and measure media against the following primary target:

> ➢ Adults above the age of 50 ("Adults 50+")

---

[1] GfK MRI was known until mid-2010 as Mediamark Research & Intelligence (MRI). The *Doublebase Study* is based on GfK MRI's national *Survey of the American Consumer*, conducted since 1979, which surveys people 18 years of age and older in the contiguous 48 states. GfK MRI conducts more than 26,000 personal interviews with consumers in two waves annually, each lasting six months and consisting of 13,000 interviews. Produced annually, the *Doublebase Study* consists of two full years of data drawn from over 50,000 survey respondents. Consumer information is recorded on 500 product/service categories, 6,000 brands, and various lifestyle activities. Respondents are selected based on the ability to project their responses nationally. The survey results are sample-based. Therefore, estimates of audience and/or demographics from these surveys are subject to sampling and non-sampling error. The use of mathematical values from those surveys should not be regarded as a representation that they are exact to the precise mathematical value stated.

TARGET AUDIENCE:
## DEMOGRAPHICS

Based on GfK MRI data, the table below outlines the demographics of each target audience and the demographics of adults 18 years and older ("Adults 18+") for comparison purposes:

| DEMOGRAPHICS | ADULTS 18+ | PROSTATE PRESCRIPTION USERS |
|---|---|---|
| **Gender** | | |
| Male | 48.3% | 100% |
| Female | 51.7% | 0% |
| **Age** | | |
| 18-34 | 30.6% | 1.7% |
| 35-44 | 19.2% | 4.9% |
| 45-54 | 19.5% | 7.8% |
| 55+ | 30.7% | 85.7% |
| **Education** | | |
| Graduated/Attended | 52.2% | 57.6% |
| Graduated High School | 31.8% | 27.3% |
| **Household Income**[2] | | |
| Under $10,000 | 5.2% | 1.3% |
| $10,000 - $29,999 | 18.8% | 17.6% |
| $30,000 - $49,999 | 19.3% | 22.4% |
| $50,000 - $74,999 | 19.6% | 23.2% |
| $75,000+ | 37.0% | 36.4% |
| $100,000+ | 23.7% | 20.8% |
| **Ethnicity**[3] | | |
| Caucasian | 76.8% | 86.9% |
| African-American | 11.5% | 9.3% |
| Hispanic | 13.3% | 3.2% |
| Asian | 2.7% | 2.4% |
| Other | 9.4% | 1.3% |

---

[2] The total percentages listed do not equal exactly 100.00% percent because GfK MRI rounds up all percentages to the nearest tenth of a decimal.

[3] The GfK MRI *Doublebase Study* allows for multi-classification of an individual's ethnicity.  Therefore, the sum of all ethnicities is greater than 100%.

© 2010 KINSELLA MEDIA, LLC

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

| Location[4] | Adults 18+ | Prostate Prescription Users |
|---|---|---|
| A & B Counties | 71.3% | 67.8% |
| C & D Counties | 28.6% | 32.2% |

Based on these data, Prostate Prescription Users are more likely than the adult population as a whole to be or have:

➢ Male.

➢ Above the age of 55.

➢ Caucasian.

➢ Graduated or attended College.

➢ A Household Income between $30,000-$75,000.

➢ Living in an A or B county.

---

[4] A Counties, as defined by A.C. Nielsen Company ("Nielsen"), are all counties belonging to the 25 largest metropolitan areas.  These metro areas correspond to the Metropolitan Statistical Area and include the largest cities and consolidated areas in the United States.  B Counties, as defined by Nielsen, are all counties not included under A that have either a population greater than 150,000 or are in a metro area with a population greater than 150,000 according to the latest census. C Counties, as defined by Nielsen, are all counties not included under A or B that either have a population greater than 40,000 or are in a metro area with a population greater than 40,000 according to the latest census. D Counties are, essentially, rural counties.

# TARGET AUDIENCE:
## MEDIA USAGE

Individuals spend varying amounts of time with different media.  Certain demographic groups may be heavy consumers, light consumers, or non-users of a particular medium.  For example, GfK MRI data shows that individuals who are less educated are likely to be heavy television viewers and light newspaper readers.  Conversely, highly educated individuals are more likely to be heavy newspaper readers and light television viewers.

KM notice plans focus on the media types used most often by the target audiences.  To examine the media habits of the target audience, KM compares the target audience's media usage to that of the average adult 18 years of age and older ("Adult 18+") in usage quintiles reported by GfK MRI.  The study ranks respondents based on their amount of exposure to a medium and divides them into five equal-sized groups ("quintiles") from heaviest usage (1) to lightest usage (5).

The media usage of the target audience in each quintile is expressed as an index.  An index of 100 is the average adult's usage of a particular medium.  Therefore, an index above 100 indicates a heavier usage of the medium than the average adult, and an index below 100 indicates a lighter usage of the medium than the average adult.

The target audiences' top two quintiles (heaviest and next heaviest usage) for each type of media are:

| MEDIA | ADULTS 18+ | PROSTATE PRESCRIPTION USERS |
|---|---|---|
| **Magazine** | | |
| Quintile 1 | 100.0 | 80.4 |
| Quintile 2 | 100.0 | 86.8 |
| **Newspaper** | | |
| Quintile 1 | 100.0 | 151.4 |
| Quintile 2 | 100.0 | 172.1 |
| **Radio** | | |
| Quintile 1 | 100.0 | 54.3 |
| Quintile 2 | 100.0 | 109.5 |
| **Television** | | |
| Quintile 1 | 100.0 | 180.2 |
| Quintile 2 | 100.0 | 113.7 |
| **Internet** | | |
| Quintile 1 | 100.0 | 57.9 |
| Quintile 2 | 100.0 | 82.7 |

These data indicate the following regarding the target audiences' media consumption habits as compared to the U.S. population as a whole.

Prostate Prescription Users:

- ➢ Very heavy television viewers and newspaper readers.

- ➢ Light to below average Internet consumers.

- ➢ Average to below average radio listeners.

- ➢ Below average magazine readers.

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

# PAID MEDIA PLACEMENTS

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

## PAID MEDIA PLACEMENTS:
## TELEVISION

Television has the ability to reach a wide number of target audience members with an immediate and accessible message.  The combination of audio and visual message delivery increases the message impact. Viewers can quickly ascertain if the message is important and if so, decide to respond.

For this notice, channels and programs appealing to Adults 50+ will be selected. Our program calls for notice to be aired throughout the day in different program environments to reach the highest number of viewers.  A combination of broadcast and cable networks will be chosen.

KM recommends:

➢ An estimated 66 broadcast television and cable Target Rating Points ("TRPs")[5] over a total of two weeks generating 62,736,000 gross impressions[6] against Adults 50+.

The television schedule will be allocated as follows:



---

[5] Target Rating Points (TRPs) represent the sum of all the ratings delivered by the media vehicles in a schedule.  A rating is the percentage of households or persons in the target who have been exposed to the media vehicles in the schedule.  One TRP equals 1% of a given target population.

[6] Gross impressions are the total number of times a media vehicle containing the Notice is seen.  This is a duplicated figure, as some viewers/readers will see several media vehicles (e.g., TV, magazine, newspaper supplement) that contain the Notice.

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

## PAID MEDIA PLACEMENTS:
## CONSUMER MAGAZINES

Most adults read one or more magazines during an average month and nearly three out of five adults read or look at a magazine daily.  Heavy readers read 16 or more magazines per month.  Weekly magazines quickly accumulate readership and provide timely and efficient notice to readers.  KM chose the specific consumer magazines listed below because they are among the highest ranking in coverage of the target audiences.

KM recommends placing the Publication Notice about Zoladex® in the following consumer magazines:



➢ A 2/3 page ad (5.75" x 10.56") once in *AARP Bulletin* with an estimated circulation of 24,000,000.

➢ *AARP Bulletin* is a monthly news publication that reaches influential consumers and policymakers.  *AARP Bulletin* chronicles and interprets important social issues that affect Americans over the age of 50.

➢ Over 33% of Adults 50+ and Prostate Prescription users read an average issue of AARP Magazine.



➢ A full-page ad (7" x 10") once in *Newsweek* with an estimated circulation of 1,500,000.

➢ *Newsweek* is published weekly and reports on national and worldwide developments with news, commentary, and analysis.

➢ Prostate Prescription Users are 30% more likely to read *Newsweek* than the average adult.

➢ A full-page ad (4.75" x 6.75") once in *Reader's Digest* with an estimated circulation of 5,500,00.

© 2010 KINSELLA MEDIA, LLC

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

➢ *Reader's Digest* is a monthly compendium of selected excerpts from other publications as well as original pieces.

➢ Over 22% of Prostate Prescription Users read an average issue of *Reader's Digest.*

© 2010 Kinsella Media, LLC

PAID MEDIA PLACEMENTS:
## NEWSPAPER SUPPLEMENT

*Parade*, a publication known as a newspaper supplement, is inserted into weekend or Sunday editions of 542 newspapers, reaching every major media market in the country.  These magazines, printed on newsprint, contain articles written for broad, general appeal and encourage readership through brevity.  Issues are typically fewer than 30 pages.  For this Notice Program, KM recommends a newspaper supplement because of its cost-effective reach capability.  It provides coverage in all 50 states and the District of Columbia.  For a complete list of publications in which *Parade* appears, see Exhibit 3.

KM recommends placing a Publication Notice that includes information about Zoladex® in the following newspaper supplement:

# PARADE

➢ A half-page ad (4.375" x 9.25") once in *Parade* with an estimated circulation of 32,200,000.

➢ *Parade* is carried in the Sunday edition of 542 daily newspapers and is the highest circulating magazine in the world.  Carrier newspapers serve major urban and suburban markets in the U.S.

➢ Nearly 50% of *Parade*'s readership comes from Adults 50+.

## PAID MEDIA PLACEMENTS:
## LOCAL NEWSPAPERS

Local daily newspapers serve as a widely read, timely, and credible information source that allow for geographic targeting of notice.  Insertions in 31 local newspapers will provide the target audience, within the Commonwealth of Massachusetts, with additional opportunities to see the Publication Notice.


KM recommends:

&#10148;  A 1/4-page ad once in the leading paper in every county in Massachusetts.

| | | |
|---|---|---|
| Athol Daily News | Gloucester Daily Times | North Andover Eagle-Tribune |
| Attleboro Sun Chronicle | Greenfield Recorder | Northampton Daily Hampshire Gaze |
| Berkshire Eagle | Lynn Daily Item | Springfield Republican |
| Boston Globe | Lowell Sun | Southbridge Evening News |
| Boston Herald | Maiden Evening News | Taunton Daily Gazette |
| Brockton Enterprise | Medford Daily Mercury | Wakefield Daily Item |
| Cape Cod Times | Metro West Daily News | Waltham Daily News Tribune |
| Fall River Herald News | Milford Daily News | Westfield Evening News |
| Fitchburg Sentinel & Enterprise | New Bedford Standard-Times | Woburn Daily Times Chronicle |
| Gardner News | Newburyport Daily News | Worcester Telegram & Gazette |

PAID MEDIA PLACEMENTS:
# TARGET AUDIENCE'S PRINT READERSHIP

Readership includes both primary readers and pass-along readers. Primary readers purchase a publication or are members of a household where the publication was purchased. Pass-along readers are those who read the publication outside the home, in places such as a doctor's office. The table below indicates the estimated number of readers in each of the target audiences of an average issue of the magazine or newspaper supplement:

| PUBLICATION | INSERTIONS | PROSTATE PRESCRIPTION USERS |
|---|---|---|
| *AARP Bulletin* | 1 | 407,000 |
| *Parade* | 1 | 540,000 |
| *Reader's Digest* | 1 | 271,000 |
| *USA Weekend* | 1 | 314,000 |

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

## PAID MEDIA PLACEMENTS:
## INTERNET ADVERTISING

GfK MRI provides data on Internet usage.  Specifically, GfK MRI asks survey respondents about their online usage during the 30 days prior to the survey.  According to GfK MRI, Adults aged 50 to 64 are 28% more likely to go online to retrieve medical information than the average adult.  Therefore, the Internet advertising is directed to the younger segment of our target audience.

Accordingly, KM recommends incorporating Internet advertising into the Notice Program in order to provide potential Class Members with additional national notice opportunities beyond the broad-reaching program.  Internet advertising delivers an immediate message and allows the viewer of an advertisement to instantly link to a website for further information.

### WEBSITE ADVERTISING

KM recommends placing a banner ad on a medical information website.  (Delivery of Internet impressions to specific sites and categories within sites are subject to availability at the time KM purchases the media.)

KM recommends the following Web placement:



➢ Health.com is a leading website providing up-to-date health and medical information for consumers.

➢ Banner advertisements measuring 728 x 90 pixels and 300 x 250 pixels will appear, on a rotating basis, on websites that are part of the prostate cancer channel of the Health.com Network, for a total estimated 1,000,000 gross impressions.

➢ The banner advertisements will appear for approximately 30 days.

### KEYWORD SEARCH ADS

Search engines are among the Internet's most frequently used sites.  In order to help search engine users locate the informational website about this case – both those specifically looking for it and those looking for related topics – KM will purchase sponsored links to appear when searchers enter certain terms.

KM will contract with Google AdWords, Yahoo! Search Marketing, and Bing Microsoft Advertising to have sponsored links appear on the results page of keyword/phrase searches that could include:

➢ Prostate drug class action

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

➤ AWP AstraZeneca Settlement

➤ Prostate drug settlement

The following is a sample screen shot that details the results provided on Google's search engine when a visitor enters the phrase "AWP AstraZeneca Settlement" as a search term:



After KM contracts with Google AdWords, Yahoo! Search Marketing, and Bing Microsoft Advertising for sponsored links of the keyword/phrase searches listed above, a visitor entering an applicable keyword/phrase will see the following sample ad listed in the right-hand column under the Sponsored Links section:

> **Zoladex Settlement**
> Proposed settlement of a class action may affect purchasers of Zoladex.
> http://www.astrazenecalawsuit.com

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

# MEDIA DELIVERY

The paid media program outlined in this plan provides Class Members with multiple exposure opportunities to media vehicles carrying the Publication Notice and delivers the following estimated reach and frequency measurements to the target audiences defined by the 2009 GfK MRI Fall Study[7] from GfK MRI:

## NATIONAL

➢ An estimated 80.18% of Adults 50+ (targeted to Prostate Prescription Users) will be reached through print, television, and Internet with an average estimated frequency of 2.0, delivering opportunity to see the Publication Notice.

## MASSACHUSETTS

➢ An estimated 83.45% of Adults 50+ (targeted to Prostate Prescription Users) will be reached through all print publications—magazines, newspaper supplements, and local daily newspapers, with an average estimated frequency of 1.76. This reach is exclusive of any reach achieved through television.

Due to the lack of compatible audience measurement, the combined impact of this contribution cannot be expressed in terms of reach and frequency. Accordingly, the actual reach to the Class is expected to be greater than the percentage stated above for Adults 50.

---

[7] GfK MRI Net+ Fusion combines GfK MRI's *Survey of the American Consumer* and Nielsen Online's NetView, providing a single-source dataset of off-line and online media usage by American consumers. Nielsen uses a patented metering technology and representative panels of Internet users to collect and report consumer Internet usage. The GfK MRI survey provides data on magazine and newspaper reading, television viewing, radio listening, product consumption, psychographic characteristics, computer and Internet access configurations, and geo-demographic characteristics. Combining the two datasets provides unduplicated audience estimates across print and online media.

© 2010 KINSELLA MEDIA, LLC

# NOTICE DESIGN

NOTICE DESIGN:
## LONG-FORM NOTICE

The TPP Long Form and the Consumer Long Form will both be compliant with Rule 23 and consistent with the Federal Judicial Center's "illustrative" class action notices.  Specifically, the Notices will clearly and concisely state in plain, easily understood language:

- ➢ The nature of the action;

- ➢ The definition of the class certified;

- ➢ The class claims, issues, or defenses;

- ➢ That a class member may enter an appearance through an attorney if the member so desires;

- ➢ That the Court will exclude from the class any member who requests exclusion;

- ➢ The time and manner for requesting exclusion; and

- ➢ The binding effect of a class judgment on members under Rule 23 (c)(3).

The Notices will prominently feature a toll-free number and website address for Class Members to obtain more information and file a claim.

© 2010 KINSELLA MEDIA, LLC

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

NOTICE DESIGN:
# PUBLICATION NOTICE

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action publication notices to be written in "plain, easily understood language." KM applies the plain language requirement in drafting publication notices in federal and state class actions. The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft publication notices that effectively convey the necessary information to Class Members.

The plain language Publication Notice (Exhibit 3), is designed to alert Class Members to the litigation by using a bold headline. This headline will enable Class Members to quickly determine if they are potentially affected by the litigation. Plain language text provides important information regarding the subject of the litigation, the Class definition and the legal rights available to Class Members. The Publication Notice will include all the substantive information required by Rule 23.

Each advertisement will prominently feature a toll-free number, website, and P.O. Box address for Class Members to obtain the TPP Long Form, Consumer Long Form, and other information.

## NOTICE DESIGN:
## TV AD

The 30-second television advertisement will be designed to appeal specifically to Adults 50+ and Prostate Prescription Drug Users.  The television ad will quickly alert viewers to the subject matter of the litigation and will help viewers to determine whether they may be potential Class Members, as well as inform them that they can file claims.  The television ad will prominently feature the toll-free telephone number and website address for potential Class Members to obtain more information and a Claim Form.

© 2010 KINSELLA MEDIA, LLC

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*

## NOTICE DESIGN:
## WEBSITE AND INTERNET ADS

An informational interactive website is a critical component of the Notice Program.  A website is a constant information source instantly accessible to millions.  The site will utilize the Internet's ability to serve as a key distribution channel and customer service bureau.  Internet banner ads will help direct Class Members to the website.

### WEBSITE DESIGN

Combining clean site design, consistent site navigation cues and search engine optimization, the website will provide Class Members with easy access to the details of the litigation.

> **CLEAN DESIGN:**  The site will be designed for ease of navigation and comprehension, with user-friendly words and icons.  Clearly labeled content will include the TPP Long Form and the Consumer Long Form, court documents, and answers to frequently asked questions.  A "Contact Us" page will provide a toll-free number for individuals seeking additional information and the address or email of Class Counsel.

### INTERNET BANNER AD DESIGN

KM will design Internet banner advertisements to alert Class Members to the Proposed Settlement by using a bold headline.  The headline will enable Class Members to quickly determine if they may be affected by the Settlement.  When users click on the banner advertisement, they will be connected automatically to the informational website that contains complete information about their legal rights.

### SAMPLE WEBSITE AND/OR INTERNET AD

For reference, below is a screen capture from the home page of the notice website and Internet ad in a similar case:

*In Re Pharmaceutical Industry Average Wholesale Price Litigation: AstraZeneca Settlement*



## TOLL-FREE TELEPHONE SUPPORT

A toll-free interactive voice response system ("IVR") with live customer service representative ("CSR") support, will be established to service Class Members calling as a result of seeing the paid media notice. A 24-hour IVR system will be in place for callers to hear general information and get answers to frequently asked questions.  Callers will have the option to speak with a CSR instead of, or in combination with IVR.  CSRs are trained on the specifics of the program and will work from scripts developed and approved with the parties, offering accurate and understandable answer to questions about the Proposed Settlement.  Callers will also be able to request a copy of the TPP Long Form and the Consumer Long Form.

# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# If You are a Third-Party Payor and You Made Reimbursements for Zoladex®,

## You Could Receive Benefits from Class Action Settlements.

---

**Zoladex**® is used to treat prostate cancer, advanced breast cancer, endometriosis, and fibrosis.

---

*A federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

• Two class action Settlements with AstraZeneca Pharmaceuticals LP ("AstraZeneca"), the maker of Zoladex®, have been reached.  The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.

• The Settlements cover Third-Party Payors ("TPPs") payments of all or some portion of an insureds Medicare Part B co-payments for Zoladex® from January 1, 1991 through January 1, 2005 and non-Medicare Part B reimbursements for Zoladex® from January 1, 1991 through June 11, 2010.

• Approximately 88% of the Settlement Funds in the National Settlement Agreement (approximately $80 million) and 88% of the Settlement Funds in the Massachusetts Settlement Agreement (approximately $11.4 million) will be paid to TPPs who file valid claims.  The funds in the National Settlement will also be shared with large insurers, referred to as Independent Settling Health Plans, who have settled separately with AstraZeneca over the same claims.

## A Summary of Your Rights and Choices:

### Your Legal Rights Are Affected Even If You Do Not Act.  Read This Notice Carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a payment from the Settlements. |
| EXCLUDE YOURSELF FROM ONE OR BOTH SETTLEMENTS | Get no benefit from that Settlement.  This is the only option that allows you to ever be part of any other lawsuit against AstraZeneca about the claims in this case. |
| OBJECT/COMMENT | Remain in the Settlement(s) and write to the Court about what you think about the Settlements and whether the Court should approve the Settlements. |
| GO TO A HEARING | Remain in the Settlement(s) and ask to speak in Court about the fairness of the Settlements. |
| DO NOTHING | Get no payment.  Give up rights to sue AstraZeneca about the claims in this lawsuit. |

• These rights and options – **and the deadlines to exercise them** – are explained in this notice.

• The Court in charge of this case still has to decide whether to approve each of the Settlements.  Payments will be made if the Court approves the Settlements and after any appeals are resolved.  Please be patient.

1

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ………………………………………………………………**PAGE 3**
    1.     Why is there a notice?
    2.     What is this lawsuit about?
    3.     Why is this a class action?

**WHO IS IN THE SETTLEMENTS** ……………………………………………………..**PAGE 3**
    4.     How do I know if I'm part of the Settlements?
    5.     Which entities are included?
    6.     I'm still not sure I'm included.

**THE SETTLEMENTS' BENEFITS** ………………………………………………….…**PAGE 4**
    7.     What does the Nationwide Settlement provide?
    8.     What does the Massachusetts Settlement provide?
    9.     What do I have to do to get a payment?
    10.    How are payments determined?

**REMAINING IN THE SETTLEMENTS** ………………………………………………**PAGE 6**
    11.    What happens if I do nothing at all and stay in the Settlements?
    12.    What am I giving up to stay in the Settlements?

**EXCLUDING YOURSELF FROM THE SETTLEMENTS** ……………………………..…**PAGE 6**
    13.    How do I get out of the Settlements?
    14.    If I don't exclude myself, can I sue AstraZeneca for the same thing later?
    15.    If I exclude myself, can I still get a payment from the Settlements?

**THE LAWYERS REPRESENTING YOU** …………………………………..………..…**PAGE 7**
    16.    Do I have a lawyer in the case?
    17.    How will the lawyers be paid?

**COMMENTING ON THE SETTLEMENTS** …………………………………..……………**PAGE 8**
    18.    How do I tell the Court what I think about the Settlements?
    19.    What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** ……………………………………….……**PAGE 8**
    20.    When and where will the Court decide whether to approve the Settlements?
    21.    Do I have to come to the hearing?
    22.    May I speak at the hearing?

**GETTING MORE INFORMATION** ………………………………………………**PAGE 9**
    23.    How do I get more information?

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

## BASIC INFORMATION

**1.  Why is there a notice?**

You have a right to know about two proposed Settlements that are part of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlements.

The Court in charge of the case is the United States District Court for the District of Massachusetts, and the case is called *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456.  The people who sued are called Plaintiffs and the company they sued, AstraZeneca Pharmaceuticals LP, is called the Defendant.

**2.  What is this lawsuit about?**

The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.  The reported AWPs are used to set drug prices that are paid by Medicare and its beneficiaries, private health insurers, and consumers making percentage co-payments under private health insurance plans.

AstraZeneca denies any wrongdoing, and the Settlements are not an admission of wrongdoing or an indication that any law was violated.  AstraZeneca has entered into the Settlements solely to avoid further expense, inconvenience, and the burden of these litigations and to put to rest this controversy and to avoid the risks of uncertain litigation.

**3.  Why is this a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are a class or class members, except for those who exclude themselves from the class.

## WHO IS IN THE SETTLEMENTS

To see if you are entitled to benefits from these Settlements, you first have to determine if you are a Class Member.

**4.  How do I know if I am part of the Settlements?**

The **Nationwide Settlement** includes:

- Third-Party Payors ("TPPs") in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Zoladex® purchased outside of the Commonwealth of Massachusetts.

- TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for Zoladex® purchased outside of the Commonwealth of Massachusetts, during the period from January 1, 1991, through June 11, 2010.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

3

The **Massachusetts Settlement** includes:

- TPPs in the United States that, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Zoladex® purchased in the Commonwealth of Massachusetts.

- TPPs that made, or incurred an obligation to make, non-Medicare Part B reimbursements for Zoladex® purchased in the Commonwealth of Massachusetts, during the period from January 1, 1991 through June 11, 2010.

## 5. Which entities are included?

Entities, known as "Third-Party Payors" ("TPPs"), include health insurers (other than the Independent Settling Health Plans) that paid all or part of the cost of Zoladex® for their insured patients.  This may also include employee welfare benefit plans, governmental plans or unions plans that paid some portion of the cost of Zoladex® for employees or family members of employees insured under these plans.  Entities with self-funded plans that contract with a health insurance company or other entity to serve as a Third-Party claims administrator to administer their prescription drug benefits qualify as TPPs.

You are automatically included in the Settlements if you:
- Paid some or all of the purchase price, or reimbursed an insured or health plan participant or beneficiary for some or all of the purchase price for Zoladex®, and
- Reimbursed the purchase price between January 1, 1991 and January 1, 2005 for payments of an insured Medicare co-payment, and/or
- Reimbursed the purchase price between January 1, 1991 and June 11, 2010 for payments outside of Medicare.

A separate settlement has been reached with several large insurers referred to as Independent Settling Health Plans ("ISHPs").  ISHPs will share in the funds set aside for TPPs in the Nationwide Settlement.

## 6. I'm still not sure if I'm included.

If you are still not sure whether you are included, you can call 1-888-812-1643, visit the website AstraZenecaSettlement.com, send an email to info@AstraZenecaSettlement.com, or write to AstraZeneca Class 2 and 3 Settlement, P.O. Box 24644, West Palm Beach, FL 33416.

### THE SETTLEMENTS' BENEFITS

## 7. What does the Nationwide Settlement provide?

AstraZeneca will pay $90 million to settle the Plaintiffs' claims in the Nationwide Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to TPPs, as well as consumers.  TPPs will receive up to 88.89% of the net fund, and up to 11.11% will go to consumers.  Half of the amounts allocated to TPPs will be used to satisfy the claims of

Independent Settling Health Plans.  If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs and Independent Settling Health Plans.  If claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

If you are a TPP and you want to get out of the Settlements (*see* the section called "Excluding Yourself From the Settlements" below), the TPP Settlement Fund will be reduced by the amount of money you would have received if you filed a valid claim.  More details are in Settlement Agreements, available at [AstraZenecaSettlement.com](AstraZenecaSettlement.com).

### 8. What does the Massachusetts Settlement provide?

AstraZeneca will pay $13 million to settle the Plaintiffs' claims in the Massachusetts Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to TPPs, as well as consumers.  TPPs will receive at least 88.89% of the net fund, and up to 11.11% will go to consumers.  If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs.  If claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

If you are a TPP and you want to get out of the Settlements (*see* the section called "Excluding Yourself From the Settlements" below), the TPP Settlement Fund will be reduced by the amount of money you would have received if you filed a valid claim.  More details are in Settlement Agreements, available at [AstraZenecaSettlement.com](AstraZenecaSettlement.com).

### 9.  What do I need to do to get a payment?

If you paid reimbursements for Zoladex® between January 1, 1991 and June 11, 2010, you may complete the attached Claim Form and provide documentation of your reimbursements as set forth on the Claim Form.  Please see Question 10 for more details on how the amount will be determined.

Claim Forms must be postmarked by **Month 00, 2010**, and mailed to:

AstraZeneca Class 2 and 3 Settlement
P.O. 24644
West Palm Beach, FL 33416

### 10.  How are payments determined?

The Settlement Fund amount initially available for TPPs in the class is $40 million and is called the TPP Settlement Pool.  A portion of the Court-approved deductions for attorneys' fees, litigation costs and expenses, and the cost of notice and administration will be deducted from this amount.  The remaining amount will be paid to TPPs based on the amount they paid for Zoladex® in proportion to what was paid by all TPPs who submit claims.

The Settlement provides that there may be an adjustment of the TPP Settlement Pool and the portion of the Settlement Fund available for TPPs who settled separately from the class (the "ISHP Settlement Pool").

The Settlement Agreement also provides that any undistributed portion of the $10 million allocated to satisfy claims of Consumer Class Members will be distributed to TPPs and ISHPs.

The final TPP Settlement Pool and final ISHP Settlement Pool may be more or less than $40 million, depending on the number and validity of the Claims submitted by TPPs.  This adjustment procedure is intended to ensure that class member TPPs receive the same *pro rata* recovery as the ISHPs.

## REMAINING IN THE SETTLEMENTS

### 11.  What happens if I do nothing at all?

If you do nothing, you will not get any money from the Settlements.  Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against AstraZeneca about the legal issues in this case, ever again.

### 12. What am I giving up to stay in the Settlements?

Unless you exclude yourself from a Settlement, you can't sue AstraZeneca, continue to sue, or be part of any other lawsuit against AstraZeneca about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in each Settlement Agreement and describes exactly the legal claims that you give up if you remain in that Settlement. The Settlement Agreements are available at AstraZenecaSettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from a Settlement, and you want to keep the right to sue or continue to sue AstraZeneca on your own about the legal issues in this case, then you must take steps to get out of the Settlements.  This is called excluding yourself – or "opting out" of the Class.

### 13.  How do I get out of the Settlements?

To exclude yourself from a Settlement, you must send a letter that includes the following:
- Your name, address and telephone number,
- A statement saying that you want to be excluded from either or both the National AstraZeneca Settlement and the Massachusetts AstraZeneca Settlement in *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456,
- Note whether you want to exclude yourself from the Nationwide Settlement or Massachusetts Settlement (or both), and
- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2010**, to:

AstraZeneca Class 2 and 3 Settlement
P.O. Box 24644
West Palm Beach, FL 33416

**14.  If I don't exclude myself, can I sue AstraZeneca for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue AstraZeneca for the claims that the Settlements resolve.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

**15.  If I exclude myself, can I still get a payment from the Settlements?**

No.  You will not get any money if you exclude yourself from the Settlement(s).

### THE LAWYERS REPRESENTING YOU

**16. Do I have a lawyer in this case?**

Yes.  The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
        *and*
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman Kodroff & Willis, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Wallace LLP
www.wtwlaw.us
55 West Monroe Street, Suite 3300
Chicago, IL 60603

These lawyers are called Class Counsel.  You won't be charged personally for these lawyers, but they will ask the Court to award them a fee that will be paid out of the Settlement Funds.  More information about Class Counsel and their experience is available at the Web sites listed above.

**17.  How will the lawyers be paid?**

Class Counsel may ask the Court for attorneys' fees not to exceed one-third of the Settlement Funds (after deducting any amount that AstraZeneca gets back from any TPP exclusions) plus reimbursement of their expenses. Class Counsel will also request that each of the Class Representatives who helped the lawyers on behalf of the whole Class be compensated for the time they spent helping litigate the case.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

### COMMENTING ON THE SETTLEMENTS

You can tell the Court that you don't agree with either Settlement or some part of them.

| 18. | How do I tell the Court what I think about a Settlement? |
| --- | --- |

If you have comments about, or disagree with, any aspect of the Settlement(s), including the requested attorneys' fees, you may express your views to the Court by writing to the address below. The written response should include your name, address, telephone number, the case name and number (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), a reference to the National AstraZeneca Class Settlement and/or the Massachusetts AstraZeneca Class Settlement, a brief explanation of your reasons for objection, and your signature. The response must be postmarked no later than **Month 00, 2010** and mailed to:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

| 19. | What's the difference between objecting and excluding? |
| --- | --- |

Objecting is simply telling the Court that you don't like something about the Settlements. You can object to a Settlement only if you do not exclude yourself from that Settlement. Excluding yourself from a Settlement is telling the Court that you don't want to be part of that Settlement. If you exclude yourself from a Settlement, you have no basis to object to that Settlement because it no longer affects you.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve each of the Settlements and any requests for fees and expenses. You may attend and you may ask to speak, but you don't have to.

| 20. | When and where will the Court decide whether to approve the Settlements? |
| --- | --- |

The Court will hold a Fairness Hearing at **Time x.m.** on **Month 00, 2010**, at the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check AstraZenecaSettlement.com for updated information. At this hearing the Court will consider whether each of the Settlements is fair, reasonable and adequate. The Court will also consider how much to pay Class Counsel and Class Representatives. If there are objections or comments, the Court will consider them at this time. After the hearing, the Court will decide whether to approve each of the Settlements. Is is not known how long these decisions will take.

**21.  Do I have to come to the hearing?**

Attendance is not required, even if you properly mailed a written response.  Class Counsel is prepared to answer the Court's questions on your behalf.  If you or your personal attorney still want to attend the hearing, you are more than welcome at your expense.  However, it is not necessary that you attend.  As long as the objection was postmarked before the deadline the Court will consider it.

**22.  May I speak at the hearing?**

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), and state that you wish to enter an appearance at the Fairness Hearing.  It also must include your name, address, telephone number, and signature.  Your "Notice of Appearance" must be postmarked no later than **Month 00, 2010**.  You cannot speak at the Hearing if you previously asked to be excluded from a Settlement.

The Notice of Appearance must be filed with the Court at the address in Question 13.

**GETTING MORE INFORMATION**

**23.  How do I get more information?**

This Notice summarizes the Settlements. You can get more information about the Settlements at AstraZenecaSettlement.com, by calling 1-888-812-1643, or writing to AstraZeneca Class 2 and 3 Settlement, P.O. Box 24644, West Palm Beach, FL 33416.

# EXHIBIT 2

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

# If You Paid for Zoladex®,

## You Could Receive Benefits from Class Action Settlements.

---

**Zoladex®** is used to treat prostate cancer, advanced breast cancer, endometriosis, and fibrosis.

---

*A federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

Two class action Settlements with AstraZeneca Pharmaceuticals LP ("AstraZeneca"), the maker of Zoladex®, have been reached.  The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.

- You can get a refund if you paid cash or made a percentage co-payment for Zoladex® from January 1, 1991 through June 11, 2010.  A percentage co-payment varies with the cost of the drug.  You cannot get a refund if you paid a flat co-payment.

- Up to $10 million will be paid to consumers who file valid claims in the National Settlement.  Up to $1.4 million will be paid to consumers in the Massachusetts Settlement.  You can receive up to $400 or more for your out-of-pocket payments for Zoladex®.  For claims during the years 1997 through 2004 you may receive up to three times your out of pocket expenses for Zoladex®.

## A Summary of Your Rights and Choices:

**Your Legal Rights Are Affected Even If You Do Not Act.  Read This Notice Carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment from the Settlements. |
| **EXCLUDE YOURSELF FROM ONE OR BOTH SETTLEMENTS** | Get no benefit from that Settlement.  This is the only option that allows you to ever be part of any other lawsuit against AstraZeneca about the claims in this case. |
| **OBJECT/COMMENT** | Remain in the Settlement(s) and write to the Court about what you think about the Settlements. |
| **GO TO A HEARING** | Remain in the Settlement(s) and ask to speak in Court about the fairness of the Settlements. |
| **DO NOTHING** | Get no payment.  Give up rights to sue AstraZeneca about the claims in this lawsuit. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve each of the Settlements.  Payments will be made if the Court approves the Settlements and after any appeals are resolved.  Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ………………………………………………………………**PAGE 3**
1.    Why is there a notice?
2.    What is this lawsuit about?
3.    Why is this a class action?

**WHO IS IN THE SETTLEMENTS** ………………………………………………………**PAGE 3**
4.    How do I know if I'm part of the Settlements?
5.    Who else is included in the Settlements?
6.    I'm still not sure I'm included.

**THE SETTLEMENTS' BENEFITS** ………………………………………………………**PAGE 4**
7.    What does the Nationwide Settlement provide?
8.    What does the Massachusetts Settlement provide?
9.    What do I have to do to get a payment?
10.   How are payments determined?

**REMAINING IN THE SETTLEMENTS** ……………………………………..…………**PAGE 6**
11.   What happens if I do nothing at all and stay in the Settlements?
12.   What am I giving up to stay in the Settlements?

**EXCLUDING YOURSELF FROM THE SETTLEMENTS** …………………………………**PAGE 6**
13.   How do I get out of the Settlements?
14.   If I don't exclude myself, can I sue AstraZeneca for the same thing later?
15.   If I exclude myself, can I still get a payment from the Settlements?

**THE LAWYERS REPRESENTING YOU** …………………………………………………**PAGE 7**
16.   Do I have a lawyer in the case?
17.   How will the lawyers be paid?

**COMMENTING ON THE SETTLEMENTS** ………………………………………………**PAGE 8**
18.   How do I tell the Court what I think about the Settlements?
19.   What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** …………………………………………………**PAGE 8**
20.   When and where will the Court decide whether to approve the Settlements?
21.   Do I have to come to the hearing?
22.   May I speak at the hearing?

**GETTING MORE INFORMATION** ………………………………………………....**PAGE 9**
23.   How do I get more information?

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

**BASIC INFORMATION**

**1.  Why is there a notice?**

You have a right to know about two proposed Settlements that are part of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlements.

The Court in charge of the case is the United States District Court for the District of Massachusetts, and the case is called *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456.  The people who sued are called Plaintiffs and the company they sued, AstraZeneca Pharmaceuticals LP, is called the Defendant.

**2.  What is this lawsuit about?**

The lawsuit claims, but AstraZeneca denies, that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®.  The reported AWPs are used to set drug prices that are paid by Medicare and its beneficiaries, private health insurers, and consumers making percentage co-payments under private health insurance plans.

AstraZeneca denies any wrongdoing, and the Settlements are not an admission of wrongdoing or an indication that any law was violated.  AstraZeneca has entered into the Settlements solely to avoid further expense, inconvenience, and the burden of these litigations and to put to rest this controversy and to avoid the risks of uncertain litigation.

**3.  Why is this a class action?**

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims.  All these people are a class or class members, except for those who exclude themselves from the class.

**WHO IS IN THE SETTLEMENTS**

To see if you are entitled to benefits from these Settlements, you first have to determine if you are a Class Member.

**4.  How do I know if I am part of the Settlements?**

Generally, under both Settlements you must have made a cash or a percentage co-payment for Zoladex® during the period from January 1, 1991, through June 11, 2010.

- A cash payment is a payment for the full cost of the drug without the help of payment by an insurer or other source.
- A percentage co-payment varies with the cost of the drug (e.g. 10% or 20% of the cost of the drug).

**You are not a member of a Class if you only made flat co-payments** (for example, a flat amount of $10 or $25 per prescription regardless of the cost of the drug), **if insurance paid all of your co-payment, or if you were never obligated to make a co-payment at all.**

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

The **Nationwide Settlement** includes:

- All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for Zoladex® purchased outside of the Commonwealth of Massachusetts, during the period from January 1, 1991, through June 11, 2010.

The **Massachusetts Settlement** includes:

- All natural persons who made, or were liable for all or any portion of, a non-Medicare Part B payment for Zoladex® purchased in the Commonwealth of Massachusetts, during the period from January 1, 1991, through June 11, 2010.

### 5.  Who else is included?

Entities, known as "Third-Party Payors" ("TPPs") are also included in the Settlements.  TPPs could include health insurers that paid all or part of the cost of Zoladex® for their insured patients.  This may also include employee welfare benefit plans, governmental plans or union plans that paid some portion of the cost of Zoladex® for employees or family members of employees insured under these plans.  Entities with self-funded plans that contract with a health insurance company or other entity to serve as a Third-Party claims administrator to administer their prescription drugs benefits qualify as TPPs.

A separate settlement has been reached with several large insurers referred to as Independent Settling Health Plans ("ISHPs").  ISHPs will share in the funds set aside for TPPs in the Nationwide Settlement.

### 6.  I'm still not sure if I'm included.

If you are still not sure whether you are included, you can call 1-888-812-1643, visit the website AstraZenecaSettlement.com, send an email to info@AstraZenecaSettlement.com or write to AstraZeneca Class 2 and 3 Settlement, P.O. Box 24644, West Palm Beach, FL 33416.

### THE SETTLEMENTS' BENEFITS

### 7. What does the Nationwide Settlement provide?

AstraZeneca will pay $90 million to settle the Plaintiffs' claims in the Nationwide Settlement.  After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to consumers who submit valid claims, as well as to TPPs.  Consumers will receive up to 11.11% of the net fund, and up to 88.89% will go to TPPs and a group of ISHPs.  If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs and Independent Settling Health Plans.  If consumer claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

More details are in Settlement Agreements, available at AstraZenecaSettlement.com.

**8. What does the Massachusetts Settlement provide?**

AstraZeneca will pay $13 million to settle the Plaintiffs' claims in the Massachusetts Settlement. After deducting certain amounts, including attorneys' fees, expenses, and payments to Class Representatives (*see* Question 17), the net fund will be distributed in cash to consumers who submit valid claims, as well as to TPPs. Consumers will receive up to 11.11% of the net fund, and up to 88.89% will go to TPPs. If there is any money left in the Consumer Settlement Fund, after paying all valid claims, it will be paid to the TPPs. If consumer claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

More details are in Settlement Agreements, available at AstraZenecaSettlement.com.

**9.  What do I need to do to get a payment?**

If you paid cash or a percentage co-payment for Zoladex® between January 1, 1991 and June 11, 2010, you have two options to get a payment:

1) Easy Refund Option:  You may sign the attached claim form under penalty of perjury, stating that you paid a percentage co-payment for Zoladex® between January 1, 1991 and June 11, 2010. Under this option you will be entitled to a one-time flat payment of up to $400 depending on how many consumers file valid claims.

OR

2) Full Estimated Refund Option:  You may complete the attached Claim Form and provide some documentation of your cash or percentage co-payments for Zoladex® between January 1, 1991 and June 11, 2010, and receive a refund of the total amount you spent. The Claim Form explains what type of documentation is necessary to prove your claim. Please see Question 10 for more details on how the amount will be determined.

Claim Forms must be postmarked by **Month 00, 2010**, and mailed to:

AstraZeneca Class 2 and 3 Settlement
P.O. Box 24644
West Palm Beach, FL 33416

**10.  How are payments determined?**

The amount of money you are eligible to receive will depend on how much Zoladex® you purchased, and on how many Class Members file valid claims.

Easy Refund Option:  If you select the "Easy Refund Option" you will receive a one-time payment of up to $400 depending on how many consumers file claims.

Full Estimated Refund Option:  If you select to estimate your out-of-pocket expenses associated with Zoladex®, and provide the proper documentation (*see* Claim Form), your payment will be calculated as follows:

- Your out-of-pocket payments for Zoladex® during the period of December 1, 1997 through December 31, 2004 will be multiplied by a factor of three (3x) and added to your out-of-pocket payments for Zoladex® outside this period (with no multiplication factor).

  **Example:** You paid (1) $200 out-of-pocket for Zoladex® during the period of December 1, 1997 through December 31, 2004, and (2) $500 out-of-pocket for Zoladex® outside of this period.

  Payment Calculation:

  Zoladex® = ($200 x 3) + $500 = $1,100

If consumer claims exceed the amount available, payments will be reduced on a proportional basis so that all valid claims can be paid.

### REMAINING IN THE SETTLEMENTS

**11.  What happens if I do nothing at all?**

If you do nothing, you will not get any money from the Settlements.  You will be bound by the Court's decisions.  Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against AstraZeneca about the legal issues in this case, ever again.

**12. What am I giving up to stay in the Settlements?**

Unless you exclude yourself from a Settlement, you can't sue AstraZeneca, continue to sue, or be part of any other lawsuit against AstraZeneca about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in each Settlement Agreement and describes exactly the legal claims that you give up if you remain in that Settlement. The Settlement Agreements are available at AstraZenecaSettlement.com.

### EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from a Settlement, and you want to keep the right to sue or continue to sue AstraZeneca on your own about the legal issues in this case, then you must take steps to get out of these Settlements.  This is called excluding yourself – or  "opting out" of the Class.

**13.  How do I get out of the Settlements?**

To exclude yourself from a Settlement, you must send a letter that includes the following:
- Your name, address and telephone number,
- A statement saying that you want to be excluded from either or both of the National AstraZeneca Consumer Class Settlement and the Massachusetts AstraZeneca Consumer Class Settlement in *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456,
- Note whether you want to exclude yourself from the Nationwide Settlement or Massachusetts Settlement (or both), and

- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2010**, to:

AstraZeneca Class 2 and 3 Settlement
P.O. Box 24644
West Palm Beach, FL 33416

| **14.  If I don't exclude myself, can I sue AstraZeneca for the same thing later?** |
|---|

No.  Unless you exclude yourself, you give up the right to sue AstraZeneca for the claims that the Settlements resolve.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

| **15.  If I exclude myself, can I still get a payment from the Settlements?** |
|---|

No.  You will not get any money if you exclude yourself from the Settlement(s).

### THE LAWYERS REPRESENTING YOU

| **16. Do I have a lawyer in this case?** |
|---|

Yes.  The Court has appointed the following law firms to represent you and other Class Members:

Hagens Berman Sobol Shapiro LLP
www.hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
        *and*
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142

Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901

Spector Roseman Kodroff & Willis, PC
www.srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Wallace LLP
www.wtwlaw.us
55 West Monroe Street, Suite 3300
Chicago, IL 60603

These lawyers are called Class Counsel.  You won't be charged personally for these lawyers, but they will ask the Court to award them a fee that will be paid out of the Settlement Funds.  More information about Class Counsel and their experience is available at the Web sites listed above.

| **17.   How will the lawyers be paid?** |
|---|

Class Counsel may ask the Court for attorneys' fees not to exceed one-third of the Settlement Funds (after deducting any amount that AstraZeneca gets back from any TPP exclusions) plus reimbursement of their expenses.   Class Counsel will also request each of the Class Representatives who helped the lawyers on behalf of the whole Class be compensated for the time spent helping litigate the case.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

### COMMENTING ON THE SETTLEMENTS

You can tell the Court that you don't agree with either Settlement or some part of them.

| 18. How do I tell the Court what I think about a Settlement? |
| --- |

If you have comments about, or disagree with, any aspect of the Settlement(s), including the requested attorneys' fees, you may express your views to the Court by writing to the address below. The written response should include your name, address, telephone number, the case name and number (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), a reference to the National AstraZeneca Consumer Class Settlement and/or the Massachusetts AstraZeneca Consumer Class Settlement, a brief explanation of your reasons for objection, and your signature. The response must be postmarked no later than **Month 00, 2010** and mailed to:

> Clerk of Court
> John Joseph Moakley U.S. Courthouse
> 1 Courthouse Way, Suite 2300
> Boston, Massachusetts 02210

| 19. What's the difference between objecting to and asking to be excluded? |
| --- |

Objecting is simply telling the Court that you don't like something about the Settlements. You can object to a Settlement only if you do not exclude yourself from that Settlement. Excluding yourself from a Settlement is telling the Court that you don't want to be part of that Settlement. If you exclude yourself from a Settlement, you have no basis to object to that Settlement because it no longer affects you.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve each of the Settlements and any requests for fees and expenses. You may attend and you may ask to speak, but you don't have to.

| 20. When and where will the Court decide whether to approve the Settlements? |
| --- |

The Court will hold a Fairness Hearing at **Time x.m.** on **Month 00, 2010**, at the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, MA 02210. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check AstraZenecaSettlement.com for updated information. At this hearing the Court will consider whether each of the Settlements is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and Class Representatives. If there are objections or comments, the Court will consider them at this time. After the hearing, the Court will decide whether to approve each of the Settlements. We do not know how long these decisions will take.

**For More Information: Call 1-888-812-1643 or Visit AstraZenecaSettlement.com**

**21.  Do I have to come to the hearing?**

Attendance is not required, even if you properly mailed a written response.  Class Counsel is prepared to answer the Court's questions on your behalf.  If you or your personal attorney still want to attend the hearing, you are more than welcome at your expense.  However, it is not necessary that you attend.  As long as the objection was postmarked before the deadline the Court will consider it.

**22.  May I speak at the hearing?**

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance should include the name and number of the lawsuit (*In re: Pharmaceutical Industry Average Wholesale Price Litigation*, 01-CV-12257-PBS, MDL No. 1456), and state that you wish to enter an appearance at the Fairness Hearing.  It also must include your name, address, telephone number, and signature.  Your "Notice of Appearance" must be postmarked no later than **Month 00, 2010**.  You cannot speak at Hearing if you asked to be excluded from a Settlement.

The Notice of Appearance must be filed with the Court at the address in Question 13.


GETTING MORE INFORMATION

**23.  How do I get more information?**

This Notice summarizes the Settlements. You can get more information about the Settlements at AstraZenecaSettlement.com, by calling 1-888-812-1643, sending an email to info@AstraZenecaSettlement.com or writing to AstraZeneca Class 2 and 3 Settlement, P.O. 24644, West Palm Beach, FL 33416.

# EXHIBIT 3

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| | **Exhibit 3** | |
| ALABAMA | Alexander City Outlook | 3,992 |
| ALABAMA | Anniston Star | 22,401 |
| ALABAMA | Birmingham News | 152,385 |
| ALABAMA | Gadsden Times | 18,218 |
| ALABAMA | Huntsville Times | 67,344 |
| ALABAMA | Mobile Register | 105,355 |
| ALABAMA | Selma (Al) Times-Journal | 4,566 |
| ALABAMA | Talladega Daily Home | 8,269 |
| ALABAMA | Tuscaloosa News | 32,399 |
| ALASKA | Anchorage Daily News | 53,764 |
| ALASKA | Fairbanks Daily News-Miner | 15,100 |
| ARIZONA | Verde Independent & The Bugle | 4,259 |
| ARIZONA | Flagstaff The Az Daily Sun | 10,602 |
| ARIZONA | The Kingman Daily Miner | 7,477 |
| ARIZONA | Mesa The Tribune | 98,510 |
| ARIZONA | The Daily Courier | 16,381 |
| ARIZONA | Today'S News-Herald | 12,234 |
| ARIZONA | Daily News-Sun | 8,793 |
| ARIZONA | Tucson Arizona Daily Star | 150,256 |
| ARIZONA | Yuma Daily Sun | 23,424 |
| ARKANSAS | Blytheville Courier News | 2,971 |
| ARKANSAS | Eldorado Sunday News | 14,527 |
| ARKANSAS | Fayetteville Nw Ar Dem-Gazette | 65,937 |
| ARKANSAS | Little Rock Ar Democrat-Gzt | 201,912 |
| CALIFORNIA | Bakersfield Californian | 55,840 |
| CALIFORNIA | Imperial Valley Press | 10,823 |
| CALIFORNIA | Fresno Bee | 140,392 |
| CALIFORNIA | Los Angeles Times | 941,914 |
| CALIFORNIA | Modesto Bee | 73,650 |
| CALIFORNIA | Escondido North County Times | 69,215 |
| CALIFORNIA | Redding Record Searchlight | 27,051 |
| CALIFORNIA | Riverside Press-Enterprise | 119,209 |
| CALIFORNIA | Merced Sun-Star | 16,855 |
| CALIFORNIA | Sacramento Bee | 266,542 |
| CALIFORNIA | San Luis Obispo Tribune | 39,921 |
| CALIFORNIA | Antelope Valley Press | 23,623 |
| CALIFORNIA | The Sentinel | 9,238 |
| CALIFORNIA | Napa Valley Register | 13,882 |
| CALIFORNIA | Lompoc Record | 4,473 |
| CALIFORNIA | Appeal-Democrat | 17,156 |
| CALIFORNIA | The Porterville Recorder | 6,600 |
| CALIFORNIA | Fresno Bee Sunday Select | 22,258 |
| CALIFORNIA | San Diego Union-Tribune | 310,869 |
| CALIFORNIA | San Diego Local Community Valu | 202,084 |
| CALIFORNIA | San Francisco Chronicle | 286,121 |
| CALIFORNIA | San Francisco - The Wrap | 25,845 |
| CALIFORNIA | Modesto Bee Sunday Select | 16,240 |
| CALIFORNIA | Sacramento Bee Sunday Select | 20,565 |
| CALIFORNIA | Santa Ana Orange Co Register | 280,000 |
| CALIFORNIA | The Orange County Register Tmc | 100,041 |
| CALIFORNIA | Santa Maria Times | 15,057 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| **Exhibit 3** | | |
| CALIFORNIA | Santa Rosa Press Democrat | 66,392 |
| CALIFORNIA | Stockton Record | 48,762 |
| CALIFORNIA | Victorville Daily Press | 28,217 |
| CALIFORNIA | Ventura County Star | 83,875 |
| COLORADO | Boulder Sunday Camera | 30,003 |
| COLORADO | Canon City Daily Record | 6,448 |
| COLORADO | Colorado Springs Gazette | 88,188 |
| COLORADO | Denver Post/Rocky Mountain Nws | 486,976 |
| COLORADO | Denver Post Sunday Select | 25,000 |
| COLORADO | Colorado Springs Gzt Sndy Slct | 10,000 |
| COLORADO | Grand Junction Dly Sentinel | 28,121 |
| COLORADO | Pueblo Sunday Chieftain | 48,667 |
| COLORADO | Montrose Daily Press | 5,321 |
| COLORADO | Times-Call | 21,019 |
| COLORADO | The Daily Reporter-Herald | 16,744 |
| COLORADO | The Chronicle-News | 3,201 |
| COLORADO | Windsor Now | 7,309 |
| CONNECTICUT | Connecticut Post | 74,151 |
| CONNECTICUT | Danbury News-Times | 30,866 |
| CONNECTICUT | Journal Inquirer | 37,862 |
| CONNECTICUT | The Record-Journal | 19,242 |
| CONNECTICUT | New Haven Register | 100,486 |
| CONNECTICUT | New London Day | 31,381 |
| CONNECTICUT | The Middletown Press | 5,755 |
| CONNECTICUT | The Herald | 10,540 |
| CONNECTICUT | Greenwich Time | 9,687 |
| CONNECTICUT | Stamford Advocate | 22,768 |
| CONNECTICUT | Waterbury S Republican-Am | 52,969 |
| CONNECTICUT | The Register Citizen | 7,547 |
| D.C. | Washington Post | 789,363 |
| DELAWARE | Dover Delaware State News | 17,709 |
| FLORIDA | Bradenton Herald | 51,531 |
| FLORIDA | Bradenton Herald Sunday Select | 9,803 |
| FLORIDA | Cape Coral Daily Breeze | 49,252 |
| FLORIDA | Ft.Walton Bch Nw Fl. Dly Ns | 33,018 |
| FLORIDA | Gainesville Sun | 42,560 |
| FLORIDA | Lakeland Ledger | 70,617 |
| FLORIDA | Lake City Reporter | 7,084 |
| FLORIDA | Miami Herald | 235,225 |
| FLORIDA | El Nuevo Miami Herald | 75,278 |
| FLORIDA | Naples Daily News | 88,518 |
| FLORIDA | Ocala Star-Banner | 43,098 |
| FLORIDA | Orlando Sentinel | 290,838 |
| FLORIDA | News Herald | 30,815 |
| FLORIDA | St. Petersburg Times | 417,807 |
| FLORIDA | Freedom Florida Newspapers | 32,000 |
| FLORIDA | Whats The Deal | 100,000 |
| FLORIDA | Orlando Sentinel Sunday Select | 20,000 |
| FLORIDA | Orlando El Sentinel | 80,446 |
| FLORIDA | Gainesville Sun Sunday Select | 10,000 |
| FLORIDA | Ocala Star-Banner Sunday Selec | 10,000 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| **Exhibit 3** | | |
| FLORIDA | Sarasota Herald-Tribune | 112,347 |
| FLORIDA | Treasure Coast News/Press-Trib | 103,973 |
| FLORIDA | Tampa Tribune & Times | 259,917 |
| FLORIDA | W. Palm Beach Post | 154,046 |
| FLORIDA | The Villages Daily Sun | 41,805 |
| FLORIDA | The Reporter | 28,794 |
| GEORGIA | Americus Times-Recorder | 4,000 |
| GEORGIA | Atlanta Journal And Const. | 397,926 |
| GEORGIA | Reach | 100,000 |
| GEORGIA | Columbus Ledger-Enquirer | 44,022 |
| GEORGIA | Cordele Dispatch | 3,508 |
| GEORGIA | Columbus Ledger-Enq Sndy Slct | 11,671 |
| GEORGIA | Macon Telegraph | 65,086 |
| GEORGIA | The Moultrie Observer | 5,963 |
| GEORGIA | The Coastal Courier | 4,330 |
| GEORGIA | Bryan County News | 2,156 |
| GEORGIA | Rome News Tribune | 15,069 |
| GEORGIA | Macon Telegraph Sunday Select | 13,373 |
| GEORGIA | Statesboro Herald | 7,409 |
| GEORGIA | The Valdosta Daily Times | 16,066 |
| GEORGIA | The Tifton Gazette | 6,643 |
| GEORGIA | Thomasville Times-Enterprise | 8,228 |
| HAWAII | Wailuku Maui News | 21,692 |
| IDAHO | The Idaho Statesman | 73,247 |
| IDAHO | Boise Id Statesman Sunday Slct | 21,280 |
| IDAHO | Idaho Falls Post Register | 27,940 |
| IDAHO | Lewiston-Clarkson Morning Trib | 24,901 |
| IDAHO | Nampa/Caldwl Idaho Prs-Trib | 23,356 |
| IDAHO | Pocatello Id. State Journal | 17,985 |
| IDAHO | Standard Journal | 4,450 |
| IDAHO | Twin Falls Times-News | 20,964 |
| ILLINOIS | Telegraph | 21,023 |
| ILLINOIS | Belleville News-Democrat | 56,011 |
| ILLINOIS | Belleville Community Newspaper | 7,878 |
| ILLINOIS | Bloomington Pantagraph | 43,954 |
| ILLINOIS | Carbondale S. Illinoisian | 32,469 |
| ILLINOIS | Centralia Morning Sentinel | 13,577 |
| ILLINOIS | Champaign News-Gazette | 44,608 |
| ILLINOIS | Canton Daily Ledger | 4,493 |
| ILLINOIS | Chicago Tribune | 772,794 |
| ILLINOIS | Redeye | 97,532 |
| ILLINOIS | Decatur Herald & Review | 44,044 |
| ILLINOIS | Chicago Tribune Sunday Select | 40,000 |
| ILLINOIS | Chicago Fin De Semana | 270,300 |
| ILLINOIS | Galesburg Register-Mail | 11,266 |
| ILLINOIS | Freeport The Journal Standard | 10,644 |
| ILLINOIS | Star Courier | 4,487 |
| ILLINOIS | Peoria Journal Star | 74,442 |
| ILLINOIS | Quincy Herald-Whig | 22,319 |
| ILLINOIS | The Times | 13,943 |
| ILLINOIS | Macomb Journal | 4,279 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| | **Exhibit 3** | |
| ILLINOIS | Daily Review Atlas | 1,816 |
| ILLINOIS | Pekin Daily Times | 7,614 |
| ILLINOIS | Journal-Courier | 11,626 |
| ILLINOIS | Springfield State Journal-Reg | 60,277 |
| INDIANA | Anderson In The Herald Bulleti | 19,904 |
| INDIANA | Bloomtn-Bedford Hoosier Times | 35,446 |
| INDIANA | The Republic | 19,773 |
| INDIANA | Evansville Courier & Press | 73,541 |
| INDIANA | Fort Wayne Journal Gazette | 105,462 |
| INDIANA | The Daily Journal | 14,989 |
| INDIANA | Munster Times | 92,856 |
| INDIANA | Kokomo Tribune | 19,731 |
| INDIANA | Logansport In Pharos-Tribune | 8,778 |
| INDIANA | N. Albany/Jfsnvl Eve News/Trib | 12,286 |
| INDIANA | The Goshen News | 10,793 |
| INDIANA | The Daily Reporter | 8,388 |
| INDIANA | Times | 3,290 |
| INDIANA | Munster Times Sunday Select | 10,000 |
| INDIANA | The Tribune | 6,958 |
| INDIANA | South Bend Tribune | 83,389 |
| INDIANA | Terre Haute Tribune-Star | 24,376 |
| IOWA | Ames, Ia Tribune | 13,818 |
| IOWA | Cedar Rapids Gazette | 65,398 |
| IOWA | Davenport Quad-City Times | 64,932 |
| IOWA | Telegraph Herald | 31,720 |
| IOWA | Fort Dodge Messenger | 16,869 |
| IOWA | Marshalltown Times-Republican | 8,986 |
| IOWA | Mason City Sunday-Globe | 19,441 |
| IOWA | Muscatine Journal | 7,416 |
| IOWA | Sioux City Journal | 38,489 |
| IOWA | Waterloo Courier | 47,778 |
| KANSAS | Great Bend Tribune | 6,056 |
| KANSAS | Manhattan Mercury | 9,738 |
| KANSAS | Salina Journal | 27,961 |
| KANSAS | Wichita Eagle | 113,579 |
| KANSAS | Wichita Eagle Sunday Select | 14,543 |
| KENTUCKY | Ashland Sunday Independent | 15,795 |
| KENTUCKY | Bowling Green Daily News | 23,860 |
| KENTUCKY | The Kentucky Advocate | 9,272 |
| KENTUCKY | Elizabethtown News-Enterprise | 19,500 |
| KENTUCKY | Glasgow, Ky Daily Times | 8,598 |
| KENTUCKY | Henderson Ky The Gleaner | 10,309 |
| KENTUCKY | Lexington Herald-Leader | 115,816 |
| KENTUCKY | The Ledger Independent | 7,460 |
| KENTUCKY | Lexington Hrld-Ldr Sunday Slct | 15,000 |
| KENTUCKY | Somerset The Commonwealth Jrnl | 8,336 |
| LOUISIANA | Baton Rouge Sunday Advocate | 111,885 |
| LOUISIANA | Crowley Post Signal | 3,800 |
| LOUISIANA | La St Np/Eunice/Abbeville/Vill | 11,595 |
| LOUISIANA | Houma Daily Courier | 16,779 |
| LOUISIANA | Lake Charles American Press | 35,253 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| **Exhibit 3** | | |
| LOUISIANA | New Orleans Time-Picayune | 170,502 |
| LOUISIANA | Ruston Daily Leader | 5,200 |
| MAINE | Portland Me. Sunday Telegram | 82,979 |
| MARYLAND | Baltimore Sunday Sun | 344,118 |
| MARYLAND | Baltimore Weeklies | 105,623 |
| MARYLAND | Baltimore Sun Sunday Select | 20,000 |
| MARYLAND | The Cumberland Times-News | 26,589 |
| MARYLAND | Hagerstown Herald Mail | 33,365 |
| MASSACHUSETTS | Boston Sunday Globe | 375,651 |
| MASSACHUSETTS | Cape Cod Times | 43,143 |
| MASSACHUSETTS | New Bedford Sunday Std-Tms | 26,940 |
| MASSACHUSETTS | Springfield Sunday Republican | 102,015 |
| MASSACHUSETTS | Worcester Sunday Telegram | 81,461 |
| MICHIGAN | The Daily Telegram | 15,202 |
| MICHIGAN | Annarbor.Com | 41,825 |
| MICHIGAN | The Huron Daily Tribune | 6,040 |
| MICHIGAN | Bay City Times | 31,968 |
| MICHIGAN | Cadillac News | 8,135 |
| MICHIGAN | Dearborn Press & Guide | 10,652 |
| MICHIGAN | Flint Journal | 74,375 |
| MICHIGAN | Grand Rapids Press | 157,155 |
| MICHIGAN | Jackson Citizen Patriot | 29,649 |
| MICHIGAN | Kalamazoo Gazette | 56,832 |
| MICHIGAN | Marquette Mining Journal | 14,607 |
| MICHIGAN | Mount Pleasant Morning Sun | 9,140 |
| MICHIGAN | Muskegon Sunday Chronicle | 38,095 |
| MICHIGAN | Monroe Sunday News | 21,569 |
| MICHIGAN | Midland Daily News | 15,641 |
| MICHIGAN | The County Press | 9,859 |
| MICHIGAN | Pontiac Oakland Press | 79,556 |
| MICHIGAN | Petoskey News-Review | 9,431 |
| MICHIGAN | Royal Oak Daily Tribune | 7,462 |
| MICHIGAN | Mount Clemens Macomb Daily | 65,770 |
| MICHIGAN | Saginaw News | 39,156 |
| MICHIGAN | The Weekend Voice | 15,983 |
| MICHIGAN | Advisor & Source Newspapers | 116,612 |
| MICHIGAN | Southgate The News-Herald | 40,148 |
| MICHIGAN | Traverse City Record-Eagle | 28,082 |
| MINNESOTA | Albert Lea Tribune | 5,999 |
| MINNESOTA | Austin Daily Herald | 5,011 |
| MINNESOTA | Bemidji Pioneer | 9,432 |
| MINNESOTA | West Central Tribune | 14,318 |
| MINNESOTA | Duluth News-Tribune Herald | 49,141 |
| MINNESOTA | Faribault Daily News | 5,411 |
| MINNESOTA | Mankato Free Press | 20,293 |
| MINNESOTA | New Ulm Journal | 7,910 |
| MINNESOTA | Northfield News | 4,650 |
| MINNESOTA | Owatonna People'S Press | 6,603 |
| MINNESOTA | Republican Eagle | 5,870 |
| MINNESOTA | St. Paul Pioneer Press | 236,503 |
| MINNESOTA | Star Tribune | 493,027 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| | **Exhibit 3** | |
| MINNESOTA | Winona Daily News | 10,104 |
| MINNESOTA | The Daily Globe | 8,328 |
| MISSISSIPPI | Biloxi-Gulfport Sun Herald | 41,780 |
| MISSISSIPPI | Brookhaven Daily Leader | 6,040 |
| MISSISSIPPI | Columbus Commercial Dispatch | 16,186 |
| MISSISSIPPI | Clarksdale Press Register | 2,550 |
| MISSISSIPPI | Delta Democrat Times | 7,511 |
| MISSISSIPPI | Greenwood Commonwealth | 6,449 |
| MISSISSIPPI | Laurel Leader-Call | 6,635 |
| MISSISSIPPI | Mccomb Enterprise-Journal | 10,308 |
| MISSISSIPPI | The Meridian Star | 12,919 |
| MISSISSIPPI | Picayune Item | 4,926 |
| MISSISSIPPI | Tupelo N.E. Miss. Daily Jrnl | 35,055 |
| MISSISSIPPI | Vicksburg Post | 12,267 |
| MISSOURI | Cape Girardeau Southern Misso | 15,713 |
| MISSOURI | Columbia Missourian | 4,136 |
| MISSOURI | Dexter Daily Statesman | 3,305 |
| MISSOURI | The Fulton Sun | 3,614 |
| MISSOURI | Kansas City Star | 314,449 |
| MISSOURI | Jefferson City Sunday Nws Trb | 20,969 |
| MISSOURI | Joplin Globe | 29,414 |
| MISSOURI | Kennett Daily Dunkin Democrat | 3,930 |
| MISSOURI | Nevada Sunday Journal | 6,000 |
| MISSOURI | Park Hills (Mo) Daily Journal | 7,383 |
| MISSOURI | Poplar Bluff Daily American Re | 11,003 |
| MISSOURI | St. Joseph News-Press | 31,982 |
| MISSOURI | St.Louis Post-Dispatch | 378,635 |
| MISSOURI | Suburban Newspapers Of Greater | 365,818 |
| MISSOURI | Sedalia Democrat | 9,407 |
| MISSOURI | Kansas City Star Sunday Select | 30,085 |
| MISSOURI | Sikeston Standard Democrat | 5,759 |
| MONTANA | Billings Gazette | 46,929 |
| MONTANA | Bozeman Daily Chronicle | 15,627 |
| MONTANA | Butte Montana Standard | 12,833 |
| MONTANA | Helena Independent Record | 13,363 |
| MONTANA | Kalispell Daily Inter Lake | 15,562 |
| MONTANA | Missoula Missoulian | 30,170 |
| NEBRASKA | Beatrice Daily Sun | 6,038 |
| NEBRASKA | The Columbus Telegram | 8,957 |
| NEBRASKA | The Grand Island Independent | 20,349 |
| NEBRASKA | Journalstar | 72,579 |
| NEBRASKA | The North Platte Telegraph | 10,994 |
| NEBRASKA | Omaha Sunday World-Herald | 184,923 |
| NEBRASKA | Scottsbluff Star-Herald | 13,788 |
| NEBRASKA | York News Times | 3,765 |
| NEVADA | Carson City Nevada Appeal | 19,394 |
| NEVADA | Elko Daily Free Press | 6,147 |
| NEVADA | Lahontan Vlly Nws & Fallon Eag | 2,799 |
| NEVADA | Las Vegas Review-Jrnl & Sun | 197,312 |
| NEVADA | Sparks Tribune | 2,770 |
| NEW HAMPSHRE | Manchester Nh Sunday News | 64,702 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---:|
| | **Exhibit 3** | |
| NEW HAMPSHRE | Portsmouth Herald Sunday | 14,157 |
| NEW HAMPSHRE | The Keene Sentinel | 10,945 |
| NEW JERSEY | The Press Of Atlantic City | 72,152 |
| NEW JERSEY | Bergen Co. Rcd/No. Jersy H Nws | 178,429 |
| NEW JERSEY | Willingboro Burlgtn Co Times | 30,498 |
| NEW JERSEY | My Community Trend | 300,005 |
| NEW JERSEY | Hunterdon Observer | 48,204 |
| NEW JERSEY | Newark Sunday Star-Ledgr | 358,537 |
| NEW JERSEY | Suburban Trends | 8,139 |
| NEW JERSEY | The New Jersey Herald | 16,733 |
| NEW JERSEY | The Jersey Journal | 23,312 |
| NEW JERSEY | Salem Today'S Sunbeam | 8,064 |
| NEW JERSEY | Trenton Times | 43,528 |
| NEW JERSEY | Woodbury Gloucester Cty Times | 21,571 |
| NEW MEXICO | Albuquerque Sunday Journal | 122,251 |
| NEW MEXICO | Clovis News Journal | 6,566 |
| NEW MEXICO | Hobbs Daily News-Sun | 9,927 |
| NEW MEXICO | Portales News-Tribune | 1,670 |
| NEW MEXICO | Roswell Daily Record | 10,585 |
| NEW MEXICO | Santa Fe New Mexican | 22,809 |
| NEW YORK | Albany Sunday Times Union | 140,519 |
| NEW YORK | Auburn Citizen | 11,498 |
| NEW YORK | Buffalo News | 244,264 |
| NEW YORK | Canandaigua Sunday Messenger | 10,666 |
| NEW YORK | Corning Sunday Leader | 10,241 |
| NEW YORK | Gloversville Leader-Herald | 10,683 |
| NEW YORK | Geneva S Finger Lakes Times | 16,651 |
| NEW YORK | Hornell Tribune | 8,935 |
| NEW YORK | Middletown Sunday Record | 72,898 |
| NEW YORK | New York Post | 333,590 |
| NEW YORK | Oneonta Daily Star | 13,537 |
| NEW YORK | Ogdensburg (Ny) Advance News | 8,948 |
| NEW YORK | Plattsburgh Press-Repubublican | 19,323 |
| NEW YORK | Sunday Freeman | 19,486 |
| NEW YORK | Oneida Daily Dispatch | 6,510 |
| NEW YORK | Glens Falls Post-Star | 30,029 |
| NEW YORK | Staten Island Sunday Advance | 55,759 |
| NEW YORK | Staten Island Shore Editions | 54,000 |
| NEW YORK | Syracuse Post-Standard | 142,476 |
| NO CAROLINA | Times-News | 23,900 |
| NO CAROLINA | The Chapel Hill | 17,035 |
| NO CAROLINA | Charlotte Observer | 226,030 |
| NO CAROLINA | Elizabeth City Daily Advance | 9,215 |
| NO CAROLINA | The Durham News | 59,481 |
| NO CAROLINA | Fayetteville Observer | 58,080 |
| NO CAROLINA | Greensboro News & Record | 89,275 |
| NO CAROLINA | Greenville Daily Reflector | 20,627 |
| NO CAROLINA | Hendersonville Times-News | 14,143 |
| NO CAROLINA | The Daily News | 17,332 |
| NO CAROLINA | Raleigh News & Observer | 188,030 |
| NO CAROLINA | Rocky Mount Telegram | 14,009 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---|
| | **Exhibit 3** | |
| NO CAROLINA | Sunday News-Argus | 19,283 |
| NO CAROLINA | The Gaston Gazette | 25,411 |
| NO CAROLINA | The Free Press | 10,238 |
| NO CAROLINA | The Sun-Journal | 14,440 |
| NO CAROLINA | The Star | 11,681 |
| NO CAROLINA | Southern Pines - The Pilot | 14,500 |
| NO CAROLINA | Washington Daily News | 8,544 |
| NO CAROLINA | Wilmington Sunday Star-News | 46,545 |
| NO CAROLINA | Winston-Salem Journal | 80,892 |
| NO DAKOTA | The Bismarck Tribune | 29,507 |
| NO DAKOTA | Dickinson Press | 6,565 |
| NO DAKOTA | Fargo Forum | 53,052 |
| NO DAKOTA | Minot Daily News | 18,377 |
| NO DAKOTA | The Jamestown Sun | 6,400 |
| NO DAKOTA | Grand Forks Herald | 28,654 |
| OHIO | Akron Beacon Journal | 134,030 |
| OHIO | Ashland Times-Gazette | 11,183 |
| OHIO | Athens News-Messenger | 10,190 |
| OHIO | Canton Repository | 71,254 |
| OHIO | Cambridge Daily Jeffersonian | 11,698 |
| OHIO | Cleveland Plain Dealer | 361,477 |
| OHIO | Cleveland Plain Dealer Wrap-Up | 60,000 |
| OHIO | Dayton Daily News | 141,808 |
| OHIO | Dayton Cox Southwest Oh Group | 84,500 |
| OHIO | Columbus Suburban News Pubs | 131,000 |
| OHIO | The Crescent-News | 17,662 |
| OHIO | Circleville Herald | 6,600 |
| OHIO | East Liverpool The Review | 7,574 |
| OHIO | Elyria Chron-Telegram | 24,065 |
| OHIO | Hamilton Journal-News | 20,145 |
| OHIO | Ironton (Oh) Tribune | 7,956 |
| OHIO | News | 37,525 |
| OHIO | Logan Daily News | 3,705 |
| OHIO | Middletown Journal | 16,771 |
| OHIO | New Philadelphia Tms Reporter | 19,223 |
| OHIO | The Salem News | 4,845 |
| OHIO | Springfield News-Sun | 27,301 |
| OHIO | Toledo Blade | 144,394 |
| OHIO | Waverly News-Watchman | 3,949 |
| OHIO | The Daily Record | 22,616 |
| OHIO | Youngstown Vindicator | 64,656 |
| OKLAHOMA | Oklahoma City Sunday Oklahom | 205,170 |
| OKLAHOMA | Buyers Edge | 200,723 |
| OKLAHOMA | Tulsa World | 140,971 |
| OREGON | Democrat-Herald/Gazette-Times | 26,448 |
| OREGON | Bend Bulletin | 31,034 |
| OREGON | The World | 11,540 |
| OREGON | Eugene Register-Guard | 63,241 |
| OREGON | Klamath Falls Herald And News | 14,953 |
| OREGON | Medford Mail Tribune | 26,727 |
| OREGON | Ontario Argus Observer | 5,984 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---:|
| | **Exhibit 3** | |
| OREGON | Pendleton East Oregonian | 8,015 |
| OREGON | Portland Sunday Oregonian | 293,171 |
| OREGON | Roseburg News-Review | 17,897 |
| PENNSYLVANIA | Allentown Morning Call | 123,164 |
| PENNSYLVANIA | Allentown Call Sunday Select | 8,700 |
| PENNSYLVANIA | Beaver County Times | 39,151 |
| PENNSYLVANIA | The Sentinel | 14,561 |
| PENNSYLVANIA | Du Bois Tri-County Sunday | 14,601 |
| PENNSYLVANIA | Doylestown Dly Intelligencer | 39,749 |
| PENNSYLVANIA | The Express-Times | 42,647 |
| PENNSYLVANIA | Erie Times-News | 72,208 |
| PENNSYLVANIA | Harrisburg Sunday Patriot-News | 119,875 |
| PENNSYLVANIA | Johnstown Sunday Trib-Democrat | 37,459 |
| PENNSYLVANIA | Lancaster Sunday News | 95,872 |
| PENNSYLVANIA | Lev/Bristol Bucks Cty Cr Tms | 53,150 |
| PENNSYLVANIA | Pittsburgh Post-Gazette | 289,716 |
| PENNSYLVANIA | Philadelphia Inquirer | 517,807 |
| PENNSYLVANIA | Reading Eagle | 74,270 |
| PENNSYLVANIA | Gettysburg Times | 8,984 |
| PENNSYLVANIA | The Derrick News/News-Herald | 22,145 |
| PENNSYLVANIA | Harrisburg Ptrt-Nws Sndy Slct | 8,000 |
| PENNSYLVANIA | The Morning Times | 5,223 |
| PENNSYLVANIA | The Herald | 18,115 |
| PENNSYLVANIA | State College Centre Dly Tms | 27,337 |
| PENNSYLVANIA | Stroudsburg Pocono Record | 19,942 |
| PENNSYLVANIA | Sunbury Daily Item | 24,208 |
| PENNSYLVANIA | Uniontown Herald-Standard | 23,088 |
| PENNSYLVANIA | Williamsport Sun-Gazette | 30,446 |
| PENNSYLVANIA | Wilkes-Barre Leader | 53,450 |
| RHODE ISLAND | Providence Sunday Journal | 141,688 |
| SO CAROLINA | Anderson Independent-Mail | 30,067 |
| SO CAROLINA | Beaufort, Sc Gazette | 10,116 |
| SO CAROLINA | Charleston Post And Courier | 95,289 |
| SO CAROLINA | The State | 105,872 |
| SO CAROLINA | Columbia State Sunday Select | 17,154 |
| SO CAROLINA | Greenwood Index-Journal | 13,846 |
| SO CAROLINA | Hilton Head Island Packet | 20,605 |
| SO CAROLINA | Myrtle Beach Sun News | 53,118 |
| SO CAROLINA | The Herald | 27,774 |
| SO CAROLINA | The Times And Democrat | 13,652 |
| SO CAROLINA | Journal | 39,800 |
| SO CAROLINA | Myrtle Beach Sun News Sun Slct | 11,264 |
| SO CAROLINA | Spartanburg Herald-Journal | 44,837 |
| SO CAROLINA | Sumter The Item | 15,817 |
| SO DAKOTA | American News | 15,221 |
| SO DAKOTA | Lawrence County Journal | 2,000 |
| SO DAKOTA | Huron Plainsman | 5,594 |
| SO DAKOTA | Rapid City Journal | 29,987 |
| SO DAKOTA | The Daily Republic | 11,835 |
| SO DAKOTA | Watertown Public Opinion | 12,140 |
| TENNESSEE | Chattanooga Times/Free Press | 97,729 |

| STATE | NEWSPAPERS | CIRCULATION |
|-------|-----------|-------------|
| | **Exhibit 3** | |
| TENNESSEE | Dyersburg State Gazette | 5,642 |
| TENNESSEE | Johnson City Press | 29,490 |
| TENNESSEE | Knoxville News-Sentinel | 118,773 |
| TENNESSEE | Memphis Commercial Appeal | 182,854 |
| TENNESSEE | Morristown Citizen Tribune | 23,442 |
| TENNESSEE | The Murfreesboro Post | 24,695 |
| TENNESSEE | Shelbyville Times-Gazette | 6,850 |
| TENNESSEE | Tullahoma The Sunday News | 10,300 |
| TEXAS | Abilene Reporter-News | 36,063 |
| TEXAS | Austin American-Statesman | 168,822 |
| TEXAS | Beaumont Enterprise | 32,713 |
| TEXAS | Brownwood Bulletin | 6,837 |
| TEXAS | Brownsville Herald | 17,921 |
| TEXAS | Corpus Christi Caller-Times | 62,966 |
| TEXAS | Dallas Morning News | 373,031 |
| TEXAS | Dallas-Al Dia | 107,621 |
| TEXAS | Dallas-Briefing | 200,187 |
| TEXAS | Del Rio News-Herald | 4,324 |
| TEXAS | El Diario De El Paso | 6,930 |
| TEXAS | Ft. Worth Star-Telegram | 249,676 |
| TEXAS | Ft Worth Star-Tlgrm Sndy Slct | 37,432 |
| TEXAS | Harlingen Vly Morning Star | 19,939 |
| TEXAS | Houston Chronicle | 526,440 |
| TEXAS | Kerrville Daily Times | 10,516 |
| TEXAS | Longview News-Journal | 28,662 |
| TEXAS | Marshall News Messenger | 6,236 |
| TEXAS | Monitor | 45,569 |
| TEXAS | Odessa American | 18,244 |
| TEXAS | Paris News | 10,199 |
| TEXAS | Plainview Daily Herald | 4,747 |
| TEXAS | Houston Chronicle Smc | 315,000 |
| TEXAS | San Angelo Standard-Times | 22,373 |
| TEXAS | San Antonio Express-News | 258,309 |
| TEXAS | Midland Reporter-Telegram | 19,785 |
| TEXAS | Temple, Tx Daily Telegram | 20,898 |
| TEXAS | Tyler Courier-Times--Telegraph | 35,200 |
| TEXAS | Texarkana Gazette | 29,284 |
| TEXAS | Waco Tribune-Herald | 38,614 |
| TEXAS | Victoria Advocate | 31,663 |
| TEXAS | Mid Valley | 21,750 |
| TEXAS | Wichita Falls Times Record Nws | 25,847 |
| UTAH | Logan Herald Journal | 17,434 |
| UTAH | Salt Lake Tribune, Deseret Nws | 209,261 |
| UTAH | Daily Herald | 42,668 |
| UTAH | Salt Lake Tribune Sunday Slct | 11,293 |
| VERMONT | Rutland Hrld/Time-Argus | 21,848 |
| VIRGINIA | Martinsville Bulletin | 17,141 |
| VIRGINIA | Newport News/Hampton Dly Prs. | 90,914 |
| VIRGINIA | Norfolk Virginian-Pil & Lgr-St | 178,590 |
| VIRGINIA | Richmond Times-Dispatch | 171,510 |
| VIRGINIA | Roanoke Times | 91,186 |

| STATE | NEWSPAPERS | CIRCULATION |
|---|---|---:|
| | **Exhibit 3** | |
| VIRGINIA | Norfolk Va-Pilot Sunday Select | 14,000 |
| W VIRGINIA | The Register | 24,266 |
| W VIRGINIA | Bluefield Daily Telegraph | 16,710 |
| W VIRGINIA | Charleston Sunday Gaz-Mail | 68,111 |
| W VIRGINIA | Clarksburg S Exponent-Tele | 19,010 |
| W VIRGINIA | Fairmont Times-West Virginian | 10,457 |
| W VIRGINIA | Martinsburg Sunday Journal | 16,924 |
| W VIRGINIA | Morgantown Dominion Post | 22,524 |
| W VIRGINIA | Parkersburg News | 28,094 |
| W VIRGINIA | Wheeling Sunday News-Register | 32,902 |
| WASHINGTON | The Bellingham | 23,144 |
| WASHINGTON | Kitsap Sun | 24,124 |
| WASHINGTON | Ellensburg Daily Record | 5,332 |
| WASHINGTON | Longview Daily News | 19,824 |
| WASHINGTON | Pasco Tri-City Herald | 39,751 |
| WASHINGTON | The Olympian | 31,456 |
| WASHINGTON | Seattle Times/Post-Intl | 356,944 |
| WASHINGTON | Spokane Spokesman-Review | 95,534 |
| WASHINGTON | The News Tribune | 99,152 |
| WASHINGTON | The Columbian | 42,767 |
| WASHINGTON | Union-Bulletin | 13,893 |
| WASHINGTON | Tacoma News Tribune Sndy Slct | 20,952 |
| WASHINGTON | Yakima Herald-Republic | 34,369 |
| WISCONSIN | News Republic/Citizen/Register | 18,677 |
| WISCONSIN | Chippewa Valley Newspapers | 9,162 |
| WISCONSIN | Eau Claire Leader-Telegram | 29,000 |
| WISCONSIN | La Crosse Tribune | 35,524 |
| WISCONSIN | Kenosha News | 26,425 |
| WISCONSIN | Madison Wisc State Journal | 125,039 |
| WISCONSIN | Racine Journal Times | 29,283 |
| WISCONSIN | Rhinelander (Wi) Daily News | 3,347 |
| WYOMING | Casper Star-Tribune | 26,496 |
| | | **32,420,340** |

# EXHIBIT 4

# If You Paid for Zoladex®,

## You Could Receive Benefits From Class Action Settlements

---

### Zoladex® treats prostate cancer, advanced breast cancer, endometriosis and fibrosis.

---

There are two Settlements in a class action concerning the price of Zoladex®. You can get a refund if you paid cash or a percentage co-payment for Zoladex®. A percentage co-payment varies with the cost of the drug. **The lawsuit does not concern the safety of Zoladex®.**

### What is the lawsuit about?

The lawsuit claims that AstraZeneca reported false and inflated average wholesale prices ("AWP") for Zoladex®. The reported AWPs are used to set drug prices that are paid by private health insurers and consumers paying cash or making percentage co-payments under private health insurance plans. The Settlements are not an admission of wrongdoing or an indication that any law was violated. AstraZeneca has entered into the Settlements to avoid further expense, and to avoid the risks of uncertain litigation. AstraZeneca denies any wrongdoing.

### Am I included?

You are included if you paid cash or made a percentage co-payment for Zoladex® anytime from January 1, 1991 to June 11, 2010. You are not included if you made a flat co-payment or were never obligated to make a co-payment at all. Payments made under Medicare Part B are not included in these Settlements.

### What do the Settlements Provide?

AstraZeneca will pay $90 million in the Nationwide Settlement ($40 million will go to a separate settlement with certain large insurers). AstraZeneca will pay $13 million in the Massachusetts Settlement. After deducting attorneys' fees (not to exceed one-third of both Settlements), expenses, and other costs, the net fund will be distributed in cash to consumers, as well as to insurers and other entities who are included. Up to 11.11% of the net fund in each of the Nationwide Settlement and the Massachusetts Settlement will go to consumers.

### What can I get from the Settlements?

The amount of money you are eligible to receive will depend on how much Zoladex® you purchased, and on how many Class Members file valid claims. For claims during the years 1997 through 2003 you may receive up to three times your out-of-pocket payments for Zoladex®.

### How do I get a payment?

You will need to submit a Claim Form by **Month 00, 2010** to get a payment. Get a Claim Form at the website or by calling the toll-free number.

### What are my other rights?

If you do not want to be legally bound by a Settlement, you must exclude yourself from that Settlement. The deadline to exclude yourself from a Settlement is **Month 00, 2010**. If you stay in a Settlement you will not be able to sue AstraZeneca for any claims relating to that Settlement. If you stay in a Settlement, you may object to that Settlement by **Month 00, 2010**.

The Court will hold a hearing on **Month 00, 2010** to consider whether to approve the Settlements and a request for attorneys' fees. The Court has appointed attorneys to represent the Class. You or your own lawyer may ask to appear and speak at the hearing at your own expense.

---

**For More Information:   1-800-000-0000   www.AstrazenecaSettlement.com**

# **EXHIBIT E**

## **[PROPOSED] PRELIMINARY APPROVAL ORDER**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL MASSACHUSETTS CLASS ACTIONS CONCERNING CLASSES 2 & 3 | Judge Patti B. Saris |

**[REVISED PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE
SETTLEMENT AGREEMENT AND RELEASE OF ASTRAZENECA RELATED TO
MASSACHUSETTS CLASSES TWO AND THREE, DIRECTING NOTICE TO
THE CLASSES, AND SCHEDULING FAIRNESS HEARING**

WHEREAS, this matter has come before the Court pursuant to a Joint Motion for Entry of an Order Granting Preliminary Approval of the Settlement Agreement and Release of AstraZeneca Related to Massachusetts Classes Two and Three and Approving the Form and Method of Notice to the Classes (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and the Parties for purposes of settlement; and

WHEREAS, this Court has conducted a preliminary approval hearing on July 12, 2010, has considered all of the submissions related to the Motion, and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

**I.      PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

1.      The terms of the Revised Settlement Agreement and Release of AstraZeneca Related to Massachusetts Classes Two and Three, dated August 4, 2010, including all Exhibits thereto (the "Agreement"), attached to the Motion, are hereby preliminarily approved, subject to

further consideration thereof at the Fairness Hearing provided for below.  This Order

incorporates herein, and makes a part hereof, the Agreement, as well as all Exhibits thereto.

Unless otherwise provided herein, the terms defined in the Agreement shall have the same

meanings herein.  The Agreement was entered into only after extensive arm's-length negotiation

by experienced counsel and with the assistance and oversight of MDL Mediator Eric Green.  The

Court finds that the Class Settlement embodied in the Agreement (the "Class Settlement") is

sufficiently within the range of reasonableness so that notice of the Class Settlement should be

given as provided in paragraphs 9 and 10 of this Order.  In making this determination, the Court

has considered the current posture of this litigation and the risks and benefits to the parties

involved in both settlement of these claims and continuation of the litigation.

## II.      THE CLASS, REPRESENTATIVES, AND CLASS COUNSEL

2.      The Settlement Classes are defined as follows:

a.      <u>Third-Party Payor MediGap Supplemental Insurance Class ("Class 2")</u>

All TPPs in the United States who, from January 1, 1991 through
January 1, 2005, made, or incurred an obligation to make,
reimbursements for any portion of a Medicare Part B co-payment
for Zoladex® purchased in the Commonwealth of Massachusetts.

b.      <u>Consumer and Third-Party Payor Class For Payments Made Outside the
Medicare Context ("Class 3")</u>

All natural persons in the United States who made, or incurred an
obligation to make, a non-Medicare Part B payment for Zoladex®
purchased in of the Commonwealth of Massachusetts, and all TPPs
in the United States who made, or incurred an obligation to make,
non-Medicare Part B reimbursements for Zoladex® purchased in
of the Commonwealth of Massachusetts, during the period from
January 1, 1991, through June 11, 2010.

Excluded from each of the Settlement Classes are the AstraZeneca Releasees as defined in the

Agreement.  (The exclusion of AstraZeneca "employees" from the Settlement Classes shall not

affect the eligibility of any ERISA plans or other TPPs for settlement benefits regardless whether

any plan participants might be excluded "employees.")  Additionally excluded from each of the

Settlement Classes are the following: (1) all natural persons who only paid flat co-payments, and

not any percentage co-payments, for Zoladex®; and (2) all federal, state, and local governmental

entities in the United States, except any such governmental agencies or programs that made or

incurred an obligation to make a reimbursement for Zoladex® as part of a health benefit plan for

their employees, but only with respect to such payments.

     3.    The Court preliminarily finds that the proposed Settlement Classes meet all the

applicable requirements of FED. R. CIV. P. 23(a) and (b)(3), and hereby certifies the Settlement

Classes for settlement purposes only.  The Court hereby preliminarily finds, in the specific

context of this Class Settlement, that:

     a.    <u>Numerosity.</u>

Classes 2 and 3 consist of tens of thousands of members located
throughout the United States, and satisfy the numerosity
requirement of FED. R. CIV. P. 23(a).  Joinder of these widely-
dispersed, numerous Class Members into one suit would be
impracticable.

     b.    <u>Commonality.</u>

Common questions of law and fact with regard to the alleged
activities of the AstraZeneca Releasees exist for each of the
Members of Classes 2 and 3 in this case.  These issues are central
to this case and are sufficient to establish commonality.

     c.    <u>Typicality.</u>

Plaintiffs have claimed during this litigation that unfair sales and
marketing activities, including but not limited to, unlawful
manipulation of Average Wholesale Prices ("AWPs") reported by
various industry publications for the AstraZeneca Releasees' drugs
violated various state consumer protection statutes, RICO, and
other state and federal laws.  As a result, Class Members allegedly
paid more for these drugs than they would have in the absence of
the alleged unlawful conduct.  These claims are typical of every
Member of each of Classes 2 and 3.  Therefore, the element of
typicality is satisfied for each of Classes 2 and 3.

      d.      <u>Adequate Representation.</u>

Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent Class Members.  Additionally, this Court recognizes the experience of Lead Class Counsel Hagens Berman Sobol Shapiro LLP, Wexler Wallace LLP, Spector Roseman Kodroff & Willis, PC, and Hoffman & Edelson, LLC, and finds under FED. R. CIV. P. 23(g) that the requirement of adequate representation of Classes 2 and 3 has been fully met.

      e.      <u>Predominance of Common Issues.</u>

Plaintiffs commonly assert that unfair sales and marketing activities caused the AWPs for the Zoladex® to be inflated, in turn causing all Class Members to pay more for these drugs.  In the context of this Class Settlement, these issues predominate over any individual questions, favoring class treatment.

      f.      <u>Superiority of the Class Action Mechanism.</u>

The class action mechanism is ideally suited for treatment of the settlement of these matters.  Class certification promotes efficiency and uniformity of judgment, among other reasons, because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

4.      Designated representatives for each Class are as follows:

      a.      Class 2: Blue Cross Blue Shield of Massachusetts;

      b.      Class 3: Blue Cross Blue Shield of Massachusetts, Sheet Metal Workers National Health Fund, and Teamsters Health & Welfare Fund of Philadelphia and Vicinity.

Based upon the Court's familiarity with the claims and parties in these and other cases, including prior AWP class settlements, the interests of the various constituent groups, and the negotiation process overseen by MDL Mediator Eric Green, the Court preliminarily finds that these designated representatives are appropriate representatives for settlement purposes.  The Court finds that each of these representatives, or an agent or member thereof, made a purchase or reimbursement for Zoladex®.

5.      The Court further preliminarily finds that the following firms fairly and

adequately represent the interests of the Settlement Classes and hereby appoints them as Co-

Lead Settlement Class Counsel pursuant to FED. R. CIV. P. 23(g):

> Hagens Berman Sobol Shapiro LLP
> 1918 Eighth Avenue, Suite 3300
> Seattle, WA  98101

> Spector, Roseman, Kodroff & Willis, P.C.,
> 1818 Market Street, Suite 2500
> Philadelphia, PA  19103

> Wexler Wallace LLP
> 55 West Monroe Street, Suite 3300
> Chicago, IL  60603

> Hoffman & Edelson, LLC
> 45 West Court Street
> Doylestown, PA  18901

6.      If the Agreement is terminated or is not consummated for any reason whatsoever,

the certification of the Settlement Classes shall be void, and Plaintiffs and AstraZeneca shall be

deemed to have reserved all of their rights as set forth in the Agreement, including but not

limited to the issues related to all claims, defenses, and issues under FED. R. CIV. P. 23.

## III.    CLASS SETTLEMENT FUND

7.      The Court finds that the Escrow Account is a "qualified settlement fund" as

defined in Section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the

following requirements:

a.      The Escrow Account is established pursuant to an Order of this Court and

is subject to the continuing jurisdiction of this Court;

b.      The Escrow Account is established to resolve or satisfy one or more

claims that have resulted or may result from an event that has occurred

and that has given rise to at least one claim asserting liabilities; and

   c.  The assets of the Escrow Account are segregated from other assets of

     AstraZeneca, the transferor of the payment to the Settlement Fund.

  8.  Under the "relation back" rule provided under section 1.468B-1(j)(2)(i) of the

Treasury Regulations, the Court finds that:

   a.  The Escrow Account met the requirements of paragraphs 7(a) and 7(b) of

     this Order prior to the date of this Order approving the establishment of

     the Escrow Account subject to the continued jurisdiction of this Court; and

   b.  AstraZeneca and the Claims Administrator may jointly elect to treat the

     Escrow Account as coming into existence as a "qualified settlement fund"

     on the latter of the date the Escrow Account met the requirements of

     paragraph 7(b) and 7(c) of this Order or January 1 of the calendar year in

     which all of the requirements of paragraph 7 of this Order are met.  If such

     a relation-back election is made, the assets held by the Settlement Fund on

     such date shall be treated as having been transferred to the Escrow

     Account on that date.

## IV. NOTICE TO CLASS MEMBERS

  9.  The Court has considered the proposed notices and Notice Plan attached as

Exhibits A-D to the Agreement, including the proposed forms of notice, summary notice,

information releases, and Claim Forms, and finds that the forms, content, and manner of notice

proposed by the Parties and approved herein meet the requirements of due process and FED. R.

CIV. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient

notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.  The

Court approves the Notice Plan in all respects (including the proposed forms of notice, summary

notice, information releases, and Claim Form) and orders that notice be given in substantial

conformity therewith.  The Notice Program described in the Notice Plan shall commence on or

about _____, 2010.  The costs of preparing, printing, publishing, mailing and otherwise

disseminating the notice shall be paid from the Settlement Fund in accordance with the

Agreement.

       10.     The Court appoints Rust Consulting, Inc. (formerly known as Complete Claim

Solutions, Inc.) and Class Action Settlement Services, LLC as Claims Administrator.

Responsibilities of the Claims Administrator shall include the following:  (a) establishing a post

office box and toll-free phone number (to be included in the Long Form Notices and the

Summary Notices (together, the "Notices")) for purposes of communicating with Class

Members; (b) establishing and maintaining a website for purposes of posting the Notices, the

Agreement and related documents; (c) accepting and maintaining documents sent from Class

Members, including Claim Forms and other documents relating to claims administration; and (d)

administering claims for the allocation of the settlement funds among Class Members.

## V.      REQUEST FOR EXCLUSION FROM THE CLASS

       11.     Class Members who wish to be excluded from Settlement Classes shall mail a

written notice of exclusion to the Claims Administrator, so that it is postmarked no later than

_____, and shall clearly state the following:  the name, address, taxpayer

identification number, telephone number, and fax number (if any) of the individual or entity who

wishes to be excluded from the Class, and provide all such information as may be required by the

Agreement requested by the Claims Administrator.  In addition, for purposes of implementing

the Settlement Agreement, including calculation of the AstraZeneca Opt-Out Refunds (as

described in Paragraph III.D.1 of the Settlement Agreement), each TPP Settlement Class

Member requesting exclusion shall set forth the amounts paid for Zoladex® during the period of

January 1, 2003 to December 31, 2004, and include a signed certification containing the

following language:

> The undersigned individual hereby represents that he/she has authority to
> sign and submit this notice of exclusion on behalf of the above-named
> class member.  The undersigned also certifies that he/she has not received
> any advice from the parties to this litigation or their attorneys concerning
> his/her or the class member's fiduciary obligations under the Employee
> Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.*, or
> other laws governing their obligations to any class member.   The
> undersigned understands that by submitting this notice of exclusion, the
> class member identified above will not be entitled to receive any proceeds
> of the class Settlement Fund.  By affixing my signature below, I certify
> under penalty of perjury that the foregoing is true and correct.  28 U.S.C. §
> 1746.

12.     Valid Class Opt-Outs shall not be bound by the Settlement Agreement, or the

Final Order and Judgment.  Upon receipt, the Claims Administrator shall promptly provide

copies of each notice of exclusion to Lead Class Counsel and Counsel for AstraZeneca.

13.     Any Class Member who does not properly and timely mail a notice of exclusion

as set forth in paragraph 11 above shall be automatically included in the Class Member's

respective Settlement Class or Classes, and shall be bound by all the terms and provisions of the

Agreement, the Class Settlement, and the Final Order and Judgment, whether or not such Class

Member received actual notice or shall have objected to the Class Settlement and whether or not

such Class Member makes a claim upon or participates in the Class Settlement.

## VI.     PROOFS OF CLAIM

14.     To effectuate the Agreement and Class Settlement, and the provisions of the Notice Plan, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and Claim Forms.  The Claims Administrator shall preserve (on paper or transferred into electronic format) all notices of exclusion, Claim Forms, and any and all other written communications from Class Members in response to the Notices for a period of five (5) years, or pursuant to further order of the Court.  All written communications received by the Claims Administrator from Class Members relating to the Agreement shall be available at all reasonable times for inspection and copying by Lead Class Counsel and Counsel for AstraZeneca, including prior to payments being mailed to each Class Member.

15.     In order to be entitled to participate in the Class Settlement, if effected in accordance with all of the terms and conditions set forth in the Agreement, each Member of Classes 2 and 3 shall take the following actions and be subject to the following requirements:

a.     A TPP Settlement Class Member who wishes to receive a distribution from a Class Settlement must mail a properly executed TPP Claim Form to the Claims Administrator at the address indicated in the notice, to be postmarked on or before _____.  If such Claim Form is transmitted in any manner other than the United States Postal Service, it shall be deemed to have been submitted when actually received by the Claims Administrator and must be received by the Claims Administrator no later than _____.  A Consumer Settlement Class Member who wishes to receive a distribution from a Class Settlement

must mail a properly executed Consumer Claim Form to the Claims Administrator at the address indicated in the notice, to be postmarked on or before _____.  If such Claim Form is transmitted in any manner other than the United States Postal Service, it shall be deemed to have been submitted when actually received by the Claims Administrator and must be received by the Claims Administrator no later than _____;

b.      Each Claim Form must satisfy the following conditions:  (i) the Claim Form must be properly completed and supported with any necessary documentation in accordance with the instructions thereon and submitted in a timely manner in accordance with Subparagraph (a) of this Paragraph; (ii) the Claim Form must be signed under penalty of perjury; (iii) the claimant must certify that he or she is a Class Member, or, if the person executing the Claim Form is acting in a representative capacity, must attest that he, she or it is acting on behalf of a Settlement Class Member and that the claimant has authority to act on behalf of the Settlement Class Member; and (iv) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

c.      Each Claim Form shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to Lead Class Counsel about which claims should be allowed in whole or in part;

d.    The Claims Administrator will notify each Settlement Class Member who filed a Claim Form of any recommendation of disallowance, in whole or in part, of the Claim Form submitted by such Settlement Class Member and will set forth the reasons for any such disallowance.  Settlement Class Members shall be permitted a reasonable period of time to cure any deficiency with respect to their respective Claim Forms that is identified. A copy of such notification shall also be sent by the Claims Administrator to Lead Class Counsel;

e.    All Settlement Class Members who do not submit timely Claim Forms, or who submit Claim Forms that are disallowed and not cured, shall be barred from participating in the Class Settlement (except to the extent that a claim may be partially allowed) but otherwise shall be bound by all of the terms and provisions of the Agreement; and

f.    Each Settlement Class Member who submits a Claim Form shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Agreement and Settlement Classes) be bound by all the terms and provisions of the Agreement.

g.    TPP Class Members are required to provide data related to insureds as set forth in the TPP Claim Form attached as Exhibit B.2 to the Settlement Agreement.  All such data shall be submitted no later than _____ the date set forth for filing of TPP claims in paragraph 15(a) above.

## VII.    CLAIMS PROCESS

16.    The amount to which each Consumer Settlement Class Member is entitled will be determined in accordance with the following provisions.

a.    For consumers in Class 3, the amount to which the Class 3 consumer shall be entitled will be determined based upon the consumer's election on a claim form provided by the Claims Administrator between two options.

1.    <u>Easy Refund Option</u>:   If a Consumer elects the "Easy Refund Option" on the claim form provided and the consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating the payment made to each such Consumer Settlement Class Member shall be equal to $400.00.

2.    <u>Full Estimation Refund Option</u>.   If a Consumer elects the "Full Estimation Refund Option" on the claim form provided, then the consumer will be required to estimate the consumer's total out-of pocket expenses associated with percentage co-payments or full cash payments for each drug for which the consumer is seeking payment in the Settlement.  Each such consumer will also be required to provide documentation in support of the consumer's estimated out-of-pocket expenses.

The Consumer's estimated out-of-pocket expenses for Zoladex® during the period of December 1, 1997 through December 31, 2004 shall be multiplied by a factor of three (3x), and added to the consumer's total obligation related to Zoladex® outside of this time period (without a

multiplication factor).  The sum of these two figures will constitute the
Consumer's "Total Recognized Claim" used for the purpose of calculating
the payment made to each Consumer Settlement Class Member.

17.     If the total valid Recognized Claims for all Consumer Settlement Class Members
is less than the total amount of the Settlement Fund allocated to satisfy Consumer Settlement
Class Member claims (net of fees and expenses as set forth in the Settlement Agreement), each
Consumer Settlement Class Member will be paid 100% of their Recognized Claim, and the
balance of the Net Consumer Settlement Pool shall be paid into the TPP Settlement Pool to
satisfy the claims of TPP Class Members.  If total valid Recognized Claims for all Consumer
Settlement Class Members related to Zoladex® exceeds the amount of the Settlement Fund
allocated to satisfy Consumer Settlement Class Member claims, all such Consumer Settlement
Class Member claims will be reduced proportionately.

18.     The total expenditure for Zoladex® during the period of January 1, 2003 to
December 31, 2004 claimed by each TPP Settlement Class Member on the TPP Proof of Claim
and accompanying documentation, as verified and accepted by the Claims Administrator, shall
be the TPP's "Recognized Claim" used for purposes of calculating the payment made to each
TPP Settlement Class Member.

19.     Each TPP Settlement Class Member shall share *pro rata* in the Net TPP
Settlement Pool (which is net of payment of the AstraZeneca Opt-Out Refunds and fees and
expenses as set forth in the Agreement) in proportion to the size of their Recognized Claim.

**VIII.   CONFIDENTIALITY**

20.     Any information received by the Claims Administrator in connection with the
Class Settlement that pertains to a particular Settlement Class Member, or information submitted

in conjunction with a notice of exclusion (other than the identity of the entity requesting

exclusion), shall not be disclosed to any other person or entity other than Lead Class Counsel,

Counsel for AstraZeneca, and the Court, or as otherwise provided in the Agreement.

## IX.    FAIRNESS HEARING

21.    A hearing on final settlement approval (the "Final Fairness Hearing") will be held

on _____, at _____ before this Court, at the United States District Court for

the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider,

*inter alia*, the following:  (a) the adequacy of the Class Representatives and whether the

Settlement Classes should be finally certified; (b) the fairness, reasonableness and adequacy of

the Class Settlement; (c) the dismissal with prejudice of the MDL Class Actions as to

AstraZeneca; (d) whether Class Counsel's application for attorneys' fees, expenses, and

compensation for the Class Representatives ("the Fee Petition") should be granted; (e) whether

to approve the proposed plan of allocation and distribution; (f) whether to finally approve the

Agreement; and (g) whether the Court should enter an order expressly determining that there is

no just reason for delay and expressly directing that any judgment by the Court approving the

Agreement and the Settlement Classes should be deemed as a final judgment under FED. R. CIV.

P. 54(b) with respect to all claims by Settlement Class Members against the AstraZeneca

Releasees.

22.    On or before _____, Class Counsel shall file with the Court:  (i)

any memoranda or other materials in support of final approval of the Agreement and Class

Settlement; and (ii) any Fee Petition.

23.    Any Class Member who has not filed a notice of exclusion in the manner set forth

above may appear at the Fairness Hearing in person or by counsel and may be heard, to the

extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness

and adequacy of a Class Settlement, the dismissal with prejudice of Released Class Claims and

dismissal with prejudice of the MDL Class Complaints as against AstraZeneca, the entry of final

judgment as to AstraZeneca, and/or the Fee Petition; provided, however, that no person shall be

heard in opposition to the Class Settlement, dismissal and/or entry of final judgment or the Fee

Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted

or considered by the Court, unless filed with the Court and served upon counsel listed below in

Paragraph 24 on or before _____.  Such person must (a) file with the Clerk of

the Court a notice of such person's intention to appear as well as a statement that indicates the

basis for such person's opposition and any documentation in support of such opposition on or

before _____, and (b) serve copies of such notice, statement, and documentation,

as well as any other papers or briefs that such person files with the Court, either in person or by

mail, upon all counsel listed below in Paragraph 24 on or before _____.

Settlement Class Members who object in the manner and by the dates provided herein shall be

subject to the jurisdiction of this Court.  Settlement Class Members who fail to object in the

manner and by the dates provided herein shall be deemed to have waived and shall forever be

foreclosed from raising any such objections.

     24.     Counsel for the Parties who must be served with all documentation described

above in Paragraph 23 are as follows:

       <u>Counsel for the Class</u>

       Steve W. Berman
       HAGENS BERMAN SOBOL SHAPIRO LLP
       1918 Eighth Avenue, Suite 3300
       Seattle, WA  98101

       <u>Counsel for AstraZeneca</u>

Joel M. Cohen
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY  10017

25.     The date and time of the Final Fairness Hearing shall be set forth in the Notice and Summary Notice, but shall be subject to adjournment by the Court without further notice to the Settlement Class Members other than that which may be posted at the Court, on the Court's website, and/or the website to be established pursuant to the Notice Plan.

26.     All proceedings in the MDL Class Actions with respect to AstraZeneca are hereby stayed and suspended pending the Final Approval of the Class Settlement ("Final Approval"), except such proceedings as are provided for in the Agreement, or which may be necessary to implement the terms of the Agreement, the Class Settlement, or this Order.

27.     Any Settlement Class Member may hire an attorney at his or her or its own expense to appear in the action.  Such attorney shall serve a Notice of Appearance on the Counsel listed in Paragraph 24 above by _____, and file it with the Court on or before _____.

28.     Pending Final Approval, no Settlement Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Settlement Class), shall commence, continue or prosecute against any AstraZeneca Releasee any action or proceeding in any court or tribunal asserting any of the Released Claims, and are hereby enjoined from so proceeding.  Upon Final Approval, all Settlement Class Members who do not file a timely notice of exclusion shall be forever enjoined and barred from asserting any of the Released Claims, and any such Settlement Class Member shall be deemed to have forever released all Released Claims.

29.     Upon Final Approval, all Released Class Claims shall be dismissed with

prejudice, and the MDL Class Complaints shall be dismissed with prejudice as against AstraZeneca.

## X.     OTHER PROVISIONS

30.     Upon Final Approval, each and every term and provision of the Agreement (except as may be modified by the Final Approval Order) shall be deemed incorporated into the Final Order and Judgment as if expressly set forth and shall have the full force and effect of an Order of the Court.

31.     In the event the Class Settlement is terminated in accordance with the provisions of the Agreement, the Class Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Agreement, and without prejudice to the *status quo ante* rights of Plaintiffs and AstraZeneca.

32.     Neither this Order nor the Agreement, nor any documents or statements related thereto, shall constitute any evidence or admission of liability by any AstraZeneca Releasee, nor shall any such document or statement be offered in evidence in this or any other proceeding except to consummate or enforce the Agreement or the terms of this Order, or by any AstraZeneca Releasee in connection with any action asserting Released Claims.


Date:_____          _____

                                    Patti B. Saris
                                    United States District Judge

## EXHIBIT F

## ESCROW AGREEMENT

**EXHIBIT F**

ESCROW AGREEMENT RELATED TO REVISED SETTLEMENT AGREEMENT AND
RELEASE OF ASTRAZENECA MASSACHUSETTS CLASSES TWO AND THREE

This Escrow Agreement (this "Agreement") is made and entered into by KeyBank National
Association (the "Escrow Agent"), AstraZeneca Pharmaceuticals LP ("AstraZeneca") and Class
Plaintiffs as defined in the Revised Settlement Agreement and Release of AstraZeneca Related to
Massachusetts Classes Two and Three on or about August 4, 2010 ("Revised Settlement
Agreement"), in consideration of the following promises of each party.  AstraZeneca and Class
Plaintiffs are referred to collectively as the "Settling Parties" in the litigation entitled *In Re
Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (the "MDL Class
Action").  Unless otherwise provided herein, the terms defined in the Revised Settlement
Agreement shall have the same meaning in this Escrow Agreement.

I.     **Terms and Conditions**

   1.     AstraZeneca and Lead Class Counsel hereby appoint the Escrow Agent to
          establish and administer an escrow account on the terms and conditions set forth
          herein, and the Escrow Agent hereby accepts such appointment on such terms and
          conditions.

   2.     AstraZeneca shall deliver to the Escrow Agent a total settlement payment in the
          amount of $13,000,000.00 as required by Paragraph III.C.1 of the Revised
          Settlement Agreement in immediately available United States funds (the "Class
          Escrow Funds") pursuant to the wire transfer instructions provided in paragraph 1
          of Section IV below.  Escrow Agent shall confirm receipt of such funds in writing
          to the Settling Parties.

   3.     The Escrow Agent shall invest and reinvest the Class Escrow Funds in United
          States Agency or Treasury Securities (or a mutual fund investing solely in such
          instruments) or other similar short-term United States government obligations as
          shall be directed in writing by Lead Class Counsel for the Class Plaintiffs.

   4.     All interest on or other income realized by investment of the Class Escrow Funds
          or any portion thereof shall be accumulated and added to the Class Escrow Funds.
          Any investment losses realized by investment of Class Escrow Funds or any
          portion thereof shall be charged to the Class Escrow Funds.

   5.     This Escrow Agreement and the Class Escrow Funds are subject to the
          supervision and control of the United States District Court for the District of
          Massachusetts (the "MDL Court").  Except as set forth in paragraph 6(a) and 6(b)
          of this Section I, the Class Escrow Funds shall be withdrawn or otherwise
          removed from the Escrow Account established pursuant to this Escrow

Agreement only in accordance with the terms of an order of the MDL Court delivered to the Escrow Agent by Lead Class Counsel.

6.    The Escrow Agent shall deliver the Class Escrow Funds only as set forth below:

    (a)    Following receipt of written notice signed by counsel for AstraZeneca and Lead Class Counsel stating that the MDL Court declined to approve the Revised Settlement Agreement or that the Revised Settlement Agreement has been cancelled or terminated or has otherwise become null and void for any reason, the Escrow Agent shall disburse the Class Escrow Funds, including any interest or other income earned thereon, to AstraZeneca net of taxes paid or due with respect thereto, the fees and costs paid or incurred for the settlement notice, and any fees or costs paid or incurred for administration of the Escrow Account;

    (b)    Regardless of whether the Revised Settlement Agreement has become effective, the Escrow Agent shall disburse funds as needed for

        (i)    payment of taxes or estimated taxes that become due on income earned by the Class Escrow Funds, as determined by Rust Consulting, Inc.. ("Rust"), the Claims Administrator for the Settlement, with notice of such payments to Lead Class Counsel and AstraZeneca;

        (ii)    payment of the costs associated with claims administration including, but not limited to, settlement notice.  Such payment will be made at the direction of Lead Class Counsel, with notice of such payments provided to AstraZeneca; and

        (iii)    all other payments contemplated by the Revised Settlement Agreement and authorized by the MDL Court by court Order delivered to the Escrow Agent by Lead Class Counsel.

    (c)    After receipt of written notice signed by counsel for AstraZeneca and Lead Class Counsel stating that the Revised Settlement Agreement has become effective, the Escrow Agent shall, upon receipt of an order of the Court so directing

        (i)    disburse any remaining amounts for reimbursement or payment of costs and expenses incurred in the provision of notice to the members of the Class and the administration and distribution of the settlement, in accordance with such order of the Court; and

        (ii)    distribute the remaining Class Escrow Funds, as ordered by the Court.

provided, however, that the Escrow Agent shall retain amounts in the Escrow Account necessary for the payment of taxes or estimated taxes and fees and expenses of the Escrow Agent, as directed by Lead Class Counsel.

7.    The Class Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of the Settling Parties, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Class Escrow Funds to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

8.    After the Revised Settlement Agreement becomes effective, including after the Final Approval Order becomes Final, AstraZeneca shall no longer have any interest in the Class Escrow Funds, and shall no longer have any rights or obligations under this Escrow Agreement.

9.    All Counsel for all Settling Parties' each warrant to and agree with Escrow Agent that, unless otherwise expressly set forth in this Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Class Escrow Funds or any part of the Class Escrow Funds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Class Escrow Funds or any part of the Class Escrow Funds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Class Escrow Funds or any part of the Class Escrow Funds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Class Escrow Funds or any part thereof.

## II.    Provisions as to Escrow Agent

1.    This Escrow Agreement expressly and exclusively sets forth the duties of Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against Escrow Agent.

2.    This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this escrow.  Unless it is signed by the Escrow Agent as a party, no other agreement including the Revised Settlement Agreement entered into between the parties, or any of them, shall be considered as adopted or binding, in whole or in part, upon

the Escrow Agent notwithstanding that any such other agreement may be deposited with Escrow Agent or the Escrow Agent may have knowledge thereof.

3.   Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4.   Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Escrow Agreement.  The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Escrow Agreement.

5.   Escrow Agent shall be protected in acting upon any document which Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Class Escrow Funds.

6.   In the event of any disagreement between any of the parties to this Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Agreement, or in the event that Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the United States District Court for the District of Massachusetts, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and Escrow Agent shall have been notified thereof in writing signed by all such parties.

7.   Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

8.   The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right

arising out of this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

9. The Escrow Agent will maintain a daily record of all transactions in the Class Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than annually) reflecting all such transactions and the property held in the account as of the end of the reporting period.

10. The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary. The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

## III. Compensation of Escrow Agent

1. Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Escrow Agreement (including reasonable fees and expenses of Escrow Agent's counsel). Lead Class Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to other provisions of this paragraph. The Escrow Agent is entitled to reimbursement for reasonable expenses for each year or any part thereof.

2. The Escrow Agent shall not debit the Class Escrow Funds for any charge for its fees or its costs and expenses, until it shall have received a copy of a Preliminary Approval Order issued by the Court, preliminarily approving the Revised Settlement Agreement and the appointment of Escrow Agent. Thereafter, fees and costs shall be deducted monthly. Fees and expenses of the Escrow Agent charged against the Class Escrow Funds shall, to the extent possible, be paid out of interest earned by the Class Escrow Funds.

## IV. Miscellaneous

1. Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

If to Escrow Agent:

David Bosak
KeyBank National Association
127 Public Square, 16th Floor
Cleveland, OH 44114

<u>Cash / Wire Instructions:</u>



If to Lead Class Counsel:

Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

If to AstraZeneca

Joel M. Cohen
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

If to Rust:

Thomas R. Glenn
Sr. Vice President & COO
Rust Consulting, Inc.
5210 Hood Road
Palm Beach Gardens, FL 33418
Telephone: (561) 651-7777
Facsimile: (561) 651-7788

Any party may unilaterally designate a different address by giving notice of each
change in the manner specified above to each other party.

2.      Any disputes arising under this agreement will be governed by Massachusetts law. It shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns. All representations, covenants, and indemnifications contained in this Escrow Agreement shall survive the termination of this Escrow Agreement.

3.      The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4.      If any provision of this agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5.      The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the parties hereto. Such resignation shall be effective not less than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement. The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent. Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6.      All titles and headings in this Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7.      This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8.      This Agreement shall be effective as of the date the last party to this Agreement fully and appropriately executes this document.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.

Dated:   August 4, 2010

_____

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel


Dated:   August 4, 2010

_____

Joel M. Cohen
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

Counsel for AstraZeneca Pharmaceuticals LP


Dated:   August 4, 2010

_____

Diana Edwards
KeyBank National Association
127 Public Square
Cleveland, OH  44114
Telephone: (216) 689-5560
Facsimile: (216) 370-6222

Dated: _____, 2010

    _____

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel

Dated: August 5, 2010

D. Scott Wise
Joel M. Cohen
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

Counsel for AstraZeneca Pharmaceuticals LP

Dated: _____, 2010

Diana Edwards
KeyBank National Association
127 Public Square
Cleveland, OH 44114
Telephone: (216) 689-5560
Facsimile: (216) 370-6222

**<u>EXHIBIT G</u>**

**[PROPOSED] FINAL APPROVAL ORDER**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO ALL MASSACHUSETTS CLASS ACTIONS CONCERNING CLASSES 2 & 3 | CIVIL ACTION:  01-CV-12257-PBS

Judge Patti B. Saris |

### [REVISED PROPOSED] FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT AND RELEASE OF ASTRAZENECA RELATED TO MASSACHUSETTS CLASSES TWO AND THREE, APPROVING THE PROPOSED ALLOCATION OF SETTLEMENT FUNDS, AND APPROVING CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND <u>COMPENSATION FOR CLASS REPRESENTATIVES</u>

This Court having considered: (a) the Settlement Agreement and Release of AstraZeneca Related to Massachusetts Classes Two and Three, dated June 15, 2010, including all Exhibits thereto (collectively, the "Agreement"), between Class Plaintiffs (as defined in the Agreement) and Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca"); (b) the proposed allocation and distribution of funds among the Settlement Classes; and (c) Class Counsel's application for attorneys' fees, reimbursement of litigation expenses, and compensation for the Class Representatives; and having held a hearing on _____, 2010, and having considered all of the submissions and arguments with respect thereto, and otherwise being fully informed, and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.      This Final Order and Judgment incorporates herein and makes a part hereof, the Agreement, and all Exhibits thereto.  Unless otherwise provided herein, the terms as defined in

1

the Agreement shall have the same meanings for purposes of this Final Order and Judgment.

2.      The Court has personal jurisdiction over all Class Representatives, Class Members, and AstraZeneca for purposes of this settlement only, and has subject matter jurisdiction to approve the Agreement.

3.       The Settlement Classes are defined as follows:

(a)      Third-Party Payor MediGap Supplemental Insurance Class ("Class 2")

All TPPs in the United States who, from January 1, 1991 through January 1, 2005, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for Zoladex® purchased in the Commonwealth of Massachusetts.

(b)      Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context ("Class 3")

All natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for Zoladex® purchased in of the Commonwealth of Massachusetts, and all TPPs in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for Zoladex® purchased in the Commonwealth of Massachusetts, during the period from January 1, 1991 through June 11, 2010.

Excluded from each of the Settlement Classes are the AstraZeneca Releasees, as defined in the Agreement.  (The exclusion of AstraZeneca "employees" from the Settlement Classes shall not affect the eligibility of any ERISA plans or other TPPs for settlement benefits regardless whether any plan participants might be excluded "employees.")  Additionally excluded from each of the Settlement Classes are the following: (1) all natural persons who only paid flat co-payments, and not any percentage co-payments, for Zoladex®; and (2) all federal, state, and local governmental entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for Zoladex® as part of a health benefit plan for their employees, but only with respect to such payments.

In so holding, the Court finds that the prerequisites of FED. R. CIV. P. 23(a) and (b)(3) have been satisfied for certification of the Settlement Classes for settlement purposes:  Class Members, numbering in the thousands, are so numerous that joinder of all members is impracticable; there are questions of law and fact common to each of the Settlement Classes; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class Members they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Classes with regard to the consolidated claims of the Settlement Classes they represent; the common questions of law and fact predominate over questions affecting only individual Class Members, rendering the Settlement Classes sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Classes is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of the MDL Class Actions.

In making all of the foregoing findings, the Court has exercised its discretion in certifying the Settlement Classes, based, *inter alia*, upon the Court's familiarity with the claims and parties in these and other cases, including prior AWP class settlements, the interests of the various constituent groups, and the negotiation process.

4.      The record shows that Notice has been given to the Settlement Classes in the manner approved by the Court in its Preliminary Approval Order of_____, 2010 [Docket No. ___].  The Court finds that such Notice:  (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the terms of the Agreement and Class Settlement, and Class Members' right to object to or exclude themselves from the Settlement Classes and appear at the settlement fairness hearing held on _____ (the "Fairness Hearing"); (iii) constitutes due, adequate,

and sufficient notice to all persons or entities entitled to receive notice; and (iv) meets the requirements of due process and FED. R. CIV. P. 23.

5.      No individuals or entities, other than those listed on Exhibit A hereto, have excluded themselves from the Settlement Classes.  This Order shall have no force or effect on the persons or entities listed on Exhibit A hereto.

6.      The Court finds that extensive arm's-length negotiations have taken place in good faith between Lead Class Counsel and AstraZeneca's Counsel resulting in the Agreement. Additionally the Court finds that extensive arm's-length negotiations have taken place on behalf of separate counsel appointed by Lead Class Counsel to represent the interests of Consumer Class Members and TPP Class Members in order to apportion the Settlement Fund between these constituencies and that these arm's length negotiations afforded the structural protection required to ensure adequate representation of these constituencies.

7.      The Court finds that the designated class representatives are appropriate representatives for settlement purposes.  The Court finds that each of these representatives, or an agent or member thereof, made a purchase or reimbursement for Zoladex®.

8.      The Court has considered all of the factors enumerated in FED. R. CIV. P. 23(g) and finds that Class Counsel have fairly and adequately represented the interests of the Settlement Classes.

9.      Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the Class Settlement set forth in the Agreement ("the Class Settlement") and finds that the Class Settlement, the Agreement, and the plan of distribution as set forth in Paragraphs III.C-F of the Agreement, are, in all respects, fair, reasonable and adequate, and in the best interests of the Settlement Classes.

10.     The Court further approves the establishment of the Settlement Fund as set forth in the Agreement and the Escrow Agreement submitted by the Parties.  The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Agreement.  In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Agreement that (i) are consistent in all material respects with this Final Order and Judgment, and (ii) do not limit the rights of the Settlement Classes.

11.     Upon the Effective Date of the Agreement, the Class Releasors (as defined in Paragraph II.F of the Agreement) shall release and forever discharge the AstraZeneca Releasees (as defined in Paragraph II.B of the Agreement) from their respective Released Consumer Class Claims and Released TPP Class Claims (as defined in Paragraphs II.BB and II.CC of the Agreement).

12.     The Court finds that the Escrow Account is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)     The Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

(b)     The Escrow Account is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

(c)     The assets of the Escrow Account are segregated from other assets of AstraZeneca, the transferor of payments to the Settlement Fund, and from the assets of persons related to AstraZeneca.

13.     Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)     The Escrow Account met the requirements of paragraph 12 of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

(b)     AstraZeneca and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Escrow Account met the requirements of paragraphs 12(b) and 12(c) of this Order or January 1 of the calendar year in which all of the requirements of Paragraph 12 of this Order are met.  If such relation-back election is made, the assets held by the Escrow Account on such date shall be treated as having been transferred to the Escrow Account on that date.

14.     Nothing in this Final Order and Judgment, the Class Settlement, the Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any of the Released Parties.

15.     Class Counsel have moved pursuant to FED. R. CIV. P. 23(h), 54(d) and 52(a) for an award of attorneys' fees and reimbursement of expenses.  Pursuant to Rules 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

(a)     that the Class Settlement confers substantial benefits on the Members of each of the Settlement Classes;

(b)     that the value conferred on the Settlement Classes is immediate and readily quantifiable (upon this Judgment becoming Final (as defined in the Agreement),

Settlement Class Members who have submitted valid Claim Forms will receive cash payments that represent a significant portion of their alleged financial harms);

(c)       that Class Counsel vigorously and effectively pursued the Settlement Class Members' claims before this Court in this highly complex case;

(d)       that the Class Settlement was obtained as a direct result of Class Counsel's skillful advocacy;

(e)       that the Class Settlement was reached following extensive negotiation between Lead Class Counsel and AstraZeneca's Counsel, and was negotiated in good-faith and in the absence of collusion;

(f)       that during the prosecution of claims against AstraZeneca in the MDL Class Actions, Class Counsel incurred expenses at least in the amount of $_____, which included costs for expert witnesses and other expenses which the Court finds to be reasonable and necessary to the representation of the Settlement Classes;

(g)       that Settlement Class Members were advised in the Notice approved by the Court that Class Counsel intended to apply for an award of attorneys' fees in an amount of up to 33 1/3% of the Settlement Fund (plus interest thereon from the date of funding of the Settlement Fund) plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action, to be paid from the Settlement Fund;

(h)       that _____ Member(s) of the Settlement Classes has (have) submitted written objection(s) to the award of attorneys' fees and expenses;

(i)       that counsel who recover a common benefit for persons other than himself or his client is entitled to a reasonable attorneys' fee from the Settlement Fund as a whole.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900

n.16 (1984);

(j)     that use of the percentage of the fund method in common fund cases is the prevailing practice in this Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefit on a class resulted from the lawyers' efforts.  *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); and

(k)     that the requested fee award is within the applicable range of percentage awards in this Circuit; *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. April 9, 2004) [Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-11534-WGY (D. Mass. Aug. 2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001). Accordingly, Class Counsel are hereby awarded $_____ from the balance of the Settlement Fund as their fee award which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Agreement, with interest from _____ (the date of the funding of the Settlement Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund. Further, Class Counsel are hereby awarded $_____ for their expenses which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Agreement.  The attorneys' fees and expenses awarded by the Court shall be allocated among Counsel by Lead Class Counsel pursuant to the Agreement.

16.     The Class Representatives and other appropriate parties, as identified in the Order Granting Preliminary Approval of the Settlement Agreement and Release of AstraZeneca

Related to Non-Massachusetts Classes Two and Three, Directing Notice to the Classes, and

Scheduling Fairness Hearing, dated _____, 2010, are hereby compensated in the amounts

set forth in their declarations concerning the amount of time spent on this case.  (Document

____).

       17.     Without affecting the finality of this Final Order and Judgment, the Court retains

continuing and exclusive jurisdiction over all matters relating to administration, consummation,

enforcement, and interpretation of the Agreement and of this Final Order and Judgment, to

protect and effectuate this Final Order and Judgment, and for any other necessary purpose.

AstraZeneca, Class Representatives, and all Settlement Class Members are hereby deemed to

have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit,

action, proceeding or dispute arising out of or relating to the Agreement or the applicability of

the Agreement (including the Exhibits thereto) and only for such purposes.  Without limiting the

generality of the foregoing, and without affecting the finality of this Final Order and Judgment,

the Court retains exclusive jurisdiction over any such suit, action, or proceeding.  Solely for

purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under

applicable law, the parties hereto are deemed to have irrevocably waived and agreed not to

assert, by way of motion, as a defense or otherwise, any claim or objection that they are not

subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an

inconvenient forum.

       18.     In the event that the Class Settlement does not become Final as defined in the

Agreement, this Final Order and Judgment shall be rendered null and void as provided by the

Agreement shall be vacated, and all orders entered and releases delivered in connection herewith

shall be null and void to the extent provided by and in accordance with the Agreement.

19.     No Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elected to be excluded from one or more of the Classes), shall commence, continue, or prosecute any action or proceeding against any or all Released Party or Parties in any court or tribunal asserting any of the Released Claims defined in the Agreement, and Class Members (other than Class Members who validly and timely elected to be excluded from one or more of the Classes) are hereby permanently enjoined from so proceeding.

20.     Pursuant to FED. R. CIV. P. 54(b) this Court expressly finds that there are no remaining claims between Class Plaintiffs and AstraZeneca in the MDL.  There are no subsequent proceedings between the Class Plaintiffs and any remaining party in the MDL that will affect the Court's decision with respect to Class Plaintiffs' settlement of the Released Class Claims against AstraZeneca.  No party in the MDL will be prejudiced by the immediate entry of this Final Order and Judgment in accordance with the Settlement Agreement.  Pursuant to FED. R. CIV. P. 54(b), this Court expressly determines that there is no just cause for delay and expressly directs that this Final Order and Judgment, upon filing in 01-CV-12257-PBS, be deemed as a final judgment with respect to each of the Settlement Classes, and specifically all such Settlement Class Members' Released Claims against all AstraZeneca Releasees.

21.     The Released Claims (as defined in Section II.AA of the Agreement) are hereby dismissed with prejudice and without costs to any party, except as otherwise provided herein.

22.     All private class actions included within *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL No. 1456, No. 01-CV-12257-PBS (D. Mass.) are hereby dismissed with prejudice as against AstraZeneca and without costs to any party; and all of the Master Consolidated Class Complaints (through and including the 5th Amended Master

Consolidated Class Action Complaint) filed in the above-referenced actions are hereby dismissed

with prejudice as against AstraZeneca and without costs to any party.


DATED:      _____          _____

                                          Hon. Patti B. Saris

## **EXHIBIT A**

ENTITIES THAT HAVE PROPERLY EXCLUDED
THEMSELVES FROM CLASS 2 IN ACCORDANCE WITH THE ORDER OF _____, 2008
(Docket No. \_\_\_).

**[list all Class 2 Opt Outs]**

INDIVIDUALS AND ENTITIES THAT HAVE PROPERLY EXCLUDED
THEMSELVES FROM CLASS 3 IN ACCORDANCE WITH THE ORDER OF _____, 2008
(Docket No. \_\_\_).

1. Individuals
**[list all Class 3 Individual Opt Outs]**

2. Entities
**[list all Class 3 TPP Opt Outs]**

# **EXHIBIT H**

## **CLAIMS PROCESS EXPLANATION**

## EXHIBIT H

This exhibit is incorporated by reference in and made a part of the Revised Settlement Agreement and Release of AstraZeneca Related to Massachusetts Classes Two and Three in *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL. No. 1456 (the "Revised Settlement Agreement").

A.      Required Claims Documentation

1.   Consumer Settlement Class Members

In order to validate a claim for payment associated with Zoladex®, Consumer Settlement Class Members must submit one proof of payment for Zoladex®.

Proof of payment for Consumers Settlement Class Members who have chosen the "Easy Refund Option," may be in the form of: a statement signed by the Consumer Settlement Class Member under the penalty of perjury indicating that the Consumer paid or is obligated to pay cash or a percentage co-payment for Zoladex® during the period January 1, 1991, through June 11, 2010.  This statement shall also be accepted as executed by a spouse of a deceased Consumer Settlement Class Member or a legal representative of the deceased Consumer Settlement Class Member's estate.

Proof of payment for Consumers Settlement Class Members who have elected the "Full Estimation Refund Option," may be in the form of (1) a receipt, cancelled check, or credit card statement that shows a payment for Zoladex® (other than a flat co-payment); (2) a letter from the Consumer Settlement Class Member's doctor stating that he or she prescribed and that the Consumer Settlement Class Member paid or is obligated to pay all or part of the cost of Zoladex® (other than a flat co-payment) at least once; (3) billing records from a doctor or other health care provider evidencing an obligation to pay all or part of the cost of Zoladex® (other than a flat co-payment); (4) an Explanation of Benefits ("EOB") from an insurer or other payor evidencing an obligation to pay all or part of the cost of Zoladex® (other than a flat co-payment), or (5) any combination of 1-4 above.

2.   TPP Settlement Class Members

TPP Settlement Class Members shall be required to submit the amount of purchases of each Class Drug for which they are seeking payment during the period of January 1, 2003, to December 31, 2004.  This period is substituted for the amount of expenditures for Zoladex® associated with the full class period in recognition of the difficulty many TPPs have in accessing claims data that are older and likely not kept electronically or on current electronic systems. This "proxy period" shall be used to determine the payments made to each TPP Settlement Class Member in accordance with the procedures set forth below.

In order to validate a claim for payment associated Zoladex®, TPP Settlement Class Members with claimed expenditures for Zoladex® during the proxy period that exceed

$300,000.00 in total shall be required to submit electronic claims documentation with their claim.  The form and data required to be submitted are delineated in the TPP Claim Form attached as <u>Exhibit B.2</u> to the Revised Settlement Agreement.  Those TPP Settlement Class Members whose claimed expenditures are $300,000.00 or less need not submit electronic claims documentation with their claim but must furnish such claims documentation upon request of the Claims Administrator.

B.    <u>Calculating Recognized Claim Amounts</u>

Procedures for establishing a recognized claim for each Consumer Settlement Class Member, and TPP Settlement Class Member have been established as follows.

1.   Consumer Settlement Class Members (Class 3 Only)

The amount to which Consumer Settlement Class Members shall be entitled will be determined based upon the consumer's election on a claim form provided by the Claims Administrator between two options.

a.    <u>Easy Refund Option</u>:  If a Consumer elects the "Easy Refund Option" on the claim form provided and the consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating the payment made to each such Consumer Settlement Class Member shall be equal to $400.00.

b.    <u>Full Estimation Refund Option</u>.  If a Consumer elects the "Full Estimation Refund Option" on the claim form provided, then the consumer will be required to estimate the consumer's total out-of pocket expenses associated with percentage co-payments or full cash payments for Zoladex®.  Each such consumer will also be required to provide documentary support, as called for in Section A1 above in support of the consumer's estimated out-of-pocket expenses.

The Consumer's estimated out-of-pocket expenses for Zoladex® during the period of December 1, 1997 through December 31, 2004 shall be multiplied by a factor of three (3x), and added to the consumer's total obligation related to Zoladex® outside of this time period (without a multiplication factor).  The sum of these two figures will constitute the Consumer's "Total Recognized Claim" used for the purpose of calculating the payment made to each Consumer Settlement Class Member.

If total valid Recognized Claims for all Consumer Settlement Class Members related to Zoladex® exceeds the amount of the Settlement Funds allocated to satisfy Consumer Settlement Class Member claims, all such consumer claims will be reduced proportionately.

2.    Sample Calculations of Hypothetical Consumer Claims

<u>Example # 1</u>

Consumer Settlement Class Member has Zoladex® purchases in the Commonwealth of Massachusetts and elects the "Easy Refund Option" and provides the appropriate certification accepted by the Claims Administrator.

Total Recognized Claim = $400  (subject to proportional reduction if Total Recognized Claims of all Consumers exceeds amount available to satisfy Consumer claims)

<u>Example # 2</u>

Consumer Settlement Class Member has purchases of Zoladex® in the Commonweatlh of Massachusetts from 1993 – 2006.  Consumer provides required documentation to support out-of-pocket expenditures.  Claims of out-of-pocket expenditures of $1,000 in each of the years 1993 – 2006.

Calculation:

1993 – 1997 = $5,000 ($1,000 x 5 years)
1998 – 2004 = $21,000 ($1,000 x 7 years x 3 multiplication factor)
2005 – 2006 = $2,000 ($1,000 x 2 years)
Total        = $28,000

Total Recognized Claim = $28,000  (subject to proportional reduction if Total Recognized Claims of all Consumers exceeds amount available to satisfy Consumer claims)

3.      Third Party Payor Settlement Class Members and ISHP Group Members

In recognition of the fact that the claims of all TPP Settlement Class Members will exceed the total amount of funds allocated to satisfy the claims of TPP Settlement Class Members under the Settlement Agreement and that each TPP Settlement Class Member will be paid a pro-rata portion of the Settlement Amount allocated to TPP Settlement Class Members, the recognized claim for both TPP Settlement Class Members shall be the total amount of purchases of Zoladex® during the period of January 1, 2003, to December 31, 2004.  This figure, if properly supported and accepted by the Claims Administrator, is the TPP Settlement Class Member's or "Recognized Claim" used for purposes of calculating the payment made to each TPP Settlement Class Member.