# Exhibit A

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL. No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: **BMS** | |

## SETTLEMENT AGREEMENT AND RELEASE
## OF THE BMS GROUP

Subject to the approval of the Court, this Settlement Agreement and Release (the "Agreement") is entered into between and among the Class Plaintiffs in the above-captioned action and Defendants Bristol-Myers Squibb Company ("BMS"), Oncology Therapeutics Network Corporation and Apothecon, Inc. (herein referred to collectively as the "BMS Group");

WHEREAS, there is pending in the United States District Court for the District of Massachusetts a multi-district litigation captioned *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456, comprised of putative class actions that were transferred to and/or coordinated with or consolidated in MDL 1456 (the "MDL Class Actions");

WHEREAS, the complaints filed in the MDL Class Actions, including the consolidated complaints filed by the Plaintiffs in MDL 1456 ("MDL Class Complaints"), allege, *inter alia*, that the BMS Group (among others) engaged in unlawful inflation and misrepresentation of the published Average Wholesale Prices ("AWPs") for Blenoxane, Cytoxan, Etopophos, Paraplatin, Rubex, Taxol and Vepesid (herein referred to collectively as the "BMS Subject Drugs"), and the unlawful use of AWPs in the marketing of the BMS Subject Drugs;

WHEREAS, the BMS Group has asserted a number of legal and factual defenses to the claims alleged in the MDL Class Actions and denies any liability to the Class Plaintiffs;

WHEREAS, the Class Plaintiffs and the BMS Group agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the BMS Group or of the truth of any of the claims or allegations alleged in the MDL Class Actions or as a waiver of any defenses thereto;

WHEREAS, Class Plaintiffs and Lead Class Counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the MDL Class Actions, including the claims asserted in the complaints filed in the MDL Class Actions and the possible legal and factual defenses thereto, and the trial of claims involving the Massachusetts Classes (as defined herein), and the Court's June 21, 2007 Findings of Fact and Conclusions of Law, that it would be in the best interests of the Class Plaintiffs to enter into this Agreement in order to avoid the uncertainties of trial and to assure that the benefits reflected herein are obtained for the members of the Classes herein defined; and, further, that counsel representing the Class Plaintiffs consider the settlement set forth in this Agreement to be fair, reasonable and adequate and in the best interests of Classes;

WHEREAS, the BMS Group, through its counsel, and the Class Plaintiffs, through their counsel, after vigorous, arms'-length negotiations, have conditionally agreed herein to payment by BMS on behalf of the BMS Group of Nineteen Million Dollars ($19,000,000) (the "Settlement Amount") to settle the claims of the Classes on a nationwide basis;

NOW, THEREFORE, it is agreed by and between the undersigned on behalf of the BMS Group and the Class Plaintiffs that the Class claims be settled, compromised, released and dismissed on the merits and with prejudice, subject to the approval of the MDL Court, on the following terms and conditions:

303927v1

1.    Class Definitions.

    a.    Medicare Part B Co-Payment Class ("Class 1"):  All natural persons

nationwide who made, or were liable for all or any portion of, a Medicare Part B co-

payment based on AWP for any BMS Subject Drug during the period from January 1,

1991 through December 31, 2004.  Excluded from Class 1 are those who made flat co-

payments, who were reimbursed fully for their payments, or who have the right to be

fully reimbursed, as well as officers, directors, management, and employees of the BMS

Group or of any of their subsidiaries and affiliates.

    b.    Third-Party Payor MediGap Supplemental Insurance Class ("Class 2"):

All TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or

incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-

payment based on AWP for a BMS Subject Drug.  Excluded from Class 2 are the

officers, directors, management, and employees of the BMS Group or of any of their

subsidiaries and affiliates.

    c.    Consumer and Third-Party Payor Class for Payments Made Outside the

Medicare Context ("Class 3"):  All natural persons nationwide who made, or were liable

for all or any portion of, a non-Medicare Part B payment based on AWP for any BMS

Subject Drug during the period from January 1, 1991 through December 31, 2004, and all

TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or

incurred an obligation to make, non-Medicare Part B reimbursements based on AWP for

any BMS Subject Drug.  Excluded from Class 3 are those consumers who made flat co-

payments, who were reimbursed fully for their payments, or who have the right to be

fully reimbursed, as well as the officers, directors, management, and employees of the

BMS Group or of any of their subsidiaries and affiliates.

303927v1

- 3 -

Also excluded from all Classes are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

2.     Definitions.  As used in this Agreement, the following terms shall have the indicated meanings:

(a)     "Lead Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP; Spector Roseman Kodroff & Willis, P.C.; Wexler Wallace LLP; and Hoffman & Edelson LLC.

(b)     "Class Member" means any natural person or TPP falling within the definitions of the Classes as defined in Paragraph 1 above.

(c)     "Class Period" means January 1, 1991 through December 31, 2004, inclusive.

(d)     "Class 1 Representative" means Agnes Swayze.

(e)     "Class 2 Representatives" means United Food and Commercial Workers Unions and Employees Midwest Health Benefits Fund and Sheet Metal Workers National Health Fund.

(f)     "Class 3 Representatives" means Cheryl Barreca, Anna Choice, Joyce Dison, Donna Kendall, Sandra Leef, Gerald Miller, Constance Nelson, Andrea Palenica, Scott Tell, Pauline Vernick, Mardolyn Vescovi, United Food and Commercial Workers Unions and Employees Midwest Health Benefits Fund, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund, and Teamsters Health & Welfare Fund of Philadelphia and Vicinity.

(g)     "Class Releasors" means each Class Member, including a Class Member's successors, heirs, executors, trustees, administrators, legal representatives and assigns.

(h)     "Claims Administrator" means the entity chosen by Lead Class Counsel for the purpose of processing and paying proofs of claim under this Settlement.

(i)     "CMS" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services.

(j)     "Consumer" means any individual falling within the definition of Class 1 or Class 3 who is a natural person and not a TPP.

(k)     "Consumer Class Member" means a Consumer who has not opted-out.

(l)     "Effective Date" is the date defined in Paragraph 9 below.

(m)     "The BMS Group" means Bristol-Myers Squibb Company, Oncology Therapeutics Network Corporation and Apothecon, Inc.

(n)     "The BMS Group Releasees" means the BMS Group and its present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former stockholders, officers, directors, employees, managers, agents, attorneys and any of their legal representatives, and their predecessors, successors, heirs, executors, trustees, administrators and assigns.  As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with the BMS Group.

(o)     "Massachusetts Classes" means the two classes that, after a bench trial, obtained a judgment of the MDL Court dated November 20, 2007 against members

of the BMS Group, which judgment is, as of the date of this Agreement, on appeal to the United States Court of Appeals for the First Circuit.

(p)  "MDL Court" means the Honorable Patti B. Saris, or if she is unavailable, another judge of the United States District Court for the District of Massachusetts, presiding over *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(q)  "MDL Class Actions" means all putative class actions in which any BMS Group Releasees are named as defendants and which have been transferred to and/or coordinated with or consolidated in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (D. Mass.).

(r)  "MDL Class Complaints" means all of the putative class action complaints filed in MDL Class Actions, including all of the Master Consolidated Class Action Complaints (through and including the Fifth Amended Master Consolidated Class Action Complaint) filed in the MDL Class Actions, including all counts of such complaints that were previously dismissed by the MDL Court (e.g. putative class RICO claims).

(s)  "MDL Mediator" means Eric Green of Resolutions, LLC of Boston, Massachusetts.

(t)  "Named Plaintiffs" means all persons that have been named plaintiffs in the Fifth Amended Master Consolidated Class Action Complaint filed with the MDL Court.

(u)  "Other Classes" means classes or subclasses certified in the MDL Class Actions other than Class 1 and the Massachusetts Classes as defined herein.

303927v1

(v)     "Released Class Claims" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Class Releasor who has not timely excluded himself, herself or itself from the Classes, whether or not s/he or it objects to the Settlement and whether or not s/he or it makes a claim upon or participates in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly or indirectly, representatively, derivatively or in any capacity, arising out of any conduct, events or transactions relating to the marketing, sale, purchase, cost, reimbursement amount or price of any BMS Subject Drug during the Class Period. "Released Class Claims" shall not include any claim against any person or entity that is not a BMS Group Releasee, any claim arising out of this Agreement, or any claim between any Class Member and any BMS Group Releasee that is unrelated to the allegations of the MDL Complaints and/or the marketing, sale, purchase, cost, reimbursement amount or price of the BMS Subject Drugs, and any claim relating to the efficacy or safety of the BMS Subject Drugs.

(w)     "Released Claims" means any and all claims released by this Agreement.

(x)     "Settlement Amount" means the sum of Nineteen Million Dollars ($19,000,000).

(y)     "Settlement Notices" means the Notices of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Hearing and summary notices for publication substantially in the forms annexed hereto as Exhibit B, as the same may

be modified in accordance with the Court's rulings with respect to the motion for

preliminary approval of this settlement.

(z)   "TPP" means a third-party payor falling within the definition of

Class 2 or Class 3 that is not a natural person.

(aa)   "TPP Class Member" means a TPP that has not opted-out.

3.   Settlement Consideration.

(a)   Settlement Amount for Class Members.  Subject to the provisions

hereof and to the Distribution Plan and Claims Process approved by the MDL Court, and in full,

complete and final settlement of the claims of the Class Members as provided herein, BMS shall

pay $19,000,000 in the aggregate to satisfy valid claims submitted pursuant to this Agreement

(the "Settlement Fund").  BMS agrees to transfer the Settlement Fund, and other funds in

connection with notice to the Classes, into an Escrow Account designated by Lead Class Counsel

as follows:  (i) after Preliminary Approval, one half of the cost of notice to the Classes up to a

maximum of $1,000,000; and (ii)  $19,000,000 within ten (10) business days after the Effective

Date.  The Escrow Account shall be established and administered pursuant to an Escrow

Agreement in a form substantially in accord with Exhibit D hereto.  The Settlement Fund shall

be invested by the Escrow Agent (as defined in the Escrow Agreement) in short term United

States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or

other similar short-term United States government obligations such as repurchase agreements

backed by United States obligations, and any interest earned thereon shall become part of the

Settlement Fund.  BMS shall not have any liabilities, obligations or responsibilities with respect

to the investment, payment, disposition or distribution of the Settlement Fund after such transfer.

(b)   Qualified Settlement Fund.  The Escrow Account is intended by

the parties hereto to be treated as a single "qualified settlement fund" for federal income tax

303927v1

purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. Whether or not the Escrow Account qualifies as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, the Escrow Agent shall cause to be paid from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account and all related costs and expenses. The parties elect that the Escrow Account should be treated as a qualified settlement fund from the earliest possible date and agree to make any "relation back" election that may be available. If amounts received by the Class Members are construed to be income, it is the recipient's sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest.

(c)     <u>Settlement Notice Costs</u>. The BMS Group shall pay one-half of the reasonable costs of notice to the Class of this Settlement up to a maximum payment of $1,000,000 separately from, and in addition to, the $19,000,000. The BMS Group shall have the right of prior approval for any costs relating to settlement notice and shall be entitled to proof of the reasonableness of such costs. The remaining costs of notice and settlement administration shall be paid from the Settlement Fund.

(d)     <u>Attorneys' Fees and Costs</u>. The BMS Group shall have no liability for any attorneys' fees, costs, or expenses of Class Counsel or of any Class Member in connection with this Settlement or the trial relating to the Massachusetts Classes. The payment of Class attorneys' fees and costs will come from the Settlement Amount. The MDL Court will determine whether and the extent to which such fees and costs should be approved. BMS will otherwise take no position on the payment of Class attorneys' fees and costs. Any fee and expense award to Class Counsel as ordered by the Settlement Court in connection with final

approval of this Agreement may be distributed from the Settlement Fund within ten (10) business days after the Effective Date.

4.     Distribution of the Settlement Amount.  The proposed Distribution Plan and Claims Process is annexed hereto as Exhibit F.  The BMS Group shall not be entitled to comment upon the proposed Distribution Plan and Claims Process.  The Distribution Plan and Claims Process adopted by the Court in its Order concerning the Motion for Preliminary Approval shall become part of this Agreement and the Settlement Notices exhibited hereto shall, to the extent necessary to conform with the Distribution Plan and Claims Process, be modified accordingly.

5.     Motion for Preliminary Approval.  Concurrent with the submission of this Agreement for consideration by the MDL Court, Lead Class Counsel shall submit to the MDL Court a motion for preliminary approval of the Settlement set forth in this Agreement, which requests entry of a Preliminary Approval Order substantially in the form annexed hereto as Exhibit A, and which includes a provision that enjoins Class Members from litigating Released Claims pending final approval of the settlement.

6.     Settlement Fairness Hearing; Report of the MDL Mediator.  In connection with the Settlement Fairness Hearing, the MDL Mediator shall provide to the Court his opinion regarding the arms'-length nature of the settlement negotiations and process, the fairness of the settlement and the zealousness of Class Counsel in representing the Classes.

7.     Entry of Final Judgment.  If, following the Settlement Fairness Hearing scheduled by the MDL Court pursuant to the Preliminary Approval Order, the MDL Court approves this Agreement, then counsel for the parties shall request that the MDL Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit C.

8.     Notice to Class Members.

303927v1

(a)      In the event the MDL Court preliminarily approves the Settlement set forth in this Agreement, Lead Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order, provide all those members of the Classes who can be identified by reasonable means with the best notice practicable under the circumstances, as ordered by the MDL Court, in substantially the forms annexed hereto as Exhibit B or as otherwise ordered by the MDL Court, which shall include publication on a web site established by Lead Class Counsel or the Claims Administrator.  The Proposed Settlement Notice Plan is set forth in Exhibit G.

(b)      As part of the class notice program referenced above, Lead Class Counsel will seek, through the MDL Court if necessary, information from CMS concerning the identity, contact (including last known address) and payment information of individuals who made co-payments as part of the Medicare Part B program and may be members of the Consumer Class as defined in Paragraph 1 above.  This information will be utilized to provide notice to such individuals during the class notice period and to assist in the class claims administration process.

9.      Effective Date.  The settlement detailed in this Agreement shall be effective on the first date after all of the following events have occurred:

(a)      entry of the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A, or entry of a Preliminary Approval Order not substantially in the form of annexed hereto with respect to which neither party invokes any rights of termination pursuant to Paragraph 10 below;

(b)      final approval by the MDL Court of this Class Settlement, following notice to members of the Classes and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

303927v1

- 11 -

(c)        entry by the MDL Court of an Order and Final Judgment, substantially in the form set forth in Exhibit C annexed hereto, and the expiration of any time for appeal or review of such Order and Final Judgment, or, if any appeal is filed and not dismissed, after such Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the MDL Court enters an order and final judgment in form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Class Settlement as permitted by Paragraph 10, the date that such Alternative Judgment becomes final and no longer subject to appeal or review.

10.        Termination.

(a)        By either BMS or Class Plaintiffs:  BMS and the Classes shall each have the right to terminate the Settlement and this Agreement by providing written notice of their election to do so ("Termination Notice") to counsel for the other party within thirty (30) days of:  (a) the MDL Court declining to enter the Preliminary Approval Order substantially in the form annexed hereto as Exhibit A; (b) a decision by the MDL Court declining to approve this Agreement or any material part of it; (c) the MDL Court declining to enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit C; (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court.

(b)        By BMS only:  In addition to the rights to terminate pursuant to subparagraph (a), BMS shall have the right to terminate depending on the number of insured lives represented by TPPs and/or potential members of the Other Classes that opt-

out of the Settlement.   The number of opt-outs/insured lives that shall give rise to BMS's

termination rights under this subparagraph shall be specified in Exhibit E to this

Agreement, which shall be filed under seal.

11.    All Class Claims Satisfied by Settlement.  Each Class Member shall look solely to

the Settlement Amount for settlement and satisfaction, as provided herein, of all Released Class

Claims.

12.    Class Releases.  Upon the Effective Date of this Agreement in accordance with

Paragraph 9 above, the BMS Group Releasees (as defined in Paragraph 2(n) above) shall be

released and forever discharged by the Class Releasors from all Released Class Claims, as

defined in Paragraph 2(v) above.  All Class Releasors hereby covenant and agree that they shall

not hereafter seek to establish liability against any BMS Group Releasee based, in whole or in

part, on any of the Released Class Claims.  In addition, each Class Releasor hereby expressly

waives and releases, upon the Settlement Agreement's becoming effective, any and all

provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to
> claims which the creditor does not know or suspect to exist in his favor at the time
> of executing the release, which if known by him must have materially affected his
> settlement with the debtor;

or by any law or any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to § 1542 of the California Civil Code.  Each Class Releasor

may hereafter discover facts other than or different from those which he, she or it knows or

believes to be true with respect to the claims which are the subject matter of this Paragraph 12,

but each Class Releasor hereby expressly waives and fully, finally and forever settles and

releases, upon this Agreement's becoming effective, any known or unknown, suspected or

unsuspected, contingent or non-contingent Released Class Claims with respect to the subject

matter of this Paragraph 12 whether or not concealed or hidden, without regard to the subsequent

303927v1

- 13 -

discovery or existence of such different or additional facts.  Each Class Releasee also hereby expressly waives and fully, finally and forever settles and releases any and all Released Class Claims it may have against Defendants under § 17200, *et seq.*, of the California Business and Professions Code relating to the marketing, sale, purchase, cost, reimbursement amount or price of the BMS Subject Drugs during the Class Period, which claims are expressly incorporated into this Paragraph 12.

13.  <u>Reservation of Claims</u>.  Notwithstanding Paragraph 12 above, "Released Class Claims" shall not include any claim against any person or entity that is not a BMS Group Releasee, any claim arising out of this Agreement, any claim between any Class Member and any BMS Group Releasee that is unrelated to the allegations of the MDL Complaints and/or the marketing, sale, purchase, cost, reimbursement amount or price of BMS Subject Drugs, and any claim relating to the efficacy or safety of BMS Subject Drugs.

14.  <u>Preservation of Rights</u>.  The parties hereto agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party (other than those that have been compromised herein), and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by the BMS Group or of the truth of any of the claims or allegations contained in any complaint or any other pleading, whether in the MDL Class Actions or in any other action or proceeding.  The parties expressly reserve all their rights if this Agreement does not become final and effective substantially in accordance with the terms of this Agreement.

15.  <u>Effect of Termination</u>.  If this Agreement is terminated pursuant to Paragraph 10 hereto, or the Effective Date is prevented from occurring for any reason, then (a) this Agreement shall be of no force or effect, except for incurred payment of notice costs as referenced herein;

303927v1

(b) any release by Class Members or Named Plaintiffs pursuant hereto shall be of no force or effect; and (c) the parties shall be returned to their original positions as if this Agreement had not existed. The parties expressly reserve all of their rights if this Agreement is terminated or does not become final and effective.

16.    <u>No Admission</u>.  Nothing in this Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by any BMS Group Releasee including, without limitation, that any BMS Group Releasee has engaged in any conduct or practice that violates any unfair and deceptive trade practices statute or other law. Neither this Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by any BMS Group Releasee as to the validity of any claim that the Named Plaintiffs or Class Members have or could have asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by the BMS Group Releasees. Neither this Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith nor the fact of this Agreement, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with (a) settlement discussions in other MDL Class Actions; (b) the parties' application for approval or enforcement of this Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the Class; and (c) any other disputes arising from this Agreement.

17.    <u>Stay and Resumption of Proceedings</u>.  The parties agree, subject to the preliminary approval of the MDL Court of the Settlement, that all Class proceedings in the MDL Class Actions as relate to any BMS Group Releasee, other than proceedings relating to the

303927v1

- 15 -

Settlement contemplated herein, shall be stayed.  In the event that this Agreement is not approved by the MDL Court or the Settlement is terminated or the Effective Date is prevented from occurring, all such stayed proceedings in the MDL Class Actions as relate to any BMS Group Releasee will resume in a reasonable manner to be approved by the MDL Court.

18.     Dismissal of Claims.  The parties agree that upon the Effective Date of this Agreement in accordance with Paragraph 9 above, all Released Class Claims shall be released pursuant to the terms of this Agreement and shall be dismissed with prejudice pursuant to the Final Order of Approval.  The parties further agree that upon the Effective Date, they will take all steps necessary under the Federal Rules of Appellate Procedure and the rules of the United States Court of Appeals for the First Circuit to dismiss with prejudice and without costs to any party BMS's pending appeal relating to the Massachusetts Classes.

19.     Consent to Jurisdiction.  The BMS Group and the Class Plaintiffs hereby irrevocably submit to the exclusive jurisdiction of the MDL Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement.

20.     Resolution of Disputes; Retention of Jurisdiction.  Any disputes between or among the BMS Group and any Class Members concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the MDL Mediator, and then, if they cannot be resolved by the MDL Mediator, to the MDL Court.  The MDL Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

21.     Enforcement of Agreement.  Notwithstanding Paragraph 16 above, this Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Class Claims and may be filed, offered and received into evidence and otherwise used for such defense.

303927v1

22.   Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

23.   Authorization to Enter Agreement.  The undersigned representative of BMS Group represents that s/he is fully authorized to enter into and to execute this Agreement on behalf of the BMS Group.  Lead Class Counsel represent that they are fully authorized to conduct settlement negotiations with defense counsel on behalf of the Class Representatives and Class Members and to enter into, and to execute, this Agreement on behalf of the Class Representatives and Class Members, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

24.   No Party Is the Drafter.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

25.   Choice of Law.  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of Massachusetts without regard to its choice of law or conflict of laws principles.

26.   Amendment or Waiver.  This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

27.   Execution in Counterparts.  This Agreement may be executed in counterparts. Facsimile or PDF signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the MDL Court.

28.   <u>Integrated Agreement</u>.  This Agreement, including the exhibits hereto, contains an

entire, complete, and integrated statement of each and every term and provision agreed to by and

between the parties hereto.   All prior settlement negotiations are merged herein.

29.   <u>Construction</u>.  This Agreement shall be construed and interpreted to effectuate the

intent of the parties, which is to provide, through this Agreement, for a complete resolution of

the Released Claims with respect to the BMS Group Releasees.


IN WITNESS WHEREOF, the parties hereto, through their fully authorized

representatives, have executed this Agreement as of the date first herein above written.


DATED:  August 4, 2009                    By _____

                                          Thomas M. Sobol (BBO#471770)
                                          Edward Notargiacomo (BBO#567636)
                                          Hagens Berman Sobol Shapiro LLP
                                          One Main Street, 4th Floor
                                          Cambridge, MA  02142
                                          Telephone: (617) 482-3700
                                          Facsimile: (617) 482-3003

                                          **LIAISON COUNSEL**

                                          Steve W. Berman
                                          Sean R. Matt
                                          Hagens Berman Sobol Shapiro LLP
                                          1301 Fifth Avenue, Suite 2900
                                          Seattle, WA  98101
                                          Telephone: (206) 623-7292
                                          Facsimile: (206) 623-0594

                                          Jeffrey Kodroff
                                          John Macoretta
                                          Spector, Roseman, Kodroff & Willis, P.C.
                                          1818 Market Street, Suite 2500
                                          Philadelphia, PA  19103
                                          Telephone: (215) 496-0300
                                          Facsimile: (215) 496-6611

303927v1

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

**COUNSEL FOR DEFENDANT BMS
GROUP**

By _____
Lyndon M. Tretter
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022

303927v1

- 19 -

## INDEX OF EXHIBITS TO SETTLEMENT AGREEMENT

| Exhibit No. | Title |
|---|---|
| A | [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE BMS CLASS SETTLEMENT, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING |
| B | [PROPOSED] FORMS OF NOTICE |
| C | [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT WITH THE BMS GROUP, APPROVING PROPOSED ALLOCATION OF SETTLEMENT FUNDS, AND APPROVING CLASS COUNSELS' APPLICATION FOR ATTORNEYS FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES |
| D | CLASS ESCROW AGREEMENT |
| E | BMS TERMINATION RIGHTS (FILED UNDER SEAL) |
| F | DISTRIBUTION PLAN AND CLAIMS PROCESS |
| G | NOTICE PLAN |

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| BMS | Judge Patti B. Saris |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF THE BMS CLASS SETTLEMENT, DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING

WHEREAS, this matter has come before the Court pursuant to *Plaintiffs' Motion for Entry of an Order Granting Preliminary Approval of the BMS Class Settlement and Approving the Form and Method of Notice to the Class* (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties for purposes of settlement;

WHEREAS, this Court has conducted a preliminary approval hearing on _____, 2009, has considered all of the submissions related to the Motion and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

### I.      PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

1.      The terms of the Settlement Agreement and Release of the BMS Group dated July __, 2009, including all Exhibits thereto (the "Agreement"), attached to the Motion, are hereby

preliminarily approved subject to further consideration thereof at the Fairness Hearing provided for below. This Order incorporates herein, and makes a part hereof, the Agreement. Unless otherwise provided herein, the terms defined in the Agreement shall have the same meanings herein. The Agreement was entered into only after extensive arms'-length negotiation by experienced counsel and with the assistance and oversight of MDL Mediator Eric Green. The Court finds that the settlement embodied in the Agreement is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in paragraphs 7 and 8 of this Order. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation.

## II.   THE CLASS, REPRESENTATIVES AND CLASS COUNSEL

2.     The Classes are defined as follows:

a.     Consistent with the Court's January 30, 2006 *Order Re: Motion for Class Certification*, the Medicare Part B Co-Payment Class ("Class 1") is comprised of all natural persons nationwide who made, or were liable for all or any portion of, a Medicare Part B co-payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004. Excluded from Class 1 are those who made flat co-payments, who were reimbursed fully for their co-payments, or who have the right to be fully reimbursed, as well as officers, directors, management and employees of the BMS Group or their subsidiaries and affiliates. Previously excluded from the litigation class certified on January 30, 2006 were residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia; these residents are now included in Class 1 for purposes of the Settlement. The BMS Subject Drugs are:

Blenoxane, Cytoxan, Etopophos, Paraplatin, Rubex, Taxol and Vepesid.

      b.      The Third-Party Payor MediGap Supplemental Insurance Class ("Class 2") is comprised of all TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment based on AWP for a BMS Subject Drug. Excluded from Class 2 are the officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.

      c.      The Consumer and Third-Party Payor Class for Payments Made Outside the Medicare Context ("Class 3") is comprised of all natural persons nationwide who made, or were liable for all or any portion of, a non-Medicare Part B payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004, and all TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, non-Medicare Part B reimbursements based on AWP for any BMS Subject Drug. Excluded from Class 3 are those consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, as well as the officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.

Also excluded from all Classes are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

      3.      The Court preliminarily finds that the proposed settlement Classes meet all the

applicable requirements of FED. R. CIV. P. 23(a) and (b)(3), and hereby certifies the Classes for settlement purposes only. The Court hereby incorporates the findings of its August 16, 2005 and January 30, 2006 *Orders Re: Motion for Class Certification* for Class 1. The Court further preliminarily finds, in the specific context of this Settlement only, that:

        a.     *Numerosity.* The Classes consists of tens-of-thousands of members located throughout the United States and satisfy the numerosity requirement of FED. R. CIV. P. 23(a). Joinder of these widely-dispersed, numerous Class Members into one suit would be impracticable.

        b.     *Commonality.* Common questions of law and fact with regard to the alleged activities of the BMS Group exist for each of the members of the Classes in this case. These issues are central to this case and are sufficient to establish commonality.

        c.     *Typicality.* Plaintiffs have claimed during this litigation that BMS violated various state consumer protection statutes, RICO and other state and federal laws, by unlawfully manipulating Average Wholesale Prices ("AWPs") reported by various industry publications for the BMS Subject Drugs. As a result, Class Members allegedly paid more for the BMS Subject Drugs than they would have in the absence of the alleged unlawful conduct. These claims are typical of every member of the Classes. Therefore, the element of typicality is satisfied.

        d.     *Adequate Representation.* Plaintiffs' interests do not conflict with those of absent members of the Classes, and Plaintiffs' interests are co-extensive with those of absent Class Members. Additionally, this Court recognizes the experience of Lead Class Counsel Hagens Berman Sobol Shapiro LLP, Wexler Wallace LLP, Spector Roseman, Kodroff & Willis, PC, and Hoffman & Edelson LLC and finds that the requirement of adequate representation of the Classes has been fully met under FED. R. CIV. P. 23(g).

e. *Predominance of Common Issues.* Plaintiffs commonly assert that the BMS Group's actions caused the AWPs for the BMS Subject Drugs to be inflated, in turn causing all Class Members to pay more for the BMS Subject Drugs. In the context of this Settlement, these issues predominate over any individual questions, favoring class treatment.

f. *Superiority of the Class Action Mechanism.* The class action mechanism provides a superior procedural vehicle for settlement of this matter compared to other available alernatives. Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

4. The designated representatives of the Classes are as follows. Class 1: Agnes Swayze. Class 2: United Food and Commercial Workers Unions and Employees Midwest Health Benefits Fund and Sheet Metal Workers National Health Fund. Class 3: Cheryl Barreca, Anna Choice, Joyce Dison, Donna Kendall, Sandra Leef, Gerald Miller, Constance Nelson, Andrea Palenica, Scott Tell, Pauline Vernick, Mardolyn Vescovi, United Food and Commercial Workers Unions and Employees Midwest Health Benefits Fund, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund, and Teamsters Health & Welfare Fund of Philadelphia and Vicinity.

5. The Court further preliminarily finds that the following firms fairly and adequately represent the interests of the Class and hereby appoints them as Lead Class Counsel pursuant to FED. R. CIV. P. 23(g):

Hagens Berman Sobol Shapiro LLP

1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603

Hoffman & Edelson, LLC
45 West Court Street
Doylestown, PA 18901

6.     If the Agreement is terminated or is not consummated for any reason whatsoever,
the certification of the settlement Classes shall be void, and Plaintiffs and Defendants shall be
deemed to have reserved all of their rights as set forth in the Agreement, including but not
limited to the issues related to all claims, defenses and issues under Rule 23.

## II.     NOTICE TO CLASS MEMBERS

7.     The Court has considered the proposed notices and program for dissemination
thereof attached as Exhibits _____ to the Settlement Agreement (collectively, the "Notice
Plan") and finds that the Notice Plan meet the requirements of due process and FED. R. CIV. P.
23(c) and (e), constitute the best notice practicable under the circumstances to all persons entitled
to notice and satisfy the Constitutional requirements of notice.   The Court approves the Notice
Plan in all respects and orders that notice be given in substantial conformity therewith
commencing on or about _____, 2009.   One-half of the reasonable costs of preparing,
printing, publishing, mailing and otherwise disseminating the notice, up to a maximum of
$1,000,000, shall be paid by BMS in accordance with the Settlement Agreement, with the other
half and any other amounts over the BMS maximum being advanced and reimbursed from the
settlement fund.

8.     The Claims Administrator is Complete Claim Solutions.  Responsibilities of the Claims Administrator shall include the following:  (a) establishing a post office box and toll-free phone number (to be included in the Long Form Notices and the Summary Notices (together, the "Notices" to the Class)) for purposes of communicating with Class members; (b) establishing and maintaining a website for purposes of posting the Notices, the Agreement and related documents; (c) accepting and maintaining documents sent from Class members, including Claim Cards and other documents relating to claims administration; and (d) administering claims for the allocation of the settlement funds among Class Members.

### III.     REQUEST FOR EXCLUSION FROM THE CLASS

9.     Class 1 members residing in Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia <u>only</u> who wish to be excluded from Class 1, and Class 2 and 3 members outside of Massachusetts who wish to be excluded from Classes 2 and 3 shall mail a written notice of exclusion to the Claims Administrator, so that it is received no later than _____, 2009 and shall clearly state the following:  the name, address, taxpayer identification number, telephone number and fax number (if any) of the individual or TPP who wishes to be excluded from the Class.  Each TPP must also identify its number of insured lives as of the date of the written notice of exclusion in order to be excluded.  Class 1 Members residing in other states, and Class 2 and 3 members in Massachusetts, have already been provided with an opportunity to be excluded from the litigation class after notice of pendency and shall not be provided another opportunity to request exclusion here.

10.     Valid Class Opt-Outs shall not be bound by the Agreement, the Settlement, or the Final Order and Judgment.  Upon receipt, the Claims Administrator shall promptly provide copies of each notice of exclusion to Lead Class Counsel and BMS's Counsel.

11.     Any member of the Classes that does not properly and timely mail a notice of exclusion as set forth in paragraph 9 above shall be automatically included in the Classes and shall be bound by all the terms and provisions of the Agreement and the Settlement and the Final Order and Judgment, whether or not such member of the Classes shall have objected to the Settlement and whether or not such member of the Classes makes a claim upon or participates in the Settlement.

### IV.     DISTRIBUTION PLAN AND CLAIMS PROCESS

12.     The Court preliminarily approves the Distribution Plan and Claims Process set forth in Exhibit F to the Settlement Agreement.

13.     To effectuate the Settlement and the provisions of the Notice Plan, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and Claim Cards and supporting documentation, if any, required under the Distribution Plan and Claims Process.  The Claims Administrator shall preserve (on paper or transferred into electronic format) all notices of exclusion, Claim Cards, and any and all other written documentation or communications from members of the Classes in response to the Notices for a period of five (5) years, or pursuant to further order of the Court.  All materials received by the Claims Administrator from members of the Classes relating to the Agreement shall be available at all reasonable times for inspection and copying by Lead Class Counsel and BMS's Counsel, prior to payments being mailed to each Class Member.

14.     In order to be entitled to participate in the Settlement if it is effected in accordance with all of the terms and conditions set forth in the Agreement, each member of the Classes shall take the following actions and be subject to the following requirements as determined in the Distribution Plan and Claims Process:

(a)     Each Claim must satisfy the following conditions:  (i) the Claim must be properly completed in accordance with the instructions thereon and submitted in a timely manner in accordance with subparagraph (a) of this paragraph along with any supporting documentation required under subparagraph (a); and (ii) the Claim must be signed under penalty of perjury;

(b)     Each Claim and supporting documentation, if any, shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to Lead Class Counsel about which claims should be allowed in whole or in part;

(c)     The Claims Administrator will notify each member of the Classes who filed a Claim of any recommendation of disallowance, in whole or in part, of the Claim submitted by such Class Member and will set forth the reasons for any such disallowance.  Class Members shall be permitted a reasonable period of time to cure any deficiency with respect to their respective Claim and/or supporting documentation that is identified.  A copy of such notification shall also be sent by the Claims Administrator to Lead Class Counsel;

(d)     All members of the Classes who do not submit timely Claims or required supporting documentation, or submit Claims that are disallowed and/or non-conforming supporting documentation that are not cured, shall be barred from participating in the Settlement (except to the extent that a Claim may be partially allowed) but otherwise shall be bound by all of the terms and provisions of the Agreement; and

(e)     Each member of the Classes who submits a Claim shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Agreement.

## V.     CLASS SETTLEMENT FUND

15.     The Court find that the Escrow Account is a "qualified settlement fund" as

defined in Section 1.468B-1(c) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)     The Escrow Account is established pursuant to an Order of this Court and is subject to the continuing jurisdiction of this Court;

(b)     The Escrow Account is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

(c)     The assets of the Escrow Account are segregated from other assets of BMS, the transferor of the payment to the Settlement Fund.

16.     Under the "relation back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)     The Escrow Account met the requirements of paragraphs 15(a) and 15(b) of this Order prior to the date of this Order approving the establishment of the Escrow Account subject to the continued jurisdiction of this Court; and

(b)     BMS and the Claims Administrator may jointly elect to treat the Class Escrow Account as coming into existence as a "qualified settlement fund" on the latter of the date the Class Escrow Account met the requirements of paragraph 15(b) and 15(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 15 of this Order are met. If such a relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Escrow Account on that date.

## VI.    CONFIDENTIALITY

17.    Any information received by the Claims Administrator in connection with this Settlement that pertains to a particular member of the Classes, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Lead Class Counsel, BMS, and the Court, or as otherwise provided in the Agreement.

## VII.    FAIRNESS HEARING

18.    A hearing on final settlement approval (the "Fairness Hearing") will be held on _____, 2009 at _____ before this Court, at the United States District Court for the District of Massachusetts, One Courthouse Way, Boston, Massachusetts 02210, to consider, *inter alia*, the following:  (a) whether the settlement Classes should be finally certified; (b) the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the MDL Class Actions as to BMS, and the entry of final judgment as to BMS; (c) whether Class Counsel's application for attorneys' fees, expenses and incentive awards for the Class Representatives ("the Fee Petition") should be granted; and (d) whether to approve the Distribution Plan and Claims Process.

19.    On or before _____, Class Counsel shall file with the Court:  (i) any memoranda or other materials in support of final approval of the Settlement; and (ii) any Fee Petition. On or before _____, BMS shall file with the Court any memoranda or other materials regarding item (i).

20.    Any member of the Classes that has not filed a notice of exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness,

reasonableness and adequacy of the Settlement, the dismissal with prejudice of The BMS Group, the entry of final judgment as to The BMS Group, and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless submitted to the Court and served upon Counsel for the parties on or before _____. Such person must (a) file with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition on or before _____, and (b) serve copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon Counsel to the parties on or before _____. Class Members who fail to object in the manner and by the dates provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

21.     Counsel for the parties who must be served with all documentation described above in Paragraph 20 are as follows:

Counsel for the Class

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101


Counsel for Defendant BMS

Lyndon M. Tretter
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022

22.     The date and time of the Fairness Hearing shall be set forth in the Notice and

Summary Notice, but shall be subject to adjournment by the Court without further notice to the members of the Classes other than that which may be posted at the Court, on the Court's website, and/or the website to be established pursuant to the Notice Plan.

23.     All proceedings in the MDL Class Actions with respect to BMS are stayed and suspended, pending the Final Approval of the Settlement ("Final Approval"), except such proceedings as are provided for in the Agreement, or which may be necessary to implement the terms of the Agreement, the Settlement, or this Order.

24.     Any Class member may hire an attorney at his or her or its own expense to appear in the action.  Such attorney shall serve a Notice of Appearance on the Counsel listed in Paragraph 21 above by _____, and file it with the Court on or before

_____.

25.     Pending Final Approval, no Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Class), shall commence, continue or prosecute against any BMS Group Releasee any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released upon Final Approval pursuant to the Agreement, such Class Members and are hereby enjoined from so proceeding.  Upon Final Approval, all Class Members who do not file a timely notice of exclusion shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released pursuant to the Agreement, and any such Class Member shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Agreement.

## VIII.   OTHER PROVISIONS

26.     Upon Final Approval, each and every term and provision of the Agreement

(except as may be modified by this Order and the Final Approval Order) shall be deemed incorporated into the Final Order and Judgment as if expressly set forth and shall have the full force and effect of an Order of the Court.

27.    In the event the Settlement is terminated in accordance with the provisions of the Agreement, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Agreement, and without prejudice to the *status quo ante* rights of Plaintiffs and the BMS Group.

28.    Neither this Order nor the Agreement shall constitute any evidence or admission of liability by the BMS Group, nor shall it be offered in evidence in this or any other proceeding except to (a) consummate or enforce the Agreement or the terms of this Order, or (b) by any Releasee in connection with any action asserting Released Claims.

Date:_____            _____
                                        Patti B. Saris
                                        United States District Judge

## EXHIBIT B

### PROPOSED FORMS OF NOTICE

INITIAL SUMMARY NOTICE AND CLAIM CARD FOR CLASS 1

318016

# Did You Pay All or A Percentage of the Co-Payment for Certain Bristol-Myers Squibb Chemotherapy Drugs?

| The chemotherapy drugs are: | |
| --- | --- |
| Blenoxane® | Rubex® |
| Cytoxan® | Taxol® |
| Etopophos® | Vepesid® |
| Paraplatin® | |

## If So, You May Be Able To Get Money Back.

Dear Medicare Part B Subscriber:

You received this legal notice because the Centers for Medicare and Medicaid Services indicate that you were administered certain Bristol-Myers Squibb ("BMS") chemotherapy drugs for which there may be a refund because of a class action lawsuit.

You may be able to get money back if:

- You paid all or part of the percentage co-payment under Medicare Part B from January 1, 1991 to through December 31, 2004 for these drugs.

- If you had supplemental insurance but still paid a percentage co-payment, there may be a refund available to you.

A percentage co-pay varies with the cost of the drug. A flat co-pay never varies; it's always the same no matter how much the drug costs. If you paid no co-payments or only flat co-payments because of supplemental insurance, there is no refund.

## What is this About?

- There is a proposed class action settlement with BMS involving the drugs Blenoxane®, Cytoxan®, Etopophos®, Paraplatin®, Rubex®, Taxol® and Vepesid®.

318016

- The class action claims that customers paid too much for the drugs included in the settlement.

- BMS has agreed to pay $19 million to settle the lawsuit. Approximately $4,370,000 will be available to pay consumer claims. From this amount, refunds to consumers will be made after certain fees and expenses are deducted.

### How do I Apply for a Refund?

1. Fill out the attached Claim Card and mail it back. **It must be postmarked by MONTH DAY, 2009.**

2. Truthfully sign that you made percentage co-payments for drugs under Medicare Part B during the time period above.

### What Happens Next?

1. You will be sent complete information on your legal rights to participate or not.

2. When you get the information, you must decide either to remain in the settlement or exclude yourself. Excluding yourself means that you keep your rights to sue BMS on your own. It also means you can't get a refund from this lawsuit. You will be provided full information on how to exclude yourself.

3. If after you read the information you decide to remain in the settlement, you do not have to do anything else. You will receive a check if the Court approves the settlement.

[[PARAGRAPHS 2 AND 3 USED ONLY FOR RESIDENTS IN AL, AK, GA, IA, KY, LA, MS, MT, AND VA]]

318016

**Front of Claim Card**

If you made percentage co-payments for certain chemotherapy drugs at some point between January 1, 1991 to December 31, 2004, fill out this card and mail it on or before **MONTH DAY, 2009.**  You will receive more complete information later.

☐ Yes, I made a percentage co-payment under Medicare Part B for one or more of the following chemotherapy drugs – Blenoxane®, Cytoxan®, Etopophos®, Paraplatin®, Rubex®, Taxol® and Vepesid® – at least once during the time period January 1, 1991 through December 31, 2004.

I sign under pain of perjury that the above is true to the best of my knowledge.

_____

*(Signature)*

Name: _____

Street: _____

City: _____   State: _____   Zip: _____

Telephone: _____   Email address: _____

318016

CLASS 1 LONG FORM NOTICE WITHOUT OPT-OUT RIGHTS

Authorized by the U.S. District Court for the District of Massachusetts

# If you made All or a Percentage of the Medicare Part B Co-Payment for Certain Chemotherapy Drugs

### From January 1, 1991 to December 31, 2004,
### You may be able to get money back.

**The chemotherapy drugs are:**

- Blenoxane®
- Cytoxan®
- Etopophos®
- Paraplatin®
- Rubex®
- Taxol®
- Vepesid®

These drugs (referred to as the "BMS Drugs") are used for the treatment of several serious medical conditions. They are most often, but not always, injected in a doctor's office or clinic.

## Can I Get Money Back?

You can get a refund if you were a Medicare Part B beneficiary who paid all or a *percentage of the co-payment* for any of the BMS drugs from January 1, 1991 through December 31, 2004. A percentage co-payment varies with the cost of the drug. You cannot get a refund if you paid a flat co-payment.

## How Much Can I Get Back?

Approximately $4,370,000 will be paid to consumers who file valid claims.

- **You can get up to three times your co-payment amount** for some of the BMS drugs simply by returning a Claim Card, which you may have already done.

*Your legal rights are affected even if you do not act.*

*Read this Notice carefully.*

# 1. What Is This Notice About?

- You were mailed this Notice because the Centers for Medicare and Medicaid Services ("CMS") indicate that you are or were a Medicare Part B beneficiary who may have paid all or a percentage of the co-payment for BMS Drugs between January 1, 1991 and December 31, 2004. Or, you may have requested this Notice after returning a Claim Card or seeing the Summary Notice in a publication. *Please note that CMS has not provided anyone involved with this case with your medical records.*

- There is a Proposed Settlement of a class action lawsuit involving Bristol-Myers Squibb ("BMS") drugs Blenoxane®, Cytoxan®, Etopophos®, Paraplatin®, Rubex®, Taxol® and Vepesid® (referred to as the "BMS Drugs").

- This lawsuit is not about whether these drugs are safe or effective. This lawsuit is about the amount that you were charged for the drugs. The class action claims that customers paid too much for the drugs.

- BMS has agreed to pay $19 million to settle the class action. Approximately $4,370,000 will be available to pay consumer claims, including those consumers who participated in Medicare Part B and those who paid all or a portion of a bill for for BMS Drugs outside of the Medicare Part B program based on a figure called the "Average Wholesale Price.". The remaining $14,630,000 is eligible for allocation to third-party payors such as insurance companies.

- If you paid all the co-payment or made a percentage co-payment under Medicare Part B for the BMS Drugs, you can get money back. A percentage co-payment varies with the cost of the drug. A flat co-payment never varies; it's always the same no matter how much the drug costs.

- You can obtain a complete copy of the Settlement Agreement by visiting www.BMSAWPSettlement com.

# 2. What Is The Lawsuit About?

The Average Wholesale Price ("AWP") is used to set reimbursement amounts that are paid by a) Medicare and its beneficiaries, b) private health insurers, and c) consumers making percentage co-payments under private health insurance plans. The lawsuit claims that BMS reported false and inflated AWPs for the drugs covered in this Proposed Settlement. BMS contends that it reported true and accurate list prices and denies any wrongdoing. The Proposed Settlement is not an admission of wrongdoing or an indication that any law was

318015

violated, and BMS is entering the Settlement to avoid the cost and uncertainty of future litigation.

The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456.

## 3. How Do I Know If I Am Included In The Proposed Settlement?

You are part of the Proposed Settlement if you made, or were obligated to make all of the co-payment or a percentage co-payment under Medicare Part B for one or more of the BMS Drugs from January 1, 1991 through December 31, 2004.

A spouse of a deceased class member who made such a co-payment or a legal representative of a deceased class member's estate may file a claim.

Excluded from the Proposed Settlement are (1) consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, and (2) BMS and certain related entities as defined in the Settlement Agreement. Also excluded from the Proposed Settlement are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

**You are not a member of a Class if you made flat co-payments, if insurance paid all of your co-payment, or if you were never obligated to make a co-payment at all.**

**IMPORTANT:** *This is not a bill or a collection notice. The Court is not suggesting, requesting or requiring that you pay your doctor or pharmacist now or that you are obligated to do so.*

## 4. What Do I Need To Do To Get A Payment?

In order to receive money under this proposed settlement you must have completed and returned the Claim Card and indicated whether you made a full or partial percentage co-payment for a BMS Drug under Medicare Part B. You may have already received and returned a Claim Card. If not, you can obtain one by visiting the BMS AWP Settlement Web site at BMSAWPSettlement.com, or by calling 1-877-xxx-xxxx.

*Note:* If you made percentage co-payments or paid fully for the BMS Drugs *outside* of the Medicare Part B program between January 1, 1991 and December 31, 2004, you need another claim form. Call 1-877-xxx-xxxx for a form to fill out for a refund of these payments.

## 5. How Are Payments Determined?

The Claims Administrator will calculate your claim amount. Your reimbursement will be calculated by adding two amounts:

- Payment obligations for Cytoxan®, Taxol® and Vepesid® from January 1, 1991 through December 31, 2004 multiplied by a factor of three (3x); and

- Payment obligations for Blenoxane®, Etopophos®, Paraplatin®, Rubex® inside this time period (with no multiplication factor).

The sum of these two figures will be your "Total Recognized Claim". If there is enough money based on the number of claims received, your payment will be 100% of your Total Recognized Claim. If there is not enough money to pay all consumers 100% of their Total Recognized Claims, each consumer's claim will be reduced proportionately.

If there are any unclaimed consumer monies all Authorized Consumer Claimants have been paid according to their Total Recognized Claim, then the disposition of any remaining monies will be decided by the Court. If this happens, no monies will be paid from the consumer pool to BMS or to third-party payors.

Please remember that you cannot exclude yourself by calling or by sending an email.

## 6. May I Object To, Or Comment On, The Proposed Settlement?

Yes. If you have comments about, or disagree with, any aspect of the Proposed Settlement, you may express your views to the Court. You must do this in writing. Your written response should include:

- Your name, address, telephone number, a brief explanation of your reasons for objection, and

- The case number (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456).

The document **must** be signed to ensure the Court's review. The response must be filed with the Court at the following address on or before _____, **2009**: Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210 and served on Counsel for the Parties on or before _____, **2009** at the following addresses:

318015

| Counsel for the Class | Counsel for BMS |
|---|---|
| Steve W. Berman | Lyndon M. Tretter |
| Hagens Berman | Hogan & Hartson LLP |
| Sobol Shapiro LLP | 875 Third Avenue |
| 1301 Fifth Avenue | New York, NY 10022 |
| Suite 2900 | |
| Seattle, WA 98101 | |

In addition, your document must clearly state that it relates to the "BMS Settlement." If you file or present an objection, you will be subject to the jurisdiction of the Court.

## 7. Do I Have A Lawyer Representing My Interests In This Case?

Yes. The Court has appointed the following law firms to represent you and other Settlement Class Members:

Hagens Berman Sobol Shapiro LLP
www.hbsslaw.com
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Spector Roseman & Kodroff, PC
www. srk-law.com
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Wexler Toriseva Wallace LLP
www.wtwlaw.us
55 W. Monroe, Suite 3300
Chicago,IL 60603

Edelson & Associates LLC
45 West Court Street
Doylestown, PA 18901

These lawyers are called Class Counsel. You won't be charged personally for these lawyers. Class Counsel will ask the Court to award them a fee of up to 33 1/3% plus interest and litigation expenses. You don't need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (see Question 8). Hiring a lawyer to appear for you in the lawsuit will be at your own expense.

318015

## 8. When And Where Will The Court Decide On Whether To Grant Final Approval Of The Proposed Settlement?

The Court will hold a Hearing on _____, 2009 at 2:00 p.m. to consider whether it is fair, reasonable and adequate. At the Hearing, the Court will also consider whether to approve the Proposed Settlement; the request for attorneys' fees and expenses; and any comments or objections. You are not required to attend, but may do so at your own expense.

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance must include:

- Your name, address, telephone number, signature;

- The name, and number of the lawsuit (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456);

- State that you wish to enter an appearance at the Final Approval Hearing; and

- Any documentation in support of such opposition.

Your Notice of Appearance **must** be filed with the Court on or before _____, **2009** and served on Counsel by _____, **2009.** You cannot speak at the Hearing if you previously asked to be excluded from the Proposed Settlement Class and are not submitting a Claim Form now. The Notice of Appearance must be filed with the Court and served on Counsel at the addresses set forth above in response to Question 6.

## 9. Where Do I Obtain More Information?

More details and all other legal documents that have been filed with the Court in this lawsuit are available. They can be viewed and copied at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the BMS Settlement website at www.BMSAWPSettlement.com

- Call toll-free 1-877-xxx-xxxx

318015

- Write to:   BMS AWP Settlement
              Administrator P.O. xxxx
              West Palm Beach, FL   33416


DATED: _____, 2009                    **BY ORDER OF THE COURT**

318015

CLASS 1 LONG FORM NOTICE WITH OPT-OUT RIGHTS

(For residents of AL, AK, GA, IA, KY, LA, MS, MT and VA)

**[[for residents of AL, AK, GA, IA, KY, LA, MS, MT and VA]]**

Authorized by the U.S. District Court for the District of Massachusetts

# If you made All or a Percentage of the Medicare Part B Co-Payment for Certain Chemotherapy Drugs

## From January 1, 1991 to December 31, 2004, You may be able to get money back.

### The chemotherapy drugs are:

- Blenoxane®
- Cytoxan®
- Etopophos®
- Paraplatin®

- Rubex®
- Taxol®
- Vepesid®

These drugs (referred to as the "BMS Drugs") are used for the treatment of several serious medical conditions. They are most often, but not always, injected in a doctor's office or clinic.

## Can I Get Money Back?

- You can get a refund if you were a Medicare Part B beneficiary who paid all or a *percentage of the co-payment* for any of the BMS drugs from January 1, 1991 through December 31, 2004. A percentage co-payment varies with the cost of the drug. You cannot get a refund if you paid a flat co-payment.

## How Much Can I Get Back?

Approximately $4,370,000 will be paid to consumers who file valid claims.

- **You can get up to three times your co-payment amount** for some of the BMS drugs simply by returning a Claim Card, which you may have already done.

*Your legal rights are affected even if you do not act.*

*Read this Notice carefully.*

## 1. What Is This Notice About?

- You were mailed this Notice because the Centers for Medicare and Medicaid Services ("CMS") indicate that you are or were a Medicare Part B beneficiary who may have paid all or a percentage of the co-payment for BMS Drugs between January 1, 1991 and December 31, 2004. Or, you may have requested this Notice after returning a Claim Card or seeing the Summary Notice in a publication. *Please note that CMS has not provided anyone involved with this case with your medical records.*

- There is a Proposed Settlement of a class action lawsuit involving Bristol-Myers Squibb ("BMS") drugs Blenoxane®, Cytoxan®, Etopophos®, Paraplatin®, Rubex®, Taxol® and Vepesid® (referred to as the "BMS Drugs").

- This lawsuit is not about whether these drugs are safe or effective. This lawsuit is about the amount that you were charged for the drugs. The class action claims that customers paid too much for the drugs.

- BMS has agreed to pay $19 million to settle the class action. Approximately $4,370,000 will be available to pay consumer claims, including those consumers who participated in Medicare Part B and those who paid all or a portion of a bill for BMS Drugs outside of the Medicare Part B program based on a figure called the "Average Wholesale Price." The remaining $14,630,000 is eligible for allocation to third-party payors such as insurance companies.

- If you paid all the co-payment or made a percentage co-payment under Medicare Part B for the BMS Drugs, you can get money back. A percentage co-payment varies with the cost of the drug. A flat co-payment never varies; it's always the same no matter how much the drug costs.

- You can obtain a complete copy of the Settlement Agreement by visiting www.BMSAWPSettlement.com.

## 2. What Is The Lawsuit About?

The Average Wholesale Price ("AWP") is used to set reimbursement amounts that are paid by a) Medicare and its beneficiaries, b) private health insurers, and c) consumers making percentage co-payments under private health insurance plans. The lawsuit claims that BMS reported false and inflated AWPs for the drugs covered in this Proposed Settlement. BMS contends that it reported true and accurate list prices and denies any wrongdoing. The Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated, and BMS is entering the Settlement to avoid the cost and uncertainty of future litigation.

The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456.

## 3. How Do I Know If I Am Included In The Proposed Settlement?

You are part of the Proposed Settlement if you made, or were obligated to make, all of the co-payment or a percentage co-payment under Medicare Part B for one or more of the BMS Drugs from January 1, 1991 through December 31, 2004.

A spouse of a deceased class member who made such a co-payment or a legal representative of a deceased class member's estate may file a claim.

Excluded from the Proposed Settlement are (1) consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, and (2) BMS and certain related entities as defined in the Settlement Agreement. Also excluded from the Proposed Settlement are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

**You are not a member of a Class if you made flat co-payments, if insurance paid all of your co-payment, or if you were never obligated to make a co-payment at all.**

**IMPORTANT:** *This is not a bill or a collection notice. The Court is not suggesting, requesting or requiring that you pay your doctor or pharmacist now or that you are obligated to do so.*

## 4. What Do I Need To Do To Get A Payment?

In order to receive money under this proposed settlement you must have completed and returned the Claim Card and indicated whether you made a full or partial percentage co-payment for a BMS Drug under Medicare Part B. You may have already received and returned a Claim Card. If not, you can obtain one by visiting the BMS AWP Settlement Web site at BMSAWPSettlement.com, or by calling 1-877-xxx-xxxx.

*Note:* If you made percentage co-payments or paid fully for the BMS Drugs *outside* of the Medicare Part B program between January 1, 1991 and December 31, 2004, you need another claim form. Call 1-877-xxx-xxxx for a form to fill out for a refund of these payments.

## 5. How Are Payments Determined?

The Claims Administrator will calculate your claim amount. Your reimbursement will be calculated by adding two amounts:

- Payment obligations for Cytoxan®, Taxol® and Vepesid® from January 1, 1991 through December 31, 2004 multiplied by a factor of three (3x); and

- Payment obligations for Blenoxane®, Etopophos®, Paraplatin®, Rubex® inside this time period (with no multiplication factor).

The sum of these two figures will be your "Total Recognized Claim". If there is enough money based on the number of claims received, your payment will be 100% of your Total Recognized Claim. If there is not enough money to pay all consumers 100% of their Total Recognized Claims, each consumer's claim will be reduced proportionately.

If there are any unclaimed consumer monies all Authorized Consumer Claimants have been paid according to their Total Recognized Claim, then the disposition of any remaining monies will be decided by the Court. If this happens, no monies will be paid from the consumer pool to BMS or to third-party payors.

## 6. What If I Do Not Want to Be Included In The Proposed Settlement?

If you do not want to be in the Proposed Settlement and you want to keep the right to sue BMS about the same claims on your own, you must take steps to get out of the lawsuit. This is called excluding yourself.

By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against BMS about the claims in this lawsuit.

If you exclude yourself from the Settlement Classes, you will not be able to file a claim for money and you will not be in the Proposed Settlement.

To exclude yourself from the Class, you must send a letter signed by you that includes all of the following:

- Your name, address, telephone number and fax number (if any);

- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456;

- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*

- A statement that you want to be excluded from the Settlement Classes.

Your exclusion letter must be mailed first class, **postmarked no later than _____, 2009,** to: BMS AWP Settlement Administrator, P.O. Box xxxx, West Palm Beach, FL 33416.

Please remember that you cannot exclude yourself by calling or by sending an email.

Failure to exclude yourself **pursuant to the above instructions** will result in your being bound by the Settlement if it is approved.

## 7. May I Object To, Or Comment On, The Proposed Settlement?

Yes. If you have comments about, or disagree with, any aspect of the Proposed Settlement, you may express your views to the Court. You must do this in writing. Your written response should include:

- Your name, address, telephone number, a brief explanation of your reasons for objection, and
- The case number (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456).

The document **must** be signed to ensure the Court's review. The response must be filed with the Court at the following address on or before _____, **2009**: Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210 and served on Counsel for the Parties on or before _____, **2009** at the following addresses:

| Counsel for the Class | Counsel for BMS |
|---|---|
| Steve W. Berman | Lyndon M. Tretter |
| Hagens Berman | Hogan & Hartson LLP |
| Sobol Shapiro LLP | 875 Third Avenue |
| 1301 Fifth Avenue | New York, NY 10022 |
| Suite 2900 | |
| Seattle, WA 98101 | |

In addition, your document must clearly state that it relates to the "BMS Settlement." If you file or present an objection, you will be subject to the jurisdiction of the Court.

## 8. Do I Have A Lawyer Representing My Interests In This Case?

Yes. The Court has appointed the following law firms to represent you and other Settlement Class Members:

| | |
|---|---|
| Hagens Berman Sobol Shapiro LLP | Spector Roseman & Kodroff, PC |
| www.hbsslaw.com | www.srk-law.com |
| 1301 Fifth Avenue, Suite 2900 | 1818 Market Street, Suite 2500 |
| Seattle, WA 98101 | Philadelphia, PA 19103 |

Wexler Toriseva Wallace LLP  
www.wtwlaw.us  
55 W. Monroe, Suite 3300  
Chicago, IL 60603

Edelson & Associates LLC  
45 West Court Street  
Doylestown, PA 18901

These lawyers are called Class Counsel. You won't be charged personally for these lawyers. Class Counsel will ask the Court to award them a fee of up to 33 1/3% plus interest and litigation expenses. You don't need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (see Question 9). Hiring a lawyer to appear for you in the lawsuit will be at your own expense.

## 9. When And Where Will The Court Decide On Whether To Grant Final Approval Of The Proposed Settlement?

The Court will hold a Hearing on _____, 2009 at 2:00 p.m. to consider whether it is fair, reasonable and adequate. At the Hearing, the Court will also consider whether to approve the Proposed Settlement; the request for attorneys' fees and expenses; and any comments or objections. You are not required to attend, but may do so at your own expense.

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance must include:

- Your name, address, telephone number, signature;
- The name, and number of the lawsuit (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456);
- State that you wish to enter an appearance at the Final Approval Hearing; and
- Any documentation in support of such opposition.

Your Notice of Appearance **must** be filed with the Court on or before _____, **2009** and served on Counsel by _____, **2009.** You cannot speak at the Hearing if you previously asked to be excluded from the Proposed Settlement Class and are not submitting a Claim Form now. The Notice of Appearance must be filed with the Court and served on Counsel at the addresses set forth above in response to Question 7.

## 10. Where Do I Obtain More Information?

More details and all other legal documents that have been filed with the Court in this lawsuit are available. They can be viewed and copied at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the BMS Settlement website at www.BMSAWPSettlement.com

- Call toll-free 1-877-xxx-xxxx

- Write to: BMS AWP Settlement
  Administrator P.O. xxxx
  West Palm Beach, FL  33416


DATED: _____, 2009                                  **BY ORDER OF THE COURT**

CLASS 3 CONSUMER NOTICE

Authorized by the U.S. District Court for the District of Massachusetts

# If you made a Percentage Co-Payment or Full Payment for Certain Chemotherapy Drugs Outside of Medicare Part B

### From January 1, 1991 to December 31, 2004, You may be able to get at least $35 back.

### The chemotherapy drugs are:

- Blenoxane®
- Cytoxan®
- Etopophos®
- Paraplatin®
- Rubex®
- Taxol®
- Vepesid®

These drugs (referred to as the "BMS Drugs") are used for the treatment of several serious medical conditions.  They are most often, but not always, injected in a doctor's office or clinic.

## Can I Get Money Back?

You can get a refund if you paid a *percentage co-payment or full payment* for any of the BMS drugs from January 1, 1991 through December 31, 2004 outside of Medicare Part B.  A percentage co-payment varies with the cost of the drug.  You cannot get a refund if you paid a flat co-payment.  A full payment means that you had no insurance and paid for the drug entirely yourself.

## How Much Can I Get Back?

Approximately $4,370,000 will be paid to consumers who file valid claims.

- **You can get up to $35** simply by certifying you paid percentage co-payments or full payments, or
- If you can estimate what you paid and show that you made percentage co-payments or full payments through receipts or bills, you can receive more money.  **For some of the drugs, you can get three times the percentage co-payment.**

*Your legal rights are affected even if you do not act.*
*Read this Notice carefully.*

## 1. What Is This Notice About?

- You received this Notice because you requested it after seeing information about this case in a publication or elsewhere.

- There is a Proposed Settlement of a class action lawsuit involving Bristol-Myers Squibb ("BMS") drugs Blenoxane®, Cytoxan®, Etopophos®, Paraplatin®, Rubex®, Taxol® and Vepesid®.

- This lawsuit is not about whether these drugs are safe or effective. This lawsuit is about the amount that you were charged for the drugs. The class action claims that customers paid too much for the drugs.

- BMS has agreed to pay $19 million to settle the class action. Approximately $4,370,000 will be available to pay consumer claims.

- If you made a percentage co-payment or full payment for the BMS Drugs, you can get money back. A percentage co-payment varies with the cost of the drug. A flat co-payment never varies; it's always the same no matter how much the drug costs. A full payment means that you had no insurance and paid for the drug entirely yourself.

- You can obtain a complete copy of the Settlement Agreement by visiting www.BMSAWPSettlement.com.

## 2. What Is The Lawsuit About?

The Average Wholesale Price ("AWP") is used to set reimbursement amounts that are paid by a) Medicare and its beneficiaries, b) private health insurers, and c) consumers making percentage co-payments under private health insurance plans. This Notice applies to people in group "c)" and to people without insurance who paid for one of the BMS Drugs themselves based on AWP. The lawsuit claims that BMS reported false and inflated AWPs for the drugs covered in this Proposed Settlement. BMS contends that it reported true and accurate list prices and denies any wrongdoing. The Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated. BMS is engaging in the settlement to avoid the cost and uncertainty of future litigation.

The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456.

## 3. How Do I Know If I Am Included In The Proposed Settlement?

You are part of the Proposed Settlement if you made, or are obligated to make:

- A percentage co-payment through a private health insurance plan for a BMS Drug from January 1, 1991 through December 31, 2004.

- Full payment for a BMS Drug from January 1, 1991 through December 31, 2004.

A spouse of a deceased class member who made such a co-payment or full payment or a legal representative of a deceased class member's estate may file a claim.

Excluded from the Proposed Settlement are (1) consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, and (2) BMS and certain related entities as defined in the Settlement Agreement. Also excluded from the Proposed Settlement are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

**You are not a member of a Class if you made flat co-payments, if insurance paid all of your co-payment, or if you were never obligated to make a co-payment at all.**

**IMPORTANT:** *This is not a bill or a collection notice. The Court is not suggesting, requesting or requiring that you pay your doctor or pharmacist now or that you are obligated to do so.*

## 4. What Do I Need To Do To Get A Payment?

You received this Notice because you requested it after seeing information about this case in a publication or elsewhere. If you paid a percentage co-payment or full payment based on AWP for any of the BMS Drugs between January 1, 1991 and December 31, 2004, you have two options to get a payment:

1) You may sign the attached claim form under penalty of perjury, stating that you paid a percentage co-payment with a private health insurance plan or you made full payment on your own based on AWP for at least one of the BMS Drugs during the Class Period. You will receive a payment of up to $35;

**OR**

2) You may complete the attached claim form and provide documentation of your percentage co-payments or full payments for the BMS Drugs during the Class Period, and receive a partial refund of the total amount you spent. Please see Question 5 for more details on how the amount will be determined.

*Note:* If you made percentage co-payments under Medicare Part B between January 1, 1991 and December 31, 2004, you need another claim form.   Call 1-877-xxx-xxxx for a form to fill out for a refund of these percentage co-payments.

## 5. How Are Payments Determined?

If you opt to submit records of your payments instead of opting for a refund of up to $35, the Claims Administrator will calculate your claim amount. It will be based on the information you provide about your total out-of-pocket co-payment obligations under private insurance or full payments for the BMS Drugs during the Class Period.

Your reimbursement will be calculated by adding two amounts:

- Payment obligations for Cytoxan®, Taxol® and Vepesid® from January 1, 1991 through December 31, 2004 multiplied by a factor of three (3x); and

- Payment obligations for Blenoxane®, Etopophos®, Paraplatin®, Rubex® inside this time period (with no multiplication factor).

The sum of these two figures will be your "Total Recognized Claim". If there is enough money based on the number of claims received, your payment will be 100% of your Total Recognized Claim. If there is not enough money to pay all consumers 100% of their Total Recognized Claims, each consumer's claim will be reduced proportionately.

If there are any unclaimed consumer monies all Authorized Consumer Claimants have been paid according to their Total Recognized Claim, then the disposition of any remaining monies will be decided by the Court.   If this happens, no monies will be paid from the consumer pool to BMS or to third-party payors.

## 6. What If I Do Not Want to Be Included In The Proposed Settlement?

If you do not want to be in the Proposed Settlement and you want to keep the right to sue BMS about the same claims on your own, you must take steps to get out of the lawsuit. This is called excluding yourself.

By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit

against BMS about the claims in this lawsuit.

People residing in the State of Massachusetts and who participate in a private health insurance plan have already had the opportunity to exclude themselves. Accordingly, such Massachusetts residents can no longer opt out.

If you exclude yourself from the Settlement Classes, you will not be able to file a claim for money and you will not be in the Proposed Settlement.

To exclude yourself from the Class, you must send a letter signed by you that includes all of the following:

- Your name, address, telephone number and fax number (if any);

- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456;

- If you have hired your own lawyer, the name, address, and telephone number of your lawyer; *and*

- A statement that you want to be excluded from the Settlement Classes.

Your exclusion letter must be mailed first class, **postmarked no later than _____, 2009,** to: BMS AWP Settlement Administrator, P.O. Box xxxx, West Palm Beach, FL 33416.

Please remember that you cannot exclude yourself by calling or by sending an email.

## 7. May I Object To, Or Comment On, The Proposed Settlement?

Yes. If you have comments about, or disagree with, any aspect of the Proposed Settlement, you may express your views to the Court. You must do this in writing. Your written response should include:

- Your name, address, telephone number, a brief explanation of your reasons for objection, and

- The case number (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456).

The document **must** be signed to ensure the Court's review. The response must be filed with the Court at the following address on or before _____, **2009:** Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts

02210 and served on Counsel for the Parties on or before _____, **2009** at the following addresses:

| | |
|---|---|
| Counsel for the Class | Counsel for BMS |
| Steve W. Berman | Lyndon M. Tretter |
| Hagens Berman | Hogan & Hartson LLP |
| Sobol Shapiro LLP | 875 Third Avenue |
| 1301 Fifth Avenue, Suite 2900 | New York, NY 10022 |
| Seattle, WA 98101 | |

In addition, your document must clearly state that it relates to the "BMS Settlement." If you file or present an objection, you will be subject to the jurisdiction of the Court.

## 8. Do I Have A Lawyer Representing My Interests In This Case?

Yes. The Court has appointed the following law firms to represent you and other Settlement Class Members:

| | |
|---|---|
| Hagens Berman Sobol Shapiro LLP | Spector Roseman & Kodroff, PC |
| www.hbsslaw.com | www. srk-law.com |
| 1301 Fifth Avenue, Suite 2900 | 1818 Market Street, Suite 2500 |
| Seattle, WA 98101 | Philadelphia, PA 19103 |
| | |
| Wexler Toriseva Wallace LLP | Edelson & Associates LLC |
| www.wtwlaw.us | 45 West Court Street |
| 55 W. Monroe, Suite 3300 | Doylestown, PA 18901 |
| Chicago, IL 60603 | |

These lawyers are called Class Counsel. You won't be charged personally for these lawyers. Class Counsel will ask the Court to award them a fee of up to 33 1/3% plus interest and litigation expenses. You don't need to hire your own lawyer, but if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance (see Question 9). Hiring a lawyer to appear for you in the lawsuit will be at your own expense.

## 9. When And Where Will The Court Decide On Whether To Grant Final Approval Of The Proposed Settlement?

The Court will hold a Hearing on _____, 2009 at 2:00 p.m. to consider whether it is fair, reasonable and adequate. At the Hearing, the Court will also consider whether to approve the Proposed Settlement; the request for attorneys' fees and expenses; and any comments or objections. You are not required to attend, but may do so at your own expense.

If you want your own lawyer instead of Class Counsel to speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance must include:

- Your name, address, telephone number, signature;

- The name, and number of the lawsuit (Civil Action Number: 01-CV-12257-PBS, MDL No. 1456);

- State that you wish to enter an appearance at the Final Approval Hearing; and

- Any documentation in support of such opposition.

Your Notice of Appearance **must** be filed with the Court on or before _____, 2009 and served on Counsel by _____, 2009. You cannot speak at the Hearing if you previously asked to be excluded from the Proposed Settlement Class and are not submitting a Claim Form now. The Notice of Appearance must be filed with the Court and served on Counsel at the addresses set forth above in response to Question 7.

## 10. Where Do I Obtain More Information?

More details and all other legal documents that have been filed with the Court in this lawsuit are available. They can be viewed and copied at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the BMS Settlement website at **www.BMSAWPSettlement.com**.

- Call toll-free **1-877-xxx-xxxx**

- Write to:    BMS AWP Settlement Administrator
  P.O. xxxx
  West Palm Beach, FL  33416

DATED: _____, 2009                          **BY ORDER OF THE COURT**

<table>
<tr><td>

**MUST BE RECEIVED<br>OR POSTMARKED<br>ON OR BEFORE<br>Xxxxxxxxx xx, 2009**

</td><td>

# BMS AWP SETTLEMENT
# CLASS 3 CLAIM FORM

</td><td>

OFFICIAL USE ONLY

</td></tr>
</table>

## FOR PAYMENTS MADE OUTSIDE OF MEDICARE PART B

### How to Apply for a Payment from the Proposed Settlement

If you would like to submit a claim in the Settlement, complete this form and
mail it to the address below.

## YOUR CLAIM MUST BE RECEIVED OR POSTMARKED ON OR BEFORE XXXXXXXXX XX, 2009.

Your claim should be mailed to:     BMS AWP Settlement Administrator
P.O. Box xxxx
West Palm Beach, FL 33416

## Section A: Claimant Identification

*Please provide us with the following information related to the individual who was prescribed one or more of the
BMS Drugs. This person is referred to as the "Claimant."*

Claimant's First Name:

Claimant's Last Name:

Address:

City:

Daytime Telephone Number:

## Section B: Claimant Representative Information

If you are the Claimant, do not complete this section. Complete this section only if you are a representative
(such as a spouse, guardian, executor or personal representative) filing this claim on behalf of the Claimant
listed above. Please provide YOUR name, relationship to the Claimant, and YOUR contact information in the
spaces provided below.

Contact Name:

Address:

City:

Daytime Telephone Number:

## Section C: Should I file a Claim Form?

Please answer the following questions in order to determine if the Claimant is eligible for cash from the Proposed Settlement:

1. Were you, or the Claimant that you are filing on behalf of, prescribed any of the BMS Drugs listed in the Notice during the period from January 1, 1991 through December 31, 2004?   ☐ **Yes**   ☐ **No**

2. Did you, or the Claimant that you are filing on behalf of, pay a percentage of the cost of the drug(s) or full cash payments for the drug(s)?   ☐ **Yes**   ☐ **No**

Note: If you paid a flat co-payment (i.e., your out-of-pocket expense was always the same for every drug, like a $10 or $25 co-pay) you did not pay a percentage of the cost.

If you answered *No* to either of the questions above, you are not eligible to receive any benefits from this Proposed Settlement. You may disregard this Notice and Claim Form. If you answered *Yes* to both of the questions above, you should fill out Section D, Section E and Section G below.

## Section D: Choose a Refund Option – You Have Two Options

Please check *only one* of the boxes below in order to choose your refund option:

☐ **Option 1**: I choose the **EASY REFUND** option. I understand that I will receive a payment of up to $35.00 from the Settlement and that I will not be required to provide additional documentation unless requested by the Claims Administrator **AND** you must sign and date the Claim Form in Section G on page __ and mail it to the Claims Administrator at the address indicated on page __.

☐ **Option 2**: I choose the **FULL REFUND** option. I understand that in order to receive a full refund I must provide one form of proof of a percentage co-payment or full cash payment for each separate BMS Drug listed on the chart in Section E for which I am seeking a refund. The list of acceptable forms of proof are listed below in Section F under "Option 2: FULL REFUND." Please include all proof(s) of payment when submitting this Claim Form.

## Section E: Drug Purchase Information –
## Fill out ONLY if you chose Option 2 – FULL REFUND

**Instructions for Completing the Out-of-Pocket Expenditures Chart**

In the Out-of-Pocket Expenditures Chart below, please provide the total amount paid (not monthly) by the Claimant, or the amount the Claimant is obligated to pay, for each of the drugs listed.

- Print clearly
- Do not include flat co-payments in the total amounts paid
- Enter the full amount paid, not a monthly amount

| Out-of-Pocket Expenditures on BMS Drugs | |
|---|---|
| **Drug Name** | **Total Amount Paid From**<br>**January 1, 1991 through December 31, 2004** |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

| Out-of-Pocket Expenditures on BMS Drugs (continued) | |
|---|---|
| **Drug Name** | **Total Amount Paid From**<br>**January 1, 1991 through December 31, 2004** |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

## Section F: Proof of Payment – Provide ONLY if you chose Option 2 – FULL REFUND

If you chose Option 2, you must provide proof that you made a percentage co-payment for each of the Class Drugs you are claiming in the chart in Section E above. You only need to provide one form of proof for each of the drugs.

Any one of the following are acceptable as proof of a percentage co-payment for one of the Class Drugs:

(1)  A receipt, cancelled check, or credit card statement that shows a payment for one of the drugs (other than a flat co-payment); or

(2)  A letter from a doctor saying that he or she prescribed one of the drugs and you paid part or all of the cost of one of the drugs (other than a flat co-payment) at least once; or

(3)  Billing records from a doctor or other health care provider showing that you made or are obligated to make part or all of the cost of one of the BMS Drugs (other than a flat co-payment); or

(4)  An EOB (explanation of benefits) from your insurer that shows you made or are obligated to make percentage co-payments for the BMS Drugs; or

(5)  Any combination of (1)-(4) above.

## Section G: Sworn Statement Regarding Payments Made

**I declare under penalty of perjury that the information provided here is, to the best of my knowledge, correct. I also declare under penalty of perjury that I paid a percentage co-pay or full cash payment for one or more of the BMS Drugs as indicated in this Claim Form at some time during the period from January 1, 1991 through December 31, 2004. If not submitting this for myself, I am authorized to submit this form on behalf of the Claimant identified above[1].**

| | |
|---|---|
| | |

*Signature*                                       *Print Name*

| |
|---|
| |

*Date*

**Mail all pages of this Claim Form along with proof(s) of payment, if any, to the following address:**

**BMS AWP Settlement Administrator**
**P.O. Box xxxx**
**West Palm Beach, FL 33416**

**Toll-Free Telephone: 1-877-xxx-xxxx**

---

[1] Please note that your signature on this Claim Form indicates that you declare, under penalty of perjury, that you (or someone on whose behalf you are acting) made a percentage co-payment or full cash payment for one or more of the BMS Drugs at some time during January 1, 1991 through December 31, 2004. As a result, providing false information on this Claim Form could constitute perjury.

CLASS 2/3 TPP NOTICE

Authorized by the U.S. District Court for the District of Massachusetts

---

**If You Are A Third-Party Payor And Made Reimbursements
For Certain Bristol-Myers Squibb Chemotherapy Drugs**

**You May Be Able To Receive A Substantial Payment
From A Proposed Class Action Settlement**

---

## Summary of Proposed Settlement

- There is a Proposed Class Action Settlement with Bristol-Myers Squibb Company ("BMS") concerning the drugs Blenoxane®, Cytoxan®, Etopophos®, Paraplatin®, Rubex®, Taxol® and Vepesid® (referred to as the "BMS Drugs").

- The name of the lawsuit is *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-C V-12257-PBS, MDL No. 1456 (D. Mass.).

- The lawsuit claims that Third-Party Payors ("TPPs") who reimbursed any portion of their insureds' Medicare Part B co-payment or who reimbursed for these drugs outside of Medicare Part B based on the "average wholesale price" ("AWP") paid more than they should have for these drugs.

- The lawsuit claims that the AWP reported by BMS for the BMS Drugs were false and inflated. AWPs were used to set the amount Medicare Part B, and most private insurers reimbursed for these drugs. BMS contends that it reported true and accurate list prices for its drugs and denies any wrongdoing.

- To avoid the burden and expense of continued litigation, BMS has agreed to pay $19 million to settle claims of TPPs as well as consumers who made percentage co-payments based on AWP.

- Under the terms of Settlement, 77% will be used to satisfy the claims of TPPs who file claims. The remaining 23% of the total Settlement amount will be set aside exclusively to satisfy the claims of consumers.

- Generally speaking, you are a member of one of the Settlement Classes:

  -- If you reimbursed any portion of an insured's Medicare Part B co-payment for any of these drugs from January 1, 1991 through December 31, 2004; or

  -- If you made reimbursements outside of Medicare Part B for any of these drugs from January 1, 1991 through December 31, 2004.

*Your Legal Rights Are Affected Even If You Do Not Act.*

*Read This Notice Carefully.*

## What This Notice Contains

**Page Basic Information** ................................................................................. **2**

1. Why did I get this Notice? ................................................................... 2
2. What is the lawsuit about? ................................................................. 2
3. Why is this a class action? ................................................................. 3
4. How do I know if I am included in the Proposed Settlement? ................. 3

**Benefits Of The Proposed Settlement – What You Get** ............................ **3**

5. What does the Proposed Settlement provide? ...................................... 3
6. How do I file a claim? ........................................................................ 3
7. How are payments determined? ......................................................... 3

**Excluding Yourself from the Proposed Settlement** ................................... **4**

8. What if I do not want to be included in the Proposed Settlement? ......... 4
9. How do I exclude myself from the Proposed Settlement? ...................... 4

**Objecting To Or Commenting On The Proposed Settlement** ...................... **4**

10. May I object to, or comment on, the Proposed Settlement? ................... 4

**The Lawyers Representing You** ............................................................... **5**

11. Do I have a lawyer representing my interests in this case? ................... 5
12. Should I get my own lawyer? ............................................................. 5

**The Court's Final Approval Hearing** ....................................................... **5**

13. When and where will the Court decide on whether to grant final approval of the Proposed Settlement? ....................................................................... 5
14. Must I attend the final approval hearing? ........................................... 6
15. May I speak at the final approval hearing? ......................................... 6

**Getting More Information** ...................................................................... **6**

16. Where do I obtain more information? .................................................. 6

## Basic Information

### 1.  Why Did I Get This Notice?

You were mailed this Notice because records indicate you are a TPP who may provide pharmaceutical coverage for your insureds. Or, you may have requested this Notice after seeing the Summary Notice in a publication.

### 2.  What Is The Lawsuit About?

The lawsuit claims that BMS reported false and inflated AWPs for the BMS drugs at issue in this case. The lawsuit claims that the reported AWPs were used to set reimbursement amounts that were paid by Medicare and its beneficiaries and to set the reimbursement by private health insurers and consumers making percentage co-payments under private health insurance plans. The lawsuit asks the Court to award money damages to TPPs who made reimbursements under Medicare Part B for the drugs at issue or who reimbursed outside of Medicare Part B based on AWP.

BMS contends that it reported true and accurate list prices for its drugs and denies any wrongdoing.  The Proposed Settlement is not an admission of wrongdoing or an indication that any law was violated. BMS has entered into the Proposed Settlement to avoid further expense and inconvenience.

### 3.  Why Is This A Class Action?

In a class action lawsuit, one or more people called "class representatives" sue on behalf of people who have similar claims. The people together are a "class" or "class members." A court must determine if a lawsuit should proceed as a class action. If it does, a trial then decides the lawsuit for everyone in the class. Sometimes, the parties may settle without a trial.

The Parties here have agreed to a Proposed Settlement that includes a national class of TPPs who reimbursed, or incurred obligations to reimburse, any portion of a Medicare Part B co-payment for the drugs at issue. The Proposed Settlement also includes a national class of TPPs who made reimbursements for these drugs outside of Medicare Part B based on AWP. The Court has preliminarily approved this Proposed Settlement but will hold a Hearing to decide whether it should be finally approved. *(See Question 13.)*

### 4.  How Do I Know If I Am Included In The Proposed Settlement?

Generally speaking, you are a member of one of the Settlement Classes if you reimbursed (or incurred an obligation to reimburse) any portion of an insured's Medicare Part B co-payment for any of these drugs from January 1, 1991 through December 31, 2004; or you made (or incurred an obligation to make) reimbursements outside of Medicare Part B for any of these drugs from January 1, 1991 through March 1, 2008. You do not need to do anything to become part of one of these Settlement Classes, **but you must complete the Claim Form in order to be able to receive money.**

Excluded from the Proposed Settlement are (1) consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, and (2) BMS and certain related entities as defined in the Settlement Agreement. Also excluded from the Proposed Settlement are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

## Benefits Of The Proposed Settlement – What You Get

**5.    What Does The Proposed Settlement Provide?**

BMS will pay $19 million to settle the lawsuit. This amount is meant to satisfy the claims of both TPPs who meet the criteria for inclusion in one of the two Settlement Classes as well as claims by consumers who paid all or part of the co-payment for one of the drugs based on the published AWP. All costs associated with notice and administration, attorneys' fees and litigation costs, and compensation to the named class representatives for time spent providing documents and testimony in connection with this case will be paid from the $19 million settlement amount, except that BMS will also pay 50% of the costs of notice up to $1 million. The Court must approve all aspects of this Proposed Settlement.

Under the Agreement, 77% of the net settlement amount will be designated to satisfy the claims of TPPs. The remaining 23% of the net settlement amount will be designated for the purpose of paying consumer claims. Consumers and TPPs are sharing the costs of notice not covered by BMS and the costs of administration equally.

**6.    How Do I File A Claim?**

Attached to this Notice is a Claim Form. *You must fill out the Claim Form and submit it to the Claims Administrator, received or postmarked on or before _____, 2009,* and addressed to:

BMS AWP Settlement Administrator
P.O. Box xxxx
West Palm Beach, FL 33416

**As part of your claim, you must provide the backup information and certifications requested on the Claim Form.**

**7.    How Are Payments Determined?**

How much you receive from this Proposed Settlement depends on the volume and amount of claims submitted by other TPP Settlement Class Members.

- TPP Settlement Class Members are required to provide the amount of reimbursements for certain drugs at issue from January 1, 2003 to December 31, 2003. This one-year period will be used to determine the portion of the Settlement Amount that will be paid to each TPP submitting valid claims.
- TPP Settlement Class Member's portion of the Settlement Amount will be based upon their reimbursements for the BMS Drugs.
- If total valid TPP Settlement Class Member claims exceed the total portion of the settlement set aside to satisfy the claims of TPPs, all TPP claims will be reduced proportionately.

## Excluding Yourself from the Proposed Settlement

**8.    What If I Do Not Want to Be Included in the Proposed Settlement?**

If you do not want to be in the Settlement Classes and you want to keep the right to sue BMS about the same claims on your own, you must take steps to get out of the Settlement Classes. This is called excluding yourself.

By excluding yourself, you keep the right to file your own lawsuit or join another lawsuit against BMS

about the claims in this lawsuit. (If you do not exclude yourself, you will be releasing AWP pricing-related claims against BMS and other Released Parties. You will not be releasing unrelated claims, such as product liability, breach of warranty, or personal injury claims. For further details, see "Getting More Information" below.)

If you exclude yourself from the Settlement Classes, however, you will not be able to file a claim for money and you will not be included in the Proposed Settlement.

<u>Note</u>: If you are a TPP headquartered in the State of Massachusetts, and you previously did not elect to exclude yourself, you do **not** have the right to exclude yourself now.

### 9. How Do I Exclude Myself from the Proposed Settlement?

You can exclude yourself from the Proposed Settlement by sending a letter that includes all of the following:

- Your name, address, and telephone number;
- The name and number of the lawsuit: *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* Docket No. 01-CV-12257-PBS, MDL No. 1456;
- If you have hired your own lawyer, the name, address, and telephone number of your lawyer;
- A statement that you want to be excluded from the Settlement Classes;
- The number of insured lives for whom you currently provide a prescription drug benefit; *and*
- A signed certification containing the following language:

   The undersigned individual hereby represents that he/she has the authority to sign and submit this notice of exclusion on behalf of the above-named class member. The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the class member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.,* or other laws governing their obligations at any class member. The undersigned understands that by submitting this notice of exclusion, the class member identified above will not be entitled to receive any proceeds of the class Settlement Fund. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

In addition, you are requested to provide the amount paid for each Class Drug at issue during January 1, 2003 to December 31, 2003. Your letter requesting exclusion must be mailed first class, **postmarked no later than _____, 2009,** to:

BMS AWP Settlement Administrator
P.O. Box xxxx
West Palm Beach, FL 33416

Please remember that you cannot exclude yourself by calling or by sending an email. <u>Failure to exclude yourself **pursuant to the above instructions** will result in your being bound by the Settlement if it is approved.</u>

## Objecting to or Commenting on the Proposed Settlement

### 10. May I Object To, Or Comment On, the Proposed Settlement?

Yes. If you have comments about, or disagree with, any aspect of the Proposed Settlement, you may express your views to the Court through a written response to the Proposed Settlement. The written response should include your name, address, telephone number and a brief explanation of your reasons for objection. The document **must** be signed to ensure the Court's review. The response must be filed with the

Court at the following address on or before _____, 2009:

Clerk of Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

and served on Counsel for the Parties on or before _____, 2009 at the following addresses:

| Counsel for the Class | Counsel for BMS |
|---|---|
| Steve W. Berman | Lyndon M. Tretter |
| Hagens Berman Sobol Shapiro LLP | Hogan & Hartson LLP |
| 1301 Fifth Avenue, Suite 2900 | 875 Third Avenue |
| Seattle, WA 98101 | New York, NY 10022 |

In addition, your document must clearly state that it relates to the following Civil Action Number: 01-CV-12257-PBS, MDL No. 1456. If you object to or comment on the Proposed Settlement, you will be subject to the jurisdiction of the Court.

## The Lawyers Representing You

### 11.   Do I Have A Lawyer Representing My Interests In This Case?

Yes. The Court has appointed the following law firms to represent you and other Class Members:

| | |
|---|---|
| Steve W. Berman | Jeffrey Kodroff |
| Sean R. Matt | Spector Roseman & Kodroff, PC |
| Hagens Berman Sobol Shapiro LLP | 1818 Market Street, Suite 2500 |
| 1301 Fifth Avenue, Suite 2900 | Philadelphia, PA 19103 |
| Seattle, WA 98101 www.hbsslaw.com | www.srk-law.com |
| | |
| Kenneth Wexler | Marc Edelson |
| Wexler Toriseva Wallace LLP | Edelson & Associates LLC |
| 55 W. Monroe, Suite 3300 | Doylestown, PA 18901 |
| Chicago, IL 60603 | |
| www.wtwlaw.us | |

These lawyers are called Class Counsel. You will not be charged personally for these lawyers, but they will ask the Court to award them a fee of up to 33 1/3 % of the Settlement Amount, plus interest. In addition, Class Counsel will request reimbursement of the expenses and costs associated with litigation of this case. The fee will be paid out of the $19 million Settlement Amount as will any reimbursement of litigation costs and expenses awarded by the Court. More information about Class Counsel and their experience is available at the websites listed above.

### 12. Should I Get My Own Lawyer?

You don't need to hire your own lawyer. However, if you want your own lawyer to speak for you or appear in Court, you must file a Notice of Appearance. *(See* Question 15.) If you hire a lawyer to appear for you in this case, that will be at your own expense.

## The Court's Final Approval Hearing

**13.   When And Where Will The Court Decide On Whether To Grant Final Approval Of The Proposed Settlement?**

The Court will hold a Final Approval Hearing on _____, 2009 at 2:00 p.m. to consider whether the Proposed Settlement is fair, reasonable and adequate. At the Hearing, the Court will decide whether to approve the Proposed Settlement and the request for attorneys' fees and expenses. If comments or objections have been received, the Court will consider them at this time.

*Note:* The Hearings may be postponed to a different date without additional notice. Updated information will be posted on the BMS AWP Settlement website at www.BMSAWPSettlement.com.

**14.   Must I Attend The Final Approval Hearing?**

No. Attendance is not required, even if you properly mailed a written response. Class Counsel is prepared to answer the Court's questions on your behalf. If you or your personal attorney still want to attend the Hearing, you are more than welcome at your expense. However, it is not necessary that either of you attend. As long as the objection was postmarked before the deadline, the Court will consider it.

**15.   May I Speak At The Final Approval Hearing?**

Yes. If you or your own lawyer want to speak, instead of Class Counsel, at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance." The Notice of Appearance should include the name and number of the lawsuit, and state that you wish to enter an appearance at the Final Approval Hearing. It also must include your name, address, telephone number and signature.

Your "Notice of Appearance" **must** be filed with the Court on or before _____, **2009** and served on Counsel listed below by _____, **2009**. You cannot speak at the Hearing if you previously asked to be excluded from the Proposed Settlement Classes and are not submitting a claim form now. The Notice of Appearance must be filed with the Court and served on Counsel at the addresses set forth above in response to Question 10.

The Notice of Appearance must be filed using the following Civil Action Number: 01-CV-12257-PBS, MDL No. 1456.

## Getting More Information

**16.   Where Do I Obtain More Information?**

More details are in the Complaint filed by Class Counsel, the Answers filed by BMS, and the other legal documents that have been filed with the Court in this lawsuit. These documents include the BMS AWP Settlement Agreement and Release, which sets forth in great detail the Settlement's provisions. You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of Court, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 2300, Boston, Massachusetts 02210, or via the internet at www.BMSAWPSettlement.com.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the BMS Settlement website at www.BMSAWPSettlement.com;
- Call toll free 1-877-xxx-xxxx; or
- Write to:   BMS AWP Settlement Administrator
              P.O. Box xxxx

West Palm Beach, FL 33416

DATED: _____, 2009

By Order of the United States District Court
District of Massachusetts
/s/ The Honorable Judge Patti B. Saris

MUST BE RECEIVED OR
POSTMARKED ON OR BEFORE
XXXXXXXX XX, XXXX

OFFICIAL USE ONLY

*In re: Pharmaceutical Industry Average Wholesale Price Litigation*
Docket No. 01-CV-12257 PBS, MDL No. 1456

## BMS AWP SETTLEMENT
## THIRD-PARTY PAYOR CLAIM FORM

To get a share of the Settlement Fund, you need to complete and sign this Claim Form and submit it to:

BMS AWP Settlement Administrator
P.O. Box xxxx
West Palm Beach, FL 33416

**This Claim Form must be received or postmarked on or before Xxxxxxxxx xx, xxxx.**

The information you provide will be kept confidential and will be used only for administering this settlement. If you have any questions, please call the Claims Administrator at **1-877-xxx-xxxx.**

A TPP Settlement Class Member ("Class Member") or an authorized agent can complete this Claim Form. If both a Class Member and its authorized agent submit a Claim Form, the Claims Administrator will only consider the Class Member's Claim Form. The Claims Administrator may request supporting documentation. The claim may be rejected if any requested documentation is not provided.

If one or more Class Members has authorized you to submit a Claim Form on its behalf, you must provide the information requested in Section B in addition to the other information requested by this Claim Form. You may submit a separate Claim Form for each Class Member that has duly authorized you to do so, OR you may submit one Claim Form for all such Class Members that have authorized you to do so. If you are submitting Claim Forms both on your own behalf as a Class Member AND on behalf of one or more Class Members that have authorized you to do so, you should submit one Claim Form for yourself and another Claim Form for the other Class Member(s). **Do not submit a Claim Form on behalf of any Class Member without specific prior authorization from that Class Member.**

---

### SECTION A – CLAIMANT IDENTIFICATION

Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below. If you wish to make a claim as a Class Member *and also* as the authorized agent of other Class Members, please complete one Claim Form for your claim as a Class Member and a separate Claim Form for those Class Members for whom you are authorized to submit a claim:

☐    I am the Class Member      ☐    I am filing as the Authorized Agent of a Class Member**

** As Authorized Agent, please check how your relationship with the Class Member is best described:

☐ Third Party Administrator (other than a Pharmacy Benefits Manager)

☐ Pharmacy Benefits Manager

☐ Other (Explain): _____

## SECTION B – CLASS MEMBER OR AGENT INFORMATION

*Class Member's/Authorized Agent's Name*

_____

*Street Address*                                                                    *Floor/Suite*

_____          _____

*City*                                                    *State*      *Zip Code*

_____    _____     _____

*Area Code – Telephone Number*        *Area Code – Fax Number*          *Class Member's/Authorized Agent's Tax ID No.*

_____        _____        _____

If you file as a Class Member, list other names by which you have been known or other FEINs you have used from Xxxxxxxxx xx, xxxx through Xxxxxxxxx xx, xxxx.

_____          _____

_____          _____

If you are filing as the Class Member, check the term below that best describes your company/entity:

☐    Health Insurance Company/HMO

☐    Self-Insured Union Health & Welfare Fund

☐    Self-Insured Employee Health Plan

☐    Other (Explain): _____

## SECTION C – CLAIM BY AUTHORIZED AGENT

Please list the Federal Employer Identification Number and the name of every Class Member for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this proof of claim as necessary). Alternatively, you may submit the requested list of Class Member names and FEINs in an acceptable electronic format. Please contact the Claims Administrator to determine what formats are acceptable.

_____          _____

_____          _____

## SECTION D – TOTAL AMOUNT OF BMS DRUG 2 DRUG PURCHASES

For the Class Member on whose behalf you are submitting a claim, state the total and final amount paid or reimbursed, net of rebates, chargebacks, co-pays, and/or co-insurance for each BMS Drug set out in the chart below with a date of service or date of fill from January 1, 2003 to December 31, 2003. If you are claiming more than $300,000, you will need to provide additional information (*See* Section F):

| Drug Name | MediGap TPP Class | Private Payor TPP Class |
|---|---|---|
| Blenoxane | $ | $ |
| Cytoxan | $ | $ |
| Etopophos | $ | $ |
| Paraplatin | $ | $ |
| Rubex | $ | $ |
| Taxol | $ | $ |
| Vepesid | $ | $ |
| Total $ | $ | $ |

*Claimant certifies that the figures are true and accurate and are based upon actual records maintained by or otherwise available to the claimant.*

## SECTION E – JURISDICTION OF THE COURT AND CERTIFICATION

By signing below, I hereby swear and affirm that: (1) I have authority to submit this Claim Form either directly or on behalf of the Class Member or as its Authorized Agent, and, in turn, have been given the authority to submit this Claim Form by each Class Member identified in this Claim Form and in any attachments to it, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the TPP Settlement Pool to such Class Member; (2) the information contained in this Claim Form and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (3) I, the Authorized Agent (if any), and the Class Member on whose behalf this Claim Form is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts (the "Court") for all purposes associated with this Claim Form and the Settlement, including resolution of disputes relating to this Claim Form; (4) in the event that amounts from the TPP Settlement Pool are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I, and/or my employer will hold the Class, Counsel for the Class, Defendants, Counsel for Defendants, and the Claims Administrator harmless with respect to any claims made by said Class Member.

Signature:

Position:

Print Name:

Month/Day/Year:

The following information is to be provided by the Individual that signs and certifies this Claim Form:

I am filing this Claim Form as the authorized employee of the following Class Member or Authorized Agent for Class Member:

Name of Individual's Employer:

Business Address:

Floor/Suite:

City:

State:

Zip Code:

Area Code   Telephone Number:

Area Code   Fax Number:

E-mail Address:

Submit the completed Claim Form to the address listed on page 1 received or postmarked on or before XXXXXXXX XX, XXXX.

## SECTION F – CLAIM DOCUMENTATION INSTRUCTIONS

If you are claiming less than $300,000 of total purchases of all BMS Drugs for the 2003 period, you do not need to attach any additional information. However, even if your purchase amount is less than $300,000, you should retain the information required for claims over $300,000 because any claim may be audited.

If you are claiming $300,000 or more of total purchases of all BMS Drugs you must provide documentation with your Claim Form to have your claim considered by the Claims Administrator. Please provide the required data fields necessary for your participation as a TPP Class Member as presented in the Data Field Layout sample on page 5, for all paid claims with a date of service or date of fill between January 1, 2003 to December 31, 2003 net of co-pay deductibles or co-insurance. Please provide this data along with the Claim Form to the Claims Administrator received or postmarked on or before Xxxxxxxxx xx, xxxx:

1.  J-Code or NDC Number – provide the applicable J-Code or NDC Number for each transaction. A list of the J-Codes and NDC Numbers are annexed as Attachment A.

2.  Patient Identifier – provide a random encrypted patient identification number. This number must consistently reflect the same patient.

3.  Service and/or Fill Date – we expect service date will be available for J-Code entries and fill date will be available for NDC entries. Please include both if they are available.

4.  Group Number – provide the group number assigned to each transaction. As part of the auditing process, you may be asked to provide the corresponding group name for each group number. Only the Claims Administrator will have access to this information.

5.  Amount Billed – billed charges or the initial amount billed by the provider or providers before any adjustments.

6.  Net Amount Paid – final amount paid for each discrete transaction, net of co-pays, deductibles, co-insurance, and any other credits and adjustments after initial payment.

Page 5 of 5

**OTHER INFORMATION**

- If you are able, please provide units for each transaction.
- Please provide the electronic data in either Mircosoft Excel format or ASCII flat file pipe delimited "I" or fixed-width format. *Refer to the sample layout below.*
- Finally, please provide a list of all self-funded healthcare plans ("SFPs") for which you are authorized to make a claim.
- All information you provide is subject to the protective order governing this action.

### Data Field Layout for Claims of $300,000 or More

| NDC or J-Code | Patient Identifier | Service/Fill Date | Group Number | Amount Billed | Net Amount Paid |
|---|---|---|---|---|---|
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | COLUMN TOTALS | $ | $ |
| | | | TOTAL CLAIM | $ | |

CONSUMER PUBLICATION NOTICE

Legal Notice

# If you made a Percentage Co-Payment or Full Payment for Certain Chemotherapy Drugs

(From January 1, 1991 to December 31, 2004)

## You may be able to get at least $35 back from a class action settlement.

The Bristol-Myers Squibb drugs are:

- Blenoxane®
- Etopophos®
- Taxol®
- Cytoxan®
- Paraplatin®
- Vepesid®
- Rubex®

For information on how to exclude yourself (in writing by Month Date, Year), or to stay in the class and file a claim and/or object/comment:

**Visit: www.BMSAWPSettlement.com**

**Call: Toll-Free: 1-877-000-0000**

Or Write:

BMS AWP Settlement Administrator, P.O. xxxx, West Palm Beach, FL 33416

TPP PUBLICATION NOTICE

Legal Notice

# Third-Party Payors Who Made Reimbursements for Certain Chemotherapy Drugs

## (From January 1, 1991 to December 31, 2004)

### May Be Able To Receive Substantial Payments From a Proposed Class Action Settlement.

**The Bristol-Myers Squibb drugs are:**

Blenoxane®

Cytoxan®

Etopophos®

Paraplatin®

Rubex®

Taxol®

Vepesid®

**For Detailed Information and a Claim Form:**

**Visit:**

**www.BMSAWPSettlement.com**

**Call:**

**Toll-Free: 1-877-000-0000**

**Or Write:**

**BMS AWP Settlement Administrator
P.O. xxxx, West Palm Beach, FL 33416**

There is a proposed class action Settlement with Bristol-Myers Squibb ("BMS") concerning drugs used in the treatment of cancers and other medical conditions. They are most often, but not always, injected in a doctor's office or clinic.

**What is the Lawsuit About?**

The lawsuit claims that Third-Party Payors ("TPPs") who reimbursed any portion of their insureds' Medicare Part B co-payment or who reimbursed for these drugs outside of Medicare Part B based on the "average wholesale price" ("AWP") paid more than they should have for these drugs. The lawsuit claims the AWP reported by BMS for these drugs was false and inflated. BMS contends that it reported true and accurate list prices; it denies any wrongdoing and is settling to avoid the burden and expense of continued litigation.

**Who are Class Members?**

Generally speaking, you may be a member of one of the Settlement Classes if:

- You reimbursed any portion of an insured's Medicare Part B co-payment for any of these drugs from January 1, 1991 through December 31, 2004; or

- You made reimbursements outside of Medicare Part B for any of these drugs from January 1, 1991 through December 31, 2004.

**What are My Legal Rights?**

Get complete information below to understand your legal rights to:

- Remain in the Class and File a valid claim postmarked by **DATE,**

- Remain in the Class and Object to or comment on the Settlement in writing postmarked by **DATE,** or

- Exclude yourself and keep your right to sue the Defendants on your own. Written exclusion requests must be postmarked by **DATE.**

The Court will determine whether to approve the Settlement at a Fairness Hearing on **Insert Date** at **Time p.m.**

<u>EXHIBIT C</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| BMS | Judge Patti B. Saris |

## [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT WITH THE BMS GROUP, APPROVING PROPOSED ALLOCATION OF SETTLEMENT FUNDS, AND APPROVING CLASS COUNSELS' APPLICATION FOR ATTORNEYS FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES

This Court having considered: (a) the Settlement Agreement and Release of the BMS

Group dated _____ , 2009 (the "Agreement") between the Plaintiffs and Defendants

Bristol-Myers Squibb Company ("BMS"), Oncology Therapeutics Network Corporation and

Apothecon, Inc. (herein referred to collectively as the "BMS Group"); (b) the Distribution Plan,

Claims Process and Notice Plan for the Settlement as contained in the Court's _____ 2009

Order preliminarily approving the Settlement [Docket No. ___] (the "Preliminary Approval

Order"); and (c) Class Counsels' application for attorneys' fees, reimbursement of litigation

expenses and incentive awards for the Class Representatives; and having held a hearing on

_____ , 2009, and having considered all of the submissions and arguments with respect

thereto, and otherwise being fully informed, and good cause appearing therefore,

226994

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.      This Final Order and Judgment incorporates herein and makes a part hereof, the Agreement and the Preliminary Approval Order and the Exhibits to that Order.  Unless otherwise provided herein, the terms defined in the Agreement and Preliminary Approval Order shall have the same meanings for purposes of this Final Order and Judgment.

2.      The Court has personal jurisdiction over all Class Representatives, Class Members and Defendant BMS for purposes of this Settlement only, and has subject matter jurisdiction to approve the Agreement.

3.      Based on the record before the Court, including all submissions in support of the Settlement set forth in the Agreement, objections and responses thereto, as well as the Agreement itself and its Exhibits, the Court hereby incorporates the findings of its August 16, 2005 and January 30, 2006 *Orders Re: Motion for Class Certification* and further certifies the following nationwide Classes (the "Classes") for settlement purposes only:

> Medicare Part B Co-Payment Class ("Class 1"):  All natural persons nationwide who made, or were liable for all or any portion of, a Medicare Part B co-payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004.  Excluded from Class 1 are those persons who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, as well as officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.  Previously excluded from the litigation class certified on January 30, 2006 were residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia; these residents are now included in Class 1 for purposes of the Settlement.

> Third-Party Payor MediGap Supplemental Insurance Class ("Class 2"):  All TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment based on AWP for a BMS Subject Drug.  Excluded from

Class 2 are the officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.

Consumer and Third-Party Payor Class for Payments Made Outside the Medicare Context ("Class 3"):  All natural persons nationwide who made, or were liable for all or any portion of, a non-Medicare Part B payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004, and all TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, non-Medicare Part B reimbursements based on AWP for any BMS Subject Drug.  Excluded from Class 3 are those consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, as well as the officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.

Also excluded from all Classes are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

The BMS Subject Drugs are Blenoxane, Cytoxan, Etopophos, Paraplatin, Rubex, Taxol and Vepesid

The Court finds that the prerequisites of FED. R. CIV. P. 23(a) and (b)(3) have been satisfied for certification of the Classes for settlement purposes:  members of the Classes, numbering in at least the tens-of-thousands, are so numerous that joinder of all members is impracticable; there are questions of law and fact common to each Class, such as whether Class Members were overcharged for BMS Subject Drugs; the claims and defenses of the Class Representatives are typical of the claims and defenses of the members of the Classes; the Class Representatives have fairly and adequately protected the interests of the Classes with regard to the consolidated claims of the Classes; common questions of law and fact predominate over questions affecting only individual Class Members, rendering the Classes sufficiently cohesive to warrant a nationwide class settlement; and the certification of the Classes is superior to

individual litigation and/or settlement as a method for the fair and efficient resolution of the MDL Class Actions. The Court also finds that Lead Class Counsel are adequate according to the prerequisites set forth in FED. R. CIV. P. 23(g).

In making all of the foregoing findings, the Court has exercised its discretion in certifying the settlement Classes.

4.      The record shows that Notice has been given to the Classes in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Notice: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise members of the Classes of the terms of the Settlement, and Class Members' right to object to and appear at the settlement fairness hearing held on _____, 2009 (the "Fairness Hearing") or, in the case of Class 1 Members who reside in Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia, and the members of Classes 2 and 3 outside of Massachusetts, to exclude themselves from the Classes; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) meets the requirements of due process and FED. R. CIV. P. 23.

5.      No individuals or entities other than those listed on Exhibit A hereto, have excluded themselves from the Classes. This Order shall have no force or effect on the persons or entities listed on Exhibit A hereto.

6.      The Court finds that extensive arms'-length negotiations have taken place in good faith between Lead Class Counsel and Defendant BMS's Counsel resulting in the Agreement.

7.      Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the Settlement set forth in the Agreement ("the Settlement") and finds that the Settlement Fund,

226994

4

the Agreement, and the Distribution Plan and Claims Process as set forth in the Preliminary

Approval Order, are, in all respects, fair, reasonable and adequate, and in the best interest of the

Classes.

8.      The Court further approves the establishment of the Settlement Fund as set forth

in the Agreement and the Escrow Agreement submitted by the Parties.  The parties are hereby

directed to implement and consummate the Settlement according to the terms and provisions of

the Agreement.  In addition, the parties are authorized to agree to and adopt such amendments

and modifications to the Agreement as (i) shall be consistent in all material respects with this

Final Order and Judgment, and (ii) do not limit the rights of the Classes.

9.      The claims against the BMS Group on behalf of the Classes in the MDL Class

Actions are hereby dismissed with prejudice and without costs to any party, except as otherwise

provided herein.

10.     Upon the Effective Date of the Agreement, the Class Releasors (as defined in

Paragraph 2(g) of the Agreement) shall release and forever discharge the BMS Group Releasees

(as defined in Paragraph 2(n) of the Agreement) from the Released Class Claims (as defined in

Paragraph 2(v) of the Agreement).   Within 10 days after the Effective Date, the parties shall take

all steps necessary under the Federal Rules of Appellate Procedure and the rules of the United

States Court of Appeals for the First Circuit to dismiss with prejudice and without costs to any

party BMS's pending appeal relating to the Massachusetts Classes.

11.     The Court finds that the Escrow Account is a "Qualified Settlement Fund" as

defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the

following requirements:

(a)      The Escrow Account is established pursuant to an order of this

5

Court and is subject to the continuing jurisdiction of this Court;

(b)     The Escrow Account is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

(c)     The assets of the Escrow Account are segregated from other assets of BMS, the transferor of payments to the Settlement Fund, and from the assets of persons related to BMS.

12.     Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)     The Escrow Account met the requirements of paragraph 11 of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

(b)     BMS and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Escrow Account met the requirements of paragraphs 11(b) and 12(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 11 of this Order are met.  If such relation-back election is made, the assets held by the Escrow Account on such date shall be treated as having been transferred to the Escrow Account on that date.

13.     Nothing in this Final Order and Judgment, the Preliminary Approval Order, the Settlement, or the Agreement is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any of the BMS Group

226994                                         6

Releasees.

14.     Class Counsel have moved pursuant to FED. R. CIV. P. 23(h), 54(d) and 52(a) for an award of attorneys' fees and reimbursement of expenses.  Pursuant to Rule 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

(a)     that the Settlement confers a substantial benefit on the Classes;

(b)     that the value conferred on the Classes is immediate and readily quantifiable.  Upon this Judgment becoming final, each Class Member who has submitted a valid Claim will receive a cash payment that represents a significant portion of the alleged financial harm alleged to have been incurred as a result of the BMS Group's alleged conduct;

(c)     that Class Counsel vigorously and effectively pursued the Class Members' claims before this Court in this highly complex case;

(d)     that the Settlement was obtained as a direct result of Lead Class Counsels' skillful advocacy;

(e)     that the Settlement was reached following extensive negotiation between Lead Class Counsel and the BMS Group's Counsel, and was negotiated in good-faith and in the absence of collusion;

(f)     that Class Counsel simultaneously prosecuted similar cases against other pharmaceutical companies on behalf of other plaintiff classes;

(g)     that Class Members were advised in the Notice approved by the Court that Class Counsel intended to apply for an award of attorneys' fees in an amount not to exceed thirty-three and a third percent (33.33%) plus reimbursement of expenses, to be paid out of the Settlement;

(h)     that _____ member(s) of the Classes has (have) submitted written

226994                                    7

objection(s) to the award of attorneys' fees and expenses;

       (i)    that counsel who recover a common benefit for persons other than himself or his client is entitled to a reasonable attorneys' fee. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984);

       (j)    that use of the percentage of the fund method in common fund cases is the prevailing practice in this Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefit on a class resulted from the lawyers' efforts. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); and

       (k)    that the requested fee award is within the applicable range of percentage awards in this Circuit; *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. April 9, 2004) [Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-11534-WGY (D. Mass. Aug. 2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001).

Accordingly, Class Counsel are hereby awarded $_____ from the balance of the Settlement Fund, as their fee and expense award which the Court finds to be fair and reasonable, and which amount shall be paid to Class Counsel from the Settlement Fund in accordance with the terms of the Agreement. The attorneys' fees and expenses awarded by the Court shall be allocated among Class Counsel by Lead Class Counsel at their discretion.

15.    The Class Representatives are hereby granted incentive awards in the following amounts, which shall be paid from the Settlement Fund: _____.

16.    Without affecting the finality of this Final Order and Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation,

enforcement and interpretation of the Agreement and of this Final Order and Judgment, to protect and effectuate this Final Order and Judgment, and for any other necessary purpose. The BMS Group defendants, plaintiff Class Representatives and each member of the Class are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Agreement or the applicability of the Agreement and the Distribution Plan and Claim Process in the Preliminary Approval Order, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Final Order and Judgment, the Court retains exclusive jurisdiction over any such suit, action or proceeding. Solely for purposes of such suit, action or proceeding, to the fullest extent they may effectively do so under applicable law, the parties hereto are deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

17.     In the event that the Settlement does not become effective according to the terms of the Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Agreement, shall be vacated and, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

18.     No Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elected to be excluded from the Classes), shall commence, continue or prosecute against any or all BMS Group Releasees any action or proceeding in any court or tribunal asserting any of the Released Claims defined in the Agreement, and such Class Members are hereby permanently enjoined from so proceeding.

DATED: _____        _____
                                Hon. Patti B. Saris

**EXHIBIT A**

INDIVIDUALS AND ENTITIES THAT HAVE PROPERLY EXCLUDED
THEMSELVES FROM THE NATIONWIDE AWP PAYOR CLASSES IN ACCORDANCE
WITH THE ORDER OF _____, 2009 (Docket No. ____).

**[list all Opt Outs]**

226994

11

<u>**EXHIBIT D**</u>

**CLASS ESCROW AGREEMENT**

This Class Escrow Agreement (this "Agreement") is made and entered into by Frontier Bank through its Trust Department (the "Escrow Agent"), Bristol-Myers Squibb Company ("BMS"), and Class Plaintiffs as defined in the Settlement Agreement and Release of BMS, Oncology Therapeutics Network Corporation and Apothecon, Inc. (herein referred to collectively as the "BMS Group") dated on or about August 4, 2009 ("BMS Group MDL Settlement Agreement"), in consideration of the following promises of each party. The BMS Group and Class Plaintiffs are referred to collectively as the "Settling Parties" in the litigation entitled *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (the "MDL Class Action"). Unless otherwise provided herein, the terms defined in the BMS Group MDL Settlement Agreement shall have the same meaning in this Agreement

## I.     Terms and Conditions

1.     BMS and Lead Class Counsel hereby appoint the Escrow Agent to establish and administer an escrow account on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

2.     BMS shall deliver to the Escrow Agent payments of 50% of reasonable costs of notice to the Classes (up to a maximum of $1,000,000) and settlement payments in the aggregate amount of $19,000,000.00 as required by Paragraph 3(a) of the BMS Group MDL Settlement Agreement in immediately available United States funds (the "Class Escrow Funds") pursuant to the wire transfer instructions provided in paragraph 1 of Section IV below. Escrow Agent shall confirm receipt of such funds in writing to the Settling Parties.

3.     In the absence of written direction from the Settling Parties regarding the investment of the Class Escrow Funds, Escrow Agent will invest and reinvest the Escrow Funds in the STI Classic U.S. Treasury Money Market Fund.

4.     All interest on or other income realized by investment of the Class Escrow Funds or any portion thereof shall be accumulated and added to the Class Escrow Funds. Any investment losses realized by investment of Class Escrow Funds or any portion thereof shall be charged to the Class Escrow Funds.

5.     This Escrow Agreement and the Class Escrow Funds are subject to the supervision and control of the United States District Court for the District of Massachusetts (the "MDL Court"). The Class Escrow Funds shall be withdrawn or otherwise removed from the Escrow Account established pursuant to this Class

1

Escrow Agreement only in accordance with the terms of an order of the MDL Court delivered to the Escrow Agent by Lead Class Counsel, including for:

    (i)    payment of taxes or estimated taxes that become due on income earned by the Class Escrow Funds, as determined by Complete Claims Solutions, Inc. ("CCS"), the Class Administrator for the Settlement, with notice of such payments to Lead Class Counsel and BMS;

    (ii)    payment of the costs associated with claims administration including, but not limited to, the portion of the cost of the settlement notice that BMS is not paying.  Such payment will be made at the direction of Lead Class Counsel; and

    (iii)    all other payments contemplated by the BMS Group MDL Settlement Agreement and authorized by the MDL Court by Court Order delivered to the Escrow Agent by Lead Class Counsel.

provided, however, that the Escrow Agent shall retain amounts in the Escrow Account necessary for the payment of taxes or estimated taxes and fees and expenses of the Escrow Agent, as directed by Lead Class Counsel.

6.    The Class Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of the Settling Parties, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Class Escrow Funds to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

7.    All Counsel for all Settling Parties' each warrant to and agree with Escrow Agent that, unless otherwise expressly set forth in this Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Class Escrow Funds or any part of the Class Escrow Funds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Class Escrow Funds or any part of the Class Escrow Funds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Class Escrow Funds or any part of the Class Escrow Funds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Class Escrow Funds or any part thereof.

2

## II.   Provisions as to Escrow Agent

1.  This Escrow Agreement expressly and exclusively sets forth the duties of Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Class Escrow Agreement against Escrow Agent.

2.  This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this escrow.  Unless it is signed by the Escrow Agent as a party, no other agreement including the BMS Group MDL Settlement Agreement entered into between the parties, or any of them, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be deposited with Escrow Agent or the Escrow Agent may have knowledge thereof.

3.  Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4.  Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Class Escrow Agreement.  The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Class Escrow Agreement.

5.  Escrow Agent shall be protected in acting upon any document which Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Class Escrow Funds.

6.  In the event of any disagreement between any of the parties to this Class Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Agreement, or in the event that Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the United States District Court for the District of Massachusetts, or (ii) all differences shall have been resolved and all

3

doubt eliminated by agreement among all of the interested parties, and Escrow Agent shall have been notified thereof in writing signed by all such parties.

7.  Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

8.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Class Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

9.  The Escrow Agent will maintain a daily record of all transactions in the Class Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than annually) reflecting all such transactions and the property held in the account as of the end of the reporting period.

10. The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary.  The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

## III.  Compensation of Escrow Agent

1.  Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Class Escrow Agreement (including reasonable fees and expenses of Escrow Agent's counsel).  Lead Class Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to other provisions of this paragraph.  The Escrow Agent is entitled to reimbursement for reasonable expenses for each year or any part thereof.

2.  The Escrow Agent shall not debit the Class Escrow Funds for any charge for its fees or its costs and expenses, until approved by Lead Class Counsel after notice to BMS.  Fees and expenses of the Escrow Agent charged against the Escrow Funds shall, to the extent possible, be paid out of interest earned by the Escrow Funds.

4

226762

**IV.    Miscellaneous**

1.    Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

If to Escrow Agent:

> Frontier Bank – Trust Department
> 2825 Colby Avenue
> Everett, WA  98201-3512
>
> <u>Cash / Wire Instructions:</u>
>
> Frontier Bank Everett
> ABA #125107626
> Frontier Bank Trust Department  Account▅▅▅▅▅▅▅▅
> FFC: (BMS AWP Settlement Class Escrow Fund/#_____)

If to Lead Class Counsel:

> Steve W. Berman
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1301 Fifth Avenue, Suite 2900
> Seattle, WA  98101
> Telephone: (206) 623-7292
> Facsimile: (206) 623-0594

If to BMS

> Lyndon M. Tretter
> Hogan & Hartson LLP
> 875 Third Avenue
> New York, NY  10022
> Telephone:  (212) 918-3000
> Facsimile:  (212) 918-3100

If to CCS:

> Thomas R. Glenn
> Sr. Vice President & COO
> Complete Claim Solutions, LLC
> 5210 Hood Road

226762

5

Palm Beach Gardens, Florida 33418
Telephone: (561) 651-7777
Facsimile: (561) 651-7788 Fax

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

2.   Any disputes arising under this agreement will be governed by Massachusetts law.  It shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns.  All representations, covenants, and indemnifications contained in this Class Escrow Agreement shall survive the termination of this Class Escrow Agreement.

3.   The terms of this Class Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4.   If any provision of this agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5.   The Escrow Agent may resign at any time from its obligations under this Class Escrow Agreement by providing written notice to the parties hereto.  Such resignation shall be effective not less than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement.  The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent.  Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6.   All titles and headings in this Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8.   This Agreement shall be effective as of the date the last party to this Agreement fully and appropriately executes this document.

6

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.

7

226762

Dated: _____, 2009

_____

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

For Lead Class Counsel


Dated: _____, 2009

_____

Lyndon M. Tretter
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY  10022
Telephone:  (212) 918-3000
Facsimile:  (212) 918-3100

Counsel for BMS


Dated: _____, 2009

_____

Kari L. Dahl
Vice President & Manager Trust Administration
Frontier Bank - Trust Department
2825 Colby Avenue
Everett, WA  98201-3512
Telephone:  (425) 258-0225
Facsimile:  (425) 258-0216

Escrow Agent Frontier Bank – Trust Department

226762

# Exhibit E

# (Filed Under Seal)

**EXHIBIT F**

**DISTRIBUTION PLAN AND CLAIMS PROCESS**

**A.      The Distribution Plan**

**1.      Disbursements and distributions from the Settlement Fund – prior to the Effective Date**

1.      Any fees and expenses incurred in administering the Escrow Agreement and the Settlement Fund shall be paid pursuant to the Escrow Agreement.  The costs of notice and claims administration of the Settlement shall be paid by the Escrow Agent to the Claims Administrator as approved by the MDL Court and at the direction of Lead Class Counsel with notice of such payments provided to counsel for BMS.

2.      Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund, shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to Lead Class Counsel and counsel for BMS.

**2.      Disbursements and distributions from the Settlement Fund – after the Effective Date**

3.      After the Effective Date, the Settlement Fund shall be distributed as follows.

4.      Any remaining fees or expenses incurred in administering the Escrow Agreement and the Settlement Fund shall be paid pursuant to the Escrow Agreement, and to the extent, if any, the reasonable fees and expenses incurred as part of notice and claims administration of the Settlement have not been paid, such fees and expenses shall be paid by the Escrow Agent to the Claims Administrator with notice of such payments provided to Lead Class Counsel.

5.      Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund, shall be made

promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to Lead Class Counsel.

6.     Any compensation determined by the MDL Court for services rendered to the Settlement Classes by the Class Representatives, either in the amounts to be recommended by Lead Class Counsel as set forth in the proposed notice forms or as otherwise ordered by the MDL Court, shall be distributed to the Class Representatives.

7.     Any attorneys' fees and litigation expenses awarded by the MDL Court to Lead Class Counsel in connection with Final Approval of this Settlement Agreement by the MDL Court. Such attorneys' fees and litigation expenses shall be paid to Lead Class Counsel for distribution to other Class Counsel.

8.     The Settlement Amount, net of payment of fees, costs, expenses and awards provided for in Paragraphs 1 through 7 above, shall be segregated 23 percent (23%) for the benefit of Consumers (the "Consumer Settlement Pool") and seventy-seven percent (77%) for the benefit of TPP Class Members (the "TPP Settlement Pool"), as was agreed between allocation counsel at the conclusion of a mediation held before Eric Green, Esq. on June 22, 2009. There will then be a reallocation of notice costs between the Consumer Settlement Pool and the TPP Settlement Pool to reflect the agreement by allocation counsel that Consumers and TPP Class Members share the costs of notice equally.

9.     The Consumer Settlement Pool shall be payable to Consumer Class Members who submit Proofs of Claim that are accepted by the Claims Administrator and approved by the MDL Court ("Authorized Consumer Claimants") in accordance with the Claims Process procedures set forth below in Paragraphs 11-13 and 17-20.

a.      If the amount of the Consumer Settlement Pool is not sufficient to pay each Authorized Consumer Claimant his or her Total Recognized Claim as set forth herein, then each Authorized Consumer Claimant shall be paid their *pro rata* share of the claimants' Total Recognized Claim.

b.      It there are any unclaimed monies in the Consumer Settlement Pool after all Authorized Consumer Claimants have been paid according to their Total Recognized Claim, then the disposition of the balance of the Consumer Settlement Pool shall be determined by the MDL Court upon motion of Lead Class Counsel.  Under no circumstances are any such unclaimed funds in the Consumer Settlement Pool to revert to BMS or be used to satisfy TPP claims.

10.      The TPP Settlement Pool shall be payable to TPP Class Members who submit Proofs of Claim that are accepted by the Claims Administrator and approved by the MDL Court ("Authorized TPP Claimants") in accordance with the Claims Process procedures set forth below in Paragraphs 14-15 and 21.

**B.      The Claims Process**

   **1.      Required claims documentation**

      **a.      Consumer Class Members**

11.      In order to validate a claim for payment associated with each Subject Drug for which they seek payment from the Settlement Fund, Consumer Class Members must submit one proof of payment for each Subject Drug for which they are seeking payment.

12.      Proof of payment for Consumers in Class 1, for which the Claims Administrator has received data on co-payment obligations from CMS, and for Consumers in Class 3 who have chosen the "Easy Refund Option," may be in the form of a statement signed by the Consumer Class Member under penalty of perjury indicating that the Consumer paid or is obligated to pay a

percentage co-payment for one or more of the Subject Drugs during the period January 1, 1991, through December 31, 2004. This statement shall also be accepted as executed by a spouse of a deceased Consumer Class Member or a legal representative of the deceased Consumer Class Member's estate.

13.    Proof of payment for Consumers in Class 3 who have elected the "Full Estimation Refund Option" may be in the form of the following: (i) a receipt, cancelled check, or credit card statement that shows a payment for one of the Subject Drugs (other than a flat co-payment); (ii) a letter from the Consumer Class Member's doctor stating that he or she prescribed and that the Consumer Class Member paid or is obligated to pay part or all of the cost of one of the Subject Drugs (other than a flat co-payment) at least once; (iii) billing records from a doctor or other health care provider evidencing an obligation to pay part or all of the cost of one of the Subject Drugs (other than a flat co-payment); (iv) an Explanation of Benefits ("EOB") from an insurer or other payor evidencing an obligation to pay part or all of the cost of one of the Subject Drugs (other than a flat co-payment), or (v) any combination of (i)-(iv) above.

**b.    TPP Class Members**

14.    TPP Class Members shall be required to submit the amount of purchases of each Subject Drug for which they are seeking payment during the period January 1, 2003, to December 31, 2003. This period is substituted for the amount of expenditures for each drug associated with the full class period in recognition of the difficulty many TPPs have in accessing claims data that are older and likely not kept electronically or on current electronic systems. This "proxy period" shall be used to determine the payments made to each TPP Class Member in accordance with the procedures set forth below.

15.    In order to validate a claim for payment associated with the Subject Drugs for which they seek payment from the Settlement Fund, TPP Class Members with claimed

expenditures for Subject Drugs during the proxy period that exceed $300,000.00 in total shall be required to submit electronic claims documentation with their claim.  The form of data required to be submitted are delineated in the TPP Claim Form attached as Exhibit B to the Settlement Agreement.  Those TPP Class Members whose claimed expenditures are $300,000.00 or less need not submit electronic claims documentation with their claim but must furnish such claims documentation upon request of the Claims Administrator.

### 2.     Calculating Recognized Claim Amounts

16.     Procedures for establishing a Recognized Claim for each Consumer Class Member and TPP Class Member have been established as follows:

### a.     Consumer Class Members in Class 1

17.     For Consumers in Class 1 for which the Claims Administrator has obtained records from CMS evidencing the Consumer's total co-payment obligation under Medicare Part B during the class period, such total co-payment obligation, as evidenced in records from CMS, shall form the basis of the Class 1 Consumer's claim.

  a.     For the drugs Cytoxan, Taxol, and Vepesid, the Consumer's total co-pay obligation for such drugs shall be summed and then multiplied by a factor of three (3x).

  b.     For the drugs Blenoxane, Etopophos, Paraplatin, and Rubex, the Consumer's total co-pay obligation for such drugs shall be summed (but will not be multiplied by a factor).

  c.     Both figures shall be added to determine the Consumer's "Total Recognized Claim" used for purposes of calculating the payment made to each Consumer Class Member.

### b.     Consumer Class Members in Class 3

18.     For Consumers in Class 3 for which the Claims Administrator does not have records from CMS, the amount to which the Class 3 Consumer shall be entitled will be determined based upon the Consumer's election on a claim form provided by the Claims Administrator between two options.

a.     <u>Easy Refund Option</u>.  If a Class 3 Consumer elects the "Easy Refund Option" on the claim form provided, and the Consumer's claim is verified and accepted by the Claims Administrator, the "Total Recognized Claim" used for purposes of calculating the payment made to each such Consumer Class Member shall be equal to $35.00.

b.     <u>Full Estimation Refund Option</u>.  If a Class 3 Consumer elects the "Full Estimation Refund Option" on the claim form provided, then the Consumer will be required to estimate the Consumer's total out-of pocket expenses associated with percentage co-payments or full payments for each Subject Drug for which the consumer is seeking payment.  Each such Consumer will also be required to provide documentary support, as called for in Section A.1.a above, in support of the Consumer's estimated out-of-pocket expenses.

i.     For the drugs Cytoxan, Taxol, and Vepesid, the Consumer's estimated out-of-pocket expenses for such drugs shall be summed and then multiplied by a factor of three (3x).

ii.     For the drugs Blenoxane, Etopophos, Paraplatin, and Rubex, the Consumer's estimated out-of-pocket expenses for such drugs shall be summed (but will not be multiplied by a factor).

   iii.  Both figures shall be added to determine the Consumer's "Total

Recognized Claim" used for purposes of calculating the payment made to each

Consumer Class Member.

   **c.**  **Sample calculations for hypothetical Consumer claims**

19. Example # 1

Consumer information:

  Consumer Class Member in Class 1.  Consumer validly certifies under penalty of
  perjury that the Consumer paid or was obligated to pay percentage co-payments
  during the Class Period.

  CMS records indicate total co-payment obligations under Medicare Part B to be
  $200 for Cytoxan, Taxol, and Vepesid and $100 for Blenoxane, Etopophos,
  Paraplatin, and Rubex during the class period.

Calculation:

  Cytoxan, Taxol, and Vepesid:   $200 x 3 = $600
  Blenoxane, Etopophos, Paraplatin, and Rubex:   $100

  Total Recognized Claim = $700, unless Total Recognized Claims of all Consumer
  Class Members exceeds the amount allocated to pay Consumer claims, in which
  case the payment will be reduced in proportion to all such Recognized Claim
  amounts.

20. Example # 2

Consumer information:

  Consumer Settlement Class Member in both Class 1 and Class 3.  Consumer
  validly certifies under penalty of perjury that the Consumer paid or was obligated
  to pay percentage co-payments during the Class Period under both Medicare Part
  B and under one or more private health insurance plans.

  CMS records indicate total co-payment obligations under Medicare Part B to be
  $200 for Cytoxan, Taxol, and Vepesid and $100 for Blenoxane, Etopophos,
  Paraplatin, and Rubex during the class period.

  Consumer chooses "Easy Refund Option" for Class 3 refund.

Calculation:

Cytoxan, Taxol, and Vepesid:   $200 x 3 = $600
Blenoxane, Etopophos, Paraplatin, and Rubex:   $100

Total Recognized Claim = $735 ($600 + $100 +$35), unless total Recognized
Claims of all Consumer Class Members exceeds the amount allocated to pay
Consumer claims, in which case the payment will be reduced in proportion to all
such Recognized Claim amounts.

### d.   TPP Class Members

21.     In recognition of the fact that the claims of all TPP Class Members will exceed

the total amount of funds allocated to satisfy the claims of TPP Class Members under the

Settlement Agreement and that each TPP Class Member will be paid a pro-rata portion of the

Settlement Amount allocated to TPP Class Members, the recognized claim for TPP Class

Members shall be the total amount of purchases during the period of January 1, 2003, to

December 31, 2003, of all Subject Drugs.  This figure, if properly supported and accepted by the

Claims Administrator, is the TPP Class Member's "Total Recognized Claim" used for purposes

of calculating the payment made to each TPP Class Member.

## EXHIBIT G

### NOTICE PLAN



**KINSELLA**
MEDIA

---

## NOTICE PROGRAM

*In re Pharmaceutical Industry Average Wholesale Price Litigation*
Docket No. 01-CV-12257-PBS, MDL No. 1456

Bristol-Myers Squibb Settlement

United States District Court for the District of Massachusetts

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| BACKGROUND ON THE BRISTOL-MYERS SQUIBB SETTLEMENT | |
| Situation Analysis | 4 |
| Class Definition | 5 |
| NOTICE PROGRAM OVERVIEW | |
| Program Components | 8 |
| Direct Notice | 9 |
| PAID MEDIA PLACEMENTS | |
| Consumer Magazines | 13 |
| Third-Party Payor Trade Publications | 14 |
| EARNED MEDIA PROGRAM | 15 |
| TOLL-FREE TELEPHONE SUPPORT | 16 |
| NOTICE DESIGN | |
| Long-Form Notice | 18 |
| Publication Notice | 19 |
| Website | 20 |
| FIRM OVERVIEW | 22 |
| Selected Case Experience | 23 |

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# CASE BACKGROUND

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## CASE BACKGROUND:
## SITUATION ANALYSIS

The Average Wholesale Price ("AWP") is the published price used to establish reimbursement rates for prescription drugs. The Plaintiffs claim that during the class period, Bristol-Myers Squibb reported false and inflated AWPs for seven drugs used primarily in the treatment of cancer.

These reported AWPs were used to set reimbursement amounts that were paid by Medicare and its beneficiaries and by private health insurers and consumers making percentage co-payments under private health insurance plans. Plaintiffs claim that as a result of false and inflated AWPs, these individuals and entities overpaid for the covered drugs. BMS contends that it reported true and accurate list prices; it denies the claims and is settling to avoid the burden and expense of protracted litigation.

Under the Proposed Settlement, Medicare Part B Beneficiaries and Private-Payor Consumers would receive a partial refund of the percentage co-payment or full payments that they paid for the covered drugs. BMS contends that it reported true and accurate list prices; it denies the claims and is settling to avoid the burden and expense of protracted litigation.

Direct notice will be used to inform Medicare Part B Beneficiaries and TPP Class Members about the Settlement, see Notice Program Overview for full details, while paid media will be used to notify unidentified Class 3 Private-Payor Consumers. The paid media program takes into account the very small percentage of Class 3 Private-Payor Consumers who make up the entire Class (less than one percent of total damages).

Under the terms of Settlement, 77% of the total Settlement amount will be used to satisfy the claims of TPPs who file claims. The remaining 23% will be set aside exclusively to satisfy the claims of Medicare Part B Beneficiaries and Private-Payor Consumers.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## CASE BACKGROUND:
## CLASS DEFINITION

The proposed Class Action Settlement includes three classes:

➢ The Medicare Part B Co-Payment Class ("Class 1") is an individual Consumer Class consisting of all natural persons in the United States who, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.

➢ The Third-Party Payor MediGap Supplemental Insurance Class ("Class 2") is an "entity" class that consists of all third-party payors in the United States who, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company.

➢ The Consumer and Third-Party Payor Class For Payments Made Outside the Medicare Context Class ("Class 3") includes both individual consumers and entities. The individual consumers consist of all natural persons in the United States who made, or incurred an obligation to make, a non-Medicare Part B payment for a Class Drug manufactured, marketed, sold, or distributed by a Released Company. This Class also includes Third-Party Payors in the United States who made, or incurred an obligation to make, non-Medicare Part B reimbursements for a Class Drug manufactured, marketed, sold, or distributed by a Released Company, during the period from January 1, 1991, through December 31, 2004.

Excluded from each of the Settlement Classes are:

➢ Defendants ("Released Companies");

➢ Their respective past, present, and future officers, directors, managers, employees, agents, sales representatives, and liability insurers; and

➢ All hospitals, clinics, physicians, or physician practice groups, or other health care provider or group of providers, that purchased drugs manufactured, marketed, sold, or distributed by a Released Company, and that (a) administered, dispensed, or prescribed such drugs to a consumer and (b) billed a consumer or TPP for such drugs (the "Released Parties").

Additionally excluded from each of the Settlement Classes are the following:

➢ All natural persons who only paid flat co-payments, and not any percentage co-payments, for Class Drugs;

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

> ➤ All federal, state, and local governmental entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payments; and

For notice purposes, individuals in Class 3 are sometimes referred to as Drug Consumers or Private-Payor Consumers, and Third-Party Payor entities in Class 2 and Class 3 are sometimes collectively referred to as TPPs.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# NOTICE PROGRAM OVERVIEW

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## NOTICE PROGRAM OVERVIEW:
# PROGRAM COMPONENTS

This Notice Program outlines procedures to provide notice of the Bristol-Myers Squibb Settlement of *In re Pharmaceutical Industry Average Wholesale Price Litigation* ("BMS") as a class action, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

Direct notice will be used to inform Medicare Part B Beneficiaries and TPP Class Members about the Settlement, while paid media will be used to notify unidentified Consumers. The paid media program is very cost-effective and takes into account the very small percentage of Consumers that make up the entire Class.

The notice program is composed of the following four-parts.

➤ DIRECT NOTICE:

    ➤ Sent via first-class mail to:

- All Third-Party Payors ("TPPs") whose names and addresses are readily identifiable.

- Medicare Part B Beneficiaries who purchased the Covered Drugs during the Class Period, identified and provided by the Centers for Medicare and Medicaid Services ("CMS") in the form of a pre-notice to be followed by a full long-form notice upon request.

- All callers to the toll-free information line who request a *Notice of Proposed Class Action Settlement* as a result of seeing the Publication Notice.

    ➤ Available on the informational website as a PDF file.

➤ PAID MEDIA-BASED NOTICE:  After research of the demographics of Class Members, the paid media notice comprised of print vehicles, including:

    ➤ Consumer magazines

    ➤ Trade publications

➤ NOTICE WEBSITE:  A dedicated website will be established to provide Class Members' easy access to information and forms relating to the Settlement.  To facilitate access to the website, the site will be search engine optimized.

➤ EARNED MEDIA:  A press release will be distributed to health and cancer related print and electronic media outlets to amplify paid media notice efforts.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## Direct notice:
# Medicare Part B Beneficiaries

The direct notice process for Medicare Part B beneficiaries will be composed of between one and four components, depending on the circumstances relative to each Class Member.

> ➤ All identifiable Medicare Part B Beneficiaries who, according to available Center for Medicare and Medicaid Services ("CMS") records, were administered any of the covered drugs during the Class Period, will be mailed a Pre-Notice.  Mail will be address corrected if returned and re-mailed, if possible.

> ➤ The Pre-Notice will direct those who paid percentage co-payments (as opposed to flat co-payments) for the covered drugs during the Class Period to identify themselves by returning a postcard in order to receive the long form notice. They will be requested to certify that they paid percentage co-payments on pain of perjury.

> ➤ Those who return the postcard will be mailed the *Medicare Notice of Proposed Class Action Settlement* with a list of the drugs they had been administered.

> ➤ Those who returned the postcard and checked a box indicating they also paid a percentage co-payment for the covered drugs under private insurance will be mailed the *Consumer Notice of Proposed Class Action Settlement*.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## DIRECT NOTICE:
# THIRD-PARTY PAYORS

Direct mail notice to TPPs will consist of mailing the Notice to all identifiable TPP Class Members, informing them of their legal rights and how they may remain in or exclude themselves from the class action.  The Notice will be sent to:

➤ Entities likely to be Class Members, in the proprietary TPP Database compiled by the Settlement Administrator.  The Database includes insurance companies, health and welfare funds, employee benefit funds, third-party administrators, pharmacy benefit managers and other record keepers for noticing purposes in TPP class actions.  The Database was compiled from contacting, researching and accessing the records of various databases and listings of affiliations, group insurance plans, self-insureds, ERISA funds, pharmacy benefit manager listings, etc. as follows:

- Pharmacy Benefit Management Institute;
- America's Health Insurance Plans (AHIP);
- Benefits SourceBook;
- Managed Care Information Centers;
- Judy Diamond Associates;
- A.M. Best Company;
- Association of Managed Care Providers;
- Society of Professional Benefit Administrators;
- Self Insurers Institute of America; and
- National Association of Insurance Commissioners.

Included in the Database are:

- Approximately 30,000 companies with 100 or more employees that have self-funded (fully or partially) plans, derived from Form 5500 filings;
- Approximately 130 pharmaceutical benefits managers that may file claims on behalf of their clients, independently advise their clients of the settlement, or provide purchase documentation so that their clients may file claims;

- 13,500 Third-Party Claim Administrators or other authorized agents (including law firms) that have filed claims on behalf of TPPs in past cases and that would have an interest in notice of a class action being certified or settled; and

- America's Health Insurance Plans (AHIP), a national association, representing nearly 1,300 member companies that provide health insurance coverage to:

  - More than 200 million Americans representing 90 percent of the managed care market (HMOs, PPOs and POSs, etc.)

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

The Database is regularly updated with new entries from the above sources as well as TPPs identified through other class action litigation.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# PAID MEDIA PLACEMENTS

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## PAID MEDIA PLACEMENTS:
## CONSUMER MAGAZINES

Most adults read one or more magazines during an average month and nearly three out of five adults read or look at a magazine daily. Heavy readers read 16 or more magazines per month. Weekly magazines quickly accumulate readership and provide timely and efficient notice to readers.

The paid media plan consists ad placement in the following consumer magazines:



> A 1/3-page ad (4-5/8" x 4-5/8") once in *People* with an estimated circulation of 3,450,000.

> *People* is a weekly publication covering contemporary personalities in entertainment, politics, business and other current events.



> A 1/3-page ad (4-5/8" x 4-7/8") once in *Newsweek* with an estimated circulation of 1,9000000.

> *Newsweek* is published weekly and edited to report on national and worldwide developments with news, commentary and analysis.



> A 1/3-page ad (2-5/16" x 10") once in *TV Guide* with an estimated circulation of 2,900,000.

> *TV Guide* is published 39 times a year and contains local and national television listings as well as entertainment and programming news.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## PAID MEDIA PLACEMENTS:
## THIRD-PARTY PAYOR TRADE PUBLICATIONS

Selected trade publications will be used to supplement the direct mail notice to TPPs as follows:



➣ A full-page ad (7" x 10") placed once in *National Underwriter Life & Health*, with an estimated circulation of 50,195.

➣ With a pass-along rate of 1.7 readers per copy, approximately 85,333 agents and brokers read the publication weekly. This includes 20,700 insurance company executives.

➣ *National Underwriter Life & Health* is the only weekly magazine serving the life, health and financial services market. It contains news and feature articles to help agents better understand products and markets, and insurance company executives identify new business opportunities. Topics covered include agency management, taxes, legislation, executive benefits, retirement planning and profitable sales ideas.

# HRMagazine

➣ A full-page ad (8" x 10-7/8") placed once in *HR Magazine*, with an estimated circulation of 195,528, and a readership of 547,478.

➣ *HR Magazine* is the official publication of the Society for Human Resource Management. It is written for human resources professionals and executives and to further the professional aims of both the Society and the human resource management profession. The publication features new approaches and innovative best practices in all areas of HR management and informs on new models of ways of thinking. It is designed as a forum for trends and legal issues as well as new concepts used by human resources management professionals. It has the highest readership of any human resources publication.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# EARNED MEDIA PROGRAM

Earned media provides additional notice to Class Members, amplifying the paid media program. Earned media, as opposed to paid media, occurs by disseminating a message about the Settlement to the media without a guarantee that it will appear. The message will be distributed to health and cancer related print and Internet media outlets hoping to spark press interest and generate coverage.

## PRESS RELEASE DISTRIBUTION

A press release will be distributed targeted to cancer and health related reporters and websites. The press release will highlight the toll-free telephone number and Settlement website address so that Class Members can obtain complete information. Below is a partial list of websites that will receive the press release.

- Cancer Survivors Network
- Cancerblogger.com
- The Cancer Blog
- Health Blog Network
- Women & Cancer
- National Coalition for Cancer Survivorship
- National Ovarian Cancer Coalition
- The Testicular Cancer Resource Center
- People Living Through Cancer
- Association of Cancer Online Resources

## NEWS STORY TRACKING

Comprehensive tracking and monitoring of the usage of the press releases will be provided. The monitoring reports will include detailed information by market, media outlet, affiliation, and date and time of use.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## TOLL-FREE TELEPHONE SUPPORT

A toll-free interactive voice response system (IVR) will be established to service all Class Members calling as a result of seeing the published notices. Callers requesting a *Notice of Proposed Class Action Settlement* will be prompted to input the telephone number of the location where they would like to receive the Notice.

The system uses an address look-up database to locate the corresponding address of the caller. A portion of the address will be read back to the caller for address verification. For successful look-ups, the caller will be asked to speak the Class Member's full name and to spell the last name. If the look-up fails, is incorrect, or the call is placed from a rotary .dial telephone, the caller will be prompted to state their name, address and telephone number.

Callers will receive the applicable *Notice of Proposed Class Action Settlement*, depending on whether they are Medicare Part B beneficiaries, Third-Party Payors, or consumers.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# NOTICE DESIGN

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## NOTICE DESIGN:
# LONG-FORM NOTICE

The Notice Program calls for three different long form notices tailored to specific constituencies. TPPs will receive the *TPP Notice of Proposed Class Action Settlement*. Medicare Part B Beneficiaries will receive the *Medicare Notice of Proposed Class Action Settlement*. Drug Consumers will receive the *Consumer Notice of Proposed Class Action Settlement*. The Publication Notice will be targeted at Consumers, but will include a reference to Medicare Part B percentage co-payments being covered by the Settlement as well.

The Notices will be compliant with Rule 23 and consistent with the Federal Judicial Center's "illustrative" class action notices. Specifically, the Notices will clearly and concisely state in plain, easily understood language:

- ➢ The nature of the action;
- ➢ The definition of the class certified;
- ➢ The class claims, issues or defenses;
- ➢ That a class member may enter an appearance through an attorney if the member so desires;
- ➢ That the Court will exclude from the class any member who requests exclusion (except those class members who were previously provided an opportunity to request exclusion);
- ➢ The time and manner for requesting exclusion; and
- ➢ The binding effect of a class judgment on members under Rule 23 (c)(3).

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## NOTICE DESIGN:
# PUBLICATION NOTICE

Recent revisions to Rule 23(c)(2) of the Federal Rules of Civil Procedure as well as most state rules of civil procedure require class action notices to be written in "plain, easily understood language." Kinsella Media, LLC ("KM") applies the plain language requirement in drafting notices in federal and state class actions. The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Class Members.

The plain language Consumer Publication Notice and TPP Publication Notice are designed to alert Class Members to the litigation by using a bold headline. This headline will enable Class Members to quickly determine if they are potentially affected by the litigation. Plain language text provides important information regarding the subject of the litigation, the Class definition and the legal rights available to Class Members.

Each advertisement will prominently feature a toll-free number, website and P.O. Box address for Class Members to obtain the appropriate *Notice of Proposed Class Action Settlement* and other information.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

## NOTICE DESIGN:
# WEBSITE

An informational interactive website is a critical component of the Notice Program. A website is a constant information source instantly accessible to millions. The site will utilize the Internet's ability to serve as a key distribution channel and customer service bureau. Internet banner ads will help direct Class Members to the website.

## WEBSITE DESIGN

Combining clean site design, consistent site navigation cues and search engine optimization, the website will provide Class Members with easy access to the details of the litigation.

➢ **CLEAN DESIGN:** The site will be designed for ease of navigation and comprehension, with user-friendly words and icons. A directory, located in a column on the left-hand side of the page, will provide links to the information available on the website, www.BMSAWPSettlement.com. These can include "Court Documents," "Long Form Notice," and "Questions/Links." The website may also feature a "Frequently Asked Questions" section to answer commonly asked questions. If necessary, it will also provide a toll-free number for individuals seeking additional information and the address or email of Class Counsel.

➢ **CONSISTENT NAVIGATION CUES:** Whenever a user goes from the homepage to another part of the site, links to the homepage and subsections remain on the left side of all pages, while the case title and cite remains fixed at the top of each page.

➢ **SEARCH ENGINE OPTIMIZATION:** KM will help ensure that Class Members seeking out information about the Proposed Settlement or related topics locate that information, by optimizing search engines' ability to properly index the notice website.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# FIRM OVERVIEW

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# FIRM OVERVIEW

Kinsella Media, LLC is a nationally recognized advertising and legal notification consulting firm specializing in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members.

KM has developed and directed some of the largest and most complex national notification programs, primarily in antitrust, bankruptcy, consumer fraud, mass tort, and product liability litigation.  Specific cases have spanned a broad spectrum of issues, including asbestos, breast implants, home siding and roofing products, infant formula, pharmaceuticals, polybutylene plumbing, tobacco and Holocaust claims.  The firm has developed or consulted on over 500 notification programs and has placed over $205 million in paid media notice.  A selection of KM's case experience is attached hereto.

KM develops advertisements, press materials, websites and other notice materials that bridge the gap between litigation complexities and the need for a clear and simple explanation of legal rights.   The firm employs industry-recognized tools of media measurement to quantify the adequacy of the notice for the court, and ensures all notice materials are in "plain language" and are fully compliant with Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and comparable state guidelines.

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

# SELECTED CASE EXPERIENCE

**Antitrust**

*In re Nasdaq Market-Makers Antitrust Litig.*, No. M21-68, 94 CV 3996, MDL No. 1203 (S.D.N.Y.) (securities)

*State of Connecticut v. Mylan Laboratories, Inc.*, MDL No. 1290, Misc. No. 99-276 (D.D.C.) (pharmaceuticals)

*In re Toys "R" Us Antitrust Litig.*, MDL No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

*State of Florida v. Nine West Group, Inc.*, Civil Action No. 00 CV 1707 (S.D.N.Y) (shoes)

*In re Cardizem Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich.) (Cardizem)

*In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.) (Buspar)

*Ohio vs. Bristol-Myers Squibb, Co.*, 1:02-CV-01080 (D.D.C.) (Taxol)

*Raz v. Archer Daniels Midland Co., Inc.*, No. 96-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid)

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361 (D. Me.) (prerecorded music products)

*Kelley Supply, Inc. v. Eastman Chemical Co.*, No. 99CV001528 (Wis. Cir. Ct., Dane County) (Sorbates)

*Giral v. Hoffman-LaRoche Ltd.*, C.A. No. 98 CA 7467 (W. Va. Cir. Ct., Kanawha County) (vitamins)

*Comes v. Microsoft Corp.*, Case No. CL82311 (Iowa Dist. Ct., Polk County) (software)

*In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663 Civil No. 04-5184 (FSH) (D.N.J.) (insurance)

*In re: Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, CA:01-CV-12257-PBS (D. Mass.) (pharmaceuticals)

*Cox v. Microsoft Corp.*, Index No. 105193/00 (N.Y. Sup. Ct., New York County) (software)

---

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

*In re: Monosodium Glutamate Antitrust Litig.*, D-0202-CV-0200306168, D-202-CV-200306168 (N.M. Dist. Ct., County of Bernalillo) (MSG)

*Conroy v. 3M Corp.*, Case No. C-00-2810 CW (N.D. Cal.) (invisible tape)

*Comes v. Microsoft Corp.*, Case No. CL8231 (Iowa Dist. Ct., Polk County) (computers)

**Consumer**

*Burch v. American Home Products Corp.*, No. 97-C-204 (1-11) (W. Va. Cir. Ct., Brooke County) (Fen Phen)

*Woosley v. State of California*, No. CA 000499 (Cal. Super. Ct., Los Angeles County) (automobiles)

*Fettke v. McDonald's Corp.*, Case No. 044109 (Cal. Super. Ct., Marin County) and *BanTransFat.com v. McDonald's Corp.*, Case No. 034828 (Cal. Super. Ct., Marin County) (trans fatty acids)

*Weiner v. Cal-Shake, Inc.*, J.C.C.P. No. 4208 (Cal. Super. Ct., Contra Costa County) (roofing product)

*Daniel v. AON Corp.*, No. 99 CH 11893 (Ill. Cir. Ct., Cook County) (insurance contingency fees)

*Reiff v. Epson America, Inc.* and *Latham v. Epson Am.*, Inc., J.C.C.P. No. 4347 (Cal. Super. Ct., L.A. County) (ink jet printers)

*Azizian v. Federated Department Stores, Inc.*, Docket No. 4:03 CV-03359 SBA (N.D. Cal.) (cosmetics)

*Lebrilla v. Farmers Group Inc.*, No. 00-CC-07185 (Cal. Super. Ct., Orange County) (auto insurance)

*Hoorman v. GlaxoSmithKline*, No. 04-L-715 (Ill. Cir. Ct., Madison Cty.) (Paxil pharmaceutical)

*In re Tri-State Crematory Litig*, MDL No. 1467 (N.D. Ga.) (improper burial)

**Discrimination**

*McNeil v. American General Life and Accident Ins. Co.*, No. 8-99-1157 (M.D. Tenn.) (insurance)

*Nealy v. Woodmen of the World Life Ins. Co.*, No. 3:93 CV-536 BN (S.D. Miss.) (insurance)

*In re Pharmaceutical Industry Average Wholesale Price Litigation (Bristol-Myers Squibb Settlement)*

*In re Holocaust Victim Assets Litig.*, No. CV 96-4849 (Consolidated with CV- 5161 and CV 97-461) (E.D.N.Y.) (Holocaust)

## Mass Tort

*Ahearn v. Fibreboard Corp.*, C.A. No. 6:93-CV-526 (E.D. Tex.), and *Continental Casualty Co. v. Rudd*, C.A. No. 6:94cv458 (E.D. Tex.)    (asbestos injury)

*Georgine v. Amchem, Inc.*, C.A. No. 93-CV-0215 (E.D. Pa.) (asbestos injury)

*Engle v. RJ Reynolds Tobacco Co.*, No. 94-08273 CA 20 (Fla. Cir. Ct., Dade County) (tobacco injury)

*Backstrom v. The Methodist Hosp.*, No. H-94-1877 (S.D. Tex.) (TMJ injury)

## Pension Benefits

*Forbush, Rhodes v. J. C. Penney Co., Inc. Pension Plans*, Nos. 3:90-2719-X and 3:92-0109-X (N.D. Tex.)

*Collins v. Pension Benefit Guarantee Corp.*, No. 88-3406 and *Page v. Pension Benefit Guarantee Corp.*, No. 89-2997 (D.D.C.)

## Product Liability

*Cox v. Shell Oil Co.*, No. 18,844 (Tenn. Ch. Ct., Obion Co.) (polybutylene pipe)

*Naef v. Masonite Corp.*, No. CV-94-4033 (Ala. Cir. Ct., Mobile County) (hardboard siding product)

*In re Louisiana Pac. Corp. Inner Seal OSB Trade Practices Litig.*, MDL No. 1114, C 95-3178 (N.D. Cal.) (oriented strand board)

*Cosby v. Masonite Corp.*, No. CV-97-3408 (Ala. Cir. Ct., Mobile County) (siding product) and *Quin v. Masonite Corp.*, No. CV-97-3313 (Ala. Cir. Ct. Mobile County) (roofing product)

*Ruff v. Parex, Inc.*, No. 96-CvS 0059 (N.C. Super. Ct., Hanover County) (EIFS)

*Garza v. Sporting Goods Properties, Inc.*, No. SA 93-CA-1082 (W.D. Tex.) (gun ammunition)