## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| BMS SETTLEMENT, TRACK TWO SETTLEMENT, AND ASTRAZENECA CLASS 2 AND 3 SETTLEMENT | Judge Patti B. Saris |

### CLASS PLAINTIFF'S STATUS REPORT
### REGARDING THE TRACK TWO SETTLEMENT

**A.   Executive Summary**

This status report explains to the Court the status of notice and claims administration in the Track Two Settlement.  **In order to maintain the current notice schedule the claims administrator must receive instructions from Class Counsel as to whether to proceed with the originally contemplated Class 1 notice program by January 7, 2011**.

CMS has recently completed the production of all requested data related to the Track Two Settlement.  Based on this data, Rust Consulting, Inc. ("Rust") has identified 19.3 million individuals who are potential consumer members of Class 1.  Notice to Class 1, as originally envisioned by the parties and approved by the Court, is estimated to cost a total of $16.1 million. Given this significant expense, Class Counsel provide the Court with an explanation of these expenses and the impact on the amounts available for distribution to class members.  Class Counsel provide the Court with various alternatives to the original notice plan and the costs associated with each.  Before proceeding with the original notice plan and incurring the $16.1

- 1 -

million expense associated with that plan, Class Counsel feels it is important to share this information with the Court and seek the Court's guidance.

The current schedule for effectuating direct mail notice to Class 1 requires the initial mailing be complete no later than January 31, 2011.  In order to meet this schedule Rust must begin mailing no later than January 10, 2011.   If Class Counsel do not received direction from the Court to effectuate a change in the notice plan by January 7, 2011, Rust will be instructed to effectuate the mailing as originally contemplated.

### B.   Background

On November 30, 2010, the Court issued an Order for Final Consideration of the Track Two Settlement [Docket No. 7314] (the "November Order.").  The November Order directed Class Counsel to provide a report to the Court on December 31, 2010 "regarding planned notice and notice expenses in connection with the proposed mailing to potential class one members." November Order at ¶4.  The full schedule set forth in the November Order is set out below:

| December 31, 2010 | Class Counsel To File A Status Report Regarding Planned Notice and Notice Expenses In Connection with the Proposed Mailing to Potential Class One Members |
|---|---|
| January 31, 2011 | Direct Mail Notice to Potential Track Two Class One Members To Be Sent (Unless Otherwise Ordered By the Court In Light of the December 31 Report) |
| February 28, 2011 | Class Plaintiffs file Motion for Attorney Fees and Expenses |
| February 28, 2011 | Deadline for Class Member to Return Initial Notice Cards |
| March 28, 2011 | Deadline for Objections, Exclusions and Filing of Claims |
| April 8, 2011 | Class Counsel Files Final Approval Papers and Recommendations on Use of Any Excess Settlement Funds |

| April 19, 2011 | Final Approval Hearing |
|---|---|

### C.      Production Of Data By CMS Is Complete

On December 17, 2010 Class Counsel filed a status report with the Court concerning the

BMS, Track Two and AstraZeneca Settlements [Docket No. 7358].  At that time Class Counsel

reported that CMS had produced the names and addresses of all potential Class 1 members and

25% of their claims level data.  CMS' vendor, Buccaneer, Inc. ("Buccaneer") also filed an

affidavit with the December 17, 2010 status report indicating that Buccaneer expected to produce

an additional 25% of the invoice data by December 22, 2010 and the remaining 50% on or before

January 15, 2011.

On December 21, 2010 Buccaneer produced to Class Counsel an additional 25% of the

claims level data.  On December 28, 2010, Buccaneer provided the remaining 50% of the claims

level data.  Buccaneer has now completed the data request in full and produced all requested data

to Class Counsel.  As of the date of this report, Rust has loaded the full name and address file as

well as 50% of the claims level data into its systems and continues to load the remaining 50% of

the claim level data recently received from Buccaneer.

### D.   Notice To Class 1 As Contemplated By The Original Notice Plan

CMS data contains the names of *all* individuals (living and deceased) for whom Medicare

made a payment for one of the drugs included in the settlement.  Most Medicare recipients have

supplemental insurance to cover their 20% co-insurance payment and do not pay this amount

out-of-pocket and are therefore not class members.  Dr. Hartman has estimated that

approximately 15% of Medicare recipients do not carry some form of supplemental insurance.

Medicare does not track information on which consumer had so-called "Medi-Gap" insurance

and which were responsible for payment of the 20% co-payment themselves.  Sending notice to everyone in the CMS data is over-inclusive for perhaps at least 4 out of 5 recipients of the notice will not have incurred out-of-pocket expenditures.

As originally contemplated by Class Counsel and approved by the Court, notice to Class 1 consumers will proceed in two waves.  First, each potential class member identified in the CMS data will receive a two page notice and return claim card.  By returning the claim card those recipients responsible for some portion of their 20% Medicare co-insurance payment – and who are therefore class members- will self-identify by certifying they made out-of-pocket payments.

Second, once class members have identified themselves each will be sent a full notice which includes information regarding their individual claims culled from the CMS data.  If they agree with the claim information their claim will be calculated using the information in the CMS data.  If sufficient funds exist to pay each claimant their recognized claim based on the formula for determining consumer claim amounts[1], each consumer will receive a full payment.  If the funds are not sufficient, each consumer's claim will be reduced proportionately.

### E.   Expenses Associated With Notice To Class 1 As Contemplated By The Original Notice Plan

Utilizing the CMS data, Rust has identified by name 19.3 million individuals who are *potential* members of Class 1 in the Track Two Settlement.  Counsel asked Rust to estimate the cost of completing notice to Class 1.  In order to mail the initial two-page notice to all 19.3 million individuals in the CMS data, follow up with a full notice to those who respond by returning the reply card, staff a live phone bank to answer questions concerning the settlement

---

[1] The formula contemplates a payment of three times (3x) the out-of-pocket expenditures for Class A drugs made during the "heartland period" of December 1, 1997 through December 31, 2003 and a payment of single (1x) out-of-pocket expenditures for all Class B drugs as well as Class A drugs outside of the heartland period.

- 4 -

that will result from the mailings and to do all of the remaining tasks associated with administration of the claims (through the mailing of payment to class members and handling un-cashed checks), Rust estimates that it will cost $16.1 million.  The cost of notice to date for Class 3 consumers and TPPs as well as claims administration activities to date were approximately $4 million.  Completing notice to Class 1 in the manner originally contemplated would bring the total cost of notice and administration to approximately $20.1 million.

### F.  Projected Impact Of Notice To Class 1, As Originally Contemplated, On Amount Of Distributable Funds

The Track Two formula for determining the net amount of funds available to distribute to class members deducts all fees and expenses, including notice costs for both consumers and TPPs, attorneys fees and other costs, from the total settlement amount prior to application of negotiated allocation amounts between consumers and TPPs.   Using the estimated $20.1 million total cost of notice and administration, and assuming a 30% attorney fee award, results in a net distributable amount of $67.4 million.  The net distributable consumer allocation (17.5% of the total distributable amount) equals $11.8 million.

It is not possible to know the exact response rate to the mailing.  Previous experience in the AstraZeneca Class 1 settlement is instructive.  In that settlement, CMS data was used to provide direct mail notice to approximately 450,000 consumers of Zoladex.  This resulted in a total of slightly more than 10,000 claims by class members.  This represents a response rate to the mailing of 2.3%.[2]

At an assumed return rate of 15% on the reply cards sent to all 19.3 million potential class members in the Track Two settlement, the average payment amount to consumers would be

---

[2] 2.3% is the response rate based on the total number of individuals identified in the CMS data (10,000 claims divided by 450,000 mailings) .  Its does not represent the response rate by actual class members which was significantly higher at approximately 11%.

approximately $4.06.  At an assumed return rate of 10%, the average payment to consumers

would be approximately $6.21.  At an assumed return rate of 3% the average payment would be

$20.36.

The high cost of notice to Class 1 consumers affects the net distributable amount to TPPs.

The total net distributable amount to TPPs (82.5% of the total distributable amount) equals $55.6

million.   Theses calculations are set out for the Court's review on Exhibit A hereto.

### G.  Potential Alternatives To Direct Mail Notice To Class 1

Class Counsel set out below for the Court's consideration a number of potential

alternatives to full direct mail notice to all potential members of Class 1 as originally

contemplated.   The alternatives attempt to reduce overall notice expenses by 1) reducing the

costs of a live call center, or 2) reducing mailing costs by reducing the number of individuals

receiving direct mail notice.  Utilizing 50% of the claims level data already loaded into Rust's

data systems, Class Counsel provide the Court with estimates of the impact of each alternative on

the net distributable amount for both consumers and TPPs in the settlement.  Class Counsel also

provide the Court with an estimate of the average claim amount for consumers resulting from

each alternative.  See Exhibits B through E.

### 1.  Alternative 1:  Direct Mailed Notice To All Identified Individuals Utilizing An Automated Call Center

This alternative would entail sending direct mail to all 19.3 million potential class

members but would replace a live call center with an automated call center.  One large expenses

associated with the original notice program is the set up and maintenance of a call center with

live operators to answer questions from potential class members.  Rust could develop an

automated call center to answer questions concerning the receipt of the initial mailing.  That

center would provide callers with automated responses to the top frequently asked questions

covering the settlement and/or the claims process.  It would also provide callers with answers to questions regarding whether they should return the card and participate in the settlement and direct individuals to the settlement website for more information.  A live call center would still be used once the second full notice has been mailed to answer questions from individuals who return the initial card.  The impact to the net distributable amount to consumers and TPPs, as well as the average consumer claim, is set out on Exhibit B hereto.  There would be no change in the case schedule necessitated by this alternative.

At an assumed return rate of 15% on the reply cards sent to all 19.3 million potential class members in the Track Two settlement, the average payment amount to consumers would be approximately $4.14.  At an assumed return rate of 10%, the average payment to consumers would be approximately $6.31.  At an assumed return rate of 3% the average payment would be $20.70.

## 2.  Alternative 2:  Direct Mail Notice To Living Beneficiaries Only

This alternative would mail notice only to those individuals identified in the CMS data as still living.  The notice plan for Class 1 consumers contemplates that the spouse or legal representative of deceased class members may make a claim under the settlement.  Restricting the direct mail notice to living potential class members would reduce the number and cost of the initial mailing.  Rust has identified 8.9 million potential Class 1 members who are living.  This option would include a TV and radio campaign to reach the heirs of deceased class members. The media campaign is estimated to cost an additional $3 million.  The impact to the net distributable amount to consumers and TPPs that result from this change in notice procedure are set out in Exhibit C attached hereto.  It is expected that due to the lead time involved in

purchasing TV and radio spots, an additional media campaign would not allow notice to be complete on the currently approved schedule.

At an assumed return rate of 15% on the reply cards sent to 8.9 million living potential class members in the Track Two settlement, the average payment amount to consumers would be approximately $9.52.  At an assumed return rate of 10%, the average payment to consumers would be approximately $14.34.  At an assumed return rate of 3% the average payment would be $47.80.

3.   **Alternative 3:  Direct Mail Notice To Beneficiaries Who Have Class A Drug Administrations Only**

This alternative would mail notice only to those individuals (both living and deceased) identified in the CMS data as having had a Class A drug administration.  There are 7 name brand drugs in the settlement classified as Class A drugs.[3]  The remainder of the settlement drugs are classified as Class B and consist primarily of multi-source drugs.  Rust has identified 2.2 million individuals (living and deceased) with a Class A drug administration from the CMS data.  This option would also include a TV and Radio campaign to reach Class 1 consumers with Class B drug administrations.  That campaign is estimated to cost $3 million.  The impact on the net distributable amount to consumers and TPPs that result from this change in notice procedure are set out in Exhibit D attached hereto.  It is expected that due to the lead time involved in purchasing TV and radio spots, an additional media campaign would not allow notice to be complete on the currently approved schedule.

At an assumed return rate of 15% on the reply cards sent to all 2.2 million potential class members with Class A drug administrations in the Track Two settlement, the average payment amount to consumers would be approximately $41.63.  At an assumed return rate of 10%, the

---

[3] The Class A drugs are: Anzamet, Aranesp, Epogen, Ferrlecit, InFed, Neulasta, and Neupogen.

average payment to consumers would be approximately $62.46.  At an assumed return rate of 3% the average payment would be $208.00.

### 4.  Alternative 4:  Use Of Television And Radio Only To Reach Class 1 Consumers.

This option would replace direct mail notice to potential Class 1 members with a very robust national TV and radio campaign.  Based on previous experience in the AWP and other settlements, the use of cable TV and radio ads is much more effective in driving claims than print publication.  An analysis of the impact on the net distributable amount to class members that result from this change in notice procedure for Class 1 is illustrated in Exhibit E.  These calculations assume that the mailing of notice to Class 1 is replaced with a TV/radio campaign totaling $4 million.  Due to the lead time involved in purchasing TV and radio spots, such a media campaign would not allow notice to be complete on the currently approved schedule.

While it is difficult to predict the number of class members who would file claims in response to a national media campaign, the notice to Class 3 members in the Track Two Settlement should serve as a guide.  Notice to Class 3 consumers consisted of two waves of national media, including TV, radio, internet ads as well as notice in selected publications. The first wave of notice was directed primarily at Class 3 members who made percentage co-payments.  The second wave of notice was directed primarily at those who paid cash.   The total expenditure on these campaigns combined was approximately $2.6 million.  Rust has received 20,517 Class 3 claims as a result.  A campaign directed at Medicare Part B beneficiaries of equal or greater magnitude should yield comparable results.  Assuming total combined consumer claims (Class 1 and Class 3) of 41,000, the average consumer claim under this alternative would be approximately $325.00.

### H.  Summary Of Alternatives

For the Court's convenience, set out below is a summary of the calculation of net distributable amounts to consumers and TPPs that result from the notice program as originally contemplated and for each of the four alternatives discussed above:

|  | Current Notice Procedure (Direct Mail to All) | Alternative 1 Automated Call Center (Direct Mail to All) | Alternative 2 Direct Mail to Living Beneficiaries Only | Alternative 3 Direct Mail to Class A Consumers Only | Alternative 4 TV and Radio Notice Only |
|---|---|---|---|---|---|
| **Total Settlement Amount** | $125 M | $125M | $125M | $125M | $125M |
| **Attorney Fee (30% assumed)** | -$37.5M | $-37.5M | $-37.5M | $-37.5M | $-37.5M |
| **Cost of Notice Class 2 + 3** | $4.0 M | $4.0M | $4.0M | $4.0M | $4.0M |
| **Class 1 Notice Expense** | $16.1M | $14.8M | $10.5M | $5.0M | $4.0M |
| **Total Cost of Notice and Administration** | $20.1M | $18.8M | $14.5M | $9.0M | $11.3M |
| **Net Distributional Amount** | $67.4M | $68.7M | $73.0M | $78.5M | $76.2M |
| **Consumer Net Distributional Amount (17.53%)** | $11.8M | $12.0M | $12.8M | $13.7M | $13.3M |
| **TPP Net Distributional Amount (82.5%)** | $55.60 M | $56.6M | $60.2M | $64.8M | $62.9M |

- 10 -

### I.   Recommendation

Class Counsel believe two alternatives deserve consideration by the Court.  Either the
original notice plan should be implemented or direct mail should be restricted to living
beneficiaries.  There are advantages and disadvantages to each course.

Mailing notice to each potential class member in the CMS data will reach the greatest
number of class members and likely maximize the total number of consumer claims.  This would
also allow the settlement to proceed along the current case schedule.  The obvious disadvantage
is cost.  Notice and administration costs to consumers, including an additional $16.1 million to
complete notice to Class 1, would approach a total of $20 million.  The total allocation to
consumers in Class 1 and 3, before attorney's fees, is $21.8 million (17.5% of $125 million).
The fact that there would remain funds to be distributed to consumers results from the fact that
all notice and administration costs are deducted from the total settlement amount prior to the
application of the negotiated allocation between consumer and TPP class members.   Because of
the high cost of mailed notice the average payment to each consumer is likely to be lower.

Restricting direct mail notice to potential living class members has advantages and
disadvantages.  It would save class members $5.5 million while still reaching 8.9 living potential
Class 1 members with direct notice.  The response rate among living recipients of direct mail
notice is likely to be higher than for heirs.  The savings realized by reducing the number of direct
mail notices would increase the projected average consumer payment significantly over the
original notice plan.  Heirs of deceased class members would still be reached through a robust
national TV and radio campaign.  Disadvantages to this alternative include the fact that an
additional national media campaign would not be accomplished on the current case schedule.

The response rate by heirs to a national media campaign is likely to be lower than if they received direct mail notice.

### J.  Timing

Rust stands ready to effectuate notice to all 19.3 million potential Class 1 members as contemplated by the original notice plan.  In order to do so by January 31, 2011 as called for by the current Track Two schedule, Rust must begin printing and mailing notices no later than January 10, 2011 and would need direction from Class Counsel by Friday January 7, 2011 that a different notice program is to be implemented.

As always, Class Counsel stand ready to provide the Court with additional information or to answer questions concerning the issues outlined above.  If no direction is received by the Court by January 7, 2011, Class Counsel will instruct Rust to proceed with the full mailing as originally contemplated in the Track Two notice program.

DATED: December 31, 2010

By    **/s/ Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

001534-16  416494 v1

Jennifer Fountain Connolly
Hagens Berman Sobol Shaprio LLP
1629 K St. NW, Suite 300
Washington, DC  20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **CLASS PLAINTIFF'S STATUS REPORT CONCERNING RECIEPT OF CMS DATA AND STATUS OF NOTICE TO POTENTIAL CLAS 1 CONSUMERS IN THE BMS AND TRACK TWO SETTLEMENTS**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on December 31, 2010, a copy to LexisNexis File & Serve for posting and notification to all parties.

　　　　　　　　　　　　　 **/s/ Steve W. Berman**　　　　　　
　　　　　　　　　　　　　Steve W. Berman

001534-16  416494 v1

# Exhibit A

# AWP Track Two Settlement
# Estimated Use of Funds

## Direct Notice as Originally Approved

| | |
|---|---:|
| Total Track Two Settlement | $125,000,000 |
| Estimated Attorney's Fees[1] | ($37,500,000) |
| | $87,500,000 |

| | | |
|---|---|---:|
| Notice and Administration Incurred[2] | ($4,000,000) | |
| Estimated Additional Notice and Administration[3] | **($16,124,100)** | |
| Total Notice of Administration to be Paid by Class | | ($20,124,100) |

| | |
|---|---:|
| Net Distributable Amount | **$67,375,900** |

**TPPs**                              **Consumers**

| | | | |
|---|---|---|---|
| TPP Net Distributable Amount[4] | **$55,585,177.52** | Consumer Net Distributable Amount[5] | **$11,790,782.50** |
| | | Estimated Number of Class Members Responding (three scenarios)[6] | 2,900,000 / 1,900,000 / 579,000 |
| | | Average Consumer Payment (three scenarios)[7] | $4.06 / $6.21 / $20.36 |

---

[1] Estimated based on 30% fee, inclusive of all litigation expenses.

[2] Includes two rounds of published notice to class 3 consumers, notice to TPPs and all claims administration to date.

[3] Includes all activity from mailing initial notice cards to 19.3 million individuals (living and deceased) for whom CMS reimbursed for a subject drug through final distribution affidavit.

[4] $67,375,900 times 82.5% TPP allocation.

[5] $67,375,900 times 17.5% consumer allocation.

[6] Assumes 15% / 10% / 3% response rate to initial mailing.

[7] Consumer distribution amount (11.8M) divided by estimated number of class members responding.

**Exhibit B**

# AWP Track Two Settlement
## Estimated Use of Funds

### Direct Mailed Notice to All 19.3 Million Individuals
### Utilizing an Automated Call Center

| | |
|---|---|
| Total Track Two Settlement | $125,000,000 |
| Estimated Attorney's Fees[1] | ($37,500,000) |
| | $87,500,000 |

| | | |
|---|---|---|
| Notice and Administration Incurred[2] | ($4,000,000) | |
| Estimated Additional Notice and Administration[3] (using an automated rather than live call center) | **($14,882,954)** | |
| Total Notice of Administration to be Paid by Class | | ($18,883,954) |

Net Distributable Amount                                         **$68,616,046**

**TPPs**                                                **Consumers**

| | | | |
|---|---|---|---|
| TPP Net Distributable Amount[4] | **$56,608,237.95** | Consumer Net Distributable Amount[5] | **$12,007,808.00** |
| | | Estimated Number of Class Members Responding (three scenarios)[6] | 2,900,000 / 1,900,000 / 579,000 |
| | | Average Consumer Payment (three scenarios)[7] | $4.14 / $6.31 / $20.70 |

---

[1] Estimated based on 30% fee, inclusive of all litigation expenses.

[2] Includes two rounds of published notice to class 3 consumers, notice to TPPs and all claims administration to date.

[3] Includes all activity from mailing initial notice cards to 19.3 million individuals (living and deceased) for whom CMS reimbursed for a subject drug through final distribution affidavit utilizing an automated rather than live call center for individuals receiving the initial two-page notice.

[4] $68,616,046 times 82.5% TPP allocation.

[5] $68,616,046 times 17.5% consumer allocation.

[6] Assumes 15% / 10% / 3% response rate to initial mailing.

[7] Consumer distribution amount (12.0M) divided by estimated number of class members responding.

# Exhibit C

# AWP Track Two Settlement
## Estimated Use of Funds

### Direct Mail Notice to 8.9 Million Living Beneficiaries Only

| | |
|---|---|
| Total Track Two Settlement | $125,000,000 |
| Estimated Attorney's Fees[1] | ($37,500,000) |
| | $87,500,000 |

| | |
|---|---|
| Notice and Administration Incurred[2] | ($4,000,000) |
| Estimated Additional Notice and Administration[3] | ($7,569,753) |
| Additional Paid Media Notice to Heirs | ($3,000,000) |
| Total Notice of Administration to be Paid by Class | ($14,569,753) |

| | |
|---|---|
| Net Distributable Amount | $72,930,247 |

**TPPs**                                    **Consumers**

| | | | |
|---|---|---|---|
| TPP Net Distributable Amount[4] | $60,167,453.76 | Consumer Net Distributable Amount[5] | $12,762,793.23 |
| | | Estimated Number of Class Members Responding (three scenarios)[6] | 1,340,000 / 890,000 / 267,000 |
| | | Average Consumer Payment (three scenarios)[7] | $9.52 / $14.34 / $47.80 |

---

[1]  Estimated based on 30% fee, inclusive of all litigation expenses.

[2] Includes two rounds of published notice to class 3 consumers, notice to TPPs and all claims administration to date.

[3] Includes all activity from mailing initial notice cards to 8.9 million living individuals for whom CMS reimbursed for a subject drug through final distribution affidavit.

[4]  $72,930,247 times 82.5% TPP allocation.

[5]  $72,930,247 times 17.5% consumer allocation.

[6] Assumes 15% / 10% / 3% response rate to initial mailing.

[7] Consumer distribution amount (12.8M) divided by estimated number of class members responding.

# Exhibit D

## AWP Track Two Settlement
## Estimated Use of Funds

### <span style="color:red">Direct Mailed Notice to 2.2 Million Individuals with Class A Drug Administrations Only</span>

| | |
|---|---|
| Total Track Two Settlement | $125,000,000 |
| Estimated Attorney's Fees[1] | ($37,500,000) |
| | $87,500,000 |

| | | |
|---|---|---|
| Notice and Administration Incurred[2] | ($4,000,000) | |
| Estimated Additional Notice and Administration[3] | <span style="color:red">($1,184,104)</span> | |
| Additional Paid Media Notice to Class B Drug Recipients | <span style="color:red">($3,000,000)</span> | |
| Total Notice of Administration to be Paid by Class | | ($8,984,104) |

| | |
|---|---|
| Net Distributable Amount | **$78,515,896** |



| **TPPs** | **Consumers** | |
|---|---|---|
| TPP Net Distributable Amount[4]   **$64,775,614.00** | Consumer Net Distributable Amount[5] | **$13,740,281.00** |
| | Estimated Number of Class Members Responding (three scenarios)[6] | 330,000 / 220,000 / 66,000 |
| | Average Consumer Payment (three scenarios)[7] | $41.63 / $62.46 / $208 |

---

[1] Estimated based on 30% fee, inclusive of all litigation expenses.

[2] Includes two rounds of published notice to class 3 consumers, notice to TPPs and all claims administration to date.

[3] Includes all activity from mailing initial notice cards to 2.2 million individuals through final distribution affidavit.

[4] $78,515,896 times 82.5% TPP allocation.

[5] $78,515,896 times 17.5% consumer allocation.

[6] Assumes 15% / 10% / 3% response rate to initial mailing.

[7] Consumer distribution amount (13.7M) divided by estimated number of class members responding.

# Exhibit E

# AWP Track Two Settlement
## Estimated Use of Funds

### Utilizing Electronic Media Notice Only

| | |
|---|---:|
| Total Track Two Settlement | $125,000,000 |
| Estimated Attorney's Fees[1] | ($37,500,000) |
| | $87,500,000 |

| | | |
|---|---|---:|
| Notice and Administration Incurred[2] | ($4,000,000) | |
| Estimated Additional Notice and Administration[3] | **3,300,800** | |
| Paid Media Notice to Class 1 | **4,000,000** | |
| Total Notice of Administration to be Paid by Class | | $11,300,860 |
| Net Distributable Amount | | **$76,199,200** |

**TPPs**                          **Consumers**

| | | | |
|---|---:|---|---:|
| TPP Net Distributable Amount[4] | **$62,864,340** | Consumer Net Distributable Amount[5] | **$13,334,860** |
| | | Estimated Number of Class Members Responding[6] | 41,000 |
| | | Average Consumer Payment[7] | $324.24 |

---

[1]  Estimated based on 30% fee, inclusive of all litigation expenses.

[2]  Includes two rounds of published notice to class 3 consumers, notice to TPPs and all claims administration to date.

[3]  Includes all claims administration activity through final distribution affidavit plus $4 million for TV and radio notice program.

[4]  $76,199,200 times 82.5% TPP allocation.

[5]  $76,199,200 times 17.5% consumer allocation.

[6]  Assumes similar response to notice to Class 3 consumers with 20,500 claims filed.  20,500 x 2 = 41,000.

[7]  Consumer distribution amount (13.3M) divided by estimated number of class members responding.