UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>TRACK TWO SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**THIRD-PARTY ALLOCATION COUNSEL AND INDEPENDENT
SETTLING HEALTH PLANS' MEMORANDUM IN SUPPORT OF MOTION
FOR RECONSIDERATION OF THE COURT'S JANUARY 4, 2011 ELECTRONIC
<u>ORDER DIRECTING NOTICE TO POTENTIAL CLASS 1 MEMBERS</u>**

## I.  INTRODUCTION

Third-Party Payer Allocation Counsel and the Independent Settling Health Plans respectfully request this Court to reconsider its January 4, 2011 Electronic Order directing Class Counsel to proceed with the original notice plan for Track Two Class 1 consumers which will cost $16.1 million.  As such, the notice plan will spend almost 13% of the entire $125,000,000 Track Two Settlement Amount by sending 19,300,000 pieces of mail to individuals, the vast majority of who are not class members.[1]  This notice plan will spend $16.1 million to distribute $11.7 million and, in the end, substantially dilute the distributable amount to consumers, as well as to Third-Party Payers ("TPPs").[2]  Accordingly, TPPs respectfully request that this Court reconsider its January 4, 2011 Order and, instead, adopt an alternative notice proposal designed to provide the best notice practicable under the circumstances.

---

[1] According to Class Counsel, "4 out of 5 recipients of the notice will not have incurred out-of-pocket expenses" (Class Plaintiff's Status Report, 12/13/10).

[2] In addition, TPPs will bear 82.5% of the cost of this notice.

## II.   FACTS

On December 31, 2010, Class Counsel filed Class Plaintiff's Status Report Regarding The Track Two Settlement ("Status Report") detailing the costs ($16,100,000) associated with a proposal for a mass mailing to 19,300,000 individuals, living or dead, for whom Medicare made a payment for one of the drugs included in the Track Two settlement. Class Counsel's expert, Dr. Hartman, estimated that only approximately 15% of these 19,300,000 individuals are even class members, because the overwhelming majority of the Medicare recipients had supplemental "Medi-Gap" insurance."[3]  Status Report at p. 3.  Accordingly, based on this unrebutted expert analysis, approximately 16,405,000 individuals who will receive notice under the plan have no rights whatsoever to any recovery. The cost of sending notices to those individuals is not insignificant; it will cost $13,685,000. Moreover, based upon the class expert's estimate of the response to such a mailing, this enormous expenditure of money would result in additional distributions to class members of less than $11,800,000. *Id.*[4]

Moreover, using the 11% direct mail response rate for **eligible** Class 1 consumer claimants in the AWP AstraZeneca Class 1 settlement as a benchmark for projected returns in this settlement, this expenditure would result in only approximately 318,450 Class 1 eligible claims.  Thus, the notice plan will likely cost $50.50 per eligible Class 1 claimant to pay, on average, less than $37 per eligible Class 1 consumer claim.

Significantly, Class Counsel's estimates of the various recovery rates assume participation levels by Class 1 members based upon 15%, 10% and 3% response rates. However, those estimated participation rate estimates ignore the fact that 85% of proposed notice recipients

---

[3] Class 1 consists solely of consumers covered by Medicare who did not have supplemental insurance to cover their 20% co-insurance payment.

[4] Class 1 consumers have to share the approximate $11,800,000 net consumer recovery with the 20,517 already filed Class 3 consumer claimants who have eligible purchases in excess of $10,000,000.

would not be class members. By eliminating the majority of notice recipients who are not class members, Class Counsel's estimates overstate the potential responses by a factor of more than 6x. For example, to achieve Class Counsel's projected 15% response rate would require 100% participation by eligible Class 1 members. Even its 3% response rate would require 20% participation by eligible Class 1 members, almost double their historic claims rate.

Due Process requires that notice should be **practicable**, so that eligible class members are not deprived of notice and the opportunity to participate or not.

> The settlement of a Rule 23(b)(3) class action is binding on all class members as to matters within the action, and due process requires that adequate notice be given to class members. *See* 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1786 (2d ed.1986), *209. **Neither Rule 23 nor due process, however, requires that each class member receive actual notice; the parties are required only to provide "the best notice practicable under the circumstances."** Fed.R.Civ.P. 23(c)(2); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231-32 (D.N.J.1997) (citing cases to support conclusion that "[c]ourts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties"). Something less than actual notice to all class members is tolerated in order to strike a balance between the due process concerns and the need for a mechanism, *i.e.*, the class action, to efficiently litigate certain cases involving numerous parties. *See* Wright, supra at 17.

(Emphasis added.)

*In re Massachusetts Diet Drug Litig.*, 338 F.Supp.2d 198, 208-209 (D. Mass. 2004).

In our case, there is no dispute that notice is being provided at great cost to more than 16 million individuals who are not class members. Under this notice plan, the balance between due process concerns and the need for a mechanism is, respectfully, lopsided to the detriment of class members, including TPPs, as well as the 15% of estimated eligible consumers. Stated another way, individuals who are not class members are not entitled to due process and notice.

Yet, notice to these individuals will unreasonably increase the cost of the notice mechanism. It is simply a waste of settlement assets to spend millions of dollars to send notice to more than 16 million individuals who are not class members and have no claim.

Instead of redirecting more than 10% of the entire $125,000,000 settlement fund to individuals who have no claims, TPPs urge the Court to consider an alternative and more practicable proposal.

### III.   ALTERNATIVE PROPOSAL

TPP Allocation Counsel and the Independent Settling Health Plans urge the Court to approve Class Counsel's proposed Alternative 3 notice and publication plan. *See* Status Report at 8. Alternative 3 contemplates mailed notice to 2,200,000 potentially eligible claimants who purchased one of the seven Class A drugs at a cost of $2,000,000.[5] Data from the 20,517 claims submitted by Class 3 consumers with Class A drug purchases shows that they represent 62% percent of the recoverable amounts despite only comprising 11% of the current proposed notice population. Therefore, Alternative 3 narrowly and efficiently addresses that 62%. If 11% of all Class 1 Class A eligible purchasers participate (at the same level as AWP AstraZeneca), then an additional 36,300 of the most injured Class 1 claimants will participate.

Alternative 3 also allocates $3,000,000 in publication costs to reach Class 1 Class B drug purchasers. Coupling that publication notice program with Alternative 3's direct mailing to potentially eligible Class 1 Class A drug purchasers will result in the most efficient distribution of the most recovery dollars to the most injured consumers and, as such, is the most practicable notice under the circumstances.

---

[5] Pursuant to the terms of the Settlement Agreement, eligible claimants' purchases of Class A drugs will receive three times the recovery as compared to eligible Class B drug purchases.

## IV. CONCLUSION

For the foregoing reasons, Third-Party Payer Allocation Counsel and the Independent Settling Health Plans respectfully request this Court to reconsider its January 4, 2011 Electronic Order directing Class Counsel to proceed with the original notice plan for Track Two Class 1 consumers which will cost $16.1 million and instead, adopt an alternative notice proposal designed to provide the best notice practicable under the circumstances.

Respectfully submitted,

_/S/_____
Peter D. St. Phillip, Jr.
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
T: 914-997-0500
F: 914-997-0035

Mark Fischer
Mark D. Fischer, Esq.
Rawlings & Associates
1 Eden Parkway
LaGrange, KY 40031
T: 502-584-8580
F: 502-814-2139

*Independent Settling Health Plans' Counsel*

Gerard Branch IV
Branstetter, Stranch & Jennings PLLC
227 Second Avenue North – Fourth Floor
Nashville, TN 37201-1631
T: (615) 254-8801
F: (615) 250-3939
cdbjr@branstetterlaw.com

Jonathan D. Karmel,
The Karmel Law Firm
221 North LaSalle Street, Suite 1307
Chicago, IL 60601

T:  (312) 641-2910
F:  (312) 641-0781
jon@karmellawfirm.com

*TPP Allocation Counsel*

# CERTIFICATE OF SERVICE

I hereby certify that I, Peter D. St. Phillip, an attorney, caused a true and correct copy of the foregoing **THIRD-PARTY ALLOCATION COUNSEL AND INDEPENDENT SETTLING HEALTH PLANS' MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 4, 2011 ELECTRONIC ORDER DIRECTING NOTICE TO POTENTIAL CLASS 1 MEMBERS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending, on January 6, 2011, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                               **/s/ Peter D. St. Phillip**
                                               Peter D. St. Phillip