**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>TRACK TWO SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS PLAINTIFFS' RESPONSE TO COURT'S
JANUARY 4, 2011 ORDER REQUESTING CALL CENTER
OPTIONS IN THE TRACK TWO SETTLEMENT**

**A. Background**

On December 31, 2010, Class Plaintiffs filed a Status Report Regarding the Track Two Settlement. [Docket No. 7367]. In that report Class Plaintiffs outlined for the Court's consideration the expense associated with direct mail notice to all 19.3 million individuals identified in CMS data as potential Class 1 members in the Track Two Settlement. Class Counsel also provided the Court with information on potential alternatives to the original direct mail notice plan and the expense associated with each.

On January 4, 2011, the Court issued an order directing Class Counsel to proceed with the original notice plan and requested that Class Counsel provide options for scaling back the call center to be used to answer questions from individuals receiving mailed notice. On January 7, 2011, in response to a motion for reconsideration of the Court's January 4, 2011 Order filed by TPP Allocation Counsel and the ISHPs, the Court reconsidered its January 4, 2011 Order. The Court's January 7, 2011 Order directed Class Counsel to proceed with the Alternative 3 notice

- 1 -

and publication plan identified in Class Counsels' December 31, 2011 report. That alternative program consists of direct mail notice to 2.2 million individuals identified in the CMS data as having Class A drug administrations as well as a national media notice program directed at Class 1 members with Class B drug administrations.

As of the date of this report, Class Counsel are working with Rust Consulting, Inc. ("Rust") on effectuating mailed notice to individuals with Class A drug administrations only. Class Counsel has also instructed Kinsella Media to develop a comprehensive national media program to notify Class 1 members with Class B drug administrations utilizing an aggressive schedule for completion of the media program. Class Counsel anticipate filing a revised notice plan, along with a proposed revised schedule for completion of notice to Class 1, on or before Friday, January 14, 2011.

In response to the Court's January 4, 2011 Order, Class Counsel set forth below various options related to the call center. The expense associated with each option are those that would be incurred using the alternative notice program approved by the Court in its January 7, 2011 Order.

### B. Call Center Options

There are two basic methods used to answer calls from consumers with questions concerning a settlement.[1] The first method is the use of trained customer service representatives ("CSRs"). CSRs can be trained in the details of the settlement and available to speak live with class members and potential class members who have questions concerning the settlement. The major expense associated with the use of CSRs is the cost of training and paying CSRs on a per-

---

[1] Information concerning the settlement will also be available at all times on the settlement website www.awptrack2settlement.com.

hour basis. Because consumers are provided a toll-free number to call to reach a CSR, there is also a cost associated with each incoming call.

The original notice plan called for approximately 10 dedicated CSRs answering questions for eight hours per day, five days per week, for up to six weeks following the mailing of the initial notice.[2] Under the original plan dedicated CSRs would also be available for 4-6 weeks following the mailing of the full notice to those who return the initial notice card and who self-identify as Class 1 members with out-of-pocket expenditures.

The second method of answering consumers' questions is known as Interactive Voice Response ("IVR"). IVR is the use of an automated "decision tree" that provides pre-recorded information to a caller in response to choices made by the caller expressed by pressing a corresponding number on the caller's phone. IVR can be used to provide the caller with answers to the most frequently asked questions concerning the settlement. Once operational, IVR is available 24 hours per day 7 days a week. Because a toll-free number is also used to reach the IVR system, there is an expense associated with each incoming call.

The two methods, use of CSRs and IVR, can be also be used in combination. A caller is first required to listen to and choose one or more of the IVR options. If the caller's questions are not answered by the recorded information provided they have the option of talking to a CSR during the time CSRs are available.

---

[2] During the initial period of intense call volume following the mailing of notice or the beginning of national media CSRs are dedicated to answering calls regarding the Track Two Settlement exclusively. Once the period of intense call volume is over, a smaller number of CSRs remain to answer questions from callers. These CSRs are not dedicated solely to answering questions about the Track Two Settlement but are answering questions from consumers calling about any number of settlements, including Track Two. The expense associated with paying these CSRs is split between the various settlements.

- 3 -

### C. Alternative Call Center Proposals

In response to the Court's January 4, 2011 Order, Class Counsel asked Rust to formulate various alternatives to a traditional call center utilizing full-time CSRs.  While the Court inquired whether a call center could be utilized for a single day per week, that option is not among those listed below.  Even the much reduced mailing to 2.2 million individuals, enhanced by a national media campaign, would, in Rust's experience, result in a significant number of individuals with questions.[3]  A call center operating for a single day per week would likely be overwhelmed with calls – no doubt resulting in very long wait times for callers and many individuals who will never have their call answered.  As a practical matter, if individuals are unable to reach dedicated CSRs, it is very likely that they will contact either Class Counsel or the Court directly, neither of which are equipped to answer the number of anticipated calls.[4]  Instead, Rust has provided a number of options that would utilize CSRs on a reduced schedule – 4 hours per day for 5 days per week.  Rust believes this will both be cost effective and will minimize frustration of potential callers unable to get through.

### 1. Call Center Alternative 1 – Full Time CSR Support

This call center option is identical to that proposed in the Alternative 3 notice and publication plan set forth in Class Counsels' December 31, 2010 report.  It consists of the use of 10 full time CSRs eight hours per day for six weeks following the initial mailed notice and for six weeks following full mailed notice to each class member who responds to the initial mailing.

---

[3] For comparison, in the GSK Settlement, CMS data was used, in conjunction with a national media campaign, to notify consumers about the settlement.  Over a period of 10 weeks after mailing of notice, the GSK Settlement call center received nearly 20,000 calls from potential class members.

[4] One example is the recent McKesson Cash Payor settlement, where Rust mailed 317,508 checks (far fewer that the number of notices that will be sent here) to cash payors.  Within 10 days from the December 31, 2010 mailing of those checks, Rust received over 10,000 calls from recipients of those checks.  Class Counsel and the Court received additional calls.  Here, not only will the potential group of callers be larger, but there may be more calls due to the elderly age of the Class.

001534-16 418755 v1

The expense associated with completion of notice to Class 1 in accordance with the Court's January 7, 2011 Order utilizing this call center alternative is set out in Table 1 below. The savings realized by utilizing call center alternatives 2-7 below are expressed in comparison to the expense associated with call center alternative 1.

    **2.**    **Call Center Alternative 2 – No Call Center During Initial Notice Phase Followed by Full Time CSR Support**

This alternative consists of no call support during the initial phase of notice. The initial notice mailed to each of 2.2 million potential class members would not include a phone number. Once class members self identify by returning the initial notice, they would be provided a full notice with a toll-free number. National media notice would be timed to coincide with the mailing of full notices to class members with Class A drug administrations and would utilize the same toll-free number. That number would connect them to a call center with CSRs operating on a full time basis, eight hours per day five days per week. Alternative 2 would save $311,566.00 over the cost of Alternative 1. See Table 1 below.

    **3.**    **Call Center Alternative 3 – No Call Center During Initial Notice Phase Followed by Half-Time CSR Support**

This alternative is identical to Alternative 2 with the exception that the call center used to answer questions from class members receiving the full notice or responding to national media notice would operate half time - four hours per day, five days per week. Alternative 3 would save $377,274.00 over the cost of Alternative 1. See Table 1 below.

  4.  **Call Center Alternative 4 – Enhanced IVR During Initial Notice Followed By Full Time CSR Support After Full Notice Mailing**

This alternative consists of the use of IVR only during the initial phase of notice. The initial notice mailed to each of 2.2 million potential class members would include a phone number answered by an IVR system. Callers would not be provided the option of speaking to a live CSR. Once class members self identify by returning the initial notice card, they would be provided a separate toll-free number connected to a call center with CSRs operating eight hours per day five days per week. National media notice would coincide with the mailing of full notices and would utilize the same toll-free number. Alternative 4 would save $351,286.00 over the cost of Alternative 1. See Table 1 below.

  5.  **Call Center Alternative 5 – Enhanced IVR During Initial Notice Followed By Half-Time CSR Support After Full Notice Mailing**

This alternative is identical to Alternative 4 above with the exception that the call center used to answer questions from class members receiving the full notice or responding to national media notice would operate half time - four hours per day, five days per week. Alternative 5 would save $416,993.00 over the cost of Alternative 1. See Table 1 below.

  6.  **Call Center Alternative 6 – Use of Enhanced IVR Only**

This alternative would utilize IVR only to answer all consumer questions during both the initial and full notice phase of mailed notice as well as to answer questions from those consumers responding to national media notice. IVR options and pre-recorded messages would be changed and tailored to fit the most likely questions of consumers during each separate phase of the notice program. Alternative 6 would save $493,080.00 over the cost of Alternative 1. See Table 1 below.

001534-16 418755 v1

### 7. Call Center Alternative 7 – No CSR or IVR Support

This alternative consists of not providing a call center of any kind to potential Class 1 members. A phone number would not be provided on either of the initial mailed notice or the full notice. Potential class members receiving mailed notice would be required to visit the settlement website to obtain additional information about the settlement. Consumers responding to national media would be provided a toll-free number to be used only to request a copy of the full notice.

Details on this alternative are provided in order to ensure the Court has complete information about all potential options. Given the large number of individuals who would be receiving mailed notice and the national scope of the media campaign to reach class members with Class B drug administrations, Rust and Class Counsel advise against elimination of a call center in its entirety. In the absence of a dedicated call center, it is anticipated that many consumers with questions would call Rust's main number, would contact Class Counsel directly or would call the Court seeking answers to questions about the settlement. Alternative 7 would save $558,420.00 over the cost of Alternative 1. See Table 1 below.

### D. Expenses Associated With Alternative Call Center Proposals

Table 1 below provides the Court with the cost of completing notice to Class 1 utilizing the notice program approved by the Court in its November 7, 2010 Order incorporating each of the alternative call center proposals outlined above.

## **TABLE 1**

Expenses Associated With Alternative Call Center Proposals

|  | **Alt 1:**<br><br>**Full Time CSR Call Center** | **Alt 2:**<br><br>**Full Time CSR Support During Full Notice** | **Alt 3:**<br><br>**Half-Time CSR Support During Full Notice** | **Alt: 4**<br><br>**IVR Followed by Full Time CSR Support** | **Alt: 5**<br><br>**IVR Followed By Half-Time CSR Support** | **Alt:6**<br><br>**IVR Only** | **Alt 7:**<br><br>**No CSR or IVR Support** |
|---|---|---|---|---|---|---|---|
| **Total Cost[5] to Complete Notice to Class 1** | $5.61M | $5.30M | $5.23M | $5.26M | $5.19M | $5.11M | $5.05M |
| **Savings Over Full Time CSR Call Center (Alt. 1)** | N/A | $0.31M | $0.38M | $0.35M | $0.42M | $0.50M | $0.56M |

[5] Total Cost includes all mailed notice to 2.2 million individuals identified by CMS data as having Class A drug administrations, expense associated with a call center (depending on alternative proposal), $3 million for national media notice and all administrative activities through mailing of claim checks.

### E. Class Counsels' Recommendation

Class Counsel recommend call center Alternative 4 above, which provides IVR to answer questions from individuals receiving the initial notice and full CSR support for class members receiving the full notice. Alternative 4 provides savings of $350,000 over Alternative 1 which would use dedicated CSRs full time during the entire notice process.

The Medicare Part B population to which this notice is directed are older and less likely to have or use access to the internet. For this reason Class Counsel believe it is important to provide some form of telephone support during each phase of the notice program. Rust's

001534-16 418755 v1

experience with consumers calling in response to other AWP settlement notices also supports the need to provide answers to consumer's questions during all phases of notice.   Class Counsel believe this alternative will help maximize claims, keep consumer confusion and frustration to a minimum and ensure that Class Counsel and the Court are not inundated with calls from consumers with questions about the settlement.  At the same time this alternative will save the class a significant amount of money.

DATED: January 11, 2011                By      /s/ Steve W. Berman
                                            Thomas M. Sobol (BBO#471770)
                                            Edward Notargiacomo (BBO#567636)
                                        Hagens Berman Sobol Shapiro LLP
                                        55 Cambridge Parkway, Suite 301
                                        Cambridge, MA  02142
                                        Telephone: (617) 482-3700
                                        Facsimile: (617) 482-3003

                                        **LIAISON COUNSEL**

                                        Steve W. Berman
                                        Sean R. Matt
                                        Hagens Berman Sobol Shapiro LLP
                                        1918 Eighth Avenue, Suite 3300
                                        Seattle, WA  98101
                                        Telephone: (206) 623-7292
                                        Facsimile: (206) 623-0594

                                        Jennifer Fountain Connolly
                                        Hagens Berman Sobol Shaprio LLP
                                        1629 K St. NW, Suite 300
                                        Washington, DC  20006
                                        Telephone: (202) 355-6435
                                        Facsimile: (202) 355-6455

001534-16 418755 v1

        Jeffrey Kodroff
        John Macoretta
        Spector, Roseman Kodroff & Willis, P.C.
        1818 Market Street, Suite 2500
        Philadelphia, PA  19103
        Telephone: (215) 496-0300
        Facsimile: (215) 496-6611

        Kenneth A. Wexler
        Wexler Wallace LLP
        55 W. Monroe, Suite 3300
        Chicago, IL  60603
        Telephone: (312) 346-2222
        Facsimile: (312) 346-0022

        Marc H. Edelson
        Hoffman & Edelson LLC
        45 West Court Street
        Doylestown, PA  18901
        Telephone: (215) 230-8043
        Facsimile: (215) 230-8735

        **CLASS COUNSEL**

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **CLASS PLAINTIFF'S RESPONSE TO COURT'S JANUARY 4, 2011 ORDER REQUESTING CALL CENTER OPTIONS FOR THE TRACK TWO SETTLEMENT**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 11, 2011, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                       **/s/ Steve W. Berman**
                                       Steve W. Berman