# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| IN RE PHARMACEUTICAL INDUSTRY | ) |
| AVERAGE WHOLESALE PRICE | ) |
| LITIGATION | ) |
| | ) MDL No. 1456 |
| | ) |
| | ) |
| _____ | ) Civil Action: 01-12257-PBS |
| | ) Subcategory Case No. 03-10643-PBS |
| | ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO | ) |
| THE CONSOLIDATED NEW YORK | ) (Case pending in D. Mass.) |
| COUNTY ACTIONS | ) |
| _____ | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' AND DR. THOMAS FANNING'S UNTIMELY MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENA

Defendants hereby oppose the motion (the "Motion") filed by Plaintiffs and Dr. Thomas Fanning (collectively, "Movants") seeking a protective order and an order quashing Defendants' subpoena to Dr. Fanning.  As explained further below, the Court should deny the Motion because it is moot and/or untimely, and because Movants offer no valid basis for quashing the subpoena or issuing a protective order.

## BACKGROUND

On March 25, 2010, shortly before the April 1, 2010 discovery deadline in this case but long after its production of documents in response to Defendants' document requests dating from 2007 should have been completed, the New York Department of Health ("NY DOH") informed Defendants that it had not collected and reviewed documents from custodians who were in possession of responsive materials.  (See May 2010 Status Report on Behalf of Defendants, May 7, 2010 (Dkt. No. 7101), at 5)  NY DOH subsequently requested that all pending depositions of

former and current NY DOH employees be postponed until NY DOH had completed a supplemental document production, and informed Defendants that it would need to review the electronic and hard copy files of at least 40 NY DOH employees, the vast majority of whom had not previously had their files reviewed.  (Id. at 5-6)  At no point did Defendants agree to forego pursuing any discovery raised by NY DOH's substantial supplemental document production, including deposing individuals whose documents were included in that production.  NY DOH did not finish the process of supplementing its production of documents until October 2010.  (See October 29, 2010 Letter from Jane McCloskey to Raj Gandesha, attached hereto as Exhibit A).   Dr. Fanning's name appears on more than 400 documents, comprising over 4,000 pages, produced by NY DOH after April 1, 2010 as part of its supplemental document production.

Once NY DOH completed its production, Defendants resumed their depositions of NY DOH witnesses.   One such witness, Kathy Kuhmerker, the former Deputy Commissioner and Medicaid Director of New York, testified at her November 18, 2010 deposition that Dr. Fanning, who is no longer employed by NY DOH, was among a very small number of individuals within NY DOH who were the most knowledgeable about Medicaid pharmacy reimbursement, the central focus of this case.  (See November 18, 2010 K. Kuhmerker Dep. Tr. 64:5-21, attached as Exhibit B)  Defendants were aware of Dr. Fanning, among many other NY DOH current and former employees, from NY DOH's earlier document production but had attempted to focus their list of deponents to avoid duplicative testimony.  Based on Defendants' review of NY DOH's late produced supplemental document production and Ms. Kuhmerker's testimony, however, Defendants developed a suspicion that Dr. Fanning was likely to possess non-duplicative knowledge regarding key issues in the case and therefore took steps to locate him.

On January 3, 2011, Defendants issued a subpoena to Dr. Fanning, which called for Dr. Fanning to be deposed on January 11, 2011 in Sarasota, Florida (the "Florida Subpoena").[1]  On January 4, 2011, Defendants voluntarily withdrew the Florida Subpoena to accommodate counsel for Plaintiffs and Dr. Fanning.  (See January 4, 2011 Letter from Raj Gandesha to Joanne Cicala, attached hereto as Exhibit C).  Further to Defendants' January 4, 2011 letter, Defendants issued a new subpoena to Dr. Fanning on January 10, 2011, which calls for Dr. Fanning to be deposed on January 31, 2011 in Albany, New York (the "New York Subpoena," attached hereto as Exhibit D).  Movants filed the Motion on January 25, 2011, four business days before the date of the deposition set forth in the New York Subpoena.

Defendants' suspicion that Dr. Fanning possesses non-duplicative knowledge as to key issues was confirmed by one of NY DOH's Rule 30(b)(6) witnesses, Anthony Merola, who testified that Dr. Fanning was among a few individuals within NY DOH who were "very knowledgeable" with respect to "pharmaceutical pricing," a core issue in the case, and that Dr. Fanning was likely more knowledgeable than he as to one of the topics for which Mr. Merola was designated a 30(b)(6) witness.  (See Rough Copy of January 26, 2011 A. Merola Dep. Tr. at 69:23-74:3; 209:8-21, attached as Exhibit E)

## ARGUMENT

1.    __The Motion Should Be Denied As Moot or, in the Alternative, Untimely__

Movants expressly reference and ask the Court to quash the Florida Subpoena, pursuant to which Dr. Fanning was to be deposed on January 11, 2011 in Sarasota, Florida.  (See Exhibit A of the Motion).  That subpoena, however, was voluntarily withdrawn by Defendants.  The Motion does not in any way reference the New York Subpoena, which calls for Dr. Fanning to

---

[1] While Dr. Fanning resides in New York state, Defendants originally scheduled the deposition in Florida to accommodate Dr. Fanning's vacation schedule.

be deposed on January 31, 2011 in Albany, NY and has not been withdrawn.   The Motion should, therefore, be denied as moot.

Alternatively, to the extent the Motion purports to relate to the New York Subpoena, the Motion should be denied as untimely as it was filed after the deadline set by Case Management Order No. 10, which requires that any motion for a protective order in respect of a deposition be filed at least <u>five</u> business days prior to the deposition.  (<u>See</u> Case Management Order No. 10, March 25, 2004 (Dkt. No. 756), Section II, ¶ 7 ("[a]ny motion for a protective order shall be filed at least five working days before the scheduled deposition"))   The Motion provides no explanation as to why the Motion could not be filed by the deadline.

**2.**     <u>**Movants Provide No Valid Basis for Quashing Defendants' Subpoena or Issuing a Protective Order**</u>

Even if the Motion had been timely filed, moreover, Movants provide no valid basis for quashing Defendants' subpoena or issuing a protective order.

The assertion that Defendants' subpoena is untimely and somehow represents an end run around the April 1, 2010 discovery deadline is without merit.   Defendants' subpoena to Dr. Fanning merely follows up on relevant discovery that Defendants did not obtain, and thus could not follow up on, until well after the April 1, 2010 cut off due to NY DOH's delays complying with its discovery obligations.   Movants note that Dr. Fanning's name appears on some of the more than one hundred exhibits marked at depositions taken earlier in the case.  (<u>See</u> Mot. at 1) This, however, is immaterial.   Countless other names also appear on those exhibits and it is absurd to suggest that this alone is sufficient to determine who is likely to possess non-duplicative knowledge with respect to key issues.   In an effort to lessen the burden on the parties, Defendants attempted to focus the list of deponents to limit duplicative depositions.    Once the former Deputy Commissioner and Medicaid Director of New York identified Dr. Fanning as one

of a small group of the most knowledgeable individuals with respect to central issues in this case, Defendants became aware that Dr. Fanning likely possesses unique knowledge.  Because Ms. Kuhmerker's deposition was delayed by NY DOH's supplemental document production, Defendants did not learn this before April 1, 2010 and thus could not have followed up on this fact by that date.  Movants should not be permitted to rely on NY DOH's delays to prevent Defendants from pursuing this discovery now.

Nor do Movants contend that a deposition would be burdensome on Dr. Fanning.  Indeed, Defendants are willing to hold Dr. Fanning's deposition at a location and time that is convenient to Dr. Fanning and his counsel.  Moreover, in light of the discovery already taken, the deposition would likely be focused and is therefore unlikely to be burdensome on either the witness or any of the parties.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion and allow the deposition of Dr. Fanning to proceed.

/s/  Paul B. Carberry
Paul B. Carberry
Raj Gandesha
Joshua D. Weedman

WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036
212 819 2100
*Attorneys for Defendant Sandoz Inc.*

Dated:  January 27, 2011

## CERTIFICATE OF SERVICE

I, Daniel R. Cohen, certify that a true and correct copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFFS' AND DR. THOMAS FANNING'S UNTIMELY MOTION FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENA was served on all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2 on January 27, 2011.

/s/ Daniel R. Cohen
Daniel R. Cohen

# Exhibit A



34090814

Oct 29 2010
1:31PM



# STATE OF NEW YORK
# DEPARTMENT OF HEALTH

Corning Tower      The Governor Nelson A. Rockefeller Empire State Plaza      Albany, New York  12237

Richard F. Daines, M.D.
*Commissioner*

James W. Clyne, Jr.
*Executive Deputy Commissioner*

**VIA USPS AND LNFS**

October 29, 2010

Raj Gandesha, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Re: *City of New York, et al. v. Abbott Labs., Inc., et al.,* (MDL 1456)

Dear Mr. Gandesha:

Please find enclosed a disk containing a copy of supplemental non-privileged electronic materials (NYCO AWP NYDOH 142800-152212) in response to defendants' subpoenas to NY DOH in the above-captioned matter. These materials are marked "Highly Confidential" pursuant to the operative protective order. To the extent there are gaps in the production, such gaps are purposeful. This production concludes our search and production of responsive non-privileged materials from NY DOH.

This production is not a waiver of any objections to the relevance or admissibility of the material, or of any other objections that may be applicable at a trial or at any other hearing or proceeding in this matter. The production is subject to, and without waiver of the attorney-client privilege, work-product and/or any other applicable privileges. Furthermore, the production is made subject to and without waiver of all prior objections asserted by NY DOH and plaintiffs in the above-captioned matter.

As for depositions, defendants informed us on September 24, 2010, that they wanted to wait to re-commence the depositions of NY DOH witnesses until after the document production was complete. In light of the holidays and what we understand is defendants' expert disclosure deadline, we proposed overlapping dates for NY DOH current and former employees with the understanding that defendants "have the resources …to cover any reasonable schedule" proposed, as written in Mr. Plato's October 14, 2010 correspondence. Now you have informed that defendants do not want "to be in two places at once" and have asked for alternative dates. We will provide you with such early next week.

Yours truly,

Jane E. McCloskey

Enclosure

cc:  Joanne M. Cicala, Esq. via email (w/out encl.)
     All Counsel of Record via LNFS (w/out encl.)

# Exhibit B

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


IN RE:  PHARMACEUTICAL              MDL No. 1456.

INDUSTRY AVERAGE WHOLESALE          Civil Action No:

PRICE LITIGATION                    01-12257 PBS

_____       Judge Patti B. Saris

THIS DOCUMENT RELATES TO

THEIR CONSOLIDATED NEW YORK         Volume I of II

COUNTY ACTIONS,

_____


      The video deposition of KATHRYN KUHMERKER

taken on Thursday, November 18, 2010, commencing at

10:00 a.m., held at the offices of White & Case, LLP,

11th Floor, 701 13th Street, Northwest, Washington,

DC before T. S. Hubbard, Jr., Court Reporter and

Notary Public for the District of Columbia.

983bbef3-3561-4d83-a617-f36644b01326

Kuhmerker, Kathryn - Vol. I                    November 18, 2010

Page 2

1    A P P E A R A N C E S:
2
3    Kirby McInerney LLP
4       By: Joanne M. Cicala, Esquire
5       101 College Street
6       Dripping Springs, TX  78620
7       P: 512.858.1800
8       E: Jcicala@kmllp.com
9          On Behalf of the Plaintiffs
10
11   Weitz & Luxenberg, P.C.
12      By: Jaime M. Farrell, Esquire
13      180 Maiden Lane
14      17th Floor
15      New York, New York 10038
16      P: 212.558.5500
17      E: Jfarrell@weitzlux.com
18         On Behalf of New York counties
19         of Erie, Oswego and Schenectady
20
21
22

Page 4

1    A P P E A R A N C E S (Continued)
2
3    Orrick, Herrington & Sutcliffe, LLP
4       By: Richard Goldstein, Esquire
5       666 5th Avenue
6       New York, New York 10103
7       P: 212.506.5325
8       E: Rgoldstein@orrick.com
9          On Behalf of Defendant Merck, Sharp & Dohme, Corp
10
11   Williams & Connolly LLP
12      By: Kimberly Perrotta Cole, Esquire
13      725 12th Street Northwest
14      Washington, DC 20005
15      P: 202-434-5901
16      E: Kcole@wc.com
17         On Behalf of Defendant PAR Pharmaceuticals
18
19
20
21
22

Page 3

1    A P P E A R A N C E S (Continued)
2
3    White & Case LLP
4       By: Raj Gandesha, Esquire
5       1155 Avenue of the Americas
6       New York, New York 10036
7       P: 212-819-8200
8       E: Rgandesha@whitecase.com
9          On Behalf of Defendant Sandoz
10
11   Hughes Hubbard & Reed, LLP
12      By: Elizabeth Pugh, Esquire
13      1775 I Street, Northwest
14      Washington, DC 20006
15      P: 202-721-4654
16      E: Pugh@hugheshubbard.com
17         On Behalf of Defendant Merck, Sharp & Dohme
18
19
20
21
22

Page 5

1    A P P E A R A N C E S (Continued)
2
3    Kelley Drye & Warren LLP
4       By: Philip D. Robben, Esquire
5       101 Park Avenue
6       New York, NY 10178
7       P: 212.808.7800
8       E: Probben@kelleydrye.com
9          On Behalf of Defendant Mylan Pharmaceuticals
10
11   Crowell Moring, LLP
12      By: Lisa J. Savitt, Esquire
13      1001 Pennsylvania Avenue, Northwest
14      Washington, DC 20004
15      P: 202.624.2761
16      E: lsavitt@crowell.com
17         On Behalf of Defendant PurePac
18
19
20
21
22

2  (Pages 2 to 5)

983bbef3-3561-4d83-a617-f36644b01326

Kuhmerker, Kathryn - Vol. I                    November 18, 2010

---

Page 6

1    A P P E A R A N C E S  (Continued)

2

3    Jones Day, LLP

4        By:  Andrea E. Renaldi, Esquire

5        77 West Wacker

6        Chicago, Illinois  60601-1692

7        P:  312.269.1583

8        E:  Arenaldi@jonesday.com

9            On Behalf of Defendant TAP Pharmaceuticals, Inc.

10

11               * * * *

12

13

14

15

16

17

18

19

20

21

22

---

Page 7

1

2          Table of Contents

3                    Page

4    Volume I of II

5    Witness:  Kathryn Kuhmerker

6    Examination

7    By Mr. Gandesha              11

8

9    INDEX OF KUHMERKER EXHIBITS          Page

10   Exhibit Kuhmerker 001  Org Chart          36

11   Exhibit Kuhmerker 002  NYCO AWP NYDOH 144110      59

12   Exhibit Kuhmerker 003  CFR 447.204          86

13   Exhibit Kuhmerker 004  NYSHD-FOIL 03207      106

14   Exhibit Kuhmerker 005  NYCO AWP NYDOH 05915 - 05926 108

15   Exhibit Kuhmerker 006  NYCO AWP NYDOH 24780 - 24784 113

16   Exhibit Kuhmerker 007  NYCO AWP NYDOH 32500      139

17   Exhibit Kuhmerker 008  NYCO AWP NYDOH 12352      152

18   Exhibit Kuhmerker 009  NYCO AWP NYDOH 23685 - 23689 169

19   Exhibit Kuhmerker 010  Memorandum          170

20   Exhibit Kuhmerker 011  NYCO AWP NYDOH 104384      172

21   Exhibit Kuhmerker 012  NYCO AWP NYDOH 12774 - 12776 176

22   Exhibit Kuhmerker 013  NYCO AWP NYDOH 23690 - 23702 183

---

Page 8

1    INDEX OF KUHMERKER EXHIBITS (continued)      Page

2    Exhibit Kuhmerker 014  NYCO AWP NYDOH 29287 - 29288 188

3    Exhibit Kuhmerker 015  NYCO AWP NYDOH 04861 - 04865 195

4    Exhibit Kuhmerker 015A NYCO AWP NYDOH 04969 - 04974 198

5    Exhibit Kuhmerker 016  NYCO AWP NYDOH 22612 - 22638 199

6    Exhibit Kuhmerker 017  NYCO AWP NYDOH 22000 - 22016 216

7    Exhibit Kuhmerker 018  NYCO AWP NYDOH 09077 - 09079 227

8    Exhibit Kuhmerker 019  Email              234

9    Exhibit Kuhmerker 019A NYSDOB00015090 - 15095      237

10

11               * * * *

12

13

14

15

16

17

18

19

20

21

22

---

Page 9

1          P R O C E E D I N G S

2          THE VIDEOGRAPHER:  Good morning.  Here

3    begins Tape 1, Volume 1, in the videotaped

4    deposition of Kathryn Kuhmerker taken in the

5    matter of In Re:  Pharmaceutical Industry Average

6    Wholesale Price Litigation in the United States

7    District Court for the District of Massachusetts,

8    Civil Action Number 01-12257-PBS.

9          Today's date is November 18, 2010, and

10   the time on the video screen is 10:02:53.

11          This deposition is being held at White &

12   Case at 701, 13th Street Northwest, 11th floor,

13   Washington, DC 20005.

14          The court reporter today is Steve

15   Hubbard.  The video camera operator is Mia Mabry

16   and both are here on behalf of Henderson Legal

17   Services Incorporated.

18          Will counsel and others present please

19   introduce themselves and state whom they represent

20   and we will start with the folks in the room and

21   finish with those on the phone.

22          MS. CICALA:  Joanne Cicala from Kirby

---

Henderson Legal Services, Inc.

202-220-4158                    www.hendersonlegalservices.com

983bbef3-3561-4d83-a617-f36644b01326

Kuhmerker, Kathryn - Vol. I                    November 18, 2010

Page 62

1    Q   Would you say that more than half of
2  your time was spent on pharmacy issues while you
3  were deputy commissioner?
4    A   No.
5    Q   Less than half of your time was spent on
6  pharmacy issues while you were deputy
7  commissioner, correct?
8    A   I think that would be a fair
9  characterization.
10   Q   After you joined the Department of
11 Health in September 1999, did you continue to have
12 involvement in the budget process?
13   A   I had involvement in the budget process
14 from the perspective of the Health Department
15 which is a different perspective than when you are
16 in the division of the budget.
17   Q   Can you describe the nature of your
18 involvement in that process?
19   A   Certainly.  One of the activities that
20 we did -- I will go back and ask you when you say
21 "the budget process," if you could clarify what
22 you specifically mean by the budget process?

Page 63

1    Q   The process of preparing a budget to be
2  presented to the governor's office?
3    A   First, I was not -- I was not
4  responsible for preparing the budget that was
5  submitted to the division of the budget.
6        That was the responsibility of Bob
7  Reed and his office.  Bob Reed and his staff
8  generally put the budget together including the
9  base-level budget.
10       My staff and I would review it to
11 see if we had any major issues or if we think they
12 have forgotten some major issues.  We would also
13 prepare specific recommendations for Bob and his
14 staff to include in the budget.
15       We also worked on preparing cost
16 containment recommendations that would go to Bob
17 Reed and then presumably to the division of
18 budget.
19       Then we would, depending upon what
20 the recommendations were we would probably discuss
21 them with the division of budget and explain to
22 them what the options were, why these were the

Page 64

1  items given, what they had asked us to prepare,
2  why we had made these -- I don't want to always
3  call them recommendation.  While we had laid out
4  these options as opposed to other options.
5    Q   Turning back to Exhibit 2, the org chart
6  for the Office of Medicaid Management.  Are there
7  individuals on this chart that you would consider
8  to be knowledgeable about pharmacy reimbursement
9  issues?
10       MS. CICALA:  Object to form.
11       THE WITNESS:  Yes.
12 BY MR. GANDESHA:
13   Q   Who would those individuals be?
14   A   Pharmacy reimbursement issues.  Let me
15 go back and clarify.  Pharmacy reimbursement
16 issues related to Medicaid?
17   Q   Yes.
18   A   Tom Fanning, Marilyn Desmond, those
19 would be the ones who would have the most
20 knowledge of them.  I think Karen Fuller would
21 have some.  Karen Fuller also.
22   Q   If a question came up for you relating

Page 65

1  to pharmacy reimbursement in Medicaid you would
2  turn to one of those individuals?
3    A   Yes.
4    Q   If you had a question.
5    A   Yes.
6    Q   Was there anyone within the Office of
7  Medicaid Management from the time period when you
8  were deputy commissioner who is not on this chart
9  who you would also consider to be knowledgeable
10 about pharmacy reimbursement issues and Medicaid?
11   A   Yes.
12   Q   Who would that be?
13   A   There are individuals who are in the
14 policy and program guidance unit and the one who
15 most comes to mind is Mark Butt.
16   Q   Are there other individuals?
17   A   There are.  I'm not sure I remember all
18 of their names.  There was a gentleman named Carl
19 Chappa, I believe, Anita Murray, but I would --
20 But most likely I would go to Mark or Marilyn.
21   Q   Marilyn Desmond?
22   A   Marilyn Desmond.  Sorry.

17 (Pages 62 to 65)

983bbef3-3561-4d83-a617-f36644b01326

# Exhibit C

35186582

Jan 4 2011
6:25PM

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax  + 1 212 354 8113
www.whitecase.com

Direct Dial + 212 819 8975     rgandesha@whitecase.com

January 4, 2011

VIA E-MAIL

Joanne M. Cicala, Esq.
Kirby McInerney LLP
101 College Street
Dripping Springs, Texas  78620

Re:     *City of New York, et al. v. Abbott Labs., Inc., et al.*, MDL No. 1456

Dear Joanne:

This is in response to your January 3, 2011 email to Kimberly Cole regarding Defendants'
subpoena to Dr. Fanning.

As a threshold matter, we were surprised to learn that Plaintiffs' counsel now represents Dr.
Fanning given (1) your silence in response to my express request on December 8, 2010 (when I
notified you of Defendants' intent to take Dr. Fanning's deposition) that you inform Defendants
if your firm represents Dr. Fanning; and (2) Dr. Fanning's statement to Defendants that he is not
represented by counsel in connection with this litigation.  We were also surprised to learn that
Plaintiffs' counsel now will seek to prevent Dr. Fanning's deposition from going forward on
January 11 even though that date was specifically selected to accommodate Dr. Fanning's
vacation schedule and agreed to by him.  Plaintiffs have provided no justification for their refusal
to make Dr. Fanning available on January 11.

Plaintiffs' contention that Defendants' subpoena to Dr. Fanning is untimely because it was not
served before April 1, 2010 is without merit.  The Department of Health's ("DOH") history of
failure in discovery precludes any reliance by Plaintiffs on the April 1 date to avoid Dr.
Fanning's deposition.  Indeed, as you know, in March 2010 DOH informed Defendants that it
had not collected and reviewed documents from as many as 40 DOH employees.  DOH made
this revelation months after its production should have been complete.  As a direct result of its
failure to comply with its discovery obligations, and to permit it time to redo its production,
DOH requested that all depositions of current and former DOH witnesses be suspended.  It was
not until October 2010 that DOH completed this process and finished making its supplemental
production of documents.

ABU DHABI  ALMATY  ANKARA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUCHAREST  BUDAPEST  DOHA  DÜSSELDORF  FRANKFURT
GENEVA  HAMBURG  HELSINKI  HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MEXICO CITY  MIAMI  MOSCOW  MUNICH
NEW YORK  PALO ALTO  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SINGAPORE  STOCKHOLM  TOKYO  WARSAW  WASHINGTON, DC

Many of the documents produced by DOH after April 1, 2010 list Dr. Fanning as an author or recipient. Moreover, it was not until the deposition of former Deputy Commissioner and Medicaid Director Kathy Kuhmerker, which did not take place until November 2010, that Dr. Fanning was identified as among a very small number of individuals within DOH who were the most knowledgeable about Medicaid pharmacy reimbursement, the central issue in this case, during the relevant time period. Defendants are attempting to follow up on this discovery before the January 31, 2011 cut off and should not be prejudiced in this regard due to DOH's failure timely to comply with its discovery obligations.

Nonetheless, if January 11 is not a workable date for Plaintiffs, Defendants are willing to accommodate Plaintiffs' schedule. Accordingly, Defendants agree to withdraw the subpoena served on Dr. Fanning and reserve the right to serve a new subpoena that calls for a deposition on a date and at a location convenient for Plaintiffs and the witness. Please advise me as to such a date and location by the close of business on January 6, at which time a new subpoena will be issued.

Sincerely,

Raj Gandesha

cc:     All counsel of record (via LNFS)

# Exhibit D



35296009

Jan 10 2011
6:50PM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>) |
|  | ) MDL No. 1456 |
|  | )<br>) |
|  | ) Civil Action: 01-12257-PBS |
|  | ) Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO THE CONSOLIDATED NEW YORK COUNTY ACTIONS | )<br>) (Case pending in D. Mass.)<br>)<br>) |

## NOTICE OF DEPOSITION OF DR. THOMAS FANNING

PLEASE TAKE NOTICE THAT pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Defendant Sandoz Inc., by its attorneys White & Case LLP, and on behalf of all Defendants in the above-captioned actions, will take the deposition of Dr. Thomas Fanning on January 31, 2011, beginning at 10 a.m., at the offices of Bond, Schoeneck & King LLP, 111 Washington Avenue, Albany, NY. This deposition will be recorded by stenographic means and videotape and will continue until completed. Defendants reserve the right to take subsequent depositions on all material issues. The Subpoena to testify at a deposition, served on January 10, 2011, is attached as Exhibit 1.

/s/ Joshua D. Weedman
Paul B. Carberry
Raj Gandesha
Joshua D. Weedman

WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
212 819 2100
*Attorneys for Defendant Sandoz Inc.*

Dated: January 10, 2011

## <u>CERTIFICATE OF SERVICE</u>

      I, Daniel R. Cohen, certify that a true and correct copy of the foregoing Notice of Deposition of Dr. Thomas Fanning was served on all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2 on January 10, 2011.

<u>/s/ Daniel R. Cohen</u>
Daniel R. Cohen

# EXHIBIT 1

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Southern District of New York

| | | |
|---|---|---|
| City of New York, et al., | ) | |
| *Plaintiff* | ) | Civil Action No. MDL 1456; 03-10643 |
| v. | ) | |
| | ) | |
| Abbott Laboratories, et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | District of Massachusetts) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
    Dr. Thomas Fanning, c/o Joanne Cicala, Kirby McInerny LLP, 825 Third Avenue, New York, NY  10022

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:  Your knowledge and experience regarding New York Medicaid, EPIC, and your employment with the New York Department of Health

| Place: The Offices of Bond, Schoeneck & King LLP, 111 Washington Avenue, Albany, NY | Date and Time: January 31, 2011 at 10 a.m. |
|---|---|

    The deposition will be recorded by this method:  videography and stenography

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  January 10, 2011

                *CLERK OF COURT*

                                             OR

       *Signature of Clerk or Deputy Clerk*                       *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Defendant Sandoz Inc.
, who issues or requests this subpoena, are:
Raj Gandesha, White & Case LLP, 1155 Avenue of the Americas, New York, NY  10036.
(212) 819-8200
rgandesha@whitecase.com

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. MDL 1456; 03-10643

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*  Dr. Thomas Fanning

was received by me on *(date)*  January 10, 2011

☒ I served the subpoena by delivering a copy to the named individual as follows:  Emailing a copy of the

subpoena to Dr. Fanning's counsel and authorized representative for purposes of service, Joanne Cicala, at

jcicala@kmllp.com per agreement.                               on *(date)*  January 10, 2011             ; or

☐ I returned the subpoena unexecuted because

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ 51.00

My fees are $  N/A                for travel and $  N/A                 for services, for a total of $   N/A

I declare under penalty of perjury that this information is true.

Date: January 10, 2011

_____
*Signature*

Raj Gandesha, Esq.
_____
*Printed name and title*

White & Case LLP
1155 Avenue of the Americas
New York, NY  10036
_____
*Aaddress*

Additional information regarding attempted service, etc:
N/A

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



# Exhibit E

O12611AM ROUGH DRAFT.txt

```
 8      -----------------------------X
 9
10      IN THE FOURTH JUDICIAL DISTRICT OF THE STATE OF
11      IDAHO, IN AND FOR THE COUNTY OF ADA
12      -----------------------------X
13      STATE OF IDAHO,
14                  Plaintiff,
15        vs.                    Case No.
16      ALPHARMA USPD, INC., et al., CV OC O701847
17                  Defendant.
18      -----------------------------X
19
20      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
21      COUNTY DEPARTMENT, CHANCERY DIVISION
22      -----------------------------X
23      THE PEOPLE OF THE STATE OF
24      ILLINOIS,
25                  Plaintiff,
```

                                              4

```
 1        vs.                    Case No. O5 CH O2474
 2      ABBOTT LABORATORIES, et al.,
 3                  Defendants.
 4      -----------------------------X
 5
 6      COMMONWEALTH OF KENTUCKY
 7      FRANKLIN CIRCUIT COURT – DIVISION I
 8      -----------------------------X
 9      COMMONWEALTH OF KENTUCKY,
10      ex rel, GREGORY D. STUMBO,
11      ATTORNEY GENERAL,
```

                        Page 3

O12611AM ROUGH DRAFT.txt

12          Plaintiff,       Civil Action

13     vs.                        No. O4-CI-1487

14     ALPHARMA USPD, INC., et al.,

15     ---------------------------X

16

17     COMMONWEALTH OF KENTUCKY

18     FRANKLIN CIRCUIT COURT - DIVISION II

19     ---------------------------X

20     COMMONWEALTH OF KENTUCKY,

21          Plaintiff,       Civil Action

22     vs.                        No. O3-CI-1134

23     ABBOT LABORATORIES, INC.,

24          Defendant.

25     ---------------------------X

⚥

                                              5

1     COMMONWEALTH OF KENTUCKY

2     FRANKLIN COURT - DIVISION II

3     ---------------------------X

4     COMMONWEALTH OF KENTUCKY, ex rel.

5     GREGORY D. STUMBO,

6     ATTORNEY GENERAL,

7          Plaintiff,       Civil Acion

8     vs.                        No. O3-CI-1135

9     WARRICK PHARMACEUTICALS CORP.,

10    et al.,

11         Defendants.

12    ---------------------------X

13

14    STATE OF NEW YORK

15    SUPREME COURT: COUNTY OF ERIE

16    ---------------------------X

                        Page 4

O12611AM ROUGH DRAFT.txt

17    COUNTY OF ERIE,

18                   Plaintiff,

19       vs.                      Index No. 05-2439

20    ABBOT LABORATORIES, INC.,

21    et al.,

22                   Defendants.

23    ---------------------------X

24

25

♀

                                                         6

1    STATE OF WISCONSIN CIRCUIT COURT

2    DANE COUNTY Branch 9

3    ---------------------------X

4    STATE OF WISCONSIN,

5                   Plaintiff,

6       vs.                      Case No. 04-CV-1709

7    AMGEN INC., et al.,

8                   Defendants.

9    ---------------------------X

10

11    UNITED STATES DISTRICT COURT

12    FOR THE DISTRICT OF MASSACHUSETTS

13    ---------------------------X

14    IN RE: PHARMACEUTICAL       MDL NO. 1456

15    INDUSTRY AVERAGE WHOLESALE  CIVIL ACTION

16    PRICE LITIGATION            01-CV-12257-PBS

17    THIS DOCUMENT RELATES TO

18    U.S. ex rel. Ven-a-Care of  Judge Patti B. Saris

19    the Florida Keys, Inc., et al.

20       V.                       Chief Magistrate

                    Page 5

012611AM ROUGH DRAFT.txt

21      Q.    And you attend them regularly?

22      A.    Yes.

23      Q.    Do you know if the preferred drug program

24  has actually saved New York any money?

25                  MS. ALLEN:  Object to form.

                                                            70

1        A.    I believe that information is available

2   on our website as a report to the legislature.

3        Q.    Would there be someone more knowledgeable

4   than you about the fiscal impact of the PDP as

5   implemented?

6        A.    Yes.

7        Q.    And who would that be?

8        A.    What time frame are we talking about?

9        Q.    Let's start with 2001, when they first

10  proposed the PDP?

11                  MS. ELLIS:  My objection as to

12  form then.

13      A.    To the best of my knowledge it wouldn't

14  have been a fiscal impact because we didn't have a

15  preferred drug list at that time.

16      Q.    What about prospective analyses of the

17  fiscal impact?

18                  MS. ALLEN:  Object to form, lack

19  of foundation.

20      A.    Okay.  Could you just rephrase the

21  question so I have all of the pieces.

22      Q.    Sure.  Were you involved with fiscal

23  analyses about the projected impact of the PDP when

24  you were considering whether or not to propose it

25  in 2001?

O12611AM ROUGH DRAFT.txt

♀

71

1                      MS. ALLEN:   Object to form.

2          A.    I may have been.

3          Q.    At any other time do you recall preparing

4      fiscal analyses relating to the PDP?

5          A.    Why he.

6          Q.    Okay.   And when?

7          A.    Upon implementation.

8          Q.    And that was, you said, before

9      sometime --

10         A.    2006.

11         Q.    Oh, it was implemented in 2006?

12         A.    Correct.

13         Q.    Do you recall how many times a PDP

14     proposal was submitted to the legislature?

15         A.    I don't recall.

16         Q.    Do you recall how many times one was

17     rejected by the legislature?

18                     MS. ALLEN:   Object to form, lack

19     of foundation.

20         A.    I don't recall.

21         Q.    And did the PDP have to be approved by

22     the legislature in order to be implemented?

23         A.    Can you rephrase, rephrase that question.

24         Q.    Sure.   Why don't you describe for me the

25     process in getting the PDP passed?

♀

72

1          A.    I wasn't involved in the actual

2      legislation itself.

012611AM ROUGH DRAFT.txt

3       Q.    Okay.  Did you attend any legislative

4   sessions or meetings about the PDP?

5       A.    No.

6       Q.    Did you speak to any legislators about

7   the PDP?

8       A.    No, not at my level.

9       Q.    Do you recall anyone discussing whether

10   it was difficult to get the PDP passed?

11               MS. ALLEN:  Object to form.

12       A.    Could you be more specific?

13       Q.    Sure.  I can actually show you a

14   document.

15               MS. COLE:  Handing to the court

16   reporter a document bears Bates NYCO AWP NYDOH one

17   one two one one three to please be marked next in

18   series as Exhibit 007.

19               (Exhibit Merola 007 marked.)

20   BY MS. COLE:

21       Q.    Have you had a chance to read the

22   document?

23       A.    Yes, ma'am.

24       Q.    Okay.  And this is an e-mail that is

25   dated September 22nd of 2005, correct?

                                                        73

1       A.    Correct.

2       Q.    And it's from Janice Rayball.  Who is

3   she?

4       A.    At that time I believe Ms. Rayball was

5   Ms. Desmond's administrative assistant.

6       Q.    And you're actually copied on this

7   e-mail, is that correct?

O12611AM ROUGH DRAFT.txt

8          A.    Yes.

9          Q.    The title of the e-mail is PDP -

10    congratulations, is that right?

11         A.    Yes.

12         Q.    And it reads way to go staff - finally

13    with two exclamation points and all in capital

14    letters, correct?

15         A.    Yes.

16         Q.    Why the excitement?

17               MS. ALLEN:   Object to form.   Lack

18    of foundation.

19         A.    I'm not exactly sure.

20         Q.    Are there others that would be better

21    able to testify about why it was so exciting to

22    finally have the PDP passed?

23               MS. ALLEN:   Object to form.   Lack

24    of foundation.

25         A.    Yes.

                                                    74

1          Q.    Can you name those people for me, please?

2          A.    Marilyn Desmond and Tom Fanning come to

3    mind.

4          Q.    Do you recall ever hearing about any

5    legislative opposition to the PDP initiative?

6          A.    I don't recall.

7          Q.    So you would then not recall if the

8    Hispanic coalition within the assembly opposed the

9    legislation?

10         A.    I don't recall.   I don't remember.

11         Q.    Okay.   Do you know what the difference is

                        Page 63

012611AM ROUGH DRAFT.txt

17          you had a question on those issues?

18               A.   I may.

19               Q.   What about Ms. Desmond, would you

20          consider her an expert in any of these areas?

21                    MS. ALLEN:  Object to form.

22          BY MS. COLE:

23               Q.   Or very knowledgeable.  I'm sorry, you

24          said expert is not your term.

25               A.   Knowledgeable in the area, yes.  I would

                                                                   209

1           say yes.

2                Q.   And is she someone I'm sorry, you weren't

3           done.  Is she someone you would think to ask a

4           question of for these areas if you had a question?

5                A.   Sure.

6                     MS. ALLEN:  Object to form.

7           BY MS. COLE:

8                Q.   What about Thomas Fanning, is he also

9           someone who is very knowledgeable with respect to

10          pharmaceutical pricing?

11                    MS. ALLEN:  Object to form.

12               A.   A very bright individual, yes.

13               Q.   And is he someone who you would contact

14          if you had a question about these issues?

15               A.   I would feel comfortable going to

16          Mr. Fanning, yes.

17               Q.   Do you think Mr. Fanning has a wide

18          knowledge base with respect to these issues?

19                    MS. ALLEN:  Object to form.

20               A.   Going back to his time with the Medicaid

                                Page 179

012611AM ROUGH DRAFT.txt
21    Program, I would answer yes to that question.

22        Q.    Is there any one individual that you

23    could point to who you think is the most

24    knowledgeable of pharmacy pricing with respect to

25    the Medicaid Program?

210

1                MS. ALLEN:   Object to form.

2        A.    I think it's hard to target one person

3    giving the names you had mentioned including

4    myself.  Our responsibilities change over time, so

5    it's difficult to actually identify one person

6    given changes in responsibilities, even mine have

7    changed over time or evolved over time as we

8    discussed today.

9        Q.    What if I make it a more general question

10    and ask who you would consider most knowledgeable

11    about New York Medicaid?

12                MS. ALLEN:   Object to form.

13    BY MS. COLE:

14        Q.    A current or former DOH employee.

15                MS. ALLEN:   Same objection.

16        A.    You're questioning New York Medicaid the

17    pharmacy area or Medicaid in general?

18        Q.    The pharmacy area.

19        A.    That's very hard to say given my short,

20    I'll call it short tenure in state service given

21    the extensive tenures that people have in state

22    service, so it's difficult to say who would have

23    the vast majority of the knowledge.

24        Q.    Would it be anyone other than

25    Mr. Fanning, Ms. Desmond or Ms. Jones?

Page 180