UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | Master Civil No. 01-cv-12257<br><br>MDL NO. 1456<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br><br>ASTRAZENECA CLASS 1 | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS COUNSEL'S MOTION TO PARTIALLY DISTRIBUTE ASTRAZENECA CLASS 1 SETTLEMENT FUNDS TO *CY PRES* RECIPIENTS**

Class Counsel respectfully moves this Court for an order partially distributing the remaining funds from the AstraZeneca Class 1 settlement to *cy pres* recipients. As set forth more fully below, Class Counsel propose to distribute a total of $2.8 million to ZERO – The Project to End Prostate Cancer to provide mobile prostate cancer testing and to Cancer*Care* to fund its Transportation Assistance Program for People With Cancer. After Class Counsel have further exhausted their efforts to locate additional relatives and next-of-kin for Class members with uncashed checks, but in any event no later than April 29, 2011, Class Counsel will then move the Court for a final distribution of the remaining settlement amount.

## I. THE CLASS 1 ASTRAZENECA SETTLEMENT

On December 19, 2008, this Court granted final approval of Class 1 Plaintiffs' settlement with Defendant AstraZeneca Pharmaceuticals, L.P. ("AstraZeneca"). Dkt. No. 5802. The Settlement provides that AstraZeneca pay authorized claims up to $24 million to Class members who took Zoladex®, a drug used primarily in the treatment of prostate cancer. Under the terms of the Settlement, all Class members who made valid claims received *triple* their damages.

- 1 -

The Settlement also contains a provision that provides that if $10 million or less of the Settlement Amount remains after all authorized claims of Class Members are paid, AstraZeneca will pay the remaining amount to "mutually acceptable charitable organizations funding cancer research or patient care." *See* Settlement Agreement and Release of AstraZeneca, Dkt No. 4227 ¶ 5. After the Court ordered the Parties to amend the Agreement to pay Class Members treble their damages, the Settlement Agreement was amended to require AstraZeneca to pay to *cy pres* the difference between the amount of the Original Charitable Payment and the aggregate value of all (trebled) Heartland and Non-Heartland allocations to Class Members. Second Amendment to Settlement Agreement and Release of AstraZeneca, Dkt No. 5774 ¶ 4(c).

On November 19, 2009, the First Circuit Court of Appeals affirmed this Court's final approval of the Settlement in all respects. *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009). Specifically, even when, at the time, Class Counsel had estimated that $6.8 million might be paid to *cy pres*, the First Circuit held this Court had not abused its discretion in approving such an award, because the Settlement had paid Class members triple their damages first. The First Circuit also found no abuse of discretion in approving a settlement that provided that the claims of all Class members be paid prior to distributing the *cy pres* funds. Specifically, the First Circuit found that:

> Although unusually timed, the *cy pres* fund in this case, contrary to Howe's argument, is not taking damages away from the class members. The settlement permits all plaintiffs to claim and be paid their damages – indeed *treble* their damages – before any money is paid to charity through *cy pres*. This process is like other, routinely approved *cy pres* distributions. *See, e.g., Powell*, 119 F.3d at 705-06 (refusing, after money in a settlement fund remained, to distribute the rest to class members because "neither party ha[d] a legal right" to the unclaimed funds); *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1253-54 (7th Cir. 1984) (holding a *cy pres* distribution was appropriate when $6 million remained in a fund created to pay costs and extra claims in a settlement because "neither the plaintiff class nor the settling defendants ha[d] any right" to

the money). It would elevate form over substance to require the parties to wait until after all claims are paid before reaching an agreement as to how to distribute any remaining money to charity. *Id.* at 34-5.

## II.   CLASS COUNSEL'S EFFORTS IN DISTRIBUTING SETTLEMENT FUNDS TO CLASS MEMBERS

Since the First Circuit affirmed final approval of the Settlement, the Court-appointed Claims Administrator has disbursed a total of $19,409,682.94; $18,211,357.85 to Class Members and an additional $1,198,325.09 to the Internal Revenue Service for the payment of taxes due from Class Members who did not provide a social security or tax identification numbers. Declaration of Ryan Walter Regarding Distribution of Class 1 AstraZeneca Settlement Fund ("Walter Decl.") ¶ 4, Ex. C.

Four months after that initial distribution, the Claims Administrator reissued any checks that had not been cashed. *Id.* ¶ 5. Moreover, even though the claims deadline was March 14, 2008, and even though the Claims Administrator made its initial distribution of checks on June 11, 2010, the Claims Administrator has continued to accept late claims and, if this Court authorizes it to do so, will pay them. Walter Decl. ¶ 9.

In addition, the Claims Administrator provided to Class Counsel a list of Class members with uncashed checks. Walter Decl. ¶ 7. Class Counsel used an in-house investigator to locate relatives and next-of-kin for Class members with uncashed checks over $4,000.00. *Id.* The Claims Administrator used that information to encourage additional Class members to cash their checks. *Id.* Class Counsel intend to have their investigator locate relatives and next-of-kin for Class members with uncashed checks over $1,500 in order to further increase participation in the Settlement.

Without attempting to estimate the effects of Class Counsel's supplemental effort to locate relatives and next-of-kin for Class members with uncashed checks over $1,500, the

Claims Administrator currently estimates that there will be $4,131,124.12 available to be distributed *cy pres*. Walter Decl. ¶ 10. Even if Class Counsel locate next-of-kin for every one of those Class members and convince them to cash the Settlement checks – an extremely unlikely proposition – there will still be $3,448,121 available for *cy pres* distribution. *Id.*

### III.     PROPOSAL TO DISTRIBUTE $2.8 MILLION TO *CY PRES*

Class Counsel therefore propose that this Court enter an order allowing them to distribute a total of $2.8 million at this time. $1,000,000 of that amount will be distributed to ZERO – The Project to End Prostate Cancer to provide mobile prostate cancer testing and $1,800,000 of that amount will be distributed to Cancer*Care* to fund its Transportation Assistance Program for People With Cancer. Providing funding to these organizations, both of which, pursuant to the terms of the Settlement Agreement, are "charitable organizations funding cancer research or patient care" agreed to by the Parties, will provide substantial benefits to members of the Class who suffer from prostate cancer.

### A.     ZERO

Class Counsel propose to give $1,000,000 to ZERO to fund its Transportation Assistance Program for People with Cancer. ZERO – The Project to End Prostate Cancer, a 501(c)(3) not-for-profit based in Washington, D.C., is the leader in providing mobile prostate cancer testing in America. Since 2002, ZERO's Drive Against Prostate Cancer program ("the Drive") has provided more than 110,000 free prostate cancer tests to men across United States. *See* ZERO Proposal, Ex. A, at 1.

The Drive features two 39-foot RVs designed specifically for men that tour the country from coast-to-coast offering free prostate cancer testing and an experience that provides a comfort factor often lacking in a traditional doctor's office. The Drive is a turnkey operation:

each vehicle is fitted with two phlebotomy stations (for blood draws) and two examination rooms where doctors conduct physical exams with patients.  ZERO Proposal at 2.

At each event, ZERO and its local medical partners (hospitals and urology practices) test men for free on a first-come, first-serve basis without appointments.  Patients do not need insurance to participate and ZERO works with each one to find the follow-up care they need.  ZERO's lab partner, the University of Michigan, processes each test and notifies each patient of his result within three weeks from the time of the test.  ZERO Proposal at 2.

ZERO's Drive Against Prostate Cancer program is comprised of two custom-built Class A mobile medical units, one built in 2001 (Vehicle 1) and the other in 2005 (Vehicle 2).  With more than 300,000 miles on it and more than 60,000 men making use of the on-board phlebotomy stations and exam rooms, Vehicle 1 is in dire need of replacement.  Thus, the first $500,000 given to ZERO would enable the organization to replace Vehicle 1 and conduct 50 event days, enabling it to test a minimum of 10,000 men for prostate cancer for free in 2011.  The second $500,000 in funding would allow ZERO to test up to 28,000 men by the end of 2012.  ZERO Proposal at 1.

ZERO's Proposal sets out a more specific timeline for how and when the *cy pres* funds will be spent and lists the specific cities nationwide in which ZERO proposes to conduct testing.  *See* ZERO Proposal at 3-7.

**B.     Cancer*Care***

Class Counsel further propose to give $1,800,000 to Cancer*Care* to enable it to give financial grants to cancer patients nationwide to pay their transportation costs associated with their treatments.  Such charges are often a hardship for cancer patients and are not covered by many private healthcare and public assistance plans.  Cancer*Care* is a 66-year old organization that has dedicated itself to providing financial assistance and a wide range of free psychosocial

- 5 -

support services (counseling, education, practical help) to underserved cancer patients and their loved ones throughout the country. Cancer*Care* Proposal, Ex. B, at 1.

With a one-time grant of $1,800,000, Cancer*Care*, through the Transportation Assistance Program for People with Cancer, will be able to significantly improve its capacity to address the financial needs of cancer patients, with a focus on prostate cancer patients. Specifically, Cancer*Care* will be able to provide approximately 5,100 cancer patients with an average grant of $300 to cover transportation costs related to receiving cancer treatments. Cancer*Care* will target cancer patients who may be under- or uninsured, living far from their treatment centers, or may have considerable challenges such as being elderly or homebound, and therefore unable to drive. All recipients of transportation grants will likewise be eligible to receive numerous complementary Cancer*Care* services. Cancer*Care* Proposal at 2.

The proposed $1,800,000 will not only fund the financial grants, but will also pay for personnel necessary to implement the program. The program will be overseen by Cancer*Care*'s Director of Patient Assistance, and implemented by financial assistance specialists (who will assess each patient for financial and psychosocial needs and process and evaluate all applications); as well as professional oncology social workers (who will provide free support services, such as counseling and practical help). Cancer*Care* Proposal at 2.

The Cancer*Care* proposal sets forth in detail how the funds will be used and the timeline in which they will be used. *See* Cancer*Care* Proposal at 3-5.

### IV.     CURRENT STATUS OF THE SETTLEMENT FUND

The Claims Administrator currently estimates the Settlement payout as follows:

| | |
|---|---:|
| Total Recognized Claims ($6,428,902.41 x 2) | $12,857,804.42 |
| Charitable Payment Required Under Settlement Agreement | +$10,000,000.00 |
| Total Settlement Fund | <u>$22,857,804.82</u> |
| | |
| Estimated Class Member Payout ($6,428,902.41 x 3) | - 19,409,682.94 |
| Remaining Charitable Payment | $3,448,121.88 |
| Funds remaining in Distribution Account (uncashed checks) | <u>$736,996.42</u> |
| Estimated Total to *Cy Pres* | $ 4,131,124.12 |

Walter Decl. ¶ 10.

The $4,131,124.12 distribution available for *cy pres* does not take into account Class Counsel's ongoing supplemental efforts to locate relatives and next-of-kin with outstanding Settlement checks. However, even if Class Counsel are able to locate next-of-kin for every Class member with outstanding checks, there will still be $3,448,121.88 for distribution. Therefore, there is no chance that making a partial distribution to *cy pres* at this time will decrease the amount of Settlement funds available for Class members. On the other hand, partially distributing the Settlement funds now will allow Class members to more quickly begin to benefit from the work of ZERO and Cancer*Care*.

Accordingly, Class Counsel recommend that the Court authorize the $2,800,000 distribution now and then, after Class Counsel have completed their supplemental efforts to locate Class members to increase participation in the Settlement, but no later than April 29, 2011, Class Counsel will move the Court for an order for final distribution of the remaining funds. At that time, Class Counsel will provide the Court with a full report regarding the results of their efforts to locate Class members' next-of-kin. Class Counsel respectfully submit that this

staggered *cy pres* distribution is fully consistent with the First Circuit's affirmance of this Court's order granting final approval, because it ensures that all Class members are paid before the remaining Settlement funds are distributed *cy pres*.

WHEREFORE Class Counsel respectfully request that the Court enter an order authorizing the distribution of $1,000,000 of the AstraZeneca Class 1 Settlement Funds to ZERO and $1,800,000 to Cancer*Care*. Class Counsel have submitted a proposed order with this Motion.

DATED:  February 28, 2011

Respectfully submitted,

By:     /s/ Steve W. Berman
        Thomas M. Sobol (BBO#471770)
        Edward Notargiacomo (BBO#567636)
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:   (617) 482-3003

*Liaison Counsel*

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594

Jennifer Fountain Connolly
HAGENS BERMAN SOBOL SHAPIRO LLP
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:   (202) 355-6455

Kenneth A. Wexler
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone:  (312) 346-2222
Facsimile:   (312) 346-0022

Jeffrey L. Kodroff
John A. Macoretta
SPECTOR, ROSEMAN, KODROFF & WILLIS P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:   (215) 496-6611

Marc H. Edelson
EDELSON & ASSOCIATES, LLC
45 West Court Street
Doylestown, PA  18901
Telephone:  (215) 230-8043
Facsimile:   (215) 230-8735

*Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

    I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **CLASS COUNSEL'S MOTION TO PARTIALLY DISTRIBUTE ASTRAZENECA CLASS 1 SETTLEMENT FUNDS TO *CY PRES* RECIPIENTS** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 28, 2011, a copy to LexisNexis File & Serve for posting and notification to all parties.

                                                /s/ Steve W. Berman
                                                Steve W. Berman