AO 88B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | | |
|---|---|---|
| In Re: Pharmaceutical Industry AWP Litigation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  01-12257 MDL No. 1456 |
| | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES

To:  Prescription Access Litigation
     30 Winter Street, 10th Floor, Boston, MA 02108

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attached Schedule "A".

| Place: 222 Rosewood Drive, 8th Floor<br>Danvers, MA 01923 | Date and Time:<br>03/27/2009 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 3/9/09

                CLERK OF COURT                                    OR      [signature]

        _____                               _____
        *Signature of Clerk or Deputy Clerk*                                  *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Rev. David Aaronson, et al.
_____, who issues or requests this subpoena, are:
Donald E. Haviland, Jr., Esquire, The Haviland Law Firm LLC, 111 S. Independence Mall East, Suite 1000, Philadelphia, PA 19106, 215-609-4661

AO 88B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises (Page 2)

Civil Action No.

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

This subpoena for *(name of individual and title, if any)* _____ was received by me on *(date)* _____.

☐ I personally served the subpoena on the individual at *(place)* _____
_____ on *(date)* _____; or

☐ I left the subpoena at the individual's residence or usual place of abode with *(name)* _____
_____, a person of suitable age and discretion who resides there,
on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the subpoena to *(name of individual)* _____, who is designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because _____; or

☐ other *(specify)*:


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of
$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

### Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 (2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
   (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 (3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
   (i) fails to allow a reasonable time to comply;
   (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
   (i) disclosing a trade secret or other confidential research, development, or commercial information;
   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
   (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   (ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 (1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 (2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   (i) expressly make the claim; and
   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

SUBPOENA SCHEDULE "A"

DEFINITIONS, INSTRUCTIONS & REQUESTS

I. **DEFINITIONS**

As used herein, the following terms and acronyms include the meanings set forth below:

1. The acronym "PAL" refers to the organization known as Prescription Access Litigation (hereinafter "PAL") and any of its predecessors, successors, subsidiaries, offices (including, but not limited to local, regional, national, executive, affiliate and/or any home office of its employees), affiliates, projects, partnerships, associations, divisions, units, branches, agents, and any present or former officers, directors, employees or agents, including PAL's former status as a project of Community Catalyst. The acronym "PAL" also includes all attorneys, accountants, advisors and all other persons or entities acting or purporting to act on PAL's behalf.

2. The term "you" or "your" means you personally or any employee, agent, attorney or other person or entity acting on your behalf or at your request.

3. The term "entity" means an individual, corporation, partnership, proprietorship, professional corporation, association, group, agency or agent, or any other legal entity of any kind, whether for profit or not-for-profit.

4. The term "document" includes, without limitation, the originals of all writings of every kind, including, but not limited to, letters, e-mails, telegrams, memoranda, reports, studies, legal pleadings, speeches, calendars, diary entries, travel records and vouchers, promotional materials, pamphlets, handwritten notes, drafts, lists, directives, reports, tabulations, minutes and records of meetings, and telephone records, which are or formerly were in the actual or constructive possession and control of you, your officers, directors, employees, attorneys or other agents. The term "document" further includes data processing and computer printout, tapes, disks, and data stored in computers or data processing equipment, together with programs and program documentation necessary to retrieve, read and utilize such data, and all other mechanical or electronic means of storing or recording data, as well as tape, film, or cassette sound and/or visual recordings and reproductions or film impressions of any of the aforementioned items. The term "document" also includes altered documents, copies of all documents which are not identical duplicates of the originals and copies of documents if the originals of documents are not in your possession, custody or control. Altered documents include, without limitation, any modifications, censorship, redaction, addition to, or change which obscures, removes, amends, changes or obliterates any part of the original language, information or meaning.

5. The term "communication" means any act, action, oral speech, written correspondence, contact, expression of words, thoughts or ideas, or transmission or exchange of data or other information to another person or entity, whether orally, person to person, in a group, by telephone, letter, personal delivery, telex, facsimile or

any other process, whether it be by electronic means or otherwise. All such communications in writing should include, without limitation, printed, typed, handwritten, electronic or other readable documents.

6. The term "relating to" or related to" includes describing, discussing, reflecting, constituting, evidencing, referring to, pertaining to, concerning, involving, memorializing, dealing with and bearing on, whether legally, factually or otherwise.

7. The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope, and are not to be interpreted in such a manner as to exclude any information within the scope of this request.

8. Unless otherwise specifically stated herein, the period covered by each of these requests extends fro January 1, 1996 to the date of your response to these requests.

## II. INSTRUCTIONS

1. You are directed to produce all documents in your possession that are requested by part III below.

2. All such documents should be produced in the order in which you maintain them in the usual course of your affairs, or organized and labeled to correspond with the categories of this request.

3. You should produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof, and should be legible and bound or stapled in the same manner as the original.

4. Documents not otherwise responsive to these requests should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by these requests or if such documents are attached to documents called for by these requests and constitute routing slips, facsimile covers, transmittal memoranda or letters, comments, evaluations or similar materials. Documents attached at the time of receipt of this Subpoena and accompanying Schedule "A" or that are attached as they are kept in the usual course of your affairs should not be separated.

## III. REQUESTS FOR DOCUMENTS

1. Produce documents relating to the formation of PAL as an entity or project of Community Catalyst, and the formation of PAL as a separate entity apart from Community Catalyst, including but not limited to, pre-formation consulting, memoranda of understanding, mission statements, articles of incorporation, certificates of organization, by-laws, operating agreements, minutes of all meetings (board of directors, members, stockholders, trustees, etc.), and all amendments thereto; all filings under 26 U.S.C. 501(c) along with all amendments thereto; all annual or other filings, reports, applications and/or financial or other statements required to be made by any state or federal law.

2. Produce all documents related to PAL's association with Community Catalyst and/or Health Care For All, and/or members, subsidiaries, affiliates, agents, or other persons or entities acting on behalf of Community Catalyst or Health Care For All.

3. Produce all documents related to PAL's involvement, formal or informal, in any state or federal lawsuits including, but not limited to, involvement as "friend of the court" or through PAL partnerships, associations, projects, subsidiaries, affiliates or coalitions, or any other entity, in which a *cy pres* or fluid recovery distribution was requested, proposed or awarded by or on behalf of PAL or affiliated entity.

4. Produce all documents related to PAL's involvement in this lawsuit, including the decision to have PAL members and affiliates [including Health Care For All] participate as plaintiffs in the original Complaint filed December 2001, the withdrawal of Health Care For All and other PAL members as plaintiffs in Amended Complaint filed in July 2003, the return of Health Care For All as a proposed representative of consumers in the Track 2 settlement, and the involvement of PAL in the allocation settlement proceeds.

5. Produce all documents related to the receipt and administration by PAL of any funds received by PAL (or affiliated entity) by or through a *cy pres* or fluid recovery distribution from any lawsuit.

6. Produce all PAL documents related to the issue of *cy pres* and/or fluid recovery, including, but not limited to: internal memoranda; policy and position statements (whether published or disseminated to any person); article and journal submissions, press releases, hearing or testimony transcripts, email, communications, meeting agenda, notes or summaries, or other written documents.

7. Produce all documents related to any affiliation between PAL and the following law firms: Hagens Berman Sobol Shapiro, LLP; Spector, Roseman, Kodroff & Willis, P.C.;

Rosenfield & Rafik; Wexler Wallace; Hoffman & Edelson; and/or any of these firms' predecessors or successors, and any partner(s) thereof, including Steve Berman, Tom Sobol, David Nalven; Ed Notargiacomo; Jeffery Kodroff, Stephen Rosenfeld, Ken Wexler and Marc Edelson.

8. Produce all documents related to any payments of any kind (whether cash, in-kind or otherwise) made or received by PAL, to or from the following persons and/or entities: Hagens Berman Sobol Shapiro, LLP; Spector, Roseman, Kodroff & Willis, P.C.; Rosenfield & Rafik; Wexler Wallace; Hoffman & Edelson; and/or any of these firms' predecessors or successors, and any partner(s) thereof, including Steve Berman, Tom Sobol, David Nalven; Ed Notargiacomo; Jeffery Kodroff, Stephen Rosenfeld, Ken Wexler and Marc Edelson.

9. Produce all communications and other documents relating to PAL's involvement in the following cases, and the pursuit of *cy pres* and/or fluid recovery in such cases: Average Wholesale Price Litigation, Augmentin, Lupron, Relafen, BuSpar, Buspirone, Cardizem, Tenant Health Care Corporation, Hytrin, Lorazepam, Clorazepate, Paxil, Remeron, Taxol, Warfarin Sodium (Coumadin), Novir, Celebrex, First Databank McKesson Medispan, Ketek, Neurontin, Nexium, Oxycontin, Protonix, Provigil, Seroquel, Vioxx, and/or any other lawsuit in which PAL was formally or informally involved with any of the firms or lawyers listed in Request Nos. 6 and 7 above.

10. Produce all drafts of the document attached hereto as Exhibit "1" (or any other memo or document that includes or discusses the "key principles" listed therein), including comments and/or edits thereto by persons within and outside of PAL, and any original copies sent to others (including all transmittal documents).

11. Produce all documents referring or relating to the negotiations of settlements, the allocation of settlement proceeds and/or the creation or allocation of *cy pres* or fluid recovery in this case or in *In re Lupron Marketing and Sales Practices Litig.*, MDL 1430 (D.Mass.), including the negotiation of the consumer Class 1 settlements with AstraZeneca and GlaxoSmithKline, the promise of *cy pres* settlement funds for the benefit of PAL and the involvement of PAL as allocation counsel for consumers.

# EXHIBIT 1

# MEMORANDUM

To:     Dave Treanor, IUOE

From:  Renée Markus Hodin

Date:   April 4, 2006

Re:     PAL Attorney Relationships

---

PAL is represented in its cases by three law firms:

(1) Hagens Berman Sobol Shapiro (key contacts: Steve Berman & Tom Sobol) (www.hbsslaw.com)
(2) Labaton, Sucharow & Rudoff (key contacts: Bernie Persky & Hollis Salzman) (www.labaton.com)
(3) Zwerling, Schachter & Zwerling (key contact: Joe Lipofsky) (www.zsz.com)

PAL hand-picked these firms because we believe they share our mission, understand what PAL is seeking in its cases and possess the intelligence, creativity and experience to help us be successful in our cases. Please note that not every firm is involved in every PAL case.

As an advisor, counselor and consultant to PAL member plaintiffs in matters of litigation strategy, proposed settlements, and other case-related matters, PAL works with directly with the relevant firms in each case. Aside from case-specific matters, PAL consults regularly with all of its attorneys on possible new cases and other prescription drug policy issues.

The issue of associating with attorneys that would best represent our coalition's interests was foremost in our minds from the very beginning of the project in 2001. At that time, the multi-state tobacco litigation had concluded, and we were just beginning to fully understand the failings of those efforts. The litigation was supposed to bring (1) real change in the tobacco industry's practices and (2) settlement money devoted to health care improvement. However, as you know, these outcomes did not materialize. Instead, state budget shortfalls consumed much of the settlement funds. And, the tobacco industry was permitted to get away with making only cosmetic changes in the way they do business.

Our analysis of the tobacco litigation and its disappointing outcomes is that lawyers -- not consumers or the organizations that represent them -- were driving the litigation. We believe that the best results for consumers occur when legitimate representatives of those consumer interests have a governing role in the litigation, particularly in the shaping of the remedy. Given the level of competition among class action lawyers in the drug pricing arena, we also believe

that class action lawyers who can show convincingly that they are representing such legitimate consumer interests are more likely to play a lead role in the complex litigation, where sometimes dozens of law firms are vying for position.

While formulating the concept of the project, Community Catalyst consulted extensively with Tom Sobol, a highly respected and successful Boston class action litigator who at the time was becoming a major participant in the work of Health Law Advocates, the public interest law firm of Health Care For All, Massachusetts' statewide health advocacy organization. Tom understood well the role of Community Catalyst and local and state grass roots organizations in the movement for health care justice. He was also enthusiastic about having class actions that attack high drug prices closely aligned with our grass roots network. Finally, he recognized that such an alignment would provide added legitimacy to his cases, and that would help persuade trial courts to appoint representatives from these cases to the executive committees responsible for prosecuting claims on behalf of all class members across the country.

However, he also understood that with such legitimacy would come responsibility, on the part of both the lawyers representing the grass roots network and the representative grass roots organizations themselves. That responsibility is to guarantee that the litigation reflects and promotes the goals and interests of the constituencies served by these grass roots organizations. The initial participants in the creation of PAL drafted a set of principles that govern the litigation and the various relationships. Among the key principles are:

1. **Shared mission:** The Prescription Access Litigation (PAL) participants agree to work in a collaborative effort: (a) to achieve our shared mission of creating substantial economic value for consumers in order to remedy past unlawful practices of pharmaceutical companies; and (b) to achieve meaningful change in the way the pharmaceutical industry does business in order to increase access to affordable prescription and other drugs.

2. **Broad-based collaboration:** We recognize that implementation of our mission will require discrete litigation efforts, and that specific goals and/or organization will be necessary on a case-by-case basis depending on the circumstances of the litigation efforts. Although each litigation effort will proceed independently, the participants agree to continue to exchange information and collaborate in a broad-based manner with respect to pharmaceutical litigation efforts to the extent such information exchange and collaboration is permitted under law and is appropriate.

3. **Highest ethical standards:** We are committed to be bound by the highest standards of ethics and professionalism applicable to our respective fields. Among other things, we agree that lawyers involved in PAL Project efforts will continue to independently represent their clients zealously, using the PAL Project as a tool for the benefit of clients.

4. **Shared responsibility and control:** With respect to particular litigation efforts, we express and believe and commit that the most effective representation of

  classes or subclasses in pharmaceutical litigation includes representation both through the lawyers representing the class and/or subclass and through health care advocates and/or public interest lawyers who have worked in the field of consumer rights for access to affordable health care. Within the particular circumstances (which admittedly vary significantly from case to case) such representation and/or participation by health care advocates on behalf of a class or subclass should be achieved.

  5. **Compensation and cy pres awards:** When structuring compensation for work performed in litigation and for allocation of funds generated from litigation, we recognize that the details of this, too, must be undertaken on a case by case basis. However, we believe that all lawyers (either from the private bar or from the non-profit public interest bar) and health care advocacy organizations should be compensated for work and/or value contributed to each case. We also express the view that, as to allocation of class and/or subclass funds, it is frequently in the best interests of the class to establish, in part, a separate cy pres fund to be used for consumer benefits through increased advocacy for affordable health care.

These principles still guide PAL's work and its relationships with its attorneys.

Though he has changed law firms since the start of the project, Tom Sobol has remained an integral part of PAL. He has been lauded for his work on behalf of consumers and third-party payors in drug pricing cases. Incidentally, he has also "stuck his neck" out in a significant way in challenging the attorneys fees being requested by his ex-law firm in the tobacco litigation. Tom has also been instrumental in helping PAL select our other attorneys at Labaton, Sucharow & Rudoff (LSR) and Zwerling, Schachter & Zwerling (ZSZ).

In particular, we approached Bernie Persky at LSR and Joe Lipofsky at ZSZ because of their broad experience in drug pricing cases and because of their demonstrated interest in our mission. Joe is of-counsel to ZSZ and has a long history of working with legal services programs as well as with various labor unions and their ERISA funds. Bernie is a partner at LSR and head of its Antitrust Practice Group. He has also worked on civil rights cases in his career. Most importantly, both Joe and Bernie have been intimately involved in bringing major class actions against the pharmaceutical industry and in developing creative solutions that benefit consumers. For instance, in one of the early cases challenging illegal drug company practices, they developed a plan to direct tens of millions of settlement dollars to community health centers around the country for the benefit of their patients. In another case, Bernie and his firm were creators of a model of class representation that ensured that both consumers and third party payors had their interests separately advocated. That model, which has become the standard practice in drug price cases, was upheld last year by the 3rd Circuit Court of Appeals.

In sum, we feel that we have assembled a creative, experienced and committed group of attorneys that are highly engaged in PAL and its mission. We're happy to answer any questions you have about PAL's attorney relationships as well as any further questions about membership in the PAL coalition.