## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge Patti B. Saris |

### BRIEF IN OPPOSITION TO MOTION FOR SANCTIONS

In their latest Motion for Sanctions,[1] Class Counsel have mis-characterized the course of events and have disingenuously claimed that the undersigned attempted to contact Ms. Swayze without notifying Class Counsel.  They seek sanctions for counsel having mailed a Notice to Attend to the proffered named class representatives for the BMS consumer settlement Sub-Class, timely advising her of Rev. Aaronson's request that she appear – in person or by telephone, at her convenience – to give testimony at the Fairness Hearing *on her proposed settlement with BMS*. For the reasons that follow, the Motion should be denied.

### Argument

Class Counsel claim that a sanction is required to "deter[] Haviland from continuing to use this litigation to accomplish his own ends."  Dkt. No. 7470 at 6.  Since "deterrence" is the motive and the basis for the requested sanction, this Court respectfully needs to consider, in the first instance, whether deterrence of objections to a proposed nationwide class settlement is a

---

[1]     Whenever the actions of Class Counsel are called into question by the court-appointed named class representatives, Class Counsel seek sanctions for simply raising a question about what they have done.  Such roadblocks to legitimate efforts to seek the truth should not be countenanced by this Court, as same are merely chilling tactics employed by Class Counsel to quell the proper vetting of their actions and decisions, which affect their former clients.  Here, as has been raised by Rev. Aaronson in his Motion to Enforce Settlement, Class Counsel settled the consumer Class 1 case against BMS for $13 million, plus an additional $1 million in notice costs, in June 2007.  Without timely advising the named consumer class representative, or garnering his consent, they unilaterally chose to take away over $8 million of those settlement proceeds and diverted them to their TPP clients, causing Rev. Aaronson's recovery [and that of all other consumers in the Class] to be reduced to about 8.8% of the Total Recognized Claim.

proper policy for this Court to adopt.  *See, e.g, In re Prudential Ins. Co. Of America Sales Practices Litig.*, 278 F. 3d 175, 202 (3rd Cir. 2002)(recognizing that objectors play an important role in class actions. They "serve as a highly useful vehicle for members of the class and for the public generally," and a lawyer for an objector who "raises pertinent questions concerning the conduct of Lead Counsel, the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund ... renders a service to the class [and] aids the court.").  Such a policy also would impede class representatives from fulfilling their independent fiduciary obligations to the Class.[2]

The subject Notice to Attend to Ms. Swayze was served electronically on all counsel of record (including Class Counsel) via CM/ECF notification, along with each of the other Notices to Attend, at 5:34 p.m. on Thursday, March 17.  The Certificate of Service that was filed along with the Notices to Attend indicates that Ms. Swayze (and others who do not have access to ECF) were served via first class mail.  In fact, it was only after the docketing and electronic service of the Notices to Attend upon all counsel of record, that the subject Notice to Attend was mailed to Ms. Swayze's home in California via first class mail from the undersigned's Philadelphia office.  The mailing was done in order to notify all the witnesses of the request for their appearance at the Fairness Hearing.  There was no ill will or threat intended by the mailing; just notice to ensure that all witnesses were timely apprised of the request.  In the case of Ms.

---

[2]      The class representative owes a fiduciary obligation to class members, which requires that he or she engage in vigorous, informed settlement negotiations.  *See, e.g., Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322 (M.D. Fla. 1997) (collecting cases in which "courts have held that a plaintiff that does not understand the facts of the case or her own claim cannot fulfill the role of the class representative"); *Coates v. Kelley*, 957 F.Supp. 1080, 1085 (E.D. Ark. 1997) (adequacy of named plaintiffs evidenced by "their vigorous negotiations on behalf of the national class").

Swayze, the notice was intended to make clear to her that her appearance in person was *not required*; instead, she could arrange to appear telephonically if she so chose to do so.

Class Counsel was served electronically with the same document that was mailed to Ms. Swayze, meaning that she  received it at least a day or two later from the U.S. Postal Service. Class Counsel made no effort to contact Haviland Hughes regarding the Notices to Attend to coordinate the testimony of witnesses or otherwise.  Instead, they embarked on yet another campaign to impose sanctions on personal counsel for the court-appointed class representatives to "deter" any effort to develop a factual record for this Court by which to rule upon a serious and legitimate objection to their proposed settlement.

Here, the legitimate objection raised by Rev. Aaronson is: why did Class Counsel trade away more than $8 million of their consumer clients' settlement proceeds? This question's legitimacy is supported by Class Counsel's own conduct, in that the change occurred only after Class Counsel negotiated a binding MOU and vehemently argued to this Court that "a deal is deal,  and the Court should enforce the MOU...".  Dkt. No. 5606.  This question needs to be answered on a fulsome record, if the Court is not inclined to grant Rev. Aaronson's Motion to Enforce Settlement on the papers.  Counsel for Rev. Aaronson seek only to ask Ms. Swayze if she know about and approved of Class Counsel's decision, beyond demonstrating her standing to sue BMS (which BMS questioned in 2007).

The fact that Ms. Swayze is an elderly woman suffering from cancer is unfortunate.  But, the unfortunate reality of this case – faced by Rev. Aaronson, who is older than Ms. Swayze and who suffers from prostate cancer, and his late wife, Sue Ruth, who passed away from cancer during the course of this litigation – is that there needs to be a viable plaintiff with standing to sue and the requisite typicality and adequacy to serve as the named representative of a sprawling

nationwide class.  This Court has never required less,[3] nor would defendants agree to have this action maintained against them by just Hagens Berman and the other Class Counsel (in the absence of an agreement to settle).[4]

The fundamental requirement that must be satisfied by both Class Counsel and BMS for their jointly proposed settlement is a plaintiff with standing to sue and a class representative that is typical and adequate to represent the interests of the class.  *See* Fed.R.Civ.P. 23(a)(4)*; See also Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 680 (S.D.Tex. 1976) (stating that a Court's "duty under Rule 23(e) cannot and should not be delegated to the litigants' attorneys.  Rather, the burden should be placed on the parties, ***especially the class representative***, to prove to the district court and class members that the recommended compromise and all of its components are fair, reasonable and adequate.)(emphasis added) (*citing. Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)).

Class Counsel's effort to impede the inquiry by invoking sympathy for Ms. Swayze's medical condition and calling the Notice of Attend an attempt to harass her is a sad strategic ploy.  It is telling that Class Counsel did not make such a claim back in 2007 when Lyndon Tretter, counsel for BMS, was seeking the same information of Ms. Swayze.  Before the Class 1

---

[3]      Indeed, in the case against Johnson & Johnson, where the defendants are not settling and the Class 1 issues remain contested, this Court has ordered Class Counsel's sick and elderly proposed representative plaintiff to produce "all records concerning Mrs. Oustad's adequacy as a Class 1 representative, including her medical records...".  Dkt. No. 7193.

[4]      In fact, earlier in the BMS case, BMS challenged the standing of Rev. Aaronson and his wife to sue by reason of their having purchased BMS Subject Drugs in 2004**.**  Dkt. No. 4249 (May 23, 2007 Notice of Lack of Class 1 Representative).  BMS sought to avoid the July 2007 trial by arguing "[t]his leaves no representative for the Class 1 trial against the BMS Defendants."  The Notice was defeated by the dual filings by the undersigned and Class counsel, supporting Rev. Aaronson's standing to sue and adequacy as a representative.  *See* Dkt. Nos. 4283 (June 5, 2007 Response of Class Counsel); 4261 (May 30, 2007 Response of Rev. Aaronson).

case against BMS was to go to trial, BMS filed the above-referenced challenge to Rev.

Aaronson's standing and adequacy.  On June 6, 2007, the Court convened a hearing on the

challenge.  At the outset of the hearing, the following colloquy took place between the court and

Mr. Tretter:

> THE COURT: I'd be inclined just to allow them to add that woman. I shouldn't say "that woman," but --
> MR. TRETTER: Mrs. Swayze.
> THE COURT: Mrs. Swayze, and --
> MR. TRETTER: Can I cut through, your Honor?
> THE COURT: Yes.
> MR. TRETTER: If the short answer is "yes," we're inclined to do the same thing, ***subject to the same vetting process that every plaintiff has to go through.*** I mean, they gave us one EOB which has a lot –

June 6, 2007 Tr. 4:19 - 5:3 (Emphasis added).  That "vetting process" called for by BMS, and

required by Rule 23, was never done because BMS decided to settle with Class Counsel, rather

than litigate.  They decided to settle with Class Counsel without the involvement of the

Aaronsons or their counsel.  Ms. Swayze was brought  in as a new proposed representative

plaintiff to bless their settlement.  But, remarkably, she has not done so in any pleading filed of

record with this Court.

Simply because BMS now desires for there to be a certified settlement class in order to

obtain nationwide, classwide relief for dollars they are paying, does not alleviate either BMS or

Class Counsel of their burden of demonstrating that the requisites for class certification have

been satisfied.  To the contrary, as the Supreme Court in *Amchem* admonished, the necessity to

show that the requisites for class certification have been satisfied are "heightened" in the

settlement context because the court will not have the opportunity to pass on the merits of the

case again, after the settlement is finally approved.  *Amchem Products, Inc. v. Windsor*, 521 U.S.

591 (1997).  BMS's changed status – from class *opponent* to class *proponent* – simply means that BMS shares the burden of proof with Class Counsel.

The "problems" BMS identified in June 2007 with Ms. Swayze have not gone away.  They have never been resolved (to the undersigned's knowledge), despite the court's admonition on June 6, 2007 for BMS to do so:

> THE COURT: ... [Y]ou've got troops of lawyers, so somebody will just have to go in and look at it before the –
> MR. TRETTER: I'm happy to do that. If that's the answer today, we can cut through and we can move on to the other things. ***I just want the Court to be aware that, you know, when we get this information, it is possible that Mrs. Swayze*** -- is that the correct pronunciation of her name?
> MR. SOBOL: Yes.
> MR. TRETTER: -- ***may have a problem too. I just noted on the EOB that I received, the explanation of benefit form that I received 5:00 o'clock last night, that she received her chemotherapy in 2003. The benefit form was processed in 2007. There are all sorts of things that may be very strange about this situation***.

June 6, 2007 Tr. 5:10-25 (Emphasis added).  Mr. Tretter (and BMS) cannot now seek to shield Ms. Swayze from the very inquiry they sought to have back in 2007.

Class Counsel rely upon *In re Prudential Insurance Co. Of Am. Sales Practices Litig.,* 962 F.Supp. 450, 563 (D.N.J. 1997), for the proposition that "objectors have no absolute right to present and cross examine witnesses at a fairness hearing."  Mem. In Opp. at 5.  However, "[i]t is not unusual for objections to be presented at a hearing on a proposed settlement of a class action, ***and it is elemental that an objector at such a hearing is entitled to an opportunity to develop a record in support of his contentions by means of cross examination and argument to the court.***"  *Greenfield v. Villager Industries, Inc.*  483 F.2d 824, 833 (C.A.1973) (emphasis added). In *In re Prudential,* objectors argued that they should have been able to present the testimony of an internal auditor from Prudential and to cross-examine Prudential's expert witness at the fairness hearing.  Importantly, the court held that such testimony was not necessary ***because the***

*auditor's testimony was already before the court* and because experts typically testify as to their written report.  In that regard, the Court allowed the objectors to present their own expert affidavit, which they failed to do.  Here, in contrast, the testimony of Ms. Swayze is not before the Court.  Unlike Rev. Aaronson (who was deposed twice), Ms. Swayze has never been deposed and has never given testimony.  By resisting the Notice to Attend (and seeking sanctions) it is obvious that Class Counsel have no intention of making a record with this Court as to Ms. Swayze's knowledge, opinion and/or approval of the proposed settlement with BMS - which directly goes to her adequacy to serve as the lone Class 1 representative for the BMS settlement Sub-Class.

In *Walsh v. Great Atlantic & Pacific Tea Co., Inc.,* (the case cited by the *In re Prudential* Court but omitted from Class Counsel's citation in their brief), the petitioner argued that the fairness hearing "violated the due process rights of the objecting class members by denying them a realistic and meaningful opportunity to develop a record of their objections."  726 F.2d 956, 965 (C.A.N.J.,1983).  In that case, the objector argued "that the court should have taken testimony and permitted cross-examination of witnesses."  *Id.*  In response to that argument, the *Walsh* court stated that "[t]here might have been some merit to that contention had he or any other objector *sought the opportunity to introduce evidence or to cross-examine anyone*. Indeed, the manner in which the trial court conducted all proceedings relating to the settlement suggests that had such an opportunity been requested, it would have been afforded" (Emphasis added)  *Id.* (*citing  Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 833 (3d Cir.1973). Ultimately in that case, the court held that the objector had waived his ability to present evidence and cross-examine the witnesses at the fairness hearing.  Moreover, the court held "because the facts are largely undisputed, and the fairness of the settlement depends primarily upon an

evaluation of the competing legal positions of the parties, it is difficult to imagine what value an evidentiary hearing would, in this case, have had." *Id.* Here, due to the clear terms of the MOU signed by the parties, and the parties' unambiguous intent to be bound by the terms therein (as expressed in the MOU), the facts surrounding the proposed settlement are in dispute.   Further, Ms. Swayze's opinion regarding the MOU is material as there is no indication in the record that she was ever informed of it and/or supports the proposed settlement over the MOU.

Class Counsel have invoked the *Lupron* case in support of their Motion, and point out that the court there prevented the undersigned from taking several depositions regarding the *Lupron* settlement.  Here, the undersigned does not seek discovery; rather, the Notices to Attend seek to address relevant evidence at a Fairness Hearing, which evidence is critical to the Court's assessment of the propriety of class certification and final approval of the proposed settlement.

Class Counsel fails to point out to this Court that Judge Stearns **permitted** the exact type of evidentiary proffer sought here:  presentation of evidence and cross-examination of witnesses.[5] Similar to what was sought here, in *Lupron,* the undersigned was able to cross-examine the proffered settlement class representative, Mr. Porter, telephonically ***after Class Counsel called him as their witness***.[6]  In *Lupron,* upon being granted leave to intervene in the case, the Intervenors-Objectors' filed a Notice of Intent to Appear, *see* MDL 1430 Dkt. No. 335.  In that

---

[5]    Class Counsel herein was the same Class Counsel in the *Lupron* litigation and is fully aware of Judge Stearns' allowance of the cross-examination and the merits derived therefrom.

[6]    Class Counsel's suggestion that the invitation to contact Haviland Hughes "to make arrangements to have your testimony taken via telephone" was an improper solicitation for further communications is equally unfounded.  At the Final Fairness Hearing in *Lupron,* the examination of the proposed class representative was taken telephonically.  The offer to do the same for the convenience of Ms.Swayze in this case, and suggestion that arrangements could be made by Haviland Hughes, is far from unethical and in fact demonstrates the reasonableness of the undersigned in seeking to accommodate the witness, considering the preference for live testimony.

Notice, Intervenors-Objectors listed eighteen (18) specific persons whom they intended to call as live witnesses at the Fairness Hearing; among them was the proposed consumer class representative, Mr. William Porter.  The Notice also listed as witness number 19 "[s]uch other absent class members as may be appropriate to address the MDL parties' submissions."  *Id.*  The Notice indicated that Mr. Porter would be:

> "called to testify as to their knowledge of the proposed SHP and Class settlements, including but not limited to the negotiations leading up to these settlements, the terms of the settlements, the claims being settled, the scope of the proposed release in exchange for payment of settlement proceeds, the allocation of settlement proceeds (including but not limited to any and all negotiations regarding the allocation), any and all intra-class conflicts among class members, and between them and their counsel, and all other issues raised pertaining to the propriety of class certification and the fairness, reasonableness, and adequacy of the proposed settlement."

*Id.*

Two days later, on March 17, 2005, Judge Stearns entered an Order on Intervenor's Notice of Intent to Appear.  Dkt. No. 341.  In allowing Intervenors-Objectors to present evidence, Judge Stearns stated "[a]s the court anticipates presentations by other objectors, including representatives of several state Attorneys General, it will limit Intervenors' and MDL counsels' witness presentations to four hours each.  The court will also permit one hour of summary presentation by counsel for the Intervenors and by MDL counsel."  *Id.* (citations omitted).[7] Accordingly, three (3) days of hearings ensued, with various witnesses being presented by both Class Counsel and Intervenors-Objectors' counsel.  On the third day of the hearing, Mr. Porter was called to testify telephonically by Class Counsel. *See* 4/15/05 Tr. at 4:1-13:4, excerpt

---

[7]      In that case, the court did not permit Intervenors-Objector's counsel to examine MDL counsel at the Fairness Hearing.  *Id.* at 2 (*citing In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1123-32(7th Cir. 1979)).  However, unlike that case, here there is a material issue of disputed fact regarding Class Counsel's intent to create a binding agreement by signing the MOU – notwithstanding the unambiguous language of the document which repeatedly asserts its binding nature.

attached hereto as Exhibit "A".  Unlike in this case, Mr. Porter had previously been deposed in the litigation, and therefore the issues as to his standing, typicality, and adequacy had been tested by defense counsel.  Upon examination by Class Counsel, Mr. Porter testified that he "had no opinion at all" regarding the settlement "because [he's] not an expert in these matters."  *Id.* at 6:13-16.  He then testified that he did in fact review the settlement and approved of it.  *Id.* at 6:17-19.  However, upon cross-examination by Intervenors-Objectors' counsel, Mr. Porter acknowledged that he was not certain that he had reviewed the actual settlement.  *Id.* at 10:1-12.  It was further adduced that Mr. Porter did not understand the extent of the release given to TAP and that the nature and scope of the release was not explained to him in detail.  *Id.* at 11:9-12:18.

Most importantly, Mr. Porter testified in April 2005 that he had only learned about the settlement "several months" ago.  *Id.* at 6:2-6.  When pressed if it was "before Christmas" (i.e. December 24, 2004), he said "I don't believe so."  *Id.* at 8:14-19.  This testimony was important because the settlement agreement was signed by Class Counsel months before and was presented to the Court for preliminary approval before the holidays.  The Court preliminarily approved the settlement.

The same Class Counsel from MDL-1430 now seek sanctions against the same counsel who represented the Intervenors-Objectors' in *Lupron*, for attempting to adduce the same relevant evidence from the lone consumer class representative for the BMS Sub-Class in this case.  This is the same representative whom Class Counsel seek to supplant Rev. Aaronson with in light of the Reverend's concerns about their settlement positions.

10

Counsel should not be faulted for attempting to adduce relevant evidence for the benefit of the Court to show the intent of the parties in entering into the MOU.[8]  Nor should counsel be faulted for attempting to inquire about the standing of the proposed consumer class representative, and her adequacy to represent a settlement class that agreed to take more than $8 million less than BMS was contractually obligated to pay.  Ms. Swayze's understanding and endorsement of the proposed settlement is rightfully questioned.

Class Counsel submitted an Affidavit signed by Ms. Swayze in support of their Memorandum in Support of Motion for Fees and Costs.  Dkt. No. 7427.  The Affidavit states that Ms. Swayze spent time "reviewing the Complaint, settlement agreements and other pleadings sent by counsel, and discussing those pleadings with counsel." *Id.* at 2.  However, nowhere in the Affidavit does Ms. Swayze proffer her opinion as to whether the proposed settlement is fair, reasonable and adequate for the Class of consumers whom she is charged to represent as a fiduciary.  Nowhere does Ms. Swayze say she approves of a settlement that now provides far less than the one negotiated for the Class in June 2007.

Class Counsel bears the burden to convince this Court not only that the proposed settlement class should be certified, and Ms. Swayze appointed as a representative, but also that this second settlement is fair, reasonable and adequate given the earlier settlement which provided far more money.  *See Sylvester v. CIGNA Corp.*, 369 F.Supp.2d 34, 44 (D.Me.,2005) ("It is the burden of the proponents of the settlement to prove that the proposed settlement is fair,

---

[8]      Curiously, despite their claim that the collective Notices "were clearly designed to harass and intimidate ***anyone connected to the BMS settlement***", Class Counsel does not seek sanctions for the Notices to Attend directed to Messrs. Wilkinson, Miller, Matt, Goldenberg or Harper. *See* Class Counsel's Objection to Notices to Attend at 2 (emphasis added).

reasonable and adequate.") (*citing* 7B Wright, Miller & Kane, Federal Practice & Procedure:
Civil 3d § 1797.1 (2005)).

    In assessing the propriety of certifying the settlement class and the fairness,
reasonableness and adequacy of the proposed settlement, this Court also bears a fiduciary duty to
the consumer Class. *Id.* at 44. (noting that in reviewing the fairness of a proposed settlement the
Court has a "judicial duty to protect the members of a class in class action litigation from lawyers
for the class who may, in derogation of their professional and fiduciary obligations, place their
pecuniary self-interest ahead of that of the class.")(*citing Reynolds v. Beneficial Nat'l Bank,* 288
F.3d 277, 279 (7th Cir.2002)); *See also Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 680
(S.D.Tex. 1976) ("In order to properly carry out its Rule 23(e) role as the guardian of the rights
of absent class members, the district court must not perfunctorily approve a class settlement.
Rather, the court must evaluate the proposed compromise with care and "set forth the reasoning
supporting its conclusion in sufficient detail to make meaningful review possible; use of 'mere
boilerplate' language will not suffice.")

    Federal Rule of Civil Procedure 23(e)(2), regarding a proposed class settlement, provides
"[i]f the proposal would bind class members, the court may approve it ***only after a hearing and
on finding that it is fair, reasonable, and adequate***."  Fed.R.Civ.P. 23(e)(2) (emphasis added).
Accordingly, this Court scheduled a Final Fairness Hearing to be conducted on Monday, March
28, 2011, regarding the potential certification of the proposed settlement class and approval of
the proposed settlement.

    Relevant to the assessment of the now-proposed settlement is the lingering issue of Class
Counsel's first negotiated settlement with BMS, codified in the MOU as "constitut[ing] a
binding agreement between Bristol-Myers Squibb Company ("BMS") and Plaintiff Class 1 as

defined in *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL 1456, C.A.
01-CV-12257-PBS (the "AWP MDL")". But for Class Counsel's about-face respecting the
MOU, in arguable derogation of their independent fiduciary duty to Consumer Class 1 and in a
clear conflict of interest,[9] the intent of both parties to be bound by the MOU is unambiguous
given the language of the document itself. *See* MOU at ¶1 ("This MOU settles all claims of the
Nationwide Medicare Consumer Settlement Class of the nature alleged or that could have been
alleged in the AWP MDL against defendants BMS, Oncology Therapeutics Network Corporation
and Apothecon, Inc., said defendants being referred to herein collectively as the "BMS Group");
¶3(*"*Nevertheless, this MOU shall be binding as of the date below and shall not be contingent
upon such future negotiation or execution. Similarly, the binding nature of this MOU shall not
be affected by decisions of developments in the AWP MDL after the date below."); ¶5 ("The
undersigned corporate representative of BMS represents and warrants that she has authority on
behalf of BMS and the other members of the BMS Group to enter into this MOU and to bind the
corporation thereto. The undersigned counsel for the Nationwide Medicare Consumer Settlement
Class represents and warrants that he has authority as court-appointed 'lead counsel' for Class 1
in the AWP MDL to enter into this MOU and to bind the Class thereto.")

The Notice to Attend directed at Ms. Swayze was intended to adduce evidence from the
proffered class representative as to her understanding of her duties as a class representative, her
ability to carry them out, whether she was consulted about the now-proposed settlement and if so
when, her opinion regarding the now-proposed settlement, as well as the same regarding the
MOU. Ms. Swayze's answers and opinions regarding those issues are relevant to this Court's

---

[9]      Rev. Aaronson has separately moved for their disqualification as consumer class counsel
for the BMS consumer Sub-Class.

consideration of both the adequacy of the representative parties and the fairness of the now-proposed settlement.  Class Counsel has done nothing to put those answers and opinions before the Court.  Quite the contrary, as evident by the instant opposition and petition for sanctions.

Dated: March 25, 2011                                    Respectfully submitted,

                                                         /s/ Donald E. Haviland, Jr.
                                                         Donald E. Haviland, Jr., Esquire
                                                         Robert G. Hughes, Esquire
                                                         Michael J.  Lorusso, Esquire
                                                         **HAVILAND HUGHES, L.L.C.**
                                                         111 S. Independence Mall East
                                                         The Bourse, Suite 1000
                                                         Philadelphia, PA 19106
                                                         Telephone: (215) 609-4661
                                                         Facsimile:  (215) 392-4400

## <u>CERTIFICATE OF SERVICE</u>

      I, Donald E. Haviland, Jr., Esquire, hereby certify that on March 25, 2011 a true and correct copy of the foregoing Brief in Opposition to Motion for Sanctions was served on all counsel of record via CM/ECF notification.

 

_____

_____     /s/ Donald E. Haviland, Jr.

                                                         Donald E. Haviland, Jr., Esquire