UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

### REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

*"A deal is a deal, and the Court should enforce the MOU"*

Dkt. No. 5606 at 1 (Emphasis added).

According to BMS, the sole basis for their "buyer's remorse" is the decision by the District Court that Dr. Hartman's "30% speed limit" applies to Class 1 and their subsequent belief that therefore they had agreed to pay too much to settle the Class 1 claims. BMS made that argument before, asserting that the MOU was the product of a "mutual mistake" made by both sides in interpreting the Court's June 21, 2007 trial ruling. *See* Dkt. No. 5606 at 4 (wherein Class Counsel states "BMS argues that the parties did not anticipate the Court later applying the 30% speed limit to Class 1, just as it did to Classes 2 and 3 in the Trial Ruling. ***This is a totally false assertion and, indeed, a ridiculous argument.***") (Emphasis added).

However, the MOU specifically states "the binding nature of this MOU shall not be affected by decisions or developments in the AWP MDL after the date below". Accordingly, it was the specific intent of the parties to preclude such a development, which came after the MOU was duly executed, from affecting the binding nature of the MOU. Therefore, BMS should not have been permitted to renegotiate any deal with respect to Class 1 and should have been bound by the unambiguous terms of the MOU.[1]  *See* Dkt. No. 5606 at 6 (wherein Class Counsel states

---

[1] The reasons why Class Counsel, who now bear conflicting fiduciary duties to both the TPP and consumer Class members (which Rev. Aaronson contends warrants their disqualification) were willing to allow BMS to get out from under the terms of the binding MOU and effectively divert

"That subsequent events have now changed BMS' unilateral view of its liability exposure is its own tough luck. A bargain cannot be amended based on subsequent events that did not turn out as hoped or predicted, absent an express reservation for such a contingency in the agreement (which BMS did not seek or obtain)." (*Citing Morales v. Hosp. Hermanos Melendez, Inc.,* 447 F.Supp.2d 137, 143-44 (D.P.R. 2006)[2]

BMS states that "[t]he parties' counsel negotiated the overall $13 million figure based, in part, on the Class 1 damages calculations of plaintiffs' expert, Dr. Hartman. Unfortunately, those calculations were based on the erroneous assumption that the '30% speed limit' for expected spreads that Dr. Hartman had articulated for purposes of Classes 2 and 3 did not apply to Class 1." (Citations omitted) (emphasis in original). BMS then details the fact that **after the MOU was executed,** the District Court made clear that the 30 percent speed limit should apply to Class 1. Amazingly, BMS cites its own expert report, which purports to correct several problems with Dr. Hartman's report, to support its contention that Class 1 damages ranged from $1.3 million to $3 million, far less than the $13 million BMS committed in the MOU. *See* Memo at FN3. However, that BMS report was filed by Dr. Bell one month **before the MOU was executed,** and therefore was available to BMS prior to and throughout the negotiation of the MOU. BMS does not provide an *ex post facto* justification for their entering into the MOU which provided for what they claim to be in excess of four (4) times the amount of Class 1 damages. However, the fact remains that BMS executed the MOU and unambiguously intended to be bound by it.

II.     ARGUMENT

---

$8.63 million of settlement funds from Class 1 is unclear and respectfully should be a matter of intense scrutiny by this Court, which itself owes a fiduciary duty to the members of consumer Class 1.

[2]     It is significant that Class Counsel has cited to general contract law and not a class action law in seeking to enforce the MOU.

2

### A. The MOU is an Enforceable Contract that the Parties Are Bound To

The MOU contains the material terms to the settlement agreement and should therefore bind the parties. *See* Dkt. No. 5606. "It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Situation Management Systems, Inc. v. Malouf, Inc.,* 430 Mass. 875, 878, 724 N.E.2d 699, 703 (Mass., 2000) (*citing McCarthy v. Tobin*, 429 Mass. 84, 87, 706 N.E.2d 629 (1999); *Rosenfield v. United States Trust Co.,* 290 Mass. 210, 216, 195 N.E. 323 (1935) (failure to agree on material terms may be evidence that parties do not intend to be presently bound); *David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass.App.Ct. 237, 241, 392 N.E.2d 1066 (1979), and cases cited (party to contract may be found to have entered binding agreement if party intended to be presently bound)).

The MOU properly identifies the parties to the Settlement as BMS and Plaintiff Class 1 as defined in *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL 1456, C.A. 01-CV-12257-PBS (the "AWP MDL"), expanded and defined as "the Nationwide Medicare Consumer Settlement Class." *See* MOU at ¶1.[3] The MOU then properly defines the release as settling "all claims of the Nationwide Medicare Conusmer Settlement Class of the nature alleged or that could have been alleged in the AWP MDL against [the BMS Group]." *Id.* It then details the consideration as $13 million as well as one-half of the notice costs, not to exceed an additional $1 million. *Id.* at 2. Finally, at paragraph 5, both parties represent that the respective signatories to the document, Sean Matt and Zenola Harper, have the authority to bind their respective parties.

---

[3] Although the MOU does not include numbered paragraphs, for ease of reference and to assist this Court, Plaintiff-Objector Aaronson will reference the five (5) paragraphs contained in the MOU by number from the top to bottom.

It is not disputed that the MOU does not contain all of the specific provisions of the settlement agreement. In fact, the MOU itself states that the parties "contemplate that they will promptly negotiate and execute a formal settlement agreement and the related documentation necessary to seek and obtain both preliminary and final approval by the Court of their settlement." ¶3. However, the MOU then goes on to say, "Nevertheless, this MOU shall be binding as of the date below and shall not be contingent upon such future negotiation or execution. Similarly, the binding nature of this MOU shall not be affected by decisions or developments in the AWP MDL after the date below." *Id.* Further, the fact that the MOU does not contain all of the terms of the settlement does not prevent the same from being binding on the parties. *See Situation Management Systems, Inc. v. Malouf, Inc.,* 430 Mass. at 878 ("It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract." (*citing Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 427 Mass. 509, 517-518 & n. 9, 694 N.E.2d 820 (1998), cert. denied, 525 U.S. 1177, 143 L.Ed.2d 108 (1999)).

Equally important as having the material terms of the Settlement set forth therein, the intent of the parties to be bound by the MOU is unambiguous. *See Glyka v. New England Cord Blood Bank, Inc.,* 2009 WL 1816955, 3 (D.Mass., June 25, 2009) ("Massachusetts law recognizes that precontractual agreements can themselves be binding contracts, but the case law 'place[s] great reliance on the intention of the parties.'") (*citing Hunneman Real Estate Corp. v. Norwood Realty, Inc.* 765 N.E.2d 800, 804 (Mass.App.Ct.,2002).

The following excerpts from the MOU unambiguously demonstrate the parties' intent to be bound by the MOU:

- This Memorandum of Understanding ("MOU") **constitutes a binding agreement** between Bristol-Myers Squibb Company ("BMS") and Plaintiff Class 1 as defined

in *In re Pharmaceutical Industry Average Wholesale Price Litigation,* MDL 1456, C.A. 01-CV-12257-PBS (the "AWP MDL").  ¶1

- Nevertheless, this **MOU shall be binding as of the date below** and **shall not be contingent upon such future negotiation or execution**.  ¶3

- Similarly, **the binding nature of this MOU shall not be affected by decisions of developments in the AWP MDL after the date below**.  ¶3

- The **undersigned corporate representative of BMS represents and warrants that she has authority** on behalf of BMS and the other members of the BMS Group to enter into this MOU and **to bind the corporation** thereto.  ¶5

- The undersigned counsel for the Nationwide Medicare Consumer Settlement Class represents and warrants that he has authority as court-appointed 'lead counsel' for Class 1 in the AWP MDL to enter into this MOU and **to bind the Class thereto.  ¶5**

In fact, the MOU itself consists of twelve (12) sentences, five (5) of which specifically detail the binding nature of the agreement.  This emphasis on the binding nature of the MOU, despite the fact that the parties acknowledge the need to enter into a more formal settlement agreement, supercedes the inference sometimes made by this Court that "[w]hen 'parties contemplate the execution of a final written agreement,' a strong inference is made that they 'do not intend to be bound by earlier negotiations or agreements until the final terms are settled." *20 Atlantic Ave. Corp. v. Allied Waste Industries, Inc.,* 482 F.Supp.2d 60, 74 (D.Mass.,2007)**.**  In fact, no such inference can plausibly be made in this case as the MOU itself expressly prohibits future negotiation or execution from altering the terms contained therein.  In that context, the MOU states as follows:

> The Parties contemplate that they will promptly negotiate and execute a formal settlement agreement and the related documentation necessary to seek and obtain both preliminary and final approval by the Court of their settlement.  **Nevertheless, this MOU shall be binding as of the date below and shall not be contingent upon such future negotiation or execution. Similarly, the binding nature of this MOU shall not be affected by decisions of developments in the AWP MDL after the date below.**

(Emphasis added)

### B.     Class Counsel is Estopped from Arguing that the MOU is not Binding

As Class Counsel previously stated "BMS must pay the full $13 million to which it committed to pay for the benefit of Class 1." Dkt. No. 5606 at 6.  Class Counsel is judicially estopped from arguing that the MOU is not a binding contract. *See Tocci Building Corp. v. Zurich American Ins. Co.*, 659 F.Supp.2d 251 (D.Mass., 2009) ("Doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding."); *See also In re Szwyd,* 408 B.R. 547 (D.Mass., 2009).

Class Counsel should be bound by their position taken in their Reply Memorandum in Support of Motion to Preliminarily Approve Proposed Plan of Distribution for the BMS Class 1 Settlement and Opposition to BMS'S Cross-Motion for a Conference on a Distribution Plan and Other Settlement Issues.  Dkt. No. 5606.  Throughout that brief, Class Counsel properly argues that the parties had entered into a binding agreement and that BMS is legally obligated to comply with the terms of the MOU, providing $13 million to Class 1.  In the brief, Class Counsel addresses head-on BMS' contention, raised again here, that the parties did not anticipate the Court to apply the 30% speed limit to Class 1 and therefore BMS should be permitted to renegotiate the settlement codified in the MOU.  Dkt. No. 5606 at 4 (wherein Class Counsel states that BMS' argument is "a totally false assertion and, indeed, a ridiculous argument.).  As Class Counsel makes clear in their attempts to bind BMS to the terms of the MOU, "Class Counsel drove a hard bargain in obtaining BMS's capitulation to put up $13 million for Class 1."

Class Counsel should not be permitted to now argue that the MOU is not binding, a position directly inconsistent with their prior pleadings.

6

                                                Respectfully Submitted,

Date: March 25, 2011                  /s/ Donald E. Haviland, Jr.
                                                Donald E. Haviland, Jr., Esquire
                                                Michael J. Lorusso, Esquire
                                                HAVILAND HUGHES, LLC
                                                111 S. Independence Mall East
                                                The Bourse, Suite 1000
                                                Philadelphia, PA 19106

## **CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., Esquire, hereby certify that on March 25, 2011, I filed the foregoing Reply in Support of Motion to Enforce Settlement with the Clerk of this Court and used the CM/ECF system to send notification of such filing to all registered person(s).

**/s/ Donald E. Haviland**
**Donald E. Haviland, Jr., Esquire**