UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK TWO SETTLEMENT | Judge Patti B. Saris |

**LEAD CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND COSTS AND
COMPENSATION TO THE CLASS REPRESENTATIVES
IN ASSOCIATION WITH THE TRACK TWO SETTLEMENT**

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ........................................................................................................1

II.    HISTORY OF THE LITIGATION ............................................................................4

III.   THE COURT SHOULD APPROVE THE FEE PETITION  AS FAIR AND
       REASONABLE .............................................................................................................4

     A.   Class Counsel Are Entitled To Compensation Based Upon The Benefits Created
            By The Litigation ................................................................................................4

     B.   The Percentage-Of-The-Fund Method Is Appropriate For Calculating Attorneys'
            Fees In This Circuit ............................................................................................5

     C.   The Requested Fee And Expense Award Is Fair And Reasonable As A Percentage
            Of The Benefits Achieved For The Class ...........................................................7

     D.   A Cross-Check With The Lodestar Confirms The Reasonableness Of The
            Requested Fee And Expense Award ....................................................................9

          1.   If the Court grants Counsel's Track Two fee request, Plaintiff's counsel
                 will receive a very modest multiplier on their total case "investment." ......9

          2.   We cannot isolate time and expenses devoted specifically to the Track
                 Two portion of the litigation or even to efforts limited to the claims of the
                 Track Two Classes. .................................................................................10

     E.   The Fee Percentages Sought Ensure That Each Settlement Class Pays An
            Equitable Portion Of Attorneys' Fees And That A Reasonable Overall Multiplier
            Results For All Fees Awarded At the End Of The Case......................................12

     F.   Various Other Factors Applied By This Circuit And Others Support Class
            Counsel's Request .............................................................................................15

          1.   The size of the fund created and the number of people who benefit .........16

          2.   The time and labor expended by counsel....................................................16

          3.   The complexity and duration of the litigation............................................18

          4.   The risk of nonpayment .............................................................................18

          5.   The skill and efficiency of the attorneys involved.....................................19

IV.   Class Counsel's Expenses are Reasonable and Should be Factored in the Court's
       Consideration of the Award ........................................................................................20

V. THE COURT SHOULD APPROVE COMPENSATION TO THE NAMED CLASS
   REPRESENTATIVES......................................................................................................21

VI. CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396 (D.C. Cir. 1986) ...............5

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)....................................................................................................................18

*Blum v. Stenson*, 465 U.S. 886 (1984) .........................................................................................5

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)..........................................................................4

*Branch v. FDIC*, No. 91-CV-13270, 1998 WL 151249 (D. Mass. Mar. 24, 1998).......................6

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001).................................................24

*Bussie v. Allmerica Fin. Corp.*, 1999 U.S. Dist. LEXIS 7793 (D. Mass. May 19, 1999) .............24

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).......................................6

*Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ............................................................5

*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998)...................................................7

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375 (D. Mass. 1997) ........................7

*Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) ......................................................19

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)..........................................................................7

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...........................................16, 18

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ..........................................................................6

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)................................................15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................11

*In re Activision Sec. Litig.*, 723 F. Supp 1373 (N.D. Cal. 1989) ...................................................8

*In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001)...........................16

*In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003)...........7

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003) ...........................................................................................................................6, 7, 9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184 (D. Me. 2003).................................................................................................................24

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ..................................6

*In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407 (D. Wyo. 1998)......................................14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) .........24

*In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735 (1st Cir. 1999)..........................4, 6, 20

*In re Fidelity/Micron Secs. Litig.*, 1998 U.S. Dist. LEXIS 21698 (D. Mass. June 5, 1998), *vacated on other grounds*, 167 F.3d 735 (1st Cir. 1999) ...........................................6

*In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99 (D.R.I. 1996) ..............................7, 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)............6, 15

*In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003).......................................................................................................7

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002).........................23

*In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) ............................................................................................................6

*In re Merry-Go Round Enters., Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) ....................................8

*In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist LEXIS 23238 (D.D.C. Oct. 23, 1998) ..............................................................................................................17

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995).........................................7

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998)..................10

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ....................................6, 7

*In re Revco Litig.*, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 5, 1992)...............................24

*In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001)........................................14

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)...........................23

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995)................................................................................... passim

*In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 13, 2001) ............7, 20

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .................................................................................................................19

*Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992) .................................................................10

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679 (M.D. Ala. 1988)...........................5

*MCI Commc'ns Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) ...................19

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993)................................6

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997)...............................................24

*Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995) ...............................................19

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).........................6

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) ..........................................................5

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ...........................................6

*Trustees v. Greenough*, 105 U.S. 527 (1882) ......................................................................5

*United States Football League v. National Football League*, 644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988)............................................................18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...............................................8

### OTHER AUTHORITIES

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, *Recent Trends III: What Explains Settlements in Shareholder Class Actions?* (NERA, June 1995)...............8

MANUAL FOR COMPLEX LITIGATION § 14.121...........................................................................8

MANUAL FOR COMPLEX LITIGATION § 14.122 ..........................................................................9

001534-16  444062 V1

# I.     INTRODUCTION

The Track Two Settlement Agreement provides for Track Two Defendants[1] to pay a total of $125 million to settle claims of all Consumer Class Members, all TPP Class Members and the claims of all Independent Settling Health Plans ("ISHPs").  The Settlement provides real, immediate, and substantial cash benefits for each Class Member who submits a valid claim. Consumer Class Members are eligible to receive up to triple their damages for payments made for Class A drugs (Anzemet, Aranesp, Epogen, Ferrlecit, InFed, Neulasta, and Neupogen) the drugs driving most of the Classes damages, and single damages for the remaining Class B drugs (primarily multisource drugs).

Class Counsel now seek an award of attorneys' fees and expenses and compensation to the class representatives in association with the Track Two Settlement.  Class Counsel respectfully request that the Court approve a combined fee and cost award of $37,500,000.00, to be paid from the settlement funds.  This represents 30 percent of the total $125 million settlement amount.

Class Counsel also request that the Court approve compensation for the Class Representatives in the total amount of $17,160.00 at $100 per hour for the time that each Representative spent providing documents and testimony in connection with this case.  Like the attorneys' fees and expenses, these amounts will be paid from the settlement funds.

The requested attorneys' fee and cost award is reasonable in light not only of the excellent results achieved for the Classes but also the risks involved in undertaking this unique and highly complex matter and the immense effort required in litigating the claims.  From its

---

[1] Track Two Defendants are Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C.

inception, this case has been intensely fought, as Track Two Defendants, like Track One Defendants, challenged discovery and class certification.  The parties challenged each other virtually every step of the way until settlement was reached.  Litigating this case has required immense time, energy and resources from Class Counsel.  Furthermore, as the Court is well aware, the claims involve extremely complex and challenging issues of fact and law.

Class Counsel faced considerable risk in proceeding on a wholly contingent-fee basis. Class Counsel have foregone other opportunities, devoting their time to this matter instead of others.  To date, Class Counsel have been awarded compensation for three settlements in the nearly ten years this action has been pending:  $21,615,000 out of the proceeds of the GSK settlement, $8,580,000 in connection with the AstraZeneca Class 1 Settlement, and $30,900,000 in connection with the Astrazeneca Class 2/3 Settlement, for a total of $61,095,000.  A fee request in connection with the BMS Settlement is pending.  For the entire AWP litigation against all Defendants from the inception of this case in 2001 through March 31, 2011, Plaintiffs' counsel have accumulated a total lodestar of $72,190,840 and incurred expenses totaling $9,417,783,[2] for a total case "investment" of $81,608,623.[3]  If the Court grants the present fee request of $37,500,000, Plaintiffs' counsel will recover their investment in these actions as well as a modest multiplier on their time.

---

[2] The Declaration of Marc H. Edelson In Support Of Lead Class Counsel's Motion For Award of Attorneys' Fees And Costs in Association with the Track Two Settlements ("Edelson Decl."), submitted herewith, sets forth the breakdown of total unaudited attorney hours, fees and expenses incurred from inception through December 31, 2010.  Class Counsel will provide back-up for all attorneys' fees and expenses sought for reimbursement, if the Court wishes.  We also note that it is possible that we have not received complete information from all counsel and that, consequently, the lodestar information attached to the Edelson Declaration may change.  Nonetheless, we believe that it is a reasonable approximation of the hours and expenses incurred by counsel through December 31, 2010.  Edelson Decl., ¶ 9.

[3] As the Court is aware, the MDL includes multiple Defendants in two separate tracks, and this Settlement resolves claims against Track Two Defendants.  Due to the nature of the allegations, it is not possible to attribute each attorney hour or particular expenditure to litigation against a particular Defendant.  Some items could be allocated to specific Defendants, but many more – for example discovery from third parties and research on particular legal or factual issues that apply to all Defendants – cannot be separately attributed to a particular Defendant.

The table below sets forth each AWP class settlement (both actual and anticipated), the actual fees awarded to date in the AWP class actions, and projected fee awards if the Court grants the anticipated requests.  As shown, estimated fees for all AWP class action settlements could total $104,295,000.

| Settlement Award | Amount of Actual/Projected Fee and Cost Awards | Awards as a Percent of Settlement Value |
|---|---|---|
| GSK Global Settlement (approved) | $ 21,615,000 | 33⅓% |
| AstraZeneca Class 1 Settlement (approved) | 8,580,000 | 30% |
| AstraZeneca Class 2/3 (approved) | 30,900,000 | 30% |
| BMS Global Settlement (request pending) | 5,700,000 | 30% |
| Track 2 Global Settlement (requested here) | 37,500,000 | 30% |
| **Total** | **$ 104,295,000** | |

The impact of folding expenses into a percentage fee award is quite significant and should not be overlooked.  Because the requested fee awards ***include*** expense reimbursements, the net fee percentage ultimately awarded by the Court for all AWP settlements will be approximately 11.5% lower given that expenses constitute roughly 11.5% of counsel's total $81,608,623 "investment" in the case.  ***Thus, the "net" fee awards requested will amount to less than 19 percent once the effect of including expenses is considered***.

A total projected fee and cost award of $104,295,000 modestly exceeds Plaintiffs' counsels' collective lodestar of $72,190,840 as of March 31, 2011, resulting in a small and very reasonable multiplier of 1.45, even though the overall results achieved in the AWP litigation should warrant a larger multiplier.  If Plaintiffs' counsels' collective expenses of $9,417,783 are included in the analysis, the multiplier drops to 1.28.  These multiplier cross-checks should assure the Court that counsel's overall compensation for all settlements is fair and reasonable.

The results in this complex litigation and the effort required well support the requested attorneys' fee and expense award here, which is justified by relevant factors considered by courts

in this Circuit and others, is in line with the fees that Class Counsel could have obtained at

arm's-length in the open market, and, when added to prior and anticipated fee awards, will result

in reasonable overall compensation for Plaintiffs' counsels' substantial efforts in litigating and

resolving all AWP class actions pending before this Court.  Class Counsel respectfully request

that the Court grant this petition.

## II.    HISTORY OF THE LITIGATION

The Court is well acquainted with the history of this complex case and the unique

challenges that Class Counsel have faced in representing their clients and the Classes against a

array of sophisticated and well-represented Defendants.  Rather than burden the Court with

additional pages recounting that history here, we respectfully refer the Court to the Declaration

of Steve W. Berman In Support of Lead Class Counsel's Memorandum of Law in Support of

Motion for Attorneys' Fees and Costs and Compensation to the Class Representatives in

Association with the Track Two Settlement (the "Berman Decl."), which discusses in some

detail the history of this case.

## III.    THE COURT SHOULD APPROVE THE FEE PETITION
## AS FAIR AND REASONABLE

**A.    Class Counsel Are Entitled To Compensation Based Upon The Benefits Created By The Litigation**

Courts have long recognized that a lawyer who recovers a "common fund" is entitled to

reasonable attorney fees from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

(1980); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56

F.3d 295, 305 n.6 (1st Cir. 1995) ("[t]he common fund doctrine is founded on the equitable

principle that those who have profited from litigation should share its costs"); *In re*

*Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in

creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also

to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax").  "The 'common fund' doctrine is designed to spread the costs of litigation among all the beneficiaries of an identifiable fund over which a court can exercise legitimate control, in effect guarding against the unjust enrichment of passive beneficiaries at the expense of the active beneficiary."  *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 402 (D.C. Cir. 1986).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and promote private enforcement of, and compliance with, various RICO and consumer protection laws.  Moreover, awards of attorney fees help to ensure adequate enforcement of class members' legal rights.  "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."  *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).

**B.**      **The Percentage-Of-The-Fund Method Is Appropriate For Calculating Attorneys' Fees In This Circuit**

The Supreme Court has repeatedly held in cases involving the computation of a common fund fee award that it is appropriate for the fee to be determined as a percentage-of-the-fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the common fund doctrine … a reasonable fee is based on a percentage of the fund bestowed on the class"); *see also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-66 (1939); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532 (1882).  In a percentage fee award, the fee is measured by the benefit conferred upon the class.

The First Circuit has left it to the trial court's discretion as to whether to apply the lodestar or percentage-of-the-fund ("POF") method or a combination of the two to award

attorneys' fees. *In re Thirteen Appeals*, 56 F.3d at 308. In adopting what it termed this "malleable" approach, the court recognized that the POF is the prevailing method because it has distinct advantages in complex cases. For example, it is less burdensome to administer,[4] reduces the possibility of collateral disputes, enhances efficiency throughout the litigation, and better approximates the workings of the marketplace. *See In re Thirteen Appeals*, 56 F.3d at 307-08; *see also In re Fidelity/Micron*, 167 F.3d at 737.[5]

As a result, many district courts within the First Circuit have indicated their preference for the POF method over the lodestar method. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *9 (D. Mass. Aug. 17, 2005); *In re Fidelity/Micron Secs. Litig.*, 1998 U.S. Dist. LEXIS 21698 (D. Mass. June 5, 1998), *vacated on other grounds*, 167 F.3d 735 (1st Cir. 1999); *Branch v. FDIC*, No. 91-CV-13270, 1998 WL 151249, at *2-4 (D. Mass. Mar. 24, 1998); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)

---

[4] "Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." *Id*. at 307 (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

[5] The trend in this Circuit is consistent with the decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (4th ed. 2009) ("[T]he vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases."). In addition to this Circuit, at least nine other circuits – the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia – have accepted the POF method as an appropriate method for awarding attorneys' fees. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) ("[i]n common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered," and in prior cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993) (noting "the recent trend towards adoption of a percentage of the fund method," and permitting use of the "percentage of the fund method" in common fund cases); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (fee award should not be based on "individual hours," but rather on the percentage that counsel "would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 744-45 (11th Cir. 1991) (percentage method mandatory in common fund cases); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985).

(describing the method as determining whether the "total fee [is] reasonable when examined as a percentage of recovery"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998); *In re Fleet/Norstar Secs. Litig.*, 935 F. Supp. 99, 108 (D.R.I. 1996).

In this case in particular, where there are multiple Defendants and the Court is considering only the fee related to settlement of some Defendants, use of the POF method saves the Court and the parties from the near impossible task of allocating the particular hours of the many attorneys involved to a particular Defendant or group of Defendants. This Court has already used the POF approach in awarding fees associated with the GSK Settlement, the AstraZeneca Class 1 Settlement, and the AstraZeneca Class 2/3 Settlements.

**C.    The Requested Fee And Expense Award Is Fair And Reasonable As A Percentage Of The Benefits Achieved For The Class**

Courts have approved fee awards in common fund cases in the range of 25-45%. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (awarding class counsel $22,311,000 in fees or 33% of class fund of $67,000,000, plus a separate award of litigation expenses in the amount of $1,297,301); *In re Fleet/Norstar*, 935 F. Supp. at 109; *Conley*, 222 B.R. at 187; *In re Compact Disc*, 216 F.R.D. at 216 n.45; *Gaskill v. Gordon*, 160 F.3d 361, 363-64 (7th Cir. 1998) (affirming award of 38% of class action settlement fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement fund); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 11, 2003) (awarding fees of 33⅓% of $220 million common fund to Direct Purchaser Plaintiff's Class Counsel); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003) (awarding class counsel 30% of the common fund); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067, at *57 (D.D.C. July 13, 2001) (determining that

the one-third award was reasonable and granting class counsel fee petition in the amount of $123,188,032 plus interest, or approximately 34% of the total estimated settlement amount, in antitrust price fixing litigation); *In re Activision Sec. Litig.*, 723 F. Supp 1373, 1375 (N.D. Cal. 1989) (awarding a 32.8% fee and adopting a "policy of awarding approximately 30% of the fund as attorneys' fees in the ordinary case," as "well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable…").

In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002), the court included an exhaustive table of 34 cases generating revenues ranging from $54 million to $185 million, all of which generated fees of 30% or more, including the case at the high end of the scale (45%), the $185 million settlement in *In re Merry-Go Round Enters., Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000). *See also* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, *Recent Trends III:  What Explains Settlements in Shareholder Class Actions?* (NERA, June 1995) (finding that "[r]egardless of case size, fees average approximately 32 percent of the settlement"); *see also* MANUAL FOR COMPLEX LITIGATION § 14.121 ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund.").

The Court approved a 33⅓ percent fee and cost award in association with the GSK Settlement as well as a fee and cost award that amounted to 30 percent of the fund with respect to the AstraZeneca Class 1 Settlement, and 30 percent of the fund with respect to the AstraZeneca Class 2/3 Settlements.  In hearings and in its orders related to these settlements, the Court has recognized that the risks incurred by Class Counsel and the results achieved for the Class have warranted the fee awards:

> Well, I do think one-third is appropriate.  I might say that, for the record, I approved that in the other case [GSK].  I think this was an incredibly risky piece of litigation which was cutting-edge and no certainty of success.  The pharmaceutical companies have done a

> fabulous job defending it, and it was fought tooth and nail the
> entire way along with the best firms in the country.

May 1, 2008 Hearing Tr. at 24 (AstraZeneca Class 1 Settlement Hearing).

The instant request falls within the foregoing ranges of reasonableness.  The Settlement

Amount is $125 million, and the combined $37,500,000 fee and expense request is 30% of that

amount.

**D.    A Cross-Check With The Lodestar Confirms The Reasonableness Of The
       Requested Fee And Expense Award**

**1.     If the Court grants Counsel's Track Two fee request, Plaintiff's counsel will
        receive a very modest multiplier on their total case "investment."**

As noted, the First Circuit also provides the Court with the discretion to employ the

lodestar approach (reasonable hours spent times reasonable hourly rated, subject to a multiplier

or discount for special circumstances, plus reasonable disbursements) in combination with the

POF approach.  *In re Thirteen Appeals*, 56 F.3d at 307; *In re Compact Disc*, 216 F.R.D. at 215-

16; *see also* MANUAL FOR COMPLEX LITIGATION § 14.122 ("the lodestar is … useful as a cross-

check on the percentage method by estimating the number of hours spent on the litigation and the

hourly rate, using affidavits and other information provided by the fee applicant.  The total

lodestar estimate is then divided into the proposed fee calculated under the percentage method.

The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.").

The total lodestar accumulated by Plaintiffs' counsel as of March 31, 2011, is

$72,190,840.  Edelson Decl., ¶ 5.  Additionally, Class Counsel have expended $9,417,783 in

litigation related expenses.  Edelson Decl., ¶ 6.  Both numbers represent all effort and expenses

for all AWP class actions pending before this Court.  The lodestar calculation is based on each

law firm's historic rate (those in effect when the work was done, over the nearly ten years this

case has been pending).  Class Counsel are providing this historic rate calculation because it is

- 9 -

more conservative, even though the First Circuit has noted the appropriateness of calculating the lodestar on current hourly rates (*i.e.*, in this case, those in effect in 2011 at each firm) because of the delay in payment of the fees to the firms performing the work, as well as other factors.  *See Lipsett v. Blanco*, 975 F.2d 934, 942-43 (1st Cir. 1992).  Given this precedent, it would be appropriate to calculate the lodestar of all firms at current rates, which would yield a higher total lodestar.

To date, Class Counsel have been awarded compensation for three settlements in the ten years this action has been pending:  $21,615,000 out of the proceeds of the GSK settlement, $8,580,000 in connection with the AstraZeneca Class 1 Settlement and $30,900,000 in connection with the AstraZeneca Class 2/3 Settlement, for a total of $61,095,000.  If the Court awards the $37,500,000 requested here, Plaintiffs' counsel will recover their investment in the AWP class actions with a very modest multiplier.

> **2.    We cannot isolate time and expenses devoted specifically to the Track Two portion of the litigation or even to efforts limited to the claims of the Track Two Classes.**

In previous hearings, the Court has asked Class Counsel how time can be divided to isolate efforts related to specific Defendants.  This would be a daunting and monumental task. More than 250 attorneys have spent time working on this case for plaintiffs, a testament to the breathtaking scope and complexity of this litigation.  Indeed, attorneys and paralegals had collectively billed 223,789 hours as of March 31, 2011.  Edelson Decl., ¶ 5.  The sheer number of work hours underpinning the lodestar highlights how time-consuming and burdensome a detailed lodestar inquiry would be and demonstrates why the POF approach works best for this litigation.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 331 (3d Cir. 1998); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 108.  It is extremely difficult to apportion those hours by Defendant or to attribute a specific lodestar to Track Two Defendants given the

breadth of common issues and the number of tasks completed over the last ten years.  An attempt

to do so would involve a very time-consuming and expensive audit and even then may not result

in an accurate estimate.

In addressing multiple claims based on a core of common facts, the Supreme Court has

recognized that the focus should be placed on the overall relief provided:

> In other cases the plaintiff's claims for relief will involve a
> "common core of facts" or will be based on related legal theories.
> Much of counsel's time will be devoted generally to the litigation
> as a whole, making it difficult to divide the hours expended on a
> claim-by-claim basis.  Such a lawsuit cannot be viewed as a series
> of discrete claims.  Instead the district court should focus on the
> significance of the overall relief obtained by the plaintiff in relation
> to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorneys
> should recover a fully compensatory fee.

*Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

The same concept applies here to claims against multiple defendants where common

issues are inextricably intertwined.  An immense amount of work was done on common issues,

work that cannot be segregated from other aspects of the prosecution.  This work includes

researching and drafting complaints; working on issues related to the initial MDL motions; a

panoply of issues related to the use of AWP as a benchmark in the Medicare program and in the

private insurance market; legal research and drafting of briefs on joint motions to dismiss and

briefing associated with class certification; coordination with experts regarding class certification

issues; motions and discovery related to many third parties, including governmental

organizations, trade associations and the hundreds of insurers, pharmacies and other market

participants subpoenaed by Defendants (including Track Two Defendants).

This Court has previously recognized the difficulty in apportioning lodestar to specific

Defendants:  "A percentage-of-fund approach makes more sense because this multi-district

litigation has many moving parts with common issues and it would be too difficult to calculate a fair lodestar for this piece of the litigation." *Memorandum and Order Re: Requested Final Approval of the AstraZeneca Class 1 Settlement* (Dkt. No. 5624) at 4.

Because of the challenges outlined above, and because the fee amount requested is undoubtedly reasonable under the POF method, no effort was made to determine the precise amount of fees that would be specifically attributable to prosecuting the case on behalf of the Track Two Classes, which Class Counsel believe cannot be done.[6]  Given the "extremely broad" discretion that the Court has in evaluating an attorneys' fee and cost petition in class litigation, *In re Thirteen Appeals*, 56 F.3d at 309 (emphasis added), Class Counsel strongly believe that the foregoing lodestar and expense information suffices for purposes of a rough cross-check on the reasonableness of the POF fee and cost award.

**E.    The Fee Percentages Sought Ensure That Each Settlement Class Pays An Equitable Portion Of Attorneys' Fees And That A Reasonable Overall Multiplier Results For All Fees Awarded At the End Of The Case**

As Class Counsel have previously explained, their goal is to request approximately one-third of the value of each settlement in order to ensure that (i) the aggregate attorneys' fee award is, at the end of all settlements, in the "ballpark" of the one-third benchmark, and (ii) each settlement Class pays an equitable share of attorneys' fees.  We believe that this responds to the

---

[6] As with attempting to calculate a lodestar specific to the Track Two cases, splitting expenses that way is also very difficult to do given the existence of so many common issues.  Moreover, the very nature of the expenses themselves makes allocation by defendant extremely difficult.  Counsel did not track expenses by Defendant and, with some limited exceptions, we are unable to go back and re-assign expenses by Defendant.  These include expenses incurred for expert work, including the development of Dr. Rosenthal and Dr. Hartman's many reports; Court fees (including fees incurred for use of the Court's electronic filing system); subpoena costs; technology services, including maintaining and servicing computer stations for document review; mail and fax charges; computer research charges (*e.g.*, Lexis/Nexis); photocopy expenses; and some travel expenses.  All of the expenses incurred were reasonable and necessary for the prosecution of this litigation, even though they are not amenable to division by particular Defendant.  It may be possible to construct an expense allocation model taking into consideration reasonable assumptions based on the number of defendants, but this would be very time consuming and not necessary where the lodestar and expense estimate is used as a cross-check to the POF approach.

Court's frequently expressed concern that attorneys' fee awards remain reasonable across all settlements.

Comparing the actual and projected fee and cost recovery in this case against Plaintiffs' Counsel's collective lodestar accentuates the reasonableness of the percentage approach recommended by Class Counsel.  If the Court grants this Track Two fee requests, Plaintiffs' counsel will recover their collective lodestar plus a small multiplier.  The table below sets forth each AWP class settlement (both actual and anticipated), the actual fees awarded to date in the AWP class actions, and projected fee awards if the Court grants the Track Two fee requests.  As shown, estimated fees for all AWP class action settlements could total $104,295,000.

| Settlement Award | Amount of Actual/Projected Fee and Cost Awards | Awards as a Percent of Settlement Value |
|---|---|---|
| GSK Global Settlement (approved) | $ 21,615,000 | 33⅓% |
| AstraZeneca Class 1 Settlement (approved) | 8,580,000 | 30% |
| AstraZeneca Class 2/3 (approved) | 30,900,000 | 30% |
| BMS Global Settlement (request pending) | 5,700,000 | 30% |
| Track 2 Global Settlement (requested here) | 37,500,000 | 30% |
| **Total** | **$ 104,295,000** | |

The impact of folding expenses into a percentage fee award is quite significant and should not be overlooked.  Because the requested fee awards *include* expense reimbursements, the net fee percentage ultimately awarded by the Court for all AWP settlements will be approximately 11.5% lower given that expenses constitute roughly 11.5% of counsel's total $81,608,623 "investment" in the case.  Thus, the "net" fee awards requested will amount to less than 19 percent once the effect of including expenses is considered.

If the foregoing settlements are all approved, there will be no further settlements in the AWP MDL class actions and, therefore, no further fee petitions.  A total projected fee and cost award of $104,295,000 will modestly exceed Plaintiffs' counsels' collective lodestar of

$72,190,840 as of March 31, 2011, resulting in a small and very reasonable multiplier of **1.45**, even though the overall results achieved in the AWP litigation should warrant a larger multiplier. If Plaintiffs' counsels' collective expenses of $9,417,783 are included, total case "investment" rises to $81,608,623, and the multiplier drops to **1.28**. Lead Class Counsel will continue to incur additional time and expenses if and until all settlements are finalized. Given the multipliers approved in many other cases, Class Counsel's request here is more than reasonable. *See In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1415 (D. Wyo. 1998) (finding a multiplier of two to be reasonable based on these factors); *see also In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (concluding that, under the cross-check approach, a lodestar multiple in the range of 4.5 to 8.5 is "unquestionably reasonable"); *Third Circuit Task Force*, 108 F.R.D. at 265 (suggesting that courts consider the "contingency factor" in all common fund cases). ***Indeed, if the Court chooses to award lower amounts, a de minimis multiplier will likely result, which would be inconsistent with counsel's monumental efforts here and the very high percentage recoveries afforded to the Classes as a result of the settlements***.

An award of approximately 30 percent of the value of each settlement at each step along the way will lead to a reasonable, overall fee and cost award to Class Counsel. It will also further the First Circuit fee award guideposts of ease of administration, a reduction in the possibility of collateral disputes, enhanced efficiency throughout the litigation, and a better approximation of the workings of the marketplace. *In re Thirteen Appeals*, 56 F.3d at 307-08.

Moreover, the fees paid by each settlement class are proportional to the settlement amounts assignable to each settlement class, as the following table demonstrates:

001534-16  444062 V1

| Settlement | Settlement Amount | Percent of Total AWP Settlement Amounts | Actual/Projected Fee and Cost Awards | Percent of Total AWP Fees |
|---|---|---|---|---|
| GSK Global | $65,500,000 | 19.2 | $21,615,000 | 20.7 |
| Astra Class 1 | $28,600,000 | 8.4 | $8,580,000 | 8.2 |
| BMS Class 1 | $19,000,000 | 5.6 | $5,700,000 | 5.5 |
| Astra Class 2/3 | $103,000,000 | 30.2 | $30,900,000 | 29.6 |
| Track 2 Global | $125,000,000 | 36.6 | $37,500,000 | 36 |
| Total | $ 341,100,000 | | $ 104,295,000 | |

In other words, the Track Two fee award, if granted, will ultimately represent 36 percent of all fees awarded in the AWP litigation.  This is roughly commensurate with the value of the Track Two settlement as a percentage of all AWP settlement values:  36.6%.  This analysis demonstrates that no settlement class will shoulder a disproportionate share of attorneys' fees.

**F.    Various Other Factors Applied By This Circuit And Others Support Class Counsel's Request**

The First Circuit has not required that lower courts use a particular set of factors to determine the reasonableness of the fee request.  However, the Third Circuit Task Force Report approved certain factors to assist courts in this analysis.  Among other things, these factors include:  (i) the size of the fund created and the number of persons benefited; (ii) the skill and efficiency of the attorneys involved; (iii) the complexity and duration of the litigation; (iv) the risk of nonpayment; (v) the amount of time devoted to the case by plaintiffs' counsel; and (vi) the awards in similar cases.  *See Third Circuit Task Force*, 108 F.R.D. at 245; *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (applying factors); *In re GMC Pick-up Truck*, 55 F.3d at 819-22 (same).  The Second Circuit has adopted a similar list of factors:  the time and labor expended by Class Counsel, the complexities of the litigation, the risks borne by Class Counsel in litigating this case on a contingency fee basis, the quality of the representation provided, the fee request in relation to the settlement, public policy considerations

and the reaction of the Class to the settlement.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Applying these factors, the award for both fees and litigation expenses in this case is fair and reasonable.

### 1.      The size of the fund created and the number of people who benefit

The total fund eligible to be claimed is $125,000,000 and will benefit thousands of consumers and TPPs.  Notice of the Settlement was mailed directly to over 2 million Track Two Class 1 consumers and there have been three separate national publication notice programs aimed at notifying Consumer Class members of the settlement.  As of this date the Claims Administrator has received approximately 87,000 Class 1 consumer claims and 20,600 Class 3 consumer claims.  Over 1,000 TPPs have also filed claims in the Settlement.

### 2.      The time and labor expended by counsel

Class Counsel have been investigating and litigating this case intensely and thoroughly for nearly a decade.  Class Counsel have devoted considerable time, energy, and resources from the beginning of this case through discovery and motion practice, and ultimately settlement. From the very beginning, "Defendants mounted an aggressive and vigorous defense throughout the course of this litigation."  *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, at *46 (E.D. Pa. Jan. 4, 2001).  Indeed each Track Two Defendant still vigorously disputes that it engaged in any wrongful conduct or violation of law.

This litigation required an all-out effort by Class Counsel.  First, the motion practice in this case has in and of itself required enormous work, as the case raised many complex and difficult legal and factual issues.  This required Class Counsel to oppose more than one round of substantial motions to dismiss as well as class certification motions.  Second, discovery was extensive.  Class Counsel had to devote substantial energy and thousands of hours in obtaining,

inventorying, and examining millions of documents and data produced by Track Two

Defendants.  Even more time and effort was necessary to cull those documents and create a

useful database – an invaluable tool for identifying key issues and evidence for depositions and

possible trial.  Additionally**, Class Counsel conducted over 75 depositions of Track Two**

**Defendants current and former employees, including senior managers.  Berman Decl., ¶ 19**.

       Class Counsel also spent considerable time consulting with economic experts concerning

the economic impact of Defendants' scheme on the Class and the measure and amount of

damages to the Class.  *Id.* at ¶¶ 22.  And Class Counsel spent many hours researching and

briefing complex legal issues for more than one round of motions to dismiss and class

certification motions.  *Id.* at ¶¶ 10-13,21-23.  These "efforts in posturing this case for trial …

played a role in spurring the settlement [and] produced a substantial payout to the class." *In re*

*Newbridge Networks Sec. Litig.*, 1998 U.S. Dist LEXIS 23238, at *11 (D.D.C. Oct. 23, 1998).

       Throughout this entire process, Class Counsel have litigated this case with extreme

efficiency.  The bulk of the work was handled by a small number of experienced attorneys.

Assignments were allocated so that work was performed expeditiously, efficiently and in an

organized manner.  Review and repetition was avoided.

       Moreover, the significant investment of time required by this action necessarily precluded

Class Counsel from working on other matters.  Class Counsel expended hours and incurred

expenses in prosecuting this case, and were prepared to put at risk more time and money had the

Track Two litigation not settled.  *Id.* at ¶ 25.

       Based on all of the above factors, the fee and expense award requested by Class Counsel

is reasonable in light of the risk, quantity, and quality of work expended by Class Counsel over

nearly ten years.

###### 3.       The complexity and duration of the litigation

The complexity of the issues and the duration of the litigation support the award

requested.  Class actions alleging violations of RICO and fraud, particularly in the

pharmaceutical reimbursement context, are arguably the most complex class actions to prosecute

because the legal and factual issues are inherently complicated and uncertain.  In fact, in addition

to the legal issues involved in overcoming the Defendants' motions to dismiss, this case involved

some highly technical and complex issues with regard to pharmaceutical reimbursement systems,

pharmacy benefit manager contracting, health insurance, federal regulation, and preemption.

These legal issues required exhaustive research and briefing.

###### 4.       The risk of nonpayment

A determination of a fair fee must include consideration of the uncertain nature of the fee,

the wholly contingent outlay of large out-of-pocket sums by Plaintiffs' counsel, and the fact that

the risks of failure and nonpayment are extremely high.  Many cases recognize that attorneys'

risk is "perhaps the foremost factor" in determining an appropriate fee award.  *Goldberger*, 209

F.3d at 54 (citation omitted).  In *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D.

Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the court noted that:

> Generally, the contingency arrangement must be promoted to
> assure representation when a person could not otherwise afford the
> services of a lawyer…  A contingency fee arrangement often
> justifies an increase in the award of attorneys' fees.  This rule helps
> assure that the contingency fee arrangement endures.  If this
> 'bonus' methodology did not exist, very few lawyers could take on
> the representation of a class client given the investment of
> substantial time, effort, and money, especially in light of the risks
> of recovering nothing.  [*Id.* (citations omitted).]

The history of complex litigation is replete with cases in which plaintiffs succeeded at

trial on liability, but recovered no damages or very small damages at trial or after appeal.  *See*,

*e.g.*, *United States Football League v. National Football League*, 644 F. Supp. 1040, 1042

(S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Commc'ns Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983) (remanding antitrust judgment for new trial and damages); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (following two trips to the Court of Appeals and one to the U.S. Supreme Court, plaintiffs, the putative class, and their counsel recovered nothing), *vacated on other grounds*, 417 U.S. 156 (1974).

Indeed, when Class Counsel undertook representation of the Class, there were no assurances that any fees would ever be received. Class Counsel were aware that they would likely have to overcome the daunting difficulties, and would have to expend thousands of hours and millions of dollars to prosecute this case over an extended period of time before having even a possibility of recovering fees and expenses. Class Counsel alone bore the risk of the case being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal. Berman Decl., ¶¶ 29-31.

Because of the risk undertaken by Class Counsel, the requested fee award is reasonable.

## 5. The skill and efficiency of the attorneys involved

The experience, reputation, and ability of plaintiff's counsel has often been noted as a key factor in a court's consideration of counsel's fee request. *See*, *e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 n.3 (10th Cir. 1995). The Settlement here was not easily achieved. Negotiations were hard-fought and protracted. Each Track Two Defendant is represented by experienced and highly-regarded counsel, and they contested this litigation at every stage. Therefore, settlement negotiations required persistence, negotiating skill, and a

willingness to take this case to trial.  Class Counsel employed all of these, and obtained a settlement agreement.

## IV.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE FACTORED IN THE COURT'S CONSIDERATION OF THE AWARD

In addition to being entitled to reasonable attorneys' fees, it is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Secs. Litig.*, 167 F.3d at 737; *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067, at *67 (holding that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of … reasonable litigation expenses from that fund") (citations omitted).  "[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms." *In re Fidelity/Micron Secs. Litig.*, 167 F.3d at 737.

The expenses incurred in this litigation in the amount of $9,417,783 are described in the accompanying Edelson Declaration.  They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, computerized research and other services, deposition and transcript expenses, and travel expenses in connection with this litigation through March 31, 2011.  These expenses were reasonable and necessary for the prosecution of this litigation.  Class Counsel do not request a separate award for expenses and will subsume the expenses within the requested 30% award.  It bears repeating that folding expenses into a percentage fee award substantially decreases the net fee portion of the award given that expenses represent roughly 11.5% of counsel's total $81,608,623

"investment" in the case.  We project that the "net" fee awards requested for all AWP

settlements will amount to less than 19 percent once the effect of including expenses is

considered.

## V.   THE COURT SHOULD APPROVE COMPENSATION TO THE NAMED CLASS REPRESENTATIVES

Class Counsel request that the Court approve compensation to the named class

representatives.  As with the approval of compensation to named representatives in the GSK,

AstraZeneca Class 1 and the AstraZeneca Class 2/Class 3 settlements, and consistent with the

Court's previous instructions, the amount of compensation sought on behalf of named

representatives is based upon the hours expended in furtherance of the litigation.  Like the

combined attorneys' fees and expense award, these amounts would be paid from the common

fund.

In July 2007, in connection with the GSK Settlement, the named class representatives in

the GSK Settlement each submitted affidavits attesting to the time expended in furtherance of the

litigation.  *See* Co-Lead Counsel's Motion for Order Authorizing Compensation to Consumers

and Third-Party Payor Class Representatives (Dkt. No. 4509).  Each class representative in that

settlement included a tally of the time spent responding to document requests, conferring with

Class Counsel and preparing for depositions related to class certification and/or the merits of

Plaintiffs' claims, among other tasks necessary to fulfill their obligations as class representatives.

Rather than request that the full amount of time be compensated at the Court-suggested rate of

$100 per hour out of the GSK Settlement, for the TPP representatives, the Court made an award

of only 20% of the overall time expended on behalf of the litigation.  This was meant to allow for

the possibility that the remaining compensation would come from future settlement and/or

verdicts against the remaining Defendants.  Similar requests for compensation to class

representatives related to a portion of their work in the case were made in connection with the BMS Settlement and the AstraZeneca Settlements.

Class Counsel now seek a payment to class representative that will compensate them for the remainder of time incurred in furtherance of this litigation not covered in other settlements, as set forth in the table below.  (Class representatives that did not have time since the submission of a GSK Declaration have incorporated their Declarations submitted with that settlement by reference.  In addition, some class representatives have incorporated by reference the Declarations recently submitted in connection with the AstraZeneca Class 2/Class 3 Massachusetts and non-Massachusetts settlements and the BMS settlements.)

The one exception to the methodology for compensation to named representatives as outlined above is with respect to the recently added class representative for Class 1, Ms. Tonacchio. In July 2008, Class Plaintiffs sought and were granted permission to add Ms. Tonacchio as a Class 1 representative for purposes of the Track Two Settlement.  Due to her late addition as a class representative, Ms. Tonacchio has spent less time than other class representatives in furtherance of the litigation. She has, however, spent time procuring relevant medical records and providing information about drug payments to Class Counsel.  In recognition of these efforts, Class Counsel respectfully request that the Court award Ms. Tonacchio a one-time payment of $500 from the common fund.[7]

---

[7] Class Counsel may also seek to add additional consumer class representatives prior to final approval.  If the Court grants the request to add additional consumer class representatives, Class Counsel will supplement this request for compensation with respect to new class representatives.

| Declarant | Representative Of | Class | Hours Claimed | Compensation Requested |
|---|---|---|---|---|
| Muriel Tonacchio | | 1 | N/A | $500.00 |
| Daniel W. Ryan | United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund | 2&3 | 115.5 (from Ryan AZ Class 2/3 Declaration, Dkt No. 7348) | $2,310.00 |
| Glenn Randle | Sheet Metal Workers National Health Fund | 2 | 73.5 (Fund) + 26.5 (TPA) = 100 (from Randle AZ Class 2/3 Declaration, Dkt No. 7347) | $2,000.00 |
| Earl Seymour | Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust | 2 | 50.5 (from Corrected Seymour AZ Class 2/3 Declaration, Dkt No. 7404) | $1,010.00 |
| William Einhorn | Teamsters Health & Welfare Fund of Philadelphia and Vicinity | 3 | 127 (from Einhorn GSK Decl., Dkt No. 4509-7) | $2,540.00 |
| William A. Rhodes, Jr. | Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund | 3 | 65 (from Rhodes GSK Decl., Dkt No. 4509-8) | $1,300.00 |
| Arthur Steinburg | Philadelphia Federation of Teachers Health and Welfare Fund | 3 | 63 (from GSK Decl. Dkt No 4509-7) | $2,520.00 |
| Stephen Richman | Man-U Service Contract Trust Fund | 3 | 41.75 (from GSK Decl. Dkt No 4509-6) | $3,340.00 |
| Charles Hannaford | Pipefitters Local Union 537 Trust Funds | 3 | 41 (from GSK Decl. Dkt No 4509-10) | $1,640.00 |
| **TOTAL** | | | | **$ 17,160.00** |

Compensation to named plaintiffs is "not uncommon in class action litigation …

particularly where a common fund has been created for the benefit of the entire class.… [C]ourts

routinely approve incentive awards to compensate named plaintiffs for the services they provided

and the risks they incurred during the course of the class action litigation." *In re Lorazepam &

Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *see also In re Southern Ohio

Correctional Facility*, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997) (collecting cases in which

awards to named representatives approved).  A district court in the First Circuit has stated that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."  *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003). Further, in determining whether such compensation is warranted, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves.  *Bussie v. Allmerica Fin. Corp.*, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999).

The class representatives here actively and effectively fulfilled their obligations as representatives for the Class.  The Plaintiffs went above and beyond the call of duty in complying with demands placed upon them during this litigation.  Of crucial importance is the willingness of the Plaintiffs to bring this action in the first place.  Each of the named Plaintiffs also monitored the case and discussed its progress with counsel and consulted with counsel concerning the Settlement.

The requested compensation is more than justified, because of the named plaintiffs' active and prominent role in this litigation.  In such situations, courts have awarded compensation of the requested amount and larger.  *See*, *e.g.*, *In re Revco Litig.*, 1992 U.S. Dist. LEXIS 7852, at *22 (N.D. Ohio May 5, 1992) (awarding $200,000 to a named plaintiff); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, at 203-04 (S.D.N.Y. 1997) (awarding $85,000 to a named plaintiff); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding $55,000 each to two named plaintiffs); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (awarding $50,000 to the class representative).

## VI.    CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court approve the fee and expense petition and enter an order awarding Class Counsel the attorneys' fees and expenses requested and the compensation for the Class Representatives.


DATED:  April 28, 2011

By    **/s/ Steve W. Berman**
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St., NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Edelson & Associates LLC
45 West Court Street
Doylestown, PA  18901
Telephone:  (215) 230-8043
Facsimile:  (215) 230-8735

**CLASS COUNSEL**

001534-16  444062 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on April 28, 2011, I caused copies of **LEAD CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS AND COMPENSATION TO THE CLASS REPRESENTATIVES IN ASSOCIATION WITH THE TRACK TWO SETTLEMENT**, to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

  /s/ Steve W. Berman
Steve W. Berman

001534-16 444062 V1