## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | Master Civil No. 01-cv-12257 |
| | MDL No. 1456 |
| THIS DOCUMENT RELATES TO ASTRAZENECA CLASS 1 | Judge Patti B. Saris |

## CLASS COUNSEL'S MOTION TO DISTRIBUTE REMAINING ASTRAZENECA CLASS 1 SETTLEMENT FUNDS TO *CY PRES* RECIPIENTS

Class Counsel respectfully moves this Court for an order authorizing distribution of the remaining funds from the AstraZeneca Class 1settlement to *cy pres* recipients.  AstraZeneca reviewed this Motion before filing and does not oppose the relief requested.

On March 22, 2011, this Court entered an order authorizing the distribution of a total of $2.8 million to ZERO – The Project to End Prostate Cancer to provide mobile prostate cancer testing and to Cancer*Care* to fund its Transportation Assistance Program for people with cancer. *See* Dkt No. 7473.  AstraZeneca has confirmed that those funds have been distributed.

In addition, pursuant to this Court's March 22 Order, certain late-filed claims have been paid and Class Counsel have used an in-house investigator to locate relatives and next-of-kin for Class members with outstanding settlement checks.  That effort has resulted in an additional distribution of Settlement funds to Class members.

There is now approximately $1.4 million remaining to be distributed.  Class Counsel therefore ask that this Court enter an order authorizing distribution of those funds to the American Cancer Society ("ACS") to be used as follows:  (1) $500,000 for the Health Insurance Assistance Service ("HIAS") to expand its services designed to help cancer patients navigate health insurance issues; (2) $200,000 for Man to Man, a nationwide prostate education program,

- 1 -

to update its Internet materials designed to assist prostate cancer patients and to provide more outreach to men at high risk of prostate cancer; and (3) the remaining amount to solicit participants for the Cancer Prevention Study 3, an important multi-decade study of 500,000 individuals.

### A.       The Class 1 AstraZeneca Settlement

1.       On December 19, 2008, this Court granted final approval of Class 1 Plaintiffs' settlement with Defendant AstraZeneca Pharmaceuticals, LP ("AstraZeneca").  Dkt. No. 5802. The Settlement provides that AstraZeneca pay authorized claims up to $24 million to Class members who took Zoladex®, a drug used primarily in the treatment of prostate cancer.  Under the terms of the Settlement, all Class members who made valid claims received *triple* their damages.

2.       The Settlement also contains a provision that provides that if $10 million or less of the Settlement Amount remains after all authorized claims of Class Members are paid, AstraZeneca will pay the remaining amount to "mutually acceptable charitable organizations funding cancer research or patient care."  *See* Settlement Agreement and Release of AstraZeneca, Dkt No. 4227, ¶ 5.  After the Court ordered the Parties to amend the Agreement to pay Class Members treble their damages, the Settlement Agreement was amended to require AstraZeneca to pay the difference between the amount of the Original Charitable Payment and the aggregate value of all (trebled) Heartland and Non-Heartland allocations to Class Members to *cy pres*.  Second Amendment to Settlement Agreement and Release of AstraZeneca, Dkt No. 5774, ¶ 4(c).  On November 19, 2009, the First Circuit Court of Appeals affirmed this Court's final approval of the Settlement in all respects.  *In re Pharm. Indus. Average Wholesale Price Litig*., 588 F.3d 24 (1st Cir. 2009).

**B.      Settlement Distributions**

3.      To date, the Court-appointed Claims Administrator has distributed $19,286,707.23 of the Settlement funds to 8,636 Class members.  *See* Declaration of Ryan Walter Regarding Distribution of Class 1 AstraZeneca Settlement Funds ("Walter Decl.") ¶ 3, attached as Ex. A.  In addition, pursuant to this Court's March 22 order, the Claims Administrator has paid 14 late filed claims totaling $53,994.18.  Walter Decl. ¶ 4.

4.      Also pursuant to this Court's March 22 Order, Class Counsel utilized an in-house investigator to attempt to locate relatives or next-of-kin for all Class members with outstanding checks that exceeded $1,500.  All-in-all, the investigator searched for relatives or next-of-kin for 145 Class members.  The Claims Administrator then contacted these relatives and next-of-kin and will shortly distribute an additional $133,184.12 to 28 newly-found relatives or heirs of Class members.  Walter Decl. ¶¶ 6, 7.

5.      The Claims Administrator has also issued numerous checks to claimants who have not cashed them.  The Claims Administrator has made multiple attempts to encourage those claimants to cash their checks, including letters, phone calls and re-issuing checks.  Despite those efforts, 237 claimants have still not cashed their checks.  Walter Decl. ¶ 7.

6.      In light of the significant efforts that have been taken to both reach all claimants and to encourage those who have failed to cash their checks, Class Counsel believe it is now appropriate to give all remaining unclaimed funds, which total between $546,113 and $737,448, to *cy pres* recipients.

7.  In addition to the aforementioned funds, pursuant to the Settlement Agreement, there is approximately $733,099 in funds originally designated as *cy pres* under the Settlement Agreement remaining to be distributed to *cy pres* recipients.  Walter Decl. ¶ 8.

8.      Therefore, the Claims Administrator estimates that there will be between
$1,279,212 and $1,470,547 to be distributed to *cy pres* recipients. Walter Decl. ¶ 9.  The variable
is the amount of the checks issued to late filed claimants and newly found relatives, some portion
of which, based on prior experience, may not be cashed.  Class Counsel respectfully submit that
any such funds that are not cashed by August 15, 2011 (well beyond the 60 day stale date of
those checks) should be distributed to *cy pres* recipients.

### C.     Proposal to Distribute Remaining Settlement Fund to American Cancer Society

9.      Class Counsel therefore propose that this Court enter an order authorizing the
distribution of the remaining settlement and *cy pres* funds to the American Cancer Society.  ACS
will use the funds as follows:  (1) $500,000 for the Health Insurance Assistance Service
("HIAS") to expand its services designed to help cancer patients navigate insurance issues;
(2) $200,000 for Man to Man, a nationwide prostate education program, to update its Internet
materials designed to assist prostate cancer patients; and (3) the remaining amount, estimated to
be between $579,212 and $770,547, to recruit participants for the Cancer Prevention Study 3.
Providing funding to American Cancer Society for these programs is fully consistent with the
Settlement Agreement, which provides that remaining settlement funds be distributed to
"charitable organizations funding cancer research or patient care" agreed to by the Parties.
Furthermore, doing so will provide substantial benefits to members of the Class who suffer from
prostate cancer and other types of cancer.[1]  Each of the proposed *cy pres* recipients are discussed
in detail below.

---

[1] As the Court will recall, AstraZeneca's drug Zoladex was used primarily, but not exclusively, for treating men with prostate cancer.

### 1.      Health Insurance Assistance Service ("HIAS")

10.      Class Counsel propose to give $500,000 to the American Cancer Society to fund its Health Insurance Assistance Service ("HIAS").  HIAS assists cancer patients who are having trouble navigating the health care system by providing consistent and unbiased information about available insurance options.  *See* ACS Proposal, attached as Ex. B.  ACS has found that cancer patients in particular often find the insurance system a burden they cannot bear, particularly given the impact of the disease on their lives.  In addition, many patients face insurance adequacy, availability and affordability issues that either leave them without the appropriate treatment for their cancer or burden them with insurmountable health care related debt.  HIAS also works with un-insured cancer patients to help them find any health insurance coverage which might be available to them.  Providing information about insurance resources helps cancer patients ensure they are exploring all options available to them.  *Id.*

11.      Specifically, HIAS runs a National Cancer Information Center to handle inquiries about the availability of insurance coverage and other options designed to assist cancer patients. *Id.* at p. 2.  The Center is a free resource that connects cancer patients with health insurance specialists who work to address their needs.  *Id.*  In 2010, HIAS provided services to 27,000 cancer patients and family members.  *Id.*

12.      In addition, the information compiled by the HIAS Center helps ACS to document access problems faced by cancer patients.  These problems are communicated by ACS to policy makers in an attempt to develop legislative and policy-based solutions.  *Id.*

13.      The proposed $500,000 in *cy pres* funds would enable ACS to continue to fund the HIAS Center operations, to expand resources for new population groups, translate HIAS

materials into more languages (initially Spanish) and recruit multi-lingual speaking members to the HIAS team. A detailed breakdown of how HIAS will spend its award is on p. 1 of Ex. B.

### 2.    Man to Man

14.    Class Counsel further propose to give $200,000 to ACS for its Man to Man program and a companion program, "Let's Talk About It", targeted specifically at African-American men. Man to Man provides information and support for men who have been diagnosed and/or treated for prostate cancer and their partners. Man to Man's Proposal and a portion of the Let's Talk About it Program Guide are attached as Ex. C. The information Man to Man disseminates enables men to make informed choices about their treatment and empower them to advocate on their own behalf in dealing with care providers. The program also provides men and their partners with an emotional support in dealing with their diagnosis, making decisions and coping with the side effects of treatment. *Id*. at p. 1. This successful program has been in existence for over 20 years and has helped thousands of men with prostate cancer.[2]

15.    The Let's Talk About It Program is an effort by ACS, through Man to Man, to focus on African American men. This group has a high incidence of prostate cancer but has historically been reluctant to seek treatment or even testing. *See* Ex. C, p. 3 of Let's Talk About It Program Guide. The Let's Talk About It Program will provide much needed awareness and education for African-American men.

16.    The Settlement Funds provided to ACS for Man to Man would be used to update materials, improve delivery of the programs and to increase dissemination of these programs. Specifically, ACS wants to create a web-based resource for volunteer recruitment, training and support, while updating all medical information and consumer education materials to be

---

[2] More detail on the Man to Man program can be found on the ACS website at http://www.cancer.org/Treatment/SupportProgramsServices/man-to-man

available on-line.  A detailed description of how Man to Man proposes to use its *cy pres* award is on p. 1 of Ex. C.

### 3.    Cancer Prevention Study 3 (CPS3)

17.    Finally, Class Counsel propose to give the remaining Settlement funds, estimated to be between $579,212 and $770,547, to ACS to help find volunteers to participate in the Cancer Prevention Study 3 (CPS3).  The CPS3 is a long-term (30 year) national cancer research study of 500,000 people designed to understand the factors (lifestyle, environmental, and genetic) that cause or prevent cancer.[3]  *See* CPS3 Proposal attached as Ex. D.  Even though CPS3 itself is long-term, the *cy pres* funds will be spent immediately as part of ACS' efforts to enroll study participants.

18.    Specifically, the Settlement funds would enable ACS to print recruitment materials, provide manpower for recruitment and administer laboratory tests to determine eligibility for participation in the study.  *Se*e Ex. D, at p. 2.   As detailed in the proposal, the average cost to bring a volunteer into the study is $77, and ACS hopes to recruit 16,000 volunteers in the summer of 2011.  Even a *cy pres* contribution of over $700,000 will cover only fraction of ACS' costs to implant the important CPS 3 study

19.    Because Class Counsel do not yet have the final number that will be distributed to ACS for the CPS3 study, Class Counsel will submit a status report to the Court describing the final distribution of all Settlement funds.

---

[3] More detail on the CPS3 study can be found on the ACS website at http://www.cancer.org/Research/ResearchProgramsFunding/Epidemiology-CancerPreventionStudies/CancerPreventionStudy-3/index

WHEREFORE Class Counsel respectfully request that the Court enter an order authorizing the distribution of: (1) $500,000 for the Health Insurance Assistance Service ("HIAS") to expand its services designed to help cancer patients navigate insurance issues; (2) $200,000 for Man to Man, a nationwide prostate education program, to update its Internet materials designed to assist prostate cancer patients; (3) and the remaining amount to solicit participants for the Cancer Prevention Study 3. Class Counsel have submitted a proposed order with this Motion.

DATED: April 29, 2011

Respectfully submitted,

By: /s/ Steve W. Berman
   Thomas M. Sobol (BBO#471770)
   Edward Notargiacomo (BBO#567636)
   Hagens Berman Sobol Shapiro LLP
   55 Cambridge Parkway, Suite 301
   Cambridge, MA  02142
   Telephone: (617) 482-3700
   Facsimile: (617) 482-3003

   *Liaison Counsel*

   Steve W. Berman
   Sean R. Matt
   Hagens Berman Sobol Shapiro LLP
   1918 8th Avenue, Suite 3300
   Seattle, WA  98101
   Telephone: (206) 623-7292
   Facsimile: (206) 623-0594

   Jennifer Fountain Connolly
   Hagens Berman Sobol Shapiro LLP
   1629 K St. NW, Suite 300
   Washington, D.C.  20006
   Telephone:  (202) 355-6435
   Facsimile:  (202) 355-6455

001534-16 445201 V1

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Jeffrey L. Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

***Co-Lead Class Counsel***

001534-16 445201 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, ***CLASS COUNSEL'S MOTION TO DISTRIBUTE REMAINING ASTRAZENECA CLASS 1 SETTLEMENT FUNDS TO CY PRES RECIPIENTS*** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 29, 2011, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Steve W. Berman
Steve W. Berman