IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| ALL ACTIONS | |

### AMENDED[1] MOTION TO WITHDRAW MOTION TO ENFORCE SETTLEMENT WITH BMS FILED BY REV. DAVID AARONSON AND OBJECTION TO THE PROPOSED BMS SETTLEMENT

In light of certain changes to the consumer settlement as well as a private individual settlement reached between Class Counsel and Rev. David Aaronson, who had previously served as the court-appointed named class representative for the Class 1 consumer Sub-Class of Medicare beneficiaries who purchased drugs manufactured and sold by Bristol Meyers Squibb ("BMS"), undersigned individual counsel for Rev. Aaronson hereby moves to withdraw the Motion to Enforce Settlement with BMS and the objection to the proposed BMS settlement, and in support thereof avers as follows:

1.  Pursuant to the Court's January 30, 2006 "Consolidated Order re: Motion for Class Certification," the Aaronsons [Sue Ruth (deceased) and Reverend David] were appointed as the individual consumer class representatives for the certified nationwide sub-class of Medicare beneficiaries who purchased BMS Subject Drugs.

2.  On June 25, 2007, weeks before the consumer class' claims were due to be tried in this Court, BMS and Class Counsel entered into a written Memorandum of Understanding

---

[1] The Motion to Withdraw filed yesterday, May 2, 2011, Dkt. No. 7529, has been amended herein to include a fully executed version of the Individual Settlement attached hereto. No other changes have been made.

("MOU") providing that BMS shall pay thirteen million dollars ($13,000,000) in settlement of the claims of the Nationwide Medicare Consumer Settlement Class.

3. Rev. Aaronson maintained that the MOU contained all the necessary material terms to constitute a valid and binding settlement agreement including, but not limited to, the amount of settlement and the terms of the release.

4. After the MOU was executed, the parties returned to mediation efforts with Professor Eric Green in another attempt to settle the claims of all putative classes - not just the Class 1 consumer claims that were the subject of the MOU. They ultimately settled all claims for $19 million. As a result of an allocation negotiation that did not involve Rev. Aaronson, consumers were allocated 23% of the net settlement proceeds (net of fees and costs), yielding an aggregate settlement figure of $4,370,000.00 for all consumers in Classes 1 and 3.

5. On February 16, 2010, Rev. Aaronson filed a Motion to Enforce Settlement with BMS seeking to have this Court enforce the original MOU which provided $13 million to satisfy the Class 1 consumer claims.

6. On November 12, 2010, Class Counsel and BMS filed a Joint Motion for Entry of an Order Granting Final Approval of the Class 2 and Class 3 Components of the BMS Settlement. Dkt. No. 7304.

7. On February 28, 2011, Rev. Aaronson filed an Objection to the Proposed Settlement with BMS. In that objection, Rev. Aaronson espoused his belief that he was the Court-appointed named class representative for the Class 1 Consumer Sub-Class of Medicare beneficiaries who purchased drugs manufactured and sold by BMS.

8.	On March 14, 2011, the parties filed a Joint Motion for Final Approval of the Class 1 Component of the BMS Settlement.  That Motion revealed that Rev. Aaronson would receive 8.81% of his total out of pocket expenditure for the BMS drugs in fulfillment of his claims.

9.	A Fairness Hearing was held on March 28, 2011 wherein the undersigned presented the objection of Rev. Aaronson to the proposed settlement.  At that hearing it was revealed to the undersigned that neither this Court nor Class Counsel believed that Rev. Aaronson was still a class representative.  The Court stated its belief that Rev. Aaronson had withdrawn as a class representative vis a vis the Declaration filed in August of 2007.  March 28, 2011 Tr. at 47:1:3 ("That's what I remember.  Now, it may be that we didn't cross the T and dot the I.  I deemed that a withdrawal."); *see also, id.* at 49:20-23, 52:25-53:4.

10.	In response to Rev. Aaronson's objections, the Court requested that Class Counsel attempt to "rebalance" the allocation between the consumers and the TPPs to provide double or treble damages to those consumers who had purchased BMS drugs during the "heartland" period of liability.  *See e.g. Id.* at 36:17-37:3; 56:14-17.  The Court also understandably expressed its frustration with the delay with which this settlement had been achieved and presented to the Court, and voiced its concern that any further delay would result in even more class members not being able to see the benefits of the settlement - a concern aptly felt by Rev. Aaronson who lost his wife Sue during the pendency of this case.  *Id.* at 75:12-20.

11.	Putting their differences aside, the undersigned and Class Counsel engaged in a series of communications, including private settlement negotiations facilitated by Professor Green, to come to a just and efficient resolution of the BMS case.  Class Counsel presented a second plan of distribution that relied on a damage-based model of distribution - as opposed to the

original plan which provided pro rata distribution based on total out of pocket expenditure - and would have required the TPPs to forego certain sums of money to allow for the payment of multiple damages to those consumers affected by the heartland period.  Under this methodology, while Rev. Aaronson would have lost some money from his Paraplatin claim, he would have gained money on his Taxol claim.

12.     In the end, the parties negotiated a favorable resolution for both Rev. Aaronson and the consumer Class that improved their recoveries in this settlement.  (The terms of the individual settlement reached with Rev. Aaronson are set forth in the document signed by counsel  and attached as an Exhibit hereto.)("Individual Settlement").

13.     Importantly, the Individual Settlement acknowledges Rev. Aaronson's withdrawal as class representative effective as of August 5, 2007.[2]

14.     The Individual Settlement provides that Rev. Aaronson will receive approximately the same amount of compensation that he would have been entitled to individually if the terms of the MOU were enforced.  In exchange for such consideration, Rev. Aaronson has committed to file the instant pleading seeking to have both his Motion to Enforce the MOU as well as his objection to the proposed settlement withdrawn with this Court's approval.  Further, should this Court approve the proposed class settlement on the terms negotiated, Rev. Aaronson has agreed not to appeal such Order.  Most importantly, it is the sincere hope of both Rev. Aaronson and his undersigned counsel that the improved Class settlement and Individual Settlement will clear the

---

[2]     Accordingly, Rev. Aaronson can no longer be deemed to maintain a fiduciary obligation to the certified nationwide sub-class of Medicare beneficiaries who purchased BMS Subject Drugs.

way for a speedy recovery to the thousands of the individuals whom the proposed settlement is designed to compensate.

15.     Pursuant to Federal Rules of Civil Procedure 23(e)(5) "[a]ny class member may object to the proposal [to settle] if it requires court approval under this subdivision (e); *the objection may be withdrawn only with the court's approval.*" (Emphasis added).  The consummation of a private settlement permits the Court to approve the withdrawal "without elaborate inquiry." *See* Explanatory Comments to the 2003 Amendments to Rule 23(e) ("If such objections are surrendered on terms that do not affect the class settlement or the objector's participation in the class settlement, the court often can approve withdrawal of the objections without elaborate inquiry.").

Accordingly, pursuant to Rule 23(e)(5), Rev. Aaronson, by and through his undersigned counsel, hereby respectfully requests, in light of the improved consumer Class settlement and the private settlement of his individual claim, that this Honorable Court enter an Order withdrawing both his objection to the proposed BMS settlement and his Motion to Enforce Settlement with BMS.

Respectfully submitted,

Dated: May 3, 2011

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr., Esquire
HAVILAND HUGHES, LLC
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile:  (215)392-4400
*Counsel for Rev. David Aaronson*

**CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., Esquire, hereby certify that on, May 3, 2011, I filed the Amended Motion to Withdrawal Both the Objection to the Proposed BMS Settlement and the Motion to Enforce Settlement with BMS Filed by Rev. Aaronson with the Clerk of this Court and used the CM/ECF system to send notification of such filing to all registered person(s).

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr., Esquire
**HAVILAND HUGHES, LLC**
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile:  (215) 392-4400