## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | Judge Patti B. Saris |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO "CLASS COUNSEL'S EMERGENCY MOTION TO SEAL EXHIBIT B TO HAVILAND'S REPLY IN SUPPORT OF NOTICE REGARDING INVOLVEMENT OF HEALTH CARE FOR ALL IN TRACK 2 SETTLEMENT AND TO STRIKE HAVILAND'S REPLY"**

## I.      INTRODUCTION

This Memorandum of Law sets forth the legal standards for the sealing of records in this Circuit relevant to the Court's ruling on Class Counsel's Motion to Seal and Strike. Dkt. No. 7352. The request to seal is premised upon Class Counsel's claim that the email communications between counsel (attached as Exhibit "B" to the filing at Dkt. No. 7504) are protected by attorney-client and/or work product privileges.

Based on the law, it is improper to seal these communications as they do not relate to any confidential communications with clients or communications in anticipation of litigation. Class Counsel have failed to establish the legal requisites for sealing in this Circuit. Based on the facts, wherein Class Counsel have made material misrepresentations on the record about facts covered in the emails, they should not be permitted to invoke a court seal as a sword against truthful facts being set forth in the public record.

For these reasons, the Motion to Seal should be denied.

## II.     ARGUMENT

A.     **The Standards for Sealing of Public Records in the First Circuit Are Rigorous.**

The public has a presumptive right of access to judicial records.  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir. 1985).  *See also FTC v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 408 n.4 (1st Cir. 1987)(expressly finding that presumption applies to civil as well as criminal proceedings).  The right extends to materials on which a court relies in determining litigants' substantive rights, including materials considered in ruling on dispositive motions such as the summary judgment motions at issue here.  *See Anderson*, 805 F.2d at 8 (approving district court's protective order that allowed news media access to materials considered in connection with summary judgment motion). *See also In re Providence Journal Co., Inc.,* 293 F.3d 1, 9 (1st Cir. 2002) ("This presumptive right of access attaches to those materials 'which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication,'"quoting *FTC v. Standard Fin. Mgmt.,* 830 F.2d at 412-13).  The right derives from the long-held recognition that public access allows "the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'"  *FTC v. Standard Fin. Mgmt.,* 830 F.2d at 410 (quoting *Matter of Continental Illinois Securities Litig.,* 732 F.2d 1302, 1308 (7th Cir. 1984).

As articulated by Judge Easterbrook, in explaining his practice when faced with motions to seal:

> What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records.  The political branches of government claim legitimacy by election, judges by reason.  Any step that withdraws an element of the judicial

2

> process from public view makes the ensuing decision look more like fiat; this
> requires vigorous justification.

*In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992).  Though not absolute, the presumption is "strong

and sturdy....'Only the most compelling reasons can justify non-disclosure of judicial records.'"

*FTC v. Standard Fin. Mgmt.,* 830 F.2d at 410 (quoting *In re Knoxville News-Sentinel Co.*, 723

F.2d 470, 476 (6th Cir. 1983).  *See also Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir.

1993) (same).

When challenge is made to the protection of information, the opposing party must

establish that a document is properly held confidential.  *See Public Citizen v. Liggett Group, Inc.*,

858 F.2d 775, 789 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030 (1989) (blanket protective orders

that do not require good cause showing as to any particular document "are by nature overinclusive

and are, therefore, peculiarly subject to later modification"); *Franklin v. Parke-Davis*, 210 F.R.D.

257, 260-61 (D. Mass. 2002) (Saris, J.) (rejecting argument that umbrella protective order

satisfied good cause requirement  by obviating expense and need for document-by-document

review and related argument that defendants would be prejudiced by modification because they

had relied on order in making productions);[1] *see also, In re "Agent Orange" Prod. Liab. Litig.*,

104 F.R.D. 559, 571-72 (E.D.N.Y. 1985), *aff'd*, 821 F.2d 139 (2d Cir.), *cert. denied*, 484 U.S. 953

(1987) (court rejected "reliance" argument "because a permanent exception to the good cause

---

[1]     Defendants in *Franklin* had initially classified almost every document as confidential.  ThIS
Court concluded that this action belied defendants' claimed reliance on a provision of the umbrella
protective order that prohibited use of any discovery for any purpose other than prosecution of that
case.  *Franklin v. Parke-Davis*, 210 F.R.D. 257, 260 (D. Mass. 2002).  *See also, In re Bank One
Securities Litig.*, 222 F.R.D. 582, 588 (N.D. Ill. 2004) (Defendant's wholesale designation as
confidential of every document produced under agreed protective order did not justify maintaining
seal and did not obviate obligation to demonstrate good cause as to each document for which
defendant sought impoundment).

requirement for cases with voluminous documents would make Rule 26(c) meaningless. Defendants do not need such an exception; they may still make a good cause showing for those documents they claim are confidential"); *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 586 (N.D. Ill. 2004) ("Once a protective order is entered, a party must continue to show good cause for confidentiality when challenged").

Because of the presumption of access, a court should reassess a claim of confidentiality when challenge is made and should always be mindful that restraints on access must be narrowly tailored in light of the presumption.  *See Anderson*, 805 F.2d at 8 (finding consistent with public access and upholding district court's protective orders that limited further release of materials to news media only until jury was selected in high publicity case but allowed press access to materials considered in ruling on dispositive motions).  *See also, In re Krynicki*, 983 F.2d at 75 ("[i]nformation that is used at trial or otherwise becomes the basis of decision enters the public record").

Courts have been rigorous in requiring disclosure and rejecting improperly supported claims of good cause.  In *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304 (N.D. Cal. 2005), a drug product liability case, the court rejected confidentiality claims supported by a declaration, where the declaration failed to identify any specific prejudice or harm that would result from public access.  Though defendants asserted that the documents constituted confidential materials subject to protection of the stipulated protective order in that case, the court found no factual support for this conclusion: "Nowhere do they identify any specific secret or otherwise show the specific harm that will result from disclosure of each document." *Id.* at 308-09.  The court lifted the confidential designations: (1) of an internal memorandum addressing statistical information from

4

historical data related to the likelihood of adverse events, finding that it did not contain any

proprietary formulas or ideas for research; (2) a manufacturing investigation to resolve problems,

because it did not contain "plans for research" as argued by defendants but instead generally

summarized past research, without revealing proprietary formulas; (3) sales information that was

otherwise publicly available; (4) a draft of a letter submitted to the FDA designed to make

clinicians aware of potential adverse events, because the intent of the letter was to eventually

disseminate it to prescribers; (5) a letter from the FDA addressing the findings from a visit of an

FDA investigator that revealed deviations from regulatory requirements, concluding that the letter

might be adverse to defendants' litigation position but did not contain confidential or proprietary

or otherwise proprietary information; and (6) a letter from the FDA that found elements of

defendants' promotional materials and website to allegedly misrepresent the safety and

effectiveness of the drug, finding designation improper because the document concerned publicly

available information. *Id.* at 309-12.   In ruling on several of the documents, the court concluded

that passage of time, or staleness, also militated against finding information confidential. *Id.*

The Court in *Poliquin* also recognized that concerns about reputation and future litigation

are insufficient grounds for maintaining confidentiality. *Poliquin v. Garden Way, Inc.*, 989 F.2d

527, 533 (1st Cir. 1993).  The Court upheld the district court's refusal to seal interrogatory answers

or a video deposition used in court when the asserted good cause amounted to no more than "a

garden variety claim that the company's image aong customers will be damaged" and affirmed

unsealing of a video deposition where the  "disadvantages of disclosure relate to future litigation,

not the conduct of [defendant's] business."  989 F.2d at 533-34.  In ascertaining whether good

cause is shown, other courts similarly have distinguished between properly protected material,

release of which may effect competitive advantage, and matters raising  simply a litigation concern or potential embarrassment.  In *Republic of the Philippines v. Westinghouse*, Westinghouse sought continued protection of documents filed in support of summary judgment to dismiss claims that it had bribed the President of the Philippines to obtain an electrical power generation contract.  The Court of Appeals rejected Westinghouse's argument that its public image was at stake as insufficient grounds to maintain seal once the documents had been relied upon by the court in ruling on a dispositive motion.  949 F.2d at 663.

Even if it is assumed that Class Counsel can demonstrate good cause for maintaining impoundment for any particular email, which assumption is unfounded, they cannot sustain the burden to show that this confidentiality interest outweighs the right of access.  A finding that confidentiality may be maintained does not end the inquiry.  Rather, the Court must then evaluate whether the interest in secrecy outweighs the public interest in disclosure.  The party seeking protection bears the burden of making this showing.  *See Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 166 (3rd. Cir. 1993).  Even trade secrets do not get automatic protection when balanced against public interest.  *Id.*  (advisory committee's notes to 1970 amendments "explain that 'courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim of privacy against the need for disclosure'").  Circumstances weighing against confidentiality include information and issues important to the public.  *See, e.g., FTC v. Standard Fin. Mgmt.*, 830 F.2d at 412 (case involving a government agency and alleged deceptive trade practices causing consumer losses "patently" presented "matters of significant public concern" elevating the threshold showing for impoundment"); *Republic of the Philippines v. Westinghouse*, 949 F.2d at 664 (finding legitimate

6

public interest outweighing confidentiality claim and recognizing that civil matters that reflect

alleged fraud are of legitimate public interest); *In re "Agent Orange,"* 104 F.R.D. at 572 (gain in

public understanding about the nature of the issues in the litigation and contamination from dioxin

warranted disclosure of summary judgment documents).

**B.      The Motion to Seal and Remove Email Exhibits From the Record on Grounds of Privilege Should Be Denied.**

The attorney work-product doctrine was first established in *Hickman v. Taylor*, 329 U.S.

495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in Fed.R.Civ.P. Rule 26(b)(3) for civil

discovery.  The work product doctrine protects the integrity of the adversarial process by creating

a zone of privacy and protection for the attorney's preparatory work on a case. *See Hickman*, 329

U.S. at 510-11.  The doctrine safeguards the integrity of the adversarial process by protecting 1)

documents or other tangible things, 2) prepared in anticipation of litigation, 3) by or for a party, or

by or for a party's representative.  *City of Worcester v. HCA Management Co., Inc.*, 839 F.Supp.

86, 88 (D.Mass.1993) ( citing *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D.Mass.1988)). The work

product doctrine "does not exist to protect a confidential relationship, but rather to promote the

adversary system by safeguarding the fruits of an attorney's trial preparation from the *discovery*

attempts of the opponent." *In re Raytheon Securities Litigation*, 218 F.R.D. 354, 359 (D. Mass.

2003)(quoting *United States v. Amer. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980)(emphasis

added).  Thus, the work product doctrine is limited to issues regarding pre-trial discovery.  See

*Hickman v. Taylor*, 329 U.S. 495; *U.S. v. Nobles*, 422 U.S. 225, 243-51, (1975)(White J.

concuring);*U.S. ex rel Health Outcomes Technologies v. Hallmark Health System, Inc*., 349 F.

Supp. 2d 170, 174 (D. Mass. 2004); *U.S. ex rel Health Outcomes Technologies v. Hallmark*

*Health System, Inc.*, 349 F. Supp. 2d 170, 174 (D. Mass. 2004)(citing *United States ex rel*

*Goodstein v. McLaren Reg'l Med. Ctr.*, 2001 WL 30491259 at * 3 (E.D. Mich. 2001)( . . . the

work product doctrine is inapplicable here, as a discovery request is not at issue).

The work product privilege may be waived through disclosure. *In re Raytheon Securities*

*Litigation*, 218 F.R.D. at 359.   Specifically, the work product protection is waived if the

disclosure ". . . enable[s] an adversary to access to the information." *Bamberg v. KPMG, LLP*, 219

F.R.D. 33, 37 (D. Mass 2003)(quoting *Westinghouse Electric Corp. v. Republic of the Philippines*,

951 F.2d 1414, 1428 (3rd Cir. 1991)).  Further, the disclosure to one adversary waives the work-

product protection as against all other adversaries.  *Id*.  Thus ". . . a party who discloses

documents protected by the work-product doctrine may continue to assert the doctrine's protection

only when the disclosure furthers the doctrine's underlying goal.  *Id*.

The existence and extent of a waiver depends upon the following three factors:

(1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the

purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for

believing that the disclosed materials would be kept confidential, and (3) whether waiver of the

privilege in these circumstances would trench on any policy elements inherent in the privilege.

*In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (1st Cir.1988)

(protection waived by disclosure to SEC, a potential adversary, without any assurance of

confidentiality).

Here, there is no doubt that Class Counsel is adverse to the undersigned.  If the Court is to

make findings about the conduct of counsel in this case – as it has done with respect to the

undersigned – the it cannot permit the work product privilege to be invoked as a sword to strike from the record exculpatory evidence contradicting assertions of Class Counsel on the record.

The purpose of the work product doctrine as stated by the First Circuit is to give an attorney ". . . a zone of privacy with which to prepare his client's case and plan strategy, without undue influence." *Id* (*citing In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d at 1014. When disclosures are made to an adversary, the work product is no longer within a "zone of privacy" so such disclosures cannot . . "further the [work-product] doctrine's underlying goal. *Id* (quoting *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991)). That goal is not furthered by disclosure to an adversary. *Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 38 (D. Mass 2003); *Data General Corporation v. Grumman Systems Support Corporation,* 139 F.R.D. 556, 558 (D. Mass 1991); *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145, (D. Mass.. 1988).

As the court noted in *United States v. MIT*, "[i]n all events, it would take better reason than we have to depart from the prevailing rule that disclosure to an adversary, real or potential, forfeits work product protection." 129 F.3d 681, 687 (!st Cir. 1997).

The party invoking a recognized privilege has the burden of establishing not only the existence of that privilege, but also that the privilege was not waived. *In re Raytheon Securities Litigation*, 218 F.R.D. 354, 357 (D. Mass. 2003)(citing *United States v. Wilson*, 798 F.2d 509, 512-13 (1st Cir. 1986); *Colonial Gas Company v. Aetna Casualty & Surety Company*, 139 F.R.D. 269, 275 (D. Mass. 1991).

Here, Class Counsel have made no effort to demonstrate that any privilege applies to the referenced communications between counsel.

9

Moreover, the work-production doctrine does not apply here because counsel is attempting to assert the protection outside of a discovery issue.  The work product doctrine "does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the *discovery* attempts of the opponent."  *In re Raytheon Securities Litigation*, 218 F.R.D. 354, 359 (D. Mass. 2003)(quoting *United States v. Amer. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980)(emphasis added).  Thus, the work-product doctrine has been long viewed as a limitation on the ability of a party to obtain pretrial discovery. *See U.S. v. Nobles*, 422 U.S. 225, 243-51, (1975)(White J. concuring).

Since *Hickman*, Congress, the cases, and the commentators have uniformly continued to view the 'work product' doctrine solely as a limitation on pretrial discovery and not as a qualified evidentiary privilege.  See Fed. R. Civ. P. 26; *U.S. ex rel Health Outcomes Technologies v. Hallmark Health System, Inc.*, 349 F. Supp. 2d 170, 174 (D. Mass. 2004)(citing *United States ex rel Goodstein v. McLaren Reg'l Med. Ctr.*, 2001 WL 30491259 at * 3 (E.D. Mich. 2001)( . . . the work product doctrine is inapplicable here, as a discovery request is not at issue)); *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 348 (D. Mass. 1998)("As far as the Court can tell from the deposition transcripts, the work product doctrine, while cited by Plaintiff, is not at issue; the instant matter does not concern the discovery of documents or tangible things.").

Here, Class Counsel objects to the inclusion of emails in the record relating to material facts they have put in issue.  Their request for relief is misplaced.

The party invoking a recognized privilege has the burden of establishing not only the existence of that privilege, but also that the privilege was not waived.  *In re Raytheon Securities Litigation*, 218 F.R.D. 354, 357 (D. Mass. 2003)(citing United States v. Wilson, 798 F.2d 509,

512-13 (1st Cir. 1986); *Colonial Gas Company v. Aetna Casualty & Surety Company*, 139

F.R.D. 269, 275 (D. Mass. 1991).

Class Counsel's Emergency Motion assumes without demonstrating the existence of

confidentiality premised upon privilege.  Class Counsel have not met their burden of

establishing the existence of the privilege under the circumstances of this case.

**III.     CONCLUSION**

For the foregoing reasons, Class counsel's Motion to Seal should be denied.


Dated: May 3, 2011

Respectfully submitted,

_____/s/_____

Donald E. Haviland, Jr., Esquire

**HAVILAND HUGHES, LLC**

111 S. Independence Mall East

The Bourse, Suite 1000

Philadelphia, PA 19106

Telephone: (215) 609-4661

Facsimile:  (215)392-4400

11

## <u>CERTIFICATE OF SERVICE</u>

I, Donald E. Haviland, Jr., Esquire, hereby certify that on, May 3, 2011, I filed the

Memorandum of Law in Support of Opposition to "Class Counsel's Emergency Motion to Seal

Exhibit B to Haviland's Reply in Support of Notice Regarding Involvement of Health Care for

All in Track 2 Settlement and to Strike Haviland's Reply" with the Clerk of this Court and used

the CM/ECF system to send notification of such filing to all registered person(s).

          _____/s/_____
Donald E. Haviland, Jr., Esquire
**HAVILAND HUGHES, LLC**
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile:  (215) 392-4400