**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **In re Pharmaceutical Industry Average Wholesale Price Litig.** | ) ) ) ) | **MDL No. 1456 C.A. No. 01-CV-12257-PBS** |
| THIS DOCUMENT RELATES TO: TRACK TWO SETTLEMENT | ) ) ) ) | Judge Patti B. Saris |

**OBJECTION TO TRACK TWO SETTLEMENT AND ATTORNEY'S FEE
REQUEST AND NOTICE OF INTENTION
TO APPEAR AT FAIRNESS HEARING**

Class Members John and Connie Pentz of One Highland Road, East Stroudsburg, Pennsylvania 18301, and Corinna Connick of 12545 Ashton Trail, Chardon, OH 44024, hereby object to the proposed Track Two Settlement and the associated request for attorney's fees. Connie and John Pentz are Class 3 consumers who paid full price for Epogen at least once during the fall of 2007, without receiving any reimbursement from Medicare or other insurance. Corinna Connick is a Class 3 consumer who paid full price for Estradiol during the Class Period, without receiving reimbursement from Medicare or other insurance. The Pentzes and Connick intend to appear and argue at the fairness hearing scheduled for June 13, 2011 through their undersigned counsel.[1]

---

[1] The Pentzes and Ms. Connick objected to an earlier version of this settlement in 2009 on the grounds, *inter alia*, that the settlement improperly excluded consumers who paid the full price of their class drugs, and who were thus most harmed. Class Counsel has now remedied that omission, and the amended notice makes clear that full cash payors, like the Pentzes and Ms. Connick, are included in the settlement and eligible to file claims. Other defects in the settlement and fee request, however, remain, and have not been remedied.

I.    **The List of Settlement Drugs is Vague and Ambiguous,
and Does Not Permit Class Members to Determine Whether Their Drugs
Are Included in the Settlement.**

In 2009, Class Counsel claimed that Corinna Connick is not a class member because she paid the full price of the drug Climara, which is not specifically named in the list of Class A and B Drugs.  Climara is a brand name for a form of Estradiol, which *is* listed as a Class B Drug.

The list of Class Drugs appears to be a list of chemical names that are sold by various companies under different brand names.  Few of the Class Drugs would ever be listed on an invoice or doctor's receipt under their technical chemical names.  Instead, they would be identified by the name of the brand of that drug which the doctor administered or the pharmacy sold to the patient.  This means that the term "Estradiol," and most of the other chemical names listed as Class A and B Drugs, are undefined terms, and consumer class members will generally be unable to determine whether drugs that they purchased or were administered are included in the settlement.

It has been class counsel's position that the "CLASS MEMBERSHIP DRUG LIST", which is attached to the notice, includes only drugs that were "manufactured, marketed or sold" under the **exact name** that appears on the list.  Since most of the names on the list are chemical or generic names, class counsel is asserting that no drugs sold under a branded name (even though they were manufactured, marketed and sold by a defendant drug company) are covered by the settlement unless that specific brand name is also on the list.  This assertion by class counsel is troubling for many reasons.

There is only one document which controls the definition of the settlement class - the "**TRACK TWO SETTLEMENT AGREEMENT AND RELEASE**", which has

been agreed to by all of the numerous settling defendants.  The settlement agreement

contains an explicit definition of the non-Medicare consumer class ("Class Three"):

> All natural persons in the United States who made, or incurred an
> obligation to make, a non-Medicare Part B payment for a **class
> drug** manufactured, **marketed,** sold, or distributed by a released
> company ….   See settlement agreement, para. 1A, p. 5 (emphasis
> added).

In turn, a "class drug" is defined as:

> .. those drugs manufactured, **marketed**, sold, or distributed by a
> released company that are set forth in <u>Exhibit B</u>.  See settlement
> agreement, para. IIC, p. 7 (emphasis added).

"Released company" is defined in paragraph II (KK) (p. 12) by listing the name of

each of those companies.

Pursuant to the above definition of "class drug", Climara is included because (a) it

is "manufactured, marketed, sold, [and] distributed by a released company" (Bayer

Healthcare Pharmaceuticals); (b) Climara is nothing but a branded name for Estradiol;

and (c) Estradiol does appear on the list in Exhibit B.

It is very illogical and confusing to class members to employ a chemical or

generic name for a drug with the intent of excluding other drugs that are nothing but

branded names of the identical substance.  For example, Advil and Motrin are simply

brand names for ibuprofen, and a reasonable person would read the term "ibuprofen" to

comprise them.

Given the clear definitions in the settlement agreement that would include

the sale (and marketing) of a **branded** version of drugs on the list, Class Counsel seems

to be acting against the interests of their clients who bought branded versions

of any of these drugs.  This could include thousands, if not millions, of people.  Why

would class counsel attempt to exclude their own clients from their settlement?  The released companies presumably want them included in the settlement, so that they obtain releases from these persons.

Despite having had two years to address this ambiguity in the Settlement and Notice, Class Counsel have done nothing to clarify which drugs are included in the definition of "Class Drugs," despite the fact that it was their challenge to Climara that created the ambiguity in the first place.  Unless this issue is resolved and appropriate notice provided to the class, thousands of purchasers of branded drugs will fail to file claims to settlement funds to which they are entitled, because the brand name of the drug they purchased does not appear on the website's Drug List, but only its generic form.

## II.    ISHPs Got Paid First.

The Track Two Settlement favors institutional plaintiffs at the expense of consumers.  The ISHPs were paid $25.5 million in 2008, while consumers have not been paid for more than two years.  According to ¶¶ III. C. 1. and III. F. 3. of the T2SA, the ISHPs received a $25.5 million payment within twenty business days after this Court preliminarily approved the T2SA.  It appears that, even if this Court denies approval to the T2SA, the ISHPs are under no obligation to refund that money.

Consumers, on the other hand, will not receive their settlement payments until after the arrival of the Effective Date, ¶ III. G. 2. g., which does not occur until all potential appeals are finally concluded.  ¶ III. K.  Therefore, consumers may not receive their settlement benefits until a year or more after the date of the Final Approval Order, while the ISHPs have already received their settlement funds.  Even if there are no appeals, the ISHPs will have received their settlement payments three years before the

consumers do.  This preferential treatment is unfair and impermissible.  ISHPs should not have received preferential treatment under the settlement.

## III.     The Allocation Improperly Favors TPPs and ISHPs.

Consumers were inadequately represented in the allocation negotiations with the TPPs and ISHPs, who together were allocated 82.5% of the settlement, while the consumers will receive a mere 17.5%.  It is impossible to avoid the conclusion that this lopsided allocation that favors the institutional plaintiffs was the result of the fact that the institutional plaintiffs were more adequately represented by counsel of their own choosing, who were able to look out for their interests, while the consumers' interests were allegedly "represented" by attorneys who were merely assigned to be a proxy for the consumers, but who did not actually represent any.

Until recently, the only consumer class representative was HCFA.  HCFA has now withdrawn as the consumer class representative, leaving consumers with no adequate representation *vis a vis* the TPPs and ISHPs, and no one to answer for the allocation that resulted from their inadequate representation.  As pointed out by attorney Haviland in his recent filings, no actual consumer plaintiff had any participation in the allocation of the settlement fund.  If consumers had been adequately represented, they should have received at least 33% of the overall settlement fund, and possibly much more.  Consumers received 30% of the GSK settlement fund, and 33% of the *Relafen* settlement fund.  *See also, In re Synthroid Mktg. Litig.*, 110 F. Supp. 2d 676, 679 (N.D. Ill. 2000) (consumers were allocated 2/3 of a settlement fund in drug marketing fraud case, while TPPs received 1/3).

Objectors Pentz and Connick hereby adopt the filings of Named Consumer Plaintiffs and Donald Haviland in opposition to the proposed plan of allocation and the adequacy of consumer class representatives, including HCFA.  Specifically, Pentz and Connick adopt Documents 7527 and 7528, in addition to the previously filed objections to the plan of allocation.

Pentz and Connick contend that before this Court may approve the settlement, adequate consumer class representatives must be appointed, and the settlement allocation must be renegotiated by those consumer representatives.

IV.    **Attorney's Fees**

In return for the preferential payment referenced in §II above, the ISHPs agreed to give Class Counsel credit for the settlement payment that will be made to the ISHPs, even though the ISHPs are not part of this MDL, and the settlement of their claims requires no court approval.  See Class Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of the Track Two Settlement at p. 12 ("Because they are separately represented and are not class members, the ISHP group can provide a release to the Track Two Defendants without the need for Court approval or the time involved in providing notice.").  In other words, the only effect of including the ISHP settlement funds in the Track Two Settlement is to inflate Class Counsel's attorney's fees.

Class Counsel have requested attorney's fees and expenses of 30% of the $125 million settlement fund, or $37.5 million.  There is only one problem – Class Counsel does not represent the ISHPs, who will receive $51.8 million of the $125 million total, and, therefore, there is no basis for Class Counsel to request *any* portion of that $51.8

million under the common benefit doctrine.  The $51.8 million that will be paid to the

ISHPs is a detriment to Class Counsel's actual clients.

       At the 2009 deposition of Corinna Connick, Plaintiffs' counsel Jennifer Fountain

Connolly engaged in the following colloquy with Ms. Connick and her counsel Edward

Cochran:

| | |
|---|---|
| **Connolly:** | Do you have any understanding that class counsel represented those large ISHPs throughout the course of litigation? |
| **Connick:** | That – I do not believe that to be my understanding.  I believe they had their own attorneys. |
| **Connolly:** | Would that change your understanding of class counsel's entitlement to some of that fee if you knew that class counsel had represented some of these ISHPs throughout the course of the litigation? |
| **Connick:** | I would have to discuss that with my attorneys. |
| **Cochran:** | Couldn't that be a conflict of interest? |
| **Connolly:** | I don't think I'm the one under examination here. |
| **Cochran:** | No, I'm just saying your suggestion that you're representing the class and at the same time you're representing the ISHPs, that suggested that in the question to the witness.  I'm saying, how could that be?  Wouldn't that be a conflict of interest since they're fighting against each other for the same fund? |

*See* Connick Deposition Excerpt attached hereto as *Exhibit A*.

       In their Objection, the Pentzes and Ms. Connick argued that Class Counsel should

receive no portion of the $51.8 million of the settlement fund that was ceded to the

ISHPs, on the assumption that the ISHPs are essentially strangers to this litigation, and

should be treated similar to opt outs.  Ms. Connolly's suggestion that the ISHPs are not

simply separately-represented opt-outs but in fact former simultaneous clients of Class

Counsel along with the consumers and TPPs makes this fee objection even more

compelling.  If Class Counsel are paid fees on the portion of the money given away to the

ISHPs, and which as a result is no longer subject to this Court's jurisdiction, Class

Counsel will be rewarded for breaching its duty to one set of clients (consumers) in order

to benefit another set of clients (ISHPs).  The ISHPs and consumers are competing over the allocation of a limited fund of money ($125 million).  One set of lawyers cannot represent both groups of clients simultaneously, nor can Class Counsel resolve the conflict by withdrawing from representing the ISHPs at the allocation stage, and then conceding $51.8 million of the settlement to them.

The Pentz/Connick Objectors do not object to Class Counsel's receipt of fees from the ISHP portion of the settlement fund, so long as such payments are offset by a reduction in the fees taken from the consumers' settlement fund.   In other words, if Class Counsel receive 30% of the ISHP settlement fund, or $15.54 million, as fees, their fees from the consumer fund should be commensurately reduced by the same amount. Therefore, the maximum fee that Class Counsel may receive from the non-ISHP portion of the settlement fund is $6.46 million ($22 million - $15.54 million).  This is the only way to remedy Class Counsel's clear breach of fiduciary duty to the non-ISHP class members.  The ISHPs' willingness to pay Class Counsel 30% of their recovery indicates that Class Counsel clearly acted in the ISHPs' interests and against the interests of the consumers and other TPPs when agreeing to an allocation that gave $51.8 million of the overall recovery away to entities whose interests are adverse to the consumers.  Crediting the ISHP fees against the fees to be taken from the consumers and TPPs restores some of those improperly diverted funds to the consumers and TPPs.

To compensate Class Counsel based upon amounts that Class Counsel agreed to give away to non-Plaintiffs would have the perverse effect of rewarding Class Counsel for failing to maximize the recoveries of the consumers and TPPs in this action.  Class

Counsel had a duty to their clients to recover as much of the $125 million as possible. Their compensation should depend upon how successful they were in fulfilling that duty.

## CONCLUSION

For the foregoing reasons, Class 3 Consumer Plaintiffs and Objectors Connie and John Pentz and Corinna Connick request that this Court reject the proposed Track Two Settlement until and unless class counsel clarifies which branded drugs are included in the definition of "Class Drugs".  Objectors further request that this Court appoint an adequate consumer class representative to replace HCFA and require the settlement allocation to be renegotiated by the new consumer class representative, and award Class Counsel attorney's fees of no more than $6.46 million from the consumer and TPP portion of the settlement, treating any fees taken from the ISHP portion of the settlement as a credit against the percentage fee awarded on the non-ISHP portion of the settlement.

Dated:   May 16, 2011

Respectfully submitted,
Connie and John Pentz,
and Corinna Connick,
by their attorneys,


*/s/ John J. Pentz*
John J. Pentz, Esq.
MA Bar # 561907
2 Clock Tower Place, Suite 440
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (978) 405-5161
Clasaxn@earthlink.net

EDWARD COCHRAN
20030 Marchmont Road
Shaker Hts., OH   44122
(216) 751-5546
fax (216) 751-6630
edwardcochran@wowway.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on May 16, 2011 he efiled a true copy of the foregoing document via the ECF filing system of the District of Massachusetts, and as a result a copy of this document was served on every counsel of record.


*/s/ John J. Pentz*
John J. Pentz