UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>J&J CLASS 1 | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

**CLASS COUNSEL'S OPPOSITION TO HAVILAND'S MOTION TO VACATE,
OR, IN THE ALTERNATIVE, MODIFY THE COURT'S JUNE 22, 2010 ORDER**

# TABLE OF CONTENTS

PAGE

I.   BACKGROUND ...........................................................................................4

A.   The Withdrawing Plaintiffs Had Participated in the Class 1 Case against J&J Since 2005 ...............................................................4

B.   Haviland Knew His Clients Were Essential to Litigating Class 1's Claims against J&J ...................................................................5

C.   Haviland Attempted to Trade His Clients' Participation in the Class 1 J&J Case to Get Class Counsel to Support a Motion Seeking Relief from the Disqualification Order ................................................6

D.   Haviland Voluntarily Dismissed the Claims of the Sole Class 1 Representatives Against the J&J Defendants .......................................7

E.   Class Counsel Moved for Sanctions Against Haviland and the Court Entered the Voluntary Dismissal Order .....................................8

F.   Class Counsel Were Unable to Locate a New Class 1 Plaintiff ............................9

G.   Haviland Appealed the Voluntary Dismissal Order .............................................10

H.   Haviland Attempted to Supplement the Voluntary Dismissal Order Appellate Record with the Transcript from the BMS Fairness Hearing................10

II.  OPPOSITION ...........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) ................................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,,
   460 F. Supp. 2d 277 (D. Mass. 2006) ........................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,,
   491 F. Supp. 2d 20 (D. Mass. 2007) ..........................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,,
   520 F. Supp. 2d 274 (D. Mass. 2007) ........................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,,
   582 F.3d 231 (1st Cir. 2009) ......................................................................................6

**STATUTES**

28 U.S.C. § 1912 ................................................................................................................2

001534-16  449734 V1

Three business days before this Court was scheduled to hold oral argument on J&J's post-remand motions for summary judgment, and nearly five years after adding his clients to this litigation, Haviland withdrew the sole representatives for the Class 1 case against J&J.  Because of Haviland's actions, even though Class Counsel succeeded in reversing this Court's entry of judgment against Class 1 and in favor of J&J, and even though Class Counsel defeated J&J's post-remand motions for summary judgment in most states, the Class 1 claims against J&J have now been dismissed for lack of a class representative.

For these reasons this Court justifiably found Haviland's actions in connection with voluntarily dismissing his clients' claims "troublesome" and also entered a June 22, 2010 order that provided that Haviland could not serve (a) as class counsel, (b) in any federal litigation, (c) involving challenges to AWP ("Voluntary Dismissal Order").

During the briefing of Haviland's motion to withdraw his clients and Class Counsel's contemporaneously-filed motion for sanctions against Haviland, Haviland did not file a declaration from his clients regarding the alleged reasons they were withdrawing.  Haviland likewise did not submit a declaration.  He failed to appear at a status conference held after his sudden withdrawal of his clients and did not appear at the eventual oral argument on J&J's post-remand summary judgment motions.  And even after this Court entered its Voluntary Dismissal Order, Haviland did not ask this Court to reconsider that order.

Instead, hoping to find an audience that would believe his falsehoods, Haviland appealed the Voluntary Dismissal Order to the First Circuit.  In his Opening Brief, Haviland misrepresented the limited scope of the Voluntary Dismissal Order by:

- Stating "the [district] court believed it had the power to bar these persons who never appeared in MDL 1456 from ever pursuing AWP claims anywhere in the country – *including state court*."  Opening Br. at 28 (emphasis added) (attached as Ex. A to the Declaration of Steve W. Berman ("Berman Decl.")).

- Proclaiming that the Voluntary Dismissal Order "bar[s] an attorney from ever practicing law in federal court with respect to a broad subject matter" (*id.* at 49) and that it "has the effect of forbidding Appellant from representing clients in a class action matter in any federal forum where the subject matter involves AWP." *Id.* at 51.

- Failing to mention – anywhere – that at the time Haviland sought to withdraw his clients J&J's post-remand motions for summary judgment were fully briefed and scheduled for oral argument.

- Citing cases that only tangentially involved AWP where Haviland was not class counsel as cases that could be potentially implicated by the Voluntary Dismissal Order. *Id.* at 41 n.22.

- Identifying a New Jersey ***state court*** AWP case *in which Haviland is not class counsel*[1] as the case that best demonstrates "the potential improper scope of the Subject Order." *Id.* at 42.

Haviland knew that the plain language of the two-sentence Voluntary Dismissal Order did not support his representations to the First Circuit and knew that Class Counsel's Answering Brief had successfully exposed his deceptions. Knowing he thus faced a certain affirmance of this Court's Voluntary Dismissal Order and possible sanctions against him for filing a frivolous appeal,[2] Haviland attempted, at the March 28, 2011 BMS fairness hearing, to elicit a comment from this Court regarding the scope of the Voluntary Dismissal Order. While this Court didn't take Haviland's bait, Haviland nonetheless attempted to supplement the record on his appeal of the Voluntary Dismissal Order with the transcript from the BMS fairness hearing, claiming that this Court had "substantially modified" the Voluntary Dismissal Order during the BMS fairness hearing.

---

[1] Haviland has repeatedly referred to himself as class counsel in the New Jersey state court AWP case. *See*, *e.g.*, Opening Br. at 41-42 (Berman Decl., Ex. A). However, Haviland has not yet sought class certification in that case and thus no class counsel have been appointed. Nor is it a foregone conclusion that Haviland will be appointed: should Haviland move to be appointed as class counsel, the defendants in those cases will surely oppose it.

[2] *See* Fed. R. App. P. 38; 28 U.S.C. § 1912.

The First Circuit found both Haviland's characterizations of this Court's comments during the BMS fairness hearing and his attempt to use Rule 10(e) of the Federal Rules of Appellate Procedure to supplement the record "inapt." *See* Order of Court in Appeal No. 10-1959 (Apr. 15, 2011) (Berman Decl., Ex. 2). The Court did not direct Haviland to file anything with this Court, but rather noted that "[i]f Haviland wanted to seek such a modification, he should have filed an appropriate motion in the district court, which could then request a remand if it were inclined to grant the motion." *Id*. Haviland used this comment to justify filing his Motion to Vacate.

This Court should refuse to vacate the Voluntary Dismissal Order. If anything, Haviland's conduct after the entry of that Order, including his frivolous appeal of it, further supports its entry. If this Court is inclined to modify the Order in any way, it should do so only to make clear what the plain language of the Order already provides – that, consistent with the January 3, 2008 order disqualifying Haviland as Class Counsel, the Voluntary Dismissal Order merely bars Haviland from serving as class counsel in federal litigation involving challenges to AWP.

The record reflects that Haviland attempted to trade his clients' participation in the Class 1 J&J case for Class Counsel's support of Haviland's contemplated motion for relief from the Disqualification Order. When Class Counsel properly refused Haviland's proposal, Haviland once again took his toys and went home. That stunt having failed, Haviland's Motion to Vacate now attempts to bully this Court into vacating the Voluntary Dismissal Order, which was quite frankly a restrained response to Haviland having deprived Class 1 of a case against J&J after over a decade of litigation – including a 9-week bench trial, a successful appeal to the First Circuit and defeating J&J's post-remand summary judgment motions in most states. This Court

- 3 -

should see Haviland's indignant cries for "due process" and "evidentiary hearings" for yet

another deceptive attempt to skirt the consequences of Haviland's own actions.  The Motion to

Vacate should be denied.

## I.    BACKGROUND

### A.    The Withdrawing Plaintiffs Had Participated in the Class 1 Case against J&J Since 2005

Plaintiff James Shepley and Larry Young, on behalf of the Estate of Patricia K. Young,

became plaintiffs in the underlying litigation on October 17, 2005, when Plaintiffs filed their

Third Amended Class Action Complaint against, among other defendants, J&J.  *See* Dkt.

No. 1781, ¶¶ 18, 19.  Almost since the beginning of their involvement in this case, they have

contended (through Haviland) that they "only agreed to serve as Class 1 Representatives with the

understanding that their interests, and those of their fellow consumer class members would be

meaningfully represented...."  Dkt. No. 4051 at 4.  Indeed, when the Withdrawing Plaintiffs

argued to the District Court that Haviland should be appointed as Class Counsel, they declared

under penalty of perjury that the reason they wanted that appointment was because

"Mr. Haviland will press my case against the drug company [J&J], including any appeal that

may be necessary, *to ensure that the unlawful conduct of Johnson & Johnson does not go

unpunished*."  Dkt. No. 4648, ¶ 8 (emphasis added).

In this regard, after the Track 1 Defendants moved this Court at the conclusion of the

Class 2/Class 3 bench trial to enter final judgment against Class 1 and in favor of J&J pursuant to

Fed. R. Civ. P. 54(b), Therese Shepley and Larry Young filed a Memorandum stating that the

Court should not apply its Class 2/Class 3 judgment to Class 1.  Dkt. No. 4643.  When this Court

ultimately entered judgment against Class 1 and in favor of J&J, they filed a Notice of Appeal.

Dkt. No. 4954.

**B.      Haviland Knew His Clients Were Essential to Litigating Class 1's Claims against J&J**

From its earliest decisions in this case, this Court has recognized that members of

Class 1, a nationwide Class of Medicare beneficiaries, were the most vulnerable victims of

Defendants' conduct.[3]  This Court has also consistently recognized that this is a sick and dying

Class.  Notably, in disqualifying Haviland as Class Counsel in January 2008, this Court made

clear that one of its primary reasons for doing so was that Haviland threatened to make the Class

headless by filing declarations stating that his clients would not continue to act as class

representatives unless he were appointed as Class Counsel.[4]

This Court is also well-aware that especially because this case was originally filed nearly

ten years ago and involves conduct that this Court has determined ended at the end of 2003, it is

extremely difficult to locate proposed representatives of this Class.  *See* Transcript of July 12,

2010 motion hearing (Berman Decl., Ex. 3 at 4:15-16 ("THE COURT:  A lot of times you've

thought you had a great class rep, and it hasn't sort of played out.")); Transcript of March 31,

2010 status conference (Berman Decl., Ex. 4 at 7:2-18 ("THE COURT:  Well, let me ask you

this:  Do you have any –you've had trouble with this over the years.  I've always allowed you to

replace because this is, I've always said, an aging and dying class.  A:  That's right.  THE

---

[3] *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig. ("In re AWP")*, 520 F. Supp. 2d 274, 276-77 (D. Mass. 2007) ("Many class members are sick and elderly, and would be affected by the delay resulting from an unsuccessful appeal."); *In re AWP*, 491 F. Supp. 2d 20, 38-39 (D. Mass. 2007) (describing the patient as "the vulnerable victim" of Defendants' conduct); *id.* at 96 ("Significantly, the defendants well understood the devastating impact the mega-spreads had on old and sick patients required to make co-payments they could ill afford..."); *In re AWP*, 460 F. Supp. 2d 277, 287 (D. Mass. 2006) ("Moreover, because the government shoulders only 80 percent of drug costs under Medicare under the industry's interpretation, Congress would be intentionally subjecting Medicare beneficiaries, who are often old, poor, and sick, to exorbitant drug co-payments based on artificially high prices."); *In re AWP*, 230 F.R.D. 61, 85 (D. Mass. 2005) ("However, in this context, where consumers (elderly people with cancer or another serious disease) make a percentage co-payment based on the stated AWP, there is no indication that different definitions of reliance and causation will matter or cannot be resolved as a matter of law prior to trial.").

[4] *See, e.g.*, Dkt. No. 4972 (footnote omitted) ("Mr. Haviland intended to coerce the Court into appointing him as Co-Lead Class Counsel or risk losing class representatives in a class action involving the sick and elderly.  Both the nature and the timing of these declarations raised concerns about Haviland's loyalty to the class.").

COURT:  That having been said, you've got to find someone.  A:  Yes.  THE COURT:  And it's always been a problem for you.  It takes a long time.  A:  Yes, it does take a long time, and these in particular are very difficult clients to find.  THE COURT:  My guess is – A:  That we previously turned over heaven and earth to look for them?  THE COURT:  To find people.  So I'm trying to figure out what to do here."))  Haviland is aware of this difficulty.  In fact, as Haviland recognized years ago, "were it not for the consumer class representatives [represented by Haviland], *there would be no Class 1 at all*."  Dkt. No. 4051 at 4 (emphasis added).

**C.      Haviland Attempted to Trade His Clients' Participation in the Class 1 J&J Case to Get Class Counsel to Support a Motion Seeking Relief from the Disqualification Order**

Haviland used his knowledge of the importance of his clients to the J&J case to attempt to get Class Counsel to support Haviland in seeking relief from this Court's January 3, 2008 order disqualifying Haviland as Class Counsel ("Disqualification Order").  After the First Circuit remanded the Class 1 claims against J&J to this Court,[5] this Court held an October 8, 2009 status conference.  After the parties had gone off the record, Haviland directly addressed this Court and asked it if it would reconsider the Disqualification Order.  *See* Dkt. No. 7064, ¶ 3.  Haviland represented that the Court's Order had caused grave harm to his reputation and that he wished to be freed from its effects.  *Id*.  This Court stated that it was uncomfortable having this conversation off the record and told Haviland that if he wanted relief from the order he should file a formal motion.  *Id*.  Haviland subsequently requested Class Counsel's assistance in obtaining relief from the disqualification order.  *See* Ex. C to Dkt. No. 7062 (filed under seal).  Class Counsel told Haviland that they would not take a position on that issue.  *Id*.

Thereafter, in an attempt to resolve the case without having to brief summary judgment, and pursuant to this Court's direction, the parties met with MDL Mediator Eric Green on

---

[5] *In re AWP*, 582 F.3d 231 (1st Cir. 2009).

November 6, 2009.  Prior to the actual mediation, Class Counsel had numerous conversations

with Haviland during which he advocated what he represented to be the position of his clients

regarding the mediation.  *See* Dkt. No. 7064.  At no time during those negotiations did Haviland

represent that one of his two clients, Therese Shepley, had passed away over a month earlier.

Instead, he continued to represent that he was informing Class Counsel of his client's alleged

settlement positions.  Dkt. No. 7064, ¶ 4.

**D.      Haviland Voluntarily Dismissed the Claims of the Sole Class 1 Representatives
          Against the J&J Defendants**

          After the parties' mediation efforts were unsuccessful, J&J brought two post-remand

summary judgment motions:  one seeking dismissal of the Massachusetts Class and one

"nationwide" motion seeking dismissal of all claims brought under consumer protection statutes

of states other than Massachusetts.  *See* Dkt. Nos. 6668 and 6671.  Both motions were fully

briefed and set for oral argument on March 31, 2010.

          On March 26, 2010, on the close of business three business days before the March 31 oral

argument, Haviland filed a Notice of Voluntary Dismissal seeking to dismiss without prejudice

the "individual claims" of his clients who, for the preceding five years, had been the sole class

representatives against the J&J Defendants.  *See* Dkt. No. 7013.  At the same time, Haviland

filed a Suggestion of Death under Fed. R. Civ. P. 25(a), which stated that Therese Shepley had

passed away on October 2, 2009.  Dkt. No. 7012.

          Haviland gave Class Counsel no notice that he intended to withdraw the only Class 1

representatives for the case against J&J.  Dkt. No. 7064, ¶ 5.  Therefore, upon receiving his

Notice of Voluntary Dismissal, Class Counsel contacted Haviland by telephone.  *Id*. at ¶ 6.

Class Counsel explained to Haviland that his actions would prejudice Class 1 by leaving it

without a representative for its claims against J&J.  *Id*.  Haviland stated that, because he had been

disqualified as Class Counsel, he did not care about the Class.  *Id*.  During that phone call

Haviland also stated that at the time he filed the Notice of Voluntary Dismissal, he knew the

hearing on J&J's motions was "coming up."  *Id*. at ¶ 6.  Haviland told Class Counsel that his

clients had both, simultaneously, tired of litigating the case against J&J.  *Id*. at ¶ 7.  He also

represented that his clients were allegedly tired of "not being listened to" by Class Counsel.  *Id*.

**E.**     **Class Counsel Moved for Sanctions Against Haviland and the Court Entered the Voluntary Dismissal Order**

While neither Class Plaintiffs nor the J&J Defendants opposed Haviland's Motion to

Withdraw (*see* Dkt. Nos. 7056 and 7058), Class Counsel sought an order imposing sanctions on

Haviland for the gamesmanship he exhibited in withdrawing both J&J class representatives.  *See*

Dkt. No. 7059.  Class Counsel argued that, though the Withdrawing Plaintiffs represented to this

Court that they would pursue the case against J&J to its end, in order to avoid having to appear

before the Court in which he has been removed as Class Counsel, and to punish Class Counsel

whom he believes to be responsible for his removal, Haviland withdrew these plaintiffs' claims.

In response [Dkt. No. 7100], Haviland did not submit a declaration from himself or from

the Withdrawing Plaintiffs.  Nevertheless, Haviland contended that his clients *never intended* to

pursue this case to its end (*id*. at ¶ 2), and that the Withdrawing Plaintiffs had intended to

withdraw ever since Class Counsel did not file a separate Notice of Appeal of this Court's

dismissal of Class 1's claims against J&J.  *Id*.  Haviland also claimed that the Withdrawing

Plaintiffs were angry because, with regard to the Track 2 settlement, Class Counsel allegedly

"replaced" them with another class representative.  *Id*.

By electronic order, this Court denied Class Plaintiffs' Motion, finding that "[w]hile the

timing of the Motion to Withdraw is troublesome, there is no prejudice to the class as the Court

gave class counsel time to find new class representatives."  The same day, this Court granted

Haviland's motion to withdraw his clients, but held that "plaintiffs may not serve as class representatives in any proposed class action involving AWP.  In addition, Mr. Haviland may not serve as class counsel in any federal litigation involving challenges to AWP."

**F.      Class Counsel Were Unable to Locate a New Class 1 Plaintiff**

At the time this Court entered its order denying Class Counsel's Motion for Sanctions, Class Counsel had moved to add Jimmie Oustad as a proposed Class 1 representative for the case against J&J.  *See* Dkt. No. 7128.  On June 21, 2010, this Court granted that Motion by electronic order.

On September 3, 2010, this Court entered an order largely granting J&J's post-remand motion with regard to the Massachusetts Class, but denying the majority of J&J's post-remand nationwide motion on the grounds that many state statutes provided for jury trials and that a jury could decide certain issues decided by this Court during the Class 2/Class 3 bench trial differently.  *See* Dkt. No. 7248.  In addition, this Court held that:

> Based on the plaintiffs' proffer, I find that Austed [*sic*] is an adequate class representative.  J&J has yet to have the full allotted time to review Austed's medical records.  In the event that J&J believes, following a complete review, that Austed is not an adequate class representative, J&J may file a motion for reconsideration and have her ousted.

*Id.* at 4 n.1.

Thereafter, on October 1, 2010, J&J filed a motion challenging Mrs. Oustad as a class representative.  Dkt. No. 7259.  On March 29, 2011, this Court granted J&J's motion and dismissed the claims of Class 1 without prejudice.  Dkt. No. 7483.

**G.    Haviland Appealed the Voluntary Dismissal Order**

On July 22, 2010, Haviland filed a notice of appeal of the Voluntary Dismissal Order.

Dkt. No. 7190.  His Opening Brief (*see* Berman Decl., Ex. A), contended that this Court erred

because:

1.    The Voluntary Dismissal Order was overbroad and beyond the powers of this

Court.  *Id.* at 25-32.

2.    The Voluntary Dismissal Order violated Rule 23(g) by failing to make findings

under that Rule.  *Id*. at 32-37.

3.    The Voluntary Dismissal Order exceeded this Court's authority under 28 U.S.C.

§ 1407.  *Id*. at 37-43.

4.    The Voluntary Dismissal Order violated Haviland's due process rights.  *Id*. at 43-

48.

Haviland's appeal is now fully briefed before the First Circuit.

**H.    Haviland Attempted to Supplement the Voluntary Dismissal Order Appellate
Record with the Transcript from the BMS Fairness Hearing**

After Haviland's appeal was fully briefed, Haviland moved under Fed. R. App. P. 10(e)

to supplement the record with the March 28, 2011 transcript of the BMS fairness hearing.

Haviland claimed that during that hearing this Court had "substantially modified" the Voluntary

Dismissal Order.  *See* Appellant's Motion for Leave to Include an Addendum to Appellant's

Reply Brief (Berman Decl., Ex. 5).

The portion of the transcript used by Haviland to support his claim that this Court had

purportedly modified the Voluntary Dismissal Order was a discussion between Haviland and this

Court during the course of a circuitous explanation to this Court of why his client, Reverend

Aaronson, withdrew from the litigation.  Haviland stated that his J&J clients withdrew from the

litigation because:  "[m]y clients are not happy at all with how that case is going, and they

withdrew.  And your Honor now has a sanction order against me that we've had to appeal

because, you know –."  Berman Decl., Ex. 7 (BMS Transcript at 48:3-6).[6]  In response, the Court

engaged in a short colloquy with Haviland during which it simply stated what the Voluntary

Dismissal Order itself says – that, by prohibiting Haviland from being (a) class counsel, (b) in

any federal litigation, (c) involving challenges to AWP, the Voluntary Dismissal Order only bars

Haviland from serving as Class Counsel in federal litigation challenging AWP of the sort that the

JPML has already ruled should be consolidated in this Court.  *See id*. at 48:7-13.

Indeed, one day after the March 28, 2011 hearing on final approval of the BMS

Settlement, this Court, in granting J&J's motion challenging the standing of Mrs. Oustad and

dismissing the claims of Class 1 against J&J without prejudice, this Court described its

Voluntary Dismissal Order as follows:

> These plaintiffs, all of whom were represented by attorney Donald
> Haviland, filed motions to withdraw on June 16, 2010. (Docket
> No. 7136.)  While class counsel did not explicitly oppose the
> motion to withdraw, they did move for sanctions against
> Mr. Haviland due to the suspect timing of the motion to withdraw.
>
> (Docket No. 7059.)  The Court allowed the motion to withdraw on
> June 21, 2010, but stated that "plaintiffs may not serve as class
> representatives in any proposed class action involving AWP.  In
> addition, Mr. Haviland may not serve as class counsel in any
> federal litigation involving challenges to AWP."

*Id*. at 2 n.1.

---

[6] Haviland has represented to the First Circuit that this Court *sua sponte* "raised this matter of this appeal" with him. *See* Haviland's Reply Br. at 3 (Berman Decl., Ex. 6).  Of course, this Court will recall and the transcript shows the opposite to be true.  In fact, several times during the hearing this Court instructed Haviland to refrain from commenting on other aspects of this litigation and instead restrict his comments to the BMS settlement. *See* BMS Transcript at 42:4-5 ("You know, let's just stick right now with BMS."); *id*. at 43:23-24 ("Right.  I'm talking about BMS.  Tell me about BMS.") (Berman Decl., Ex. 7); *id*. at 45:13-16 ("THE COURT:  Excuse me.  My only issue here today – MR. HAVILAND:  Yes.  THE COURT:  – is the current settlement fair and reasonable?  That's part of the context."); *id*. at 49:17-18 ("What?  You are now losing me.").

## II.    OPPOSITION

Haviland has asked this Court to request a remand from the First Circuit pursuant to Fed. R. Civ. P. 62.1.  This Court should deny Haviland's request because, even if Haviland's appeal were remanded, there is no reason to vacate the Voluntary Dismissal Order.

Tellingly, Haviland does not claim that this Court should vacate the Voluntary Dismissal Order because his conduct was not troublesome, as this Court found it to be.  Instead, Haviland claims that this Court should vacate the Order because this Court purportedly "clarified" the scope of the Voluntary Dismissal Order at the BMS fairness hearing.[7]  This Court did no such thing.

Haviland further claims that this Court should vacate the Voluntary Dismissal Order because this Court held that his clients withdrew in August 2007 and therefore ***Haviland's own motion*** to withdraw his Class 1 J&J clients was "a legal nullity."  *Id*. at ¶ 19.  Indeed, Haviland has told the First Circuit that Class Counsel ***should be sanctioned*** under Rule 11 for moving for sanctions against Haviland for his conduct associated with his strategic withdrawal of his clients. *See* Reply Br. at 19-20 (Berman Decl., Ex. 6).  Haviland's position that his own actions should have no legal consequence may be a convenient one, but it is patently absurd and should be rejected as such.  Indeed, if it were true that his clients had withdrawn as class representatives in August 2007 then their filing a Notice of Appeal from the Class 1 J&J dismissal would likewise have been a legal nullity, and it would be ironic for Haviland to proclaim that "[h]ad the undersigned not filed a timely Notice of Appeal on behalf of Mr. Young and Mrs. Shepley

---

[7] Notably, though Haviland has told this Court that granting his Motion to Vacate may "resolve [his appeal] altogether" (*id*. at ¶ 15), Haviland told the First Circuit that even if this Court grants Haviland's Motion he will still request an advisory opinion "and remand with direction as to the appropriate scope of the district court's authority to enjoin lawyers practicing in federal court."  Reply Br. at 12-13 (Berman Decl., Ex. 6); *see also id*. at 15 ("Appellant respectfully requests that the Order be vacated by this Court, and remanded with appropriate direction as to any future Order the district court might issue on the subject, after a hearing which affords Appellant due process.").

regarding this Court's judgment of dismissal without prejudice, the claims of Class 1 consumers against J&J would have been improvidently lost." Motion to Vacate ¶ 7.

Contrary to Haviland's claims, this Court's Voluntary Dismissal Order was not made "in a vacuum." Motion to Vacate, ¶ 25. Rather, it was entered after full briefing on Haviland's motion to withdraw as well as on Class Counsel's motion for sanctions against Haviland. That Haviland made the strategic choice not to submit a declaration from the Withdrawing Plaintiffs or himself in connection with those pleadings, or to appear at a March 31, 2010 status conference or the July 12, 2010 argument on J&J's post-remand motions for summary judgment, or to seek reconsideration of the Voluntary Dismissal Order, does not now give Haviland grounds to claim that he has been deprived of due process or otherwise abused by this Court. If anything, the eventual dismissal of Class 1's claims against J&J provides further grounds for more severely sanctioning Haviland as Class Counsel originally requested.

This Court should deny the Motion to Vacate, leave the Voluntary Dismissal Order intact and send Haviland's appeal back to the First Circuit, where it can properly be dismissed on its merits.

DATED:  May 19, 2011

By:  /s/ Steve W. Berman
Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611


Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022


Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735


***Class Counsel***

001534-16 449734 V1

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on May 19, 2011, I caused copies of **CLASS COUNSEL'S OPPOSITION TO HAVILAND'S MOTION TO VACATE OR, IN THE ALTERNATIVE, MODIFY THE COURT'S JUNE 22, 2010 ORDER** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

_____/s/ Steve W. Berman_____
Steve W. Berman

001534-16 449734 V1