# Exhibit 1

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 10-1959

IN RE: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

## CORRECTED BRIEF OF APPELLANT
## DONALD E. HAVILAND, JR., ESQUIRE

Appeal from the June 22, 2010 Order of the District Court
barring Appellant from ever "serv(ing) as class counsel
in any federal litigation involving challenges to AWP."

Donald E. Haviland, Jr., Esquire
Michael J. Lorusso, Esquire
**Haviland Hughes, LLC**
111 S. Independence Mall East, Suite 1000
Philadelphia, PA 19106
(215) 609-4661

Attorneys for Appellant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................iii-viii

I. STATEMENT OF JURISDICTION ......................................................1

II. ISSUES PRESENTED FOR REVIEW ...............................................2

III. STATEMENT OF THE CASE..........................................................3

IV. STATEMENT OF FACTS ...............................................................6

    A. MDL 1456 .....................................................................................6

        1.  Class Action Proceedings in MDL 1456...................................7

        2.  The Case Against Johnson & Johnson, Appeal & Remand ....................15

    B. Other AWP Litigation in Federal and State Court .......................20

V. SUMMARY OF ARGUMENT ...........................................................23

VI. ARGUMENT...................................................................................25

    A. The District Court Erred in Enjoining Appellant from Ever "Serv(ing)
        as Class Counsel in any Federal Litigation Involving
        Challenges to AWP"...................................................................25

        1.  The District Court's Injunction Against the Future Practice of Law was
            Overbroad and Beyond the Power of the District Court....................25

        2.  The District Court's Prospective Ruling, Barring An Attorney from
            Ever Serving as Class Counsel in Any Future Class Action Litigation
            Involving AWP, Violated the Express Provisions of Rule 23 Governing
            Such a Ruling .....................................................................33

        3.  The District Court Exceed the Bounds of its Authority Under 28 U.S.C.
            §1407 ..............................................................................38

–i–

4.  The District Court Violated the Due Process Rights of Parties Who Never Appeared Before the Court and the Attorney for the Estate of Deceased Clients By Issuing a Sweeping Order Barring Future Litigation Without Notice, a Hearing or Other Reasonable Opportunity to Be Heard...........................................................................44

B.  This Court has Jurisdiction Over this Appeal, Whether the District Court's Order is Viewed as an Injunction or a Sanction......................................49

1.  The District Court's Order Barring the Future Practice of Law Constitutes an Injunction Immediately Appealable to This Court......51

2.  The Subject Order Is Not a Sanction..................................................54

VII. CONCLUSION .................................................55

CERTIFICATION OF COMPLIANCE UNDER RULE 32(a)

ADDENDUM (following Brief)

# TABLE OF AUTHORITIES

## CASES                                                                Page(s)

*1975 Salaried Retirement Plan v. Nobers*,
    968 F.2d 401 (3d Cir. 1992).......................................................................28

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997) ...............................................................................36

*Anderson v. Yungkau*,
    329 U.S. 482 (1947) .................. ...................................................................30

*Atlantic Coastline Rail Co. v. Brotherhood of Locomotive Engineers*,
    398 U.S. 281 (1970) ................... ....................................................................28

*California v. Randtron*,
    284 F.3d 969 (9th Cir. 2002) ................. .......................................................1

*Carlough v. Amchem Products, Inc.*,
    10 F.3d 189 (3d Cir. 1993) ................. .......................................................26

Chambers v. NASCO, Inc.,
    501 U.S. 32 (1991) ........................ ............................................................47

*Chick Kam Choo v. Exxon Corp.*,
    486 U.S. 140 (1988) ........................ ...............................................32, 53

*Commonwealth of Pennsylvania v. TAP Pharm. Prods., Inc.*,
    415 F.Supp.2d 516 (E.D.Pa. 2005) ................ ...............................23,39,42

*Garcia v. Bauza-Salas*,
    862 F.2d 905 (1st Cir. 1998) ............. ...............................................28,53

*Glover v. Johnson*,
    855 F.2d 277 (6th Cir. 1988) .............. ......................................................49

Case 1:01-cv-12257-PBS   Document 7548-1   Filed 05/19/11   Page 6 of 69

*Great Earth Companies, Inc. v. Simons,*
    288 F.3d 878 (6th Cir. 2002) ...................... ..................................................1

*Hayes Indus., Inc. v. Caribbean Sales Assoc., Inc.*,
    387 F.2d 498 (1st Cir. 1968) ...................... ..........................................54

*In re AWP,*
    307 F.Supp. 2d 190 (D.Mass. 2004) ........... ..............................21, 32, 39, 52

*In re AWP,*
    230 F.R.D. 61 (D.Mass. 2005) ................... ..................................................7

*In re AWP,*
    233 F.R.D. 229 (D.Mass. 2006) ................... ...........................................11

*In re AWP,*
    431 F.Supp. 2d 109 (D.Mass. 2006) .................... .....................10, 21, 32, 39

*In re AWP,*
    509 F.Supp. 2d 82 (D.Mass. 2007) ........... .......................................23, 32,40

*In re AWP,*
    582 F.3d 156 (1st Cir. 2009) .................. ...........................................6,7 ,21

*In re AWP,*
    582 F.3d 231 (1st. Cir. 2009) ................ ..............................................7, 37

*In re AWP,*
    588 F.3d 24 (1st Cir. 2009) ................ ...............................................12

*In re Cordova Gonzalez,*
    726 F.2d 16, 20 (1st Cir.1984) ................ .................................................47

*In re Diet Drugs*,
    282 F.3d 220 (3d Cir. 2002) ................ .....................................................54

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*,
    134 F.3d 133 (3d Cir. 1998) .......................... .............................................26

*In re Immunex Corp. Average Wholesale Price Litig.*,
  201 F.Supp. 2d 1378 (JPML 2002) ............................ ......................6, 32, 40

*In re Ivy*,
  901 F.2d 7 (2d Cir.1990) ........................ ................................41

 *In re J.P. Morgan Chase Cash Balance Litigation*,
  2007 WL 1549121 (S.D.N.Y., Mar. 15, 2007) ...... ......................................35

*In re Lupron*,
  180 F.Supp.2d 1376 (JPML  2001) ................ .......................................8,21

*In re New England Mut. Life Ins. Co. Sales Practices Litigation*,
  324 F.Supp.2d 288 (D.Mass.,2004) ................ ...............................41

*In re Organogenesis Securities Litigation*,
  241 F.R.D. 397 (D.Mass., 2007) .................. ..............................................35

*In re Rare Coin Galleries of America, Inc.*,
  862 F.2d 896 (1st Cir. 1988) ........................... .....................................49

*Kline v. Burke Construc. Co.*,
  260 U.S. 226 (1922) ........................... ......................................................53

*Lexecon Inc., v. Milberg Weiss Bershad Hynes & Lerach et al.*,
  523 U.S. 26 (1998) .................................. ...................................41

*Media Duplication Services, Ltd. v. HDG Software, Inc.*,
  928 F.2d 1228 (1st Cir. 1991) .................... ........................................47,48

*Micro Signal Research, Inc., v. Otus*,
  417 F.3d 28 (1st Cir. 2005). ........................... .............................................51

*Morales Feliciano v. Rullan*,
  303 F.3d 1 (1st. Cir. 2002) ........................ .................................................51

*Nat'l Ass'n of Chain Drug Stores v. New England Health Benefits Fund*,

    582 F.3d 30 (1st Cir. 2009) .......................  .....................................................39

*National Ass'n of Chain Drug Stores v. Schwarzenegger,*
    376 Fed.Appx. 674 (9th Cir., 2010) .............  ............................................. 43

*Navarro-Ayala v. Nunez,*
    968 F.2d 1421 (1st Cir.1992) .....................  .............................................49

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) ..........................................  .....................................36

*Pearson's Pharmacy, Inc. v. Express Scripts, Inc.,*
    378 Fed.Appx. 934 (11th Cir., 2010) ...............  ..........................................43

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,*
    2011 WL 183163, (7th Cir., 2011) ...................  ...........................................43

*Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,*
    386 F.3d 419 (2d Cir. 2004) ........................  ...........................................1, 54

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980) ..............................  .................................................48

*Sierra Club v. Marsh,*
    907 F.2d 210 (1st Cir. 1990) .....................  .................................................51

*Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v.
Rogers,*
    357 U.S. 197 (1958) ..........................  .....................................................48

*Specialized Plating, Inc. v. Federal Environmental Services*, Inc.,
    1997 WL 414102 (July 22, 1997) ...........................  .................................49

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
    323 F.3d 32 (1st Cir. 2003) ..........................  ..........................................36

*Toucey v. New York Life Ins. Co.*,
    314 U.S. 118 (1941) ...........................  .....................................................52

*United States v. 789 Cases of Latex Surgeon Gloves,*
   13 F.3d 12, 15 (1st Cir.1993) ................ ....................................................47

*United States v. Alcon Laboratories*
   636 F.2d 876, (1st Cir. 1981) ............ ....................................................50,51

*United States v. Cities Serv. Co.,*
   410 F.2d 662 (1st Cir. 1969) ................ ....................................................50

*United States v. Kouri-Perez,*
   187 F.3d 1, 13 (1999)   ........................ ....................................................47

*United States v. Platt Contracting Co.,*
   324 F.2d 95 (1st Cir. 1963) ................ ....................................................50

*United States v. Weeks,*
   2001 WL 1688891 (D. Mass. Dec. 7, 2001) ..... ...........................................53

*Winkler v. Eli Lilly & Co.,*
   101 F.3d 1196 (7th Cir. 1997) ................ ....................................................48

## I.    <u>STATEMENT OF JURISDICTION</u>

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because this case was filed before February 18, 2005, the amount in controversy exceeds $75,000.00, and there is diversity between Plaintiffs and Defendants.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1292(a)(1), which provides an interlocutory appeal as of right from an order granting an injunction. Whether an injunction falls within the permissible exceptions of the Anti-Injunction Act, 28 U.S.C. § 2283, is a question of law reviewed *de novo,* and, assuming that the injunction is permissible under the Anti-Injunction Act as a matter of law, this Court reviews orders of the District Court granting or denying an injunction for abuse of discretion. *See Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 425 (2d Cir. 2004); *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 893 (6th Cir. 2002); *California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002).

The subject Order barring Appellant from ever "serv(ing) as class counsel in any federal litigation involving challenges to AWP" was entered by the district court *sua sponte* on June 22, 2010. A timely Notice of Appeal was filed July 22, 2010.

On September 1, 2010, Appellee counsel wrote a letter to this Court's Case Manager, challenging this Court's jurisdiction over this appeal and requesting the issuance of a show cause order. Appellee counsel then filed "Class Plaintiffs-Appellees Motion to Dismiss Appeal" on September 23, 2010, interposing the same jurisdictional challenge. On October 4, 2010, Appellant filed "Appellant's Opposition to Class Plaintiffs-Appellees' Motion to Dismiss Appeal". By Order dated November 4, 2010, this Court denied the Motion to Dismiss without prejudice, and directed the parties "to brief the jurisdictional issue along with the merits" as part of this appeal. The "jurisdictional issue" is addressed herein.

## II.    ISSUES PRESENTED FOR REVIEW

1.    Did the district court err by issuing an injunction *sua sponte*, with no reasonable limitation in duration, breadth or scope, barring parties who never appeared before the court from pursuing any future class action litigation involving "challenges to AWP", in state or federal court, and their attorney from representing any party in the future as "class counsel" in a case involving "challenges to AWP"?

2.    Did the district court violate the due process rights of parties who never appeared before the court and their attorney representing them only in their capacity of executors of an estate of deceased clients by issuing a sweeping injunction without notice, a hearing or other reasonable opportunity to be heard?

3.      Does this Court have jurisdiction over an appeal from an Order of a district court issued *sua sponte*, and without notice, a hearing or other reasonable opportunity to be heard, prospectively barring individual parties and the attorney for an estate from ever pursuing future litigation involving a broad subject matter over which the court has certain limited authority by prior Order of the Judicial Panel on Multi-District Litigation?

## III.   STATEMENT OF THE CASE

This litigation was commenced by Appellee-Counsel in 2001 against several prescription drug manufacturers and alleges that defendants unlawfully inflated the AWP  upon which drug reimbursements were made in the Medicare Program. This inflation caused consumers and TPPs to pay more for the Subject Drugs.   As discussed more below, Appellant, Donald E. Haviland, Jr., became involved in this litigation when several of Appellant's clients agreed to intervene in the action following the District Court's refusal to certify a nationwide consumer class of Medicare beneficiaries on grounds of adequacy of representation.   Importantly, Appellant's clients all agreed to intervene in this action and serve as named class representatives on the express condition that their individual counsel, Appellant, would continue to serve as their personal legal counsel and counsel to the class going forward.   APP. 686-698.

Two of Appellant's clients, Mr. Larry Young and Ms. Therese Shepley,

–3–

agreed to serve as named class representatives of the Johnson & Johnson sub-class,

which was later certified by the District Court.   A 20-day bench trial involving two

certified classes of TPPs and consumers in Massachusetts was held in 2006 against,

*inter alia,* Johnson & Johnson, resulting in a verdict in favor of the J&J Defendants.

Inexplicably, Appellee-Counsel failed to challenge Johnson & Johnson's argument

that the verdict should be extended to bar the consumer class claims that had not

been tried.   Appellant, on behalf of Mr. Young and Mrs. Shepley, ***alone*** opposed

Johnson & Johnson's effort to have a Rule 54(b) judgment entered against

consumers.   APP. 677.   Subsequently, the district court agreed with Johnson &

Johnson that the nationwide consumer class claims should be dismissed with

prejudice (on grounds of the Class 2/3 trial verdict).   Over Mr. Young's and Mrs.

Shepley's objections, the district court entered final judgment under Rule 54(b) on

November 20, 2007.   *See* Dkt 4880-2.

Because the judgment dismissed with prejudice the claims of the Johnson &

Johnson consumer Sub-Class, including the claims of Mr. Young and Mrs. Shepley,

a timely appeal should have been taken by Appellee-Counsel, as counsel to the

certified Sub-Class of consumers of Johnson & Johnson drugs.   Inexplicably, it was

not.   Instead, at the end of the appeal period and despite his withdrawal as class

counsel, on December 19, 2007, Appellant was forced to file a Notice of Appeal on

behalf of Mr. Young and Mrs. Shepley to preserve at least their individual right to

challenge the dismissal of their claims.   APP. 872.   The Notice of Appeal was signed by Appellant in his capacity as *individual counsel* for Mr. Young and Mrs. Shepley, as he had withdrawn as class counsel on October 1, 2007.   APP. 806.

As discussed more fully in the Statement of Facts below,          despite not pursuing the appeal initially, Appellee-Counsel then usurped the appeal from Appellant by filing a Motion to Substitute Counsel on Appeal, seeking "to substitute themselves as counsel for class representatives Larry Young and Therese Shepley on the appeal."   The appeal then proceeded with Appellee-Counsel representing Mr. Young, Mrs. Shepley, and the Class, thanks to the timely Notice of Appeal filed by Appellant on behalf of his individual clients.   This appeal resulted in this Court reversing the decision of the district court dismissing the claims against the Johnson& Johnson Defendants.    *In re AWP*, 582 F. 3d at 237.

Upon remand, the district court stated at a hearing to address this Court's Order vacating the judgment in favor of Johnson & Johnson that it never intended to dismiss Mr. Young's case and Mrs. Shepley's case with prejudice, and it may have been "negligent" in simply relying upon language submitted by Appellee-Counsel. Oct. 8, 2009 Tr. at 7:5-14.   After Mrs. Shepley passed away, Appellant's individual clients realized they would fair no better in the district court on remand, in terms of having their voices heard.   Appellant filed a Notice of Suggestion of Death as to Mrs. Shepley and a Motion to Withdraw as to Mr. Young, consistent with his clients'

wishes.   That Motion was granted by electronic order.   That Order also inexplicably barred Appellant from ever "serv(ing) as class counsel in any federal litigation involving challenges to AWP" *sua sponte* on June 22, 2010.   A timely Notice of Appeal was filed July 22, 2010.

## IV.   STATEMENT OF FACTS

### A. MDL 1456

As this Court has observed on the several occasions it has had to address issues in this "sprawling litigation",[1] this litigation was commenced by Appellee-Counsel in 2001 against several prescription drug manufacturers.   Due to the "nearly one hundred cases involving AWP brought against more than forty pharmaceutical defendants", many of which were filed in district courts around the country, the Judicial Panel on Multi-District Litigation ("JPML") ordered the cases against these drug companies consolidated for pretrial purposes.   *In re Immunex Corp. Average Wholesale Price Litig.*, 201 F.Supp. 2d 1378 (JPML 2002).[2]   From

---

[1] *In re Pharmaceutical Industry Average Wholesale Price Litig.*, (*"In re AWP"*) 582 F.3d 156, 161 (1st Cir. 2009).

[2] The JPML expressly found that "all actions in these four dockets involve common questions of fact concerning whether (either singly or as part of a conspiracy) the pharmaceutical defendants engaged in fraudulent marketing, sales and/or billing schemes by unlawfully inflating the average wholesale price of their Medicare covered prescription drugs in order to increase the sales of these drugs to health care professionals and thereby boost the pharmaceutical companies' profits. Centralization of all actions under Section 1407 in the District of Massachusetts will

the formation of MDL 1456, the plaintiffs consisted of insurance companies and other third party payors ("TPPs"), represented by Appellee-Counsel, and consumer advocacy members of the "Prescription Action Litigation" ("PAL") organization, founded and represented by Appellee-Counsel.   None of the original plaintiffs were consumers.   APP. 1412.

### 1. Class Action Proceedings in MDL 1456

In late 2004/early 2005, the TPPs and PAL member plaintiffs moved for certification of a nationwide class against the Track I defendants.[3]   Dkt. Nos. 1026, 1234.   These plaintiffs proposed to include consumers in the nationwide class. However, the district court questioned whether TPPs could adequately represent consumers, stating that there is a "possible conflict between TPPs and Medicare Part B beneficiaries with respect to possible settlements, given the different economic interests of the groups."   *In re AWP*, 230 F.R.D. 61, 80 (D.Mass. 2005).   The court also held that the PAL member plaintiffs had no standing to represent consumer

---

serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."   *Id*. at 1380.

[3] As this Court is aware, by Order of the District Court, the case was divided in to two tracks for litigation purposes.   Track I involved five (5) defendants, including the Johnson & Johnson defendants. *In re AWP*, 582 F.3d at 161 (describing background and procedural history of litigation); *In re AWP*, 582 F.3d 231 (1st Cir. 2009)(addressing an appeal taken by Mr. Young and Mrs. Shepley from the judgment entered in favor of the Johnson & Johnson defendants).

plaintiffs for money damages.   For these reasons, the district court denied the plaintiffs' motion for class certification of a nationwide consumer class of Medicare beneficiaries, but certified a Massachusetts-only consumer class outside the Medicare context.   The court did, however, leave open the possibility of certifying a nationwide consumer class of Medicare beneficiaries, if adequate consumer class representatives could be found, based on the representation of Appellee-Counsel that they had consumer clients "waiting in the wings".   *Id.* at 81.

Appellee-Counsel had no such clients at the time. APP. 1412.   Instead, they were aware of Appellant's representation of individual consumer, cancer patients in related litigation pending in the same district court involving the prescription drug Lupron, *In re Lupron Marketing & Sales Practices Litig.*, MDL 1430 ("*In re Lupron*"), 180 F.Supp.2d 1376 (JPML 2001).   APP. 686-698 (sworn Affidavits filed by Appellants' clients attesting to their involvement in *In re Lupron*).   Because many of Appellant's clients had purchased cancer drugs at issue in MDL 1456, Appellee-Counsel asked the Appellant if he would inquire of his clients about their willingness to serve as named consumer class representatives for the nationwide consumer class in *In re AWP*.   APP. 1421.   Appellant agreed to make such inquiry and, as a result, several of Appellant's clients agreed to intervene in the action. Two of these clients, Mr. Larry Young and Mr. James Shepley, had purchased the

–8–

drugs manufactured by defendant Johnson & Johnson and agreed to serve as named class representatives of the Johnson & Johnson sub-class.[4]

Importantly, Appellant's clients all agreed to intervene in this action and serve as named class representatives on the express condition that their individual counsel, Appellant, would continue to serve as their personal legal counsel and counsel to the class going forward. APP. 686-698. Appellee-Counsel understood this condition of the clients' intervention, and agreed to seek the appointment of Appellant Co-Lead Counsel in the case. Appellee-Counsel and Appellant also agreed to work cooperatively with one another to coordinate their efforts in AWP litigation pending around the country in state and federal court. *See* Dkt. 4723 [Ex. F to the Declaration of DEH in support of HLF's Reply Memorandum Concerning the Appointment of Class Counsel for the Track 2 Classes Pursuant to Fed.R.Civ.Proc. 23(g), and Class Counsel's Submission Dated September 18, 2007) (litigation agreement between Kline & Specter and the MDL Co-Leads).[5] Indeed,

---

4 Mr. Shepley later passed away as a result of the cancer that required his prescription drug treatments. His widow, Therese Shepley, then agreed to continue as class representative on behalf of the Shepley estate. After Mrs. Shepley passed away in late 2009, a Suggestion of Death on the Record was filed pursuant to Federal Rule 25(a) on March 26, 2010. APP. 1511-1512. Although it was not necessary to do so under the Rules, the executors of Mrs. Shepley's estate then sought to formally withdraw the estate from the case as a class representative. APP. 1633-1635.

5 The aforesaid litigation agreement plainly envisioned a coordinated strategy among all the Co-Lead Counsel involving all of their AWP cases pending in state

Appellee-Counsel urged in the district court that such coordinated effort ultimately "benefitted the certified class in this case."[6]  APP. 1466.

On October 17, 2005, a Third Amended Master Consolidated Class Action Complaint ("TAMCC") was filed, with Appellant's clients included as named class representatives of the Track I consumer sub-class, and Appellant listed as Co-Lead Counsel for the plaintiff class. APP. 521-834.   Appellee-Counsel then renewed their motion for certification of nationwide sub-classes of consumers against each of the Track I defendants, this time proffering Appellant's clients as proposed consumer class representatives.   On January 30, 2006, the district court granted the motion and certified nationwide sub-classes of consumer Medicare beneficiaries

---

court.   At the time of the agreement, Kline & Specter had three state court cases – in New Jersey, Pennsylvania and Arizona – while the other Co-Leads had cases in Connecticut, Montana, and Nevada, in addition to MDL 1456.   The New Jersey and Arizona cases were class actions under state law, while the other state actions were representative actions brought on behalf of the State Attorneys General of the respective States.   Appellee-Counsel do not contest that this coordinated strategy existed.   APP. 632 ("we agreed to add Kline & Specter as co-lead to bring their case(s) within the umbrella of the MDL").

6 In the cited pleading (involving fee distribution), Appellee-Counsel urged that "Kline & Specter worked on several other, related cases, all of which were eventually consolidated with MDL 1456, and all of which benefitted the class in this case."   APP. 1466.   Among these "other, related cases" was a New Jersey state court case "involving challenges to AWP", which had been removed to federal court and transferred to MDL 1456, but was remanded subsequently.   *Id.* at 36 (listing 4 AWP cases for which Kline & Specter is seeking attorney's fees and costs, including a "NJ AWP" case); *see In re AWP*, 431 F.Supp. 2d 109 (D.Mass. 2006)(remanding the NJ AWP case back to state court).

with claims against the Track I defendants, including Johnson & Johnson.  *In re AWP*, 233 F.R.D. 229, 230-31 (D.Mass. 2006)("Class Certification Order").  Mr. Young and Mrs. Shepley were certified by the trial court as the named class representatives for the Class 1 class of consumers of J&J Defendant drugs.  *Id.* at 230.  The court's Class Certification Order also appointed Appellant's law firm at the time, Kline & Specter,  Messrs. Young and Shepley were certified as a consumer class representative of the Johnson & Johnson Sub-Class, and Appellant's law firm, Kline & Specter, was appointed as one (1) of five (5) Co-Lead Counsel for plaintiffs.  *Id.*  When Appellant left Kline & Specter in the fall of 2006, the consumer class representatives continued to want their personal counsel to represent them in this litigation.  Accordingly, by agreement among all Co-Lead Counsel, Kline & Specter filed a Notice of Withdrawal from the case and Appellant's new law firm, The Haviland Law Firm, L.L.C. ("HLF"), entered its appearance as Co-Lead Counsel in September 2006.  APP. 1501.  This change of Co-Lead Counsel firms went unremarked by the district court.

The relationship between Appellant and the other Co-Lead counsel began to deteriorate in early 2007 when a "rift between class counsel"[7] formed after

---

7 *See* Electronic Order dated July 2, 2007 (wherein the district court stated: "The Court will consider any objections [to the AstraZeneca settlement] at the fairness hearing.  I am concerned about the rift between class counsel.  In particular, I am concerned about the allegation of Mr. Haviland that he never agreed to the

Appellee-Counsel sought to settle the consumer Class 1 claims against AstraZeneca

without the approval, and over the objections, of one the named plaintiffs, M. Joyce

Howe, a client of Appellant.   Mrs. Howe objected, *inter alia*, because the proposed

settlement negotiated by Appellee-Counsel guaranteed a *cy pres* distribution of

settlements funds to non-class members, like Appellee-Counsel's client, the PAL

organization.   As a result of Mrs. Howe's objections to the amount of the *cy pres*

distribution, the district court ordered that the amount of the *cy pres* be should be

reduced.   *See In re AWP*, 588 F.3d 24, 31(1st Cir. Nov. 19, 2009)(noting that "[t]he

district judge agreed with [Mrs.] Howe that more money should go to the plaintiffs

rather than to the *cy pres* fund.   She instructed the parties that the settlement should

pay <u>treble</u> damages to those plaintiffs who had the strongest claims because they

obtained Zoladex in the 'heartland period' and should correspondingly reduce the cy

pres fund.")(emphasis in original).

---

settlement (see Paragraph 5), which class counsel vehemently disputes.   If Mr.
Haviland wants to press the point, he should file an affidavit.").   At the district
court's direction, Appellant filed an Affidavit under seal detailing his client's
concerns about the proposed settlement, including the fact that Mrs. Howe did not
approve of the settlement, as had been misrepresented by Appellee-Counsel in
papers filed of record. APP. 694 (wherein Mrs. Howe attested, "I authorized Mr.
Haviland to file such objection to ensure that the Court was aware of the fact that I
did not consent to the settlement and the reasons for my disagreement."); *see also,*
August 24, 2007 Declaration of Donald E. Haviland, Jr. in Response to Court
Directive Concerning the AstraZeneca Settlements (filed under seal in the district
court and setting forth Mrs. Howe objections).

Appellant's clients became concerned that Appellee-Counsel were not acting in their best interests, or the best interests of the consumer class, as opposed to the TPP class and the PAL and other association plaintiffs with whom Appellee-Counsel had direct attorney-client relationships.   APP. 686-698.   The named class representatives of the Johnson & Johnson Sub-Class of consumers had become particularly concerned about the manner in which the case had been tried against Johnson & Johnson in late 2006, resulting in a verdict in favor of the defendant. The adverse verdict was one thing; but the failure on the part of Appellee-Counsel to challenge Johnson & Johnson's argument that the verdict should be extended to bar the consumer class claims that had not been tried was quite another.   Appellant, on behalf of Mr. Young and Mrs. Shepley, *alone* opposed Johnson & Johnson's effort to have a Rule 54(b) judgment entered against consumers.   APP. 677.[8]

Throughout the summer of 2007, Appellant struggled in the district court to represent the interests of his individual clients and the consumer class they had been certified to represent.   *See generally*, APP. 699, 740 and 813.   Repeatedly, Appellee-Counsel opposed his clients or acted without their knowledge or consent,

---

8 In his sworn Affidavit filed in August 2007, Mr. Young attested as follows: "I am especially troubled to learn from Mr. Haviland that my case against Johnson & Johnson for the Procrit my wife took may not be allowed to proceed as a result of the way the case on behalf of the insurance companies in the Class was litigated against Johnson & Johnson.   I trust that Mr. Haviland will press my case against the drug company, including any appeal that may be necessary, to ensure that the unlawful conduct of Johnson & Johnson does not go unpunished.")

–13–

as in the case of the settlements reached with AstraZeneca and Bristol-Myers Squibb

("BMS").[9]   Because Appellee-counsel continued to act without the knowledge or

consent of Appellant's clients and continued to make misleading (and even false

statements) about Appellant and his clients in papers filed in the district court, in

accordance with his client's wishes, Appellant withdrew as class counsel on October

1, 2007.   APP. 806[10]; APP. 686-698.

### 2.  The Case Against Johnson & Johnson, Appeal and Remand.

---

[9] While the district court was considering preliminary approval of the proposed settlement with AstraZeneca in light of Mrs. Howe's objections to the *cy pres* set aside, Appellee-Counsel reached a separate proposed settlement with BMS.   The court-certified named plaintiff of the BMS Sub-Class, Reverend David Aaronson, a client of Appellant, had expressly advised Appellee-Counsel through Appellant that he did not consent to the negotiation of any settlement that contained similar terms to the objectionable terms in the AstraZeneca settlement.   Nevertheless, despite this express admonition from the lone named consumer class representative, Appellee-Counsel proceeded to settle with BMS on terms it did not disclose to Appellant or Reverend Aaronson.   APP. 831-833.   In doing so, Appellee-Counsel ignored the express admonition of the district court to "bring Mr. Haviland in the loop" on the BMS settlement.   "[A]s long as he's still lead counsel, I think you have to let him know what's happening."   July 3, 2007 Tr. 46:8-10, 22-24.

[10] The Notice of Withdrawal explained, "The Haviland Law Firm, LLC hereby withdraws as class counsel in this action in view of the standing of most of its clients to represent any consumer class in Track 2 being mooted, the irreconcilable conflict that has arisen with other class counsel, and for the additional reasons set forth in the Reply Memorandum Concerning the Appointment of Class Counsel for the Track 2 Classes and Class Counsel's Submission Dated September 18, 2007, the Declaration of Donald E. Haviland, Jr., in support thereof and exhibits thereto, filed contemporaneously herewith."   APP. 806.

The district court subsequently agreed with Johnson & Johnson that the nationwide consumer class claims should be dismissed with prejudice (on grounds of the Class 2/3 trial verdict).   Over Mr. Young's and Mrs. Shepley's objections, the district court entered final judgment under Rule 54(b) on November 20, 2007.   *See* Dkt 4880-2.   Because the judgment dismissed with prejudice the claims of the Johnson & Johnson consumer Sub-Class, including the claims of Mr. Young and Mrs. Shepley, a timely appeal should have been taken by Appellee-Counsel, as counsel to the certified Sub-Class of consumers of Johnson & Johnson drugs. Inexplicably, it was not.   Instead, at the end of the appeal period and despite his withdrawal as class counsel, on December 19, 2007, Appellant was forced to file a Notice of Appeal on behalf of Mr. Young and Mrs. Shepley to preserve at least their individual right to challenge the dismissal of their claims.   APP. 872.   The Notice of Appeal was signed by Appellant in his capacity as *individual counsel* for Mr. Young and Mrs. Shepley, as he had withdrawn as class counsel on October 1, 2007. APP. 806.   The Johnson & Johnson defendants filed a Notice of Cross-Appeal, specifically "preserv(ing) their right to contest the propriety and validity of the appeal filed by Larry Young and Therese Shepley."   APP. 1000.

Three months after Appellant had withdrawn as class counsel, the district court issued an order, *sua sponte*, disqualifying Appellant as class counsel.   Dkt. No. 4972.   The disqualification order was entered without prior notice, a hearing or

opportunity to be heard, despite Appellant's repeated requests for an evidentiary hearing should the court choose to determine the counsel "best able to represent the class" under Rule 23(g).   APP. 641, 706.

Immediately thereafter, Johnson & Johnson sought to dismiss the appeal by Mr. Young and Mrs. Shepley on grounds of the disqualification of Appellant.   APP. 1003.   Johnson & Johnson argued, "[a]s a matter of law, only court-appointed class counsel may, in consultation with named plaintiffs, prosecute an appeal of a judgment adverse to the class."   *Id.*   Indeed, it argued that Appellant's "appointment [as class counsel] may not have been effective under the procedures established under Fed. R. Civ. P. 23(g)(2)."   *Id.* at n. 2. Johnson & Johnson then urged this Court to dismiss the appeal because "[t]he other class counsel did not sign the Notice of Appeal, or otherwise take steps to appeal the judgment in favor of the J&J Defendants, apparently based on a determination that an appeal was not in the best interests of the class."   Johnson & Johnson claimed on appeal that the class counsel status of Appellant was unclear prior to Appellant's withdrawal in October 2007 (APP. 1003) , and that it was improper "for a single class to take two conflicting positions, as the Class 1 plaintiffs arguably have here."   *In re AWP*, 582 F.3d 235 n.3.

In response to Johnson & Johnson's argument, this Court observed:

"[t]he Class 1 plaintiffs' responses [to J&J's efforts to dismiss their claims with prejudice] appear to have taken two different positions.   In one response, filed by Attorney Donald Haviland, Jr. on behalf of the 'Class 1 and Class 3 Consumers,' the Class 1 plaintiffs argued that they entry of judgment against them would 'unfairly and inappropriately limit' their right 'to adjudicate their claims fully.'   A separate, later filing by the other attorneys representing the plaintiffs, including Mr. Berman, stated that the '[p]laintiffs … neither consent to, nor oppose" the requested relief, but nonetheless argued, inter alia, that the Class a plaintiffs' claims had never been adjudicated…."

*Id.*   However, because "J&J did not press this point at argument or in its brief," this Court determined that it "need not explore" the issue of "the potential to create unusual, even novel, difficulties" of a single class taking conflicting positions.   *Id.* at n.3.

From the standpoint of the plaintiffs, Mr. Young and Mrs. Shepley, however, there was nothing "conflicting" about their position: they timely objected to Johnson & Johnson's effort to have their claims dismissed with prejudice.   They simply could not get Appellee-Counsel to listen to their purported clients and do the right thing.   Appellee-Counsel were fully aware of this complaint. APP. 1541. Remarkably, Appellee-Counsel seized upon the occasion of the district court's *sua sponte* disqualification order to displace Appellant's representation of his clients on the appeal.   They strangely filed a Motion to Substitute Counsel on Appeal, seeking "to substitute themselves as counsel for class representatives Larry Young and Therese Shepley on the appeal", along with a separate "Representation Statement"

–17–

that limited their stated representation to the "Certified Classes". *Compare* APP. 1065-1069, *with* 1070-1075. However, they made clear that they believed "[t]he views of class representatives do not trump those of class counsel, who owe a duty to the class as a whole." APP. 1067.

Were it not for the views of Mr. Young and Mrs. Shepley "trump(ing)" those of Appellee class counsel in this case, this Court would not have had occasion to reverse the decision of the district court dismissing the class claims against the Johnson & Johnson defendants, and to remand for further proceedings consistent with its Order.[11] *In re AWP*, 582 F. 3d at 237 ("Because we lack a clear understanding of both the scope of the district court's judgment and the reasons for the judgment, we will remand to the district court for additional explanation of its judgment.")

On remand, on October 8, 2009, the district court held a hearing to address this Court's Order vacating the judgment in favor of Johnson & Johnson. Despite the parties' understanding on appeal, the district court remarked at the outset:

---

[11] Indeed, while Appellee-Counsel argued vehemently in the district court that Appellant was never properly approved as lead counsel for the class by the district court, *e.g.,* APP. 667 ("Haviland's behavior here demonstrates … precisely why Haviland *should not become*" a Co-Lead Counsel for the Class), on appeal they conveniently abandoned that position in favor of a claim that the "appeal was timely filed by attorney Donald Haviland at a time when Mr. Haviland was Class Counsel." APP. 1306. The inconsistent argument ignored the fact that the Notice of Appeal was filed by Appellant December 20, 2007, nearly two months after the Notice of Withdrawal had been filed by Appellant. *Compare* APP. 872-873 *with* APP. 806.

> "Well, ***I had no intent to dismiss it other than for Massachusetts***. Let's put it this way:  ***No one was more surprised than I.***   Maybe the language went in too fast or whatever.   But I did intend for Massachusetts.   I couldn't have possibly thought through the country because at that point I hadn't gone through all the national laws.   So I did it under 93A was my intent.   ***And if I was negligent in how I phrased it, I think I just took [Appellee-counsel's] wording, and I just didn't intend that, I didn't write on it.***   But I did intend it for 93A.
>
> *          *          *
>
> If I wrote it more broadly, it's because I took [Appellee-Counsel's] language, and ***it wasn't my intent, all right***?   ***So if someone had simply moved for reconsideration, I could have clarified that point on national versus state.***
>
> *          *          *
>
> … I didn't think I was doing the whole thing.   Now, maybe I was tired at the end and didn't notice what the language said, and ***no one asked me to clarify***, so, okay, I wasn't planning on doing it for the country."

Oct. 8, 2009 Tr. at 7:5-14; 7:25-8:4; 13:23-14:2 (emphasis added).

Upon hearing the district court state that it never intended to dismiss Mr. Young's case and Mrs. Shepley's case with prejudice, that it may have been "negligent" in simply relying upon language submitted by Appellee-Counsel, and that it apparently completely ignored the timely submission made by Mr. Young and Mrs. Shepley raising the very issue the court said it needed to have raised in order to "clarif(y) that point" on reconsideration, Appellant realized that his individual clients would fair no better in the district court on remand, in terms of having their voices heard.   What does not appear clearly in the record is the discussion had between Appellee-Counsel and Appellant wherein it was made clear that the clients did not want to be represented by Appellee's any further, and that they wanted to

–19–

remove themselves from the litigation. Appellee's said they were going to settle the case, and asked for a period of time to do so. APP. 1540-1563. Upon failing to do so, and after Mrs. Shepley passed, two things happened: (1) a Notice of Suggestion of Death was filed as to Mrs. Shepley, and (2) a Motion with Withdraw was filed as to Mr. Young.

## B. Other AWP Litigation in Federal and State Court

The cases consolidated as part of MDL 1456 are not the only cases "involving challenges to AWP" that exist. To the contrary, the problem of AWP inflation and spread marketing by prescription drug companies made possible by inflated AWPs has spawned litigation by various plaintiffs – including consumers, businesses of government entities – in state and federal courts throughout the country.

At the time MDL 1456 was formed, other cases "involving challenges to AWP" were pending in both state and federal courts. However, these cases were not consolidated as part of MDL 1456. For instance, a separate court in the District of Massachusetts was managing a wholly separate multi-district litigation "involving challenges to AWP." *See In re Lupron Marketing & Sales Practices Litig.*, MDL 1430 ("*In re Lupron*"), 180 F.Supp.2d 1376 (JPML 2001). After MDL 1456 was formed, other class action cases "involving challenges to AWP" were filed in federal district court, but they were not consolidated as part of MDL 1456. *See, e.g, In re AWP*, 582 F.3d 156, 160 (noting that AWP claims brought against certain

–20–

publishers of AWP were part of a wholly separate proceeding in the district court,

citing *Nat'l Ass'n of Chain Drug Stores v. New England Health Benefits Fund,* 582

F.3d 30 (1st Cir. 2009)).

     In addition to these federal actions "involving challenges to AWP", dozens of

other AWP cases have been filed in state court.   Among these were two class action

cases that were filed by plaintiffs before MDL 1456 was formed, one in Arizona (the

"Arizona action") and the other in New Jersey (the "New Jersey action").

Appellant is counsel to the named representative plaintiffs in both cases.   Both

actions were removed to federal court and transferred as part of MDL 1456.   But,

both actions were subsequently remanded by the district court back to state court.

*See In re AWP*, 307 F.Supp. 2d 190 (D.Mass. 2004)(remanding Arizona action); *In*

*re AWP*, 431 F.Supp. 2d 109 (D.Mass. 2006)(remanding New Jersey action).[12]

     The New Jersey class action is currently proceeding against "non-overlapping

defendants", *i.e.*, defendants which are not part of MDL 1456, either because they

were never sued or because they were dismissed from the proceeding.   For

example, Hoffman La-Roche is a defendant in the New Jersey action, but, for

---

12 Despite the district court's remand of the New Jersey and Arizona actions, it has
entertained several motions filed by defendants seeking to enjoin the actions. APP.
807-812, APP. 874-881, APP. 882-993, APP. 994-996, APP. 997-999, APP.
1033-1035, APP. 1036-1045, APP. 1083-1111, APP. 1133-1135, APP. 1136, APP.
1137-1305, APP. 1322-1337, APP. 1338-1344, APP. 1345-1348, APP. 1442-1451,
and APP. 1452-1453.

reasons known only to Appellee-Counsel, was not included as a defendant in their

Amended Consolidated Class Action Complaint filed in 2004. Accordingly,

Hoffman-LaRoche was dismissed from the MDL by Order dated April 26, 2004.

APP. 620.

Several AWP cases also have been filed by State Attorneys General who have

retained outside counsel to pursue claims on behalf of state Medicaid programs,

other proprietary programs, and consumers. Appellee-counsel were retained to

represent the States of Montana, Nevada, Arizona and Connecticut in such actions.

Appellant was retained to represent the Commonwealth of Pennsylvania in an action

currently pending in Pennsylvania state court (the "Pennsylvania action"). On

behalf of Pennsylvania, however, Appellant has had to fight to maintain the

independence of the Pennsylvania action from MDL 1456.[13] In 2010, Appellant

tried to cases to verdict, one against Bristol-Myers Squibb (resulting in a verdict of

---

13 Prior to Appellant's clients (and Appellant) being invited to join in MDL 1456,
Appellee-Counsel sought to have the Pennsylvania action (and other Attorney
General cases) included within the class definition of proposed class in MDL 1456.
Appellant, on behalf of Pennsylvania, successfully opposed such a sweeping class
definition. *See* Dkt. No. 1372 (Mem. of the Attorney General of the
Commonwealth of Pennsylvania in Opposition to Class Certification, filed February
8, 2005). Appellant also twice opposed efforts by defendants to have the
Pennsylvania action removed to federal court and transferred for inclusion as part of
MDL 1456. *See Pennsylvania v. TAP Pharm. Prods., Inc.*, 415 F.Supp. 2d 516
(E.D.Pa. 2005); *In re AWP*, 509 F.Supp. 2d 82 (D.Mass. 2007)(remanding
Pennsylvania action, along with cases brought by Illinois, Ohio, Mississippi,
Kentucky, Idaho, and certain New York counties).

$27.6 million) and another against the Johnson & Johnson defendants (resulting in a

verdict, including civil penalties, of nearly $52 million;

[http://www.attorneygeneral.gov/press.aspx?id=5907;

http://www.law.com/jsp/article.jsp?id=1202472332498&rss=newswire]).

## V.    **SUMMARY OF ARGUMENT**

The instant appeal concerns a prophylactic Order entered June 21, 2010

barring the executors of the estate of named representative plaintiffs in a class action

from ever "serv(ing) as class representatives in any proposed class action involving

AWP" and barring the attorney for the deceased representative plaintiffs from ever

serving as "class counsel" in any future federal lawsuit "involving challenges to

AWP".   As such, the district court's Order constitutes an injunction that should be

deemed immediately appealable to this Court.

The subject injunction should be vacated by this Court for several reasons.   It

is submitted that the district court erred in issuing a sweeping injunction barring any

future involvement in a class action broadly "involving AWP", in any state or

federal court, by parties, co-executors of the estate of named representative plaintiffs

in the action, who never appeared before the court or submitted to the court's general

jurisdiction.   The court further erred by enjoining the attorney for the subject estate,

who was asked by the co-executors to abandon the property interest of the estate in

the litigation and to withdraw the interests of the estate (and thereby the executors

charged with administering the estate's interests) from the lawsuit, from ever representing clients as "class counsel" in any future federal litigation "involving challenges to AWP".   In so barring the parties and the attorney in response to a simple Motion to Withdraw – which was unopposed and was ultimately granted by the court – the district court exceeded the bounds of its permissible authority and abused its discretion in several respects.

First, the court lacked both personal over the enjoined parties and subject matter jurisdiction over any and all future class actions "involving AWP".   Second, in issuing the sweeping injunction against any future class action in state or federal court by the parties, and federal court by the attorney, the court failed to follow the mandatory requisites under Federal Rule 23, and as compelled by the United States Supreme Court, for determination of the adequacy of class plaintiffs and/or class counsel in a federal class action litigation.   Third, the court failed to accord either the enjoined parties or the attorney procedural or substantive due process in issuing a prophylactic injunction against future participation in litigation without advance notice, a hearing or other opportunity to be heard, or to develop a proper evidentiary record for the court's requisite findings respecting the injunction.   Finally, the court exceeded the bounds of its judicial authority granted by the Judicial Panel on Multi-District Litigation ("JPML") to administer certain federal claims "involving challenges to AWP" concerning certain prescription drug companies.   By barring

–24–

all future class action litigation by the parties and the attorney as to any claim "involving AWP", the court exceeded the scope of the JPML's Order consolidating certain cases, and "tag-along" cases, for pretrial purposes and the limits of 28 U.S.C. § 1407.

For these reasons, it is respectfully submitted that the June 22, 2010 Order of the district court should be vacated.

## VI. <u>ARGUMENT</u>

### A. The District Court Erred in Enjoining Appellant from Ever "Serv(ing) as Class Counsel in any Federal Litigation Involving Challenges to AWP."

#### 1. The District Court's Injunction Against the Future Practice of Law Was Overbroad and Beyond the Power of the District Court.

Before issuing an injunction, a court must satisfy itself that it has the requisite jurisdiction to hear the application for the injunction. *See*, *e.g.*, *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 198 (3d Cir. 1993) ("neither the Anti-Injunction Act, 28 U.S.C. § 2283 (1970), nor the All-Writs Act, 28 U.S.C. § 1651 (1988), dispels the federal court's jurisdictional requisite."). This requires the Court to first determine whether it has (1) personal jurisdiction over the parties sought to be enjoined, and (2) subject matter jurisdiction over the controversy.

Turning to the question of personal jurisdiction, while the district court arguably possessed the power to enjoin Appellant, who had appeared in the action in

2005 on behalf of Mr. Young and Mr. and Mrs. Shepley as individual and representative plaintiffs, it lacked the power to issue an injunction affecting the rights of the executors of the estate of the Shepleys. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 134 F.3d 133, 140-41 (3d Cir. 1998) ("*G.M. Trucks*") ("At the threshold, we must examine our power over the parties.") (citing *Carlough*). The court's injunction must be viewed in its totality since it related to a singular filing by Appellant on behalf of the Shepleys' estate. Since both Shepleys had passed away, there was no plaintiff to continue the litigation. The executors of the Shepleys' estate had chosen to not pursue the action any further, as was their right, either in their individual capacities, as beneficiaries of the Shepleys' estate (who would benefit from any financial recovery in the action), or as executors of the Shepleys' estate (with the power to decide whether the estate would continue). Unlike the Shepleys (and their subsequent estate), the executors of the Shepley estate never personally appeared in the action. To the contrary, after the case was remanded by his Court, and Appellee-Counsel called Appellant to determine the willingness of the Shepleys to continue, they were advised by Appellant that both Mr. and Mrs. Shepley had passed, and that the executors of their estate were not interested in pursuing the action. Although Appellee-Counsel pleaded with Appellant to delay any withdrawal of the Shepleys' claim from the action, Appellant had no choice to file the Motion to Withdraw when it was clear

that Johnson & Johnson intended to pursue a Motion for Summary Judgment.   The executors wanted no part of the case, and no part of the defense of the Motion for Summary Judgment.

Because they never appeared in the action, the district court was powerless to exercise jurisdiction over them.   They never wanted to appear in the action or pursue the AWP litigation originally brought by the decedents, the Shepleys.   That is why they expressly directed Appellant, in his capacity as counsel for the Shepleys and their estate, to *withdraw* the Shepleys' estate from the litigation.   They did this precisely to *avoid having to appear* in the litigation in Boston and to avoid having to participate going forward, including having to defend the Motion for Summary Judgment or attend a lengthy trial in Boston, thousands of miles away from their homes.   Simply put, when the Shepleys died, it was the choice of the executors to not be forced to pursue the claims originally brought by Mr. and Mrs. Shepley after they had passed.   They made that choice, and the district court should not have sought to punish them for doing so.   Apart from the court's motive for doing so, it had no power to bind parties who never appear before it to a perpetual bar order preventing them from pursuing litigation in any court involving a particular subject matter, AWP.

The district court's attempt to exercise personal jurisdiction over the executors – not in their capacity as executors of the Shepley estate but in their

individual capacity as well -- barring them individually from "serv(ing) as class representatives in any proposed class action involving AWP", should be vacated.   If the court believed it had the power to bar these persons who never appeared in MDL 1456 from ever pursuing AWP claims anywhere in the country – including in state court – then it erroneously believed it had the power to deny the Motion to Withdraw and, in doing so, force the executors to proceed as class representatives.[14]   It did not.   The Motion, while authorized by the executors, was filed on behalf of the Shepleys' estate, not the executors.   The district court could only exercise personal jurisdiction over the Shepleys, but once they had passed away, so did the court's power to adjudicate their rights, short of some affirmative action on the part of those charged with administering the estate to invoke the court's jurisdiction over the estate and them personally.

      Whether the district court's order is viewed as an injunction (against future

---

[14] Such an Order, if issued, not only would have implicated the issue of the lack of personal jurisdiction, as here, but it would have exposed the limits of the district court's power to issue an injunction under the Anti-Injunction Act.   The Anti-Injunction Act prohibits a federal court from enjoining state-court proceedings.   *See Garcia v. Bauza-Salas*, 862 F.2d 905, 907 (1st Cir. 1998) (citations omitted).   The Anti-Injunction Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions."   *Atlantic Coastline Rail Co.*, 398 U.S. at 286; *1975 Salaried Retirement Plan v. Nobers*, 968 F.2d 401, 405 (3d Cir. 1992).   The district court's order enjoining the executors from proceeding in any court contravenes the Anti-Injunction Act in the absence of some showing in the record that the court was acting properly pursuant to one of the specified exceptions.

class action claims involving "challenges to AWP") or a sanction (as is urged by Appellee-Counsel), its impact is the same as it pertains to the executors of the estate of the estate of Theresa Shepley.   Having never appeared in MDL 1456, the district court was powerless to enjoin or sanction them.   Further, at best, only one of the two co-executors of the estate, Ken Wright, was mentioned in a pleading.   APP. 1633.   And, because the named representative plaintiff Therese Shepley had passed away, the district court was powerless to order any further involvement by the estate upon the filing of a "suggestion of death."

Federal Rule 25 provides in pertinent part that:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).   Here, a Suggestion of Death on the Record respecting plaintiff Therese Shepley was filed and served on all parties on March 26, 2010. APP. 1511-1512.   Under Rule 25, a party or decedent's successor or representative could move the court for substitution of an appropriate representative within ninety days of the filing of the Suggestion of Death.   The ninety-day substitution period ran through June 24, 2010.   At no time during that ninety-day period did any party or person move to substitute.   Indeed, the executors of the Shepley estate purposely did not move to substitute as they, on behalf of the estate, desired *no further*

*involvement* in this action.[15]   Appellee-Counsel chose not to move for substitution of the Shepley estate.   Instead, they filed a distinct Motion to Add Class One representative for the Johnson & Johnson Defendants.   APP. 1599-1602.   After the expiration of the ninety-day period, no party, including Defendants who clearly were aware of the filing of the Suggestion of Death[16], moved the district court for an extension of time under Rule 6 for "excusable neglect".   *See* Fed. R.Civ. P. 6(b)(1).

The effect of the filing of the Suggestion of Death regarding Mrs. Shepley, and the fact that no party moved for an extension of time under Rule 6 for "excusable neglect", is that the district court was required to dismiss Mrs. Shelpey's cause of action.   The later-filed Motion to Withdraw was a legal nullity as to the Shepley estate, since the action had to be dismissed by operation of law.   Thus, the court's imposition of an injunction or sanction against Appellant and the executors of the estate of Mrs. Shepley for seeking to withdraw exceed the bounds of the court's legal authority.

As for subject matter jurisdiction, the district court's jurisdiction over

---

15 Notably, the Supreme Court long ago noted that "[t]he federal law embodied in Rule 25(a) has a direct impact on the probate of estates in the state courts.   It should not be construed to be more disruptive of prompt and orderly probate administration in those courts than its language makes necessary."   *Anderson v. Yungkau*, 329 U.S. 482, 486 (1947).

16 *See* Parties' Joint Motion for Case Management Order No. 33 at ¶3, Dkt. No.7105 ("On the same day, Mr. Haviland filed a Suggestion of Death on the Record indicating that Therese Shepley died on October 2, 2009.")

"litigation involving challenges to AWP" is not exclusive.  *Nobers*, 968 F.2d at 405-406 ("we must first determine whether federal courts have exclusive jurisdiction over the claims").  Even where the federal court does have exclusive jurisdiction, and a state court is proceeding in violation of federal law, that does not itself warrant an injunction:

> A federal court does not have inherent power to ignore the limitations of 28 U.S.C. §2283 and enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear.

*Chick Kam Choo*, 486 U.S. at 146.

As discussed below, the JPML did not vest the district court with exclusive jurisdiction over all matters involving AWP.  *See generally, In re Immunex Corp. Average Wholesale Price Litig.*, 201 F.Supp. 2d 1378.  To the contrary, the Panel consolidated in MDL 1456 certain cases against prescription drug companies involving allegations of consumer fraud and conspiracy.  Other cases involving other parties and their potential liability for AWP inflation, fraud and conspiracy have been left to proceed alone, independent of MDL 1456.  Other AWP cases are currently proceeding in various state and federal courts throughout the country.  *See, e.g., In re Lupron; FirstDatabank*.  That the district court does not possess exclusive jurisdiction over all cases involving AWP -- even against the defendant

drug companies included in MDL 1456 -- is borne at by the district court's several remand orders issued throughout the years. *See, e.g., In re AWP,* 307 F.Supp.2d 190 (D.Mass. 2004) (remanding the Arizona action); *In re AWP*, 431 F.Supp.2d 109 (D.Mass. 2006) (remanding the New Jersey action); *In re AWP,* 509 F.Supp.2d 82 (D.Mass. 2007) (remanding the Pennsylvania action).

Because the district court lacked personal jurisdiction over all the parties subject to its injunction, and lacked personal jurisdiction over "any federal litigation involving challenges to AWP", its injunction was overbroad, extended beyond its power and authority, and should be vacated.

> **2. The District Court's Prospective Ruling, Barring An Attorney from Ever Serving as Class Counsel in Any Future Class Action Litigation Involving AWP, Violated the Express Provisions of Rule 23 Governing Such a Ruling.**

In December 2003, Federal Rule of Civil Procedure 23 was amended in a number of significant respects, including the addition of Subdivision 23(g) respecting the appointment of class counsel. This substantial change to the federal class action rules applied to a district court's decisions to appoint class counsel in any class action case pending in federal court.

Prior to the 2003 amendments to Rule 23, and the addition of the mandatory provisions of Rule 23(g), Rule 23(a)(4) provided that "[o]ne or more member of a class may sue or be sued as representative parties on behalf of all only if . . .the

representative parties will fairly and adequately represent the interests of the class." The 2003 amendments added Rule 23(g) to make clear that, while the requisites of Rule 23(a)(4) still must be satisfied as to the court's "scrutiny of the proposed class representative, . . . *this subdivision will guide the court in assessing proposed class counsel as part of the certification decision*."   *See* Advisory Committee notes to 2003 Rule amendments to Rule 23(g)(Emphasis added) ("Class counsel must be appointed for all classes, including each subclass that the court certifies to represent divergent interests").   In other words, a decision by a district court respecting whether an attorney can serve as "class counsel" must be made "as part of the certification decision."

A fundamental prerequisite of a class action, pursuant to Federal Rule of Civil Procedure 23(a)(4), is the finding that the "the representative parties will fairly and adequately protect the interests of the class."   F.R.Civ.P. 23(a)(4).   That adequacy requirement pertains to both the individual class representatives and the qualifications of class counsel and, until the 2003 amendments to the Federal Rules, served as the sole instrument through which the Court scrutinized the proposed class counsel.   In 2003, the Advisory Committee adopted Rule 23(g) to "respond[] to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action."   Advisory Committee Notes Rule 23, 2003 Amendments, Subsection (g).

Under Rule 23(g), a district court must appoint class counsel pursuant to the following factors: "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." F.R.Civ.P. 23(g)(c)(i).  The court also should "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(C)(ii).

Rule 23(g) requires that "[c]lass counsel must be appointed for all classes, including each subclass that the court certifies to represent divergent interests." *Id.* The rule establishes the procedures and standards to be applied whether there are one or more applicants for appointment as class counsel.  If there is only one applicant, the court may appoint that applicant "only if the applicant is adequate under Rule 23(g)(1)(B) and (C)." F.R.Civ.P. 23(g)(2)(B).  If there are multiple applicants, the court must appoint the applicant "best able to represent the interests of the class." *Id.*  The Advisory Committee notes shed further light on this standard, suggesting that the court "go beyond scrutinizing the adequacy of counsel and make a comparison of the strengths of the various applicants," specifically providing that an "important consideration might be the applicant's existing attorney-client relationship with the proposed class representative." *Id.*  Consistent with the other

−34−

prerequisites, applicants for the appointment as class counsel have the burden of showing their adequacy.   *In re Organogenesis Securities Litigation,* 241 F.R.D. 397, 408 (D.Mass., 2007).

The appointment of class counsel is of paramount importance to the successful resolution of a class action.   The importance of such judicial evaluation of proposed class counsel was articulated in *In re J.P. Morgan Chase Cash Balance Litigation*, wherein the Court stated that "[a]ppointment of class counsel is an extraordinary practice with respect to dictating and limiting the class members' control over the attorney-client relationship and thus requires a heightened level of scrutiny to ensure that the interests of the class members are adequately represented and protected."   2007 WL 1549121, *10 (S.D.N.Y., Mar. 15, 2007).   Accordingly, the Federal Rules mandate that a district court conduct an independent review of all the applicants seeking appointment as class counsel employing a heightened level of scrutiny to ensure that the interests of the class members are adequately represented and protected.

The Supreme Court has admonished courts to pay heightened attention to the requirements for class certification at all times.   *Ortiz*, 527 U.S. at 848-49; *Amchem*, 521 U.S. at 620.   In the litigation context especially, a district court is required to undertake a "rigorous analysis" of the class action requirements to determine the propriety of class certification, including the decision to appoint (or

–35–

deny appointment of) class counsel.   *See Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1ˢᵗ Cir. 2003).   The district court in this case manifestly failed to apply either "heightened attention" or a "rigorous analysis" to its decision to bar class counsel status to Appellant perpetually into the future, as mandated by the Supreme Court.

In this case, there was no "class certification decision" at the time the court entered its order barring Appellant from ever "serv(ing) as class counsel in any federal litigation involving challenges to AWP."   Far from it.   As this Court has observed, the class involving Mr. Young and the Shepleys had been certified in January 2006.   *In re AWP,* 582 F.3d 231 (1ˢᵗ Cir, 2009).   Instead, at the time of the court's injunction, two of the dozens of named plaintiffs decided to withdraw as plaintiffs from a previously certified class action.   One plaintiff, Mr. Young, was still living, the other, the Shepleys, had passed.   They both directed their personal counsel, Appellant, to file appropriate papers withdrawing them as representative plaintiffs.   Mr. Young did so directly; the Shepleys' estate did so by its executors. Appellant complied with the directive.   In response, the district court – for reasons known only to the court (due to the lack of a hearing or findings) – chose to allow the plaintiffs to withdraw, but on the condition that they could never pursue litigation involving AWP anywhere at any time regardless of any future circumstances that might affect them or their families.   The court also chose to enjoin the plaintiffs'

counsel from any future class action representation in federal court "involving challenges to AWP", regardless of the desires of any present or future clients who might retain his services for such legal representation.

While the court's rationale for its action remains a mystery, its failure to make the requisite findings under Rule 23(g), including finding that Appellant would not be the "applicant best able" to represent a class of plaintiffs in any hypothetical future class action case "involving challenges to AWP", should be fatal to its order. Fed.R.Civ.P. 23(g)(2)(B).   The district court's decision to enter a prophylactic bar order preventing an attorney from ever serving as "class counsel" in "*any* federal litigation" that might be brought *in any federal court* that *in any way involves* a "challenge to AWP" should be deemed void for vagueness, if not overbroad and overreaching.   Such a determination – divorced from any decision under the Rules involving class certification or the appointment of counsel "best able" to represent some as-yet-unknown future putative class of persons looking to "challenge AWP" -- was improper.

### 3.    The District Court Exceeded the Bounds of its Authority Under 28 U.S.C. § 1407.

While the Judicial Panel on Multi-District Litigation ("JPML") vested the District Court via MDL 1456 with the power to oversee consolidated federal cases involving manipulation by certain drug companies of the "Average Wholesale

Prices" ("AWP") for their prescription drugs, it did not give the court jurisdiction over all matters filed, and to be filed in the future, involving AWP.[17]    Indeed, this Court has twice entertained appeals from *other cases* involving "challenges to AWP", thereby demonstrating that the district court in MDL 1456 does not have exclusive subject matter jurisdiction over "any federal litigation involving challenges to AWP" for purposes of its sweeping injunction.  *See, e.g*, *In re Lupron Marketing & Sales Practices Litig*., Docket Nos. 04-2693 and 04-8023 (1st Cir. 2004); *National Ass'n of chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30 (1st Cir. 2009)(approving nationwide class action settlement of AWP claims against wholesaler and price reporting service).

---

[17]    Here, the JPML created one MDL to consolidate cases included as part of four (4) pending MDLs – 1453, 1454, 1455 and 1456.  *See In re Immunex Corp. Average Wholesale Price Litig*., 201 F.Supp. 2d 1378 (JPML 2002).  These cases all involved claims against certain drug companies for manipulation of the average wholesale price ("AWP") of prescription drugs.  The parties before the JPML argued variously for a "company-by-company" approach versus an "industry-wide" approach to resolution of the pending cases against certain drug companies, but they agreed the matter did not involve all claims against all parties, including all drug companies.  *Id*. at 1380 ("All defendants oppose inclusion of these actions in MDL 1430 -*In re Lupron Marketing and Sales Practices Litigation*, which is pending in the District of Massachusetts.") The JPML ultimately ruled that these cases belonged as part of one consolidated proceeding.  *Id.*  ("[T]he Panel finds that all actions in these four dockets involve common questions of fact concerning whether (either singly or as part of a conspiracy) the pharmaceutical defendants engaged in fraudulent marketing, sales and/or billing schemes by unlawfully inflating the average wholesale price of their Medicare covered prescription drugs in order to increase the sales of these drugs to healthcare professionals and thereby boost the pharmaceutical companies' profits.")

Furthermore, other cases have been filed around the country involving "challenges to AWP" which have not been included as part of MDL 1456, including cases wherein the undersigned has been retained to act as class counsel.[18]  For this reason, the undersigned appealed the district court's Order to remove the practice bar, leaving intact the portion of the Order that granted the relief requested by the clients.

28 U.S.C. § 1407 provides "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings ... Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation."   Pursuant to that rule, this case was transferred to the District of Massachusetts and assigned to the Honorable Patti B. Saris.   *In re Immunex Corp. Average Wholesale Price Litig.*, 201 F.Supp.2d 1378 (JPML 2002).   That transfer Order specifically defined those actions that would be transferred for coordinated or

---

[18]   *See, e.g*, *In re AWP*, 307 F.Supp. 2d 190 (D.Mass. 2004)(relating to the remand of the Arizona state class action case of *Swanston v. TAP Pharmaceutical Products Inc., et. al.*);   *In re AWP*, 431 F.Supp. 2d 109 (D.Mass. 2006)(relating to the remand of the New Jersey state class action case of *International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca PLC, et. al.*); *Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc.*, 415 F.Supp. 2d 516 (E.D.Pa. 2005)(remanding the state court case being litigated by the undersigned on behalf of the Commonwealth of Pennsylvania); *In re AWP*, 509 F.Supp. 2d 82 (D.Mass. 2007(remanding back to state court se cond time the case of *Com. of Pa. v. TAP*).

consolidated pretrial proceedings before Judge Saris, essentially combining four (4) separate pending multidistrict litigations, 1453, 1454, 1455, and 1456[19].   However, although that Order vested Judge Saris with the authority to preside over those cases for pretrial proceedings, the Panel's Order did not decide that the Massachusetts District Court had subject matter jurisdiction over the pending actions.   Rather, "the statutory provision that governs multidistrict litigation (28 U.S.C. § 1407) 'does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case.'"   *In re New England Mut. Life Ins. Co. Sales Practices Litigation,* 324 F.Supp.2d 288, 292 (D.Mass.,2004) (*citing In re Ivy*, 901 F.2d 7, 9 (2d Cir.1990) (emphasis added).

Further, as federal law makes clear, Judge Saris' authority over the pending cases that constitute MDL-1456 is limited to oversight over pretrial issues only, at the conclusion of which Judge Saris must remand any remaining pending cases back to their respective transferor.   *See, e.g., Lexecon Inc., v. Milberg Weiss Bershad Hynes & Lerach et al.,* 523 U.S. 26 (1998) (holding that an MDL transferee court has no authority to invoke §1404(a) to assign a transferred case to itself for trial and must remand pending cases at the conclusion of the pretrial proceedings); *See also*

---

19 As mentioned above, at the time MDL 1456 was formed, other cases "involving challenges to AWP" were pending in both state and federal courts that were not consolidated as part of MDL 1456.

*In re New England Mut. Life Ins. Co. Sales Practices Litigation,* 324 F.Supp.2d at 292 (holding that an MDL transferee Court has the authority to remand tag-along cases directly to state courts).   In fact, in the transfer Order itself the JPML specifically noted that "[i]t may be, on further refinement of the issues and close scrutiny by Judge Patti B. Saris to whom we are assigning this litigation, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district."   *Id.* 1380 -1381.   Consistent with that instruction, Judge Saris has remanded several cases from MDL-1456 back to their transferor courts, many of which are potentially implicated by the subject injunction.

For example, the pending NJ AWP case which unquestionably "involves challenges to AWP"[20], was removed to federal court and was transferred to MDL 1456, but was remanded by Judge Saris back to state court.   Importantly, the undersigned Appellant serves as counsel to the putative class in that case and has since its inception in 2003, prior to the formation of MDL 1456.   Likewise, the undersigned Appellant serves as counsel in two (2) other cases "involving challenges to AWP" that were removed to federal court, and sought to be transferred to MDL 1456, but were later remanded to the Commonwealth Court of Pennsylvania

---

[20] *In re AWP*, 431 F.Supp.2d 109 (D.Mass. 2006) (finding that the case "arises out of the alleged fraudulent scheme by the pharmaceutical company defendants to inflate the prices of drugs by misstating the 'Average Wholesale Price' ("AWP") of their drugs in industry publications, but remanding the NJ AWP case back to state court.

and the Superior Court of Arizona, Maricopa County, *Pennsylvania v. Tap
Pharmaceutical Products, Inc.* and *Swanston v. Tap Pharmaceutical Products, Inc.*,
respectively[21].

There are literally dozens of cases pending in state and federal court
"involving challenges to AWP"[22] that the Subject Order would serve to bar the
undersigned Appellant from serving as class counsel, despite any hearing pursuant
to Rule 23(g) in those cases regarding said appointment[23].  However, perhaps no
case demonstrates the potential improper scope of the Subject Order better than the
pending New Jersey action.   As discussed above, the undersigned Appellant has
served as counsel to the putative class since the case was filed in 2003.   After years
of litigation, which included an improper, time consuming removal by Defendants

---

21 *Pennsylvania v. Tap Pharmaceutical Products, Inc.*, 415 F.Supp.2d 516
(E.D.Pa.,2005); *In re AWP,* 307 F.Supp.2d 190 (D.Mass.,2004).

22 Aside from the several other cases that have already been mentioned and
discussed in this brief, a simple search of Westlaw reveals, *inter alia,*  the following
other cases "involving challenges to AWP" that have been reviewed by various
federal appellate courts : *Pirelli Armstrong Tire Corp. Retiree Medical Benefits
Trust v. Walgreen Co.*   2011 WL 183163, (7th Cir., 2011); *Pearson's Pharmacy,
Inc. v. Express Scripts, Inc.,*   378 Fed.Appx. 934 (11th Cir., 2010);   *Inola Drug,
Inc. v. Express Scripts, Inc.,* No. 06-CV-117, 2009 WL 801838 (N.D.Okla. Mar. 25,
2009); *National Ass'n of Chain Drug Stores v. Schwarzenegger,*   376 Fed.Appx.
674 (9th Cir., 2010).   *Pirelli,* and *Inola* are class action cases.

23 Again, it should be noted that the undersigned Appellant was not afforded an
evidentiary hearing prior to the district court's June 22, 2010 bar Order.

and an issue being decided by the Supreme Court of New Jersey, the case is finally

poised to proceed.   The case does not contain any overlapping parties and/or claims

as those in MDL 1456.   However, as experience has shown, Defendants would

prefer not to litigate their claims in state court and could attempt to remove the case

for a second time[24]. If Defendants were to successfully remove the case to federal

court, regardless of whether the case is then transferred to MDL 1456, Judge Saris'

overbroad injunction would serve to prevent the undersigned Appellant from

serving as class counsel, despite the fact of the undersigned's unwavering dedication

to and representation of the putative class in that case for the past eight (8) years.

The Subject Order would serve to strip the undersigned Appellant of his right to

represent his clients, and equally as important, would prevent individual clients from

exercising their right to choose counsel, a result that should not be countenanced by

this Court.

> **4.    The District Court Violated the Due Process Rights of Parties Who Never Appeared Before the Court and the Attorney for the Estate of Deceased Clients by Issuing a Sweeping Order Barring Future Litigation Without Notice, a Hearing or Other Reasonable Opportunity to be Heard**.

On June 22, 2010, the district court issued its Order enjoining "plaintiffs

---

24 Defendants sought an injunction barring the undersigned Appellant from litigating the New Jersey Action and the Arizona Action in their respective state courts.   *See* App. 1033 and App. 994, respectively.

[from] serv[ing] as class representatives in any proposed class action involving AWP" and "Mr. Haviland [from] serv[ing] as class counsel in any federal action involving challenges to AWP."   While the Order granted Appellee-Counsel's pending Motion for Sanctions filed April 16, 2010, it did so without holding a hearing as was expressly requested by Appellant.   In so acting, the court violated the due process rights of Appellant, his client, Mr. Young, and the executors of the estate of the Shepleys, who have never appeared in the case.   Whether court's Order is viewed as a sweeping injunction or a sanction, either way, the affected parties were entitled to their day in court, as they requested and as the court indicated, at least initially, it was inclined to grant.

After the Motion for Sanctions was filed, at the request of Appellee-Counsel, the district court scheduled a hearing pursuant to Federal Rule 23(e) for May 3, 2010.   APP. 1578; March 31, 2010 Tr. at 8:14-17.   On April 28, 2010, Appellee-Counsel moved to vacate the hearing.   Id.   The court then issued an electronic order dated April 30, 2010, vacating the May 3, 2010 hearing and re-scheduling the hearing for June 21, 2010.   Id.   While there was no disagreement as to the propriety of the requested dismissal of the individual claims of Mr. Young and the Shepley's estate, the only unresolved issue was Appellee-Counsel's spiteful Motion for Sanctions against Appellant.   The Motion attached two (2) exhibits under seal, that were not timely served on Appellant.   Instead, Appellant was forced

–44–

to seek an extension of time to file a response upon receipt of the complete filing. APP. 1578-1580.

On May 7, 2010, Appellant filed an Opposition to Class Counsel's Motion for Sanctions.   APP. 1581-1584.   In the Opposition, Appellant denied the factual averments in support of the request for sanctions, and requested that the district court deny the Motion "based upon the evidence that will be elicited at the evidentiary hearing on this matter scheduled for June."   APP. 1583.

A week before the scheduled June 21, 2010 evidentiary hearing, Appellant sought a continuance due to discovery demands and deadlines in the Pennsylvania action, where Appellant serves as lead trial counsel.   APP. 1610-1614.   Directly contrary to Appellees' claim that Appellant was seeking to avoid an evidentiary hearing respecting his conduct,[25] the Motion for Continuance sought such a hearing to make clear the record on these issues:

> [B]ecause movants' request for sanctions *will necessarily involve the presentation of evidence* in support and defense thereof, *the undersigned requests that the Motion be continued to a future date* beyond the trial in Pennsylvania, *which date will allow sufficient time*

---

[25] Appellee-Counsel charge Appellant with seeking "to avoid having to appear before the Court in which he has been removed as Class Counsel…".   APP. 1595. Quite to the contrary, Appellant repeatedly called for an evidentiary hearing, both at the time Appellee's were seeking to have Appellant disqualified, and when the sought the "sanction" that is the subject of the instant appeal.   APP. 641; APP. 706 (referencing "the upcoming hearing on Track II class certification").   In the absence of such a hearing, the district court's presumptive "findings" should be deemed erroneous.

–45–

> *for an evidentiary hearing on all issues.*   As presently scheduled, the hearing set for 4:00 p.m. Monday will not allow the parties to complete their evidentiary proffers that day, necessarily requiring an additional hearing date.   At a minimum, based upon the factual averments in the Motion, *the undersigned expects to call as witnesses on cross-examination the following material fact witnesses: Steve Berman, Tom Sobol and Jennifer Connolly*.   If the instant request for continuance is not granted, Notices for the attendance of witnesses will be issued.

APP. 1612.   Appellant is confident that if a fulsome record were to be developed on the issue of his conduct in light of clients' intentions with their litigation, their distrust of the Appellee-Counsel, and their directions to Appellant respecting the same, no injunction (or sanction) would have been warranted.   Without a hearing, Appellant was deprived of the opportunity to develop such record for this Court's appellate review.

Whether characterized as a sanction or an injunction, due process is required.

The imposition of sanctions requires that a hearing be held on the matter.   It has long been understood that a court has inherent powers to manage their affairs so as to achieve the ordinary and expeditious disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).   One aspect of that discretion is the court's ability to fashion an appropriate sanctions for conduct that abuses the judicial process.   *Id* at 44-45.   However, that discretion is not without limitation in that when sanctions are contemplated, the sanctioned party must be given an opportunity to be heard on the matter.   *Id at* 50 (explaining that a court in imposing sanctions

under its inherent powers "must comply with the mandates of due process".); *Media Duplication Services, Inc., v HDG Software, Inc.,* 928 F.2d 1228, 1238 (1st Cir. 1991); *see also In re Cordova Gonzalez,* 726 F.2d 16, 20 (1st Cir.1984) (announcing that when a court imposes sanctions such as attorney's fees under its inherent power, the court must afford the sanctioned party notice and an opportunity for a hearing).

Similarly, a judge's decision to impose Rule 11 sanctions must comport with due process requirements, and the determination of what process is due is, in part, a function of the type and severity of the sanction. *Media Duplication Services, Ltd. v. HDG Software Inc.*, 928 F.2d 1228, 1238 (1991). The district court cannot impose *any* enforceable sanction, absent compliance with all applicable procedural due process requirements. *U.S. v. Kouri-Perez*, 187 F.3d 1, 13 (1999). *See Chambers,* 501 U.S. at 50; *Roadway Express,* 447 U.S. at 767; *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 209, (1958); *United States v. 789 Cases of Latex Surgeon Gloves,* 13 F.3d 12, 15 (1st Cir.1993). Appellant has been and continues to be counsel in a number of AWP litigations. In addition, Appellant's primary practice area is class action litigations. Clearly, the court's sanction stands to severely injure Appellant's ability to earn a livelihood and is unduly harsh and severe under the circumstances.

Here, although the parties requested a hearing, including the presentation of witnesses and the taking of testimony, the court did not conduct such hearing.

Further, in so far as the court ordered sanctions without any hearing on the matter whatsoever, contrary to due process, the court similarly did not make any findings of why a sanction was ordered or why the sanction that was ordered was an appropriate sanctions.   *See Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1427 n.5 (1st Cir. 1992)(encouraging district courts to make specific findings 'to held up better understand why a particular sanction has been deemed appropriate in respect to a particular instance of misconduct".); *see also Specialized Plating, Inc. v. Federal Environmental Services, Inc.,* 121 F.3d 695 (Table); 1997 WL 414102 (July 22, 1997).

If the Court's Order is properly viewed as an injunction, the lack of findings or support for the injunction alone warrants that the injunction be vacated as an abuse of discretion.   *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1204-06 (7th Cir. 1997); s*ee also Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988) (finding abuse of discretion where court failed to make findings of fact); *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 902 (1st Cir. 1988) ("[s]peculation or unsubstantiated fears off what may happen in the future cannot provide the basis for a preliminary injunction.").

**B.      This Court Has Jurisdiction Over this Appeal, Whether the District Court's Order Is Viewed as an Injunction or a Sanction.**

The instant appeal concerns a prophylactic Order entered June 21, 2010

–48–

barring an attorney from ever practicing law in federal court with respect to a broad subject matter, all class action "litigation involving challenges to AWP". As such, the Order constitutes an injunction that should be deemed immediately appealable to this Court.

Appellees move to dismiss the appeal from the Order by calling it a "sanction". But, as the below discussion makes clear, this Court looks to the substance and effect of a lower court's order, not the label the court or the parties may apply to it. The subject Order does not issue any reprimand or order monetary award. To the contrary, a separate Motion for Sanctions filed by Appellees and seeking such relief was <u>denied</u>. Instead, the June 21 Order granted a different Motion to Withdraw filed by the clients of the undersigned. The District Court included as part of that Order the subject proscription against future litigation. For this reason, the June 21, 2010 Order should be deemed an injunction immediately appealable pursuant to 28 U.S.C. §1292(a)(1).[26]

---

[26]Alternatively, the June 21 Order should be deemed appealable under the collateral order doctrine because the prohibition upon the future engagement in any class action case in federal court involving "challenges to AWP" is unrelated to the merits of the action – the undersigned and his clients have withdrawn from the litigation – is "admittedly conclusive on the issues addressed therein", Motion to Dismiss at 8, and, involves an "unsettled question of controlling law" respecting the authority of a District Court in an MDL proceeding to issue a prophylactic injunction as to a subject matter of litigation arguably broader than the subject matter of the MDL over which the Court has jurisdiction pursuant to the JPML transfer order. *See, e.g, Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach et al.*, 523

1.    **The District Court's Order Barring the Future Practice of Law Constitutes an Injunction Immediately Appealable to this Court.**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1292(a)(1), which provides an interlocutory appeal as of right from an order granting an injunction.   Appellees seek to circumvent the jurisdiction of this Court over this appeal by labeling the District Court's Order a "sanction", for which this Court previously has denied interlocutory review.   In appraising whether appellate jurisdiction is triggered pursuant to section 1292(a)(1), this Court has long taken a functional approach, looking not to the form of a district court's order but to its actual effect.   *Sierra Club v. Marsh,*   907 F.2d 210, 213 (1st Cir. 1990); *United States v. Cities Serv. Co.*, 410 F.2d 662, 663 n. 1 (1st Cir. 1969); *United States v. Platt Contracting Co.*, 324 F.2d 95, 97 (1st Cir. 1963).   Indeed, a court must look "to the practical effect of the order rather than its verbiage" to determine if it is appealable under 28 U.S.C. § 1292(a)(1).   *Morales Feliciano v. Rullan*, 303 F.3d 1, 7 (1st. Cir. 2002).   Thus, this Court has long held that substance, and not the name given in the order, controls whether an order amounts to an injunction.   *Micro Signal Research, Inc., v. Otus*, 417 F.3d 28, 33 (1st Cir. 2005).   In the case of *United States v. Alcon Laboratories*, this Court held that a District Court order directing the FDA to "defer"

---

U.S. 26 (1998)(recognizing certain limits of transferee court's authority under JPML Rules).

future regulatory action constituted an injunction immediately appealable, despite the absence of the word "enjoin" in the order: *United States v. Alcon Labs*., 636 F.2d 876, (1st Cir. 1981).

The District Court's June 21, 2010 electronic order (granting leave to withdraw to the Plaintiffs) was the judicial predicate for its entry of a prophylactic injunction in that same Order against the Plaintiffs' counsel.   That Order has the effect of forbidding Appellant from representing clients in a class action matter in any federal forum where the subject matter involves AWP.   The absence of the term "enjoin" does not lessen the severity of the decree.   It broadly prohibits future representation in federal court without any stated reason therefore.

As discussed herein, the district court's Order made no findings of fact or conclusions of law respecting its decision to enjoin counsel from future litigation involving AWP.   Indeed, the District Court provided no analysis whatsoever respecting its decision to issue the injunction.   The District Court's only arguable basis for its injunction exists in its separate Order denying a request for sanctions filed by Class Counsel.   While that potential "rationale" consists of a passing reference to the timing of the Motion to Withdraw as being "troublesome", it is expressly undermined by the subsequent finding that "there is no prejudice to the class" as a result of the filing and the leave of Court granted to Class Counsel "to find new class representatives."

While a federal court does possess the power under the All Writs Act to issue injunctions in certain limited contexts, such power is severely restricted by the Anti-Injunction Act, which precludes such injunctions unless (1) Congress has expressly authorized such relief by statute, (2) an injunction "is necessary in aid of [the court's] jurisdiction," or (3) an injunction is necessary "to protect or effectuate [the court's] judgments."   28 U.S.C. § 2283.   In the interests of comity and federalism, these three exceptions must be strictly construed.   The exceptions to the Act "should not be enlarged by loose statutory construction."   *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970).

The only exception which arguably applies here is the second exception that enjoining the counsel from future representation of a class in federal litigation involving AWP is "necessary in aid of [the District Court's] jurisdiction."[27]   This exception arose from the settled rule that if an action is *in rem*, the court first obtaining jurisdiction over the res may proceed without interference from actions in other courts involving the same res.   *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 134-36 (1941).   The general rule is that an injunction cannot issue to restrain

---

[27]   The "expressly authorized by an Act of Congress" exception applies only when a statute allows for issuance of an injunction.   *Garcia v. Bauza-Salas*, 862 F.2d 905, 909 (1st Cir. 1988).   The "protect or effectuate its judgment" exception, also known as the "relitigation" exception, applies only where a preclusive judgment as to certain claims or issues has been made.   *Id.* at 910.   *See also Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147-48 (1988).

another *in personam* action involving the same subject matter at issue before the federal court.   *Kline v. Burke Construc. Co.*, 260 U.S. 226, 230 (1922).   *See also Hayes Indus., Inc. v. Caribbean Sales Assoc., Inc.*, 387 F.2d 498, 501 (1st Cir. 1968); *United States v. Weeks*, No. Crim. 99-10371-RGS, 2001 WL 1688891 (D. Mass. Dec. 7, 2001).

Those courts that have found an injunction "in aid of jurisdiction" to be appropriate in multi-district litigation proceedings have recognized that the inquiry into whether to issue an injunction is fact-specific.   *See In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002) (recognizing necessity of an "appropriate set of facts" for an injunction to issue).   The mere fact of complex litigation does not warrant unchecked employment of the exception.   *Id.* at 236 (class actions are not, "by virtue of that categorization alone, exempt from the general rule that *in personam* cases must be permitted to proceed in parallel.").   *See also Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 427 (2d Cir. 2004) (holding that there exists no "blanket rule or presumption that a federal court in any multi-district litigation may enjoin parallel state proceedings").

The District Court here did not engage in the requisite factual-specific inquiry.   Indeed, it has never held an evidentiary hearing to address possible concerns it may have with interference with its jurisdiction going forward, so as to warrant its broad injunction.

## 2.    The Subject Order is Not a Sanction.

Appellees mischaracterize the nature of the June 21 Order arguing that it is not appealable as a final judgment by citing several cases for the proposition that orders imposing sanctions are not immediately appealable.   However, the subject order is not a judicial sanction.   Though Class Counsel sought a sanction against Appellant for filing a notice of withdrawal consistent with his clients' wishes, the district court specifically found that "there is no prejudice to the class".   Even were the Order to be deemed a "sanction" order, the same would be invalid under the very cases cited by Appellees, because the Order was issued without procedural or substantive due process.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Appellant, Donald E. Haviland, Jr., respectfully requests that this Honorable Court reverse the District Court's June 22, 2010 Order barring Appellant from ever "serv(ing) as class counsel in any federal litigation involving challenges to AWP" and barring his clients, the executors of the estate of Therese Shepley.

Dated: February   8, 2010                 _____/s/_____
                                          Donald E. Haviland, Jr., Esquire
                                          Michael J. Lorusso, Esquire
                                          **Haviland Hughes, LLC**
                                          111 S. Independence Mall East, Suite 1000
                                          Philadelphia, PA 19106
                                          (215) 609-4661

Attorneys for Appellant

# Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☑ this brief contains ___13,997___ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑ this brief has been prepared in a proportionally spaced typeface using _____ _14 point font_____ in _Times New Roman_____, *or*

☐ this brief has been prepared in a monospaced typeface using _____ _____ with _____.

(s)_____

Attorney for _Appellant_____

Dated: _February 8, 2011_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 10-1959

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**PROOF OF SERVICE**

I, Donald E. Haviland, Jr., declare under perjury that the following facts are true and correct:

I am a citizen of the United States, over the age of 18 years, and not a party to or interested in the above-referenced case. I am a partner of Haviland Hughes, LLC, and my business address is 111 S. Independence Mall East, Suite 1000, Philadelphia, PA 19106.

On February 8, 2011, I caused the Corrected Brief of Appellant Donald E. Haviland, Jr., Esquire to be filed with the Clerk via CM/ECF and all counsel of record were served via CM/ECF notification.

_/s/_____
Donald E. Haviland, Jr.

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 10-1959

---

IN RE: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

---

## ADDENDUM TO BRIEF OF APPELLANT,
## DONALD E. HAVILAND, JR., ESQUIRE

---

Appeal from the June 22, 2010 Order of the District Court Barring Appellant
From Ever "Serv(ing) as Class Counsel in Any Federal Litigation Involving
Challenges to AWP"

---

Donald E. Haviland, Jr., Esquire
Michael J. Lorusso, Esquire
**Haviland Hughes, LLC**
111 S. Independence Mall East, Suite 1000
Philadelphia, PA 19106
(215) 609-4661

Attorneys for Appellant

Case 1:01-cv-12257-PBS  Document 7548-1  Filed 05/19/11  Page 68 of 69

# TABLE OF CONTENTS

| DESCRIPTION | DATE | DIST. COURT DOCKET NO. | ADDENDUM NO. |
|---|---|---|---|
| June 22, 2010 Order of Judge Patti B. Saris | 6/22/2010 | N/A | ADDENDUM 1 |

| From: | ECFnotice@mad.uscourts.gov |
|---|---|
| To: | CourtCopy@mad.uscourts.gov |
| Subject: | Activity in Case 1:01-cv-12257-PBS Citizens for Consume, et al v. Abbott Laboratories,, et al Order on Motion to Withdraw |
| Date: | Tuesday, June 22, 2010 2:02:44 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## United States District Court

## District of Massachusetts

### Notice of Electronic Filing

The following transaction was entered on 6/22/2010 at 1:59 PM EDT and filed on 6/21/2010

| Case Name: | Citizens for Consume, et al v. Abbott Laboratories,, et al |
|---|---|
| Case Number: | 1:01-cv-12257-PBS |
| Filer: | |
| Document Number: | No document attached |

**Docket Text:**
**Judge Patti B. Saris: ELECTRONIC ORDER entered granting [7136] Motion to Withdraw as Class Representative. "However, plaintiffs may not serve as class representatives in any proposed class action involving AWP. In addition, Mr. Haviland may not serve as class counsel in any federal litigation involving challenges to AWP." (Patch, Christine)**


**1:01-cv-12257-PBS Notice has been electronically mailed to:**

Louis J. Scerra, Jr (Terminated) scerral@gtlaw.com, koglins@gtlaw.com, maximn@gtlaw.com

Robert J. Muldoon, Jr rjmuldoon@sherin.com

Thomas E. Dwyer, Jr tdwyer@dwyercollora.com

James C. Burling (Terminated) james.burling@wilmerhale.com

Michael DeMarco michael.demarco@klgates.com, suzan.leblanc@klgates.com

ADDENDUM 1