# Exhibit 7

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS


    IN RE:                          )
                                    )  CA No. 01-12257-PBS
    PHARMACEUTICAL INDUSTRY AVERAGE )
    WHOLESALE PRICE LITIGATION      )  Pages 1 - 91
                                    )
```

BMS FINAL APPROVAL HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
March 28, 2011, 2:17 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

be7428d7-0463-4420-b209-dd0c9d5f18bd

1  action complaint back then, and we intervened all these people:
2  Reverend Aaronson, Mrs. Aaronson, Mrs. Howe, her late husband,
3  Mr. Howe, who was our AstraZeneca class representative.
4         THE COURT: You know, let's just stick right now with
5  BMS.
6         MR. HAVILAND: Sure. So the Aaronsons were appointed
7  by your Honor in January of '06, okay. Your opinion, which I
8  have a copy of but it's a reported decision, actually makes
9  that appointment. And that's significant because you asked the
10 question, "Where are they now?" 233 F.R.D. 229 is your
11 decision, and in the very first page, Paragraph 3, you say you
12 certify the following plaintiffs as representatives: David and
13 Sue Ruth Aaronson as GlaxoSmithKline and BMS Class 1 reps.
14 They're my clients.
15        Mrs. Aaronson was getting very sick at the time of her
16 deposition. Her husband took the deposition not once but
17 twice, so he went through the gauntlet in this case. I think
18 there were ten defense lawyers that examined him the second
19 time around. He's 84 years old, your Honor. He's very sick
20 himself, and I just want you to know, when we sent notices out
21 last week --
22        THE COURT: Let's just move --
23        MR. HAVILAND: So Reverend Aaronson just wants to try
24 to make this work, okay? So that's what I'm here to do.
25        THE COURT: What happened when -- at some point I was

Page 43

1   under the impression that he was unhappy, he was withdrawing.
2   I disqualified you.  I can't even remember the whole thing.
3   Did he ever actually withdraw?
4           MR. HAVILAND:  He didn't, no.  What happened was, I
5   think -- it's hard for me to understand what happened other
6   than there was a huge breakdown between counsel in the room and
7   myself in trying to communicate what my clients were saying
8   about what they thought about the litigation and then what the
9   other lawyers were doing with their TPP clients.  I think that
10  that's essentially what's happening.  You didn't have any
11  Class 1 representatives over here; you had all my clients.  And
12  I have this bad habit of calling them and talking to them a lot
13  about their case, so --
14          THE COURT:  I'm just trying to -- so we had this
15  hearing, and you were angry and they were angry.  And then I
16  approved a class where Mr. Aaronson was not a class rep and
17  didn't hear from anybody.  So you're saying that he wants to
18  still be a class rep?
19          MR. HAVILAND:  No.  Let me see if I can be clear about
20  that.  The first one you approved was GlaxoSmithKline.
21          THE COURT:  I understand.
22          MR. HAVILAND:  $70 million, and he's the rep there.
23          THE COURT:  Right.  I'm talking about BMS.  Tell me
24  about BMS.
25          MR. HAVILAND:  All right, in BMS, I think what

1  case had settled.  I'll never forget Mr. Tretter turning around
2  and saying, "Well, what does Mr. Haviland think?" and I said,
3  "Well, it's the first I'm hearing about this, and I'll have to
4  talk to Reverend Aaronson."  And you said, your Honor, "Well,
5  as long as Mr. Haviland is co-lead counsel, keep him in the
6  loop."
7         So I went back and I talked to Reverend Aaronson, and
8  we discussed this settlement, $13 million.  This is the one
9  that I'm here on today; a signed MOU signed by Mr. Matt and
10 Zenola Harper, the general counsel, with Mediator Green, agreed
11 to $13 million for consumers, which to headline where I'm going
12 today, if you enforce that settlement, I go home.
13         THE COURT:  Excuse me.  My only issue here today --
14         MR. HAVILAND:  Yes.
15         THE COURT:  -- is the current settlement fair and
16 reasonable?  That's part of the context.
17         MR. HAVILAND:  Yes.
18         THE COURT:  All I have in front of me today is whether
19 the $19 million settlement is fair and reasonable.  I
20 understand you think it isn't.  And I'm not here to enforce a
21 contract because contracts can be modified, and so I'm only
22 here as a class action judge, not a contract -- I'm not in
23 contract litigation.  But let's just -- let's just -- I just
24 want to understand this.  You don't view Aaronson as currently
25 a class rep?

me that I had dismissed the whole class." Well, we took that appeal. And then you disqualified my firm, myself, and they substituted in. My clients are not happy at all with how that case is going, and they withdrew. And your Honor now has a sanction order against me that we've had to appeal because, you know --

THE COURT: Well, where is that?

MR. HAVILAND: It's in the First Circuit now because you have a sanction against me ever being class counsel, and I just can't have that --

THE COURT: Never being class counsel -- no, here, here.

MR. HAVILAND: No, no, anywhere, your Honor, you said anywhere.

MR. MATT: In AWP-related litigation.

THE COURT: In AWP.

MR. HAVILAND: In a Federal Court.

THE COURT: In AWP.

MR. HAVILAND: In a Federal Court, you said I cannot be class counsel --

THE COURT: Yes, but not ever in any case from the beginning of time. At least I didn't plan to do that. I mean --

MR. HAVILAND: But why that's important, your Honor, is, I am class counsel in a New Jersey case. I've been in that

1  case in 2003, and the defendants keep threatening to remove it.
2  The moment I come to Federal Court I'm out, and defense counsel
3  would love to see that because they disqualify me on your
4  order. And I've never had a vetting on that. As a matter of
5  fact, your Honor, you know what I've been doing the last year?
6  Trying cases. I tried a case against BMS. I got $27.6 million
7  against them in a case in Pennsylvania, so --
8             THE COURT: Excuse me. That was a long time ago.
9  That hasn't had a ruling yet from the First Circuit?
10            MR. HAVILAND: No, no, no, it's never had a ruling in
11 the First Circuit. Every time I try to get a ruling from the
12 First Circuit it gets opposed. So the sanction order you just
13 did, which I think the issue which we're doing a reply brief
14 this week on is, counsel in the room says it's an extension of
15 your disqualification order.
16            Your Honor, I would be happy to never come --
17            THE COURT: What? You are now losing me. Can I just,
18 like, just focus here?
19            MR. HAVILAND: Please.
20            THE COURT: So they said, "We're not happy the way
21 things are going, and, therefore, if he's not counsel, we don't
22 want to be part of this." I remember viewing that as a
23 withdrawal.
24            MR. HAVILAND: Okay. I didn't hear that, your Honor,
25 nor did I think the counsel because we continued with the

be7428d7-0463-4420-b209-dd0c9d5f18bd