UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-12257-PBS<br><br>Subcategory No. 06-11337-PBS<br>Civil Action No. 08-cv-10852 |
| THIS DOCUMENT RELATES TO:<br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., by and through its principal officers and directors, Zachary T. Bentley and T. Mark Jones  v. Actavis Mid Atlantic LLC, et al.* | Judge Patti B. Saris |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
OPPOSITION TO MOTION BY THE UNITED STATES TO QUASH DEPOSITION
SUBPOENA TO THE CENTERS FOR MEDICARE AND MEDICAID SERVICES AND
DEFENDANTS' CROSS-MOTION TO COMPEL**

In the guise of being a stranger to this action, the United States (the "Government") seeks to quash a valid, timely-served subpoena requesting relevant testimony from the Centers for Medicare and Medicaid Services ("CMS") that goes to the heart of the issues in dispute in this *qui tam* action.  It is undisputed that CMS possesses evidence relevant to Defendants' defenses to the claims in this action.  Contrary to its assertion that it is a disinterested third party, the Government maintains a direct stake in the outcome of this lawsuit as a party in interest that stands to collect most of any recovery by the relator Ven-A-Care.  As such, the Government does not want to produce evidence that may damage its litigation interest, and invokes the *Touhy* process to shield itself from producing relevant discovery.  The Government's refusal to provide discovery is contrary to law, and the Court should not permit such strategic abuse of Rule 45 and the *Touhy* regulations to deprive litigants of their legitimate need for relevant evidence.

Accordingly, Defendants Actavis MidAtlantic LLC, Alpharma USPD Inc. f/k/a Barre National Inc., and Barre Parent Corp. (collectively "Actavis MidAtlantic"); Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. (collectively "Par"); Sandoz Inc. f/k/a Geneva Pharmaceuticals Inc. ("Sandoz"); and Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. f/k/a Schein Pharmaceutical, Inc. (collectively, "Watson") (together, the "Defendants") respectfully submit this memorandum in support of their opposition to the May 5, 2011 motion of the United States to quash Defendants' third-party subpoena (the "Subpoena") served on the Centers for Medicare and Medicaid Services and their cross-motion to compel CMS to produce deposition testimony pursuant to the Subpoena.  The Subpoena is timely, requests testimony that is relevant to crucial issues in this case, is not overbroad or unduly burdensome, and does not seek privileged information.  Therefore, the Court should deny the Government's motion to quash and grant Defendants' cross-motion to compel CMS to provide the requested testimony.

## PROCEDURAL BACKGROUND

The Subpoena requests, pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, a deposition of CMS on three topics:  (1) the drug pricing information that Defendants provided, including any analysis, evaluation, review of, or reliance on any representations regarding drug pricing provided by Defendants; (2) the federal government's policies and decisions to encourage the dispensing of generic drugs under Medicaid; and (3) CMS's consideration, approval, or disapproval of State Plan Amendments concerning prescription drug reimbursements.  (Subpoena, Areas of Inquiry 1-3 (Exhibit ("Ex.") 1).)

On April 21, 2011, the Government wrote to Defendants asserting a number of objections to the Subpoena, including the Government's view that the Subpoena was not requested in the manner prescribed by the agency's *Touhy* regulations.  (Letter from Justin Draycott to Paul Carberry, Apr. 21, 2011 (Ex. 2).)  Defendants responded by letter on April 28, noting that they

2

disputed the Government's *Touhy* objection, but to avoid an unnecessary dispute on the issue and

without waiving their objections to the applicability of the *Touhy* procedure, would send a

separate written *Touhy* request letter to the head of the agency.  (Letter from Paul Carberry to

Justin Draycott, Apr. 28, 2011 (Ex. 3).)  Defendants sent that letter to the CMS Administrator on

April 29.  (Letter from Paul Carberry to Donald Berwick, Apr. 29, 2011 (Ex. 4) (excluding

subpoena enclosed with the letter).)  The Government then wrote to Defendants on May 2, again

stating a number of objections and concluding that CMS would not produce witnesses to testify

at deposition.  (Letter from Justin Draycott to Paul Carberry, May 2, 2011 (Ex. 5).)  Following

another exchange of letters (Letter from Stefan Mentzer to Justin Draycott, May 4, 2011 (Ex. 6);

Letter from Justin Draycott to Stefan Mentzer, May 5, 2011 (Ex. 7)), the Government filed its

motion on May 5.

<div align="center">

### DEFENDANTS' OPPOSITION

</div>

## I.      THE SUBPOENA IS TIMELY

The Government's timeliness objection to the Subpoena has no merit.  Federal Rule of

Civil Procedure 45(c)(3)(A) sets forth four circumstances under which a court will quash or

modify a subpoena directed to a third party.  Timeliness is not one of them.  *See* Fed. R. Civ. P.

45(c)(3)(A)(i)-(iv).

Notably, the Government's brief does not assert that the Subpoena "fails to allow a

reasonable time to comply" under Federal Rule of Civil Procedure 45(c)(3)(A)(i).  The

Government is very familiar with the relevant facts and issues in these pharmaceutical pricing

lawsuits, having intervened in and litigated a number of these cases previously against other drug

manufacturers.  The Government's task in identifying individuals who have knowledge relevant

to the areas of inquiry and preparing those individuals to testify (if they are not already prepared)

should take a matter of days, and the Subpoena sufficiently accommodated this need by

<div align="center">3</div>

providing three weeks to comply.  Moreover, Defendants have been and remain willing to discuss a reasonable schedule beyond those three weeks for deposing any CMS witnesses. Simply put, the Subpoena has allowed a reasonable amount of time to comply.

The Government asserts a timeliness objection of an entirely different sort:  that the Subpoena was untimely given a fact discovery cutoff date of April 15, 2011.  This objection has no basis because the Court extended fact discovery to May 24, 2011.  On March 22, 2011, the parties submitted a joint motion requesting that the Court extend all deadlines in the discovery schedule, including fact and expert discovery and summary judgment briefing, by 90 days. (Joint Motion to Modify Discovery and Pre-Trial Deadlines (Ex. 8).)  The Court denied that motion.  (Order, entered Mar. 23, 2011 (Ex. 9).)  Subsequently, on March 28, the parties jointly filed a request seeking a status conference with the Court before April 15, and, if the conference could not be held before April 15, a provisional extension of the close of fact discovery (and no other deadlines) until such time as the parties are able to meet with the Court.  (Joint Request for a Status Conference at the Court's Earliest Convenience (Ex. 10).)  The Court granted the motion and set the status conference for May 24, 2011.  (Order, entered Mar. 30, 2011 (Ex. 11).)

The Government suggests that the Court's ruling was not an "explicit order" of the Court (Gov't Br. 3), despite its designation on the docket as "ELECTRONIC ORDER."  (Ex. 11).) The Court clearly is within its powers to modify its own Case Management Order by a subsequent order.  The March 30, 2011 order did precisely that.  If the Court meant to limit its ruling only to permit the parties "to continue ongoing settlement efforts, comply with remaining CMO deadlines, and possibly tie up other unfinished business" (Gov't Br. 3) it could and presumably would have expressly ruled so.  The Court did not, and in the absence of language in

it to the contrary, the order should be understood to grant the relief requested by the parties in the joint motion. [1]

## II.   THE SUBPOENA DOES NOT CONFLICT WITH THE *TOUHY* REGULATIONS

### A.   The Subpoena Is Valid and Remains in Effect

The Government insists that the Subpoena is procedurally improper and should have been withdrawn because it does not comply with the DHHS *Touhy* regulations.  (Gov't Br. 3-5.)  In the Government's view, Defendants should withdraw the Subpoena and "elect" to pursue the separate *Touhy* request letter sent to the agency head, which "is a legal prerequisite to the agency's consideration of the request for testimony."  (Gov't Br. 4.)  The Government, however, cites no authority establishing that a requesting party must withdraw a subpoena for information and proceed with a separate *Touhy* request. [2]  That is for good reason, as no requirement to withdraw a subpoena or "elect" a separate *Touhy* procedure appears in the applicable regulations. *See* 45 C.F.R. §§ 2.1-2.6.  Indeed, the regulations make clear that it is perfectly appropriate for a requesting party to serve a subpoena in connection with a separate written *Touhy* request, and they contemplate that the agency may be subpoenaed in connection with a *Touhy* request.  *See id.* § 2.1(a) ("This part set forth rules to be followed when an employee or former employee of"

---

[1] Defendants have not conceded an April 15 fact discovery cutoff, as the Government suggests. (Gov't Br. 3 n.1.)  The referenced letters, which were sent only shortly after the Court entered its order on April 30 at 10:27 a.m., used similar language previously sent to subpoenaed third parties and inadvertently were not revised in time to reflect the order of the Court received hours earlier.

[2] Not surprisingly, the Government argues that any such "election" by the Defendants would make no difference because the *Touhy* request letter is untimely under CMO No. 32.  (Gov't Br. 5.)  The Government cites no authority establishing that an agency is entitled to disregard a *Touhy* request on grounds that the request is untimely, and timeliness is not included with the other factors DHHS considers as part of a *Touhy* request.  *See* 45 C.F.R. § 2.3.  Regardless, Defendants' request letter, which was sent about a month before the extended fact discovery cutoff date of May 24, was not untimely.

DHHS "*is requested or subpoenaed* to provide testimony in a deposition . . . .") (emphasis added).

**B.     Rule 45 Governs the Government's Refusal to Provide the Requested Discovery**

According to the Government, Defendants' only recourse to its refusal to provide the requested deposition is to avail themselves of judicial review under the Administrative Procedure Act.  (Gov't Br. 5.)  Again, the Government is mistaken.  In *Watts v. SEC*, the United States Court of Appeals for the District of Columbia considered a refusal by the Securities and Exchange Commission to make its employees available for depositions that were requested pursuant to third-party subpoenas served on the agency.  When the requesting party challenged the agency's determination, the court found that a challenge to an agency's refusal to comply with a Rule 45 subpoena should be treated, not as an APA action, but rather, as a Rule 45 motion to compel or an agency's Rule 45 motion to quash.  *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007); *see also Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994) ("district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action").  The same should apply here.  This Court should consider the Government's motion to quash and Defendants' motion to compel under the requirements of Rule 45 – not the APA.

The cases cited by the Government – *Cabral* and *Puerto Rico* (Gov't Br. 4-5) – are not persuasive.  The language of *Cabral* that the Government cites is derived entirely from a footnote appearing in *Puerto Rico*.  *See Cabral v. United States Dep't of Justice*, 587 F.3d 13, 22-23 (1st Cir. 2009) ("To obtain information from a federal agency, a party 'must file a request pursuant to the agency's regulations, and may seek judicial review only under the APA.'") (quoting *Puerto Rico v. United States*, 490 F.3d 50, 61 n.6 (1st Cir. 2007) (quoted in Gov't Br.

6

5).  Federal Rule of Civil Procedure 45, however, was not at issue in *Puerto Rico* since, there, the

party seeking discovery of the federal government agency requested information through

subpoenas issued under Puerto Rico criminal law and also written requests to the agency.  *See*

*Commonwealth of Puerto Rico*, 490 F.3d at 54-55, 60-61.

The Government's objective here is clear – it wants to be held to the more lenient

"arbitrary and capricious" standard that does not apply to other subpoenaed third parties that

refuse to provide discovery.  *See* 5 U.S.C. § 706(2)(A).  Mandating the APA procedure as

Defendants' only recourse, however, would contravene the purpose of the *Touhy* regulations.

The regulations are relevant for internal housekeeping and determining who within the agency

must decide how to respond to a federal court subpoena.  *Watts*, 482 F.3d at 508-09.  As the

authorizing federal Housekeeping Statute makes clear, the regulations do "not authorize

withholding information from the public or limiting the availability of records to the public."  5

U.S.C. § 301; *see also* 9 James Wm. Moore et al., Moore's Federal Practice § 45.05[1][b] (3d ed.

2007) ("Though an agency regulation may provide the method by which an agency head will

comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must

derive from an *independent source of law* such as a governmental privilege or the rules of

evidence or procedure.") (emphasis added).

The Government's refusal to produce relevant discovery here is strategic.  While it has

not formally intervened in this action, the Government is a party in interest with a definite stake

in the outcome of this litigation.  Ven-A-Care is seeking hundreds of millions of dollars in

damages from Defendants (and additional penalties), of which the Government stands to take the

lion's share if any recovery is made.  *See* 31 U.S.C. § 3730(d)(2) (authorizing the relator to

collect no more than 30% of the proceeds of the action or settlement, not including expenses,

fees, and costs).  The Government also asserts the right to approve any dismissal of the action, *see* 31 U.S.C. § 3730(b), and as such holds leverage over any settlement negotiations between a defendant and the relator.  Given these circumstances, and coupled with the fact that the testimony sought by Defendants from CMS goes directly to their defenses to the False Claims Act allegations in this case, it would be manifestly unfair to allow the Government to shield itself from discovery through an "arbitrary and capricious" review of its own refusal to provide discovery – a standard not available to other third parties that have far more tenuous connections to the lawsuits in which they are being subpoenaed.  The Court should decide the Government's and Defendants' motions in accordance with Rule 45.

## III.   THE SUBPOENA IS NOT UNDULY BURDENSOME AND DOES NOT SEEK IRRELEVANT OR PRIVILEGED INFORMATION

The Government also objects to the Subpoena on grounds of undue burden, overbreadth, and privilege.  (Gov't Br. 5-8.)  None of these arguments have merit.  They also disregard the highly probative nature of the requested testimony, which outweighs the Government's assertions of burden, overbreadth, and privilege.

### A.   The Three Areas of Inquiry Are Not Unduly Burdensome

The Government's undue burden argument rests almost entirely on its assertion that the Defendants have had access to depositions of CMS officials already taken in other AWP litigations.  (Gov't Br. 5-6.)  Those depositions were not taken or cross-noticed in this case, *United States ex rel. Ven-A-Care of the Florida Keys v. Actavis Mid Atlantic*, Civil Action No. 08-cv-10852.  While counsel for some Defendants did attend some prior CMS depositions, they did so only in their capacity as counsel in other pending state litigations, with a focus on the state causes of action in those particular cases – not with regard to the specific claims and issues raised in *this litigation*.  Some Defendants were not present at any CMS depositions.

NEWYORK 8147183 (2K)

Therefore, Defendants have not had "ample opportunity" (Gov't Br. 6) to question CMS officials on matters of crucial importance in this case.[3]  Counsel for Actavis and Watson attended no CMS depositions, and counsel for Par attended only four.[4]  Sandoz' counsel has attended thirty depositions of CMS officials.  Of those, six were taken after the complaint against Sandoz in this case was unsealed, four were taken after Sandoz served its answer to the complaint, and none were taken after the Court entered the scheduling order in this case.  Again, none of these CMS depositions were noticed or cross-noticed in this case.  Defendants should not be denied their legitimate need to discover relevant information where they simply have not been in a position to participate in depositions with an eye toward obtaining information relevant to the claims and defenses in this litigation.  Nor should Defendants be forced to rely on the examination conducted by other counsel representing other defendants in other cases that may bear no relevance to the issues raised by this specific case and relating to these specific Defendants.

Defendants certainly do not seek depositions that are duplicative of prior discovery. When the Government first raised its undue burden objection by letter, Defendants asked the Government to identify any of the subpoenaed topics that were covered by prior depositions. (Ex. 3 at 2.)  The Government declined to do so.  (Ex. 5 at 2-3.)  Notably, in its brief, the Government again fails to specify which of the prior CMS depositions actually concerned topics that are responsive to the areas of inquiry requested in the Subpoena.  Indeed, its repeated

---

[3] The Government neglects to mention that the Federal Rules provide for limits on discovery if "the party seeking discovery has had ample opportunity to obtain the information by discovery *in the action*," Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added), a circumstance clearly not present here.

[4] If by "the two CMS officials most knowledgeable about the subjects specified" in the Subpoena the Government means Larry Reed and Deirdre Duzor (*see* Gov't Br. 6; Ex. 2 at 2), Par attended only one deposition day (of Mr. Reed).  Actavis, Par, and Watson attended no other depositions of Mr. Reed or Ms. Duzor.

assertions that the requested discovery is "new" (*id.* at 2) suggest that the Government believes the prior CMS depositions did not sufficiently cover the topics requested here – further demonstrating Defendants' need for this discovery.

Also notable is the complete lack of support for the Government's assertion of undue burden.  The Government makes only a single vague reference to "the burdens attendant to the selection, preparation and deposition of officials" who can testify about the subpoenaed areas of inquiry.  (Gov't Br. 6.)  The Government, however, makes no effort to explain how many CMS officials would have to testify, what their availability is, the time or expense required to prepare or make them available for depositions, or how, if at all, their preparation and testimony would conflict with the witnesses' official duties or the agency's objectives.  If anything, the fact that CMS made its officials available for depositions in other pharmaceutical pricing cases shows that there is no undue burden on the Government.  Therefore, the Government has not made the required showing that the Subpoena subjects it to undue burden.

### B. Area of Inquiry 1 Is Relevant and Not Overbroad

The Government incorrectly asserts that Area of Inquiry 1 seeks information that is irrelevant in this case.  The requested testimony is highly probative, for at least two reasons.

First, the requested discovery concerning Defendants' AMPs (*see* Gov't Br. 6-7), is probative of important issues and is not available through other means.[5]  As this Court knows,

---

[5] Defendants have been unable to obtain this information from the relator Ven-A-Care.  When Defendants first requested information regarding their AMPs from CMS, the Government advised Defendants to seek admissions from Ven-A-Care instead.  As an accommodation, Defendants served requests for admission on Ven-A-Care, which asked Ven-A-Care to admit or deny, *inter alia*, that CMS received AMP data from each Defendant; that CMS processed, treated, and handled Defendants' AMPs in the same manner as with the drugs at issue in the prior AWP litigations in which the Government intervened; and that Ven-A-Care would not dispute these facts.  Ven-A-Care's responses were inadequate, asserting *inter alia* that Ven-A-Care lacked sufficient knowledge or information to admit the requests.  (*See* Responses of

AMPs are the only pricing data that Defendants were required to provide to CMS, and

Defendants are entitled to know what CMS understood their AMPs to mean and how it used

those AMPs in connection with analyzing pharmaceutical acquisition costs, approving states'

drug reimbursement formulas, and administering the Medicaid program.  The Government

oversimplifies when it characterizes the question as "how CMS is permitted to use confidential

AMP information" (Gov't Br. 7).  Defendants seek to discover how CMS *could have* and

*actually did* use their AMPs.  Moreover, *In re Pharm. Indus. Average Wholesale Price Litig.*,

582 F.3d 156 (1st Cir. 2009) did not find that AMPs are irrelevant and that discovery on them

should not be permitted.  That decision concerned an appeal of a judgment rendered in a bench

trial involving claims under Massachusetts state law, and its discussion of AMPs only references

the district court's finding that "AMP data is confidential information that is unavailable to [third

party payors] or consumers."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156,

189 (1st Cir. 2009) (quotations omitted).  Here, of course, the Defendants are not seeking

discovery on the availability of AMPs to state Medicaid programs, other third party payors or

consumers, but rather on the federal government's use of AMPs, which directly received those

AMPs and is a party in interest to this litigation.

Second, an order compelling deposition testimony on Area of Inquiry 1 is especially

warranted in light of this Court's April 27, 2011 decision in *Massachusetts v. Schering-Plough

Corp*.  In that pharmaceutical pricing litigation, the Commonwealth of Massachusetts claimed

that the defendants Schering-Plough Corporation, Schering Corporation, and Warrick

Pharmaceuticals Corporation (collectively, "Schering/Warrick") caused the Massachusetts

Medicaid program to overpay for the generic drug Albuterol by fraudulently inflating the WAC

---

Relator Ven-A-Care of the Florida Keys, Inc., to Defendants' First Set of Requests for
Admission (Ex. 12).)

of the drug.  *Massachusetts v. Schering-Plough Corp.*, No. Civ. A. 03-11865-PBS, 2011 WL

1575198, at *2-3 (D. Mass. Apr. 27, 2011).  After a trial and a jury verdict in favor of the

Commonwealth, the Court granted judgment as a matter of law in favor of Schering/Warrick on

the Commonwealth's claims under Prong 1 of the Massachusetts False Claims Act ("MFCA").

*Id.* at *16.  This prong of the MFCA creates liability for any person who "knowingly . . . causes

to be presented, a false or fraudulent claim for payment or approval."  Mass. Gen. Laws ch. 12 §

5B(1).  In reaching that decision, the Court concluded that the WACs that Schering/Warrick

provided to Massachusetts Medicaid through First DataBank did not pass through pharmacists to

be "presented" to the state, and that Schering/Warrick had no role in causing an actionable

falsehood in the claims submitted by pharmacists to the state.  *Schering-Plough Corp.*, 2011 WL

1575198, at *4-6.

        This decision is of crucial significance in this case because Prong 1 of the MFCA is

modeled after the similarly worded Section 3729(a)(1) of the federal False Claims Act ("FCA"),

which is a basis for Ven-A-Care's first and third causes of action against Defendants.  *See* 31

U.S.C. § 3729(a)(1) (creating liability for any person who "knowingly presents, or causes to be

presented, to an officer or employee of the United States Government . . . a false or fraudulent

claim for payment or approval."); *Schering-Plough Corp.*, 2011 WL 1575198, at *4, 8.

Defendants seek to establish facts similar to those that proved dispositive in *Massachusetts v.*

*Schering-Plough Corp.*– that Defendants' AWPs and WACs did not pass through pharmacists to

be presented ultimately to the federal government and that Defendants' conduct with regard to

their AWPs and WACs in no way caused a false claim to be submitted to the federal

government.  Such testimony would permit Defendants to establish a meritorious defense in this

case, and through summary judgment briefing, provide an opportunity to narrow the claims in

dispute and possibly eliminate issues to be presented to the jury.  Moreover, the Government has no valid timeliness objection, given the recent entry of the order in *Massachusetts v. Schering-Plough Corp.*  For all these reasons, the testimony requested in Area of Inquiry 1 is relevant.

The Government only in passing argues that the Area of Inquiry 1 is overbroad.  (Gov't Br. 6-7.)  Just because Defendants' AWPs, WACs, and AMPs cover thousands of their NDCs does not make the request overbroad.  As discussed above, Defendants should be permitted to establish essential facts through CMS testimony on how the agency analyzed, evaluated, reviewed, or relied upon their drug pricing information as a whole.  There is no need to question CMS on a drug-by-drug basis.

### C.    Area of Inquiry 2 Is Relevant and Not Overbroad

Area of Inquiry 2 – the federal government's policies and decisions to encourage the dispensing of generic drugs under Medicaid – likewise is relevant.  This topic goes directly to the reimbursement decisions that the federal government made and that it permitted states to make in reimbursing for generic drugs manufactured by Defendants.  To date, the government's reimbursement of generic drugs has largely not been a focus in the prior CMS depositions.

The Government's brief apparently distinguishes between "policies" and "decisions" and does not argue that discovery on CMS's "decisions" to encourage the dispensing of generic drugs under Medicaid is burdensome or irrelevant.  (*See* Gov't Br. 7.)  As such, there is no reason to deny discovery on the Government's decisions to promote use of generic drugs under the Medicaid program.[6]

---

[6] The Government's citation of *Lachman* is misplaced, as that case concerned the agency's interpretation of a regulation, *see United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004), and the Government does not identify which regulation is implicated by its objection.

NEWYORK 8147183 (2K)

**D.      Area of Inquiry 3 Is Relevant and Not Overbroad or Unduly Burdensome**

Area of Inquiry 3 is relevant as well.  This topic is targeted specifically toward CMS's

approvals and disapprovals (and the criteria it used as a basis for its decisions) of State Plan

Amendments proposed by the states.  Such testimony goes directly to the federal government's

understanding of AWPs and WACs and its approval of payments for pharmaceutical

reimbursements.

The Government argues that there has been "considerable testimony generally" on Area

of Inquiry 3 (Gov't Br. 8), but does not identify who gave such testimony or describe the content

of it.  Such general assertions are not sufficient grounds to quash the Subpoena.

The Government apparently also distinguishes between testimony regarding "proposed"

versus "actual" amendments to Medicaid State Plans, asserting the deliberative process privilege

as to the former but presumably not the latter.  (*See* Gov't Br. 8.)  To the extent a witness has

knowledge as to actual amendments, the Government has no basis to make that individual

unavailable for deposition, where the person also has knowledge of proposed amendments.  In

such instances, the proper time for the Government to object is during the deposition.  With

regard to discovery of "proposed" amendments to State Plans, the Government has made no

showing that such testimony falls under the deliberative process privilege – namely, that it is

"predecisional" and "deliberative," and that the Government is entitled to this qualified privilege

given the competing interests involved.  (*See* Order re: Submitted Documents for *In Camera*

Review, dated Nov. 5, 2008, 5-10 (Ex. 13) (setting forth the requirements for the deliberative

process privilege).)  Further, the Government has not met its burden under Rule 45 to establish

the privilege.  *See* Fed. R. Civ. P. 45(d)(2).  Given the highly probative nature of this testimony,

the discovery should be permitted.  Regardless, this inquiry requires a case-by-case

determination, and it is premature for the Court to rule on it in the absence of a particular factual record, and certainly not based on the Government's generalized assertions.

The Government's separate undue burden argument with regard to Area of Inquiry 3 (Gov't Br. 8) is not persuasive. The list of State Plan Amendments in eleven states is not "extensive" in light of Plaintiff's claims to (and the Government's interest in recovering most of) the damages for Medicaid reimbursements in almost all fifty states, and indeed provides specificity that assists the Government in identifying and preparing its witnesses to testify. The Government's proposal that Defendants instead obtain this information from the states simply makes no sense. Defendants seek discovery of the decisions made and the understanding held by the federal government with regard to its approvals and rejections of State Plan Amendments. The only source of that information is the federal government itself.

## DEFENDANTS' CROSS-MOTION TO COMPEL

Because the Government refuses to make CMS available for a deposition, Defendants respectfully submit this cross-motion requesting an order compelling the Government to make CMS available to testify on the topics requested in the Subpoena. As set forth above, Defendants have conferred with the Government and have attempted in good faith to resolve or narrow this dispute but were unable to reach agreement.

## I.   CMS SHOULD PRODUCE DEPOSITION TESTIMONY IN ACCORDANCE WITH RULE 45

Defendants' challenge of the Government's refusal to make CMS available for a deposition pursuant to the Subpoena should be treated in the same manner as a motion to compel under Federal Rule of Civil Procedure 45, as set forth above. *See Watts*, 482 F.3d at 508-09; *Exxon Shipping Co.*, 34 F.3d at 780. Moreover, the MDL court has the authority to compel production of the testimony requested in the Subpoena, which issued from the United States

District Court for the District of Columbia.  *See* 28 U.S.C. § 1407(b) ("Such coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom such actions are assigned . . . .  The judge or judges to whom such actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.").

As set forth in greater detail above and which need not be repeated here, the Subpoena requests deposition testimony on relevant topics that are crucial to the claims and defenses in this action, and the areas of inquiry are reasonable, narrowly framed, not unduly burdensome, and do not request privileged information.  Defendant's motion should be granted in accordance with Rule 45.

## II.    CMS SHOULD PRODUCE DEPOSITION TESTIMONY EVEN UNDER THE "ARBITRARY AND CAPRICIOUS" STANDARD THAT IT SAYS GOVERNS

Defendants' motion should be granted even under the Government's preferred "arbitrary and capricious" standard.[7]  The requested discovery is relevant to key issues in this case, and the areas of inquiry are targeted and not unduly burdensome.  The Government, despite its technical status as a non-party, remains a party in interest to the litigation and has a significant monetary stake in its outcome.  The Government's refusal to provide any deposition discovery whatsoever, even to Defendants that never appeared in a single CMS deposition in this case, or ever – and despite the Government's willingness to permit depositions in prior pharmaceutical pricing litigations – appears calculated to influence the facts ultimately to be presented to the Court and

---

[7] If the Court were to find the APA applies (which Defendants dispute), this Court has authority to determine whether the Government's conduct was arbitrary and capricious.  *See Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006) (finding that an agency's refusal to comply with a subpoena constitutes final agency action ripe for review under the APA).

NEWYORK 8147183 (2K)

the jury.  Such a determination is arbitrary and capricious and inconsistent with DHHS's "policy to maintain strict impartiality with respect to private litigants."  45 C.F.R. § 2.1(b).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully request oral argument on the Government's motion to quash and Defendants' cross-motion to compel.

## CONCLUSION

For the reasons set forth above, the Court should issue an order (1) denying the Government's motion to quash the Subpoena; (2) granting Sandoz' motion and compelling CMS to produce deposition testimony on the areas of inquiry set forth in the Subpoena; and (3) such other and further relief as may be proper and just.


Dated: May 19, 2011           By:    /s/ Heather K. McDevitt
                                    Heather K. McDevitt (*pro hac vice*)
                                    Paul Carberry (*pro hac vice*)
                                    WHITE & CASE LLP
                                    1155 Avenue of the Americas
                                    New York, New York  10036-2787
                                    Telephone:  (212) 819-8200
                                    Facsimile:   (212) 354-8113
                                    hmcdevitt@whitecase.com
                                    pcarberry@whitecase.com

                                    *Attorneys for Defendant Sandoz Inc.*

NEWYORK 8147183 (2K)

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing (1) DEFENDANTS' CROSS-MOTION TO COMPEL THE CENTERS FOR MEDICARE AND MEDICAID SERVICES TO PRODUCE DEPOSITION TESTIMONY; and (2) DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO MOTION BY THE UNITED STATES TO QUASH DEPOSITION SUBPOENA TO THE CENTERS FOR MEDICARE AND MEDICAID SERVICES AND DEFENDANTS' CROSS-MOTION TO COMPEL together with attached exhibits were delivered to all counsel of record and to counsel of the United States by electronic service in accordance with Paragraph 11 of the Case Management Order No. 2, by sending on May 19, 2011, a copy to Lexis-Nexis for posting and notification to all parties.

/s/ Daniel Cohen
Daniel Cohen

# Exhibit 1

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In re Pharmaceutical Industry Average Wholesale Price Litigation<br>United States Of America ex rel. Ven-A-Care of the Florida Keys, Inc.<br><div align="center">*Plaintiff*</div><div align="center">v.</div>Actavis Mid Atlantic LLC, et al,<br><div align="center">*Defendant*</div> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 08-cv-10852-PBS<br>MDL No. 1456<br>Master File No. 01-12257-PBS<br>Civil Action No.  Subcategory No. 06-1137-PBS<br><br>(If the action is pending in another district, state where:<br><div align="center">District of Massachusetts          )</div> |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Centers for Medicare and Medicaid Services, Attn: United States Dept. of Health and Human Services Office of the General Counsel, Room 711-E, 200 Independence Avenue, SW, Washington, DC 20201

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

<div align="center">Please see attached Schedule A.</div>

| Place: White & Case LLP, 701 Thirteenth Street, NW,<br>Washington D.C. 20005 | Date and Time:<br>05/06/2011 10:00 am |
|---|---|

The deposition will be recorded by this method: _____

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: April 14, 2011

<div align="center">CLERK OF COURT</div>

_____                          OR                          _____
*Signature of Clerk or Deputy Clerk*                                                              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*        Sandoz Inc.
_____, who issues or requests this subpoena, are:
Daniel Cohen, 1155 Avenue of the Americas, New York, NY 10036, daniel.cohen@whitecase.com, 212-819-7945.