# EXHIBIT 5

# IN THE CIRCUIT COURT OF THE SECOND
## JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

THE STATE OF FLORIDA )
)
<u>ex rel.</u> )
)
   VEN-A-CARE OF THE )
   FLORIDA KEYS, INC., )
   a Florida Corporation, by and )
   through its principal )
   officers and directors, )
   ZACHARY T. BENTLEY and )
   T. MARK JONES, )
)
              Plaintiffs, )
)
)    **CIVIL ACTION NOS.**   **98-CA3032F**
)                              **03-CA1165A**
)
)    **JURY TRIAL DEMANDED**
)
ALPHARMA, INC.; ALPHARMA )
USPD, INC. f/k/a BARRE-NATIONAL, )
INC.; BARRE PARENT )
CORPORATION; FAULDING, INC.; )
IVAX CORPORATION; IVAX )
PHARMACEUTICALS, INC. f/k/a )
ZENITH-GOLDLINE )
PHARMACEUTICALS, INC.; MAYNE )    **NOT FILED UNDER SEAL**
GROUP, LTD.; SANDOZ INC., )
f/k/a GENEVA PHARMACEUTICALS, )
INC.; NOVARTIS, A.G.; PUREPAC )
PHARMACEUTICAL CO.; ACTAVIS, )
INC.; ACTAVIS ELIZABETH LLC.; )
and ACTAVIS MID ATLANTIC LLC )
)
              Defendants. )

## SECOND AMENDED COMPLAINT

Plaintiff, the STATE OF FLORIDA, acting by and through its Attorney General,

Pamela Jo Bondi, brings this cause of action against Defendants Alpharma USPD, Inc.

n/k/a Actavis Mid Atlantic LLC, Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth

LLC, and Sandoz Inc. f/k/a Geneva Pharmaceuticals, Inc.

## I. INTRODUCTION

1.   This is a civil action to recover damages in excess of Fifteen Thousand Dollars ($15,000) plus all applicable civil penalties and other relief from Defendants for making or causing to be made, false or fraudulent statements, representations and claims to the State of Florida's Medicaid Program for the specified dispensed pharmaceuticals.  The specified pharmaceuticals (herein "the Subject Drugs") at issue are attached as Exhibits A1 and B1 and incorporated by reference into this Second Amended Complaint.

2.   Plaintiffs seek recovery against Defendants pursuant to the Florida False Claims Act sections 68.081 - 68.092, Fla. Stat. (herein "the Act").

## II. VENUE AND JURISDICTION

3.   Venue is proper in Leon County pursuant to section 68.083(3), Fla. Stat.

4.   This Court has subject matter jurisdiction over the causes of action set forth in this Second Amended Complaint pursuant to Art. V section 20(3), Fla. Const.; section 26.012, Fla. Stat.; and section 68.083(3), Fla. Stat.

5.   This Court has personal jurisdiction over the Defendants pursuant to section 48.193, Fla. Stat.

## III. PARTIES

6. The State of Florida, Office of the Attorney General, Department of Legal Affairs (herein "the Attorney General"), is acting on behalf of the Florida Agency for Health Care Administration (herein "AHCA"), which administers the Florida Medicaid

Program pursuant to section 409.9025, Fla. Stat., and pursuant to the Attorney General's own authority under sections 409.920 and 68.083, Fla. Stat.

7.   Private person Plaintiff/Relator Ven-A-Care of the Florida Keys, Inc. (herein "Ven-A-Care") originally provided information to the State of Florida which is the basis of this suit pursuant to section 68.083(3), Fla. Stat. and is included as a named party Plaintiff in this case pursuant to section 68.083(2) and (3), Fla. Stat.

## SANDOZ/GENEVA DEFENDANTS

8.   Defendant Sandoz Inc. is a Colorado corporation with its principal offices in Princeton, New Jersey.   Sandoz Inc. ("Sandoz/Geneva") was formerly known as Geneva Pharmaceuticals, Inc.   At all times material to this action, Sandoz/Geneva transacted business in the State of Florida by selling  its  drugs, including but not limited to, the drugs specified in Exhibit B1, called the Sandoz/Geneva Subject Drugs, directly or through wholesalers, in the State of Florida, including Leon County.

## ALPHARMA USPD INC. n/k/a ACTAVIS MID ATLANTIC LLC and PUREPAC PHARMACEUTICAL CO. n/k/a ACTAVIS ELIZABETH LLC DEFENDANTS

9.   Defendant Purepac Pharmaceutical Co. (herein "Purepac") is or has been during times material to this action, a Delaware corporation with its principal offices in Elizabeth, New Jersey. At all times material to this action, Purepac and/or its successor Actavis Elizabeth LLC, transacted business in the State of Florida by selling its drugs, including, but not limited to, the drugs specified in Exhibit A1, herein called the Purepac Subject Drugs, directly or through wholesalers, in the State of Florida, including Leon County.

10.   Defendant Alpharma USPD, Inc., is or has been during times material to this action, a Maryland corporation with its principal offices in Baltimore, Maryland.   At

all times material to this action, Alpharma USPD and/or its successor Actavis Mid Atlantic LLC transacted business in the State of Florida by selling its drugs, including, but not limited to, the drugs specified in Exhibit A1, herein called the Alpharma Subject Drugs, directly or through wholesalers, in the State of Florida, including Leon County.

11.      Actavis Mid Atlantic, LLC, is or has been during all times material to this action, a Delaware corporation with its principal offices in Dover, Delaware and a wholly owned subsidiary of Actavis Inc.  Actavis Inc. is owned by Actavis HF.

12.      Actavis Elizabeth LLC, is or has been during all times material to this action, a Delaware corporation with its principal offices in Elizabeth, New Jersey and a wholly owned subsidiary of Actavis, Inc.   Actavis Inc. is owned by Actavis HF.

13.      On or about December 2005, the generics pharmaceutical business of Alpharma, including Alpharma USPD, Inc. and Purepac Pharmaceutical Co., was acquired by Actavis Inc.  Alpharma USPD, Inc. was subsequently merged with Actavis Mid Atlantic and Actavis Mid Atlantic became the successor and surviving entity to Alpharma USPD, Inc. Purep ac Pharmaceutical Co. was subsequently merged with Actavis Elizabeth LLC and Actavis Elizabeth LLC became the successor and surviving entity to Purepac.  Actavis Elizabeth LLC is the present holder of National Drug Codes (herein "NDCs") for the Purepac Subject Drugs.   Upon information and belief, Actavis Mid Atlantic LLC is the present holder of NDCs for the Alpharma Subject Drugs.

## ACTAVIS ELIZABETH LLC

14.  Actavis Elizabeth LLC is liable either independently for its actions set forth herein and/or for the actions of Purepac Pharmaceutical Co. because, as a survivor entity and successor in interest, Actavis Elizabeth LLC expressly or impliedly assumed

the obligations of the predecessors.  In the alternative, upon information and belief, the transaction with Purepac Pharmaceutical Co. resulted in a de facto merger, Actavis Elizabeth LLC is a mere continuation of Purepac Pharmaceutical Co., and the transaction was a fraudulent effort to avoid the liabilities of the predecessors.

### ACTAVIS MID ATLANTIC LLC

15.  Actavis Mid Atlantic LLC is liable either independently for its actions set forth herein and/or for the actions of Alpharma USPD because, as a survivor entity and successor in interest, Actavis Mid Atlantic LLC expressly or impliedly assumed the obligations of the predecessors.  In the alternative, upon information and belief the transaction with Alpharma USPD resulted in a de facto merger, Actavis Mid Atlantic LLC is a mere continuation of Alpharma USPD, and the transaction was a fraudulent effort to avoid the liabilities of the predecessors.

16.     Whenever reference is made in this Second Amended Complaint to any representation, act or transaction of any of the Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents or representatives, while actively engaged in the course and scope of their employment, did or authorized such representations, acts, or transactions on behalf of the Defendants.

### IV. THE FLORIDA MEDICAID PHARMACEUTICAL PROGRAM

17.     The Medicaid Program is authorized by Title XIX of the Social Security Act and Title 42 of the Code of Federal Regulations.  The Florida Medicaid Program is authorized by section 409.902, Fla. Stat., and Chapter 59G, Florida Administrative Code (F.A.C.). The Florida Medicaid Prescribed Drug Services program is administered

pursuant to Chapter 409.906 Fla. Stat., which authorizes AHCA to maintain and administer a prescribed drug services program as a benefit for Medicaid recipients. Chapter 59G-4.250, F.A.C., implements policies for the prescribed drug services program.

18.     The Office of the Attorney General conducts a program of Medicaid fraud control through its Medicaid Fraud Control Unit.

19.     Pharmaceuticals are identified on Florida Medicaid claims and the Florida Medicaid computer system drug file by means of unique identification numbers commonly known as National Drug Codes.

20.     The ultimate providers of pharmaceuticals to Medicaid recipients, including physicians, hospitals, nursing homes, and pharmacies, purchase drugs from manufacturers or wholesalers, including re-packagers and re-labelers, and in turn, dispense or administer the drugs to Medicaid recipients.

21.     AHCA awards contracts to private companies to evaluate, adjudicate and process Medicaid providers' electronic and hard copy claims for payments. These contractors, referred to as "fiscal agents", are agents and instrumentalities of AHCA. The providers, primarily pharmacies, submit claims for reimbursement incurred in purchasing and dispensing the drugs to AHCA's fiscal agent, under a Medicaid provider contract pursuant to section 409.907, Fla. Stat.

22.     Defendants are aware that AHCA is responsible for reimbursing Medicaid providers in accordance with state and federal law. Pursuant to federal regulations, Florida, like all states, is required to pay claims based upon a drug's "Estimated Acquisition Cost" (herein "EAC"), to the provider submitting the claim. 42 CFR section

447.331.  During the period covered by this Second Amended Complaint, the Florida state legislature codified and amended certain of the statutory provisions related to Medicaid prescription reimbursement, including sections 409.912(40)(a)(2) and 409.908(14), Fla. Stat.  The Medicaid reimbursement methodologies for prescribed drugs, including the revisions to these methodologies over time, are set forth in the various revisions to the Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook adopted by administrative rule process through Section 120.54.(l)(i), Fla. Stat., as F.A.C. Rule 59.G-4.250. The reimbursement formulas resulting from these statutory, regulatory and administrative processes for the period covered by the Second Amended Complaint are as follows:

a.      From July 1, 1994, through and including June 30, 1999, reimbursement was based on the lowest of:

   1.      Wholesale Acquisition Cost (herein "WAC") plus 7 percent, plus a dispensing fee, except Class II controlled substances or items that frequently required drop shipment or purchase from a secondary supplier, which are priced at Average Wholesale Price (herein "AWP");

   2.      Generic Upper Limit Price (herein "GULP"), plus a dispensing fee (this term was a predecessor term to the Federal Upper Limit);

   3.      State Maximum Allowable Cost (herein "SMAC") plus a dispensing fee; or

   4.      Usual and Customary Charge (herein "UAC").

b.      From July 1, 1999 through and including June 30, 2000, reimbursement was based on the lowest of:

   1.      Minimum of Average Wholesale Price minus 11.5 percent, Wholesale

Acquisition Cost plus 7 percent, or Direct Price plus 7 percent, plus a dispensing fee;

2.      Generic Upper Limit Price, plus a dispensing fee;

3.      State Maximum Allowable Cost plus a dispensing fee; or

4.      Usual and Customary Charge.

c.      From July 1, 2000 through and including June 30, 2004, reimbursement was based on the lowest of:

1.      Average Wholesale Price minus 13.25 percent, plus a dispensing fee;

2.      Wholesale Acquisition Cost plus 7%, plus a dispensing fee (For the period of July 2000 through April 2002, WAC was not utilized in the reimbursement methodology);

3.      Federal Upper Limit (herein "FUL"), plus a dispensing fee;

4.      State Maximum Allowable Cost, plus a dispensing fee; or

5.      Usual and Customary Charge.

d.      From July 1, 2004 through and including June 30, 2008, reimbursement was based on the lowest of:

1.      Average Wholesale Price minus 15.4 percent, plus a dispensing fee;

2.      Wholesale Acquisition Cost plus 5.75 percent, plus a dispensing fee;

3.      Federal Upper Limit, plus a dispensing fee;

4.      State Maximum Allowable Cost, plus a dispensing fee; or

5.      Usual and Customary Charge.

e.      From July 1, 2008 through the date of the filing of the Second Amended

Complaint, reimbursement was based on the lowest of:

1.      Average Wholesale Price minus 16.4 percent, plus a dispensing fee;

2.      Wholesale Acquisition Cost plus 4.75 percent, plus a dispensing fee;

3.      Federal Upper Limit, plus a dispensing fee;

4.      State Maximum Allowable Cost, plus a dispensing fee; or

5.      Usual and customary Charge.

23.     The Florida Medicaid dispensing fee, during all times material to this action, has been $4.23 per prescription until March 1, 2009 when AHCA was directed to institute variable dispensing fees for prescribed medications.  § 409.908 (14), Fla. Stat. An additional $.015 per unit is paid to pharmacies who prepare in house unit dose packaging of tablets or capsules.  *See,* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 3-3, *supra.*

24.     AHCA's fiscal agent reimburses pharmaceutical provider claims based on the current Florida Medicaid computer system drug file prices, and such prices are derived from pricing information, including AWPs and WACs, supplied and updated weekly by the First DataBank, Inc.'s ("First DataBank") National Drug Data file electronic service.  *See* Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, p. 6-3, *supra.*  First DataBank, a division of The Hearst Corporation, is a nationally-recognized company that specializes in gathering and disseminating prescription drug pricing information, including AWPs and WACs, to a variety of companies and entities, including public health programs, state Medicaid programs and private health insurers.

25.     AHCA's fiscal agent has at all times relevant to this Second Amended

Complain contracted with First DataBank to provide National Drug Data file prices to determine Florida Medicaid provider drug reimbursement amounts in accordance with its reimbursement formulary as set forth in the paragraph above. The Florida Medicaid Program has utilized First DataBank as its primary reference source and has utilized AWP and WAC prices supplied by First DataBank to determine provider reimbursement.

26.    Defendants directly supply AWP and WAC to First DataBank.   First DataBank uses the AWPs and WACs supplied by the Defendants, to compile the National Drug Data file price list, which in turn is utilized by the Florida Medicaid Program.

27.    The Florida Medicaid Program cannot reimburse a provider for any drug not listed in the National Drug Data File.  Defendants voluntarily report AWP and WAC pricing information to First DataBank to ensure their products are included in the National Drug Data file and that their customers will be reimbursed by the Florida Medicaid Program.

### V. SUMMARY OF DEFENDANTS' FRAUD SCHEME

28.    The Florida Medicaid Program reimburses providers for the drugs they dispense to Medicaid recipients at EAC.  Florida Medicaid determines EAC by using the AWPs and WACs supplied by pharmaceutical manufacturers to First DataBank.  The Defendants are aware that the Florida Medicaid Program utilizes pricing information from First DataBank for the purposes of reimbursing Medicaid providers, and knowingly misrepresented AWP and WAC prices for the purpose of illicit financial gain in an attempt to manipulate and control market share of the Subject Drugs.

29.    The Defendants knowingly and intentionally made false representations of

prices and costs for certain of their drugs to the Florida Medicaid Program. The Defendants reported, and caused First DataBank to report prices for the Subject Drugs that substantially exceeded the market prices known to the Defendants from their own business information. The Defendants knew that reporting false, inflated AWP and WAC prices for the Subject Drugs would cause the Florida Medicaid Program's estimates of the acquisition costs of the Subject Drugs to substantially exceed any reasonable estimates of the acquisition costs of those drugs.

30. The Defendants knowingly and intentionally created a price spread for some of their drugs, including the Subject Drugs, by supplying to First DataBank prices for those drugs far in excess of the prices for which the drugs were reasonably and currently available in the marketplace. A "spread" is the difference between the purchase price and the amount reimbursed by the Florida Medicaid Program. The Defendants intended that the Florida Medicaid Program use those false, inflated prices in setting provider reimbursement rates, and, in fact, the Florida Medicaid Program did use those false, inflated prices to set Medicaid reimbursement rates. As a direct result of the Florida Medicaid Program's utilization of the false prices supplied by the Defendants, claims were paid for the Subject Drugs dispensed in amounts far in excess of the prices generally and currently paid by providers for the Subject Drugs.

31. After creating price spreads for their drugs, Defendants enlarged those spreads by reducing acquisition costs to providers without disclosing the reductions to First DataBank or to the Florida Medicaid Program. Price reductions were accomplished by giving providers financial incentives such as discounts, rebates, off-invoice pricing, free goods, and cash payments. Price reductions were granted by

Defendants to some retail pharmacy chains, wholesalers, buying groups, pharmacy benefit managers at the request of those entities. Defendants knowingly utilized these financial incentives to reduce the effective acquisition prices of their drugs, while knowingly reporting AWPs and WACs to First DataBank that were not reflective of the price reductions.

32.     After maximizing the inflated spread on their drugs, including the Subject Drugs, Defendants engaged in a tactic commonly referred to as "marketing the spread," for the purpose of increasing their market share and profits. Providers were induced to buy the Subject Drugs at issue because the Medicaid reimbursements for such drugs far exceeded the providers' acquisition costs generally or currently available in the marketplace.    The Defendants actively marketed the spread through sales presentations, bid proposals, advertising, and various pharmacy inventory software programs specifically to increase their market share and earnings.

33.     The goals of Defendants' fraudulent activities include: maximized demand for the drugs at issue, domination of the market for the Subject Drugs, and illegal over-reimbursement of Medicaid provider claims for the Subject Drugs.  The Defendants inflated their reported prices and marketed the resulting inflated spread, with the purpose and intent of increasing sales of the Subject Drugs to providers. As a direct, foreseeable, and proximate result of this conduct, Defendants caused false claims for excessive reimbursement to be made to the Florida Medicaid Program.  But for each of the Defendants' actions, the Florida Medicaid Program would not have paid the excessive reimbursement amounts for the Subject Drugs.    Consequently, each Defendant is liable for violations of the Florida False Claims Act for each Medicaid

reimbursement claim for each of their Subject Drugs which resulted in payment of a falsely inflated reimbursement amount.

34.    Defendants' knowing misrepresentations of drug prices to First DataBank caused each and every claim paid by the Florida Medicaid Program for the Subject Drugs to be a false claim under section 68.081, Fla. Stat., *et seq*.    35.    Defendants virtually control what price information the payors, including the Florida Medicaid Program, can obtain.  Defendants have taken undue advantage of the resulting disparity in status, power and knowledge by knowingly reporting prices for Medicaid reimbursement purposes that bear no relationship to prices generally or currently paid in the marketplace.

## VI.  THE ACTIONABLE CONDUCT OF DEFENDANTS

35.    The Defendants acted knowingly, as defined by section 68.082(1)(c), Fla. Stat., in presenting or causing to be presented to the Florida Medicaid Program false claims for payment or approval in violation of section 68.082(2)(a), Florida Statutes by:

> a).    Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;
>
> b).    Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;
>
> c).    Concealing or failing to disclose decreases in prices and costs of specified pharmaceuticals by reporting price reductions much smaller than the true price reductions;
>
> d).    Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments,

and charge backs that decreased the effective prices of the specified pharmaceuticals;

e).   Reporting that the price or cost of a specified drug was increasing, when in fact it was increasing in a lesser proportion, remained the same, or was decreasing; and

f).   Reporting that the price or cost of a specified drug was the same when in fact it was falling.

36.   The Defendants acted knowingly, as defined by section 68.082(1)(c), Fla. Stat., in making, using, or causing to be made false records or statements to get claims paid or approved by the Florida Medicaid Program in violation of section 68.082(2)(b), Florida Statutes by:

a).   Submitting false, inflated prices and costs, including AWPs and WACs, for specified pharmaceuticals to First DataBank initially;

b).   Concealing or failing to disclose decreases in prices and costs of such pharmaceuticals to First DataBank;

c).   Concealing or failing to disclose decreases in prices and costs of specified pharmaceuticals by reporting price reductions much smaller than the true price reductions;

d).   Concealing or failing to disclose financial incentives such as discounts, rebates, off-invoice pricing, free goods, cash payments, and charge backs that decreased the effective prices of the specified pharmaceuticals;

e).   Reporting that the price or cost of a specified drug was increasing,

when in fact it was increasing in a lesser proportion, remained the same, or was decreasing; and

f).     Reporting that the price or cost of a specified drug was the same when in fact it was falling.

## The Specific False Price Representations of Sandoz/Geneva

37.   Throughout the period starting July 1, 1998, up to and including the time of trial, Sandoz/Geneva knowingly caused the Florida Medicaid Program to pay false or fraudulent claims for prescription drugs and Sandoz/Geneva further made or used false or fraudulent records and/or statements to get such claims paid or approved.  As a result of the actions of Sandoz/Geneva and those persons and entities acting directly or indirectly in concert with them, the Florida Medicaid Program paid grossly excessive and unreasonable reimbursement amounts for drugs.   The acts committed by Sandoz/Geneva that caused the Florida Medicaid Program to pay or approve these false or fraudulent claims included, but were not limited to: knowingly making false representations about prices and costs of drugs which Sandoz/Geneva knew would be used by the Florida Medicaid Program in paying or approving claims for such drugs; using the inflated spread as a financial inducement to increase sales of the Subject Drugs; and paying additional rebates and discounts to customers, effectively reducing the customer's acquisition cost for these drugs without reporting to First DataBank prices net of these discounts and rebates.  Each of these false pricing representations were used by the Florida Medicaid Program in paying or approving claims for drugs, including those specified in this section.

38.     Sandoz/Geneva knowingly caused its false price and cost representations

to be published during the years specified in this section in First DataBank's Automated Services and further made or used false records or statements regarding their prices of the drugs. Examples of the difference between the prices at which Sandoz/Geneva actually sold its drugs and the false prices reported to First DataBank by Sandoz/Geneva are listed in Exhibit B1. The false price representations as reported by Sandoz/Geneva and reflected by First DataBank are listed in the AWP column and the WAC column. The amount listed under the Relator's Cost column reflects the prices generally or currently paid in the marketplace by the Relator or the Relator's Group Purchasing Organization for the listed drugs obtained from Sandoz/Geneva or a wholesaler.

39.    As a direct and proximate result of Sandoz/Geneva's   actions alleged in this Second Amended Complaint, the State of Florida sustained actual damages in excess of $15,000 together with treble damages, penalties, and attorneys' fees pursuant to the Florida False Claims Act.

## The Specific False Price Representations
## of the Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC

40.    Beginning in April, 1998, through and including the time of trial, Defendant Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC, knowingly caused the Florida Medicaid Program to pay false or fraudulent claims for prescription drugs, including those specified in this section, and further made or used false or fraudulent records and/or statements to get such claims paid or approved.  As a result of the actions of Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC, the Florida Medicaid Program paid grossly excessive and unreasonable reimbursement amounts for drugs.  The acts committed by Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC that caused the

Florida Medicaid Program to pay or approve these false or fraudulent claims included, but were not limited to: knowingly making false representations about prices and costs of drugs, including those specified in this section, which Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC knew would be used by the Florida Medicaid Program in paying or approving claims for such drugs and using the inflated spread as a financial inducement to increase sales of the Subject Drugs; and paying additional rebates and discounts to customers, effectively reducing the customer's acquisition cost for these drugs without reporting to First DataBank prices net of these discounts and rebates. Each of these false pricing representations were used by the Florida Medicaid Program in paying or approving claims for drugs, including those specified in this section.

41.     Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC knowingly caused false price and cost representations to be published during the years specified in this section in First DataBank's Automated Services and further made or used false records or statements regarding its prices of the drugs.  Examples of the difference between the prices at which Defendant actually sold its drugs and the false prices reported to First DataBank by Defendant are listed in Exhibit A1. The false price representations as reported by Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC and reflected by First DataBank are listed in the AWP column and the WAC column.   The amount listed under the Relator's Cost column reflects the prices generally or currently paid in the marketplace by the Relator or the Relator's Group Purchasing Organization for the listed drugs obtained from Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC or a wholesaler.

42.    As a direct and proximate result of Purepac/Actavis Elizabeth's actions alleged in this Second Amended Complaint, the State of Florida sustained actual damages in excess of $15,000 together with treble damages, penalties, and attorneys' fees pursuant to the Florida False Claims Act.

## The Specific False Price Representations
## of Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC

43.    Beginning in April 1998, through and including the time of trial, Alpharma USPD Inc., n/k/a Actavis Mid Atlantic LLC knowingly caused the Florida Medicaid Program to pay false or fraudulent claims for prescription drugs and further made or used false or fraudulent records and/or statements to get such claims paid or approved. As a result of the actions of Alpharma USPD Inc., n/k/a Actavis Mid Atlantic LLC, the Florida Medicaid Program paid grossly excessive and unreasonable reimbursement amounts for drugs.  The acts committed by Alpharma USPD Inc., n/k/a Actavis Mid Atlantic LLC that caused the Florida Medicaid Program to pay or approve these false or fraudulent claims included, but were not limited to:  knowingly making false representations about prices and costs of drugs, which Alpharma USPD Inc., n/k/a Actavis Mid Atlantic LLC knew would be used by the Florida Medicaid Program in paying or approving claims for such drugs and using the inflated spread as a financial inducement to increase sales of the Subject Drugs; and paying additional rebates and discounts to customers, effectively reducing the customer's acquisition cost for these drugs without reporting to First DataBank prices net of these discounts and rebates. Each of these false pricing representations was used by the Florida Medicaid Program in paying or approving claims for drugs.

44.    Alpharma USPD Inc., n/k/a Actavis Mid Atlantic LLC knowingly caused its

false price and cost representations to be published during the time period specified in this section in First DataBank's Automated Services and further made or used false records or statements regarding the prices of its drugs. Examples of the differences between the prices at which Defendant actually sold its drugs and the false prices reported to First DataBank by Defendant are listed on Exhibit A1. The false price representations as reported by Alpharma USPD Inc. n/k/a/ Actavis Mid Atlantic LLC and reflected by First DataBank are listed in the AWP column and the WAC column. The amount listed under the Relator's Cost column reflects the prices generally or currently paid in the market place by the Relator or the Relator's Group Purchasing Organization for the listed drugs obtained from Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC or a wholesaler.

45.     As a direct and proximate result of Alpharma USPD Inc., n/k/a Actavis Mid Atlantic's actio ns alleged in this Second Amended Complaint, the State of Florida sustained actual damages in excess of $15,000 together with treble damages, penalties, and attorneys' fees pursuant to the Florida False Claims Act.

## VII. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
### SANDOZ/GENEVA

46.     The Plaintiffs reallege and incorporate by reference paragraphs 1 through 45 as though fully set forth herein.

47.     Sandoz/Geneva knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to section 68.081, Fla. Stat., *et seq.*

48.     Sandoz/Geneva knowingly made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Florida Medicaid Program creating liability for a false claims action pursuant to section 68.081, Fla. Stat., *et seq.*

49.     As a result of Sandoz/Geneva's conduct, the State of Florida, AHCA paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

50.     Pursuant to sections 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, plus not less than $5,000 and not more than $10,000 penalty per claim, plus all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

## COUNT II
## VIOLATION OF THE FLORIDA FALSE CLAIMS ACT
## DEFENDANT PUREPAC PHARMACEUTICAL CO. n/k/a ACTAVIS ELIZABETH LLC

51.     The Plaintiffs reallege and incorporate by reference paragraphs 1 through 45 as though fully set forth herein.

52.     Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to section 68.081, Fla. Stat., *et seq.*

53.     Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC knowingly made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Florida Medicaid Program creating liability for a false claims action pursuant to section 68.081, Fla. Stat., *et seq.*

54.     Due to the conduct of Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth

LLC's the State of Florida paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

55.    Pursuant to sections 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, plus not less than $5,000 and not more than $10,000 penalty per claim, plus all other relief set forth in said statutes, prejudgment interest, attorneys' fees and court costs.

**COUNT III**
**VIOLATION OF THE FLORIDA FALSE CLAIMS ACT**
**DEFENDANT ALPHARMA USPD INC. n/k/a ACTAVIS MID ATLANTIC LLC**

56.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 45 as though fully set forth herein.

57.    Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC knowingly presented or caused to be presented false claims for payment to the Florida Medicaid Program creating liability for a false claims action pursuant to section 68.081, Fla. Stat., *et seq.*

58.    Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC knowingly made, used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Florida Medicaid Program creating liability for a false claims action pursuant to section 68.081, Fla. Stat., *et seq.*

59.    Due to the conduct of Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC, the State of Florida, AHCA paid the improper Medicaid claims and has suffered actual damages in excess of $15,000.

60.    Pursuant to sections 68.082(2) and 68.086, Fla. Stat., the Plaintiffs are entitled to treble the actual damages sustained, plus not less than $5,000 and not more than $10,000 penalty per claim, plus all other relief set forth in said statutes,

prejudgment interest, attorneys' fees and court costs.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs demand that judgment be entered in favor of the State of Florida and the Relator against the Defendants as follows:

A. On Count I, the Plaintiffs demand treble the amount of the State of Florida's actual damages of at least $15,000 against Defendant Sandoz/Geneva, as appropriate, for the period beginning July, 1998, through and including the time of trial pursuant to section 68.082(2), Fla. Stat. In addition, the Plaintiffs demand that Defendant Sandoz/Geneva be assessed a civil penalty of $10,000, as appropriate, for each and every false claim identified in this action for its specific drugs and any and all false claims for its specific drugs revealed through discovery. The Plaintiffs further demand payment of prejudgment interest, attorneys' fees, expenses, investigative costs, and for such other and further relief as the Court deems just and equitable pursuant to section 68.086, Fla. Stat.

B. On Count II, the Plaintiffs demand treble the amount of the State of Florida's actual damages of at least $15,000 against Defendant Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC, as appropriate, for the period beginning April, 1998, through and including the time of trial pursuant to section 68.082(2), Fla. Stat. In addition, the Plaintiffs demand that Defendant Purepac Pharmaceutical Co. n/k/a Actavis Elizabeth LLC be assessed a civil penalty of $10,000, as appropriate, for each and every false claim identified in this action for its specific drugs and any and all false claims for its specific drugs revealed through discovery. The Plaintiffs further demand payment of prejudgment interest, attorneys' fees, expenses, investigative costs, and for

such other and further relief as the Court deems just and equitable pursuant to section 68.086, Fla. Stat.

C. On Count III, the Plaintiffs demand treble the amount of the State of Florida's actual damages of at least $15,000 against Defendant Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC, as appropriate, for the period beginning April, 1998, through and including the time of trial pursuant to section 68.082(2), Fla. Stat. In addition, the Plaintiffs demand that Defendant Alpharma USPD Inc. n/k/a Actavis Mid Atlantic LLC be assessed a civil penalty of $10,000, as appropriate, for each and every false claim identified in this action for its specific drugs and any and all false claims for its specific drugs revealed through discovery. The Plaintiffs further demand payment of prejudgment interest, attorneys' fees, expenses, investigative costs, and for such other and further relief as the Court deems just and equitable pursuant to section 68.086, Fla. Stat.

### DEMAND FOR JURY TRIAL

The STATE OF FLORIDA and the RELATOR respectfully demand trial by jury.

Respectfully submitted this 9th day of March, 2011.

PAMELA JO BONDI
ATTORNEY GENERAL
STATE OF FLORIDA

By: *Michael J Karpinski*

Michael J. Karpinski
Florida Bar Number: 668001
Gretchen H. Wallace
Florida Bar Number: 35070
Diana Shumans
Florida Bar Number: 675822
Assistant Attorneys General
Office of The Attorney General
Medicaid Fraud Control Unit
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone:   850-414-3600
Facsimile:     850-410-2673

Counsel for Relator
Ven-A-Care of the Florida Keys, Inc.

James J. Breen, Esq.
Florida Bar Number: 297178
The Breen Law Firm, P.A.
5755 North Point Parkway, Ste. 260
Alpharetta, GA 30022
Telephone:   770-740-0008
Facsimile:     770-740-9109

Alison W. Simon, Esq.
Florida Bar Number: 0109568
Alison W. Simon, P.A.
P. O. Box 430457
Miami, FL 33243
Telephone:   305- 663-2433
Facsimile:     305- 665-1508

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the Second Amended Complaint has been furnished as noted below, this 9th day of March, 2011 to the following:

*Via U.S. Mail:*
**Attorneys for Defendants Alpharma USPD, Inc., n/k/a Actavis Mid Atlantic, LLC, Purepac Pharmaceutical Company n/k/a Actavis Elizabeth LLC,**
Stephen Ecenia, Esquire
Rutledge, Ecenia, Purnell & Hoffman, P.A.
Post Office Box 551
215 South Monroe Street, Suite 420,
Tallahassee, Florida 32301
Telephone: 850-681-6788
Facsimile: 850-681-6515
steve@rephlaw.com

*Via FedEx Delivery:*
Douglas B. Farquhar, Esquire
Christine Bump, Esquire
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, NW Suite 1200
Washington, DC 20005
Telephone: 202-737-5600
Facsimile: 202-737-9329
dbf@hmp.comjrf@hpm.com

*Via FedEx Delivery:*
Keith J. Harrison, Esquire
Crowell & Moring, LLP
1001 Pennsylvania Ave, N.W.
Washington, DC 20004
Telephone: 202-624-2560
Facsimile: 202-628-5116
kharrison@crowell.com

*Via U.S. Mail:*
**Attorneys for Defendants Sandoz, Inc.**
Peter Antonacci, Esquire
Jonathan P. Kilman, Esquire
Gray Robinson, P.A.
301 S. Bronough Street,
Suite 600 Tallahassee, FL 32301
Telephone: 850-577-9090
Facsimile: 850-577-3311
pva@gray-robinson.com
jkilman@foley.com

*Via FedEx Delivery:*
Wayne A. Cross, Esquire
Michael J. Gallagher, Esquire
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: 212-819-8200
Facsimile: 212-354-8113
wcross@whitecase.com
mgallagher@whitecase.com

*Michael J. Karpinski*
Michael J. Karpinski