# EXHIBIT 9



**PAM BONDI**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

OFFICE OF THE ATTORNEY GENERAL
Medicaid Fraud Control Unit - Tallahassee
Complex Civil Enforcement Bureau

Gretchen H. Wallace
Senior Assistant Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3911      Fax (850) 410-0179
Gretchen.Wallace@myfloridalegal.com
http://www.myfloridalegal.com

May 13, 2011

Stefan M. Mentzer, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036

    Re:    United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC, et al. - Civil Action No 08-10852-PBS (D. Mass).

Dear Mr. Mentzer:

This letter serves two purposes. I am responding to your email dated April 19, 2011, consisting of your most recent response and proposal dated April 6, 2011 concerning the subpoena served on AHCA June 28, 2010 (herein the 2010 subpoena), and making objections to the "Notice of Subpoena of the State of Florida Agency for Health Care Administration" (herein the 2011 subpoena) served on AHCA May 11, 2011.

**The 2010 Subpoena:**

1. I specifically incorporate and reiterate all previous objections made to this subpoena in communications to you dated July 12, 2010 and April 1, 2011. Those letters are attached.

2. In response to the April 1 letter, you requested, and I agreed to a phone conference on April 6. During that conference, I explained the scope and status of our ongoing document collection and review process related to the Florida AWP litigation. By email dated April 6, you requested: 1) the folder of the State Plan Amendments (SPAs) that week and 2) that the search term list you submitted (here called the "defendants' search term list") with the email be run against all of the custodians' documents being reviewed for the entire time frame of those documents and that the number of documents responsive to those search terms be sent to you along with the "expected time frame for producing these documents." Despite our continuing objection to producing any documents without a commitment by the defendants to pay for the review and production of the requested documents, I agreed to submit a cost estimate to you for the production of the documents responsive to the defendants' search term list.

Stefan M. Mentzer, Esq.
April 1, 2011
2 | Page

3. By email dated April 8, I advised you that the defendants' search term list had been applied to the document database under review. Additionally, a written cost estimate, based upon 30, 60 or 90 day estimated completion dates, was given to you. You were also advised that the SPA folder review had not been completed. In response, you requested a complete breakout showing the names and positions of the custodians, and the number of documents per custodian for each of defendants' search terms. Despite receiving no commitment to pay any costs, I responded to that request in full on April 13, by providing a spreadsheet with the requested information.

4. By email dated April 19, you requested that all documents responsive to defendants' search terms be produced, except Mr. Strowd's and Ms. Morton's documents. You represented that "Sandoz" would not pay, without mentioning the other defendants, on the grounds that Florida would have to produce the documents anyway in the Leon County litigation against Sandoz and other defendants. You asked for confirmation that the estimated 200,000 document count would be decreased due to anticipated de-duping and because the search terms may have had multiple hits on the same documents.

5. Our position remains unaltered for reasons previously stated that defendants are required to pay for the costs of the review and production and we dispute the characterization that we are preparing the same production as you requested independent of defendants' requests. Your contention that we must make this extremely high volume production tailored to defendants' search terms as a non-party to the MDL litigation is unduly burdensome. The fact that the State of Florida is a plaintiff in the local case and may be subject to discovery demands by defendants is self evident, but not a reason to require a burdensome cost free production in litigation where AHCA is a non-party. For whatever reason, none of the defendants, including Sandoz, has made any discovery demands thus far in the local litigation.

6. Your specific requests are a substantial disruption to our ongoing project as the production would be specifically tailored to your specifications. That includes, but is not limited to the fact that defendants' search term list produced at least 50,000 new documents to review that we would not otherwise have reviewed. The documents responsive to defendants' search terms have already been de-duped and unique family threads only show up once, so your anticipated document reduction will not occur as a result of these refinements. Your assumption about the total number of documents to be reviewed is inaccurate. There are a total of 239,296 documents that hit the search terms. If the Strowd and Morton documents are excluded from the population of documents that hit the search results (239,296), a total of 172,859 documents remain to be reviewed and produced, not the 150,000 you estimated in a previous email. Regarding your statement about the search hits being counted twice, citing the example that if a document contained both the words "AWP" and "4.19B", this is correct.

7. Your continued demands are untimely and in violation of the MDL court orders. Fact discovery in this case closed on April 15, 2011 as set forth in CMO No. 32, and by court order dated March 23, 2011, Judge Saris denied the parties' request to extend fact

Stefan M. Mentzer, Esq.
April 1, 2011
3 | Page

discovery.  Her subsequent order granting a status conference now set for May 24 did not specifically modify or extend the discovery cut-off date.  Several motions have been filed by non parties and Ven-A-Care contesting late noticed discovery demands, which support our view that further discovery efforts by the parties are foreclosed.  As a non party to this case, it is not appropriate or a good use of limited state resources to continue responding to untimely discovery demands which may well be in defiance of the clear court orders.  Therefore, we are not going to engage in further efforts relative to the 2010 subpoena without the legitimacy of a court order extending the fact discovery, which the defendants have the burden to obtain.

8. Par has publically announced that it has reached a settlement in the AWP litigation which resolves, inter-alia, the MDL case.  Therefore, to the extent that the 2010 subpoena still includes documents to be produced to Par, discovery is moot as to them.

**The 2011 Subpoena-Objections**

1. This new subpoena, which demands production of documents already requested in the 2010 subpoena, is untimely on its face, as it was delivered to AHCA on May 11, 2011, some 26 days after the fact discovery cut-off date of April 15, 2011 established in CMO No. 32.  Therefore, defendants cannot establish that they had any legal authority whatsoever to issue this discovery demand for production of documents.  This action, by itself, is an abuse of the discovery process, particularly when this practice is inflicted on a non party to a case.

2. This subpoena constitutes a clear abuse of the discovery process on a number of other grounds.  While on its face, it demands the subset of documents similar to your latest modifications to the 2010 subpoena, the subpoena requires actual production of the documents at local counsel's office on May 18, 2011.  As you know from our extensive communications, these documents are located, along with many other electronic documents, on a review platform, and that entire universe of documents is currently being reviewed as part of Florida's AWP litigation.  Unlike publically available documents, these hundreds of thousands of emails and other documents require review for responsiveness, privilege issues, protected health care information and other information which is protected from disclosure by federal or state law.  That process cannot be completed within this timeframe.  Additionally, to the extent that this subpoena requires that AHCA "gather up these documents" and haul them to local counsel's office, this is essentially impossible.  The documents sought were gathered from a myriad of sources, both electronically and hard copy, over a period of weeks, and those collections were furthered processed and refined prior to exporting them to the current review platform.

3. By issuing this subpoena, defendants have subjected AHCA to conflicting demands and requirements simultaneously, as we have not been apprised that the 2010 subpoena has been withdrawn or otherwise modified.  In fact, you have continually advised me that defendants reserve the right to require full compliance of the 2010 subpoena.

Stefan M. Mentzer, Esq.
April 1, 2011
**4** | Page

4. The narrative and objections set forth above pertaining to the 2011 subpoena are reiterated and incorporated in these objections. These include objections related to the unreasonable time frame for the production of documents, refusal to provide compensation for the time and costs incurred in the review and production process, and undue burden on a non party pursuant to Fed. R. Civ. P. 45 (c)(1).

In conclusion, for the reasons expressed above, we expect that defendants will withdraw the 2010 and 2011 subpoenas by written communication immediately.

Sincerely,

*Gretchen H. Wallace*

Gretchen H. Wallace
Senior Assistant Attorney General

cc: Willis Melvin



OFFICE OF THE ATTORNEY GENERAL
Medicaid Fraud Control Unit - Tallahassee
Complex Civil Enforcement Bureau

Gretchen H. Wallace
Senior Assistant Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3911     Fax (850) 410-0179
Gretchen.Wallace@myfloridalegal.com
http://www.myfloridalegal.com

**PAM BONDI**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

April 1, 2011

Stefan M. Mentzer, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036

Re:   United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC, et al. - Civil Action No 08-10852-PBS (D. Mass).

Dear Mr. Mentzer:

This letter responds to your letter dated March 24, 2011 regarding the third party subpoena issued by your firm on behalf of the defendants in the above litigation. In this communication, you are, for the first time, limiting your requests for production to four categories of documents you state are partially responsive to Document Request No. 1, while simultaneously threatening to file a motion to compel if the documents are not produced by April 7, 2011. Your letter further states that Sandoz and the co-defendants are not waiving the right to insist on additional productions requested in the subpoena even though the fact discovery cut-off date, which Judge Saris up to now has refused to extend, is April 15, 2011.

To provide context for our response, the history of communications between your firm, our office, on behalf of AHCA, and AHCA counsel is set forth as follows:

1. **June 28, 2010**: AHCA was served with the subpoena after it was erroneously served on Department of Children and Families. The subpoena listed forty six numbered requests for documents, many of which contained multiple subparts, and covered a time span of 1984 to the date of the subpoena. Among the many objectionable aspects to the subpoena, the requests were extremely overbroad and Definition number 31 defined the "State" as including virtually all agencies and departments of the State of Florida legislative and executive branches as well as "other persons" or "entities" that administered or monitored any "state program".

2. **July 12, 2010**: AHCA counsel Daniel Lake sent a letter to you, stating various objections to the subpoena, and informing you that the defendants needed to provide reasonable compensation prior to any labor and costs being expended to produce any documents.

Stefan M. Mentzer, Esq.
April 1, 2011
2 | Page

3. **September 24, 2010**: The first meet and confer occurred, attended by White and Case attorneys Danielle Audette and Laura Casan, AHCA counsel Daniel Lake and Willis Melvin, and me. We discussed the previous CMS and DOJ production to Roxane, Dey and Abbott in the federal MDL action, the potential enormous costs of production and the expectation by us that defendants would pay those costs. We pointed out that the Florida pharmacy claims data was available to the defendants from DOJ as the claims had been previously collected by AHCA in 2006 (for claims from 1994-2005) and sent to DOJ. We specifically objected to the definition of "State" and pointed out that AHCA does not have possession or control over other state agency or state department program documents. We advised them that some of the documents could be accessed directly from the publically accessible website maintained by AHCA. We discussed the time span of the request, and the fact that many documents within the scope of the request may no longer exist. No commitments to reimburse AHCA or narrow the requests were made. We also discussed request numbers 1, 6, 7, 13-17 and 32.

4. **October 1, 2010**: Ms. Audette and I spoke on the phone. I informed her that DOJ was making the Florida pharmacy claims data referenced above, available to the defendants, and that DOJ was also providing document indices for the prior CMS production in the Roxane, Dey and Abbott MDL action. At that time, we agreed that I would provide permission to Kelley Drye attorney, Chris Palermo, to share the discovery AHCA and the Florida Attorney General's office produced in the Mylan AWP litigation in Florida, subject to the Protective Order and SPO entered in this case. We again discussed the public AHCA website, including the availability of AHCA quarterly reports on Florida prescribed drug cost containment measures. Ms. Audette stated she would get certain AHCA documents obtained by a local law firm pursuant to a public records request in connection with the Dey AWP litigation in Florida. (This batch of documents was approximately 15,000 pages). After the call, I contacted Chris Palermo and authorized the sharing of documents in accordance with our agreement.

5. **October 15, 2010**: A conference call took place. Although Ms Audette had not yet received all the Mylan documents from Mr. Palermo, she had received the public records documents and provided the bates ranges to me. Ms. Audette stated that the defendants were not agreeing to reimburse the states for any of the costs of production. Rather, defendants were requesting detailed cost estimates, and that some of the states came back with high estimates. Ms. Audette asked if AHCA would conduct a search for communications between defendants and AHCA. No resolution was reached, but the considerable work for just that request was discussed. In concluding the call, Ms Audette stated that she needed to take some action items back to others in the firm and work on getting narrowed requests for categories of documents. I suggested reviewing the transcripts of the AHCA employees produced in the Mylan case. She agreed that would be helpful. She committed to contact us after talking with other White and Case lawyers about refining the scope of the requests.

We have heard nothing from your firm since October 15, 2010, until now, over five months later. To demand a production within two weeks under the threat of a motion to

Stefan M. Mentzer, Esq.
April 1, 2011
3 | Page

compel after complete silence for months, and still no commitment to shoulder the responsibility of paying for the costs of production, is completely unacceptable. Until we receive such a commitment, it would be a useless exercise to obtain a cost estimate, which your firm has not requested.

Going to the revised requests for production in your March 24, 2011 letter, we respond as follows:

We object to producing any documents without a commitment to pay for the costs of production. While preserving the objections set forth below, as well as the objections made previously, we will obtain a cost estimate promptly for the responsive documents we agree to produce and, if you approve the submitted estimate, we will proceed with the production process.

1. AHCA maintains the current complete State Plan on its website, located at http://ahca.myflorida.com/Medicaid/stateplan.shtml. If you want these documents to be processed as part of the production, please advise so the cost estimate would include this document.

2. This production requires collecting and scanning hard copy documents at AHCA, and review prior to production.

3. While some of these documents may be with the documents identified in Item 2, a thorough search may be required to determine whether all responsive documents have been identified. It is also possible, that given the time frame of the subpoena, there may be other problematic issues which will incur additional costs related to archived or destroyed documents.

4. We object to this request as the definition of "the State" includes all legislative and executive agencies of the Florida government as well as third parties that have monitored, administered, or overseen any State program. We will not produce documents maintained by any entity other than AHCA.

In closing, I suggest that you contact us to arrange a meet and confer to review the issues raised, including the commitment to pay for the costs of production.

Sincerely,

*Gretchen H. Wallace*

Gretchen H. Wallace
Senior Assistant Attorney General

cc: Daniel Lake



**FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION**

*Better Health Care for all Floridians*

CHARLIE CRIST
GOVERNOR

THOMAS W. ARNOLD
SECRETARY

July 12, 2010

Stefan M. Mentzer, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036

Re:   Ven-A-Care of the Florida Keys, Inc. vs. Actavis Mid-Atlantic, et al.
      08-cv-10852-PBS,

Dear Mr. Mentzer:

The Florida Agency for Health Care Administration ("AHCA) was served on June 28, 2010 with the subpoena issued by your client, Sandoz, Inc., in the above referenced litigation. The subpoena consists of 46 separate requests, with subparts to many of them, for the production of document from AHCA related to 535 separate pharmaceutical products.

AHCA is not a party to this litigation. Without waiving its right to assert, other objections to the subpoena, this correspondence serves as AHCA's objection to the subpoena pursuant to Fed.R.Civ.Pro. 45(c)(2)(B) on the following grounds:

1.  The subpoena imposes an undue burden and expense on AHCA, its divisions, agencies, employees, attorneys, and agents.

2.  The subpoena fails to provide an adequate and reasonable time-frame for AHCA to comply.

3.  The requests for documents are overly broad in scope, with some documents requested dating back to 1984.

4.  It is unreasonable to ask AHCA, a non-party to this litigation, to divert scarce resources for the purpose of complying with this overly broad and unduly burdensome request.

5.  The subpoena requests documents that are privileged.

6.  The subpoena requests documents that are confidential and protected under various Federal laws, including but not limited to HIPAA.

7.  You have failed to provide AHCA with reasonable compensation for the time and resources that would have to be devoted to responding to the subpoena.

In light of these objections, and others that may be asserted at a later date, AHCA will not be providing any of the requested documents or information in response to the subpoena.



2727 Mahan Drive, MS#
Tallahassee, Florida 32308

Visit AHCA online at
http://ahca.myflorida.com

We request that the subpoena be withdrawn or you may contact me to discuss a more reasonable and un-burdensome request and compensation to be paid to AHCA for providing any such documents.

You may contact me at (850) 412-3630.

Sincerely,

Daniel M. Lake
Senior Attorney